THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE : JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:  ALL ACTIONS | MDL No. 2738<br><br>3:16-md-02738-FLW-LHG |

# INITIAL STATUS REPORT AND
# PROPOSED ORGANIZATIONAL CONFERENCE AGENDA

As requested in the Court's October 20, 2016 Order, defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, "the J&J Defendants") hereby submit this report suggesting a series of topics for discussion at the November 17, 2016 Organizational Conference and providing explanations of each of those topics that include the background information requested in the Court's October 20, 2016 Order.

The threshold question presented by this litigation is medical causation – i.e., can perineal exposure to talc cause ovarian cancer?  A recent decision by Judge Nelson C. Johnson of the Superior Court of New Jersey, Law Division, Atlantic County, in the coordinated Multi-County New Jersey talc litigation answered that question in the negative.  *See Carl v. Johnson & Johnson*, No. ATL-L-6540-14, 2016 N.J. Super. Unpub. LEXIS 2102 (Law Div. Sept. 2, 2016), *appeal pending*.  That ruling was based on extensive briefing and a two-week hearing during which the primary experts for both sides offered testimony.  The J&J Defendants respectfully submit that this issue should likewise be addressed by this MDL Court as soon as possible.  As detailed below, the J&J Defendants therefore urge that the Court should enter a case

management order calling for consideration of *Daubert* motions on general and specific causation evidence in the short term. To that end, the J&J Defendants urge the prompt, random selection of a set of individual claims for case-specific fact and expert discovery sufficient to tee up *Daubert* motions.

**Proposed Organizational Conference Topics**

**I.     SCIENCE DAY**

The J&J Defendants request that the Court hold a "Science Day" in January 2017 during which the parties and their experts can outline their positions/arguments regarding the medical and science issues at play. The science issues in these cases have been studied for years, and the Court and the parties would benefit from a robust discussion of these matters.

**II.    *DAUBERT* MOTIONS/SELECTION OF CASES FOR FACT DEVELOPMENT**

This Court should adopt a robust procedure for assessing the scientific validity of plaintiffs' claims at the outset of the litigation.

After receipt of extensive written and oral testimony and evidence, the New Jersey court ruled that plaintiffs' experts' opinions on general causation were not reliable as a matter of law. The New Jersey court highlighted the "narrowness and shallowness" of plaintiffs' causation experts' "litigation-driven" opinions. *Carl*, 2016 N.J. Super. Unpub. LEXIS 2102, at *56, *62. More specifically:

- the court determined that plaintiffs' experts' conclusions rested largely on a cherry-picked subset of epidemiological studies and ignored much larger studies that denied any association between talc and ovarian cancer – "almost as if counsel and the expert witnesses were saying, *Look at this, and forget everything else science has to teach us*." *Id.* at *35.

- the court emphasized plaintiffs' experts' critical "failure to provide a coherent explanation to support their hypothesis for biological plausibility" – i.e., the mechanism by which talc supposedly can cause ovarian cancer. *Id.* at *36.

- the court noted that the "most troubling" part of plaintiffs' experts' theory was their "litigation driven" efforts to "use epidemiology to prove specific causation" by "'employing the results of group-based studies of risk to make a causal determination for an individual plaintiff'" in a manner that well exceeded "'the limits of epidemiology.'" *Id.* at *56 (quoting *Reference Manual on Scientific Evidence* (3rd Edition) at 553).

Notably, the New Jersey court's ruling addresses the opinions of experts who were at the center of the three plaintiff verdicts in cases tried in Missouri state court, but its ruling is far more comprehensive and thorough than anything that has come out of the Missouri litigation.[1] And as a result of the ruling, the parties were spared the substantial expense of going forward to trial in the first two cases set for trial in the New Jersey proceeding.

The experience in the New Jersey state court proceeding makes clear that there is no reliable scientific support for plaintiffs' claims of a link between cancer and perineal talc exposure. As a result, the interests of fairness and judicial efficiency dictate that the Court develop a procedure to test at an early date the scientific evidence on which plaintiffs intend to base their claims.

