# **Exhibit 1**

RECEIVED

APR 1 3 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| In re: Actos (Pioglitazone) | * | 6:11-md-02299-RFD-PJH |
| Products Liability Litigation | * | |
| | * | JUDGE DOHERTY |
| Applies to: | * | |
| All Actions | * | MAGISTRATE JUDGE HANNA |

**COURT ORDER:**
**PLAINTIFFS' STEERING COMMITTEE**

The parties having had notice the Court was considering the appointment of a plaintiffs'
steering committee ("PSC") in this matter, counsel were permitted an opportunity to submit
applications for membership on the PSC. This Court has considered the numerous applications
that were submitted by counsel. The Court was impressed by the overwhelming quality of
applicants and nominations for these positions, and thanks the applicants and nominees for
participating in this process. After a great deal of consideration of the particular qualities of each
of the applicants, as well as the need for management and coordination in these proceedings, the
Court hereby APPOINTS the following individuals to the Plaintiffs' Steering Committee.

I.     **Plaintiffs' Steering Committee**

       **A. Committee Membership**

       The following counsel shall be members of the committee:

- Vance R. Andrus
  Andrus, Hood & Wagstaff, PC
  1999 Broadway, Suite 4150
  Denver, Co 80202
  303-376-6360
  Fax: 303-376-6361
  Email: vance.andrus@ahw-law.com

- Richard Arsenault
  Neblett Beard & Arsenault

{L0198757.3}                                     1

P O Box 1190
Alexandria, LA 71309-1190
318-487-9874
Fax: 318-561-2591
Email: rarsenault@nbalawfirm.com

- Dawn Barrios
  Barrios Kingsdorf & Casteix
  701 Poydras Street, Suite 3650
  New Orleans, LA 70139-3650
  504-524-3300
  Fax: 504-524-3313
  Email: barrios@bkc-law.com

- Andy D. Birchfield
  Beasley Allen et al
  P O Box 4160
  Montgomery, AL 36103-4160
  334-269-2343
  Fax: 334-954-7555
  Email: Andy.Birchfield@BeasleyAllen.com

- Jayne Conroy
  Hanly Conroy et al
  112 Madison Ave
  New York, NY 10016
  212-784-6400
  Fax: 212-213-5949
  Email: jconroy@hanlyconroy.com

- Nicholas J. Drakulich
  Drakulich Firm
  2727 Camino Del Rio S., Suite 322
  San Diego, CA 92108
  858-755-5887
  Fax: 858-755-6456
  Email: njd@draklaw.com

- W. Mark Lanier
  Law Offices of W Mark Lanier
  6810 FM 1960 West
  Houston, TX 77069
  713-659-5200
  Fax: 713-659-2204
  Email: wml@lanierlawfirm.com

- Patrick C. Morrow
  Morrow Morrow et al
  P O Drawer 1787
  Opelousas, LA 70571-1787
  337-948-4483
  Fax: 942-5234
  Email: pmorrow@mmrblaw.com

- Stephen B. Murray
  Murray Law Firm
  650 Poydras Street, Suite 2150
  New Orleans, LA 70130
  504-525-8100
  Fax: 504-584-5249
  Email: smurray@murray-lawfirm.com

- Dianne M. Nast
  Rodanast PC
  801 Estelle Drive
  Lancaster, PA 17601
  717-892-3000
  Fax: 717-892-1200
  Email: dnast@rodanast.com

- Stephanie O'Connor
  Douglas & London P.C.
  111 John Street, Suite 1400
  New York, NY  10038
  212-566-7500
  Fax:  212-566-7501
  Email:SOConnor@DouglasAndLondon.com

- Neil D. Overholtz
  Aylstock, Witkin, Kreios, Overholtz, PLLC
  17 East Main Street, Suite 200
  Pensacola, FL 32502
  Telephone: (877) 810-4808
  Email: NOverholtz@awkolaw.com

- Jerrold S. Parker
  Parker Waichman (FL)
  3301 Bonita Beach Road, Suite 101
  Bonita Springs, FL 34134
  239-390-8610
  Fax: 239-390-0055
  Email: actosmdl@yourlawyer.com

- Paul J. Pennock
  Weitz & Luxenberg (NY)
  700 Broadway 5th Fl
  New York, NY 10003
  212-558-5972
  Fax: 212-344-5461
  Email: ppennock@weitzlux.com

- Troy A. Rafferty
  Levin Papantonio et al
  P O Box 12308
  Pensacola, FL 32581
  850-435-7000
  Fax: 850-435-7020
  Email: trafferty@levinlaw.com

- Mark P. Robinson, Jr
  Robinson Calcagnie et al
  19 Corporate Center Dr
  Newport Beach, CA 92660
  949-720-1288
  Fax: 949-720-1292
  Email: mrobinson@rcrlaw.net

- Christopher A. Seeger
  Seeger Weiss
  77 Water Street, 26th Floor
  New York, NY 10005
  212-584-0700
  Email: cseeger@seegerweiss.com

- W. James Singleton
  Singleton Law Firm
  4050 Linwood Ave
  Shreveport, LA 71108
  318-631-5200
  Fax: 318-636-7759
  Email: wjsingleton@singletonlaw.com

## B.  Committee Duties

The PSC shall take the lead in litigating these matters on behalf of all plaintiffs, meaning that they shall play the lead role in making strategic, tactical, and procedural decisions on behalf of the plaintiffs' counsel and *pro se* plaintiffs.  Of course, the Court recognizes that all plaintiffs'

counsel and all plaintiffs retain the right to choose to act in their own best interest in these proceedings, but the large number of attorneys and plaintiffs requires a substantial amount of coordination of litigation efforts.  To that end, the PSC shall be responsible for coordinating the plaintiffs' responses to the orders of the Court, for coordinating the presentation of issues to the Court for its consideration, and for overseeing the progress of these proceedings toward final resolution.

The PSC shall have the responsibility for assigning litigation-related tasks to counsel who provide indication of their willingness to work for the common benefit of all plaintiffs and the case.  The committee are encouraged to distribute assignments among counsel who wish to work for the common benefit, taking into consideration the particular strengths and weaknesses of counsel requesting such assignments.

The PSC shall act as the first resource for counsel or parties with questions, comments, concerns, recommendations, or requests, and for transmitting to plaintiffs' liaison counsel or co-lead counsel any such questions, comments, concerns, recommendations, or requests that should come to the attention of the Court.

The PSC shall have responsibility for recommending the approval or denial of any claim made by an attorney for common benefit credit.  Specifically, with regard to any claim that an attorney is entitled to be compensated or reimbursed for fees or costs incurred for the common benefit of the plaintiffs, the PSC shall review such claims and shall provide guidance to Special Master DeJean with regard to the propriety, fairness and reasonableness of such claims.  The PSC is encouraged to create a formal process by which claims for compensation or reimbursement may be presented either before or shortly after being incurred.  In doing so, they are to coordinate their efforts with Special Master DeJean, whose responsibilities, in part, encompass formal oversight of the approval process, imposing reasonable limits on such fees and

costs, and making recommendations to the Court for approval or denial of any such request. The Court shall rule on any such requests periodically throughout the litigation.

In the event of a global settlement, the PSC shall have the primary responsibility, with guidance and oversight by the Court through the Special Masters, for management and oversight of the process of distributing funds, reimbursing fees and expenses incurred for the common benefit, and for distributing the remaining fees to all plaintiffs' counsel.

## II.    Executive Committee

This Court hereby appoints an executive committee of the PSC. The executive committee shall be composed of six members. The members of the executive committee shall have the following additional duties beyond those assigned to PSC members.

- **Richard Arsenault**

Mr. Arsenault is hereby appointed CO-LEAD COUNSEL, together with Paul Pennock, with primary responsibility for leading the PSC and for communicating with the Court on behalf of plaintiffs' counsel.

- **Paul Pennock**

Mr. Pennock is hereby appointed CO-LEAD COUNSEL, together with Richard Arsenault, with primary responsibility for leading the PSC and for communicating with the Court on behalf of plaintiffs' counsel.

- **Patrick Morrow**

Mr. Morrow is hereby appointed CO-LIAISON COUNSEL, with primary responsibility for communicating with plaintiffs' counsel on behalf of the PSC, as requested by lead counsel, and he shall be available to perform any other administrative tasks assigned by the PSC.

- **Dawn Barrios**

Ms. Barrios is hereby appointed STATE COURT LIAISON, with primary responsibility

for communication with counsel in the various Actos®-related state court actions currently pending, or which might be filed.

- **Stephanie O'Connor**

Ms. O'Connor is hereby appointed SCIENCE COORDINATOR, with primary responsibility for coordination, oversight and management of experts on behalf of the plaintiffs.

- **Mark Robinson**

Mr. Robinson is hereby appointed to provide the PSC and the Court with the assistance of his general expertise in multi-district litigation.

## III.    Oversight

Periodically, the Court will determine whether the membership of the PSC should remain in place or should be adjusted to allow better, or more efficient, performance of the duties assigned herein.

## IV.    Effective Date

The Court notified the members of the PSC of their appointment, and requested that they commence work in that capacity, on Monday, March 12, 2012, which shall be the effective date of the appointment and of this order.

THUS DONE AND SIGNED this ____*13*____ day of April, 2012.


HONORABLE REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

# **Exhibit 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: FRESENIUS
GRANUFLO/NATURALYTE
DIALYSATE PRODUCTS LIABILITY
LITIGATION

This Document Relates to:

*All Cases*

MDL No. 1:13-md-02428-DPW

## [PROPOSED] CASE MANAGEMENT ORDER NO. 1

### APPOINTMENT OF PEC, PSC, PLAINTIFFS' LIAISON COUNSEL AND FEDERAL-STATE LIAISON COUNSEL

AND NOW, this __16th__ day of __July__ 2013, the Court having carefully reviewed the applications for positions on the Plaintiffs' leadership structure, it is hereby ORDERED that the following attorneys are appointed to the Plaintiffs' Executive Committee ("PEC"), Liaison Counsel, Plaintiffs' Steering Committee ("PSC") and the Federal-State Liaison Counsel to carry out their respective functions:

1.     **Plaintiffs' Executive Committee.** The Court hereby appoints to the Plaintiffs' Executive Committee ("PEC") the following counsel: Anthony Tarricone (Kreindler & Kreindler LLP); Chris Seeger (Seeger Weiss LLP); James C. Klick (Herman Herman & Katz LLC); Arnold Levin (Levin Fishbein Sedran & Berman); Michelle Parfitt (Ashcraft & Gerel LLP); and Steve W. Berman (Hagens Berman Sobol Shapiro LLP). Anthony Tarricone will serve as Chair and Plaintiffs' Liaison Counsel.

2.     **Plaintiffs' Steering Committee.** The Court appoints to the Plaintiffs' Steering Committee ("PSC"), in addition to the PEC, the following counsel: Richard Golomb (Golomb &

1

Honik, PC); Bruce Steckler (The Steckler Law Firm); R. Clay Milling (Henry Spiegel Milling LLP); Randi Kassan (Sanders Viener Grossman LLP); Ellen Presby (Nemeroff Law Firm); Jim Dugan (The Dugan Law Firm, LLC); Troy Rafferty (Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.); Richard "Flip" Phillips (Smith Phillips Mitchell Scott & Nowak, LLP); Kristian Rasmussen (Cory Watson Crowder & DeGaris, P.C.); Frank Woodson (Beasley Allen Crow Methvin Portis & Miles, P.C.) and J. Burton LeBlanc (Baron & Budd, P.C.).

3.   **Responsibilities of the PEC and PSC.** The Plaintiffs' Executive Committee shall serve as Lead Counsel and will be responsible for overall coordination and management of all pretrial proceedings and case preparation on behalf of the PSC and all Plaintiffs, including authority to organize, staff and direct committees to carry out various functions necessary for case preparation and prosecution. The PEC/PSC shall be responsible for:

A.   Discovery

i.   Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions that are consolidated with the instant multidistrict litigation.

ii.   Develop and propose to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs.

iii.   Cause to be issued, in the name of all plaintiffs, the necessary discovery requests, motions, and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial discovery of relevant issues found in the pleadings of this litigation. Similar requests, notices, and subpoenas may be caused

2

to be issued by the PEC and PSC upon written request by an individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims.

    iv.    Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

**B.**    Hearings and Meetings

    i.    Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court.

    ii.    Initiate proposals, suggestions, schedules, or joint briefs, and any other appropriate matter(s) pertaining to pretrial proceedings.

    iii.    Examine witnesses and introduce evidence at hearings on behalf of plaintiffs.

    iv.    Act as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject, of course, to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

**C.**    Trial

    i.    Coordinate trial team(s)'s selection, management and presentation of any common issue, "bellwether" and/or "test" case trial(s).

**D.**    Other

    i.    Submit and argue any verbal or written motions presented to the Court or Magistrate on behalf of the PEC and PSC, as well as

oppose, when necessary, any motions submitted by the defendant or other parties which involve matters within the sphere of the responsibilities of the PEC and PSC.

ii.    Negotiate and enter into stipulations with defendants regarding this litigation.

iii.   Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

iv.   Maintain adequate files of all pretrial matters and have them available, under reasonable terms and conditions, for examination by plaintiffs or their attorneys.

v.    Prepare periodic status reports summarizing the PEC's and PSC's work and progress.

vi.   Perform any task necessary and proper for the PEC and PSC to accomplish their responsibilities as defined by the Court's Orders.

vii.  Perform such other functions as may be expressly authorized by further Orders of this Court.

viii. Serve as the recipient for all Court orders on behalf of all of the Plaintiffs.

ix.   Coordinate service and filings for all Plaintiffs whether presently included or subsequently added.

x.    Maintain and distribute to co-counsel and to Defendants' Counsel an up-to-date service list;

4

        xi.     Coordinate and maintain the establishment of a document depository, real or virtual, to be available to all participating Plaintiffs' counsel.

        xii.    Prepare agendas for court conferences and periodically report regarding the status of the case.

        xiii.   Explore, develop and pursue all settlement options pertaining to a claim or portion thereof of any case filed in this litigation.

    E.     No motion, request for discovery, or other pretrial proceeding shall be initiated or filed by any plaintiff except through the PEC without prior order of this Court.

## 4. Plaintiffs' Liaison Counsel

The Court appoints Anthony Tarricone as Plaintiffs' Liaison Counsel. The Plaintiffs' Liaison Counsel shall be responsible for providing communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Liaison counsel may act for the group in managing document depositories and in resolving scheduling conflicts.

## 5. Plaintiffs' Federal-State Liaison Counsel for Massachusetts and California Litigations.

The Court appoints Lauren Barnes (Hagens Berman Sobol Shapiro LLP) as Plaintiffs' Federal-State Liaison Counsel for Massachusetts and Gretchen M. Nelson (Kreindler & Kreindler LLP) as Plaintiffs' Federal-State Liaison Counsel for California. The Federal-State

Liaison Counsel are to provide reports to the Court on the status of the state litigation and coordination with the MDL.

6. To the extent feasible, the PEC and PSC are expected to work jointly with leadership in the pending state actions to coordinate pretrial proceedings and case management.

7. Compensation for work performed and the approved costs incurred by the PEC, PSC, Plaintiffs' Liaison Counsel, Plaintiffs' Federal-State Liaison Counsel, any subcommittee approved by the PEC and PSC or any attorney appointed by this Court, will be paid by the common benefit funds which shall be covered in a separate Case Management Order.

It is so **ORDERED.**

Dated: July 18, 2013

BY THE COURT:

Douglas P. Woodlock
United States District Judge

6

# **Exhibit 3**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: XARELTO (RIVAROXABAN)  PRODUCTS    \* **MDL NO. 2592**
LIABILITY LITIGATION

      \* **SECTION L**
      \*
      \* **JUDGE ELDON E. FALLON**
      \*
      \* **MAG. JUDGE NORTH**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***   \*

**THIS DOCUMENT RELATES TO ALL CASES**

## PRETRIAL ORDER #7

Numerous applications/nominations for the Plaintiffs' Steering Committee (PSC)

positions have been filed in accordance with the procedures set forth in Pretrial Order #1.  The

Court, after having reviewed the applications and carefully considered the matter, hereby

appoints the following members to the PSC:

Andy D. Birchfield, Jr. (Co-Lead Counsel)
234 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax:     (334) 954-7555
Email: Andy.Birchfield@BeasleyAllen.com

Dr. Mark Alan Hoffman
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Phone: (215) 574-2000
Fax:     (215) 574-3080
Email:  mhoffman@rossfellercasey.com

Brian H. Barr (Co-Lead Counsel)
316 Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
Fax:     (850) 436-6044
Email: bbarr@levinlaw.com

Bradley D. Honnold
11150 Overbrook Rd., Ste. 200
Leawood, KS 66211
Phone: (913) 266-2300
Fax:     (913) 266-2366
Email:  bhonnold@bflawfirm.com

Russell T. Abney
2100 RiverEdge Parkway,
Suite 720
Atlanta, Georgia  30328
Email: rabney@lawyerworks.com

Frederick Longer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax:     (215-592-4663
Email: flonger@lfsblaw.com

Sindhu S. Daniel
550 Broad Street, Suite 920
Newark, NJ 07102
Phone: (973) 639-9100
Fax:     (973) 639-9393
Email:  sdaniel@seegerweiss.com

Dianne M. Nast
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Email: dnast@nastlaw.com

Roger C. Denton
100 S. 4th Street
St. Louis, MO 63102
Phone: (314) 621-6115
Email:  rdenton@uselaws.com

Neil D. Overholtz
17 E. Main Street , Suite 200
Pensacola, Florida 32501
Phone: (850) 916-7450
Fax:     (850) 916-7449
Email:  noverholtz@awkolaw.com

Michael Goetz
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: (813) 221-6581
Fax:     (813) 222-4737
Email: MGoetz@ForThePeople.com

Ellen Relkin
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
Fax:     (212) 344-5461
Email:  Erelkin@weitzlux.com

The Court appoints Co-Plaintiffs' Liaison Counsel, Leonard Davis and Gerald Meunier, and Co-Lead Counsel, Andy Birchfield and Brian Barr, to comprise the PSC Executive Committee.  It shall be the Executive Committee's duty to coordinate the responsibilities of the PSC, schedule PSC meetings, keep minutes or transcripts of these meetings, appear at periodic court noticed status conferences, perform other necessary administrative or logistic functions of the PSC, and carry out any other duty as the Court may order.

Additionally, the Court appoints Dawn Barrios to serve as Chair of the State Liaison Committee, in which capacity she will serve as an *ex-officio* member of the PSC Committee. The Court will appoint additional members to the State Liaison Committee in the future.

The appointment to the PSC is of a personal nature.  Accordingly, the above appointees cannot be substituted by other attorneys, including members of the appointee's law firm, to perform the PSC's exclusive functions, such as committee meetings and court appearances,

except with prior approval of the Court.  Furthermore, the appointment to the PSC is for one year

from the date of this Order.  Appointees may apply to be reappointed when their term expires.  If

or when they apply, their application should contain references to the nature and scope of their

work on the PSC, including the time and resources expended during the past term.

The PSC will have the following responsibilities:

<u>Discovery</u>
    (1) Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in
        all actions which are consolidated with the instant multi district litigation.

    (2) Develop and propose to the Court schedules for the commencement,
        execution, and completion  of all discovery on behalf of all plaintiffs.

    (3) Cause to be issued in the name of all plaintiffs the necessary discovery
           a.  requests, motions, and subpoenas pertaining to any witnesses and
               documents needed to properly prepare for the pretrial of relevant
               issues
           b.  found in the pleadings of this litigation.  Similar requests, notices,
               and
           c.  subpoenas may be caused to be issued by the PSC upon written
               request
           d.  by an individual attorney in order to assist him/her in the
               preparation of the pretrial stages of his/her client's particular
               claims.

    (4) Conduct all discovery in a coordinated and consolidated manner on behalf
           e.  and for the benefit of all plaintiffs.

<u>Hearings and Meetings</u>

    (1) Call meetings of counsel for plaintiffs for any appropriate purpose, including
        coordinating responses to questions of other parties or of the Court.  Initiate
        proposals, suggestions, schedules, or joint briefs, and any other appropriate
        matter(s) pertaining to pretrial proceedings.

    (2) Examine witnesses and introduce evidence at hearings on behalf of plaintiffs.

    (3) Act as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

### Trial

    (1) Coordinate trial team(s)' selection, management, and presentation of any common issue, "bellwether" and/or "test" case trial(s).

    (2) Assemble and prepare "trial packages" that can be utilized in future cases, including cases that are remanded to transferor courts for trial.

### Miscellaneous

    (1) Submit and argue any verbal or written motions presented to the Court or Magistrate on behalf of the PSC as well as oppose when necessary any motions submitted by the defendant or other parties which involve matters within the sphere of the responsibilities of the PSC.

    (2) Negotiate and enter into stipulations with Defendants regarding this litigation. All stipulations entered into by the PSC, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until the Court has ratified the stipulation. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection thereto within five (5) days after he/she knows or should have reasonably become aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

    (3) Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

    (4) Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and conditions, for examination by all MDL Plaintiffs or their attorneys.

    (5) Perform any task necessary and proper for the PSC to accomplish its responsibilities as defined by the Court's orders, including organizing sub-committees comprised of plaintiffs' attorneys not on the PSC and assigning them tasks consistent with the duties of the PSC.

[4]

(6) Keep counsel of all plaintiffs advised of all pertinent developments in the MDL.

(7) Perform such other functions as may be expressly authorized by further orders of this Court.

New Orleans, Louisiana this 9th day of February, 2015.

_____

UNITED STATES DISTRICT JUDGE

# **Exhibit 4**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ) | |
| ) | Case No. 1:08-gd-50000 |
| In re: GADOLINIUM-BASED ) | |
| CONTRAST AGENTS PRODUCTS ) | |
| LIABILITY LITIGATION ) | Judge Dan Aaron Polster |
| (MDL No. 1909) ) | |
| ----------------------------------------------- ) | |
| THIS DOCUMENT IS APPLICABLE TO: ) | |
| ) | |
| ALL CASES ) | |

**CASE MANAGEMENT ORDER NO. 2**
**(Establishing Plaintiffs' Steering Committee)**

**IT IS HEREBY ORDERED THAT:**

1.      Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the above-caption actions, and any subsequently filed or transferred actions related to the claims asserted in these cases, are hereby coordinated for all pretrial purposes.  This action shall be captioned "*In re Gadolinium Based Contrast Agents Products Liability Litigation,*" and the file shall be maintained under Master File No. MDL No. 1909.

2.      This Order, and any additional case management orders entered in this litigation, shall govern each case coordinated in MDL No. 1909.

3.      Peter W. Burg of the law firm of Burg Simpson Eldredge Hersh & Jardine and Troy Rafferty of Levin Papantonio Thomas Mitchell Eschner & Proctor shall serve as Co-Chairs of the PSC and Executive Committee.  Peter J. Brodhead of the law firm Spangenberg, Shibley & Liber shall serve as Plaintiffs' Liaison Counsel.

4.      This Court hereby appoints a Plaintiffs' Executive Committee ("PEC") which

shall consist of the following attorneys:

Peter W.  Burg, Co-Chair
Burg Simpson Eldredge Hersh Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Tel: (303) 792-5595
Fax: (303) 708-0527
pburg@burgsimpson.com

Peter J. Brodhead, Plaintiffs' Liaison Counsel
Spangenberg, Shibley & Liber, LLP
1900 East Ninth Street, Suite 2400
Cleveland, OH 44114
Tel: (216)696-3232
Fax: (216) 696-3924
pbrodhead@spanglaw.com

Steve Skikos
Skikos, Crawford, Skikos, Joseph & Millican
LLP
625 Market Street, 11th Floor
San Francisco, CA  94105
Tel: (415) 956-5257
Fax: (415) 956-4416
sskikos@lopez-hodes.com

Troy Rafferty, Co-Chair
Levin Papantonio Thomas Mitchell Eschner &
Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
trafferty@levinlaw.com

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, New York 10004
Tel: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

5.      This Court hereby appoints a Plaintiffs' Steering Committee ("PSC") which shall

consist of the following attorneys:

Peter W.  Burg, Co-Chair
Burg Simpson Eldredge Hersh Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Tel: (303) 792-5595
Fax: (303) 708-0527
pburg@burgsimpson.com

Troy Rafferty, Co-Chair
Levin Papantonio Thomas Mitchell Eschner &
Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
trafferty@levinlaw.com

Peter J. Brodhead, Plaintiffs' Liaison Counsel
Spangenberg, Shibley & Liber, LLP
1900 East Ninth Street, Suite 2400
Cleveland, OH 44114
Tel: (216)696-3232
Fax: (216) 696-3924
pbrodhead@spanglaw.com

Steve Skikos
Skikos, Crawford, Skikos, Joseph & Millican
625 Market Street, 11th Floor
San Francisco, CA 94105
Tel: (415) 956-5257
Fax: (415) 956-4416
sskikos@lopez-hodes.com

Howard Nations
Law Offices of Howard Nations
4515 Yoakum Blvd.
Houston, TX 77006
Tel: (713) 807-8400
Fax: (713) 807-8423
nations@howardnations.com

Roger Denton
Schlichter Bogart & Denton
100 South 4th Street, Suite 900
St. Louis, MO 63102
Tel: (314) 621-6115
Fax: (314) 621-7151
rdenton@uselaws.com

Mark Robinson, Jr.
Robinson Calcagnie & Robinson Inc.
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Tel: (949) 720-1288
Fax: (949) 720-1292
mrobinson@rcrlaw.net

Jerrold Parker
Parker Waichman Alonso LLP
27399 Riverview Center Blvd., Suite 106
Bonita Springs, FL 34134
Tel: (239) 390-1000
Fax: (239) 390-0055
jparker@yourlawyer.com

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, New York 10004
Tel: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Michelle Parfitt
Ashcraft & Gerel
2000 L Street, N.W., Suite 400
Washington, D.C.20036
Tel: (202) 783-6400
Fax: (202) 416-6392
mparf@aol.com

Russ Briggs
Fibich, Hampton, Leebron & Garth
Five Houston Center
1401 McKinney, Suite 1800
Houston, TX 77010
Tel: (713) 751-0025
Fax: (713) 751-0030
rbriggs@fhl-law.com

Barry Hill
Hill Williams
89 12th Street,
Wheeling, WV 26003
Tel: (304) 233-4966
Fax: (304) 233-4969
bhill@hwlaw.us

Tobias Milrood
Pogust Braslow & Millrood, LLC
8 Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245
tmillrood@pbmattorneys.com

Jayne Conroy
Hanly Conroy Bierstein Sheridan Fisher &
Hayes LLP
112 Madison Avenue
New York, NY  10016
Tel: (212) 784-6402
Fax: (212) 784-6420
jconroy@hanlyconroy.com

Ramon Rossi Lopez
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
Tel: (949) 737-1501
Fax: (949) 737-1504
rlopez@lopezmchugh.com

Larry Gornick
Levin Simes Kaiser & Gornick LLP
44 Montgomery Street, 36th floor
San Francisco, CA 94104
Tel: (800) 901-4001
Fax: (415) 981-1270
lgornick@lskg-law.com

6.      This Court hereby appoints the following attorneys as Federal-State Court Liaison

to the PSC:

David R. Buchanan
Seeger Weiss LLP
One William Street
New York, NY  10004
Tel:  (212) 584-0700
Fax:  (212) 584-0799
dbuchanan@seegerweiss.com

Tor Hoermann
Simmons Cooper LLC
707 Berkshire Blvd.
East Alton, IL  62024
Tel:  (618) 259-2222
Fax:  (618) 259-2251
thoerman@simmonscooper.com

Ramon Rossi Lopez
Lopez McHugh LLP
100 Bayview circle, Suite 5600
Newport Beach, CA  92660
Tel:  (949) 737-1501
Fax:  (949) 737-1504
rlopez@lopezmchugh.com

7.      Responsibilities of  the PSC include:

1.      Discovery

(a)      Initiate, coordinate, and conduct all pretrial discovery on behalf of all

Plaintiffs who file civil actions in this Court or that are transferred to this Court pursuant to 28

U.S.C. § 1407, which contain any cause of action relating to a Gadolinium Contrast Dye, whether on an individual or class action basis;

(b)     Develop and propose to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all Plaintiffs;

(c)     Cause to be issued in the name of all Plaintiffs the necessary discovery requests, motions, and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial of relevant issues found in the pleadings of this litigation.  Similar requests, notices, and subpoenas may be caused to be issued by the PSC upon written request by an individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims; and

(d)     Conduct all discovery in a coordinated and consolidated manner on behalf of and for the benefit of all Plaintiffs including appointing lawyers to conduct depositions.

2.     <u>Hearings and Meetings</u>

(a)     Call meetings of counsel for Plaintiffs for any appropriate purpose, including coordinated responses to questions of other parties or of the Court;

(b)      Initiate proposals, suggestions, schedules, or joint briefs, and for any other appropriate matter(s) pertaining to pretrial proceedings;

(c)     The PSC or lawyers designated by them shall examine witnesses and introduce evidence at hearings on behalf of Plaintiffs; and

(d)     The PSC or lawyers designated by the PSC shall act as spokesperson for all Plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any Plaintiffs counsel to present non-repetitive individual or different positions as permitted by the Court.

3.    <u>Miscellaneous</u>

(a)    All communications by Plaintiffs with the Court should be through the Co-Chairs of the PEC or Plaintiffs' Liaison Counsel.  If circumstances require direct correspondence with the Court by any individual counsel, copies of any said communications shall be served using the Court's electronic filing sytem;

(b)    The PSC or lawyers designated by them shall submit and argue any verbal or written motions presented to the Court or on behalf of the PSC and all Plaintiffs as well as oppose when necessary any motions submitted by the Defendant or other parties that involve matters within the sphere of the responsibilities of the PSC (this provision does not apply to motions specifically directed to individual plaintiffs and their counsel);

(c)    The PSC or lawyers designated by them shall negotiate and enter into stipulations with Defendants' Lead and Liaison Counsel  regarding this litigation;

(d)    The PSC or lawyers designated by them are authorized to explore, develop, pursue, and recommend settlement options pertaining to any claim or portion thereof of any case filed in this litigation;

(e)    The PEC and PSC shall establish committees to enable the orderly and efficient prosecution of these actions;

(f)    The PSC or lawyers designated by them shall maintain adequate files of all pretrial matters and have them available, under reasonable terms and conditions, for examination by Plaintiffs or their attorneys;

(g)    The PEC and PSC are authorized to call meetings of plaintiffs' counsel when appropriate and to consult with plaintiffs' counsel on matters of common concern;

(h)    The PSC or lawyers designated by them shall perform any tasks necessary

and proper for the PSC to accomplish its responsibilities as defined by the Court's orders;

(i)     The PSC or lawyers designated by them shall perform such other functions as may be expressly authorized by further orders of this Court; and

(j)     Except as to matters relevant only to a specific case, counsel that represent a plaintiff or plaintiffs who wish to initiate discovery or file motions must first seek authorization from the PEC to initiate such motions or discovery.  If such authorization is granted, counsel that wishes to initiate discovery or file motions must provide written notification of such authorization within said discovery or motion papers. If after reasonable consultation with the PEC and for good cause, such counsel disagrees with the PEC's determination, then counsel may petition the Court for relief to initiate such discovery or motions.

(k)     The PSC or lawyers designated by them shall create a method for reimbursement for costs and/or fees for services will be set at a time and in a manner established by subsequent order of the Court.

8.     In addition to serving on the PSC, the responsibilities of Plaintiffs' Liaison Counsel shall include:

(a)     To receive and distribute to plaintiffs' counsel, as appropriate, orders, notices and correspondence from the Court;

(b)     To coordinate the filing of notices and papers by members of the PEC, PSC and all plaintiffs' counsel, including the designation of responsibilities to encourage the filing of a single set of papers by counsel in situations where such group members have a common position;

(c)     To maintain and distribute to the Court, to counsel for plaintiffs, and to counsel for defendants an up-to-date comprehensive Service List of all plaintiffs' counsel;

      (d)     To make himself available for any telephone conferences convened by the Court and to communicate the substance of any such telephone conference to all other Plaintiffs' counsel;

      (e)     To receive and distribute pleadings, Orders, and motions to Plaintiffs' counsel by overnight courier service or telecopier within three business days after receipt, unless such service has been waived, in writing, by a receiving counsel;

      (f)     To maintain and make available to all Plaintiffs' counsel of record at reasonable hours a complete file of all documents served by or upon each party;

      (g)     To carry out such other duties as the Court may Order; and

      (h)     Liaison Counsel shall be entitled to seek reimbursement for costs expended at the time and in a manner approved by the Court.

                      SO ORDERED:

DATED: March __24th__, 2008

                      /s/Dan Aaron Polster_____
                      HONORABLE DAN AARON POLSTER
                      UNITED STATES DISTRICT JUDGE

# **Exhibit 5**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

In re: Testosterone Replacement      )      Case No. 14 C 1748
Therapy Products Liability Litigation    )      MDL No. 2545

### This document relates to all cases

### CORRECTED
### MDL CASE MANAGEMENT ORDER NO. 4

By this order, the Court appoints plaintiffs' lead counsel, liaison counsel,

executive committee, and steering committee, as well as the organizational structure for

defense counsel. With regard to defense counsel, the Court approves and adopts

Defendants' Submission In Support of Defendants' Liaison Counsel (docket no. 149),

filed on July 3, 2014.

A number of attorneys for various plaintiffs made a joint proposal for an

organizational structure and assignments. Other attorneys who were not part of the

joint proposal also made separate requests to be part of the organizational structure for

plaintiffs' counsel. The Court interviewed applicants for the plaintiffs' counsel positions

in open court on July 29, 2014.

The joint proposal includes 32 attorneys in total: 3 proposed co-lead counsel;

another 7 to serve on the plaintiffs' counsel executive committee along with co-lead

counsel; a steering committee including 20 attorneys, and 2 co-liaison counsel. This is

a significantly larger group than in the "typical" product liability multi-district litigation

proceeding. Counsel have, however, made a reasonable argument that this is not the

typical MDL proceeding, largely in view of the fact that it involves claims against six

different defendants for different product forms. Some pretrial matters will involve

issues common to all six defendants, but some will involve issues that are defendant-specific.  The Court has some misgivings regarding the size of the group but is persuaded, at least for the time being, that the structure and size proposed is reasonable and appropriate.  (As indicated below, the Court has added two attorneys who were not included in the joint proposal.)

The Court has taken into account all applicants' written submissions as well as the oral presentations made in open court.  With regard to some applicants, the Court has also consulted with other judges who have presided over MDL proceedings in which applicants had leadership roles.  The Court has also considered the factors set forth in Case Management Order No. 1 and in the Manual for Complex Litigation (4th) § 10.22.

All appointments are made for a one-year period and will expire on August 15, 2015.  Appointees may apply for reappointment when their term expires.  A re-application process will be established at an appropriate time in advance of the expiration date.  Counsel are advised in advance that applications for reappointment will be required to include references to the nature and scope of the applicant's work, including time and resources expended during the previous term.

The Court makes the following appointments:

Co-lead counsel:          Ronald E. Johnson, Jr.
                          Trent B. Miracle
                          Christopher A. Seeger

Executive Committee:      Timothy Becker
(includes co-lead counsel) Michael Papantonio
                          Seth Katz
                          Michael London
                          Maury A. Herman
                          Michelle Kranz

Bill Robins

Steering Committee:          Martin Crump
(includes counsel            T. Matthew Leckman
listed above)                Lawrence J. Gornick
                             Matthew Teague
                             Gregory Spizer
                             Frank Petosa
                             Kristine Kraft
                             Elwood C. Stevens, Jr.
                             Christopher Tisi
                             Arnold Levin
                             Alex H. MacDonald
                             Mark A. Hoffman
                             Dawn M. Barrios
                             Derriel C. McCorvey
                             Roger W. Orlando
                             Rachel Abrams
                             W. Mark Lanier
                             David S. Ratner
                             Yvonne Flaherty
                             Dianne Nast
                             Kathleen Chavez[1]

Co-Liaison Counsel:          Brian J. Perkins
                             Myron Cherry

Plaintiffs' co-lead counsel are directed to promptly prepare, and provide to the Court by no later than August 7, 2014, a draft order embodying the Court's appointments and spelling out the responsibilities of co-lead counsel, the executive committee, the steering committee, and co-liaison counsel. The order may also include other matters that co-lead counsel, the executive committee, or the steering committee consider to be appropriate for inclusion in the order. Any objections to the form or content of the order must be filed by no later than August 11, 2014.

[1] Ms. Chavez applied for a position on the steering committee. She did not appear at the July 29, 2014 hearing. One of her law partners orally advised the Court that Ms. Chavez's application was being withdrawn in consideration of the fact that the partner had also applied. The Court respectfully declines to accept the withdrawal of Ms. Chavez's application and hereby appoints her to the steering committee.

3

Defendants' liaison counsel, as designated in defendants' joint submission of July 3, 2014, is directed to promptly prepare and circulate among "lead counsel" for each defendant, and is to propose to the Court by no later than August 7, 2014, a draft order embodying the Courts appointment(s) and spelling out the responsibilities of the counsel thus appointed.  The order may also include other matters that liaison counsel and any defendant's "lead counsel" consider to be appropriate for inclusion in the order. Any objections to the form or content of the order must be filed by no later than August 11, 2014.

It is so ordered.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 31, 2014

# **<u>Exhibit 6</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

IN RE:                                                  **ORDER NO. 5**
                                               **(Organization of Plaintiffs'**
MIRENA IUD PRODUCTS LIABILITY LITIGATION    **Counsel, Protocols for Common**
                                               **Benefit Work and Expenses)**

*This Document Relates To All Actions*
-----------------------------------------------------------------------x        13-MD-2434 (CS)


Seibel, J.

      The Court has received an application for appointment of Plaintiffs' Steering Committee

from Plaintiff's Liaison Counsel.  (Doc. 193.)  Having carefully reviewed all of the submissions,

upon discussion of the applications during this Court's case management conference of July 2,

2013, and there being no opposition from counsel for any known Plaintiff, the Court hereby

APPOINTS the following as Plaintiffs' Steering Committee ("PSC"):

      Rachel Abrams (Levin Simes LLP)

      Richard Arsenault (Neblett, Beard & Arsenault)

      Dawn Chmielewski (Climaco, Wilcox, Peca, Tarantino & Garofoli Co., LPA)

      Steve Faries (Matthews & Associates)

      Yvonne Flaherty (Lockridge, Grindal, Nauen P.L.L.P.)

      Catherine Heacox (The Lanier Law Firm)

      Eric Holland (Holland Groves Schneller & Stolze)

      Michael Johnson (Johnson Becker PLLC)

      Randi Kassan (Sanders, Viener, Grossman LLP)

      Shelly Kaufman (Geragos and Geragos)

      Fred Longer (Levin, Fishbein, Sedran & Berman)

      Dianne Nast (NastLaw LLC)

      Roger Smith (Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.)

# I. <u>ORGANIZATION OF PLAINTIFFS' COUNSEL</u>

The application also addressed the way in which Plaintiffs' counsel should be organized, and enumerated the specific duties to be undertaken by Plaintiffs' Lead counsel, Plaintiffs' liaison counsel, and PSC. After review of the application and the proposed order, and after discussion at the July 2, 2013 case management conference, the Court hereby ORDERS as follows:

### A. *Lead Counsel*

In its May 22, 2013 Order (Doc. 103), the Court appointed Plaintiffs' Lead Counsel and Liaison Counsel as follows:

> James R. Ronca – Plaintiffs' Co-Lead Counsel
> Fred Thompson – Plaintiffs' Co-Lead Counsel
> Matthew J. McCauley – Plaintiffs' Co-Lead Counsel
> Diogenes P. Kekatos – Plaintiffs' Liaison Counsel

Lead Counsel will be responsible for prosecuting any potential common benefit claims, as well as coordinating the pretrial proceedings conducted by counsel for the individual Plaintiffs. With respect to the common benefit claims and coordinated pretrial proceedings, Lead Counsel must:

1. determine (after such consultation with members of the PSC and other co-counsel as may be appropriate) and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the Plaintiffs on matters arising during the coordinated pretrial proceedings;

2. coordinate the initiation and conduct of discovery on behalf of the Plaintiffs consistent with the requirements of Fed. R. Civ. P. 26, including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions, except that discovery and motions initiated by the

Defendants directed to or regarding named individual Plaintiffs will be handled by the attorney(s) for those individuals;

3. delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the Plaintiffs is conducted effectively, efficiently and economically;

4. enter into stipulations with opposing counsel necessary for the conduct of the multi-district litigation ("MDL");

5. convene meetings of the PSC for the purpose of proposing joint action and discussing and resolving matters of common concern;

6. organize themselves and agree on a plan for conducting the MDL on behalf of all Plaintiffs;

7. assess members of the PSC payments into a Common Benefit "Shared Cost" Fund ("shared cost" being defined below), collect payments, maintain an account, pay generic expenses in accordance with this order, and account to the PSC and the Court upon request as to the collection and use of such funds;

8. brief and argue motions for the Plaintiffs and file opposing briefs and argue motions and proceedings initiated by other parties (except as to matters specifically directed to individual Plaintiffs and their counsel);

9. consult with and employ expert witnesses;

10. maintain time and expense records for work performed, costs incurred and other disbursements made for any potential common benefit claim, proof of potential common benefit claims, and related matters on behalf of the PSC, and report with reasonable regularity, in writing, to the PSC concerning expenses, disbursements and receipts;

11. monitor work performed by the PSC and those whose work it has specifically authorized;

12. perform all tasks necessary to carry out the functions of Lead Counsel and to properly coordinate Plaintiffs' pretrial activities;

13. authorize Plaintiffs' counsel to initiate case-specific motions and discovery;

3

14. negotiate settlements subject to court approval on behalf of Plaintiffs;

15. if there is a settlement, propose a plan of allocation;

16. prepare and distribute to the parties periodic status reports; and

17. coordinate and communicate with Defendants' counsel with respect to the matters addressed in this paragraph.

No generic discovery or other common action or work in this litigation will be undertaken on behalf of the PSC except at the direction or with permission of Lead Counsel; provided, however, that any attorney aggrieved by any refusal of permission may seek Court review of the refusal.

### B. Liaison Counsel

Liaison Counsel shall maintain an up-to-date service list of all Plaintiffs' attorneys involved in this MDL, and shall be the point of contact between the Court and the Court-appointed Plaintiffs' leadership. Liaison Counsel shall ensure that all Orders entered by this Court and all papers filed by the Defendants are timely distributed to all Plaintiffs' counsel in the MDL and that all papers filed by the Court-appointed Plaintiffs' leadership in this MDL are timely distributed to counsel for the Defendants. In addition, Liaison Counsel shall assume any other duties delegated by Lead Counsel.

### C. Plaintiffs' Steering Committee

The duties and responsibilities of the PSC are as follows. The PSC shall:

1. from time to time consult with Plaintiffs' Lead Counsel in conducting the Plaintiffs' coordinated pretrial activities and in planning for trial;

2. establish procedures for documenting and monitoring costs and the computing of potential common benefit time;

3. consult the *Manual for Complex Litigation, Fourth* ("*Manual*") to consider recommendations and formation of internal committees (*e.g.*, Law, Discovery,

Science, Briefing, Experts, and Trial), on which attorneys who are not designated as PSC members will have the opportunity to serve and have input in the litigation through the committee. Consistent with section 10.22 of the *Manual*, counsel appointed to leadership positions assume "an obligation to act fairly, efficiently, and economically" and "committees of counsel . . . should try to avoid unnecessary duplication of effort";

4. contribute to the Common Benefit Fund for "shared costs" (as defined below); and

5. otherwise assist Lead Counsel in the their discharge of the following duties and responsibilities:

    a) determining and presenting (in briefs, oral argument, or such other fashion as may be appropriate) to the Court and opposing parties the Plaintiffs' position on matters arising during coordinated pretrial proceedings;

    b) coordinating the initiation and conduct of discovery on behalf of the Plaintiffs consistent with the requirements of Fed. R. Civ. P. 26, including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions, except that discovery and motions initiated by Defendants directed to or regarding named individual plaintiffs will be handled by the attorney for those individuals;

    c) delegating specific tasks to other counsel in a manner to ensure that coordinated pretrial preparation for the Plaintiffs is conducted effectively, efficiently and economically;

    d) entering into stipulations with opposing counsel necessary for the conduct of the MDL;

    e) organizing themselves and agreeing on a plan for conducting the MDL on behalf of all Plaintiffs;

    f) briefing and arguing motions for the Plaintiffs and filing opposing briefs and arguing motions and proceedings initiated by other parties (except as to matters specifically directed to individual plaintiffs and their counsel);

    g) consulting with and employing expert witnesses;

h) convening meetings of Plaintiffs' counsel to consult on matters of common concern;

i) maintaining time and expense records for work performed, costs incurred, and other disbursements made for any potential common benefit claim, proof of potential common benefit claims, and related matters on behalf of the PSC;

j) monitoring work performed by PSC members and those whose work the PSC has specifically authorized;

k) properly coordinating Plaintiffs' pretrial activities;

l) authorizing Plaintiffs' counsel to initiate case specific motions and discovery;

m) negotiating settlements subject to court approval on behalf of Plaintiffs;

n) if there is a settlement, proposing a plan of allocation;

o) preparing and distributing to the parties periodic status reports; and

p) coordinating and communicating with Defendants' counsel with respect to the aforementioned matters.

## II.  ADOPTION OF CASE MANAGEMENT PROTOCOLS

The Court hereby adopts the following guidelines for the management of case-staffing, timekeeping, cost reimbursement, and related common benefit issues.  The recovery of common benefit attorneys' fees and cost reimbursements will be limited to "Participating Counsel." "Participating Counsel" shall be defined as the members of the PSC (along with members and staff of their firm), any other counsel authorized by Lead Counsel who desire to be considered for common benefit compensation, or counsel who have been specifically approved by this Court as Participating Counsel prior to incurring any such cost or expense.  Counsel are forewarned that no application for approval to incur common benefit fees, costs, or expenses will be considered by this Court unless counsel have first obtained approval from Lead Counsel.

Participating Counsel shall be eligible to receive common benefit attorneys' fees and reimbursement of costs and expenses only if the time expended, costs incurred, and activity in question were (a) for the common benefit of Plaintiffs; (b) appropriately authorized; (c) timely

6

submitted; (d) reasonable; and (e) approved by this Court.  As detailed below in Parts II.A &
II.B, Participating Counsel who seek to recover Court-awarded common benefit attorneys' fees,
costs, and expenses in connection with this litigation shall keep a daily, contemporaneous record
of their time and expenses, noting with specificity the amount of time, billing rate, and particular
activity, along with a brief note indicating the source of authorization for the activity in question.

Participating Counsel, as defined above, shall agree to the terms and conditions herein,
including submitting to this Court's jurisdiction and agreeing that this Court has plenary
authority regarding the award and allocation of common benefit attorneys' fees and awards for
cost and expense reimbursements in this matter.

### A.  COMMON BENEFIT WORK

1.  <u>Authorization for Compensable Common Benefit Work</u>

Authorized "Common Benefit Work" includes assignments made by Lead Counsel as set
forth above.  Unless specifically and explicitly authorized in writing, no time spent on
developing or processing individual issues in any case for an individual client (claimant), and no
time spent on any unauthorized work, will be considered or should be submitted.

Examples of authorized and unauthorized work include, but are not limited to:

a) <u>Depositions</u>:  While it is impracticable to impose inflexible rules to cover every
conceivable situation, Lead Counsel shall exercise discretion, judgment, and
prudence to designate only that number of attorneys to participate in any given
deposition that is commensurate with the nature of that deposition so as to avoid
over-staffing.  Thus, for example, the deposition of a causation expert proffered
by Defendants would typically justify the assignment of more attorneys than
would the defense of the deposition of one of Plaintiffs' fact witnesses.  Time and
expenses for Participating Counsel not designated as one of the authorized
questioners or otherwise authorized to attend the deposition by Lead Counsel
shall not be considered Common Benefit Work but, rather, considered as

attending on behalf of such counsel's individual clients. Unnecessary attendance by counsel may not be compensated in any fee application to the Court.

b) <u>Periodic PSC Conference Calls and PSC meetings</u>: Calls are held so that individual attorneys are kept up-to-date on the status of the litigation, and participation by listening to such calls is not common benefit work. All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their respective clients, and that is a reason to listen in on those calls. The attorneys designated by Lead Counsel to run or participate in those calls are working for the common benefit by keeping other attorneys educated about the litigation and their time will be considered for common benefit. During such telephone or conference calls and at PSC meetings, there is a presumption that only the PSC member's time will qualify for common benefit time, unless non-PSC member participation is requested by the PSC member and expressly authorized for each call or meeting by Lead Counsel.

c) <u>Periodic MDL Status Conferences</u>: Status conferences will be held so that the litigation moves forward and legal issues are resolved with the Court. Individual attorneys are free to attend any status conference held in open court in order to stay up to date on the status of the litigation, but attending and listening to such conferences is not Common Benefit Work. All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their respective clients. Mere attendance at a status conference will not be considered common benefit time, and expenses incurred in relation thereto will not be considered common benefit expenses. The attorneys designated by the Lead Counsel to address issues that will be raised at a given status conference or requested by the Lead Counsel to be present at a status conference are working for the common benefit and their time will be considered for the common benefit. Similarly, any attorney whose attendance at a status conference is specifically requested by the undersigned or by Magistrate Judge Smith (or by a Court-appointed Special Master) to address a common issue may submit his or her time for evaluation as common benefit time.

d) <u>Identification and Work-Up of Experts</u>:  If a Participating Counsel retains an expert without the knowledge and approval of Lead Counsel, time and expenses attributable to the same may not be approved as Common Benefit Work, or the expenses pertaining thereto as Common Benefit Expenses.

e) <u>Attendance at Seminars</u>:  Attendance at seminars (*e.g.*, American Association for Justice Section Meetings, Mass Torts Made Perfect, Harris Martin, and similar seminars and Continuing Legal Education programs) shall not qualify as Common Benefit Work, or the expenses pertaining thereto as Common Benefit Expenses.

f) <u>Document Review</u>:  Only document review specifically authorized by Lead Counsel and assigned to an attorney will be considered Common Benefit Work.  If an attorney elects to review documents that have not been assigned to that attorney by Lead Counsel, that review is not considered common benefit.  Unless approved in writing by Lead Counsel, only licensed attorneys may conduct common benefit document review.  Descriptions associated with "document review" must contain sufficient detail to allow those reviewing the time entry to generally ascertain what was reviewed.  For example, indicating the custodian, search query, or number of document folders reviewed is the kind of description needed.

g) <u>Review of Filings and Orders</u>:   All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their respective clients, and review of filings made and Orders entered in this litigation is part of that obligation.  Only those attorneys designated by Lead Counsel to review or summarize those filings or Orders for the benefit of all plaintiffs in this MDL are working for the common benefit and their time will be considered for Common Benefit Work.  All other counsel are reviewing those filings and Orders for their own benefit and that of their respective clients and such review will not be considered Common Benefit Work.

h) <u>Emails</u>:  Except for PSC members and their assigned attorneys and staff working on this MDL, time recorded for reviewing emails is not compensable unless germane to a specific task being performed by the receiving or sending attorney or party that is directly related to that email and that is for the common benefit of

plaintiffs. Thus, for example, review of an email sent to dozens of attorneys to keep them informed on a matter on which they are not specifically working would not be compensable as Common Benefit Work. All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their clients and that is a reason to review emails to a larger group, which involves a matter on which the recipient is not directly and immediately working.

    i)   <u>Review of Discovery</u>: All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their respective clients, and that is a reason to review discovery served in this litigation. Except for PSC members, only those attorneys designated by Lead Counsel to review discovery are working for the common benefit and their time accordingly considered Common Benefit Work. All other counsel are reviewing those discovery responses for their own benefit and the benefit of their own clients, and such review will not be considered Common Benefit Work.

In the event that Participating Counsel are unsure if the action they are about to undertake is considered Common Benefit Work, they shall ask Lead Counsel in advance as to whether such time may be compensable.

    2.   <u>Timekeeping and Submission of Time Records</u>

All time must be accurately and contemporaneously maintained. Participating Counsel shall keep contemporaneous billing records of the time spent in connection with Common Benefit Work on this MDL, indicating with specificity the hours and billing rate, along with a brief note indicating the source of authorization for the activity in question and a brief description of the particular activity (such as "conducted deposition of John Doe as authorized by [name of Lead Counsel]"). Time submissions shall be made to Lead Counsel on a quarterly basis in accordance with the guidelines set forth herein and using the instructional memorandum and time-keeping form to be distributed by Lead Counsel and which are annexed hereto as Addenda A and B, respectively, so that Lead Counsel may retain those forms for later

submission to this Court if and when necessary. Time entries that are not sufficiently detailed will not be considered for payment of Common Benefit fees. All time for Common Benefit Work by each firm shall be recorded and maintained in tenth-of-an-hour increments. The failure to secure authorization from Lead Counsel to incur Common Benefit time and expenses, or to maintain and timely provide such records or to provide a sufficient description of the activity, will be grounds for denying the recovery of attorneys' fees or expenses in whole or in part. Lead Counsel must maintain all time submissions in a format so that the Court may review any application for fees not only by lawyer but also by task (*e.g.*, all time spent by anyone on responding to a particular motion or attending or preparing for a particular deposition).

### B. COMMON BENEFIT EXPENSES

#### 1. Shared Costs

"Shared Costs" are costs that will be paid out of the PSC Fund administered by Plaintiffs' Lead Counsel. Each PSC member shall contribute to the PSC Fund at times and in amounts sufficient to cover plaintiffs' expenses for the administration of this MDL. The timing and amount of each assessment will be determined by Plaintiffs' Lead Counsel, and each assessment will be paid within 30 days as instructed by Plaintiffs' Lead Counsel. Failure to pay assessments will be grounds for removal from the PSC. Shared Costs are costs incurred for the common benefit of Plaintiffs in this MDL as a whole. No client-related costs, save certain costs relating to future cases selected as bellwether cases that will be for the common benefit (*e.g.*, related to liability and causation), shall be considered Shared Costs, unless exceptional circumstances exist and are approved by later order of this Court. All Shared Costs must be approved by Plaintiffs' Lead Counsel prior to payment.

All costs that meet these requirements and fall under the following categories shall be considered Shared Costs and qualify for submission and payment directly from the PSC Fund:

a) court, filing and service costs related to common issues;

b) deposition and court reporter costs for depositions (excluding those that are client-specific);

c) document depository creation, operation, staffing, equipment and administration;

d) Plaintiffs' Lead Counsel, Liaison Counsel, or PSC administration matters (*e.g.*, expenses for equipment, technology, courier services, long distance, telecopier, electronic service, photocopy and printing, secretarial/temporary staff, etc.);

e) PSC administration matters, such as meetings and conference calls;

f) legal and accountant fees relating to the PSC Fund;

g) expert witness and consultant fees and expenses for experts whose opinions and testimony would be generic and for the common benefit of a substantial number of cases. There shall be no reimbursement for case specific experts, except for liability and causation experts in bellwether cases, at the discretion of the PSC;

h) printing, copying, coding, scanning related to the above (out-of-house or extraordinary firm costs);

i) research by outside third-party vendors/consultants/attorneys, approved by Plaintiffs' Lead Counsel;

j) translation costs related to the above;

k) bank or financial institution charges;

l) investigative services, approved by Plaintiffs' Lead Counsel; and

m) Any assessment paid by any member firm of the PSC, including particularly funds used for the creation of the common document depository platform and for retaining generic expert witnesses.

Plaintiffs' Lead Counsel shall prepare and be responsible for distributing reimbursement procedures and the forms associated therewith. Requests for payments from the PSC Fund for Common Benefit expenses shall include sufficient information to permit Plaintiffs' Lead Counsel and a Certified Public Accountant ("CPA") to account properly for costs and to provide adequate detail to the Court.

2. Held Costs

"Held Costs" are those that will be carried by each attorney in this MDL and reimbursed as and when the PSC determines to do so.  Held Costs are those that do not fall into the above Shared Costs categories but are incurred for the common benefit of all plaintiffs in this MDL. No client-specific costs can be considered Held Costs, other than certain Common Benefit costs relating to future bellwether cases at the discretion of the PSC.  Held Costs shall be recorded in accordance with the guidelines set forth herein and on the form provided as Addendum B hereto. They shall be subject to the following limitations:

    **a) Travel Limitations**

Only reasonable expenses will be reimbursed.  Except in extraordinary circumstances approved by Lead Counsel, all travel reimbursements are subject to the following limitations:

    i.   <u>Airfare:</u>  Ordinarily, only the price of the lowest available, convenient coach fare seat will be reimbursed.  Business/First Class Airfare will not be reimbursed.  In the event that non-coach air travel is utilized, the attorney shall be reimbursed only to the extent of the lowest available, convenient coach fare, which must be contemporaneously documented.  If non-coach, private or charter travel is elected, the applicant is required to document what the lowest available, convenient coach fare in effect at that time was, and that is all that can be reimbursed.

    ii.   <u>Hotel</u>:  Hotel room charges for the average available room rate of a business hotel, such as the Hyatt, Hilton, Sheraton, Westin, and Marriott hotels, in the city in which the stay occurred, will be reimbursed.  Luxury hotels will not be fully reimbursed but, rather, will be reimbursed at the average available rate of a business hotel.

    iii.   <u>Meals</u>:  Meal expenses must be reasonable.  Expenses that significantly exceed the meal allowances for federal employees may not be approved for reimbursement.  There will be no reimbursement for alcoholic beverages, room service, mini-bar items, or movies.

    iv.   <u>Cash Expenses</u>:  Miscellaneous cash expenses for which receipts generally are not available (*e.g.*, tips, luggage handling) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

    v.   <u>Automobile Rental</u>:  Luxury automobiles rentals will not be fully reimbursed, unless only luxury automobiles are available.  Counsel must submit evidence of the unavailability of non-luxury vehicles.  If luxury automobiles are selected when non-luxury vehicles are available, then the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form and only the non-luxury rate may be claimed.

    vi.   <u>Mileage</u>:  Mileage claims must be documented by stating origination point, destination, and total actual miles for each trip.  The rate will be the maximum rate allowed by the Internal Revenue Service.

**b) Non-Travel Limitations**

    i.   <u>Long Distance, Conference Call, and Cellular Telephone Charges</u>:  Common Benefit long distance, conference call, and cellular telephone charges must be documented as individual call expenses in order to be compensable.  Copies of the telephone bills must be submitted with notations as to which charges relate to the MDL.  Such charges are to be reported at actual cost.

    ii.   <u>Shipping, Overnight, Courier, and Delivery Charges</u>:  All claimed Common Benefit shipping, overnight, courier, or delivery expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package.  Such charges are to be reported at actual cost.

    iii.   <u>Postage Charges</u>:  A contemporaneous postage log or other supporting documentation must be maintained and submitted for Common Cenefit postage charges.  Such charges are to be reported at actual cost.

    iv.   <u>Telefax Charges</u>:  Contemporaneous records should be maintained and submitted showing faxes sent and received.  The per-fax charge shall not exceed $0.50 per page.

    v.   <u>In-House Photocopy</u>:  A contemporaneous photocopy log or other supporting documentation must be maintained and submitted.  The maximum copy charge is $0.15 per page.

vi. <u>Computerized Research – Lexis, Westlaw, or Bloomberg</u>:  Claims for Lexis, Westlaw, Bloomberg, or other computerized legal research expenses should be in the exact amount charged to the firm and appropriately allocated for these research services.

**c) Verification**

The forms detailing expenses shall be certified by an attorney with authority in each firm attesting to the accuracy of the submissions.  Attorneys shall provide receipts for all expenses. Credit card receipts (not the monthly statements) are an appropriate form of verification so long as accompanied by a declaration from counsel that the charge was incurred for the common benefit. Hotel costs must be proven with the full hotel invoice.  The description of unclaimed expenses on the invoice may be redacted.

**SO ORDERED.**

Dated: July 10, 2013
      White Plains, New York

_____
      CATHY SEIBEL, U.S.D.J.

# Addendum A

## IN RE: MIRENA IUD PRODUCTS LIABILITY LITIGATION
### QUARTERLY TIME REPORT

Quarter/Date: _____

Firm Name: _____

Categories: 1 - PEC Calls/Meetings, 2 - PSC Calls/Meetings, 3 - Lead/Liaison Duties, 4 - Administrative, 5 - MDL Status Conf., 6 - Court Appearance, 7 - Research, 8 - Discovery, 9 - Doc Review, 10 - Litigation Strategy & Analysis, 11 - Dep/ Prep/Take/Defend, 12 - Pleading/Briefs/Pre-trial Motions/Legal, 13 - Science, 14 - Expert/ Consultants, 15 - Settlement, 16 - Trial Prep/Bellwether, 17 - Trial, 18 - Appeal, 19 - Miscellaneous (describe)

| Firm ID: | Last Name, First Name: | Professional Level: Partner (PT), Associate (A), Contract (C) or Paralegal (PR) | Date of Service: | Category Code: | Category Name: | Detailed Description of Work performed: | Work Assigned by or Approved by: | Billing Rate: | Time Spent (by 0.1 increments): | Fees Total: |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | $ |

| Category Name: | Total Time per Category: | Total Fees per Category: |
|---|---|---|
| PEC Calls/Meeting | | |
| PSC Calls/Meeting | | |
| Lead/Liaison Duties | | |
| Administrative | | |
| MDL Status Conf | | |
| Court Appearance | | |
| Research | | |
| Discovery | | |
| Doc Review | | |
| Litigation Strategy & Analysis | | |
| Dep. Prep/Take/Defend | | |
| Pleading/ Briefs, Pre-Trial Motions, Legal | | |
| Science | | |
| Experts/Consultants | | |
| Settlement | | |
| Trial Prep/Bellwether | | |
| Trial | | |
| Appeal | | |
| Total: | 0 | $ |

**Certifications:**

I believe that the time set above is accurate and that the time expended was spent on common benefit work.

Partner's Signature (E-Signature)

Date

Addendum B

# Mirena IUD Expense Report for _____

Law Firm _____

Last Name, First Name: _____

Quarter/Date: _____

**Categories: 1.** Assessment Fees **2.** Federal Express / Local Courier, etc. **3.** Postage Charges **4.** Facsimile Charges **5.** Long Distance **6.** In-House Photocopying **7.** Outside Photocopying **8.** Hotels **9.** Meals **10.** Mileage **11.** Air Travel **12.** Deposition Costs/ Expert Witness/Other **13.** Lexis/Westlaw **14.** Court Fees **15.** Witness / Expert Fees **16.** Investigation Fees / Service Fees **17.** Transcripts **18.** Ground Transportation (ie. Rental) **19.** Miscellaneous (Describe)

*************************************ALL ORIGINAL RECEIPTS MUST BE ATTACHED TO THIS EXPENSE SHEET*************************************

| Date: | Category Code: | Category Name: | Detailed Description: | Amount: | Receipt Provided: Yes / No (if no, provide reason) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | $ | | |

# **Exhibit 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: ETHICON, INC.,
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION

MDL NO.  2327

--------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

PRETRIAL ORDER # 4
(Initial Hearing Summary - Counsel Structure, Procedural and Discovery Issues and Future
Status Conferences)

An initial case management conference was held on April 13, 2012, by Judges Joseph R.

Goodwin and Mary E. Stanley.  Substantive matters that were addressed are summarized below.

A.  **Plaintiffs' Counsel Structure**

Some counsel for the plaintiffs submitted to the court a proposed counsel organizational

structure in accordance with paragraph 3 of PTO #1.  The proposal, the memorandum in support

and all of the individual applications for appointment to the plaintiffs' steering committee were

reviewed by the court.  After carefully considering the matter and finding no objection, the court

**APPOINTED** the following attorneys as part of the plaintiffs' counsel structure:

1.  **Coordinating Co-Lead Counsel for the Plaintiffs**

Bryan F. Aylstock
Aylstock Witkin Kreis & Overholtz, PLLC
17 E. Main St. Ste. 200
Pensacola, FL 32502
850-202-1010 phone
850-916-7449 fax
baylstock@awkolaw.com

Henry G. Garrard, III
Blasingame, Burch, Garrard & Ashley, P.C.
440 College Avenue, Suite 320
Athens, GA 30601
706-354-4000 phone
706-549-3545 fax
hgg@bbgbalaw.com

Fred Thompson, III
Motley Rice LLC
P.O. Box 1792
Mt. Pleasant, SC 29464
843-216-9118 phone
843-216-9450 fax
fthompson@motleyrice.com

It shall be the responsibility of Coordinating Co-Lead Counsel to work across MDL lines

in conjunction with the Executive Committee named below to determine which attorneys are best

suited to handle a given task, be it common corporate discovery, expert identification, deposition

preparation, motions practice and brief drafting, trial teams and other similar matters that develop

as this litigation progresses.  Coordinating Co-Lead Counsel will also determine when separate

groups from the PSC named below should be designated to work on MDL specific issues that do

not cross MDL lines.  Coordinating Co-Lead Counsel in conjunction with the Executive

Committee will be responsible for coordinating the efforts of the members of the PSC.


## 2.  Plaintiffs' Executive Committee

Bryan F. Aylstock (see contact information above)
Henry G. Garrard, III (see contact information above)
Fred Thompson, III (see contact information above)

Thomas P. Cartmell
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100 phone
816-531-2372 fax
tcartmell@wagstaffcartmell.com

Clayton A. Clark
Clark, Love & Hutson, G.P.
440 Louisiana Street, Suite 1600
Houston, TX 77002
713-757-1400 phone
713-759-1217 fax
cclark@triallawfirm.com

Amy Eskin
Hersh & Hersh
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6388
415-441-5544 phone
415-441-7586 fax
aeskin@hershlaw.com

Derek H. Potts
The Potts Law Firm, LLP
908 Broadway, 3rd Floor
Kansas City, Missouri 64105
816-931-2230 phone
816-931-7030 fax
dpotts@potts-law.com

Aimee H. Wagstaff
Andrus, Hood & Wagstaff, PC
1999 Broadway, Suite 4150
Denver, CO 80202
303-376-6360 phone
303-376-6361 fax
Aimee.wagstaff@ahw-law.com

It will be the responsibility of the Executive Committee to work in conjunction with Coordinating Co-Lead Counsel to perform the duties outlined above.

### 3. Plaintiffs' Steering Committee (PSC)

The proposed counsel organizational structure submitted to the court recommended a singular PSC to coordinate across MDL lines in the four separate pelvic mesh MDLs before this court. All of the applications for appointment to the PSC were carefully reviewed and considered by the court. No objections were received by the court as to the appointment of any proposed applicant or nominee. The attorneys listed on the attachment to this PTO are **APPOINTED** to the PSC.

The PSC will have the responsibilities enumerated in PTO #1. The appointment of the PSC is of a personal nature. Accordingly, the above appointees cannot be substituted by other attorneys, including members of the appointee's law firm, to perform the PSC's exclusive functions, such as committee meetings and court appearances, except with prior approval of the court.

### 4. Plaintiffs' Co- Lead Counsel MDL 2327

Recommendations were received by the court for the position of Plaintiffs' Co-Lead Counsel in MDL 2327. After review of the submitted application materials and discussion at the initial hearing, the following attorneys were **APPOINTED** as Plaintiffs' Co-Lead Counsel in MDL 2327:

Thomas Cartmell (see contact information above)

-4-

Renee Baggett
Aylstock Witkin Kreis & Overholtz, PLLC
17 E. Main St. Ste. 200
Pensacola, FL 32502
850-202-1010 phone
850-916-7449 fax
RBaggett@awkolaw.com

The Plaintiffs' Co-Lead Counsel shall have the following responsibilities in this MDL:

1.  Act as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the court, subject to the right of any plaintiff's counsel to present non-repetitive individual or different positions as long as the presentation does not unduly delay the proceedings.

2.  Submit and argue any verbal or written motions presented to the court or magistrate judge on behalf of the plaintiffs as well as oppose, when necessary, any motions submitted by the defendants which involve matters within the sphere of the responsibilities of Lead Counsel.

3.  Examine witnesses and introduce evidence at hearings on behalf of plaintiffs.

4.  Negotiate and enter into stipulations with defendants regarding this litigation.  All stipulations entered into by Lead Counsel, except for strictly administrative details such as scheduling, must be submitted for court approval and will not be binding until the court has ratified the stipulation.  Any attorney not in agreement with a non-administrative stipulation shall file with the court a written objection thereto within ten (10) days after service by liaison counsel of the stipulation.  Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

5.    Explore, develop and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

6.    Perform such other functions as may be expressly authorized by further orders of this court.

**5. Plaintiffs' Co-Liaison Counsel**

Recommendations were received by the court for the position of Plaintiffs' Co-Liaison Counsel.  After review of the submitted application materials and discussion at the initial hearing, the following attorneys were **APPOINTED** as Plaintiffs' Co-Liaison Counsel:

Harry Bell
The Bell Law Firm PLLC
30 Capitol Street
P.O. Box 1723
Charleston, WV 25326-1723
304-345-1700 phone
304-345-1715 fax
hfbell@belllaw.com

Paul T. Farrell, Jr.
Greene, Ketchum, Bailey, Walker, Farrell & Tweel
419 11th Street
P.O. Box 2389
Huntington, WV 25724-2389
304-525-9115 phone
304-529-3284 fax
paul@greeneketchum.com

Carl N. Frankovitch
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, WV 26062
304-723-4400 phone
604-723-5892 fax
carln@facslaw.com

The responsibilities of Plaintiffs' Co-Liaison Counsel shall be the following:

1.　to receive and distribute pleadings, orders and motions for pro se parties;

2.　to coordinate service and filings;

3.　to periodically review the attorney service list on the court's website, promptly communicate necessary revisions to the Clerk and effectuate required revisions in accordance with direction from the Clerk;

4.　to receive and distribute pleadings, orders, and motions by overnight courier service and telecopier within two days after receipt, unless such service has been waived, in writing, by a receiving counsel **or is otherwise achieved through CM/ECF** ;

5.　to establish and maintain a document depository, real or virtual, to be available to all plaintiffs counsel;

6.　to maintain and make available to all plaintiffs counsel of record at reasonable hours a complete file of all documents served by or upon each party (except such documents as may be available at a document depository); and

7.　to carry out such other duties as the court may order.

### B. Defendant's Lead and Liaison Counsel

### 1. Lead Counsel

Having received a recommendation for defendant's lead counsel and discussed the same at the initial conference, Ms. Christy Jones was **APPOINTED** as lead counsel for defendant

Ethicon, Inc. in MDL 2327.

Christy D. Jones
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
601-948-5711 phone
601-985-4500 fax
Christy.jones@butlersnow.com

Lead Counsel for the defendant shall have the following responsibilities:

1.  To determine (after consultation with the defendant) and present (in brief, oral argument or such other fashion as may be appropriate, personally or by a designee) to the court and opposing parties the position of the defendant on all matters arising during these pretrial proceedings;

2.  To delegate the specific tasks in a manner to ensure pretrial preparation for the defendant is conducted effectively, efficiently and economically;

3.  To negotiate and enter into stipulations with the plaintiffs on behalf of the defendant;

4.  To act as the spokesperson to explore and develop settlement options pertaining to the cases filed against the defendant; and

5.  To perform such other duties as may be incidental to proper coordination of the defendant's pretrial activities or authorized by further order of the court.

## 2. Defendants' Co-Liaison Counsel

Recommendations were received by counsel for the defendants for the position of

Defendants' Liaison Counsel.  After review of the submitted application materials and discussion

at the initial hearing, the following attorneys were **APPOINTED** as Defendants' Co-Liaison

Counsel along with Mark Williams who was previously appointed in MDL 2187 *In re C.R. Bard,*

*Inc.*:

> Michael Bonasso
> Flaherty Sensbaugh Bonasso PLLC
> P.O. Box 3843
> Charleston, WV 25338-3843
> 304-347-4259 phone
> mbonasso@fsblaw.com

> David B. Thomas
> Guthrie & Thomas PLLC
> 500 Lee Street, East, Suite 800
> P.O. Box 3394
> Charleston, WV 25333-3394
> 304-345-7250 phone
> dbthomas@agmtlaw.com

> Michael Farrell
> Farrell, White & Legg PLLC
> 914 Fifth Avenue
> P.O. Box 647
> Huntington, WV 25772
> 304-522-9100
> MJF@farrell3.com

The responsibilities of Defendants' Co-Liaison Counsel shall be the following:

1.   to serve as the recipient for all court orders for and on behalf of all

defendants;

-9-

2.      to coordinate service and filings for all defendants whether presently included or subsequently added;

3.      to periodically review the attorney service list on the court's website, promptly communicate necessary revisions to the Clerk and effectuate required revisions in accordance with direction from the Clerk;

4.      to receive and distribute pleadings, orders, and motions by overnight courier service and telecopier within two days after receipt, unless such service has been waived, in writing, by a receiving counsel **or is otherwise achieved through CM/ECF**; and

5.      to carry out such other duties as the court may order.

## C.  Representation of Clients

All attorneys representing parties to this litigation, regardless of their role in the management structure of the litigation and regardless of this court's designation of Lead and Liaison Counsel, a Plaintiffs' Executive Committee and a Plaintiffs' Steering Committee, continue to bear the responsibility to represent their individual client or clients.

Going forward, the court reiterates its expectation that the lawyers in this complex civil action will devote their best efforts toward cooperation and positive interaction, a course of action that will doubtless lead to the service of their clients' best interests and the fair and orderly disposition of this litigation.

## D.  Procedural and Discovery Issues

A number of procedural and discovery issues were presented to the court as part of the

proposed agenda for the initial hearing including: master complaints, short form complaints and defendants answers thereto, fact sheets, preliminary motions, production of documents and medical records, privilege log protocol, protective orders, preservation of evidence, redaction protocol, ESI protocols, amendment of pleadings, issues as to proper party defendants and service of process issues.   The court directed the parties to continue to meet and confer about these important foundational issues and to have proposals pertaining to them at the time of the next scheduled status conference.

Counsel were advised that lead counsel will be required to attend case management conferences and hearings in person.  Status conferences will henceforth be scheduled approximately every 45 to 60 days.  The date of the next status conference will be forthcoming in a PTO after consultation with lead counsel appointed at the initial hearing.

Judge Stanley advised counsel of her general expectations during the discovery process. Counsel was directed to use the orders and protocols previously developed and entered in MDL 2187 *In re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation* when making proposals  on procedural and discovery issues in this MDL and the other pelvic mesh MDLs. The court urged the parties to be creative and devise proposed approaches to discovery which will accomplish discovery of the material facts in an efficient and economical manner.

### E.  Coordination with State Pelvic Mesh Cases

The court advised counsel of its intention to coordinate to the extent possible with the judges and counsel involved in state pelvic mesh cases, especially in states where a majority of the state cases have been filed and coordinated to date.

The court **DIRECTS** the Clerk to file a copy of this order in 2-12-md-2327 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2-12-cv-01171. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER: April 17, 2012

Joseph R. Goodwin, Chief Judge

-12-

| | | |
|---|---|---|
| Rachel Abrams | rabrams@levinsimes.com | LEVIN SIMES<br>20th Floor<br>353 Sacramento Street<br>San Francisco, CA 94111<br>415/646-7160<br>415/981-1270 (fax) |
| David Allen | dallen@cohenandmalad.com | COHEN & MALLAD<br>One Indiana Square<br>Indianapolis, IN 46204<br>317/636-6481<br>317/636-2593 (fax) |
| Tom Anapol | tanapol@anapolschwartz.com | Anapol Schwartz<br>1710 Spruce Street<br>Philadelphia, PA 19103<br>215/790-4572<br>215/875-7707 (fax) |
| Ben Anderson | Ben@andersonlawoffices.net | ANDERSON LAW OFFICES<br>Suite 215<br>1360 West 9th Street<br>Cleveland, OH 44113<br>216/589-0256<br>216/916-0988 (fax) |
| Richard Arsenault | rarsenault@nbalawfirm.com | NEBLETT BEARD &<br>ARSENAULT<br>2220 Bonaventure Court<br>Alexandria, LA 71301<br>318/487-9874<br>318/561-2591 (fax) |
| Bryan Aylstock | BAylstock@awkolaw.com | AYLSTOCK WITKIN KREIS &<br>OVERHOLTZ<br>Suite 200<br>17 East Main Street<br>Pensacola, FL 32502<br>850/202-1010<br>850/916-7449 (fax) |
| Renee Baggett | RBaggett@awkolaw.com | AYLSTOCK WITKIN KREIS &<br>OVERHOLTZ<br>Suite 200<br>17 East Main Street<br>Pensacola, FL 32502<br>850/202-1010<br>805/916-7449 (fax) |
| Lee Balefsky | Lee.Balefsky@KlineSpecter.com | KLINE & SPECTER<br>The Nineteenth Floor<br>1525 Locust Street<br>Philadelphia, PA 19102<br>215/772-1000<br>215/735-0960 (fax) |

| | | |
|---|---|---|
| Harry Bell | hfbell@belllaw.com | THE BELL LAW FIRM<br>P. O. Box 1723<br>Charleston, WV 25326<br>304/345-1700<br>304/345-1715 (fax) |
| Ed Blizzard | EBlizzard@blizzardlaw.com | Blizzard, McCarthy & Nabers<br>440 Louisiana Street  Houston<br>TX 77002<br>713-844-3750 |
| Lisa Blue | lblue@baronandblue.com | 3811 Turtle Creek Blvd<br>Ste 800<br>Dallas, TX  75219-4550<br>214-969-7373 |
| Riley Burnett | rburnett@TrialLawFirm.com | LAW OFFICES OF RILEY L.<br>BURNETT, JR.<br>Suite 1600<br>440 Louisiana<br>Houston, TX 77002<br>713/757-1400<br>713/759-1217 (fax) |
| Tom Cartmell | tcartmell@wagstaffcartmell.com | WAGSTAFF & CARTMELL<br>Suite 300<br>4740 Grand Avenue<br>Kansas City, MO 64112<br>816/701-1100<br>816/531-2372 (fax) |
| Eric Chaffin | chaffin@chaffinluhana.com | CHAFFIN LUHANA<br>12th Floor<br>600 Third Avenue<br>New York, NY 10016<br>347/269-4472<br>888/499-1123 (fax) |
| Clayton Clark | CClark@TrialLawFirm.com | CLARK LOVE & HUTSON<br>Suite 1600<br>440 Louisiana Street<br>Houston, TX 77002<br>713/757-1400<br>713/759-1217 (fax) |
| Jayne Conroy | JConroy@hanlyconroy.com | HANLY CONROY BIERSTEIN<br>SHERIDAN FISHER & HAYES<br>112 Madison Avenue<br>New York, NY 10016-7416<br>212/784-6400<br>212/213-5949 (fax) |
| Erin Copeland | ecopeland@fhl-law.com | FIBICH HAMPTON LEEBRON<br>BRIGGS & JOSEPHSON<br>1150 Bissonnet Street<br>Houston, TX 77005<br>713/751-0025<br>713/751-0030 (fax) |

| | | |
|---|---|---|
| Martin Crump | martin.crump@daviscrump.com | DAVIS & CRUMP<br>Third Floor<br>1712 15th Place<br>Gulfport, MS 39501<br>228/863-6000<br>228/864-0907 (fax) |
| A. J. De Bartolomeo | ajd@GirardGibbs.com | GIRARD GIBBS<br>601 California Street, 14th Floor<br>San Francisco, CA 94108<br>415/981-4800<br>415/981-4846 (fax) |
| Amy Eskin | aeskin@hershlaw.com | HERSH & HERSH<br>Suite 2080<br>601 Van Ness Avenue<br>San Francisco, CA 94102-6396<br>415/441-5544<br>415/441-7586 (fax) |
| Paul Farrell, Jr. | paul@Greeneketchum.com | GREENE KETCHUM BAILEY<br>WALKER FARRELL & TWEEL<br>P. O. Box 2389<br>Huntington, WV 25724-2389<br>304/525-9115<br>304/529-3284 (fax) |
| Fidelma Fitzpatrick | ffitzpatrick@motleyrice.com | MOTLEY RICE<br>321 South Main Street<br>Providence, RI 02903<br>401/457-7700<br>401/457-7708 (fax) |
| Yvonne Flaherty | ymflaherty@locklaw.com | LOCKRIDGE GRINDAL NAUEN<br>Suite 2200<br>100 Washington Avenue South<br>Minneapolis, MN 55401<br>612/339-6900<br>612/339-0981 (fax) |
| Pete Flowers | pjf@foote-meyers.com | FOOTE MEYERS MIELKE &<br>FLOWERS<br>Suite 300<br>3 North Second Street<br>St. Charles, IL 60174<br>630/232-6333<br>630/845-8982 (fax) |
| Carl Frankovitch | carln@facslaw.com | FRANKOVITCH ANETAKIS<br>COLANTONIO & SIMON<br>337 Penco Road<br>Weirton, WV 26062<br>304/723-4400<br>304/723-5892 (fax) |

| | | |
|---|---|---|
| Henry G. Garrard, III | hgg@bbgbalaw.com | BLASINGAME BURCH GARRARD & ASHLEY P. O. Box 832 Athens, GA 30303 706/354-4000 706/549-3545 (fax) |
| Michael Goetz | mgoetz@forthepeople.com | MORGAN & MORGAN 7th Floor 201 North Franklin Street Tampa, FL 33602 813/221-6581 813/223-5402 (fax) |
| Tim Goss | goss39587@aol.com | FREESE & GOSS Suite 200 3031 Allen Street Dallas, TX 75204 214/761-6610 214/761-6688 (fax) |
| Jeff Grand | Grand@bernlieb.com | BERNSTEIN LIEBHARD 10 East 40th Street, 22nd Floor New York, NY 10016 212/779-1414 212/779-3218 (fax) |
| Todd Harvey | tharvey@bhflegal.com | Burke Harvey & Frankowski, LLC One Highland Place 2151 Highland Avenue Suite 120 Birmingham, AL 35205 205-930-9091 |
| Stacy Hauer | shauer@johnsonbecker.com | JOHNSON BECKER Suite 4530 33 South Sixth Street Minneapolis, MN 55402-4123 612/436-1800 612/436-1801 (fax) |
| Scott Love | SLove@TrialLawFirm.com | CLARK LOVE & HUTSON Suite 1600 440 Louisiana Street Houston, TX 77002 713/757-1400 713/759-1217 (fax) |
| Victoria Maniatis | vmaniatis@thesandersfirm.com | SANDERS VIENER GROSSMAN 100 Herricks Road Mineola, NY 11501 516/741-5252 516/741-1243 (fax) |

| | | |
|---|---|---|
| Dave Matthews | dmatthews@dpmlawfirm.com | MATTHEWS & ASSOCIATES<br>2905 Sackett Street<br>Houston, TX 77098<br>713/522-5250<br>713/535-7184 (fax) |
| Rick Meadow | rdm@lanierlawfirm.com | THE LANIER LAW FIRM<br>Sixth Floor<br>Tower 56<br>126 East 56th Street<br>New York, NY 10022<br>212/421-2800<br>212/421-2878 (fax) |
| Karen Menzies | kbmenzies@rcrlaw.net | ROBINSON CALCAGNIE<br>ROBINSON SHAPIRO DAVIS<br>19 Corporate Plaza Drive<br>Newport Beach, CA 92660<br>949/720-1288<br>949/720-1292 (fax) |
| Mike Miller | MMiller@millerfirmllc.com | Michael J. Miller, Esquire<br>The Miller Firm LLC<br>108 Railroad Avenue<br>Orange, VA 22960 |
| Doug Monsour | Doug@monsourlawfirm.com | THE MONSOUR LAW FIRM<br>P. O. Drawer 4209<br>Longview, TX 75601<br>903/758-5757<br>903/230-5010 (fax)<br>doug@monsourlawfirm |
| Mark Mueller | mark@muellerlaw.com | MUELLER LAW<br>404 West 7th Street<br>Austin, TX 78701<br>512/478-1236<br>512/478-1473 (fax) |
| Dianne Nast | dnast@rodanast.com | RODANAST<br>801 Estelle Drive<br>Lancaster, PA 17601<br>717/892-3000<br>717/892-1200 (fax) |
| Leigh O'Dell | leigh.odell@beasleyallen.com | BEASLEY ALLEN CROW<br>METHVIN PORTIS & MILES<br>P. O. Box 4160<br>Montgomery, AL 36103-4160<br>334/269-2343<br>334/954-7555 (fax) |
| Alyson Oliver | aoliver@oliverlg.com | OLIVER LAW GROUP<br>Suite 200<br>950 W. University Drive<br>Rochester, MI 48307<br>248/327-6556<br>248/436-3385 (fax) |

| J A Osborne | JAOsborne@Babbitt-Johnson.com | BABBITT JOHNSON OSBORNE & LE CLAINCHE<br>Suite 100<br>1641 Worthington Road<br>West Palm Beach, FL 33409<br>561/684-2500<br>561/684-6308 (fax) |
| Michelle Parfitt | mparfitt@ashcraftlaw.com | ASHCRAFT & GEREL<br>Suite 650<br>4900 Seminary Road<br>Alexandria, VA 22311<br>703/931-5500<br>703/820-1656 (fax) |
| Jerry Parker | jerry@yourlawyer.com | PARKER WAICHMAN<br>6 Harbor Park Drive<br>Port Washington, NY 11050<br>516/466-6500<br>516/466-6665 (fax) |
| Chris Placitella | cplacitella@cprlaw.com | COHEN PLACITELLA & ROTH<br>127 Maple Avenue<br>Red Bank, NJ 07701<br>732/747-9003<br>732/747-9004 (fax) |
| Derek Potts | DPotts@potts-law.com | THE POTTS LAW FIRM<br>3rd Floor<br>908 Broadway<br>Kansas City, MO 64105<br>816/931-2230<br>816/931-7030 (fax) |
| Robert Price | rprice@levinlaw.com | LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR<br>Suite 400<br>316 South Baylen Street<br>Pensacola, FL 32502<br>850/435-7075<br>850/436-6075 (fax) |
| John Restaino | jrestaino@restainolawfirm.com | THE RESTAINO LAW FIRM<br>1550 Larimer Street, #527<br>Denver, CO 80202<br>720/891-7921<br>720/221-0449 (fax) |
| Bill Robins | robins@heardrobins.com | HEARD ROBINS CLOUD & BLACK<br>Suite 200<br>300 Paseo de Peralta<br>Santa Fe, NM 87501<br>505/986-0600<br>505/986-0632 (fax) |

| | | |
|---|---|---|
| J.R. Rogers | jrobertrogers@hotmail.com; | LAW OFFICES OF J. ROBERT ROGERS<br>3972 Teays Valley Road<br>Hurricane, WV 25526<br>304/757-3809<br>304/757-2694 (fax) |
| Robert Salim | robertsalim@cp-tel.net | LAW OFFICES OF ROBERT L. SALIM<br>1901 Texas Street<br>Natchitoches, LA 71457<br>318/352-5999<br>318/352-5998 (fax) |
| Joe Saunders | joe@saunderslawyers.com | SAUNDERS & WALKER<br>Suite 200<br>3491 Gandy Boulevard North<br>Pinellas Park, FL 33781<br>727/579-4500<br>727/577-9696 (fax) |
| Hunter Shkolnik | Hunter@napolibern.com | NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES<br>Suite 7413<br>350 Fifth Avenue<br>New York, NY 10118<br>212/267-3700<br>212/587-0031 (fax) |
| Fred Thompson, III | fthompson@motleyrice.com | MOTLEY RICE<br>P. O. Box 1792<br>Mount Pleasant, SC 29465<br>843/216-9000<br>843/216-9450 (fax) |
| Josh B. Wages | jbw@bbgbalaw.com | BLASINGAME BURCH GARRARD & ASHLEY<br>P. O. Box 832<br>Athens, GA 30603-0832<br>706/354-4000<br>706/549-3545 (fax) |
| Amiee Wagstaff | aimee.wagstaff@ahw-law.com | ANDRUS HOOD & WAGSTAFF<br>1999 Broadway, Suite 4150<br>Denver, CO<br>303/376-6360<br>303/376-6361 (fax) |
| Edward A. Wallace | EAW@wexlerwallace.com | WEXLER WALLACE<br>Suite 3300<br>55 W Monroe Street<br>Chicago, IL 60603<br>312/346-2222<br>312/346-0022 (fax) |
| Kim Wilson | kimwilson@lewis-roberts.com | LEWIS & ROBERTS<br>P. O. Box 17529<br>Raleigh, NC 27619<br>919/981-0191<br>919/981-0199 (fax) |

| | | |
|---|---|---|
| Laura Yaeger | laura_yaeger@fleming-law.com | FLEMING NOLEN & JEZ<br>Suite 4000<br>2800 Post Oak Boulevard<br>Houston, TX 77056<br>713/621-7944<br>713/621-9638 (fax) |
| Joe Zonies | jzonies@rplaw.com | REILLY POZNER<br>Suite 1700<br>1900 16th Street<br>Denver, CO 80202<br>303/893-6100<br>303/893-6110 (fax) |

# **Exhibit 8**

<u>NOT FOR PUBLICATION</u>                                        (Doc. No. 10)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                        :
IN RE: BENECAR (OLMESARTAN)           :           Master Docket No. 15-2606 (RBK/JS)
PRODUCTS LIABILITY LITIGATION         :
                                                        :
                                                        :
                                                        :
                                                        :
                                                        :
                                                        :           **ORDER APPROVING PLAINTIFFS'**
                                                        :           **PROPOSAL FOR THEIR EXECUTIVE**
                                                        :           **AND STEERING COMMITTEES**
                                                        :
_____:

**THIS MATTER** having come before the Court upon Plaintiffs' motion to approve

appointment to the Plaintiffs' Executive Committee and the formation of a Plaintiffs' Steering

Committee (Doc. No. 10); and the Court having considered the moving papers;

**IT IS HEREBY ORDERED** that Plaintiffs' motion is **GRANTED**.  Plaintiffs'

Executive Committee and Steering Committee shall each consist of the attorneys proposed for

the respective committees in the above-referenced motion.

Dated:  5/20/2015                                        s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  BENICAR (OLMESARTAN) PRODUCTS LIABILITY LITIGATION | Honorable Robert B. Kugler Magistrate Judge Schneider |
| This Document Relates To All Actions | Civil No. 15-2606 (RBK) (JS) MDL No. 2606 |

**PLAINTIFFS' MOTION TO APPROVE APPOINTMENTS TO THE PLAINTIFFS' EXECUTIVE COMMITTEE AND THE FORMATION OF A PLAINTIFFS' STEERING COMMITTEE**

In accordance with Plaintiffs' Position Statement and presentation before the court on April 28, 2015, plaintiffs submit the following lawyers to serve as members of the **Plaintiffs' Executive Committee**:

**Christopher Coffin** is a partner with Pendley, Baudin & Coffin, L.L.P., located in New Orleans, Louisiana, and has years of experience litigating complex cases involving defective pharmaceutical products and medical devices.  He received his BSN from University of Cincinnati and his JD from University of Maryland.  Mr. Coffin has been a leader in multiple MDL actions throughout the United States.  He has served as Co-Lead Counsel in two separate MDL cases involving pharmaceutical products: *In re: Celexa and Lexapro Products Liability Litigation,* in the Eastern District of Missouri, and *In re: Celexa and Lexapro Marketing and Sales Practices Litigation*, in the District of Massachusetts. He has also served as Co-Lead Counsel in a non-pharmaceutical products MDL, *In re: Atlas Roofing Products Liability Litigation*, in the Northern District of Georgia.  In addition, Mr. Coffin has served as a court-appointed member of the Plaintiffs' Steering Committee in the following pharmaceutical and medical device MDL cases:  *In re: Paxil Products Liability Litigation*, in the Central District of California; *In re: Zoloft Products Liability Litigation*, in the Eastern

District of Pennsylvania; *In re: Effexor Products Liability Litigation,* in the Eastern District of Pennsylvania; *In re: Stryker Rejuvenate and ABG II Hip Implant Products Liability Litigation*, in the District of Minnesota; and *In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Product Liability Litigation*, in the District of South Carolina.

In addition to his legal education and experience, Mr. Coffin has been a registered nurse for over nineteen (19) years. He has been licensed as a registered nurse in Ohio, Georgia, Maryland and Virginia, and he currently maintains his license in the State of Louisiana. Throughout his years of education and experience in nursing, Mr. Coffin has formally studied pharmacology, epidemiology, anatomy, physiology and pathophysiology, and he has treated hundreds of patients diagnosed with hypertension or gastrointestinal illnesses.

Mr. Coffin filed the first Benicar (olmesartan) case in the country on January 13, 2014, the v*on Eberstein* case, and has been litigating olmesartan cases since that time. Over the last year, he has dedicated a significant amount of his time and resources to educating other lawyers about the law and science related to the Benicar (olmesartan) litigation through multiple presentations at national litigation conferences.

Mr. Coffin would be in the position of Co-Lead counsel and a member of the Plaintiffs' Executive Committee.

**Adam Slater** is a partner in the Roseland, New Jersey firm of Mazie, Slater, Katz & Freeman. He is a graduate of Tulane University and obtained his JD at Boston University. He has been a member of the New Jersey Bar since 1994 and is also admitted to the United States District Court of New Jersey, the Third Circuit U.S. Court of Appeals, and several other jurisdictions. Mr. Slater specializes in complex civil litigation, particularly personal

injury, product liability, and medical malpractice, and is a certified civil trial attorney. Mr. Slater is currently co-liaison counsel for the New Jersey consolidation of pelvic mesh cases against Johnson & Johnson and Ethicon, numbering approximately 7600 cases. Mr. Slater was lead trial counsel for the first bellwether trial against these defendants, and has tried additional Johnson & Johnson/Ethicon mesh cases including an MDL bellwether trial in the Southern District of West Virginia before the Hon. Joseph Goodwin in March, 2015.

Mr. Slater also litigates class actions, including appointment as co-class counsel in a class action in the District of Jersey against Volkswagen and Audi on behalf of 5 million owners and lessees, which settled before the Hon. Patty Schwartz, and was ultimately affirmed by the Third Circuit. Finally, Mr. Slater has been directly involved in the early Olmesartan litigation in the New Jersey Superior Court, and has extensive familiarity with the legal and procedural issues, as well as the medical/scientific, and causation issues.

Mr. Slater would be in the position of Co-Lead Counsel and a member of the Plaintiffs' Executive Committee.

**Tara Sutton** is a Partner and Chair of the Mass Tort Litigation group of Robins Kaplan LLP., a nationwide firm of 240 lawyers that has been involved in products liability and medical device litigation for its entire 74 year history. Ms. Sutton is an honors graduate of the University of Iowa Law School. She was selected as one of the Outstanding Women Lawyers by the National Law Journal, in its list of 75 of the most accomplished female attorneys working in the profession. She has previously been named a "Plaintiff Top 150 Women in Litigation" by Benchmark Litigation and a Minnesota Trial Lawyers Association "Member of the Year" honoree.

Ms. Sutton is also a member of the firm's Executive Board. Ms. Sutton has extensive trial and leadership experience in coordinated mass tort litigation. She was appointed by Judge Brian Martinotti to serve on the Plaintiffs' Steering Committee in the consolidated Stryker Rejuvenate & ABGII hip implant litigation pending in Bergen County, New Jersey. Judge Martinotti further appointed Ms. Sutton to serve on the settlement negotiation team to develop a global settlement program for all cases pending in New Jersey state court and the federal MDL. On November 4, 2014, a settlement program valued at over $1.4 billion was announced.

Ms. Sutton served on the Plaintiff's Executive Committee in *In re Chantix Products Liability Litigation,* MDL No. 2092 (N.D. Alabama). Ms. Sutton served as Chair of the Science and Expert Committee and successfully defeated each *Daubert* motion brought by Pfizer. *See In re Chantix (Varenicline) Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 130144 (N.D. Ala. Aug. 21, 2012). Ms. Sutton was lead trial counsel in the first Chantix bellwether trial case, *Whitely v. Pfizer*, which settled three days prior to jury selection and resulted in the subsequent settlement of more than 2,600 cases. Ms. Sutton was Lead Counsel and Liaison counsel in the *In re Mirapex Products Liability Litigation*, MDL No. 1836 (D. Minn.). She was lead trial counsel in the first Mirapex bellwether trial that resulted in an $8.3 million verdict (including more than $7.8 million in punitive damages). She tried a second bellwether case that settled prior to closing arguments, leading to the settlement of all cases pending in the MDL. Additionally, Ms. Sutton served on the Science & Discovery committees in the *In re Vioxx Products Liability* Litigation, MDL No. 1657 (E.D. La.) and Law & Briefing committee in the *DePuy ASR Hip Implant* Litigation, MDL No. 2197 (N.D. Ohio).

She was a member of the trial team in the Minnesota Tobacco Litigation, which settled in 1998, after four months of trial, for wide-ranging injunctive relief and more than $6.6 billion.

Ms. Sutton would be a member of the Plaintiffs' Executive Committee.

**Troy Rafferty** is a partner in the law firm of Levin, Papantonio, Thomas, Mitchell, Rafferty and Proctor located in Pensacola, Florida. He specializes in litigating mass tort, pharmaceutical and major personal injury cases throughout the country. Levin, Papantonio has been a leader in mass tort litigation for decades. We have more than thirty (30) full time attorneys and over 120 staff members. The firm has participated in numerous Multi-District proceedings over the past three decades and has tried numerous mass tort and pharmaceutical cases.

Mr. Rafferty graduated magna cum laude from Valparaiso University School of law. He is board certified in civil trial law by The Florida Bar, AV-rated by Martindale Hubbell, and has been included in The Best Lawyers in America, and The Legal 500. He is a fellow in the International Society of Barristers. He currently serves as President of the Florida Justice Association. He is currently licensed to practice law before all Florida state courts, the United States District Courts for the Northern and Middle Districts of Florida, and the United States Court of Appeals for the Eleventh Circuit.

He has tried and litigated numerous pharmaceutical and mass tort cases. He has also been appointed to leadership positions in several MDL's. He has been appointed to serve as Co-Lead Counsel in the *In re: Gadolinium Based Contrast Action Litigation* (MDL No. 1909). He also served on the Plaintiffs' Steering Committee and served as Co-Chair of the Plaintiffs' Discovery Committee in the *In re: Vioxx Products Liability Litigation* (MDL No. 1657). He has also been appointed to the Plaintiffs' Executive Committee in the *In re:*

*Yamaha Motor Corp. Rhino ATV Products Liability Litigation* (MDL No. 2016), the Plaintiffs' Steering Committee in *In re: Zyprexa Products Liability Litigation* (MDL No. 1596), the Plaintiffs' Steering Committee in *In re: Fosamax (Alendronate Sodium) Products Liability Litigation (No.II)* (MDL No. 2243), the Plaintiffs' Steering Committee in *In re: Actos (Pioglitazone) Products Liability Litigation* (MDL No. 2299), and the Plaintiffs' Steering Committee in *In res Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation* (MDL No. 2428).

Mr. Rafferty would be a member of the Plaintiffs' Executive Committee.

**Peter H. Weinberger** is the managing partner of the firm of Spangenberg Shibley and Liber, LLP located in Cleveland, Ohio. He is a graduate of Syracuse University and received his JD from Case Western Reserve University. He has been a member of the Ohio Bar since 1975 and is admitted to District courts in multiple jurisdictions. Mr. Weinberger is a fellow in the American College of Trial Lawyers and the International Society of Barristers. He was named Cleveland Lawyer of the Year in Personal Injury and Medical Malpractice in 2012 and 2013. He was named one of the top 10 lawyers in Ohio in 2012 by "Super Lawyers" Magazine. He is a past president of the Cleveland Metropolitan Bar Association.

The Spangenberg Law firm has had a long history of litigation against the pharmaceutical industry beginning with cases involving the drug thalidomide in the 60's and 70's followed by cases involving the drugs Halcion, Albuterol, and many others. Mr. Weinberger specializes in product liability, medical malpractice, and catastrophic accidents.

Mr. Weinberger was liaison counsel in the *Gadolinium Contrast Dyes Products Liability Litigation*, MDL No. 1909 (N.D.Ohio), served on the executive committee, managed the fee committee, and served as trial counsel in two bellwether trials one of which settled the

evening before trial resulting in the settlement of over 67 cases.  He worked with the court and special master extensively in the settlement efforts that helped resolve more than 600 cases.

Mr. Weinberger also served on the plaintiffs' steering committee in the *Teflon Product Liability Litigation* MDL No. 1733 (S.D.Iowa)  and was on the trial team that presented the class certification issues at trial.

Mr. Weinberger would be a member of the Plaintiffs' Executive Committee.


Plaintiffs' propose that the following be appointed as members of the **Plaintiffs' Steering Committee:**

**F. Catfish Abbott** of the Abbott Law Group is a board certified civil trial attorney in the state of Florida with over 36 years of experience and over 170 jury trials for the plaintiff. He has tried to verdict numerous product liability cases against General Motors, Ford, Kawasaki and other product manufacturers. From 2012 through 2014, Mr. Abbott was the head of continuing legal education for the entire state of Florida on behalf of the Florida Justice Association.  He has spoken at numerous seminars on every facet of litigation from jury selection to closing argument, and all parts in between.   Mr. Abbott has been participating in focus groups and mock trials for 35 years and has worked with trial consultants across the country.  For the past three years he has been participating in mass pharmaceutical torts and have headed up that division within my law firm.  We are involved in 9 or 10 different types of pharmaceutical products or drugs.  Our firm is representing somewhere between 120 and 130 individuals who have Benicar claims.

**Esther Berezofsky** is a partner with Williams Cuker Berezofsky in Cherry Hill New Jersey, and Philadelphia PA. She concentrates her practice on complex plaintiff's litigation in pharmaceutical and medical device products liability, environmental, and consumer litigation. Berezofsky has been in leadership roles in various pharmaceutical litigations including Hormone Replacement Therapy (HRT), Diet Drug, Ortho Evra, Rezulin, PPA, DePuy, and been appointed liaison counsel in Mass Tort Courts in N.J. and PA in Diet Drug, Hormone Replacement therapy (HRT), and others. She is on the DePuy ASR MDL Plaintiffs Steering Committee (PSC), and is experienced in coordinating discovery, developing scientific and medical evidence, as well as devising innovative settlement and resolution strategies in complex multi-party matters.   One such case, involving a children's cancer cluster in which she was lead counsel became the subject of the Pulitzer Prize winning book called *Toms River* authored by Dan Fagin. She was co- lead trial counsel in the New Jersey

Diet Drug medical monitoring class action trial. **In addition,** Berezofsky is currently the President of Public Justice, a national public interest law firm.

**Stuart L. Goldenberg** is the senior partner of Goldenberg Law in Minneapolis, Minnesota. He has been lead counsel on more than 50 jury trials involving mass tort, product liability, medical malpractice, and personal injury cases. He has thirty years of mass tort and MDL experience, including Dalkon Shield, Copper-7 IUD, DES, Fen Phen, Vioxx, Bextra, Celebrex, Mirapex, Avandia, Propecia, Yaz, DePuy ASR, Zimmer Durom Cup, Pinnacle Hips, Stryker Rejuvenate Hips, Biomet Hips, Fosamax, SSRIs, Contaminated Steroids, Medtronic Infuse Bone Graft,, GranuFlo, Testosterone and Talcum Powder. Currently he is co-lead counsel in more than 400 Medtronic Infuse Bone Graft cases in State and Federal Courts around the country including: New Jersey, California, Hawaii, Arizona, Wisconsin, Tennessee, Minnesota and Missouri.

**Lexi Hazam** is a partner at Lieff Cabraser Heimann & Bernstein with 12 years of experience in mass tort litigation, including in several MDLs. Ms. Hazam played a key role in MDL litigation on behalf of foreign hemophiliacs allegedly infected with HIV and/or HCV by American pharmaceutical products, developing epidemiological experts, spearheading foreign language discovery, and leading the administration of a global settlement of the claims of 1,600 plaintiffs spread across 15 countries. In MDL litigation over the Gol Airlines Flight 1907 aviation disaster, Ms. Hazam handled the depositions of foreign law experts, including the former Chief Justice of Brazil. Most recently, Ms. Hazam developed a key regulatory expert, a former head of the FDA, for the DePuy ASR defective hip MDL. Ms. Hazam has spoken on two recent panels regarding Benicar. Ms. Hazam has been listed in Best Lawyers for Mass Torts. Ms. Hazam's firm is among the nation's largest plaintiffs' firms, and in 2014 was named Law360's "Product Liability Group of the Year" for plaintiffs, as well as a U.S News "Law Firm of the Year" for mass torts/class actions.

**Anthony Irpino** graduated cum laude from Tulane Law School in 1996, and is the founding partner of the Irpino Law Firm – an eight attorney firm focusing on representation of plaintiffs. Mr. Irpino has devoted the vast majority of his legal career to working on multi-district litigation and class action cases. Mr. Irpino has served as class counsel for plaintiffs in more than forty class action, multi-district litigation, and mass joinder lawsuits, including: MDL No. 1657 – *In Re: Vioxx Products Liability Litigation* (Chairman of Privilege and Document Depository Committees); MDL No. 1789 – *In Re: Fosamax Products Liability Litigation* (PSC Member, Chairman of Administrative, Privilege and Bellwether Plaintiff Committees); MDL No. 2047 – *In Re: Chinese-Manufactured Drywall Products Liability Litigation* ("Of Counsel" to PSC, Trial Team and Appeal Team member, Chairman of Document Depository and Privilege/Confidentiality Committees, and member of Lead Deposition and Personal Jurisdiction Teams); and MDL 2179 – *In Re: Oil spill by the Oil Rig "Deepwater Horizon"* (Member of Phase I & Phase II MDL Trial Teams, Chairman of Privilege and Confidentiality Workgroups, and Co-Chairman of Document Depository and ESI Workgroups). Mr. Irpino teaches litigation practice and ESI matters as an Adjunct

Professor and Guest Lecturer at Tulane Law School. He is an active member of the Sedona Conference, and has presented CLEs on MDLs, clinical trials and ESI matters.

**Jeffrey M. Kuntz** is a partner in the Kansas City, Mo. Firm of Wagstaff and Cartmell. He is currently the head of the Expert Committee and Bellwether Trial Committee in the *In Re: Ethicon, Inc., Pelvic Repair System Products Liability Litigation* (MDL No. 2327). He has assisted in the first three pelvic mesh cases to be tried in front of a jury against Ethicon. Jeff was co-lead trial counsel in the first Bellwether Sling case tried to a verdict in the *Pelvic Repair System Products Liability Litigation*. He is a member of the Plaintiff's Steering Committee and was co-lead counsel in the first Bellwether case in the multidistrict litigation, *In Re: Kugel Mesh Hernia Patch Products Liability Litigation (MDL No. 1842)* to be tried to a verdict. Jeff was also head of the Expert Committee in the Kugel MDL. He is also currently a member of the Plaintiff's Steering Committee in the Judicial Council Coordinated Proceedings (JCCP) 4615 *In Re: Infusion Pump Cases.* Jeff has been on numerous other committees for MDL proceedings related to drug and medical devices and has presented at numerous conferences on drug and device litigation.

**Mallory Mangold** is an attorney with the law firm of Taylor Martino, P.C. in Mobile, Alabama. Her practice is devoted to mass tort litigation involving dangerous drugs and medical devices. Ms. Mangold is currently representing hundreds of women in the Transvaginal Mesh litigation. She has recently represented plaintiffs in the Countrywide Home Loan class action lawsuit, Stryker Rejuvenate and ABG II Hip MDL 2441, Wright Conserve MDL 2329, Deepwater Horizon oil spill MDL 2179, In Re: Kugel Mesh Hernia Repair Patch Litigation MDL 07-1842-ML, and pelvic repair system litigation, including American Medical Systems MDL 2325, Ethicon MDL 2327, Covidien MDL 2187, Coloplast MDL 2387, Bard MDL 2187, Neomedic MDL 2511 and Boston Scientific MDL 2326. Ms. Mangold currently serves on the Plaintiff's Steering Committee for the Boston Scientific, Massachusetts State Court Consolidation involving lawsuits against the manufacturers of transvaginal mesh implants. With regards to Benicar, Ms. Mangold has filed a case in the Northern District of Alabama and filed an Interested Party Response with the JPML in support of the formation of this MDL.

**Victoria J. Maniatis** is a partner at Sanders Phillips Grossman, LLP working in their Manhattan office. After graduating high school in NJ, Ms. Maniatis earned her BA from Penn State (1990) and her JD from Hofstra (1993). Her plaintiffs' mass tort focus began in 1998 after 5 years insurance defense practice in New Jersey. She's licensed in NJ and NY with many *Pro Hac Vice* admissions. Vicki has worked on behalf of numerous Plaintiffs' Steering Committees in both state and federal coordinated proceedings over the last 18 years on Pharmaceutical, medical device and aviation matters including; Baycol, Avandia, Ortho Evra, Yaz, Accutane, Bausch & Lomb ReNu with MoistureLoc, Swiss Air, TWA 800, KAL (Guam). Ms. Maniatis currently holds appointments on the TVM MDL (DWV) and Fosamax MDL PSC (DNJ), and serves as Lead Counsel in the Propecia New Jersey Coordinated litigation in Middlesex County. Over the years on these litigations Ms. Maniatis

has served on Marketing, science and experts, discovery and bellwether and trial committees taking and defending case specific and general depositions and drafting a variety of pleadings including the Avandia Plaintiffs Fact Sheet.

**Mark M. O'Mara** of O'Mara Law group practices has offices in Orlando, Florida. Although new to the area of mass torts, having only been involved for the past 2 years, Mr. O'Mara has over 32 years of trial experience at the state and federal court levels, and is board certified in both Family Trial law and Criminal Trial Law, a double certification accomplished by very few lawyers nationwide. He has have handled many complex cases and extended trials in both areas and venues as solo and lead counsel. He lectures nationwide on various facets of trial preparation and practice, from theme and theory determination through jury selection to closing argument, and has also spoken specific to the Xarelto and Benicar matters. He has a particular interest in the process of selecting and trying the Bellwether cases for this MDL, along with discovery gathering and review appropriate for those decisions.

**Roger W. Orlando** is founding partner of The Orlando Firm, P.C. with offices in Atlanta, Georgia and Morristown, New Jersey. Educational Background: Emory University School of Law, *Juris Doctor*, 1987; Bar admissions: New Jersey, 1988; Georgia 1989; District of Columbia; USDC, District of NJ; USDC, Northern District of Illinois; USDC, Middle and Northern Districts of Georgia; and USDC Eastern and Western Districts of Arkansas. Multi-District Litigation Experience: Member PSC, MDL no. 2545, *In re*: Testosterone Replacement Therapy Products Liability Litigation; Member PSC, MDL No. 2331, *In re*: Propecia (Finasteride) Product Liability Litigation; Lead Counsel, MDL No. 2087, *In re*: Hydroxycut Marketing and Sales Practice Litigation; and Member, PEC, MDL No. 1845, *In re*: ConAgra Peanut Butter Products Liability Litigation; Discovery Committee, MDL No. 1431, *In re*: Baycol Products Liability Litigation; and Discovery Committee, MDL No. 1355, *In re*: Propulcid Products Liability Litigation, among others.

**Behram Parekh** has represented both individuals and institutions in complex litigation matters. Mr. Parekh has been appointed as lead or co-lead counsel in numerous cases in the in the litigation of consumer fraud, false and misleading advertising, unfair competition, drug liability, securities litigation, and mass tort cases. Mr. Parekh has litigated plaintiff's class action, complex litigation, and mass tort claims for his entire legal careers and has been appointed as lead counsel or a member of a lead counsel committee in numerous cases, including most recently as co-lead counsel in the Apple iPhone4 Litigation, MDL-2188, and as sole lead counsel in the POM Wonderful LLC Litigation, MDL-2199, and the In re Oreck Corp. Halo Vacuum and Air Purifiers Marketing and Sales Practices Litigation, MDL-2317. Mr. Parekh's firm, Kirtland & Packard LLP has a full-fledged trial and appellate practice, with countless verdicts and over 180 published appellate opinions to its credit since the firm's founding in 1932 The Firm also has extensive experience in complex

multi-party and multi-district litigation, and has litigated numerous MDL proceedings, beginning with MDL-13 in 1967.

**Gale Pearson** is a partner in the firm of Pearson, Randall, and Schumacher, PA, of Minneapolis, Minn. She is admitted to practice law in the State of Minnesota (1994), Eighth Circuit (1995), Eighth Circuit Court of Appeals (1996), Seventh Circuit (2011), Seventh Circuit Court of Appeals (2014), and the United States Supreme Court (2002). She has served on several State consolidated actions and Federal MDL's over the past twenty years, including Phen-fen, Baycol, PPA, Stryker, Guidant, and Medtronic. She has served on the discovery, deposition, privilege log, liaison, bellwether and science committees. She has been appointed by federal Court Judges Donovan Frank and James Rosenbaum to serve on common benefit and injury allocation committees for the Guidant and Medtronic MDL litigation. Prior to attending law school, she was a Board Certified Clinical Laboratory Scientist a Laboratory Medical Technologist, certified by the American Society of Clinical Pathologists, and worked in the clinical lab.

**Paul Rheingold** of Rheingold, Valet and Rheingold PCI has been on many mass tort steering committees over the years, federal and state. Recently he was co-lead counsel in the NuvaRing MDL 1964 (and later on the PSC). He was on the PSC of the Ephedra in S.D.N.Y., with Judge Jed Rakoff. He is the author of the two-volume Thomson Reuters treatise, Litigating Mass Tort Cases, updated annually. He was consulted on the torts portion of MCL 4th, which cites in various places to my book. With regard to Benicar, he was the first lawyer to work on these cases and filed early ones in New Jersey.

**Joel Robert Rhine** of Rhine Law Firm PC has decades of experience in complex litigation matters, including mass torts and products liability. After graduating from Wake Forest Law School in 1988, where he received the Wake Forest Law Review award for the second of his two published Notes, Mr. Rhine, associated with Hunton & Williams, one of the largest and most prestigious law firms in the country. After leaving Hunton & Williams, Mr. Rhine began working in the mass tort arena, when he filed the first lawsuit in what became the multi-decade, multi-state synthetic stucco (EIFS) litigation, where he represented thousands of homeowners against a variety of constructions participants and manufacturers. Mr. Rhine obtained the nation's first verdict against an EIFS manufacturer. This multimillion dollar verdict was a catalyst for a national EIFS settlement. Mr. Rhine currently serves as co-counsel and co-lead counsel in approximately 700 Chinese Drywall cases pending in the Eastern District of Louisiana, is co-lead counsel in consumer class actions against Louisiana Pacific. He is also involved in the Pella 2 MDL and is preparing for a prominent role in the upcoming bellwether trials. He has significant roles in the Rust-Oleum MDL, will be active in Lumber Liquidators litigation, Anthem data breach litigation, Premara Blue Cross and Blue Shield litigation, Intuit TurboTax litigation, and more. Simply put, Mr Rhine has been counsel, lead counsel, or a member of the Plaintiff Steering Committee in dozens of class actions and national mass tort cases. As a frequently requested speaker on legal topics for trial lawyers and judges, Mr. Rhine speaks at national and state continuing education seminars on topics such as trial skills, mass torts and class

actions (including ethics in Multi-District Litigation and Class Actions) and various specific litigation issues. Mr. Rhine is and has been recognized repeatedly by *Business North Carolina's* Legal Elite, Super Lawyers (presently listed as one of the Top 100 North Carolina Lawyers), Best Lawyers, National Trial Lawyers Top 100 Trial Lawyers, has enjoyed an AV rating by Martindale Hubbell since 2002, and much more.

**Peter Snowdon** is an attorney with Johnson Becker, PLLC who has practiced law for over eight years.  Mr. Snowdon primarily handles products liability cases, with a focus on medical device and pharmaceutical litigation.  Since joining Johnson Becker, Mr. Snowdon has worked on several MDL teams including *In re: Zimmer Nexgen Knee Implant Products Liability Litigation* (MDL No. 2272) and *In re: Incretin Mimetics Products Liability Ligation* (MDL No. 2452).  Specifically, in the *Zimmer Nexgen Knee Implant* MDL, Mr. Snowdon was intrinsically involved with the *Daubert* briefing and oral argument process.  Similarly, he worked with the leadership in the *In re: Incretin* MDL to develop preemption and general causation expert reports.  In addition, Mr. Snowdon participated in the negotiation of the Deposition Protocol and other preliminary Case Management Orders in the *In re: Testosterone Replacement Therapy Products Liability Litigation* (MDL No. 2545).  Mr. Snowdon was an Economics major at the University of Virginia and earned his law degree from the University of Denver.  He is licensed to practice law in Minnesota and Colorado.

**George Williamson** is an attorney with the firm of Farr, Farr, Emerich, Hackett, Carr & Holmes, P.A. in Punta Gorda, Florida. He received his Juris Doctorate from the University of Miami School of Law in 2010 and is licensed to practice in all Florida state courts, the Middle and Southern Districts of Florida, and has been granted pro hac vice admissions in numerous federal courts around the country. Mr. Williamson's practice is devoted to mass tort litigation and complex civil disputes in both state and federal courts. He has recently represented plaintiffs in the Biomet M2A Magnum MDL 2391, Wright Conserve MDL 2329, Deepwater Horizon oil spill MDL 2179, Levaquin MDL 1943, pelvic repair system litigation, including Ethicon MDL 2327, Coloplast MDL 2387, Bard MDL 2187, and Boston Scientific MDL 2326. He has also represented plaintiffs injured by the da Vinci robotic surgical system as well as the hormone replacement therapy drug Prempro. With regard to the Benicar litigation, Mr. Williamson has filed cases in the Southern District of Florida and filed an Interested Party Response with the JPML in support of the formation of this MDL.

Respectfully submitted,

s/Richard M. Golomb
RICHARD M. GOLOMB
Golomb & Honik
1515 Market Street, Suite 1100
Philadelphia, PA  19102
(215) 985-9177
Fax:  (215) 985-4169

rgolomb@golombhonik.Com
PLAINTIFFS' LIAISON COUNSEL

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was filed electronically on May 4, 2015. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                    s/Richard Golomb
                    RICHARD M. GOLOMB
                    PLAINTIFFS' LIAISON COUNSEL

# **Exhibit 9**

# P. Leigh O'Dell

P. Leigh O'Dell is a shareholder in the Mass Torts Section and a member of the Executive Board of Beasley, Allen, Crow, Methvin, Portis, & Miles, P.C., a national law firm headquartered in Montgomery, Alabama. Beasley Allen's Mass Torts Section is comprised of 34 attorneys and 90 staff members. The Mass Torts Section focuses on pharmaceutical and medical device product liability litigation. Overall, Beasley Allen is composed of 75 attorneys and over 200 staff members.

Ms. O'Dell serves on the Plaintiffs Steering Committees in *In re: C.R. Bard, Inc., Pelvic Repair System Prod. Liab. Litig.,* MDL No. 2187; *In re: Ethicon, Inc. Pelvic Repair System Prod. Liab. Litig.,* MDL No. 2327; *In re: American Medical Systems, Inc., Pelvic Repair System Prod. Liab. Litig.,* MDL No. 2325; *In re: Boston Scientific Corp., Pelvic Repair System Prod. Liab. Litig.,* MDL No. 2326; *In re: Coloplast Corp., Pelvic Repair System Prod. Liab. Litig.,* MDL No. 2387; and *In re: Cook Medical, Inc., Pelvic Repair System Prod. Liab. Litig.,* MDL No. 2440. Ms. O'Dell had extensive involvement in the transvaginal mesh litigation, deposing numerous corporate witnesses, defense general causation experts, and numerous other witnesses. She was lead counsel in two trial cases, which ultimately settled on the eve of trial. She served as lead negotiator on behalf of large groups of plaintiffs in the transvaginal mesh litigation.

Previously, Ms. O'Dell served on the Law and Briefing Committee, Trial Package Committee, and Settlement Liaison Committee in *In re: Vioxx Products Liability Litigation*, MDL. 1657. She was trial counsel in *Dedrick v. Merck & Co., Inc.,* a bellwether trial, and co-counsel in four other Vioxx bellwether trials.

Ms. O'Dell exhibits fidelity, focus, and fortitude when charged with responsibilities related to a litigation. For example, in *In re Vioxx Product Liability Litigation*, she maintained a steadfast commitment to the successful resolution of the litigation even when the defendant was winning trials and consistently expressing a commitment to try each case. Ms. O'Dell, along with others, worked tirelessly to protect the rights of all persons injured as a result of taking Vioxx, not only during the discovery of the case and trials, but also throughout the negotiation and administration of the settlement.

Ms. O'Dell has demonstrated the ability to work cooperatively with others throughout her career in mass torts. In the *Vioxx* litigation, she effectively and efficiently facilitated the cooperation of numerous firms involved in the litigation, particularly in conjunction with the preparation and trial of bellwether cases and the development of the trial package.

Ms. O'Dell is class counsel in *Krueger v. Wyeth, Inc., et al.,* No. 03-CV-2496 (S.D.Ca.), where she represents a class of all purchasers of hormone replacement therapy from 1995 through 2002. She has other significant mass tort experience, including participation in litigation involving Medtronic lead wires, genetically modified rice, and Fosamax.

Beasley Allen has a reputation for leadership, cooperation, and hard work in multidistrict litigations. Currently, Beasley Allen lawyers serve on Plaintiffs' Steering Committees in *In re: Xarelto, Product Liability Litigation,* MDL No. 2592; *In re: Lipitor*

# P. Leigh O'Dell

*Products Liability Litigation,* MDL No. 2502; *In re: Actos Product Liability Litigation,* MDL No. 2299; *In re: Fosamax Products Liability Litigation*, MDL No. 1789; *In re: Fosamax (Alendronate Sodium) Products Liability Litigation* (No. II), MDL No. 2243; *In re: DePuy Orthopaedics, Inc., ASR Hip Implants Products*, MDL No. 2197; *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, MDL No. 2244; *In re: Prempro Products Liability Litigation*, MDL No. 1507, among others.

Ms. O'Dell graduated from Auburn University with a bachelor's degree in accounting. She graduated from the University of Alabama School of Law, where she served as Managing Editor of the Alabama Law Review and was named Outstanding Senior.  Following law school, she clerked for the Honorable Ira DeMent, United States District Judge for the Middle District of Alabama.

Ms. O'Dell has been licensed to practice law since 1993.  She is admitted to practice in the United States Supreme Court, the United States Court of Appeals for the Fifth Circuit, the United States Court of Appeals for the Eleventh Circuit, various United States District Courts across the country, and the Supreme Court of Alabama.

She is a member of the Alabama State Bar, where she is a Treasurer of the Federal Court Practice Section; Alabama Trial Lawyers Association, Alabama Law Foundation, American Bar Association, Christian Legal Society, and the Federal Bar Association. Ms. O'Dell also is a member of the American Association for Justice and serves on the AAJ Transvaginal Mesh Litigation Group.

Ms. O'Dell has been recognized in "The Best Lawyers in American" publication, and she is "AV" rated by Martindale-Hubbell.  At Beasley Allen, she was named Litigator of the Year in 2013, and in 2015, she received the Chad Stewart Award, an award to recognize an attorney who exemplifies a spirit of service in the practice of law.
.

Beasley Allen Law Firm

In 1979, Jere Locke Beasley founded the firm, which is now known as Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. The firm represents plaintiffs and claimants in civil litigation. The firm employs more than 75 lawyers and over 200 support staff.

Our primary offices are based in Montgomery, Alabama, although we work with attorneys and clients throughout the country. In 2017, Beasley Allen will open a branch office in Atlanta, Georgia. We are excited about expanding our reach to handle more cases in the state of Georgia and especially in Atlanta.

Beasley Allen represents plaintiffs and claimants in the following areas: Business Litigation, Personal Injury and Product Liability, Medical Devices and Drugs, Fraud, Employment Law, and Environmental.

Our attorneys are leaders in complex litigation in courtrooms around the U.S., including state and federal courts. Our attorneys and cases have been profiled in major national media such as Time Magazine, Business Week, Fortune Magazine, Forbes.com, Wall Street Journal, Los Angeles Times, USA Today, U.S. News & World Report, New York Times, National Law Journal, New Orleans Times-Picayune, CNBC's "The Closing Bell," 60 Minutes, NPR, CNN, Headline News, NBC's "Today Show," MSNBC, ABC's "Good Morning America" Fox News and Fox's "The O'Reilly Factor." We have also represented clients testifying before U.S. Congressional committees on Capitol Hill in Washington, D.C.

Our support staff includes full time nurses, investigators, computer specialists, technologists, a public relations department and a comprehensive trial graphics department.  We are one of the country's leading firms involved in civil litigation on behalf of claimants, having represented hundreds of thousands of people.

We hold state and national records for the largest jury verdicts in numerous categories. Beasley Allen currently holds U.S. records for largest verdicts/settlements in 6 categories:

The largest verdict against an oil company in U.S. History – $11.9 Billion.
The largest pharmaceutical drug settlement in U.S. History – $4.85 Billion.
The largest state Medicaid fraud litigation – $1.3 Billion.
The largest individual private environmental settlement in U.S. History – $700 Million.
The largest predatory lending verdict in U.S. History – $581 Million.

We have handled cases involving verdicts and settlements amounting to more than $26 billion.

# **Exhibit 10**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | CASE NO: MDL No. 2738 **APPLICATION FOR CO-LEAD COUNSEL** |
| | ) | **Judge Freda L. Wolfson** |
| This document relates to: ALL CASES | ) ) ) ) | |

Michelle A. Parfitt, and the firm of Ashcraft & Gerel, LLP, pursuant to the Court's Order, respectfully files this application for appointment as co-lead in the matter of *In Re:  Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2738.

Ms. Parfitt has been involved in the prosecution of the talc cases since 2014. Her firm filed the first talc actions in the Superior Court of the District of Columbia. Since then, Ms. Parfitt and her firm have been one of a handful of firms actively committed to the prosecution of these cases before the courts.

Ashcraft & Gerel, LLP was founded in 1953 in Washington, D.C. The firm and its team of experienced litigators have established themselves as among the nation's leading personal injury and consumer advocate attorneys. Ashcraft & Gerel, LLP has developed a reputation for excellence in the area of mass tort, particularly pharmaceutical, medical device and product liability litigation. The firm operates five offices in Washington, D.C., Maryland and Virginia and employs 25 attorneys focused on representing plaintiffs. The firm's practice is devoted exclusively to the representation of plaintiffs in all areas of personal injury and consumer

actions. These include Pharmaceutical and Medical Device Liability, Complex Mass Torts, Mass Disasters, Medical Malpractice, Toxic Torts, Qui Tam, and other personal injury actions. The firm attorneys have tried and argued appellate cases throughout the country before state and federal courts, including the Supreme Court of the United States. For sixty-three years, Ashcraft & Gerel, LLP has represented plaintiffs in complex litigation nationwide, and distinguished itself as a national leader for consumer rights.

## I.      Michelle A. Parfitt

Michelle A. Parfitt is a Senior Partner in the law firm of Ashcraft & Gerel, LLP. Over the past thirty-six years of her professional career, Ms. Parfitt has sought to distinguish herself as a champion of individual rights as well as a nationally recognized leader before the bar in the area of complex mass torts specializing in pharmaceutical and product liability cases. In particular, Ms. Parfitt has championed issues of women's public health. She currently heads the Mass Tort practice section of Ashcraft & Gerel, LLP and has had the privilege of representing thousands of individuals in various state and federal courts across the country who have filed suit against pharmaceutical and medical device manufacturers.

Ms. Parfitt received her undergraduate degree at Northeastern University and graduate degree from Michigan State University where she graduated Magna Cum Laude. She was later awarded her Juris Doctor from Hofstra Law School in 1980. Ms. Parfitt is the past president of the Trial Lawyers Association of Metropolitan Washington, D.C. (TLA-DC) having previously served as an officer and member of the Board of Governors for that association since 1998. She is also a past committee member for the TLA-DC's Women's Trial Education programs. She currently sits as a Board member on The Council for Court Excellence located in Washington,

D.C., which is a nonpartisan, civic organization that works to improve the administration of justice in local and federal courts. This Council also works with related organizations nationwide. She is also a member of the Virginia Trial Lawyers Association (VTLA). Additionally, Ms. Parfitt has been selected by her peers to be included in "Best Lawyers in America," "Super Lawyers," "Best Lawyers in Washington, DC," and the Washingtonian's "Top Lawyers."  In addition, she was awarded the Clarence Darrow Award in 2013, is a member of the prestigious International Society of Barristers (ISOB) and the American Board of Trial Advocates (ABOTA), and was named "Trial Lawyer of the Year" in 2015 by the TLA-DC.

Ms. Parfitt has also had the opportunity to serve in numerous leadership and committee positions for the American Association of Justice (AAJ), the District of Columbia Bar and the Women's Bar Association of the District of Columbia (WBA). She has been an active lecturer and author on mass tort litigation, scientific and medical evidence in pharmaceutical and medical device cases for AAJ, State Bar Associations and numerous national legal education programs.

With regard to the Women's Bar Association, Ms. Parfitt has Co-Chaired its Sections on Litigation, Immigration and Naturalization and Executive Endorsements. The Endorsement Committee responsibilities included recommendations for judicial appointments. She has an AV Martindale-Hubbell rating and is licensed to practice law in the District of Columbia and the Commonwealth of Virginia. Ms. Parfitt is a member of the Supreme Court of the United States Bar, District of Columbia Bar and Virginia State Bar.

Within her practice concentration in the area of pharmaceutical and device litigation, Ms. Parfitt has earned a reputation as one of the most knowledgeable attorneys in the areas of medical science and expert testimony preparation. Her reputation in this area is perhaps best evidenced by the fact that she has been appointed to leadership positions by Judges of Federal

District Courts in several jurisdictions to serve either as a member of the Plaintiffs' Executive Committee, Plaintiffs' Steering Committee, Discovery Committee, Chair or Co-Chair of the Science and Expert Committees in a number of complex mass pharmaceutical and medical device litigations. Ms. Parfitt has spent her career advocating for consumer rights. Her skills as a litigator are recognized by the significant jury verdicts and settlements achieved on behalf of her clients in the areas of complex pharmaceutical and device litigation, mass disasters, and women and children's rights.

Ms. Parfitt is committed to providing her firm's expertise and resources to this very important public health issue on behalf of women. Ms. Parfitt has the requisite experience in law, science and medicine as well as general knowledge concerning the management of multidistrict pharmaceutical and product liability litigation to assist the Court in the efficient administration of this litigation.

## II.      James F. Green

James F. Green is a Senior Partner with Ashcraft & Gerel, LLP charged with the organization and development of the legal team responsible for Toxic Tort work. He was born in Pittsfield, Massachusetts. Mr. Green was educated at St. Anselm College where he was a member of Delta Sigma Rho, Tan Kappa Alpha and graduated with a Bachelor of Arts Degree in Philosophy and Political Science in 1970. He received his Juris Doctor from Suffolk University School of Law in 1973, where he was a member of Phi Alpha Delta.  He joined Ashcraft & Gerel, LLP in 1975.

Mr. Green is a member of the Massachusetts, District of Columbia and Virginia Bars. He is also a member of the Bar of the Supreme Court of the United States, where he has had the honor to appear and argue cases on behalf of injured persons. He is an active member of the

4

District of Columbia Bar, The Virginia State Bar Association, The American Association for Justice, The Trial Lawyers Association of Metropolitan Washington, DC and The Virginia Trial Lawyers Association. He has also served as past National Chairman and Vice Chairman of various committees of these associations.

He is an active lecturer and author in local and national Continuing Legal Education (CLE) programs. He has been repeatedly voted by his peers to membership in Best Lawyers in America for personal injury and mass toxic tort.  He has been selected to be included in "Super Lawyers," "Best Lawyers in Washington, DC," the Washingtonian's "Top Lawyers", and has been named by The Washington Post in its list of "Washington DC's Top Lawyers". He holds an A.V. Preeminent Peer Reviewed rating from members of the Bar and Judiciary by the Martindale Law Directory. Over the past several decades, Mr. Green has been the subject of multiple biographical entries in Who's Who in America and Who's Who in American Law.

Mr. Green has focused his practice on the areas of products liability, pharmaceutical and medical device litigation, mass disaster and mass toxic tort. He has been appointed by the Judges of various Federal Courts to serve on Multi-District Litigation committees including Plaintiff's Steering Committees, Discovery Committees, Settlement Committees, and Bellwether Trial Committees where he has also served as trial counsel.

**III.     Christopher V. Tisi**

Christopher V. Tisi is a senior partner at Ashcraft & Gerel, LLP.  Mr. Tisi received his Bachelor of Arts degree (*cum laude*) from the State University of New York at Albany in 1982 and graduated from Wake Forest Law School in 1987.  He is a member of the Maryland and District of Columbia State Bars. He is also a member of the Bars for the Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals for the Fourth Circuit, the

United States Court of Appeals for the Sixth Circuit, the United States Court of Appeals for the Eleventh Circuit, and the Supreme Court of the United States. Mr. Tisi earned an "AV" rating from Martindale-Hubbell.  In addition, he is a member of the prestigious International Society of Barristers (ISOB) and the Summit Council.

Mr. Tisi has been actively involved in the day-to-day management of several MDL proceedings. Through appointments in various MDLs, he has overseen and managed discovery of complex issues relating to liability, causation and damages. For example, in one MDL, he actively managed discovery against four (4) defendants simultaneously, and was co-trial counsel or lead-trial counsel for three (3) of four (4) MDL bellwether cases. He has also briefed and/or argued numerous significant MDL motions involving experts, discovery and other complex issues.

Mr. Tisi has been trial counsel in several significant pharmaceutical jury trials. Recently, he was lead trial counsel in *Jackson v. McNeil-PPC-Inc., et al.*, and *Hayes v. McNeil-PPC-Inc., et al.*, consolidated mass tort cases in Atlantic County New Jersey.  In 2013, he was lead trial counsel in the case of *Decker v. GE Healthcare, Inc.*, a case involving the MRI contrast agent Omniscan, which resulted in significant jury verdict in plaintiffs' favor. This case was appealed and later affirmed, 770 F.3d 378 (6th Cir. 2014). Similarly, in 2003, he was co-trial counsel in *Morgado v. Warner-Lambert*, a case involving Rezulin-induced liver injury where the jury found in favor of the plaintiff. In addition to the above, he has been involved in a number of significant trials involving complex pharmaceutical and product liability issues. He has lectured other plaintiffs' attorneys on all aspects of the trial of a pharmaceutical case, including the use of MDL generated evidence at trial and in the management of bellwether trial procedures.  Through his

extensive MDL and trial experience, he has a unique and first-hand understanding of the importance of developing an effective MDL trial package.

Ashcraft & Gerel, LLP, and its mass tort practice partners, Ms. Parfitt, Mr. Green and Mr. Tisi, have been appointed to and have served on numerous Plaintiffs' Executive and Steering Committees in national mass tort and complex litigations and have held leadership positions in some of the largest mass torts in recent years.  Some of their professional leadership positions include the following:

- *In re:  Karl Storz Power Morcellator Products Liability Litigation* – Plaintiff's Executive Committee;
- *In re: Testosterone Replacement Therapy Products Liability Litigation*, MDL No. 2545 – Plaintiff's Steering Committee and Discovery Committee;
- *In re:  Tylenol (Acetaminophen) Sales and Marketing Products Liability Litigation*, MDL No. 2438 – Plaintiff's Steering Committee and Discovery Committee.  Mr. Tisi was lead trial counsel in the MDL Bellwether case, *Hayes v. McNeil-PPC, Inc., et al.*, and state court cases;
- *In re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation,* MDL No. 2428 – Plaintiff's Executive Committee, Science Committee, Discovery Committee, and Expert Committee;
- *In re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385 – Plaintiff's Executive Committee, Science Committee, and Discovery Committee;
- *In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation*, MDL No. 2325; *In re: Boston Scientific Corp., Pelvic Repair System Products Liability Litigation,* MDL No. 2326; and *In re: Ethicon, Inc., Pelvic Repair System Products Liability Litigation,* MDL No. 2327 – Plaintiff's Steering Committee;
- *In re: Gadolinium Based Contrast Agent Litigation,* MDL No. 1909 – Plaintiff's Steering Committee, Science Committee, Discovery Committee, and Expert Committee. Ms. Parfitt and Mr. Tisi were co-lead trial counsel in the only case tried in the United States. They obtained a verdict on behalf of their clients in the amount of $5,000,000.00.  This verdict was upheld on appeal, *Decker v. GE Healthcare, Inc.*, 770 F.3d 378 (6th Cir. 2014);
- *In re: Fosamax Products Liability Litigation,* MDL No. 1789 – Plaintiff's Steering Committee, Science Committee, Discovery Committee, Settlement Committee, and Bellwether Trial Committee. Ms. Parfitt and Mr. Green were co-lead trial counsel in the MDL Bellwether case, *Boles v. Merck & Co., Inc.*;
- *In re: Ortho Evra Products Liability Litigation,* MDL No. 1742 – Plaintiff's Executive Committee, Science Committee, Discovery Committee, and Expert Committee;

- *In re: Phenylpropanolamine (PPA) Products Liability Litigation,* MDL No. 1407 – Plaintiff's Steering Committee, Science Committee, Discovery Committee, and Settlement Committee;
- *In re: Vioxx Products Liability Litigation,* MDL No. 1657 – Plaintiff's Steering Committee, Science Committee, Discovery Committee, and Expert Committee. This litigation resulted in a $4.5 billion settlement;
- *In re: Zyprexa Products Liability Litigation,* MDL No. 1596 – Science Committee, and Discovery Committee;
- *In re: Rezulin Products Liability Litigation,* MDL No. 1348 – Plaintiff's Steering Committee, Science Committee, Discovery Committee, and Settlement Committee.  Mr. Tisi was co-lead trial counsel in the case of *Morgado v. Warner-Lambert* (Sup. Ct. N.., 2003), which resulted in a plaintiff's verdict;
- *In re: Propulsid Products Liability Litigation,* MDL No. 1355 – Plaintiff's Steering Committee, Expert Committee, Science Committee, and  Discovery Committee.  Ms. Parfitt was co-lead trial counsel in *Calvert v. Janssen Pharmaceuticals*, filed in Superior Court of the State of California, County of Napa; and
- *In re: Diet Drugs Phentermine/Fenfluramine/Dexfenfluramine Products Liability Litigation,* MDL No. 1203 – Science Committee, and Discovery Committee.

In closing, the reputation of Ashcraft & Gerel, LLP and its attorneys for working cooperatively and productively on Plaintiff Steering Committees is evidenced by the fact that we have been repeatedly asked to serve on numerous high-profile and successful cases. Importantly, Ashcraft & Gerel, LLP has significant and dedicated legal talent to devote to this case, including experienced partners and associates from its mass tort practice section who have played and will continue to play an important role in this litigation.

WHEREFORE, Michelle A. Parfitt respectfully requests appointment as co-lead in MDL No. 2738.

Date:  November 21, 2016

_____
Michelle A. Parfitt, Esq.
Ashcraft & Gerel, LLP
4900 Seminary Rd., Ste. 650
Alexandria, VA 22311
(703) 931-5500
(703) 820-1656 – Fax
mparfitt@ashcraftlaw.com

# Exhibit 11

Christopher M. Placitella, Esq.
Cohen, Placitella & Roth, P.C.
127 Maple Avenue
Red Bank, NJ  07701
Phone: (732) 747-9003
Fax: (732) 747-9004
cplacitella@cprlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | ) **CASE NO: MDL No. 2738** <br> ) <br> ) <br> ) **APPLICATION FOR** <br> ) **APPOINTMENT AS  PLAINTIFFS'** <br> ) **LIAISON COUNSEL** <br> ) |
| This document relates to: | ) **Judge Freda L. Wolfson** |
| ALL CASES | ) <br> ) <br> ) <br> ) <br> ) |

NOW INTO COURT comes Christopher M. Placitella, and Cohen, Placitella & Roth, P.C., pursuant to Order No. 1, and respectfully files the within application for appointment as liaison counsel for the Plaintiffs.

Along with other counsel at Cohen, Placitella & Roth, I have engaged with Plaintiffs' counsel on numerous phone calls and in person meetings regarding the talc matters over the past several months.  I have communicated and know all Counsel applying for lead as well as counsel applying for different positions on the Executive Committee & Steering Committee.  I support the appointment of the lead counsel as previously submitted.

I am a shareholder of Cohen, Placitella & Roth (hereinafter "CPR") for more than ten years.  I have tried numerous trials to verdict and worked tirelessly

supporting the Plaintiff's bar in asbestos, pharmaceutical and other mass tort actions throughout the state of New Jersey and nationwide.

This application will address my and my firm's accomplishments that Courts often look to when appointing leadership and liaison positions.

## Introduction

I respectfully request to be appointed as liaison counsel, a role that I will be as dedicated to as I have been to my clients over my thirty years of representing those injured by asbestos, pharmaceuticals, and other products. I have successfully fought for these clients in many different courtrooms at both the federal and state level.

### a. Cohen, Placitella & Roth is a Leader in Mass Tort Litigation in New Jersey

CPR has more than twenty lawyers spread over two offices in Red Bank, New Jersey and Philadelphia, Pennsylvania. The attorneys at CPR strive to provide the highest quality advocacy in support of our clients in the most ethical and diligent manner.

The Red Bank and Philadelphia offices, both near the Trenton courthouse, will both be instrumental in providing support for this litigation.

Our firm has been litigating issues concerning the contamination and carcinogenic effect of talc since 2009 which includes talc extracted from the Vermont mine once owned by Johnson & Johnson. One of those cases is reported in the Third Circuit decision of Williams v. BASF et al, 765 F.3d 306 (3d Cir. 2014).

I have been appointed to leadership roles in other mass tort cases in the past including: Member of the Steering Committee for the Multi-District Trans Vaginal Mesh Litigation, National 23 Multi-District TMJ litigation, National Rezulin Litigation; Liaison Counsel for New Jersey Trans Vaginal Mesh Litigation; Class Counsel Johns Manville Class Action Litigation and New Jersey Diet Drug Litigation; Member of the Asbestos Advisory Committee to the Jersey Superior Court; and Lead Counsel for New Jersey Propulsid Litigation.

CPR has maintained an integral role in many mass tort litigations over the years and has litigated them to completion. CPR is an established firm that has

shown it is willing to staff cases as needed and has an excellent reputation of helping and working with our co-litigants.

### b.  Personal Experience

I am licensed to practice in New York, New Jersey and several federal courts, including this one.  I am a member in good standing of all courts to which I am admitted, and I have never been suspended or reprimanded by any court.

I have been honored with the "Gold Medal for Distinguished Service" by The New Jersey Association for Justice, nominated as National 'Trial Lawyer of the Year', awarded the Clarence Darrow Award by the National Trial Lawyers Association, been listed as a New Jersey Super Lawyer from 2005 to present, listed on the list of The Best Lawyers in America from 2001 to the present in two fields, and in the National Association of Distinguished Counsel.

I am a frequent participant in educational programs relating to mass torts.  I am the editor of the NJ Mass Tort and Class Action Treatise and the moderator of the annual New Jersey Mass Tort & Class Action seminar sponsored by the New Jersey State Bar Association.

### I.      CPR Litigations Complex Litigation Regularly

Whether it be prosecuting asbestos case, pharmaceutical injury cases, or a complex building collapse case, CPR works daily in complex litigation.  Besides litigating single and multi-plaintiff cases, CPR also makes a business of prosecuting class action cases.

### II.     CPR is Invested in the Cases

CPR has numerous cases filed in several different Courts.  I have worked with most of the   firms that represent many of the plaintiffs in this litigation several times over the years.

Additionally, one of CPR's attorneys has been involved in this litigation for approximately two years.  He was present at the first Case Management Conference held in New Jersey State Court, and helped to negotiate the ESI Agreement, the protective order, as well as, Plaintiff's fact sheets that are used in other jurisdictions.  He has worked directly with many of the Plaintiff's firms involved in the talc litigation throughout this time period.

### III.    CPR Works Cooperatively

CPR always works cooperatively with attorneys on both sides of the litigation.  CPR has an excellent working relationship with members of the defense bar, and it known as a firm that is able to resolve litigation related disputes without the need for court intervention.  This is evidenced by our appointment to several leadership positions in the past, including, the asbestos advisory council in Middlesex County, which is a council that includes members from both sides of the litigation.  CPR has also served as  local counsel and co-counsel with many firms nationwide.

### IV.    CPR is committed to Prosecuting the Cases Timely.

CPR is committed to putting the time, effort and funding into these cases to bring them to a timely conclusion.

### V.    CPR Common Benefit Fund Framework.

CPR believes that the lawyers should be compensated based on the effort and time they put forth contributing in their efforts to bring the litigation to a conclusion.  If appointed as a liaison, CPR will work with the Court and the attorneys to come to a reasonable common benefit fee structure that the Court may seek to impose.


WHEREFORE, I respectfully request appointment as Liaison Counsel in MDL No. 2738.


Dated:  November 21, 2016

COHEN, PLACITELLA & ROTH, PC

*/s/ Christopher M. Placitella*
Christopher M. Placitella, Esq.
cplacitella@cprlaw.com
127 Maple Ave.
Red Bank, NJ 07701
Ph:  (732) 747-9003
Fax: (732) 747-9004

# Exhibit 12

## WARREN TAVARES BURNS

---

**500 NORTH AKARD, SUITE 2810 | DALLAS, TX  75201 | (469) 904-4550 | WBURNS@BURNSCHAREST.COM**

---

Selecting a lawyer for your case is a very important decision.  You want a lawyer who understands your concerns and who will fight to achieve your goals.  You want a lawyer who believes in our system and knows how to succeed in it.  And most importantly you want a lawyer who is going to give you candid and meaningful advice.  I am that lawyer.

I focus my practice on high-stakes, multidistrict antitrust litigation, along with other complex class action and commercial cases.  I have handled numerous cases involving price fixing, monopolization, breach of contract, intellectual property, business torts, consumer protection statutes, and accounting malpractice.

I achieve results. In 2012, I helped lead a trial team that took the first mortgage-backed-securities related case to trial.  In a landmark and game-changing trial, we secured a $106 million judgment on behalf of our client and obtained key pre-trial determinations that had a domino effect in related cases.

I want to know more about your case and to see if there is a way I can help you.  I look forward to the opportunity to talk to you about your case.

**Education and Background**

Where a man comes from is important.  I think it can tell you a lot about their character and approach to litigation and trials.

I am from a small town in Mississippi called Kosciusko. My extended family on both sides has lived there for six generations. My upbringing had a profound impact on me. I learned the value of community, the importance of joining in the lives of those around you and of making an difference in them.   Every day, my background helps me relate to witnesses and juries in ways that benefit my clients.

I spent my college years at Ole Miss.  I played four years of rugby for the Ole Miss Rugby Football Club, starting each season as a second-row forward.  I use the skills I learned on the rugby pitch everyday in litigation.  In a fast moving match, you have to be prepared to play offense and defense intelligently.  You have to capitalize quickly on your opponents' mistakes.  And you have to bring maximum pressure at the right moment to win.  The same is true in litigation.

After college, I moved to the District of Columbia to work in public relations and fundraising. I took a job as a junior fundraising staffer at the Basilica of the National Shrine of the Immaculate Conception, the largest Catholic church in the Americas.

Within a year, I was promoted to serve as the Communications Director at the Basilica.

I next moved to the Lt. Joseph P. Kennedy, Jr. Institute, a non-profit organization dedicated to assisting people with developmental disabilities in their efforts to live full and complete lives. There, I served as the Director of Development and Public Relations.

Later, I moved to Asheville, North Carolina, to assume the role of Development Director at Riverlink, a regional non-profit organization. At Riverlink, our focus was on restoration of the French Broad River and developing the economy along its banks.

I left Riverlink to attend Tulane Law School. There, I graduated summa cum laude and Order of the Coif, and received the John Minor Wisdom Award, Tulane's highest prize for graduating law students. I also served as Editor in Chief of the Tulane Law Review.

After law school, I clerked for the Hon. Paul J. Kelly, Jr. on the U.S. Court of Appeals for the Tenth Circuit.

**Honors and Professional Involvement**

I was elected in 2016 to the American Law Institute.  The American Law Institute is the leading independent organization in the United States producing scholarly work to clarify, modernize, and improve the law.

In 2015 and 2016, I was named to the Top 100 National Trial Lawyers.

I am an active member of the Dallas Bar Association and the American Bar Association. In the ABA, I sit on the steering committee for the international litigation committee.  I am a Life Fellow of the American Bar Foundation.

I am also a member of the American Association for Justice and the Texas Trial Lawyers Association.  And I am a Fellow in the Southern Trial Lawyers Association.

Every year since 2014, I have been named to the International Who's Who of Competition Lawyers.  And since 2011, I have been named a Texas Rising Star in Business Litigation.

I sit on the Board of Advisory Editors of the Tulane Law Review, a national board comprised of distinguished alumni.

**Representative Cases**

**ANTITRUST CLASS ACTION / CONFIDENTIAL SETTLEMENTS:** I serve as co-lead counsel in *In re Vehicle Carrier Services Antitrust Litigation (2013-present)* now pending in the District of New Jersey.  On the eve of arguing against defendants' consolidated motion to dismiss, I negotiated a confidential settlement with one of the principal defendants.  I negotiated a second confidential settlement with another major defendant just weeks later.

**ANTITRUST CLASS ACTION / LEADERSHIP:**  I serve on the executive committee in *In re Domestic Airlines Antitrust Litigation (2015-present)* now pending in the District of Columbia.  Our clients have alleged that the nation's four major airlines conspired to restrict capacity to fuel record high profits.

**ANTITRUST CLASS ACTION / CONFIDENTIAL SETTLEMENTS:**  I previously served as co-lead counsel in *In re Automotive Parts Antitrust Litigation (2011-present)* in the Eastern District of Michigan.  I personally negotiated settlements exceeding $100 million with foreign defendants while successfully organizing and managing this complex case.

**COMMERCIAL CASES / CONFIDENTIAL SETTLEMENTS:** Lead trial counsel in three cases against gas giant Chesapeake for breach of contract and underpayment of royalties relating to the oil and gas lease on the Dallas/Fort Worth International Airport. I have represented minority and women-owned business enterprises in their efforts to enforce contractual provisions against Chesapeake. I have settled all three cases successfully over the past three years, including one case that settled two days before trial.

**COMMERCIAL CASE / CONFIDENTIAL SETTLEMENT:** Lead trial counsel in a confidential arbitration representing a telecommunications company in its suit against its former billing aggregator. My client hired me with less than three months to go before trial.

**SECURITIES CLASS ACTION / DEFENSE COUNSEL:** Counsel in **Brady v. Kosmos Energy, Ltd. (N.D. Tex.) (2012-present)** defending a start-up oil and gas company against allegations centering on its initial public offering. The court recently denied plaintiffs' motion for class certification.

**COMMERCIAL CASE / JUDGMENT EXCEEDING $100 MILLION:** Counsel in **Assured Guaranty v. Flagstar Bank (S.D.N.Y.) (2011-2012)**, the first case to go to trial related to the residential mortgage backed securities market meltdown. I represented a bond insurer in a suit against the securities issuer, resulting in a judgment of over $100 million. In this expert-driven case, I managed plaintiff's principal liability expert, on whose opinion Judge Jed Rakoff relied in reaching his judgment. At trial, I cross-examined defendant's principal liability expert, whose opinion Judge Rakoff ultimately discredited.

**CLASS ACTION / JUDGMENT EXCEEDING $16 MILLION:** Counsel in *In re Universal Service Fund Litigation (D. Kan.) (2005-2013)*. We prevailed at trial on a breach of contract claim for AT&T's California landline telecommunications customers.

**ANTITRUST CLASS ACTION / SETTLEMENTS EXCEEDING $50 MILLION:** Counsel *in In re Ready-Mixed Concrete Antitrust Litigation (S.D. Ind. 2005-2010).* We resolved the case before trial with class members receiving more than 100 percent of their actual damages after deduction of attorneys' fees.

**PATENT CASE / CONFIDENTIAL SETTLEMENT:** Counsel in **Individual Network v. Apple (E.D. Tex.) (2007-2009)** representing an inventor in its patent infringement case against Apple. This case involved Apple's Genius recommendation engine. I managed all aspects of discovery and motion practice, including taking the depositions of all defense experts and managing plaintiffs infringement and validity expert. The case was resolved before trial.

**ANTITRUST CASE / CONFIDENTIAL SETTLEMENT:** Counsel in *Morris & Dickson Co. v. Abbot Labs. (M.D. La.) (2006-2008)*, representing a regional pharmaceutical wholesaler in its suit against Abbott Laboratories for violation of the Robinson-Patman Act by unfairly favoring my client's competitors. I managed all aspects of the litigation, including settlement negotiations. The case was resolved before trial.

# **Exhibit 13**

Richard Golomb is managing shareholder and a founding partner of Golomb & Honik, PC. He has more than 30 years of experience representing those who have been catastrophically injured as a result of medical negligence, defective products, dangerous drugs, construction accidents and other personal injury claims. He also represents victims in consumer, medical monitoring and product liability class actions.

Early in his career, Mr. Golomb was an associate, and then shareholder, with a Philadelphia personal injury firm for 11 years before striking out on his own in 1996. Since 1998, he has been a shareholder in Golomb & Honik, P.C., where he has served as counsel in more than 100 cases that resulted in million-dollar and multimillion-dollar verdicts and settlements for individual and class action clients.

Mr. Golomb has served in leadership in more than a dozen multi-district litigations in pharmaceutical, consumer class action and anti-trust matters.   Notably, Mr. Golomb has been extensively involved in the talc/ovarian cancer litigation for more than two years.  Currently, Mr. Golomb represents more than 150 women who have been diagnosed with ovarian cancer following their prolonged use of talcum powder for feminine hygiene.  He serves as lead counsel in *Carl v. Johnson & Johnson, et al.*, the first talc case to be scheduled for trial in New Jersey state court.  In addition, Mr. Golomb has lectured at numerous educational seminars to attorneys around the country on the subject of this litigation.

Mr. Golomb currently serves in leadership positions in a number of current MDLs and coordinated matters representing individuals in pharmaceutical mass tort cases.  For example, Mr. Golomb has been appointed by the Court as Liaison Counsel for Plaintiffs in *In Re: Benicar (Olmesartan) Products Liability Litigation* (MDL No. 2606) currently pending in the United States District Court for the District of New Jersey.  Mr. Golomb was appointed to the Plaintiffs Steering Committee and took an active role in *In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation* (MDL No. 2428).  Also, in *In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation* (MDL No. 2419) Mr. Golomb was appointed by the Plaintiffs' Executive Committee as Chair of the New Jersey Litigation Committee.

With respect to class action matters, Mr. Golomb has served on the Bank Overdraft MDL executive committee which, to date, has recovered more than $1.3 billion dollars for consumers charged excessive overdraft fees through the re-sequencing of their transactions. He has also served as co-lead in a number of class actions against most of the major national banks for the deceptive sales and marketing of their payment protection products. To date, through these class actions and representation of various states through their Attorneys General, bank and credit card companies have been made to pay over $200 million.

An active member of the bar, Mr. Golomb has served as president of the Philadelphia Trial Lawyers Association and currently sits on the Board of Governors of the Pennsylvania Association for Justice (formerly the Pennsylvania Trial Lawyers Association). He also served as an officer of the American Association for Justice for three years. As a governor for the American Association for Justice, Mr. Golomb was twice recognized with the Distinguished Service Award and is a three-time recipient of the Weidemann-Wysocki Association's Medal of

Honor. He was also awarded the Citation of Excellence by the American Association for Justice for his pro bono service in representing families victimized by the events of Sept. 11, 2001. Mr. Golomb was honored by the Pennsylvania Association for Justice with the Distinguished Service Award in 2010 for a career advocating for the rights of innocent victims and the lawyers who represent them. He has also served as a trustee of the Civil Justice Foundation, a fellow of the Roscoe Pound institute, as the American Association for Justice's delegate to the Civil Justice Round.

Additionally, Mr. Golomb served as an elected member of the Board of Governors of the Philadelphia Bar Association and as the chairman of that body's State Civil Committee. He served two terms as a hearing officer for the Pennsylvania Supreme Court Disciplinary Board, and was a member of the Judicial Selection and Retention Committee for five years. Mr. Golomb is a frequent lecturer and author who addresses trial advocacy subjects for the plaintiffs' and defense bar in areas such as expert witness preparation, evidence, cross-examination, ethics and subjects related to multi-district litigation.



Golomb & Honik, P.C. is a boutique Philadelphia law firm that is nationally recognized as having the intellect, persistence, experience, and resources to succeed in the most challenging cases. We serve clients nationwide in the following practice areas:

- Individual and Class Pharmaceutical Litigation
- Consumer and Securities Class Action Litigation
- Toxic and Environmental Mass Torts
- Toxic, Environmental, and Pharmaceutical Litigation
- Personal Injury

**Success In The Most Difficult Cases**

Over the last 25 years, Golomb & Honik has established a reputation for successfully representing those victimized by medical or other professional negligence, insurance or corporate wrongdoing, complex consumer and commercial transactions, significant highway and construction accidents and those injured by pharmaceutical drugs and medical devices. Many of our greatest successes have come from cases that other firms declined to handle because of the complexity or expense. With experience ranging from challenging environmental cases involving chemicals and other toxins, to the most difficult class action and medical cases, our team has the intellect, persistence, experience, and resources to produce unmatched results.

Other lawyers turn to Golomb & Honik with their most important cases.  Referrals are a pillar of our practice. Leading attorneys across the nation refer their complex personal injury, commercial, and toxic exposure cases to us—particularly those with a class action or multi-plaintiff component.

**A Focused Team**

At Golomb & Honik we take an entrepreneurial approach. Every representation undertaken by the firm receives the highest degree of attention, resources, and skill. Our boutique size means that we are selective in what we accept and that every client receives the hands-on attention of a senior partner.

The lawyers at Golomb & Honik are very active in professional and charitable organizations; our partners have earned leadership positions in regional and national trial bars and professional associations. We regularly instruct other professionals through continuing legal education, and undertake pro bono work ranging from the representation of 9/11 victims to assisting local underprivileged clients through Volunteers for the Indigent Program.

**Partner Profiles**

*Richard M. Golomb*

Mr. Golomb is managing shareholder and a founding partner of Golomb & Honik, P.C. He has more than twenty-five years experience representing the catastrophically injured as a result of medical negligence, defective products and pharmaceuticals, construction accidents and other personal injury claims. For the past fifteen years he has represented victims of environmental exposures and wronged consumers in class action litigation.

Early in his career, Mr. Golomb was an associate, and then shareholder, with a Philadelphia personal injury firm for eleven years before striking out on his own in 1996. Since 1998, Mr. Golomb has been a shareholder in Golomb & Honik, P.C. where he has served as lead or co-counsel in many cases which resulted in million and multi-million dollar verdicts and settlements for clients in individual and class action claims.

An active member of the bar, Mr. Golomb has served as President of the Philadelphia Trial Lawyers Association; currently sits on the Board of Governors of the Pennsylvania Trial Lawyers Association; and served as an officer of the American Association for Justice (formerly ATLA) for three years. As a governor for the American Association for Justice, Mr. Golomb has twice been recognized with the "Distinguished Service Award", and was awarded with the "Citation of Excellence" by the American Association for Justice for his pro bono service representing families victimized by the events of September 11, 2001. Mr. Golomb also serves as a trustee of the Civil Justice Foundation, fellow of the Roscoe Pound Institute, and serves as the American Association for Justice Delegate to the Civil Justice Round Table. Additionally, he served as an elected member of the Board of Governors of the Philadelphia Bar Association; as Chair of that body's State Civil Committee; has served two terms as a hearing officer for the Pennsylvania Supreme Court Disciplinary Board; and sat for four years on the Judicial Selection and Retention Committee.

Mr. Golomb is a frequent lecturer and author who addresses trial advocacy subjects for the plaintiffs' and defense bar in areas such as expert witness preparation, evidence, cross-examination and ethics.

*Ruben Honik*

Ruben Honik has nearly a quarter century of experience as a civil trial lawyer representing plaintiffs across a broad range of tort cases. A founding partner of Greitzer & Honik, Mr. Honik merged his practice with that of Richard Golomb (declared among the Top 10 lateral moves for the year by the Legal Intelligencer) in 1998 to form Golomb & Honik. While at the firm, and for many years before that, Mr. Honik has litigated cases involving defective products, medical and other professional negligence, civil rights violations, and vehicle and highway design defects. In the more recent past, Mr. Honik has developed a national practice representing victims of environmental harm, particularly those exposed to the toxin beryllium in residential and workplace settings.



In 2001, Mr. Honik was co-lead counsel in *Cullen v. Whitman Education Group*, a federal RICO class action certified in the Eastern District of Pennsylvania; it resulted in the largest settlement of its kind against a publicly traded national chain of trade schools. More recently, in *Whisnant, et al. v. General Chemical Corp.*, Mr. Honik represented thousands of chemically exposed oil refinery workers in connection with individual and class claims certified for settlement in Delaware County, Pennsylvania.

A past president of the Philadelphia Trial Lawyers' Association and the Pennsylvania Trial Lawyers' Association, Mr. Honik is a frequent lecturer. In addition, he was the long-time editor of The Verdict, the monthly newsletter of the Philadelphia Trial Lawyers' Association.

   *Kenneth J. Grunfeld*

Ken joined Golomb & Honik in January, 2010 after many years defending pharmaceutical manufacturers, national railroads, asbestos companies and corporate clients in consumer protection, products liability, insurance coverage and other complex commercial disputes while working at one of Philadelphia's largest and most prestigious defense firms.  He brings with him a unique perspective and a wealth of trial and appellate work experience in both state and federal courts in cases brought by injured people, shareholders, State Attorneys General and the U.S. Attorney General's Office. In one important personal injury case defending a major pharmaceutical company's blockbuster medication, he successfully argued a summary judgment motion before the esteemed Hon. Jack B. Weinstein in the U.S. District Court for the Eastern District of New York, securing an early victory for his client and eliminating the need for a trial.

Today his practice focuses on representing consumers and payors in class actions against pharmaceutical manufacturers, financial institutions like banks, credits card companies and insurers, consumer electronics companies and other national corporate defendants.

Ken received his undergraduate degree in 1996 from the University of Michigan and his J.D. in 1999 from the Villanova University School of Law.  He was a member of the Villanova Law Review and graduated *Order of the Coif*.

**Attorney Profiles**

   *Steven D. Resnick*

Mr. Resnick joined Golomb & Honik in January 2012.  Prior to joining the firm, Mr. Resnick was an associate at Kessler Topaz Meltzer & Check, LLP, where his practice was concentrated in securities fraud and consumer class action litigation, as well as mass tort litigation.



Previously, Mr. Resnick was an associate at a Philadelphia law firm where he focused on general civil litigation, medical malpractice, products liability and premises liability claims. Mr. Resnick has also worked as a senior consultant for a class action claims administration company, where he provided advice and counsel to dozens of class action law firms regarding the resolution of class action cases and settlement administration programs.

Mr. Resnick received his law degree from The Pennsylvania State University - Dickinson School of Law, and he earned his undergraduate degree *cum laude* from West Chester University. During law school, Mr. Resnick received the CALI Award for the highest grade point average in Immigration Law. Mr. Resnick is a member of the American Association for Justice and has served on the Board of Governors of the New Lawyers Division. Recently, Mr. Resnick was honored as a Rising Star by *Pennsylvania Super Lawyers* magazine.

### *Tammi Markowitz*

Ms. Markowitz has extensive experience handling complex litigation matters, particularly mass torts, product liability, and class action litigation for an array of corporate clients. Prior to joining Golomb & Honik in 2012, Ms. Markowitz was an associate at Hoyle, Fickler, Herschel & Mathes LLP where she played an integral role in litigating products liability matters, coordinated discovery efforts on behalf of large class action defendants, and briefed significant issues of law at the trial and appellate level. Earlier in her career Ms. Markowitz represented pharmaceutical defendants at one of the country's largest and most prestigious law firms.

Ms. Markowitz graduated *cum laude* from Temple University School of Law and received her undergraduate degree *summa cum laude* from the University of South Florida. She sits on the Hearing Committee for the Disciplinary Board of the Supreme Court of Pennsylvania and is a member of the Philadelphia and Pennsylvania Bar Associations.

### *David Stanoch*

David Stanoch focuses his practice on class actions and mass torts. He has extensive experience representing clients in complicated matters involving antitrust, consumer fraud, product liability, and white collar issues.

Mr. Stanoch has developed significant expertise in conducting all aspects of discovery and substantive briefing. He has taken lead roles in deposing corporate and individual witnesses in federal litigations, expert preparation and depositions, and negotiating with government investigators. He has extensively briefed discovery and merits issues from the pretrial stage forward, and has made substantial contributions towards posturing cases for favorable settlements.



Prior to Golomb & Honik, Mr. Stanoch clerked for a federal district court judge, the Hon. James F. McClure, Jr. (dec.) (M.D. Pa.).  He also practiced at Dechert LLP for nearly ten years.  While there, he advised Fortune 50, 100, and 200 clients on matters pertinent to complex and multi-district litigation, federal and state government investigations, and regulatory matters.  He has represented individuals and companies in many industries, including:  banking and consumer finance, biologics, chemicals, food & agriculture, forest products, healthcare, mortgages, pharmaceuticals, and steel.  Mr. Stanoch now brings his substantial industry and legal knowledge to bear on behalf of individuals who are fighting to vindicate there rights and interests.

David graduated *magna cum laude* from Temple University School of Law, and received his undergraduate degree *cum laude* and general university honors from La Salle University.  He is licensed to practice in Pennsylvania and New Jersey, and is admitted to practice before the U.S. Court of Appeals for the Third Circuit, the U.S. Court of Appeals for the Sixth Circuit, the U.S. District Court for the Eastern District of Pennsylvania, the U.S. District Court for the Middle District of Pennsylvania, and the U.S. District Court for the District of New Jersey.

### *Benjamin Isser*

Benjamin Isser is an associate with Golomb & Honik, P.C.  Prior to joining the firm, Mr. Isser served as a law clerk at Kline & Specter, P.C., where he worked extensively on mass tort litigation and personal injury claims.

Mr. Isser earned his law degree from Drexel University's Thomas R. Kline School of Law, where he served as an associate editor of the Drexel Law Review.  While on law review, Mr. Isser co-authored an article examining the current state of work product protection between attorneys and experts in light of the Pennsylvania Supreme Court's decision in *Barrick v. Holy Spirit Hospital*.  Mr. Isser also received the CALI award for highest grade point average in his first year torts class and was subsequently selected to serve as a Dean's Scholar, where he provided supplemental instruction to first year torts students.

Mr. Isser is currently licensed to practice law in Pennsylvania and New Jersey.

**Staff**

We have a dedicated and experienced support staff here at Golomb & Honik.  While our clients always get hands-on attention from attorneys, we understand that it takes a motivated and cohesive team to manage complex cases.  A number of our clerks, paralegals and administrative assistants have over 20 years of legal experience, specializing in the areas of class action, mass tort, and personal injury litigation.



**Representative Cases, Settlements, And Reported Decisions**

*Bank Overdraft Litigation*

Golomb & Honik has brought a number of class action complaints filed in state and federal courts against state and national banks that have wrongfully employed unfair and illegal business practices in charging overdraft fees to dramatically increase the likelihood customers using debit, ATM, or check cards will overdraw their accounts and be assessed fees.  We are also proud to serve as one of only a handful of firms to serve on the Plaintiffs' Executive Committee in *In Re: Checking Account Overdraft Litigation, MDL No. 2036*, a coordinated, nationwide effort to bring to these banks to justice on behalf of millions of Americans that have paid billions of dollars in overdraft fees to banks.  In the first overdraft case litigated, a judge ordered Wells Fargo to pay over $200 million to a class of injured California bank customers.  Bank of America alone has agreed to settle with a nationwide class of plaintiffs for $410 Million, and the total recovery for consumers in the MDL is now over $1 Billion.

*Federal Express Class Action*

Golomb & Honik sued Federal Express in the United States District Court for the Middle District of Florida on behalf of over 200 truckers over wrongfully-terminated hauling contracts.  Despite an express clause in the contracts, Federal Express failed to provide the truckers with proper notice of termination.

*In Re: Budeprion XL Marketing & Sales Litigation, MDL No. 2107*

Golomb & Honik brought a number of class action complaints filed in federal courts against the manufacturer and distributor of a generic version of a popular anti-depressant medication under the Consumer Protection Laws of California and other states.  We also served as liaison counsel in an MDL proceeding in the United States District Court for the Eastern District of Pennsylvania.  After United States District Judge Berle Schiller denied defendants' Motion to Dismiss based on the preemption defense, and after plaintiffs fully briefed class certification, the parties reached a favorable settlement on behalf of the proposed class.

*Credit Card Payment Protection*

Golomb & Honik led a collaboration of firms bringing dozens of class action complaints filed in federal courts across the country against a number of credit card companies regarding "Payment Protection plans", an add-on product of virtually no value, wrongfully marketed and sold to unsuspecting credit card holders.  Nationwide settlements were reached in actions against at least five credit card companies resulting in over $130 million in settlements for class members.  Golomb & Honik also served as Deputy Attorney General to a number of state's Attorneys General bringing actions on behalf of their citizens against credit card companies regarding Payment Protection and other protection-type products, resulting in settlements of more than $65 million.



*Barba, et al. v. Shire US, Inc., et al.*, No. 1:11-cv-21158 (S.D. Fla. 2011)

Golomb & Honik was co-counsel for a putative class of indirect purchaser plaintiffs who paid artificially inflated prices for Adderall XR® due to Shire's reverse-payment patent settlements that delayed rival drugmakers' selling cheaper generic versions of the drug. Related cases were also filed in the United States District Courts for the Southern District of Florida, for the Eastern District of Pennsylvania, for the District of New Jersey, and the District of Massachusetts. In late 2015, we successfully obtained a Magistrate Judge's recommendation that the case merits class certification. Following full exchanges of trial exhibit and witness lists, the parties reached a favorable global settlement worth approximately $14.75 million. The settlement was finally approved on November 9, 2016.

*Refund Anticipation Loan Litigation*

Golomb & Honik served as co-lead counsel in litigation against national tax preparation companies regarding their marketing and selling various illegal loan products secured by individual's tax refunds. These loans were sold in direct violation of a number of states' laws specifically enacted to regulate this type of practice and to protect the rights of taxpayers. The cases were settled for more than $11 million.

*Ford Windstar Class Action*

Golomb & Honik represents a national consumer class of owners of approximately one million Ford Windstars. Ford designed, developed and installed defective rear axles for these vehicles, using an inexpensive, stamped metal product. Consumers purchased a vehicle that would literally fall apart before its normal useful lifetime. Indeed, there exists a real possibility that these axles could break while these vehicles, marketed specifically to families, are operated at highway speed, causing serious injury or fatalities. After Golomb and Honik filed this lawsuit, Ford instigated a recall of these vehicles to fix or replace the defective rear axles.

*Mattel Lead Paint Class Action*

Golomb & Honik successfully represented plaintiffs in nationwide class action litigation against a toy manufacturer distributing dangerous products to consumers. We served on the Plaintiffs' Executive Committee and helped to negotiate a favorable settlement in plaintiffs' actions seeking medical monitoring.

*Suzuki GSX-R1000 Motorcycle Class Action Settlement*

Golomb & Honik negotiated a confidential settlement on behalf of a class of more than 26,000 members for damages allegedly caused from a design defect in the 2005 and 2006 models of the "sport bike" motorcycles. After this lawsuit was brought, Suzuki initiated a voluntary safety recall to enhance the frame strength and safety. The United



States District Court for the Southern District of Florida -- Miami Division approved the settlement.

### In Re Sterling Financial Corporation Securities Class Action

Golomb & Honik facilitated settlement of a multimillion dollar matter on behalf of thousands of investors who were injured as a result of alleged violations of federal law. In the summer of 2009, the United States District Court for the Eastern District of Pennsylvania created a $10.25 million settlement fund for the benefit of those investors who acquired stock from 2004 through 2007 at allegedly inflated prices.   It was estimated that $13.5 million shares were damaged as a result of fraud.

### Cullen, et al. v. Whitman Medical Corporation d/b/a Whitman Education Group, Inc., et al., 197 F.R.D. 136 (E.D. Pa. 2000)

Golomb & Honik represented current and former students who sued a national vocational school, alleging that they had been fraudulently misled as to the education they would receive. Golomb & Honik served as co-lead counsel in this groundbreaking consumer class action in which plaintiffs and absent national class members sought education from a publicly traded corporation in the field of diagnostic medical sonography. Golomb & Honik succeeded in demonstrating the chain of schools fraudulently misrepresented the nature of the ultrasound program and otherwise failed to provide the education represented. Students received federally guaranteed student loans but were largely unable to obtain promised jobs in their area of study. The school had no meaningful admissions criteria and often hired unqualified administrative and educational personnel. Field placements did not materialize, and students were unprepared to take qualifying exams. Students were stuck with loan repayments for which they received little or nothing in return. In approving certification of the class, and later the class settlement, the United States District Court said of counsel representing plaintiffs that "[t]he skill of each of these attorneys is reflected both in settlement and in the aggressive manner in which they pursued this litigation from start to finish." *Cullen*, 197 F.R.D. at 149. The Court noted in conclusion, "the highly skilled class counsel provided excellent representation both for named plaintiffs and absent class members." *Id*. The class settlement of $7.3 million was the largest common fund of its kind.

### Whisnant, et al. v. General Chemical Corp., et al., No. 99-12286, Court of Common Please of Delaware County, Pa.

Golomb & Honik successfully represented dozens of individual workers—and a class of more than 1,000 additional workers—in a case arising from ongoing occupational exposure to sulfur dioxide and sulfur trioxide in Delaware County, Pennsylvania. For more than a decade, workers at an oil processing facility were exposed to emissions of sulfur dioxide and sulfur trioxide gasses from a neighboring plant. Those emissions caused reactive airways disease and occupational asthma in many workers. In addition, many others were exposed and require medical monitoring to detect the potential onset of pulmonary disease. Following years of protracted litigation, and the bankruptcy of the



defendant polluter, Golomb & Honik achieved a multi-million dollar settlement against the bankrupt polluter, instead of the pennies on the dollar that many other creditors received.

*Debiec v. Cabot Corp., et al.*, 352 F.3d 117 (3d Cir. 2003)

Golomb & Honik represented the plaintiffs in this seminal decision on the discovery rule and the statute of limitations in latent disease cases involving beryllium exposure. Summary judgment was overturned resulting in multi-million dollar settlements for estates of victims, the first of numerous cases for this affected community of exposed persons.

*$1.5 Million for Estate of 9/11 Victim*

On September 11, 2001, a motivational speaker giving a speech in the World Trade Center was one of the thousands who lost his life after airplanes struck the twin towers in a terrorist attack. In response to that tragic day, the Association of Trial Lawyers of America created Trial Lawyers Care (TLC). TLC was a group of more than 2,000 lawyers from across the country who, on a pro bono basis, represented the victims of 9/11 and their families as they negotiated a complicated compensation system established by Congress. Golomb & Honik lawyers had the privilege of representing the motivational speaker's family in this process—compiling hundreds of pages of documents, completing the extensive forms necessary to obtain an "award" through the compensation system, hiring economic experts, and attending a hearing in New York. His family received more than $1.5 million.

**Additionally, Golomb & Honik has received more than 100 verdicts or settlements in excess of $1 million for their clients in individual cases.**



# **Exhibit 14**

RICHARD D. MEADOW, Esq.
THE LANIER LAW FIRM
Richard.Meadow@lanierlawfirm.com
6810 FM 1960 West
Houston, TX 77069
Ph:  (713) 659-5200
Fax: (713) 659-2204

Attorneys for Plaintiffs,

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** ) ) ) ) ) ) | **CASE NO: MDL No. 2738** <br><br> **APPLICATION FOR APPOINTMENT OF COUNSEL TO THE PLAINTIFFS' EXECUTIVE COMMITTEE** |
| This document relates to: ALL CASES ) ) ) ) ) ) ) ) ) | **Judge Freda L. Wolfson** |

NOW INTO COURT comes Richard D. Meadow, and The Lanier Law Firm, pursuant to Order No. _1_, and respectfully files the within application for appointment to the Plaintiffs' Executive  Committee.

Along with other counsel from The Lanier Law Firm, I have engaged in multiple and meaningful conversations with Counsel that are applying for lead counsel within this MDL, and I have participated in conferences concerning their

**Application For Appointment of Counsel**

anticipated proposed structure.  This application is therefore submitted in support of Co-leads' application.

I spearheaded the formation of  The Lanier Law Firm's New York office in 2004 (hereinafter, "LLF"), where I served as the firm's Managing Attorney for 11 years.  After successfully helping to lead and build LLF's New York office, and its Pharmaceutical and Medical Device Mass Torts practice, I moved to the Houston office of LLF in December of 2015 to oversee our firm's national mass tort practice and to work alongside our firm's founder, W. Mark Lanier.

This application will address the criteria that Courts have identified as relevant for consideration of applications for leadership appointments, and will conclude by addressing my extra-curricular work.

## Introduction

I proudly apply for consideration to be appointed to a leadership role within the Talc litigation with the same dedication and commitment that has made LLF one of the most successful and sought-after trial practices in the country.  For nearly twenty (20) years, LLF has provided sound legal representation to thousands of individuals, families and businesses in matters concerning serious personal injuries and complex commercial disputes.

### a. Overview of The Lanier Law Firm

In 1990, W. Mark Lanier founded LLF as a two-attorney firm in Houston, Texas.  Today, LLF is composed of forty-eight (48) attorneys, with more than one hundred (100) support staff, with  offices located in Los Angeles, Houston, and New York City.  Our primary goal has always been to provide the highest quality legal care in an honest, ethical, and professional manner.  That goal is shared throughout the entire LLF organization, and it has been a significant component to LLF's continued success.

LLF's New York and Los Angeles offices have played, and will continue to play, a critically important role in this litigation.  Although LLF was founded in

**Application For Appointment of Counsel**

Houston, we have invested tremendous resources and technology into creating a seamlessly-integrated nationwide infrastructure.  As a result, our New York office, which is in such close proximity to this Honorable Court, is at all times supported by the full, nationwide resources of the Lanier Law Firm.

I have played a significant role in many pharmaceutical, medical device and product liability MDL litigations, serving either on the PEC, PSC or in other leadership roles in:  IN RE: Bextra and Celebrex Liability Litigation, MDL 1699, N.D.CA.; IN RE: Zyprexa Litigation, MDL 1596, E.D.N.Y.; IN RE: Levaquin Litigation, MDL 1943, D.MN. (Co-Liaison); IN RE: Heparin Litigation, MDL 1657, N.D.OH.; IN RE: Zimmer NexGen Knee Implant Products Liability Litigation, MDL X, N.D. IL.; IN RE: Yasmin Litigation, MDL 2100; IN RE: Ethicon, Inc., Pelvic Repair System Products Liability Litigation, MDL 2327, S.D.W.V.;   IN RE: Boston Scientific Corp. Pelvic Repair System Products Liability Litigation, MDL 2326, S.D.W.V.; IN RE: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation, MDL 2325, S.D.W.V.

LLF has also maintained leadership roles in many State Court mass tort litigations, as well as has litigated substantial dockets in many other mass tort cases not listed.

In short, as further reflected throughout the remainder of this application, LLF spares no expense when it comes to hiring and staffing our cases with the legal talent required to provide our clients, our co-litigants, and the Courts, with top-notch work product.  Our work product in this litigation will reflect that philosophy.

**b. <u>Personal Experience and Honors</u>**

I am  licensed to practice law in New Jersey, New York, Pennsylvania, , and multiple federal courts throughout the nation including this Honorable Court.  I am a member in good standing of the New York and New Jersey and Pennsylvania

State bars and I have never been suspended, placed on inactive status or reprimanded.

I bring to the Talc litigation significant pre-trial and trial-related MDL mass tort experience that our firm has historically been involved in.  I have been honored to have been recognized by my peers and to have been named a New York SuperLawyer (Mass Torts) from 2009 through 2015.

**c.**     **LLF's Recent MDL Leadership, Mass Tort,**
          <u>**Product Liability & General Litigation Experience**</u>

LLF has substantial experience representing numerous clients in mass tort proceedings throughout the nation, including:

- *IN RE: Vioxx Marketing, Sales Practice and Products Liability Litigation*, MDL 1657, E.D. La.;
- *IN RE: Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, MDL 1699, N.D. Ca.;
- *IN RE: Zyprexa Products Liability Litigation*, MDL 1596, E.D.N.Y.;
- *IN RE: Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, E.D. Pa.;
- *IN RE: Neurontin Marketing, Sales Practices and Products Liability Litigation*, MDL 1629, D. Ma.;
- *IN RE: Levaquin Products Liability Litigation*, MDL 1943, D. Mn.;
- *IN RE: Heparin Products Liability Litigation*, MDL 1657, N.D. Oh.;
- *IN RE: Digitek Products Liability Litigation*, MDL 1968, S.D.W.V.;
- *IN RE: Fosamax Products Liability Litigation*, MDL 1789, S.D.N.Y.;
- *IN RE: Chantix (Varenicline) Products Liability Litigation*, MDL 2092, N.D. Al.;
- *IN RE: Trasylol Products Liability Litigation*, MDL 1928, S.D. Fl.;
- *IN RE: Viagra Products Liability Litigtion*, MDL 1724, D.MN.; and

**Application For Appointment of Counsel**

- *IN RE: Gadolinium Contrast Dyes Products Liability Litigation*, MDL 1909, N.D. Oh.

I have also been involved in State Court litigation concerning the drugs Vioxx® (Atlantic County, NJ), Bextra®/Celebrex® (New York County, NY), Avandia® (Philadelpia County, PA), Neurontin® (New York County, NY), Levaquin® (Atlantic County, NJ), Chantix® (pending in New York State), Ortho Evra® (Middlesex County, NJ), and Yasmin® (Bergen County, NJ).

From a historical perspective, LLF began its prominence in the field of mass tort pharmaceutical litigation when our firm was the lead trial counsel responsible for trying the liability case against Merck in three of the five trials in which juries found for plaintiffs. Indeed, LLF was the first law firm in the nation to successfully try a case against Merck concerning the drug Vioxx®. The result was a record-setting $253 Million verdict in favor of the Plaintiff. Thereafter, LLF successfully tried the liability portion of two additional Vioxx® cases in the State of New Jersey, which further paved the way for a $4.85 Billion nationwide personal injury settlement. Merck won defense verdicts in eleven of the thirteen trials that LLF did not try. Had Merck continued to win every trial, the largest single national settlement in the history of mass tort litigation would either not exist, or it would undoubtedly have been far less favorable to plaintiffs.

More recently, LLF achieved a record $9.2 billion verdict in the Actos MDL litigation. W. Mark Lanier put on every liability witness throughout that successful trial. Although that verdict was substantially reduced, it played a significant role in causing the defendant to arrive at a national settlement program to resolve all then-existing and qualifying cases within the MDL, and encompassing all state court litigation. LLF played a lead role in the creation and negotiation of the $4.3 billion national settlement program. Further, throughout the past two years, LLF has been leading the Pinnacle Hip Implant MDL in the Northern District of Texas, where W. Mark Lanier is currently in the midst of our

nation's third MDL trial.  The last trial ended with a plaintiffs' verdict in the amount of $502 million.  W. Mark  Lanier put on every liability witness at that successful trial.

It is now LLF's intention to bring the very same level of commitment to this MDL, so that all plaintiffs before this MDL that allege to have gotten ovarian cancer as a result of talc use, can one day receive recompense for their injuries.

## I.    LLF Has Demonstrated Knowledge and Experience<br>Prosecuting Complex  Litigation, Including Class Actions

LLF's involvement in numerous complex and massive MDL litigations underscores our dedication, acumen, and willingness to participate in leading the prospectively complex Talc litigation in all respects.

The resources and aptitude that LLF brings to litigation are significant.  In 2002 – years before Merck pulled Vioxx® from the market, and years before most other firms in the country ever began working on Vioxx® litigation – LLF began prosecuting Vioxx-related personal injury actions.  LLF continued its leadership role by trying the first Vioxx® case, *Ernst v. Merck & Co., Inc.*, resulting in a $253 million verdict.  The *Ernst* case took a year to prepare (including multiple mock trials done in-house, meaning no expenses for a jury consulting firm were ever charged); it took eight weeks to try; it cost several million dollars; and, it provided a road map with arguments and testimony used by nearly every firm that eventually tried a Vioxx® case.  The momentum and press attention against Merck as a result of LLF's success was substantial.  Since that victory, LLF has invested several million dollars spearheading various other MDL litigations, including, specifically, the Actos and Pinnacle Hip Implant MDL litigations.

In addition to our single-plaintiff and multi-plaintiff complex commercial litigations, during the past years, LLF has gained significant experience in traditional class action work.

**Application For Appointment of Counsel**

- 6 -

## II.     LLF Is Willing and Able to Commit Significant Time to the Talc Litigation

Again, the best example of LLF's ability and willingness to devote significant time and personnel to the Talc Litigation is exemplified by our past conduct, rather than by words.  In addition to what has been addressed concerning our role in the Vioxx® litigation, the Actos litigation, and the DePuy Pinnacle litigation, it is also important to note that LLF incurred significant time, labor and financial risk prosecuting all of the aforementioned cases.  Throughout that time, LLF invested tens of thousands of hours and willingly placed many millions of dollars at risk to fund costly pre-trial discovery and numerous trials.  LLF's significant commitment of time included: (a) prosecuting numerous trials with national implications; (b) engaging in extensive discovery, including the review and analysis of countless pages of discovery and the creation of trial exhibit lists which served as an outline for future trials; (c) retaining and collaborating with significant medical experts; (d) taking key depositions of the defendants' most senior employees who have historically been involved in the production, marketing and labeling associated with the subject products; (e) working with top experts in the relevant medical, scientific and engineering fields, who want to work with our firm; (f) briefing countless motion oppositions; and (g) corresponding and meeting with counsel and with the Court.

LLF is committed to this litigation.  We have filed hundreds of cases in the State of Missouri 22nd Circuit Court, City of St. Louis.  LLF is anticipated to try its first case in Missouri on July 10, 2017.

## III.     LLF Is Able to Work Cooperatively With Others

I have consistently proven my ability, and the general ability of all attorneys at LLF, to work cooperatively and obtain consensus.  This is evidenced by my repeated appointments to key leadership positions within various mass tort MDL litigation and/or the liaison leadership roles that I have performed in state-wide

coordinated litigation. Additionally, our firm's ability to work well with others within leadership structures is evidenced by the numerous significant settlements and jury verdicts that we have achieved within cases that LLF has co-counseled with many other attorneys across the United States and/or for which LLF has led trials within MDL litigation, or coordinated state litigation trial efforts.

**IV.   LLF Is Willing and Able to Commit Significant Personnel and Funding to Prosecute the Litigation In a Timely Manner**

LLF is willing and able to commit significant personnel and funding to help lead the prosecution of the Talc litigation against Defendants.  Here again, our ability to commit significant resources to this litigation is best exemplified by what what our firm has done in the past, rather than what I will say my firm will do.

**V.   LLF's Fee Proposals, Rates & Common Fund Framework**

Ultimately, the consumers and the injured parties must receive the lion's share of any ultimate recovery in this litigation and the lawyers should be awarded reasonable fees based upon their relative contributions.   If appointed to a leadership position within the Talc litigation, LLF is committed to arrive at a fair fee application, including, but not limited to, working with the Court to address a reasonable common benefit fee structure that the Court may seek to impose.

**Application For Appointment of Counsel**

- 8 -

WHEREFORE, I respectfully request appointment as Counsel in MDL No. 2738.


Dated:  November 15, 2016

                                        THE LANIER LAW FIRM, PC


                                        */s/ Richard D. Meadow*
                                        RICHARD D. MEADOW, Esq.
                                        THE LANIER LAW FIRM
                                        Richard.Meadow@lanierlawfirm.com
                                        6810 FM 1960 West
                                        Houston, TX 77069
                                        Ph:  (713) 659-5200
                                        Fax: (713) 659-2204

**Application For Appointment of Counsel**

# **Exhibit 15**

**HUNTER J. SHKOLNIK APPLICATION FOR APPOINTMENT TO THE PLAINTIFFS'
EXECUTIVE COMMITTEE IN RE: JOHNSON & JOHNSON TALCUM POWDER
PRODUCTS MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION MDL No. 2738**

Our office represents 1500 women who have been diagnosed with ovarian cancer and were

users of products containing talc manufactured and distributed by the Defendants. I submit this

application in support of the leadership structure and slate proposed by Michelle A. Parfitt and

Leigh O'Dell to lead this complex mass tort. As if often the situation in "mega" mass tort cases

such as the talc litigation many highly experienced and well financed law firms seek leadership and

often this is a battle of wills. However, the later is not the case here. Ms. Parfitt and O'Dell have

adeptly put together a group of otherwise competing firms into a uniform structure which will allow

the Talc MDL to be staffed adequately and financed appropriately to compete on an equal footing

with the teams of lawyers put forth by the various defendants. The Co-Lead Counsel with a smaller

Executive Committee and a larger PSC structure has been used successfully in many Mega MDL's.

Most recently Judge Doherty in *In Re: Actos Product Liability Litigation MDL: 2299* appointed

the exact type of structure suggested here and was able to bring the MDL to conclusion in less than

3 years. The large leadership structure provided the resources needed to move the case along

aggressively against two major pharmaceutical companies.

Currently, I am acting as the coordinating counsel in the Plavix Litigation pending before this

Court, where my Partner Shayna Sacks is Liaison Counsel, (*In Re: Plavix Marketing, Sales

Practices, and Products Liability Litigation MDL No. 2418*), as well as, in the Courts of the states of

New York, Delaware & California. As correctly pointed out by the Court at the November 17, 2016

Talc CMC the Plavix leadership is comprised of a very small group of lawyers and no Plaintiff

Steering Committee. The Court questioned the need of anything more than that here. As a member

of the Plavix leadership team and the partner of the Court appointed Liaison Counsel I am able to explain how this litigation is quite different. First and foremost, there is simple no other firms with cases to work on the Plavix litigation than the small group before the court. As was pointed out to the JPML in Plavix, the small group of lawyers were all working together from the inception of the litigation and were a *de facto* leadership group ie I was leading the California JCCP cases; Ms. Sacks and Mr. Salim were leading the MDL proceeding; the Parker Waichman firm was leading the New York cases and I was overseeing the Cook County and Delaware State Court litigations; and the State Attorney General cases were moving on their own track but coordinating with us for the most part. Here the larger proposed structure brings the similar approach but on a grander scale thereby tying those disparate groups together under the control of the MDL court and ensuring coordination and cooperation.

I am a founding Partner at Napoli Shkolnik PLLC (NS), a law firm with over 200 employees, 55 lawyers, and offices in New York, New Jersey, Pennsylvania, Illinois, California, Delaware, Texas, and Florida.  We are recognized nationally for handling complex product liability and other significant class action and mass tort actions. NS is heavily involved in litigations requiring client representation all over the country, for drug, product and other toxic exposures; as well as consumer class actions. I personally have presented and published extensively in such areas as class actions, ethics in class actions, toxic tort, trial practice, drug and medical device litigation, medical malpractice, automobile, substantial truck product liability, expert witness preparation and *Daubert* hearings.

I have had the privilege of serving as court-appointed Co-Lead Counsel, Liaison Counsel, National Settlement Counsel and as a member of the Plaintiffs' Steering and Executive Committees in many complex multidistrict proceedings in the United States, including those described in

greater detail in the list of cases attached as Exhibit "A".  From these experiences I have learned

how important it is to have strong leadership, supported by a diverse steering committee, with

highly skilled lawyers with the knowledge and skill set to address the demands and challenges

presented in massive litigations like the present action. Moreover, I understand the importance of

having, not only first-rate legal minds, as well as seasoned and respected leaders, but top notch

lawyers who will accept any assignment.

It would be my privilege to apply my experience to the plaintiffs' common benefit here, and, if

appointed, I will commit my personal and firm's time and resources to so serve.  I would welcome

the opportunity to serve as a member of the Plaintiffs' Executive Committee.

As Exhibit "A" shows, I personally am, or have been, a court appointed member of the

Plaintiffs Steering Committee, Liaison and/or a Lead Counsel in various drug product liability, class

action and other mass tort litigation areas.  I have been appointed by state and federal courts

throughout the country to serve in leadership capacities, including lead counsel, settlement counsel

and executive committee member.  This includes over 5 high-profile MDLs. I have been appointed

to MDL trial teams, MDL negotiating teams and participated in negotiating over $2 billion in MDL-

related settlements. I have also been appointed to a variety of MDL Federal and MDL State

Coordination Committees. These appointments and opportunities have provided me with the

knowledge and ability to be a useful member of the Plaintiffs' Steering Committee in this litigation.

In the last two and half years I have been appointed Lead or Co-Class Counsel in 4 diverse

class actions: (1) *In Re: Daily Fantasy Sports Litigation*, a consumer class action for damages

arising out of improper or illegal conduct by the nation's two largest operators of online daily

fantasy sports contests; (2) *Sterling, et al. v. Stratfor Enterprises, LLC, et al.*, a consumer class

action for damages arising from Defendants' failure to secure its computer storage systems to

protect Defendant Stratfor's users', subscribers', and those persons and entities that provided Defendant Stratfor with personal and financial information; (3) *Hernandez-Ortiz, et al. v. 2 Gold, L.L.C., et al.*, a class action alleging that Defendants caused Plaintiffs damages due to Defendants' failure to exercise due care to adequately secure Premises before Hurricane Sandy; (4) *Carolyn Roberts, Alexander Wood and Mayer & Lee, P.C. v. Ocean Prime, LLC*, a class action alleging that Defendants caused Plaintiffs damages due to Defendants' failure to exercise due care to adequately secure, Premises before Hurricane Sandy; *In Re: Taxotere (Docetaxel) Products Liability Litigation*, appointed to Plaintiffs Steering Committee a product liability mass tort alleging that cancer victims that used the defendants products were left with permanent hair loss;  *In Re: Edgewell Consumer Products Litigation,* appointed interim co-lead counsel in a consumer class action arising from a suntan lotion manufacturer falsely labeling the SPF factor its products.

I have a proven track record of working well with others in the many Class and Mass Torts Actions where I have been appointed as either Lead Counsel and/or to the Plaintiffs Steering Committee, and in many cases various sub-committees. As the extensive list of cases set forth in Exhibit "A" reveals, I have served in every level of the MDL structure, from my early days doing document review, to leading discovery committees, science committees, deposition teams, bellwether trial selection teams, trial teams, as well as serving as national settlement counsel. This vast experience of working within complex MDL structures and very different leaderships allows me to bring a wealth of knowledge that is needed in this litigation. I am further willing to commit the necessary resources to assist Lead Counsel in pursuing this litigation at an expeditious pace. I believe that without exception, I have succeeded in maintaining the highest standards of decorum, cooperation and collegiality among plaintiff and defense counsels alike.  Should the Court so desire, I would be pleased to provide a list of co-counsel and defense counsels who will vouch for my

professionalism and ability. I represent to the Court that my firm possesses ample resources, in terms of personnel and funding, to prosecute this case in a timely and efficient manner.

Over the course of 30 years of practice I have the opportunity to teach, lecture and write on various topics related trial practice, class actions, mass tort, ethics, product liability, complex litigation, etc. These important opportunities have helped me develop a very pragmatic outlook on complex litigation and the need to effectively, economically and expeditiously litigate and resolve very complex matters. I believe these characteristics will be important in bringing this case to resolution.

Respectfully Submitted,

/s/ *Hunter Shkolnik*
Hunter J. Shkolnik
**NAPOLI SHKOLNIK PLLC**
360 Lexington Avenue, 11th Floor
New York, New York 10017
(212) 397-1000
hunter@napolilaw.com

## HUNTER J. SHKOLNIK

## COURT APPOINTED  LEADERSHIP
## POSITIONS

- *In Re: New York Diet Drug/Phen Fen Litigation*; Plaintiffs Steering Committee and as Co-Lead counsel (Justice Helen Freedman) (retired) (t: 212-751-2700);

- *In Re: New York Sulzer Inter Op Hip and Knee Implant Litigation;* Plaintiffs Steering Committee and as Lead counsel; Plaintiffs' Steering Committee Member, Trial, Expert, Discovery Sub Committees and Co-Lead Trial Team (Justice Helen Freedman) (retired) (t: 212-751-2700);

- MDL No.05-1708 *In Re: Guidant Corp. Implantable Defibrillators Products Liability Litigation;* Plaintiffs Steering Committee Member- Co-Lead Trial Team, Strategic Planning, Expert and Discovery Subcommittees (Honorable Donovan Frank) (t: 651-848-1290);

- MDL No. 05-1726 *In Re: Medtronic INc.;* Plaintiffs Steering Committee, (Honorable James M. Rosenbaum) (retired) (t: 612-332-8225);

- MDL No. 1785 *In Re: Bausch & Lomb, Inc., Contact Lens Solution Product Liability Litigation; Appointed* State Federal Liaison Counsel, (Honorable David C. Norton) (t: 843-579-1450);

- *In Re: New York Consolidated Bausch & Lomb Contact Lens Solution Litigation.* (Justice Helen Freedman) (retired) (t: 212-751-2700)*;* Plaintiff  Steering Committee and Lead trial attorney for the first scheduled bellwether trials; Plaintiffs Steering Committee; State Federal Liaison Counsel;

- *In Re: Medtronic, Inc., Sprint Fide/is Leads Product Liability Litigation,* MDL No.

08-1905 (Dist. Minn.); Plaintiffs Steering Committee (Honorable Richard H. Kyle) (651-848-1162);

- *In Re: PepsiCo. Inc., Bottled Water Marketing  and Sales Practices Litigation*, MDL No. 08-1903); Plaintiffs Steering Committee (Honorable Cathy Seibel) (t: 914-390-4077);

- *In Re: Pom Wonderful Sales and Marketing Practices Litigation*, MDL No. 10-2199; Plaintiffs Liaison Committee for Personal Injury and Wrongful Death (Honorable Dean D. Pregerson) (t: 213-894-3913);

- *In re: Toyota Motor Corp.Unintended Acceleration Marketing,Sales Practices, and Products Liability Litigation, MDL 2151 (Plaintiffs Steering Committee)* (Honorable James V. Selna) (t: 714-338-2848)

- *In Re: Kaba Simplex Push Button Lock Sales and Marketing Litigation*, MDL No. 2220;(EDOH); Co-Lead Counsel (Honorable Donald C. Nugent) (t: 216-357-7160);

- *In Re: Fleet Oral Sodium Phosphate Solutions Litigation*, MDL No. 2066 (NDOH); Co-Lead Counsel (Honorable Dan A. Polster) (t: 216-357-7190);

-  *In Re: Nuvaring  Products  Liability Litigation*, MDL NO. 1964 (MOED); Co-Lead Counsel  (Honorable Rodney W. Sippel) (t: 314-244-7430);

- *In Re: Zimmer NexGen Knee Implant Products Liability  Litigation:* MDL No. - 2272 (NDill); Plaintiff Steering Committee (Honorable Rebecca R. Pallmeyer) (t: 312-435-5636)

- *New Jersey Nuvaring Products Liability  Consolidated Mass Tort Litigation;* Liaison Counsel (Honorable Brian R. Martinotti) (t: 210-527-2385);

- *New Jersey Metaclopromide  (Reglan) Product* Liability Consolidated   Mass  Tort

*Litigation;* Plaintiffs Steering Committee (Honorable Carol Higbee) (t: 609-343-2190);

- MDL- 2244   *In Re: DePuy Orthopaedics. lnc., Pinnacle Hip Implant Products Liability Litigation;* Plaintiff Steering Committee (Honorable James Edgar Kinkeade) (t: 214-753-2720);

- MDL No.2319,   *In Re: Bayer Healthcare LLC and Merial Limited Flea Control Marketing and Sales Practices Litigation* (Nd. Ill) (Honorable Dan A. Polster)  (t: 216-357-7190);

- *In re: Incretin Mimetics Product Liability Litigation* MDL  No.1331;(Co-Lead Counsel)  (Honorable Maurice M. Paul) (t: 352-380-2415);

- *In Re: Nuvaring Products Liability Litigation*, MDL NO. 1964 (MOED) (National Settlement Counsel) (Honorable Rodney Sippel) (t: t: 314-244-7430);

- *In Re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation, MDL No. 2385 (National Settlement Committee)* (Honorable David R. Herndon) (t: 618-482-9077)

- *Sterling, et al. v. Stratfor Enterprises, LLC, et al.*, Eastern District of New York 2:12-cv-00297; Lead Class Counsel; (Honorable Judge Denis R. Hurley) (t: 631-712-5650);

- *Hernandez-Ortiz, et al. v. 2 Gold, L.L.C., et al.*, Supreme Court of the State of New York, Index No. 158155/2012; Lead Class Counsel; (Honorable Ellen M. Coin) (t: 646-386-3875);

- *Roberts, et al. v. Ocean Prime, LLC, et al.*, Supreme Court of the State of New York, Index. No. 150612/2013; Lead Class Counsel; (Honorable Manuel J. Mendez) (t: 646-386-5705);

- *In Re: American Medical Systems, Inc., Pelvic Repair Systems Products* MDL No. 2325, *Liability Litigation*; Plaintiffs Steering Committee; (Honorable Joseph Goodwin)

- *In Re: Daily Fantasy Sports Litigation* MDL No. 2677, Co-Lead Counsel; (Honorable George A.  O'Toole )

- *In Re: Edgewell Personal Care Products Litigation* Case No. 16 Civ. 5036 Interim Co-

Lead Counsel  (EDNY Roanna Mann USMJ)

- *In e Taxotere (Docetaxel) Products Liability Litigation* MDL No. 2740, Plaintiff Steering Committee ( Kurt D. Englehart)

# Exhibit 16

**Laurence S. Berman, Esquire**
LEVIN FISHBEIN SEDRAN & BERMAN
**510 Walnut St., Suite 500**
**Philadelphia, PA  19106**

Mr. Berman is a Philadelphia native who attended Central High School and then Temple University for both his undergraduate and law degrees.  He obtained his undergraduate degree (B.B.A.) at the Fox School of Business, graduating magna cum laude in 1974 and as a member of Beta Gamma Sigma National Honor Society, and obtained his juris doctor degree from Temple University Law School in 1977. He was admitted to the bar in 1977 and is admitted to practice before the Pennsylvania state courts, the U.S. District Courts for the Eastern and Middle Districts of Pennsylvania and the U.S. Courts of Appeals for the Third, Fourth and Seventh Circuits.

Following his graduation from law school, he was a judicial clerk for two years with the Honorable Charles R. Weiner, of the United States District Court for the Eastern District of Pennsylvania until 1980, when he began a private practice of law.

In 1982, Mr. Berman joined the law firm of Levin & Fishbein as an associate and became a partner in 1985 when the firm name was changed to Levin, Fishbein, Sedran & Berman ("LFSB"). Mr. Berman has had extensive experience in litigating and managing complex litigation.

In the early 1980's he became a member of the discovery, law and trial committees of *In re: Asbestos School Litigation*, Master File No. 83-0268 (E.D. Pa.). As a member of those committees, he drafted discovery and legal briefs that lead to the successful resolution of the case on behalf of a nationwide class of schools seeking recovery of damages for the costs and expenses they were required to expend to assess the presence of asbestos in school buildings and to remediate under newly enacted rules and regulations of the Environmental Protection Agency, promulgated in the 1970's. In connection with that litigation, he was one of the architects of approaching class certification issues for a nationwide class by the use of a "50" state analysis of the law, in order to demonstrate the similarity of laws and therefore the manageability of a nationwide class action. The "50" state approach has been followed in other cases.

During the early stages of his career, he litigated numerous environmental class/mass tort cases to successful conclusions.  An example would be his litigating a lead contamination case for the residents of a community in the Port Richmond area of Philadelphia, where he drafted the legal briefs and presented the oral argument to obtain class certification of a property damage and medical monitoring class against NL Industries and Anzon. That litigation produced a multi-million-dollar recovery for the residents in the class area. Another example would be his representation of homeowners located near Ashland, Kentucky for environmental pollution damage. This case involved representing approximately 700 individual clients for personal injury and medical monitoring relief which also resulted in a multi-million-dollar recovery for his clients. There are many other examples of similar cases that he litigated in his early stages of his career for victims of mass environmental torts that produced multi-million dollar recoveries.

Beginning in the 1990's Mr. Berman began his representation of victims of the Three Mile Island accident. The firm represented approximately 2,000 plaintiffs in that matter, and Mr. Berman was responsible for the legal briefing and experts in the case, along with addressing *Daubert* issues. When that case was commenced, *Daubert* had not yet been decided and the governing standard of law was *Frye*. However, during the course of the Three Mile Island case, *Daubert* was decided and Mr. Berman was called upon by the presiding Court (Middle District of Pennsylvania) to litigate one of the first *Daubert* hearings conducted. The Three Mile Island *Daubert* hearings involved approximately ten full weeks of in court live hearings, and thousands of pages of legal briefing. Ultimately the trial court determined that the expert witnesses offered by the plaintiffs did not meet the *Daubert* requirements, and an appeal was taken to the Third Circuit Court of Appeals, where Mr. Berman both briefed and argued the issues. The Third Circuit affirmed parts of the decision and remanded for further proceedings by the trial court.

In 1989, Mr. Berman began his representation of approximately 1,000 plaintiffs who suffered damages as a result of the Exxon Valdez oil spill. In that role, he managed the claims of each of his firm's clients and worked in the development of their expert evidence and claim materials. As a subset of that litigation, he handled the claims of the Native Opt-Out Settlement Class.

While working on the Exxon Valdez matter, and as his involvement in the Three Mile Island was concluding, Mr. Berman began his role in litigating *In re Diet Drugs*, MDL 1203 (E.D. Pa.). The *Diet Drugs* case was commenced in 1997 and is still active to this date. Mr. Berman's firm was appointed as co-lead counsel, co-class counsel and liaison counsel. The massive size of the *Diet Drugs* case required the commitment of three of the named partners to the case, Arnold Levin, Michael Fishbein and Mr. Berman, as well as a substantial commitment by partner Fred Longer. While Messrs. Levin and Fishbein were formally named as co-class counsel to the case, Mr. Berman had a *de facto* role as co-class counsel and co-lead counsel for the case. Mr. Berman briefed many legal issues, argued issues in court, participated in discovery, helped negotiate the settlement(s) and managed the oversight of the AHP Settlement Trust that was created to oversee the settlement and the Seventh Amendment Fund Administrator that was created to oversee the Seventh Amendment aspect of the settlement. He also managed the claims of the firm's individual clients.

Although the *Diet Drug* case remains active today, and still occupies some of Mr. Berman's time, over the recent years he became active in various other pharmaceutical cases. In particular, beginning in about 2010, he became active in the MDL case, *In re Yaz/Yasmin/Ocella*, Southern District of Illinois, where he was appointed as a member of the discovery and legal briefing committees. In addition, his partner Michael M. Weinkowitz was appointed as Co-Liaison Counsel in the parallel state court litigation pending in the Court of Common Pleas of Philadelphia and served in the parallel action on the discovery and science committees and was appointed to the Plaintiffs Negotiating Committee by the Honorable Arnold New, Philadelphia Court of Common Please. Mr. Berman worked with his partner in these roles and the firm's administrative staff was essential as liaison counsel in the Yaz litigation.

Mr. Berman's pharmaceutical case experience includes litigating numerous other pharmaceutical cases. He is currently Plaintiffs' Co-Lead and Liaison Counsel for the *In Re*

Tylenol MDL case, (MDL 2436) pending in the Eastern District of Pennsylvania and is a member of the executive committee of the *In Re* Granuflo MDL case (MDL2428) pending in the District of Massachusetts.

With regard to the *Tylenol* case, as Plaintiffs' Co-Lead and Liaison counsel, he has appeared in Court for the Plaintiffs at virtually all of the monthly status conferences, drafted numerous briefs, engaged in discovery, drafted numerous case management orders that were entered by the Court, argued motions and otherwise managed the case on behalf of the Plaintiffs.

With regard to the *Granuflo* case, Mr. Berman's partner Arnold Levin was formally appointed to that case's Executive Committee for the Plaintiffs. Mr. Berman was appointed as a co-chair of the law and briefing committee. However, he became a de facto member of the executive committee for the firm. In his role on the law and briefing committee, he drafted numerous briefs for the case, including Daubert briefs, drafted various case management orders that were entered by the Court, and assisted in the negotiation of the global settlement including the drafting of the settlement documents and the allocation plan.

In the *In re Fosamax litigation,* MDL 2243 (D.N.J.), Mr. Berman spearheaded the plaintiff's position relating to privilege log issues as well as pre-emption and *in limine* issues raised in the bellwether case.

Mr. Berman has also been a lecturer about mass tort matters. He has lectured about the Tylenol case at several seminars and is a member of the American Association of Justice (AAJ) litigation group for the case. Aside from having spoken about Tylenol at various seminars, Mr. Berman has been a frequent speaker for the Pennsylvania Bar Institute, Mealy's Publications and Harris Martin. His lectures have been accredited for providing CLE credit to the attendees. Mr. Berman has an A.V. Peer Review rating by Martindale-Hubbell, and is an AAJ National College of Advocacy Advocate. He is also a member of The National Trial Lawyers, as well as a member of the American, Pennsylvania and Philadelphia Bar Associations and has been recognized as a Super Lawyer. His published works include "Class Actions in State and Federal Courts," Pennsylvania Bar Institute (Continuing Legal Education), November, 1997; "New Pennsylvania Rule of Civil Procedure 207.1," Pennsylvania Bar Institute (Continuing Legal Education), November, 2001, and membership on the Board of Editors, "Fen-Phen Litigation Strategist," Leader Publications, (1998).

The firm has been particularly active in litigating cases in the Third Circuit, being based in the Philadelphia area. Other cases based in the Third Circuit with which the firm has been involved include: the "NFL Concussion Litigation"; the "Zoloft" litigation; and the "Avandia" Litigation.

The firm, also has been involved in numerous pharmaceutical cases pending outside of the Third Circuit where the firm has had a leadership role, such as in: *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D.La.); *In re Pradaxa Products Liability* Litigation, MDL 2385 (S. D. Ill.); *In re Mirena Products Liability Litigation*, MDL No. 2434 (S.D.N.Y.) and *In re Xarelto Products Liability Litigation,* MDL 2592 (E. D. La.).

The firm is listed in the Martindale-Hubbell Bar Register of Pre-Eminent Lawyers, which lists only those select law practices and law firms that have earned the AV Rating in the Martindale-Hubbell Law Directory by being designated by their colleagues as preeminent in their field. The firm prides itself on its good name and reputation among other attorneys, judges and the clients it serves, demonstrated by its many national referrals of cases from all over the United States.

The firm was recently named as one of the U.S. News Best Law Firms --ranked National Tier 1 for Plaintiffs' Mass Torts and Class Actions; Philadelphia Tier 1 for Plaintiffs' Mass Torts, Class Actions and Personal Injury; and Philadelphia Tier 3 for Antitrust Law. The firm is rated Tier 2 in "Mass Tort and Class Action: Plaintiff Representation - Pharmaceuticals and Medical Devices" by *The Legal 500*.

Mr. Berman's firm, LFSB and Mr. Berman himself, are Martindale-Hubbell A.V. peer-rated. This Philadelphia-based law firm has an extraordinary track record of litigating complex cases and is well-known in the legal community.

For more than 30 years, the firm has successfully prosecuted hundreds of cases involving defective pharmaceutical and over-the-counter drugs and medical devices, and has led in mass tort and environmental liability exposure litigations. The firm is prepared to devote its considerable resources and experiences to the successful litigation of each and any litigation with which it becomes involved and has never shirked responsibility.

# LEVIN, FISHBEIN, SEDRAN & BERMAN

## FIRM BIOGRAPHY

The law firm of Levin, Fishbein, Sedran & Berman (formerly known as Levin & Fishbein) was established on August 17, 1981.  Earlier, the founding partners of Levin, Fishbein, Sedran & Berman, Messrs. Arnold Levin and Michael D. Fishbein, were with the law firm of Adler, Barish, Levin & Creskoff, a Philadelphia firm specializing in litigation.  Arnold Levin was a senior partner in that firm and Michael D. Fishbein was an associate.  Laurence S. Berman was also an associate in that firm.

The curricula vitae of the attorneys are as follows:

(a)      **ARNOLD LEVIN**, a member of the firm, graduated from Temple University, B.S., in 1961, with Honors and Temple Law School, LLB, in 1964.  He was Articles Editor of the Temple Law Quarterly.  He served as a Captain in the United States Army (MPC).  He is a member of the Philadelphia, Pennsylvania, American and International Bar Associations.  He is a member of the Philadelphia Trial Lawyers Association, Pennsylvania Trial Lawyers Association and the Association of Trial Lawyers of America.  He is admitted to the Supreme Court of Pennsylvania, United States District Court for the Eastern District of Pennsylvania, United States District Court for the Middle District of Pennsylvania, the Third, Fourth, Fifth, Sixth, Seventh, Tenth and Eleventh Circuit Courts of Appeals and the United States Supreme Court.  He has appeared pro hac vice in various federal and state courts throughout the United States.  He has lectured on class actions, environmental, antitrust and tort litigation for the Pennsylvania Bar Institute, the Philadelphia Trial Lawyers Association, the Pennsylvania Trial Lawyers Association, The Association of Trial Lawyers of America, The Belli Seminars, the Philadelphia Bar Association, American Bar Association, the New York Law Journal Press, and the ABA-ALI London Presentations.

Mr. Levin is a past Chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America, and is co-chairman of the Antitrust Section of the Pennsylvania Trial Lawyers Association.  He is a member of the Pennsylvania Trial Lawyers Consultation Committee, Class Action Section, a fellow of the Roscoe Pound Foundation and past Vice-Chairman of the

Maritime Insurance Law Committee of the American Bar Association.  He is also a fellow of the International Society of Barristers, and chosen by his peers to be listed in Best Lawyers of America. He has been recognized as one of 500 leading lawyers in America by Lawdragon and The Legal 500 USA.  U.S. News and World Report has designated Levin, Fishbein, Sedran & Berman as one of the top 22 national plaintiffs' firms in mass torts and complex litigation  In addition, he has been further recognized as one of the top 100 trial lawyers by The National Trial Lawyers Association.  He was also named to the National Law Journal's Inaugural List of America's Elite Trial Lawyers.  He also has an "av" rating in Martindale-Hubbell and is listed in Martindale-Hubbell's Register of Preeminent Lawyers.

Mr. Levin was on the Executive Committee as well as various other committees and lead trial counsel in the case of *In re Asbestos School Litigation*, U.S.D.C., Eastern District of Pennsylvania, Master File No. 83-0268, which was certified as a nationwide class action on behalf of all school districts.  Mr. Levin was also on the Plaintiffs' Steering Committee in *In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation*, MDL Docket No. 94-140-1013 (Dist. Wyoming); *In re Norplant Contraceptive Products Liability Litigation*, MDL No. 1038 (E.D. Tex.); and *In re Telectronics Pacing Systems, Inc., Accufix Atrial "J" Lead Products Liability Litigation*, MDL No. 1057 (S.D. Ohio).

Mr. Levin was appointed by the Honorable Sam J. Pointer as a member of the Plaintiffs' Steering Committee in the *Silicone Gel Breast Implants Products Liability Litigation*, Master File No. CV-92-P-10000-S.  The Honorable Louis L. Bechtle appointed Mr. Levin as Co-Lead Counsel of the Plaintiffs' Legal Committee and Liaison Counsel in the MDL proceeding of *In re Orthopedic Bone Screw Products Liability Litigation*, MDL 1014 (E.D. Pa.).  Mr. Levin also serves as Co-Chairman of Plaintiffs' Management Committee, Liaison Counsel, and Class Counsel in *In re Diet Drug Litigation*, MDL 1203.  He was also a member of a four lawyer Executive Committee in *In re Rezulin Products Liability Litigation,* MDL No. 1348 (S.D.N.Y.) and is a member of a seven person Steering Committee in *In re Propulsid Products Liability Litigation,* MDL No. 1355 (E.D. La.).  He was Chair of the State Liaison Committee in *In re Phenylpropanolamine (PPA) Products Liability*

-2-

*Litigation*, MDL 1407 (W.D.WA); and is a member of the Plaintiffs' Steering Committee and Plaintiffs' Negotiating Committee in *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D.La.) and Court approved Medical Monitoring Committee in *In re Human Tissue Products Liability Litigation*, MDL No. 1763 (District of N.J.).  He is currently lead counsel and plaintiffs' class counsel in *In Re Chinese-Manufactured Drywall Product Liability Litigation*, MDL No. 2047 (E.D.La.). He was Plaintiffs' Liaison Counsel in *In re CertainTeed Corp. Roofing Shingles Products Liability Litigation*, MDL No. 1817 (E.D. Pa.).  He is a member of the Plaintiffs' Steering Committee in *In re National Football League Players' Concussion Litigation*, MDL No. 2323; *In re Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328); *In Re Testosterone Replacement Therapy Products Liability Litigation*, MDL No. 2545 (N.D. Ill.); *In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, MDL No. 2342 (E.D. Pa.); and *In re Yasmin and Yaz Marketing, Sales Practices and Relevant Products Liability Litigation*, MDL No. 2100 (S.D. Ill.).  He is a member of Plaintiffs' Executive Committee in *In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*, MDL No. 2428 (D. Mass).

Mr. Levin was also a member of the Trial and Discovery Committees in the *Exxon Valdez Oil Spill Litigation*, No. 89-095 (D. Alaska)  In addition, Mr. Levin is lead counsel in the prosecution of individual fishing permit holders, native corporations, native villages, native claims and business claims.

(b)   MICHAEL D. FISHBEIN, a member of the firm, is a graduate of Brown University (B.A., 1974). He graduated from Villanova University Law School with Honors, receiving a degree of Juris Doctor in 1977.  Mr. Fishbein was a member of the Villanova Law Review and is a member of the Villanova University Law School Chapter of the Order of Coif.  He is admitted to practice before the Pennsylvania Supreme Court, the United States District Court for the Eastern District of Pennsylvania, and the Third Circuit Court of Appeals.  Mr. Fishbein has been extensively involved in the prosecution of a variety of commercial class actions.  He is Class Counsel in *In re Diet Drug Litigation*, MDL 1203, and the principal architect of the seminal National Diet Drug Settlement Agreement.   He  is  also  a  member  of  the  Plaintiffs'  Steering  Committee  in  *In  re*

*Phenylpropanolamine (PPA) Products Liability Litigation*, MDL 1407 (W.D.WA).

(c)     **HOWARD J. SEDRAN**, a member of the firm, graduated cum laude from the University of Miami School of Law in 1976. He was a law clerk to United States District Court Judge, C. Clyde Atkins, of the Southern District of Florida from 1976-1977. He is a member of the Florida, District of Columbia and Pennsylvania bars and is admitted to practice in various federal district and appellate courts. From 1977 to 1981, he was an associate at the Washington, D.C. firm of Howrey & Simon which specializes in antitrust and complex litigation. During that period he worked on the following antitrust class actions: *In re Uranium Antitrust Litigation*; *In re Fine Paper Antitrust Litigation*; *Bogosian v. Gulf Oil Corporation*; *FTC v. Exxon, et al.*; and *In re Petroleum Products Antitrust Litigation*.

In 1982, Mr. Sedran joined the firm of Levin, Fishbein, Sedran & Berman and has continued to practice in the areas of environmental, securities, antitrust and other complex litigation. Mr. Sedran also has extensive trial experience. In the area of environmental law, Mr. Sedran was responsible for the first certified "Superfund" class action.

As a result of his work in an environmental case in Missouri, Mr. Sedran was nominated to receive the Missouri Bar Foundation's outstanding young trial lawyer's award, the Lon Hocker Award.

Mr. Sedran has also actively participated in the following actions: *In re Dun & Bradstreet Credit Services Customer Litigation*, Civil Action Nos. C-1-89-026, C-1-89-051, 89-2245, 89-3994, 89-408 (S.D. Ohio); *Raymond F. Wehner, et al. v. Syntex Corporation and Syntex (U.S.A.) Inc.*, No. C-85-20383(SW) (N.D. Cal.); *Harold A. Andre, et al. v. Syntex Agribusiness, Inc., et al.*, Cause No. 832-05432 (Cir. Ct. of St. Louis, Mo.); *In re Petro-Lewis Securities Litigation*, No. 84-C-326 (D. Colo.); *In re North Atlantic Air Travel Antitrust Litigation*, No. 84-1013 (D. D.C.); *Jaroslawicz v. Engelhard Corp.*, No. 84-3641 (D. N.J.); *Gentry v. C & D Oil Co.*, 102 F.R.D. 490 (W.D. Ark. 1984); *In re EPIC Limited Partnership Securities Litigation*, Nos. 85-5036, 85-5059 (E.D. Pa.); *Rowther v. Merrill Lynch, et al.*, No. 85-Civ-3146 (S.D.N.Y.); *In re Hops Antitrust Litigation*, No. 84-4112 (E.D. Pa.); *In re Rope Antitrust Litigation*, No. 85-0218 (M.D. Pa.); *In re Asbestos School*

*Litigation*, No. 83-0268 (E.D. Pa.); *In re Catfish Antitrust Litigation*, MDL No. 928 (Plaintiffs' Executive Committee); *In re Carbon Dioxide Antitrust Litigation*, MDL No. 940 (N.D. Miss.) (Plaintiffs' Executive Committee); *In re Alcolac, Inc. Litigation*, No. CV490-261 (Marshall, Mo.); *In re Clozapine Antitrust Litigation*, MDL No. 874 (N.D. Ill.) (Co-lead counsel); *In re Infant Formula Antitrust Litigation*, MDL No. 878 (N.D. Fla.); *Cumberland Farms, Inc. v. Browning-Ferris Industries, Inc.*, Civil Action No. 87-3713 (E.D. Pa.); *In re Airlines Antitrust Litigation*, MDL No. 861 (N.D. Ga.); *Lazy Oil, Inc. et al. v. Witco Corporation, et al.*, C.A. No. 94-110E (W.D. Pa.) (Plaintiffs' Co-Lead Counsel); *In re Nasdaq Market-Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.) (Co-Chair Discovery); and *In re Travel Agency Commission Antitrust Litigation*, Master File No. 4-95-107 (D. Minn.) (Co-Chair Discovery); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.*, C.A. No. 94-0404 (W.D. Pa.) (Plaintiffs' Executive Committee); *In re Commercial Explosives Antitrust Litigation*, MDL No. 1093 (Plaintiffs' Co-Lead Counsel); *In re Brand Name Prescription Drug Antitrust Litigation*, MDL No. 997; *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087; *In re Carpet Antitrust Litigation*, MDL 1075; *In re Graphite Electrodes Antitrust Litigation*, C.A. No 97-CV-4182 (E.D. Pa.) (Plaintiffs' Co-Lead Counsel); *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (Discovery Co-Chair); *In re Commercial Tissue Products Antitrust Litigation*, MDL No. 1189; *In re Thermal Fax Antitrust Litigation*, C.A. No. 96-C-0959 (E.D. Wisc.); *In re Lysine Indirect Purchaser Antitrust Litigation*, (D. Minn.); *In re Citric Acid Indirect Purchaser Antitrust Litigation*, C.A. No. 96-CV-009729 (Cir. Ct. Wisc.).

Recently, in *Lazy Oil Co. v. Witco Corp., et. al.*, *supra*, the District Court made the following comments concerning the work of Co-Lead Counsel:

> [t]he Court notes that the class was represented by very competent attorneys of national repute as specialists in the area of complex litigation. As such Class Counsel brought considerable resources to the Plaintiffs' cause. The Court has had the opportunity to observe Class counsel first-hand during the course of this litigation and finds that these attorneys provided excellent representation to the Class.

> The Court specifically notes that, at every phase of this litigation,
> Class Counsel demonstrated professionalism, preparedness and
> diligence in pursuing their cause.

(d)    **LAURENCE S. BERMAN**, a member of the firm, was born in Philadelphia, Pennsylvania on January 17, 1953.  He was admitted to the bar in 1977.  He is admitted to practice before the U.S. Courts of Appeals for the Third, Fourth and Seventh Circuits; the U.S. District Court, Eastern District of Pennsylvania; and the Bar of Pennsylvania.   He is a graduate of Temple University (B.B.A., magna cum laude, 1974, J.D. 1977).  He is a member of the Beta Gamma Sigma Honor Society.  Mr. Berman was the law clerk to the Honorable Charles R. Weiner, U.S. District Court for the Eastern District of Pennsylvania 1978-1980.  Member: Philadelphia, Pennsylvania and American Bar Associations. In 1982, Mr. Berman joined the law firm of Levin & Fishbein as an associate and became a partner in 1985 when the firm name was changed to Levin, Fishbein, Sedran & Berman ("LFSB").

Mr. Berman has had extensive experience in litigating and managing complex litigation.  In the early 1980's he became a member of the discovery, law and trial committees of *In re: Asbestos School Litigation,* Master File No. 83-0268 (E.D. Pa.). As a member of those committees, he drafted discovery and legal briefs that lead to the successful resolution of the case on behalf of a nationwide class of schools seeking recovery of damages for the costs and expenses they were required to expend to assess the presence of asbestos in school buildings and to remediate under newly enacted rules and regulations of the Environmental Protection Agency, promulgated in the 1970's. In connection with that litigation, he was one of the architects of approaching class certification issues for a nationwide class by the use of a "50" state analysis of the law, in order to demonstrate the similarity of laws and therefore the manageability of a nationwide class action. The "50" state approach has been followed in other cases.

During the early stages of his career, he litigated numerous environmental class/mass tort cases to successful conclusions.  He successfully litigated a lead contamination case for the residents of a community in the Port Richmond area of Philadelphia, where he drafted the legal briefs and

presented the oral argument to obtain class certification of a property damage and medical monitoring class against NL Industries and Anzon. That litigation produced a multi-million-dollar recovery for the residents in the class area. *Ursula Stiglich Wagner, et al. v. Anzon, Inc., et al.*, No. 4420, June Term, 1987 (C.C.P. Phila. Cty.)

Similarly, he represented  homeowners located near Ashland, Kentucky for environmental pollution damage. This case involved representing approximately 700 individual clients for personal injury and medical monitoring relief that also resulted in a multi-million-dollar recovery for his clients.

Beginning in the 1990's Mr. Berman began his representation of victims of the Three Mile Island accident. The firm represented approximately 2,000 plaintiffs in that matter, and Mr. Berman was responsible for the legal briefing and experts in the case, along with addressing *Daubert* issues. The presiding Court (Middle District of Pennsylvania) determined to conduct extensive *Daubert* hearings in Three Mile Island, resulting in approximately ten full weeks of in court live hearings, and thousands of pages of legal briefing. Ultimately the trial court determined that several of the expert witnesses offered by the plaintiffs did not meet the *Daubert* requirements, and an appeal was taken to the Third Circuit Court of Appeals, where Mr. Berman both briefed and argued the issues. The Third Circuit affirmed parts of the decision and remanded for further proceedings by the trial court. His representation of clients in the Three Mile Island litigation spanned well over a decade.

In 1989, Mr. Berman began his representation of approximately 1,000 plaintiffs who suffered damages as a result of the Exxon Valdez oil spill. In that role, he managed the claims of each of his firm's clients and worked in the development of their expert evidence and claim materials. As a subset of that litigation, he handled the claims of the Native Opt-Out Settlement Class. This representation also spanned well over a decade.

Mr. Berman began his role in litigating *In re Diet Drugs*, MDL 1203 (E.D. Pa.) in 1997 at the outset of that litigation. The *Diet Drugs* case is still active to this date. Mr. Berman's firm was appointed as co-lead counsel, co-class counsel and liaison counsel. The massive size of the *Diet Drugs* case required the commitment of three of the named partners to the case, Arnold Levin,

Michael Fishbein and Mr. Berman, as well as a substantial commitment by partner Fred Longer. While Messrs. Levin and Fishbein were formally named as co-class counsel to the case, Mr. Berman had a *de facto* role as co-class counsel and co-lead counsel for the case. Mr. Berman briefed many legal issues, argued issues in court, participated in discovery, appeared frequently before the Special Discovery Master, helped negotiate the settlement(s) and helped in the management of the oversight of both the AHP Settlement Trust that was created to oversee the Settlement and the Seventh Amendment Fund Administrator that was created to oversee the Seventh Amendment aspect of the Settlement. He also managed the claims of the firm's individual clients.

Although the *Diet Drug* case remains active today, and still occupies some of Mr. Berman's time, over the recent years he became active in various other pharmaceutical cases. In particular, beginning in about 2010, he became active in *In re Yaz/Yasmin/Ocella*, MDL 2100 (S. D. Ill.) where he was appointed as a member of the discovery and legal briefing committees. Mr. Berman worked with his partner Michael Weinkowitz as Co-Liaison Counsel in the parallel state court litigation pending in the Court of Common Pleas of Philadelphia.

As the *Yaz* case began to wind down, Mr. Berman became active in litigation Tylenol cases where he was appointed and remains currently Plaintiffs' Co-Lead and Liaison Counsel. *In Re Tylenol*, MDL 2436, (E.D.Pa.). As Plaintiffs' Co-Lead and Liaison counsel, Mr. Berman has appeared in Court for the Plaintiffs at virtually all of the monthly status conferences, drafted numerous briefs, engaged in discovery, drafted numerous case management orders that were entered by the Court, argued motions and otherwise managed the case on behalf of the Plaintiffs.

Mr. Berman is also a *de facto* member of the executive committee of *In Re Granuflo,* MDL MDL2428, (D. Mass.). Mr. Berman's partner Arnold Levin was formally appointed to that case's Executive Committee for the Plaintiffs and Mr. Berman was appointed as a co-chair of the law and briefing committee. H has acted as a *de facto* member of the executive committee for the firm. In his role on the law and briefing committee, he drafted numerous briefs for the case, including *Daubert* briefs, drafted various case management orders that were entered by the Court, and assisted in the negotiation of the global settlement including the drafting of the settlement documents and the

allocation plan.

In *In re Fosamax*, MDL 2243 (D.N.J.), Mr. Berman spearheaded the plaintiff's position relating to privilege log issues as well as preemption and in limine issues raised in the bellwether case.

Mr. Berman has lectured about mass tort matters. He lectured about the Tylenol case at several seminars and is a member of the American Association of Justice (AAJ) litigation group for the case. He is also a member of various other AAJ litigation groups involving pharmaceutical products.  Mr. Berman has been a frequent speaker for the Pennsylvania Bar Institute, Mealy's Publications and Harris Martin. His lectures have been accredited for providing CLE credit to the attendees. Mr. Berman has an A.V. Peer Review rating by Martindale-Hubbell, and is an AAJ National College of Advocacy Advocate. He is also a member of The National Trial Lawyers, as well as a member of the American, Pennsylvania and Philadelphia Bar Associations and has been recognized as a Super Lawyer. His published works include "Class Actions in State and Federal Courts," Pennsylvania Bar Institute (Continuing Legal Education), November, 1997; "New Pennsylvania Rule of Civil Procedure 207.1," Pennsylvania Bar Institute (Continuing Legal Education), November, 2001, and membership on the Board of Editors, "Fen-Phen Litigation Strategist," Leader Publications, (1998).

(e)   **FREDERICK S. LONGER**, specializes in representing individuals who have been harmed by dangerous drugs, medical devices, other defective products and antitrust violations.  Mr. Longer has extensive experience in prosecuting individual, complex and class action litigations in both state and federal courts across the country.  Mr. Longer has been involved in the resolution of several of the largest settlements involving personal injuries including the $6.75 billion settlement involving Diet Drugs and the $4.85 billion settlement involving Vioxx.  Mr. Longer was a member of the negotiating counsel responsible for the settlements in the *Chinese Drywall* litigation involving various suppliers and manufacturers of Chinese Drywall valued in excess of $1 billion.  Mr. Longer has a wealth of experience in mass torts and has frequently been the chairman or member of the Law

-9-

and Briefing Committee in numerous multi-district litigations in *In re Propulsid Products Liability Litigation*, MDL No. 1355 (E.D. La.); *In re Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.); *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D.La.); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D. Pa.); and *In re Diet Drug Litigation*, MDL No. 1203 (E.D. Pa.).   He is currently a member of the Plaintiffs' Steering Committee in *In re Mirena Products Liability Litigation*, MDL No. 2434 (S.D.N.Y.)

Mr. Longer has substantial trial experience and is one of the few counsel in the country to have a client's claim involving Baycol tried to verdict in Philadelphia County Court of Common Pleas.

Mr. Longer, originally from Philadelphia, Pennsylvania, completed his undergraduate work at Carnegie Mellon University. He then attended the University Pittsburgh School of Law and was a Notes and Comments Editor for the University of Pittsburgh Law Review.  Mr. Longer practiced for 3 years in Allegheny County with the law firm of Berger, Kapatan, Malakoff & Myers on complex litigation and civil rights matters, including *Kelly v. County of Allegheny*, No. 6D 84-17962 (C.P. Allegheny County, PA).  Thereafter, Mr. Longer joined the law firm of Levin, Fishbein, Sedran & Berman and is now a member in the firm.

Mr. Longer is a frequent lecturer and has presented numerous seminars on various legal topics for professional groups.  Some of Mr. Longer's speaking engagements include:  *Plaintiff Only Consumer Warranty Class Action Litigation Seminar*, American Association for Justice Education and the National Association of Consumer Advocate (June 3-4, 2014)*;  "No Injury" and "Overbroad" Class Actions After Comcast, Glazer and Butler: Implications for Certification-Navigating Complex Issues of Overbreadth and Damages in Consumer Product Cases*, Strafford Webinar (April 1, 2014); *Service of Process in China*, ABA Annual Conference (April 18-20, 2012); Chinese Drywall Litigation Conference, Harris Martin (October 20-21, 2011); *Current Issues in Multi-district Litigation Practice*, Harris Martin (September 26, 2011); *FDA Preemption: Is this the end?*, Mass Torts Made Perfect (May 2008).  He has authored several articles including, *The Federal Judiciary's Super Magnet,* TRIAL (July 2009).  He also contributed to Herbert J. Stern

-10-

& Stephen A. Saltzburg, TRYING CASES TO WIN: ANATOMY OF A TRIAL (Aspen 1999).

Mr. Longer is a member of the American Bar Association, American Association for Justice, Pennsylvania and Philadelphia Association for Justice, the Pennsylvania Bar Association and the Philadelphia Bar Association.  He is an active member of the Historical Society for the Eastern District of Pennsylvania.  He is admitted to practice before the Supreme Court of Pennsylvania and the Supreme Court of New Jersey, the United States Supreme Court; the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Seventh and Ninth Circuits, and the United States District Courts for the Western and Eastern Districts of Pennsylvania, United States District Court Northern District of New York; United States District Court for the Western District of New York; United States District Court of New Jersey; United States District Court for District of Arizona; and the United States District Court District of Nebraska.

Mr. Longer has received Martindale-Hubbell's highest rating (AV) as a pre-eminent lawyer for his legal ability and ethical standards.  He has also been recognized by his peers as a Super Lawyer since 2008.

(f)    **DANIEL C. LEVIN**, a member of the firm, was born in Philadelphia, Pennsylvania. He received his undergraduate degree from the University of Pittsburgh (B.A. 1994) and his law degree from Oklahoma City University (J.D. 1997).  He is a member of Phi Delta Phi.  He serves on the Board of Directors for the Philadelphia Trial Lawyers Association.  He is also member of the Pennsylvania Bar Association; Pennsylvania Trial Lawyers Association, and the Association of Trial Attorneys of America.  He is admitted to practice before the Supreme Court of Pennsylvania; the United States District Court for The Eastern District of Pennsylvania, and the United States Court of Appeals for the Second and Third Circuits.  Mr. Levin has been part of the litigation team in *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D. Pa.); *In re Diet Drug Litigation*, MDL No. 1203 (E.D. Pa.); *Galanti v. The Goodyear Tire and Rubber Co.*, Civil Action No: 03-209; *Muscara v. Nationwide,* October Term 2000, Civil Action No.: 001557, Philadelphia County; and *Wong v. First Union*, May Term 2003, Civil Action No. 001173, Philadelphia County, *Harry Delandro, et al v. County of Allegheny, et al*, Civil Action No. 2:06-CV-927; *Nakisha Boone,*

*et al v. City of Philadelphia, et al*, Civil Action No. 05-CV-1851; *Mary Gwiazdowski v. County of Chester*, No. 08-4463 (E.D.Pa.); *Helmer, et al v. the Goodyear Tire & Rubber Co.,* D.Co. Civil Action No. 1:12-00685-RBJ*; Cobb v. BSH Home Appliance Corporation, et al*, C.D.Ca. Case No. SACV10-711 DOC (ANx) and *In Re Human Tissue Products Liability Litigation*, MDL No. 1763 (E.D.NJ.).

Mr. Levin was lead counsel in *Joseph Meneghin v. Exxon Mobil Corporation, et al*, Superior Court of New Jersey, Docket No. OCN-L-002696-07; *Johnson, et al v. Walsh, et al*, PCCP April Term, 2008, No. 2012; *Kowa, et al v. The Auto Club Group*, N.D.Il. Case No. 1:11-cv-07476.  Mr. Levin is currently lead counsel in *Ortiz v. Complete Healthcare Resources, Inc., et al,* Montgomery CCP No. 12-12609; *Gordon v. Maxim Healthcare Services, Inc.*, E.D.Pa. Civil Action No. 2:13-cv-07175 and *Shafir v. Continuum Health Partners, Inc.*

Daniel Levin is recognized by his peers as a Super Lawyer.

(g)    **CHARLES E. SCHAFFER**, a member of the firm, born in Philadelphia, Pennsylvania, is a graduate of Villanova University, (B.S., *Magna Cum Laude*, 1989) and Widener University School of Law (J.D. 1995) and Temple University School of Law (LL.M. in Trial Advocacy, 1998). He is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of New Jersey, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the Third Circuit Court of Appeals.  He is also a member of the American Bar Association, Association of Trial Attorneys of America, Pennsylvania Association for Justice, Philadelphia Trial Lawyers Association, and the National Trial Lawyers Association.

Mr. Schaffer has participated in, *inter alia*, the following actions: *Davis v. SOH Distribution Company, Inc.*, Case No. 09-CV-237 (M.D. Pa.) (Plaintiffs' Co-Lead Counsel); *In re CertainTeed Corporation Roofing Shingles Products Liability Litigation,* MDL No. 1817 (E.D. Pa.) (Plaintiffs' Discovery and Settlement Committees); *Gwaizdowski v. County of Chester*, Civil Action No. 08-CV-4463 (E.D. Pa. 2012);  *Meneghin, v. The Exxon Mobile Corporation, et al.,* Civil Action No.

-12-

OCN-002697-07 (Superior Court, Ocean County, NJ 2012) (Plaintiffs' Co-lead Counsel); *Gulbankian et. al. v. MW Manufacturers, Inc.,* Case No. 1:10-cv-10392-RWZ (D.C. Mass.) (Plaintiffs' Discovery and Settlement Committees); *Eliason, et al. v. Gentek Building Products, Inc., et al.*, Case No. 1:10-cv-2093 (N.D. Ohio) (Plaintiffs' Executive Committee); *Smith, et al. v. Volkswagon Group of America, Inc.*, Case No. 3:13-cv-00370-SMY-PMF (S.D. Ill.) (Plaintiffs' Discovery and Settlement Committees); *Melillo, et al. v. Building Products of Canada Corp.*, Civil Action No. 1:12-CV-00016-JGM (D. Vt. Dec. 2012) *Vought, et al., v. Bank of America, et al*., Civil Action No. 10-CV-2052 (C.D. Ill. 2013) (Plaintiffs' Discovery and Settlement Committees); *In re Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Steering Committee); *United Desert Charities, et. el. v. Sloan Valve, et. el.*, Case No. 12-cv-06878 (C.D. Ca.) (Plaintiffs' Executive Committee); *Kowa, et. el. v. The Auto Club Group AKA AAA* Chicago, Case No. 1:11-cv-07476 (N.D. Ill.); *In re Chinese-Manufactured Drywall Product Liability Litigation,* MDL No. 2047 (E.D. La.); *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D. Pa.); *In re Diet Drug Litigation*, MDL No. 1203 (E.D. Pa.); *In re: CertainTeed Fiber Cement Siding Litigation,* MDL No. 2270 (E.D. Pa. 2014) (Plaintiffs' Discovery and Settlement Committees) and *In re JP Mortgage Modification Litigation,* MDL No. 2290 (D.C. Mass.) (Plaintiffs' Co-Lead Counsel).

Currently, Mr. Schaffer is serving as lead counsel in *In re IKO Roofing Products Liability Litigation*, MDL No. 2104 (C.D. Ill.), a member of Plaintiffs Steering Committee in *In re Pella Corporation Architect And Designer Series Windows Marketing Sales Practices and Product Liablility Litigation*, MDL No. 2514 (D.C. SC.); a member of the Plaintiffs' Executive Committee in *In re Azek Decking Sales Practices Litigation*, Civil Action No. 12-6627 (KM)(MCA)(D. NJ.), a member of the Plaintiffs' Executive Committee in *In re Citimortgage, Inc. Home Affordable Modification ("HAMP")*, MDL No. 2274 (C.D. Ca.); a member of the Plaintiffs' Executive Committee in *In re Carrier IQ Consumer Privacy Litigation*, MDL 2330 (N.D. Ca*.);* a member of the Plaintiffs' Executive Committee *In re Dial Complete Marketing and Sales Practices Litigation*; MDL No. 2263 (D. NH.); a member of Plaintiffs' Executive Committee in *In re Emerson Electric*

-13-

*Co. Wet/Dry Vac Marketing and Sales Litigation,* MDL No. 2382 (E.D. Miss.); a member of the Plaintiffs' Executive Committee *In re Colgate–Palmolive Soft Soap Antibacterial Hand Soap Marketing and Sales Practice Litigation*, (D. NH.); a member of the Plaintiffs' Executive Committee *In re HardiePlank Fiber Cement Siding* Litigation, MDL No. 2359 (D.C. Minn.) and is actively participating in a number of other class actions and mass tort actions across the United States in leadership positions.

In recognition of his accomplishments, Mr. Schaffer has achieved and maintained an AV Martindale-Hubbell rating. Mr. Schaffer speaks nationally on a multitude of topics relating to class actions and complex litigation.

(h)   **AUSTIN B. COHEN**, a member of the firm, is a graduate of the University of Pennsylvania (B.A., 1990) and a graduate of the University of Pittsburgh School of Law (J.D., cum laude, 1996) where he served on the Journal of Law and Commerce as an assistant and executive editor.  He has authored an article titled "Why Subsequent Remedial Modifications Should Be Inadmissible in Pennsylvania Products Liability Actions," which was published in the Pennsylvania Bar Association Quarterly.  He is a member of the Pennsylvania and New Jersey bars, and is a member of the Pennsylvania and American Bar Associations.

(i)   **MICHAEL M. WEINKOWITZ**, a member of the firm, born Wilmington, Delaware, June 11, 1969; admitted to bar 1995, Pennsylvania and New Jersey, U.S. District Courts, Eastern District of Pennsylvania, District of New Jersey; U.S. Court of Appeals, Third Circuit. Education: West Virginia University (B.A., magna cum laude, 1991); Temple University (J.D., cum laude, 1995); Member, Temple International & Comparative Law Journal, 1994-95; American Jurisprudence Award for Legal Writing.

(j)   **MATTHEW C. GAUGHAN,** born in Boston, Massachusetts, is a graduate of the University of Massachusetts at Amherst, (B.B.A., 2000) and Villanova University School of Law (J.D., *Cum Laude*, 2003). He is admitted to practice in the States of New Jersey, New York and Pennsylvania. He is also admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey.

-14-

Mr. Gaughan has extensive involvement in products liability and commercial litigation cases.

(k)     **KEITH J. VERRIER,** is a graduate of Temple University School of Law (J.D., magna cum laude, 2000), where he was a member of the Law Review, and the University of Rhode Island (B.S., 1992).   After law school, he was a law clerk for the Honorable Herbert J. Hutton in the United States District Court for the Eastern District of Pennsylvania.  Mr. Verrier has experience litigating a wide range of commercial disputes with an emphasis on litigating and counseling clients on antitrust matters.  He currently spends the majority of his time litigating antitrust class actions, predominantly those seeking overcharge damages on behalf of direct purchasers of products under both Section 1 and Section 2 of the Sherman Act.  He is admitted to practice in the Commonwealth of Pennsylvania and the State of New Jersey as well as in the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey.   He is a member of the American Bar Association.

(l)     **LUKE T. PEPPER,** is a graduate of King's College (B.A. 1997) and the Temple University School of Law (J.D. 2000). While in law school, Mr. Pepper served as an intern for United States Magistrate Judge Peter Scuderi. He is admitted to the Pennsylvania Supreme Court, and the U.S. District Court for the Eastern District of Pennsylvania, U.S. Court of Appeals, Third Circuit, and United States Court of Appeals for the Armed Forces.   He is a member of the Pennsylvania and American Association of Justice. He served as claimant and attorney liaison for Class Counsel MDL No. 1203 *In re Diet Drugs*, (E.D. Pa.). His responsibilities included assisting claimants with the adjudication of their claims and resolution of settlement issues.  In addition, Mr. Pepper is part of the litigation teams *In Re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*,  MDL No. 2385 (S.D. Ill.), MDL No. 2100 *In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, (S.D. Ill.); MDL 1950 *Municipal Derivatives (SD NY)*; MDL 2436 *Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation* (E.D. Pa); MDL 2328 *Pool Products Distribution Market Antitrust Litigation* (E.D. LA).

(m)      **NICOLA F. SERIANNI**, is a graduate of The Johns Hopkins University (B.A. International Relations, 2000) and Widener University School of Law (J.D., 2006). While in law school, Ms. Serianni served as an intern for Pennsylvania Superior Court Judge Susan Peikes Gantman, and upon graduation continued to work in the Superior Court of Pennsylvania for Judges Richard B. Klein (Ret.) and Anne E. Lazarus. Ms. Serianni is admitted to practice in the Commonwealth of Pennsylvania, the State of New Jersey as well as in the United States District Court for the Eastern District of Pennsylvania. Ms. Serianni works extensively on products liability and class action litigation cases.

### SUCCESSFULLY LITIGATED CLASS CASES

Levin, Fishbein, Sedran & Berman's extensive class action practice includes many areas of law, including: Securities, ERISA, Antitrust, Environmental and Consumer Protection.  The firm also maintains a practice in personal injury, products liability, and admiralty cases.

The firm has successfully litigated the following class action cases: *James J. and Linda J. Holmes, et al. v. Penn Security Bank and Trust Co., et al.*, U.S.D.C., Middle District of Pennsylvania Civil Action No. 80-0747; *In re Glassine & Greaseproof Antitrust Litigation*, MDL No. 475, U.S.D.C., Eastern District of Pennsylvania; *In re First Pennsylvania Securities Litigation*, Master File No. 80-1643, U.S.D.C., Eastern District of Pennsylvania; *In re Caesars World Shareholder Litigation*, Master File No. MDL 496 (J.P. MDL); *In re Standard Screws Antitrust Litigation*, Master File No. MDL 443, U.S.D.C., Eastern District of Pennsylvania; *In re Electric Weld Steel Tubing Antitrust Litigation - II*, Master File No. 83-0163, U.S.D.C., Eastern District of Pennsylvania; *Leroy G. Meshel, et al. v. Nutri-Systems, Inc., et al.*, U.S.D.C., Eastern District of Pennsylvania, Civil Action No. 83-1440; *In re Corrugated Container Antitrust Litigation*, U.S.D.C., Southern District of Texas, Houston Division, MDL 310; *In re Three Mile Island Litigation*, U.S.D.C., Middle District of Pennsylvania, Civil Action No. 79-0432; *Township of Susquehanna, et al. v. GPU, et al.*, U.S.D.C., Middle District of Pennsylvania, Civil Action No. 81-0437 (a Three Mile Island case); *Donald A. Stibitz, et al. v. General Public Utilities Corporation, et al.*, No. 654

S 1985 (C.P. Dauphin County, Pa.) (a Three Mile Island case); *Raymond F. Wehner, et al. v. Syntex Corporation and Syntex (U.S.A.) Inc.*, No. C-85-20383(SW) (N.D. Cal.) (first Superfund Class Action ever certified); *In re Dun & Bradstreet Credit Services Customer Litigation*, U.S.D.C., Southern District of Ohio, Civil Action Nos. C-1-89-026, 89-051, 89-2245, 89-3994, 89-408; *Malcolm Weiss v. York Hospital, et al.*, U.S.D.C., Middle District of Pennsylvania, Civil Action No. 80-0134; *In re Ramada Inns Securities Litigation*, U.S.D.C., District of Delaware, Master File No. 81-456; *In re Playboy Securities Litigation*, Court of Chancery, State of Delaware, New Castle County, Civil Action No. 6806 and 6872; *In re Oak Industries Securities Litigation*, U.S.D.C., Southern District of California, Master File No. 83-0537-G(M); *Dixie Brewing Co., Inc., et al. v. John Barth, et al.*, U.S.D.C., Eastern District of Pennsylvania, Civil Action No. 84-4112; *In re Warner Communications Securities Litigation*, U.S.D.C., Southern District of New York, Civil Action No. 82-CV-8288; *In re Baldwin United Corporation Litigation*, U.S.D.C., Southern District of New York, MDL No. 581; *Zucker Associates, Inc., et al. v. William C. Tallman, et al. and Public Service Company of New Hampshire*, U.S.D.C., District of New Hampshire, Civil Action No. C86-52-D; *In re Shopping Carts Antitrust Litigation*, MDL No. 451, Southern District of New York; *Charal v. Andes, et al.*, C.A. No. 77-1725; *Hubner v. Andes, et al.*, C.A. No. 78-1610 U.S.D.C., Eastern District of Pennsylvania; *In re Petro-Lewis Securities Litigation*, 84-C-326, U.S.D.C., District of Colorado; *Gentry v. C & D Oil Co.*, 102 F.R.D. 490 (W.D. Ark. 1984); *In re Hops Antitrust Litigation*, C.A. No. 84-4112, U.S.D.C., Eastern District of Pennsylvania; *In re North Atlantic Air Travel Antitrust Litigation*, No. 84-1013, U.S.D.C., District of Columbia; *Continental/Midlantic Securities Litigation*, No. 86-6872, U.S.D.C., Eastern District of Pennsylvania; *In re Fiddler's Woods Bondholders Litigation*, Civil Action No. 83-2340 (E.D. Pa.) (Newcomer, J.); *Fisher Brothers v. Cambridge-Lee Industries, Inc., et al.*, Civil Action No. 82-4941, U.S.D.C., Eastern District of Pennsylvania; *Silver Diversified Ventures Limited Money Purchase Pension Plan v. Barrow, et al.*, C.A. No. B-86-1520-CA (E.D. Tex.) (*Gulf States Utilities Securities Litigation*); *In re First Jersey Securities Litigation*, C.A. No. 85-6059 (E.D. Pa.); *In re Crocker Shareholder Litigation*, Cons. C.A. No. 7405, Court of Chancery, State of Delaware, New Castle

-17-

County; *Mario Zacharjasz, et al. v. The Lomas and Nettleton Co.*, Civil Action No. 87-4303, U.S.D.C., Eastern District of Pennsylvania; *In re People Express Securities Litigation*, Civil Action No. 86-2497, U.S.D.C., District of New Jersey; *In re Duquesne Light Shareholder Litigation*, Master File No. 86-1046 U.S.D.C., Western District of Pennsylvania (Ziegler, J.); *In re Western Union Securities Litigation*, Master File No. 84-5092 (JFG), U.S.D.C., District of New Jersey; *In re TSO Financial Litigation*, Civil Action No. 87-7903, U.S.D.C., Eastern District of Pennsylvania; *Kallus v. General Host*, Civil Action No. B-87-160, U.S.D.C., District of Connecticut; *Staub, et al. v. Outdoor World Corp.*, C.P. Lancaster County, No. 2872-1984; *Jaroslawicz, et al. v. Englehard Corp.*, U.S.D.C., District of New Jersey, Civil Action No. 84-3641F; *In re Boardwalk Marketplace Securities Litigation*, U.S.D.C., District of Connecticut, MDL No. 712 (WWE); *In re Goldome Securities Litigation*, U.S.D.C., Southern District of New York, Civil Action No. 88-Civ-4765; *In re Ashland Oil Spill Litigation*, U.S.D.C., Western District of Pennsylvania, Master File No. M-14670; *Rosenfeld, et al. v. Collins & Aikman Corp.*, U.S.D.C., Eastern District of Pennsylvania, Civil Action No. 87-2529; *Gross, et al. v. The Hertz Corporation*, U.S.D.C., Eastern District of Pennsylvania, Master File, No. 88-661; *In re Collision Near Chase, Maryland on January 4, 1987 Litigation*, U.S.D.C., District of Maryland, MDL Docket No. 728; *In re Texas International Securities Litigation*, U.S.D.C., Western District of Oklahoma, MDL No. 604, 84 Civ. 366-R; *In re Chain Link Fence Antitrust Litigation*, U.S.D.C., District of Maryland, Master File No. CLF-1; *In re Winchell's Donut House, L.P. Securities Litigation*, Court of Chancery of the State of Delaware, New Castle County, Consolidated Civil Action No. 9478; *Bruce D. Desfor, et al. v. National Housing Ministries, et al.*, U.S.D.C., Eastern District of Pennsylvania, Civil Action No. 84-1562; *Cumberland Farms, Inc., et al. v. Browning-Ferris Industries, Inc., et al.*, U.S.D.C., Eastern District of Pennsylvania, Master File No. 87-3717; *In re SmithKline Beckman Corp. Securities Litigation*, U.S.D.C., Eastern District of Pennsylvania, Master File No. 88-7474; *In re SmithKline Beecham Shareholders Litigation*, Court of Common Pleas, Phila. County, Master File No. 2303; *In re First Fidelity Bancorporation Securities Litigation*, U.S.D.C., District of New Jersey, Civil Action No. 88-5297 (HLS); *In re Qintex Securities Litigation*, U.S.D.C., Central District of California, Master

-18-

File No. CV-89-6182; *In re Sunrise Securities Litigation*, U.S.D.C., Eastern District of Pennsylvania, MDL No. 655; *David Stein, et al. v. James C. Marshall, et al.*, U.S.D.C., District of Arizona, No. Civ. 89-66 (PHX-CAM); *Residential Resources Securities Litigation*, Case No. 89-0066 (D. Ariz.); *In re Home Shopping Network Securities Litigation -- Action I (Consolidated Actions)*, Case No. 87-428-CIV-T-13A (M.D. Fla.); *In re Kay Jewelers Securities Litigation*, Civ. Action Nos. 90-1663-A through 90-1667-A (E.D. Va.); *In re Rohm & Haas Litigation*, Master File Civil Action No. 89-2724 (Coordinated) (E.D. Pa.); *In re O'Brien Energy Securities Litigation*, Master File No. 89-8089 (E.D. Pa.); *In re Richard J. Dennis & Co. Litigation*, Master File No. 88-Civ-8928 (MP) (S.D. N.Y.); *In re Mack Trucks Securities Litigation*, Consolidated Master File No. 90-4467 (E.D. Pa.); *In re Digital Sound Corp., Securities Litigation*, Master File No. 90-3533-MRP (BX) (C.D. Cal.); *In re Philips N.V. Securities Litigation*, Master File No. 90-Civ.-3044 (RPP) (S.D.N.Y.); *In re Frank B. Hall & Co., Inc. Securities Litigation*, Master File No. 86-Civ.-2698 (CLB) (S.D.N.Y.); *In re Genentech, Inc. Securities Litigation*, Master File No. C-88-4038-DLJ (N.D. Cal.); *Richard Friedman, et al. v. Northville Industries Corp.*, Supreme Court of New York, Suffolk County, No. 88-2085; *Benjamin Fishbein, et al. v. Resorts International, Inc., et al.*, No. 89 Civ.6043(MGC) (S.D.N.Y.); *In re Avon Products, Inc. Securities Litigation*, No. 89, Civ. 6216 (MEL), (S.D.N.Y.); *In re Chase Manhattan Securities Litigation*, Master File No. 90 Civ. 6092 (LJF) (S.D.N.Y.); *In re FPL Group Consolidated Litigation*; Case No. 90-8461 Civ. Nesbitt (S.D. Fla.); *Daniel Hwang, et al v. Smith Corona Corp., et al*, Consolidated No. B89-450 (TFGD) (D. Ct.); *In re Lomas Financial Corp. Securities Litigation*, C.A. No. CA-3-89-1962-G (N.D. Tex.); *In re Tonka Corp. Securities Litigation*, Consolidated Civil Action No. 4-90-2 (D. Minnesota); *In re Unisys Securities Litigation*, Master File No. 89-1179 (E.D. Pa.); *In re Alcolac Inc. Litigation*, Master File No. CV490-261 (Cir. Ct. Saline Cty. Marshall, Missouri); *In re Clozapine Antitrust Litigation*, Case No. MDL874 (N.D. Ill.); *In re Jiffy Lube Securities Litigation*, C.A. No. JHY-89-1939 (D. Md.); *In re Beverly Enterprises Securities Litigation*, Master File No. CV-88-01189 RSWL (Tx.) [Central District CA]; *In re Kenbee Limited Partnerships Litigation*, CV-91-2174 (GEB) (District of NJ); *Greentree v. Procter & Gamble Co.*, C.A. No. 6309, April Term 1991 (C.C.P. Phila. Cty.); *Moise Katz, et al v. Donald A.*

*Pels, et al and Lin Broadcasting Corp.*, No. 90 Civ. 7787 (KTD) (S.D.N.Y.); *In re Airlines Antitrust Litigation*, MDL No. 861 (N.D. GA.); *Fulton, Mehring & Hauser Co., Inc., et al. v. The Stanley Works, et al.*, No. 90-0987-C(5) (E.D. Mo.); *In re Mortgage Realty Trust Securities Litigation*, Master File No. 90-1848 (E.D. Pa.); *Benjamin and Colby, et al. v. Bankeast Corp., et al.*, C.A. No. C-90-38-D (D.N.H.); *In re Royce Laboratories, Inc. Securities Litigation*, Master File Case No. 92-0923-Civ-Moore (S.D. Fla.); *In re United Telecommunications, Inc. Securities Litigation*, Case No. 90-2251-0 (D. Kan.); *In re U.S. Bioscience Securities Litigation*, C.A. No. 92-678 (E.D. Pa.); *In re Bolar Pharmaceutical Co., Inc. Securities Litigation*, C.A. No. 89 Civ. 17 (E.D. N.Y.); *In re PNC Securities Litigation*, C.A. No. 90-592 (W.D. Pa.); *Raymond Snyder, et al. v. Oneok, Inc., et al.*, C.A. No. 88-C-1500-E (N.D. Okla.); *In re Public Service Company of New Mexico*, Case No. 91-0536M (S.D. Cal.); *In re First Republicbank Securities Litigation*, C.A. No. CA3-88-0641-H (N.D. Tex, Dallas Division); and *In re First Executive Corp. Securities Litigation*, Master File No. CV-89-7135 DT (C.D. Calif.).

*    *    *

Several courts have favorably commented on the quality of work performed of Arnold Levin, Levin, Fishbein, Sedran & Berman, and Mr. Levin's former firm, Adler, Barish, Levin & Creskoff.

Judge Rambo of the United States District Court for the Middle District of Pennsylvania has favorably acknowledged the quality of work of the law firm in her opinion in *In re Three Mile Island Litigation*, 557 F. Supp. 96 (M.D. Pa. 1982). In that case, the firm was a member of the Executive Committee charged with overall responsibility for the management of the litigation. Notably, the relief obtained included the establishment of a medical monitoring fund for the class. *See also, Township of Susquehanna, et al. v. GPU, et al.*, U.S.D.C., Middle District of Pennsylvania, Civil Action No. 81-0437.

In certifying the class in *Weiss v. York Hospital*, Judge Muir found that "plaintiff's counsel are experienced in the conduct of complex litigation, class actions, and the prosecution of antitrust matters." *Weiss v. York Hospital*, No. 80-0134, Opinion and Order of May 28, 1981 at 4

-20-

(M.D. Pa. Mar. 1981). *See also*, *Weiss v. York Hospital*, 628 F. Supp. 1392 (M.D. Pa. 1986). Judge Muir, in certifying a class for settlement purposes, found plaintiff's attorneys to be adequate representatives in *In re Anthracite Coal Antitrust Litigation*, Nos. 76-1500, 77-699, 77-1049 and found in the decision that "the quality of the work performed by Mr. Levin and by the attorneys from Adler-Barish [a predecessor to Levin, Fishbein, Sedran & Berman] who assisted him -- as exhibited both in the courtroom and in the papers filed -- has been at a high level." *In re Anthracite Coal Antitrust Litigation*, (M.D. Pa., Jan. 1979). Judge Muir also approved of class counsel in the certification decision of *Holmes, et al. v. Penn Security and Trust Co., et al.*, No. 80-0747. Chief Judge Nealon found plaintiffs' counsel to satisfy the requirement of adequate representation in certifying a class in *Beck v. The Athens Building & Loan Assn.*, No. 73-605 at 2 (D. Pa. Mar. 22, 1979). Judge Nealon's opinion relied exclusively on the Court's Opinion in *Sommers v. Abraham Lincoln Savings & Loan Assn.*, 66 F.R.D. 581, 589 (E.D. Pa. 1975) which found that "there is no question that plaintiffs' counsel is experienced in the conduct of a class action...."

Judge Bechtle in the *Consumer Bags Antitrust Litigation*, Civil Action No. 77-1516 (E.D. Pa.), wherein Arnold Levin was lead counsel for the consumer class, stated with respect to petitioner:

> Each of the firms and the individual lawyers in this case have extensive experience in large, complex antitrust and securities litigation.
>
> Furthermore, the Court notes that the quality of the legal services rendered was of the highest caliber.

In *Gentry v. C&D Oil Company*, 102 F.R.D. 490 (W.D. Ark. 1984), the Court described counsel as "experienced and clearly able to conduct the litigation."

In *Jaroslawicz v. Engelhard Corp.*, No. 84-3641 (D.N.J.), in which this firm played a major role, the Court praised plaintiffs' counsel for their excellent work and the result achieved.

In *In Re: Orthopedic Bone Screw Products Liability Litigation,* 2000 WL 1622741, *7 (E.D.Pa. 2000), the Court lauded Levin, Fishbein, Sedran & Berman counsel as follows: "The court also finds that the standing and expertise of counsel for [plaintiffs] is noteworthy. First, class

-21-

counsel is of high caliber and most PLC members have extensive national experience in similar class action litigation."

In *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, MDL Docket No. 1203, the Court commented on Levin, Fishbein, Sedran & Berman's efforts regarding the creation of the largest nationwide personal injury settlement to date as a "remarkable contribution".  PTO No. 2622 (E.D.Pa. October 3, 2002).

The firm has played a major role in most pharmaceutical litigation in the last 20 years. The firm is listed by Martindale-Hubbell in the Bar Register of Preeminent Lawyers.

# Exhibit 17

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND LIABILITY LITIGATIONS** | Master Docket No. 3:16-md-2738 (FLW)<br><br>MDL 2738<br><br>Honorable Freda L. Wolfson |
| This document relates to:<br><br>Mihalich v. Johnson & Johnson, et al., S.D. Illinois, C.A. No. 3:14-00600<br><br>Estrada v. Johnson & Johnson, et al., E.D. California, C.A. No. 2:14-01051 | Case No.:   3:16-cv-6695 (FLW)<br><br><br>Case No.    3:16-cv-7492 (FLW) |

-----------------------------------------------------------------------------------------------------

## CONSUMER PROTECTION PLAINTIFFS' APPLICATION FOR APPOINTMENT OF TIMOTHY G. BLOOD AS INTERIM LEAD CLASS COUNSEL AND TO THE PLAINTIFFS' STEERING COMMITTEE

-----------------------------------------------------------------------------------------------------

Timothy G. Blood
Paula R. Brown
BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
T: 619/338-1100
F: 619/338-1101
tblood@bholaw.com
pbrown@bholaw.com

*Attorneys for Plaintiffs*
*Barbara Mihalich and Mona Estrada*

(Additional Counsel on Signature Page)

0

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

III.    ARGUMENT .........................................................................................................2

        A.     Mr. Blood Is Highly Experienced in Leading and Successfully Resolving Complex Consumer Class Action Involving Claims Similar to Those at Issue in This MDL ...........................................................................................3

        B.     Mr. Blood's Advancement of the Matter ..............................................6

        C.     Mr. Blood's Firm Is Well-Capitalized and Has the Demonstrated Willingness and Ability to Expend the Resources Required to Advance the Litigation ..............................................................................................7

IV.    CONCLUSION .....................................................................................................7

00112195

I.       INTRODUCTION

This MDL proceeding involves both personal injury cases and consumer protection class actions that generally relate to the sale of talc-based baby powder. There are two Consumer Protection Actions currently in this MDL – *Mihalich v. Johnson & Johnson*, No. 3:13-cv-00600 (S.D. Ill.) and *Estrada v. Johnson & Johnson*, No. 2:14-cv-01051 (E.D. Cal.). Plaintiffs in the Consumer Protection Actions respectfully request appointment pursuant to Fed. R. Civ. Proc. 23(g) of Timothy G. Blood of Blood Hurst & O'Reardon, LLP as Interim Lead Class Counsel for the Consumer Protection Actions and appointment to the Plaintiffs' Steering Committee ("PSC") for formal coordination with the personal injury cases.

Mr. Blood readily meets the criteria for appointment as Interim Lead Class Counsel under Rule 23(g). He is recognized nationally for his ability to lead and successfully resolve complex consumer class action cases, including in complex multi-district litigation. Mr. Blood has spent his career litigating on behalf of consumers and has achieved extraordinary results in numerous class actions involving deceptive trade practices and false advertising similar to those at issue here. He has also achieved successful recoveries in class actions adjudicated in MDL matters, and is well-versed in Third Circuit, local, and MDL practice and procedure. In light of these accomplishments, all counsel for the Consumer Protection Action plaintiffs support his appointment and defendants in the Consumer Protection Actions do not oppose the appointment.

Mr. Blood has already invested substantial resources towards advancing the litigation. With the assistance of co-counsel, Mr. Blood has briefed four rounds of motions to dismiss, engaged in discovery, consulted with and retained experts, and coordinated litigation efforts with attorneys in the personal injury cases.

For these reasons, more fully explained below, the Consumer Protection Action plaintiffs

request that Mr. Blood be appointed Interim Lead Class Counsel for the Consumer Protection Actions and to the PSC to efficiently and effectively coordinate with the personal injury cases.

## II.   STATEMENT OF FACTS

Each of the Consumer Protection Actions was brought as a class action under state consumer protection laws generally alleging that Johnson & Johnson and Johnson & Johnson Consumer, Inc. (together, "J&J") violated these laws by selling its talc-based Baby Powder through false advertising, including implied advertising messages that the products are safe to use and omitting material facts that using cosmetic talc in the very manner intended can result in an increased risk of ovarian cancer. Unlike the personal injury actions, the Consumer Protection Actions concern the sale of a falsely advertised product and seek traditional legal and equitable relief available under the state consumer protection laws, and not personal injury damages.

The plaintiffs in both Consumer Protection Actions are represented by the same counsel and all agree that Mr. Blood should be appointed Interim Lead Class Counsel.

## III.   ARGUMENT

When appointing plaintiffs' interim lead counsel, courts generally consider: (1) counsel's experience in litigating class actions, other complex litigation, and the type of claims asserted in the action; (2) counsel's knowledge of applicable law; (3) the work counsel performed in investigating potential claims relating to the action; (4) counsel's ability to commit sufficient resources to represent the class; and (5) any other matters pertinent to counsel's ability. Fed. R. Civ. P. 23(g)(1); *Waudbey v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175-76 (D.N.J. 2008).

Mr. Blood's experience leading and successfully resolving complex class actions, familiarity with applicable law, proven willingness and ability to commit the necessary resources

00112195

to ensure the vigorous prosecution of this matter, and demonstrated ability to work cooperatively with others, support that Mr. Blood is well-qualified to serve as Interim Lead Class Counsel.

        **A.**    **Mr. Blood Is Highly Experienced in Leading and Successfully Resolving Complex Consumer Class Actions Involving Claims Similar to Those at Issue in This MDL**

Mr. Blood has extensive experience litigating a variety of significant class actions with an emphasis on the type of state consumer protection claims at issue here. As detailed below, and in the resume submitted to the Court as Exhibit A, this experience includes leading a team of lawyers in multistate litigation to obtain the largest food industry false advertising recovery in history. In another first for consumer protection, Mr. Blood has also partnered with the Federal Trade Commission, with one case resulting in the largest false advertising recovery in FTC history.

Mr. Blood has exhibited the ability to successfully and efficiently lead by coordinating with groups of plaintiffs' counsel and defendants. Examples include an MDL proceeding procedurally similar to this one, *In re Hydroxycut Mktg. and Sales Practices Litig.*, MDL No. 2087 (S.D. Cal., Hon. Ted Moskowitz), where he led all discovery, motion practice, and settlement negotiations for the class actions from inception. This required coordination of dozens of separately filed consumer class actions from most of the states with numerous plaintiffs' counsel and counsel from hundreds of parallel personal injury actions. Mr. Blood coordinated efforts between the consumer class actions and personal injury cases to effectively and efficiently move the litigation forward.

Similarly, in *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, MDL No. 2258 (S.D. Cal.), Judge Anthony J. Battaglia selected a six member steering committee to run the case. Mr. Blood was appointed to the steering committee, which was the group that led

00112195

the case, but also gave Mr. Blood authority and duties beyond those of the steering committee members, including responsibility for actively coordinating discovery, motion practice, and settlement among the other appointed steering committee members.

As one of two lead class counsel and a member of plaintiffs' steering committee in the California statewide coordinated action, *In re Toyota Motor Cases*, JCCP No. 4621 (Cal. Super. Ct., Los Angeles Cnty., Hon. Anthony J. Mohr), Mr. Blood was responsible for litigating the consumer class actions brought on behalf of California owners/lessees of Toyota vehicles relating to unintended acceleration. This required extensive coordination with other plaintiffs' counsel, including the court-appointed leaders of the parallel MDL action pending in the Central District of California.

Confidence in Mr. Blood's ability in consumer protection actions extends to the primary federal agency tasked with consumer protection, the Federal Trade Commission ("FTC"), and other government agencies. As lead counsel, Mr. Blood has worked with the FTC and nearly all of the state attorneys' general (or corresponding state consumer protection offices) in a coordinated effort to resolve corresponding public and private false advertising actions brought on behalf of consumers. As lead counsel in *In re Skechers Toning Shoes Prods. Liab. Litig.*, MDL No. 2308 (W.D. Ky., Hon. Thomas B. Russell) and *In re Reebok Easytone Litig.*, No. 4:10-cv-11977 (D. Mass., Hon. F. Dennis Saylor), Mr. Blood worked with the FTC in a unique public-private partnership to obtain record setting recoveries for consumers. The class action settlement in *In re Skechers* was the largest false advertising recovery in the history of the FTC.

Other recent appointments as lead class counsel in national or multistate consumer class actions involving falsely advertised consumer products include *Mullins v. Premier Nutrition Corp.*, No. 3:13-cv-01271 (N.D. Cal., Hon. Richard Seeborg) (false advertising concerning

00112195

glucosamine/chondroitin supplement); *Rikos v. The Procter & Gamble Co.*, No. 1:11-cv-226 (S.D. Ohio, Hon. Timothy S. Black)( false adverting concerning probiotic dietary supplement); *Murr v. Capital One Bank (USA), N.A.*, No. 1:13-cv-1091 (E.D. Va., Hon. Leonie M. Brinkema) (consumer protection claims involving credit cards); *Johns v. Bayer Corp.*, No. 09-cv-1935 (S.D. Cal., Hon. Anthony J. Battaglia) (certifying UCL and CLRA claims in action involving false advertising); *Rosales v. FitFlop USA LLC*, No. 11-cv-0973 (S.D. Cal., Hon. Thomas J. Whelan) (nationwide false advertising action); *Johnson v. Gen. Mills, Inc*., No. 8:10-cv-61 (C.D. Cal., Hon. Cormac J. Carney) (certifying UCL and CLRA claims in action involving false advertising); *In re Enfamil Lipil Mktg. and Sales Practices Litig*., MDL No. 2222 (S.D. Fla., Hon. James I. Cohn) (false advertising and labelling of infant formula).

Mr. Blood is also responsible for a number of favorable published appellate decisions. A partial list of precedent-setting consumer protection decisions relevant to this matter, include: *Rikos v. P&G*, 799 F.3d 497 (6th Cir. 2015) (consumer protection and false advertising), *cert. denied*, 2016 U.S. LEXIS 2244 (U.S. Mar. 28, 2016); *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013) (consumer protection); *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) (consumer protection and false advertising); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) (consumer protection and false advertising); *McKell v. Wash. Mut. Bank, Inc.*, 142 Cal. App. 4th 1457 (2006); *Lebrilla v. Farmers Grp., Inc.*, 119 Cal. App. 4th 1070 (2004); and *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496 (2003) (consumer law and false advertising).

Finally, Mr. Blood brings to this action a demonstrated capacity for a productive, cooperation-based approach to litigation that is essential to efficiently handling complex matters such as an MDL proceeding. *See* Juan Carlos Rodriguez, *Titan of the Plaintiffs Bar: Tim Blood*,

00112195

Law360 (Sept. 25, 2014), http://www.law360.com/articles/580600/titan-of-the-plaintiffs-bar-tim-blood. Mr. Blood's ability to work productively with defense counsel in false advertising and consumer product cases such as this also is demonstrated by the regular invitations he receives to speak at organizations such as the Grocery Manufacturers Association, the primary trade group for food, beverage, and consumer product companies. His ability to productively lead other lawyers is also demonstrated by his involvement in bar activities, including serving as the 2015 president of the Consumer Attorneys of San Diego and an executive officer from 2013 to the present of Consumer Attorneys of California.

**B.     Mr. Blood's Advancement of the Matter**

As repeatedly demonstrated in other cases, Mr. Blood and his firm are willing and able to commit the necessary resources to this litigation to adequately represent plaintiffs and the proposed classes through trial and, if needed, on appeal.

Mr. Blood and his firm have committed appropriate, yet substantial time and resources to organizing and working with the other Consumer Protection Action plaintiffs' counsel toward the advancement of the litigation, investigating and researching the potential legal theories and claims at issue and researching and reviewing information related to the factual issues of this litigation.

Mr. Blood and his firm diligently devoted substantial time and effort to investigating the facts and potential claims at issue including, gathering and reviewing numerous documents from public sources, reviewing numerous scientific studies on the health effects at issue, consulting with experts, researching and considering potentially applicable legal theories and claims, and considering and discussing the most efficient means to streamline the prosecution of the Consumer Protection Actions. Mr. Blood and his firm, along with the assistance of co-counsel,

6

have also briefed four rounds of motions to dismiss, engaged in discovery, and began to prepare for class certification. They have created a document database and have been reviewing the documents in that database.

Organizing plaintiffs' counsel is crucial to litigating complex class actions in an efficient and effective manner – particularly in an MDL like this involving both personal injury and consumer protection cases. Recognizing this fact, before the start of the MDL process and during the MDL process, Mr. Blood reached out to personal injury plaintiffs' counsel to organize and coordinate efforts. As a result, Mr. Blood has an excellent working relationship with the Proposed Lead Counsel for the personal injury plaintiffs and has already begun to coordinate the litigation so that costs and efforts, to the extent they can be shared, are not duplicated.

### C.   Mr. Blood's Firm Is Well-Capitalized and Has the Demonstrated Willingness and Ability to Expend the Resources Required to Advance the Litigation

Mr. Blood is willing and able to expend the necessary resources to ensure the vigorous prosecution of Consumer Protection Plaintiffs' claims. Mr. Blood's resume (Ex. A) demonstrates his records of success leading and funding complex consumer class action cases against some of the largest and wealthiest corporations in the world. The experience here will be no different. Mr. Blood and his firm possess and will devote the resources necessary to fund the Consumer Protection Actions through pretrial, trial, and appeals.

### IV.   APPOINTMENT OF MR. BLOOD TO THE PSC IS APPROPRIATE

Consumer Protection Plaintiffs also ask that Mr. Blood be appointed to the PSC to permit formal coordination of the Consumer Protection Actions with the personal injury cases. Coordination is particularly important with regard to discovery. Although there is overlap, each set of cases has different discovery needs and different emphasis within a topic of discovery with regard to certain documents or witnesses. If discovery is not coordinated, a witness may end up

7

00112195

being deposed twice, documents inefficiently produced or reviewed, or third parties inefficiently subpoenaed. Mr. Blood's presence on the PSC will ensure that the cooperative approach the lawyers in both sets of cases have taken to date continues and that both sets of cases are effectively and efficiently coordinated.

## V.   CONCLUSION

For the foregoing reasons, the Court should appoint Timothy G. Blood pursuant to Rule 23(g) as Interim Lead Class Counsel for the Consumer Protection Actions, and to the Plaintiffs' Steering Committee.

Respectfully submitted,

Dated: November 21, 2016

BLOOD HURST & O'REARDON, LLP
Timothy G. Blood
Paula R. Brown

By:                s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
T: 619/338-1100
*Attorneys for Plaintiffs*
*Barbara Mihalich and Mona Estrada*

GOLDENBERG HELLER ANTOGNOLI
& RWOLAND, P.C.
Mark C. Goldenberg 300990221
Thomas P. Rosenfeld #06301401
Kevin P. Green #6299905
222 South State Route 157
Edwardsville, IL  62025
T: 618/656-5150
*Attorneys for Plaintiff Barbara Mihalich*

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
W. Daniel "Dee" Miles, III
Lance C. Gould
Alison Douillard Hawthorne
272 Commerce Street
Post Office Box 4160
Montgomery, AL 36103

00112195

T: 334/269-2343

THE SMITH LAW FIRM
Allen Smith, Jr.
618 Towne Center Blvd., Suite B
Ridgeland, MS  39157
T: 601/952-1422
*Attorneys for Plaintiff Mona Estrada*

00112195

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the United States District Court, District of New Jersey, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on November 21, 2016.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

00112195

# Exhibit 18

Sindhu S. Daniel

**Introductory Blurb**
Sindhu Daniel is a shareholder and co-manages the Pharmaceutical Litigation Group at Baron & Budd. For the past 16 years, Sindhu's practice has been concentrated in complex personal injury litigation involving pharmaceutical drugs and medical devices. She has played significant roles in cases involving the marketing practices and product liability issues of companies which make drugs and devices like Vioxx, Tylenol, Granuflo, Fosamax, Celebrex, and total Hip and Knee Replacements .

**Full Biography**
Sindhu Daniel has a passion for representing people harmed by big pharmaceutical companies which have marketed their products as safe when they are not or have otherwise misrepresented the efficacy and toxicity of their medical commodities. Over the course of her career Ms. Daniel has played significant roles in complex multi-district litigation involving Vioxx, Fresenius Granuflo/Naturalyte dialysis products,  Actos, DePuy Orthopaedics and Celebrex, to name a few. Among her work on numerous settlements, she was instrumental in the  $4.85 billion settlement in *In Re: Vioxx Products Liability Litig.* (E.D. La, MDL No. 1657), involving injuries of heart attack, stroke and sudden cardiac death caused by the pain killer's blockage of an important blood pressure regulating enzyme in the body, a $2.5 billion settlement in *In Re: DePuy Orthopaedics ASR Products Liability Litig.* (N.D. Ohio, MDL No. 2197), involving injuries caused by design flaws in hip implants, and a substantial settlement in *In Re: Fosamax Products Liability Litig.* (S.D.N.Y, MDL No. 1789), involving the injury of osteonecrosis of the jaw.

Ms. Daniel has also served as co-lead negotiator on behalf of a large group of plaintiffs in a case involving severe and permanent injuries caused by transvaginal mesh implants. She was instrumental in building consensus with other plaintiffs' attorneys and actively led negotiations with defendants. In addition, Ms. Daniel has extensive experience in devising settlement matrices used to allocate funds in pharmaceutical and medical device mass torts. She has also successfully negotiated numerous confidential settlements in complex mass tort litigations.

In 2015, Sindhu Daniel was appointed as a Plaintiff's Steering Committee (PSC) member by the Honorable Judge Eldon E. Fallon in *In Re: Xarelto (Rivaroxaban) Products Liability Litigation* (E.D. La., MDL No. 2592), involving uncontrolled bleeding and a tenfold increase in the risk of wound infection following certain surgeries. She currently holds positions as co-chairs of the Administrative Committee and Privilege-Log Subcommittee. Additionally, as a member of the Bellwether Committee, Ms. Daniel serves as the point person between plaintiffs and MDL Centrality, an online exchange portal that facilitates the assembly, organization, inventory, exchange, and analysis of massive amounts of data and documents, and provides an automated method to serve, store, monitor and use Plaintiff and Defendant Fact Sheet information. In this capacity, Ms. Daniel organizes and evaluates large amounts of data and provides critical case information to her respective plaintiff's committees which is used to devise bellwether strategy and analyze cases for trial selection.  In 2016, she was appointed as a PSC member by the Honorable Kathryn Vratil in *In Re: Ethicon, Inc., Power Morcellator Products Liability Litigation* (D. Kansas, MDL No. 2652).

Ms. Daniel was also appointed by the Plaintiffs' Executive Committee to serve as co-chair of the Plaintiff's Bellwether Committee in *In Re: Fresenius Granuflo/Naturalyte Dialysis Products Liability Litig.* (D. Mass., MDL No. 2428), which involves sudden, fatal heart attacks caused by drugs used to neutralize the buildup of acid in the body during kidney dialysis.  As part of her responsibilities on these important cases, Ms. Daniel has worked with her colleagues to develop case evaluation grids instrumental in tracking similar themes among large pools of plaintiffs.

Serving in these leadership roles, Ms. Daniel routinely navigates the intricate issues which frequently present themselves in complex mass torts. She works closely with other plaintiffs' attorneys to build consensus on a coordinated approach to litigation. With such extensive experience, Ms. Daniel is a frequent speaker and presenter at various continuing legal education seminars and webinars which deal with issues pertaining to emerging mass tort litigation. She has also been invited to share her knowledge by lecturing at national litigation seminars.

Ms. Daniel graduated from Temple University in Philadelphia, Pennsylvania in 1991 and Temple University James E. Beasley School of Law in 1994.  She is licensed in Pennsylvania, New Jersey and Michigan.

**Education**
Temple University School of Law, (J.D. 1994)
Temple University (BA 1991)

**Bar and Court Admissions**
Michigan
New Jersey
Pennsylvania

| | BARON & BUDD, P.C.® | |
|---|---|---|
| www.baronandbudd.com | 3102 Oak Lawn, Ave, Suite 1100 | Dallas, TX  75219-4281 |

Tel:  214.521.3605
Fax: 214.520.1181



**Baron & Budd's Practice and Accomplishments**

**FIRM OVERVIEW**

Baron & Budd, P.C. is among the largest and most accomplished plaintiffs' law firms in the country. With almost 40 years of experience, Baron & Budd has the expertise and resources to handle complex litigation throughout the United States. As a law firm that takes pride in remaining at the forefront of litigation, Baron & Budd has spearheaded many significant cases for entities and individuals.

Since the firm was founded in 1977, Baron & Budd has achieved substantial national acclaim for its work on cutting-edge litigation:

- In 2016, shareholders Russell Budd and Thomas Sims were appointed to the Plaintiffs' Steering Committee in litigation involving health issues linked to Fluoroquinolone use; Russell Budd was also appointed Plaintiffs' Co-lead Counsel in this litigation.

- In 2016, shareholder Carla Burke Pickrel was named to the named to the National Trial Lawyers Top 100 Trial Lawyers List for her tireless work representing hundreds of public entities over more than a decade in a wide variety of cases involving drinking water contamination from dangerous chemicals such as atrazine, PCE, MTBE and PCBs.

- In 2016, shareholder J. Todd Kale was named to the National Trial Lawyers Top 100 Trial Lawyers List for his work fighting against companies that knowingly exposed people to asbestos. Kale has spent more than two decades helping victims of asbestos exposure and their families.

- In 2016, shareholder Roland Tellis was appointed to the Plaintiffs' Steering Committee in litigation involving the marketing and sales practices of Volkswagen's "clean diesel" vehicles.

- In 2015, shareholder Russell Budd was appointed to the Plaintiffs' Steering Committee in litigation involving health issues linked to the drug Zofran.

- In 2015, shareholder Russell Budd was appointed to the Plaintiffs' Steering Committee in litigation involving health issues linked to Inferior Vena Cava Filters (IVCs).

**BARON & BUDD, P.C.®**

- Shareholder Scott Summy was selected to the 2016 edition of *The Best Lawyers in America*. Shareholders Russell Budd and Scott Summy were both selected to *Best Lawyers* for 2014 and Summy has been selected to *Best Lawyers* every year since 2006.

- In 2014 Baron & Budd was named to the list of America's Elite Trial Lawyers by *The National Law Journal* in partnership with Law.com. This illustrious list is comprised of 50 law firms that have achieved significant results on behalf of plaintiffs within the previous year and have an established track record of delivering impressive results.

- In 2013, Baron & Budd was a finalist for the Public Justice Trial Lawyers of the Year Award for the firm's work on a $105 million settlement on behalf of hundreds of public water providers across the Midwest who are struggling with atrazine contamination in their source water.

- In 2013, shareholder Burton LeBlanc was appointed to the Plaintiffs' Steering Committee in litigation involving health issues linked to dialysis product GranuFlo and its sister product, NaturaLyte.

- In 2002-2006, 2008, 2011-2012, Baron & Budd was named to the *National Law Journal*'s "Plaintiffs' Hot List" of exemplary plaintiffs' firms in the United States.

- In September 2010, Baron & Budd was one of only four firms chosen to serve on both the Plaintiffs' Executive Committee and the Plaintiffs' Steering Committee of the Multi-District Litigation in the Gulf Oil Spill litigation.

- In 2009, Baron & Budd was a finalist for the Public Justice Trial Lawyer of the Year Award for its recovery of more than $400 million on behalf of more than 150 municipalities from 17 states regarding contamination of groundwater by the gasoline additive MTBE.

- In 2007, shareholders Russell Budd and Burton LeBlanc were among 14 attorneys nationwide to be honored with the Wiedemann Wysocki National Finance Council Award from the American Association for Justice in recognition of their commitment to the legal profession and their efforts to improve the civil justice system. LeBlanc was recognized for a second time with the award in 2010.

- In 2006, a team of Baron & Budd attorneys received the esteemed Trial Lawyer of the Year Award by the legal non-profit organization, Public Justice, for its work on Arizona groundwater contamination litigation that spanned 21 years, involved over 1,600 plaintiffs, and resulted in a total recovery of more than $150 million.

**BARON & BUDD, P.C.®**

- In 2004, *American Lawyer* named Baron & Budd one of the sixteen most successful plaintiffs' firms in the country.

- Baron & Budd has been repeatedly selected by *The Legal 500* as one of the country's premier law firms in mass tort claims and class action litigation.

- Baron & Budd is serving, or has served, on the Plaintiffs' Steering Committee's for the following: Fluoroquinolones, GranuFlo, IVC Filters, Ethicon Power Morcellator, Transvaginal Mesh, Zofran, BP Oil Spill, Chinese Drywall, Takata Air Bags and Volkswagen Clean Diesel.

- Shareholder Burton LeBlanc served as president of the American Association of Justice (AAJ) in 2013. AAJ is the largest trial lawyer non-profit group in the United States.

Additional information about Baron & Budd is available on the firm's website, www.baronandbudd.com.

BARON & BUDD, P.C.®

# SUMMARY OF SIGNIFICANT AREAS OF LITIGATION

## *FINANCIAL LITIGATION*

### $50 Million Wells Fargo Settlement Regarding Improper Markup of Fees for Broker Price Opinions

Baron & Budd attorneys reached a $50 million settlement with Wells Fargo Bank, resolving a case alleging improper markups of fees for broker price opinions (BPOs). A BPO is an informal type of home appraisal prepared by a real estate broker that a lender will typically demand once a borrower defaults on a residential loan. Plaintiffs in the case alleged that their mortgage agreements allowed Wells Fargo to pass through the costs of obtaining the BPOs from third party real estate brokers, but Wells Fargo secretly charged more for the BPOs than the company paid for them. Many homeowners sued, alleging violations of the Racketeering Influenced and Corrupt Organizations (RICO) Act as well as fraud. Plaintiffs' RICO claim was certified as a class action months earlier. Under the terms of the settlement, Wells Fargo will be required to automatically mail checks to more than 250,000 mortgage holders, and class members will not need to fill out a claim form or provide any other type of documentation in order to obtain compensation.

### $410 Million Bank of America Settlement Over Excessive Bank Overdraft Fees

Baron & Budd attorneys worked closely with other law firms in a class action lawsuit asserting manipulation of data by banks to increase revenue from overdraft fees. The firm helped achieve a $410 million settlement with Bank of America, the largest bank involved in the bank overdraft fee litigation. The case alleged that Bank of America, along with many other major banks, intentionally reordered debit card transactions to promote overdraft fees. Not only did the case result in repayment of most of these charges, but it also led to widespread changes in the banking system. Because of this lawsuit, many large banks changed their overdraft fee policies, no longer "reordering debits" and not offering "courtesy" overdraft services without customer consent.

### $110 Million Settlement with JP Morgan Chase Over Overdraft Fees Plus $150 Million in Business Practice Changes

Baron & Budd served on the Plaintiffs' Steering Committee in a class action lawsuit asserting manipulation of data by numerous national banks in order to increase overdraft fee revenue. The firm led the negotiations in a $110 million settlement with JP Morgan Chase regarding the bank's manipulative overdraft fee policies. The case alleged that JP Morgan Chase, along with a number of other banks, intentionally reordered debit card transactions to promote overdraft fees. Not only did the case result in repayment of many of these charges to consumers, it also led to widespread changes in the banking system, affecting virtually every American with a bank account. Because of the lawsuit, many large banks have

BARON & BUDD, P.C.®

changed their overdraft fee policies, no longer reordering debits and not offering "courtesy" overdraft services without customer consent. Also, as part of the negotiations, Chase agreed to not charge overdraft fees on debits of $5 or less.

In 2012, Baron & Budd lawyers were selected as finalists for the 2012 Trial Lawyer of the Year Award by the legal non-profit organization Public Justice for their groundbreaking work on the bank overdraft fee litigation.

Predatory Credit Card Practices

Baron & Budd represented the states of West Virginia, Mississippi and Hawaii in litigation against national banks and other financial institutions regarding their unfair and deceptive marketing practices related to their credit card service plans, including payment protection plans. These defendants have preyed upon unsuspecting consumers, including the elderly and the disabled, by charging them for products ancillary to their credit cards when the consumers either did not authorize such charges or could never qualify to benefit from them. The firm settled the state of West Virginia's claims in this litigation in 2013 for more than $12.5 million. In 2014, the firm settled the claims of the state of Mississippi for more than $15 million. The firm also settled the claims of the state of Hawaii in 2014 for more than $15.5 million.

Unlawful Default-Related Fees Charged to Home Mortgage Borrowers

Baron & Budd currently represents homeowners throughout the United States in three separate class action cases regarding unlawfully marked-up and unnecessary fees charged to borrowers who were late on their mortgage payments. The cases, which have been brought against Wells Fargo, JP Morgan Chase and Citi, assert that when borrowers fall behind on their mortgages, the banks assess fees for property preservation, maintenance and appraisal services. According to the lawsuits, however, in order to generate a profit, the banks add a mark-up to the cost of the services and they order them when they are unnecessary. Furthermore, the lawsuits assert that the banks use deceptive language on borrowers' statements to hide the true nature of the fees.

Manipulation of the London Interbank Offered Rate ("LIBOR")

Baron & Budd represents homeowners throughout the United States in a case regarding the unlawful manipulation of the London Interbank Offered Rate (the "LIBOR" rate) by sixteen different banks, including Bank of America, Citi and JP Morgan Chase. The LIBOR rate is one of the most popular benchmarks for adjustable rate mortgages. The case asserts that the banks' manipulation of the LIBOR rate caused homeowners to pay higher interest rates on their adjustable rate mortgage loans.

Stock Option Back-Dating

Baron & Budd achieved a $20 million settlement on behalf of individuals who purchased Semtech stock. Firm shareholder Burton LeBlanc served as co-lead

BARON & BUDD, P.C.®

counsel in the case. Plaintiffs in the case alleged that Semtech manipulated grant dates for stock options, which resulted in understatement of Semtech's compensation expenses and overstatement of its reported income.

<u>Protecting Shareholders' Interest in Corporate Transition</u>

As co-lead counsel in *In Re: 7-Eleven, Inc. Shareholders Litigation*, Baron & Budd represented shareholders in negotiations to increase the amount of an offer in a transaction turning a publicly-traded company into a privately-held entity. Baron & Budd achieved a $5 per share increase in the offer that provided an additional $145 million to 7-Eleven shareholders.

<u>Settlement of Mutual Fund Advisors' Breaches of Fiduciary Duties</u>

Baron & Budd represented shareholders in recovering funds in various mutual fund families against the fund advisors for their breach of fiduciary duties for failing to file proof of claim forms in settled securities cases for which the funds were eligible. Baron & Budd reached a series of confidential settlements that resulted in money being returned from the fund advisor to the mutual fund.

<u>Protecting Public Investors from Corporate Self-Dealing</u>

In 2010, Baron & Budd successfully protected the interests of public investors in Affiliated Computer Services, Inc. (ACS). While ACS was being sold to Xerox, ACS's management and largest shareholder negotiated a better price for their own shares as well as remarkable future employment compensation packages. The insiders at the same time voted to sell ACS at a price well below its fair market value, which would have forced public shareholders to sell their shares for less. Working with other national law firms, Baron & Budd was able to obtain $69 million in additional compensation for ACS public shareholders.

## *PHARMACEUTICAL AND MEDICAL DEVICE LITIGATION*

<u>Actos</u>

Baron & Budd attorneys represented hundreds of individuals who were harmed by diabetes drug Actos. In April 2014, a landmark settlement was reached in this litigation, requiring Takeda Pharmaceuticals and Eli Lilly & Co. to pay a combined $9 billion in punitive damages after a jury found that the companies hid the cancer risks associated with Actos use.

<u>Avandia</u>

Baron & Budd represented over 7,000 victims harmed by use of the diabetes drug Avandia. Shareholder Steve Baron was one of the lead negotiators of a nationwide settlement of Avandia cases favorable to victims.

BARON & BUDD, P.C.®

<u>$177 Million Settlement for Seven States Against Manufacturer GlaxoSmithKline</u>

Baron & Budd represented the states of Kentucky, Maryland, Mississippi, New Mexico, South Carolina, Utah and West Virginia in litigation regarding the fraudulent marketing of the diabetes drug Avandia by manufacturer GlaxoSmithKline. This result is the largest settlement of a pharmaceutical case ever recorded for several of the involved states. These seven states courageously chose to opt out of the 2012 multistate settlement and, as a result, each state received a much higher settlement than they otherwise would have received.

The lawsuit alleged that GlaxoSmithKline had misrepresented the safety and efficacy of the drug Avandia, stating that Avandia reduced adverse cardiac events, when actually it increases them.

Baron & Budd shareholders Russell Budd, Burton LeBlanc, Laura Baughman and of counsel Ann Saucer served as co-lead counsel in the litigation, alongside co-counsel and each state's Office of the Attorney General.

<u>Fen-Phen</u>

Baron & Budd played a leading role in representing people harmed by the diet drug Fen-Phen. The firm was instrumental in negotiating the Seventh Amendment to the AHP Settlement Agreement, which required the defendants to place an additional $1.275 billion into a trust for those affected. In addition, Baron & Budd settled Fen-Phen personal injury claims for approximately 3,300 individuals.

<u>Fluoroquinolone Antibiotics</u>

Baron & Budd represents many men and women who developed peripheral neuropathy as a result of Fluoroquinolone use.  Baron & Budd and co-counsel filed the first lawsuits in the country against Johnson & Johnson and Janssen Pharmaceuticals and Baron & Budd shareholders Russell Budd and Thomas Sims were appointed to the Plaintiffs' Steering Committee for *In Re: Fluoroquinolone Products Liability Litigation*, MDL 2642, and Russell Budd serves as Co-Lead counsel for Plaintiffs.

<u>GranuFlo</u>

Baron & Budd shareholder Burton LeBlanc was appointed to the Plaintiffs' Steering Committee in the litigation surrounding dialysis product GranuFlo and its sister product NaturaLyte. Baron & Budd also currently represents hundreds of individuals who were harmed by the use of GranuFlo in their dialysis treatments. Litigation is ongoing against the manufacturers of GranuFlo and NaturaLyte.

<u>Inferior Vena Cava Filter (IVC)</u>

Baron & Budd attorneys currently represent individuals with health issues related to faulty IVC filters.  Baron & Budd shareholder Russell Budd has been appointed to the Plaintiffs' Steering Committee for *In re: Cook Medical, Inc., IVC Filters*

BARON & BUDD, P.C.®

*Marketing, Sales Practices and Products Liability Litigation*, MDL 2570; and *In Re: Bard IVC Filters Products Liability Litigation*, MDL 2641. Baron & Budd shareholder Laura Baughman and associate Daniel MacDonald work closely with other members of the PSC on many aspects of these two multi-district cases, including discovery assessments, document review and taking depositions.

Lipitor

Baron & Budd attorneys currently represent hudndreds of individuals who developed Type II diabetes after taking the cholesterol-lowering drug Lipitor. Litigation is ongoing.

Risperdal

Baron & Budd represents men who developed abnormal breast growth after taking Risperdal, a medication that was frequently marketed for "off-label" uses. Baron & Budd has filed lawsuits for over 200 clients adversely affected by Risperdal use and litigation is ongoing in this matter.  The firm's attorneys are investigating potential claims on behalf of hundreds of individuals.

Transvaginal Mesh

Baron & Budd managing shareholder and co-founder Russell Budd serves on the Plaintiffs' Steering Committee in litigation regarding transvaginal mesh. Baron & Budd attorneys currently represent hundreds of individuals who have been harmed by the use of transvaginal mesh. Litigation is ongoing in this case.

Xarelto

Baron & Budd represents individuals that suffered severe internal bleeding as a result ingesting the blood thinner Xarelto.  Baron & Budd and their co-counsel are filing cases for clients and are investigating potential claims on behalf of hundreds of individuals.  Baron & Budd shareholder Sindhu Daniel works with the Plaintiffs' Steering Committee for *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, MDL 2592, on discovery and other issue affecting Plaintiffs nationwide.

Zofran

Baron & Budd attorneys represent children born with health issues and their parents as a result of the ingestion of Zofran during pregnancy.  Baron & Budd shareholder Russell Budd serves on the Plaintiffs' Steering Committee for *In Re: Zofran (Ondansetron) Products Liability Litigation*, MDL 2657.  Baron & Budd shareholder Sindhu Daniel and associate Daniel MacDonald work closely with other members of the PSC on many aspects this case, including discovery assessments and document review.

BARON & BUDD, P.C.®

Other Pharmaceutical and Medical Devices

Baron & Budd is at the forefront of pharmaceutical and medical device litigation and is continually adding new case areas to its litigation practice. Other areas of litigation include (but are not limited to): Benicar, Depakote, Defibrillator Implants, Eliquis, Essure, Metal on Metal Hip Replacements, Invokana, Low Testosterone, Power Morcellator, Pradaxa, Proton Pump Inhibitors, Talc, and Zoloft.

## *ENVIRONMENTAL LITIGATION*

Lead Role in the BP Gulf Oil Spill Litigation

Immediately after the explosion that caused the massive BP Gulf Oil Spill, Baron & Budd got to work, helping individuals and businesses that had sustained economic and/or physical damages. Scott Summy, shareholder and head of Baron & Budd's environmental litigation group, serves on the Plaintiffs' Executive Committee and the Plaintiffs' Steering Committee in the oil spill litigation. The firm currently represents hundreds of individuals and companies in ongoing litigation.

$420 Million National MTBE Settlement

In May 2008, Baron & Budd helped negotiate a $423 million settlement on behalf of more than 150 water providers in 17 states regarding Methyl Teritary Butyl Ether (MTBE) contamination in groundwater. The settlement, reached with many of the country's leading gas companies, requires gasoline refiners to pay water providers' costs to remove MTBE from public drinking water wells and for refiners to pay for treatment of qualifying wells that may become contaminated within the next 30 years.

Plaintiffs' cases were initially filed in their respective state courts before they were later transferred to a Multi-District Litigation (MDL) court in New York. Baron & Budd shareholder Scott Summy, who filed the first-ever MTBE case in the United States, served as national co-lead counsel. Baron & Budd shareholders Celeste Evangelisti, Cary McDougal, Laura Baughman, Carla Burke Pickrel, Stephen Johnston also represented the plaintiffs.

In 2009, the attorneys who were involved in the MTBE litigation were recognized as finalists for the Trial Lawyer of the Year Award, an annual award given by Public Justice, a non-profit legal organization, for outstanding contributions to the public interest.

$105 Million Atrazine Settlement

Baron & Budd served as Class Counsel in litigation regarding the contamination of approximately 1,200 public drinking water systems by the chemical atrazine. Atrazine is a widely used agricultural chemical that is commonly applied to crops throughout the United States to control weeds. Despite the threat of water

BARON & BUDD, P.C.®

contamination and industry knowledge of the environmental risks, approximately 77 million pounds of atrazine are sprayed on U.S. crops each year.

The firm represented over thirty water providers primarily throughout the Midwest, including Missouri, Kansas, Ohio and Illinois. In 2012, the Court approved a $105 million settlement for water systems that have detected atrazine in their water supplies to reimburse the costs of removing the chemical from finished water.

In 2013, the attorneys who worked on the atrazine contamination litigation were recognized as finalists for the Trial Lawyer of the Year Award by legal non-profit organization Public Justice.

<u>Toxins in Schools</u>

In 2014, shareholder Scott Summy filed a lawsuit against the Monsanto Company and its corporate successors on behalf of the Town of Westport and Westport Community Schools in Massachusetts regarding the use of polychlorinated biphenyls (PCBs) in schools. According to the court documents, Monsanto allegedly knew about the dangers of PCBs for decades, but failed to warn people of these dangers. The goal of the lawsuit is to force Monsanto to pay for the removal of the PCBs from the schools.

According to the EPA, PCBs are probable human carcinogens and can have serious toxic effects on a person's immune system, nervous system, endocrine system and reproductive system, particularly in developing schoolchildren.

Unfortunately, thousands of schools across America likely contain PCBs. However, because there is no requirement to test, many schools aren't aware of its existence. Baron & Budd intends to fight for awareness and remediation.

<u>Clean Air for Schoolchildren</u>

In 2008, Baron & Budd shareholders Laura Baughman and Thomas Sims represented three San Francisco Bay-area environmental organizations in negotiating a settlement with Laidlaw Transit, Inc. In the settlement, Laidlaw agreed to invest a minimum of $4.7 million dollars over five years to retrofit older buses in its California fleet with air pollution control devices to reduce harmful diesel exhaust. Laidlaw also agreed to invest $23.6 million in its fleet over seven years to either retrofit additional buses or purchase new buses that meet the most stringent air pollution standards in the country, which would ultimately protect young children from being exposed to harmful diesel exhaust. The following year, Baron & Budd settled with two additional bus companies, which helped ensure that even more polluting buses would be replaced with newer, cleaner models or retrofitted with pollution control devices.

BARON & BUDD, P.C.®

Clean Groundwater in California

In 2004, Baron & Budd shareholders Scott Summy and Laura Baughman negotiated a string of settlements on behalf of California non-profit Communities for a Better Environment (CBE) that required several major oil companies to upgrade gas station storage tanks, clean up groundwater contamination and take steps to prevent gasoline leakage from thousands of underground storage tanks in California. Monetary and injunctive relief granted in this case was valued at $107 million.

MTBE Settlement on Behalf of the City of Santa Monica

In 2003, Baron & Budd represented the City of Santa Monica in a MTBE contamination settlement with several major oil companies. MTBE had contaminated five of Santa Monica's 11 wells, forcing the City to import water for $3 million a year.

In total, the oil companies paid $250 million, which provided funds for Santa Monica to build a water treatment system to clean MTBE from its supply, to continue buying water until the supply was deemed clean and to monitor groundwater quality during and after the cleanup.

The Exxon Valdez Oil Spill

In 1993, Baron & Budd was awarded the Public Justice Award for "outstanding contribution to environmental protection and public interest" for its work on the rehabilitation of the damage caused by the Exxon Valdez oil spill in Alaska's Prince William Sound.

The Exxon Valdez oil spill occurred in remote Prince William Sound, Alaska, on March 24, 1989 when the Exxon Valdez, an oil tanker bound for Long Beach, California, struck Prince William Sound's Bligh Reef, ran aground and spilled nearly 11 million gallons of crude oil.

Similar to the 2010 BP Gulf Oil Spill, the cause of Exxon Valdez spill can be pointed primarily at the oil company for neglecting to properly adhere to safety regulations. Exxon failed to repair the tanker's Raycas radar system, which would have warned the crew of an impending collision with the Bligh reef, because it was just too expensive to fix and operate. The tanker had been operating for more than a year without a functioning Raycas radar.

As a result of the Valdez spill, the Oil Pollution Act of 1990 (OPA) was passed, allowing those who lost income or profits because of an oil spill to recover compensation from those responsible for the spill.

BARON & BUDD, P.C.®

Groundbreaking Water Contamination Case in Tucson, Arizona

In 1985, Baron & Budd filed a lawsuit on behalf of more than 1,600 Tucson-area residents against an aircraft manufacturer, the City of Tucson and the Tucson Airport Authority over TCE contamination of the community's groundwater. Since Tucson is the largest city in the United States that receives all of its drinking water from underground sources, the industrial solvents used at the airport and aircraft company were of particular concern. Spilled on the ground and seeping through the sandy soil into the groundwater, the invisible yet harmful contaminants caused several unusual forms of cancer and other diseases at almost epidemic levels, particularly among children in the area.

The firm's cutting-edge work on this case not only brought compensation to individuals to help them deal with the consequences of their injuries, it also helped define Arizona law on pollution coverage issues. The litigation spanned 21 years, involved more than 1,600 plaintiffs and resulted in a more than $150 million total recovery for the people of Tucson.

As a result, the public interest legal organization Public Justice presented the Baron & Budd legal team with its Trial Lawyer of the Year Award in 2006. The award recognizes the trial attorney or attorneys who have made the greatest contribution to the public interest each year by trying or settling a precedent-setting case or group of cases.

### *TOXIC EXPOSURE LITIGATION*

Closing Down the West Dallas Lead Smelter

In the West Dallas Lead Smelter case, Baron & Budd took on local environmental contamination to protect future generations of children from exposure to lead. One of Dallas' largest public housing projects sat in a low-income neighborhood directly across the street from a secondary lead smelter. For many years, the smelter converted used automotive batteries into lead components for resale. Particulate emissions from the factory smokestacks literally blanketed the surrounding community with lead-bearing soot.

Baron & Budd represented more than 200 families in a lawsuit that ultimately closed the lead smelter and paid sizable confidential settlements to court-supervised trusts for 445 children affected by lead poisoning. Although the neurological damage to these children was irreversible, the funds recovered in the settlement have enabled the children to move into adulthood with medical, rehabilitative and vocational assistance. Closing the lead smelter and requiring the company to fund a community soil clean-up project helped prevent future damage to other neighborhood children.

Settlement for Central Texas Residents Harmed by Lead Exposure

Baron & Budd shareholder Laura Baughman represented more than 130 people who were exposed to high levels of lead and other toxic substances while growing

up in a small town in Central Texas. Baron & Budd obtained a sizeable confidential settlement for the firm's clients, providing them with the resources to help pay for rehabilitative, psychological and other medical expenses.

<u>Settlement for Harms Caused by Chemical Leaks</u>

Baron & Budd successfully represented more than 850 workers injured by exposure to ethylene dichloride (EDC) in Lake Charles, Louisiana as a result of the negligent and reckless conduct of Conoco, Inc., Condea Vista Chemical Company, and a number of contractors that caused one of the largest chemical spills in U.S. history. In addition to its status as a probable human carcinogen, EDC can cause serious damage to the heart, central nervous system, liver, kidneys, lungs, gastrointestinal system and commonly results in depression, memory loss and personality changes.

## *CONSUMER RIGHTS*

<u>Asbestos</u>

Years ago, Baron & Budd led the fight for victims' rights in two landmark Supreme Court victories, *Amchem Products v. Windsor* and *Ortiz v. Fibreboard Corp.,* which are still widely recognized as among the most significant appellate decisions for consumer rights.

*Ortiz v. Fibreboard Corp*., 526 U.S. 815, 119 S. Ct. 2295 (1999) was one of the last decisions handed down by the United States Supreme Court in 1999. The Court's 7-2 decision was reached after months of fierce debate over whether future claims by victims of asbestos exposure should be handled as a class action.

Baron & Budd led the charge to dismiss the Fibreboard mandatory class action settlement that would have severely limited the rights of people to pursue individual claims based on the severity of their specific illness and specific circumstances of their exposure.

Writing on behalf of the Court, Justice Souter questioned the fairness of the settlement because, if allowed to go forward, Fibreboard would essentially have had a "get out of jail free card." Fibreboard would have been able to settle all asbestos claims, including all future claims, with only $500,000 of the company's own money, thus retaining virtually all of its net worth at the expense of the victims of its asbestos-containing products.

The *Ortiz* decision corroborated another significant Supreme Court decision in which Baron & Budd also fought for victims' rights: *Amchem Products v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L.Ed2d 689 (1997).

<u>Food Product Litigation – Deceptive Advertising</u>

Baron & Budd represents consumers in several cases concerning deceptive and misleading advertising practices committed by food and beverage companies.

BARON & BUDD, P.C.®

These cases include an action against a popular protein drink company, which asserted that its meal replacement drinks and bars were unlawfully labeled "healthy" when, in fact, they contained levels of fat and saturated fat deemed to be excessive by the FDA for products labeled as "healthy", an action against a frozen potato company for allegedly misrepresenting that certain products were "all natural", although they contained a synthetic chemical preservative; and an action against Abbott Laboratories, which asserts that its "Ensure Muscle Health" drink misleads consumers about the products' promise that it contains an ingredient that will help the elderly rebuild strength.

Lancôme and Avon Anti-Aging Cream Multi-District Litigation – Deceptive Advertising

Baron & Budd attorneys are co-lead counsel for plaintiffs in class action lawsuits currently pending against Lancôme and Avon concerning certain anti-aging and wrinkle cream skincare products. According to the lawsuits, the companies market and advertise the purported unique age-defying benefits of the products to consumers using deceptive and misleading references to clinical studies, trials, tests, patents and other indicia of scientific credibility. But, as alleged in the complaints, the products do not, and cannot, provide the specific age-negating effects they promise to provide.

## VEHICLE LITIGATION

Attorneys at Baron & Budd represent owners and lessees of certain vehicles regarding the vehicle manufacturers' misrepresentations and failures to disclose material safety information. Baron & Budd attorneys represent owners and lessees of certain Nissan vehicles in a case alleging that the company failed to disclose its knowledge of a defective engine component that could lead to catastrophic engine failure. Baron & Budd attorneys represent owners and lessees of Ford, Lincoln and Mercury vehicles in cases concerning the MyFord Touch/MyLincoln Touch/MyMercury Touch systems, which use Microsoft's "Sync" software, an in-car communication system thought to put drivers at risk of an accident.

Takata Airbags

Baron & Budd, along with co-counsel Labaton Sucharow LLP and Podhurst Orseck P.A., filed the nation's first lawsuits in the Southern District of Florida and the Central District of California regarding the recall of Takata-brand air bags. Litigation is ongoing.

Volkswagen "Clean Diesel" vehicles

Baron & Budd attorneys represent owners of Volkswagen "Clean Diesel" vehicles in cases concerning allegations that Volkswagen installed software in these cars that allowed the vehicles to "cheat" emissions tests. Baron & Budd shareholder Roland Tellis was appointed to the Plaintiffs' Steering Committee in this litigation.

BARON & BUDD, P.C.®

Trucking Accident Litigation

Baron & Budd is investigating significant trucking accidents where someone has been seriously injured or even killed as a result of a collision involving a commercial truck. Baron & Budd attorneys and their co-counsel have filed several lawsuits on behalf of seriously injured clients and litigation is ongoing.

### *EMPLOYMENT LITIGATION*

Baron & Budd is not only dedicated to protecting a person's right to work in a safe workplace, but also to protecting a person's right to earn wages as required by law.

Overtime Violations

Baron & Budd currently represent workers in lawsuits regarding overtime pay, misclassification of workers and other violations of overtime pay laws.  Baron & Budd attorneys and their co-counsel have filed lawsuits on behalf of fast food workers, mechanics, healthcare workers, construction equipment workers and media company workers.  Litigation is ongoing.

WARN Act Violations

Many employees are unaware of their rights under the Worker Adjustment and Retraining Notification Act (WARN) of 1989, which requires many large employers to provide affected employees with at least 60 days' notice in the event of mass layoffs or plant closings.  Currently, under the provisions of the WARN Act, Baron and Budd is representing scores of oilfield workers denied the required 60-day notice when they were laid-off.

## THE FIRMS' SHAREHOLDERS

**Russell W. Budd** is a major force in the world of plaintiff's attorneys, having devoted his more than three-decade career to championing the rights of people and communities injured by corporate malfeasance. Currently Mr. Budd presides over one of the nation's largest plaintiff's firms, Baron & Budd, PC, headquartered in Dallas, Texas with offices in Austin, Texas; Los Angeles, California; Baton Rouge, Louisiana; and New Orleans, Louisiana.

Mr. Budd, a shareholder of Baron & Budd since 1985 and president and managing shareholder since 2002, has expanded the firm from its cornerstone asbestos practice to a national firm capable of tackling the biggest defendants in areas as diverse as pharmaceutical and medical device injury, water contamination, the BP Gulf oil spill, financial fraud and various other areas of practice.

Over the last decade, Mr. Budd has played significant roles in asbestos litigation on a national level. As chair and member of several asbestos creditors' bankruptcy committees, Mr. Budd successfully resolved over 100,000 victims' claims with some of Wall Street's biggest companies. Mr. Budd was the chief negotiator of a $4 billion national settlement with Halliburton that established a trust fund to protect present and future asbestos victims throughout the United States – the largest asbestos trust fund of its kind anywhere in the world. He was on the committee that negotiated a $3.9 billion settlement with United States Gypsum to benefit asbestos claimants. And he participated in negotiations that led W.R. Grace to agree to fund a bankruptcy trust on behalf of asbestos claimants with nearly $3 billion in cash and stock equity.

Under Mr. Budd's direction, Baron & Budd provided the initial funding for the launch of the International Pleural Mesothelioma Program at Brigham and Women's Hospital to research curative therapy for mesothelioma, a cancer caused by exposure to asbestos. The firm has also given generously to the Asbestos Disease Awareness Organization, Lung Cancer Alliance and to other asbestos awareness advocacy organizations.

Mr. Budd serves on the Board of Governors of the American Association for Justice (AAJ) and previously served on the Board of Directors and Executive Committee of the Texas Trial Lawyers Association (TTLA). He also served on the board of the National Comprehensive Cancer Network (NCCN) Foundation for two years.

On July 13, 2010, Mr. Budd was awarded the prestigious Harry M. Philo Trial Lawyer of the Year Award from the American Association for Justice (AAJ) at the organization's annual conference in Vancouver, BC. The award was presented in recognition of his dedicated and consistent leadership in protecting the rights of individuals through the civil-justice system. In 2007, he earned the prestigious Wiedemann Wysocki National Finance Council Award from the American Association for Justice, an award honoring attorneys for their commitment to the legal profession and their efforts to improve the civil justice system.

BARON & BUDD, P.C.®

Under Mr. Budd's leadership, Baron & Budd has won numerous awards. The firm was named by the *National Law Journal's* to its "Elite List" of plaintiffs' firms in the United States and has been included in the publication's Hot List eight times.

Mr. Budd and his wife are also involved in their local community. One of the causes closest to his heart is Habitat for Humanity, which gives hardworking Dallas families a chance at first-time home ownership. He has personally contributed generously to the "Building on Faith" project, a collaborative initiative between the Dallas Faith Communities Coalition (DFCC), the City of Dallas and Habitat for Humanity to build 100 affordable single-family homes in West Dallas. In addition, Mr. Budd has donated land to the City of Dallas that enabled the completion of a massive bike and hike trail.

In 2014, Mr. Budd, along with his wife, donated $2.5 million to Southern Methodist University in Dallas to endow The Budd Center for Involving Communities in Education. The Center is a radical concept that works closely with numerous non-profit organizations to help children exit poverty through education. Though initially focused on West Dallas, the program hopes to create a template for the nation in promoting truly substantial change.

**Steve Baron**, Baron & Budd shareholder, is an accomplished litigator known for his tenacity in pursuing justice for victims of corporate misconduct. He currently heads Baron & Budd's mesothelioma and asbestos practice.

As the head of Baron & Budd's litigation teams, Mr. Baron has helped build the firm's reputation as a watchdog for consumer protection.  Mr. Baron represents clients in cases that have resulted in some of the largest verdicts and settlements for people with mesothelioma and asbestos diseases.

Over the past decade, Mr. Baron has been the lead negotiator on many of the firm's mesothelioma settlements and has also been the clients' representative on all major bankruptcy creditor committees. He has represented the firm's clients in major bankruptcy negotiations with asbestos companies including W.R. Grace, Owens Corning, Pittsburgh Corning, Babcock & Wilcox Co., and Halliburton.

Mr. Baron served as a lead negotiator in a landmark case against Halliburton that resulted in a $4 billion settlement, helping to bring financial compensation to tens of thousands of asbestos cancer victims. The Halliburton settlement is still one of the largest asbestos settlements on record.

Mr. Baron earned a business degree from the University of Texas at Austin (1986) and a JD from the University of Texas School of Law (1988).  He is licensed to practice in Texas, New York and Pennsylvania.

**Scott Summy** is a shareholder at Baron & Budd where he heads up the firm's Environmental Litigation Group, which litigates complex environmental contamination cases all over the country. The Group represents public entities in litigation to recover costs of removing chemical contamination from public water supplies, governmental facilities, natural resources and public property. Through

BARON & BUDD, P.C.®

this type of litigation, the Group seeks to shift the costs of remediation to the chemical manufacturers and suppliers responsible for the contamination – and away from public entities and taxpayers.

The Group recently filed a lawsuit against the Monsanto Company and its corporate successors on behalf of a public school district in Massachusetts. The lawsuit alleges that Monsanto knew about the dangers of PCBs as early as the 1930s but failed to warn people of the severe dangers associated with PCBs and their use in common building materials. The litigation seeks to require Monsanto to pay for removing PCB-containing materials from the contaminated schools.

Mr. Summy regularly represents public water providers (e.g., municipalities, water districts, utilities and school districts) whose water is contaminated by intrusive chemicals. On behalf of these clients, Mr. Summy seeks cost recovery for treatment facilities, operation and maintenance costs, out-of-pocket expenses, and administrative costs. Mr. Summy also represents private well owners around the country whose wells are contaminated.

The Environmental Litigation Group has represented hundreds of public water providers in litigation arising from contamination of water supplies with MTBE, a gasoline additive. Mr. Summy has recovered over a billion dollars against major oil companies who decided to blend MTBE into gasoline knowing that it would likely contaminate water supplies. In one set of cases involving approximately 150 water providers, Mr. Summy negotiated settlements totaling over $450 million. Mr. Summy continues to file new MTBE cases across the country and currently represents the State of Vermont and a number of municipalities in new MTBE litigation.

Mr. Summy also represented all public water providers in the United States whose water was contaminated with atrazine, a common agricultural chemical used on corn and other crops. On behalf of these water providers, the Group brought claims against Syngenta, the company that makes atrazine and is aware that its normal use causes drinking water contamination. Mr. Summy negotiated a settlement awarding $105 million to over 2,000 water providers.

Mr. Summy's experience with environmental litigation led to a leadership role in the litigation arising from the Deepwater Horizon explosion and oil spill in the Gulf of Mexico. In 2010, he was appointed to the Plaintiffs' Steering Committee and Plaintiffs' Executive Committee in the Gulf Oil Spill Multi-District Litigation in the Eastern District of Louisiana. In that capacity, he played a critical role in negotiating a settlement and claim procedure for the tens of thousands of individuals, businesses, and governmental entities injured by the oil spill.

The Group also represents public water providers and other public entities in litigation involving other chemicals that contaminate water supplies and property including TCP, TCE, PCE, and PCBs.

The Group's important work for public water providers has been recognized by the legal community on a number of occasions. His groundbreaking work for

BARON & BUDD, P.C.®

California communities affected by MTBE won Mr. Summy and his legal team the "Attorneys of the Year" award from California Lawyer in 2001. And Public Justice twice named Mr. Summy and his team Finalists for the organization's Trial Lawyer of the Year Award – in 2009, for cases arising from MTBE contamination, and again in 2013, for cases arising from atrazine contamination. Mr. Summy was also included in The Best Lawyers in America 2006-2015 editions.

Mr. Summy is licensed to practice law in Texas, North Carolina and New York. He is AV-rated by Martindale Hubbell.

**Dan Alberstone** co-manages Baron & Budd's Los Angeles office. He has nearly 30 years of broad experience prosecuting and defending complex litigation matters, including extensive jury trial experience. His practice focuses on financial and other business torts, consumer class actions, environmental contamination cases, real estate disputes and entertainment cases.

Mr. Alberstone has been selected as lead trial counsel by both institutional and individual clients in their most significant and high-profile matters, including partnership cases, real estate cases, breach of contract cases, entertainment cases, environmental cases and cases alleging unfair business practices.

In the real estate sector, Mr. Alberstone successfully prosecuted a case for the American Skiing Company, the owner of the Canyons Ski Resort in Park City, Utah, in an action to force the resort's landlord to agree to an assignment of ground lease in a $123 million transaction. He also obtained a more than $14 million award for a major real estate developer in connection with the purchase and sale of an historic bank building in downtown Los Angeles. Mr. Alberstone achieved a significant award for the owner of the Edison Bar in downtown Los Angeles in an action involving the purchase and sale of a large commercial building, and successfully defended the Estate of Jonathan Ritter in an action brought to compel specific performance of a contract to purchase three citrus farms owned by the estate.

In the entertainment area, he has successfully defeated an action by a union president and three board members against the Screen Actors' Guild and 41 other members of its national board and successfully defended screenwriters in work-for-hire actions brought by employers claiming ownership of screenplays. He also represented ESPN and Good Morning America reporter Erin Andrews in connection with the prosecution of a stalker who had surreptitiously videotaped Ms. Andrews in the privacy of her hotel rooms.

The *Los Angeles Daily Journal* recognized Mr. Alberstone for obtaining one of the top plaintiff's verdicts in 2009 and he was selected for inclusion in the *Southern California Super Lawyers* list from 2005-2007 and in 2010 (Thompson Reuters).

Mr. Alberstone earned a J.D. from the Southwestern University of Law in 1982 and a B.A. from the University of California, Los Angeles.

BARON & BUDD, P.C.®

**Laura Baughman** co-manages the firm's pharmaceutical litigation group, representing both individuals and public entities. Ms. Baughman represented seven public entities (the states of Mississippi, West Virginia, South Carolina, Kentucky, Maryland, New Mexico and Utah) against GlaxoSmithKline regarding misrepresentations made in the marketing of the diabetes drug Avandia. This litigation settled for over $170 million.

Ms. Baughman represents individual personal injury and wrongful death victims and public entities regarding harm caused by GranuFlo, used during dialysis. Ms. Baughman also represents many men in litigation who developed abnormal breast growth after taking Risperdal. She has taken an active role in Inferior Vena Cava Filter multi-district litigation, working closely with other members of the PSC on many aspects of the cases, including motion practice and depositions.

As managing shareholder of the firm's Qui Tam litigation team, Ms. Baughman focused on strategies to ferret out and litigate against those who have perpetrated fraud against the government. Sometimes called "whistleblower" cases, Ms. Baughman's team handled a variety of cases in which the government has been defrauded of Medicare, Medicaid, defense and other monies.

Ms. Baughman served as co-lead counsel in a California Proposition 65 water contamination case that required several major oil companies to clean up groundwater that had been contaminated by gasoline leaking from storage tanks and to take steps to prevent similar leaks in the future. The settlement was valued at $107 million. Ms. Baughman settled another Proposition 65 case that required the retrofitting of school buses with devices to reduce diesel engine exhaust emissions, a known human carcinogen.

When Ms. Baughman was a small child living in New Jersey, there was an outbreak of childhood leukemia in her neighborhood. Ms. Baughman was hospitalized at the age of five. Her parents were told that she, too, had leukemia. It turned out that Ms. Baughman did not have the disease. The children in her neighborhood had been sickened from drinking water contaminated by a company which had dumped toxic waste onto the ground nearby. Ms. Baughman made a full recovery, but her parents were told that many of the stricken children would not live past their 20th birthdays. The experience left an indelible impression. From the time she was old enough to understand what had happened, Ms. Baughman wanted to become a lawyer so that she could help put a stop to the poisoning of people and natural resources by unscrupulous businesses.

In addition to her legal advocacy, Ms. Baughman has a long history of community service. She has represented several clients on a pro bono basis through the Dallas Volunteer Attorney Program and over the years has served as co-chair of several committees for Attorneys Serving the Community.

Ms. Baughman is a graduate of The Cooper Union for the Advancement of Science & Art (M.E. 1992, B.S. 1990) and University of Texas School of Law (J.D., with honors, 1994), and is licensed in Texas, California, New York and Missouri.

BARON & BUDD, P.C.®

**Carla Burke Pickrel**, a shareholder with Baron & Budd's Environmental Litigation Group, began her legal career with the firm's appellate section. She has a gift for writing and oral advocacy that has been very persuasive in the MTBE Multi-District Litigation cases. Ms. Burke Pickrel has also authored and presented numerous papers and presentations on the topics of toxic tort and water contamination litigation and premises liability law.

After several years in Baron & Budd's appellate section, Ms. Burke Pickrel joined the Environmental Litigation Group in 2004. In her time with the Group, she has represented hundreds of public entities — villages, towns, cities, utilities, school districts, and states.

As one of the pioneers of the Group, she has worked to develop legal strategy for cases arising from MTBE, atrazine and PCE contamination of drinking water supplies. Ms. Burke Pickrel has played a critical part in nationwide litigation arising from MTBE contamination on behalf of more than 200 water providers in more than 20 states. She also played a major role in a nationwide class action settlement for providers whose water supplies are contaminated with atrazine, an agricultural chemical.

Putting her experience to work in new areas is an energizing part of Ms. Burke Pickrel's work. She is currently representing school districts whose buildings are contaminated with PCBs, chemical compounds found in some construction materials. This channels her deep respect for all those who work in the nation's public schools. "My mother worked for public schools for thirty years. She felt that she was a part of her students' and parents' lives and took that responsibility seriously. So do I."

Ms. Burke Pickrel's work has earned her recognition by professional organizations. She was named a Super Lawyers "Rising Star of Texas Law" (Thomson Reuters, 2006) and, with her colleagues, was twice-nominated for Public Justice's Trial Lawyer of the Year Award — in 2009 and in 2013.  In 2016, Ms. Burke Pickrel was named to the named to the National Trial Lawyers Top 100 Trial Lawyers List for her tireless work representing hundreds of public entities over more than a decade in a wide variety of cases involving drinking water contamination from dangerous chemicals such as atrazine, PCE, MTBE and PCBs.

While in law school at Southern Methodist University, Carla Burke Pickrel was on a team that successfully represented a disabled man whose lack of medical treatment while in the custody of the Dallas county jail amounted to cruel and unusual punishment. After graduation, she returned to SMU as an adjunct clinical instructor of law to brief and argue the appeal of Lawson v. Dallas County, 112 F.3d 257 (5th Cir. 2002) before the United States Court of Appeals for the 5th Circuit.

Ms. Burke Pickrel's work is motivated by the results she sees at Baron & Budd. "The work we do helps entire communities. Baron & Budd makes people's everyday lives better," she says.

BARON & BUDD, P.C.®

**Sindhu Daniel** co-manages the Pharmaceutical Litigation Group at Baron & Budd. For the past 17 years, Sindhu's practice has been concentrated in complex personal injury litigation involving pharmaceutical drugs and medical devices.

Over the course of her career Ms. Daniel has played significant roles in complex multi-district litigation involving Vioxx, Fresenius Granuflo/Naturalyte dialysis products, Actos, DePuy Orthopaedics and Celebrex, to name a few. Among her work on numerous settlements, she was instrumental in negotiating the $4.85 billion settlement in In Re: Vioxx Products Liability Litig. (E.D. La, MDL No. 1657), involving injuries of heart attack, stroke and sudden cardiac death caused by the pain killer's blockage of an important blood pressure regulating enzyme in the body, a $2.5 billion settlement in In Re: DePuy Orthopaedics ASR Products Liability Litig. (N.D. Ohio, MDL No. 2197), involving injuries caused by design flaws in hip implants, and a substantial settlement in In Re: Fosamax Products Liability Litig. (S.D.N.Y, MDL No. 1789), involving the injury of osteonecrosis of the jaw.

Ms. Daniel has also served as co-lead negotiator on behalf of a large group of plaintiffs in a case involving severe and permanent injuries caused by transvaginal mesh implants. She was instrumental in building consensus with other plaintiffs' attorneys and actively led negotiations with defendants. In addition, Ms. Daniel has extensive experience in devising settlement matrices used to allocate funds in pharmaceutical and medical device mass torts. She has also successfully negotiated numerous confidential settlements in complex mass tort litigations.

In 2015, Sindhu Daniel was appointed as a Plaintiff's Steering Committee (PSC) member by the Honorable Judge Eldon E. Fallon in *In Re: Xarelto (Rivaroxaban) Products Liability Litigation* (E.D. La., MDL No. 2592), involving uncontrolled bleeding and a tenfold increase in the risk of wound infection following certain surgeries. She currently holds positions as co-chairs of the Administrative Committee and Privilege-Log Subcommittee. Additionally, as a member of the Bellwether Committee, Ms. Daniel serves as the point person between plaintiffs and MDL Centrality, an online exchange portal that facilitates the assembly, organization, inventory, exchange, and analysis of massive amounts of data and documents, and provides an automated method to serve, store, monitor and use Plaintiff and Defendant Fact Sheet information. In this capacity, Ms. Daniel organizes and evaluates large amounts of data and provides critical case information to her respective plaintiff's committees which is used to devise bellwether strategy and analyze cases for trial selection.  In 2016, she was appointed as a PSC member by the Honorable Kathryn Vratil in *In Re: Ethicon, Inc., Power Morcellator Products Liability Litigation* (D. Kansas, MDL No. 2652).

Ms. Daniel was also appointed by the Plaintiffs' Executive Committee to serve as co-chair of the Plaintiff's Bellwether Committee in *In Re: Fresenius Granuflo/Naturalyte Dialysis Products Liability Litig.* (D. Mass., MDL No. 2428), which involves sudden, fatal heart attacks caused by drugs used to neutralize the buildup of acid in the body during kidney dialysis.  As part of her responsibilities

BARON & BUDD, P.C.®

on these important cases, Ms. Daniel has worked with her colleagues to develop case evaluation grids instrumental in tracking similar themes among large pools of plaintiffs.

Serving in these leadership roles, Ms. Daniel routinely navigates the intricate issues which frequently present themselves in complex mass torts. She works closely with other plaintiffs' attorneys to build consensus on a coordinated approach to litigation. With such extensive experience, Ms. Daniel is a frequent speaker and presenter at various continuing legal education seminars and webinars which deal with issues pertaining to emerging mass tort litigation. She has also been invited to share her knowledge by lecturing at national litigation seminars.

Ms. Daniel graduated from Temple University in Philadelphia, Pennsylvania and Temple University James E. Beasley School of Law.  She is licensed in Pennsylvania, New Jersey and Michigan.

**Celeste A. Evangelisti**, a shareholder in the Environmental Litigation Group at Baron & Budd, has devoted the bulk of her career to helping individuals, municipalities and water suppliers obtain recovery of costs to clean up contamination. A tenacious fighter for environmental responsibility, Ms. Evangelisti has been nominated twice for Public Justice's prestigious "Trial Lawyer of the Year" award (2009, 2013) and was named a "Texas Super Lawyer" for three straight years (Thompson Reuters, 2003-2005).

Ms. Evangelisti has devoted almost two decades of her career to representing individuals, municipalities and public water suppliers who seek to recover costs to clean up contamination from the companies responsible – those who put dangerous products into the stream of commerce without ensuring they will not cause extensive environmental contamination. Ms. Evangelisti currently represents plaintiffs in several states across the country who face a variety of contamination issues.

Ms. Evangelisti is a well-known figure in national litigation arising from contamination caused by the gasoline additive Methyl tertiary-butyl ether (MTBE), having been among the first lawyers to litigate cases against oil refiners who blended MTBE into gasoline.

Ms. Evangelisti started her career at a large defense firm, representing some of the biggest corporations in the world in product liability cases. In 1999, she used the knowledge she gained representing defendants in those cases and began working with Scott Summy, who represented corporate victims of wrongdoing. Mr. Summy was then expanding his groundwater contamination practice to California and other states. Mr. Summy brought his team to Baron & Budd in 2002, ultimately forming and expanding what is now the Environmental Litigation Group. Throughout the years, Ms. Evangelisti has assisted in the representation of over 150 water providers in MTBE cases.

Ms. Evangelisti's knowledge and skill have been put to work in many other water contamination cases as well, including those involving perchloroethylene (PCE),

Trichloropropane (TCP) and Atrazine. She is currently working on the firm's PCBs-in-schools cases, which inspire her every day. "I can't imagine a more important cause than to protect the nation's children," she says.

Hard-driving and tenacious, Ms. Evangelisti's legal prowess has earned her many professional honors and awards. She is AV-rated by Martindale-Hubbell, its top rating. She was a member of the legal team representing Communities for a Better Environment (CBE) which was named "Attorneys of the Year" for Environmental Law in 2001 by California Lawyer (Daily Journal Corp.) for the resolution of a precedent-setting case requiring major oil companies to clean up more than a thousand sites contaminated by the gasoline additive MTBE. She has been nominated twice for Public Justice's prestigious "Trial Lawyer of the Year" award (2009, 2013) for her work on MTBE and Atrazine respectively, and she was named a "Texas Super Lawyer" for three straight years (Thompson Reuters, 2003-2005).

Ms. Evangelisti has been a frequent speaker and presenter on legal topics concerning the prosecution of water contamination cases involving the gasoline additive MTBE and other contaminants of concern. "The lengths some polluters will go to increase their profits at the expense of the well-being of entire communities never ceases to amaze me," she says. "It is ultimately very satisfying to bring these companies to justice and protect the environmental integrity of our water supplies."

**Stephen C. Johnston** puts his degree in Wildlife and Fisheries Sciences to good use as a shareholder with the firm's Environmental Litigation Group, representing individuals and communities seeking clean-up costs for contaminated water supplies.

Mr. Johnston began his career with Baron & Budd in 1997 as part of the firm's asbestos litigation group. Mr. Johnston's time in the asbestos group was marked by his respect for the individual client and a reputation for thoughtful attention to their cases and their lives. His advocacy resulted in the recovery of millions of dollars for those injured by asbestos exposure.

Mr. Johnston brought his hard work and determined advocacy to the Environmental Litigation Group in 2004. Since that time he has represented hundreds of public entities seeking clean-up costs for water supplies contaminated by MTBE, Atrazine and TCP. He has also represented hundreds of individuals and businesses along the Gulf Coast impacted by the BP oil spill which resulted from the sinking of the Deepwater Horizon drilling rig.

For the past several years Mr. Johnston has led the firm's litigation arising from TCP contamination of drinking water supplies. Under his leadership the firm has successfully resolved numerous TCP contamination cases.

For Stephen Johnston, Baron & Budd was a good match for his goals to bring about justice to those who have been wronged through no fault of their own: "I saw in Baron & Budd a law firm committed to helping those injured by corporate

BARON & BUDD, P.C.®

indifference and greed. I wanted to help those who could not otherwise help themselves." His dedication to this mission and his legal talent earned him recognition as a Super Lawyers "Rising Star" (Thomson Reuters, 2006).

**J. Todd Kale** is a shareholder with Baron & Budd. He joined the firm in 2008 when the firm consolidated with Dallas-based law firm Silber Pearlman. Mr. Kale worked with mesothelioma sufferers and other victims of asbestos-related disease at Silber Pearlman from 1993 and continues that work at Baron & Budd.

Mr. Kale has dedicated his career to fighting the companies that knowingly exposed people to the deadly carcinogen known as asbestos. He enjoys partnering with patients and families and helping them navigate the legal process during the most difficult time in their lives. Mr. Kale works on the front lines with the firm's Asbestos Litigation Team. He meets with mesothelioma patients and their families across the country to gather the information necessary to successfully pursue their cases. More than any other aspect of his job, he enjoys meeting with these patients and their families. Through these meetings, Mr. Kale becomes part of each of these families and becomes involved in each family's specific struggles, needs and hopes. He is honored to be trusted by so many patients and families as they deal with the diagnosis and prognosis of mesothelioma. His 20 years of experience in this field make him a valuable resource for any information a client may need — both legal and medical.

For more than two decades, Mr. Kale has worked on numerous asbestos lawsuits, managing thousands of cases from start to finish. Through his many years as an asbestos lawyer, he has developed an in-depth understanding of the legal system and how to best navigate that system on behalf of clients. Since 1993, he has helped clients recover significant amounts in settlements. Mr. Kale has experience pursuing not only asbestos manufacturers, but also equipment manufacturers and employers who are responsible for a client's exposure to asbestos. Never one to back down from a fight, Mr. Kale is proud to have fought on behalf of mesothelioma and asbestos clients for his entire career.

Todd Kale earned his J.D. from the University of Tulsa College of Law in 1990 and his B.B.A. from the University of Texas.

**J. Burton LeBlanc** is a powerhouse advocate for individuals who have been harmed by corporate wrongdoing, having begun his legal career representing victims of toxic exposure and workplace hazards in his home state of Louisiana. His lifelong commitment to service through the legal system began as a child in Louisiana, a state where danger in the workplace was common and expectations for most workers were of a life shortened by the necessity of making a living. Observing this, Mr. LeBlanc knew early that his life mission would be to seek justice for the downtrodden.

Today Mr. LeBlanc's passion for championing the rights of individuals extends to the national stage where he recently served as president of the American Association for Justice (AAJ). As president of AAJ, the largest trial lawyer non-profit group in the United States, Mr. LeBlanc advocated for protection of

BARON & BUDD, P.C.®

America's civil justice system and rallied resources when corporate interests attempted to infringe on individual rights. He is an adamant crusader for the abolition of forced arbitration and a supporter of the fundamental right to a trial by jury.

Mr. LeBlanc's appointment as AAJ president followed a long history of involvement on both the local and national levels of AAJ and its affiliate organizations. He previously served as president-elect, vice president, treasurer and parliamentarian of AAJ. In addition, Mr. LeBlanc has been a member of AAJ's Executive Committee and the Board of Governors, where he was awarded the Wiedemann Wysocki National Finance Council Award two separate times, most recently in July 2010. Mr. LeBlanc has been a member of the Board of Trustees of the AAJ PAC Committee, chairman of the AAJ National Finance Council, a sustaining member of the AAJ and a member of the Leaders Forum. He is also a member of the AAJ's Section on Toxic Torts and Business Torts.

Mr. LeBlanc has also served the Louisiana Association for Justice (LAJ) as past president, member of the Council of Directors, Board of Governors and the Committee for the Environmental Law/Toxic Tort Section. He currently serves on the Executive Committee of the LAJ.

Mr. LeBlanc's extensive accomplishments are equally renowned in the courtroom, paving the way for him to be named as one of the top 75 plaintiffs' attorneys in the United States by *The American Lawyer* (ALM Media, 2010). He was recently included in the Louisiana Super Lawyers list (Thomson Reuters, 2008, 2012-2015). In addition to his work representing individuals, Mr. LeBlanc has successfully represented many governmental entities, including the States of Hawaii, Mississippi, Louisiana, and West Virginia in complex consumer fraud litigation.

Today Burton LeBlanc concentrates his practice in the areas of pharmaceutical, environmental, securities and asbestos litigation.

Mr. LeBlanc is a member of the American Bar Association's (ABA) State Attorney General and State Department of Justice Issues Committee as well as a committee member of the ABA's Section on Toxic Torts. He is also a member of the National Association of Public Pension Attorneys (NAPPA) the National Association of Shareholder & Consumer Attorneys (NASCAT), the Texas Trial Lawyers Association, Louisiana State Bar Association, Baton Rouge Bar Association, Texas State Bar Association, College of the State Bar of Texas, the Louisiana Bar Foundation and a supporting member of the Trial Lawyers for Public Justice Foundation. He is a frequent lecturer on the issues of environmental law, asbestos litigation, chemical exposure cases and the importance of access to the civil justice system.

Mr. LeBlanc and his wife are active in the Baton Rouge community and serve on multiple boards, including Cancer Services of Greater Baton Rouge, where he has served as president.

BARON & BUDD, P.C.®

**Renée Melançon**, a shareholder with Baron & Budd's litigation group, focuses her practice on appellate work, drafting pleadings, and motion practice. Since joining the firm in 2001, Ms. Melançon has worked on a variety of toxic tort cases involving complex and novel legal issues, and she has successfully defended several multi-million dollar verdicts on appeal.

Renée Melançon has made it her life's work to represent plaintiffs who have been harmed by contaminants in the environment, most recently workers who have developed cancer from occupational exposure to asbestos. Through her diverse practice, she has had extensive experience in toxic torts, mass torts, multi-district litigation, and complex litigation. All of her practice has the common theme of representing individuals who have been wronged by big business. Indeed, Ms. Melançon says she selected Baron & Budd to pursue her career because "Baron & Budd has the resources, talent, and tenacity to zealously represent those who have been harmed."

Ms. Melançon has successfully defended on appeal multi-million dollar verdicts on behalf of plaintiffs who were afflicted with asbestos-related diseases. She has prevailed on appeals in several intermediate and supreme state courts, and in 2008 she argued a case before the Louisiana Supreme Court, whose opinion remains one of the most cited and relied-upon rulings on asbestos in that state.

Ms. Melançon was among a team of lawyers who received the 2006 "Trial Lawyer of the Year" award from Trial Lawyers for Public Justice for her work seeking redress for more than 1600 residents who were injured by contaminated groundwater in Tucson, Arizona. She has been named a "Rising Star of Texas Law" by Texas Super Lawyers and Texas Monthly magazine, a distinction awarded to less than 5% of Texas lawyers under the age of 40.

In addition to her work at the firm, Ms. Melançon lectures at legal seminars, and in 2012 she gave a presentation on legal issues in asbestos litigation at Harvard Medical School. Her devotion to helping those in need extends beyond her legal practice. For example, she represented victims of the 9/11 attacks as a member of Trial Lawyers Care, Inc., a non-profit organization established by the Association of Trial Lawyers of America, and she volunteered in a program which helped Hurricane Katrina evacuees relocate to Dallas.

After law school Ms. Melançon clerked for the Honorable Martha Craig Daughtrey of the United States Court of Appeals for the Sixth Circuit and for the Honorable Robert E. Jones of the United States District Court for the District of Oregon. Before joining Baron & Budd, Ms. Melançon lived in Asia and Europe, where she volunteered with nonprofit organizations focusing on women's rights and environmental issues in developing countries. As she explains, "My work at Baron & Budd is a natural extension of my lifelong interest in pursuing justice for others".

Ms. Melançon graduated law school Magna Cum Laude and Order of the Coif from the University of Arizona School of Law. Her law review note has been cited by the United States Supreme Court. Melançon is licensed in Texas and Louisiana.

BARON & BUDD, P.C.®

**Cary L. McDougal**, a shareholder with Baron & Budd, has served as lead attorney in more than 75 jury trials in state and federal court. Over the nearly two decades that he has practiced law, Mr. McDougal has proven to be a formidable trial lawyer with unflinching resolve to serve his clients. He has tried cases involving such diverse areas of the law as premises liability, product liability, general personal injury, medical malpractice, insurance litigation and environmental litigation.

For the first 14 years of his legal career, Mr. McDougal handled the defense of matters involving complex litigation throughout Texas and Oklahoma as a partner at two Dallas firms. He focused his practice on civil litigation, and he managed and tried all litigation for several North Texas health care agencies. He co-founded the law firm Aldous and McDougal, which gained recognition for its trial successes on behalf of plaintiffs in medical malpractice, contractual disputes and other matters. Mr. McDougal joined Baron & Budd in 2005.

A shareholder and manager of Baron & Budd's Environmental Litigation Group, Mr. McDougal currently represents over 200 municipalities and water providers across the country that are seeking clean-up costs for the contamination of their water supplies. His practice includes management of Baron & Budd's cases in the Multi-District (MDL) MTBE water contamination litigation, which is considered one of the most complex pieces of litigation in the country. He also manages other environmental contamination cases involving chemicals such as TCP, TCE and dioxin.

Mr. McDougal completed his law degree at the University of Texas School of Law and attained a Master of Public Policy degree from the University of Texas LBJ School of Public Affairs. He continues to serve as a consultant to the LBJ school on issues concerning public policy. He has authored numerous legal papers on civil litigation and trial practice and has spoken at seminars before health care professionals, consumer groups, the insurance industry and attorneys on issues relative to civil litigation.

Mr. McDougal has been inducted into the prestigious American Board of Trial Advocates (ABOTA), a recognition by his peers for his jury trial experience, commitment to the jury process, and ethics. He also holds the top rating from the Martindale-Hubbell Law Directory and was named a Texas Super Lawyer (Thomson Reuters 2005-2006).

**Thomas M. Sims** devotes the majority of his practice at Baron & Budd to seeking compensation on behalf of individuals and public entities that have been harmed by unsafe prescription drugs. Mr. Sims was recently appointed to the Plaintiffs' Steering Committee for *In Re: Fluoroquinolone Products Liability Litigation*, MDL 2642.  Baron & Budd was the first law firm to represent the many men and women who developed peripheral neuropathy as a result of Fluoroquinolone use.

Mr. Sims spent much of his career at Baron & Budd litigating complex cases ranging from unsafe pharmaceuticals to water contamination to air pollution.  He was part of the litigation team that helped seven states' attorneys general recover a

BARON & BUDD, P.C.®

$177 million settlement against GlaxoSmithKline regarding its fraudulent marketing of the diabetes drug Avandia.  He was lead counsel in one of the largest Proposition 65 cases in history. Proposition 65 is a California state law that permits private citizens to enforce certain environmental regulations on behalf of the public. Mr. Sims represented three environmental groups in their efforts to reduce diesel exhaust emissions from school buses. Working as lead counsel, Mr. Sims was a driving force in securing a settlement in which the defendant agreed to invest more than $28 million to replace or retrofit school buses that were built before 2003 with air pollution control devices.

Mr. Sims has worked on behalf of communities that were harmed by toxic releases from nearby industrial activities. In 2006 he received the Trial Lawyer of the Year award from the non-profit Trial Lawyers for Public Justice in connection with his work on a long-running insurance coverage dispute. Originally filed in 1985, the case involved groundwater contamination of public aquifers in Tucson, Arizona. As a result of the efforts of Mr. Sims and his co-counsel, the case finally settled in 2005. During the intervening twenty years, Baron & Budd won two trials and prevailed on three separate appeals. Mr. Sims also represented the Governor of the State of Louisiana in his efforts to secure natural resource damages resulting from the BP Oil Spill.

Mr. Sims has also represented whistleblowers under state and federal false claims acts. He represented two mechanics who alleged that their former employer, the largest school bus operator in the country, consistently shortcut health and safety procedures in order to increase profits. In connection with his work on that case, Mr. Sims persuaded the California Court of Appeals to adopt the theory of implied certification as a basis for liability under the California False Claims, the first time a California court adopted this theory; the case settled in favor of Mr. Sims' clients in 2015.

Mr. Sims graduated with honors from the University of Texas School of Law and he is licensed in Texas and California.

**Roland Tellis** co-manages Baron & Budd's Los Angeles office. His practice focuses on complex, high-profile litigation, including consumer class actions, financial fraud, business torts, corporate misconduct, automobile defect, food labeling, false advertising, securities fraud and environmental contamination.

Mr. Tellis has represented clients in numerous jury trials, including several multimillion dollar disputes. In 2005, Mr. Tellis received commendation from the U.S. Department of Justice and the Federal Bureau of Investigation for his assistance in the successful prosecution of a $120 million securities Ponzi scheme perpetrated by foreign currency traders. Mr. Tellis also represented a multinational food company in litigation directed at the theft of its trade secrets by competing scientists. Mr. Tellis represented the owner of a commercial real estate portfolio in a large-scale litigation. And Mr. Tellis also represented the Screen Actors' Guild and members of its national board.

BARON & BUDD, P.C.®

Mr. Tellis has become a leader in representing plaintiffs in multidistrict class action litigation and has become a formidable force in protecting consumer rights. Mr. Tellis is lead class counsel in several complex class action cases, including cases in the financial services sector, the automobile industry and the food and beverage group. His experience exemplifies the depth and breadth of resources that Baron & Budd provides for its clients.

Some of Mr. Tellis' consumer class actions include *Bias et al. v. Wells Fargo Bank*, a putative class action concerning fraud in the setting of default related bank fees; *Stitt et al. v. Citibank et al.*, putative class action concerning fraud in the setting of default-related bank fees; *Ellis et al. v. JPMorgan Chase et al.*, a putative class action concerning fraud in the setting of default-related bank fees; *Payne et al. v. Bank of America, et al.*, a putative class action involving manipulation of the LIBOR U.S. Dollar rate; *In re L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation*, a putative class action involving fraudulent marketing of skin care products; *In re: Avon Anti-Aging Skincare Creams and Products Marketing and Sales Practices Litigation*, a putative class action involving fraudulent marketing of skin care products; *In Re: Brazilian Blowout Litigation*, where he was class counsel in a certified class action concerning issues of fraud in connection with the sale of Brazilian Blowout hair products; *Delacruz v. Cytosport, Inc.*, a putative class action concerning false advertising, fraud, and misrepresentations regarding dietary supplement products; *Aarons et al. v. BMW of North America, LLC et al.*, a putative class action concerning premature transmission failure in MINI Cooper vehicles; *In re: Alexia Foods, Inc. Litigation*, a putative class action concerning false advertising, fraud, and misrepresentations concerning frozen food products; and in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, a cases concerning allegations that Volkswagen installed software in these cars that allowed the vehicles to "cheat" emissions tests.

Mr. Tellis served on the Board of Governors of the Association of Business Trial Lawyers and is a Lawyer Representative to the Ninth Circuit Judicial Conference. Mr. Tellis is also Co-Chair of the Settlement Panel of the United States District Court for the Central District of California.

Mr. Tellis is a faculty member of the Practicing Law Institute and was Chair of an annual program entitled "Taking and Defending Depositions." He was recognized as a "Rising Star" from 2004-2007 (Thompson Reuters) and a "Super Lawyer" from 2008-2012 (Thompson Reuters).

Mr. Tellis earned a J.D. from the University of California, Hastings College of Law in 1996 and a B.S. from the University of California, Los Angeles in 1992.

## OF COUNSEL ATTORNEYS

**Alicia Butler** has worked with Baron & Budd in numerous roles, ranging from major toxic exposure cases to widesweeping consumer cases. Currently, Ms. Butler focuses on pharmaceutical litigation and Medicare fraud cases.

BARON & BUDD, P.C.®

Previously, Ms. Butler worked on a variety of toxic exposure cases with Baron & Budd that impacted thousands of people harmed by dangerous toxins. She represented hundreds of residents in a Pennsylvania community contaminated by radiation from local nuclear fuel facilities. She has also represented more than 1,500 workers suffering from health problems associated with arsenic, asbestos, benzene, beryllium, lead, mercury, and silica exposure at a plant in West Virginia. Ms. Butler has experience working with public entities, as she helped achieve a major settlement on behalf of the City of Santa Monica to hold the oil industry accountable for MTBE contamination in the local water supply.

Ms. Butler currently serves as a pro bono legal adviser to the Workers' Defense Project in Austin, Texas in the area of occupational safety and health issues.

Ms. Butler earned her J.D., with honors, from the University of Texas School of Law. She also holds a B.A. in English and Sociology from Rice University, where she graduated magna cum laude.

**S. Ann Saucer** is an Of Counsel lawyer with Baron & Budd. She joined the firm in 2000 with almost a decade of litigation experience behind her in Louisiana and Texas, the previous five years of which were with the Dallas-based law firm Silber Pearlman, P.C.

Ms. Saucer's practice focuses on appellate advocacy and briefing in complex litigation. She has successfully argued before the United States Fifth Circuit Court of Appeals, the United States Ninth Circuit Court of Appeals, the Texas Court of Appeals, Dallas, and federal and state trial courts across the country.

Ms. Saucer was a key author of the federal court briefing defending the rights of Fen Phen victims when the American Home Products Corp. (AHP) class action settlement was renegotiated. She has been a keynote speaker at Fen Phen litigation seminars.

Ms. Saucer has also spoken and published articles on federal procedure issues. Her background covers the spectrum of environmental law, consumer protection, product liability and toxic torts.

Ms. Saucer graduated first in her class from Loyola University School of Law, New Orleans, in 1991. During that time she edited articles for the Loyola Law Review. After graduation she clerked for the Honorable Henry A. Politz, Chief Judge of the United States Fifth Circuit Court of Appeals, before joining a private practice in 1992.

Ms. Saucer devotes her time to commercial and pharmaceutical cases, arguing complex legal issues in federal and state court, writing legal briefs, conducting legal research, and strategizing.

**Allen Vaught** is a decorated U.S. Army veteran and former Texas State Representative. A member of the U.S. Army Reserve from 1997 to 2005, Mr. Vaught took leave from Baron & Budd in 2003 to serve in Operation Iraqi

Freedom. He commanded one of the Army's first units to enter Fallujah and served as the city's de facto mayor. As an attorney at Baron & Budd, Mr. Vaught heads the firm's FLSA litigation section, where he spearheads new litigation against employers who are not fairly compensating their employees.

Mr. Vaught has more than 15 years of experience working as a litigator on complex, multi-party litigation. Recently, Mr. Vaught won a major award for a group of mechanics who were incorrectly classified as independent contractors by their employer, which earned him the distinction of being recognized as the "Litigator of the Week" by the state of Texas by legal publication *Texas Lawyer*.

He is currently leading litigation against several oil and gas companies regarding lay-offs that were not made in accordance with the Worker Adjustment and Retraining Notification ("WARN") Act, a U.S. labor law which protects employees by requiring most employers with 100 or more employees to provide 60 calendar-day advance notification of plant closings and mass layoffs.

## FIRM ASSOCIATES

**Melinda Arbuckle** works in the Employment Law Group of Baron & Budd, representing workers who were not fairly paid or were not given proper notice that they would be let go from their jobs. As a former law clerk in the Northern District of Texas, Ms. Arbuckle enjoys the challenge of Federal employment cases. Now an associate attorney at Baron & Budd, she routinely handles complex multi-party and class action cases.

Ms. Arbuckle's practice with Baron & Budd's Employment Law Group centers on litigating cases that make a difference not only in the lives of specific individuals, but also in shaping policy for the better protection of workers at large. In trying cases under the Fair Labor Standards Act (FLSA) and Worker Adjustment Retraining and Notification ("WARN") Act, Ms. Arbuckle values her role as an advocate for employees to be treated equitably.

Ms. Arbuckle received her Juris Doctor at Southern Methodist University. She chose law school because of her affinity for resolving problems. "I love the puzzle of complex cases. Learning rules, understanding complexities and simplifying them is my passion." While in law school, Ms. Arbuckle was a research assistant to Civil Procedure Professor Elizabeth Thornburg. She studied issues and assisted in the preparation of coursework relevant to the litigation surrounding the BP Oil Spill and Multidistrict Litigation generally.

After law school, Ms. Arbuckle worked for Baron & Budd prior to clerking for Federal Judge W. Royal Furgeson. While at Baron & Budd the first time, she represented clients who were harmed by asbestos products. The ability to help those whose health had been detrimentally affected while working was extremely rewarding. During her clerkship, she drafted orders of the court regarding employment cases, particularly regarding workplace discrimination. She also observed and assisted with the Multidistrict Litigation Panel's hearing at Southern Methodist University, as Judge Furgeson was head of the Panel at the time.

BARON & BUDD, P.C.®

Ms. Arbuckle is pleased to return to Baron & Budd as an associate attorney. "I always knew I wanted to represent individuals, not companies. My clients are people who may believe they have only a quiet voice in law and in life. It's my mission to make sure their voices are clearly heard."

**Jeremiah Boling** works at the Louisiana office of Baron & Budd. He is a member of the firm's Mesothelioma Litigation Group. Originally from the South, Mr. Boling is a Georgia native. He attended Mississippi State University where he received a degree in Political Science. He then moved to Louisiana to attend law school at Tulane University. During law school, he served as managing editor of the Sports Lawyers Journal.

After finishing his law degree, Mr. Boling began his career at Barrios Kingsdorf & Casteix where he gained experience working on Chinese drywall, Actos and Vioxx litigation. Now Mr. Boling is proud to be a part of the Baron & Budd team where he can continue giving a voice to those who have been victimized by the asbestos industry.

**David Cannella** is an attorney at the New Orleans office of Baron & Budd. As a member of the Mesothelioma Litigation Group, David Cannella serves asbestos victims across the gulf state. After graduating from Louisiana State University's Paul M. Hebert Law Center in 1999, Mr. Cannella served as a law clerk to the Honorable Pascal F. Calogero, Jr., Chief Justice of the Louisiana Supreme Court. Following his service to Chief Justice Calogero, Mr. Cannella served as Assistant District Attorney for Orleans Parish. While working in Harry Connick's office, Mr. Cannella was assigned to the Narcotics Screening Division and the Felony Trial Division. In addition, he served as an advisor to the Orleans Parish Grand Jury.

In addition to practicing law, Mr. Cannella is a faculty member at the Tulane University Law School Intersession Program, where he teaches an advocacy and practical skills course to second and third year law students. "I find it rewarding to pass on to a younger generation what I've learned in my years of legal service," he says.

Since 2001, Mr. Cannella has focused on litigation pertaining to toxic torts, product liability, serious personal injury, and wrongful death, successfully handling multi-million dollar cases and numerous jury and bench trials, both in state and federal court. In one such case, Mr. Cannella obtained a $6.4 million verdict against Asbestos Corporation Limited for a 60-year-old surgical nurse who was diagnosed with mesothelioma in 2012. In another, he won a $5.6 million verdict for the husband and son of a woman who died of mesothelioma in 2013. Mr. Cannella continues to focus on mesothelioma and other product liability cases for Baron & Budd throughout the state of Louisiana.

**Brittany Clark** works closely with clients suffering from serious health problems after using various pharmaceuticals, such as Fluoroquinolones, Risperdal, Lipitor, Testosterone therapy drugs, Zoloft, GranuFlo, transvaginal mesh and several others. Ms. Clark remains at the forefront of the firm's pharmaceutical litigation

BARON & BUDD, P.C.®

practice, often spearheading investigation into new drugs or devices that may be causing serious physical harm to patients – and most importantly, what Baron & Budd can do to help these people.

Prior to her work at Baron & Budd, Ms. Clark represented tens of thousands of patients suffering from harmful pharmaceutical products against numerous multi-billion dollar pharmaceutical corporations. She worked closely with countless clients and their families throughout the litigation process to fully understand each client's needs, as well as fulfill the legal needs of each client's case.

Ms. Clark graduated *cum laude* with her J.D. from the Thurgood Marshall School of Law at Texas Southern University in Houston. She also holds a B.A. in Business Administration from Baylor University.

**Christopher C. Colley** has dedicated his career to protecting the rights of asbestos victims and seeking compensation for their injuries. Mr. Colley worked with the Dallas-based law firm Silber Pearlman and the Baton Rouge based law firm of LeBlanc & Waddell until the firms consolidated with Baron & Budd in 2008.

Mr. Colley began helping asbestos victims and their families in 2000, primarily along the Texas coast. He participated in hundreds of asbestos cases representing various trades of construction along with chemical and oil refinery workers, including pipefitters, boilermakers, carpenters, electricians and certainly those involved with insulation materials.

Starting in 2006 Mr. Colley began to work almost exclusively in the state of Louisiana. He utilized his extensive experience from having worked with individuals in the industrial settings of Beaumont, Houston, Galveston and Freeport and put it to work representing asbestos victims who live and work along the lower Mississippi River. Since 2006 he has successfully litigated or settled hundreds of asbestos cases in Louisiana representing victims and their families from Baton Rouge all the way down the river to New Orleans.

Mr. Colley handles an active docket in Louisiana and appears in courts across the state. He has managed cases in East and West Baton Rouge, Ascension, St. James, New Orleans, Calcasieu, Morehouse, Ouachita, Caddo, Iberville, Point Coupee, and St. Bernard parishes.

Mr. Colley strives to help his clients make sense of what has happened to them and their families through his experience and keen understanding of toxic tort law. "The best thing I can do as a lawyer," he says, "is help people in the most difficult time of their lives to find answers and seek justice."

**Chad Cotten**'s convictions as a lawyer are founded on his resolute belief that the law is the bedrock of civilization and the cornerstone of the democracy in which we live. "The law is how we order society without resorting to violence and brute force. It protects all people, not just those with power," he says. "Therefore, the law is very important to me, and the best way to participate in the process of law is to practice it."

BARON & BUDD, P.C.®

Mr. Cotten practices law as an attorney with Baron & Budd's Mesothelioma Litigation Group, representing individuals with mesothelioma and other asbestos-related diseases. He concentrates his practice on the liability of employers and the owners of the premises where his clients were exposed to asbestos. He finds his work challenging and rewarding: "I particularly enjoy the intellectual challenge of understanding legal issues on the broadest general level, as well as mastering the individual details of each specific case," he says. "No two clients' cases are alike."

He also finds satisfaction as an advocate for Baron & Budd's clients, who are typically working men and women whose injuries were caused by the actions of large corporate interests. "Baron & Budd has never taken a case against a poor man," he remarks.

In addition to serving Baron & Budd's clients, Mr. Cotten puts his legal skills to use for the benefit of the community by providing his services, pro bono, to low-income individuals seeking assistance with divorces and income tax issues. He has consulted with a local professional rehabilitation association on the possibility of acquiring non-profit status. He is also keenly interested in legal issues involving white-collar crime, unions and organized labor and employment law.

**Irma Espino** is an attorney with Baron & Budd's Environmental Litigation Group, where she works primarily with clients who have been harmed by the Gulf Coast BP Oil Spill. In this capacity, Ms. Espino represents a variety of clients, from family-owned businesses whose incomes were wiped out by the contamination of fishing waters to complex real estate development companies whose multi-million dollar shoreline investments lost much of their value when pristine beaches were sullied. Ms. Espino is proud to be part of a team that has helped clients affected by the spill and her work has contributed significantly to its success. She has personally helped clients in the hospitality and tourism industries recover significant settlement proceeds. "My work helps these businesses recover their losses and remain viable. That has a ripple effect that benefits communities and families, too".

Ms. Espino has a long association with Baron & Budd. She originally joined the firm in 2002 as a paralegal in the pharmaceutical litigation section. In 2004, she enrolled at the University of Miami School of Law, where she received honors in the Litigation Skills and Trial Advocacy Program and was a member of the Business Law Review. Upon graduation, Ms. Espino joined a boutique litigation firm and successfully litigated a number of business disputes in Atlanta, Georgia. In her second year of practice, she chaired a business tort bench trial, which she successfully settled for her client. Ms. Espino rejoined Baron & Budd as an associate in 2010.

Ms. Espino earned her J.D. from the University of Miami School of Law in 2007, graduating cum laude, and her B.A. from the University of Texas at Austin in 2002 with high honors. She has served as Chair of Communications for the Georgia Association of Women Lawyers (GAWL) and on the Board of Directors for the Georgia Bar Association's Young Lawyers Division.

BARON & BUDD, P.C.®

When she isn't fighting for the rights of her clients, Ms. Espino enjoys testing her mettle with outdoor fitness challenges. She recalls a hike up Table Mountain in Cape Town, South Africa, as particularly dynamic. "My joy of the great outdoors reminds me why I fight so hard for preservation of the environment in my work".

**David Fernandes** joined Baron & Budd's California office in August 2014. He represents clients across the United States in class action litigation involving automobile safety, fraudulent banking practices, and deceptive advertising.

Born and raised in Los Angeles, California, Mr. Fernandes earned his J.D. from Pepperdine University School of Law. He also holds a Bachelor of Science degree in Business Administration from the University of Southern California. While at Pepperdine University, Mr. Fernandes served as president of the Student Bar Association from 2010 to 2011. During law school, he also clerked at the Children's Law Center of California, which serves as appointed counsel for abused and neglected children who come under protection of the Los Angeles county juvenile dependency court systems.

Mr. Fernandes was heavily involved with Pepperdine's Geoffrey H. Palmer Center for Entrepreneurship and the Law, where he was an integral member of the Palmer Center's first Student Advisory Board from 2009 to 2010 and served as the board's vice-chairman from 2010 to 2011. Prior to joining Baron & Budd, he spent several years at a mid-size firm, representing clients in a variety of consumer fraud cases and residential construction defect actions.

Despite being well-beyond his law school years and fully involved in a rewarding career with Baron & Budd, Mr. Fernandes finds time to mentor first-year law students at his alma mater. As a preceptor at Pepperdine Law School, he works with a new group of first-year law students every year to provide mentorship regarding a variety of student decisions, from resume preparation to interviewing techniques. By giving his time to these students, Mr. Fernandes uses his experience to prepare future colleagues for successful entry into the legal field. "Providing substantive feedback and support to these promising law students is very rewarding and allows me to give back to the school which shaped my world view about the legal field and what is possible".

David Fernandes has committed himself to a life of purpose, service and leadership. His passion for public service and social responsibility drew him to Baron & Budd's mission.

**John Fiske** has a "thing" for environmental justice. This dynamic powerhouse joined Baron & Budd's Environmental Litigation Group in 2016 and is an integral component of Ecolawyers, a joint venture between Baron & Budd and Gomez Trial Attorneys in San Diego, California. The Ecolawyers logo is marked by four elements involved in Mr. Fiske's practice, including the pollution of water, land, and air, and the devastating effects of corporate-caused wildfires.

John Fiske has dedicated his career to "protecting what's right" in so many ways: mentoring youth, rescuing farm animals, and seeking justice for those whose

health and homes have been decimated by polluters and the manufacturers of pollutants throughout the United States. Mr. Fiske represents large cities such as San Diego, San Jose, Oakland, Berkeley, Seattle, Spokane, and Portland in environmental and public nuisance actions against Monsanto Company for polluting America's waterways with polychlorinated biphenyls (PCBs).

Mr. Fiske also represents students and teachers exposed to toxic fumes by the multi-billion dollar aerospace company Ametek, Inc., which improperly dumped toxic chemicals into groundwater, creating one of the largest trichloroethylene (TCE) plumes in the state of California. Additionally, Mr. Fiske represents victims of devastating and unnatural wildfires caused by negligent companies, such as Pacific Gas & Electric Co. (PG&E), and other multi-billion dollar corporations.

John Fiske earned his law license at age 23 from California Western School of Law, a private, non-profit law school located in San Diego which was founded in 1924. Mr. Fiske attended law school on a full scholarship and served as Associate Editor of the Law Review while there.

Mr. Fiske has been declared a Super Lawyer in 2015, 2016 and 2017. In 2013, San Diego Metro Magazine named John Fiske to its list of "40 Under 40" (people to watch). He was a 2012 "Top Influential" (The Daily Transcript), a 2009 "Top Young Attorney" (The Daily Transcript), and a 2007 "50 People to Watch" (San Diego Magazine). Mr. Fiske has also served as a Barrister with the Louis M. Welsh Inn of Court, an amalgam of judges and lawyers who come together throughout the year to improve the skills, professionalism and ethics of the bench and bar.

John Fiske is a past-president of the board of directors of the San Diego Brain Injury Foundation, getting involved after receiving a $10.8 million jury verdict for a brain injured client. He has also served as an advisory board member for the University of California San Diego's Bannister Family House, which acts as a home away from home for families of patients undergoing long-term care. In addition, Mr. Fiske has been a board member of Solutions: Exploring Success Post-High School, which provides an affordable way for high school students and their families to shape a clear, actionable vision of their post-high school path based on individual interests, aptitudes, and financial resources. On top of that, Mr. Fiske served as a "Red Coat" for the San Diego Bowl Game Association, a group of dedicated men and women who volunteer their time throughout the bowl's year-around events, leading up to and including the Holiday and Poinsettia Bowl games in San Diego. And as if all that were not enough, Mr. Fiske mentored two young men in a very personal way, by having been a "Big Brother" to two "Little Brothers" in the Big Brothers Big Sisters of America organization.

When John Fiske is not discussing legal topics on television, including programming on Fox, ABC, KPBS, and KUSI, he spends time riding horseback, snorkeling, hiking and camping. He's stays fit by racing in the Spartan Beast, Ragnar Relay and Tough Mudder competitions.

BARON & BUDD, P.C.®

In 2016, Mr. Fiske founded the San Diego Farm Animal Rescue, a 501(c)3 non-profit organization dedicated to rescuing horses, pigs, hens, and roosters. As relayed by the Los Angeles Times and San Diego Union Tribune, SDFA Rescue educates people about the environmental impacts of large scale animal agriculture while providing a unique interactive experience for visitors. In 2016, San Diego Magazine named Mr. Fiske's rescue organization San Diego's "Best Animal Encounter Experience." Baron & Budd is extremely proud to have this dedicated public servant and compassionate human being in our San Diego office.

**Farsheed Fozouni** is an associate in Baron & Budd's Employment Law Group, where he advocates for hard working people who are not properly paid for their labor or are let go from their jobs without fair notice. Mr. Fozouni received his law degree in 2015 from Southern Methodist University's Dedman School of Law in Dallas, Texas, where he served as the executive editor of the SMU Law Review.

Farsheed Fozouni joined Baron & Budd's Employment Law Group in 2016 because he felt a strong desire to help ordinary people fight for their hard-earned compensation and to protect workers from unlawful termination without notice. "I love representing industrious people who are the backbone of our country's prosperity, and that prosperity derives in large part from receiving the proper compensation and continued employment these workers deserve."

Mr. Fozouni did his undergraduate work at Austin College, where he received a bachelor's degree in international relations. Though he spent most of his childhood and early college years planning to go to medical school, a sudden change of passion in wanting to advocate for people led him to law school, a decision he has never regretted. Mr. Fozouni received his law degree from the Southern Methodist University Dedman School of Law in Texas, where he won awards for his legal research and writing skills, as well as for his advocacy and speaking abilities.

While in law school, Mr. Fozouni served as Executive Editor of the SMU Law Review Association, a position to which he was elected to create and administer the writing competition that would select the next year's staff editors. In addition to participating in various academic events such as the New York City Bar Association's National Moot Court Competition, Mr. Fozouni interned for the Honorable Richard Schell of the Eastern District of Texas. This experience convinced him that litigation was the only path forward for his career.

A Dallas native, born and raised, Farsheed Fozouni is a first generation Iranian-American, fluent in Farsi, who is deeply passionate about his cultural roots and heritage. He remains actively engaged in the Iranian-American community and loves to travel. He is proud to join Baron & Budd's team of dedicated advocates for the rights of workers.

**Bryan Green** devotes his practice to the representation of individuals and families who have suffered catastrophic injuries and the loss of loved ones as a result of accidents involving commercial motor vehicles. His in-depth understanding of the

BARON & BUDD, P.C.®

trucking industry, particularly from a litigation and legal standpoint, is an asset to his clients that separates Baron & Budd from other law firms.

Bryan Green joined the trucking litigation department at Baron & Budd in August 2015 where he serves as lead counsel in numerous cases involving catastrophic injuries and wrongful deaths. Simply put, he represents individuals and families who have been badly hurt by the wrongful acts of others, aggressively pursues justice for them, and ensures wrongdoers are held accountable.

Mr. Green brings to the table a wealth of knowledge of the trucking industry, particularly from a legal and litigation standpoint, as he previously spent years representing commercial drivers and trucking companies on the defense side. This experience gives him a unique perspective and understanding when it comes to case investigation and analysis and identifying breaches of the duties and standards of care owed by those in the trucking and commercial transportation industry. He uses that knowledge and experience to advance his clients' cases and enhance the value of their claims. Mr. Green is also an accomplished trial attorney, having tried dozens of cases to verdict in courts throughout Texas.

In addition to trucking litigation, Mr. Green has extensive experience dealing with drunk driving accidents and the liability of bars and other dram shops for the unlawful service of alcohol to obviously intoxicated individuals, as well as the liability of governmental entities and police departments for the excessive use of force and violation of civil rights by law enforcement officers.

Mr. Green graduated from Texas Tech School of Law in 2009 and obtained his Texas law license that same year. He is also admitted to practice law in the U.S. District Courts for the Northern, Southern, Eastern, and Western Districts of Texas and is a member of the State Bar of Texas and the Dallas Bar Association. Prior to law school, he received his B.A. in International Studies from the University of Denver where he was a 2003 Academic All-Conference selection for the university's NCAA Division I Men's Soccer team.

When not practicing law, Mr. Green enjoys spending time with his family, is an avid fan of the Dallas Mavericks, and is a member of the Zion Lutheran School Board, currently serving as its Chairman.

**Ann Harper** has spent her career representing workers who have developed mesothelioma and other serious illnesses caused by exposure to asbestos. She is an attorney in Baron & Budd's settlement department, where she works through the issues necessary to get the firm's clients compensation in their lawsuits and to pursue their claims through bankruptcy trust funds.

Ms. Harper says, "In my job, I am often able to get people compensation that offers a measure of security for their families and brings them some peace of mind. It's wonderful when I can do something like that for a client."

When she is not working for her clients, Ms. Harper enjoys reading and traveling to new destinations.

BARON & BUDD, P.C.®

**Matthew Haynie** is an attorney in Baron & Budd's Pharmaceutical Group, where he represents individuals who have suffered serious injuries after taking a dangerous prescription drug or having a defective medical device implanted. His litigation experience stems from cases involving transvaginal mesh, testosterone therapy, Risperdal, Xarelto, and several other prescription drugs and medical devices. Though Mr. Haynie developed a keen interest in representing mass tort plaintiffs in pharmaceutical litigation while he was attending law school, he knew early in life that he wanted to dedicate his career to helping others.

As an undergraduate student, Mr. Haynie interned for Andrew Laming, a Queensland House Representative in the Parliament of Australia, who was instrumental in gaining access to healthcare for indigenous Australians. Mr. Haynie also worked on an award-winning documentary about exiled Tibetans living in refugee camps and monasteries across India. Both of these encounters opened his eyes to the atrocities human beings experience and strengthened his resolve to pursue a career in law that would allow him to seek justice for those who are injured by the wrongful acts of others.

Mr. Haynie graduated with his Juris Doctor from Southern Methodist University's Dedman School of Law in Dallas, Texas. He also holds a Bachelor of Arts degree in Political Science and Journalism from the University of Arkansas, where he graduated magna cum laude and was a recipient of the Senior Honor Citation, an award given to the top graduating male and female student in each class.

**Peter Klausner** is an attorney at Baron and Budd, specializing in consumer class actions cases involving unfair and deceptive practices. Over the course of his career, he has handled cases involving toxic torts, birth injuries, auto defects, surgical implantation devices, banking and mortgage frauds, pharmaceuticals, and wrongful deaths.

Peter Klausner has spent the entirety of his career representing and helping to restore the victims of fraud, malpractice and negligence. He has advocated on behalf of numerous injured clients at all phases of litigation, including multiple jury trials that have gone to verdict. The breadth of his career has spanned cases involving banking fraud, auto-defects, surgical implantation devices, hazardous materials (PCBs, lead, ethylene/propylene glycol ethers, tetragenic solvents), big pharma and birth injuries. More importantly, Mr. Klausner has had the honor of appearing in court while standing next to hard-working men and women from all over the country who would otherwise have found themselves overmatched by the moneyed interests that harmed them and now deny responsibility.

Mr. Klausner obtained his undergraduate degree from the University of Southern California and earned his J.D. from Loyola Law School of Los Angeles. In his second year at Loyola, he competed on behalf of the school's prestigious mock trial team, winning the 2009 AAJ regional tournament, while also serving as a chair of his school's Public Interest Law Forum, where he helped disadvantaged Los Angeles residents obtain their public assistance benefits. In his final year, Mr. Klausner interned at the Los Angeles County District Attorney's Office (hardcore gang division), while simultaneously competing on Loyola's Moot Court team,

BARON & BUDD, P.C.®

during which time he was ranked as one of the top three oralists in the nation at the ABA's 2010 National Moot Court Competition.

Following law school, Mr. Klausner worked as an associate at Waters, Kraus & Paul, LLP, where he represented numerous victims of toxic exposures and faulty surgical devices. In one such instance, he obtained a multi-million dollar verdict from a San Diego jury on behalf of a technician who had been exposed to asbestos while serving in the United States Navy. In addition, he obtained several multi-million dollar settlements in cases involving birth defects that resulted from mothers' exposure to industrial solvents, while also litigating on behalf of cancer survivors whose illnesses could be linked to PCBs manufactured by the Monsanto Company.

Mr. Klausner has continued handling cases in numerous fields, but always involving consumers and victims who have been injured through no fault of their own, and who would otherwise find themselves powerless in the fight against big businesses, negligent corporations and well-financed adversaries. He currently specializes in banking fraud, auto-defects and big pharma.

When not practicing law, Mr. Klausner enjoys marathon training, going to the movies, watching Laker games and exploring the cosmos with his telescope.

**Sangeeta Kuruppillai** first worked for Baron & Budd in 2010 as a attorney in the firm's Environmental Litigation group, reviewing discovery documents for cases involving atrazine, an herbicide used for weed control in farm crops which has been linked to prostate and breast cancer and is thought to be causing declines of endangered amphibians. In 2012, Ms. Kuruppillai worked on pharmaceutical cases related to the drug Avandia, thought to increase the risk of serious heart problems in diabetes patients for whom the drug was prescribed. She specializes in the electronic review (eDiscovery) of documents in mass tort litigation.

Ms. Kuruppillai spent twelve years as an Assistant City Attorney at the Dallas City Attorney's Office in Texas, defending city management in race and other employment discrimination cases. She also worked as a Claims Attorney for Great American Insurance Group. Before joining Baron & Budd, Ms. Kuruppillai also worked as Manager of the Civil Division and Chief Deputy in the Dallas County Clerk's Office. At Baron & Budd, she also worked for a year and a half in our Employment group, preparing motions and performing pre-trial and trial work relating to the Fair Labor Standards Act (FLSA), using the skills she honed as an assistant city attorney to represent clients at Baron & Budd who have been hurt by large companies.

In late 2014, Ms. Kuruppillai re-joined Baron & Budd's Environmental Litigation Group, where she currently reviews discovery documents for the MyFord Touch litigation, an in-car communication system thought to put drivers at risk of an accident, and Trichloropropane (TCP) cases, representing victims of groundwater and soil contamination in several California cities. "I enjoy helping put the pieces of a puzzle together to establish a case against offenders of mass tort, like water contamination or defective products".

BARON & BUDD, P.C.®

Sangeeta Kuruppillai chose a career in law because she wanted to make a constructive difference in people's lives. Her work in our Environmental Litigation Group allows Sangeeta to make a significant impact in the lives of our clients and to positively affect our fragile environment at the same time.

**Brett Land** joined Baron & Budd's Environmental Law Group in 2014 after graduating from Emory University School of Law.  Prior to joining the firm, Brett worked as a summer associate at Baron & Budd for several years, concentrating on cases related to PCE, TCP, MTBE and Atrazine groundwater contamination.

Prior to joining the firm, Mr. Land worked as a summer associate at Baron & Budd for several years, concentrating on cases related to Perchloroethylene (PCE), Trichloropropane (TCP), Methyl tertiary-butyl ether (MTBE) and Atrazine groundwater contamination.  This work strengthened his resolve to help public entities seek justice for wrongful contamination and force the companies responsible to pay for cleanup.

During those summers, Mr. Land had the opportunity to work on a number of major water contamination cases. He performed diligent research and offered invaluable assistance in obtaining positive results for the firm's clients. He also met with and assisted numerous victims of the 2010 Gulf oil spill by filing their legal claims.

Brett Land grew up in Midlothian, Texas, considered by some to be the "cement capital" of the state for its three gigantic cement plants providing a backdrop to practically every childhood memory of his hometown.  Mr. Land says that when the cement company closest to his home billowed smoke from its towering smokestacks at night, the chimneys' floodlights bathed a good part of his neighborhood in a thick, orange, otherworldly haze.  As a youth, Mr. Land often wondered what might be in the smoke that filled the air he and his family were breathing. This concern instilled in the young man a keen desire to make sure that every manufacturer's by-products are safe and, when they're not, to stop those harmful contaminants in their tracks. Baron & Budd is proud to have an attorney on staff with such a passion for his craft and for the safety of our citizens.

**Daniel MacDonald** is an associate with the firm who works primarily on litigation against manufacturers of dangerous drugs and medical devices, representing clients who have been harmed by the very things that should have made them well. Inspired by the example of his grandfather—a small-town lawyer who provided legal services to his neighbors—Daniel knew from an early age that he wanted to practice law with the goal of helping others.

Prior to joining Baron & Budd, Daniel MacDonald clerked for the Honorable Royce C. Lamberth of the U.S. District Court for the District of Columbia. During his clerkship, Mr. MacDonald drafted numerous opinions in civil cases on complex legal issues, including claims against state sponsors of terrorism brought under the Foreign Sovereign Immunities Act and claims against the United States brought under the Federal Tort Claims Act.

BARON & BUDD, P.C.®

Mr. MacDonald received his juris doctor from the George Washington University Law School, where he explored his interest in federal constitutional law through participation in GW's Institute for Constitutional History and the American Constitution Society. Mr. MacDonald received his undergraduate degree from the University of Texas at Austin, where he studied history and political science. Throughout his education, Mr. MacDonald undertook internships in all three branches of federal government, working for the House of Representatives, the National Archives, and the federal courts, learning just what it means to serve the people. Now at Baron & Budd, Daniel MacDonald works to give his clients that same devotion to truth, justice, and what is right.

**Jonas P. Mann**, an attorney in the class action group at Baron & Budd's Los Angeles office, has spent the majority of his legal career helping consumers who have suffered as a result of wrongful business practices. He represents clients nationwide in matters involving defective products, banking fraud, and false advertising. He has been selected for inclusion in "Super Lawyers – Rising Stars Edition" for six consecutive years (Thompson Reuters, 2011 – 2016).

Mr. Mann has exclusively represented plaintiffs during his legal career. Mr. Mann discovered early on that representing people in class actions is especially rewarding because it helps to level the playing field for consumers, who typically would not be able to obtain justice individually.

Prior to joining Baron & Budd, Mr. Mann worked at a plaintiff's firm in San Francisco where he represented clients in a number of consumer fraud, employment, and data privacy class actions as well as pharmaceutical mass torts. He has successfully litigated numerous class action cases involving defective homebuilding materials, including shingles, siding, windows, and decking. Additionally, Mr. Mann has litigated consumer fraud cases against some of the biggest names in Silicon Valley and a false labeling case against one of the country's largest food companies.

Mr. Mann is a West Coast transplant; he was born and raised in Pennsylvania. He earned his J.D. from Temple University's James E. Beasley School of Law in Philadelphia where he was an editor of the Temple Political and Civil Rights Law Review and a Beasley Scholar. During law school Mr. Mann participated in the school's death penalty litigation clinical program and served as a research assistant. He graduated from law school in 2007 and was admitted to the bars of Pennsylvania and New Jersey that year. Following a clerkship at the Superior Court of New Jersey in Atlantic City, he moved to San Francisco and was admitted to the California bar.

Before entering law school, Mr. Mann earned his B.A. in International Affairs *cum laude* and with Departmental Honors from the George Washington University in Washington, D.C.

**Mitchell McCrea** is an attorney in Baron & Budd's Environmental Litigation Group. Mr. McCrea has always been intensely aware of the need for access to clean water. He grew up among farmers and ranchers in southern New Mexico,

southern California and southwest Texas, where water was a scarce and precious commodity.

Although he loved ranch life, his family—aware of the inherent uncertainty of agriculture—encouraged Mr. McCrea to apply himself to his studies. After earning a bachelor's degree with honors in history from Principia College, Mr. McCrea earned a master's degree from the University of New Mexico, focusing on the history of the American West and culminating in his thesis, "The Cowboy and the Crow: Anglo Cattle Ranching on the Crow Indian Reservation." His studies cemented his belief in the importance of fair access to clean water.

"As I was listening to my family's struggles for water for their farming and ranching operations, witnessing and taking an active interest in the growing conflicts over water in the arid Southwest, and studying the history of Western agriculture and environment, I determined water was a—if not *the*—key to success," says Mr. McCrea. "Armed with a law degree, I could position myself to make a positive impact for those who depend on Earth's most precious resource."

Mr. McCrea earned his law degree cum laude from Texas Tech School of Law, where he met his future wife, Kim. Despite early plans to move to New Mexico to work in natural resources law, the couple moved to Dallas to begin their legal careers. With six years of litigation and trial experience under his belt, Mr. McCrea found the chance he had been waiting for to use that experience to pursue his passion.

"As part of Baron & Budd's Environmental Litigation Group, I am involved in litigation every day that motivates me deeply," says Mr. McCrea. "Every day, I fight for clients who endeavor to provide clean water to the public, and I can't think of a better way to spend my time."

But the legal fight hasn't completely subsumed Mr. McCrea s love of ranch life and the American West. In fact, he continues to run cattle and grow corn, alfalfa, and chili peppers with his brother in southern New Mexico. Mr. McCrea also serves on the boards of the Texas Stampede Rodeo, which is held each November and serves a network of children's charities in north Texas, and the Texas Horse Park, which is an equestrian center being developed near downtown Dallas as part of the city's Trinity River Corridor Project.

**Marty A. Morris** was an attorney with a well-known commercial litigation firm for several years before joining Baron & Budd in 1999. He now works with the firm's asbestos litigation group, representing people with mesothelioma and other asbestos-related diseases and assisting with the oversight of the firm's intake department and other firm-wide special projects.

As a Baron & Budd attorney, Mr. Morris values the firm's teamwork approach to the practice of law and an opportunity to make a difference in society. "The firm is passionate about helping people and places that as its highest priority," he says. "The clients I meet and the positive impact we can make on their lives is the best part of the practice of law for me."

BARON & BUDD, P.C.®

Mr. Morris was honored with the distinguished Order of the Coif for his outstanding academic record in law school, where he was also a member of the South Texas Law Review and the Advocacy Program. He also provides pro bono legal assistance through the Dallas Volunteer Attorney Program. Mr. Morris is an avid Texas Rangers fan who also enjoys golf, tennis, and Batman trivia.

**Lydia Murphy** is an attorney in Baron & Budd's Pharmaceutical Litigation Group, where she advocates for clients who have been seriously harmed by prescription medications or medical devices. Ms. Murphy offers compassionate and dedicated representation inspired by her work with indigent clients and immigrants from around the world.

Lydia Murphy earned her Juris Doctor from Western Michigan University Cooley Law School. While at Western Michigan University, Ms. Murphy served as secretary of the Hispanic Latino Law Society and worked closely with the non-profit organization "Justice For Our Neighbors" in order to provide legal services to immigrants throughout the Midwest. During law school, she was awarded the Certificate of Appreciation for her service in the Access to Justice Clinic for her advocacy on behalf of indigent clients facing a variety of family law matters.

Prior to joining Baron & Budd, Ms. Murphy practiced family-based immigration law where she represented immigrant survivors of domestic violence seeking benefits under the Violence Against Women Act and helped many families stay together by successfully proving eligibility to remain in the United States under the Immigration and Nationality Act §212. As a result of her work in family and immigration law, Ms. Murphy has witnessed firsthand how compassionate legal representation can transform lives and change the trajectory of generations to come.

Today, Lydia Murphy is committed to advocating for clients who have been harmed by unsafe pharmaceuticals. As a member of the Pharmaceutical Litigation Group at Baron & Budd, Ms. Murphy is truly honored to be part of a dynamic team of talented attorneys who sets out to change lives and right wrongs every day.

**Staci Olsen** is a member of Baron & Budd's Environmental Litigation Group, where she specializes in the management of electronic information and people in mass litigation. This skill makes her a critical part of the Group, which focuses on large-scale complex environmental torts. She particularly enjoys putting her talents to work for public entity clients facing contamination issues: "Organizing all the evidence to support a client's case is rewarding because I know that my work provides a tangible result for the client."

Ms. Olsen has accrued several years of experience dealing with compiling the evidence necessary to make a solid environmental case. She has worked on atrazine, PCE, and TCP cases, and she works closely with clients who have been harmed by the 2010 Gulf Oil Spill. In addition, she is currently working on MyFord Touch litigation.

BARON & BUDD, P.C.®

Ms. Olsen wanted to be an attorney ever since she was a young girl growing up in rural Colorado on a ranch where water and the environment impacted her daily life. She has traveled extensively, including in law school when she lived in Mexico and attended a summer course to learn the Mexican legal system. Ms. Olsen loves the outdoors and spends her summers in Alaska fishing. She also devotes a lot of time to charity work, including her favorite charity, C.A.R.E., a local organization dedicated to saving exotic large cats.

**Mark Pifko** has made a name for himself as a staunch advocate for consumers' rights. Mr. Pifko has more than ten years of experience litigating complex, multi-party, multi-district and class action cases. Mr. Pifko spent the first seven years of his career representing some of the world's largest companies, but in 2010, he left his position at Arnold & Porter LLP so that he could devote his entire practice to representing the interests of plaintiffs. Mr. Pifko brings his extensive defense side knowledge and a passion for plaintiffs to every case.

Since joining Baron & Budd's Los Angeles office in 2011, Mark Pifko has taken on powerful corporations in class action cases concerning a wide range of products and services, including, banking, motor vehicles, food products and cosmetics. Mr. Pifko's experience on both sides of the courtroom encompasses more than fifty significant complex and class action lawsuits. In addition to his litigation work, Mr. Pifko is a talented writer whose articles on class action law and consumer advocacy have been published in California Lawyer magazine and the Daily Journal newspaper.

**Kathryn Pryor** joined Baron & Budd's Mesothelioma Litigation Group in June 2015. The focus of her career has been representing individuals across the United States who have been diagnosed with preventable asbestos-related diseases.

Ms. Pryor was born in Barrington, Illinois, and raised in Dallas, Texas. She attended college and law school in Tulsa, Oklahoma, after being accepted into the University of Tulsa's six-year B.A./J.D. joint degree program. During law school she served as Attorney General and Delegate of the Student Bar Association. Ms. Pryor started her legal career in 2009 at Simon Greenstone Panatier Bartlett, working on behalf of individuals who have been injured when companies placed profits over safety, specifically in asbestos and pharmaceutical litigation. Ms. Pryor is proud to be a part of Baron & Budd's Litigation Group, where she can continue that important work.

"I enjoy being able to provide some peace of mind to our clients in what is arguably one of the most difficult times of their lives", says Ms. Pryor. "Knowing that manufacturers, distributors and suppliers of the asbestos-containing products to which our clients were exposed are being held accountable for the injuries they caused and, more importantly, that they could have prevented, gives me immense satisfaction."

**Natalie Rabenhorst** joined the Dallas office of Baron & Budd in 2008. While working for a plaintiff's firm during her undergraduate studies, she became intrigued with the litigation process. Ms. Rabenhorst quickly realized she had a

**BARON & BUDD, P.C.®**

passion for the practice of law and for helping injured workers who might not always have the resources or means to help themselves.

Ms. Rabenhorst works in Baron & Budd's settlement department, helping asbestos victims and their families navigate the sometimes complicated lawsuit settlement process. Every day, in ways big and small, she is part of the difference Baron & Budd makes for its clients.

Ms. Rabenhorst was a dean's scholarship recipient at Southern Methodist University's Dedman School of Law. While at SMU, she was selected to the Oxford Summer Program which allowed her to spend a semester studying international law at University College of Oxford in the United Kingdom. After graduating from law school, Ms. Rabenhorst was certain Baron & Budd was the place she wanted to be. "I knew Baron & Budd was a reputable firm with the resources and expertise to truly make a difference and protect those who have been wronged," she says. "If I can play even a small role in helping rebuild the families affected by a corporation's misconduct, I know my work has been a success."

**Anna Rol** is an attorney in Baron & Budd's Pharmaceutical Group, where she represents individuals who have suffered serious injuries after taking a dangerous prescription drug or having a defective medical device implanted.

Throughout her legal career, Ms. Rol has been dedicated to giving a voice to those not in a position to speak for themselves. During law school, Ms. Rol was awarded the 2012 Squire Patton Boggs Public Policy Fellowship for her work with The Nature Conservancy's policy department, where she researched best practices to mitigate habitat damage caused by energy development. Since relocating to Texas, Ms. Rol has volunteered with the Dallas Volunteer Attorney Program and Clemency Project 2014, a working group of lawyers and advocates providing pro bono assistance to federal prisoners who would likely have received a significantly shorter sentence had they been sentenced today. Since joining Baron & Budd, Ms. Rol continues to speak out for those in need by representing people who have been gravely harmed by drugs and devices manufactured by large corporations.

Ms. Rol graduated with her Juris Doctor from the University of Denver, Sturm College of Law. She also earned a Bachelor of the Arts with Distinction in 2008 from the University of Virginia.

**Cristina Sanchez** had originally planned to go to medical school, but her work at a small plaintiffs' firm after college inspired her to instead pursue a career in law. She works primarily with clients who have been harmed by the BP oil spill that severely impacted her hometown of New Orleans.

Ms. Sanchez joined Baron & Budd in 2005 to follow the firm's mission in protecting public and individual rights. She carries out that mission daily in her work as an attorney with the firm's Environmental Litigation Group. Ms. Sanchez' work at Baron & Budd draws on her background in science. As an undergraduate, she majored in biological sciences and minored in chemistry.

BARON & BUDD, P.C.®

Ms. Sanchez currently leads the Group's work helping Gulf Coast businesses and individuals harmed by the 2010 BP oil spill in the Gulf of Mexico. In addition to helping individual victims, she represents a variety of businesses, including a number of complex publicly-traded companies. Working on the BP oil spill litigation has been a way to serve those in the community and the surrounding area where she grew up.

Ms. Sanchez has also represented hundreds of municipalities and public water providers, as well as private well owners seeking solutions for polluted drinking water supplies in cases arising from MTBE, TCP, and PCE contamination.

Ms. Sanchez has been named a Texas Rising Star by Super Lawyers Magazine (a Thompson Reuters organization) for the years 2012, 2013, and 2014. According to Super Lawyers magazine, this honor is for the top 2.5% of attorneys practicing in Texas who are under the age of 40.

While at Southern Methodist University, Ms. Sanchez was recognized as a nationally ranked moot court competitor. In 2002, she was the national champion for Best Brief and was the second place Oralist in the Hispanic National Bar Association Moot Court Competition. She also won the SMU Client Counseling Competition in 2001 and served as Chief Counsel for SMU's Criminal Defense Legal Clinic in 2002.

In addition to her law practice, Ms. Sanchez served as the 2005 Region XII Deputy of the Hispanic National Bar Association, Co-Chair for the 2005 Hispanic National Bar Association Moot Court Competition and Midyear Conference, and Silent Auction Committee for Attorneys Serving the Community in 2009.

**Zack Sandman** joined Baron & Budd's Dallas office in September 2015. He currently works in the Environmental Litigation Group, assisting in complex torts ranging from water and air contamination to negligently caused wildfires. Prior to joining the firm, Mr. Sandman spent the summer of his second year at law school working as a law clerk for Baron & Budd, helping state governments and city municipalities recover damages from big oil companies for Methyl tertiary-butyl ether (MTBE) water contamination.

Zach Sandman was born and raised in Boston, Massachusetts, where he attended law school at Boston College. Following his second year of law school, Mr. Sandman joined Baron & Budd's Environmental Litigation Group as a summer associate. In this role he assisted in several of the nation's largest water contamination cases, representing public entities, both at the state and city level, in water contamination litigation. Mr. Sandman also helped secure payment from the BP claims department for many fisherman affected by the BP oil spill.

After law school, Mr. Sandman eagerly re-joined Baron & Budd as an associate and returned to working in the Environmental Litigation Group. He immediately began assisting with a groundwater case in California involving the exposure of hundreds of students and faculty to the toxic substance Trichloroethylene (TCE) and other dangerous heavy metals. Following the historic Butte Wildfire, which

BARON & BUDD, P.C.®

burned more than 7,000 acres and destroyed nearly 500 homes near San Andreas, California, Baron & Budd sent Mr. Sandman into the heart of fire country to meet with those devastated by an apparent failure of Pacific Gas and Electric to properly maintain their electrical wires in thickly wooded areas. Mr. Sandman successfully filed the first Butte Wildfire lawsuit in San Francisco in November, 2015, and expects to file many more claims in the coming months.

While living in China working as a writer for the China Economic Review between undergrad and law school, Mr. Sandman was deeply disturbed by the Chinese Government's indifference to the widespread pollution that plagued Shanghai. Although Mr. Sandman had always planned on attending law school, seeing one of his favorite cities in the world caked in soot and debris inspired him to pursue a career in environmental law. Mr. Sandman hopes to one day use his experience at Baron & Budd to assist in pro-bono environmental advocacy in China.

In addition to his law degree, Mr. Sandman holds a B.A. in Political Science from Vanderbilt University in Nashville, Tennessee, where he graduated with honors in 2009.

**Holly Werkema** joined Baron & Budd in May of 2012 in the firm's General Litigation Group, representing homeowners throughout the southeast affected by toxic Chinese drywall installations in their homes. After settlement with the drywall manufacturer, Ms. Werkema continues to assist hundreds of the firm's clients in navigating the claims process that will ultimately lead to repair and/or replacement of the toxic drywall in their homes.

Ms. Werkema is a also a member of the firm's Pharmaceutical Litigation Group, where she represents clients and their families adversely affected by Granuflo, a product used in dialysis that has caused countless deaths due to misleading and inadequate use instructions provided to health care professionals by its manufacturer.

Prior to joining Baron & Budd, Ms. Werkema served the State of Florida Department of Financial Services as an attorney in the Prosecution and Enforcement Litigation Group. There she developed her litigation skills representing the Department in enforcement proceedings, rule challenges, property claim denials and garnishments.

**Evan Zucker** works in Baron & Budd's Los Angeles office. He specializes in consumer class action litigation and insurance bad faith cases. Mr. Zucker is dedicated to fighting for the rights of consumers who have been harmed by the systematic and uniform practices of unscrupulous corporations.

Before joining Baron & Budd in 2014, Evan Zucker represented clients in matters which had positive ramifications across the country for those who had been victims of improper mortgage and loan-service fees. He has been appointed class counsel or co-class counsel in more than a dozen state and nationwide class action matters dealing with such corporate malfeasance. In three such cases, Mr. Zucker

BARON & BUDD, P.C.®

successfully recovered compensation for mortgage holders in California, New Jersey and Massachusetts who had been improperly charged late fees and mortgage-related servicing fees.

Earlier in 2014, Mr. Zucker worked as part of a trial team which won a verdict on behalf of an elderly couple against a home insurance company in a matter stemming from the total destruction of their dwelling during the 2009 Los Angeles wildfire known as the Station fire. In that case, the jury made a finding that allowed punitive damages against the insurer for acting with malice toward the couple, essentially forcing them to live in a cramped hotel room for two and a half years while the insurance company repeatedly and fraudulently denied them the full value of their insurance claim.

Before starting work at Baron & Budd, Mr. Zucker also represented several individuals in civil rights cases against various state and local law enforcement entities, receiving several favorable settlements for these citizens. Additionally, he worked with California senators to pass legislation protecting the privacy of Californians who were victimized by online extortion schemes which posted consumers' personal information. He was instrumental in furthering litigation aimed at shutting down these cyber-thieves.

Mr. Zucker was in middle school when his family's home was devastated by the Northridge earthquake in 1994. At the time he saw the tremendous impact that industry-wide insurance practices could have on middle class families, especially after a natural disaster. As a result of this experience, even before deciding to attend law school, Mr. Zucker gravitated toward work in law firms that handled cases against insurance companies, including those against insurers who engaged in malicious claims handling practices. Ultimately, Mr. Zucker found himself working to recover hundreds of millions of dollars on behalf of commercial and residential policyholders faced with catastrophic losses after that same 1994 Northridge earthquake. As a result of these experiences, he was inspired to seek a career in law. Mr. Zucker has been representing citizen plaintiffs ever since, and will continue that work as a part of Baron & Budd's Banking Fraud and Automotive Defect team.

In his spare time, Mr. Zucker enjoys playing basketball and likes to snowboard in winter. And although he learned to juggle balls in the air as a youth, these days he prefers to concentrate his multitasking skills on giving Baron & Budd's clients the best representation possible.

# **Exhibit 19**

JEFFREY S. GIBSON, is a partner with Cohen & Malad, LLP, located in Indianapolis, Indiana.

Education:   Indiana University (BA 1997), and Indiana University School of Law Indianapolis (JD 2000).

Jurisdictions Admitted to Practice:   State of Indiana; U.S.D.C., Northern District of Indiana; U.S.D.C., Southern District of Indiana; and Seventh Circuit Court of Appeals; U.S.D.C., District of Colorado; U.S.D.C., Western District of Michigan; U.S.D.C., Eastern District of Wisconsin.

Professional and Bar Association Memberships:  American Association for Justice; Indiana Trial Lawyers Association; Top 40 Under 40; Indiana Bar Association, Indianapolis Bar Association.

Professional Achievements: Indiana Rising Star, Thomson Reuters 2010, 2012, 2013, Indiana Super Lawyer, Thomson Reuters 2014- 2016, National Trial Lawyer Association, 40 Under 40 Indiana State Chair, 2014-2015

Practice Areas: Product Liability and Personal Injury Litigation, focusing primarily on representing Plaintiffs in product liability litigation in nation-wide matters involving pharmaceutical drugs and medical devices as well as complex consumer litigation.

Cohen & Malad, LLP has successfully litigated and resolved a wide range of complex litigation matters, serving on the executive committee in the historic litigation brought against Swiss banks on behalf of Holocaust survivors, *In re Holocaust Victim Assets Litigation*, as well as recent antitrust actions involving the ready mixed concrete industry in Indiana and in Iowa, *In re Ready-Mixed Concrete Antitrust Litigation*, and *In re Iowa Ready-Mix Concrete Antitrust Litigation*. The firm also has extensive experience with complex litigation against Indiana state agencies, *Raab v. R. Scott Wadell, in his official capacity as Commissioner of The Indiana Bureau of Motor Vehicles et al*., and *Moss v. Mary Beth Bonaventura, in her official capacity as Director of the Department of Child Services et al.*

Mr. Gibson has served in a leadership role for Cohen & Malad, LLP's national participation in drug and device litigation including: Plaintiff's Steering Committee and chair of the non-party discovery committee *In re Prempro Products Liability Litigation*, MDL No. 4:03-CV-1507;  Plaintiff's Steering Committee and chair of the bellwether discovery program *In re Consolidated Fresenius Cases* (GranuFlo) pending in the Commonwealth of Massachusetts, Middlesex County, MICV2013-3400-O;  and national coordinating counsel in infusion pain pump cases, where no MDL existed.  He is currently a member of the Plaintiff's Steering Committee for *Zofran (Ondansetron) Products Liability Litigation* MDL No. 2657.

In addition to pharmaceutical and medical device litigation, Mr. Gibson served on the medical malpractice litigation team representing approximately 282 clients who were patients of former ENT surgeon Dr. Mark Weinberger. Weinberger was accused and convicted of performing unnecessary and improper sinus surgeries on hundreds of patients.

Mr. Gibson has written articles that have been published in nationally recognized legal journals.  He has also served as a lecturer at local and national conferences. He has spoken at Mass Torts Made Perfect; American Association for Justice national conferences; Indiana Trial Lawyers Association seminars; National Business Institute Continuing Legal Education seminars; and a Massachusetts Women's Bar Association conference on mass torts.  He has repeatedly been selected as a member of Indiana's Super Lawyers® and currently serves as the Indiana chair for the National Trial Lawyers "Forty Under Forty."

Mr. Gibson is currently representing plaintiffs around the country who have been injured by the following dangerous products:

- Vaginal Mesh
- GranuFlo use in Kidney Dialysis
- Talcum Powder
- Testosterone Replacement Therapy
- Metal on Metal Implants

Mr. Gibson has also represented victims of torts in many state courts, including Indiana, California and Florida.  His practice also includes representing victims of medical malpractice in Indiana and other states.

# *Firm Biography*

## *For*

# COHEN & MALAD, LLP

**ONE INDIANA SQUARE, SUITE 1400**

**INDIANAPOLIS, INDIANA 46204**

**(317) 636-6481**

**www.cohenandmalad.com**

**COHEN & MALAD, LLP** was founded in 1968 by former Indiana Attorney General, John J. Dillon, Louis F. Cohen and others.  Cohen & Malad's complex litigation practice involves mass torts and class actions, as well as other civil actions in Courts throughout the United States.

Cohen & Malad has the experience and resources to litigate complex litigation cases.  Cohen & Malad has served in leadership and plaintiff steering committees in I*n re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*; *In re Prempro Prods. Liab. Litig.*; *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig*; and *In re Consolidated Fresenius Cases* (GranuFlo),  *Zofran (Ondansetron) Products Liability Litigation*, and has served as national coordinating counsel in pain pump litigation as well as lead counsel in medical malpractice mass tort matters.  Cohen and Malad has served as lead counsel in antitrust matters, *In re Ready-Mixed Concrete Antitrust Litig*., No. 1:05-cv-979-SEB-JMS (S.D. Ind.) (settlements provided for a recovery of $59 million, which allowed for a net distribution to class members of approximately 100% of their actual damages); *In re Iowa Ready-Mix Concrete Antitrust Litig*., No. C 10-4038-MWB (settlement totaled $18.5 million, which allowed for a net distribution to class members of approximately 100% of their actual damages); and in consumer matters, In re Indiana Construction Industry Trust, (Marion Superior Court) (action against an insolvent health benefits provider where Cohen & Malad recovered approximately $24 million for enrollees, providing nearly 100% recovery to victims); *Price v. BP Prods. N. Am., Inc.,* No.1: 12-cv-06799 (N.D. Ill.) (action on behalf of motorists that purchased contaminated gasoline recalled by BP where a settlement of $7 million was achieved); among dozens of other matters.  The firm also has extensive experience with complex litigation against Indiana state agencies, *Raab v. R. Scott Wadell, in his official capacity as Commissioner of The Indiana Bureau of Motor Vehicles et al*., and *Moss v. Mary Beth Bonaventura, in her official capacity as Director of the Department of Child Services et al.*

Cohen & Malad is also committed to achieving social justice, with it being selected as one of ten firms from the United States to serve on the executive committee in the prosecution of a world-wide class action against three major Swiss banks to recover assets from the Nazi era. This litigation resulted in a $1.25 billion settlement in favor of Holocaust survivors.

# **<u>Exhibit 20</u>**

# KRISTIE M. HIGHTOWER

501 Broad Street
Lake Charles, LA 70601
(337) 439-0707
khightower@lundylawllp.com

## EDUCATION

Mississippi College School of Law, Jackson, Mississippi
Juris Doctorate, December 2007

Louisiana State University, Baton Rouge, Louisiana
Bachelor of Arts Degree, May 1991

## WORK HISTORY

**Partner**
Lundy, Lundy, Soileau & South, LLP, Lake Charles, Louisiana, January 2016 - present

**Associate/Senior Associate**
Lundy, Lundy, Soileau & South, LLP, Lake Charles, Louisiana/Jackson, Mississippi,  2008 - 2015

**Mass Tort Litigation Paralegal**
Lundy, Lundy, Soileau & South, LLP, Lake Charles, Louisiana/Jackson, Mississippi, 1996-2008

**Assistant Director**
LSU Alumni Association, Baton Rouge, Louisiana, 1991-1996

## BAR ADMISSIONS

Louisiana and Mississippi Supreme Courts
All Mississippi Federal Courts
United States District Court for the Eastern District of Louisiana
United States District Court for the Western District of Louisiana
United Sates Court of Appeals for the Fifth Circuit

## PROFESSIONAL ORGANIZATIONS

American Association for Justice            Mississippi Bar Association
American Bar Association                    Capital Area Bar Association
Louisiana State Bar Association             Madison County Bar Association
Louisiana Association for Justice           Bar Association of the Fifth Federal Circuit
Southwest Louisiana Bar Association

## PROFESSIONAL EXPERIENCE

Throughout her employment with Lundy, Lundy, Soileau & South, LLP counsel has assisted in the litigation of numerous consumer, pharmaceutical and environmental matters in both federal and state courts including the following:

- *In Re: Benicar (Olmesartan) Products Liability Litigation*, MDL 2606.
- *In Re: Roundup Products Liability Litigation*, MDL 2741.
- *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179
- *In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability*, MDL No. 2428.
- *Murray v. Motorola*, In the Superior Court for the District of Columbia, Case No. 2001 CA 008479 B, products liability action as to cell phone radiation.
- *Cynthia Paige, et al. v. Durawood, LLC, et al.*, 9th Judicial District Court, Parish of Rapides, State of Louisiana, No. 214,913-F, creosote contamination action.
- *Willie Buard, et al. v. Colfax Treating Co., et al.*, 9th Judicial District Court, Parish of Rapides, State of Louisiana, No. 214,915-F, creosote contamination action.
- *Fred Beck, et al. v. Koppers, Inc., et al.*, United States District Court for the Northern District of Mississippi, C.A. No. 3:03CV-60-P-D, creosote contamination action.
- *Hope Ellis, et al. v. Koppers Industries, et al.*, United States District Court for the Northern District of Mississippi, C.A. No. 3:04 CV160-P-D, creosote contamination action.
- *Williams, et al. v. Kuhlman Corporation, et al.*, Hinds County Circuit Court, First Judicial District, Civil Action No. 251-03-000102-CIV, contamination action involving PCBs.
- *Paul Kellum, et al. v. Kuhlman Corporation, et al.*, Circuit Court of Copiah County, Mississippi, Civil Action Nos. 2001-0313 thru 2001-0324, consolidated contamination action involving PCBs.
- *Lilith Jackson, et al. v. Johnson Electric Automotive, et al.*, Circuit Court of Lowndes County, Mississippi, Civil Action No. 2201-1024CIV, suit involving perchloroethylene (PCE) contamination directed at personal injury and property loss.
- Avoca, Pennsylvania Kerr-McGee related litigation including *Mary Beth Marriggi, et al. v. Kerr-McGee Corporation, et al.*, Court of Common Pleas of Luzerne County, CA No. 6894C2001, actions regarding creosote contamination.
- *Shirlean Taylor, et al. v. Kerr- McGee Corporation, et al.*, In the United States District Court for the Western District of Louisiana, Shreveport Division, CA No. 00-2102, creosote contamination action.
- *Robert Conner, et al. v. Kerr-McGee Corporation, et al.*, In the United States District Court for the Northern District of Mississippi, Eastern Division, CA No. 1:01cv77-D-A, class action involving creosote contamination.
- *Major Andrews, III et al. v. Kerr-McGee Corporation, et al.*, In the United States District Court for the Southern District of Mississippi, Jackson Division Civil Action No. 3:99CV655BN, creosote contamination action.

- *Craig West, et al. v. G&H Seed and Rhone-Poulenc Ag Company, Inc.*, 27th Judicial District Court, Parish of St. Landry, State of Louisiana, No. 99-4984-A, class action in connection with pesticide that damaged the Louisiana crawfish industry.
- *Gwendolyn Guillory, et al. v. Union Pacific Corporation, et al.*, 14th Judicial District Court, Calcasieu Parish, Louisiana, Suit No. 98-5405, matter involving the contamination of soil, ground and groundwater where approximately 12,000 gallons of perchloretholyne (PCE) was spilled into a community.
- *Sally Comeaux, et al. v. Vista Chemical Company, et al*, 14th Judicial District Court, Calcasieu Parish, Louisiana, Suit No. 95-6359, ethylene dichloride (EDC) groundwater contamination action, resulting in the relocation of community.

## PAPERS AND/OR PRESENTATIONS

- "Cell Phones and Brain Cancer," Harris Martin's Emerging Toxic Tort Litigation Conference, Long Beach, California, December 11, 2015.
- "The Continued Effort to Deny Justice," Co-author, Louisiana Association for Justice Conference, New Orleans, Louisiana, December 10-11, 2015.
- "To Boldly Go Where No Litigator Has Gone Before - A New Litigation Frontier, An Overview of the Developing Science," American Association for Justice Conference, Montreal July 2015.
- "Cell Phone Radiation – The Next Asbestos or A Boondoggle," Co-author, American Association for Justice Conference, Chicago, Illinois, 2012.
- "Document Control and Litigation Support," IPE Seminar, Jackson, Mississippi, September, 2008.
- "Document Control and Litigation Support," IPE Seminar, Overland Park, Kansas, November, 2008.

## AWARDS

Super Lawyers Rising Star, 2017
The National Trial Lawyers Top 100, 2015-2016
Mass Tort Trial Lawyers Top 25, 2016

# LUNDY, LUNDY, SOILEAU & SOUTH, LLP

## FIRM PROFILE

Lundy, Lundy, Soileau & South, LLP ("LLS&S") is a full service law firm located in Lake Charles, Louisiana.  The firm was begun in 1986 by senior partner, Hunter W. Lundy and is compromised of nine attorneys:  Hunter W. Lundy, Matthew E. Lundy, Rudie R. Soileau, Jackey W. South, Kristie M. Hightower, Daniel A. Kramer, T. Houston Middleton IV, Nicholas J. Kohrs and Max E. Guthrie.

Before consolidating the firm's efforts to one office in Lake Charles, Louisiana, the firm had offices in Jackson, Mississippi, Houston, Texas, New Orleans, Louisiana and Fayetteville, Arkansas.  With today's technology and resources, the firm operates its practice out of Louisiana, but performs professional services throughout the country.  LLS&S has multiple lawyers rated by Super Lawyers® and the five members of the partnership have more than one hundred combined years of trial experience.  The firm is listed by Martindale-Hubbell in the Bar Register of Preeminent Lawyers, recognized as a Top 1% Litigator Award Winner ™ and designated one of *U.S. News & World Report Best Law Firms©*.  In addition, LLS&S partners have been acknowledged as Top 100 Trial Lawyers by The National Trial Lawyers Association.

LLS&S is dedicated to improving communities, safety procedures and consumer products, and represents clients across the United Sates. With an emphasis on trial work and civil litigation both in state and federal courts, LLS&S has been on the cutting edge of providing services to thousands of families who have been victims of personal injuries or suffered property damage as a result of industrial and chemical contamination.  Over the last decades, the firm has focused not only on toxic and mass tort litigation, but also consumer products liability and personal injury cases.

The firm has served on numerous MDLs/PSCs including:

- *In re: High Sulphur Content Gasoline Products,* MDL No. 1632;
- *In re: Vioxx Products Liability Litigation*, MDL No. 1657;
- *In re: Bextra and Celebrex Marketing and Sales Practices and Product Liability Litigation*, MDL No. 1669;
- *In re: Ortho Evra Products Liability Litigation,* MDL No. 1742;
- *In re: Genetically Modified Rice Litigation*, MDL No. 1811;
- *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179;
- *In re: Fresenius Granuflo/Naturalyte Dialysate Products Liability*, MDL No. 2428;
- *Spitzfadden, et al. v. Dow Corning Corp.*, et al., Civil District Court for the Parish of Orleans, State of Louisiana, Docket No. 92-2589, Div. "F";
- *Conner, et al. v. Kerr-McGee Corp., et al.*, USDC, Northern District of Mississippi, CA No. 1:01 CV 77-DA;
- *Kaleel, et al. v. Division Transport, et al.*, 33rd Judicial District Court, Parish of Allen, State of Louisiana; and
- *Craig West, et al v. G&H Seed Company, et al.*, 27th Judicial District Court, Parish of St. Landry, State of Louisiana, Docket No. 99-4984-A.

Members of LLS&S have been trial counsel in many mass torts and class actions, having tried cases in Arkansas, Mississippi, Louisiana and Texas, and litigated cases in California, Ohio and Pennsylvania including the following:

- Lead Trial Counsel in *Louis Boullion, et al. v. PPG Industries, Inc., et al.*, 14th Judicial District Court, Parish of Calcasieu, State of Louisiana. Discharge of toxic chemicals into the waterways, impacting shrimp population.
- Lead Trial Counsel in *Sally Comeaux, et al. vs. Vista Chemical Company, et al.*,14th Judicial District Court, Parish of Calcasieu, State of Louisiana. Groundwater contamination caused by leakage and spills.
- Co-Lead Counsel in *Haltom v. Bayer Corp.*, Texas District Court, Neuces County, Texas. First Baycol trial in the United States.  Thereafter member of discovery committee for Texas 8th Region consolidated cases, which ultimately concluded in settlements for victims throughout the country.
- Lead Trial Counsel in *Mary E. Green, et al. v. Alpharma, Inc., et al.*, Circuit Court, Washington County, Arkansas.  Contamination and personal injuries caused by spreading of chicken litter containing arsenic on neighboring farmland that caused leukemia cluster in the area.
- Lead Counsel in *Lilith Jackson, et al. v. Johnson Electric Automotive, et al.*, Circuit Court, Lowndes County, Mississippi.  Groundwater contamination and personal injuries caused by leakage and spills.
- Lead Trial Counsel in *Fred Beck, et al. vs. Koppers Ind., Inc., et al.*, United States District Court, Northern District of Mississippi.  Community contaminated and personal injuries caused by creosote.
- Lead Trial Counsel in Kerr-McGee Creosote Plant contamination actions in Louisiana, Mississippi and Pennsylvania.  Communities contaminated and personal injuries caused by pesticides/creosote from Kerr-McGee facilities.
- Trial Team Member in *Kellum, et al. v. Kuhlman Corp., et al.*, Circuit Court, Copiah County, Mississippi.  Community affected by PCB contamination and personal injuries.
- Lead Trial Counsel in *Willie Buard, et al. v. Colfax Treating Company, LLC, et al.*; Docket No. 214,915, 9th JDC, Rapides Parish, LA. Pesticide/creosote contamination and personal injuries.
- Lead Trial Counsel in *Cynthia Paige, et al. v. Dura-Wood, LLC et al.*; Docket No. 214,913, 9th Judicial District Court, Parish of Rapides, State of Louisiana. Pesticide/creosote contamination and personal injuries
- Lead Trial Counsel for *Yellow Rock, LLC, et al. v. Sasol North America, Inc., et al.*, 14th Judicial District Court, Parish of Calcasieu, State of Louisiana. Well blowout due to unexpected high pressures resulting from leaking underground storage cavern.
- Lead Counsel in *Gwendolyn Guillory, et al. v. Union Pacific Corp., et al.*, 14th Judicial District Court, Parish of Calcasieu, State of Louisiana. Community contaminated by spills leaked from a railroad tank car storage area.

- Counsel in *Carolyn Baker, et al. v. Chevron USA, Inc., et al.*, United States District Court, Southern District of Ohio. Groundwater contamination caused by leakage and spills of leaded gasoline and diesel.
- Lead Counsel in *Bradley Benoit, et al. v. Citgo Petroleum Corp., et al.*, 38th Judicial District Court, Parish of Cameron, State of Louisiana; Lead Counsel in *Antoine Semien, Jr., et al. v. Citgo Petroleum Corp., et al.*, 14th Judicial District Court, Parish of Calcasieu, State of Louisiana.   Refinery released over three millions gallons of oil into Calcasieu Estuary.
- Co-Lead Counsel in *Murray v. Motorola*, In the Superior Court for the District of Columbia, Case No. 2001 CA 008479 B.   Cell phone radiation exposure causing brain tumors.

LLS&S has extensive experience leading and participating in MDLs generally, and is comprised of experienced trial attorneys with vast experience in mass torts and bellwether trials. LLS&S has a proven track record of working collaboratively and efficiently in large, complex cases, with both co-counsel and opposing counsel and has the resources available to prosecute such matters in a timely manner.

# Exhibit 21

**Daniel R. Lapinski**
**(Professional Bio)**

Daniel R. Lapinski is a shareholder and a member of the Mass Tort Class Action team at Wilentz, Goldman & Spitzer.  Dan concentrates his practice on mass tort cases, representing victims who have been harmed by dangerous pharmaceutical products and defective medical devices.  As a former surgical representative for a major medical device manufacturer, Dan brings a unique perspective to the analysis of cases involving defective drugs and medical devices. He understands not only the law, but the products and injuries that can be associated with those products.

For over 15 years Dan has been fighting for the rights of clients in mass tort cases. Dan's active participation in these cases after coordination enable him to have an instrumental voice in the litigation and effectively advise his clients, even though their cases may have been transferred to courts in different parts of the country.  Dan presently serves on Plaintiffs' Steering Committees or plays an active role in many ongoing mass torts, including:

- *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, pending in United States District Court for the Northern District of Illinois;
- *In re Mirena Litigation, pending in the Superior Court of New Jersey;*
- *In re DePuy ASR Hip Implants Litigation*, pending in the Superior Court of New Jersey;
- *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, pending in United States District Court for the District of New Jersey;
- *In re Stryker Rejuvenate & ABG II Modular Hip Implant Litigation*, pending in the Superior Court of New Jersey.

Dan's experience and expertise also extends to complex consumer actions.  Wearing this hat, Dan has successfully argued federal preemption issues before the United States Court of Appeals for the Third Circuit and continues to be or has been actively involved in noteworthy cases, including:

- *DeMarco v. AvalonBay Communities, Inc.*, an ongoing class action pending in the United States District Court for the District of New Jersey, wherein the Court appointed Mr. Lapinski co-lead counsel for the class.  The consolidated cases allege that defendant's negligence caused a massive fire that destroyed an entire apartment building at the residential complex known as Avalon at Edgewater;
- *D.C.G. & T., et al., v. Knight, et al.*, a $12 million settlement of a shareholder derivative action to the interests of pre-merger Apple REIT Nine, Inc. in connection with the merger of two other Apple REITs into Apple REIT Nine;
- *In re Ford Explorer Cases*, a California class action that was settled on behalf of nearly one million vehicle owners residing in California, Connecticut, Illinois and Texas following 50 days of trial in Sacramento, California;

- *Alexander v. Solvay Pharmaceuticals, Inc.*, a $30 million class settlement on behalf of California purchasers of a pharmaceutical product alleged to have been falsely and deceptively advertised;
- *Slaughter v. Unilever United States, Inc.*, a nationwide settlement on behalf of a class of consumers who purchased Super Shots, a fruit blend product deceptively alleged to help control blood pressure;

After completing his undergraduate education at Rutgers University, Dan obtained his J.D. from Seton Hall University School of Law.  He is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the First, Third, Fourth and Tenth Circuits, and the state and federal courts of New Jersey, New York and Pennsylvania.  Dan is a member of the American Association for Justice (AAJ), the New Jersey Association for Justice (NJAJ), the New Jersey State Bar Association and the New York State Bar Association   He has been selected for inclusion in New Jersey Super Lawyers® - Rising Stars for 2011 and New Jersey Super Lawyer for 2013, 2014 and 2015.

Dan's active participation in both mass tort and class action litigations have made him a sought after speaker at both the local and national level.  He has presented on the topic of class actions at the New Jersey State Bar annual conference, served as a panelist for the State Bar's class action committee, presented on mass tort issues for both Harris Martin Publishing and the American Association of Justice, and has been a regular speaker at NJAJ's Annual Boardwalk Seminar.



| **Wilentz Firm Profile** | Wilentz, Goldman & Spitzer, P.A., (Wilentz) is one of the largest law firms in the State of New Jersey, tracing its historical roots to the law practice founded by David T. Wilentz in 1919 in the City of Perth Amboy.  Our main offices are located in the Wilentz Building at 90 Woodbridge Center Drive in Woodbridge, New Jersey, near the junction of Routes 1 and 9, the Garden State Parkway, New Jersey Turnpike, and Interstate Highway I-287. Wilentz also has offices located at Meridian Center 1, Two Industrial Way West, Eatontown, New Jersey; 110 William Street, 26th Floor, New York, New York; and Two Penn Central Plaza, Suite 910, Philadelphia, Pennsylvania. |
|---|---|

Wilentz attorneys have served the judicial system, government, and the community, dating back to David T. Wilentz's prosecution of the Lindbergh baby kidnapping case as New Jersey State Attorney General in 1935.   Managing partner and son of the firm's founder, Robert N. Wilentz, was named Chief Justice of the New Jersey Supreme Court in 1979, and lead one of the most respected courts in the nation until his retirement in 1996.  Wilentz partner, Barry T. Albin, was named to the New Jersey Supreme Court in 2002.  Former Associate Justice of the New Jersey Supreme Court, Alan B. Handler, joined Wilentz as counsel in 1999.

Wilentz partner, Edward Kole, currently serves as the Second Vice President of the Association of the Federal Bar of New Jersey. Other Wilentz partners currently serve, or have served, as Trustees of the Association of the Federal Bar of New Jersey, members of the Court's Lawyer's Advisory Committee, and Chair of the Federal Practice and Procedure Section of the New Jersey State Bar Association.  Two Wilentz partners have also served as President of the New Jersey State Bar Association, Matthias D. Dileo and Stuart A. Hoberman.

**Mass Tort and Class Actions**   The Wilentz firm's pioneering work in Mass Tort and Class Action litigation began more than three decades ago.  Wilentz was among the first firms in the country to file asbestos personal injury cases, dating back to 1977, and has litigated asbestos talc cases since the 1980's.  During this time Wilentz has recovered in excess of a billion and a half dollars for its clients, and uncovered numerous asbestos industry frauds and cover-ups about the hazards of asbestos.  It brought the first personal injury case against big tobacco, and was instrumental in the formation of one of the first specialized state mass tort courts in Middlesex County, New Jersey.

1

#8856942.1



Wilentz's Mass Tort / Class Action Group was recognized as National First Tier by U.S. News & World Report, Best Lawyers – Best Law Firms for Mass Tort Litigation/Class Action Plaintiffs for each year from 2010 through 2016.  Many of the team's attorneys are recognized as Super Lawyers, Best Lawyers in America and other distinctions.

The Mass Tort / Class Action Team at Wilentz has years of experience handling a wide variety of mass torts and class actions including consumer fraud, products liability, occupational and environmental exposure, securities fraud, antitrust, healthcare, insurance bad faith, and employment.  Some of the accomplishments of the team and its partners are as follows:

- Co-lead trial counsel in the first New York Consolidated Brooklyn Navy Yard Asbestos Trial in 1990, and in the first New York Powerhouse Consolidation in 1993, recovering $17.9 million and $110 million, respectively.

- Class Counsel in the pioneering Johns Manville Asbestos Bankruptcy Class Action litigation.

- Plaintiffs' Steering Committee for National MDL 875 Asbestos Litigation.

- Represented the State of New Jersey against the tobacco industry and, with co-counsel, generated a landmark $7.6 billion settlement for the citizens of New Jersey.

- Served as Class Counsel in the New Jersey Diet Drug Litigation and Special Counsel to all State Court Litigants in the National Diet Drug MDL.  Served on the litigation team that negotiated a $3.75 billion landmark class action settlement for those injured by the diet drugs Pondimin and Redux, commonly known as Fen-Phen.

- Served on Plaintiffs' Steering Committee for National TMJ MDL litigation, National Rezulin MDL Litigation, and lead counsel for NJ state wide Propulsid Litigation.

- Represented the City of Newark and the City of New York in novel litigation against the lead paint industry.

- Co-lead counsel in some of the largest environmental contamination litigations in New Jersey, including the

#8856942.1



Ciba-Geigy, Toms River, New Jersey litigation for personal injury, property damage and medical monitoring claims, and the DuPont, Pompton Lakes, New Jersey litigation that resulted in one of the largest private sector environmental contamination settlements, $38.5 million.

- Co-lead counsel in *In re DePuy ASR Hip Implants Litigation*, pending in the Superior Court of New Jersey (Nationwide settlement, in excess of $250 million, against Johnson & Johnson subsidiary, related to claims of defective metal-on-metal hip implants.)

- Member of Plaintiffs' Steering Committee, *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, pending in United States District Court for the Northern District of Illinois. Mass tort litigation related to alleged defects in Zimmer "Flex" knee implants.

3

# **Exhibit 22**

Victoria Maniatis, Esq.
Sanders Viener Grossman, LLC
100 Garden City Plaza, Ste. 500
Garden City, NY 11530
516.640.3913/516.491.4665
vmaniatis@thesandersfirm.com



 Victoria J. Maniatis graduated with a BA from the Pennsylvania State University in 1990, a J.D. from Hofstra University School of Law in 1993 and has been admitted to practice law in New York and New Jersey since 1994.   After a 5 year career as a general negligence defense attorney, Vicki started practicing in the field of Plaintiffs' Mass Tort in 1998 at Kreindler & Kreindler litigating Aviation disasters. Currently she is a partner at The Sanders Firm where she works on mass tort cases involving pharmaceuticals and medical devices, the field she has worked in for fifteen years. She is a frequent invited lecturer and moderator on a wide variety of pharmaceutical and mass tort cases and has published articles on pharmaceuticals and vaccines.

Ms. Maniatis has been appointed by State and Federal Judges to serve as lead counsel and on Plaintiffs' steering committees.   She currently acts as lead counsel in the New Jersey Propecia Multi County Litigation, Fosamax Femur PSC (under appeal), the Transvaginal Mesh MDL PSC's in the Bard, Boston Scientific, American Medical Systems (all in settlement) and Ethicon cases (bellwether phase), as well as the Benicar (Olmesartan) MDL PSC.  Vicki has also performed an abundance of valuable common benefit work outside her PSC appointments.  She and her firm have the time and resources necessary to serve on the Talc MDL PSC, if selected.  Regardless, she expects to contribute her efforts to the litigation.

Ms. Maniatis has directed her attention on developing bellwether cases for trial, expert development and focus groups.    Her firm members also have expertise in discovery matters, including ESI, Plaintiff Fact Sheet creation and electronic management, and review (training, hosting, managing and performing).

**BELLWETHER TRIAL WORK-UP**

Vicki performs all levels of bellwether trial case specific work up including , plaintiff, spouse and family member depositions,  implanting, explanting, treating physicians, sales representative and expert depositions, for at least 30 cases in TVM, Mirena and Propecia cases.

Vicki also serves on the Benicar MDL Bellwether committee and Propecia MDL Bellwether Committee where she assisted the Teams by reviewing and evaluating cases for potential bellwether selection.

**EXPERTS**

Vicki has taken part in researching, meeting, retaining, working with experts for depositions and all levels of preparation in several litigations she has worked on and can provide additional information in this regard (subject to strategy and attorney work product).   Ms. Maniatis also has resources of Dr. John Restaino, a J.D. consultant to the firm.  Dr. Restaino is very helpful in assisting with Expert development in the various litigations.

Ms. Maniatis is also a co-founder of a program, Mass Tort Med School, that focuses on the medical and science issues in new and developed Mass Torts.  The program includes numerous physician speakers and cutting edge medical issues.

**FOCUS GROUPS**

Vicki has participated in focus group/mock trial scenarios for medical malpractice, aviation disasters, and pharmaceutical cases.   She has presented as counsel and witnesses for both Plaintiff and defense in Mock trials, and focus groups.

**HONORS AND ACTIVITIES**
Vicki has been recognized as a Top Attorney of the New York Metro Area and a Top Women Attorney in the New York Metro Area (2013 to date).   She is an active participant in the American Association for Justice (AAJ), New Jersey Association for Justice and New York State Trial Lawyers Association (NYSTLA).  Ms. Maniatis serves as one of the founding members of the Mass Tort Med School's annual medical seminar for Plaintiffs' attorneys and has served as a committee co-chair for the Women En Mass group.

**Sanders Viener Grossman, LLP**
Attorneys at Law
www.TheSandersFirm.com
100 Garden City Plaza, Ste. 500
Garden City, New York 11530
Tel. (516) 741-5600

The Sanders Firm is one of the largest personal injury firms in New York, and with over 45 years of trial experience; it is also among the most aggressive and successful firms in the state.

Founded in 1967 by Stanley Sanders, The Sanders Firm has grown into a large, thriving organization of attorneys, paralegals, medical consultants, and supporting staff- all committed to providing the highest level of legal representation to those injured as a result of negligence, medical malpractice, defective products, and dangerous drugs. Through the years, we have consistently achieved significant settlements and jury verdicts on behalf of those victims. As a result of that success, the firm has been able to expand its practice areas and physical presence throughout the state of New York, with office locations in Manhattan, Queens, Brooklyn, and Long Island.

Sanders Firm Senior Partner, Marc Grossman, joined the firm in 2003.  Like Mr. Sanders, Mr. Grossman had always placed greater value on the needs of his clients over any self-motivated desire for profits. As a result, Mr. Grossman brought a loyal following with him to the Sanders team.  His commitment to that ideal along with his proven track record of excellence led to his recent inclusion on the list of the top 100 trial lawyers in the state of New York.

In 2004, Mr. Grossman and Mr. Sanders formed a practice dedicated exclusively to the needs of victims who have suffered at the hands of the world's largest pharmaceutical companies. Within a short time the new entity achieved record success with its pursuit of justice against Merck, maker of the now recalled Vioxx.  Today, Sanders Viener Grossman, LLP continues to pursue claims against those corporations who recklessly and deliberately expose consumers to serious health risks.
Sanders Viener Grossman, LLP is a national law firm representing consumers who have been harmed by defective drugs and medical devices. Our lawyers have been holding pharmaceutical companies responsible and protecting victims' rights for over 30 years. Defective drugs are pharmaceuticals with side effects that potentially harm, injure, or kill the patient to the point that they outweigh the drug's intended benefits. Defective devices, such as faulty prosthetics, implants, pacemakers or surgical instruments can harm patients when the product is defective in the manufacturing process, design or marketing strategy.

Our attorneys have extensive knowledge of pharmaceutical and medical device regulations. We have working knowledge of pharmaceutical product pre-approval development, with detailed understanding on Non-Clinical Studies and Clinical Trials, and post-approval obligations and requirements, including Safety Surveillance and Pharmacovigilance and ongoing Clinical Trials. We understand the FDA-drug sponsor relationships which enable us to tailor successful strategies and arguments in discovery battles in order to procure materials Plaintiffs and their

experts need. We have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish General Causation, which is often times the most difficult obstacle to hurdle in a pharmaceutical case.

**SOME OF OUR EXPERTISE INCLUDES:**
- Liaison to the media as a member of the Vioxx PSC's Public Relations Committee, and as a liaison for the Committee to many financial institutions and governmental agencies.
- Lead the Trial Team in *Rosenberg v. Merck*, the first New Jersey ONJ Bellwether Trial, Atlantic County Superior Court, after an $8 million verdict in *Boles v. Merck*.
- Lead Counsel in the New Jersey and MDL Propecia Litigations against Merck
- Lead Counsel against Janssen Pharmaceuticals in the California JCCP

**ESI**
- Led and assisted in negotiations for the Electronic Discovery Protocol for the Propecia MDL in the Eastern District of New York, Benicar MDL District of New Jersey and Zimmer Nexgen Knee Litigation in the Northern District of Illinois, Mirena Litigation in the Southern District of New York and Superior Court of New Jersey.
- 

**PLAINTIFFS STEERING COMMITTEES**

Our lawyers have been appointed to serve in the following mass tort litigations:
- In Re Avandia, Eastern District of Pennsylvania
- In Re Chantix, Northern District of Alabama
- In Re Zicam, District Court of Arizona
- In Re Fosamax (Femur Fractures), District of New Jersey
- In Re Propecia, Eastern District of New York
- In Re Transvaginal Mesh -American Medical Systems, Boston Scientific, C.R. Bard and Ethicon, Southern District of West Virginia
- In Re Benicar,  District of New Jersey
- In Re Zimmer Nexgen Knee Multi-District litigation, Northern District of Illinois
- In Re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation, District of Massachusetts.
- In Re Incretin Mimetics Product Liability Litigation MDL 2452, Southern District of California
- In Re MirenaSouthern District of New York.
- In Re Fluoroquinolones, District of Minnesota

In addition to these appointments, our lawyers have served to assist counsel preparing litigations up to the point of trial in many cases outside of PSC appointments.

**OTHER  LEADERSHIP ROLES:**
- New York Chantix Coordination, Co-Lead Counsel,
- Reglan Coordination MCL, New Jersey, Co- Lead Counsel
- Propecia Coordination MCL, New Jersey, Lead Counsel.
- Levaquin Coordination MCL, New Jersey, Co-Lead Counsel
- Risperdal and Invega Product Liability Cases JCCP California, Co-Lead Counsel

- In Re Infusion Pain Pump JCCP, California, Plaintiff's Liaison Counsel
- In Re Zoloft Birth Defect Cases JCCP, California Plaintiff's Steering Committee
- In Re Fresenius Granuflo/Naturalyte Dialysate Products MDL, Science Com.
- Benicar MDL District of New Jersey, Bellwether and ESI Committees
- Mirena MDL Litigation in New York and New Jersey MCL, Science Committee and ESI Committee
- In Re Zimmer Nexgen Knee, ESI Committee, Bellwether Committee, Discovery Committee

Legal commentator for several years on COURT TV – appearing on CATHERINE CRIER & COMPANY, TRIAL HEAT and BOTH SIDES
Lectured for the Justices of the Supreme Court Appellate Terms, First and Second Departments, at the New York State Judicial Institute

The personal injury lawyers of Sanders Viener Grossman, LLP have built a solid reputation as leaders in the field. We do this by working with only the most talented and brightest litigators and by utilizing our expansive network of researchers, medical experts, and engineers to greatest effect.  At the same time, we never lose sight of our client to whom we pledge the utmost integrity, sensitivity, and diligence.

Our record speaks for itself.  In just the last five years, we have utilized our abundant resources to achieve maximum results, procuring over one hundred million dollars on behalf of our clients

# **Exhibit 23**

**With a focus on women's products, Carmen Scott represents victims of medical negligence, harmful medical drugs and devices and corporate misconduct.**

Carmen helps lead Motley Rice's mass tort pharmaceutical litigation by managing complex personal injury and economic recovery damages cases. She has been on the forefront of national contraceptive litigation involving products such as Xarelto® and Essure®, and previously litigated Nuvaring®, Yaz® and Yasmin®. She served on the Plaintiffs' Steering Committee in *In re NuvaRing Products Liability Litigation,* serves as co-lead counsel in *In re Mirena Product Liability* state court consolidation in New Jersey, and is Co-Chair of the AAJ Mirena® IUD Litigation Group. She was also appointed to the Plaintiffs' Steering Committee for the multidistrict litigation *In re Power Morcellator Products Liability Litigation.* Carmen currently represents clients in a variety of drug product matters in state and federal courts, including talcum powder.

Prior to joining Motley Rice in 2005 and concentrating her efforts on the medical practice area, Carmen represented numerous clients in jury trials, working on products liability, personal injury and business cases for both plaintiffs and defendants.

Carmen is a frequent speaker on medical litigation and topics involving women's products, regularly lecturing at both legal seminars and public advocacy events on such issues as plaintiffs' rights in medical negligence and dangerous drug cases. She has been quoted in numerous national media outlets and publications, including The Associated Press, NBC News New York, *Marie Claire,* and *MotherJones.*

A South Carolina native and active in the community, Carmen is currently a College of Charleston alumni board member. She also proudly served on the Board of the South Carolina chapter of Make-A-Wish for many years, fundraising and promoting the organization's mission, as well as serving as a "wish-granter" for selected families and  has served as a board member for the nonprofit organization Charleston County Friends of the Library.

**Education**
- J.D., University of South Carolina School of Law, 1999
- B.A., College of Charleston, 1996

**Associations**
- American Association for Justice, Exchange Advisory Committee; Section and Litigation Group Coordination Committee
- American Bar Association
- South Carolina Association for Justice
- South Carolina Women Lawyers Association

**Licensed In**
- South Carolina

**Litigation Areas**
- Medical Devices
- Medical Drugs

**Awards and Accolades**
- Super Lawyers®
  **2015, 2016** *South Carolina Super Lawyers®* list
  **Personal injury – products: plaintiff; Class action/mass torts**
  **2013–2014** *South Carolina Super Lawyers® Rising Stars* list

- *Charleston Regional Business Journal*

**2013 Forty Under 40**

# FIRM RESUME



# FIRM OVERVIEW



Founded on April 28, 2003, by Ronald L. Motley (1944–2013) and Joseph F. Rice, Motley Rice LLC is one of the nation's largest plaintiffs' law firms. Our attorneys, assisted by more than 200 support personnel, possess extensive experience in a wide variety of civil litigation.

Motley Rice lawyers initially gained national recognition for their work representing asbestos victims in the 1970s and 1980s, conducting some of the first successful representations of injured persons against the asbestos industry. Motley Rice remains deeply involved in asbestos litigation in various jurisdictions across the country. The firm continues to represent clients through involvement on numerous asbestos bankruptcy trust committees and is active in other workers' rights and toxic tort cases.

In the 1990s, Motley Rice attorneys took on the tobacco industry. Armed with evidence acquired from whistleblowers, individual smokers' cases, and tobacco liability class actions, the attorneys led the campaign of 26 states' Attorneys General and several municipalities to recoup state healthcare funds and exact marketing restrictions from cigarette manufacturers. Through the litigation, "a powerful industry was forced by U.S. courts to reveal its internal documents that explain what nine tobacco companies knew, when they knew it and what they concealed from the public about their dangerous product."* The effort restricted cigarette marketing to children and culminated in the $246 billion Master Settlement Agreement, the largest civil settlement in U.S. history.

Following the Sept. 11, 2001 terrorist attacks, Motley Rice lawyers brought a landmark lawsuit against the alleged private and state sponsors of al Qaeda and Osama bin Laden. Motley Rice has undertaken a global investigation into terrorism financing. In the course of this investigation, Motley Rice created an entire anti-terrorism and human rights practice which includes cases against defendants involved in terrorist acts by Libya, Hamas suicide bombers in Israel, and other corrupt regimes' human rights abuses. Motley Rice attorneys also held a crucial role in executing the strategic mediations and/or settlements in 56 aviation liability and damages cases against multiple defendants on behalf of families of the victims of the 9/11 attacks who opted out of the VCF.

Our lawyers continue to be selected to lead federal and state medical device and drug litigation brought by injured people alleging medical manufacturers put profits before safety. Our catastrophic injury lawyers fight for adults and children seriously injured or killed by defective products such as dangerous toys or in tragic events such as devastating fires.

In 2010, our environmental team began representing people and businesses harmed by the Deepwater Horizon oil spill in the Gulf of Mexico and our attorneys had a central role in negotiating the two class action settlements reached between BP and the litigation Plaintiffs' Steering Committee, one of which is the largest civil class action settlement in U.S. history.

We continue our efforts to hold responsible national and international corporations and organizations that willfully and knowingly harm people and have expanded our other practice areas to seek protections for shareholders, seek change in corporate cultures and bring to light issues that affect safety, security and rights of consumers, investors and the public.

The firm's lawyers regularly litigate complex cases involving multiple parties in state and federal jurisdictions throughout the United States, either as sole counsel for the plaintiffs or in association with local counsel and other firms. Additionally, Motley Rice lawyers maximize the use of alternative dispute resolution where appropriate, such as negotiation, mediation and arbitration, making it possible to avoid protracted litigation in some cases. Motley Rice employs state-of-the-art technology by using video conferencing, extranet access, and a document management system that enables the firm to process and enter into the database thousands of articles, liability documents and all other information and documents used in litigation proceedings.

The firm has offices in Mt. Pleasant, SC; Providence, RI; Hartford, CT; New York, NY; Morgantown, WV; Charleston, WV; Washington, D.C.; New Orleans, LA; and Kansas City, Missouri.

*World Health Org., *The Tobacco Industry Documents: What They Are, What They Tell Us, and How to Search Them* (July 2004), *available at* www.who.int/tobacco/communications/TI_manual_content.pdf.

## LITIGATION PROFILES   *Motley Rice has held leadership roles in numerous cases. Highlights include:*

### DEFECTIVE DRUGS AND DEVICES

Plaintiffs' Steering Committee of **In re Power Morcellator Products Liability Litigation,** MDL No. 2652

Co-lead counsel **In re Zofran (Ondansetron) Products Liability Litigation,** MDL No. 2657

Plaintiffs' Leadership Counsel of **In re Bard IVC Filters Products Liability Litigation**, MDL 2641

Plaintiffs' Steering Committee of **In re Lipitor® (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation,** MDL 2502.

Co-lead plaintiffs' counsel and liaison counsel **In re Kugel Mesh Hernia Patch Products Liability Litigation,** MDL No. 07-1842 (D.R.I.), Rhode Island federal court's first consolidated MDL, on behalf of thousands of people alleging injury by the hernia repair patch manufactured by Davol, Inc., as well as liaison counsel for the nearly 2,000 lawsuits consolidated in Rhode Island state court.

Co-lead coordinating counsel of **In re Ethicon, Inc., Pelvic Repair Systems Products Liability Litigation**, MDL 2327 (S.D.W.Va.)

Co-lead counsel in the **In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation,** MDL 2325 (S.D.W.Va.)

Co-liaison counsel **In re C.R. Bard, Inc., Pelvic Repair Systems Products Liability Litigation,** MDL 2187 (S.D.W.Va.)

Co-lead counsel **In re Boston Scientific Corp., Pelvic Repair Systems Products Liability Litigation,** MDL 2326, (S.D.W.Va.)

Co-liaison counsel **In re Pelvic Mesh Litigation/Bard,** No. L-6339-10 in New Jersey state court.

State court liaison counsel of **In re Bard Litigation** in Massachusetts and Delaware

Co-lead counsel of the **Mirena MDL** (S.D.N.Y.)

Co-lead counsel in the **In re Mirena Product Liability** state court consolidation in New Jersey

Plaintiffs' Steering Committee of **In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation**, MDL 2342

Plaintiffs' Steering Committee of **In re NuvaRing Products Liability Litigation,** MDL 1964

Plaintiffs' Steering Committee of **In re DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation,** MDL 2197

Plaintiffs' Steering Committee of **In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation,** MDL 2244

**In re A.H. Robins Co., Inc., "Dalkon Shield" IUD Products Liability Litigation** (No. II), MDL 631

Plaintiffs' Steering Committee of **In re Medtronic, inc., Sprint Fidelis Leads Products Liability Litigation,** MDL 1905

Plaintiffs' Steering Committee of **In re Trasylol Products Liability Litigation,** MDL 1928

Plaintiffs' Steering Committee of **In re Levaquin Products Liability Litigation,** MDL 1943

Plaintiffs' Steering Committee and co-lead counsel of **In re Digitek Products Liability Litigation,** MDL 1968

Plaintiffs' Steering Committee of **In re Avandia Marketing, Sales Practices and Products Liability Litigation,** MDL 1871

Plaintiffs' Steering Committee of **In re Hydroxycut Marketing and Sales Practice Litigation,** MDL 2087

Plaintiffs' Steering Committee of **In re Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation,** MDL 2096

Plaintiffs' Steering Committee and co-lead counsel of **In re Human Tissue Products Liability Litigation,** MDL 1763

**In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation,** MDL 1001

**In re Abbott Laboratories Omniflox Products Liability Litigation,** MDL 1004

**In re Viagra Products Liability Litigation,** MDL 1724

Plaintiffs' Steering Committee and liaison counsel of **In re Showa Denko K.K. L-tryptophan Products Liability Action**, MDL No. 865

### TOXIC TORTS AND OCCUPATIONAL DISEASE

**Bongani Nkala & Others v. Harmony Gold Mining Company Limited & Others,** No. 48226/12 (South Gauteng High Court, Johannesburg). Motley Rice has been retained as a consultant by South African human rights lawyer Richard Spoor in his effort to take on leading global gold producers and seek justice for tens of thousands of exploited gold mine workers suffering from silicosis.

**Travelers Statutory Direct Action Settlement** (Bankr. Court, S.D.N.Y.), an eleven-state asbestos settlement with Travelers Insurance.

Chair, Plaintiffs' Steering Committee and liaison counsel for plaintiffs, **In re Asbestos Products Liability Litigation,** MDL 875 (E.D. Pa.).

Plaintiffs' Steering Committee and coordinating counsel, **Linscomb v. Pittsburgh Corning Corporation,** No. 1:90cv-05000 (E.D. Tex.), a national class action on behalf of asbestos victims nationwide.

Executive committee member in **In re Asbestos School Litigation,** No. 94-1494 (E.D. Pa.), a national school asbestos class action.

Lead plaintiffs' counsel in **Central Wesleyan College v. W.R. Grace & Co.,** No. 2:87-1860-8 (D.S.C.), a national asbestos property damage class action.

Lead plaintiffs' counsel in **In re Raymark Asbestos Exposure Cases,** No. 87-1016-K (D. Kan.), a national asbestos personal injury class action in which 19,684 claims were resolved.

Co-lead plaintiffs' counsel in **Cimino v. Pittsburgh Corning Corporation,** No. 1:85-CV-00676 (E.D. Tex.), an asbestos personal



injury class action on behalf of approximately 2,300 plaintiffs.

Co-lead plaintiffs' counsel in **Chatham v. AC&S, et al.,** a consolidated asbestos personal injury action involving 300 plaintiffs in the Circuit Court of Harris County, Texas.

Co-lead plaintiffs' counsel in **Abrams v. GAF Corporation,** No. 88-5422(1) (Jackson Cty., Miss.), a consolidated asbestos personal action involving more than 6,000 plaintiffs.

Co-liaison plaintiffs' counsel in 3,000 asbestos personal injury cases in the Third Judicial Circuit of Illinois, Madison County, Illinois.

Co-lead plaintiffs' counsel in a consolidated asbestos personal injury action involving 540 plaintiffs pending in the Superior Court of Alameda County, California.

Counsel in numerous consolidated asbestos trials including 87 consolidated cases in Danville, Illinois; 300 consolidated cases in U.S. District Court, Western District of New York, Rochester, New York; 42 consolidated cases in State Court in Mississippi; and 315 consolidated cases in the Circuit Court of Kanawha County, West Virginia.

Plaintiffs' lead counsel in **In re Kansas Asbestos Cases** in U.S. District Court for the District of Kansas, **In re Madison County Illinois Asbestos Litigation**

Plaintiffs' lead counsel in **In re Wayne County Michigan Asbestos Cases**.

**John Schumacher v. Amtico, et al.,** No. 2:10-1627 (E.D.Pa.), the first federal court mesothelioma case to go to trial before Eduardo C. Robreno, the judge who oversees the entire Federal Asbestos MDL, In re Asbestos Products Liability Litigation, MDL 875.

Co-lead counsel, **In re KBR, Inc. Burn Pit Litigation**, MDL 2083 (D. Md.), representing hundreds of U.S. soldiers and personnel.

Plaintiffs' Steering Committee of **In re Welding Fume Products Liability Litigation,** MDL 1535

## ENVIRONMENTAL CONTAMINATION

Plaintiffs' Steering Committee of **In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,** MDL 2179, (E.D.La.), and lead settlement negotiators of the two class action settlements reached with BP, one of which is the largest civil class action settlement in U.S. history.

Lead trial counsel in **The People of the State of California v. Atlantic Richfield Company, et al.** No. 1-00-CV-788657 (Santa Clara Cnty. Super. Ct.) Resulting in 2014 verdict holding Sherwin-Williams Company, ConAgra Grocery Products and NL Industries Inc. liable for creating a public nuisance and ordered abatement of lead paint from homes within 10 California cities and counties.

**Michelle McMunn, et al. vs. Babcock & Wilcox Power Generation Group, Inc., et al.,** Civil Action No. 10-143 2:10-cv-00143-DSC-RCM

Lead plaintiffs' counsel in **Bates v. Tenco Services Inc.,** 132 F.R.D. 160 (D.S.C. 1990), a jet fuel pollution case involving the consolidated property damage and personal injury claims of multiple plaintiffs in the Gold Cup Springs subdivision.

## ANTI-TERRORISM AND HUMAN RIGHTS

Lead counsel in **In re Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.,** Case No. 03-CV-9849 (GBD); **In re Terrorist Attacks on September 11, 2001,** 03 MDL 1570 (S.D.N.Y.), a landmark lawsuit against the alleged sponsors of al Qaeda and Osama bin Laden in an action filed on behalf of more than 6,500 family members, survivors, and those killed on 9/11.

**Linde et al. v. Arab Bank PLC,** No. 1:04-cv-02799 (E.D.N.Y.) and **Almog v. Arab Bank, PLC,** No. 1:04-cv-05564-NG-VVP (E.D.N.Y.), one of the first lawsuits brought against an international bank for its alleged role in financing terrorism.

**Mark McDonald, et al. vs. The Socialist People's Libyan Arab Jamahiriya, et al.;** No. 06-CV-0729-JR (DC 04/21/06), a high-profile case involving Libya's longtime alleged sponsorship of IRA acts of terror.

**Cummock, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.,** No. 96-CV-1029 (D.D.C.). Victoria Cummock, Motley Rice's client, sought full accountability and a public trial as the only opt-out of the no-fault Pan Am 103/Lockerbie settlement.

**Krishanthi, et al. vs. Rajaratnam, et al.,** No. 09-CV-5395(D.N.J.), terrorist financing litigation against alleged financiers of the Tamil Tigers terrorist organization in Sri Lanka.

Plaintiffs' Steering Committee and lead counsel for Verizon plaintiffs in **In re National Security Agency Telecommunications Records Litigation,** MDL 1791

**Ng v. Central Falls Detention Facility Corporation, et al.,** No. 09-53 (D. R.I.), a human rights case that alleged the defendants subjected a Chinese immigration detainee to extreme physical and mental abuse and torture while in U.S. custody.

**Harris, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.,** No. 1:06-cv-00732-RWR (D.D.C.), a case filed against Libya involving the 1986 bombing of Berlin's LaBelle Discotheque.

## ANTITRUST/COMPETITION LAW

Interim Co-Lead Counsel in antitrust class action **In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,** MDL No. 2542 (S.D.N.Y.).

Appointed to the Executive Committee in antitrust class action **In re Lidoderm Antitrust Litigation,** MDL No. 2521 (N.D.Cal.).

Interim Liaison Counsel **In Re Aggrenox Antitrust Litigation,** MDL No. 2516 (D.Conn.).

Co-lead counsel in antitrust class action **In re Loestrin 24 Fe Antitrust Litigation,** MDL 2472 (D.R.I.).

Co-lead counsel in antitrust class action **In re Suboxone**

*(Bupreorphine Hydrochloride and Naloxone) Antitrust Litigation*, MDL 2445 (E.D. Pa.).

Co-lead counsel in antitrust class action *In re Niaspan Antitrust Litigation, MDL 2460* (E.D. Pa.).

Co-lead counsel in antitrust class action *In re Effexor XR Antitrust Litigation*, No. 11-cv-05590 (D.N.J.).

Co-lead counsel for the end-payor antitrust class action *In re Actos Antitrust Litigation*, (S.D.N.Y.).

Co-lead counsel in antitrust class action *In re Lipitor Antitrust Litigation*, MDL 2332 (D.N.J.).

## CONSUMER PROTECTION, CATASTROPHIC INJURY AND WRONGFUL DEATH

Plaintiffs' Steering Committee of *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* MDL No. 2672 CRB (JSC)

Plaintiffs' Executive Committee of *In re General Motors LLC Ignition Switch Litigation,* MDL 2543

*Hoover, et al. v. NFL, et al., MDL #2:12-cv-05209-AB (E.D. Pa.).*

Lead counsel in *Charleston Firefighter Litigation v. Sofa Super Store, Inc., et al.,* No. 07-CP-10-3186 (Ct. of Common Pleas, Ninth Jud. Cir.), consolidated complex litigation involving the families of nine firefighters who died in a furniture store disaster.

*Clifton Chesnut, a minor v. Waupaca Elevator Company, Inc., et al.,* No. 2013-CP-10-2060 (Ct. of Common Pleas, Ninth Jud. Cir.).

*Veronica Lynne Tario v. SOCO, Holding, LLC et al.,* No. 2013-cp-26-2499 (Ct. of Common Pleas, Fifteenth Jud. Cir.).

*Satterfield et al. v. Napa Home & Garden Inc., et al., No. 7:11-1514-JMC (D.S.C.).*

Plaintiffs' Steering Committee and multiple plaintiffs' counsel, *In re San Juan DuPont Plaza Hotel Fire Litigation,* MDL 721 (D.P.R.).

*Strother v. John Wieland Homes and Neighborhoods of the Carolinas, et al.,* No. 09-CO-29-1783 (Ct. of Common Pleas, Sixth Jud. Cir.), an individual catastrophic personal injury/premise liability case involving life-altering brain injury.

Plaintiffs' Steering Committee and Discovery Committee in *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation,* MDL 1373

*In re Ford Motor Co. E-350 Van Products Liability Litigation* (No. II), MDL 1687

Class counsel in *Carol Lee Whitfield, et al., v. Sangamo Weston,* No. 6:84-3184 (D.S.C.), a PCB personal injury and property damage class action settled while pending before U.S. District

Court for the District of South Carolina, Greenville Division.

*In re Graniteville Train Derailment, No. 2006-CP-02-1032 (Ct. of Common Pleas, Second Jud. Cir.).* served in a leadership role for both individual and class action cases in  connection with the January 2005 railroad derailment and chemical spill in Graniteville, S.C.

## AVIATION DISASTERS AND PASSENGER RIGHTS

Plaintiffs' liaison counsel in *In re September 11 Litigation,* No. 21-MC-97-AKH (S.D.N.Y), representing 56 of the 96 families that opted out of the no-fault federal September 11 Victim Compensation Fund in liability and damages cases claims against the airlines and aviation security companies for their alleged failure to implement basic security measures.

*Amanda Tuxworth v. Delta Air Lines, Inc.,* No. 2:10-cv-03212-RMG (D.S.C), an aviation passenger rights case involving a Delta passenger.

*Chris Turner, Individually and as Personal Representative of The Estate of Tracy Turner v. Ramo LLC, a Florida Limited Liability Company,* No. 11-14066 (Ct. of Appeals, 11th Cir.), an aviation case involving fraudulent transfer allegations in connection with a fatal plane crash.

Counsel for victims of Asiana Airlines Flight 214

Counsel for families of victims of Malaysia Airlines Flight MH370

## SECURITIES FRAUD

Co-class counsel in *Alaska Electrical Pension Fund v. Pharmacia Corp.,* **No. 03-1519 (D.N.J.).**  federal securities fraud litigation alleging that the defendants misrepresented clinical trial results of Celebrex® to make its safety profile appear better than rival drugs.

Co-lead counsel in *Ross v. Career Education Corp.* No. 1:12-cv-00276 (N.D. Ill.).

Co-lead counsel representing a group of institutional shareholders *In re Allion Healthcare, Inc. Shareholders Litigation,* No. 5022-cc (Del. Ch.).

Co-lead counsel representing investors in *Robert Freedman v. St. Jude Medical, Inc.,* No. 0:2012cv03070  (D. Minn.).

Co-lead counsel representing investors in *In re Hewlett-Packard Co. Securities Litigation,* No. SACV 11-1404 AG (RNBx) (C.D. Cal.).

Co-lead counsel in *In re UBS AG Securities Litigation,* No.07 Cov. 11225 (RJS) (S.D.N.Y.).

Co-lead counsel representing institutional investors in *Hill v. State Street Corporation,* No. 09-cv-12146-NG (D. Mass.).

Sole lead counsel representing lead plaintiffs in *City of Brockton Retirement System v. Avon Products, Inc.,* No. 11 Civ. 4665 (PGG) (S.D.N.Y.).

Co-lead counsel on behalf of stockholders in *Marsden v. Select Medical Corporation,* No. 04-cv-4020 (E.D. Pa.).



Co-lead counsel on behalf of a class of investors in **South Ferry LP #2 v. Killinger,** No. C04-1599C-(W.D. Wash.) (regarding Washington Mutual).

Sole lead counsel representing the lead plaintiff in class action, **In re NPS Pharmaceuticals, Inc. Securities Litigation,** No. 2:06-cv-00570-PGC-PMW (D. Utah**),** concerning the drug PREOS.

Co-lead counsel for co-lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund and Metzler Investment GmbH in **In re Molson Coors Brewing Co. Securities Litigation,** No. 1:05-cv-00294 (D. Del.).

Co-lead plaintiffs' counsel in shareholder class action **In re The DirecTV Group, Inc. Shareholder Litigation**, No. 4581-VCP (Del. Ch.).

Sole lead counsel in **Manville Personal Injury Settlement Trust v. Gemunder,** No. 10-CI-01212 (Ky. Cir. Ct.) (regarding Omnicare, Inc.), a shareholder derivative complaint stemming from federal investigations into three kickback schemes.

Co-lead plaintiffs' counsel in **City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.,** No. 11 C 8332 (N.D. Ill.), a securities fraud class action.

Co-lead counsel in **In re Rehabcare Group, Inc. Shareholders Litigation,** No. 6197-VCL (Del. Ch.), merger litigation involving the acquisition of healthcare provider RehabCare Group, Inc., by Kindred Healthcare, Inc.

Class counsel in **Brown v. Charles Schwab & Co.,** No. 2:07-cv-03852-DCN (D.S.C.), one of the first cases to interpret the civil liabilities provision of the Uniform Securities Act of 2002.

Co-lead counsel in class action **Bennett v. Sprint Nextel Corporation,** No. 2:09-cv-02122-EFM-KMH (D. Kan.), representing the PACE Industry Union-Management Pension Fund (PIUMPF) and several other institutional investors.

Co-lead counsel in securities class action settlement **In re MBNA Corporation Securities Litigation**, No. 05-CV-00272-GMS (D.Del.).

Lead counsel for lead plaintiffs in a securities class action involving a group of shareholders who purchased publicly-traded Dell securities in **In re Dell, Inc. Securities Litigation,** No. A-06-CA-726-SS (W.D. Tex.).

Co-lead counsel in **Minneapolis Firefighters' Relief Association v. Medtronic, Inc.,** No. 08-6324 (PAM/AJB) (D. Minn.), representing a class of investors who purchased Medtronic common stock.

Co-lead counsel in **In re Synovus Financial Corporation,** No. 1:09-cv-01811 (N.D. Ga.), for co-lead plaintiff Sheet Metal Workers' National Pension Fund, investors in Georgia bank Synovus Financial Corp.

Plaintiffs' Steering Committee and plaintiffs' liaison counsel, **In re Policy Management Systems Corporation,** No. 3:93-0807-JFA (D.S.C.).

Sole lead counsel, **In re Coventry Health Care, Inc. Securities Litigation,** No. 7905-CS (Del. Ch. ), a shareholder class action challenging the $7.2 billion acquisition of Coventry Health Care, Inc., by Aetna, Inc.

Co-lead counsel in Louisiana class action **In re The Shaw Group, Inc. Shareholders Litigation,** No. 614399 (19th Jud. Dist. La.).

Co-lead counsel, **In re Atheros Communications Inc. Shareholder Litigation,** No. 6124-VCN (Del. Ch.), merger litigation involving Qualcomm Incorporated's proposed acquisition of Atheros Communications, Inc.

### BANKRUPTCIES

Claimants' committee in **In re A.H. Robins,** a Chapter 11 Reorganization involving Dalkon Shield victims nationwide

Claimants Committee in the **Camall Chapter 11,** the first bankruptcy associated with the Fen-Phen litigation

Motley Rice attorneys currently serve as a member of the trust advisory committee for several of the asbestos bankruptcy trusts formed under 524(g) of the federal bankruptcy code:

**AC&S , Inc. Bankr.,** No. 02-12687 (D. Del.)

**Armstrong World Industries, Inc., Bankr.** No. 00-4471 (D. Del.)

**Babcock & Wilcox Co. Bankr.,** No. 00-10992 (E.D. La.)

**Celotex Corp. Bankr.,** Nos. 90-10016-8B1, 90-10017-8B1 (M.D. Fla.)

**Dresser II Bankr.,** No. 03-35592 (W.D. PA.)

**Federal Mogul Bankr.,** No. 01-10578 (D. Del)

**G-I Holdings Bankr.,** Nos. 01-30135 and 01-38790 (D.N.J.)

**Johns-Manville Corp.,** No.82-B11656 through 82 B 11676 (S.D.N.Y., E.D.N.Y.)

**Kaiser Aluminum Corp. Bankr.,** No.02-10429 (D. Del.)

**Keene Bankr.,** No. 93B 46090,96 CV 3492 (S.D.N.Y.)

**MH Detrick Bankr.,** No. 98 B 01004 (N.D. Ill.)

**Owens Corning Corp. Bankr.,** No. 00-03837 (D. Del.)

**Rock Wool Bankr.,** Nos. CV-99-J-I589-S.BK -96-08295-TBB-11 (N.D. Ala.)

**Rutland Fire Clay Bankr.,** No. 99-11390 (D. Vt.)

**Shook & Fletcher Bankr.,** No. 02-02771-BGc-11 (N.D. Ala.)

**United States Gypsum Corp. Bankr.,** No. 01-2094 (D. Del.)

**W.R. Grace Co. Bankr.,** No.s 01-1139, 01-1140 (D. Del.)

Motley Rice attorneys have served as lead or co-lead trial counsel on behalf of The Asbestos Claims Committee:

**Armstrong World Industries, Inc., Bankr.** No. 00-4471 (D. Del.) (estimation trial and plan confirmation trial)

**Federal Mogul Bankr.,** No. 01-10578 (D. Del.) (estimation trial and plan confirmation trial)

**Owens Corning Corp. Bankr.,** No. 00-03837 (D. Del.) (estimation trial and substantive consolidation trial)

**Pittsburgh Corning Corp. Bankr.,** No. 00-22876 (W.D. Pa.) (plan confirmation trial)

**W.R. Grace Co. Bankr.,** Nos. 01-1139, 01-1140 (D. Del.) (estimation trial and plan confirmation trial)

**Motley Rice attorneys have served on The Asbestos Claims Committee involved in the formation and confirmation of various asbestos bankruptcy trusts.**

*AC&S Bankr.,* No. 02-12687 (D. Del)

*Babcock & Wilcox Bankr.,* No. 00-10992 (E.D. La.)

*Celotex Bankr.,* Nos. 90-10016-8B1, 90-10017-8B1 (M.D. Fla.)

*Combustion Engineering Bankr.,* D. Del. No. 03-10495 (D. Del.)

*Congoleum Corp. Bankr.,* No.03-51524 (D.N.J.)

*Durabla Corp. Bankr.,* No. 09-14415 (D. Del)

*Federal Mogul Bankr.,* No. 01-10578 (D. Del.)

*G-I Holdings Bankr.,* Nos. 01-30135 and 01-38790 (D. N.J.)

*Johns-Manville Corp.,* No.82-B11656 through 82 B 11676 (E.D.N.Y.)

*Keene Bankr.,* No. 93B 46090,96 CV 3492 (S.D.N.Y.)

*MH Detrick Bankr.,* No. 98 B 01004 (N.D. Ill.)

*North American Refractories Corp. Bankr.,* No. 02-20198 (W.D. Pa.)

*Owens Corning Corp. Bankr.,* No. 00-03837 (D. Del.)

*Pittsburgh Corning Corp. Bankr.,* No. 00-22876 (W.D. Pa.)

*Rock Wool Bankr.,* Nos. CV-99-J-l589-S.BK-96-08295-TBB-11 (N.D. Ala.)

*Rutland Fire Clay Bankr.,* No. 99-11390 (D. Vt.)

*Shook and Fletcher Bankr.,* No. 02-02771-BGc-11 (N.D. Ala.)

*United States Gypsum Corp. Bankr.,* No. 01-2094 (D. Del.)

*W.R. Grace Co. Bankr.,* No.s 01-1139, 01-1140 (D. Del.)

Prior results do not guarantee a similar outcome.



## ACCOLADES FOR THE FIRM

### The Plaintiffs' Hot List
*The National Law Journal*
2006 • 2012 • 2013 • 2014 • 2015 • 2016

### "Best Law Firm"
*U.S. News – Best Lawyers®*
*mass tort litigation/class actions-plaintiffs*
2010 • 2011 • 2012 • 2013 • 2014 • 2015 • 2016

### *The Legal 500 United States* Litigation editions
*mass tort and class action: plaintiff representation–toxic tort*
2007 • 2009 • 2011 • 2012 • 2013 • 2014 • 2015 • 2016

### "Elite Trial Lawyers"
*The National Law Journal*
2014 • 2015

### "Most Feared Plaintiffs Firm"
*Law360*
2013 • 2015

*For full methodologies and selection criteria, visit www.motleyrice.com/award-methodology*

Please remember that every case is different. Although they endorse certain lawyers, *The Legal 500 United States* and *Chambers USA* and other similar organizations listed above are not Motley Rice clients. Any result we achieve for one client in one matter does not necessarily indicate similar results can be obtained for other clients.

Prior results do not guarantee a similar outcome.

# OUR LEGACY

## Ronald L. Motley (1944–2013)

**EDUCATION:**
J.D., University of South Carolina School of Law, 1971
B.A., University of South Carolina, 1966

Ron Motley fought for greater justice, accountability and recourse, and has been widely recognized as one of the most accomplished and skilled trial lawyers in the U.S. During a career that spanned more than four decades, his persuasiveness before a jury and ability to break new legal and evidentiary ground brought to justice two once-invincible giant industries whose malfeasance took the lives of millions of Americans— asbestos and tobacco. Armed with a combination of legal and trial skills, personal charisma, nose-to-the-grindstone hard work and record of success, Ron built Motley Rice into one of the nation's largest plaintiffs' law firms.

Noted for his role in spearheading the historic litigation against the tobacco industry, Ron served as lead trial counsel for 26 State Attorneys General in the lawsuits. His efforts to uncover corporate and scientific wrongdoing resulted in the Master Settlement Agreement, the largest civil settlement in U.S. history and in which the tobacco industry agreed to reimburse states for smoking-related health care costs.

Through his pioneering discovery and collaboration, Ron revealed asbestos manufacturers and the harmful and disabling effects of occupational, environmental and household asbestos exposure. He represented thousands of asbestos victims and achieved numerous trial breakthroughs, including the class actions and mass consolidations of *Cimino, et al. v. Raymark, et al.* (U.S.D.C. TX); *Abate, et al. v. ACandS, et al.* (Baltimore); and *In re Asbestos Personal Injury Cases* (Mississippi).

In 2002, Ron once again advanced cutting-edge litigation as lead counsel for the 9/11 Families United to Bankrupt Terrorism with a lawsuit filed by more than 6,500 family members, survivors and those who lost their lives in the Sept. 11, 2001, terrorist attacks. The suit seeks justice and ultimately bankruptcy for al Qaeda's financiers, including many individuals, banks, corporations and charities that provided resources and monetary aid. He also served as lead counsel in numerous individual aviation security liability and damages cases under the *In re September 11 Litigation* filed against the aviation and aviation security industries by victims' families devastated by the security failures of 9/11.

Ron brought the landmark case of *Oran Almog v. Arab Bank* against the alleged financial sponsors of Hamas and other terrorist organizations in Israel and was a firm leader in the BP Deepwater Horizon litigation and claims efforts involving people and businesses in Gulf Coast communities suffering as a result of the oil spill. Two settlements were reached with BP, one of which is the largest civil class action settlement in U.S. history.

Recognized as an AV®-rated attorney by Martindale-Hubbell®, Ron served on the AAJ Board of Governors from 1977 to 2012 and was chair of its Asbestos Litigation Group from 1978 to 2012. In 2002, Ron founded the Mark Elliott Motley Foundation, Inc., in loving memory of his son to help meet the health, education and welfare needs of children and young adults in the Charleston, S.C. community.

## PUBLICATIONS:

- Ron authored or co-authored more than two dozen publications, including:
- "Decades of Deception: Secrets of Lead, Asbestos and Tobacco" (*Trial Magazine*, October 1999)
- "Asbestos Disease Among Railroad Workers: 'Legacy of the Laggin' Wagon'" (*Trial Magazine*, December 1981)
- "Asbestos and Lung Cancer" (*New York State Journal of Medicine*, June 1980; Volume 80: No.7, New York State Medical Association, New York)
- "Occupational Disease and Products Liability Claims" (*South Carolina Trial Lawyers Bulletin*, September and October 1976)

## FEATURED IN:

- Shackelford, Susan. "Major Leaguer" (*South Carolina Super Lawyers*, April 2008)
- Senior, Jennifer. "A Nation Unto Himself" (*The New York Times*, March 2004)
- Freedman, Michael. "Turning Lead into Gold," (*Forbes*, May 2001)
- Zegart, Dan. *Civil Warriors: The Legal Siege on the Tobacco Industry* (Delacorte Press, 2000)
- Ansen, David. "Smoke Gets in Your Eyes" (*Newsweek*, 1999)
- Mann, Michael & Roth, Eric. "The Insider" (Blue Lion Entertainment, November 5, 1999)
- Brenner, Marie. "The Man Who Knew Too Much" (*Vanity Fair*, May 1996)
- Reisig, Robin. "The Man Who Took on Manville" (*The American Lawyer*, January 1983)

## AWARDS AND ACCOLADES:

Ron won widespread honors for his ability to win justice for his clients and for his seminal impact on the course of civil litigation. For his trial achievements, *BusinessWeek* characterized Ron's courtroom skills as "dazzling" and *The National Law Journal* ranked him, "One of the most influential lawyers in America."

**South Carolina Association for Justice**
**2013** Founders' Award

**American Association for Justice**
**2010** Lifetime Achievement Award
**2007** David S. Shrager President's Award
**1998** Harry M. Philo Trial Lawyer of the Year

Prior results do not guarantee a similar outcome.

# TEAM BIOGRAPHIES

## THE FIRM'S MEMBERS

### *Joseph F. Rice*

LICENSED IN: DC, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court
U.S. Court of Appeals for the Second, Third, Fourth and Fifth Circuits
U.S. District Court for the District of Nebraska and the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 1979
B.S., University of South Carolina, 1976

Motley Rice co-founder Joe Rice is recognized as a skillful and innovative negotiator of complex litigation settlements, having served as the lead negotiator in some of the largest civil actions our courts have seen in the last 20 years. *Corporate Legal Times* reported that national defense counsel and legal scholars described Joe as one of the nation's "five most feared and respected plaintiffs' lawyers in corporate America." As the article notes, "For all his talents as a shrewd negotiator ... Rice has earned most of his respect from playing fair and remaining humble."

Joe was recognized by some of the nation's best-regarded defense lawyers as being "the smartest dealmaker they ever sat across the table from," *Thomson Reuters* has reported. Professor Samuel Issacharoff of the New York University School of Law, a well-known professor and expert in class actions and complex litigation, has commented that he is "the best strategic thinker on the end stages of litigation that I've ever seen."

Since beginning to practice law in 1979, Joe has continued to reinforce his reputation as a skillful negotiator, including through his involvement structuring some of the most significant resolutions of asbestos liabilities on behalf of those injured by asbestos-related products. He negotiates for the firm's clients at all levels, including securities and consumer fraud, anti-terrorism, human rights, environmental, medical drugs and devices, as well as catastrophic injury and wrongful death cases

Most recently, Joe served as one of the lead negotiators in the $15 billion proposed Volkswagen Diesel Emissions Fraud class action settlement, the largest auto-related consumer class action settlement in U.S. history. He also has led negotiations on behalf of thousands of women in the transvaginal mesh litigation that has five MDLs pending in the state of West Virginia. Joe is a member of the Plaintiffs' Steering Committee for the Lipitor® multidistrict litigation and the Plaintiffs' Executive Committee for *In re General Motors LLC Ignition Switch Litigation*.

Other notable litigation and cases that have benefited from Joe's involvement include:

#### BP OIL SPILL:

Joe served as a co-lead negotiator for the Plaintiffs' Steering Committee in reaching the two settlements with BP, one of which is the largest civil class action settlement in U.S. history. The Economic and Property Damages Rule 23 Class Action Settlement is estimated to make payments totaling between

---

*The Trial Lawyer Magazine*
**2012** inducted into Trial Lawyer Hall of Fame
**2011** *The Roundtable: America's 100 Most Influential Trial Lawyers*

*The Best Lawyers in America®*
**1993–2013** mass tort litigation/class actions – plaintiffs, personal injury litigation – plaintiffs product liability litigation – plaintiffs

*Best Lawyers®*
**2012** Charleston, SC "Lawyer of the Year" mass tort litigation/class actions – plaintiffs
**2010** Charleston, SC "Lawyer of the Year" personal injury

*Benchmark Plaintiff*
**2012–2013** National "Litigation Star": civil rights/human rights, mass tort/product liability, securities
**2012–2013** South Carolina "Litigation Star": human rights, product liability, securities, toxic tort

*SC Lawyers Weekly*
**2011** Leadership in Law Award

*The Legal 500 United States*
**2011–2013** Mass tort and class action: plaintiff representation – toxic tort

*Chambers USA*
**2007, 2010–2012** Product liability and mass torts: plaintiffs. "...An accomplished trial lawyer and a formidable opponent."

**2008–2013** *South Carolina Super Lawyers®* list
**2008** *Top 10 South Carolina Super Lawyers* list
**2008, 2009, 2011, 2012** *Top 25 South Carolina Super Lawyers* list

*The Lawdragon™ 500*
**2005–2012** *Leading Lawyers in America* list – plaintiffs'

**National Association of Attorneys General**
**1998** President's Award—for his "courage, legal skills and dedication to our children and the public health of our nation."

**The Campaign for Tobacco-Free Kids**
**1999** Youth Advocates of the Year Award

### ASSOCIATIONS:

**American Association for Justice**
**South Carolina Association for Justice**
**American Bar Association**
**South Carolina Bar Association**
**Civil Justice Foundation**
**Inner Circle of Advocates**
**International Academy of Trial Lawyers**

*Although it endorses this lawyer, The Legal 500 United States is not a Motley Rice client.

---

$7.8 billion and $18 billion to class members. Joe was also one of the lead negotiators of the $1.028 billion settlement reached between the Plaintiffs' Steering Committee and Halliburton Energy Services, Inc., for Halliburton's role in the disaster.

## 9/11:

Joe held a crucial role in executing strategic mediations and/or resolutions on behalf of 56 families of 9/11 victims who opted out of the government-created September 11 Victim Compensation Fund. In addition to providing answers, accountability and recourse to victims' families, the resulting settlements with multiple defendants shattered a settlement matrix developed and utilized for decades. The litigation also helped provide public access to evidence uncovered for the trial.

## TOBACCO:

As lead private counsel for 26 jurisdictions, including numerous State Attorneys General, Joe was integral to the crafting and negotiating of the landmark Master Settlement Agreement, in which the tobacco industry agreed to reimburse states for smoking-related health costs. This remains the largest civil settlement in U.S. history.

## ASBESTOS:

Joe held leadership and negotiating roles involving the bankruptcies of several large organizations, including AWI, Federal Mogul, Johns Manville, Celotex, Garlock, W.R. Grace, Babcock & Wilcox, U.S. Gypsum, Owens Corning and Pittsburgh Corning. He has also worked on numerous Trust Advisory Committees. Today, he maintains a critical role in settlements involving asbestos manufacturers emerging from bankruptcy and has been recognized for his work in structuring significant resolutions in complex personal injury litigation for asbestos liabilities on behalf of victims injured by asbestos-related products. Joe has served as co-chair of Perrin Conferences' Asbestos Litigation Conference, the largest national asbestos-focused conference.

Joe is often sought by investment funds for guidance on litigation strategies to increase shareholder value, enhance corporate governance reforms and recover assets. He was an integral part of the shareholder derivative action against Omnicare, Inc., *Manville Personal Injury Settlement Trust v. Gemunder*, which resulted in a significant settlement for shareholders as well as new corporate governance policies for the corporation.

Joe serves on the Board of Advisors for Emory University's Institute for Complex Litigation and Mass Claims, which facilitates bipartisan discussion of ways to improve the civil justice system through the hosting of judicial seminars, bar conferences, academic programs, and research. In 1999 and 2000, he served on the faculty at Duke University School of Law as a Senior Lecturing Fellow, and taught classes on the art of negotiating at the University of South Carolina School of Law, Duke University School of Law and Charleston School of Law.

In 2013, he and the firm created the Ronald L. Motley Scholarship Fund at The University of South Carolina School of Law in memory and honor of co-founding member and friend, Ron Motley.

## AWARDS AND ACCOLADES:

**The Lawdragon™**
**2016** *500 Leading Lawyers in America:* Plaintiffs' litigation

**Chambers USA**
**2016** Product Liability: Plaintiffs –Nationwide, Band 2

**Law360**
**2015** "Product Liability MVP"

**Best Lawyers®**
**2013** "Lawyer of the Year" Charleston, SC: mass tort litigation/class actions – plaintiffs
**2007–2017** Mass tort litigation/class actions plaintiffs

**Benchmark Litigation**
**2012–2013** National "Litigation Star": mass tort/product liability
**2012–2016** South Carolina "Litigation Star": environmental, mass tort/product liability

**South Carolina Super Lawyers®** list
**2008–2016** Class action/mass torts; Securities litigation; General litigation

**SC Lawyers Weekly**
**2012** Leadership in Law Award

**University of South Carolina School of Law Alumni Association**
**2011** Platinum Compleat Lawyer Award

**The Legal 500 United States**, Litigation edition
**2011, 2012, 2014, 2015, 2016** Mass tort and class action: plaintiff representation – toxic tort

**The National Trial Lawyers**
**2010** Top 100 Trial Lawyers™ – South Carolina

**National Association of Attorneys General**
**1998** President's Award

**MUSC Children's Hospital**
**2010** Johnnie Dodds Award: in honor of his longtime support of the annual Bulls Bay Golf Challenge Fundraiser and continued work on behalf of our community's children

**University of South Carolina**
**2011** Garnet Award: in recognition of Joe and his family for their passion for and devotion to Gamecock athletics

**SC Junior Golf Association Programs**
**2011** Tom Fazio Service to Golf Award: in recognition of promotional efforts

## COMMUNITY INVOLVEMENT:

**Dee Norton Lowcountry Children's Center**, Co-chair for inaugural Campaign for the Next Child
**First Tee of Greater Charleston**, Board of Advisors

## ASSOCIATIONS:

**American Association for Justice**
**American Bar Association**
**American Inns of Court**
**American Constitution Society for Law and Policy**
**South Carolina Association for Justice**

Prior results do not guarantee a similar outcome.



## John A. Baden IV

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Second Circuit, U.S. Bankruptcy Court for the Southern District of New York and Western District of North Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 2002
B.A., College of Charleston, 1996

John Baden represents clients harmed by asbestos exposure in individual and mass tort forums, as well as in complex asbestos bankruptcies, handling complete case management and settlement negotiations for individuals and families suffering from mesothelioma and other asbestos-related diseases.

Working closely with Joe Rice, John also handles the negotiation and complex case resolution of asbestos bankruptcies, including development of structured settlements with viable asbestos manufacturers and those emerging from bankruptcy. His work with the bankruptcy courts and settlement trusts aims to hold asbestos companies accountable and provide due compensation to asbestos victims. John has lectured on asbestos bankruptcy issues at a number of legal seminars.

John is involved in the settlement negotiations of medical drug and device MDLs, including the transvaginal mesh litigation *In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation,* MDL 2325. He continues to be involved in negotiations related to additional TVM manufacturers. John also played a role in settlement negotiations for *In re Avandia Marketing, Sales Practices and Products Liability Litigation,* MDL 1871.

John has additionally been actively involved with the firm's representation of people and businesses in Gulf Coast communities suffering as a result of the BP Deepwater Horizon oil spill. He held a central role in the negotiation process involving the two settlements reached with BP, one of which is the largest civil class action settlement in U.S. history.

John began his legal career as a litigation trial paralegal for Ron Motley in 1997, working with the State Attorneys General on the landmark tobacco litigation primarily in Florida, Mississippi and Texas. He also supported occupational litigation in several states, including the exigent trial dockets of Georgia and West Virginia. John served as a judicial intern for Judge Sol Blatt, Jr., of the U.S. District Court of South Carolina and Judge Jasper M. Cureton of the South Carolina Court of Appeals.

### ASSOCIATIONS:
**American Association for Justice**
**South Carolina Association for Justice**

## Kimberly Barone Baden

LICENSED IN: CA, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Third Circuit
U.S. District Court for the Central, Northern and Southern Districts of California and District of South Carolina
EDUCATION:
J.D., California Western School of Law, 1999
B.A. *cum laude,* Clemson University, 1996

As a strong advocate for the most defenseless members of society, Kimberly Barone Baden seeks accountability and compensation for victims of corporate misconduct, medical negligence and harmful medical drugs. She manages mass tort pharmaceutical litigation through complex personal injury and economic damages cases.

Kimberly represents children with birth defects allegedly caused by antidepressants, including Zoloft®, Effexor® and Wellbutrin®; as well as Zofran® which is used to prevent pregnancy-related nausea and vomiting. She previously litigated against GlaxoSmithKline in the Paxil® birth defect litigation. She serves as co-lead counsel for *In re Zofran (Ondansetron) Products Liability Litigation* MDL 2657 and is on the Plaintiffs' Executive Committee for *In re Viagra (Sildenafil Citrate) Products Liability Litigation* MDL 2691 and on the Plaintiffs' Steering Committee *In re Zoloft (sertraline hydrochloride) Products Liability Litigation* MDL 2342. She also manages the firm's pharmaceutical litigation regarding Crestor®, Lipitor®, Actos®, Risperdal®, incretin mimetics, and dialysis products GranuFlo® Powder and NaturaLyte® Liquid acid concentrates.

Kimberly also represents elderly victims of abuse and neglect, litigating cases for nursing home and assisted living facility residents.

Kimberly has spoken at numerous seminars, legal gatherings, CLEs and conferences across the U.S., including the American Association for Justice, Mass Torts Made Perfect and the National Business Institute. She has addressed a broad range of topics related to pharmaceutical drugs and elder law litigation, focusing on MDL procedures, birth defects, nursing home litigation, discovery, trial strategy and mediation. Kimberly is currently the Treasurer of the American Association for Justice's Section on Toxic, Environmental and Pharmaceutical Torts.

Prior to joining Motley Rice, Kimberly worked on the Fen-Phen diet drug litigation and served as an attorney with the California District Attorney's Office in San Diego. Kimberly is recognized as an AV® rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:
***South Carolina Super Lawyers® Rising Stars*** list
**2013–2014** Personal injury plaintiff: products; elder law

### ASSOCIATIONS:
**American Association for Justice**, Treasurer – Section on Toxic, Environmental and Pharmaceutical torts
**American Bar Association**
**South Carolina Association for Justice**

## Frederick C. Baker

LICENSED IN: NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, Tenth and Eleventh Circuits
U.S. District Court for the Southern District of New York and the District of South Carolina
EDUCATION:
J.D. / LL.M., Duke University School of Law, 1993
B.A., University of North Carolina at Chapel Hill, 1985

A veteran litigator with strong roots in complex litigation, Fred Baker has worked on a broad range of environmental, medical costs recovery, consumer and products liability cases and holds numerous leadership roles within the firm. He represents individuals, institutional investors, and governmental entities in a wide variety of cases.

After representing a state government in a case against poultry integrators alleging that poultry waste polluted natural resources, Fred was involved with the firm's representation of people and businesses in Gulf Coast communities suffering as a result of the BP Deepwater Horizon oil spill. He held a central role in the negotiation process involving the two settlements reached with BP, one of which is the largest civil class action settlement in U.S. history.

A member of the legal team that litigated the groundbreaking tobacco litigation on behalf of several State Attorneys General, Fred has also participated in the litigation of individual tobacco cases, entity tobacco cases and a tobacco class action. Fred currently heads the firm's tobacco litigation team.

Fred has served as counsel in a number of class actions, including the two class action settlements arising out of the 2005 Graniteville train derailment chlorine spill. He has also been closely involved in the on-going litigation surrounding the statutory direct action settlement reached in the Manville bankruptcy court and a related West Virginia unfair trade practices insurance class action.

Fred began practicing with Motley Rice attorneys in 1994 and chairs the firm's attorney hiring committee.

## AWARDS AND ACCOLADES:
**South Carolina Lawyers Weekly**
**2016** Leadership in Law Award

## Louis M. Bograd

LICENSED IN: DC, KY
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuits; U.S. District Court for the District of Columbia
EDUCATION:
J.D., Yale Law School, 1984
A.B., Princeton University, 1981

Louis Bograd is a nationally recognized authority on issues of federal preemption, drug and device litigation, and jurisdiction. He has devoted much of his professional career to litigating appeals on complex issues involving products liability, Medicaid lien reimbursements, constitutional rights, and civil liberties. At Motley Rice, Lou continues his focus on appellate issues and mass torts, further enhancing the firm's active and growing complex litigation practice.

Prior to joining Motley Rice, Lou served as an appellate advocate and Chief Litigation Counsel for the Center for Constitutional Litigation where he led work in mass torts, the Class Action Fairness Act, and dispositive motions concerning consumer protection and products liability. Lou argued for plaintiffs before the U.S. Supreme Court regarding federal preemption of claims against generic drug manufacturers in *Pliva, Inc. v. Mensing* and has also participated in numerous other Supreme Court cases as counsel for petitioners, respondents, and amici curiae.

Lou has spoken on various legal topics at many seminars, CLE programs, and legal conferences across the country sponsored by, among others, the American Association for Justice, state trial lawyers associations, and Mass Torts Made Perfect. Lou has also presented at judicial education programs sponsored by the Pound Institute, the Brookings Institution, the American Enterprise Institute, the Northwestern University School of Law, and the George Mason University School of Law.

Lou's legal career began at Arnold & Porter LLP in Washington, D.C., where he managed and directed work on transfusion-associated HIV/AIDS cases on behalf of the American Red Cross. He subsequently served on the American Civil Liberties Union Foundation's national legal staff and as the legal director of the Alliance for Justice. Lou has also taught advanced torts and products liability law as an Adjunct Professor at the University of Kentucky College of Law.

## SELECTED PUBLICATIONS:
- Louis M. Bograd & Andre M. Mura, *Buckman Stops Here! Limits on Preemption of State Tort Claims Involving Allegations of Fraud on the PTO or the FDA*, 41 Rutgers L. J. 309 (2009)
- Louis M. Bograd, *Be Careful What You Wish For: Drugmakers, the First Amendment, and Preemption*, 51 TRIAL 24 (Nov. 2015)
- Louis M. Bograd, *Preemption's Uncertain Path*, 47 TRIAL 20 (Nov. 2011)
- Louis M. Bograd, *W(h)ither Preemption?*, 45 TRIAL 24 (Nov. 2009)
- Louis M. Bograd, *Taking on Big Pharma- and the FDA*, 43 TRIAL 30 (Mar. 2007)

## ASSOCIATIONS:
**American Association for Justice** Chair, Preemption Litigation Group; Member, Legal Affairs Committee



## Michael M. Buchman

LICENSED IN: CT, NY
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court
U.S. Court of Appeals for the Second Circuit
U.S. District Court for the Districts of Connecticut and Southern and Eastern Districts of New York
U.S. Court of International Trade
EDUCATION:
LL.M., International Antitrust and Trade Law, Fordham University School of Law, 1993
J.D., The John Marshall Law School, 1992
B.A. *cum laude*, Alfred University, 1988

Michael Buchman has more than 20 years of experience, primarily litigating antitrust, consumer protection and privacy class actions in trial and appellate courts. Michael has a diverse antitrust background, having represented as lead or co-lead counsel a variety of plaintiff clients, from Fortune 500 companies to individual consumers, in complex cases covering matters such as restraint of trade, price-fixing, generic drug antitrust issues and anticompetitive "reverse payment" agreements between brand name pharmaceutical companies and generic companies. Michael leads Motley Rice's antitrust team.

Michael served as an Assistant Attorney General in the New York State Attorney General's Office, Antitrust Bureau, after receiving his LL.M. degree in International Antitrust and Trade Law. Also prior to joining Motley Rice, he was a managing partner of the antitrust department at a New York-based class action law firm. He played an active role in resolving two of the largest U.S. multi-billion dollar antitrust settlements since the Sherman Act was enacted, *In re NASDAQ Market-Makers Antitrust Litigation* and *In re Visa Check/Mastermoney Antitrust Litigation,* as well as litigated numerous multi-million dollar antitrust cases. Today, he represents the largest retailer class representative in the $7.2 billion case *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* MDL 1720.*

Michael has more than thirteen years of experience representing consumers, union health and welfare plans, and health insurers in "generic drug" litigation such as *In re Augmentin Antitrust Litigation, In re Buspirone Antitrust Litigation, In re Ciprofloxacin Antitrust Litigation, In re Flonase Antitrust Litigation, In re K-Dur Antitrust Litigation, In re Relafen Antitrust Litigation, In re Tamoxifen Antitrust Litigation, In re Toprol XL Antitrust Litigation* and *In re Wellbutrin SR Antitrust Litigation.* He also has experience litigating a large aviation antitrust matter, as well as aviation crash, emergency evacuation and other aviation cases in federal and state court.

Michael completed the intensive two-week National Institute for Trial Advocacy National Trial Training program in Boulder, Colo., in 2002. An avid writer, he has authored and co-authored articles on procedure and competition law, including a *Task Force on Dealer Terminations* for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation, entitled *Dealer Termination in New York dated June 1, 1998 and What's in a Name - the Diversity Death-Knell for Underwriters*

of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc., Vol. 4, Issue 10 *International Insurance Law Review* 314 (1996).

Michael is active in his community, serving as a member of the Flood and Erosion Committee for the Town of Westport, Ct., and as *pro bono* counsel in actions involving the misappropriation of perpetual care monies. He has also coached youth ice hockey teams at Chelsea Piers in New York City.

### AWARDS AND ACCOLADES:
*New York Metro Super Lawyers®* list
**2014–2016** Antitrust litigation

*Best Lawyers®*
**2017** Mass tort litigation/class actions – plaintiffs

## Samuel B. Cothran Jr.
## General Counsel

LICENSED IN: NC, SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Western District of North Carolina and District of South Carolina
EDUCATION:
J.D., *cum laude*, University of South Carolina School of Law, 1998
M.B.A., Duke University, 1994
B.S., *summa cum laude,* University of South Carolina, 1981

Sam Cothran creatively addresses the many challenges and opportunities inherent in the cutting-edge practice of a dynamic, multi-jurisdictional law firm. As leader of Motley Rice's legal department, Sam directs and advises the firm's management on diverse in-house legal matters regarding governmental compliance, contracts and legal defense, as well as labor and employment, marketing, financial and operational issues.

After working for an international accounting firm as a certified public accountant and for several Fortune 1,000 companies as a financial manager, Sam attended law school to complement his background in business management and finance and joined Motley Rice attorneys shortly after graduation.

Recognized as a BV® rated attorney by Martindale-Hubbell®, Sam is the author of *Dischargeability of Consumer Credit Card Debt in Bankruptcy After Anastas v. American Savings Bank,* 48 S.C.L. Rev. 915 (1997). As a law student, Sam served as Managing Editor of the *South Carolina Law Review.* He was named a Carolina Legal Scholar and awarded both the Order of the Coif and Order of the Wig and Robe.

Sam is active in his community, serving on the board of Directors for the Dee Norton Lowcountry Children's Center.

### ASSOCIATIONS:
**American Bar Association**
**Association of Professional Responsibility Lawyers**
**American Institute of Certified Public Accountants**
**South Carolina Association of Certified Public Accountants**

## Kevin R. Dean

LICENSED IN: GA, MS, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Third, Fourth, Fifth and Eleventh Circuits, U.S District Court for the Middle, Northern and Southern Districts of Georgia, Central District of Illinois, Northern and Southern Districts of Mississippi and District of South Carolina
EDUCATION:
J.D., Cumberland School of Law, 1991
B.A., Valdosta State University, 1989

Focusing his litigation efforts on catastrophic injury, products liability, and wrongful death cases, Kevin Dean represents victims and families affected by hazardous consumer products, occupational and industrial accidents, fires, premise injuries and other incidents of negligence.

Kevin currently represents people allegedly harmed by defective Takata airbags and GM's misconduct regarding its defective vehicles in *In re General Motors LLC Ignition Switch Litigation*. He has litigated numerous vehicle defect cases, including against "the Big Three" automotive manufacturers in cases involving defective brakes, door locks, door latches, seat belts and roll overs. He served as trial co-counsel in *Guzman v. Ford* (2001), the first case brought to trial regarding a defective outside door latch handle, as well as in the vehicle rollover case *Hayward v. Ford* (2005). He was also a member of the plaintiffs' litigation team in the defective seat belt case, *Malone v. General Motors Corporation* (1998) prior to joining Motley Rice.

He served as lead plaintiffs' counsel in *In re Charleston Firefighter Litigation*, a wrongful death and negligence case against Sofa Super Store, contractors and multiple furniture manufacturers on behalf of the families of the nine firefighters lost in the June 2007 warehouse fire in Charleston, S.C.

Since the 2010 explosion of the Deepwater Horizon, Kevin has been helping people and businesses pursuing litigation, as well as those needing help filing and negotiating their claims. He served as a member of the oil spill MDL's GCCF Jurisdiction & Court Oversight Workgroup and is now helping victims file claims through the new claims programs established by the two settlements reached with BP.

Kevin is actively involved with malpractice, defective medical devices and drug litigation. His experience also includes the health insurance fraud and post-claims underwriting case *Clark v. Security Life Insurance Company*, the largest civil RICO case in Georgia history, and *Wiggins v. Parsons Nursery*, one of the largest environmental and health contamination cases in South Carolina. Kevin also served as a County Commissioner on the Early County Georgia Board of Commissioners and still holds the honor of having been the youngest elected commissioner in county history.

Kevin frequently appears in local and national broadcast and print media discussing legal matters of workplace safety, fire prevention and other products liability, as well as specific casework and efforts for changes and improvements in various industries. Recognized as an AV® rated attorney Martindale-Hubbell®, Kevin co-authored "Dangerous Doors and Loose Latches," published in *Trial Magazine* (2004) for the American Association for Justice, and authored "The Right to Jury Trial in ERISA Civil Enforcement Actions" published in *The American Journal of Trial Advocacy* (1989).

### AWARDS AND ACCOLADES:

*Best Lawyers®*
**2017** Charleston, S.C. Personal injury litigation – plaintiffs

*South Carolina Super Lawyers® list*
**2015–2016** Personal injury – general: plaintiff; Personal injury – products: plaintiff; Personal injury – medical malpractice: plaintiff

*Benchmark Plaintiff*
**2012–2013** National "Litigation Star": mass torts/product liability
**2012–2013** South Carolina "Litigation Star": product liability

### ASSOCIATIONS:

**American Association for Justice**
**Georgia Trial Lawyers Association**
**South Carolina Association for Justice, Tort & Negligence Chair**
**Southern Trial Lawyers Association**
**Attorneys Information Exchange Group, Board of Directors**

## Michael E. Elsner

LICENSED IN: NY, SC, VA
ADMITTED TO PRACTICE BEFORE:
U.S District Court for the Eastern and Southern Districts of New York
EDUCATION:
J.D., University of Memphis Cecil C. Humphreys School of Law, 1997
B.A., John Carroll University, 1993

Michael Elsner uses the U.S. civil justice system to seek social change and improved protection of Americans at home and abroad. He litigates complex civil matters on behalf of people and businesses victimized by commercial malfeasance, violations of human rights, inadequate security measures and state-sponsored terrorism, managing cross-border litigation and intricate investigations of infringement and abuse of human rights, multi-layered financial transactions and due diligence.

Michael's understanding of the complex legal challenges of international matters is critical to litigating cases involving human rights and financial dealings. He uses legal mechanisms to track illicit finances, and his investigations through the maze of international banking and financial regulations continue to uncover violations that have allowed money laundering and terrorist financing. Michael is building upon legal theories and case precedents to represent plaintiffs harmed by financial crimes and actions and hold the global institutions and organizations accountable.

Michael was a lead plaintiffs' counsel in *Linde et al. v. Arab Bank*, a suit brought on behalf of victims of terrorist attacks in Israel. In September 2014, a jury found Jordan-based Arab

Prior results do not guarantee a similar outcome.



Bank plc liable for financing terrorist activity, including funneling financial support to top Hamas leaders and to the families of suicide bombers. Michael also leads the worldwide investigation for liability evidence in the 9/11 Families United to Bankrupt Terrorism civil action against al Qaeda's alleged financiers and supporters. In this capacity, Michael meets with U.S. and foreign intelligence officers, witnesses, and informants, who have already helped him gather more than two million pages of documents in numerous languages identifying the activities of al Qaeda and its financiers. He is a member of the Plaintiffs' Steering Committee for this multidistrict litigation filed on behalf of more than 6,500 families and survivors of the 9/11 attacks. He also served as a member of the Plaintiffs' Committee in *In re September 11th Litigation*, a suit brought against the airline industry alleging that it failed to detect and prevent the attacks.

Michael's work with financial transaction litigation includes commercial, securities fraud and shareholder derivative cases such as his extensive work on behalf of domestic and foreign investors in *In re Vivendi Universal, S.A. Securities Litigation*.

Michael is also leading the firm in its role as consultants to South African human rights lawyer Richard Spoor in his effort to take on leading global gold producers and seek justice for tens of thousands of exploited gold mine workers who are suffering from silicosis. Few class actions have been brought in South Africa, and none have been filed for sick workers. If approved as a class, the suit would generate an unprecedented means of recovery for the country and ensure meaningful access to justice for the indigent and rural workers who are dying from this entirely preventable yet incurable disease.

Michael began his career with the Manville Personal Injury Trust and then practiced complex civil litigation in New York in the areas of toxic torts, security, personal injury, bankruptcy, and whistleblower protections prior to joining Motley Rice attorneys in 2002.

Sharing his experience and insight as a lecturer and consultant, Michael has discussed anti-terrorism and human rights litigation on several national and international news outlets, including CNN, MSNBC, NPR and the BBC, as well as international anti-money laundering and anti-terrorism industry conferences.

## AWARDS AND ACCOLADES:
**Public Justice Foundation**
**2016** Trial Lawyers of the Year

**Benchmark Litigation**
**2016** South Carolina "Litigation Star": personal Injury, product Liability, general commercial, professional liability

*South Carolina Lawyers Weekly*
**2014**  Leadership in Law Award

*The Lawdragon*
**2014–2015** Lawdragon 500 Leading Lawyers in America
**2010** *Lawdragon™ 3,000*

## ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**New York Bar Association**
**South Carolina Bar Association,** International Law Committee
**Virginia Bar Association**
**National Crime Victims Bar Association**
**Public Justice Foundation**

### Nathan D. Finch
LICENSED IN: DC, VA
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Third, Fourth, Fifth, Sixth and Tenth Circuits, U.S. District Court for the District of Columbia and the Eastern District of Virginia
EDUCATION:
J.D., University of Virginia School of Law, 1992
B.A., University of Virginia, 1989

With a diverse background in complex civil litigation, Nate Finch brings almost twenty years of trial experience and strong negotiation skills to Motley Rice. He represents clients in various asbestos, toxic tort, commercial, securities fraud and other complex cases.

Nate has served as the lead trial attorney for his clients in many federal and state courts and is sought after by co-counsel for advice on challenging cases and complex legal matters. His thorough knowledge of asbestos and medical issues is an asset to the firm's occupational disease and toxic tort clients. He has obtained plaintiffs' verdicts in cases against asbestos product manufacturer defendants and cigarette makers. He has extensive experience trying cases involving a wide variety of asbestos-containing products, including gaskets, automotive brakes, floor tiles, joint compounds, and various forms of insulation. He also has years of experience representing individuals, companies and creditors' committees in personal injury litigation, mass torts products liability litigation, securities and financial fraud litigation and an array of other complex litigation cases ranging from single plaintiffs' products liability cases to high-stakes business disputes.

Prior to joining Motley Rice, Nate was a partner for more than ten years in a Washington, D.C.-based law firm and frequently collaborated with Motley Rice attorneys in trials and negotiations to resolve large asbestos product manufacturers' bankruptcies. He tried numerous cases in federal district courts focusing on the medical and scientific factors associated with asbestos-related diseases and asbestos exposure. During this time, he also tried and helped to resolve in favor of his clients five asbestos bankruptcy cases, each having more than $1 billion at stake. In addition, Nate worked closely with Motley Rice attorneys on behalf of investors in *In re MBNA Securities Litigation* and *In re Vivendi Universal, S.A. Securities Litigation*.

Nate's understanding of the factual and legal challenges inherent in complex cases, combined with his trial experience, has positioned him as a considerable resource within many

practice areas. A frequently invited speaker regarding a variety of legal matters, he has spoken at many asbestos litigation and bankruptcy conferences and has been a guest lecturer at the Georgetown University, George Washington University, George Mason University and the University of Baltimore law schools on topics relating to civil procedure, mass tort litigation and the differences between litigating in Article III and Article I courts. He has been an invited speaker at several judicial conferences on the topic of asbestos litigation.

Recognized as a Martindale Hubbell® AV® rated attorney, Nate has served his community for many years through volunteer activities coordinated by Greater D.C. Cares, an organization committed to connecting volunteers with community service groups. Nate was a member of the *Virginia Law Review* and the Order of the Coif, and is a former scholarship track and cross country athlete at UVA.

## AWARDS AND ACCOLADES:
**American Association for Justice**
**2013**  Wiedemann & Wysocki Award

*Benchmark Litigation*
**2013–2016**  Washington, D.C. "Litigation Star": bankruptcy, general commercial, product liability, securities, white collar crime

*Washington, D.C., Super Lawyers®* list
**2012–2015**  Personal injury – products: plaintiff; Personal injury – general: plaintiff; Securities litigation

*Chambers USA*
**2009–2010**  "Top Lawyer": bankruptcy and restructuring

## ASSOCIATIONS:
**American Association for Justice**
**The Barristers**

## *Fidelma L. Fitzpatrick*

LICENSED IN: DC, MA, NY, RI
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Seventh and Eleventh Circuits, U.S. District Court for the District of Columbia, District of Massachusetts, District of Rhode Island and Eastern District of Wisconsin
EDUCATION:
J.D., *cum laude*, American University, 1994
B.A., Canisius College, 1991
Fidelma Fitzpatrick represents people and communities in toxic tort and environmental matters, including property damage and personal injury claims. Her experience with complex civil litigation has led her to represent other victims of corporate malfeasance, including hundreds of women allegedly injured by medical devices such as Essure® and pelvic mesh/sling products.

Fidelma was co-lead trial counsel in the billion dollar lead paint pigment case, *The People of California v. Atlantic Richfield Company et al.,* in which Motley Rice represented cities and counties, including San Francisco, Santa Clara, Los Angeles and San Diego, in litigation against national lead paint pigment manufacturers. In January 2014, the court ruled that three lead paint pigment companies had created a public nuisance by concealing the dangers of lead when they campaigned against its regulation and actively promoted lead for use in homes despite knowing that it was highly toxic. The $1.15 billion* verdict will be paid to the state's abatement fund for the removal of lead paint pigment from homes throughout California, particularly those occupied by lower-income families in inner-city and community housing. This will help protect the health and safety of thousands of children.

Fidelma held a central role in the state of Rhode Island's trial against former corporate manufacturers of lead paint pigment. She continues to manage cases seeking to hold the lead paint pigment industry accountable for the childhood lead poisoning crisis and provide restitution and compensation to affected children and families. As a result of her work for lead poisoning victims, the Wisconsin State Supreme Court became the first to recognize the legal rights of poisoned children to sue lead paint pigment manufacturers.

She also played a lead role in representing the community of Tallevast, Florida, in a lawsuit against Lockheed Martin Corporation involving the pollution of the community's groundwater with PCE and TCE. Fidelma is litigating nuclear contamination cases on behalf of Pennsylvania residents who allege that local nuclear facilities exposed them to hazardous levels of toxic or radioactive material in the surrounding air, soil and water. Those cases, involving both personal injuries and property damage, are pending in federal court.

Fidelma also represents hundreds of women allegedly harmed by pelvic mesh/sling products in filed cases against defendants that include American Medical Systems, Boston Scientific, C.R. Bard, Inc., and Ethicon. In 2012, Fidelma was appointed co-lead counsel of the pelvic mesh MDL *In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation* pending in the Southern District of West Virginia.  She also holds leadership roles in pelvic mesh state court litigations, including serving as liaison counsel in the American Medical Systems cases consolidated in Delaware and the Boston Scientific cases consolidated in Massachusetts.

Fidelma began working with Motley Rice attorneys in 1997 on the Massachusetts, New York and Rhode Island lawsuits against the tobacco industry. She serves on the Board of Regents at Canisius College and frequently speaks on environmental and mass tort topics at conferences for federal and state court judges, attorneys, academic professionals and law students.

## PUBLISHED WORKS:
"Painting Over Long-Standing Precedent: How the Rhode island Supreme Court Misapplied Public Nuisance Law in *State v. Lead Industries Association*" *Roger Williams University Law Review* (Summer 2010)

"Access to Justice: The Use of Contingent Fee Arrangements by Public Officials to Vindicate Public Rights" *Cardozo J.L. & Gender* (Spring 2008)

Prior results do not guarantee a similar outcome.



"Negligence in the Paint: The Case for Applying the Risk Contribution Doctrine to Lead Litigation" in *Pace Environmental Law Review* (Fall 2008)

## AWARDS AND ACCOLADES:

**National Law Journal**
**2015** Outstanding Women Lawyers

**The Lawdragon**
**2014–2016** Lawdragon 500 Leading Lawyers in America

**The Legal 500 United States**
**2013, 2014** Mass tort and class action: plaintiff representation – toxic tort

**The National Trial Lawyers**
**2010–2013** Top 100 Trial Lawyers™ – Rhode Island

***Rhode Island Super Lawyers®* list**
**2008, 2010–2016** Environmental litigation; Personal injury – products: plaintiff; Class action/mass torts

**Best Lawyers®**
**2008–2017** Mass tort litigation/class actions – plaintiffs

***Rhode Island Lawyers Weekly***
**2006** Rhode Island Lawyer of the Year

**Public Justice Foundation**
**2014** Trial Lawyers of the Year
**2006** Finalist: Trial Lawyers of the Year award

## ASSOCIATIONS:

**American Association for Justice**
**American Bar Association**
**American Civil Liberties Union**, Volunteer attorney
**Public Justice Foundation,** Rhode Island State Coordinator
**Rhode Island Association for Justice**
**Rhode Island Women's Bar Association**

\* Please remember that every case is different. Although it endorses this lawyer, *The Legal 500 United States* is not a Motley Rice client. Any result we achieve for one client in one matter does not necessarily indicate similar results can be obtained for other clients.

## *Jodi Westbrook Flowers*

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the Second, Fourth, and District of Columbia Circuits; U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, Carolina Legal Scholar, 1993
B.A. *magna cum laude*, College of Charleston, 1989
A veteran of the courtroom, Jodi Westbrook Flowers seeks to protect the health, safety and rights of consumers, families, investors, workers, and victims of crime and terrorism. Jodi has

litigated a wide range of cases involving tobacco, asbestos, lead pigment, aviation disasters and vehicle defects, as well as terrorist financing and human rights violations.

In the vehicle defect multidistrict litigation, *In re General Motors LLC Ignition Switch Litigation*, Jodi is working on cases related to economic loss due to faulty ignition switches installed in more than 14 million recalled GM vehicles. Previously, she worked to demonstrate the necessary minimum contacts within the U.S. for the exercise of personal jurisdiction over Bridgestone Corporation in the class action for damages allegedly caused by vehicle and tire defects, *In re Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tire Products Liability Litigation,* Case No. 00-MDL-1373-SEB (S.D.Ind.).

Jodi also handles a variety of cases regarding the state-sponsorship of international terrorism, as well as human rights litigation involving violations of international law and human rights abuses. Jodi now leads the legal team founded by Ron Motley that brought the groundbreaking litigation against the financiers and material supporters of al Qaeda. Representing thousands of family members and survivors of Sept. 11, 2001, in a pioneering civil action to hold al Qaeda's sponsors accountable and cut off the terror support pipeline, she serves on the Plaintiffs' Executive Committee for the *In re Terrorist Attacks on September 11, 2001* litigation consolidated by the Multidistrict Litigation Panel. Jodi is currently involved in processing claims for the new Victims' Compensation Fund for first responders, area residents, and anyone whose health may have been affected by exposure to environmental toxins released in the terrorist attacks. She was also an integral member of the Motley Rice aviation security litigation team seeking accountability and change in aviation security following the 9/11 attacks.

Jodi also played a key role in *Linde et al. v. Arab Bank PLC,* in which a jury found Jordan-based Arab Bank liable for financing terrorist activity, including funneling financial support to top Hamas leaders and to the families of suicide bombers. This case marked the first time that a financial institution has been brought to trial under the Anti-Terrorism Act.

She served as the lead negotiator in the last hold-out of the individual cases against Libya for the Lockerbie bombing of Pan Am Flight 103, and continues to seek justice for victims of Libyan sponsored terrorism during Qadhafi's reign. Jodi also authored an amicus brief, supporting section 1502 of the Dodd-Frank Act, regarding the trade regulation of conflict minerals in the Democratic Republic of the Congo.

Jodi has worked on environmental contamination cases in the Virgin Islands involving leaking gas tanks, and she is currently representing clients in advancing their Deepwater Horizon oil spill claims through the programs established by the two settlements reached with BP. Jodi has served on numerous MDL Executive Committees and Subcommittees, and holds several leadership positions within the firm.

Jodi began her career applying restitution and fraud theories to the litigation against the tobacco industry which resulted in the historic Master Settlement Agreement between the state attorneys general and the tobacco industry. She developed

expert and whistleblower testimony and synthesized millions of pages of documents for trial. She prepared the false-marketing and child targeting case against the tobacco industry which resulted in restrictions on cartoon ads and the retirement of Joe Camel.

Jodi has been interviewed by various media outlets, including U.S. and foreign television, radio and print media. She provides pro bono work on a variety of global, national and community issues and helped establish the firm's Charitable Contributions Committee.

### PUBLISHED WORKS:

"Remarks on the GJIL Symposium on Corporate Responsibility and the Alien Tort Statute," *Georgetown Journal of International Law,* Volume 43–Issue 4, Summer 2012. (43 Geo. J. Int'l. L. 1601)

### AWARDS AND ACCOLADES:

**Public Justice Foundation**
**2016** Trial Lawyers of the Year

***The Legal 500 United States***, Litigation edition
**2016** Mass tort and class action: plaintiff representation – toxic tort

**The Best Lawyers in America®**
**2015–2017** Mass tort litigation/class actions – plaintiff

***Benchmark Plaintiff***
**2014** Top 150 Plaintiff Women in Litigation: South Carolina
**2012–2013** National "Litigation Star": civil rights/human rights and mass tort/product liability
**2012–2014** South Carolina "Litigation Star": environmental, human rights, mass tort and securities

***The Lawdragon™***
**2010–2016** *500 Leading Lawyers in America:* Plaintiffs' litigation

### ASSOCIATIONS:

**American Association for Justice**
**South Carolina Association for Justice**
**American Bar Association,** Center for Human Rights Advisory Council
**South Carolina Bar Association,** International Law Committee
**Charleston Bar Association**
**Daughters of the American Revolution**
**The Fellows of the American Bar Foundation**

*Although it endorses this lawyer, The Legal 500 United States is not a Motley Rice client.

## Vincent L. Greene IV

LICENSED IN: RI
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of Rhode Island
EDUCATION:
J.D., George Washington University, 1998
B.A., College of the Holy Cross, 1995
Vin Greene works on behalf of victims of lead poisoning and asbestos-related diseases. He represents children and families poisoned by exposure to lead paint and pigments in trials,

negotiations and settlements. Vin's legal efforts led to his critical role in defeating tort reform legislation in Rhode Island, utilizing testimony, analysis and grassroots outreach to push passage of a bill that helped prevent childhood lead poisoning without infringing on victims' rights. For his numerous efforts and accomplishments, the Childhood Lead Action Project honored him with its Beyond the Call of Duty Award in 2001.

Currently, Vin represents workers and families suffering from mesothelioma and other asbestos-related diseases as a result of occupational, environmental or household exposure to asbestos. He has managed asbestos cases and negotiations on behalf of hundreds of individuals, including arguing before the Supreme Courts of Ohio and Rhode Island.

Vin began working with Motley Rice attorneys in 1997 on the landmark litigation against the tobacco industry and medical malpractice cases. Named a Motley Rice member in 2008, Vin is recognized as an AV® rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:

***Best Lawyers®***
**2017** Product liability litigation – plaintiffs

***Rhode Island Super Lawyers®* lists**
**2014–2016** Personal injury – products: plaintiff; Class action/mass torts; Environmental litigation

**Benchmark Plaintiff**
**2012–2014** Rhode Island "Litigation Star": environmental, medical malpractice, toxic tort

***The Legal 500 United States,*** Litigation edition
**2010** Mass tort and class action: plaintiff representation – toxic tort

### ASSOCIATIONS:

**American Association for Justice**
**American Civil Liberties Union**
**Rhode Island Association for Justice,** Past President

*Although it endorses this lawyer, *The Legal 500 United States* is not a Motley Rice client.

## John E. Herrick

LICENSED IN: MD, SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Central District of Illinois, District of Maryland, District of South Carolina, Eastern and Western Districts of Wisconsin
EDUCATION:
J.D., University of South Carolina School of Law, 1988
B.A., University of South Carolina, 1983
John Herrick has spent more than 20 years representing victims of asbestos exposure suffering from mesothelioma and other asbestos-related diseases. As a leader of the firm's occupational disease practice, John continues to fight for the rights of those harmed by asbestos and other occupational diseases and assists in managing the firm's asbestos litigation teams. A senior trial lawyer with years of courtroom experience, John represents individuals and families against defendants



which manufactured and sold defective and unreasonably dangerous asbestos-containing products and equipment, as well as premise owners and contractors who specified and installed those products.

John has litigated asbestos cases resulting from occupational, environmental and household exposure, receiving verdicts in hundreds of matters. Most recently, John was lead trial counsel in a welding fume verdict for the plaintiff on behalf of a welder who developed manganism from exposure to welding fumes. He won the first affirmed jury verdict in the United States for a domestic, asbestos- exposed mesothelioma victim in the Marie Granski case and achieved the first verdict in the United States against SCAPA US, the former manufacturer of asbestos-containing dryer felts. John also worked as lead trial counsel in the Harlow trial group, cited as a top 100 case of the year by *The National Law Journal*, and litigated a personal injury case against a tobacco company for a plaintiff harmed by the use of asbestos in cigarette filters.

John is recognized as an AV® rated attorney by Martindale-Hubbell® and frequently serves as a guest speaker at asbestos litigation-related seminars.

### AWARDS AND ACCOLADES:
**The Best Lawyers in America®**
**2015–2017**  Product liability litigation – plaintiffs

***The Legal 500 United States***
**2007, 2009, 2010, 2011, 2012, 2015** Mass tort and class action: plaintiff representation – toxic tort

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**American Board of Trial Advocates**
**South Carolina Association for Justice**

*Although it endorses this lawyer, The Legal 500 United States is not a Motley Rice client.

### *T. David Hoyle*

LICENSED IN: FL, GA, SC
ADMITTED TO PRACTICE BEFORE:
Georgia Supreme Court; U.S. Court of Appeals for the Fourth and Eleventh Circuits; Georgia Court of Appeals; U.S. District Court for the Middle, Northern and Southern Districts of Florida, Middle and Northern Districts of Georgia, District of South Carolina, and the Western District of Wisconsin
EDUCATION:
J.D., *cum laude,* University of South Carolina School of Law, 2005

B.A., Wofford College, 2002

David Hoyle works to change corporate conduct through the civil justice system, representing victims of corporate wrongdoing and negligence in litigation ranging from catastrophic incidents to asbestos exposure and environmental contamination. He focuses on complex personal injury cases

involving catastrophic burns, brain injury, loss of limb and paralysis, as well as wrongful death cases resulting from negligence, industrial accidents and defective products.

David represents victims suffering from mesothelioma and other asbestos-related diseases as well as Canadian provincial workers' compensation boards bringing U.S. civil actions. He also represents people and businesses in Gulf Coast communities that suffered economic loss, property damage and physical injuries due to the Deepwater Horizon oil spill.

Following the conviction of a South Carolina child predator, David litigated the claims of victims against the predator's former employer, Pinewood Preparatory School, negotiating a resolution that includes the implementation of a new Child Protection Policy that includes the enforcement of stricter procedures and a decade of outside monitoring. David also litigated the claims of a rape victim against the owner of a self storage facility and negotiated a resolution that included the business changing its security practices.

An AV® rated attorney in Martindale-Hubbell®, David has handled all aspects of litigation, from initial client meetings to jury trials and appellate oral arguments. David has presented at seminars on a diverse range of topics, such as NFL concussion litigation, the economic loss rule in environmental cases, ethical issues involving social media and asbestos disease awareness. He is the author of "Seal of Disapproval: International Implications of South Carolina's Notary Statute," 3 S.C.J.Int'l. L. & Bus. 1 (2006).

David is active in the community, providing pro bono legal services to the Magdalene House of Charleston and volunteering with the Lowcountry AIDS Legal Clinic. He is a member of the Ecclesiastical Court of The Episcopal Church in South Carolina, and has also been appointed to The Episcopal Church Province IV Court of Review. In 2007, David helped lead the efforts of young alumni to establish the Elizabeth B. and Larry T. McGehee Endowed Scholarship Fund at Wofford College in honor of a former professor and his wife. The annual earnings are awarded for the purchase of textbooks and other course-related materials.

### AWARDS AND ACCOLADES:
***South Carolina Super Lawyers® Rising Stars*** list
**2012–2016**  Personal injury plaintiff: general; Civil rights; Environmental litigation

**The National Trial Lawyers**
**2012**  Top 100 Trial Lawyers™– South Carolina

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**South Carolina Association for Justice**

## James M. Hughes, Ph.D.

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the First, Fourth, and Eighth Circuits, U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 1993
Ph.D., University of Illinois, Chicago, 1983
M.A., University of Illinois, Chicago, 1976
B.A., University of Minnesota, 1975

Jim Hughes develops strategic legal arguments, drafts and argues motions, and litigates cases involving securities fraud.

Jim has also represented industrial workers exposed to silica and asbestos in the workplace, arguing before appellate courts in Illinois and Minnesota on behalf of occupational disease victims. He has shared his experience with silica litigation and product identification at several national conferences, addressing the plaintiff's perspective and other pertinent issues.

A published author on several legal and academic themes, Jim's law review article, "Informing South Carolina Capital Juries About Parole" (44 *S.C. Law Review 383*, 1993) was cited in 2000 by U.S. Supreme Court Justice John Paul Stevens in his dissenting opinion in *Ramdass v. Angelone*. His reported opinions include *Ison v. E.I. DuPont de Nemours & Co.* (Del. 1999), *In re Minnesota Asbestos Litigation* (Minn., 1996), *W.R. Grace & Co. v. CSR Ltd.,* (Ill. App. Ct. 1996) and *In re Tutu Wells Contamination Litigation* (D.V.I. 1995).

A former professor of philosophy, Jim began his legal career with the plaintiffs' bar after clerkships with the South Carolina Office of Appellate Defense and a business, employment and intellectual property defense firm. He is recognized as an AV® rated attorney by Martindale-Hubbell®.

### ASSOCIATIONS:
**American Association for Justice**
**South Carolina Association for Justice**

## Anne McGinness Kearse

LICENSED IN: DC, SC, WV
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Eastern District of New York, Eastern and Western Districts of Pennsylvania and District of South Carolina
EDUCATION:
J.D. *cum laude,* University of South Carolina School of Law, 1998
B.S., Syracuse University, 1983

With a passion for justice, Anne McGinness Kearse has spent more than a decade seeking to hold accountable numerous corporations that put profits before safety. Through litigation, Anne seeks the implementation of better safety practices and corporate governance measures for those corporations, as well as just compensation for victims of toxic exposure, extreme and life-altering injuries, workplace injuries, severe burns, brain damage, loss of limb and paralysis, as well as wrongful death resulting from negligence and defective products.

Anne works closely with victims and their families, often meeting with them in their homes for consultations. She strives to provide each client with personalized attention and individual justice, whether the case is part of a class action or stands alone. Anne believes in building relationships with co-counsel and often collaborates with other attorneys, including estate and probate counsel, in order to approach each case from a team perspective.

Anne represents workers diagnosed with the devastating disease mesothelioma caused by asbestos exposure in the chemical, electric power generation, steel or construction industries. She also represents victims of household exposure—children and spouses who developed mesothelioma or other asbestos-related diseases after being exposed to asbestos fibers that a family member unwittingly brought home from work on clothes or belongings. Anne has tried several noteworthy asbestos cases, including *Cox vs. A&I Company,* West Virginia's first household asbestos exposure case, and the 2002 West Virginia Consolidated Asbestos Trial against Union Carbide in which unsafe working conditions were found at its plants throughout the state. In addition to maintaining an active trial schedule, Anne represents Canadian Workers' Compensation Boards in U.S. courts to recoup benefits they paid Canadian asbestos victims.

While in law school, Anne supported the team representing the State Attorneys General in the historic lawsuit against Big Tobacco, which resulted in the largest civil settlement in U.S. history. After graduation, she was a member of the trial team that litigated *Falise v. American Tobacco Company*.

Well-versed in navigating complex litigation, Anne holds several leadership positions within the firm, managing legal teams associated with occupational disease, toxic exposure and severe personal injury. Anne has written several articles of interest to the plaintiffs' bar and frequently speaks on asbestos litigation, general product liability, legal ethics and tort reform at seminars across the country. She has been published on major legal issues, including *forum non conveniens* and defective products abroad, corporate misconduct, medicolegal aspects of asbestos litigation and mass tort litigation. Anne co-authored the 12th chapter of the book, "Pathology of Asbestos-Associated Diseases" (*Medicolegal Aspects of Asbestos-Related Diseases: A Plaintiff's Attorney's Perspective,* 3rd ed., 2014). Edited by Victor L. Roggli, MD; Tim D. Oury, MD, PhD; and Thomas A. Sporn, MD, this publication is a comprehensive asbestos reference book used by both physicians and attorneys.

Anne currently serves as the President Elect of the Public Justice Foundation, a charitable organization focused on protecting people and the environment and increasing access to justice. In 2011, Anne served on the Executive Board for a local chapter of Safe Kids USA, advocating for childhood injury prevention. Anne was a University of South Carolina School of Law bronze Compleat Award recipient in 1998 and is recognized as a BV® rated attorney by Martindale-Hubbell®.



## AWARDS AND ACCOLADES:

### Benchmark Plaintiff

**2013** National "Litigation Star": mass tort/product liability – plaintiffs

**2012–2014** South Carolina "Litigation Star": mass tort/product liability – plaintiffs

**2014** *Top 150 Women in Litigation* list: South Carolina: mass tort/product liability – plaintiffs

### The Best Lawyers in America®

**2016** Charleston, S.C. "Lawyer of the Year": Mass tort litigation/class actions – plaintiffs

**2011–2017** Mass tort litigation/class actions – plaintiffs

### The National Trial Lawyers

**2010** *Top 100 Trial Lawyers*™: South Carolina

### The Legal 500 United States

**2007, 2009, 2010, 2011, 2012, 2016** Mass tort and class action: plaintiff representation – toxic tort

### South Carolina Super Lawyers® list

**2013–2016** Class action/mass torts; Personal injury – products: plaintiff; Personal injury – general: plaintiff

## ASSOCIATIONS:

**Public Justice Foundation,** President – Board of Directors

**American Association for Justice,** Chair – Committee on Asbestos Education

**American Bar Association**

**South Carolina Association for Justice,** Board of Governors; Chair – Women's Caucus

**Litigation Counsel of America Trial Lawyer Honorary Society**

**Order of the Coif**

**Order of the Wig and Robe**

**John Belton O'Neal Inn of Court**

**American Inns of Court, James L. Petigru Chapter**

*Although it endorses this lawyer, The Legal 500 United States is not a Motley Rice client.

## Marlon E. Kimpson

LICENSED IN: SC

ADMITTED TO PRACTICE BEFORE:

U.S. District Court for the District of South Carolina, Eastern District of Michigan

EDUCATION:

J.D., University of South Carolina School of Law, 1999

B.A., Morehouse College, 1991

Marlon Kimpson represents victims of corporate malfeasance, from investors in securities fraud cases to people injured or killed in catastrophic incidents. Building upon the firm's relationships with unions and governmental entities, Marlon represents individuals, state and municipality pension funds, multi-employer plans, unions and other institutional investors in securities fraud class actions and mergers and acquisition cases to help recover assets and improve corporate governance.

Marlon has worked on shareholder derivative litigation and on mergers and acquisitions cases that include: *In re Atheros*

*Communications, Inc., Shareholder Litigation; In re Celera Corporation Shareholder Litigation; In re RehabCare Group, Inc. Shareholders Litigation* and *In re Coventry Healthcare, Inc., Shareholder Litigation.*

In addition to securities fraud litigation, Marlon has also represented victims of catastrophic personal injury, asbestos exposure, and aviation disasters. He has litigated commercial and charter aviation cases with clients, defendants and accidents involving multiple countries. He has also represented people and businesses that need help filing their claims under the new claims programs established by the two Deepwater Horizon BP oil spill settlements.

Marlon currently serves as South Carolina State Senator of District 42, representing citizens of Charleston and Dorchester Counties. A frequent speaker, Marlon has presented at seminars and conferences across the country, including the Public Funds Summit, the National Association of State Treasurers, the South Carolina Black Lawyers' Association, the National Conference on Public Employee Retirement Systems (NCPERS) and the National Association of Securities Professionals (NASP).

After five years in commercial banking, Marlon entered the field of law and served as a law clerk to Judge Matthew J. Perry of the U.S. District Court of South Carolina. His legal work and volunteer service also earned him the University of South Carolina School of Law bronze Compleat Award. Martindale-Hubbell® recognizes Marlon as a BV® rated attorney.

Marlon is active in his community and formerly served on the Board of Directors for the Peggy Browning Fund. He has also held leadership roles with the University of South Carolina Board of Visitors, the Charleston Black Lawyers Association and the South Carolina Election Commission. He is a lifetime member of the NAACP and a member of Sigma Pi Phi Boulé and Omega Psi Phi fraternity.

## AWARDS AND ACCOLADES:

### The Best Lawyers in America®

**2015–2017** Mass tort litigation/class actions – plaintiffs

### Benchmark Plaintiff

**2012** National "Litigation Star": mass tort/product liability

**2012–2014** South Carolina "Litigation Star": environmental, mass tort, securities

## ASSOCIATIONS:

**American Association for Justice**

**South Carolina Association for Justice**

**National Association of Public Pension Attorneys**

**American Bar Association**

**National Bar Association**

## James W. Ledlie

LICENSED IN: DC, SC, WV
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Fourth and Eleventh Circuits, U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 2000
B.A., Wofford College, 1996

Recognized for his litigation skills and client advocacy, James Ledlie focuses his practice on occupational disease, worker safety, products liability, consumer fraud and complex litigation matters. He has represented clients in jury trials and hearings across the country and takes pride in his work advocating for compensation for people who have suffered serious injury or wrongful death as the result of corporate misconduct, negligence and defective product design.

James fights for clients suffering from mesothelioma and other asbestos-related diseases caused by occupational or household asbestos exposure. He also played a key role in the firm's efforts to hold the tobacco industry responsible for intentionally creating addictive products that can later cause lung cancer, COPD, and other fatal diseases. James has obtained sizable plaintiff verdicts and settlements in both state and federal courts on behalf of smokers killed or severely injured by the actions of the cigarette industry.*

In addition, he has represented whistleblowers in *qui tam* actions alleging fraud against the federal government. James is currently representing businesses, citizens and municipal entities that suffered loss as a result of the Deepwater Horizon oil spill in the Gulf of Mexico. He has spent many years representing numerous provincial workers' compensation boards and private Canadian citizens in U.S. civil actions brought against U.S. manufacturers of dangerous products sold in Canada. He is also a vocal advocate for safe products and for holding corporations accountable for negligent or intentional misconduct.

Prior to joining Motley Rice, James served as a Law Clerk to the Honorable John C. Few, then a South Carolina Circuit Court Judge. He later served as Law Clerk to the Honorable G. Ross Anderson, Jr., of the U.S. District Court for the District of South Carolina. James is proud of his service in the U.S. Army Judge Advocate General Corps (JAG) Reserve and has represented injured veterans in wrongful death and serious personal injury cases.

James has spoken at numerous legal conferences, medical conferences and continuing education seminars on asbestos litigation, trial advocacy, jury selection and professionalism. He is recognized as an AV® rated attorney by Martindale-Hubbell®.

## AWARDS AND ACCOLADES:
**American Association for Justice**
**2010** F. Scott Baldwin Award: in honor of his significant contribution to the New Lawyers Division and the attainment of outstanding trial verdicts

**The National Trial Lawyers**
**2016** Top 100 Trial Lawyers™– South Carolina

**2012–2013** *South Carolina Super Lawyers® Rising Stars* list

## ASSOCIATIONS:
**American Association for Justice,** former New Lawyers Division Board of Governors member
**South Carolina Association for Justice,** former Board of Governors member
**South Carolina Bar Association,** Past Chairman – Torts and Insurance Practice Section
**Charleston Bar Association**
**Public Justice Foundation**

## Gregg S. Levin

LICENSED IN: DC, MA, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Second, Third, Fifth, Ninth and Eleventh Circuits
U.S. District Court for the District of Colorado
EDUCATION:
J.D., Vanderbilt University School of Law, 1987
B.A., University of Rochester, 1984

With more than two decades of legal experience, Gregg Levin represents domestic and foreign institutional investors and union pension funds in corporate governance, directorial misconduct and securities fraud matters. His investigative, research and writing skills have supported Motley Rice as lead or co-lead counsel in numerous securities and shareholder derivative cases against Dell, Inc., UBS AG and Cintas Corporation. Gregg manages complaint and brief writing for class action deal cases, shareholder derivative suits and securities fraud class actions.

Prior to joining Motley Rice, Gregg was an associate with Grant & Eisenhofer in Delaware, where he represented institutional investors in securities fraud actions and shareholder derivative actions in federal and state courts across the country, including the WorldCom, Telxon and Global Crossing cases. He also served as corporate counsel to a Delaware Valley-based retail corporation from 1996-2003, where he handled corporate compliance matters and internal investigations.

Appearing in the media to discuss a variety of securities matters, Gregg has also presented in educational forums, including at the Ethics and Transparency in Corporate America Webinar held by the National Association of State Treasurers.

## PUBLISHED WORKS:
Gregg is a published author on corporate governance and accountability issues, having written significant portions of the treatise *Shareholder Activism Handbook* (Aspen Publishers, November 2005), as well as several other articles of interest to institutional investors, including:

- *"In re Cox Communications:* A Suggested Step in the Wrong Direction" (*Bank and Corporate Governance Law Reporter,* September 2005)

Prior results do not guarantee a similar outcome.



- "Does Corporate Governance Matter to Investment Returns?" (*Corporate Accountability Report*, September 23, 2005)
- "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith under Delaware Corporate Law" (*Bank and Corporate Governance Law Reporter*, September 2006)
- "Proxy Access Takes Center Stage: The Second Circuit's Decision in American Federation of State County and Municipal Employees, Employees Pension Plan v. American International Group, Inc." (*Bloomberg Law Reports*, February 5, 2007)
- "Investor Litigation in the U.S. -- The System is Working" (*Securities Reform Act Litigation Reporter*, February 2007)

## Robert J. McConnell

LICENSED IN: MA, RI
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of Massachusetts, District of Rhode Island
EDUCATION:
J.D., Suffolk University School of Law, 1987
A.B., Brown University, 1979

Bob McConnell's practice concentrates on lead pigment litigation, childhood lead poisoning cases, groundwater and soil contamination cases and other toxic environmental litigation. He represents victims seeking corporate accountability as a result of personal injury, property damage and economic loss as a result of negligent environmental practices.

Bob was a member of the trial team in the landmark trial on behalf of the state of Rhode Island against corporate defendants from the lead paint industry. He secured the largest lead paint poisoning settlement in Rhode Island on behalf of a child and continues to represent children injured by lead poisoning against property owners, governmental agencies and lead pigment companies. He also played a leading role in a statewide lobbying effort to defeat legislation that would have denied lead-poisoned children and their families the right to seek justice. Through testimony, analysis and grassroots outreach, he helped the Rhode Island legislature pass a bill helping to prevent childhood lead poisoning without infringing on victims' rights.

In 2005, he successfully argued the precedent-setting case *Thomas v. Mallett* 285 Wis 2d 236 as part of the Motley Rice trial team applying risk contribution theory to the lead paint industry before the Wisconsin Supreme Court. More recently, Bob represented more than 100 residents of Tiverton, R.I., in an environmental contamination lawsuit against a major New England utility company.

With more than two decades of experience in asbestos litigation, Bob also represents victims of asbestos exposure suffering from mesothelioma and other asbestos-related diseases. He has managed large consolidation trials in several states including Maryland, Mississippi and West Virginia.

After beginning his career as a teacher, Bob earned a law degree and clerked for the Honorable Donald F. Shea of the Rhode Island Supreme Court. He joined Motley Rice attorneys on the tobacco litigation team representing multiple state attorneys general, which resulted in the historic Master Settlement Agreement between the states and the tobacco industry.

Highly active in the Rhode Island community, Bob serves as board vice chairman of The Institute for the Study and Practice of Nonviolence, an organization that seeks to promote nonviolence among young people in Rhode Island's inner cities. He is also a board member for the George Wiley Center, which advocates for the rights of low income Rhode Island citizens, and the Fund for Community Progress, an organization that supports 26 grassroots organizations working for long-term community change.

Bob frequently speaks about lead paint litigation to local and regional groups such as the Rhode Island Bar Association and the Northeast Conference of Attorneys General. He is recognized as an AV® rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:
*Best Lawyers®*
**2009–2017** Mass tort litigation/class actions – plaintiffs

*Rhode Island Super Lawyers®* lists
**2008–2016** Plaintiff: Class action/mass torts; Environmental litigation; Personal injury: general

*Benchmark Plaintiff*
**2012–2014** Rhode Island "Litigation Star": environmental and toxic tort

*The Legal 500 United States*
**2015** Mass tort and class action: plaintiff representation – toxic tort

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**

*Although it endorses this lawyer, The Legal 500 United States is not a Motley Rice client.

## Donald A. Migliori

LICENSED IN: MA, MN, NY, RI, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First and Fourth Circuits, U.S. District Court for the District of Rhode Island, District of Massachusetts and Northern, Southern and Eastern Districts of New York
EDUCATION:
M.A./J.D., Syracuse University, 1993
A.B., Brown University, 1988

Building upon his experience in complex asbestos cases, the historic tobacco lawsuits and 9/11 litigation, Don Migliori is a multifaceted litigator who can navigate both the courtroom and the negotiating table. He represents victims of defective medical devices and drugs, occupational diseases, terrorism, aviation disasters, antitrust, and securities and consumer fraud in mass torts and other cutting-edge litigation that spans the country.

Don serves in leadership roles for a number of multi-district litigations, including playing a key role in negotiations on behalf of tens of thousands of women allegedly harmed by pelvic mesh/sling products and serving as co-liaison counsel in the N.J. Bard pelvic mesh litigation in Atlantic County. .Hundreds of cases have been filed in federal and states courts against multiple defendants.

He is also a member of the Plaintiffs' Steering Committee for *In re Bard IVC Filters Products Liability Litigation*, as well as the Depuy® Orthopaedics, Inc. ASR™ and Pinnacle® Hip Implant MDLs. Don has litigated against C.R. Bard previously in the pelvic mesh litigation as well as in the Composix® Kugel® Mesh multidistrict litigation, *In re Kugel Mesh Hernia Patch Products Liability Litigation*, the first MDL before the federal court of Rhode Island. Don also serves as co-lead plaintiffs' counsel and liaison counsel in the federal MDL, and as liaison counsel for the Composix® Kugel® Mesh lawsuits consolidated in Rhode Island state court on behalf of thousands of individuals alleging injury by the hernia repair patch.

Don played a central role in the extensive discovery, mediations and settlements of more than 50 cases of 9/11 aviation liability and damages against numerous defendants.  He represented families of the victims of the September 11, 2001, attacks who opted out of the Victim Compensation Fund to seek greater answers, accountability and recourse, and served as liaison counsel for all wrongful death and personal injury cases in the 9/11 aviation security litigation. Additionally, he manages anti-terrorism litigation associated with the 9/11 terrorist attacks as a lead attorney of the 9/11 Families United to Bankrupt Terrorism, a groundbreaking case designed to bankrupt the financiers of al Qaeda.

Don contributed his experience in connection with the commencement of and strategy for shareholder derivative litigation brought on behalf Chiquita Brands International, Inc., alleging the defendants breached their fiduciary duties by paying bribes to terrorist organizations in violation of U.S. and Columbian law. He also served as trial counsel for PACE Industry Union-Management Pension Fund in a securities case against Forest Laboratories, Inc., and was involved in the initial liability discovery and trial strategy in an ongoing securities fraud class action involving Household International, Inc.

Don began working with Motley Rice attorneys in 1997 on behalf of the State Attorneys General in the historic lawsuit against Big Tobacco, resulting in the largest civil settlement in U.S. history. He tried several noteworthy asbestos cases on behalf of mesothelioma victims, including the state of Indiana's first contractor liability verdict and first premises liability verdict for wrongful exposure to asbestos. He continues to manage asbestos cases and actively litigates mesothelioma lawsuits and individual tobacco cases in the courtroom.

Don is a frequent speaker at legal seminars across the country and has appeared on numerous television and radio programs, as well as in print media to address legal issues related to terrorist financing, aviation security, class action litigation, premises liability and defective medical devices. A

"Distinguished Practitioner in Residence" at Roger Williams University School of Law for the 2010-2011 academic year, Don taught mass torts as an adjunct professor for more than 10 years. Don is an AV® rated attorney by Martindale-Hubbell®.

## AWARDS AND ACCOLADES:
**Best Lawyers®**
**2011–2017**  Mass tort litigation/class actions – plaintiffs

**Rhode Island Super Lawyers® lists**
**2012–2013**  Top 10 "Best of the Best"
**2009–2016**  Class action/mass torts; Personal Injury – products: plaintiff; Aviation and aerospace

**The National Trial Lawyers**
**2010–present**  Top 100 Trial Lawyers™: Rhode Island

**Rhode Island Lawyers Weekly**
**2011**  Lawyers of the Year

**Massachusetts Lawyers Weekly**
**2011**  Lawyers of the Year

**Benchmark Plaintiff**
**2012–2014**  Rhode Island "Litigation Star": human rights and product liability

**2010**  *Lawdragon™ 3,000*

**Providence Business News**
**2005**  Forty Under 40

## ASSOCIATIONS:
**American Association for Justice,** Board of Governors; former Executive Committee member
**American Bar Association**
**Rhode Island Association for Justice,** former President
**The Fellows of the American Bar Foundation**

## *William H. Narwold*
LICENSED IN: CT, DC, NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, D.C., and Federal Circuits, U.S. District Court for the District of Colorado, District of Connecticut, Eastern and Southern Districts of New York, District of South Carolina
EDUCATION:
J.D. *cum laude*, University of Connecticut School of Law, 1979
B.A., Colby College, 1974
Bill Narwold has advocated for corporate accountability and fiduciary responsibility for nearly 35 years, representing consumers, governmental entities, unions and institutional investors. He litigates complex securities fraud, shareholder rights and consumer fraud lawsuits, as well as matters involving unfair trade practices, antitrust violations, whistleblower/qui tam claims and intellectual property matters.

Prior results do not guarantee a similar outcome.



Bill leads Motley Rice's securities and consumer fraud litigation teams and manages the firm's appellate group. His experience includes being involved in more than 200 appeals before the U.S. Supreme Court, U.S. Courts of Appeal and multiple state courts.

Prior to joining Motley Rice in 2004, Bill directed corporate, financial, real estate, trust and estate litigation on behalf of private and commercial clients for 25 years at Cummings & Lockwood in Hartford, Connecticut, including 10 years as managing partner. Prior to his work in private practice, he served as a law clerk for the Honorable Warren W. Eginton of the U.S. District Court, District of Connecticut from 1979-1981.

Bill often acts as an arbitrator and mediator both privately and through the American Arbitration Association. He is a frequent speaker on legal matters, including class actions. Named one of 11 lawyers "who made a difference" by The Connecticut Law Tribune, Bill is recognized as an AV® rated attorney by Martindale-Hubbell®.

Bill has served the Hartford community with past involvements including the Greater Hartford Legal Assistance Foundation and Lawyers for Children America. For more than twenty years, Bill served as a Director and Chairman of Protein Sciences Corporation, a biopharmaceutical company in Meriden, Connecticut.

### AWARDS AND ACCOLADES:
*The Best Lawyers in America®*
**2017** Hartford, Conn. "Lawyer of the Year": Banking and Finance
**2013** Hartford, Conn. "Lawyer of the Year": litigation – banking & finance
**2005–2016** Banking and finance, mergers and acquisitions, securities

*Connecticut Super Lawyers®* and *New England Super Lawyers®* lists
**2009–2015** Securities litigation; Class action/mass torts

**2008** *The Best of the U.S.* list

**Connecticut Bar Foundation**
**2008** Legal Services Leadership Award

### ASSOCIATIONS:
**American Bar Association**
**National Association of Consumer Advocates**
**Connecticut Bar Foundation**, Past President
**University of Connecticut Law School Foundation**, past Board of Trustees member

*\* For full* Super Lawyers *selection methodology visit: www. superlawyers.com/about/selection_process.html For current data visit: www.superlawyers.com/connecticut/ selection_details.html For* Best Lawyers *selection criteria: www.motleyrice.com/sites/default/files/award-BL-CT12-15.pdf*

### Lance Oliver
LICENSED IN: AL, DC, FL, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the District of Columbia, Second, Fifth and the Eleventh Circuits; U.S. District Court for the District of Columbia, and the Middle and Southern Districts of Florida
EDUCATION:
J.D., Duke University School of Law, 2004
B.A., Samford University, 2001

Lance Oliver focuses his practice on class actions, mass torts and other complex litigation. He represents institutional investors in securities fraud class actions and merger and acquisition litigation, and has experience in trial and appellate courts, as well as arbitration and mediation. His recent experience includes:

- Serving as trial counsel representing individual smokers and families of deceased smokers against tobacco manufacturers in the Engle-progeny litigation pending in Florida
- Litigating and resolving shareholders' breach of fiduciary duty claims in *In re Coventry Health Care, Inc. Shareholder Litigation*
- Serving as co-class counsel in *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.,* a securities fraud class action that settled for $164 million dollars*
- Litigating and resolving shareholders' breach of fiduciary duty claims in *In re Rehabcare Group, Inc. Shareholder Litigation,* which resulted in creating a $2.5 million settlement fund for Rehabcare shareholders*

Lance has devoted a substantial amount of time to litigating securities fraud class actions and played a key role in documenting and administering the following class action settlements: *In re Select Medical Corp. Sec. Litig.* (settled for $5 million*); *In re NPS Pharm., Inc. Sec. Litig.* (settled for $15 million*); *In re MBNA Sec. Litig.* (settled for $25 million*); *In re Dell Sec. Litig.* (settled for $40 million*).

Prior to joining Motley Rice in 2007, Lance served as an associate in the Washington, D.C., office of a national law firm, where he worked on complex products liability litigation at both the trial and appellate levels. Lance also has experience in SEC whistleblower actions.

Lance is an active member of the National Conference on Public Employee Retirement Systems (NCPERS) and the International Foundation of Employee Benefit Plans (IFEBP). After graduating from Duke Law School, he served as a law clerk to the Honorable James Hughes Hancock of the U.S. District Court, Northern District of Alabama. He is recognized as an AV® rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:
*South Carolina Super Lawyers® Rising Stars* list
**2013–2016** Securities litigation; Class action/mass torts

### ASSOCIATIONS:
**American Bar Association**

## Mary F. Schiavo

LICENSED IN: DC, FL, MD, MO, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court
EDUCATION:
J.D., New York University School of Law, 1980 (Root-Tilden Scholar)
M.A., The Ohio State University, 1977 (University Fellow)
B.A. *cum laude*, Harvard University, 1976

A CNN Analyst and former U.S. Department of Transportation Inspector General, Mary Schiavo seeks accountability and industry change from corporations, institutions and the government so that they may meet their obligation to protect the safety and security of the traveling public. With years of experience in transportation litigation, Mary represents victims and their families suffering from negligence of airline, automotive, commercial trucking, motorcoach and rail companies.

A leader of the firm's aviation team, Mary has represented passengers and crew of most major U.S. air crashes, as well as pilots and passengers on private or charter planes. She represents passengers, pilots, flight attendants and select owners and operators. Her experience with major, complex aviation litigation includes more than 50 cases on behalf of the family members of the passengers and crew of all the planes hijacked on Sept. 11, 2001.

Mary has held numerous government appointments under three U.S. Presidents, including that of Inspector General of the U.S. Department of Transportation from 1990 to 1996. Under Mary's direction, the agency investigated air safety, crimes and disasters; secured more than 1,000 criminal convictions; and exposed billions of dollars of fraud, waste and abuse of taxpayer money. She testified before Congress multiple times on transportation safety, security, budgeting and infrastructure. In recognition of her work combating the use of bogus aircraft parts worldwide, Mary was honored by *Aviation Week* with its Aviation Laurel Award in 1992 and 1995 and was inducted into the Aviation Laurel Hall of Fame in 1997.

As an Assistant U.S. Attorney early in her career, Mary litigated civil cases and prosecuted federal white-collar crimes, bank and securities fraud, mail and wire fraud, drug trafficking and counterfeiting. During her appointment, she also served on the U.S. Department of Justice's Organized Crime and Racketeering Strike Force, prosecuting high-profile criminal cases of bank and securities fraud and related mail and wire fraud, including a large investigation of a bank and securities fraud scheme that resulted in the federal takeover of banks, savings and loans throughout the Midwest.

In 1987, Mary was selected as a White House Fellow and assigned to the U.S. Attorney General, where she worked as the Special Assistant for Criminal Affairs. In this role, she reviewed high security prosecutions, prepared Foreign Intelligence Surveillance Act Requests, attended foreign legal summits with the Attorney General and worked on international prisoner and evidence exchanges. During this time, she also taught trial technique at the U.S. Attorney General's Advocacy Institute and the Federal Bureau of Investigation Academy. Her work earned her an appointment as the Assistant U.S. Secretary of Labor in 1989, where she led the Office of Labor Management Standards, supervising union elections and investigations on election and financial irregularities.

A frequent on-air contributor or consultant for several networks, Mary has appeared on CNN, ABC, CBS, Fox News, NBC, BBC, the History Channel and Discovery Channel. Named by *Glamour* magazine as a 1997 Woman of the Year, 1987 Working Woman of the Year and a Top Ten College Student in 1975, she has spoken about aviation safety on 20/20, *60 Minutes, Good Morning America, Larry King Live, Nancy Grace, Nightline, Oprah, The O'Reilly Factor, Today,* and *Your World with Neil Cavuto,* among others. Mary is the author of *Flying Blind, Flying Safe,* a *New York Times* bestseller, featured in *Time* magazine for exposing the poor safety and security practices of the airlines and the failures of the federal government to properly regulate the aviation industry. She contributed to *Aviation Security Management* (Volume One, 2008) and *Supply Chain Security* (Volumes One and Two, 2010).

Mary received her pilot's license soon after her driver's license, and later completed private and commercial flight training at The Ohio State University. She returned to The Ohio State University as the McConnell Aviation Chair and professor from 1998-2002 and as the Enarson Professor of Public Policy from 1997-1998. She has also served as a practitioner in residence at the New York University School of Law.

## AWARDS AND ACCOLADES:

*Best Lawyers®*
**2017** Charleston, S.C. "Lawyer of the Year": Mass tort litigation/class actions – plaintiffs
**2010–2016** Mass tort litigation/class actions – plaintiffs

**National Law Journal**
**2015** Outstanding Women Lawyers

*Aviation Week*
**1997** Inducted to the Aviation Laureates Hall of Fame
**1992, 1995** Aviation Laurel Award in recognition of her work combating the use of bogus aircraft parts

*Benchmark Plaintiff*
**2014** *Top 150 Women in Litigation* list: South Carolina – mass tort, securities, aviation
**2012–2014** South Carolina "Litigation Star": mass tort, securities, aviation
**2012–2013** National "Litigation Star": mass tort/product liability

## ASSOCIATIONS:

**American Association for Justice**
**American Bar Association,** First Female Assembly Delegate, House of Delegates *1986–1989*
**International Society of Air Safety Investigators,** affiliate member
**International Air and Transportation Safety Bar**

Prior results do not guarantee a similar outcome.



## Carmen S. Scott

LICENSED IN: SC
EDUCATION:
J.D., University of South Carolina School of Law, 1999
B.A., College of Charleston, 1996

With a focus on women's products, Carmen Scott represents victims of harmful medical drugs and devices, medical negligence, and corporate misconduct.

Carmen helps lead Motley Rice's mass tort pharmaceutical litigation by managing complex personal injury and economic recovery damages cases. She has been on the forefront of national contraceptive litigation involving products such as Essure®, Mirena® IUD, Nuvaring®, Yaz® and Yasmin®. She served on the Plaintiffs' Steering Committee in *In re NuvaRing Products Liability Litigation*, serves as co-lead counsel in *In re Mirena Product Liability* state court consolidation in New Jersey, and is Co-Chair of the AAJ Mirena® IUD Litigation Group. She was also appointed to the Plaintiffs' Steering Committee for the multidistrict litigation *In re Power Morcellator Products Liability Litigation*. Carmen currently represents clients in a variety of drug product matters in state and federal courts.

Prior to joining Motley Rice in 2005 and concentrating her efforts on the medical practice area, Carmen represented numerous clients in jury trials, working on products liability, personal injury and business cases for both plaintiffs and defendants.

Carmen is a frequent speaker on medical litigation and topics involving women's products, regularly lecturing at both legal seminars and public advocacy events on such issues as plaintiffs' rights in medical negligence and dangerous drug cases. She has been quoted in numerous national media outlets and publications, including The Associated Press, NBC News New York, *Marie Claire*, *MotherJones* and *The Safety Report*.

A South Carolina native and active in the community, Carmen proudly serves on the Board of the South Carolina chapter of Make-A-Wish, fundraising and promoting the organization's mission, as well as serving as a "wish-granter" for selected families. She has also served as a board member for the nonprofit organization Charleston County Friends of the Library, and is currently a College of Charleston alumni board member.

### AWARDS AND ACCOLADES:
*South Carolina Super Lawyers®* list
**2015–2016** Personal injury plaintiff: products; Class action/mass torts

*South Carolina Super Lawyers® Rising Stars* list
**2013–2014** Personal injury plaintiff: products; Class action/mass torts

*Charleston Regional Business Journal*
**2013** Forty Under 40

### ASSOCIATIONS:
**American Association for Justice,** Exchange Advisory Committee
**American Bar Association**
**South Carolina Association for Justice**
**South Carolina Women Lawyers Association**

## Fred Thompson III

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the Fourth Circuit, U.S. District Court for the District of South Carolina
EDUCATION:
J.D. *with distinction*, Duke University School of Law, 1979
B.A. *cum laude*, Yale University, 1973

With more than two decades of diverse experience in personal injury, commercial and toxic tort law, Fred Thompson represents people harmed by negligence, product defects or misconduct. As a leader of the medical litigation team, Fred manages cases related to defective medical devices, harmful pharmaceutical drugs, medical malpractice, and nursing home abuse.

His work has led to his appointment to numerous leadership positions, including:

- Co-lead coordinating counsel for the pelvic mesh lawsuits consolidated in the U.S. District Court for the Southern District of West Virginia
- Plaintiffs' co-lead counsel for the Mirena® IUD multidistrict litigation in the U.S. District Court for the Southern District of New York
- Plaintiffs' co-lead counsel for the federal Digitek® consolidation
- Plaintiffs' Steering Committee member for the Medtronic Sprint Fidelis® defibrillator lead
- Plaintiffs' Steering Committee member for the Avandia® federal multidistrict litigation
- Plaintiffs' Steering Committee member for the Trasylol® federal multidistrict litigation
- Chairman of the American Association for Justice's Digitek® Litigation Group
- Co-chairman of the AAJ's Kugel® Mesh Litigation Group.

Fred is also active with the firm's consumer fraud, commercial and economic damage litigation. He has represented clients in litigation involving bond issues and securities fraud in federal, state and bankruptcy forums as well as through alternative dispute resolution. Additionally, Fred has practiced commercial transaction work, including contracting, corporate, partnership and limited liability company formation, and capital acquisitions.

Recognized as an AV® rated attorney by Martindale-Hubbell®, Fred frequently speaks on medical litigation topics at legal seminars throughout the country. He co-authored "Composix® Kugel® Mesh: A Primer" for the Spring 2008 AAJ Section on Toxic, Environmental & Pharmaceutical Torts newsletter. Fred serves his local community as a Board Member for the East Cooper Community Outreach organization.

### ASSOCIATIONS:
**American Association for Justice**

# ASSOCIATES AND COUNSEL

## Andrew P. Arnold

LICENSED IN: NY, SC
EDUCATION:
J.D., with honors, University of North Carolina School of Law, 2013
B.A., with highest honors, University of North Carolina at Chapel Hill, 2002

Andrew Arnold represents institutional investors and individuals in complex securities, corporate governance and shareholder litigation.

He concentrates his practice on investigating and developing securities fraud class actions, shareholder derivative lawsuits, and merger and acquisition litigation.

Prior to joining Motley Rice, Andrew practiced commercial litigation and investor-state dispute settlement in the Washington, D.C. office of a large international law firm. He was recognized on the 2014 Capital *Pro Bono* High Honor Roll for serving 100 *pro bono* hours in the D.C. area. While attending the University of North Carolina School of Law, Andrew was a member of the *North Carolina Law Review* and served as a judicial intern for the North Carolina Court of Appeals and as a research assistant for Professor Thomas Lee Hazen, a prominent securities regulation scholar.

Andrew also has an extensive background in software development, primarily in the healthcare industry, where he designed and developed software to ensure compliance with government regulations.

## James R. Brauchle

LICENSED IN: SC
EDUCATION:
J.D., Rutgers University School of Law, 2001
B.S., Lemoyne College, 1990

A former U.S. Air Force navigator, Jim Brauchle brings years of flying experience, leadership skills and knowledge of the aviation industry to his litigation work. Jim represents victims of aviation disasters and passenger rights violations in cases against the airline industry. With more than a decade of courtroom experience that includes both bench and jury trials, Jim has handled civil, domestic, and criminal defense cases from pre-trial practice through trial, post-trial motions and appeals. He not only works closely with clients and co-counsel but also with pilots, engineers and experts in such areas as wreckage inspection and flight reconstruction.

Jim had the honor of supporting the firm's work in *Bavis v. United Airlines Corporation et al.,* the last aviation security case to be resolved in the nearly decade-long consolidated litigation, *In re September 11 Litigation,* involving 56 of the 96 families who opted out of the Victim Compensation Fund in an effort to force accountability and generate answers related to the 9/11 terrorist attacks. He is an integral member of the aviation team representing the families of the five Italian tourists who lost their lives when a helicopter tour and small private plane collided in mid-air over the Hudson River on Aug. 8, 2009. Litigating multiple crash cases involving small private planes, he also represents the family of a pilot who was one of six people killed when a Cessna Citation 550 aircraft on a life-saving transplant mission crashed into Lake Michigan shortly after takeoff. He also represents the families of passengers who were killed in the July 7, 2013 DeHavilland DHC-3 Otter charter plane crash in Soldotna, Alaska.

An advocate for the rights of the traveling public, Jim took passenger rights case, *Amanda Tuxworth v. Delta Air Lines, Inc.,* to trial and, after a hung jury that was nine to one in his client's favor, used his negotiation skills to resolve the case in mediation prior to a re-trial. In another passenger rights case alleging negligence, breach of contract and negligent misrepresentation, *Sandie Mallard v. Airtran Airways, Inc.,* he played a central role in achieving a confidential settlement. The U.S. District Court for the Southern District of Florida ruled in favor of his client in *Chris Turner v. Ramo, LLC,* a case involving the crash of an international charter flight. This ruling was upheld by the U.S. Eleventh Circuit Court of Appeals in February 2012. Jim also represented numerous families of those who lost their lives in the 2009 Continental Airlines/Colgan Air Flight 3407 crash, which took the lives of all 49 passengers and crew, as well as one person on the ground.

Prior to joining Motley Rice, Jim worked for nearly a decade as a trial attorney representing clients injured or killed in vehicle collisions. His ability to present complex matters to a jury has served him in previous transportation cases.

Jim served as a navigator in the United States Air Force from 1991 to 2001. He was one of only five people in the entire Air Force simultaneously qualified as a C-141 Special Operations navigator, flight instructor and examiner and was often selected to fly high visibility missions, both in the United States and abroad. Additionally, he was hand-selected to brief and demonstrate special operations capabilities to the Air Mobility Command's Director of Operations and represented the 437th Air Wing at RODEO 1996, the United States Air Force's airlift flying competition.

Jim is recognized as an AV® rated attorney by Martindale-Hubbell®.

ASSOCIATIONS:
American Association for Justice
South Carolina Association for Justice
International Society of Air Safety Investigators, affiliate member

## Matthew D. Camm

LICENSED IN: LA
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Eastern District of Louisiana
EDUCATION:
J.D., Louisiana State University Paul M. Herbert Law Center, 2014
B.A. *cum laude*, Carleton College, 2004

Matthew Camm represents individuals, small businesses, and public pension funds and other institutional investors harmed by securities and consumer fraud, environmental disasters, toxic exposure, and dangerous or defective products.



Matthew has assisted working people along the Gulf Coast seeking compensation for economic losses suffered in the wake of the BP oil spill. He has also contributed to discovery and motion practice in securities fraud litigation against St. Jude Medical, Inc.; Barrick Gold Corporation; and Aegerion Pharmaceuticals, Inc.; and in product liability litigation involving Takata airbags and the blood thinner Xarelto®, among other matters.

While in law school, Matthew founded and served as president of the LSU Law Association for Justice, completed externships with the Louisiana Attorney General and the Honorable Trudy M. White of the Nineteenth Judicial District Court, and clerked for three Baton Rouge law firms. He was also a three-year Chancellor's Scholarship recipient and a graduate editor of the Journal of Civil Law Studies.

Prior to law school, Matthew worked for a state-funded organization in New Orleans that represents indigent criminal defendants in state post-conviction and federal habeas corpus proceedings. He also worked in the Washington, D.C. office of a global law firm and as a contract reporter for a Pulitzer Prize-winning newspaper.

### ASSOCIATIONS:
**American Association for Justice**
**Louisiana Association for Justice**
**South Carolina Association for Justice**

### Meghan Johnson Carter

LICENSED IN: SC
EDUCATION:
J.D., University of South Carolina School of Law, 2007
B.S., University of North Carolina at Chapel Hill, 2003
Meghan Johnson Carter litigates cases on behalf of victims of allegedly dangerous pharmaceutical drugs and defective medical devices. Meghan has been involved in a variety of cases related to negligence, corporate misconduct and defective products, including cases involving Accutane®, Advair®/Serevent®, Avandia®, Fosamax®, Paxil® and Zicam®. She was appointed Negotiating Plaintiffs' Counsel in the Southern District of West Virginia by the Honorable Joseph R. Goodwin for purposes of settlement coordination and administration in In re Digitek Products Liability Litigation, a federal MDL involving people who suffered from digoxin toxicity allegedly caused by recalled Digitek®.

Meghan currently represents clients who have suffered from osteonecrosis and femur fracture cases allegedly related to the osteoporosis drug Fosamax®. Meghan currently represents clients who have been harmed by pelvic mesh/sling products. She has also represented women in national contraceptive litigation involving Mirena®, NuvaRing®, Yaz® and Yasmin®. Other cases she is involved in include Pradaxa®, Talcum Powder and Tylenol® litigation and laparoscopic power morcellation.

Meghan has experience in various other product liability actions. Early in her career, she represented victims and families affected by tragic events caused by hazardous consumer products, premise injuries and other incidents of negligence, including working on In re Graniteville Train Derailment.

At the University of South Carolina School of Law, Meghan was a research editor for the South Carolina Law Review, the chief justice of the University of South Carolina Moot Court Bar, and a member of the John Belton O'Neill Inns of Court. She was also appointed to the Order of the Wig and Robe and the Order of the Barristers. She received the Sherod H. Eadon Scholarship Award which is awarded to a student who exhibits outstanding ability in trial advocacy.

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**South Carolina Association for Justice**
**South Carolina Bar Association**
**Charleston County Bar Association**

### Meredith Kay Clark

LICENSED IN: DC, SC
EDUCATION:
J.D., Elon University School of Law, 2011
B.A., Elon University, 2008
Meredith Clark litigates for people suffering from mesothelioma and other asbestos-related diseases resulting from exposure in the workplace and secondhand exposure at home.

Meredith brings a solid understanding of the legal and factual issues critical to asbestos cases. She has coordinated the drafting and filing of hundreds of motions and responses related to the maritime docket (MARDOC) in In re Asbestos Products Liability Litigation (MDL 875), and has assisted on numerous other matters involving toxic exposure.

While attending the Elon University School of Law, Meredith volunteered as a student attorney with the Elon Humanitarian Immigration Law Clinic, where she represented refugees and asylum-seekers in citizenship and immigration hearings before the United States Customs and Immigration Services. She also gained experience as a law clerk for a North Carolina firm where she prepared documentation for social security disability insurance hearings before the Employment Security Commission.

Active in student organizations, Meredith was a Moot Court Board Member, a semi-finalist in the Intramural Moot Court Competition and recipient of the Best Team Brief award. She served as a member of the Elon Law Review, President of the Women's Law Association, and Founding Executive Vice President of the Family Law Society. In 2011, Meredith was the recipient of the National Association of Women Lawyers Outstanding Law Student Award.

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**South Carolina Association for Justice**
**South Carolina Women Lawyers Association**

## Breanne Vandermeer Cope

LICENSED IN: CA, MN, TX
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. District Court for the Central, Northern, Eastern and Southern Districts of California; District of Colorado; District of Minnesota; and the Western District of Wisconsin
EDUCATION:
LL.M., University of Texas, 2011
J.D., Loyola Law School, 2008
B.A., Wellesley College, 2003

Breanne Cope seeks justice for the thousands of women allegedly harmed by medical devices such as Essure® and pelvic mesh. She handles several aspects of medical drug and device litigation as part of the Motley Rice medical team including trial, expert witness interviews and medical document reviews. She was part of the trial team for Barba v. Boston Scientific Corp., a transvaginal mesh case that resulted in a $10M award.*

Breanne also works on environmental contamination claims on behalf of various states, cities, counties and individuals.

Prior to joining Motley Rice, Breanne worked on complex litigation, class actions and medical litigation, managing dockets of more than 1,400 consolidated transvaginal mesh cases and 22 individual personal injury cases concerning pelvic mesh. From 2010 to 2011, she served as a policy intern for Texas State Senator Wendy Davis.

She has authored several articles including "Finding Meaning Outside of the Courtroom," published in the American Association for Justice's Women Trial Lawyers Caucus newsletter in summer 2015, and "Finding the Foreign Defendant," published in Trial Magazine, May 2015.

Apart from her litigation work, Breanne volunteers for many organizations and is active in her community. In 2015, she served on the Planning and Marketing Committee for the National Association of Women Lawyers' mid-year meeting, and is on the Global Education Fund committee for Ms. JD, supporting a scholarship fund for Ugandian women in law school. She also serves on the board of directors for Trial Lawyers Care and actively volunteers with the Silicon Valley Pet Project and Austin Pets Alive!

## ASSOCIATIONS:

**American Association for Justice**, Co-chair – Women Trial Caucus Publications and Scholarship Committees
**National Association of Women Lawyers**

## Dennis A. Costigan

LICENSED IN: MA, RI
EDUCATION:
J.D., Roger Williams University School of Law, 2013
B.A. *cum laude*, University of Rhode Island, 2009

Dennis Costigan litigates for patients suffering from the painful, life-altering injuries associated with allegedly faulty medical devices and works to hold accountable those responsible for inadequate product testing, research and warning.

While in law school, Dennis served as a legal intern with the Rhode Island Department of Health and Human Services performing detailed discovery and research into departmental legislation, including Medicare bankruptcy claims research. He also acquired research and writing experience as an intern at a Rhode Island law firm and as a law clerk for Motley Rice.

Dennis draws from a history of involvement in federal, state and local election campaigns, and was acknowledged with a CALI Excellence for the Future award in Judicial Behavior and Social Change during law school.

## Sara O. Couch

LICENSED IN: FL, SC
EDUCATION:
J.D., University of North Carolina School of Law, 2013
A.B., Duke University, 2009

Sara Couch represents institutional investors, government entities and consumers in securities and consumer fraud litigation. Sara also assists in the litigation of individual tobacco cases.

Prior to joining Motley Rice, Sara served as a law clerk with the North Carolina Department of Justice, where she researched and drafted briefs and memoranda regarding the False Claims Act and Stark Law for the North Carolina Medicaid Civil Enforcement Division. She also investigated allegations of healthcare fraud and presented findings to the division.

During law school Sara was a certified student practitioner with the University of North Carolina Civil Litigation Clinic. As a student practitioner, Sara represented clients in administrative hearings, obtaining successful outcomes and needed relief. She also represented several inmates in an action against the North Carolina prison system, conducting depositions and assisting in obtaining a preliminary injunction against the prison.

While attending the University of North Carolina School of Law, Sara competed in the Kilpatrick Townsend 1L Mock Trial Competition and was awarded best oral advocate during the preliminary round. She was a staff member of the *First Amendment Law Review* and was a member of the Carolina Law Ambassadors.

Sara also volunteered with Legal Aid of North Carolina, assisting advocates for Children's Services with a school-to-prison pipeline project by researching education policy issues, North Carolina case law and education data to be used in education



litigation. Sara completed a total of 50 hours of pro bono service while a student at UNC School of Law.

An avid rower, Sara was a varsity member of the NCCA Division-I Duke University's rowing team and is a classically-trained pianist.

## John C. Duane

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Fourth Circuit, U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 1998
B.A., College of Charleston, 1994

Former federal prosecutor John Duane applies his experience prosecuting criminal matters to his work representing clients harmed by defective medical devices, implants and drugs, as well as a variety of cases related to negligence, defective products and vehicle incidents.

John works with co-counsel to represent clients in national litigation who have been injured after receiving allegedly defective hip replacement devices, including DePuy® ASR™, DePuy® Pinnacle®, Biomet M2a-Magnum™, Stryker® Rejuvenate, Wright Medical Conserve® and Zimmer Durom®. He was actively involved in the *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation,* a federal MDL involving people who suffered from injuries allegedly caused by heart defibrillator lead wires. He was also an integral part of the litigation involving the drugs Advair®/Serevent®, Trasylol®, Zicam® and Fen Phen®.

As an Assistant U.S. Attorney for the District of South Carolina, John prosecuted cases in a variety of areas, including financial crimes, wire and mail fraud, corporate fraud and violent crimes. In this role, he also served as the lead trial attorney on several jury trials and trained new prosecutors in caseload management, procedures and trial technique.

Previuosly, John served as a law clerk to Senior United States District Judge C. Weston Houck, assisting with all phases of civil and criminal trials, including pre-trial and post-trial motions, evidentiary rulings and research in class actions, transportation and design defect cases, shareholder derivative actions and whistleblower actions.

Active in his community, John volunteers as a children's soccer coach and contributes his time to various youth programs at his church.

### AWARDS AND ACCOLADES:
**2004  Assistant U.S. Attorney of the Year**, Charleston Division

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**South Carolina Association for Justice**
**South Carolina Bar Association**
**Charleston County Bar Association**

## Natalie Deyneka

LICENSED IN: SC, WV
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Southern District of West Virginia
EDUCATION:
J.D. with honors, University of North Carolina School of Law, Chapel Hill, 2015
B.A., University of North Carolina, Chapel Hill, 2010

Through her efforts to help workers and workers' families suffering from asbestos-related diseases, Natalie Deyneka works to hold industries and corporations accountable through the civil justice system while also advocating for health and safety improvements in the workplace.

Natalie is involved in a number of asbestos-related cases, assisting in drafting motions and responses and conducting extensive research.

Before joining Motley Rice, Natalie interned with the Human Rights First Refugee Protection Program in New York and served as a regular volunteer at the Durham Crisis Response Center, focusing on assisting victims of domestic violence and sexual assault.

While at the University of North Carolina School of Law, Natalie served as president of the school's Immigration Law Association and served on the Carolina Student Legal Services' Board of Directors. She also volunteered as co-chair and logistics coordinator with the UNC Law student organization "The Conference on Race, Class, Gender and Ethnicity," where she helped organize a large-scale public conference to address social justice issues. She also served as a research assistant to UNC Law Professors Maxine Eichner and Deborah Weissman.

Natalie is fluent in her native Russian and speaks advanced French.

### ASSOCIATIONS:
Charleston County Bar Association

## Elizabeth Cooke Elsner
*Counsel*

LICENSED IN: NC, SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Middle, Eastern and Western Districts of North Carolina and District of South Carolina
EDUCATION:
J.D. *cum laude*, University of South Carolina School of Law, 1999
B.A., University of North Carolina at Chapel Hill, 1995

Liza Elsner's practice ranges from helping clients injured by acts of corporate negligence to seeking improvements in worker and environmental health and safety. She is heavily involved in the firm's consultation work for South African human rights lawyer Richard Spoor in the effort to take on leading global gold producers, seeking justice for tens of thousands of exploited gold mine workers suffering from silicosis. Few class actions have been brought in South Africa, and none have been filed for sick workers. If approved as a class, the suit would

generate an unprecedented means of recovery for the country and ensure meaningful access to justice for the indigent and rural workers who are dying from this entirely preventable yet incurable disease.

Liza is also part of the team representing individual smokers and families of deceased smokers against tobacco manufacturers in the Engle-progeny litigation pending in Florida.

Liza redirected her career to plaintiffs' law after working several years with large defense firms. At Motley Rice, she has represented welders harmed as a result of corporate malfeasance and conducted client relations and trial preparation for welding rod cases. In 2008, Liza was a member of the trial team that obtained the first welding fume plaintiff verdict in Mississippi state court since 2003.

Liza has advocated for domestic violence victims' rights by participating in training programs and *pro bono* litigation. She served as articles editor for the *South Carolina Law Review* while a law student at the University of South Carolina School of Law and is a member of the Order of the Wig and Robe.

## AWARDS AND ACCOLADES:
**Public Justice Foundation**
**2016** Trial Lawyers of the Year

## *Ann E. Rice Ervin*
LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina
EDUCATION:
M.A., New York University, 2012
J.D., University of South Carolina School of Law, 2009
B.A., University of South Carolina, 2006
Ann E. Rice Ervin represents victims injured by harmful pharmaceutical drugs and defective medical devices, working to hold accountable those responsible for corporate wrongdoing and inadequate product warning, research and testing.

Ann joined Motley Rice as an associate after first serving for two years as a law clerk for a New York plaintiffs' law firm while simultaneously earning a Master of Arts degree in Bioethics from New York University. As a law clerk, she gained experience conducting legal research and analysis for complex environmental litigation involving landfills, toxic spills, vapor intrusion and water contamination. The combination of her legal skill and knowledge of the bioethics field, specifically as it relates to the world of medicine, makes her an asset to Motley Rice's efforts on behalf of its medical clients.

While earning her bioethics degree, Ann interned with the Medical University of South Carolina's Ethics Committee and Ethics Consultation Service, which she joined in 2012 as a Community Representative to help facilitate discussions among patients, families and hospital staff in an effort to resolve ethical conflicts. In 2011, Ann began working as a research assistant on an experimental philosophy study determining the role of bioethics in clinicians' moral reasoning, specifically examining clinicians at three Charleston hospitals. This project was ultimately chosen to be part of Yale University's Experiment Month contest. She continues to hold each of these positions as a complement to her work in the legal field.

During law school, Ann worked as an intern for Washington Governor, Christine O. Gregoire. She also served as a summer special project research assistant with Duke University School of Law and focused her research on exploring whether the law imposes barriers or obligations to medical providers who wish to treat illegal immigrants for ethical reasons.

Ann has volunteered for organizations that include the Palmetto Health Richland Memorial Hospital, Relay-for-Life, Meals on Wheels, The Angel Tree and Project Clean Carolina. She also actively supports the Dee Norton Lowcountry Children's Center. An equestrian since 1988 and national level competitor in the hunters/jumpers division since 1994, she has been ranked in the national top 50 of her division for the past 15 years.

## ASSOCIATIONS:
American Bar Association
American Association for Justice
South Carolina Association for Justice
Charleston County Bar Association
South Carolina Bar Association

## *John M. Eubanks*
LICENSED IN: MD, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the Second, Third, Fourth, Fifth and Eleventh Circuits
EDUCATION:
J.D., Georgetown University Law Center, 2003
B.S., Georgetown University, 1996
With extensive experience investigating terrorist organizations and terrorist financing in the Middle East, John Eubanks represents victims, survivors and their families in litigation designed to bankrupt the financiers of terror, crippling their ability to recruit, train, supply and dispatch terrorist operatives.

John is substantially involved in the firm's litigation on behalf of foreign terror victims and victims of international human rights abuses. He was a key member of the litigation team prosecuting *Linde et al. v. Arab Bank Plc*, the first litigation against a financial institution brought to trial under the Anti-Terrorism Act. In September 2014, a jury found Jordan-based Arab Bank Plc liable for financing terrorist activity, including funneling financial support to top Hamas leaders and to the families of Hamas suicide bombers. John is also pursuing Alien Tort Statute claims against Arab Bank for a separate class of plaintiffs.

John is also a member of the team pursuing a civil action against al Qaeda's alleged financiers and supporters arising out of the 9/11 terrorist attacks. He has pursued litigation against Libya for allegedly providing material resources to the Provisional Irish Republican Army, resulting in the death and injury of citizens of the United States and United Kingdom. John plays a key role in *Krishanthi, et al. v. Rajaratnam*, a case brought under the



Alien Tort Statute involving allegations of American-sourced financing for dozens of terrorist attacks in Sri Lanka carried out by the Liberation Tigers of Tamil Eelam. He was also extensively involved in an Alien Tort Statute case on behalf of young boys allegedly kidnapped for enslavement as camel jockeys in the United Arab Emirates.

Prior to joining Motley Rice in 2004, John served as counsel in a case brought under the Anti-Terrorism Act against various charitable organizations and political groups in the U.S. for supplying Hamas with material support and financial resources in the groundbreaking *Boim v. Quranic Literacy Institute*.

John has drafted various "friend of the court" briefs to the Supreme Court on issues related to anti-terrorism and customary international law on behalf of a broad range of individuals and organizations.

John has also handled multiple personal injury and wrongful death cases involving tour bus and commercial truck crashes, both domestic and international. In 2010, a tour bus operated by Boston-based Grand Circle Travel crashed near Aswan, Egypt, killing eight passengers and injuring numerous others. John and the Motley Rice litigation team filed suit on behalf of seven of the victims of the crash against the tour operator and negotiated a settlement for our clients in 2015.*

A former independent terrorism consultant for the Washington, D.C.-based think tank, The Investigative Project on Terrorism, John served as a liaison and researcher working with the FBI, INS, and U.S. Customs on terrorism financing investigations related to Hamas and the Palestinian Islamic Jihad terrorist organizations.

John is a published author on counterterrorism and security and was a central contributor to the non-fiction work *American Jihad: The Terrorists Living Among Us* (Free Press 2002), which details the activities of organizations and individuals within the U.S. who provide material support and/or resources to Middle Eastern and Islamic terrorist organizations abroad.

John lives in Mount Pleasant, S.C., with his wife and two children, and serves as a deacon in his church.

## AWARDS AND ACCOLADES:
**Public Justice Foundation**
**2016** *Trial Lawyers of the Year*

## ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**, Section of International Law
**South Carolina Association for Justice**
**Charleston County Bar Association**

## *Jeanette M. Gilbert*

LICENSED IN: NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Eastern and Southern Districts of New York
EDUCATION:
J.D., Pace University School of Law, 1984
B.A., Hofstra University, 1979

Jan Gilbert has spent her legal career assisting those who cannot speak for themselves due to age or illness. Since joining Motley Rice in 2006, she continues that advocacy through asbestos bankruptcy litigation and management of claims processing. Jan is one of the attorneys responsible for analyzing complex bankruptcy documents and advising clients and co-counsel lawyers on the claims facilities and asbestos personal injury trusts established by the bankruptcy courts for the benefit of asbestos victims.

Prior to her work at Motley Rice, Jan directed the estate department at a New-York based law firm, where she was responsible for the finance management and administration of multi-million dollar estates and trusts. She provided investment and tax analysis to ensure compliance with federal regulations and reviewed documentation for proper bank and accounting statements. Jan currently utilizes this background to provide legal research for complex securities fraud and shareholder derivative cases with the Motley Rice securities litigation team.

Jan served on the Ethics Committee of the South Carolina Bar from 2010–2013 and has also served a two-year term as the Continuing Legal Education Seminar Committee Chair for the South Carolina Bar. She has also served on several educational and ethics committees with the Nassau County Bar Association of New York, serving as a dean and board member developing programming when Mandatory Continuing Legal Education was instituted in New York. Jan taught courses on legal ethics, legal research and real estate as an adjunct professor at Long Island University. She sat on the executive council of the New York State Conference of Bar Leaders and served as a delegate to New York State Chief Judge Judith Kaye's Institute of Professionalism in the Law.

## ASSOCIATIONS:
**American Association for Justice**
**New York State Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**
**Nassau County Bar Association**

## Max N. Gruetzmacher

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., Marquette University Law School, 2008
B.A., University of Wisconsin-Madison, 2004

Max Gruetzmacher focuses his practice on securities and consumer fraud, representing large public pension funds, unions and other institutional investors in securities and consumer fraud class actions and shareholder derivative suits.

Max has represented clients in a variety of complex litigation cases, including the following: *City Of Sterling Heights Retirement System v. Hospira, Inc.; In re Coventry Health Care, Inc. Shareholders Litigation; In re Force Protection, Inc. Litigation; Minneapolis Firefighter's Relief Association v. Medtronic, Inc.; In re NYSE EURONEXT Shareholder Litigation; In re Par Pharmaceutical Companies, Inc. Shareholders Litigation; In re Synovus Financial Corp.; In re The Shaw Group Shareholders Litigation;* and *In re Winn-Dixie Stores, Inc. Shareholders Litigation.*

Prior to joining Motley Rice, Max gained experience working on a variety of complex discovery matters as a project attorney. He served as a legal intern during law school for the Wisconsin State Public Defender, Appellate Division, where he aided assistant public defenders in appellate criminal defense and handled legal research and appellate brief writing projects. Max was also a member of the *Pro Bono* Society and conducted research for the Legal Aid Society of Milwaukee.

ASSOCIATIONS:
South Carolina Bar Association
Charleston County Bar Association

## John (Rett) E. Guerry III

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 1993
B.A., College of Charleston, 1990

Charleston native Rett Guerry represents railroad and other industrial workers in personal injury, products liability and Federal Employers Liability Act (FELA) litigation. He currently manages the firm's FELA cases, representing workers in occupational injury lawsuits, including cases of exposure to asbestos, silica and chemical solvents. He is on the forefront of second injury FELA litigation, addressing the development of a second injury or disease in former FELA plaintiffs.

Rett litigates asbestos occupational exposure cases on behalf of individuals suffering from mesothelioma and other asbestos-related diseases. As Plaintiffs' Liaison Counsel for the Fulton County State Court Asbestos Consolidation in Georgia, Rett remains involved with the Fulton County asbestos docket,

filing new cases, and working through the consolidation to trial. With more than 12 years of experience in asbestos litigation, his role as a trial lawyer and negotiator emphasizes the product identification aspect of occupational disease law and demonstrates an in-depth knowledge of the medical and scientific aspects of occupational disease.

Familiar with the life of an industrial worker, Rett served as a United States Coast Guard licensed tugboat captain prior to his law career, earning a commendation from the Department of the Navy for Meritorious Service to the Charleston Naval Shipyard during Hurricane Hugo. He is a published writer on maritime law and the author of *Maritime Wrongful Death: A Primer,* a piece published in The University of South Carolina School of Law's *South Carolina Journal of International Law and Business* that explores the potential legal options available to those injured in a maritime setting with specific reference to the High Seas Act, Jones Act, Longshoreman and Harbor Workers' Compensation Act and General Maritime Law.

Recognized as an AV® rated attorney in Martindale-Hubbell®, Rett is active in the local Charleston community as a member of the Hibernian Society and St. Paul's Lutheran Church. He served as a member of the Board of Directors for the Cougar Club at the College of Charleston from 2000 to 2006.

ASSOCIATIONS:
American Association for Justice
American Bar Association
Charleston County Bar Association
South Carolina Association for Justice

## Robert T. Haefele

LICENSED IN: DC, NJ, NY, PA, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Second, Third, Fourth and Eleventh Circuits, U.S. District Court for the District of Columbia, District of New Jersey and Southern District of New York
EDUCATION:
J.D., Rutgers University School of Law – Camden, 1989
B.A., Rutgers College, 1986

Robert Haefele has spent more than twenty years practicing in complex civil litigation, including asbestos, tobacco and other mass tort and product liability litigation. His area of primary emphasis involves anti-terrorism and human rights, analyzing and litigating complex, domestic and international matters to meet clients' goals of justice and accountability while simultaneously achieving positive social change.

Robert's current focus is on aiding the more than 6,500 family members and survivors of the 9/11 terrorist attacks Motley Rice represents. He is an active member of the Personal Injury and Wrongful Death Plaintiffs' Steering Committee in *In re Terrorist Attacks on September 11, 2001,* U.S.D.C., S.D.N.Y., MDL 1570, lawsuits filed by Motley Rice's clients and others seeking to expose and bankrupt the alleged financiers and other supporters of al Qaeda terrorist activity.

Prior results do not guarantee a similar outcome.



Robert also played a central role in *In re September 11th Litigation*, Case No. 21-MC-97-AKH (S.D.N.Y.), involving more than 50 personal injury and wrongful death clients against the aviation and aviation security industries for their alleged failure to detect and prevent the 9/11 terrorist attacks. For both the 9/11 multidistrict terrorist financing litigation and 9/11 mass consolidations of the aviation security liability cases, Robert has appeared before the court for multiple hearings and oral arguments, directed and engaged in complex formal discovery, and managed informal investigative efforts involving, among other things, aviation security, designation of foreign terrorist individuals and entities, and elaborate webs of financial transactions.

In addition to traditional litigation efforts, Robert has provided substantial *pro bono* and other support to the survivors and families of those killed in the 9/11 attacks. From 2001-2004, he provided *pro bono* representation for more than 30 individuals, preparing and presenting their claims to the September 11th Victim Compensation Fund. Working with Motley Rice clients, legislators and leading experts in various industries, Robert also works to encourage legislative changes to help meet clients' goals of justice, accountability and positive social change. He has represented victims of other terrorist attacks and human rights violations in litigation including *Oran Almog v. Arab Bank*, a landmark lawsuit filed by victims of terrorist bombings in Israel against Arab Bank for its alleged role in financing Hamas and other Israeli terrorist organizations and *Krishanti v. Rajaratnam et al.*, 09-cv-5395 (D. N.J.), litigation against alleged financiers of the Tamil Tigers terrorist organization in Sri Lanka.

Representing Motley Rice clients in an array of other complex litigation matters, Robert worked on *World Holdings LLC, v. The Federal Republic of Germany*, a suit filed to collect unpaid pre-WWII German bonds. He has collaborated with members of the firm's securities team, litigating such cases as *In re MBNA Corp. Sec. Litig.*, No. 05-272 (D. Del.), and with the toxic exposure team to litigate cases brought by individuals and businesses suffering as a result of the BP oil spill in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*.

Prior to joining Motley Rice in 2003, Robert developed a strong co-counsel relationship with Motley Rice attorneys through complex litigation involving corporate wrongdoing, including the State of New Jersey's tobacco lawsuit and other tobacco, asbestos and occupational disease and injury cases. Practicing product liability, toxic and mass tort, and occupational injury law, he represented individuals and union members injured by defective products or toxic substances and authored "The Hidden Truth About Asbestos Disease" in the *New Jersey Law Journal* (December 2002). He clerked with Judge Neil F. Deighan of the Appellate Division of the Superior Court of New Jersey in 1990.

## ASSOCIATIONS:

**American Association for Justice**
**American Bar Association**
**New Jersey State Bar Association,** Past Chairman – Product Liability and Toxic Tort Section
**Public Justice Foundation**

## Scott B. Hall

LICENSED IN: MO
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the Eighth, Ninth and Tenth Circuits; U.S. District Courts for the District of Colorado and District of Kansas
EDUCATION:
J.D., University of Texas at Austin, 1998
L.L.M. with Distinction, University of Nottingham, 1998
B.S.J., University of Kansas, 1993

An advocate for people harmed by toxic exposure, chemical-related cancers and other occupational diseases and smoking-related illnesses, Scott Hall has spent more than 15 years working to hold accountable corporations that put profits before people.

Today, he continues to represent people suffering from work-related illnesses such as lung diseases in cases against the companies that allegedly harmed them.

Scott advocates for workers and consumers harmed by inhaling flavoring chemicals such as diacetyl and acetyl propionyl, which have been associated with severe lung diseases often collectively referred to as "Popcorn Workers' Lung," even though many workers, not just those in microwave popcorn manufacturing, have been affected.

In the early 2000s, Scott successfully represented workers who had developed serious lung diseases after exposure to airborne flavoring chemicals in some of the first cases of their kind.* Since then, he has tried more than a dozen lawsuits against the flavoring industry that resulted in plaintiffs' verdicts. Additionally, Scott participated in the resolution of more than 100 cases for people who alleged wrongful death or injuries as a result of exposure to dangerous chemical flavorings.*

His early work in toxic exposure included taking cases to trial as well as settling tobacco cases. His work led to multi-million dollar verdicts in tobacco-related personal injury and wrongful death cases.* He was also contracted by the Canadian government to represent the Provinces of Newfoundland and Labrador in a cost-recovery action against the tobacco industry. Scott has also taken cases to trial and settled environmental contamination cases, including cases involving air pollution and groundwater pollution by industrial chemicals.

In 1997, Scott wrote one of the first peer-reviewed articles on the regulation of genetically modified organisms (GMO) and their impact on the environment. The article, titled "The Genie in the Bottle: The International Regulation of Genetically Modified Organisms," was published in the Journal of International Wildlife Law & Policy.

*Prior results do not guarantee future results. Every case is different and must be judged on its own merits. The choice of a lawyer is an important decision and should not be based solely upon advertisements.

## AWARDS AND ACCOLADES:

*Missouri Super Lawyers® Rising Star* list

**2009** Personal injury – products: plaintiff; Environmental litigation
*Selection criteria: www.superlawyers.com/about/selection_process.html*

## ASSOCIATIONS:

**American Bar Association**
**Missouri Bar Association**
**Kansas City Metropolitan Bar Association**

### Kristen M. Hermiz

LICENSED IN: MA, RI, SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Northern District of Ohio, District of Rhode Island, District of South Carolina
EDUCATION:
J.D., *magna cum laude,* Roger Williams University School of Law, 2010
B.A., *magna cum laude,* University of Connecticut, 2007

Kristen Hermiz represents individuals and families suffering from mesothelioma and other asbestos-related diseases caused by occupational, environmental and household asbestos exposure. On behalf of asbestos victims, she handles complex litigation against manufacturers, property owners and contractors who sold or installed defective or hazardous asbestos-containing products.

Prior to joining Motley Rice, Kristen gained courtroom experience as an associate for a Rhode Island-based firm, arguing motions in various civil actions on behalf of the city of Providence and handling housing, zoning, employment and civil rights litigation. She gained additional experience as a law clerk at Brown University, where she prepared memoranda for counsel regarding legal and administrative issues affecting the University.

A Roger Williams Scholarship recipient and CALI Award winner, Kristen served as a member of *The Roger Williams University Law Review* and was a legal intern for the Honorable Daniel A. Procaccini of the Rhode Island Superior Court. Also a judicial extern for the Honorable Jacob Hagopian of the U.S. District Court for the District of Rhode Island, Kristen drafted judicial reports and made recommendations for *pro se* prisoner petitions. She additionally served as a research assistant to law professor Edward Eberle before serving in the same capacity to retired Rhode Island Superior Court Justice Stephen Fortunato, conducting statutory and case law research for a constitutional law manuscript involving race, poverty, gender discrimination and civil rights reform efforts.

## ASSOCIATIONS:

**Rhode Island Bar Association**

### Ashley J. Hornstein

LICENSED IN: RI
EDUCATION:
J.D., Roger Williams University School of Law, 2012
B.A., University of Kansas, 2008

Ashley Hornstein represents people and families suffering from mesothelioma and other asbestos-related diseases caused by occupational, environmental and household asbestos exposure, as well as victims of lead poisoning and other toxic environmental exposures.

Ashley began working with Motley Rice as a law clerk in 2010, supporting various trial teams in their efforts to hold major corporations accountable. She contributed legal research and case preparation for litigation against C.R. Bard claiming defective medical devices, and Georgia-Pacific for claims of asbestos-related diseases caused by asbestos exposure.

In 2013, Ashley joined the firm as an attorney focusing on illnesses and injuries caused by toxic exposure.

## ASSOCIATIONS:

**American Association for Justice**
**Rhode Island Association for Justice**
**Rhode Island Bar Association**
**Rhode Island Women's Bar Association**

### John D. Hurst

LICENSED IN: NC, PA, SC, WV
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Eastern, Middle and Western Districts of North Carolina, Northern District of Ohio, District of South Carolina, and the Northern and Southern Districts of West Virginia
EDUCATION:
J.D., University of North Carolina, School of Law, 2006
B.A. *highest distinction*, University of North Carolina, Chapel Hill, 2002

John Hurst works to hold corporations accountable for the harm they do to individuals and society, developing and executing case strategies in toxic tort, occupational disease, catastrophic injury, and product liability cases.

John represents workers and their family members injured by occupational, environmental or household exposure to asbestos, including numerous mesothelioma victims. A central member of the West Virginia team, he also manages large, complex multi-party litigation and works extensively in federal, state, and bankruptcy court at both trial and appellate levels. John litigates legal issues under product, premises, and employer liability theories.

John represents merchant mariners with Jones Act claims against their shipowner employers in the federal asbestos MDL-875 and in the Northern District of Ohio and has presented on this topic. In 2014, John was a key member of a trial team that obtained a compensatory and punitive damages verdict



in Massachusetts federal court against a manufacturer of asbestos-containing fireproofing.

John's experience goes beyond occupational disease litigation. He represented victims of a 2009 explosion at the ConAgra facility in Garner, N.C., and negotiated the resolution of those claims against industrial contractors.

John published the first academic analysis of credit counseling agencies, "Protecting Consumers from Consumer Credit Counseling," 9 N.C. Banking Inst. 159 (2005), and co-authored "Premises Liability Update: Employee Cases," for Emerging Trends in Asbestos Litigation, (March 9-11, 2009), and "The Changing Landscape of Single Sex Education," *School Law Bulletin* (2006).

## AWARDS AND ACCOLADES:
***West Virginia Super Lawyers® Rising Stars* list**
**2014–2016** Personal injury – general: plaintiff; Personal injury – products: plaintiff; Class action/mass torts

## ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**Charleston County Bar Association**
**South Carolina Association for Justice**

## Mathew P. Jasinski

LICENSED IN: CT, NY
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the First and Second Circuits, U.S. District Court for the District of Connecticut and Southern District of New York
EDUCATION:
J.D. *with high honors*, University of Connecticut School of Law, 2006
B.A. *summa cum laude*, University of Connecticut, 2003
Mathew Jasinski represents consumers, businesses, and governmental entities in class action and complex cases involving consumer protection, unfair trade practices, commercial, environmental and securities litigation.

Mathew currently represents the plaintiffs in several putative and certified class actions involving such claims as breach of contract and unfair trade practices. He has experience in complex commercial cases regarding claims of fraud and breach of fiduciary duty and has represented an institutional investor in its efforts to satisfy a judgment obtained against the operator of a Ponzi scheme. Mathew recently obtained a seven-figure arbitration award in a case involving secondary liability for an investment advisor's conduct under the Uniform Securities Act. *Please remember that every case is different. Any result we achieve for one client in one matter does not necessarily indicate similar results can be obtained for other clients.*

Mathew additionally serves the firm's appellate group. He has worked on numerous appeals before several state and federal appellate courts throughout the country.

Prior to joining Motley Rice in 2009, Mathew practiced complex commercial and business litigation at a large defense firm. He began his legal career as a law clerk for Justice David M. Borden (ret.) of the Connecticut Supreme Court. During law school, Mathew served as executive editor of the Connecticut Law Review and judging director of the Connecticut Moot Court Board. He placed first in various moot court and mock court competitions, including the Boston region mock trial competition of the American Association for Justice. As an undergraduate, Mathew served on the board of associate directors for the University of Connecticut's honors program and was recognized with the Donald L. McCullough Award for his student leadership.

Mathew continues to demonstrate civic leadership in the local Hartford community. He is a member of the board of directors for the Hartford Symphony Orchestra and is a commissioner of the Hartford Parking Authority. Previously, Mathew served on the city's Charter Revision Commission and its Young Professionals Task Force, an organization focused on engaging young professionals and positioning them for future business and community leadership.

## PUBLISHED WORKS:
"On the Causes and Consequences of and Remedies for Interstate Malapportionment of the U.S. House of Representatives" (Jasinski and Ladewig, *Perspectives on Politics,* Vol. 6, Issue 1, March 2008)

"Hybrid Class Actions:  Bridging the Gap Between the Process Due and the Process that Functions" (Jasinski and Narwold), *The Brief,* Fall 2009

## AWARDS AND ACCOLADES:
***Connecticut Super Lawyers® Rising Stars* list**
**2013–2016** Business litigation; Class action/mass torts; Appellate

***Hartford Business Journal***
**2009** "Forty Under 40"

## ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**Connecticut Bar Association**
**Oliver Ellsworth Inn of Court**
**Phi Beta Kappa**

*\* For full Super Lawyers selection methodology visit: www. superlawyers.com/about/selection_process.html*
*For 2013 CT data visit: www.superlawyers.com/connecticut/ selection_details.html*

## Laura N. Khare
## Associate General Counsel

LICENSED IN: SC
EDUCATION:
J.D., University of South Carolina School of Law, 1996
M.A., University of Virginia, 1993
B.A., Agnes Scott College, 1992

As Associate General Counsel at Motley Rice, Laura Khare manages the firm's legal matters, including employment issues, ethics, marketing, commercial contracts and legal defense. She advises the firm's nearly 65 attorneys on ethical matters, as well as develops appropriate compliance and risk management measures for the firm.  In addition, Laura represents a diverse client base, including victims of sexual abuse and environmental contamination.

Laura joined Motley Rice in 2004 after several years as a civil rights attorney for the U.S. Equal Employment Opportunity Commission in Washington, D.C. She began her tenure as a political appointee for President William J. Clinton. In addition, Laura served as Deputy Director of Research at the State Affairs Company, a consulting firm in Arlington, Virginia, and as a legal fellow for the U.S. House of Representatives Judiciary Committee. She began her career as a staff attorney at the South Carolina Court of Appeals.

Laura has served on the Board of Directors for the Dee Norton Lowcountry Children's Center, the Board of Directors for the Next Child Fund and the Charleston County Board of Zoning Appeals. In her spare time, she enjoys participating on local and national political campaigns, including as a volunteer for multiple national Democratic conventions, most recently in 2012 as a member of the convention's script writing team.

### AWARDS AND ACCOLADES:
*Charleston Regional Business Journal*
**2008**  Forty Under 40

### ASSOCIATIONS:
**American Association for Justice**
**Association of Professional Responsibility Lawyers**
**South Carolina Association for Justice**
**South Carolina Women Lawyers' Association**

## W. Taylor Lacy

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Second Circuit, U.S. District Court for the Western District of Arkansas and the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 2006
B.A., University of Virginia, 2003

Taylor Lacy focuses his practice on catastrophic injury, products liability and securities litigation against diverse corporate defendants. His primary responsibilities include developing legal theories, conducting legal research, and drafting discovery, pleadings and motions.

Taylor has been representing Deepwater Horizon oil spill victims since shortly after the disaster occurred in 2010 and is now helping victims file claims through the new claims programs established by the two settlements reached with BP.

Taylor also litigates on behalf of victims hurt by defective consumer products, fires and premises liability incidents, as well as catastrophic motorcycle, automotive and trucking collisions. He additionally works with the firm's securities and consumer fraud team to represent individual and institutional investor clients in complex securities fraud and shareholder claims.

As a law student, Taylor served as student research editor of the *A.B.A. Real Property, Trust & Probate Journal,* received multiple CALI awards and was inducted into the Order of the Wig and Robe. He studied comparative law and history at University College, Oxford, and The University of Virginia, and transnational dispute resolution at Gray's Inn in London. Taylor was a research assistant and student editor for Carolina Distinguished Professor of Law David G. Owen, assisting with the final preparations of Professor Owen's *Products Liability Law* treatise.

### ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**Charleston County Bar Association**
**South Carolina Association for Justice**

## Patricia J. Lawson

LICENSED IN: KY, WV
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Northern and Southern Districts of West Virginia
EDUCATION:
J.D., West Virginia University College of Law and West Virginia Graduate School of Business & Economics, 1991
M.A., Clarion University of Pennsylvania, 1982

Patti Lawson seeks to protect the safety, health and rights of people suffering from mesothelioma and other asbestos-related diseases, and brings more than a decade of experience in West Virginia government to Motley Rice. Additionally, she strives to protect the rights of those suffering from catastrophic, permanent injuries due to negligence, and works on their behalf to pursue justice and just compensation.

For nearly 15 years, Patti served as a trial attorney for the West Virginia Division of Highways, representing the Division in state and federal court as well as handling complex litigation involving issues such as employment, contracts and financial matters.

Following her service with the WV Division of Highways, Patti presided over appellate hearings as an Administrative Law Judge for the West Virginia Department of Health and Human Resources before opening a sole practice focusing on personal injury, family law and animal law. She was also previously a staff attorney for West Virginia Legislative Services' Committee on Finance and Government.



Patti completed the Department of Justice's National Advocacy Center's Trial Advocacy, The Jury and Prosecutor Boot Camp programs. She has also participated in West Virginia's Settlement Week Alternative Resolution by Mediation (S.W.A.R.M.) program; an organization consisting of lawyers who volunteer their time on a bi-annual basis to serve as mediators in an effort to settle circuit court cases before they go in front of a judge or jury.

An award-winning author, Patti has written two books, *The Dog Diet: A Memoir, What My Dog Taught Me About Shedding Pounds, Licking Stress and Getting a New Leash on Life* and *What Happens to Rover When the Marriage is Over and Other Doggone Legal Dilemmas.* The anticipated release date of her second book is early 2016. She has been a columnist for the *Charleston Gazette,* a blogger for the *Charleston Daily Mail* and has written articles for the *Huffington Post.*

Patti served as an Assistant Special Prosecutor for the Fraud Prosecution Unit of the West Virginia Insurance Commission, as a circuit court mediator and as a Supreme Court-approved mediator for family court. She is also a writing award recipient from the National College Showcase and placed in the 1991 National Appellate Advocacy Competition.

## ASSOCIATIONS:
**West Virginia Association for Justice**

## Temitope O. Leyimu

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of Virginia School of Law, 2013
B.A. *with honors,* University of Central Florida, 2009
Tope Leyimu focuses her practice on people and families whose lives have been affected by catastrophic injuries or death as a result of corporate wrongdoing, occupational hazards and environmental negligence. She is actively involved in the firm's asbestos litigation involving victims of mesothelioma and other asbestos-related diseases.

While a law student at the University of Virginia School of Law, Tope interned with the Legal Aid Justice Center of Charlottesville, Va., and participated in the family mediation clinic mediating disputes between parties. Tope worked as a law clerk at a firm in the Jacksonville, Fla., area, where she gained experience drafting legal memoranda, complaints and pre-trial motions on evidentiary issues. She also helped prepare for mediations involving probate and products liability issues stemming from wrongful death cases.

Tope served as a Lile Moot Court Competitor at the University of Virginia School of Law, and also served on the board of the *Virginia Sports and Entertainment Law Journal,* as the President of Phi Alpha Delta, the Vice President of Communications of ABLE (Action for a Better Living Environment), and on the Policy Council for the Black Law Student Association.

Active in her community, Tope serves on the Board of Directors for HALOS, an organization which provides support and advocacy to abused and neglected children and kinship caregivers. Previously, she volunteered with the Virginia Innocence Project Student Group, a student legal research group that assists with the investigation and screening of cases involving prisoners convicted of serious crimes where cognizable claims of actual innocence exist.

## ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**
**South Carolina Association for Justice**
**South Carolina Bar Association**

## Joshua Littlejohn

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Third Circuit; U.S. District Court for the District of Colorado, District of South Carolina
EDUCATION:
J.D., Charleston School of Law, 2007
B.A., University of North Carolina at Asheville, 1999
With a broad base of experience in complex litigation—including securities fraud, breach of fiduciary duty, mass tort and catastrophic injury matters—Josh Littlejohn plays a leading role in many of Motley Rice's most complex securities cases, particularly those involving healthcare.

Josh represents public pension funds, unions and institutional investors in both federal and state courts. He also represents individuals with catastrophic injuries, victims of medical malpractice and corporate whistleblowers. Josh works directly with clients and has been involved in all aspects of the litigation process, including initial case evaluation, discovery, resolution and trial.

Among other complex matters, Josh has litigated securities fraud actions against St. Jude Medical, Inc.; Pharmacia Corporation and NPS Pharmaceuticals. Early in his career at Motley Rice, Josh worked on discovery in product liability cases against Merck & Co., Inc., related to the drug Vioxx.

More recently, Josh has helped Motley Rice expand its shareholder derivative practice, litigating cases against boards of directors of publicly traded companies including Lululemon, Inc.; Omnicare, Inc.; Chemed Corporation; Walgreen Co.; Cintas Corporation; The South Financial Group, Inc.; among others. Josh has experience handling several types of shareholder cases, including corporate takeover cases litigated through and beyond the preliminary injunction phase and books & records cases litigated through trial.

## AWARDS AND ACCOLADES:
*South Carolina Super Lawyers® Rising Stars* list
**2013–2016** Securities litigation; Class action/mass torts; General litigation

## ASSOCIATIONS:
**American Bar Association**
**South Carolina Association for Justice**

## Miles Loadholt
## Of Counsel

LICENSED IN: SC
EDUCATION:
J.D., *cum laude*, University of South Carolina School of Law, 1968
B.S., University of South Carolina, 1965

Miles Loadholt has practiced law for over four decades in the areas of occupational disease, worker safety and business litigation. He has worked with Motley Rice attorneys on occupational injury and asbestos litigation since the early 1970s, representing victims of asbestos, radiation and beryllium exposure. He has also represented workers suffering from hearing loss caused by exposure to loud machinery on the job and managed hundreds of workers' compensation cases. Additionally, Miles has practiced business litigation including contract disputes and business torts.

A longtime advocate of higher education, Miles was elected chairman of the University of South Carolina Board of Trustees in January 2009. With more than 12 years of service on the Board, Miles is planning for the institution's future capital campaign and building endowments. His involvement with the University of South Carolina and higher education programs includes his appointment to the South Carolina Commission on Higher Education by Governor Jim Hodges, serving as a member of the Western Carolina Higher Education Commission and more than 20 years on the Executive Committee of the Gamecock Club.

For his contributions to education in South Carolina, Miles received the Order of the Palmetto in 2002, the highest civilian honor in the state. His portrait can be found in the law library of the University of South Carolina's School of Law as recognition for his generosity and service.

Miles earned a Bachelor of Science and Juris Doctor from the University of South Carolina. As a law student, he was on the editorial board of the *South Carolina Law Review* and was a member of Phi Delta Phi and the Society of Wig and Robe.

Miles is recognized as an AV® rated attorney by Martindale-Hubbell®.

### ASSOCIATIONS:

**American Association for Justice**
**American Bar Association**
**Barnwell County Bar Association**
**South Carolina Association for Justice**

## P. Graham Maiden

LICENSED IN: SC
EDUCATION:
J.D., Charleston School of Law, 2011
B.S., College of Charleston, 2007

Graham Maiden represents victims and family members who have suffered due to negligence, dangerous products, and corporate misconduct in domestic and international cases ranging from product liability and vehicle defects to anti-terrorism and occupational disease.

Graham is part of the litigation and trial team representing individual smokers and families of deceased smokers against tobacco manufacturers in the Engle-progeny litigation pending in Florida. In addition, he represents workers and families suffering from mesothelioma and other asbestos-related diseases as a result of occupational, environmental or household exposure to asbestos. Graham has also assisted the team consulting with South African human rights lawyer Richard Spoor in his efforts to seek justice for exploited gold mine workers suffering from silicosis.

In addition to working on several catastrophic personal injury cases involving premises liability and negligence, Graham has contributed to cases filed on behalf of clients injured by Takata airbags.

Graham previously supported the firm's work in *Linde v. Arab Bank*, a landmark case filed by victims of terrorist bombings in Israel against Arab Bank for its alleged role in financing Hamas and other Israeli terrorist organizations. In the first case that brought a financial institution to trial under the Anti-Terrorism Act, a Brooklyn, N.Y. jury found Arab Bank liable for financing terrorism through Hamas in 2014.

Graham joined Motley Rice as an associate after first serving as a summer law clerk for the firm, during which time he supported litigation on behalf of people and businesses seeking to hold BP and other corporate defendants accountable for the BP oil spill.

While in law school, Graham held an internship with the Beverly Hills Sports Council, a California-based Major League Baseball player agency, where he handled research and writing projects, as well as salary arbitration preparation. Graham also brings valuable business experience to Motley Rice, having previously worked for a large real estate and development company assisting with the development and management of hotels and restaurants across the country.

A former collegiate athlete at the College of Charleston, Graham played Division I baseball and proudly represented his school as a member of the All-Southern Conference Team in 2007.

### ASSOCIATIONS:

**American Association for Justice**
**South Carolina Association for Justice**
**South Carolina Bar Association**
**Charleston Bar Association**

   Prior results do not guarantee a similar outcome.



## Michaela Shea McInnis

LICENSED IN: MA, NY, RI
EDUCATION:
L.L.M., Boston University School of Law, 1985
J.D., Suffolk University Law School, 1980
B.A., Providence College, 1977

Michaela McInnis represents individuals, states, cities and other municipalities in environmental litigation involving harmful exposure to lead paint or other sources of environmental contamination.

She was a member of the trial team in the State of Rhode Island's landmark lead paint suit against the lead pigment industry, conducting discovery and overseeing the case management order. Her role with the Environmental practice group also includes toxic tort work, including cases of personal injury, property damage or economic loss as a result of water or land contamination. Michaela also represented more than 100 residents of Tiverton, Rhode Island, against a major utility company for environmental contamination of residential property.

Michaela began her legal career as an attorney with the appellate staff of the Rhode Island Supreme Court, later transitioning to a diverse tax practice in New York. Her legal work extended outside of the office as a volunteer to the IRS Volunteer Income Tax Assistance and Tax Counseling for the Elderly programs in Rhode Island. Additionally, Michaela volunteered for several years with the Ethics Committee of the Visiting Nurse Association of Newport County, where she offered case reviews and guidance to the staff of the VNA regarding ethical issues.

A former adjunct professor at the University of Rhode Island, Michaela has taught both undergraduate and graduate level courses on the American legal system and constitutional law. She is a former law clerk for the Honorable Joseph R. Weisberger of the Rhode Island Supreme Court.

## Kate E. Menard

LICENSED IN: MA, NY, RI
EDUCATION:
J.D. magna cum laude, Roger Williams University School of Law, 2011
B.A. magna cum laude, Quinnipiac University, 2008

Katie Menard is committed to helping people harmed by allegedly defective medical devices, including women suffering from painful and serious injuries caused transvaginal mesh and pelvic mesh devices.

Katie initially joined Motley Rice as a law clerk in 2013, providing support to the medical device litigation team, including preparing motions, evaluating client records, and preparing for trials and settlements.

As a law student at Roger Williams University School of Law, Katie was a research assistant to Professor Kathleen Miller, a judicial extern for the Honorable Chief Justice Paul A. Suttell and an intern in the Special Prosecutions Division of the Westchester County District Attorney's Office in New York. After graduation, she worked

for the Rhode Island Supreme Court Law Clerk Department, where she served as the sole law clerk to the Honorable Stephen P. Nugent of the Rhode Island Superior Court. She was also a research assistant to Chief Justice Frank J. Williams (Ret.).

A magna cum laude graduate and scholarship recipient, Katie was recognized with the CALI Excellence award as the highest scoring student in Legal Methods I, Advanced Criminal Procedure and Private International Law. Additionally, she served as a member of the Roger Williams University Law Review and published two papers, "The Impact of Pretrial Publicity on an Indigent Capital Defendant's Due Process Right to a Jury Consultant" and a survey of Rhode Island Law concerning City of East Providence v. Int'l Ass'n of Firefighters Local.

## ASSOCIATIONS:
**Rhode Island Bar Association**

## Meredith B. Miller

LICENSED IN: SC, TX
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Northern, Southern, Eastern and Western Districts of Texas
EDUCATION:
J.D., University of Texas School of Law, 2011
B.A., with distinction, University of North Carolina, Chapel Hill, 2008

Meredith Miller represents public pension funds, unions and other institutional investors in both federal and state courts. She also represents victims of medical malpractice. Meredith works directly with clients and is typically involved in the initial case evaluation, discovery, and various motion practice.

Meredith is a member of the team representing investors in securities fraud class actions filed against Advanced Micro Devices, Barrick Gold and SAC Capital. She is also part of the team bringing claims for breach of fiduciary duty against current and former directors of Lululemon for failing to investigate potential insider trades allegedly made by the company's founder and former chairman.

Prior to joining Motley Rice, Meredith gained trial and settlement experience as an associate at a Dallas, Texas, law firm working in business and construction litigation. While attending the University of Texas School of Law, she clerked for an Austin firm, represented victims in court as a student attorney in the UT Law Domestic Violence Clinic and was a Staff Editor of the Review of Litigation journal. During her undergraduate and law school career, Meredith studied abroad in Paris, France, Geneva, Switzerland and Puebla, Mexico.

## ASSOCIATIONS:
**Charleston County Bar Association**

## Christopher F. Moriarty

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of Colorado, Northern District of Illinois, District of South Carolina
EDUCATION:
J.D., Duke University School of Law, 2011
M.A., Trinity College, University of Cambridge, 2007
B.A., Trinity College, University of Cambridge, 2003
Christopher was a member of the litigation teams representing investors as lead counsel in securities fraud litigation involving *Hill v. State Street Corporation* ($60 million recovery*); *In re Hewlett-Packard Co. Securities Litigation* ($57 million recovery*); and *Ross v. Career Education Corp.* ($27.5 million recovery*). In addition, Christopher represented institutional investors in shareholder derivative litigation in *In re Walgreen Co. Derivative Litigation*, which secured corporate governance reforms to ensure compliance with the Controlled Substances Act*.

Christopher is currently a member of the teams representing investors in the following cases: *Första AP-Fonden and Danske Invest Management A/S v. St. Jude Medical, Inc.; In re Medtronic, Inc. Securities Litigation; City of Brockton Retirement System v. Avon Products, Inc.; In re Barrick Gold Securities Litigation;* and *In re Conn's, Inc. Securities Litigation.*

While in law school, Christopher was a member of the Moot Court Board, served as an Executive Editor of the *Duke Journal of Constitutional Law and Public Policy*, and taught a course on constitutional law to LL.M. students. Christopher has also drafted *amicus curiae* briefs in numerous constitutional law cases before the U.S. Supreme Court, which has cited his work.

Christopher was called to the Bar in England and Wales by the Honourable Society of the Middle Temple.

### AWARDS AND ACCOLADES:
***South Carolina Super Lawyers® Rising Stars*** list
**2016** Securities litigation

### ASSOCIATIONS:
**American Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**
**South Carolina Association for Justice**

## William S. Norton

LICENSED IN: MA, NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the First and Second Circuits; U.S. District Court for the District of Colorado, Northern District of Illinois, Eastern and Southern Districts of New York, and District of South Carolina
EDUCATION:
J.D., Boston University School of Law, 2004
B.A./B.S. *magna cum laude*, University of South Carolina, 2001
Bill Norton litigates securities fraud, corporate governance, and other complex class-action and commercial litigation. Bill has represented public retirement systems, union pension funds, investment companies, banks, and other institutional and individual investors before federal, state, and appellate courts throughout the country. He also has experience representing whistleblowers who report violations of the law to the U.S. Securities and Exchange Commission under the Dodd-Frank Whistleblower Program.

### FEDERAL SECURITIES FRAUD LITIGATION
Bill is a member of the litigation teams representing institutional investors as lead counsel in litigation involving Advanced Micro Devices, Inc.; International Business Machines Corporation; Investment Technology Group, Inc.; and GNC Holdings, Inc. He also played a key role in the following cases:

- *Bennett v. Sprint Nextel Corp.* ($131 million recovery*)
- *City of Brockton Retirement System v. Avon Products, Inc.* ($62 million recovery*)
- *Hill v. State Street Corporation* ($60 million recovery*)
- *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.* ($60 million recovery*)
- *In re Hewlett-Packard Company Securities Litigation* ($57 million recovery*)
- *Ross v. Career Education Corporation* ($27.5 million recovery*)

### SHAREHOLDER DERIVATIVE LITIGATION
Bill is a member of the teams representing institutional investors in shareholder derivative litigation on behalf of Chemed Corporation. He was also a member of the teams that litigated the following cases:

- *Manville Personal Injury Settlement Trust v. Gemunder* ($16.7 million payment to the company and significant corporate governance reforms*)
- *In re Walgreen Co. Derivative Litigation* (corporate governance reforms ensuring compliance with Controlled Substances Act*)

### MERGER AND ACQUISITION LITIGATION
Bill has represented institutional shareholders in litigation concerning corporate mergers and acquisitions, including the following cases:

- *In re Allion Healthcare, Inc. Shareholders Litigation* ($4 million payment to shareholders*)



- *In re RehabCare Group, Inc., Shareholders Litigation* ($2.5 million payment, modification of merger agreement, and additional disclosures to shareholders*)
- *In re Atheros Communications Shareholder Litigation* (preliminary injunction delaying shareholder vote and requiring additional disclosures to shareholders in $3.1 billion merger*)
- *Maric Capital Master Fund, Ltd. v. PLATO Learning, Inc.* (preliminary injunction requiring additional disclosures to shareholders in $143 million private-equity buyout*)
- *In re The Shaw Group Shareholders Litigation* (class-wide, opt-in appraisal right and additional disclosures to shareholders in $3 billion merger*)

## OTHER SECURITIES, CONSUMER FRAUD, AND COMMERCIAL LITIGATION

Bill has also represented clients in a wide variety of securities, consumer fraud, and commercial litigation, including the following cases:

- Class action on behalf of municipal-bond investors in an alleged 38-state Ponzi scheme
- Class action against DirecTV regarding early cancellation fees
- Class action on behalf of satellite retailers against EchoStar Corporation, resulting in settlement valued at approximately $83 million*
- Litigation on behalf of a German bank concerning investments in mortgage-backed collateralized debt obligations
- Federal and state lawsuits regarding variable life insurance investments funneled to the Madoff Ponzi scheme
- Litigation on behalf of real-estate investors regarding luxury real-estate development

Prior to joining Motley Rice, Bill practiced securities and commercial litigation in the New York office of an international law firm. While attending law school, Bill served as an Editor of the *Boston University Law Review* and was a G. Joseph Tauro Distinguished Scholar. He served as a law clerk in the United States Attorney's Office for the District of Massachusetts, represented asylum seekers at Greater Boston Legal Services, and studied law at the University of Oxford. Prior to law school, Bill worked for the United States Attorney's Office for the District of South Carolina and with the Neighborhood Legal Assistance Program of Charleston through a grant program. Bill graduated Phi Beta Kappa from the University of South Carolina Honors College. Bill is recognized as an AV®-rated attorney by Martindale-Hubbell®.

## AWARDS AND ACCOLADES:
**South Carolina Super Lawyers® Rising Stars** list
**2013–2016**  Securities litigation; class action/mass torts; general litigation

## ASSOCIATIONS:
**Federal Bar Association**
**American Bar Association**
**American Association for Justice**
**New York State Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**

## Meghan S. B. Oliver

LICENSED IN: DC, SC, VA
EDUCATION:
J.D., University of Virginia School of Law, 2004
B.A. *with distinction,* University of Virginia, 2000

Meghan Oliver's practice includes work on securities fraud cases, antitrust litigation, general commercial litigation, and consumer fraud litigation. She is actively involved in *In the Matter of Bayer Corp.,* Case No. 07-CI-00148, pending in Franklin Circuit Court in Kentucky. Meghan's securities fraud work includes cases involving Medtronic, Inc., Hospira, Inc., and several others.  Her antitrust experience at Motley Rice has focused on generic drug cases.

Prior to joining Motley Rice, Meghan worked as a business litigation and antitrust associate in Washington, D.C. There, she assisted in the trial of a multidistrict litigation antitrust case and assisted in multiple corporate internal investigations.  She is a member of Phi Beta Kappa.

## ASSOCIATIONS:
**American Bar Association**

## John David O'Neill

LICENSED IN: SC
EDUCATION:
J.D., University of South Carolina School of Law, 2013
B.S., Clemson University, 2008

John David O'Neill practices multidistrict litigation on behalf of clients affected by toxic exposure, defective medical devices, and vehicle defects and recalls. He also assists with *qui tam* whistleblower litigation. With a background in engineering, John brings a technical approach to case review and analysis.

John has consulted as an engineer on projects involving manufacturing, transportation, institutional, municipal and residential construction. Prior to attending law school, he was a lead manufacturing engineer with an international aerospace corporation where he was responsible for planning repairs for damaged parts and other components that did not meet specifications.

John was also a member of the engineering team that performed quality inspections of structural installations on behalf of the S.C. DOT on the Arthur Ravenel Jr. Bridge in Charleston, S.C., one of the longest cable-stayed bridges in North America. John was formerly a South Carolina property attorney, having worked on construction defect claims, negotiated commercial property deals in Charleston, and provided representation in Circuit Court and Municipal Court on criminal and civil matters.

## ASSOCIATIONS:
**South Carolina Bar Association**
**American Society of Civil Engineers**

### Jonathan D. Orent

LICENSED IN: MA, RI, WI
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of Massachusetts
EDUCATION:
J.D., Washington University School of Law, 2004
B.A., University of Rochester, 2001

Jonathan Orent litigates for people alleging harm by defective medical devices and pharmaceutical drugs, including all aspects of discovery and expert development. He represents women suffering from painful side effects associated with pelvic mesh/sling products in hundreds of filed cases against multiple corporations.

Jonathan serves as co-liaison counsel in the *In re Bard Litigation* in New Jersey state court and as state court liaison counsel in Massachusetts.

Jonathan also represents communities and people facing personal injury, property damage and economic loss as a result of negligence, environmental hazards or groundwater and soil contamination. He represents clients in Pennsylvania's Apollo-Parks area who allege they suffered severe illnesses after being exposed to dangerous levels of toxic or radioactive materials released into the air, water and soil by local nuclear facilities. In 2008, he litigated against a large New England utility company on behalf of more than 100 Tiverton, R.I., residents who claimed they suffered damages resulting from environmental contamination of their residential property. More recently, Jonathan played a role in the settlement of contamination litigation between members of the Tallevast, Fla., community and a major aerospace defense contractor involving property damage and emotional distress claims resulting from the alleged release of trichloroethylene (TCE), perchloroethylene (PCE) and other chemicals into the groundwater.

Jonathan has worked on complex litigation against the lead paint industry on behalf of government entities in California, New York, Rhode Island and Wisconsin, as well as lead poisoning cases for individual children and families against property owners. He also assists with discovery and trial preparation of the firm's asbestos cases.

Prior to joining Motley Rice in 2005, Jonathan served as a law clerk with the Missouri State Public Defender Youth Advocacy Unit and a legal intern for Senator Richard Durbin of Illinois. A frequent speaker, he has made numerous presentations on a variety of legal matters involving environmental law. He serves on the Rhode Island Advisory Committee to the U.S. Commission on Civil Rights, a group whose mission is to address key community issues and discrimination matters, such as foreclosure scams and the disparate treatment of minority youth, through research and initiatives. Jonathan is also a member of the board of the Rhode Island Toxic Action Center.

AWARDS AND ACCOLADES:
**Rhode Island Super Lawyers® Rising Stars** list
**2014–2016** Business litigation; Class action/mass torts; Appellate

ASSOCIATIONS:
**American Association for Justice**
**American Bar Association**

### Michael J. Pendell

LICENSED IN: CT, NY
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of Connecticut, Southern and Eastern Districts of New York
EDUCATION:
J.D., *summa cum laude*, Albany Law School, 2007
B.A., *cum laude*, Emerson College, 2000

Michael Pendell focuses his practice on representing workers and their families, as well as pension fund trustees and other institutional investors in securities, consumer fraud and complex class action.

Michael, along with other Motley Rice attorneys, represented a union pension fund as co-lead counsel in a securities fraud class action to recoup losses against a telecom provider that allegedly provided false information regarding its financial results, causing artificially inflated stock prices that subsequently plummeted when the truth was made known. The settlement is pending court approval.

Michael also has experience representing institutional and individual investors in claims involving common law fraud pursuant to state securities laws. Michael recently played a central role on the litigation team that obtained a seven-figure arbitration award in a case involving secondary liability for an investment advisor's conduct under the Uniform Securities Act. Michael also has experience in complex commercial cases regarding claims of fraud, breach of contract, and tortuous interference. He represents plaintiffs in a wide array of personal injury actions, and serves as trial counsel representing individual smokers and families of deceased smokers against tobacco manufacturers in the Engle-progeny litigation pending in Florida.

Michael joined Motley Rice after serving as an associate with a Connecticut-based law firm, where he first gained experience in both federal and state courts in such areas as commercial and construction litigation, media and administrative law, personal injury defense and labor and employment matters. Michael previously taught business law to BA and MBA candidates as an adjunct professor at Albertus Magnus College.

Michael served as a legal intern for the Honorable Randolph F. Treece of the U.S. District Court for the Northern District of New York and as a law clerk for the Major Felony Unit of the Albany County District Attorney's Office. He served as the executive editor for the New York State Bar Association Government Law & Policy Journal and senior editor for the *Albany Law Review*,



which published his 2008 article entitled, "How Far is Too Far? The Spending Clause, the Tenth Amendment, and the Education State's Battle Against Unfunded Mandates."

## AWARDS AND ACCOLADES:
*Connecticut Super Lawyers® Rising Stars* list
**2013–2016** Securities litigation; Business litigation; Personal injury – products: plaintiff

## ASSOCIATIONS:
**American Association for Justice**
**Connecticut Bar Association**
**New York State Bar Association**

* Prior results do not guarantee a similar outcome. For full *Super Lawyers* selection methodology visit: www.superlawyers.com/about/selection_process.html
For 2013–14 CT data visit: www.superlawyers.com/connecticut/selection_details.html

## Laura W. Ray
LICENSED IN: CT
EDUCATION:
J.D. with High Honors, University of Connecticut School of Law, 1989
B.S.B.A. magna cum laude, Boston University, 1983
Laura Ray handles complex securities litigation for victims of corporate wrongdoing, including institutional investors and union pension funds.

Laura is a member of the team leading a proposed class action alleging that Investment Technology Group (ITG) defrauded shareholders by concealing the actions that led to a regulatory sanction fine levied against it by the SEC. The fine announcement, made in August 2015, allegedly resulted in stockholders suffering a loss of more than 23 percent in share value. The $20.3 million sanction is considered the largest fine levied by the SEC against a private securities trading forum, otherwise known as a dark pool.

Prior to joining Motley Rice, Laura worked in commercial litigation, handling trial and appellate litigation, arbitration and mediation. Laura served as law clerk to Justice Robert J. Callahan of the Connecticut Supreme Court. Laura began her career as a certified public accountant.

## Caroline Rion
LICENSED IN: SC
EDUCATION:
J.D., Charleston School of Law, 2013
B.A., University of South Carolina, 2007
Caroline Rion practices in the areas of products liability and occupational disease with a focus on asbestos-related diseases, helping clients tell their stories and seek the justice they deserve. She represents victims of mesothelioma in individual and consolidated cases and is responsible for pre-trial preparation, including responses to defendants' motions.

Before joining Motley Rice, Caroline gained experience in case management strategy as a law clerk with the Southern Environmental Law Center, working on issues involving complex federal and state environmental statutes and regulations. Caroline also worked as a law clerk at a Charleston, S.C.-based law firm where she assisted with client interviews, hearings and mediations.

Caroline's political experience includes internships with Senator Lindsey Graham's Columbia, S.C., office and the Conservation Voters of South Carolina. She also worked with the District of Columbia Bar Association's Attorney/Client Relations Program in Washington, D.C., assisting in the resolution of fee disputes through arbitration, committee meetings and case summaries.

Along with receiving the top score in appellate oral advocacy in products liability litigation at the Charleston School of Law, Caroline was recognized by the school for providing more than 100 hours of *pro bono* work. Additionally, she served as Treasurer to the Women in Law and as a member of the marketing committee for the Federal Court's *Law Review*.

Caroline is active in the Charleston community and volunteers as a mentor in the BRIDGE Program, an initiative to provide substance abuse rehabilitation services to people involved in the federal criminal justice system. BRIDGE is a joint effort between the U.S. Probation Office, Federal Public Defender's Office, U.S. Attorney's Office, and South Carolina's U.S. District Court.

## ASSOCIATIONS:
**American Bar Association**
**South Carolina Association for Justice**
**South Carolina Bar Environmental Law Section**
**South Carolina Women Lawyers Association**
**Charleston County Bar Association**

## Ann K. Ritter
## Senior Counsel and Securities Case Coordination Manager
LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Third and Eleventh Circuits
EDUCATION:
J.D., University of Tennessee, 1982
B.S., Florida State University, 1980
As Senior Counsel for Motley Rice, Ann Ritter plays a key role on Motley Rice's securities team, which represents domestic and foreign institutional investors in complex cases involving shareholder rights, corporate governance, securities and consumer fraud. She possesses more than 25 years of experience in complex litigation involving matters as varied as securities, products liability and consumer protection.

Ann serves as a frequent speaker on legal topics such as worker safety, shareholder rights and corporate governance. In 2007, she addressed leading German institutional investors as a keynote speaker on the impact of U.S. class actions at the Deutsche

Schutzvereinigung für Wertpapierbesitz e. V. Practical Workshop for institutional investors in Frankfurt, Germany.

After earning a Bachelor of Science degree from Florida State University, Ann pursued a law degree from the University of Tennessee. She is the co-author of Asbestos in Schools, published by the National School Boards Association. Ann previously served on the Advisory Committee for the Tobacco Deposition and Trial Testimony Archives (DATTA) Project and currently serves on the Executive Committee of the Board of the South Carolina Special Olympics, the Advisory Board of the Medical University of South Carolina Hollings Cancer Center and the Advisory Board of The University of Mississippi School of Law. She is recognized as a BV® rated attorney by Martindale-Hubbell®.

### ASSOCIATIONS:
**South Carolina Association for Justice**

### Michael G. Rousseau
LICENSED IN: CA, MA, RI, WI
EDUCATION:
J.D., Pepperdine University, 1999
B.S., Bentley College, 1996

Michael Rousseau handles discovery and expert testimony and analyzes data for settlement negotiations for the pelvic mesh litigation team. He also represents victims of mesothelioma and works on the Composix® Kugel® Mesh legal team on discovery matters, document analysis and settlement.

He has also litigated environmental lead poisoning cases against paint manufacturing corporations and landlord defendants. Michael gathered evidence and participated in *State of Rhode Island v. Lead Industries Association, et. al.*, and more recently played a key role in trial preparation, discovery and document analysis in *The People of California v. Atlantic Richfield Company et al*. In 2005, he served on the legal team that successfully advocated for an extension of the risk contribution theory of liability in Wisconsin, enabling lead-poisoned children and families to seek compensation from former manufacturers of lead paint. Prior to joining Motley Rice in 2003, Michael represented consumers in insurance bad faith class actions and handled wills, trusts and estates and elder law matters.*

As a law student, Michael provided volunteer representation to autistic children to help them obtain special education services and physical therapy pursuant to the Individuals with Disabilities Education Act (IDEA).

### ASSOCIATIONS:
**American Bar Association**

### Lisa M. Saltzburg
LICENSED IN: SC, CO
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Fourth, Fifth and Eleventh Circuits
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., Stanford Law School, 2006
B.A. *with high distinction*, University of California, Berkeley, 2003

Lisa Saltzburg represents individuals and institutional clients in complex securities and consumer fraud actions, merger and acquisition cases, shareholder derivative suits and a variety of other consumer and commercial matters. Lisa also works closely with the BP Oil Spill litigation team, helping people and businesses in Gulf Coast communities file claims through the new claims programs established by the two settlements reached with BP.

Prior to joining Motley Rice, Lisa was an associate attorney for a nonprofit advocacy organization, where she worked through law and policy to protect the environmental interests of the Southeast. She drafted briefs and other filings in South Carolina's federal and state courts and worked with administrative agencies to prepare for hearings and mediation sessions. Lisa also served for two years as a judicial clerk for the Honorable Karen J. Williams of the U.S. Court of Appeals for the Fourth Circuit, where she developed valuable legal research and writing skills and gained experience involving a wide range of issues arising in civil and criminal cases.

Lisa held multiple positions in environmental organizations during law school, handling a broad array of constitutional, jurisdictional and environmental issues. She also served as an editor of the *Stanford Law Review* and as an executive editor of the *Stanford Environmental Law Journal*. A member of numerous organizations and societies, including the Stanford Environmental Law Society, Lisa attended the National Institute for Trial Advocacy's week-long Trial Advocacy College at the University of Virginia.

### AWARDS AND ACCOLADES:
***South Carolina Super Lawyers® Rising Stars*** list
**2016** Securities litigation, Class action/mass torts, Personal injury–products: plaintiff

### Hayleigh T. Stewart Santra
LICENSED IN: SC
EDUCATION:
J.D., University of North Carolina School of Law, 2012
B.A. *with honors*, University of North Carolina at Chapel Hill, 2008

Hayleigh Stewart Santra represents victims harmed by dangerous prescription drugs and defective medical devices, working to hold accountable those responsible for corporate wrongdoing and inadequate product warning, research and testing. Hayleigh represents people allegedly harmed by transvaginal mesh, Crestor®, and Essure®. She was part of the



trial team for *Barba v. Boston Scientific Corp.*, a transvaginal mesh case that resulted in a $10M award in 2015.* Previously, she has been involved in litigation involving other potentially harmful medical drugs and devices such as Actos®, dialysis products GranuFlo® powder and NaturaLyte® Liquid, Nuvaring® and Topamax®.

Prior to joining Motley Rice, Hayleigh served as a summer law clerk for Pisgah Legal Services, a nonprofit organization based in Asheville, N.C., that offers legal assistance to disadvantaged citizens of Western North Carolina. She gained experience working with attorneys to provide legal aid to low-income victims of domestic violence, as well as homeowners facing foreclosure. During this time, Hayleigh also contributed to an appellate brief on terminating parental rights.

Hayleigh's background and interests are diverse and include the field of education. She taught English in Madrid, Spain, for nearly a year following her undergraduate studies, teaching writing, reading, speaking and listening skills to both adults and children. While living in Spain, she complemented her teaching work writing as a columnist for *European Vibe Magazine*, a monthly lifestyle magazine for the English-speaking community of Madrid.

Hayleigh held multiple positions while at the University of North Carolina School of Law in Chapel Hill, including serving as a Research, Reasoning, Writing, Advocacy Teacher's Assistant, the Treasurer of the Immigration Law Association and the co-President of the American Constitution Society. She was also a member of the *First Amendment Law Review* and North Carolina Student Bar Association. A member of Phi Beta Kappa who graduated in the top third of her class, she additionally competed as a Kilpatrick Stockton 1L Trial Competition Defense Attorney and helped domestic violence victims through her work with the Domestic Violence Clinic.

Hayleigh has volunteered with both the North Carolina Driver's License Restoration Project and the Lambda Law Students Health Care Power of Attorney Clinic in Chapel Hill, N.C. She currently donates her time to the Charleston, SC chapter of Big Brothers Big Sisters.

## AWARDS AND ACCOLADES:

***South Carolina Super Lawyers® Rising Stars* list**
**2015–2016** Personal injury – products: plaintiff

## ASSOCIATIONS:

**American Association for Justice**
**American Bar Association**
**South Carolina Association for Justice**
**South Carolina Bar Association,** Young Lawyers Division Voices Against Violence Committee; iCivics Committee

## *Elizabeth Smith*

LICENSED IN: DC, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the District of Columbia Circuit
U.S. District Court for the District of South Carolina
EDUCATION:
J.D. cum laude, University of South Carolina School of Law, 2000
B.A., Furman University, 1995
Elizabeth represents clients injured by corporate wrongdoing, with an emphasis on anti-terrorism and human rights litigation. Her current practice includes aviation liability cases on behalf of victims and families of the September 11, 2001, airline disasters, as well as the 9/11 Families United to Bankrupt Terrorism multidistrict litigation aiming to bankrupt financiers of al Qaeda and other terrorist groups.

Elizabeth's role in the 9/11-related litigation led to her representing numerous families at hearings before the September 11th Victim Compensation Fund with Special Master Kenneth Feinberg. She has also litigated personal injury and consumer protection cases, including vehicle defect cases, asbestos litigation and lead paint poisoning lawsuits, and has managed client relations, research and discovery, and trial preparation for various litigation teams.

As an undergraduate student, Elizabeth completed a Middle East and Africa Foreign Study Program, and traveled from Kenya to Israel. While in law school, she served on the editorial board of the *ABA Real Property, Probate & Trust Journal*. After graduation, Elizabeth was a law clerk for the Honorable Diane S. Goodstein, Circuit Court Judge of the First Judicial Circuit for South Carolina.  She is recognized as a BV® rated attorney by Martindale-Hubbell®.

## ASSOCIATIONS:

**American Association for Justice**
**Federal Bar Association**
**South Carolina Association for Justice**

## *W. Christopher Swett*

LICENSED IN: DC, MN, SC, WV
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Fourth Circuit; U.S. District Court for the Northern District of Ohio, District of South Carolina, Southern District of West Virginia, and the Western District of Wisconsin
EDUCATION:
J.D. *cum laude,* University of South Carolina School of Law, 2009
B.A., B.S. *summa cum laude,* The Citadel, 2006
Chris Swett focuses his efforts on assisting workers and families suffering from mesothelioma and other asbestos-related diseases due to occupational, environmental or household asbestos exposure. On behalf of asbestos victims, he handles litigation against manufacturers, property owners and contractors who sold or installed defective asbestos-containing products.

Chris also represents victims and families in cases involving significant injuries caused by hazardous consumer products, fires, premises injuries and other incidents of negligence and misconduct.  In the area of consumer protection, Chris has represented clients alleging violations of the Unfair Trade Practices Act and the Fair Debt Collection Practices Act.  Chris currently represents former and retired NFL players in the National Football League Players' Concussion Injury Litigation.

Prior to joining Motley Rice, Chris served as a law clerk to the Honorable R. Bryan Harwell of the U.S. District Court for the District of South Carolina. In this capacity, he conducted complex research and prepared proposed orders involving numerous areas of the law, assisted with various phases of both civil and criminal trials and researched opinions for the U.S. Court of Appeals for the Fourth Circuit.

A recipient of the Citadel Scholar full academic scholarship and the Citadel Honors Program Gold Seal, Chris was honored with the University of South Carolina School of Law's Cali Award for environmental law.  Additionally, he served as Senior Associate Editor for the *Southeastern Environmental Law Journal* and is the author of published pieces concerning environmental law such as *Politics, Money, and Radioactive Waste: The Savannah River Site Conundrum*, 16.2 Se. Envtl. L.J. 391 (2008).

Growing up in rural South Carolina with blue-collar parents, Chris quickly learned the value of hard work and giving back to the community. He volunteers as a Special Prosecutor for the South Carolina Attorney General's Office and assists with the prosecution of first offense domestic violence cases. Chris also proudly serves as class chairman for The Citadel Foundation, helping to raise money for need-based scholarship funding and is a former member of the Charleston County Library Board of Trustees. Chris is recognized as an AV®-rated attorney by Martindale-Hubbell®.

## AWARDS AND ACCOLADES:

**The National Trial Lawyers**
**2013–present** Top 100 Trial Lawyers™ – South Carolina

***West Virginia Super Lawyers® Rising Stars*** list
**2015–2016** Personal injury – products: plaintiff; Personal injury – general: plaintiff; Class action/mass torts

## ASSOCIATIONS:

**American Association for Justice**
**South Carolina Association for Justice**
**West Virginia Association for Justice**
**American Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**
**Order of the Coif**
**Order of the Wig and Robe**

## *William P. Tinkler*

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Fourth Circuit; U.S. District Court for the District of South Carolina
EDUCATION:
J.D. *cum laude*, University of South Carolina School of Law, 2010
B.A., Emory University, 2005
William Tinkler works with public pension funds, unions and other institutional investors to help secure governance reforms and achieve recoveries through strategic and targeted litigation. He handles a wide range of complex cases, including securities and consumer fraud litigation and shareholder derivative suits.

Before joining Motley Rice, William clerked with the Honorable R. Bryan Harwell of the U.S. District Court for the District of South Carolina and served as a staff attorney for the South Carolina Court of Appeals. His work with trial and appellate judges on a diverse array of legal issues gave him valuable experience in numerous areas of the law, as well as in legal research and writing. Additionally, he worked with several South Carolina law firms and the Charleston County Public Defender's office before his admission to the Bar.

While in law school, William served as the Peer Review Editor for the *South Carolina Law Review*. During this time, he developed the Peer Reviewed Scholarship Marketplace, a consortium of legal journals committed to incorporating peer review in their article selection process. William was honored with the CALI award for Federal Practice. In 2010, he was selected as a "Next Generation Leader" by the American Constitution Society and served as President of his law school's chapter. He was also a member of the Order of the Wig and Robe.

Active in his community, William, an Eagle Scout, has served as a Unit Commissioner with the Boy Scouts of America and participated in the Big Brothers, Big Sisters mentoring program.

## *Kathryn A. Waites*

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 2009
B.A. cum laude, Washington and Lee University, 2006
Katie Waites represents victims and families harmed by hazardous consumer products, occupational and industrial accidents, premises injuries and other incidents involving negligence in products liability, personal injury and wrongful death cases. She is currently involved in a number of cases against various corporate defendants and is responsible for developing legal theories, conducting legal research, and drafting discovery, pleadings and motions.

Katie also works with the BP Oil Spill litigation team to assist individuals and businesses in their efforts to hold BP and other corporate defendants accountable for the Deepwater Horizon



oil spill. She has been representing clients in the Gulf Coast areas since shortly after the disaster occurred and has helped them to pursue litigation and navigate the claims process pursuant to the settlement agreement reached with BP. Additionally, Katie has experience representing consumers, public pension funds, unions, whistleblowers and institutional investors in securities and consumer fraud class actions and shareholder derivative suits and has assisted in the representation of smokers and the families of deceased smokers against tobacco manufacturers in the Engle-progeny litigation pending in Florida state and federal courts.

Prior to joining Motley Rice, Katie served as a law clerk for the Honorable Catharine R. Aron, U.S. Bankruptcy Judge for the Middle District of North Carolina. In this capacity, she gained experience writing complex legal memoranda, preparing proposed orders and working with attorneys to handle and resolve both consumer and business bankruptcies. She also clerked for a number of law firms in the Charleston, S.C. area.

A South Carolina native, Katie pursued a Juris Doctor from the University of South Carolina School of Law as a 3-year Merit Scholarship Recipient. She served as a Student Editor of the *ABA Real Property Probate & Trust Journal*, and was a competing member of the University of South Carolina Moot Court Bar and a Representative for the Legislative Council of the Student Bar Association. Katie also demonstrated her commitment to public service as a member of the University of South Carolina Pro Bono Board, a student arbitrator with the Lexington County Juvenile Arbitration Program, and a volunteer law clerk for South Carolina Appleseed Legal Justice Center, where she worked to affect change in low-income communities throughout the state through education.

Katie continues to be active in her community, volunteering her time to support the Susan G. Komen Race for the Cure, the HALOS Back to School & Angel Tree Projects, and the South Carolina Bar Young Lawyers Division's Special Olympics and Annual iCivics Day Projects each year.  Katie has also served, since becoming a lawyer, as a mentor for the Charleston County Bar Association and has provided advice and aid to many young lawyers entering the legal profession. Katie actively supports the Dee Norton Lowcountry Children's Center, the Charleston Parks Conservancy, and the Coastal Community Foundation, and also currently assists as a Sub-Committee Co-Chair for the South Carolina Association for Justice's newly founded Women's Caucus.

## ASSOCIATIONS:

American Association for Justice
South Carolina Association for Justice
American Bar Association
South Carolina Bar Association
South Carolina Women Lawyers Association
Charleston County Bar Association



28 Bridgeside Blvd. | Mt. Pleasant, SC 29464

**SC | RI | CT | NY | WV | DC | LA | MO**

William H. Narwold (CT, DC, NY, SC) is the attorney responsible for this communication.
Prior results do not guarantee a similar outcome.
*PD: 10.31.2016*



**www.motleyrice.com**
**1 800.768.4026**

# Exhibit 24

**Eric H. Weinberg, Esq.**

Eric H. Weinberg is the principal of the Weinberg Law Firm, which has been based in New Brunswick, New Jersey, since 1984.

Mr. Weinberg has more than thirty years of experience in the prosecution of complex civil cases.  He has successfully represented victims of defective pharmaceutical drug and medical devices, medical malpractice, automobile and truck negligence, product liability, premises liability and construction matters.

Mr. Weinberg has the unique experience in his long career as a trial lawyer of having prosecuted and defended cases in both the civil and criminal courts before juries and judges.  The Firm is actively involved in the prosecution of medical malpractice, toxic tort, negligence and other matters.

The Law Firm represented people who took the pharmaceutical drug Pradaxa and suffered serious injury or death as a result.  Mr. Weinberg was appointed to the Multidistrict Litigation 2385 Pradaxa (Dabigatran Etexilate) Products Liability Litigation Plaintiffs' Steering Committee in the Southern District of Illinois.  He served as Co-Chair of the Expert/Science Committee.  These matters were settled with the manufacturer.

The Firm represents the Attorney General of the State of Utah in a pending civil matter against Merck & Co., arising out of the purchase of Vioxx by the Utah Medicaid program.  Mr. Weinberg represented hundreds of individuals, or their survivors, who suffered serious personal injuries or died as a consequence of taking the prescription drug Vioxx, in the consolidated state court litigation in Atlantic County, before the Honorable Carol A. Higbee. These matters were settled as a part of a $4.85 billion settlement with the manufacturer.  Mr. Weinberg was awarded common benefit fees for his work benefitting all claimants in the litigation.

The Firm has filed several hundred individual product liability matters in New Jersey state court involving defective vaginal mesh, as local counsel.  Many of these matters have reached settlement.

Mr. Weinberg played a leading role in discovery and expert development areas in consolidated litigation in Philadelphia involving the statin drug, Baycol. In 2003, Mr. Weinberg obtained a $68.5 million settlement of a significant number of cases on behalf of injured victims of Baycol.

Mr. Weinberg was instrumental in obtaining a $670 million dollar class action settlement for individuals with hemophilia who were injured by defective pharmaceutical blood products. He was appointed as a member of the Steering Committee of Multi-District Litigation 986, In Re Factor VIII and Factor IX Blood Products, in the United States District Court for the Northern District of Illinois before Judge John Grady, and served on the Executive Committee of the Plaintiffs' Steering Committee in that litigation.  Mr. Weinberg also negotiated  settlements in cases of individuals in New Jersey and New

York who suffered HIV infection.  Mr. Weinberg developed the theory of liability that served as the basis of the class action litigation.  He helped organize, fund and direct legislative strategies in New Jersey and New York that led to changes in the statutes of limitations in both jurisdictions, permitting injured persons to bring claims that might otherwise have been time-barred.  These laws remain on the books.

Mr. Weinberg served for many years as a Trustee of the Hemophilia Association of New Jersey. In 1995, the Association presented him with its President's Award, given in recognition of extraordinary service to the Hemophilia Community.

In 2009, Mr. Weinberg was jointly retained by a global pharmaceutical company and a consortium of plaintiff's personal injury firms to mediate the resolution of approximately 50 product liability claims arising from the use of an FDA approved antibiotic product. Mr. Weinberg, in his capacity as a neutral mediator of the issues, helped bring the matters to a settlement conclusion.

In 1980, after graduation from law school, Mr. Weinberg was hired by the Somerset County, New Jersey Prosecutor as a Legal Assistant.   Following a one year clerkship, he was appointed an Assistant County Prosecutor in 1981. He was appointed as Chief of Juvenile Prosecutions in 1981. He also handled adult prosecutions and supervised detective staff in major crime investigations.

Mr. Weinberg left the Prosecutor's Office in 1983, and was employed at the law firm of Franchino, Lenahan & Cross until late 1984. He served as an associate of the firm, whose primary clients were insurance companies.  Mr. Weinberg tried several cases to verdict to juries across the state during his tenure as an insurance defense counsel, gaining valuable experience and insight to the workings of the insurance defense industry

Since founding his own law firm in 1984, Mr. Weinberg has tried approximately thirty jury trials and over two hundred bench trials to verdict.

He has served as a Visiting Lecturer at Cook College, Rutgers University, where he taught a Senior Honors Colloquium entitled, "AIDS, Blood and Litigation." The course examined issues related to pharmaceutical drugs, from pharmaceutical research and development, through licensure, marketing, and post marketing; the interaction between industry and the regulatory authorities including the Food and Drug Administration; the impact of defective drugs and devices on public health; and legal remedies to the marketing and sale of dangerous and defective pharmaceutical and biological products. Mr. Weinberg has also been invited to teach Ph.D. candidates at the Rutgers School of Management and Labor Relations.

Mr. Weinberg has been an invited speaker in many forums on topics relating to the prosecution and settlement of serious injury cases, including mass torts and catastrophic injury cases.

Public service has been an essential part of Mr. Weinberg's life outside of his law practice.  He served for many years as Chair of the Highland Park, New Jersey Recreation Advisory Committee.  The father of four sons, he has coached hundreds of Highland Park kids in several sports.  Eric and Diane Weinberg were honored by the Highland Park Conservative Temple and Center with the prestigious Chaver Award in 2008, for service to the community.

Mr. Weinberg graduated from Rutgers College, New Brunswick, New Jersey, in 1977, and from Boston University School of Law in 1980. He is admitted to the Bar of the States of New Jersey and New York, as well as numerous federal courts.

The Weinberg Law Firm Biography
149 Livingston Avenue
New Brunswick, New Jersey 08901

November 2016


The Weinberg Law Firm was founded in New Brunswick, New Jersey in 1984 by the principal of the firm, Eric H. Weinberg, Esq.  The Firm has been and is currently focused upon complex litigation matters, including pharmaceutical drug litigation, medical malpractice litigation, and serious negligence matters.

The Firm is comprised of two attorneys, Eric H. Weinberg, Esq. and Alan Jacob Weinberg, Esq.  The Firm also employs paralegals, legal clerks and a Firm manager who oversees the Firm's marketing and operational tasks.

The Firm has engaged in co-counsel agreements with several law firms across the country in a number of matters.

The Firm has been involved since the late 1980s in litigation involving medical devices, biologic products, pharmaceutical products, and consumer products.  The Firm has developed relationships with experts in various fields, including medicine, statistics and epidemiology, and science. The Firm has successfully retained world class experts in litigation matters.

Eric Weinberg has been appointed to leadership positions in several complex litigations and in several individual cases, including Executive Committees, Science Committees and Expert Committees.

# **Exhibit 25**

# The Whitehead Law Firm, L.L.C.

**Petroleum Tower, Suite 303**
**3639 Ambassador Caffery Parkway**
**Lafayette, Louisiana 70503**
Telephone (337) 740-6006
Facsimile (337) 205-7754

_____

**C. Mark Whitehead III, M.D. \*^**                          **Lafayette, LA**
cmw@whiteheadfirm.com                                        **Miami, FL**

**Anna Katherine Higgins**                                   **\*Licensed in Florida**
anna@whiteheadfirm.com                                       **^Licensed in District of Columbia**

## INTRODUCTION

Mark Whitehead has been practicing in the field of mass torts and class actions since 2001. He has been involved in numerous environmental cases involving class claims for property damage and medical monitoring. Mark also represents the Boilermakers' Union Local 1814 in New Orleans, LA. He served on the plaintiff's committee for consolidated Vioxx mass tort litigation in New Jersey and has served on the science committee of the Plaintiff's Steering Committee in the PPA multi-district litigation, as well as serving similar roles in the Bextra/Celebrex, Vioxx, PPA, Fen-Phen, and Avandia MDLs. Mark is currently serving as a member of the science committee in the Xarelto MDL.

Anna Katherine Higgins joined The Whitehead Law Firm in 2012. Since that time she has been involved in handling cases in numerous pharmaceutical mass torts including but not limited to NuvaRing, Actos, Transvaginal Mesh, and Avandia. She is currently working for the discovery committee in the Xarelto MDL.

We are willing to commit our time and resources to this litigation including attending status conferences in New Jersey. Our only other current committee responsibilities are those mentioned in the above-referenced Xarelto MDL.

## EDUCATION

Mark Whitehead

B.S. – University of Georgia, 1991
M.D. – Tulane University, 1995
J.D. – Tulane University, 2000

Anna Higgins

B.S. – University of Georgia, 2008
J.D. – Louisiana State University, 2011

# The Whitehead Law Firm, L.L.C.

**Petroleum Tower, Suite 303**
**3639 Ambassador Caffery Parkway**
**Lafayette, Louisiana 70503**
Telephone (337) 740-6006
Facsimile (337) 205-7754

_____

**C. Mark Whitehead III, M.D. \*^**                                    **Lafayette, LA**
**cmw@whiteheadfirm.com**                                         **Miami, FL**

**Anna Katherine Higgins**                                              **\*Licensed in Florida**
**anna@whiteheadfirm.com**                                      **^Licensed in District of Columbia**

## BAR ADMISSIONS

Mark Whitehead

Federal Court Admissions:       Fifth Circuit Court of Appeals
                                Eastern, Middle & Western District of Louisiana, 2001.
                                Southern District of Florida, 2011.

State Court Admissions:         Louisiana, 2001.
                                Florida, 2002.
                                District of Columbia, 2015.

Anna Higgins

Federal Court Admissions:       Western District of Louisiana, 2012.

State Court Admissions:         Louisiana, 2011.

## PROFESSIONAL ASSOCIATIONS

Mark Whitehead

Association of Trial Lawyers of America
Louisiana Trial Lawyers Association
Florida Justice Association
American Association for Justice
Louisiana Bar Association
Florida Bar Association
District of Columbia Bar Association

Anna Higgins

Louisiana Bar Association
American Association for Justice

# The Whitehead Law Firm, L.L.C.

**Petroleum Tower, Suite 303**
**3639 Ambassador Caffery Parkway**
**Lafayette, Louisiana 70503**
Telephone (337) 740-6006
Facsimile (337) 205-7754

_____

**C. Mark Whitehead III, M.D. \*^**                                    **Lafayette, LA**
cmw@whiteheadfirm.com                                                **Miami, FL**

**Anna Katherine Higgins**                                           **\*Licensed in Florida**
anna@whiteheadfirm.com                                               **^Licensed in District of Columbia**


<u>MASS TORT/CLASS ACTION EXPERIENCE</u>


1.  Associate class counsel; Norwood v. Bayer CCA Industries, Inc., et al, Civil Action No. 3:01-cv-2094 (WDWA), United States District Court for the Western District of Washington at Seattle.

2.  Associate class counsel; Sheila Brown v. American Home Products Corporation, Civil Action No. 99-20593, United States District Court for the Eastern District of Pennsylvania.

3.  Associate class counsel; Margaret Williams et. al., v. Conoco, Inc., et al., Civil Action No. 2001-CA-000866, The First Judicial Circuit, in and for Escambia County, Florida.

4.  Associate class counsel; In re Starlink Corn Products Liability Litigation, MDL Docket No. 1403, Master File No. 00 C 6865, In the United States District Court for the Northern District of Illinois Eastern Division.

5.  Associate class counsel; Precision Billing Services, Inc., et al., v. Microsoft Corporation; O'Sullivan, Hicks and Patton, LLP, v. Microsoft Corporation; Carl Conrad v. Microsoft Corporation, Consolidated, Cause No. 99-896-GPM, Cause No. 00-26-GPM, Cause No. 0027-WDS, United States District Court for the Southern District of Illinois.

6.  Associate class counsel; Plumbers v. Pipefitters Local 572 Pension Fund, et al., v. Cisco Systems, Inc., et al., Case No. 5:01-cv-20418 JW, United States District Court for the Northern District of California.

7.  Class counsel; Adams et al., v. Ciba Specialty Chemicals Corporation, et al., Civil Action No. 1:03-cv-566, United States District Court for the Southern District of Alabama.

8.  Class counsel; Reed et al., v. Olin Corporation et al., Civil Action No. 1:03-cv-567, United States District Court for the Southern District of Alabama.

9.  Class counsel; Ware v. Ciba Geigy et al., Civil Action No. L-243-04, Superior Court of New Jersey Law Division Atlantic County.

10.  Co-liaison counsel; Pringle et al. v. Merck & Co., Inc., Civil Action No. 03-cv-3125, United States District Court for the Eastern District of Louisiana.

# The Whitehead Law Firm, L.L.C.

**Petroleum Tower, Suite 303**
**3639 Ambassador Caffery Parkway**
**Lafayette, Louisiana 70503**
Telephone (337) 740-6006
Facsimile (337) 205-7754

_____

**C. Mark Whitehead III, M.D. \*^**                              **Lafayette, LA**
**cmw@whiteheadfirm.com**                                        **Miami, FL**

**Anna Katherine Higgins**                                       **\*Licensed in Florida**
**anna@whiteheadfirm.com**                                       **^Licensed in District of Columbia**


11. Associate class counsel; In Re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Product Liability Litigation, MDL No. 1203, United States District Court for the Eastern District of Pennsylvania.

12. Science committee; In Re Vioxx Products Liability Litigation, MDL No. 1657, United States District Court for the Eastern District of Louisiana.

13. Science committee; In Re: Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation, MDL No. 1699, United States District Court for the Northern District of California.

14. Science committee; In Re: Avandia Marketing, Sales Practices and Products Liability Litigation; MDL No. 1871, United States District Court for the Eastern District of Pennsylvania.

15. Science committee: In Re: Phenlypropanolomine (PPA) Product Liability Litigation, MDL No. 1407, United States District Court for the Western District of Washington at Seattle.

16. Science committee; In Re: Xarelto Products Liability Litigation, MDL No. 2592, United States District Court for the Eastern District of Louisiana.