Robert Ross, Esquire
Joel J. Feller, Esquire
Matthew A. Casey, Esquire
Brian J. McCormick, Jr., Esquire
Mark A. Hoffman, Esquire
Dena Young, Esquire
Scott S. Berger, Jr., Esquire
**ROSS FELLER CASEY, LLP**
One Liberty Place
1650 Market St., Suite 3450
Philadelphia, PA 19103
215-574-2000

**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | : : : : : : : | **MDL NO. 16-2738 (FLW) (LHG)** |

This document relates to:  <u>Plaintiff Michael J. Carter, Personal Representative of the</u> <u>Estate of Ida M. Williams, Deceased</u>

| | | |
|---|---|---|
| Plaintiff Michael J. Carter, Personal Representative of the Estate of Ida M. Williams, Deceased,<br><br>                    **Plaintiff,**<br><br>v.<br><br>**JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.**<br><br>                    **Defendants.** | : : : : : : : : : : : : : : | Civil A. No. _____<br><br><br>**JURY TRIAL DEMANDED**<br><br><u>**COMPLAINT**</u> |

Plaintiff Michael J. Carter, individually and as personal representative of the Estate of

Ida. M. Williams, deceased, by and through undersigned counsel, files this Complaint against

Defendants Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc., Imerys Talc

America, Inc. f/k/a Luzenac America, Inc.,  alleging the following upon information and belief (including investigation made by and through Plaintiff's counsel), except those allegations that pertain to Plaintiff, which are based on personal knowledge.

## I.     Introduction

1.     This action arises out of Ida. M. Williams's diagnosis of ovarian cancer and her demise therefrom, which was directly and proximately caused by her regular and prolonged use of talcum powder containing product known as Johnson & Johnson Baby Powder (hereinafter "J&J Baby Powder") in the perineal area.  Plaintiff's damages are a direct and proximate result of Defendants' and/or their corporate predecessors negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of J&J Baby Powder.

## II.     Venue and Jurisdiction

2.     This is an action for damages that exceeds the jurisdictional minimum of this Court.

3.     Jurisdiction in this case is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff is a citizen of the State of Connecticut and Defendants are completely diverse corporate citizens of other states.  The amount in controversy exceeds $75,000.00.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

5.     This suit is brought under the statutory and common law of the State of Connecticut, to recover damages and other relief, including the costs of suit and reasonable attorneys' and expert fees, for the injuries Plaintiff sustained as a result of the Defendants' and/or their corporate predecessors' negligent and wrongful conduct in connection with the design, development, formulation, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or sale of J&J Baby Powder.

### III.   Parties

6.   Ida M. Williams was born on October 21, 1934, and used J&J Baby Powder for approximately 45 years.  As a direct and proximate result of using J&J Baby Powder, Ida M. Williams died of ovarian cancer on December 7, 2014.

7.   Plaintiff Michael J. Carter is an adult and citizen of the State of Connecticut, residing at 41 Victoria Lane, Naugatuck, Connecticut.

8.   Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in the State of New Jersey.  At all pertinent times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing J&J Baby Powder.

9.   Johnson & Johnson may be served with process by serving its registered agent, M. H. Ullmann at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08901-1241.

10.   Defendant Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.  At all pertinent times, Johnson & Johnson Consumer Companies, Inc., was engaged in the business of manufacturing marketing, testing, promoting, selling, and/or distributing J&J Baby Powder.

11.   Johnson & Johnson Consumer Companies, Inc. may be served with process of this Court via service on its registered agent, Johnson & Johnson, located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08901-1241.

12.   Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., have, at all pertinent times, engaged in the business of designing, developing, licensing, manufacturing, distributing, selling and/or marketing J&J Baby Powder.

13. At all pertinent times, Defendant Johnson & Johnson Consumer Companies, Inc., has been a wholly-owned subsidiary of Defendant Johnson & Johnson, under the complete dominion of and control of Defendant Johnson & Johnson. Hereinafter, unless otherwise delineated, these two entities shall be collectively referred to as the "Johnson & Johnson Defendants."

14. Defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc. ("Imerys" or "Imerys Talc") is a Delaware corporation with its principal place of business in the State of California. At all pertinent times, Imerys Talc America, Inc. has maintained a registered agent in the State of Delaware. Imerys Talc America, Inc. may be served with process of this Court via service on its registered agent, Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

15. At all pertinent times, Imerys Talc has been in the business of mining and distributing talcum powder for use in talcum powder based products, including J&J Baby Powder. Imerys Talc is the successor or continuation of Luzenac America, Inc., and Imerys Talc America, Inc. is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.

