# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE:  JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

MDL No. 2738

## DEFENDANT PERSONAL CARE PRODUCTS COUNCIL'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>

Thomas T. Locke (DC Bar No. 454144)
Rebecca Woods (DC Bar No. 468495)
James R. Billings-Kang (DC Bar No. 984152)
**SEYFARTH SHAW LLP**
975 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 463-2400
Facsimile:  (202) 828-5393
tlocke@seyfarth.com
rwoods@seyfarth.com
jbillingskang@seyfarth.com

Sheryl L. Axelrod (NJ Bar No. 017091994)
**THE AXELROD FIRM, PC**
The Beasley Building
1125 Walnut Street
Philadelphia, PA  19107
Phone: (205) 461-1770
Facsimile: (205) 238-1779
*saxelrod@theaxelrodfirm.com*

*Attorneys for Defendant*
*Personal Care Products Council*

i

# TABLE OF CONTENTS

**Page**

I.   PERSONAL JURISDICTION OVER PCPC DOES NOT EXIST IN THE VAST MAJORITY OF LAWSUITS. ...................................................................................1

    A.   This Court Has Authority to Dismiss Lawsuits Based on Lack of Personal Jurisdiction. ..........................................................................................................2

    B.   Plaintiffs Cannot Meet Their Burden of Establishing Personal Jurisdiction...........3

        1.   Plaintiffs Cannot Establish Long-Arm Jurisdiction. ..................................4

        2.   General Jurisdiction Does Not Exist Over PCPC. ....................................6

        3.   Specific Jurisdiction Does Not Exist Over PCPC. ....................................8

II.   ANTI-SLAPP STATUTES PRECLUDE CERTAIN LAWSUITS AGAINST PCPC.....11

    A.   The Claims Against PCPC Relate Solely to Protected Activity...........................12

    B.   Plaintiffs Cannot Meet Their High Burden of Establishing the Likelihood of Success on the Merits...........................................................................................17

    C.   The Court Should Apply the Anti-SLAPP Statutes.............................................18

III.   PCPC'S CONDUCT IS PROTECTED BY THE FIRST AMENDMENT.....................20

    A.   The Claims Against PCPC Arise From Protected Activity.................................22

    B.   None of the Exceptions to the Noerr-Pennington Doctrine Apply.......................23

CONCLUSION.....................................................................................................................25

Exhibit A – Identification of Lawsuits

Exhibit B – *Cebulske v. Johnson & Johnson*, 2015 WL 1403148 (S.D. Ill. Mar. 25, 2015)

Exhibit C – Long-Arm Statutes from Applicable Jurisdictions

Exhibit D – Declaration of Mark A. Pollak

Exhibit E – Transcript Excerpt, Simpson v. Johnson & Johnson (D.C. Super. Ct. Jan 13, 2017)

Exhibit F – Anti-SLAPP Acts from Applicable Jurisdictions

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness USA, Inc. v. Annis*,
No. 04–257, 2004 WL 2656877 (D.N.H. Nov. 18, 2004)....................................................22

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
263 F.3d 239 (3d Cir. 2001) ...........................................................................................20

*Abbas v. Foreign Policy Grp., LLC*,
975 F. Supp. 2d 1 (D.D.C. 2013), *aff'd on other grounds*, 783 F.3d 1328 (D.C.
Cir. 2015)...................................................................................................................... 18, 19

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014) ...........................................................................................18

*Adelson v. Harris*,
973 F. Supp. 2d 467 (E.D.N.Y. 2013).............................................................................20

*Agema v. City of Allegan*,
No. 1:12–cv–417, 2014 WL 249374 (W.D. Mich. Jan. 22, 2014).......................................22

*Ala. Cargo Transport, Inc. v. Ala. R.R. Corp.*,
834 F. Supp. 1216 (D. Ala. 1991) ...................................................................................21

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*,
268 A.D.2d 101, 707 N.Y.S.2d 647 (2d Dep't 2000) ........................................................24

*Allaham v. Naddaf*,
635 Fed. App'x 32 (3d Cir. 2015)...................................................................................3, 4

*Arenas v. Shed Media U.S. Inc.*,
881 F. Supp. 2d 1181 (C.D. Cal.), *aff'd*, 462 F. App'x 709 (9th Cir. 2011) .........................18

*Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*,
No. 09–60397–CIV, 2009 WL 2589148 (S.D. Fla. Aug. 19, 2009)....................................21

*Atl. Recording Corp. v. Raleigh*,
No. 4:06–CV–1708, 2008 WL 3890387 (E.D. Mo. Aug. 18, 2008)....................................22

*Barnes Found. v. Twp. of Lower Merion*,
242 F.3d 151 (3d Cir. 2001) ...........................................................................................21

*Bartholomew v. Bail Bonds Unlimited, Inc.*,
No. 05–4165, 2007 WL 1063338 (E.D. La. Apr. 5, 2007)..................................................22

iii

*BE&K Constr. Co. v. NLRB,*
　　536 U.S. 516 (2002) .................................................................................21

*Bible & Gospel Trust v. Twinam,*
　　No. 1:07-cv-17, 2008 WL 5245644 (D. Vt. Dec. 12, 2008)..................................20

*Bier v. Johnson & Johnson,*
　　E.D. La. 2:16-cv-15961 ............................................................................11

*Bill Johnson's Rests., Inc. v. NLRB,*
　　461 U.S. 731 (1983) .................................................................................20

*Biltmore Co. v. NU U, Inc.,*
　　No. 1:15–cv–00288, 2016 WL 7494474 (W.D.N.C. Dec. 30, 2016)......................22

*Brown v. TD Bank, N.A.,*
　　No. 15–5474, 2016 WL 1298973 (E.D. Pa. Apr. 4, 2016) ..................................22

*Brown-Harrison,* et al. *v. Johnson & Johnson,*
　　E.D. Pa. No. 2:16-cv-06029 .......................................................................24

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
　　839 F.2d 155 (3d Cir. 1988) .......................................................................21

*Burger King Corp. v. Rudzewicz,*
　　471 U.S. 462 (1985) ...................................................................................8

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
　　404 U.S. 508 (1972) .................................................................................22

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
　　334 F.3d 390 (4th Cir. 2003) ........................................................................4

*Carmouche v. Tamborlee Mgmt., Inc.,*
　　789 F.3d 1201 (11th Cir. 2015).....................................................................7

*Carter v. State Farm Mut. Auto. Ins. Co.,*
　　808 A.2d 466 (D.C. 2002) ..........................................................................15

*Casey v. Johnson & Johnson,*
　　et al. (MDL 2738 ECF No. 36-4)...................................................................24

*Cebulske v. Johnson & Johnson,*
　　No. 14-cv-00627, 2015 WL 1403148 (S.D. Ill. Mar. 25, 2015).......................1, 11

*Centrone v. Schmidt,*
　　114 Misc. 2d 840, 452 N.Y.S.2d 299 (Sup. Ct. Nassau Cty., 1982)....................23

iv

*Choose Energy, Inc. v. Am. Petroleum Inst.*,
  87 F. Supp. 3d 1218 (N.D. Cal. 2015) .......................................................... 14, 16

*City of Columbia v. Omni Outdoor Advertising*,
  499 U.S. 365 (1991) ................................................................................23

*Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*,
  No. 96–2166, 1997 WL 51419 (D. Kan. Jan. 30, 1997) ......................................21

*Competitive Enter. Inst. v. Mann*,
  No. 14–CV–101, NO. 14–CV–126, 2016 WL 7404870 (D.C. Dec. 22, 2016)............... *passim*

*Conwill v. Greenberg Traurig, L.L.P.*,
  No. 09-4365, 2009 WL 5178310 (E.D. La. Dec. 22, 2009) .................................10

*Copia Comm'cns, LLC v. AMResorts, L.P.*,
  812 F.3d 1 (1st Cir. 2016) ........................................................................4

*Covad Comm'cns Co. v. Bell Atl. Corp.*,
  398 F.3d 666 (D.C. Cir. 2005) ...................................................................22

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) .......................................................................6, 7, 8

*Davis v. Johnson & Johnson*,
  D.N.J. No. 3:16-cv-07844................................................................... 11

*Dist. of Columbia v. Place*,
  892 A.2d 1108 (D.C. 2006) ......................................................................15

*Doe v. Hesketh*,
  15 F. Supp. 3d 586 (E.D. Pa. 2014) ..............................................................9

*Doe v. Unocal Corp.*,
  248 F.3d 915, 923 (9th Cir. 2001)...............................................................4

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ....................................................................... 20, 22, 23

*Eaton v. Newport Bd. of Educ.*,
  975 F.2d 292 (6th Cir. 1992) ....................................................................21

*EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*,
  147 F. Supp. 3d 63 (E.D.N.Y. 2015)..............................................................22

*Empress LLC v. City and Cty. of San Fran.*,
  419 F.3d 1052 (9th Cir. 2005) ....................................................................21

v

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009) ...................................................................................3

*Farah v. Esquire Magazine*,
863 F. Supp. 2d 29 (2012) ..................................................................................14

*Fed. Ins. Co. v. Lake Shore Inc.*,
886 F.2d 654 (4th Cir. 1989) ................................................................................4

*Ferrell v. Johnson & Johnson*,
D.N.J. No. 3:16-cv-08812.....................................................................................12

