# EXHIBIT E

1          SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                        CIVIL DIVISION

3    _____
                                    :
4    DENISE CECELIA SIMPSON, et al  :
                                    :
5           Plaintiffs,             :
     v.                             : Civil Action No.
6                                   :
     JOHNSON & JOHNSON, et al,      : 2016 CA 1931 B
7                                   :
            Defendant.              :
8    _____:
                                    Washington, DC
9                                   January 13, 2017

10          The above-entitled action came on for a hearing
     before the Honorable MARISA DEMEO, Associate Judge, in
11   Courtroom Number 311, commencing at approximately 2:35 p.m.

12          THIS TRANSCRIPT REPRESENTS THE PRODUCT
            OF AN OFFICIAL REPORTER, ENGAGED BY
13          THE COURT, WHO HAS PERSONALLY CERTIFIED
            THAT IT REPRESENTS THE TESTIMONY
14          AND PROCEEDINGS OF THE CASE AS RECORDED.

15       APPEARANCES:

16       On behalf of the Plaintiff:
         James Green, Esquire
17       Patrick Lyons, Esquire

18       On behalf of Defendant PCPC:
         James Billings-Kang, Esquire
19
         On Behalf of Defendant Imerys:
20       Angela Hart-Edwards, Esquire

21       On Behalf of Defendant Johnson & Johnson:
         Chad Coots, Esquire
22

23

24   Sherry T. Lindsay, RPR              (202) 879-1050
     Official Court Reporter
25

1

```
1                    P R O C E E D I N G S
2              THE DEPUTY CLERK:  This is calling Denise Cecelia
3     Simpson versus Johnson & Johnson, 2016 CA 1931 B.  Parties
4     please --
5              THE COURT:  Parties can you state your names for
6     the record.
7              MR. LYONS:  Good morning, Your Honor.  My name is
8     Patrick Lyons and I represent the plaintiff, Ms. Denise
9     Simpson.
10             MR. GREEN:  Good afternoon, Your Honor.  My name
11    is James Green.  I also represent Ms. Simpson.
12             THE COURT:  All right.  Good afternoon.
13             MR. BILLINGS-KANG:  And good afternoon, Your
14    Honor.
15             Oh, if you will, please.
16             MS. HART-EDWARDS:  Good afternoon, Your Honor.
17    Angela Hart-Edwards for Imerys.
18             Is it okay if we sit --
19             THE COURT:  Sure.  That is fine.
20             MR. COOTS:  Good afternoon.  Chad Coots
21    representing Johnson & Johnson.
22             THE COURT:  Okay.  Good afternoon.
23             MR. BILLINGS-KANG:  Good afternoon, Your Honor.
24    James Billings-Kang on behalf of the Personal Care Products
25    Council.
```

1    discovery, so we could certainly brief this issue further.

2    But I'd say, I do not believe that the burden has shifted to

3    the plaintiff to proving its causes of action because PCPC

4    has not met that prima facie burden, which is in the

5    statute.  Thank you, Your Honor.

6         THE COURT:  All right.  There were just a couple

7    of points that I want to go back to my chambers to take a

8    quick look at.  And then I will be back.  If the parties can

9    just return in 20 minutes, at a quarter to 4:00.  We'll

10   stand in recess until then.

11        MR. LYONS:  Thank you, Your Honor.

12        MR. BILLINGS-KANG:  Thank you, Your Honor.

13             (Recess taken.)

14        THE DEPUTY CLERK:  Calling Denise Cecelia Simpson

15   versus Johnson & Johnson 2016 CA 1931.

16        THE COURT:  All right.  Good afternoon.  All

17   parties are present.  Thank you for your patience.  All

18   right.  So just for the record, the Court is, of course,

19   using the statutory language, DC Code 16-5502 on special

20   motion to dismiss, specifically looking at subsection B, "If

21   a party filing a special motion to dismiss under the section

22   makes a prima facie showing that the claim at issue arises

23   from an act in furtherance of a right of advocacy on issues

24   of public interest, then the motion shall be granted, unless

25   the responding party demonstrates that the claim is likely

1    to succeed on the merits, in which case the motion shall be

2    denied."

