## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY
LITIGATION

:
:
:
:
:
:
:
:
:

Civil Action No. 3:16-md-2738-FLW-LHG

MDL No. 2738

------------------------------------------------

## PROPOSED JOINT AGENDA AND REPORT FOR FEBRUARY 22, 2017 STATUS CONFERENCE

1.    **Status of Discovery**

     A.    **Johnson & Johnson Defendants**

    **Plaintiffs' Position:** Since the last status conference, the PSC and representatives of the Johnson & Johnson defendants (J&J and JJCI), Imerys and PCPC have conferred on the status of discovery, including Rule 26 disclosures, Requests for Production of Documents, Interrogatories and other issues.  The status of these discussions are outlined below.

    On January 31, 2017, Plaintiffs served the Johnson & Johnson Defendants with a letter asking that the Johnson & Johnson Defendants provide individual Rule 26 Initial Disclosures; meet and confer to discuss the discovery of electronically stored information (ESI); meet and confer regarding preservation; and meet and confer regarding the search and production of documents, among other topics. The PSC specifically requested that a disclosure be made individually on behalf of each of the Johnson & Johnson defendants and that the parties confer on any issues relating to those disclosures prior to the status conference set for February 22, 2017.

PSC and counsel for Johnson & Johnson and Johnson & Johnson Consumer Inc. discussed the status of written and document discovery on February 1, 2017 and February 14, 2017.   At that time, the Johnson and Johnson defendants indicated that they would produce in the MDL litigation the identical productions previously made available in state court proceedings (approximately 88,000 documents). Said production is subject to an agreement on format of production, plus a supplemental production of documents that Defendants made to the state court plaintiffs on February 2, 2017.

*Status*:  The J&J defendants will produce Rule 26 disclosures from each of the J&J defendants.  J&J will report back as to when this can be accomplished.

In addition, the following was discussed between the parties:

- **Custodian Productions:**   Based upon a review of the state Court production, the PSC provided J&J counsel with two separate lists of relevant custodians. The first list includes the identity of 45 witnesses where the J&J defendants have provided at least a partial custodial file.  Subject to an agreement of agreed upon "search terms," the PSC requested that J&J certify that these files are complete. The PSC provided a second list of 21 additional custodians gleaned from the state production where it appears that no custodial file was produced. The PSC believes in good faith that these 24 additional witnesses appear to be significant witnesses with relevant information. As to those additional 24 witnesses, the PSC requested that J&J defendants investigate their role so that the parties can confer and discuss their relevance.

  *Status*:   Prior to the Status conference, the J&J defendants will endeavor to provide the PSC with further information on the custodians identified by the PSC, including a description of their position.   The parties will further meet and confer on additional custodial files to be produced after the investigation has been concluded.

- **Status Of Written Discovery:**  The PSC has indicated that they will pare down their discovery propounded individually to J&J and JJCI. Much of the information sought in the PSC's interrogatories may be

duplicative of a meaningful Rule 26 disclosure by each defendant. To date the PSC has not received responses to the Rule 26 disclosure request.

*Status*: The PSC reported that it had pared back discovery but may be able to further limit the discovery requests depending on the nature of the Rule 26 disclosures provided by the J&J defendants.

- **Status of Old Legacy And Paper Documents Already Produced**: J&J defendants have offered the state production for use in the MDL. The PSC has conducted an "analytical analysis" of the state production of 88,573 documents produced (prior to the supplement production). For example, the state court plaintiffs received about 3,700 emails from the J&J defendants' about half of what co-defendant Imerys produced. Similarly, J&J has produced about half of the number of "internal documents" produced by Imerys.

  *Status*: Based on the analytics, and the perceived significant discrepancies in the document productions, the PSC has proposed a 30(B)(6) deposition and "draft schedule A" for discussion among the parties.

- **Search terms:** The parties discussed the PSC proposal to exchange and agree upon search terms used to collect the documents previously produced. The PSC believes that it is in all parties' interest to have an agreed upon set of search terms.

  *Status:* Prior to the status conference, J&J will produce the search terms used to collect documents. Once these have been exchanged the parties will confer to determine whether there is agreement.

- **Litigation Holds**:

  *Status:* Prior to the status conference, J&J will indicate the dates upon which litigation holds were issued.

- **Third party documents**: The PSC requested that the J&J defendants identify third parties to whom the J&J defendants may have sent documents.

*Status:*  J&J defendants advise that they will investigate and address this issue as part of their Rule 26 disclosures.

- **Organizational charts and structure:** The PSC requested organizational documents/charts to identify those with relevant information.

