# EXHIBIT 1

STATE OF MISSOURI        )
                         )
CITY OF ST. LOUIS        )



**22ND JUDICIAL CIRCUIT**
**CIRCUIT CLERK'S OFFICE**
BY_____ DEPUTY

MISSOURI CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)

TIFFANY HOGANS, et al.,          )
                                 )
          Plaintiffs,            )
                                 )   Cause No. 1422-CC09012-01
vs.                              )
                                 )   Division No. 17
JOHNSON & JOHNSON; JOHNSON &     )
JOHNSON CONSUMER COMPANIES,      )
INC; and IMERYS TALC AMERICA,    )
INC., f/k/a LUZENAC AMERICA,     )
INC.,                            )
                                 )
          Defendants.            )

## ORDER

This cause is now before the Court on:  (1) the Johnson and
Johnson Defendants' "Motion to Dismiss Plaintiffs' Claims for
Lack of Personal Jurisdiction and Motion to Sever;" (2)
Defendant Imery Talc's "Motion to Dismiss Plaintiffs' Claims
against Imerys for Lack of Personal Jurisdiction;" (3) Defendant
Imery Talc's "Motion to Transfer Venue, Motion to Dismiss the
Non-Missouri Plaintiffs' Claims Under the Doctrine of Forum Non
Conveniens, and Motion to Sever;" and (4) Johnson and Johnson
Defendants' "Motion to Transfer Venue and Motion to Dismiss the
Non-Missouri Plaintiffs' Claims Under the Doctrine of Forum Non
Conveniens."  The Court now rules as follows.

1

## I. Background

This matter was filed by sixty-five (65) Plaintiffs, who have joined their claims pursuant to Missouri Rule 52.05, given that their claims allegedly arise out of the same series of transactions or occurrences and involve common questions of law and fact.  The case is essentially a products liability case[1], alleging injuries as a result of the Plaintiffs' (or their Decedents') use of certain talcum powder products (specifically, Johnson and Johnson's Baby Powder and "Shower to Shower" products).  Plaintiffs all assert that they or their deceased loved one developed ovarian cancer as a result of perineal use of these products.  Plaintiffs alleged that these products were designed, researched, developed, mined, manufactured, tested, marketed, advertised, sold and/or distributed by Defendants.

Two of the Plaintiffs, Ms. Tiffany Hogans and Ms. Marianne Westerman, are residents of Missouri.  Plaintiff Hogans is a citizen of the City of St. Louis, who was first exposed to talc in the City of St. Louis and first purchased and applied talcum powder in the City of St. Louis.  Plaintiff Westerman lives in the City of Ballwin; and she too first purchased and applied talcum powder in the State of Missouri.  The remaining sixty-three Plaintiffs are citizens of states other than Missouri, who first purchased and applied the talcum powder products in those states.

---

[1] Plaintiffs assert ten specific counts/theories of recovery, including (among others) strict liability for failure to warn, negligence, breach of express and implied warranty, civil conspiracy and negligent misrepresentation.

At present, (and considering the two very closely related Johnson & Johnson corporate entities as, in a sense, just "one" defending party), there are basically only two defendants in the case.[2] The Johnson and Johnson Defendants are alleged to have engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing the talc products. Defendant Imerys Talc America, Inc., is alleged to have mined and distributed the raw talcum powder, introducing it into interstate commerce with knowledge and intent of its use in manufacturing the talc products to be sold in the State of Missouri.

As alluded to in the opening paragraph herein, the Court is now presented with several dismissal claims (or closely related issues), urged by both Johnson & Johnson as well as Imerys, in four separately denominated motions, which do overlap to some extent but which also are each couched in slightly different terms. First and foremost, Defendants urge the Court to dismiss this case for lack of personal jurisdiction. In the alternative, as to some of the individual Plaintiffs' claims, Defendants move to transfer venue, and/or for severance of allegedly improperly joined claims, and/or for dismissal due to *forum non conveniens.*

---

[2] One of the originally named Defendants, a trade association named the Personal Care Products Council, was recently voluntarily dismissed from the case by stipulation of the parties.

## II. Personal Jurisdiction

### A. The Johnson & Johnson Defendants

Johnson & Johnson argues, based on the relatively recent U.S. Supreme Court holding in Daimler AG v. Bauman, 134 S. Ct. 746, 751-754 (2014), that there simply is no basis to exercise "general" jurisdiction over the Johnson & Johnson Defendants. Johnson & Johnson also contends, however, that aside from the two Missouri Plaintiffs (Ms. Hogans and Ms. Westerman), there is no basis to find "specific" personal jurisdiction over the non-Missouri Plaintiffs, given that all of them admittedly reside outside of Missouri and purchased/used the products in question and developed their cancers outside of Missouri. Thus, Defendants suggest, it would violate Johnson & Johnson's due process rights for this Court to exercise personal jurisdiction as to the claims of the non-Missouri Plaintiffs, since "any alleged in-state activities of the Johnson & Johnson Defendants, in relation to those Plaintiffs' claims, could not have given rise to the liabilities sued on."

