# EXHIBIT 2

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

CLYDE LAGRONE, ON BEHALF OF
MARTHA LAGRONE, DECEASED,
FRANCIS CERNIGLIA, ON BEHALF OF
JANET CERNIGLIA, DECEASED,
VLADISLAV BLACK, ON BEHALF OF
INNA BLACK, DECEASED, CLAUDIA
GREGORY AND STEVE GREGORY,
BRUCE KUMFER, ON BEHALF OF
THELMA KUJAT, DECEASED, MICHAEL
PAUL, ON BEHALF OF LOLA PAUL,
DECEASED, ELEANOR GILBANE, ON
BEHALF OF THE ESTATE OF MARY RAY
HEARD, CYNTHIA YARNELL, LINDA
HESELTON, BEVERLY DENNY, KAREN
NEWPORT, ROBIN PARKER, SARAH
BROOKS, BRENDA STEINBARTH,
JAYSON CHRISTENSEN, ON BEHALF OF
JODIE STEELE, LAURIE LANDRUM,
ROBIN LOWE, CATHY HAWKINS-PANEK,
ELEANOR CARRINGTON, GALE SAYLES,
KRISTAL KNIGHT, MINA LEON, DON
BIGELOW, ON BEHALF OF LISA
BIGELOW, JULIUS STOEHR, ON BEHALF
OF JOANNE STOEHR, CHARLES HAYER,
ON BEHALF OF CHARLENE HAYER,
SCOTT MUELLER, ON BEHALF OF
RACHEL MUELLER, KIMBERLY
FANCIULLO, MARY FAMEREE, DONNA
KOVAL, LAURA BRUTON, BETTY
WILLIS, SHIRLEY STRICKLAND,
REBECCA WALL, SUZANNE BELLOTTO,
ROBERTA MORELLO, KAY DAWSON,
CHRISTINE JUDKINS, CARROL JANAK,
LULA USSERY, JOAN DOUGLAS, CAROL
DODGE, RENEE BARROW, MICHELLE
KIRBY, JANICE FITZGERALD, SILVIA
DIAZ, JOYCE GIBSON, BETTY OWENS,
MARGRIT SHEHATA, LINDA CLARKE,
TAHNEE JOHNSON, DESIREE YOUNG,
CYNTHIA ACKERMAN, JOYCE FOX,
TOMMICA WINZER, CAROLYN LESTER,
LORRAINE TURK, ANN GORDON, MARY
ASCHINGER AND BRAD ASCHINGER,
SHATAPHY BAUGHNS, JANET GRESKE

Case No. 4:17-cv-00066

**JURY TRIAL DEMANDED**

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

AND THOMAS GRESKE, MARY RAY,
RENEA REHBEIN, DEANNA SMITH,
STEPHANIE SMITH, KIMBERLY STEIN,
ON BEHALF OF PATRICIA TAUBIG,
DECEASED, RHONDA DANIELS, JANICE
BARKER, DENISE KHOURY AND VICTOR
KHOURY, JOHN MOEN, RICHARD
SLACK, LORRAINE VEGA, CHERYL
PIMENTEL, JUDY A. MACDONALD,
LYNNE D. SMITH, MELINDA W. OBERT,
LINDA SUE SCHROEDER, CATHY
SWEENEY, DONNA KALMAN, SHEILA
BUNCH, PAMELA KNAPP, LAURA
GAMBLE,

       Plaintiffs,

vs.

JOHNSON & JOHNSON, JOHNSON &
JOHNSON CONSUMER COMPANIES, INC.,
IMERYS TALC AMERICA, INC. F/K/A/
LUZENAC AMERICA, INC.,

       Defendants.

## NOTICE OF REMOVAL

Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc., formerly

known as Johnson & Johnson Consumer Companies, Inc., ("JJCI") (collectively, the "Johnson &

Johnson Defendants"), by their undersigned attorneys, hereby give notice of the removal of this

action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the

Eastern District of Missouri.

This is one of dozens of cases pending in federal courts around the country, in which

plaintiffs allege that the use of talc products caused their ovarian cancer. Except in this action,

not every plaintiff alleges a diagnosis of ovarian cancer. Plaintiffs Deanna Smith and Richard

Slack allege they or their decedent suffered from endometrial cancer, (Compl. ¶¶ 67, 75), and

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

Plaintiff Janice Renee Barker alleges she was diagnosed with cervical dysplasia.[1]  (*Id.* at ¶ 76). On October 4, 2016, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL NO. 2738, *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, before Judge Freda L. Wolfson in the United States District Court for the District of New Jersey, to coordinate these cases.  The Johnson & Johnson Defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag along" procedure contained in the MDL rules.

As grounds for removal, which Judge Webber found to be valid in *Addelson v. Sanofi S.A., et al*, No. 4:16CV01277 ERW, 2016 WL 6216124 (E.D. Mo. October 25, 2016) (denying motion to remand and granting motion to dismiss non-Missouri plaintiff for lack of personal jurisdiction), the Johnson & Johnson Defendants state as follows:

---

[1]     Plaintiffs' counsel's new tactic of now including in these multi-plaintiff filings plaintiffs who are alleging entirely different injuries (other than ovarian cancer) only further demonstrates the egregiousness of Plaintiffs' misjoinder.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

## NATURE OF THE ACTION[2]

1.      This is a personal injury products liability action by 78 unrelated individuals[3] from 29 different states.  Each Plaintiff alleges the development of some unspecified subtype of ovarian or endometrial cancer or cervical dysplasia as a result of applying "talcum powder" products (including JJCI's Baby Powder® or Shower-to-Shower®) to her perineal area.  Plaintiffs separately allege that they developed ovarian cancer endometrial cancer, or cervical dysplasia at different dates and times between 2000 and 2016 as a result of using different amounts of the products for different durations of time between 1946 and 2016.  Plaintiffs filed their Petition ("Complaint") in the Circuit Court for the City of St. Louis against three defendants: the Johnson & Johnson Defendants and Imerys Talc America, Inc. (the alleged talc supplier for the Johnson

---

[2]      The Johnson & Johnson Defendants acknowledge that Defendants (based on arguments related to the arguments presented herein) previously removed, pursuant to diversity jurisdiction, numerous other multiple-plaintiff filings in the multi-plaintiff talc litigation currently pending in the City of St. Louis.  While some similar cases have been previously remanded, several courts have recently stayed such cases to allow the newly appointed MDL judge to decide jurisdictional issues.  *See e.g.* Order at 1-2, *Fenstemaker v. Johnson & Johnson*, No. 4:16-cv-00938-JAR, ECF No. 32 (E.D. Mo. Sept. 13, 2016); Order at 1-2, *Frazier v. Johnson & Johnson*, No. 4:16-cv-01388-JAR, ECF No. 18 (E.D. Mo. Sept. 13, 2016); Order at 1-2, *Starks v. Johnson & Johnson*, No. 4:16-cv-1362-AGF, ECF No. 29 (E.D. Mo. Sept. 16, 2016).

In removing the instant case, the Johnson & Johnson Defendants acknowledge the remand opinions, but respectfully suggest that the analysis in these opinions should not be applied here, or should be reconsidered given the developing weight of authority, which overwhelmingly indicates that personal jurisdiction is clearly lacking in circumstances exactly like those presented here, and it should be considered first by this Court. *Addelson, et al. v. Sanofi S.A., et al*, 4:16-CV-01277-ERW, 2016 WL 6216124 (E.D. Mo. Oct. 25, 2016).  Moreover, none of the courts in this District that previously remanded the talc cases substantively addressed the important (and straightforward) personal jurisdiction arguments, either as an initial matter or as complementary to the fraudulent joinder arguments.  The Johnson & Johnson Defendants rely upon new legal authority from courts across the country to support their argument that (1) the Court should consider the simple issue of personal jurisdiction before subject matter jurisdiction and (2) personal jurisdiction is lacking in circumstances exactly like those presented here.  Finally, since these cases were previously remanded, three talc trials (all involving non-Missouri Plaintiffs) have occurred in the Missouri Circuit Court for the City of St. Louis.  And more trials involving non-Missouri Plaintiffs are set in the coming months.  These circumstances further demonstrate the critical need to resolve the straightforward issue of personal jurisdiction in this case.  Additionally, the Johnson & Johnson Defendants respectfully submit that, in the event the Court determines that remand is appropriate, interlocutory review of these issues is especially warranted given the Supreme Court's recent issuance of *Daimler* (post *Prempro*); *Daimler's* impact on the issues of joinder and personal jurisdiction; and the continuing (and overwhelming) weight of authority indicating that personal jurisdiction is lacking in these circumstances and should be considered by this Court as an initial matter.

[3]      Out of the 82 plaintiffs, Mr. and Mrs. Gregory, Mr. and Mrs. Aschinger, Mr. and Mrs. Greske, and Mr. and Mrs. Khoury, are the only plaintiffs whose allegations are related and therefore properly joinable claims. (Compl. ¶¶ 5, 6, 60, 61, 63, 64, 71, 72).

4

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

& Johnson Defendants).  Of the 82 individual Plaintiffs, *76 of the Plaintiffs are completely diverse from all three named Defendants*, and *only three of the Plaintiffs are Missouri citizens*.

2.      Contemporaneously with this Notice of Removal, the Johnson & Johnson Defendants are filing a motion to dismiss the 79 non-Missouri Plaintiffs for lack of personal jurisdiction.  None of the Defendants in this case are subject to the personal jurisdiction of Missouri Courts as to the claims of the non-Missouri Plaintiffs.  This Court should rule on the straightforward issue of personal jurisdiction first and dismiss the claims of all non-Missouri Plaintiffs, thereby creating complete diversity between the remaining Missouri Plaintiffs and any remaining Defendants.

3.      Although it is clear that this Court should resolve the straightforward personal jurisdiction issue before deciding subject matter jurisdiction, removal is still proper pursuant to the procedural misjoinder doctrine because the claims of these non-Missouri Plaintiffs are jurisdictionally improper and because the claims of these unrelated 7 Plaintiffs do not arise out of the same transaction or occurrence.  *See* FED. R. CIV. P. 20.

