UNITED STATES DISTRICT COURT                    1
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO 16-MD-2738(FLW)(LHG)


_____  :  TRANSCRIPT OF
IN RE JOHNSON & JOHNSON       :  STATUS CONFERENCE
POWDER PRODUCTS MARKETING,    :
SALES PRACTICES.              :  MAY 2, 2017
----------------------------  :


CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608


B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ
              THE HONORABLE LOIS H. GOODMAN, USMJ


A P P E A R A N C E S:

BEASLEY ALLEN, ESQUIRES
BY:  P. LEIGH O'DELL, ESQUIRE (ALABAMA)
       -and-
ASHCRAFT & GEREL, ESQUIRES
BY:  MICHELLE A. PARFITT, ESQUIRE (VIRGINIA)
     CHRIS TISI, ESQUIRE  (VIRGINIA)
       -and-
COHEN, PLACITELLA & ROTH, ESQUIRES
BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE (NEW JERSEY)
On Behalf of the Plaintiffs Steering Committee


DRINKER, BIDDLE & REATH, ESQUIRES
BY: JULIE L. TERSIGNI, ESQUIRE  (NEW JERSEY)
       -and-
SHOOK, HARDY & BACON, ESQUIRES
BY:  KATHLEEN FRAZIER, ESQUIRE (TEXAS)
     PATRICK OOT, ESQUIRE  (WASHINGTON, D.C.)
On behalf of Defendant Johnson & Johnson
                                   (Continued)

* * * * *
**VINCENT RUSSONIELLO, RPR, CRR, CCR**
**OFFICIAL U.S. COURT REPORTER**
**(609)588-9516**

A P P E A R A N C E S   C O N T I N U E D:


SEYFARTH & SHAW, ESQUIRES
BY:  THOMAS L. LOCKE, ESQUIRE  (WASHINGTON D.C.)
On behalf of Defendant PCPC


COUGHLIN DUFFY, ESQUIRES
BY:  LORNA A. DOTRO, ESQUIRE  (NEW JERSEY)
        -and-
GORDON & REES, ESQUIRES
BY:  ANN THORNTON FIELD, ESQUIRE  (PENNSYLVANIA)
On behalf of Defendant Imerys Talc America

3

# C E R T I F I C A T E

PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE

FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE

TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE

ABOVE-ENTITLED MATTER.


S/Vincent Russoniello
VINCENT RUSSONIELLO, CCR
OFFICIAL U.S. COURT REPORTER

4

1          (In open court.)

2          THE CLERK:  All rise.

3          JUDGE WOLFSON:  Thank you.

4          JUDGE GOODMAN:  Thank you.

5          (Appearances noted.)

6          (Discussion off-the-record.)

7                 *     *     *     *     *

8          JUDGE WOLFSON:  On the record.

9          JUDGE GOODMAN:  I just wanted to put on the

10   record where we're going in terms of the preservation

11   notices that are going to be sent out to the

12   healthcare providers for the different plaintiffs.

13          With regard to existing cases, those notices

14   will be sent out within 45 days.

15          With regard to new and transferred cases, the

16   notices will be sent out within 30 days of when those

17   cases get filed here.

18          In addition to the preservation notice

19   recipients that everyone has agreed on, I'm ordering

20   that plaintiffs include those categories of providers

21   that defendants identified, the hematologists, the

22   gastroenterologists, the pharmacists, the mental

23   health providers if the plaintiff made a claim for

24   emotional distress.

25          By enumerating those, I don't mean to leave

5

1    out any because I am fine with the list that

2    defendants have suggested.

3            With regard to those that you have agreed on,

4    I believe that you have agreed on them without any

5    time restraints.

6            With regard to the others that I'm ordering

7    you to include, I'm telling you to go back to

8    providers that were providing care services to the

9    plaintiffs at any time within the five years preceding

10   the plaintiffs' diagnosis and forward to present.

11           I think we're all in agreement.  But I want it

12   to be clear that anyone receiving a preservation

13   notice should be told to preserve their entire file to

14   the extent it still exists, not just the file for the

15   five-year period.

16           Is that clear?  Any questions or

17   clarifications needed?

18           MS. O'DELL:  No, your Honor.

19           MS. FRAZIER:  No, your Honor.

20           JUDGE WOLFSON:  Off the record.

21           (Discussion off-the-record.)

22                 *     *     *     *     *

23           JUDGE WOLFSON:  We've been having a discussion

24   with regard to responsiveness of J&J's production

25   specifically regarding not engaging in duplicative

6

1    discovery of what was already done in the state court

2    litigation.

3              We had some back and forth with Mr. Tisi on

4    behalf of the plaintiffs group and Ms. Frazier as to

5    focusing on specifically the document requests that

6    were made in the St. Louis litigation.

7              Ms. Frazier, you submitted a letter response

8    on April 28th as to what your production was to

9    encompass.  Would you please place on the record what

10   that was and what the meaning of that is so we can go

11   forward.

12             MS. FRAZIER:  Okay.

13             On page 3 of the April 28th letter under the

14   header "Prior Productions and Supplemental Discovery,"

15   I gave a bullet pointed list of what our general

16   responsiveness criteria were used in the review for

17   the previous productions, and the first bullet point

18   says:

19             "Generally, documents related to talc, baby

20   powder, Johnson's Baby Powder, or Shower to Shower

21   were considered responsive if they related to the

22   safety, marketing, research and development, testing,

23   complaints, specifications, labeling, or regulatory

24   issues."

25             The word "generally" for my purposes was meant

7

1    to limit it with respect to the bullet points that

2    follow that first sentence.

3           In other words, if you take into account those

4    bullet points that follow, you could actually delete

5    the word "generally."

6           JUDGE WOLFSON:  I think we have an

7    understanding then.

8           Now, we're ready to move forward with the

9    plaintiffs serving whatever supplemental requests that

10   are appropriate.

11          MR. TISI:  Thank you.

12          JUDGE WOLFSON:  Off the record.

13          (Discussion off-the-record.)

14                *     *     *     *     *

15          JUDGE GOODMAN:  So now we're talking about the

16   third party subpoenas that plaintiffs have served on

17   various entities and individuals that's on page 4 of

18   the proposed joint agendas that you sent for today's

19   conference.

20          JUDGE WOLFSON:  Do you have copies of the

21   subpoenas?

22          MS. PARFITT:  Your Honor, I have only one

23   copy.  I can provide them to the Court.

24          (Pause.)

25          JUDGE GOODMAN:  As we read this, it appears

1   that defendants are objecting to the scope and breadth

2   of the subpoenas, and so we would like to hear a

3   little bit about the basis for the subpoenas, what

4   plaintiffs hope to get that's relevant to the products

5   at issue in this case from these other manufacturers,

6   and then get a sense of what the objections are.

7          We've just been handed copies of the

8   subpoenas.  It looks like the requests start on page

9   14.  I'm looking at the first one and that was served

10  on Proctor & Gamble.

11         I'm looking at this, "Schedule A, the

12  relationship between you, Proctor & Gamble and the

13  following entities."

14         It goes A through V including in there the

15  defendants, Imerys, I see Johnson & Johnson, I see

16  PCPC, and many others -- I do not know some

17  individuals -- and some law firms.  That's the

18  relationship.

19         "No. 2, communications relating to talc."

20         Tell me where you are going with this.

21         MS. PARFITT:  Absolutely.

22         If we can first address Colgate Palmolive.  As

23  your Honor has correctly indicated, we've got only

24  three.  Actually, the attachment references Schedule

25  A, basically three questions.

1          The first is obviously the relationship

2    between these defendants and these companies, and I'll

3    go through them.

4          The second one is communications regarding to

5    these entities and their products regarding to and

6    with regard to the general issue in this case, the

7    general causation which your Honors have permitted

8    counsel to in fact make inquiry of not only in

9    personal injury cases but also the consumer.

10          A lot of these have relevance to the consumer

11    class cases which is very important.  Some of the

12    requests that we would make through interrogatories

13    and requests for production might vary a little bit

14    because we're also encompassing the consumer class.

15          And the last question -- and there are really

16    three, they are all fairly identical -- address the

17    fact that we've got -- actually, it's two questions

18    and the last is the documents referencing them.

19          Let me tell you a little bit about the

20    defendants and the third parties.

21          JUDGE GOODMAN:  Let me read Schedule B first.

22    That's also documents showing the "relationship" is

23    one.  Two is "communications."

24          MS. PARFITT:  Correct.

25          JUDGE GOODMAN:  And three, "documents,

1    receipts, invoices" --

2         MS. PARFITT:  Correct.

3         JUDGE GOODMAN:  -- "accounting, proposals,

4    remuneration paid" -- I assume by the party you are

5    serving on -- "to any of the following entities," and

6    that is not limited to in some way to talc.  I'll

7    certainly hear you.  But I have no idea what that

8    means.

9         MS. PARFITT:  I think what's important perhaps

10   is to understand those individuals to whom we're

11   asking relationship, asking about the relationship.

12        For instance, CRE is the Center for Regulatory

13   Effectiveness.  They are very much tied into the CIR.

14   If you recall perhaps even from science day, they were

15   part of the CIR, which is the Cosmetic Ingredient

16   Review, the safety risk assessment for talc.

17        Members of the CRE and CIR were part of

18   putting that review draft together, and then

19   ultimately finalizing that draft, and 15 talks about

20   the safety or not of talc.

21        JUDGE WOLFSON:  There is no limitation to

22   these questions.  It's just the relationship.

23        Let's start with Colgate Palmolive.  Why have

24   you targeted Colgate Palmolive.

25        MS. PARFITT:  Because we believe that Colgate

1   Palmolive also with regard to the asbestos issue, with

2   regard to the silica issue, with regard to the

3   ingredients in talc also would have had some

4   documentation or communications back and forth between

5   J&J and Imerys, perhaps PCPC --

6         JUDGE WOLFSON:  Because they produce a talc

7   product?

8         MS. PARFITT:  Because they also have related

9   products, right, that are used within their products.

10   That's correct.

11         They would also have had some engagement with

12   talc over the course of the production of their

13   products generally.  We don't know what those are.  So

14   we have to make some inquiry and they are fairly

15   general.

16         JUDGE WOLFSON:  But you have to have some

17   limitation.  If you're targeting them -- look, they'll

18   have their own objections to make.  We haven't even

19   gotten to those upon whom you served the subpoena.

20   We're simply looking at J&J saying that this is going

21   to cover products that aren't involved here.

22         I have no doubt that whoever you are serving

23   this on will be making their applications to Judge

24   Goodman in no time to quash these subpoenas as being

25   overbroad and burdensome to them.  And the way they

1    are drafted, you are open to that.  So I'm telling you

2    that today.

