## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2738 (FLW) (LHG) <br><br> ORAL ARGUMENT REQUESTED |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO PERSONAL CARE PRODUCTS COUNCIL'S MOTION TO DISMISS

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Rd., Suite 650
Alexandria, VA 22311
Tel: 703-931-5500
Fax: 703-820-1656
mparfitt@ashcraftlaw.com

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
leigh.odell@beasleyallen.com
**Plaintiffs' Co-Lead Counsel**

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com
**Plaintiffs' Liaison Counsel**

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF FACTS ...................................................................4

III.  ARGUMENT.......................................................................................9

    A.  The Master Complaint Satisfies The Long-Arm Statutes In Each
        Of The States For Which PCPC Seeks Dismissal................................11

        1.  Plaintiffs Have Satisfied The Requirements Of Florida's Long-
            Arm Statute................................................................................14

        2.  Plaintiffs Have Satisfied The Requirements Of Kentucky's
            Long-Arm Statute.....................................................................16

        3.  Plaintiffs have Satisfied The Requirements Of Missouri's
            Long-Arm Statute.....................................................................17

        4.  Plaintiffs Have Satisfied The Requirements Of New York's
            Long-Arm Statute.....................................................................18

        5.  Plaintiffs Have Satisfied The Requirements Of Connecticut's
            Long-Arm Statute.....................................................................20

        6.  Plaintiffs Have Satisfied The Requirements Of Georgia's
            Long-Arm Statute.....................................................................21

        7.  Plaintiffs Have Satisfied The Requirements Of Idaho's Long-
            Arm Statute................................................................................22

        8.  Plaintiffs Have Satisfied The Requirements Of Mississippi's
            Long-Arm Statute.....................................................................23

        9.  Plaintiffs Have Satisfied The Requirements Of Ohio's Long-
            Arm Statute................................................................................25

        10. Plaintiffs Have Satisfied The Requirements Of Wisconsin's
            Long-Arm Statute.....................................................................26

    B.  Jurisdiction Over PCPC Does Not Violate Constitutional Due
        Process Principles.......................................................................................28

        1.  The Master Complaint Effectively Establishes Specific
            Jurisdiction Over Defendant PCPC..........................................28

        2.  The Master Complaint Effectively Establishes General
            Jurisdiction Over Defendant PCPC..........................................34

## TABLE OF CONTENTS (cont'd)

**PAGE**

3.  Plaintiffs Have Jurisdiction Pursuant To The Conspiracy Theory Of Personal Jurisdiction ...................................................... 36

IV.   CONCLUSION ................................................................................ 40

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017) ........................................................... 34, 35, 36

*Bryant v. Smith Interior Design Grp., Inc.*,
  310 S.W.3d 227 (Mo. 2010) ................................................................18

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 105 S. Ct. 2174 (1985).......................................... 29, 31

*Cableview Comm'n of Jacksonville, Inc. v. Time Warner Cable Southeast LLC*,
  2014 WL 1268584 (M.D. Fla., Mar. 27, 2014) ...................................15

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ...............................................................13

*Carmouche v. Tamborlee Mgmt., Inc.*,
  789 F.3d 1201 (11th Cir. 2015) ...........................................................35

*Cebulske v. Johnson & Johnson, et al.*,
  2015 WL 1403148 (S.D. Ill, Mar. 25, 2015) ................................ 10, 11

*Chavez v. Dole Food Co., Inc.*,
  836 F.3d 205 (3d Cir. 2016)................................................................28

*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*,
  536 F.3d 757 (7th Cir. 2008) ...............................................................12

*Coe & Payne Co. v. Wood–Mosaic Corp.*,
  230 Ga. 58, 195 S.E.2d 399 (1973) .....................................................22

*Coen v. Coen*,
  509 F.3d 900 (8th Cir. 2007) ...............................................................13

*Cont'l Research Corp. v. Reeves*,
  204 Ga. App. 120, 419 S.E.2d 48 (1992)............................................22

*Copia Comm'cns, LLC v. AMResorts, L.P.*,
  812 F.3d 1 (1st Cir. 2016)...................................................................13

*Corigliano v. Classic Motor, Inc.*,
  611 F. App'x 77 (3d Cir. 2015) ...........................................................28

*D'Jamoos ex rel. Estate of Weingeroff*,
  566 F.3d at 102....................................................................................28

*Daimler AG v. Bauman*,
  134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)............................... 28, 34, 35

*Davis v. Simon*,
  963 N.E.2d 46 (Ind. Ct. App.), *transfer granted, opinion vacated*, 974 N.E.2d
  475 (Ind. 2012), and *opinion reinstated*, 987 N.E.2d 1093 (Ind. 2013)..............13

## TABLE OF AUTHORITIES (cont'd)

### PAGE

*Dime Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   No. X05CV094017091S 2010 WL 760441 (Conn. Super. Ct. Jan. 15, 2010)...20,
   21

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ...............................................................12

*Estate of Moore v. Carroll*,
   159 F. Supp. 3d 1002 (8th Cir. 2016) ..................................................13

*Ex parte Reindel v. General Reins. Corp.*,
   963 So. 2d 614 (Ala. 2007)...................................................................38

*Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*,
   752 So. 2d 582 (Fla. 2000)...................................................................38

*Fatouros v. Lambrakis*,
   627 F. App'x 84 (3d Cir. 2015), *cert. denied*, 137 S. Ct. 79 (2016) ...................9

*Fed. Ins. Co. v. Lake Shore Inc.*,
   886 F.2d 654 (4th Cir. 1989) ...............................................................13

*First Community Bank, N. A. v. First Tennessee Bank, N. A., et al*,
   E2012-01422-SC-R11-CV (Tenn. May 6, 2015) ...............................36

*Gibbs v. PrimeLending*,
   381 S.W.3d 829 (Ark. 2011)..................................................................38

*Goldstein v. Christiansen*,
   70 Ohio St. 3d 232, 638 N.E.2d 541 (1994) .......................................26

*Grimes v. Vitalink Commc'ns Corp.*,
   17 F.3d 1553 (3d Cir. 1994)..................................................................29

*Guidry v. U.S. Tobacco Co., Inc.*,
   188 F.3d 619 (5th Cir. 1999) ....................................................... 33, 34

*Hammond v. Butler, Means, Evins & Brown*,
   300 S.C. 458, (1990), *cert. denied*, 498 U.S. 952, 111 S. Ct. 373 (1990)..........37

*Helicopteros Nacionales de Colo., S.A. v. Hall*,
   466 U.S. 408, 104 S. Ct. 1868 (1984)........................................ 29, 34

*Hunt v. Nevada State Bank*,
   172 N.W.2d 292 (Minn. 1969)..............................................................38

*Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC*,
   305 Ga. App. 283, 699 S.E.2d 456 (2010)...........................................37

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998)..................................................................10

*In re Methyl Tertiary Butyl Ether (""MTBE") Prod. Liab. Litig.*,
   399 F. Supp. 2d 325 (S.D.N.Y. 2005) .................................................21

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981) ............................................................................12

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)............................................................................ 10, 28, 29

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005) ............................................................................13

*Internet Solutions Corp. v. Marshall*,
    39 So.3d 1201 (Fla. 2010)..................................................................................15

*Isaacs v. Arizona Bd. of Regents*,
    608 F. App'x 70 (3d Cir. 2015) ..........................................................................10

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
    615 F.3d 579 (5th Cir. 2014) ............................................................................13

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ............................................................................13

*Kentucky Oaks Mall Co* v. *Mitchell's Formal Wear, Inc.*,
    53 Ohio St. 3d 73, 559 N.E.2d 477 (1990) .......................................................26

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    410 F. Supp.8 2d 592 (E.D. Ky. 2006) .............................................................37

*Lawati v. Montague Morgan Slade Ltd.*,
    102 A.D.3d 427, 961 N.Y.S.2d 5 (App. Div. 2013).........................................38

*Le Bleu Corp. v. Standard Capital Grp.*,
    11 Fed. Appx. 377 (4th Cir. 2001).....................................................................13

*LinkAmerica Corp. v. Cox*,
    857 N.E. 2d 961 (Ind. 2006) ............................................................................12

