# HealthPolicyMonitor

## The California Safe Cosmetics Act 2005

**Country:** USA
**Partner Institute:** Institute for Global Health (IGH), University of California Berkeley/San Francisco
**Survey no:** (6)2005
**Author(s):** Anke Therese Schulz (UCSF) and Carol Medlin (Institute for Global Health, UC Berkeley and UCSF)
**Health Policy Issues:** Public Health, Prevention, Pharmaceutical Policy

**Current Process Stages**

| Idea | Pilot | Policy Paper | Legislation | Implementation | Evaluation | Change |
|------|-------|--------------|-------------|----------------|------------|--------|

Abstract
Purpose of health policy or idea
Characteristics of this policy
Political and economic background
Purpose and process analysis
Expected outcome
References

Featured in half-yearly report: Health Policy Developments Issue 6

### Abstract

In the absence of federal regulation of the cosmetics industry, the California Safe Cosmetics Act 2005 was signed into law to protect the public from harmful cosmetic ingredients. This legislation mandates disclosure of harmful cosmetic chemicals, authorizes the state to collect health-related information about cosmetic products from manufacturers, and mandates the regulation of cosmetics in beauty salons.

### Purpose of health policy or idea

Senator Migden (Democrat - San Francisco), author of the California Safe Cosmetics Act, states that the purpose of the new law is "to require the manufacturers of cosmetics and other personal care products to disclose of hazardous ingredients and give the state authority to regulate such hazards where appropriate. A variety of chemicals in cosmetics have been linked to cancer and birth defects. As far back as 1978 the General Accounting Office told Congress that cosmetics 'contain ingredients that may cause cancer, birth defects and other chronic toxic effects'. Today, over a third of cosmetic products on the market contain chemicals with potential links to cancer."

Another purpose of the California Safe Cosmetics Act is to establish a national precedent for regulating the cosmetics industry. According to Luis Cabrales, California Organizer for the National Environmental Trust, the new law has national significance: "For decades the FDA (Food and Drug Administration) has allowed the cosmetics industry to police itself. Now, California is stepping into the breach in order to address the latest science on chemicals and human health."

**Plaintiff's Exhibit No. P-30**

The California Safe Cosmetics Act mandates three types of regulation. First, it requires cosmetics manufacturers to disclose to the state any harmful ingredients (e.g., phthalates) contained in their products. Secondly, the law authorizes the state Department of Health Services (DHS) to obtain health-related information from manufacturers about potentially harmful cosmetic ingredients. Thirdly, the law authorizes the state Occupational Health and Safety Administration (CalOSHA) to regulate the use of cosmetics in beauty salons. Additionally, the law requires the DHS and CalOSHA to implement the new regulations with existing financial and non-financial resources.

**Main points**

**Main objectives**

According to the Senate Health Committee, the California Safe Cosmetics Act 2005 accomplishes the following objectives:

1. It authorizes for the Department of Health Services (DHS) to conduct an investigation of cosmetic products that contain chemicals identified as causing cancer or reproductive toxicity or other ingredients of concern to DHS.
2. It authorizes the DHS to require manufacturers of products subject to investigation to submit relevant health effects data and studies and other information as requested by DHS.
3. It requires the DHS to establish reasonable deadlines for the submission of that information and would make failure by a manufacturer to submit the information a crime.
4. It requires the DHS to submit the results of any investigation conducted to appropriate entities within the Division of Environmental and Occupational Disease Control within DIR.
5. It requires the DHS, if it is determined that an ingredient in a cosmetic product is potentially toxic, to immediately refer the results of its investigation to the Division of Occupational Safety and Health and requires the division, within 180 days of receiving the results, to develop and present one or more proposed occupational health standards to the Occupational Safety and Health Standards Board within DIR, unless the division affirmatively determines in writing, within 90 days, that a standard is not necessary to protect the health of an employee who has regular exposure to the hazard for the period of his or her working life.
6. It requires the DHS, as early as feasible within existing resources, to determine whether certain cosmetics have been adequately substantiated for safety, and if the cosmetic has, to determine if the designated use is safe. If DHS finds that a product has been adequately substantiated for safety despite containing an unsafe ingredient, DHS is required to refer its findings to the Attorney General and the federal Food and Drug Administration (FDA) for possible enforcement.

