UNITED STATES DISTRICT COURT                                    1
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO 16-MD-2738(FLW)(LHG)


_____   :
IN RE JOHNSON & JOHNSON   :  <u>TRANSCRIPT OF</u>
POWDER PRODUCTS MARKETING, :  <u>STATUS HEARING</u>
SALES PRACTICES.          :
--------------------------  :  <u>JUNE 21, 2017</u>



CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608



B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ
              THE HONORABLE LOIS H. GOODMAN, USMJ



A P P E A R A N C E S:

BEASLEY ALLEN, ESQUIRES
BY:  P. LEIGH O'DELL, ESQUIRE (ALABAMA)
       -and-
ASHCRAFT & GEREL, ESQUIRES
BY:  MICHELLE A. PARFITT, ESQUIRE (VIRGINIA)
     CHRIS TISI, ESQUIRE  (VIRGINIA)
       -and-
COHEN, PLACITELLA & ROTH, ESQUIRES
BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE (NEW JERSEY)
On Behalf of the Plaintiffs Steering Committee

BLOOD, HURST & O'REARDON, ESQUIRES
BY:  TIMOTHY G. BLOOD, ESQUIRE  (CALIFORNIA)
Interim Class Counsel

                              (Continued.)



                    * * * * *
           **VINCENT RUSSONIELLO, RPR, CRR, CCR**
              **OFFICIAL U.S. COURT REPORTER**
                   **(609) 588-9516**

2

A P P E A R A N C E S    C O N T I N U E D:


DRINKER, BIDDLE & REATH, ESQUIRES
BY:  SUSAN M. SHARKO, ESQUIRE
     JULIE L. TERSIGNI, ESQUIRE  (NEW JERSEY)
        -and-
SHOOK, HARDY & BACON, ESQUIRES
BY:  KATHLEEN FRAZIER, ESQUIRE (TEXAS)
        -and-
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, ESQUIRES
BY:  JOHN H. BEISNER, ESQUIRE  (WASHINGTON D.C.)
On Behalf of Defendant Johnson & Johnson

SEYFARTH & SHAW, ESQUIRES
BY:  THOMAS L. LOCKE, ESQUIRE  (WASHINGTON D.C.)
        -and-
THE AXELROD FIRM, ESQUIRES
BY:  SHERYL L. AXELROD, ESQUIRE  (PENNSYLVANIA)
On Behalf of Defendant PCPC


COUGHLIN DUFFY, ESQUIRES
BY:  LORNA A. DOTRO, ESQUIRE  (NEW JERSEY)
        -and-
GORDON & REES, ESQUIRES
BY:  ANN THORNTON FIELD, ESQUIRE  (PENNSYLVANIA)
On behalf of Defendant Imerys Talc America

3

# C E R T I F I C A T E

PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE ABOVE-ENTITLED MATTER.


S/Vincent Russoniello
VINCENT RUSSONIELLO, CCR
OFFICIAL U.S. COURT REPORTER

4

1                    **M O R N I N G   S E S S I O N**

2

3          (In open court.)

4          THE CLERK:  All rise.

5          JUDGE WOLFSON:  Thank you.

6          (Appearances given.)

7                      *  *  *  *  *

8          JUDGE WOLFSON:  On the record.

9          JUDGE GOODMAN:  We're starting with the

10   June 19, 2017, letter that you folks sent in with

11   regard to the pathology protocol.

12          A lot of it has to do with timing of the

13   notice and I think we can deal with that without oral

14   argument.  I don't need to hear anything on that.  I

15   think that is just a practical issue and we'll deal

16   with it.

17          What I need to hear more on is the

18   preservation of the materials because honestly I don't

19   know what's involved.  And to the extent the issue is

20   who has the burden of preserving the materials,

21   whether it's plaintiff or a facility that I have no

22   control over and cannot order to do anything, I don't

23   understand where we're going with this.

24          I need to know:  How is this typically dealt

25   with in a case of this kind?  Who typically takes

5

1   control over the pathology specimens, whose burden it

2   is?  What burden is it?  Is it expensive?  Why isn't

3   it something that the experts are dealing with?

4           So I would like to hear something on this.

5   Frankly, the letter raises more questions than it's

6   answering for me.

7           MS. PARFITT:  Your Honor, if I may, I'll

8   start.  Please interrupt me at any point in time to

9   ask any questions, and counsel as well.

10          Thank you first with regard to the deadlines.

11  I agree with the Court.  That should be something we

12  should be able to reconcile.

13          With regard typically -- and I guess there is

14  never any typical situation in life anymore -- but

15  typically when we had slides, the plaintiffs have made

16  the request because it's our expert first that would

17  like to look at the slides and do whatever it is that

18  they need to do.  So what has been our experience, we

19  will request the slides that can be generated from the

20  medical facility, the path lab.

21          Now, Your Honors are aware of the fact that we

22  have a preservation order that has been entered which

23  also covers pathology.  To the extent that the

24  pathology sections and departments of the various

25  hospitals and medical centers have been notified that

1    they may be in possession of tissue, that we would

2    like them to hold on to because sometimes there are

3    times when a facility might only have to keep tissue

4    blocks, et cetera, for a period of 7 years, whatever

5    the period may be.

6         So those facilities have now been notified by

7    plaintiffs that they are to preserve and hold on to

8    the material that we may need to request.

9         JUDGE GOODMAN:  Right.  We dealt with that at

10   the last conference, the time needed, and that's been

11   taken care of.

12        MS. PARFITT:  Correct.  So we started that

13   process.

14        Now, what we're talking about is actually

15   getting down to the actual work and requests, the

16   specific slides that may be relevant to our

17   plaintiffs.

18        So typically what we do is we send requests

19   again to the hospital, medical facility, asking that

20   they provide us with blocks, ideally, if they only

21   have blocks, or tissue, whatever the pathology

22   materials that we would need.

23        We usually have a pathology report from the

24   physician that has identified the relevant pathology.

25   So what we do is we send the pathology report along

7

1   with the request for certain pathology materials.

2          Then we get them.  And there is a chain of

3   custody process and we have prepared a chain of

4   custody letter that more often than not we will ask

5   that the facility -- and it's done differently.  I

6   can't speak to all law firms.

7          Some may have the facility sent it to their

8   law firm and the law firm then sends it out to the

9   expert.  Some may make arrangements to have the

10  facility send it directly to the expert.

11         We have had occasions where we have requested

12  blocks and the facility has refused to give us blocks.

13  They will only give us slides.  And then we have to

14  get the expert involved in actually trying to get what

15  he or she needs.

16         So, again, typically, what you are seeing is

17  the plaintiffs are initiating the process.  Then what

18  this preservation order has to address is the fact

19  that the defendants are also entitled to look at those

20  pathology materials that our experts have looked at.

21         So what we're trying to do is set up a process

22  that allows both sides access to relevant materials

23  and evidence.  So what that involves is what's frankly

24  laid out here.  Where there is a dispute, if there is

25  a dispute, is within this particular protocol the

1    defendants, and I believe it's the section that deals

2    with -- it's Section 5, Paragraph 9, that talks about

3    dealing with half of the preserved material.  So we

4    say to the facility save half for our friends over

5    here who may also wish to have their experts look at

6    the tissue and the material.

7            The problem is the defendants want us to say:

8    We agree to preserve and maintain at least one-half of

9    any preserved material.  Ideally, that is exactly what

10   we would like them to do.  The problem is that we too

11   make requests to the facility.  I don't own, control,

12   any of the facilities that are receiving my requests,

13   nor do any other plaintiff.

14           So one would hope that a medical facility who

15   now has probably two requests:  One, preservation

16   letter, hold on to everything; two, a request

17   specifically for pathology materials.  Half be sent,

18   be saved, so that they can also be used by the

19   defendants.

20           Frankly, in the course of this protocol that

21   your Honor has, it's probably the only one that makes

22   it difficult for us to agree to.  It's very difficult

23   to represent before your Honors we will do this.  I

24   don't have that kind of power or control.  What I do

25   have is the ability to not only on behalf of my firm

1  but that all firms understand what their requisite

2  obligations are with regard to the evidence here.

3       That's what we are trying to do is set forth a

4  protocol that permits our experts to adequately review

5  the evidence and frankly for the defendants to have an

6  opportunity to look at that evidence as well.

