# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | MDL No. 16-2738<br>Judge Freda L. Wolfson<br>Magistrate Judge Lois H. Goodman<br><br>Case No.: 3:16-MD-02738-FLW-LHG |

---

**BRIEF IN SUPPORT OF
JOHNSON & JOHNSON AND
JOHNSON & JOHNSON CONSUMER INC.'S
APPLICATION FOR INJUNCTIVE RELIEF**

---

Susan M. Sharko, Esq.
Stephen R. Long, Esq.
Jack N. Frost, Jr., Esq.
Julie L. Tersigni, Esq.
**DRINKER BIDDLE & REATH LLP**
A Delaware Limited Liability Partnership
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel. 973-549-7000
Attorneys for Defendants,
*Johnson & Johnson and
Johnson & Johnson Consumer Inc.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND .....................................................................2

LEGAL ARGUMENT ..............................................................................6

I.      THIS COURT HAS THE INHERENT POWER TO
        PRELIMINARILY ENJOIN LITIGANTS ACROSS THE
        COUNTRY TO PROTECT EVIDENCE IN THIS AND
        NUMEROUS OTHER ACTIONS. ...............................................6

        a.      The J&J Defendants Are Likely to Prevail on the Merits. ..................8

        b.      The J&J Defendants Will Suffer Irreparable Harm. ..........................10

        c.      The Balancing of Harms Favors the J&J Defendants. ......................12

        d.      Granting Relief Will Not Disserve Public Interest. ..........................13

II.     THE MATERIALS REQUESTED ARE SUBJECT TO
        PROTECTION IN THE MDL UNDER RULE 26. ....................................14

CONCLUSION ......................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T v. Winback & Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994) ........................................................................7, 8

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
   920 F.2d 187 (3d Cir. 1990) .........................................................................7, 8

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
   261 F.3d 355 (3d Cir. 2001) .......................................................................7, 15

*Vitamins Online, Inc. v. Heartwise, Inc.*,
   No. 213CV00982DAKPMW, 2016 WL 1305144 (D. Utah Mar.
   31, 2016), aff'd, No. 2:13-CV-982-DAK, 2016 WL 3747582 (D.
   Utah July 11, 2016) ..........................................................................10, 11, 15

*Winkler v. Eli Lilly & Co.*,
   101 F.3d 1196 (7th Cir. 1997) ..........................................................................7

**Statutes**

28 U.S.C. § 1335 ...................................................................................................15

28 U.S.C. § 1407 .............................................................................................1, 6, 7

**Other Authorities**

Fed. R. Civ. P. 4(n) ...............................................................................................15

Fed. R. Civ. P. 26(c) ................................................................................................6

Rule 3.4(a) .............................................................................................................15

Rule 26 ...............................................................................................................2, 14

## INTRODUCTION

Defendants, Johnson & Johnson and Johnson & Johnson Consumer Inc. (the "J&J Defendants"), submit this brief in support of their request for this Court to take constructive possession and control of certain historical Artifacts (defined below) owned and in the possession of the J&J Defendants in New Brunswick and their counsel that may contain evidence related to the claims pertaining to Johnson's® Baby Powder until a procedure regarding the fair allocation among thousands of litigants in these MDL actions and others across the country may be implemented regarding the need for destructive testing of the limited amount of materials that may be contained within the Artifacts.

This Court has jurisdiction to take constructive possession and control over these Artifacts in order to effectuate said orderly process of distribution and testing in coordination with the interested state and federal courts, as the Artifacts are subject to the discovery process in this MDL, within this Court's physical jurisdiction and within the jurisdiction of this case.  Additionally, pursuant to 28 U.S.C. § 1407, this Court has power to temporarily enjoin any action related to these Artifacts to ensure that discovery is used properly as an evidence gathering tool.

Because of discovery demands and statements made by plaintiffs' counsel in this MDL and cases pending in several state courts (including California, New Jersey and Illinois), as well as the pending *ex parte* action in California seeking to

compel immediate production of the Artifacts, it is certain that, if produced, these Artifacts would be the subject of destructive testing.  Plaintiffs contend the results of this testing may be evidence and further contend the results may be used to support expert witness testimony in this action and in thousands of pending actions and future actions here and in courts across the country.  It is equally clear that there is not nearly enough material contained within the Artifacts available to satisfy all of the anticipated demands for production and destructive testing.

The J&J Defendants, therefore, seek to avoid potential exhaustion of the materials that may be contained in these Artifacts by way of a Preliminary Injunction and Protective Order pursuant to Rule 26, maintaining the status quo until a uniform and orderly process for allocating a portion of the contents of the materials contained in the Artifacts for destructive testing by parties, including by the J&J Defendants, involved in all actions against the J&J Defendants related to their talcum powder products can be implemented.

