IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | MDL No. 16-2738<br>Judge Freda L. Wolfson<br>Magistrate Judge Lois H. Goodman<br><br>Case No.: 3:16-MD-02738-FLW-LHG<br><br>**DECLARATION OF<br>KATHLEEN FRAZIER, ESQ.** |

KATHLEEN FRAZIER, of full age, hereby declares the following pursuant to 28 U.S.C. § 1746:

1. I am an attorney-at-law of the state of Texas and am associated with the law firm Shook, Hardy & Bacon, L.L.P., counsel for Johnson & Johnson and Johnson & Johnson Consumer Inc. (the "J&J Defendants"). The facts stated in this Declaration are true of my own personal knowledge, except as to any matters stated on information and belief, and as to those matters, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the facts contained herein. I submit this Declaration in support of the J&J Defendants' motion for a preliminary injunction and protective order.

2. The J&J Defendants are parties to thousands of cases venued in this MDL, as well as to thousands of additional cases venued across the country that

89844933

are not, all with claims allegedly arising from the plaintiffs' use of the J&J Defendants' talcum powder products, including Johnson's® Baby Powder.

3.   As part of the MDL, during an August 2, 2017 meet and confer call, plaintiffs' counsel informed me and other counsel for the J&J Defendants that the MDL plaintiffs will require samples of the J&J Defendants' talc for testing.

4.   The Artifacts (defined below) that are the subject of this application are the relevant "samples" they requested.

5.   In addition to these requests in the MDL, the J&J Defendants have received requests to submit the materials that may be contained in the Artifacts for destructive testing in at least twelve pending cases.

6.   In one such case, *Herford v. AT&T Corp., et al.*, J.C.C.P. No. 4674, plaintiff's counsel has even filed for *ex parte* relief in the Superior Court of the State of California for the County of Los Angeles, demanding the immediate release of the materials within the Artifacts.

7.   The Artifact containers are relatively small and the materials contained within are even more limited.

8.   Based on our understanding of the necessary testing procedures, the Artifacts contain insufficient amounts of material to satisfy the destructive testing demands and needs of all of the thousands of current litigants, to say nothing of the

value of the property to the J&J Defendants, the Johnson & Johnson Museum or future claimants.

9. For purposes of identification, the Artifacts fall into two categories.

10. The first set are 92 historical artifacts which are containers bearing labels that indicate they once did or were intended to contain Johnson's® Baby Powder. These artifacts are in the in the possession and control of the J&J Defendants as part of a collection of artifacts in a museum maintained by the J&J Defendants and located in New Brunswick, New Jersey that houses historical artifacts related to Johnson & Johnson products, including the Artifacts at issue in this application (the "Johnson & Johnson Museum").

11. These Artifacts are inventoried in a spreadsheet attached hereto as **Exhibit A** and are hereinafter referred to as the "US Artifacts."

12. Identifying data on most of the US Artifacts indicate that the containers date to various times over the last 125 years and originated from various locations around the world. Some appear to contain materials, but the exact composition of these materials is not known to the J&J Defendants.

13. The US Artifacts are kept in secure areas of the Johnson & Johnson Museum under lock and key. They are maintained in a controlled physical environment in "museum" condition; that is, they are kept in a climate controlled, acid free environment.

14. Obtained from a variety of sources, including donations from consumers and employees from unknown timeframes and from unknown points of origin, the J&J Defendants cannot identify the sources of many of the US Artifacts, nor can the conditions under which the US Artifacts were maintained, used or stored be confirmed for the periods before their possession by the Johnson & Johnson Museum.

15. Much is unknown about the US Artifacts, including whether any of them actually contain Johnson's® Baby Powder, talc-based material or anything else. As a result, there is no way to verify the chain of custody, usage or storage particulars for any of the US Artifacts.

16. The second set are 4 historical artifacts which are containers bearing labels that indicate they once did or were intended to contain Johnson's® Baby Powder. These artifacts were located in the personal possession of a former employee of the J&J Defendants, Dr. John Hopkins, at this home in the United Kingdom, which Artifacts are in the possession of the J&J Defendants' counsel here in New Jersey.

17. These Artifacts were previously housed as part of a collection of artifacts in a museum maintained by J&J Ltd., the J&J Defendants' UK subsidiary, which was decommissioned in 2000.

18. Just as with the US Artifacts, the exact composition of the materials potentially contained in the UK Artifacts is not known to the J&J Defendants, nor is the chain of custody determinable prior to the time the containers arrived at the J&J Ltd. museum or in Dr. Hopkins' possession.

19. There is also no information regarding the source, nature (that is, whether the container even contains what it is purported to be, Johnson's® Baby Powder) and quantity of the materials that may or may not be contained in some or all of the containers. As a result, there is no way to verify the chain of custody, usage or storage particulars for any of the UK Artifacts.

20. These Artifacts are inventoried in a spreadsheet attached hereto as **Exhibit B** and are hereinafter referred to "UK Artifacts."

21. The US Artifacts together with the UK Artifacts are hereinafter referred to as the "Artifacts."

22. Moreover, some of the Artifacts are from time periods before – some long before – the years of use alleged by any claimant in any of the pending actions across the country.

23. Many of the Artifacts originate from outside of United States and are therefore not connected to any of the thousands of actions across the country.

24. The J&J Defendants have also been threatened by counsel in the MDL and California state court action with spoliation claims related to non-production to them of the materials in the Artifacts.

25. Because only so much material exists in each of the Artifacts, providing a portion to any one party will enhance the likelihood of exhaustion of the materials in the absence of a fair allocation among the litigants.

26. Many of the counsel involved in this MDL are also involved in other actions throughout the country, with plaintiffs' counsel in the various actions working together in coordination to further their administration and management of the cases.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: August 15, 2017

_____
Kathleen Frazier