## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | **MDL NO. 16-2738 (FLW) (LHG)**<br><br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S APPLICATION FOR INJUNCTIVE RELIEF

*/s/ Michelle A. Parfitt*

Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Rd., Suite 650
Alexandria, VA 22311
Tel: 703-931-5500
Fax: 703-820-1656
mparfitt@ashcraftlaw.com

*/s/ P. Leigh O'Dell*

P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***

*/s/ Christopher M. Placitella*

Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
clpacitella@cprlaw.com
***Plaintiffs' Liaison Counsel***

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION ....................................................................................................1

PROCEDURAL HISTORY .....................................................................................2

ARGUMENT ...........................................................................................................2

    I.    The J&J Defendants Have Failed to Satisfy The Relevant Factors Necessary For Injunctive Relief To Be Granted ...................................2

        A.    The J&J Defendants Are Unable To Show They Are Likely To Succeed On The Merits.................................................................3

        B.    The J&J Defendants Cannot Establish Irreparable Injury ..........6

        C.    The Balance of Harm Favors Plaintiffs ....................................10

        D.    The Requested Relief Will Harm The Public Interest ..............11

    II.    Federal Statutes Preclude The Grant Of The Injunctive Relief Requested ........................................................................................12

CONCLUSION ......................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Adams v. Freedom Forge Corp.*,
    204 F.3d at 475 (3d Cir. 2000)................................................................6

*Alabama v. U.S. Army Corps of Engineers*,
    424 F.3d 1117 (11th Cir. 2005) ..........................................................13

*American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
    42 F.3d 1421 (3d Cir.1994)..................................................................2

*Application of U.S. in Matter of Order Authorizing Use of a Pen Register*,
    538 F.2d 956 (2d Cir. 1976)................................................................13

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*,
    398 U.S. 281 (1970) (emphasis added)......................................... 14, 19

*Bortex Indus. Co. v. Fiber Optic Designs, Inc.*,
    296 F.R.D. 373 (E.D. Pa. 2013) .........................................................10

*Carlough v. Amchem Prods., Inc.*,
    10 F.3d 189 (3d Cir. 1993).................................................... 8, 14, 16

*Castano v. Am. Tobacco Co.*,
    879 F. Supp. 594 (E.D. La. 1995).......................................................14

*Chemical & Indus. Corp. v. Druffel*,
    301 F.2d 126 (6th Cir. 1962)...............................................................13

*Chick Kam Choo v. Exxon Corp.*,
    486 U.S. 140 (1988)............................................................... 14, 15

*Continental Group, Inc. v. Amoco Chemicals Corp.*,
    614 F.2d 351 (3d Cir. 1980)..................................................................6

*Doe v. Banos*,
    416 Fed. Appx. 185 (3d Cir. 2010) .......................................................3

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Eberle v. Harris,*
  2005 U.S. Dist. LEXIS 31885 (D.N.J. Dec. 8, 2005) ........................................11

*Gentry v. Tenn.,*
  2017 U.S. Dist. LEXIS 111390 (M.D. Tenn. July 18, 2017) ...............................9

*Graham v. Teledyne-Continental Motors, Div. of Teledyne Industries, Inc.,*
  805 F.2d 1386 (9th Cir. 1986) ..............................................................................9

*In re Diet Drugs Prods Liab. Litig.,*
  282 F.3d 220 (3d Cir. 2004)........................................................................ 16, 17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  134 F.3d 133 (3d Cir. 1998)................................................................................15

*In re Imprelis Herbicide Mktg. Sales Practices & Prods. Liab. Litig.,*
  2011 U.S. Dist. LEXIS 114579 (D. Del. Oct. 5, 2011) ........................................4

*In re Prudential Ins. Co. Am. Sales Practice Litig.,*
  261 F.3d 355 (3d Cir. 2001)...................................................................... 12, 14, 15

