# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | MDL No. 16-2738<br>Judge Freda L. Wolfson<br>Magistrate Judge Lois H. Goodman<br><br>Case No.: 3:16-MD-02738-FLW-LHG |

_____

# REPLY BRIEF FURTHER IN SUPPORT OF
# JOHNSON & JOHNSON AND
# JOHNSON & JOHNSON CONSUMER INC.'S
# APPLICATION FOR INJUNCTIVE RELIEF

_____

Susan M. Sharko, Esq.
Stephen R. Long, Esq.
Jack N. Frost, Jr., Esq.
Julie L. Tersigni, Esq.
**DRINKER BIDDLE & REATH LLP**
A Delaware Limited Liability Partnership
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel. 973-549-7000
Attorneys for Defendants,
*Johnson & Johnson and*
*Johnson & Johnson Consumer Inc.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ..................................................................................................1

ARGUMENT..........................................................................................................2

    I.    THIS COURT SHOULD PROTECT THE ARTIFACTS. .................2

        a.    The J&J Defendants Have Shown Irreparable Harm. ................2

        b.    Balancing of the Harms Favors a Temporary Injunction Maintaining the Status Quo. ......................................................4

        c.    The Requested Relief Will Not Disserve the Public Interest. ........................................................................................5

    II.    THE J&J DEFENDANTS SIMPLY SEEK TO MAINTAIN THE STATUS QUO BY AN ORDER THIS COURT HAS AMPLE AUTHORITY TO MAKE. ....................................................6

    III.    THE ARTIFACTS ARE ENTITLED TO PROTECTION IN THIS MDL UNDER RULE 26. ........................................................8

CONCLUSION ......................................................................................................9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*,
    398 U.S. 281 (1970) ................................................................................................ 7

*Carlough v. Amchem Prods., Inc.*,
    10 F.3d 189 (3d Cir. 1993) ..................................................................................... 7

*Chick Kam Choo v. Exxon Corp.*,
    486 U.S. 140 (1988) ................................................................................................ 7

*In re Diet Drugs Prods Liab. Litig.*,
    282 F.3d 220 (3d Cir. 2004) ............................................................................... 7, 8

*In Re Digitek Litigation*,
    Case No. 283 ........................................................................................................... 8

*In Re Digitek Product Liability Litigation*,
    MDL No. 1968 ........................................................................................................ 8

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    134 F.3d 133 (3d Cir. 1998) ................................................................................... 7

**Other Authorities**

*Daubert* hearing with the MDL ................................................................................... 8

Fed. R. Civ. P. 26(c)(1)(B)-(D) ..................................................................................... 9

Federal Rules of Civil Procedure Rule 1 ..................................................................... 5

## **INTRODUCTION**

Plaintiffs' opposition relies on a vast overstatement of the scope of relief sought. From this false vantage, plaintiffs argue principles of law that simply are not implicated here.

This Court has the authority, and the J&J Defendants have shown the need, for the Court to preserve the status quo with regard to the finite amount of materials that may be contained within the Artifacts pending resolution of the issue of who gets what, when they get it and how they may treat it.

At its core, the J&J Defendants' motion is a request for this Court to press pause and take temporary control and constructive possession of historical Artifacts within its in rem jurisdiction to maintain the status quo and calm the impending stampede to test the materials which may be contained within the Artifacts, which testing will, beyond any rational doubt, exhaust the materials in the Artifacts. Once a process for the fair allocation of the materials and testing methods is determined by a committee of interested parties and approved by this Court,[1] the materials can be distributed for testing without disturbing and, indeed, in aid of all pending actions.

---

[1] Filed herewith is an Alternative Proposed Form of Order submitted by the J&J Defendants setting forth a proposed process for the removal and fair allocation of any materials which may be contained within the Artifacts to the interested parties.

## ARGUMENT

### I. THIS COURT SHOULD PROTECT THE ARTIFACTS.

#### a. The J&J Defendants Have Shown Irreparable Harm.

The harm at stake here is self-evident. A limited number of historical Artifacts potentially related to the very product at issue in these cases (i.e. Johnson's® Baby Powder) and their contents will be exhausted if the materials are provided to all of the plaintiffs who request them on a first-come, first served basis. Such requests, which explicitly call for provision of the materials for destructive testing, have already been made in 12 cases across the country. Moreover, though the cases in which these requests are pending in New Jersey and California are *centralized*, they are not *consolidated*. Each case is being separately prosecuted, managed and scheduled by the courts and the individual litigants. Requests for testing have been and will be made on behalf of the individual plaintiffs. If the J&J Defendants are compelled to produce and exhaust the materials contained in the Artifacts, (1) the J&J Defendants will be harmed in their defense of the cases in this MDL and elsewhere and (2) plaintiffs in this MDL and those at the back of the line in thousands of pending and to-be-filed cases across the country will also be harmed by having no voice in decisions and orders regarding testing that may eliminate their chance to do so.

