# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>This document relates to: ABBEDUTO, ET AL. v. JOHNSON & JOHNSON, ET AL., C.A. No. 1:17-03061 | **MDL NO. 2738 (FLW) (LHG)**<br><br>Hearing Date: October 2, 2017<br>Courtroom: 5E |

**TABLE OF CONTENTS**

I.      SUMMARY OF ARGUMENT………………………………………...………5

II.     FACTUAL BACKGROUND………………………………………..………8

III.    ARGUMENT ………………………………………………………..………9

        A.      Standard For Remand Under 28 U.S.C. § 1447(c)……………………..……9

        B.      Complete Diversity Of Citizenship is Lacking Because Removing
                Defendants have Failed to Clear Their High Hurdle to Show That Plaintiffs
                Fraudulently Joined Walgreens as a Defendant………………………………..9

        C.      735 ILCS 5/2-621 Cannot be the Bases for Dismissal of the Walgreens
                Negligence Counts………………………………………………………12

        D.      Dismissal of the Walgreens Strict Liability Counts is Not Proper under
                Section 5/2-621………………………………………………….……………13

        E.      Even if Dismissal is Proper Under Section 2-621, There is No
                Fraudulent Joinder Because Walgreens Can Be Reinstated at a Later
                Date………………………………………………………...…….............19

IV.     CONCLUSION…………………………………………………………..20

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985)…………………….9

*Best v. Taylor Machine Works*, 179 Ill.2d 367, 467 (1997)……………………………….……12

*Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir.2004)………………………......10

*Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir.2009)……………………………………………...9

*Caterpillar, Inc. v. Usinor Industeel*, 393 F.Supp.2d 659, 684–85 (N.D.Ill. 2005)……………12

*Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir.1995)…………………………….…9

*Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993)…………………………..……9

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

*Harlan v. Johnson & Johnson*, 2015 WL 5121408 (S.D. Ill. Aug. 31, 2015)……………….. 6, 11

*Harris, et al. v. Johnson & Johnson, et al.,* N.D. Illinois, C.A. No. 1:17-02889……. 6, 11, 14, 15

*Harleysville Lake States Ins. Co. v. Hilton Trading Corp.*, 2013 WL 3864244
(N.D.Ill. July 23, 2013)……………………………………………………………….13

*Hurst v. Capital Cities Media, Inc.*, 323 Ill.App.3d 812, 822 (5th Dist. 2001)………………....13

*In re G.O.*, 191 Ill.2d 37, 43 (2000)………………………………………………………...…12

*Kellerman v. Crowe*, 119 Ill. 2d 111, 113 (1987). ……………………………………...…14, 19

*Laroe v. Cassens & Sons*, 472 F.Supp.2d 1041, (S.D. Ill. 2006)……………………………...…16

*Lemoine v. Teva Pharm. Indus*. No. 3:10-cv-20332-DRH-PMF, 2010 WL 4904488, at
*1-2 (S.D. Ill. Nov. 24, 2010)………………………………………………………………15

*Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 572 n. 2
(1st Dist. 2008)………………………………………………………………………...…13

*PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir.1993)……………………………...………9

*Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)…………………………………….9

*Saieva v. Budget Rent-A-Car of Rockford*, 227 Ill. App. 3d 519, 522 (2nd Dist. 1992)…….13, 14

*Steel v. Ford Motor Co.*, No. 11-C-00460, 2011 WL 1485380, at *4……………….…..…..15, 16

*Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987)…………9

*S. Side Trust and Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*, 927 N.E.2d 179,
184 n. 2 (1st Dist. 2010)………………………………………………………………………13

*Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp.2d 926, 936 (N.D.Ill. Feb. 7, 2012)........12, 14

*Williams v. Am. Equip. & Fabricating Corp.*, 2009 WL 5126682, at *1
(C.D.Ill. Dec. 18, 2009)…………………………………………………………………13

