Exhibit A

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
CALENDAR: B
PAGE 1 of 52
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| MAUREEN ABBEDUTO and KEITH ABBEDUTO, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| JOHNSON & JOHNSON; and JOHNSON & JOHNSON CONSUMER INC. F/K/A JOHNSON & JOHNSON CONSUMER COMPANIES, INC.;  JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.; IMERYS TALC AMERICA, INC. F/K/A LUZENAC AMERICA, INC.; and WALGREEN, CO. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

COMES NOW Plaintiffs Maureen Abbeduto and Keith Abbeduto, by and through their undersigned counsel, and for their action for personal injuries and damages against Defendants JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.; IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.; and WALGREEN, CO. state the following:

### COMMON ALLEGATOINS

1.     This lawsuit arises out of Plaintiff Maureen Abbeduto's diagnosis of ovarian cancer, which was directly and proximately caused by her regular and prolonged exposure to

talcum powder, contained in JOHNSON'S® baby powder and Johnson & Johnson's Shower-to-Shower products which were manufactured, mined, distributed, and/or marketed by Defendants (hereinafter, the "PRODUCTS"). Plaintiffs bring this lawsuit against Defendants and/or their corporate predecessors for claims arising out of their negligent, willful and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, advertising, marketing, distribution, labeling, and/or sale of the PRODUCTS.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 2 of 52

2.      Plaintiff, Maureen Abbeduto (hereinafter "Ms. Abbeduto") regularly used Defendants' PRODUCTS in her perineal region and suffered from severe physical, economic, and emotional injuries as a result of her use the PRODUCTS, including but not limited to ovarian cancer, which was diagnosed in September 2007.

3.      Ms. Abbeduto purchased and used the PRODUCTS in the County of Cook, State of Illinois.

4.      Ms. Abbeduto was diagnosed with ovarian cancer in the County of Cook, State of Illinois.

5.      At all times relevant hereto, Ms. Abbeduto and Keith Abbeduto (hereinafter "Mr. Abbeduto") were citizens of Orland Park, Illinois.

6.      Defendant Johnson & Johnson is a New Jersey corporation with its principle place of business in the State of New Jersey.  At all relevant times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing th PRODUCTS.  At all relevant times, Johnson & Johnson regularly transacted, solicited, and conducted business in the State of Illinois, including the marketing, promoting, selling, and/or distribution of the PRODUCTS.

7.      Defendant Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principle place of business in the State of New Jersey. At all relevant times, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all relevant times, Johnson & Johnson Consumer Companies, Inc. regularly transacted, solicited, and conducted business in the State of Illinois, including the marketing, promoting, selling, and/or distribution of the PRODUCTS.

8.      At all relevant times, Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. have conducted continuous and systematic business in the State of Illinois and placed the PRODUCTS in the stream of commerce with the knowledge and intent that they be sold in the State of Illinois, and be consumed by Illinois citizens and residents.

9.      Defendant Johnson & Johnson Customer Logistics Services, LLC is an Illinois corporation, with its principal place of business in Buffalo Grove, Illinois.  Johnson & Johnson Customer Logistics Services, LLC is Johnson & Johnson's global supply chain organization that supports Johnson & Johnson's operating units company-wide.  Johnson & Johnson Customer Logistics Services, LLC develops, packages, labels, promotes, markets, distributes and/or sells the PRODUCTS nationwide and in Illinois, including the County of Cook.  Johnson & Johnson Customer Logistics Services, LLC develops, packages, labels, promotes, markets, distributes and/or sells the PRODUCTS to Walgreen Co.

10.     At all relevant times, Johnson & Johnson Baby Products, Inc. has been a wholly owned subsidiary of Johnson & Johnson, and has been directed by its parent company to manufacture, market, test, promote, sell, and/or distribute the PRODUCTS. At all relevant times,

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 3 of 52

3

Johnson & Johnson Baby Products, Inc. was under the complete dominion of and control of Defendant Johnson & Johnson, and the agent and alter ego of Defendant Johnson & Johnson.

11.     At all relevant times, Defendant Johnson & Johnson Consumer Companies, Inc.; Johnson & Johnson Customer Logistics Services, LLC; and Johnson & Johnson Baby Products, Inc. have been the wholly owned subsidiaries of Defendant Johnson & Johnson, under the complete dominion and control of Defendant Johnson & Johnson, and the agents and alter egos of Defendant Johnson & Johnson.  Hereinafter, unless otherwise delineated, these four entities shall be collectively referred to as the "Johnson & Johnson Defendants."

12.     At all relevant times, the Johnson & Johnson Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing the PRODUCTS in the regular course of business.

13.     Defendant Imerys Talc America, Inc., f/k/a Luzenac America, Inc. (hereinafter "Imerys Talc") is a Delaware corporation with its principle place of business in the State of California.  At all relevant times, Imerys Talc has maintained a registered agent in the State of Illinois.  At all relevant times, Imerys Talc has been in the business of mining and distributing talcum powder for use in talcum powder based products, including the PRODUCTS.  Imerys Talc is the successor or continuation of Luzenac America, Inc., and Imerys Talc is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.

14.     At all relevant times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants.  Imerys Talc sold its product knowing that Johnson & Johnson was packaging and selling the product to consumers as the PRODUCTS.

15.     At all relevant times, Imerys Talc knew or should have known that Johnson & Johnson was not warning its consumers of the dangers associated with the PRODUCTS.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 4 of 52

4

16.     At all times, Imerys Talc knew or should have known that consumers of the PRODUCTS were or could potentially use it to powder their perineal regions.

17.     At all relevant times, Imerys Talc knew and/or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when used in a woman's perineal regions.

18.     Defendant Walgreen Co. (hereinafter "Walgreen") is a corporation organized under the laws of the State of Delaware, with its principle place of business in the State of Illinois. At all relevant times, Walgreen has been engaged in the business of selling, distributing, and marketing the PRODUCTS.

19.     At all relevant times, Walgreen was marketing, promoting, and selling the PRODUCTS in the regular course of business.

20.     As a manufacturer of its own products containing talc, Walgreen had actual knowledge that the use of the PRODUCTS in the perineal area could cause ovarian cancer.

21.     The Johnson & Johnson Defendants and Walgreen share and jointly operate an office in Buffalo Grove, Illinois.  Together at their shared office, the Johnson & Johnson Defendants and Walgreen develop and implement strategic business plans for Johnson & Johnson products, including the PRODUCTS, placed in Walgreen's stores.  Working together at their shared office, the Johnson & Johnson Defendants and Walgreen coordinate sales, distribution, marketing, shopper insight, customer loyalty to Walgreen, customer rewards, Walgreen shoppers' trending specific to the Johnson & Johnson Defendants' products, sales, sales goals and customer service.

22.     Venue is proper in this Court as, at all relevant times, Defendants conducted business in Cook County, Illinois and tested, manufactured, labeled, licensed, marketed,

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 5 of 52

distributed, promoted and/or sold the PRODUCTS in Cook County, Illinois.   Defendant

Walgreens maintains its principal place of business in Cook County, Illinois.

## **FACTUAL BACKGROUND**

23.     Talc is a magnesium trisilicate and is mined from the earth.  Talc is an inorganic

mineral.  Imerys Talc mined the talc contained in the PRODUCTS

24.     Talc is the main substance in talcum powders.   The Johnson & Johnson

Defendants manufactured the PRODUCTS.  The PRODUCTS are composed almost entirely of

talc.

