Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAUREEN ABBEDUTO and KEITH ABBEDUTO, | )<br>)<br>) |
| Plaintiffs, | ) Case No: 1:17-cv-03061<br>)<br>) |
| v. | ) **Jury Trial Demanded**<br>) |
| JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC; JOHNSON & JOHNSON BABY PRODUCTS, INC.; IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.; and WALGREEN CO., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## NOTICE OF REMOVAL

Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc. ("JJCI"), (collectively, the "Johnson & Johnson Defendants"), by their undersigned attorneys, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the Northern District of Illinois.

This is one of a large number of cases pending in federal courts around the country, in which plaintiffs allege that the use of talc products caused their ovarian cancer. On October 4, 2016, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL NO. 2738, *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, before Judge Freda L. Wolfson in the United States District Court for the

District of New Jersey, to coordinate these cases. The Johnson & Johnson Defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag along" procedure contained in the MDL rules.

As grounds for removal, the Johnson & Johnson Defendants state as follows:

I. **INTRODUCTION AND FACTUAL BACKGROUND**

1. On March 22, 2017, Plaintiffs Maureen Abbeduto and Keith Abbeduto ("Plaintiffs"), citizens of the State of Illinois, filed a lawsuit in the Circuit Court of Cook County titled *Maureen Abbeduto et al. v. Johnson & Johnson et al.*, Cause No. 17-L-3007. *See* Complaint, which is attached as part of **Exhibit A**. Plaintiffs have demanded a trial by jury.

2. Plaintiffs allege that Plaintiff Maureen Abbeduto regularly dusted her perineal area with JJCI's Johnson's® Baby Powder and Shower-to-Shower® products. These products contain talcum powder, which Plaintiffs claim proximately caused Ms. Abbeduto to develop ovarian cancer. (Compl. ¶ 2).

II. **THE JOHNSON & JOHNSON DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.**

3. The Circuit Court of Cook County, Illinois is located within the Northern District of Illinois, *see* 28 U.S.C. § 93(c), and venue for this action is proper in this Court because the Northern District of Illinois, Eastern Division is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

4. Pursuant to 28 U.S.C. § 1446(a), a copy of all process and pleadings served on the Johnson & Johnson Defendants in this case are attached as **Exhibit A**. Moreover, with the filing of this Notice of Removal, the Johnson & Johnson Defendants are paying the prescribed filing fee, filing proof of filing the Notice with the Clerk of the State Court along with proof of service on all adverse parties, and complying with all local rules.

5. Plaintiffs served the Johnson & Johnson Defendants on March 23, 2017. Therefore, the Johnson & Johnson Defendants' Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

6. Plaintiffs served Imerys Talc America, Inc., f/k/a Luzenac America, Inc. ("Imerys") on March 23, 2017.

7. Imerys consented to this removal. (*See* **Exhibit B**).

8. Plaintiffs served Walgreen Co. ("Walgreens") on March 23, 2017. As discussed in further detail below, Walgreens is nonetheless fraudulently joined and thus its consent is not required. *See, e.g.*, *Palmquist v. Conseco Med. Ins. Co.*, 128 F. Supp. 2d 618, 620 n.2 (D.S.D. 2000) (holding that "lack of consent [of a fraudulently joined defendant] is not a barrier to removal"); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

9. Plaintiffs have named Johnson & Johnson Customer Logistics Services, LLC as a defendant in the Complaint. However, Johnson & Johnson Customer Logistics Services, LLC is not a separate legal entity, and therefore, has not been properly served or joined in this case, nor could it be properly served or joined in this case. *See* **Exhibit C**, Affidavit of Lacey Elberg. Moreover, Johnson & Johnson Customer Logistics Services LLC is not an existing Illinois corporation and does not maintain a principal place of business in Buffalo Grove, Illinois or anywhere in Illinois. *See id.*

10. Plaintiffs have also named Johnson & Johnson Baby Products, Inc. as a defendant in the Complaint. However, Johnson & Johnson Baby Products, Inc. is not an existing corporation, and therefore, has not been served or joined nor could it be served or joined in this case. *See* **Exhibit D**, Affidavit of Lacey Elberg. Moreover, Johnson & Johnson Baby Products, Inc. is not an existing Illinois corporation and does not maintain a principal place of business in Illinois.

11. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Circuit Court of Cook County, Illinois.

12. The Johnson & Johnson Defendants reserve the right to amend or supplement this Notice of Removal. Additionally, if any question arises as to the propriety of the removal, the Johnson & Johnson Defendants request the opportunity to present a brief and request oral argument in support of removal.

### III. REMOVAL IS PROPER BECAUSE THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332(A).

13. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiffs and the properly joined Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1441(a), (b)(2).

#### A. The Amount in Controversy Requirement Is Satisfied.

14. Pursuant to 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. In their Complaint, Plaintiffs specifically request compensatory damages against Defendants in excess of the "jurisdictional limits of this Court" in each of their sixteen counts. (Compl. at "Wherefore" paragraphs).

16. Furthermore, Plaintiffs allege that Ms. Abbeduto developed ovarian cancer, which required surgeries and extensive medical treatments, sustained injuries of a permanent nature, suffered from severe physical, economic, and emotional injuries, incurred medical bills and will in the future be unable to or limited in her ability to attend to her normal affairs and duties. (Compl., ¶¶ 2, 48, 62, 63). *See Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514–

15 (7th Cir. 2006) (holding that diversity jurisdiction was proper where the plaintiff's complaint sought damages "in excess of $50,000" and alleged "severe and permanent" injuries, and the plaintiff did not challenge the removing defendant's estimate of his potential damage); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428–29 (7th Cir. 1997) (holding the amount in controversy for diversity purposes was satisfied where the plaintiff's medical expenses amounted to $4,400 and the plaintiff sought damages for "future medical treatment and disability care, future pain and suffering, future mental anguish, loss of past wages and impairment of future earning capacity"); *Colon v. SmithKline Beecham Corp.*, Civil No. 09-1073-GPM, 2010 WL 46523, at *2 (S.D. Ill. Jan. 5, 2010) (noting that this Court routinely finds the amount in controversy to be satisfied in cases where plaintiffs allege "severe and permanent personal injuries" from using a prescription medication).

17. On the face of the Complaint, it is therefore plain that Plaintiffs seek in excess of $75,000, exclusive of interest and costs.

**B.** **There Is Complete Diversity of Citizenship Between Plaintiffs and the Properly Joined Defendants.**

18. Plaintiffs filed their case in the State of Illinois and are citizens of the State of Illinois. (Compl., ¶ 5).

19. Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in the State of New Jersey. (*Id.* at ¶ 6).

20. Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey. (*Id.* at ¶ 7).

21. Defendant Imerys Talc America, Inc., f/k/a Luzenac America, Inc. is a Delaware corporation with its principal place of business in California. (*Id.* at ¶ 13).

22. Johnson & Johnson Customer Logistics Services, LLC does not exist as a separate entity. *See* **Exhibit C.** Johnson & Johnson Customer Logistics Services LLC is not an existing Illinois corporation and does not maintain a principal place of business in Buffalo Grove, Illinois or anywhere in Illinois. *See id.* Therefore, the Court should disregard Johnson & Johnson Customer Logistics Services, LLC for purposes of determining diversity of citizenship.

23. Johnson & Johnson Baby Products, Inc. does not exist, and therefore, the Court should disregard Johnson & Johnson Baby Products, Inc. for purposes of determining diversity of citizenship. *See* **Exhibit D**.[1]

24. While Plaintiffs have also named Walgreens, and while Plaintiffs assert that Walgreens maintains its principal place of business in Illinois, (Compl., ¶ 18), Walgreens (as explained in more detail below) has been fraudulently joined in this action and its citizenship should be disregarded for purposes of diversity jurisdiction.

25. Accordingly, there is complete diversity of citizenship between Plaintiffs and the properly joined Defendants—the Johnson & Johnson Defendants and Imerys—and thus removal is proper.[2] 28 U.S.C. §§ 1332(a), 1441(a).

