IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : : : : : |

Civil Action No. 3:16-md-2738-FLW-LHG

MDL No. 2738

**PROPOSED JOINT AGENDA AND REPORT
FOR SEPTEMBER 6, 2017 STATUS CONFERENCE**

**I.   STATUS OF DISCOVERY**

   **a.   Johnson & Johnson Defendants**

   Discovery Taken/Requested/Set since Last Case Management Conference

   **Custodian List:** With regard to the custodians identified by MDL counsel, on July 14th, 1,106 documents (3,307 pages) were produced. On August 23rd, 31,796 pages of documents were produced. Plaintiffs have requested that Johnson & Johnson Defendants reproduce these documents as the hard drive containing the production has been detained due to service disruptions caused by Hurricane Harvey. Defendants will reproduce these documents this week. The next set of 7,373 documents (14,857 pages) will be produced the week of August 28th.

   Plaintiffs have requested documents for three additional custodians. Defendants have collected, reviewed and will produce documents for two of the three additional custodians this week. Defendants have begun collecting and reviewing documents for the third custodian and will produce any resulting responsive documents.

   **"Pared Down" Written Discovery:** On June 16, 2017, Plaintiffs served each of the Johnson & Johnson Defendants with 59 Requests for Production with

67 subparts and 67 Interrogatories with 143 subparts. On August 4th, the parties provided a Joint Letter submission to the Court regarding the written discovery requests that were in dispute due to the current scope of discovery limited to general causation issues. On August 17th, the Johnson & Johnson Defendants provided responses to the written discovery requests served by Plaintiffs that are not in dispute.

**Depositions:** In addition to the written discovery, Plaintiffs have provided the Johnson &Johnson Defendants with a list of four (4) witnesses who they would like to depose during the first wave of depositions and which are scheduled to commence after documents are produced. The Johnson & Johnson Defendants object to the depositions of these witnesses as being beyond the current scope of discovery limited to general causation issues. The parties outlined this dispute in the August 4th Joint Letter submission to the Court.

### b. Imerys Talc America, Inc.

On Wednesday August 30, 2017, Imerys produced its Supplemental Document Production to the PSC consisting of 17,164 documents (36,739 pages). Imerys had previously produced copies of all prior state court document productions made in the ovarian cancer litigation on March 9, 2017. That production contained 77,933 documents (355,356 pages). In addition, Imerys has provided copies of all previous responses to demands for discovery in the talc litigation totaling responses to 254 interrogatories with 219 subparts and 224 Requests for Production with 21 subparts. On August 30, 2017, Imerys provided responses to the pared down written discovery requests of the Plaintiff Steering Committee in this MDL. Imerys continues its investigation into the Discovery Demands served by the PSC that relate to the "asbestos" interrogatories and requests for documents. Imerys hopes to complete that investigation and produce relevant non-privileged documents on or before October 31, 2017. In addition, Plaintiffs have requested the depositions of 4 Imerys corporate witnesses. Imerys maintains that the testimony from those witnesses is not relevant to the scope of the Daubert hearings. Those arguments are outlined in the August 4 submission from the parties. Imerys continues to meet and confer with the Plaintiff Steering Committee on outstanding requests.

### c. Personal Care Products Council

On June 23, 2017, PCPC produced its responses and objections to Plaintiffs' First Document Requests. PCPC anticipates filing its responses to Plaintiffs' First

Interrogatories by Friday, September 8, 2017. Plaintiffs are currently reviewing the document production and will address interrogatory responses upon receipt.

### d. Third Party Subpoenas

Plaintiffs and Defendants met and conferred regarding the scope of third party subpoenas Plaintiffs served on Brenntag Specialties, Colgate, Colorado School of Mines, and Whittaker Clark & Daniels. The parties reached agreement on all but two issues. The issues in dispute were outlined for the Court in the parties' Joint Letter submission dated August 4th. To expedite discovery, the parties agreed to service of the subpoenas without the questions that were in dispute. Plaintiffs have reserved the right to serve supplemental subpoenas after the disputed issues are resolved by the Court. The third party subpoenas were served on these four entities during the week of August 28th.

