

**One Riverfront Plaza**

1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

November 6, 2017

**<u>VIA ECF AND ELECTRONIC MAIL</u>**
All Counsel of Record

> Re:   *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and*
> *Products Liability Litigation*
> <u>**Case No. 3:16-md-02738-FLW-LHG**</u>

Dear Counsel,

By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September, 11, 2017 (D.I. 704), I was appointed as Special Master for the purpose of deciding certain discovery disputes in the above-captioned MDL proceeding.  The dispute presently before me relates to certain discovery sought by Plaintiffs through third party subpoenas, to which Defendants object.  Although the Parties have resolved many issues regarding the third party subpoenas, several open issues remain.

By way of a brief[1] background, this multi-district litigation involves allegations that certain of Defendants' products, which contain talcum powder, have been the cause of ovarian cancer for thousands of women who have used Defendants' products.  At the heart of this dispute is conflicting scientific evidence as to whether talc causes ovarian cancer with perineal usage and Defendants' knowledge of such evidence during the relevant time period.

Plaintiffs are now seeking several categories of documents, through subpoenas to third parties, which they allege speak to whether talc causes ovarian cancer and Defendants' knowledge of such research in the relevant time period.  In essence, Plaintiffs are seeking to

---

[1] I do not provide a detailed factual and procedural background for this dispute because I write for the benefit of the Court and the parties, both of whom are familiar with the facts of this case.

November 6, 2017
Page 2

obtain communications and other documents regarding Defendants' and others in the talcum industry's influence on the scientific studies on which they presume Defendants will rely. Plaintiffs' position is that these communications and documents are relevant to general causation as they relate to Defendants' knowledge of the health hazards that may be associated with the use of the products at issue.  Defendants' position is that documents Plaintiffs seek are irrelevant, prejudicial, and beyond the scope of discovery in this litigation.

I have considered the Parties' positions and arguments under the appropriate legal standards and provide my findings and conclusions below.[2]

## Subpoenas to Colgate Palmolive, Whittaker Clark & Daniels, and Brenntag Specialties, Inc.

Plaintiffs seek documents from the following third parties by subpoena (the "Third Party Subpoenas"): Whittaker Clark & Daniels, Brenntag Specialties, Inc., and Colgate-Palmolive Co., (the "Third Parties").  Defendants object to the scope of the Third Party Subpoenas to the extent they request (i) discovery of foreign trade associations; and (ii) discovery of communications between the Third Parties and Defendants regarding foreign regulation.

The Third Parties are related to this case in the following manner: Colgate Palmolive is a manufacturer of talcum powder products which purchased talc from defendant Imerys and its predecessors; Whittaker, Clark & Daniels is a distributor of talcum powder, including talcum powder mined by Imerys and its predecessors; Brenntag Specialties, Inc. purchased a portion of Whittaker, Clark & Daniels' talc business, and was also a distributor for Imerys and its predecessor.

First, Plaintiffs seek, and Defendants object to, discovery from the Third Parties of communications between the Third Parties and foreign trade associations.  Specifically, Plaintiffs' Request No. 8 seeks "[a]ny and all communications with any agent, servant, employee or consultant of any other trade association, including, but not limited to, Industrial Minerals Association (both North American and European), EuroTalc, and/or the Canadian Cosmetic, Toiletries, and Fragrance Association concerning Raw Talcum Powder, Raw Talcum Powder and ovarian cancer, and/or the adulteration of Raw Talcum Powder with asbestos, heavy metals, or

---

[2] Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible to be discoverable."

November 6, 2017
Page 3

accessory minerals."

It is the Plaintiffs' position that these entities influenced the interpretation of the science involving the carcinogenic nature of talc, and, in turn, the regulation of talc as a carcinogen. Defendants have relied on scientific reports in previous trials to suggest that talc is not a contributing cause of ovarian cancer.  Plaintiffs seek discovery of the influence and knowledge of the foreign trade associations, of which the Defendants are members, on the scientific evaluations of the carcinogenicity of talcum powder products when used by women it the perineal area.

It is Defendants' position that none of the Third Party Subpoenas serve to discover information relevant to this litigation.  In that vein, Defendants assert that "Plaintiffs' attempts to seek discovery from non-party entities do not establish any alleged 'influence' by the Defendants, do not relate to general causation, and, therefore, should not be permitted at this state in the litigation."

With respect to discovery of communications between the Third Parties and the foreign trade associations, I believe such discovery is unlikely to lead to discovery of admissible evidence. Communications between the Third Parties and foreign trade associations will not serve to prove whether talc is carcinogenic.  Further, even if discovery were to prove that the Third Parties influenced the interpretation of scientific reports, communications to which Defendants were not a party will not prove whether or not Defendants were aware of the risk.  Because the discovery sought will not lead to the discovery of admissible evidence relating to general causation and Defendants' knowledge of the alleged health hazards of its or similar products, the portion of the request seeking such discovery should be stricken.

