## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION : : : : : : : : : | Civil Action No. 3:16-md-2738-FLW-LHG<br><br>MDL No. 2738 |

-------------------------------------------------

## PROPOSED JOINT AGENDA AND REPORT
## FOR FEBRUARY 7, 2018 STATUS CONFERENCE

### I.   STATUS OF DISCOVERY

#### A.   DEPOSITIONS

Plaintiffs served their Initial Deponent Disclosure list on January 10, 2018. The list included 62 witnesses, 30 for the J&J Defendants, 17 for Imerys, 6 for PCPC, and 9 third party deponents.

#### i.   PLAINTIFFS' POSITION

During the September 2017 Status Conference, the Court made clear that the scope of discovery in the MDL was broad, encompassing not only "general causation," but issues of the purity of defendants' talcum powder products, defendants' influence on the science of ovarian cancer and talcum powder products, and "what defendants' knew and when they knew it". See Hearing Tr. p. 4-14 (Sept. 5, 2017).

Prior to the September 2017 conference, the PSC had requested an initial set of 8 depositions; 4 from the J&J defendants (McCarthy, Musco, Wajszczuk, Swei) and 4 from Imerys (McCarthy, Ferret, Pier, Turner).  These witnesses were chosen by the PSC's for 2 reasons:  1) these witnesses were primarily "science" witnesses whose testimony could reasonably be seen as relevant to expert disclosures; and 2)

defendants had represented that the custodial files relating to these particular witnesses were complete.  Because of ongoing disputes about the adequacy of defendant's written discovery and document production, however, the Court stayed these and any other depositions until document discovery was substantially complete.

Subsequently, and in light of the Court's direction at the September 2017 Status conference, Ms. Sharko informed the PSC and Special Master Pisano that J&J was "willing to produce these 4 people for depositions" following its production of documents to the PSC and upon the entry of a deposition protocol.  See Hearing Tr. p.17 (Oct. 4, 2017).  At that conference, Special Master Pisano requested that the PSC further identify "how many depositions" the PSC wanted beyond the ones that had already been identified and "who they are." Id. at 58-59.

Following the December Status Conference, the PSC produced its Initial Disclosure of Deponents on January 10, 2018.  As explained in that disclosure, the number of requested depositions of these three defendants were similar to -- and in many cases less than -- the number of witnesses taken in other MDL's including MDL's whose initial discovery was limited to "general causation." See Initial Disclosure of Potential Deponents, p. 2-3, para 3 (Exhibit A).  The PSC further noted that its discovery was "initial" because J&J had more than doubled its document production in the last part of 2017, including over 400,000 pages produced in December alone.  Id. at p. 1-2, para 2.

At Special Master Conference held on January 22, 2018, the PSC argued that the witnesses it identified were important to issues related to science and general causation, including the composition of the products, testing, sampling, and influence of the scientific community.  The PSC further indicated that it could begin taking Imerys witnesses immediately but requested that J&J depositions begin only after the PSC had a reasonable opportunity to review documents produced within the last 90 days.  The PSC also made clear that it would try to schedule "science-type" witnesses early so that the parties could to prepare expert reports.

In a subsequent letter to the Special Master on January 24, 2018, J&J apparently reneged on its prior offer to produce their employees Tim McCarthy, Homer Swei, Nancy Musco and Charles Wajszczuk for deposition.  Instead, J&J offered a single 30(b)(6) deposition "as a compromise."  In a letter dated January 30, 2018, the PSC objected to J&J's reversal of its position and proposed "compromise" and requested that depositions proceed, including depositions of these 4 corporate witnesses.

In further anticipation of depositions from all defendants, and as discussed with Special Master Pisano, the parties have been negotiating a "deposition protocol." The PSC hopes to have the proposed protocol to Judge Pisano, along with any areas or disagreement for his resolution, in the near future.

