UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2738 (FLW)(LHG)<br><br>AGREED ORDER AND STIPULATION REGARDING PRODUCTION OF TALC SAMPLES FROM IMERYS TALC AMERICA INC. |

WHEREAS, plaintiffs in the above captioned action as well as other actions in which plaintiffs have made personal injury claims regarding defendants' talcum powder ("Talcum Powder Litigation") have requested that Imerys Talc America, Inc. ("Imerys") produce historical[1] samples of talc provided to Johnson & Johnson for Johnson's® Baby Powder or Shower to Shower® (collectively "talc samples'") for testing;

WHEREAS, Imerys has represented that they have identified the talc samples available in an inventory provided to plaintiffs' counsel and which is attached hereto as Exhibit A;

---

[1] As used in this Agreed Order and Stipulation, "historical" refers to samples taken prior to 2014.

WHEREAS, there are thousands of plaintiffs involved in Talcum Powder Litigation against Imerys and a limited, finite supply of the talc samples;

WHEREAS, Imerys make no representations as to whether or not (i) the talc samples are comprised of marketed talcum powder, (ii) the recorded information about the talc samples is accurate, (iii) a chain of custody can be established for the talc samples and (iv) the talc samples were stored in a manner to avoid contamination by other particulates;

WHEREAS, the parties dispute whether testing regarding any talc sample or group of talc samples would result in any evidence relevant to any plaintiff or plaintiffs' claims;

WHEREAS, Imerys has represented that it has not opened or caused to be opened the talc sample containers to test or otherwise examine their contents since the talc samples were located in response to plaintiffs' production requests[2];

WHEREAS, plaintiffs' counsel who are signatories to this Agreed Order have represented that they have the authority to agree to this stipulation and select,

---

[2] The only exceptions to this are samples A02008, A03038, and A09309 as identified in Exhibit A.  In an effort to comply with instruction of the Court in the matter of Ratcliff v. Borgwarner Morse Tec LLC et, al, Superior Court of Washington for King County, Dkt. No 16-2-18128-7 SEA, and to ensure that Plaintiff and Defendants in that action have an opportunity to test a sample, if they choose, Imerys provided Plaintiff in the Ratcliff case (at the request of their counsel, the Lanier Firm) a portion of those samples prior to the entry of this Agreed Order. The remainder of samples A02008, A03038, and A09309 will be handled in accordance with the terms of this Agreed Order.

receive and test talc samples as described below on behalf of all plaintiffs[3] who are now represented or who will in the future be represented by the law firms listed in Exhibit B;

IT IS THEREFORE AGREED AND ORDERED THAT the parties will comply with the provisions of this Agreed Order with respect to the division, production, testing and testing results of the divided talc samples, as well as the storage of the remaining portions of the talc samples that are not provided to the parties and talc sample material that is not selected for division; and

IT IS FURTHER AGREED AND ORDERED THAT by complying with the terms of this Agreed Order, the parties have acted reasonably in fulfilling their discovery obligations with respect to the talc samples, and that the division, production, and testing of talc samples pursuant to this Agreed Order does not constitute spoliation of evidence. Imerys will timely inform plaintiffs' counsel if it discovers additional historical talc samples, and within a reasonable time thereafter, the parties will meet and confer to discuss whether such additional talc samples will become subject to this Agreed Order. If the parties agree that such additional talc samples shall become subject to this Agreed Order, they will supplement this Agreed Order with an inventory of such additional samples. If the

---

[3] This Agreed Order does not affect any orders regarding the talc samples that were previously entered by any other court.

3

parties disagree as to the inclusion of such additional samples, they shall raise the matter with the Honorable Joel A. Pisano (Ret.), the Special Master appointed in the above-referenced action, or any other Court that has previously issued an order to which such samples may be relevant.

IT IS FURTHER AGREED AND ORDERED AS FOLLOWS:

**Plaintiffs' Selection of Subset of Talc Samples**

1. Within thirty (30) business days of the entry of this Agreed Order, plaintiffs will select and identify to defendants in writing a reasonable number of talc samples from the inventories attached to this Agreed Order as Exhibit A. Imerys reserves the right to challenge the number of talc samples selected by plaintiffs as excessive or otherwise unreasonable, but must do so in writing within fourteen (14) days after plaintiffs provide their written selections to Imerys. To the extent that Imerys objects to the number of talc samples, the parties shall meet and confer within fourteen (14) days of the objection in an effort to resolve the parties' dispute. If the dispute cannot be resolved by agreement, plaintiffs' counsel shall present the dispute to Judge Pisano initially by letter, consistent with Local Civil Rule 37.1(a)(1), before filing a formal motion for an order.

