1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO 16-MD-2738(FLW)(LHG)


_____ :
                        :
IN RE JOHNSON & JOHNSON : <u>TRANSCRIPT OF</u>
POWDER PRODUCTS MARKETING, : <u>STATUS CONFERENCE</u>
SALES PRACTICES.        :
------------------------- : <u>FEBRUARY 7, 2018</u>



CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608



B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ


A P P E A R A N C E S:

BEASLEY ALLEN, ESQUIRES
BY:  P. LEIGH O'DELL, ESQUIRE (ALABAMA)
       -and-
ASHCRAFT & GEREL, ESQUIRES
BY:  MICHELLE A. PARFITT, ESQUIRE (VIRGINIA)
      CHRIS TISI, ESQUIRE  (VIRGINIA)
        -and-
COHEN, PLACITELLA & ROTH, ESQUIRES
BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE
On Behalf of the Plaintiffs Steering Committee

DRINKER, BIDDLE & REATH, ESQUIRES
BY:  SUSAN M. SHARKO, ESQUIRE
      JULIE L. TERSIGNI, ESQUIRE
       -and-
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, ESQUIRES
BY:  JOHN H. BEISNER, ESQUIRE  (WASHINGTON, D.C.)
On behalf of Defendant Johnson & Johnson


* * * * *
**VINCENT RUSSONIELLO, RPR, CRR, CCR**
**OFFICIAL U.S. COURT REPORTER**
**(609) 588-9516**

2

A P P E A R A N C E S   C O N T I N U E D:


SEYFARRTH & SHAW, ESQUIRES
BY:  THOMAS L. LOCKE, ESQUIRE  (WASHINGTON D.C.)
        -and-
THE AXELROD FIRM, ESQUIRES
BY:  SHERYL L. AXELROD, ESQUIRE  (PENNSYLVANIA)
On Behalf of Defendant PCPC


COUGHLIN DUFFY, ESQUIRES
BY:  LORNA A. DOTRO, ESQUIRE
     MARK K. SILVER, ESQUIRE
        -and-
GORDON & REES, ESQUIRES
BY:  ANN THORNTON FIELD, ESQUIRE  (PENNSYLVANIA)
     NANCY M. ERFLE, ESQUIRE  (OREGON)
On behalf of Defendant Imerys Talc America

3

# C E R T I F I C A T E

        PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE
FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE
TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE
ABOVE-ENTITLED MATTER.


                                S/Vincent Russoniello
                                VINCENT RUSSONIELLO, CCR
                                OFFICIAL U.S. COURT REPORTER

4

 1           (In open court.)

 2           THE CLERK:  All rise.

 3           JUDGE WOLFSON:  Thank you.  Everyone may be

 4   seated.

 5           I have received the status report.  I guess,

 6   unfortunately, when you drafted the report, you had

 7   not yet gotten Judge Pisano's letter order or opinion.

 8   Correct?

 9           MS. PARFITT:  That's correct, your Honor.

10           MS. SHARKO:  That's correct.

11           JUDGE WOLFSON:  Much of what you put in your

12   letter was to alert me to the disputes, which have now

13   been resolved by him.  So that is where we are.

14           MS. PARFITT:  Your Honor, may I be heard with

15   regard to Judge Pisano's order, if you will?

16           JUDGE WOLFSON:  Sure.

17           MS. PARFITT:  Thank you.  I appreciate that.

18           Your Honor, we received Judge Pisano's

19   recommendations with regard to permissible discovery

20   that we could entertain prior to the filing of our

21   expert reports, and we strongly disagree and object to

22   the recommendation of Judge Pisano with regard to the

23   limitation.

24           We understand that your Honor has a procedure

25   wherein we can object to the findings of fact or the

5

1    rulings of Judge Pisano, and we are certainly --

2    that's something that we are considering doing, if not

3    planning on doing.

4         But before that, your Honor, the reasons

5    being, and just a few.  Obviously, we would elaborate

6    more in any formal pleadings that we would file

7    subsequent to today.

8         JUDGE WOLFSON:  And I did receive because I

9    was copied on all the letters that were sent to him on

10   the issues.  So I've reviewed them when they came in.

11        MS. PARFITT:  Excellent.  I appreciate that.

12        And what we would try to do is, obviously, be

13   more succinct in any follow-up objection.  But a few

14   of them being this, your Honor.

15        I know this in light of the fact that you are

16   and we are representing now I guess it's grown to 5500

17   women in this litigation alone whose rights are

18   impacted by our actions as attorneys.  And we believe

19   strongly that their rights would be indisputably

20   impacted if we were limited to the depositions that

21   Judge Pisano has indicated at the state.

22        I recognize Judge Pisano has indicated after

23   we propound our expert reports additional fact

24   discovery would be undertaken.  But what I'm concerned

25   about now is this period of time.

6

1          The Judge mentioned in his order in ruling the

2     word "proportionality."  I understand we asked for 67

3     and the Judge has given us four, if you consider J&J

4     and JJCI, 30(b)(6) witnesses.

5          JUDGE WOLFSON:  Well, it's also possible on a

6     30(b)(6) witness that somebody may identify two or

7     three people that are responsive to the request of a

8     30(b)(6) witness.  Sometimes it's not just one witness

9     that can respond to those subject matters, but I

10    understand.

11         MS. PARFITT:  You are absolutely correct.  And

12    that is actually something that we are considering as

13    well because there are four areas that Judge Pisano

14    has identified that we could discover.

15         JUDGE WOLFSON:  And it's up to them to

16    identify that there may be more than one person that

17    needs to respond to those 30(b)(6).

18         MS. PARFITT:  Correct.

19         So I guess the question I would ask the Court

20    before we go down perhaps this other path of filing

21    the objections and indicating to the Court why we

22    believe that the ruling is not proper, and I say that

23    respectfully, that early on you understand in some of

24    the letters that you have read we had proposed four

25    deponents for J&J.  We had proposed four deponents for

1    Imerys, not PCPC, and at one point in time the parties

2    had actually said that was fine, had acquiesced.

3         Now, I know since we've had our hearing with

4    Judge Pisano they have withdrawn that option.  But

5    perhaps in light of the breadth of the discovery that

6    we feel reasonably is relevant to the issue of general

7    causation and what the experts will be opining on,

8    that perhaps we step back a moment and consider the

9    options of perhaps broadening beyond where Judge

10   Pisano has gone.

11        I simply raise that, your Honor, because this

12   would seem to be the point in time to do that.

13   Otherwise, we will assess where we are and then do

14   what we feel is appropriate on behalf of the women

15   that we represent.

16        But I raise that with the Court because

17   sometimes talking through these things, once we've all

18   had a chance to synthesize it, is an appropriate way

19   to do things and perhaps a proper way to do it.

20        JUDGE WOLFSON:  Ms. Sharko.

21        MS. SHARKO:  In a word, no.  We think that

22   Judge Pisano got it right.  His ruling was fair.  The

23   standard for reversing someone like Judge Pisano on

24   appeal is very high.  Those names were floated and

25   tentative offers to produce those people were made in

8

1   an effort to resolve disputes, but the disputes

2   weren't resolved.

3        It's always been our position that they don't

4   need these depositions for general causation issues.

5   So we don't agree with that.  We are prepared to go

6   forward with the 30(b)(6) depositions hopefully in the

7   next 45 days or so.  But we shouldn't move backwards,

8   and we would ask that the case continue to move

9   forward while this appeal, if it's filed, is pending.

10        I would just also note so the Court is aware

11   that Mr. Lanier whose partner Mr. Meadow is part of

12   the PFC is actively taking depositions of all of the

13   defendants' employees in a state court ovarian case in

14   Missouri and in a mesothelioma case in Washington.

15        So employees are being deposed as we speak,

16   but we need to move forward.  Judge Pisano ruled and

17   we should accept that.

18        MS. DOTRO:  Judge, if I could just be heard

19   briefly on behalf of Imerys.  I just want to correct

20   something that Ms. Parfitt said.

21        THE COURT:  Yes, go ahead.

22        MS. DOTRO:  Judge, on behalf of Imerys, we

23   never agreed to the four witnesses that were requested

24   by the PSC.  We have objected to them from the start.

25        THE COURT:  Okay.

9

1          MS. DOTRO:  I just wanted to clarify that.

2          MS. PARFITT:  I just have a couple of

3    comments.

4          THE COURT:  Go ahead.  Make your comments and

5    then I'll speak with you.

6          MS. PARFITT:  Thank you.

7          Your Honor, obviously, we feel so strongly

8    about this.  I wouldn't be standing before the Court

9    if I didn't feel that this is something very relevant.

10   I have listened to the Court and I respect what you

11   have said, and we have really tried over the course of

12   our time with Judge Pisano and with you to work with

13   the Court.  I want to work with the Court.  We want to

14   work with the Court.

15         But the fact that we would be permitted only

16   four depositions -- and I understand, and I'm with

17   you, that perhaps that four expands into eight,

18   perhaps that four expands into 12, depending on the

19   breadth of the deposition and the topics noted and who

20   knows what.  But that said, your Honor, to be limited

21   is so prejudicial to where we are now.

22         We are not trying to go beyond the subject

23   matters that your Honor has indicated are permissible

24   for purposes of filing these expert reports.  We

25   submitted before Judge Pisano that we were prepared to

1    go forward with the Imerys depositions.  We could have

2    done that because they have completed their document

3    production.

4         It is no small matter that a million

5    additional documents have been submitted over the

6    course of September through December.  We're not

7    complaining about our job to get those reviewed.

8    That's our job.  We have taken it seriously.  We

9    understand it.  That's our job.  I'm not coming to

10   court wining about that.

11        What I am saying, what we have started to see

12   already with the examination of those documents is

13   information that is highly relevant on the general

14   causation theory, the theory of bias, the theories

15   with regard to talc is not pure talc powder.

16        All of those issues we are seeing them already

17   in documents, and all we're asking for is a

18   compromise.  I understand 67 the Court feels is

19   excessive and Judge Pisano feels is excessive.  Four

20   puts constraints on us to do our job, severe

21   constraints for us to do our job.  Perhaps there is

22   some compromise that all the parties can come to.

23        JUDGE WOLFSON:  I hear where you are and I

24   appreciate your willingness to compromise as well.

25        I think at this point, frankly, while Judge

11

1    Pisano identified them as 30(b)(6) witnesses, the

2    areas that he has said that they have to be prepared

3    to testify about are broad and they are all of the

4    areas that you've identified.  I'll put that right on

5    the record.

6         He said you've identified four categories of

7    information:

8         Composition of the products;

9         Testing of the products by defendants;

10        Sampling of the products by defendants; and

11        Any influence or bias in the published

12   literature caused by defendants.

13        So he already said that the 30(b)(6) witnesses

14   are to be prepared on those four areas.  He's given

15   you that, which is why I guess I'm taking some issue

16   in perhaps how this is being interpreted.  What he's

17   done instead of saying, You pick out your four

18   witnesses, because maybe those four witnesses aren't

19   the ones who are going to give all the information and

20   then we're stuck.  You'll to come back and say, Let's

21   identify three more.

22        The burden is on the defendants to identify

23   one, two, three, whatever it might be, of their

24   corporate representatives that could respond to those

25   four inquiries.

1    I would find it surprising if, for instance,

2  for J&J, I won't speak for Imerys or PCPC, which are a

3  little more limited, but as to those areas with J&J

4  that there might be only one person who would really

5  be prepared to respond to those, my view is it is an

6  appropriate approach with the understanding being that

7  it really is the burden on the defendants to identify

8  the appropriate person or persons.

9    And if what happens is, you are in this

10 deposition and you are into these four areas and

11 appropriately into the four areas and sticking within

12 the four areas and the witness cannot respond, that

13 wasn't your proper witness.  They would have to bring

14 somebody else back to respond to the questions that

15 could not be dealt with at that deposition.  I think

16 you get what you need and what you want.

17    MS. PARFITT:  Your Honor, if we start down

18 that path and we find that it is not working for us --

19    JUDGE WOLFSON:  Then you come back.

20    MS. PARFITT:  And I do appreciate that, that

21 we need to revisit the numbers of depositions.  That

22 would be a helpful process that we knew we could come

23 back to the Court and say, Your Honor, we have not

24 been able to properly get the information.

25    JUDGE WOLFSON:  You'll go to Judge Pisano

1    first when you say "the Court."

2            That's why I see this as workable because it

3    is the four categories that you have identified and

4    they have to be witnesses that can adequately testify

5    and be prepared to do so on those four areas.

6            As I said, if it turns out they didn't give

7    you the right people or the right person, yeah, you

8    have the right to come back and say, This is what we

9    did not get and that we still need and this is one of

10   the four categories and we need someone else.

11           MS. PARFITT:  Your Honor, if I may, one of my

12   colleagues, rather than me trying to read his

13   handwriting, I would appreciate it if he could say

14   something.

15           THE COURT:  Okay.

16           MR. TISI:  There were other areas that we

17   identified, and I understand that Judge Pisano was

18   trying to synthesize a fairly lengthy discussion that

19   we had, but there were other areas that we identified

20   that I think are very specific.

21           JUDGE WOLFSON:  Like what?

22           MR. TISI:  For example, there are documents --

23   it's very difficult for us to put our work product out

24   on display here, but I think I have no choice.  We are

25   put in that position.

1      For example, there are documents that we have

2   seen where the defendants have -- despite what they

3   said on science day, where they agreed that there are

4   biologically plausible mechanisms whereby talc gets

5   into the ovaries.  They made that an issue in this

6   case on science.  It's in the documents.  We should be

7   able to do that.

