Exhibit 4

# ASHCRAFT & GEREL, LLP

ATTORNEYS AND COUNSELLORS AT LAW

SUITE 650

4900 SEMINARY ROAD

## ALEXANDRIA, VIRGINIA 22311

(703) 931-5500

FAX (703) 820-0630

DISTRICT OF COLUMBIA
ALLEN J. LOWE
CHRISTOPHER V. TISI
JERRY D. SPITZ
BENJAMIN E. DOUGLAS
DREW B. LaFRAMBOISE
JILLIAN M. PETRELLA
ADAM K. ROSEN
AVERY M. ADCOCK

MARYLAND
ROBERT G. SAMET
DAVID M. LAYTON
ROBERT A. FLACK
ALAN J. MENSH
NATHAN M. PEAK
STEPHEN M. GENSEMER
PATRICK K. LYONS
JENNIFER L. HUISMAN
DENISE J. GOTTRON

SENIOR COUNSEL
L. PALMER FORET

*ONLY ADMITTED IN NY

ROCKVILLE, MD 20852
SUITE 1002
11300 ROCKVILLE PIKE
(301) 770-3737

LANDOVER, MD 20785
SUITE 301
4301 GARDEN CITY DRIVE
(301) 459-8400

WASHINGTON, DC 20006
SUITE 700
1825 K STREET, N.W.
(202) 783-6400

BALTIMORE, MD 21202
SUITE 1212
10 EAST BALTIMORE STREET
(410) 539-1122

VIRGINIA
LAWRENCE J. PASCAL
JAMES F. GREEN
MICHELLE A. PARFITT
CRAIG A. BROWN
DAVID L. BAYNE, JR.
JOSEPH T. MUSSO
SARA E. ANDERSON
GERTRUDE N. KAMTCHOUM*

OF COUNSEL
WAYNE M. MANSULLA
WILLIAM F. MULRONEY

LEE C. ASHCRAFT
1906-1993

MARTIN E. GEREL
1918-2011

January 19, 2018

**VIA Electronic Mail**
Honorable Joel A. Pisano (Ret.)
Walsh Pizzi O'Reilly Falanga, LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, NJ 07102

      **Re:** *In Re: Johnson & Johnson Talcum Powder Products Marketing, Sales*
           *Practices and Products Liability Litigation*
           **MDL No. 2738**

Dear Judge Pisano:

      The PSC files this brief response to the various submissions filed by the defendants on Monday January 15, 2018. While the PSC will be prepared to respond more fully to the issues raised by defendants at the conference, the PSC wants to identify--and briefly address--four broad complaints that can be distilled from defendants' submissions:

1.  **SCOPE OF DISCOVERY**: Defendants continue to insist that the scope of discovery is narrow and exclusively focused on "general causation." Not so. While the Court is clearly interested in discovery on the general causation question, and will discuss expert disclosures relating to these issues at the next status conference, it **also** recognized that the scope of discovery is to be much broader than "general causation" stating that the "only thing we're really not doing right now is specific causation issues." See September 6, 2017 Hearing Transcript at p. 5. Rather than attempt to characterize the Court's views on this matter any further, the PSC attaches the Court's comments on this topic contained on pages 1-14 of the September 6, 2017 status conference. [Attached as Exhibit 1]. They are quite clear.

2.  **NUMBER OF POTENTIAL DEPONENTS IDENTIFIED**: Defendants further complain that the PSC has named an extraordinary, excessive and unprecedented number of potential deponents in this MDL in its January 10 disclosure. [Attached as Exhibit 2].

January 19, 2018
Page 2 of 3

Exclusive of 30(b)(6) witnesses, the PSC has identified 29 J&J witnesses, 16 Imerys witnesses, 5 PCPC witnesses and 9 non-parties that it may wish to depose based on its document review to date. As the PSC points out in the chart on page 3, paragraph 3 of its January 10 disclosure, the PSC's proposed list is less than and certainly consistent with MDL's of this type which typically exceed the number of depositions identified here. Indeed, the numbers requested by the PSC here is less than in those cases since many of those cases involved fewer defendants than the 3 that are defendants here.

3. **TIMING OF DEPOSITIONS**: The PSC has been further accused of delay in starting depositions. This, too, is not true. As set forth more fully in the PSC's January 5 letter, the J&J defendants alone "dumped" 750,000 pages of documents on the PSC in the last couple months of 2017. See Letter to Hon. Joel Pisano, January 5, 2018. J&J made that massive production despite repeated representations that its prior state productions were both complete and sufficient. J&J's recent production would not have been made at all had the PSC not insisted that the prior productions were incomplete and insufficient—a claim that has now proven to be accurate. Given the J&J defendants' massive document production *which took a year to make*, the PSC should not be required to immediately begin depositions of J&J witnesses and instead should be afforded an opportunity to review the massive, recent document dump from J&J before being required to commence depositions of J&J witnesses.

With respect to Imerys, however, its final production of January 5, 2018 was comparatively modest (about 75,000 pages). Therefore, the PSC can begin to take Imerys fact depositions in the immediate future. The PSC proposes that these start with the four (4) witnesses the PSC requested to depose last June (McCarthy, Pier, Turner and Ferret).

4. **DEPOSITION PROTCOL**: Defendants further complain that the PSC has refused to adopt or comment on their proposed deposition protocol. Defendants' proposal is quite restrictive and goes beyond the discovery depositions currently contemplated. And, its contents were not discussed in a meet and confer meeting with any PSC representative. In response, the PSC proposed a "clean" protocol modeled on one that was actually entered in this Circuit by Chief Judge Stengel in the Eastern District of Pennsylvania in *In Re Tylenol* with limited edits that apply to this MDL. The PSC provided this to the defendants in a word format for their consideration. [Attached as Exhibit 3]. The parties will meet and confer about the respective proposals. The PSC will be prepared to discuss the drafts to the extent the Court wishes to discuss a deposition protocol.

Again, the PSC will be prepared to discuss all issues on Monday.

Best regards,

Michelle A. Parfitt, Esq.
P. Leigh O'Dell, Esq

January 19, 2018
Page 3 of 3

cc:     Hon. Freda L. Wolfson, U.S.D.J. (via e-mail)
        Hon. Lois H. Goodman, U.S.M.J. (via e-mail)
        Susan Sharko, Esq. (via e-mail)
        Julie Tersigni, Esq. (via e-mail)
        Lorna Dotro, Esq. (via e-mail)
        Mark Silver, Esq. (via e-mail)
        Tom Locke, Esq. (via e-mail)
        Sheryl Axelrod, Esq. (via e-mail)
        Warren Burns, Esq. (via e-mail)
        Richard Golomb, Esq. (via e-mail)
        Richard Meadow, Esq. (via e-mail)
        Hunter Shkolnik, Esq. (via e-mail)
        Chris Placitella, Esq. (via e-mail)
        Larry Berman, Esq. (via e-mail)
        Dan Lapinski, Esq. (via e-mail)
        Chris Tisi, Esq. (via e-mail)

# EXHIBIT 1

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO 16-MD-2738(FLW)(LHG)


