# Exhibit 5



**Montgomery**
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

**Atlanta**
4200 Northside Parkway
Building One, Suite 100
Atlanta, GA 30327

(800) 898-2034

BeasleyAllen.com

**P. Leigh O'Dell**
leigh.odell@beasleyallen.com

January 30, 2018

**VIA Electronic Mail**
Honorable Joel A. Pisano (Ret.)
Walsh Pizzi O'Reilly Falanga, LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, NJ 07102

  Re: *In Re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*
     **MDL No. 2738**

Dear Judge Pisano:

  Ms. Sharko's letter of January 23, 2018 offering **one** 30(b)(6) deposition to address all of PSC's needs for deposition testimony is unhelpful and an example of the Johnson & Johnson Defendants' effort to thwart and obfuscate the need for relevant discovery in this case.

  As outlined in detail in the PSC's letter of January 5, 2018, the Johnson & Johnson Defendants have produced more than 800,000 pages since the September 7, 2017 status conference, more than 400,000 pages on December 20 and 21, 2017.  These productions have doubled the number of documents produced in any previous state court litigation.  Moreover, and despite prior assurances, a majority of the documents produced were new documents that should have been produced by the Johnson & Johnson Defendants more than a year ago. To further compound the problems, thousands of the documents that were duplicates were produced in a manner that is materially flawed and which will hinder the PSC's review of the materials. On January 5, 2018, Imerys produced more than 75,000 pages.

  Though trials involving defendants' talcum powder products and individual plaintiffs with ovarian cancer have taken place in federal and state court, there have been **only eight depositions** of corporate witnesses taken to date. **All of these depositions were taken prior to the production of more than two-thirds of the documents produced in the MDL or 1,000,000 pages**.  To properly represent the thousands of claimants before the MDL Court, the PSC must be afforded the opportunity to examine relevant witnesses under oath.

  These previously unproduced documents relate to the following topics among others: 1) documents described in the Mehaffey Weber memo; 2) documents produced by both Johnson & Johnson Defendants and Imerys in talcum powder/asbestos/cancer-related cases; 3) documents related to testing protocols and test results (particularly as related to asbestos, arsenic, nickel,

chromium, cobalt and other carcinogens); 4) documents relating to the mines from which material used in Johnson's Baby Powder and Shower to Shower were/are sourced, the mining processes employed, and information about the talc deposits themselves; 5) the methodology used in the medical and scientific community for determining general causation including both analysis of and bias about epidemiologic and other scientific studies; 6) the biologically plausible mechanisms by which Johnson & Johnson's talcum powder products may cause ovarian and other cancers; and 7) the toxicology and pharmacology of the talc used. Plaintiffs need adequate time to review these documents in order to provide necessary data to the experts and to prepare for relevant depositions.

As noted during the January 22 hearing, there is no such thing as pure talc. Test results indicate that Johnson & Johnson's talcum powder products were/are composed of not only talc but also other carcinogens such as asbestos, arsenic, and nickel, among others. Evidence related to the composition of the products will affect the relevant epidemiologic and *in vitro* studies relied on by all experts, including epidemiologists, gynecologic oncologists, toxicologists, cell biologists, and regulatory experts.

In addition to results from internal scientific testing, evidence regarding the procedures used for sampling and the type of testing performed is important to determine if certain test results are valid and representative. Having access to documents related to standard operating procedures is not enough, however. Plaintiffs are entitled to examine relevant witnesses who were involved in the process of sampling and testing to determine how the testing was performed and the defendants' analysis of the results.

Moreover, as the Court has made clear, discovery related to issues of bias and influence of scientific literature and governmental agencies (such as the National Toxicology Program and IARC) are relevant to the *Daubert* process. Documents recently produced add to evidence that defendants actively influenced not only published studies but the reports of governmental and quasi-governmental bodies.

In short, the Court made clear[1] that the scope of discovery in this MDL is broad, encompassing what defendants knew and when they knew it. Plaintiffs should be allowed to depose witnesses relevant to these topic areas and for that reason, Plaintiffs seek the depositions of witnesses whose responsibilities include toxicology, safety surveillance, research, testing, mining, and talc processing.

Against this backdrop and despite the fact that Ms. Sharko on behalf of the Johnson & Johnson Defendants previously <u>agreed</u> to move forward with the depositions of Charles Wajszczuk (Product Safety), Homer Swei (Product Stewardship), Nancy Musco (Product Safety), and Timothy McCarthy (Safety and Toxicology),[2] Johnson & Johnson Defendants have now backtracked and asserted that a single 30(b)(6) deposition is sufficient.

Imerys objects to any and all depositions.

---

[1] Status Conference, Tr. 4-14 (Sept. 6, 2017).
[2] Hearing before Special Master Pisano, Tr. 57 (Oct. 4, 2017).

Honorable Joel A. Pisano (Ret.)
January 30, 2018
Page 3 of 3

      To prevent Plaintiffs from deposing relevant witnesses prior to the disclosure of expert reports would be tantamount to requiring defendants in a bellwether case to produce case-specific expert reports on the basis of medical records alone without the opportunity to depose the plaintiff or her treating physicians. The Federal Rules of Civil Procedure do not contemplate such a course of action.

      As stated during the September 6, 2017 status conference, the PSC's letter of November 6, 2017, during the December 7, 2017 status conference, in recent correspondence to Your Honor, and again during the January 22, 2018 hearing, the PSC respectfully requests adequate time to review the recently produced documents and to depose relevant witnesses prior to the disclosure of expert reports.

      Thank you for your consideration of these matters.

Very truly yours,

*/s/ P. Leigh O'Dell*

P. Leigh O'Dell
Michelle A. Parfitt

cc: Honorable Freda L. Wolfson, U.S.D.J.
Honorable Lois H. Goodman, U.S.M.J.
Susan Sharko, Esq. (via e-mail)
Julie Tersigni, Esq. (via e-mail)
Patrick L. Oot, Esq. (via e-mail)
Lorna Dotro, Esq. (via e-mail)
Mark Silver, Esq. (via e-mail)
Nancy Erfle, Esq. (via e-mail)
Tom Locke, Esq. (via e-mail)
Sheryl Axelrod, Esq. (via e-mail)
Chris Placitella, Esq. (via e-mail)
Warren Burns, Esq. (via e-mail)
Richard Golomb, Esq. (via e-mail)
Richard Meadow, Esq. (via e-mail)
Hunter Shkolnik, Esq. (via e-mail)
Christopher V. Tisi, Esq. (via e-mail)
Larry Berman, Esq. (via e-mail)
Dan Lapinski, Esq. (via e-mail)