Exhibit 6

```
                                                    Page 1

 1           UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF NEW JERSEY

 3         CIVIL ACTION NO. 16-MD-2738 (FLW)(LHG)

 4

 5   IN RE: JOHNSON & JOHNSON       HEARING BEFORE

     POWDER PRODUCTS MARKETING,     SPECIAL MASTER

 6   SALES PRACTICES AND PRODUCTS

     LIABILITY LITIGATION

 7   -------------------------

 8

 9        MONDAY, JANUARY 22, 2018

10        NEWARK, NEW JERSEY

11            1 p.m.

12

13    B E F O R E:   HON. JOEL A. PISANO, (Retired)

14

15   A P P E A R A N C E S:

16

17   BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.

18        BY:  P. LEIGH O'DELL, ESQ.

19            -and-

20   ASHCRAFT & GEREL, LLP

21        BY:  MICHELLE A. PARFITT, ESQ.

22            CHRIS TISI, ESQ.

23            -and-

24   COHEN, PLACITELLA & ROTH, P.C.

25        BY:  CHRISTOPHER M. PLACITELLA, ESQ.
```

Page 2

```
 1       -and-
 2 THE LANIER LAW FIRM
 3    BY:  RICHARD D. MEADOW, ESQ.
 4       -and-
 5 GOLOMB & HONK, P.C.
 6    BY:  RICHARD M. GOLOMB, ESQ.
 7 -and-
 8 WILENTZ GOLDMAN & SPITZER, P.A.
 9    BY:  DANIEL R. LAPINSKI, ESQ.
10 -and-
11 NAPOLI SHKOLNIK.
12    BY:  W. STEVEN BERMAN, ESQ.
13 -and-
14 eDISCOVERY CoCounsel, PLLC
15    BY:  CHAD S. ROBERTS, ESQ.
16 LUNDY LUNDY SOILEAU & SOUTH, LLP
17    BY:  KRISTIE M. HIGHTOWER, ESQ.
18 -and-
19 BURNS CHAREST, LLP
20    BY:  WARREN T. BURNS, ESQ.
21 On behalf of the Plaintiffs Steering Committee
22
23
24
25
```

Page 3

```
 1 A P P E A R A N C E S  C O N T I N U E D:
 2
 3 LEVIN SEDRAN & BERMAN, ESQS.
 4    BY:  LAURENCE S. BERMAN, ESQ.
 5
 6 GORDON & REES, LLP
 7    BY:  ANN THORNTON FIELD, ESQ.
 8
 9 DRINKER BIDDLE & REATH, LLP
10    BY:  SUSAN M. SHARKO, ESQ.
11       JULIE S. TERSIGNI, ESQ.
12       -and-
13 SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
14    BY:  RICHARD T. BERNARDO, ESQ.
15 On behalf of the Defendant, Johnson & Johnson
16
17
18 COUGHLIN DUFFY, LLP
19 BY:  MARK K. SILVER, ESQ.
20 On behalf of the Defendant,
21 Imerys Talc America, Inc.
22
23
24 A L S O  P R E S E N T:
25 Colleen M. Maker, Esq.
```

Page 4

```
 1       JUDGE PISANO:  I asked for a conference
 2 for a number of reasons, I actually convened the
 3 conference without knowing what the agenda was
 4 going to be, because we haven't been together for
 5 a few months, and I thought it would make sense
 6 for us to maintain contact with one another.
 7       And by the way, without saying anything
 8 formal about it, I recognize that it's a hassle
 9 for all of you folks to get here in such numbers.
10 Feel free in the future, if we have these
11 conferences, if you want to designate a
12 representative to come.  I'm just saying you're
13 not compelled to bring the traveling squads.  You
14 know, it's not the Texas-Oklahoma game.  So if
15 you want to send representatives and make it
16 easier to travel, it's okay with me.  But you're
17 all obviously welcome, and I'm happy to have you.
18       So anyway, I thought it would make
19 sense for us to come together generally, and here
20 we are.  And then I started getting letters
21 because I asked you to tell me what we're going
22 to talk about, and now I see we have somewhat of
23 an agenda.  So I have outlined what appears to me
24 to be, generally speaking, three main areas for
25 us to discuss today, and there are some
```

Page 5

```
 1 subsections to each one.  If there's anything
 2 else, let me know and we'll put it in and we'll
 3 discuss it.
 4       But the three general areas that I see
 5 here that we need to discuss is getting moving on
 6 the general causation issue, which goes back to
 7 the very beginning of the case, and I need to
 8 know what has been accomplished in that regard,
 9 and we'll get to that in a minute.
10       The second general area is other fact
11 discovery, and that embraces a lot of what's in
12 these letters.  It embraces the plaintiff's
13 complaint about the recent, as they characterize
14 it, the recent document dump that they received
15 toward the end of the year.  It also embraces the
16 list of deponents that the plaintiff's counsel
17 have sent along with the concomitant objections
18 that I've received from the defense.  And then
19 there's also the need to discuss a deposition
20 protocol.  And the part of this that I think
21 really needs to be fleshed out, in my mind, if
22 I'm going to decide these issues sensibly, is
23 whether or not that other fact discovery, broad
24 concept, relates to, does it relate at all or how
25 does it relate to the general causation expert
```

Page 6

1 situation, okay.  So that we're going to talk
2 about.
3        And then the last general area is the
4 testing protocol, testing the substance, testing
5 the quantity of talc that is somehow being
6 safeguarded in the Smithsonian, or some other
7 place.
8        So those are my three general topics.
9 If there's anything else, please tell me what
10 they are, either now or as we get through this.
11 And off we go.  Okay?
12        MS. O'DELL:  Very good, Judge.  The
13 only thing we would add is we wanted to raise
14 some issues to begin to set the stage for
15 privilege log, privilege log objections, and so
16 we had added that to our letter.  But it's
17 certainly, Your Honor, the other items --
18        JUDGE PISANO:  Which letter?
19        MS. PARFITT:  The 15th.  Yes, the 15th.
20 a letter was sent on the privilege log on
21 Saturday.
22        JUDGE PISANO:  If they sent you a
23 letter on Saturday, I haven't seen it if they
24 sent it to me.
25        The last correspondence I have from

Page 7

1 anybody is the 19th.  It's only a sentence.
2 You're raising the issues of a privilege log?
3        MS. O'DELL:  Yes.
4        JUDGE PISANO:  Okay, fine.
5        MS. O'DELL:  I really would just like
6 to lay down some ground rules today about how to
7 raise those issues, Judge.
8        JUDGE PISANO:  Okay.  Well, then we'll
9 get to that when we get to everything else.
10        All right.  Then let's start with where
11 I think we should start, which is this, it's
12 actually a direction from Judge Wolfson.  As I
13 read the transcripts and as I read her case
14 management orders, it's actually a directive from
15 the Court that this general causation expert
16 discovery be taken expeditiony because she
17 wants to get that issue resolved, however it's to
18 be resolved.
19        And I suppose, to simply summarize the
20 conflict here, according to the plaintiffs, you
21 want to take all this other discovery, including
22 62 depositions from defense witnesses, as I get
23 the argument, before coming forward with experts'
24 reports.  Am I correct about that?
25        MS. O'DELL:  That's part of it, Judge.

Page 8

1        JUDGE PISANO:  Well, what's the other
2 part?
3        MS. O'DELL:  Well, we're not saying we
4 have to take every witness on that list in order
5 to go to expert reports, but we do believe
6 substantial discovery is left to be done on some
7 very important areas that our experts need to
8 have certain data and facts in order to opine
9 about general causation.  I mean -- and I don't
10 want to usurp sort of resetting the table, Judge.
11        JUDGE PISANO:  No, I wanted to hear
12 this.
13        MS. O'DELL:  We can jump in so we can
14 sort of give you our views.
15        JUDGE PISANO:  Yes.
16        MS. O'DELL:  What's essential to our
17 experts offering their opinions is the
18 composition of the product itself.  And let me
19 give you a little bit of background.  There have
20 been trials in St. Louis, the majority of that
21 focus of those trials, as well as a trial in
22 California, which Ms. Parfitt was a part of, is
23 that the product itself was free of asbestos and
24 other contaminants.
25        In the mid '70 Johnson & Johnson told

Page 9

1 physicians and the world that there's no asbestos
2 in their product, and that essentially it is
3 asbestos free.  That's the landscape that was
4 being sort of litigated on primarily in the
5 St. Louis and the early trials.  There's been
6 some reference to asbestos, but it's never been
7 the focus.
8        But when you look now, Your Honor, and
9 we see documents that show test results of
10 carcinogens in addition to talcum powder such as
11 nickel, chromium, cobalt, asbestos.  Our experts
12 need to know what was in the product itself
13 before they finalized their expert opinions.  So
14 the documents that have been produced in those
15 testing results are very important.
16        The formulas that they utilize, not
17 only the contemporary formulas, but formulas that
18 were utilized over the years from the '60s, '70s
19 and '80s when our clients were using the product
20 are very important in order for our experts to
21 arrive at an opinion in the MDL, because the
22 epidemiology that's going to apply will be
23 affected.  The in-vitro studies, the cell biology
24 studies that will be relied on by these experts
25 will be different based on the composition of the

3 (Pages 6 - 9)

1 product. So that would be one thing.
2        JUDGE PISANO: Well, let's go back a
3 step. In September Judge Wolfson ordered that
4 you disclose the identity of your expert
5 witnesses along with a designation of their area
6 of expertise and a brief summary of what you
7 thought they would be saying. Has that been
8 done?
9        MS. PARFITT: Yes.
10       MS. O'DELL: Yes.
11       JUDGE PISANO: How many experts did you
12 put on the list?
13       MS. PARFITT: Thirty-seven.
14       JUDGE PISANO: Have you received that?
15       MS. SHARKO: We have.
16       JUDGE PISANO: Okay. Are any of these
17 experts people who have already testified in
18 other cases?
19       MS. PARFITT: Only two. Dr. Plunkett
20 is a regulatory expert, and Dr. Simitiki
21 (phonetic) is an epidemiologist who's also worked
22 with the World Health Organization. And Dr.
23 Simitiki testified in the California trial,
24 Dr. Plunkett has testified in the St. Louis
25 trial, a couple of St. Louis trials and the

1 California trial. Dr. Plunkett went through a
2 sargon (phonetic) in California and then trial.
3        JUDGE PISANO: So what is it that you
4 need to give them before they can render an
5 opinion on this case?
6        And I want to tell you right now, I'm
7 going to have to disabuse you of the concept that
8 you're going to take 62 depositions before you
9 send experts' reports out, because that's not
10 happening, at least unless somebody up the food
11 chain tells you that it can happen.
12       MS. O'DELL: And Your Honor, we want to
13 be clear --
14       JUDGE PISANO: Looking at it another
15 way, putting it another way, excuse me. Has
16 anybody said that -- and forgive me for using the
17 word "trace," because I don't know if I'm right,
18 wrong or indifferent -- but has anybody said
19 generally that trace amounts of asbestos, nickel,
20 chromium, whatever else you seem to think might
21 be in this sample, can cause ovarian cancer?
22       MS. O'DELL: Yes.
23       MS. PARFITT: Yes.
24       JUDGE PISANO: Which of these experts
25 has said that?

1        MS. O'DELL: Well, it's in the
2 literature, Your Honor.
3        JUDGE PISANO: Interestingly enough, I
4 was home the other day, and in my local newspaper
5 there was an article about asbestos in talc. I
6 don't know if anybody else saw that. It was from
7 some organization, I forget the name of it. But
8 the concept was that this group was exploring
9 whether the presence of asbestos in talc could
10 cause lung cancer in everybody who's used talcum
11 powder for their entire lives. So it doesn't
12 relate to this case, but it's out there.
13       MS. O'DELL: Well, in terms of
14 epidemiology, and you hit on the point, Your
15 Honor, there is epidemiology that relates to
16 talcum powder products that experts have been
17 opining on, and certainly that is part of the
18 scope of what our experts would be opining on.
19       But there's also a need to establish
20 the composition of the product to understand what
21 other epidemiology will apply. For example, we
22 believe that we can show consistently over the
23 years that the product contained multiple
24 carcinogens, asbestos you named, but there are
25 others, and I mentioned them, nickel and

1 chromium, I won't belabor that point. But there
2 is epidemiology that shows that nickel increases
3 the risk of ovarian cancer. There certainly is
4 asbestos-related epidemiology that discusses
5 increased risk of ovarian cancer.
6        All of that is very important, but we
7 have to lay a foundational background, facts for
8 our experts to base their opinions on. And the
9 composition of products is very important. And
10 we'll only be able to do that through the
11 documents that have just been produced, and we're
12 going need time to go through those, and through
13 depositions of certain deponents.
14       Do we need all 62? We're not saying we
15 do, but we believe what we were doing is making a
16 list of the deponents we felt we would need in
17 the litigation. Certainly some of those would be
18 essential, some of them we can stage, and we're
19 open to doing that.
20       The other type of evidence that's very
21 important is the type of testing that Johnson &
22 Johnson and Imerys did on the product, whether it
23 was from the mine, whether it was in the
24 processing and production process. That testing
25 and the type of testing they did, the protocols

Page 14

1 they employed in comparison to other standards
2 within the industry, specifically U.S. Pharmacia,
3 is very important to our case. What was the
4 testing they used, was it sensitive enough to
5 determine if these other constituents were in the
6 product, and was the standard or upper limit of
7 normal that they used appropriate for the product
8 itself in order to understand whether those
9 carcinogens were in the product.
10      A third area, how they sampled the
11 product. In other words, how they sampled it at
12 the mine, how they sampled it in the processing
13 plant. How was it done, how often was it done,
14 was it representative of the actual composition
15 of the product. That's very important. We
16 believe that the sampling protocols outlined, we
17 need to know were they followed, and what they
18 were.
19      Lastly, Judge, and this is something
20 that Judge Wolfson discussed in the September
21 status conference, if I'm not mistaken it was on
22 like Page 4 or 5, and she talked about something
23 that was very much a part of the general
24 causation discovery process that we can engage in
25 related to influence and bias of the published

Page 15

1 literature. And so as we go down our particular.
2      MS. THORNTON FIELD: I'm having a hard
3 time hearing. In particular the whole time, but
4 the last few minutes. The fourth issue I missed.
5      MS. O'DELL: It is influence and bias
6 of the published literature. And in regard to
7 the influence and bias of the published
8 literature, one of the things that Judge Wolfson
9 described was our ability to discover how the
10 defendants were influencing what was published.
11      Specifically if you look at our list of
12 deponents, and there are a number of them, I'll
13 just give you a couple of examples. Under the
14 list of witnesses for personal care products
15 counsel, there are several witnesses that were
16 involved in the writing and publication of the
17 cosmetic ingredient review. As a document
18 that was published, it was relied on by the FDA
19 and others, and we want to depose those witnesses
20 on the influence the industry had on that
21 process.
22      You look at the third parties, and
23 there's a gentleman named Dr. Muscat and
24 Dr. Huncharek. And you will see the usual thing,
25 and that is the listing of a law firm Crowell &

Page 16

1 Moring. And Johnson & Johnson hired Crowell &
2 Moring to conduct a study that was published
3 under the authors Huncharek and Muscat, and the
4 law firm not only commissioned the study, but
5 paid for it. We want to discover that.
6      And so those are the areas that we
7 believe there is significant evidence within the
8 documents that have been produced very recently,
9 we can into that further, but also these
10 deponents we've listed go to those areas, and are
11 very critical to the complete production of our
12 expert reports.
13      JUDGE PISANO: Well, if you had, if you
14 were to write the case management order, okay, if
15 you were to write the case management order, when
16 would your expert reports be due?
17      MS. O'DELL: Your Honor, it would be
18 sometime in, I think conservatively in September
19 or October of this year. We need to get through
20 depositions, we need to get through documents, we
21 need to be able to take a certain number of
22 depositions.
23      And believe you me, we have no desire
24 to take a deposition we don't need, so we have
25 staged some of these witnesses sort of

Page 17

1 internally. If there's certain areas recovered,
2 we don't need to take another deposition we want.
3 But I think conservatively, and my colleagues may
4 kick me, but September or October of this year we
5 could disclose reports and be in a position where
6 we have all the necessary facts and data for them
7 to rely on.
8      MS. PARFITT: And I would presume, I
9 mean, starting the deposition process. We're
10 not -- I know it's been suggested in the papers
11 that the plaintiffs are delaying getting any
12 deposition taken. That's not the case at all.
13      I think Ms. O'Dell has laid out well
14 what the areas are that we're interested in.
15 These are areas that have not previously been
16 discovered in an adequate way. They're critical
17 to the opinions of these experts, at least some
18 of them, but that process will start right away.
19      We're not suggesting that this
20 deposition process be delayed. It is a staging,
21 but I think we've given good thought to an
22 orderly presentation of what those depositions
23 would be, and who those deponents would be.
24      JUDGE PISANO: Well, my recollection is
25 that the introduction of asbestos to this case

Page 18

1 was fairly recent.
2      MS. PARFITT:  That's correct.
3      JUDGE PISANO:  That is to say it was
4 not contemplated by the complaint, and it wasn't
5 the focus of the case.
6      MS. PARFITT:  Well, I wouldn't say not
7 contemplated, but we've always talked about
8 talcum powder products, whatever that meant.  I
9 think what has become more clear to us is what
10 talcum powder products, the representations of
11 the company, J&J in particular, their product was
12 pure.  We know that not to be the case, we don't
13 believe that to be the case.  But of course it's
14 our burden to demonstrate that.
15      JUDGE PISANO:  Well, taken to the next
16 step, if the introduction of asbestos was
17 relatively recent.  What do we have to say about
18 chromium and nickel and all this other stuff?
19      MS. PARFITT:  It's somewhat, it's in
20 the same categories, so to speak.  Those are
21 proven carcinogens as well.  The testing will
22 help sort out, you know, how much and if those
23 things are part of a talcum powder product.
24      JUDGE PISANO:  So let's move to this
25 testing.

