# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To All Cases | MDL Docket No. 2738 |

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S RESPONSE TO PLAINTIFFS' STEERING COMMITTEE'S OBJECTION TO PROPOSED CASE MANAGEMENT ORDER OF THE SPECIAL MASTER RELATING TO DISCOVERY AND DEPOSITIONS**

DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
(713) 227-8008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000
*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., now*

*known as Johnson & Johnson Consumer Inc.*

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................2

ARGUMENT......................................................................................................6

I.    THE SPECIAL MASTER'S PROPOSED CMO PROVIDES FOR DISCOVERY THAT IS "PROPORTIONAL" TO THE NEEDS OF THE CASE. ...................................................................................................7

II.    THE PSC'S NEW ARGUMENTS REGARDING THE SCOPE OF THE 30(B)(6) DEPOSITIONS ARE UNTIMELY AND UNPERSUASIVE. ..................................................................................10

CONCLUSION ................................................................................................13

## TABLE OF AUTHORITIES

## CASES

*Bowers v. National Collegiate Athletic Association*,
    No. 97-2600 (JBS), 2008 WL 1757929 (D.N.J. Feb. 27, 2008)......................8

*Convolve, Inc. v. Compaq Computer Corp.*,
    No. 00Civ.5141 (GBD) (JCF), 2004 WL 1944834
    (S.D.N.Y. Sept. 1, 2004)............................................................................11

*Dunkin' Donuts Franchised Restaurants LLC v. Mehta*,
    No. 07-0423, 2007 WL 2688710 (W.D. Pa. Sept. 11, 2007) ......................11

*Engage Healthcare Communications, LLC v. Intellisphere, LLC*,
    No. 12-787 (FLW) (LHG), 2017 WL 6539242 (D.N.J. Dec. 21, 2017).........6

*In re Hardieplank Fiber Cement Siding Litig.*,
    No. 12-md-2359, 2014 WL 5654318 (D. Minn. Jan. 28, 2014)....................6

*Nippon Steel & Sumitomo Metal Corp. v. Posco*,
    No. 12-2429 (SRC), 2014 WL 1266219 (D.N.J. Mar. 26, 2014) ..................6

*World Triathalon Corp. v. Dunbar*,
    539 F. Supp. 2d 1270 (D. Haw. 2008).......................................................11

## RULE

Fed. R. Civ. P. 53(f)(5) .......................................................................................6

The Special Master's Proposed Case Management Order provides that the Plaintiffs' Steering Committee ("PSC") may depose corporate representatives of each defendant in this proceeding regarding a number of topics that plaintiffs identified as being relevant to their experts' general causation opinions. (*See* Feb. 6, 2018 Letter from Hon. Joel A. Pisano to Counsel ("2/6/18 Special Master Letter") at 3-4, ECF No. 4173; Proposed Case Management Order of the Special Master ("Proposed CMO") ¶ 3, ECF No. 4173-1.) This proposed order should be affirmed.

The thrust of the PSC's objections to the Proposed CMO is that they should be entitled to take more depositions of more people on more topics, including topics that they never raised before the Special Master. These challenges are meritless.

*First*, the PSC's assertion that the discovery permitted by the Special Master is not "proportional" to the needs of the case – and that plaintiffs should instead be permitted to depose **62 different fact witnesses** who the PSC claims may have information relevant to general causation – is absurd. Simply asserting that more than five dozen different witnesses should be deposed because they *may* know something tangentially relevant to general causation is the very antithesis of a proportional discovery request.

*Second*, there is no basis for the PSC's complaint that the scope of the Rule 30(b)(6) depositions outlined in the Special Master's Proposed CMO is too narrow. Indeed, it was *the PSC* that identified the four areas of deposition inquiry ultimately adopted by the Special Master. While the PSC now points to three additional "categories of information" that it claims must be explored, these topics were never raised with the Special Master. As such, the PSC cannot be heard to complain that the Special Master failed to include them in the Proposed CMO. In any event, the new topics the PSC identifies are not relevant to plaintiffs' experts' ability to opine on general causation because they relate, at best, to defendants' *knowledge* and *conduct* – not the actual state of science. And even if they were relevant, the PSC's own brief makes clear that it already has document discovery capable of informing plaintiffs' experts' opinions on these issues.

