1

                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
                    CIVIL ACTION NO 16-MD-2738(FLW)(LHG)


    _____    :
    IN RE JOHNSON & JOHNSON     :  TRANSCRIPT OF
    POWDER PRODUCTS MARKETING,  :  STATUS CONFERENCE
    SALES PRACTICES.            :  MARCH 6, 2018
    -------------------------   :



CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608


B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ


A P P E A R A N C E S:

BEASLEY ALLEN, ESQUIRES
BY:  P. LEIGH O'DELL, ESQUIRE (ALABAMA)
        -and-
ASHCRAFT & GEREL, ESQUIRES
BY:  MICHELLE A. PARFITT, ESQUIRE (VIRGINIA)
     CHRIS TISI, ESQUIRE  (VIRGINIA)
        -and-
WILENTZ, ESQUIRES
BY:  DANIEL R. LAPINSKI, ESQUIRES
On Behalf of the Plaintiffs Steering Committee


DRINKER, BIDDLE & REATH, ESQUIRES
BY:  SUSAN M. SHARKO, ESQUIRE
     JULIE L. TERSIGNI, ESQUIRE
        -and-
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, ESQUIRES
BY:  JOHN H. BEISNER, ESQUIRE  (WASHINGTON, D.C.)
On behalf of Defendant Johnson & Johnson


                    * * * * *
            VINCENT RUSSONIELLO, RPR, CRR, CCR
              OFFICIAL U.S. COURT REPORTER
                   (609) 588-9516

2

A P P E A R A N C E S   C O N T I N U E D:


SEYFARRTH & SHAW, ESQUIRES
BY:  THOMAS L. LOCKE, ESQUIRE  (WASHINGTON D.C.)
        -and-
BARRY, McTIERNAN & WEDINGER, ESQUIRES
BY:  ALEXANDRA J. TAYLOR, ESQUIRE
     JENNIFER CHEONG, ESQUIRE
On Behalf of Defendant PCPC


COUGHLIN DUFFY, ESQUIRES
BY:  LORNA A. DOTRO, ESQUIRE
     MARK K. SILVER, ESQUIRE
        -and-
GORDON & REES, ESQUIRES
BY:  ANN THORNTON FIELD, ESQUIRE  (PENNSYLVANIA)
On behalf of Defendant Imerys Talc America

3

# C E R T I F I C A T E

PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE ABOVE-ENTITLED MATTER.

S/Vincent Russoniello
VINCENT RUSSONIELLO, CCR
OFFICIAL U.S. COURT REPORTER

4

```
 1              (In open court.)

 2              THE CLERK:  All rise.

 3              JUDGE WOLFSON:  Thank you.

 4        I understand we have some new players today

 5   entering appearances with me that are going to be

 6   speaking.

 7              Who do we have for plaintiff?  Anyone?

 8              MS. PARFITT:  Your Honor, Daniel Lapinski will

 9   be speaking, but he's been a player.

10              JUDGE WOLFSON:  I understand.  But he hasn't

11   come forward and talked to me before.

12              And on the defense side?  Anyone?

13              MR. LOCKE:  Yes, your Honor, we have a couple

14   of new New Jersey counsel with us.

15              MS. TAYLOR:  Good morning, your Honor.

16              Alexandra Taylor from Barry, McTiernan &

17   Wedinger.  We'll be local counsel for PCPC.

18              MS. CHEONG:  Good morning, your Honor.

19              My name is Jennifer Cheong.  I'm also with

20   Barry, McTiernan & Wedinger.

21              JUDGE WOLFSON:  All right.  Thank you.

22        We don't have a lot on the agenda today, but

23   there are a couple of important issues that I want to

24   address with you.

25              First of all, I understand with regard to
```

1   document production, there are some issues as to

2   privilege as to some of the documents that you want

3   resolved before the 30(b)(6) depositions begin.

4   Correct?

5           MS. SHARKO:  Yes.

6           JUDGE WOLFSON:  And that's still being

7   discussed and I guess then you will be presenting it

8   to Judge Pisano.

9           MR. TISI:  Yes, your Honor.

10          JUDGE WOLFSON:  All right.

11          I guess in the midst of these discussions,

12  defendants are taking the position that you haven't

13  identified specific documents, but categories or

14  general.  Is that right?  Is that your position, Ms.

15  Sharko?

16          MS. SHARKO:  Yes.  They gave us a long list of

17  objections on the privilege log and we were somewhat

18  surprised to see in the draft joint report some

19  special category.

20          I'm not sure how they could actually match

21  documents up into that category.  But if they want to

22  prioritize those, just let us know what they are and

23  we'll go to work on them.

24          MR. TISI:  We'll do that, your Honor.

25          JUDGE WOLFSON:  Fine.  So that's coming up

6

1 next for Judge Pisano.

2          Let me talk about I think what is really the

3 largest issue for you today, which is going to be

4 what's been filed as an appeal from Judge Pisano's

5 last order.  We had discussion about it the last time

6 that you were in.

7          I have received the appeal and I've gotten a

8 response from J&J, and I think sort of what I would

9 call the "me too" letters from the other parties

10 joining in J&J's letter.  So it's been briefed and I'm

11 ready to talk about it today.

12          First of all, what I want to start with is, so

13 it will be clear for the remainder of any kind of

14 reviews you might have from Judge Pisano, there was

15 some dispute in the letters as to what the standard of

16 review should be in reviewing Judge Pisano's ruling.

17 Of course everyone accepts the fact that under Rule 53

18 that anything that's an issue of law or a finding of

19 fact is a de novo review.

20          Essentially, the position being taken by the

21 defendant in this case is that his rulings with regard

22 to these depositions were in the nature of procedural

23 rulings and subject to the abuse of discretion

24 standard.  That was basically your argument.  Correct?

25          MS. SHARKO:  Yes.

1          JUDGE WOLFSON:  I disagree.  I think that

2    those are not procedural rulings.  I've done some

3    research, or at least my chambers has done some

4    research, and what has been defined by some of the

5    case law is what is a procedural matter pertains to

6    the decisions that are made by a Special Master that

7    involve the manner in which the Master conducted the

8    proceedings.

9          For example, in deciding the format in which

10   you'll hear the arguments or the issues determining

11   how to do so, whether it's written submissions, what

12   the timing for them is, whether there is argument and

13   things of that nature, we've got some cites for you.

14         One of them one is the Vioxx cite from the

15   Fifth Circuit.  We have some other cites.  One of them

16   you might like because while it's older, Net2Phone,

17   Inc.  v. eBay, Inc., 2008 U.S. Dist. Lexis decision

18   50451, it was by a Magistrate Judge, but that

19   Magistrate Judge was Judge Schwartz who now sits in

20   the Third Circuit.

21         I figured you might like to know that was one

22   of her decisions, finding that the Special Master's

23   rulings, for instance, on procedural matters involve

24   deadlines, for example, for the presentation of

25   submissions and evidence.  Otherwise, if you found

8

1   that these were procedural, it swallows what a Special

2   Master does because what a Special Master does is rule

3   on discovery issues.

4          So it's going to be a de novo standard.  I

5   want to make that clear today.  There are some other

6   cases I could cite to you.  I have a number of others.

7   So that also going forward we know where we are, and

8   essentially everything is de novo unless it is a very

9   limited category, as I said.  For instance, if you

10  said, No, you got to have something to me by tomorrow,

11  and you want to appeal that, that's an abuse of

12  discretion standard.

13         So with that let me proceed to where we are.

14         As I really see this, what we are breaking

15  this down into is, there were four categories that

16  were identified before Judge Pisano, and I've read the

17  transcript of the hearing before him and it was quite

18  clear.  He asked, What are the areas, and plaintiffs

19  identified four.  I don't think you can dispute that,

20  except that now where you are is that you think you

21  have identified more that you require.

22         That's fair, right, that that is your

23  position?

24         MS. PARFITT:  That's correct.

25         MR. LAPINSKI:  Yes, your Honor.  Our position

9

1   is that we have identified more and our position would

2   also be that we were giving examples as to some of the

3   important areas and that's what Ms. O'Dell had

4   presented to Judge Pisano.

5            JUDGE WOLFSON:  I don't think it was so

6   limited, but that's fine.  I think he made it pretty

7   clear.  I don't think it was that limited.  But I

8   don't take to heart the defendants' position that

9   because you said those things on the record there now

10  you are barred from identifying anything else.  That

11  would be an exercise in folly to make that

12  determination and that should be barred at this point.

13           So instead what I want to do is, I want to

14  consider what are the areas that you are now

15  identifying for which you think you should be entitled

16  to take depositions prior to there being experts,

17  general causation experts.

18           I know that briefly the defendants in their

19  papers addressed as well why they thought these would

20  not be relevant topics regardless for purposes of

21  general causation, and that's what I am going to

22  address because at this point I don't find that Judge

23  Pisano even though I am considering it de novo anyway,

24  certainly I understand his ruling.

25           I already made a finding that I agree that

1    30(b)(6) depositions in these areas were appropriate,

2    and he couldn't even consider these new areas because

3    they weren't before him.  So I'm willing to do it

4    today.  I'm not sending it back to him to do.  I don't

5    want to waste our time.  Let's move.

6         Now, you've read the defense papers as to why

7    they claim those -- I think it's essentially three

8    areas that you have identified why you believe they

9    are relevant.  Defendants think they are not.  Let me

10   hear from the plaintiffs.

11        MS. PARFITT:  Your Honor, you are correct with

12   regard to Ms. O'Dell's representation that day with

13   Judge Pisano.  It was by way of example.  I'm glad

14   that your Honor has read that transcript and

15   understands that to be the case.

16        The other areas, and I think you are also

17   correct, I think as we move through this process, I

18   think we realize that it's very difficult to make

19   inquiry and be self-limiting.  So we are trying to

20   stay within the confines that the Court has asked us

21   to be, but also do it in a way that's actually

22   realistic.

23        So one of the areas was the biological

24   plausibility of talc migrating to the ovaries which is

25   clearly a mechanistic aspect of the science.  It goes

1    to the heart of the science.  Your Honor, during the

2    science day, that was clearly something we were trying

3    to preview for the Court that there was indeed an

4    abundance of science there dealing with the issue of

5    biological plausibility.

6         What we are hoping to get from the defendants

7    in the course of these depositions is information

8    regarding the defendants' recognition, their own

9    research, their own articles that talk about the issue

10   of biological plausibility that indeed talc can

11   migrate through and up the hemo tract reaching the

12   ovaries.

13        JUDGE WOLFSON:  Let me ask you this,

14   Ms. Parfitt:  In talking about that, would it have not

15   been part of the document production that any of those

16   studies, I think what you called it as their own

17   research or articles about it, were there such things

18   as part of the document production?

19        MS. PARFITT:  There are some in the documents.

20   There are some representations in the documents.  But

21   what's interesting is in some of those documents it's

22   a debated issue.  So obviously the inquiry would be:

23   Why would defendants make that statement that it is

24   biologically plausible?  Then maybe in that same

25   document there may be the discussion about, Well, it

1    really can't.  Or, Let's do a study that shows that's

2    really not biologically plausible.

3           So we're just trying to get at the meat of it.

4    As your Honor has indicated, you need to know:  Do

5    talcum powder products cause ovarian cancer.  So we

6    need to make a little further inquiry.  It's not just

7    through the documents because the documents aren't

8    clear.

9           And if we were just to introduce the document

10   to the jury at some point in time -- what I'm

11   suggesting to the Court is that might not be the best

12   evidence and what we are trying to obtain is the best

13   evidence on these topics and some of that can be

14   cleared up.  I might add sometimes we protest too

15   much.  We may make inquiry on a topic and wish we had

16   stayed with the document and we realize that.  I think

17   that's always that tension:  How much of an inquiry do

18   I make versus how do I make it clear?

19          So that when we are called upon by the Court

20   to give a reasoned explanation and our experts are

21   called upon by the Court to give a reasoned opinion,

22   they have the material that they need and it is clear.

23   That was why that seemed to be a pretty obvious topic

24   and one that's very, very pertinent to the science.

25          THE COURT:  Give me what you claim the topic

1   to be.

2        MS. PARFITT:  The topic would be:  Is there

3   scientific evidence of the biological plausibility of

4   talcum powder products migrating to the ovaries and

5   causing ovarian cancer?

6        We would submit that there are clearly defense

7   documents that say that, but there are also defense

8   documents that dispute that.  There are also defense

9   documents and information in the record that suggest:

10  How do we attack that?  And that goes more or less to

11  the bias and influence.  What group should we use

12  perhaps or scientific body to perhaps attack that

13  theory?  Say it ain't so.

14        That's where we are going.  That was why that

15  seemed to be a very reasonable topic that went to the

16  heart of I think the Court's inquiry in the very

17  beginning and what the experts are going to be asked

18  to present on.  So that was one topic.

19        JUDGE WOLFSON:  Let's take them one at a time.

20  Let's stop.  I'm going to turn to the defendant.

21        Ms. Sharko.

22        MS. SHARKO:  So Ms. Parfitt kind of made my

23  argument for me when she says, We want to show this to

24  the jury; or, We want to argue to the jury; or, We

25  want to know what the defendant meant in whatever this

1    document --

2         JUDGE WOLFSON:  I noticed that and I'm going

3    to disregard that because I know when you said that,

4    that is not what we are talking about.  We are talking

5    about getting the experts ready.

6         MS. PARFITT:  That's correct, your Honor.

7         JUDGE WOLFSON:  Maybe I should go back to

8    Ms. Parfitt and say:  Why do you think your experts

9    require that?

10        Have a seat, Ms. Sharko.

11        MS. PARFITT:  I think it's important that our

12   experts not only are versed in what the scientific

13   literature is because the scientific literature is

14   based upon studies that could have been influenced or

15   even written by the defendants, and the experts are

16   asked to look at the body of literature, the totality

17   of the literature and science and weigh in as to

18   whether or not there is a causation theory to be

19   proven.

20        It's important to open the door, get behind

21   the door, get behind the curtain and see:  How was

22   that science constructed?  Is it pure?  Has it been

23   influenced?  Has it been impacted?  We know that there

24   are white papers that have been previewed by law

25   firms.  We know that there are white papers by the

1   defense where the defense had -- rather, the

2   defendants have reached out to have others review the

3   material, give comment, and then eventually a

4   scientific article is then put out there into the

5   universe of medical information.

6          JUDGE WOLFSON:  Have you received any

7   communications from people at J&J to any of the

8   authors of the literature that has been out there?

9          MS. PARFITT:  Yes, we have.

10          If I understand the Court's question:  Have we

11   received some documents that suggest the defendants

12   have asked other people to give input as to the

13   science?  Yes.

14          JUDGE WOLFSON:  Okay.

15          MS. PARFITT:  I think we need to investigate

16   that.  We need to ask those questions about:  Why was

17   that done?  How was it done?  What did it look like

18   before you made comment?  What would that article have

19   looked like originally?  What does that article look

20   like now?  I think that's one example, your Honor.

21          JUDGE WOLFSON:  Okay.

22          MS. PARFITT:  Your Honor, we are prepared

23   today.  I didn't know if this would come up.  We are

24   prepared to present to the Court a couple of examples

25   of that wherein we have a scientific paper that has

1    been previewed and edited by people outside of the

2    scientific community, a law firm, and then there is

3    eventually a peer-reviewed article that has been

4    published in the peer-reviewed literature.

5              So there are instances like that that cause us

6    to pause and say:  What is the scientific literature

7    on talcum powder products and ovarian cancer?  Because

8    our experts are going to be asked to rely upon that as

9    part of their presentation to the Court.  They need to

10   weigh it all and they need to weigh most particularly

11   the purity of the science they are looking at.

12             Just as you are looking at the methodology of

13   the experts, the experts when they were reviewing the

14   scientific literature are called upon to look at the

15   purity of the papers that they were reading, look at

16   that which perhaps weighs in the favor of causation

17   and to look at science that says it doesn't.  And the

18   science that says there is no causative link, I think

19   it important that they have the history of that

20   scientific evolution.

21             JUDGE WOLFSON:  Ms. Sharko.

22             MS. SHARKO:  So the literature is out there.

23   It wasn't contaminated by our client.

24             JUDGE WOLFSON:  Well, that's your statement,

25   Ms. Sharko.  I don't have to accept that.

1       MS. SHARKO:  Much of this was in fact written

2  by plaintiffs' experts.  So one of the topics that

3  Judge Pisano ordered is -- quote, unquote-- bias and

4  influence, and that would seem to encompass the

5  potentially relevant issues raised by the plaintiffs.

6       JUDGE WOLFSON:  It might and I guess that's

7  some of of what you are fleshing out.  That's largely

8  what Ms. Parfitt just explained as to why she needs

9  it.  I think she went a little bit beyond that.  But I

10  do think it is encompassed by the bias because that is

11  one of the categories, and you are going to be arguing

12  about:  What does that mean in your 30(b)(6) notice?

13       I think one of the other things that she

14  referenced as well is that if there were by any chance

15  any internal analysis, you would think it would have

16  been produced in documents, but maybe it didn't make

17  its way to documents.  That's some of the concern

18  here, which is:  What if there were some internal

19  analysis that was done or something else or oral

20  communications with those that are not going to appear

21  in a document?

