1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO 16-MD-2738(FLW)(LHG)

```
_____   :
IN RE JOHNSON & JOHNSON     : TRANSCRIPT OF
POWDER PRODUCTS MARKETING,  : STATUS CONFERENCE
SALES PRACTICES.            : MAY 15, 2018
--------------------------  :
```

CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608

B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ

A P P E A R A N C E S:

BEASLEY ALLEN, ESQUIRES
BY:  P. LEIGH O'DELL, ESQUIRE (ALABAMA)
        -and-
ASHCRAFT & GEREL, ESQUIRES
BY:  MICHELLE A. PARFITT, ESQUIRE (VIRGINIA)
              -and-
LEVIN PAPANTONIO, ESQUIRES
BY:  CHRISTOPHER V. TISI, ESQUIRE (FLORIDA)
              -and-
BURNS CHAREST, ESQUIRES
BY:  WARREN BURNS, ESQUIRE  (TEXAS)
              -and-
COHEN PLACITELLA & ROTH, ESQUIRES
BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE  (NEW JERSEY)
              -and-
WILENTZ, ESQUIRES
BY:  DANIEL R. LAPINSKI, ESQUIRE  (NEW JERSEY)
On Behalf of the Plaintiffs Steering Committee

(Continued.)

* * * * *
**VINCENT RUSSONIELLO, RPR, CRR, CCR**
**OFFICIAL U.S. COURT REPORTER**
**(609) 588-9516**

A P P E A R A N C E S   C O N T I N U E D:


DRINKER, BIDDLE & REATH, ESQUIRES
BY:  SUSAN M. SHARKO, ESQUIRE
     JULIE L. TERSIGNI, ESQUIRE
        -and-
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, ESQUIRES
BY:  JOHN H. BEISNER, ESQUIRE  (WASHINGTON, D.C.)
On behalf of Defendant Johnson & Johnson


SEYFARRTH & SHAW, ESQUIRES
BY:  THOMAS L. LOCKE, ESQUIRE  (WASHINGTON D.C.)
        -and-
BARRY, McTIERNAN & WEDINGER, ESQUIRES
BY:  ALEXANDRA J. TAYLOR, ESQUIRE  (NEW JERSEY)
     PATRICIA S. CASAMENTO, ESQUIRE  (NEW JERSEY)
On Behalf of Defendant PCPC


TUCKER ELLIS, ESQUIRES
BY:  CAROLINE M. TINSLEY, ESQUIRE  (MISSOURI)
On behalf of PTI Union, LLC and PTI Royston, LLC


COUGHLIN DUFFY, ESQUIRES
BY:  MARK K. SILVER, ESQUIRE  (NEW JERSEY)
        -and-
GORDON & REES, ESQUIRES
BY:  ANN THORNTON FIELD, ESQUIRE  (PENNSYLVANIA)
On behalf of Defendant Imerys Talc America

3

# C E R T I F I C A T E

      PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE

FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE

TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE

ABOVE-ENTITLED MATTER.

                          S/Vincent Russoniello
                          VINCENT RUSSONIELLO, CCR
                          OFFICIAL U.S. COURT REPORTER

4

```
 1              (In open court.)

 2              THE DEPUTY CLERK:  All rise.

 3              JUDGE WOLFSON:  Thank you.  Everyone may be

 4    seated.  Good morning.  Sorry for the little bit of a

 5    delay this morning.

 6              Okay.  Let's see where we are.

 7              Let's talk about the agenda that you sent me

 8    which also includes one of the significant issues you

 9    want to address today which are the competing orders

10    that you have with regard to the dismissals that we

11    spoke about on the phone for which I would hope there

12    would be resolution, but apparently you reached an

13    impasse.  Is that right?

14              MS. O'DELL:  That's correct, your Honor.

15              JUDGE WOLFSON:  Okay.  We'll get to that in a

16    moment.

17              Let's look at some of the other issues that we

18    have.  My understanding is, first of all, with the

19    sampling protocol, the issue that was initially raised

20    to Judge Pisano has been resolved with that particular

21    law firm, the state case.  Correct?

22              MS. SHARKO:  Yes, your Honor.  The judge in

23    Kentucky ruled that the MDL protocol should govern

24    which is appropriate since those lawyers were in fact

25    signatories to it.
```

5

1          JUDGE WOLFSON:  Right.

2          Now, I know that you had also said at one

3   point there may have been some others you were going

4   to have the same issue with.  Has that all gone by the

5   wayside?

6          MS. O'DELL:  There are no others that I'm

7   aware of, your Honor.

8          JUDGE WOLFSON:  No others at this point.

9   Okay.

10          MS. O'DELL:  That had the similar issues to

11   what we raised in the Kentucky case.

12          MS. SHARKO:  We hope that remains the case.

13          JUDGE WOLFSON:  So that issue is gone.

14          But what you are now submitting to Judge

15   Pisano is the issue of the 30(b)(6) depositions and

16   the contours of the areas, and I saw letters are going

17   back and forth or beginning to go back and forth

18   including the dates for the depositions.  So that's

19   before him?

20          MR. TISI:  Yes, your Honor.

21          THE COURT:  All right.

22          It appears that the most substantial issues

23   are those between J&J and the plaintiffs and not

24   necessarily all in place with regard to Imerys and

25   PCPC but closer.  Correct?

6

1          MR. TISI:  I think that's fair, your Honor.

2          JUDGE WOLFSON:  Okay.

3          Now, what about third-party documents and

4     motions to compel, these three nonparty witnesses?

5          MR. TISI:  Your Honor, very briefly by way of

6     background --

7          JUDGE WOLFSON:  I read the letter.

8          MR. TISI:  So really where we are is, what we

9     learned is that two of the witnesses have in fact been

10    served.  It was our assumption based upon

11    conversations I had when we were negotiating the

12    contours of the actual notice of the deposition itself

13    and the subpoena, it was our understanding that

14    because each of these witnesses had been in fact

15    retained as litigation consultants and/or experts by

16    the defendants, that they would pull communications

17    that they had, each of the witnesses had with whatever

18    the retaining defendant would be and that they would

19    be returned to us.

20          It is my understanding, although I guess we

21    need some clarification, that the defendants currently

22    have the documents from these three witnesses.  If

23    they do, we would ask that you would compel their

24    production at this point because we don't have them.

25    But assuming that they don't have them, we would like

7

1    to have an order compelling two of the witnesses who

2    we know have in fact been served.

3           We have done on one of the witnesses, Dr.

4    Muscat, we have some -- there was some confusion.

5    We've tried to clarify that before today's hearing.

6    If not we will get him served right away.  But we

7    would like to have his documents as well.  All three

8    of them are scientists or involved in the

9    science-related issues that we are litigating right

10   now.

11          JUDGE WOLFSON:  I thought in reading the

12   letter you are willing to working to get these

13   documents.

14          MR. TISI:  Well, your Honor --

15          JUDGE WOLFSON:  Let Ms. Sharko respond for

16   herself.

17          MS. SHARKO:  Thank you.

18          So some seven months ago we negotiated the

19   form of the subpoena with the plaintiffs.  We heard

20   nothing.  Then in the last week they said:  Where are

21   the documents?

22          We were not aware as to whether or not there

23   had been service or not.  So within the last couple of

24   days Mr. Tisi sent us what purports to be proof of

25   service.  It was not filed as the local rules require.

1      We're looking at what they say is proof of

2   service.  I'm not sure that these witnesses have in

3   fact been served or that that is valid service.  So we

4   need to figure that out.

5           Once that's figured out, I will let him know

6   our position and if they haven't been validly served

7   the plaintiffs can then serve them.  Once they are

8   served then we will want to review the documents

9   first.

10          I agree with that much.  But we are not there

11  yet, and it would be premature to enter any kind of

12  order at this point.

13          MR. TISI:  Well, your Honor, we do have

14  affidavits of service for two of the witnesses.  In

15  fact, I'm holding them in my hand right now.  The fact

16  that they were not apparently served under the local

17  rules doesn't affect the service of it.  We'll file it

18  administratively with the Court.

19          They were served late last year, both Dr.

20  Bailey and, Dr. Hunchareck were served.  I have the

21  affidavits.  We can provide them.  So there is no need

22  to go back and re-serve them.

23          It was my expectation and the reason why this

24  got held up was because there had been those

25  discussions that they would go to the defendants, at

9

1    least they would review them for the purposes of --

2    our agreement was that communications with counsel

3    would be pulled, litigation counsel to be clear.  They

4    were very much involved even up until today on the

5    regulatory and science issues, and even up until today

6    we would like to get those documents.

7         So I have those two.  If the Court would

8    agree, I think we would like to be able to get those

9    documents immediately and we would like to be able to

10   get an order compelling at least those two and we will

11   find out what is remaining with respect to Dr. Muscat.

12        JUDGE WOLFSON:  I don't know that you need an

13   order.  We do operate under meet and confer here.

14        So first I think there was the issue whether

15   there was service.  You have to show them there was

16   service.  I think the indication is if there has been

17   service you are going to move ahead.  Right?

18        MS. SHARKO:  Right.  And I'm not convinced

19   that there's been valid service, but we'll look at

20   that and we'll work it out.

21        JUDGE WOLFSON:  Well, how were they served?

22        MR. TISI:  They were served by process server.

23   I have the affidavits.  In fact, I gave them to Ms.

24   Sharko last week.

25        MS. SHARKO:  So what we were given last week

1  were statements about serving a representative.  There

2  was no personal service.  I think Rule 45 requires for

3  an individual personal service.

4  　　　　JUDGE WOLFSON:  Where were they served, at

5  their home or --

6  　　　　MR. TISI:  They were served at their home.

7  　　　　JUDGE WOLFSON:  If it's at home, it's any

8  adult over the age of 18 can accept service.

9  　　　　MS. SHARKO:  It wasn't at home.  But we're

10  trying to find the people and we're looking at the law

11  and either service was valid or it wasn't.  If we

12  believe it wasn't, we'll tell Mr. Tisi and I assume

13  that he will get the people served.  I don't know why

14  we haven't heard anything on this for seven months.

15  　　　　MR. TISI:  These are experts that they have as

16  well.  They aren't people who are just incidental.

17  These are retained witnesses by the defendants.  They

18  have some control and custody over these witnesses.

19  It's silly to us.  I have been under the impression

20  that these documents had been reviewed.

21  　　　　In fact, I had spoken to Imerys' counsel.  We

22  had been working collaboratively on getting these

23  materials.  I thought they were in the process of

24  being produced.  When I emailed counsel about it, I

25  had no idea these were not what we thought they were.

1   These are witnesses that have been retained by the

2   defendants.

3           JUDGE WOLFSON:  Are they retained by you

4   currently?

5           MS. SHARKO:  I don't know the answer to that.

6           MR. TISI:  I have an email from counsel saying

7   that they are.

8           MS. SHARKO:  But it's not an issue that we

9   are -- now that the issue has been raised and he has

10  asked, we will facilitate the document production.

11  But I think service is important and there may or may

12  not be an issue.  We just need to figure that out.

13          JUDGE WOLFSON:  Look, let's be real.  They may

14  be third parties.  On the other hand, if ultimately

15  they are your retained consulting experts, even if

16  they are not going to issue reports, to some extent I

17  would think that you might even prefer if you could

18  agree with these experts to accept service.

19          We don't want to go around the block on this.

20  They are not strangers to the litigation if they are

21  your consulting experts.  I don't know why it's

22  becoming so difficult.  I would prefer to see some

23  cooperation.

24          Unless what you are telling me if these

25  consulting experts that you are paying, unless that's

12

1   not the case that you have retained have said to you,

2   We refuse you to let you accept service and they have

3   to serve us personally and they haven't done so, if

4   that's the case, good, let them know that.

5           But if it's not, let's get real, please, Ms.

6   Sharko, and I'll say that to Imerys counsel, too.  I

7   don't know if you are standing on ceremony about

8   service or not.  I don't know who controls these

9   people.  I don't know if it's jointly because you are

10  saying Imerys.  You are saying J&J.  Are they your

11  people?

12          MS. SHARKO:  Mr. Tisi, I understand what you

13  are saying and we will cooperate as always.  But Mr.

14  Tisi raised this for the first time within the last

15  couple of days.  It's that silence --

16          JUDGE WOLFSON:  I don't need the tit for tat.

17  You may say it wasn't raised recently.  I'm putting

18  out there on the table today that I don't want to see

19  it.

20          MS. SHARKO:  I understand.

21          JUDGE WOLFSON:  I think this is wasting our

22  time and expense and there is no reason for it.  Let's

23  move on.

24          MR. TISI:  Thank you, your Honor.

25          JUDGE WOLFSON:  You wanted to speak.  I'm

1    sorry.

2          MR. SILVER:  That's all right, your Honor.  We

3    moved on.

4          JUDGE WOLFSON:  That's probably a good move.

5          MS. SHARKO:  I would just ask, if there are

6    any other subpoenas out there where they have served

7    and they haven't file proof of service or told us

8    that, just let us know so we know what's out there.

9          MR. TISI:  I have no problem with that, your

10   Honor.  With the administrative thing we thought it

11   was filed and it had not been.

12         JUDGE WOLFSON:  Okay.

13         Then you have privilege issues that are being

14   presented to Judge Pisano with regard to Imerys.

15         MR. BURNS:  That's correct, your Honor.

16         JUDGE WOLFSON:  Okay.  That's his thing then.

17   All right.

18         The samples and testing which I had brought up

19   initially, my understanding therefore is the testing

20   has begun and plaintiffs are saying that they expect

21   120 days.  Defendants say it's too long.  So you've

22   had them for about a month and a half, March 27th?

