# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2738 (FLW) (LHG) |

*THIS DOCUMENT RELATES TO ALL CASES*

## PLAINTIFFS' STEERING COMMITTEE'S OBJECTION TO MAY 23, 2018 CASE MANAGEMENT ORDER OF THE SPECIAL MASTER RELATING TO 30(b)(6) DEPOSITIONS

## I. INTRODUCTION

On May 23, 2018, Special Master Joel A. Pisano, U. S. D. J. (Ret.), filed on the docket of this case a letter to counsel (the "Special Master Letter") along with a "Case Management Order of the Special Master" (the "CMO") to address disputes related to Plaintiffs' Amended Notice of Rule 30(b)(6) depositions which Plaintiffs served on Defendants, and which Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively the "Johnson & Johnson Defendants") objected to in part. (*See* Exhibit 1, Special Master Letter and Exhibit 2, CMO, Dkt. No. 6212).[1] The Special Master Letter and CMO were entered in response to issues

---

[1] Although the Special Master Letter and CMO were filed as a single docket entry, for the Court's convenience, a copy of each has been attached hereto as Exhibits 1 and 2, respectively. In addition, attached hereto as Exhibit 3 is the May 23, 2018 supplemental letter opinion entered by the Special Master. (Dkt. No. 6218).

1

presented by the parties through letter briefing.[2]  Along with addressing certain issues to which the PSC has no objection, the Special Master Letter and CMO recommend that the Court deny the PSC's request to conduct 30(b)(6) depositions on the following disputed topics:

> Topic III(1)(d): The sampling of talc intended for use in Johnson & Johnson Talcum Powder Products – For talc samples that have been lost, discarded, or destroyed, the circumstances surrounding their loss, disposition, or destruction and by whom.
>
> Topic III(3): Location of samples including lost or destroyed samples – The location of any talc samples collected by you or other entities on your behalf that have been discarded or destroyed.  For talc samples that have been lost, discarded, or destroyed, the circumstances surrounding their loss, disposition, or destruction and by whom.
>
> Topic III(5): Location of other relevant talc samples – The location of any talc samples either from a source (e.g. the mine) which supplied talc for use in Johnson & Johnson talcum powder productions or from any point in the chain of production, other than as identified in Exhibits 1 and 2, even if those samples are not in your custody or control.[3]

In recommending that Plaintiffs be precluded from conducting 30(b)(6) depositions on the above-referenced topics, the Special Master opined that Plaintiffs were attempting to fashion a spoliation claim and that "[t]here is no basis to argue

---

[2]  Copies of the letter briefs are attached hereto as Exhibits 4 through 6 and include the PSC's May 11, 2018 letter brief (Exhibit 4), the Johnson & Johnson Defendants' May 18, 2018 opposition thereto (Exhibit 5), and the PSC's May 23, 2018 reply (Exhibit 6), respectively.

[3]  A copy of The Plaintiffs' Steering Committee's Amended Notice of the 30(b)(6) Deposition of Defendant Johnson & Johnson and The Plaintiffs' Steering Committee's Amended Notice of the 30(b)(6) Deposition of Defendant Johnson & Johnson Consumer Inc. are attached hereto as Exhibits 7 and 8, respectively. However, it is noted that the PSC will be serving their "Second Amended Notices" to conform to the rulings made by the Special Master and agreements the parties reached about the content of the Notices.

that because a quantity of talc is missing, were it available for testing it might reveal evidence of causation." *See* Exhibit 3 at pg. 1; *see also* Exhibit 1 at pg. 4 ("The fact that samples may have been lost or discarded does not lead to anything discoverable and is not relevant to general causation.").

The PSC objects to this proposed ruling. As will be outlined in more detail below, there is a factual basis for believing that relevant samples are missing. On May 30, 2018, a week *after* Judge Pisano's May 23rd Order, Imerys disclosed to the PSC that there are a significant number of samples that have not been made available to the PSC. The information received thus far, though limited and incomplete, makes clear that the number of new samples is significant (likely exceeding 100 samples), and at least 54 samples arise from 1964-2000, a significant time period in the litigation for which the PSC had not been previously been provided samples. *See* Exhibit 9, Letter from Mark Silver, Esq., May 30, 2018. Imerys represented that additional investigations to locate lost samples are ongoing.

Despite mounting evidence to the contrary, Defendants have maintained over more than four decades that talcum powder is safe and asbestos free—all the while waging a war against the science and crafting tests designed not to seek out the truth but to match their marketing. The identification of samples, including facts surrounding the loss, disposition, or destruction of samples is not only relevant, but critical to general causation.

