# EXHIBIT 5

**DrinkerBiddle&Reath**
LLP

*Law Offices*
600 Campus Drive
Florham Park, NJ
07932-1047

(973) 549-7000
(973) 360-9831 fax
www.drinkerbiddle.com

*A Delaware Limited
Liability Partnership*

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
TEXAS
WASHINGTON D.C.

*Andrew B. Joseph
Partner responsible for
Florham Park Office*

*Established* 1849

Susan M. Sharko
973-549-7350
susan.sharko@dbr.com

May 18, 2018

**Via Electronic Mail**

Honorable Joel A. Pisano, U.S.D.J. (Ret.)
Walsh Pizzi O'Reilly Falanga, LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ  07102

Re:  *In re Johnson & Johnson Talcum Powder,* MDL NO. 16-2738 (FLW) (LHG)
       Amended Notices of 30(b)(6) Depositions of JJCI and J&J

Dear Judge Pisano:

I write on behalf of Johnson & Johnson ("J&J") and Johnson & Johnson Consumer, Inc. ("JJCI") (collectively, "Defendants") in response to the Plaintiffs' Steering Committee's ("PSC") May 11 letter regarding its Amended Notices of 30(b)(6) Depositions directed to Defendants.

The 30(b)(6) deposition process has grown from a few discrete topics discussed at the last hearing before Your Honor to a detailed notice with 86 individual topics.  The Defendants decline to offer a witness in response to only *four* topics contained within the Amended Notices:  Topics III.1(d), III.3, III.5 and IV.16.  As explained more fully below, these Topics have nothing to do with the issue presently before the Court, namely whether the Plaintiffs have scientifically sound evidence to support their claims.  Defendants feel confident that, particularly with your Honor's assistance, any remaining disagreements can be quickly resolved and the noticed depositions can commence in short order.

Defendants' responses to the PSC's various arguments and lingering concerns are set forth below, in the order that they were raised by the PSC.

DrinkerBiddle&Reath
L L P

Honorable Joel A. Pisano, U.S.D.J. (Ret.)
May 18, 2018
Page 2

## THE PARTIES' REMAINING DISPUTES

**1. The Defendants' Assertion of Objections, Including General Objections:** The PSC makes much of Defendants' decision to serve objections in response to the Amended Notices, rather than initially "conferring with the PSC on issues concerning the Amended Notices… ." PSC Letter at 2. Of course, it was the PSC who suggested that, instead of starting with meet and confer on the Amended Notices (as your Honor had suggested), Defendants should instead serve objections. Exhibit 1, Transcript of 3/6/18 CMC, at 45:18-24 ("My only comment would be that if defendants were on the verge of sending us their redlines as to what we have already done, the simplest thing may be to get their redlines. We can make edits, incorporating what was discussed today, and send it back to them. That seems to be the most productive way to do things.") In response, Defendants proceeded as requested, serving their objections before the parties undertook formal meet and confer.

The real crux of the PSC's complaint as to the objections appears to be the fact that Defendants included general objections covering each of the Topics set forth in the Amended Notices, as opposed to merely asserting specific objections to certain individual Topics. The PSC's assertion that Defendants have been unclear with respect to their intentions as to the general objections, or taken a position that is somehow different than their co-defendants, is simply misplaced. As an initial matter, and as the PSC knows, asserting general objections is a standard practice in litigation, designed to preserve certain issues for the record, among other purposes. As such, the PSC's claimed confusion about the use and implication of general objections in this particular instance appears a bit far-fetched.

More importantly, during both oral meet and confer, and then again in their recent meet and confer letter, Defendants have stated unequivocally that they "have agreed to and shall produce one or more witnesses as to each of the Topics in the Notice," with the exception of "just a few topics where we object to producing a witness at all: Topics III.1(d), 3 and 5, and IV.16." PSC Letter, Exhibit B, at 2. Stated another way, Defendants are producing a witness, over their general objections, on all but four topics.

There should be no continued confusion on this issue.

