# EXHIBIT 10

```
                                                                    1
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
                    CIVIL ACTION NO 16-MD-2738(FLW)(LHG)


 BBBBBBBBBBBBBBBBBBBBBBBBBB   :
 IN RE JOHNSON & JOHNSON      : 75A16&5,37 2)
 POWDER PRODUCTS MARKETING,   : 67A786 &21)(5(1&(
 SALES PRACTICES.             : 0A5&H 6, 2018
 --------------------------   :




CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608


B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ


A P P E A R A N C E S:

BEASLEY ALLEN, ESQUIRES
BY:  P. LEIGH O'DELL, ESQUIRE (ALABAMA)
       -and-
ASHCRAFT & GEREL, ESQUIRES
BY:  MICHELLE A. PARFITT, ESQUIRE (VIRGINIA)
     CHRIS TISI, ESQUIRE  (VIRGINIA)
        -anG-
WILENTZ, ESQUIRES
BY:  DANIEL R. LAPINSKI, ESQUIRES
On Behalf of the Plaintiffs Steering Committee


DRINKER, BIDDLE & REATH, ESQUIRES
BY:  SUSAN M. SHARKO, ESQUIRE
     JULIE L. TERSIGNI, ESQUIRE
        -anG-
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, ESQUIRES
BY:  JOHN H. BEISNER, ESQUIRE  (WASHINGTON, D.C.)
On behalf of Defendant Johnson & Johnson




                       * * * * *
           VINCENT RUSSONIELLO, RPR, CRR, CCR
              OFFICIAL U.S. COURT REPORTER
                     (609) 588-9516
```

7

1          JUDGE WOLFSON:  I disagree.  I think that
2     those are not procedural rulings.  I've done some
3     research, or at least my chambers has done some
4     research, and what has been defined by some of the
5     case law is what is a procedural matter pertains to
6     the decisions that are made by a Special Master that
7     involve the manner in which the Master conducted the
8     proceedings.
9          For example, in deciding the format in which
10    you'll hear the arguments or the issues determining
11    how to do so, whether it's written submissions, what
12    the timing for them is, whether there is argument and
13    things of that nature, we've got some cites for you.
14         One of them one is the Vioxx cite from the
15    Fifth Circuit.  We have some other cites.  One of them
16    you might like because while it's older, Net23honH,
17    ,nc.  Y. HBay, ,nc., 2008 U.S. Dist. Lexis decision
18    50451, it was by a Magistrate Judge, but that
19    Magistrate Judge was Judge Schwartz who now sits in
20    the Third Circuit.
21         I figured you might like to know that was one
22    of her decisions, finding that the Special Master's
23    rulings, for instance, on procedural matters involve
24    deadlines, for example, for the presentation of
25    submissions and evidence.  Otherwise, if you found

8

1   that these were procedural, it swallows what a Special
2   Master does because what a Special Master does is rule
3   on discovery issues.
4           So it's going to be a de novo standard.  I
5   want to make that clear today.  There are some other
6   cases I could cite to you.  I have a number of others.
7   So that also going forward we know where we are, and
8   essentially everything is de novo unless it is a very
9   limited category, as I said.  For instance, if you
10  said, No, you got to have something to me by tomorrow,
11  and you want to appeal that, that's an abuse of
12  discretion standard.
13          So with that let me proceed to where we are.
14          As I really see this, what we are breaking
15  this down into is, there were four categories that
16  were identified before Judge Pisano, and I've read the
17  transcript of the hearing before him and it was quite
18  clear.  He asked, What are the areas, and plaintiffs
19  identified four.  I don't think you can dispute that,
20  except that now where you are is that you think you
21  have identified more that you require.
22          That's fair, right, that that is your
23  position?
24          MS. PARFITT:  That's correct.
25          MR. LAPINSKI:  Yes, your Honor.  Our position

1   experts will have to address based on their knowledge,
2   training and experience, and the scientific
3   literature, not based on internal emails.
4           JUDGE WOLFSON:  Not emails because you've
5   already got the documents.  She's got them assuming
6   you've produced everything that there is.
7           What she is suggesting instead is that there
8   could have been background discussions about what
9   found its way in that could have been about some other
10  things being done in the company that don't make its
11  way into documents and wants to know if that exists.
12  It may not.  That's all they want is somebody who
13  could talk about:  Is there more out there that is not
14  in the documents on this topic?
15          MS. SHARKO:  So beyond what falls under bias
16  and influence because I get that and they sent us a
17  more detailed statement of the topics and we'll get
18  back to them and I would hope that will resolve that.
19  If the question is:  What else is there out there?
20  What were people talking about in the company?  A, I
21  don't think that's relevant to the general causation
22  issues for the reasons I just argued, but --
23          JUDGE WOLFSON:  Not so much:  What are they
24  talking about?  But the question is:  Was there
25  anything else being done in the company?  Because I've

20

1  science, whether in fact there were things being done
2  or studies being done outside that never make its way
3  to a full blown study and do not end up in documents,
4  but that may have revealed some information that
5  someone learned about the science, the science.
6          MS. SHARKO:  So what testing was done I
7  believe falls within one of Judge Pisano's categories
8  and they now have a subcategory on that in their
9  30(b)(6) notice and I understand that topic.  I'm not
10 disputing that topic.
11         THE COURT:  Okay.
12         MS. SHARKO:  What concerns me and it sounds
13 like maybe this is not implied is:  What over the
14 years did people think about or wonder whether it
15 should be done or it shouldn't be done?
16         I don't know how you have a 30(b)(6)
17 deposition on what people thought about for the last
18 however many years, 40 years, 30 years, but what
19 testing that was done.  Yes, I think that's within
20 that, within the notices.  Was there -- quote, unquote
21 -- bias or influence?  Did people look at drafts?  Did
22 people fund studies?  Yes, that's within the
23 categories that --
24         JUDGE WOLFSON:  Did people have discussions on
25 the phone with others?  Discussions are important.

22

1  is defendants' statements about the biological
2  plausibility of migration or something like that.
3           JUDGE WOLFSON:  That was the topic right now.
4  But when we were talking also about bias and other
5  things, it all falls within there.
6           What I'm trying to say is, why this is a
7  little bit broader than you think it.  The documents
8  alone don't do it.  There is an obligation to see if
9  there were communications.  It does go to bias perhaps
10 and it also could reveal if someone was aware of
11 something else in the science that doesn't make its
12 way to a document.
13          Now, I've said many times, I'm not concerned
14 about people's opinions on these things. Every expert
15 is going to have to come up with their own view based
16 on what existed.  But if there were other things in
17 the science that are not appearing in the documents,
18 we want to know.
19          MS. SHARKO:  So I would suggest that
20 Ms. Parfitt and her team write that out so we have a
21 clear statement.  As your Honor said at the last
22 conference, you were right, I think that notice is
23 helpful and then we can go from there.
24          JUDGE WOLFSON:  I don't know if it's a really
25 new topic.  It may be encompassed in the others, but