**Exhibit A**

<u>**Count XIV (Continuation)**</u>
<u>**Violation of State Consumer Protection Laws of the State of Illinois**</u>
<u>**(Against the Johnson & Johnson Defendants)**</u>
<u>***(Incorporating Additional Specific Facts/Allegations)***</u>

1.      As suppliers, manufacturers, advertisers, and sellers, involved with trade and commerce of their products in the State of Illinois, Defendants are subject to liability under the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq., for unfair, deceptive, fraudulent and unconscionable consumer marketing and sales practices.

2.      At all pertinent times, and based on all previous facts and allegations herein, Defendants engaged in unfair or deceptive acts or practices in violation of Illinois law, including but not limited to the use or employment of deception fraud, false pretense, misrepresentation and/or the concealment, suppression or omission of material fact(s) in its conduct with respect to trade or commerce involving the Products, as set forth herein and including because the products were marketed, advertised and represented to be "safe", the "world's finest powder", that they could be used for feminine hygiene purposes (perineal use), in order to mask odors, etc., as well as because Defendants concealed, suppressed, and/or omitted material facts and scientific evidence that showed increased association, risks, hazards, and

dangers of ovarian cancer when purchased for and used by women in this manner. 815 ILCS 505/2.

3. Further, and specifically, at all pertinent times Defendants used or employed the following unlawful practice(s), and engaged in unfair methods of competition and deceptive acts or practices that were proscribed by law, 815 ILCS 505/2 (incorporating the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2) by the following:

   a. Defendant J&J Consumer passed off goods (Johnson's® Baby Powder or the Products) as those of J&J, as concerned the design, manufacture, and/or sale;

   b. Defendant J&J passed off goods (Johnson's® Baby Powder or the Products), including on the bottles, as those of J&J Consumer, as concerned the design, manufacture, and/or sale;

   c. Defendants J&J and/or J&J Consumer caused a likelihood of confusion and/ or of misunderstanding as to the source, sponsorship, approval, or certification (trademark registration) of the goods (Johnson's® Baby Powder or the Products), including on the bottles;

   d. Defendant J&J caused a likelihood of confusion and/or of misunderstanding as to affiliation, connection or association with, or

2

certification (trademark registration) with Defendant J&J Consumer, including on the bottles;

e. Defendant J&J Consumer caused a likelihood of confusion and/or of misunderstanding as to affiliation, connection or association with, or certification (trademark registration) with Defendant J&J, including on the bottles;

f. Defendants represented that goods (the Products) had sponsorship, approval, characteristics, uses, and/or benefits that they did not have, including on the bottles and/or advertisements;

g. Defendant J&J represented that the goods (Johnson's® Baby Powder or the Products) were of a particular standard, quality or grade when they were of another, including on advertisements;

h. Defendants advertised the goods (the Products) with the intent not to sell them as advertised; and

i. Defendants engaged in fraudulent or deceptive conduct that created a likelihood of confusion or misunderstanding.

4. Defendants' intentional, deceptive, unconscionable, and fraudulent representations and material omissions to Plaintiff were also made to other Illinois consumers and health care providers, and constituted unfair and deceptive acts and trade practices in violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act as would be construed based on interpretations of the Federal Trade Commission (FTC) and federal courts relating to the Federal Trade Commission Act (FTCA), 815 ILCS 505/2, because they: were unfair and materially misleading to reasonable consumers, likely to cause substantial injury to consumers, consumers could not reasonably avoid the injury due to the material omissions about talc, there was no countervailing benefit to consumers by having talc instead of cornstarch in the products, and for public policy reasons.

5.  Upon commencement of this action, Plaintiff's counsel mailed a copy of this Original Complaint to the Attorney General of Illinois in conformity with 815 ILCS 505/10(d).

### Count XXIV
### Illinois - Direct Participant Liability
### (Against the Johnson & Johnson Defendants)

6.  Plaintiff incorporates by reference each of the preceding paragraphs and subparts as if fully set forth herein set forth herein.

7.  At all material times, Defendant J&J directed the manner in which the activities of marketing, labeling and/or selling of talc-containing Johnson's® Baby Powder, and Shower to Shower prior to September or October of 2012, occurred, and the consequential injury to females (ovarian cancer) was foreseeable to Defendant J&J.

4

8. The marketing, labeling, and/or selling of the talc Products at all such times was unlawful under 815 ILCS 505/1, *et seq.*, as previously set forth in this Complaint.

9. To the extent that any of the unlawful marketing, labeling, and/or selling of the talc Products during any of these material times occurred or was carried out by the actions/omissions of Defendant J&J Consumer, or any predecessor(s) in interest that subsequently merged into it who were also wholly-owned subsidiaries of Defendant J&J prior to such merger(s), Defendant J&J is still responsible for its own direct participation in such unlawful activities.

