## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                            )
IN RE: JOHNSON & JOHNSON                )
TALCUM POWDER PRODUCTS           )
MARKETING, SALES PRACTICES AND )        MDL Docket No. 2738
PRODUCTS LIABILITY LITIGATION    )
_____ )
                                                            )
This Document Relates To All Cases         )
_____ )

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.' S RESPONSE TO PLAINTIFFS' STEERING COMMITTEES' OBJECTION TO MAY 23, 2018 CASE MANAGEMENT ORDER OF THE SPECIAL MASTER RELATING TO 30(B)(6) DEPOSITIONS**

DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
(713) 227-8008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000
*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. ("JJCI") (collectively, "the J&J defendants") respectfully submit this opposition to Plaintiffs' Steering Committees' Objection To May 23, 2018 Case Management Order Of The Special Master Relating To 30(B)(6) Depositions.

Plaintiffs have asked the Court to overrule Special Master Pisano's ruling prohibiting plaintiffs from taking highly burdensome and time-consuming 30(b)(6) depositions on the entirely irrelevant issue of product sample retention. The Special Master's ruling was correct and should not be overturned.

As the Special Master explained in his May 23, 2018 order, plaintiffs have within their possession sufficient samples of the talcum powder products to conduct "exhaustive testing" in support of their claims. (*See* May 23, 2018 Suppl. Letter Order from Special Master Joel A. Pisano ("Suppl. Special Master Order") at 1 (attached to Pls.' Obj. as Ex. 3).) In fact, defendants (and JJCI's third-party manufacturer) have made available more than 1,000 samples for plaintiffs to test, from which they selected 75. Accordingly, any deposition about sample retention could not have any possible bearing on the merits of this litigation.

Nowhere in plaintiffs' objection to the Special Master's ruling do they contend that they lack sufficient product samples to adequately complete such testing. Nor could they, particularly since they have not even sought to test all the samples that *are* available. Instead, as the Special Master has implicitly

1

recognized, plaintiffs are trying to create a sideshow by suggesting that the J&J defendants somehow engaged in wrongdoing by not retaining samples from every batch of talcum powder ever manufactured. Such an allegation is preposterous. As the Special Master recognized, "[t]o permit argument about samples that have been lost or discarded will introduce speculation to a factual background that is already complex and presents a daunting challenge to the litigants as they go through the testing protocol on samples that have been preserved." (May 23, 2018 Letter Order from Special Master Joel A. Pisano ("Special Master Order") at 4 (attached to Pls.' Obj. at Ex. 1).)

In short, the Special Master correctly held that 30(b)(6) depositions regarding all product samples in existence over the course of a century would be a burdensome and improper diversion. This Court should affirm that sound conclusion.

## BACKGROUND

Special Master Pisano issued an order on February 6, 2018 permitting plaintiffs to take one Rule 30(b)(6) deposition per defendant on four specified topics: "(1) composition of the Products; (2) testing of the Products by Defendants; (3) sampling of the Products by Defendants; and (4) any influence or bias in the published literature caused by Defendants." (Feb. 6, 2018 Special Master Order at 3 (Dkt. No. 4173).) When plaintiffs issued their deposition notice, however, the

topics set forth went beyond what was contemplated by the Special Master. The J&J defendants objected to the notice, and while the parties were able to resolve some of their issues through the meet and confer process, the Special Master was ultimately called upon to weigh in on several aspects of the deposition discovery sought. (*See id*. at 3-4.) Among other things, the Special Master addressed the J&J defendants' objections to Topics III.1(d), 3 and 5 of plaintiffs' 30(b)(6) deposition notice, all of which pertain to the retention of samples of talcum powder products. (*Id*. at 3.) Specifically, plaintiffs sought to depose at least one corporate witness about:

- "The sampling of talc intended for use in Johnson & Johnson Talcum Powder Products – For talc samples that have been lost, discarded, or destroyed, the circumstances surrounding their loss, disposition, or destruction and by whom[;]"

- "Location of samples including lost or destroyed samples – The location of any talc samples collected by you or other entities on your behalf that have been discarded or destroyed. For talc samples that have been lost, discarded, or destroyed, the circumstances surrounding their loss, disposition, or destruction and by whom[;]" and

- "Location of other relevant talc samples – The location of any talc samples either from a source (e.g. the mine) which supplied talc for use in Johnson & Johnson talcum powder productions or from any point in the chain of production . . . even if those samples are not in your custody or control."

(Pls.' Obj. at 2.)

