**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2738 (FLW) (LHG)** |

*THIS DOCUMENT RELATES TO ALL CASES*

**PLAINTIFFS' STEERING COMMITTEE'S REPORT ON THE STATUS OF TALC SAMPLES TESTING**

At the May 15, 2018 status conference, the Plaintiffs' Steering Committee ("PSC") indicated that it would report to the Court as to the status of testing of talc samples produced by the Johnson & Johnson Defendants and Imerys. May 15, 2018 Status Conf., Tr. at p. 20-21. At that time, the Court requested that the PSC determine whether samples testing could be completed earlier than the estimated date of September 15, 2018. *Id*. The purpose of this report is to provide the Court and the parties with the PSC's best estimate for completion of samples testing.

The PSC's prior September 15th estimate was based on an assumption that the inventories of samples provided by Defendants were complete. Unfortunately, that assumption was incorrect. As indicated below and in other pleadings,[1] Imerys has

---

[1] *See*, *e.g.*, the PSC'S Objection to May 23, 2018 Case Management Order of the Special Master Relating to 30(b)(6) Depositions (Doc. 6419) (filed June 6, 2018) and PSC's Reply to Defendants'

identified <u>three</u> new groupings of previously undisclosed samples (hereinafter "Imerys's Supplemental Samples"). Significantly, these supplemental samples were not identified to the PSC at the same time. Rather, they came in three separate tranches: May 30th (hereinafter "May 30th collection"); June 8th (hereinafter "Lanzo samples"); and June 20th (hereinafter "Crouse samples"). As a result of the Imerys's three new supplements, the number of Imerys samples now available to the PSC has nearly doubled, increasing from 245 to 461. Upon a representation that Imerys had no further samples to account for, the PSC chose 58 additional samples on July 5, 2018.

Imerys has indicated that its samples will not be ready for splitting until either July 16 and/or 23. *See*, Email from M. Silver, July 6, 2018, Exhibit 1.

For reasons that are obviously beyond the control of the PSC, the PSC had to re-evaluate and reconfigure its testing program to incorporate these newly disclosed evidence. This has been both costly and time consuming. While the PSC had expected to meet the aggressive September 15 completion date discussed with the Court at the May 15th status conference, the PSC now expects that testing can be completed no earlier than October 15, 2018.

---

Response to the Plaintiffs' Steering Committee's Objection to May 23, 2018 Case Management Order of the Special Master Relating to 30(b)(6) Depositions (Doc. 6473) (filed June 14, 2018).

I.  **The Inventory of Imerys Samples Was Not Complete Until June 20, 2018 and the Additional Samples Will Not Be Ready to Split until Mid-July**

    A.  **Imerys's Initial Disclosure of 245 Samples**

The PSC has been diligent in its efforts to collect and test talc samples. The PSC's initial goal was to identify comprehensive samples from the decades during which plaintiffs used Defendants' talcum powder products and from mines that supplied talc for Johnson's Baby Powder (JBP) and Shower to Shower (STS) in that timeframe, including mines from Italy, Vermont, and China. The PSC has had to rely on Defendants to identify, inventory, collect and produce samples within their custody and control.

After discussing the collection of talc samples from Defendants with both the Court and Defendants in the summer of 2017, the PSC issued Interrogatories and Requests for Production of Documents to Defendants, including Imerys on September 7, 2017. *See*, Plaintiff Steering Committee's Second Request for Production of Documents Propounded to Defendant Imerys Talc America, Inc. and Plaintiff Steering Committee's Second Set of Interrogatories Propounded to Defendant Imerys Talc America, Inc., Exhibit 2. Following discussions with Imerys's counsel, Imerys provided a spreadsheet of 245 samples in its possession on October 27, 2017. *See*, Email from M. Silver with attached spreadsheet, Oct. 27,

3

2017, Exhibit 3. Importantly, these were samples collected from the time-period 2001-2014 - there were <u>no</u> Imerys samples dated prior to 2001.

The Court entered an "Agreed Order and Stipulation Regarding Production of Talc Samples from Imerys Talc America, Inc." on February 21, 2018. (Doc. 4757) (hereinafter "Agreed Order"). In the Agreed Order, Imerys represented that it had "identified the talc samples available," but stated that it would *"**timely inform plaintiffs' counsel if [Imerys] discovers additional historical samples…**" Id.* at p. 3 (emphasis supplied).

