# EXHIBIT 8



**Montgomery**
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

**Atlanta**
4200 Northside Parkway
Building One, Suite 100
Atlanta, GA 30327

(800) 898-2034

BeasleyAllen.com

**P. Leigh O'Dell**
leigh.odell@beasleyallen.com

June 4, 2018

**VIA Electronic Mail**
Mark K. Silver, Esq.
Coughlin Duffy
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962

      Re:    *In Re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*
            MDL No. 2738

Dear Mark:

Thank you for your letter of May 30, 2018, disclosing additional Imerys talc samples beyond those that were previously identified in the Agreed Upon Order and Stipulation Regarding the Production of Talc Samples by Imerys Talc America, Inc. (Doc. 4757). This new and unanticipated Imerys disclosure is extensive and implicates samples from every decade since the 1960's.

While the PSC appreciates Imerys's disclosure, I am sure that you must recognize that it raises some troubling questions. These questions include issues about the adequacy of Imerys's prior disclosures, the timing of Imerys's ongoing investigations and, equally important, whether the passage of time will reveal yet more previously undisclosed samples. This new disclosure could not come at a more sensitive time since the sample testing process has begun in earnest and the PSC is operating under an aggressive schedule that was urged by the Defendants and countenanced by the Court. The proposed schedule for testing was based on an obviously erroneous assumption that all available Imerys samples had been disclosed to the PSC.

To determine the ramifications that Imerys's late disclosure might have on the current testing schedule, the PSC requests a call no later than Thursday, June 7.

In anticipation of our discussion, we want to make clear that we believe that we are entitled to the additional information described below to determine not only what additional samples to test but realistically how much time will be necessary to accomplish the testing of those samples. Therefore, we ask that you provide the following information:

Mark Silver, Esq.
June 4, 2018
Page 2 of 3

1. **Samples from 2012-2014**: On page 2 of your letter, you describe 20 additional samples from 2012-2014. Your two-sentence description of these samples leaves many questions unanswered. We need to know when these samples were discovered, where they were located, the custodian of the samples, why they were not identified previously, and whether any additional samples might be maintained in the same or a similar location. Please identify all documents that describe these samples and any prior testing that relates to them (whether performed by Imerys or an outside lab).

2. **"Lanzo Trial Box"**: In a single brief paragraph on page 2 of your letter, you also describe locating a box containing samples of Windsor Grade 66 talc from a 25-year period, 1964-1987. The "box" was first identified by Ms. Julie Pier in the Lanzo trial. We need more information on the "Lanzo Box." While we understand that you are still preparing an inventory of this box, we need you to describe everything you currently know about it and the samples contained therein. Specifically, we need to know where the box was found, why it was not identified earlier, the custodian of the box, the number of samples in the box, the year that each sample was taken, whether the samples have been tested (by Imerys or by an outside lab), and the identify of any documents related to the samples (including test results). In addition, we need to know when you expect the inventory of this box to be complete so we can make an informed decision on additional samples to test.

3. **Samples Being Identified in Asbestos Litigation:** On page 2 of your letter, you describe 4 additional boxes of samples that have been identified in connection with unspecified "asbestos litigation being litigated throughout the country." You further state that Imerys is investigating whether these samples are samples of talc sold to J&J. We need much more information about the "Asbestos litigation" boxes. Specifically, we need to know which asbestos cases these samples were identified in, when they were identified, who the defendants are in those cases, whether any of the samples have been tested by Imerys or an outside lab, and the identify of any documents related to these samples (including test results). We need to know if any portion of these samples has been provided to plaintiffs' counsel for testing. In addition, we are entitled to know when these samples were discovered by Imerys, where these boxes were stored at the time they were discovered, the custodian of the boxes, and why they were not disclosed in the Talc MDL samples protocol. We ask that you to identify each sample by sample number, the year the sample was taken, and any other information available regarding the sample. Lastly, please advise us as to when your investigation and the inventory will be complete.

4. **Samples A05033 and A05075:** On page 3 of your letter, you indicate that Imerys is investigating samples A05033 and A05075. Please tell us when this investigation will be complete.

5. **TEM Grids and Drilling Cores:** As you know, we have been discussing these items for quite some time. Please let us know this week whether you will voluntary provide the TEM grids and drill cores for inspection and/or testing. If not, we need to raise this with the Court as we do not think the Court will want this issue to drift any further into the summer.

Mark Silver, Esq.
June 4, 2018
Page 3 of 3

6. **Other Potentially Available Samples:** Your letter obviously raises the prospect that even more talc samples may yet be discovered and disclosed. In this regard, we ask that you indicate whether Imerys or its counsel have located any additional samples that they are investigating but which are not described in your May 30th letter.

The answer to these questions are time-sensitive. At Defendants' urging, the Court has pressed the PSC to complete its testing at the earliest possible time. In fact, the Court has asked the PSC to report back during the next status conference as to whether sample testing can be completed even earlier than the September 15th time frame discussed during the May 8th conference. In order to accurately respond to the Court's inquiry, we must know now when your investigation will be completed and, even more importantly, understand just how confident you are that Imerys has finally identified and disclosed to the PSC all potentially relevant samples to the PSC.

Over the past year, the inventory of samples and the protocol for testing has been front-and-center for both the PSC and the Court. The need for an accurate and reliable accounting of available samples is and has been obvious. This new disclosure – of potentially hundreds of newly disclosed samples covering a period of nearly 60 years, years relevant to our clients' use of talcum powder products – has material implications to the PSC's testing of samples and the preparation of its general causation expert reports. Due to the importance of this matter and the seriousness of Imerys's delay in making this important evidence available to the PSC, we trust that Imerys will be forthcoming with all of the information that it has in relation to these samples. We also want to make clear that the PSC reserves the right to take a 30(b)(6) deposition on this issue

We look forward to speaking to you this week.

Best Regards,

*/s/ P. Leigh O'Dell*

P. Leigh O'Dell
Michelle A. Parfitt

cc:  Susan Sharko, Esq. (via e-mail)
  Tom Locke, Esq. (via e-mail)
  Chris Placitella, Esq. (via e-mail)
  Warren Burns, Esq. (via e-mail)
  Richard Golomb, Esq. (via e-mail)
  Richard Meadow, Esq. (via e-mail)
  Hunter Shkolnik, Esq. (via e-mail)
  Christopher V. Tisi, Esq. (via e-mail)
  Larry Berman, Esq. (via e-mail)
  Dan Lapinski, Esq. (via e-mail)