# EXHIBIT A

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS, MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) |

Civil Action No.   3:16-md-02738-FLW-LHG

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: William G. Kelly, 1850 Fall Line Drive, Driggs, ID 83422

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: SpringHill Suites Rexburg 1177 South Yellowstone Hwy., Rexburg, ID 83440 | Date and Time: July 10, 2018, at 9:00 AM. |
|---|---|

The deposition will be recorded by this method:   Video and stenographic recording.

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5-30-18

| CLERK OF COURT | |
|---|---|
| _____ Signature of Clerk or Deputy Clerk | OR _____ Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs Steering Committee for the above captioned litigation , who issues or requests this subpoena, are: Robert T. Dassow, rdassow@hovdelaw.com, (317) 818-3100, Hovde Dassow and Deets, LLC, 10201 N. Illinois. St., Suite 500, Indianapolis, IN 46290

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:16-md-02738-FLW-LHG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ❑ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

(c) **Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

(d) **Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) **Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) **Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) Civil Action No. 3:16-md-02738-FLW-LHG |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:            Mr. William G. Kelly, Jr., 1850 Fall Line Drive, Driggs, ID 83422

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:    See attached Request for Production of Documents

| Place:SpringHill Suites Rexburg 1177 South Yellowstone Hwy., Rexburg, ID 83440 | Date and Time: 30 Days from the Date of Service of this subpoena |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5-30-18

CLERK OF COURT

OR _____

_____         _____
Signature of Clerk or Deputy Clerk                 Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff Steering Committee for the above captioned litigation _____, who issues or requests this subpoena, are:
Robert T. Dassow, rdassow@hovdelaw.com, (317) 818-3100, Hovde Dassow and Deets, LLC, 10201 N. Illinois. St., Suite 500, Indianapolis, IN 46290

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:16-md-02738-FLW-LHG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

    ❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

MDL NO. 2738

## THE PLAINTIFFS' STEERING COMMITTEE'S NOTICE OF VIDEOTAPED DEPOSITION OF MR. ROBERT E. GLENN

TO:   Mr. William G. Kelly, Jr.
      1850 Fall Line Drive
      Driggs, ID 83422

PLEASE TAKE NOTICE that pursuant to Rules 26, 30, and 45 of the Federal Rules of

Civil Procedure, The Plaintiffs Steering Committee, will take the videotaped deposition(s) of Mr.

William G. Kelly, Jr., on July 10, 2018 at 9:00 a.m. at:

SpringHill Suites Rexburg
1177 South Yellowstone Hwy.,
Rexburg, ID 83440

or at some other time and/or place that the parties may agree to.

The deposition will be taken for the purposes of discovery and/or for use as evidence at

trial. The deposition will be taken by audiovisual and stenographic means before a person

authorized by law to administer oaths and will continue day-to-day until the examination is

complete.

Dated: May 30, 2018                    Respectfully Submitted,

                                       Robert T. Dassow

HOVDE DASSOW AND DEETS, LLC
10201 N. Illinois St., Suite 500
Indianapolis, IN 46290
(317) 818-3100
rdassow@hovdelaw.com
beckhart@hovdelaw.com

Susanne N. Scovern
SCOVERN LAW
201 Spear St., Suite 1105
San Francisco, CA 94105
(888) 725-1890
scovern@scovernlaw.com
joseph_mcpeak@scovernlaw.com

*On behalf of the Plaintiffs Steering Committee*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 2738 |

## THE PLAINTIFFS STEERING COMMITTEE'S REQUEST FOR PRODUCTION OF DOCUMENTS TO MR. WILLIAM G. KELLY, JR.

TO:   Mr. William G. Kelly, Jr.
       1850 Fall Line Drive
       Driggs, ID 83422

PLEASE TAKE NOTICE that pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, the Plaintiffs Steering Committee hereby Commands Mr. Robert E. Glenn to produce any and all documents in his possession, custody, and control responsive to the requests contained herein, within 30 days of the date of service of this subpoena at the address below:

SpringHill Suites Rexburg
1177 South Yellowstone Hwy.,
Rexburg, ID 83440

Dated: May 30, 2018

Respectfully Submitted,

Robert T. Dassow
HOVDE DASSOW AND DEETS, LLC
10201 N. Illinois St., Suite 500
Indianapolis, IN 46290
(317) 818-3100
rdassow@hovdelaw.com
beckhart@hovdelaw.com

Susanne N. Scovern
SCOVERN LAW
201 Spear St., Suite 1105
San Francisco, CA 94105
(888) 725-1890
scovern@scovernlaw.com
joseph_mcpeak@scovernlaw.com

***On behalf of the Plaintiffs Steering
Committee***

2

## DEFINITIONS

The following definitions apply to the Notice of Deposition and Request for Production of Documents contained herein, and are deemed to be incorporated into each subject matter and document requested and listed below. To the extent a term commonly in use in the cosmetic and/or personal care product industry or in use in the medical community is not defined herein, it shall be understood to be consistent with the meaning commonly ascribed to that term in the cosmetic and/or personal care product industry.

1.      "Defendants" refers to Defendants Johnson & Johnson, Johnson & Johnson Consumer Inc. f/k/a Johnson & Johnson Consumer Companies, Inc., Imerys Talc America, Inc. f/k/a Luzenac America, Inc., and the Personal Care Products Council f/k/a the Cosmetic, Toiletry, and Frangrance Association (both collectively and individually) as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including all corporations and entities affiliated with Defendants.  The term "Defendant" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives.  The term "Defendant" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint venturers or other representatives.

2.      The term "You" or "Your" means Yourself, Mr. William G. Kelly, Jr., and any of your employees, representatives, independent contractors, or agents, including attorneys and accountants, within your control.

3

3.      The term "Talcum Products" refers to Johnson's Baby Powder and Shower-to-Shower line products.  This term is used interchangeably with the term Relevant Product.

4.      When used herein, "Talc" refers to any raw, processed, or packaged talc used in, or considered for use in, the Johnson's Baby Powder or Shower to Shower line products, whether on a permanent, interim, or trial basis.  This Definition includes any raw material or finished product derived from the same source, mine, or ore body as that used in the Johnson's Baby Powder or Shower to Shower line products.

5.      The term "Asbestos" is used to refer to any matter, substance, material, product (or component thereof) containing asbestos, asbestiform materials (including non-regulated fibers such as winchite and richterite), transition fibers, cleavage fragments, and/or nonasbestiform asbestos materials, regardless of the fiber type, form, or percentage (including less than 1%), as well as chrysotile, and the amphiboles, amosite, crocidolite, tremolite, anthophyllite, and/or actinolite.

6.      The term "Heavy Metals" refers to any of the following: nickel, mercury, lead, manganese, copper, cobalt, chromium, magnesium, cadmium, neodymium, aluminum, and arsenic.

7.      The term "Accessory Minerals" refers to any of the following: free crystalline silica, including quartz, cristobalite, and tridymite; and mica.

