# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------X
SANDRA JIMINEZ,                              Index No.
                                             Date of Filing:
                    Plaintiff,

        - against –

                                             **SUMMONS**
DUANE READE, INC.;
                                             Plaintiff designates
IMERYS TALC AMERICA, INC., f/k/a             KINGS COUNTY
LUZENAC AMERICA, INC.;                       as the Place of Trial

JOHNSON & JOHNSON, INC.;                     Plaintiff resides at:
                                             37-08 Union Street
JOHNSON & JOHNSON CONSUMER                   Apt. 510
COMPANIES, INC.                              Flushing, NY 11354

                    Defendants.
----------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANTS:**

        *You are hereby summoned* to answer in this action and to serve a copy of your
answer, or, if the complaint is not served with this summons, exclusive of the day of service
(or within 30 days after the service is complete if this summons is not to personally
delivered to you within the State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the
complaint.


Dated: New York, New York
       April 6, 2018

                            PHILLIPS & PAOLICELLI, LLP
                            *Attorneys for Plaintiff*


                            _____
                            Daniel J. Woodard
                            Brendan J. Tully
                            James A. Plastiras
                            747 Third Ave. 6th Fl.
                            New York, NY 10017
                            (212) 388-5100


{00037512}

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 3 of 41 PageID: 20040

TO:

**DUANE READE, INC.**
C/O Corporation Service Company
80 State Street
Albany, NY, 12207-2543

**JOHNSON & JOHNSON, INC.**
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**IMERYS TALC AMERICA INC. f/k/a
LUZENAC AMERICA INC and
UNITED SIERRA TALC CO.**
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

**JOHNSON & JOHNSON CONSUMER,
INC.**
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

{00037512}

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------X
SANDRA JIMENEZ,                                          Index No.
                                                        Date of Filing:
                        Plaintiff,

            - against –

                                                        **VERIFIED COMPLAINT**
DUANE READE, INC.;

IMERYS TALC AMERICA, INC., f/k/a
LUZENAC AMERICA, INC.;                                  Plaintiff demands trial by jury

JOHNSON & JOHNSON;

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC..

                        Defendants.
-----------------------------------------------------X


*TO THE ABOVE NAMED DEFENDANTS:*

        COMES NOW Plaintiff, by and through her undersigned counsel, and for her

causes of action against Defendants Duane Reade Inc., Imerys Talc America, Inc., f/k/a

Luzenac America Inc., Johnson & Johnson; and Johnson & Johnson Consumer

Companies, Inc., alleging the following upon information and belief (including

investigation made by and through Plaintiff's counsel), except those allegations that

pertain to Plaintiff, which are based on personal knowledge:


INTRODUCTION

        1.      All claims in this action are a direct and proximate result of Defendants'

and/or their corporate predecessors negligent, willful, and wrongful conduct in connection

with the design, development, manufacture, testing, packaging, promoting, marketing,

{00037512}                              1

distribution, labeling, and/or sale of the product known as Johnson & Johnson Baby Powder and Johnson & Johnson Shower To Shower Talcum Powder (hereinafter "the PRODUCTS"). Plaintiff in this action seeks recovery for damages as a result of developing ovarian cancer, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of talcum powder, and the attendant effects of developing ovarian cancer. All of the claims in this action involve common legal and medical issues.

## PARTIES

2.      Plaintiff Sandra Jimenez is a citizen of the City of Queens, State of New York. At all pertinent times, including from approximately 1983 to 2004, Plaintiff Sandra Jimenez purchased and applied Defendant Johnson & Johnson's talcum powder daily in the State of New York, including King's County while she lived there. Plaintiff repeatedly and regularly purchased the PRODUCTS from Defendant Duane Reade, Inc. In or around June 2015, Plaintiff Sandra Jimenez was diagnosed with ovarian cancer, which developed in the State of New York. Plaintiff Sandra Jimenez received treatment in Brooklyn, New York. Plaintiff Sandra Jimenez developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Sandra Jimenez has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sandra Jimenez has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Sandra Jimenez applied talcum powder in the State of New York.

{00037512}                                    2

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 6 of 41 PageID: 20043

3.      The Defendant, Duane Reade, Inc. is a Delaware corporation with is principal place of business in the State of New York

4.      At all pertinent times, Duane Reade, Inc. was engaged in the business of promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Duane Reade, Inc. regularly transacted, solicited, and conducted business in the State of New York.

