# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| SANDRA JIMINEZ A/K/A SANDRA JIMENEZ, | DOCKET NO.:1:18-CV-02152(PKC-SMG) |
| Plaintiff, | |
| - against – | **FIRST AMENDED COMPLAINT** |
| DUANE READE, INC. DUANE READE HOLDINGS, INC., DUANE READE INC., a/k/a DRI-I, INC., DRI-I, INC., f/k/a DUANE READE INC., DUANE READE (A NEW YORK GENERAL PARTNERSHIP); | Plaintiff demands trial by jury on all issues |
| IMERYS TALC AMERICA, INC., f/k/a LUZENAC AMERICA, INC.; | |
| JOHNSON & JOHNSON, INC.; | |
| JOHNSON & JOHNSON CONSUMER COMPANIES, INC. | |

---------------------------------------------------------X


***TO THE ABOVE NAMED DEFENDANTS:***

  COMES NOW Plaintiff, by and through her undersigned counsel, and for her causes of

action against Defendants Duane Reade Inc., Duane Reade Holdings, Inc., Duane Reade Inc.,

a/k/a DRI-I, Inc., DRI-I, Inc., f/k/a Duane Reade, Inc., Duane Reade (A New York General

Partnership), Imerys Talc America, Inc., f/k/a Luzenac America Inc., Johnson & Johnson; and

Johnson & Johnson Consumer Companies, Inc., alleging the following upon information and

belief (including investigation made by and through Plaintiff's counsel), except those

allegations that pertain to Plaintiff, which are based on personal knowledge:

## INTRODUCTION

1.      All claims in this action are a direct and proximate result of Defendants'

and/or their corporate predecessors negligent, willful, and wrongful conduct in connection

with the design, development, manufacture, testing, packaging, promoting, marketing,

distribution, labeling, and/or sale of the product known as Johnson & Johnson Baby

Powder and Johnson & Johnson Shower To Shower Talcum Powder (hereinafter "the

PRODUCTS"). Plaintiff in this action seeks recovery for damages as a result of

developing ovarian cancer, which was directly and proximately caused by such wrongful

conduct by Defendants, the unreasonably dangerous and defective nature of talcum

powder, and the attendant effects of developing ovarian cancer. All of the claims in this

action involve common legal and medical issues.

## PARTIES

2.      Plaintiff Sandra Jiminez a/k/a/ Sandra Jimenez (hereinafter referred to as

"Plaintiff" and/or "Sandra Jimenez") is a citizen of the City of Queens, State of New

York. At all pertinent times, including from approximately 1983 to 2004, Plaintiff Sandra

Jimenez purchased and applied Defendant Johnson & Johnson's talcum powder daily in

the State of New York, including King's County while she lived there. Plaintiff repeatedly

and regularly purchased the PRODUCTS from the stores of Defendants Duane Reade

Holdings, Inc., Duane Reade Inc., Duane Reade Inc., a/k/a DRI-I, Inc., DRI-I, Inc., f/k/a

Duane Reade, Inc., Duane Reade (A New York General Partnership).  In or around June

2015, Plaintiff Sandra Jimenez was diagnosed with ovarian cancer, which developed in

the State of New York. Plaintiff Sandra Jimenez received treatment in Brooklyn, New

York. Plaintiff Sandra Jimenez developed ovarian cancer, and suffered effects attendant

thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Sandra Jimenez has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sandra Jimenez has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Sandra Jimenez applied talcum powder in the State of New York.

3.     The Defendant, Duane Reade, Inc. is a Delaware corporation with its principal place of business and executive and corporate offices located in the State of New York.

4.     At all pertinent times, Duane Reade, Inc. was engaged in the business of promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Duane Reade, Inc. regularly transacted, solicited, and conducted business in the State of New York.

5.     The Defendant Duane Reade Holdings, Inc., is a Delaware corporation with its principal place of business and its executive and corporate offices located in the State of New York.

6.     At all pertinent times, Duane Reade Holdings, Inc. was engaged in the business of promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Duane Reade Holdings, Inc. regularly transacted, solicited, and conducted business located in the State of New York.