To that end, the J&J Defendants propose that the Court randomly select several cases that can be worked up for initial expert discovery on the issues of general and specific causation. It is well recognized that to ensure the representativeness of such cases, they should be selected at random from within the plaintiff pool. *See* MANUAL FOR COMPLEX LITIGATION, 4TH § 22.315 (2004) ("To obtain the most representative cases from the available pool, a judge should direct

---

[1] In *Berg v. Johnson & Johnson*, 940 F. Supp. 2d 983, 989-93 (D.S.D. 2013), a federal court refused to exclude expert epidemiological evidence similar to that which was rejected in the New Jersey litigation. That decision, however, was wrongly decided because the court failed to consider scientific studies and principles that undermined or expressly rejected the causation theory endorsed by plaintiffs' experts. In addition, subsequent scientific developments, including an FDA determination and the publication of two large prospective epidemiological cohort studies, have made clear that there is no biological mechanism by which talc might lead to ovarian cancer and no causal association between perineal talc use and ovarian cancer.

3

the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases."); *see also* CMO No. 2 at 3, *In re Plavix Prod. Liab. & Mktg. Litig.*, Nos. 3:13-cv-03610-FLW-TJB, et al. (D.N.J. filed July 25, 2014) (specifying that in part, cases for intensive factual development should be "randomly selected"); CMO No. 15, *In re Benicar (Olmesartan) Prods. Liab. Litig.*, No. 15-md-02606 (D.N.J. filed Nov. 23, 2015) (ordering that "the Court shall randomly select" 30 bellwether cases and allowing for plaintiffs and defendants to each strike five cases); *In re Norplant Contraceptive Prods. Liab. Litig.*, No. 4:03-cv-1507-WRW, 1996 WL 571536, at *1 (E.D. Tex. Aug 13, 1996) ("[f]ollowing random selection of the twenty-five bellwether trial plaintiffs"); Order re: Bellwether Trial Selection at 2, *In re Prempro Prods. Liab. Litig.*, MDL No. 1507 (E.D. Ark. June 20, 2005) (noting that bellwether cases were to be literally "randomly draw[n] from a hat"); Pretrial Order No. 89, *In re Baycol Prods. Litig.*, No. 01-md-01431 (D. Minn. July 18, 2003) (the court's trial selection program included all cases filed in the District of Minnesota involving Minnesota residents "plus a minimum of 200 additional cases selected at random from all MDL filed cases").  Such random selection of a group of cases for initial development will allow the parties to focus on working up their science cases based on the specific facts and medical histories of the selected plaintiffs.

### III.   COORDINATION WITH STATE COURT PROCEEDINGS

Three state courts are presently overseeing talcum powder-related personal injury cases against the J&J Defendants.

First, approximately 202 single-plaintiff cases are currently pending in the New Jersey state court coordinated proceeding before Judge Johnson that is referenced above.

Second, 20 multi-plaintiff cases (with a total of approximately 1,469 plaintiffs) are pending in the aggregate claim litigation proceedings pending before several judges in the 22nd

4

Judicial Circuit Court, St. Louis (City), Missouri. The overwhelming majority of the claimants in those cases are non-Missouri residents. Three cases have been tried to plaintiffs' verdicts before Judge Rex M. Burlison (Division 10 of that court), based in part on the testimony of experts whose opinions were rejected by Judge Johnson in the New Jersey litigation.

Finally, 60 cases (with a total of approximately 249 plaintiffs) are pending in a California coordinated proceeding, *Johnson & Johnson Talcum Powder Cases*, Judicial Council Coordinated Proceeding No. 4877. Initially, those cases were assigned to Judge Lisa Hart Cole of the Superior Court of the State of California for the County of Los Angeles. However, within the next several weeks, that coordinated proceeding will be reassigned to Judge Maren E. Nelson of the same court.

Close coordination of these federal and state court proceedings is imperative, particularly with respect to consideration of science issues (as discussed above).

### IV. PENDING/DECIDED CASE-SPECIFIC MOTIONS

As of today, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") has finalized transfer orders sending 57 actions into this MDL proceeding. In those actions, certain motions were filed (but not decided) in the transferor district courts.