## IV.   General Factual Background

16. Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. Defendant Imerys mined the talc contained in J&J Baby Powder.

17. Talc is the main substance in talcum powders. The Johnson & Johnson Defendants manufactured J&J Baby Powder. J&J Baby Powder is composed almost entirely of talc.

18. At all times pertinent times, a feasible alternative to J&J Baby Powder has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known

health effects.  Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness.

19.  Imerys Talc[1] has continually advertised and marketed talc as safe for human use.

20.  Imerys Talc supplies customers with material safety data sheets for talc.  These material safety data sheets are supposed to convey adequate health and warning information to its customers.

21.  Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity.  During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild".  The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors.  The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

22.  In 1971, the first study was conducted that suggested an association between talc and ovarian cancer.  This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

23.  In 1982, the first epidemiologic study was performed on talc powder use in the female genital area.  This study was conducted by Dr. Daniel Cramer and others.  This study found a 92% increased risk in ovarian cancer with women who reported genital talc use.  Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study.  Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a

---

[1] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

24. Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital talc use in women.

25. In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

26. In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer.

27.  On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies as far back as 1960's ". . . show[ ] conclusively that the frequent use of talcum powder in the genital area pose[ ] a serious health risk of ovarian cancer."  The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate.  The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about ovarian cancer risk they pose.

28.  In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

29.  In February 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen.  IARC which is universally accepted as the international authority on cancer issues concluded that studies from around the world consistently found an increased risk of ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the world was using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%.  IARC concluded with this "Evaluation":  "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder."  By definition "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for

which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

30. In approximately 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A", "very toxic", "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

31. In 2006, Imerys Talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them. These MSDSs not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

32. The Defendants had a duty to know and warn about the hazards associated with the use of J&J Baby Powder.

33. The Defendants failed to inform its customers and end users of J&J Baby Powder of a known catastrophic health hazard associated with the use of its products.

34. In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of J&J Baby Powder to the public and used influence over governmental and regulatory bodies regarding talc.

### V. Factual Background Specific to Ms. Williams

1. Ida M. Williams, deceased, used J&J Baby Powder for feminine hygiene purposes for much of her attenuated life. This was an intended and foreseeable use of the product based on the advertising, marketing, and labeling of J&J Baby Powder.

2. In 2014, Ida M. Williams died as a result of ovarian cancer.

3.    As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Ida M. Williams developed ovarian cancer, which required surgeries and treatments, and ultimately resulted in her untimely demise.

4.    Plaintiff Michael J. Carter is the personal representative of the Estate of Ida M. Williams.

## VI.   Federal Standards and Requirements

5.    Upon information and belief, the Defendants have or may have failed to comply with all federal standards and requirements applicable to the sale of J&J Baby Powder including, but not limited to, violations of various sections and subsections of the United States Code and the Code of Federal Regulations.

## VII.   Claims Against Defendants

### COUNT ONE – PRODUCT LIABILITY – FAILURE TO WARN
### (IMERYS TALC AND JOHNSON & JOHNSON DEFENDANTS)

6.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

7.    At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew that Johnson & Johnson was then packaging and selling to consumers as J&J Baby Powder and it knew that consumers of J&J Baby Powder were using it to powder their perineal regions.

8.    At all pertinent times, Imerys Talc knew and/or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when used in a woman's perineal regions, and it knew or should have known that Johnson & Johnson was not warning its consumers of this danger.

9.   At all pertinent times, the Johnson & Johnson Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing J&J Baby Powder in the regular course of business.

10.   At all pertinent times, Ida M. Williams, deceased, used J&J Baby Powder to powder her perineal area, which is a reasonably foreseeable use.

11.   At all pertinent times, all Defendants in this action knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of cancer based upon scientific knowledge dating back to the 1960s.

12.   At all pertinent times, including the time of sale and consumption, J&J Baby Powder, when put to the aforementioned reasonably foreseeable uses, was in an unreasonably dangerous and defective condition because it failed to contain adequate and proper warnings and/or instructions regarding the increased risk of cancer associated with the use of the product by women to powder their perineal area.   Defendants themselves failed to properly and adequately warn and instruct Ida M. Williams, deceased, as to the risks of J&J Baby Powder given her need for this information.

13.   Had Ida M. Williams, deceased, received a warning that the use of J&J Baby Powder would have significantly increased her risk of cancer, she would not have used the same.   As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of J&J Baby Powder, Ida M. Williams was injured catastrophically, suffering severe pain, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic damages, and death.