*Fiore v. Johnson & Johnson*,
et al. (MDL 2738 ECF No. 365-7)........................................................................24

*Forras v. Rauf*,
39 F. Supp. 3d 45 (D.D.C. 2014), *aff'd on other grounds*, 812 F.3d 1102 (D.C.
Cir. 2016)................................................................................................. 13, 17, 18

*Fraser v. Smith*,
594 F.3d 842 (11th Cir. 2010) ..............................................................................5

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
313 F. Supp. 2d 339 (S.D.N.Y. 2004) .................................................................24

*Gendelman v. Johnson & Johnson*,
et al. (MDL 2738 ECF No. 325-6)........................................................................24

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010)...................................................................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ..............................................................................................6

*Grand Cmtys., Ltd. v. Stepner*,
170 S.W.3d 411 (Ky. Ct. App. 2004)....................................................................22

*Graziose v. Am. Home Prods. Corp.*,
161 F. Supp. 2d 1149 (D. Nev. 2001) ..................................................................11

*Grimes v. Vitalink Commc'ns Corp.*,
17 F.3d 1553 (3d Cir. 1994) ..................................................................................3

*In re Gypsum Wallboard*,
302 F. Supp. 794 (Jud. Pan. Mult. Lit. 1969) .......................................................2

*Haack v. City of Carson City*,
No. 3:11–cv–00353, 2012 WL 3638767 (D. Nev. Aug. 22, 2012)........................22

vi

*Hamilton v. Accu-tek*,
935 F. Supp. 1307 (E.D.N.Y. 1996)..........................................................................23

*Hanson v. Denckla*,
357 U.S. 235 (1958) ......................................................................................................8

*Hardy v. Pioneer Parachute Co.*,
531 F.2d 193, 195 (4th Cir. 1976)..............................................................................4

*Harper v. Johnson & Johnson*,
et al. (MDL 2738 ECF No. 120-3)............................................................................24

*Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*,
Inc., 964 F. Supp. 624 (D. Conn. 1997) ..................................................................21

*Helicopteros Nacionales de Colo., S.A. v. Hall*,
466 U.S. 408 (1984) ..............................................................................................5, 6, 7

*Henry v. Lake Charles Am. Press, LLC*,
566 F.3d 164 (5th Cir. 2009) ....................................................................................18

*Herman v. YellowPages.com, LLC*,
780 F. Supp. 2d 1028 (S.D. Cal. 2011) ......................................................................7

*Holmes v. Johnson & Johnson*,
N.D. Tex. 3:16-cv-03348..........................................................................................12

*Hufsmith v. Weaver*,
817 F.2d 455 (8th Cir. 1987) ....................................................................................21

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
335 F.3d 303 (4th Cir. 2003) ....................................................................................21

*Int'l Shoe v. Washington*,
326 U.S. 310 (1945) ..................................................................................................3, 8

*Inv. Co. Inst. v. U.S.*,
550 F. Supp. 1213 (D.D.C. 1982) ..............................................................................7

*J. McIntyre Machinery, Ltd. v. Nicastro*,
131 S. Ct. 2780 (2011) ................................................................................................8

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
615 F.3d 579, 584 (5th Cir. 2014)..............................................................................4

*Johnston v. Multidata Sys. Int'l Corp.*,
523 F.3d 602 (5th Cir. 2008) ......................................................................................4

36841719v.5

*Jones v. La. State Bar Ass'n*,
738 F. Supp. 2d 74 (D.D.C. 2010), *aff'd*, No. 10-5327, 2011 WL 11025624
(D.C. Cir. Oct. 3, 2011) ........................................................................................23

*Klinghoffer v. S.N.C. Achille Lauro*,
937 F.2d 44 (2d Cir. 1991) .....................................................................................7

*Kulko v. Super. Ct. for City & Cty. of S.F.*,
436 U.S. 84 (1978) ..................................................................................................9

*In re Linerboard Antitrust Litig.*,
No. 04-400, 2005 WL 1625040 (E.D. Pa. July 11, 2005) ......................................3

*La. Crisis Assistance Ctr. v. Marzano-Lesnevich*,
878 F. Supp. 2d 662 (E.D. La. 2012) ....................................................................16

*LA Taxi Coop., Inc. v. Indep. Taxi Owners Assocs. of LA*,
239 Cal. App. 4th 918 (2015) .........................................................................14, 15

*Lakin v. Prudential Secs., Inc.*,
348 F.3d 704 (8th Cir. 2003) ..................................................................................6

*Lala v. Frampton*,
No. 07–cv–02144, 2008 WL 4059874 (D. Colo. Aug. 28, 2008)..........................21

*Lamz v. Wells*,
938 So. 2d 792 (La. Ct. App. 2006) ......................................................................16

*Liberty Synergistics, Inc. v. Microflo Ltd.*,
718 F.3d 138 (2d Cir. 2013) ...........................................................................18, 20

*In re Lipsky*,
460 S.W. 3d 579 (Tex. 2015)................................................................................16

*Love Terminal Partners, L.P. v. City of Dallas, Tex.*,
527 F. Supp. 2d 538 (N.D. Tex. 2007) ................................................................22

*Lubben v. Johnson & Johnson*,
D.N.J. No. 3:16-cv-08842................................................................................11

*Matthews v. Brookstone Stores*,
469 F. Supp. 2d 1056 (S.D. Ala. 2007) ...............................................................10

*Mazzocco v. Lehavi*,
No. 14CV2112, 2015 WL 12672026 (S.D. Cal. Apr. 13, 2015) ..........................21

*McAlonan v. Tracy*,
  No. A-6034-07T2, 2011 WL 6125 (N.J. Super. Ct. App. Div., Mar. 16, 2010),
  *cert. denied*, 202 N.J (2010) ..................................................................................22

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  241 F.R.D. 435 (S.D.N.Y. 2007) ...............................................................................3

*Mgmt. Insights, Inc. v. CIC Enters., Inc.*,
  194 F. Supp. 2d 520 (N.D. Tex. 2001)........................................................................7

*Mitchell v. Clackamas River Water*,
  No. 3:16–cv–00537–HZ, 2016 WL 6471450 (D. Or. Oct. 31, 2016)....................................22

*Murphy USA, Inc. v. Rose*,
  No. 12-15-00197-CV, 2016 WL 5800263 (Tex. App. Oct. 5 2016).....................................16

*Nader v. The Dem. Nat'l Comm.*,
  555 F. Supp. 2d 137 (D.D.C. 2008), *aff'd on other grounds sub nom. Nader v.*
  *Dem. Nat'l Comm.*, 567 F.3d 692 (D.C. Cir. 2009) ............................................................22

*Nat'l Indus. Sand Ass'n v. Gibson*,
  897 S.W.2d 769 (Tex. 1995).......................................................................................10

*New York Jets LLC v. Cablevision Sys. Corp.*,
  2005 WL 2649330 (S.D.N.Y. Oct 17, 2005)................................................................6, 23

*Nygard Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) .................................................................................16

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007) .......................................................................................3

*Oneida Tribe of Indians of Wis. V. Harms d/b/a Worldshadow*,
  No. 05–C–0177, 2005 WL 2758038 (E.D. Wis. Oct. 24, 2005)...........................................22

*Oticon, Inc. v. Sebotek Hearing Sys., LLC*,
  865 F. Supp. 2d 501 (D.N.J. 2011) .............................................................................3

*Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp.*,
  297 F. App'x 773 (10th Cir. 2008) .............................................................................21

*Ploense v. Electrolux Home Prods., Inc.*,
  882 N.E.2d 653 (Ill. App. Ct. 2007).............................................................................10

*Price v. Stossel*,
  620 F.3d 992 (9th Cir. 2010) ...................................................................................18

ix

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ...................................................................................24

*Razorback Ready Mix Concrete Co., Inc. v. Weaver*,
   761 F.2d 484 (8th Cir. 1985) ...................................................................21

*Remick v. Manfredy*,
   238 F.3d 248 (3d Cir. 2001) .......................................................................4

*Riggs v. AHP Settlement Trust*,
   421 Fed. App'x 136 (3d Cir. 2011) ............................................................2

*Rio Props., Inc. v. Rio Intern. Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ...................................................................4

*Rivera v. 1st Databank, Inc.*,
   187 Cal. App. 4th 709 (2010) ..................................................................17

*Rivera v. Ballys Park Place, Inc.*,
   798 F. Supp. 2d 611 (E.D. Pa. 2011)........................................................3

*Royalty Network, Inc. v. Harris*,
   756 F.3d 1351 (11th Cir. 2014).........................................................18, 19

*Rupert v. Bond*,
   68 F. Supp. 3d 1142 (N.D. Cal. 2014)....................................................21

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ...................................................................................9

*Schofield v. Johnson & Johnson*,
   D.N.J. No. 3:16-cv-08331........................................................................12

*Sieber v. Campbell*,
   810 So. 2d 641, 644 (Ala. 2001) ...............................................................4

*Ex Parte Simpson*,
   36 So.3d 15 (Ala. 2009)....................................................................12, 14

*Simpson v. Johnson & Johnson*,
   2016 CA 1931 (D.C. Super. Ct.)............................................................12

*Sloss Indus. Corp. v. Eurisol*,
   488 F.3d 922 (11th Cir. 2007) ...................................................................4