3         So one of the issues that didn't come out as

4    strongly in the briefs, but clearly came out in terms of the

5    arguments is burden, who has the burden.  And so the Court

6    just wants to cite to the case that the parties have

7    referenced, the Competitive Enterprise Institute versus Mann

8    case, which came out in December of 2016 by the DC Appellate

9    Court, 2016 DC.App Lexis 435, which states under the

10   District's Anti-SLAPP Act, the party filing a special motion

11   to dismiss must first show entitlement to the protections of

12   the act by making a prima facie showing that the claim at

13   issue arises from an act in furtherance of the right of

14   advocacy on issues of public interest, citing to the code.

15   Once that prima facie showing is made, the burden shifts to

16   the nonmoving party, usually the plaintiff, who must

17   demonstrate that the claim is likely to succeed on the

18   merits.  If the plaintiff cannot meet that burden, the

19   motion to dismiss must be granted and the litigation is

20   brought to a speedy end.  So the Court is using that statute

21   and that framework as interpreted by the Court of Appeals in

22   terms of the process of where the analysis starts and where

23   it goes in terms of burden.  If, in fact, the prima facie

24   showing is established.

25        The Court also noted during oral argument -- so I

1    wanted to just make sure I made a point of addressing it --
2    there was back and forth about the use of California law.
3    And so -- the Abbas District Court case had language in it
4    that said, "In construing the Act, the Court cannot rely on
5    guidance from the DC Court of Appeals, which has not yet
6    published an opinion in interpreting the statute."  Of
7    course, this was I believe a 2013 case, so this was prior to
8    some of the more recent litigation and decisions that have
9    come up by the Court of Appeals.  And then the District
10   Court had said, Where, as here, the substantive law of the
11   forum state is uncertain or ambiguous, the job of federal
12   court is carefully to predict how the highest court of the
13   forum state would resolve the uncertainty or ambiguity.
14   With this in mind, the Court notes that the committee report
15   prepared on the Anti-SLAPP Act emphasize that the statute
16   followed the model set forth in a number of other
17   jurisdictions.  The DC Court of Appeals has accorded great
18   weight to such reports in interpreting other DC statutes.
19   Therefore, where necessary and appropriate, the Court will
20   look to decisions from other jurisdictions, particularly
21   California, which has a well developed body of case law
22   interpreting a similar California statute for guidance and
23   predicting how the DC court of Appeals would interpret the
24   District's Anti-SLAPP statute.
25           Of course, the plaintiff points out that the

1    Circuit Court actually affirmed on different grounds and
2    specifically said that the first issue before the Court is
3    whether a Federal Court exercising diversity jurisdiction
4    may apply the DC Anti-SLAPP Act's special motion to dismiss
5    provision.  The answer is no.  Federal Rules of Civil
6    Procedure 12 and 56 establish the standards for granting
7    pretrial judgment to defendants in cases in Federal Court.
8    A Federal Court must apply those Federal Rules instead of
9    the DC Anti-SLAPP Act's special motion to dismiss provision.
10   So technically as a matter of law, this Court would not cite
11   to the District Court case.  First of all, it wouldn't be
12   precedent for this Court anyway, as the parties know.  If
13   anything, it would be persuasive, since they are not an
14   appellate court to this Court.  And then in light of the
15   fact that the Circuit Court said District Court really
16   shouldn't have ruled on the issue of Anti-SLAPP anyway.
17   This Court doesn't decide this matter based on the District
18   Court Abbes language.  Nevertheless, I read it.  And the
19   Court actually agrees with what the District Court said.  I
20   understand that I have no basis to cite to it, since in
21   essence, it was reversed, it was abrogated by the Circuit
22   Court.  But what this Court does know is what the DC Court
23   of Appeals ordinarily does do and as it did in Mann itself
24   when it was looking at the issues that were raised in the
25   Mann case that was decided in 2016.  For example, in

1    footnote 31, it did an analysis of what Colorado has done.