  *Status:*  J&J has represented that there are no such materials maintained in the normal course of business but that the parties will continue to confer on this issue.

    **Johnson & Johnson Defendants' Position:**   The J&J Defendants do not agree with Plaintiffs' statements and positions regarding the status of discovery as stated above.  In the talc litigation pending across the country, the J&J Defendants, have responded to a multitude of written discovery requests propounded by plaintiffs, including 392 Requests for Production and 345 Interrogatories, including 739 subparts.  These requests were served on the J&J Defendants by numerous law firms involved in the litigation, *including Beasley Allen, The Lanier* Law Firm, Ashcraft & Gerel, Motley Rice, and Golomb & Honik.  More than 650,000 pages of documents have been produced in response to these wide-ranging discovery requests.  The J&J Defendants have offered to produce all the discovery responses, plus the previous document productions, after entry of a Protective Order and ESI protocol.  Two JJCI corporate witnesses have been deposed in the litigation.

    In response to Plaintiffs' requests, the J&J Defendants have agreed to provide the following:

- the titles of certain employees and former employees that have been identified by Plaintiffs.  The J&J Defendants do not agree that each employee or their documents are relevant to this litigation;

- Rule 26(a) Disclosures, despite the large amount of discovery that will already be immediately available to Plaintiffs;

- the search terms used to assist in the review of the previous document collections. The J&J Defendants have not discussed

an agreement regarding search terms for any future document collection; and

- the date on which a litigation hold notice was issued.

Plaintiffs agreed to pare down their voluminous discovery requests and re-serve, but the J&J Defendants have not yet received these requests.

### a.  **Imerys Talc America, Inc.**

**Plaintiffs' Position**:  On February 8, 2017, Plaintiffs served Imerys Talc America with a letter asking that Imerys provide a Rule 26 Initial Disclosure; meet and confer to discuss the discovery of electronically stored information (ESI); meet and confer regarding preservation; and meet and confer regarding the search and production of documents, among other topics. PSC and counsel for Imerys initiated discussions on February 10, 2017.  Discussions are continuing and the parties are expected to confer again before the status conference.

In addition, the following was discussed between the parties:

- **Status of Document Production**:  Imerys offered to provide the MDL plaintiffs with the productions that they had made in state court proceedings (approximately 79,000 documents).  This will be subject to the format or production which is being negotiated.

  *Status*:  Imerys will determine whether a supplemental production will be made.

- **Status of Custodial Productions**:  Based on a review of the state Court production, the PSC provided Imerys counsel with 2 lists of relevant custodians.  The first list includes 21 custodians for which the PSC understands it possesses full custodial files.  Subject to further production based upon agreed-upon search terms, the PSC requested certification that these are complete custodial file productions.  The PSC produced a second list of 5 people for whom custodial files had not previously been produced.

  *Status*:  Imerys has agreed to review the list of individuals where no custodial file was produced and confer with the PSC.

- **Status of Discovery Requests:**  The PSC has reviewed its previously served discovery with a goal towards limiting the propounded discovery. The number of requests would depend, in part, on whether Imerys files Rule 26 disclosures.  Imerys further suggested that the PSC compare what was requested (and answered) in a state Court cases (*Oules*), to what Plaintiffs served in the MDL to reduce the number of new requests served in these MDL proceedings.  The parties concur that if such an agreement is reached   the answers will be considered as having been filed in the MDL subject to all rights to compel that would be available if they had originally been filed in the MDL.

- **Status of Old Legacy And Paper Documents Already Produced**: Imerys has agreed to deposit in the MDL the state production.  The PSC has conducted an "analytical analysis" of the state production which includes 79,260 documents.  The PSC discussed a 30(B)(6) deposition on document retention and storage.  Prior to agreeing to do so, Imerys suggested the parties further confer on this issue.

  *Status:*  Prior to serving a Rule 30(B)(6) notice, Imerys proposed that counsel confer further with the Imerys team responsible for document collection.  The PSC has agreed to confer with Imerys on this issue.

- **Search terms:**  The parties discussed the PSCs proposal to exchange and agree upon search terms used to collect the documents previously produced.  The PSC's position is that it is in all parties' interest to make certain there is an agreed upon set of search terms.

  *Status*:  The parties expect to confer on this issue before the status conference.

- **Litigation Holds**:  Imerys will consider letting the PSC know when it initiated a litigation hold on documents and confirm that these were properly sent to third parties.

  *Status:* The parties will confer on this prior to the status conference.

- **Third party documents**:  The PSC requested that the Imerys identify third parties to whom the J&J defendants may have sent documents.

*Status:* The parties will confer on this prior to the status conference.