"The sufficiency of the evidence to make a prima facie showing that the trial court may exercise personal jurisdiction is a question of law." Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 231 (Mo. banc 2010). When personal jurisdiction is contested, it is the plaintiff's burden to show "that defendant's contacts with the forum state were sufficient." Id. (citing Angoff v. Marion A. Allen, Inc., 39

4

S.W.3d 483, 486 (Mo. banc 2001)). "A reviewing court evaluates personal jurisdiction by considering the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri sufficient to satisfy due process." Id. "[T]he allegations of the petition are given an intendment most favorable to the existence of the jurisdictional fact." Moore v. Christian Fidelity Life Ins. Co., 687 S.W.2d 210, 211 (Mo. App. 1984); See also Noble v. Shawnee Gun Shop, Inc., 316 S.W.3d 364, 369 (Mo. App. W.D. 2010).

"Missouri courts employ a two-step analysis to evaluate personal jurisdiction." Bryant, 310 S.W.3d at 231 (citing Conway v. Royalite Plastics, Ltd., 12 S.W.3d 314, 318 (Mo. banc 2000)). "First, the court inquires whether the defendant's conduct satisfies Missouri's long-arm statute, section 506.500." Id. "If so, the court next evaluates whether the defendant has sufficient minimum contacts with Missouri such that asserting personal jurisdiction over the defendant comports with due process." Id.

Section 506.500.1 RSMo, Missouri's long-arm statute, reads as follows:

> Any person or firm, whether or not a citizen or resident of this state, or **any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits** such person,

5

firm, or corporation, and, if an individual, his personal representative, **to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:**

(1) **The transaction of any business within this state;**

(2) The making of any contract within this state;

(3) **The commission of a tortious act within this state;**

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

(Emphasis added).

"Section 506.500 is construed to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process clause." Bryant, 310 S.W.3d at 232 (citing State ex rel. Deere v. Pinnell, 454 S.W.2d 889, 892 (Mo. banc 1970)). "Extraterritorial acts that produce consequences in the state, such as fraud, are subsumed under the tortious act section of the long-arm statute." Bryant, 310 S.W.3d at 232 (citing Longshore v. Norville, 93 S.W.3d 746, 752 (Mo. App. 2002)).

"The Fourteenth Amendment's Due Process Clause bars Missouri courts from exercising personal jurisdiction over a defendant where to do so offends 'traditional notions of fair play and substantial justice.'" Bryant, 310 S.W.3d at 232 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1946)). "Accordingly, absent one of the traditional territorial bases of personal jurisdiction---presence, domicile or consent---a court may assert personal jurisdiction over a defendant only if certain minimum contacts between Missouri and the defendant are established." Id.

"When evaluating minimum contacts, the focus is on whether there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Bryant, 310 S.W.3d at 232 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1957). "This inquiry cannot be simply mechanical or quantitative." Bryant, 310 S.W.3d at 232 (citing Int'l Shoe Co., 326 U.S. at 316).

"A court has general jurisdiction over an out-of-state defendant if the defendant's connections with the state are systematic, continuous and substantial enough to furnish personal jurisdiction over the defendant based on any cause of action---even one that is unrelated to the defendant's contacts with the forum." Bryant, 310 S.W.3d at 232 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9

7

(1984)). "[A] court may assert jurisdiction over a foreign cor-poration to hear any and all claims against [it] only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially 'at home' in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014).

"By contrast, a court acquires 'specific jurisdiction' over an out-of-state defendant when the court 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Bryant, 310 S.W.3d at 232 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). "In some cases, single or isolated acts by a defendant in a state, because of their nature and quality and the circumstances of their commission, provide sufficient minimum contacts to support jurisdiction for liability arising from those acts." Id. at 233.

Moreover, as Plaintiffs have correctly pointed out in their memorandum in opposition to Johnson & Johnson's personal juris-diction dismissal motion, the key test that both the U.S. Supreme Court and our Missouri courts have recognized (whether the suit "'aris[es] out of or relate[s] to' the defendant's contacts with the forum"[3]) is a *disjunctive* (i.e., either/or) test. Thus in a fundamental sense, the crucial question becomes

---

[3] Daimler AG v. Bauman, 134 S. Ct. at 754-755; Bryant, 310 S.W.3d at 232-233.

what nexus is sufficient to satisfy the "arises out of or relates to" standard?