I.      **THE COURT SHOULD REACH THE STRAIGHTFORWARD PERSONAL JURISDICTION ISSUE FIRST, DISMISSING THE CLAIMS OF ALL NON-MISSOURI PLAINTIFFS AND THEREBY CREATING COMPLETE DIVERSITY.[4]**

4.      This Court is empowered to reach the straightforward issue of personal jurisdiction first.  *See Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 578, 584-87 (1999) (holding that "in cases removed from state court to federal court, . . . there is no unyielding jurisdictional hierarchy," and affirming the district court's decision to resolve the "straightforward" issue of

---

[4]      Contemporaneously with filing this notice of removal, the Johnson & Johnson Defendants move to dismiss the claims of all Plaintiffs whose *claims* have no connection to Missouri for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, among other grounds.  Similarly, co-defendant Imerys will move to dismiss the claims asserted by all Plaintiffs for lack of personal jurisdiction.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

personal jurisdiction before addressing subject matter jurisdiction).[5]  Importantly, personal jurisdiction is "an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to adjudication.'"  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  A defendant's personal jurisdiction argument "relies on the constitutional safeguard of due process to stop the court from proceeding to the merits of the case."  *Id.*

5.  As addressed in more depth below, Missouri courts lack personal jurisdiction over Defendants as to the claims of the non-Missouri Plaintiffs.  This jurisdictional finding is dictated by recent United States Supreme Court precedent, and affirmed by state and federal courts across the country, including by Judge Webber in *Addelson*.  Thus, the Court should reach the straightforward personal jurisdiction first.

**A.     Missouri Courts Lack Personal Jurisdiction Over Non-Missouri Plaintiffs' Claims, As Recently Re-affirmed in the *Addelson*, *Bard*, *Zofran* and *Beard* Cases.**

6.  Of paramount importance to this Court's analysis are four recent opinions squarely rejecting the notion that the City of St. Louis may play judicial host to the claims of nationwide plaintiffs whose claims lack the requisite jurisdictional connection to the City.  *See Addelson, et al. v. Sanofi S.A., et al*, 4:16-CV-01277-ERW, 2016 WL 6216124 (E.D. Mo. October 25, 2016); *In re: Bard IVC Filters Products Liab. Lit*., No. 15-2641, 2016 WL 6393596 (D. Ariz. Oct. 28, 2016); *In re Zofran (Ondansetron) Prods. Liab. Litig.* MDL No. 1:15-cv-md-2657-FDS, 2016 WL 2349105 (D. Mass. May 4, 2016); *Beard v. Smithkline Beecham Corp*., No.

---

[5]     *See also Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp*., 549 U.S. 422, 431 (2007) ("*Ruhrgas* held that there is no mandatory sequencing of jurisdictional issues."); *Pervasive Software Inc. v. Lexware GMBH & Co*., 688 F.3d 214, 232 (5th Cir. 2012) ("Accordingly, we see no error in the district court's decision to dispose of the personal jurisdiction issue first . . ."); *Gilmor v. Preferred Credit Corp*., No. 10–0189–CV–W–ODS, 2011 WL 111238, at *1 n.1 (W.D. Mo. 2011) (stating that "it is permissible to address personal jurisdiction before addressing subject matter jurisdiction"); *Foslip Pharm., Inc. v. Metabolife Int'l, Inc*., 92 F. Supp. 2d 891, 899 (N.D. Iowa 2000) (addressing issue of personal jurisdiction before improper joinder question); *Locke v. Ethicon*, C.A. 4:14-cv-02648, 2014 WL 5819824, at *2 (S.D. Tex. Nov. 10, 2014) (addressing the question of personal jurisdiction before subject matter jurisdiction because doing so "leads to a more efficient result without offending principles of federalism"); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("[T]here is no unyielding jurisdictional hierarchy.")

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

4:15-CV-1833-RLW, 2016 WL 1746113, at *2 (E.D. Mo. May 3, 2016). These cases illustrate that (even if packaged together with the claims of a Missouri Plaintiff) Missouri courts lack personal jurisdiction over Defendants with respect to claims brought by non-Missouri Plaintiffs who allege product usage and injury in their home states. These cases also support the notion that such a straightforward jurisdictional issue should be reached as an initial matter.

7.      In *Addelson*, two plaintiffs, one from Missouri and one from New Jersey, filed suit alleging out-of-state defendants manufactured, marketed, and sold a defective drug, Taxotere. The New Jersey plaintiff was prescribed the drug and took the drug in New Jersey. Defendants removed the case to the Eastern District of Missouri and also filed a motion to dismiss, seeking dismissal of the New Jersey plaintiff based on lack of personal jurisdiction. Judge Webber addressed that motion's personal jurisdiction issue first stating, "the personal jurisdiction question is straightforward, while the issue of subject matter jurisdiction is more complicated, due to the doctrine of fraudulent misjoinder." 2016 WL 6216124 at *2.

8.      In finding no personal jurisdiction existed over the defendants for the New Jersey plaintiff, Judge Webber, explained that:

> "Simply doing continuous and systematic business in a state is not enough to establish general jurisdiction. *Daimler A.G.*, 134 S. Ct. at 760-61. There are no allegations, such as Defendants maintained an office in Missouri, or employees here, or any other facts, which would suggest Defendants are at home in Missouri . . . Plaintiffs' allegations simply state Defendants distributed, marketed, promoted, and sold Taxotere in St. Louis and Missouri. There is not enough to establish general jurisdiction as outlined in *Daimler*."

*Id*. at *3. The Court went on to explain that specific personal jurisdiction also did not exist for the New Jersey plaintiff because no allegations had been made regarding the connection between plaintiff's claims and Defendants' Missouri contacts, and each individual plaintiff must establish personal jurisdiction: "supplemental specific personal jurisdiction does not exist." *Id*. Fn. 3.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

9.      To be clear, the following rulings in Judge Webber's recent opinion in *Addelson* are directly on point, and these rulings should be applied here:

> "The personal jurisdiction question is straightforward, while the issue of subject matter jurisdiction is more complicated, due to the doctrine of fraudulent misjoinder. Therefore, this Court will first address the issues of personal jurisdiction before subject-matter jurisdiction."

> "Registering with the Secretary of State and maintaining a registered agent in Missouri does not create personal jurisdiction."

> "Because the Court will grant dismissal of [the New Jersey Plaintiff]'s claims, the remaining Plaintiff and Defendants are diverse from one another and the Court has subject matter jurisdiction."

> "The Court will stay this matter pending transfer of the case to multidistrict litigation to conserve judicial resources and promote efficiency."

*Addelson*, 2016 WL 6216124.

10.      Similarly, *In re: Bard IVC Filters Products Liab. Lit.*, No. 15-2641, 2016 WL 6393596 (D. Ariz. Oct. 28, 2016) also involved a multi-plaintiff personal injury case filed in the City of St. Louis that included the claims of multiple non-Missouri Plaintiffs.  The case was removed to the Eastern District of Missouri and subsequently transferred to the MDL.  The MDL court found that the Missouri courts lacked personal jurisdiction over the defendants as to the claims brought by the out of state plaintiffs.   In regard to general jurisdiction, the court explained:

> Plaintiffs do not directly argue that Defendants are subject to general personal jurisdiction in Missouri, nor could they. Plaintiffs identify no Missouri-related contacts by Defendants other than sales and marketing efforts, and the Supreme Court has held that such contacts are not sufficient for general jurisdiction.

*Id*. at \*4 (citing *Daimler*) ("Defendants are not subject to general jurisdiction in Missouri. Their marketing efforts and profits from the State are not sufficient, and Plaintiffs cannot show that they otherwise operate so continuously and systematically in Missouri as to render them 'at home' there.").

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

11.     The court next addressed specific jurisdiction.  First, the court emphasized that the out of state plaintiffs' claims did not arise out of or relate to the defendants' contacts with the forum. The court explained:

> Plaintiffs provide no facts to show how their claims arise out of Bard's marketing and sales of its IVC filters in Missouri, particularly given that out-of-state Plaintiffs do not allege that they received their filters in Missouri or otherwise have any link to the State. Plaintiffs have failed to show that the out-of-state Plaintiffs can establish specific personal jurisdiction over Defendants.

*Id*. at *6.

12.     Second, the court firmly rejected the notion that joinder of claims brought by multiple non-resident plaintiffs with the claims of a Missouri plaintiff somehow confers personal jurisdiction over the defendants as to all the plaintiffs' claims:

> Under Plaintiffs' theory of personal jurisdiction, any company engaged in the sale or marketing of products in Missouri, and whose products allegedly cause a Missouri plaintiff's injury, would be subject to personal jurisdiction in Missouri for claims brought by any plaintiff who allegedly suffered a similar injury anywhere in the country. Such a broad theory of personal jurisdiction has been rejected by the Supreme Court as "unacceptably grasping."

*Id*. at *5 (citing *Daimler*). The court succinctly stated, "Joinder is not the same as jurisdiction."

*Id*.

13.     *In re Zofran (Ondansetron) Prods. Liab. Litig.* MDL No. 1:15-cv-md-2657-FDS, 2016 WL 2349105 (D. Mass. May 4, 2016) involved a multi-plaintiff personal injury case *filed in the City of St. Louis* and including the claims of *multiple non-Missouri Plaintiffs*.  The case was removed the Eastern District of Missouri, and subsequently transferred to the MDL.  The Court, *addressing the issue of personal jurisdiction first*, explained:

> In cases where subject-matter jurisdiction "involve[s] no arduous inquiry, . . . both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." However, if "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question," then the court may address personal jurisdiction first.

> In this case, considerations of judicial economy strongly suggest resolving the issue of personal jurisdiction ahead of subject-matter jurisdiction. Resolution of the question of subject-matter jurisdiction necessarily involves an assessment of GSK's contention that the three non-Missouri plaintiffs were either fraudulently joined or procedurally misjoined. . . . The application of the doctrine of procedural misjoinder involves similarly complicated questions of law. . . . Both inquiries are made even more complicated where, as here, the alleged joinder deficiency is based not on the merits of the underlying claim, but on the ability of the Court to exercise personal jurisdiction over the defendant against whom the claim is made.