3              MS. PARFITT:  If I may, maybe I can start

4    here.  Because of the product's history, we're talking

5    decades, and I know your Honors know that.  These

6    Palmolive -- many of the other third-party persons

7    have been involved in production of talc like products

8    for decades as well.  And so the difficulty we have as

9    Plaintiffs is -- I guess we've said this too many

10   times -- we don't know what we don't know.

11             We know that they have talc related products.

12   And so we know that they have been involved in,

13   perhaps, PCPC, the trade association.  A lot of these

14   folks are members of the trade association and they

15   work collectively with regard to decision-making

16   regarding the safety of talc or not.  They work

17   collectively with regard to decision-making as to

18   whether or not talc should be regulated in some form

19   or another.

20             So all of those third parties that we have

21   here are members either of a trade association or in

22   fact have had some production history of talc related

23   products. And so what we're trying to get out is what

24   period of time?

25             JUDGE WOLFSON:  But you have some limitation

1    in No. 2, but you have no limitation in No. 1.  At

2    least put that same limitation in No. 1.

3         JUDGE GOODMAN:  This is a deposition notice?

4    I'm looking at Schedule A.  That's a deposition

5    notice, isn't it?

6         MS. PARFITT:  No.  What we had asked for, your

7    Honor, is --

8         JUDGE GOODMAN:  It certainly looks like it.

9         JUDGE WOLFSON:  It says, "please find attached

10   a subpoena for testimony and production of associated

11   documents..."  It is a subpoena duces tecum plus

12   document production because in fact you said "appear

13   and be prepared to provide testimony."

14        MS. PARFITT:  And what we have done, your

15   Honor, and we have done this in state court cases, not

16   with these corporate individuals, but we communicated

17   with their counsel and we have had discussions with

18   regard to the nature of the production, and then we

19   made the decision, perhaps, held off the deposition in

20   most cases, get the production of the documents, look

21   through them, and see if that adequately answers the

22   needs of the plaintiffs.

23        We're not rushing to take depositions of every

24   single one of these individuals.  But what it does

25   provide us with is a date certain certain that these

1  individuals, these third parties turn over the

2  documents.

3       I can tell you personally, I've had some of

4  these attorneys call me that represent these

5  companies, these third parties, and say, Ms. Parfitt,

6  this is what we have available.

7       We have conversations and I'm able to discern

8  at that point in time the period of time that they

9  might have relevant documents.  And just like J&J and

10 Imerys, when they say, we make products that just

11 don't involve talc.  We make Tylenol.  We have other

12 products.  You don't need to know about our Tylenol.

13 You may need to know about our talc.

14      Similarly, with regard to many of these third

15 parties, we have tried to be very cooperative in

16 scope.  A lot of this goes to the communication.  What

17 do you have?  Over what time period?

18      One company I spoke with indicated, Michelle,

19 at one point in time we were a very large company.

20 Now, we're down to a handful of people.  You're asking

21 for all my documents and you want them in 30 days.  I

22 can't get them to you in 30 days.  But I can get them

23 to you maybe in 90 days based upon the scope.

24      So that's the kind of coordination.  But I can

25 assure the Court that each one of these third-party

1    subpoenas have been issued to people upon reasonable

2    belief, information and belief, they have something to

3    do with the talc world.  Whether or not they had

4    involvement in the regulatory history of the product,

5    whether or not they have some marketing history,

6    whether or not they were a marketing and sales group

7    for one of these talc products, it depends on the

8    third party.

9           JUDGE WOLFSON:  Can you tell me the relevance

10   of this to causation?  Because obviously these aren't

11   J&J's products.  They are their own talc products and

12   what they may have known or what they put in their own

13   is a different question.  So where is this going to

14   causation?

15          MS. PARFITT:  General causation, whether or

16   not they have evaluated the safety of talc themselves.

17   In some of these cases many of them have had to make

18   those kinds of judgments as to whether or not to

19   include talc in some of their products that they make

20   or not.

21          JUDGE WOLFSON:  Well, their judgements don't

22   make a big difference to us unless they were shared

23   with J&J somewhere and they were made aware.  You have

24   to show some knowledge that they communicated

25   something with J&J that made them aware at some point.

1              That's why I'm saying we really need to hone

2    these things some way that bring it into our case, or

3    if they ran their own studies and had experts, but

4    again how that was shared and known in the industry.

5              MS. PARFITT:  If I may, I can answer that one,

6    what we do know is that these third parties many of

7    them are parts of trade associations.  They contribute

8    to the information base with regard to the safety of

9    talc along with J&J and Imerys and many other

10   manufacturers that make talc related products.  And so

11   they share information.  They pool resources.

12             So what we're interested in knowing is when

13   they pooled resources with J&J, and that could be

14   human resources, scientific information, medical

15   information.  There is a sharing of the technology, of

16   the scientific knowledge with regard to the safety.

17   They all pool this information together.

18             JUDGE GOODMAN:  But that's not what you are

19   asking for here.

20             MS. PARFITT:  I am asking for the

21   communications.  So what I would like to know,

22   frankly, is what is the relationship between Colgate

23   Palmolive and someone like CRE or IMA.

24             JUDGE WOLFSON:  Who is Jim Tozzi?

25             MS. PARFITT:  Jim Tozzi is with CRE, I

1    believe.  It's CRE or CIR.  I should know.

2            MR. LOCKE:  If I can interject, it's CRE.  CRE

3    is a separate entity from CIR.  It's a misstatement to

4    say that those entities are tied together.  CRE

5    submitted information, its position on talc, to CIR

6    along with a lot of other entities.  That's all part

7    of the public record that we already produced.

8            MS. PARFITT:  Your Honor, it's not, if I may

9    differ with Mr. Locke.

10           We have not had the benefit of all the

11   communications between CRE, CIR, IMA.  All of those

12   are industry related organizations and they are

13   industries that have had experience with regard to the

14   talc products.  They are industries who have engaged

15   J&J and Imerys, some of the defendants in this case,

16   with regard to the safety of talc, which is a general

17   causation issue.

18           All of them have had some discussions,

19   communications, research science that has been shared

20   with J&J, the extent to which I have to acknowledge I

21   don't know the extent.  I won't know the extent until

22   I look at their documents.

23           But I can tell you, upon reviewing some

24   third-party productions, and not all of them because

25   we don't have them all, what we have certainly been

18

1  able to find and see and review is that there has been

2  this is interrelationship between these industrial

3  organizations or industries that actually produce talc

4  related products sometime either in their past or

5  currently where there are decisions made with regard

6  to the safety.

7         That's the general causation.  It would be

8  important to know if a decision was made not to

9  include talc in a product again because there is a

10  litany of science which they've collected which they

11  shared with J&J and Imerys, and J&J made the decision

12  either not to warn or not to take proper directives

13  with regard to informing the public and the scientific

14  -- if one group does and one group doesn't and you are

15  talking about the same product, that's important.

16         So what we're trying to do is just get our

17  arms around these other third parties.  This isn't a

18  hit or miss where we threw a stone out there and just

19  whatever we hit.  We have collectively gone through

20  these individual groups looking at Imerys and J&J

21  documents.

22         Are there communications with CIR?  Are there

23  communications with CRE?  Are there communications

24  with Palmolive?  We've looked at that.  We have

25  perhaps their side of the communication.  We may not

1    have the full exchange.

2          So that's what we're trying to get at.  We

3    moved these very, very slowly.  There are frankly a

4    handful of third parties that have been served up to

5    this date.  We'll look at them, find out if they're

6    meaningful, and report back to the Court.  We're not

7    trying to conduct an exercise in futility here.

8          We have closely examined what documents we do

9    have and the knowledge that we do have with regard to

10   Imerys and J&J and PCPC's relationship with these

11   various industries, and we have reason to believe that

12   it provides important information about the safety of

13   talc, the general causation issue here, those sales

14   and marketing that go to the consumer case.

15         Again, that's a little different, a little

16   broader, the sales and marketing, but your Honors have

17   said we may look at those issues as well.  So the

18   collective group, that's precisely what we're doing.

19   Long history.  Lots of organizations.  Lots of

20   regulatory meetings where all these people may have

21   participated or at least some of them.

22         So what we did is we tried to take a slow-step

23   approach.  We didn't subpoena the world.  We sent

24   basically less than ten third-party subpoenas out

25   which your Honor has.  We're collecting those.  We're

1    talking to their counsel.

2         At this point in time, we don't have grave

3    objections from their counsel.  If it's irrelevant,

4    they will let us know that and that will become a

5    debate.  But I will tell you, I think this is a good

6    first step.

7         MR. PLACITELLA:  Let's get some concrete

8    examples.  Let's say it's Colgate Palmolive and they

9    get their talc from the same mine at a select period

10   of time as Johnson & Johnson did, and Colgate

11   Palmolive ran tests on the talc from that mine that go

12   to the toxicity or constituents of ingredients of that

13   talc, that would be relevant to what was going into

14   the Johnson & Johnson talc.

15        They may do a test on an Imerys supply which

16   would be similar if not identical to Johnson &

17   Johnson.  That's an example.  Or a lot of times what

18   happens in industry is, for example, Colgate Palmolive

19   will run tests on the Johnson & Johnson talc as a

20   competitive testing and that happens, and I'm sure

21   Johnson & Johnson did it as it relates to Colgate

22   Palmolive.

23        For example, I know why they went to Manville

24   because Manville was the world expert on testing for

25   asbestos.  And what companies would do is, they would

1   actually go to Johns Manville and they would ask them

2   to run tests on their talc to determine if they have

3   asbestos in their talc.  The Johns-Manville is pretty

4   easy.  I know from years of experience, it's

5   electronically stored.  It's really not burdensome in

6   any respect.  Or there is information back and forth

7   between Johnson & Johnson and say Colgate Palmolive on

8   the toxicity of talc generally or through a trade

9   association on the toxicity of talc.

10          Those are some examples of the kind of

11  information we think would be relevant to the science

12  and to causation directly and it directly relates to

13  the products at issue, just as examples.

14          MS. DOTRO:  Your Honor, anything related to

15  individual testing by any of the entities served with

16  the subpoenas was not asked for in the subpoenas.

17  These subpoenas go strictly to regulatory, liability

18  issues that the Court has said we are not addressing

19  now.

20          The plaintiffs made two points in the agenda.

21  First, that this goes to the defendants' knowledge of

22  the increased risk of cancer.  That's company

23  liability, Judge, not general causation.  You've made

24  it clear that we are going directly to general

25  causation.