*Longshore v. Norville*,
    93 S.W. 3d 746 (Mo. App. 2002) .....................................................................18

*Lubin v. Delta Airlines, Inc.*,
    No. 3:14-cv-648-CWR-FXB, 2015 WL 4611759 (S.D. Miss. July 31, 2015)....24

*Mackey v. Compass Mktg., Inc.*,
    892 A.2d 479 (Md. 2006) ..................................................................................38

*McAnally v. Bonjac, Inc.*,
    137 Idaho 488, 50 P.3d 983 (2002) ..................................................................23

*McGee v. Int'l Life Ins. Co.*,
    355 U.S. 220 (1957)..........................................................................................29

*Metcalfe v. Renaissance Marine, Inc.*,
    566 F.3d 324 (3d Cir. 2009).................................................................................9

*Miles v. WTMX Radio*,
    15 Fed. Appx. 213 (6th Cir. 2001).....................................................................13

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Miller Yacht Sales, Inc. v. Smith*,
  384 F.3d 93 (3d Cir. 2004)..................................................................9

*Mladinich v. Kohn*,
  164 So. 2d 785 (Miss. 1964)............................................................24

*Morgan Adhesives Co. v. Sonicor Instrument Corp*.,
  107 Ohio App. 3d 327, 668 N.E.2d 959 (1995) ................................26

*Myers v. Casino Queen, Inc.*,
  689 F.3d 904 (8th Cir. 2012) ....................................................... 5, 17

*Nat'l Hearing Aid Soc. v. Com. of Kentucky*,
  551 S.W.2d 247 (Ky. Ct. App. 1977) ......................................... 16, 17

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007)............................................................29

*O'Neal v. Bumbo Int'l Trust*,
  16 F.Supp. 3d 952 (S.D. Ind. 2014) ................................................12

*Parke-Bernet Galleries, Inc. v. Franklyn*,
  26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) ...............20

*Paz v. Brush Engineered Materials, Inc*.,
  445 F.3d 809 (5th Cir. 2006)............................................................24

*Planning Group of Scottsdale v. Lake Mathews Mineral Prop.*,
  246 P.3d 343 ..................................................................................12

*Purdue Research Found. v. Sanofi-synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003)...........................................................9

*Rasmussen v. Gen. Motors Corp.*,
  335 Wis. 2d 1, 803 N.W.2d 623 (2011).............................................27

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001)............................................................13

*Rio Props., Inc. v. Rio Int'l. Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .........................................................13

*Saint Alphonsus Reg'l Med. Ctr. v. State of Wash.*,
  123 Idaho 739, 852 P.2d 491 (1993) ...............................................23

*Santa Fe Techs., Inc. v. Argus Networks, Inc.*,
  131 N.M. 772, 42 P.3d 1221 (Ct. App. 2001) ...................................37

*Shaffer v. Heitner*,
  433 U.S. 186 (1977)........................................................................28

*Sieber v. Cambell*,
  810 So.2d 641 (Ala. 2001) ..............................................................12

*Siskiyou Prop., LLC v. Bennett Holdings, LLC*,
  13 Fed. Appx. 553 (9th Cir. 2001)....................................................13

## TABLE OF AUTHORITIES (cont'd)

*Smith v. Temco, Inc.*,
  252 So. 2d 212 (Miss. 1971) ............................................................ 9, 17, 20, 24

*Stanton v. St. Jude Medical, Inc.*,
  340 F.3d 690 (8th Cir. 2003) .................................................................13

*State ex rel William Ranni Assocs., Inc. v. Hartenbach*,
  742 S.W.2d 134 (Mo. 1987) .................................................................17

*Textor v. Bd. of Regents of No. Illinois Univ.*,
  711 F.2d 1387 (7th Cir. 1983) ...................................................... 36, 39

*Trujillo v. Williams*,
  465 F.3d 1210 (10th Cir. 2006) ............................................................13

*U.S. Sprint Commc'ns Co. v. Mr. K's Foods, Inc.*,
  624 N.E.2d 1048 (Ohio 1994) ...............................................................26

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
  75 F.3d 147 (3d Cir. 1996) ....................................................................29

*Wells Dairy, Inc. v. Food Movers Int'l*,
  607 F.3d 515 (8th Cir. 2010) ................................................................13

*Wendt v. Horowitz*,
  822 So.2d 1252 (Fla. 2002) ...................................................................15

*Wilkinson v. Mercantile Nat. Bank*,
  529 So. 2d 616 (Miss.1988) ..................................................................24

*Williams v. Bowman Livestock Equip. Co.*,
  927 F.2d 1128 (10th Cir. 1991) ............................................................13

*Wince v. Easterbrooke Cellular Corp.*,
  681 F. Supp.2d 688 (N.D.W. Va. 2010) ...............................................14

*Yanmar Co. v. Slater*,
  386 S.W. 3d 439 (Ark. 2012) ...............................................................12

*Young v. New Haven Advocate*,
  315 F.3d 256 (4th Cir. 2002) ................................................................14

*Zartolas v. Nisenfeld*,
  184 Conn. 471, 440 A.2d 179 (1981) ...................................................20

*Zerbel v. H. L. Federman & Co.*,
  179 N.W.2d 872 (Wis. 1970) ................................................................27

**Statutes**

FLA. STAT. ANN. §48.193(1) .......................................................... 14, 15

GA. CODE ANN. § 9-10-91 (2016) ...............................................................22

ID. CODE § 5-514 (2016) ............................................................................23

MISS. CODE ANN. § 13-3-57 (2017) ........................................................24

MO. REV. STAT. §506.500(1) .....................................................................17

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Ohio Rev. Code Ann. § 2307.382 (2017) ...........................................................26
Wis. Stat. § 801.05 (2017) ...............................................................................27

**Rules**
N.Y. C.P.L.R §302(a) .............................................................. 18, 19, 38
Rule 12(b)(2) ..................................................................................9
Rule 4.4(A) ...................................................................................12

## I.    INTRODUCTION

Plaintiffs, as identified in Exhibit A to Defendant Personal Care Products Council's Memorandum of Law in Support of Its Motion to Dismiss (Dkt. No. 256-2), by and through Plaintiffs' Steering Committee, submit this opposition to Defendant's Motion to Dismiss (Dkt. No. 256).[1]  Defendant Personal Care Products Council ("PCPC") moves to dismiss only certain of Plaintiffs' Short Form Complaints ("SFCs") filed in this litigation, arguing that the SFCs and the First Amended Master Long Form Complaint ("Master Complaint")[2] that is adopted and incorporated by and into each SFC, fail to establish that there is personal jurisdiction over PCPC because the cases involve an "MDL Direct Filed: Home Jurisdiction" that is neither Washington, DC nor New Jersey.[3]

The pleadings structure of this MDL provides for, *inter alia,* the filing of a Master Complaint, the adoption of same by Plaintiffs through their filing of SFCs (*see* Dkt. No. 148, Case Management Order No. 3 (Filing of Short Form

---

[1]    References to Defendant Personal Care Products Council's Memorandum of Law In Support of Its Motion To Dismiss (Dkt. No. 256-1) are referred to herein as "Defs. Memo. __."

[2]    References to Plaintiffs' First Amended Master Long form Complaint are referred to herein as "Master Complaint ¶_____."

[3]    By its motion PCPC identifies 181 cases in which it has been served and another 40 cases in which it has not yet been served as of the filing of its motion. The cases for which PCPC seeks dismissal assert jurisdiction in thirty-six (36) different states.  Despite limiting its argument to only certain states, PCPC also seeks the dismissal of all future filed cases involving jurisdictions other than Washington, DC and New Jersey.  See Defs. Memo. at 1.