The new law specifies that the DHS and CalOSHA must use existing resources to implement the new regulations, and that regulatory activities must be accomplished within certain timeframes. The cosmetics industry is subject to criminal penalties for non-compliance with the new law.

**Groups affected**

Patients/consumers (women of childbearing age, children, and beauty care workers), state government (DHS, CalOSHA, and the state Attorney General), federal government (the Food and Drug Administration), Producers (the cosmetics industry)

**Characteristics of this policy**

| | | | |
|---|---|---|---|
| Degree of Innovation | traditional | ▭▭▭▭■ | innovative |
| Degree of Controversy | consensual | ▭▭▭■▭ | highly controversial |
| Structural or Systemic Impact | marginal | ▭▭▭■▭ | fundamental |
| Public Visibility | very low | ▭▭▭■▭ | very high |
| Transferability | strongly system-dependent | ▭■▭▭▭ | system-neutral |

## Political and economic background

## Purpose and process analysis

### Current Process Stages

| Idea | Pilot | Policy Paper | **Legislation** | Implementation | Evaluation | Change |

### Origins of health policy idea

In the text of the new law, it states that the California Safe Cosmetics Act was inspired by European Union laws passed in 2003 banning phthalates from consumer goods. The California Safe Cosmetics Act 2005 caps a two-year campaign by Breast Cancer Action, the Breast Cancer Fund, and the National Environmental Trust to bring additional scrutiny to an industry accustomed to only minimal oversight. In the California state legislature, Senator Carole Migden (Democrat - San Francisco) authored and introduced the original bill (SB 484), which became law on October 7, 2005.

### Initiators of idea/main actors

- Government: State legislators generally supported the legislation.

- Civil Society: Non-profit advocacy groups strongly supported the legislation.

- Private Sector or Industry: The cosmetics industry launched a high-profile marketing campaign to defeat the legislation.

- Others

### Approach of idea

The approach of the idea is described as:
new:

### Innovation or pilot project

Local level - No, but phased introduction taking place this year.

### Stakeholder positions

The California Safe Cosmetics Act was heavily contested by stakeholders, who strongly supported, or strongly opposed the legislation. Key supporters of the legislation included the California Safe Cosmetics Campaign (a coalition of non-profit advocacy groups), and members of the Senate Health Committee. Key opponents of the bill were the chemical and cosmetics industries, who launched a marketing campaign to convince salon owners and workers that their businesses would be closed if the new law passed. The cosmetics industry spent heavily to defeat SB 484. For example, Proctor and Gamble paid Sacramento lobbyists more than $90,000 in the first six months of 2005, and the Cosmetics, Toiletries and Fragrance Association (CTFA) spent more than $600,000 in the 2003-04 legislative session and the first quarter of 2005, to oppose SB 484 and other environmental health legislation in California. Although SB 484 ultimately passed, Richard Thomason, Principal Consultant for Assembly Majority Leader Dario Frommer, states that the new law represents a compromise among competing interests in Calfiornia because it stops short of banning hazardous chemicals from cosmetic products altogether.

### Actors and positions

Description of actors and their positions

Government

| | very supportive | | strongly opposed |
|---|---|---|---|
| Republican legislators | very supportive | [●----] | strongly opposed |
| Democratic legislators | very supportive | [●----] | strongly opposed |
| The governor | very supportive | [--●--] | strongly opposed |

| | | | |
|---|---|---|---|
| Civil Society | | | |
| The California Campaign for Safe Cosmetics | very supportive | ■□□□□ | strongly opposed |
| The Breast Cancer Fund | very supportive | ■□□□□ | strongly opposed |
| Breast Cancer Action | very supportive | ■□□□□ | strongly opposed |
| Private Sector or Industry | | | |
| Proctor and Gamble | very supportive | □□□□■ | strongly opposed |
| The Cosmetics, Toiletries and Fragrance Association (CTFA) | very supportive | □□□□■ | strongly opposed |
| Others | | | |
| The Food and Drug Administration | very supportive | □□■□□ | strongly opposed |
| The National Environmental Trust | very supportive | ■□□□□ | strongly opposed |

## Influences in policy making and legislation

The California Campaign for Safe Cosmetics advocated for state regulation of the cosmetics industry for two years, which resulted in SB 484, introduced by Senator Migden on February 8, 2005. The bill was amended several times before it was signed into law on October 7, 2005.