7       JUDGE GOODMAN:  So have there been any

8  pushback, any objection from any of the facilities

9  that you sent preservation notices to?

10      MS. PARFITT:  Again, I can only speak from my

11  own firm's experience.  No, the pushback would be

12  blocks.  There has been pushback with regard to

13  providing blocks.  At times we have been successful in

14  getting those blocks because we had our medical people

15  speak with their medical people and it seems that

16  dialogue has been a useful one.  Sometimes that's

17  happening.  We certainly entertained that opportunity.

18      I can't speak for anyone else.  I believe most

19  medical facilities are very good about honoring these

20  kinds of requests.  One thing we have done is we just

21  don't send it to a medical facility, generally, to

22  their risk assessment or their health office.  We will

23  send a separate letter out to pathology.

24      What we have learned in the past is they don't

25  all speak to each other.  So we send separate requests

1    to the facility.  So any facility could have three

2    letters from us and that's an assurance that the word

3    is getting to them.

4          JUDGE GOODMAN:  But the way this works, as I'm

5    understanding it, is that the facility has a tissue

6    specimen and they have been asked to maintain that.

7          Now, they are being asked to send one-half of

8    that be it by slide or block --

9          MS. PARFITT:  Pathology materials, yes.

10          JUDGE GOODMAN:  One-half to plaintiffs'

11    expert.  And the question is whether the other half is

12    sent to defendants' expert or maintained by the

13    facility?  Is that the question?  What is it

14    defendants want to have happen here?

15          MS. FRAZIER:  What we would like to happen is

16    rather than put it in the facility's domain or make it

17    their burden to divide and make sure that they divide

18    equally the pathology and give it to each side and

19    photograph it and such, that burden then would shift

20    to the plaintiffs because the facilities themselves

21    are not in the business of litigation.  They really

22    don't have anyone taking care of patients.  They are

23    trying to make sure that they are identifying diseases

24    and things like that.

25          So I think to add to their burden to not only

1   preserve this tissue but to photograph it and to make

2   sure that they divide it equally and hold onto the

3   other half for us -- because remember the plaintiffs

4   are ordering these pathology specimens before usually

5   we are even aware of their existence.  So we would

6   then order them at some later period of time.

7           Now, if the plaintiffs obtain the specimen and

8   they are the ones who photograph and divide it, then

9   at least we know that the plaintiffs are -- it's their

10  burden to do it.  It's in their control.

11          As Ms. Parfitt has said, she doesn't control

12  the facility.  So she can't control whether or not

13  they are going to hold on to the other half of the

14  specimen, whether or not they have actually divided it

15  equally or photographed it.

16          JUDGE GOODMAN:  But the Court doesn't control

17  the facility either and can't order the facility to do

18  this.  Is this a burdensome thing?  If half of it is

19  going to plaintiffs' expert, why isn't the other half

20  going to defendants' expert at the same time?

21          Or, if the burden is in the dividing and

22  photographing, why not have it go to an independent

23  lab and let the independent lab send half to each of

24  you so that the chain of custody is preserved?

25          I'm hearing that you want plaintiffs' expert

1    to do it.  But are we going to have problems down the

2    road that they didn't do it right and issues there?

3    I'm just trying to understand what the logistics are

4    here.

5         MS. PARFITT:  Your Honor, if I may, let me

6    speak to the mesh litigation.  In that litigation, you

7    also had requests for thousands and thousands of

8    pathology specimens.

9         What we have done and what again a lot of

10   plaintiffs' lawyers have done and I suspect defendants

11   do it as well, when tissue is requested, we want to do

12   that early on.  That's why you have this order in

13   front of you.  We want to get that material ordered

14   and somewhere outside of the lab of the medical

15   facility because there are compliance issues that

16   medical facilities have to comply with and they are

17   not always as long as we wish they were.

18        So what we have done is contract, some

19   plaintiffs' lawyers contract as well with the facility

20   that houses this tissue, so that not every piece of

21   pathology specimen is being looked at in the moment.

22   It's requested and then it's sent immediately to,

23   let's call it, a facility that actually houses,

24   provides a home for them, the materials.  They know

25   not to get rid of the materials for decades.  So

1    that's something that's in play as well.

2           To answer your question directly, it hasn't

3    been problematic.  I have had many, many, many, many,

4    many mesh specimens and this is the process that we

5    have followed.  We have ensured that the preservation

6    letters are sent to the medical facilities.  They have

7    legal departments.  I don't think they are blatantly

8    ignorant of the requests.  We tell them what we need.

9           We do that in this case on two occasions.  Not

10   only have we sent preservation letters out, but we

11   have sent a specific letter to the facility that your

12   Honor has in front of her, and even a third occasion

13   where sometimes we send our own letter directly to

14   pathology.  So there are three occasions for the

15   pathology department to hold on to the tissue.

16          JUDGE WOLFSON:  Can I ask a question even

17   though it's Judge Goodman's issue?

18          MS. PARFITT:  Sure.

19          JUDGE WOLFSON:  What you have identified that

20   you have done in the past is have this separate

21   facility that it gets sent to to preserve it so the

22   hospital is off the hook.  And, by the way, does that

23   facility then do anything further before it provides

24   it to your expert?

25          MS. PARFITT:  No.  They just simply house it.

1          JUDGE WOLFSON:  Simply house it.  Okay.

2          So they are not dividing because supposedly

3    they've gotten only your half of what you need?

4          MS. PARFITT:  Not at all.

5          JUDGE WOLFSON:  Well, if you agree to

6    whichever facility is going to be to house it, you can

7    both agree to that.  It can be maintained there.  And

8    we're still dealing with how does each one get their

9    half.  But if the entire specimen is sent to that

10   facility, then you can each get the half when you want

11   it.  Because now you control that facility.  It's no

12   longer the issue of how we're going to get it.

13         Now, I understand who is going to have it, or

14   cut it, and do it, that could be worked out.  But in

15   the sense of preservation at this point and who has

16   the responsibility, if you get it out of the hospital

17   setting and agree on a facility that's going to hold

18   it, doesn't that start with at least we've got

19   preservation?

20         MS. PARFITT:  Well, let me put another little

21   kink in that armor a little bit.

22         JUDGE WOLFSON:  Okay.

23         MS. PARFITT:  While we had something in this

24   order for the other half to be saved to potentially go

25   to the defendants, there are occasions that only the

1  half of the pathology specimens that are cut are ever

2  utilized by either side.

3        I've had many situations in other cases where

4  the half that was kept and sent to say our experts,

5  those materials were then subsequently sent, whatever

6  our expert has was sent to their expert.

7        JUDGE WOLFSON:  It almost sounds like they

8  want that.  In fact, I read that as part of one of the

9  positions that, when you are done, whatever you gave

10  to your expert please give to us.  That's another way

11  of doing it as well.

12        All I'm suggesting is maybe it's that we don't

13  even request a half.  Request it all to be sent to the

14  facility.

15        MS. PARFITT:  I don't think they will turn it

16  all over.

17        THE COURT:  They won't.  Okay.

18        MS. PARFITT:  That will be the other issue

19  you're going to have because the hospital is not going

20  to turn it all over.  That hasn't been my experience.

21        JUDGE WOLFSON:  Well, isn't it essentially all

22  turned over if effectively they give you the half and

23  then they give them the other half?

24        MS. FRAZIER:  Or they don't give us any

25  because they have already given out --

1    JUDGE WOLFSON:  Okay.  Whatever.  But I'm just

2    saying at some point if we do half, half, it's still

3    going to be all turned over.

4    MS. PARFITT:  I think it's what half is.  A

5    facility may say:  You get half of a half that we are

6    going to give you, plaintiff.  So let me make that

7    clarification.

8    JUDGE WOLFSON:  You are saying they may in

9    fact, what they're giving you, let's say, they have

10   more than one slide, block, whatever it might be, and

11   they are giving you some portion of it and they are

12   still retaining some of it.

13   MS. PARFITT:  Correct.  And that really has

14   been our experience.  I will tell you that of our

15   physician.  The hospital is somewhat loathed to turn

16   everything over on an individual patient.  They want

17   something.

18   JUDGE WOLFSON:  I understand that.  Right.

19   Because they never know what's going to come down the

20   line where they are concerned, either.