## **FACTUAL BACKGROUND**

The J&J Defendants are parties to thousands of cases venued in this MDL, as well as to thousands of additional cases that are not.  Declaration of Kathleen Frazier dated August 15, 2017 ("Frazier Decl.") ¶ 2.  As part of the MDL, during an August 2, 2017 meet and confer call, plaintiffs' counsel informed counsel for the J&J Defendants that the MDL plaintiffs will require samples of talc for

testing. *Id.* ¶ 3.  The Artifacts are the relevant "samples" they requested.  *Id.* ¶ 4. In addition to these requests in the MDL, the J&J Defendants have received requests to submit the materials that may be contained in the Artifacts for destructive testing in at least twelve pending cases. *Id.* ¶ 5.  In one such case, plaintiff's counsel has even filed for *ex parte* relief in the Superior Court of the State of California for the County of Los Angeles, demanding the immediate release of materials within the Artifacts.[1]  If this request is granted, it will eliminate the ability for plaintiffs in this MDL to test the materials.  It will also eliminate the J&J Defendants' ability to test the materials and the Johnson & Johnson Museum's (defined below) ability to maintain these invaluable Artifacts related to a historical product that has been on the market for 125 years.

The Artifact containers are relatively small and the materials contained within are even more limited. *Id.* ¶ 7.  Consequently, based on J&J Defendants' understanding of the necessary testing procedures, they contain insufficient amounts of material to satisfy the destructive testing demands and needs of all of the thousands of current litigants, to say nothing of the value of the property to the J&J Defendants or future claimants. *Id.* ¶ 8.

For purposes of identification, the Artifacts fall into two categories.  The first set is in the in the possession and control of the J&J Defendants as part of a

---

[1] *Herford v. AT&T Corp., et al.*, J.C.C.P. No. 4674

3

collection of artifacts in a museum maintained by the J&J Defendants and located in New Brunswick, New Jersey that houses historical artifacts related to Johnson & Johnson products, including the Artifacts at issue in this application (the "Johnson & Johnson Museum").  *Id.* ¶ 10.  These Artifacts are inventoried in Exhibit A to the Declaration of Kathleen Frazier, Esq. (the "US Artifacts").  The US Artifacts are kept in secure areas of the Johnson & Johnson Museum under lock and key. *Id.* ¶ 13.  They are also maintained in a controlled physical environment in "museum" condition; that is, they are kept in a climate controlled, acid free environment.  *Id.*  Obtained from a variety of sources, including donations from consumers and employees from unknown timeframes and from unknown points of origin, the J&J Defendants cannot identify the sources of many of the US Artifacts, nor can the conditions under which the US Artifacts were maintained, used or stored be confirmed for the periods before their possession by the Johnson & Johnson Museum.  *Id.* ¶ 14.  Some appear to contain materials, but the exact composition of these materials is not known to the J&J Defendants.  *Id.* ¶ 12.

The second set of Artifacts was located in the personal possession of a former employee of the J&J Defendants, Dr. John Hopkins, at this home in the United Kingdom, which Artifacts are in the possession of the J&J Defendants' counsel here in New Jersey.  *Id.* ¶ 16.  These Artifacts were previously housed as part of a collection of artifacts in a museum maintained by J&J Ltd., the J&J

Defendants' UK subsidiary, in its museum which was decommissioned in 2000. *Id.* ¶ 17. These Artifacts are inventoried in Exhibit B to the Frazier Decl. (the "UK Artifacts", and collectively with the US Artifacts, the "Artifacts"). As a result, there is no way to verify the chain of custody, usage or storage particulars for any of the Artifacts. Again, the exact composition of the materials contained in these Artifacts is not known to the J&J Defendants. *Id.* ¶ 18.

Indeed, the J&J Defendants have no information regarding the source, nature (that is, whether any of the Artifacts even contain what it is purported to be, Johnson's® Baby Powder) and quantity of the materials that may or may not be contained in some or all of the Artifacts.[2] *Id.* ¶¶ 14, 19.