*Kos Pharmaceuticals, Inc. v. Andrx Corp.,*
  369 F.3d 700 (3d Cir. 2004).............................................................................2, 6

*Lyons v. Wall,*
  No. 08-498, 2010 U.S. Dist. LEXIS 139482 (D.R.I. Oct. 26, 2010)....................9

*Morrow v. District of Columbia,*
  417 F.2d 728 (D.C. Cir. 1969) ...........................................................................13

*Nutrasweet Co. v. Vit–Mar Enterprises,*
  176 F.3d 151 (3d Cir.1999)...................................................................................3

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,*
  428 F.3d 504 (3d Cir. 2005)..............................................................................3, 4

*Paramount Film Distributing Corp. v. Civic Center Theatre, Inc.,*
  333 F.2d 358 (10th Cir. 1964) ...........................................................................13

*Patten v. Daoud,*
  12 So. 2d 299 (Fla. 1943)...................................................................................11

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Rosa v. Morvant,*
  2006 U.S. Dist. LEXIS 98462 (E.D. Tex. Jan. 10, 2007)....................................10

*S.E.C. v. Nadel,*
  1991 U.S. Dist. LEXIS 17849 (S.D. Fla. Aug. 28, 1991) ..................................10

*Salaried Retirement Plan v. Nobers,*
  968 F.2d 401 (3d Cir. 1992).................................................................................16

*State ex rel. Okla. Bar Ass'n v. Thompson,*
  2008 OK 89, 194 P.3d 1281 (2008).....................................................................12

*United States v. N.Y. Tel. Co.,*
  434 U.S. 159 (1977).............................................................................................13

*Vitamins Online, Inc. v. Heartwise, Inc.,*
  2016 U.S. Dist. LEXIS 44572 (D. Utah Mar. 31, 2016) ......................................8

*Winkler v. Eli Lilly & Co.,*
  101 F.3d 1196 (7th Cir. 1997) ..................................................................... 12, 19

**Statutes**

18 U.S.C. § 1651 ....................................................................................................13

28 U.S.C. § 2283....................................................................................................14

## **INTRODUCTION**

Plaintiffs, by and through Plaintiffs' Steering Committee, hereby oppose Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Application for Injunctive Relief (Dkt. No. 477).[1]  Johnson & Johnson and Johnson Consumer Inc. (hereinafter "J&J Defendants") seek a ubiquitous preliminary injunction designed to halt discovery in all (federal and state) cases in an effort to force all plaintiffs to proceed without the procedural rights accorded under applicable federal and state laws.  The J&J Defendants do so on the basis of a single, self-serving declaration replete with assumptions and conclusory assertions.  Simply put, as the movants, the J&J Defendants have the burden of proof to obtain injunctive relief.  However, neither applicable law nor constitutional principles underlying our dual federal and state judicial systems permit the Court to hold that the J&J Defendants have met the demanding standards imposed for this Court to grant the relief sought.  **Defendants'** **sweeping request fails to satisfy the evidentiary and legal requirements of Rule 65** **of the Federal Rules of Civil Procedure, is not authorized by the All Writs Act, 18** **U.S.C. § 1651 and is barred by the Anti-Injunction Act, 28 U.S.C. § 2283.**  The J&J Defendants have not met their burden.  Accordingly, Defendants' Motion must be denied.

---

[1]    References to the Brief in Support of Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Application for Injunctive Relief (Dkt. No. 477-1) are referred to herein as "Defs. Memo. __."