2

Plaintiffs' opposition even concedes that, while the MDL plaintiffs have not yet formally requested the production of the Artifacts for testing, they do anticipate that testing of the materials within the Artifacts will be required and have so advised the J&J Defendants. Opposition Brief at 7; Frazier Cert. at ¶ 3. Plaintiffs cannot deny that their testing will be destructive. Rather, they state that "if destructive testing were used, the process would still result in a portion of the Artifacts being preserved so that the J&J Defendants could perform any testing they deemed appropriate." Opposition Brief at 8. This uncertain, unsubstantiated assertion by the MDL plaintiffs is a promise to no one and is insufficient to protect the thousands of separate interests at stake here. Moreover, while the MDL plaintiffs are equivocal about the need for destruction, the requests pending in the state court actions are explicitly for destructive testing. Frazier Cert. at ¶ 5. Thus, irreparable harm is not illusory, as plaintiffs argue, but a certainty.

Plaintiffs' assertion that "loss of potentially relevant evidence does not constitute irreparable harm that justifies injunctive relief" is also without merit. Opposition brief at 9. None of the authorities cited by plaintiffs reach that conclusion. Indeed, in the cases cited by plaintiffs there was no evidence whatsoever to show the potential for destruction of evidence. Here such evidence abounds.

3

### b. **Balancing of the Harms Favors a Temporary Injunction Maintaining the Status Quo.**

The J&J Defendants seek nothing more than an order to maintain the status quo until a process can be fashioned, by agreement or otherwise, and implemented between and through the various interested courts and parties. This will ensure that *no* harm befalls the individual plaintiffs. Rather, preservation of the status quo will foster consensus among the interested courts, both state and federal, as to how to handle the competing claims.

The requested pause will allow claimants across the country time to avail themselves of their rights to prosecute and defend their actions and have their day in court. Disallowing such a procedure would only foreclose testing for those claimants who find themselves anywhere but at the front of a long line.

The requested order regarding this discrete issue will not impede the procession of pending cases. To the contrary, the J&J Defendants' proposal allows for more efficient disposition of claims by eliminating the need to litigate the same discovery dispute in various jurisdictions. It will manage the palpable risk that, by a wide margin, there will not be enough materials to go around. The 12 non-MDL plaintiffs who have already requested materials for testing will be required to wait only until a consensus can be reached in this single instance

Plaintiffs' contend that "*some, if not many*, of the plaintiffs affected by the proposed injunction *could likely die* during the interim period while Defendants

4

argue over testing methods, facilities, personnel, procedures, and protocols […]." Opposition Brief at 11 (emphasis supplied). This speculative hyperbole is without merit in the balancing of the hardships analysis. If this argument were true, it should provide good incentive for plaintiffs to move expeditiously to resolve the problem here instead of throwing up artificial legal barriers. The J&J Defendants have offered to provide a sufficient portion of the materials in the Artifacts to plaintiffs in conjunction with the establishment of a process by which all litigants in all cases are served with testing that suits their purposes. This result would stand in contrast to the chaotic scramble that certainly will ensue (and has already begun) if the requested temporary protections are not granted.

### c.   **The Requested Relief Will Not Disserve the Public Interest.**

Rule 1 of the Federal Rules of Civil Procedure sets forth the overarching goal of the judiciary to construe and administer the Rules: ". . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Resolving the issues related to testing of the materials within the Artifacts as the J&J Defendants propose ensures this result. The various parties will not need to fight unnecessary, time consuming and expensive discovery disputes related to the Artifacts in each separate case and jurisdiction only to find in thousands of cases that they are too late because the materials are exhausted. The temporary

5

injunction would provide a time out to allow for coordination between the interested state and federal courts and parties, serving the public interest.

## II. THE J&J DEFENDANTS SIMPLY SEEK TO MAINTAIN THE STATUS QUO BY AN ORDER THIS COURT HAS AMPLE AUTHORITY TO MAKE.

The J&J Defendants do not seek to prejudice the plaintiffs in any way. Instead, the relief requested is designed to benefit the maximum number of individual claimants possible and avoid exhaustion of the materials that may be contained in the Artifacts. To achieve this, the Court should enter the requested order, maintaining the status quo until a uniform and orderly process for allocation of the materials is fashioned for the benefit of all.