*Willyard v. Wal–Mart Stores, Inc.*, 2010 WL 487080, at *1 n. 3 (S.D.Ill. Feb. 8, 2010)………..13

<u>Statutes</u>

28 U.S.C. §1447(c)……………………………………………………………………….5, 6, 8

3
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

28 U.S.C. § 1441(b)……………………………………………………………………….5, 8

<u>State Statutes</u>

735 ILCS 5/2-621……………………………………………………………12, 13, 14, 19

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

**MEMORANDUM  IN SUPPORT OF MOTION TO REMAND**

Pursuant to  28 U.S.C. §1447(c) and for the reasons that follow, this action should be remanded to the Circuit Court of Cook County, Illinois, for lack of subject matter jurisdiction.

## I.        SUMMARY OF ARGUMENT

On March 22, 2017, Plaintiffs filed their Complaint in the Circuit Court of Cook County. *See*, generally, Complaint **Exhibit A**. Plaintiffs allege that Ms. Abbeduto's regular application of Johnson's Baby Powder and/or Shower-to-Shower (the "PRODUCTS") to her perineal region proximately caused her Ovarian Cancer.  **Exhibit A** at 7.  As a direct and proximate cause of the Defendants' wrongful and fraudulent conduct, Ms. Abbeduto had to endure surgery and treatment for her Ovarian Cancer and suffered from severe and permanent emotional and physical injuries. **Exhibit A**.

On May 24, 2017, defendants Johnson & Johnson and Johnson & Johnson Consumer Companies (collectively referred to as the "Johnson & Johnson Defendants" or "J&J") improperly removed this action to federal court in violation of 28 U.S.C. § 1447(c) because a properly joined defendant, Walgreens, and the Plaintiffs are citizens of Illinois.  As J&J admits in their removal papers, removal is *prohibited* where a "properly joined" defendant - such as Walgreens herein - is a "citizen of the State in which such action is brought."  **Exhibit B**, Notice of Removal at 26 [citing 28 U.S.C. § 1441(b)]. J&J even admits that Walgreens is a Delaware corporation with its principal place of business in Illinois.  **Exhibit B** at 8.  Although recognizing Walgreens's citizenship in Illinois *prohibits* this Court from exercising subject matter jurisdiction, J&J has nonetheless improperly removed this case. J&J's argument is that Walgreens is "fraudulently joined" and Walgreens's Illinois citizenship should therefore be

"disregarded" by this Court. However, J&J has not come forward with any proof that Walgreens is fraudulently joined, and therefore, has not met its heavy burden of proof.

Other courts have previously considered J&J's exact arguments in a case involving the same fundamental facts and allegations and remanded the case to state court finding Johnson & Johnson failed to meet its burden of establishing fraudulent joinder. *Harris, et al. v. Johnson & Johnson, et al.*, N.D. Illinois, C.A. No. 1:17-02889 **Exhibit C** and *Harlan v. Johnson & Johnson*, 2015 WL 5121408 (S.D. Ill. Aug. 31, 2015) **Exhibit G**. Here, Johnson & Johnson has failed to assert any new arguments or legal theories that would support the removal of this case to federal court. Johnson & Johnson removed this action for no other reason than to further delay the litigation of Plaintiffs' claims. As in *Harris* and *Harlan*, here the jurisdiction facts are the same, both Plaintiffs and Walgreens are citizens of Illinois. Therefore, pursuant to 28 U.S.C. § 1447(c), the Court should immediately remand this action to the Circuit Court of Cook County, Illinois for lack of subject matter jurisdiction.