25.     The Johnson & Johnson Defendants manufactured, marketed, solicited, sold, and

distributed the PRODUCTS to Walgreen and others.

26.     At all relevant times, a feasible alternative to the PRODUCTS has existed.

Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known

health effects.  Cornstarch powders have been sold and marketed for the same uses with nearly

the same effectiveness.

27.     Imerys Talc has continually advertised and marketed talc as safe for human use.

28.     Imerys Talc supplies customers with material safety data sheets ("MSDS") for

talc.  MSDS are supposed to convey adequate health and warning information to its customers.

29.     Historically, Johnson's baby powder and Shower to Shower have been a symbol

of freshness, cleanliness, and purity.   During the time in question, the Johnson & Johnson

Defendants, advertised and marketed these product as the beacon of "freshness" and "comfort",

eliminating friction on the skin, absorbing "excess wetness" helping to keep skin feeling dry and

comfortable, and "clinically proven gentle and mild".  The Johnson & Johnson Defendants

compelled women through advertisements to dust themselves with this product to mask odors.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 6 of 52

The bottle of "Johnson's baby powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 7 of 52

30.     During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan, "A sprinkle a day keeps odor away", and through advertisements such as, "Your body perspires in more places than just under your arms.  Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day."  and "SHOWER to SHOWER can be used all over your body."

31.     Ms. Abbeduto used the PRODUCTS to dust her perineum for feminine hygiene purposes for over twenty (20) years, with such action-taking place in the State of Illinois.  At all relevant times hereto, Ms. Abbeduto purchased the PRODUCTS at Walgreen locations throughout the State of Illinois. On September 11, 2007, Ms. Abbeduto was diagnosed with ovarian cancer.

32.     Ms. Abbeduto's use of the PRODUCTS on her perineal area was the intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

33.     Through their affirmative misrepresentations and omissions, Defendants actively concealed from Ms. Abbeduto the true risks associated with the PRODUCTS when used in a reasonable and foreseeable manner.  Because of Defendants' actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that she had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

34.     Ms. Abbeduto had no knowledge that Defendants were engaged in the wrongdoing alleged herein or that the PRODUCTS were a direct and proximate cause of her

7

injuries until shortly before filing this lawsuit.  Because of the fraudulent acts of concealment and wrongdoing by Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time prior.

35.     In 1971, Dr. WJ Henderson and others conducted a study in Cardiff, Wales that that suggested an association between talc and ovarian cancer.  This was the first study to suggest an association between talc and ovarian cancer.

36.     In 1982, Dr. Daniel Cramer and others performed an epidemiologic study on talc powder use in the female genital area.  Dr. Cramer's study found a 92% increased risk in ovarian cancer in women who reported genital talc use.  This was the first epidemiologic study demonstrating the risk of ovarian cancer.  Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study.  Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

37.     Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer.  Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital talc use in women.

38.     In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity.  Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

39.     In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrancy Association (CTFA) formed the Talc Interested Party Task Force (TIPTF).  The Johnson & Johnson Defendants and Imerys Talc were members of the

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 8 of 52

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 9 of 52

CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer

40.     On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies as far back as 1960's ". . . shows conclusively that the frequent use of talcum powder in the genital area poses a serious health risk of ovarian cancer." The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women a year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate. The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about ovarian cancer risk they pose.

41.    In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

42.    In February of 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen.  IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk in ovarian cancer in women from perineal use of talc.  IARC found that between 16-52% of women in the world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%.  IARC concluded with this "Evaluation": "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder."  By definition, "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

43.    In approximately 2006, the Canadian government under the Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A", "very toxic", "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS).  Asbestos is also classified as "D2A".

44.    In 2006, Imerys Talc began placing a warning on the MSDS it provided to the Johnson & Johnson Defendants regarding the talc it sold to them to be used in the PRODUCTS. These MSDS not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 10 of 52

45.    The Defendants had a duty to know and warn about the hazards associated with the use of the PRODUCTS.

46.    The Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the PRODUCTS.

47.    Additionally, the Defendants procured and disseminated false, misleading, and biased information to the public regarding the safety of the PRODUCTS and used influence over governmental and regulatory bodies regarding talc.

48.    As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Ms. Abbeduto developed ovarian cancer, which required surgeries and treatments, and was otherwise injured in a personal and pecuniary nature.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 11 of 52

## COUNT ONE – FAILURE TO WARN
### *Maureen Abbeduto and Keith Abbeduto vs. Johnson & Johnson Defendants*

49.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

50.    At all relevant times, the Johnson & Johnson Defendants manufacture, market, test, promote, advertise, sell and/or distribute the PRODUCTS in the regular course of business, including to Plaintiffs.

51.    Defendants had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the PRODUCTS that was not defective and/or unreasonably dangerous when put to the use for which they were designed, manufactured, distributed, marketed and sold.

52.    Defendants expected the PRODUCTS they designed, manufactured, sold, distributed, supplied, marketed and/or promoted to reach, and they did reach, consumers in the State of Illinois, including Ms. Abbeduto, without substantial change in the condition.

53.     At the time the PRODUCTS left Defendants' possession and entered the stream of commerce, the PRODUCTS were in an unreasonably and defective condition.  These defects included:

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 12 of 52

a.  The PRODUCTS failed to contain adequate warnings;

b.  The PRODUCTS failed to contain adequate instructions;

c.  The PRODUCTS failed to inform consumers of the association between the PRODUCTS and the development of cancer;

d.  The PRODUCTS failed to inform consumers that use of the PRODUCTS placed consumers at an increased risk of developing cancer;

e.  The PRODUCTS failed to warn consumers that applying the PRODUCTS to the female genital area put them at an increased risk of developing cancer;

f.  The PRODUCTS failed to inform consumers of the association between the PRODUCTS and the development of ovarian cancer;

g.  The PRODUCTS failed to inform consumers that use of the PRODUCTS placed consumers at an increased risk of developing ovarian cancer;

h.  The PRODUCTS failed to warn consumers that applying the PRODUCTS to the female and/or peritoneal area put them at an increased risk of developing ovarian cancer;

i.  Defendants advertised, marketed and promoted the PRODUCTS as safe for women to use, regardless of its application;

j.  The PRODUCTS failed to fairly and adequately represent the risk of developing cancer to consumers;

k.  The PRODUCTS failed to fairly and adequately represent the risk of developing ovarian cancer to consumers; and

l.  The PRODUCTS misrepresented the safety and risks associated with use of the PRODUCT to consumers.

54.     Defendants failed to conform to express factual representations upon which consumers, including Ms. Abbeduto, justifiably relied in choosing to purchase and use the PRODUCTS.  Such defects made the PRODUCTS unreasonably dangerous to consumers,

including Ms. Abbeduto, who could reasonably be expected to use the PRODUCTS and rely upon such representations made by Defendants. Such defects caused Ms. Abbeduto's injuries and damages.

55.     At all relevant times, Ms. Abbeduto purchased the PRODUCTS at various retail stores owned and operated by Walgreen.

56.     At all relevant times, Ms. Abbeduto used the PRODUCTS for their intended use, i.e. to powder her perineal area.

57.     Plaintiffs could not have discovered any defect in the PRODUCTS through the exercise of due care.

58.     Defendants, as designers, developers, manufacturers, sellers, distributors, advertisers, promoters and marketers of the PRODUCTS are held to the level of knowledge of an expert in their field.