**C.    Plaintiffs Have Fraudulently Joined Walgreens, and Thus Its Citizenship Should Be Disregarded.**

26. In determining whether the Court has complete diversity, the Court must look to the allegations in the Complaint. *Schur v. L.A. Wight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). "A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant

---

[1]    Plaintiffs do not allege that Johnson & Johnson Baby Products, Inc. is an Illinois corporation or that Johnson & Johnson Baby Products, Inc.'s principal place of business is in Illinois. For this additional reason, Johnson & Johnson Baby Products, Inc. should be disregarded for purposes of this removal.
[2]    The Johnson & Johnson Defendants do not concede that all of these named Defendants are properly part of this action.

simply to destroy diversity jurisdiction." *Id.* "The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal 'to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* Joinder is fraudulent and removal is proper when "the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* at 764 (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). "Framed a different way, the district court must ask whether there is '*any reasonable possibility*' that the plaintiff could prevail against the non-diverse defendant." *Id.* (quoting *Poulos*, 959 F.2d at 73) (Emphasis added).

27. The Johnson & Johnson Defendants contend that Walgreens has been fraudulently joined in this litigation with the sole purpose of depriving Defendants' of their right to a federal forum. In determining whether there has been fraudulent joinder in this case, the Court should consider the legitimacy and legal viability of the claims against Walgreens, given the legal protections afforded to a Defendant like Walgreens, which is simply a pass-through retailer of consumer cosmetic products, and the factual circumstances pled in support of the claims.[3] *See. e.g. Hale v. Bayer Corp.*, No. 15-CV-00745-JPG-SCW, 2015 WL 5474298, at *3 (S.D. Ill. Sept. 16, 2015) (dismissing Walgreen's under fraudulent joinder doctrine in strict product liability action because no reasonable possibility that an Illinois state court could rule against it – "Regardless of the number of ways in which the Plaintiffs state, restate, or rephrase, the basic facts to which the Plaintiffs bring their allegations against Walgreens is simply that the Plaintiffs shopped in a Walgreens store in Godfrey, Illinois and that Walgreens had Aleve for sale in the store in such as manner as to influence the Plaintiffs that Aleve is safe. Such general allegations are insufficient

---

[3] Defendants anticipate that Walgreen Co. will file a motion to dismiss following removal to this Court. That motion and all arguments made within are fully incorporated here.

to bring a duty to Walgreens nor is it sufficient to bring a claim within a legally recognized cause of action under Illinois law.").

28. In short, the Court should consider whether Walgreens truly belongs in this case, given that the relevant product manufacturer is JJCI and that it is clear (from the Complaint, and as a matter of common knowledge) that Walgreens does nothing more than provide shelf space for the retail of consumer products.

29. Of note, Illinois's "innocent seller statute" provides that a product distributor is entitled to dismissal from products liability claims when the plaintiff is able to pursue a claim against the manufacturer. *See* 735 ILCS 5/2-621. Plaintiffs' Complaint reveals that the claims brought against Walgreens are based solely on the fact that Walgreens—a retail store—sold products manufactured by JJCI. Federal district courts in Illinois have repeatedly held that sellers like Walgreens have been fraudulently joined in product liability actions based on the protections afforded by Illinois' innocent-seller statute. *See, e.g.*, *Lemoine v. Teva Pharm. Indus. (In re Yasmin & Yaz Prods. Liab. Litig.*, No. 3:10-cv-20332-DRH-PMF, 2010 WL 4904488, at *3 (S.D. Ill. Nov. 24, 2010) (dismissing Walgreens under the innocent-seller statute because the pharmaceutical manufacturer was part of the litigation); *Steel v. Ford Motor Co.*, No. 11-C-00460, 2011 WL 1485380, at *4 (N.D. Ill. Apr. 19, 2011) (concluding that a local car dealership had been fraudulently joined when the plaintiff's products liability claims were really directed to the manufacturer, Ford Motor Company); *Xiaofa Shi v. Am. Honda Motor Co.*, No. 11-C-2682, 2011 WL 5403618, at *2 (N.D. Ill. Nov. 8, 2011) (same).