## II. *BRISTOL-MYERS* RULING

The parties have been meeting and conferring per the Court's instruction to develop an order that would address the refiling of complaints in this MDL proceeding or in other federal courts for transfer to this MDL proceeding in light of the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco County, et al.,* 582 U.S.     (June 19, 2017). The parties have agreed on the stipulation attached hereto as Exhibit 1.

## III. MOTION TO STRIKE

On June 20, 2017, the Johnson & Johnson Defendants filed a motion to strike the privileged attorney-client work product Mehaffey Weber Memo, which was filed under seal but attached to Plaintiffs' Opposition to Defendants Motion to Dismiss in *Harders, et al. v. Johnson & Johnson, et al.*, Docket No. 3:17-cv-726. Briefing on the motion to strike is complete. The parties outlined the issues in dispute regarding this memo in the August 4th submission to the Court.

### Plaintiffs' Position:

Apart from the assertion of privilege made regarding the 1998 Mehaffey Weber memo itself (which the Plaintiffs dispute), Johnson & Johnson Defendants assured both Plaintiffs and the Court that the documents described in the memo had been collected and produced in this litigation. This memo identifies documents and materials relating to the ability of talc to cause ovarian cancer and the presence

of other carcinogens in Johnson & Johnson Defendants' talcum powder products such as asbestos. While the Plaintiffs reserved the right to inspect originals of these materials, Johnson & Johnson Defendants provided a Table listing documents by bates number that they claimed were "fully identified" from the 1998 memo. *See e.g.,* Joint Status Report, Doc. 325, at p. 2 (June 19, 2017).

On August 22, 2017, following the briefing on this memo, the parties met and conferred regarding the documents identified in the Table. Specifically, Plaintiffs conveyed that their examination suggested that the Table was not a digital "re-creation" of the boxes and files as Johnson & Johnson Defendants had represented. During that meeting, Johnson & Johnson Defendants revealed for the first time that the Table they provided did not fully identify the documents in the Mehaffey Weber memo. It was disclosed that the boxes and files described in the Mehaffey Weber memo no longer exist.

Plaintiffs have raised this issue in further detail with Johnson & Johnson Defendants by letter and may seek relief by the Court. Among the relief sought would be a request that Johnson & Johnson Defendants immediately produce the documents that were copied and coded by counsel as set forth in the Mehaffey Weber memo, p. 1, paragraph 1, and discovery into when these boxes and files (which were collected and examined in anticipation of litigation) were disposed of.

**Johnson & Johnson Defendants' Position:**

The Mehaffey-Weber memo is privileged and confidential.

However, the documents described in the Mehaffey-Weber memo at issue have been collected and produced in this litigation. On the August 22nd meet and confer call, the Johnson & Johnson Defendants restated what they have previously stated in open court - that the Table provided to Plaintiffs identified document ranges that would have been contained in the boxes referenced. The Johnson & Johnson Defendants further told Plaintiffs' counsel, again, that while the documents contained in the boxes were placed back into the Johnson & Johnson Defendants' archives and later scanned for retention, the paper boxes themselves do not exist and did not exist at the time the earliest case in this MDL was filed, making inspection of the boxes themselves impossible. The Johnson & Johnson Defendants explained to Plaintiffs' counsel, again, that the Table that was created for Plaintiffs was made after the Johnson & Johnson Defendants re-reviewed the materials collected to identify the bates-ranges of documents that fit the

4

corresponding description in the Mehaffey-Weber memo. This was done to great expense.

While inspection of the physical boxes described in the Mehaffey-Weber memo is not possible, the issue of the documents is moot because Plaintiffs already have the documents and the Johnson & Johnson Defendants have identified where these documents can be located in the existing production.