The Third Party Subpoenas also seek, and Defendants object to, discovery of communications between the Third Parties and Defendants regarding foreign trade regulation. Specifically, the Defendants dispute Request Nos. 30, 38, and 45 which request any and all communications between the Third Party and Defendants PCPC and/or CTFA (Request 30), Defendant Imerys and/or Luzenac and/or RTM (Request 38), and the Johnson & Johnson Defendants (Request 45) "regarding any possible and/or pending foreign or domestic regulations concerning Raw Talcum Powder."  Defendants object only to discovery of communications between the Third Parties and Defendants regarding foreign regulation of talc, and do not object to the Requests as they relate to domestic regulation of talc.

It is Plaintiffs' position that the talc industry, including Defendants, took an active role in

November 6, 2017
Page 4

influencing the development of the science of causation, testing, and regulation on talc. Additionally, foreign regulatory reviews rely on domestic analysis of the scientific evidence in relation to a causal connection between talc and ovarian cancer and vice versa. Further, Plaintiffs assert that the FDA relied on reports sponsored by Defendants and the Third Parties. As such, Plaintiffs believe discovery of these communications are relevant to the general issue of causation.

It is Defendants' position that these communications are not relevant to this litigation, noting that foreign regulatory standards and industry regulations differ from those in the United States. As such, it is Defendants' position that these requests are unduly burdensome, time consuming, and expensive in addition to be irrelevant.

With respect to communications between the Third Parties and Defendants regarding foreign regulation, I believe the request may possibly lead to the discovery of admissible evidence. Communications between the Defendants and the Third Parties have the potential to show Defendants' knowledge of the risks of talc and/or its products, as well any efforts by Defendants to sway the studies. Because the request may lead to the discovery of admissible evidence, this request is proper.

**Subpoena to the Colorado School of Mines**

In addition, Plaintiffs seek discovery from the Colorado School of Mines. The Colorado School of Mines performed testing and mine validation studies for Defendants and certain of Defendants' competitors.

Defendants object to Request No. 1, which seeks "[a]ll test results (including mineralogic, petrographic, and chemical analyses), analysis, conclusions, notes, lab books, log books, chain of custody documents, photographs, images, memoranda, diagrams, correspondence and other documents or materials of any type or form related to Raw Talcum Powder, Raw Talcum Powder and ovarian cancer, and the adulteration of Raw Talcum Powder with Asbestos, Heavy Metals, or Accessory Minerals, sent to [THE COLORADO SCHOOL OF MINES] or otherwise mined or supplied by the following entities during the Relevant Time Period: Engelhard, Johns-Manville, Colgate Palmolive, Proctor & Gamble, and R.T. Vanderbilt." Plaintiffs assert these parties received talc from the same mines as Defendants.

It is Plaintiffs' position, in sum, that the Colorado School of Mines was one of the major institutions performing mine validation studies and raw material testing for the talc industry,

November 6, 2017
Page 5

including for Defendants, and also provided opinion and comment on studies and papers published related to talc, talc mining, and material purity.  Plaintiffs believe this discovery will reveal "(i) the levels of adulterants in the talc from these common sources; and (ii) the testing results of the talc once mined, milled, and sold to manufacturers – both of which are directly relevant to establishing the propensity of Defendants' talcum powder products to cause ovarian cancer with perineal usage," particularly with asbestos, "since the most minute presence of asbestos has the propensity to be carcinogenic."  Thus, Plaintiffs argue that the discovery sought is directly relevant to the issues of whether talc and its constituent minerals are carcinogenic and further relevant to whether talc may cause ovarian cancer with perineal usage.

It is Defendants' position that Defendants' competitors have different sources of and specifications for grade of talc, mining specifications, and other product specific requirements that have no bearing on the scientific inquiry of general causation, and these competitors presumably have different manufacturing methods, different inspection and processing methods, etc.  Defendants argue that what other companies did and what testing was done for those companies has no relevance to the issue here of general causation, nor to any issue in this litigation.

Testing and evaluation of talc from Defendants' competitors and others in the talc industry during the relevant time period, particularly from companies that received talc from the same sources as Defendants, may reveal a link between the talc utilized by Defendants and ovarian cancer.  Accordingly, I conclude that Plaintiffs' request seeking discovery from the Colorado School of Mines is permissible.

Accordingly, and for all the foregoing reasons, I conclude that Plaintiffs are entitled to discovery from the Third Parties of communications between Defendants and the Third Parties, but are not entitled to discovery of communications between the Third Parties and foreign regulatory bodies.  I also find that Plaintiffs are entitled to the discovery sought from the Colorado School of Mines.

Very truly yours,

s/ Joel A. Pisano

Joel A. Pisano

cc:    Honorable Freda L. Wolfson (via ECF and First-Class Mail)
       Honorable Lois H. Goodman (via ECF and First-Class Mail)