## ii.   DEFENDANTS' POSITION

The issue of the necessity, if any, and potential scope of depositions required for the adjudication of the scientific issues before the Court was argued before the Special Master on January 22, 2018, and the parties await His Honor's rulings. Defendants are puzzled by Plaintiffs' attempt to relitigate these issues and submit that their account above is inaccurate and incomplete. The idea that 62 depositions of fact witnesses are needed for the briefing and argument of Daubert motions is inconceivable, as Judge Pisano noted at the hearing, saying that the list was too long. During the hearing, speaking for the Plaintiffs, Mr. Placitella stated, "So if you're going to say what I would put in a case management order? Let's get all the formulas on the table. Let's get all the testing on the table. Let's take a 30(b)(6) deposition of Imerys and Johnson & Johnson as to the person with the most knowledge concerning the formulas, the testing, and the ingredients. We can do that in 60 to 90 days. . ." (1/22/18 Hearing Tr. 39:5-42:13, attached as Exhibit B). After the hearing, based on this position, and in an effort to forge a compromise and move on to the key issues in the case, on Wednesday, January 24, 2018, Defendants sent a letter to Judge Pisano stating that, as a compromise, they would agree to produce a 30(b)(6) witness to speak on the issue of what testing was done to Defendants' products if Plaintiffs would agree to withdraw all of their requests for depositions of current and former employees. The parties await Judge Pisano's ruling on these issues.

If it is determined that the PSC is entitled to take depositions of everyone they list, then the J&J Defendants submit that the Court's Order requiring Plaintiff's disclosure of specific witnesses that are necessary for Daubert hearings should be enforced with Plaintiffs justifying their selections, and the defense have the opportunity to object to those witnesses and be heard on those objections.

## iii.   Imerys' Additional Position

In addition to the Defendants' position above, as Imerys advised Judge Pisano at the January 22, 2018 conference, Imerys objects to the individual witnesses identified by the PSC for deposition. In the spirit of compromise and moving this case forward, although it believes it is irrelevant to a Daubert determination, Imerys

is willing to the produce the 30(b)(6) witness suggested by Chris Placitella.   If it is determined that the PSC is entitled to take depositions, then Imerys  submits that the Court's Order requiring Plaintiffs' disclosure of specific witnesses that are necessary for Daubert hearings should be enforced and Imerys requests it be given its opportunity to object to those witnesses and be heard on those objections.

## B.   DOCUMENTS AND WRITTEN DISCOVERY

### i.   Johnson & Johnson Defendants

**J&J DEFENDANTS' POSITION:**   Since the last status conference, the Johnson & Johnson Defendants completed their document production and provided supplemental responses to Plaintiffs' First Set of 67 Interrogatories and Plaintiffs' First Set of 59 Document Demands.

The issues that the Plaintiffs raise with regard to the document production were argued before Judge Pisano on January 22, 2018.  The issues were also the subject of extensive letters.  The Defendants suggested to the Plaintiffs that the parties simply rely on their prior letters, rather than reargue the issues here.  The Plaintiffs declined.  Defendants dispute the Plaintiffs' account below and refer the Court to their letter dated January 19, 2018 which is attached hereto as Exhibit C (without attachments).

While the PSC focuses largely on the numbers and pages of documents produced, it significantly overstates the production, and the numbers it provides below obscure significant facts about the recent production in several respects:

- Approximately 40,000 documents – ***nearly a quarter of the post-September production*** – are non-party documents, which Johnson & Johnson Consumer Inc. (JJCI) obtained from PTI Royston, LLC, a third-party contract manufacturer of the JJCI talc products in Georgia, for purposes of making them available to Plaintiffs.

- Approximately 40,000 documents are comprised of the "Asbestos Track Litigation Production" for the reasons discussed in Defendants' January 19, 2018 letter.  Because these documents are searchable, Defendants have undertaken great efforts to match the asbestos production in the MDL with the asbestos production in the state court proceedings to identify duplicate documents.  This will ease the burden of Plaintiffs' review of these documents.