2. To the extent that Imerys wishes to test material from talc samples other than those identified by plaintiffs, Imerys will provide advance written notice to the plaintiffs' counsel signing this Agreed Order and will comply with the provisions of this Agreed Order with respect to the division and testing of the additional talc samples for the Talcum Powder Litigation (Talc samples selected by plaintiffs and/or any additional talc samples selected by Imerys are hereinafter referred to as the "Selected Samples").

3. In the event a Selected Sample does not contain sufficient material to be divided as set forth below, resulting in amounts unsuitable for plaintiffs and defendants to test adequately, that Selected Sample will not be divided, but the party who originally selected that talc sample may select another talc sample in substitution.

**Laboratory to Divide Samples and Store Remaining Samples**

4. Within thirty (30) days of the entry of this Agreed Order, Imerys shall deliver, or cause to be delivered, all talc samples to Alliance Technologies LLC in Monmouth Junction, New Jersey, an independent testing laboratory that is DEA licensed, FDA registered, and which employs good laboratory practices ("the Laboratory").

5. Following agreement by the parties on the talc samples to be divided (or, to the extent there is a dispute, an order of either Judge Pisano or the Court),

the parties, in coordination with the Laboratory, shall agree on a date for the division of the Selected Samples pursuant to the terms of this Agreed Order. Such division shall take place no later than fourteen (14) days after the agreement or order described in the preceding sentence.

6. The Laboratory will divide the material of the Selected Samples over consecutive business days until the material of all Selected Samples has been divided pursuant to the terms of this Agreed Order, unless the plaintiff and defendant signatories to this Agreed Order and the Laboratory agree to a different schedule.

7. The Laboratory will not conduct any testing or analysis of the talc samples for either or both parties beyond the services set forth herein. At Imerys' expense, the Laboratory will store all talc samples that were not selected for division and all remaining materials of the Selected Samples after providing portions to plaintiffs and defendants according to the process outlined below.

**Process for Dividing Selected Samples**

8. Plaintiffs will select two representatives and Imerys will select two representatives to observe the division of the materials comprising the Selected Samples (the "Observers") at the Laboratory in a manner and under such conditions as prescribed by the Laboratory. The Observers may not interfere or interrupt the process, except by mutual consent.

9. Videotaping or visual recording of any kind is not permitted at the Laboratory. Any objection to the laboratory practices utilized in connection with the Laboratory's handling of the talc sample material, the Laboratory conditions, or the Laboratory's or parties' compliance with the terms of this Agreed Order as they relate to the handling of the talc sample materials at the Laboratory that could have been discovered by observation must be raised and addressed (including with Judge Pisano, if necessary) at the time of transfer, division or production of the talc sample material. To the extent no such objections are raised, they shall be waived and shall not be raised in connection with any proceeding.

10. The Laboratory also will prescribe the appropriate conditions (e.g., temperature and sterility), tools, and receptacles for dividing the Selected Samples, measure apportionments of the Selected Samples, and otherwise divide the Selected Samples among plaintiffs and Imerys, utilizing good laboratory practices.

11. For each Selected Sample, the Laboratory will prepare a label containing unique identifying information and sufficient information set forth on the original talc sample container to identify the source of each portion of a divided Selected Sample. The Laboratory will affix these labels to the receptacles holding the divided material from each Selected Sample, as well

as the original containers from which the divided material was obtained, before producing any divided material of a Selected Sample to plaintiffs or defendants. The division of talc samples shall be catalogued as set forth below in addition to any other standard recordkeeping of the Laboratory.

12. The material of each Selected Sample will be split into two approximately equal portions. One portion will be further divided into two approximately equal portions—one of which will be provided to plaintiffs and the other of which will be provided to Imerys. The portion provided to plaintiffs and the portion provided to Imerys (i.e., aliquots) will each be placed in a new receptacle chosen by the Laboratory for such purpose and labeled as set forth above. The remaining approximately one-half of the Selected Sample will be replaced in the original container of the Selected Sample if practicable in the judgment of the Laboratory technician responsible for dividing the Selected Samples. If not practicable to replace the remaining material of a Selected Sample back in its original container, the remaining material of the Selected Sample will be placed in a new receptacle, labeled as set forth above, and the Laboratory will retain the remaining Selected Sample material in the new receptacle as well as the original container of that Selected Sample.