8      JUDGE WOLFSON:  I've already dealt with this.

9   Let me just say, I'm not sure where else you are going

10  with this.  I think we're not going to be on the same

11  page, Mr. Tisi.

12     I said to you, in fact, and it was quoted in

13  the transcript to Judge Pisano when I said, Sure, if

14  you think there is some admissions in those documents,

15  I said, that works very well and very nicely for you

16  at some point in a trial, but that's not going to the

17  science itself.

18     Right here what you have identified is, in

19  these categories, testing.  When you are talking to

20  somebody about testing, it's also going to identify

21  what was in there, what they found.  Sampling, the

22  composition.

23     Frankly, unless you think what you are saying

24  is that they have some better experts or science here

25  that you want to know about, that's not their job at

1   this point.

2         So I don't think I'm going to buy your

3   arguments.  So I'm not sure what else you want to add

4   to this, but I'm not buying it on that.

5         MR. TISI:  Except, for example, <u>Daubert</u> makes

6   clear there are many different kinds of evidence that

7   experts can rely on.  One of the things they can rely

8   on are the opinions of other scientists.

9         And so if they have other scientists that

10  agree to those topics, then I think those are the

11  kinds of things our experts can rely on in support of

12  their opinions.  They are not limited to published

13  peer-reviewed literature.  In fact, that's the point

14  of <u>Daubert</u>.

15        No. 2, another example, I have seen documents

16  that have been produced that deal with the ovarian

17  cancer causation algorithm.  There are documents that

18  deal with how you look at the issue of causation.

19        Now, if our experts get up and say, there is a

20  standard methodology for actually looking at causation

21  for ovarian cancer and our experts agree with what

22  they wrote in their documents, that's something our

23  experts can rely on.

24        So we shouldn't be put in a position, at least

25  I would argue, your Honor, we shouldn't be in a

16

1   position where our experts are opining in a vacuum

2   that is --

3        JUDGE WOLFSON:  It's not a vacuum.  They have

4   the documents.

5        MR. TISI:  Well, the defendants, I can see

6   very clearly they'll say, Well, the plaintiffs

7   cherry-picked documents.  The plaintiffs are taking

8   documents out of context.

9        There is nothing like having a witness before

10  you that says, This is your document.  You wrote it.

11  What did you mean when you wrote it?

12       That's why those kinds of things are very

13  important.

14       JUDGE WOLFSON:  But that also goes to whoever

15  your 30(b)(6) is that's going to talk about the

16  testing that would include that.  That's already an

17  identified topic.  These are broad topics.

18       Have a seat, Mr. Tisi.

19       They are very broad topics and, frankly, I

20  thought, Judge Pisano really gave you everything you

21  wanted without having you select the people to be

22  deposed because it is extremely broad.

23       What you might have at some point, obviously,

24  is some dispute during the dep, whether it's going

25  beyond the parameters or not, and frankly you should

17

1   get him on the phone.  You should tell him the day

2   that you are doing the deps and he has to be available

3   for you to call to rule on a particular question.

4        I don't want to do it later on when the

5   transcript is done and the witness is gone.  And that

6   may be some of the disputes of whether it falls within

7   the parameters or not, and we'll take a look as to

8   whether these people were prepared to answer the

9   questions that fall within these topics.

10       So where I am is, they are extremely broad.

11  They go to the general causation.  We'll see if they

12  pick out the right people or not and whether you need

13  something more after that.

14       Yes, Ms. O'Dell.

15       MS. O'DELL:  Your Honor, we would like 14 days

16  to craft the notices and serve them, if the Court

17  would allow that, and then once they are served I know

18  there will be some discussion back and forth,

19  objections.

20       But once we've agreed on a notice that we'll

21  would go forward on, we would like the defendants to

22  identify who the witnesses will be within seven days

23  prior to the deposition, whenever that's agreed to, so

24  we can know who the witness is.

25       JUDGE WOLFSON:  I don't think, Ms. Sharko, you

18

```
 1    would have an objection to that, would you?
 2          MS. SHARKO:  I don't have an objection to
 3    identifying the witness seven days beforehand.  I
 4    would hope that the plaintiffs will identify the
 5    questioner.
 6          But I am concerned about this idea that we are
 7    going to craft and negotiate notices.  Judge Pisano
 8    already did that for us.  He told us what the topics
 9    are.
10          THE COURT:  Frankly, I think it is a good idea
11    that she's suggesting.  He's given you the topics.  I
12    think they could be now a little more specific of what
13    within those topics they are looking to have answered
14    so that nobody does shows up at the deposition
15    surprised.
16          And if you think they are outside of the
17    parameters of the four topics, you can have that
18    discussion with Judge Pisano to make sure it's
19    narrowed or not before the deposition.  That's why it
20    makes sense.
21          You may all have very different views of what
22    falls within those categories.  I think a more
23    specific notice works great and you can negotiate it
24    and go to Judge Pisano if you have disputes
25    beforehand.
```

19

1          Who wants to show up at the deposition and

2     start having disputes:  I didn't know you were going

3     to ask about that.  We think that's outside the scope.

4     Now, let's call Judge Pisano to see if it's outside

5     the scope.

6          It's a great idea.  So what do you want?  You

7     want 14 days for your notice, and then you'll

8     negotiate out whatever you need.  And once it's

9     resolved, seven days before you'll identify who will

10    be produced.

11         I'm speaking to Ms. Sharko, but you know I'm

12    directing it to all of you.

13         MS. SHARKO:  And they'll identify the

14    questioner?  We'll have one questioner?

15         JUDGE WOLFSON:  You are saying who on their

16    side is going to be taking the deposition?

17         MS. SHARKO:  Right.  That's become standard in

18    some of the MDLs I'm involved in.

19         MS. O'DELL:  We will identify the questioner.

20    But we may not do it seven days in advance because

21    that's going to take us, once we know the witness --

22         JUDGE WOLFSON:  I get it.  They just want to

23    know in advance.

24         MS. O'DELL:  Another thing, your Honor, we

25    might as well deal with while we are here, we

1    anticipate the defendants will say, You are limited to

2    seven hours.  If there's going to be six depositions,

3    we believe that's not reasonable.

4         JUDGE WOLFSON:  I'm not limiting you to seven.

5    If you want to negotiate the time period, if there is

6    a limit on time period, go ahead to Judge Pisano first

7    and do that.  You are going to be talking to him after

8    the notices.  I know it.  So you can talk to him about

9    the time limits.

10        Look, these are broad topics and I don't see

11   it being done in seven days.  So I will tell you

12   before you even go to Judge Pisano you could let him

13   know, I would not be anticipating it simply a one-day

14   deposition of seven hours.

15        MS. O'DELL:  Thank you.

16        THE COURT: All right.

17        You have something, Mr. Placitella.

18        MR. PLACITELLA:  Just in my role as liaison

19   because I just went through this with Johnson &

20   Johnson and maybe we could have the same issue.  I

21   would hope that, as part of the process, they would

22   identify the documents that they used to prepare the

23   witness on that issue.

24        In the state court I just took their corporate

25   rep on a narrow issue and they took the position,

1    which was overruled, but they took the position that

2    whatever they showed that witness to prepare them for

3    a 30(b)(6) --

4             JUDGE WOLFSON:  Is work product.

5             MR. PLACITELLA:  -- is work product.

6             THE COURT:  And it is.  Under our federal

7    rules it is.

8             MR. PLACITELLA:  If that's the position

9    they'll take, we would like the opportunity to address

10   that up front.  We can do it with Judge Pisano.

11            JUDGE WOLFSON:  You can.  But, look, it's been

12   a long time since I was a Magistrate Judge, but I

13   dealt with these issues all the time.

14            The proper question is not, What were you

15   shown to prepare for your deposition?  You are

16   supposed to ask pointed questions and refer to actual

17   documents:  Have you reviewed this document and what

18   do you say about this?

19            And that's using your own knowledge of what

20   you think is relevant to the issue.  But you can't ask

21   the question simply:  Tell me what you were shown by

22   your attorneys to prepare for this deposition and that

23   you reviewed in preparation.

24            That's work product.

25            MR. PLACITELLA:  That's what will take some

1   time to address.  I think that's correct.  That's a

2   correct analysis, if somebody is designated,

3   Mr. Ashton is designated, and he's deposed.

4         But when you are a 30(b)(6) witness where you

5   are supposed to be the sum total of all the knowledge

6   of the corporation on that issue, that that's a

7   different analysis.

8         So, for example, if Mr. Ashton spoke to

9   Mr. Hopkins, we would have the right to know what

10  information he obtained from Mr. Hopkins because he's

11  speaking to a specific issue on behalf of the

12  corporation.

13        So if Mr. Ashton, for example, was the

14  30(b)(6) and he looked at a document to become the

15  person most knowledgeable on that subject matter and

16  he would not otherwise have been, because that's not

17  what he knows from his own personal knowledge, that's

18  a different analysis.

19        What I'm raising is, I think we need to flush

20  that out.  I'm not so sure that that is work product.

21  I know that's their position and I understand the

22  Court's analysis, if you are designating an individual

23  to testify about what his role was.  But it's

24  different for a 30(b)(6).

25        We can do that with Judge Pisano.  I'm just

23

1    raising the issue because I know it will be an issue

2    and I would rather not get to the deposition and have

3    a problem.

4          THE COURT:  Okay.

5          Ms. Sharko.

6          MS. SHARKO:  Judge, two things:  One is I

7    believe that Mr. Ashton is dead.  So if we are going

8    to produce him it will have to be by Ouija board I

9    think.

10          Secondly, as long as we are raising issues, I

11    would like to have the documents the plaintiffs will

12    use to question the witness a week or so in advance

13    and I think that will definitely expedite the

14    deposition.

15          MS. PARFITT:  Your Honor, if I may  be able to

16    respond to that?

17          THE COURT:  Yes.

18          MS. PARFITT:  We are currently negotiating a

19    deposition protocol which we hope to have.

20          JUDGE WOLFSON:  Go ahead.  I won't usurp his

21    role.  I'll let you present it to Judge Pisano first

22    and try and work it out there.

23          MS. PARFITT:  Thank you.

24          THE COURT:  And then if you have remaining

25    issues, we'll talk about it.  And since these deps

1  aren't happening for several weeks or whatever anyway,

2  you are going to have time to work this out.

3        Now, we have signed off on the sample

4  protocol.  So that's done and we're ready to go

5  forward on that.

6        MS. O'DELL:  Your Honor, there are two

7  protocols.  There is one for Johnson & Johnson and

8  there has been an agreement now on Imerys, as I

9  understand it, and that will be presented to the

10  Court.  There is a second protocol.

11        THE COURT:  Coming.

12        MS. O'DELL:  Yes.

13        MS. DOTRO:  There is an Imerys version that

14  the plaintiffs just agreed to a couple of hours ago.

15  So we'll be getting that into the Court quickly.

16        JUDGE WOLFSON:  Okay.

17        Now, the status of these cases, the re-filed

18  cases and this dispute you have about there were

19  459 cases, whatever.  But now you claim you have filed

20  short form complaints on most of them?

21        MS. O'DELL:  I think on all of those cases,

22  your Honor, short form complaints have been filed and

23  based on the analysis we have been able to do on a

24  limited number of cases they were served.  There are

25  some instances where a technical notice of filing in

25

1   the master document was not filed.  We don't believe

2   that is a material deficiency if there is one.

3          It's a little unclear from the compilation of

4   orders that control CMO 8 that's not a requirement of

5   CMO 8.  CMO 8 refers to CMO 2, which doesn't talk

6   about a notice.  It's actually CMO 3 talks about a

7   notice of filing.

8          THE COURT:  Now, you've lost me, but, okay.

9          MS. O'DELL:  But we believe that it's only as

10  to Imerys and PCPC.  It's just not clear.  There were

11  some firms that did the right thing.  In terms of

12  filing the complaint and serving it, they may not have

13  done the technical filing of the notice.  We found

14  that's not a material defect.  We are trying to work

15  to address those so it won't be a matter the Court

16  needs to deal with.

17         JUDGE WOLFSON:  Okay.

18         MS. TERSIGNI:  Your Honor, we are fine and in

19  agreement with them filing notices.  There is one case

20  that they moved to dismiss.

21         JUDGE WOLFSON:  That's the Summers-West?

22         MS. TERSIGNI:  Yes, that they had dismissed

23  because we didn't file a notice of appearance in time,

24  and we object to that dismissal because we weren't

25  aware the case had been filed because we had not

1   received the notice.

2        MS. PARFITT:  Your Honor, if I may, that is

3   actually an Ashcraft case and I can speak directly to

4   that.  And my understanding is, we have properly

5   dismissed this case pursuant to Federal Rule

6   41(a)(1)(A)(1).

7        What we did is, we re-filed the case via

8   CMO 8, and then we filed a notice of dismissal via

9   Rule 41 prior to the service requirements of a 90-day

10  window.  So there was no answer to be filed because it

11  wasn't served within that 90-day window and then we

12  dismissed the case.

13       JUDGE WOLFSON:  It sounds like it should be

14  dismissed under 41.  That's just fine.  No problem

15  from my perspective.

16       Then there is another 358 plaintiffs from the

17  multi-plaintiff cases who have not filed short form

18  complaints.

19       MS. O'DELL:  Your Honor, the list was provided

20  to us on Saturday.  We are analyzing those.  I will

21  give you just a few highlights.