_____ :
IN RE JOHNSON & JOHNSON       : TRANSCRIPT OF
POWDER PRODUCTS MARKETING,    : STATUS CONFERENCE
SALES PRACTICES.              :
--------------------------    : SEPTEMBER 6, 2017


CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608


B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ
              THE HONORABLE LOIS H. GOODMAN, USMJ


A P P E A R A N C E S:

BEASLEY ALLEN, ESQUIRES
BY:  P. LEIGH O'DELL, ESQUIRE (ALABAMA)
        -and-
ASHCRAFT & GEREL, ESQUIRES
BY:  MICHELLE A. PARFITT, ESQUIRE (VIRGINIA)
     CHRIS TISI, ESQUIRE  (VIRGINIA)
        -and-
COHEN, PLACITELLA & ROTH, ESQUIRES
BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE
On Behalf of the Plaintiffs Steering Committee

DRINKER, BIDDLE & REATH, ESQUIRES
BY:  SUSAN M. SHARKO, ESQUIRE
        -and-
SHOOK, HARDY & BACON, ESQUIRES
BY:  PATRICK L. OOT, ESQUIRE  (WASHINGTON, D.C.)
        -and-
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, ESQUIRES
BY:  JOHN H. BEISNER, ESQUIRE  (WASHINGTON, D.C.)
On behalf of Defendant Johnson & Johnson


* * * * *
**VINCENT RUSSONIELLO, RPR, CRR, CCR**
**OFFICIAL U.S. COURT REPORTER**
**(609) 588-9516**

2

A P P E A R A N C E S    C O N T I N U E D:


SEYFARRTH & SHAW, ESQUIRES
BY:  THOMAS L. LOCKE, ESQUIRE  (WASHINGTON D.C.)
        -and-
THE AXELROD FIRM, ESQUIRES
BY:  SHERYL L. AXELROD, ESQUIRE  (PENNSYLVANIA)
On Behalf of Defendant PCPC


COUGHLIN DUFFY, ESQUIRES
BY:  LORNA A. DOTRO, ESQUIRE
     MARK K. SILVER, ESQUIRE
        -and-
GORDON & REES, ESQUIRES
BY:  ANN THORNTON FIELD, ESQUIRE  (PENNSYLVANIA)
     NANCY M. ERFLE, ESQUIRE  (OREGON)
On behalf of Defendant Imerys Talc America

3

**C E R T I F I C A T E**


PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE ABOVE-ENTITLED MATTER.


S/Vincent Russoniello
VINCENT RUSSONIELLO, CCR
OFFICIAL U.S. COURT REPORTER

4

```
 1            THE CLERK:  All rise.

 2            JUDGE WOLFSON:  Thank you.

 3            (Appearances are given.)

 4                      *  *  *  *  *

 5            JUDGE WOLFSON:  On the record.

 6            I think instead of following through in the

 7    order of your status letter, which is normally what I

 8    do, I think it is better instead to go right to the

 9    scope of discovery and what was my intent when I got

10    on the phone with you last week as to what the scope

11    is.

12            Let me start by saying, no, it was not limited

13    to asbestos.  So let me make that clear.  I'm sorry if

14    I gave some doubt to that.  Where I am is, and I can

15    certainly go through each of the ones that the

16    plaintiff has identified, but it is much broader.  It

17    includes information or knowledge of J&J as to a

18    number of these things.

19            I think all of this, and part of my reason for

20    broadening the discovery, and maybe I've had some

21    interest in doing so at the beginning as well and

22    perhaps it was being too narrowly construed, but I do

23    think also some of these matters could impact what

24    studies were being done at the time, if there was any

25    influence, who was involved.
```

5

1          For instance, if you have whether it's J&J or

2     the other entities somehow involved in other groups

3     that are performing the studies, I always said the

4     issue of bias in the studies is going to be an

5     important issue and I am going to allow these.

6          The only thing we're really not doing right

7     now is specific causation issues.  But I would like to

8     go through the topics to make sure what I've got on

9     really the relevance of each one of these.

10          "Cornstarch and/or cornstarch products."

11          What's that about, an alternative?

12          MS. O'DELL:  It's a safer alternative for talc

13     in the product.  We believe we have the right to

14     discover all of that and our experts need to know that

15     because in many states they will need to opine on what

16     would be a safer alternative design of the product.

17          JUDGE WOLFSON:  Okay.

18          "The closure of mines, mills, process,

19     facilities, et cetera."

20          Now, I was curious.  Did J&J actually have

21     some mines?

22          MS. O'DELL:  Yes, your Honor.  There is

23     information regarding decisions to close mines or to

24     not source talc for the talcum powder products because

25     of asbestos and other carcinogens within the ore body.

6

1        So we want to discover all that.  If a mine

2   was closed because of that, and that mine was used as

3   a source for the talcum powder products, we want to

4   discover that.

5        JUDGE WOLFSON:  How long ago were those

6   closures?

7        MS. O'DELL:  Some in the '70s, some earlier.

8   It depends on the specific mine.  But they would have

9   been within the zone of usage for many of the women.

10        JUDGE WOLFSON:  That's what my question was.

11        Let's go through all of these and then I'll

12   make some comments.

13        "Drill logs from mines and other documents."

14        These are again the J&J mines?

15        MS. O'DELL:  As well as Imerys mines.

16        JUDGE WOLFSON:  Okay.

17        Because I know this is under your J&J

18   defendant category.  But I'm assuming with regard to

19   Imerys, there is not going to be a dispute about this

20   anyway.  Correct?

21        MR. SILVER:  I'm sorry.  What was the

22   question?

23        JUDGE WOLFSON:  It says, "Drill logs from

24   mines and other documents."

25        You never had an issue about it.  Correct?

7

1          MR. SILVER:  No, your Honor.

2          JUDGE WOLFSON:  This is related to J&J mines.

3     So now it's getting the same kind of things from the

4     J&J mines. Okay.

5          "Meetings with advisory committees or

6     third-party consultants."

7          What does that mean?

8          MS. O'DELL:  It relates to consultants or

9     advisory boards that were considering the issue of

10    whether the products cause cancer, and we want to

11    discover those communications in documents.  That's

12    what the discovery request was specifically targeted

13    to those issues.

14         JUDGE WOLFSON:  Thank you.

15         And then I guess there was a sale of Shower To

16    Shower at some point to Valeant and you are saying if

17    there were documents that would reflect issues related

18    to the product in connection with the sale and how

19    that could impact the sale and if there were such

20    documents reflecting that.  Is that what that really

21    is?

22         MS. O'DELL: Yes.

23         JUDGE WOLFSON:  Okay.

24         What are the "Board of Director

25    communications"?

8

1          MS. O'DELL:  Well, the specific request was

2     for "Communications of the Board of Directors or

3     subcommittees of the Board of Directors relating to

4     the safety of talcum powder products and specifically

5     the ovarian cancer risks."

6          JUDGE WOLFSON:  Okay.  I don't know why you

7     wouldn't get that.

8          "Communications with Mr. Zazenski at Imerys."

9          MS. O'DELL:  Mr. Zazenski, among other things,

10    wrote a document that suggested cornstarch was a safer

11    alternative for the design of the talcum powder

12    products.  And if cornstarch were not substituted for

13    talc, a warning should have been added to the bottle.