Page 19

1      MS. PARFITT:  Sure.
2      JUDGE PISANO:  The quantity of talc
3 that you have that is going to be the subject of
4 testing, and I know there's competing, there are
5 competing interests to the quantity.  There are
6 cases other than this MDL that also want a chance
7 to analyze the substance; right?
8      MS. O'DELL:  Yes, sir.
9      JUDGE PISANO:  What are we going to do
10 about that, number one, how are we going do the
11 testing?
12      And, secondly, are we comfortable and
13 confident that whatever it is we're testing is
14 the same as what went into the talcum powder
15 products that were used over the decades?
16      MS. SHARKO:  So answering those
17 questions in reverse order, I don't think we can
18 be confident that testing of these samples will
19 show necessarily what was in the product back in
20 the day because chain of custody is going to be
21 difficult or impossible to establish.
22      In terms of dividing up what's there,
23 we've now agreed on that, and I understand that
24 the protocol order will be presented to the court
25 this week, which will cover not only the MDL, but

Page 20

1 the plaintiffs I understand, have done a lot of
2 work in getting the state court ovarian
3 litigants, and probably more importantly, the
4 state court asbestos litigants signed off on it.
5 So once that protocol is entered, there's a
6 process for sending out portions of samples, and
7 then each side is going to --
8      JUDGE PISANO:  Give me an idea of how
9 you're going to do this.  How is this going to
10 work.  Yes, sir.
11      MR. BERMAN:  I negotiated with
12 Mr. Bernardo for the sample protocol.  The way
13 it's going to work is that J&J and Imerys have
14 accumulated a number of samples that I think are
15 at Drinker Biddle and at Imerys' office.  All of
16 those samples are going to be forwarded to an
17 independent lab in New Jersey.
18      After that, the plaintiffs are sending
19 a representative attorney and an industrial
20 hygienist, as are the defendants.  The samples
21 are going to be split at this place, and each
22 side is going to take their respective shares,
23 half the samples, back to their labs.  Then we
24 can do our own independent testing from there.
25      But it's going to be, I guess, a

Page 21

1 two-step process, three-step process.  All the
2 samples are going to arrive at this independent
3 lab, then we're going to go there, and it's going
4 to be cataloged and distributed so everybody
5 knows.
6      JUDGE PISANO:  And how long is it going
7 to take?
8      MR. BERMAN:  Well, the list of samples
9 is extensive that they've given us, it's on an
10 Excel spreadsheet.  So we're going to go through
11 those and we're going to pick the ones we want to
12 sample initially.  Then after that, you know, we
13 may test some in the future, but after the order
14 is entered we have 30 days to let them know which
15 samples we're going to test.  And after that if
16 we need more, we communicate with each other.
17      JUDGE PISANO:  And once you decide what
18 you're going test, how long does it take to test
19 the samples and then get a report?
20      MR. BERMAN:  Well, each, it takes a
21 while.  So a week or two per sample, probably.
22      JUDGE PISANO:  And this is going to
23 tell you what the sample consists of?
24      MR. BERMAN:  Yes, correct, and what
25 carcinogens are in there.

6 (Pages 18 - 21)

Page 22

1    MS. O'DELL:  And there's two lines of
2  evidence, too, Judge, so we're not sort of mixing
3  things up.  There's the testing of the samples
4  that are currently being discussed, you know, the
5  physical samples, and then there's previous
6  testing that was performed by both Imerys and J&J
7  that is recorded in the documents themselves.
8    JUDGE PISANO:  Yes.
9    MS. O'DELL:  And some of which is new,
10 having just been produced, and so we're trying to
11 work our way through that.
12    JUDGE PISANO:  Well, I think there's a
13 debate on how much of it is new.  I mean, reading
14 these letters it seems to me that the defense
15 would argue that there's nothing new under the
16 sun, that these documents that they've given over
17 to you are, you've already gotten -- well, there
18 are some that are new, but the lion's share of
19 them are not new.
20    MS. O'DELL:  We take a different
21 position.
22    JUDGE PISANO:  Be that as it may.
23    All right.  Let me ask you this,
24 Ms. Sharko.  If you were going to write the case
25 management order, what would it say?

Page 23

1    MS. SHARKO:  It would say that the
2  plaintiffs' expert reports are due in March and
3  that ours are due in May, and we should go
4  forward forthwith and get general causation
5  resolved.
6    I have to say this sort of feels like
7  we're down at the boardwalk and we're playing
8  Whack-A-Mole.  I've never heard nickel, chromium,
9  cobalt.  Those words aren't in the master
10 complaint.  Asbestos isn't really in there, but
11 the plaintiffs have said, more or less, within a
12 month or two of the MDL starting that they think
13 our product contains asbestos, which we deny, and
14 they're thinking of pursuing an asbestos theory.
15    Testing these samples is not going to
16 help us on general causation.  Deposing company
17 witnesses is not going to help us on general
18 causation.  Experts rely on data and the
19 scientific literature, and that's all out there.
20 It is what it is, and they should do their
21 reports.
22    MR. BERMAN:  Judge?
23    JUDGE PISANO:  Yes, sir.
24    MR. BERMAN:  Going back to the
25 asbestos, I brought up in the first meeting that

Page 24

1  we had with the MDL with Judge Wolfson, so it's
2  been out there for a little bit now.
3    But let me give you a little background
4  on why we need all that testing.  In 1973 the FDA
5  promulgated a rule that required the talc
6  companies to test their own products, and they
7  had to assure them that it was 99.9 asbestos
8  free.  They fought that rule and they won, and
9  the FDA allowed them to self-regulate.
10    So they started testing the asbestos,
11 and they kept on raising the limit so they
12 couldn't detect any.  And three years later they
13 stopped testing for chrysotile, which we're
14 finding in the samples now.  So they testing
15 around finding asbestos there, and we believe
16 that once we obtain these samples, we'll be able
17 to show there's been consistent chrysotile ever
18 since they started testing, and the labs that
19 they used kept on raising the limits so they
20 wouldn't find it.
21    So we need all the samples, we need the
22 deposition of whoever collected them, where they
23 got them, we need to prove the chain of custody
24 as well.
25    I don't understand, you know,

Page 25

1  especially the museum pieces, how there's not a
2  chain of custody.  This is from this year, this
3  is where we got it, and this is what we have.
4  And there's some of them in the original
5  containers, so we think we'll be able to
6  establish chain of custody through depositions
7  and the testing, matching it up through with the
8  formulas.
9    JUDGE PISANO:  It would be helpful for
10 me to have this list of your expert witnesses.
11    MS. PARFITT:  I have an extra.
12    JUDGE PISANO:  I'm not going to make
13 sense of it as I sit here, but I'm going to need
14 that in order to generate some sort of decision
15 on all this.
16    MS. O'DELL:  And, Your Honor, just to
17 try to put it in context --
18    JUDGE PISANO:  So wait, forgive me.
19 You guys are down deeper on this than I am.
20    Your position, Ms. Sharko, is that all
21 of this stuff that they're now asking for, all of
22 this stuff, the depositions, the records, the
23 testing of the sample, all of this stuff is
24 immaterial to the question of general causation,
25 that their experts should rely upon whatever the

7 (Pages 22 - 25)

Page 26

1 literature is in the science, irrespective of
2 what your witnesses might or might not know based
3 on the identity that they've given?
4        MS. SHARKO:  Almost.  They have, I am
5 certain, documents which show the formula for the
6 product.  They have, and they have had documents
7 related to testing.  Because, after all, the
8 company puts the product out on the market, they
9 test it before it goes out.
10        JUDGE PISANO:  Right.
11        MS. SHARKO:  Or the mines test, or
12 whoever tests it, but they have those documents.
13 So I submit they have what they need to do expert
14 reports.  Depositions aren't going to change
15 that.
16        MS. O'DELL:  Your Honor, let me just
17 say a couple things.  One, with regard to the
18 formula, so the record will be clear, there was a
19 recent production I've seen of the contemporary
20 formula.  Historical formulas, which we think are
21 key, have not been produced.  And so I just
22 wanted to say that very clearly.  Because we have
23 clients that have used, you know, talcum powder
24 back to the '60s, maybe some to the '50s, so '60s
25 forward.  So we need those formulas.

Page 27

1        JUDGE PISANO:  Well, the formula, if
2 you read the label, it says talcum powder and
3 fragrance.
4        MS. O'DELL:  Well, I'll pull up --
5        JUDGE PISANO:  Right, isn't that
6 basically what it says?  And that's what it says
7 if it's Gold Bond or if it's some generic Rite
8 Aid brand or anything.
9        MS. O'DELL:  It's very interesting.
10        MS. SHARKO:  I think that's right.  If
11 Ms. O'Dell feels there's some documents related
12 to that that she's missing, she should let me
13 know.
14        MS. O'DELL:  And I think we have let,
15 maybe not you know directly, Susan, but
16 cocounsel.  Let me just, I'll pull up the
17 formulas.
18        I'll pull up the formula, Your Honor,
19 it will take me just a minute, and you'll see
20 that it's much more than talc plus fragrance.
21 It's got like 36 --
22        MS. SHARKO:  Wait, wait.  Before we go
23 forward, I suspect this is something that's
24 protected and we're on the record.  And so if
25 you're going to be quoting from a document which

Page 28

1 is protected, and I think the company would feel
2 pretty strongly about the recipe or formula or
3 whatever, then I think it shouldn't be on the
4 record.
5        JUDGE PISANO:  Well, the formula should
6 be on the label.  That's what it has to be;
7 right?
8        MS. O'DELL:  It is not, Your Honor.
9        JUDGE PISANO:  Or the contents should
10 be on the label.
11        MS. O'DELL:  It is not.
12        MS. PARFITT:  No, it's not.
13        JUDGE PISANO:  So your point is that
14 the word "talc" means more than just talc?
15        MS. O'DELL:  Yes, because talc is not
16 just pure talc.  Talc is as mined from the earth
17 and processed and put in baby powder bottles
18 contains a number of constituents.  Talc, all
19 these other things we talked about.  Your Honor,
20 what our theory has always been the product
21 itself causes ovarian cancer.  And what's within
22 that bottle is the product, and it is many
23 things.  And I've listed some for you, nickel,
24 chromium and other things.  Silica, quartz are
25 part of that product, as well as fragrance.

Page 29

1        And give me just a minute, because I
2 didn't have that at my fingertips.  If Ms. Sharko
3 feels uncomfortable with me listing the products,
4 I'll show you the formula that's been produced,
5 and you'll see it's got like at least 40
6 components.
7        So Your Honor, when Ms. Sharko says the
8 data is known in the scientific literature.  That
9 is not true.  I mean, as this litigation has gone
10 forward in the MDL, and I'll speak to --
11 Mr. Placitella brought this to my attention --
12 just over time he'd say, Have you guys ever seen,
13 you know, this document or that document?  And
14 what we realized is there was a whole set of
15 production for both Imerys and Johnson & Johnson
16 that related to supposedly the asbestos
17 litigation.
18        We believe those materials should have
19 been produced in this cancer litigation from the
20 beginning.  In J&J's papers they say there's
21 40,000 of those documents, 35 they think are
22 duplicates.  Let's just assume that's right.  If
23 5,000 new documents have never been produced in
24 this MDL, and they clearly are, you know,
25 relevant to the core issues, and issues that have

8 (Pages 26 - 29)

Page 30

1 been core to this case, you know, for months and
2 months.
3          And one of which I've got in front of
4 me was produced in October, just in October in
5 this litigation, it's been in the asbestos
6 litigation previously, and it talks in terms of
7 the total tremolite, which is a type of asbestos
8 content.
9          MS. SHARKO:  Is this a protected
10 document?  Because if it is it shouldn't be read
11 into the record.  I don't care if you show it to
12 the judge, as long as I get a copy.
13          MS. O'DELL:  Well, I'm happy to show it
14 to you and the judge.  But, Judge, I will say the
15 document is a test result that shows a percentage
16 of tremolite in the products itself, and that is,
17 that data is not anywhere but the internal
18 documents.  And we feel like it is essential that
19 our experts have the benefit of that before they
20 opine.  And that's the course of experts.
21          And you'll see our list, but you'll see
22 that there are toxicologists, there are
23 epidemiologists, there are GYN/oncologists, there
24 are people that focus on testing, there are
25 geologists and others.  And that type of

Page 31

1 information is not in the public, and it's
2 critical, and that's why we need time to digest
3 that, depose certain critical witnesses on it and
4 then we can produce our expert reports.
5          MR. SILVER:  Judge, can I be heard?
6          JUDGE PISANO:  Yes.
7          MR. SILVER:  Judge, they know they
8 don't need this stuff, Judge, and the reason they
9 know it is because there's a trial case in June
10 with Mr. Lanier's firm dealing with asbestos
11 where they are ready for trial.  They didn't need
12 any of this stuff to try that case on the exact
13 same issues.  They didn't need 62 depositions,
14 because none of them are going to deal with the
15 scientific literature, and the question is
16 whether they can prove the product, whatever's in
17 it, causes ovarian cancer.  There's not been a
18 scientific challenge yet where they've been able
19 to prove it.  In New Jersey State court they
20 couldn't prove it.  In California they couldn't
21 do it.
22          So they want to avoid getting to
23 science so they can try it where the science
24 standards are different.  But here where we're
25 focusing on science, no deposition of Imerys, any

Page 32

1 witness is going to help them or their scientists
2 establish what they need to establish with regard
3 to general causation.
4          JUDGE PISANO:  The experts who have
5 been identified in the case that you just
6 mentioned, that's going to be tried when, in
7 June?
8          MR. SILVER:  Yes.
9          JUDGE PISANO:  Are those experts on
10 this list, on the list given to you in this case?
11          MS. THORNTON FIELD:  They have not been
12 identified yet, Your Honor.  I think it's
13 February 15.
14          JUDGE PISANO:  And where is that case?
15          MS. THORNTON FIELD:  In Missouri.
16          JUDGE PISANO:  State court in Missouri.
17          MS. THORNTON FIELD:  Yes, June 4th.
18          JUDGE PISANO:  Okay.  Mr. Burns?
19          MR. BURNS:  Judge, I just think it's
20 important to emphasize something here, which is
21 that the defendants like to raise this motto -- I
22 represent over 1,000 women with ovarian cancer.
23 Mark Lanier isn't my cocounsel on a single one of
24 those cases.  This is an MDL which should be
25 treated like an MDL, and which should give fair

Page 33

1 consideration to all of the issues that are very
2 important to my clients.
3          What Mr. Lanier does in St. Louis,
4 given all of the procedural mechanisms and issues
5 there, frankly is not all that relevant to my
6 clients.  My clients deserve a fair day in this
7 court.
8          JUDGE PISANO:  Well, yeah, that's true,
9 that's true.  But we have a plaintiff steering
10 committee here who's doing the work on behalf of
11 everyone, your clients included; right?
12          MR. BURNS:  But not on behalf of the
13 St. Louis trial team, Your Honor.  I mean, we do
14 not control the St. Louis trial team.  We control
15 and work on --
16          JUDGE PISANO:  I understand that.  And
17 I don't think the point that Mr. Silver made is
18 that we are somehow attempting to control or are
19 being controlled by the St. Louis trial team.
20          I think the general point being made,
21 and it's made in these letters, is that the
22 plaintiffs have been trying these cases now for
23 quite some time all over the place and have
24 offered expert testimony.  Why now all of a
25 sudden do we need to, forgive the mixed metaphor,

9 (Pages 30 - 33)

Page 34

1 why now do we have to reinvent the wheel and get
2 new, and get more information to the same or
3 different experts?  And if that's the case, if
4 that's what we have to do, I think it's a fair
5 conclusion that this case will never be ready for
6 trial.
7     MR. TICI:  Well, Judge it isn't really
8 unusual for our plaintiffs in an MDL to try and,
9 to need discovery both in documents and
10 depositions as the foundation for the experts.
11     Let me address the comment of
12 Mr. Silver with a concrete example.  You know
13 we've actually spent the time to do this.  One of
14 the depositions we asked for from Imerys was a
15 gentleman named Ed McCarthy, he's been a
16 scientist there for 30 years.  He has documents
17 where he was actually a participant in the
18 testing of the talc for the constituents in the
19 talc, asbestos, arsenic, and other heavy metals.
20 He was involved in not only testing of it, but he
21 was involved in the actual mining of it, in the
22 drilling of it, and in trying to figure out where
23 in the mines you need to drill to get the purest
24 talc possible.  He was involved in actually
25 providing the information to J&J's own

Page 35

1 toxicologist with whom he communicated about what
2 was in the product and what wasn't in the
3 product.
4     And I want to make it clear that we
5 have two separate sets of samples here.  We have
6 the samples that, in the Smithsonian that
7 Ms. Sharko was talking about, we have a separate
8 set of samples that have been kept with Imerys.
9 And we know exactly what mine it came from, we
10 know exactly what year it came from.  We know
11 exactly, we're able to figure out exactly -- and
12 those are the mines that provided the talc for
13 J&J to use in their products over the years.
14     He was not only involved in as, I
15 understand it, not only involved in providing
16 talc for J&J's product, but, again, if you read
17 the documents, he was aware of the different
18 standards used by J&J and others to test the
19 products for the presence of these carcinogens in
20 other products.  And the reason why that's
21 important for general causation is this:  One of
22 the things that we try to prove in these cases is
23 that there's biologic plausibility for the
24 increased relative risk that's seen consistently
25 across the studies that were done in this case.

Page 36

1 And the presence of these carcinogens in the
2 product provides an explanation as to why these
3 products actually could cause cancer.  Not unlike
4 cigarettes, there are different constituents to
5 the cigarette.  You try the case, do cigarettes
6 cause cancer, but one of the things an expert has
7 to do is say, okay, well, how much of this
8 constituent is in the cigarette is there, how
9 much of that constituent is in the cigarette as
10 part of their proof to convince the judge and
11 ultimately a jury that there's sufficient
12 evidence to prove general causation.  That's what
13 we're trying do here.
14     And a gentleman like Mr. McCarthy would
15 be the kind of person that could provide the
16 information that our experts could rely on,
17 independent of the published medical literature.
18 He could say not only does the published medical
19 literature prove this, but when I look at the
20 testimony of Mr. McCarthy, who's been there for
21 30 years, who's aware of where this product comes
22 from, who's aware of the testing, there's an
23 explanation for why it's not only the talc, but
24 it's all the other things that's involved, you
25 know, that come from these particular mines.