## BACKGROUND

Over the course of this litigation, the PSC has requested – and defendants have produced – more than a million pages of documents on a wide range of topics that plaintiffs have asserted are relevant to this litigation. The breadth of defendants' production was driven both by the broad scope of the PSC's discovery requests and by defendants' attempts to resolve the PSC's repeated complaints that defendants had not produced enough materials or provided them in a convenient

format.  (*See generally* Jan. 19, 2018 Letter from Susan M. Sharko to Hon. Joel A. Pisano (attached as Ex. 1 to the Certification of Julie L. Tersigni, Esq.).)

Despite defendants' substantial document production, and notwithstanding the Court's repeated statements that expert discovery on the issue of general causation should be the primary focus of the MDL proceeding at this point (*see, e.g.*, 12/7/17 Tr. 18:25-19:1), the PSC has continued to press for additional fact discovery in the form of depositions of defense witnesses.  For example, at the December 7, 2017 status conference, the PSC argued that depositions of fact witnesses needed to be taken before it could whittle down its list of 37 experts and provide expert reports on the question of general causation.  At the time, the Court indicated its belief that such depositions were not relevant to general causation because the PSC "know[s] what the studies are," and the science would not be "changed by any of the discovery" it sought.  (*Id.* 18:23-19:14; *accord, e.g.*, 9/6/17 Tr. 44:3-20 (noting the PSC should already have enough information in hand to be able to "identify[] experts and the subjects on which they are going to opine").)  In addition, the Court questioned the benefit of corporate representative depositions, noting that "for many of the science experts, I don't really understand why these corporate deps are necessary."  (12/7/17 Tr. 11:15-12:12, 17:21-18:1.)  In response to arguments from the PSC that corporate depositions might yield relevant "admissions" on general causation, the Court responded that such evidence would

3

"not go to what [plaintiffs'] experts will be opining upon based upon their own review of what the science was at the time . . . regardless of whether they admit it or not." (*Id*. 20:5-21:9.)

At the Court's direction, the parties submitted letters to the Special Master in January 2018 that addressed the PSC's request for depositions and other discovery-related disputes, including the timing for submitting plaintiffs' expert reports.[1] The PSC "produced a list of 62 employees/former employees of Defendants, whom they allege will provide them with information necessary for completion of expert reports on general causation." (2/6/18 Special Master Letter at 3.) The PSC "identified four categories of information that they believe will be obtained through these depositions: 1) composition of the Products; 2) testing of the Products by Defendants; 3) sampling of the Products by Defendants; and 4) any influence or bias in the published literature caused by Defendants." (*Id*.) Defendants opposed the request for depositions as unnecessary to resolve the issue of general causation. (*Id*.)

---

[1] Specifically, the PSC requested extra time to review documents included in defendants' December 2017 production before being required to identify plaintiffs' general causation experts – a request that was ultimately denied by the Special Master in his Proposed CMO. (*See* 2/6/18 Special Master Letter at 2-3; Proposed CMO ¶ 1.) While the PSC also "objects" to this aspect of the proposed order "for purposes of protecting the record," the PSC now concedes that it will likely be able to review all of the documents at issue within the timeframe provided by the Special Master and therefore this issue is ultimately "moot." (Pls.' Obj. at 3 n.3.)