22       MS. SHARKO:  The topic that was stated that's

23  in dispute is defendants' bases for statements about

24  the biological plausibility of talc migrating to the

25  ovaries.  That's a scientific question that the

1    experts will have to address based on their knowledge,

2    training and experience, and the scientific

3    literature, not based on internal emails.

4         JUDGE WOLFSON:  Not emails because you've

5    already got the documents.  She's got them assuming

6    you've produced everything that there is.

7         What she is suggesting instead is that there

8    could have been background discussions about what

9    found its way in that could have been about some other

10   things being done in the company that don't make its

11   way into documents and wants to know if that exists.

12   It may not.  That's all they want is somebody who

13   could talk about:  Is there more out there that is not

14   in the documents on this topic?

15        MS. SHARKO:  So beyond what falls under bias

16   and influence because I get that and they sent us a

17   more detailed statement of the topics and we'll get

18   back to them and I would hope that will resolve that.

19   If the question is:  What else is there out there?

20   What were people talking about in the company?  A, I

21   don't think that's relevant to the general causation

22   issues for the reasons I just argued, but --

23        JUDGE WOLFSON:  Not so much:  What are they

24   talking about?  But the question is:  Was there

25   anything else being done in the company?  Because I've

19

1    had this discussion before.  What somebody may think

2    in the company doesn't influence me.  Does the science

3    support it?  It's going to be true for your expert,

4    their expert, their company people, not what their

5    beliefs there because that is not where we are.  This

6    isn't about fraud.  This isn't about

7    misrepresentation.  This isn't about hiding at this

8    point.

9         What I am concerned about and the only thing I

10   want to make sure that we have discovered out there

11   and that they are entitled to is if there is other --

12   I don't want to say material because hopefully if

13   there were documents, you would have produced them

14   all.

15        But someone with knowledge about whether in

16   fact perhaps there was some internal testing being

17   done or that they had someone else do on the outside

18   on the third party that never makes its way to a

19   document in the end so it doesn't get produced, but

20   there could have been something that goes to the

21   science, that is the kind of thing that I think is

22   still open that they could get.

23        Now, that's fairly limited though because I

24   don't even know if it exists.  But I think they would

25   be entitled to that because that could go to the

20

1    science, whether in fact there were things being done

2    or studies being done outside that never make its way

3    to a full blown study and do not end up in documents,

4    but that may have revealed some information that

5    someone learned about the science, the science.

6            MS. SHARKO:  So what testing was done I

7    believe falls within one of Judge Pisano's categories

8    and they now have a subcategory on that in their

9    30(b)(6) notice and I understand that topic.  I'm not

10   disputing that topic.

11           THE COURT:  Okay.

12           MS. SHARKO:  What concerns me and it sounds

13   like maybe this is not implied is:  What over the

14   years did people think about or wonder whether it

15   should be done or it shouldn't be done?

16           I don't know how you have a 30(b)(6)

17   deposition on what people thought about for the last

18   however many years, 40 years, 30 years, but what

19   testing that was done.  Yes, I think that's within

20   that, within the notices.  Was there -- quote, unquote

21   -- bias or influence?  Did people look at drafts?  Did

22   people fund studies?  Yes, that's within the

23   categories that --

24           JUDGE WOLFSON:  Did people have discussions on

25   the phone with others?  Discussions are important.

1   That's not going to show up in the documents.

2        So on the bias aspect, I'm not writing your

3   30(b)(6) notice here.  But it would include

4   communications.  They don't show up in a document.  I

5   don't quite know how you are going to go about doing

6   that and finding out everyone who may have had a

7   discussion with someone who was doing a study, someone

8   who was writing a paper, but that would be part of it

9   and I certainly want that included.

10        MS. SHARKO:  How do you find that out, though?

11        JUDGE WOLFSON:  That's the problem.  That's

12   why they wanted to identify 60 witnesses that I'm not

13   allowing.  But that's where you are going to have to

14   go back and talk to people who were involved in some

15   way with these studies and whether there were

16   communications with the writers and the authors of the

17   papers and the ones conducting the study,

18   communications that don't appear in writing.

19        MS. SHARKO:  So what I would ask then is we

20   have the 30(b)(6) notice and we were about to serve

21   our response to it.  To the extent it needs to be

22   amended or clarified or plaintiffs think they need

23   another topic, if they can then add that in.  Because

24   to me what your Honor just said is materially

25   different from the topic we started discussing which

22

1   is defendants' statements about the biological

2   plausibility of migration or something like that.

3           JUDGE WOLFSON:  That was the topic right now.

4   But when we were talking also about bias and other

5   things, it all falls within there.

6           What I'm trying to say is, why this is a

7   little bit broader than you think it.  The documents

8   alone don't do it.  There is an obligation to see if

9   there were communications.  It does go to bias perhaps

10  and it also could reveal if someone was aware of

11  something else in the science that doesn't make its

12  way to a document.

13          Now, I've said many times, I'm not concerned

14  about people's opinions on these things. Every expert

15  is going to have to come up with their own view based

16  on what existed.  But if there were other things in

17  the science that are not appearing in the documents,

18  we want to know.

19          MS. SHARKO:  So I would suggest that

20  Ms. Parfitt and her team write that out so we have a

21  clear statement.  As your Honor said at the last

22  conference, you were right, I think that notice is

23  helpful and then we can go from there.

24          JUDGE WOLFSON:  I don't know if it's a really

25  new topic.  It may be encompassed in the others, but

1    we are not fleshing out what it's going to look like

2    and you describing what you're looking for.

3        MS. PARFITT:  I think, your Honor, you have

4    actually done a very articulate job with that and I

5    appreciate that and that is indeed what we're trying

6    to convey.

7        MR. LOCKE:  Your Honor, could I just ask a

8    clarification?

9        JUDGE WOLFSON:  Sure.

10       MR. LOCKE:  Tom Locke for PCPC.

11       We're not talking about the motive that a

12   defendant may have had.  Is that correct?

13       JUDGE WOLFSON:  I'm not talking about motive

14   today.

15       MR. LOCKE:  So the depositions won't include

16   motive.  It won't be about sort of intent.  It's about

17   what communications defendants had with scientists who

18   wrote papers or articulated views on the science.

19       MS. PARFITT:  I think it's a little bit

20   broader, Tom, than what you have said, but I think

21   it's in line with what the Court has said.

22       JUDGE WOLFSON:  Why don't you repeat what you

23   think that is so we don't have any misunderstanding

24   when we leave.

25       MS. PARFITT:  Sure.  What we are talking

1    about, and I think probably the best example of what

2    we are trying to get at, is something that we believe

3    actually exists.  The Court has identified it.  There

4    are inquiries that we need to make of their people

5    with regard to, by way of example, why a peer-reviewed

6    article is published and why it says what it says by a

7    particular author.

8         We know, by way of example, we know in one

9    instance a peer-reviewed article that is out there

10   that was sponsored by a law firm years back has

11   multiple drafts where that peer-reviewed article is

12   edited, is commented by on scientific issues.

13        So we need to ask the questions because it's

14   not real clear that pathway leading to a published

15   article and in sections when we reach out to a law

16   firm, we need to do the archeology there and those

17   kinds of communications may or may not be on paper.

18        JUDGE WOLFSON:  I understand.  That's what I

19   was including.

20        MS. PARFITT:  And I understand the Court has

21   made it very clear about what we are allowed to

22   discovery.  We'll get a chance to talk about the fraud

23   and the motive.  The Court is asking to look at the

24   science.  Why is it that the defendants and the

25   parties, the plaintiffs, are presenting the evidence

1   two different ways?  They say no causation.  We say

2   causation.

3        Our experts are going to be called to come

4   before the Court and give their opinions on that and

5   they need to have a basis, not a basis based upon junk

6   science, but a basis of their opinions based upon

7   sound reliable scientific theories.  We need to flesh

8   that out just as their experts will.  I think what the

9   Court has previously stated is very clear to us

10  that --

11       JUDGE WOLFSON:  What I really need to know is:

12  What is your concern?  What do you want to make sure

13  is not part of this?

14       MR. LOCKE:  Well, I think it goes to what your

15  Honor was saying about opinions of individual

16  witnesses on what their views may or may not have

17  been, or what a defendant's views may have been about

18  the science.  We're not really going to that.  The

19  question is:  What actions did a defendant take to

20  change the science?

21       JUDGE WOLFSON:  Or if they were in receipt of

22  any science that is not disclosed in documents, if

23  they were made aware of something.

24       For instance, one of your people gets a call

25  from someone who is in, let's say, the midst of

 1   writing a paper, doing a study, and says, Look, I

 2   found this and I think there is a connection here, and

 3   they have that discussion and then something else

 4   happens.

 5          MR. LOCKE:  Your Honor, I still view that as

 6   an act or an omission, if you will.

 7          JUDGE WOLFSON:  Good.  Then you're good.  So

 8   that's all fine.

 9          Yes, Ms. Sharko.

10          MS. SHARKO:  One request that I think would

11   streamline this.  Ms. Parfitt has referred to

12   documents.  They are obviously relying on documents

13   for this.  If we could have those documents, that

14   would really help us identify the issues and the

15   witnesses and make sure that they are fully prepared.

16          JUDGE WOLFSON:  She doesn't want to limit it

17   to that, though.  Those are the ones she knows about.

18   There could be others.

19          MS. SHARKO:  I appreciate that.

20          JUDGE WOLFSON:  That's a starting point for

21   you is what you are saying.

22          MS. SHARKO:  But the documents they have that

23   they are probably going to use in the deposition, why

24   can't we have those now?

25          MS. PARFITT:  Your Honor, if I can respond to

27

1    that.  I don't think it's the civil procedure that I

2    preview my arguments in advance of a deposition.  I am

3    representing to the Court, and we will stand by that,

4    that we understand the breadth of what we're allowed

5    to make an inquiry.  But to have to preview documents

6    before a deposition, Ms. Sharko wants to be able to

7    then prepare their witnesses.  That's not how

8    depositions go.

9          MR. LOCKE:  Your Honor, let me just address

10   that.  They are asking people at our clients who don't

11   have firsthand knowledge of these events, many of

12   which took place 40 or 50 years ago, and we're

13   supposed to educate them.  There are -- I don't

14   know -- two million documents out there.  How do we

15   know what we need to educate our clients on if we

16   don't have the documents?

17         The topics are very broad and you could hear

18   in this discourse the breadth of what we need to

19   educate our clients on.  We need to have some sense so

20   that we can say:  Okay.  There is not going to be a

21   surprise to a corporate representative and we're

22   binding our client to a position on a document that

23   they haven't seen before.

24         MS. SHARKO:  There is also plenty of precedent

25   for providing in advance of a deposition the exhibits

1    that you in good faith intend to use, and indeed

2    that's one of the issues that Mr. Lapinski and I are

3    presently discussing in the negotiation about the

4    deposition protocol.

5            JUDGE WOLFSON:  We had a little bit of this

6    discussion the last time because we talked about

7    identifying the documents and we talked about whether

8    it's a week in advance or something like that.  We had

9    some discussion about it.  I don't know where we ended

10   up with it.

11           MS. PARFITT:  Your Honor, where we ended up

12   is, we did not settle that discussion.  There have

13   been discussions between Mr. Lapinski and Ms. Sharko

14   with regard to that.  The plaintiffs' position is that

15   there is precedent as well that we do not have to do

16   that.

17           JUDGE WOLFSON:  I guess if there is this issue

18   remaining about previewing the documents and you can't

19   resolve it, present it to Judge Pisano.

20           MS. PARFITT:  Your Honor, with regard to Mr.

21   Locke's position, the truth of the matter is and I

22   find it interesting, yes, millions of documents have

23   been presented from their files.  That's why the Court

24   has narrowed it down.  You told us, follow 30(b)(6)

25   depositions, present different topics, and the

1   defendants will then present people who could address

2   these topics.

3        So I don't think there is a grand surprise and

4   that's generally how a 30(b)(6) situation works, that

5   you identify a schedule of items that you wish someone

6   to speak about on behalf of the corporation and they

7   do.  And as your Honor indicated in the last status

8   conference, if that one individual is not capable, not

9   because they are not competent but just not in their

10  wheelhouse, produce someone else.

11       So I don't think there is an element of

12  surprise.  And to be put in a position that we provide

13  the defendants with all the documents that we might

14  show during a deposition, again, as your Honor has

15  indicated, there is a dispute between the parties as

16  to whether or not we should have to do that and that's

17  something if we can't resolve it, as you indicated,

18  we'll take it before Judge Pisano.

19       MS. SHARKO:  So there is really three issues

20  here.  The issue that we discussed in some detail at

21  the last conference was whether the plaintiff could

22  have the documents that the witnesses reviewed to

23  prepare for the deposition.  That's one issue.  You

24  told us to resolve it or go to Judge Pisano, and we'll

25  do one or the other.

30

1          JUDGE WOLFSON:  But I said you can't have that

2    general question.  That is a work product question.

3          MS. SHARKO:  Right.

4          JUDGE WOLFSON:  I had already decided that.

5    That's general law.  You can ask a witness:  Did you

6    review this document?  That's not your work product,

7    because that's from using their own abilities to think

8    that was a document that was relevant and they should

9    have reviewed.

10          Let Ms. Sharko finish.

11          MR. LAPINSKI:  That's fine.

12          JUDGE WOLFSON: So have a seat.  When she's

13    done, you'll get your turn.

14          MS. SHARKO:  The second bucket of issues is

15    whether we get the exhibits, all of the exhibits in

16    advance, and I appreciate that you said we should

17    resolve that or take it Judge Pisano, and we will.

18          The third issue is:  Ms. Parfitt is

19    representing that there are certain documents that

20    relate to the topic she is asking your Honor to add to

21    the notice.  My request is:  May we have those

22    documents?  If Ms. Parfitt were filing a motion, she

23    would attach those as exhibits.

24          JUDGE WOLFSON:  I think it would be helpful.

25    You have already indicated there are a couple of

31

1    documents that you have, and frankly to make sure we

2    have somebody who is going to talk about that, and a

3    couple have been identified in the briefing you gave

4    me already.  It's not going to limit you from my

5    perspective.

6         But if there are ones that you know that are

7    going to the subject and you want to make sure you

8    have someone who is going to be able to discuss that

9    document and what's behind it -- I know you have

10   identified, for instance, these surveillance documents

11   that talk about the criteria and things.  Let's do it.

12   It's not a secret.  Let's make sure that they know and

13   they have somebody there to do it.

14        MS. PARFITT:  Your Honor, I just want to make

15   sure I'm not in the position where if I give generally

16   a representative document that I'm not going to be

17   able to at the time of the deposition to bring out my

18   cache of whatever it is I need to ask that person.

19   Again, these depositions aren't a preview of the

20   strategy of the plaintiffs.

21        I understand what the Court is saying.  I will

22   tell you this:  The deposition notices that we sent

23   for the 30(b)(6)s, I don't think we provided those to

24   you.  We can today.  They are very specific.

25        JUDGE WOLFSON:  Okay.

1          MS. PARFITT:  We can provide that to you and

2    I'll pass that to the Court at the appropriate time.

3    They are very specific.  And what we can do is, if

4    there is a represented document we want to make sure

5    that someone can speak to it, I think it behooves us

6    to make it very clear and I think we can do that and

7    I --

8          JUDGE WOLFSON:  That's what I'm suggesting.

9    It could be that document.

10          MS. PARFITT:  I just don't want to be limited.

11          JUDGE WOLFSON:  I think I said I'm not going

12    to limit you.  But I want in advance if you know that

13    there are a critical few -- I didn't say I'm limiting.

14          What I said is, if you know there are a

15    critical few that you are definitely going to want to

16    discuss and that stemming from that there could be

17    others, they'll know that if you are talking about

18    those, they have to know about the others that come

19    around it, that's fine.

20          You are not going to identify chapter and

21    verse with every document in your notice, but I think

22    it would be helpful if there are a few critical ones.

23    It's not going to really be a surprise to anyone.

24          Let's put them in.  I think that would be

25    helpful.

1          You had something, Mr. Locke?

2          MR. LOCKE:  No, your Honor.  Thank you.

3          JUDGE WOLFSON:  Mr. Lapinski,.

4          MR. LAPINSKI:  I did, your Honor.  Thank you

5     very much.

6          Going back to the first point that was raised

7     by Ms. Sharko in regard to production by defendants of

8     documents relied upon by the their 30(b)(6) witnesses

9     in order to prepare, we think that there is case law

10    that establishes that we would have a right to be able

11    to see those documents and at minimum we would like to

12    be able to present the issue to Judge Pisano and if

13    necessary brief the issue.

14         JUDGE WOLFSON:  You could present it.  It's

15    been many years since I've had to do these issues, but

16    that was always my recollection.  You can't make a

17    general request for:  Let me see everything that you

18    were shown to prepare for your deposition.  You can't

19    make that request.