23         MS. O'DELL:  March 27th we got some J&J

24   samples, and from Imerys on April the 10th.

25         Your Honor, we had suggested that we need

14

1   120 days which would take us to September 15th.

2   That's 115 working days for this lab.  I want to

3   describe to you the process, your Honor, to do the

4   testing that's required.

5           JUDGE WOLFSON:  You people picked the lab.  Is

6   that what the lab is saying, they require this time?

7   I want to know where it's coming from, how you came up

8   with the time.

9           MS. O'DELL:  Let me start by saying, we have

10  135 samples to test.  The lab, the expert lab is Dr.

11  Bill Longo's lab.  It's Materials Analytical Services.

12  He's the premier lab in the country.  The testing that

13  will be done on these samples involve TEM testing,

14  transmission electron microscopy testing.

15          To prepare the samples it takes 14 hours per

16  sample to do the actual analysis of the sample for TEM

17  and then for what they call EXRD.  If you find fibers

18  such as asbestos, it requires 15 to 21 hours for a

19  total of 29 to 35 hours per sample.

20          And what Dr. Longo and his team have told us

21  is that for the sample preparation that can be sped

22  up, if you will, because you have multiple technicians

23  preparing samples.  But when it comes down to the

24  analysis, the TEM analysis, it takes 15 to 21 hours.

25  That variance is because of what they find.

1           Now, if they find a certain number of bundles

2    it takes longer for them to document that.  When I

3    mean "bundles," your Honor, I'm talking about asbestos

4    fibers.  So that process has a very specific

5    timeframe.  So as soon as they got the samples they

6    began to work.  They have been working diligently.

7           But Dr. Longo has conveyed to me as recently

8    as last night to confirm that he needs 120 days to

9    accomplish the testing using the methodology that he

10   has testified to across the country.  He's been

11   accepted on Daubert on this methodology.  His

12   methodology has been published in the literature.

13          So we feel it's very critical that we do this

14   correctly because as Ms. Sharko pointed out the MDL

15   protocol controls and it controls not only for ovarian

16   cancer cases within the MDL, but it's going to control

17   for state ovarian cancer cases, for state mesothelioma

18   cases, and your Honor not for just cases that are

19   pending now but cases in the future because as Ms.

20   Sharko has raised several times there is a finite

21   amount of material.  This is an opportunity to do the

22   testing and there will be most likely limited testing

23   done on these particular samples in the future.

24          So that's what we're dealing with, your Honor.

25   Dr. Longo has indicated this is the time needed and

16

1  that's why we've requested it.  We feel like this is

2  very important that we have, one, the premier lab in

3  the country do it, that we have this number of samples

4  tested because it's representative across not only the

5  products, both Baby Powder and Shower To Shower but

6  also across the time period which goes from the '60s

7  through the present across defendant because we had

8  samples from Imerys and also samples from J&J and also

9  across the mines from which the talcum powder was

10  sourced.

11       So there are a lot of things that we have to

12  cover to ensure there is representative testing.

13  That's what we've tried to do.  That's the timeframe

14  for Dr. Longo and his team.  I have been to his lab.

15  It's a state of the art facility with many scientists

16  there.  They are working very hard.  We have pressed

17  them to do it as quickly as possible and this is the

18  timeframe that's been given to us.

19       MS. SHARKO:  So here's what's so frustrating.

20  I acknowledge --

21       JUDGE WOLFSON:  Because you want your Daubert

22  hearing.  I know it's frustrating, Ms. Sharko.

23       MS. SHARKO:  Right.  But Dr. Longo is the

24  plaintiffs' go-to expert for this.  He is involved in

25  all of the asbestos cases for these same plaintiffs.

17

1   And while we sit at the station waiting for our

2   Daubert hearing these same lawyers continue to prepare

3   and try cases across the country in state court.  The

4   Lanier firm assisted by Ashcroft & Gerel and Cohen

5   Placitella and all these other firms has a 23

6   plaintiff ovarian cancer case with Dr. Longo as an

7   expert set to go in Missouri on June 2nd or 4th.

8         That's followed by by another multi-plaintiff

9   case in St. Louis with the Beasley Allen firm and

10  other firms backed up behind it called the Forest

11  case, and there is another case where discovery is

12  progressing, set for trial behind that in St. Louis,

13  another ovarian cancer case with these same lawyers.

14  Then they have a case against PTI, the Beasley Allen

15  firm, that they are pressing for a trial date in St.

16  Louis County.  Those are just the ovarian cases.

17        Then we get to the asbestos/talc cases around

18  the country.  There is one being tried right now in

19  California.  There are others with trial dates.  There

20  was one that was tried up in New Brunswick again with

21  Dr. Longo as an expert.

22        So all these cases are moving forward and we

23  are still here and that is what is frustrating about

24  it.  If we wait until September for this testing to be

25  completed, we are not going to see a Daubert hearing

18

1   for a year.  I hope that's not true, but that's the

2   reality of it.  So if Dr. Longo can be doing all this

3   testing for St. Louis and St. Louis and St. Louis and

4   California, the MDL should be a priority.

5        MS. O'DELL:  Your Honor, there are so many

6   things that I disagree with about what Ms. Sharko just

7   said.  Let me just start with a few things.

8        Dr. Longo has testified in recent trials and

9   he testified in relation to testing of samples that

10   are distinct and different from the samples that have

11   been produced in the MDL.  So that testing is ongoing

12   right now.

13        I expect Dr. Longo will testify in the

14   June 4th trial in St. Louis with the Linear firm.

15   Ms. Parfitt is not involved in that case.  For the

16   Beasley Allen cases Dr. Longo has not been retained in

17   those cases.  So to the degree there was some

18   suggestion that that was the case, that's not because

19   we don't think he is a great witness.  He just did not

20   happen to be in those cases.

21        So the point being, your Honor, we have the

22   task before us to test the samples that have been

23   essentially lodged within your jurisdiction.  They

24   have not been made available in other cases.  And so

25   we have the responsibility to do the testing with the

1    methodology that is accepted in the scientific

2    community and that's what we're doing.

3           JUDGE WOLFSON:  I'm not concerned about the

4    testing itself.  The real question is, I know he said

5    120 days.  It's already started.

6           MS. O'DELL:  Yes.

7           JUDGE WOLFSON:  And the question is, as you

8    pointed out, there are going to be multiple

9    technicians that are perhaps doing this at the same

10   time.  So my real question would be -- I'm going to

11   let it be the amount of time that's really necessary.

12   Of course, I don't have any kind of declaration from

13   Dr. Longo as to all of this.  I accept what you've

14   said he has told you.

15          But the question is:  Is there any way to save

16   some time on this?  I don't think we're going to save

17   a lot.  I don't think it's going to be less than

18   90 days.  But can we work with 90 as opposed to 120?

19   I'm just asking these questions and I would like to

20   get some more information.

21          I'm going to let it be done and I'm going to

22   let it be done correctly.  I appreciate the estimates

23   you are given me on the amount of man hours involved

24   for each of these samples.  But I also don't know how

25   many people are in this lab and how many people are

1  going to be doing it at the same time.  So I'm a

2  little bit at a loss and I understand you are getting

3  whatever information he's providing to you.

4       This is the testing lab you are using.  I

5  guess you people are not involved with it?

6       MS. SHARKO:  No, not at all.

7       JUDGE WOLFSON:  So you don't have any of these

8  same discussions with Dr. Longo.  That's all on the

9  plaintiffs' end only.  All right.

10       I would like to work with something shorter

11  than 120 days.  I'm going to be reasonable about it.

12  I would like to see if you could go back and shorten

13  it to 90 and you are going to let us know and then

14  I'll work from those dates.

15       I think this also goes back to obviously dates

16  that we set previously or that Judge Pisano was

17  setting previously were all being triggered by when

18  the sample work was done, which he believed to be in

19  July.  You are now suggesting September.  Maybe we can

20  get it to be mid-August, if we could move it up a

21  little bit, but that's going to affect all the trigger

22  dates.

23       MS. O'DELL:  Your Honor, I'm happy to come

24  back in June and report to you further.  We have

25  really pressed him to do this as quickly as possible.

21

1          JUDGE WOLFSON:  Okay.

2          MS. O'DELL:  We understand that as soon as

3     it's finished that we have a duty to inform the Court

4     it's finished so the 45 days are gone.  So we are

5     working very diligently toward that end and we will

6     definitely report back to Dr. Longo and say we need it

7     as quickly as possible and if you can do it less than

8     120 days please do that and let us know.

9          I just want to say for the record, your Honor,

10    when Judge Pisano laid out the facts in the letter of

11    February 6th, at that point in time we really didn't

12    know the number of samples involved and a lot of the

13    information now that we are really in the thick of it,

14    if you will, in terms of testing.

15          Thank you.

16          JUDGE WOLFSON:  In the end we are quibbling

17    about it but there are always delays.  If I'm saying

18    90 versus 120, we are only the talking 30 days.  But

19    then I know the next date that will be come there will

20    be some reason why that is going to be extended.  We

21    know the trickle down effect every time there is some

22    delay or extension.  We're trying to avoid that.

23          So if we can get this done a little more

24    quickly that would be great.  You are going to let me

25    know.  And obviously I can't set a Daubert hearing

1    until I have these exact dates.  So there we are.

2    Look, I would like to get it done as well.

3        Now, let's turn to these dismissals.  We had

4    discussion in a conference call and I hoped there

5    would be resolution and there hasn't been.  I have

6    been given competing orders here from defense counsel

7    and last night I was given the proposed orders from

8    plaintiffs' counsel sometime yesterday.

9        Obviously, the real dispute here is, these are

10   the cases for which the plaintiffs wanted to dismiss

11   their actions, whether it's because they did not

12   actually have ovarian cancer and I don't know what the

13   other reasons are.  We talked about that on the phone.

14   I don't know if there are other reasons they want it

15   dismissed.

16       MS. O'DELL:  Your Honor, can I speak to that

17   so you know what's before you?

18       JUDGE WOLFSON:  Yes.

19       MS. O'DELL:  We reached out to each of the

20   counsel for plaintiffs in the list of cases.  There

21   are 14 cases listed.  In 12 instances the plaintiffs'

22   cancer did not meet the criteria for which the

23   Plaintiffs Steering Committee is producing expert

24   reports.  So they are outside at the criteria, if you

25   will.  So that's 12 of the 14.  Two involve plaintiffs

1   who died and their heirs whether that's the husband or

2   remaining children for whatever reason do not feel

3   that they can move forward with the case.  So this is

4   not a situation where it was suggested in the joint

5   status report that plaintiffs are, quote, jumping

6   ship.

7           In each instance there has been a very

8   legitimate reason that the plaintiff has sought to

9   dismiss without prejudice.  And from our perspective,

10  your Honor, plaintiffs are often criticized for filing

11  cases that don't meet the criteria of the particular

12  litigation and causing the docket to be populated by

13  cases that aren't appropriate.  In these instances the

14  firms have chosen to try to clean it up themselves and

15  I think that's a good thing.

16          MS. SHARKO:  I can make this really easy.  If

17  there is only 12 cases and those are the reasons they

18  want to dismiss, why don't we just work it out

19  individually.  I think that is the way our stipulation

20  is drafted.  The conditions about re-filing should

21  work with those cases.

22          That's what we have done with other cases in

23  the past and rather than try and have this global form

24  of order -- and I can go through the plaintiffs

25  paragraph by paragraph, but I won't at this point.  If

24

1    it's just those 12 cases and they don't have ovarian

2    cancer or they died and don't want to proceed, let's

3    just do it case-by-case.

4           JUDGE WOLFSON:  Well, they want to know what

5    is the term that you are going to include.  Because I

6    guess for the ones who have died and they don't want

7    to proceed, if at some point, let's say, six months

8    from now they decide they want to proceed, what

9    happens?

10          And similarly for those 12 who don't fit the

11   criteria, as you say, what you are leaving open is at

12   some point in time if in fact they develop this kind

13   of cancer, they are going to want to file a new case.

14          So we still have to deal with what happens

15   upon a re-filing if someone's mind has changed and the

16   Statute of Limitations does not run on it.  So I still

17   have to resolve it.  It doesn't have to be, as you

18   say, in the form of a global order, but you have to

19   decide what's going in it, and you are still going to

20   have this issue when you leave me today is what I'm

21   going to say.

22          MS. SHARKO:  I think it's pretty simple.  If

23   they change their mind or they develop ovarian cancer

24   in the future, they re-file here in the MDL.  We are

25   going to be here for a while.  And if we are not here,

1    they can file in their home state or New Jersey.

2           JUDGE WOLFSON:  You don't care if they file in

3    their home state.

4           MS. O'DELL:  I don't.  But, your Honor, they

5    are not limited to that.  And when Ms. Sharko says

6    "it's pretty simple" it's just not the law in the

7    District of New Jersey where there's not been

8    substantial progress in a case where there would be no

9    difference in the cost of a second lawsuit --

10          JUDGE WOLFSON:  I'm trying to figure out:

11   What other jurisdiction do you want?  She's now

12   saying, go ahead, file in your home state or file in

13   the MDL.  What else are you looking for?

14          MS. O'DELL:  Well, in our proposed order we

15   laid out the other appropriate jurisdictions for

16   purposes of filing.  It would be certainly the home

17   state or resident state of the plaintiff.  It would be

18   the states in which they had their primary usage.

19          In other words, they lived in New Jersey for

20   30 years and then moved to Florida.  They arguably

21   could file in New Jersey.  It would also be the place

22   where they are diagnosed or treated for the cancer.