As the Court has previously stated, Plaintiffs are entitled to pursue information related to "things being done and studies that were being done outside… and do not end up in the documents, but that may have revealed some information that someone learned about the science." *See* Exhibit 10, March 6, 2018 Status Conference Tr. at 20 and 22 ("[i]f there were other things in the science that are not appearing in documents, we want to know.").[4] It is not only what Defendants had and produced, but what was ignored or discarded that bear on the science. Significantly, just within this past week, Defendant Imerys located additional talc samples while reviewing and investigating information related to previously identified samples and acknowledged that certain other samples were discarded. *See* May 30, 2018 letter related to Imerys' talc samples, attached hereto as Exhibit 9. 30(b)(6) depositions provide an opportunity for Plaintiffs to flesh out relevant information related to science and general causation and casting Plaintiffs' 30(b)(6) topics as an effort to fashion a spoliation claim ignores the relevance of what was and was not available as Defendants attempted to shape the scientific landscape.

The discovery sought in Topics III(1)(d), III(3) and III(5) is not irrelevant to the issue of general causation and, contrary to what the Special Master assumed, is not designed to establish a theoretical claim for "spoliation." To illustrate this, the PSC provides the following concrete example that was neither available to the

---

[4] Excerpts of the March 6, 2018 Status Conference are attached hereto as Exhibit 10.

Special Master nor the PSC prior to the Special Master's May 23 order denying "lost and destroyed samples" discovery. This example illustrates why the Special Master's Order should be reversed and discovery on these Topics be permitted against both J&J and Imerys.

As the Court is aware, *Lanzo v. Johnson & Johnson, et al*. was recently tried to verdict in New Jersey Superior Court. *Lanzo* involved allegations that plaintiff developed mesothelioma after prolonged used of Defendants' Talcum Powder Products. In that trial, an Imerys corporate witness, Julie Pier, testified that certain samples of Grade 25 Talc (the same talc used in Defendants' Talcum Powder Products) from 2012-2014 were "lost." In follow up to the testimony proffered by Imerys' corporate witness, the PSC conducted additional research into documents that were produced by Imerys in February 2013. That research resulted in the discovery of a document identifying additional samples of Grade 66 Talc (also used in Defendants' Talcum Powder Products) from 1967-1987 that had not produced to the PSC, and may also have been "lost." In connection with the PSC's meet-and-confer with Imerys, the PSC requested that counsel promptly investigate this issue as the testing process in this MDL had already begun. *See* April 24, 2018 email from C. Tisi to L. Dotro, attached hereto as Exhibit 11. The parties conferred on this issue throughout May 2018 and the PSC followed up with additional requests and

additional information. *See* May 7, 2018 email from L. O'Dell to L. Dotro, et. al., attached hereto as Exhibit 12.

As noted above, the results of Imerys' investigation were disclosed to the PSC on May 30, 2018. *See* Exhibit 9, Letter from Mark Silver, Esq., May 30, 2018. That disclosure bears directly on the current appeal. Specifically, Imerys' May 30 letter revealed that Imerys had found previously undisclosed, relevant samples from 1964-2001 and 2012-2014, and that additional investigations to locate lost samples were ongoing. Importantly, Imerys agreed that the samples it had located were relevant to the current testing protocol in this MDL and offered to make these newly identified samples available for testing. This disclosure of previously "lost samples" which were subsequently "found" only after the PSC had followed up on corporate witness testimony includes:

- The "Lanzo trial box" of Windsor Grade 66 from 1964-1987 [*Id*. at p. 2]
- 20 additional samples of Grade 25 talc from 2012-2014. [*Id*.]
- 4 boxes of containing samples of various grades of talc from the Vermont Mine (which provided Talc for J&J but which require additional investigation) from 1998-2001. [*Id*.]
- Additional samples of non-floated talc and TEM grids that had not been produced which are currently under investigation by Imerys. [*Id*. at p. 3]

Imerys' May 30 letter is but one example as to why the Special Master's findings related to lost and destroyed samples is in error. Specifically, the above example illustrates the need to flesh out facts regarding lost and discarded samples

6

so that experts' opinions are founded on all available evidence, not simply that which Defendants have chosen to deem relevant. The PSC's 30(b)(6) requests are tethered <u>directly</u> to the issue of general causation as this Court has defined it.