And there is no point in wrestling to the ground such things as the Plaintiffs' definitions which are overbroad to the point of being silly – see for example "asbestos" and

DrinkerBiddle&Reath
L L P

Honorable Joel A. Pisano, U.S.D.J. (Ret.)
May 18, 2018
Page 3

"employee" or the standard objections which necessarily implicate specific questions, see for example "privilege".

**2. A Separate Witness for Johnson & Johnson:** In candor, as with the general objections, the PSC's continued focus on the issue of whether or not Defendant J&J will produce a separate witness for deposition is much ado about nothing. As Defendants have made clear on numerous occasions, while it is correct that J&J has "different employees, agents, and officers than [JJCI]," PSC Letter at 4, the Notices at issue are 30(b)(6) notices, not notices for individual fact witnesses. A party responding to such a notice may designate one of its employees, officers, or agents, but it is also free to designate "other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). The witnesses who can and will testify on behalf of J&J for purposes of 30(b)(6) discovery are one and the same as the witnesses who can and will testify on behalf of JJCI. Accordingly, Defendants will produce those witnesses one time, and any testimony given will be binding on both companies. PSC Letter, Exhibit B, at 2.

**3. Topic I.1:** Based on the PSC's May 11 letter, it is unclear whether the parties ever truly had a dispute as to this topic. As part of their specific objections to Topic I.1, Defendants objected to providing testimony regarding their "relationship" with any company which manufactured or bottled talcum powder products or designed labels during the relevant period. Exhibit 2, Objections, at 3-4. In their recent meet and confer letter, Defendants again clarified that the basis for their objection as to Topic I.1 was the use of the term "relationship", and how that term may relate to any number of third parties over the span of several decades. PSC Letter, Exhibit B, at 2. However, to avoid any confusion regarding their intention to provide evidence relevant to (1) each iteration of the JBP and STS talcum powder sold in the U.S. during the relevant period and (2) which J&J corporate entity was responsible for such products over time, Defendants also offered to produce a chart cataloguing such information in a simple and stipulated format. *Id.*

In its May 11 letter, the PSC rejects Defendants' offer to produce a chart, and further seems to complain either that Defendants do not intend to provide testimony sufficient to identify which J&J corporate entity was responsible for the manufacturing of JBP and/or STS in any given year, or that Defendants do not intend to provide testimony sufficient to differentiate whether the formulas for JBP and/or STS talcum powder sold in the U.S. changed over time. Neither assertion is correct, nor have Defendants ever taken either position in any meet and confer or other correspondence with the PSC.

DrinkerBiddle&Reath
L L P

Honorable Joel A. Pisano, U.S.D.J. (Ret.)
May 18, 2018
Page 4

Accordingly, Defendants presume this issue is now resolved.

**4. Topic I.2:** There is no dispute as to Topic I.2. As the PSC admits, Defendants have never asserted a specific objection to Topic I.2, have never refused to produce a witness in response to this topic, and do not intend to do so now. Instead, as they have from the inception of the meet and confer process, Defendants agree to present a witness who will speak to the "formulas and composition of J&J's talcum powder products" during the relevant period. They simply note that such information is confidential and subject to the parties' confidentiality order.

**5. Topics I.3, I.4, I.5, II.4, II.5:** Because the PSC's letter states that there either never was, or, at the very least, no longer is any dispute as to these topics, PSC Letter at 6-7, Defendants will not respond further to any of these topics here.

**6. Topics III.1(d), 3 and 5:** There is a fundamental disagreement between the parties as to the relevance and appropriateness of these topics, and Defendants welcome your Honor's assistance resolving this dispute. Through each of these topics, the PSC seeks to depose one or more witnesses about talc samples which the PSC is fully aware no longer exist. Defendants cannot and do not dispute this basic fact. It is on the question of what flows from that fact where the parties diverge.