10. Upon information, following the incorporation of Defendant Johnson & Johnson Consumer Companies, Inc. in 1967, Defendant J&J continued to directly participate in the unlawful marketing, labeling, and selling of talc-containing baby powder during all materials times above despite any claim by J&J that its subsidiary/ies were the actual marketer(s), labeler(s), or seller(s) of these products during such times, or claim by J&J that there was decentralized management or operations by J&J during such times in terms of marketing, labeling, or selling of the talcum powder products.

11. Specifically, Defendant J&J continued during all material times above to directly participate in the strategy, method and manner of the marketing, labeling, and selling of the talc Products, including the determination and manner of express

5

and implied warranties that were made and breached, and the material misrepresentations of omission and commission, in association therewith. Neither J&J consumer or any of the other wholly-owned subsidiaries was autonomous or decentralized in its management or operations as concerned the talc Products marketing, labeling, or sale during such times. Instead, Defendant J&J exercised specific control over the marketing, labeling, and selling of the talcum powder and Products which caused the Plaintiff's ovarian cancer, injuries and damages.

    12.    Upon information, during such material times, according to:

    a.    various SEC filings of J&J, "[t]he Executive Committee of Johnson & Johnson is the principal management group responsible for the operations and allocation of the resources of the Company. This Committee oversees and coordinates the activities of the Consumer, Pharmaceutical and Medical Devices and Diagnostics business segments";

    b.    various SEC filings of J&J, "[a] primary objective of the Company is to achieve superior levels of capital efficient profitable growth. To accomplish this, the Company's management operates the business consistent with certain strategic principles that have proven successful over time";

6

c. Articles of Incorporation of J&J, J&J had the power through its Board of Directors to provide for the issuance by any of subsidiary company of (1) capital stocks or bonds or other obligations convertible, at the option of . . . the Corporation [J&J] into shares of any class or classes or of any series of any class or classes of capital stock of the Corporation [J&J] or (ii) of any other right or option to acquire such shares";

d. Articles of Incorporation of J&J, J&J had the power through affirmative majority stockholder vote, or "to approve Business Combinations" including "any merger . . of . . . any subsidiary" if "approved by a majority of the Continuing Directors" [Board of Directors of J&J];

e. New Jersey law, J&J would, in certain circumstances, not even need an affirmative majority stockholder vote for merger approval involving wholly-owned subsidiaries that did not involve a change in number of stockholder shares, NJ Rev. Stat. § 14A:10-3(4);

f. a Plan of Merger effective July 27, 1981, J&J wholly-owned subsidiaries Johnson & Johnson Baby Products Company and Personal Products Company merged whereby the surviving entity was Johnson

7

& Johnson Baby Products Company albeit the surviving entity changed its name to "Personal Products Company";

g.   J&J's former website, J&J consolidated in 1989 its "consumer businesses, with the exception of sanitary protection products to form Johnson & Johnson Consumer Products, Inc.";

h.   to news reporting in 1989, this consolidation included "J&J Baby Products" and was accomplished to have a "leaner management hierarchy"; J&J's Chairman stated that this "restructuring" was "an effort to reduce duplication of promotion and reach a single customer base.  As J&J's separate consumer businesses have expanded, Larsen said, the company has experienced 'considerable duplication and overlapping services, including management functions.'";

i.   public filings, Johnson & Johnson Consumer Products, Inc. merged in Septmber of 2013 into Johnson & Johnson Consumer Companies, Inc., which subsequently merged into Johnson & Johnson Consumer Inc.; and,

j.   various documents, J&J has during the times in question, had various of J&J or its wholly-owned subsidiaries executives and officers also become or continue as executives and officers of J&J or other of its wholly-owned subsidiaries.

13. Upon such and other information, Defendant Johnson & Johnson mandated an overall business and budgetary strategy, and carried out that strategy by specific direction or authorization beyond the control exercised as a normal incident of ownership of its subsidiaries, with respect to the marketing, labeling and sale of the Products, including through its registered trademarks.

14. Such actions by Defendant J&J were also contrary to the ultimate interests of Defendant J&J Consumer or other of its wholly-owned subsidiaries involved in such marketing, labeling and sale of the Products, considering the foreseeability of their hazard and dangers associated with the purchases and uses of the same as well as the attendant legal exposure as a consequence.

15. As a direct and proximate result of the foregoing actions and/or omissions of Defendant J&J, Plaintiff suffered the injuries herein and sustained the following damages:

    a. Economic losses in the past and that will be sustained with reasonable certainty in the future, including medical/health care, therapy and expenses as well lost earnings and lost future earning capacity and benefits; and,

    b. Noneconomic losses in the past and that will be sustained with reasonable certainty in the future not due to bodily injury, including

mental pain and suffering, emotional distress, inconvenience, loss of a normal life, and loss of enjoyment and quality of life.

Wherefore, Plaintiff requests a judgment against the Defendants, jointly and severally for actual damages in the form of ascertainable monetary losses, as well as treble damages for the same, together with interest, costs of suit, attorneys' fees, and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.