After soliciting letter briefs from the parties, the Special Master issued two letter opinions on May 23, 2018 setting forth his ruling that the J&J defendants

3

"will not be required to produce a witness on these topics." (Special Master Order at 4.) As the Special Master explained in his initial opinion letter, "[t]he fact that samples may have been lost or discarded does not lead to anything discoverable and is not relevant to general causation." (*Id.*) Further, the Special Master noted that plaintiffs' emphasis on the number of samples that "have been or may not have been produced in various time periods" simply is not "probative of any issues in this case." (*Id.*) Accordingly, the Special Master held that "[t]o permit argument about samples that have been lost or discarded" would only serve to "introduce speculation to a factual background that is already complex" and would not aid in the "testing protocol on samples that have been preserved." (*Id.*)

The Special Master supplemented his opinion later the same day, after receiving an unsolicited reply from plaintiffs offering additional arguments after the Special Master's initial opinion was filed. (*See* Suppl. Special Master Order at 1.) According to the Special Master's supplemental opinion letter, plaintiffs' requested discovery on the issue of sample retention appeared to be aimed at "fashion[ing] a spoliation claim from the fact that samples may have gone missing." (*Id.*) The Special Master explained, however, that plaintiffs have "no basis to argue" that any purportedly unretained samples "might reveal evidence of causation" that could not be obtained based on the samples that plaintiffs do have. (*Id.*) To the contrary, the Special Master noted that any suggestion by plaintiffs

4

that non-retained samples would provide information different from those that have been produced for plaintiffs' "exhaustive testing" is "rank speculation." (*Id.*) Accordingly, the Special Master concluded that there was no reason to alter his initial ruling and directed plaintiffs to direct their efforts toward testing the sufficient sample evidence available to them. (*Id.*)

As the Court is aware, the J&J defendants have engaged in substantial efforts to make product samples available to plaintiffs for testing. Specifically, the J&J defendants located approximately 450 samples in the J&J museum and off-site storage. (*See* Agreed Order & Stipulation Regarding the Johnson & Johnson Defs.' Produc. of Talcum Powder Products & Talc Samples at Ex. A, Jan. 31, 2018 (Dkt. No. 4032).) In addition, JJCI's third-party manufacturing contractor, PTI Royston, identified more than 450 product samples. (*See id.* at Ex. C.) And Imerys identified an additional 250+ samples as well. (*See* Ex. A to Agreed Order & Stipulation Regarding Produc. of Talc Samples from Imerys Talc America Inc., Feb. 21, 2018 (Dkt. No. 4757-1).) These samples cover a 50-year period from 1960-2013. Notably, the PEC only asked to test approximately six percent of the samples that were available (75/1190).

## ARGUMENT

As the Special Master correctly held in his May 23, 2018 orders, there is no legitimate reason why plaintiffs need to conduct expensive, burdensome and time-

5

consuming depositions on the irrelevant issue of whether defendants have retained all samples of talcum powder products over the course of a century. Plaintiffs attempt to convince the Court that the Special Master was wrong and that this line of inquiry is germane to their claims because "[t]he absence of samples is relevant and may have an impact on science and causation." (Pls.' Obj. at 8.) But plaintiffs' briefing is notable for what it lacks: any evidence whatsoever that their science case would be any different if they had more or different samples of talc to test.

Nowhere in their briefing do plaintiffs contend that they do not have enough samples of the products at issue to conduct sufficient scientific testing. Instead, plaintiffs argue that "if samples were never made available for testing and analysis because they were lost or destroyed," plaintiffs' testing may be "skewed[,] which, in turn, could impact scientific determinations about causation." (*Id*. at 9.) But this argument is grounded in multiple layers of speculation. Plaintiffs have no evidence that any talcum powder samples that may have been discarded over the many years that the products have been on the market would change their testing, particularly since defendants have offered them *more than 1,000 samples* – spanning a century.

The fact is that despite plaintiffs' protestations, the discovery they seek has nothing to do with the science – it is about insinuating that the J&J defendants somehow acted improperly by not retaining every single sample of products that

6

have been on the market for decades. But, as the Special Master correctly held, plaintiffs' suggestion that the fact that some samples may be "missing proves that the Johnson & Johnson Defendants knew of a problem and had it disposed of is rank speculation." (Suppl. Special Master Order at 1.) Indeed, it would be grossly unfair and unrealistic to expect that a company that has sold millions of units of product over the years would save a sample of every batch of product, much less hold on to it indefinitely, especially in decades past, long before the current litigation had commenced.

For similar reasons, the deposition plaintiffs seek would be inordinately burdensome. It would be extremely difficult, if not impossible, to prepare a corporate representative to testify about all samples of talcum powder ever created and whether, when and in what specific circumstances they may have been discarded over time. Such an endeavor would result in a gross waste of time and resources with zero benefit to the litigation. As the Special Master appropriately noted in his order, it makes far more sense for the parties to devote their efforts to whatever testing is needed of the products that are available than to waste time on plaintiffs' efforts to create a sideshow with baseless allegations of spoliation.

## **CONCLUSION**

For the reasons set forth above, the Court should affirm the Special Master's May 23, 2018 Letter Opinions striking Topics III.1(d), 3 and 5 of plaintiffs 30(b)(6) deposition notice, which relate to the retention of samples of talcum powder.

Dated: June 13, 2018

*s/Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone: 973-549-7000
Facsimile: 973-360-9831
E-mail: susan.sharko@dbr.com

Gene M. Williams
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
713-227-8008

John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
202-371-7000

*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., now known as Johnson & Johnson Consumer Inc.*

8