In accordance with the Agreed Order, the PSC selected samples from the initial inventory on March 12, 2018. Subsequently, representatives of the PSC and Imerys met on April 6, 9, 10, and 13 to split the samples selected by the PSC for its testing program. *See*, Invoice from Alliance Technologies, LLC, Apr. 16, 2018, Exhibit 4. The cost to the PSC was in excess of $18,000.00. At the time of that initial division, the PSC was unaware that any Imerys samples existed beyond those disclosed in the Agreed Order.

**B.     Imerys's Supplemental Disclosures of 216 Additional Samples on May 30, June 8 and June 20**

During the time that the PSC was selecting and collecting Imerys samples for testing, the case of *Lanzo v. Cyprus Amax Minerals Company, et al*, MID-L-7385-16AS (N.J. Sup. Ct) was being tried in New Jersey Superior Court, Middlesex County. In that case involving mesothelioma induced by Johnson & Johnson's

4

talcum powder products, Julie Pier, Imerys's Lead Scientist, Analytical and Metrology, testified that she was in possession of additional, historical samples, dated from 1967 to 1985. Unbeknownst to the PSC but not Imerys, Ms. Pier's testimony occurred on March 5, 2018 – *a week before the PSC chose its samples on March 12th and a month before the samples were split on April 6, 9, 10 & 13.*

Although Imerys clearly knew of Ms. Pier's testimony concerning additional samples, a fact that was subject to a *motion in limine* in the *Lanzo* Trial (Exhibit 5), Imerys did not timely disclose to the PSC the existence of additional samples as required by the February 21st Agreed Order. Instead, this issue was raised by the PSC.[2]  On April 24, 2018, the PSC wrote to Imerys to raise the issue of samples (in the form of TEM grids) not being made available:

> Julie Pier testified that TEM Grids containing portions of samples upon which she performed testing were maintained. To our knowledge, none of these grids were disclosed to the PSC in samples inventory provided to the PSC nor were they included in the Exhibit in the samples protocol. Obviously, this is of some concern and we need to find out what happened and obtain these expeditiously.

*See*, Email for C. Tisi to Imerys, April 24, 2018, Exhibit 6.

The parties met and conferred on several occasions about TEM grids and drill cores. During these conversations, the PSC was not made aware of additional samples. It was after those discussions on May 30, 2018, that Imerys wrote to the

---

[2] PSC firms were not involved in the trial.

5

PSC to inform the PSC that there were a substantial number of additional samples. *See*, Letter from Mark Silver, Esq., May 30, 2018, Exhibit 7. This letter identified several categories of samples that had not previously been disclosed and of which, the PSC was not aware. *First*, Imerys indicated that it had identified the "Lanzo samples" which had been referenced by Ms. Pier during the trial, indicating a box of samples had been located and promising to disclose an inventory of those samples to the PSC when complete. *Id.* at p. 2. *Second,* Imerys disclosed that it had located additional samples from the years 2012 to 2014. *Third*, Imerys identified another group of samples as "Samples Being Identified in Asbestos Litigation."

Significantly, Imerys's disclosure came after Judge Pisano ruled on May 23, 2018 that 30(b)(6) testimony on lost and destroyed samples was not necessary. *See*, Order of May 23, 2018 (Doc. 2618). The PSC's appeal of that order is pending with the Court. *See*, Fn 1 *supra*.

In addition to appealing Judge Pisano's Order, the PSC immediately wrote to Imerys expressing its concern that, among other things, this late disclosure was an impediment to the PSC's ongoing testing as described to this Court during the May 15th status conference. *See*, Letter from L. O'Dell, June 4, 2018, Exhibit 8. With respect to the report to the Court, the PSC made clear that "in order to respond to the Courts' inquiry (about completing testing before September 15) we must know when your investigation will be completed."