8.

9.      The term "PCPC" is used to refer to the Personal Care Products Council f/k/a the Cosmetic, Toiletry, and Fragrance Association and all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and entities affiliated with PCPC, as well as any of the

same for its predecessor organization, the Cosmetic, Toiletry, and Fragrance Association ("CTFA").

10.     The term "Imerys" is used to refer to Imerys Talc America, Inc. f/k/a Luzenac America, Inc. and all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and entities affiliated with Imerys and/or Luzenac.

11.     The term "Johnson & Johnson" or "Johnson & Johnson Defendants" is used to refer to Johnson & Johnson and/or Johnson & Johnson Consumer Inc. f/k/a Johnson & Johnson Consumer Companies, Inc. and all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and entities affiliated with Johnson & Johnson.

12.     The term "Multinational Companies" refers to Multinational Legal Services, Multinational Business Services, and The Center For Regulatory Effectives, and includes without limitation, any and all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and affiliated entities.

13.     The term "Documents" and "Documentation" as used in these discovery requests is coextensive with the meaning of the terms "Documents" and "tangible things" in Fed. R. Civ. P. 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "Documents" and "tangible things" under Fed. R. Civ. P. 34, and the applicable Local Rules. Consistent with the above definition, the Document shall include, without limitation, any database, written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data

compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meeting, correspondence and communications (as defined below) or any type (including but not limited to video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), Documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings of Documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

14.     The term "Communication(s)" and/or "Correspondence" shall mean and include every manner or means of correspondence, disclosure, transfer, or exchange of information, and every correspondence, disclosure, transfer or exchange of information, whether orally,

electronically, or by documents, or whether face-to-face, by telephone, mail, email, text messaging, instant messaging, facsimile, personal delivery, overnight delivery, or otherwise.

15.     The term "Employee" includes, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, agent, independent contractor, and/or other person who is or was employed by you or who provided services to you under an independent contractor arrangement.

16.     The use of the singular herein shall be deemed to include the plural and vice versa; and the use of one gender shall include the other, as appropriate in the context.  The past tense includes the present tense where the clear meaning is not distorted by change of tense.

17.     The term(s) "Disease" and/or "Diseases" shall mean and refer to health conditions including ovarian cancer, malignant and non-malignant tumors,

18.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery requests all responses that might otherwise be construed to be outside of its scope.

19.     "Related to," or "regarding," mean, without limitation, discuss, describe, reflect, deal with, pertain to, analyze, evaluate, estimate, constitute, study, survey, project, assess, record, summarize, criticize, report, comment, or otherwise involve, in whole or in part.

20.     The term "Concerning" means referring to, relating to, describing, regarding, evidencing, or constituting; and each such term shall be deemed synonymous to the others where used herein.

21.     "Regulatory Agency" is used to refer to any domestic or foreign governmental body, entity, department, or division that oversees, monitors, or regulates cosmetic and/or personal care products, including but not limited to the Food and Drug Administration (FDA) and the

Consumer Product Safety Commission (CPSC), as well as agencies based in U.S. State-level governments such as California's Office of Environmental Health Hazard Assessment ("OEHHA").

## <u>INSTRUCTIONS</u>

1.      The Documents requested are to be produced within 30 days of the date of service of this subpoena.

2.      In responding to this Request, you are required to produce all Documents known or reasonably available to you, regardless of whether such Documents are in your possession, custody, or control or in the possession, custody, or control of your agents, consignees, representatives or investigators, including your attorneys or their agents, employees, representatives, or investigators.

3.      If any of the Documents or information Requested cannot be produced in full, you are required to specify, to the extent possible, the reasons for your inability to produce the remainder, and the approximate date when you expect to produce such Documents, if at all.

4.      If any Request is deemed to call for the production of privileged or otherwise protected information or materials, you must provide the following information in a written response, designating and identifying those Documents or information withheld from production on grounds of privilege:

(a)      The reason for withholding the Document or information;
(b)      A statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure;
(c)      A brief description of the Document, including:
   i.  The date of the Document;
   ii.  The number of pages, attachments, and appendices;
   iii.  The name(s) of its author(s) or preparer(s) and identification by employment and title of each such person;

    iv.  The name of each person who was sent, shown, or copied on the Document, or has had access to or custody of the Document, together with an identification of each such person;

    v.  The present custodian; and

    vi.  The subject matter of the Document, and in the case of any Document relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

5.    Failure to properly identify any withheld Documents may result in the waiver of any right to assert a privilege later.

6.    This Request imposes a continuing obligation upon you. If after producing Documents or information responsive to this Demand additional information or Documents become available to you, you are required to produce such additional Documents or information.

7.    With respect to each Document Requested that has been lost, destroyed, or otherwise disposed of since its preparation or receipt, you shall provide the following information separately as to each such Document:

    (a)  A general description of the subject matter, author, recipient(s), date;

    (b)  The identity of each person who has received a copy or had an opportunity to receive a copy thereof;

    (c)  The last custodian of the Document or copies thereof; and

    (d)  The full particulars or circumstances whereby the Document was disposed of, destroyed, or otherwise lost.

8.    All Documents produced in response to these Requests shall be either:

    (a)  Organized and labeled to correspond with the number of the specific Request to which the Documents are responsive, or

    (b)  Produced in the order and in the manner that they are kept in the usual course of business.

9.    All Documents requested shall include all Documents and information that relate in whole or in part to the relevant time period, or to events or circumstances during such relevant time period, even though dated, prepared or generated or received prior to relevant time period.

10.     All Documents that exist in electronic form are to be produced in electronic form and in their native electronic format, not in an electronic form that is merely a picture of a Document such as a TIFF file, a TIF file, or a PDF file, with the Bates number applied in a manner that does not alter the Document's metadata or its optical character recognition ("OCR") in any way.

## DOCUMENTS TO BE PRODUCED

1. Your most updated Curriculum Vitae.

2. All Documents relating to work performed concerning talc, Asbestos, the Relevant Products, and/or ovarian cancer.

3. All Communications relating to talc, Asbestos, the Relevant Products, and/or ovarian cancer for, between you and each of the Defendants and/or their agents, employees, or representatives.

4. All consulting and research agreements relating to talc, Asbestos, the Relevant Products, and/or ovarian cancer.

5. All Documents and Correspondence between you and any Regulatory Agency relating to talc, Asbestos, the Relevant Products, and/or ovarian cancer.

6. All Documents, including but not limited to bank statements, 1099's, tax returns, or other record, showing payments, reimbursement, or remuneration or any kind to You, for work performed relating to talc, Asbestos, the Relevant Products, and/or ovarian cancer.

7. All invoices or any other document showing a record of the scope and extent of work performed relating to talc, Asbestos, the Relevant Products, and/or ovarian cancer.