5.      The Defendant, Imerys Talc America, Inc. f/k/a Luzenac America, Inc., is a Delaware corporation with its principal place of business in the State of California.

6.      At all pertitent times, Imerys Talc America, Inc. f/k/a Luzenac America, Inc., has been in the business of mining and distributing talcum powder for use in talcum powder based products, including the PRODUCTS, in all States of the United States, including the State of New York. Imerys Talc is the successor or continuation of Luzenac America, Inc. and Imerys Talc America, Inc. is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.

7.      The Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in the State of New Jersey.

8.      At all pertinent times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of New York.

9.      The Defendant, Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.

{00037512}                          3

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 7 of 41 PageID: 20044

10.     At all pertinent times, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Johnson & Johnson Consumer Companies, Inc. regularly transacted, solicited, and conducted business in all States of the United States, including the State of New York.

11.     At all pertinent times, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of the PRODUCTS, and introduced such PRODUCTS into interstate commerce with knowledge and intent that such PRODUCTS be sold in the State of New York.

**VENUE**

12.     Venue is proper because substantial parts of the events or omissions giving rise to the claim occurred in King's County.

**ALLEGATIONS COMMON TO ALL COUNTS**

13.     Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. The Defendants, Imerys Talc America, Inc., f/k/a Luzenac America, Inc., mined the talc contained in the PRODUCTS.

14.     Talc is the main substance in talcum powders. The Johnson & Johnson Defendants manufactured the PRODUCTS. The PRODUCTS are composed almost entirely of talc.

15.     At all pertinent times, Defendant Duane Reade, Inc. sold the PRODUCTS manufactured by the Johnson & Johnson Defendants and Plaintiff Sandra Jimenez purchased the PRODUCTS from stores that were owned and operated by Defendant Duane Reade, Inc..

16.     At all pertinent times, feasible alternatives to the PRODUCTS existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses as talc with nearly the same effectiveness.

17.     Imerys Talc[1] has continually advertised and marketed talc as safe for human use.

18.     Imerys Talc supplies customers with material safety data sheets for talc. These material safety data sheets are supposed to convey adequate health and warning information to its customers.

19.     Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness", helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild". The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors. The container of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

20.     During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan "A sprinkle a day keeps odor away", and through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to

---

[1] All allegations regarding actions taken by Imerys talc also include actions taken while that entity was known as Luzenac America, Inc.

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 9 of 41 PageID: 20046

feel dry, fresh, and comfortable throughout the day." and "SHOWER to SHOWER can be used all over your body."

21.    The Plaintiff used the PRODUCTS to dust her perineum for feminine hygiene purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

22.    In 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

23.    In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk in ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about ovarian cancer risks so that women can make an informed decision about their health.

24.    Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital and/or perineal talc use in women.

25.    In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

{00037512}                                          6

Case 3:16-md-02738-MAS-RLS Document 7186-2 Filed 09/05/18 Page 10 of 41 PageID: 20047

26.     In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer.

27.     On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies as far back as 1960's ". . . show[ ] conclusively that the frequent use of talcum powder in the genital area pose[ ] a serious health risk of ovarian cancer." The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate.

{00037512}                                   7

The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about ovarian cancer risk they pose.

28.    In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

29.    In February of 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen. IARC which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%. IARC concluded with this "Evaluation": "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder." By definition "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

30.    In approximately 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A", "very toxic", "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A" a cancer causing substance.

31. In 2006, Imerys Talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them to be used in the PRODUCTS. These MSDSs not only provided the warning information about the IARC classifications but also including warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

32. The Defendants had a duty to know and warn about the hazards associated with the use of the PRODUCTS.

33. The Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the use of its PRODUCTS.

34. In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding talc.

35. As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Plaintiff was injured and suffered damages, namely ovarian cancer, which required surgeries and treatments.


## FIRST CAUSE OF ACTION – STRICT LIABILITY FOR FAILURE TO WARN
### (All Defendants)

36. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

{00037512}

9

37.     At all pertinent times, Imerys Talc mined and sold talc to the Johnson &
Johnson Defendants, which it knew that Johnson & Johnson was then packaging and
selling to consumers as the PRODUCTS and it knew that consumers of the PRODUCTS
were using it to powder their genital and/or perineal regions.

38.     At all pertinent times, the Johnson & Johnson Defendants were
manufacturing, marketing, testing, promoting, selling and/or distributing the PRODUCTS
in the regular course of business.