7.     The Defendants Duane Reade Inc., a/k/a DRI-I, Inc., and DRI-I, Inc., f/k/a Duane Reade, Inc., (hereinafter "Defendants DRI-I") are Delaware corporations with their principal place of business and its executive and corporate offices located in the State of New York.

8.     At all pertinent times, Defendants DRI-I were engaged in the business of promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Defendants DRI-I regularly transacted, solicited, and conducted business located in the State of New York.

9.     The Defendant Duane Reade (A New York General Partnership) is a New York General Partnership with its principal place of business and corporate and executive offices located in the State of New York.

10.     At all pertinent times, Duane Reade (A New York General Partnership) was engaged in the business of promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Duane Reade (A New York General Partnership) regularly transacted, solicited, and conducted business in the State of New York.

11.     Defendant Duane Reade (A New York General Partnership) is 99% owned by Defendant Duane Reade Inc., and 1% owned by Defendants DRI-I.

12.     Defendants DRI-I is a subsidiary of Duane Reade Inc., and Defendant Duane Reade Inc., is a subsidiary of Duane Reade Holdings, Inc.

13.     Defendant Duane Reade (A New York General Partnership) is the principal owner and operator of the Duane Reade chain of stores all of which are located in the City and State of New York.

14.     Collectively Defendants Duane Reade Inc., Duane Reade Holdings, Inc., Duane Reade (A New York General Partnership) and DRI-I will hereinafter be referred to in connection with the other co-Defendants as "Defendants" and/or as the "Duane Reade Defendants").

15.     The Defendant, Imerys Talc America, Inc. f/k/a Luzenac America, Inc., is a Delaware corporation with its principal place of business in the State of California.

16.     At all pertinent times, Imerys Talc America, Inc. f/k/a Luzenac America, Inc., has been in the business of mining and distributing talcum powder for use in talcum powder based products, including the PRODUCTS, in all States of the United States, including the State of New York. Imerys Talc is the successor or continuation of Luzenac America, Inc. and Imerys Talc America, Inc. is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.

17.     The Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in the State of New Jersey.

18.     At all pertinent times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of New York.

19.     The Defendant, Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.

20.     At all pertinent times, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Johnson & Johnson Consumer

Companies, Inc. regularly transacted, solicited, and conducted business in all States of the United States, including the State of New York.

21.    At all pertinent times, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of the PRODUCTS, and introduced such PRODUCTS into interstate commerce with knowledge and intent that such PRODUCTS be sold in the State of New York.

**JURISDICITON**

22.    Plaintiff asserts that federal jurisdiction is improper as there is not complete diversity between the parties and therefore remand is appropriate.

**VENUE**

23.    Venue is proper because substantial parts of the events or omissions giving rise to the claim occurred in King's County.

**ALLEGATIONS COMMON TO ALL COUNTS**

24.    Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. The Defendants, Imerys Talc America, Inc., f/k/a Luzenac America, Inc., mined the talc contained in the PRODUCTS.

25.    Talc is the main substance in talcum powders. The Johnson & Johnson Defendants manufactured the PRODUCTS. The PRODUCTS are composed almost entirely of talc.

26.    At all pertinent times, Defendants Duane Reade, sold the PRODUCTS manufactured by the Johnson & Johnson Defendants and Plaintiff Sandra Jimenez purchased the PRODUCTS from stores that were owned and operated by Defendants Duane Reade.

6

27. At all pertinent times, feasible alternatives to the PRODUCTS existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses as talc with nearly the same effectiveness.

28. Imerys Talc[1] has continually advertised and marketed talc as safe for human use.

29. Imerys Talc supplies customers with material safety data sheets for talc. These material safety data sheets are supposed to convey adequate health and warning information to its customers.

30. Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness", helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild". The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors. The container of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

31. During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan "A sprinkle a day keeps odor away", and through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to

---

[1] All allegations regarding actions taken by Imerys talc also include actions taken while that entity was known as Luzenac America, Inc.

feel dry, fresh, and comfortable throughout the day." and "SHOWER to SHOWER can be used all over your body."

32.     The Plaintiff used the PRODUCTS to dust her perineum for feminine hygiene purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

33.     In 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

34.     In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk in ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about ovarian cancer risks so that women can make an informed decision about their health.