A list of pending motions to dismiss is attached as Appendix A. The J&J Defendants respectfully request that the Court direct the parties to develop a jointly proposed schedule for the completion of briefing in these matters.

#### Jurisdictional Motions

Motions to remand have been filed and remain pending in three cases: *Lovato* (transferred from D.N.M.), *Jackson*, and *McBride* (both transferred from E.D. La.). Additional cases in which transfer motions are pending likely will be transferred to this Court once disputes

concerning Conditional Transfer Orders are resolved.[2] To the extent briefing has been completed on those remand motions, such briefing has focused on the law of the Circuits in which those cases were originally filed. The J&J Defendants respectfully request that before this Court considers those motions,[3] the parties be permitted to re-brief the remand issues under Third Circuit law.

The J&J Defendants' request for re-briefing is based on the fact that this Court should apply Third Circuit law in deciding any subject matter jurisdiction issues presented in this proceeding. *See, e.g.*, *In re Korean Air Lines Disaster on Sept. 1, 1983*, 829 F.2d 1171, 1174 (D.C. Cir. 1987) ("[W]e are persuaded by thoughtful commentary that 'the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit.'") (quoting Richard L. Marcus, *Conflict Among Circuits and Transfers Within the Federal Judicial System*, 93 Yale L.J. 677, 721 (1984)) *aff'd*, 490 U.S. 122 (1989); *see also In re Am. Gen. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004) ("When a transferee court receives a case from the MDL Panel, the transferee court applies the law of the circuit in which it is located to issues of federal law."); *In*

---

[2] Motions to remand have been filed in five additional actions currently pending in the U.S. District Court for the Eastern District of Missouri: *Eveland*, *Frazier*, *Gallow*, *Logan* and *Starks*. Additionally, a motion to remand has been filed in one action pending in the U.S. District Court for the Eastern District of Pennsylvania: *Mason*. Plaintiffs have objected to the CTOs sending those cases to this MDL proceeding. The next MDL Panel hearing is set for December 1, 2016, but the objections in these cases are not on the agenda for that session. Thus, those objections are not likely to be resolved until the MDL Panel's hearing on January 26, 2017.

[3] The MDL Panel has repeatedly held that motions for remand to state court may be presented to and decided by a transferee court. *See, e.g.*, *In re Ford Motor Co. Crown Victoria Police Interceptor Prod. Liab. Litig.*, 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) ("We note that any pending motions to remand these actions to their respective state courts can be presented to and decided by the transferee judge."); *see also In re McDonald's French Fries Litig.*, 545 F. Supp. 2d 1356, 1356 (J.P.M.L. 2008) (holding that the plaintiffs could present to the transferee judge a motion to remand to state court).

*re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."). Notably, other district courts of the Third Circuit have followed the same course. *E.g.*, *In re: Domestic Drywall Antitrust Litig. Civil Action*, No. 13-2437, 2016 WL 3769680, at *2 (E.D. Pa. July 13, 2016) (adopting *Korean Air* and noting that, "[s]urprisingly, neither the Supreme Court nor the Third Circuit have addressed this issue"); *Kaiser Found. Health Plan, Inc. v. Medquist, Inc.*, No. CIV.08-4376 (JBS), 2009 WL 961426, at *4 (D.N.J. Apr. 8, 2009) ("[T]he transferee court is usually free to decide [federal issues] in the manner it views as correct without deferring to the interpretation of the transferor circuit.") (internal quotation marks omitted); *In re Nazi Era Cases Against German Defs. Litig.*, 198 F.R.D. 429, 439 n.16 (D.N.J. 2000) ("When dealing with cases that have been consolidated for pretrial proceedings pursuant to an order of the MDL Panel under 28 U.S.C. § 1407, the law of the transferor forum merits close attention, but should not be read to have stare decisis effect in a transferee forum situated in another circuit.").

In similar circumstances, other MDL courts have ordered that remand motions be briefed anew where, as here, they were initially briefed under the law of a transferor court in a different Circuit. *See* ECF No. 217, *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789 (S.D.N.Y. filed Dec. 26, 2007) (ordering that all remand motions filed in a transferor court be re-briefed); *see also* ECF No. 299, *In re: DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Litig.*, No. 1:10-MD-2197 (N.D. Ohio filed Oct. 31, 2011) (vacating all case management orders and scheduling orders issued by any transferor courts and motions filed in transferor courts and allowing the parties to refile such motions with the MDL court).