14.   The development of ovarian cancer by Ida M. Williams, deceased, was the direct and proximate result of the unreasonably dangerous and defective condition of J&J Baby Powder at the time of sale and consumption, including its lack of warnings; Ida M. Williams suffered

injuries and damages, including but not limited to conscious pain and suffering, medical expenses, and death.

15. The Defendants' products were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to other express factual representation upon which Ida M. Williams justifiably relied in electing to use the product. The defect or defects made the products unreasonably dangerous to those persons, such as Ida M. Williams, who could reasonably be expected to use and rely upon the product. As a result, the defect or defects were a producing cause of the injuries and damages of Ida M. Williams, deceased, and Plaintiff Michael J. Carter.

16. The Defendants' product failed to contain, and continue to this day not to contain, adequate warnings and/or instructions regarding the increased risk of cancer with the use of the product by women. The Defendants continue to market, advertise, and expressly represent to the general public that it is safe for women to use their product regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960's that their products increase the risk of cancer in women when used in the perineal area. Therefore, the Defendants are liable to Plaintiff for their wrongful conduct under the doctrine of Strict Liability pursuant to §402A of the Restatement (second) of Torts.

**WHEREFORE,** Plaintiff prays for judgment against Imerys Talc and the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $75,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT TWO – PRODUCTS LIABILITY - DEFECTIVE MANUFACTURE AND DESIGN (IMERYS TALC AND JOHNSON & JOHNSON DEFENDANTS)

17.  Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

18.  Defendants' product was defectively and improperly manufactured, rendering the product deficient and unreasonably dangerous and hazardous to Ida M. Williams, deceased, used J&J Baby Powder for feminine hygiene purposes for much of her attenuated life.  This was an intended and foreseeable use of the product based on the advertising, marketing, and labeling of J&J Baby Powder.

19.  In 2014, Ida M. Williams died as a result of ovarian cancer.

20.  As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Ida M. Williams developed ovarian cancer, which required surgeries and treatments, and ultimately resulted in her untimely demise.

21.  Plaintiff Michael J. Carter is the personal representative of the Estate of Ida M. Williams.

22.  , deceased.

23.  Defendants' product is inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable use, and does not meet or perform to the expectations of consumers.

24.  The product at issue creates risks to the health and safety of the consumers that are far more significant and devastating than the risks posed by other products on the market used for the same therapeutic purposes. There is a feasible and reasonable alternative design.

25.  Defendants have intentionally and recklessly designed, manufactured, marketed, labeled, sold and distributed the product with wanton and willful disregard for the rights and

health of Ida M. Williams, deceased, and others, and with malice, placing their economic interests above the health and safety of Ida M. Williams and others similarly situated.

26. As a proximate result of Defendants' design, manufacture, labeling, marketing, sale and distribution of the product, Ida M. Williams was injured catastrophically and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic damages, and death.

27. Defendants are strictly liable in tort to Plaintiff for their wrongful conduct pursuant to 402A of the Restatement (second) of Torts.

**WHEREFORE,** Plaintiff demands judgment against Defendants of compensatory damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems equitable and just.

## COUNT THREE – PRODUCTS LIABILITY – NEGLIGENCE
## (IMERYS TALC)

28. Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

29. At all pertinent times, Defendants had a duty to exercise reasonable care to consumers, including Ida M. Williams, deceased, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of J&J Baby Powder.

30. At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew or should have known, was then being packaged and sold to consumers as J&J Baby Powder by the Johnson & Johnson Defendants. Further, Imerys Talc knew or should have known that consumers of J&J Baby Powder were using it to powder their perineal regions.

31.   At all pertinent times, Imerys Talc knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of cancer based upon scientific knowledge dating back to the 1960s.

32.   At all pertinent times, Imerys Talc knew or should have known that Johnson & Johnson was not providing warnings to consumers of J&J Baby Powder of the risk of cancer posed by talc contained therein.

33.   At all pertinent times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants, when it knew or should have known that the talc would be used in J&J Baby Powder, without adequately taking steps to ensure that ultimate consumers of J&J Baby Powder, including Ida M. Williams, deceased, received the information that Imerys Talc possessed on the carcinogenic properties of talc, including its risk of causing cancer.

34.   Defendants breached their duty of reasonable care to Ida M. Williams, deceased, and therefore Plaintiff, in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold the subject product.