*Snyder v. Johnson & Johnson*,
   D.N.J. No. 3:16-cv-08816........................................................................11

x

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ........................................................................21

*St. Jude Med. Inc. v. Leverenz*,
    No. 03–5170, 2004 WL 251839 (D. Minn. Feb. 9, 2004) ....................................22

*St. Louis v. Am. Tobacco Co.*,
    No. 982-09652, 2003 WL 23277277 (Mo. Cir. Dec. 16, 2003) .............................9

*Starr v. Bourdreaux*,
    978 So. 2d. 384 (La. Ct. App. 2007) ..............................................................16

*Structure Bldg. Corp. v. Abella*,
    377 N.J. Super. 467 (App. Div. 2005)..............................................................22

*Suburban Restoration Co. v. ACMAT Corp.*,
    700 F.2d 98 (2d Cir. 1983) ..........................................................................21

*Sugartown Worldwide LLC v. Shanks*,
    Civ. A. No. 14-5063, 2015 WL 1312572 (E.D. Pa. Mar. 24, 2015) ......................9

*Tarpley v. Keistler*,
    188 F.3d 788 (7th Cir. 1999) ........................................................................21

*Thinkstream, Inc. v. Rubin*,
    971 So. 2d 1092 (La. Ct. App. 2007) ..............................................................16

*Thorpe v. Johnson & Johnson*,
    D.N.J. No. 3:16-cv-08827.............................................................................11

*Tomaiolo v. Mallinoff*,
    281 F.3d 1 (1st Cir. 2002)............................................................................21

*Tuosto v. Philip Morris USA Inc.*,
    No. 05CIV.9384(PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) .................23

*Ex parte United Ins. Companies, Inc.*,
    936 So. 2d 1049 (Ala. 2006).........................................................................10

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965) ...................................................................................20

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
    No. 14–cv–04050, 2016 WL 524761 (N.D. Cal. Feb. 2, 2016)...........................21

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
    75 F.3d 147 (3d Cir. 1996) ............................................................................4

*Video Int'l Prod., Inc. v. Warner–Amex Cable Comm'cns, Inc.*,
858 F.2d 1075 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989).......................................21

*Walden. Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*,
757 F. Supp. 2d 904 (W.D. Mo. 2010).....................................................................................9

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) ..............................................................................................2, 8, 9

*We, Inc. v. City of Philadelphia*,
174 F.3d 322 (3d Cir. 1999) .....................................................................................................21

*Westfield Partners, Ltd. v. Hogan*,
740 F. Supp. 523 (N.D. Ill. 1990) ...........................................................................................21

*Williams v. Bowman Livestock Equip. Co.*,
927 F.2d 1128, 1131 (10th Cir. 1991)......................................................................................4

*Williams v. Johnson & Johnson*,
D.N.J. No. 3:16-cv-08738..........................................................................................................11

*World–Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ............................................................................................................4, 9

*In re Zofran (Onbansetron) Prods. Liab. Litig.*,
No. 1:15-cv-13760-FDS, 2016 WL 2349105 (D. Mass. May 4, 2016) ...................................2

**Statutes**

California's Anti-SLAPP Act .................................................................................................17

District of Columbia's Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.*.......................................11

D.C. Code Ann. § 16-5501(3) ...............................................................................................14

D.C. Code Ann. §16-5502(b) ........................................................................................... 12, 17

D.C. Code Ann. § 16-5505 .....................................................................................................15

D.C. Code § 16-5501(1)(A)....................................................................................................14

D.C. Code § 16-5501(1)(A)(i) ................................................................................................13

D.C. Code § 16-5501(1)(A)(ii) ...............................................................................................13

D.C. Code § 16-5501(1)(B).....................................................................................................14

D.C. Code Section 16-5502 ....................................................................................................12

DC Anti-SLAPP Act .................................................................................................. *passim*

District's Anti-SLAPP Act ........................................................................................ 15

Fla. Stat. Ann. § 48.193(1) ......................................................................................... 6

Fla. Stat. § 768.295 .................................................................................................... 16

Ind. Code § 34-7-7-1 *et seq.* .................................................................................... 16

Ky. Rev. Stat. Ann. § 454.210 ..................................................................................... 6

La. Code Civ. Proc. Ann. art. 971 ............................................................................. 16

Mass. Gen. Laws Ann. ch. 231 § 59H ...................................................................... 16

Mass. Gen. Laws ch. 223A, § 3 .................................................................................. 4

Md. Code Ann. Cts. & Jud. Proc. § 5-807 ................................................................. 16

Mo. Ann. Stat. § 506.500 ............................................................................................ 6

N.Y. Civ. Rights Law § 70-a & 6-a ........................................................................... 17

Nev. Rev. Stat. §§ 41.635–41.670 ............................................................................. 17

Nevada's anti-SLAPP act ........................................................................................... 20

Okla. Stat. tit. 12, § 1430 *et seq.* ........................................................................... 17

Sherman Act .............................................................................................................. 20

Vermont's anti-SLAPP Act ....................................................................................... 20

**Other Authorities**

California jurisprudence ............................................................................................ 15

Federal Rule 11 .......................................................................................................... 19

Federal Rule 56 .......................................................................................................... 19

Federal Rules 12 and 56 ............................................................................................ 19

Indiana Trial Rule 4.4(A) ............................................................................................ 6

N.Y. C.P.L.R. § 302(a) ............................................................................................... 6

Report of Committee on Public Safety and the Judiciary on Bill 18–893 (Nov. 18, 2010) ................................................................................................................... 15, 19

Rule 12(b)(2) ...................................................................................................................2

U.S. Constitution Due Process Clause ....................................................................1, 2

United States Constitution First Amendment ............................................ 1, 7, 20, 22

Plaintiffs allege that they or decedents developed ovarian cancer from Johnson & Johnson Baby Powder® and/or Shower to Shower® (the "Products").  Plaintiffs name the Johnson & Johnson entities as defendants because Johnson & Johnson Consumer, Inc., manufactured the Products.  Plaintiffs name Imerys Talc America, Inc. as a defendant because, for a period of time, it supplied the talc used as an ingredient in the Products.

A minority of Plaintiffs also name as a defendant Personal Care Products Council ("PCPC"), a non-profit trade association for the cosmetics industry.  PCPC does not design, manufacture, sell or regulate any of the Products or any other cosmetic products.  PCPC should be dismissed from this litigation because:

1.    Personal jurisdiction does not exist in the majority of lawsuits naming PCPC;

2.    Anti-SLAPP statutes preclude some of the lawsuits; and

3.    PCPC's alleged conduct is protected by the First Amendment under the *Noerr-Pennington* doctrine.

**I.    PERSONAL JURISDICTION OVER PCPC DOES NOT EXIST IN THE VAST MAJORITY OF LAWSUITS.[1]**

PCPC has no contacts and transacts no meaningful business in any jurisdiction other than Washington, DC.  PCPC has consented to personal jurisdiction for talc lawsuits filed and litigated in New Jersey.  Plaintiffs in other jurisdictions cannot meet their burden of establishing that personal jurisdiction exists over PCPC under any other state's long-arm statute, nor can Plaintiffs meet their burdens of establishing that personal jurisdiction exists over PCPC under the Due Process Clause of the U.S. Constitution.

For these reasons, the U.S. District Court for the Southern District of Illinois granted PCPC's motion to dismiss a talc lawsuit making the same allegations.  *See Cebulske v. Johnson & Johnson*, No. 14-cv-00627, 2015 WL 1403148, at *3 (S.D. Ill. Mar. 25, 2015), attached as

---

[1] Attached as Exhibit A is a list of pending lawsuits for which personal jurisdiction does not exist.

Exhibit B (holding that "Due process requires that a Defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state") (*citing Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014)).  PCPC likewise should be dismissed from the cases identified on Exhibit A, Column 1.

### A.    This Court Has Authority to Dismiss Lawsuits Based on Lack of Personal Jurisdiction.

PCPC's Omnibus Motion is properly before this Court.  "In a multidistrict litigation, a transferee court has personal jurisdiction over a defendant only if the transferor court would have had jurisdiction."  *In re Zofran (Onbansetron) Prods. Liab. Litig.*, No. 1:15-cv-13760-FDS, 2016 WL 2349105, at *3 (D. Mass. May 4, 2016).  MDL transferee courts have authority to resolve motions to dismiss for lack of personal jurisdiction.  *See, e.g.*, *In re Gypsum Wallboard*, 302 F. Supp. 794, 794  (Jud. Pan. Mult. Lit. 1969) (holding that motions to "dismiss for lack of jurisdiction are being routinely considered by courts to which multidistrict litigation has previously been transferred"); *Riggs v. AHP Settlement Trust*, 421 Fed. App'x 136, 137 (3d Cir. 2011) (noting that "[t]he District Court . . . dismissed the complaint against [defendant] for lack of personal jurisdiction pursuant to Rule 12(b)(2)").