2    It also talked about what other states have done.  For

3    example, the Mann case said other -- the Appellate Court,

4    said other states have adopted similar approaches.

5    California's Anti-SLAPP statute, which requires a showing

6    that there is a probability that the plaintiff will prevail

7    on the claim has been interpreted as requiring the plaintiff

8    to state and substantiate a legally sufficient claim, et

9    cetera. I am not going to cite the full language, because,

10   obviously, there was a really different issue that was being

11   contested in Mann, separate and apart from what is the

12   really contested issue here.  The point being that to the

13   extent that this DC Court of Appeals has not specifically

14   ruled on the legal issue that is facing this trial Court,

15   this Court does look to other jurisdictions where this Court

16   finds language to be similar, although not identical.  The

17   Court concedes that and plaintiff makes that point.  But I

18   found the language of the California Anti-SLAPP statute to

19   be sufficiently similar.  And the amount of litigation on

20   Anti-SLAPP challenges at the California courts to be of such

21   volume that this Court did find California court

22   interpretations of California's Anti-SLAPP statute to be

23   beneficial and persuasive, recognizing again it is not

24   identical language.  But it was similar enough that this

25   Court did look to California law to be of help to this Court

1    in terms of trying to determine what the DC Court of Appeals

2    ultimately, would interpret.  Obviously, the DC Court of

3    Appeals is the only ones who can tell me, ultimately, how

4    they would interpret it.  All I can do is do my best to make

5    a proper interpretation and then the Court of Appeals can

6    instruct this Court whether it got it right or got it wrong.

7              So the Court just -- this Court just wanted to

8    highlight a couple of issues related to the burden and the

9    California law because those were matters that I had not

10   focused on extensively in preparing for today's hearing.

11             All right.  Give me just a moment.

12             So turning first to whether the defendant PCPC,

13   who is the party who has filed this special motion to

14   dismiss has made a prima facie showing that the claim at

15   issue arises from an act in furtherance of the right of

16   advocacy on issues of public interest, the Court focuses

17   first on -- while the Court understands that full phrase

18   must be analyzed, much of the debate, both in the briefs and

19   in the oral arguments, focused on the definition of "on

20   issues of public interest."  And as I just a moment ago

21   explained, since the DCCA has not yet ruled on the specific

22   issue, this Court -- our statute when looking at the

23   committee report has been modeled after Anti-SLAPP statutes

24   in other jurisdictions.  And the Court -- this Court found

25   California's Anti-SLAPP statute to be sufficiently similar

1    to provide this Court some analysis that this Court found to

2    be helpful.  So I turned to the California courts for

3    guidance on the issue, finding the language to be similar

4    and similar enough to provide guidance.  In Choose Energy

5    versus American Petroleum Institute 87 F.Supp.3d 1218,

6    Northern District of California 2015, the US District for

7    the Northern District of California held that the defendant

8    trade association's conduct fell within the protection of

9    Anti-SLAPP because its conduct was noncommercial in nature

10   and addresses energy policy, an issue that is currently the

11   subject of pending legislative efforts and one of public

12   concern.  The Court further noted that an issue of public

13   interest is an issue in which the public is interested.  In

14   LA Taxi Cooperative Inc. versus Independent Taxi Owners'

15   Association of Los Angeles, 239 Cal.App.4th at 918, the

16   Court held that commercial speech about a specific product

17   or service is not a matter of public interest within the

18   meaning of the Anti-SLAPP statute even if the product

19   category is the subject of public interest and the products

20   are regulated by public agencies.  That was citing to

21   Consumer Justice Center versus TriMedica International, 107

22   Cal.App4th at 595.

23          In this case, the LA Taxi case, the Court found

24   that commercial speech was not protected by the Anti-SLAPP

25   statute, because it was about a specific taxicab company,

1    not general public transportation by taxi companies.  As the

2    Court has listened very carefully to each side of the

3    argument, it really -- plaintiff's arguments focused

4    primarily on this -- call it logical thinking which is if

5    the trade association is representing members and the

6    members have commercial interests, therefore the Court must

7    conclude that the trade association is a commercial

8    interest, as opposed to a public interest.  However, the

9    Court distinguishes between when a trade association is

10   promoting a specific product or the benefits of a specific

11   product versus when a trade association is speaking more

12   generally about products and the health and safety of those

13   products as opposed to a specific commercial product named.