- **Organizational charts and structure:** The PSC requested organizational documents/charts that would identify those with relevant information.

  *Status:* The parties will confer on this prior to the status conference.

**Defendant Imerys Talc America's Position:** In the face of being of served with 108 interrogatories with over 200 additional subparts and 152 requests for production of documents, with over 125 additional subparts, by the very firms who have already served multitudes of discovery upon Imerys and are in possession of all responses to same and all documents produced to date, Imerys met and conferred with the Plaintiffs in good faith as directed by the Court. The Court made it quite clear at the last case management conference that the breadth of discovery propounded by Plaintiffs was overly broad and directed the Plaintiffs to pare down the requests. To date, despite several requests, Plaintiffs have not served pared down interrogatories or requests for documents. Rather, Plaintiffs are attempting to widen the scope of discovery by now requesting Rule 26 Disclosures, a Defense Fact Sheet and suggesting that they cannot serve pared down requests until they receive this information. This approach flies in the face of the meet and confer between the parties and the instructions of this Court. The majority of discovery already responded to by Imerys in other jurisdictions, was served on Imerys by the same firms that comprise the majority of the Plaintiffs steering committee including Beasley Allen, The Lanier Law Firm, Ashcraft & Gerel, Motley Rice, and Golomb & Honik. More than 350,000 pages of documents have been produced by Imerys together with responses to 224 Requests for Production and 254 Interrogatories, including an additional 239 subparts. Certainly with the large number of overlap between these law firms, and the PSC, Plaintiffs should be able to pare down these discovery demands to cover reasonable requests for information they believe they do not have. They have failed to do that.

In a case where at least one jurisdiction has found that Plaintiffs are unable to meet the scientific burden necessary to proceed to trial, Imerys does not believe it is unreasonable to make the Plaintiffs review the materials in their possession and determine what additional material they need before propounding additional requests. The rule in this District is that, absent leave of Court, Plaintiffs are entitled to 25 interrogatories inclusive of subparts. While Imerys is willing to be

reasonable and work with Plaintiffs, the burden should not be on Imerys to revisit material already in Plaintiffs' possession.

### b. **Personal Care Products Council ("PCPC)**

**Plaintiffs' Position:** Plaintiffs propounded 76 Requests for Production and 50 Interrogatories. Counsel for Plaintiffs and PCPC initially discussed the discovery requests on January 27, 2017. After this discussion, Plaintiffs agreed to send PCPC revised, reduced discovery requests, and PCPC agreed to review in the hopes of agreeing on the number and scope of the discovery requests. Plaintiffs eliminated approximately 50 Requests for Production and 8 Interrogatories and revised others to clarify or reduce the scope of the inquiry.

*Status*: Plaintiffs emailed the revised discovery requests to PCPC on February 2, 2017. Plaintiff's counsel are waiting for a response from Counsel for PCPC.

**Defendant PCPC's Position:** Personal Care Products Council ("PCPC") has responded to myriad written discovery requests propounded by talc plaintiffs primarily in New Jersey, Washington, DC, and Missouri, including 241 Requests for Production and 280 Interrogatories with 433 subparts. These requests were served by, among others, Ashcraft & Gerel, Seeger Weiss, Beasley Allen, Golomb & Honik and The Lanier Law Firm. PCPC has produced approximately 83,690 pages of documents. Although plaintiffs' counsel has characterized some of these documents as being duplicative, they are precisely what plaintiffs requested and include versions of documents that differ based on notations, handwritten notes, drafts, enclosures and cover documents. PCPC has not withheld any documents based on privilege. Two PCPC corporate representatives have been deposed in connection with talc litigation. Plaintiffs have not pursued depositions of any other PCPC personnel.

On February 2, 2017, Plaintiffs sent PCPC proposed, somewhat reduced interrogatories and document requests. PCPC is in the process of reviewing and will set up a time to meet and confer with Plaintiffs.

2. **Report on Federal Court Docket:**

As of February 10, 2017:

    **a.** There are currently <u>142 cases</u> pending in the MDL in which the Johnson & Johnson Defendants have been served (and have opened case nos.), totaling <u>983 Plaintiffs</u> (including <u>743 Plaintiffs</u> in <u>11 multi-plaintiff</u> cases from cases removed from Missouri state court, <u>101 Plaintiffs</u> in *Harders* removed from Illinois state court, and <u>15 Plaintiffs</u> in *Lovato* removed from New Mexico state court).

    **b.** There are 7 additional multi-plaintiff cases pending in E.D. Mo. that have been removed from MO state court (totaling <u>361 plaintiffs</u>) in which Plaintiffs filed motions to remand and opposed the CTO, but the JPML has not yet considered those cases.