In that regard, this Court finds it important that a number of courts, including the U.S. Court of Appeals for the Eighth Circuit, have held that this test is satisfied even in some matters where the plaintiff's injuries are "related to" a defendant's activities in the forum state *even though* the plaintiffs' claims in a strict proximate cause sense did not "arise out of" the forum state activities. See <u>Myers v. Casino Queen, Inc.</u>, 689 F.3d 904, 912-913 (8th Cir. 2012) (holding, where plaintiff filed suit in Missouri against the non-resident Casino Queen for allegedly negligent conduct occurring in Illinois, that defendant advertised in the forum state, and that although plaintiff's injuries "did not arise out of the Casino Queen's advertising activities in a strict proximate cause sense, his injuries are nonetheless 'related to' those activities because he was subject to such advertising.") <u>Id.</u>, at 913.

That flexible, practical approach to interpreting and applying the test, this Court believes, is consistent with Missouri law. See, e.g., <u>Chromalloy Am. Corp. v. Elyria Foundry Co.</u>, 955 S.W.2d 1, 4 (Mo. banc 1997) (holding minimum contacts test is "not susceptible to mechanical application").

In this case, the Court believes the test is more than adequately met as to the Johnson & Johnson Defendants. The

9

alleged conduct of the Johnson & Johnson Defendants satisfies Missouri's long-arm statute because those Defendants allegedly marketed and sold their talcum products at issue in this case in Missouri for more than several decades; and Plaintiffs' tort claims are based in part on Defendants' distribution into the stream of commerce and sale of those products (and some Plaintiffs' exposure thereto)[4] that occurred in Missouri. The alleged conduct is sufficient to satisfy both the terms of the long-arm statute itself and the required minimum contacts of the Johnson & Johnson Defendants with the State of Missouri. Based on these alleged business activities and tortious acts committed by Defendants and their agents which occurred in Missouri, the Court thus concludes that it possesses specific personal jurisdiction over the Johnson & Johnson Defendants as to the non-Missouri Plaintiffs as well because Defendants sold the same products in Missouri that were purchased and used by the non-Missouri Plaintiffs in their respective states, and accordingly Defendants' contacts with this forum sufficiently "relate to" the litigation and Plaintiffs' claimed injuries.

Defendants have likewise cited no *controlling* or *persuasive* authority in support of their contention that each individual properly joined Plaintiff must make specific jurisdictional allegations. The Court acknowledges that in an extremely short

---

[4] The Court notes in passing that Johnson & Johnson expressly does not challenge that the Court may properly exercise specific jurisdiction over the two Missouri plaintiffs.  (See Defendants' Memorandum in Support of their motion to dismiss for lack of personal jurisdiction, at page 8 thereof, footnote 7.)

section of their Reply memorandum on the personal jurisdiction issue the Johnson & Johnson Defendants do cite a Fifth Circuit case as well as two unpublished federal district court opinions, in support of their contention that (as they put it) personal jurisdiction must be "a claim-specific and Plaintiff-specific inquiry" for each of the individual Plaintiffs.[5]   This Court, however, finds the published 5th Circuit Sieferth case to be both distinguishable from the instant case as well as not actually supportive of the proposition that Defendants cite it for; it further finds the two *unpublished* federal district opinions both to be either distinguishable and/or unpersuasive (aside from the fact that they of course lack any precedential value.)

The Court thus continues to believe, just as it found and held in its recent Order in the somewhat similar case of *Anders v. Medtronic*, that this "each-individual-plaintiff" argument is incorrect, because in a case like this one the Court's personal jurisdiction over a defendant "is based on the minimum contacts the defendant has with the state, and not the contacts that plaintiffs have with the state."[6]

Finally, Defendants' very heavy reliance on Daimler, *supra*, is misplaced.   This is so because, although it is true that the

---

[5] See "Defendant Johnson & Johnson['s] Reply in Support of Their Motion to Dismiss Plaintiffs' Claims for Lack of Personal Jurisdiction and Motion to Sever," at the bottom half of page 7 thereto, citing *inter alia* to Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006).

[6] "Order" entered in *Anders v. Medtronic, Inc.*, No. 1322-CC10209-02, (Hon. John F. Garvey), dated January 13, 2015. The Court acknowledges that the Johnson & Johnson Defendants, in their reply memorandum herein, have argued that the personal jurisdiction issue in the *Anders* order was wrongly decided, and thus have requested that "the Court reconsider its specific jurisdiction analysis in *Anders*." (Reply Memo at 8.) This Court respectfully disagrees with Defendants, as the Court continues to believe that its analysis in *Anders* was and is correct.