*In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2016 WL 2349105, at *2 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999)). The Court further concluded that the Missouri courts lacked personal jurisdiction (general or specific) over the claims of the non-Missouri plaintiffs, and it dismissed those claims. *Id.* at *5 ("It is therefore clear that a Missouri court would not have specific personal jurisdiction over the claims brought by those out-of-state plaintiffs."). Because its dismissal created diversity jurisdiction among the remaining parties (the Missouri Plaintiff and Defendants), the Court denied the Motion to Remand. The Court explained:

> With the dismissal of plaintiffs Hancock, Tyler, and Barchiesi, the only remaining plaintiff is Kierra Simmons. The parties do not dispute that she is a citizen of Missouri for diversity purposes, and, as noted, the parties also do not dispute that GSK is a citizen of Delaware. Thus, there is complete diversity among the parties and the Court therefore has subject-matter jurisdiction over the dispute. Plaintiff's _motion to remand will be denied_.

*Id.* at *5 (emphasis added).

14. The *Zofran* opinion tracks the jurisdictional holding of an opinion issued by Judge Ronnie White just one day earlier on May 3, 2016. *See Beard v. Smithkline Beecham Corp.*, No. 4:15-CV-1833-RLW, 2016 WL 1746113, at *2 (E.D. Mo. May 3, 2016). *Beard* also involved a multi-plaintiff personal injury case _filed in the City of St. Louis_ and including the claims of _multiple non-Missouri Plaintiffs_. The case was removed to the Eastern District of Missouri,

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

where Defendants promptly challenged the Missouri courts' ability to exercise personal jurisdiction over them as to the claims of the non-Missouri Plaintiffs. Judge White agreed that Missouri courts lacked personal jurisdiction over the claims of the non-Missouri Plaintiffs, stating:

> This Court, however, agrees with more recent judicial precedent from the United States Supreme Court and this district that have determined that more substantial contacts are required to hale a litigant into the court's forum. The extent of Plaintiff's allegations is that GSK marketed and sold Paxil in Missouri. These facts are much less than was alleged in *Daimler* and, therefore, personal jurisdiction cannot be found here. Simply marketing and selling a product in a state does not make the defendant's affiliations with the state so "continuous and systematic as to render them essentially at home in the forum state." . . . . Plaintiffs have not alleged that they were sold Paxil in Missouri or that they ingested Paxil in Missouri. In fact, Plaintiffs have not alleged any connection between Missouri and their injuries. Plaintiffs have not alleged any facts supporting a finding of personal jurisdiction and the Court finds that such jurisdiction does not exist.

*Id.* at *2. Accordingly, Judge White granted the Motion in part, severed the cases, and transferred the claims of the out-of-state Plaintiffs to their home venues. The recent *Addelson, Bard, Zofran,* and *Beard* opinions demonstrate that this personal jurisdiction issue is not complicated. There is no constitutional basis to exercise general jurisdiction over any of the Defendants, and the non-Missouri Plaintiffs' claims do not arise from any in-state activities of the Defendants—rendering specific jurisdiction a non-starter. Thus, the Court should reach the straightforward issue of personal jurisdiction presented in this case first, and rule that the non-Missouri Plaintiffs cannot establish personal jurisdiction over Defendants. *Ruhrgas*, 526 U.S. at 578, 584-87.[6]

---

[6] In contrast, the subject matter jurisdiction issue is a more "arduous" inquiry than the simple personal jurisdiction issue. "[C]onsiderations of judicial economy strongly suggest resolving the issue of personal jurisdiction ahead of subject-matter jurisdiction," due to the "complicated" nature of fraudulent joinder and misjoinder questions of law. *Id.* at *2. *See also In re: Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010) (determining whether fraudulently joined or procedurally misjoined is necessarily a case-specific inquiry).

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

**B.     The Court Should Consider Personal Jurisdiction First to Ensure Due Process.**

15.     Not only is the issue of personal jurisdiction straightforward in this case.  It is also extremely important in these circumstances.  By refusing to consider the issue first, the Johnson & Johnson Defendants will continue to be deprived of their Due Process rights as a result of the ongoing talc litigation in the City of St. Louis courts (including this case).  This Court should rule on personal jurisdiction first to cease the improper practice of using the City of St. Louis courts to prosecute a massive de-facto MDL in violation of the Johnson & Johnson Defendants' Due Process rights, when personal jurisdiction is clearly lacking over the vast majority of claims that have been filed there.

16.     Plaintiffs clearly seek to deprive Defendants of their right to federal diversity jurisdiction and maintain this entire docket of cases in St. Louis City Courts, which is an improper forum for the vast majority of these claims.  The result of Plaintiffs' improper jurisdictional tactics is undeniable.  By endorsing Plaintiffs' tactics, the City of St. Louis Courts are now playing host to the claims of over 1,500 out-of-state talc Plaintiffs that have been intentionally spread across over 20 multi-plaintiff filings to keep these claims in the City Courts. Each of these filings (like this case) typically has a single (or just a few) St. Louis or Missouri residents, with the rest of the Plaintiffs bringing claims that do not arise out of or relate to Defendants' contacts with this forum.  More traveling Plaintiffs are certain to arrive in St. Louis over the next months and years, making the issue of personal jurisdiction (which can be easily resolved by this Court) of the utmost importance.

17.     In sum, the limits of personal jurisdiction should be addressed by this Court to ensure Due Process, and the simple issue is squarely before the Court and should be considered first.  *See Ruhrgas*, 526 U.S. at 588 ("[T]he district court may find that concerns of judicial

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

economy and restraint are overriding.") (citing *Association Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 566-567 (5th Cir. 1993) ("[F]ederal intrusion into state courts' authority . . . is minimized" when personal jurisdiction turns on federal constitution issues)). Further, determining the personal jurisdiction issue at this stage in the litigation provides clarity and predictability and prevents wasting time and resources. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (Scalia, J., concurring in judgment) ("Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claim, but which court is the right court to decide those claims."); *Gilmore v. Preferred Credit Corp.*, No. 10-01890-CV, 2011 WL 111238, at *1 n.1 (W.D. Mo. Jan. 13, 2011) ("While jurisdictional issues must be addressed first, it is permissible to address personal jurisdiction before addressing subject matter jurisdiction. The Court seems it appropriate to do so in this case in the interest of clarity."); see also *Locke v. Ethicon Inc.*, No. 4:14–CV–2648, 2014 WL 5819824 (S.D. Tex. Nov. 10, 2014).

C. **In Reaching the Issue of Personal Jurisdiction First and Dismissing the Claims of Non-Missouri Plaintiffs, the Court Will Be on Sound Legal Footing. Federal and State Courts Across the Country Uniformly Agree that Personal Jurisdiction Is Lacking in These Precise Circumstances.**

18.     Like the recent *Addelson, Bard, Beard* and *Zofran* opinions, Courts across the country have continued to find that personal jurisdiction is lacking in circumstances like those presented here. There is no basis to exercise general jurisdiction over any of the Defendants, and the non-Missouri Plaintiffs' claims do not arise from any in-state activities of the Defendants— rendering specific jurisdiction a non-starter.

1. **The Johnson & Johnson Defendants Are Not Subject to Suit in Missouri for Claims Brought by the Non-Missouri Plaintiffs.**

19.     As will be explained more fully in the Motion to Dismiss, fully incorporated herein by reference, it is clear that the non-Missouri Plaintiffs cannot establish personal jurisdiction over the Defendants in Missouri.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

20.     The Circuit Court for the City of St. Louis (and indeed, any court in Missouri – state or federal) lacks personal jurisdiction (both general and specific) over the Defendants as to the claims of all but **three** of the 82 Plaintiffs.[7]  Under the Supreme Court's controlling opinion in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), general jurisdiction exists over a non-resident corporation only when its "affiliations with the State are so continuous and systematic as to render it essentially *at home* in the forum State." *Id.* at 751–54 (citations omitted, emphasis added); *see also Addelson,* 4:16-CV-01277-ERW, 2016 WL 6216124, at *3 (E.D. Mo., October 25, 2016) (same); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (same).   A corporation generally is "at home" only in the corporation's place of incorporation and principal place of business.  *Daimler*, 134 S. Ct. 746 at 760.  Plaintiffs assert that both Johnson & Johnson Defendants "regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri."   (Compl. ¶¶ 88, 90).  Similarly, Plaintiffs allege that "all Defendants . . . introduced [the products at issue] into interstate commerce with knowledge and intent that such products be sold in the States" which Plaintiffs are citizens of.  (*Id.* ¶ 93).

21.     And, as Plaintiffs concede in their Complaint, the Defendants are incorporated and maintain their principal places of business in New Jersey, Delaware, and California, and there are no other facts alleged to render the Defendants *at home* in Missouri in order to support the exercise of general jurisdiction.[8]   Accordingly, courts in Missouri lack general jurisdiction

---

[7]      To be clear, Plaintiffs Clyde Lagrone, Gayle A. Sayles and Rebecca Wall are the only Missouri residents who allege that they or their decedent purchased and used talcum powder in Missouri.  (Compl. ¶¶ 2, 22, 35, 94).  Plaintiffs Sayle and Wall also allege that they developed ovarian cancer in Missouri.  (Compl. ¶¶ 22, 35).