1      They talk about contaminants found in these

2  products.  Contaminants found in the products of

3  Colgate Palmolive, Proctor & Gamble, Johns Manville

4  and any of these other entities are not products at

5  issue in this litigation.

6      We think that these subpoenas are overly broad

7  and they're outside of the scope of what the Court has

8  ordered be done at this time.

9      MS. FRAZIER:  Your Honor, I don't have really

10  anything to add beyond what Ms. Dotro has said.  But I

11  think what we're trying to avoid, if possible, is

12  these side issues slowing down the progress of moving

13  toward the causation issue.

14      JUDGE GOODMAN:  Well, I'm going to tell you, I

15  have a real problem with this and I didn't think I was

16  going to have this problem going into it.

17      Mr. Placitella, what you said makes perfect

18  sense.  But I don't see it in the schedules to these

19  subpoenas.  I see something much broader.  I don't

20  see, as Ms. Dotro said, I don't see a request for

21  testing that was done.  To me what both you and

22  Ms. Parfitt have outlined are communications with J&J,

23  not with Tozzi and CRE and all of these other entities

24  let alone law firms.  I don't understand it.

25      To me what your identifying that you are

1    trying to find out is testing that was done as to the

2    causation issues and communicated to defendants.  Why

3    isn't that what you are asking for?

4            JUDGE WOLFSON:  Or even communicated to one of

5    these agencies, but again related to that testing.

6            JUDGE GOODMAN:  It somehow had to get back to

7    them or else you can't hold them to have notice of it,

8    knowledge of it, or to have acted on it.

9            I'm also troubled by what I hear as these

10   subpoenas, which I think are incredibly broad, being

11   the first step and that perhaps you intend to do more

12   like these.

13           I see this as opening up a whole other avenue

14   of litigation that will not necessarily all come to

15   meet, but maybe elsewhere around the country, and this

16   is going to be a real detour that I would rather not

17   go down because I don't see the connection between

18   what you are saying and what I'm reading.

19           MS. PARFITT:  May I be heard, your Honor?

20           JUDGE GOODMAN:  Sure.

21           MS. PARFITT:  I appreciate it.

22           Perhaps, I'll take the last point that your

23   Honor made and that is with regard to the first step.

24           What I was referring to, your Honor, is that

25   there are five subpoenas here and what we are hoping

1    to do -- we tried to target our efforts to obtain to

2    the best of our ability relevant documentation,

3    communication, testing, sales and marketing

4    information relevant to the consumer case.

5              JUDGE WOLFSON:  But you didn't say those

6    things.  Let's go with that, Ms. Parfitt.  That's the

7    problem that Judge Goodman is addressing.

8              Let's be clear so the record says it.

9              "Schedule A, the relationship between you and

10   each of the following entities, A through V," without

11   limitation, relationship.  That's to me is so

12   overbroad I'd strike it right there.

13             "No. 2, communications between you and any of

14   the following entities relating to talc, and/or talcum

15   powder products, including but not limited to; the

16   health effects of talc, and/or talcum powder products;

17   talc based body powder and/or ovarian cancer; and the

18   presence of asbestos, arsenic, silica, quartz, or any

19   other adulterants..."

20             Communications.  It doesn't say testing.  It

21   doesn't say documents related to testing.  It doesn't

22   say, for instance, as Mr. Placitella honed in on,

23   which I certainly understand then the example you gave

24   of, if indeed they obtained talc from a particular

25   mine that you think J&J did as well that you believe

1    they tested and was adulterated or whatever, well,

2    let's get to what we're talking about.  This doesn't

3    do it.  This is every communication they've ever had.

4    That doesn't get us to the defendants in this case.

5            So you may be able to come up with subpoenas

6    that are more properly drawn that would deal with the

7    issues of causation, but these don't.  They do lots of

8    things and that's not what -- we'll use the phrase --

9    a fishing expedition is not for discovery.  Let's hone

10   it.  This does not.

11           It's very nice that these other companies are

12   calling you up and happily just talking to you and

13   saying let's break this down to what it is.  But it's

14   your job in the first instance to narrow it.  Because

15   the next step is, if we don't do that here, they are

16   getting their motions to file to quash.  They are all

17   shaking their heads, yes, that's what's going to

18   happen, and we're telling you today, it's going to

19   happen.

20           MS. PARFITT:  Why don't we do this, your

21   Honor, if this will be agreeable with the Court.

22           JUDGE WOLFSON:  Okay.

23           MS. PARFITT:  Why don't we, understanding the

24   Court's concern, and hopefully clarifying perhaps a

25   little bit.

1          You mentioned a law firm.  Why would you want

2     the law firm?  It just so happens, that law firm

3     funded a scientific study on general causation.  That

4     was the relevance.  We weren't just reaching out to

5     law firms ad hoc.  This happens to be a law firm that

6     is repeatedly referred to throughout the J&J/Imerys

7     documents.

8          THE COURT:  Not that they may have had a 50

9     year history with this law firm doing all kinds of

10    things for them unrelated.  This is the problem with

11    all of these requests.

12         JUDGE GOODMAN:  And then the third request

13    which is "payments, dues, membership fees,

14    contributions, remunerations," I think you see where

15    we're going here.

16         MS. PARFITT:  Judge Goodman, I understand. Let

17    me just clarify with regard to invoices and dues which

18    might sound a little bit outlandish.

19         That goes to participation.  The CTFA and PCPC

20    industries can participate as a representative

21    industry in this larger trade association.  The trade

22    association one of its missions is to -- how should I

23    say -- promote products.

24         So we were looking to see -- I understand the

25    lack of clarity here and I hear what the Court is

1  saying.  But the reason for invoices, that was to say

2  how much an industry might pay to be a participant in

3  a trade association.  I think I understand what the

4  Court is asking.  I hear you loud and clear.

5          JUDGE WOLFSON:  I think you do.

6          MS. PARFITT:  I do.  So why don't we step back

7  and we will caucus and we will hopefully come up with

8  something -- excuse me, your Honor.

9          (Pause.)

10         JUDGE WOLFSON:  Mr. Tisi.

11         MR. TISI:  I think there was one other issue

12  that came up and candidly I was involved in drafting

13  some of these.  So let me at least conceptualize some

14  of these.

15         You heard on science day a lot of these

16  different organizations have weighed in on the talc

17  issue and I suspect when we get to the general

18  causation question, there is going to be some

19  representation, well, there is this long list of

20  organizations that have weighed in on this topic one

21  way or the other and this gives the Court --

22  obviously, testing the product is one aspect of it.

23  But one of the things that will be put out there is,

24  well, these organizations have weighed in and said

25  this.

1          And one of the things we come across in almost

2     every one of these cases -- I even remember back in

3     the day to the blood litigation cases where we dealt

4     with -- a lot of the different organizations that have

5     a stake in the issue will influence or attempt to

6     influence one way or the other doing it nefariously

7     not nefariously, whatever, the outcome of the various

8     organizations that weigh in on the topic.  And one of

9     the things we may want to do is to impeach or not or

10    support the conclusions of some of these organizations

11    saying, Look, you were funded by, you received funding

12    by this organization.

13         This is really an industry organization that

14    is masquerading as an independent organization.  This

15    is a company that you only provided half of the

16    science for this organization to consider when they

17    concluded that talc either was or was not a

18    carcinogen.

19         And so one of the things that we constantly

20    come up with in any litigation of this type is trying

21    to look at the organizations that have weighed in on

22    the topic and say to them, Was this an independent

23    review of the medical and scientific literature?  Or,

24    Was this something that was done where there was undue

25    influence in order to affect the process?

1          So when you see the long list of people -- and

2     I don't have it in front of me --

3          JUDGE WOLFSON:  Of course, these subpoenas

4     were not served on those organizations.

5          MR. TISI:  But they were served on the

6     companies that participated in those organizations.

7          For example -- and, again, I don't have the

8     document in front of me.  But I'm very familiar

9     because I did this kind of a thing where you have,

10    let's say, the Endocrine Society in a case and

11    different organizations weigh in on a topic and you

12    find out that 10 of the 12 people that weighed in on

13    the topic were industry consultants, had been paid by

14    the industry, that they also had an interest in the

15    product.

16         That's why when we chose the list of people

17    that are in this Schedule A, these were people with

18    whom these companies or organizations had an interest.

19         JUDGE WOLFSON:  I know what you are saying and

20    believe me I understood that from why you asked for

21    contributions, dues, dinners.  I understand the issue

22    of influence.

23         I understand also from science day and many of

24    the other cases I've handled that many studies are

25    funded by different organizations and entities and

1    that therefore there is an argument as to bias as to

2    how the study is done.  I understand that.

3        The problem that we have, and I don't think we

4    have to belabor it because I think I've already heard

5    from Ms. Parfitt that you are going to go back, is

6    that that you've created a document request that are

7    not narrowed to what those concerns are.

8        So let's go there.  Let's relate it to the

9    products that we're talking about, talc products, and

10   not anything else.  For instance, if they've had

11   communications with these various entities for

12   50 years about other products, we don't want those.

13       MR. TISI:  It's not just notice to the

14   defendants.

15       JUDGE WOLFSON:  I know it's not a notice.  I

16   know you are talking about a causation issue as

17   well --

18       MR. TISI:  Correct.

19       JUDGE WOLFSON:  -- because what is the testing

20   being done and did you provide them with certain

21   things that could have influenced the testing when it

22   was done of talc products even if it wasn't

23   specifically Shower to Shower, and then you want to

24   relate back.  And, by the way, they looked at where

25   the talc was coming from and it was the same place.

1          There are separate issues here of causation

2     and knowledge and we appreciate those.  But on the

3     causation issues, to start with, these are not

4     narrowed and they are certainly not narrowed on any

5     kind of knowledge question.

6          MR. TISI:  I didn't want there to be any

7     misunderstanding that we were only trying to get what

8     the defendants knew or should have known because that

9     implicates the liability question.  The question is

10    when an organization comes out with a recommendation,

11    were they unduly influenced by somebody else?

12         JUDGE WOLFSON:  I know that and I get that,

13    but that is not what these requests do and they go

14    well beyond.

15         So go back to the drawing board.  Frankly, I

16    would tell you at this point -- I don't care what your

17    negotiations are with the third parties.  You can tell

18    them that the Court has said not to respond to them

19    until they are narrowed.  Because before they would

20    even respond, I know J&J is going to try and block it

21    and Imerys or whoever else.

22         You wanted to say something, Ms. Dotro?

23         MS. DOTRO:  Yes, Judge.

24         There is one additional subpoena you'll see at

25    the end to Mr. William Kelly.

1            JUDGE WOLFSON:  Yes.  Who is that?

2            MS. DOTRO:  He is an attorney regulatory

3    consultant that was hired by Imerys.  So we would like

4    leave to file a separate motion to quash as to the

5    entire subpoena to Mr. Kelly.