Complaints) and Dkt. No. 257, Case Management Order No. 2 (a) (Filing of Short Form Complaints)), and for the direct filing of SFCs to expedite cases being assigned to the MDL docket. *See* Dkt. No. 102, Case Management Order No. 2 (Direct Filing).  The SFCs provide for the identification of the district court in which the case should be deemed to have otherwise been filed, but for the direct filing of the case in this MDL (*see* Case Management Order No. 2 at B), so that upon the completion of all pretrial proceedings the case could be transferred to the designated district court for trial, provided the case is not selected as a bellwether case. *Id.* at F.  Thus, based on the designation of the district courts in the various SFCs to which cases should be transferred, PCPC has identified jurisdictions where there allegedly is no personal jurisdiction over PCPC.  To the extent PCPC seeks a blanket dismissal of cases because each SFC does not specify the individual bases for jurisdiction, its motion runs contrary to both the spirit and intent of the Master Complaint and Court-approved SFC.

Personal jurisdiction over PCPC can rest upon the existence of general personal jurisdiction, specific personal jurisdiction, conspiracy theory of personal jurisdiction or on all of the above.  PCPC's pervasive and nationwide activities, as alleged in the Master Complaint, fully support the exercise of general personal jurisdiction. Moreover, because the Plaintiffs suffered injuries in their home states where PCPC engaged in specific activities that contributed to Plaintiffs being

2

harmed, the exercise of specific personal jurisdiction in these states is also warranted.  Lastly, where applicable, there is personal jurisdiction over Plaintiffs' cases pursuant to the conspiracy theory of personal jurisdiction.

Neither due process nor the specific long-arm statutes of the states at issue will be offended or violated by the MDL Court's exercise of personal jurisdiction over PCPC.  Further, because any decision by this Court on PCPC's pending motion will not result in the dismissal of PCPC from this litigation in its entirety (since PCPC is conceding personal jurisdiction for New Jersey and Washington, DC cases), PCPC will still be required to fully participate in discovery such that dismissal before the development of a factual record related to each Plaintiffs' relationship to PCPC would be premature.[4]

---

[4]     Discovery in this matter has been ongoing for only a short period of time. Typically, motions questioning personal jurisdiction require the development of a factual record, either through basic discovery or discovery specifically targeted at addressing personal jurisdiction.  Although Plaintiffs believe that the Master Complaint and facts alleged in support of this opposition firmly establish jurisdiction, due to the limited scope and duration of discovery thus far, the factual record related to PCPC and its unlawful conduct is not yet complete.  Accordingly, should the Court have any doubt about the exercise of personal jurisdiction over PCPC, Plaintiffs respectfully request that the Court delay ruling to permit Plaintiffs to identify and conduct additional, relevant jurisdictional discovery.

For example, PCPC's Motion relies upon the Declaration of Mark A. Pollak, Senior Executive Vice President of PCPC (Dkt. No. 256-5, hereinafter "Pollak Decl.").  Plaintiffs have not been afforded the opportunity to test the veracity of the Pollak Declaration, despite its inconsistencies with the allegations in the Master Complaint and PCPC's own public documents.

## II.    STATEMENT OF FACTS

PCPC is a corporation organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia.  Master Complaint ¶11.  It is a *national* trade association that represents the personal care and cosmetics industry.  Master Complaint ¶12 (emphasis added).  Although PCPC attempts to downplay the significance of its role and the amount of contacts it has had within the legislative and regulatory framework, its stated purpose is to interact with and influence local, state and federal governmental agencies on issues related to, among other things, the regulation and marketing of talc-based body powders.  Master Complaint ¶¶ 12 and 134.  *See also* 2010 Form 990, Return Of Organization Exempt From Income Tax, attached to the Declaration of Christopher M. Placitella ("Placitella Decl."), Exhibit A at 2 (stating that PCPC's mission is "Representing industry before federal, state and local governments."); PCPC 2016: Year In Review, attached to Placitella Decl., Exhibit B at 4 ("The Council advocates for appropriate and coordinated regulation of cosmetics and personal care products at the federal, state and local level");[5] ████████████████

████████████████████████████████████

████████████████████████████████████

---

[5]    The PCPC 2016: Year In Review also boasts of the impact Defendant has had on "70 + bills at state and local level in NY" and "300 + bills in over 30 states."  Placitella Decl., Exhibit B at 5.

██████████████████████████████  As
recently as March 6, 2017, PCPC was publicly recognizing the need to "stay
actively engaged" with state agencies in an effort to avoid what could eventually
result in an uptick in lawsuits.  *See* Mar. 6, 2017 PCPC Washington Report,
quoting Tom Myers, PCPC Executive Vice President of Legal, attached to
Placitella Decl., Exhibit D.

   PCPC is unable to avoid the reality that its legislative efforts have related to
talc and the issues raised in this lawsuit.  For example, in and around 2005 PCPC,
then known as the Cosmetics, Toiletries and Fragrance Association (CTFA), spent
more than $600,000 to oppose California legislation mandating the disclosure of
harmful cosmetic chemicals.  *See* The California Safe Cosmetics Act 2005 ("The
Act"), attached to Placitella Decl., Exhibit E at 3.  As recognized in the legislation,
CTFA had strong influence and strongly opposed the bill.  *Id.* at 4-6.[6]  The Act
requires cosmetics manufacturers to disclose all products containing chemicals
known or suspected to cause cancer.  *See* California Dept. of Public Health,
Chemicals Known Or Suspected To Cause Cancer Or Reproductive Toxicity,

---

[6] ███████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
██████

attached to Placitella Decl., Exhibit G at 1. Perineal use of talc-based body powder is included amongst the list of cancer causing toxins. *Id.* at 27. Along similar lines, as alleged in the Master Complaint, strategies to defend talc against government regulation were done through the auspices of PCPC. Master Complaint ¶ 36. *See also* Luzenac America presentation on National Toxicology Program review of talc, Master Complaint Exhibit 22 at 6 (stating that Luzenac [IMERYS] and J&J "continued to work through the auspices of CTFA" to defend talc during NTP review); ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

PCPC has made a concerted effort to engage and influence consumers. When PCPC changed its name from CTFA in 2007, the motivation to do so was "a sea change in what consumers desire in product-safety information. Becoming the consumer's best resource is our motive." *See* Personal Care Products Council: An Animal Cruelty Analysis, attached to Placitella Decl., Exhibit I at 2. The then-president of PCPC commented on the name change that "[w]e've amassed an incredible wealth of science-driven, peer-reviewed product safety information, which we're now putting into the hands of the consumer." *Id.* However, in

contrast to its stated intent, PCPC's motives were not science-driven.  PCPC

utilized focus groups to develop a name that consumers would perceive to be a

trustworthy body of independent experts.  *See id.*[7] However, PCPC was neither

trustworthy nor independent.  Moreover, relevant to the present issue of personal

jurisdiction over it, PCPC overtly sought to provide information to consumers

throughout the country, and to influence their decisions about the purchase and use

of products.

The Cosmetic Ingredient Review ("CIR") was formed to give PCPC more

credibility for self-regulation.  Master Complaint ¶ 37.  Although Defendants have

promoted CIR as an independent regulatory body, PCPC has recognized that CIR

is an integral part of its organization.  ██████████████████████████████

████████████████████████████████████████████████████████ CIR

is wholly funded by PCPC and CIR employees are paid by PCPC.  Master

Complaint at 37.  PCPC and other Defendants have influenced the CIR talc review

process, including editing reviews in a biased manner, Master Complaint ¶ 39,

ultimately resulting in release of the CIR final report on talc, nationally, with its

bias slant as to the safety of talc in cosmetic products.  *See CIR Ingredient Status*

---

[7] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

*Report – Talc*, http://online.personalcarecouncil.org/jsp/CIRList.jsp?id=2947 (last visited May 15, 2017).[8]

PCPC formed the Talc Interested Party Task Force ("TIPTF") to defend the use of talc and, specifically, talc-based body powders.  Master Complaint ¶¶ 34, 35.  *See also* Master Complaint Exhibit 17 (July 1992 memo noting that CTFA has instituted an Interested Party Task Force to defend against studies questioning the safety of cosmetic grade talc).  TIPTF hired scientists to perform biased studies and released false information about the safety of talc to both government agencies and the consuming public.  Master Complaint ¶ 35.  *See also* Master Complaint Exhibit 21 (1997 letter from Defendants' consultant criticizing public statements made by PCPC regarding talc safety).  Although PCPC did not manufacture talc or talc-based body powders, PCPC actively sought to test and promote talc-based products on behalf of and in concert with the other Defendants.  More importantly, despite its bias, PCPC actively sought to position itself as a trustworthy body of independent experts with the expectation that its existence and mantras would be

---

[8]    As recently noted in response to the Appropriation Committee's belief that CIR should be recognized and formalized as a public-private program, the FDA responded by noting that "CIR is a private, industry-funded organization, and FDA believes that enhancing the authority and stature of a private organization is inappropriate for a Federal regulatory agency."  *See* Dept. of Health and Human Services, Fiscal Year 2017 Food and Drug Administration Justification for Estimates for Appropriations Committee, https://www.fda.gov/downloads/aboutfda/reportsmanualsforms/reports/budgetreports/ucm485237.pdf.

relied upon as a resource that could put information into the hands of consumers. Significantly, because the allegations in the Master Complaint are adopted and incorporated into each SFC, each Plaintiff has alleged that PCPC's dissemination of false and misleading information was broad, intentional, and occurred within each Plaintiff's home state.