## Legislative outcome

success

## Actors and influence

Description of actors and their influence

| | | | |
|---|---|---|---|
| Government | | | |
| Republican legislators | very strong | ■□□□□ | none |
| Democratic legislators | very strong | ■□□□□ | none |
| The governor | very strong | ■□□□□ | none |
| Civil Society | | | |
| The California Campaign for Safe Cosmetics | very strong | □■□□□ | none |
| The Breast Cancer Fund | very strong | □■□□□ | none |
| Breast Cancer Action | very strong | □■□□□ | none |
| Private Sector or Industry | | | |
| Proctor and Gamble | very strong | □■□□□ | none |
| The Cosmetics, Toiletries and Fragrance Association (CTFA) | very strong | □■□□□ | none |
| Others | | | |
| The Food and Drug Administration | very strong | □□■□□ | none |
| The National Environmental Trust | very strong | □■□□□ | none |

4/15/2015  HealthPolicyMonitor | Surveys| IGH - USA| 06| The California Safe Cosmetics Act 2005



### Adoption and implementation

The DHS and CalOSHA have been charged with implementing the new regulations, and they must do so with existing resources. For enforcement, the DHS and CalOSHA may turn to the state Attorney General, and to the federal Food and Drug Administration (FDA) when cosmetics manufacturers are in violation of federal laws. Successful implementation of the California Safe Cosmetics Act will depend on how efficiently the DHS and CalOSHA can perform the new regulatory activities, and their ability to call on the state Attorney General and the FDA for enforcement.

### Monitoring and evaluation

The new law does not specify how implementation will be monitored or evaluated.

### Expected outcome

The California Safe Cosmetics Act sets an historic, legal precedent for state regulation of the cosmetics industry in the U.S. Given the constraints within which the DHS and CalOSHA must operate, however, it may be difficult for these agencies to force manufacturers to remove hazardous chemicals from cosmetic products. Because the new law only requires disclosure of hazardous cosmetic ingredients, consumers and beauty care workers will continue to be exposed to these substances. Furthermore, if the new law leads to protracted court battles, the state may experience higher expenditures associated with this legislation than originally anticipated.

### Impact of this policy

Quality of Health Care Services    marginal    fundamental

| | | | | |
|---|---|---|---|---|
| 4/15/2015 | | HealthPolicyMonitor \| Surveys\| IGH - USA\| 06\| The California Safe Cosmetics Act 2005 | | |
| | Level of Equity | system less equitable | | system more equitable |
| | Cost Efficiency | very low | | very high |

## References

### Sources of Information

- The California State Legislative Bills Information website and page for SB 484: www.leginfo.ca.gov/pub/bill/sen/sb_0451-0500/sb_484_bill_20051007_chaptered.html
- Senate Health Committee analysis of SB 484: http://info.sen.ca.gov/pub/bill/sen/sb_0451-0500/sb_484_cfa_20050418_151953_sen_comm.html
- The California Campaign for Safe Cosmetics website and press release page announcing passage of the CA Safe Cosmetics Act: www.safecosmetics.org/newsroom/press.cfm?pressReleaseID=13
- The Breast Cancer Fund website and page on the California Safe Cosmetics campaign: www.breastcancerfund.org/site/pp.asp?c=kwKXLdPaE&b=1104835
- The Global Cosmetics Industry magazine and its article on the CA Safe Cosmetics Act: www.gcimagazine.com/news/business/1806832.html
- San Francisco Chronicle article on the California Safe Cosmetics Act: http://sfgate.com/cgi-bin/article.cgi?f=/c/a/2005/06/29/BAG83DGC921.DTL

### Author/s and/or contributors to this survey

Anke Therese Schulz (UCSF) and Carol Medlin (Institute for Global Health, UC Berkeley and UCSF)

### Suggested citation for this online article

Anke Therese Schulz (UCSF) and Carol Medlin (Institute for Global Health, UC Berkeley and UCSF). "The California Safe Cosmetics Act 2005". *Health Policy Monitor*, 10/10/2005. Available at http://www.hpm.org/survey/us/d6/3

EXHIBIT E