21   MS. PARFITT:  Correct.

22   JUDGE WOLFSON:  I understand that.

23   You could take it over.

24   JUDGE GOODMAN:  All right.  So we're talking

25   about some portion of the whole.  It doesn't matter

17

1    whether it's half of a half --

2            MS. PARFITT:  Correct.

3            JUDGE GOODMAN:  -- or the half.

4            I think Judge Wolfson is picking up on the

5    same thing I'm thinking.  Why not get whatever portion

6    they are willing to release to a separate location

7    that you folks agree on, do the division there, and

8    take it from there and share the cost of the

9    preservation.  You get your half.  You get your half

10   of whatever is given over.  Your experts have carte

11   blanche to do what they want to do.

12           MS. PARFITT:  Your Honor, I guess my response

13   to that would be, while this may be what my firm has

14   done, we are using a housing facility.  I can't tell

15   you that that's what all law firms do nor do they need

16   to do that.

17           Oftentimes the firm will decide that they will

18   make the request.  It will go directly to the expert.

19   There is no need to house it.  And it gets sent back

20   to the hospital.  Because sometimes the hospital wants

21   us to return.  That's another issue.  Again, there's a

22   lot of kinks in this armor.  That's why the protocol

23   you have in front of you is probably a protocol that

24   has anticipated all of the problems we've had in the

25   past with tissue.

1          JUDGE GOODMAN:  You are the anticipating

2     problems that may not happen and I think it's becoming

3     a mess.

4          MS. PARFITT:  Well, no, and it hasn't because

5     in the past -- and I don't even think we have a mess.

6     I don't believe there is a lot of disagreement between

7     the parties as to the protocol before.  I think what

8     this protocol should do is allow the personal

9     preferences of the firms.  And some would simply

10    request directly to a facility, get it back; and the

11    facility's preference would be to have it returned

12    directly to them, not to be sitting around in some

13    housing facility.

14         Now, if you want to do that, you may be able

15    to make arrangements as well with the medical

16    facility.  They'll let you send it to a new home for a

17    period of time.  This I believe allows all that to

18    happen.

19         Candidly and frankly what you have in front of

20    you is something that has worked in most litigations

21    involving tissue.  The only quarrel we had, and we

22    almost didn't come before you, was on timing.

23         JUDGE GOODMAN:  Aren't you sorry that you did.

24         MS. PARFITT:  No, it's always good to talk

25    about these things.  But I think we can simplify it.

1    I don't think there is much disagreement about the

2    content of what has to happen.

3            Both sides, I believe, and you can speak for

4    yourself, Ms. Frazier, if you feel different, it's

5    really just what's practical time limits to accomplish

6    what was set forth here?  I will represent to the

7    Court that what's set forth here is typically what's

8    been done in the past.

9            I do not believe that there has been

10   enumerable motions and problems with the process.  It

11   seems to have worked.  The only quarrel we have, if

12   you want to call it a quarrel, was:  Do the plaintiffs

13   have 14 days to take action or do they have 21 days?

14   That was really it.

15           The other issue was:  Do we add after the

16   14 days or the 21 days, "as soon as practicable"?  Why

17   was that a vetting point back and forth?  It's

18   because, again, in the MDL we don't control every

19   single plaintiffs' attorney.

20           We are trying to give them a couple of days

21   either way so that you don't receive motions from the

22   defendants that we weren't in compliance.  We are

23   trying to set up a system that works that doesn't

24   cause unnecessary motion practice.

25           We shouldn't be abusive.  And I think that's

1    the message that goes out by the plaintiffs.  You

2    can't abuse the leeway or the margin of error the

3    Court has given you.  The Court is acting practically,

4    but you can't abuse it.

5           The last difference of opinion is with regard

6    to the request.  Is the request to the facility?  It

7    should be to the facility.  Do we have an obligation

8    to make sure the facility understands what we need?

9           And if we run into a problem, then I think we

10   should go to the defendants.  If we're having a

11   problem, we could notify them that we are having a

12   problem.  But I can't control medical facilities

13   around the country.

14          JUDGE WOLFSON:  Let me just ask one other

15   question before Judge Goodman goes on.

16          MS. PARFITT:  Sure.  Of course.

17          JUDGE WOLFSON:  I understand plaintiffs'

18   position as well as defendants' position.  All you

19   would like to do is, you would like to notify the

20   facility.  You would like to get your half.  You would

21   like to put them on notice:  Maintain another half

22   because the defendant is making a request.  And you

23   say:  It's on them because maybe they are not going to

24   make a request of the hospital itself.  Maybe they

25   want to get it from you, whatever.

1    Could we have it done in such a way -- and I

2    know your concern is:  Well, what if the hospital

3    doesn't want to give us another half?  They really

4    didn't maintain the other half.  They gave them

5    everything.

6    But if we have kind of a two layer, which is:

7    They are told to maintain half for you.  You can get

8    of the same sample that they gave.  You can get it

9    directly.  If you have an issue, your expert is

10   obligated to preserve the sample that they get.

11   So if they are unable to get it from the

12   hospital, or if they have a preference that they would

13   rather get it from your expert, that that's available

14   to them.

15   Can we do that so there is two layers so

16   you've got that built that you know you are going to

17   get a sample?  How about that?

18   MS. FRAZIER:  I guess that could work.  Again,

19   the timing.

20   JUDGE WOLFSON:  Okay.  That works.  Let's

21   finish that.

22   Are you in agreement, too?

23   MS. PARFITT:  I think that would work.

24   I didn't mean to bring one other thing up to

25   the Court.  I think we've made some progress on that.

1    Understand, as well, your Honors, that

2    standing before the Court today there are people who

3    have already requested their tissue.  I think this

4    addresses that circumstance as well.  So I think your

5    plan may work.  I don't think we have a problem.

6        THE COURT:  All right.

7        JUDGE GOODMAN:  So there is a fail-safe.  The

8    facilities are put on notice.  Plaintiff gets their

9    sample, but plaintiff has to preserve.  We're not

10   talking about destructive testing here, so the

11   specimens are preserved.

12       MS. PARFITT:  Your Honor, this doesn't even

13   talk about the type of testing because we couldn't get

14   this far.  That is an issue we need to take up not

15   today.  What we need is to make sure moving forward we

16   have a process because I know you appreciate up until

17   now there isn't one.  So what people are doing is what

18   they are doing.

19       So we are trying to get a process forward.

20   That's why I am trying to simplify it.  I think what

21   you have suggested, your Honors, will simplify it.

22   All we have to do now is days, decide how many days

23   everyone gets, and I think we have a plan.

24       JUDGE GOODMAN:  All right.

25       MS. FRAZIER:  I have one final point on that.

23

1          The plaintiffs' duty to preserve the specimen

2     just in case we aren't able to, would that duty go to

3     preserve at least half of what they get, so that we

4     can get it if we can't get it from the facility?

5          JUDGE WOLFSON:  Well, the obligation to

6     preserve half would come into play if there is

7     destructive testing.

8          MS. PARFITT:  We aren't there yet.

9          JUDGE WOLFSON:  So if it doesn't destroy it,

10    it doesn't matter.  But if there is going to be

11    destructive testing --

12         MS. PARFITT:  Then we have to have another

13    process.

14         JUDGE WOLFSON:  That's what it would do.

15         JUDGE GOODMAN:  And that's a whole other level

16    of negotiation once you find out what your experts are

17    going to do and by then you should know what's

18    available.

19         MS. PARFITT:  Because understand the

20    overarching concern for us is the overarching concern

21    for them.  We recognize in a case like this tissue is

22    important.  It does not behoove us to do something to

23    impede that process.  So I actually think the parties

24    are on the same page.  It's just the mechanism.

25         JUDGE GOODMAN:  All right.

1          Now, with regard to the timing, I have to tell

2     you, I think you have done a lot of good work here.

3     You have agreed on most of this.  I am not persuaded

4     that "as soon as practicable" belongs in here.  It's

5     basically eviscerating the agreement in terms of

6     14 days or 7 days or 21 days.

7          I am willing to say, if it's 14 days that you

8     agree on, or additional time, if there are extenuating

9     circumstances, but no longer than 21 days.  Because

10    you folks have a lot of hands working on this.  You

11    could get it done within the timeframe.  If something

12    unthinkable happens, you have a little window but only

13    if something truly extenuating happens.

14         So if you agree to 14 days, I'm willing to say

15    or 21 days if there are extenuating circumstances.