Under these circumstances, a preliminary injunction and protective order is required to maintain the status quo until a uniform and orderly process of allocating a portion of the contents of the Artifacts for destructive testing by parties involved in actions against the J&J Defendants can be established. The J&J Defendants submit that this Court is in the best position to coordinate among the

_____

[2] Moreover, the relevancy of some of the Artifacts to these cases is suspect. Some of the Artifacts are from time periods before – some long before – the years of use alleged by any claimant in any of the pending actions across the country. Frazier Decl. ¶ 22. Many of the Artifacts originate from outside of United States and are therefore not connected to any of the thousands of actions across the country. *Id.* ¶ 23. Therefore, any materials that may be present in the Artifacts that either are not Johnson's® Baby Powder, are from time periods outside of the years of use alleged by any of the individual claimants against the J&J Defendants or that originate from outside of the United States are not relevant to any of the pending cases.

several state and federal courts with a legitimate interest to come to an equitable resolution. This Court should, therefore, issue an injunction to preserve the status quo and, thereafter, work with the interested state and federal courts to amicably find a solution to this conflict.

## **LEGAL ARGUMENT**

### I. **THIS COURT HAS THE INHERENT POWER TO PRELIMINARILY ENJOIN LITIGANTS ACROSS THE COUNTRY TO PROTECT EVIDENCE IN THIS AND NUMEROUS OTHER ACTIONS.**

Immediate action is vital because requests for and actions to compel production of the Artifacts have already been made in multiple courts across the country, including informal requests in this Court, creating an imminent threat of depletion of the materials contained in the Artifacts through destructive testing on a first-come, first-serve basis. Not only does this potentially harm plaintiffs across the country, it may also eliminate the J&J Defendants' ability to test materials inside the Artifacts themselves and defend against the thousands of cases in this MDL and the thousands of additional cases throughout the country, not to mention potentially also raising the specter of unfair sanctions against the J&J Defendants. This Court has the authority to enjoin the impending rush into courts across the country, and it should do so in the interest of fairness to all concerned. 28 U.S.C. § 1407; Fed. R. Civ. P. 26(c).

In "consolidated multidistrict litigation [such as this one], where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation[,]" the Court is given the inherent power to enjoin other courts across the county. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365 (3d Cir. 2001) (citing Martin H. Redish, The Anti–Injunction Statute Reconsidered, 44 U. Chi. L.Rev. 717, 754 (1977)). "The districts courts' power to control multidistrict litigation is established by statute, 28 U.S.C. § 1407, and . . . with that power comes the duty to exercise it as efficiently as possible.  An important aspect of that control is to prevent predatory discovery, . . . ensuring that litigants use discovery properly as an evidence-gathering tool, and not as a weapon." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1997) (citations omitted).  Indeed, a "federal court [is expressly empowered] to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory." *Id.* (citations omitted).

A preliminary injunction is appropriate here where the J&J Defendants can establish the following four factors: (1) the likelihood it will prevail on the merits; (2) the extent to which it is being irreparably harmed by the conduct at issue; (3) the extent to which the non-moving party will suffer harm if the injunction is granted and whether the balance of equities favors the plaintiff; and (4) the public interest.  *AT&T v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1426–27 (3d

Cir. 1994) at 1427; *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 191 (3d Cir. 1990).  Each of these four factors is met.

The Artifacts and their contents are potentially material to all of the cases pending in this MDL, all cases pending in jurisdictions throughout the country regarding Johnson's® Baby Powder, and all potential future civil actions.  They are subject to the threat of destruction based on multiple requests for destructive testing, with potentially untoward results for *all* litigants, particularly the J&J Defendants.  If the J&J Defendants are required to surrender all of the Artifacts, they will be foreclosed from their own testing which is necessary to adequately defend the claims against them.  Additionally, the plaintiffs in this MDL and many other cases would lose the right to conduct their own tests of these materials.

Far from being harmed, the individual plaintiffs in this MDL and across the country and their claims would benefit from a fair and uniform allocation of the materials among all litigants.  All of this would serve the public interest.  All of this can be accomplished by coordination among the interested courts and parties.  All that is required for now is a temporary order protecting the status quo.

### a.    The J&J Defendants Are Likely to Prevail on the Merits.

The reason for seeking the injunction is to preserve physical evidence that is material to the pending and future claims.  There are currently more than 5,500 pending cases across the county, including more than 2,000 claims in this MDL

alone.  These numbers grow by the dozens each week, and it is likely additional cases will be brought.  The contents of the Artifacts have already been requested for destructive testing in a number of these cases, including within this MDL.  The Artifacts, however, are potentially relevant to all of the 5,500-plus actions allegedly arising out of the individual plaintiffs' use of the J&J Defendants' talcum powder products and are subject to risk of premature destruction given these numerous requests for destructive testing.  If this testing takes place in any individual case, samples from the Artifacts will not be available for any of the other cases.  There must be relief in these circumstances where the requested testing will result in samples being provided on a first come, first served basis, short-changing the individual plaintiffs, including the claimants in this MDL action, whose interests the Court must protect in overseeing the action.