## PROCEDURAL HISTORY

By letter dated August 9, 2017, the J&J Defendants requested that this Court enjoin all parties, in all talc-related actions, wherever pending, from any efforts to obtain samples of its Johnson's Baby Powder and Shower-to-Shower products. (Dkt. No. 431). After Plaintiffs filed a response, the J&J Defendant's letter request was denied by the Court and, instead, formal briefing on the issue was Ordered. (Dkt. No. 453). On August 16, 2017, the J&J Defendants filed the present motion, invoking 28 U.S.C. § 1407 and Fed. R. Civ. P. 26 in support of it far-reaching request for a preliminary injunction prohibiting any action, by any "interested party" or state jurist, that could "affect" the product samples delineated in their motion.[2]

## ARGUMENT

I.    **The J&J Defendants Have Failed to Satisfy The Relevant Factors Necessary For Injunctive Relief To Be Granted**

"Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)). "[A] district court may permissibly grant the 'extraordinary remedy' of a preliminary injunction only if '(1) the [movant] is likely to succeed on the merits; (2) denial will result in irreparable

---

[2]    References to the product samples are referred to herein as "Artifacts."

harm to the [movant]; (3) granting the injunction will not result in irreparable harm to the [non-moving party]; and (4) granting the injunction is in the public interest.'" *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (quoting *Nutrasweet Co. v. Vit–Mar Enterprises*, 176 F.3d 151, 153 (3d Cir.1999)). "The burden lies with the [movant] to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers*, 428 F.3d at 508; *see Doe v. Banos*, 416 Fed. Appx. 185, 188 (3d Cir. 2010). The failure of the J&J Defendants to provide sufficient evidentiary support for each of the above-stated elements requires denial of Defendants' request.

## A.  The J&J Defendants Are Unable To Show They Are Likely To Succeed On The Merits

The initial burden for any litigant seeking injunctive relief is the demonstration that they are likely to succeed on the merits of their claim. However, in support of their request for injunctive relief, the J&J Defendants provide only a two paragraph "discussion" containing conclusory assertions regarding the alleged <u>need</u> for the relief sought. Defs. Memo. at 8-9. The J&J Defendants do not point to any actual *claim* they hold in this case, or demonstrate why they are likely to succeed on the merits of that claim.  Instead, the J&J Defendants hypothesize about alleged irreparable harm and improperly conflate the first two required elements for injunctive relief, leaving Defendants with no claim (or proof thereof) sufficient to meet the first element. *See In re Imprelis Herbicide Mktg. Sales Practices & Prods.*

*Liab. Litig.*, Civ. No. 11-624, 2011 U.S. Dist. LEXIS 114579, at *8-8 (D. Del. Oct. 5, 2011) ("Indeed, plaintiffs characterize their 'irreparable harm' as the destruction of evidence they need to prove monetary damages, not any protection they need from being further harmed by the illegality alleged in the complaint. Moreover, plaintiffs admit that they are not 'seeking relief akin to that which they would be entitled only after prevailing in litigation'."). *See also P.C. Yonkers,* 428 F.3d at 510 (holding that a party who offers only speculative proof in support of their claims fails to demonstrate that such claims could succeed on the merits).

Even the "proof" the J&J Defendants present is insufficient to <u>prove</u> anything; it simply recites unsupported assertions that: (a) there are many actions; (b) the Artifacts have been requested "in a number of these cases;" (c) the Artifacts are "potentially relevant" to all cases; and (d) there is a risk that some state court may "seize control" of the Artifacts, provide them to a confederacy of plaintiffs' counsel for testing, and deny the J&J Defendants the opportunity to conduct any testing themselves. Defs. Memo. at 8-9. The J&J Defendants' protestations are not even supported by the only evidence proffered - the Declaration of Kathleen Frazier, Esq. (Dkt. No. 477-2) ("Frazier Decl."). In fact, in the Declaration, Ms. Frazier admits that requests for production of the Artifacts have only been made in twelve (12) pending cases (Frazier Decl. at ¶5), and in only <u>one</u> has formal relief been sought by way of a motion to compel production (*Id.* at ¶6). Far from a "race" to secure

-4-

specimens as characterized by Defendants or an imminent threat to evidence, the J&J Defendants offer nothing concrete to support an assertion of authority over <u>all</u> of the Artifacts at issue.  If fact, the J&J Defendants don't even identify the specific proceedings wherein requests for production of the Artifacts have been made. Finally, there is certainly no evidence that any state court is plotting to conspire with plaintiffs' counsel in an effort to deny the J&J Defendants the ability to conduct testing themselves.[3]  The J&J Defendants' assertion of a "clear risk" requires proof of same, and not merely a "chicken little" unsupported say-so.