Though this Court's power over other courts is not without limits, that power exists nevertheless and should be utilized here. The constellation of cases against the J&J Defendants involve several courts that face the same problem of fairly allocating the Artifacts and their contents. The J&J Defendants are not requesting that this Court permanently enjoin parties or courts from ordering and engaging in discovery or testing. In fact, the J&J Defendants seek the exact opposite of this. The request is for an order, limited in time and scope, to allow the appropriate courts and the parties to resolve the dispute. This request for temporary relief is consonant with principles of comity as it would allow the various courts to work together to come to an equitable resolution, protecting all of

6

the claimants under the various courts' jurisdictions instead of entering competing orders.

None of the cases cited by plaintiffs in opposition involve or even contemplate the issues present in this case. Instead, plaintiffs' cases discuss the limits on a district court's enjoining state courts in the unrelated context of requests for permanent injunctions, injunctions against further proceedings, and injunctions from pursuing opt-outs in class actions. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286 (1970); *In re Diet Drugs Prods Liab. Litig.*, 282 F.3d 220, 234 (3d Cir. 2004); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 202 (3d Cir. 1993); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 145 (3d Cir. 1998). Plaintiffs cite no authority to support a finding that a temporary injunction is inappropriate in the circumstances where a court takes appropriate steps to facilitate coordination on a temporary basis among the state and federal courts to resolve common issues. In fact, in *In re Diet Drugs*, the MDL judge had communicated with and established an informal network of state judges for coordination during certain stages of the litigation. *See*, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20, at 230 (2004).

This is not an unusual approach. "Multiplication of cases across the federal and state systems is a common characteristic of complex litigation." *Id.* When

7

limitations of federal jurisdiction preclude control over the proliferation of cases, "voluntary means may be available to achieve coordination and thereby reduce duplicative activity, minimize the risks of conflict, and avoid unnecessary expense." *Id.* at 240. In these circumstances, state and federal courts "have undertaken innovative efforts to coordinate parallel or related litigation so as to reduce the costs, delays, and duplication of effort that often stem from such dispersed litigation." *Id.* Indeed, joint proceedings to foster state and federal coordination of mass tort proceedings have become routine. For example, in *In Re Digitek Litigation*, Case No. 283, and *In Re Digitek Product Liability Litigation*, MDL No. 1968, the state court judge scheduled a joint *Daubert* hearing with the MDL court, which also was coordinated with state court judges from Pennsylvania, West Virginia, and Texas.

The J&J Defendants' application seeks this same level of judicial coordination, and concomitant party cooperation, to resolve this discovery dispute fairly and efficiently.

### III. THE ARTIFACTS ARE ENTITLED TO PROTECTION IN THIS MDL UNDER RULE 26.

Though not formally requested as yet, plaintiffs have made it clear they will require portions of the materials within the Artifacts for testing, and they do not want to wind up at the end of the line, either. As to the thousands of plaintiffs in this MDL, this Court can and should enter an Order of Protection related to the

limited quantities of materials within these Artifacts, establishing a fair and equitable process by which such materials shall be produced.  *See* Fed. R. Civ. P. 26(c)(1)(B)-(D).

## CONCLUSION

For the foregoing reasons, the J&J Defendants request entry of a Preliminary Injunction and Protective Order related to the Artifacts.

    Respectfully submitted,

    DRINKER BIDDLE & REATH LLP

By: */s/ Susan M. Sharko*
    Susan M. Sharko, Esq.
    Stephen R. Long
    Jack N. Frost, Jr.
    Julie L. Tersigni
    600 Campus Drive
    Florham Park, New Jersey 07932
    Telephone:  973-549-7000
    Facsimile:  973-360-9831
    E-mail:  susan.sharko@dbr.com
    E-mail:  stephen.long@dbr.com
    E-mail:  jack.frost@dbr.com
    E-mail:  julie.tersigni@dbr.com

*Of Counsel*

Gene M. Williams
Kathleen Frazier
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
Telephone:  713-227-8008
Facsimile:  713-227-9508

E-mail:  gmwilliams@shb.com
E-mail:  kfrazier@shb.com

John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  202-371-7000
Facsimile:  202-661-8301
E-mail:  john.beisner@skadden.com

Attorneys for Defendants
*Johnson & Johnson and*
*Johnson & Johnson Consumer Inc.*

89902226

10