All of the defendants are bad actors, for decades, J&J, IMERYS, and Walgreens have either known or should have known that regular use of talc powder in a woman's perineal region causes Ovarian Cancer. Since 1982, there have been approximately twenty-two additional epidemiologic studies providing data regarding the association of talc and Ovarian Cancer. **Exhibit A** at 8. Nearly all of these studies have reported an elevated risk of Ovarian Cancer associated with genital talc use in women. **Exhibit A** at 8. Indeed, in or about February 2006, the International Agency for Research on Cancer (IARC), the specialized cancer agency of the World Health Organization, published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. **Exhibit A** at 9; n. 8 [IARC, "Perineal use of talc-based body powder (Group 2B)" available at

http://monographs.iarc.fr/ENG/Monographs/PDFs/93-talc.pdf.]

Despite decades of studies showing a clear connection between perineal talc use and Ovarian Cancer, Johnson & Johnson (the manufacturer of the PRODUCTS), IMERYS (IMERYS mined and supplied talc to Johnson & Johnson), and Walgreens (the consumer-facing seller of the PRODUCTS and manufacturer of its own talcum based products) failed to adequately warn consumers, including Ms. Abbeduto, of the risk of developing Ovarian Cancer after perineal use of the PRODUCTS.  **Exhibit A** at 8-17.  Indeed, all Defendants marketed, labeled, and/or sold the PRODUCTS directly to consumers, such as Ms. Abbeduto, without any warning of the known or knowable carcinogenic dangers posed by the PRODUCTS; rather, the PRODUCTS were marketed, labeled, and/or sold to consumers, such as Ms. Abbeduto, as a symbol of "freshness" and "comfort," absorbing "excess wetness," and "clinically proven to be gentle and mild.". **Exhibit A** at 6.  Indeed, **Walgreen's own website, walgreens.com, continues to perpetuate the dangerous, fraudulent claim that Johnson's Baby Powder is "[c]linically proven Mildness" under the "For Silky, Soft Skin" heading**. (See Walgreens website, available at https://www.walgreens.com/store/c/johnson's-baby-powder-original/ID=prod6144747-product?skuId=sku6128237, last checked August 29, 2017).

Johnson & Johnson does not dispute that Walgreens is a citizen of Illinois (**Exhibit A** at 5) or that Ms. Abbeduto regularly purchased the PRODUCTS from Walgreens for a period of over twenty years in Illinois. **Exhibit A** at 7.  Rather, Johnson & Johnson removed the action to this Court on the sole basis that Defendant Walgreens was fraudulently joined, claiming that Plaintiffs cannot prevail on their claims against the seller, Walgreens, of the PRODUCTS. **Exhibit B**.  In doing so, Johnson & Johnson ignores the dozens of paragraphs highlighting Walgreen's specific conduct giving rise to Walgreen's liability for Negligence (*see*, **Exhibit A**

at 46-49), Negligent Misrepresentation (*see*, **Exhibit A** at 25-29),  Intentional Misrepresentation (see, **Exhibit A** at 29-32), and Civil Conspiracy (see, **Exhibit A** at  33-34).  Removing Defendants simply *assume,* on its own and without any support in Illinois law, that Plaintiffs do not have any chance of recovery against Walgreens on any of these claims.  As Plaintiffs' claims are properly pled and are taken as true, this Court should, find that Walgreens is a proper defendant and grant Plaintiffs' motion to remand.

As set forth further below, this case should promptly be remanded to the Circuit Court of Cook County, Illinois.

## II.        FACTUAL BACKGROUND

On March 22,  2017, Plaintiffs filed their Complaint against the Johnson & Johnson Defendants, IMERYS Talc America, Inc. f/k/a Luzenac America, Inc. (hereinafter, "IMERYS" or "IMERYS Talc"), and Walgreens HDQTRS Corp. d/b/a Walgreens Corporation (hereinafter, "Walgreens") (defendants are collectively referred to as "Defendants") in the Circuit Court of Cook County, Illinois.  **Exhibit A**.   Plaintiffs' Complaint alleges that Ms. Abbeduto regularly applied Johnson's Baby Powder and/or Shower-to-Shower (the "Products") to her perineal region, causing her to be diagnosed with Ovarian Cancer in January, 2016.  **Exhibit A** at 17.  It is undisputed that Walgreens is a citizen of Illinois (*see*, **Exhibit A** at 7) and that Ms. Abbeduto is a resident of Illinois that regularly used the Products purchased from Walgreens in Illinois, from approximately 1989 through 2015.  **Exhibit A**. On May 24, 2017, defendants Johnson & Johnson and Johnson & Johnson Consumer Companies (collectively referred to as the "Johnson & Johnson Defendants" or "J&J") removed this action to federal court. On August 3, 2017, the JPML transferred this action to this Court. **Exhibit D.**