59.     At all relevant times, the Defendants in this action knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to 1971.

60.     Plaintiffs did not have the same or substantially similar knowledge as the designers, developers, manufacturers, sellers, distributors, advertisers, promoters and marketers of the PRODUCTS.

61.     Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of ovarian cancer, she would not have used the PRODUCTS.

62.     As a direct and proximate result of one or more of the foregoing wrongful acts, omissions and/or the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 13 of 52

suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

63.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; and JOHNSON & JOHNSON BABY PRODUCTS, INC. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT TWO – MANUFACTURING AND DESIGN DEFECT
### *Maureen Abbeduto and Keith Abbeduto vs. Johnson & Johnson Defendants*

64.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

65.    At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the PRODUCTS into the stream of interstate commerce, including the State of Illinois, which they sold and distributed throughout the United States and in Cook County, Illinois.

66.    The Johnson & Johnson Defendants caused the PRODUCTS to enter the stream of commerce and to be sold through various retailers, including Walgreen, where Plaintiffs purchased the PRODUCTS.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 14 of 52

67.     At all relevant times, the Johnson & Johnson Defendants expected the PRODUCTS they designed and manufactured to reach, and they did reach, consumers in the State of Illinois, including Ms. Abbeduto, without substantial change in the condition.

68.     At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by the Johnson & Johnson Defendants in that, when the PRODUCTS left the hands of the Johnson & Johnson Defendants, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

69.     At all relevant times, the PRODUCTS were defectively manufactured and designed by the Johnson & Johnson Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

70.     At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

71.     The propensity of talc fibers to translocate into the female reproductive system and organs, including, but not limited to, the ovaries and endometrial lining of the uterus, thereby increasing the risk of cancer substantially.  This risk includes, but is not limited to, ovarian cancer.  Such a propensity renders the PRODUCTS unreasonably dangerous and beyond any extent contemplated by the ordinary consumer when used in a reasonably foreseeable manner.

72.     At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Johnson & Johnson Defendants to manufacture a product with the same therapeutic purpose as the PRODUCTS.  Despite knowledge of this reasonable and safer alternative design, the Johnson & Johnson Defendants failed to alter the

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 15 of 52

PRODUCTS' design and formulation. The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

73.     At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous when used by women in their peritoneal area yet they continue to design, manufacture, sell, distribute, promote, advertise and supply the PRODUCTS in order to maximize profits while disregarding foreseeable harm and dangers to consumers, including Ms. Abbeduto.

74.     Ms. Abbeduto used the PRODUCTS in a manner normally intended, recommended, promoted, and marketed by the Johnson & Johnson Defendants.

75.     Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of ovarian cancer, she would not have used the PRODUCTS.

76.     As a direct and proximate result of one or more of the foregoing wrongful acts, omissions and/or the unreasonably dangerous and defective condition of Defendants' PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered PRODUCT-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

77.     As a direct and proximate result of developing ovarian cancer from Defendants PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 16 of 52

COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC;

and JOHNSON & JOHNSON BABY PRODUCTS, INC. in a sum in excess of jurisdictional

limits of this Court, together with interests and costs of this action.

**COUNT THREE – NEGLIGENCE**
***Maureen Abbeduto and Keith Abbeduto vs. Johnson & Johnson Defendants***

78.     Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set

forth herein.

79.     The Johnson & Johnson Defendants were negligent in marketing, designing,

manufacturing, producing, supplying, inspecting, testing, selling, distributing, promoting and/or

advertising the PRODUCTS in one or more of the following respects:

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 17 of 52

a.  In failing to warn Ms. Abbeduto of the hazards associated with the use of the PRODUCTS;

b.  In failing to properly test their products to determine adequacy, appropriateness and effectiveness of safety measures, if any, prior to releasing the PRODUCTS for consumer use;

c.  In failing to properly test their products to determine the increased risk of cancer, including ovarian cancer, associated with the normal and/or intended use of the PRODUCTS;

d.  In failing to inform ultimate users, such as Ms. Abbeduto as to the safe and proper methods of handling and using the PRODUCTS;

e.  In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

f.  In failing to instruct the ultimate users, such as Ms. Abbeduto, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk in cancer, including ovarian cancer;

g.  In failing to inform the public in general and Ms. Abbeduto in particular of the known dangers of using the PRODUCTS for dusting the genital area and perineum;

h.  In failing to advise users how to prevent or reduce exposures that cause an increase risk of cancer, including ovarian cancer;

17

      i.    Marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary; and

      j.    In failing to act like a reasonable prudent company under similar circumstances.

80.     At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to its reasonably anticipated use.

81.     Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of cancer, including ovarian cancer, she would not have used the PRODUCTS.

82.     As a direct and proximate result of one or more of the foregoing negligence wrongful acts, omissions and/or the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCT-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

83.     As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; and JOHNSON & JOHNSON BABY PRODUCTS, INC. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 18 of 52

## COUNT FOUR – BREACH OF EXPRESS WARRANTY
### *Maureen Abbeduto and Keith Abbeduto vs. Johnson & Johnson Defendants*

84.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

85.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to its reasonably anticipated use.

86.    At all relevant times, the Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, promotions, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in their perineal area.

87.    Although the PRODUCTS label has changed over time, its core message has remained the same: that the product is safe for use on women as well as babies.  At least as of 2014, the baby powder label stated that "Johnson's® Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable. Our incredibly soft, hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief." The Johnson & Johnson Defendants instruct consumers on the product labeling to "Shake powder directly into your hand, away from the face, before smoothing onto the skin."

88.    Through other marketing, including on their website for Johnson's® Baby Powder, Defendants similarly encouraged women to use the product daily.  Defendants state that Johnson's® Baby Powder "keeps skin feeling soft, fresh and comfortable. It's a classic. Johnson's® Baby Powder helps eliminate friction while keeping skin cool and comfortable.  It's made of millions of tiny slippery plates that glide over each other to help reduce the irritation

19

caused by friction." Under a heading "How to Use," "For skin that feels soft, fresh and comfortable, apply Johnson's® Baby Powder close to the body, away from the face. Shake powder into your hand and smooth onto skin." Under a heading "When to Use", the Johnson & Johnson Defendants recommend that the consumer "Use anytime you want skin to feel soft, fresh and comfortable.  For baby, use after every bath and diaper change."  On their website for Johnson's® Baby Powder, Defendants also state the product is "Clinically proven to be safe, gentle and mild."