30. This case is no different. Plaintiffs premise Walgreens' liability solely on its status as a seller of JJCI products. (*See, e.g.*, Compl. ¶ 19, "At all relevant times, Walgreens was marketing, promoting, and selling the PRODUCTS"). Plaintiffs do not assert that a retail store

like Walgreens has an obligation to make a scientific determination about the medical risks associated with every single product it sells or to independently test JJCI's products. It is clear from Plaintiffs' Complaint that their claims against Walgreens arise simply from the fact that Walgreens, like thousands of other retailers throughout the United States and the world, sell JJCI's consumer products.

31. Further, Plaintiffs cannot evade the statute with their obvious attempt at artfully pleading their claims against Walgreens. First, there are no particularized allegations against Walgreens to support recovery based on strict liability, negligence, breach of express warranty, breach of implied warranties, negligent misrepresentation, fraud, conspiracy and concerted action. The Complaint makes multiple references to "Defendants", grouping all of the Defendants together. Plaintiffs admit that the Johnson & Johnson Defendants manufactured the products and distributed them to Walgreens (Compl., ¶¶ 24-25), but then falsely allege in Count Twelve of the Complaint that Walgreens "was engaged in the business of manufacturing . . . the PRODUCTS in the regular course of business" (*see* Compl., ¶ 172) when it is beyond dispute that Walgreens was not a manufacturer of Johnson's® Baby Powder and Shower-to-Shower® products. Plaintiffs have no basis to make such a claim, and to do so highlights the fraudulent joinder of Walgreens in this case.

32. Second, in regard to the negligence claim against Walgreens, it is clear that it is nearly identical to the negligence claims Plaintiffs bring against the Johnson & Johnson Defendants. (Compl., ¶¶ 78-83, 189-201.). But, Walgreens is fundamentally different than these Defendants because it did not participate in the design, manufacture, or testing of Johnson's® Baby Powder or Shower-to-Shower®, and thus it did not owe a duty of care to Plaintiffs. *See Millman v. Biomet Orthopedics, Inc.*, No. 3:13-cv-77, 2013 WL 6498394, at *4 (N.D. Ind. Dec.

10, 2013) (holding that Illinois's innocent-seller statute barred the plaintiff's strict liability claims, and finding that the negligence claim failed because the plaintiff did not allege that the distributor owed a duty to the plaintiff); *Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011) ("Pharmacies (and normally other sellers in the chain of distribution that runs from the manufacturer to the ultimate consumer) can't be expected to warn their customers of the possible defects and dangers of the prescription drugs they sell. It would be senseless . . . to make pharmacies liable in tort for the consequences of failing to investigate the safety of thousands of drugs.").[4] Moreover, in Count Six, Plaintiffs allege negligent misrepresentation against all named Defendants, but their alleged negligent misrepresentations listed in Paragraph 114 only relate to the Johnson & Johnson Defendants.

33. Third, the conflicting nature of Plaintiffs' allegations against the Johnson & Johnson Defendants and Walgreens firmly establishes that Plaintiffs cannot separately prevail on their claims against Walgreens. (*See* Compl., Count Five, "Fraud, Fraudulent Misrepresentation and Intentional Concealment" ¶¶ 95-106) (alleging that the Johnson & Johnson Defendants fraudulently concealed material facts regarding the safety of the products from the public). *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) (noting that the "theory underlying the complaints is that the manufacturer defendants hid the dangers of Rezulin from . .

---

[4] The Johnson & Johnson Defendants acknowledge that some federal courts have refused to dismiss a plaintiff's negligence claims in this context. *See Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d 926, 936–37 (N.D. Ill. 2012). The Johnson & Johnson Defendants, however, believe that *Whelchel* is distinguishable because the retail defendant in that case had a close relationship with the manufacturer. *Id.* at 929 (stating that the retailer regularly met with the manufacturer's sales representatives and engineers about their product, was an authorized dealer of the product, and had visited the manufacturer's factory on three occasions). Walgreens's relationship to Johnson & Johnson Consumer Inc. does not rise to this level. Specifically, Walgreens is nothing more than a "pass through retailer" of JJCI's consumer cosmetic products, providing shelf space, and thus Plaintiffs' negligence claim can solely be premised on its status as a seller. *See Netherton v. Yamaha Motor Corp., U.S.A.*, No. 05-C-5265, 2007 WL 869480, at *3 (N.D. Ill. Mar. 19, 2007) (holding that a motorcycle distributor did not have a duty to the plaintiff when it did not design, manufacture, or assemble the motorcycle and it did not have any knowledge of the alleged defect).