## IV.   MUSEUM ARTIFACTS

On August 16th, the Johnson & Johnson Defendants filed an application for injunctive relief regarding museum artifacts. Briefing on this issue is complete. The parties continue to meet and confer on possible resolution of these issues.

## V.   SAMPLES

### a.   Johnson & Johnson Defendants

**Plaintiffs' Position:**

Prior to Defendants' filing of the application for injunctive relief, Plaintiffs had not served discovery requests regarding samples. However, Plaintiffs will serve discovery requests regarding samples on September 1, 2017, that seek a full accounting and inventory of and access to all samples in the possession or control of Johnson & Johnson Defendants, their consultants, or their lawyers. To be clear, Plaintiffs' requests are not limited to samples currently being maintained at the museum in New Jersey, but encompass all samples that are in J&J's possession or control. Defendants will review Plaintiffs' formal request for samples when it is served.

The parties attempted to work out an agreement on Plaintiffs' request for samples in this litigation and other litigations (not only ovarian cancer but mesothelioma) around the country, and but on August 29, 2017, Johnson & Johnson Defendants refused Plaintiffs' request for information regarding samples and halted discussions. Plaintiffs request that an accounting of all samples in Johnson & Johnson Defendants' custody or control (including the product, date of sample, source of the sample, mine from which the sample originated, verified chain of custody) be provided to Plaintiffs prior to consideration of the application for injunctive relief.

5

**Defendants' Position:**

As stated on the August 30th call with the Court and expressly in the August 16th application for injunctive relief, the motion for injunctive relief sought only to deal with certain historical artifacts. It did not seek to deal with all samples that may exist of the products at issue in this litigation. Defense counsel reached out to two different Plaintiffs' counsel in an effort to work out an agreement regarding these historical artifacts. While a formal discovery request had not been served in this MDL, it was and still is Defendants' understanding that Plaintiffs in this MDL proceeding will request access to test the historical artifacts, which are the subject of Defendants' motion for injunctive relief.

During discussions regarding an agreement about historical artifacts, Plaintiffs' counsel unilaterally expanded the proposed agreement to any and all samples in Defendants' possession, custody or control, and refused to continue discussions unless the encompassed all existing samples. Defendants' position was that this was beyond the scope of the underlying motion.

Defendants have not received the formal request for samples described by Plaintiffs above. Once they receive the request, they will be able to review the scope of the request and respond accordingly.

### b. Imerys Talc America, Inc.

In addition, Plaintiffs have served discovery on Imerys with respect to samples in its possession or control. As with the Johnson & Johnson Defendants, Plaintiffs seek a full accounting and inventory of and access to all samples in the possession or control of Imerys, their consultants, or their lawyers from mines that supplied talc to Johnson & Johnson Defendants for use in their talcum powder products.

Imerys has just received this first request for Samples from Plaintiffs. It is investigating, what if any such samples may exist and whether there are additional requests for samples pending in other litigations that this Counsel is not privy to. Imerys may seek additional protections from this Court should a sample inventory exist and be the subject of multiple requests.

## VI. APPOINTMENT OF SPECIAL MASTER

On August 30th, the Court issued an order appointing retired District Judge Joel Pisano as the special master in this case, and Defendants sent Plaintiffs a proposed order regarding Judge Pisano's duties and compensation during the afternoon of August 31st. In light of the Special Master's recent appointment and the limited opportunity to review the proposed order prior to the submission of this Joint Agenda, the parties have been unable to agree upon an order outlining the Special Master's authority and specific duties, but will endeavor to do so prior to the status conference.

## VII. SCOPE OF DISCOVERY

The parties will continue to meet and confer with regard to the permissible scope of discovery in this phase of the litigation.

### a. Plaintiffs' Steering Committee

Plaintiffs look forward to discussing the scope of discovery with Defendants and the Court. A call is scheduled with Imerys for September 5th.