- Approximately 25,000 "documents" are placeholders (i.e., non-substantive documents that do not require review) that were included at the request of Plaintiffs' counsel to account for nonresponsive attachments, privileged documents or documents with technical issues.

- Approximately 10,000 documents are easily identifiable duplicative attachments that are required to be produced pursuant to the ESI protocol. They can be readily de-duplicated using the data provided with the production.

Therefore, there is no reason to delay deposition and expert discovery and *Daubert* hearings to allow Plaintiffs any more time to review Defendants' documents.

**PLAINTIFFS' POSITION:**  As discussed above and in correspondence to both the Court and the Special Master, the documents produced by J&J were far more extensive than what the PSC had anticipated.  Prior to the September 2017 Status conference when the J&J defendants had insisted that its document production was complete, J&J had produced approximately 700,000 pages to the PSC.  This production included J&J's "state court production" of about 500,000 pages that were produced in this MDL in April.

Between September 2017 and December 21, 2017, however, and in response to the entry of CMO 9, J&J alone produced *an additional 840,593 pages of documents*.  This supplemental production included over 400,000 pages produced in December.

As explained in the cover letters submitted to Judge Pisano on January 5, 2018, January 15, 2018, January 19, 2018 and January 30, 2018 (Exhibit D, letters without attachments) and including paragraph 3 of the PSC's January 10, 2018 "Initial Disclosure of Potential Deponents," (Exhibit A) J&J's supplemental production was far greater than what it had lead the PSC and the Court to believe. While there is undoubtedly some duplication between J&J's post-September 2017 production and its pre-September 2017 production, the vast majority of these 840,593 pages had never been produced in this MDL before.  Moreover, many of these new J&J documents deal with science questions, including the contamination of J&J's talcum powder products with asbestos and other known carcinogens and what the PSC believes was J&J's manipulation of the science of talcum powder and ovarian cancer for the past 30 years.  In fact, even the duplicate documents produced

by J&J have to be manually reviewed by the PSC as J&J assigned the duplicate documents "new" bates numbers rendering useless the PSC's prior review of those same documents.

To meet the burden J&J's recent production has placed on the PSC -- and to meet the Court's expectation that the discovery and expert process proceeded expeditiously in 2018 -- the PSC is working tirelessly to analyze and review J&J's new production.  Nevertheless, the PSC cannot do in a matter of weeks what it took J&J a year to do.  Accordingly, the PSC has requested that depositions related to J&J witnesses be delayed 60 days so that the PSC can complete its review of the newly produced documents.

### ii.  Imerys

**IMERYS POSITION:**  In accordance with this Court's Order, Imerys completed its document production on January 5, 2018 and there are no outstanding discovery requests pending from the PSC.

**PLAINTIFFS' POSITION**:  On January 5, 2018, Imerys produced an additional 75,000 pages of documents.  The PSC is prepared to begin depositions of Imerys' witnesses as soon as a deposition protocol is entered.

### iii.  Personal Care Products Council

In June 2017, defendant Personal Care Products Council ("PCPC") produced approximately 250,000 pages of documents in response to the PSC's requests for production. On November 20, 2017, the PSC requested that PCPC supplement its responses.  On December 15, 2017, PCPC produced an additional approximately 36 documents.  On January 11, 2018, PCPC served lengthy and detailed supplemental responses to the PSC's requests for production.

On October 4, 2017, PCPC responded to the PSC's interrogatories. Unfortunately, the interrogatory responses were served only on counsel who drafted the interrogatories, not on the entire PSC.  That mistake was rectified on November 17, 2017.   On January 22, 2018, the PSC requested that PCPC supplement its responses to the interrogatories.  On February 1, 2018, the PSC and PCPC conferred regarding the requests for supplementation.  PCPC anticipates supplementing the requests by the end of February.

## II.    SAMPLES AND MUSEUM ARTIFACTS DISCOVERY

The parties have submitted an agreed upon sample protocol for the Johnson & Johnson Defendants' samples to be entered by the Court.  The parties continue to meet and confer on a protocol to divide samples in the possession of Imerys and will present the protocol to the Court on or before February 16, 2018.