**Cataloguing and Production of the Split Selected Samples**

13. The Laboratory shall produce one portion per party of material from each Selected Sample to the Observers. The Laboratory will catalogue the exact receptacles it provides to each party's Observer, as well as any new receptacles it uses to store Sample material, using the joint cataloging form ("Joint Catalogue"), which is attached hereto as Exhibit C. Before removing any receptacle from the Laboratory, an Observer for each party will sign the Joint Catalogue evidencing receipt by him or her of each receptacle containing a portion of material from the Selected Samples. By signing the Joint Catalogue, the signatory Observer for each party affirms that the Joint Catalogue and receptacle labels are accurate, correct, and complete, and acknowledges that the division of Selected Sample material were in accordance with the provisions of this Agreed Order.

14. Each Observer will receive a copy of the signed Joint Catalogue, and the Laboratory will retain a copy of the signed Joint Catalogue for its records. It is the responsibility of each party's Observers to deliver the signed Joint Catalogue and the portions of the Selected Sample material to the party they represent.

**Removal of Split Samples From Laboratory**

15. Following execution of the required documentation described above, each Observer will have authority to take possession, custody and control of the portions of Selected Sample material provided to the Observers by the Laboratory and remove them from the Laboratory on behalf party they represent. Each party is thereafter responsible for the portions of the Selected Sample materials provided to its Observer.

**Handling and Testing of Split Samples**

16. Plaintiffs and Imerys are each permitted to have the portions of Selected Sample material provided to them at the Laboratory subjected to testing and analysis at another laboratory or laboratories of the party's choosing and at the party's expense, including destructive testing, provided any particular test or analysis of the Selected Sample material must be solely of the Selected Sample material contained in a single receptacle. Materials from multiple receptacles cannot be commingled, nor may other materials to be subject to the testing be added to Selected Sample materials prior to, during or after any testing or analysis. For clarity, a destructive test using hydrochloric acid is not precluded by the preceding sentence.

**Cost Sharing**

17. The parties will share equally in the expenses reasonably associated with dividing the Selected Samples, including the cost of transporting the talc samples to the Laboratory, renting space at the Laboratory for apportioning the Selected Samples, employing persons at the Laboratory, purchasing receptacles to hold the divided Selected Samples, and all other costs reasonably associated with dividing the Selected Samples.

**Compliance**

18. Plaintiffs and Imerys will use their best efforts to utilize the Selected Sample material initially apportioned to them under this Agreed Order so as to avoid the repeated division and production of Sample material.

19. Notwithstanding the foregoing, if plaintiffs' counsel signing this Agreed Order seek additional or different Samples than those initially chosen pursuant to this Agreed Order (other than any pursuant to any order regarding the Samples that was previously entered by any other court), whether in actions alleging damages for ovarian cancer, mesothelioma, or any other personal injury claimed to result from exposure to defendants' Talcum Powder Products, counsel must serve a written request upon

defendants explaining with particularity the reason for seeking additional material and why such materials could not have been requested through the initial division and production of Sample material pursuant to this Agreed Order. To the extent that Imerys objects to plaintiffs' request, the parties shall meet and confer within fourteen (14) days of the request in an effort to resolve the parties' dispute. If the dispute cannot be resolved by agreement, plaintiffs' counsel shall present the dispute to Judge Pisano initially by letter, consistent with Local Civil Rule 37.1(a)(1), before filing a formal motion for an order.

**SO ORDERED**, this _8th_ day of _February_, 2018.

_____
United States District Judge


**STIPULATED AND AGREED**:

        *s/ Lorna A. Dotro*
        Lorna A. Dotro
        COUGHLIN DUFFY LLP
        350 Mount Kemble Avenue
        PO Box 1917
        Morristown, NJ 07962
        Telephone: (973) 267-0058
        Facsimile: (973) 267-6442
        Email: ldotro@coughlinduffy.com

        *s/ Nancy M. Erfle*
        Nancy M. Erfle
        GORDON & REES LLP
        121 SW Morrison Street
        Suite 1575
        Portland, Oregon 97204
        Telephone: (503) 382-3852
        Facsimile: (503) 616-3600
        Email: nerfle@grsm.com

        *s/Michelle A. Parfitt*
        Michelle A. Parfitt
        ASHCRAFT & GEREL, LLP
        4900 Seminary Road, Suite 650
        Alexandria, VA 22311
        Telephone: 703-931-5500

Email: mparfitt@ashcraftlaw.com

*s/P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Email: leigh.odell@beasleyallen.com

*s/Christopher M. Placitella*
Christopher M. Placitella
COHEN PLACITELLA ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701
Telephone: 888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com

14