22       In at least the 358, 84 of those, for example,

23  three of them are plaintiffs for which there were

24  verdicts returned in St. Louis.  So when those cases

25  were removed they came up on the composite complaint.

1   We have actually filed more than 60.  They are listed

2   on the list.

3          So I think if you give the parties some time

4   to reconcile the list, I think there may be some

5   discrepancies we can work out.  I think it would not

6   be fair to say all of these cases have not been

7   re-filed.  In fact, they have.

8          Many of them had been filed in New Jersey

9   State Court, in California State Court, because for

10  those plaintiffs there was no subject matter

11  jurisdiction in this court.  They were orphans, if you

12  will, I've heard Mr. Beisner say.  So we have been in

13  discussions about those and we just need a little more

14  time to go through the list.

15          JUDGE WOLFSON:  What kind of time would you

16  like?

17          MS. O'DELL:  Within two weeks we can go

18  through and reconcile it and come up with a strategy.

19          There were also some firms that had one case

20  in the MDL.  They may or may not have complied with

21  CMO 8.  I'm not sure.  But I would urge the Court to

22  give us 30 days to get those firms up and running

23  because maybe they weren't aware and didn't understand

24  the order.

25          JUDGE WOLFSON:  So 14 days for the ones that

1   you are looking at, and for those single ones out

2   which you'll identify which ones they are in 30 days,

3   I can live with that.  And I saw the shaking of the

4   head "yes" on the defense side, so I think they'll

5   live with it, too.

6          MS. O'DELL:  Okay.

7          JUDGE WOLFSON:  All right.

8          And then apparently you are working on these

9   duplicate filed cases as well.  And the time table for

10  that?

11         MS. O'DELL:  If we could also have 30 days for

12  that just to sort it out, I don't think that's going

13  to be an issue.

14         JUDGE WOLFSON:  That's fine.

15         And you gave me your report on the federal

16  docket and how many cases we have.

17         Now, with regard to pending motions, I want to

18  address the PCPC motion for a moment to dismiss that

19  is pending that you inquired about the last time we

20  were here.

21         I've now had the opportunity, I think it's 37

22  separate states jurisdictions that were involved in

23  that motion, and I've had an opportunity now to review

24  each of those states what their long arm statutes

25  require and what their case law requires because

29

1    actually on two of them neither one of you briefed it

2    properly because if you went to the state law it was

3    ruled different than how you were reading it.

4           In any event, where I am with this, and I want

5    to be open about it today is, I am fairly confident in

6    telling you today and working on an opinion now that

7    the motion is going to be granted and I don't think

8    that should become as much as a surprise to anyone.

9           So what are we doing here?  Why aren't we

10   simply just moving ahead and coming up with a protocol

11   as you have in other cases of what you want to do

12   about re-filing, whether re-filing directly in the MDL

13   or going to D.C. or New Jersey where there is

14   jurisdiction, those courts.

15          I'll go ahead and issue the opinion.  But I'm

16   not so sure everybody wants a written opinion out

17   there that's going to say what I'll need to say and

18   have it as precedent out there.

19          So I leave it up to you.  If you want to save

20   me the time and everybody the time of moving forward,

21   I don't think it's going to be surprising what the

22   result is.

23          MS. PARFITT:  Your Honor, with the Court's

24   permission, could we have just a bit of time?  I'm

25   hearing what the Court is saying.  I understand the

1    Court is in the process of actually drafting that.

2    Can you just give us a bit of time to reflect and talk

3    with our folks?

4            JUDGE WOLFSON:  What's a bit?

5            MS. PARFITT:  If we could have a week, maybe

6    ten days, so we could caucus and get back to the

7    Court.  If we could get back to you before that, we'll

8    do that as well.  We won't wait the ten days if we

9    have a response.

10           JUDGE WOLFSON:  That's fine.  But, honestly,

11   I'm at a little bit of a loss why that's even

12   required, but okay.

13           MS. PARFITT:  I appreciate that.

14           There are just some factions and things that

15   we just need to talk amongst ourselves.  If you give

16   us the ten days, if we don't need it, I promise you we

17   won't take it.

18           Thank you.

19           THE COURT:  As I've said to you, I've done

20   this in a couple of cases.  It's kind of giving you

21   one of these preliminary decisions where the lawyers

22   have said:  You know, I really rather you not issue an

23   opinion on this.  We'll go ahead and move ahead.

24           So a word to the wise.

25           MS. PARFITT:  Understood.  Thank you.

1          THE COURT:  You are going to let me know then.

2    I want a specific date.  Today is the 7th of February.

3    So what are you looking at?  By the end of next week?

4          MS. PARFITT:  That's fine, your Honor,

5    whatever that date is.  I don't have a calendar in

6    front of me.

7          JUDGE WOLFSON:  The 16th would be the end of

8    next week.  That's Friday.  So by next Friday, the

9    16th of February.

10          You'll let your adversary know.  But you'll

11   let us know because I think what I'm going to do then

12   is just stop work on it for the next ten days.  We

13   have other things that we could be working on here.

14          MS. PARFITT:  I'm sure you do, your Honor.

15          THE COURT:  So we're not going to be issuing

16   that decision.

17          MS. PARFITT:  Thank you.

18          THE COURT:  I didn't ask you how you feel

19   about it, but why would you care.

20          MR. LOCKE:  No comment, your Honor.

21          JUDGE WOLFSON:  All right.

22          The consumer cases on appeal.

23          What other motions have we got?  Anything

24   else?

25          MS. SHARKO:  No.

1          JUDGE WOLFSON:  What else do you want to talk

2    about today?  I have one other issue before you tell

3    me.  Anything else?

4          MS. SHARKO:  A deadline for plaintiffs' expert

5    reports.

6          JUDGE WOLFSON:  I think Judge Pisano put that

7    in his proposed order.

8          MS. SHARKO:  He did, but it's left kind of

9    open.  I'm really concerned.

10         JUDGE WOLFSON:  He left it open because he

11   wants to tie it to the date of receiving test results

12   on the samples, and I'm in agreement with that.

13   Absolutely.

14         That's why you can't have a specific date

15   because we don't know when you're going to get your

16   test results  on the samples.

17         MS. SHARKO:  So our concern is that that could

18   be spun out for a very long time.

19         JUDGE WOLFSON:  I don't know how long is long.

20   You have a testing protocol.  So under that testing

21   protocol what would it go out to?

22         MS. SHARKO:  So in theory -- well, actually,

23   specifically, the order was entered on January 31,

24   although the plaintiffs have had the inventory samples

25   for many months now.  They have until March 2 to

1   identify the samples they want to test.  And then we

2   have 14 days to object to that.  If the objections

3   aren't resolved it goes to Judge Pisano.

4        He hypothesized that the testing would be

5   completed by mid-June, and so, okay, that works I

6   guess.  I think it could probably be done sooner.  But

7   if the plaintiffs, for example, take the position that

8   every single sample known to human kind, and there are

9   a lot on our list and Imerys' list that have to be

10  tested, that could take a very long time and we're

11  concerned about that.

12       THE COURT:  We'll come back and see where we

13  are.  I'm not having the reports until the sampling is

14  done.  I'm in agreement with that conclusion of Judge

15  Pisano.  So I'll save you time on that, too.

16       MS. DOTRO:  The only thing that I would just

17  add to what Susan was saying on that front, and I

18  think it's where we are on this as well, at the

19  meeting with Judge Pisano on this issue the plaintiffs

20  indicated they planned on testing every single Imerys'

21  sample.  There are 248 of those and that each test

22  would take three days per sample.

23       So I think that's where the concern is coming

24  from on the defense side.  That's two years of testing

25  based on what the plaintiffs said.

34

1          THE COURT:  No, no, that can't happen.

2          MS. O'DELL:  Your Honor, let me just respond.

3          We are looking at the inventories.  They are a

4    number of of samples that have been identified.  More

5    than 700 for J&J.  Ms. Dotro is right.  There are 245,

6    48 of those.  It will be a subset of those that we

7    test.  We need to -- let me say it this way.

8          Our experts are evaluating the samples that

9    should be tested.  It will be a subset.  It's going to

10   take us, once we agree on the samples that are going

11   to be tested, it's going to take us 90 to 120 days

12   because it takes three days.

13         We are working on that.  It will be a subset.

14   I'm not prepared to say what samples today because the

15   experts are still working on that analysis and that's

16   a very critical part of this.  But we will identify

17   them on March the 2nd for J&J, and then we have

18   30 days from the date the order for Imerys is

19   entered which --

20         JUDGE WOLFSON:  So if we are going to enter

21   that today or tomorrow, it will be 30 days from then.

22         MS. O'DELL:  Yes.

23         THE COURT:  So it puts us to the first, second

24   week in March for that.

25         And then we can talk about, or you'll talk

1    about with Judge Pisano whether that's reasonable on

2    the sampling.  You are going to be issuing objections

3    within two weeks anyway, and if it has to be resolved,

4    it will be resolved and then we'll see what timing

5    that gives us.

6          Ms. Sharko, you have something else?

7          MS. SHARKO:  Just as to the samples, I think

8    it would be really helpful, if the plaintiffs do not

9    think they can complete their testing by mid-June, as

10   Judge Pisano wrote in his opinion, if they could let

11   us know that and why within say two, three weeks that

12   would be very helpful in keeping the litigation moving

13   along.

14         MS. O'DELL:  Your Honor, we'll identify the

15   samples according to protocol that we want to test on

16   March the 2nd for J&J, and whatever that is, the next

17   few days after that for Imerys, and they have 14 days

18   to object, we have 14 days to respond, and I think

19   Judge Pisano can take up any disagreements from there.

20   But in terms of the timing, I'm not prepared to talk

21   about a specific number of samples today.

22         JUDGE WOLFSON:  That's still coming down the

23   pike.

24         That dealt with the issues you have.  I have

25   one that I would like to address with you, which is:

1        As we all know when we had science day it was

2    based upon theories that had been out there for quite

3    some period that had been tried in other

4    jurisdictions, et cetera, and asbestos never came into

5    it.  And indeed as of today, I'm not aware of a single

6    expert that has opined on the science of asbestos and

7    ovarian cancer.

8        That is an important issue for me.  I know the

9    cases that are being tried out there right now, for

10   instance, the Middlesex case is a mesothelioma case

11   which everyone knows asbestos has been linked to

12   mesothelioma.  And, frankly, I'm not aware of what

13   other cancers asbestos has ever been linked to.

14        MR. PLACITELLA:  I can supply the Court with

15   studies.  There are actual studies, historical

16   studies, tying ovarian cancer to asbestos exposure

17   going back many, many decades.

18        JUDGE WOLFSON:  Well, this is what I want.  I

19   don't want the studies.  This is what I would like to

20   have, though.

21        MR. PLACITELLA:  Including IARC, by the way.

22        JUDGE WOLFSON:  I want a preliminary expert

23   report, not your final report that we have been

24   talking about with samples, et cetera.  I want a

25   preliminary report that explains the science and an

1  opinion why asbestos used as it is in this case can

2  cause ovarian cancer.  I think the Court should get

3  that.  I think the defendants should get that at an

4  early stage.

5        That's not based upon what we're talking

6  about, how much is in there in these samples that

7  we're going to find.  It's the science of can it do

8  it?  I would like to get that within 60 days, please?

9        MS. O'DELL:  Your Honor, just to put context

10  on it.

11        Our position has always been talcum powder

12  products -- I know you saw it in the transcript before

13  Judge Pisano -- talcum powder products cause ovarian

14  cancer.  Asbestos is something that has been shown to

15  be a component of talcum powder products.  There are

16  also other things that are carcinogens not to mention

17  talc, but also nickel, chromium, et cetera.

18        Asbestos is certainly something we can spend

19  time on.  I just don't want the Court to be

20  misunderstanding our theory.  It's the talcum powder

21  products.

22        JUDGE WOLFSON:  I understand it is.  But to

23  the extent that you are focusing on particular

24  components of talc and asbestos, nickel, chrome,

25  whatever it is, as being the carcinogens that can

1  cause ovarian cancer, I did not see the science on

2  that specifically.

3      I know you said talc overall.  But now you are

4  clearly focusing on components.  And I would like to

5  get some preliminary report that those components, the

6  science of it, are capable of causing ovarian cancer

7  and I would like to see it now because that has not

8  been out there.

9      So that's why I said 60 days for that.  Not a

10  completed final report.  And so it is clear, I'm

11  suggesting it as a preliminary report.

12      MS. O'DELL:  Your Honor, can I propose just

13  like in science day where the lawyers made arguments

14  for both sides, would the Court be open to the

15  plaintiffs presenting a white paper or presentation to

16  the Court?

17      JUDGE WOLFSON:  No.  I want to see an expert

18  that's going to tell me this.  There's not been yet

19  one expert in any of these cases, my understanding is,

20  that has talked about these components.  I want to see

21  that because a lot is being focused on this now and I

22  want to know about it.  I want to understand it.  And

23  not how you'll present it by having reviewed the

24  studies yourself.  You are all terrific lawyers and

25  you'll make the arguments.

1        I want to see an expert.  It may not end up

2   being the expert you will use in this case.  I'm not

3   committing that it would have to be the expert that

4   you would use as a testifying expert in this case.

5        MS. PARFITT:  That was one question I had,

6   your Honor.  That was one question, your Honor, with

7   regard to who that person is, and again the

8   parameters.  Again, we're hearing this for the first

9   time.  It's unusual to have this kind of request.  I

10   must say at this stage it's not something that I'm

11   familiar with in my years of doing this.