14    He is a person that is in a number of documents --

15         JUDGE WOLFSON:  Who was he?  What was his

16    position?

17         MS. O'DELL:  Product safety for Imerys.

18         JUDGE WOLFSON:  No longer employed?  Is he

19    deceased?

20         MS. O'DELL:  He's deceased.

21         MS. ERFLE:  He has been deceased since 2008.

22         JUDGE WOLFSON:  "The definition of pure talc."

23         MS. O'DELL:  It's our position, your Honor,

24    that there is no such thing as pure talc.  And to a

25    degree that there have been representations regarding

9

 1   the talc is pure, we want to discover not only the

 2   testing -- it would show that talc is not pure -- but

 3   also to the degree there are documents that they

 4   suggest evidence that talc is pure, we want to know

 5   that.

 6           On that particular issue, your Honor, let me

 7   just make sure.

 8           Mr. Tisi, do you have anything to add on that

 9   point of pure talc?

10           MR. TISI:  I would add, your Honor, that the

11   issue in this case is whether or not the talcum powder

12   product -- and we've had some dispute about this with

13   the defense -- whether or not the talcum powder

14   product can cause cancer.

15           None of the products that they market are pure

16   talc from what we could see in the documents that

17   we've reviewed.  And so the issue in the case is their

18   product and not necessarily the talc.

19           JUDGE WOLFSON:  Okay.

20           "Contracts between defendants and any entity

21   concerning talc purchased for use in defendants'

22   products."

23           MS. O'DELL:  We would like to discover those

24   contracts and specifically are there indemnity clauses

25   that relate to those purchases, i.e., Johnson &

1  Johnson defendants purchasing talc from Imerys and

2  others?  Are there indemnity agreements that are a

3  part of that?  If there is liability for cases

4  involving ovarian cancer.

5        JUDGE WOLFSON:  Where I am at this point is,

6  the general subject matters can be discovered.  I'm

7  not going to deal with the exact parameters.  I'm

8  going to leave that to your disputes, your specific

9  requests that you can present to Judge Pisano.

10       I am allowing the general discovery requests.

11  I'm not making any ruling today on indemnity

12  agreements or anything of that nature.  I'll leave

13  that for the specifics to see what they look like.

14  I'm not so sure that's relevant to where we are today.

15  And certainly some of these things I think would be

16  limited, but the subject matters I'll permit.

17       So now with that you can tee-up up your

18  discovery issues.

19       MR. OOT:  Just a point of clarification.  So

20  for these subject matters, the general theory is

21  discoverable.  But we'll work with Judge Pisano to

22  narrow it?

23       JUDGE WOLFSON:  On the scope of it, right.  If

24  there are ones that are going beyond or if they're too

25  broad, right, exactly.

11

1          MS. O'DELL:  Your Honor, in relation to that,

2     so we don't get in a situation where we have to

3     relitigate all the specific issues, the direction that

4     you are giving us today is these matters are

5     discoverable --

6          JUDGE WOLFSON:  Yes.

7          MS. O'DELL?  -- if it relates to ovarian

8     cancer and the talcum powder products increasing the

9     risk of ovarian cancer, then we are allowed to

10    discover that.

11         JUDGE WOLFSON:  Yes.

12         MS. O'DELL:  And that should proceed.  So we

13    don't want to get in a posture today where we leave

14    this conference, we relitigate --

15         JUDGE WOLFSON:  That there is no issue about.

16         MS. O'DELL:  And so discovery in terms of

17    production documents should proceed.  Depositions

18    should proceed.

19         JUDGE WOLFSON:  I'm not so sure depositions

20    should proceed.  You don't want to depose someone more

21    than once.  So if you have disputes about areas that

22    that same person would be asked questions about, I

23    don't want to have that happen.  Depositions are a

24    separate question at the moment.

25         I'm trying to deal with the written discovery

12

1   first.  But I am going to give you some timelines

2   today for both written discovery and depositions.

3           MS. O'DELL:  Okay.  Thank you.

4           JUDGE WOLFSON:  Yes, Ms. Sharko.

5           MS. SHARKO:  I'm a little confused and I think

6   we need unfortunately a little more clarity.

7           JUDGE WOLFSON:  Sure.

8           MS. SHARKO:  The areas that you enunciated

9   are, in general, fair game for discovery as it relates

10  to ovarian cancer, and the parties need to work out

11  the parameters of that.  It's not everything, every

12  last piece of paper, every last whatever.

13          JUDGE WOLFSON:  Nothing is every last piece of

14  paper because as in any discovery we know there are

15  limits to it.  So, yes, that's why I'm not ruling on

16  any specifics today.

17          I'm saying the subject matters are

18  appropriate.  You have to review what the requests

19  are.  You decide if they are overbroad or not and we

20  go from there.

21          MS. SHARKO:  And apply the rules of

22  proportionality and all that.

23          JUDGE WOLFSON:  All the rules still apply to

24  this case.  The rules of civil procedure apply.  So

25  that's where we are.

13

1          Now, with that, let's go back to some of the
2     specific issues that you are raising.
3          Now, I understand you will be re-reviewing I
4     guess the written discovery requests, that some of the
5     prior objections may not apply, and I think you need
6     to do some more conferring.
7          Let me deal with all written discovery first
8     and then I'll talk about depositions with you.
9          Third-party subpoenas.  I guess there were
10    some issues about not who is being deposed but the
11    areas that you are identifying for those.  Is that
12    correct?
13          MS. O'DELL:  In terms of the request, your
14    Honor, I think the only outstanding issue relates to
15    -- there are two actually.  The foreign regulatory
16    agencies and what was happening with trade
17    associations in Europe.  That was briefed in the joint
18    letter.
19          So what the parties have done, we served
20    subpoenas without those requests that were subject to
21    objection to get things moving.  But there was an
22    issue in the joint letter that related to those
23    foreign regulatory and trade associations.  And if my
24    memory serves, there were some specific entities that
25    were included in the Colorado School of Mines

14

1    subpoena.

2         JUDGE WOLFSON:  At this point, having the

3    discover master, I'm not going to go into the

4    nitty-gritty of what those are.  That's an issue,

5    again, that should be teed-up for Judge Pisano.

6         You've reached agreement with regard to the

7    Bristol-Myers ruling and there is a stipulation I

8    understand that you want to enter with regard to all

9    these cases that are listed in Exhibit 1.  But I

10   understand there are a couple of cases for which you

11   still are pursuing the remand on.

12        MS. O'DELL:  There are three cases, your

13   Honor.  In each of those cases there is a state

14   defendant.  So the cases were filed in the resident

15   state of the plaintiff.  There is an in-state

16   defendant and --

17        JUDGE WOLFSON:  And I guess the argument is

18   going to be whether that's a real defendant or not or

19   simply joined to destroy diversity.  So those are

20   going forward.

21        MS. O'DELL:  Yes.  There are three of those

22   cases.