Page 37

1     That's why whether Mr. Silver asks,
2 says, Well, why is this necessary, why are
3 witnesses necessary?  We've got a scientist there
4 for 30 years who's looked at this stiff.  And,
5 you know, parenthetically, the guy's got, the
6 gentleman's got 4,000 documents that were
7 produced by Imerys.  He's a pretty substantial
8 witness.
9     MR. SILVER:  Judge, for the record,
10 he's not a scientist.  If I remember correctly, I
11 believe he's the technical director.  I think he
12 runs essentially supply -- I'm not intending to
13 demean him, but he runs supply and logistics
14 between getting the talc out of the mines to J&J
15 eventually.
16     But none of what Mr. Tici said, he's
17 got our test results.  He's got everything -- I
18 don't stipulate to any of the accuracy of what he
19 says, because I don't know what he's reviewing.
20 But everything he said is what he already had.
21 If he has all that, they can take their shot
22 at general causation, he doesn't need anything
23 else.
24     MR. TICI:  Well, that's like if I were
25 to say to Mr. Silver, You have the medical

10 (Pages 34 - 37)

Page 38

1 records of Mrs. Smith, you don't have to take her
2 deposition. Or her doctor. You have her
3 records. I mean, of course you need to be able
4 to explore what they mean.
5        I mean, I used Mr. McCarthy as an
6 example, but I really came prepared to talk about
7 these witnesses because they are, we didn't do
8 this willy-nilly where we just ran a list of
9 witnesses and we just plucked people out of the
10 sky.
11        MS. PARFITT: And to that end, just as
12 a reminder, there are only, less than four
13 deponents in all of these litigations that
14 counsel is talking about, I think we talked about
15 that last time when you asked how many
16 individuals have been deposed from the company.
17 And for each one, Imerys and J&J, it was under
18 10. And Mr. McCarthy is not one of those
19 individuals who's been deposed in this these
20 other cases.
21        So I think these are issues -- I think
22 that bears stating as well that we're not trying
23 to step back and redo. We are trying, though, to
24 make our case successfully. And I think that's
25 what the Court demands of us, and we do have the

Page 39

1 burden, and we're just trying to satisfy it.
2        MR. PLACITELLA: Your Honor, can I be
3 heard for two minutes?
4        JUDGE PISANO: Yes.
5        MR. PLACITELLA: So in the state court
6 in Atlantic County where the cases were dismissed
7 on motion after a 104 hearing, the argument from
8 Johnson & Johnson was the plaintiff didn't prove
9 bio-plausibility, in addition to other argument.
10 That is now before the Appellate Division, and
11 that has now been stayed and being heard by the
12 New Jersey Supreme Court, I know it because I'm
13 involved in the AMICAS process, okay.
14        What we are focusing on here is to
15 address the deficiencies that they allege.
16 Imagine trying a tobacco case -- and I know we're
17 going back, but imagine trying a tobacco case
18 where the issue of nicotine, tar and all the
19 carcinogens had no place, and the only thing you
20 could talk about was the leaf. Well, Judge, it
21 was just a leaf. You know, if the leaf doesn't
22 cause cancer, there's no literature on the leaf,
23 then where are we going?
24        But the fact of the matter is,
25 bio-plausibility and the ingredients of a product

Page 40

1 matter. This morning I was in the Middlesex
2 County Superior Court. There was a case
3 involving Johnson & Johnson, it was a
4 mesothelioma case. The case focused on whether
5 the asbestos in the Johnson & Johnson product was
6 responsible for this man's mesothelioma from the
7 talcum powder.
8        Johnson & Johnson came in and asked the
9 judge for a continuance, for an emergent appeal
10 because they had a new expert who came in and
11 said despite the fact that the plaintiff's expert
12 looked at the tissue in the lung and saw talc,
13 tremolite and chrysotile, which were the
14 ingredients that their expert was, who tested the
15 Johnson & Johnson products and said he saw
16 asbestos in more than half of those products,
17 Johnson & Johnson said we need an emergent
18 appeal. Why? Because our expert looked at the
19 same thing and we found one, one chrosynolite
20 (ph.) fiber. And if it was one chrosynolite
21 fiber then it wasn't our talc.
22        So for them to say that a little bit
23 doesn't matter, it does to them. They were ready
24 to go to the Appellate Division on emergent
25 appeal this morning on one fiber, not millions of

Page 41

1 fibers, like Dr. Longo will testify to. So it is
2 significance as to what is in these products.
3        From my perspective, let's put it all
4 on the table. You know what, I was preparing for
5 today and I'm looking and I said, there's a
6 document by Imerys talking about asbestos in the
7 Johnson & Johnson product that I couldn't find in
8 the Johnson & Johnson production, even though the
9 Johnson & Johnson executives were copied on the
10 memo.
11        So now we're trying to match up what
12 Imerys did with what Johnson & Johnson did, come
13 up with a universe of evidence, and also have
14 these products tested. So if you're going to say
15 what I would put in a case management order?
16 Let's get all the formulas on the table. Let's
17 get all the testing on the table. Let's take a
18 30(b)(6) deposition of Imerys and Johnson &
19 Johnson as to the person with the most knowledge
20 concerning the formulas, the testing, and the
21 ingredients. We can do that in 60 to 90 days.
22 Then at least we have a base that we can go
23 forward and we're not asking our experts to say,
24 oh, it's just the leaf in the tobacco, that's the
25 only thing you're allowed to look at, when we

11 (Pages 38 - 41)

Page 42

1  know.  We can make a prima facie case to Your
2  Honor now to show that there are carcinogens in
3  this product in addition to the talc itself.
4       Now, from our perspective, yes, the
5  talc is carcinogenic, like the nicotine might be
6  carcinogenic or the tars are carcinogenic.  But
7  the experts have the right, and the Court has the
8  absolute right to know what is in this case.
9  They can't say biological plausibility matters
10 and then say, Well, you can't get the information
11 to figure out biological plausibility.
12       And I apologize for taking the Court's
13 time and I'll sit down.
14       MR. TICI:  Judge, can I address one
15 more thing, because I want to address directly
16 your question as what would be in the order, and
17 why we're asking, as Ms. O'Dell said, why we
18 think we need the time to go through the
19 documents and take the depositions.  And if I
20 could, Judge, I'll give a copy to Ms. Sharko.
21       We pulled -- of the witnesses that were
22 or our list that we provided to the Court in
23 response to its request, we went back and looked
24 at the documents that were produced on each of
25 the witnesses.  Actually, let me give this to

Page 43

1  you.
2       Historically, in July, in June I sent,
3  I understood that the Court -- excuse me, that
4  the judge wanted to have us focus on general
5  causation, so I asked the defense counsel,
6  Ms. Frasier, I asked her, Okay, tell me which of
7  your witnesses have complete custodial files.
8  She gave me a list.  From that list we had
9  complete -- and this is back in June, I asked
10 her, okay, of that list I chose several
11 toxicologists which are clearly scientific
12 witnesses, and I asked for those depositions.
13       Now, those depositions were put off,
14 and the judge said, Well, why don't we wait until
15 the document production is done?  And I listened
16 to what J&J's counsel said, and they said --
17       JUDGE PISANO:  What case are we in now?
18 Are we in this case?
19       MR. TICI:  We are in this case.  The
20 point of this is, Judge --
21       JUDGE PISANO:  Which judge said that?
22       MR. TICI:  Judge Wolfson.  The point
23 here is this:  We were ready to take depositions
24 last year of the toxicologists and people who
25 support the science issues based upon the

Page 44

1  representation that the documents had been
2  completely, had been produced.
3       Now, if you look at the document I just
4  gave you, one of the witnesses who we asked for
5  is another gentleman by the name of, I mean, just
6  by way of example, a gentleman by the name of
7  Mr. McCarthy is the second one at the end.  At
8  the time in July there were 7,000 documents by
9  Dr. McCarthy.  I thought that the custodial was
10 complete and we were ready to take depositions,
11 and we would have done exactly what Ms. Sharko
12 said, get the show on the road on general
13 causation.
14       In September they produced an
15 additional 4,675 documents related to
16 Mr. McCarthy, and two days before Christmas they
17 produced 3,786 documents related to Mr. McCarthy.
18 That's an example.  That happened with witness
19 after witness after witness.
20       We're put in a situation where three
21 weeks ago we were provided with documents related
22 to scientific witnesses that we were prepared to
23 depose last July.  And now we're in a position,
24 we can't even get through the documents they gave
25 us.

Page 45

1       So when Ms. O'Dell says to you, why is
2  it, when you ask what kind of order you have.
3  When Ms. O'Dell says we can start taking Imerys
4  depositions because Imerys' witnesses, they
5  produced their documents in time, we're almost
6  completely through in looking at Imerys'
7  documents.  But we had this huge amount of
8  documents that were produced by J&J, and we need
9  some time to be able to go through them.  We'll
10 stage them.  We want to take the toxicologists,
11 we want to take the medical directors.  We want
12 to take the those people first to support --
13       JUDGE PISANO:  Well, wait a minute.
14 Placitella just stood up and said he wants to
15 read the documents and just take 30(b)(6)
16 depositions.
17       MR. TICI:  Well, that would be the
18 first ones that we would want to do.  But we've
19 made it very clear we want to take the
20 toxicologist, the research director.  They
21 directed different scientific studies.
22       I mean, this gentleman, Mr. McCarthy, I
23 have a summary here of the work product.  I'm
24 perfectly willing to share what he did.  He was
25 involved in directing the science, he was

12 (Pages 42 - 45)

Page 46

1  involved in dealing with the different agencies
2  that were involved in reviewing the science and
3  making recommendations about whether there was of
4  causation or not.  All of these things, Your
5  Honor, are important for our experts to rely on
6  that would be supportive to our positions that
7  talcum powder products, talc itself and the
8  constituents in the products were a cause of
9  ovarian cancer.
10      JUDGE PISANO:  In one of her prior
11  conferences Judge Wolfson made the remark that --
12  and this was addressing the issue of whether
13  experts on causation ought to be put aside until
14  all of the fact discovery was concluded, and she
15  made the comment that, you know, what you
16  discover from the defendants' documents might be
17  good for you to have when it comes time of trial
18  and you can stand up and say, Ah-ha, this is what
19  they knew, but how does it relate to whether or
20  not, generally speaking, the product can cause
21  ovarian cancer.  You remember that colloquy?
22      MR. TICI:  I'm glad you asked that
23  question, and I'll give you a perfect example.
24      JUDGE PISANO:  I'm glad I made somebody
25  happy today.

Page 47

1      MR. TICI:  One of the things that the
2  defendants get up at trial and say, you know,
3  it's not possible for talc used peritoneally to
4  end up in the ovaries, it can't travel up the
5  genital tract and get in the ovaries.  It doesn't
6  happen, it's biologically implausible that that's
7  the case.
8      Well, one of the things that we feel
9  like we want to explore with their scientists who
10  actually studied this issue is whether or not
11  they believe that's true or not.  That's just to
12  give you an example of the kind of thing which
13  would be important, because one of our experts
14  would say, you know, not only does the scientific
15  literature support it, but that's an admission by
16  defendants, or the defendants support that.
17      JUDGE PISANO:  Okay.  All right.  Let's
18  get to this issue of whether you need, how much
19  time you need to review the documents that were
20  recently served upon you.  I won't use the
21  pejorative description that you do in your
22  papers.  What about all this?  What was done
23  here?  Why were thousands, hundreds of thousands
24  of documents not turned over until December of
25  2017?

Page 48

1      MS. SHARKO:  So needless to say, I
2  disagree with the spin that all, everybody who
3  has spoken, and I gather I don't need to respond
4  to it at this time.
5      In terms of the document production, my
6  colleague Mr. Bernardo can speak to it.  We
7  agreed on a schedule for production.  It ended on
8  December 21st.  Everybody agreed to that, that
9  was known in advance.  Actually, the plaintiffs
10  didn't agree to it, they objected and then the
11  judge gave us the extension.
12      Mr. Bernardo, can you speak to why
13  plaintiffs' version is not accurate?
14      JUDGE PISANO:  I'd like to know what
15  happened, why were these documentation turned
16  over in such volume so late.  And then there's a
17  demand in the plaintiff's papers that J&J do
18  something to de-duplicate the documents.  Part of
19  the beef, so it goes, is that even if the
20  documents had already been turned over to them,
21  they now have new Bates stamp numbers, and,
22  therefore, how do we know whether we've got them
23  or not.  And they're insisting upon some
24  de-duplication process which you say you
25  shouldn't have to do.

Page 49

1      And then there is a statement that
2  you've attempted to resolve the issue by
3  proposing some sort of mechanism to distinguish
4  between new stuff and old stuff.  So tell me
5  about that, Mr. Bernardo.
6      MR. BERNARDO:  Sure.  With respect to
7  the timing, Your Honor, first of all, if you go
8  back and look at our position early on, which was
9  that for the most part plaintiffs had the
10  documents that were out there.  Maybe there were
11  some that we would go back and try and identify,
12  but there was production that had already been
13  made.
14      There were significant disputes back
15  and forth over this Mahaffey Weber memo that I'm
16  sure Your Honor remembers.
17      JUDGE PISANO:  Yes.
18      MR. BERNARDO:  And we just made the
19  decision, rather than dispute that further, we
20  would go back, and I think Ms. Sharko explained
21  it, we would redo some of the sources.  There's
22  no way 20 years later to try to match up what may
23  have been collected 20 years ago because
24  materials move in warehouses, get stored in
25  different ways.  We thought, you know what, we'll

13 (Pages 46 - 49)

Page 50

1 go back and make the best efforts to try and
2 identify whatever was within the scope of that.
3 If we find some new material there, first of all,
4 you won't be able to tell it unless you go back
5 and do a page-by-page check, we'll produce that.
6        That was a very, very time-consuming
7 process, because it involved going back to
8 warehouses, pulling back boxes, trying to put
9 things together.  So that was one of the pieces
10 that caused it to take the time it did.  And
11 frankly, I think it was done in fairly
12 accelerated time under the circumstances.
13        Another piece was in September Judge
14 Wolfson agreed that the scope of the discovery
15 that was outstanding that the parties were
16 objecting to could be broadened, and we were
17 supposed to meet and confer and try and duke it
18 out as to, you know, what requests would be
19 expanded what way, what would be narrowed what
20 way.  While it was defendants' position that all
21 of that was overly broad, again, rather than go
22 back and forth and debate it, we said, You know
23 what, we'll go back, we'll adjust the filter
24 terms, we'll do what is necessary to pull all of
25 that out there and produce that.

Page 51

1        So those are the basic points as to
2 what took the several months to do.  And frankly,
3 what was done in several months, probably should
4 have taken much longer.  But I think the real key
5 is that a lot of this material had already been
6 collected and produced, it was our position, but
7 we said we'd go back and do it.
8        To Your Honor's question about the
9 de-duplication.  So you go in a warehouse, you
10 look in a box, you get a document out, you look
11 at it.  Absent taking the time to go and for
12 every document you find and say is it somewhere
13 in the production, look it up, and have somebody
14 take it and match it side by side, I mean, we
15 would be producing documents in July.  The
16 logical thing to do is to say if it's responsive,
17 even recognizing that it may have been produced
18 before, let's produce it.
19        There's no process in the protocol in
20 this case to go back and try to de-duplicate hard
21 copy, because as I just described, that would
22 slow down the process tremendously.  And all of
23 these documents were scanned and they were OCR'd,
24 so they're text searchable, so plaintiffs can go
25 through and do what they typically do, and run

Page 52

1 their filters and minimize what they need to look
2 at to the really key things.
3        I'll say, Your Honor, we put people out
4 there in the field who are familiar with these
5 documents, just generally, to say as we were
6 going through to let us know are these things you
7 haven't seen before.  And while again this wasn't
8 a very scientific process, it was important to us
9 to know if this is just, you know, copies of
10 materials that have been produced before or more
11 of the same.  And what we were hearing from
12 everybody who was going through this process was
13 again, yeah, we've seen this stuff before.  Can I
14 put this next to this and say this is the exact
15 copy of that?  No.  But it was more of the
16 same --
17        JUDGE PISANO:  But having gone through
18 that during the production of it, what do you say
19 to the plaintiffs' lament that they shouldn't
20 have to go through that exercise manually now?
21 What do you see to that?
22        MR. BERNARDO:  I say first of all
23 there's an ESI protocol that was negotiated in
24 this case that's consistent with the type of ESI
25 protocols in every litigation that does not

Page 53

1 require hard copy de-duplication because it's
2 extremely costly.
3        Secondly, plaintiffs are in the same
4 position as we are, as far as who can do that.  I
5 mean, if they want to go through it and do
6 searches in a manual check, they can do that.  I
7 mean, we cited a case, Gerardo, as far as the
8 burdens.  I mean, a responding party shouldn't be
9 bearing the additional burden of doing
10 plaintiffs' work in terms of doing the document
11 review.  We've already spent millions of dollars
12 on producing this stuff.  And, frankly, we
13 objected to producing more.  So we're sort of in
14 that, if you'll forgive me, we're damned if we do
15 and we're damned if we don't.  If we objected and
16 said we're not going to go back and do this, we'd
17 be here arguing about that.  But we decided to
18 avoid that objection, and now we're here arguing
19 about what should be done.
20        So the de-duplication was just a
21 significant and time-consuming burden, I think we
22 put a cost estimate in there, Your Honor, and
23 it's not something that's ever contemplated by an
24 ESI protocol for very good reason.  What we did
25 agree to do, which is requiring some burden, is

14 (Pages 50 - 53)