4

In a February 6, 2018 letter to the parties addressing the discovery dispute, Special Master Pisano struck the PSC's proposed list of deponents, noting that it was "overly broad" and not "proportional to the needs of the case." (*Id*. at 4.) The Special Master explained that "seeking 62 depositions prior to serving expert reports is unreasonably burdensome and would be excessively time consuming," especially considering that the PSC has "not established a need for 62 depositions at this stage." (*Id*.) In fact, the Special Master noted that the PSC had "conceded" during a conference held before the Special Master on January 22, 2018 "that not *all* 62 depositions would be necessary to assist the experts in finalizing their opinions." (*Id*. at 3.) While the Special Master accepted that the PSC might "need to depose someone with knowledge on [the topics it identified as relevant to general causation] to assist the [PSC's] experts in forming and finalizing opinions," he concluded that a corporate representative deposition for each defendant "should suffice." (*Id*. at 3-4.) Accordingly, the Special Master held that, "to the extent that depositions may be necessary, prior to completion of Plaintiffs' causation expert reports, Plaintiffs are entitled to one Rule 30(b)(6) witness per defendant, limited to the" subjects identified by plaintiffs.[2] (*Id*. at 4; *see also* Proposed CMO ¶ 3.)

---

[2] While the PSC focuses on the fact that the Special Master's Proposed CMO provides for only one Rule 30(b)(6) deposition per defendant, it acknowledges that the Court has recognized that additional corporate representative depositions may
*(cont'd)*

## ARGUMENT

Unless the order appointing a special master "establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5). Courts in the Third Circuit and elsewhere have recognized that a special master's discovery orders are primarily procedural in nature and that a party who objects to such an order must therefore be able to establish that it constitutes an abuse of discretion. *See, e.g.*, *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12-787 (FLW) (LHG), 2017 WL 6539242, at *1-2 & n.1 (D.N.J. Dec. 21, 2017) (reviewing special master's order on discovery dispute, including limitations on depositions, for abuse of discretion); *Nippon Steel & Sumitomo Metal Corp. v. Posco*, No. 12-2429 (SRC), 2014 WL 1266219, at *1 (D.N.J. Mar. 26, 2014) (reviewing special master order denying discovery regarding certain topics under abuse of discretion standard); *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (holding that a special master's case management orders regarding scope of discovery are "procedural, so the abuse of discretion standard of review applies").

---

*(cont'd from previous page)*
be appropriate in the event that a specific defendant cannot produce a single witness to testify about all of the areas of inquiry permitted. (*See* Pls.' Obj. at 11.)

6

Plaintiffs have not come anywhere close to demonstrating that the Special Master abused his discretion here.

## I. THE SPECIAL MASTER'S PROPOSED CMO PROVIDES FOR DISCOVERY THAT IS "PROPORTIONAL" TO THE NEEDS OF THE CASE.

The PSC argues that it was an "abuse of discretion to limit the PSC in this matter to a single Rule 30(b)(6) deposition per defendant" prior to the identification of plaintiffs' general causation experts because the PSC is entitled to depose "62 current or former employees" of defendants who purportedly "possess important and relevant information necessary for the completion of PSC's expert reports." (Pls.' Obj. at 4, 9.)

The crux of the PSC's argument seems to be that plaintiffs face a heavy burden in establishing general causation and therefore are entitled to almost unlimited discovery prior to submitting their expert reports (even as the same lawyers and law firms continue to try cases in other jurisdictions). In support, the PSC cites Federal Rule 26's requirement that "'discovery be proportional to the needs of the case.'"[3] (Pls.' Obj. at 8 (citation omitted).) But that provision

---

[3] Plaintiffs also dedicate more than four pages of their briefing to the recitation of general principles regarding the standard for the admission of expert opinions and addressing plaintiffs' causation burden. (Pls.' Obj. at 4-8.) But none of the authorities plaintiffs cite addresses the appropriate scope of discovery prior to the submission of expert reports, much less supports plaintiffs' assertion that a "considerable amount of fact depositions is needed" before an expert can provide a general causation opinion (*id.* at 10), rendering these cases entirely irrelevant.

7

undermines plaintiffs' arguments instead of supporting them. After all, courts have recognized that Rule 26's "proportionality" rule "'is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery'" requested in circumstances like this one. *E.g.*, *Bowers v. Nat'l Collegiate Athletic Ass'n*, No. 97-2600 (JBS), 2008 WL 1757929, at *4-5 (D.N.J. Feb. 27, 2008) (citation omitted).