20         MR. LAPINSKI:  We think there is an exception

21    as it relates to 30(b)(6) witnesses and we would just

22    like the opportunity to be heard either before your

23    Honor or Judge Pisano.

24         JUDGE WOLFSON:  My view always was that, no,

25    it's supposed to be using your abilities and acumen

34

1  because if you think that they are not adequately

2  answered, you can say:  Did you review this document

3  in preparing your testimony?

4        You're allowed to ask that and you're allowed

5  to cull out and pick out the ones that you want to ask

6  them about if they reviewed, but you can't have a

7  blanket request.  Maybe the law has changed since I

8  did this years ago, but that was the way I always

9  understood the work product.  It was your obligation

10  and you're free to ask them.

11        That does not impinge on work product if you

12  ask them:  Did you review this document in preparing

13  your testimony today?  You are picking out the

14  document and that's why it's been your work product

15  and you're allowed to do that.

16        I don't think you disagree with that, Ms.

17  Sharko.

18        MS. SHARKO:  We do agree.

19        JUDGE WOLFSON:  Okay.  Thank you.

20        MS. PARFITT:  Your Honor, if I can approach.

21        JUDGE WOLFSON:  I don't know if I need more.

22        MS. PARFITT:  These are the 30(b)(6)s.  We can

23  give them to you at the end.

24        JUDGE WOLFSON:  Fine.

25        I think we fleshed out where we are and I've

1    asked if you can identify some of the critical

2    documents as part of your notice because it would also

3    then give them the general area and they will know

4    that they better prepare someone on anything that

5    surrounds that document.

6         MS. PARFITT:  Again, my only pause is to make

7    sure that we are not in the middle of the deposition

8    and the written word wasn't there and they say:  You

9    didn't put it down there specifically in those words.

10        JUDGE WOLFSON:  I said you are not limited.

11   You are protected.

12        What's the next one?

13        MS. PARFITT:  The next area is information

14   relied upon by defendants to support their position

15   that talc products do not cause ovarian cancer.

16        Again, going specifically to the science, what

17   we understand from some written communications, but

18   again we don't have the oral communications, and again

19   this is just by way of example.  I'm not limiting my

20   inquiry to this.

21        By way of example we know that certain science

22   was introduced to the NTP, the National Toxicology

23   Program, when they were trying to make a decision --

24   when they were making a decision whether or not to

25   classify talc as a carcinogen, clearly a scientific

1    issue.

2         And what we would like to learn about that

3    are, again, these communications between the

4    defendants and perhaps the NTP, or name another

5    regulatory body, where they were providing certain

6    scientific positions that perhaps, again, when we pull

7    back the curtain those scientific positions perhaps

8    their origin had some background that would be very

9    relevant to the science.

10        For instance, what was given to the National

11   Toxicology Program about the science of talc and

12   ovarian cancer?  We would like to know that.  And what

13   role did the defendants have in the development of

14   that compendium of science that might have been

15   presented or used in order to impact perhaps a

16   decision that the NTP made?

17        That's just by way of reference.  We could use

18   IARC as well.  Again, there are documents and there

19   are communications and there are knowledge, again,

20   about the science that led to organizations making

21   decisions.  And then today the defendants stand before

22   the Court and say:  Talcum powder products can't cause

23   ovarian cancer.  And our support for that is the fact

24   that the NTP by way of example has never classified

25   talc as a carcinogen.

 1          Well, there is an inquiry, a very important
 2   scientific inquiry to be made.  The defendants may
 3   take the position that IARC in 2006 only said it was a
 4   possible carcinogen based upon the science that was
 5   submitted either by defendants.  Some of these
 6   articles that we're talking about that were relevant
 7   to the first issue about the biological plausibility
 8   might have made their way into the IARC arena and may
 9   have made a determination with regard to how IARC
10   felt.
11          So now you have large governmental and
12   regulatory bodies including the FDA who are making
13   scientific decisions based upon science.  Some of that
14   science we would like to get behind, again, the
15   curtain.  It's the science that was presented.  There
16   are lots of questions.
17          I think your Honor hit on it.  We can look at
18   documents and we can infer and some of the documents
19   we may inquire about.  Again, be careful what you ask
20   for.  Be careful what question you ask.  There may be
21   great clarity given to them that really do not favor
22   the plaintiffs' position.  That's a strategic position
23   we are taking and risk.
24          There are also communications that we may
25   learn.  People, maybe we don't know all the people

1    that had something to do with the science that then

2    was used as a basis for an opinion by a regulatory

3    body.

4           That's important to know because our experts

5    too are looking at what NTP did, what a regulatory

6    body did.  What's the body of evidence that they were

7    looking at?  Who played a role in generating that body

8    of evidence?  What were the communications?  Were

9    there communications between a J&J person or an Imerys

10   person or whomever or even PCPC that might have had

11   some bearing?

12          Again, this is strategic.  Again, we could ask

13   that one question too many and we realize that.  It's

14   important to the science because, again, these experts

15   are going to be called upon, you are going to ask

16   them:  What's your basis for that?  You might even say

17   the NTP didn't find that.  What were you relying on?

18   What kind of science were you looking at?  So I think

19   it's important we make some inquiry.

20          Again, those are examples and I even hesitate

21   to give examples because it really goes more to what

22   your Honor was saying earlier, the kinds of

23   communications and learning a little bit more about

24   these scientific issues.  It's broadening I think our

25   request a bit on science issues.  But I think we've

1  heard the Court any number of times indicate:  This is

2  about the science.  You will have your chance to do

3  other things.  And these are scientific inquiries.

4        The truth of the matter is, your Honor, if we

5  get into these depositions and we are stepping out of

6  our lane, I am quite sure, I've got very able counsel

7  on the other side, they will certainly reach out if

8  we're doing that.  But I think we understand the world

9  we're in and I think we have done everything we can to

10 try to stay in our lane.  But I think these are

11 important issues that need to be investigated.

12        And when we talk to Judge Pisano about it, if

13 we didn't make that clear we should have.  We just

14 don't want to be constrained.  We have an opportunity

15 before these expert reports are prepared to get

16 relevant information to our experts and some of that

17 would be coming from some of these science depositions

18 that are taken.

19        MS. SHARKO:  So I'm not sure why we are here

20 or what Ms. Parfitt is doing.

21        JUDGE WOLFSON:  Because I told you to come in

22 today.

23        MS. SHARKO:  Because when you look at -- first

24 of all, Judge Pisano ruled that a topic was issues

25 related to alleged influence and bias, No. 1.

1      No. 2, in the 30(b)(6) notice they sent to us,

2  in paragraph Roman numeral IV, subpart three --

3      JUDGE WOLFSON:  Why don't you hand one up to

4  me.

5      MS. SHARKO:  -- is the NTP, and there are five

6  different subparts about communications with the NTP.

7      So everything Ms. Parfitt just said in that

8  last speech about how she needs this is in this notice

9  already.  And when she gets our objections, when

10  Ms. Parfitt gets our objections, I don't think we're

11  going to object to that because I guess that

12  communications with the NTP, in paragraph 4 with IARC,

13  in paragraph 5 with FDA, in paragraph 6 with the NCI,

14  et cetera, I guess that those are topics that they are

15  allowed to have a 30(b)(6) on.

16      That's totally different from what was in this

17  brief, which is, they want to add, "information relied

18  on by defendants to support their position that talc

19  products do not cause ovarian cancer."  I submit that

20  topic is not appropriate and I'm prepared to argue

21  why.

22      But if what the plaintiffs mean by that topic

23  is communications with the NTP, the NCI, IARC,

24  et cetera, as listed in this deposition notice for the

25  most part other than one subparagraph, I don't think

41

1   we're going to object to that.  I guess that's what

2   Judge Pisano ruled.

3           JUDGE WOLFSON:  As I understand your position,

4   Ms. Sharko, what you are saying is, as we have been

5   having this discussion here in court today, there are

6   things that Ms. Parfitt is bringing up that you see as

7   really encompassed in the end by the topics that have

8   already been identified and it's more fleshing out

9   more specifically in the 30(b)(6) notice those areas.

10          MS. SHARKO:  Yes.

11          JUDGE WOLFSON:  So far it has really sounded

12  that way because when we first did the first one, we

13  said it went to bias and influence.  It also went to

14  what science might be out there that hasn't been

15  disclosed in the documents.

16          I'm hearing the same here, too.  I think it is

17  falling within these categories.  And it's more if

18  you're looking for guidance from me as to what falls

19  within those categories, but I think that is still

20  part of your negotiation.

21          You had something, Mr. Locke?

22          MR. LOCKE:  Yes, your Honor, two points:

23          First, what plaintiff said about the

24  communications with scientific entities, that's fine.

25          JUDGE WOLFSON:  Okay.

42

1          MR. LOCKE:  However, what initially was said,

2     information relied upon by defendants that talc

3     doesn't cause ovarian cancer, essentially they want to

4     be able to ask a witness to say:  Here is what NTP

5     said.  Why do you agree or disagree with what NTP

6     said?  Here is what IARC said.  Why do you agree or

7     disagree with what IARC said?

8          That's not something their experts need

9     informing their opinion.  They don't need our

10    opinions.  And that's what it's getting to where they

11    are going to be saying:  Tell us why you agree or

12    disagree with this article.

13         JUDGE WOLFSON:  I don't think that's it.  And

14    you've already said thank you, both sides have said

15    you don't have any issue with communications because

16    obviously it could go to bias and influence and it

17    goes to there.

18         The issue of your opinions is really not what

19    I see as should be asked.  It's whether there is

20    science that you had in your possession.  Presumably,

21    it's in the documents already.  And if not, if there

22    were communications or other studies that you had that

23    shows that talc does not cause cancer or whatever,

24    those are the kinds of things, not why did you form

25    your opinion.

43

1          MR. LOCKE:  Thank you, your Honor.

2          MS. PARFITT:  Your Honor, it could go either

3     way.  It could go either way that talc in their

4     possession they may have science that says talc can

5     cause ovarian cancer or they could have in their

6     position a science that says talcum powder cannot

7     cause cancer.

8          JUDGE WOLFSON:  You can ask about the science,

9     and I don't think there is going to be an objection to

10    ask about the science.

11         Right?

12         MS. SHARKO:  No, not as listed in Section

13    Roman numeral IV, one through seven or so.

14         JUDGE WOLFSON:  Okay.

15         MS. SHARKO:  My suggestion is, they sent us

16    this detailed notice.  We are on the verge of sending

17    a response.  What seems to me to be the most orderly

18    way to proceed is, if plaintiffs now feel they have to

19    amend this notice to redline it, send it to us, we'll

20    fix our responses, and if we can't agree we'll go to

21    Judge Pisano.  That is what we were told by your Honor

22    the last time to do.

23         THE COURT:  All right.

24         MS. PARFITT:  Your Honor, the reason I

25    continued to be I guess more verbose than I needed to

44

1    be is because I was actually reading from defendants'

2    objections as to what they said we wanted that we

3    didn't want before.  So I think we have a clearer

4    understanding.

5            THE COURT:  All right.  If I can make another

6    suggestion.

7            I know what you are saying, Ms. Sharko, is you

8    are going to send a written response.  All well and

9    good.  I must tell you, I think the kind of dialogue

10   we have is more effective than these written

11   responses.  Everyone sort of gets stuck on what a word

12   means, et cetera, and you go back.

13           I think if you talk it out, as we have just in

14   fact done here today, it's much are more helpful

15   because as we've had this dialogue everybody figures

16   out a little bit more of what everyone is looking to

17   do.

18           So my suggestion is, first of all, you can go

19   back.  I think it's a good suggestion by Ms. Sharko

20   that if you want to refine your 30(b)(6) notice in

21   light of what we have been discussing because it's

22   really not new categories.  It's just within the broad

23   categories we have that Judge Pisano defined the

24   different things that you are looking for more

25   specifically.

45

1          I think you might want to do that first and

2    then my suggestion is you have a discussion of what

3    that means, and then you can come back and indicate

4    which ones you object to after that discussion rather

5    than first doing it in writing and then having a

6    discussion.  Okay?

7          MS. SHARKO:  Sure.  That's fine.  I

8    anticipated discussion after the response, but we can

9    have it before.

10          JUDGE WOLFSON:  I think it will help.  It will

11    save a little bit of time and limit it maybe a little

12    bit more.

13          MS. PARFITT:  Your Honor, if I've left

14    something out, I don't want to be remiss, Mr.

15    Lapinski is --

16          JUDGE WOLFSON:  Go ahead, Mr. Lapinski.

17          MS. PARFITT:  Thank you, your Honor.

18          MR. LAPINSKI:  My only comment would be that

19    if defendants were on the verge of sending us their

20    redlines as to what we have already done, the simplest

21    thing may be to get their redlines.  We can make

22    edits, incorporating what was discussed today, and

23    send it back to them.  That seems to be the most

24    productive way to do things.

25          JUDGE WOLFSON:  I don't care.  You people do

46

1    it in whatever way you think is most expeditious to

2    move this along.  I won't suggest that my method is

3    any better than yours.

4          So that's dealt with going forward on your

5    depositions.

6          No, Ms. Sharko, you are not getting a date for

7    the Daubert hearing today, just to make the record

8    clear and have us be consistent.

9          The rest of this frankly for me is more

10   informational telling me how many cases have been

11   refiled, that you are working on these duplicate filed

12   cases and cleaning that up, and whose filing short

13   form complaints and what's happening around.  I don't

14   know that there is anything we need to discuss about

15   those other jurisdictions.  Right?

16         Okay.  Are there any other issues that we need

17   to deal with today?

18         MR. LAPINSKI:  Yes, your Honor, if we could.

19         JUDGE WOLFSON:  Yes, Mr. Lapinski.

20         MR. LAPINSKI:  Going back to the report and

21   recommendations of the Special Master, we would like

22   to be able to address the issue of the decision not to

23   allow us to have any fact witnesses at all, but be

24   limited only to 30(b)(6) witnesses.  We think that the

25   all or nothing approach of the Special Master to throw

1  out our request for fact-witness depositions was

2  inappropriate.

3         We had submitted a list of 64 potential fact

4  witnesses that was based on an understanding that we

5  were looking at the entire scope of discovery except

6  for case-specific issues.  We raised to the Court's

7  attention previously and also to the Special Master's

8  attention that we don't have to do all 64 of those

9  fact depositions prior to the submission of our

10 general causation expert reports.

11        We think that the decision not to allow any

12 fact specific depositions creates an extraordinary

13 circumstance because fact depositions are going to go

14 to the heart of the general causation issue.  We can

15 reduce the number of fact depositions that we are

16 looking to take that would be directed at general

17 causation.  But we do feel that we should be allotted

18 the opportunity to be able to take some fact-witness

19 depositions.  That would include third-party

20 depositions as well, your Honor.

21        The perfect example is, we're discussing

22 30(b)(6) depositions that deal with bias or influence.

23 If we know of a particular individual within the

24 defendants' organization that was directly involved

25 with issues of bias and influence, we think that we

48

 1   have a right to be able to take the deposition of that

 2   fact witness because they are going to provide to us

 3   information that's going to be relevant to bias, to

 4   influence, and can and will be relied upon by our

 5   experts in formulating the reports.

 6           JUDGE WOLFSON:  I think it's premature.  This

 7   is what I said before.  You are getting a lot of

 8   leeway on these 30(b)(6) depositions.

 9           As I said the last time around, I'll be very

10   surprised if there is only one witness that's

11   identified to deal with all the topics from, for

12   instance, J&J, to deal with all of them, and there

13   will be more than one 30(b)(6) witness.  You have to

14   be superman or superwoman I think to deal with all

15   these topics and be educated enough.

16           I think that it's premature as this point to

17   discuss other fact witnesses.  What I said is, if

18   these people come in and they are not prepared on the

19   topics that you need to have disclosed, then we are

20   going to revisit more depositions.

21           So until I see where we are on what you get,

22   I'm not going to make a determination that more is

23   necessary.  I indicated last time, you are not

24   foreclosed.  We'll see where we are.

25           MR. TISI:  Your Honor, at the risk of

1  belaboring the point, there is one category that I

2  would like to isolate here as being particularly

3  important.

4      JUDGE WOLFSON:  Okay.

5      MR. TISI:  What we see in the documents -- and

6  I'm going to be very concrete here.  What we see in

7  the documents is the defendants jointly using third

8  parties to try and not only influence the writing of

9  very specific articles, epidemiology studies, meta

10 analyses, et cetera, that the Court has already seen,

11 as well as speaking to IARC and NTP on their behalf.

12     When we take a 30(b)(6) deposition of the

13 defense witnesses, that's fine.  We'll find out what

14 they did, money that they paid, the kinds of things

15 that they did to influence the science.

16     But some of the best places that we could go

17 to try to do that is perhaps to the actual person who

18 lobbied the agency themselves on behalf of the

19 company, the author of the article who received the

20 payment who decided to take sections out of an article

21 that were originally in the draft, but were taken out

22 at the request of the defendants.  To go and ask the

23 third-party witness themselves is the best place to go

24 to identify that.

25     Again, I'll be even more concrete.  There are

1  authors that we understand have taken information out

2  of articles that are actually in the published

3  peer-reviewed literature as a result of requests by

4  the defense.