23   Or, lastly, and not to be forgotten, the resident

24   states of the defendants which in this instance could

25   be New Jersey for J&J, it could be California, or

26

1    Delaware for Imerys, it could be D.C. for PCPC for

2    that matter, and there may be a time in the future,

3    your Honor, where there are other defendants that are

4    appropriate and you could file within those states.

5            The proposed order that was put forth by the

6    Johnson & Johnson defendants precluded a plaintiff in

7    the future from adding a defendant.  How is that

8    appropriate?

9            JUDGE WOLFSON:  Well, that's not appropriate.

10   I'm not going to direct that be done.  That's not

11   happening.

12           But I do understand your concern was you are

13   worried about at some point fraudulent joinder, that

14   they are joining someone that you're claiming

15   shouldn't have been.  But if they have a legitimate

16   defendant to join, they're permitted to joinder.  So I

17   can't say here today that you can't ever join a

18   defendant.

19           What we're really talking about is clearly

20   setting up for -- defendants would like finality.  If

21   you define three jurisdictions it makes it easy.

22   Everybody knows where you can go.  Plaintiffs are

23   suggesting that there are others that could be

24   appropriate.  Defendants may not agree that they are

25   appropriate.

1    What you are trying to avoid is motion

2  practice at some later date to say:  That is not an

3  propose jurisdiction.  Right?

4    MS. SHARKO:  Exactly.  We don't agree that

5  where you used the product, where you were diagnosed,

6  et cetera, we don't agree that there is jurisdiction

7  there.

8    JUDGE WOLFSON:  But you preserve your rights

9  and it's limited.  The better language is, if we just

10  leave it as opposed to you defining where

11  substantially used, where diagnosed, if you simply

12  make it as they can re-file in the MDL, they can

13  re-file in their home state or wherever, there would

14  be jurisdiction over the defendants named.  It leaves

15  open your defenses to argue it's the wrong

16  jurisdiction and you file where you want and you can

17  decide.

18    MR. SILVER:  Judge, the other problem with

19  plaintiffs' proposed order as I'm reading it now is, I

20  take Ms. O'Dell at her word, but the 12 cases that

21  she's talking about she's checked those out.  This is

22  a blanket order that essentially allows plaintiffs to

23  dismiss without prejudice and essentially forum shop

24  anywhere.

25    JUDGE WOLFSON:  We're not going to do it.  I

1    agree with Ms. Sharko's suggestion that it's a limited

2    universe.  I thought there were going to be a lot more

3    cases.

4            We'll just do a separate order in each of the

5    cases that has the parameters I just outlined in that

6    way for that particular case and for these 14 cases

7    only at this point and you'll deal with other ones if

8    they come up.

9            MS. O'DELL:  Your Honor, when you said

10   appropriate jurisdiction for the defendant, if I could

11   just raise again the issue of the circumstance where a

12   plaintiff has substantial use in a particular state.

13   They lived there for a period of time.  They moved.

14   That would be a location where jurisdiction would be

15   appropriate because the tort, if you will, has

16   occurred and --

17           JUDGE WOLFSON:  That's fine except that the

18   reason I don't want to deal with that is you'll have a

19   dispute over what "substantial" means and you'll say:

20   We were allowed to do this because this was

21   substantial.  Does substantial mean two years?  Does

22   substantial mean 20 years?

23           So when you start adding those things you are

24   just creating more disputes.  That's why I said:

25   Let's just leave it at jurisdiction for which there

1   would be jurisdiction over the defendants.  We're

2   looking at specific jurisdiction in those cases and

3   we'll have to analyze:  Is that an appropriate

4   jurisdiction?  Because I don't want to define

5   "substantial" now and we're not going to do that.

6          It's easier to know the ones that are not

7   disputed are the home state of the plaintiff, the MDL,

8   home state of defendant, and leave open any other

9   jurisdiction where there could be jurisdiction

10  asserted and you can argue at a later point.  I don't

11  want to get into what substantial means today.

12         So don't conclude that one.  Let's have simple

13  orders now that deal with this.  Right?

14         MS. SHARKO:  Right, in those individual cases.

15         JUDGE WOLFSON:  In the individual 14 cases.

16         So that's for those issues.

17         So who is going to draft that?

18         MS. O'DELL:  I will be happy to do it, your

19  Honor.

20         JUDGE WOLFSON:  She got up first.  It's like

21  Jeopardy.  She rang the bell first.

22         Do I need to deal with at all PCPC, Item No.

23  4, the dismissals?

24         MS. PARFITT:  Your Honor, I had an opportunity

25  to speak with Mr. Locke this morning and we're going

30

1   to work that out.  We just need to reconcile the cases

2   that PCPC believe are appropriate for dismissal.

3       It's not an issue with regard to the context

4   of the order.  It's just the cases and we just need to

5   make sure there is a reconciliation and don't dismiss

6   cases that wouldn't be appropriate.  So he and I

7   talked and we'll work it out and report back to the

8   Court. There should be no problem.

9       Similarly, with regard to the amendment issue,

10  that's Roman numeral IV, I have spoken to counsel for

11  J&J and we will look at those 55 cases to find out

12  whether or not pursuant to Rule 15, those cases have

13  been -- whether there needed to be a motion or not.

14  The contention here from the plaintiffs is that many

15  of those may not have required a motion that there was

16  the right under Rule 15 to amend post a responsive

17  pleading.

18      So I think we can work out Roman numeral IV

19  and Roman numeral V without need of the Court at this

20  point.

21      JUDGE WOLFSON:  And No. VI?

22      MS. O'DELL:  Related to cases, your Honor,

23  where there has been a short form complaint filed

24  under CMO 8, but not a notice of filing a short form

25  complaint in the master docket.  The number there is

1   104 and Mr. Signy kindly provided a list of those now.

2           So we can go through those and reconcile the

3   list.  I know for the Beasley Allen cases, for

4   example, we have filed the notices and we just need to

5   do a reconciliation to get down to the filing number.

6   It shouldn't be a problem.

7           With respect to the 331 cases that are listed

8   here where defendants have stated that a short form

9   complaint has not been filed, Mr. Beisner and Mr.

10  Silver and I have been working on an agreement to

11  address plaintiffs that were transferred into the MDL

12  in multi-plaintiff complaints who were residents of

13  either New Jersey, California or Delaware, and for

14  which there would not be federal subject matter

15  jurisdiction.

16          We've reached an agreement on that.  We

17  believe that most of those 331 plaintiffs are from

18  those states.  We'll take care of those and then get

19  down to what may be some others that we can take a

20  look at.

21          JUDGE WOLFSON:  Okay.

22          These duplicate cases, you are still working

23  on that.  There is 73 of those.  Right?

24          MS. O'DELL:  Yes, your Honor.

25          JUDGE WOLFSON:  I think that's basically your

1  agendas items.  Correct?

2          MS. O'DELL:  Yes.

3          MS. SHARKO:  Yes.

4          JUDGE WOLFSON:  I wanted to address just

5  briefly -- I'll give as one example -- one of the

6  remand and motion to dismiss motions involving Imerys.

7  I'll give as an example Edna Brown which is docket No.

8  17-5724.

9          I don't know if you were ready for this or not

10 today.  I'm not looking for oral argument because I

11 understand you were not set for this today, but I want

12 to tell you some concerns.  I guess the Miller firm

13 responded to that motion.

14         MS. O'DELL:  I'm not aware, your Honor.

15         JUDGE WOLFSON:  Well, the opposition brief was

16 from the Miller firm.  Nobody is here from the Miller

17 firm?

18         MS. PARFITT:  No, your Honor.  I don't believe

19 so.

20         JUDGE WOLFSON:  I guess you can take a message

21 back.  What I had here is, this is one where they've

22 named J&J, Walgreens and Imerys and have argued that

23 because they named the local Walgreens claiming that

24 there was not diversity, it should be remanded naming

25 the retailer, and Imerys has filed a motion to dismiss

1     for lack of personal jurisdiction in Illinois.

2              Does this sound familiar to you at all?

3              MR. SILVER:  I recognize the case, your Honor,

4     and once you tell me the jurisdiction I know what the

5     argument is.

6              JUDGE WOLFSON:  Illinois.

7              MR. SILVER:  Yes.

8              JUDGE WOLFSON:  Okay.  So there is no general

9     jurisdiction and the focus obviously is going to be

10    specific jurisdiction.  But I want to tell you what my

11    concern is and what's given me some pause, and there

12    is argument back and forth and do I decide the motion

13    to dismiss first?  Do I decide the remand first?  And

14    there is discretion in the court depending on which is

15    the easier question to answer.

16             One of the things that's being argued here,

17    put aside the stream of commerce argument that the

18    plaintiff tries to make with regard to Illinois, but

19    what they focus on as well is this conspiracy theory.

20             Do you recall this?

21             MR. SILVER:  I do, your Honor.

22             JUDGE WOLFSON:  Okay.  And the notion that

23    J&J, Imerys and Walgreens conspired to hide or conceal

24    information, and specifically that J&J and Imerys were

25    members of the Cosmetic, Toiletry and Fragrance

34

1    Association and formed the Talc Interested Party Task

2    Force and go on about hiding or deleting information

3    from them.

4         I'm not getting into the real merits.  But

5    what I wanted to point out, first of all, is in your

6    reply brief you didn't address the conspiracy theory.

7    Of course the conspiracy theory doesn't also

8    specifically address activity directed at Illinois.

9    But the bottom line is, I probably will need to talk

10   to the parties because the briefing really is

11   inadequate to address the issues.

12        Moreover, you can take back to the Miller firm

13   that the complaint on which they rely and argue about

14   this notion of conspiring and that this is still a

15   conspiracy theory that involves, quote, all

16   defendants, it's very lose language in the brief

17   because the brief suggests -- this is just

18   highlighting, so when you come in you know what I'm

19   going to want to talk about.

20        The brief suggests that the allegations are

21   that the three of you conspired, J&J, Walgreens and

22   Imerys, to keep this information and do certain

23   actions with the Task Force, et cetera.  But there is

24   no allegation in the complaint that Walgreens was part

25   of that group.

1          So I don't even know how they could argue that

2     it was part of it, but loosely in the briefing it

3     suggests that.  Of course, you haven't addressed the

4     conspiracy theory so you didn't address that point.

5     But the briefing, for instance, says -- I don't even

6     know that we need to be on the record for this.  I'm

7     giving everyone highlights of the problems that I'm

8     having.  Let me get out the language in the brief.

9          MR. PLACITELLA:  Your Honor, can we stay on

10    the record because we're going to have to hand this to

11    somebody.

12         JUDGE WOLFSON:  Okay.  I understand.

13         It says on page 9 of the brief:

14         "Here plaintiff alleges that J&J, Imerys and

15    Walgreens knowingly agreed, contrived, combined,

16    confederated and conspired among themselves to cause

17    consumer injuries," and it goes on.

18         This is the line.  It says in the brief on

19    page 10:

20         "On July 27, 2005, J&J, Imerys and Walgreens

21    as part of the TIPTF corresponded and agreed to edit

22    and delete portions of scientific papers being

23    submitted on their behalf to the United States

24    Toxicology Program in an attempt to prevent talc from

25    being classified as a carcinogen, and Imerys and

1   Walgreens through the TIPTF collectively agreed to

2   release false information to the public."

3         I am not seeing in the complaint where

4   Walgreens was involved in these groups to make them

5   part of those allegations, apart from the fact of

6   whether it was targeted to Illinois as opposed to

7   anywhere else.

8         You see the problems I'm having.  Of course,

9   if Imerys had briefed that they would have pointed out

10  all those problems in their reply, but here we are.

11  But the question also is, if I find that there is no

12  jurisdiction over Imerys, do these plaintiffs still

13  not want to stay in the MDL?  You've got Walgreens out

14  there.  But I got to tell you, the allegations as they

15  have been against Walgreens isn't going to really fly

16  here.

17        What I'm really saying is, I've got to deal

18  with the jurisdiction question I guess over Imerys.  I

19  want to know really what this Miller firm wants to do

20  and I don't want to waste my time.

21        MS. O'DELL:  We'll convey that to them, your

22  Honor, and certainly provide the transcript.

23        JUDGE WOLFSON:  And if we need to pursue it,

24  it might be easier just to bring everybody in and do

25  it on the record.  I'll just do the motion.

1          MR. SILVER:  Judge, we can do something on

2    briefing.  But if the plaintiffs want to amend their

3    complaint, and they don't want to take time to do the

4    briefing --

5          JUDGE WOLFSON:  I think what you should do is

6    talk to them.  Bottom line is I still don't see --

7    first of all, and you can have this on the record too,

8    the stream of commerce idea, putting something in the

9    stream of commerce we know that's out the window on

10   personal jurisdiction for specific jurisdiction.  It

11   just is.  Just the fact you put something in the

12   stream of commerce doesn't mean you directed it to

13   Illinois.  That's not going to fly.

14          So the only thing they are arguing now really

15   that's different is conspiracy.  But I don't see any

16   argument where that conspiracy is directed to

17   Illinois, that they conspired in Illinois because

18   there aren't any allegations about them really

19   conspiring in Illinois.  I don't want to waste my

20   time.

21          MS. O'DELL:  Your Honor, we'll convey it to

22   them.  I'm hesitant to say anything.

23          JUDGE WOLFSON:  Don't, and I'm not going to

24   put you on the spot.  I don't think you should speak

25   for someone else, but that's where we are.

38

1          So it might be easier if you talk to the

2    Miller firm and if you could see where we are -- you

3    want to stay in the MDL?

4          MR. SILVER:  Yes.

5          JUDGE WOLFSON:  You want to stay in the MDL --

6          MR. SILVER:  Yes.

7          JUDGE WOLFSON:  -- then we don't have to worry

8    about the other things, jurisdiction, remand,

9    et cetera.