The PSC's goal in pursuing testimony on these topics is to develop evidence about causation, including a showing that the existing science and writings on the issue of causation may have been the product of influence or bias that occurred because the public was deprived of relevant and important information that would have altered or changed the scientific writings, were other and additional information to be available in the public domain.

## II.  ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 53 sets forth the standard this Court must apply when reviewing a report and recommendation of a Special Master. *See*, *e.g.*, Fed. R. Civ. P. 53(f)(3)-(5). With respect to the Special Master's decisions, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). Rule 53(f) further provides that "[t]he court must decide *de novo* all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). Similarly, all objections to the master's findings of fact, unless the parties stipulate otherwise, are reviewed *de novo*. *See* Fed. R. Civ. P. 53(f)(3). *See also Wachtel v. Guardian Life Ins. Cos.*, 2006 WL

1320031, at *3 (D.N.J. May 12, 2006). "The Special Master's rulings on procedural matters are reviewed under the abuse of discretion standard." Fed. R. Civ. P. 53(f)(5).

There should be no dispute that the Special Master's recommendation as well as the findings of fact and conclusions of law upon which the recommendation is based should be reviewed *de novo.* The Court has previously stated that "a procedural matter pertains to the decisions that are made by a Special Master that involve the manner in which the Master conducted the proceedings." *See* Exhibit 10, March 6, 2018 Status Conference Tr. at pg. 7. "So that also going forward we know where we are, and essentially everything is de novo unless it is a very limited category." *Id.* at 8.

### B. The Identification Of Samples, Including Facts Surrounding Loss, Disposition, Or Destruction Of Samples, Is Relevant To Science And Causation

The PSC objects to the Special Master's finding that Plaintiffs are not entitled to conduct a Rule 30(b)(6) deposition of the Johnson & Johnson Defendants on topics related to lost or missing samples. The absence of samples is relevant and may have an impact on science and causation. As has previously been stated, science and causation can be influenced as much by what is no longer available as it may be by available evidence that was skewed, or the product of some bias or influence. The fact that testimony sought by Plaintiffs can form the basis for a spoliation claim

in support of liability arguments does not detract from the relevance that the same missing samples may have had on the development of scientific findings and opinions. Contrary to the Special Master's holding, if samples were never made available for testing and analysis because they were lost or destroyed, contemporaneous testing and analysis involving pools of samples may be skewed which, in turn, could impact scientific determinations about causation.

The Court has stated on numerous occasions and been quite clear that the scope of the 30(b)(6) depositions are "broad." *See* Exhibit 13, February 7, 2018 Status Conference Tr. at 11 ("the areas that he has said that [Defendants] have to be prepared to testify about are broad… I'll put that right on the record."); *id.* at 16 ("these are very broad topics and, frankly, Judge Pisano really gave you everything you wanted… because it is very broad."). Further, the Court has recognized that information that may have been lost, discarded, or destroyed may be relevant to the issues of science and causation, stating that such evidence "could also reveal if someone was aware of something else in the science that doesn't make it into a document." *See* Exhibit 10, March 6, 2018 Status Conference Tr. at 18. Without 30(b)(6) testimony on the issue, Plaintiffs' ability to lay the evidentiary foundation for arguments that causation findings may have been influenced by Defendants will be hindered.

Despite the Court's prior directives, Defendants continue to attempt to pigeon-hole the PSC and its experts into expressing opinions based simply on published scientific articles, without regard to whether the articles may be the subject of bias or influence by industry or Defendants. Access to underlying information that Defendants possess, that may have never seen the light of day for scientists to evaluate, is necessary and important for the PSC's experts to evaluate.

### III. CONCLUSION

For the foregoing reasons, the PSC objects to the finding of the Special Master related to talc samples and entry of the proposed CMO.

Date: June 6, 2018                                Respectfully Submitted,

*s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone: 703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, PC
218 Commerce Street
Montgomery, AL 36104
Telephone: 334-269-2343
Email: leigh.odell@beasleyallen.com

***Plaintiffs' Co-Lead Counsel***

          *s/ Christopher M. Placitella*
          Christopher M. Placitella
          COHEN PLACITELLA ROTH, PC
          127 Maple Avenue
          Red Bank, NJ 07701
          Telephone 888-219-3599
          Facsimile: 215-567-6019
          Email: cplacitella@cprlaw.com

          *Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Dated:  June 6, 2018                              *s/ Michelle A. Parfitt*

                                                        Michelle A. Parfitt