Samples that no longer exist cannot be tested by either side, and by extension, cannot serve as a basis for either party to advance or defend against the various medical and/or scientific theories underlying these cases. Put another way, questioning a witness on the chain of custody and related issues surrounding talc samples that no longer exist will not move either side any closer to a *Daubert* hearing on the central causation issues in these cases, the driving purpose behind conducting these 30(b)(6) depositions. As such, the topics are not relevant or probative at this time.

**7. Topic III.2.** Note that, contrary to the PSC's letter, Defendants have never lodged a specific objection to Topic III.2 or refused to present a witness on this topic. They did not do so in their May 10 meet and confer letter, and do not do so now. Accordingly, Defendants assume that the PSC's reference to Topic III.2 was simply in error and will not respond further to that topic here.

**8. Topic IV.9:** Topic IV.9 has not previously been the subject of meet and confer efforts between the parties, though Defendants are eager to resolve any new or outstanding

DrinkerBiddle&Reath
L L P

Honorable Joel A. Pisano, U.S.D.J. (Ret.)
May 18, 2018
Page 5

dispute on this topic. It must be noted, however, that the PSC's letter has reframed both its inquiry via this topic, and the Defendants' objection thereto.

To be clear, Defendants do not object to providing witness testimony on the purity or testing of talc that was sourced from foreign mines, incorporated in to JBP and/or STS, and sold in the U.S. Nor do Defendants object to communications with various U.S. bodies about any foreign talc incorporated in to JBP and/or STS and sold in the U.S. Defendants object solely to providing deposition testimony concerning their communications, if any, with foreign regulatory bodies about the use and sale of talc abroad. Such matters are well outside the scope of this litigation, let alone the underlying and fundamental purpose of this 30(b)(6) deposition.

**9. Topic IV.10:** Defendants have reviewed the list of studies provided by the PSC as Exhibit C to their letter, and are amendable to presenting a witness to testify as to the listed studies. Accordingly, this topic should now be resolved.

**10. Topic IV.13:** Defendants have never lodged a specific objection to Topic IV.13 or refused to present a witness on this topic, and do not do so now. As with Topic III.2, it appears that PSC's reference to Topic IV.13 was in error and Defendants will not respond further to that topic here.

**11. Topic IV.16:** Topic IV.16 is the fourth and final topic for which Defendants have refused to offer a deponent. Contrary to the PSC's suggestion, Judge Wolfson's ruling that "documents relating to the safety of talcum powder products and ovarian risk" are discoverable, does not support the PSC's position that testimony on Topic IV.16 is warranted. Defendants have produced to Plaintiffs all J&J Board and Committee materials which reference health and safety issues in connection with talc (including in connection with JBP and/or STS). The small volume and nature of these documents contradict the PSC's assertion that the J&J Board of Directors "set" policy and strategies regarding talc safety issues. Witness testimony on these very same materials is unnecessary cumulative.

As previously noted, the central purpose of these 30(b)(6) depositions is to provide sufficient additional discovery on science related issues such that the parties can engage in *Daubert* hearings. Topic IV.16 does nothing to advance that cause, and as such, Defendants believe it is irrelevant, burdensome and harassing to proceed on it at this time.

**Drinker Biddle & Reath**
LLP

Honorable Joel A. Pisano, U.S.D.J. (Ret.)
May 18, 2018
Page 6

**12. Scheduling Depositions.** In yet another effort to push forward with the litigation, the Defendants offered the week of May 28 for depositions. Plaintiffs rejected that because Monday of that week is Memorial Day. Plaintiffs then asked for June dates, with the specific topics attached to each date. Defendants complied. Plaintiffs appear to have rejected these dates. The Defendants stand ready to proceed with depositions in the month of June, and are eager to do so. There is no reason to continue to push back or delay in scheduling.

Thank you for your consideration of these matters.

Respectfully,

Susan M. Sharko

cc: Honorable Freda L. Wolfson, U.S.D.J.
  Honorable Lois H. Goodman, U.S.M.J.
  Leigh O'Dell, Esq.
  Michelle Parfitt, Esq.
  Christopher V Tisi, Esq.