6

Subsequent to Imerys' May 30th letter disclosing the 2012-2014 samples, the "Asbestos litigation" samples, and the *Lanzo* box of samples, Imerys disclosed yet another cache of samples referred to as the "Crouse samples." Imerys did not produce an inventory for the "Lanzo samples" and the "Crouse samples" until June 8 and June 20, respectively. *See*, Email from M. Silver, June 8, 2018, Exhibit 9; *see also*, Email from M. Silver, June 20, 2018, Exhibit 10. **Thus, the PSC did not have the entire Imerys Supplemental disclosure until June 20.**

The Imerys Supplemental Samples are neither duplicative nor cumulative of the samples previously disclosed. The distribution of the initial samples as opposed to the supplemental samples is as follows:

| Time Period | Imerys Order & Stipulation (Feb. 2018) | Supplemental Imerys Disclosure (May 30, 2018) |
| --- | --- | --- |
| 1967-1987 | None | 20 |
| 1988 | None | 137 |
| 1998 | None | 12 |
| 2001-2009 | 129 | 26 |
| 2010-2014 | 57 | 21 |
| No date | 59 | None |
| **Total** | **245** | **216** |

Again, samples from 1967-1987, 1988, and 1998 had not previously been made available to the PSC. The majority of plaintiffs in the MDL would have been using Defendants' talcum powder products during these years. The latency period for ovarian cancer is often between 20 to 30 years. When considering the usage of

7

talcum powder by plaintiffs during these time-periods in light of the latency period, the importance of these new samples cannot be underestimated.

Upon receiving the final Imerys supplemental disclosure on June 20, the PSC chose 58 additional samples on July 5, 2018. Upon doing so, Imerys informed the PSC that it could not obtain physical custody of these until the week of "July 16 and/or 23." *See*, Exhibit 1.

### C.  The PSC's Testing Program is Intensive and Ongoing

Prior to the newly disclosed samples, the PSC had selected 136 samples – 71 from Johnson & Johnson Defendants and 65 from Imerys. At the May 15th Status Conference, the PSC explained the methodology that Dr. William Longo and his colleagues at the MAS, LLC lab must undertake in order to properly test the selected samples. Among other processes, each sample must be analyzed using a Transmission Electron Microscope, a million-dollar piece of equipment. There is only one TEM machine at the lab. Briefly, the steps are as follows:

- Log-in Procedure: This log-in process takes approximately 2 hour per sample;
- Sample Preparation: 7 hours per sample;
- TEM Grid Preparation and Laboratory Blanks: 5 hours per sample;
- TEM Process Laboratory Blank TEM Analysis:  2.5 hours per sample;
- TEM Analysis:  6-12 hours per sample depending on what is detected;

8

- <u>Review of TEM Data</u>:   2.5 hours per sample

- <u>Review of data and preparation of written report of findings</u>:  4 hours

The total time to test and analyze <u>each sample</u> is between 29-35 hours.  *See*, May 15, 2018 Status Conf., Tr. at p. 13:16-18.

## II.     The PSC's Estimate for Completion of Testing of Currently Known Samples

The testing of the initial samples has been proceeding smoothly with most samples having moved through the initial stages of testing in anticipation of a September 15th or earlier completion date.  The necessity of testing the 58 newly disclosed Imerys samples makes it impossible to complete the testing of all samples by September 15th.

In light of that fact and in an effort to do everything possible to complete the testing as quickly as possible, the PSC in consultation with Dr. Longo is reviewing the initial Imerys selections to determine if there are samples that need not be tested at this time due to the availability of the new samples.  This process is ongoing, but the PSC anticipates that the testing of an estimated 15 previously-selected samples will not proceed.  Dr. Longo and his colleagues will remove those samples from the queue for testing and incorporate the newly disclosed and selected samples.

Neither Imerys nor J&J disputes that the PSC is entitled to incorporate these samples into its current testing protocol.  Dr. Longo and his colleagues are making every effort to complete the testing of samples as quickly as possible, while adhering

to the appropriate methodology. In light of the fact that the PSC in consultation with Dr. Longo is working to substitute some of the newly disclosed samples for ones included in the initial selections but not yet tested, the PSC respectfully believes that October 15th is the earliest date that testing can be completed. This, of course, assumes that the newly disclosed samples will be ready for splitting in July as Imerys has indicated and further assumes that there are no further discoveries of samples by either Imerys or the Johnson & Johnson Defendants.

Date: July 7, 2018                                Respectfully Submitted,

*s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone: 703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, PC
218 Commerce Street
Montgomery, AL 36104
Telephone: 334-269-2343
Email: leigh.odell@beasleyallen.com

***Plaintiffs' Co-Lead Counsel***

*s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN PLACITELLA ROTH, PC

127 Maple Avenue
Red Bank, NJ 07701
Telephone 888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Dated:  July 7, 2018                              *s/ Michelle A. Parfitt*
                                                                Michelle A. Parfitt