8. All communications between you and The Multinational Companies related to any work performed on behalf of, or for the benefit of any of the Defendants.

11

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>**This document relates to: ALL CASES** | **MDL NO. 16-2378 (FLW) (LHG)** |

**CASE MANAGEMENT ORDER NO. 5**
**(Protocol For Production Of Documents and ESI)**

**THIS MATTER,** having come before the Court during the Initial Conference held on Thursday, November 17, 2016, and the parties' subsequently filed joint submission,

**IT IS ORDERED:**

## I. GENERAL PROVISIONS

A. Scope

This Order governs the production of documents and electronically stored information (ESI) in all cases during the pendency of their consolidation in this Multi-District Litigation (MDL 16-2378). The terms of this Order neither enhance, nor diminish, the scope of discovery as contemplated by the Rules. All parties reserve their rights with respect to the scope of the document production.

Case 3:16-md-02738-MAS-RLS   Document 6989-1   Filed 08/07/18   Page 22 of 54 PageID:
19449
Case 3:16-md-02738-FLW-LHG   Document 258   Filed 05/22/17   Page 2 of 20 PageID: 3216

B.  Cooperation and Discovery Dispute Resolution by the Parties or the Court

The Parties shall conduct discovery in a cooperative and collaborative manner. There is established a continuing duty to meet and confer in good faith on disputed issues that may arise during the conduct of discovery. When a request for conference and collaboration about an issue in dispute is made by one party to another, the conference and collaboration should occur without unreasonable delay. At the conclusion of any unsuccessful attempt to resolve a disputed discovery issue, and prior to its submission to the Court for resolution, the parties should have identified the scope of the issues as narrowly and accurately as possible, along with any factual premises which inform the basis of the dispute. The scope of discovery in these consolidated cases shall be governed by the proportionality factors set forth in Rule 26(b)(1). When a party relies on one or more of the proportionality factors set forth in Rule 26(b)(1) in a discovery dispute submitted to the Court for resolution, supporting materials should normally be presented.

C.  Interpretation to Avoid Waste and Unnecessary Expense

The fundamental purpose served by this Order is to promote the exchange of discoverable information in an efficient and economical manner, employing methods that preserve, to the greatest practicable degree, the information's content, structure, functionality, and usefulness. When circumstances arise that are not contemplated by the terms of this order, or if uncertainty arises concerning the intended application of its terms, the parties should initiate the meet and confer process prior to expending material resources on a unilaterally conceived discovery protocol.

## II.    DEFINITIONS

A. The term **"Electronically Stored Information,"** (hereinafter, **"ESI"**) has the same meaning as contemplated by Rule 34 of the Federal Rules of Civil Procedure.

B. The term **"Document"** has the same meaning as contemplated by Rule 34 of the Federal Rules of Civil Procedure, and such meaning includes, in context, a discreet file of ESI that corresponds to such a writing in a reasonably usable format.

C. **"Hard Copy Document"** means a document that exists in the ordinary course of business in paper form.

D. **"Metadata"** means information about information, or data about data, and includes, without limitation, as it exists in the ordinary course of business: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; or (iii) information about a file, whether created by a user or generated by the system itself.  The parties agree to meet-and-confer concerning information about a record or document in a document management system, whether created by a user or generated by the system itself.

E. **"Native," "Native format,"** or **"Native data format"** means the format of ESI in which the ESI was originally created or the format used by the producing party in the usual course of the producing party's business activities.

F. **"Extracted Text"** means the textual content of an ESI native source exported into a separate electronic text file.

G. **"Optical Character Recognition"** or **"OCR"** means the process of recognizing the visible text contained within a hard copy document or contained within the digital image of a document, and rendering the recognized text into an electronic text file.

H. **"Searchable Text"** means extracted text or electronic text created by OCR.

I. **"Protected health information"** or **"PHI"** as used herein means any document or information supplied in any form, or any portion thereof, that identifies an individual or subscriber in any manner and relates to the past, present, or future care, services, or supplies relating to the physical or mental health or condition of such individual, the provision of health care to such individual, or the past, present, or future payment for the provision of health care to such individual. These terms specifically include "protected health information" as such term is defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 and applicable state laws. See, e.g., 45 C.F.R. § 164.501 ("protected health information") and 160.103 ("individually identifiable health information"). "Protected health information" includes, but is not limited to, medical bills, claims forms, charge sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks, notices, and requests. "Protected health information" also includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from confidential health information.

J. **"And"** and **"or"** shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "and" shall be construed to mean **"and/or."** **"Include"** and **"Including"** shall be construed to mean "include but not be limited to" and

"including, but not limited to." Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

## III.   PROCESSING, CULLING, AND DE-DUPLICATION OF ESI

A. Processing Protocols

1.   When processing ESI, Greenwich Mean Time (GMT) shall be selected as the time zone.

2.   Files containing dynamic fields such as file names, dates, and times should be processed for production showing the field code (e.g. "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

3.   Compressed file types (e.g. .CAB, .GZ, .TAR. .ZIP) shall be decompressed in a reiterative manner to ensure that a compressed file within a compressed file is decompressed into the lowest possible compression resulting in individual files. The parent/child relationship of these files shall be preserved and reflected in the applicable attachment metadata fields listed in *Appendix 2*.

4.   Embedded files, including objects embedded in Microsoft Word and RTF documents that have been embedded with the "Display as Icon" feature, shall be extracted and produced as standalone files along with corresponding attachment Metadata to the parent document.

5.   If a party cannot unencrypt discoverable electronically stored information that exists in encrypted format, the parties agree to meet and confer regarding how such information should be handled.

6.   Documents that cannot be read because of processing, imaging, or formatting problems shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

Case 3:16-md-02738-MAS-RLS    Document 6989-1    Filed 08/07/18    Page 26 of 54 PageID:
19453
Case 3:16-md-02738-FLW-LHG    Document 296    Filed 05/22/17    Page 6 of 20 PageID: 3220

B.  Culling of Identified Data Sets

System Files may be culled by de-NISTing.  An electronic file collection may be "de-NISTed" at the producing party's option, by removing commercially available, non-user created operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list. Identification of NIST list matches will be through MD5 or SH-1 Hash values. When a producing party desires to cull an electronic file collection by categorically discarding specific file types not contained on the NIST list, it shall initiate a meet and confer conference with the requesting party to coordinate the use of the proposed file types.

C.  De-duplication

1.  ESI will be considered duplicative if it has matching MD5 or SHA-1 hash values. For this purpose, file contents only may be used for MD5 or SHA1 Hash value calculation and will not require inclusion of operating system metadata (e.g., filename, file dates) values.  Messaging files associated with a discreet custodian may be de-duplicated based upon MD5 or SHA1 Hash values for the entire message family, including parent object and attachments.