39.     At all pertinent times, Duane Reade, Inc. marketed, promoted, sold and/or
distributed the PRODUCTS in the regular course of business.

40.     At all pertinent times, Plaintiff used the PRODUCTS to powder her genital
and/or perineal area which is a reasonably foreseeable use.

41.     At all pertinent times, all Defendants in this action knew or should have
known that the use of talcum powder based products in the genital and/or perineal area
significantly increases the risk of ovarian cancer based upon scientific knowledge dating
back to the 1960s.

42.     At all pertinent times, including the time of sale and consumption, the
PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an
unreasonably dangerous and defective condition because they failed to contain adequate
and proper warnings and/or instructions regarding the increased risk of ovarian cancer
associated with the use of the PRODUCTS by women to powder their genital and/or
perineal area. Defendants themselves failed to properly and adequately warn and instruct
Plaintiff as to the risks and benefits of the PRODUCTS given Plaintiff's need for this
information.

{00037512}                                    10

43.     Had the Plaintiff received a warning that the use of the PRODUCTS would have significantly increased her risk of ovarian cancer, she would not have used the same. As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the PRODUCTS, Plaintiff has been injured catastrophically, and has been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

44.     The development of ovarian cancer by the Plaintiff was the direct and proximate result of the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings which, as a result Plaintiff has suffered injuries and damages, including but not limited to, conscious pain and suffering of Plaintiff, medical expenses and lost wages.

45.     The Defendants' PRODUCTS were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which the Plaintiff justifiably relied in electing to use the PRODUCTS. The defect or defects made the PRODUCTS unreasonably dangerous to those persons, such as Plaintiff, who could reasonably be expected to use and rely upon such PRODUCTS and the warnings provided by the Defendants. As a result, the defect or defects and the failure to appropriately warn of the dangers and increased risk of ovarian cancer with the PRODUCTS use when Defendants knew of these dangers were a producing cause and/or substantial factor in causing the Plaintiff's injuries and damages.

46.     The Defendants' PRODUCTS failed to contain, and continue to this day do not contain, adequate warnings and/or instructions regarding the increased risk of ovarian

{00037512}                                  11

cancer with the use of their PRODUCTS by women. The Defendants continue to market, advertise, and expressly represent to the general public that it is safe for women to use their product regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960's that their PRODUCTS increase the risk of ovarian cancer in women when used in the perineal area.

47.     By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

48.     That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

49.     That this action falls within one or more of the exceptions set forth in CPLR 1602.

50.     Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

51.     Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

{00037512}                          12

52.     Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

53.     Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

54.     Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

55.     Pursuant to CPLR Section 1602(11), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

56.     By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has

Case 3:16-md-02738-MAS-RLS Document 7186-2 Filed 09/05/18 Page 17 of 41 PageID: 20054

been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

57.     By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## SECOND CAUSE OF ACTION– STRICT LIABILITY FOR DESIGN DEFECT
### (Johnson & Johnson Defendants)

58.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

59.     At all pertinent times, Defendants mined, produced, possessed, designed, manufactured, marketed, supplied, delivered, distributed, used, purchased, imported, exported, converted, compounded, removed, sold or otherwise placed into the stream of commerce the PRODUCTS in a defective, unsafe and unreasonable dangerous condition, and said PRODUCTS were expected to and did reach users, handlers and other persons coming into contact therewith without substantial change in the condition including Plaintiff in which they left Defendants' possession.

60.     Defendants' PRODUCTS did not contain warnings and/or information concerning the dangers posed to persons using, handling or otherwise coming into contact therewith including, but not limited to, an increase risk of ovarian cancer.

61.     Defendants' PRODUCTS did not contain adequate and correct warnings or instructions regarding safety precautions to be observed by users, handlers and persons who would foreseeably use or otherwise come into contact with said PRODUCTS.

{00037512}                                           14

62.     At all pertinent times, Defendants' PRODUCTS were not reasonably safe due to the substantial likelihood of harm including the increased risk of ovarian cancer.

63.     At all pertinent times, Defendants' PRODUCTS were being employed for the purpose and in the manner that was intended and foreseeable. The defects of Defendants' PRODUCTS were not discoverable by Plaintiff through the exercise of reasonable case, the dangers of said PRODUCTS were not perceivable by Plaintiff, and the Plaintiff would not have otherwise averted her injuries by the exercise of reasonable care.