35.     Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital and/or perineal talc use in women.

36.     In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

37.     In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer.

38.     On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies as far back as 1960's ". . . show[ ] conclusively that the frequent use of talcum powder in the genital area pose[ ] a serious health risk of ovarian cancer." The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate.

The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about ovarian cancer risk they pose.

39.     In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

40.     In February of 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen. IARC which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%. IARC concluded with this "Evaluation": "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder." By definition "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

41.     In approximately 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A" , "very toxic", "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A" a cancer causing substance.

42.     In 2006, Imerys Talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them to be used in the PRODUCTS. These MSDSs not only provided the warning information about the IARC classifications but also including warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

43.     The Defendants had a duty to know and warn about the hazards associated with the use of the PRODUCTS.

44.     The Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the use of its PRODUCTS.

45.     In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding talc.

46.     As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Plaintiff was injured and suffered damages, namely ovarian cancer, which required surgeries and treatments.

## FIRST CAUSE OF ACTION – STRICT LIABILITY FOR FAILURE TO WARN
### (All Defendants)

47.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

48.     At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew that Johnson & Johnson was then packaging and

selling to consumers as the PRODUCTS and it knew that consumers of the PRODUCTS were using it to powder their genital and/or perineal regions.

49.   At all pertinent times, the Johnson & Johnson Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing the PRODUCTS in the regular course of business.

50.   At all pertinent times, Duane Reade Defendants, marketed, promoted, sold and/or distributed the PRODUCTS in the regular course of business.

51.   At all pertinent times, Plaintiff used the PRODUCTS to powder her genital and/or perineal area which is a reasonably foreseeable use.

52.   At all pertinent times, all Defendants in this action knew or should have known that the use of talcum powder based products in the genital and/or perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

53.   At all pertinent times, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of ovarian cancer associated with the use of the PRODUCTS by women to powder their genital and/or perineal area. Defendants themselves failed to properly and adequately warn and instruct Plaintiff as to the risks and benefits of the PRODUCTS given Plaintiff's need for this information.

54.   Had the Plaintiff received a warning that the use of the PRODUCTS would have significantly increased her risk of ovarian cancer, she would not have used the same.

As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the PRODUCTS, Plaintiff has been injured catastrophically, and has been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

55.     The development of ovarian cancer by the Plaintiff was the direct and proximate result of the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings which, as a result Plaintiff has suffered injuries and damages, including but not limited to, conscious pain and suffering of Plaintiff, medical expenses and lost wages.

56.     The Defendants' PRODUCTS were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which the Plaintiff justifiably relied in electing to use the PRODUCTS. The defect or defects made the PRODUCTS unreasonably dangerous to those persons, such as Plaintiff, who could reasonably be expected to use and rely upon such PRODUCTS and the warnings provided by the Defendants. As a result, the defect or defects and the failure to appropriately warn of the dangers and increased risk of ovarian cancer with the PRODUCTS use when Defendants knew of these dangers were a producing cause and/or substantial factor in causing the Plaintiff's injuries and damages.

57.     The Defendants' PRODUCTS failed to contain, and continue to this day do not contain, adequate warnings and/or instructions regarding the increased risk of ovarian cancer with the use of their PRODUCTS by women. The Defendants continue to market, advertise, and expressly represent to the general public that it is safe for women to use

their product regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960's that their PRODUCTS increase the risk of ovarian cancer in women when used in the perineal area.

58.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

59.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

60.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

61.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

62.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

63.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic

loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

64. Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

65. Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

66. Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

67. By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

68.     By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction

## SECOND CAUSE OF ACTION– STRICT LIABILITY FOR DESIGN DEFECT
### (Johnson & Johnson Defendants)

69.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

70.     At all pertinent times, Defendants mined, produced, possessed, designed, manufactured, marketed, supplied, delivered, distributed, used, purchased, imported, exported, converted, compounded, removed, sold or otherwise placed into the stream of commerce the PRODUCTS in a defective, unsafe and unreasonable dangerous condition, and said PRODUCTS were expected to and did reach users, handlers and other persons coming into contact therewith without substantial change in the condition including Plaintiff in which they left Defendants' possession.