### Class Action Complaints

Three class actions have been transferred to this MDL proceeding: *Mihalich*, *Estrada* and *Joseph*. In *Mihalich,* originally filed in the U.S. District Court for the Southern District of Illinois, plaintiffs seek to represent a proposed class of all consumers who purchased Johnson & Johnson's baby powder in the state of Illinois, asserting causes of action under the Illinois Consumer Fraud and Deceptive Business Practice Act and for unjust enrichment. Initially, the J&J Defendants moved to dismiss all claims on numerous grounds, including failure to state a claim, failure to meet the heightened pleading requirement of Rule 9(b), overbreadth and lack of standing. The court granted the motion in full with leave to amend. *Mihalich v. Johnson & Johnson*, No. 14-CV-600-DRH-SCW, 2015 WL 9455559, at *5 (S.D. Ill. Dec. 28, 2015). The plaintiffs amended their complaint, and the J&J Defendants again moved to dismiss. The court granted the J&J Defendants' second motion to dismiss the plaintiffs' claim for injunctive relief and denied the motion to dismiss the plaintiffs' Illinois Consumer Fraud Act claim. *Mihalich v. Johnson & Johnson*, No. 14-CV-600-DRH-SCW, 2016 WL 5106970, at *6 (S.D. Ill. Sept. 20, 2016). The case was then transferred to this Court.

In *Estrada*, originally filed in the U.S. District Court for the Eastern District of California, plaintiff seeks to represent a proposed class of consumers who have purchased J&J baby powder in California, alleging violations of the California Consumer Legal Remedies Act, Business & Professions Code, as well as negligent misrepresentation and breach of implied warranty. The J&J Defendants moved to dismiss the complaint in full. (*See* Mot. to Dismiss and/or Strike the Compl., ECF No. 18, *Estrada v. Johnson & Johnson*, No. 2:14-cv-01051-TLN-KJN (E.D. Cal. filed June 20, 2014).) The plaintiff then amended her complaint, and the J&J Defendants again moved to dismiss in full. (*See* First Am. Compl., ECF No. 27, *Estrada v.*

8

*Johnson & Johnson*, No. 2:14-cv-01051-TLN-KJN (E.D. Cal. filed Apr. 24, 2015); Mot. to Dismiss and/or Strike Pl.'s First Am. Compl., ECF No. 29, *Estrada v. Johnson & Johnson*, No. 2:14-cv-01051-TLN-KJN (E.D. Cal. filed May 18, 2015).) However, the case was transferred to this MDL proceeding before the court ruled on the motion.

Finally, in *Joseph*, originally filed in the U.S. District Court for the Middle District of Louisiana, plaintiffs seek to represent a proposed personal injury class, alleging negligence, intentional misrepresentation, fraudulent concealment, negligent misrepresentation, failure to warn, design and manufacturing defect, breach of warranty and violation of Louisiana's Unfair Trade Practices Act. The proposed class is defined as "[a]ll persons, and spouses of persons, who sustained injuries as a result of the use of talcum powder based products or will develop injuries as a result of the prior use of talcum powder based products." (*See* Compl. ¶ 50, *Joseph v. Johnson & Johnson*, No. 3:16-cv-00590-JJB-RLB (E.D. La.).) No motions have been filed in that case.

## V.     COMMON DISCOVERY

The J&J Defendants have engaged in substantial fact and expert discovery, including the production of documents and the furnishing of expert reports, in the litigation pending in Missouri and New Jersey described above, as well as in the *Berg* case previously tried to verdict before the U.S. District Court for the District of South Dakota. Discovery from those proceedings has been shared and used in all pending talc litigation, including the *Chakalos* case originally filed in this District.[4] The discovery from the J&J Defendants includes approximately 500,000 pages of documents and responses to multiple rounds of interrogatories. In addition, several corporate representatives have been deposed.