35.   As a direct and proximate result of Imerys Talc's negligence, Ida M. Williams purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die; Plaintiff was caused to incur medical bills and conscious pain and suffering before death.

**WHEREFORE**, Plaintiff prays for judgment against Imerys Talc in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT FOUR – PRODUCTS LIABILITY– NEGLIGENCE
## (JOHNSON & JOHNSON DEFENDANTS)

36. Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

37. The Johnson & Johnson Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing J&J Baby Powder in one or more of the following respects:

- In failing to warn Ida M. Williams of the hazards associated with the use of J&J Baby Powder;

- In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing J&J Baby Powder for consumer use;

- In failing to properly test their products to determine the increased risk of ovarian cancer during the normal and/or intended use of J&J Baby Powder;

- In failing to inform ultimate users, such as Ida M. Williams as to the safe and proper methods of handling and using J&J Baby Powder;

- In failing to remove J&J Baby Powder from the market when the Defendants knew or should have known J&J Baby Powder was defective;

- In failing to instruct the ultimate users, such as Ida M. Williams, as to the methods for reducing the type of exposure to J&J Baby Powder which caused increased risk of cancer;

- In failing to inform the public in general and Ida M. Williams in particular of the known dangers of using J&J Baby Powder for dusting the perineum;

- In failing to advise users how to prevent or reduce exposure that caused increased risk for cancer;

- In marketing and labeling J&J Baby Powder as safe for all uses despite knowledge to the contrary.

- In failing to act like a reasonably prudent company under similar circumstances.

Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and death of Ida M. Williams, and thus the injuries and damages of Plaintiff.

38. At all pertinent times, the Johnson & Johnson Defendants knew or should have known that J&J Baby Powder is unreasonably dangerous and defective when put to their reasonably anticipated uses.

39. As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Ida M. Williams purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die; Ida M. Williams was caused to incur medical bills and conscious pain and suffering for which Plaintiff may recover.

**WHEREFORE**, Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT FIVE – BREACH OF EXPRESS WARRANTY
## (JOHNSON & JOHNSON DEFENDANTS)

40. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

41. The Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that J&J Baby Powder was safe and effective for reasonably anticipated uses, including use by women in the perineal area.

42. J&J Baby Powder did not conform to these express representations because it causes serious injury when used by women in the perineal area in the form of gynecological cancer. Defendants' breaches constitute violations of Common Law principles and Connecticut statutory law.

43. As a direct and proximate result of the Defendants' breach of warranty, Ida M. Williams purchased and used, as aforesaid, J&J Baby Powder that directly and proximately

caused her to develop ovarian cancer and expire; Ida M. Williams was caused to incur medical bills and conscious pain and suffering for which Plaintiff may recover.

44. Defendants designed, manufactured, assembled, fabricated and/or distributed the products in question in a defective condition and therefore breached an implied warranty of fitness and an implied warranty of merchantability, in addition to various express warranties. The Defendants, as sellers, were merchants with respect to the products which they sold.  In addition, these products were not fit for the ordinary purposes for which such goods are used. The Defendants also had reason to know of the particular purpose for which this product would be used, as well as the knowledge that persons such as Plaintiff would rely on the seller's skill to furnish suitable products.

45. Therefore, the Defendants have breached the implied warranty of merchantability as well as the implied warranty of fitness for a particular purpose, in addition to various express warranties.  Such breach or breaches of implied and express warranties by the Defendants was a proximate cause of the injuries and death of Ida M. Williams and the damages sustained by Plaintiff.

**WHEREFORE**, Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT SIX – BREACH OF IMPLIED WARRANTIES
## (JOHNSON & JOHNSON DEFENDANTS)

46. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

47. At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold J&J Baby Powder, the Johnson & Johnson Defendants knew of the uses for which

J&J Baby Powder was intended, including use by women in the perineal area, and impliedly warranted J&J Baby Powder to be of merchantable quality and safe for such use.

48.  Defendants breached their implied warranties of J&J Baby Powder sold to Ida M. Williams because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area, in violation of Common Law principles and Connecticut statutory law.

49.  As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Ida M. Williams purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die; Ida M. Williams was caused to incur medical bills and conscious pain and suffering for which Plaintiff may recover.

**WHEREFORE**, Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT SEVEN - WRONGFUL DEATH
## (ALL DEFENDANTS)

50.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

51.  As a direct and proximate result of the conduct of the Defendants and the defective nature of J&J Baby Powder as described above, Ida M. Williams suffered bodily injuries resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses for hospitalization, medical and nursing treatment, loss of earnings, loss of ability to earn, funeral expenses and death.