Personal jurisdiction is a two-step analysis.  MDL courts first determine whether jurisdiction exists pursuant to the long-arm statute of the state where the transferee court is located or where a lawsuit filed directly in the MDL court will be transferred following pretrial proceedings.  If there is long-arm jurisdiction (or the forum state's long-arm statute is coterminous with federal due process considerations), then the MDL court determines whether the exercise of jurisdiction violates the principles of the Due Process Clause of the U.S. Constitution.  In determining whether personal jurisdiction exists under the second part of the

2

analysis, an MDL transferee court analyzes the law of its Circuit. *See, e.g.*, *In re Linerboard Antitrust Litig.*, No. 04-400, 2005 WL 1625040, at *4 (E.D. Pa. July 11, 2005); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007).

**B.    Plaintiffs Cannot Meet Their Burden of Establishing Personal Jurisdiction.**

Plaintiffs bear the burden of making a *prima facie* showing that the Court has personal jurisdiction over PCPC. *See Allaham v. Naddaf*, 635 Fed. App'x 32, 36–37 (3d Cir. 2015); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). To meet their burden, "plaintiff[s] may not rely on the bare pleadings alone in order to withstand a defendant's . . . motion to dismiss for lack of personal jurisdiction; instead, the plaintiff[s] must present competent evidence, such as sworn affidavits, to support [their] jurisdictional allegations." *Rivera v. Ballys Park Place, Inc.*, 798 F. Supp. 2d 611, 615 (E.D. Pa. 2011) (quotation marks and citation omitted).

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 506 (D.N.J. 2011). "[T]he central inquiry is whether the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

Under the Due Process Clause, personal jurisdiction may be established under either "general" or "specific" theories. *Allaham*, 635 Fed. App'x at 37–38 (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* at 38 (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). "A court has specific

3

jurisdiction when a plaintiff's claim arises from a defendant's actions within the forum state, such that the defendant could 'reasonably anticipate being haled into the state's courts.'" *Id.* (citing *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))).

### 1.   **Plaintiffs Cannot Establish Long-Arm Jurisdiction.**

Exhibit C sets forth the relevant portions of the state long-arm statutes for the lawsuits identified on Exhibit A.  Ten of the relevant states have long-arm statutes that are expressly, or by operation of case law, coextensive with federal due process analysis.  Accordingly, courts collapse the two inquiries into the federal due process analysis.  Those states are:  **Alabama**: *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); **California**: *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001); **Louisiana**:  *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2014); **Maryland**: *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003); **Massachusetts**:[2] *Copia Comm'cns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016); **Nevada**: *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); **Oklahoma**: *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991); **Pennsylvania**:  *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); **South Carolina**:  *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976); *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 657 (4th Cir. 1989); and **Texas:** *See, e.g.*, *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  Thus, the personal jurisdiction inquiry in those states is the same as the federal due process inquiry discussed below in Parts I.B.2 and 3.

---

[2] The First Circuit expressed a possible split regarding this interpretation.  However, as with the other states discussed below, none of the eight factors set forth in the Massachusetts long arm statute apply to PCPC.  Mass. Gen. Laws ch. 223A, § 3.

Other relevant states have long-arm statutes that have varying requirements.  In each instance, these long-arm statutes do not confer jurisdiction here.  PCPC is a non-profit trade association that represents the interests of the cosmetic and personal care products industry.  *See* Declaration of Mark A. Pollak ("Decl.") ¶ 4 (attached as Exhibit D).  PCPC is the successor or continuation of the Cosmetic, Toiletry, and Fragrance Association ("CTFA").  Decl. ¶ 4.  PCPC does not design, test, manufacture, market, sell or regulate any cosmetic or personal care products containing talc, or any other chemical agreement.  Decl. ¶¶ 4, 5.  PCPC is not licensed to do business in any of the forum states.  Decl. ¶ 6.  PCPC has no agent for service of process in any of the forum states.  Decl. ¶ 7.  PCPC neither owns nor leases property, nor holds liens or mortgages on any real property in any of the forum states.  Decl. ¶ 8.  PCPC has no address, phone number, bank account, or office in any of the forum states.  Decl. ¶ 9.  None of PCPC's employees are based in any of the forum states nor do PCPC's employees regularly travel to or conduct business in any of the forum states on PCPC's behalf.  Decl. ¶ 10.  PCPC has never brought a lawsuit in a court in any of the forum states.  Decl. ¶ 11.  PCPC maintains no records or any other property in any of the forum states.  Decl. ¶12.  Finally, PCPC has not lobbied any state governments in relation to talc.  Decl. ¶ 19.

As to the lawsuits transferred from **Florida,** its long-arm statute on general personal jurisdiction extends to the limits imposed by the Due Process Clause.  *See Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010).  Although PCPC holds an annual meeting in Florida, as discussed in Part II.B.2, that does not constitute being "at home in the forum."  *See Helicopteros Nacionales de Colo., S.A. v. Hall*, 466 U.S. 408, 416 (1984).  Florida's specific jurisdiction long-arm statute extends personal jurisdiction to operating a business in Florida, committing a tortious act there, having or using real property there, and causing injury to a person by manufacturing or

selling a product used in Florida.  Fla. Stat. Ann. § 48.193(1) (quoted in Exhibit C).  PCPC has

not engaged in any of those acts.  *See* Decl. ¶¶ 5,6, 8, 9, 10, 14, 19.

        As to the lawsuits transferred from and the direct-filed lawsuit where Plaintiff's home

state is **Indiana**, **Kentucky**, **Missouri** or **New York**, the long-arm statutes of those states set

forth various factors for establishing personal jurisdiction over a non-resident, including doing

business in the state, causing injury by manufacturing or selling a product used in the state, or

having or using real property there.  Indiana Trial Rule 4.4(A); Ky. Rev. Stat. Ann. § 454.210;

Mo. Ann. Stat. § 506.500; N.Y. C.P.L.R. § 302(a) (each is quoted in Exhibit C).  None of those

acts apply here.  *See* Decl. ¶¶ 5, 6, 8, 9, 10, 19.  Accordingly, under their long-arm statutes,

personal jurisdiction does not exist in Indiana, Kentucky, Missouri, and New York, and the Court

need not continue its analysis as to the lawsuits filed in those states.  With respect to Florida,

there is no specific jurisdiction under that state's long-arm statute.  And, as discussed in the next

part, there is no general jurisdiction in Florida or any other states.

### 2.    General Jurisdiction Does Not Exist Over PCPC.

        To be subject to general jurisdiction, the nonresident corporation must have developed

"continuous and systematic general business contacts" with the forum state "so as to render [it]

essentially at home in the forum."  *Helicopteros*, 466 U.S. at 416; *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Because it requires extensive and

sustained contacts, "most courts[ ] are hesitant to exercise general jurisdiction over non-resident

defendants."  *Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 708 (8th Cir. 2003) (quotation marks

omitted); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 758 (2014) ("general jurisdiction has

come to occupy a less dominant place in the contemporary scheme."); *Goodyear*, 564 U.S. at

925 ("[S]pecific jurisdiction has become the centerpiece of modern jurisdiction theory, while

general jurisdiction plays a reduced role." (quotation marks omitted)).

General personal jurisdiction over PCPC plainly does not exist as to the forum states at issue. The Pollak Declaration establishes that PCPC has no or few business contacts with the forum states, much less the sort of contacts that are "so constant and pervasive as to render it essentially at home" in those states. *Daimler*, 134 S. Ct. at 751 (quotation marks and brackets omitted). *See* Decl. ¶¶ 5–19. Having a meeting once a year in Florida, occasionally lobbying in Pennsylvania, and having contracts with a publisher and a warehouse in Maryland do not render PCPC "essentially at home" in those forums.[3] *Helicopteros*, 466 U.S. at 416; *see also Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015) ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").

In *Daimler*, the plaintiff, who was seeking to recover for injuries sustained in a foreign jurisdiction, sued a nonresident corporation in California based on general personal jurisdiction. 134 S. Ct. at 751–52. The plaintiff argued that general jurisdiction existed because one of the defendant's subsidiaries conducted business in California. *Id.* at 752. The Supreme Court rejected the argument, holding that, even if the subsidiary was at home in California for purposes of general jurisdiction and its conduct could be attributed to the defendant, "there would still be no basis to subject [the defendant] to general jurisdiction in California, for [its] slim contacts with the State hardly render it at home there." *Id.* at 760. As emphasized by *Daimler*, the

---

[3] As discussed below in Part III, PCPC's lobbying activities are protected by the First Amendment. To protect this core constitutional right, courts have fashioned the "government contacts" doctrine, which forbids the exercise of general jurisdiction based on mere lobbying activities. *See, e.g., Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991); *Inv. Co. Inst. v. U.S.*, 550 F. Supp. 1213, 1216–17 (D.D.C. 1982); *Herman v. YellowPages.com, LLC*, 780 F. Supp. 2d 1028, 1034 (S.D. Cal. 2011); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 528 (N.D. Tex. 2001).

relevant test for determining whether a defendant is subject to general jurisdiction is whether the defendant *itself* has "affiliations with the [forum] State . . . so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 761 (quotation marks omitted).

Because Plaintiffs cannot establish that PCPC is essentially "at home" anywhere other than Washington, D.C., there is no basis to exercise general jurisdiction.

### 3.   Specific Jurisdiction Does Not Exist Over PCPC.

The exercise of specific personal jurisdiction is appropriate only if:  (1) "the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), (2) the cause of action arises out of or relates to the defendant's activities within the state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and (3) exercising jurisdiction over the defendant does "not offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316.  Only by ***purposefully*** establishing contacts does a defendant "submit[ ] to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State."  *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality op.).