14          The Court does find in this case that PCPC has

15   made a prima facie showing that its alleged acts were made

16   in furtherance of the right of advocacy on issues of public

17   interest.  So I am focusing now on the public interest

18   component.  This is because plaintiff's complaint does not

19   allege that PCPC made any representations regarding a

20   particular product, only about the safety of talc in

21   general.  Further, defendant PCPC is a nonprofit trade

22   association.  It does not manufacture, design or sell any

23   products.  As a result, PCPC does not have, this Court

24   concludes, a commercial interest to protect.  While

25   plaintiff argues that PCPC does represent the commercial

1   organizations, that is Johnson & Johnson and Imerys, which

2   are profit-seeking corporations, this Court finds that

3   PCPC's own speech is not commercial in nature.  Further,

4   PCPC's alleged acts fit squarely within the plain meaning of

5   the statute of issues of public interest.  The statute

6   defines public interest to mean, an issue related to health

7   or safety.  Here, the safety of talc is clearly an issue

8   related to health or safety.

9          I analyzed the public interest component first,

10  because I actually think that was of most import in terms of

11  the debate between the parties.  That, obviously, is the

12  issue that would need to be resolved by the Court of Appeals

13  should this matter be appealed.  All of the issues would

14  need to be resolved, but that one is clearly an issue of

15  first impression.

16         The Court now moves backwards in terms of the --

17  whether it is the -- this is an issue that arises from an

18  act in furtherance of the right of advocacy.  I took it a

19  little bit out of order, just so that the Court could

20  address the most contentious issue first.  And now I turn to

21  the first part.

22         In the briefs, the Court would conclude that the

23  plaintiff concedes that if PCPC's advocacy was based on

24  issues of public interest rather than on issues of private

25  commercial interest, then at least some of the advocacy of

1    PCPC would meet this element.  Although, in its briefs,

2    plaintiff further argues that statements and actions among

3    PCPC and its members, the other defendants, would not meet

4    the element.

5           The statute defines act in furtherance of the

6    right of advocacy on issues of public interest in three

7    ways, as the parties have noted.  One, a written or oral

8    statement made in connection with an issue under

9    consideration or review by a legislative or judicial body or

10   any other official proceeding authorized by law.  This is

11   under the section 16-5501(1)(A)(i).  Here, the complaint

12   alleges that PCPC formed the talc interested party task

13   force, a lobbying group regarding the safety of talc in

14   response to a study regarding the safety of talc and that

15   PCPC submitted scientific reports to government agencies.

16   Defendant argues that this allegation clearly constitutes an

17   act in furtherance of the right of advocacy in accordance

18   with the first potential definition of what qualifies and

19   the Court agrees.  The Court finds that the alleged act

20   meets the definition as PCPC submitted reports to government

21   agencies.

22           The Court looks at the second manner in which it

23   might be established that the issue arises from an act in

24   furtherance of the right of advocacy, a written -- that is

25   number two, a written or oral statement made in a place open

```
1   to the public or public forum in connection with an issue of
2   public interest.  This is section 16-5501 (1)(A)(ii).  The
3   complaint alleges that PCPC released information regarding
4   the safety of talc to the public.  The defendant argues that
5   this constitutes an act in furtherance of the right of
6   advocacy.  Under the second definition, the Court does agree
7   with defendant.  The Court finds that the alleged acts meet
8   the definition, as PCPC did release this information about
9   the safety of talc to the public.
10          Looking at the third potential way that this part
11  of the element can be established, any other expression or
12  expressive conduct that involves petitioning the government
13  or communicating views to members of the public in
14  connection with an issue of public issues.  The complaint
15  alleges PCPC petitioned the government and communicated with
16  the public regarding the safety of talc.  The defendant
17  argues this is an act in furtherance of the right of
18  advocacy.  Under this third catchall definition, the Court
19  agrees, PCPC's actions fall within the catchall definition.
20  So under any of the three, the Court finds that plaintiff
21  meets the elements.  The Court finds that the allegations in
22  plaintiff's complaint fit within the definition of act in
23  furtherance of the right of advocacy.  And further having
24  found that they are on issues of public interest, I find
25  that the entire prima facie showing has been established by
```