    **c.** In total, including the 11 multi-plaintiff cases removed from Missouri state court, *Harders*, and the 7 additional E.D. Mo. cases that the JPML has not yet considered, there are <u>1,205 Plaintiffs</u> from multi-plaintiff cases filed in MO and *Harders* (<u>1,104</u> plaintiffs from just the MO cases and not *Harders*).

    **d.** There are a handful of other single-plaintiff cases that have been on CTOs and will be transferred in the near future to the MDL but would not greatly affect the number absent the plaintiffs in the multi-plaintiff cases.

3.    **State Court Litigation:**

**California:** There are 117 cases with 435 plaintiffs in the California coordinated proceeding, *Johnson & Johnson Talcum Powder Cases*, Judicial Council Coordinated Proceeding No. 4877. These cases are assigned to Judge Maren E. Nelson. Judge Nelson recently held a status conference on January 30, 2017. Science Day will be on March 7, 2017. The first trial date is July 3, 2017. During the conference, other deadlines were set for expert disclosure and depositions, and dispositive motions. Sargon (the state court equivalent of *Daubert*) science hearings are scheduled for June 5, 2017 through June 9, 2017. The next status conference is March 7, 2017.

**Delaware:**  There are currently 26 cases with more than 77 Plaintiffs. Plaintiffs filed a Motion for Consolidation in November 2016, but it has not been ordered by the Court.  All of the Delaware cases are pending before Hon. Charles E. Butler.  Johnson and Johnson Defendants filed a motion to dismiss for lack of personal jurisdiction on January 19, 2017.  Plaintiffs served jurisdictional discovery on January 31, 2017.

**Missouri:**  There are currently 19 cases with 1,288 plaintiffs pending before several judges in the 22nd Judicial Circuit Court, St. Louis (City), Missouri.  Trial in the case of *Daniels v. Johnson & Johnson, et al.* started before Judge Rex Burlison on February 9, 2017.  Appeals are pending from judgments entered in the *Jacqueline Fox* and *Gloria Ristesund* cases (individual claims filed in the multi-plaintiff *Tiffany Hogans* matter).

**New Jersey:**  There are currently 201 cases pending before Judge Johnson in the Atlantic County Superior Court Multicounty Litigation, *In re: Talc-Based Powder Products Litigation*, Case No. 300.  The cases are currently stayed for discovery purposes pending resolution of the plaintiffs' appeal of the ruling by Judge Johnson on the *Kemp* issues, with the exception of cases where *in extremis* plaintiffs have chosen to proceed for the limited purpose of preserving their testimony in anticipation of their death.

**District of Columbia**:  There are two cases pending in Superior Court of the District of Columbia:  1) *Lori Oules v. Johnson & Johnson , et al.* (2014 CA 8327B) which is pending before Judge Brian Holeman; 2) and *Donna Summerlin v. Johnson & Johnson, et al.*, (2017 CA 16B) which is pending before Judge Florence Pan.  The *Oules* case is set for trial on July 10, 2017.

### 4.   <u>Plaintiff's Fact Sheet</u>

The parties have met and conferred numerous times regarding a proposed Plaintiff Fact Sheet and exchanged several drafts.  There are thirteen items in dispute.  The parties have sought Judge Goodman's assistance with the resolution of the items in dispute.

### 5.  <u>Plaintiffs' Request for Defense Fact Sheets</u>

Plaintiffs have requested production of individual Defendant's Fact Sheets. Defendants do not agree that Defendant Fact Sheets are appropriate in this

litigation.  The parties have met and conferred and cannot reach agreement on this issue, and have sought Judge Goodman's assistance with the resolution of this item.

### 6. **MDL Centrality**

**Plaintiffs' Position:**  Plaintiffs submit that MDL Centrality should be used for the submission and service of both Plaintiff's Fact Sheets and Defense Fact Sheets.

**Defendants' Position:**   The contract with MDL Centrality that plaintiffs propose is significantly different from the contract used in past litigation. Defendants will confer directly with the vendor to see if  mutually agreeable terms can be reached.