U.S. Supreme Court's holding in <u>Daimler</u> clearly diminished the scope and applicability of the "general jurisdiction" species of personal jurisdiction, and while it also is true--(contrary to what the Plaintiffs herein argue)--that under <u>Daimler</u> this Court does not have general personal jurisdiction over the Johnson & Johnson Defendants, for the reasons already explained above this Court does have specific personal jurisdiction in this matter over the Johnson & Johnson Defendants.

### B. Defendant Imerys Talc

The "minimum contacts" test and other key legal principles that govern the question of whether "non-traditional" personal jurisdiction can or cannot properly be exercised as to a given defendant consistent with due process are the same for every defendant; but the *facts* determining the answer to this question can of course vary from one defendant to another. Thus, in its own separate motion and memorandum seeking dismissal of the claims against it in this cause due to alleged lack of personal jurisdiction, Defendant Imerys correctly notes that Missouri courts require that some basis for personal jurisdiction must be shown for *each separate defendant* who challenges it, in order for that defendant to stay in the case. <u>Longshore v. Norville</u>, 93 S.W.3d 746, 751 (Mo. App. E.D. 2002).

Here, the facts concerning Defendant Imerys are in some respects different than those regarding the Johnson & Johnson Defendants.

12

Imerys Talc is a Delaware corporation with its principal place of business in California. It mined and distributed the raw talcum powder, introduced it into interstate commerce, and at relevant times was Johnson & Johnson's exclusive supplier of talc for its products. Nevertheless and without belaboring the point, an argument could be made---one which Imerys indeed does attempt to assert and emphasize herein---that its contacts with Missouri and its relevant business activities therein are more attenuated than what is required to meet the minimum contacts test. That question is at the very least debatable, however, as one could also argue the opposite based on the existing record; and it is by no means clear to this Court that Imerys' in-state contacts are constitutionally insufficient to establish specific personal jurisdiction over it in this matter.[7]

For the following reasons, however, the Court finds it does not need to engage in the minimum contacts/due process personal jurisdiction analysis with respect to Defendant Imerys, because the record here amply supports that there is a *traditional*, wholly independent basis for jurisdiction over Imerys.

---

[7] The record shows, for example, that Imerys has a distributor in the City of St. Louis---(Archway Sales, Inc.)---to which it supplies many different grades of its talc. (See Imerys' Responses to Jurisdictional Discovery, Request for Admission No. 1, attached as Exhibit 3 to Plaintiffs' memorandum in opposition to Imerys' motion.) The record thus supports that Imerys distributed the same defective raw talc at issue in this lawsuit to Missouri distributors, albeit for use in non-Johnson & Johnson products. Imerys, however, appears to take the position that these admitted Missouri contacts involving its fungible product do not in any meaningful sense "relate to" this lawsuit for purposes of personal jurisdiction analysis, and hence are legally irrelevant, because these admitted in-state activities of Imerys are separate and apart from any commercial relationship that Imerys has with Johnson & Johnson. See, for example, Imerys' memorandum in support, at 3, stating in part: "The talc that is used in the Products at issue in this case is not mined in Missouri," and further that "Imerys neither sells talc in Missouri *for use in the Products*, nor ships or distributes its talc in Missouri *for use in the Products*." (emphasis supplied). Rather, Imerys states, all of its "commercial transactions with Johnson & Johnson . . . took place outside the State of Missouri." Id.

The record shows that Imerys Talc was served in Missouri through its registered agent.

The Eighth Circuit holds that designating an agent for service of process in a state constitutes an act of consent--one which confers jurisdiction independent of the Due Process Clause and thereby authorizes jurisdiction for all causes of action. See Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1197 (8th Cir. 1990).

In Knowlton, the plaintiff filed suit in South Dakota, for an injury that arose in Iowa, against a defendant incorporated in Delaware and headquartered in Illinois. However, the defendant had appointed a duly registered agent in South Dakota for service of process. Knowlton, 900 F.2d at 1197. On those facts, the Eighth Circuit Court of Appeals held that the trial court could exercise jurisdiction, because the defendant had consented to jurisdiction by appointing the registered agent. Id; see also Sondergard v. Miles, Inc., 985 F.2d 1389 (8th Cir. 1993) (holding based in part on same reasoning).