[8]      Further, in support of their Motion to Dismiss for Lack of Personal Jurisdiction, the Johnson & Johnson Defendants will furnish undisputed affidavit testimony that they are not residents of Missouri; they do not own, operate, or lease any facilities in Missouri; none of their officers reside in Missouri; they do not maintain any records in Missouri; and they do not manufacture the products in Missouri.  Rather, the record evidence demonstrates that the products at issue are manufactured outside of Missouri and then distributed throughout the country.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

over the Defendants.  *See Daimler*, 134 S. Ct. at 760; *see also Sonera Holding B.V. v. Cukurova Holding A.S*, 750 F.3d 221, 223 (2d Cir. 2014) (stating that the *Daimler* opinion "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only *in the exceptional case* where its contacts with another forum are so substantial as to render it '*at home*' in that state" (emphasis added)); *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (stating that, pursuant to *Daimler*, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."); *In re: Bard IVC Filters Products Liab. Lit*., No. 15-2641, 2016 WL 6393596, at *4 (D. Ariz. Oct. 28, 2016) (finding general personal jurisdiction did not exist in multi-plaintiff medical device litigation because "Plaintiffs identify no Missouri-related contacts by Defendants other than sales and marketing efforts[.]"); *Locke v. Ethicon Inc*., No. 4:14–CV–2648, 2014 WL 5819824 (S.D. Tex. Nov. 10, 2014) (holding, in accord with *Daimler*, that revenue from corporation's product sales in Texas did not render corporation subject to general jurisdiction in Texas); *Eaves v. Pirelli Tire, LLC*, No. 13–1271–SAC, 2014 WL 1883791, at *9 (D. Kan. May 12, 2014) (holding that "plaintiffs' stream of commerce arguments are to no avail for general jurisdiction") (unpublished); *Lexion Medical, LLC v. SurgiQuest, Inc*., No. 13–2453, 2014 WL 1260761, at *4 (D. Minn. Mar. 26, 2014) (stating that although defendant had "repeatedly transacted business" in State, "a corporation's "continuous activity of some sorts within a state" is not sufficient to support general jurisdiction) (unpublished); *In re Plavix Related Cases*, No. 2012L5688, 2014 WL 3928240, at *5-8 (Trial Order) (Ill. Circ. Ct. Aug. 11, 2014) ("Plaintiffs' jurisdictional framework, taken to its logical conclusion, would produce exactly that forbidden result: national general jurisdiction in every state in which Defendants are doing business and generating sales revenue.  *Daimler* makes clear that such an approach to general jurisdiction does not comport with due process."); *Commerce Bank v. The Bank of New York Mellon*, No. 1316-

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

CV 28444, 2014 WL 3690660, at *1-2 (Mo. Cir. Ct. Jackson Cty. June 25, 2014) (recognizing and applying the jurisdictional principles of *Daimler*); *Teague v. Johnson & Johnson*, No. CJ-13-305, 2014 WL 5343318 (Trial Order) (Ok. Dist. Ct. July 2, 2014) (holding, in context of similar multi-plaintiff medical device case, that personal jurisdiction was "lacking as to the non-Oklahoma Plaintiffs" whose claims had been improperly joined with claims of an Oklahoma plaintiff).

22.     Specific jurisdiction also is lacking over the Johnson & Johnson Defendants as to the claims of Plaintiffs who have no pleaded connection to Missouri.  The Complaint establishes that the claims of these Plaintiffs, who admit that they did not purchase or use the products in Missouri and did not "develop"[9] ovarian cancer in Missouri, have no connection to Missouri. Given these undisputed facts, there are no in-state activities of the Defendants that "gave rise" to these Plaintiffs' claims, and courts in Missouri lack specific jurisdiction over the Defendants as to the claims of these non-Missouri Plaintiffs.  *See Daimler*, 134 S. Ct. at 760 (specific jurisdiction focuses on whether the in-state activities of the corporate defendant "*gave rise to the liabilities sued on.*" (emphasis added)); *See Addelson et al. v. Sanofi S.A. et al.,* 4:160-CV-01277-ERW, 2016 WL 6216124, at *4 (E.D. Mo. October 25, 2016) (holding Missouri court lacked personal jurisdiction over New Jersey plaintiff because plaintiff had not alleged any facts connecting claims to defendants' Missouri contacts: "No allegations have been included regarding the nature and quality of the contacts with the forum state, the quantity of the contacts, or the relationship between [non-Missouri plaintiff's] claims and those contacts."); *In re: Bard IVC Filters Products Liab. Lit.*, No. 15-2641, 2016 WL 6393596, at *6 (D. Ariz. Oct. 28, 2016) (finding no specific personal jurisdiction over non-Missouri plaintiffs where company sold and

---

[9]     For purposes of this filing, the Johnson & Johnson Defendants adopt the terminology used by Plaintiffs in the Complaint.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

marketed products in Missouri but alleged injuries did not occur in Missouri: "Plaintiffs provide no facts to show how their claims arise out of Bard's marketing and sales of its IVC filters in Missouri, particularly given that out-of-state Plaintiffs do not allege that they received their filters in Missouri or otherwise have any link to the State); *Keeley v. Pfizer*, 2015 WL 3999488, at *2-4 (E.D. Mo. July 1, 2015) (holding that Missouri court lacked specific jurisdiction over Pfizer as to claims brought by Georgia Plaintiff when there were "no facts suggesting Plaintiff was prescribed the medication in Missouri, purchased the medication in Missouri, saw the advertisements in Missouri, or in any way injured in Missouri"); *Neeley v. Wolters Kluwer Health, Inc.*, 2013 WL 3929059, at *4 (E.D. Mo. July 29, 2013) (holding that Missouri courts lacked specific jurisdiction over generic drug manufacturer for claims brought by Kentucky plaintiffs because such claims were "*entirely unrelated to*" manufacturer's "activities in Missouri" and that Kentucky plaintiffs' "cause of action 'arises out of' and 'relates to' activities in the State of Kentucky") (emphasis added); *Locke v. Ethicon Inc.*, 58 F. Supp. 3d 757, 2014 WL 5819824, at *1-3, 5-8 (S.D. Tex. Nov. 10, 2014) (holding that court lacked personal jurisdiction over Johnson & Johnson for claims brought by out of state plaintiffs who alleged injury in their home states).

23.     Additionally, recent rulings from <u>St. Louis County Courts</u> declining to exercise personal jurisdiction over non-resident defendants as to claims brought by out-of-state plaintiffs further support Defendants' arguments in this case that the St. Louis City Courts lack personal jurisdiction over Defendants as to the claims of the non-Missouri Plaintiffs.  *See, e.g.*, *Linda Stewart, et al., v. Wyeth LLC*, et al., Cause No. 14SL-CC02768, Circuit Court of St. Louis County (February 23, 2016) (Attached as **Ex. A**); *Pasco Manzi, et al., v. Schnuck Markets*, *Inc. et al.*, Case No. 10SL-CC03514, Circuit Court of St. Louis County (February 23, 2016) (Attached

as **Ex. B**); *Betty Bryan v. Wyeth LLC, et al.*, Case No. 14SL-CC02769, Circuit Court of St. Louis

County (February 23, 2016)  (Attached as **Ex. C**).

> **2.**  **The Overwhelming Weight of Authority Dictating The Dismissal of the Non-Missouri Plaintiffs' Claims for Lack of Personal Jurisdiction Continues to Grow.**

24.  Courts throughout the country continue to conclude that they lack personal

jurisdiction (both general and specific) over non-resident defendants as to claims brought by out

of state plaintiffs in these precise circumstances (i.e., when the claims do not arise from

defendants' contacts with the forum in which suit is brought).  And this includes four recent

cases considering the filing of claims by non-Missouri Plaintiffs in the City of St. Louis,

impermissibly packaged together in multi-plaintiff filings (just like this case).  *See Addelson, et*

*al. v. Sanofi S.A., et al.,* No. 4:16CV01277 ERW, 2016 WL 6216124, at *4 (E.D. Mo. October

25, 2016) (finding the court had no specific jurisdiction over the New Jersey plaintiff's claims

because no facts were alleged connecting that plaintiff with the defendants' Missouri contacts.

"No allegations [had] been included regarding the nature and quality of the contacts with the

forum state, the quantity of the contacts, or the relationship between [the non-Missouri

plaintiff's] claims and those contacts.  There are simply no facts connecting [the non-Missouri

plaintiff] to the State of Missouri")*; In re Bard IVC Filters Products Liab. Lit.,* 2016 WL

63933596, at *5 (rejecting theory that personal jurisdiction may arise for out of state plaintiffs

whose injuries have no relation to Missouri but are brought with the claims of a Missouri

resident,  because "such a broad theory of personal jurisdiction has been rejected by the Supreme

Court as 'unacceptably grasping'");  *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2016 WL

2349105, at *5 (concluding no specific personal jurisdiction over non-Missouri plaintiffs' claim

where "complaint falls far short of establishing any nexus between the non-Missouri plaintiffs'

claims and GSK's Missouri-based activities" and non-Missouri Plaintiffs "do not allege that they

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

were prescribed Zofran in Missouri, took Zofran in Missouri, that their children suffered injuries in Missouri," or "any facts connecting the conduct of GSK in Missouri, if any, to their own claims"); *Beard v. Smithkline Beecham Corp.*, No. 4:15-CV-1833-RLW, 2016 WL 1746113, at *2 (E.D. Mo. May 3, 2016) ("Plaintiffs have not alleged any connection between Missouri and their injuries. Plaintiffs have not alleged any facts supporting a finding of personal jurisdiction and the Court finds that such jurisdiction does not exist.").

25.      *Addelson, Bard, Zofran* and *Beard* are no exception.  *See, e.g.*, *In re Testosterone Replacement Therapy Prods. Liab.*, No. 14 C 1748, 15C 11058, 2016 WL 640520, at *6 (N.D. Ill. Feb. 18, 2016) (concluding that no "pendent specific personal jurisdiction" existed over defendants as to out of state plaintiff's claims, and noting that it "would thus be unfair and contrary to the rationale underlying the minimum contacts doctrine to allow plaintiffs to use the Missouri plaintiff's claims as a hook to reel defendants into a series of separate trials in a distant and inconvenient forum to try issues unrelated to their conduct within the forum"); *Demaria v. Nissan North America, Inc.*, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016) ("Under the circumstances of this case, where each plaintiff's claim is predicated on the law of the particular state where he or she purchased a car and the claims of the other plaintiffs as alleged remain unrelated to anything that transpired in Illinois, imposing personal jurisdiction for all of the claims because specific jurisdiction may lie as to this one plaintiff's claims would run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis. Given the current allegations, the Court is not persuaded that pendent personal jurisdiction is established simply because specific jurisdiction may exist as to DeMaria's claims."); *Cahen v. Toyota Motor Corp.*, No. 15-cv-01104-WHO, 2015 WL 7566806, at *5 (N.D. Ca. Nov. 25, 2015) ("In short, the Ford plaintiffs bring solely Oregon and Washington causes of action stemming from transactions that occurred in those states. They have

failed to demonstrate that specific jurisdiction over Ford is appropriate in California."); *see also Barron v. Pfizer, Inc.*, No. 4:15–CV–584 CAS, 2015 WL 5829867 (E.D. Mo. Oct. 6, 2015) ("The mere marketing of Zoloft in Missouri does not make Pfizer's connection with the state continuous and systematic as to render it at home here.").  And the dismissal for lack of personal jurisdiction is warranted, even if the out-of-state Plaintiffs are joined in the same multi-plaintiff filing with an in-state Plaintiff.  *See, e.g.*, *Demaria*, 2016 WL 374145, at *8.