6            JUDGE WOLFSON:  You're going to have privilege

7    issues as to him?

8            MS. DOTRO:  Absolutely.

9            JUDGE WOLFSON:  That's a separate question.

10   And you may do that.  So we've got an issue with

11   Mr. Kelly, I understand.

12           So that's the direction.  The recipients of

13   these subpoenas are to be told that they are not to

14   respond to them at this time.

15           First of all, there are objections that are

16   going to be filed by Imerys and by J&J -- they were to

17   have been filed.  I know you will as to Mr. Kelly.

18   I'm asking that the parties not file them as to the

19   other entities until new requests are framed and

20   served.

21           MS. PARFITT:  Your Honor, we will move very

22   quickly to do that.  I can assure the Court.

23           But what I don't want to happen, as well, as

24   your Honor has indicated, we don't want to do these

25   month-to-month things.

1        So once the plaintiffs have honed in a little

2   bit more pursuant to the Court's guidance today, we

3   will get those out forthwith.  We're not going to wait

4   and come back.  I don't assume the Court is asking us

5   to come before the Court again.

6        JUDGE WOLFSON:  No.

7        MS. PARFITT:  I assume that's not what you

8   want.  So we'll move forthwith.  And hopefully there

9   won't be the objection that we had this time.

10       JUDGE WOLFSON:  My further suggestion is to

11  expedite this because it's not helpful for you to

12  draft them, serve them, and then simply give them

13  copies of them, and then we're back to, Wait a minute.

14  We've got problems.

15       Redraft them, send them to the defendants in

16  this case, and try and resolve the objections before

17  they are served on the third party.  So once they are

18  served on the third party, we know these people are

19  cleared.

20       MS. PARFITT:  Your Honor, the only thing I

21  would ask on this, and not just to throw salt at

22  anybody here, we do want to move quickly on this.  We

23  understand what the Court has said today, keep apace,

24  and we're interested in doing that as well.

25       JUDGE WOLFSON:  It's in your interest.

34

1          MS. PARFITT:  It is in everyone's interest,

2   frankly, and most importantly our clients.

3          JUDGE WOLFSON:  Right.

4          MS. PARFITT:  So what I don't want to have is

5   a belabored meet and confer.

6          Judge Goodman, I guess this particularly goes

7   to you.  If we get it to the defendants, we feel we

8   have listened to what the Court has said.  It's

9   reasonable.  They think it's unreasonable.

10          I would like to get it to the Court -- and

11   really if that's something we could then approach you,

12   Judge Goodman, very quickly on so that we could get

13   them out, and I think you've invited us to do so.  So

14   I would take that invitation.

15          JUDGE GOODMAN:  What I would like to do, I

16   would like to deal with this before the next

17   conference.  So if you folks can't work it out, why

18   don't you plan to get me a joint submission within

19   two weeks.

20          Today is the 2nd.  So by May 16.  If you can

21   resolve it, you tell me, All is good, don't need you,

22   or you send me a joint letter that exhausts all sides'

23   positions on the issues.

24          It sounds to me like Mr. Kelly's is going to

25   be a separate animal because that's not as much a

1    scope as a privilege issue, but as to the others.

2           JUDGE WOLFSON:   So if you are not going to

3    back off on Mr. Kelly, then I think go file your

4    application.

5           MS. PARFITT:   Very good.

6           JUDGE WOLFSON:   Great.

7           Off the record.

8           (Discussion off-the-record.)

9           (Proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

**C E R T I F I C A T E**

I, **Vincent Russoniello,** Official United States Court Reporter and Certified Court Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I do further certify that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

S/Vincent Russoniello
Vincent Russoniello, CCR
Certificate No. 675

**0**

**08608** [1] - 1:8

**1**

**1** [2] - 13:1, 13:2
**10** [1] - 29:12
**12** [1] - 29:12
**14** [1] - 8:9
**15** [1] - 10:19
**16** [1] - 34:20
**16-MD-2738(FLW)(LHG**
  [1] - 1:2

**2**

**2** [4] - 1:5, 8:19, 13:1,
  24:13
**2017** [1] - 1:5
**28** [1] - 3:8
**28th** [2] - 6:8, 6:13
**2nd** [1] - 34:20

**3**

**3** [1] - 6:13
**30** [3] - 4:16, 14:21,
  14:22

**4**

**4** [1] - 7:17
**402** [1] - 1:8
**45** [1] - 4:14

**5**

**50** [2] - 26:8, 30:12

**6**

**609)588-9516** [1] - 1:25
**675** [1] - 36:24

**7**

**753** [1] - 3:8

**9**

**90** [1] - 14:23

**A**

**ability** [1] - 24:2
**able** [3] - 14:7, 18:1, 25:5
**ABOVE** [1] - 3:11
**ABOVE-ENTITLED** [1] -

3:11
**absolutely** [2] - 8:21,
  32:8
**account** [1] - 7:3
**accounting** [1] - 10:3
**accurate** [1] - 36:9
**ACCURATE** [1] - 3:9
**acknowledge** [1] - 17:20
**acted** [1] - 23:8
**ACTION** [1] - 1:2
**action** [2] - 36:15, 36:17
**ad** [1] - 26:5
**add** [1] - 22:10
**addition** [1] - 4:18
**additional** [1] - 31:24
**address** [2] - 8:22, 9:16
**addressing** [2] - 21:18,
  24:7
**adequately** [1] - 13:21
**adulterants..** [1] - 24:19
**adulterated** [1] - 25:1
**affect** [1] - 28:25
**agencies** [1] - 23:5
**agenda** [1] - 21:20
**agendas** [1] - 7:18
**agreeable** [1] - 25:21
**agreed** [3] - 4:19, 5:3, 5:4
**agreement** [1] - 5:11
**ALABAMA** [1] - 1:14
**ALLEN** [1] - 1:13
**almost** [1] - 28:1
**alone** [1] - 22:24
**America** [1] - 2:11
**AN** [1] - 3:9
**animal** [1] - 34:25
**ANN** [1] - 2:11
**answer** [1] - 16:5
**answers** [1] - 13:21
**apace** [1] - 33:23
**appear** [1] - 13:12
**appearances** [1] - 4:5
**application** [1] - 35:4
**applications** [1] - 11:23
**appreciate** [2] - 23:21,
  31:2
**approach** [2] - 19:23,
  34:11
**appropriate** [1] - 7:10
**April** [2] - 6:8, 6:13
**argument** [1] - 30:1
**arms** [1] - 18:17
**arsenic** [1] - 24:18
**asbestos** [4] - 11:1,

20:25, 21:3, 24:18
**ASHCRAFT** [1] - 1:15
**aspect** [1] - 27:22
**assessment** [1] - 10:16
**associated** [1] - 13:10
**association** [7] - 12:13,
  12:14, 12:21, 21:9,
  26:21, 26:22, 27:3
**associations** [1] - 16:7
**assume** [3] - 10:4, 33:4,
  33:7
**assure** [2] - 14:25, 32:22
**attached** [1] - 13:9
**attachment** [1] - 8:24
**attempt** [1] - 28:5
**attorney** [3] - 32:2,
  36:14, 36:16
**attorneys** [1] - 14:4
**available** [1] - 14:6
**avenue** [1] - 23:13
**avoid** [1] - 22:11
**aware** [2] - 15:23, 15:25

**B**

**baby** [1] - 6:19
**Baby** [1] - 6:20
**BACON** [1] - 1:21
**base** [1] - 16:8
**based** [2] - 14:23, 24:17
**basis** [1] - 8:3
**BE** [1] - 3:9
**BEASLEY** [1] - 1:13
**become** [1] - 20:4
**Behalf** [1] - 1:18
**behalf** [4] - 1:22, 2:7,
  2:11, 6:4
**belabor** [1] - 30:4
**belabored** [1] - 34:5
**belief** [2] - 15:2
**benefit** [1] - 17:10
**best** [1] - 24:2
**between** [10] - 8:12, 9:2,
  11:4, 16:22, 17:11, 18:2,
  21:7, 23:17, 24:9, 24:13
**beyond** [2] - 22:10, 31:14
**bias** [1] - 30:1
**BIDDLE** [1] - 1:19
**big** [1] - 15:22
**bit** [6] - 8:3, 9:13, 9:19,
  25:25, 26:18, 33:2
**block** [1] - 31:20
**blood** [1] - 28:3

**board** [1] - 31:15
**body** [1] - 24:17
**breadth** [1] - 8:1
**break** [1] - 25:13
**bring** [1] - 16:2
**broad** [2] - 22:6, 23:10
**broader** [2] - 19:16,
  22:19
**bullet** [4] - 6:15, 6:17,
  7:1, 7:4
**burdensome** [2] - 11:25,
  21:5
**BY** [8] - 1:14, 1:15, 1:17,
  1:20, 1:21, 2:7, 2:9, 2:11

**C**

**cancer** [2] - 21:22, 24:17
**candidly** [1] - 27:12
**carcinogen** [1] - 28:18
**care** [2] - 5:8, 31:16
**case** [9] - 8:5, 9:6, 16:2,
  17:15, 19:14, 24:4, 25:4,
  29:10, 33:16
**cases** [1] - 4:13, 4:15,
  4:17, 9:9, 9:11, 13:15,
  13:20, 15:17, 28:2, 28:3,
  29:24
**categories** [1] - 4:20
**caucus** [1] - 27:7
**causation** [18] - 9:7,
  15:10, 15:14, 15:15,
  17:17, 18:7, 19:13,
  21:12, 21:23, 21:25,
  22:13, 23:2, 25:7, 26:3,
  27:18, 30:16, 31:1, 31:3
**CCR** [3] - 1:24, 3:16,
  36:24
**Center** [1] - 10:12
**certain** [3] - 13:25, 30:20
**certainly** [5] - 10:7, 13:8,
  17:25, 24:23, 31:4
**Certificate** [1] - 36:24
**CERTIFIED** [1] - 3:9
**Certified** [1] - 36:7
**certify** [2] - 36:8, 36:13
**chose** [1] - 29:16
**CHRIS** [1] - 1:16
**CHRISTOPHER** [1] -
  1:17
**CIR** [8] - 10:13, 10:15,
  10:17, 17:1, 17:3, 17:5,
  17:11, 18:22