## III.   ARGUMENT

When opposing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs "need[] only establish a prima facie case of personal jurisdiction" if the court does not hold an evidentiary hearing. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  *See also Purdue Research Found. v. Sanofi-synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (holding that a plaintiff need only make a *prima facie* showing of jurisdictional facts if personal jurisdiction is raised on a motion to dismiss).  When a court reviews a motion brought under Rule 12(b)(2), the court must "accept the allegations in the complaint as true and [] construe any disputed facts in [the plaintiff's] favor." *Fatouros v. Lambrakis*, 627 F. App'x 84, 87 (3d Cir. 2015), *cert. denied*, 137 S. Ct. 79 (2016) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

Federal courts employ a two-step analysis to determine whether personal jurisdiction is proper.  First, "[a] federal court sitting in diversity must look to the

forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant . . . ." *Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70, 74 (3d Cir. 2015) (citing *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 258–59 (3d Cir. 1998)).  The inquiry is whether the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  If personal jurisdiction is permitted, then the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment.  *See Isaacs*, 608 F. App'x at 74.  Plaintiffs have made a *prima facie* showing of jurisdictional facts, establishing that the long-arm statutes of the various states at issue permit personal jurisdiction over Defendant PCPC and that the exercise of personal jurisdiction will not violate the Due Process Clause of the Fourteenth Amendment.

Defendant's reliance on *Cebulske v. Johnson & Johnson, et al.*, 2015 WL 1403148 (S.D. Ill, Mar. 25, 2015), for the proposition that Plaintiffs cannot meet their burden of establishing personal jurisdiction is misplaced.  Defs. Memo. at 2.  The matters currently before the Court are easily distinguishable from *Cebulske*.  In *Cebulske*, the matter was dismissed for lack of personal jurisdiction because "[plaintiff's] theory of personal jurisdiction rests entirely on the allegation that PCPC 'conspired' with J&J and Imerys to suppress undesirable information

about the correlation between talc and ovarian cancer… No claims as to PCPC's individual conduct in Illinois are alleged." *Id.* at *3  In contrast to *Cebulske*, the Master Complaint alleges conduct on the part of PCPC within the State of Illinois. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ *See also* Placitella Decl., Exhibit I at 2 (PCPC boasting of efforts to become resource for consumers and to get product-safety information into the hands of consumers).  Further, whereas the conspiracy theory of jurisdiction "may not be valid in Illinois" *id.*, several other forum states continue to recognize this theory.  *See* Section III(B)(3), *infra*.

### A.   The Master Complaint Satisfies The Long-Arm Statutes In Each Of The States For Which PCPC Seeks Dismissal

The crux of Defendant's argument is that, but for its consent to personal jurisdiction in the State of New Jersey, Washington DC is the only place where any Plaintiff can establish personal jurisdiction over it.  Defs. Memo. at 1.  In a cursory and conclusory fashion, PCPC argues that no long-arm statute of any other state confers jurisdiction.  This statement is incorrect, especially in light of the fact

that PCPC's motion fails to address the jurisdictional requirements of each of the fifty (50) states.[9]

As an initial matter, twenty-six (26) of the states at issue have long-arm statutes that are coextensive with federal due process analysis.  These states are: Alabama (*Sieber v. Cambell,* 810 So.2d 641, 644 (Ala. 2001)), Alaska (*Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1269 (9th Cir. 1981)), Arizona (*Planning Group of Scottsdale v. Lake Mathews Mineral Prop.*, 246 P.3d 343, 346 (Ariz. 2011) (*en banc*)), Arkansas (*Yanmar Co. v. Slater*, 386 S.W. 3d 439, 443-44 (Ark. 2012)), California (*Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001)), Illinois (*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760-61 (7th Cir. 2008)), Indiana (*O'Neal v. Bumbo Int'l Trust,* 16 F.Supp. 3d 952, 956 (S.D. Ind. 2014)),[10] Iowa (*Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir.

---

[9]     To the extent PCPC has failed to advance jurisdictional arguments related to certain states, Plaintiffs should not have to respond to any anticipated arguments in this response and PCPC should be precluded from making any such arguments at this time.

[10]     PCPC correctly identifies twenty-five (25) states with long-arm statutes that are coextensive with federal due process.  However, PCPC incorrectly argues that Indiana's long-arm statute is not.  Indiana's long-arm statute expressly states that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or the United States." *See* IND. R. Trial 4.4(A).  *See also LinkAmerica Corp. v. Cox*, 857 N.E. 2d 961, 967 (Ind. 2006) ("The 2003 amendment to Indiana Trial Rule 4.4(A) was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause.  Retention of the enumerated acts found in Rule 4.4(A) serves as a handy checklist of activities that usually support personal jurisdiction but does not serve as a limitation on the exercise of

2010)), Louisiana (*Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2014)), Maryland (*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003)), Massachusetts (*Copia Comm'cns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016)), Michigan (*Miles v. WTMX Radio*, 15 Fed. Appx. 213, 214 (6th Cir. 2001)), Minnesota (*Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007)), Nebraska (*Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003)), Nevada (*Rio Props., Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)), New Mexico (*Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)), North Carolina (*Le Bleu Corp. v. Standard Capital Grp.*, 11 Fed. Appx. 377, 379 (4th Cir. 2001)), Oklahoma (*Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991)), Oregon (*Siskiyou Prop., LLC v. Bennett Holdings, LLC*, 13 Fed. Appx. 553, 555 (9th Cir. 2001)), Pennsylvania (*Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)), South Carolina (*Fed. Ins. Co. v. Lake Shore Inc*., 886 F.2d 654, 657 (4th Cir. 1989)), South Dakota (*Estate of Moore v. Carroll*, 159 F. Supp. 3d 1002, 1007 (8th Cir. 2016)), Tennessee (*Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005)),

---

personal jurisdiction by a court of this state."); *Davis v. Simon*, 963 N.E.2d 46, 51 (Ind. Ct. App.), *transfer granted, opinion vacated*, 974 N.E.2d 475 (Ind. 2012), and *opinion reinstated*, 987 N.E.2d 1093 (Ind. 2013) ("We note that the *LinkAmerica* Court held that an amendment to Indiana's long arm statute, Indiana Trial Rule 4.4(A), rendered inapplicable the two-pronged test for personal jurisdiction in *Anthem*, 730 N.E.2d at 1232 [. . .]").

Texas (*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)),

Virginia (*Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)), and

West Virginia (*Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp.2d 688, 691

(N.D.W. Va. 2010)).  Pursuant to the various long-arm statutes of these states,

personal jurisdiction expands to the full extent permitted by the Due Process

Clause of the U.S. Constitution and, thus, the statutory question merges with the

constitutional question.  In this regard, as outlined more fully in section III(B),

*infra*, Plaintiffs have established that federal due process permits personal

jurisdiction over PCPC.

As for those states in which the applicable long-arm statutes are not

coextensive with due process limitations, under the facts of this case, the long-arm

statute of each state expressly confers jurisdiction over PCPC.

### 1.    Plaintiffs Have Satisfied The Requirements Of Florida's Long-Arm Statute

Florida's long-arm statute, Fla. Stat. Ann. §48.193(1), states, in pertinent

part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself… to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> > 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

FLA. STAT. ANN. §48.193(1).