16    But what I don't want to happen is 14 days is then

17    21 days every time.  This has to get done.  You've

18    agreed to it.  This is really ministerial.

19         JUDGE WOLFSON:  In fact, who is doing this,

20    plaintiffs' counsel or the facility that's getting it?

21         MS. PARFITT:  It will depend on frankly what

22    step in this process that you are in.  That's why we

23    were asking for the additional time and the little bit

24    of a margin of error because, again, the facility may

25    not move as quickly or we can't get the information or

1   we have a plaintiff's lawyer that calls us and says:

2   What are you doing?  I'm in trial for a month.  I

3   can't do this.  We're not trying to be abusive.

4           JUDGE WOLFSON:  But it's a little form.  The

5   words are:  "Notify within 14 business days," or

6   whatever, "after receipt of the material."

7           When they come in the door any assistant could

8   be noting they have come in the door and we have this

9   form that we send out that's a checkoff.  We have

10  received materials today in such and such a case.

11          MS. PARFITT:  I don't disagree with the Court

12  that it's ministerial.  I think the problem we have

13  standing before your Court is that it's not just the

14  firms --

15          JUDGE WOLFSON:  You are talking about some of

16  the smaller firms.  You don't know where they are

17  around the country that may be getting these and how

18  you control them.

19          MS. PARFITT:  Exactly.

20          JUDGE WOLFSON:  Well, you are going to have to

21  tell them then.

22          MS. PARFITT:  We will.  We will certainly tell

23  them.

24          But I think what you've indicated, and I think

25  this has been certainly your mantra from the

1   beginning, we don't want a motion practice on things

2   like this for everything.  You don't want us showing

3   up next month with 60 plaintiffs behind us who have

4   suggested that they weren't able to meet their

5   obligation.

6          That is really what we are trying to avoid.

7   We are thinking forward.  We are thinking that things

8   are not perfect all the time and we just want to have

9   a process in place which has a little flexibility to

10  it.

11         And I suspect, your Honor, if even in the

12  21 days and it was that extenuating circumstance, I

13  would like to be able to stand before your Court and

14  say:  Your Honor, I know what you said.  Don't go

15  beyond that 21 days.  These are the circumstances.

16  This is why it couldn't happen.  But they'll have it

17  to you 27 days, whatever.

18         That's what we are looking for.  I don't think

19  that's an unreasonable thing when you are guiding the

20  efforts of so many other plaintiffs.  I wish I could

21  say  Ms. O'Dell and our PVC have that kind of control.

22  But I will tell you, all we could do is give you our

23  best effort.

24         MS. FRAZIER:  Your Honor, it seems to me that

25  an order by the Court would help to enforce that and

1  to get to these other plaintiffs' counsel to move on

2  these issues.

3          JUDGE GOODMAN:  There will be an order.  We

4  will do an order.  It's going to be 14 days.  If

5  extenuating circumstances, 21.

6          Your first recourse, it's going to be in an

7  order and I'm sure that you are all going to tell all

8  of the plaintiffs' counsel what their obligations are.

9  If there is for some reason someone who does it in

10  23 days, your first recourse is to go to Ms. Frazier.

11  There was a death in the family.  There was something

12  impossible to work around.

13          I don't expect defendants to come running in

14  to me because someone had a death in the family.  But

15  because someone said:  Oh, you know, maybe an order is

16  only guidelines, not really controlling, that's a

17  problem and you need to control your plaintiffs'

18  counsel.  You have to make sure that they are doing

19  what they have to do.

20          So that's my inclination on this:  14 days;

21  21 for extenuating circumstances.

22          JUDGE WOLFSON:  Off the record.

23          ( Discussion off the record.)

24          THE CLERK:  All rise.

25          (Proceedings concluded.)

**C E R T I F I C A T E**

I, **Vincent Russoniello,** Official United States Court Reporter and Certified Court Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I do further certify that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

S/Vincent Russoniello
Vincent Russoniello, CCR
Certificate No. 675

## 0

**08608** [1] - 1:9

## 1

**14** [9] - 19:12, 19:15, 24:5, 24:6, 24:13, 24:15, 25:4, 27:3, 27:19
**16-MD-2738(FLW)(LHG** [1] - 1:2
**19** [1] - 4:9

## 2

**2017** [2] - 1:6, 4:9
**21** [11] - 1:6, 19:12, 19:15, 24:5, 24:8, 24:14, 24:16, 26:11, 26:14, 27:4, 27:20
**23** [1] - 27:9
**27** [1] - 26:16
**28** [1] - 3:7

## 4

**402** [1] - 1:9

## 5

**5** [1] - 8:1
**588-9516** [1] - 1:25

## 6

**60** [1] - 26:2
**609** [1] - 1:25
**675** [1] - 28:24

## 7

**7** [2] - 6:3, 24:5
**753** [1] - 3:7

## 9

**9** [1] - 8:1

## A

**ability** [1] - 8:24
**able** [5] - 5:11, 18:13, 23:1, 26:3, 26:12
**ABOVE** [1] - 3:10
**ABOVE-ENTITLED** [1] - 3:10
**abuse** [2] - 20:1, 20:3
**abusive** [2] - 19:24, 25:2
**access** [1] - 7:21

**accomplish** [1] - 19:4
**ACCURATE** [1] - 3:8
**accurate** [1] - 28:9
**acting** [1] - 20:2
**ACTION** [1] - 1:2
**action** [3] - 19:12, 28:15, 28:17
**actual** [1] - 6:14
**add** [2] - 10:24, 19:14
**additional** [2] - 24:7, 24:22
**address** [1] - 7:17
**addresses** [1] - 22:3
**adequately** [1] - 9:3
**agree** [9] - 5:10, 8:7, 8:21, 14:4, 14:6, 14:16, 17:6, 24:7, 24:13
**agreed** [2] - 24:2, 24:17
**agreement** [2] - 21:21, 24:4
**ALABAMA** [1] - 1:15
**ALLEN** [1] - 1:14
**allow** [1] - 18:7
**allows** [2] - 7:21, 18:16
**almost** [2] - 15:6, 18:21
**America** [1] - 2:16
**AN** [1] - 3:8
**ANN** [1] - 2:15
**answer** [1] - 13:1
**answering** [1] - 5:5
**anticipated** [1] - 17:23
**anticipating** [1] - 17:25
**Appearances** [1] - 4:6
**appreciate** [1] - 22:15
**argument** [1] - 4:13
**armor** [2] - 14:20, 17:21
**ARPS** [1] - 2:7
**arrangements** [2] - 7:8, 18:14
**ASHCRAFT** [1] - 1:16
**assessment** [1] - 9:21
**assistant** [1] - 25:6
**assurance** [1] - 10:1
**attorney** [3] - 19:18, 28:14, 28:16
**available** [2] - 21:12, 23:17
**avoid** [1] - 26:5
**aware** [2] - 5:20, 11:4
**AXELROD** [2] - 2:11, 2:11

## B

**BACON** [1] - 2:6
**BE** [1] - 3:8
**BEASLEY** [1] - 1:14
**becoming** [1] - 18:1
**beginning** [1] - 25:25
**behalf** [2] - 2:16, 8:24
**Behalf** [3] - 1:19, 2:8, 2:12
**behind** [1] - 26:2
**behoove** [1] - 23:21
**BEISNER** [1] - 2:8
**belongs** [1] - 24:3
**best** [1] - 26:22
**between** [1] - 18:5
**beyond** [1] - 26:14
**BIDDLE** [1] - 2:4
**bit** [2] - 14:20, 24:22
**blanche** [1] - 17:10
**blatantly** [1] - 13:6
**block** [2] - 10:7, 16:9
**blocks** [8] - 6:3, 6:19, 6:20, 7:11, 9:11, 9:12, 9:13
**BLOOD** [2] - 1:20, 1:20
**bring** [1] - 21:23
**built** [1] - 21:15
**burden** [8] - 4:19, 4:25, 5:1, 10:16, 10:18, 10:24, 11:9, 11:20
**burdensome** [1] - 11:17
**business** [2] - 10:20, 25:4
**BY** [11] - 1:15, 1:16, 1:18, 1:20, 2:4, 2:6, 2:8, 2:10, 2:11, 2:14, 2:15