A preliminary injunction is appropriate under these circumstances where there is the clear risk that a state court will seize control of all of the Artifact materials, give them to the well-coordinated group of plaintiffs' counsel, including the MDL counsel, allowing for testing of the limited materials that will then be used for expert reports analyzing the contents that the J&J Defendants will not be able to address because there will be no materials left.  This cannot be allowed.

### b.      The J&J Defendants Will Suffer Irreparable Harm.

It is indisputable that the proposed testing of the materials would necessarily be "destructive" testing, rendering each tested sample unusable by future litigants. Therefore, absent the requested intervention, any materials in the Artifacts will soon be exhausted by the first requests, resulting in the J&J Defendants' inability to conduct their own testing for their defense and for any alleged contamination. More fundamentally, however, the search for the truth in all of these cases will be hindered if all of the parties do not have access to this potential evidence.  This destruction of the tangible evidence clearly constitutes irreparable harm.

The J&J Defendants have also been threatened by counsel in the MDL and California state court action with spoliation claims related to non-production to them of the materials in the Artifacts.  Frazier Decl. ¶ 24.  Because only so much material exists in each of the Artifacts, providing a portion to any one party will enhance the likelihood of exhaustion of the materials in the absence of a fair allocation among the litigants.  *Id.* ¶ 25.

Actions that beget sanctions clearly create irreparable harm.  In *Vitamins Online, Inc. v. Heartwise, Inc.*, the court imposed sanctions after it concluded that by sending vitamin pills out for testing defendant failed to preserve evidence it had a duty to preserve.  No. 213CV00982DAKPMW, 2016 WL 1305144, at *3 (D. Utah Mar. 31, 2016), aff'd, No. 2:13-CV-982-DAK, 2016 WL 3747582 (D. Utah

July 11, 2016).  Despite its knowledge concerning a lawsuit, defendant provided samples of products to third-party testing facilities to be tested.  The court held that defendant provided these samples after it had a duty to preserve evidence relevant to the action and determined that "by sending the only available samples of many of these batches to be tested, [d]efendant has prevented [p]laintiff from inspecting . . . [p]roducts to prove its false advertising claims."  *Id.*   Under these circumstances, the court concluded that plaintiff was prejudiced by defendant's failure to preserve the evidence as defendant's actions have prevented plaintiff from determining the full scope of its claims.  *Id.*    The J&J Defendants clearly have the duty to preserve any potential evidence related to this action, none more important than the historical Artifacts.

As the J&J Defendants are aware of numerous requests for the Artifacts and additional forthcoming requests, it is necessary to identify not only an equitable resolution regarding the distribution and testing of the limited amount of materials but also the scope of J&J Defendants' duties to preserve the Artifacts in the face of the various requests.  To turn over the Artifacts in one action knowing that the same Artifacts have been requested in various other actions without first attempting to seek a resolution would be unfair all parties involved and would impede plaintiffs' pursuit of the cases as well as the J&J Defendants' defenses.

11

Given the potential for depletion of the materials in the Artifacts through the necessary destructive testing and the threatened spoliation claims if the Artifacts are distributed and destroyed without a fair, Court administered intervention for the good of all, it is beyond dispute that irreparable harm that will befall the J&J Defendants.

Furthermore, the materials at issue are historical Artifacts related to a 125 year old product.  Complete destruction of these materials is detrimental to the history and legacy of J&J Defendants' products and company, as well as the interests of the Johnson & Johnson Museum.

### c.     The Balancing of Harms Favors the J&J Defendants.

Failure to enter an order mandating preservation of the Artifacts until a process can be established for fair distribution of the materials could cause irreparable harm to *all* litigants.  Indeed, maintenance of the status quo until such a process could be implemented between and through the various interested courts and parties would ensure that *no* harm befalls the individual plaintiffs who are claimants in actions against the J&J Defendants.  The requested proposal will allow a consensus among the interested courts as to how to handle the dispute.  It would also, in the end, allow for consensus among the claimant-plaintiffs regarding the testing protocol and make the results available to all.

Regardless of the venue, all plaintiffs with claims based on alleged use of Johnson's® Baby Powder share similar interests among themselves and with the J&J Defendants related to the contents of the Artifacts.  In fact, many of the counsel involved in this MDL are also involved in other actions throughout the country, with plaintiffs' counsel in the various actions working together in coordination to further their administration and management of the cases.  Frazier Decl. ¶ 26. Therefore, not only would *no* harm befall the individual plaintiffs through implementation of the requested order, but it is in their best interests to have a committee formed to present the Court with a consensus approach to handling the testing.  If any state court enters an order without due consideration of the national scope of these cases and the potentially negative impact on thousands of actions, requiring the production of all the materials at issue, as has already been requested, it will deprive litigants and the J&J Defendants of the ability to test these materials themselves, hindering access to this potentially crucial evidence.