Critically, the lynchpin of the J&J Defendants' argument – that the small or limited amount of materials available would be used up by destructive testing – rests solely on the argument of the J&J Defendants' "understanding of the necessary testing procedures."  (Frazier Decl. at ¶ 8).  The J&J Defendants do not even attempt to offer any explanation or delineation of the actual testing methods they claim to be necessary, fail to describe the alleged risks associated with the testing or offer any discussion of potential alternative, non-destructive testing methods that could be used.  The J&J Defendants' statements are nothing more than self-serving hearsay,

---

[3]    *See* Defs. Memo. at 9 ("A preliminary injunction is appropriate under these circumstances where there is the clear risk that a state court will seize control of all of the Artifact materials, give them to the well-coordinated group of plaintiffs' counsel, including the MDL counsel, allowing for testing of the limited materials that will then be used for expert reports analyzing the contents that the J&J Defendants will not be able to address because there will be no materials left.").

and are insufficient to carry the necessary burden. *See Kos Pharms.*, 369 F.3d at 719 (on motion for preliminary injunction, district court must exercise discretion concerning what weight, if any to give conclusory affidavits or hearsay materials).

## B.   The J&J Defendants Cannot Establish Irreparable Injury

Defendants' failure to establish irreparable harm provides another independent reason to deny the motion. The Third Circuit has "repeatedly insisted that the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." *Adams v. Freedom Forge Corp.*, 204 F.3d at 475, 487 (3d Cir. 2000). Thus, "the risk of irreparable harm must not be speculative." *Id.* at 488. Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. *See Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (denying injunctive relief where movant failed to present evidence of a clear showing of immediate irreparable harm).

In an effort to demonstrate an irreparable injury, the J&J Defendants reiterate their assertion that the Artifacts will be lost through testing, but intensify the alleged harm by shifting from one "based on counsel's understanding," to a position that it is "indisputable that the proposed testing of the materials would necessarily be 'destructive' testing rendering each tested sample unusable by future litigant." Defs.

Memo. at 10 (emphasis added). Again, however, the J&J Defendants provide no actual evidentiary support for this assertion.  The J&J Defendants' allegation of irreparable harm is premised on nothing more than "fear and apprehension," an insufficient basis upon which to impose injunctive relief, much less an injunction impacting hundreds of cases and thousands of claimants.[4] The J&J Defendants state that the testing by the California litigant will be destructive, but provide no evidence of the testing protocol that is contemplated.

Contrary to the assumptive statements provided in the Frazier Declaration, the MDL plaintiffs have not yet formally requested the production of the subject Artifacts. And, while Plaintiffs anticipate that testing of the Artifacts will be required, and have so indicated to the J&J Defendants, Plaintiffs are still discussing various issues surrounding the types of testing to be performed, the number of tests necessary, and the amount of product per sample that that will be required, among other factors.  For example, although the J&J Defendants make much of the fact that

_____

[4]     The Frazier Declaration demonstrates that the J&J Defendants do not face irreparable harm. Defendants claim that: (a) the exact composition of the Artifacts is unknown; (b) the containers are from "various times over the last 125 years and originated from various locations from around the world;" (c) the Artifacts were obtained from a "variety" of sources at unknown times which the J&J Defendants are unable to identify at this time; and (d) many are probably not relevant to the claims of women in the United States courts. (Frazier Decl. at ¶¶12, 14, 15, 18, 22-23).   Far from showing "irreparable harm," the J&J Defendants' speculation supports the denial of the present motion.