# III.    ARGUMENT

Plaintiffs' motion to remand should be granted because (1) complete diversity of citizenship is lacking, as Plaintiffs and Defendant Walgreens are citizens of Illinois and (2) Plaintiffs' claims against Walgreens are recognized as meritorious under prevailing Illinois law and, therefore, Walgreens was not fraudulently joined in this action.

## A.    Standard For Remand Under 28 U.S.C. § 1447(c)

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441; cases may be remanded under § 1447(c) for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure. *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir.1993). The party seeking removal bears the burden to establish federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir.1995). It is well-settled that the statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985).  Any doubt shall be resolved in favor of remand.  *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir.2009).

## B.    Complete Diversity Of Citizenship is Lacking Because Removing Defendants have Failed to Clear Their High Hurdle to Show That Plaintiffs Fraudulently Joined Walgreens as a Defendant

A defendant seeking removal based on alleged fraudulent joinder has the "heavy burden" of proving that, after the Court resolves all issues of law and fact in the plaintiff's favor, there is no possibility that the plaintiff can establish a cause of action against the diversity-defeating defendant in state court.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992), *see also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993) (A defendant is fraudulently

9

joined only when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts."). Any doubts regarding removal are resolved in favor of the plaintiff's choice of forum in state court. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir.2004).

This case involves a Plaintiff who is a citizen of Illinois who alleges she used the PRODUCTS to dust her perineum for feminine hygiene purposes for approximately twenty years, with such action taking place in the State of Illinois. **Exhibit A** at 2. As a result of said use, she developed ovarian cancer. *Id*. at 2. Plaintiffs purchased the PRODUCTS at various retail stores owned and operated by Walgreens as a result of Walgreen's marketing, promotion, and sale of the PRODUCTS. *Id*. at 38, 40.

As such, Ms. Abbeduto alleges, among others, causes of action in her Complaint against Walgreens that sound in negligence, falling outside of the "innocent seller statute." Walgreens was negligent in one or more of the following ways:

   a.  In failing to warn Ms. Abbeduto of the hazards associated with the use of the PRODUCTS;

   b.  By designing, developing, manufacturing, testing, inspecting, packaging, promoting, advertising, marketing, distributing, labeling and/or selling a product that it knew did not contain a warning of a significant danger of which it was not aware;

   c.  In failing to properly test the PRODUCTS to determine adequacy, appropriateness and effectiveness of safety measures, if any, prior to selling it to consumers;

   d.  In failing to advise users how to prevent or reduce exposure that caused an increased risk of cancer, including ovarian cancer;

   e.  In failing to inform ultimate users, such as Ms. Abbeduto as to the safe and proper methods of handling and using talc and/or the PRODUCTS;

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

f.  In designing, developing, manufacturing, testing, inspecting, packaging, promoting, advertising, marketing, distributing, labeling and/or selling The PRODUCTS to women with knowledge of that the PRODUCTS posed a significant risk of ovarian cancer and knowledge that the PRODUCTS did not contain warnings to that effect;

g.  In failing to properly test the PRODUCTS to determine the increased risk of cancer, including ovarian cancer, associated with the normal and/or intended use of the PRODUCTS;

h.  Marketing and labeling talc and/or the PRODUCTS as safe for all uses despite knowledge to the contrary;