89.      Even more recently, in February or March, 2016, after a St. Louis Jury rendered a $72-million-dollar verdict against Johnson & Johnson, including punitive damages, Johnson & Johnson published a web page directed at consumers misleadingly assuring them of the safety of talc titled "Our Safety & Care Commitment" and touted the safety of talc, stating, *inter alia*:

a.   "Decades of Safety: Our confidence in using talc reflects more than 30 years of research by independent scientists, review boards and global authorities, which have concluded that talc can be used safely in personal care products.  Various government agencies and other bodies also have examined talc to determine the potential for any safety risks, and none have concluded that there are safety risks. In fact, no regulatory agency has ever required a change in labeling to reflect any safety risk from talc powder products."

b.    "Our Position on Talc: At Johnson & Johnson Consumer Inc., our confidence  in using talc is based on a long history of safe use and more than 30 years of research by independent researchers, scientific review boards and global regulatory authorities.  Various agencies and governmental bodies have examined whether talc is a carcinogen, and none have concluded that it is. With over 100 years of use, few ingredients have the same demonstrated performance, mildness and safety profile as cosmetic talc."

c.   "We want to assure women and caregivers who use our talc products that numerous studies support its safety, and these include assessments by external experts in addition to our company testing. Many research papers and epidemiology studies have specifically evaluated talc and perineal use and these studies have found talc to be safe"

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 20 of 52

90.     At all relevant times, even up until present day, the Johnson & Johnson Defendants' represent to consumers, including Ms. Abbeduto, that the PRODUCTS is safe for personal use, including in women's perineal regions.

91.     At all relevant times, the PRODUCTS did not conform to these express representations because they can cause serious injury such as cancer, including ovarian cancer, when used by women in the perineal area.

92.     Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of cancer, including ovarian cancer, she would not have used the PRODUCTS.

93.     As a direct and proximate result of one or more of the foregoing negligence wrongful acts, omissions and/or the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

94.     As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; and JOHNSON & JOHNSON BABY PRODUCTS, INC.  in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 21 of 52

## COUNT FIVE – FRAUD, FRAUDULENT MISREPRESENTATION AND INTENTIONAL CONCEALMENT
### *Maureen Abbeduto and Keith Abbeduto vs. Johnson & Johnson Defendants*

95.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

96.     At all relevant times, Defendants owed consumers, including Ms. Abbeduto, a duty to fully, fairly, and accurately disclose all material facts regarding the PRODUCTS, not to conceal material facts or defects thereto, not to place defective products into the stream of commerce, and to fully, fairly, and accurately the PRODUCTS packaging.  To the contrary, here, Defendants explicitly and/or implicitly represented to consumers, including Ms. Abbeduto, that the PRODUCTS were safe and effective.

97.     At all relevant times, the Johnson & Johnson Defendants misrepresented and/or concealed material facts concerning the PRODUCTS to consumers, including Ms. Abbeduto, with knowledge of the falsity of their misrepresentations.

98.     At all relevant times, upon information and belief, the misrepresentations and concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

    a.  The Johnson & Johnson Defendants falsely labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the  odor     away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

    b.  The Johnson & Johnson Defendants falsely advertised the PRODUCTS SHOWER to SHOWER to be applied "all over," and in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 22 of 52

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 23 of 52

    c.    The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to Ms. Abbeduto and the public that the PRODUCTS were safe for use all over the body, including the perineal area of women.

    d.    The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated the PRODUCTS, when used in the perineal area, increase the risk of cancer, including ovarian cancer.

    e.    The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the PRODUCTS regarding the potential and actual risks of using the PRODUCTS in the genial and perineal areas on women and the nature, scope, severity, and duration of any serious injuries resulting therefrom.[1]

    f.    Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal area.

99.    At all relevant times, the Johnson & Johnson Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts about the PRODUCTS to consumers and users, including Ms. Abbeduto.  The Johnson & Johnson Defendants did so at Ms. Abbeduto's expense.  Specifically:

    a.    Defendants have been aware of the association between feminine talc use and cancer which has been demonstrated by epidemiologic studies since at least 1982 and more than a dozen published studies, including meta-analyses, have been published demonstrating similar results.

    b.    Defendants have been aware, for decades, of the propensity for talc particles to translocate from the perineum through the vaginal tract into the ovaries.

    c.    IARC, a recognized authority throughout the world on agent carcinogenicity, determined that there is a credible causal connection between feminine talc use and ovarian cancer; and

    d.    Defendants' own paid consultant, Dr. Alfred Wehner, advised Johnson & Johnson on multiple occasions, by at least 1997, that its denial of a positive association between feminine talc use and ovarian cancer was "technically and factually incorrect."

---

[1] Household PRODUCTS Database, Label for the PRODUCTS, Original, http://householdproducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040

100.    At all relevant times, Defendants knew that their concealments, misrepresentations and/or omissions were material, and that they were false, incomplete, misleading, deceptive, and deceitful when they were made.  In the alternative, Defendants concealed such information and/or made representations with such reckless disregard for the truth that knowledge of the falsity can be imputed to them.

101.    Defendants earned significant profits from their unethical and illegal conduct that caused Ms. Abbeduto to purchase and habitually use the dangerous and defective PRODUCTS.

102.    At all relevant times, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public, including Ms. Abbeduto, and with the intent that the consumers would purchase and use the PRODUCTS in the female perineal area, and Ms. Abbeduto did regularly apply the PRODUCTS to her perineal area over a number of years.

103.    Defendants' actions and Ms. Abbeduto's justifiable reliance thereon, were substantial and contributing factors in causing her injury and incurring significant and substantial damages.

104.    At all relevant times, the consuming public, including Ms. Abbeduto, would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of the risks associated with the use of the PRODUCTS in the perineal area.

105.    As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' fraudulent conduct, Ms. Abbeduto purchased and used the PRODUCTS in her perineal area.  As a direct and proximate result of one or more of the foregoing, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 24 of 52

body, mind and other damages; incurred medical bills; suffered PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

106.   As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; and JOHNSON & JOHNSON BABY PRODUCTS, INC. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT SIX – NEGLIGENT MISREPRESENTATION
### *Maureen Abbeduto and Keith Abbeduto vs. All Defendants*

107.   Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

108.   At all relevant times, Defendants had a duty to accurately and truthfully represent to the medical community, healthcare community, the public, consumers and Ms. Abbeduto.

109.   At all relevant times, Defendants represented to the medical community, healthcare community, the public, consumers and Ms. Abbeduto that the PRODUCTS had been tested and found to be safe and effective for use in the perineal area.   However, the representations and/or omissions made by Defendants, in fact, were false.

110.   Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, marketing, advertising, promotion and distribution in interstate commerce,

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 25 of 52

because Defendants negligently misrepresented and/or omitted the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

111.    Defendants breached their duty in representing that the PRODUCTS were safe for use in the perineal area of women and/or omitting the known or knowable inherently dangerous carcinogenic nature of the PRODUCTS when used in these areas.

112.    Defendants breached their duty in representing to the medical community, healthcare community, the public, consumers and Ms. Abbeduto that the PRODUCTS have no serious side effects.

113.    As a direct, foreseeable and proximate result of the negligent misrepresentations as set forth herein, Defendants knew, and had reason to know, that the PRODUCTS had been insufficiently testing, or had not been tested at all, and that they lacked adequate and accurate warnings, and that such negligent misrepresentations created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects, including but not limited to cancer such as ovarian cancer.

114.    At all relevant times, upon information and belief, the negligent misrepresentations, omissions, and concealments concerning the PRODUCTS made by the Defendants include, but are not limited to the following:

    a.  The Johnson & Johnson Defendants falsely labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the odor    away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

    b.  The Johnson & Johnson Defendants falsely advertised the PRODUCTS, SHOWER to SHOWER to be applied "all over," and in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 26 of 52

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 27 of 52

c.  The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to Ms. Abbeduto and the public that the PRODUCTS were safe for use all over the body, including the perineal area of women.

d.  The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated PRODUCTS, when used in the perineal area, increase the risk of cancer, including ovarian cancer.

e.  The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the PRODUCTS regarding the potential and actual risks of using the PRODUCTS in the genial and perineal areas on women and the nature, scope, severity, and duration of any serious injuries resulting therefrom.[2]

f.  Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal area.