. everyone" and, thus, the plaintiffs' conflicting "allegations that pharmacists knew and failed to warn of the dangers therefore [were] *purely tendentious*" (emphasis added)). Accordingly, Plaintiffs' artful pleading against Walgreens does not defeat removal.

34. As part of the fraudulent joinder inquiry, the Court should not disregard the circumstances surrounding Plaintiffs' purposeful decision to name Walgreens as a jurisdictional hook in an attempt to deprive Defendants of their right to a federal forum. In the thousands of talc claims that have been filed in courts across this country, retailers like Walgreens have been named in only a very small handful, and nearly always as a mechanism to attempt to defeat diversity jurisdiction. Moreover, and specific to Walgreens, despite the fact that Walgreens is a nationwide retailer of JJCI's products, Walgreens has only been named in a very small number of talc cases, and almost exclusively in Illinois. It is not a coincidence that plaintiffs in Illinois have attempted to name Walgreens (an Illinois citizen) in every talc case filed in Illinois. Thus, Walgreens should be dismissed.

35. Moreover, JJCI is already before this Court, and it is the actual manufacturer of the products that are the subject of this lawsuit. (Compl., ¶ 24); *see also* 735 ILCS 5/2-621 (allowing the innocent seller to be dismissed from a case when the manufacturer is already before the Court). Although the Johnson & Johnson Defendants and the other Defendants named in this action vigorously deny all of Plaintiffs' allegations, Plaintiffs would be able to obtain full recovery from JJCI (and/or the other Defendants) without contribution from Walgreens. *See Steel*, 2011 WL 1485380, at *2 ("Once the plaintiff has sued the manufacturer and the manufacturer is ordered to answer or otherwise plead, then the court 'shall' order the dismissal of the [retail defendant].").

36. Consequently, there exists no reasonable basis in fact or law supporting Plaintiffs' claims against Walgreens, the only non-diverse Defendant in this case.

IV. **CONCLUSION**

In sum, because there is diversity between Plaintiffs and the properly joined Defendants, removal of this case is proper.  Moreover, all properly joined and served Defendants consent to the removal of this action.  Accordingly, the Johnson & Johnson Defendants give notice that the civil action styled *Maureen Abbeduto et al. v. Johnson & Johnson et al.*, Cause No. 17-L-3007, in the Circuit Court of Cook County, Illinois, is hereby removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated:  April 24, 2017  Respectfully Submitted,

**HEPLERBROOM LLC**

By: /s/ Beth A. Bauer
Beth A. Bauer, #6274533
130 N. Main Street
PO Box 510
Edwardsville, IL 62025
(618) 307-1200
(618) 656-1364 - Facsimile
bab@heplerbroom.com

*Attorney for Johnson & Johnson and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon the following attorneys of record this 24th day of April, 2017, by operation of the electronic filing provisions of this Court:

| | |
|---|---|
| Peter J. Flowers<br>**Meyers & Flowers, LLC**<br>3 North Second Street., Ste. 300<br>St. Charles, IL 60174<br>Telephone: 630-232-6333<br>pjf@meyers-flowers.com | Michael J. Miller<br>**The Miller Firm, LLC**<br>108 Railroad Avenue<br>Orange, VA 22960<br>Telephone: 540-672-4224<br>mmiller@themillerfirmllc.com |

*Attorneys for Plaintiffs*

Angelo J. Kappas
**GORDON AND REES, LLP**
One North Franklin, Suite 800
Chicago, IL 60606
Telephone: 312-565-1400
akappas@gordonrees.com

***Attorneys for Defendants Imerys Talc America, Inc.***

/s/ Beth A. Bauer