Defendants' recitation of permissible discovery below is not consistent with the Plaintiffs' understanding of the Court's order and heretofore was not made known to Plaintiffs until receipt of the Joint Agenda.

Plaintiffs understood the Court's directive during the August 30th call to be as follows: 1) that Defendants' interpretation of the scope of discovery in relation to general causation was incorrectly narrow; 2) that the Court had decided to broaden the scope of discovery beyond general causation; 3) that scope of discovery will now include not only all matters related to general causation, but also to Defendants' notice and knowledge regarding the potential cancer-causing properties of Johnson & Johnson's talcum powder products. Defendants below focus solely on asbestos as a constituent of talc, but Plaintiffs do not understand that the new scope of discovery to be limited to matters associated with asbestos. Rather, the new scope of discovery covers information and knowledge about all characteristics of talcum powder products that are relevant to Plaintiffs' claims.

### b. Defendants

As an initial matter, Defendants do not agree with Plaintiffs' very broad interpretation of the Court's statements and look forward to discussing this issue further with Plaintiffs' counsel and the Court. Defendants' specific positions on the scope of current discovery in dispute are outlined below.

### Johnson & Johnson Defendants

In response to the Court's comments on August 30, 2017, the Johnson & Johnson Defendants submit the following. In this litigation, the Johnson & Johnson Defendants have provided Plaintiffs with copies of all previously served responses to written discovery requests (at least 366 Requests for Production, 322 Interrogatories, including 788 subparts, and 56 Requests for Admission) and previously produced documents in other talcum powder cases throughout the country (more than 570,000 pages of documents). The Johnson & Johnson Defendants have also previously provided Plaintiffs with a list of more than 60 employees and former employees from whom documents have been collected. Since providing that list, Defendants have collected documents from additional custodians requested by Plaintiffs and have run search terms requested by Plaintiffs across the production set used in other cases. Defendants have also identified and produced additional documents from the results of running those search terms. The Johnson & Johnson Defendants have also recently responded to written discovery requests served by Plaintiffs in June 2017 that they agree relate to issues of general causation.

The Johnson & Johnson Defendants continue to object to producing corporate witnesses for deposition for the reasons stated in the August 4th Joint Letter submission to the Court. The Johnson & Johnson Defendants also continue to object to producing documents and responding to written discovery demands regarding the following issues, as it is the Johnson & Johnson Defendants' position that these are outside the scope of general causation:

- Cornstarch and/or cornstarch products;
- The closure of mines, mills, process, facilities, etc.;
- Drill logs from mines and other documents;
- Meetings with advisory committees or third-party consultants;
- Risk/liability assessment part of the sale of SHOWER TO SHOWER® to Valeant;

- Board of Director Communications;
- Communications with Mr. Zazenski at Imerys;
- The definition of "pure talc"; and
- Contracts between Defendants and any entity concerning talc purchased for use in Defendants' products.

In light of the Court's broadening of the definition of acceptable discovery in this phase of the litigation, the Johnson & Johnson defendants will agree to produce documents limited to talc, baby powder, Johnson's Baby Powder and Shower to Shower destined for the U.S. market unless they are safety related which are within the following categories:

- Alleged Contamination of J&J's talc with asbestos or asbestiform minerals;
- Complaints about lung cancer or mesothelioma;
- Testing with respect to asbestos;
- Safety with respect to asbestos;
- Labeling with respect to asbestos;
- Regulatory issues with respect to asbestos;
- Product-related specifications with respect to asbestos;
- Document requests regarding defendants' internal communications;
- Document requests regarding medical and scientific experts; and
- Document requests regarding defendants' external communications.

### Imerys Talc America

Imerys has met and conferred with the PSC regarding the scope of the discovery requests served upon it. Imerys has already agreed to produce the documents and data in its possession relating to the "asbestos" requests. As these were new requests, Imerys continues to investigate these areas. Imerys still believes that the corporate witness depositions requested by Plaintiffs are unnecessary at this stage of this MDL and will rely upon their position with regard to same submitted in the Joint Letter to the court on August 4.