## III.   REQUEST FOR EXPERT REPORTS AND *DAUBERT* HEARING DATE

Prior to the disclosure of expert reports, Plaintiffs respectfully request that the Court allow Plaintiffs adequate time to review the substantial number of new documents produced in this MDL and to conduct depositions focused on general causation and the defendants' influence over the scientific literature and governmental agencies.  Plaintiffs will be prepared to discuss a schedule for the disclosure of expert reports and the *Daubert* process.

Defendants respectfully request that the Court set a date for the service of the reports of Plaintiffs' experts and the date for a *Daubert* hearing.

## IV.   STATUS OF CASES RE-FILED IN THE MDL PER CMO 8

There are 459 cases where Plaintiffs who were previously part of a multi-plaintiff complaint have filed short form complaints in this MDL proceeding but have not complied with CMO 8 in either serving the short form complaint on Defendants or filing a notice of filing on the master docket.  *See* CMO 8, ¶¶ 1 and 5 (requiring plaintiffs to file short form complaints pursuant to CMO 2 and to serve these complaints pursuant to CMO 3); *see also* CMO 3, ¶¶ 3 and 4 (requiring filing of an ECF notice if the original service of process was proper or requiring service of process where the original complaint was not properly served).  Defendants would like to discuss options with the Court to dismiss these 459 cases with prejudice for failure to comply with CMO 8.  Alternatively, Defendants request that the Court enter an order deeming the tolling provisions of CMO 8 inapplicable to these cases for failure to comply with the Court's Order.

The PSC objects to the dismissal of these cases.  The PSC requested a list of these cases at the December 7, 2018 status conference and renewed the request during the preparation of the Joint Report.  The PSC received the list on Saturday, February 3rd and is analyzing the list.  Short form complaints have been filed in each

of these cases in compliance with CMO 8.  Defendants are on notice of the claims.
The PSC asks that the Court allow a 30-day period for the PSC to notify counsel of
the alleged defect in order that any deficiencies may be addressed.

Plaintiff Betsy Summers-West unilaterally dismissed her case without
prejudice on January 17, 2018.  Defendants object to the unilateral dismissal of the
Summers-West case, as Defendants were never served with the Short Form
Complaint or an ECF Notice, and therefore, did not have the opportunity to respond
to the dismissal.  Defendants object to the dismissal of any case without prejudice.

There are also 358 Plaintiffs from multi-plaintiff cases pending in the MDL
who have not filed Short Form Complaints.  Defendants request that these cases be
dismissed with prejudice.  A copy of the proposed order is attached hereto as Exhibit
E.

The PSC was provided the list of the cases on Saturday, February 3rd, during
the preparation of the joint status report.  The PSC has not had opportunity to
thoroughly review the list and consult with counsel in the individual cases.  The PSC
is aware of some cases included on the list that involve New Jersey and California
residents which were re-filed in state court due to the lack of subject matter
jurisdiction in this Court.   The re-filing of these cases in state court was
accomplished after discussions with Defendants.  The PSC asks that the Court allow
the parties the opportunity to meet and confer regarding the cases in question to
determine the status of the claims.

## V.   DUPLICATE FILED CASES

There are 63 plaintiffs in this MDL who have multiple cases pending.  There
are two primary scenarios where duplicate filing of cases occurred: (1) the case was
filed in another federal district and transferred into the MDL, but prior to transfer,
plaintiffs' counsel opened up another case directly in the MDL; or (2) two different
firms have filed a case for the same plaintiff.  Defendants will work with the PSC to
identify the primary case and dismiss any duplicate filed case.