12        So there may be some other questions we have

13   of the Court as to what that looks like.

14        THE COURT:  Okay.

15        MS. PARFITT:  I hear what you are saying, a

16   preliminary report.  I think what you are asking is,

17   you want a respected scientist who has consumed these

18   studies himself or herself and can opine in the

19   fashion that you have that they are relying on.  IARC,

20   that's okay.  We don't have to reanalyze that entire

21   report.  That can be somewhat of a reference, a

22   reliance piece of material.

23        Is that generally what you're looking for?

24        JUDGE WOLFSON:  Whatever it is that you want

25   to say because I don't know that you have anybody out

1    there who has actually done -- you said there are

2    studies out there?

3            MR. PLACITELLA:  The science is pretty strong

4    on that issue.  I'll talk about the other issues.

5            MS. PARFITT:  So those were two clarifications

6    because you have really narrowed it to just asbestos

7    and a lot of --

8            JUDGE WOLFSON:  I said chrome, nickel, too.

9    Throw them in.

10           MS. PARFITT:  Throw in all the contaminants.

11           THE COURT:  Throw in all the contaminants so

12   we know what we are dealing with in this case.  I

13   understand in the end it's the talc product.

14           You made clear to me at the outset after we

15   had science day when you came in and you started

16   talking about asbestos and talc, and you said:  We

17   haven't done this before which is why we need to look

18   at this very carefully.  And, no, we haven't presented

19   that.  And we haven't had experts on this before.

20           So, therefore, not only wasn't it part of your

21   science day, it hasn't been part of the other cases.

22   Well, if you want to make it part of this case, I need

23   to see it because we are also talking about general

24   causation.  The basis for that is, we are going off

25   into all this discovery on general causation.

1          MS. PARFITT:  If I can be clear, though, your

2     Honor, the experts that have testified in other cases,

3     when they have said, My opinion is talcum powder

4     products can cause ovarian cancer -- they have

5     actually been saying that.

6          So I just want to be clear to the Court

7     whether we were clear in our presentation on science

8     day and obviously not clear enough.  When those

9     experts in other cases -- and again take whatever

10    court that the cases have been tried -- those experts

11    that have been proffered have said that because the

12    studies they have relied upon, epidemiological, for

13    instance, are talking about talcum powder products,

14    whatever that is, whatever those contaminants and

15    components.

16         So the record is clear, though, that has been

17    produced.  This isn't first instance.  They have said

18    that.

19         JUDGE WOLFSON:  It was not presented that way

20    on science day, certainly, and broken down that way.

21         Indeed, you told me at some point in time when

22    you have talked about experts and you said:  No, we

23    won't necessarily be using the same experts and you

24    certainly will be getting new experts on these issues

25    to opine, I took that to be that there is going to be

42

1    a different look taken at this.  And some of these

2    things that are being mentioned, I did not hear nickel

3    and chrome on science day.  I did not hear asbestos on

4    science day.  I want to see what we're talking about.

5           MS. PARFITT:  I just want to be clear so the

6    record is clear, that when our experts and other

7    experts have testified, when they talked about talcum

8    powder products, it has been the asbestos, the

9    chromium, the nickel, whatever it is that makes up a

10   talcum powder product.

11          I think I understand what the Court wants.  I

12   just want it to be clear that this is not the first

13   time that that has been presented.  We did not mean

14   during the science day to -- perhaps we could have

15   elaborated more so than we did to make it clearer to

16   the Court.

17          What we're trying to get at now is and the

18   reason for all the sampling and all of that

19   information is to ascertain:  Is there asbestos in

20   every single one of those talcum powder products?  Is

21   there nickel in every single one?  The percentages of

22   that in any particular talcum powder sample.  We are

23   looking at that aspect, too.

24          JUDGE WOLFSON:  And it doesn't appear that

25   your experts ever talked about it I guess in the state

43

1    court case.  I don't know what happened in your

2    hearing.  But certainly reading Judge Johnson's

3    opinion, there is no mention of any of those things in

4    there.

5            So it really is, I think, however your theory

6    is now developing and refining itself, I haven't seen

7    it and I don't think that it was an oversight on

8    science day.  I think there is a focus that may be

9    changing here now.

10           Let's see what backs that up just as you tried

11   to attempt to do by relying on things on science day

12   where there had been experts that have opined and

13   studied.  So let's get somebody that's going to be

14   willing to opine on this issue that's not the lawyers.

15           MS. O'DELL:  Your Honor, we hear what you are

16   saying.  We understand it.  You say preliminary.  We

17   would like to ask that this report not be --

18           JUDGE WOLFSON:  I know what you are going to

19   say.  Go ahead.  Finish it.

20           MS. O'DELL:  Just for the record, this would

21   not be something that would be used against the expert

22   in a future Daubert motion.  This would be something

23   that would be prepared for the education of the Court

24   as requested, but not be something that could

25   potentially prejudice an expert or experts we might

44

1    ask to do this.

2          JUDGE WOLFSON:  I thought that's what you were

3    going to request.

4          Ms. Sharko, I'm sure you have something to

5    say.

6          MS. SHARKO:  Yes, we agree with your Honor's

7    understanding of how these cases have progressed so

8    far.

9          I just want to note that I believe that there

10   will be a <u>Daubert</u> issue on whether the plaintiffs'

11   experts can prove through scientifically sound

12   methodology and science that our product contains

13   asbestos or chromium or nickel or whatever the element

14   of the day is because we dispute that.

15         We don't agree that our product contains those

16   things, and I recognize this awaits their sampling and

17   their discovery and all that.

18         JUDGE WOLFSON:  So are you suggesting that I

19   should put off what I requested and wait until we see

20   if it's there?

21         MS. SHARKO:  No, not at all.

22         JUDGE WOLFSON:  It certainly sounded like

23   that.

24         MS. SHARKO:  No, not at all.

25         When Ms. O'Dell said, We know it all contains

45

1      asbestos, we disagree with that.  That's all.

2              THE COURT:  Go ahead, Mr. Placitella.

3              MR. PLACITELLA:  So I think the asbestos issue

4      is pretty easy to get to you in 60 days.  My concern

5      is as follows:

6              We are going to constituent test a wide

7      variety, scope of samples that they are going to give

8      us.  And if it turns out, for example, that there is

9      polyvinylchloride in 70 percent of the samples, I just

10     want to be clear that we're not there yet.

11             I think asbestos, that's an easy thing to deal

12     with.  But we don't actually know what's in these

13     products all the way down the line.  That's what we've

14     been fighting about and the reason we are doing the

15     testing.

16             JUDGE WOLFSON:  I hear you there.

17             So are you suggesting that you don't know if

18     there is chrome and nickel in the product either?

19             MR. PLACITELLA:  We know it's there.  It would

20     be good to know the extent of which.  Over what period

21     of time, we don't know that yet.

22             JUDGE WOLFSON:  So I'm focusing on those

23     three.  And it's not precluding you if you're going to

24     find some other as you would call it contaminant and

25     opining on that at some later point.

46

1        Let's focus on those three elements on some

2    preliminary report as to the science.  That was my

3    issue.

4        If the attorneys don't have anything else, I

5    think we're done for the day.

6        Do we have another date on the schedule?

7        We can go off the record.

8        (Off-the-record discussion.)

9        THE CLERK:  All rise.

10       (Proceedings concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

47

# **C E R T I F I C A T E**

I, **Vincent Russoniello,** Official United States

Court Reporter and Certified Court Reporter of the

State of New Jersey, do hereby certify that the

foregoing is a true and accurate transcript of the

proceedings as taken stenographically by and before me

at the time, place and on the date hereinbefore set

forth.

I do further certify that I am neither a relative

nor employee nor attorney nor counsel of any of the

parties to this action, and that I am neither a

relative nor employee of such attorney or counsel, and

that I am not financially interested in this action.

S/Vincent Russoniello
Vincent Russoniello, CCR
Certificate No. 675

**0**

**08608** [1] - 1:8

**1**

**12** [1] - 9:18
**120** [1] - 34:11
**14** [6] - 17:15, 19:7, 27:25, 33:2, 35:17, 35:18
**16-MD-2738(FLW)(LHG** [1] - 1:2
**16th** [2] - 31:7, 31:9

**2**

**2** [3] - 15:15, 25:5, 32:25
**2018** [1] - 1:5
**245** [1] - 34:5
**248** [1] - 33:21
**28** [1] - 3:8
**2nd** [2] - 34:17, 35:16

**3**

**3** [1] - 25:6
**30** [5] - 27:22, 28:2, 28:11, 34:18, 34:21
**30(b)(6** [10] - 6:4, 6:6, 6:8, 8:6, 11:1, 11:13, 16:15, 21:3, 22:4, 22:14
**30(b)(6)** [2] - 6:17, 22:24
**31** [1] - 32:23
**358** [2] - 26:16, 26:22
**37** [1] - 28:21

**4**

**402** [1] - 1:8
**41** [2] - 26:9, 26:14
**41(a)(1)(A)(1)** [1] - 26:6
**45** [1] - 8:7
**459** [1] - 24:19
**48** [1] - 34:6

**5**

**5500** [1] - 5:16
**588-9516** [1] - 1:25

**6**

**60** [4] - 27:1, 37:8, 38:9, 45:4
**609** [1] - 1:25
**67** [2] - 6:2, 10:18

**675** [1] - 47:23

**7**

**7** [1] - 1:5
**70** [1] - 45:9
**700** [1] - 34:5
**753** [1] - 3:8
**7th** [1] - 31:2

**8**

**8** [5] - 25:4, 25:5, 26:8, 27:21
**84** [1] - 26:22

**9**

**90** [1] - 34:11
**90-day** [2] - 26:9, 26:11

**A**

**able** [4] - 12:24, 14:7, 23:15, 24:23
**ABOVE** [1] - 3:11
**ABOVE-ENTITLED** [1] - 3:11
**absolutely** [2] - 6:11, 32:13
**accept** [1] - 8:17
**according** [1] - 35:15
**accurate** [1] - 47:8
**ACCURATE** [1] - 3:9
**acquiesced** [1] - 7:2
**action** [2] - 47:14, 47:16
**ACTION** [1] - 1:2
**actions** [1] - 5:18
**actively** [1] - 8:12
**actual** [2] - 21:16, 36:15
**add** [2] - 15:3, 33:17
**additional** [2] - 5:23, 10:5
**address** [5] - 21:9, 22:1, 25:15, 28:18, 35:25
**adequately** [1] - 13:4
**admissions** [1] - 14:14
**advance** [3] - 19:20, 19:23, 23:12
**adversary** [1] - 31:10
**ago** [1] - 24:14
**agree** [6] - 8:5, 15:10, 15:21, 34:10, 44:6, 44:15
**agreed** [5] - 8:23, 14:3,

17:20, 17:23, 24:14
**agreement** [4] - 24:8, 25:19, 32:12, 33:14
**ahead** [10] - 8:21, 9:4, 20:6, 23:20, 29:10, 29:15, 30:23, 43:19, 45:2
**ALABAMA** [1] - 1:14
**alert** [1] - 4:12
**algorithm** [1] - 15:17
**ALLEN** [1] - 1:13
**allow** [1] - 17:17
**alone** [1] - 5:17
**America** [1] - 2:13
**AN** [1] - 3:9
**analysis** [6] - 22:2, 22:7, 22:18, 22:22, 24:23, 34:15
**analyzing** [1] - 26:20
**ANN** [1] - 2:12
**answer** [2] - 17:8, 26:10
**answered** [1] - 18:13
**anticipate** [1] - 20:1
**anticipating** [1] - 20:13
**anyway** [2] - 24:1, 35:3
**appeal** [3] - 7:24, 8:9, 31:22
**appear** [1] - 42:24
**appearance** [1] - 25:23
**appreciate** [6] - 4:17, 5:11, 10:24, 12:20, 13:13, 30:13
**approach** [1] - 12:6
**appropriate** [4] - 7:14, 7:18, 12:6, 12:8
**appropriately** [1] - 12:11
**areas** [11] - 6:13, 11:2, 11:4, 11:14, 12:3, 12:10, 12:11, 12:12, 13:5, 13:16, 13:19
**argue** [1] - 15:25
**arguments** [3] - 15:3, 38:13, 38:25
**arm** [1] - 28:24
**ARPS** [1] - 1:21
**asbestos** [18] - 36:4, 36:6, 36:11, 36:13, 36:16, 37:1, 37:14, 37:18, 37:24, 40:6, 40:16, 42:3, 42:8, 42:19, 44:13, 45:1, 45:3, 45:11
**ascertain** [1] - 42:19
**Ashcraft** [1] - 26:3

**ASHCRAFT** [1] - 1:15
**Ashton** [4] - 22:3, 22:8, 22:13, 23:7
**aspect** [1] - 42:23
**assess** [1] - 7:13
**attempt** [1] - 43:11
**attorney** [2] - 47:13, 47:15
**attorneys** [3] - 5:18, 21:22, 46:4
**available** [1] - 17:2
**awaits** [1] - 44:16
**aware** [5] - 8:10, 25:25, 27:23, 36:5, 36:12
**AXELROD** [2] - 2:7, 2:7