23        JUDGE WOLFSON:  Okay. So we can enter the

24   Exhibit 1.

25        Let me talk for a moment about the

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY
LITIGATION

**MDL NO. 16-2738 (FLW) (LHG)**

*THIS DOCUMENT RELATES TO ALL CASES*

### THE PLAINTIFFS' STEERING COMMITTEE'S
### INITIAL DISCLOSURE OF POTENTIAL DEPONENTS

In accordance with the Court's December 7, 2017 Order, the Plaintiffs' Steering Committee (PSC) provides the below list of witnesses who may be subject to deposition and states as follows:

1.      **The PSC's Initial Disclosure of its List of Potential Deponents:**  On September 7, 2017, the Court ordered Defendants to complete their document productions by November 6, 2017. That deadline was subsequently extended for the J&J Defendants until December 20, 2017, and for Defendant Imerys until January 5, 2018.  See CMO 9 (Doc. 673) and Amended CMO 9 (Doc. 2090).  The entry of these Orders precipitated voluminous productions of new documents in the final days of the formal discovery period, with the largest volume of documents being produced to the PSC in the last several weeks.  The specifics about these productions are described below:

A.   **J&J Defendants**: Prior to the entry of CMO 9 in September 2017, J&J had produced 678,777 pages of documents. Most of these documents (508,705 pages) were the earlier "state court production" and were produced in the MDL in late April 2017. While J&J initially insisted this first production fulfilled its MDL discovery obligations, that proved not to be the case.  Following the entry of CMO 9, the number of J&J documents requiring PSC review ballooned to over 1,500,000 pages, with over 400,000 pages being produced just days before Christmas.  J&J's productions subsequent to its earlier "state court production" are illustrated by the following table:[1]

---

[1] A detailed analysis of the J&J Defendants' flawed productions is set forth in the PSC's letter of January 5, 2018 to Special Master Pisano, incorporated by reference.  This letter also describes the relief that the PSC desires as a result of the J&J Defendants' defective productions.

1



B. **Imerys**:  Pursuant to the Amended CMO 9 discovery timetable, Defendant Imerys made its final MDL production on January 5, 2018. Imerys produced just over 75,000 pages of new documents in the past 5 days.

2. **Supplementation and Amendment of this List**: Given the last-minute nature of defendants' productions, the PSC has not had adequate time to review this discovery. The list of deponents below is therefore initial and subject to change.  As noted the PSC's letter of January 5, 2018 to Special Master Pisano requests an extension until April 30, 2018 to supplement this list with additional potential deponents.

3. **The Number of Potential Deponents:**  In preparing its initial list of proposed deponents, the PSC was guided by the number of fact witnesses deposed in MDL's of similar size, significance and complexity, including cases where J&J was a defendant:[2]

---

[2] Cases involving J&J as a defendant are noted with an "*".

| CASE | Fact/Corporate Depositions Taken or Permitted[3] | PSC Experts Identified | Defense Experts Identified | Total Plaintiffs |
|---|---|---|---|---|
| *In Re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385 (S.D. Il.) | 47 (2-day limit) | 0[4] | | ~4,000 |
| *In Re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Products Liability Litigation*, MDL No. 2100 (S.D. Il.) | 57 | ~28 | | ~20,000 |
| *In Re: Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.) | 90 | 23 | | ~56,000 |
| *In Re: Xarelto* (Rivaroxaban) Products Liability Litigation*, MDL No. 2592 (E.D. La.) | 45 (2-day limit by Court Order) | 23 | 40 | 19,192 |
| *In Re: Gadolinium Based Contrast Agent Litigation*, MDL No. 1909 (N.D. Oh.) | 32 (20 were 2 days or longer) | 19 | 9 | ~1,000 |
| *In Re: Tylenol* (Acetaminophen) Marketing and Sales Practice and Products Liability Litigation*, MDL No. 2436 (E.D. Pa.) | 20 (by Court Order) | 12 | | 275 |
| *In Re: Testosterone Replacement Therapy Products Liability Litigation, et al.*, MDL No. 2545 (N.D. Il.) | 80 AbbVie - 43 Auxillium - 37 (by Court Order) | 21 | | |
| *In Re: Benicar (Olmesartan) Products Liability Litigation*, MDL No. 2606 (N.J.) | 50 general causation only (by Court Order) | 6 | | ~2,500 |
| *In Re: Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299 (W.D. La.) | ~50 | 17 | 16 | ~6,000 |
| *In Re: DePuy Orthopaedics, Inc.*, Pinnacle Hip Implant Products Liability Litigation*, MDL. No. 2244 (E.D. Tx.) | ~80 | ~12-15 | ~12-15 | ~9,500 |

---

[3] This number does not include third party non-party witnesses.
[4] Case settled before expert disclosures.

4.      **Timing and Logistics of Depositions:**  The PSC requests depositions begin only after it has had a reasonable opportunity to review 800,000+ pages of documents newly produced by Defendants following the entry and amendment of CMO 9.  The PSC proposed in its January 5, 2018 letter that this issue would be an appropriate topic for the parties to cover with the Special Master at the upcoming January 22, 2018 conference.  See fn. 1.

5.      **Scope of the List:**    The PSC limited its list of witnesses to those who it expects can shed light on the issues the Court has already deemed discoverable, including science-related issues and "what defendants knew".  See Hearing Transcript, Sept. 6, 2017, pp. 4-14.  The PSC did not include witnesses whose responsibilities appear to be primarily in the areas of marketing, sales and distribution, and reserves the right to request depositions of additional witnesses who have information in these areas and on these topics at a later date.

6.      **30(B)(6) witnesses:**  The PSC has endeavored to identify 30(b)(6) witnesses on the substantive topics outlined below, but reserves the right to supplement those topics as appropriate and necessary.

## WITNESSES

The PSC submits the following individuals as potential deponents. For the Court's convenience, the PSC provides the witness's title, as best as the PSC could discern it.  Many of these witnesses, however, were employed for decades and may have held numerous positions and played different roles with respect to the issues in this case.

## I.      JOHNSON & JOHNSON DEFENDANTS

1.      **Bruce Semple** – Director, Medical & Regulatory Affairs

2.      **Charles Wajszczuk** – Director, Product Safety; Senior Director, Medical Safety Officer, Office Safety and Toxicology Consumer Health Care

3.      **Donald "Don" Hicks** – Former Senior Director, Quality Assurance

4.      **Jethro Ekurta** – Vice President, Global Head of Multiple Franchises and Regional Head of North America, Global Regulatory Affairs, J&J Consumer Inc.