Cruz & Company - A Veritext Company

973-467-4123

1  something to be honest we wouldn't have thought
2  we would have had to have done, given at least
3  some folks on plaintiffs' bars familiarity with
4  this asbestos production, and just briefly, Your
5  Honor, as I forget, maybe it was
6  Mr. Placitella --
7       JUDGE PISANO:  Is this what I mention,
8  this is in Ms. Sharko's letter of the 19th,
9  Page 2, "Defendants are in the process of
10 creating a spreadsheet that will enable the
11 plaintiffs to identify a significant number of
12 documents," et cetera?
13      MR. BERNARDO:  That's exactly --
14      JUDGE PISANO:  So where is the
15 spreadsheet?
16      MR. BERNARDO:  We're in the process of
17 finalizing that.  And, again, we feel as if
18 that's something that we shouldn't have to have
19 done, it wasn't contemplated by the protocol, but
20 we do have information for that discrete set, for
21 the asbestos production where we can go back, and
22 as Ms. O'Dell said, the overwhelming majority of
23 that is materials that were produced in the
24 asbestos production that were also produced in
25 this case many, many months ago.  But we are

1  willing to, and will do that and go back and make
2  best efforts to try and identify where those
3  duplicates can be found.  Because that's not a
4  manual comparison, that's just a time-consuming
5  task of comparing numbers.
6       JUDGE PISANO:  Okay.
7       MR. ROBERTS:  Your Honor, as to the
8  timing issue, what we just heard is basically
9  this case started with a 20-year production set.
10 And plaintiffs' counsel from the beginning has
11 said that's not going to be adequate.
12      By the operation of Rule 26 and the
13 2015 amendments, our scope of discovery and the
14 proportionality factors are driven by the fact
15 that this table speaks for thousands and
16 thousands of injured women, not one case that was
17 tried 20 years ago.  These folks sat here and
18 said that is not going to be adequate.  You've
19 got to do better, it's not going to be adequate.
20 And what evolved was this steady drumbeat of,
21 Your Honor, all these lawyers on this side of the
22 table have these other cases, they're trying
23 these cases, they're winning these cases, we
24 don't need anything else, this is good enough for
25 them, our 20-year production is good enough for

1  them.  It's not the law.
2       So we're entitled to the scope of
3  discovery that Rule 26 dictates for thousands of
4  women.  It is, by definition, broader than any
5  scope of production that could have applied 20
6  years ago when they made the calculated decision
7  to give to us a 20-year production with
8  20-year-old Bates numbers and said get started
9  because we're going to going to keep your feet to the
10 fire.  So we got started and we worked on it, and
11 we ground through all of those hundreds of
12 thousands of pages.
13      And now comes the same pages again, the
14 exact same pages.  Half are the same, and half
15 are new, and they're all mixed up.  There's no
16 alternative for us but to go through and continue
17 the linear review that they characterized as
18 burdensome, they characterized as costing a
19 $1 million.  It's not like we can just put
20 $1 million in a Coke machine and the answer comes
21 out.  It takes time.  I can't do any better than
22 their own description, burdensome and
23 time-consuming.  That's why we're here asking for
24 some time.  We have to get the time.  We've got
25 to get through it as well.

1       And the Court was looking at Mr. Tici's
2  description of --
3       JUDGE PISANO:  Well, wait.  You're
4  talking about documents of every conceivable
5  description in this case.  There's not just one
6  type of document.  There's all kinds of stuff.
7       MR. ROBERTS:  There are all kinds of
8  stuff.
9       JUDGE PISANO:  All kinds of stuff.  And
10 yet the argument seems to be that until you have
11 a chance to go through all of this, regardless of
12 what it is, you can't produce experts' reports
13 and the expert discovery process can't start
14 until you're done with it.
15      MR. ROBERTS:  No, Your Honor, I think
16 counsel -- if you've heard here, counsel on this
17 side has said we can get started now with the
18 things that we know are likely to be less
19 dependent on the information in this most recent
20 production.  The Imerys production; a good, as
21 best we can tell, a timely production that
22 allowed us to do a good review on a timely
23 rational basis.  So let's start doing the Imerys
24 production.  We can get those in the pipeline.
25      But this, they say it took them months,

15 (Pages 54 - 57)

Cruz & Company - A Veritext Company

973-467-4123

Page 58

1  and they give us two weeks.  The other thing
2  that's misleading is when they say it's search
3  ability.  Search ability means something to them
4  because they start with a pool of things and it's
5  a binary choice, some are responsive, some are
6  not responsive.  Search ability helps you
7  discriminate, search and retrieve the responsive
8  from the nonresponse.  So does search ability
9  help them on their workflow?  Yes.  But guess
10  what, 100 percent of what we have, it's all
11  responsive, right.  We're not looking for
12  responsive versus nonresponse.  100 percent of
13  what we get they contend has responsive
14  information in it.  Is it searchable?  Great.
15  Does it help us organize our linear review so
16  that we can go through those manually a little
17  more efficiency, we can group together subject
18  matters where we can, we can put together related
19  documents where we can?  Yes, we leverage all
20  those technologies to make it go as fast as
21  possible.  They did the same thing.  But search
22  ability isn't the be-all end-all for us.  It
23  still requires eyeballs on documents.
24      JUDGE PISANO:  Okay.  What you know.
25  Based on what you know about this spreadsheet

Page 59

1  that you're creating, in your view how much of
2  the problem that was just expressed will be
3  ameliorated?
4      MR. BERNARDO:  It will eliminate the
5  overlap of documents that were produced in the
6  asbestos cases, which is about 4,000 documents.
7      JUDGE PISANO:  Okay.  And when are you
8  producing this spreadsheet?
9      MR. BERNARDO:  In the next couple of
10  days.
11      JUDGE PISANO:  Okay.
12      Let's talk about privilege log.  You
13  mentioned that, Ms. O'Dell.
14      MR. ROBERTS:  And that's a small
15  sliver, that's a very small subset.  And just,
16  Counsel, before we leave, we're going to ask to
17  do that by load file instead of a Excel
18  spreadsheet.
19      MS. O'DELL:  Your Honor, Mr. Burns is
20  going to deal with the privilege issues.
21      MR. BURNS:  And Your Honor, in the real
22  sense this process has just begun.  We sent
23  letters to the defendant last week.
24      JUDGE PISANO:  Where are you from,
25  Mr. Burns?

Page 60

1      MR. BURNS:  Dallas, Texas, actually,
2  Your Honor.  I like the call-out to the Texas OU
3  game, but I'm actually from Mississippi
4  originally, so Mississippi --
5      JUDGE PISANO:  Well, take your pick.
6  You got the idea.
7      MR. BURNS:  That's right.
8      So we sent letters out to the
9  defendants last week.
10      MS. SHARKO:  Saturday.
11      MR. BURNS:  For you all.  I think
12  Imerys went out earlier.
13      But in any event, so the issues aren't
14  ripe today, Your Honor, I think.  And we're happy
15  to meet and confer with defendants --
16      JUDGE PISANO:  Well, generally
17  speaking, what are we talking about?  What
18  privileges are we talking about?
19      MR. BURNS:  So the letters themselves,
20  which we shared with the defendants, largely
21  raise issues related to the privilege log about
22  adequate identification of the individuals
23  listed, of the justification for the privilege.
24  So there are a number of those that, you know, I
25  hope and feel that we'll probably work out.  But

Page 61

1  invariably, you know, we may refine this to a
2  more workable number of disputes.  Hopefully not,
3  but if we do, we wanted to just explore what your
4  preference was.
5      JUDGE PISANO:  Well, have there been
6  documents withheld on the basis of privilege?
7      MR. BURNS:  Yes.
8      MR. SILVER:  Judge, the answer is yes.
9  Can I suggest this?  We got, the Imerys letter is
10  dated January 17th asking for a meet-and-confer
11  on January 26th.  We haven't had the chance --
12  this is so premature we haven't even had a chance
13  to review their issues, let alone figure out what
14  our response is.
15      JUDGE PISANO:  Good.  Fine with me.  Do
16  the best you can, and when it congeals let me
17  know.
18      MR. BURNS:  And our only question was:
19  Did you have a preference for how you wanted us
20  to present this to you?
21      JUDGE PISANO:  No.  I want you to
22  present it as you think is the best way to
23  present it.
24      MR. BURNS:  We're happy to do that Your
25  Honor.

16 (Pages 58 - 61)

Page 62

1    JUDGE PISANO:  I mean, ordinarily the
2 privilege log comes out in the beginning.
3 Documents are demanded, there's a production and
4 then there's a withholding of some on the basis
5 of privilege, and you identify the document by
6 number and what the privilege is, and then the
7 battle starts.
8    So it's kind of unusual for me to be
9 getting into privilege log stuff after your side
10 has been complaining that they just got 400,000
11 documents.
12    MR. BURNS:  Well, we get a rolling log
13 from them.  And I'm not sure, I think we have
14 received a log for the latest productions, but
15 we're happy to attack that, Your Honor.  Thank
16 you.
17    JUDGE PISANO:  Okay.  Anything else?
18    MS. O'DELL:  Your Honor, just to follow
19 up, if you'd like to see it, I did find that
20 formula if you want to get a sense of what we're
21 dealing with, and I'm happy to show it to you.
22    JUDGE PISANO:  A formula?
23    MS. O'DELL:  Yes, of the product
24 itself.
25    JUDGE PISANO:  From when?

Page 63

1    MS. O'DELL:  This is the current one,
2 the contemporary one, as I understand it, the
3 one's employed now.  Obviously we want all the
4 formulas, but this will give you a sense of the
5 components.
6    JUDGE PISANO:  Don't they have all the
7 formulas?  It would seem to me to be a fairly --
8 that probably was one of the first things they
9 demanded.
10    MS. SHARKO:  I would have thought that
11 going back to when this case was first started
12 being litigated.  I can't answer about before.
13 This is the first time --
14    JUDGE PISANO:  Oh, this is very
15 helpful.  Thank you.
16    MS. O'DELL:  Keep going back.  It's
17 multiple pages, Judge.  I just showed you the
18 first 12 components.  That goes on for another
19 six pages, five pages.
20    MR. BERNARDO:  Can you tell us the
21 Bates number of what you're looking at?
22    MS. O'DELL:  I'm looking at a response
23 to an interrogatory.
24    MS. SHARKO:  Can I look at it, please?
25    JUDGE PISANO:  Well, I suppose, and

Page 64

1 forgive me for being -- I have been accused of
2 being primitive in my thinking, so it wouldn't be
3 the first.  Let me be primitive in my thinking
4 and suggest if you got this formula and showed it
5 to your toxicology expert, your epidemiology
6 expert, your cancer expert, why wouldn't they be
7 able to look at the ingredients, go back into the
8 scientific literature and tell you as a matter of
9 general causality whether this product can lead
10 to ovarian cancer?
11    MS. O'DELL:  Because it doesn't list
12 asbestos, nickel, chromium, cobalt and some of
13 the other things that are carcinogens.
14    JUDGE PISANO:  So you're saying there
15 are ingredients in the product that are not
16 listed?
17    MS. O'DELL:  That is correct.
18    MS. SHARKO:  Also Ms. O'Dell just
19 showed me what she showed Your Honor, and when
20 you scroll up the first page it says this is the
21 formula for the fragrance.  So the fragrance is
22 not an issue here, as far as we know.
23 Fragrance -- I don't believe that our product
24 contains all the different things they said it
25 does, which are new to the litigation.  But

Page 65

1 certainly fragrance wouldn't contain cobalt.
2 What kind of fragrance has cobalt in it?
3    MS. O'DELL:  We're saying the product
4 causes ovarian cancer, and part of the product
5 certainly is fragrance.
6    MS. SHARKO:  Maybe we should, Judge,
7 maybe we should have expert reports or affidavits
8 from the plaintiffs that describe the need for
9 this.  They had to have expert reports before
10 they filed the litigation.  When they filed the
11 litigation the allegations were the same as
12 they've been in the six or seven Missouri cases.
13    JUDGE PISANO:  Well, one of the things
14 I thought of, frankly, but preliminarily rejected
15 because I would be, I think, igniting a firestorm
16 of privilege, was to ask the plaintiffs to
17 produce some communications from these experts
18 explaining why they, expert, need more
19 information.  And I thought that would be a
20 mistake because we would simply be careening into
21 another whole sideshow of problems.
22    MS. SHARKO:  But, if, for example, we
23 had gone ahead and filed a motion for summary
24 judgment, and they thought they needed more
25 discovery to respond to the motion, which is

17 (Pages 62 - 65)

Page 66

1 really kind of where we are, to fast-forward.
2          JUDGE PISANO:  Yes, basically that's
3 where we are.
4          MS. SHARKO:  They would have to submit
5 such an affidavit describing in detail.
6          JUDGE PISANO:  Okay.
7          MR. BERMAN:  Judge, just so the record
8 is clear, going back to what I brought up
9 previously, the FDA regulations in 1973, and by
10 1976 the self-regulated industry said we're
11 asbestos free now.
12          So the experts that you're talking
13 about are relying on the word of J&J that we're
14 asbestos free.  You know, we guaranteed it was
15 99.9 percent asbestos free, and it is, which we
16 know now that it wasn't.
17          So whatever our experts are relying on
18 in the general literature is wrong.  So they
19 can't rely on the general literature, because
20 they were covering up what was put into their
21 product from at least the mid-'70, if not before.
22          JUDGE PISANO:  But I mean somebody
23 touched on this, I don't know who it was,
24 somebody touched on this earlier.  Regardless of
25 whether the substance contains a fraction of a

Page 67

1 percent asbestos, or whether it contains
2 50 percent asbestos, is there an expert who's
3 going to say that asbestos will make its way up
4 and cause ovarian cancer?
5          MR. BERMAN:  Well, let me address that
6 as well, Judge.  Because the defendants
7 themselves say we have zero tolerance policy, we
8 have zero asbestos in our product.  Their own
9 expert said asbestos is a known carcinogen for
10 ovarian cancer.  So they've admitted not only
11 that they need zero percent in there, but
12 asbestos causes ovarian cancer.
13          JUDGE PISANO:  Well, if that's the case
14 why do you need any more discovery?
15          MR. BERMAN:  Because they lied about
16 the product beginning in 1973.
17          JUDGE PISANO:  Well, that's a different
18 issue.  That goes back to what Judge Wolfson
19 highlighted in September.  What they knew or what
20 they lied about is different.
21          MS. SHARKO:  We take strong offense at
22 these allegations that we lied, we covered up --
23          JUDGE PISANO:  I know that.  I assume
24 that you're suitably offended and outraged by
25 these scurrilous allegations.  I understand that.

Page 68

1          MS. SHARKO:  But we also deny them,
2 number one.  And, number two, we don't believe
3 the product contains asbestos.  If they believe
4 that it does, that's an offer --
5          JUDGE PISANO:  Okay.  Tell me again
6 when we're doing the sampling, the testing.
7          MS. SHARKO:  So the samples, they
8 should have access to them pretty much now.
9          MR. BERNARDO:  As soon as the order is
10 entered, Your Honor.  In fact, they've had the
11 list of the samples for a couple of months, so
12 they can, even before the order is entered, make
13 them out.
14          JUDGE PISANO:  So this class trip to
15 the testing lab will happen as soon as the order
16 is signed?
17          MR. BERNARDO:  As soon as plaintiffs
18 identify which samples they want.  And it's not
19 going to be testing, it's just going to be
20 division.  But as soon as they identify which
21 ones they want.
22          JUDGE PISANO:  Okay.  So the division,
23 you'll be turning over the samples to the
24 plaintiffs on a date that they will choose not
25 later than whatever I tell you it's going to be,

Page 69

1 right, that's what my job is; right?  And then
2 it's going to take 30 days to get the results?
3          MR. BERMAN:  No.  After the order is
4 entered we then have 30 days to designate which
5 samples we want to be split up, to be divided
6 between the parties on under the protocol.  After
7 that we take them back to our lab and then they
8 begin the testing process.
9          JUDGE PISANO:  So from the time this
10 order is signed you have 30 days to identify what
11 you want?
12          MR. BERMAN:  Correct.
13          JUDGE PISANO:  Then you turn that over
14 to your labs, and it will take another?
15          MR. BERMAN:  A while, depending.  I
16 know somebody already told me, because I was
17 responsible for notifying the entire plaintiff
18 bar around the country, they looked at the Imerys
19 production, they're going to want a sample of
20 every one of them.  So it's gonna take a while.
21          JUDGE PISANO:  What's a while?
22          MR. BERMAN:  I don't want to commit my
23 expert, because if there's -- we don't know how
24 many we want exactly, so it could be months.
25          MS. SHARKO:  It shouldn't take months

18 (Pages 66 - 69)

Page 70

1 do this.
2      MR. BERMAN: Absolutely. It takes
3 time.
4      JUDGE PISANO: I didn't hear you.
5      MR. BERMAN: It's a very sophisticated
6 test. It's not like, oh, I look under the
7 microscope and there's the asbestos. It's a
8 whole procedure. We had a protocol written about
9 the testing, and then we both took it out and
10 just decided to divide the product.
11      JUDGE PISANO: Okay. Anything else?
12      MS. SHARKO: Just one other point on
13 documents. We're now trying to produce
14 everything to everybody, so we don't have the
15 issue that we had earlier.
16      JUDGE PISANO: Right.
17      MS. SHARKO: And there's a dispute in
18 the Missouri State Court litigation, which many
19 of these lawyers are involved in, over
20 jurisdiction. As a result of that, we are doing,
21 they are doing discovery on jurisdiction. So
22 there will be documents produced related to
23 jurisdiction issues, and we'll be giving the MDL
24 plaintiffs a set of those documents.
25      I don't think those generally would go

Page 71

1 to science issues, but just to try and shortcut
2 multiple letters to Your Honor about multiple
3 documents, that's what those are.
4      MR. TICI: And, Judge, just to follow
5 up on this. I want to make sure that what we
6 have is subject to that caveat for all the
7 defendants. Because I remember in the last
8 status conference before Judge Wolfson, there was
9 a suggestion that there might be other categories
10 of documents that might straggle in after the
11 date that they were due, which was December 20th.
12      And so I mean, can we take it to the
13 bank now that other than what Ms. Sharko said and
14 counsel for Imerys that we're pretty much, that
15 they're done producing documents, or are we in a
16 position where we're going to be expecting a
17 rolling production of additional documents that
18 they're looking for?
19      MS. SHARKO: I can only imagine what
20 people are going to fight about in other cases.
21 We've produced what we plan to produce in
22 response to your requests.
23      MR. TICI: Okay. And I'm saying, look,
24 there may be things that if we see something
25 we'll ask you to go back and see if there are