In *Bowers*, for example, the court applied the "proportionality" rule to prohibit the plaintiff from deposing a representative of the NCAA regarding a key issue in the case, the NCAA's eligibility policies, where the plaintiff "acknowledged having received documents pertaining to the [relevant] changes in the NCAA's eligibility policies" and had already been offered the opportunity to question NCAA witnesses on the topic. *Id*. According to the court, Rule 26's proportionality requirement demands that courts limit discovery that is "unreasonably duplicative, where the discovering party has already had an ample opportunity to obtain the information in question, or where the burden of the discovery would outweigh its likely benefit." *Id*.

The same is true here. Over the course of this litigation, defendants have produced millions of pages of documents in response to plaintiffs' wide-ranging discovery requests, including all documents potentially relevant to the issue of general causation. In seeking deposition discovery on top of that, the PSC argued

8

that it needed to question defense witnesses about four topics related to general causation: "1) [the] composition of the Products; 2) testing of the Products by Defendants; 3) sampling of the Products by Defendants; and 4) any influence or bias in the published literature caused by Defendants." (2/6/18 Special Master Letter at 3.) To address this purported need, the Special Master *granted* plaintiffs the right to depose a corporate representative for each defendant about plaintiffs' four identified topics.

While the PSC generally asserts that these Rule 30(b)(6) depositions are not enough (Pls.' Obj. at 11), it provides virtually no factual justification for that argument. As the PSC is forced to admit, it could "obtain the [purportedly] necessary information" for plaintiffs' expert reports "without deposing all of the 62 witnesses" that it has identified. (*Id.* at 9.) And while the PSC contends that a "considerable" number of these witnesses *are* critical to the development of expert testimony, it makes no effort to identify who those particular witnesses are or what information they have that is relevant to the question of general causation. Nor do plaintiffs explain why the information these so-called essential witnesses allegedly possess cannot be obtained from the millions of pages of written discovery already in their possession *or* from the corporate representative depositions provided for in the Special Master's order.

In short, the PSC has not demonstrated any particular need for the dozens of fact witness depositions they seek – and certainly has not demonstrated that the Special Master abused his discretion in refusing to permit them.

## II. THE PSC'S NEW ARGUMENTS REGARDING THE SCOPE OF THE 30(B)(6) DEPOSITIONS ARE UNTIMELY AND UNPERSUASIVE.

The Court should also reject the PSC's argument that the Special Master abused his discretion by defining the scope of the corporate representative depositions addressed in the Proposed CMO too narrowly. According to plaintiffs, the four areas of inquiry identified in the Proposed CMO are insufficient because the PSC should also be permitted to ask defendants' corporate representatives about: "(1) Defendants' bases for statements about the biologic plausibility of talc migrating to ovaries; (2) information relied upon by Defendants to support their position that talc products do not cause ovarian cancer; and (3) communications between Defendants related to the link between their respective products and cancer." (Pls.' Obj. at 11-12.) This argument should be soundly rejected.

As a threshold matter, the PSC never asked the Special Master for this discovery; rather, the PSC identified the four deposition topics outlined in the Proposed CMO. (*See* 2/6/18 Special Master Letter at 3.) At no point did the PSC raise the three new topics with the Special Master, let alone ask that they be included as Rule 30(b)(6) topics. As a result, the PSC is now barred from

10

challenging the Special Master's Proposed CMO on the ground that it does not permit this discovery. *See, e.g.*, *World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1278 n.13 (D. Haw. 2008) (a party "cannot raise entirely new arguments for the first time on an objection to a Special Master's Report"); *Convolve, Inc. v. Compaq Comput. Corp.*, No. 00Civ.5141 (GBD) (JCF), 2004 WL 1944834, at *1 (S.D.N.Y. Sept. 1, 2004) (refusing to consider arguments not initially presented to special master in connection with a discovery dispute when reviewing the special master's order); *Dunkin' Donuts Franchised Rests. LLC v. Mehta*, No. 07-0423, 2007 WL 2688710, at *1-2 (W.D. Pa. Sept. 11, 2007) (noting that courts generally "exclud[e] evidence of new arguments on objections" to a magistrate judge's rulings because "'[s]ystematic efficiencies would be frustrated,'" and "'it would be fundamentally unfair to permit a litigant to set its case in motion . . . and—having received an unfavorable recommendation—shift gears before the [reviewing] judge'") (citation omitted).