5       There were people, third-party witnesses, and

6  there are a limited number who were called on to speak

7  to these organizations that made decisions about

8  whether or not the product is a carcinogen or not, who

9  had conversations and went behind the scenes to try

10  and influence the direction that that particular

11  organization was going.

12       And so we believe that there are a limited

13  number of third-party witnesses and we can identify

14  them very easily and I can probably identify them

15  today that we would like to take as an adjunct to the

16  30(b)(6) witnesses of the defendants.

17       I think those are really and important.

18  Speaking to the authors of the articles or the

19  scientists who were contacted to lobby these agencies

20  are perhaps in some instances the best evidence.

21       MS. SHARKO:  The plaintiffs now this is the

22  third lawyer to come up and make the same argument.

23  These arguments have been made at hearing after

24  hearing after hearing.  Judge Pisano's ruling that we

25  go to 30(b)(6) depositions, broad 30(b)(6)

1    depositions, we submit was the correct one.

2         At this point it's offensive to have the

3    plaintiffs come in and time after time make these

4    accusations that we bought the science, we influenced

5    the scenes.

6         I would ask that Mr. Tisi be ordered to turn

7    over the documents to us that he claims supports what

8    he says, No. 1.

9         No. 2, we should go to the 30(b)(6)

10   depositions and take them, because at the end of the

11   day the plaintiffs have the burden of proof and they

12   have to show it by sound scientific evidence and

13   methodology, and presumably they have that or we

14   wouldn't be here.

15        But what the defendants did or didn't do or

16   conversations they had, A, that's already in the

17   deposition notices; but, B, I don't think it goes to

18   what they have to prove.

19        MR. TISI:  In fairness, your Honor, the focus

20   of -- you read the transcript before Judge Pisano.

21   You've heard the discussions here today.  99.9 percent

22   of the focus has been on the defendants' documents,

23   the defendants' witnesses.

24        What I'm talking about are scientists or

25   lobbyists or third parties who are not defendants in

52

1    this case, and I want to bring those forward because

2    that really hasn't been the focus of what we are

3    talking about here.  And candidly I can provide your

4    Honor.  I don't feel that I should have to provide my

5    work product to Ms. Sharko.

6          The truth of the matter is, and I can

7    represent it as an officer of the Court, based upon my

8    review of the documents a fair inference is that, yes,

9    there were people who went in and met with scientists

10   in preparation for the meetings that they had and took

11   information out, and we should be able to find that

12   information from the third parties and that hasn't

13   been a focus.

14         I appreciate the defense is trying to kind of

15   put us back in the box of the 30(b)(6) depositions.

16   But the issues related to this product have been going

17   for 30 years and they have used outside people to try

18   and blunt the science.  That's our position.  It may

19   be offensive to Ms. Sharko, but that's what we think

20   has happened.

21         JUDGE WOLFSON:  So your allegation is that

22   they have done things -- when you say to "blunt the

23   science," you mean to skew the science?

24         MR. TISI:  To skew the science.

25         JUDGE WOLFSON:  To hide some of the science.

53

1    To change the science that people were going to write

2    about in their studies.  I think that's your

3    allegation.  Right?

4         MR. TISI:  I have examples that I was prepared

5    to bring in for the Court.  But there is one instance,

6    for example, where the National Toxicology Program,

7    which is a government body that looks at carcinogens,

8    was considering listing talc as a carcinogen.  In

9    preparation for that process, the companies got

10   together -- again, it's clear from the documents.

11        JUDGE WOLFSON:  What companies?

12        MR. TISI:  Johnson & Johnson, Imerys and PCPC

13   got together.  They got a law firm to come in.  They

14   got copies of articles that they spoke to several

15   scientists that were about ready to publish articles.

16   They got copies of the articles.  They redlined the

17   article.  They took information, whole sections out of

18   the articles.  The articles were subsequently

19   published.  The authors who were involved in the

20   process actually went and participated in the National

21   Toxicology Program for the purposes of influencing

22   whether talc would be listed --

23        JUDGE WOLFSON:  None of these authors have

24   been deposed in other litigations?

25        MR. TISI:  They have not been deposed.

54

1          JUDGE WOLFSON:  It's amazing this has gone on

2     for years and all the things you are saying were

3     allegedly not done by anyone in any prior case, but

4     okay.

5          MR. TISI:  Those were individual cases --

6          JUDGE WOLFSON:  That have been tried to

7     conclusion with some of the same counsel that are in

8     this room.

9          MR. TISI:  But, your Honor, in fairness what a

10    person in the state court could do and the reach of

11    subpoena power and what they can do --

12         JUDGE WOLFSON:  Some were in federal court.

13    Missouri had federal court.

14         MR. TISI:  Missouri was in state court, your

15    Honor.

16         JUDGE WOLFSON:  Wasn't there a federal court?

17    Isn't there one pending now?  I thought there was one

18    in federal court.

19         MR. TISI:  If there is now, I don't know of

20    it.  But your question was directed towards cases that

21    have been tried to verdict.  Those have been state

22    court trials in this case with the exception of the

23    Dakota case years and years and years ago.

24         There have been individual or small groups of

25    cases which were not aggregated, which there is not

1  federal subpoena power, which we did not have the

2  manpower, which we did not have the resources to do

3  the kinds of things that we really wanted to do here.

4  Again, I am prepared to show you those kinds of

5  influences.

6        Ms. Sharko used the word "offensive."  I'm

7  going to use the word "frustrating."  That's what so

8  frustrating to us because we know that there were

9  scientists who were brought into the fold in order to

10 try and shape and influence the direction of the

11 science which was clearly showing a consistent pattern

12 of an increased risk with nonasbestos form of talc.

13       JUDGE WOLFSON:  Let me ask you this:  You've

14 apparently gotten some information that says that

15 these scientists were approached whether directly or

16 indirectly by the defendants to modify their articles

17 by excising portions, redlining or whatever.

18       Have you been privy to what was actually

19 removed and how that actually relates to the science

20 of causation?

21       MR. TISI:  Yes, your Honor.  Again, I have

22 them here and I can show them to you.

23       What happened was part of the presentations

24 was that these authors were to put a balanced section

25 in the article which acknowledges all of the evidence

56

1    in favor of causation; and the lawyers, the lawyers

2    involved in the cases -- we were provided with the law

3    firm who is actually acknowledged in the article not

4    as a law firm, but they are acknowledged as a

5    contributor to the article, a law firm, which I've

6    never seen happen in all the years I've done this.

7         A law firm is acknowledged in an article as

8    contributing to the article.  They are identified as a

9    corporation and not a law firm.  Sections were pulled

10   out of the article that would acknowledge that there

11   has been published literature -- in the published

12   literature acknowledging that there is an association,

13   that there is --

14        JUDGE WOLFSON:  I want to stop you right there

15   because that's a little bit different than what you

16   were representing.

17        My question to you was: Were they asked to

18   remove actual science of their opinions?  What you

19   just explained to me was putting in some kind of

20   paragraph that acknowledges that there were some who

21   have written and acknowledged a causation.

22        We know that there are some people who do.  In

23   fact, some of these were the experts that have served

24   for the plaintiffs in the past in these cases

25   including before Judge Johnson down in South Jersey.

1          My question to you was:  Was there something

2     that indicates that they actually changed their

3     opinions or removed their own science from the article

4     as opposed to talking about what other people had out

5     there?  I understand the bias issue, but I'm trying to

6     get to something more.

7          MR. TISI:  Again, would it help your Honor if

8     I showed you what we have?  I'm happy to do that.

9          JUDGE WOLFSON:  No, because you haven't had

10    it.

11         MS. SHARKO:  Unless we get copies.

12         JUDGE WOLFSON:  I don't know that I'm ready

13    then for it today.  Why don't you show it to your

14    adversary and if we need to discuss this more or you

15    want to present it to Judge Pisano in the first

16    instance to get to the nitty-gritty, that's fine.  You

17    can show it.

18         MR. TISI:  Okay.

19         JUDGE WOLFSON:  Look, I understand that what

20    you are talking about is now some third-party

21    depositions, not the direct defendants.  I don't know

22    how many you are talking about.  But perhaps if you

23    show what's causing you to have that view that this is

24    critical testimony to the causation issue because you

25    believe it either goes to the bias or somehow skewed

1    the science that was being presented, you can have

2    that discussion.  If there is disagreement, you can

3    tee it up to Judge Pisano.

4         MR. TISI:  To be clear, your Honor, there are

5    a limited number of witnesses that would fall in this

6    category.

7         JUDGE WOLFSON:  Okay.

8         MR. TISI:  For example, people who were hired

9    by the defendants to lobby these agencies and authors

10   of articles.  But there is a limited number and we

11   will be happy to do that.  But I really wanted to

12   specifically carve out the third parties so that you

13   understood.

14        JUDGE WOLFSON:  I'm not going to make a ruling

15   on it today.  I understand your position.  I think

16   it's something you're going to share with the other

17   parties in the case.

18        Yes, Mr. Locke.

19        MR. LOCKE:  Just to be clear.  I won't address

20   the merits.  I think there were a lot of different

21   alleged facts or allegations that are conflating

22   events there.

23        The witnesses Mr. Tisi is talking about are

24   not part of the 62 or 67 previously listed.  These are

25   additional witnesses on --

1        MR. TISI:  They are.  They are, your Honor.

2        MR. LOCKE:  I don't think most of the people

3   you just mentioned --

4        MR. TISI:  They are in Section 5 of the

5   original list that we did and candidly there are nine

6   of them and we'br shrunk them to a handful of them,

7   four of them.

8        MR. LOCKE:  I think many of those were

9   actually testing talc products, not the kind of

10  lobbying activities he's talking about.

11       MR. TISI:  With all due respect, they are not.

12       JUDGE WOLFSON:  We can go round and round.

13  This is not going to help me because I don't know who

14  is on that list.  I don't know who they are.  You are

15  all more knowledgeable about that.  All I've done is

16  say today if this is an issue you want to address,

17  I'll allow you to address it and flesh it out.

18       But certainly I understand that the defendants

19  at this point want to know exactly what it is that you

20  are talking about so they can respond.  Maybe you'll

21  reach some agreement, probably not, with Judge Pisano

22  and that's fine.  And if that doesn't make you happy I

23  know you'll come to me.  So that's okay, too.

24       MR. TISI:  Thank you, your Honor.

25       JUDGE WOLFSON:  So let's move ahead on that.

60

1    In the meantime there is plenty to do.

2            Anything else that is left open from the

3    agenda?  I know you have some remand motions.  We're

4    going to get to them.  But beyond that?

5            Okay.  Did we select and another date?

6            We can go off the record.

7            (Discussion off the record.)

61

1                    **C E R T I F I C A T E**

2

3

4

5       I, **Vincent Russoniello**, Official United States

6   Court Reporter and Certified Court Reporter of the

7   State of New Jersey, do hereby certify that the

8   foregoing is a true and accurate transcript of the

9   proceedings as taken stenographically by and before me

10  at the time, place and on the date hereinbefore set

11  forth.

12      I do further certify that I am neither a relative

13  nor employee nor attorney nor counsel of any of the

14  parties to this action, and that I am neither a

15  relative nor employee of such attorney or counsel, and

16  that I am not financially interested in this action.

17

18

19

20

21

22

        S/Vincent Russoniello
23      Vincent Russoniello, CCR
        Certificate No. 675

24

25

**0**

**08608** [1] - 1:8

**1**

**1** [2] - 39:25, 51:8
**16-MD-2738(FLW)(LHG**
  [1] - 1:2

**2**

**2** [2] - 40:1, 51:9
**2006** [1] - 37:3
**2008** [1] - 7:17
**2018** [1] - 1:5
**28** [1] - 3:8

**3**

**30** [2] - 20:18, 52:17
**30(b)(6** [25] - 5:3, 10:1,
  17:12, 20:9, 20:16, 21:3,
  21:20, 28:24, 29:4, 33:8,
  33:21, 40:1, 40:15, 41:9,
  44:20, 46:24, 47:22,
  48:8, 48:13, 49:12,
  50:16, 50:25, 51:9,
  52:15
**30(b)(6)s** [2] - 31:23,
  34:22

**4**

**4** [1] - 40:12
**40** [2] - 20:18, 27:12
**402** [1] - 1:8

**5**

**5** [2] - 40:13, 59:4
**50** [1] - 27:12
**50451** [1] - 7:18
**53** [1] - 6:17
**588-9516** [1] - 1:25

**6**

**6** [2] - 1:5, 40:13
**60** [1] - 21:12
**609** [1] - 1:25
**62** [1] - 58:24
**64** [2] - 47:3, 47:8
**67** [1] - 58:24
**675** [1] - 61:23

**7**

**753** [1] - 3:8

**9**

**99.9** [1] - 51:21

**A**

**abilities** [2] - 30:7, 33:25
**able** [11] - 27:6, 31:8,
  31:17, 33:10, 33:12,
  39:6, 42:4, 46:22, 47:18,
  48:1, 52:11
**ABOVE** [1] - 3:11
**ABOVE-ENTITLED** [1] -
  3:11
**abundance** [1] - 11:4
**abuse** [2] - 6:23, 8:11
**accept** [1] - 16:25
**accepts** [1] - 6:17
**accurate** [1] - 61:8
**ACCURATE** [1] - 3:9
**accusations** [1] - 51:4
**acknowledge** [1] - 56:10
**acknowledged** [4] -
  56:3, 56:4, 56:7, 56:21
**acknowledges** [2] -
  55:25, 56:20
**acknowledging** [1] -
  56:12
**act** [1] - 26:6
**ACTION** [1] - 1:2
**action** [2] - 61:14, 61:16
**actions** [1] - 25:19
**activities** [1] - 59:10
**actual** [2] - 49:17, 56:18
**acumen** [1] - 33:25
**add** [4] - 12:14, 21:23,
  30:20, 40:17
**additional** [1] - 58:25
**address** [9] - 4:24, 9:22,
  18:1, 27:9, 29:1, 46:22,
  58:19, 59:16, 59:17
**addressed** [1] - 9:19
**adequately** [1] - 34:1
**adjunct** [1] - 50:15
**advance** [5] - 27:2,
  27:25, 28:8, 30:16,
  32:12
**adversary** [1] - 57:14
**agencies** [2] - 50:19,
  58:9

**agency** [1] - 49:18
**agenda** [2] - 4:22, 60:3
**aggregated** [1] - 54:25
**ago** [3] - 27:12, 34:8,
  54:23
**agree** [6] - 9:25, 34:18,
  42:5, 42:6, 42:11, 43:20
**agreement** [1] - 59:21
**ahead** [2] - 45:16, 59:25
**ain't** [1] - 13:13
**ALABAMA** [1] - 1:12
**ALEXANDRA** [1] - 2:7
**Alexandra** [1] - 4:16
**allegation** [2] - 52:21,
  53:3
**allegations** [1] - 58:21
**alleged** [2] - 39:25, 58:21
**allegedly** [1] - 54:3
**ALLEN** [1] - 1:12
**allotted** [1] - 47:17
**allow** [3] - 46:23, 47:11,
  59:17
**allowed** [6] - 24:21, 27:4,
  34:4, 34:15, 40:15
**allowing** [1] - 21:13
**alone** [1] - 22:8
**amazing** [1] - 54:1
**amend** [1] - 43:19
**amended** [1] - 21:22
**America** [1] - 2:13
**AN** [1] - 3:9
**analyses** [1] - 49:10
**analysis** [2] - 17:15,
  17:19
**ANN** [1] - 2:12
**answered** [1] - 34:2
**anticipated** [1] - 45:8
**anyway** [1] - 9:23
**appeal** [3] - 6:4, 6:7, 8:11
**appear** [2] - 17:20, 21:18
**appearances** [1] - 4:5
**appearing** [1] - 22:17
**appreciate** [4] - 23:5,
  26:19, 30:16, 52:14
**approach** [2] - 34:20,
  46:25
**approached** [1] - 55:15
**appropriate** [3] - 10:1,
  32:2, 40:20
**archeology** [1] - 24:16
**area** [2] - 35:3, 35:13
**areas** [9] - 8:18, 9:3,
  9:14, 10:1, 10:2, 10:8,

10:16, 10:23, 41:9
**arena** [1] - 37:8
**argue** [2] - 13:24, 40:20
**argued** [1] - 18:22
**arguing** [1] - 17:11
**argument** [4] - 6:24,
  7:12, 13:23, 50:22
**arguments** [3] - 7:10,
  27:2, 50:23
**ARPS** [1] - 1:20
**article** [19] - 15:4, 15:18,
  15:19, 16:3, 24:6, 24:9,
  24:11, 24:15, 42:12,
  49:19, 49:20, 53:17,
  55:25, 56:3, 56:5, 56:7,
  56:8, 56:10, 57:3
**articles** [13] - 11:9,
  11:17, 37:6, 49:9, 50:2,
  50:18, 53:14, 53:15,
  53:16, 53:18, 55:16,
  58:10
**articulate** [1] - 23:4
**articulated** [1] - 23:18
**ASHCRAFT** [1] - 1:13
**aspect** [2] - 10:25, 21:2
**association** [1] - 56:12
**assuming** [1] - 18:5
**attach** [1] - 30:23
**attack** [2] - 13:10, 13:12
**attention** [2] - 47:7, 47:8
**attorney** [2] - 61:13,
  61:15
**author** [2] - 24:7, 49:19
**authors** [8] - 15:8, 21:16,
  50:1, 50:18, 53:19,
  53:23, 55:24, 58:9
**aware** [2] - 22:10, 25:23