10          MR. SILVER:  We will also reach out to the

11    Miller firm and if we need the Court's assistance we

12    will let you know.

13          JUDGE WOLFSON:  Why don't you speak with them.

14    That's what I wanted to highlight.  Trying to go

15    through these one by one on these remands, that's one

16    of the issues I had here.

17          Any other issues you want to address with me

18    today?

19          MS. SHARKO:  I'm happy to report Mr. Lapinski

20    and I worked out the deposition protocol order and

21    we'll present it to your Honor for signature.

22          MR. LAPINSKI:  Not everything has to be

23    contentious, your Honor.

24          JUDGE WOLFSON:  I like it.  That's excellent.

25          I think our next date was June 28th, but I may

39

1    have a problem on that date.  The date after that is

2    July 25th, I believe.

3            Is there any other day, either the 26th or

4    27th?  Neither of those dates work?

5            MS. SHARKO:  No.

6            JUDGE WOLFSON:  And then the next week is the

7    4th of July week.  I don't know that anybody wants to

8    come in that week, and then we're coming back three

9    weeks later.

10           MS. SHARKO:  What about the week of June 18th?

11           JUDGE WOLFSON:  No.  I'm out of the country.

12   June was a tight month for me because I have a

13   conference and vacation plans.  That's why that last

14   week was the only week that worked really well other

15   than the early part of the month and that's too early

16   to come in after we've just been here.

17           MS. SHARKO:  How about the 29th?

18           JUDGE WOLFSON:  The 28th and 29th are both

19   problems for me.

20           MS. O'DELL:  What about moving the July

21   conference up in the month, maybe the week of the 9th

22   or the 16th and we could take care of both at the same

23   time?

24           JUDGE WOLFSON:  I can do that.  I can move you

25   in to early July.

40

1          MS. SHARKO:  I'm on vacation those weeks.

2          JUDGE WOLFSON:  When do you come back?

3          MS. SHARKO:  I come back the evening of

4    July 23rd.

5          JUDGE WOLFSON:  That's why we did the 25th.

6    You are away the week of the 9th and the 16th?

7          MS. SHARKO:  Yes.

8          JUDGE WOLFSON:  How about the 6th?  That's the

9    July 4th week.

10          MS. SHARKO:  I can do the morning of the 9th.

11    We don't leave until later in the day.

12          JUDGE WOLFSON:  Are you sure?

13          MS. SHARKO:  Yes.

14          JUDGE WOLFSON:  The 9th is good for me.

15          MS. PARFITT:  I can make the 9th.

16          MS. O'DELL:  The 9th is fine.

17          JUDGE WOLFSON:  So July 9th.  Take off the

18    28th of June and take off July 25th and we're going to

19    meet on the 9th.

20          Do you want to pick a date in August while

21    we're here now?  Now, we'll work off the fact you are

22    coming on the 9th.  We can do the week of the 6th, the

23    week of the 13th.

24          MS. PARFITT:  With regard to July 9th, what

25    time of day is that?  I might be flying in that

41

1   morning.   That's all I'm wondering.

2          JUDGE WOLFSON:   We'll do 10:30 on the 9th.

3   You are fine with that.   Right?

4          MS. SHARKO:   Yes, 10:30 is okay.

5          JUDGE WOLFSON:   What about the week of

6   August 6th or the week of August 13th?   Any good or

7   bad days?

8          MS. SHARKO:   I'm away August 10th and then the

9   following week.

10          JUDGE WOLFSON:   We can do the 7th, 8th or 9th

11   of that week.   Is that okay?

12          MS. SHARKO:   Yes.

13          MS. O'DELL:   What was that, your Honor?

14          JUDGE WOLFSON:   August 7th, 8th or 9th?

15          MS. O'DELL:   The 9th would be preferred for me

16   and my co-counsel.

17          I'm jealous of Ms. Sharko's vacation schedule.

18          MS. SHARKO:   Well, in August I'm driving my

19   daughter to graduate school in Utah.   There should be

20   room in the back of the van.

21          JUDGE WOLFSON:   That's no vacation from my

22   perspective.

23          MS. SHARKO:   There are a lot of good stops in

24   North Dakota.

25          MS. O'DELL:   I like North Dakota.

42

1          JUDGE WOLFSON:  Does the 9th work?

2          MS. SHARKO:  Would it be possible to do it

3    earlier in the week?

4          MR. SILVER:  Imerys has a problem with that

5    week.  National counsel is not available that week.

6          JUDGE WOLFSON:  How about the week of the

7    13th?  No days work?

8          MS. SHARKO:  The 23rd or 24th of August?

9          JUDGE WOLFSON:  And you are off the entire

10   week of the 13th.  Is that correct?

11         MS. SHARKO:  Yes.  How about August 1st, 2nd

12   or 3rd?

13         JUDGE WOLFSON:  No.  I'm not here.

14         I could do the week of the 23rd or 24th.  But

15   you'll have to send everything to my courtroom deputy.

16   Wayne is going to be out, so he can't forward anything

17   to me.  That's the problem.  I will be missing my help

18   that week.  He's gone.

19         MS. O'DELL:  So the 23rd.  Is that the date?

20         JUDGE WOLFSON:  Or the 22nd.  It doesn't

21   matter.

22         MS. O'DELL:  Either one is fine with us.

23         JUDGE WOLFSON:  The 22nd?

24         MS. SHARKO:  Can we do the 23rd?

25         JUDGE WOLFSON:  Yes, I could do the 23rd, at

43

1    10:30.

2         All right.  August 23rd at 10:30 and July 9th

3    at 10:30.  Those are our next dates.  If something

4    comes up in the interim you get in touch with me.

5    That's it.  You'll go work with Judge Pisano.

6         You are going to let me know about the testing

7    and whether that can be done any sooner.  Correct?

8         MS. O'DELL:  Yes, your Honor.

9         JUDGE WOLFSON:  I guess that's it, if you

10   don't have anything else.

11        Thank you.

12        THE DEPUTY CLERK:  All rise.

13        (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

44

# **C E R T I F I C A T E**

I, **Vincent Russoniello,** Official United States Court Reporter and Certified Court Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I do further certify that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

S/Vincent Russoniello
Vincent Russoniello, CCR
Certificate No. 675

**'**

**'60s** [1] - 16:6

**0**

**08608** [1] - 1:8

**1**

**10** [1] - 35:19
**104** [1] - 31:1
**10:30** [5] - 41:2, 41:4, 43:1, 43:2, 43:3
**10th** [2] - 13:24, 41:8
**115** [1] - 14:2
**12** [6] - 22:21, 22:25, 23:17, 24:1, 24:10, 27:20
**120** [8] - 13:21, 14:1, 15:8, 19:5, 19:18, 20:11, 21:8, 21:18
**135** [1] - 14:10
**13th** [4] - 40:23, 41:6, 42:7, 42:10
**14** [5] - 14:15, 22:21, 22:25, 28:6, 29:15
**15** [5] - 1:5, 14:18, 14:24, 30:12, 30:16
**15th** [1] - 14:1
**16-MD-2738(FLW)(LHG** [1] - 1:2
**16th** [2] - 39:22, 40:6
**17-5724** [1] - 32:8
**18** [1] - 10:8
**18th** [1] - 39:10
**1st** [1] - 42:11

**2**

**20** [1] - 28:22
**2005** [1] - 35:20
**2018** [1] - 1:5
**21** [2] - 14:18, 14:24
**22nd** [2] - 42:20, 42:23
**23** [1] - 17:5
**23rd** [7] - 40:4, 42:8, 42:14, 42:19, 42:24, 42:25, 43:2
**24th** [2] - 42:8, 42:14
**25th** [3] - 39:2, 40:5, 40:18
**26th** [1] - 39:3
**27** [1] - 35:20
**27th** [3] - 13:22, 13:23,

39:4
**28** [1] - 3:9
**28th** [3] - 38:25, 39:18, 40:18
**29** [1] - 14:19
**29th** [2] - 39:17, 39:18
**2nd** [2] - 17:7, 42:11

**3**

**30** [2] - 21:18, 25:20
**30(b)(6** [1] - 5:15
**331** [2] - 31:7, 31:17
**35** [1] - 14:19
**3rd** [1] - 42:12

**4**

**4** [1] - 29:23
**402** [1] - 1:8
**45** [2] - 10:2, 21:4
**4th** [4] - 17:7, 18:14, 39:7, 40:9

**5**

**55** [1] - 30:11
**588-9516** [1] - 1:25

**6**

**609** [1] - 1:25
**675** [1] - 44:23
**6th** [4] - 21:11, 40:8, 40:22, 41:6

**7**

**73** [1] - 31:23
**753** [1] - 3:9
**7th** [2] - 41:10, 41:14

**8**

**8** [1] - 30:24
**8th** [2] - 41:10, 41:14

**9**

**9** [1] - 35:13
**90** [4] - 19:18, 20:13, 21:18
**9th** [16] - 39:21, 40:6, 40:10, 40:14, 40:15, 40:16, 40:17, 40:19, 40:22, 40:24, 41:2, 41:10, 41:14, 41:15,

42:1, 43:2

**A**

**able** [2] - 9:8, 9:9
**ABOVE** [1] - 3:12
**ABOVE-ENTITLED** [1] - 3:12
**accept** [4] - 10:8, 11:18, 12:2, 19:13
**accepted** [2] - 15:11, 19:1
**accomplish** [1] - 15:9
**accurate** [1] - 44:8
**ACCURATE** [1] - 3:10
**acknowledge** [1] - 16:20
**action** [2] - 44:14, 44:16
**ACTION** [1] - 1:2
**actions** [2] - 22:11, 34:23
**activity** [1] - 34:8
**actual** [2] - 6:12, 14:16
**adding** [2] - 26:7, 28:23
**address** [8] - 4:9, 31:11, 32:4, 34:6, 34:8, 34:11, 35:4, 38:17
**addressed** [1] - 35:3
**administrative** [1] - 13:10
**administratively** [1] - 8:18
**adult** [1] - 10:8
**affect** [2] - 8:17, 20:21
**affidavits** [3] - 8:14, 8:21, 9:23
**age** [1] - 10:8
**agenda** [1] - 4:7
**agendas** [1] - 32:1
**ago** [1] - 7:18
**agree** [7] - 8:10, 9:8, 11:18, 26:24, 27:4, 27:6, 28:1
**agreed** [3] - 35:15, 35:21, 36:1
**agreement** [3] - 9:2, 31:10, 31:16
**ahead** [2] - 9:17, 25:12
**ALABAMA** [1] - 1:14
**ALEXANDRA** [1] - 2:11
**allegation** [1] - 34:24
**allegations** [4] - 34:20, 36:5, 36:14, 37:18
**alleges** [1] - 35:14
**Allen** [4] - 17:9, 17:14,

18:16, 31:3
**ALLEN** [1] - 1:13
**allowed** [1] - 28:20
**allows** [1] - 27:22
**amend** [2] - 30:16, 37:2
**amendment** [1] - 30:9
**America** [1] - 2:18
**amount** [3] - 15:21, 19:11, 19:23
**AN** [1] - 3:10
**analysis** [3] - 14:16, 14:24
**Analytical** [1] - 14:11
**analyze** [1] - 29:3
**ANN** [1] - 2:18
**answer** [2] - 11:5, 33:15
**apart** [1] - 36:5
**appreciate** [1] - 19:22
**appropriate** [13] - 4:24, 23:13, 25:15, 26:4, 26:8, 26:9, 26:24, 26:25, 28:10, 28:15, 29:3, 30:2, 30:6
**April** [1] - 13:24
**areas** [1] - 5:16
**arguably** [1] - 25:20
**argue** [4] - 27:15, 29:10, 34:13, 35:1
**argued** [2] - 32:22, 33:16
**arguing** [1] - 37:14
**argument** [5] - 32:10, 33:5, 33:12, 33:17, 37:16
**ARPS** [1] - 2:6
**art** [1] - 16:15
**asbestos** [3] - 14:18, 15:3, 16:25
**asbestos/talc** [1] - 17:17
**ASHCRAFT** [1] - 1:15
**Ashcroft** [1] - 17:4
**aside** [1] - 33:17
**asserted** [1] - 29:10
**assistance** [1] - 38:11
**assisted** [1] - 17:4
**Association** [1] - 34:1
**assume** [1] - 10:12
**assuming** [1] - 6:25
**assumption** [1] - 6:10
**attempt** [1] - 35:24
**attorney** [2] - 44:13, 44:15
**August** [10] - 20:20, 40:20, 41:6, 41:8, 41:14,

41:18, 42:8, 42:11, 43:2
**available** [2] - 18:24, 42:5
**avoid** [2] - 21:22, 27:1
**aware** [3] - 5:7, 7:22, 32:14

---

**B**

**Baby** [1] - 16:5
**backed** [1] - 17:10
**background** [1] - 6:6
**bad** [1] - 41:7
**Bailey** [1] - 8:20
**BARRY** [1] - 2:10
**based** [1] - 6:10
**BE** [1] - 3:10
**BEASLEY** [1] - 1:13
**Beasley** [4] - 17:9, 17:14, 18:16, 31:3
**becoming** [1] - 11:22
**began** [1] - 15:6
**beginning** [1] - 5:17
**begun** [1] - 13:20
**Behalf** [2] - 1:22, 2:12
**behalf** [4] - 2:7, 2:14, 2:18, 35:23
**behind** [2] - 17:10, 17:12
**BEISNER** [1] - 2:7
**Beisner** [1] - 31:9
**bell** [1] - 29:21
**better** [1] - 27:9
**between** [1] - 5:23
**BIDDLE** [1] - 2:4
**Bill** [1] - 14:11
**bit** [3] - 4:4, 20:2, 20:21
**blanket** [1] - 27:22
**block** [1] - 11:19
**bottom** [2] - 34:9, 37:6
**brief** [8] - 32:15, 34:6, 34:16, 34:17, 34:20, 35:8, 35:13, 35:18
**briefed** [1] - 36:9
**briefing** [5] - 34:10, 35:2, 35:5, 37:2, 37:4
**briefly** [2] - 6:5, 32:5
**bring** [1] - 36:24
**brought** [1] - 13:18
**Brown** [1] - 32:7
**Brunswick** [1] - 17:20
**bundles** [2] - 15:1, 15:3
**BURNS** [3] - 1:18, 1:18, 13:15