2.  Parties may de-duplicate stand-alone documents or entire document families vertically within each custodian or horizontally across custodians and data sources, including serial production sets. De-duplication procedures shall not break apart document families. The identity of other custodians of de-duplicated documents must be listed in the "Other Custodian(s)" field identified in Appendix 2. The "Other Custodians" field for a given document will be populated with any existing data at the time of the first production of that document. In instances where a newly collected document has been de-duplicated against a previously produced document, a separate DAT file will be provided upon request of the Requesting Party containing the "PRODBEG" number and an "Other Custodians" overlay field. The "Other Custodians" overlay

field will contain all previously provided duplicate custodial data as well as any additional duplicate custodians.

3.   A producing party may employ electronic mail thread suppression in the manner specified in this protocol. As used in this protocol, email thread suppression means reducing duplicative production of email conversation threads by producing only the most recent or most complete email containing the prior thread of emails, as well as all attachments appended at any point within the history of the thread, and excluding email segments constituting exact duplicates of prior email text within the produced string.

4.   To qualify as a single email conversation thread, all lesser included individual messages must have identical message conversation participants (including "bcc:" blind copy participants) and attachment history. The inclusion or deletion of a message participant shall terminate a conversation thread for this purpose, but such an occurrence ("conversation branching") may create the beginning of a separate and distinct conversation thread containing some or all of the lesser included messages.

## IV.   REVIEW PROTOCOL

The parties will cooperate in good faith regarding the use of electronic search methodologies. The Producing Party will provide keyword search terms and will consider reasonable requests for additional search terms proposed by the Requesting Party.   A Producing Party will employ reasonable quality assurance measures to assess the completeness of its search and review methodologies.

## V.     PRODUCTION FORMAT

A. <u>Presumptive Format of Production</u>

1.    Document Images, with Metadata, and Text: Subject to the specifications or exceptions set forth below, the presumptive format for production of an ESI document is as a Group IV single page .TIFF image files accompanied by metadata, and a document level searchable text file.

2.    Parties will produce ESI in native format for media files, spreadsheet files and presentation (e.g. PowerPoint) files.  Parties will also produce ESI in native format for word processing files containing track changes or comments.   When a producing party has applied permissible redactions to an image file, the underlying native file may be withheld.  Files produced solely in native format will be produced with a .TIFF image slip sheet indicating the production number of the native file and the confidentiality designation, and stating "Produced in Native Format." The native file name nomenclature will correspond to the same Bates number nomenclature of the corresponding .TIFF image slip sheet, as more specifically described in Appendix 5.

3.    Ancillary Content Disclosed: When TIFF images are produced for electronic documents, such images will be rendered, if possible, in such a way as to show, as may be applicable, all disclosable reviewer's comments, tracked changes, speaker's notes, and other similar content.

4.    Parent-Child Relationships Preserved: The parent-child relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. If parent or child document is withheld on grounds of relevance or responsiveness, such withholding shall be noted with a slip sheet or indicated in a field. If the parent or child document is privileged, a slip sheet shall be inserted in the production.  Child documents will be mapped to their parent document by attachment range within the applicable load file.

5.    Color When Necessary: When a document that contains color content is produced without its native file because of applied redactions, and the absence of color in the document's TIFF rendering compromises the requesting party's ability to discern the remaining information it

contains, the producing party will honor reasonable requests to supplement the production with color images or native files.

    B.  <u>Appendices</u>

Additional technical specifications for production format are set forth in the attached appendices (Appendix 1: *TIFF Image File Specifications*; Appendix 2: *Data Load File Specifications*; Appendix 3: *Searchable Text File Specifications*, Appendix 4: *Image Load File Specifications*; Appendix 5: *Native File Specifications*.) A Producing Party may supplement the metadata fields set forth in Appendix 2 whenever the nature of the ESI file makes such supplementation appropriate for a complete production.

    C.  <u>Presumptive Sources of Extracted Text</u>

The presumptive source of extracted text shall be from the native file. Where a document image has been redacted and produced in a .TIFF format, OCR of the redacted image may be used to generate the source of searchable text. Similarly, where the native file does not contain a source of extractable text (*e.g.* a non-searchable PDF image file,) OCR may be used to generate the source of searchable text.

    D.  <u>Production Format for Hard Copy Documents</u>

In scanning and producing Hard Copy Documents that were Hard Copy Documents when this litigation was filed, such documents shall be unitized and organized as they are kept in the normal course of business. For Hard Copy Documents found in file folders and other containers that have labels or tabs or other identifying information, such labels and all sides of such file folders and tabs shall be scanned. In the case of an organized compilation of separate Hard Copy Documents – for example, a binder containing several separate Hard Copy Documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. For Hard Copy Documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document.  Hard Copy Documents will be unitized at the lowest possible level and attachment

information preserved. For example, if a folder contains two Hard Copy Documents, the folder and each document will constitute a separate document, but they will have the same attachment start and end. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document.

E.   Redactions and Production of Redacted Documents

To the extent that a responsive document contains information that is Protected Health Information (PHI), information protected by the Health Insurance Portability and Accountability Act (HIPAA), privileged information, or is otherwise specifically protected against disclosure by the Federal Rules or separate order of the Court, the producing Party may apply redactions to the TIFF image file and produce the document in redacted form.  Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted.  The corresponding native file of the document may be withheld from production.

If a redaction is made because of Protected Health Information, and the basis of such redaction is annotated (e.g., "PHI" or "Protected Health Information") on the redaction itself, such redaction need not be included in a party's privilege log. Otherwise, the basis for any redaction applied to a document image shall be reflected in a multi-value field in a load file. The Parties may apply redactions to the native version of a document, with any such redactions made in a substantially similar manner as is applicable to TIFF images, described above.

F.   Evidentiary Use Native Files

 Use of native files in an evidentiary proceeding or deposition shall be governed by a protocol to be entered separately.

G.   Enterprise Databases or Document Management Systems

If responsive information is identified in a party's enterprise or relational database (e.g. Oracle, SQL Server, DB2) or in a party's document management system, the parties shall first meet and confer in good faith regarding a protocol to achieve the purpose of the requested discovery.

Case 3:16-md-02738-MAS-RLS   Document 6989-1   Filed 08/07/18   Page 31 of 54 PageID:
Case 3:16-md-02738-FLW-LHG   Document 1958   Filed 05/22/17   Page 11 of 20 PageID: 3225
19458

## VI.    CONVEYANCE AND DELIVERY

A. A producing party will send a small test load file at the onset of its first document production to test the parameters discussed within this protocol for production format.

B. ESI productions shall be conveyed on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each item of Production Media should include: (1) the name of the producing party; (2) the production date; (3) a unique production volume name; (4) the Bates number range of the materials contained on such Production Media item; (5) the source of the documents for each Bates number range (i.e., custodian, information platform, etc.); (6) the name and contact information of a technical contact, preferably the person who generated the media item, so that in case of extraction issues the receiving party has a collaboration contact; and (7) any additional description of the items the producing party deems appropriate. The Production Media shall be accompanied by a transmittal letter identifying the above described information.