64.     At all pertinent times, Defendants' PRODUCTS were defective and dangerous at the time they left defendant's possession, as they contained a latent defect and were harmful, poisonous and deleterious.

65.     Defendants knew or otherwise expected that their PRODUCTS would reach the ultimate users, including Plaintiff, without substantial change from, or altercation of, the condition in which said PRODUCTS were originally mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, used purchased, imported, exported, converted, compounded, removed or sold.

66.     Defendants knew or in the exercise of reasonable diligence should have ascertained that Plaintiff and others similarly situated would be the ultimate users or consumers of Defendant's PRODUCTS and would be exposed to the PRODUCTS therefrom.

67.     Defendants knew that their PRODUCTS would be used without inspection for defects and, by placing them in the marketplace, represented to the public at large,

including Plaintiff, that said PRODUCTS could be utilized safely in the manner and for the purpose for which they were intended.

68.     Defendants knew that their PRODUCTS were defective and were incapable of being made safe for their ordinary, intended and foreseeable uses and purposes and that these defects were not discoverable by Plaintiff, or others similarly situated, in the exercise of reasonable case. The dangers and hazards of said PRODUCTS were not perceivable to Plaintiff such that she might otherwise have averted her injuries by the exercise of reasonable care.

69.     In light of the foregoing, the ordinary and foreseeable use of Defendants' PRODUCTS constituted a dangerous and hazardous activity and placed the ultimate users, including Plaintiff, at an unreasonable risk of harm and injury.

70.     The risks and dangers created by the use of Defendant's PRODUCTS outweighed their utility.

71.     The Defendants failed to implement or use the reasonable alternative design that was easily available at the time of manufacture, and would have prevented the injury by removal or substitution of the causal defect and made the product safe for its intended purpose.

72.     As a consequence of the defects of Defendants' PRODUCTS and Plaintiff's resultant exposure to talc resulting from the ordinary and foreseeable use of said PRODUCTS, Plaintiff has sustained serious and permanent injuries and damages as more fully described herein.

{00037512}                          16

Case 3:16-md-02738-MAS-RLS Document 7186-2 Filed 09/05/18 Page 20 of 41 PageID:
20057

73. Plaintiff's injuries were the direct and proximate result of Defendants' placement into the stream of commerce of defective and unreasonably dangerous PRODUCTS.

74. The Defendants, by virtue of the foregoing, are strictly liable to Plaintiff for injuries and illness resulting from the defects and dangerous propensities of their PRODUCTS.

75. By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

76. That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

77. That this action falls within one or more of the exceptions set forth in CPLR 1602.

78. Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

79. Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

80.     Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

81.     Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

82.     Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

83.     Pursuant to CPLR Section 1602(11), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

84.     By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has

{00037512}                                18

been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

85.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## THIRD CAUSE OF ACTION – NEGLIGENCE

### (Imerys Talc)

86.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

87.    At all pertinent times, Defendants  Imerys Talc had a duty to exercise reasonable care to consumers, including Plaintiff, in the supply, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew and/or should have known was then being packaged and sold to consumers as the PRODUCTS by the Johnson and Johnson Defendants. Further, Imerys Talc knew and/or should have known that consumers of the PRODUCTS were using it to powder their genintal and/or perineal regions.

88.    At all pertinent times, Imerys Talc knew or should have known that the use of talcum powder based PRODUCTS in the genital and/or perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

89.    At all pertinent times, Imerys Talc knew or should have known that the Johnson & Johnson Defendants were not providing warnings to consumers that the use of

FILED: KINGS COUNTY CLERK 04/06/2018 12:28 PM
INDEX NO. 506937/2018
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 04/06/2018

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 23 of 41 PageID:
20060

the PRODUCTS on the genital and/or perineal regions increased the risk of ovarian cancer due to the presence of the talc supplied and provide by Defendant Imerys Talc contained therein.

90.     At all pertinent times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants, when it knew or should have known that the talc would be used in the PRODUCTS, without adequately taking steps to ensure that ultimate consumers of the PRODUCTS, including Plaintiff, received the information that Imerys Talc possessed on the carcinogenic properties of talc, including its risk of causing ovarian cancer.

91.     As such, at all pertinent times, Defendant Imerys Talc breached their duty to exercise reasonable care to consumers, including Plaintiff and were therefore negligent.

92.     As a direct and proximate result of Imerys Talc's negligence, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop ovarian cancer.