71.     Defendants' PRODUCTS did not contain warnings and/or information concerning the dangers posed to persons using, handling or otherwise coming into contact therewith including, but not limited to, an increase risk of ovarian cancer.

72.     Defendants' PRODUCTS did not contain adequate and correct warnings or instructions regarding safety precautions to be observed by users, handlers and persons who would foreseeably use or otherwise come into contact with said PRODUCTS.

73.     At all pertinent times, Defendants' PRODUCTS were not reasonably safe due to the substantial likelihood of harm including the increased risk of ovarian cancer.

74.     At all pertinent times, Defendants' PRODUCTS were being employed for the purpose and in the manner that was intended and foreseeable. The defects of

Defendants' PRODUCTS were not discoverable by Plaintiff through the exercise of reasonable case, the dangers of said PRODUCTS were not perceivable by Plaintiff, and the Plaintiff would not have otherwise averted her injuries by the exercise of reasonable care.

75.   At all pertinent times, Defendants' PRODUCTS were defective and dangerous at the time they left Defendants' possession, as they contained a latent defect and were harmful, poisonous and deleterious.

76.   Defendants knew or otherwise expected that their PRODUCTS would reach the ultimate users, including Plaintiff, without substantial change from, or altercation of, the condition in which said PRODUCTS were originally mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, used purchased, imported, exported, converted, compounded, removed or sold.

77.   Defendants knew or in the exercise of reasonable diligence should have ascertained that Plaintiff and others similarly situated would be the ultimate users or consumers of Defendants' PRODUCTS and would be exposed to the PRODUCTS therefrom.

78.   Defendants knew that their PRODUCTS would be used without inspection for defects and, by placing them in the marketplace, represented to the public at large, including Plaintiff, that said PRODUCTS could be utilized safely in the manner and for the purpose for which they were intended.

79.   Defendants knew that their PRODUCTS were defective and were incapable of being made safe for their ordinary, intended and foreseeable uses and purposes and that these defects were not discoverable by Plaintiff, or others similarly situated, in the

exercise of reasonable case. The dangers and hazards of said PRODUCTS were not perceivable to Plaintiff such that she might otherwise have averted her injuries by the exercise of reasonable care.

80. In light of the foregoing, the ordinary and foreseeable use of Defendants' PRODUCTS constituted a dangerous and hazardous activity and placed the ultimate users, including Plaintiff, at an unreasonable risk of harm and injury.

81. The risks and dangers created by the use of Defendants' PRODUCTS outweighed their utility.

82. The Defendants failed to implement or use the reasonable alternative design that was easily available at the time of manufacture, and would have prevented the injury by removal or substitution of the causal defect and made the product safe for its intended purpose.

83. As a consequence of the defects of Defendants' PRODUCTS and Plaintiff's resultant exposure to talc resulting from the ordinary and foreseeable use of said PRODUCTS, Plaintiff has sustained serious and permanent injuries and damages as more fully described herein.

84. Plaintiff's injuries were the direct and proximate result of Defendants' placement into the stream of commerce of defective and unreasonably dangerous PRODUCTS.

85. The Defendants, by virtue of the foregoing, are strictly liable to Plaintiff for injuries and illness resulting from the defects and dangerous propensities of their PRODUCTS.

86.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

87.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

88.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

89.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

90.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

91.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

92.    Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic

loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that
Defendants acted with reckless disregard of the safety of others.

93.     Pursuant to CPLR Section 1602(10), Defendants are jointly and severally
liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this
action involves a claim for strict products liability against a manufacturer.

94.     Pursuant to CPLR Section 1602(11), Defendants are jointly and severally
liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic
loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants
acted knowingly or intentionally, and in concert, to cause the acts or failures which are a
proximate cause of Plaintiff's injuries.

95.     By reason of the above, Plaintiff brings this action for personal injuries;
Plaintiff has sustained severe and permanent personal injuries; has suffered and will
continue to suffer tremendous physical pain and suffering and mental anguish; has
incurred and will continue to incur substantial sums of money for medical services and
related expenses; has sustained and will continue to sustain substantial loss of income; has
been deprived of and will continue to be deprived of life's pleasures; and has otherwise
been damaged.