---

[4]     Some discovery has also been conducted in the *Mihalich* class action referenced above.

9

In briefing before the MDL Panel on the motion to create this MDL proceeding, several plaintiffs' counsel urged that common discovery was complete (or largely complete) regarding the claims at issue. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2738, 2016 WL 5845997, at *1 (J.P.M.L. Oct. 4, 2016) ("the opposing plaintiffs argue that centralization is unnecessary because thousands of claims have been pending in state courts for several years and, thus, the common discovery in these actions is already complete"); *see also, e.g.*, Pl. Mahnaz Khorrami's Resp. in Opp'n to Moving Plaintiff Tanashiska Lumas' Mot. for Consolidation & Transfer Pursuant to 28 U.S.C. § 1407 at 3, JPML ECF No. 53 (filed Aug. 9, 2016) ("The discovery that has occurred in this litigation is substantial. Plaintiff is aware that approximately 170,000 documents have been produced and seven depositions of Defendants' corporate witnesses have either taken place and/or are scheduled to take place."); Pls.' Mona Estrada's & Barbara Mihalich's Interested Party Resp. in Opp'n to Mot. for Consolidation & Transfer of Actions Pursuant to 28 U.S.C. §1407 at 4, JPML ECF No. 46 (filed Aug. 5, 2016) ("The State Courts have served as the epicenter of this litigation for years. There has been significant corporate discovery, several depositions, voluminous motions practice, and multiple trials to date in this litigation."). The J&J Defendants tend to agree with that characterization and are willing to allow plaintiffs in this proceeding access to that discovery, subject to an appropriate protective order.[5] However, to the extent any additional discovery is necessary, the parties should be directed to develop and present to the Court a

---

[5] As noted above, a protective order has already been entered in the *Chakalos* case pending before this Court. If that order were deemed applicable to all cases in the MDL proceeding, the J&J Defendants would be willing to produce the documents already made available to plaintiffs in *Chakalos*.

protocol and schedule for completing such efforts in the short term. The J&J Defendants have requested that in the meantime, all discovery deadlines be stayed.

## VI. GENERAL PROCEDURAL ORDERS

An e-discovery protocol order and a protective order have been entered in the *Chakalos* case previously pending before this Court. Those orders should be deemed applicable (with appropriate adaptation) to all cases in this MDL proceeding. The J&J Defendants propose that the Court request that the parties confer in an effort to jointly present to the Court the following additional proposed general procedural orders:

   a. a basic procedural order concerning matters such as form of captions on filings, service of filings, and appearance/admission of counsel;

   b. an order setting forth guidelines for the scheduling and conduct of depositions, including a protocol governing procedures for *in extremis* depositions; and

   c. a case management order governing further proceedings regarding consideration of *Daubert* motions, including the random selection of cases for that exercise, the conduct of case-specific discovery, the designation of experts, and the conduct of expert discovery.

## VII. PLAINTIFF FACT SHEETS

The J&J Defendants request that each individual plaintiff in this MDL proceeding be required to complete a standardized set of discovery in the form of a Plaintiff Fact Sheet ("PFS"), with responses sufficient to confirm that prior to filing suit, plaintiffs' counsel conducted due diligence regarding the claims asserted, consistent with the requirements of Fed. R. Civ. P. 11. The PFS should provide basic information about plaintiffs' claims, compel production of medical records and other relevant documents in each plaintiff's possession, and

11

require provision of appropriate authorizations to collect relevant medical records. The PFS responses should be binding on each responding plaintiff as though they are standard discovery. The J&J Defendants suggest that the parties meet and confer regarding the content of this PFS and jointly present the Court with a proposed draft. The PFS forms already being used in the Missouri and New Jersey talc proceedings may be adapted for use in this MDL proceeding.