52. Plaintiff brings this claim on his own behalf as a person entitled to do so under the statutes of the State of Connecticut, including but not limited to Conn. Gen. Stat. § 52-555, for such cases made and provided.

53. As a direct and proximate cause of the conduct of Defendants, Plaintiff has incurred hospital, nursing and medical expenses, and estate administration expenses as a result of Ida M. Williams's death.  Plaintiff brings this claim for these damages and for all pecuniary losses sustained.

54. **WHEREFORE,** Plaintiff prays for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT EIGHT - SURVIVAL
## (ALL DEFENDANTS)

55. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

56.     As a direct and proximate result of the conduct of Defendants, Ida M. Williams and her son, Plaintiff Michael J. Carter, until the time of her death, suffered a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.  This claim is brought by Plaintiff under pursuant to Conn. Gen. Stat. § 52-599.

## COUNT NINE -- PUNITIVE DAMAGES UNDER COMMON LAW
## (ALL DEFENDANTS)

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. Plaintiff is entitled to punitive damages because Defendants' wrongful acts and/or omissions were wanton or in conscious disregard of the rights of others. Defendants misled both the medical community and the public at large, including Ida M. Williams, deceased, by making false representations about the safety and utility of J&J Baby Powder and by failing to provide adequate instructions concerning their use.

59. The Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

60. Defendants knew of the unreasonably high risk of cancer posed by J&J Baby Powder before manufacturing, marketing, distributing and/or selling J&J Baby Powder, yet purposefully proceeded with such action;

- Despite their knowledge of the high risk of cancer associated with J&J Baby Powder, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling;

- Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of J&J Baby Powder and the Ida M. Williams, deceased. Defendants' conduct, as described herein, knowing the dangers and risks of J&J Baby Powder, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action was outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of J&J Baby Powder

61. The Defendants' conduct was a conscious disregard for the rights, safety and welfare of Ida M. Williams, deceased. The Defendants acted with willful and wanton disregard for the safety of Ida M. Williams, deceased. The Defendants' conduct constitutes gross negligence. Defendants' gross negligence was a proximate cause of Ida M. Williams's death and Plaintiff's injuries and damages, and as such the Defendants are liable for exemplary and punitive damages.

62. Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. have a pattern and practice of this type of conduct. Specifically, these Defendants built their company on the credo, "We believe our first responsibility is to the

doctors, nurses, and patients, to mothers and fathers and all others who use our products and services." The Defendants placed emphasis on shareholders believing that if they take care of everything the ethical and correct way profits will follow. However, over the past few decades, the Defendants have sharply deviated from their original credo, and instituted a corporate pattern and practice of placing profits over the health and well-being of its customers as evidence in the Propulsid litigation, Ortho Evra litigation, 2006 Pennsylvania Tylenol litigation, 2006 TMAP investigation, and 2007 violation of the Foreign Corrupt Practices Act.

63. The above listed evidence indicates a pattern and practice of the Johnson & Johnson Defendants to place corporate profits over health and well-being of its customers. Such a pattern and practice has been followed by the Defendants regarding "Johnson's Baby Powder."

64. All of the Defendants have been aware for nearly forty (40) years of independent scientific studies linking the use of their products to the increased risk of gynecological cancer in women when used in the perineal area. Despite this overwhelming body of evidence all of the Defendants have failed to inform their consumers of this known hazard. As such, all of the Defendants should be liable for punitive damages to the Plaintiff.

65. As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, the Plaintiff has sustained damages as set forth above.

**WHEREFORE**, Plaintiff prays for judgment for punitive damages against all Defendants, each of them, in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

## COUNT TEN – NEGLIGENT MISREPRESENTATION
## (ALL DEFENDANTS)

66.  Plaintiff realleges each and every allegation of this Complaint as if each were set forth fully and completely herein.

67.  Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Ida M. Williams, Plaintiff, and the public, that J&J Baby Powder had been tested and found to be safe and effective for use in the perineal area.  The representations made by Defendants, in fact, were false.

68.  Defendants failed to exercise ordinary care in the representations concerning J&J Baby Powder while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented J&J Baby Powder's high risk of unreasonable, dangerous, adverse side effects.

69.  Defendants breached their duty in representing that J&J Baby Powder has no serious side effects.

70.  As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that J&J Baby Powder had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects.

71.  As a proximate result of Defendants' conduct, Ida M. Williams was injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, economic damages, and death, and Plaintiff is entitled to damages therefor.