Plaintiffs cannot meet their burden of showing that PCPC purposefully established contacts in the forum states.  The Complaints generally allege that PCPC formed a Talc Interested Party Task Force ("TIPTF"), but none allege that PCPC formed the TIPTF in the forum states.  Nor do Plaintiffs allege that PCPC or the TIPTF made any statements in, or directed toward, any of the forum states.  Plaintiffs thus fail to establish the sort of connection needed for specific jurisdiction to exist.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2015) (jurisdiction "must arise out of contacts that the defendant *himself* creates . . . with the forum State itself.") (quotation marks omitted); *Burger King*, 471 U.S. at 475 (same).

Moreover, contacts that other defendants may have with the transferee states cannot be the basis for jurisdiction. "The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Indeed, the Supreme Court recently reaffirmed that a plaintiff cannot "satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties and the forum State." *Walden*, 134 S. Ct. at 1122 (parenthesis omitted); *see also World-Wide Volkswagen*, 444 U.S. at 298 (same). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for jurisdiction over him." *Id.* at 1122; *see also Kulko v. Super. Ct. for City & Cty. of S.F.*, 436 U.S. 84, 94 (1978) (same). The Due Process Clause does not permit the exercise of personal jurisdiction over a nonresident defendant based solely on the conduct of alleged third-party "co-conspirators." This principle is exemplified here, where the Complaints do not allege that any "conspiracy" activities took place in any of the forum states. *See, e.g.*, *Sugartown Worldwide LLC v. Shanks*, Civ. A. No. 14-5063, 2015 WL 1312572, at *4 (E.D. Pa. Mar. 24, 2015) (quoting *Doe v. Hesketh*, 15 F. Supp. 3d 586, 595 (E.D. Pa. 2014)) ("It is not enough that the non-forum co-conspirator is part of the conspiracy as plaintiff must plead the defendant's involvement with specificity.").

Although the Court need look only to Third Circuit law, courts in the forum states have long adhered to these bedrock due process principles traceable from *International Shoe* to *Walden*. *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 912 n.1 (W.D. Mo. 2010) ("[I]t does not appear that the law imposes personal jurisdiction on a party based solely on a co-conspirator's actions."); *St. Louis v. Am. Tobacco Co.*, No. 982-09652, 2003 WL 23277277, at *7 (Mo. Cir. Dec. 16, 2003) ("[P]ersonal jurisdiction cannot constitutionally be obtained over [nonresident] based on the imputed forum-related conduct of other, non-affiliated

Defendant companies alleged to be 'co-conspirators'. . .  Rather, personal jurisdiction can only

properly be based on [nonresident's] own forum-related conduct."); *Ploense v. Electrolux Home*

*Prods., Inc.*, 882 N.E.2d 653, 668–69 (Ill. App. Ct. 2007) (no personal jurisdiction based on

"conspiracy theory over a nonresident trade association with no contacts in state); *Nat'l Indus.*

*Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("We decline to recognize the assertion

of personal jurisdiction over a nonresident defendant based solely upon the effects or

consequences of an alleged conspiracy." ); *Conwill v. Greenberg Traurig, L.L.P.*, No. 09-4365,

2009 WL 5178310, at *4–5 (E.D. La. Dec. 22, 2009) ("[T]he Fifth Circuit has never adopted a

conspiracy theory of jurisdiction.") (citation and quotation marks omitted); *Matthews v.*

*Brookstone Stores*, 469 F. Supp. 2d 1056, 1066 (S.D. Ala. 2007) (citing *Ex parte United Ins.*

*Cos., Inc.*, 936 So. 2d 1049 (Ala. 2006)) (requiring plaintiff to plead with particularity the

conspiracy and overt acts taken within Alabama).

    As one federal court succinctly explained in dismissing a lawsuit with similar allegations

against another trade association also located solely in the District of Columbia:

> [T]here is not a specific act enumerated by Plaintiffs that [the trade association]
> committed in, or directed at, [the forum state] that gave rise to their Complaint.
> General allegations that the "Defendants," (which would generically include [the
> trade association]) "intentionally and deliberately withheld warnings and
> concealed information to the consuming public and to Plaintiffs concerning the
> severity of the products' toxic effects," and "conducted a sales and marketing
> campaign to promote the sale of the aforementioned products and willfully
> deceived plaintiffs, and the general public, as to the health risks in using the
> aforementioned product," even if true . . . **does not establish personal**
> **jurisdiction over [the trade association] because it does not sell, market, or**
> **promote any of the products referenced in the Complaint—in [the forum**
> **state], or anywhere else**.  The Complaint makes general allegations but fails to
> specify which particular defendant did what, or when.  The "consuming public"
> includes "millions of individuals" throughout the United States.  Such a claim
> does not allege activities directed at or conducted in [the forum state].  This is not
> a case where this Defendant manufactures or sells products which it should know
> will likely be purchased in [the forum state].

*Graziose v. Am. Home Prods. Corp.*, 161 F. Supp. 2d 1149, 1153 (D. Nev. 2001) (emphasis added); *see also Cebulske*, No. 14-cv-00627, 2015 WL 1403148, attached as Exhibit B (dismissing PCPC from talc lawsuit).

In short, Plaintiffs' vague and conclusory allegations provide no basis to exercise personal jurisdiction over PCPC.

## II.    ANTI-SLAPP STATUTES PRECLUDE CERTAIN LAWSUITS AGAINST PCPC.

Plaintiffs attempt to compensate for their weak causation argument by crafting vague conspiracy, fraud and related claims.  As to Plaintiffs from Washington, D.C., California, Florida, Indiana, Louisiana, Maryland, Massachusetts, Nevada, New York, Oklahoma, and Texas, their lawsuits should be dismissed based on anti-SLAPP statutes protecting the very conduct that Plaintiffs allege gives rise to liability.[4]  Because, as discussed above, lawsuits filed by Plaintiffs in jurisdictions other than Washington, D.C. and New Jersey should be dismissed based on lack of personal jurisdiction, this Part focuses on the District of Columbia's Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.*

Only a few paragraphs in Plaintiffs' complaints discuss PCPC's alleged conduct.  Those paragraphs generally allege that PCPC formed a committee for the purpose of lobbying the government and influencing regulatory bodies regarding the safety of talc.  *See, e.g.*, ECF No. 82 (Plaintiffs' Master Long Form Complaint), ¶¶ 33–35, 160, 207; *Lubben v. Johnson & Johnson*, D.N.J. No. 3:16-cv-08842, ¶¶ 22, 101; *Snyder v. Johnson & Johnson*, D.N.J. No. 3:16-cv-08816, ¶¶ 26, 110; *Thorpe v. Johnson & Johnson*, D.N.J. No. 3:16-cv-08827, ¶¶ 26, 115; *Bier v. Johnson & Johnson*, E.D. La. 2:16-cv-15961, ¶¶ 26, 67; *Davis v. Johnson & Johnson*, D.N.J. No. 3:16-cv-07844, ¶¶ 26, 114; *Williams v. Johnson & Johnson*, D.N.J. No. 3:16-cv-08738, ¶¶ 33,

---

[4] Exhibit A, Column 2 identifies the lawsuits that should be dismissed based on anti-SLAPP acts.

123; *Schofield v. Johnson & Johnson*, D.N.J. No. 3:16-cv-08331, ¶¶ 33, 123; *Ferrell v. Johnson & Johnson*, D.N.J. No. 3:16-cv-08812, ¶¶ 26, 110; *Holmes v. Johnson & Johnson*, N.D. Tex. 3:16-cv-03348, ¶¶ 34, 132.  In other words, the Complaints allege that PCPC advocated on issues of public interest.  These paragraphs provide the sole basis for the causes of action asserted against PCPC.

The DC Anti-SLAPP Act prohibits lawsuits that target constitutionally protected activity arising out of "acts in furtherance of the right of advocacy on issues of public interest."  D.C. Code Ann. §16-5502(b).  Because PCPC's alleged activities arise solely from PCPC's advocacy on issues of public interest, **Plaintiffs bear the burden of demonstrating, at this stage in the litigation, that they are "likely to succeed on the merits**."  *Id.* (emphasis added).  To overcome this burden, they must present more than mere allegations.  *Competitive Enter. Inst. v. Mann*, No. 14–CV–101, NO. 14–CV–126, 2016 WL 7404870, at *11 (D.C. Dec. 22, 2016).  They must present evidence that would be sufficient to allow a properly instructed jury reasonably to find in Plaintiffs' favor.  *Id.*  They cannot.  As a result, less than three weeks ago, in a talc-ovarian cancer case, the D.C. Superior Court granted PCPC's anti-SLAPP motion, dismissing PCPC and awarding it attorneys' fees.  *Simpson v. Johnson & Johnson*, 2016 CA 1931 B (D.C. Super. Ct. Jan 13, 2017).[5]

**A.**     **The Claims Against PCPC Relate Solely to Protected Activity.**

D.C. Code Section 16-5502 provides:

(a)     A party may file a special motion to dismiss any claim arising from an act in furtherance of the right of advocacy on issues of public interest within 45 days after service of the claim.