1    the plaintiff.  While plaintiff does argue both in her

2    briefs and oral arguments and in her complaint that PCPC and

3    the other defendants acted in concert to collectively defend

4    talc use and that these statements, in which they were

5    directed to the other defendants, that is, PCPC's statements

6    to the other defendants, that those would not be acts in

7    furtherance of a right of advocacy.  The plaintiff fails to

8    show what these statements were or how they would further

9    her underlying claims.  This Court find that plaintiff's

10   additional argument fails.

11          This Court, in light of the full analysis of the

12   elements that are required for the prima facie showing,

13   which is the plaintiff's burden initially, this Court does

14   conclude that the prima facie showing that a claim -- that

15   the claim at issue arises from an act in furtherance of the

16   right of advocacy on issues of public interest has been met.

17   The burden has been met by the plaintiff.  That brings the

18   Court to then the motion shall be granted, unless the

19   responding party demonstrates that the claim is likely to

20   succeed on the merits, in which case the motion shall be

21   denied.

22          So the -- going back to the Mann case for a

23   moment -- again, citing to the Mann case, 2016 DC.App. Lexis

24   435, decided on December 22nd, 2016, the Court of Appeals

25   said that we conclude that in considering a special motion

1    to dismiss, the Court evaluates the likely success of the

2    claim by asking whether a jury properly instructed on the

3    applicable legal and constitutional standards could

4    reasonably find that the claim is supported in light of the

5    evidence that has been produced or proffered in connection

6    with the motion.  This standard achieves the Anti-SLAPP

7    Act's goal of weeding out meritless litigation by ensuring

8    early legal review of the legal sufficiency of the evidence,

9    consistent with First Amendment principles while preserving

10   the claimant's right to a jury trial.  The Court also said

11   that our analysis begins with the language of the statute,

12   which requires that to prevail in opposing a special motion

13   to dismiss, the opponent must demonstrate that the claim is

14   likely to succeed on the merits, as neither the phrase nor

15   any of its components is defined in the statute, we look to

16   the language of the statute by itself to see if the language

17   is plain and admits of no more than one meaning.  Although

18   we can be confident that on the merits refers to success on

19   the substance of the claim, the meaning of the requirement

20   that the opponent demonstrate that the claim is likely to

21   succeed is more elusive.  Use of the word demonstrate

22   indicates that once the burden has shifted to the claimant.

23   The statute requires more than mere reliance on allegations

24   in the complaint and mandates the production or proffer of

25   evidence that supports the claim.  This interpretation is

1    supported by another provision in the act, section

2    16-5502(C) that states discovery upon the filing of a

3    special motion to dismiss until the motion has been disposed

4    of, unless it appears likely that targeted discovery will

5    enable the plaintiff to defeat the motion and that the

6    discovery will not be unduly burdensome.  If evidence were

7    not required to successfully oppose a special motion to

8    dismiss under section 16-5502(B), there would be no need for

9    a provision allowing targeted discovery for that purpose.

10   Moreover, unless something more than argument based on the

11   allegations in the complaint is required, the special motion

12   to dismiss created by the Act would be redundant in light of

13   the general availability in all civil proceedings,

14   regardless of the nature of the claim of motions to dismiss

15   under Rule 12(B)(6).