### 7. **Staging of Discovery**

**Plaintiffs' Position:**  As the Court stated during the January 23, 2017 status conference, discovery should proceed at this time and any *Daubert* issues should be considered at the appropriate time. Discovery has not yet commenced. Discussions of *Daubert* motions are premature. Defendants have not produced one document in the MDL and no depositions have been taken.  Plaintiffs are entitled to a full and fair opportunity to discover this case prior to proceeding with any Bellwether Trials and the incumbent *Daubert* and motion practice associated with Bellwether Trials.  Defendants' request that discovery be limited to "scientific and medical" causation has no basis in the law or fact.   Plaintiffs are entitled to discover matters reasonably calculated to lead to admissible evidence in support of their claims. These matters includes Defendants' knowledge of the scientific evidence supporting a causal link between the genital use of talc and ovarian cancer, Defendants' internal testing and safety evaluations of its talcum powder products, Defendants' communications with the FDA, contamination, Defendants failure to warn, Defendants' marketing of its talcum powder products, information regarding adverse events, and other relevant topics.

**Defendants' Position:**  The main issue in this litigation is whether the use of cosmetic grade talc in the perineal area can cause cancer of the reproductive system.  Without proving causation, Plaintiffs' claims fail as a matter of law. Therefore, it is Defendants' position that the Court should address scientific and medical causation up front.  This will promote the efficient administration of

justice in these cases and will avoid the waste of time and effort of judicial resources.

Defendants propose the following plan to proceed first with discovery of scientific and medical causation issues:

    a. Any discovery of the Defendants shall be limited to scientific and medical causation and shall be completed by May 15, 2017.
    b. Plaintiffs shall identify general and specific causation experts and shall serve expert disclosures and reports by June 21, 2017.
    c. Plaintiff Expert depositions shall occur between June 28, 2017 and July 21, 2017.
    d. Defendants shall identify general and specific causation experts and shall serve expert disclosures and reports by August 11, 2017.
    e. Defendants' Expert depositions shall occur between August 18, 2017 and September 8, 2017.
    f. The following *Daubert* motion schedule shall apply for the parties' general causation experts:
        i. Moving Briefs due October 2, 2017
        ii. Response Briefs due November 3, 2017
        iii. Reply Briefs due November 21, 2017
        iv. Hearings to begin the week of December 4, 2017

## 8. Bellwether Trials

**Plaintiffs' Position:** Plaintiffs respectfully submit that Bellwether Trials should proceed at the appropriate time, but it is premature to establish a process by which Bellwether cases are selected or a scheduling order governing the selection, preparation and trial of Bellwether cases. The parties have been unable to agree upon preliminary pretrial orders, specifically, the Protective Order and Preservation Order. Neither a Plaintiff's Fact Sheet nor Defense Fact Sheets are in place. Defendants refuse to agree on an ESI protocol. As noted above, discovery has not commenced. Though Bellwether trials may be appropriate in the future, the third status conference in this MDL (only the second of which leadership is in place) is not the appropriate time for the consideration of the selection and scheduling of bellwether trials.

**Defendants' Position:** The bellwether trial pool should be selected randomly by the Court. There is no other meaningful way to select representative cases. As the *Manual for Complex Litigation (Fourth)* observes,

If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this information may skew the information that is produced. ***To obtain the most representative cases from the available pool, a judge should direct the patties to select the cases randomly*** or limit the selection to cases that the parties agree are typical of the mix of cases.[1]

Courts and legal commentators agree on this point. See, *e.g.*, *In re Chevron U.S.A., Inc.* 109 F.3d 1016, 1019 (5th Cir. 1997) ("A bellwether trial designed to achieve its value ascertainment function . . . has as a core element representativeness – that is, the sample must be a randomly selected one."); Loren H. Brown, Matthew A. Holian, Arindam Ghosh, *Bellwether Trial Selection in Multi-District Litigation: Empirical Evidence in Favor of Random Selection*, 47 Akron Rev. of L. 663, 681 (2014) ("A random sampling is most likely to yield a sample that is truly representative of the docket as a whole because it limits – if not eliminates – tactical manipulation by the parties.").

In other MDL proceedings, courts have embraced this approach and adopted random selection methods for identifying test trial candidates. For example, in *In re: Benicar (Olmesartan) Products Liability Litigation*, No. 15-md-2606, the court randomly selected the bellwether pool, and allowed each side several strikes of cases off of the list.[2] In *In re Baycol Prods. Liab. Litig.*, the court's selection program included all cases filed in the District of Minnesota involving Minnesota residents "plus a minimum of 200 additional cases selected at random from all MDL filed cases."[3] The court in *In re Norplant Contraceptive Prods. Liab. Litig.*

---

[1]  Manual for Complex Litigation (4th) § 22.315 (emphasis added).

[2]  See Case Management Order No. 15.