Close analysis shows the Knowlton court based its holding and its reasoning on three key premises. First, the court found that designating a registered agent for service of process generally constitutes consent to jurisdiction in that state for all causes of action. Knowlton, 900 F.2d at 1199 ("One of the most solidly established ways of giving such consent is to designate an agent for service of process.") Indeed, the court

14

stated "[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts." Id. Second, the Knowlton court reasoned, such consent confers jurisdiction independent of, and separate from, due process analysis; see id., at 1198-1199. Third, the court based its reasoning that designation of a registered agent amounts to consent to all claims, not merely those that "arise from" or "relate to" a defendant's in-state activity, on the lack of "words of limitation" in Minnesota's registration statute. See Knowlton, 900 F.2d at 1199-2000.

In that regard this Court notes that the current applicable Missouri statute, section 351.582 RSMo, similar to the Minnesota statute discussed in Knowlton, is broadly worded, and provides: "[a] foreign corporation with a valid certificate of authority has the same . . . rights . . . and . . . is subject to the same duties, restrictions, penalties and liabilities . . . [of] a domestic corporation." It contains no words of limitation.

These key premises, underlying the 8th Circuit's holding in Knowlton, are supported by very longstanding precedents from the U.S. Supreme Court. See, e.g., Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917). There, the plaintiff had filed suit in Missouri, against an Arizona corporation, over events occurring in Colorado; and defendant had appointed an agent for service of process in Missouri. Id., at 94. The court held that Missouri could properly exercise juris-

15

diction over the defendant.  Id. at 95.  It reasoned that the defendant had committed a "voluntary act" and power to accept service of process "was actually conferred by a document."  Id. at 96.  See also Railroad Co. v. Harris, 79 U.S. 65, 81 (1871) ("A foreign corporation cannot migrate but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law the place.  One of the conditions may be that it consent to be sued there.")

It is true, as Defendant Imerys fairly and correctly points out, that our Missouri Supreme Court thus far has declined to expressly rule on the issue of whether designation of an agent for service of process, without more, is sufficient to confer personal jurisdiction.  This Court believes, however, that close and careful scrutiny of recent rulings by our state's highest court clearly suggests that it leans strongly towards the view that such a traditional basis for jurisdiction does suffice.

In State ex rel. K-Mart v. Holliger, 986 S.W.2d 165 (Mo. banc 1999), the plaintiff filed suit in Missouri, for a Colorado slip-and-fall accident, against a Michigan corporation (K-Mart). K-mart was registered to do business in Missouri and operated a number of retail stores in Missouri.  Id. at 166.  K-Mart contended that, despite its in-state service, jurisdiction may only be obtained by compliance with Missouri's long-arm statute. Id.  Much like the court in Knowlton, supra, our Supreme Court recognized that traditionally, service upon a registered agent

16

was a sufficient basis for exercising personal jurisdiction. Id. at 167. It then observed that the legislative intent of the long-arm statute was to "extend" jurisdiction over defendants who could not be served within the state. Id. at 167-168 (emphasis in original), noting that the long-arm statute never abolished traditional in-state service. The court declared, "we find no Missouri case challenging jurisdiction over a foreign corporation whose registered agent was served in Missouri." Id. at 168. It rejected K-mart's contention that the long-arm statute constitutes the exclusive means of obtaining jurisdiction. Id. The court further recognized that the registration statute, section 351.582(2), does not by its terms limit what claims it subjects nonresident corporations to for purposes of jurisdiction, but instead expressly treats such defendants served in-state like domestic corporations. Id.

Ultimately, however, the court in Holliger declined to expressly rule on the issue of whether designation of an agent for service of process was alone sufficient to confer jurisdiction, choosing instead to decide the case on due process grounds. Id. at 168. Nevertheless, this Court agrees with Plaintiffs herein that Holliger remains considerably instructive and pertinent to the issue at hand because, much like Knowlton, supra, it did recognize that traditionally in-state service (such as was the case here with Imerys Talc) would suffice for purposes of jurisdiction; and too that this traditional means of

17

jurisdiction presumably remains valid and independent of the long-arm statute.[8]

Even more recently, the Missouri Supreme Court has opined that due process minimum contacts analysis is required **only** if one of the "traditional" bases of personal jurisdiction--such as actual presence, or consent--is "absent." Bryant, *supra*, 310 S.W.3d at 232. It logically follows that when a foreign corporation does consent to jurisdiction, through means of having a registered agent who is served in-state, then the courts of this state may exercise jurisdiction over such a defendant.

The Court thus finds that it may properly exercise personal jurisdiction herein over Defendant Imerys Talc.

### III. Alleged Improper Joinder/Motions for Severance

Defendant Imerys as well as the Johnson & Johnson corporate Defendants both argue, in their own respective motions, that all 65 Plaintiffs have been improperly joined under Missouri Rule 52.05, and thus argue (in the alternative to dismissal due to alleged lack of personal jurisdiction) that all Plaintiffs' claims should be severed into separate actions. Substantively, Imerys' and Johnson & Johnson's arguments on this defense claim are largely indistinguishable.