### D. The Court's Dismissal for Lack of Personal Jurisdiction Creates Diversity.

26.    Upon the Court's proper dismissal of the non-Missouri Plaintiffs' claims, complete diversity exists over the remaining parties (the Missouri Plaintiffs and Defendants). *Addelson, et al. v. Sanofi S.A., et al.*, No. 4:16-CV-01277-ERW, 2016 WL 6216124 (E.D. Mo. October 25, 2016); *In re Bard IVC Filters Products Liab. Lit.*, No. 15-2641, 2016 WL 6393596 (D. Ariz. Oct. 28, 2016); *In re Zofran (Ondansetron) Prods. Liab. Litig.* MDL No. 1:15-cv-md-2657-FDS, 2016 WL 2349105 (D. Mass. May 4, 2016).  Therefore, the Court should retain jurisdiction and deny any subsequently filed motion to remand.  *Id.*[10]; *see also Locke v. Ethicon Inc.*, No. 4:14–CV–2648, 2014 WL 5819824 (S.D. Tex. Nov. 10, 2014) (dismissing out of state plaintiffs' claims for lack of personal jurisdiction, and retaining diversity jurisdiction over remaining diverse parties, including in state Plaintiffs).

## II. DIVERSITY JURISDICTION OVER THIS ACTION IS ALSO PROPER BUT FOR PLAINTIFFS' MISJOINDER.

27.    As discussed in detail above, diversity results in light of the fact that Missouri courts lack personal jurisdiction over the non-Missouri Plaintiffs' claims.  The Court should disregard the citizenship of those non-Missouri Plaintiffs and also dismiss the non-Missouri

---

[10]    "The presence of complete diversity following the dismissal of the non-Missouri plaintiffs [would] make[] it unnecessary for the Court to reach the issues surrounding defendant's argument that those plaintiffs' joinder was either fraudulent or procedurally improper."  *In re Zofran (Ondansetron) Prods. Liab. Litig.* MDL No. 1:15-cv-md-2657-FDS, 2016 WL 2349105 (D. Mass. May 4, 2016).

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

Plaintiffs' claims, thereby resulting in diversity. Diversity is also satisfied but for Plaintiffs' misjoinder.

**A.      Complete Diversity Is Satisfied But For Plaintiffs' Misjoinder.**

28.      Plaintiffs have attempted to join in a single complaint the distinct claims of 82 Plaintiffs who have no relationship to one another and who have not pled any facts linking in any way any of their individual experiences using JJCI's Baby Powder® and Shower-to-Shower® products or in allegedly developing ovarian cancer. As set forth below, Plaintiffs' joinder of their unrelated claims does not satisfy the permissive joinder rules, and, because it seeks to destroy the diversity that otherwise exists as between the Defendants and nearly all of the Plaintiffs, it renders this case removable under the procedural misjoinder doctrine.

29.      Plaintiff Clyde LaGrone is a citizen of the state of Missouri.

30.      Plaintiff Francis Cerniglia is a citizen of the state of New York.

31.      Plaintiff Vladislav Black is a citizen of the state of Virginia.

32.      Plaintiff Claudia Gregory is a citizen of the state of Illinois.

33.      Plaintiff Steve Gregory is a citizen of the state of Illinois.

34.      Plaintiff Bruce Kumfer is a citizen of the state of Michigan.

35.      Plaintiff Michael Paul is a citizen of the state of California.

36.      Plaintiff Elanor Gilbane is a citizen of the state of Texas.

37.      Plaintiff Cynthia Yarnell is a citizen of the state of Georgia.

38.      Plaintiff Linda Heselton is a citizen of the state of Ohio.

39.      Plaintiff Beverly Denny is a citizen of the state of Ohio.

40.      Plaintiff Karen G. Newport is a citizen of the state of Indiana.

41.      Plaintiff Robin Parker is a citizen of the state of Georgia.

42.      Plaintiff Sarah Brooks is a citizen of the state of Florida.

43.    Plaintiff Brenda Steinbarth is a citizen of the state of Illinois.

44.    Plaintiff Jayson Christensen is a citizen of the state of Utah.

45.    Plaintiff Laurie Landrum is a citizen of the state of South Carolina.

46.    Plaintiff Robin Lowe is a citizen of the state of Texas.

47.    Plaintiff Cathy Hawkins-Panek is a citizen of the state of Georgia.

48.    Plaintiff Eleanor Carrington is a citizen of the state of Nebraska.

49.    Plaintiff Gale A. Sayles is a citizen of the state of Missouri.

50.    Plaintiff Kristal Knight is a citizen of the state of Colorado.

51.    Plaintiff Mina Leon is a citizen of the state of California.

52.    Plaintiff Don Bigelow is a citizen of the state of Utah.

53.    Plaintiff Julius Stoehr is a citizen of the state of Georgia.

54.    Plaintiff Charles Hayer is a citizen of the state of Michigan.

55.    Plaintiff Scott Mueller is a citizen of the state of Wisconsin.

56.    Plaintiff Kimberly Fanciullo is a citizen of the state of Arizona.

57.    Plaintiff Mary Fameree is a citizen of the state of Wisconsin.

58.    Plaintiff Donna Koval is a citizen of the state of New York.

59.    Plaintiff Laura Bruton is a citizen of the state of Texas.

60.    Plaintiff Betty Willis is a citizen of the state of Texas.

61.    Plaintiff Shirley Strickland is a citizen of the state of Florida.

62.    Plaintiff Rebecca Wall is a citizen of the state of Missouri .

63.    Plaintiff Suzanna Bellotto is a citizen of the state of South Carolina.

64.    Plaintiff Roberta Morello is a citizen of the state of Massachusetts.

65.    Plaintiff Kay Lyn Dawson is a citizen of the state of Texas.

66.    Plaintiff Christine Judkins is a citizen of the state of California.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

67.     Plaintiff Carrol Janak is a citizen of the state of Texas.

68.     Plaintiff Lula Ussery is a citizen of the state of Texas.

69.     Plaintiff Joan K. Douglas is a citizen of the state of Rhode Island and Providence Plantations.

70.     Plaintiff Carol Dodge is a citizen of the state of New York.

71.     Plaintiff Renee Barrow is a citizen of the state of Arkansas.

72.     Plaintiff Michelle Kirby is a citizen of the state of Illinois.

73.     Plaintiff Janice Fitzgerald is a citizen of the state of Virginia.

74.     Plaintiff Silvia Diaz is a citizen of the state of Florida.

75.     Plaintiff Joyce Gibson is a citizen of the state of North Carolina.

76.     Plaintiff Betty Owens is a citizen of the state of North Carolina.

77.     Plaintiff Margrit M. Shehata is a citizen of the state of New Jersey.

78.     Plaintiff Linda Clarke is a citizen of the state of Texas.

79.     Plaintiff Tahnee Johnson is a citizen of the state of Nebraska.

80.     Plaintiff Desiree Young is a citizen of the state of Texas.

81.     Plaintiff Cynthia Jean Ackerman is a citizen of the state of Minnesota.

82.     Plaintiff Joyce Fox is a citizen of the state of New York.

83.     Plaintiff Tommica Winzer is a citizen of the state of Ohio.

84.     Plaintiff Carolyn Lester is a citizen of the state of Michigan.

85.     Plaintiff Lorraine Turk is a citizen of the state of Colorado.

86.     Plaintiff Ann Gordon is a citizen of the state of Florida.

87.     Plaintiff Mary Aschinger is a citizen of the state of Iowa.

88.     Plaintiff Brad  Aschinger is a citizen of the state of Iowa.

89.     Plaintiff Janet Greske is a citizen of the state of Illinois.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

90.     Plaintiff Thomas Greske is a citizen of the state of Illinois.

91.     Plaintiff Mary Ray is a citizen of the state of Colorado.

92.     Plaintiff Deanna Smith is a citizen of the state of Indiana.

93.     Plaintiff Kimberly Stein is a citizen of the state of Illinois.

94.     Plaintiff Rhonda Daniels is a citizen of the state of Illinois.

95.     Plaintiff Denise Khoury is a citizen of the state of Florida.

96.     Plaintiff Victor Khoury is a citizen of the state of Florida.

97.     Plaintiff John Moen is a citizen of the state of Pennsylvania.

98.     Plaintiff Lorraine Vega is a citizen of the state of New York.

99.     Plaintiff Richard Slack is a citizen of the state of Florida.

100.    Plaintiff Janice Renee Barker is a citizen of the state of North Carolina.

101.    Plaintiff Cheryl Pimentel is a citizen of the state of California.

102.    Plaintiff Judy A. MacDonald is a citizen of the state of Florida.

103.    Plaintiff Lynne D. Smith is a citizen of the state of Iowa.

104.    Plaintiff Melinda W. Obert is a citizen of the state of Montana.

105.    Plaintiff Linda Sue Schroeder is a citizen of the state of Illinois.

106.    Plaintiff Cathy Sweeney is a citizen of the state of California.

107.    Plaintiff Donna Kalman is a citizen of the state of Texas.

108.    Plaintiff Sheila Bunch is a citizen of the state of Florida.

109.    Plaintiff Pamela Knapp is a citizen of the state of Kentucky.

110.    Plaintiff Laura Gamble is a citizen of the state of Maryland.

111.    Johnson & Johnson is a New Jersey corporation with its principal place of business in the State of New Jersey.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

112. Johnson & Johnson Consumer Inc. is also a New Jersey corporation with its principal place of business in the State of New Jersey.

113. Imerys Talc America, Inc. ("Imerys"), f/k/a Luzenac America, Inc., is a Delaware corporation with its principal place of business in the State of California.