CIVIL [1] - 1:2
claim [1] - 4:23
clarifications [1] - 5:17
clarify [1] - 26:17
clarifying [1] - 25:24
clarity [1] - 26:25
CLARKSON [1] - 1:8
class [2] - 9:11, 9:14
clear [5] - 5:12, 5:16, 21:24, 24:8, 27:4
cleared [1] - 33:19
CLERK [1] - 4:2
clients [1] - 34:2
closely [1] - 19:8
COHEN [1] - 1:17
Colgate [11] - 8:22, 10:23, 10:24, 10:25, 16:22, 20:8, 20:10, 20:18, 20:21, 21:7, 22:3
collected [1] - 18:10
collecting [1] - 19:25
collective [1] - 19:18
collectively [3] - 12:15, 12:17, 18:19
coming [1] - 30:25
Committee [1] - 1:18
communicated [4] - 13:16, 15:24, 23:2, 23:4
communication [4] - 14:16, 18:25, 24:3, 25:3
communications [14] - 8:19, 9:4, 9:23, 11:4, 16:21, 17:11, 17:19, 18:22, 18:23, 22:22, 24:13, 24:20, 30:11
companies [6] - 9:2, 14:5, 20:25, 25:11, 29:6, 29:18
company [4] - 14:18, 14:19, 21:22, 28:15
competitive [1] - 20:20
complaints [1] - 6:23
conceptualize [1] - 27:13
concern [1] - 25:24
concerns [1] - 30:7
concluded [2] - 28:17, 35:9
conclusions [1] - 28:10
concrete [1] - 20:7
conduct [1] - 19:7
confer [1] - 34:5
CONFERENCE [1] - 1:4

conference [2] - 7:19, 34:17
connection [1] - 23:17
consider [1] - 28:16
considered [1] - 6:21
constantly [1] - 28:19
constituents [1] - 20:12
consultant [1] - 32:3
consultants [1] - 29:13
consumer [5] - 9:9, 9:10, 9:14, 19:14, 24:4
contaminants [2] - 22:1, 22:2
continued [1] - 1:23
contribute [1] - 16:7
contributions [2] - 26:14, 29:21
conversations [1] - 14:7
cooperative [1] - 14:15
coordination [1] - 14:24
copies [3] - 7:20, 8:7, 33:13
copy [1] - 7:23
corporate [1] - 13:16
correct [4] - 9:24, 10:2, 11:10, 30:18
correctly [1] - 8:23
Cosmetic [1] - 10:15
COUGHLIN [1] - 2:9
counsel [6] - 9:8, 13:17, 20:1, 20:3, 36:14, 36:16
country [1] - 23:15
course [2] - 11:12, 29:3
court [3] - 4:1, 6:1, 13:15
Court [18] - 7:23, 14:25, 19:6, 21:18, 22:7, 25:21, 26:25, 27:4, 27:21, 31:18, 32:22, 33:4, 33:5, 33:23, 34:8, 34:10, 36:7
COURT [4] - 1:1, 1:25, 3:16, 26:8
Court's [2] - 25:24, 33:2
COURTHOUSE [1] - 1:8
cover [1] - 11:21
CRE [11] - 10:12, 10:17, 16:23, 16:25, 17:1, 17:2, 17:4, 17:11, 18:23, 22:23
created [1] - 30:6
criteria [1] - 6:16
CRR [1] - 1:24
CTFA [1] - 26:19

**D**

D.C [2] - 1:22, 2:7
date [3] - 13:25, 19:5, 36:11
days [5] - 4:14, 4:16, 14:21, 14:22, 14:23
deal [2] - 25:6, 34:16
dealt [1] - 28:3
debate [1] - 20:5
decades [2] - 12:5, 12:8
decision [5] - 12:15, 12:17, 13:19, 18:8, 18:11
decision-making [2] - 12:15, 12:17
decisions [1] - 18:5
Defendant [3] - 1:22, 2:7, 2:11
defendants [13] - 4:21, 5:2, 8:1, 8:15, 9:2, 9:20, 17:15, 23:2, 25:4, 30:14, 31:8, 33:15, 34:7
defendants' [1] - 21:21
delete [1] - 7:4
deposition [3] - 13:3, 13:4, 13:19
depositions [1] - 13:23
determine [1] - 21:2
detour [1] - 23:16
development [1] - 6:22
diagnosis [1] - 5:10
differ [1] - 17:9
difference [1] - 15:22
different [7] - 4:12, 15:13, 19:15, 27:16, 28:4, 29:11, 29:25
difficulty [1] - 12:8
dinners [1] - 29:21
direction [1] - 32:12
directives [1] - 18:12
directly [3] - 21:12, 21:24
discern [1] - 14:7
discovery [2] - 6:1, 25:9
Discovery [1] - 6:14
Discussion [2] - 4:6, 35:8
discussion [3] - 5:21, 5:23, 7:13
discussions [2] - 13:17, 17:18
distress [1] - 4:24
DISTRICT [2] - 1:1, 1:1

document [4] - 6:5, 13:12, 29:8, 30:6
documentation [2] - 11:4, 24:2
documents [13] - 6:19, 9:18, 9:22, 9:25, 13:20, 14:2, 14:9, 14:21, 17:22, 18:21, 19:8, 24:21, 26:7
documents.. [1] - 13:11
done [10] - 6:1, 13:14, 13:15, 22:8, 22:21, 23:1, 28:24, 30:2, 30:20, 30:22
DOTRO [5] - 2:9, 21:14, 31:23, 32:2, 32:8
Dotro [3] - 22:10, 22:20, 31:22
doubt [1] - 11:22
down [4] - 14:20, 22:12, 23:17, 25:13
draft [3] - 10:18, 10:19, 33:12
drafted [1] - 12:1
drafting [1] - 27:12
drawing [1] - 31:15
drawn [1] - 25:6
DRINKER [1] - 1:19
duces [1] - 13:11
dues [3] - 26:13, 26:17, 29:21
DUFFY [1] - 2:9
duplicative [1] - 5:25

**E**

EAST [1] - 1:8
easy [1] - 21:4
Effectiveness [1] - 10:13
effects [1] - 24:16
efforts [1] - 24:1
either [4] - 12:21, 18:4, 18:12, 28:17
electronically [1] - 21:5
elsewhere [1] - 23:15
emotional [1] - 4:24
employee [2] - 36:14, 36:16
encompass [1] - 6:9
encompassing [1] - 9:14
end [1] - 31:25
Endocrine [1] - 29:10
engaged [1] - 17:14
engagement [1] - 11:11

**engaging** [1] - 5:25
**entire** [2] - 5:13, 32:5
**entities** [14] - 7:17, 8:13, 9:5, 10:5, 17:4, 17:6, 21:15, 22:4, 22:23, 24:10, 24:14, 29:25, 30:11, 32:19
**ENTITLED** [1] - 3:11
**entity** [1] - 17:3
**enumerating** [1] - 4:25
**ESQUIRE** [10] - 1:14, 1:15, 1:16, 1:17, 1:20, 1:21, 1:22, 2:7, 2:9, 2:11
**ESQUIRES** [8] - 1:13, 1:15, 1:17, 1:19, 1:21, 2:6, 2:9, 2:10
**evaluated** [1] - 15:16
**examined** [1] - 19:8
**example** [5] - 20:17, 20:18, 20:23, 24:23, 29:7
**examples** [3] - 20:8, 21:10, 21:13
**exchange** [1] - 19:1
**excuse** [1] - 27:8
**exercise** [1] - 19:7
**exhausts** [1] - 34:22
**existing** [1] - 4:13
**exists** [1] - 5:14
**expedite** [1] - 33:11
**expedition** [1] - 25:9
**experience** [2] - 17:13, 21:4
**expert** [1] - 20:24
**experts** [1] - 16:3
**extent** [4] - 5:14, 17:20, 17:21

---

**F**

**fact** [4] - 9:8, 9:17, 12:22, 13:12
**fairly** [2] - 9:16, 11:14
**familiar** [1] - 29:8
**fees** [1] - 26:13
**FIELD** [1] - 2:11
**file** [6] - 5:13, 5:14, 25:16, 32:4, 32:18, 35:3
**filed** [3] - 4:17, 32:16, 32:17
**finalizing** [1] - 10:19
**financially** [1] - 36:17
**fine** [1] - 5:1

**firm** [5] - 26:1, 26:2, 26:5, 26:9
**firms** [3] - 8:17, 22:24, 26:5
**first** [12] - 6:17, 7:2, 8:9, 8:22, 9:1, 9:21, 20:6, 21:21, 23:11, 23:23, 25:14, 32:15
**FISHER** [1] - 1:8
**fishing** [1] - 25:9
**five** [3] - 5:9, 5:15, 23:25
**five-year** [1] - 5:15
**focusing** [1] - 6:5
**folks** [2] - 12:14, 34:17
**follow** [2] - 7:2, 7:4
**FOLLOWING** [1] - 3:9
**following** [4] - 8:13, 10:5, 24:10, 24:14
**FOR** [1] - 1:1
**foregoing** [1] - 36:9
**form** [1] - 12:18
**forth** [4] - 6:3, 11:4, 21:6, 36:12
**forthwith** [2] - 33:3, 33:8
**forward** [3] - 5:10, 6:11, 7:8
**framed** [1] - 32:19
**frankly** [4] - 16:22, 19:3, 31:15, 34:2
**FRAZIER** [4] - 1:21, 5:19, 6:12, 22:9
**Frazier** [2] - 6:4, 6:7
**FREDA** [1] - 1:10
**front** [2] - 29:2, 29:8
**full** [1] - 19:1
**funded** [3] - 26:3, 28:11, 29:25
**funding** [1] - 28:11
**futility** [1] - 19:7

---

**G**

**Gamble** [3] - 8:10, 8:12, 22:3
**gastroenterologists** [1] - 4:22
**general** [12] - 6:15, 9:6, 9:7, 11:15, 15:15, 17:16, 18:7, 19:13, 21:23, 21:24, 26:3, 27:17
**generally** [5] - 6:19, 6:25, 7:5, 11:13, 21:8
**GEREL** [1] - 1:15

**Goodman** [5] - 11:24, 24:7, 26:16, 34:6, 34:12
**GOODMAN** [16] - 1:11, 4:4, 4:9, 7:15, 7:25, 9:21, 9:25, 10:3, 13:3, 13:8, 16:18, 22:14, 23:6, 23:20, 26:12, 34:15
**GORDON** [1] - 2:10
**grave** [1] - 20:2
**great** [1] - 35:6
**group** [5] - 6:4, 15:6, 18:14, 19:18
**groups** [1] - 18:20
**guess** [2] - 12:9, 34:6
**guidance** [1] - 33:2