Pursuant to subsection (2), above, Florida courts have long held that, "a defendant's physical presence is not necessary to commit a tortious act in Florida." *Cableview Comm'n of Jacksonville, Inc. v. Time Warner Cable Southeast LLC*, 2014 WL 1268584 at *7 (M.D. Fla., Mar. 27, 2014) (quoting, *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)). Rather, as stated in *Cableview*, the tortious act may be "by way of telephonic, electronic, or written communications into Florida, so long as the tort alleged arises from such communications." *Id. See also Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1215 (Fla. 2010) (finding jurisdiction where tortious materials were posted on the Internet and accessible in Florida).

Applying the principles of Florida's long-arm statute to the current matter, Florida courts have jurisdiction over PCPC. The Master Complaint specifically alleges that Plaintiffs' injuries were the result of PCPC's biased and misleading information. Master Complaint ¶ 35 (PCPC performed biased research and released false information about the safety of talc to the consuming public to create confusion about the true hazards of talc relative to cancer); Master Complaint, Exhibit 21 (letter from consultant criticizing public statements made by PCPC regarding talc safety); Master Complaint ¶ 140-141 (PCPC's actions caused a significant risk of ovarian cancer, causing Plaintiffs to suffer damages).

15

Defendant's acts were committed through written and electronic communication sent to governmental agencies and/or intentionally released to the consuming public in Florida. Therefore, Florida's long-arm statute reaches PCPC and confers jurisdiction over it.

### 2. Plaintiffs Have Satisfied The Requirements Of Kentucky's Long-Arm Statute

Kentucky courts recognize that Kentucky's long-arm statute extends to trade organizations incorporated in another state and not licensed to do business in Kentucky if the trade organization's tortuous conduct deceived Kentucky consumers within the Commonwealth. *See Nat'l Hearing Aid Soc. v. Com. of Kentucky*, 551 S.W.2d 247 (Ky. Ct. App. 1977). In *Nat'l Hearing Aid Society*, the Commonwealth of Kentucky brought suit against the National Hearing Aid Society (NHAS) alleging that NHAS deceived and mislead Kentucky consumers when it certified individuals as certified hearing aid audiologists despite these individuals not meeting the necessary certification requirements. *Id*. at 248. The NHAS argued that Kentucky's long-arm statute did not confer jurisdiction over it, because it was incorporated in Illinois and not licensed to do any business in Kentucky. *Id*. The court of appeals disagreed, finding that NHAS mislead Kentucky citizens by putting its stamp of approval on audiologists who were practicing in Kentucky, finding that NHAS's conduct constituted "sufficient business within the

16

Commonwealth of Kentucky to grant the trial court personal jurisdiction over

[defendant] under KRS 454.210, the Kentucky Long Arm Statute." *Id*.

The present matter is on all fours with *Nat'l Hearing Aid Society*.  Like

NHAS, Plaintiffs allege that PCPC mislead and deceived Kentucky consumers by

putting its stamp of approval on talc-based products, despite its knowledge that the

product was not safe.  As alleged, PCPC's course of conduct caused serious injury

to Kentucky Plaintiffs, satisfying the requirements of Kentucky's Long Arm

Statute.

### 3. Plaintiffs have Satisfied The Requirements Of Missouri's Long-Arm Statute

Pursuant to Missouri's Long-Arm Statute, Mo. Rev. Stat. §506.500(1),

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation… to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> ***
>
> (3) The commission of a tortious act within this state;

Mo. Rev. Stat. §506.500(1).  "Missouri courts have interpreted subsection (3)

[above] to include 'extraterritorial acts of negligence producing actionable

consequences in Missouri.'"  *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th

Cir. 2012) (quoting *State ex rel William Ranni Assocs., Inc. v. Hartenbach*, 742

S.W.2d 134, 139 (Mo. 1987)).  Indeed, the Missouri Supreme Court has

specifically found that "'extraterritorial acts that produce consequences in the

state,' such as fraud, are subsumed under the tortious act section of the long-arm statute." *Bryant v. Smith Interior Design Grp.*, *Inc.*, 310 S.W.3d 227, 232 (Mo. 2010) (quoting *Longshore v. Norville*, 93 S.W. 3d 746, 752 (Mo. App. 2002)).  In *Bryant*, the plaintiff alleged that the defendant sent false and misleading documents to him in Missouri which had the impact of deceiving him and causing him harm. In conferring jurisdiction, the Missouri Supreme Court held that, despite the fact that the defendant was never in Missouri, his allegedly tortuous conduct produced harm in Missouri and, therefore, Missouri's long-arm statute applied. *Id.*

Plaintiffs have alleged that PCPC disseminated false and misleading information regarding the safety of talc to consumers in Missouri, including Missouri Plaintiffs, and the dissemination of that false information caused Plaintiffs harm.  Moreover, Plaintiffs have alleged that PCPC disseminated biased and false information to local and state government entities in an effort to influence and defend talc against government regulation.  The actions undertaken by PCPC, as alleged in the Master Complaint, satisfy Missouri's jurisdictional requirements and, therefore, subsection 3 of 506.500(1) confers jurisdiction over PCPC.

### 4. Plaintiffs Have Satisfied The Requirements Of New York's Long-Arm Statute

New York's long-arm statute, N.Y. C.P.L.R §302(a) provides:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may

exercise personal jurisdiction over any non-domiciliary, or his
executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to
> supply goods or services in the state; or
>
> ***
>
> 3. commits a tortious act without the state causing injury to person
> or property within the state, except as to a cause of action for
> defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other
>> persistent course of conduct, or derives substantial revenue
>> from goods used or consumed or services rendered, in the state,
>> or

N.Y. C.P.L.R §302(a).

PCPC's actions, as alleged in the Master Complaint, comport with both
subsections (a)(1) and (a)(3)(i), above.  Pursuant to subsection (a)(3)(i), PCPC
caused injury to the New York Plaintiffs within the state by committing a litany of
tortuous acts, including the dissemination of misleading and deceiving information,
and actively participating in a conspiracy to withhold safety information from the
Plaintiffs.  Additionally, PCPC regularly engaged in a "persistent course of
conduct," in New York, by regularly disseminating and promoting messages to
New York residents and government agencies about talc's safety, despite knowing
that the product was not in fact safe.  In addition to the aforementioned, pursuant to
subsection (1), PCPC has regularly transacted business with the State of New
York.  *See, i.e.*, Placitella Decl., Exhibit B (PCPC boasting about the impact it had
on "70+ bills at state and local level in NY").

19

██████████████████████████████████████

██████████████████████████████████████

███████████████████

### 5. Plaintiffs Have Satisfied The Requirements Of Connecticut's Long-Arm Statute

Connecticut and New York's long-arm statutes are identical, and the courts of each state look to the others for guidance on interpretation. *See Zartolas v. Nisenfeld*, 184 Conn. 471, 474, 440 A.2d 179 (1981).  "'It is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under [the long arm statute]' for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State." *Dime Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. X05CV094017091S 2010 WL 760441, at *8 (Conn. Super. Ct. Jan. 15, 2010) (quoting *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506, 508 (1970)). Similarly, "proof of one transaction in [the forum state] is sufficient to invoke jurisdiction, even though the defendant never enter[ed] [the forum state], so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted ... A single transaction would be sufficient to fulfill this requirement ... so long as the relevant cause of action also arises from that transaction." *Id.*

Applying the principles of Connecticut's long-arm statute to the current matter, the Court has jurisdiction over PCPC. *See Dime Bank*, 2010 WL 760441, at *9–10 ("Connecticut federal district courts have consistently held that it is proper to assert personal jurisdiction, pursuant to 52-59b(a)(2), over a nonresident defendant who transmits fraudulent representations to a Connecticut resident for the purpose of inducing that resident to act."); *see also In re Methyl Tertiary Butyl Ether (""MTBE") Prod. Liab. Litig.*, 399 F. Supp. 2d 325, 339 (S.D.N.Y. 2005) (jurisdiction over a nonresident and finding a 'reasonable expectation' that defendant could have faced litigation in Connecticut through indirect marketing and distribution channels).  Therefore, Connecticut's long-arm statutes reach PCPC and confers jurisdiction over it.