## C

**CALIFORNIA** [1] - 1:20
**candidly** [1] - 18:18
**cannot** [1] - 4:21
**care** [2] - 6:10, 10:21
**carte** [1] - 17:9
**case** [5] - 4:24, 13:8, 23:1, 23:20, 25:9
**cases** [1] - 15:2
**CCR** [3] - 1:24, 3:14, 28:24
**centers** [1] - 5:24
**certain** [1] - 6:25
**certainly** [3] - 9:16, 25:21, 25:24

**Certificate** [1] - 28:24
**CERTIFIED** [1] - 3:8
**Certified** [1] - 28:7
**certify** [2] - 28:8, 28:13
**cetera** [1] - 6:3
**chain** [3] - 7:1, 7:2, 11:23
**checkoff** [1] - 25:8
**CHRIS** [1] - 1:17
**CHRISTOPHER** [1] - 1:18
**circumstance** [2] - 22:3, 26:11
**circumstances** [5] - 24:8, 24:14, 26:14, 27:4, 27:20
**CIVIL** [1] - 1:2
**clarification** [1] - 16:6
**CLARKSON** [1] - 1:8
**Class** [1] - 1:21
**CLERK** [2] - 4:4, 27:24
**COHEN** [1] - 1:18
**Committee** [1] - 1:19
**compliance** [2] - 12:14, 19:21
**comply** [1] - 12:15
**concern** [3] - 21:1, 23:19
**concerned** [1] - 16:19
**concluded** [1] - 27:25
**conference** [1] - 6:9
**content** [1] - 19:1
**Continued** [1] - 1:22
**contract** [2] - 12:17, 12:18
**control** [14] - 4:21, 4:25, 8:10, 8:23, 11:9, 11:10, 11:11, 11:15, 14:10, 19:17, 20:11, 25:17, 26:20, 27:16
**controlling** [1] - 27:15
**correct** [4] - 6:11, 16:12, 16:20, 17:1
**cost** [1] - 17:7
**COUGHLIN** [1] - 2:13
**counsel** [7] - 5:8, 24:19, 26:25, 27:7, 27:17, 28:14, 28:16
**Counsel** [1] - 1:21
**country** [2] - 20:12, 25:16
**couple** [1] - 19:19
**course** [2] - 8:19, 20:15
**court** [1] - 4:3
**Court** [13] - 5:10, 11:15,

19:6, 20:2, 21:24, 22:1, 25:10, 25:12, 26:12, 26:24, 28:7
**COURT** [5] - 1:1, 1:25, 3:15, 15:16, 22:5
**COURTHOUSE** [1] - 1:8
**covers** [1] - 5:22
**CRR** [1] - 1:24
**custody** [3] - 7:2, 7:3, 11:23
**cut** [2] - 14:13, 14:25

**D**

**D.C** [2] - 2:8, 2:10
**date** [1] - 28:11
**days** [23] - 19:12, 19:15, 19:19, 22:21, 24:5, 24:6, 24:8, 24:13, 24:14, 24:15, 24:16, 25:4, 26:11, 26:14, 26:16, 27:3, 27:9, 27:19
**deadlines** [1] - 5:9
**deal** [2] - 4:12, 4:14
**dealing** [3] - 5:2, 8:2, 14:7
**deals** [1] - 7:25
**dealt** [2] - 4:23, 6:8
**death** [2] - 27:10, 27:13
**decades** [1] - 12:24
**decide** [2] - 17:16, 22:21
**Defendant** [3] - 2:8, 2:12, 2:16
**defendant** [1] - 20:21
**defendants** [11] - 7:18, 7:25, 8:6, 8:18, 9:4, 10:13, 12:9, 14:24, 19:21, 20:9, 27:12
**defendants'** [3] - 10:11, 11:19, 20:17
**department** [1] - 13:14
**departments** [2] - 5:23, 13:6
**destroy** [1] - 23:8
**destructive** [3] - 22:9, 23:6, 23:10
**dialogue** [1] - 9:15
**difference** [1] - 20:4
**different** [1] - 19:3
**differently** [1] - 7:4
**difficult** [2] - 8:21
**directly** [7] - 7:9, 13:1, 13:12, 17:17, 18:9, 18:11, 21:8

**disagree** [1] - 25:10
**disagreement** [2] - 18:5, 18:25
**discussion** [1] - 27:23
**diseases** [1] - 10:22
**dispute** [2] - 7:23, 7:24
**DISTRICT** [2] - 1:1, 1:1
**divide** [4] - 10:16, 11:1, 11:7
**divided** [1] - 11:13
**dividing** [2] - 11:20, 14:1
**division** [1] - 17:6
**domain** [1] - 10:15
**done** [13] - 7:4, 9:19, 12:8, 12:9, 12:17, 13:19, 15:8, 17:13, 19:7, 20:25, 24:1, 24:10, 24:16
**door** [2] - 25:6, 25:7
**DOTRO** [1] - 2:14
**down** [3] - 6:14, 11:25, 16:18
**DRINKER** [1] - 2:4
**DUFFY** [1] - 2:13
**duty** [2] - 22:25, 23:1

**E**

**early** [1] - 12:11
**EAST** [1] - 1:9
**effectively** [1] - 15:21
**effort** [1] - 26:22
**efforts** [1] - 26:19
**either** [4] - 11:16, 15:1, 16:19, 19:20
**employee** [2] - 28:14, 28:16
**enforce** [1] - 26:24
**ensured** [1] - 13:4
**entered** [1] - 5:21
**entertained** [1] - 9:16
**entire** [1] - 14:8
**entitled** [1] - 7:18
**ENTITLED** [1] - 3:10
**enumerable** [1] - 19:9
**equally** [3] - 10:17, 11:1, 11:14
**error** [2] - 20:1, 24:23
**ESQUIRE** [13] - 1:15, 1:16, 1:17, 1:18, 1:20, 2:4, 2:5, 2:6, 2:8, 2:10, 2:11, 2:14, 2:15
**ESQUIRES** [11] - 1:14, 1:16, 1:18, 1:20, 2:4,

2:6, 2:7, 2:9, 2:11, 2:13, 2:15
**essentially** [1] - 15:20
**et** [1] - 6:3
**evidence** [4] - 7:22, 9:1, 9:4, 9:5
**eviscerating** [1] - 24:4
**exactly** [2] - 8:8, 25:18
**existence** [1] - 11:4
**expect** [1] - 27:12
**expensive** [1] - 5:1
**experience** [4] - 5:17, 9:10, 15:19, 16:13
**expert** [16] - 5:15, 7:8, 7:9, 7:13, 10:10, 10:11, 11:18, 11:19, 11:24, 13:23, 15:5, 15:9, 17:17, 21:8, 21:12
**experts** [7] - 5:2, 7:19, 8:4, 9:3, 15:3, 17:9, 23:15
**extent** [2] - 4:18, 5:22
**extenuating** [6] - 24:7, 24:12, 24:14, 26:11, 27:4, 27:20

**F**

**facilities** [9] - 6:5, 8:11, 9:7, 9:18, 10:19, 12:15, 13:5, 20:11, 22:7
**facility** [42] - 4:20, 5:19, 6:2, 6:18, 7:4, 7:6, 7:9, 7:11, 8:3, 8:10, 8:13, 9:20, 9:25, 10:4, 10:12, 11:11, 11:16, 12:14, 12:18, 12:22, 13:10, 13:20, 13:22, 14:5, 14:9, 14:10, 14:16, 15:13, 16:4, 17:13, 18:9, 18:12, 18:15, 20:5, 20:6, 20:7, 20:19, 23:3, 24:19, 24:23
**facility's** [2] - 10:15, 18:10
**fact** [5] - 5:20, 7:17, 15:7, 16:8, 24:18
**fail** [1] - 22:6
**fail-safe** [1] - 22:6
**family** [2] - 27:10, 27:13
**far** [1] - 22:13
**FIELD** [1] - 2:15
**final** [1] - 22:24
**financially** [1] - 28:17