It is also in the interests of justice and judicial resources to avoid duplicative disputes and the potential for conflicting and/or competing orders.

### d.    <u>Granting Relief Will Not Disserve Public Interest.</u>

There is no identifiable public interest to be served by the destruction of the materials contained within the Artifacts on a first come, first served basis. Materials in these containers may be evidence that is relevant to these numerous

actions in this MDL and across the country. The destruction of potentially relevant evidence limits those litigants who would have the potential opportunity to use the Artifacts and their contents as part of their case and inevitably puts all parties at risk of an erroneous or mistaken judgment, against public interest. The J&J Defendants cannot be put in the position to provide the Artifacts to the first plaintiff who wins the race to another court knowing that thousands of other parties are also interested. Indeed, rules governing the ethical practice of law, such as Rule 3.4(a) of the American Bar Association Model Code of Professional Conduct, prohibit lawyers from knowingly destroying, altering or concealing evidence.

Furthermore, the J&J Defendants' proposal to maintain the status quo is in the interest of judicial economy, avoiding duplicative disputes and the potential for conflicting and/or competing orders. Public policy favors the preservation of the Artifacts and their contents, and the Court's imposition of a preliminary injunction pending implementation of an equitable solution regarding testing.

## II.   **THE MATERIALS REQUESTED ARE SUBJECT TO PROTECTION IN THE MDL UNDER RULE 26.**

To accomplish the goals set forth above, the J&J Defendants request that the Court enter an order both granting the preliminary injunction requested above as well as a preliminary protective order governing future distribution of the materials in the Artifacts until an equitable resolution can be achieved in coordination with state and federal courts (and the interested plaintiffs therein) across the county.

These materials are within the jurisdiction of the Court as part of the pending MDL, and this Court has the authority to exercise control over the materials in the Artifacts to oversee this action. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365 (3d Cir. 2001); *see also* Fed. R. Civ. P. 4(n) (allowing that a federal court may take jurisdiction over property in rem); 28 U.S.C. § 1335. Further, given that J&J Defendants have a duty to preserve the Artifacts and the materials that may be contained therein, *see Vitamins Online, Inc. v. Heartwise, Inc.*, No. 213CV00982DAKPMW, 2016 WL 1305144, at *3 (D. Utah Mar. 31, 2016), aff'd, No. 2:13-CV-982-DAK, 2016 WL 3747582 (D. Utah July 11, 2016), these materials require protection from destruction.

Under 26(c)(1) the Court may, for good cause, issue a protective order. The court has flexibility and wide discretion in determining the manner in which to protect the requested discovery, including, among others, forbidding the disclosure or discovery; specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; and prescribing a discovery method other than the one selected by the party seeking discovery. The J&J Defendants request that this Court enter an Order of Protection giving the Court control and constructive possession of the Artifacts, meaning that no action may be undertaken regarding the materials contained within the Artifacts without approval and consent of the Court pending implementation of an equitable solution for the

distribution of the materials in the Artifacts through coordination with the interested courts and parties.

## **CONCLUSION**

For the foregoing reasons, the J&J Defendants request entry of a Preliminary Injunction and Protective Order related to the Artifacts.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

Dated: August 16, 2017          By: */s/ Susan M. Sharko*
                                    Susan M. Sharko, Esq.
                                    Stephen R. Long
                                    Jack N. Frost, Jr.
                                    Julie L. Tersigni
                                    600 Campus Drive
                                    Florham Park, New Jersey 07932
                                    Telephone:  973-549-7000
                                    Facsimile:  973-360-9831
                                    E-mail:  susan.sharko@dbr.com
                                    E-mail:  stephen.long@dbr.com
                                    E-mail:  jack.frost@dbr.com
                                    E-mail:  julie.tersigni@dbr.com

                                    *Of Counsel*

                                    Gene M. Williams
                                    Kathleen Frazier
                                    SHOOK, HARDY & BACON L.L.P.
                                    JPMorgan Chase Tower
                                    600 Travis St., Suite 3400
                                    Houston, TX 77002
                                    Telephone:  713-227-8008
                                    Facsimile:  713-227-9508
                                    E-mail:  gmwilliams@shb.com
                                    E-mail:  kfrazier@shb.com

John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  202-371-7000
Facsimile:  202-661-8301
E-mail:  john.beisner@skadden.com

Attorneys for Defendants
*Johnson & Johnson and*
*Johnson & Johnson Consumer Inc.*

89798527