there are over 2,000 cases pending in this MDL, they do so while ignoring the likelihood that testing done in the MDL may be done on behalf of all cases, not 2,000 separate times.  Moreover, even if destructive testing were used, the process would still result in a portion of the Artifact being preserved so that the J&J Defendants could perform any testing they deemed appropriate.  If non-destructive testing is utilized, all justification for the asked-for relief evaporates.  The same may hold true for coordinated state court actions (such as in New Jersey and California), thereby significantly reducing the potential threat that the Artifacts will be exhausted.  Each of these factors is a key piece of information necessary to determine whether and to what extent judicial oversight of the Artifacts may one day be necessary.  Until the J&J Defendants are able to articulate any such factors, they fail to establish the required threat to "seriously impair the federal court's flexibility and authority to decide" the matters before it. *See Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 202 (3d Cir. 1993).

The facts outlined in *Vitamins Online, Inc. v. Heartwise, Inc.*, 2016 U.S. Dist. LEXIS 44572 (D. Utah Mar. 31, 2016), a case cited by the J&J Defendants for the premise that they could face spoliation claims, is clearly distinguishable from the present matter.  In *Vitamins Online*, after having been put on notice of the need to preserve the relevant evidence, the defendant undertook its own destructive testing of the product at issue without first providing notice to plaintiffs. Unless the J&J

Defendants intend to undertake their own destructive testing of the Artifacts without first putting Plaintiffs on notice, their reliance on *Vitamins Online* to support a claim of irreparable harm from potential sanctions motions arising from claims of spoliation rings hollow.

Finally, even the speculative loss of potentially relevant evidence does not constitute irreparable harm that justifies injunctive relief. *See Graham v. Teledyne-Continental Motors, Div. of Teledyne Industries, Inc*., 805 F.2d 1386, 1390 (9th Cir. 1986) ("At most, appellant may be deprived of certain evidence that could assist her in litigation. Courts have consistently rejected arguments that deprivation of evidence constitutes a denial of due process."); *Gentry v. Tenn*., 2017 U.S. Dist. LEXIS 111390, at *7-8 (M.D. Tenn. July 18, 2017) ("The plaintiff simply has no evidence, aside from rank speculation, that the Board might destroy evidence the plaintiff needs in order to pursue his lawsuit."); *Lyons v. Wall*, 2010 U.S. Dist. LEXIS 139482, at *3-4 (D.R.I. Oct. 26, 2010) ("As with his previous motion, Plaintiff provides no support for his bald assertions that evidence was destroyed in the past and will likely be destroyed in this case. Thus, Plaintiff has not shown a substantial threat that he will suffer irreparable harm if the requested injunctive relief is not granted."), citing *Rosa v. Morvant,* 2006 U.S. Dist. LEXIS 98462 (E.D. Tex. Jan. 10, 2007) (denying preliminary injunction motion by prisoner to prohibit destruction of medical records by prison officials where plaintiff failed to show

defendants were likely to destroy evidence); *S.E.C. v. Nadel*, 1991 U.S. Dist. LEXIS 17849 (S.D. Fla. Aug. 28, 1991) (denying plaintiff's motion to enjoin defendants from destroying evidence because defendants had a general duty to preserve evidence and plaintiff did not bring forth any evidence suggesting defendants were likely to destroy evidence).

### C.   The Balance of Harm Favors Plaintiffs

In contrast to the lack of harm faced by the J&J Defendants, the harm to be suffered by Plaintiffs should the Court enter the requested injunction is real and immediate. The J&J Defendants are attempting to effectively halt all pending cases, arguing Defendants could not prepare a defense absent testing of the Artifacts, but that any such testing should be prohibited by this Court's order. A preliminary injunction would deny plaintiffs across the country from availing themselves of the law and procedures provided by the various state courts and would prevent those plaintiffs from pursuing their claims and getting their day in court. *See Bortex Indus. Co. v. Fiber Optic Designs, Inc.*, 296 F.R.D. 373, 385 (E.D. Pa. 2013) (noting discovery fights effectively took focus of action away from the merits and "certainly prejudiced FOD from obtaining its day in court, which includes its right to have discoverable material"); *Eberle v. Harris,* 2005 U.S. Dist. LEXIS 31885, at *2 (D.N.J. Dec. 8, 2005) (noting a party "ha[s] a right to have their day in court, and

more and more in American jurisprudence the goal is to have that day sooner rather than later").