i.  In failing to remove the PRODUCTS from sale when it knew or should have known talc and/or the PRODUCTS were defective;

j.  In failing to inform the public in general and Ms. Abbeduto in particular of the known dangers of using talc and/or the PRODUCTS for dusting the genital area and perineum;

k.  In designing, developing, manufacturing, testing, inspecting, packaging, promoting, advertising, marketing, distributing, labeling and/or selling the PRODUCTS to women without adequate warnings while knowing that the manufacturers of the PRODUCTS and suppliers of talc were trying to suppress information regarding the risk of cancer posed by the use of the PRODUCTS; and

l.  In failing to act like a reasonable prudent company under similar circumstances.

*Id.* at 47.

The negligence allegations in the Complaint, taken as true, clearly establish, at the very minimum, one valid cause of action against the Illinois defendant, Walgreens, under Illinois law. Furthermore, other federal courts have previously considered J&J's exact argument in a case involving the same fundamental facts and allegations and remanded the case to state court finding Johnson & Johnson failed to meet its burden of establishing fraudulent joinder. **Exhibit C and G**.

There is no diversity of jurisdiction; Plaintiffs have stated a claim on which they can be

successful; and as such, J&J cannot meet their heavy burden to show Plaintiffs' claims against Walgreens have no chance of success under prevailing Illinois law, the Court cannot disregard the citizenship of Walgreens; and this Court should remand this action back to state court.

**C.      735 ILCS 5/2-621 Cannot be the Bases for Dismissal of the Walgreens Negligence Counts**

J&J argues that removal is proper and seeks to have the court disregard the Illinois citizenship of Walgreens in evaluating whether complete diversity exists between the parties in this matter.  Even assuming for purposes of argument that J&J can meet its heavy burden as discussed above, this is *only* applicable to the strict liability counts against Walgreens and has no bearing or effect on the negligence claims by Plaintiffs against Walgreens.  In J&J's best-case scenario, counts against Walgreens, an Illinois defendant still remain.  Therefore, complete diversity among the parties cannot exist and the case should be remanded to the Circuit Court of Cook County.

In 1995, the Illinois Civil Justice Reform Act, Public Act 89–7, amended 735 ILCS 5/2-621(a) to extend the statute's applicability to claims "based on *any* theory or doctrine," instead of applying merely those claims "based in whole or in part on the doctrine of strict liability in tort." *See Caterpillar, Inc. v. Usinor Industeel,* 393 F.Supp.2d 659, 684–85 (N.D.Ill. 2005).  However, in 1997 the Illinois Supreme Court determined the Act as amended was unconstitutional and struck it down in its entirety.  *Best v. Taylor Machine Works,* 179 Ill.2d 367, 467 (1997).  Once an amendment is ruled unconstitutional, it is as if it never existed.  *Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp.2d 926, 936 (N.D.Ill. Feb. 7, 2012); *In re G.O.*, 191 Ill.2d 37, 43 (2000).  Since the Illinois Supreme Court decision in *Best*, the Illinois General Assembly has not subsequently amended the statute.  Thus, this Court must analyze the statute and Defendants'

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

argument under the statute as it existed prior to the 1995 amendment. *Id*.; *Caterpillar,* 393 F.Supp.2d at 685 (citing *Hurst v. Capital Cities Media, Inc.,* 323 Ill.App.3d 812, 822 (5th Dist. 2001); *see also Harleysville Lake States Ins. Co. v. Hilton Trading Corp.*, 2013 WL 3864244 (N.D.Ill. July 23, 2013); *Willyard v. Wal–Mart Stores, Inc.,* 2010 WL 487080, at *1 n. 3 (S.D.Ill. Feb. 8, 2010); *Williams v. Am. Equip. & Fabricating Corp.,* 2009 WL 5126682, at *1 (C.D.Ill. Dec. 18, 2009); *S. Side Trust and Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.,* 927 N.E.2d 179, 184 n. 2 (1st Dist. 2010); *Murphy v. Mancari's Chrysler Plymouth, Inc.,* 887 N.E.2d 569, 572 n. 2 (1st Dist. 2008).  Under the pre-amendment language, it is clear that negligence claims against Walgreens are not subject to dismissal under 735 ILCS 5/2-621.