115.  At all relevant times, Defendants failed to exercise reasonable care in ascertaining or sharing information regarding the safe use of the PRODUCTS, failed to disclose facts indicating that the PRODUCTS were inherently dangerous and carcinogenic in nature, and otherwise failed to exercise reasonable care in communicating the information concerning PRODUCTS to Ms. Abbeduto and/or concealed relevant facts that were known to them.

116.  At all relevant times, Ms. Abbeduto was not aware of the falsity of the foregoing misrepresentations, nor was she aware that material facts concerning talc and the PRODUCTS had been concealed or omitted by Defendants.  In reasonable reliance upon the Defendants' misrepresentations and/or omissions, Ms. Abbeduto was induced to and did purchase the PRODUCTS and did use the PRODUCTS on her perineal area.  If the Defendants had disclosed true and accurate material facts concerning the risks of the use of the PRODUCTS, in particular the risk of developing ovarian cancer from using the PRODUCTS in the female perineal area,

---

[2] Household PRODUCTS Database, Label for The PRODUCTS, Original,
http://householdproducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040

Ms. Abbeduto would not have purchased and/or received the PRODUCTS and/or used the PRODUCTS in that manner.

117.    Ms. Abbeduto's reliance upon the Defendants' misrepresentations and/or omissions was justified and reasonable because, among other reasons, those negligent misrepresentations and/or omissions were made by individuals and entities that were in a position to know the material facts concerning the PRODUCTS and the association between the PRODUCTS and the incidence of ovarian cancer.  On the other hand, Ms. Abbeduto was not in a position to know these material facts, and because Defendants failed to warn or otherwise provide notice to the consuming public as to the risks of the PRODUCTS, Ms. Abbeduto was induced to use the PRODUCTS in lieu of safer alternatives and in ways that created unreasonably dangerous risks to her health.  At all relevant times, the Defendants' corporate officers, directors, and/or managing agents knew of and ratified the acts of the Defendants, as alleged herein.

118.    Defendants' actions and Ms. Abbeduto's justifiable reliance thereon, were substantial and contributing factors in causing her injury and incurring significant and substantial damages.

119.    As a direct, foreseeable and proximate result of Defendants' negligent misrepresentations and conduct, Ms. Abbeduto purchased and used the PRODUCTS in her perineal area.  As a direct and proximate result of one or more of the foregoing, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 28 of 52

120.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.; IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.; and WALGREEN, CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

### COUNT SEVEN – FRAUD (INTENTIONAL MISREPRESENTATION)
*Maureen Abbeduto and Keith Abbeduto vs. Johnson &*
*Johnson Defendants and Walgreen Co.*

121.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

122.    At all relevant times, the Johnson & Johnson Defendants and Walgreen, who were involved with and engaged in the development, manufacture, marketing, advertising, promotion, sale and distribution of personal hygiene products, including the PRODUCTS, owed a duty to provide accurate and complete information regarding their products.

123.    At all relevant times, the Johnson & Johnson Defendants and Walgreen had a duty to consumers, including Ms. Abbeduto, to fully and accurately disclose all material facts regarding the PRODUCTS, not to conceal material defects related thereto, not to place defective products into the stream of commerce, and to fully and accurately label product packaging. However, the Johnson & Johnson Defendants and Walgreen explicitly and/or implicitly

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 29 of 52

29

represented to consumers, including Ms. Abbeduto, that the PRODUCTS were safe and effective.

124.    The Johnson & Johnson Defendants and Walgreen actively and intentionally concealed and/or suppressed material facts, in whole or in part, to induce consumers, including Ms. Abbeduto, to purchase and use the PRODUCTS; Ms. Abbeduto did so at her expense.

125.    The Johnson & Johnson Defendants and Walgreen fraudulently misrepresented the use of the PRODUCTS as safe and effectively including, but not limited to the following:

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 30 of 52

   a.   Johnson & Johnson's website calls it a "misperception" that talc in baby powder can be "absorbed into the body";

   b.   The Johnson & Johnson Defendants and Walgreen develped and implemented advertisements directed at adult women asserting that, because the PRODUCTS are used on babies, women can "trust" that Defendants will take "just as much care" of their skin;

   c.   Defendants were aware of the association between feminine talc use and cancer identified in epidemiology studies since at least 1982 and more than a dozen published studies, including meta-analyses, have been published demonstrating similar results;

   d.   Misleading consumers, including Ms. Abbeduto, in advertisements that the talc used in the PRODUCTS is safe because it came from "nature" and is "pure";

   e.   Johnson & Johnson print advertisements directed at adult women asserted that because the PRODUCTS are used on babies, women can "trust" that Johnson & Johnson will take "just as much care" of their skin;

   f.   Defendants were aware, for decades, of the propensity of talc particles to translocate from the perineum through the vaginal tract into the ovaries;

   g.   Misleading consumers in advertisements that the talc in the PRODUCTS is safe because it comes from "nature" and is "pure";

   h.   IARC, a recognized authority throughout the world on agent carcinogenicity, determined that there is a credible causal connection between feminine talc use and ovarian cancer;

   i.   One its website, Johnson & Johnson claims that "30 years of research by independent scientists, review boards and global authorities have concluded that

talc can be used safely in personal care products," failing to mention the dozens of studies demonstrating a relationship, association and/or causal connection between feminine talc use and ovarian cancer, as well as the decision by IARC to label feminine talc power as "possibly carcinogenic";

j.　On their website, the Johnson & Johnson Defendants promote the PRODUCTS as being "Clinically proven to be gently and mild enough even for baby's skin and sensitive adult skin" and also as having been "Dermatologist-tested, allergy tested, and hypoallergenic" thus conveying safety to consumers while not identifying the cancer risk associated with the product when used by women on their perineal area;

k.　Defendants' own paid consultant, Dr. Alfred Wehner, advised Johnson & Johnson on multiple occasions, by at least 1997, that its denial of a positive association between feminine talc use and ovarian cancer was "technically and factually incorrect"; and

l.　On the PRODUCTS bottle, Defendants include a conspicuous warning to mothers to prevent babies from inhaling the powder and the inclusion of this lone warning implies to the consume that the PRODUCTS are safe in all other manners of use.

126.　The Johnson & Johnson Defendants and Walgreen knew or should have known that such misrepresentations and/or omissions were material, and that they were false, incomplete, misleading, deceptive and deceitful when they were made.

127.　The Johnson & Johnson Defendants and Walgreen concealed safety information and/or made representations regarding the PRODUCTS with such reckless disregard for the truth that knowledge of the falsity can be imputed to them.

128.　The Johnson & Johnson Defendants and Walgreen made such misrepresentations and/or omissions for the purpose of deceiving, misleading and defrauding consumers, including Ms. Abbeduto, with the intention of having them act and rely on such misrepresentations and/or omissions.

129.　Ms. Abbeduto relied, with reasonable justification, on the Johnson & Johnson Defendants and Walgreen's misrepresentations, which induced her to purchase and use the PRODUCTS on a regular basis for decades.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 31 of 52

130.    The Johnson & Johnson Defendants and Walgreen earned substantial profits from their unethical and illegal conduct that fraudulently induced Ms. Abbeduto and millions of other consumers, to purchase the dangerous and defective PRODUCTS.