## VIII.   *DAUBERT* HEARING

Plaintiffs submit that the document production process by the Defendants is ongoing and that the parties continue to meet and confer over document production issues.  A discussion of the document production status is set forth in Sections I,

9

III, V and VII. Efforts to set a specific date for Daubert hearings remain premature until the document production and other discovery issues are resolved.

Defendants request that the Court set a specific date for *Daubert* hearings.

## IX. REPORT ON THE FEDERAL COURT DOCKET

As of August 25, 2017:

    **a.** There are currently <u>727 cases</u> pending in the MDL in which the Johnson & Johnson Defendants have been served (and have opened case nos.), totaling <u>2514 Plaintiffs</u> (including <u>1,686 Plaintiffs</u> in <u>27 multi-plaintiff</u> cases removed from Missouri state court, <u>102 Plaintiffs</u> in *Harders* removed from Illinois state court, <u>11 Plaintiffs</u> in *Lovato* removed from New Mexico state court, <u>2 Plaintiffs</u> in *Robb* removed from Oklahoma state court and <u>17 plaintiffs</u> from the *Crenshaw* case from the Middle District of Georgia).

    **b.** There are currently 7 multi-plaintiff cases removed from Missouri state court and currently pending in the Eastern District of Missouri, discussed below, that the JPML has not yet considered (totaling 524 plaintiffs). Motions to dismiss and motions to remand have been filed in each of these cases. In one case, *Jinright v. Johnson & Johnson, et al.*, Docket No. 4:17-cv-01849, the Eastern District of Missouri granted Defendants' motion to dismiss and denied Plaintiffs' motion to remand on August 30, 2017. Since the last status conference, 19 cases involving 1524 plaintiffs have been remanded from the Eastern District of Missouri to Missouri state court.

The 7 multi-plaintiff cases pending in the Eastern District of Missouri are listed below along with the judges to which they are assigned.

    **Judge Henry E. Autrey**

1. Evelyn Austin, et al. v. Johnson & Johnson, et al., Case No.: 4:17-cv-01848 (CTO-48)

### Magistrate Judge John M. Bodenhausen

2. Karen Thompson, et al. v. Johnson & Johnson, et al., Case No.: 4:17-cv-01654 (CTO-44)

### Judge Jean C. Hamilton

3. Tiffany Hogans, et al. v. Johnson & Johnson, et al., Case No.: 4:17-cv-01842 (CTO-48)

4. Lesa M. Moore, et al. v. Johnson & Johnson, et al., Case No.: 4:17-cv-01856 (CTO-48)

### Judge Stephen N. Limbaugh Jr.

5. Jerie Rhode, et al. v. Johnson & Johnson, et al., Case No.: 4:17-cv-01554 (CTO-42)
6. Anna Gallardo, et al. v. Johnson & Johnson, et al., Case No.: 4:17-cv-01601 (CTO-43)

### Judge E. Richard Webber

7. Rebecca Jinright, et al., v. Johnson & Johnson, et al., Case No.: 4:17-cv-01849 (CTO-48)

c. There are a handful of other single-plaintiff cases that have been on CTOs and will be transferred in the near future to the MDL but would not greatly affect the number absent the plaintiffs in the multi-plaintiff cases.

## X. STATE COURT LITIGATION

As of August 25, 2017:

**California:** There are 157 cases with 731 plaintiffs in the California coordinated proceeding, *Johnson & Johnson Talcum Powder Cases*, Judicial Council Coordinated Proceeding No. 4877. These cases are assigned to Judge Maren E. Nelson. In the *Echeverria* case, *Sargon* (the state court equivalent of *Daubert*) science hearings were held, and the Court excluded and/or limited

several of the opinions of the Plaintiff's experts. Imerys Talc America was dismissed from *Echeverria* on its motion for summary judgment. Trial in the *Echeverria* case resulted in a plaintiff verdict awarding compensatory and punitive damages on August 21, 2017. Post-trial motions including a motion for new trial will be filed.