## VI.   REPORT ON FEDERAL DOCKET

As of January 26, 2018:

> **A.** There are currently 4,884 cases pending in the MDL in which the
> Johnson & Johnson Defendants have been served or in which

8

Plaintiffs from multi-plaintiff cases pending in the MDL have filed Short Form Complaints on individual dockets and have not served the Johnson & Johnson Defendants (and have opened case numbers), totaling 5,211 Plaintiffs (including <u>307 Plaintiffs</u> in <u>34 multi-plaintiff</u> cases removed from Missouri state court that have not filed Short Form Complaints on individual dockets, <u>23 Plaintiffs</u> in *Harders* removed from Illinois state court that have not filed Short Form Complaints on individual dockets, <u>11 Plaintiffs</u> in *Lovato* removed from New Mexico state court that have not filed Short Form Complaints on individual dockets, <u>1 Plaintiff</u> in *Robb* removed from Oklahoma state court that have not filed Short Form Complaints on individual dockets and <u>16 plaintiffs</u> from the *Crenshaw* case from the Middle District of Georgia that have not filed Short Form Complaints on individual dockets).

Individual Plaintiffs in the multi-plaintiff cases are in the process of filing Short Form Complaints on individual dockets. Thus far, all of the individual Plaintiffs in the following multi-plaintiff cases have filed Short Form Complaints on individual dockets: *Karen Glenn, et al.* and *Mary Rea, et al.* (one *Rea* Plaintiff, Exia Monroe, a New Jersey resident, has re-filed in New Jersey state court). Additionally, all of the individual Plaintiffs in the *Charmel Rice, et al.* and *Lillie Lewis, et al.* multi-plaintiff cases have filed Short Form Complaints on individual dockets, except individual Plaintiffs Charmel Rice and Lillie Lewis.

There are six Plaintiffs named as the lead Plaintiffs in multi-plaintiff cases who did not refile Short Form Complaints on individual dockets, but filed a Short Form Complaint in their corresponding multi-plaintiff case dockets. These include the lead Plaintiffs from two multi-plaintiff cases removed from Missouri state court (*Brenda Anderson, et al.*, *Lillie Lewis, et al.*, *Charmel Rice, et al.*, and *Jerie Rhode, et al.*), Marie Robb in the *Robb* case removed from Oklahoma State, and Deborah Crenshaw from the *Crenshaw* case originally filed in the Middle District of Georgia.

**B.** There are currently **2** multi-plaintiff cases removed from Missouri state court and pending in the Eastern District of Missouri, discussed below, that the JPML has not yet transferred into the MDL (totaling

117 plaintiffs). Motions to dismiss and motions to remand have been filed in these cases.

The two cases pending in the Eastern District of Missouri are listed below along with the judges to which they are assigned.

### Judge Ronnie L. White

Darren Cartwright, et al. Case No. 4:17-cv-02851-RLW

### Judge Audrey Fleissig

Maureen Kassimali, et al. v. Johnson & Johnson, et al. Case No. 4:18-cv-00014-AGF

C. There are a handful of other single-plaintiff cases that have been on CTOs and will be transferred in the near future to the MDL. These cases would not greatly affect the number of cases pending in the MDL absent the plaintiffs in the multi-plaintiff cases.

## VII. STATE COURT LITIGATION

As of January 26, 2018:

**California:** There are 303 cases with 492 plaintiffs in the California coordinated proceeding, *Johnson & Johnson Talcum Powder Cases*, Judicial Council Coordinated Proceeding No. 4877. These cases are assigned to Judge Maren E. Nelson. To date, a *Sargon* hearing has been held, and one case—*Echeverria*—proceeded to trial. On July 10, 2017, the court granted Imerys' motion for summary judgment, dismissing all claims against Imerys. The *Echeverria* trial resulted in a plaintiff verdict against the Johnson & Johnson Defendants; however, on October 20, 2017, the Court granted the Johnson & Johnson Defendants' motions for judgment notwithstanding the verdict and, alternatively, for a new trial. Elisha Echeverria, Acting Trustee of the 2017 Eva Echeverria Trust, filed her Notice of Appeal on December 18, 2017. The Johnson & Johnson Defendants filed their Cross-Notice of Appeal on January 4, 2018.