**B**

**backs** [1] - 43:10
**backwards** [1] - 8:7
**based** [4] - 24:23, 33:25, 36:2, 37:5
**basis** [1] - 40:24
**BE** [1] - 3:9
**BEASLEY** [1] - 1:13
**become** [3] - 19:17, 22:14, 29:8
**beforehand** [2] - 18:3, 18:25
**behalf** [6] - 1:22, 2:13, 7:14, 8:19, 8:22, 22:11
**Behalf** [2] - 1:18, 2:8
**BEISNER** [1] - 1:21
**Beisner** [1] - 27:12
**better** [1] - 14:24
**beyond** [3] - 7:9, 9:22, 16:25
**bias** [2] - 10:14, 11:11
**BIDDLE** [1] - 1:19
**biologically** [1] - 14:4
**bit** [4] - 29:24, 30:2, 30:4, 30:11
**board** [1] - 23:8
**breadth** [2] - 7:5, 9:19
**briefed** [1] - 29:1
**briefly** [1] - 8:19
**bring** [1] - 12:13
**broad** [6] - 11:3, 16:17, 16:19, 16:22, 17:10, 20:10
**broadening** [1] - 7:9
**broken** [1] - 41:20
**burden** [2] - 11:22, 12:7

**buy** [1] - 15:2
**buying** [1] - 15:4
**BY** [9] - 1:14, 1:15, 1:17, 1:19, 1:21, 2:6, 2:7, 2:10, 2:12

**C**

**calendar** [1] - 31:5
**California** [1] - 27:9
**cancer** [9] - 15:17, 15:21, 36:7, 36:16, 37:2, 37:14, 38:1, 38:6, 41:4
**cancers** [1] - 36:13
**cannot** [1] - 12:12
**capable** [1] - 38:6
**carcinogens** [2] - 37:16, 37:25
**care** [1] - 31:19
**carefully** [1] - 40:18
**case** [20] - 8:8, 8:13, 8:14, 14:6, 25:19, 25:25, 26:3, 26:5, 26:7, 26:12, 27:19, 28:25, 36:10, 37:1, 39:2, 39:4, 40:12, 40:22, 43:1
**cases** [20] - 24:17, 24:18, 24:19, 24:21, 24:24, 26:17, 26:24, 27:6, 28:9, 28:16, 29:11, 30:20, 31:22, 36:9, 38:19, 40:21, 41:2, 41:9, 41:10, 44:7
**categories** [5] - 11:6, 13:3, 13:10, 14:19, 18:22
**caucus** [1] - 30:6
**causation** [9] - 7:7, 8:4, 10:14, 15:17, 15:18, 15:20, 17:11, 40:24, 40:25
**caused** [1] - 11:12
**causing** [1] - 38:6
**CCR** [3] - 1:24, 3:16, 47:23
**certainly** [6] - 5:1, 37:18, 41:20, 41:24, 43:2, 44:22
**Certificate** [1] - 47:23
**Certified** [1] - 47:6
**CERTIFIED** [1] - 3:9
**certify** [2] - 47:7, 47:12
**cetera** [3] - 36:4, 36:24, 37:17

**chance** [1] - 7:18
**changing** [1] - 43:9
**cherry** [1] - 16:7
**cherry-picked** [1] - 16:7
**choice** [1] - 13:24
**CHRIS** [1] - 1:16
**CHRISTOPHER** [1] - 1:17
**chrome** [4] - 37:24, 40:8, 42:3, 45:18
**chromium** [3] - 37:17, 42:9, 44:13
**CIVIL** [1] - 1:2
**claim** [1] - 24:19
**clarifications** [1] - 40:5
**clarify** [1] - 9:1
**CLARKSON** [1] - 1:8
**clear** [13] - 15:6, 25:10, 38:10, 40:14, 41:1, 41:6, 41:7, 41:8, 41:16, 42:5, 42:6, 42:12, 45:10
**clearer** [1] - 42:15
**clearly** [2] - 16:6, 38:4
**CLERK** [2] - 4:2, 46:9
**CMO** [7] - 25:4, 25:5, 25:6, 26:8, 27:21
**COHEN** [1] - 1:17
**colleagues** [1] - 13:12
**coming** [5] - 10:9, 24:11, 29:10, 33:23, 35:22
**comment** [1] - 31:20
**comments** [2] - 9:3, 9:4
**Committee** [1] - 1:18
**committing** [1] - 39:3
**compilation** [1] - 25:3
**complaining** [1] - 10:7
**complaint** [2] - 25:12, 26:25
**complaints** [3] - 24:20, 24:22, 26:18
**complete** [1] - 35:9
**completed** [3] - 10:2, 33:5, 38:10
**complied** [1] - 27:20
**component** [1] - 37:15
**components** [5] - 37:24, 38:4, 38:5, 38:20, 41:15
**composite** [1] - 26:25
**composition** [2] - 11:8, 14:22
**compromise** [3] - 10:18, 10:22, 10:24
**concern** [1] - 32:17,

33:23, 45:4
**concerned** [4] - 5:24, 18:6, 32:9, 33:11
**concluded** [1] - 46:10
**conclusion** [1] - 33:14
**CONFERENCE** [1] - 1:4
**confident** [1] - 29:5
**consider** [2] - 6:3, 7:8
**considering** [2] - 5:2, 6:12
**constituent** [1] - 45:6
**constraints** [2] - 10:20, 10:21
**consumed** [1] - 39:17
**consumer** [1] - 31:22
**contains** [3] - 44:12, 44:15, 44:25
**contaminant** [1] - 45:24
**contaminants** [3] - 40:10, 40:11, 41:14
**context** [2] - 16:8, 37:9
**continue** [1] - 8:8
**control** [1] - 25:4
**copied** [1] - 5:9
**corporate** [2] - 11:24, 20:24
**corporation** [2] - 22:6, 22:12
**correct** [8] - 4:8, 4:9, 4:10, 6:11, 6:18, 8:19, 22:1, 22:2
**COUGHLIN** [1] - 2:9
**counsel** [2] - 47:13, 47:15
**couple** [3] - 9:2, 24:14, 30:20
**course** [2] - 9:11, 10:6
**court** [7] - 4:1, 8:13, 10:10, 20:24, 27:11, 41:10, 43:1
**Court** [34] - 6:19, 6:21, 7:16, 8:10, 9:8, 9:10, 9:13, 9:14, 10:18, 12:23, 13:1, 17:16, 24:10, 24:15, 25:15, 27:9, 27:21, 29:25, 30:1, 30:7, 36:14, 37:2, 37:19, 38:14, 38:16, 39:13, 41:6, 42:11, 42:16, 43:23, 47:6
**COURT** [25] - 1:1, 1:25, 3:16, 8:21, 8:25, 9:4, 13:15, 18:10, 20:16,

21:6, 23:4, 23:17, 23:24, 24:11, 25:8, 30:19, 31:1, 31:15, 31:18, 33:12, 34:1, 34:23, 39:14, 40:11, 45:2
**Court's** [2] - 22:22, 29:23
**COURTHOUSE** [1] - 1:8
**courts** [1] - 29:14
**craft** [2] - 17:16, 18:7
**critical** [1] - 34:16
**CRR** [1] - 1:24

**D**

**D.C** [3] - 1:21, 2:6, 29:13
**date** [7] - 31:2, 31:5, 32:11, 32:14, 34:18, 46:6, 47:10
**Daubert** [4] - 15:5, 15:14, 43:22, 44:10
**days** [28] - 8:7, 17:15, 17:22, 18:3, 19:7, 19:9, 19:20, 20:11, 27:22, 27:25, 28:2, 28:11, 30:6, 30:8, 30:16, 31:12, 33:2, 33:22, 34:11, 34:12, 34:18, 34:21, 35:17, 35:18, 37:8, 38:9, 45:4
**dead** [1] - 23:7
**deadline** [1] - 32:4
**deal** [5] - 15:16, 15:18, 19:25, 25:16, 45:11
**dealing** [1] - 40:12
**dealt** [4] - 12:15, 14:8, 21:13, 35:24
**decades** [1] - 36:17
**December** [1] - 10:6
**decision** [1] - 31:16
**decisions** [1] - 30:21
**defect** [1] - 25:14
**Defendant** [3] - 1:22, 2:8, 2:13
**defendants** [10] - 11:9, 11:10, 11:12, 11:22, 12:7, 14:2, 16:5, 17:21, 20:1, 37:3
**defendants'** [1] - 8:13
**defense** [2] - 28:4, 33:24
**deficiency** [1] - 25:2
**definitely** [1] - 23:13
**dep** [1] - 16:24
**deponents** [2] - 6:25
**deposed** [3] - 8:15, 16:22, 22:3

**deposition** [14] - 9:19, 12:10, 12:15, 17:23, 18:14, 18:19, 19:1, 19:16, 20:14, 21:15, 21:22, 23:2, 23:14, 23:19

**depositions** [8] - 5:20, 8:4, 8:6, 8:12, 9:16, 10:1, 12:21, 20:2

**deps** [2] - 17:2, 23:25

**designated** [2] - 22:2, 22:3

**designating** [1] - 22:22

**despite** [1] - 14:2

**developing** [1] - 43:6

**different** [7] - 15:6, 18:21, 22:7, 22:18, 22:24, 29:3, 42:1

**difficult** [1] - 13:23

**directing** [1] - 19:12

**directly** [2] - 26:3, 29:12

**disagree** [2] - 4:21, 45:1

**disagreements** [1] - 35:19

**discover** [1] - 6:14

**discovery** [5] - 4:19, 5:24, 7:5, 40:25, 44:17

**discrepancies** [1] - 27:5

**discussion** [4] - 13:18, 17:18, 18:18, 46:8

**discussions** [1] - 27:13

**dismiss** [2] - 25:20, 28:18

**dismissal** [2] - 25:24, 26:8

**dismissed** [4] - 25:22, 26:5, 26:12, 26:14

**display** [1] - 13:24

**dispute** [3] - 16:24, 24:18, 44:14

**disputes** [6] - 4:12, 8:1, 17:6, 18:24, 19:2

**DISTRICT** [2] - 1:1, 1:1

**docket** [1] - 28:16

**document** [5] - 10:2, 16:10, 21:17, 22:14, 25:1

**documents** [16] - 10:5, 10:12, 10:17, 13:22, 14:1, 14:6, 14:14, 15:15, 15:17, 15:22, 16:4, 16:7, 16:8, 20:22, 21:17, 23:11

**done** [12] - 10:2, 11:17, 17:5, 20:11, 24:4, 25:13, 30:19, 33:6, 33:14, 40:1, 40:17, 46:5

**DOTRO** [6] - 2:10, 8:18, 8:22, 9:1, 24:13, 33:16

**Dotro** [1] - 34:5

**down** [5] - 6:20, 12:17, 35:22, 41:20, 45:13

**drafted** [1] - 4:6

**drafting** [1] - 30:1

**DRINKER** [1] - 1:19

**DUFFY** [1] - 2:9

**duplicate** [1] - 28:9

**during** [2] - 16:24, 42:14

**E**

**early** [2] - 6:23, 37:4

**EAST** [1] - 1:8

**easy** [2] - 45:4, 45:11

**education** [1] - 43:23

**effort** [1] - 8:1

**eight** [1] - 9:17

**either** [1] - 45:18

**elaborate** [1] - 5:5

**elaborated** [1] - 42:15

**element** [1] - 44:13

**elements** [1] - 46:1

**employee** [2] - 47:13, 47:15

**employees** [2] - 8:13, 8:15

**end** [4] - 31:3, 31:7, 39:1, 40:13

**enter** [1] - 34:20

**entered** [2] - 32:23, 34:19

**entertain** [1] - 4:20

**entire** [1] - 39:20

**ENTITLED** [1] - 3:11

**epidemiological** [1] - 41:12

**ERFLE** [1] - 2:12

**ESQUIRE** [13] - 1:14, 1:15, 1:16, 1:17, 1:19, 1:20, 1:21, 2:6, 2:7, 2:10, 2:10, 2:12, 2:12

**ESQUIRES** [9] - 1:13, 1:15, 1:17, 1:19, 1:21, 2:5, 2:7, 2:9, 2:11

**et** [3] - 36:4, 36:24, 37:17

**evaluating** [1] - 34:8

**event** [1] - 29:4

**evidence** [1] - 15:6

**examination** [1] - 10:12

**example** [9] - 13:22, 14:1, 15:5, 15:15, 22:8, 22:13, 26:22, 33:7, 45:8

**excellent** [1] - 5:11

**except** [1] - 15:5

**excessive** [2] - 10:19

**expands** [2] - 9:17, 9:18

**expedite** [1] - 23:13

**expert** [14] - 4:21, 5:23, 9:24, 32:4, 32:6, 36:22, 38:17, 38:19, 39:1, 39:2, 39:3, 39:4, 43:21, 43:25

**experts** [23] - 7:7, 14:24, 15:7, 15:11, 15:19, 15:21, 15:23, 16:1, 34:8, 34:15, 40:19, 41:2, 41:9, 41:10, 41:22, 41:23, 41:24, 42:6, 42:7, 42:25, 43:12, 43:25, 44:11