5.      **Erin McNabb** – Product Surveillance Scientist

6.      **George Lee** – Director, Applied Research

7.      **Helen Han Hsu** – Vice President, Head of Drug Safety Sciences

8.      **Homer Swei** – Associate Director, Product Stewardship

9.      **James Molnar –** Director, Laboratory Services

10.     **Jane Cai –** Senior Director, Analytical Development

11.     **Jijo James –** Chief Medical Officer, JJCI

12.     **Joan Casalvieri –** Director, Toxicology

13.     **John Hopkins** – Former Director, Worldwide Category of Infant Care and Consultant

14.     **John Lemmo –** Principal Scientist; Research Manager, Fellow, Analytical SMP

15.     **Katharine Martin** – Senior Director, Research & Development

16.     **Kathleen Wille –** Senior Director, Scientific and External Regulatory Policy, Product Stewardship

17.     **Lorena Telofski –** Associate Director, Research and Development, Global Scientific Engagement

18.     **Michael Chudkowski –** Manager, Preclinical Toxicology

19.     **Nancy Musco –** Manager, Product Safety & Education

20.     **Regina Gallagher –** Principal Scientist

21.     **Santosh Jiwrajka –** Vice President, Quality Assurance

22.     **Simonette Cordero Soriano –** Safety Surveillance Physician

23.     **Steve Mann –** Former Director of Toxicology for J&J Consumer & Personal Products Worldwide (CPCUS)

24.     **Susan Nettesheim –** Vice President, Product Stewardship & Health Care Compliance

25.     **Susan Nicholson –** Vice President, Safety Surveillance and Risk Management, Consumer Products

26.     **Tara Glasgow –** Vice President, Research and Development, Baby and Scientific Engagement

27.  **Teresa Gonzalez Ruiz –** Product Director

28.  **Timothy McCarthy –** Director, Office of Safety and Toxicologist

29.  **William "Bill" J. Powers, Jr. –** Former Vice-President, Global Preclinical Development, Toxicologist

30.  **30(b)(6) Witness(es)**:
     i.   Relationship between J&J and JJCI, including historical relationships;
     ii.  Corporate structure;
     iii. Manufacturing and testing of talc, including chain for custody for samples maintained;
     iv.  Safety assessment and monitoring to talcum powder products;
     v.   Relationship between J&J entities and other stakeholders including with co-defendants and FDA; and
     vi.  Evidentiary foundation for documents.


II.  **IMERYS TALC AMERICA, INC.**[5]

1.   **Craig Bernard –** Regulatory Affairs and Product Stewardship; Environmental and Health Scientist

2.   **Dave Matlock –** Operations Manager

3.   **Ed McCarthy –** Scientist

4.   **Eric Turner –** Vice President, Health and Safety Sustainability

5.   **Jim Kopp –** Manager

6.   **Jocelyn Ferret –** Project Stewardship and Analytical Lab Manager

7.   **John Poston –** Sr. Quality Manager

8.   **Julie Pier –** Global Laboratory Manager/Senior Scientist

9.   **Kent Cutler –** Vice President, Sales & Marketing

10.  **Maurizio Coggiola –** Commissioned Expert

---

[5] Includes all predecessor companies.

11. **Michele Refregier –** Chief Medical Officer

12. **R. Wayne Ball –** Environmental & Health Scientist

13. **Shripal Sharma –** Global Director, Product Stewardship

14. **Steve Jarvis –** Director, Health, Safety & Environment

15. **Phillippe Moreau** – Geologist

16. **Jon Godla** – Vice President Operations

17. **30(b)(6) Witness(es)**:
    i. Corporate structure and relationship to predecessor entities;
    ii. Relationship with co-Defendants and other entities like FDA;
    iii. Mining, manufacturing, testing, and safety and quality assessment of talc for talcum powder products; and
    iv. Evidentiary foundation for documents.

III. **Personal Care Products Council**

1. **Gerald "Jerry" McEwen –** Former Vice President, Science

2. **John Bailey –** Former Executive Vice President, Science

3. **Alan Andersen –** Former Director, Cosmetic Ingredient Review (CIR)

4. **Ivan Boyer** – Chief Toxicologist, Cosmetic Ingredient Review (CIR)

5. **Monice Fiume –** Senior Scientific Analyst/Writer, Cosmetic Ingredient Review (CIR)

6. **30(B)(6) Witness(es)**:
    i. Structure and relationship to predecessor entities;
    ii. Relationship with co-defendants and other entities like FDA and CIR; and
    iii. Evidentiary foundation for documents.

IV. **NON-PARTIES**

1. **William "Bill" Kelly, Jr. –** Consultant and Western Representative, Center for Regulatory Effectiveness (CRE)

2.   **Jim Tozzi –** Member, CRE Advisory Board; Director, Multinational Business Services, Inc.

3.   **Colorado School of Mines –** 30(b)(6) witnesses

4.   **Crowell and Moring –** Consultant on Regulatory Affairs, 30(b)(6) witnesses

5.   **Joshua Muscat –** Consulting Scientist

6.   **Michael Huncharek** – Consulting Physician and Scientist, founder of Meta-Analysis Research Group

7.   **IMA-North America –** Industrial Minerals Trade Association

8.   **McCrone Associates –** Asbestos Testing and Analysis Laboratory

9.   **RJ Lee –** Asbestos Testing and Analysis Laboratory

Date:  January 10, 2018                    Respectfully Submitted,

                                          *s/Michelle A. Parfitt*
                                          Michelle A. Parfitt
                                          ASHCRAFT & GEREL, LLP
                                          4900 Seminary Road, Suite 650
                                          Alexandria, VA 22311
                                          Telephone: 703-931-5500
                                          Email: mparfitt@ashcraftlaw.com

                                          *s/P. Leigh O'Dell*
                                          P. Leigh O'Dell
                                          BEASLEY, ALLEN, CROW,
                                          METHVIN, PORTIS & MILES, PC
                                          218 Commerce Street
                                          Montgomery, AL 36104
                                          Telephone: 334-269-2343
                                          Email: leigh.odell@beasleyallen.com

                                          *s/Christopher M. Placitella*
                                          Christopher M. Placitella
                                          COHEN PLACITELLA ROTH, PC
                                          127 Maple Avenue

8

Red Bank, NJ 07701
Telephone 888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **Civil Action No. 3:16-md-2738 (FLW-LHG)**<br><br>**MDL No. 2738** |
| ***THIS DOCUMENT RELATES TO ALL CASES*** | |

**CASE MANAGEMENT ORDER NO.**
**(DEPOSITION PROTOCOL FOR NON-EXPERT WITNESSES)**

1. **Purpose of this Order** – The purpose of this Order is to gain the highest degree of efficiencies and cooperation in the taking of depositions in this MDL litigation. While recognizing the benefits to the parties, their counsel, and the judicial system that result from coordination and cooperation, this Court, counsel, and the parties also recognize that each state is an independent jurisdiction. Therefore, it is not the intention of the Court or the parties that judges in any of the participating jurisdictions delegate their duties to any other judicial officer.

2. **Applicable Rules** – Unless otherwise agreed by all parties, when a deponent is questioned by an attorney that is a member of the PSC or a designee of the PSC, the depositions will proceed according to the Federal Rules of Civil Procedure and Local Rules. However, if a deposition is crossed-noticed in a state Court proceeding, the state Court rules shall apply during the portion of the questioning by the state Court attorneys. Any agreement to deviate from the Federal Rules of Civil Procedure, the Local Rules of this Court, or this Order must be recorded on the transcript at the time the deposition commences.

3. **Expert Depositions** – This deposition protocol does not apply to expert witnesses which will be covered by a separate case management order that will be entered at a later time, if necessary.