Page 72

1 additional things. But in terms of what your
2 production is in response to our outstanding
3 discovery, can you certify that we are now in a
4 position where you have produced the documents
5 that are responsive to our discovery?
6      MS. SHARKO: We signed whatever
7 certification was attached to the documents.
8 Beyond that, if you're going to take my
9 deposition I want my own lawyer.
10      MR. TICI: No, I'm not asking to take
11 your deposition, Susan. What I don't want to do
12 is leave here and then, you know, two weeks from
13 now get another production, production 57 that is
14 another 20,000 documents that are not what you
15 identified as being the Missouri jurisdictional
16 documents.
17      MR. BERNARDO: Why don't we just cut
18 through that. The stragglers that Mr. Tici is
19 identifying were those documents that were
20 produced on the 21st.
21      MR. TICI: That's all I wanted to make
22 sure. Thank you.
23      MS. THORNTON FIELD: May I respond on
24 behalf of Imerys? We are in the process of
25 putting together our privilege log. And as part

Page 73

1 of that process we found some documents that
2 aren't privileged. So there may be some,
3 hopefully one additional production, hopefully
4 not lots of documents, but you should expect
5 that.
6      MR. TICI: Okay. Thank you. I do
7 appreciate it.
8      JUDGE PISANO: Bear with me a minute.
9 I'm reading the list of experts, I have not seen
10 this before. So bear with me.
11      Okay, you'll hear from me.
12      MR. SILVER: Judge, there's just one
13 more thing along the lines of obviously
14 defendants position and Imerys position is they
15 don't need any deps.
16      If you are contemplating giving them
17 time for deps, then Imerys would ask that you
18 build into whatever schedule, time frame where we
19 can object. Because the way it started was back
20 in June they asked for four Imerys witnesses that
21 we had objections to. It got a paragraph but we
22 would want this fully briefed as to why they're
23 not appropriate witnesses. And then they
24 expanded with their submission of 17 witnesses,
25 and then they went back in this last submission

19 (Pages 70 - 73)

Page 74

1 on Friday, back to well, we'll start with four.
2        Imerys' position is we don't want to do
3 it piecemeal.  We're entitled to -- they're
4 entitled to zero, but we want to be able to argue
5 about and have them brief about why they're not
6 entitled to have the ones they want.
7        MR. TICI:  Judge, let me be clear.  We
8 didn't go from four to 17 to four.  What we said
9 in June was we wanted to choose a core set of
10 witnesses to dealt with scientific issues A, and
11 who we had reason to believe we had a complete
12 custodian file for, so that's why we chose those
13 four.  We've since been getting documents all
14 along.
15        When we then identified 17 -- which
16 candidly, you know, if this was an automobile
17 accident case that's not even an unusual number
18 of depositions, certainly not for a case of this
19 magnitude.  But putting the issue of the number
20 aside, we listed 17, and what we told counsel was
21 as we were, as we agreed back in June we can
22 start with the four that we identified back in
23 June.  Now, if there are additional ones as we go
24 along, we'll continue to request them.  But we
25 didn't go from four to 17 back to four again.  I

Page 75

1 mean, is that, do you understand?
2        JUDGE PISANO:  Okay, thank you.
3        Thank you all.
4        (Whereupon the proceedings concluded at
5 2:25 p.m.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 76

1        CERTIFICATE
2
3        I, SUSAN M. STYRON, Notary Public,
4 R.P.R., C.S.R., of the State of New Jersey,
5 License No. XIO1704, do hereby certify that the
6 foregoing is a true and accurate transcript of
7 the proceedings as taken stenographically by and
8 before me at the time, place and on the date
9 hereinbefore set forth.
10        I DO FURTHER CERTIFY that I am neither
11 a relative nor employee nor attorney nor counsel
12 of any of the parties to this action, and that I
13 am neither a relative nor employee of such
14 attorney or counsel, and that I am not
15 financially interested in the action.
16
17
        _Susan M. Styron_
18        _____
19        Notary Public of the State of New Jersey
        My Certificate expires January 25, 2019
20        Dated: January 24, 2018
21
22
23
24
25

| & | | | |
|---|---|---|---|

**&**   1:5,17,20,24 2:5
2:8,16 3:3,6,9,13
3:15 8:25 13:21
15:25 16:1,1
29:15 39:8 40:3,5
40:8,15,17 41:7,8
41:9,12,18

**1**

**1**   1:11 56:19,20
**1,000**   32:22
**10**   38:18
**100**   58:10,12
**104**   39:7
**12**   63:18
**15**   32:13
**15th**   6:19,19
**16**   1:3
**17**   73:24 74:8,15
74:20,25
**17th**   61:10
**1973**   24:4 66:9
67:16
**1976**   66:10
**19th**   7:1 54:8

**2**

**2**   54:9
**20**   49:22,23 55:9
55:17,25 56:5,7,8
**20,000**   72:14
**2015**   55:13
**2017**   47:25
**2018**   1:9 76:20
**2019**   76:19
**20th**   71:11
**21st**   48:8 72:20
**22**   1:9
**24**   76:20
**25**   76:19

**26**   55:12 56:3
**26th**   61:11
**2738**   1:3
**2:25**   75:5

**3**

**3,786**   44:17
**30**   21:14 34:16
36:21 37:4 41:18
45:15 69:2,4,10
**35**   29:21
**36**   27:21

**4**

**4**   14:22
**4,000**   37:6 59:6
**4,675**   44:15
**40**   29:5
**40,000**   29:21
**400,000**   62:10
**4th**   32:17

**5**

**5**   14:22
**5,000**   29:23
**50**   67:2
**50s**   26:24
**57**   72:13

**6**

**6**   41:18 45:15
**60**   41:21
**60s**   9:18 26:24,24
**62**   7:22 11:8 13:14
31:13

**7**

**7,000**   44:8
**70**   8:25 66:21
**70s**   9:18

**8**

**80s**   9:19

**9**

**90**   41:21
**99.9**   24:7 66:15

**a**

**ability**   15:9 58:3,3
58:6,8,22
**able**   13:10 16:21
24:16 25:5 31:18
35:11 38:3 45:9
50:4 64:7 74:4
**absent**   51:11
**absolute**   42:8
**absolutely**   70:2
**accelerated**   50:12
**access**   68:8
**accident**   74:17
**accomplished**   5:8
**accumulated**
20:14
**accuracy**   37:18
**accurate**   48:13
76:6
**accused**   64:1
**action**   1:3 76:12
76:15
**actual**   14:14 34:21
**add**   6:13
**added**   6:16
**addition**   9:10 39:9
42:3
**additional**   44:15
53:9 71:17 72:1
73:3 74:23
**address**   34:11
39:15 42:14,15
67:5
**addressing**   46:12
**adequate**   17:16
55:11,18,19 60:22

**adjust**   50:23
**admission**   47:15
**admitted**   67:10
**advance**   48:9
**affidavit**   66:5
**affidavits**   65:7
**agencies**   46:1
**agenda**   4:3,23
**ago**   44:21 49:23
54:25 55:17 56:6
**agree**   48:10 53:25
**agreed**   19:23 48:7
48:8 50:14 74:21
**ah**   46:18
**ahead**   65:23
**aid**   27:8
**allegations**   65:11
67:22,25
**allege**   39:15
**allen**   1:17
**allowed**   24:9
41:25 57:22
**alternative**   56:16
**ameliorated**   59:3
**amendments**
55:13
**america**   3:21
**amicas**   39:13
**amount**   45:7
**amounts**   11:19
**analyze**   19:7
**ann**   3:7
**answer**   56:20 61:8
63:12
**answering**   19:16
**anybody**   7:1 11:16
11:18 12:6
**anyway**   4:18
**apologize**   42:12
**appeal**   40:9,18,25

appears 4:23
appellate 39:10 40:24
applied 56:5
apply 9:22 12:21
appreciate 73:7
appropriate 14:7 73:23
area 5:10 6:3 10:5 14:10
areas 4:24 5:4 8:7 16:6,10 17:1,14,15
argue 22:15 74:4
arguing 53:17,18
argument 7:23 39:7,9 57:10
arps 3:13
arrive 9:21 21:2
arsenic 34:19
article 12:5
asbestos 8:23 9:1,3 9:6,11 11:19 12:5 12:9,24 13:4 17:25 18:16 20:4 23:10,13,14,25 24:7,10,15 29:16 30:5,7 31:10 34:19 40:5,16 41:6 54:4,21,24 59:6 64:12 66:11 66:14,15 67:1,2,3 67:8,9,12 68:3 70:7
ashcraft 1:20
aside 46:13 74:20
asked 4:1,21 34:14 38:15 40:8 43:5,6 43:9,12 44:4 46:22 73:20
asking 25:21 41:23 42:17 56:23

61:10 72:10
asks 37:1
assume 29:22 67:23
assure 24:7
atlantic 39:6
attached 72:7
attack 62:15
attempted 49:2
attempting 33:18
attention 29:11
attorney 20:19 76:11,14
authors 16:3
automobile 74:16
avoid 31:22 53:18
aware 35:17 36:21 36:22

**b**

b 1:13 41:18 45:15
baby 28:17
back 5:6 10:2 19:19 20:23 23:24 26:24 38:23 39:17 42:23 43:9 49:8 49:11,14,20 50:1,4 50:7,8,22,23 51:7 51:20 53:16 54:21 55:1 63:11,16 64:7 66:8 67:18 69:7 71:25 73:19 73:25 74:1,21,22 74:25
background 8:19 13:7 24:3
bank 71:13
bar 69:18
bars 54:3
base 13:8 41:22
based 9:25 26:2 43:25 58:25

basic 51:1
basically 27:6 55:8 66:2
basis 57:23 61:6 62:4
bates 48:21 56:8 63:21
battle 62:7
bear 73:8,10
bearing 53:9
bears 38:22
beasley 1:17
beef 48:19
beginning 5:7 29:20 55:10 62:2 67:16
begun 59:22
behalf 2:21 3:15 3:20 33:10,12 72:24
belabor 13:1
believe 8:5 12:22 13:15 14:16 16:7 16:23 18:13 24:15 29:18 37:11 47:11 64:23 68:2,3 74:11
benefit 30:19
berman 2:12 3:3,4 20:11 21:8,20,24 23:22,24 66:7 67:5,15 69:3,12,15 69:22 70:2,5
bernardo 3:14 20:12 48:6,12 49:5,6,18 52:22 54:13,16 59:4,9 61:7 63:20 68:9 68:17 72:17
best 37:21 50:1 55:2 57:21 61:16

61:22
better 55:19 56:21
beyond 72:8
bias 14:25 15:5,7
biddle 3:9 20:15
binary 58:5
bio 39:9,25
biologic 35:23
biological 42:9,11
biologically 47:6
biology 9:23
bit 8:19 24:2 40:22
boardwalk 23:7
bond 27:7
bottle 28:22
bottles 28:17
box 51:10
boxes 50:8
brand 27:8
brief 10:6 74:5
briefed 73:22
briefly 54:4
bring 4:13
broad 5:23 50:21
broadened 50:16
broader 56:4
brought 23:25 29:11 66:8
build 73:18
burden 18:14 39:1 53:9,21,25
burdens 53:8
burdensome 56:18 56:22
burns 2:19,20 32:18,19 33:12 59:19,21,25 60:1,7 60:11,19 61:18,24 62:12

[c - components]

**c**

**c**  1:15 3:1,1
**c.s.r.**  76:4
**calculated**  56:6
**california**  8:22
  10:23 11:1,2
  31:20
**call**  60:2
**cancer**  11:21
  12:10 13:3,5
  28:21 29:19 31:17
  32:22 36:3,6
  39:22 46:9,21
  64:6,10 65:4 67:4
  67:10,12
**candidly**  74:16
**carcinogen**  67:9
**carcinogenic**  42:5
  42:6,6
**carcinogens**  9:10
  12:24 14:9 18:21
  21:25 35:19 36:1
  39:19 42:2 64:13
**care**  15:14 30:11
**careening**  65:20
**case**  5:7 7:13 11:5
  12:12 14:3 16:14
  16:15 17:12,25
  18:5,12,13 22:24
  30:1 31:9,12 32:5
  32:10,14 34:3,5
  35:25 36:5 38:24
  39:16,17 40:2,4,4
  41:15 42:1,8
  43:17,18,19 47:7
  51:20 52:24 53:7
  54:25 55:9,16
  57:5 63:11 67:13
  74:17,18
**cases**  10:18 19:6
  32:24 33:22 35:22

38:20 39:6 55:22
55:23,23 59:6
65:12 71:20
**cataloged**  21:4
**categories**  18:20
  71:9
**causality**  64:9
**causation**  5:6,25
  7:15 8:9 14:24
  23:4,16,18 25:24
  32:3 35:21 36:12
  37:22 43:5 44:13
  46:4,13
**cause**  11:21 12:10
  36:3,6 39:22 46:8
  46:20 67:4
**caused**  50:10
**causes**  28:21 31:17
  65:4 67:12
**caveat**  71:6
**cell**  9:23
**certain**  8:8 13:13
  16:21 17:1 26:5
  31:3
**certainly**  6:17
  12:17 13:3,17
  65:1,5 74:18
**certificate**  76:1,19
**certification**  72:7
**certify**  72:3 76:5
  76:10
**cetera**  54:12
**chad**  2:15
**chain**  11:11 19:20
  24:23 25:2,6
**challenge**  31:18
**chance**  19:6 57:11
  61:11,12
**change**  26:14
**characterize**  5:13

**characterized**
  56:17,18
**charest**  2:19
**check**  50:5 53:6
**choice**  58:5
**choose**  68:24 74:9
**chose**  43:10 74:12
**chris**  1:22
**christmas**  44:16
**christopher**  1:25
**chromium**  9:11
  11:20 13:1 18:18
  23:8 28:24 64:12
**chrosynolite**  40:19
  40:20
**chrysotile**  24:13
  24:17 40:13
**cigarette**  36:5,8,9
**cigarettes**  36:4,5
**circumstances**
  50:12
**cited**  53:7
**civil**  1:3
**class**  68:14
**clear**  11:13 18:9
  26:18 35:4 45:19
  66:8 74:7
**clearly**  26:22
  29:24 43:11
**clients**  9:19 26:23
  33:2,6,6,11
**cobalt**  9:11 23:9
  64:12 65:1,2
**cocounsel**  2:14
  27:16 32:23
**cohen**  1:24
**coke**  56:20
**colleague**  48:6
**colleagues**  17:3
**collected**  24:22
  49:23 51:6

**colleen**  3:25
**colloquy**  46:21
**come**  4:12,19
  36:25 41:12
**comes**  36:21 46:17
  56:13,20 62:2
**comfortable**  19:12
**coming**  7:23
**comment**  34:11
  46:15
**commissioned**
  16:4
**commit**  69:22
**committee**  2:21
  33:10
**communicate**
  21:16
**communicated**
  35:1
**communications**
  65:17
**companies**  24:6
**company**  18:11
  23:16 26:8 28:1
  38:16
**comparing**  55:5
**comparison**  14:1
  55:4
**compelled**  4:13
**competing**  19:4,5
**complaining**  62:10
**complaint**  5:13
  18:4 23:10
**complete**  16:11
  43:7,9 44:10
  74:11
**completely**  44:2
  45:6
**components**  29:6
  63:5,18

composition 8:18 9:25 12:20 13:9 14:14
conceivable 57:4
concept 5:24 11:7 12:8
concerning 41:20
concluded 46:14 75:4
conclusion 34:5
concomitant 5:17
concrete 34:12
conduct 16:2
confer 50:17 60:15 61:10
conference 4:1,3 14:21 71:8
conferences 4:11 46:11
confident 19:13,18
conflict 7:20
congeals 61:16
conservatively 16:18 17:3
consideration 33:1
consistent 24:17 52:24
consistently 12:22 35:24
consists 21:23
constituent 36:8,9
constituents 14:5 28:18 34:18 36:4 46:8
consuming 50:6 53:21 55:4 56:23
contact 4:6
contain 65:1
contained 12:23
containers 25:5

contains 23:13 28:18 64:24 66:25 67:1 68:3
contaminants 8:24
contemplated 18:4 18:7 53:23 54:19
contemplating 73:16
contemporary 9:17 26:19 63:2
contend 58:13
content 30:8
contents 28:9
context 25:17
continuance 40:9
continue 56:16 74:24
control 33:14,14 33:18
controlled 33:19
convened 4:2
convince 36:10
copied 41:9
copies 52:9
copy 30:12 42:20 51:21 52:15 53:1
core 29:25 30:1 74:9
correct 7:24 18:2 21:24 64:17 69:12
correctly 37:10
correspondence 6:25
cosmetic 15:17
cost 53:22
costing 56:18
costly 53:2
coughlin 3:18
counsel 5:16 15:15 38:14 43:5,16 55:10 57:16,16

59:16 71:14 74:20 76:11,14
country 69:18
county 39:6 40:2
couple 10:25 15:13 26:17 59:9 68:11
course 18:13 30:20 38:3
court 1:1 7:15 19:24 20:2,4 31:19 32:16 33:7 38:25 39:5,12 40:2 42:7,22 43:3 57:1 70:18
court's 42:12
cover 19:25
covered 67:22
covering 66:20
creating 54:10 59:1
critical 16:11 17:16 31:2,3
crow 1:17
crowell 15:25 16:1
current 63:1
currently 22:4
custodial 43:7 44:9
custodian 74:12
custody 19:20 24:23 25:2,6
cut 72:17