In addition, even if the PSC's argument were proper, the three new deposition topics that plaintiffs identify are irrelevant to the admissibility of the plaintiffs' experts' opinions on the scientific question of general causation. As noted above, this Court stated at the December 2017 case management conference that it was "confused" as to why corporate depositions were necessary at all at this stage of the litigation because defendants' knowledge or statements about talc's

11

alleged risks "does not go to what [the PSC's] own experts will be opining upon based upon their own review of what the science was at the time." (12/7/17 Tr. 11:15-12:12, 17:21-18:1, 20:5-21:9.) The same is true of the new topics plaintiffs have proposed, all of which relate to *defendants*' knowledge and statements, rather than the state of the published scientific literature and whether it is sufficient to demonstrate a causal connection between talc exposure and ovarian cancer.

Indeed, the two documents plaintiffs cite in an attempt to demonstrate the relevance of these new topics to the issue of general causation prove the opposite. Both of the documents plaintiffs cite are internal "safety surveillance document[s]" evaluating reported cases of ovarian cancer that plaintiffs suggest draw a causal connection between cancer and talc use. (Pls.' Obj. at 12-13.) Plaintiffs assert that one document is relevant because it refers to "'established criteria' for causation at J&J." (*Id.* at 12.) But JJCI's internal criteria for safety reporting do not suggest that JJCI was uniquely privy to any matters of scientific knowledge concerning talc or ovarian cancer that plaintiffs' experts need in order to formulate their opinions on *general causation*. Plaintiffs contend that the second document is relevant because it contains an "analysis of a reported case of ovarian cancer following the use of Johnson's Baby Powder" but "omits [mention of] the 2006 IARC conclusion that talcum powder is a possible carcinogen" or "any consideration of scientific and medical literature published between 2006 and 2012." (Pls.' Obj. at

13.) Again, this line of argument patently goes to *knowledge and conduct*. What defendants did or did not allegedly say or analyze in internal documents for pharmacovigilance purposes does not alter the scientific record that will be the basis for plaintiffs' experts' opinions on *general causation*.

Moreover, even if these documents could inform plaintiffs' experts' general-causation opinions, or constituted some sort of admission by defendants on that issue, the documents are already available for the experts' review and use. While the PSC asserts that it needs to "explore" the basis for the findings in these documents at deposition (Pls.' Obj. at 13), it fails to explain how that information would affect plaintiffs' experts' opinions in any way.

For this reason, too, the PSC's assertion that the Special Master erred in framing the issues to be explored at corporate representative depositions should be rejected.

## CONCLUSION

For the foregoing reasons, the Johnson & Johnson defendants respectfully request that the Court enter the Case Management Order adopted by the Special Master.

Dated: March 2, 2018                    *s/Susan M. Sharko*_____
                                        Susan M. Sharko
                                        DRINKER BIDDLE & REATH LLP
                                        600 Campus Drive
                                        Florham Park, New Jersey 07932
                                        Telephone:  973-549-7000
                                        Facsimile:  973-360-9831
                                        E-mail:  susan.sharko@dbr.com

                                        Gene M. Williams
                                        SHOOK, HARDY & BACON L.L.P.
                                        JPMorgan Chase Tower
                                        600 Travis St., Suite 3400
                                        Houston, TX 77002
                                        713-227-8008

                                        John H. Beisner
                                        SKADDEN, ARPS, SLATE,
                                        MEAGHER & FLOM LLP
                                        1440 New York Avenue, N.W.
                                        Washington, D.C. 20005
                                        202-371-7000

                                        *Attorneys for Defendants Johnson &*
                                        *Johnson and Johnson & Johnson*
                                        *Consumer Companies, Inc.,*
                                        *now known as Johnson & Johnson*
                                        *Consumer Inc.*