**B**

**background** [2] - 18:8,
  36:8
**balanced** [1] - 55:24
**barred** [2] - 9:10, 9:12
**Barry** [2] - 4:16, 4:20
**BARRY** [1] - 2:7
**based** [10] - 14:14, 18:1,
  18:3, 22:15, 25:5, 25:6,
  37:4, 37:13, 47:4, 52:7
**bases** [1] - 17:23
**basis** [5] - 25:5, 25:6,
  38:2, 38:16
**BE** [1] - 3:9

**bearing** [1] - 38:11
**BEASLEY** [1] - 1:12
**begin** [1] - 5:3
**beginning** [1] - 13:17
**behalf** [5] - 1:21, 2:13, 29:6, 49:11, 49:18
**Behalf** [2] - 1:16, 2:8
**behind** [5] - 14:20, 14:21, 31:9, 37:14, 50:9
**behooves** [1] - 32:5
**BEISNER** [1] - 1:20
**belaboring** [1] - 49:1
**beliefs** [1] - 19:5
**best** [6] - 12:11, 12:12, 24:1, 49:16, 49:23, 50:20
**better** [2] - 35:4, 46:3
**between** [4] - 28:13, 29:15, 36:3, 38:9
**beyond** [3] - 17:9, 18:15, 60:4
**bias** [16] - 13:11, 17:3, 17:10, 18:15, 20:21, 21:2, 22:4, 22:9, 39:25, 41:13, 42:16, 47:22, 47:25, 48:3, 57:5, 57:25
**BIDDLE** [1] - 1:18
**binding** [1] - 27:22
**biological** [7] - 10:23, 11:5, 11:10, 13:3, 17:24, 22:1, 37:7
**biologically** [2] - 11:24, 12:2
**bit** [10] - 17:9, 22:7, 23:19, 28:5, 38:23, 38:25, 44:16, 45:11, 45:12, 56:15
**blanket** [1] - 34:7
**blown** [1] - 20:3
**blunt** [2] - 52:18, 52:22
**bodies** [1] - 37:12
**body** [8] - 13:12, 14:16, 36:5, 38:3, 38:6, 38:7, 53:7
**bought** [1] - 51:4
**box** [1] - 52:15
**breadth** [2] - 27:4, 27:18
**breaking** [1] - 8:14
**brief** [2] - 33:13, 40:17
**briefed** [1] - 6:10
**briefing** [1] - 31:3
**briefly** [1] - 9:18
**bring** [3] - 31:17, 52:1,

53:5
**bringing** [1] - 41:6
**broad** [3] - 27:17, 44:22, 50:25
**broadening** [1] - 38:24
**broader** [2] - 22:7, 23:20
**brought** [1] - 55:9
**bucket** [1] - 30:14
**burden** [1] - 51:11
**BY** [9] - 1:12, 1:14, 1:16, 1:18, 1:20, 2:6, 2:7, 2:10, 2:12

**C**

**cache** [1] - 31:18
**cancer** [11] - 12:5, 13:5, 16:7, 35:15, 36:12, 36:23, 40:19, 42:3, 42:23, 43:5, 43:7
**candidly** [2] - 52:3, 59:5
**cannot** [1] - 43:6
**capable** [1] - 29:8
**carcinogen** [5] - 35:25, 36:25, 37:4, 50:8, 53:8
**carcinogens** [1] - 53:7
**care** [1] - 45:25
**careful** [2] - 37:19, 37:20
**carve** [1] - 58:12
**case** [10] - 6:21, 7:5, 10:15, 33:9, 47:6, 52:1, 54:3, 54:22, 54:23, 58:17
**case-specific** [1] - 47:6
**cases** [8] - 8:6, 46:10, 46:12, 54:5, 54:20, 54:25, 56:2, 56:24
**categories** [9] - 5:13, 8:15, 17:11, 20:7, 20:23, 41:17, 41:19, 44:22, 44:23
**category** [5] - 5:19, 5:21, 8:9, 49:1, 58:6
**causation** [14] - 9:17, 9:21, 14:18, 16:16, 18:21, 25:1, 25:2, 47:10, 47:14, 47:17, 55:20, 56:1, 56:21, 57:24
**causative** [1] - 16:18
**causing** [2] - 13:5, 57:23
**CCR** [3] - 1:24, 3:16, 61:23
**certain** [3] - 30:19, 35:21, 36:5

**certainly** [4] - 9:24, 21:9, 39:7, 59:18
**Certificate** [1] - 61:23
**CERTIFIED** [1] - 3:9
**Certified** [1] - 61:6
**certify** [2] - 61:7, 61:12
**cetera** [4] - 40:14, 40:24, 44:12, 49:10
**chambers** [1] - 7:3
**chance** [3] - 17:14, 24:22, 39:2
**change** [2] - 25:20, 53:1
**changed** [2] - 34:7, 57:2
**chapter** [1] - 32:20
**CHEONG** [2] - 2:8, 4:18
**Cheong** [1] - 4:19
**CHRIS** [1] - 1:14
**Circuit** [2] - 7:15, 7:20
**circumstance** [1] - 47:13
**cite** [2] - 7:14, 8:6
**cites** [2] - 7:13, 7:15
**civil** [1] - 27:1
**CIVIL** [1] - 1:2
**claim** [2] - 10:7, 12:25
**claims** [1] - 51:7
**clarification** [1] - 23:8
**clarified** [1] - 21:22
**clarity** [1] - 37:21
**CLARKSON** [1] - 1:7
**classified** [1] - 36:24
**classify** [1] - 35:25
**cleaning** [1] - 46:12
**clear** [17] - 6:13, 8:5, 8:18, 9:7, 12:8, 12:18, 12:22, 22:21, 24:14, 24:21, 25:9, 32:6, 39:13, 46:8, 53:10, 58:4, 58:19
**cleared** [1] - 12:14
**clearer** [1] - 44:3
**clearly** [5] - 10:25, 11:2, 13:6, 35:25, 55:11
**CLERK** [1] - 4:2
**client** [2] - 16:23, 27:22
**clients** [3] - 27:10, 27:15, 27:19
**coming** [2] - 5:25, 39:17
**comment** [3] - 15:3, 15:18, 45:18
**commented** [1] - 24:12
**Committee** [1] - 1:16
**communications** [22] - 15:7, 17:20, 21:4, 21:16, 21:18, 22:9, 23:17,

24:17, 35:17, 35:18, 36:3, 36:19, 37:24, 38:8, 38:9, 38:23, 40:6, 40:12, 40:23, 41:24, 42:15, 42:22
**community** [1] - 16:2
**companies** [2] - 53:9, 53:11
**company** [6] - 18:10, 18:20, 18:25, 19:2, 19:4, 49:19
**compendium** [1] - 36:14
**competent** [1] - 29:9
**complaints** [1] - 46:13
**concern** [2] - 17:17, 25:12
**concerned** [2] - 19:9, 22:13
**concerns** [1] - 20:12
**conclusion** [1] - 54:7
**concrete** [2] - 49:6, 49:25
**conducted** [1] - 7:7
**conducting** [1] - 21:17
**CONFERENCE** [1] - 1:4
**conference** [3] - 22:22, 29:8, 29:21
**confines** [1] - 10:20
**conflating** [1] - 58:21
**connection** [1] - 26:2
**consider** [2] - 9:14, 10:2
**considering** [2] - 9:23, 53:8
**consistent** [2] - 46:8, 55:11
**constrained** [1] - 39:14
**constructed** [1] - 14:22
**contacted** [1] - 50:19
**contaminated** [1] - 16:23
**continued** [1] - 43:25
**contributing** [1] - 56:8
**contributor** [1] - 56:5
**conversations** [2] - 50:9, 51:16
**convey** [1] - 23:6
**copies** [3] - 53:14, 53:16, 57:11
**corporate** [1] - 27:21
**corporation** [2] - 29:6, 56:9
**Correct** [1] - 6:24
**correct** [7] - 5:4, 8:24, 10:11, 10:17, 14:6,

23:12, 51:1
**COUGHLIN** [1] - 2:10
**counsel** [6] - 4:14, 4:17, 39:6, 54:7, 61:13, 61:15
**couple** [5] - 4:13, 4:23, 15:24, 30:25, 31:3
**course** [2] - 6:17, 11:7
**COURT** [7] - 1:1, 1:25, 3:16, 12:25, 20:11, 43:23, 44:5
**court** [9] - 4:1, 41:5, 54:10, 54:12, 54:13, 54:14, 54:16, 54:18, 54:22
**Court** [24] - 10:20, 11:3, 12:11, 12:19, 12:21, 15:24, 16:9, 23:21, 24:3, 24:20, 24:23, 25:4, 25:9, 27:3, 28:23, 31:21, 32:2, 36:22, 39:1, 49:10, 52:7, 53:5, 61:6
**Court's** [3] - 13:16, 15:10, 47:6
**COURTHOUSE** [1] - 1:7
**creates** [1] - 47:12
**criteria** [1] - 31:11
**critical** [5] - 32:13, 32:15, 32:22, 35:1, 57:24
**CRR** [1] - 1:24
**cull** [1] - 34:5
**curtain** [3] - 14:21, 36:7, 37:15

**D**

**D.C** [2] - 1:20, 2:6
**Dakota** [1] - 54:23
**Daniel** [1] - 4:8
**DANIEL** [1] - 1:16
**date** [3] - 46:6, 60:5, 61:10
**Daubert** [1] - 46:7
**de** [4] - 6:19, 8:4, 8:8, 9:23
**deadlines** [1] - 7:24
**deal** [5] - 46:17, 47:22, 48:11, 48:12, 48:14
**dealing** [1] - 11:4
**dealt** [1] - 46:4
**debated** [1] - 11:22
**decided** [2] - 30:4, 49:20
**deciding** [1] - 7:9
**decision** [6] - 7:17, 35:23, 35:24, 36:16,

46:22, 47:11
**decisions** [5] - 7:6, 7:22, 36:21, 37:13, 50:7
**Defendant** [3] - 1:21, 2:8, 2:13
**defendant** [5] - 6:21, 13:20, 13:25, 23:12, 25:19
**defendant's** [1] - 25:17
**defendants** [31] - 5:12, 9:18, 10:9, 11:6, 11:23, 14:15, 15:2, 15:11, 23:17, 24:24, 29:1, 29:13, 33:7, 35:14, 36:4, 36:13, 36:21, 37:2, 37:5, 40:18, 42:2, 45:19, 49:7, 49:22, 50:16, 51:15, 51:25, 55:16, 57:21, 58:9, 59:18
**defendants'** [8] - 9:8, 11:8, 17:23, 22:1, 44:1, 47:24, 51:22, 51:23
**defense** [10] - 4:12, 10:6, 13:6, 13:7, 13:8, 15:1, 49:13, 50:4, 52:14
**defined** [2] - 7:4, 44:23
**definitely** [1] - 32:15
**deposed** [2] - 53:24, 53:25
**deposition** [16] - 20:17, 26:23, 27:2, 27:6, 27:25, 28:4, 29:14, 29:23, 31:17, 31:22, 33:18, 35:7, 40:24, 48:1, 49:12, 51:17
**depositions** [27] - 5:3, 6:22, 9:16, 10:1, 11:7, 23:15, 27:8, 28:25, 31:19, 39:5, 39:17, 46:5, 47:1, 47:9, 47:12, 47:13, 47:15, 47:19, 47:20, 47:22, 48:8, 48:20, 50:25, 51:1, 51:10, 52:15, 57:21
**describing** [1] - 23:2
**detail** [1] - 29:20
**detailed** [2] - 18:17, 43:16
**determination** [3] - 9:12, 37:9, 48:22
**determining** [1] - 7:10
**development** [1] - 36:13
**dialogue** [2] - 44:9,

44:15
**different** [8] - 21:25, 25:1, 28:25, 40:6, 40:16, 44:24, 56:15, 58:20
**difficult** [1] - 10:18
**direct** [1] - 57:21
**directed** [2] - 47:16, 54:20
**direction** [2] - 50:10, 55:10
**directly** [2] - 47:24, 55:15
**disagree** [5] - 7:1, 34:16, 42:5, 42:7, 42:12
**disagreement** [1] - 58:2
**disclosed** [3] - 25:22, 41:15, 48:19
**discourse** [1] - 27:18
**discovered** [1] - 19:10
**discovery** [3] - 8:3, 24:22, 47:5
**discretion** [2] - 6:23, 8:12
**discuss** [5] - 31:8, 32:16, 46:14, 48:17, 57:14
**discussed** [3] - 5:7, 29:20, 45:22
**discussing** [4] - 21:25, 28:3, 44:21, 47:21
**Discussion** [1] - 60:7
**discussion** [14] - 6:5, 11:25, 19:1, 21:7, 26:3, 28:6, 28:9, 28:12, 41:5, 45:2, 45:4, 45:6, 45:8, 58:2
**discussions** [6] - 5:11, 18:8, 20:24, 20:25, 28:13, 51:21
**dispute** [5] - 6:15, 8:19, 13:8, 17:23, 29:15
**disputing** [1] - 20:10
**disregard** [1] - 14:3
**Dist** [1] - 7:17
**DISTRICT** [2] - 1:1, 1:1
**document** [23] - 5:1, 11:15, 11:18, 11:25, 12:9, 12:16, 14:1, 17:21, 19:19, 21:4, 22:12, 27:22, 30:6, 30:8, 31:9, 31:16, 32:4, 32:9, 32:21, 34:2, 34:12, 34:14, 35:5
**documents** [53] - 5:2, 5:13, 5:21, 11:19, 11:20, 11:21, 12:7, 13:7, 13:8,

13:9, 15:11, 17:16, 17:17, 18:5, 18:11, 18:14, 19:13, 20:3, 21:1, 22:7, 22:17, 25:22, 26:12, 26:13, 26:22, 27:5, 27:14, 27:16, 28:7, 28:18, 28:22, 29:13, 29:22, 30:19, 30:22, 31:1, 31:10, 33:8, 33:11, 35:2, 36:18, 37:18, 41:15, 42:21, 49:5, 49:7, 51:7, 51:22, 52:8, 53:10
**done** [23] - 7:2, 7:3, 15:17, 17:19, 18:10, 18:25, 19:17, 20:1, 20:2, 20:6, 20:15, 20:19, 23:4, 30:13, 39:9, 44:14, 45:20, 52:22, 54:3, 56:6, 59:15
**door** [2] - 14:20, 14:21
**DOTRO** [1] - 2:10
**down** [4] - 8:15, 28:24, 35:9, 56:25
**draft** [2] - 5:18, 49:21
**drafts** [2] - 20:21, 24:11
**DRINKER** [1] - 1:18
**due** [1] - 59:11
**DUFFY** [1] - 2:10
**duplicate** [1] - 46:11
**during** [2] - 11:1, 29:14

**E**

**easily** [1] - 50:14
**EAST** [1] - 1:8
**eBay** [1] - 7:17
**edited** [2] - 16:1, 24:12
**edits** [1] - 45:22
**educate** [3] - 27:13, 27:15, 27:19
**educated** [1] - 48:15
**effective** [1] - 44:10
**either** [5] - 33:22, 37:5, 43:2, 43:3, 57:25
**element** [1] - 29:11
**emails** [2] - 18:3, 18:4
**employee** [2] - 61:13, 61:15
**encompass** [1] - 17:4
**encompassed** [3] - 17:10, 22:25, 41:7
**end** [5] - 19:19, 20:3, 34:23, 41:7, 51:10
**ended** [2] - 28:9, 28:11

**entering** [1] - 4:5
**entire** [1] - 47:5
**entities** [1] - 41:24
**entitled** [3] - 9:15, 19:11, 19:25
**ENTITLED** [1] - 3:11
**epidemiology** [1] - 49:9
**ESQUIRE** [12] - 1:12, 1:14, 1:14, 1:18, 1:19, 1:20, 2:6, 2:7, 2:8, 2:10, 2:11, 2:12
**ESQUIRES** [10] - 1:12, 1:13, 1:15, 1:16, 1:18, 1:20, 2:5, 2:7, 2:10, 2:12
**essentially** [4] - 6:20, 8:8, 10:7, 42:3
**establishes** [1] - 33:10
**et** [4] - 40:14, 40:24, 44:12, 49:10
**events** [2] - 27:11, 58:22
**eventually** [2] - 15:3, 16:3
**evidence** [10] - 7:25, 12:12, 12:13, 13:3, 24:25, 38:6, 38:8, 50:20, 51:12, 55:25
**evolution** [1] - 16:20
**exactly** [1] - 59:19
**example** [13] - 7:9, 7:24, 10:13, 15:20, 24:1, 24:5, 24:8, 35:19, 35:21, 36:24, 47:21, 53:6, 58:8
**examples** [5] - 9:2, 15:24, 38:20, 38:21, 53:4
**except** [2] - 8:20, 47:5
**exception** [2] - 33:20, 54:22
**excising** [1] - 55:17
**exercise** [1] - 9:11
**exhibits** [4] - 27:25, 30:15, 30:23
**existed** [1] - 22:16
**exists** [3] - 18:11, 19:24, 24:3
**expeditious** [1] - 46:1
**experience** [1] - 18:2
**expert** [5] - 19:3, 19:4, 22:14, 39:15, 47:10
**experts** [21] - 9:16, 9:17, 12:20, 13:17, 14:5, 14:8, 14:12, 14:15, 16:8, 16:13, 17:2, 18:1, 25:3,