---

**BY** [13] - 1:14, 1:15, 1:17, 1:18, 1:20, 1:21, 2:5, 2:7, 2:9, 2:11, 2:14, 2:16, 2:18

---

**C**

**California** [4] - 17:19, 18:4, 25:25, 31:13
**cancer** [10] - 15:16, 15:17, 17:6, 17:13, 22:12, 22:22, 24:2, 24:13, 24:23, 25:22
**carcinogen** [1] - 35:25
**care** [3] - 25:2, 31:18, 39:22
**CAROLINE** [1] - 2:14
**CASAMENTO** [1] - 2:11
**case** [20] - 4:21, 5:11, 5:12, 12:1, 12:4, 17:6, 17:9, 17:11, 17:13, 17:14, 18:15, 18:18, 23:3, 24:3, 24:13, 25:8, 28:6, 33:3
**case-by-case** [1] - 24:3
**cases** [39] - 15:16, 15:17, 15:18, 15:19, 16:25, 17:3, 17:16, 17:17, 17:22, 18:16, 18:17, 18:20, 18:24, 22:10, 22:20, 22:21, 23:11, 23:13, 23:17, 23:21, 23:22, 24:1, 27:20, 28:3, 28:5, 28:6, 29:2, 29:14, 29:15, 30:1, 30:4, 30:6, 30:11, 30:12, 30:22, 31:3, 31:7, 31:22
**causing** [1] - 23:12
**CCR** [3] - 1:24, 3:17, 44:23
**ceremony** [1] - 12:7
**certain** [2] - 15:1, 34:22
**certainly** [2] - 25:16, 36:22
**Certificate** [1] - 44:23
**CERTIFIED** [1] - 3:10
**Certified** [1] - 44:6
**certify** [2] - 44:7, 44:12
**cetera** [3] - 27:6, 34:23, 38:9
**change** [1] - 24:23
**changed** [1] - 24:15
**CHAREST** [1] - 1:18
**checked** [1] - 27:21

---

**children** [1] - 23:2
**chosen** [1] - 23:14
**CHRISTOPHER** [2] - 1:17, 1:20
**circumstance** [1] - 28:11
**CIVIL** [1] - 1:2
**claiming** [2] - 26:14, 32:23
**clarification** [1] - 6:21
**clarify** [1] - 7:5
**CLARKSON** [1] - 1:8
**classified** [1] - 35:25
**clean** [1] - 23:14
**clear** [1] - 9:3
**clearly** [1] - 26:19
**CLERK** [2] - 4:2, 43:12
**closer** [1] - 5:25
**CMO** [1] - 30:24
**co** [1] - 41:16
**co-counsel** [1] - 41:16
**Cohen** [1] - 17:4
**COHEN** [1] - 1:19
**collaboratively** [1] - 10:22
**collectively** [1] - 36:1
**combined** [1] - 35:15
**coming** [3] - 14:7, 39:8, 40:22
**commerce** [4] - 33:17, 37:8, 37:9, 37:12
**Committee** [2] - 1:22, 22:23
**communications** [2] - 6:16, 9:2
**community** [1] - 19:2
**compel** [2] - 6:4, 6:23
**compelling** [2] - 7:1, 9:10
**competing** [2] - 4:9, 22:6
**complaint** [7] - 30:23, 30:25, 31:9, 34:13, 34:24, 36:3, 37:3
**complaints** [1] - 31:12
**completed** [1] - 17:25
**conceal** [1] - 33:23
**concern** [2] - 26:12, 33:11
**concerned** [1] - 19:3
**concerns** [1] - 32:12
**conclude** [1] - 29:12
**concluded** [1] - 43:13
**conditions** [1] - 23:20
**confederated** [1] - 35:16

---

**confer** [1] - 9:13
**conference** [3] - 22:4, 39:13, 39:21
**CONFERENCE** [1] - 1:5
**confirm** [1] - 15:8
**confusion** [1] - 7:4
**conspiracy** [7] - 33:19, 34:6, 34:7, 34:15, 35:4, 37:15, 37:16
**conspired** [4] - 33:23, 34:21, 35:16, 37:17
**conspiring** [2] - 34:14, 37:19
**consultants** [1] - 6:15
**consulting** [3] - 11:15, 11:21, 11:25
**consumer** [1] - 35:17
**contention** [1] - 30:14
**contentious** [1] - 38:23
**context** [1] - 30:3
**continue** [1] - 17:2
**continued** [1] - 1:23
**contours** [2] - 5:16, 6:12
**contrived** [1] - 35:15
**control** [2] - 10:18, 15:16
**controls** [3] - 12:8, 15:15
**conversations** [1] - 6:11
**convey** [2] - 36:21, 37:21
**conveyed** [1] - 15:7
**convinced** [1] - 9:18
**cooperate** [1] - 12:13
**cooperation** [1] - 11:23
**correct** [6] - 4:14, 5:25, 13:15, 32:1, 42:10, 43:7
**Correct** [1] - 4:21
**correctly** [2] - 15:14, 19:22
**corresponded** [1] - 35:21
**Cosmetic** [1] - 33:25
**cost** [1] - 25:9
**COUGHLIN** [1] - 2:16
**counsel** [14] - 9:2, 9:3, 10:21, 10:24, 11:6, 12:6, 22:6, 22:8, 22:20, 30:10, 41:16, 42:5, 44:13, 44:15
**country** [6] - 14:12, 15:10, 16:3, 17:3, 17:18, 39:11
**County** [1] - 17:16
**couple** [2] - 7:23, 12:15
**course** [4] - 19:12, 34:7,

35:3, 36:8
**Court** [7] - 8:18, 9:7, 21:3, 30:8, 30:19, 44:6
**COURT** [4] - 1:1, 1:25, 3:17, 5:21
**court** [3] - 4:1, 17:3, 33:14
**Court's** [1] - 38:11
**COURTHOUSE** [1] - 1:8
**courtroom** [1] - 42:15
**cover** [1] - 16:12
**creating** [1] - 28:24
**criteria** [4] - 22:22, 22:24, 23:11, 24:11
**critical** [1] - 15:13
**criticized** [1] - 23:10
**CRR** [1] - 1:24
**custody** [1] - 10:18

**D**

**D.C** [3] - 2:7, 2:9, 26:1
**Dakota** [2] - 41:24, 41:25
**DANIEL** [1] - 1:21
**date** [9] - 17:15, 21:19, 27:2, 38:25, 39:1, 40:20, 42:19, 44:10
**dates** [8] - 5:18, 17:19, 20:14, 20:15, 20:22, 22:1, 39:4, 43:3
**Daubert** [5] - 15:11, 16:21, 17:2, 17:25, 21:25
**daughter** [1] - 41:19
**days** [14] - 7:24, 12:15, 13:21, 14:1, 14:2, 15:8, 19:5, 19:18, 20:11, 21:4, 21:8, 21:18, 41:7, 42:7
**deal** [6] - 24:14, 28:7, 28:18, 29:13, 29:22, 36:17
**dealing** [1] - 15:24
**decide** [5] - 24:8, 24:19, 27:17, 33:12, 33:13
**declaration** [1] - 19:12
**Defendant** [3] - 2:7, 2:12, 2:18
**defendant** [7] - 6:18, 16:7, 26:7, 26:16, 26:18, 28:10, 29:8
**defendants** [15] - 6:16, 6:21, 8:25, 10:17, 11:2, 13:21, 25:24, 26:3, 26:6, 26:20, 26:24, 27:14,

29:1, 31:8, 34:16
**defense** [1] - 22:6
**defenses** [1] - 27:15
**define** [2] - 26:21, 29:4
**defining** [1] - 27:10
**definitely** [1] - 21:6
**degree** [1] - 18:17
**Delaware** [2] - 26:1, 31:13
**delay** [2] - 4:5, 21:22
**delays** [1] - 21:17
**delete** [1] - 35:22
**deleting** [1] - 34:2
**deposition** [2] - 6:12, 38:20
**depositions** [2] - 5:15, 5:18
**DEPUTY** [2] - 4:2, 43:12
**deputy** [1] - 42:15
**describe** [1] - 14:3
**develop** [2] - 24:12, 24:23
**diagnosed** [3] - 25:22, 27:5, 27:11
**died** [3] - 23:1, 24:2, 24:6
**difference** [1] - 25:9
**different** [2] - 18:10, 37:15
**difficult** [1] - 11:22
**diligently** [2] - 15:6, 21:5
**direct** [1] - 26:10
**directed** [3] - 34:8, 37:12, 37:16
**disagree** [1] - 18:6
**discovery** [1] - 17:11
**discretion** [1] - 33:14
**discussion** [1] - 22:4
**discussions** [2] - 8:25, 20:8
**dismiss** [8] - 22:10, 23:9, 23:18, 27:23, 30:5, 32:6, 32:25, 33:13
**dismissal** [1] - 30:2
**dismissals** [3] - 4:10, 22:3, 29:23
**dismissed** [1] - 22:15
**dispute** [2] - 22:9, 28:19
**disputed** [1] - 29:7
**disputes** [1] - 28:24
**distinct** [1] - 18:10
**District** [1] - 25:7
**DISTRICT** [2] - 1:1, 1:1
**diversity** [1] - 32:24

**docket** [3] - 23:12, 30:25, 32:7
**document** [2] - 11:10, 15:2
**documents** [9] - 6:3, 6:22, 7:7, 7:13, 7:21, 8:8, 9:6, 9:9, 10:20
**done** [12] - 7:3, 12:3, 14:13, 15:23, 19:21, 19:22, 20:18, 21:23, 22:2, 23:22, 26:10, 43:7
**down** [4] - 14:23, 21:21, 31:5, 31:19
**Dr** [19] - 7:3, 8:19, 8:20, 9:11, 14:10, 14:20, 15:7, 15:25, 16:14, 16:23, 17:6, 17:21, 18:2, 18:8, 18:13, 18:16, 19:13, 20:8, 21:6
**draft** [1] - 29:17
**drafted** [1] - 23:20
**DRINKER** [1] - 2:4
**driving** [1] - 41:18
**DUFFY** [1] - 2:16
**duplicate** [1] - 31:22
**duty** [1] - 21:3

**E**

**early** [3] - 39:15, 39:25
**easier** [4] - 29:6, 33:15, 36:24, 38:1
**easy** [2] - 23:16, 26:21
**edit** [1] - 35:21
**Edna** [1] - 32:7
**effect** [1] - 21:21
**either** [4] - 10:11, 31:13, 39:3, 42:22
**electron** [1] - 14:14
**ELLIS** [1] - 2:13
**email** [1] - 11:6
**emailed** [1] - 10:24
**employee** [2] - 44:13, 44:15
**end** [3] - 20:9, 21:5, 21:16
**ensure** [1] - 16:12
**enter** [1] - 8:11
**entire** [1] - 42:9
**ENTITLED** [1] - 3:12
**ESQUIRE** [15] - 1:14, 1:15, 1:17, 1:18, 1:20,

1:21, 2:5, 2:5, 2:7, 2:9, 2:11, 2:11, 2:14, 2:16, 2:18
**ESQUIRES** [13] - 1:13, 1:15, 1:16, 1:18, 1:19, 1:21, 2:4, 2:6, 2:9, 2:10, 2:13, 2:16, 2:17
**essentially** [3] - 18:23, 27:22, 27:23
**estimates** [1] - 19:22
**et** [3] - 27:6, 34:23, 38:9
**evening** [1] - 40:3
**exact** [1] - 22:1
**exactly** [1] - 27:4
**example** [3] - 31:4, 32:5, 32:7
**excellent** [1] - 38:24
**except** [1] - 28:17
**expect** [2] - 13:20, 18:13
**expectation** [1] - 8:23
**expense** [1] - 12:22
**expert** [5] - 14:10, 16:24, 17:7, 17:21, 22:23
**experts** [6] - 6:15, 10:15, 11:15, 11:18, 11:21, 11:25
**EXRD** [1] - 14:17
**extended** [1] - 21:20
**extension** [1] - 21:22
**extent** [1] - 11:16

**F**

**facilitate** [1] - 11:10
**facility** [1] - 16:15
**fact** [13] - 4:24, 6:9, 6:14, 7:2, 8:3, 8:15, 9:23, 10:21, 24:12, 36:5, 37:11, 40:21
**facts** [1] - 21:10
**fair** [1] - 6:1
**false** [1] - 36:2
**familiar** [1] - 33:2
**February** [1] - 21:11
**federal** [1] - 31:14
**few** [1] - 18:7
**fibers** [2] - 14:17, 15:4
**FIELD** [1] - 2:18
**figure** [3] - 8:4, 11:12, 25:10
**figured** [1] - 8:5
**file** [13] - 8:17, 13:7, 24:13, 24:24, 25:1, 25:2,