C. Producing parties shall maintain a running production log in spreadsheet format containing the above described information, plus any necessary encryption key associated with each Production Media. Upon the occasion of a physical conveyance of a production, an updated version of the production log shall be contemporaneously forwarded by electronic mail to persons designated by the requesting party. Encryption key information will not be contained in the physical conveyance of the Production Media.

## VII.    PRIOR PRODUCTIONS

To the extent available, ESI already processed and produced from existing sources in other litigation may be produced to the Requesting Party in this Litigation using the production protocol applicable in the case in which such ESI was originally produced. When, by separate agreement, a party is producing a production set previously made in other litigation matters, all previously assigned production numbers ("PRODBEG" or its equivalent document-unique identification

number) shall be included in the "PRIORPRODBEG" field described in Appendix 2 to the extent available from the original production. When a prior production set cannot, without the occurrence of undue burden or expense, be made to conform to every production format specification contained in Section VI, above, the parties shall meet and confer to discuss proposed deviations from the production format.

## VIII.   PROCESSING OF NON-PARTY DOCUMENTS

A.   A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

B.   The Issuing Party is responsible for producing to all other Parties any documents obtained pursuant to a subpoena to any non-Party in the form in which they were produced by the non-Party. To the extent practical given the data volume, productions by a non-Party should be produced by the Issuing Party to all other Parties within seven days of the non-Party's production to the Issuing Party.

C.   Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.


**IT IS SO ORDERED.**

Dated: _____5/22/17_____

_____
Hon. Lois H. Goodman, U.S.M.J.

**Appendix 1: TIFF Image File Specifications**

TIFF image files created for this litigation pursuant to this Order shall comport with the following specifications:

- The TIFF image file shall be a Group IV compression, black-and-white, single-page TIFF image file using a 300 x 300 dots-per-inch (DPI) optical scan resolution and an 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size.

- Original document orientation should be maintained (*i.e.* an original landscape document should be produced in landscape format).

- Each TIFF image file shall be branded with a legible, unique Bates number in the lower right corner, positioned so as not to interfere with reading the document. The Bates number shall: (1) be unique across the entire document production; (2) be a combination of an alphabetic prefix along with an 8-digit number (*e.g.* ABC00012345), wherein the numeric portion shall be zero-padded leftwards as needed to comprise 8 digits, (3) contain no special characters or embedded spaces, and (4) be numerically sequential within a given document. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be communicated to the receiving party.

- Confidentiality designations, if any, will be branded on the lower left corner of the applicable image, also positioned so as not to interfere with reading.

- The resulting TIFF image file shall be named according to the naming convention *number.TIF*, where "*number*" is the Bates number of the corresponding page. File names for these files shall not contain any special characters or embedded spaces.

- Image files shall be grouped in folders on the production media of no more than 1,000 TIFF files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders, and separate folders will not be created for each file.

## Appendix 2: Data Load File Specifications

The data load file is a delimited text file containing data about each document needed for use with standard litigation support software.

The file name of the data load file should contain the volume name of the production media, although additional description information may be provided after the volume name. For example, both "ABC001.dat" and "ABC001_metadata.dat" would be acceptable names for a data load file having a production volume named "ABC001." File names shall not contain any special characters or embedded spaces.

Unless other delimiters are specified, the data in each field should be separated using Concordance default delimiters. A semicolon should be used as a multi-entry separator. A carriage-return line-feed should be used to indicate the start of the next record.

The first line of the data load file must contain each field name, separated by a delimiter, corresponding to the order in which the data appears in the file.

Load files should not span across media (*e.g.* CDs, DVDs, hard drives, etc.); a separate volume should be created for each piece of media delivered.

Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

Metadata Fields to be Included in the Data Load File

For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file except to the extent that a document or electronic file has been produced with redactions.

The term "Scanned Docs" refers to documents that are in paper form at the time of collection and have been scanned into *.tif images (i.e., "Hard Copy Documents" as defined above.) The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

The following fields are not exclusive and should be supplemented by a producing party with available metadata whenever appropriate or when otherwise consistent with this protocol, including data fields exported from a database or Document Management System.

Case 3:16-md-02738-FLW-LHG   Document 256   Filed 05/22/17   Page 15 of 20 PageID: 3229

| Field Name | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file |
| OTHERCUSTODIANS | Jones, David; Williams, Robert | N/A | Yes | Additional Custodian(s) that possessed de-duplicated document or electronic file—multiple custodians separated by semicolon |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e- doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file. |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |

| Field Name | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| CONFIDENTIALITY | CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| REDACTION | REDACTED | Yes | Yes | User-generated field indicating whether a document was redacted. |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| NATIVEPATH | Natives\001\001\ABC00000001.xlsx | N\A | Yes | Path to files supplied in native format. |

| Field Name | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| MD5 HASH | 30999747f4e6d7b ef786e614ff2cf4b0 | N/A | Yes | MD5 Hash for electronic document |
| REPLACEMENT | REPLACEMENT | Yes | Yes | "Replacement" indicates the image is a replacement for a previously produced image; otherwise blank. |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| PRIORPRODBEG | DEF00000001; RST00000463; XYZ00002136 | Yes | Yes | Other identifying production numbers that have been assigned to the record in previous productions; separated by a semi-colon. |

## Appendix 3: Searchable Text File Specifications

- The document level searchable text file will contain any text in the respective document, omitting any text redacted from the produced document.

- The file naming convention for the text file shall be in the form number.TXT, where "number" is the same Bates number as the Beginning Production Number for the first page of the respective document images. File names shall not contain any special characters or embedded spaces.

- The full path and file name of the text file must be provided in the data load file as specified in Appendix 2.

- OCR text for scanned images of paper documents should be generated by applying optical character recognition processes to the image of the document. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR shall be performed on a document level and provided in document-level text files. OCR text should not be delivered in the data load file or any other delimited file.

- For electronic files, searchable text shall be extracted from the native file and included in the text file. If the electronic file has no extractable text (*e.g.* a non-searchable PDF image file), the document will be OCR'd, and file-level OCR text will be provided in lieu of extracted text. Extracted text shall likewise be produced in document-level text files.

**Appendix 4: Image Load File Specifications**

- The image load file should be a Standard Opticon formatted load file (.opt text file) with ANSI/Western European encoding that references the Control ID on a page level consistent with ingestion into the kCura Relativity® review platform. The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (*e.g.* ABC001.OPT). File names shall not contain any special characters or embedded spaces.

- The volume names should be consecutive (*e.g.* ABC001, ABC002, etc.).

- Every image in the delivery volume should be contained in the image load file, one row in the load file per TIFF image. The total number of documents referenced in the image load file should match the total number of designated documents in the data load file for that production.