93.     By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

94.     That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

95.     That this action falls within one or more of the exceptions set forth in CPLR 1602.

96.     Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-

economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

97.     Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

98.     Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

99.     Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

100.    Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

101.    Pursuant to CPLR Section 1602(11), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants

{00037512}                                           21

acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

102.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

103.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## FOURTH CAUSE OF ACTION – NEGLIGENCE
### (Duane Reade)

104.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

105.    At all pertinent times, Defendants had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the promotion, marketing, distribution, and/or sale of the PRODUCTS.

106.    At all pertinent times, Duane Reade marketed and sold the Johnson & Johnson Defendants' PRODUCTS, which it knew and/or should have known that consumers were using to powder their perineal regions.

107.    At all pertinent times, Duane Reade knew or should have known that the use of talcum powder based PRODUCTS in the genital and/or perineal area significantly

increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

108.    At all pertinent times, Duane Reade knew or should have known that Johnson & Johnson was not providing warnings to consumers of the PRODUCTS of the risk of ovarian cancer posed by talc contained therein.

109.    As a direct and proximate result of Duane Reade's negligence, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop ovarian cancer.

110.    As such, at all pertinent times, Defendant breached their duty to exercise reasonable care to consumers, including Plaintiff and were therefore negligent.

111.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

112.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

113.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

114.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

115.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic

loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

116.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

117.    Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

118.    Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

119.    Pursuant to CPLR Section 1602(11), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

120.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has

{00037512}                                    24

incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

121.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## FIFTH CAUSE OF ACTION – NEGLIGENCE
### (Johnson & Johnson Defendants)

122.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

123.    At all pertinent times, the Johnson & Johnson Defendants had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, supply, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

124.    The Johnson & Johnson Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

    a.  In failing to warn Plaintiff of the hazards associated with the use of the PRODUCTS;

    b.  In failing to properly test their PRODUCTS to determine adequacy and effectiveness or safety measures, if any prior to releasing the PRODUCTS for consumer use;

    c.  In failing to properly test their PRODUCTS to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

{00037512}          25

    d.  In failing to inform ultimate users, such as Plaintiff, as to the safe and proper methods of handling and using the PRODUCTS;

    e.  In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

    f.  In failing to instruct the ultimate users, such as Plaintiff, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

    g.  In failing to inform the public in general and the Plaintiff in particular of the known dangers of using the PRODUCTS for dusting the perineum;

    h.  In failing to advise users how to prevent or reduce exposure that caused increased risk for ovarian cancer;

    i.  In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary;

    j.  In failing to act like a reasonably prudent company under similar circumstances.

125.   Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

126.   At all pertinent times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to its reasonably anticipated use.

127.   As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused the Plaintiff to develop ovarian cancer.

128.   As such, at all pertinent times, Defendant breached their duty to exercise reasonable care to consumers, including Plaintiff and were therefore negligent.

129. By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

130. That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

131. That this action falls within one or more of the exceptions set forth in CPLR 1602.

132. Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

133. Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

134. Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

135. Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic

loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that
Defendants acted with reckless disregard of the safety of others.

136.    Pursuant to CPLR Section 1602(10), Defendants are jointly and severally
liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this
action involves a claim for strict products liability against a manufacturer.

137.    Pursuant to CPLR Section 1602(11), defendants are jointly and severally
liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants
acted knowingly or intentionally, and in concert, to cause the acts or failures which are a
proximate cause of Plaintiff's injuries.

138.    By reason of the above, Plaintiff brings this action for personal injuries;
Plaintiff  has sustained severe and permanent personal injuries; has suffered and will
continue to suffer tremendous physical pain and suffering and mental anguish; has
incurred and will continue to incur substantial sums of money for medical services and
related expenses; has sustained and will continue to sustain substantial loss of income; has
been deprived of and will continue to be deprived of life's pleasures; and has otherwise
been damaged.

139.    By reason of the above, Plaintiff has been damaged in a sum which exceeds
the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 32 of 41 PageID:
20069

### SIXTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY
### (Johnson & Johnson Defendants)

140.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

141.    Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in the genital and/or perineal area.

142.    The PRODUCTS did not conform to these express representations because they cause serious injury when used by women in the genital and/or perineal area in the form of ovarian cancer.

143.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused the Plaintiff to develop ovarian cancer.

144.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

145.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

146.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

147.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-

economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact
that Defendants owed plaintiff a non-delegable duty of care.