96.     By reason of the above, Plaintiff has been damaged in a sum which exceeds
the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## THIRD CAUSE OF ACTION – NEGLIGENCE
### (Imerys Talc)

97.     Plaintiff incorporates by reference all other paragraphs of this Complaint as
if fully set forth herein.

98.     At all pertinent times, Defendant Imerys Talc had a duty to exercise reasonable care to consumers, including Plaintiff, in the supply, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.  At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew and/or should have known was then being packaged and sold to consumers as the PRODUCTS by the Johnson and Johnson Defendants. Further, Imerys Talc knew and/or should have known that consumers of the PRODUCTS were using it to powder their genital and/or perineal regions.

99.     At all pertinent times, Imerys Talc knew or should have known that the use of talcum powder based PRODUCTS in the genital and/or perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

100.   At all pertinent times, Imerys Talc knew or should have known that the Johnson & Johnson Defendants were not providing warnings to consumers that the use of the PRODUCTS on the genital and/or perineal regions increased the risk of ovarian cancer due to the presence of the talc supplied and provide by Defendant Imerys Talc  contained therein.

101.   At all pertinent times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants, when it knew or should have known that the talc would be used in the PRODUCTS, without adequately taking steps to ensure that ultimate consumers of the PRODUCTS, including Plaintiff, received the information that Imerys Talc possessed on the carcinogenic properties of talc, including its risk of causing ovarian cancer.

102.    As such, at all pertinent times, Defendant Imerys Talc breached their duty to exercise reasonable care to consumers, including Plaintiff and were therefore negligent.

103.    As a direct and proximate result of Imerys Talc's negligence, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop ovarian cancer.

104.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

105.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

106.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

107.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

108.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

109.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic

loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

110.    Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

111.    Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

112.    Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

113.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff  has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

114. By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## FOURTH CAUSE OF ACTION – NEGLIGENCE
### (Duane Reade Defendants)

115. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

116. At all pertinent times, the Duane Reade Defendants had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the promotion, marketing, distribution, and/or sale of the PRODUCTS.

117. At all pertinent times, the Duane Reade Defendants marketed and sold the Johnson & Johnson Defendants' PRODUCTS, which it knew and/or should have known that consumers were using to powder their perineal regions.

118. At all pertinent times, the Duane Reade Defendants knew or should have known that the use of talcum powder based PRODUCTS in the genital and/or perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

119. At all pertinent times, the Duane Reade Defendants knew or should have known that Johnson & Johnson was not providing warnings to consumers of the PRODUCTS of the risk of ovarian cancer posed by talc contained therein.

120. As a direct and proximate result of the Duane Reade Defendants negligence, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop ovarian cancer.

121.    As such, at all pertinent times, the Duane Reade Defendant breached their duty to exercise reasonable care to consumers, including Plaintiff and were therefore negligent.

122.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

123.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

124.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

125.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

126.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

127.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

128.  Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

129.  Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

130.  Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

131.  By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff  has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

132.  By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## FIFTH CAUSE OF ACTION – NEGLIGENCE
### (Johnson & Johnson Defendants)

133.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

134.    At all pertinent times, the Johnson & Johnson Defendants had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, supply, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

135.    The Johnson & Johnson Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

a. In failing to warn Plaintiff of the hazards associated with the use of the PRODUCTS;

b. In failing to properly test their PRODUCTS to determine adequacy and effectiveness or safety measures, if any prior to releasing the PRODUCTS for consumer use;

c. In failing to properly test their PRODUCTS to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

d. In failing to inform ultimate users, such as Plaintiff, as to the safe and proper methods of handling and using the PRODUCTS;

e. In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

f. In failing to instruct the ultimate users, such as Plaintiff, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

g. In failing to inform the public in general and the Plaintiff in particular of the known dangers of using the PRODUCTS for dusting the perineum;

h.  In failing to advise users how to prevent or reduce exposure that caused increased risk for ovarian cancer;

i.  In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary;

j.  In failing to act like a reasonably prudent company under similar circumstances.

136.  Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

137.  At all pertinent times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to its reasonably anticipated use.

138.  As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused the Plaintiff to develop ovarian cancer.

139.  As such, at all pertinent times, Defendants breached their duty to exercise reasonable care to consumers, including Plaintiff and were therefore negligent.