As the Court is aware, standardized fact sheets have become commonplace in MDL proceedings because they spare defendants the cost of adapting hundreds – or perhaps thousands – of interrogatories to individual plaintiffs, while affording plaintiffs' counsel an easier, less expensive approach to satisfying initial discovery obligations. *See* George M. Fleming & Jessica Kasischke, *MDL Practice: Avoiding the Black Hole*, 56 S. Tex. L. Rev. 71, 81 (2014) ("Transferee courts routinely engage in plaintiff and defendant fact sheets, a uniform set of questions asked of all MDL plaintiffs and defendants that generally serve as interrogatories."). In fact, this Court has previously employed the use of fact sheets in a MDL proceeding. *See* CMO 2, *In re Plavix Product Liability and Marketing Litigation*, Docket No. 3:13-cv-02418 (ordering that "[e]ach ingesting and representative Plaintiff in MDL No. 2418 for whom jurisdiction is not contested shall complete and serve a Plaintiff Profile Form (PPF)").

Importantly, fact sheets are useful only if they are completed fully, accurately, and timely. With that in mind, the J&J Defendants will urge adoption of an order requiring that all fact sheets be completed fully and accurately in accordance with firm deadlines. *See MDL Standards and Best Practices* at 13, Duke Law Center for Judicial Studies (2014) ("The court should impose concrete time limitations for completing fact sheets."). The proposed order should also set forth the potential consequences of non-compliance. *See* Jaime Dodge, *Facilitative Judging: Organizational Design in Mass-Multidistrict Litigation*, 64 Emory L.J. 329,

12

353-64 (2014) ("[T]he transferee judge [should] clearly specify the sanctions that will be imposed should counsel submit erroneous or incomplete sheets."). After all, "[a]bsent the imposition of specific and substantial sanctions from the court, the structure of the MDL does not itself impose a significant check upon the veracity of fact sheets." *Id.*; *see also MDL Standards and Best Practices*, *supra*, at 13 ("Unless such deadlines are rigorously enforced, counsel handling multiple claims may fall far behind in fulfilling that obligation.").

The J&J Defendants propose that the initial disclosures contemplated by Fed. R. Civ. P. 26(a)(1)(A) not be provided for cases in this MDL proceeding, in deference to the use of Plaintiff Fact Sheets and the discovery already provided by the J&J Defendants.

## VIII. FUTURE CASE MANAGEMENT CONFERENCES

The J&J Defendants request that the Court hold monthly status conferences, either in person or via telephone. In particular, it is urged that another conference be held in mid-December to ensure early progress. It may be appropriate to conduct all (or at least portions) of the status conferences in chambers. The parties should be asked to provide a joint written proposed agenda seven (7) days prior to the scheduled date of each conference.

## IX. SETTLEMENT DISCUSSIONS

The parties have not engaged in settlement discussions, and such conversations would not be beneficial at this time.

Dated: November 10, 2016                                *s/Susan M. Sharko*
                                                        Susan M. Sharko
                                                        DRINKER BIDDLE & REATH LLP
                                                        600 Campus Drive
                                                        Florham Park, New Jersey 07932
                                                        Telephone: 973-549-7000
                                                        Facsimile: 973-360-9831
                                                        E-mail: susan.sharko@dbr.com

        *s/Gene M. Williams*
        Gene M. Williams
        SHOOK, HARDY & BACON L.L.P.
        JPMorgan Chase Tower
        600 Travis St., Suite 3400
        Houston, TX 77002
        Telephone:  713-227-8008
        Facsimile:  713-227-9508
        E-mail:  gmwilliams@shb.com

        *s/John H. Beisner*
        John H. Beisner
        SKADDEN, ARPS, SLATE,
        MEAGHER & FLOM LLP
        1440 New York Avenue, N.W.
        Washington, D.C. 20005
        Telephone:  202-371-7000
        Facsimile:  202-661-8301
        E-mail:  john.beisner@skadden.com

        *Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., now known as Johnson & Johnson Consumer Inc.*