**WHEREFORE**, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT ELEVEN - CIVIL CONSPIRACY
### (ALL DEFENDANTS)

72.  Plaintiff repeats and realleges each of the preceding paragraphs of this Complaint as if set forth at length herein.

73.  Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause injuries, disease, and/or illnesses and death by exposing Ida M. Williams to harmful and dangerous products.  Defendants further knowingly agreed, contrived, confederated and conspired to deprive Ida M. Williams and Plaintiff of the opportunity of informed free choice as to whether to use J&J Baby Powder or to expose Ida M. Williams to said dangers.  Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the J&J Baby Powder.

74.  In furtherance of said conspiracies, Defendants performed the following overt acts:

(a).  For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that when used in an ordinary and foreseeable fashion by women, J&J Baby Powder was unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

(b).  Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

- Withheld, concealed and suppressed said medical information regarding the increased risk of cancer from Plaintiff (as set out in the "Facts" section of this pleading); In addition, on July 27, 2005, Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific

papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen.

- The Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs.  Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off."

- Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of cancer which Defendants knew were incorrect, incomplete, outdated, and misleading.  Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

(c).    By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce Ida M. Williams, deceased, to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to J&J Baby Powder.

75. Ida M. Williams, deceased, and Plaintiff, reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of J&J Baby Powder.

76. As a direct and proximate result of the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of J&J Baby Powder and Plaintiff's reliance thereon, Ida M. Williams purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused Ida M. Williams to develop cancer; Ida M. Williams was caused to incur medical bills, lost wages, conscious pain and suffering, and death, for which Plaintiff may recover.

77. As a direct and proximate result of Ida M. Williams's reliance, she sustained injuries, illnesses, and death, and was deprived of the opportunity of informed free choice in connection with the use and exposure to J&J Baby Powder.

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TWELVE – ACTING IN CONCERT
## (ALL DEFENDANTS)

78. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

79. At all pertinent times, Imerys Talc, Johnson & Johnson Defendants knew that J&J Baby Powder should contain warnings on the risk of gynecological cancer posed by women using the product to powder the perineal region, but purposefully sought to suppress such information and omit such information from talc based products so as not to negatively affect sales and maintain the profits of the Johnson & Johnson Defendant, Imerys Talc.

80. Additionally and/or alternatively, the Defendants aided and abetted each other in the negligence, gross negligence, and reckless misconduct. Pursuant to the Restatement (Second) of Torts Section 876, each of the Defendants is liable for the conduct of the other Defendants for whom they aided and abetted.

81. As a direct and proximate result of Defendants concerted action, Ida M. Williams purchased and used, as aforesaid, J&J Baby Powder that directly and proximately caused her to develop ovarian cancer and die; Ida M. Williams was caused to incur medical bills and conscious pain and suffering, for which Plaintiff may recover.

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff:

(a).   Severe impairment to Ida M. Williams's ovaries and reproductive system;

(b).   Medical expenses;

(c).   Pain and suffering;

(d).   Mental anguish, anxiety, and discomfort;

(e).   Lost wages and income;

(f).   Fear of cancer or other related diseases;

(g).   Physical impairment;

(h).   Physical disfigurement;

(i).   Loss of enjoyment of life;

(j).   Death;

(k).   Pre and post judgment interest;

(l).   Exemplary and punitive damages in an amount to be determined at trial;

(m).   Treble damages;

(n).   General damages;

(o).   Reasonable and necessary attorneys' fees and other disbursements and expenses of this action; and,

(p).   Such other relief to which Plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

Demand is hereby made for trial by jury.

Respectfully submitted,

**ROSS FELLER CASEY, LLP**

Brian J. McCormick, Jr., Esquire

/s/ Robert Ross
Robert Ross, Esquire

/s/ Joel J. Feller
Joel J. Feller, Esquire

/s/ Matthew A. Casey
Matthew A. Casey, Esquire

/s/ Mark A. Hoffman
Mark A. Hoffman, Esquire

/s/ Dena Young
Dena Young, Esquire

/s/ Scott S. Berger
Scott S. Berger, Esquire

One Liberty Place
1650 Market Street, Suite 3450
Philadelphia, PA 19103
Tel.: (215) 574-2000
Fax: (215) 574-3080
bmccormick@rossfellercasey.com
mhoffman@rossfellercasey.com
dyoung@rossfellercasey.com
sberger@rossfellercasey.com

*Attorneys for Plaintiff*

Dated: December 7, 2016