(b)     If a party filing a special motion to dismiss under this section makes a prima facie showing that the claim at issue arises from an

_____

[5] The *Simpson* Court's ruling from the bench during the January 13, 2017 hearing is attached in the transcript excerpt attached as Exhibit E.

> act in furtherance of the right of advocacy on issues of public
> interest, then the motion shall be granted unless the responding
> party demonstrates that the claim is likely to succeed on the merits,
> in which case the motion shall be denied.

The Act arose in recognition that certain constitutionally protected activity, such as the right to petition the government, is sacrosanct and must be safeguarded.  *See, e.g.*, *Forras v. Rauf*, 39 F. Supp. 3d 45, 53 (D.D.C. 2014), *aff'd on other grounds*, 812 F.3d 1102 (D.C. Cir. 2016) (citations and quotations omitted) (explaining reasons for "broad protections afforded by the Act").  To "make a prima facie showing," a movant must show that the claim arises from "an act in furtherance of the right of advocacy" "on issues of public interest."  Here, Plaintiffs allege that PCPC petitioned "regulatory bodies" regarding the "safety of talc."  ECF No. 82 (Plaintiffs' Master Long Form Complaint and Jury Demand), ¶ 34.  The right to petition the government on issues of public interest is precisely the type of activity that the Act protects.

The Act defines an "[a]ct in furtherance of the right of advocacy on issues of public interest" in three ways, any one of which is sufficient.  An act in furtherance of the right of advocacy includes "[a]ny written or oral statement" made "[i]n connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  D.C. Code § 16-5501(1)(A)(i).  The Complaints allege that PCPC formed the Talc Interested Party Task Force in response to the United States National Toxicology's study regarding the safety of talc and that PCPC submitted scientific reports to governmental agencies.  ECF No. 82 (Plaintiffs' Master Long Form Complaint), ¶¶ 33–34, 160.  This alleged conduct constitutes an act in furtherance of the right of advocacy.

The statute also defines an "[a]ct in furtherance of the right of advocacy on issues of public interest" to include a "written or oral statement" made in "a place open to the public or a public forum in connection with an issue of public interest."  D.C. Code § 16-5501(1)(A)(ii).

13

The Complaints allege that PCPC released information regarding the safety of talc to the public. ECF No. 82 (Plaintiffs' Master Long Form Complaint), ¶ 34.  This allegation also constitutes an act in furtherance of the right of advocacy.  *See, e.g.*, *Farah v. Esquire Magazine*, 863 F. Supp. 2d 29, 38 (2012) (*quoting* D.C. Code § 16-5501(1)(A)) (holding that Internet post qualifies as "'written . . . statement'" made in a "'place open to the public or a public forum.'"); *Simpson* (Ex. E) at 39.

The statute further defines an "[a]ct in furtherance of the right of advocacy" to include "[a]ny other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest." D.C. Code § 16-5501(1)(B).  The Complaints allege that PCPC both petitioned the government and communicated with the public regarding the safety of talc.  ECF No. 82 (Plaintiffs' Master Long Form Complaint), ¶¶ 34, 160.  This third, "catch-all" definition of an act in furtherance of the right of advocacy also applies here.

The Act defines an "issue of public interest" as "an issue related to health or safety; environmental, economic, or community well-being; the District government; a public figure; or a good, product, or service in the market place."  D.C. Code Ann. § 16-5501(3).  An "issue of public interest" "shall not be construed to include private interests, such as statements directed primarily toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance."

In *Simpson*, as here, plaintiffs argued that PCPC was speaking regarding a private rather than public interest.  The court rejected that argument.  The Honorable Marisa J. Demeo, citing *Choose Energy, Inc. v. Am. Petroleum Inst.*, 87 F. Supp. 3d 1218 (N.D. Cal. 2015) and *LA Taxi Coop., Inc. v. Indep. Taxi Owners Assocs. of LA*, 239 Cal. App. 4th 918 (2015), recognized the

14

difference between "when a trade association is promoting a specific product or the benefits of a specific product versus when a trade association is speaking more generally about products and the health and safety of those products as opposed to a specific commercial product named." Ex. E at 38–39.[6]

The court held that PCPC made a *prima facie* "showing that its alleged acts were made in furtherance in the right of advocacy on issues of public interest." Ex. E at 39. PCPC "is a nonprofit trade association [that] does not manufacture, design or sell any products." *Id.* "As a result, PCPC does not have . . . a commercial interest to protect." *Id.* Accordingly, "PCPC's own speech is not commercial in nature." *Id.* at 40. Furthermore, "the safety of talc is clearly an issue related to health or safety." *Id.* As a result, the court dismissed PCPC with prejudice and awarded it attorneys' fees. *Id.* at 51, 53.

Even if PCPC's actions served some interests of a minority of its membership, that is insufficient to place PCPC's advocacy in the realm of "private interests." Notably, Plaintiffs do not allege that PCPC made any representations regarding a particular product. And, the Act precludes only those in the business of selling goods and services from invoking its protections. D.C. Code Ann. § 16-5505. If the D.C. legislature wanted, it could have precluded trade

---

[6] District of Columbia courts rely upon California case law for guidance in interpreting the District's Anti-SLAPP Act. In advance of promulgating the Act, the District of Columbia Council recognized that the statute "follows the model set forth in a number of other jurisdictions." Report of Committee on Public Safety and the Judiciary on Bill 18–893 (Nov. 18, 2010), at 1. At the time, "approximately 28 jurisdictions" had such a model. *Id.* at 3. Currently, of all the jurisdictions, California has the most robust jurisprudence concerning an anti-SLAPP motion. In light of this, and given the dearth of case law in the District of Columbia, its courts will defer to the Council's Committee Report, which favors utilizing California for guidance. *See Dist. of Columbia v. Place*, 892 A.2d 1108, 1113 (D.C. 2006); *Carter v. State Farm Mut. Auto. Ins. Co.*, 808 A.2d 466, 477 (D.C. 2002). In fact, the DC Court of Appeals recently turned to California jurisprudence in analyzing and interpreting DC's Anti-SLAPP Act. *Mann*, 2016 WL 7404870, at *8–9, *13 n.30, *14 n.31, *15 n.32.

organizations or any entity tangentially related to a commercial product.  It did not.  The unambiguous language of the statute should be afforded its plain meaning.

The Complaints allege that PCPC has a "direct pecuniary interest" in defending the safety of talc because it receives dues that are calculated, in part, based on member sales.  ECF No. 82 (Plaintiffs' Master Long Form Complaint), ¶ 34.  However, the Complaint is devoid of any facts that suggest that PCPC's lobbying efforts were motivated, even in part, by any purported interest in increasing dues.  Nor do the Complaints contain facts to suggest that the regulation of talc would have any effect on the amount of dues paid by its members.  In fact, any change in talc sales would have a *de minimis* effect on the amount of dues that PCPC collects.  Decl. ¶ 20.

The same result is mandated by anti-SLAPP statutes in California, Florida, Indiana, Louisiana, Maryland, Massachusetts, Nevada, New York, Oklahoma and Texas.  Exhibit F sets forth the relevant anti-SLAPP statutes.  In California, for example, courts have conferred anti-SLAPP protection on trade associations, reasoning that "the statute protects both private and corporate speech . . . and that an issue of public interest 'is any issue in which the public is interested.'"  *Choose Energy, Inc.*, 87 F. Supp. 3d at 1218 (quoting *Nygard Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1043 (2008)); *see also La. Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662 (E.D. La. 2012) (applying La. Code Civ. Proc. Ann. art. 971); *Starr v. Bourdreaux*, 978 So. 2d 384, 388–89 (La. Ct. App. 2007); *Thinkstream, Inc. v. Rubin*, 971 So. 2d 1092, 1100 (La. Ct. App. 2007); *Lamz v. Wells*, 938 So. 2d 792, 796 (La. Ct. App. 2006); *In re Lipsky*, 460 S.W. 3d 579, 590 (Tex. 2015); *Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *2 (Tex. App. Oct. 5 2016); Fla. Stat. § 768.295; Fla. Stat. § 768.295; Ind. Code § 34-7-7-1 *et seq.*; Md. Code Ann. Cts. & Jud. Proc. § 5-807; Mass. Gen. Laws Ann. ch.

231 § 59H; Nev. Rev. Stat. §§ 41.635–41.670; N.Y. Civ. Rights Law § 70-a & 6-a.; Okla. Stat. tit. 12, § 1430 *et seq.*

Even if it were a for-profit corporation, PCPC still would be entitled to anti-SLAPP protection.  In *Rivera v. 1st Databank, Inc.*, 187 Cal. App. 4th 709 (2010), a for-profit publishing company sold a drug monograph related to the antidepressant Paxil.  *Id.* at 713.  The complaint alleged that the decedent relied upon the monograph when purchasing Paxil at a Costco pharmacy.  *Id.*  The court held that California's Anti-SLAPP Act protected the publishing company.  The court reasoned that the monograph related to a matter of public interest: treatment for depression.  *Id.* at 716.  That the defendant was a for-profit company that may have been motivated by increasing sales was of no moment.  "The statements in the monograph are about neither defendant's business nor plaintiffs'; the monograph discusses Paxil, the product of a drug manufacturer.  In addition , the statements were not made to sell defendant's services or goods."  *Id.* at 718.