16           The precise question the Court must ask,

17   therefore, is whether a jury properly instructed on the law,

18   including any applicable heightened fault and proof

19   requirements could reasonably find for the claimant on the

20   evidence presented.  So the Court turns to the claims here,

21   that is, the -- because the burden now shifts to whether the

22   responding party has demonstrated that the claim is likely

23   to succeed on the merits, as I have defined it by the Court

24   of Appeals, how the Court of Appeals tells this Court how I

25   must analyze it.  The plaintiff here must offer evidence on

1    the negligence claim, that is the first claim, of the

2    existence of a duty, violation of a standard of care, and

3    injury resulting as a proximate cause of the violation.

4    Here, plaintiff alleges that PCPC voluntarily undertook a

5    duty of care to plaintiff by promulgating standards, norms

6    and bylaws that govern control or inform the manufacturing,

7    design, labeling of its member companies.  That is the

8    complaint, paragraph 79.  Plaintiff further alleges that

9    PCPC had the means and authority to control the safety,

10   standards of the other defendants but breached its duty by

11   failing to ensure that they complied with the standards.

12   Defendant argues that the allegations are unsupported and

13   the Court agrees with the defendant's position.

14           The plaintiff has failed to establish if the jury

15   was properly instructed on the law, including any applicable

16   heightened fault and proof requirements, the Court has to

17   ask could a jury reasonably find for the claimant on the

18   evidence presented?  Here, the plaintiff has failed to

19   establish that PCPC had any duty of care to her.

20   Furthermore, defendant submits an affidavit by showing that

21   PCPC has no authority to regulate its members and thus it

22   could not have prevented the sale of products.  Plaintiff

23   presents nothing to counter that.  Using the standard from

24   the Mann decision, the Court finds that on the claim of

25   negligence a jury properly instructed on the law could not

1   reasonably find for the claimant on the evidence presented.

2        Turning to the fraud claim.  Plaintiff must offer

3   evidence establishing, one, a false representation; two, in

4   reference to a material fact; three, made with knowledge of

5   its falsity; four, with intent to deceive; and, five, action

6   is take in reliance upon representation.  Plaintiff has

7   failed to address the specific elements and how she would

8   succeed on the merits.  Defendant has argued both its

9   actions were protected under the First Amendment under

10  Noerr-Pennington doctrine and, further, plaintiff has no

11  evidence that defendant made any representations with the

12  knowledge of its falsity and is unlikely to have any

13  evidence that she relied on statements made by PCPC prior to

14  using talc.  The Court agrees that plaintiff has not put

15  forward sufficient evidence on the two elements of fraud

16  highlighted by defendant to establish a likelihood of

17  success on the fraud claim, specifically that there needs to

18  be sufficient evidence where a jury properly instructed on

19  the law, could reasonably find for the claimant on evidence

20  presented on the issue of the element of -- that PCPC made

21  with knowledge of its falsity, whatever statement it was.

22  And there is not sufficient evidence that a reasonable juror

23  could find for the claimant on that element.  And, further,

24  there is not sufficient evidence presented by the plaintiff

25  on the element where a reasonable juror could -- a jury

1    could reasonably find for the claimant on the element of --

2    that action was taken in reliance upon the representation,

3    by -- that is, action taken by the plaintiff in reliance

4    upon the representation by defendant PCPC.  So the Court

5    finds using the standard taken from Mann that a jury

6    properly instructed on the law, could not reasonably find on

7    the fraud claim for the claimant on the evidence presented.

8            This brings the Court to the conspiracy claim.

9    Plaintiff must offer evidence establishing an agreement

10   between two or more persons to participate in an unlawful

11   act or in a lawful act in an unlawful manner, an injury

12   caused by an unlawful overt act or performed by one of the

13   parties to the agreement, pursuant to and in furtherance of

14   the common scheme.  In addition, civil conspiracy depends on

15   the performance of some underlying tortious act.  It is thus

16   not an independent action.  It is rather a means for

17   establishing a vicarious liability for the underlying tort.

18           Plaintiff has failed to address the specific

19   elements of conspiracy.  Defendant argues plaintiff cannot

20   present any admissible evidence that PCPC either performed

21   an unlawful act or a lawful act in an unlawful manner or

22   reached an agreement with one or more of the other

23   defendants, which was part of a common scheme for one of the

24   codefendants to commit an unlawful overt act against the

25   plaintiff.  The Court agrees with the defendant.  Plaintiff

1    has not presented sufficient evidence on the conspiracy

2    claim to establish a likelihood of success on the merits.