[3]  See Pretrial Order No. 89.

also used random selection.[4]   And in *In re Prempro Prods. Liab, Litig.,* 15 cases were "randomly dr[awn] from a hat."[5]

Defendants propose the following schedule for random bellwether selection:

a. All cases filed by February 15, 2017, shall be eligible for the first bellwether case pool.

b. On March 1, 2017, the Court shall randomly select 10 cases on file. These selected cases shall constitute the "Bellwether Pool". Plaintiffs in the Bellwether Pool will have thirty (30) days to serve the complaint if not already served and to serve and/or amend and update a completed Plaintiff Fact Sheet and medical records authorizations as required by Case Management Order No. ___.

c. Each side shall strike two cases from the Bellwether Pool. Those cases shall not be replaced, thus leaving a Bellwether Pool of six cases. The striking of the case from the Bellwether Pool does not automatically result in dismissal of the action.

d. Any dismissal of a Bellwether Pool case must be "with prejudice."

e. Any Bellwether Pool case which is dismissed by Plaintiffs before March 31, 2017 shall be replaced with another case selected by the Court by random draw from the cases on file with the Court as of that date.

f. Any Bellwether Pool case which is dismissed by Plaintiffs after March 31, 2017 shall be replaced with another case selected by Defendants. Plaintiffs' counsel shall be responsible for the payment of defense costs and fees in the workup of the case incurred on or after March 1, 2017.

g. From April 15, 2017 to May 31, 2017, the parties may depose the Plaintiff and spouse or domestic partner (whether or not a named plaintiff) and two of Plaintiff's treating physicians.

h. On June 5, 2017, each side may strike one case from the Pool. The Court on June 7th will then randomly select two cases from the remaining four cases to be the first two cases to be tried as individual cases in an order to be determined by the Court, with a discovery plan/order to be entered thereafter.

---

[4]    *See* 1996 WL 571536, at *1 (E.D. Tex. Aug. 13, 1996) ("[f]ollowing random selection of the twenty-five bellwether plaintiffs . . .").

[5]    Order re Bellwether Trial Selection (E.D. Ark. June 20, 2005)

     i.  Cases will be tried one after another, with a reasonable interim between trials, in the order of the draw.

## 9.  **Status of Pending Case Management Orders on Discovery**

### a.  **ESI Protocol:**

**Plaintiffs' Position:**       Plaintiffs provided Defendants a proposed ESI order on December 29, 2016.   The parties have conferred on at least three occasions regarding the proposed ESI protocol.   On each occasion, Defendants have refused to consider any other ESI protocol besides the order entered in *Chakalos*.   To be clear, the production in *Chakalos* was not unique but was a duplication of what had been produced at that time in the Missouri state court litigation.   Defendants assertions that all Plaintiffs in the MDL have access and are using documents produced in state court is incorrect.

The *Chakalos* order does not address pivotal ESI components.   For example, Plaintiffs are entitled to the native production of databases, not imaged reports from databases as allowed by the *Chakalos* order. *See* FRCP 34(b)(2)(E)(i) and (ii).   For documents that are being withheld as duplicates, Defendants should be required to produce the "Other CustodianFilePaths."   This file path metadata field is already being produced for the primary custodian and must be produced for all other duplicate custodians.   This metadata is tracked during the processing of documents and should not be a burden to produce for documents previously produced in state court and produced in the MDL for the first time.   It is only reasonable that any documents produced in the MDL, if later replaced by another image, include a "-R" designation to indicate the document is a replacement document.   Based on the *Chakalos* order Defendants are producing "FilePath" metadata only as to attachments.   Plaintiffs are entitled to this data not only for attachments but also for email messages and stand-alone electronic documents. Lastly, FRCP 34(b)(2(E)(i) requires that a party produce electronically stored documents in the form in which it is ordinarily maintained or in other words, native format.   Plaintiffs are entitled to Microsoft Word files, for example, in native format to allow reviewers to utilize all views and functionality, particularly the ability to view the document in track changes, in the same manner as defendants.

Defendants have been unwilling to discuss any of these and other reasonable requests.   For some variances to the *Chakalos* order, Plaintiffs have conveyed a willingness for the variation to be applied on a "going forward" basis.   The parties

will be submitting a Joint Letter to Judge Goodman seeking her assistance in resolving these and other issues related to the proposed ESI Protocol.

**Defendants' Position**:  The position taken by the plaintiffs here is different from the position they are taking in New Jersey and Missouri.  The *Chakalos* ESI Protocol should be adopted in this MDL proceeding.  The ESI Protocol used in the *Chakalos* case has been used in talcum powder cases like those pending before this Court for the past two and a half years.  The *Chakalos* ESI Protocol was the subject of a reasonable compromise between numerous lawyers, many of whom have cases in this MDL.  Defendants have spent a lot of time, effort and money working with technical consultants to ensure they could follow the *Chakalos* ESI Protocol.  The Johnson & Johnson Defendants alone have spent nearly three million dollars collecting, processing, reviewing and producing documents, as well as logging privileged documents, pursuant to the *Chakalos* ESI Protocol.