---

[8] This Court would note too, as Plaintiffs have pointed out in their briefing, that this view is also strongly supported by RESTATEMENT (SECOND) OF CONFLICT OF LAWS, section 44 and comment a thereto (stating that by authorizing an agent to accept service of process, a corporation consents to the exercise of jurisdiction as to "all causes of action," and that such consent is effective even if no other basis exists for exercise of jurisdiction over the person.)

Defendants contend that joining the "separate and distinct" personal injury and/or wrongful death claims of 65 individual plaintiffs in this type of case, who hail from 29 different states, is simply "beyond the pale." Citing State ex rel. Gulf Oil Corp. v. Weinstein, 379 S.W.2d 172, 173-175 (Mo. App. 1964) for purported support, they say that Missouri courts have "long rejected" attempts by multiple plaintiffs to join claims that "do not arise out of the same transaction or occurrence." They contend that this is particularly true in what they characterize as "complex, individualized medical claims, like those presented in this case." They then cite a plethora of *unpublished* federal district court opinions (and a tiny handful of published ones) that they believe, applying an analogous federal Rule of Civil Procedure, support their position in this regard. And lastly as to this issue, Defendants also cite for support (and rely heavily on) two Orders of trial judges from this Circuit in relatively recent years, regarding two *somewhat* similar cases---Brown v. Walgreens Co., No. 1022-CC00765, slip opn. at 4 (dated November 15, 2010); and Ballard v. Wyeth, No. 042-07388A, slip opn. also at 4 (dated August 24, 2005).

The Court finds these arguments to be unconvincing.

The permissive joinder of parties is governed by Rule 52.05(a). State ex rel. Nixon v. Dally, 248 S.W.3d 615, 616 (Mo. banc 2008). Rule 52.05(a) states as follows:

> **Permissive Joinder.** All persons may join in
> one action as plaintiffs if they assert any
> right to relief jointly, severally, or in
> the alternative in respect of or arising out
> of the same transaction, occurrence or
> series of transactions or occurrences and if
> any question of law or fact common to all of
> them will arise in the action. All persons
> may be joined in one action as defendants if
> there is asserted against them jointly,
> severally, or in the alternative, any right
> to relief in respect of or arising out of
> the same transaction, occurrences or series
> of transactions or occurrences and if any
> question of law or fact common to all of
> them will arise in the action. A plaintiff
> or defendant need not be interested in
> obtaining or defending against all the
> relief demanded. Judgment may be given for
> one or more of the plaintiffs according to
> their respective rights to relief, and
> against one or more defendants according to
> their respective liabilities.

The policy of the law is to try all issues arising from the same occurrence or series of occurrences together. Bhagvandoss v. Beiersdorf, Inc., 723 S.W.2d 392, 395 (Mo. banc 1987); Bryan v. Pepper, 175 S.W.3d 714, 719 (Mo. App. S.D. 2005). Events arise out of the same series of transactions or occurrences when they have either a common scheme or design, or if all acts or conduct are connected with a common core, common purpose, or common event. See Dally, 248 S.W.3d at 617, holding, in part, that a "series" of transactions or occurrences in the context of Rule 52.05(a) requires "that the series of occurrences be related by a common question of law or fact," and that it is "readily apparent" that such criterion is satisfied when (among other situations) there is a "common factual question as to the

origin" of plaintiffs' injuries; see also State ex rel. Allen v. Barker, 581 S.W.2d 818, 826-827 (Mo. banc 1979).

Here, the 65 Plaintiffs' claims clearly do present common questions of both law and fact as to, *inter alia*, the origins of Plaintiffs' ovarian cancer injuries, and arise out of the same "series" of transactions or occurrences within the broad meaning of Rule 52.05. Plaintiffs allege that they each were damaged by the same wrongful conduct of mining, manufacturing, studying, testing, distributing, marketing, and selling, etc., the talcum-based products in question. For each individual Plaintiff's claim herein, *many* of the core issues are common and essentially the same: the same talc miner and manufacturer; same basic injuries; same defect; same alleged duty owed to each Plaintiff; same causes of action alleged; same alleged failure to warn *in spite of* alleged knowledge that the Products were carcinogenic; and during the course of litigation it is likely that much or even most of the evidence will deal with liability and causation issues that are common and shared among all of the Plaintiffs relative to the dangers inherent in perineal use of the two talc products at issue; etc.