114. Of the 82 individual Plaintiffs, _76 of the Plaintiffs are completely diverse from all three named Defendants_, and _only three of the Plaintiffs are Missouri Plaintiffs_. Of the six non-diverse Plaintiffs, one is a citizen of New Jersey (and, thus, non-diverse from the Johnson & Johnson Defendants) and five are citizens of California (and, thus, non-diverse from Imerys). To reiterate, complete diversity exists between all three named Defendants and 76 Plaintiffs in this action. The distinct claims of the 78 unrelated Plaintiffs in this action have been procedurally misjoined, and the Court should therefore sever all of these claims into separate actions and remand only the claims of the six Plaintiffs as to whom complete diversity is lacking.[11] Accordingly, following appropriate severance and remand, there exists complete diversity of citizenship between the remaining 76 Plaintiffs and all of the Defendants pursuant to 28 U.S.C. § 1332.

### B. Plaintiffs Are Procedurally Misjoined.

115. In a transparent attempt to deprive Defendants of a federal forum, Plaintiffs have procedurally misjoined the distinct personal injury claims of 82 Plaintiffs from 29 different states, 76 of whom are completely diverse from all of the Defendants. But for Plaintiffs'

---

[11] As explained in more detail above, the Johnson & Johnson Defendants will move to dismiss the claims of all Plaintiffs whose claims have no connection to Missouri for lack of personal jurisdiction, among other grounds. Should the Court grant this motion to dismiss as an initial matter, _see Ruhrgas v. Marathon Oil Co_., 526 U.S. 574, 578, 584-87 (1999), there would be complete diversity between any remaining Defendants and any remaining Plaintiffs, and there would be no basis for a remand of any claims. _See Addelson, et al. v. Sanofi S.A., et al._, No. 4:16-CV-01277-ERW, 2016 WL 6216124 ) (granting the defendants' motion to dismiss for lack of personal jurisdiction and then denying plaintiffs' motion to remand); _Locke v. Ethicon Inc_., No. 4:14–CV–2648, 2014 WL 5819824 (S.D. Tex. Nov. 10, 2014) (same).

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

procedural misjoinder of their varying claims, all but six of the Plaintiffs are diverse from all of the named Defendants and their claims satisfy the requirements for diversity jurisdiction.

116.    The procedural misjoinder doctrine is intended to ensure that a defendant's statutory right to remove cannot be subverted by procedural gamesmanship, such as here.  *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (procedural-misjoinder doctrine applies where plaintiffs' claims are "egregious[ly]" misjoined to defeat federal jurisdiction and "have no real connection" to one another), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *see also In re Benjamin Moore & Co.*, 318 F.3d 626, 630–31 (5th Cir. 2002) (noting "the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [procedural misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court" (footnotes omitted)).  While the Eighth Circuit has not explicitly accepted or rejected procedural misjoinder as a basis for removal,[12] numerous courts from around the country have affirmed the validity of the procedural misjoinder doctrine, including as to cases removed from Missouri state court.[13]

---

[12]    *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010).

[13]    *See, e.g.*, *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331 JG VVP, 2013 WL 3729570, at *13 (E.D.N.Y. May 17, 2013); *see also Augustine v. Emp'rs. Mut. Cas. Co.*, No. 2:08-cv-1102, 2010 U.S. Dist. LEXIS 126431, at *49 (E.D. La. Nov. 30, 2010); *WIAV Networks, LLC v. 3COM Corp.*, No. C 10-03448 WHA, 2010 U.S. Dist. LEXIS 110957, at *19–20 (N.D. Cal. Oct. 1, 2010); *Bishop v. Sturdivant*, No. 4:10CV49TSL-JCS, 2010 U.S. Dist. LEXIS 79992, at *8 (S.D. Miss. Aug. 6, 2010); *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *5–6 (N.D. W. Va. Sept. 3, 2009); *Willingham v. State Farm Ins. Co.*, No. 2:09-CV-59-SA-SAA, 2009 U.S. Dist. LEXIS 76639, at *11 (N.D. Miss. Aug. 27, 2009); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008); *Milliet v. Liberty Mut. Ins. Co.*, No. 07-7443, 2008 U.S. Dist. LEXIS 2344, at *7–8 (E.D. La. Jan. 11, 2008); *Jones v. State Farm Fire & Cas. Co.*, No. 06-7994, 2007 U.S. Dist. LEXIS 102293, at *4 (E.D. La. Feb. 28, 2007); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004); *Reed v. Am. Med. Sec. Grp., Inc.*, 324 F. Supp. 2d 798, 803–05 (S.D. Miss. 2004); *Burns v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004); *Madison Materials Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-14 WS, 2004 U.S.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

117.    Under the procedural misjoinder doctrine, federal diversity jurisdiction exists "where diversity is destroyed only through misjoinder of parties." *Asher v. 3M*, No. 04-CV-522-KKC, 2005 U.S. Dist. LEXIS 42266, at *37 (E.D. Ky. June 30, 2005). "Misjoinder of parties occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20(a)." *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001). Accordingly, procedural misjoinder applies where, as here, Plaintiffs have improperly joined different claims that did not arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to common questions of law or fact. FED. R. CIV. P. 20(a); MO. SUP. CT. R. 52.05 (explaining that, in order for plaintiffs to join their claims, they each must allege a "right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action"); *see also In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, 2012 WL 1118780, at *3 (D.N.J. Apr. 3, 2012) (observing that "Missouri's permissive joinder rule is substantively identical to Fed. R. Civ. P. 20(a)"). Where procedural misjoinder applies, a court should sever the improperly joined claims into separate and distinct cases.

118.    Here, the claims of these 82 different Plaintiffs have been procedurally misjoined because they do not arise out of the same transaction, occurrence, or series of transactions or occurrences.

119.    Among other differences that are expected to exist among the 82 Plaintiffs, the most notable is that the Plaintiffs do not even allege a common injury, as Plaintiffs' counsel have packaged together Plaintiffs alleging entirely different injuries (ovarian cancer, endometrial

---

Dist. LEXIS 31111, at *13 (S.D. Miss. Sept. 14, 2004); *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003).

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

cancer, and cervical dysplasia). Moreover, each Plaintiff will have a unique medical history that will likely implicate different risk factors for ovarian cancer and with regards to Plaintiffs Smith and Slack, endometrial cancer, and cervical dysplasia for Plaintiff Barker. Moreover, each Plaintiff alleges to have used "talcum powder" products, likely obtained from different sources, and used for different periods of time, in different amounts, for different durations, and with different frequencies. Additionally, it is quite likely that each woman applied these products to different areas of the body using different methods. These differences necessarily implicate both different plaintiff and different defense theories. Further, each Plaintiff has received individualized medical care, provided by different medical providers, before and after the alleged injuries and specifically in regard to the injuries at issue in this suit. Each Plaintiff allegedly started and stopped her usage of talcum powder products at different times and sustained alleged injuries at different times. In sum, each Plaintiff will present a unique set of facts, based on her own individual circumstances, which did not arise out of the same transaction or occurrence. Indeed, these variations will give rise to unique questions of fact and law that will predominate in each case.

120. As reflected by the Complaint, the factual variations in these 82 cases that will dominate the pertinent scientific and legal inquiries cannot be understated.

- Some of the 82 Plaintiffs allege they used "talcum powder" products for a period of 69 years prior to their ovarian cancer diagnosis, while others allegedly used such products for only five years. For example, Cathy Sweeney (a citizen of California) alleges she used talcum powder products from 1946 to 2015 and was first diagnosed in 2015—a *period of usage of approximately 69 years before her diagnosis*, while Deanna Smith (a citizen of Indiana) alleges she used such products from 2010 to 2016 and was diagnosed in 2015—*a period of just five years*.[14] (Compl. ¶¶ 82, 67.)

---

[14] Plaintiffs Clyde LaGrone and Sheila Bunch fail to include the exact years in which they or their decedent began using talcum powder products. (Compl. ¶ 2, 84). Therefore, it is impossible for Defendants to determine how long these parties used the products.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

- Many of the 82 Plaintiffs allege they were diagnosed with ovarian cancer in recent history, while others allegedly were diagnosed as far back as 2000. For example, Sarah Brooks (a citizen of Florida) alleges she was diagnosed in June 2016, while Mary Aschinger (a citizen of Iowa) alleges she was diagnosed in 2000. (*Id.* ¶¶ 15, 60.)

- Some of the 82 Plaintiffs allegedly used "talcum powder" products until or around the time of being diagnosed with ovarian cancer (or endometrial cancer of cervical dysplasia), while others admit to stopping their use of "talcum powder" products *years before* sustaining any injury. For example, Lula Ussery (a citizen of Texas) alleges she used such products up until her diagnosis in April 2015, while Rhonda Daniels (a citizen of Illinois) allegedly was diagnosed with ovarian cancer *30 years after her last usage of such products*. (*Id.* ¶¶ 41, 70.)

- Some of the 82 Plaintiffs allege they stopped using "talcum powder" products immediately upon their diagnosis of ovarian cancer, while others allegedly continued using such products after their alleged diagnosis. For example, Betty Owens (a citizen of North Carolina) alleges she stopped using talc products in 2015 upon her diagnosis, while Janice Fitzgerald (a citizen of Virginia) allegedly was diagnosed in or around September 2001 but still used such products until 2014. (*Id.* ¶¶ 49, 46.)

- At least 14 of the Plaintiffs provide absolutely no information about dates of alleged usage of the "talcum powder" products or the date of alleged injury. (*Id.* ¶¶ 2, 3, 4, 7, 8, 9, 17, 25, 26, 27, 28, 69, 73, 75). These plaintiffs purport to bring a wrongful death claim on behalf of a decedent's estate.

121.     In short, the only common factual issue in all of these 82 cases is that Plaintiffs allege that at some point in time they were diagnosed with ovarian cancer, endometrial cancer, of cervical dysplasia after (or while) using "talcum powder" products. And even this fact is not necessarily common among the Plaintiffs as there will undoubtedly be different subtypes of ovarian cancer (or endometrial cancer) among them, which will trigger different theories on both sides. Further, each Plaintiff's (i) dates of product usage, (ii) amount and duration of product usage, (iii) date of alleged injury, (iv) temporal relationship between product usage and date of injury, and (v) overall medical history (including risk factors, medical treatment, and prognosis) differ significantly. All of these issues will require Plaintiffs to offer individualized, scientific

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

theories as to how markedly different usages of a cosmetic product can give rise to substantially different development of disease. And, similarly, Defendants will offer defenses tailored to each of these specific cases and scenarios. In sum, all of these differences require meaningful individualized treatment of each Plaintiff.