---

**H**

**half** [1] - 28:15
**handed** [1] - 8:7
**handful** [2] - 14:20, 19:4
**handled** [1] - 29:24
**happily** [1] - 25:12
**HARDY** [1] - 1:21
**header** [1] - 6:14
**heads** [1] - 25:17
**health** [2] - 4:23, 24:16
**healthcare** [1] - 4:12
**hear** [5] - 8:2, 10:7, 23:9, 26:25, 27:4
**heard** [3] - 23:19, 27:15, 30:4
**held** [1] - 13:19
**helpful** [1] - 33:11
**hematologists** [1] - 4:21
**hereby** [1] - 36:8
**hereinbefore** [1] - 36:11
**hired** [1] - 32:3
**history** [6] - 12:4, 12:22, 15:4, 15:5, 19:19, 26:9
**hit** [2] - 18:18, 18:19
**hoc** [1] - 26:5
**hold** [1] - 23:7
**hone** [2] - 16:1, 25:9
**honed** [2] - 24:22, 33:1
**Honor** [18] - 5:18, 5:19, 7:22, 8:23, 13:7, 13:15, 17:8, 19:25, 21:14, 22:9, 23:19, 23:23, 23:24, 25:21, 27:8, 32:21, 32:24, 33:20
**HONORABLE** [2] - 1:10, 1:11

**Honors** [3] - 9:7, 12:5, 19:16
**hope** [1] - 8:4
**hopefully** [3] - 25:24, 27:7, 33:8
**hoping** [1] - 23:25
**human** [1] - 16:14

---

**I**

**idea** [1] - 10:7
**identical** [2] - 9:16, 20:16
**identified** [1] - 4:21
**identifying** [1] - 22:25
**IMA** [2] - 16:23, 17:11
**Imerys** [13] - 2:11, 8:15, 11:5, 14:10, 16:9, 17:15, 18:11, 18:20, 19:10, 20:15, 31:21, 32:3, 32:16
**impeach** [1] - 28:9
**implicates** [1] - 31:9
**important** [5] - 9:11, 10:9, 18:8, 18:15, 19:12
**importantly** [1] - 34:2
**IN** [2] - 1:4, 3:10
**include** [4] - 4:20, 5:7, 15:19, 18:9
**including** [2] - 8:14, 24:15
**increased** [1] - 21:22
**incredibly** [1] - 23:10
**indeed** [1] - 24:24
**independent** [2] - 28:14, 28:22
**indicated** [3] - 8:23, 14:18, 32:24
**individual** [2] - 18:20, 21:15
**individuals** [6] - 7:17, 8:17, 10:10, 13:16, 13:24, 14:1
**industrial** [1] - 18:2
**industries** [5] - 17:13, 17:14, 18:3, 19:11, 26:20
**industry** [8] - 16:4, 17:12, 20:18, 26:21, 27:2, 28:13, 29:13, 29:14
**influence** [4] - 28:5, 28:6, 28:25, 29:22
**influenced** [2] - 30:21, 31:11

**information** [11] - 15:2, 16:8, 16:11, 16:14, 16:15, 16:17, 17:5, 19:12, 21:6, 21:11, 24:4
**informing** [1] - 18:13
**Ingredient** [1] - 10:15
**ingredients** [2] - 11:3, 20:12
**injury** [1] - 9:9
**inquiry** [2] - 9:8, 11:14
**instance** [4] - 10:12, 24:22, 25:14, 30:10
**intend** [1] - 23:11
**interest** [4] - 29:14, 29:18, 33:25, 34:1
**interested** [3] - 16:12, 33:24, 36:17
**interject** [1] - 17:2
**interrelationship** [1] - 18:2
**interrogatories** [1] - 9:12
**invitation** [1] - 34:14
**invited** [1] - 34:13
**invoices** [3] - 10:1, 26:17, 27:1
**involve** [1] - 14:11
**involved** [4] - 11:21, 12:7, 12:12, 27:12
**involvement** [1] - 15:4
**irrelevant** [1] - 20:3
**IS** [1] - 3:9
**issue** [16] - 8:5, 9:6, 11:1, 11:2, 17:17, 19:13, 21:13, 22:5, 22:13, 27:11, 27:17, 28:5, 29:21, 30:16, 32:10, 35:1
**issued** [1] - 15:1
**issues** [10] - 6:24, 19:17, 21:18, 22:12, 23:2, 25:7, 31:1, 31:3, 32:7, 34:23

**J**

**J&J** [17] - 11:5, 11:20, 14:9, 15:23, 15:25, 16:9, 16:13, 17:15, 17:20, 18:11, 18:20, 19:10, 22:22, 24:25, 31:20, 32:16
**J&J's** [2] - 5:24, 15:11
**J&J/Imerys** [1] - 26:6
**Jersey** [1] - 36:8
**JERSEY** [4] - 1:1, 1:17,

1:20, 2:9
**Jim** [1] - 16:24
**jim** [1] - 16:25
**job** [1] - 25:14
**Johns** [3] - 21:1, 21:3, 22:3
**Johns-Manville** [1] - 21:3
**Johnson** [16] - 1:22, 8:15, 20:10, 20:14, 20:16, 20:17, 20:19, 20:21, 21:7
**JOHNSON** [2] - 1:4
**Johnson's** [1] - 6:20
**joint** [3] - 7:18, 34:18, 34:22
**Judge** [6] - 11:23, 21:23, 24:7, 31:23, 34:6, 34:12
**judge** [1] - 26:16
**JUDGE** [49] - 4:3, 4:4, 4:8, 4:9, 5:20, 5:23, 7:6, 7:12, 7:15, 7:20, 7:25, 9:21, 9:25, 10:3, 10:21, 11:6, 11:16, 12:25, 13:3, 13:8, 13:9, 15:9, 15:21, 16:18, 16:24, 22:14, 23:4, 23:6, 23:20, 24:5, 25:22, 26:12, 27:5, 27:10, 29:3, 29:19, 30:15, 30:19, 31:12, 32:1, 32:6, 32:9, 33:6, 33:10, 33:25, 34:3, 34:15, 35:2, 35:6
**judgements** [1] - 15:21
**judgments** [1] - 15:18
**JULIE** [1] - 1:20

**K**

**KATHLEEN** [1] - 1:21
**keep** [1] - 33:23
**Kelly** [5] - 31:25, 32:5, 32:11, 32:17, 35:3
**Kelly's** [1] - 34:24
**kind** [4] - 14:24, 21:10, 29:9, 31:5
**kinds** [2] - 15:18, 26:9
**knowing** [1] - 16:12
**knowledge** [7] - 15:24, 16:16, 19:9, 21:21, 23:8, 31:2, 31:5
**known** [3] - 15:12, 16:4, 31:8

**L**

**labeling** [1] - 6:23
**lack** [1] - 26:25
**large** [1] - 14:19
**larger** [1] - 26:21
**last** [3] - 9:15, 9:18, 23:22
**law** [8] - 8:17, 22:24, 26:1, 26:2, 26:5, 26:9
**least** [3] - 13:2, 19:21, 27:13
**leave** [2] - 4:25, 32:4
**LEIGH** [1] - 1:14
**less** [1] - 19:24
**letter** [3] - 6:7, 6:13, 34:22
**liability** [3] - 21:17, 21:23, 31:9
**limit** [1] - 7:1
**limitation** [6] - 10:21, 11:17, 12:25, 13:1, 13:2, 24:11
**limited** [2] - 10:6, 24:15
**list** [5] - 5:1, 6:15, 27:19, 29:1, 29:16
**listened** [1] - 34:8
**litany** [1] - 18:10
**literature** [1] - 28:23
**litigation** [6] - 6:2, 6:6, 22:5, 23:14, 28:3, 28:20
**LOCKE** [2] - 2:7, 17:2
**Locke** [1] - 17:9
**LOIS** [1] - 1:11
**look** [6] - 11:17, 13:20, 17:22, 19:5, 19:17, 28:21
**Look** [1] - 28:11
**looked** [2] - 18:24, 30:24
**looking** [6] - 8:9, 8:11, 11:20, 13:4, 18:20, 26:24
**looks** [2] - 8:8, 13:8
**LORNA** [1] - 2:9
**loud** [1] - 27:4
**Louis** [1] - 6:6

**M**

**manufacturers** [2] - 8:5, 16:10
**Manville** [5] - 20:23, 20:24, 21:1, 21:3, 22:3
**MARKETING** [1] - 1:5

**marketing** [6] - 6:22, 15:5, 15:6, 19:14, 19:16, 24:3
**masquerading** [1] - 28:14
**MATTER** [1] - 3:11
**MAY** [1] - 1:5
**mean** [1] - 4:25
**meaning** [1] - 6:10
**meaningful** [1] - 19:6
**means** [1] - 10:8
**meant** [1] - 6:25
**medical** [2] - 16:14, 28:23
**meet** [2] - 23:15, 34:5
**meetings** [1] - 19:20
**members** [3] - 10:17, 12:14, 12:21
**membership** [1] - 26:13
**mental** [1] - 4:22
**mentioned** [1] - 26:1
**Michelle** [1] - 14:18
**MICHELLE** [1] - 1:15
**might** [4] - 9:13, 14:9, 26:18, 27:2
**mine** [3] - 20:9, 20:11, 24:25
**minute** [1] - 33:13
**miss** [1] - 18:18
**missions** [1] - 26:22
**misstatement** [1] - 17:3
**misunderstanding** [1] - 31:7
**month** [2] - 32:25
**month-to-month** [1] - 32:25
**most** [2] - 13:20, 34:2
**motion** [1] - 32:4
**motions** [1] - 25:16
**move** [4] - 7:8, 32:21, 33:8, 33:22
**moved** [1] - 19:3
**moving** [1] - 22:12
**MR** [8] - 7:11, 17:2, 20:7, 27:11, 29:5, 30:13, 30:18, 31:6
**MS** [35] - 5:18, 5:19, 6:12, 7:22, 8:21, 9:24, 10:2, 10:9, 10:25, 11:8, 12:3, 13:6, 13:14, 15:15, 16:5, 16:20, 16:25, 17:8, 21:14, 22:9, 23:19, 23:21, 25:20, 25:23,

26:16, 27:6, 31:23, 32:2, 32:8, 32:21, 33:7, 33:20, 34:1, 34:4, 35:5
**MY** [1] - 3:10

**N**

**narrow** [1] - 25:14
**narrowed** [4] - 30:7, 31:4, 31:19
**nature** [1] - 13:18
**necessarily** [1] - 23:14
**need** [4] - 14:12, 14:13, 16:1, 34:21
**needed** [1] - 5:17
**needs** [1] - 13:22
**nefariously** [2] - 28:6, 28:7
**negotiations** [1] - 31:17
**New** [1] - 36:8
**NEW** [4] - 1:1, 1:17, 1:20, 2:9
**new** [2] - 4:15, 32:19
**next** [2] - 25:15, 34:16
**nice** [1] - 25:11
**NJ** [1] - 1:8
**NO** [1] - 1:2
**noted** [1] - 4:5
**NOTES** [1] - 3:10
**notice** [7] - 4:18, 5:13, 13:3, 13:5, 23:7, 30:13, 30:15
**notices** [3] - 4:11, 4:13, 4:16