### 6.   Plaintiffs Have Satisfied The Requirements Of Georgia's Long-Arm Statute

Georgia's long-arm statute holds, in relevant part:

A court of this state may exercise personal jurisdiction over any nonresident… as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) Transacts any business within this state;
(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of

21

> conduct, or derives substantial revenue from goods used or
> consumed or services rendered in this state; [. . .].

Ga. Code Ann. § 9-10-91 (2016).  "The Long–Arm Statute of this state contemplates that jurisdiction shall be exercised over nonresident parties to the maximum extent permitted by procedural due process." *Cont'l Research Corp. v. Reeves*, 204 Ga. App. 120, 123, 419 S.E.2d 48, 52 (1992) (citing *Coe & Payne Co. v. Wood–Mosaic Corp.,* 230 Ga. 58, 60, 195 S.E.2d 399 (1973)).

The allegations set forth in the Master Complaint, reviewed in a light most favorable to the Plaintiffs, support a finding that Georgia's long arm statute confers jurisdiction upon PCPC. PCPC caused serious injury to the Georgia Plaintiffs in Georgia by misleading and deceiving the Plaintiffs and actively participating in a conspiracy to withhold safety information from the Plaintiffs.  Additionally, PCPC regularly engaged in a "persistent course of conduct," in Georgia, by regularly disseminating and promoting messages to Georgia residents and government agencies about talc's safety, despite knowing that the product was not in fact safe.

### 7.   Plaintiffs Have Satisfied The Requirements Of Idaho's Long-Arm Statute

Idaho's long-arm statute holds, in relevant part:

> Any person, firm, company, association or corporation, whether or not
> a citizen or resident of this state, who in person or through an agent
> does any of the acts hereinafter enumerated, thereby submits said
> person, firm, company, association or corporation… to the jurisdiction
> of the courts of this state as to any cause of action arising from the
> doing of any of said acts:

22

> (a)  The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation;
> (b)  The commission of a tortious act within this state; [. . .].

ID. CODE § 5-514 (2016).

The Supreme Court of Idaho has "consistently held that an allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the tortious act language of I.C. § 5–514(b)." *Saint Alphonsus Reg'l Med. Ctr. v. State of Wash.*, 123 Idaho 739, 742, 852 P.2d 491, 495 (1993) (internal citations omitted). "This section is designed to provide a forum for Idaho residents, is remedial legislation of the most fundamental nature and should be liberally construed." *McAnally v. Bonjac, Inc.*, 137 Idaho 488, 491, 50 P.3d 983, 986 (2002) (citations omitted) (finding jurisdiction where smoke from intentionally burning a field in Washington injured the plaintiff in Idaho).  Under a liberal construction of Idaho's long arm statute, PCPC's actions satisfy Idaho's jurisdictional requirements, and section 5-514 confers jurisdiction over PCPC.

### 8.    Plaintiffs Have Satisfied The Requirements Of Mississippi's Long-Arm Statute

Pursuant to Mississippi's long-arm statute:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, [. . .] who shall do any

> business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. [. . .]

MISS. CODE ANN. § 13-3-57 (2017).  The Supreme Court of Mississippi has stated that the following factors must be met in order to obtain jurisdiction over a non-resident: (1) the nonresident must purposely do some act or consummate some transaction in forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by forum state must not offend traditional notions of fair play and substantial justice. *Mladinich v. Kohn*, 164 So. 2d 785, 790 (Miss. 1964).

Mississippi confers personal jurisdiction over non-resident tortfeasor "under the tort prong of the long-arm statute 'if any element of the tort (or any part of any element) takes place in Mississippi.'" *Lubin v. Delta Airlines, Inc.*, No. 3:14-cv-648-CWR-FXB, 2015 WL 4611759, at *3 (S.D. Miss. July 31, 2015) (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)); *see also Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971) (finding personal jurisdiction "products are distributed throughout the United States and are sold in Mississippi.").  Thus, the Supreme Court of Mississippi has held that "a tortious act outside the state which causes injury within the state confers jurisdiction on the courts of that state." *Wilkinson v. Mercantile Nat. Bank*, 529 So. 2d 616, 618 (Miss.1988).

24

As previously stated, PCPC caused serious injury to the Mississippi Plaintiffs in Mississippi by committing a litany of tortious acts, including misleading and deceiving the Plaintiffs and actively participating in a conspiracy to withhold safety information from the Plaintiffs.  Moreover, Plaintiffs have alleged that PCPC disseminated biased and false information to local and state government entities in an effort to influence and defend talc against government regulation. Under these circumstances, Mississippi's long-arm statute confers jurisdiction upon PCPC.

### 9.    Plaintiffs Have Satisfied The Requirements Of Ohio's Long-Arm Statute

According to Ohio's long-arm statute:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

> (1)Transacting any business in this state;
>
> ****
>
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> ****
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

OHIO REV. CODE ANN. § 2307.382 (2017).  *See also U.S. Sprint Commc'ns Co. v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048 (Ohio 1994) (stating that, to determine whether personal jurisdiction exists over a foreign corporation, a court must determine "whether the state's long-arm statute and applicable civil rule confer personal jurisdiction and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of due process of law under the Fourteenth Amendment to the United States Constitution").  "Pursuant to R.C. 2307.382(A)(1), the term 'transact' as utilized in the phrase '[t]ransacting any business' encompasses 'to carry on business' and 'to have dealings' and is broader than the word 'contract.'" *Morgan Adhesives Co. v. Sonicor Instrument Corp.*, 107 Ohio App. 3d 327, 332, 668 N.E.2d 959, 962 (1995) (quoting *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236, 638 N.E.2d 541, 544 (1994); and *Kentucky Oaks Mall Co* v. *Mitchell's Formal Wear, Inc*., 53 Ohio St. 3d 73, 75, 559 N.E.2d 477, 479 (1990)) (internal quotations omitted).

### 10.  Plaintiffs Have Satisfied The Requirements Of Wisconsin's Long-Arm Statute

Pursuant to Wisconsin's long-arm statute:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

(1)  Local presence or status. In any action whether arising within or without this state, against a defendant who when the action is commenced:

26

> [. . .] (d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.
>
> ******
>
> (3)  Local act or omission. In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant.

WIS. STAT. § 801.05 (2017).  To determine whether the requirements of fair play and substantial justice are met, Wisconsin courts look to the following test: "(1) quantity of the contacts, (2) nature and quality of the contacts, (3) source and connection of the cause of action with those contacts, (4) interest of the forum state, and (5) convenience with respect to defendant." *Zerbel v. H. L. Federman & Co.*, 179 N.W.2d 872 (Wis. 1970).  "The plaintiff has a 'minimal burden' of showing that the statutory and constitutional requirements are met. *Rasmussen v. Gen. Motors Corp.*, 335 Wis. 2d 1, 13, 803 N.W.2d 623, 629 (2011).

As has been repeatedly argued, PCPC caused serious injury to the Wisconsin Plaintiffs in Wisconsin by committing a litany of tortious acts, including misleading and deceiving the Plaintiffs and actively participating in a conspiracy to withhold safety information from the Plaintiffs.  Moreover, Plaintiffs have alleged that PCPC disseminated biased and false information to local and state government entities in an effort to influence and defend talc against government regulation. Under these circumstances, Wisconsin's long-arm statute confers jurisdiction upon PCPC.

27

**B.    Jurisdiction Over PCPC Does Not Violate Constitutional Due Process Principles**

Jurisdiction shall be maintained over a defendant if there are "certain minimum contacts with [the forum states] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff*, 566 F.3d at 102 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Under this minimum contacts analysis, "personal jurisdiction over a defendant may be either general or specific." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016). Here, the forum states can properly exercise both specific and general personal jurisdiction over PCPC based on the Defendants contacts with the forum states.