**finish** [1] - 21:20
**firm** [5] - 7:7, 8:24, 17:12, 17:16
**FIRM** [1] - 2:11
**firm's** [1] - 9:10
**firms** [6] - 7:5, 8:25, 17:14, 18:8, 25:13, 25:15
**first** [4] - 5:9, 5:15, 27:5, 27:9
**FISHER** [1] - 1:8
**flexibility** [1] - 26:8
**FLOM** [1] - 2:7
**folks** [3] - 4:9, 17:6, 24:9
**followed** [1] - 13:4
**FOLLOWING** [1] - 3:8
**FOR** [1] - 1:1
**foregoing** [1] - 28:9
**form** [2] - 25:3, 25:8
**forth** [5] - 9:2, 19:5, 19:6, 19:16, 28:12
**forward** [3] - 22:14, 22:18, 26:6
**frankly** [6] - 5:4, 7:22, 8:19, 9:4, 18:18, 24:20
**FRAZIER** [6] - 2:6, 10:14, 15:23, 21:17, 22:24, 26:23
**Frazier** [2] - 19:3, 27:9
**FREDA** [1] - 1:11
**friends** [1] - 8:3
**front** [4] - 12:12, 13:11, 17:22, 18:18

**G**

**generally** [1] - 9:20
**generated** [1] - 5:18
**GEREL** [1] - 1:16
**given** [3] - 15:24, 17:9, 20:2
**Goodman** [1] - 20:14
**GOODMAN** [16] - 1:11, 4:8, 6:8, 9:6, 10:3, 10:9, 11:15, 16:23, 17:2, 17:25, 18:22, 22:6, 22:23, 23:14, 23:24, 27:2
**Goodman's** [1] - 13:16
**GORDON** [1] - 2:15
**guess** [3] - 5:12, 17:11, 21:17
**guidelines** [1] - 27:15

**guiding** [1] - 26:18

**H**

**half** [38] - 8:2, 8:3, 8:7, 8:16, 10:6, 10:9, 10:10, 11:2, 11:12, 11:17, 11:18, 11:22, 14:2, 14:8, 14:9, 14:23, 14:25, 15:3, 15:12, 15:21, 15:22, 16:1, 16:3, 16:4, 16:25, 17:2, 17:8, 20:19, 20:20, 21:2, 21:3, 21:6, 23:2, 23:5
**hands** [1] - 24:9
**HARDY** [1] - 2:6
**health** [1] - 9:21
**hear** [3] - 4:13, 4:16, 5:3
**HEARING** [1] - 1:5
**hearing** [1] - 11:24
**help** [1] - 26:24
**hereby** [1] - 28:8
**hereinbefore** [1] - 28:11
**hold** [7] - 6:1, 6:6, 8:15, 11:1, 11:12, 13:14, 14:16
**home** [2] - 12:23, 18:15
**honestly** [1] - 4:17
**Honor** [9] - 5:6, 8:20, 12:4, 13:11, 17:11, 22:11, 26:10, 26:13, 26:23
**HONORABLE** [2] - 1:11, 1:11
**honoring** [1] - 9:18
**Honors** [4] - 5:20, 8:22, 21:25, 22:20
**hook** [1] - 13:21
**hope** [1] - 8:13
**hospital** [10] - 6:18, 13:21, 14:15, 15:18, 16:14, 17:19, 20:23, 21:1, 21:11
**hospitals** [1] - 5:24
**house** [4] - 13:24, 13:25, 14:5, 17:18
**houses** [2] - 12:19, 12:22
**housing** [2] - 17:13, 18:12
**HURST** [1] - 1:20

**I**

**ideally** [2] - 6:19, 8:8

**identified** [2] - 6:23, 13:18
**identifying** [1] - 10:22
**ignorant** [1] - 13:7
**Imerys** [1] - 2:16
**immediately** [1] - 12:21
**impede** [1] - 23:22
**important** [1] - 23:21
**impossible** [1] - 27:11
**IN** [2] - 1:4, 3:9
**inclination** [1] - 27:19
**independent** [2] - 11:21, 11:22
**indicated** [1] - 25:23
**individual** [1] - 16:15
**information** [1] - 24:24
**initiating** [1] - 7:16
**interested** [1] - 28:17
**Interim** [1] - 1:21
**interrupt** [1] - 5:7
**involved** [2] - 4:18, 7:13
**involves** [1] - 7:22
**involving** [1] - 18:20
**IS** [1] - 3:8
**issue** [9] - 4:14, 4:18, 13:16, 14:11, 15:17, 17:20, 19:14, 21:8, 22:13
**issues** [3] - 12:1, 12:14, 27:1
**itself** [1] - 20:23

**J**

**Jersey** [1] - 28:8
**JERSEY** [4] - 1:1, 1:18, 2:5, 2:14
**JOHN** [1] - 2:8
**JOHNSON** [2] - 1:4
**Johnson** [2] - 2:8
**JUDGE** [39] - 4:5, 4:7, 4:8, 6:8, 9:6, 10:3, 10:9, 11:15, 13:15, 13:18, 13:25, 14:4, 14:21, 15:6, 15:20, 15:25, 16:7, 16:17, 16:21, 16:23, 17:2, 17:25, 18:22, 20:13, 20:16, 21:19, 22:6, 22:23, 23:4, 23:8, 23:13, 23:14, 23:24, 24:18, 25:3, 25:14, 25:19, 27:2, 27:22
**Judge** [3] - 13:16, 17:3,

20:14
**JULIE** [1] - 2:5
**JUNE** [1] - 1:6
**June** [1] - 4:9

**K**

**KATHLEEN** [1] - 2:6
**keep** [1] - 6:2
**kept** [1] - 15:3
**kind** [4] - 4:24, 8:23, 21:5, 26:20
**kinds** [1] - 9:19
**kink** [1] - 14:20
**kinks** [1] - 17:21

**L**

**lab** [4] - 5:19, 11:22, 12:13
**laid** [1] - 7:23
**last** [2] - 6:9, 20:4
**law** [4] - 7:5, 7:7, 17:14
**lawyer** [1] - 24:25
**lawyers** [2] - 12:9, 12:18
**layer** [1] - 21:5
**layers** [1] - 21:14
**learned** [1] - 9:23
**least** [4] - 8:7, 11:8, 14:17, 23:2
**leeway** [1] - 20:1
**legal** [1] - 13:6
**LEIGH** [1] - 1:15
**letter** [7] - 4:9, 5:4, 7:3, 8:15, 9:22, 13:10, 13:12
**letters** [3] - 10:1, 13:5, 13:9
**level** [1] - 23:14
**life** [1] - 5:13
**limits** [1] - 19:4
**line** [1] - 16:19
**litigation** [3] - 10:20, 12:5
**litigations** [1] - 18:19
**loathed** [1] - 16:14
**location** [1] - 17:5
**LOCKE** [1] - 2:10
**logistics** [1] - 12:2
**LOIS** [1] - 1:11
**look** [4] - 5:16, 7:18, 8:4, 9:5
**looked** [2] - 7:19, 12:20
**looking** [1] - 26:17
**LORNA** [1] - 2:14

**M**

**maintain** [5] - 8:7, 10:5, 20:20, 21:3, 21:6
**maintained** [2] - 10:11, 14:6
**mantra** [1] - 25:24
**margin** [2] - 20:1, 24:23
**MARKETING** [1] - 1:5
**material** [6] - 6:7, 8:2, 8:5, 8:8, 12:12, 25:5
**materials** [12] - 4:17, 4:19, 6:21, 6:25, 7:19, 7:21, 8:16, 10:8, 12:23, 12:24, 15:4, 25:9
**matter** [2] - 16:24, 23:9
**MATTER** [1] - 3:10
**MDL** [1] - 19:17
**MEAGHER** [1] - 2:7
**mean** [1] - 21:23
**mechanism** [1] - 23:23
**medical** [13] - 5:19, 5:24, 6:18, 8:13, 9:13, 9:14, 9:18, 9:20, 12:13, 12:15, 13:5, 18:14, 20:11
**meet** [1] - 26:3
**mesh** [2] - 12:5, 13:3
**mess** [2] - 18:2, 18:4
**message** [1] - 19:25
**MICHELLE** [1] - 1:16
**might** [2] - 6:2, 16:9
**ministerial** [2] - 24:17, 25:11
**moment** [1] - 12:20
**month** [2] - 25:1, 26:2
**most** [3] - 9:17, 18:19, 24:2
**motion** [2] - 19:23, 25:25
**motions** [2] - 19:9, 19:20
**move** [2] - 24:24, 26:25
**moving** [1] - 22:14
**MS** [35] - 5:6, 6:11, 9:9, 10:8, 10:14, 12:4, 13:17, 13:24, 14:3, 14:19, 14:22, 15:14, 15:17, 15:23, 16:3, 16:12, 16:20, 17:1, 17:11, 18:3, 18:23, 20:15, 21:17, 21:22, 22:11, 22:24, 23:7, 23:11, 23:18, 24:20, 25:10, 25:18, 25:21, 26:23, 27:21
**MY** [1] - 3:9