In addition, the J&J Defendants completely ignore the very real prospect that some, if not many, of the plaintiffs affected by the proposed injunction could likely die during the interim period while Defendants argue over testing methods, facilities, personnel, procedures, and protocols. <u>That</u> is the irreparable harm to be weighed against the J&J Defendants' desire to preclude access to the Artifacts.

### D.   The Requested Relief Will Harm The Public Interest

Federal Rule of Civil Procedure 1 sets forth the overarching goal of the judiciary: to secure the just, speedy, and inexpensive determination of every action and proceeding.  Each day the J&J Defendants delay facing the claims against them prevents plaintiffs from achieving that goal. Unwarranted delay not only stands in opposition to each Plaintiffs' legitimate interest in the resolution of their personal claims, but also undermines the public interest in the expeditious resolution of the disputes brought before any court. *See Patten v. Daoud*, 12 So. 2d 299, 300 (Fla. 1943) ("The administration of justice in a democracy like ours must respond to the purpose of its creation if public confidence in it is to be retained. To the practical American efficiency in judicial administration means justice with dispatch at minimum expense. A satisfied litigant is the best advertisement a court of justice can have."). This policy of speedy adjudication seeks to maintain "public confidence and

trust in the dignity and integrity of the judiciary." *State ex rel. Okla. Bar Ass'n v. Thompson*, 2008 OK 89, ¶8, 194 P.3d 1281 (2008).

The balance of harms therefore, both between the litigants and to the public interest in general, weigh heavily against granting the instant request.

## II. Federal Statutes Preclude The Grant Of The Injunctive Relief Requested

The J&J Defendants argue that 28 U.S.C. § 1407 gives this Court the authority to grant the instant motion, citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 261 F.3d 355 (3d Cir. 2001) and *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1997). *See* Defs. Memo. at 7.  However, as compared to granting an MDL Court authority over parallel state court actions, both cases analyze the limits placed on transferee courts by the All Writs Act, 18 U.S.C. § 1651, and its analytical companion, the Anti-Injunction Act, 22 U.S.C. § 2283, in the context of the procedural relief sought here—imposition of injunctive relief. *See In re Prudential*, 261 F.3d at 364-66; *Winkler*, 101 F.3d 1201-03.  No doubt, there is a good reason the J&J Defendants sought to evade an analysis of the All Writs and Anti-Injunction Acts; those statutes preclude this Court from granting Defendants' request.

The power through which the Court may grant the injunction requested herein is derived from the All Writs Act, 18 U.S.C. § 1651, which confers on a federal court the authority to issue an injunction <u>only</u> where three requirements are satisfied: (a) issuance of the writ must be "in aid of" this court's jurisdiction, (b) the type of writ

requested must be "necessary or appropriate" to provide such aid to this court's jurisdiction; and (c) the issuance of the writ must be "agreeable to the usages and principles of law." *See* 18 U.S.C. § 1651. It is only when the movant demonstrates that all three requirements are met that the court *may* issue the requested writ (here a nationwide injunction) in the exercise of its discretion. Significantly, the Court is not *required* to do so. *See, e.g.*, *Application of U.S. in Matter of Order Authorizing Use of a Pen Register*, 538 F.2d 956, 961 (2d Cir. 1976), *rev'd on other grounds, United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977); *Morrow v. District of Columbia*, 417 F.2d 728, 736 (D.C. Cir. 1969); *Paramount Film Distributing Corp. v. Civic Center Theatre, Inc.*, 333 F.2d 358, 360 (10th Cir. 1964); *Chemical & Indus. Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962). As noted by the Eleventh Circuit, "the All Writs Act confers on courts 'extraordinary powers' that are 'firmly circumscribed.'" *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1132 (11th Cir. 2005); *see also Castano v. Am. Tobacco Co.*, 879 F. Supp. 594, 597 (E.D. La. 1995) ("It is axiomatic that the All Writs Act is to be construed narrowly.").