J&J cannot establish a scenario under which Plaintiffs' negligence claims against Walgreens are to be disregarded by the Court for jurisdictional purposes.  Therefore, the allegations in Plaintiffs' Complaint clearly establish valid causes of action sounding in negligence against Illinois defendant Walgreens. Thus, Walgreens is a proper defendant to this lawsuit, and complete diversity jurisdiction cannot exist between the parties.

**D.    Dismissal of the Walgreens Strict Liability Counts is Not Proper under Section 5/2-621**

As a basis for removal, J&J asserts that the Illinois "innocent seller statute" will provide Walgreens a defense to Plaintiffs' claims and that Federal District Courts have repeatedly held that sellers like Walgreens have been fraudulently joined in product liability actions based on the protections afforded by Illinois's innocent-seller statute. Not so.

Section 2-621, sometimes referred to as the "seller's exception," allows an "innocent distributor" in a strict product liability action to be dismissed from the action if it certifies the correct identity of the manufacturer of the product, and the identified manufacturer has been

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

served and has answered the complaint. *Saieva v. Budget Rent-A-Car of Rockford*, 227 Ill. App. 3d 519, 522 (2nd Dist. 1992). The obvious purpose of Illinois Code of Civil Procedure § 2-621 is to allow a defendant whose sole liability results from its role as a pass-through member in the chain of distribution of an allegedly defective product, and who has not been shown to have created or contributed to the alleged defect or had knowledge of the defect, to get out of a product liability action at an early stage in order to avoid expensive litigation and to defer liability upstream to the manufacturer. *Kellerman v. Crowe*, 119 Ill. 2d 111, 113 (1987).

A seller in the chain will not be afforded the procedural benefits provided to an innocent distributor under § 2-621 if the seller: (i) exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product; (ii) had actual knowledge of the defect; or (iii) created the defect. 735 ILCS 5/2-621 (c). Additionally, a party dismissed under section 2-621 can be reinstated at any time if the Plaintiff shows that the manufacturer no longer exists or is unable to satisfy any judgment or reasonable settlement with the plaintiff. 735 ILCS 5/2-621 (b) (3-5).

In making this argument, J&J ignores Judge Luthi's ruling in *Harris v. Johnson & Johnson*, that the innocent-seller statute is subject to exceptions, and therefore, Walgreens may not be sheltered from liability. See **Exhibit C**.

Section 2-621 does not apply here; Walgreens was not an "innocent seller" who merely acted as a pass-through between the manufacture and the consumer. Rather, Walgreens was an active participant in the marketing and distribution of the PRODUCTS, and had actual knowledge that the PRODUCTS were defective. Accordingly, dismissal of Walgreens is not proper under Section 2-621, and there is no fraudulent joinder. See *Whelchel v. Briggs & Stratton*, 850 F.Supp.2d 926 (N.D. Ill. 2012) (Dismissal under 5/2-621 not available where

dealer had actual knowledge of product defect.)

Furthermore, the cases cited by Johnson & Johnson do not justify a departure from Judge Luthi's reasoning in *Harris*.  Unlike Plaintiffs' specific allegations of Walgreen's negligence, the plaintiff in *Lemoine v. Teva Pharmaceutical Industries* did not allege that the pharmacy defendant did anything other than fill the prescription pursuant to the instructions of plaintiff's physician. *Lemoine v. Teva Pharm. Indus*. No. 3:10-cv-20332-DRH-PMF, 2010 WL 4904488, at *1-2 (S.D. Ill. Nov. 24, 2010). In *Lemoine*, the Court found fraudulent joinder on the basis of policy considerations including: (1) interference with the doctor-patient relationship; (2) the magnitude of the burden of imposing a duty to warn is too great; (3) the injury that might result due to the absence of a particular warning is not reasonably foreseeable; and (4) imposing a duty to warn would be inconsistent with the learned intermediary doctrine. *Id*. at *2.