131.    The Johnson & Johnson Defendants and Walgreen's actions and Ms. Abbeduto's justifiable reliance thereon, were substantial and contributing factors in causing her injury and incurring significant and substantial damages.

132.    As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' and Walgreen's fraudulent misrepresentations and conduct, Ms. Abbeduto purchased and used the PRODUCTS in her perineal area.  As a direct and proximate result of one or more of the foregoing, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

133.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.; and WALGREEN CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 32 of 52

## COUNT EIGHT – CIVIL CONSPIRACY
### *Maureen Abbeduto and Keith Abbeduto vs. All Defendants*

134.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

135.    Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Ms. Abbeduto's injuries, disease, and/or illnesses by exposing Ms. Abbeduto to the harmful and dangerous PRODUCTS.

136.    Defendants further knowingly agreed, contrived, confederated and conspired to deprive Ms. Abbeduto of the opportunity of an informed free choice as to whether to use the PRODUCTS or to to be exposed to said dangers.

137.    Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the PRODUCTS.

138.    In furtherance of said conspiracies, Defendants performed the following overt acts:

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 33 of 52

    a.    For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

    b.    Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Ms. Abbeduto (as set out in the "Facts" section of this pleading); In addition, on July 27, 2005, Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to theUnited States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

c.  The Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off";

d.  Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

e.  By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce the Plaintiff and for the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to the PRODUCTS.

139.  Ms. Abbeduto reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the PRODUCTS.

140.  As a direct, foreseeable and proximate result of the Defendants' fraudulent representations, omissions, concealments and conspiracy between Defendants regarding the nature of their PRODUCTS and Ms. Abbeduto's reliance thereon, Ms. Abbeduto purchased and used the PRODUCTS in her perineal area.  As a direct and proximate result of one or more of the foregoing, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 34 of 52

34

141.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.; IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.; and WALGREEN, CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

### COUNT NINE – CONCERTED ACTION
*Maureen Abbeduto and Keith Abbeduto vs. All Defendants*

142.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

143.    At all relevant times, Defendants knew that the PRODUCTS should contain warnings on the risk of ovarian cancer posed by women using the PRODUCTS to powder the perineal region.

144.    At all relevant times, Defendants purposefully sought to suppress such information and omit it from talc based products so as not to negatively affect sales and maximize Defendants' profits.

145.    Ms. Abbeduto reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the PRODUCTS.

146.    As a direct, foreseeable and proximate result of the Defendants' fraudulent representations, omissions, concealments and conspiracy between Defendants regarding the

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 35 of 52

nature of their products and Ms. Abbeduto's reliance thereon, Ms. Abbeduto purchased and used the PRODUCTS in her perineal area.  As a direct and proximate result of one or more of the foregoing, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

147.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.; IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.; and WALGREEN, CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

### COUNT TEN – MANUFACTURING AND DESIGN DEFECT
*Maureen Abbeduto and Keith Abbeduto vs. Imerys Talc*

148.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

149.    At all relevant times, Imerys Talc was engaged in the business of mining and distributing talcum to the Johnson & Johnson Defendants for use in the PRODUCTS, and they were knowingly an integral part of the overall manufacture, design, and production of the PRODUCTS and their introduction into the stream of interstate commerce, including the State of Illinois.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 36 of 52

36

150.     At all relevant times, Imerys Talc expected the PRODUCTS it mined and distributed to reach, and they did reach, consumers in the State of Illinois, including Ms. Abbeduto, without substantial change in the condition.

151.     At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by Imerys Talc in that, when Imerys Talc supplied its talc product to the Johnson & Johnson Defendants, it had full knowledge that they were using the talc in formulating the PRODUCTS and that the talc would be the primary ingredient in the PRODUCTS.

152.     At all relevant times, the PRODUCTS were defectively manufactured and designed by Imerys Talc in that their design is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner

153.     At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweighed the risks posed by other products on the market used for the same therapeutic purpose.

154.     Imerys Talc knew of the propensity of talc fibers to translocate into the female reproductive system and organs, including, but not limited to, the ovaries and endometrial lining of the uterus, thereby increasing the risk of cancer substantially.  This risk includes, but is not limited to, ovarian cancer.  Such a propensity renders the PRODUCTS unreasonably dangerous and beyond any extent contemplated by the ordinary consumer when used in a reasonably foreseeable manner.

155.     At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Imerys Talc and the Johnson & Johnson Defendants to manufacture a product with the same therapeutic purpose as the PRODUCTS.   Despite

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 37 of 52

knowledge of this reasonable and safer alternative design, Imerys Talc continued to mine and distribute its talc to the Johnson & Johnson Defendants and failed to alter the PRODUCTS' design and formulation. The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

156. At all relevant times, Imerys Talc knew or should have known that its talc and the PRODUCTS were unreasonably dangerous when used by women in their genital and/or peritoneal area yet they continue to mine and distribute it in order to maximize profits while disregarding foreseeable harm and dangers to consumers, including Ms. Abbeduto.

157. Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of ovarian cancer, she would not have used the PRODUCTS.

158. As a direct and proximate result of one or more of the foregoing wrongful acts, omissions and/or the unreasonably dangerous and defective condition of the Imerys Talc product and the PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered PRODUCT-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

159. As a direct and proximate result of developing ovarian cancer from the Imerys Talc product and the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 38 of 52

38

## COUNT ELEVEN – NEGLIGENCE
### *Maureen Abbeduto and Keith Abbeduto vs. Imerys Talc*

160.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

161.     At all relevant times, Imerys Talc had a duty to exercise reasonable care to consumers, including Ms. Abbeduto, in the design, development, mining, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS, including the PRODUCTS sold to consumers in the State of Illinois

162.     At all relevant times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew was then being packaged and sold to consumers as the PRODUCTS by the Johnson and Johnson Defendants. Further, Imerys Talc knew that consumers of the PRODUCTS were using it to powder their perineal regions.

163.     Imerys Talc was negligent in mining, distributing, marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling, promoting and/or advertising its talc and the PRODUCTS in one or more of the following respects:

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 39 of 52

   a.  In failing to warn Ms. Abbeduto of the hazards associated with the use of talc and/or the PRODUCTS;

   b.  In failing to properly test their talc and the PRODUCTS to determine adequacy, appropriateness and effectiveness of safety measures, if any, prior to releasing talc and/or the PRODUCTS for consumer use;

   c.  In failing to properly test their talc and the PRODUCTS to determine the increased risk of cancer, including ovarian cancer, associated with the normal and/or intended use of talc and/or the PRODUCTS;

   d.  In failing to inform ultimate users, such as Ms. Abbeduto as to the safe and proper methods of handling and using talc and/or the PRODUCTS;

   e.  In failing to remove talc and/or the PRODUCTS from the market when the Defendants knew or should have known talc and/or the PRODUCTS were defective;

f.   In failing to instruct the ultimate users, such as Ms. Abbeduto, as to the methods for reducing the type of exposure to talc and/or the PRODUCTS which caused increased risk in cancer, including ovarian cancer;

g.   In failing to inform the public in general and Ms. Abbeduto in particular of the known dangers of using talc and/or the PRODUCTS for dusting the genital area and perineum;

h.   In failing to advise users how to prevent or reduce exposures that cause an increase risk of cancer, including ovarian cancer;

i.   Marketing and labeling talc and/or the PRODUCTS as safe for all uses despite knowledge to the contrary; and

j.   In failing to act like a reasonable prudent company under similar circumstances.