**Delaware**: There are currently 78 cases pending in the Superior Court of Delaware in which the Johnson & Johnson Defendants have been served. All of the Delaware cases have been consolidated before the Hon. Charles E. Butler. On January 19, 2017, the Johnson and Johnson Defendants filed a motion to dismiss for lack of personal jurisdiction. On January 31, 2017, Plaintiffs served jurisdictional discovery. On March 2, 2017, the Johnson and Johnson Defendants filed a motion for protective order to quash the jurisdictional discovery. Briefing on the motion for protective order was completed on April 17, 2017 and is awaiting an argument date. Judge Butler ordered additional briefing from all parties on the *Bristol Myers* decision to be submitted by September 4, 2017.

**Missouri:** There are currently 15 cases pending in the 22nd Judicial Circuit Court, St. Louis (City). These cases were recently remanded from the Eastern District of Missouri (eleven in July 2017 and four in August 2017). Trial in the case of *Valerie Swann, et al. v. Johnson & Johnson, et al.* before Judge Rex Burlison is set to begin October 16, 2017, and is expected to last several weeks. Defendants filed a Motion to Stay in that matter on August 25, 2017, asking the Court to delay the trial pending the resolution of personal jurisdictional challenges, any jurisdictional discovery, and the issuance of the anticipated venue decision by the Missouri Supreme Court in *M.B. v. Abbott Labs., Inc.*, SC96151. Trial in the case of *Blaes, et al. v. Johnson & Johnson, et al.* before Judge Rex Burlison began June 9, 2017. On June 19, 2017, the Court granted Defendants' Motion for Mistrial in the *Blaes, et al.* case following the United States Supreme Court's decision issued in *Bristol-Meyers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) that same day. Trial in the case of *Slemp v. Johnson & Johnson, et al.* resulted in a Plaintiff verdict on May 4, 2017, against both Johnson & Johnson Defendants and Imerys. Trial in the case of *Daniels v. Johnson & Johnson, et al.* resulted in a defense verdict on March 3, 2017 (individual claim filed in the multi-plaintiff *Valerie Swann* matter). Post-trial motions were filed. Appeals are pending from judgments against Johnson & Johnson Defendants entered in favor of plaintiffs in the *Jacqueline Fox* and *Gloria Ristesund* cases. An appeal is pending from a judgment against Johnson & Johnson Defendants and Imerys entered in favor of the plaintiff in the *Deborah Giannecchini* case.

Additionally, on July 11, 2017, the Missouri Supreme Court issued Orders denying the Johnson & Johnson Defendants and Imerys' pending petitions for writs of prohibition regarding dismissal of non-Missouri plaintiffs' claims related to the *Valerie Swann* matter. The Missouri Supreme Court "denied [the petitions] without prejudice to filing a motion in circuit court to dismiss nonresident plaintiffs based on the opinion of the Supreme Court of the United States in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), which is dispositive on the issue."

**New Jersey:** There are currently 228 cases pending before Judge Johnson in the Atlantic County Superior Court Multicounty Litigation, *In re: Talc-Based Powder Products Litigation*, Case No. 300. The cases are currently stayed for discovery purposes pending resolution of the plaintiffs' appeal of the ruling by Judge Johnson on the *Kemp* issues, with the exception of cases where *in extremis* plaintiffs have chosen to proceed for the limited purpose of preserving their testimony in anticipation of their death. The briefing on the appeals is now complete.

**District of Columbia**: There is one case pending in Superior Court of the District of Columbia: *Lori Oules v. Johnson & Johnson, et al.* (2014 CA 8327B) which is pending before Judge Brian Holeman. The *Oules* case is set for trial on April 30, 2018.