The next status conference will be held on March 22, 2018.

**Delaware**: There are currently 188 cases pending in the Superior Court of

Delaware in which the Johnson & Johnson Defendants have been served. All of the Delaware cases have been consolidated before the Hon. Charles E. Butler. On January 19, 2017, the Johnson and Johnson Defendants filed a motion to dismiss for lack of personal jurisdiction. On January 31, 2017, Plaintiffs served jurisdictional discovery. On March 2, 2017, the Johnson and Johnson Defendants filed a motion for protective order to quash the jurisdictional discovery. Briefing on the motion for protective order was completed on April 17, 2017 and is awaiting an argument date. Judge Butler ordered additional briefing from all parties on the *Bristol Myers* decision to be submitted by September 4, 2017. On December 21, 2017, Judge Butler issued an order requesting Plaintiffs respond to questions about jurisdictional discovery by January 31, 2018.

**Missouri:** There are currently 15 cases, with a total of 721 plaintiffs pending in the 22nd Judicial Circuit Court, St. Louis (City) in which Defendants have been served.

Trial in the case of *Daniels v. Johnson & Johnson, et al.* resulted in a defense verdict on March 3, 2017 (individual claim filed in the multi-plaintiff *Valerie Swann* matter). Plaintiffs filed a motion for new trial on April 10, 2017, which is pending before the trial court.

Appeals are pending from judgments against Johnson & Johnson Defendants entered in favor of plaintiff in the *Gloria Ristesund* case. Appeals are also pending from judgments against the Johnson & Johnson Defendants and Imerys in the *Deborah Giannecchini* and *Lois Slemp* cases.

Trial in the case of *Michael Blaes on behalf of Shawn Blaes v. Johnson & Johnson, et al.* before Judge Rex Burlison is currently stayed and briefing on Defendants' petitions for writs of prohibition is pending before the Missouri Supreme Court on venue challenges. Oral argument is set for February 27, 2018.

In the *Lois Slemp* case, that trial court found that plaintiffs had established personal jurisdiction exists in Missouri state court over the Johnson & Johnson defendants and Imerys. Briefing on the Johnson & Johnson Defendants' petition for writ of prohibition with respect to the *Lois Slemp* case challenging the trial court's orders on personal jurisdiction and striking certification of the final judgment is pending before the Missouri Court of Appeals.

On October 17, 2017, the Missouri Court of Appeals, Eastern District, reversed and vacated the judgment in the *Jacqueline Fox* case for lack of personal

jurisdiction. The Court also rejected Plaintiff's request to remand the case to the trial court to attempt to establish jurisdictional facts. On December 19, 2017, the Court denied Plaintiff's Motion for Rehearing. Plaintiff has requested review of the decision by the Missouri Supreme Court; this request is currently pending.

In the multi-plaintiff *Gail Lucille Ingham, et al. v. Johnson & Johnson, et al.* case, the trial court ordered the claims of all plaintiffs set for trial on June 4, 2018, without resolving pending personal jurisdiction and venue challenges. Defendants filed a writ with the Supreme Court of Missouri challenging the order of setting the claims of all plaintiffs for trial, which was denied. The case is set for trial on June 4, 2018.

**New Jersey:** There are currently 343 cases pending before Judge Johnson in the Atlantic County Superior Court Multicounty Litigation, *In re: Talc-Based Powder Products Litigation*, Case No. 300. The cases are currently stayed for discovery purposes pending resolution of the plaintiffs' appeal of the ruling by Judge Johnson on the *Kemp* issues. On January 8, 2018, the New Jersey Appellate Division issued a *Sua Sponte* Order staying the appeals for six months or until the New Jersey Supreme Court decides the appeal pending in *In re: Accutane Litigation*, A-25-17, 079958, and *In re: Accutane Litigation*, A-26/27-17, 079933.