**explains** [1] - 36:25

**exposure** [1] - 36:16

**extent** [2] - 37:23, 45:20

**extremely** [2] - 16:22, 17:10

**F**

**fact** [7] - 4:25, 5:15, 5:23, 9:15, 14:12, 15:13, 27:7

**factions** [1] - 30:14

**fair** [2] - 7:22, 27:6

**fairly** [2] - 13:18, 29:5

**fall** [1] - 17:9

**falls** [2] - 17:6, 18:22

**familiar** [1] - 39:11

**far** [1] - 44:8

**fashion** [1] - 39:19

**FEBRUARY** [1] - 1:5

**February** [2] - 31:2, 31:9

**Federal** [1] - 26:5

**federal** [2] - 21:6, 28:15

**few** [4] - 5:5, 5:13, 26:21, 35:17

**FIELD** [1] - 2:12

**fighting** [1] - 45:14

**file** [2] - 5:6, 25:23

**filed** [14] - 8:9, 24:17, 24:19, 24:22, 25:1, 25:25, 26:7, 26:8, 26:10, 26:17, 27:1, 27:7, 27:8,

28:9

**filing** [10] - 4:20, 6:20, 9:24, 24:25, 25:7, 25:12, 25:13, 25:19, 29:12

**final** [2] - 36:23, 38:10

**financially** [1] - 47:16

**findings** [1] - 4:25

**fine** [6] - 7:2, 25:18, 26:14, 28:14, 30:10, 31:4

**finish** [1] - 43:19

**FIRM** [1] - 2:7

**firms** [3] - 25:11, 27:19, 27:22

**first** [7] - 13:1, 20:6, 23:21, 34:23, 39:8, 41:17, 42:12

**FISHER** [1] - 1:8

**floated** [1] - 7:24

**FLOM** [1] - 1:21

**flush** [1] - 22:19

**focus** [2] - 43:8, 46:1

**focused** [1] - 38:21

**focusing** [3] - 37:23, 38:4, 45:22

**folks** [1] - 30:3

**follow** [1] - 5:13

**follow-up** [1] - 5:13

**FOLLOWING** [1] - 3:9

**follows** [1] - 45:5

**FOR** [1] - 1:1

**foregoing** [1] - 47:8

**form** [3] - 24:20, 24:22, 26:17

**formal** [1] - 5:6

**forth** [2] - 17:18, 47:11

**forward** [7] - 8:6, 8:9, 8:16, 10:1, 17:21, 24:5, 29:20

**Four** [1] - 10:19

**four** [20] - 6:3, 6:13, 6:24, 6:25, 8:23, 9:16, 9:17, 9:18, 11:6, 11:14, 11:17, 11:18, 11:25, 12:10, 12:11, 12:12, 13:3, 13:5, 13:10, 18:17

**frankly** [6] - 10:25, 14:23, 16:19, 16:25, 18:10, 36:12

**FREDA** [1] - 1:10

**Friday** [2] - 31:8

**front** [3] - 21:10, 31:6, 33:17

**future** [1] - 43:22

**G**

**general** [6] - 7:6, 8:4, 10:13, 17:11, 40:23, 40:25
**generally** [1] - 39:23
**GEREL** [1] - 1:15
**given** [3] - 6:3, 11:14, 18:11
**GORDON** [1] - 2:11
**granted** [1] - 29:7
**great** [2] - 18:23, 19:6
**grown** [1] - 5:16
**guess** [6] - 4:5, 5:16, 6:19, 11:15, 33:6, 42:25

**H**

**handwriting** [1] - 13:13
**head** [1] - 28:4
**hear** [6] - 10:23, 39:15, 42:2, 42:3, 43:15, 45:16
**heard** [3] - 4:14, 8:18, 27:12
**hearing** [4] - 7:3, 29:25, 39:8, 43:2
**helpful** [3] - 12:22, 35:8, 35:12
**hereby** [1] - 47:7
**hereinbefore** [1] - 47:10
**herself** [1] - 39:18
**high** [1] - 7:24
**highlights** [1] - 26:21
**highly** [1] - 10:13
**himself** [1] - 39:18
**historical** [1] - 36:15
**honestly** [1] - 30:10
**Honor** [34] - 4:9, 4:14, 4:18, 4:24, 5:4, 5:14, 7:11, 9:7, 9:20, 9:23, 12:17, 12:23, 13:11, 15:25, 17:15, 19:24, 23:15, 24:6, 24:22, 25:18, 26:2, 26:19, 29:23, 31:4, 31:14, 31:20, 34:2, 35:14, 37:9, 38:12, 39:6, 41:2, 43:15
**Honor's** [1] - 44:6
**HONORABLE** [1] - 1:10
**hope** [3] - 18:4, 20:21, 23:19
**hopefully** [1] - 8:6

**Hopkins** [2] - 22:9, 22:10
**hours** [3] - 20:2, 20:14, 24:14
**human** [1] - 33:8
**hypothesized** [1] - 33:4

**I**

**IARC** [2] - 36:21, 39:19
**idea** [3] - 18:6, 18:10, 19:6
**identified** [10] - 6:14, 11:1, 11:4, 11:6, 13:3, 13:17, 13:19, 14:18, 16:17, 34:4
**identify** [16] - 6:6, 6:16, 11:21, 11:22, 12:7, 14:20, 17:22, 18:4, 19:9, 19:13, 19:19, 20:22, 28:2, 33:1, 34:16, 35:14
**identifying** [1] - 18:3
**Imerys** [11] - 2:13, 7:1, 8:19, 8:22, 10:1, 12:2, 24:8, 24:13, 25:10, 34:18, 35:17
**Imerys'** [2] - 33:9, 33:20
**impacted** [2] - 5:18, 5:20
**important** [2] - 16:13, 36:8
**IN** [2] - 1:4, 3:10
**include** [1] - 16:16
**including** [1] - 36:21
**indeed** [2] - 36:5, 41:21
**indicated** [4] - 5:21, 5:22, 9:23, 33:20
**indicating** [1] - 6:21
**indisputably** [1] - 5:19
**individual** [1] - 22:22
**influence** [1] - 11:11
**information** [6] - 10:13, 11:7, 11:19, 12:24, 22:10, 42:19
**inquired** [1] - 28:19
**inquiries** [1] - 11:25
**instance** [4] - 12:1, 36:10, 41:13, 41:17
**instances** [1] - 24:25
**instead** [1] - 11:17
**interested** [1] - 47:16
**interpreted** [1] - 11:16
**inventories** [1] - 34:3
**inventory** [1] - 32:24
**involved** [2] - 19:18,

28:22
**IS** [1] - 3:9
**issue** [23] - 7:6, 11:15, 14:5, 15:18, 20:20, 20:23, 20:25, 21:20, 22:6, 22:11, 23:1, 28:13, 29:15, 30:22, 32:2, 33:19, 36:8, 40:4, 43:14, 44:10, 45:3, 46:3
**issues** [9] - 5:10, 8:4, 10:16, 21:13, 23:10, 23:25, 35:24, 40:4, 41:24
**issuing** [2] - 31:15, 35:2
**itself** [2] - 14:17, 43:6

**J**

**J&J** [7] - 6:3, 6:25, 12:2, 12:3, 34:5, 34:17, 35:16
**January** [1] - 32:23
**Jersey** [3] - 27:8, 29:13, 47:7
**JERSEY** [1] - 1:1
**JJCI** [1] - 6:4
**job** [6] - 10:7, 10:8, 10:9, 10:20, 10:21, 14:25
**JOHN** [1] - 1:21
**JOHNSON** [2] - 1:4
**Johnson** [6] - 1:22, 20:19, 20:20, 24:7
**Johnson's** [1] - 43:2
**judge** [3] - 8:18, 8:22, 23:6
**JUDGE** [53] - 4:3, 4:11, 4:16, 5:8, 6:5, 6:15, 7:20, 10:23, 12:19, 12:25, 13:21, 14:8, 16:3, 16:14, 17:25, 19:15, 19:22, 20:4, 21:4, 21:11, 23:20, 24:16, 25:17, 25:21, 26:13, 27:15, 27:25, 28:7, 28:14, 30:4, 30:10, 31:7, 31:21, 32:1, 32:6, 32:10, 32:19, 34:20, 35:22, 36:18, 36:22, 37:22, 38:17, 39:24, 40:8, 41:19, 42:24, 43:18, 44:2, 44:18, 44:22, 45:16, 45:22
**Judge** [42] - 4:7, 4:15, 4:18, 4:22, 5:1, 5:21, 5:22, 6:1, 6:3, 6:13, 7:4,

7:9, 7:22, 7:23, 8:16, 9:12, 9:25, 10:19, 10:25, 12:25, 13:17, 14:13, 16:20, 18:7, 18:18, 18:24, 19:4, 20:6, 20:12, 21:10, 21:12, 22:25, 23:21, 32:6, 33:3, 33:14, 33:19, 35:1, 35:10, 35:19, 37:13, 43:2
**JULIE** [1] - 1:20
**June** [2] - 33:5, 35:9
**jurisdiction** [2] - 27:11, 29:14
**jurisdictions** [2] - 28:22, 36:4

**K**

**keeping** [1] - 35:12
**kind** [5] - 27:15, 30:20, 32:8, 33:8, 39:9
**kinds** [3] - 15:6, 15:11, 16:12
**knowledge** [3] - 21:19, 22:5, 22:17
**knowledgeable** [1] - 22:15
**known** [1] - 33:8
**knows** [3] - 9:20, 22:17, 36:11

**L**

**Lanier** [1] - 8:11
**last** [1] - 28:19
**law** [2] - 28:25, 29:2
**lawyers** [4] - 30:21, 38:13, 38:24, 43:14
**least** [2] - 15:24, 26:22
**leave** [1] - 29:19
**left** [2] - 32:8, 32:10
**LEIGH** [1] - 1:14
**lengthy** [1] - 13:18
**letter** [2] - 4:7, 4:12
**letters** [2] - 5:9, 6:24
**liaison** [1] - 20:18
**light** [2] - 5:15, 7:5
**limit** [1] - 20:6
**limitation** [1] - 4:23
**limited** [6] - 5:20, 9:20, 12:3, 15:12, 20:1, 24:24
**limiting** [1] - 20:4
**limits** [1] - 20:9
**line** [1] - 45:13

**linked** [2] - 36:11, 36:13
**list** [6] - 26:19, 27:2, 27:4, 27:14, 33:9
**listed** [1] - 27:1
**listened** [1] - 9:10
**literature** [2] - 11:12, 15:13
**litigation** [2] - 5:17, 35:12
**live** [2] - 28:3, 28:5
**LOCKE** [2] - 2:6, 31:20
**look** [6] - 15:18, 17:7, 20:10, 21:11, 40:17, 42:1
**looked** [1] - 22:14
**looking** [7] - 15:20, 18:13, 28:1, 31:3, 34:3, 39:23, 42:23
**looks** [1] - 39:13
**LORNA** [1] - 2:10
**loss** [1] - 30:11
**lost** [1] - 25:8
**Louis** [1] - 26:24

**M**

**Magistrate** [1] - 21:12
**March** [4] - 32:25, 34:17, 34:24, 35:16
**MARK** [1] - 2:10
**MARKETING** [1] - 1:4
**master** [1] - 25:1
**material** [3] - 25:2, 25:14, 39:22
**matter** [4] - 10:4, 22:15, 25:15, 27:10
**MATTER** [1] - 3:11
**matters** [2] - 6:9, 9:23
**MDL** [2] - 27:20, 29:12
**MDLs** [1] - 19:18
**Meadow** [1] - 8:11
**MEAGHER** [1] - 1:21
**mean** [2] - 16:11, 42:13
**mechanisms** [1] - 14:4
**meeting** [1] - 33:19
**mention** [2] - 37:16, 43:3
**mentioned** [2] - 6:1, 42:2
**mesothelioma** [3] - 8:14, 36:10, 36:12
**methodology** [2] - 15:20, 44:12
**MICHELLE** [1] - 1:15
**mid** [2] - 33:5, 35:9

**mid-June** [2] - 33:5, 35:9
**Middlesex** [1] - 36:10
**might** [5] - 11:23, 12:4, 16:23, 19:25, 43:25
**million** [1] - 10:4
**Missouri** [1] - 8:14
**misunderstanding** [1] - 37:20
**moment** [2] - 7:8, 28:18
**months** [1] - 32:25
**most** [2] - 22:15, 24:20
**motion** [4] - 28:18, 28:23, 29:7, 43:22
**motions** [2] - 28:17, 31:23
**move** [4] - 8:7, 8:8, 8:16, 30:23
**moved** [1] - 25:20
**moving** [3] - 29:10, 29:20, 35:12
**MR** [14] - 13:16, 13:22, 15:5, 16:5, 20:18, 21:5, 21:8, 21:25, 31:20, 36:14, 36:21, 40:3, 45:3, 45:19
**MS** [69] - 4:9, 4:10, 4:14, 4:17, 5:11, 6:11, 6:18, 7:21, 8:18, 8:22, 9:1, 9:2, 9:6, 12:17, 12:20, 13:11, 17:15, 18:2, 19:13, 19:17, 19:19, 19:24, 20:15, 23:6, 23:15, 23:18, 23:23, 24:6, 24:12, 24:13, 24:21, 25:9, 25:18, 25:22, 26:2, 26:19, 27:17, 28:6, 28:11, 29:23, 30:5, 30:13, 30:25, 31:4, 31:14, 31:17, 31:25, 32:4, 32:8, 32:17, 32:22, 33:16, 34:2, 34:22, 35:7, 35:14, 37:9, 38:12, 39:5, 39:15, 40:5, 40:10, 41:1, 42:5, 43:15, 43:20, 44:6, 44:21, 44:24
**multi** [1] - 26:17
**multi-plaintiff** [1] - 26:17
**must** [1] - 39:10
**MY** [1] - 3:10