4. **Number of Depositions**.

a) The PSC shall in good-faith take only those depositions of defendants and their current employees deemed reasonably necessary under the circumstances of this case. Defendants shall make available, without requiring a subpoena, all current employees requested by the PSC for deposition, subject to the limits on the number of depositions set forth within this Order and to defendants' right to object to the taking of any particular employee's deposition for good cause shown. Defendants shall take reasonable steps to make available requested former employees, to the extent possible.

b) The PSC collectively shall be limited to twenty (20) depositions of defendants' current employees and former employees, pursuant to Fed. R. Civ. P. 30(b)(6). This limitation applies solely to depositions noticed pursuant to Fed. R. Civ. P. 30 (b)(6) and does not impose a limitation on the number of corporate depositions that the PSC may take, subject only to the requirement that the PSC shall proceed in good-faith in noticing corporate depositions.

c) Additional depositions taken pursuant to paragraph 4 (b) above may be allowed by agreement of the parties or with leave of Court upon good cause shown.

5. **Deposition Notices.**

a) All depositions in 3:16-md-02738 will be noticed and conducted pursuant to Fed. R. Civ. P. 30.

b) Deposition Notices shall be in a form consistent with the Federal Rules of Civil Procedure and shall identify whether the deposition is to be videotaped.

c) Any Deposition Notice served pursuant to Fed. R. Civ. P. 45 will attach this Deposition Protocol.

**6.** <u>**Cooperation in Scheduling**</u>

a) The Court will not set specific deadlines for beginning depositions or the amount of notice that will be given. The Court expects the parties to use good judgment in scheduling depositions and in noticing depositions.

b) Depositions may commence in this MDL on _____.

c) Individuals to be deposed should be given a reasonable amount of advance notice of the date of the deposition. All notices propounded pursuant to Fed. R. Civ. P. 30(b)(6) must give the witness to be deposed adequate time to prepare himself or herself on the subject matter of the deposition.

d) Absent extraordinary circumstances, counsel shall consult with opposing counsel and counsel for proposed deponents in an effort to schedule depositions at mutually convenient times and locations.

e) If a defendant in this MDL anticipates that it will cross notice a deposition in this MDL, the defendant shall make reasonable efforts to consult with PSC counsel in an effort to schedule the deposition at a mutually agreeable time and place and in a manner that shall accommodate the PSC's examination of the witness.

f) Counsel shall attempt in good-faith to cooperate in the scheduling of depositions considering the demands on the time and schedules of both the parties and their respective counsel.

g) More than one deposition may take place in 3:16-md-02738 at the same time, except that no more than two (2) depositions may be scheduled by any party for depositions on the same day absent agreement by the parties or Court order. Counsel shall act in good faith

and endeavor, to the extent possible, to not schedule an unreasonable number of depositions on the same day or in disparate locations.

h) Nothing in this CMO prevents the parties from seeking Court intervention through a motion for a protective order, motion to quash, or other relief afforded by the Federal Rules of Civil Procedure. The parties shall attempt to address disputes related to depositions by presenting them to Special Discovery Master Pisano, unless the timing of a forthcoming deposition or other event does not permit.

**7.** **Cooperation at Deposition**

a) No smoking – There shall be no smoking or use of other tobacco products in any room in which a deposition is being conducted at any time before, during, or after a deposition.

b) Counsel are reminded that the Courts consider depositions to be official Court procedures and the conduct of all participants in depositions shall be in accordance with the customs and practices expected of lawyers and witnesses appearing before these Courts, as if each was appearing personally before the Court at the time of the depositions.

c) Counsel shall not at any time conduct himself or herself in a manner not becoming an officer of the Court and not in full compliance with the civil rules of practice and all other orders of the Courts. Neither counsel nor witnesses shall, at any time, engage in conduct that impedes, delays, or frustrates the examination of the witness. All counsel and the deponent must be treated with civility and respect.

**8.** **Location for Depositions**

a) The location of the depositions shall be as consistent as feasible within each city, so that videotape equipment, if being used, can be left in place.

b) Defendants' Current and Former Employees – To the extent reasonably possible, depositions of current and former employees of defendants shall take place at a mutually agreed-upon location in: Philadelphia, Pennsylvania; New Jersey; or the home federal district of the deponent.

9. **Attendance**

a) **Who May be Present** – Unless otherwise agreed to by the PSC or Defense Lead or Liaison Counsel, depositions may be attended only by the parties, the deponent, the deponent's attorney, attorneys of record in 3:16-md-02738 or state Court Talc cases (including any employee of such attorney who is assisting in the litigation and whose presence is reasonably required by the attorney), in-house counsel for defendants, the Court reporter, and the videographer. For good cause shown, and upon prior notice to the PSC or Defense Lead or Liaison Counsel or request to the Court, attendance may be permitted by a person who does not fall within any of these categories.

b) **Use of Confidential Documents** – Use of confidential documents and/or confidential information shall be used in accordance with this Court's Case Management Order Regarding Confidential Information.

10. **Conduct of the Deposition**

a) Except by order of the Court, the following provisions shall apply at all depositions of fact witnesses.

b) Selection of Attorneys to Conduct Examination and Length of Deposition – One attorney will conduct the principal examination of the deponent on behalf of each of:

    i. the PSC;

    ii. plaintiffs in state Court actions;

      iii. each of the named defendant(s); and

      iv. to the extent a non-party witness is being deposed, the attorney if any, representing the non-party witness.

c) The attorney so designated by the PSC will cooperate with other plaintiffs' counsel in advance of the date scheduled for the deposition regarding the areas of examination in order to conduct a thorough and non-duplicative examination.

d) Sequence of Examination for Depositions

    i. Questioning at the depositions to be taken by the PSC will be conducted in the following sequence:

      1. the primary examiner selected by the PSC—which may include a lawyer from the state Court litigants;

      2. other 3:16-md-02738 plaintiffs' attorneys on non-redundant matters;

      3. the primary examiner selected by the state Court litigants, if not the primary questioner in the deposition;

      4. the primary examiner selected by Defendants or other defendants as applicable;

      5. individual counsel for the deponent, if any; and

      6. any re-cross or redirect by those mentioned above.

    ii. Questioning at the depositions taken by Defense Lead or Liaison Counsel or designated counsel shall be conducted in the following sequence:

      1. the primary examiner selected by defendant whose witness is being deposed;

      2. any other 3:16-md-02738 counsel for other defendants;

      3. the primary examiner selected by the PSC—which may include a lawyer from the state Court litigants;

4. any other 3:16-md-02738 plaintiffs' attorney on non-redundant matters;

5. the primary examiner selected by the state Court litigants if not the primary questioner in the deposition;

6. individual counsel for the deponent, if any; and

7. any re-cross or redirect by those mentioned above.