**d**

d 2:3 3:1
dallas 60:1
damned 53:14,15
daniel 2:9
data 8:8 17:6 23:18 29:8 30:17

date 68:24 71:11 76:8
dated 61:10 76:20
day 12:4 19:20 33:6
days 21:14 41:21 44:16 59:10 69:2 69:4,10
de 48:18,24 51:9 51:20 53:1,20
deal 31:14 59:20
dealing 31:10 46:1 62:21
dealt 74:10
debate 22:13 50:22
decades 19:15
december 47:24 48:8 71:11
decide 5:22 21:17
decided 53:17 70:10
decision 25:14 49:19 56:6
deeper 25:19
defendant 3:15,20 59:23
defendants 15:10 20:20 32:21 46:16 47:2,16,16 50:20 54:9 60:9,15,20 67:6 71:7 73:14
defense 5:18 7:22 22:14 43:5
deficiencies 39:15
definition 56:4
delayed 17:20
delaying 17:11
demand 48:17
demanded 62:3 63:9

[demands - employed]

**demands** 38:25
**demean** 37:13
**demonstrate** 18:14
**deny** 23:13 68:1
**dependent** 57:19
**depending** 69:15
**deponents** 5:16 13:13,16 15:12 16:10 17:23 38:13
**depose** 15:19 31:3 44:23
**deposed** 38:16,19
**deposing** 23:16
**deposition** 5:19 16:24 17:2,9,12,20 24:22 31:25 38:2 41:18 72:9,11
**depositions** 7:22 11:8 13:13 16:20 16:22 17:22 25:6 25:22 26:14 31:13 34:10,14 42:19 43:12,13,23 44:10 45:4,16 74:18
**deps** 73:15,17
**describe** 65:8
**described** 15:9 51:21
**describing** 66:5
**description** 47:21 56:22 57:2,5
**deserve** 33:6
**designate** 4:11 69:4
**designation** 10:5
**desire** 16:23
**despite** 40:11
**detail** 66:5
**detect** 24:12

**determine** 14:5
**dictates** 56:3
**different** 9:25 22:20 31:24 34:3 35:17 36:4 45:21 46:1 49:25 64:24 67:17,20
**difficult** 19:21
**digest** 31:2
**directed** 45:21
**directing** 45:25
**direction** 7:12
**directive** 7:14
**directly** 27:15 42:15
**director** 37:11 45:20
**directors** 45:11
**disabuse** 11:7
**disagree** 48:2
**disclose** 10:4 17:5
**discover** 15:9 16:5 46:16
**discovered** 17:16
**discovery** 5:11,23 7:16,21 8:6 14:24 34:9 46:14 50:14 55:13 56:3 57:13 65:25 67:14 70:21 72:3,5
**discrete** 54:20
**discriminate** 58:7
**discuss** 4:25 5:3,5 5:19
**discussed** 14:20 22:4
**discusses** 13:4
**dismissed** 39:6
**dispute** 49:19 70:17

**disputes** 49:14 61:2
**distinguish** 49:3
**distributed** 21:4
**district** 1:1,2
**divide** 70:10
**divided** 69:5
**dividing** 19:22
**division** 39:10 40:24 68:20,22
**doctor** 38:2
**document** 5:14 15:17 27:25 29:13 29:13 30:10,15 41:6 43:15 44:3 48:5 51:10,12 53:10 57:6 62:5
**documentation** 48:15
**documents** 9:9,14 13:11 16:8,20 22:7,16 26:5,6,12 27:11 29:21,23 30:18 34:9,16 35:17 37:6 42:19 42:24 44:1,8,15,17 44:21,24 45:5,7,8 45:15 46:16 47:19 47:24 48:18,20 49:10 51:15,23 52:5 54:12 57:4 58:19,23 59:5,6 61:6 62:3,11 70:13,22,24 71:3 71:10,15,17 72:4,7 72:14,16,19 73:1,4 74:13
**doing** 13:15,19 33:10 53:9,10 57:23 68:6 70:20 70:21

**dollars** 53:11
**dr** 10:19,20,22,24 11:1 15:23,24 41:1 44:9
**drill** 34:23
**drilling** 34:22
**drinker** 3:9 20:15
**driven** 55:14
**drumbeat** 55:20
**due** 16:16 23:2,3 71:11
**duffy** 3:18
**duke** 50:17
**dump** 5:14
**duplicate** 48:18 51:20
**duplicates** 29:22 55:3
**duplication** 48:24 51:9 53:1,20

**e**

**e** 1:13,13,15,15 3:1 3:1,1,24,24
**earlier** 60:12 66:24 70:15
**early** 9:5 49:8
**earth** 28:16
**easier** 4:16
**ed** 34:15
**ediscovery** 2:14
**efficiency** 58:17
**efforts** 50:1 55:2
**either** 6:10
**eliminate** 59:4
**embraces** 5:11,12 5:15
**emergent** 40:9,17 40:24
**emphasize** 32:20
**employed** 14:1 63:3

employee  76:11,13
enable  54:10
ended  48:7
engage  14:24
entered  20:5 21:14
   68:10,12 69:4
entire  12:11 69:17
entitled  56:2 74:3
   74:4,6
epidemiologist
   10:21
epidemiologists
   30:23
epidemiology  9:22
   12:14,15,21 13:2,4
   64:5
esi  52:23,24 53:24
especially  25:1
esq  1:18,21,22,25
   2:3,6,9,12,15,17
   2:20 3:4,7,10,11
   3:14,19,25
esqs  3:3
essential  8:16
   13:18 30:18
essentially  9:2
   37:12
establish  12:19
   19:21 25:6 32:2,2
estimate  53:22
et  54:12
event  60:13
eventually  37:15
everybody  12:10
   21:4 48:2,8 52:12
   70:14
evidence  13:20
   16:7 22:2 36:12
   41:13
evolved  55:20

exact  31:12 52:14
   56:14
exactly  35:9,10,11
   35:11 44:11 54:13
   69:24
example  12:21
   34:12 38:6 44:6
   44:18 46:23 47:12
   65:22
examples  15:13
excel  21:10 59:17
excuse  11:15 43:3
executives  41:9
exercise  52:20
expanded  50:19
   73:24
expect  73:4
expecting  71:16
expeditionary
   7:16
expert  5:25 7:15
   8:5 9:13 10:4,20
   16:12,16 23:2
   25:10 26:13 31:4
   33:24 36:6 40:10
   40:11,14,18 57:13
   64:5,6,6 65:7,9,18
   67:2,9 69:23
expertise  10:6
experts  7:23 8:7
   8:17 9:11,20,24
   10:11,17 11:9,24
   12:16,18 13:8
   17:17 23:18 25:25
   30:19,20 32:4,9
   34:3,10 36:16
   41:23 42:7 46:5
   46:13 47:13 57:12
   65:17 66:12,17
   73:9

expires  76:19
explained  49:20
explaining  65:18
explanation  36:2
   36:23
explore  38:4 47:9
   61:3
exploring  12:8
expressed  59:2
extension  48:11
extensive  21:9
extra  25:11
extremely  53:2
eyeballs  58:23

f

f  1:13
facie  42:1
fact  5:10,23 39:24
   40:11 46:14 55:14
   68:10
factors  55:14
facts  8:8 13:7 17:6
fair  32:25 33:6
   34:4
fairly  18:1 50:11
   63:7
familiar  52:4
familiarity  54:3
far  53:4,7 64:22
fast  58:20 66:1
fda  15:18 24:4,9
   66:9
february  32:13
feel  4:10 28:1
   30:18 47:8 54:17
   60:25
feels  23:6 27:11
   29:3
feet  56:9
felt  13:16

fiber  40:20,21,25
fibers  41:1
field  3:7 15:2
   32:11,15,17 52:4
   72:23
fight  71:20
figure  34:22 35:11
   42:11 61:13
file  59:17 74:12
filed  65:10,10,23
files  43:7
filter  50:23
filters  52:1
finalized  9:13
finalizing  54:17
financially  76:15
find  24:20 41:7
   50:3 51:12 62:19
finding  24:14,15
fine  7:4 61:15
fingertips  29:2
fire  56:10
firestorm  65:15
firm  2:2 15:25
   16:4 31:10
first  23:25 45:12
   45:18 49:7 50:3
   52:22 63:8,11,13
   63:18 64:3,20
five  63:19
fleshed  5:21
flom  3:13
flw  1:3
focus  8:21 9:7 18:5
   30:24 43:4
focused  40:4
focusing  31:25
   39:14
folks  4:9 54:3
   55:17

[follow - help]                                                                                          Page 7

| | | | |
|---|---|---|---|
| **follow**   62:18 71:4 | **frasier**   43:6 | **given**   17:21 21:9 | **good**   6:12 17:21 |
| **followed**   14:17 | **free**   4:10 8:23 9:3 | 22:16 26:3 32:10 | 46:17 53:24 55:24 |
| **food**   11:10 | 24:8 66:11,14,15 | 33:4 54:2 | 55:25 57:20,22 |
| **foregoing**   76:6 | **friday**   74:1 | **giving**   70:23 73:16 | 61:15 |
| **forget**   12:7 54:5 | **front**   30:3 | **glad**   46:22,24 | **gordon**   3:6 |
| **forgive**   11:16 | **fully**   73:22 | **go**   6:11 8:5 10:2 | **gotten**   22:17 |
| 25:18 33:25 53:14 | **further**   16:9 49:19 | 13:12 15:1 16:10 | **great**   58:14 |
| 64:1 | 76:10 | 21:3,10 23:3 | **ground**   7:6 56:11 |
| **formal**   4:8 | **future**   4:10 21:13 | 27:22 40:24 41:22 | **group**   12:8 58:17 |
| **formula**   26:5,18 | **g** | 42:18 45:9 49:7 | **guaranteed**   66:14 |
| 26:20 27:1,18 | | 49:11,20 50:1,4,21 | **guess**   20:25 58:9 |
| 28:2,5 29:4 62:20 | **game**   4:14 60:3 | 50:23 51:7,9,11,20 | **guy's**   37:5 |
| 62:22 64:4,21 | **gather**   48:3 | 51:24 52:20 53:5 | **guys**   25:19 29:12 |
| **formulas**   9:16,17 | **general**   5:4,6,10 | 53:16 54:21 55:1 | **gyn**   30:23 |
| 9:17 25:8 26:20 | 5:25 6:3,8 7:15 | 56:16 57:11 58:16 | **h** |
| 26:25 27:17 41:16 | 8:9 14:23 23:4,16 | 58:20 64:7 70:25 | |
| 41:20 63:4,7 | 23:17 25:24 32:3 | 71:25 74:8,23,25 | **ha**   46:18 |
| **forth**   49:15 50:22 | 33:20 35:21 36:12 | **goes**   5:6 26:9 | **half**   20:23 40:16 |
| 76:9 | 37:22 43:4 44:12 | 48:19 63:18 67:18 | 56:14,14 |
| **forthwith**   23:4 | 64:9 66:18,19 | **going**   4:4,21 5:22 | **happen**   11:11 47:6 |
| **forward**   7:23 23:4 | **generally**   4:19,24 | 6:1 9:22 11:7,8 | 68:15 |
| 26:25 27:23 29:10 | 11:19 46:20 52:5 | 13:12 19:3,9,10,20 | **happened**   44:18 |
| 41:23 66:1 | 60:16 70:25 | 20:7,9,9,13,16,21 | 48:15 |
| **forwarded**   20:16 | **generate**   25:14 | 20:22,25 21:2,3,3 | **happening**   11:10 |
| **fought**   24:8 | **generic**   27:7 | 21:6,10,11,15,18 | **happy**   4:17 30:13 |
| **found**   40:19 55:3 | **genital**   47:5 | 21:22 22:24 23:15 | 46:25 60:14 61:24 |
| 73:1 | **gentleman**   15:23 | 23:17,24 25:12,13 | 62:15,21 |
| **foundation**   34:10 | 34:15 36:14 44:5 | 26:14 27:25 31:14 | **hard**   15:2 51:20 |
| **foundational**   13:7 | 44:6 45:22 | 32:1,6 39:17,23 | 53:1 |
| **four**   38:12 73:20 | **gentleman's**   37:6 | 41:14 50:7 52:6 | **hassle**   4:8 |
| 74:1,8,8,13,22,25 | **geologists**   30:25 | 52:12 53:16 55:11 | **health**   10:22 |
| 74:25 | **gerardo**   53:7 | 55:18,19 56:9 | **hear**   8:11 70:4 |
| **fourth**   15:4 | **gerel**   1:20 | 59:16,20 63:11,16 | 73:11 |
| **fraction**   66:25 | **getting**   4:20 5:5 | 66:8 67:3 68:19 | **heard**   23:8 31:5 |
| **fragrance**   27:3,20 | 17:11 20:2 31:22 | 68:19,25 69:2,19 | 39:3,11 55:8 |
| 28:25 64:21,21,23 | 37:14 62:9 74:13 | 71:16,20 72:8 | 57:16 |
| 65:1,2,5 | **give**   8:14,19 11:4 | **gold**   27:7 | **hearing**   1:5 15:3 |
| **frame**   73:18 | 15:13 20:8 24:3 | **goldman**   2:8 | 39:7 52:11 |
| **frankly**   33:5 50:11 | 29:1 32:25 42:20 | **golomb**   2:5,6 | **heavy**   34:19 |
| 51:2 53:12 65:14 | 42:25 46:23 47:12 | **gonna**   69:20 | **help**   18:22 23:16 |
| | 56:7 58:1 63:4 | | 23:17 32:1 58:9 |
| | | | 58:15 |

**helpful**  25:9 63:15
**helps**  58:6
**hereinbefore**  76:9
**highlighted**  67:19
**hightower**  2:17
**hired**  16:1
**historical**  26:20
**historically**  43:2
**hit**  12:14
**home**  12:4
**hon**  1:13
**honest**  54:1
**honk**  2:5
**honor**  6:17 9:8
   11:12 12:2,15
   16:17 25:16 26:16
   27:18 28:8,19
   29:7 32:12 33:13
   39:2 42:2 46:5
   49:7,16 52:3
   53:22 54:5 55:7
   55:21 57:15 59:19
   59:21 60:2,14
   61:25 62:15,18
   64:19 68:10 71:2
**honor's**  51:8
**hope**  60:25
**hopefully**  61:2
   73:3,3
**huge**  45:7
**huncharek**  15:24
   16:3
**hundreds**  47:23
   56:11
**hygienist**  20:20

**i**

**idea**  20:8 60:6
**identification**
   60:22
**identified**  32:5,12
   72:15 74:15,22

**identify**  49:11
   50:2 54:11 55:2
   62:5 68:18,20
   69:10
**identifying**  72:19
**identity**  10:4 26:3
**igniting**  65:15
**imagine**  39:16,17
   71:19
**imerys**  3:21 13:22
   20:13,15 22:6
   29:15 31:25 34:14
   35:8 37:7 38:17
   41:6,12,18 45:3,4
   45:6 57:20,23
   60:12 61:9 69:18
   71:14 72:24 73:14
   73:17,20 74:2
**immaterial**  25:24
**implausible**  47:6
**important**  8:7
   9:15,20 13:6,9,21
   14:3,15 32:20
   33:2 35:21 46:5
   47:13 52:8
**importantly**  20:3
**impossible**  19:21
**included**  33:11
**including**  7:21
**increased**  13:5
   35:24
**increases**  13:2
**independent**  20:17
   20:24 21:2 36:17
**indifferent**  11:18
**individuals**  38:16
   38:19 60:22
**industrial**  20:19
**industry**  14:2
   15:20 66:10

**influence**  14:25
   15:5,7,20
**influencing**  15:10
**information**  31:1
   34:2,25 36:16
   42:10 54:20 57:19
   58:14 65:19
**ingredient**  15:17
**ingredients**  39:25
   40:14 41:21 64:7
   64:15
**initially**  21:12
**injured**  55:16
**insisting**  48:23
**intending**  37:12
**interested**  17:14
   76:15
**interesting**  27:9
**interestingly**  12:3
**interests**  19:5
**internal**  30:17
**internally**  17:1
**interrogatory**
   63:23
**introduction**
   17:25 18:16
**invariably**  61:1
**involved**  15:16
   34:20,21,24 35:14
   35:15 36:24 39:13
   45:25 46:1,2 50:7
   70:19
**involving**  40:3
**irrespective**  26:1
**issue**  5:6 7:17 15:4
   39:18 46:12 47:10
   47:18 49:2 55:8
   64:22 67:18 70:15
   74:19
**issues**  5:22 6:14
   7:2,7 29:25,25

**31:13 33:1,4**
   38:21 43:25 59:20
   60:13,21 61:13
   70:23 71:1 74:10
**items**  6:17

**j**

**j&j**  18:11 20:13
   22:6 35:13,18
   37:14 38:17 45:8
   48:17 66:13
**j&j's**  29:20 34:25
   35:16 43:16
**january**  1:9 61:10
   61:11 76:19,20
**jersey**  1:2,10
   20:17 31:19 39:12
   76:4,19
**job**  69:1
**joel**  1:13
**johnson**  1:5,5 3:15
   3:15 8:25,25
   13:21,22 16:1,1
   29:15,15 39:8,8
   40:3,3,5,5,8,8,15
   40:15,17,17 41:7,7
   41:8,8,9,9,12,12
   41:18,19
**judge**  4:1 6:12,18
   6:22 7:4,7,8,12,25
   8:1,10,11,15 10:2
   10:3,11,14,16 11:3
   11:14,24 12:3
   14:19,20 15:8
   16:13 17:24 18:3
   18:15,24 19:2,9
   20:8 21:6,17,22
   22:2,8,12,22 23:22
   23:23 24:1 25:9
   25:12,18 26:10
   27:1,5 28:5,9,13
   30:12,14,14 31:5,6

31:7,8 32:4,9,14
32:16,18,19 33:8
33:16 34:7 36:10
37:9 39:4,20 40:9
42:14,20 43:4,14
43:17,20,21,21,22
45:13 46:10,11,24
47:17 48:11,14
49:17 50:13 52:17
54:7,14 55:6 57:3
57:9 58:24 59:7
59:11,24 60:5,16
61:5,8,15,21 62:1
62:17,22,25 63:6
63:14,17,25 64:14
65:6,13 66:2,6,7
66:22 67:6,13,17
67:18,23 68:5,14
68:22 69:9,13,21
70:4,11,16 71:4,8
73:8,12 74:7 75:2
**judgment** 65:24
**julie** 3:11
**july** 43:2 44:8,23
51:15
**jump** 8:13
**june** 31:9 32:7,17
43:2,9 73:20 74:9
74:21,23
**jurisdiction** 70:20
70:21,23
**jurisdictional**
72:15
**jury** 36:11
**justification** 60:23