25:8, 38:4, 38:14, 39:16, 42:8, 48:5, 56:23
**explained** [2] - 17:8, 56:19
**explanation** [1] - 12:20
**extent** [1] - 21:21
**extraordinary** [1] - 47:12

**F**

**fact** [18] - 6:17, 6:19, 17:1, 19:16, 20:1, 36:23, 44:14, 46:23, 47:1, 47:3, 47:9, 47:12, 47:13, 47:15, 47:18, 48:2, 48:17, 56:23
**fact-witness** [2] - 47:1, 47:18
**facts** [1] - 58:21
**fair** [2] - 8:22, 52:8
**fairly** [1] - 19:23
**fairness** [2] - 51:19, 54:9
**faith** [1] - 28:1
**fall** [1] - 58:5
**falling** [1] - 41:17
**falls** [4] - 18:15, 20:7, 22:5, 41:18
**far** [1] - 41:11
**favor** [3] - 16:16, 37:21, 56:1
**FDA** [2] - 37:12, 40:13
**federal** [5] - 54:12, 54:13, 54:16, 54:18, 55:1
**felt** [1] - 37:10
**few** [3] - 32:13, 32:15, 32:22
**FIELD** [1] - 2:12
**Fifth** [1] - 7:15
**figured** [1] - 7:21
**figures** [1] - 44:15
**filed** [2] - 6:4, 46:11
**files** [1] - 28:23
**filing** [2] - 30:22, 46:12
**financially** [1] - 61:16
**fine** [11] - 5:25, 9:6, 26:8, 30:11, 32:19, 34:24, 41:24, 45:7, 49:13, 57:16, 59:22
**finish** [1] - 30:10
**firm** [9] - 16:2, 24:10, 24:16, 53:13, 56:3, 56:4, 56:5, 56:7, 56:9
**firms** [1] - 14:25

**first** [12] - 4:25, 6:12, 33:6, 37:7, 39:23, 41:12, 41:23, 44:18, 45:1, 45:5, 57:15
**firsthand** [1] - 27:11
**FISHER** [1] - 1:7
**five** [1] - 40:5
**fix** [1] - 43:20
**flesh** [2] - 25:7, 59:17
**fleshed** [1] - 34:25
**fleshing** [3] - 17:7, 23:1, 41:8
**FLOM** [1] - 1:20
**focus** [4] - 51:19, 51:22, 52:2, 52:13
**fold** [1] - 55:9
**follow** [1] - 28:24
**FOLLOWING** [1] - 3:9
**folly** [1] - 9:11
**FOR** [1] - 1:1
**foreclosed** [1] - 48:24
**foregoing** [1] - 61:8
**form** [3] - 42:24, 46:13, 55:12
**format** [1] - 7:9
**formulating** [1] - 48:5
**forth** [1] - 61:11
**forward** [4] - 4:11, 8:7, 46:4, 52:1
**four** [3] - 8:15, 8:19, 59:7
**frankly** [2] - 31:1, 46:9
**fraud** [2] - 19:6, 24:22
**FREDA** [1] - 1:9
**free** [1] - 34:10
**frustrating** [2] - 55:7, 55:8
**full** [1] - 20:3
**fully** [1] - 26:15
**fund** [1] - 20:22

**G**

**general** [11] - 5:14, 9:17, 9:21, 18:21, 30:2, 30:5, 33:17, 35:3, 47:10, 47:14, 47:16
**generally** [2] - 29:4, 31:15
**generating** [1] - 38:7
**GEREL** [1] - 1:13
**given** [2] - 36:10, 37:21
**glad** [1] - 10:13
**GORDON** [1] - 2:12

**government** [1] - 53:7
**governmental** [1] - 37:11
**grand** [1] - 29:3
**great** [1] - 37:21
**gritty** [1] - 57:16
**group** [1] - 13:11
**groups** [1] - 54:24
**guess** [8] - 5:7, 5:11, 17:6, 28:17, 40:11, 40:14, 41:1, 43:25
**guidance** [1] - 41:18

**H**

**hand** [1] - 40:3
**handful** [1] - 59:6
**happy** [3] - 57:8, 58:11, 59:22
**hear** [3] - 7:10, 10:10, 27:17
**heard** [3] - 33:22, 39:1, 51:21
**hearing** [6] - 8:17, 41:16, 46:7, 50:23, 50:24
**heart** [4] - 9:8, 11:1, 13:16, 47:14
**help** [4] - 26:14, 45:10, 57:7, 59:13
**helpful** [5] - 22:23, 30:24, 32:22, 32:25, 44:14
**hemo** [1] - 11:11
**hereby** [1] - 61:7
**hereinbefore** [1] - 61:10
**hesitate** [1] - 38:20
**hide** [1] - 52:25
**hiding** [1] - 19:7
**hired** [1] - 58:8
**history** [1] - 16:19
**hit** [1] - 37:17
**Honor** [54] - 4:8, 4:13, 4:15, 4:18, 5:9, 5:24, 8:25, 10:11, 10:14, 11:1, 12:4, 14:6, 15:20, 15:22, 21:24, 22:21, 23:3, 23:7, 25:15, 26:5, 26:25, 27:9, 28:11, 28:20, 29:7, 29:14, 30:20, 31:14, 33:2, 33:4, 33:23, 34:20, 37:17, 38:22, 39:4, 41:22, 43:1, 43:2, 43:21, 43:24, 45:13, 45:17, 46:18, 47:20, 48:25, 51:19, 52:4, 54:9, 54:15,

55:21, 57:7, 58:4, 59:1, 59:24
**HONORABLE** [1] - 1:9
**hope** [1] - 18:18
**hopefully** [1] - 19:12
**hoping** [1] - 11:6

**I**

**IARC** [9] - 36:18, 37:3, 37:8, 37:9, 40:12, 40:23, 42:6, 42:7, 49:11
**identified** [12] - 5:13, 8:16, 8:19, 8:21, 9:1, 10:8, 24:3, 31:3, 31:10, 41:8, 48:11, 56:8
**identify** [8] - 21:12, 26:14, 29:5, 32:20, 35:1, 49:24, 50:13, 50:14
**identifying** [3] - 9:10, 9:15, 28:7
**Imerys** [3] - 2:13, 38:9, 53:12
**impact** [1] - 36:15
**impacted** [1] - 14:23
**impinge** [1] - 34:11
**implied** [1] - 20:13
**important** [13] - 4:23, 9:3, 14:11, 14:20, 16:19, 20:25, 37:1, 38:4, 38:14, 38:19, 39:11, 49:3, 50:17
**IN** [2] - 1:4, 3:10
**inappropriate** [1] - 47:2
**Inc** [2] - 7:17
**include** [3] - 21:3, 23:15, 47:19
**included** [1] - 21:9
**including** [3] - 24:19, 37:12, 56:25
**incorporating** [1] - 45:22
**increased** [1] - 55:12
**indeed** [4] - 11:3, 11:10, 23:5, 28:1
**indicate** [2] - 39:1, 45:3
**indicated** [6] - 12:4, 29:7, 29:15, 29:17, 30:25, 48:23
**indicates** [1] - 57:2
**indirectly** [1] - 55:16
**individual** [5] - 25:15, 29:8, 47:23, 54:5, 54:24
**infer** [1] - 37:18
**inference** [1] - 52:8

**influence** [15] - 13:11, 17:4, 18:16, 19:2, 20:21, 39:25, 41:13, 42:16, 47:22, 47:25, 48:4, 49:8, 49:15, 50:10, 55:10
**influenced** [3] - 14:14, 14:23, 51:4
**influences** [1] - 55:5
**influencing** [1] - 53:21
**information** [14] - 11:7, 13:9, 15:5, 20:4, 35:13, 39:16, 40:17, 42:2, 48:3, 50:1, 52:11, 52:12, 53:17, 55:14
**informational** [1] - 46:10
**informing** [1] - 42:9
**input** [1] - 15:12
**inquire** [1] - 37:19
**inquiries** [2] - 24:4, 39:3
**inquiry** [11] - 10:19, 11:22, 12:6, 12:15, 12:17, 13:16, 27:5, 35:20, 37:1, 37:2, 38:19
**instance** [9] - 7:23, 8:9, 24:9, 25:24, 31:10, 36:10, 48:12, 53:5, 57:16
**instances** [2] - 16:5, 50:20
**instead** [2] - 9:13, 18:7
**intend** [1] - 28:1
**intent** [1] - 23:16
**interested** [1] - 61:16
**interesting** [2] - 11:21, 28:22
**internal** [4] - 17:15, 17:18, 18:3, 19:16
**introduce** [1] - 12:9
**introduced** [1] - 35:22
**investigate** [1] - 15:15
**investigated** [1] - 39:11
**involve** [2] - 7:7, 7:23
**involved** [4] - 21:14, 47:24, 53:19, 56:2
**IS** [1] - 3:9
**isolate** [1] - 49:2
**issue** [20] - 6:3, 6:18, 11:4, 11:9, 11:22, 28:17, 29:20, 29:23, 30:18, 33:12, 33:13, 36:1, 37:7, 42:15, 42:18, 46:22, 47:14, 57:5, 57:24, 59:16

**issues** [20] - 4:23, 5:1, 7:10, 8:3, 17:5, 18:22, 24:12, 26:14, 28:2, 29:10, 30:14, 33:15, 38:24, 38:25, 39:11, 39:24, 46:16, 47:6, 47:25, 52:16
**items** [1] - 29:5
**IV** [2] - 40:2, 43:13

**J**

**J&J** [4] - 6:8, 15:7, 38:9, 48:12
**J&J's** [1] - 6:10
**JENNIFER** [1] - 2:8
**Jennifer** [1] - 4:19
**JERSEY** [1] - 1:1
**Jersey** [3] - 4:14, 56:25, 61:7
**job** [1] - 23:4
**JOHN** [1] - 1:20
**JOHNSON** [2] - 1:4
**Johnson** [5] - 1:21, 53:12, 56:25
**joining** [1] - 6:10
**joint** [1] - 5:18
**jointly** [1] - 49:7
**JUDGE** [80] - 4:3, 4:10, 4:21, 5:6, 5:10, 5:25, 7:1, 9:5, 11:13, 13:19, 14:2, 14:7, 15:6, 15:14, 15:21, 16:21, 16:24, 17:6, 18:4, 18:23, 20:24, 21:11, 22:3, 22:24, 23:9, 23:13, 23:22, 24:18, 25:11, 25:21, 26:7, 26:16, 26:20, 28:5, 28:17, 30:1, 30:4, 30:12, 30:24, 31:25, 32:8, 32:11, 33:3, 33:14, 33:24, 34:19, 34:21, 34:24, 35:10, 39:21, 40:3, 41:3, 41:11, 41:25, 42:13, 43:8, 43:14, 45:10, 45:16, 45:25, 46:19, 48:6, 49:4, 52:21, 52:25, 53:11, 53:23, 54:1, 54:6, 54:12, 54:16, 55:13, 56:14, 57:9, 57:12, 57:19, 58:7, 58:14, 59:12, 59:25
**Judge** [31] - 5:8, 6:1, 6:4, 6:14, 6:16, 7:18, 7:19,

8:16, 9:4, 9:22, 10:13, 17:3, 20:7, 28:19, 29:18, 29:24, 30:17, 33:12, 33:23, 39:12, 39:24, 41:2, 43:21, 44:23, 50:24, 51:20, 56:25, 57:15, 58:3, 59:21
**JULIE** [1] - 1:19
**junk** [1] - 25:5
**jurisdictions** [1] - 46:15
**jury** [3] - 12:10, 13:24

**K**

**kind** [8] - 6:13, 13:22, 19:21, 38:18, 44:9, 52:14, 56:19, 59:9
**kinds** [6] - 24:17, 38:22, 42:24, 49:14, 55:3, 55:4
**knowledge** [4] - 18:1, 19:15, 27:11, 36:19
**knowledgeable** [1] - 59:15
**knows** [1] - 26:17

**L**

**lane** [1] - 39:6, 39:10
**LAPINSKI** [8] - 1:16, 8:25, 30:11, 33:4, 33:20, 45:18, 46:18, 46:20
**Lapinski** [6] - 4:8, 28:2, 28:13, 45:15, 45:16, 46:19
**Lapinski,** [1] - 33:3
**large** [1] - 37:11
**largely** [1] - 17:7
**largest** [1] - 6:3
**last** [11] - 6:5, 20:17, 22:21, 28:6, 29:7, 29:21, 40:8, 43:22, 48:9, 48:23
**law** [15] - 6:18, 7:5, 14:24, 16:2, 24:10, 24:15, 30:5, 33:9, 34:7, 53:13, 56:2, 56:4, 56:5, 56:7, 56:9
**lawyer** [1] - 50:22
**lawyers** [2] - 56:1
**leading** [1] - 24:14
**learn** [2] - 36:2, 37:25
**learned** [1] - 20:5
**learning** [1] - 38:23
**least** [1] - 7:3
**leave** [1] - 23:24

**led** [1] - 36:20
**leeway** [1] - 48:8
**left** [2] - 45:13, 60:2
**LEIGH** [1] - 1:12
**less** [1] - 13:10
**letter** [1] - 6:10
**letters** [2] - 6:9, 6:15
**Lexis** [1] - 7:17
**light** [1] - 44:21
**limit** [4] - 26:16, 31:4, 32:12, 45:11
**limited** [11] - 8:9, 9:6, 9:7, 19:23, 32:10, 35:10, 46:24, 50:6, 50:12, 58:5, 58:10
**limiting** [3] - 10:19, 32:13, 35:19
**line** [1] - 23:21
**link** [1] - 16:18
**list** [4] - 5:16, 47:3, 59:5, 59:14
**listed** [4] - 40:24, 43:12, 53:22, 58:24
**listing** [1] - 53:8
**literature** [13] - 14:13, 14:16, 14:17, 15:8, 16:4, 16:6, 16:14, 16:22, 18:3, 50:3, 56:11, 56:12
**litigations** [1] - 53:24
**lobbied** [1] - 49:18
**lobby** [2] - 50:19, 58:9
**lobbying** [1] - 59:10
**lobbyists** [1] - 51:25
**local** [1] - 4:17
**Locke** [4] - 23:10, 33:1, 41:21, 58:18
**LOCKE** [15] - 2:6, 4:13, 23:7, 23:10, 23:15, 25:14, 26:5, 27:9, 33:2, 41:22, 42:1, 43:1, 58:19, 59:2, 59:8
**Locke's** [1] - 28:21
**log** [1] - 5:17
**look** [12] - 14:16, 15:17, 15:19, 16:14, 16:15, 16:17, 20:21, 23:1, 24:23, 37:17, 39:23, 57:19
**Look** [1] - 26:1
**looked** [1] - 15:19
**looking** [11] - 16:11, 16:12, 23:2, 38:5, 38:7, 38:18, 41:18, 44:16,

44:24, 47:5, 47:16
**looks** [1] - 53:7
**LORNA** [1] - 2:10

**M**

**Magistrate** [2] - 7:18, 7:19
**manner** [1] - 7:7
**manpower** [1] - 55:2
**MARCH** [1] - 1:5
**MARK** [1] - 2:11
**MARKETING** [1] - 1:4
**Master** [6] - 7:6, 7:7, 8:2, 46:21, 46:25
**Master's** [2] - 7:22, 47:7
**match** [1] - 5:20
**material** [3] - 12:22, 15:3, 19:12
**materially** [1] - 21:24
**matter** [4] - 7:5, 28:21, 39:4, 52:6
**MATTER** [1] - 3:11
**matters** [1] - 7:23
**McTiernan** [3] - 2:7, 4:16, 4:20
**MEAGHER** [1] - 1:20
**mean** [3] - 17:12, 40:22, 52:23
**means** [2] - 44:12, 45:3
**meant** [1] - 13:25
**meantime** [1] - 60:1
**meat** [1] - 12:3
**mechanistic** [1] - 10:25
**medical** [1] - 15:5
**meetings** [1] - 52:10
**mentioned** [1] - 59:3
**merits** [1] - 58:20
**met** [1] - 52:9
**meta** [1] - 49:9
**method** [1] - 46:2
**methodology** [2] - 16:12, 51:13
**MICHELLE** [1] - 1:14
**middle** [1] - 35:7
**midst** [2] - 5:11, 25:25
**might** [13] - 6:14, 7:16, 7:21, 12:11, 12:14, 17:6, 29:13, 36:14, 37:8, 38:10, 38:16, 41:14, 45:1
**migrate** [1] - 11:11
**migrating** [3] - 10:24,