25:12, 25:21, 26:4, 27:12, 27:13, 27:16
**filed** [6] - 7:25, 13:11, 30:23, 31:4, 31:9, 32:25
**filing** [6] - 23:10, 23:20, 24:15, 25:16, 30:24, 31:5
**finality** [1] - 26:20
**financially** [1] - 44:16
**fine** [4] - 28:17, 40:16, 41:3, 42:22
**finished** [2] - 21:3, 21:4
**finite** [1] - 15:20
**firm** [12] - 4:21, 17:4, 17:9, 17:15, 18:14, 32:12, 32:16, 32:17, 34:12, 36:19, 38:2, 38:11
**firms** [3] - 17:5, 17:10, 23:14
**first** [10] - 4:18, 8:9, 9:14, 12:14, 29:20, 29:21, 33:13, 34:5, 37:7
**FISHER** [1] - 1:8
**fit** [1] - 24:10
**FLOM** [1] - 2:6
**Florida** [1] - 25:20
**FLORIDA** [1] - 1:17
**fly** [2] - 36:15, 37:13
**flying** [1] - 40:25
**focus** [2] - 33:9, 33:19
**followed** [1] - 17:8
**FOLLOWING** [1] - 3:10
**following** [1] - 41:9
**FOR** [1] - 1:1
**Force** [2] - 34:2, 34:23
**foregoing** [1] - 44:8
**Forest** [1] - 17:10
**forgotten** [1] - 25:23
**form** [6] - 7:19, 23:23, 24:18, 30:23, 30:24, 31:8
**formed** [1] - 34:1
**forth** [5] - 5:17, 26:5, 33:12, 44:11
**forum** [1] - 27:23
**forward** [3] - 17:22, 23:3, 42:16
**Fragrance** [1] - 33:25
**fraudulent** [1] - 26:13
**FREDA** [1] - 1:10
**frustrating** [3] - 16:19, 16:22, 17:23

**future** [5] - 15:19, 15:23, 24:24, 26:2, 26:7

---

**G**

**general** [1] - 33:8
**Gerel** [1] - 17:4
**GEREL** [1] - 1:15
**given** [6] - 9:25, 16:18, 19:23, 22:6, 22:7, 33:11
**global** [2] - 23:23, 24:18
**go-to** [1] - 16:24
**GORDON** [1] - 2:17
**govern** [1] - 4:23
**graduate** [1] - 41:19
**great** [2] - 18:19, 21:24
**group** [1] - 34:25
**groups** [1] - 36:4
**guess** [7] - 6:20, 20:5, 24:6, 32:12, 32:20, 36:18, 43:9

---

**H**

**half** [1] - 13:22
**hand** [3] - 8:15, 11:14, 35:10
**happy** [3] - 20:23, 29:18, 38:19
**hard** [1] - 16:16
**heard** [2] - 7:19, 10:14
**hearing** [5] - 7:5, 16:22, 17:2, 17:25, 21:25
**heirs** [1] - 23:1
**held** [1] - 8:24
**help** [1] - 42:17
**hereby** [1] - 44:7
**hereinbefore** [1] - 44:10
**herself** [1] - 7:16
**hesitant** [1] - 37:22
**hide** [1] - 33:23
**hiding** [1] - 34:2
**highlight** [1] - 38:14
**highlighting** [1] - 34:18
**highlights** [1] - 35:7
**holding** [1] - 8:15
**home** [11] - 10:5, 10:6, 10:7, 10:9, 25:1, 25:3, 25:12, 25:16, 27:13, 29:7, 29:8
**Honor** [41] - 4:14, 4:22, 5:7, 5:20, 6:1, 6:5, 7:14, 8:13, 12:24, 13:2, 13:10, 13:15, 13:25, 14:3, 15:3,

15:18, 15:24, 18:5, 18:21, 20:23, 21:9, 22:16, 23:10, 25:4, 26:3, 28:9, 29:19, 29:24, 30:22, 31:24, 32:14, 32:18, 33:3, 33:21, 35:9, 36:22, 37:21, 38:21, 38:23, 41:13, 43:8
**HONORABLE** [1] - 1:10
**hope** [3] - 4:11, 5:12, 18:1
**hoped** [1] - 22:4
**hours** [5] - 14:15, 14:18, 14:19, 14:24, 19:23
**Hunchareck** [1] - 8:20
**husband** [1] - 23:1

---

**I**

**idea** [2] - 10:25, 37:8
**Illinois** [9] - 33:1, 33:6, 33:18, 34:8, 36:6, 37:13, 37:17, 37:19
**Imerys** [21] - 2:18, 5:24, 12:6, 12:10, 13:14, 13:24, 16:8, 26:1, 32:6, 32:22, 32:25, 33:23, 33:24, 34:22, 35:14, 35:20, 35:25, 36:9, 36:12, 36:18, 42:4
**Imerys'** [1] - 10:21
**immediately** [1] - 9:9
**impasse** [1] - 4:13
**important** [2] - 11:11, 16:2
**impression** [1] - 10:19
**IN** [2] - 1:4, 3:11
**inadequate** [1] - 34:11
**incidental** [1] - 10:16
**include** [1] - 24:5
**includes** [1] - 4:8
**including** [1] - 5:18
**indicated** [1] - 15:25
**indication** [1] - 9:16
**individual** [3] - 10:3, 29:14, 29:15
**individually** [1] - 23:19
**inform** [1] - 21:3
**information** [7] - 19:20, 20:3, 21:13, 33:24, 34:2, 34:22, 36:2
**injuries** [1] - 35:17
**instance** [3] - 23:7, 25:24, 35:5

**instances** [2] - 22:21, 23:13
**interested** [1] - 44:16
**Interested** [1] - 34:1
**interim** [1] - 43:4
**involve** [2] - 14:13, 22:25
**involved** [8] - 7:8, 9:4, 16:24, 18:15, 19:23, 20:5, 21:12, 36:4
**involves** [1] - 34:15
**involving** [1] - 32:6
**IS** [1] - 3:10
**issue** [13] - 4:19, 5:4, 5:13, 5:15, 9:14, 11:8, 11:9, 11:12, 11:16, 24:20, 28:11, 30:3, 30:9
**issues** [11] - 4:8, 4:17, 5:10, 5:22, 7:9, 9:5, 13:13, 29:16, 34:11, 38:16, 38:17
**Item** [1] - 29:22
**items** [1] - 32:1
**itself** [2] - 6:12, 19:4
**IV** [2] - 30:10, 30:18

---

**J**

**J&J** [12] - 5:23, 12:10, 13:23, 16:8, 25:25, 30:11, 32:22, 33:23, 33:24, 34:21, 35:14, 35:20
**jealous** [1] - 41:17
**Jeopardy** [1] - 29:21
**JERSEY** [6] - 1:1, 1:20, 1:21, 2:11, 2:11, 2:16
**Jersey** [7] - 25:1, 25:7, 25:19, 25:21, 25:25, 31:13, 44:7
**JOHN** [1] - 2:7
**JOHNSON** [2] - 1:4
**Johnson** [4] - 2:7, 26:6
**join** [2] - 26:16, 26:17
**joinder** [2] - 26:13, 26:16
**joining** [1] - 26:14
**joint** [1] - 23:4
**jointly** [1] - 12:9
**JUDGE** [78] - 4:3, 4:15, 5:1, 5:8, 5:13, 6:2, 6:7, 7:11, 7:15, 9:12, 9:21, 10:4, 10:7, 11:3, 11:13, 12:16, 12:21, 12:25, 13:4, 13:12, 13:16, 14:5, 16:21, 19:3, 19:7, 20:7,

21:1, 21:16, 22:18, 24:4, 25:2, 25:10, 26:9, 27:8, 27:25, 28:17, 29:15, 29:20, 30:21, 31:21, 31:25, 32:4, 32:15, 32:20, 33:6, 33:8, 33:22, 35:12, 36:23, 37:5, 37:23, 38:5, 38:7, 38:13, 38:24, 39:6, 39:11, 39:18, 39:24, 40:2, 40:5, 40:8, 40:12, 40:14, 40:17, 41:2, 41:5, 41:10, 41:14, 41:21, 42:1, 42:6, 42:9, 42:13, 42:20, 42:23, 42:25, 43:9
**Judge** [8] - 4:20, 5:14, 13:14, 20:16, 21:10, 27:18, 37:1, 43:5
**judge** [1] - 4:22
**JULIE** [1] - 2:5
**July** [12] - 20:19, 35:20, 39:2, 39:7, 39:20, 39:25, 40:4, 40:9, 40:17, 40:18, 40:24, 43:2
**jumping** [1] - 23:5
**June** [7] - 17:7, 18:14, 20:24, 38:25, 39:10, 39:12, 40:18
**jurisdiction** [24] - 18:23, 25:11, 27:3, 27:6, 27:14, 27:16, 28:10, 28:14, 28:25, 29:1, 29:2, 29:4, 29:9, 31:15, 33:1, 33:4, 33:9, 33:10, 36:12, 36:18, 37:10, 38:8
**jurisdictions** [2] - 25:15, 26:21

---

## K

**keep** [1] - 34:22
**Kentucky** [2] - 4:23, 5:11
**kind** [3] - 8:11, 19:12, 24:12
**kindly** [1] - 31:1
**knowingly** [1] - 35:15
**knows** [1] - 26:22

---

## L

**lab** [11] - 14:2, 14:5, 14:6, 14:10, 14:11, 14:12, 16:2, 16:14, 19:25, 20:4

**lack** [1] - 33:1
**laid** [2] - 21:10, 25:15
**language** [3] - 27:9, 34:16, 35:8
**Lanier** [1] - 17:4
**LAPINSKI** [2] - 1:21, 38:22
**Lapinski** [1] - 38:19
**last** [9] - 7:20, 7:23, 8:19, 9:24, 9:25, 12:14, 15:8, 22:7, 39:13
**lastly** [1] - 25:23
**late** [1] - 8:19
**law** [3] - 4:21, 10:10, 25:6
**lawsuit** [1] - 25:9
**lawyers** [3] - 4:24, 17:2, 17:13
**learned** [1] - 6:9
**least** [2] - 9:1, 9:10
**leave** [5] - 24:20, 27:10, 28:25, 29:8, 40:11
**leaves** [1] - 27:14
**leaving** [1] - 24:11
**legitimate** [2] - 23:8, 26:15
**LEIGH** [1] - 1:14
**less** [2] - 19:17, 21:7
**letter** [3] - 6:7, 7:12, 21:10
**letters** [1] - 5:16
**LEVIN** [1] - 1:16
**likely** [1] - 15:22
**Limitations** [1] - 24:16
**limited** [4] - 15:22, 25:5, 27:9, 28:1
**line** [3] - 34:9, 35:18, 37:6
**Linear** [1] - 18:14
**list** [3] - 22:20, 31:1, 31:3
**listed** [2] - 22:21, 31:7
**literature** [1] - 15:12
**litigating** [1] - 7:9
**litigation** [4] - 6:15, 9:3, 11:20, 23:12
**lived** [2] - 25:19, 28:13
**LLC** [2] - 2:14
**local** [3] - 7:25, 8:16, 32:23
**location** [1] - 28:14
**LOCKE** [1] - 2:9
**Locke** [1] - 29:25
**lodged** [1] - 18:23

**Longo** [14] - 14:20, 15:7, 15:25, 16:14, 16:23, 17:6, 17:21, 18:2, 18:8, 18:13, 18:16, 19:13, 20:8, 21:6
**Longo's** [1] - 14:11
**look** [6] - 4:17, 9:19, 11:13, 22:2, 30:11, 31:20
**looking** [5] - 8:1, 10:10, 25:13, 29:2, 32:10
**loosely** [1] - 35:2
**lose** [1] - 34:16
**loss** [1] - 20:2
**Louis** [7] - 17:9, 17:12, 17:16, 18:3, 18:14

---

## M

**man** [1] - 19:23
**March** [2] - 13:22, 13:23
**MARK** [1] - 2:16
**MARKETING** [1] - 1:5
**master** [1] - 30:25
**material** [1] - 15:21
**Materials** [1] - 14:11
**materials** [1] - 10:23
**MATTER** [1] - 3:12
**matter** [3] - 26:2, 31:14, 42:21
**MAY** [1] - 1:5
**McTIERNAN** [1] - 2:10
**MDL** [13] - 4:23, 15:14, 15:16, 18:4, 18:11, 24:24, 25:13, 27:12, 29:7, 31:11, 36:13, 38:3, 38:5
**MEAGHER** [1] - 2:6
**mean** [4] - 15:3, 28:21, 28:22, 37:12
**means** [2] - 28:19, 29:11
**meet** [4] - 9:13, 22:22, 23:11, 40:19
**members** [1] - 33:25
**merits** [1] - 34:4
**mesothelioma** [1] - 15:17
**message** [1] - 32:20
**methodology** [4] - 15:9, 15:11, 15:12, 19:1
**MICHELLE** [1] - 1:15
**microscopy** [1] - 14:14
**mid** [1] - 20:20