- Load files should not span across media (*e.g.* CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

**Appendix 5: Native File Specifications**

- The file naming convention for the native file shall be in the form number.EXT, where "number" is the first page Bates number for the corresponding TIFF image and "EXT" is the original native file extension (i.e., *.doc, .xls, .ppt*, etc.) File names shall not contain any special characters or embedded spaces.

- The full path and file name of the native file must be provided in the data load file as specified in Appendix 2.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY
LITIGATION

-------------------------------------------------

Civil Action No. 3:16-md-2738-FLW-LHG

MDL No. 2738

## CASE MANAGEMENT ORDER NO. 11
(Deposition Guidelines)

This Order shall govern the conduct of depositions of fact witnesses and experts for (1) cases directly filed in this Court pursuant to this Court's Direct Filing Order of CMO 2; (2) cases transferred to this Court by the Judicial Panel on Multidistrict Litigation; (3) any tag-along action subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation; and (4) all related cases originally filed in this Court or transferred or removed to this Court.

## I.   GENERAL PROVISIONS

### A.   Cooperation at Deposition

1.   Counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions.

2.   Counsel are reminded that the Courts consider depositions to be official court procedures and the conduct of all participants in depositions shall be in accordance with the customs and practices expected of lawyers and witnesses appearing before these Courts, as if each was appearing personally before the Courts at the time of the depositions.  Counsel shall not at any time conduct himself or herself in a manner not becoming an officer of the Court and not in full

compliance with the civil rules of practice and all other orders of the Courts.  Neither counsel nor witnesses shall, at any time, engage in conduct that impedes, delays, or frustrates the examination of the witness.  All counsel and the deponent must be treated with civility and respect.

**B.**     **Attendance**

3.     <u>Who May be Present</u>:  Unless otherwise ordered under Fed. R. Civ. P. 26(c) or otherwise agreed to by the PSC or Defense Lead or Liaison Counsel, depositions may be attended in person only by counsel of record in this MDL or state court Talc counsel of record  and employees of their firms who are assisting in the litigation and whose presence is reasonably required by the attorney, attorneys specially engaged by a party for purposes of the deposition, the parties or the representative of a party (including in-house counsel), court reporters, videographers, the deponent and counsel for the deponent.  Upon application, and for good cause shown, the Court may permit attendance by a person who does not fall within any of the categories set forth in the preceding sentence.   While the deponent is being examined about any stamped confidential document or the confidential information contained therein, persons to whom disclosure is not authorized under an MDL – 2592 Protective Order shall be excluded from the deposition.

4.     <u>Unnecessary Attendance</u>:  Unnecessary attendance by counsel is discouraged. Counsel who have only marginal interest in a proposed deposition or who expect their interests to be adequately represented by other counsel should elect not to attend.

5.     <u>Notice of Intent to Attend a Deposition</u>:  In order to make arrangements for adequate deposition space, Liaison Counsel for each party shall confer regarding the expected attendance in advance of the deposition.  Ten days prior to the deposition, the noticing party shall provide the number of attendees.

**II.**     **CONDUCT OF DEPOSITIONS**

**A.**     **Duration**

#9703821.14(164320.003)

6.      The time limitations imposed by Fed. R. Civ. P. 30(d)(1)—one (1) day of seven (7) hours—shall be the prima facie limitation on the duration of depositions in the MDL, unless the parties agree to a different time limitation or the Court establishes a different time limitation. However, because many witnesses of defendants to be deposed are legacy witnesses, who may possess information that spans decades, a limitation of one (1) day of seven (7) hours for the duration of the deposition of such witnesses may be  insufficient time. Accordingly, as to such legacy type witnesses being deposed or where the deposition has been cross-noticed, the plaintiffs reserve the right to depose such witnesses for a duration that is longer than one (1) day of seven (7) hours. The parties shall make a good faith effort to reach agreement on the precise amount of duration of a legacy witness' or cross-noticed deposition, and upon the parties failing to reach an agreement, the issue shall be presented in the first instance to Special Master Pisano for resolution. Where a deposition is cross-noticed and state court counsel desire to question, the parties shall coordinate and cooperate to avoid duplicate questioning of the witness.

7.      The MDL litigants shall attempt to address disputes related to depositions by raising same with Special Master Pisano in the form that he desires, unless the timing of a forthcoming deposition or other event does not permit.

8.      To the extent that a party other than the noticing party conducts a direct examination, the noticing party may conduct a re-cross for the same amount of time used by the non-noticing party.

B.      **Means of Recording**

9.      Stenographic Recording:  A certified Court reporter shall stenographically record all deposition proceedings and testimony with "real time feed" capabilities.  The Court reporter shall administer the oath or affirmation to the deponent.  A written transcript by the Court reporter

3

shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) and similar state court rules addressing filing, retention, certification and the like.

10.   Deposition notices shall state whether the deposition is to be videotaped.

11.   Each side shall bear its own costs in securing copies of the deposition transcript, videotape or DVD.

12.   Subject to the terms of the Protective Order entered in these proceedings, any party may at its own expense obtain a copy of the videotape and the stenographic transcript by contacting the court reporter.

13.   The party requesting videotaping of the deposition shall bear the expense of both the videotaping and the stenographic recording.

14.   <u>Videotape Operator</u>: The operator(s) of the videotape recording equipment shall be subject to the applicable provisions of Fed. R. Civ. P. 28 and similar state court rules.

15.   <u>Swearing The Witness</u>: At the commencement of the deposition the operator(s) shall swear or affirm to record the proceedings fairly and accurately. The operator(s) shall produce both video and DVD formats of each deposition.

**C.**   **Scheduling and Notice of Deposition**

16.   Individuals to be deposed should be given a reasonable amount of advance notice of the date of the deposition. All notices propounded pursuant to Fed. R. Civ. P. 30(b)(6) must give the witness to be deposed adequate time to prepare himself or herself on the subject matter of the deposition.

17.   If a defendant in this MDL anticipates that it will cross notice a deposition in this MDL, the defendant shall make reasonable efforts to consult with PSC counsel in an effort to schedule the deposition at a mutually agreeable time and place, and in a manner that shall accommodate the PSC's examination of the witness.

4

18.     Any Deposition Notice served pursuant to Fed. R. Civ. P. 45 will attach this Deposition Protocol.

19.     Each deposition notice shall include the name, address and telephone number of an attorney point of contact designated by the party noticing the deposition as well as the date, time and place of the deposition.  The deposition notice shall generally be served thirty (30) days prior to a scheduled deposition; said notice shall not be filed on the Court docket.

20.     Plaintiffs' counsel in the MDL shall use best efforts to coordinate the scheduling and taking of depositions.  Prior to issuing a deposition notice, absent extraordinary circumstances, counsel should consult in advance with opposing counsel and counsel for the proposed deponents in an effort to schedule depositions at mutually convenient times and locations.  Counsel are expected to cooperate and coordinate the scheduling of depositions.