148.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally
liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic
loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said
Defendants are vicariously liable for the negligent acts and omissions of its servants,
agents, and/or employees.

149.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally
liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that
Defendants' wrongful conduct was intentional.

150.    Pursuant to CPLR Section 1602(7), Defendants are jointly and severally
liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that
Defendants acted with reckless disregard of the safety of others.

151.    Pursuant to CPLR Section 1602(10), Defendants are jointly and severally
liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this
action involves a claim for strict products liability against a manufacturer.

152.    Pursuant to CPLR Section 1602(11), defendants are jointly and severally
liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants

acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

153.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff  has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

154.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

### SEVENTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTIES
### (Johnson & Johnson Defendants)

155.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

156.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Johnson & Johnson Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the genital and/or perineal area, and impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

157.    Defendants breached their implied warranties of the PRODUCTS sold to Plaintiff because they were not fit for their common, ordinary and intended uses, including use by women in the genital and/or perineal area.

158.    As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused the Plaintiff to develop ovarian cancer.

159.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

160.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

161.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

162.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

163.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

164.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

{00037512}                              32

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 36 of 41 PageID: 20073

165.    Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

166.    Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

167.    Pursuant to CPLR Section 1602(11), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

168.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

169.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## EIGHTH CAUSE OF ACTION – PUNITIVE DAMAGES
### (All Defendants)

170.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

171.   The Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

a.   Defendants knew of the unreasonably high risk of ovarian cancer posed by the PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action;

b.   Despite their knowledge of the high risk of ovarian cancer associated with the PRODUCTS, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling.

c.   Defendants' conduct, as described herein, knowing the dangers and risks of the PRODUCTS, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action was outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the PRODUCTS.

172.   As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, the Plaintiff has sustained damages as set forth above.

173.   By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

{00037512}                          34

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 38 of 41 PageID: 20075

174.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

175.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

176.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## NINTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION
### (All Defendants)

177.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

178.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiff and the public, that the PRODUCTS had been tested and found to be safe and effective for use in the genital and/or perineal area. The representations made by Defendants, in fact, were false.

179.    Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because

{00037512}                          35

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 39 of 41 PageID: 20076

Defendants negligently misrepresented the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

180.    Defendants breached their duty in representing that the PRODUCTS have no serious side effects.

181.    As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that the PRODUCTS had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects.

182.    As a proximate result of Defendants' conduct, Plaintiff has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

183.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

184.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

185.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has

FILED: KINGS COUNTY CLERK 04/06/2018 12:28 PM    INDEX NO. 506937/2018

NYSCEF DOC. NO. 1    Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 40 of 41 PageID:    RECEIVED NYSCEF: 04/06/2018
20077

been deprived of and will continue to be deprived of life's pleasures; and has otherwise

been damaged.

186.    By reason of the above, Plaintiff has been damaged in a sum which exceeds

the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount, on each

cause of action, that exceeds the jurisdictional limits of all lower courts which would otherwise

have jurisdiction, together with the costs and disbursements of this action, and interest from the

date of diagnosis of her ovarian cancer and as allowed by law.

Dated: New York, New York
       April 6, 2018

                                   PHILLIPS & PAOLICELLI, LLP
                                   *Attorneys for Plaintiff*

                                   _____
                                   Daniel J. Woodard
                                   Brendan J. Tully
                                   James A. Plastiras
                                   747 Third Ave., 6th Fl.
                                   New York, NY 10017
                                   (212) 388-5100

{00037512}                              37

Case 3:16-md-02738-MAS-RLS   Document 7186-2   Filed 09/05/18   Page 41 of 41 PageID: 20078

# V E R I F I C A T I O N

STATE OF NEW YORK      )
                       ss.:
COUNTY OF NEW YORK     )

DANIEL J. WOODARD, being duly sworn, deposes and says:

I am an Attorney who is a Partner in the law firm, Phillips & Paolicelli, LLP.

I have read the foregoing SUMMONS and VERIFIED COMPLAINT and know the contents

thereof, and the same are true to my knowledge, except those matters therein which are stated

to be alleged upon information and belief, and as to those matters I believe them to be true. My

belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and

other pertinent information contained in my files.

The reason this verification is made by deponent and not by the plaintiff is because the plaintiff

does not reside within the County where her attorneys have an office, to wit: 747 Third

Avenue, City, County and State of New York.

Dated:   New York, New York
         April 6, 2018

_____
Daniel J. Woodard