140.  By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

141.  That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

142.  That this action falls within one or more of the exceptions set forth in CPLR 1602.

143. Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

144. Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

145. Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

146. Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

147. Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

148. Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic

loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

149.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff  has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

150.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## SIXTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY
### (Johnson & Johnson Defendants)

151.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

152.    Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in the genital and/or perineal area.

153.    The PRODUCTS did not conform to these express representations because they cause serious injury when used by women in the genital and/or perineal area in the form of ovarian cancer.

154.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused the Plaintiff to develop ovarian cancer.

155.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

156.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

157.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

158.    Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

159.    Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

160.    Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

161.    Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

162.    Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

163.    Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

164.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff  has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

165.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## SEVENTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTIES
### (Johnson & Johnson Defendants)

166.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

167.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Johnson & Johnson Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the genital and/or perineal area, and impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

168.    Defendants breached their implied warranties of the PRODUCTS sold to Plaintiff because they were not fit for their common, ordinary and intended uses, including use by women in the genital and/or perineal area.

169.    As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused the Plaintiff to develop ovarian cancer.

170.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

171.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

172.     That this action falls within one or more of the exceptions set forth in CPLR 1602.

173.     Pursuant to CPLR Section 1602 (2) (iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants owed plaintiff a non-delegable duty of care.

174.     Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees.

175.     Pursuant to CPLR Section 1602 (5) Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR section 1601, by reason of the fact that Defendants' wrongful conduct was intentional.

176.     Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard of the safety of others.

177.     Pursuant to CPLR Section 1602(10), Defendants are jointly and severally liable for all of Plaintiff's damages including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that this action involves a claim for strict products liability against a manufacturer.

178.    Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

179.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

180.    By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## EIGHTH CAUSE OF ACTION – PUNITIVE DAMAGES
### (All Defendants)

181.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

182.    The Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

a.  Defendants knew of the unreasonably high risk of ovarian cancer posed by the PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action;

    b.  Despite their knowledge of the high risk of ovarian cancer associated with the PRODUCTS, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling.

    c.  Defendants' conduct, as described herein, knowing the dangers and risks of the PRODUCTS, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action was outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the PRODUCTS.

183.    As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, the Plaintiff has sustained damages as set forth above.

184.    By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

185.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

186.    By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

187.     By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

## NINTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION
### (All Defendants)

188.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

189.     Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiff and the public, that the PRODUCTS had been tested and found to be safe and effective for use in the genital and/or perineal area. The representations made by Defendants, in fact, were false.

190.     Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

191.     Defendants breached their duty in representing that the PRODUCTS have no serious side effects.

192.     As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that the PRODUCTS had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects.

193.     As a proximate result of Defendants' conduct, Plaintiff has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

194.     By reason of the foregoing Plaintiff suffered great pain, personal injuries, agony, mental anguish, and emotional distress, surgeries, hospitalization, and physical impairment.

195.     That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

196.     By reason of the above, Plaintiff brings this action for personal injuries; Plaintiff  has sustained severe and permanent personal injuries; has suffered and will continue to suffer tremendous physical pain and suffering and mental anguish; has incurred and will continue to incur substantial sums of money for medical services and related expenses; has sustained and will continue to sustain substantial loss of income; has been deprived of and will continue to be deprived of life's pleasures; and has otherwise been damaged.

197.     By reason of the above, Plaintiff has been damaged in a sum which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount, on each cause of action, that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with the costs and disbursements of this action, and interest from the date of diagnosis of her ovarian cancer and as allowed by law.

Case 3:16-md-02738-MAS-RLS   Document 7186-4   Filed 09/05/18   Page 40 of 40 PageID:
20167
Case 1:16-cv-02523-NC-SMG   Document 1018   Filed 04/19/18   Page 39 of 39 PageID #: 137

Dated: New York, New York
     April 18, 2018

                         PHILLIPS & PAOLICELLI, LLP
                         *Attorneys for Plaintiff*

                         Daniel J. Woodard (DW-8846)
                         Brendan J. Tully (BT-6819)
                         747 Third Ave., 6th Fl.
                         New York, NY 10017
                         (212) 388-5100