# APPENDIX A
## Motions to Dismiss

| Case Name | Number of Plaintiffs | Transferor Court | Motions by Johnson & Johnson | Pending Motions by Imerys |
|---|---|---|---|---|
| Anderson | 1 | M.D. La. | Failure to state a claim | (not a party in this case) |
| Barker | 1 | N.D. Ohio | Failure to state a claim | Failure to state a claim; Lack of personal jurisdiction |
| Batiste | 1 | W.D. La. | Failure to state a claim | (not a party in this case) |
| Bors | 1 | E.D. Pa. | Failure to state a claim (denied) | Failure to state a claim (denied); Lack of personal jurisdiction (denied) |
| Casey | 2 | W.D. Ky. | Failure to state a claim | Failure to state a claim; Lack of personal jurisdiction |
| Cerrone-Kennedy | 2 | W.D. Mo. | Failure to state a claim | Lack of personal jurisdiction |
| Davis | 1 | D. Kan. | Failure to state a claim | n/a |
| Epps | 1 | N.D. Ga. | Failure to state a claim | Failure to state a claim |
| Estrada | class | E.D. Cal. | Failure to state a claim | (not a party in this case) |
| Fenstemaker | 2 | E.D. Mo. | Lack of Personal Jurisdiction; Improper venue | Lack of personal jurisdiction; Improper venue |
| Francis | 1 | S.D. Fla. | Failure to state a claim | n/a |
| Handy | 1 | E.D. Pa. | Failure to state a claim | Lack of personal jurisdiction; Failure to state a claim |
| Harper | 1 | N.D. Fla. | Failure to state a claim | Lack of personal jurisdiction; Failure to state a claim |
| Hicks | 2 | M.D. Ga. | Failure to state a claim | Failure to state a claim |
| Jackson | 1 | E.D. La. | Failure to state a claim | Lack of personal jurisdiction; Failure to state a claim |
| Johnson | 1 | D. Minn. | Failure to state a claim | (not a party in this case) |
| Johnston | 1 | M.D. Ala. | Failure to state a claim | (not a party in this case) |
| Kehres | 4 | N.D. Ohio | Failure to state a claim | Lack of personal jurisdiction; Failure to state a claim |
| Kuhn | 1 | M.D. Tenn. | Failure to state a claim | (not a party in this case) |
| Lovato | 15 | D.N.M. | Failure to state a claim; Improper venue; Lack of personal jurisdiction | Lack of personal jurisdiction |
| Martin | 1 | D. Kan. | Failure to state a claim | n/a |
| Maurer-Martin | 1 | S.D. Ind. | Failure to state a claim | n/a |

15

| Case Name | Number of Plaintiffs | Transferor Court | Motions by Johnson & Johnson | Pending Motions by Imerys |
|---|---|---|---|---|
| McBride | 1 | E.D. La. | Failure to state a claim | n/a |
| Musgrove | 1 | N.D. Ill. | Failure to state a claim (terminated without prejudice) | (not a party in this case) |
| Olichney | 1 | S.D. Fla. | Failure to state a claim (terminated without prejudice) | Failure to state a claim (terminated without prejudice) |
| Philips | 1 | E.D. Tex. | Failure to state a claim | (not a party in this case) |
| Rempas | 1 | N.D. Ill. | Failure to state a claim | Lack of personal jurisdiction |
| Rich-Williams | 1 | N.D. Miss. | Failure to state a claim | (not a party in this case) |
| Robb | 3 | W.D. Okla. | Failure to state a claim (stipulated to by plaintiffs as to count 7 of the complaint) | Lack of personal jurisdiction (Notice of Voluntary Dismissal of Imerys filed 7/19/16) |
| Robinson | 1 | S.D. Miss. | Failure to state a claim | (not a party in this case) |
| Shelton | 1 | W.D.N.C. | Failure to state a claim | Lack of personal jurisdiction; Failure to state a claim |
| Shinske | 2 | M.D. Fla. | Failure to state a claim | n/a |
| Slayden | 1 | S.D. Ill. | n/a | Lack of personal jurisdiction |
| Strickland | 2 | N.D. Ga. | Failure to state a claim | Failure to state a claim |
| Traylor | 1 | M.D. Ga. | Failure to state a claim | Failure to state a claim |
| Walker | 1 | N.D. Ga. | Failure to state a claim | Failure to state a claim |
| Wilson | 1 | N.D. Ala. | Failure to state a claim | Failure to state a claim; Lack of personal jurisdiction |
| Wood | 2 | S.D. Fla. | Failure to state a claim | Failure to state a claim; Lack of personal jurisdiction |

86964543.1

16