In short, Plaintiffs' claims against PCPC are the type of claims encompassed by anti-SLAPP acts.  The claims are based on PCPC's advocacy on an issue of public interest, the safety of talc.  Because PCPC has established a *prima face* case that the claims "arise[] from an act in furtherance of the right of advocacy on issues of public interest, then the motion [to dismiss] shall be granted unless [Plaintiffs] demonstrates that [their claims are] likely to succeed on the merits. . . . "  D.C. Code § 16-5502(b).

**B.**     **Plaintiffs Cannot Meet Their High Burden of Establishing the Likelihood of Success on the Merits.**

To avoid dismissal, Plaintiffs have the burden of establishing that their claims are "likely to succeed on the merits."  *Id.*  Courts have interpreted this standard as being "comparable to that used on a motion for judgment as a matter of law."  *Forras*, 39 F. Supp. 3d at 54; *see also Mann*,

2016 WL 7404870, at *15 n.32. A plaintiff, therefore, "'must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Forras*, 39 F. Supp. 3d at 54 (citation omitted). That is, the plaintiff must demonstrate in her favor "whether a jury properly instructed on the applicable legal and constitutional standards could reasonably find that the claim is supported in light of the evidence that has been produced or proffered in connection with the motion." *Mann*, 2016 WL 7404870, at *11. "If the plaintiff fails to present a sufficient legal basis for the claims or if the evidence offered is insufficiently substantial to support a judgment in favor of the plaintiff, then the defendant's anti-SLAPP motion should be granted." *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1188 (C.D. Cal.), *aff'd*, 462 F. App'x 709 (9th Cir. 2011) (relied on by *Forras*, 39 F. Supp. 3d at 54).

For the reasons discussed below in Part III, Plaintiffs cannot meet their high burden of establishing likely success on the merits.

## C.   The Court Should Apply the Anti-SLAPP Statutes.

There is split concerning whether a federal court exercising diversity jurisdiction may apply a state's anti-SLAPP act. The majority view, including from the neighboring Second Circuit, is that a federal court may apply anti-SLAPP acts. *See, e.g.*, *Liberty Synergistics, Inc. v. Microflo Ltd.*, 718 F.3d 138, 143–44 (2d Cir. 2013); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (noting that federal application of various provisions of Nevada's anti-SLAPP law "seem[s] to us unproblematic"); *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010); *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 168–69 (5th Cir. 2009). *But see Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015); *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1361–62 (11th Cir. 2014).

The majority's view should carry the day for three reasons.  First, the D.C. Circuit declined to apply the Act on the basis that it created an "additional hurdle a plaintiff must jump over to get to trial" given that the "Act's likelihood of success standard is different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56." *Abbas*, 783 F.3d at 1334–35.  Twenty months later, the D.C. Court of Appeals disagreed with this conclusion, finding the Act's standard to be identical to that of Federal Rule 56:

> *Abbas* recognized that at the time, this court "has never interpreted the D.C. Anti–SLAPP Act's likelihood of success standard to simply mirror the standards imposed by" Federal Rule 56.  783 F.3d at 1335.  We do so now.  This court's interpretation of the standard applicable to the special motion to dismiss under District of Columbia law will no doubt factor into future analysis of the dicta in *Abbas* concerning the applicability of the Anti–SLAPP Act in litigation brought in federal courts.

*Mann*, 2016 WL 7404870, at *15 n.32.[7]

Second, the holding from *Royalty Network* is limited to a narrow circumstance.  There, the Eleventh Circuit declined to apply Georgia Anti–SLAPP statute's verification requirement because it was procedural and conflicted with Federal Rule 11, which does not require verification.  756 F.3d at 1362.  As the Eleventh Circuit noted, "Georgia's anti-SLAPP statute is distinct from the anti-SLAPP statues of California, Louisiana, and Maine in that it attempts to effectuate its deterrent purpose through a verification requirement.  The California, Louisiana, and Maine provisions do not require a complaint to be verified, and the court of appeals considering those statutes were therefore not presented with a potential conflict between the state laws and Rule 11. . . .  Accordingly, the First, Fifth, and Ninth Circuits had no occasion to address the question we consider in this case."  *Id.*

---

[7] Although the D.C. Circuit described the Act as procedural, the D.C. Council stated otherwise, noting that the Act incorporates "substantive rights that allow a defendant to more expeditiously, and more equitably, dispense of a SLAPP."  *Compare Abbas*, 783 F.3d at 1335, *with* Report of Committee on Public Safety and the Judiciary on Bill 18–893 (Nov. 18, 2010), at 1.

Finally, in addition to the Second Circuit's ruling in *Liberty Synergistics*, two district

courts in the Second Circuit have applied a state's anti-SLAPP act. *See, e.g.*, *Adelson v. Harris*,

973 F. Supp. 2d 467, 493 n.21 (E.D.N.Y. 2013) (applying Nevada law to hold that Nevada's

anti-SLAPP act is substantive and thus should be applied in federal court); *Bible & Gospel Trust*

*v. Twinam*, No. 1:07-cv-17, 2008 WL 5245644, at *1 (D. Vt. Dec. 12, 2008) (applying

Vermont's anti-SLAPP Act because it did not directly conflict with the Federal Rules).

## III.   **PCPC'S CONDUCT IS PROTECTED BY THE FIRST AMENDMENT.**

The claims against PCPC arise from PCPC's lobbying and public relations activities.

Those claims fail because the First Amendment of the United States Constitution and

specifically, the *Noerr-Pennington* doctrine, preclude liability for such activities.

The *Noerr-Pennington* doctrine takes its name from two cases decided by the United

States Supreme Court, *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127

(1961) (railroads' "conspiracy" campaign designed to influence passage of law could not form

basis for Sherman Act liability), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657

(1965) (mine workers' attempt to influence public officials did not violate law).  These cases

arose in the antitrust context and held that liability could not be imposed for the exercise of

constitutional rights, such as engaging in a publicity campaign or lobbying efforts.  The Supreme

Court reasoned that laws "tailored as they are for the business world, are not at all appropriate for

application in the political arena."  *Noerr*, 365 U.S., at 141.  The *Noerr-Pennington* doctrine thus

protects two types of action: injuries from the petitioning itself; and injuries caused by

government action which results from the petitioning.  *A.D. Bedell Wholesale Co. v. Philip*

*Morris Inc.*, 263 F.3d 239, 251 (3d Cir. 2001).

Although the *Noerr-Pennington* doctrine arose in the context of antitrust, the U.S.

Supreme Court has extended the doctrine beyond antitrust cases.  *See, e.g.*, *Bill Johnson's Rests.*,

*Inc. v. NLRB*, 461 U.S. 731 (1983); *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002).  And, numerous courts have extended *Noerr-Pennington* protection to tort claims.  *See, e.g.*, *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 327 (3d Cir. 1999); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988); *Video Int'l Prod., Inc. v. Warner–Amex Cable Comm'cns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989) ("there is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust.").  In other talc litigation, plaintiffs have attempted to limit the *Noerr-Pennington* doctrine outside of the antitrust and labor contexts.  That attempt fails, as scores of federal and states courts have extended the *Noerr-Pennington* doctrine beyond the context of antitrust immunity.[8]

"The application of Noerr-Pennington is a question of law."  *IGEN Int'l Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir, 2003) (citations omitted).  Numerous courts have applied the *Noerr Pennington* doctrine at the motion to dismiss stage.[9]

---

[8] Indeed the majority of circuit courts have either affirmatively extended the *Noerr-Pennington* doctrine beyond antitrust cases or recognized such an extensions. *See, e.g.*, *Tomaiolo v. Mallinoff*, 281 F.3d 1, 11 (1st Cir. 2002); *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 159 (3d Cir. 2001); *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003); *Video*, 858 F.2d at 1084 (5th Cir. 1988); *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298–99 (6th Cir. 1992); *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999); *Hufsmith v. Weaver*, 817 F.2d 455, 458 (8th Cir. 1987); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931, 935 (9th Cir. 2006); *Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp.*, 297 F. App'x 773, 779 (10th Cir. 2008).

[9] *See, e.g.*, *Sosa*, 437 F.3d at 942; *Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 488 (8th Cir. 1985); *Empress LLC v. City and Cty. of San Fran.*, 419 F.3d 1052, 1057 (9th Cir. 2005); *Ala. Cargo Transport, Inc. v. Ala. R.R. Corp.*, 834 F. Supp. 1216, 1228 (D. Ala. 1991); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14–cv–04050, 2016 WL 524761, at *6 (N.D. Cal. Feb. 2, 2016); *Mazzocco v. Lehavi*, No. 14CV2112, 2015 WL 12672026, at *8 (S.D. Cal. Apr. 13, 2015); *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1159 (N.D. Cal. 2014); *Lala v. Frampton*, No. 07–cv–02144, 2008 WL 4059874, at *7 (D. Colo. Aug. 28, 2008); *Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983); *Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*, Inc., 964 F. Supp. 624, 628 (D. Conn. 1997); *Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*, No. 09–60397–CIV, 2009 WL 2589148, at *4 (S.D. Fla. Aug. 19, 2009); *Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 526 (N.D. Ill. 1990); *Classic*

A.      **The Claims Against PCPC Arise From Protected Activity.**

As explained above in Part II.A at 13–14, Plaintiffs' allegations arise from lobbying and related activities. "The Noerr-Pennington doctrine holds that defendants who petition the government, 'whether by efforts to influence legislative or executive action or by seeking redress in court,' are immune from liability for such activity under the First Amendment." *Nader v. The Dem. Nat'l Comm.*, 555 F. Supp. 2d 137, 156–57 (D.D.C. 2008), *aff'd on other grounds sub nom. Nader v. Dem. Nat'l Comm.*, 567 F.3d 692 (D.C. Cir. 2009) (quoting *Covad Comm'cns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005)); *see also Noerr Motor Freight, Inc.*, 365 U.S. at 136; *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

The *Noerr-Pennington* doctrine has been applied to product liability claims brought under negligence, concert of action or conspiracy theories. *McAlonan v. Tracy*, No. A-6034-07T2, 2011 WL 6125, at *13 (N.J. Super. Ct. App. Div., Mar. 16, 2010), *cert. denied*, 202 N.J. 347 (2010); *Structure Bldg. Corp. v. Abella*, 377 N.J. Super. 467, 471 (App. Div. 2005). The doctrine "protects First Amendment rights by affording immunity to those who petition the government for redress." *McAlonan*, 2011 WL 6125, at *13. Courts have reiterated that a core principle of the *Noerr-Pennington* doctrine is that lobbying cannot form the basis of liability.