3    In other words, should a -- if a jury properly instructed on

4    the law were presented with the evidence that the plaintiff

5    has presented to this Court at this stage of this motion,

6    the jury could not reasonably find for the claimant on the

7    claim of conspiracy.

8              In essence, in plaintiff's brief, it just seems to

9    have foregone any argument on these points on the issue of

10   likelihood of success.  But the Court is obligated, in my

11   opinion, to go through the entire analysis.  Instead

12   plaintiff argues that she would be prejudiced without

13   additional limited discovery as provided for under the Act,

14   which, the Act does clearly provide that when it appears --

15   and this is under 16-5502(C)(2), when it appears likely that

16   targeted discovery will enable the plaintiff to defeat the

17   motion and that the discovery will not be unduly burdensome,

18   the Court may order that specified discovery be conducted.

19   Such an order may be conditioned upon the plaintiff paying

20   any expenses incurred by the defendant in responding to such

21   discovery.  Here, plaintiff -- it is this Court's assessment

22   that plaintiff has not demonstrated what targeted discovery

23   would be needed to defeat the motion.  Further, defendant

24   states and plaintiff not only did not oppose the statement

25   in its briefs but in court acknowledged that plaintiff has

```
 1    already received thousands upon thousands of pages of

 2    discovery in other similar litigation and even in this very

 3    litigation.  And despite having received all of that

 4    discovery, there doesn't appear to this Court to be any

 5    demonstration by the plaintiff of what additional targeted

 6    discovery would assist the plaintiff in defeating the

 7    motion.  Seeing that the plaintiff did not oppose the

 8    defendant's arguments that it could not succeed under the

 9    claims, but instead requested additional discovery, the

10    Court finds that plaintiff cannot establish likelihood of

11    success on the underlying claims and the Court is not

12    ordering additional discovery as plaintiff has not

13    demonstrated what targeted discovery would be necessary to

14    defeat the motion, nor that additional discovery will likely

15    enable the plaintiff to defeat the motion.

16              So looking at the statute as whole, again, the

17    Court first found that the plaintiff did establish its --

18    and presented its prima facie showing that the claim at

19    issue arises from an act in furtherance of the right of

20    advocacy on issues of public interest, the motion to dismiss

21    must be granted unless the responding party demonstrates

22    that the claim is likely to succeed on the merits.  I have

23    found that the responding party has not demonstrated that

24    the claim is likely to succeed on the merits.  So it is

25    mandatory that the motion be granted.  The exception being
```

```
 1    if it appears likely that targeted discovery will enable the
 2    plaintiff to defeat the motion and that the discovery will
 3    not be unduly burdensome, the Court may order that specified
 4    discovery be conducted, however, this Court has concluded
 5    that it will not approve targeted discovery finding for the
 6    reasons that I have already stated.  That presents the Court
 7    with the one outcome that the statute tells me to do and
 8    that is I am granting the special motion to dismiss by PCPC.
 9           So let's turn briefly in light of that to the
10    question of attorneys' fees.  I will take brief argument on
11    that.  I will hear from PCPC first.
12           MR. BILLINGS-KANG:  Thank you, Your Honor.  I
13    think that point is very clear in terms of a presumptive
14    award of attorneys' fees.  It is mandated by the statute and
15    that is a question that was considered by the Court of
16    Appeals in Doe against Burke, not the 2014 opinion, but the
17    2016 opinion, in which the Court interpreted the statute to
18    entitle the moving party who prevails to a presumptive award
19    of reasonable attorney fees on request.  And, Your Honor, we
20    have made that request respectfully.  And we would ask that
21    the Court grant that motion.  Thank you.
22           THE COURT:  All right.
23           Plaintiff.
24           MR. LYONS:  Your Honor, there is a provision
25    that -- there is presumptive award of attorney fees in cases
```