Defendants have reviewed Plaintiffs' proposed changes to the *Chakalos* ESI Protocol and note that this new protocol would require Defendants to go back and reprocess, rereview, reproduce, and prepare new privilege logs for documents that have been produced in other talcum powder cases in a different format.  This is so despite the fact that Plaintiffs have access to and have already started using documents produced by Defendants in this MDL proceeding.  Switching protocols at this time will result in significant delay, inefficiency and cost to Defendants.  In addition to the costs to retro-fit the previous productions, Defendants anticipate that Plaintiffs' proposed changes to the *Chakalos* ESI Protocol would increase the costs for Defendants by an estimated 25% for any future productions.

## b. <u>Pathology Protocol:</u>

The parties continue to confer regarding a proposed Pathology Protocol. Despite good faith efforts by all counsel the parties continue to discuss appropriate content to be considered for a Pathology Protocol.  If any issues remain by March 1, 2017, the parties will submit a Joint Letter to Judge Goodman to seek her assistance on those issues.

## c. <u>Preservation Order:</u>

Plaintiffs provided Defendants with a proposed Preservation Order on December 29, 2016.  On February 9, 2017, Defendants sent a redline of the proposed order.  The parties met and conferred on February 15, 2017.  The parties will continue to confer regarding a proposed Preservation Order. If any issues

remain by March 1, 2017, the parties will submit a Joint Letter to Judge Goodman to seek her assistance those issues.

### d.  Protective Order:

**Plaintiffs' Position:** The parties are conferring regarding a proposed Protective Order. If any issues remain by March 1, 2017, the parties will submit a Joint Letter to Judge Goodman to seek her assistance resolving those issues.

**Defendants' Position:** The position taken by the plaintiffs here is different from the position they are taking in New Jersey and Missouri. Defendants agree that if any issues remain by March 1, 2017, the parties will submit a Joint Letter to Judge Goodman to seek her assistance resolving those issues.

### e.  Waiver of Service

**Plaintiffs' Position:**   Plaintiffs have proposed an agreement with Defendants regarding waiver of service.

**Defendants' Position:**   Defendants do not agree to waiver service of process, which should be done pursuant to the Federal Rules of Civil Procedure.

### 10. Status of Pending Motions:

a. For the status of motions pending in individual cases, please see Exhibit 1 attached to this joint letter.

b. Defendant Personal Care Products Council's Omnibus Motion to Dismiss filed February 6, 2017. Plaintiffs' Opposition is due February 21, 2017. Defendant PCPC's Reply is due February 27, 2017. PCPC's Omnibus motion to dismiss applies to all cases in which PCPC is a defendant as identified in Exhibit A to PCPC's motion.

Respectfully submitted,

*s/Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  973-549-7000
Facsimile:  973-360-9831
Email:  susan.sharko@dbr.com

*s/Gene M. Williams*
Gene M. Williams
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
Telephone:  713-227-8008
Facsimile:  713-227-9508
Email:  gmwilliams@shb.com

*s/John H. Beisner*
John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  202-371-7000
Facsimile:  202-661-8301
Email: john.beisner@skadden.com

*s/Lorna A. Dotro*
Lorna A. Dotro
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
Telephone:  973-631-6016
Facsimile:  973-267-6442
Email: ldotro@coughlinduffy.com

*s/Sheryl Axelrod*

Sheryl Axelrod
THE AXELROD LAW FIRM, PC
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
Telephone:  215-461-1768
Facsimile:  215-238-1779
Email: saxelrod@theaxelrodfirm.com

*s/Michelle A. Parfitt*

Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone:  703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/P. Leigh O'Dell*

P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
Telephone:  334-269-2343
Email: leigh.odell@beasleyallen.com

*s/Christopher M. Placitella*

Christopher M. Placitella
COHEN PLACITELLA ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701
Telephone:  888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com