In seeking to (in essence) sail against the wind by arguing that joinder here is improper, both sets of Defendants (Johnson & Johnson, and Imerys) rely quite heavily on two prior opinions of this Circuit Court---Brown v. Walgreens Co., *supra*, and Ballard v. Wyeth, *supra*. And indeed, it is true that for sound

reasons which were well-articulated in those two opinions, this Court has been--and remains--skeptical of product liability cases by multiple plaintiffs when such cases are brought against a great many, multifarious defendants. Id. But in seeking to make that argument in the case at bar, Defendants are in effect comparing apples to oranges. In Ballard v. Wyeth, Circuit Court No. 042-07388A, there were 34 different defendants and "no single Plaintiff had claims against all 34 defendants." Similarly in Brown v. Walgreens, Cause No. 1022-CC00765, there were 38 defendants, and none of the plaintiffs had the same relationship to all of the defendants. In this Court's view, there is a very significant distinction between cases with many multiple, unrelated Defendants, such as Ballard and Brown, and a case such as this one, where (in essence) the only two existing defendants are the raw talc miner/supplier and the products' manufacturer/distributor.

The Court finds Plaintiffs here are properly joined under Rule 52.05(a), and their claims should not be severed.

### IV.  Motions to Transfer Venue

Johnson & Johnson moves as well to transfer venue of the sixty-three (63) non-Missouri Plaintiffs to Cole County, and to transfer venue of one of the Missouri Plaintiffs (Ms. Westerman) to St. Louis County. In its own separate motion for transfer of venue, Defendant Imerys expressly "joins in and incorporates by reference" the same "arguments, citations, and legal authority

raised by Defendants Johnson & Johnson in their Motion to Transfer Venue."

Defendants argue the claims of the sixty-three non-Missouri Plaintiffs should be transferred to Cole County because (they say) such a result is required by sections 508.010.(4), (5) and (14)RSMo, in light of the twin facts that: (a) all of the non-Missouri Plaintiffs were allegedly first exposed to the products at issue outside of Missouri and developed their cancer outside of Missouri; and (b) the only Missouri registered agent for any of the Defendants is located in Cole County.[9] They further argue that venue is proper as to Ms. Westerman "only in St. Louis County," because that is where she resides and, according to a fair construction of the Petition's allegations as to her, that locale is also where she was first exposed to/injured by the talc products at issue.

Venue in Missouri is determined solely by statute. State ex rel. Ford Motor Co. v. Manners, 161 S.W.2d 373, 375 (Mo. banc 2005); State ex rel. Linthicum v. Calvin, 57 S.W.3d 855, 857 (Mo. banc 2001).

Section 508.010.4 RSMo states:

> Notwithstanding any other provision of law, in all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue shall be in the county where the

---

[9] Plaintiffs allege that Imerys is the only Defendant to maintain a registered agent in Missouri. Defendant Imerys' registered agent is located Jefferson City, Missouri (which is in Cole County)--where in fact Imerys was served with process in this matter. The case file indicates that the Johnson & Johnson defendants, by way of contrast, were served in their home state of New Jersey.

> plaintiff was first injured by the wrongful
> acts or negligent conduct alleged in the
> action.

Section 508.010.5 RSMo states in pertinent part:

> Notwithstanding any other provision of law,
> in all actions in which there is any count
> alleging a tort and in which the plaintiff
> was first injured outside the state of
> Missouri, venue shall be determined as
> follows:
>
> (1) If the defendant is a corporation, then
> venue shall be in any county where a
> defendant corporation's registered agent is
> located or, if the plaintiff's principal
> place of residence was in the state of
> Missouri on the date the plaintiff was first
> injured, then venue may be in the county of
> the plaintiff's principal place of residence
> on the date the plaintiff was first
> injured[.]

Additionally section 508.010.9 provides that in all actions venue shall be determined when the plaintiff was first injured; and section 508.010.14 provides that a plaintiff is deemed first injured "where the trauma or exposure occurred rather than where symptoms are first manifested."

The Missouri legislature has mandated that singular terms in its statutes should be construed as including their plural forms "unless there be something in the subject or context repugnant to such construction." State ex rel. BJC Health Sys. V. Neill, 121 S.W.3d 528, 530 (Mo. banc 2003). Sec. 508.010.4 should therefore be construed accordingly, and be read as "venue shall be in the county where the plaintiff was [or plaintiffs were] first injured . . . ."

24

Thus, as Defendants in their briefing seem at times to tacitly acknowledge but do not quite expressly concede, their whole argument as to venue appears to be heavily dependent upon the premise that the Plaintiffs' individual claims have been improperly joined and must be severed.

However, for the reasons previously set forth herein, the Court has determined that Plaintiffs' claims have, in fact, been *properly* joined.