122. Finally, Plaintiffs reside in 29 different states. Moreover, Plaintiffs allege that they used talcum powder products in 41 different jurisdictions, including the Arab Republic of Egypt, the French Republic, and Taiwan. Under Missouri's choice-of-law rules, the law of each Plaintiff's home state, or alternatively the law of each State in which Plaintiff alleges to have used talcum powder products and/or sustained injury, is likely to govern the individual claims. *See, e.g., Johnny v. Bornowski*, No. 10-04008-CV-FJG, 2011 U.S. Dist. LEXIS 150016, at *2 (W.D. Mo. Dec. 22, 2011) (explaining that Missouri follows "the most significant relationship test," which "carries a presumption that the state with the most significant relationship is the state where the injury occurred" (citations omitted)). As such, Plaintiffs' claims will implicate the laws of at least 29 different state, and each of these states will have unique and potentially conflicting laws regarding products liability claims. *See Nosker v. Gill Bros. Trucking, GBTI, Inc.*, No. 06-0286-CV-W-REL, 2006 U.S. Dist. LEXIS 43891, at *16 (W.D. Mo. June 28, 2006) (denying permissive intervention, *inter alia*, because different law would apply to the proposed plaintiff interveners and trying a case involving claims governed by different law "would lead to complexity and delay and would likely confuse the jury"). These choice-of-law issues will present significant problems for the parties and the Court if the egregious joinder of unrelated claims is allowed to stand. The most obvious example will arise at the outset of this case with regard to statutes of limitations, because, as noted above, numerous of the 82 Plaintiffs from different states allege dates of diagnosis years before filing suit.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

123.    Numerous courts have found procedural misjoinder under the precise circumstances presented here.  Those courts have recognized that claims by product liability plaintiffs—like those in this case—are highly individualized and cannot be joined to defeat jurisdiction, even where the plaintiffs allegedly used the same product.  *See, e.g.*, *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331 JG VVP, 2013 WL 3729570, at *13 (E.D.N.Y. May 17, 2013) (finding procedural misjoinder as to suit removed from Missouri state court where "the injuries here will greatly vary from plaintiff to plaintiff based on factors like age, physical state at the time of taking the drug, and dosage"); *In re Fosamax*, 2012 WL 1118780, at *4 (finding procedural misjoinder where plaintiffs "allege such unspecific injuries as to make it impossible to determine how the Plaintiffs share any connection" and "given the complicated causation questions that pervade drug product liability claims, Plaintiffs' claims will require divergent questions of law and fact"); *Weaver v. Am. Home Prods. Corp.* (*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*), 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003) (finding that plaintiffs were procedurally misjoined because "the claims of the pharmaceutical plaintiffs who had drugs prescribed by different doctors for different time periods do not arise out of the same 'transaction, occurrence, or series of transactions or occurrences'" (quoting FED. R. CIV. P. 20(a))); *In re Baycol Prods. Litig.*, No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (holding that a plaintiff in a pharmaceutical product-liability action had "been fraudulently [mis]joined with the other plaintiffs, warranting severance and remand" of that plaintiff's claims and denying plaintiffs' motion to remand); *In re Rezulin*, 168 F. Supp. 2d at 146 (prescription drug plaintiffs' claims were procedurally misjoined where they did not "allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time" and where they alleged "different injuries"); *Chaney v. Gate Pharms. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.)*, No. 98-20478,

Case: 4:17-cv-00066  Doc. #: 1  Filed: 01/09/17  Page: 32 of 41 PageID #: 92

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (pleading went "well beyond mere misjoinder" where plaintiffs "attempt[ed] to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs").

124.    In addition, "[a] multitude of cases around the country have held that plaintiffs were not properly joined when the only common link among them was a defective [product]." *Stinnette v. Medtronic Inc.*, No. H-09-03854, 2010 WL 767558, at *2 (S.D. Tex. Mar. 3, 2010).[15] Severance is required where, as here, there were "numerous different . . . [treating] physicians involved . . . who are unlikely to have any common link to any two (2) of these plaintiffs, . . . the medical histories of the plaintiffs . . . . are certainly diverse," and the injuries at issue involved different products, individualized risk factors, and unique circumstances. *Adams*, 2010 WL 1339948, at *8. Moreover, that Plaintiffs' claims are governed by the law of each of their home states further shows that they do not arise out of the same transaction or occurrence. *See Boschert v. Pfizer, Inc.*, No. 4:08-CV-1714, 2009 U.S. Dist. LEXIS 41261, at *7–8 (E.D. Mo. May 14, 2009) (granting motion to sever claims of four plaintiffs allegedly injured as a result of using smoking-cessation medication Chantix, holding that, "the mere fact [that] four plaintiffs took Chantix at some point in time and suffered some sort of mental or behavioral side effect is not enough of a logical or factual connection to satisfy the same transaction or occurrence requirement."); *Cumba v. Merck & Co.*, No. 08-CV-2328, 2009 U.S. Dist. LEXIS 41132, at *4–5 (D.N.J. May 12, 2009) (granting motion to sever claims of 49 plaintiffs who allegedly "took the drug Vytorin and . . . [allegedly] sustained broadly similar injuries as a result thereof" because their claims were based on disparate facts); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-

---

[15]    *Accord, e.g.*, *McNaughton v. Merck & Co.*, No. 04 Civ. 8297(LAP), 2004 WL 5180726, at *1–3 (S.D.N.Y. Dec. 17, 2004); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002); *Warner v. Stryker Corp.*, No. 08-6368-AA, 2009 WL 1773170, at *1–2 (D. Or. June 22, 2009).

Case: 4:17-cv-00066   Doc. #: 1   Filed: 01/09/17   Page: 33 of 41   PageID #: 33

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

1769, 2007 U.S. Dist. LEXIS 17603, at *115–22 (M.D. Fla. Mar. 7, 2007) (severing claims of multiple plaintiffs alleging injury from use of Seroquel and ordering each to file an individual complaint and pay the court's full filing fee).

125.    The impropriety of Plaintiffs' joinder is also clear under Missouri precedent.  For instance, in a similar case involving many pharmaceutical plaintiffs from numerous states alleging injuries over a wide span of years, a Missouri court observed that in these types of cases, "a plaintiff's claim depends on particular characteristics such as the plaintiff's medical history, her particular treatment, and her injury" and that "[c]ausation must be individually determined based on the injury alleged and other factors." *Ballard v. Wyeth,* No. 042-07388A, slip op. at 3 (Mo. Cir. Ct. St. Louis Aug. 24, 2005) (attached as **Ex. D**).  In light of the individualized facts of the plaintiffs' claims, the court concluded that severance was proper, for "[t]he fact that all Plaintiffs ingested HRT drugs is not sufficient to meet the 'transaction or occurrence' requirement" and "the joinder of so many disparate causes of action makes this case unduly complex and burdensome." *Id.* at 4; *see also Brown v. Walgreens Co.,* No. 1022-CC00765, slip op. at 4 (Mo. Cir. Ct. St. Louis Nov. 15, 2010) (attached as **Ex. E**) (granting defendants' motion to sever claims of multiple pharmaceutical product liability plaintiffs under Missouri law because "[e]ach Plaintiff has his or her own individual combination of facts and evidence surrounding his or her ingestion of different medications" and recognizing that "[t]he fact that all Plaintiffs ingested Reglan or its generic equivalent is not sufficient to meet the 'transaction or occurrence' requirement").

126.    Additionally, Missouri courts view skeptically cases asserted by numerous plaintiffs when they are brought against multiple defendants—as has been done here.  In *Ballard,* for example, the court noted that the plaintiffs' "attempt to join claims by and against different parties" suggested that the claims were "not 'reasonably related' to allow a joinder of plaintiffs."

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

*Ballard*, slip op. at 3 (emphasis in original); *see also Brown*, slip op. at 3 (indicating that severance was proper when "Plaintiffs attempt to join claims against multifarous defendants"). The case at bar is no different: It is brought by 78 unrelated plaintiffs against three different defendants.

127. Moreover, the misjoinder Plaintiffs have attempted here is certainly egregious, making this case distinguishable from the case at issue in the Eighth Circuit's decision in *Prempro*. Indeed, not only is Plaintiffs' joinder procedurally improper, but it was also effected for the sole purpose of defeating diversity jurisdiction. Additionally, in an apparent effort to obscure the many factual differences among these 82 different Plaintiffs' distinct claims, Plaintiffs' Complaint omitted basic plaintiff-specific information that should be included in products liability actions, such as which specific product each Plaintiff allegedly used[16] and basic facts related to that use.

128. Indeed, including this information would invariably expose numerous differences in the circumstances that gave rise to Plaintiffs' claims. Plaintiffs here have barely alleged any Plaintiff-specific facts other than their state of residence and their generalized (and wildly differing) dates of alleged usage of "talcum powder." Given Plaintiffs' geographic diversity, complete lack of relationship with one another, and the absence of any connection regarding their circumstances of using JJCI's products, there is no apparent reason for this massive misjoinder and omission of basic information other than to defeat diversity. Plaintiffs' allegations that they used "talcum powder" at some point in time and that they each developed ovarian cancer, endometrial cancer, or cervical dysplasia at some time thereafter does not create

---

[16] In fact, each Plaintiff only generally asserts that she used "talcum powder," and Plaintiffs seek to hold all Defendants liable for alleged "negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder." *See* Complaint, generally. Of course, JJCI is not the only manufacturer of body powders containing talcum powder, and Plaintiffs' vague allegations, which lack any detail regarding product identification as to each specific Plaintiff, provide further proof of egregious misjoinder.

a common occurrence or series of occurrences under the federal and Missouri permissive joinder rules as applied in the cases set forth above.  Plaintiffs' misjoinder is, therefore, egregious.  *In re Fosamax*, 2012 WL 1118780, at *5 (finding misjoinder egregious where "action involve[d] an attempt to join 91 plaintiffs from 28 different states . . . [y]et only three Plaintiffs are citizens of Missouri where the complaint was filed, and none of the non-resident Plaintiffs claims any connection with Missouri," such that "the factual, temporal, and geographic diversity among Plaintiffs' claims wholly disregards the purposes of permissive joinder because these are claims that no reasonable person would normally expect to be tried together" (quotation omitted)).  Plaintiffs' counsel's mass filing of claims by unrelated individuals shows that, as in other litigations, "the true reason for the joinders is that the collection of Plaintiffs in each case were all part of a certain law firm's existing . . . 'inventory.'"  *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651 (S.D. Tex. 2005).  And since the overwhelming majority of the Plaintiffs are diverse from the Defendants, the evident purpose of joining the non-diverse Plaintiffs was to escape diversity jurisdiction.