**O**

**O'DELL** [2] - 1:14, 5:18
**objecting** [1] - 8:1
**objection** [1] - 33:9
**objections** [5] - 8:6, 11:18, 20:3, 32:15, 33:16
**obtain** [1] - 24:1
**obtained** [1] - 24:24
**obviously** [3] - 9:1, 15:10, 27:22
**OF** [3] - 1:1, 1:4, 3:10
**off-the-record** [4] - 4:6, 5:21, 7:13, 35:8
**OFFICIAL** [2] - 1:25, 3:16
**Official** [1] - 36:6
**once** [2] - 33:1, 33:17
**one** [24] - 7:22, 8:9, 9:4,

9:23, 13:24, 14:18, 14:19, 14:25, 15:7, 16:5, 18:14, 23:4, 26:22, 27:11, 27:20, 27:22, 27:23, 28:1, 28:2, 28:6, 28:8, 28:19, 31:24
**OOT** [1] - 1:22
**open** [2] - 4:1, 12:1
**opening** [1] - 23:13
**order** [1] - 28:25
**ordered** [1] - 22:8
**ordering** [2] - 4:19, 5:6
**organization** [5] - 28:12, 28:13, 28:14, 28:16, 31:10
**organizations** [15] - 17:12, 18:3, 19:19, 27:16, 27:20, 27:24, 28:4, 28:8, 28:10, 28:21, 29:4, 29:6, 29:11, 29:18, 29:25
**outcome** [1] - 28:7
**outlandish** [1] - 26:18
**outlined** [1] - 22:22
**outside** [1] - 22:7
**ovarian** [1] - 24:17
**overbroad** [2] - 11:25, 24:12
**overly** [1] - 22:6
**own** [4] - 11:18, 15:11, 15:12, 16:3

**P**

**page** [3] - 6:13, 7:17, 8:8
**paid** [2] - 10:4, 29:13
**Palmolive** [13] - 8:22, 10:23, 10:24, 11:1, 12:6, 16:23, 18:24, 20:8, 20:11, 20:18, 20:22, 21:7, 22:3
**PARFITT** [28] - 1:15, 7:22, 8:21, 9:24, 10:2, 10:9, 10:25, 11:8, 12:3, 13:6, 13:14, 15:15, 16:5, 16:20, 16:25, 17:8, 23:19, 23:21, 25:20, 25:23, 26:16, 27:6, 32:21, 33:7, 33:20, 34:1, 34:4, 35:5
**Parfitt** [4] - 14:5, 22:22, 24:6, 30:5
**part** [2] - 10:15, 10:17, 17:6

**participant** [1] - 27:2
**participate** [1] - 26:20
**participated** [2] - 19:21, 29:6
**participation** [1] - 26:19
**particular** [1] - 24:24
**particularly** [1] - 34:6
**parties** [11] - 9:20, 12:20, 14:1, 14:5, 14:15, 16:6, 18:17, 19:4, 31:17, 32:18, 36:15
**parts** [1] - 16:7
**party** [9] - 7:16, 10:4, 12:6, 14:25, 15:8, 17:24, 19:24, 33:17, 33:18
**past** [1] - 18:4
**PATRICK** [1] - 1:22
**pause** [2] - 7:24, 27:9
**pay** [1] - 27:2
**payments** [1] - 26:13
**PCPC** [5] - 2:7, 8:16, 11:5, 12:13, 26:19
**PCPC's** [1] - 19:10
**PENNSYLVANIA** [1] - 2:11
**people** [8] - 14:20, 15:1, 19:20, 29:1, 29:12, 29:16, 29:17, 33:18
**perfect** [1] - 22:17
**perhaps** [9] - 10:9, 10:14, 11:5, 12:13, 13:19, 18:25, 23:11, 23:22, 25:24
**period** [5] - 5:15, 12:24, 14:8, 14:17, 20:9
**permitted** [1] - 9:7
**personal** [1] - 9:9
**personally** [1] - 14:3
**persons** [1] - 12:6
**pharmacists** [1] - 4:22
**phrase** [1] - 25:8
**place** [3] - 6:9, 30:25, 36:11
**PLACITELLA** [3] - 1:17, 1:17, 20:7
**Placitella** [2] - 22:17, 24:22
**plaintiff** [1] - 4:23
**Plaintiffs** [2] - 1:18, 12:9
**plaintiffs** [10] - 4:12, 4:20, 5:9, 6:4, 7:9, 7:16, 8:4, 13:22, 21:20, 33:1
**plaintiffs'** [1] - 5:10

**plan** [1] - 34:18
**plus** [1] - 13:11
**point** [7] - 6:17, 14:8, 14:19, 15:25, 20:2, 23:22, 31:16
**pointed** [1] - 6:15
**points** [3] - 7:1, 7:4, 21:20
**pool** [2] - 16:11, 16:17
**pooled** [1] - 16:13
**position** [1] - 17:5
**positions** [1] - 34:23
**possible** [1] - 22:11
**POWDER** [1] - 1:5
**powder** [4] - 6:20, 24:15, 24:16, 24:17
**Powder** [1] - 6:20
**PRACTICES** [1] - 1:5
**preceding** [1] - 5:9
**precisely** [1] - 19:18
**prepared** [1] - 13:13
**presence** [1] - 24:18
**present** [1] - 5:10
**preservation** [3] - 4:10, 4:18, 5:12
**preserve** [1] - 5:13
**pretty** [1] - 21:3
**previous** [1] - 6:17
**privilege** [2] - 32:6, 35:1
**problem** [5] - 22:15, 22:16, 24:7, 26:10, 30:3
**problems** [1] - 33:14
**Proceedings** [1] - 35:9
**proceedings** [1] - 36:10
**process** [1] - 28:25
**Proctor** [3] - 8:10, 8:12, 22:3
**produce** [2] - 11:6, 18:3
**produced** [1] - 17:7
**product** [6] - 11:7, 15:4, 18:9, 18:15, 27:22, 29:15
**product's** [1] - 12:4
**production** [10] - 5:24, 6:8, 9:13, 11:12, 12:7, 12:22, 13:10, 13:12, 13:18, 13:20
**productions** [2] - 6:17, 17:24
**Productions** [1] - 6:14
**products** [29] - 8:4, 9:5, 11:9, 11:13, 11:21, 12:7, 12:11, 12:23, 14:10,

14:12, 15:7, 15:11, 15:19, 16:10, 17:14, 18:4, 21:13, 22:2, 22:4, 24:15, 24:16, 26:23, 30:9, 30:12, 30:22
**PRODUCTS** [1] - 1:5
**progress** [1] - 22:12
**promote** [1] - 26:23
**proper** [1] - 18:12
**properly** [1] - 25:6
**proposals** [1] - 10:3
**proposed** [1] - 7:18
**provide** [4] - 7:23, 13:13, 13:25, 30:20
**provided** [1] - 28:15
**providers** [4] - 4:12, 4:20, 4:23, 5:8
**provides** [1] - 19:12
**providing** [1] - 5:8
**public** [2] - 17:7, 18:13
**purposes** [1] - 6:25
**PURSUANT** [1] - 3:8
**pursuant** [1] - 33:2
**put** [4] - 4:9, 13:2, 15:12, 27:23
**putting** [1] - 10:18

**Q**

**quartz** [1] - 24:18
**quash** [3] - 11:24, 25:16, 32:4
**questions** [4] - 5:16, 8:25, 9:17, 10:22
**quickly** [3] - 32:22, 33:22, 34:12

**R**

**ran** [2] - 16:3, 20:11
**rather** [1] - 23:16
**RE** [1] - 1:4
**reaching** [1] - 26:4
**read** [2] - 7:25, 9:21
**reading** [1] - 23:18
**ready** [1] - 7:8
**real** [2] - 22:15, 23:16
**really** [6] - 9:15, 16:1, 21:5, 22:9, 28:13, 34:11
**reason** [2] - 19:11, 27:1
**reasonable** [2] - 15:1, 34:9
**REATH** [1] - 1:19
**receipts** [1] - 10:1

**received** [1] - 28:11
**receiving** [1] - 5:12
**recipients** [2] - 4:19, 32:12
**recommendation** [1] - 31:10
**record** [12] - 4:6, 4:8, 4:10, 5:20, 5:21, 6:9, 7:12, 7:13, 17:7, 24:8, 35:7, 35:8
**redraft** [1] - 33:15
**REES** [1] - 2:10
**references** [1] - 8:24
**referencing** [1] - 9:18
**referred** [1] - 26:6
**referring** [1] - 23:24
**regard** [22] - 4:13, 4:15, 5:3, 5:6, 5:24, 9:6, 11:1, 11:2, 12:15, 12:17, 13:18, 14:14, 16:8, 16:16, 17:13, 17:16, 18:5, 18:13, 19:9, 23:23, 26:17
**regarding** [4] - 5:25, 9:4, 9:5, 12:16
**regulated** [1] - 12:18
**regulatory** [5] - 6:23, 15:4, 19:20, 21:17, 32:2
**Regulatory** [1] - 10:12
**relate** [2] - 30:8, 30:24
**related** [11] - 6:19, 6:21, 11:8, 12:11, 12:22, 16:10, 17:12, 18:4, 21:14, 23:5, 24:21
**relates** [2] - 20:21, 21:12
**relating** [2] - 8:19, 24:14
**relationship** [11] - 8:12, 8:18, 9:1, 9:22, 10:11, 10:22, 16:22, 19:10, 24:9, 24:11
**relative** [2] - 36:13, 36:16
**relevance** [3] - 9:10, 15:9, 26:4
**relevant** [6] - 8:4, 14:9, 20:13, 21:11, 24:2, 24:4
**remember** [1] - 28:2
**remuneration** [1] - 10:4
**remunerations** [1] - 26:14
**repeatedly** [1] - 26:6
**report** [1] - 19:6
**Reporter** [2] - 36:7
**REPORTER** [2] - 1:25,