**1.    The Master Complaint Effectively Establishes Specific Jurisdiction Over Defendant PCPC**

A specific personal jurisdiction analysis under the Due Process Clause focuses on the "relationship among the defendant, the forum, and the litigation[.]" *Daimler AG v. Bauman*, 134 S. Ct. 746, 758, 187 L. Ed. 2d 624 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "Specific jurisdiction exists when the plaintiff's claim arises out of the defendant's activities within the forum such that the defendant could reasonably anticipate being haled into the state's courts." *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 79 (3d Cir. 2015) (citing *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151

(3d Cir. 1996)).  Importantly, "[s]o long as it creates a 'substantial connection'

with the forum, even a single act can support jurisdiction." *Burger King Corp. v.*

*Rudzewicz,* 471 U.S. 462, 476 n.18, 105 S. Ct. 2174 (1985) (quoting *McGee v. Int'l*

*Life Ins. Co.*, 355 U.S. 220, 223 (1957).

In order to establish specific personal jurisdiction over PCPC, Plaintiffs must

satisfy a three-part test:

> First, the defendant must have "purposefully directed [its] activities"
> at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105
> S. Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation marks omitted).
>
> Second, the litigation must "arise out of or relate to" at least one of
> those activities. *Helicopteros*, 466 U.S. at 414, 104 S. Ct. 1868;
> *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir.
> 1994).
>
> [T]hird, if the prior two requirements are met, a court may consider
> whether the exercise of jurisdiction otherwise "comport[s] with 'fair
> play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.
> Ct. 2174 (quoting *Int'l Shoe Co.*, 326 U.S. at 320, 66 S. Ct. 154).

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). Plaintiffs,

by satisfying all three elements of this test, have established personal jurisdiction in

each of the forum states.

PCPC argues that "Plaintiffs cannot meet their burden of showing that PCPC

purposefully established contacts in the forum states." Defs. Memo. at 9.

Defendant argues that Plaintiffs fail to allege that PCPC directed any activities

towards the relevant forum states, *id.,* and that the allegations of any such activity are false. Defs. Memo. at 10. In contrast to its argument, Defendant has, in fact, directed activities towards each of the forum states, acknowledging that it set out to become the consumers' best resource for product-safety information (*see* Placitella Decl., Exhibit I at 2), and establishing the minimum contacts necessary for specific personal jurisdiction to exist.

The Master Complaint sufficiently alleges PCPC's contacts with the forum states. For example, Plaintiffs allege, among other facts:

- PCPC was a national trade association representing the personal care and cosmetics industry for the purposes of and, in fact, interacting with and influencing local, state and federal governmental agencies on issues related to, among other things, the regulation and marketing of talc based body powders and the PRODUCTS. Master Complaint ¶ 12.

- [I]n response to safety issues related to talc and talc based body powders, [. . .] Defendant PCPC, formed the [TIPTF]. Master Complaint ¶ 34

- The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend the use of talc and, specifically, talc based body powders at all costs… and to prevent local, state or federal regulation of any type over this industry… TIPTF hired scientists to perform biased research regarding the safety of talc… [and] edited reports of the scientists hired by this group before they were submitted to governmental agencies and/or released to the consuming public. Members of TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on local, state and federal regulatory bodies regarding talc. Master Complaint ¶ 35.

- PCPC coordinated the defense of talc and talc based body powder and acted as a mouthpiece for the members of the TIPTF. Master Complaint ¶ 36.

- Defendant Johnson and Johnson's own toxicology consultant, Dr. Alfred Wehner, informed the company about false public statements being made by PCPC regarding talc safety.  Master Complaint ¶ 43.  *See also* Master Complaint, Exhibit 21 (criticism directed specifically at PCPC for "outright false" statements).

- Despite the IARC listing of talc as a possible human carcinogen, documents show that industry, spearheaded by PCPC, continued to promote a national, state and local message about talc safety.  Master Complaint ¶ 45.

Plaintiffs' Master Complaint provides detailed factual allegations, supported by both internal and publicly available documents, that demonstrate PCPC engaged in numerous and ongoing activities over the past several decades directed at consumer and regulators in the forum states, through their actions as a trade association, the TIPTF, and the CIR review process.  Neither Defendant's Motion or the Pollak Declaration attempt to address Plaintiffs' contentions in this regard.  Plaintiffs have adequately alleged that PCPC undertook activities in the forum states that form the basis of Plaintiffs' claims.  More than just a Washington, DC lobbyist, PCPC is unable to avoid Plaintiffs' factual contentions that it was an active participant in the dissemination of false and misleading information and studies regarding the safety of talc.

PCPC is also unable to deny that the Master Complaint adequately alleges that the injuries suffered by Plaintiffs, ovarian cancer as a result of the use of talc-based powders, "arise out of or relate to" its activities.  *See Burger King, 471 U.S.* at 472.  *See also* Master Complaint ¶¶ 2 ("Plaintiffs were diagnosed with various

31

forms of cancer of the female reproductive system… which were directly and proximately caused by their regular use and prolonged exposure to talcum powder, contained in the PRODUCTS."); 135 ("At all relevant times, PCPC had actual knowledge of the significant risks of ovarian cancer caused by application of talc, talc based body powders and the PRODUCTS to the female perineal area."); 140 ("As a direct and proximate result of PCPC's negligence [Defendants]… distributed and branded talc… in a way that foreseeably caused a significant risk of ovarian cancer when the talc [was] applied to the female perineal area."); and 141 ("As a further direct and proximate result of PCPC's negligence, Plaintiffs suffered and will continue to suffer damages…").

Lastly, the exercise of jurisdiction over PCPC does not offend traditional notions of fair play and substantial justice.  PCPC has not made any showing that litigating these cases in the forum states presents an unreasonable burden on them.  The forum states have a substantial interest in litigating claims against a foreign defendant who commits intentional and tortious acts against its citizens.  It is obvious that Plaintiffs have a strong interest in obtaining the convenient and efficient relief by pursuing only a single lawsuit in their domicile against all defendants liable for their injuries.  The judicial system has a strong interest in the efficient resolution of cases, which would include a single litigation involving all

Defendants.  Therefore, the exercise of jurisdiction by the forum states is reasonable and comports with due process.

In tobacco litigation, plaintiff named tobacco trade associations as defendants, alleging that they had intentionally communicated false information about the serious addictions and cancer related to tobacco and, that in reliance on this information, plaintiff purchased the product and ultimately developed cancer. *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625–26 (5th Cir. 1999).  Like PCPC here, the tobacco associations in *Guidry* argued that they played no role in the promotion of tobacco. *Id.* at 626.  The Fifth Circuit denied defendants' motion to dismiss and held that:

> Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.  When the act was done with the intention of causing the particular effects in the state, the state is likely to have judicial jurisdiction though the defendant had no other contact with the state. This will almost surely be so when the effect involves injury to person or damage to tangible property.

*Id.* at 628–29 (citations omitted).

The *Guidry* court went on to state:

> The trade associations are not charged with mere untargeted negligence endangering only economic or reputational interests. Rather, their alleged intentional and negligent tortious actions were knowingly initiated and aimed at users and potential consumers of [the] products in [the forum state], including [Plaintiff]. Each defendant made false misrepresentations of facts that it knew would

> have a potentially devastating physically harmful impact on [Plaintiff] and other [forum state] residents. And each defendant knew that the brunt of that injury would be felt by the plaintiffs, as well as other citizens and public and private entities, in the state in which they live. "Under the circumstances, [the trade association defendants] must 'reasonably anticipate being haled into court there' to answer for" the offenses and quasi-offenses they allegedly committed.

*Guidry Id*. at 630.  This holding rings true here as well.

For the reasons outlined above, the forum states have specific personal jurisdiction over Defendant PCPC.

### 2.   The Master Complaint Effectively Establishes General Jurisdiction Over Defendant PCPC

A nonresident corporation may be subject to general personal jurisdiction if their contacts are "continuous and systematic" with the forum state "so as to render [it] essentially at home in the forum." *Helicopteros Nacionales de Colo., S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868 (1984); *Daimler*, 134 S. Ct. at 761; *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017). The standard "at home" forums for a corporate defendant is their place of incorporation and principal place of business. *BNSF Ry.*, 1375 S. Ct. at 1558.  However, general personal jurisdiction is not limited to a defendant's "at home" forums.