**N**

**need** [14] - 4:13, 4:16, 4:23, 5:17, 6:7, 6:21, 13:7, 14:2, 17:14, 17:18, 20:7, 22:13, 22:14, 27:16
**needed** [1] - 6:9
**needs** [1] - 7:14
**negotiation** [1] - 23:15
**never** [2] - 5:13, 16:18
**new** [1] - 18:15
**New** [1] - 28:8
**NEW** [4] - 1:1, 1:18, 2:5, 2:14
**next** [1] - 26:2
**NJ** [1] - 1:9
**NO** [1] - 1:2
**noted** [1] - 4:6
**NOTES** [1] - 3:9
**notice** [3] - 4:12, 20:20, 22:7
**notices** [1] - 9:8
**notified** [2] - 5:24, 6:5
**notify** [3] - 20:10, 20:18, 25:4
**noting** [1] - 25:7

**O**

**O'DELL** [1] - 1:15
**O'Dell** [1] - 26:20
**O'REARDON** [1] - 1:20
**objection** [1] - 9:7
**obligated** [1] - 21:9
**obligation** [3] - 20:6, 23:4, 26:4
**obligations** [2] - 9:1, 27:7
**obtain** [1] - 11:6
**occasion** [1] - 13:11
**occasions** [4] - 7:10, 13:8, 13:13, 14:24
**OF** [3] - 1:1, 1:4, 3:9
**office** [1] - 9:21
**OFFICIAL** [2] - 1:25, 3:15
**Official** [1] - 28:6
**often** [1] - 7:3
**oftentimes** [1] - 17:16
**once** [1] - 23:15
**one** [15] - 8:7, 8:13, 8:14, 8:20, 9:15, 9:19, 10:6, 10:9, 14:7, 15:7, 16:9, 20:13, 21:23, 22:16,

22:24
**one-half** [3] - 8:7, 10:6, 10:9
**ones** [1] - 11:7
**open** [1] - 4:3
**opinion** [1] - 20:4
**opportunity** [2] - 9:5, 9:16
**oral** [1] - 4:12
**order** [12] - 4:21, 5:21, 7:17, 11:5, 11:16, 12:11, 14:23, 26:24, 27:2, 27:3, 27:6, 27:14
**ordered** [1] - 12:12
**ordering** [1] - 11:3
**outside** [1] - 12:13
**overarching** [2] - 23:19
**own** [3] - 8:10, 9:10, 13:12

**P**

**page** [1] - 23:23
**Paragraph** [1] - 8:1
**PARFITT** [31] - 1:16, 5:6, 6:11, 9:9, 10:8, 12:4, 13:17, 13:24, 14:3, 14:19, 14:22, 15:14, 15:17, 16:3, 16:12, 16:20, 17:1, 17:11, 18:3, 18:23, 20:15, 21:22, 22:11, 23:7, 23:11, 23:18, 24:20, 25:10, 25:18, 25:21, 27:21
**Parfitt** [1] - 11:10
**part** [1] - 15:7
**particular** [1] - 7:24
**parties** [3] - 18:6, 23:22, 28:15
**past** [5] - 9:23, 13:19, 17:24, 18:4, 19:7
**path** [1] - 5:19
**pathology** [20] - 4:10, 4:25, 5:22, 5:23, 6:20, 6:22, 6:23, 6:24, 6:25, 7:19, 8:16, 9:22, 10:8, 10:17, 11:3, 12:7, 12:20, 13:13, 13:14, 14:25
**patient** [1] - 16:15
**patients** [1] - 10:21
**PCPC** [1] - 2:12
**PENNSYLVANIA** [2] - 2:11, 2:15
**people** [4] - 9:13, 9:14,

22:1, 22:16
**perfect** [1] - 26:7
**period** [4] - 6:3, 6:4, 11:5, 18:16
**permits** [1] - 9:3
**personal** [1] - 18:7
**persuaded** [1] - 24:2
**photograph** [3] - 10:18, 10:25, 11:7
**photographed** [1] - 11:14
**photographing** [1] - 11:21
**physician** [2] - 6:23, 16:14
**picking** [1] - 17:3
**piece** [1] - 12:19
**place** [2] - 26:8, 28:11
**PLACITELLA** [2] - 1:18, 1:18
**plaintiff** [5] - 4:20, 8:12, 16:5, 22:7, 22:8
**plaintiff's** [1] - 24:25
**Plaintiffs** [1] - 1:19
**plaintiffs** [12] - 5:14, 6:6, 6:16, 7:16, 10:19, 11:2, 11:6, 11:8, 19:11, 19:25, 26:2, 26:19
**plaintiffs'** [12] - 10:9, 11:18, 11:24, 12:9, 12:18, 19:18, 20:16, 22:25, 24:19, 26:25, 27:7, 27:16
**plan** [2] - 22:4, 22:22
**play** [2] - 12:25, 23:5
**point** [5] - 5:7, 14:14, 16:1, 19:16, 22:24
**portion** [3] - 16:10, 16:24, 17:4
**position** [2] - 20:17
**positions** [1] - 15:8
**possession** [1] - 5:25
**potentially** [1] - 14:23
**POWDER** [1] - 1:5
**power** [1] - 8:23
**practicable** [2] - 19:15, 24:3
**practical** [2] - 4:14, 19:4
**practically** [1] - 20:2
**practice** [2] - 19:23, 25:25
**PRACTICES** [1] - 1:5
**preference** [2] - 18:10,

21:11
**preferences** [1] - 18:8
**prepared** [1] - 7:2
**preservation** [10] - 4:17, 5:21, 7:17, 8:14, 9:8, 13:4, 13:9, 14:14, 14:18, 17:8
**preserve** [9] - 6:6, 8:7, 10:25, 13:20, 21:9, 22:8, 22:25, 23:2, 23:5
**preserved** [4] - 8:2, 8:8, 11:23, 22:10
**preserving** [1] - 4:19
**problem** [8] - 8:6, 8:9, 20:8, 20:10, 20:11, 22:4, 25:11, 27:16
**problematic** [1] - 13:2
**problems** [4] - 11:25, 17:23, 18:1, 19:9
**proceedings** [2] - 27:25, 28:10
**process** [12] - 6:12, 7:2, 7:16, 7:20, 13:3, 19:9, 22:15, 22:18, 23:12, 23:22, 24:21, 26:8
**PRODUCTS** [1] - 1:5
**progress** [1] - 21:24
**protocol** [8] - 4:10, 7:24, 8:19, 9:3, 17:21, 17:22, 18:6, 18:7
**provide** [1] - 6:19
**provides** [2] - 12:23, 13:22
**providing** [1] - 9:12
**PURSUANT** [1] - 3:7
**pushback** [3] - 9:7, 9:10, 9:11
**put** [4] - 10:15, 14:19, 20:20, 22:7
**PVC** [1] - 26:20

**Q**

**quarrel** [3] - 18:20, 19:10, 19:11
**questions** [2] - 5:4, 5:8
**quickly** [1] - 24:24

**R**

**raises** [1] - 5:4
**rather** [2] - 10:15, 21:12
**RE** [1] - 1:4
**read** [1] - 15:7

**really** [8] - 10:20, 16:12, 19:4, 19:13, 21:2, 24:17, 26:5, 27:15
**reason** [1] - 27:8
**REATH** [1] - 2:4
**receipt** [1] - 25:5
**receive** [1] - 19:20
**received** [1] - 25:9
**receiving** [1] - 8:11
**recognize** [1] - 23:20
**reconcile** [1] - 5:11
**record** [3] - 4:7, 27:22, 27:23
**recourse** [2] - 27:5, 27:9
**REES** [1] - 2:15
**refused** [1] - 7:11
**regard** [7] - 4:10, 5:9, 5:12, 9:1, 9:11, 20:4, 23:25
**relative** [2] - 28:13, 28:16
**release** [1] - 17:5
**relevant** [3] - 6:15, 6:23, 7:21
**remember** [1] - 11:2
**report** [2] - 6:22, 6:24
**REPORTER** [2] - 1:25, 3:15
**Reporter** [2] - 28:7
**represent** [2] - 8:22, 19:5
**request** [13] - 5:15, 5:18, 6:7, 6:25, 8:15, 15:12, 17:17, 18:9, 20:5, 20:21, 20:23
**requested** [4] - 7:10, 12:10, 12:21, 22:2
**requests** [9] - 6:14, 6:17, 8:10, 8:11, 8:14, 9:19, 9:24, 12:6, 13:7
**requisite** [1] - 8:25
**response** [1] - 17:11
**responsibility** [1] - 14:15
**retaining** [1] - 16:11
**return** [1] - 17:20
**returned** [1] - 18:10
**review** [1] - 9:3
**rid** [1] - 12:24
**rise** [2] - 4:4, 27:24
**risk** [1] - 9:21
**road** [1] - 12:1
**ROTH** [1] - 1:18
**RPR** [1] - 1:24
**run** [1] - 20:8
**running** [1] - 27:12