Moreover, the limited authority provided by the All Writs Act is further narrowed by the strictures imposed by the Anti-Injunction Act, which prohibits injunctions "to stay proceedings in a State court <u>except</u> as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added). As held by the United

States Supreme Court, and as recognized by this Circuit, these "exceptions are narrow and not to be enlarged by loose statutory construction." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 261 F.3d at, 364 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)).   The Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, <u>unless</u> the injunction falls within one of three specifically defined exceptions.  *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286 (1970) (emphasis added). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Carlough*, 10 F.3d at 202 (*quoting Atlantic Coast Line R.R.*, 398 U.S. at 297).

Here, the J&J Defendants do not satisfy the first exemption to the Anti-Injunction Act because they do not contend that any Act of Congress <u>expressly</u> authorizes the disruption they seek of all state court actions.  Nor can the requested injunction fall within the second of the three exemptions, protecting or effectuating its judgments, as there has been no judgment entered in this action needing "protection." *See Chick Kam Choo*, 486 U.S. at 147 (Anti-Injunction Act exception is "founded in the well-recognized concepts of *res judicata* and collateral estoppel," and thus is "designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court"); *see also In re*

*Prudential*, 261 F.3d at 364 ("An essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in the state proceedings must actually have been decided by the federal court."). Therefore, the J&J Defendants are left to argue only that the Court must enter an injunction "in aid of its jurisdiction" - an exception that is likewise unavailing.

As the Third Circuit explained in affirming the denial of injunctive relief in *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 145 (3d Cir. 1998), the "necessary in aid of its jurisdiction" exception has been limited to three circumstances:

> We are also constrained by the narrow application the "necessary in aid of its jurisdiction" exception has been given. We noted in *Nobers* that "the typical application of this exception has been in removal cases (where a district court must ensure its exclusive governance of the particular litigation removed) and in *in rem* cases (where, under the traditional view, only one court can entertain jurisdiction over a particular res)." Neither the removal nor *in rem* application of this exception is implicated here.

> In *Carlough,* this Court fashioned a third, and narrow, application of the "necessary in aid of its jurisdiction" exception in the context of a complex class action which was also an MDL case where a settlement was imminent; where the federal court had already expended considerable time and resources; and where the pending state action threatened to derail the provisional settlement.[5]

---

[5]     *Citing Salaried Retirement Plan v. Nobers*, 968 F.2d 401, 407 (3d Cir. 1992), and *Carlough*, 10 F.3d at 198.

None of these circumstances are presented here. This is not a case in which the J&J Defendants seek an injunction to ensure this Court has "exclusive governance" of any particular piece of litigation, nor is it an *in rem* action. Nor does this matter fit the narrow "MDL" exception where the court has already expended considerable time and resources and the pending state actions threaten to derail the results achieved by the Court.

The Third Circuit has cautioned that even if the prior resolution of a state court action would deprive an MDL court of the opportunity to determine a parallel action *on the merits*, that—standing alone—is <u>not</u> sufficient to upstage the jurisdiction of the state court. *In re Diet Drugs Prods Liab. Litig.*, 282 F.3d 220, 234 (3d Cir. 2004).

> "The traditional notion is that in personam actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) (plurality opinion). In ordinary actions in personam, "each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court… it may not be sufficient that state actions risk some measure of inconvenience or duplicative litigation. *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985). An injunction may issue, however, where "the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996). <u>In other words, the state action must not simply threaten to reach judgment first, it must interfere with the federal court's own path to judgment.</u>

*282 F.3d at 234* (emphasis added). Instead, the *Diet Drugs* court went on to provide a framework for analysis of the MDL deviation from the statutory bar to jurisdiction.