In the instant case, talcum powder is not a FDA regulated product.  Walgreens provided no warning, whatsoever, regarding the risks of talcum powder in the perineal area. There is no Doctor-patient relationship and no learned intermediary doctrine. The magnitude of the burden imposed on Walgreens to warn of a known hazard is miniscule. J&J's citation to *Lemoine* is inapposite.

Removing Defendants are equally as misguided with the second case they cite. In *Steel v. Ford Motor Co*., at the time of removal the non-diverse seller had already been dismissed by the trial court pursuant an innocent-seller defense. No. 11-C-00460, 2011 WL 1485380, at *4. The District Court made note the only defense the plaintiff put up before the trial court in response to the motion to dismiss was that the defendant had not filed the requisite certifying affidavit. *Id*. Upon defendant filing the affidavit, the plaintiff had no objection to entry of the dismissal order so long as it was without prejudice. *Id*. Accordingly, the plaintiff was left to argue before the

District Court the conditional nature of the innocent seller statute was the sole basis for the propriety of the defendant's joinder. *Id*. at *4-5. Ultimately, the District Court found the contingent future events proffered by plaintiff that would have to come to fruition too remote to make the possibility of recovery reasonable. *Id*. at *5. In rendering its decision, the *Steel* Court made note of situations where the conditional nature of the innocent seller statute has served as a basis for remand. *Id*.

This case is far more analogous to the Court's decision in *Laroe v. Cassens & Sons*, 472 F.Supp.2d 1041, (S.D. Ill. 2006). In *Laroe*, remand was necessary, in part, because the plaintiff alleged the Illinois seller had actual knowledge of the defect. *Id*. at 1050-53. Indeed, Plaintiff Abbeduto alleges herein in her Complaint that Walgreens knew or should have known women were using the PRODUCTS that Walgreens was selling them to dust their perineal area and Walgreens knew or should have known that the use of the PRODUCTS in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1971. **Exhibit A**. Further, Walgreens knew or should have known that the PRODUCTS contained no warnings regarding the risk of ovarian cancer posed to women using the PRODUCTS to powder their perineal region. *Id*. at 44-47.

Plaintiffs have properly pled meritorious claims against Walgreens in alleging Walgreens knew of the hazard talc presented Ms. Abbeduto, knew of the use for which Plaintiff and other women were purchasing the product, and knew the product came with no warning of the hazard. In fact, in November 1994, the Cancer Prevention Coalition ("CPC") sent Mr. C.R. Walgreen, then Chairman and CEO of Walgreens, a letter advising of the published studies finding that frequent genital application of talc was responsible for a three-fold increased risk of ovarian cancer, urging a warning be placed on Johnson & Johnson talc products as to the cancer risks or

16

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

that talc be replaced with cornstarch. (See May 13, 2008, Petition Seeking A Cancer Warning on

Cosmetic Talc Products, p. 2-3, attached as **Exhibit E**). Not only did Walgreens ignore the plea,

Walgreens to this day, some twenty-three years later, continues not only failing to warn, but

affirmatively marketing talc PRODUCTS to women for use in the perineal region, going so far

as to advise as to the appropriate type of talc to purchase:

> • Talc body powder can be used all over the body to reduce moisture from sweating and to prevent chafing between the thighs. This type of moisture reducing powder is designed to provide you with maximum comfort, especially on hot days or if your body produces excessive moisture.
>
> • When purchasing talc products, you must first assess the reason you are purchasing it and your current skin condition. This is simply because some are scented body powders that are made with fragrances that may affect your skin.