164.   At all relevant times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants.  Imerys Talc possessed information on the carcinogenic properties of talc, including its risk of causing ovarian cancer.  Imerys Talc was negligent because it knew that the talc they provided to the Johnson & Johnson Defendants would be used in the PRODUCTS, but they did not adequately take steps to ensure that ultimate consumers of the PRODUCTS, including Ms. Abbeduto, received the information that Imerys Talc possessed on the carcinogenic properties of talc.

165.   At all relevant times, the Imerys Talc knew or should have known that talc and/or the PRODUCTS were unreasonably dangerous and defective when put to its reasonably anticipated use.

166.   At all relevant times, Imerys Talc knew or should have known that the use of talc and/or the PRODUCTS in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to 1971.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 40 of 52

167.    At all relevant times, Imerys Talc knew that Johnson & Johnson Defendants were not providing warnings to consumers of the PRODUCTS of the risk of cancer, including ovarian cancer, posed by talc contained therein.

168.    Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of cancer, including ovarian cancer, she would not have used the PRODUCTS.

169.    As a direct and proximate result of one or more of the foregoing negligent wrongful acts, omissions and/or the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

170.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT TWELVE – FAILURE TO WARN
### *Maureen Abbeduto and Keith Abbeduto vs. Walgreen Co.*

171.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 41 of 52

172.     At all relevant times, Walgreen was engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, distributing, marketing, promoting, selling and/or advertising the PRODUCTS in the regular course of business.

173.     At all relevant times, Walgreen was knowingly an integral part of introducing the PRODUCTS into the stream of commerce throughout the United States, the State of Illinois and in Cook County, Illinois.

174.     At all pertinent times, Defendants, including Walgreen, were assessing and analyzing the safety, efficacy and suitability of the PRODUCTS.

175.     At all pertinent times, Defendants, including Walgreen, created labels, promotional materials, marketing materials, developed marketing campaigns and utilized a methodology to target and promote the sale, purchase and use of the PRODUCTS by consumers.

176.     With the help and support of the Johnson & Johnson Defendants, Walgreen developed marketing campaigns, sales campaigns, consumer reward programs and consumer loyalty programs specific to the PRODUCTS.

177.     At all relevant times, the PRODUCTS were expected to and did reach Ms. Abbeduto without a substantial change in condition.

178.     At all relevant times, Ms. Abbeduto purchased the PRODUCTS at Walgreen. At all relevant times, Ms. Abbeduto used the PRODUCTS to powder her genital and perineal regions, which are reasonably foreseeable uses for the PRODUCTS.

179.     At all relevant times, Walgreen knew or should have known that the use of talcum powder-based products in the genital and perineal areas of women caused a significantly increased risk of cancer, including, but not limited to, ovarian cancer, based upon decades of scientific studies and knowledge on such products.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 42 of 52

180.    At all relevant times, including the time of sale to Ms. Abbeduto and her use of the PRODUCTS, when used in a reasonably foreseeable manner, were in an unreasonably dangerous and defective condition because they failed to contain adequate and appropriate warnings and/or instructions regarding the increased risk of cancer, including ovarian cancer, associated with the PRODUCTS when used by women to powder their genital and/or perineal area.  Walgreen failed to adequately and appropriately inform, warn and instruct Ms. Abbeduto as to the risks and benefits associated with using the PRODUCTS.

181.    At all relevant times, the PRODUCTS were defectively and improperly manufactured, formulated, created, designed, tested, labeled, packaged, supplied, distributed, marketed, promoted, sold and/or advertised by Walgreen in that, when the PRODUCTS left the hands of Walgreen, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

182.    At all relevant times, the PRODUCTS were defectively and improperly manufactured, formulated, created, designed, tested, labeled, packaged, supplied, distributed, marketed, promoted, sold and/or advertised by Walgreen in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

183.    At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers, including Ms. Abbeduto, that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

184.    At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been manufactured, formulated, created, designed, tested, labeled, packaged, supplied, distributed, marketed, promoted, sold and/or advertised by Walgreen while still having

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 43 of 52

the same therapeutic purpose as the PRODUCTS.  Despite knowledge of this reasonable and

safer alternative design, Walgreen failed to alter the PRODUCTS' design and formulation.  The

magnitude of the danger created by the PRODUCTS far outweighs the costs associated with

using an alternative, safer design.

185.    At the time the PRODUCTS left Walgreen's possession and entered the stream of

commerce, the PRODUCTS were in an unreasonably and defective condition.  These defects

included:

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 44 of 52

a.  the PRODUCTS failed to contain adequate warnings;

b.  the PRODUCTS failed to contain adequate instructions;

c.  the PRODUCTS failed to inform consumers of the association between the PRODUCTS and the development of cancer;

d.  the PRODUCTS failed to inform consumers that use of the PRODUCTS placed consumers at an increased risk of developing cancer;

e.  the PRODUCTS failed to warn consumers that applying the PRODUCTS to the female genital area put them at an increased risk of developing cancer;

f.  the PRODUCTS failed to inform consumers of the association between the PRODUCTS and the development of ovarian cancer;

g.  the PRODUCTS failed to inform consumers that use of the PRODUCTS placed consumers at an increased risk of developing ovarian cancer;

h.  the PRODUCTS failed to warn consumers that applying the PRODUCTS to the female genital and/or peritoneal area put them at an increased risk of developing ovarian cancer;

i.  Defendants advertised, marketed and promoted the PRODUCTS as safe for women to use, regardless of its application;

j.  the PRODUCTS failed to fairly and adequately represent the risk of developing cancer to consumers;

k.  the PRODUCTS failed to fairly and adequately represent the risk of developing ovarian cancer to consumers; and

l. the PRODUCTS misrepresented the safety and risks associated with use of the PRODUCTS to consumers.

m. the PRODUCTS have never contained adequate and appropriate warnings and/or instructions regarding the risks associated with the PRODUCTS.

186.    To this very day, the PRODUCTS do not identify the association between its use in women's genital and perineal areas and cancer, including ovarian cancer.  Instead, Defendants continue to manufacture, distribute, market, advertise, promote and sell the PRODUCTS while expressly representing to its safety to the public.  Defendants' actions continue to take place despite the unequivocal scientific knowledge dating back several decades that indicates the PRODUCTS increase the risk of ovarian cancer in women who use it on their genital and perineal areas.

187.    Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of ovarian cancer, she would not have used the PRODUCTS.

188.    As a direct and proximate result of one or more of the foregoing wrongful acts, omissions and/or the unreasonably dangerous and defective condition of Defendants' PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered PRODUCT-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

WHEREFORE, Plaintiffs pray for judgment against WALGREEN, CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 45 of 52

## COUNT THIRTEEN – NEGLIGENCE
### *Maureen Abbeduto and Keith Abbeduto vs. Walgreen Co.*

189.   Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

190.   At all relevant times, Walgreen had a duty to exercise reasonable care to consumers, including Ms. Abbeduto, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS, including the PRODUCTS sold to consumers in the State of Illinois

191.   At all relevant times, Walgreen designed, developed, manufactured, tested, inspected, packaged, promoted, advertised, marketed, distributed, labeled and/or sold the PRODUCTS.   Further, Walgreen knew that consumers of the PRODUCTS, including Ms. Abbeduto, were using it to powder their perineal regions.

192.   At all relevant times, Walgreen knew or should have known that the use of talcum powder based products, including the PRODUCTS, in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to 1971.

193.   At all relevant times, Walgreen knew or should have known that the PRODUCTS contained no warnings regarding the risk of ovarian cancer posed to women using the PRODUCTS to powder their perineal region.

194.   Walgreen was negligent in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS in one or more of the following ways:

   a.   In failing to warn Ms. Abbeduto of the hazards associated with the use of the PRODUCTS;

   b.   By designing, developing, manufacturing, testing, inspecting, packaging, promoting, advertising, marketing, distributing, labeling and/or selling a product

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 46 of 52

that it knew did not contain a warning of a significant danger of which it was not aware;

c. In failing to properly test the PRODUCTS to determine adequacy, appropriateness and effectiveness of safety measures, if any, prior to selling it to consumers;

d. In failing to advise users how to prevent or reduce exposure that caused an increased risk of cancer, including ovarian cancer;

e. In failing to inform ultimate users, such as Ms. Abbeduto as to the safe and proper methods of handling and using talc and/or the PRODUCTS;

f. In designing, developing, manufacturing, testing, inspecting, packaging, promoting, advertising, marketing, distributing, labeling and/or selling The PRODUCTS to women with knowledge of that the PRODUCTS posed a significant risk of ovarian cancer and knowledge that the PRODUCTS did not contain warnings to that effect;

g. In failing to properly test the PRODUCTS to determine the increased risk of cancer, including ovarian cancer, associated with the normal and/or intended use of the PRODUCTS;

h. Marketing and labeling talc and/or the PRODUCTS as safe for all uses despite knowledge to the contrary;

i. In failing to remove the PRODUCTS from sale when it knew or should have known talc and/or the PRODUCTS were defective;

j. In failing to inform the public in general and Ms. Abbeduto in particular of the known dangers of using talc and/or the PRODUCTS for dusting thegenital area and perineum;

k. In designing, developing, manufacturing, testing, inspecting, packaging, promoting, advertising, marketing, distributing, labeling and/or selling the PRODUCTS to women without adequate warnings while knowing that the manufacturers of the PRODUCTS and suppliers of talc were trying to suppress information regarding the risk of cancer posed by the use of the PRODUCTS; and

l. In failing to act like a reasonable prudent company under similar circumstances.

195.    At all relevant times, Walgreen was negligent in selling the PRODUCTS.

Walgreen possessed information on the carcinogenic properties of talc and the PRODUCTS,

including its risk of causing ovarian cancer.   Walgreen was negligent because it did not

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 47 of 52

adequately take steps to ensure that ultimate consumers of the PRODUCTS, including Ms. Abbeduto, received the information that Walgreen possessed on the carcinogenic properties of talc and the PRODUCTS.

196.    At all relevant times, Walgreen knew or should have known that talc and/or the PRODUCTS were unreasonably dangerous and defective when put to its reasonably anticipated use.

197.    At all relevant times, Walgreen knew or should have known that the use of talc and/or the PRODUCTS in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to 1971.

198.    At all relevant times, Walgreen knew that Johnson & Johnson Defendants were not providing warnings to consumers of the PRODUCTS of the risk of cancer, including ovarian cancer, posed by talc contained therein.

199.    Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of cancer, including ovarian cancer, she would not have used the PRODUCTS.

200.    As a direct and proximate result of one or more of the foregoing negligence, wrongful acts, omissions and/or the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 48 of 52

201.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against WALGREEN, CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

### COUNT FOURTEEN – BREACH OF EXPRESS WARRANTY
*Maureen Abbeduto and Keith Abbeduto vs. Walgreen Co.*

202.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 49 of 52

203.    At all relevant times, Walgreen expressly warranted, through direct-to-consumer marketing, advertisements, promotions, programs and labels, that the PRODUCTS were safe and effective for reasonably foreseeable uses, inkling use by women in the perineal area.

204.    At all relevant times, even up until present day, Walgreen represents to consumers, including Ms. Abbeduto that the PRODUCTS are safe for personal use, including in women's perineal regions.

205.    At all relevant times, the PRODUCTS did not conform to these express representations because it can cause serious injury such as cancer, including ovarian cancer, when used by women in the perineal area.

206.    Had Ms. Abbeduto received a warning that the use of the PRODUCTS increased her risk of cancer, including ovarian cancer, she would not have used the PRODUCTS.

207.    As a direct and proximate result of one or more of the foregoing, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related

complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

208.    As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against WALGREEN CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT FIFTEEN – BREACH OF IMPLIED WARRANTY
### *Maureen Abbeduto and Keith Abbeduto vs. Walgreen Co.*

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 50 of 52

209.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

210.    At the time the Defendants manufactured, marketed, labeled, promoted, advertised, distributed and/or sold the PRODUCTS, Defendants knew or should have known of the uses for which the PRODUCTS were intended, including use by women in the perineal area.

211.    With this knowledge, Walgreen impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

212.    Walgreen breached its implied warranties of the PRODUCTS when it sold the PRODUCTS to Ms. Abbeduto because it was not fit for its common, ordinary and intended uses, including use by women in the perineal area.

213.    As a direct and proximate result of one or more of the foregoing, Ms. Abbeduto was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body, mind and other damages; incurred medical bills; suffered the PRODUCTS-related complications including but not limited to the development of ovarian cancer; and endured extensive medical treatments for her ovarian cancer.

214.   As a direct and proximate result of developing ovarian cancer from the PRODUCTS, Ms. Abbeduto was unable to and will in the future be unable to or limited in her ability to attend to her normal affairs and duties.

WHEREFORE, Plaintiffs pray for judgment against WALGREEN CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT SIXTEEN – LOSS OF CONSORTIUM
### *Keith Abbeduto vs. All Defendants*

215.   Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

216.   Plaintiff Keith Abbeduto was entitled to the comfort, care, affection, companionship, services, society, advice, guidance, counsel, and consortium of his spouse.

217.   As a direct and proximate result of one or more of those wrongful acts or omissions of the Defendants described herein, Mr. Abbeduto has been deprived of the comfort, care, affection, companionship, services, society, advice, guidance, counsel, and consortium of his spouse.

WHEREFORE, Plaintiffs pray for judgment against JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.;  IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.; and WALGREEN, CO. in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 51 of 52

## **JURY DEMAND**

PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.

Dated: March 22, 2017

RESPECTFULLY SUBMITTED,

MEYERS & FLOWERS, LLC.

By:   /s/*Peter J. Flowers*_____
             Peter J. Flowers
             One of the Attorneys for Plaintiff

Peter J. Flowers (#56079)
Meyers & Flowers, LLC
3 North Second Street, Suite 300
St. Charles, IL 60174
(630) 232-6333
pjf@meyers-flowers.com

THE MILLER FIRM, LLC

Michael J. Miller, *Pro Hac Vice to be filed*
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
mmiller@themillerfirmllc.com

*Counsel for Plaintiffs*

ELECTRONICALLY FILED
3/22/2017 4:02 PM
2017-L-003007
PAGE 52 of 52