**Florida:** There are two case pending in Broward County, Florida before Judge Michael A. Robinson. There is one case pending in Miami-Dade County, Florida before Judge Rodolfo Ruiz.

**Georgia:** There is one case pending in state court in Fulton County, Georgia before Judge Jane Morrison.

**Illinois:** There are three cases pending in Madison County, Illinois state court before Judge William Mudge, one case pending in Cook County, Illinois before Judge Daniel T. Gillespie, and one case pending in McLean County, Illinois before Judge Rebecca Foley.

**Pennsylvania:** There is one case pending in state court in Allegheny County, PA before Judge Robert Colville.

## XI. STATUS OF PENDING MOTIONS

    **a.** On July 13th, the Court terminated motions to dismiss for personal jurisdiction that had been pending at that time following the *Bristol Myers* decision. The Court instructed the parties to work out an agreement for cases where personal jurisdiction motions had been pending. Because the agreement had not yet been reached, Defendants continued to file motions to dismiss in cases with personal jurisdiction issues. This agreement has now been reached. The parties respectfully request that the Court terminate these newly filed motions to dismiss so that personal jurisdiction issues can be worked out consistent with the agreement reached by the parties. Defendants reserve the right to file future motions to dismiss should Plaintiffs not refile their cases pursuant to the terms of this agreement. A proposed form of Order is attached hereto as Exhibit 2. For the status of remaining motions pending in individual cases, please see Exhibit 3 attached to this Joint Report.

    **b.** On July 14, 2017, the Court issued a dismissal of the *Estrada* Consumer Class case, finding that Estrada did not allege an injury in fact. ECF Nos. 50, 51. The Court dismissed and entered judgment in Estrada's lawsuit on August 10, 2017. ECF No. 53. Estrada intends to appeal that decision. No other motions are pending with regard to the Consumer Class Cases.

    With regard to *Mihalich v. Johnson & Johnson et al.,* although plaintiffs disagree with the ruling in *Estrada*, if the Court applies the same reasoning to the *Mihalich* complaint that it applied in Estrada, the parties expect that the Court would also find that Ms. Mihalich cannot allege an injury in fact for the same reasons set out in the *Estrada* order. To save the Court's and parties' resources on re-briefing the issue, the parties in *Mihalich* will submit a short stipulation and proposed order requesting the dismissal of *Mihalich* on the same basis as *Estrada*.

    Class Counsel has informed the Court that they are unable to appear in person at the September 6, 2017, status conference. As directed by the Court's clerk, should the Court need to address any issues related to Estrada or Mihalich by telephone, Class Counsel Timothy G. Blood may be notified at (619) 338-1100.

    **c.** Personal Care Products Council's motion to dismiss is currently pending. Briefing is complete.

Respectfully submitted,

*s/Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone: 973-549-7000
Facsimile: 973-360-9831
Email: susan.sharko@dbr.com

*s/Gene M. Williams*
Gene M. Williams
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
Telephone: 713-227-8008
Facsimile: 713-227-9508
Email: gmwilliams@shb.com

*s/John H. Beisner*
John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-7000
Facsimile: 202-661-8301
Email: john.beisner@skadden.com

*s/Lorna A. Dotro*
Lorna A. Dotro
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Morristown, NJ 07962

Telephone: 973-631-6016
Facsimile: 973-267-6442
Email: ldotro@coughlinduffy.com

*s/Sheryl Axelrod*
Sheryl Axelrod
THE AXELROD LAW FIRM, PC
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
Telephone: 215-461-1768
Facsimile: 215-238-1779
Email: saxelrod@theaxelrodfirm.com

*s/Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone: 703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Email: leigh.odell@beasleyallen.com

*s/Christopher M. Placitella*
Christopher M. Placitella
COHEN PLACITELLA ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701
Telephone: 888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com