**Florida:** There are twelve cases pending in Florida state court. There are five cases pending in Broward County, Florida, including three cases before Judge Michael A. Robinson, one case before Judge David Haimes, and one case before Judge Sandra Periman. There are two cases pending in Miami-Dade County, Florida, including one case before Judge Rodolfo Ruiz and one case before Judge Dennis Murphy. There are two cases pending in Hillsborough County, Florida before Judge Rex Barbas. There is one case pending in Osceola County, Florida before Judge Margaret Schreiber. There is one case pending in Palm Beach County, Florida before Judge Jamie Goodman. There is one case pending in Volusia County, Florida before Judge Christopher France.

In the *Ricketts* matter, Imerys' Motion to Dismiss for Lack of Personal Jurisdiction was denied on November 9, with the Court granting 30 days for Imerys to file an appeal. That appeal was filed on December 8, 2017.

**Georgia:** There is one case pending in state court in Fulton County, Georgia before Judge Jane Morrison. On January 10, 2018, the Court stayed all discovery in this case.

**Illinois:** There are two cases pending in Madison County, Illinois state court before Judge William Mudge, one case pending in Cook County, Illinois before Judge Daniel T. Gillespie, and one case pending in McLean County, Illinois before Judge Rebecca Foley.

**Pennsylvania:** There is one case pending in state court in Allegheny County, PA before Judge Robert Colville. On November 13, 2017, the Court granted Imerys' Preliminary Objections to personal jurisdiction in Pennsylvania and dismissed plaintiff's claims against Imerys in this case. There is one case pending in state court in Philadelphia County, PA before Judge Lisa Rau.

**Louisiana**: There are seven cases pending in the Parish of Orleans, Louisiana, including two cases before Judge Robin M. Giarrusso, two cases before Judge Clair Jupiter (docket being handled by former Judge Melvin Zeno while Judge Jupiter is on medical leave for three months), one case before Judge Paulette Irons, one case before Judge Kern Reese, and one case before Judge Piper Griffin.

In the *McBride* matter, Imerys' Motion to Dismiss for Lack of Personal Jurisdiction was granted on December 1, 2017. On January 3, 2018, the Court denied the Plaintiff's motion for a new trial on this ruling.

## VIII.   STATUS OF PENDING MOTIONS

**A.** The list of motions pending in individual cases is attached hereto as Exhibit F. The proposed order terminating motions to dismiss pursuant to CMO 8 listed in Exhibit F is attached hereto as Exhibit G.

**B.** On July 14, 2017, the Court issued a dismissal of the *Estrada* Consumer Class case, finding that Estrada did not allege an injury in fact. ECF Nos. 50, 51. The Court dismissed and entered judgment in Estrada's lawsuit on August 10, 2017. ECF No. 53. Estrada has appealed this decision. No other motions are pending with regard to the Consumer Class cases.

**C.** Personal Care Products Council's motion to dismiss is currently pending. Briefing is complete.

Respectfully submitted,

_s/Susan M. Sharko_____
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  973-549-7000
Facsimile:  973-360-9831
Email:  susan.sharko@dbr.com

_s/Gene M. Williams_____
Gene M. Williams
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
Telephone:  713-227-8008
Facsimile:  713-227-9508
Email:  gmwilliams@shb.com

_s/John H. Beisner_____
John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  202-371-7000
Facsimile:  202-661-8301
Email: john.beisner@skadden.com

_s/Lorna A. Dotro_____
Lorna A. Dotro
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
Telephone:  973-631-6016
Facsimile:  973-267-6442
Email: ldotro@coughlinduffy.com

14

*s/Sheryl Axelrod*
Sheryl Axelrod
THE AXELROD LAW FIRM, PC
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
Telephone:  215-461-1768
Facsimile:  215-238-1779
Email: saxelrod@theaxelrodfirm.com

*s/Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone:  703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
Telephone:  334-269-2343
Email: leigh.odell@beasleyallen.com

*s/Christopher M. Placitella*
Christopher M. Placitella
COHEN PLACITELLA ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701
Telephone:  888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com