**N**

**names** [1] - 7:24

**NANCY** [1] - 2:12
**narrow** [1] - 20:25
**narrowed** [2] - 18:19, 40:6
**necessarily** [1] - 41:23
**need** [16] - 8:4, 8:16, 12:16, 12:21, 13:9, 13:10, 17:12, 19:8, 22:19, 27:13, 29:17, 30:15, 30:16, 34:7, 40:17, 40:22
**needs** [2] - 6:17, 25:16
**negotiate** [4] - 18:7, 18:23, 19:8, 20:5
**negotiating** [1] - 23:18
**never** [2] - 8:23, 36:4
**NEW** [1] - 1:1
**New** [3] - 27:8, 29:13, 47:7
**new** [1] - 41:24
**next** [6] - 8:7, 31:3, 31:8, 31:12, 35:16
**nicely** [1] - 14:15
**nickel** [8] - 37:17, 37:24, 40:8, 42:2, 42:9, 42:21, 44:13, 45:18
**NJ** [1] - 1:8
**NO** [1] - 1:2
**nobody** [1] - 18:14
**note** [2] - 8:10, 44:9
**noted** [1] - 9:19
**NOTES** [1] - 3:10
**nothing** [1] - 16:9
**notice** [10] - 17:20, 18:23, 19:7, 24:25, 25:6, 25:7, 25:13, 25:23, 26:1, 26:8
**notices** [4] - 17:16, 18:7, 20:8, 25:19
**number** [3] - 24:24, 34:4, 35:21
**numbers** [1] - 12:21

**O**

**O'DELL** [20] - 1:14, 17:15, 19:19, 19:24, 20:15, 24:6, 24:12, 24:21, 25:9, 26:19, 27:17, 28:6, 28:11, 34:2, 34:22, 35:14, 37:9, 38:12, 43:15, 43:20
**O'Dell** [2] - 17:14, 44:25
**object** [5] - 4:21, 4:25,

25:24, 33:2, 35:18
**objected** [1] - 8:24
**objection** [3] - 5:13, 18:1, 18:2
**objections** [4] - 6:21, 17:19, 33:2, 35:2
**obtained** [1] - 22:10
**obviously** [5] - 5:5, 5:12, 9:7, 16:23, 41:8
**OF** [3] - 1:1, 1:4, 3:10
**off-the-record** [1] - 46:8
**offers** [1] - 7:25
**Official** [1] - 47:5
**OFFICIAL** [2] - 1:25, 3:16
**once** [6] - 7:17, 17:17, 17:20, 19:8, 19:21, 34:10
**one** [24] - 6:8, 6:16, 7:1, 11:23, 12:4, 13:9, 13:11, 15:7, 19:14, 20:13, 23:6, 24:7, 25:2, 25:19, 27:19, 29:1, 30:21, 32:2, 35:25, 38:19, 39:5, 39:6, 42:20, 42:21
**one-day** [1] - 20:13
**ones** [4] - 11:19, 27:25, 28:1, 28:2
**open** [5] - 4:1, 29:5, 32:9, 32:10, 38:14
**opine** [3] - 39:18, 41:25, 43:14
**opined** [2] - 36:6, 43:12
**opining** [3] - 7:7, 16:1, 45:25
**opinion** [9] - 4:7, 29:6, 29:15, 29:16, 30:23, 35:10, 37:1, 41:3, 43:3
**opinions** [2] - 15:8, 15:12
**opportunity** [3] - 21:9, 28:21, 28:23
**option** [1] - 7:4
**options** [1] - 7:9
**order** [7] - 4:7, 4:15, 6:1, 27:24, 32:7, 32:23, 34:18
**orders** [1] - 25:4
**OREGON** [1] - 2:12
**orphans** [1] - 27:11
**otherwise** [2] - 7:13, 22:16
**Ouija** [1] - 23:8
**ourselves** [1] - 30:15

**outset** [1] - 40:14
**outside** [3] - 18:16, 19:3, 19:4
**ovarian** [10] - 8:13, 15:16, 15:21, 36:7, 36:16, 37:2, 37:13, 38:1, 38:6, 41:4
**ovaries** [1] - 14:5
**overall** [1] - 38:3
**overruled** [1] - 21:1
**oversight** [1] - 43:7
**own** [2] - 21:19, 22:17

---

**P**

**page** [1] - 14:11
**paper** [1] - 38:15
**parameters** [4] - 16:25, 17:7, 18:17, 39:8
**PARFITT** [29] - 1:15, 4:9, 4:14, 4:17, 5:11, 6:11, 6:18, 9:2, 9:6, 12:17, 12:20, 13:11, 23:15, 23:18, 23:23, 26:2, 29:23, 30:5, 30:13, 30:25, 31:4, 31:14, 31:17, 39:5, 39:15, 40:5, 40:10, 41:1, 42:5
**Parfitt** [1] - 8:20
**part** [6] - 8:11, 20:21, 34:16, 40:20, 40:21, 40:22
**particular** [3] - 17:3, 37:23, 42:22
**parties** [4] - 7:1, 10:22, 27:3, 47:14
**partner** [1] - 8:11
**path** [2] - 6:20, 12:18
**PCPC** [5] - 2:8, 7:1, 12:2, 25:10, 28:18
**peer** [1] - 15:13
**peer-reviewed** [1] - 15:13
**pending** [3] - 8:9, 28:17, 28:19
**PENNSYLVANIA** [2] - 2:7, 2:12
**people** [6] - 6:7, 7:25, 13:7, 16:21, 17:8, 17:12
**per** [1] - 33:22
**percent** [1] - 45:9
**percentages** [1] - 42:21
**perhaps** [10] - 6:20, 7:5, 7:8, 7:9, 7:19, 9:17,

9:18, 10:21, 11:16, 42:14
**period** [5] - 5:25, 20:5, 20:6, 36:3, 45:20
**permissible** [2] - 4:19, 9:23
**permission** [1] - 29:24
**permitted** [1] - 9:15
**person** [6] - 6:16, 12:4, 12:8, 13:7, 22:15, 39:7
**personal** [1] - 22:17
**persons** [1] - 12:8
**perspective** [1] - 26:15
**PFC** [1] - 8:12
**phone** [1] - 17:1
**pick** [2] - 11:17, 17:12
**picked** [1] - 16:7
**piece** [1] - 39:22
**pike** [1] - 35:23
**Pisano** [35] - 4:22, 5:1, 5:21, 5:22, 6:13, 7:4, 7:10, 7:22, 7:23, 8:16, 9:12, 9:25, 10:19, 11:1, 12:25, 13:17, 14:13, 16:20, 18:7, 18:18, 18:24, 19:4, 20:6, 20:12, 21:10, 22:25, 23:21, 32:6, 33:3, 33:15, 33:19, 35:1, 35:10, 35:19, 37:13
**Pisano's** [3] - 4:7, 4:15, 4:18
**place** [1] - 47:10
**Placitella** [2] - 20:17, 45:2
**PLACITELLA** [11] - 1:17, 1:17, 20:18, 21:5, 21:8, 21:25, 36:14, 36:21, 40:3, 45:3, 45:19
**plaintiff** [1] - 26:17
**plaintiffs** [14] - 16:6, 16:7, 18:4, 23:11, 24:14, 26:16, 26:23, 27:10, 32:24, 33:7, 33:19, 33:25, 35:8, 38:15
**Plaintiffs** [1] - 1:18
**plaintiffs'** [2] - 32:4, 44:10
**planned** [1] - 33:20
**planning** [1] - 5:3
**plausible** [1] - 14:4
**pleadings** [1] - 5:6
**point** [9] - 7:1, 7:12,

10:25, 14:16, 15:1, 15:13, 16:23, 41:21, 45:25
**pointed** [1] - 21:16
**polyvinylchloride** [1] - 45:9
**position** [10] - 8:3, 13:25, 15:24, 16:1, 20:25, 21:1, 21:8, 22:21, 33:7, 37:11
**possible** [1] - 6:5
**potentially** [1] - 43:25
**POWDER** [1] - 1:4
**powder** [11] - 10:15, 37:11, 37:13, 37:15, 37:20, 41:3, 41:13, 42:8, 42:10, 42:20, 42:22
**PRACTICES** [1] - 1:5
**precedent** [1] - 29:18
**precluding** [1] - 45:23
**prejudice** [1] - 43:25
**prejudicial** [1] - 9:21
**preliminary** [8] - 30:21, 36:22, 36:25, 38:5, 38:11, 39:16, 43:16, 46:2
**preparation** [1] - 21:23
**prepare** [4] - 20:22, 21:2, 21:15, 21:22
**prepared** [10] - 8:5, 9:25, 11:2, 11:14, 12:5, 13:5, 17:8, 34:14, 35:20, 43:23
**present** [2] - 23:21, 38:23
**presentation** [2] - 38:15, 41:7
**presented** [4] - 24:9, 40:18, 41:19, 42:13
**presenting** [1] - 38:15
**pretty** [2] - 40:3, 45:4
**problem** [2] - 23:3, 26:14
**procedure** [1] - 4:24
**proceedings** [2] - 46:10, 47:9
**process** [3] - 12:22, 20:21, 30:1
**produce** [2] - 7:25, 23:8
**produced** [3] - 15:16, 19:10, 41:17
**product** [10] - 13:23, 21:4, 21:5, 21:24, 22:20, 40:13, 42:10, 44:12,

44:15, 45:18
**production** [1] - 10:3
**PRODUCTS** [1] - 1:4
**products** [12] - 11:8, 11:9, 11:10, 37:12, 37:13, 37:15, 37:21, 41:4, 41:13, 42:8, 42:20, 45:13
**proffered** [1] - 41:11
**progressed** [1] - 44:7
**promise** [1] - 30:16
**proper** [4] - 6:22, 7:19, 12:13, 21:14
**properly** [3] - 12:24, 26:4, 29:2
**proportionality** [1] - 6:2
**propose** [1] - 38:12
**proposed** [3] - 6:24, 6:25, 32:7
**propound** [1] - 5:23
**protocol** [7] - 23:19, 24:4, 24:10, 29:10, 32:20, 32:21, 35:15
**protocols** [1] - 24:7
**prove** [1] - 44:11
**provided** [1] - 26:19
**PSC** [1] - 8:24
**published** [2] - 11:11, 15:12
**pure** [1] - 10:15
**purposes** [1] - 9:24
**PURSUANT** [1] - 3:8
**pursuant** [1] - 26:5
**put** [8] - 4:11, 11:4, 13:23, 13:25, 15:24, 32:6, 37:9, 44:19
**puts** [2] - 10:20, 34:23

---

**Q**

**questioner** [4] - 18:5, 19:14, 19:19
**questions** [4] - 12:14, 17:9, 21:16, 39:12
**quickly** [1] - 24:15
**quite** [1] - 36:2
**quoted** [1] - 14:12

---

**R**

**raise** [2] - 7:11, 7:16
**raising** [3] - 22:19, 23:1, 23:10
**rather** [3] - 13:12, 23:2,

30:22
**RE** [1] - 1:4
**re** [5] - 24:17, 26:7, 27:7, 29:12
**re-filed** [3] - 24:17, 26:7, 27:7
**re-filing** [2] - 29:12
**read** [2] - 6:24, 13:12
**reading** [2] - 29:3, 43:2
**ready** [1] - 24:4
**really** [9] - 9:11, 12:4, 12:7, 16:20, 30:22, 32:9, 35:8, 40:6, 43:5
**reanalyze** [1] - 39:20
**reason** [2] - 42:18, 45:14
**reasonable** [2] - 20:3, 35:1
**reasonably** [1] - 7:6
**reasons** [1] - 5:4
**REATH** [1] - 1:19
**receive** [1] - 5:8
**received** [3] - 4:5, 4:18, 26:1
**receiving** [1] - 32:11
**recognize** [2] - 5:22, 44:16
**recommendation** [1] - 4:22
**recommendations** [1] - 4:19
**reconcile** [2] - 27:4, 27:18
**record** [6] - 11:5, 41:16, 42:6, 43:20, 46:7, 46:8
**REES** [1] - 2:11
**refer** [1] - 21:16
**reference** [1] - 39:21
**refers** [1] - 25:5
**refining** [1] - 43:6
**reflect** [1] - 30:2
**regard** [6] - 4:15, 4:19, 4:22, 10:15, 28:17, 39:7
**relative** [2] - 47:12, 47:15
**relevant** [4] - 7:6, 9:9, 10:13, 21:20
**reliance** [1] - 39:22
**relied** [1] - 41:12
**rely** [4] - 15:7, 15:11, 15:23
**relying** [2] - 39:19, 43:11
**remaining** [1] - 23:24
**removed** [1] - 26:25
**rep** [1] - 20:25

**report** [13] - 4:5, 4:6, 28:15, 36:23, 36:25, 38:5, 38:10, 38:11, 39:16, 39:21, 43:17, 46:2
**Reporter** [2] - 47:6
**REPORTER** [2] - 1:25, 3:16
**reports** [5] - 4:21, 5:23, 9:24, 32:5, 33:13
**represent** [1] - 7:15
**representatives** [1] - 11:24
**representing** [1] - 5:16
**request** [3] - 6:7, 39:9, 44:3
**requested** [3] - 8:23, 43:24, 44:19
**require** [1] - 28:25
**required** [1] - 30:12
**requirement** [1] - 25:4
**requirements** [1] - 26:9
**requires** [1] - 28:25
**resolve** [1] - 8:1
**resolved** [6] - 4:13, 8:2, 19:9, 33:3, 35:3, 35:4
**respect** [1] - 9:10
**respected** [1] - 39:17
**respectfully** [1] - 6:23
**respond** [9] - 6:9, 6:17, 11:24, 12:5, 12:12, 12:14, 23:16, 34:2, 35:18
**response** [1] - 30:9
**responsive** [1] - 6:7
**result** [1] - 29:22
**results** [2] - 32:11, 32:16
**returned** [1] - 26:24
**reversing** [1] - 7:23
**review** [1] - 28:23
**reviewed** [6] - 5:10, 10:7, 15:13, 21:17, 21:23, 38:23
**revisit** [1] - 12:21
**rights** [2] - 5:17, 5:19
**rise** [2] - 4:2, 46:9
**role** [3] - 20:18, 22:23, 23:21
**ROTH** [1] - 1:17
**RPR** [1] - 1:24
**rule** [1] - 17:3
**Rule** [2] - 26:5, 26:9
**ruled** [2] - 8:16, 29:3

**rules** [1] - 21:7
**ruling** [3] - 6:1, 6:22, 7:22
**rulings** [1] - 5:1
**running** [1] - 27:22
**RUSSONIELLO** [2] - 1:24, 3:16
**Russoniello** [4] - 3:15, 47:5, 47:22, 47:23

---

**S**

**S/Vincent** [2] - 3:15, 47:22
**SALES** [1] - 1:5
**sample** [5] - 24:3, 33:8, 33:21, 33:22, 42:22
**samples** [15] - 32:12, 32:16, 32:24, 33:1, 34:4, 34:8, 34:10, 34:14, 35:7, 35:15, 35:21, 36:24, 37:6, 45:7, 45:9
**sampling** [6] - 11:10, 14:21, 33:13, 35:2, 42:18, 44:16
**Saturday** [1] - 26:20
**save** [2] - 29:19, 33:15
**saw** [2] - 28:3, 37:12
**schedule** [1] - 46:6
**science** [23] - 14:3, 14:6, 14:17, 14:24, 36:1, 36:6, 36:25, 37:7, 38:1, 38:6, 38:13, 40:3, 40:15, 40:21, 41:7, 41:20, 42:3, 42:4, 42:14, 43:8, 43:11, 44:12, 46:2
**scientifically** [1] - 44:11
**scientist** [1] - 39:17
**scientists** [2] - 15:8, 15:9
**scope** [3] - 19:3, 19:5, 45:7
**seat** [1] - 16:18
**seated** [1] - 4:4
**second** [2] - 24:10, 34:23
**secondly** [1] - 23:10
**SECTION** [1] - 3:8
**see** [17] - 10:11, 13:2, 16:5, 17:11, 19:4, 20:10, 33:12, 35:4, 38:1, 38:7, 38:17, 38:20, 39:1, 40:23, 42:4, 43:10, 44:19
**seeing** [1] - 10:16
**seem** [1] - 7:12

**select** [1] - 16:21
**sense** [1] - 18:20
**sent** [1] - 5:9
**separate** [1] - 28:22
**September** [1] - 10:6
**seriously** [1] - 10:8
**serve** [1] - 17:16
**served** [3] - 17:17, 24:24, 26:11
**service** [1] - 26:9
**serving** [1] - 25:12
**set** [1] - 47:10
**seven** [8] - 17:22, 18:3, 19:9, 19:20, 20:2, 20:4, 20:11, 20:14
**several** [1] - 24:1
**severe** [1] - 10:20
**SEYFARRTH** [1] - 2:5
**shaking** [1] - 28:3
**Sharko** [5] - 7:20, 17:25, 19:11, 35:6, 44:4
**SHARKO** [16] - 1:19, 4:10, 7:21, 18:2, 19:13, 19:17, 23:6, 31:25, 32:4, 32:8, 32:17, 32:22, 35:7, 44:6, 44:21, 44:24
**sharko** [1] - 23:5
**SHAW** [1] - 2:5
**SHERYL** [1] - 2:7
**short** [3] - 24:20, 24:22, 26:17
**show** [1] - 19:1
**showed** [1] - 21:2
**shown** [3] - 21:15, 21:21, 37:14
**shows** [1] - 18:14
**side** [3] - 19:16, 28:4, 33:24
**sides** [1] - 38:14
**signed** [1] - 24:3
**SILVER** [1] - 2:10
**simply** [4] - 7:11, 20:13, 21:21, 29:10
**single** [6] - 28:1, 33:8, 33:20, 36:5, 42:20, 42:21
**six** [1] - 20:2
**SKADDEN** [1] - 1:21
**SLATE** [1] - 1:21
**small** [1] - 10:4
**someone** [2] - 7:23, 13:10
**sometimes** [2] - 6:8, 7:17

**somewhat** [1] - 39:21
**sooner** [1] - 33:6
**sort** [1] - 28:12
**sound** [1] - 44:11
**sounded** [1] - 44:22
**sounds** [1] - 26:13
**speaking** [2] - 19:11, 22:11
**specific** [7] - 13:20, 18:12, 18:23, 22:11, 31:2, 32:14, 35:21
**specifically** [2] - 32:23, 38:2
**spend** [1] - 37:18
**spun** [1] - 32:18
**St** [1] - 26:24
**stage** [2] - 37:4, 39:10
**standard** [3] - 7:23, 15:20, 19:17
**standing** [1] - 9:8
**start** [3] - 8:24, 12:17, 19:2
**started** [2] - 10:11, 40:15
**State** [3] - 27:9, 47:7
**STATE** [1] - 1:8
**state** [5] - 5:21, 8:13, 20:24, 29:2, 42:25
**States** [1] - 47:5
**STATES** [2] - 1:1, 1:8
**states** [2] - 28:22, 28:24
**status** [2] - 4:5, 24:17
**STATUS** [1] - 1:4
**statutes** [1] - 28:24
**Steering** [1] - 1:18
**STENOGRAPHIC** [1] - 3:10
**stenographically** [1] - 47:9
**step** [1] - 7:8
**sticking** [1] - 12:11
**still** [3] - 13:9, 34:15, 35:22
**stop** [1] - 31:12
**strategy** [1] - 27:18
**STREET** [1] - 1:8
**strong** [1] - 40:3
**strongly** [3] - 4:21, 5:19, 9:7
**stuck** [1] - 11:20
**studied** [1] - 43:13
**studies** [8] - 36:15, 36:16, 36:19, 38:24, 39:18, 40:2, 41:12

**subject** [4] - 6:9, 9:22, 22:15, 27:10
**submitted** [2] - 9:25, 10:5
**subsequent** [1] - 5:7
**subset** [3] - 34:6, 34:9, 34:13
**succinct** [1] - 5:13
**suggesting** [4] - 18:11, 38:11, 44:18, 45:17
**sum** [1] - 22:5
**Summers** [1] - 25:21
**Summers-West** [1] - 25:21
**supply** [1] - 36:14
**support** [1] - 15:11
**supposed** [2] - 21:16, 22:5
**surprise** [1] - 29:8
**surprised** [1] - 18:15
**surprising** [2] - 12:1, 29:21
**SUSAN** [1] - 1:19
**Susan** [1] - 33:17
**synthesize** [2] - 7:18, 13:18

---

**T**

**table** [1] - 28:9
**talc** [8] - 10:15, 14:4, 37:17, 37:24, 38:3, 40:13, 40:16
**Talc** [1] - 2:13
**talcum** [10] - 37:11, 37:13, 37:15, 37:20, 41:3, 41:13, 42:7, 42:10, 42:20, 42:22
**talks** [1] - 25:6
**technical** [2] - 24:25, 25:13
**ten** [4] - 30:6, 30:8, 30:16, 31:12
**tentative** [1] - 7:25
**terms** [2] - 25:11, 35:20
**terrific** [1] - 38:24
**TERSIGNI** [3] - 1:20, 25:18, 25:22
**test** [7] - 32:11, 32:16, 33:1, 33:21, 34:7, 35:15, 45:6
**tested** [3] - 33:10, 34:9, 34:11

**testified** [2] - 41:2, 42:7
**testify** [3] - 11:3, 13:4, 22:23
**testifying** [1] - 39:4
**testing** [11] - 11:9, 14:19, 14:20, 16:16, 32:20, 33:4, 33:20, 33:24, 35:9, 45:15
**THE** [29] - 1:1, 1:10, 2:7, 3:8, 3:10, 4:2, 8:21, 8:25, 9:4, 13:15, 18:10, 20:16, 21:6, 23:4, 23:17, 23:24, 24:11, 25:8, 30:19, 31:1, 31:15, 31:18, 33:12, 34:1, 34:23, 39:14, 40:11, 45:2, 46:9
**theories** [2] - 10:14, 36:2
**theory** [5] - 10:14, 32:22, 37:20, 43:5
**therefore** [1] - 40:20
**THOMAS** [1] - 2:6
**THORNTON** [1] - 2:12
**three** [9] - 6:7, 11:21, 11:23, 26:23, 33:22, 34:12, 35:11, 45:23, 46:1
**throw** [2] - 40:9, 40:10
**Throw** [1] - 40:11
**tie** [1] - 32:11
**timing** [2] - 35:4, 35:20
**Tisi** [2] - 14:11, 16:18
**TISI** [5] - 1:16, 13:16, 13:22, 15:5, 16:5
**TITLE** [1] - 3:8
**TO** [2] - 3:8, 3:9
**today** [9] - 5:7, 29:5, 29:6, 31:2, 32:2, 34:14, 34:21, 35:21, 36:5
**tomorrow** [1] - 34:21
**took** [4] - 20:24, 20:25, 21:1, 41:25
**topic** [1] - 16:17
**topics** [10] - 9:19, 15:10, 16:17, 16:19, 17:9, 18:8, 18:11, 18:13, 18:17, 20:10
**total** [1] - 22:5
**transcript** [4] - 14:13, 17:5, 37:12, 47:8
**TRANSCRIPT** [2] - 1:4, 3:9
**TRANSCRIPTION** [1] -

3:10
**TRENTON** [1] - 1:8
**trial** [1] - 14:16
**tried** [5] - 9:11, 36:3, 36:9, 41:10, 43:10
**true** [1] - 47:8
**try** [2] - 5:12, 23:22
**trying** [5] - 9:22, 13:12, 13:18, 25:14, 42:17
**turns** [2] - 13:6, 45:8
**two** [10] - 6:6, 11:23, 23:6, 24:6, 27:17, 29:1, 33:24, 35:3, 35:11, 40:5
**tying** [1] - 36:16

---

**U**

**U.S** [2] - 1:25, 3:16
**U.S.C** [1] - 3:8
**unclear** [1] - 25:3
**under** [3] - 21:6, 26:14, 32:20
**Understood** [1] - 30:25
**undertaken** [1] - 5:24
**unfortunately** [1] - 4:6
**United** [1] - 47:5
**UNITED** [2] - 1:1, 1:8
**unless** [1] - 14:23
**unusual** [1] - 39:9
**up** [15] - 5:13, 6:15, 15:19, 18:14, 19:1, 21:10, 26:25, 27:18, 27:22, 29:10, 29:19, 35:19, 39:1, 42:9, 43:10
**urge** [1] - 27:21
**USDJ** [1] - 1:10
**usurp** [1] - 23:20

---

**V**

**vacuum** [2] - 16:1, 16:3
**variety** [1] - 45:7
**verdicts** [1] - 26:24
**version** [1] - 24:13
**via** [2] - 26:7, 26:8
**view** [1] - 12:5
**views** [1] - 18:21
**VINCENT** [2] - 1:24, 3:16
**Vincent** [2] - 47:5, 47:23
**VIRGINIA** [2] - 1:15, 1:16

---

**W**

**wait** [2] - 30:8, 44:19
**wants** [4] - 19:1, 29:16,

32:11, 42:11
**Washington** [1] - 8:14
**WASHINGTON** [2] -
1:21, 2:6
**week** [5] - 23:12, 30:5,
31:3, 31:8, 34:24
**weeks** [4] - 24:1, 27:17,
35:3, 35:11
**West** [1] - 25:21
**whereby** [1] - 14:4
**wherein** [1] - 4:25
**white** [1] - 38:15
**wide** [1] - 45:6
**willing** [1] - 43:14
**willingness** [1] - 10:24
**window** [2] - 26:10,
26:11
**wining** [1] - 10:10
**wise** [1] - 30:24
**withdrawn** [1] - 7:4
**witness** [14] - 6:6, 6:8,
12:12, 12:13, 16:9, 17:5,
17:24, 18:3, 19:21,
20:23, 21:2, 22:4, 23:12
**witnesses** [8] - 6:4, 8:23,
11:1, 11:13, 11:18, 13:4,
17:22
**WOLFSON** [54] - 1:10,
4:3, 4:11, 4:16, 5:8, 6:5,
6:15, 7:20, 10:23, 12:19,
12:25, 13:21, 14:8, 16:3,
16:14, 17:25, 19:15,
19:22, 20:4, 21:4, 21:11,
23:20, 24:16, 25:17,
25:21, 26:13, 27:15,
27:25, 28:7, 28:14, 30:4,
30:10, 31:7, 31:21, 32:1,
32:6, 32:10, 32:19,
34:20, 35:22, 36:18,
36:22, 37:22, 38:17,
39:24, 40:8, 41:19,
42:24, 43:18, 44:2,
44:18, 44:22, 45:16,
45:22
**women** [2] - 5:17, 7:14
**word** [3] - 6:2, 7:21,
30:24
**workable** [1] - 13:2
**works** [3] - 14:15, 18:23,
33:5
**written** [1] - 29:16
**wrote** [4] - 15:22, 16:10,
16:11, 35:10

**Y**

**years** [2] - 33:24, 39:11
**yourself** [1] - 38:24