**11. <u>Duration</u>**

a) The time limitations imposed by Fed. R. Civ. P. 30(d)(1)—one (1) day of seven (7) hours—shall be the prima facie limitation on the duration of depositions in the MDL, unless the parties agree to a different time limitation or the Court establishes a different time limitation. However, the Court recognizes that because many witnesses of defendants to be deposed are legacy witnesses, who may possess information that spans decades, that a limitation of one (1) day of seven (7) hours for the duration of the deposition of such witnesses will be prima facie insufficient time. Accordingly, as to such legacy type witnesses being deposed, the plaintiffs shall have the right to depose such witnesses for a duration that is longer than one (1) day of seven (7) hours. The parties shall make a good faith effort to reach agreement on the precise amount of duration of a legacy witness' deposition, and upon the parties failing to reach an agreement, the issue shall be presented in the first instance to Special Master Pisano for resolution.

b) The MDL litigants shall attempt to address disputes related to depositions by raising same with Special Master Pisano in the form that he desires, unless the timing of a forthcoming deposition or other event does not permit.

c) To the extent that a party other than the noticing party conducts a direct examination, the noticing party may conduct a recross for the same amount of time used by the non-noticing party.

d) With regard to the duration of depositions, to the extent the deposition is "cross-noticed" to apply in a state court case or cases, as well as in this MDL, the duration of the portion of the deposition taken by the PSC for this MDL shall not be reduced by the duration of the portion of the deposition taken by state Court counsel in the cross-noticed portion of the deposition. Nevertheless, the parties shall cooperate and coordinate to avoid duplicate questioning of the witness.

**12. <u>Objections and Directions Not to Answer</u>**

a) Objections preserved until time of trial – All objections, except those as to form and privilege, are reserved until trial or other use of the depositions.

b) Objection by one is for all – Any objection made at a deposition shall be deemed to have been made on behalf of all other parties.

c) No Speaking Objections – Counsel shall refrain from engaging in colloquy during deposition. The phrase "objection as to form" or similar language shall be sufficient to preserve all objections as to form until the deposition is sought to be used. If requested, the objecting party shall provide a sufficient explanation for the objection to allow the deposing party to rephrase the question. No speaking objections are allowed and professionalism is to be maintained by all counsel at all times. Counsel shall not make objections or statements which might suggest an answer to a witness.

d) Limited Instruction to not Answer – Counsel shall not direct or request that a witness refuse to answer a question unless that counsel has objected to the question on the ground

that the question seeks privileged information, information that the Court has ordered may not be discovered, or a deponent or his or her counsel intend to present a motion to the Court for termination of the deposition on the ground that it is being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass or oppress the party or deponent, or to discover evidence that the deponent's counsel believes is not discoverable.

e) Consulting with Witness during Deposition – Private consultations between deponents and their attorneys during the actual taking of the deposition are improper, except for the purpose of determining whether a privilege should be asserted. Any such conferences may be held during normal recesses, adjournments, or if there is a break in the normal course of interrogation and no questions are pending. However, counsel shall not seek to alter the substance of the testimony of the witness during the aforementioned conferences.

f) Objections to Documents – Objections to the admissibility of documents are not waived and are reserved for later ruling by the Court or trial judge. A party need not "move" the admission of a document in a deposition to preserve its use at trial.

g) Authenticity of Exhibits – Any objection to the authenticity of an exhibit used in the deposition must be made by defendants within twenty (20) days of the deposition, or the exhibit will be deemed authentic. If a defendant subsequently obtains information that an exhibit is not authentic, it will promptly notify the PSC. All parties shall cooperate as necessary so that the Court may issue a ruling on any objection to a document prior to trial or prior to any remand of cases for trial in the transferor Courts.

**13. <u>Disputes during the deposition</u>**

a) Disputes between the parties arising during a deposition should be addressed to this Court, or to Special Master Pisano, or to a state Court judge if the deposition is cross-noticed, rather than to the Court in the district in which the deposition is being conducted.

b) If a dispute arising during a deposition requires expedited consideration the party requesting the intervention of the Court will send a short email to this Court and to Special Master Pisano at XXXXXXXXXXXXXXXXXX stating as follows: "The parties to the Talc MDL request your assistance resolving a dispute in connection with an ongoing deposition, and request a time to confer with the Court or Special Master Pisano by telephone at its earliest convenience." The party requesting assistance shall provide the Court and Special Master Pisano with a brief, non-argumentative description of the dispute that needs resolution. The email shall be copied to lead counsel present at the deposition and to the designated lead and liaison counsel in the MDL. The email shall include the best telephone number(s) at which to reach the counsel involved in the deposition in which there is a dispute. After receipt of the email, the Court or Special Master Pisano will endeavor to initiate a telephone conference between the Court or Special Master Pisano and counsel as soon as possible.  To the extent the parties can continue to proceed with the deposition on other matters while awaiting a response from the Court or Special Master Pisano, they shall do so, provided however, if the deposition cannot continue to proceed until the dispute is resolved, the deposition may be recessed pending the resolution of the dispute.

c) If a dispute arises before a deposition commences, the dispute shall immediately be brought to the attention of the Court and Special Master Pisano by motion or by a letter brief sent by email to XXXXXXXXXXX. Copies of the moving pleading with the

request for relief, together with the supporting documents, shall be e-mailed to the counsel involved in the immediate dispute and the leadership of defendants and of plaintiffs. No supporting memorandum or brief will be necessary, unless requested by the Court. Exhibits attached to the motion are discouraged and, if used, should be kept to a minimum. To the extent the dispute relates to a matter that is part of the cross-notice of the deposition for a state Court action, this Court will endeavor to coordinate conferral among the Courts for resolution of the issue, consistent with the law of the various jurisdictions.

d) If a dispute arises after a deposition is completed, the dispute shall immediately be brought to the attention of the Court and Special Master Pisano by motion or by a letter brief sent by email to XXXXXXXXXXX. Copies of the moving pleading with the request for relief, together with the supporting documents, shall be e-mailed to the counsel involved in the immediate dispute and the leadership of defendants and of plaintiffs. No supporting memorandum or brief will be necessary, unless requested by the Court. Exhibits attached to the motion are discouraged and, if used, should be kept to a minimum. To the extent the dispute relates to a matter that is part of the cross-notice of the deposition for a state Court action, this Court will endeavor to coordinate conferral among the Courts for resolution of the issue, consistent with the law of the various jurisdictions.

e) Nothing in this order should be read to prohibit any party from raising a dispute either before or after a deposition with any state Court judge.

**14. <u>Exhibits</u>**

a) Marking – The first time a document is marked as a deposition exhibit, it shall be referred to by the Bates number appearing on the document. Documents that have not been previously produced shall be assigned a Bates number from a range of numbers reserved for this purpose. Thereafter, the exhibit shall be referred to by its deposition exhibit number. Counsel shall use reasonable efforts to mark exhibits sequentially and shall attempt to use the previously marked exhibit number in subsequent depositions rather than re-marking the same exhibit with different exhibit numbers.

b) Copies – A copy of any document about which examining counsel expects to question the deponent should ordinarily be provided to the reporter, the deponent, primary counsel for the parties, and deponent's counsel at the time it is presented to the deponent.

### 15. Subpoenas and Documents

a) Subpoenas Pre-Notice – Prior to serving a valid subpoena pursuant to Fed. R. Civ. P. 45, the party serving the subpoena shall provide pre-notice service to the opposing party of no less than fifteen (15) days. If the opposing party fails to move to quash or seek other relief within the fifteen (15) day period, the serving party may serve the subpoena upon the witness.

b) Document Request Within Subpoena or Deposition Notice – A subpoena or notice upon a witness to testify and product documents (duces tecum) shall be noticed and served with the subpoena or deposition notice and document request at least thirty (30) days before the scheduled deposition. This provision shall not supersede any preexisting agreement or order governing which documents should be produced and/or when.

### 16. Custodial Files

a) Supplementing – It is the intent of the Court that prior to the commencement of any deposition, that the complete custodial file of the deponent shall have been produced with adequate time for the opposing party to have reviewed the custodial file prior to the commencement of the deposition. Defendants shall supplement their custodial file of any employee, former employee or consultant within thirty (30) days of the date that the Notice of Deposition is served. The PSC shall not notice a deposition any sooner than thirty (30) days from the date the Notice of Deposition is served to afford the defendant an opportunity to produce the full and complete custodial file of the deponent.

b) Certification from defendants – The supplementation, if any, of the custodial file shall be accompanied by a good-faith certification from defendant that they have, in good faith, produced all relevant documents pertaining to that witness to the PSC. That certification shall also be accompanied by a privilege log relating to that witness so that the PSC may review and, if necessary, timely challenge any assertion of privilege relating to the deponent.

c) Redactions and Privilege – With respect to any document withheld or redacted, the producing party shall produce a privilege log at the time of within seven (7) days of producing the custodial file materials.

17. **Personnel Files and compensation history-**

a) The plaintiffs shall be permitted to discover the personnel file of corporate witnesses, including any and all performance reviews and evaluations.  .

b) The plaintiffs shall be permitted to discover information regarding the compensation of witnesses who are employees or former employees of defendants.

13

c) This compensation information shall be limited to salary, bonuses, stock options, deferred compensation, consultancy fees/agreements, and any other performance-based incentives.

d) Information about a witness's compensation shall be limited to periods when the individual has served as an executive for the defendants—that is, as an official with decision-making authority which could affect the defendants' products at issue in this litigation.

e) Witnesses will not be required to submit IRS Authorizations to the plaintiffs.

f) This compensation information may be obtained through the production of the witness's custodial file and/or through questioning during a witness's deposition.

g) The personnel file and compensation information shall be produced to the PSC no less than seven (7) days before any corporate witness deposition.

h) Any testimony elicited or documents obtained by the plaintiffs, which relate to specific employee compensation and/or benefits, shall be deemed "Confidential" such that the testimony or documents are subject to confidentiality procedures.

18. **<u>Image Recorded Depositions</u>** – Any deposition may be videotaped at the request of any party, provided that the deposition notice or subpoena contains or is accompanied by a notice that the deposition will be videotaped and the following conditions are met:

a) Simultaneous Stenographic Recording – All videotaped depositions shall be simultaneously stenographically recorded.

b) Cost of the Deposition – The party requesting videotaping of the deposition shall bear the expense of both the videotaping and the stenographic recording.

c) Access to Copies – Subject to any restrictions contained within the Protective Order entered in this litigation, any party may at its own expense obtain a copy of the videotape

and the stenographic transcript by contacting counsel that noticed the deposition or the Court reporter.

d)  Videotape Operator – The operator(s) of the videotape recording equipment shall be subject to the applicable provisions of Fed. R. Civ. P. 28 and similar state Court rules.

e)  Swearing the Witness – At the commencement of the deposition the operator(s) shall swear or affirm to record the proceedings fairly and accurately. The operator shall produce both video and DVD formats of each deposition.

f)  Standards – Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to portray

g)  Exhibits and materials used during the deposition. Sound levels will be altered only as necessary to record satisfactorily the voices of counsel and the deponent.

h)  Filing – After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a stenographic Court reporter, and file a true copy of the videotape, the transcript, and certificate with Liaison Counsel for whomever noticed the deposition.

i)  Technical Data – Technical data such as recording speeds and other information needed to replay or copy the tape shall be included on copies of the videotaped deposition.

19.  **<u>Correction and Signing Depositions</u>** – Unless waived by the deponent, the transcript of a deposition shall be submitted to the deponent for correction and signature within thirty (30)

days after the end of the deposition. The deposition may be signed by the deponent before any notary within thirty (30) days after the transcript is submitted to the deponent. If no corrections are made during this time, the transcript will be presumed accurate.

20. **Coordination with State Court Actions/Cross-Noticing of Depositions**

a) Cross-Notices – Any witness' deposition in this litigation subject to this Order may be cross-noticed by any party in any Talc-related action pending in state Court. There should be full participation by all jurisdictions in every deposition.

b) If a state Court deposition has been cross-noticed in this MDL and state Court plaintiffs wish to take a subsequent deposition of that witness, the state Court plaintiffs shall raise that matter with the state Court judge who is presiding over the state Court litigation.

c) Coordination of Depositions – Plaintiffs' counsel from all jurisdictions shall coordinate the scheduling of depositions and the duties for examination of the deponent. In the interest of efficiency, the fewest number of attorneys possible should be used at each deposition. Under no circumstance shall more than two plaintiffs' attorneys for each jurisdiction question a witness.

21. **Use of Depositions** – Depositions conducted in this MDL may be used in related cases in any state Court to the extent permitted by that state's laws and rules. Depositions may, under the conditions prescribed in Fed. R. Civ. P. 32(a)(1)-(4) or as otherwise permitted by the Federal Rules of Evidence, be used by or against any party (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court as part of this litigation):

a) who is a party to this litigation;

b) who was present or represented at the deposition;

c) who was served with prior notice of the deposition or otherwise had reasonable notice thereof; or

d) who, within thirty (30) calendar days after the transcription of the deposition (or, if later, within sixty (60) calendar days after becoming a party in this Court in any action that is a part of this MDL proceeding), fails to show just cause why such deposition should not be useable against such party.

22. **<u>Timing of Trial Preservation Deposition After Discovery Depositions</u>** – To the extent defendants wish to conduct a "preservation" deposition for trial of a current or former employee or a consultant, the PSC shall be afforded at least thirty (30) days' notice of the intent to take the preservation deposition and an opportunity to take a discovery deposition of that witness. In the event the PSC chooses to take a discovery deposition of the witness, the preservation deposition to be taken by defendants shall not commence any sooner than seventy-two (72) hours after the completion of the discovery deposition.

23. **<u>Supplemental Depositions</u>** – The initial noticed deposition shall be presumed to be the complete deposition for discovery purposes barring exceptional circumstances. In the event a party seeks to re-depose a fact witness, the parties shall meet and confer regarding the request for a second deposition. If the parties are unable to reach an agreement, the party requesting the deposition may move the Court for an order permitting the deposition. The parties shall attempt to address disputes related to depositions by presenting a letter brief on the issue in the first instance to Special Master Pisano, unless the timing of a forthcoming deposition or other event does not permit.

24. **<u>Early Depositions</u>** – If the parties become aware of persons who possess relevant information but who by reason of age or ill health may become unavailable for deposition, the deposition may be taken as soon as practicable.

25. **<u>Court Reporting</u>**

a) Unless otherwise agreed to by the parties, Golkow Technologies will be used for Court reporter and videographer services at depositions in the MDL proceedings.

b) Golkow Technologies may also provide additional services to aid in the scheduling of and payment related to depositions on a case-by-case basis as agreed to in advance by the parties.

SO ORDERED this _____ day of _____, 2018.

BY THE COURT,