**k**

**k** 3:19
**keep** 56:9 63:16
**kept** 24:11,19 35:8
**key** 26:21 51:4
52:2

**kick** 17:4
**kind** 36:15 45:2
47:12 62:8 65:2
66:1
**kinds** 57:6,7,9
**knew** 46:19 67:19
**know** 4:14 5:2,8
9:12 11:17 12:6
14:17 17:10 18:12
18:22 19:4 21:12
21:14 22:4 24:25
26:2,23 27:13,15
29:13,24 30:1
31:7,9 34:12 35:9
35:10,10 36:25
37:5,19 39:12,16
39:21 41:4 42:1,8
46:15 47:2,14
48:14,22 49:25
50:18,22 52:6,9,9
57:18 58:24,25
60:24 61:1,17
64:22 66:14,16,23
67:23 69:16,23
72:12 74:16
**knowing** 4:3
**knowledge** 41:19
**known** 29:8 48:9
67:9
**knows** 21:5
**kristie** 2:17

**l**

**l** 3:11,24
**lab** 20:17 21:3
68:15 69:7
**label** 27:2 28:6,10
**labs** 20:23 24:18
69:14
**laid** 17:13
**lament** 52:19

**landscape** 9:3
**lanier** 2:2 32:23
33:3
**lanier's** 31:10
**lapinski** 2:9
**largely** 60:20
**lastly** 14:19
**late** 48:16
**latest** 62:14
**laurence** 3:4
**law** 2:2 15:25 16:4
56:1
**lawyer** 72:9
**lawyers** 55:21
70:19
**lay** 7:6 13:7
**lead** 64:9
**leaf** 39:20,21,21
39:22 41:24
**leave** 59:16 72:12
**left** 8:6
**leigh** 1:18
**letter** 6:16,18,20
6:23 54:8 61:9
**letters** 4:20 5:12
22:14 33:21 59:23
60:8,19 71:2
**leverage** 58:19
**levin** 3:3
**lhg** 1:3
**liability** 1:6
**license** 76:5
**lied** 67:15,20,22
**limit** 14:6 24:11
**limits** 24:19
**linear** 56:17 58:15
**lines** 22:1 73:13
**lion's** 22:18
**list** 5:16 8:4 10:12
13:16 15:11,14
21:8 25:10 30:21

32:10,10 38:8
42:22 43:8,8,10
64:11 68:11 73:9
**listed** 16:10 28:23
60:23 64:16 74:20
**listened** 43:15
**listing** 15:25 29:3
**literature** 12:2
15:1,6,8 23:19
26:1 29:8 31:15
36:17,19 39:22
47:15 64:8 66:18
66:19
**litigants** 20:3,4
**litigated** 9:4 63:12
**litigation** 1:6
13:17 29:9,17,19
30:5,6 52:25
64:25 65:10,11
70:18
**litigations** 38:13
**little** 8:19 24:2,3
40:22 58:16
**lives** 12:11
**llp** 1:20 2:16,19
3:6,9,13,18
**load** 59:17
**local** 12:4
**log** 6:15,15,20 7:2
59:12 60:21 62:2
62:9,12,14 72:25
**logical** 51:16
**logistics** 37:13
**long** 21:6,18 30:12
**longer** 51:4
**longo** 41:1
**look** 9:8 15:11,22
36:19 41:25 44:3
49:8 51:10,10,13
52:1 63:24 64:7
70:6 71:23

**looked**  37:4 40:12 40:18 42:23 69:18
**looking**  11:14 41:5 45:6 57:1 58:11 63:21,22 71:18
**lot**  5:11 20:1 51:5
**lots**  73:4
**louis**  8:20 9:5 10:24,25 33:3,13 33:14,19
**lundy**  2:16,16
**lung**  12:10 40:12

### m

**m**  1:25 2:6,17 3:10 3:25 76:3
**machine**  56:20
**magnitude**  74:19
**mahaffey**  49:15
**main**  4:24
**maintain**  4:6
**majority**  8:20 54:22
**maker**  3:25
**making**  13:15 46:3
**man's**  40:6
**management**  7:14 16:14,15 22:25 41:15
**manual**  53:6 55:4
**manually**  52:20 58:16
**march**  23:2
**mark**  3:19 32:23
**market**  26:8
**marketing**  1:5
**master**  1:5 23:9
**match**  41:11 49:22 51:14
**matching**  25:7
**material**  50:3 51:5

**materials**  29:18 49:24 52:10 54:23
**matter**  39:24 40:1 40:23 64:8
**matters**  42:9 58:18
**mccarthy**  34:15 36:14,20 38:5,18 44:7,9,16,17 45:22
**md**  1:3
**mdl**  9:21 19:6,25 23:12 24:1 29:10 29:24 32:24,25 34:8 70:23
**meadow**  2:3
**meagher**  3:13
**mean**  8:9 17:9 22:13 29:9 33:13 38:3,4,5 44:5 45:22 51:14 53:5 53:7,8 62:1 66:22 71:12 75:1
**means**  28:14 58:3
**meant**  18:8
**mechanism**  49:3
**mechanisms**  33:4
**medical**  36:17,18 37:25 45:11
**meet**  50:17 60:15 61:10
**meeting**  23:25
**memo**  41:10 49:15
**mention**  54:7
**mentioned**  12:25 32:6 59:13
**mesothelioma**  40:4,6
**metals**  34:19
**metaphor**  33:25
**methvin**  1:17

**michelle**  1:21
**microscope**  70:7
**mid**  8:25 66:21
**middlesex**  40:1
**miles**  1:17
**million**  56:19,20
**millions**  40:25 53:11
**mind**  5:21
**mine**  13:23 14:12 35:9
**mined**  28:16
**mines**  26:11 34:23 35:12 36:25 37:14
**minimize**  52:1
**mining**  34:21
**minute**  5:9 27:19 29:1 45:13 73:8
**minutes**  15:4 39:3
**misleading**  58:2
**missed**  15:4
**missing**  27:12
**mississippi**  60:3,4
**missouri**  32:15,16 65:12 70:18 72:15
**mistake**  65:20
**mistaken**  14:21
**mixed**  33:25 56:15
**mixing**  22:2
**mole**  23:8
**monday**  1:9
**month**  23:12
**months**  4:5 30:1,2 51:2,3 54:25 57:25 68:11 69:24 69:25
**moring**  16:1,2
**morning**  40:1,25
**motion**  39:7 65:23 65:25

**motto**  32:21
**move**  18:24 49:24
**moving**  5:5
**multiple**  12:23 63:17 71:2,2
**muscat**  15:23 16:3
**museum**  25:1

### n

**n**  1:15 3:1,1,1,24
**name**  12:7 44:5,6
**named**  12:24 15:23 34:15
**napoli**  2:11
**narrowed**  50:19
**necessarily**  19:19
**necessary**  17:6 37:2,3 50:24
**need**  5:5,7,19 8:7 9:12 11:4 12:19 13:12,14,16 14:17 16:19,20,21,24 17:2 21:16 24:4 24:21,21,23 25:13 26:13,25 31:2,8,11 31:13 32:2 33:25 34:9,23 37:22 38:3 40:17 42:18 45:8 47:18,19 48:3 52:1 55:24 65:8,18 67:11,14 73:15
**needed**  65:24
**needless**  48:1
**needs**  5:21
**negotiated**  20:11 52:23
**neither**  76:10,13
**never**  9:6 23:8 29:23 34:5
**new**  1:2,10 20:17 22:9,13,15,18,19

[new - person]                                                                                    Page 11

29:23 31:19 34:2
39:12 40:10 48:21
49:4 50:3 56:15
64:25 76:4,19
**newark** 1:10
**newspaper** 12:4
**nickel** 9:11 11:19
12:25 13:2 18:18
23:8 28:23 64:12
**nicotine** 39:18
42:5
**nilly** 38:8
**nonresponse** 58:8
58:12
**normal** 14:7
**notary** 76:3,19
**notifying** 69:17
**number** 4:2 15:12
16:21 19:10 20:14
28:18 54:11 60:24
61:2 62:6 63:21
68:2,2 74:17,19
**numbers** 4:9
48:21 55:5 56:8

**o**

**o** 1:13 3:1,24
**o'dell** 1:18 6:12
7:3,5,25 8:3,13,16
10:10 11:12,22
12:1,13 15:5
16:17 17:13 19:8
22:1,9,20 25:16
26:16 27:4,9,11,14
28:8,11,15 30:13
42:17 45:1,3
54:22 59:13,19
62:18,23 63:1,16
63:22 64:11,17,18
65:3
**object** 73:19

**objected** 48:10
53:13,15
**objecting** 50:16
**objection** 53:18
**objections** 5:17
6:15 73:21
**obtain** 24:16
**obviously** 4:17
63:3 73:13
**ocr'd** 51:23
**october** 16:19 17:4
30:4,4
**offended** 67:24
**offense** 67:21
**offer** 68:4
**offered** 33:24
**offering** 8:17
**office** 20:15
**oh** 41:24 63:14
70:6
**okay** 4:16 6:1,11
7:4,8 10:16 16:14
32:18 36:7 39:13
43:6,10 47:17
55:6 58:24 59:7
59:11 62:17 66:6
68:5,22 70:11
71:23 73:6,11
75:2
**oklahoma** 4:14
**old** 49:4 56:8
**once** 20:5 21:17
24:16
**oncologists** 30:23
**one's** 63:3
**ones** 21:11 45:18
68:21 74:6,23
**open** 13:19
**operation** 55:12
**opine** 8:8 30:20

**opining** 12:17,18
**opinion** 9:21 11:5
**opinions** 8:17 9:13
13:8 17:17
**order** 8:4,8 9:20
14:8 16:14,15
19:17,24 21:13
22:25 25:14 41:15
42:16 45:2 68:9
68:12,15 69:3,10
**ordered** 10:3
**orderly** 17:22
**orders** 7:14
**ordinarily** 62:1
**organization**
10:22 12:7
**organize** 58:15
**original** 25:4
**originally** 60:4
**ou** 60:2
**ought** 46:13
**outlined** 4:23
14:16
**outraged** 67:24
**outstanding** 50:15
72:2
**ovarian** 11:21
13:3,5 20:2 28:21
31:17 32:22 46:9
46:21 64:10 65:4
67:4,10,12
**ovaries** 47:4,5
**overlap** 59:5
**overly** 50:21
**overwhelming**
54:22

**p**

**p** 1:15,15,18 3:1,1
3:24
**p.a.** 2:8

**p.c.** 1:17,24 2:5
**p.m.** 1:11 75:5
**page** 14:22 50:5,5
54:9 64:20
**pages** 56:12,13,14
63:17,19,19
**paid** 16:5
**papers** 17:10
29:20 47:22 48:17
**paragraph** 73:21
**parenthetically**
37:5
**parfitt** 1:21 6:19
8:22 10:9,13,19
11:23 17:8 18:2,6
18:19 19:1 25:11
28:12 38:11
**part** 5:20 7:25 8:2
8:22 12:17 14:23
18:23 28:25 36:10
48:18 49:9 65:4
72:25
**participant** 34:17
**particular** 15:1,3
18:11 36:25
**parties** 15:22
50:15 69:6 76:12
**party** 53:8
**pejorative** 47:21
**people** 10:17
30:24 38:9 43:24
45:12 52:3 71:20
**percent** 58:10,12
66:15 67:1,2,11
**percentage** 30:15
**perfect** 46:23
**perfectly** 45:24
**performed** 22:6
**peritoneally** 47:3
**person** 36:15
41:19

[personal - product]                                                                                     Page 12

personal 15:14
perspective 41:3
  42:4
ph 40:20
pharmacia 14:2
phonetic 10:21
  11:2
physical 22:5
physicians 9:1
pick 21:11 60:5
piece 50:13
piecemeal 74:3
pieces 25:1 50:9
pipeline 57:24
pisano 1:13 4:1
  6:18,22 7:4,8 8:1
  8:11,15 10:2,11,14
  10:16 11:3,14,24
  12:3 16:13 17:24
  18:3,15,24 19:2,9
  20:8 21:6,17,22
  22:8,12,22 23:23
  25:9,12,18 26:10
  27:1,5 28:5,9,13
  31:6 32:4,9,14,16
  32:18 33:8,16
  39:4 43:17,21
  45:13 46:10,24
  47:17 48:14 49:17
  52:17 54:7,14
  55:6 57:3,9 58:24
  59:7,11,24 60:5,16
  61:5,15,21 62:1,17
  62:22,25 63:6,14
  63:25 64:14 65:13
  66:2,6,22 67:13,17
  67:23 68:5,14,22
  69:9,13,21 70:4,11
  70:16 73:8 75:2
place 6:7 20:21
  33:23 39:19 76:8

placitella 1:24,25
  29:11 39:2,5
  45:14 54:6
plaintiff 33:9 39:8
  69:17
plaintiff's 5:12,16
  40:11 48:17
plaintiffs 2:21
  7:20 17:11 20:1
  20:18 23:2,11
  33:22 34:8 48:9
  48:13 49:9 51:24
  52:19 53:3,10
  54:3,11 55:10
  65:8,16 68:17,24
  70:24
plan 71:21
plant 14:13
plausibility 35:23
  39:9,25 42:9,11
playing 23:7
please 6:9 63:24
pllc 2:14
plucked 38:9
plunkett 10:19,24
  11:1
plus 27:20
point 12:14 13:1
  28:13 33:17,20
  43:20,22 70:12
points 51:1
policy 67:7
pool 58:4
portions 20:6
portis 1:17
position 17:5
  22:21 25:20 44:23
  49:8 50:20 51:6
  53:4 71:16 72:4
  73:14,14 74:2

positions 46:6
possible 34:24
  47:3 58:21
powder 1:5 9:10
  12:11,16 18:8,10
  18:23 19:14 26:23
  27:2 28:17 40:7
  46:7
practices 1:6
preference 61:4
  61:19
preliminarily
  65:14
premature 61:12
prepared 38:6
  44:22
preparing 41:4
presence 12:9
  35:19 36:1
present 61:20,22
  61:23
presentation
  17:22
presented 19:24
presume 17:8
pretty 28:2 37:7
  68:8 71:14
previous 22:5
previously 17:15
  30:6 66:9
prima 42:1
primarily 9:4
primitive 64:2,3
prior 46:10
privilege 6:15,15
  6:20 7:2 59:12,20
  60:21,23 61:6
  62:2,5,6,9 65:16
  72:25
privileged 73:2

privileges 60:18
probably 20:3
  21:21 51:3 60:25
  63:8
problem 59:2
problems 65:21
procedural 33:4
procedure 70:8
proceedings 75:4
  76:7
process 13:24
  14:24 15:21 17:9
  17:18,20 20:6
  21:1,1 39:13
  48:24 50:7 51:19
  51:22 52:8,12
  54:9,16 57:13
  59:22 69:8 72:24
  73:1
processed 28:17
processing 13:24
  14:12
produce 31:4 50:5
  50:25 51:18 57:12
  65:17 70:13 71:21
produced 9:14
  13:11 16:8 22:10
  26:21 29:4,19,23
  30:4 37:7 42:24
  44:2,14,17 45:5,8
  51:6,17 52:10
  54:23,24 59:5
  70:22 71:21 72:4
  72:20
producing 51:15
  53:12,13 59:8
  71:15
product 8:18,23
  9:2,12,19 10:1
  12:20,23 13:22
  14:6,7,9,11,15

18:11,23 19:19 23:13 26:6,8 28:20,22,25 31:16 35:2,3,16 36:2,21 39:25 40:5 41:7 42:3 45:23 46:20 62:23 64:9,15,23 65:3,4 66:21 67:8 67:16 68:3 70:10

**production** 13:24 16:11 26:19 29:15 41:8 43:15 48:5,7 49:12 51:13 52:18 54:4,21,24 55:9,25 56:5,7 57:20,20,21 57:24 62:3 69:19 71:17 72:2,13,13 73:3

**productions** 62:14

**products** 1:5,6 12:16 13:9 15:14 18:8,10 19:15 24:6 29:3 30:16 35:13,19,20 36:3 40:15,16 41:2,14 46:7,8

**promulgated** 24:5

**proof** 36:10

**proportionality** 55:14

**proposing** 49:3

**protected** 27:24 28:1 30:9

**protocol** 5:20 6:4 19:24 20:5,12 51:19 52:23 53:24 54:19 69:6 70:8

**protocols** 13:25 14:16 52:25

**prove** 24:23 31:16 31:19,20 35:22

36:12,19 39:8

**proven** 18:21

**provide** 36:15

**provided** 35:12 42:22 44:21

**provides** 36:2

**providing** 34:25 35:15

**public** 31:1 76:3 76:19

**publication** 15:16

**published** 14:25 15:6,7,10,18 16:2 36:17,18

**pull** 27:4,16,18 50:24

**pulled** 42:21

**pulling** 50:8

**pure** 18:12 28:16

**purest** 34:23

**pursuing** 23:14

**put** 5:2 10:12 25:17 28:17 41:3 41:15 43:13 44:20 46:13 50:8 52:3 52:14 53:22 56:19 58:18 66:20

**puts** 26:8

**putting** 11:15 72:25 74:19

**q**

**quantity** 6:5 19:2 19:5

**quartz** 28:24

**question** 25:24 31:15 42:16 46:23 51:8 61:18

**questions** 19:17

**quite** 33:23

**quoting** 27:25

**r**

**r** 1:13,15 2:9 3:1 3:24

**r.p.r.** 76:4

**raise** 6:13 7:7 32:21 60:21

**raising** 7:2 24:11 24:19

**ran** 38:8

**rational** 57:23

**read** 7:13,13 27:2 30:10 35:16 45:15

**reading** 22:13 73:9

**ready** 31:11 34:5 40:23 43:23 44:10

**real** 51:4 59:21

**realized** 29:14

**really** 5:21 7:5 23:10 34:7 38:6 52:2 66:1

**reason** 31:8 35:20 53:24 74:11

**reasons** 4:2

**reath** 3:9

**received** 5:14,18 10:14 62:14

**recipe** 28:2

**recognize** 4:8

**recognizing** 51:17

**recollection** 17:24

**recommendations** 46:3

**record** 26:18 27:24 28:4 30:11 37:9 66:7

**recorded** 22:7

**records** 25:22 38:1 38:3

**recovered** 17:1

**redo** 38:23 49:21

**rees** 3:6

**reference** 9:6

**refine** 61:1

**regard** 5:8 15:6 26:17 32:2

**regardless** 57:11 66:24

**regulate** 24:9

**regulated** 66:10

**regulations** 66:9

**regulatory** 10:20

**reinvent** 34:1

**rejected** 65:14

**relate** 5:24,25 12:12 46:19

**related** 13:4 14:25 26:7 27:11 29:16 44:15,17,21 58:18 60:21 70:22

**relates** 5:24 12:15

**relative** 35:24 76:11,13

**relatively** 18:17

**relevant** 29:25 33:5

**relied** 9:24 15:18

**rely** 17:7 23:18 25:25 36:16 46:5 66:19

**relying** 66:13,17

**remark** 46:11

**remember** 37:10 46:21 71:7

**remembers** 49:16

**reminder** 38:12

**render** 11:4

**report** 21:19

**reports** 7:24 8:5 11:9 16:12,16 17:5 23:2,21

26:14 31:4 57:12 65:7,9
**represent** 32:22
**representation** 44:1
**representations** 18:10
**representative** 4:12 14:14 20:19
**representatives** 4:15
**request** 42:23 74:24
**requests** 50:18 71:22
**require** 53:1
**required** 24:5
**requires** 58:23
**requiring** 53:25
**research** 45:20
**resetting** 8:10
**resolve** 49:2
**resolved** 7:17,18 23:5
**respect** 49:6
**respective** 20:22
**respond** 48:3 65:25 72:23
**responding** 53:8
**response** 42:23 61:14 63:22 71:22 72:2
**responsible** 40:6 69:17
**responsive** 51:16 58:5,6,7,11,12,13 72:5
**result** 30:15 70:20
**results** 9:9,15 37:17 69:2

**retired** 1:13
**retrieve** 58:7
**reverse** 19:17
**review** 15:17 47:19 53:11 56:17 57:22 58:15 61:13
**reviewing** 37:19 46:2
**richard** 2:3,6 3:14
**right** 7:10 11:6,17 17:18 19:7 22:23 26:10 27:5,10 28:7 29:22 33:11 42:7,8 47:17 58:11 60:7 69:1,1 70:16
**ripe** 60:14
**risk** 13:3,5 35:24
**rite** 27:7
**road** 44:12
**roberts** 2:15 55:7 57:7,15 59:14
**rolling** 62:12 71:17
**roth** 1:24
**rule** 24:5,8 55:12 56:3
**rules** 7:6
**run** 51:25
**runs** 37:12,13

**s**

**s** 1:15 2:15 3:1,4 3:24,24
**safeguarded** 6:6
**sales** 1:6
**sample** 11:21 20:12 21:12,21,23 25:23 69:19
**sampled** 14:10,11 14:12

**samples** 19:18 20:6,14,16,20,23 21:2,8,15,19 22:3 22:5 23:15 24:14 24:16,21 35:5,6,8 68:7,11,18,23 69:5
**sampling** 14:16 68:6
**sargon** 11:2
**sat** 55:17
**satisfy** 39:1
**saturday** 6:21,23 60:10
**saw** 12:6 40:12,15
**saying** 4:7,12 8:3 10:7 13:14 64:14 65:3 71:23
**says** 27:2,6,6 29:7 37:2,19 45:1,3 64:20
**scanned** 51:23
**schedule** 48:7 73:18
**science** 26:1 31:23 31:23,25 43:25 45:25 46:2 71:1
**scientific** 23:19 29:8 31:15,18 43:11 44:22 45:21 47:14 52:8 64:8 74:10
**scientist** 34:16 37:3,10
**scientists** 32:1 47:9
**scope** 12:18 50:2 50:14 55:13 56:2 56:5
**scroll** 64:20
**scurrilous** 67:25

**search** 58:2,3,6,7,8 58:21
**searchable** 51:24 58:14
**searches** 53:6
**second** 5:10 44:7
**secondly** 19:12 53:3
**sedran** 3:3
**see** 4:22 5:4 9:9 15:24 27:19 29:5 30:21,21 52:21 62:19 71:24,25
**seen** 6:23 26:19 29:12 35:24 52:7 52:13 73:9
**self** 24:9 66:10
**send** 4:15 11:9
**sending** 20:6,18
**sense** 4:5,19 25:13 59:22 62:20 63:4
**sensibly** 5:22
**sensitive** 14:4
**sent** 5:17 6:20,22 6:24 43:2 59:22 60:8
**sentence** 7:1
**separate** 35:5,7
**september** 10:3 14:20 16:18 17:4 44:14 50:13 67:19
**served** 47:20
**set** 6:14 29:14 35:8 54:20 55:9 70:24 74:9 76:9
**sets** 35:5
**seven** 10:13 65:12
**share** 22:18 45:24
**shared** 60:20
**shares** 20:22

**sharko** 3:10 10:15 19:16 22:24 23:1 25:20 26:4,11 27:10,22 29:2,7 30:9 35:7 42:20 44:11 48:1 49:20 60:10 63:10,24 64:18 65:6,22 66:4 67:21 68:1,7 69:25 70:12,17 71:13,19 72:6
**sharko's** 54:8
**shkolnik** 2:11
**shortcut** 71:1
**shot** 37:21
**show** 9:9 12:22 19:19 24:17 26:5 29:4 30:11,13 42:2 44:12 62:21
**showed** 63:17 64:4 64:19,19
**shows** 13:2 30:15
**side** 20:7,22 51:14 51:14 55:21 57:17 62:9
**sideshow** 65:21
**signature** 76:17
**signed** 20:4 68:16 69:10 72:6
**significance** 41:2
**significant** 16:7 49:14 53:21 54:11
**silica** 28:24
**silver** 3:19 31:5,7 32:8 33:17 34:12 37:1,9,25 61:8 73:12
**simitiki** 10:20,23
**simply** 7:19 65:20
**single** 32:23

**sir** 19:8 20:10 23:23
**sit** 25:13 42:13
**situation** 6:1 44:20
**six** 63:19 65:12
**skadden** 3:13
**sky** 38:10
**slate** 3:13
**sliver** 59:15
**slow** 51:22
**small** 59:14,15
**smith** 38:1
**smithsonian** 6:6 35:6
**soileau** 2:16
**somebody** 11:10 46:24 51:13 66:22 66:24 69:16
**somewhat** 4:22 18:19
**soon** 68:9,15,17,20
**sophisticated** 70:5
**sort** 8:10,14 9:4 16:25 18:22 22:2 23:6 25:14 49:3 53:13
**sources** 49:21
**south** 2:16
**speak** 18:20 29:10 48:6,12
**speaking** 4:24 46:20 60:17
**speaks** 55:15
**special** 1:5
**specifically** 14:2 15:11
**spent** 34:13 53:11
**spin** 48:2
**spitzer** 2:8
**split** 20:21 69:5

**spoken** 48:3
**spreadsheet** 21:10 54:10,15 58:25 59:8,18
**squads** 4:13
**st** 8:20 9:5 10:24 10:25 33:3,13,14 33:19
**stage** 6:14 13:18 45:10
**staged** 16:25
**staging** 17:20
**stamp** 48:21
**stand** 46:18
**standard** 14:6
**standards** 14:1 31:24 35:18
**start** 7:10,11 17:18 45:3 57:13,23 58:4 74:1,22
**started** 4:20 24:10 24:18 55:9 56:8 56:10 57:17 63:11 73:19
**starting** 17:9 23:12
**starts** 62:7
**state** 20:2,4 31:19 32:16 39:5 70:18 76:4,19
**statement** 49:1
**states** 1:1
**stating** 38:22
**status** 14:21 71:8
**stayed** 39:11
**steady** 55:20
**steering** 2:21 33:9
**stenographically** 76:7
**step** 10:3 18:16 21:1,1 38:23

**steven** 2:12
**stiff** 37:4
**stipulate** 37:18
**stood** 45:14
**stopped** 24:13
**stored** 49:24
**straggle** 71:10
**stragglers** 72:18
**strong** 67:21
**strongly** 28:2
**studied** 47:10
**studies** 9:23,24 35:25 45:21
**study** 16:2,4
**stuff** 18:18 25:21 25:22,23 31:8,12 49:4,4 52:13 53:12 57:6,8,9 62:9
**styron** 76:3
**subject** 19:3 58:17 71:6
**submission** 73:24 73:25
**submit** 26:13 66:4
**subsections** 5:1
**subset** 59:15
**substance** 6:4 19:7 66:25
**substantial** 8:6 37:7
**successfully** 38:24
**sudden** 33:25
**sufficient** 36:11
**suggest** 61:9 64:4
**suggested** 17:10
**suggesting** 17:19
**suggestion** 71:9
**suitably** 67:24
**summarize** 7:19

**summary**  10:6
  45:23 65:23
**sun**  22:16
**superior**  40:2
**supply**  37:12,13
**support**  43:25
  45:12 47:15,16
**supportive**  46:6
**suppose**  7:19
  63:25
**supposed**  50:17
**supposedly**  29:16
**supreme**  39:12
**sure**  19:1 49:6,16
  62:13 71:5 72:22
**susan**  3:10 27:15
  72:11 76:3
**suspect**  27:23

**t**

**t**  2:20 3:1,14,24
**table**  8:10 41:4,16
  41:17 55:15,22
**take**  7:21 8:4 11:8
  16:21,24 17:2
  20:22 21:7,18
  22:20 27:19 37:21
  38:1 41:17 42:19
  43:23 44:10 45:10
  45:11,12,15,19
  50:10 51:14 60:5
  67:21 69:2,7,14,20
  69:25 71:12 72:8
  72:10
**taken**  7:16 17:12
  18:15 51:4 76:7
**takes**  21:20 56:21
  70:2
**talc**  3:21 6:5 12:5
  12:9 19:2 24:5
  27:20 28:14,14,15
  28:16,16,18 34:18

34:19,24 35:12,16
  36:23 37:14 40:12
  40:21 42:3,5 46:7
  47:3
**talcum**  9:10 12:10
  12:16 18:8,10,23
  19:14 26:23 27:2
  40:7 46:7
**talk**  4:22 6:1 38:6
  39:20 59:11
**talked**  14:22 18:7
  28:19 38:14
**talking**  35:7 38:14
  41:6 57:4 60:17
  60:18 66:12
**talks**  30:6
**tar**  39:18
**tars**  42:6
**task**  55:5
**team**  33:13,14,19
**technical**  37:11
**technologies**  58:20
**tell**  4:21 6:9 11:6
  21:23 43:6 49:4
  50:4 57:21 63:20
  64:8 68:5,25
**tells**  11:11
**terms**  12:13 19:22
  30:6 48:5 50:24
  53:10 72:1
**tersigni**  3:11
**test**  9:9 21:13,15
  21:18,18 24:6
  26:9,11 30:15
  35:18 37:17 70:6
**tested**  40:14 41:14
**testified**  10:17,23
  10:24
**testify**  41:1
**testimony**  33:24
  36:20

**testing**  6:4,4,4
  9:15 13:21,24,25
  14:4 18:21,25
  19:4,11,13,18
  20:24 22:3,6
  23:15 24:4,10,13
  24:14,18 25:7,23
  26:7 30:24 34:18
  34:20 36:22 41:17
  41:20 68:6,15,19
  69:8 70:9
**tests**  26:12
**texas**  4:14 60:1,2
**text**  51:24
**thank**  62:15 63:15
  72:22 73:6 75:2,3
**theory**  23:14
  28:20
**thing**  6:13 10:1
  15:24 39:19 40:19
  41:25 42:15 47:12
  51:16 58:1,21
  73:13
**things**  15:8 18:23
  22:3 26:17 28:19
  28:23,24 35:22
  36:6,24 46:4 47:1
  47:8 50:9 52:2,6
  57:18 58:4 63:8
  64:13,24 65:13
  71:24 72:1
**think**  5:20 7:11
  11:20 16:18 17:3
  17:13,21 18:9
  19:17 20:14 22:12
  23:12 25:5 26:20
  27:10,14 28:1,3
  29:21 32:12,19
  33:17,20 34:4
  37:11 38:14,21,21
  38:24 42:18 49:20

50:11 51:4 53:21
  57:15 60:11,14
  61:22 62:13 65:15
  70:25
**thinking**  23:14
  64:2,3
**third**  14:10 15:22
**thirty**  10:13
**thornton**  3:7 15:2
  32:11,15,17 72:23
**thought**  4:5,18
  10:7 17:21 44:9
  49:25 54:1 63:10
  65:14,19,24
**thousands**  47:23
  47:23 55:15,16
  56:3,12
**three**  4:24 5:4 6:8
  21:1 24:12 44:20
**tici**  34:7 37:16,24
  42:14 43:19,22
  45:17 46:22 47:1
  71:4,23 72:10,18
  72:21 73:6 74:7
**tici's**  57:1
**time**  13:12 15:3,3
  29:12 31:2 33:23
  34:13 38:15 42:13
  42:18 44:8 45:5,9
  46:17 47:19 48:4
  50:6,10,12 51:11
  53:21 55:4 56:21
  56:23,24,24 63:13
  69:9 70:3 73:17
  73:18 76:8
**timely**  57:21,22
**timing**  49:7 55:8
**tisi**  1:22
**tissue**  40:12
**tobacco**  39:16,17
  41:24

today  4:25 7:6
    41:5 46:25 60:14
told  8:25 69:16
    74:20
tolerance  67:7
topics  6:8
total  30:7
touched  66:23,24
toxicologist  35:1
    45:20
toxicologists  30:22
    43:11,24 45:10
toxicology  64:5
trace  11:17,19
tract  47:5
transcript  76:6
transcripts  7:13
travel  4:16 47:4
traveling  4:13
treated  32:25
tremendously
    51:22
tremolite  30:7,16
    40:13
trial  8:21 10:23,25
    11:1,2 31:9,11
    33:13,14,19 34:6
    46:17 47:2
trials  8:20,21 9:5
    10:25
tried  32:6 55:17
trip  68:14
true  29:9 33:8,9
    47:11 76:6
try  25:17 31:12,23
    34:8 35:22 36:5
    49:11,22 50:1,17
    51:20 55:2 71:1
trying  22:10 33:22
    34:22 36:13 38:22
    38:23 39:1,16,17

41:11 50:8 55:22
    70:13
turn  69:13
turned  47:24
    48:15,20
turning  68:23
two  10:19 21:1,21
    22:1 23:12 35:5
    39:3 44:16 58:1
    68:2 72:12
type  13:20,21,25
    30:7,25 52:24
    57:6
typically  51:25

**u**

u  3:1
u.s.  14:2
ultimately  36:11
uncomfortable
    29:3
understand  12:20
    14:8 19:23 20:1
    24:25 33:16 35:15
    63:2 67:25 75:1
understood  43:3
united  1:1
universe  41:13
unusual  34:8 62:8
    74:17
upper  14:6
use  35:13 47:20
usual  15:24
usurp  8:10
utilize  9:16
utilized  9:18

**v**

version  48:13
versus  58:12
view  59:1

views  8:14
vitro  9:23
volume  48:16

**w**

w  2:12
wait  25:18 27:22
    27:22 43:14 45:13
    57:3
want  4:11,15 7:21
    8:10 11:6,12
    15:19 16:5 17:2
    19:6 21:11 31:22
    35:4 42:15 45:10
    45:11,11,18,19
    47:9 53:5 61:21
    62:20 63:3 68:18
    68:21 69:5,11,19
    69:22,24 71:5
    72:9,11 73:22
    74:2,4,6
wanted  6:13 8:11
    26:22 43:4 61:3
    61:19 72:21 74:9
wants  7:17 45:14
warehouse  51:9
warehouses  49:24
    50:8
warren  2:20
way  4:7 11:15,15
    17:16 20:12 22:11
    44:6 49:22 50:19
    50:20 61:22 67:3
    73:19
ways  49:25
we've  16:10 17:21
    18:7 19:23 34:13
    37:3 45:18 48:22
    52:13 53:11 56:24
    71:21 74:13
weber  49:15

week  19:25 21:21
    59:23 60:9
weeks  44:21 58:1
    72:12
welcome  4:17
went  11:1 19:14
    42:23 60:12 73:25
whack  23:8
whatever's  31:16
wheel  34:1
wilentz  2:8
willing  45:24 55:1
willy  38:8
winning  55:23
withheld  61:6
withholding  62:4
witness  8:4 32:1
    37:8 44:18,19,19
witnesses  7:22
    10:5 15:14,15,19
    16:25 23:17 25:10
    26:2 31:3 37:3
    38:7,9 42:21,25
    43:7,12 44:4,22
    45:4 73:20,23,24
    74:10
wolfson  7:12 10:3
    14:20 15:8 24:1
    43:22 46:11 50:14
    67:18 71:8
women  32:22
    55:16 56:4
won  24:8
word  11:17 28:14
    66:13
words  14:11 23:9
work  20:2,10,13
    22:11 33:10,15
    45:23 53:10 60:25
workable  61:2

**[worked - zero]**                                    Page 18

| |
|---|
| **worked**  10:21<br>  56:10<br>**workflow**  58:9<br>**world**  9:1 10:22<br>**write**  16:14,15<br>  22:24<br>**writing**  15:16<br>**written**  70:8<br>**wrong**  11:18 66:18 |
| **x** |
| **xio1704**  76:5 |
| **y** |
| **yeah**  33:8 52:13<br>**year**  5:15 16:19<br>  17:4 25:2 35:10<br>  43:24 55:9,25<br>  56:7,8<br>**years**  9:18 12:23<br>  24:12 34:16 35:13<br>  36:21 37:4 49:22<br>  49:23 55:17 56:6 |
| **z** |
| **zero**  67:7,8,11<br>  74:4 |