13:4, 17:24
**migration** [1] - 22:2
**million** [1] - 27:14
**millions** [1] - 28:22
**minimum** [1] - 33:11
**misrepresentation** [1] - 19:7
**Missouri** [1] - 54:13
**missouri** [1] - 54:14
**misunderstanding** [1] - 23:23
**modify** [1] - 55:16
**money** [1] - 49:14
**morning** [2] - 4:15, 4:18
**most** [6] - 16:10, 40:25, 43:17, 45:23, 46:1, 59:2
**motion** [1] - 30:22
**motions** [1] - 60:3
**motive** [4] - 23:11, 23:13, 23:16, 24:23
**move** [4] - 10:5, 10:17, 46:2, 59:25
**MR** [43] - 4:13, 5:9, 5:24, 8:25, 23:7, 23:10, 23:15, 25:14, 26:5, 27:9, 30:11, 33:2, 33:4, 33:20, 41:22, 42:1, 43:1, 45:18, 46:18, 46:20, 48:25, 49:5, 51:19, 52:24, 53:4, 53:12, 53:25, 54:5, 54:9, 54:14, 54:19, 55:21, 57:7, 57:18, 58:4, 58:8, 58:19, 59:1, 59:2, 59:4, 59:8, 59:11, 59:24
**MS** [60] - 4:8, 4:15, 4:18, 5:5, 5:16, 6:25, 8:24, 10:11, 11:19, 13:2, 13:22, 14:6, 14:11, 15:9, 15:15, 15:22, 16:22, 17:1, 17:22, 18:15, 20:6, 20:12, 21:10, 21:19, 22:19, 23:3, 23:19, 23:25, 24:20, 26:10, 26:19, 26:22, 26:25, 27:24, 28:11, 28:20, 29:19, 30:3, 30:14, 31:14, 32:1, 32:10, 34:18, 34:20, 34:22, 35:6, 35:13, 39:19, 39:23, 40:5, 41:10, 43:2, 43:12, 43:15, 43:24, 45:7, 45:13, 45:17, 50:21, 57:11

**multiple** [1] - 24:11
**must** [1] - 44:9
**MY** [1] - 3:10

**N**

**name** [2] - 4:19, 36:4
**narrowed** [1] - 28:24
**National** [4] - 35:22, 36:10, 53:6, 53:20
**nature** [2] - 6:22, 7:13
**NCI** [2] - 40:13, 40:23
**necessary** [2] - 33:13, 48:23
**need** [26] - 12:4, 12:6, 12:22, 15:15, 15:16, 16:9, 16:10, 21:22, 24:4, 24:13, 24:16, 25:5, 25:7, 25:11, 27:15, 27:18, 27:19, 31:18, 34:21, 39:11, 42:8, 42:9, 46:14, 46:16, 48:19, 57:14
**needed** [1] - 43:25
**needs** [3] - 17:8, 21:21, 40:8
**negotiation** [2] - 28:3, 41:20
**Net2Phone** [1] - 7:16
**never** [4] - 19:18, 20:2, 36:24, 56:6
**NEW** [1] - 1:1
**new** [5] - 4:4, 4:14, 10:2, 22:25, 44:22
**New** [2] - 4:14, 61:7
**next** [3] - 6:1, 35:12, 35:13
**nine** [1] - 59:5
**nitty** [1] - 57:16
**nitty-gritty** [1] - 57:16
**NJ** [1] - 1:8
**NO** [1] - 1:2
**nonasbestos** [1] - 55:12
**none** [1] - 53:23
**NOTES** [1] - 3:10
**nothing** [1] - 46:25
**notice** [15] - 17:12, 20:9, 21:3, 21:20, 22:22, 30:21, 32:21, 35:2, 40:1, 40:8, 40:24, 41:9, 43:16, 43:19, 44:20
**noticed** [1] - 14:2
**notices** [3] - 20:20, 31:22, 51:17

**novo** [4] - 6:19, 8:4, 8:8, 9:23
**NTP** [13] - 35:22, 36:4, 36:16, 36:24, 38:5, 38:17, 40:5, 40:6, 40:12, 40:23, 42:4, 42:5, 49:11
**number** [7] - 8:6, 39:1, 47:15, 50:6, 50:13, 58:5, 58:10
**numeral** [2] - 40:2, 43:13

## O

**O'Dell** [1] - 9:3
**O'DELL** [1] - 1:12
**O'Dell's** [1] - 10:12
**object** [3] - 40:11, 41:1, 45:4
**objection** [1] - 43:9
**objections** [4] - 5:17, 40:9, 40:10, 44:2
**obligation** [2] - 22:8, 34:9
**obtain** [1] - 12:12
**obvious** [1] - 12:23
**obviously** [3] - 11:22, 26:12, 42:16
**OF** [3] - 1:1, 1:4, 3:10
**offensive** [3] - 51:2, 52:19, 55:6
**officer** [1] - 52:7
**OFFICIAL** [2] - 1:25, 3:16
**Official** [1] - 61:5
**older** [1] - 7:16
**omission** [1] - 26:6
**one** [33] - 7:14, 7:15, 7:21, 10:23, 12:24, 13:18, 13:19, 15:20, 17:2, 17:11, 17:13, 20:7, 24:8, 25:24, 26:10, 28:2, 29:8, 29:23, 29:25, 35:12, 38:13, 40:3, 40:25, 41:12, 43:13, 48:10, 48:13, 49:1, 51:1, 53:5, 54:17
**ones** [6] - 21:17, 26:17, 31:6, 32:22, 34:5, 45:4
**open** [4] - 4:1, 14:20, 19:22, 60:2
**opinion** [4] - 12:21, 38:2, 42:9, 42:25
**opinions** [8] - 22:14, 25:4, 25:6, 25:15, 42:10, 42:18, 56:18, 57:3

**opportunity** [3] - 33:22, 39:14, 47:18
**opposed** [1] - 57:4
**oral** [2] - 17:19, 35:18
**order** [4] - 6:5, 33:9, 36:15, 55:9
**ordered** [2] - 17:3, 51:6
**orderly** [1] - 43:17
**organization** [2] - 47:24, 50:11
**organizations** [2] - 36:20, 50:7
**origin** [1] - 36:8
**original** [1] - 59:5
**originally** [2] - 15:19, 49:21
**otherwise** [1] - 7:25
**outside** [4] - 16:1, 19:17, 20:2, 52:17
**ovarian** [9] - 12:5, 13:5, 16:7, 35:15, 36:12, 36:23, 40:19, 42:3, 43:5
**ovaries** [4] - 10:24, 11:12, 13:4, 17:25
**own** [6] - 11:8, 11:9, 11:16, 22:15, 30:7, 57:3

## P

**paid** [1] - 49:14
**paper** [4] - 15:25, 21:8, 24:17, 26:1
**papers** [7] - 9:19, 10:6, 14:24, 14:25, 16:15, 21:17, 23:18
**paragraph** [5] - 40:2, 40:12, 40:13, 56:20
**PARFITT** [29] - 1:14, 4:8, 8:24, 10:11, 11:19, 13:2, 14:6, 14:11, 15:9, 15:15, 15:22, 23:3, 23:19, 23:25, 24:20, 26:25, 28:11, 28:20, 31:14, 32:1, 32:10, 34:20, 34:22, 35:6, 35:13, 43:2, 43:24, 45:13, 45:17
**parfitt** [2] - 13:22, 39:20
**Parfitt** [10] - 11:14, 14:8, 17:8, 22:20, 26:11, 30:18, 30:22, 40:7, 40:10, 41:6
**part** [10] - 11:15, 11:18, 16:9, 21:8, 25:13, 35:2, 40:25, 41:20, 55:23,

58:24
**participated** [1] - 53:20
**particular** [3] - 24:7, 47:23, 50:10
**particularly** [2] - 16:10, 49:2
**parties** [9] - 6:9, 24:25, 29:15, 49:8, 51:25, 52:12, 58:12, 58:17, 61:14
**party** [6] - 19:18, 47:19, 49:23, 50:5, 50:13, 57:20
**pass** [1] - 32:2
**past** [1] - 56:24
**pathway** [1] - 24:14
**pattern** [1] - 55:11
**pause** [2] - 16:6, 35:6
**payment** [1] - 49:20
**PCPC** [5] - 2:8, 4:17, 23:10, 38:10, 53:12
**peer** [6] - 16:3, 16:4, 24:5, 24:9, 24:11, 50:3
**peer-reviewed** [6] - 16:3, 16:4, 24:5, 24:9, 24:11, 50:3
**pending** [1] - 54:17
**PENNSYLVANIA** [1] - 2:12
**people** [27] - 15:7, 15:12, 16:1, 18:20, 19:4, 20:14, 20:17, 20:21, 20:22, 20:24, 21:14, 24:4, 25:24, 27:10, 29:1, 37:25, 45:25, 48:18, 50:5, 52:9, 52:17, 53:1, 56:22, 57:4, 58:8, 59:2
**people's** [1] - 22:14
**percent** [1] - 51:21
**perfect** [1] - 47:21
**perhaps** [12] - 13:12, 16:16, 19:16, 22:9, 36:4, 36:6, 36:7, 36:15, 49:17, 50:20, 57:22
**person** [5] - 31:18, 38:9, 38:10, 49:17, 54:10
**perspective** [1] - 31:5
**pertains** [1] - 7:5
**pertinent** [1] - 12:24
**phone** [1] - 20:25
**pick** [1] - 34:5
**picking** [1] - 34:13
**Pisano** [23] - 5:8, 6:1,

6:14, 8:16, 9:4, 9:23, 10:13, 17:3, 28:19, 29:18, 29:24, 30:17, 33:12, 33:23, 39:12, 39:24, 41:2, 43:21, 44:23, 51:20, 57:15, 58:3, 59:21
**Pisano's** [4] - 6:4, 6:16, 20:7, 50:24
**place** [3] - 27:12, 49:23, 61:10
**places** [1] - 49:16
**plaintiff** [3] - 4:7, 29:21, 41:23
**plaintiffs** [12] - 8:18, 10:10, 17:5, 21:22, 24:25, 31:20, 40:22, 43:18, 50:21, 51:3, 51:11, 56:24
**Plaintiffs** [1] - 1:16
**plaintiffs'** [3] - 17:2, 28:14, 37:22
**plausibility** [7] - 10:24, 11:5, 11:10, 13:3, 17:24, 22:2, 37:7
**plausible** [2] - 11:24, 12:2
**played** [1] - 38:7
**player** [1] - 4:9
**players** [1] - 4:4
**plenty** [2] - 27:24, 60:1
**point** [10] - 9:12, 9:22, 12:10, 19:8, 26:20, 33:6, 48:16, 49:1, 51:2, 59:19
**points** [1] - 41:22
**portions** [1] - 55:17
**position** [21] - 5:12, 5:14, 6:20, 8:23, 8:25, 9:1, 9:8, 27:22, 28:14, 28:21, 29:12, 31:15, 35:14, 37:3, 37:22, 40:18, 41:3, 43:6, 52:18, 58:15
**positions** [2] - 36:6, 36:7
**possession** [2] - 42:20, 43:4
**possible** [1] - 37:4
**potential** [1] - 47:3
**potentially** [1] - 17:5
**POWDER** [1] - 1:4
**powder** [5] - 12:5, 13:4, 16:7, 36:22, 43:6
**power** [2] - 54:11, 55:1

**PRACTICES** [1] - 1:5

**precedent** [2] - 27:24, 28:15

**premature** [2] - 48:6, 48:16

**preparation** [2] - 52:10, 53:9

**prepare** [5] - 27:7, 29:23, 33:9, 33:18, 35:4

**prepared** [8] - 15:22, 15:24, 26:15, 39:15, 40:20, 48:18, 53:4, 55:4

**preparing** [2] - 34:3, 34:12

**present** [8] - 13:18, 15:24, 28:19, 28:25, 29:1, 33:12, 33:14, 57:15

**presentation** [2] - 7:24, 16:9

**presentations** [1] - 55:23

**presented** [5] - 9:4, 28:23, 36:15, 37:15, 58:1

**presenting** [2] - 5:7, 24:25

**presently** [1] - 28:3

**presumably** [2] - 42:20, 51:13

**pretty** [2] - 9:6, 12:23

**preview** [4] - 11:3, 27:2, 27:5, 31:19

**previewed** [2] - 14:24, 16:1

**previewing** [1] - 28:18

**previously** [3] - 25:9, 47:7, 58:24

**prioritize** [1] - 5:22

**privilege** [2] - 5:2, 5:17

**privy** [1] - 55:18

**problem** [1] - 21:11

**procedural** [5] - 6:22, 7:2, 7:5, 7:23, 8:1

**procedure** [1] - 27:1

**proceed** [2] - 8:13, 43:18

**proceedings** [2] - 7:8, 61:9

**process** [3] - 10:17, 53:9, 53:20

**produce** [1] - 29:10

**produced** [4] - 17:16, 18:6, 19:13, 19:19

**product** [8] - 30:2, 30:6,

34:9, 34:11, 34:14, 50:8, 52:5, 52:16

**production** [4] - 5:1, 11:15, 11:18, 33:7

**productive** [1] - 45:24

**PRODUCTS** [1] - 1:4

**products** [7] - 12:5, 13:4, 16:7, 35:15, 36:22, 40:19, 59:9

**Program** [4] - 35:23, 36:11, 53:6, 53:21

**proof** [1] - 51:11

**protected** [1] - 35:11

**protest** [1] - 12:14

**protocol** [1] - 28:4

**prove** [1] - 51:18

**proven** [1] - 14:19

**provide** [5] - 29:12, 32:1, 48:2, 52:3, 52:4

**provided** [2] - 31:23, 56:2

**providing** [2] - 27:25, 36:5

**publish** [1] - 53:15

**published** [7] - 16:4, 24:6, 24:14, 50:2, 53:19, 56:11

**pull** [1] - 36:6

**pulled** [1] - 56:9

**pure** [1] - 14:22

**purity** [2] - 16:11, 16:15

**purposes** [2] - 9:20, 53:21

**PURSUANT** [1] - 3:8

**put** [6] - 15:4, 29:12, 32:24, 35:9, 52:15, 55:24

**putting** [1] - 56:19

---

### Q

**questions** [3] - 15:16, 24:13, 37:16

**quite** [3] - 8:17, 21:5, 39:6

**quote** [2] - 17:3, 20:20

---

### R

**raised** [3] - 17:5, 33:6, 47:6

**rather** [2] - 15:1, 45:4

**RE** [1] - 1:4

**reach** [4] - 24:15, 39:7,

54:10, 59:21

**reached** [1] - 15:2

**reaching** [1] - 11:11

**read** [4] - 8:16, 10:6, 10:14, 51:20

**reading** [2] - 16:15, 44:1

**ready** [4] - 6:11, 14:5, 53:15, 57:12

**real** [1] - 24:14

**realistic** [1] - 10:22

**realize** [3] - 10:18, 12:16, 38:13

**really** [20] - 6:2, 8:14, 12:1, 12:2, 22:24, 25:11, 25:18, 26:14, 29:19, 32:23, 37:21, 38:21, 41:7, 41:11, 42:18, 44:22, 50:17, 52:2, 55:3, 58:11

**reason** [1] - 43:24

**reasonable** [1] - 13:15

**reasoned** [2] - 12:20, 12:21

**reasons** [1] - 18:22

**REATH** [1] - 1:18

**receipt** [1] - 25:21

**received** [4] - 6:7, 15:6, 15:11, 49:19

**recognition** [1] - 11:8

**recollection** [1] - 33:16

**recommendations** [1] - 46:21

**record** [5] - 9:9, 13:9, 46:7, 60:6, 60:7

**redline** [1] - 43:19

**redlined** [1] - 53:16

**redlines** [2] - 45:20, 45:21

**redlining** [1] - 55:17

**reduce** [1] - 47:15

**REES** [1] - 2:12

**reference** [1] - 36:17

**referenced** [1] - 17:14

**referred** [1] - 26:11

**refiled** [1] - 46:11

**refine** [1] - 44:20

**regard** [8] - 4:25, 6:21, 10:12, 24:5, 28:14, 28:20, 33:7, 37:9

**regarding** [1] - 11:8

**regardless** [1] - 9:20

**regulatory** [4] - 36:5, 37:12, 38:2, 38:5

**relate** [1] - 30:20

**related** [2] - 39:25, 52:16

**relates** [2] - 33:21, 55:19

**relative** [2] - 61:2, 61:15

**relevant** [9] - 9:20, 10:9, 17:5, 18:21, 30:8, 36:9, 37:6, 39:16, 48:3

**reliable** [1] - 25:7

**relied** [5] - 33:8, 35:14, 40:17, 42:2, 48:4

**rely** [1] - 16:8

**relying** [2] - 26:12, 38:17

**remainder** [1] - 6:13

**remaining** [1] - 28:18

**remand** [1] - 60:3

**remiss** [1] - 45:14

**remove** [1] - 56:18

**removed** [2] - 55:19, 57:3

**repeat** [1] - 23:22

**report** [2] - 5:18, 46:20

**Reporter** [2] - 61:6

**REPORTER** [2] - 1:25, 3:16

**reports** [3] - 39:15, 47:10, 48:5

**represent** [1] - 52:7

**representation** [1] - 10:12

**representations** [1] - 11:20

**representative** [2] - 27:21, 31:16

**represented** [1] - 32:4

**representing** [3] - 27:3, 30:19, 56:16

**request** [8] - 26:10, 30:21, 33:17, 33:19, 34:7, 38:25, 47:1, 49:22

**requests** [1] - 50:3

**require** [2] - 4:21, 14:9

**research** [4] - 7:3, 7:4, 11:9, 11:17

**resolve** [5] - 18:14, 28:19, 29:17, 29:24, 30:17

**resolved** [1] - 5:3

**resources** [1] - 55:2

**respect** [1] - 59:11

**respond** [2] - 26:25, 59:20

**response** [5] - 6:8, 21:21, 43:17, 44:8, 45:8

**responses** [2] - 43:20, 44:11
**rest** [1] - 46:9
**result** [1] - 50:3
**reveal** [1] - 22:10
**revealed** [1] - 20:4
**review** [7] - 6:16, 6:19, 15:2, 30:6, 34:2, 34:12, 52:8
**reviewed** [9] - 16:3, 16:4, 24:5, 24:9, 24:11, 29:22, 30:9, 34:6, 50:3
**reviewing** [2] - 6:16, 16:13
**reviews** [1] - 6:14
**revisit** [1] - 48:20
**rise** [1] - 4:2
**risk** [3] - 37:23, 48:25, 55:12
**role** [2] - 36:13, 38:7
**Roman** [2] - 40:2, 43:13
**room** [1] - 54:8
**round** [2] - 59:12
**RPR** [1] - 1:24
**rule** [1] - 8:2
**Rule** [1] - 6:17
**ruled** [2] - 39:24, 41:2
**ruling** [4] - 6:16, 9:24, 50:24, 58:14
**rulings** [4] - 6:21, 6:23, 7:2, 7:23
**Russoniello** [4] - 3:15, 61:5, 61:22, 61:23
**RUSSONIELLO** [2] - 1:24, 3:16

**S**

**S/Vincent** [2] - 3:15, 61:22
**SALES** [1] - 1:5
**save** [1] - 45:11
**scenes** [2] - 50:9, 51:5
**schedule** [1] - 29:5
**Schwartz** [1] - 7:19
**science** [59] - 10:25, 11:1, 11:2, 11:4, 12:24, 14:17, 14:22, 15:13, 16:11, 16:17, 16:18, 19:2, 19:21, 20:1, 20:5, 22:11, 22:17, 23:18, 24:24, 25:6, 25:18, 25:20, 25:22, 35:16, 35:21, 36:9, 36:11,

36:14, 36:20, 37:4, 37:13, 37:14, 37:15, 38:1, 38:14, 38:18, 38:25, 39:2, 39:17, 41:14, 42:20, 43:4, 43:6, 43:8, 43:10, 49:15, 51:4, 52:18, 52:23, 52:24, 52:25, 53:1, 55:11, 55:19, 56:18, 57:3, 58:1
**scientific** [23] - 13:3, 13:12, 14:12, 14:13, 15:4, 15:25, 16:2, 16:6, 16:14, 16:20, 17:25, 18:2, 24:12, 25:7, 35:25, 36:6, 36:7, 37:2, 37:13, 38:24, 39:3, 41:24, 51:12
**scientists** [7] - 23:17, 50:19, 51:24, 52:9, 53:15, 55:9, 55:15
**scope** [1] - 47:5
**seat** [2] - 14:10, 30:12
**second** [1] - 30:14
**secret** [1] - 31:12
**SECTION** [1] - 3:8
**section** [1] - 55:24
**Section** [2] - 43:12, 59:4
**sections** [4] - 24:15, 49:20, 53:17, 56:9
**see** [12] - 5:18, 8:14, 14:21, 22:8, 33:11, 33:17, 41:6, 42:19, 48:21, 48:24, 49:5, 49:6
**seem** [1] - 17:4
**select** [1] - 60:5
**self** [1] - 10:19
**self-limiting** [1] - 10:19
**send** [3] - 43:19, 44:8, 45:23
**sending** [3] - 10:4, 43:16, 45:19
**sense** [1] - 27:19
**sent** [4] - 18:16, 31:22, 40:1, 43:15
**serve** [1] - 21:20
**served** [1] - 56:23
**set** [1] - 61:10
**settle** [1] - 28:12
**seven** [1] - 43:13
**several** [1] - 53:14
**SEYFARRTH** [1] - 2:5
**shape** [1] - 55:10
**share** [1] - 58:16

**Sharko** [16] - 5:15, 13:21, 14:10, 16:25, 27:6, 28:13, 30:10, 33:7, 34:17, 41:4, 44:7, 44:19, 46:6, 52:5, 52:19, 55:6
**sharko** [2] - 16:21, 26:9
**SHARKO** [31] - 1:18, 5:5, 5:16, 6:25, 13:22, 16:22, 17:1, 17:22, 18:15, 20:6, 20:12, 21:10, 21:19, 22:19, 26:10, 26:19, 26:22, 27:24, 29:19, 30:3, 30:14, 34:18, 39:19, 39:23, 40:5, 41:10, 43:12, 43:15, 45:7, 50:21, 57:11
**SHAW** [1] - 2:5
**short** [1] - 46:12
**show** [10] - 13:23, 21:1, 21:4, 29:14, 51:12, 55:4, 55:22, 57:13, 57:17, 57:23
**showed** [1] - 57:8
**showing** [1] - 55:11
**shown** [1] - 33:18
**shows** [2] - 12:1, 42:23
**shrunk** [1] - 59:6
**side** [2] - 4:12, 39:7
**sides** [1] - 42:14
**SILVER** [1] - 2:11
**simplest** [1] - 45:20
**sits** [1] - 7:19
**situation** [1] - 29:4
**SKADDEN** [1] - 1:20
**skew** [2] - 52:23, 52:24
**skewed** [1] - 57:25
**SLATE** [1] - 1:20
**small** [1] - 54:24
**someone** [12] - 19:15, 19:17, 20:5, 21:7, 22:10, 25:25, 29:5, 29:10, 31:8, 32:5, 35:4
**sometimes** [1] - 12:14
**somewhat** [1] - 5:17
**sort** [3] - 6:8, 23:16, 44:11
**sound** [2] - 25:7, 51:12
**sounded** [1] - 41:11
**sounds** [1] - 20:12
**South** [1] - 56:25
**speaking** [4] - 4:6, 4:9, 49:11, 50:18
**Special** [7] - 7:6, 7:22,

8:1, 8:2, 46:21, 46:25, 47:7
**special** [1] - 5:19
**specific** [6] - 5:13, 31:24, 32:3, 47:6, 47:12, 49:9
**specifically** [5] - 35:9, 35:16, 41:9, 44:25, 58:12
**speech** [1] - 40:8
**sponsored** [1] - 24:10
**stand** [2] - 27:3, 36:21
**standard** [4] - 6:15, 6:24, 8:4, 8:12
**start** [1] - 6:12
**started** [1] - 21:25
**starting** [1] - 26:20
**state** [3] - 54:10, 54:14, 54:21
**State** [1] - 61:7
**STATE** [1] - 1:8
**statement** [4] - 11:23, 16:24, 18:17, 22:21
**statements** [2] - 17:23, 22:1
**STATES** [2] - 1:1, 1:7
**States** [1] - 61:5
**status** [1] - 29:7
**STATUS** [1] - 1:4
**stay** [2] - 10:20, 39:10
**stayed** [1] - 12:16
**Steering** [1] - 1:16
**stemming** [1] - 32:16
**STENOGRAPHIC** [1] - 3:10
**stenographically** [1] - 61:9
**stepping** [1] - 39:5
**still** [4] - 5:6, 19:22, 26:5, 41:19
**stop** [2] - 13:20, 56:14
**strategic** [2] - 37:22, 38:12
**strategy** [1] - 31:20
**streamline** [1] - 26:11
**STREET** [1] - 1:8
**stuck** [1] - 44:11
**studies** [8] - 11:16, 14:14, 20:2, 20:22, 21:15, 42:22, 49:9, 53:2
**study** [5] - 12:1, 20:3, 21:7, 21:17, 26:1
**subcategory** [1] - 20:8
**subject** [2] - 6:23, 31:7

**submission** [1] - 47:9
**submissions** [2] - 7:11, 7:25
**submit** [3] - 13:6, 40:19, 51:1
**submitted** [2] - 37:5, 47:3
**subparagraph** [1] - 40:25
**subpart** [1] - 40:2
**subparts** [1] - 40:6
**subpoena** [2] - 54:11, 55:1
**subsequently** [1] - 53:18
**suggest** [4] - 13:9, 15:11, 22:19, 46:2
**suggesting** [3] - 12:11, 18:7, 32:8
**suggestion** [5] - 43:15, 44:6, 44:18, 44:19, 45:2
**superman** [1] - 48:14
**superwoman** [1] - 48:14
**support** [4] - 19:3, 35:14, 36:23, 40:18
**supports** [1] - 51:7
**supposed** [2] - 27:13, 33:25
**surprise** [4] - 27:21, 29:3, 29:12, 32:23
**surprised** [2] - 5:18, 48:10
**surrounds** [1] - 35:5
**surveillance** [1] - 31:10
**SUSAN** [1] - 1:18
**swallows** [1] - 8:1

**T**

**Talc** [1] - 2:13
**talc** [16] - 10:24, 11:10, 17:24, 35:15, 35:25, 36:11, 36:25, 40:18, 42:2, 42:23, 43:3, 43:4, 53:8, 53:22, 55:12, 59:9
**talcum** [5] - 12:5, 13:4, 16:7, 36:22, 43:6
**Taylor** [1] - 4:16
**TAYLOR** [2] - 2:7, 4:15
**team** [1] - 22:20
**tee** [1] - 58:3
**tension** [1] - 12:17
**TERSIGNI** [1] - 1:19
**testimony** [3] - 34:3,

34:13, 57:24
**testing** [4] - 19:16, 20:6, 20:19, 59:9
**THE** [9] - 1:1, 1:9, 3:8, 3:10, 4:2, 12:25, 20:11, 43:23, 44:5
**themselves** [2] - 49:18, 49:23
**theories** [1] - 25:7
**theory** [2] - 13:13, 14:18
**Third** [1] - 7:20
**third** [12] - 19:18, 30:18, 47:19, 49:7, 49:23, 50:5, 50:13, 50:22, 51:25, 52:12, 57:20, 58:12
**third-party** [5] - 47:19, 49:23, 50:5, 50:13, 57:20
**THOMAS** [1] - 2:6
**THORNTON** [1] - 2:12
**three** [3] - 10:7, 29:19, 40:2
**throw** [1] - 46:25
**timing** [1] - 7:12
**Tisi** [2] - 51:6, 58:23
**TISI** [23] - 1:14, 5:9, 5:24, 48:25, 49:5, 51:19, 52:24, 53:4, 53:12, 53:25, 54:5, 54:9, 54:14, 54:19, 55:21, 57:7, 57:18, 58:4, 58:8, 59:1, 59:4, 59:11, 59:24
**TITLE** [1] - 3:8
**TO** [2] - 3:8, 3:9
**today** [22] - 4:4, 4:22, 6:3, 6:11, 8:5, 10:4, 15:23, 23:14, 31:24, 34:13, 36:21, 39:22, 41:5, 44:14, 45:22, 46:7, 46:17, 50:15, 51:21, 57:13, 58:15, 59:16
**together** [2] - 53:10, 53:13
**Tom** [2] - 23:10, 23:20
**tomorrow** [1] - 8:10
**took** [3] - 27:12, 52:10, 53:17
**topic** [18] - 12:15, 12:23, 12:25, 13:2, 13:15, 13:18, 17:22, 18:14, 20:9, 20:10, 21:23, 21:25, 22:3, 22:25, 30:20, 39:24, 40:20,

40:22
**topics** [12] - 9:20, 12:13, 17:2, 18:17, 27:17, 28:25, 29:2, 40:14, 41:7, 48:11, 48:15, 48:19
**totality** [1] - 14:16
**totally** [1] - 40:16
**towards** [1] - 54:20
**Toxicology** [4] - 35:22, 36:11, 53:6, 53:21
**track** [1] - 11:11
**training** [1] - 18:2
**TRANSCRIPT** [2] - 1:4, 3:9
**transcript** [4] - 8:17, 10:14, 51:20, 61:8
**TRANSCRIPTION** [1] - 3:10
**TRENTON** [1] - 1:8
**trials** [1] - 54:22
**tried** [2] - 54:6, 54:21
**true** [2] - 19:3, 61:8
**truth** [3] - 28:21, 39:4, 52:6
**try** [6] - 39:10, 49:8, 49:17, 50:9, 52:17, 55:10
**trying** [10] - 10:19, 11:2, 12:3, 12:12, 22:6, 23:5, 24:2, 35:23, 52:14, 57:5
**turn** [3] - 13:20, 30:13, 51:6
**two** [3] - 25:1, 27:14, 41:22

**U**

**U.S** [3] - 1:25, 3:16, 7:17
**U.S.C** [1] - 3:8
**under** [2] - 6:17, 18:15
**understood** [2] - 34:9, 58:13
**United** [1] - 61:5
**UNITED** [2] - 1:1, 1:7
**universe** [1] - 15:5
**unless** [2] - 8:8, 57:11
**unquote** [2] - 17:3, 20:20
**up** [16] - 5:21, 5:25, 11:11, 12:14, 15:23, 20:3, 21:1, 21:4, 22:15, 28:10, 28:11, 40:3, 41:6, 46:12, 50:22, 58:3
**USDJ** [1] - 1:9

**V**

**verbose** [1] - 43:25
**verdict** [1] - 54:21
**verge** [2] - 43:16, 45:19
**verse** [1] - 32:21
**versed** [1] - 14:12
**versus** [1] - 12:18
**view** [4] - 22:15, 26:5, 33:24, 57:23
**views** [3] - 23:18, 25:16, 25:17
**VINCENT** [2] - 1:24, 3:16
**Vincent** [2] - 61:5, 61:23
**Vioxx** [1] - 7:14
**VIRGINIA** [2] - 1:14, 1:14

**W**

**wants** [2] - 18:11, 27:6
**WASHINGTON** [2] - 1:20, 2:6
**waste** [1] - 10:5
**ways** [1] - 25:1
**we'br** [1] - 59:6
**WEDINGER** [1] - 2:7
**Wedinger** [2] - 4:17, 4:20
**week** [1] - 28:8
**weigh** [3] - 14:17, 16:10
**weighs** [1] - 16:16
**wheelhouse** [1] - 29:10
**wherein** [1] - 15:25
**white** [2] - 14:24, 14:25
**whole** [1] - 53:17
**WILENTZ** [1] - 1:15
**willing** [1] - 10:3
**wish** [2] - 12:15, 29:5
**witness** [8] - 30:5, 42:4, 47:1, 47:18, 48:2, 48:10, 48:13, 49:23
**witnesses** [19] - 21:12, 25:16, 26:15, 27:7, 29:22, 33:8, 33:21, 46:23, 46:24, 47:4, 48:17, 49:13, 50:5, 50:13, 50:16, 51:23, 58:5, 58:23, 58:25
**WOLFSON** [81] - 1:9, 4:3, 4:10, 4:21, 5:6, 5:10, 5:25, 7:1, 9:5, 11:13, 13:19, 14:2, 14:7, 15:6, 15:14, 15:21, 16:21, 16:24, 17:6, 18:4, 18:23, 20:24, 21:11,

22:3, 22:24, 23:9, 23:13,
23:22, 24:18, 25:11,
25:21, 26:7, 26:16,
26:20, 28:5, 28:17, 30:1,
30:4, 30:12, 30:24,
31:25, 32:8, 32:11, 33:3,
33:14, 33:24, 34:19,
34:21, 34:24, 35:10,
39:21, 40:3, 41:3, 41:11,
41:25, 42:13, 43:8,
43:14, 45:10, 45:16,
45:25, 46:19, 48:6, 49:4,
52:21, 52:25, 53:11,
53:23, 54:1, 54:6, 54:12,
54:16, 55:13, 56:14,
57:9, 57:12, 57:19, 58:7,
58:14, 59:12, 59:25
**wonder** [1] - 20:14
**word** [4] - 35:8, 44:11,
55:6, 55:7
**words** [1] - 35:9
**works** [1] - 29:4
**world** [1] - 39:8
**write** [2] - 22:20, 53:1
**writers** [1] - 21:16
**writing** [6] - 21:2, 21:8,
21:18, 26:1, 45:5, 49:8
**written** [8] - 7:11, 14:15,
17:1, 35:8, 35:17, 44:8,
44:10, 56:21
**wrote** [1] - 23:18

---

**Y**

---

**years** [14] - 20:14, 20:18,
24:10, 27:12, 33:15,
34:8, 52:17, 54:2, 54:23,
56:6