**mid-August** [1] - 20:20
**might** [4] - 11:17, 36:24, 38:1, 40:25
**Miller** [7] - 32:12, 32:16, 34:12, 36:19, 38:2, 38:11
**mind** [2] - 24:15, 24:23
**mines** [1] - 16:9
**missing** [1] - 42:17
**Missouri** [1] - 17:7
**MISSOURI** [1] - 2:14
**moment** [1] - 4:16
**month** [4] - 13:22, 39:12, 39:15, 39:21
**months** [3] - 7:18, 10:14, 24:7
**moreover** [1] - 34:12
**morning** [5] - 4:4, 4:5, 29:25, 40:10, 41:1
**most** [3] - 5:22, 15:22, 31:17
**motion** [8] - 27:1, 30:13, 30:15, 32:6, 32:13, 32:25, 33:12, 36:25
**motions** [2] - 6:4, 32:6
**move** [6] - 9:17, 12:23, 13:4, 20:20, 23:3, 39:24
**moved** [3] - 13:3, 25:20, 28:13
**moving** [2] - 17:22, 39:20
**MR** [25] - 5:20, 6:1, 6:5, 6:8, 7:14, 8:13, 9:22, 10:6, 10:15, 11:6, 12:24, 13:2, 13:9, 13:15, 27:18, 33:3, 33:7, 33:21, 35:9, 37:1, 38:4, 38:6, 38:10, 38:22, 42:4
**MS** [70] - 4:14, 4:22, 5:6, 5:10, 5:12, 7:17, 9:18, 9:25, 10:9, 11:5, 11:8, 12:12, 12:20, 13:5, 13:23, 14:9, 16:19, 16:23, 18:5, 19:6, 20:6, 20:23, 21:2, 22:16, 22:19, 23:16, 24:22, 25:4, 25:14, 27:4, 28:9, 29:14, 29:18, 29:24, 30:22, 31:24, 32:2, 32:3, 32:14, 32:18, 36:21, 37:21, 38:19, 39:5, 39:10, 39:17, 39:20, 40:1, 40:3, 40:7, 40:10, 40:13, 40:15, 40:16,

40:24, 41:4, 41:8, 41:12, 41:13, 41:15, 41:18, 41:23, 41:25, 42:2, 42:8, 42:11, 42:19, 42:22, 42:24, 43:8
**multi** [2] - 17:8, 31:12
**multi-plaintiff** [2] - 17:8, 31:12
**multiple** [2] - 14:22, 19:8
**Muscat** [2] - 7:4, 9:11
**MY** [1] - 3:11

## N

**named** [3] - 27:14, 32:22, 32:23
**naming** [1] - 32:24
**national** [1] - 42:5
**necessarily** [1] - 5:24
**necessary** [1] - 19:11
**need** [17] - 6:21, 8:4, 8:21, 9:12, 11:12, 12:16, 13:25, 21:6, 29:22, 30:1, 30:4, 30:19, 31:4, 34:9, 35:6, 36:23, 38:11
**needed** [2] - 15:25, 30:13
**needs** [1] - 15:8
**negotiated** [1] - 7:18
**negotiating** [1] - 6:11
**New** [8] - 17:20, 25:1, 25:7, 25:19, 25:21, 25:25, 31:13, 44:7
**new** [1] - 24:13
**NEW** [6] - 1:1, 1:20, 1:21, 2:11, 2:11, 2:16
**next** [4] - 21:19, 38:25, 39:6, 43:3
**night** [2] - 15:8, 22:7
**NJ** [1] - 1:8
**NO** [1] - 1:2
**nobody** [1] - 32:16
**nonparty** [1] - 6:4
**North** [2] - 41:24, 41:25
**NOTES** [1] - 3:11
**nothing** [1] - 7:20
**notice** [2] - 6:12, 30:24
**notices** [1] - 31:4
**notion** [2] - 33:22, 34:14
**number** [5] - 15:1, 16:3, 21:12, 30:25, 31:5
**numeral** [3] - 30:10, 30:18, 30:19

## O

**O'DELL** [30] - 1:14, 4:14, 5:6, 5:10, 13:23, 14:9, 18:5, 19:6, 20:23, 21:2, 22:16, 22:19, 25:4, 25:14, 28:9, 29:18, 30:22, 31:24, 32:2, 32:14, 36:21, 37:21, 39:20, 40:16, 41:13, 41:15, 41:25, 42:19, 42:22, 43:8
**O'Dell** [1] - 27:20
**obviously** [4] - 20:15, 21:25, 22:9, 33:9
**occurred** [1] - 28:16
**OF** [3] - 1:1, 1:4, 3:11
**OFFICIAL** [2] - 1:25, 3:17
**Official** [1] - 44:5
**often** [1] - 23:10
**once** [3] - 8:5, 8:7, 33:4
**one** [15] - 4:8, 5:2, 7:3, 16:2, 17:18, 17:20, 29:12, 32:5, 32:21, 33:16, 38:15, 42:22
**ones** [3] - 24:6, 28:7, 29:6
**ongoing** [1] - 18:11
**open** [4] - 4:1, 24:11, 27:15, 29:8
**operate** [1] - 9:13
**opportunity** [2] - 15:21, 29:24
**opposed** [3] - 19:18, 27:10, 36:6
**opposition** [1] - 32:15
**oral** [1] - 32:10
**order** [13] - 7:1, 8:12, 9:10, 9:13, 23:24, 24:18, 25:14, 26:5, 27:19, 27:22, 28:4, 30:4, 38:20
**orders** [4] - 4:9, 22:6, 22:7, 29:13
**outlined** [1] - 28:5
**outside** [1] - 22:24
**ovarian** [8] - 15:15, 15:17, 17:6, 17:13, 17:16, 22:12, 24:1, 24:23

## P

**page** [2] - 35:13, 35:19
**PAPANTONIO** [1] - 1:16

**papers** [1] - 35:22
**paragraph** [2] - 23:25
**parameters** [1] - 28:5
**Parfitt** [1] - 18:15
**PARFITT** [5] - 1:15, 29:24, 32:18, 40:15, 40:24
**part** [5] - 34:24, 35:2, 35:21, 36:5, 39:15
**particular** [5] - 4:20, 15:23, 23:11, 28:6, 28:12
**parties** [3] - 11:14, 34:10, 44:14
**Party** [1] - 34:1
**party** [1] - 6:3
**past** [1] - 23:23
**PATRICIA** [1] - 2:11
**pause** [1] - 33:11
**paying** [1] - 11:25
**PCPC** [5] - 2:12, 5:25, 26:1, 29:22, 30:2
**pending** [1] - 15:19
**PENNSYLVANIA** [1] - 2:18
**people** [9] - 10:10, 10:13, 10:16, 12:9, 12:11, 14:5, 19:25, 20:5
**per** [2] - 14:15, 14:19
**perhaps** [1] - 19:9
**period** [2] - 16:6, 28:13
**permitted** [1] - 26:16
**personal** [4] - 10:2, 10:3, 33:1, 37:10
**personally** [1] - 12:3
**perspective** [2] - 23:9, 41:22
**phone** [2] - 4:11, 22:13
**pick** [1] - 40:20
**picked** [1] - 14:5
**Pisano** [6] - 4:20, 5:15, 13:14, 20:16, 21:10, 43:5
**place** [3] - 5:24, 25:21, 44:10
**Placitella** [1] - 17:5
**PLACITELLA** [3] - 1:19, 1:20, 35:9
**plaintiff** [10] - 17:6, 17:8, 23:8, 25:17, 26:6, 28:12, 29:7, 31:12, 33:18, 35:14
**plaintiffs** [18] - 5:23,

7:19, 8:7, 13:20, 16:25, 22:10, 22:20, 22:25, 23:5, 23:10, 23:24, 26:22, 27:22, 30:14, 31:11, 31:17, 36:12, 37:2
**Plaintiffs** [2] - 1:22, 22:23
**plaintiffs'** [5] - 16:24, 20:9, 22:8, 22:21, 27:19
**plans** [1] - 39:13
**pleading** [1] - 30:17
**point** [15] - 5:3, 5:8, 6:24, 8:12, 18:21, 21:11, 23:25, 24:7, 24:12, 26:13, 28:7, 29:10, 30:20, 34:5, 35:4
**pointed** [3] - 15:14, 19:8, 36:9
**populated** [1] - 23:12
**portions** [1] - 35:22
**position** [1] - 8:6
**possible** [4] - 16:17, 20:25, 21:7, 42:2
**post** [1] - 30:16
**POWDER** [1] - 1:5
**Powder** [1] - 16:5
**powder** [1] - 16:9
**practice** [1] - 27:2
**PRACTICES** [1] - 1:5
**precluded** [1] - 26:6
**prefer** [2] - 11:17, 11:22
**preferred** [1] - 41:15
**prejudice** [2] - 23:9, 27:23
**premature** [1] - 8:11
**premier** [2] - 14:12, 16:2
**preparation** [1] - 14:21
**prepare** [2] - 14:15, 17:2
**preparing** [1] - 14:23
**present** [2] - 16:7, 38:21
**presented** [1] - 13:14
**preserve** [1] - 27:8
**pressed** [2] - 16:16, 20:25
**pressing** [1] - 17:15
**pretty** [2] - 24:22, 25:6
**prevent** [1] - 35:24
**previously** [2] - 20:16, 20:17
**primary** [1] - 25:18
**priority** [1] - 18:4
**privilege** [1] - 13:13

**problem** [7] - 13:9, 27:18, 30:8, 31:6, 39:1, 42:4, 42:17
**problems** [4] - 35:7, 36:8, 36:10, 39:19
**proceed** [3] - 24:2, 24:7, 24:8
**proceedings** [2] - 43:13, 44:9
**process** [4] - 9:22, 10:23, 14:3, 15:4
**produced** [2] - 10:24, 18:11
**producing** [1] - 22:23
**product** [1] - 27:5
**production** [2] - 6:24, 11:10
**products** [1] - 16:5
**PRODUCTS** [1] - 1:5
**Program** [1] - 35:24
**progress** [1] - 25:8
**progressing** [1] - 17:12
**proof** [3] - 7:24, 8:1, 13:7
**propose** [1] - 27:3
**proposed** [4] - 22:7, 25:14, 26:5, 27:19
**protocol** [4] - 4:19, 4:23, 15:15, 38:20
**provide** [2] - 8:21, 36:22
**provided** [1] - 31:1
**providing** [1] - 20:3
**PTI** [3] - 2:14, 17:14
**public** [1] - 36:2
**published** [1] - 15:12
**pull** [1] - 6:16
**pulled** [1] - 9:3
**purports** [1] - 7:24
**purposes** [2] - 9:1, 25:16
**PURSUANT** [1] - 3:9
**pursuant** [1] - 30:12
**pursue** [1] - 36:23
**put** [4] - 26:5, 33:17, 37:11, 37:24
**putting** [2] - 12:17, 37:8

**Q**

**questions** [1] - 19:19
**quibbling** [1] - 21:16
**quickly** [4] - 16:17, 20:25, 21:7, 21:24
**quote** [2] - 23:5, 34:15

**R**

**raise** [1] - 28:11
**raised** [6] - 4:19, 5:11, 11:9, 12:14, 12:17, 15:20
**rang** [1] - 29:21
**rather** [1] - 23:23
**re** [6] - 8:22, 23:20, 24:15, 24:24, 27:12, 27:13
**RE** [1] - 1:4
**re-file** [3] - 24:24, 27:12, 27:13
**re-filing** [2] - 23:20, 24:15
**re-serve** [1] - 8:22
**reach** [1] - 38:10
**reached** [3] - 4:12, 22:19, 31:16
**read** [1] - 6:7
**reading** [2] - 7:11, 27:19
**ready** [1] - 32:9
**real** [6] - 11:13, 12:5, 19:4, 19:10, 22:9, 34:4
**reality** [1] - 18:2
**really** [14] - 6:8, 19:11, 20:25, 21:11, 21:13, 23:16, 26:19, 34:10, 36:15, 36:17, 36:19, 37:14, 37:18, 39:14
**reason** [6] - 8:23, 12:22, 21:20, 23:2, 23:8, 28:18
**reasonable** [1] - 20:11
**reasons** [3] - 22:13, 22:14, 23:17
**REATH** [1] - 2:4
**recent** [1] - 18:8
**recently** [2] - 12:17, 15:7
**recognize** [1] - 33:3
**reconcile** [2] - 30:1, 31:2
**reconciliation** [2] - 30:5, 31:5
**record** [5] - 21:9, 35:6, 35:10, 36:25, 37:7
**REES** [1] - 2:17
**refuse** [1] - 12:2
**regard** [7] - 4:10, 5:24, 13:14, 30:3, 30:9, 33:18, 40:24
**regulatory** [1] - 9:5
**related** [2] - 7:9, 30:22
**relation** [1] - 18:9

**relative** [2] - 44:12, 44:15
**release** [1] - 36:2
**rely** [1] - 34:13
**remaining** [2] - 9:11, 23:2
**remains** [1] - 5:12
**remand** [3] - 32:6, 33:13, 38:8
**remanded** [1] - 32:24
**remands** [1] - 38:15
**reply** [2] - 34:6, 36:10
**report** [5] - 20:24, 21:6, 23:5, 30:7, 38:19
**REPORTER** [2] - 1:25, 3:17
**Reporter** [2] - 44:6
**reports** [2] - 11:16, 22:24
**representative** [3] - 10:1, 16:4, 16:12
**requested** [1] - 16:1
**require** [2] - 7:25, 14:6
**required** [2] - 14:4, 30:15
**requires** [2] - 10:2, 14:18
**resident** [2] - 25:17, 25:23
**residents** [1] - 31:12
**resolution** [2] - 4:12, 22:5
**resolve** [1] - 24:17
**resolved** [1] - 4:20
**respect** [2] - 9:11, 31:7
**respond** [1] - 7:15
**responded** [1] - 32:13
**responsibility** [1] - 18:25
**responsive** [1] - 30:16
**retailer** [1] - 32:25
**retained** [7] - 6:15, 10:17, 11:1, 11:3, 11:15, 12:1, 18:16
**retaining** [1] - 6:18
**returned** [1] - 6:19
**review** [2] - 8:8, 9:1
**reviewed** [1] - 10:20
**rights** [1] - 27:8
**rise** [2] - 4:2, 43:12
**Roman** [3] - 30:10, 30:18, 30:19
**room** [1] - 41:20
**ROTH** [1] - 1:19
**Royston** [1] - 2:14
**RPR** [1] - 1:24
**Rule** [3] - 10:2, 30:12, 30:16

**ruled** [1] - 4:23
**rules** [2] - 7:25, 8:17
**run** [1] - 24:16
**Russoniello** [4] - 3:16, 44:5, 44:22, 44:23
**RUSSONIELLO** [2] - 1:24, 3:17

**S**

**S/Vincent** [2] - 3:16, 44:22
**SALES** [1] - 1:5
**sample** [5] - 14:16, 14:19, 14:21, 20:18
**samples** [16] - 13:18, 13:24, 14:10, 14:13, 14:15, 14:23, 15:5, 15:23, 16:3, 16:8, 18:9, 18:10, 18:22, 19:24, 21:12
**sampling** [1] - 4:19
**save** [2] - 19:15, 19:16
**saw** [1] - 5:16
**schedule** [1] - 41:17
**school** [1] - 41:19
**science** [2] - 7:9, 9:5
**science-related** [1] - 7:9
**scientific** [2] - 19:1, 35:22
**scientists** [2] - 7:8, 16:15
**seated** [1] - 4:4
**second** [1] - 25:9
**SECTION** [1] - 3:9
**see** [9] - 4:6, 11:22, 12:18, 17:25, 20:12, 36:8, 37:6, 37:15, 38:2
**seeing** [1] - 36:3
**send** [1] - 42:15
**sent** [2] - 4:7, 7:24
**separate** [1] - 28:4
**September** [3] - 14:1, 17:24, 20:19
**serve** [3] - 8:7, 8:22, 12:3
**served** [15] - 6:10, 7:2, 7:6, 8:3, 8:6, 8:8, 8:16, 8:19, 8:20, 9:21, 9:22, 10:4, 10:6, 10:13, 13:6
**server** [1] - 9:22
**service** [19] - 7:23, 7:25, 8:2, 8:3, 8:14, 8:17, 9:15, 9:16, 9:17, 9:19, 10:2, 10:3, 10:8, 10:11, 11:11, 11:18, 12:2, 12:8,

13:7

**Services** [1] - 14:11

**serving** [1] - 10:1

**set** [6] - 17:7, 17:12, 20:16, 21:25, 32:11, 44:10

**setting** [2] - 20:17, 26:20

**seven** [2] - 7:18, 10:14

**several** [1] - 15:20

**SEYFARRTH** [1] - 2:9

**Sharko** [8] - 7:15, 9:24, 12:6, 15:14, 15:20, 16:22, 18:6, 25:5

**SHARKO** [38] - 2:5, 4:22, 5:12, 7:17, 9:18, 9:25, 10:9, 11:5, 11:8, 12:12, 12:20, 13:5, 16:19, 16:23, 20:6, 23:16, 24:22, 27:4, 29:14, 32:3, 38:19, 39:5, 39:10, 39:17, 40:1, 40:3, 40:7, 40:10, 40:13, 41:4, 41:8, 41:12, 41:18, 41:23, 42:2, 42:8, 42:11, 42:24

**Sharko's** [2] - 28:1, 41:17

**SHAW** [1] - 2:9

**ship** [1] - 23:6

**shop** [1] - 27:23

**short** [3] - 30:23, 30:24, 31:8

**shorten** [1] - 20:12

**shorter** [1] - 20:10

**show** [1] - 9:15

**Shower** [2] - 16:5

**signatories** [1] - 4:25

**signature** [1] - 38:21

**significant** [1] - 4:8

**Signy** [1] - 31:1

**silence** [1] - 12:15

**silly** [1] - 10:19

**SILVER** [11] - 2:16, 13:2, 27:18, 33:3, 33:7, 33:21, 37:1, 38:4, 38:6, 38:10, 42:4

**Silver** [1] - 31:10

**similar** [1] - 5:10

**similarly** [2] - 24:10, 30:9

**simple** [3] - 24:22, 25:6, 29:12

**simply** [1] - 27:11

**sit** [1] - 17:1

**situation** [1] - 23:4

**six** [1] - 24:7

**SKADDEN** [1] - 2:6

**SLATE** [1] - 2:6

**someone** [2] - 26:14, 37:25

**sometime** [1] - 22:8

**soon** [2] - 15:5, 21:2

**sooner** [1] - 43:7

**sorry** [2] - 4:4, 13:1

**sought** [1] - 23:8

**sound** [1] - 33:2

**sourced** [1] - 16:10

**specific** [4] - 15:4, 29:2, 33:10, 37:10

**specifically** [2] - 33:24, 34:8

**sped** [1] - 14:21

**spoken** [2] - 10:21, 30:10

**spot** [1] - 37:24

**St** [7] - 17:9, 17:12, 17:15, 18:3, 18:14

**standing** [1] - 12:7

**start** [3] - 14:9, 18:7, 28:23

**started** [1] - 19:5

**STATE** [1] - 1:8

**state** [14] - 4:21, 15:17, 16:15, 17:3, 25:1, 25:3, 25:12, 25:17, 27:13, 28:12, 29:7, 29:8

**State** [1] - 44:7

**statements** [1] - 10:1

**States** [2] - 35:23, 44:5

**STATES** [2] - 1:1, 1:8

**states** [4] - 25:18, 25:24, 26:4, 31:18

**station** [1] - 17:1

**status** [1] - 23:5

**STATUS** [1] - 1:5

**Statute** [1] - 24:16

**stay** [4] - 35:9, 36:13, 38:3, 38:5

**Steering** [2] - 1:22, 22:23

**STENOGRAPHIC** [1] - 3:11

**stenographically** [1] - 44:9

**still** [8] - 17:23, 24:14, 24:16, 24:19, 31:22, 34:14, 36:12, 37:6

**stipulation** [1] - 23:19

**stops** [1] - 41:23

**strangers** [1] - 11:20

**stream** [4] - 33:17, 37:8, 37:9, 37:12

**STREET** [1] - 1:8

**subject** [1] - 31:14

**submitted** [1] - 35:23

**submitting** [1] - 5:14

**subpoena** [2] - 6:13, 7:19

**subpoenas** [1] - 13:6

**substantial** [9] - 5:22, 25:8, 28:12, 28:19, 28:21, 28:22, 29:5, 29:11

**substantially** [1] - 27:11

**suggested** [2] - 13:25, 23:4

**suggesting** [2] - 20:19, 26:23

**suggestion** [2] - 18:18, 28:1

**suggests** [3] - 34:17, 34:20, 35:3

**SUSAN** [1] - 2:5

---

**T**

---

**table** [1] - 12:18

**Talc** [2] - 2:18, 34:1

**talc** [1] - 35:24

**talcum** [1] - 16:9

**targeted** [1] - 36:6

**Task** [2] - 34:1, 34:23

**task** [1] - 18:22

**tat** [1] - 12:16

**TAYLOR** [1] - 2:11

**team** [2] - 14:20, 16:14

**technicians** [2] - 14:22, 19:9

**TEM** [3] - 14:13, 14:16, 14:24

**term** [1] - 24:5

**terms** [1] - 21:14

**TERSIGNI** [1] - 2:5

**test** [2] - 14:10, 18:22

**tested** [1] - 16:4

**testified** [3] - 15:10, 18:8, 18:9

**testify** [1] - 18:13

**testing** [19] - 13:18, 13:19, 14:4, 14:12, 14:13, 14:14, 15:9, 15:22, 16:12, 17:24, 18:3, 18:9, 18:11, 18:25,

19:4, 20:4, 21:14, 43:6

**TEXAS** [1] - 1:18

**THE** [7] - 1:1, 1:10, 3:9, 3:11, 4:2, 5:21, 43:12

**themselves** [2] - 23:14, 35:16

**theory** [5] - 33:19, 34:6, 34:7, 34:15, 35:4

**therefore** [1] - 13:19

**they've** [1] - 32:21

**thick** [1] - 21:13

**third** [2] - 6:3, 11:14

**third-party** [1] - 6:3

**THOMAS** [1] - 2:9

**THORNTON** [1] - 2:18

**three** [6] - 6:4, 6:22, 7:7, 26:21, 34:21, 39:8

**tight** [1] - 39:12

**timeframe** [3] - 15:5, 16:13, 16:18

**TINSLEY** [1] - 2:14

**TIPTF** [2] - 35:21, 36:1

**Tisi** [4] - 7:24, 10:12, 12:12, 12:14

**TISI** [13] - 1:17, 5:20, 6:1, 6:5, 6:8, 7:14, 8:13, 9:22, 10:6, 10:15, 11:6, 12:24, 13:9

**tit** [1] - 12:16

**TITLE** [1] - 3:9

**TO** [2] - 3:9, 3:10

**today** [10] - 4:9, 9:4, 9:5, 12:18, 14:20, 26:17, 29:11, 32:10, 32:11, 38:18

**today's** [1] - 7:5

**Toiletry** [1] - 33:25

**tort** [1] - 28:15

**total** [1] - 14:19

**touch** [1] - 43:4

**toward** [1] - 21:5

**Toxicology** [1] - 35:24

**TRANSCRIPT** [2] - 1:4, 3:10

**transcript** [2] - 36:22, 44:8

**TRANSCRIPTION** [1] - 3:11

**transferred** [1] - 31:11

**transmission** [1] - 14:14

**treated** [1] - 25:22

**TRENTON** [1] - 1:8

**trial** [4] - 17:12, 17:15,

17:19, 18:14
**trials** [1] - 18:8
**trickle** [1] - 21:21
**tried** [4] - 7:5, 16:13, 17:18, 17:20
**tries** [1] - 33:18
**trigger** [1] - 20:21
**triggered** [1] - 20:17
**true** [2] - 18:1, 44:8
**try** [3] - 17:3, 23:14, 23:23
**trying** [5] - 10:10, 21:22, 25:10, 27:1, 38:14
**TUCKER** [1] - 2:13
**turn** [1] - 22:3
**two** [7] - 6:9, 7:1, 8:14, 9:7, 9:10, 22:25, 28:21

## U

**U.S** [2] - 1:25, 3:17
**U.S.C** [1] - 3:9
**ultimately** [1] - 11:14
**under** [5] - 8:16, 9:13, 10:19, 30:16, 30:24
**Union** [1] - 2:14
**UNITED** [2] - 1:1, 1:8
**United** [2] - 35:23, 44:5
**universe** [1] - 28:2
**unless** [2] - 11:24, 11:25
**up** [15] - 8:24, 9:4, 9:5, 13:18, 14:7, 14:22, 17:10, 17:20, 20:20, 23:14, 26:20, 28:8, 29:20, 39:21, 43:4
**usage** [1] - 25:18
**USDJ** [1] - 1:10
**Utah** [1] - 41:19

## V

**vacation** [4] - 39:13, 40:1, 41:17, 41:21
**valid** [3] - 8:3, 9:19, 10:11
**validly** [1] - 8:6
**van** [1] - 41:20
**variance** [1] - 14:25
**versus** [1] - 21:18
**VI** [1] - 30:21
**Vincent** [2] - 44:5, 44:23
**VINCENT** [2] - 1:24, 3:17
**VIRGINIA** [1] - 1:15

## W

**wait** [1] - 17:24
**waiting** [1] - 17:1
**Walgreens** [11] - 32:22, 32:23, 33:23, 34:21, 34:24, 35:15, 35:20, 36:1, 36:4, 36:13, 36:15
**wants** [2] - 36:19, 39:7
**WARREN** [1] - 1:18
**WASHINGTON** [2] - 2:7, 2:9
**waste** [2] - 36:20, 37:19
**wasting** [1] - 12:21
**Wayne** [1] - 42:16
**wayside** [1] - 5:5
**WEDINGER** [1] - 2:10
**week** [25] - 7:20, 9:24, 9:25, 39:6, 39:7, 39:8, 39:10, 39:14, 39:21, 40:6, 40:9, 40:22, 40:23, 41:5, 41:6, 41:9, 41:11, 42:3, 42:5, 42:6, 42:10, 42:14, 42:18
**weeks** [2] - 39:9, 40:1
**WILENTZ** [1] - 1:21
**willing** [1] - 7:12
**window** [1] - 37:9
**witness** [1] - 18:19
**witnesses** [12] - 6:4, 6:9, 6:14, 6:17, 6:22, 7:1, 7:3, 8:2, 8:14, 10:17, 10:18, 11:1
**WOLFSON** [79] - 1:10, 4:3, 4:15, 5:1, 5:8, 5:13, 6:2, 6:7, 7:11, 7:15, 9:12, 9:21, 10:4, 10:7, 11:3, 11:13, 12:16, 12:21, 12:25, 13:4, 13:12, 13:16, 14:5, 16:21, 19:3, 19:7, 20:7, 21:1, 21:16, 22:18, 24:4, 25:2, 25:10, 26:9, 27:8, 27:25, 28:17, 29:15, 29:20, 30:21, 31:21, 31:25, 32:4, 32:15, 32:20, 33:6, 33:8, 33:22, 35:12, 36:23, 37:5, 37:23, 38:5, 38:7, 38:13, 38:24, 39:6, 39:11, 39:18, 39:24, 40:2, 40:5, 40:8, 40:12, 40:14, 40:17, 41:2, 41:5, 41:10, 41:14, 41:21, 42:1, 42:6, 42:9, 42:13, 42:20, 42:23, 42:25, 43:9
**wondering** [1] - 41:1
**word** [1] - 27:20
**words** [1] - 25:19
**worried** [1] - 26:13
**worry** [1] - 38:7

## Y

**year** [2] - 8:19, 18:1
**years** [3] - 25:20, 28:21, 28:22
**yesterday** [1] - 22:8