21.     After counsel, through consultation, have arrived on a mutually acceptable date and location for a deposition, the Noticing Party shall serve an amended Notice (if necessary) reflecting the agreed upon date and location; said notice shall not be filed on the Court docket.

**D.     Deposition Day**

22.     A deposition shall commence at 9:00 a.m. Modest variations in this schedule may be made by agreement of counsel who noticed the deposition and counsel for the witness.  There shall be at least a 15 minute morning break and a 15 minute afternoon break, with one (1) hour for lunch.  Additional reasonable breaks may be taken, in which case the end time may be extended accordingly.  Counsel should be efficient in depositions.

23.     Objections Preserved Until Time Of Trial: All objections, except those as to form and privilege, are reserved until trial or other use of the depositions.

24.     Objection By One Is For All: Any objection made at a deposition shall be deemed to have been made on behalf of all other parties.

5

#9703821.14(164320.003)

25.    No Speaking Objections: Counsel shall refrain from engaging in colloquy during deposition. The phrase "objection as to form" or similar language shall be sufficient to preserve all objections as to form until the deposition is sought to be used. If requested, the objecting party shall provide a sufficient explanation for the objection to allow the deposing party to rephrase the question. No speaking objections are allowed and professionalism is to be maintained by all counsel at all times. Counsel shall not make objections or statements which might suggest an answer to a witness. Counsel shall use best efforts to not engage in repetitive questioning.

26.    Limited Instruction To Not Answer: Counsel shall not direct or request that a witness refuse to answer a question unless that counsel has objected to the question on the ground that the question seeks privileged information or a deponent or his or her counsel intend to present a motion to the Court for termination of the deposition on the ground that it is being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass or oppress the party or deponent, or to discover evidence that the deponent's counsel believes is not discoverable.

27.    Consulting With Witness During Deposition: Private consultations between deponents and their attorneys during the actual taking of the deposition are improper, except for the purpose of determining whether a privilege should be asserted. Unless prohibited by the Court for good cause shown, consultations may be held during normal recesses, adjournments, or if there is a break in the normal course of interrogation and no questions are pending.

28.    Objections To Documents: Objections to the admissibility of documents are not waived and are reserved for later ruling by the Court or trial judge. A party need not "move" the admission of a document in a deposition to preserve its use at trial.

29.    Authenticity Of Documents: Any objection to the authenticity of an exhibit used in the deposition must be made by defendants within 30 days of the deposition or the exhibit will

6

#9703821.14(164320.003)

be deemed to be authentic.  If a defendant subsequently obtains information that an exhibit is not authentic, it will promptly notify the PSC.  All parties shall cooperate as necessary so that the Court may issue a ruling on any objection to a document on the grounds of authenticity prior to trial or prior to any remand of cases prior to trial in the transferor courts.  If more than 75 exhibits are used at a deposition, the parties shall meet and confer on a schedule for raising objections to authenticity.

### E.   Location of Depositions

30.   The Court expects counsel to mutually agree upon deposition locations.  In the absence of agreement, depositions of witnesses located in the United States will take place in the deponent's home district, within a reasonable proximity to the deponent's residence or place of work, or at such other location as is agreed to by them and the deponent.  The location of the deposition shall be as consistent as possible within each city so that videotape equipment, if being used, can be left in place.

### F.   Coordination with State Actions

31.   Except for expert depositions to which this paragraph shall not apply, plaintiffs' counsel in the MDL shall use their best efforts to coordinate the scheduling of depositions with state court plaintiffs in order to minimize the number of times that a witness shall appear for a deposition.  In a coordinated deposition, the Court expects counsel for plaintiffs in the MDL and plaintiffs' counsel in a coordinated state court proceeding to cooperate in selecting a primary examiner and equitably dividing the time.  Upon conclusion of the examination by the primary examiner, other counsel may ask non-duplicative additional questions prior to the completion of the deposition, pursuant to the provisions contained in II. of this Order.  It is the intent of this Order that counsel for MDL Plaintiffs shall be the primary examiner in depositions coordinated with a state court proceeding.

7

G.      **Cross-Noticing**

32.      The parties and all courts desire to minimize the expense and inconvenience of this litigation by, inter alia, providing for a single deposition of witnesses within the time limits set forth in this Order in all litigations relating to talc products. Any witness deposition noticed in this MDL proceeding may be cross-noticed by any party in any related action pending in any state court and vice versa.  To the extent practicable, the parties shall endeavor to allow for full participation by all jurisdictions in each deposition.  To the extent modifications to this section of the Protocol are required for expert witness depositions, the parties shall meet and confer to tailor the provisions as required by good cause.

33.      If a deposition originally noticed in this MDL proceeding has been cross-noticed in another state court subject to this Order, then a party may not take a subsequent deposition of that witness over objection of the opposing party or the witness except for good cause shown.  Nothing herein shall preclude Defendants from opposing repeated depositions of corporate representatives or other witnesses.  Any disputes among the parties of this MDL under this provision shall be resolved, and good cause determined by the MDL court.  Any subsequent deposition shall be restricted to such additional inquiry stipulated to by the parties or as permitted by the courts.

H.      **Postponement**

34.      Once a deposition has been scheduled, it shall not be taken off the calendar, rescheduled or relocated less than three (3) calendar days in advance of the date it is scheduled to occur, except upon agreement between Lead and/or Liaison Counsel for each side or counsel for the witness (if the witness is not a party or a current or former employee) or by leave of Court for good cause.

#9703821.14(164320.003)

I.      **Disputes During or Relating to Depositions**

35.     If a dispute arising during a deposition requires expedited consideration the party requesting the intervention of the Court will send a short email to Special Master Pisano at jpisano@walsh.law stating as follows: "The parties to the Talc MDL request your assistance resolving a dispute in connection with an ongoing deposition, and request a time to confer with Special Master Pisano by telephone, at his earliest convenience." The party requesting assistance shall provide Special Master Pisano with a brief, non-argumentative description of the dispute that needs resolution. The email shall be copied to lead counsel present at the deposition and to the designated lead and liaison counsel in the MDL. The email shall include the best telephone number(s) at which to reach the counsel involved in the deposition in which there is a dispute. After receipt of the email, Special Master Pisano will endeavor to initiate a telephone conference between Special Master Pisano and counsel as soon as possible.  To the extent the parties can continue to proceed with the deposition on other matters while awaiting a response from  Special Master Pisano, they shall do so, provided however, if the deposition cannot continue to proceed until the dispute is resolved, the deposition may be recessed pending the resolution of the dispute. Nothing herein shall act as a waiver of the right of state court litigants to have their disputes resolved under their own state law by their state court judge.

J.      **Documents Used in Connection with Depositions**

36.     Production Of Documents:   Third-party witnesses subpoenaed to produce documents shall, to the extent possible, be served with the document subpoena at least thirty (30) calendar days before a scheduled deposition, with a copy of the subpoena served as required by Fed. R. Civ. P. 45.  Depending upon the quantity of documents to be produced, some time may be needed for inspection of the documents before the examination commences.

9

#9703821.14(164320.003)

37.    <u>Marking Exhibits</u>: The first time a document is marked as a deposition exhibit, it shall be referred to by the Bates number appearing on the document. Documents that have not been previously produced shall be assigned a Bates number from a range of numbers reserved for this purpose. Thereafter, the exhibit shall be referred to by its deposition exhibit number. Counsel shall use reasonable efforts to mark exhibits sequentially and shall attempt to use the previously marked exhibit number in subsequent depositions rather than re-marking the same exhibit with different exhibit numbers.

38.    As directed by the Court at the March 6, 2018 Status Conference, as exhibits to any 30(b)(6) deposition notice, counsel shall forthwith produce representative documents to provide clarity to the topics for which a 30(b)(6) deponent is being requested.

39.    <u>Copies</u>:  A copy of any document about which examining counsel expects to question the deponent should ordinarily be provided to the reporter, the deponent, primary counsel. Extra copies of documents about which deposing counsel expects to examine a deponent should be provided to primary counsel for the parties and the deponent during the course of the deposition.

**K.    <u>Video Depositions</u>**

40.    By so indicating in its notice of a deposition, a party may record a deposition by videotape or digitally-recorded video pursuant to Fed. R. Civ. P. 30(b)(3) subject to the following rules:

41.    <u>Video Operator</u>:  The operator(s) of the video record equipment shall be subject to the provisions of Fed. R. Civ. P. 28(c).  At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

10

42.    Index:  The videotape operator shall use a counter on the recording equipment and after completion of the deposition shall prepare a log, cross-referenced to counter numbers, that identifies the depositions on the tape at which examination by different counsel begins and ends, at which objections are made and examination resumes, at which exhibits are identified, and at which an interruption of continuous tape-recording occurs, whether for recesses, "off-the-record" discussions, mechanical failure, or otherwise.

43.    Attendance:  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.

44.    Standards:  Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed.  To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background with only such lighting as is required for accurate video recording.  Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent.  Sound levels will be altered only as necessary to record satisfactorily the voices of counsel and the deponent.  The witness shall appear in ordinary business attire (as opposed to, for instance, a lab coat).

45.    Additional Cameras:  Any party, at its own expense and with notice 48 hours in advance of the deposition to opposing counsel, may arrange for additional cameras to film the attorneys examining and defending the deposition.  If more than one camera is employed, the party arranging for the additional cameras shall pay for the expense of synchronization of the videotapes from the additional cameras if the party intends to show videotape from the additional cameras at trial.  Nothing in this order shall be construed as a ruling whether the videotapes of the lawyers

11

may be shown at trial. Counsel's objections to showing the videotape of counsel at the time of trial are reserved.

46.     <u>Filing</u>: After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a stenographic court reporter, and file a true copy of the videotape, the transcript, and certificate with Liaison Counsel for whomever noticed the deposition.

47.     <u>Technical Data</u>: Technical data such as recording speeds and other information needed to replay or copy the tape shall be included on copies of the videotaped deposition.

**L.     Telephone Depositions**

48.     By indicating in its notice of deposition that it wishes to conduct the deposition by telephone, a party shall be deemed to have moved for such an order under Fed. R. Civ. P. 30(b)(4). Unless an objection is filed and served within ten (10) calendar days after such notice is received, the Court shall be deemed to have granted the motion. Other parties may examine the deponent telephonically or in person. However, all persons present with the deponent shall be identified in the deposition and shall not by word, sign or otherwise coach or suggest answers to the deponent. The court reporter shall be in the same room with the deponent.

**M.     Correcting and Signing Depositions**

49.     Unless waived by the deponent, the transcript of a deposition shall be submitted to the deponent for correction and signature, and shall be corrected and signed within thirty (30) days after receiving the final transcript of the completed deposition. If no corrections are made during this time, the transcript will be presumed accurate.

50.     Parties in jurisdictions where rules do not provide for correction and signing of a deposition transcript reserve their objections to corrections made pursuant to this procedure.

**III.     USE OF DEPOSITIONS**

#9703821.14(164320.003)

51.     Depositions of Defendants' current and former employees conducted in this MDL or in any state court may be used in related cases in this MDL or any state Court to the extent permitted by applicable federal rules or that state's laws and rules. Depositions may, under the conditions prescribed in Fed. R. Civ. P. 32(a)(1) - (4) or as otherwise permitted by the Federal Rules of Evidence, be used by or against any party (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court as part of this litigation):

      a)    who is a party to this litigation;

      b)    who was present or represented at the deposition; or

      c)    who was served with prior notice of the deposition or otherwise had reasonable notice thereof.

## IV.   TIMING OF TRIAL PRESERVATION DEPOSITION AFTER DISCOVERY DEPOSITIONS.

52.     To the extent defendants wish to conduct a "preservation" deposition for trial of a current or former employee or a consultant, the PSC shall be afforded reasonable  notice of the intent to take the preservation deposition and an opportunity to take a discovery deposition of that witness if a discovery deposition has not already been taken in this MDL. In the event the PSC chooses to take a discovery deposition of the witness, the preservation deposition to be taken by defendants shall not commence any sooner than seventy-two (72) hours after the completion of the discovery deposition.

## V.    SUPPLEMENTAL DEPOSITIONS.

53.     The initial noticed deposition shall be presumed to be the complete deposition for discovery purposes barring exceptional circumstances. In the event a party seeks to re-depose a fact witness, the parties shall meet and confer regarding the request for a second deposition. If the parties are unable to reach an agreement, the party requesting the deposition may move the Court

13

for an order permitting the deposition. The parties shall attempt to address disputes related to depositions by presenting a letter brief on the issue in the first instance to Special Master Pisano, unless the timing of a forthcoming deposition or other event does not permit.

## VI.   **CUSTODIAL FILES**

54.   This paragraph does not apply to 30(b)(6) depositions or expert depositions. As to the non-30(b)(6) depositions of other witnesses who are current or former employees of the Defendants, if the last production of the deponent's custodial file was made more than one year before the date noticed for the deposition, then the Defendants will update the custodial file production. Defendants will have at least 45 days from the date of the notice to supplement. If the documents for the deponent's custodial file were never produced, then the parties will meet and confer as to the need to produce and if there is to be a production, Defendants will have at least 60 days to produce. Defendants will provide a Rule 26(g) statement as to custodial productions made pursuant to this paragraph. If the last custodial file production was made within a year, there is no obligation to supplement and, if not previously provided, Defendants will provide a Rule 26(g) statement with regard to the production as of the time of the last production.

Trenton, This _____ day of May, 2018

_____
UNITED STATES DISTRICT JUDGE

#9703821.14(164320.003)