*Commc'ns, Inc. v. Rural Tel. Serv. Co.*, No. 96–2166, 1997 WL 51419, at *4 (D. Kan. Jan. 30, 1997); *Grand Cmtys., Ltd. v. Stepner*, 170 S.W.3d 411, 416 (Ky. Ct. App. 2004); *Bartholomew v. Bail Bonds Unlimited, Inc.*, No. 05–4165, 2007 WL 1063338, at *4 (E.D. La. Apr. 5, 2007); *Agema v. City of Allegan*, No. 1:12–cv–417, 2014 WL 249374, at *11 (W.D. Mich. Jan. 22, 2014); *St. Jude Med. Inc. v. Leverenz*, No. 03–5170, 2004 WL 251839, at *3 (D. Minn. Feb. 9, 2004); *Atl. Recording Corp. v. Raleigh*, No. 4:06–CV–1708, 2008 WL 3890387, at *4 (E.D. Mo. Aug. 18, 2008); *Biltmore Co. v. NU U, Inc.*, No. 1:15–cv–00288, 2016 WL 7494474, at *5 (W.D.N.C. Dec. 30, 2016); *24 Hour Fitness USA, Inc. v. Annis*, No. 04–257, 2004 WL 2656877, at *4 (D.N.H. Nov. 18, 2004); *Haack v. City of Carson City*, No. 3:11–cv–00353, 2012 WL 3638767, at *12 (D. Nev. Aug. 22, 2012); *EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*, 147 F. Supp. 3d 63, 70–71 (E.D.N.Y. 2015); *Mitchell v. Clackamas River Water*, No. 3:16–cv–00537–HZ, 2016 WL 6471450, at *7 (D. Or. Oct. 31, 2016); *Brown v. TD Bank, N.A.*, No. 15–5474, 2016 WL 1298973, at *8 (E.D. Pa. Apr. 4, 2016); *Love Terminal Partners, L.P. v. City of Dallas, Tex.*, 527 F. Supp. 2d 538, 557–58 (N.D. Tex. 2007); *Oneida Tribe of Indians of Wis. V. Harms d/b/a Worldshadow*, No. 05–C–0177, 2005 WL 2758038, at *4 (E.D. Wis. Oct. 24, 2005).

*Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1321 (E.D.N.Y. 1996) (gun advocates' coordinated

lobbying insufficient to form a basis for liability) (citing *Centrone v. Schmidt*, 114 Misc. 2d 840,

452 N.Y.S.2d 299, 302 (Sup. Ct.  Nassau Cty., 1982)).  "Noerr-Pennington protection has been

extended to all advocacy intended to influence government action, including to allegedly false

statements."  *Tuosto v. Philip Morris USA Inc.*, No. 05CIV.9384(PKL), 2007 WL 2398507, at *5

(S.D.N.Y. Aug. 21, 2007) (shielding allegedly false statements made in the course of petitioning

the government) (citing *Noerr Motor Freight*, *Inc.*, 365 U.S. at 140–42; *New York Jets LLC v.*

*Cablevision Sys. Corp.*, 2005 WL 2649330, *7 (S.D.N.Y. Oct 17, 2005) ("The alleged

misrepresentations fall squarely within the confines of Noerr-Pennington" ).  Even statements

that may "fall [ ] far short of the ethical standards generally approved in this country" are

protected by the Noerr-Pennington doctrine if they are made in the course of petitioning the

government.  *Noerr*, 365 U.S. at 140; *see also Hamilton*, 935 F. Supp. at 1317.

Therefore, pursuant to the Noerr Pennington doctrine, PCPC cannot be liable for its

lobbying and related activities, and Plaintiffs' claims must be dismissed.

### B.      None of the Exceptions to the *Noerr-Pennington* Doctrine Apply.

There are two exceptions to the *Noerr-Pennington* doctrine, neither of which applies

here.  First, efforts to influence the government are not protected where they are found to be a

"sham" that is objectively baseless.  "A 'sham' situation involves a defendant whose activities

are not genuinely aimed at procuring favorable governmental action at all."  *City of Columbia v.*

*Omni Outdoor Advertising*, 499  U.S. 365, 380 (1991) (quotations and citations omitted); *see*

*also Jones v. La. State Bar Ass'n*, 738 F. Supp. 2d 74, 80 (D.D.C. 2010), *aff'd*, No. 10-5327,

2011 WL 11025624 (D.C. Cir. Oct. 3, 2011) ("Efforts to influence the government are not

protected where they are found to be a 'sham' that is objectively baseless, i.e., threats,

intimidation, and other coercive measures, primarily to harass or discriminate against the

23

plaintiffs.").  There is no dispute that PCPC had an interest in the outcome of its lobbying

activities.  Plaintiffs allege as much.  ECF No. 82 (Plaintiffs' Master Long Form Complaint), ¶¶

34–35.  PCPC was not acting to injure a competitor, nor was it conducting subterfuge for other

undisclosed goals.  Moreover, the Supreme Court has "explicitly observed that **a successful**

**effort to influence governmental action certainly cannot be characterized as a sham**."

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993) (internal

citations and quotations omitted) (emphasis added).  Plaintiffs' allegations that PCPC's efforts

were successful demonstrate that the lobbying was not a sham.  ECF No. 82 (Plaintiffs' Master

Long Form Complaint), ¶¶ 34–35, 160, 207; *see also Casey v. Johnson & Johnson*, W.D. Ky.

No. 3:16-cv-00477, ¶¶ 26, 90; *Harper v. Johnson & Johnson*, D. S.C. No. 1:16-cv-03516, ¶¶ 33,

131; *Brown-Harrison*, et al. *v. Johnson & Johnson*, E.D. Pa. No. 2:16-cv-06029, ¶¶ 32, 120;

*Gendelman v. Johnson & Johnson*, E.D. Pa. No. 2:16-cv-06596, ¶¶ 43–44, 179; *Fiore v. Johnson*

*& Johnson*, E.D. Pa. No. 2:16-cv-06609, ¶¶ 27, 123.

  The second exception to the *Noerr-Pennington* doctrine is the "corruption" exception.

"Overtly corrupt conduct, such as threatening or bribing a public official, has also been ruled to

be outside the protection of the doctrine."  *Friends of Rockland Shelter Animals, Inc. v. Mullen*,

313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004). However, "lobbying activities that are unethical or

result in deception are not actionable under the *Noerr-Pennington* doctrine."  *Id.* at 344; *see also*

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 107, 707

N.Y.S.2d 647 (2d Dep't 2000) ("[C]ourts have upheld the application of the doctrine even when

the petitioning activity included the use of questionable or underhanded activity.").  Here, there

is no allegation that PCPC engaged in overtly corrupt conduct, such as threatening or bribing a

public official.

Thus, Plaintiffs' lawsuits must be dismissed because the *Noerr-Pennington* doctrine protects PCPC from liability for its lobbying and related activities.  This is particularly true of the lawsuits subject to the anti-SLAPP statutes, where Plaintiffs have the burden of establishing that their claims are "likely to succeed on the merits."  They certainly cannot succeed.

## CONCLUSION

For the foregoing reasons, PCPC respectfully requests that the Court dismiss PCPC from all of the lawsuits naming it as a defendant.

Dated:   February 6, 2017                          Respectfully submitted,


*/s/ Thomas T. Locke, Esq.*
Thomas T. Locke (DC Bar No. 454144)
Rebecca Woods (DC Bar No. 468495)
James R. Billings-Kang (DC Bar No. 984152)
**SEYFARTH SHAW LLP**
975 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 463-2400
Facsimile:  (202) 828-5393
tlocke@seyfarth.com
rwoods@seyfarth.com
jbillingskang@seyfarth.com

Sheryl L. Axelrod (NJ Bar No. 017091994)
**THE AXELROD FIRM, PC**
The Beasley Building
1125 Walnut Street
Philadelphia, PA  19107
Phone: (205) 461-1770
Facsimile: (205) 238-1779
*saxelrod@theaxelrodfirm.com*

*Attorneys for Defendant*
*Personal Care Products Council*