1    in which motion to dismiss is granted, unless special

2    circumstances exist.  I do believe -- and plaintiff's

3    position is that this is a special circumstance.  This is an

4    issue, as Your Honor mentioned, of first impression, has not

5    been litigated before.  And plaintiff in filing its

6    complaint had no idea that a motion to dismiss based on the

7    Anti-SLAPP statute would be filed, did not anticipate this

8    issue.  And we are not specifically filing this lawsuit with

9    the SLAPP provisions in mind.  And we do believe there are

10   special circumstances given that this is the first time this

11   issue has been brought before the Court and a matter of

12   first impression and that attorneys' fees should not be

13   granted in this case.

14           THE COURT:  Okay.

15           MR. LYONS:  Thank you, Your Honor.

16           THE COURT:  So the Court notes the standards the

17   attorneys cited to is the same standard the Court has

18   referenced in making a decision here, DC Code 16-5504, "The

19   Court may award a moving party who prevails in whole or in

20   part on a motion brought under section 16-5502 or section

21   16-5503, the cost of litigation, including reasonable

22   attorneys' fees."  And cited to by defendant, Doe v. Burke

23   and the language referenced by plaintiff, that Court has

24   held that DC Code 16-6504(A) entitles the moving party who

25   prevails on a special motion to quash or dismiss to a

1  presumptive award of reasonable attorneys' fees on request

2  unless special circumstances would render such an award

3  unjust.

4          In the Doe case itself, the Court of Appeals did

5  not find special circumstances to render such an award

6  unjust, despite noting that the losing parties' attorneys

7  were employed by a public interest organization, that the

8  losing party was represented pro bono and that the losing

9  party had rejected an earlier settlement offer.  The Court

10  awarded the prevailing party its attorneys' fees.  So I have

11  heard the argument by plaintiff that this is a matter of

12  first impression, but this Court does not find that that

13  falls under this Court's interpretation of what would

14  constitute special circumstances.  And so the Court is going

15  to follow the presumptive nature of the award and I am

16  granting an award of reasonable attorneys' fees, since it

17  has been requested by defendant.  And defendant, you can

18  have -- how many -- do you need ten days?

19          MR. BILLINGS-KANG:  Ten days, Your Honor, is

20  sufficient.

21          THE COURT:  Ten days from today to make a filing

22  so that the Court can determine whether what you are

23  requesting are reasonable attorney fees.

24          All right.  As you noted, I do have a court

25  reporter.  I know you have been writing furiously, but if

```
 1   anyone needs the transcript, I have asked her to be here in

 2   light of the unique nature of my ruling.  Okay.

 3            Anything further from plaintiff at this time?

 4            MR. LYONS:  Nothing further, Your Honor.

 5            THE COURT:  Anything further from defendant?

 6            MR. BILLINGS-KANG:  Nothing further, Your Honor.

 7   Thank you very much.

 8            THE COURT:  Thank you.  Parties are excused and

 9   thank you for accommodating my schedule.

10            MR. BILLINGS-KANG:  Thank you, Your Honor.

11                      (Proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    CERTIFICATE OF REPORTER

 2          I, Sherry T. Lindsay, an Official Court Reporter

 3    for the Superior Court of the District of Columbia, do

 4    hereby certify that I reported, by machine shorthand, in my

 5    official capacity, the proceedings had and testimony

 6    adduced, upon the hearing in the case of DENISE CECELIA

 7    SIMPSON, et al, V. JOHNSON & JOHNSON, et al, Civil Action

 8    No. 2016 CA 1931 B, in said Court, on the 13th day of

 9    January 2017.

10          I further certify that the foregoing 54 pages

11    constitute the official transcript of said proceedings, as

12    taken from my computer realtime display, together with the

13    audio sync of said proceedings.

14          In witness whereof, I have hereto subscribed my

15    name, this the 18th day of January 2017.

16

17

18

19

20

21

22

23

24    _____
                              Sherry T. Lindsay
25                            Official Court Reporter
```

55