**Exhibit 1**

**Pending Motions in Individual Cases**

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Sonia Dolinger v. Johnson & Johnson, et al.* | 3:16-cv-09485 | Johnson & Johnson Defendants' Motion to Dismiss Plaintiff's Claims for Lack of Personal Jurisdiction filed January 26, 2017. Plaintiffs' Opposition is due February 27, 2017. Defendants' Reply is due March 10, 2017. |
| *Patricia Dysart v. Johnson & Johnson, et al.* | 3:16-cv-08564 | Johnson & Johnson Defendants' Motion to Dismiss 89 Plaintiffs' Claims for Lack of Personal Jurisdiction filed December 15, 2016. Plaintiffs' Opposition due February 28, 2017. Defendants' Reply due March 14, 2017.<br><br>Defendant Imerys Talc America, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction filed December 15, 2016. Plaintiffs' Opposition due February 28, 2017. Defendants' Reply due March 14, 2017.<br><br>Plaintiffs' Motion to Remand filed December 15, 2016. Fully briefed. |
| *Charles Fenstemaker, et al. v. Johnson & Johnson, et al.* | 3:16-cv-07418 | Johnson & Johnson Defendants' Motion to Dismiss Plaintiff Charles Fenstemaker's Claims for Lack of Personal Jurisdiction filed December 23, 2016. Fully briefed. |
| *Bridget Graves v. Johnson & Johnson, et al.* | 3:16-cv-08672 | Johnson & Johnson Defendants' Motion to Dismiss Plaintiff's Claims for Lack of Personal Jurisdiction filed December 23, 2016. Fully briefed. |

| | | |
|---|---|---|
| *Odell Holliday v. Johnson & Johnson, et al.* | 3:16-cv-09507 | Johnson & Johnson Defendants' Motion to Dismiss Plaintiff's Claims for Lack of Personal Jurisdiction filed January 26, 2017.  Plaintiffs' Opposition is due February 27, 2017.  Defendants' Reply is due March 10, 2017. |
| *Angela Lovato, et al. v. Johnson & Johnson, et al.* | 3:16-cv-07427 | Johnson & Johnson Defendants' Motion to Dismiss Eleven Plaintiffs' Claims for Lack of Personal Jurisdiction filed December 23, 2016.  Motion has not been opposed.

Defendant Ethicon Endo-Surgery, Inc.'s Motion to Dismiss Plaintiffs' Claims for Lack of Personal Jurisdiction and Failure to State a Claim filed December 23, 2016.  Motion has not been opposed. |
| *Bridget McBride v. Johnson & Johnson, et al.* | 3:16-cv-07891 | Plaintiff's Motion to Remand filed December 16, 2016.  Fully briefed. |
| *Robert Gendelman v. Johnson & Johnson, et al.* | 3:17-cv-00461 | Plaintiff's Motion to Remand filed January 31, 2017.  Defendants' Opposition is due March 2, 2017.  Plaintiffs' reply is due March 17, 2017. |
| *Christine Harders, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00726 | Plaintiffs' Motion to Remand filed February 9, 2017.  Defendants' Opposition is due March 13, 2017.  Plaintiffs' reply is due March 28, 2017. |
| *Mary Gallow, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00790 | Plaintiffs' Motion to Remand filed February 9, 2017.  Defendants' Opposition is due March 13, 2017.  Plaintiffs' reply is due March 28, 2017. |
| *Wynester Logan, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00797 | Plaintiffs' Motion to Remand filed February 10, 2017.  Defendants' Opposition is due March 14, 2017.  Plaintiffs' reply is due March 29, 2017. |
| *Farrah Starks, et al. v. Johnson & Johnson et al.* | 3:17-cv-00792 | Plaintiffs' Motion to Remand filed February 10, 2017.  Defendants' Opposition is due March 14, 2017. |

| | | Plaintiffs' reply is due March 29, 2017. |
|---|---|---|
| *Kelly Frazier, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00793 | Plaintiffs' Motion to Remand filed February 9, 2017. Defendants' Opposition is due March 13, 2017. Plaintiffs' reply is due March 28, 2017. |
| *Kimberly Carney, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00796 | Plaintiffs' Motion to Remand filed February 9, 2017. Defendants' Opposition is due March 13, 2017. Plaintiffs' reply is due March 28, 2017. |
| *Deanna Valle, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00798 | Plaintiffs' Motion to Remand filed February 9, 2017. Defendants' Opposition is due March 13, 2017. Plaintiffs' reply is due March 28, 2017. |
| *Joyce Williams, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00799 | Plaintiffs' Motion to Remand filed February 9, 2017. Defendants' Opposition is due March 13, 2017. Plaintiffs' reply is due March 28, 2017. |
| *Janice Bahmler, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00800 | Plaintiffs' Motion to Remand filed February 9, 2017. Defendants' Opposition is due March 13, 2017. Plaintiffs' reply is due March 28, 2017. |
| *Lisa Eveland, et al. v. Johnson & Johnson, et al.* | 3:17-cv-00794 | Plaintiffs' Motion to Remand filed February 9, 2017. Defendants' Opposition is due March 13, 2017. Plaintiffs' reply is due March 28, 2017. |