Consequently, in this case venue is proper in the City of St. Louis as to the entire cause of action and all Plaintiffs' claims, because joinder of the claims is proper, and Plaintiff Tiffany Hogans clearly has alleged that she was first exposed to and first injured by the talc-based products at issue in the City of St. Louis.

### V. Motions to Dismiss Based on *Forum Non Conveniens*

Both Defendant Imerys as well as the Johnson & Johnson Defendants urge the Court to find that the claims of all of the Plaintiffs who are not Missouri residents should be dismissed on grounds of *forum non conveniens*. Defendants maintain that "all" of the recognized factors of public and private convenience that courts customarily consider when assessing such a motion, in this case "weigh heavily" in favor of dismissal based on *forum non conveniens*.

Under the doctrine of *forum non conveniens*, a trial court has broad discretion to refuse to exercise jurisdiction, even if

there is proper jurisdiction and venue, if the forum is seriously inconvenient for the trial of the action, and if a more appropriate forum is available to the petitioner.    Anglim v. Mo. P. R. Co., 832 S.W.2d 298, 302 (Mo. banc 1992); Moyers v. Moyers, 284 S.W.3d 182, 187 (Mo. App. E.D. 2009).

"The trial court should weigh six important, but non-exclusive, factors in making its decision: 1) the place where the cause of action accrued; 2) the location of witnesses; 3) the parties' residence; 4) any nexus with the place of suit; 5) the public factor of the convenience to and burden on the court; and 6) the availability of another court with jurisdiction that affords a forum for the plaintiff." Moyers, 284 S.W.3d at 187. "Any additional factors considered and the weight assigned to each depend upon the circumstances of the particular case." Id. "In addition to the foregoing factors, the trial court shall consider whether proceeding in Missouri would cause injustice by oppressing the defendant or place an undue burden on the court." Id.

A plaintiff has a right to choose any forum where there is proper jurisdiction and venue in which to file the plaintiff's cause of action.    State ex rel. Wyeth v. Grady, 262 S.W.3d 216, 219-220 (Mo. banc 2008).    In considering a defendant's FNC argument, the Court must keep in mind that a plaintiff's choice of forum should not be disturbed except for "weighty reasons," and then only if the balance weighs strongly in favor of the

defendant.  Anglim, 832 S.W.2d at 302.  Thus, the Court should honor a Plaintiff's choice of forum if reasonable persons could differ with a decision to dismiss.  Barrett v. Missouri Pacific R.R. Co., 688 S.W.2d 397, 399 (Mo. App. E.D. 1985).  Further, the Missouri Supreme Court has expressly rejected the notion that a plaintiff must bear the burden of justifying his choice of forum in cases where the litigation is between out-of-state residents over causes of action that arose out-of-state.  See Anglim, 832 S.W.2d at 303-305.  Indeed, under our state's very Constitution, non-residents have a recognized right to litigate their claims here, and Missouri courts "have a clear duty to provide a forum and a fair trial [to such litigants] in con-formity with established principles" of law.  Adkins v. Hontz, 280 S.W.3d 672, 678 (Mo. App. W.D. 2009).  Thus, the forum non conveniens doctrine should "be applied with caution and only upon a clear showing of inconvenience and when the ends of justice require it."  Id., at 676.

Weighing the overall balance here, the Court concludes that this Court is not seriously inconvenient for trial of the action; there is no more significantly convenient or more appropriate forum because the claims are properly joined; and Defendants have not made a convincing showing that it would in any real-world sense be more convenient for them to try all of the Plaintiffs' individual claims in their respective individual home states.  The Court acknowledges that at least to a limited

degree it likely would be somewhat more convenient for Johnson & Johnson to try the case in its home state of New Jersey (which is their fallback "alternative fora" suggestion); but that alone does not show that *this* forum is impermissibly inconvenient. Finally, while the six factors may not present a totally one-sided picture, the Court finds that on balance and overall they do not "weigh heavily" in favor of dismissal; the Court further finds no significant or undue burden on this Court to try the matter here.

Accordingly, the court declines to exercise its discretion to dismiss Plaintiffs' claims on *forum non conveniens* grounds.

### VI. Conclusion

**WHEREFORE**, for all of the foregoing reasons, it is Ordered and Decreed that the Johnson & Johnson Defendants' as well as Defendant Imerys' respective motions to dismiss for lack of personal jurisdiction, their respective motions to dismiss based on doctrine of *forum non conveniens*, their respective motions to sever, and their respective motions to transfer venue, are all hereby DENIED.

SO ORDERED:

_____
John F. Garvey, Judge

Dated: 3-17 , 2015

28