129.    The Johnson & Johnson Defendants acknowledge that some courts in this District have recently remanded multi-plaintiff pharmaceutical cases based on arguments of misjoinder. *See, e.g., Lovett v. Pfizer, Inc.*, No. 4:14–CV–458 CEJ (E.D. Mo. Mar. 26, 2014).  Regardless, this case resembles *Ballard* in that it involves Plaintiffs alleging distinct exposure periods, during varying decades, for dissimilar durations, and presumably to different products—and, therefore, joinder is unduly complex and burdensome.  *See Ballard*, slip op. at 1.  These facts support a finding of egregious misjoinder.

130.    Moreover, the egregiousness of the misjoinder here is further demonstrated by the fact that the Circuit Court for the City of St. Louis (and indeed, any court in Missouri – state or

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

federal) lacks personal jurisdiction (both general and specific) over the Defendants as to the claims of all but **three** of the 82 Plaintiffs, as discussed above.

131. As such, the exercise of jurisdiction over Defendants as to the claims of these 79 Plaintiffs would violate the Defendants' due process rights. Again, the lack of jurisdiction over all of the Defendants as to the overwhelming majority of Plaintiffs' claims affirmatively demonstrates the egregiousness of the misjoinder.

132. Furthermore, as expressed by the district court in *In re Propecia*, the Johnson & Johnson Defendants maintain that the Eighth Circuit's ruling in *Prempro* was wrongly decided insofar as it (a) failed to account for Rule 20's permissive joinder requirement that claims arise out of the same transaction or occurrence; (b) held that procedural misjoinder removal is available only where misjoinder is egregious, not merely improper; and (c) held that the alleged misjoinder was not "egregious," despite the joining of out-of-state plaintiffs who had no connection with the forum and no connection with the other plaintiffs, but who "coincidentally" were citizens of the same states as the defendants. *See In re Propecia*, 2013 WL 3729570, at *10 ("The wisdom of permitting the joinder of an unlimited number of plaintiffs who purchase the same or similar drugs from any number of defendants simply because they allege that the drugs caused a common type of injury is questionable."); *In re Fosamax*, 2012 WL 1118780, at *5; *see also Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) ("Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal."). In light of the significant problems with the *Prempro* decision addressed by these authorities, there is substantial doubt whether the Eighth Circuit would reaffirm *Prempro* if given the opportunity. Moreover, *Prempro* was decided before *Daimler*, so the *Prempro* court did not consider whether joining the claims of a large number of Plaintiffs as to which the court lacked personal

jurisdiction over the defendants, in light of the other factors, supported a finding of "egregiousness." Accordingly, to the extent the Court determines that remand would be required under *Prempro*, the Johnson & Johnson Defendants submit that the Court should deny, or, alternatively, stay remand, to allow the Johnson & Johnson Defendants to seek interlocutory review of this important issue by the Eighth Circuit. Further, to the extent the Court determines that remand is required, interlocutory review would also foster judicial economy given that this issue has arisen in recent, multiple-plaintiff litigation filed post *Daimler*, and it is likely to arise in the future.

133. In sum, Plaintiffs' claims here do not arise out of the same transaction, occurrence, or series of transactions or occurrences; nor do they give rise to common questions of law or fact. Thus, to the extent they are not dismissed for lack of personal jurisdiction, the claims of each Plaintiff should be severed into separate actions and the Court should retain jurisdiction over the remaining Plaintiffs as to whom complete diversity (and personal jurisdiction over the Defendants) exists.[17]

134. Finally, although the Johnson & Johnson Defendants submit that mere misjoinder is sufficient to trigger procedural misjoinder removal, as discussed above, the misjoinder here was not merely improper, it was egregious.

## III.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

135. It is apparent from the face of the Complaint and the serious injuries alleged that the amount in controversy in this action, and as to each Plaintiff, exceeds $75,000.[18] Plaintiffs allege that each of them developed ovarian cancer as a result of using "talcum powder" products.

---

[17]   If there are questions regarding subject-matter jurisdiction and personal jurisdiction, this Court has the discretion to decide those questions in any order. *See In re AFY*, 743 F.3d at 815–18.

[18]   "The jurisdictional fact . . . is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are . . . ." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) (emphasis added).

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

(Compl. ¶¶ 2–86). They also claim that they were "injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages." (*See, e.g.*, *id.* at ¶ 123; *see also id.* at ¶ 133 (claiming that Plaintiffs "were caused to incur medical bills, lost wages, and conscious pain and suffering, and/or death"). Plaintiffs also request punitive damages (*id.* at ¶¶ 154-156) punish and deter the Johnson & Johnson Defendants, which are included in the amount in controversy. *See Allison v. Sec. Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.") (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943))). Where, as here, Plaintiffs allege serious bodily injuries and/or chronic or permanent medical conditions, courts have readily found that the amount-in-controversy requirement is satisfied. *See Allmon v. Walgreens Co.,* No. 4:09 CV 1151 DDN, 2010 WL 1292172, at *1 (E.D. Mo. Apr. 5, 2010) (holding amount-in-controversy requirement satisfied where plaintiff alleged "extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *see also, e.g.*, *Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2004) (finding that a jury could award more than $75,000 "given that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and will incur further such expenses; have permanent, progressive, and disabling injuries;" and alleged lost wages); *Ward v. Sailormen, Inc.*, No. 4:06 CV 1814 JCH, 2007 WL 1040934, at *2 (E.D. Mo. Apr. 3, 2007) (holding that the amount-in-controversy requirement was satisfied "in light of the extent to which Ward's injuries are plead"); *Hill v. Lincoln Prop. Co.*, 4:10 CV 675 DDN, 2011 WL 65929, at *2 (E.D. Mo. Jan. 10, 2011) (concluding that the plaintiff's allegations that she had sustained a permanent injury to her right ankle, experienced pain and suffering, and had lost wages and income was sufficient to meet the amount-in-controversy requirement).

## IV.    THE JOHNSON & JOHNSON DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PREREQUISITES AND PROCEDURES.

136.    The Defendant JJCI received service of the Summons and Original Complaint on December 8, 2016.  Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of such service.

137.    Imerys Talc America, Inc. f/k/a Luzenac America, Inc. was served on November 16, 2016.  Its consent to this Notice of Removal is attached hereto as **Ex. F**.

138.    The Circuit Court for the City of St. Louis, Missouri is located within the Eastern District of Missouri.  *See* 28 U.S.C. §§ 105(a)(1), 1441(a).

139.    No previous application has been made for the relief requested herein.

140.    Pursuant to Local Rule 81-2.03 and 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the Circuit Court for the City of St. Louis are attached hereto as **Ex. G**.

141.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Circuit Court for the City of St. Louis.  *See* Notice to Plaintiff of Filing Notice of Removal.

142.    The Johnson & Johnson Defendants reserve the right to amend or supplement this Notice of Removal.

143.    If any question arises as to the propriety of the removal of this action, the Johnson & Johnson Defendants request the opportunity to present a brief and request oral argument in support of removal.

WHEREFORE, the Johnson & Johnson Defendants respectfully remove this action from the Circuit Court of the City of St. Louis, in the State of Missouri, bearing the cause number 1622-CC11294, to this Court.

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

DATED: January 9, 2017       Respectfully submitted,

**HEPLERBROOM LLC**

By: /s/ Beth A. Bauer
    Beth A. Bauer,#49981
    130 N. Main Street
    PO Box 510
    Edwardsville, IL 62025
    618-307-1200
    618-656-1364 - Fax
    bab@heplerbroom.com

By: /s/ Gerard T. Noce
    Gerard T. Noce #27636
    211 North Broadway, Suite 2700
    St. Louis, MO 63102
    314-241-6160
    gtn@heplerbroom.com

**SHOOK, HARDY & BACON LLP**

By: /s/ Mark C. Hegarty
    Mark C. Hegarty, #40995
    2555 Grand Blvd.
    Kansas City, MO 64108-2613
    816- 474-6550
    816- 421-5547 - Fax
    mhegarty@shb.com

*Attorneys for Johnson & Johnson and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc.*

Electronically Filed - City of St. Louis - January 09, 2017 - 05:58 PM

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January 2017, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system, electronic mail, and/or U.S. Mail, postage prepaid:

Eric D. Holland
R. Seth Crompton
**HOLLAND LAW FIRM**
300 N. Tucker, Suite 801
St. Louis, MO 63101
(314) 241-8111
(314) 241-5554 – FAX
eholland@allfela.com
scrompton@allfela.com

Lee A. Cirsch
Michael A. Akselrud
**The Lanier Law Firm, PC**
10866 Wilshire Blvd., #400
Los Angeles, CA 90024
(310) 277-5100
(310) 277-5103
Lee.Cirsch@lanierlawfirm.com
Michael.Akselrud@lanierlawifrm.com

W. Mark Lanier
Richard D. Meadow
**The Lanier Law Firm, PLLC**
126 East 56th St., 6th Floor
New York, New York 10022
(212) 421-2800
(212) 421-2878 – Fax
WML@lanierlawfirm.com
Richard.Meadow@LanierLawFirm.com

*Attorneys for Plaintiffs*

Mary Anne Mellow
Mark A. Prost
**Sandberg Phoenix & von Gontard P.C.**
600 Washington Avenue - 15th Floor
St. Louis, MO 63101
(314) 231-3332
(314) 241-7604 – fax
mmellow@sandbergphoenix.com
mprost@sandbergphoenix.com

*Attorneys for Defendant Imerys Talc America, Inc.*

/s/ Beth A. Bauer