3:16
**represent** [1] - 14:4
**representation** [1] - 27:19
**representative** [1] - 26:20
**request** [3] - 22:20, 26:12, 30:6
**requests** [8] - 6:5, 7:9, 8:8, 9:12, 9:13, 26:11, 31:13, 32:19
**research** [2] - 6:22, 17:19
**resolve** [2] - 33:16, 34:21
**resources** [3] - 16:11, 16:13, 16:14
**respect** [2] - 7:1, 21:6
**respond** [3] - 31:18, 31:20, 32:14
**response** [1] - 6:7
**responsive** [1] - 6:21
**responsiveness** [2] - 5:24, 6:16
**restraints** [1] - 5:5
**Review** [1] - 10:16
**review** [4] - 6:16, 10:18, 18:1, 28:23
**reviewing** [1] - 17:23
**rise** [1] - 4:2
**risk** [2] - 10:16, 21:22
**ROTH** [1] - 1:17
**RPR** [1] - 1:24
**run** [2] - 20:19, 21:2
**rushing** [1] - 13:23
**Russoniello** [4] - 3:15, 36:6, 36:23, 36:24
**RUSSONIELLO** [2] - 1:24, 3:16

**S**

**S/Vincent** [2] - 3:15, 36:23
**safety** [10] - 6:22, 10:16, 10:20, 12:16, 15:16, 16:8, 16:16, 17:16, 18:6, 19:12
**SALES** [1] - 1:5
**sales** [4] - 15:6, 19:13, 19:16, 24:3
**salt** [1] - 33:21
**Schedule** [6] - 8:11, 8:24, 9:21, 13:4, 24:9, 29:17

**schedules** [1] - 22:18
**science** [7] - 10:14, 17:19, 18:10, 21:11, 27:15, 28:16, 29:23
**scientific** [5] - 16:14, 16:16, 18:13, 26:3, 28:23
**scope** [5] - 8:1, 14:16, 14:23, 22:7, 35:1
**second** [1] - 9:4
**SECTION** [1] - 3:8
**see** [14] - 8:15, 13:21, 18:1, 22:18, 22:19, 22:20, 23:13, 23:17, 26:14, 26:24, 29:1, 31:24
**select** [1] - 20:9
**send** [2] - 33:15, 34:22
**sense** [2] - 8:6, 22:18
**sent** [5] - 4:11, 4:14, 4:16, 7:18, 19:23
**sentence** [1] - 7:2
**separate** [5] - 17:3, 31:1, 32:4, 32:9, 34:25
**serve** [1] - 33:12
**served** [10] - 7:16, 8:9, 11:19, 19:4, 21:15, 29:4, 29:5, 32:20, 33:17, 33:18
**services** [1] - 5:8
**serving** [3] - 7:9, 10:5, 11:22
**set** [1] - 36:11
**SEYFARTH** [1] - 2:6
**shaking** [1] - 25:17
**share** [1] - 16:11
**shared** [4] - 15:22, 16:4, 17:19, 18:11
**sharing** [1] - 16:15
**SHAW** [1] - 2:6
**SHOOK** [1] - 1:21
**show** [1] - 15:24
**Shower** [4] - 6:20, 30:23
**showing** [1] - 9:22
**side** [2] - 18:25, 22:12
**sides'** [1] - 34:22
**silica** [2] - 11:2, 24:18
**similar** [1] - 20:16
**similarly** [1] - 14:14
**simply** [2] - 11:20, 33:12
**single** [1] - 13:24
**slow** [1] - 19:22
**slow-step** [1] - 19:22

**slowing** [1] - 22:12
**slowly** [1] - 19:3
**Society** [1] - 29:10
**someone** [1] - 16:23
**sometime** [1] - 18:4
**somewhere** [1] - 15:23
**sound** [1] - 26:18
**sounds** [1] - 34:24
**specifically** [3] - 5:25, 6:5, 30:23
**specifications** [1] - 6:23
**St** [1] - 6:6
**stake** [1] - 28:5
**start** [4] - 8:8, 10:23, 12:3, 31:3
**State** [1] - 36:8
**STATE** [1] - 1:8
**state** [2] - 6:1, 13:15
**States** [1] - 36:6
**STATES** [2] - 1:1, 1:8
**STATUS** [1] - 1:4
**Steering** [1] - 1:18
**STENOGRAPHIC** [1] - 3:10
**stenographically** [1] - 36:10
**step** [6] - 19:22, 20:6, 23:11, 23:23, 25:15, 27:6
**still** [1] - 5:14
**stone** [1] - 18:18
**stored** [1] - 21:5
**STREET** [1] - 1:8
**strictly** [1] - 21:17
**strike** [1] - 24:12
**studies** [2] - 16:3, 29:24
**study** [2] - 26:3, 30:2
**submission** [1] - 34:18
**submitted** [2] - 6:7, 17:5
**subpoena** [6] - 11:19, 13:10, 13:11, 19:23, 31:24, 32:5
**subpoenas** [18] - 7:16, 7:21, 8:2, 8:3, 8:8, 11:24, 15:1, 19:24, 21:16, 21:17, 22:6, 22:19, 23:10, 23:25, 25:5, 29:3, 32:13
**suggested** [1] - 5:2
**suggestion** [1] - 33:10
**Supplemental** [1] - 6:14
**supplemental** [1] - 7:9
**supply** [1] - 20:15

**support** [1] - 28:10
**suspect** [1] - 27:17

**T**

**Talc** [1] - 2:11
**talc** [46] - 6:19, 8:19, 10:6, 10:16, 10:20, 11:3, 11:6, 11:12, 12:7, 12:11, 12:16, 12:18, 12:22, 14:11, 14:13, 15:3, 15:7, 15:11, 15:16, 15:19, 16:9, 16:10, 17:5, 17:14, 17:16, 18:3, 18:9, 19:13, 20:9, 20:11, 20:13, 20:14, 20:19, 21:2, 21:3, 21:8, 21:9, 24:14, 24:16, 24:17, 24:24, 27:16, 28:17, 30:9, 30:22, 30:25
**talcum** [2] - 24:14, 24:16
**talks** [1] - 10:19
**target** [1] - 24:1
**targeted** [1] - 10:24
**targeting** [1] - 11:17
**technology** [1] - 16:15
**tecum** [1] - 13:11
**ten** [1] - 19:24
**terms** [1] - 4:10
**TERSIGNI** [1] - 1:20
**test** [1] - 20:15
**tested** [1] - 25:1
**testimony** [2] - 13:10, 13:13
**testing** [13] - 6:22, 20:20, 20:24, 21:15, 22:21, 23:1, 23:5, 24:3, 24:20, 24:21, 27:22, 30:19, 30:21
**tests** [3] - 20:11, 20:19, 21:2
**TEXAS** [1] - 1:21
**THE** [7] - 1:1, 1:10, 1:11, 3:8, 3:10, 4:2, 26:8
**themselves** [1] - 15:16
**therefore** [1] - 30:1
**they've** [3] - 18:10, 25:3, 30:10
**third** [18] - 7:16, 9:20, 12:6, 12:20, 14:1, 14:5, 14:14, 14:25, 15:8, 16:6, 17:24, 18:17, 19:4, 19:24, 26:12, 31:17, 33:17, 33:18

**third-party** [4] - 12:6, 14:25, 17:24, 19:24
**THOMAS** [1] - 2:7
**THORNTON** [1] - 2:11
**three** [4] - 8:24, 8:25, 9:16, 9:25
**threw** [1] - 18:18
**throughout** [1] - 26:6
**throw** [1] - 33:21
**tied** [2] - 10:13, 17:4
**tisi** [1] - 27:10
**TISI** [7] - 1:16, 7:11, 27:11, 29:5, 30:13, 30:18, 31:6
**Tisi** [1] - 6:3
**TITLE** [1] - 3:8
**TO** [2] - 3:8, 3:9
**today** [5] - 12:2, 25:18, 33:2, 33:23, 34:20
**today's** [1] - 7:18
**together** [3] - 10:18, 16:17, 17:4
**topic** [5] - 27:20, 28:8, 28:22, 29:11, 29:13
**toward** [1] - 22:13
**toxicity** [3] - 20:12, 21:8, 21:9
**Tozzi** [3] - 16:24, 16:25, 22:23
**trade** [8] - 12:13, 12:14, 12:21, 16:7, 21:8, 26:21, 27:3
**transcript** [1] - 36:9
**TRANSCRIPT** [2] - 1:4, 3:9
**TRANSCRIPTION** [1] - 3:10
**transferred** [1] - 4:15
**TRENTON** [1] - 1:8
**tried** [3] - 14:15, 19:22, 24:1
**troubled** [1] - 23:9
**true** [1] - 36:9
**try** [2] - 31:20, 33:16
**trying** [8] - 12:23, 18:16, 19:2, 19:7, 22:11, 23:1, 28:20, 31:7
**turn** [1] - 14:1
**two** [4] - 9:17, 9:23, 21:20, 34:19
**Tylenol** [2] - 14:11, 14:12
**type** [1] - 28:20

**U**

**U.S** [2] - 1:25, 3:16
**U.S.C** [1] - 3:8
**ultimately** [1] - 10:19
**under** [1] - 6:13
**understood** [1] - 29:20
**undue** [1] - 28:24
**unduly** [1] - 31:11
**UNITED** [2] - 1:1, 1:8
**United** [1] - 36:6
**unless** [1] - 15:22
**unreasonable** [1] - 34:9
**unrelated** [1] - 26:10
**up** [7] - 19:4, 23:13, 25:5, 25:12, 27:7, 27:12, 28:20
**USDJ** [1] - 1:10
**USMJ** [1] - 1:11

**V**

**various** [4] - 7:17, 19:11, 28:7, 30:11
**vary** [1] - 9:13
**Vincent** [2] - 36:6, 36:24
**VINCENT** [2] - 1:24, 3:16
**VIRGINIA** [1] - 1:15, 1:16

**W**

**wait** [1] - 33:3
**Wait** [1] - 33:13
**warn** [1] - 18:12
**WASHINGTON** [2] - 1:22, 2:7
**weeks** [1] - 34:19
**weigh** [2] - 28:8, 29:11
**weighed** [5] - 27:16, 27:20, 27:24, 28:21, 29:12
**whole** [1] - 23:13
**William** [1] - 31:25
**WOLFSON** [35] - 1:10, 4:3, 4:8, 5:20, 5:23, 7:6, 7:12, 7:20, 10:21, 11:6, 11:16, 12:25, 13:9, 15:9, 15:21, 16:24, 23:4, 24:5, 25:22, 27:5, 27:10, 29:3, 29:19, 30:15, 30:19, 31:12, 32:1, 32:6, 32:9, 33:6, 33:10, 33:25, 34:3, 35:2, 35:6
**word** [2] - 6:25, 7:5
**words** [1] - 7:3

**world** [3] - 15:3, 19:23, 20:24

**Y**

**year** [2] - 5:15, 26:9
**years** [3] - 5:9, 21:4, 30:12