General personal jurisdiction may be enforced on a nonresident corporation in an "exceptional case" when their activities in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (quoting *Daimler*, 134 S. Ct. at 761, n. 19). An example of such a case would

be when a nonresident corporation's activities in the forum "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

Unlike *Daimler*, wherein the defendant did not manufacture cars in California and had no contacts with California, other than through their subsidiaries, *Daimler*, 134 S. Ct. at 752, PCPC itself has continuous and systematic contacts with each of the forum states.  Its largest services and activities include: state legislation and regulation, promotion of Industry's products, and offering products and services to members and consumers.[11]  These same activities have continuously and systematically been carried out in the forum states.  Further, PCPC took concerted steps to hold itself out as the "consumer's best resource" for product-safety information, fully knowing the dangers of talc, but promoting the product as safe.  Placitella Decl., Exhibit I at 2.  Rather than acting through a subsidiary, as in *Daimler*, PCPC has itself promoted the alleged safety of Industry's products, including talc, and has offered products and services to its members and consumers in the forum states.

For the same reasons, this case is distinguishable from *BNSF*, wherein defendant's activities in the forum state did not closely approximate the

---

[11]    *See* Placitella Decl., Exhibit A at 2.

corporation's activities in either its state of incorporation or principle place of business. *See BNSF Ry.*, 1375 S. Ct. at 1559. As Justice Sotomayor stated in her dissent, this is a "fact-intensive analysis" which should focus on the "quality and quantity of the defendant's contact in the forum State." *Id.* at 1560.  The activities of PCPC create an "exceptional case" wherein the efforts directed towards protecting the talc brand are so substantial that it is "at home" in each of the forum states at issue.  It is both fair and reasonable for PCPC to be subject to general personal jurisdiction in each of these forum states.

### 3.    Plaintiffs Have Jurisdiction Pursuant To The Conspiracy Theory Of Personal Jurisdiction

"The 'conspiracy theory' of personal jurisdiction is based on the 'time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy.'" *See Textor v. Bd. of Regents of No. Illinois Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983) (citations omitted).  Multiple forum states have recognized that a defendant may be subject to jurisdiction if acting in concert with co-conspirators, even if the defendant is not within the state.  *See First Community Bank, N. A. v. First Tennessee Bank, N. A., et al,* E2012-01422-SC-R11-CV (Tenn. May 6, 2015) (cert. denied) (conspiracy jurisdiction theory allows imputation of forum contacts among co-conspirators when "(1) two or more individuals conspire to do something, (2) that they could reasonably expect to lead to consequences in a particular forum, if, (3) one co-

conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the nonresident to personal jurisdiction under the long-arm statute of the forum state[.]").  *See also Kentucky Speedway, LLC v. Nat'l Ass'n. of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 598 (E.D. Ky. 2006) ("every member of the conspiracy is liable for the acts of every other member, because the law considers each member of the conspiracy to be the agent of the other members."); *Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC*, 305 Ga. App. 283, 293, 699 S.E.2d 456, 466 (2010) ("Georgia recognizes, and this Court has expressly adopted, the concept of conspiracy jurisdiction."); *Hammond v. Butler, Means, Evins & Brown*, 300 S.C. 458, 463, (1990), *cert. denied*, 498 U.S. 952, 111 S. Ct. 373 (1990) (South Carolina court holding that "[i]n certain instances, an out-of-state defendant may be subject to jurisdiction under a long-arm statute on the theory that his co-conspirator conducted activities in a particular state pursuant to the conspiracy."); *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 131 N.M. 772, 784-85, 42 P.3d 1221, 1233-34 (Ct. App. 2001) ("We believe that the elements of knowledge and voluntary participation can create 'minimum contacts' with the forum state such that personal jurisdiction based on a conspiracy can be constitutionally sound . . . the substantial contact with New Mexico through the actions of conspirators in furtherance of a conspiracy can make the exercise of jurisdiction by our courts

37

reasonable and fair."); *Lawati v. Montague Morgan Slade Ltd.*, 102 A.D.3d 427, 428, 961 N.Y.S.2d 5, 7 (App. Div. 2013) ("The complaint sufficiently alleges jurisdiction over Rigby under CPLR 302(a)(2) insofar as the complaint pleads that Rigby was a part of a conspiracy involving the commission of several overt tortious acts in New York."); *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 484 (Md. 2006) ("an out-of-state party involved in a conspiracy who would lack sufficient, personal, 'minimum contacts' with the forum state if only the party's individual conduct were considered nevertheless may be subject to suit in the forum jurisdiction based upon a co-conspirator's contacts with the forum state."); *Gibbs v. PrimeLending*, 381 S.W.3d 829, 834 (Ark. 2011) (Arkansas Supreme Court stating "[a]fter reviewing these constitutional principles, we find nothing that prohibits the use of the conspiracy theory of jurisdiction."); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 586 (Fla. 2000) (actual physical presence in Florida is not required in order to establish personal jurisdiction under a conspiracy theory); *Hunt v. Nevada State Bank*, 172 N.W.2d 292, 310-13 (Minn. 1969) ("Once participation in a tortious conspiracy—the effect of which is felt in this state—is sufficiently established, actual physical presence of each of the alleged conspirators is not essential to a valid assertion of jurisdiction."); *Ex parte Reindel v. General Reins. Corp.*, 963 So. 2d 614, 621-22 (Ala. 2007) (Alabama court recognizing, but not defining contours of conspiracy jurisdiction).

In the instant matter, there is no contention that the J&J Defendants and/or Imerys Talc are not subject to specific jurisdiction of the forum states. Thus, all Plaintiffs must do to establish specific jurisdiction over PCPC is to plead facts supporting application of the conspiracy theory of jurisdiction. *See Textor,* 711 F. 2d at 1393. "To plead successfully facts supporting application of the conspiracy theory of jurisdiction a plaintiff must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state." *Id.* Plaintiff has indeed pled facts supporting all elements of their conspiracy claim.

The Master Complaint alleges Defendants acted together with and through the TIPTF to commit a tortious act in a coordinated fashion, concealing the hazards of talc and conspiring to prevent the regulation of talc in order to ensure continued profits to the detriment of Plaintiffs' health. Master Complaint ¶¶ 34-39.   The root of the conspiracy is that all three Defendants were acting together, carrying out the same acts in a coordinated fashion, in order to accomplish their collective goal of concealing the hazards of talc and preventing regulation. The J&J Defendants and Imerys Talc pooled their resources to form and direct the TIPTF, through PCPC, in an effort to defend talc use at all costs and to prevent regulation of any type.  This was accomplished by hiring scientists to perform biased research regarding the safety of talc, editing scientific reports of the scientists they hired before submission to governmental agencies in order to hide the hazards of talc, releasing

false information concerning the safety of talc directly to the public, and using political and economic influence on regulatory bodies to prevent talc's regulation, all in a coordinated effort to prevent regulation of talc and to create confusion of the consuming public about the true hazards of talc relative to ovarian cancer. Master Complaint., ¶¶ 34-39.  The fact that Defendants all engaged in the same acts in furtherance of the conspiracy does not make their conduct less individualized.

Having properly pled conspiracy claims, and there being no dispute that the J&J Defendants and Imerys Talc are subject to specific jurisdiction in relation to the design, manufacture, marketing, distribution and sale of the subject products, this Court has conspiracy theory jurisdiction over Defendant PCPC in the following ten (10) states:  Alabama, Arkansas, Florida, Georgia, Kentucky, Maryland, Minnesota, New Mexico, New York, South Carolina and Tennessee.

## IV.    CONCLUSION

For all of the reasons outlined above, this Court has personal jurisdiction over Defendant PCPC in each case in which a Plaintiff has filed a Short Form Complaint.

40

Respectfully submitted,


*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Rd., Suite 650
Alexandria, VA 22311
Tel: 703-931-5500
Fax: 703-820-1656
mparfitt@ashcraftlaw.com

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
leigh.odell@beasleyallen.com

**Plaintiffs' Co-Lead Counsel**

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com

**Plaintiffs' Liaison Counsel**

June 19, 2017