**S**

**Russoniello** [4] - 3:14, 28:6, 28:23, 28:24
**RUSSONIELLO** [2] - 1:24, 3:14

**S/Vincent** [2] - 3:14, 28:23
**safe** [1] - 22:6
**SALES** [1] - 1:5
**sample** [4] - 21:7, 21:9, 21:16, 22:8
**save** [1] - 8:3
**saved** [2] - 8:17, 14:23
**section** [1] - 7:25
**SECTION** [1] - 3:7
**Section** [1] - 8:1
**sections** [1] - 5:23
**seeing** [1] - 7:15
**send** [11] - 6:17, 6:24, 7:9, 9:20, 9:22, 9:24, 10:6, 11:22, 13:12, 18:15, 25:8
**sends** [1] - 7:7
**sense** [1] - 14:14
**sent** [16] - 4:9, 7:6, 8:16, 9:8, 10:11, 12:21, 13:5, 13:9, 13:10, 13:20, 14:8, 15:3, 15:4, 15:5, 15:12, 17:18
**separate** [4] - 9:22, 9:24, 13:19, 17:5
**set** [6] - 7:20, 9:2, 19:5, 19:6, 19:22, 28:11
**setting** [1] - 14:16
**SEYFARTH** [1] - 2:9
**share** [1] - 17:7
**SHARKO** [1] - 2:4
**SHAW** [1] - 2:9
**SHERYL** [1] - 2:11
**shift** [1] - 10:18
**SHOOK** [1] - 2:6
**showing** [1] - 26:1
**side** [2] - 10:17, 15:1
**sides** [2] - 7:21, 19:2
**simplify** [3] - 18:24, 22:19, 22:20
**simply** [3] - 13:24, 13:25, 18:8
**single** [1] - 19:18
**sitting** [1] - 18:11
**situation** [1] - 5:13

**situations** [1] - 15:2
**SKADDEN** [1] - 2:7
**SLATE** [1] - 2:7
**slide** [2] - 10:7, 16:9
**slides** [5] - 5:14, 5:16, 5:18, 6:15, 7:12
**smaller** [1] - 25:15
**someone** [3] - 27:8, 27:13, 27:14
**sometimes** [4] - 6:1, 9:15, 13:12, 17:19
**somewhat** [1] - 16:14
**somewhere** [1] - 12:13
**soon** [2] - 19:15, 24:3
**sorry** [1] - 18:22
**sounds** [1] - 15:6
**specific** [2] - 6:15, 13:10
**specifically** [1] - 8:16
**specimen** [6] - 10:5, 11:6, 11:13, 12:20, 14:8, 22:25
**specimens** [6] - 4:25, 11:3, 12:7, 13:3, 14:25, 22:10
**stand** [1] - 26:12
**standing** [2] - 22:1, 25:12
**start** [2] - 5:7, 14:17
**started** [1] - 6:11
**starting** [1] - 4:8
**State** [1] - 28:8
**STATE** [1] - 1:9
**States** [1] - 28:6
**STATES** [2] - 1:1, 1:8
**STATUS** [1] - 1:5
**Steering** [1] - 1:19
**STENOGRAPHIC** [1] - 3:9
**stenographically** [1] - 28:10
**step** [1] - 24:21
**still** [3] - 14:7, 16:1, 16:11
**STREET** [1] - 1:9
**subsequently** [1] - 15:4
**successful** [1] - 9:12
**suggested** [2] - 22:20, 26:3
**suggesting** [1] - 15:11
**supposedly** [1] - 14:1
**SUSAN** [1] - 2:4
**suspect** [2] - 12:9, 26:10
**system** [1] - 19:22

**T**

**Talc** [1] - 2:16
**talks** [1] - 8:1
**terms** [1] - 24:4
**TERSIGNI** [1] - 2:5
**testing** [4] - 22:9, 22:12, 23:6, 23:10
**TEXAS** [1] - 2:6
**THE** [10] - 1:1, 1:11, 1:11, 2:11, 3:7, 3:9, 4:4, 15:16, 22:5, 27:24
**themselves** [1] - 10:19
**they've** [1] - 14:2
**thinking** [3] - 17:4, 26:6
**third** [1] - 13:11
**THOMAS** [1] - 2:10
**THORNTON** [1] - 2:15
**thousands** [2] - 12:6
**three** [2] - 9:25, 13:13
**timeframe** [1] - 24:10
**timing** [4] - 4:11, 18:21, 21:18, 23:25
**TIMOTHY** [1] - 1:20
**TISI** [1] - 1:17
**tissue** [13] - 5:25, 6:2, 6:20, 8:5, 10:4, 10:25, 12:10, 12:19, 13:14, 17:24, 18:20, 22:2, 23:20
**TITLE** [1] - 3:7
**TO** [2] - 3:7, 3:8
**today** [3] - 22:1, 22:14, 25:9
**transcript** [1] - 28:9
**TRANSCRIPT** [2] - 1:4, 3:8
**TRANSCRIPTION** [1] - 3:9
**TRENTON** [1] - 1:9
**trial** [1] - 25:1
**true** [1] - 28:9
**truly** [1] - 24:12
**trying** [11] - 7:13, 7:20, 9:2, 10:22, 12:2, 19:19, 19:22, 22:18, 22:19, 25:2, 26:5
**turn** [3] - 15:14, 15:19, 16:14
**turned** [2] - 15:21, 16:2
**two** [5] - 8:14, 8:15, 13:8, 21:5, 21:14
**type** [1] - 22:12

**typical** [1] - 5:13
**typically** [7] - 4:23, 4:24, 5:12, 5:14, 6:17, 7:15, 19:6

### U

**U.S** [2] - 1:25, 3:15
**U.S.C** [1] - 3:7
**unable** [1] - 21:10
**UNITED** [2] - 1:1, 1:8
**United** [1] - 28:6
**unnecessary** [1] - 19:23
**unreasonable** [1] - 26:18
**unthinkable** [1] - 24:11
**up** [7] - 7:20, 17:3, 19:22, 21:23, 22:13, 22:15, 26:2
**USDJ** [1] - 1:11
**useful** [1] - 9:15
**USMJ** [1] - 1:11
**utilized** [1] - 15:1

### V

**various** [1] - 5:23
**vetting** [1] - 19:16
**Vincent** [2] - 28:6, 28:24
**VINCENT** [2] - 1:24, 3:14
**VIRGINIA** [2] - 1:16, 1:17

### W

**wants** [1] - 17:19
**WASHINGTON** [2] - 2:8, 2:10
**whichever** [1] - 14:5
**whole** [2] - 16:24, 23:14
**willing** [3] - 17:5, 24:6, 24:13
**window** [1] - 24:11
**wish** [3] - 8:4, 12:16, 26:19
**Wolfson** [1] - 17:3
**WOLFSON** [25] - 1:11, 4:5, 4:7, 13:15, 13:18, 13:25, 14:4, 14:21, 15:6, 15:20, 15:25, 16:7, 16:17, 16:21, 20:13, 20:16, 21:19, 23:4, 23:8, 23:13, 24:18, 25:3, 25:14, 25:19, 27:22
**word** [1] - 10:1
**words** [1] - 25:4
**works** [3] - 10:3, 19:22,

21:19

### Y

**years** [1] - 6:3
**yourself** [1] - 19:3