> Several factors are relevant to determine whether sufficient interference is threatened to justify an injunction otherwise prohibited by the Anti-Injunction Act. First, we look to the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding. Second, we assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action. And finally, we consider principles of federalism and comity, for a primary aim of the Anti-Injunction Act is "to prevent needless friction between the state and federal courts." *Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 9 (1940).

Under this test too, the Defendants' injunction request fails.

This MDL docket is a consolidation of actions which have not yet reached the merits discovery stage. It does not, therefore, fall within the parameters of those cases which the Third Circuit explained would "sufficiently impair" an MDL court's jurisdiction to justify an injunction of state actors. *See In re Diet Drug*, 282 F.3d at 234-35 (discussing actions in which "the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached," and the issuance of injunctions by and MDL court "to protect <u>exclusive</u> federal jurisdiction of a case that has been removed from state court").

The J&J Defendants have not proven, or even substantiated, any risk that the Artifacts may be destroyed or that the results of testing in another suit would be lost

forever. The true heart of the J&J Defendants' motion is an assertion that this Court could lose <u>control</u> over the alleged evidence. Never do Defendants demonstrate why the loss of <u>control</u> of the evidence they delineate would deprive this Court of the <u>power</u> to determine the merits of these cases—which is the standard required by the Act.

The bulk of the J&J Defendants' attack centers on their assertion that loss of control of the artifacts "threatens to frustrate proceedings and disrupt the orderly resolution" of this litigation.  (Defs. Memo. at 7, *citing In re Prudential*). But even *In re Prudential* recognizes that any analysis should focus on whether the state court events threaten to <u>preclude</u> the ability of the MDL court to exercise its own jurisdiction over the issues before it. The ultimate resolution of the pending California discovery dispute in no way threatens the <u>power</u> of this Court to adjudicate any pending or future consolidated pretrial matters, and the J&J Defendants are likewise unable to argue that a specific threat in any other case where no formal motions are pending.

*Winkler* further highlights the distinction.  In *Winkler*, the Seventh Circuit upheld the MDL court's power to issue an injunction meant to "protect the integrity of [its[ discovery order," but only because it found reasonable the MDL court's belief that "plaintiffs were resorting to the state courts for the specific purpose of evading its ruling denying discovery of [a secret] agreement.  *Winkler*, 101 F.3d at

1201.  No order of this Court is challenged by the state court request for Artifacts, and the power of this Court to adjudicate discovery issues that <u>may</u> come before it not impaired.  Nothing posed by the current record request can be said to rise to the level it would "seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coastline R.R.,* 398 U.S. at 295.

Finally, the principles of federalism and comity that underlie the Anti-Injunction Act and its goal of preventing "needless friction between the state and federal courts" urge rejection of the J&J Defendants' motion. Honoring federalism concerns underlying the Act is achieved by rejecting a request to enjoin any state court proceeding unless a clear need is presented. The J&J Defendants' bald assertion that there will be a "nationwide rush for first-come, first-served orders" for production of the Artifacts does not reach the required level of proof of an imminent problem.  A practical evaluation of the facts presented compels a determination that the issuance of an injunction affecting hundreds of actions in dozens of courts nationwide based on the current record constitutes a complete disregard of the constitutional mandates inherent in our dual federal/state court systems, and the doctrine of comity and respect between them.

## <u>CONCLUSION</u>

For all of the reasons outlined above, this Court should deny the injunctive relieve sought by the J&J Defendants.

-19-

August 23, 2017

Respectfully submitted,

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Rd., Suite 650
Alexandria, VA 22311
Tel: 703-931-5500
mparfitt@ashcraftlaw.com

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com

***Plaintiffs' Co-Lead Counsel***

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*