(See Walgreens website, available at http://www.walgreens.com/q/talc-powder, last checked

August 29, 2017).

Plaintiffs also allege that Walgreens is a co-conspirator with Johnson & Johnson. These

allegations are based upon their activities with and through the Personal Care Products Council,

which formed the Talc Interested Parties Task Force for the purpose of withholding, concealing,

and suppressing medical information regarding the increased risk of ovarian cancer talc

presented Plaintiff and other women similarly situated. **Exhibit A** at 33. Plaintiffs allege the

following in furtherance of the conspiracy:

> a. For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;
>
> b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

with each other, fraudulently, willfully and maliciously withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Ms. Abbeduto (as set out in the "Facts" section of this pleading); In addition, on July 27, 2005, Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

c.   The Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off";

d.   Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

e.   By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce Ms. Abbeduto and for the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to the PRODUCTS.

See **Exhibit A** at 33-34.

Furthermore, Plaintiffs allege that Walgreens engaged in significant testing and development of the PRODUCTS. **Exhibit A** at 2. Support for Defendant Walgreen's close ties to PCPC and the TIPTF is evidenced by the fact the key note address for PCPC's 2009 Annual Meeting was given by none other than Gregory Wasson, President and Chief Operating Officer of Walgreens. (See News Article of January 28, 2009, entitled "Walgreens president booked for PCPC annual meeting", attached as **Exhibit F**).

18
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Under these circumstances, J&J cannot meet their heavy burden of proving that, after the court resolves all issues of law and fact in Plaintiffs' favor, there is no possibility Plaintiffs can establish a cause of action against Walgreens. See *Schur*, 577 F.3d at 764.

**E.     Even if Dismissal is Proper Under Section 2-621, There is No Fraudulent Joinder Because Walgreens Can Be Reinstated at a Later Date**

Even if Walgreens is entitled to be dismissed under Section 2-621, there still is no fraudulent joinder because the dismissal is conditional, and Walgreens can be reinstated as a defendant if J&J no longer exists or is unable to satisfy any judgment or reasonable settlement. 735 ILCS 5/2-621 (b)(4).[1]  Although J&J undoubtedly has significant resources, the lawsuits seeking recovery for the harm caused by the PRODUCTS are staggering, and there can be no assurance at this point in the proceedings that J&J will, on its own account, be capable of fully satisfying a judgment entered in favor of the Plaintiffs.

Even if Walgreens was deemed an innocent distributor pursuant to § 2-621, there is a strong likelihood that it would be rejoined at a later date.  As the plain language of § 2-621(b) demonstrates, the statute "clearly contemplates the possibility of further action" and a plaintiff may move at any time for the reinstatement of a defendant who was previously dismissed under the statute. *Kellerman*, 119 Ill. 2d at 116, 518 N.E.2d at 118.  The possibility of a "rejoinder" of Walgreens (should it ever seek and obtain dismissal), prevents a determination that its inclusion

---

[1] 735 ILCS 5/2-621(b)(4) states in pertinent part that:  [t]he plaintiff may at any time subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant or defendants, provided plaintiff can show one or more of the following:…(4) That the manufacturer is unable to satisfy any judgment as determined by the court…

19
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

in this action was somehow a fraudulent joinder.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court GRANT Plaintiffs' Motion to Remand.

Dated: August 31, 2017

Respectfully submitted,

*/s/ Tayjes M. Shah*
Tayjes M. Shah (01750)
**THE MILLER FIRM, LLC**
The Sherman Building
108 Railroad Avenue
Orange, Virginia 22960
Ph: (540) 672-4224
Fax: (540) 672-3055
E-Mail: tshah@millerfirmllc.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed electronically on the court's

ECF system and is available for viewing and downloading from the ECF system.  All counsel of

record listed on the Court's CM/ECF system are to be served by the Court via Notice of

Electronic Filing (NEF).


By: *Tayjes M. Shah*

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND