## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------

IN RE: JOHNSON & JOHNSON :    Civil Action No. 3:16-md-2738-FLW-
TALCUM POWDER PRODUCTS :    LHG
MARKETING, SALES PRACTICES :
AND PRODUCTS LIABILITY :        MDL No. 2738
LITIGATION :
    :
    :
    :
    :

-------------------------------------------------

## STATUS REPORT IN LIEU OF OCTOBER
## CASE MANAGEMENT CONFERENCE

## I.  STATUS OF DISCOVERY

Plaintiffs seek to bring several significant discovery-related issues to the Court's attention.  Defendants believe that a Joint Status Report is not the appropriate mechanism to argue about discovery, especially where, as here, the parties have not completed meeting and conferring on the issues being raised by the PSC. Defendants further note that plaintiffs substantially revised their discovery discussion below on October 31, 2018, after defendants' initial response highlighted the problems with plaintiffs' arguments, including the fact that they were complaining extensively about a study that had been produced long ago.  As such, defendants are now being forced to respond to new discovery allegations just a few hours before this status report is due.  The PSC's edits to the status report did not significantly change the PSC's position and were only made to respond to the information provided by Defendants during the drafting of this report.

Nevertheless, the parties' respective positions regarding these issues are set forth below.

## A.  DISCOVERY ISSUES

**PLAINTIFFS' POSITION:**  Since the September 27, 2018 status conference, several unanticipated but significant discovery issues have arisen.  As

1

described below, the PSC believed that many of these issues had been dealt with by prior Court Orders, and representations of counsel, only to learn that they have not. As set forth below, these issues are material and prejudicial to the PSC which is under the Court's order to disclose its experts on November 16, 2018 and to prepare for their depositions during the thirty (30) day period thereafter.

**J&J DEFENDANTS' POSITION:** The J&J Defendants disagree that there are any discovery issues that are material to or should interfere with the agreed upon Daubert schedule. The J&J Defendants note that the PSC lawyers continue to take discovery in state court ovarian and asbestos litigations including document requests and depositions, and continue to try cases around the country to verdict.

### i. Imerys: 360 Newly Disclosed Relevant Talc Samples and Documents

#### 1. PSC's Position:

##### a. 369 New Imerys Talc Samples From a 10-Year Period Previously Omitted:

Over a year ago, in August 2017, the parties and the Court discussed the issue of collecting, preserving and testing historical talc samples. In February 2018, Imerys disclosed <u>245</u> samples in its possession dating from 2001-2014 (Doc. 4757). Concerned that Imerys had not produced all samples in its custody and control, the PSC requested a 30(b)(6) deposition on that issue. Imerys objected to producing a 30(b)(6) witness to testify on that issue, a position that was upheld by Judge Pisano on May 23, 2018. (Doc. 6218).

Subsequent to Judge Pisano's May 23, 2018 order, Imerys disclosed to the PSC the existence of an additional <u>216</u> previously unrevealed samples covering timeframes for which samples had not previously been made available — almost doubling the number of then-known Imerys talc samples. [<u>See</u>, July 6, 2018 Status Conference Report, Item I (Doc. 6653)] The PSC appealed Judge Pisano's Order based on Imerys' new disclosure and sought a 30(b)(6) deposition of Imerys on the issue of the collection and disclosure of samples.

At the July 9, 2018 Status Conference, the Court took up the PSC's appeal of Judge Pisano's Order and modified it, particularly with respect to Imerys. [<u>See</u>, Status Conf. Tr. at pp. 10-17 (July 9, 2018)]. In explaining its decision, the Court

made clear that it wanted all defendants to disclose the "universe of samples" and that "that has been the objective from the beginning, which is why everyone went back to do their searches and exhaustive searches hopefully." [Id at p. 14]. With respect to Imerys, the Court ordered it to provide an affidavit under oath *"that is going to say that [Imerys] investigated, explored, whatever, all the possible sources that could have samples, and you'll either come up with it, or you'll say: Now, this is it.  We are representing to you, this is it."* Id at p. 15 (emphasis supplied).

As directed, Imerys subsequently produced an affidavit from Julie Pier, its corporate designee, addressing this issue on August 8, 2018. While not explicitly stating that "this is it" and that new samples would not be disclosed later, that was the clear import of the affidavit.  Imerys counsel also represented to the PSC that it directed Imerys to conduct an exhaustive search and that it was confident no new samples would be located.  Based on these representations, the PSC and Imerys not only split the new samples at considerable additional cost, but reformulated what samples would be tested to meet the Court's expert disclosure deadlines.

Surprisingly, on October 16, 2018, Imerys wrote the PSC to disclose that it had gone back to its third-party storage facility (Iron Mountain) at the direction of another Judge in a state court proceeding and they had located yet additional relevant talc samples.  The state court judge was apparently dissatisfied with Imerys's samples disclosures and ordered Imerys to go back through its storage facility — something that the PSC believed had already been done to comply with the Court's July 9th order.

Nevertheless, Imerys located additional samples from 1989-2002 and 1991-2003. The number of new samples was massive - **369 in total -** an almost **80% increase** in samples that would have been available for testing had they been disclosed in time. Even more importantly, the inventory provided to the PSC on October 26, 2018 makes clear that **these samples arise from a 10-year period** (1989-1992, 1994-1997, 1999-2000) from which samples had **not** previously been made available by Imerys for testing. These omitted years are critical years of exposure for many (if not most) plaintiffs in the MDL. Moreover, the source of talc for these samples was Vermont which has been the focus of significant attention during the 30(b)(6) depositions and by experts since there are internal documents finding that the talc deposits contained asbestos and excessive heavy metals.

While Imerys has indicated that it understands the PSC's "frustration," and has offered to pay for some costs associated with this new disclosure, prejudice to the PSC and their experts cannot be overstated.  Moreover, this eleventh hour

disclosure of additional samples is a significant violation of the Court's unambiguous directive in July to conduct an exhaustive search for samples (including in places like their storage facility), and to certify that "this is it."

### b. Imerys Discovery of Boxes of New Documents:

As if Imerys's disclosure of 363 new samples from time frames not previously disclosed was not bad enough, Imerys disclosed that it had **also** discovered banker's boxes of documents at the same Iron Mountain Storage facility where it found the 363 samples.

The PSC has pressed Imerys for a full accounting of these materials, including both the volume and type. As for volume, the initial number of boxes located was over 100 boxes—which accounts for hundreds of thousands of pages. Using a review methodology that was disclosed during the preparation of this status report, Imerys has apparently cut the number of boxes in half—a number that would still contain more than 120,000 pages of new documents. Imerys has not revealed the kinds of documents contained in the newly discovered boxes, but given their proximity to the samples, the PSC can only assume that these boxes are likely to contain testing results, mine planning documents, geologic maps and other composition materials.

In its statement below, Imerys characterizes the PSC's recitation of these new discoveries as "over blown." They suggest, that when their review is complete, there may be few documents to produce. That argument misses the point: The PSC should not be in a position of uncertainty as to the evidence available for its experts. This is a point the Court has repeatedly made clear.

Recognizing the difficulty that this late disclosure of documents has on the PSC, Imerys has offered to allow PSC lawyers to go to the original boxes in Colorado and review these documents in paper, not electronically. This "solution" is no solution. It is completely unworkable given the PSC's resources, and the fact that the PSC is actively working to meet the deadline for disclosing experts.

### c. Imerys's Request for an *In Camera, Ex Parte* Meeting:

As set forth below, Imerys has requested an *in camera*, *ex parte* meeting with the Court to explain the steps that it has taken and will take to address these samples

and document issues. According to Imerys, such a meeting is necessary as the circumstances may implicate its work product and other privileges.

The PSC does not object to Imerys's request.  However, and for the same reasons, the PSC requests that it be permitted to meet with the Court *in camera* to further explain the impact of Imerys's failure to produce samples and documents on the logistics of disclosure and supplementation of expert reports, including work-product discussions regarding expert's consideration of the newly disclosed evidence.

### d.  Impact on General Causation:

Both Imerys and J&J assert that Imerys's discovery violations (as well as J&J's as described below) have no implication whatsoever on the "general causation" question, *i.e.,* whether talcum powder products such as Johnson's Baby Powder and Shower to Shower Powder cause ovarian cancer.  This is nonsense.

As the Court is well aware, the issue of the composition of defendants' talcum powder products has been a central focus of the general causation inquiry in this MDL. Indeed, *Daubert* proceedings were scheduled in a manner that would allow the PSC to explore the composition of these products, provide adequate time to test available samples and incorporate the results of that testing into appropriate general causation expert reports.

The PSC expects to show that, in addition to talc itself, these products contain asbestos, heavy metals, and fibrous talc (in addition to platy talc), all known carcinogens. The presence of these constituents in talcum powder products over decades provides a biologically plausible explanation – one of several – that explain the decades of epidemiology studies which have consistently shown an increased risk of ovarian cancer with the use of these products.

The newly discovered samples and documents are additional relevant and probative evidence to general causation, an issue that Defendants maintain is dispositive of this entire MDL.

### 2.  Imerys's Position:

At the outset, Imerys wants the Court to know that neither it, nor its counsel, are pleased to have to advise the Court and the PSC of the discovery of these additional samples.  Imerys took the Court very seriously when it stated that "it is appropriate to know that we have the universe of samples and that they are

representative samples." (July 9, 2018 CMC transcript pg. 14 lines 16-20). Imerys conducted a good faith search and believed at the time that it had complied with its obligations under the Order.

Imerys identified the additional samples because a California state court judge ordered it to identify every single sample located in the Iron Mountain storage facilities in Denver regardless of whether or not the samples had anything to do with the mines from which Imerys supplied talc to Johnson & Johnson or were even the grades of talc Imerys supplied to Johnson & Johnson. To comply with this order, Imerys had to go beyond the steps Imerys had already taken to identify samples from Iron Mountain arguably related to Johnson & Johnson (which had previously resulted in the identification of a number of samples) and physically open over 1,000 boxes.

Unfortunately, as it turns out, additional samples that are arguably related to the MDL were located among the larger group of irrelevant samples. Imerys promptly advised the PSC of the existence of the new samples on October 16, 2018. Because the samples generally did not indicate on their containers whether or not they were of the type arguably related to the MDL, Imerys conducted additional investigation to identify them. Imerys provided an inventory of the new samples to the PSC on October 26, 2018 (at that time Imerys was still investigating the type and source of 14 samples, but Imerys has since determined that those samples are not in the categories listed on the "arguably Johnson & Johnson-related" list). In the spirit of transparency, Imerys also provided to the PSC a list of every sample found during its Iron Mountain search, again whether or not the sample was even arguably related to the MDL.

Imerys is, of course, taking this seriously, and is reviewing its procedures, both the ones used to identify samples in the first place as well as the procedures it will use going forward in response to any legitimate discovery requests. If the Court wishes any further information on these topics, Imerys requests that it be granted permission to provide the information during an *in camera, ex-parte* meeting with Your Honor. This is because much of Imerys' explanation is inextricably intertwined with the attorney-client privilege and attorney work product doctrine.

Imerys understands the PSC's frustration. As a result, Imerys has authorized us to inform both the PSC and Court that Imerys will pay all of the Alliance Laboratory costs of splitting up to 100 of any of the newly-identified samples that the PSC identifies that it wants split (as opposed to the 50/50 split of costs as set

forth in the Protocol Order).  Imerys believes that 100 is more than a reasonable number based on the amount of samples previously split.

Imerys has also advised the PSC that additional boxes of documents were identified with these additional samples.  The PSC's description of this issue is wholly overblown.  As we advised, as of the time of this writing, Imerys does not even know if these documents are relevant to this litigation. We advised the PSC that Imerys is "investigating: 1) whether the boxes in question were previously scanned and produced and/or if these contain hard copy duplicates of information already produced electronically; and 2) How many of the boxes actually have documents that have anything to do with the MDL litigation.  For example, we have determined that some of the boxes had previously been pulled from Iron Mountain, had relevant documents scanned and produced, and then they were returned to Iron Mountain where we saw them again while reviewing samples."  Using this fully-disclosed methodology, Imerys has already determined that over 50% of the boxes found have either been reviewed and produced and/or are not relevant.  And the fact that all of these boxes were sitting multiple Iron Mountain off-site storage facilities (which the PSC characterizes as the boxes being in "proximity" to each other) tells us nothing.  We have already seen that a number of these boxes are completely irrelevant.  It is quite possible that Imerys will have no additional documents or a very limited production. In the interest of time, prior to Imerys getting these documents electronically scanned, Imerys is also offering to make the boxes identified in the Denver Iron Mountain facilities that may contain arguably relevant documents available for review and inspection with the only condition being that this be without waiver of any privilege and that Imerys be able to conduct a privilege review of any documents the PSC asks to be copied and produced.  While the PSC complains about this offer, Imerys is making it because, if the PSC does not want to wait for Imerys's full review and possible production, the PSC can see the boxes as soon as it wants and can do so in New Jersey if it wants as boxes contain documents pose fewer shipping and handling issues than samples.

Although Imerys does not intend to argue the merits in this agenda, and without taking away from the seriousness with which Imerys takes this issue, Imerys agrees with Johnson & Johnson and thinks it is important to reiterate that these samples and the issue of testing individual samples are not relevant to the general causation issues the Court will be addressing in the upcoming Daubert hearing.  The PSC has samples both pre-dating and post-dating the newly-identified samples (from the 1960s to 2014).  At best, these samples relate to Specific Causation only and not to General Causation.  And, even then, it is important to remember than Imerys does not have samples from the finished Johnson & Johnson baby powder product

because Imerys never sold baby powder.  The PSC already has had access to actual samples of Johnson & Johnson baby powder from Johnson & Johnson.

Although it believes a Motion for Sanctions would be unwarranted, Imerys will address same if one is filed.

### ii.  Johnson & Johnson Defendants:  Previously Undisclosed Relevant Files That Are Lost or Not Disclosed

### 1.  PSC's Position:

As the Court is aware, the PSC has long believed that J&J has not performed an adequate search for relevant documents.  Prior to September 2017, J&J asserted that the production of relevant and responsive documents was 100% complete, that was at a time when the production was 25% of the 2,000,000+ pages it is today.  In response to the PSC's objections to the manner in which J&J had collected documents and employed both search terms and a "relevance" review, the Court ordered J&J to complete document production by January 5, 2018. [CMO 9; *see also* Feb 5, 2018 Status Conference Report (Doc. 4161); Order of Special Master, February 6, 2018 (Doc. 4173)].  Now, new disclosures by J&J 30(b)(6) witness, James Peter Mittenthal, in a California state case, *Leavitt & McElroy v. Johnson & Johnson, et al.*, Case No. RGI 7882401 (Sup. Ct. of Alameda, CA) plus discovery by the PSC of a TALC INDEX of documents not produced strongly suggest that J&J's production is not complete and that significant volumes of responsive documents (including those related to general causation) remain in the J&J's possession or are destroyed.

### a.  Talc File Index

While preparing for the 30(b)(6) depositions, the PSC came across a "TALC INDEX" which listed literally dozens of files. Though there were many that were arguably relevant, the PSC chose 10 which appeared from the descriptions to be critical for this stage of this MDL. For example, the PSC asked for the status of files named:  "Talc – Ingredient Testing"; "Talc – Heavy Metal Analysis; and "Talc – Safety Testing."  Of these files, several are being "readied for production" calling into question the original collection while others have either been lost or not located. As recently as October 24, the PSC inquired of J&J as to the location and availability of this file. J&J was without information to inform the PSC what was in these files or why they are not locatable.

The PSC requests that J&J Immediately report the status of all of the talc related files on the FILE INDEX and the status of any missing or destroyed records, including testing and ovarian cancer study documents.

### b.  James Peter Mittenthal 30(b)(6) Deposition:

The PSC has also become aware of a 30(b)(6) deposition on J&J document collection regarding contaminated talc taken in the *Leavitt* case.  This deposition was completed within the past 3 weeks.

J&J documents used with J&J's corporate designee make clear that J&J *anticipated* that cosmetic talc might be involved in litigation because of asbestos contamination in the late 1960's and that J&J's legal department should have been informed of this potential in 1969.  Yet, J&J speaking through Mittenthal testified that no "litigation hold" was put in place on documents relating to asbestos testing and talc until decades later in 1999. It is believed that cases involving cosmetic talc contamination and cancer were actually filed against J&J in the 1980's.  This is the exact time-period that is at issue in the ovarian cancer cases pending in this MDL.

The PSC understands that J&J has more than 150,000 boxes of documents in offsite storage that may contain potentially relevant information.  Out of this universe of boxes, J&J testified that only 1,600 were identified as relevant through an index search and were physically pulled for review.  The index search used to identify these boxes did NOT include search terms that are clearly relevant such as "fiber," "cleavage," "inhalation," "RJ Lee," and "Windsor."

Moreover, the search terms used to identify relevant boxes were run only against the index, not the documents themselves.  J&J did not require its searchable index to include the document custodian's name or the product name, and the description of the box entered in the searchable index varies between boxes, thus further limiting the identification of relevant boxes.

J&J's response reveals that that other documents have been lost or purposely destroyed by J&J management staff just prior to J&J's sale of its mining operations in 1989 to a company that was acquired by Imerys.

Obviously, the *failure to collect and review (much less produce)* documents and the destruction of documents during the time that talcum powder litigation was anticipated – has serious implications for the evidence supporting the causation

issues that are before this Court.  The PSC intends to continue to confer with J&J and, if necessary, file appropriate motions with the Court and Special Master.

## 2.  Johnson & Johnson Defendants' Position:

The PSC's complaints about the Johnson & Johnson defendants' production of documents are meritless.

In connection with this MDL proceeding and other talc-related litigation pending across the country, the Johnson & Johnson defendants and their counsel have spent years – and millions upon millions of dollars – searching for and producing hundreds of thousands of documents with potential relevance to plaintiffs' claims in talc litigation.  Yet, no matter how many resources the Johnson & Johnson defendants expend on discovery, the PSC continues to insist that it is not enough, repeatedly pointing to one more example of purportedly "critical" materials that they claim may exist and demanding that the Johnson & Johnson defendants leave no stone unturned in looking for them.  Despite these tactics, the Johnson & Johnson defendants have committed to work with the PSC to resolve discovery disputes through cooperation, rather than require intervention by this Court.  Indeed, while the PSC complains that the size of the Johnson & Johnson defendants' production has increased substantially and criticizes the search terms used to identify relevant materials, the fact is that the PSC was involved in the process for formulating those search terms and the increasing size of the production is the result of the Johnson & Johnson defendants' capitulation to the PSC and plaintiffs' counsel in other cases in consistently demanding production – and re-production – of more documents.  Put simply, the Johnson & Johnson defendants have always been willing to work with plaintiffs on discovery issues.  Yet, the PSC has decided to use the Joint Status Report to raise new discovery issues without first exhausting the meet-and-confer process in an attempt to address them informally.  The Court should reject this attempt to malign the Johnson & Johnson defendants and circumvent proper discovery procedures.

Notwithstanding the above, the Johnson & Johnson defendants believe it is necessary to respond to the substance of the PSC's new discovery allegations, all of which are entirely baseless.

### a.  Talc File Index

Plaintiffs' reference to a "TALC INDEX of documents not produced" is highly misleading in two ways:  (1) it is not in fact a "TALC INDEX"; and (2) there is no basis to say that the relevant documents in that index were not produced.  In

early September 2018, the PSC first contacted the Johnson & Johnson defendants regarding a nearly 200-page document titled, "FILE INDEX" – *not* "TALC INDEX," as plaintiffs incorrectly described it – that they located in defendants' document production.  The index, which described more than 6,000 files regarding products ranging from tampons to suntan lotion, referenced a number of files that the PSC claimed were potentially relevant and had not been located by the PSC in defendants' production.  In response, the Johnson & Johnson defendants explained that the index was no longer in use and referred to files previously maintained in JJCI's regulatory department years ago that have long since been relocated and/or have not been maintained using the "current location" descriptions in the index, making them extremely difficult to locate using the information on the index.  The Johnson & Johnson defendants expected that most, if not all, of the potentially relevant documents on the index would have been collected from their current location.  Nevertheless, the Johnson & Johnson defendants agreed to conduct additional reasonable searches to try to link the documents they produced to this historic regulatory department index.

After conducting the additional searches, the Johnson & Johnson defendants generally found that the contents of the files identified by the PSC were either in their document production or did not contain information pertaining to talc.  There were a few that could not be located.  As to one of them – a file described as "Talc-Ovarian Cancer Study," although the Johnson & Johnson defendants believed that it had already been accounted for in the production, they agreed to conduct *even more searches*.  After dozens of hours and significant resources to locate this needle in the haystack of more than 150,000 boxes of documents in offsite storage, the Johnson & Johnson defendants were finally able to locate the box that contained the materials from that file late last week – *and not surprisingly discovered that they had already been produced*.  The only files that could not be located among the files identified by the PSC were two files relating generally to cosmetics.  Contrary to the PSC's representation, neither of these files contain the word "talc" in the title or description.  For example, one of the files is described on the regulatory file index as follows: "*File Class*:   3004 Regulations, U.S.; *Title:* COSMETIC INGREDIENTS; *Description:* Testing."  That description could refer to any number of the *thousands of cosmetic products* manufactured by JJCI over the years and is hardly "critical for this stage of the MDL," as suggested by plaintiffs.

### b. <u>James Peter Mittenthal 30(b)(6) Deposition</u>

There is also zero factual basis for the PSC's outrageous suggestion that the Johnson & Johnson defendants' corporate representative, Mr. Mittenthal, admitted

during a recent deposition taken in connection with a talc case pending in California state court that the defendants engaged in the spoliation of evidence and failed to perform adequate searches for documents.

For example, the PSC misleadingly asserts that Mr. Mittenthal "conceded that J&J *anticipated* that cosmetic talc would be involved in litigation because of asbestos contamination in the late 1960s and that J&J's legal department should have been informed of this potential in 1969."  (Notably, the PSC changed the word "would" to "might" hours before this submission was due.)  In truth, the plaintiffs in the California litigation simply read certain company documents from that era (which plaintiffs have had in their possession for some time) to Mr. Mittenthal, and he agreed that they were accurately recited.  At no point did Mr. Mittenthal concede or suggest that the Johnson & Johnson defendants had a widespread duty to retain evidence related to possible talc litigation in the 1960s.

Contrary to the PSC's assertion, Mr. Mittenthal also did not provide any new information indicating that "documents had been lost or purposely destroyed by J&J management staff just prior to J&J's sale of its mining operations in 1989 to a company that was acquired by Imerys."  Instead, when confronted by plaintiffs' counsel with a historical document that he had never seen before, which stated that materials related to the "*specifics of mining operations*" – not talc samples or testing documents – had been discarded prior to the sale, Mr. Mittenthal agreed to its contents.  The reality is that plaintiffs have distorted this document in an effort to create a sideshow and cast aspersions on the Johnson & Johnson defendants based on innuendo, rather than actual facts.

Nor is there any truth to the PSC's claim that Mr. Mittenthal made admissions at his recent deposition that the Johnson & Johnson defendants' search for materials in connection with this litigation was inadequate.  Most notably, the PSC incorrectly suggests that Mr. Mittenthal testified that the Johnson & Johnson defendants "did NOT include search terms that are clearly relevant such as 'fiber,' 'cleavage,' 'inhalation' 'RJ Lee,' and 'Windsor'" when looking for documents.  In truth, Mr. Mittenthal merely stated that those search terms were not among the hundreds of search terms used to locate boxes of potentially relevant documents in the Johnson & Johnson defendants' offsite storage facilities.  He never stated or suggested that materials containing these terms were never searched for or collected, or that those terms were appropriate to use.

Finally, the PSC's reference to 150,000 boxes is a red herring.  The Johnson & Johnson defendants conducted reasonable searches (and more) of the archives and

produced responsive documents. There is no basis to believe that further search efforts are called for.  The PSC is once again making mountains out of molehills as plaintiffs look for any excuse to argue that the extraordinary discovery efforts undertaken by the Johnson & Johnson defendants are insufficient.  At some point, enough is enough, and that point is now.  After years of discovery, the PSC has more than enough information to move forward with plaintiffs' claims on the merits. Plaintiffs should not be permitted to needlessly drive up litigation costs and delay the ultimate resolution of the claims at issue with their continued and baseless discovery complaints.

### iii.  PCPC's Position:

Defendant PCPC respectfully requests that the agreed upon *Daubert* schedule not be extended.

### B. 30(b)(6) DEPOSITIONS

**i.** JOHNSON & JOHNSON – The J&J Defendants have agreed to Plaintiffs' request to produce Dr. John Hopkins for a fourth day of deposition, limited to two hours.  That deposition will occur via videoconference on November 5.  The depositions of the J&J witnesses will then be complete.

**ii.** PCPC – Depositions for PCPC are complete.

**iii.** IMERYS – Two witnesses have been deposed for Imerys.  The parties have one deposition remaining with respect to the chain of custody for samples, and the parties are working to finalize a date for this last deposition.

### C. THIRD PARTY WITNESS DEPOSITIONS

The depositions of two third-party witnesses are complete.  The PSC had tentatively scheduled the deposition of an additional third party, William Kelly, for November 8.  Two issues have arisen resulting in the need to postpone the deposition. First, the PSC has become aware that Mr. Kelly is being deposed in state court and wishes to wait to proceed until that deposition is completed.  Secondly, 80% of the documents produced by Mr. Kelly have been withheld as privileged.  Mr. Kelly produced a privilege log which is significantly deficient. The PSC recently presented this issue as well as the applicability of the attorney-client privilege by letter to Judge Pisano.  Imerys and Mr. Kelly are in the process of submitting briefing on potential issues related to this third-party deposition to Judge Pisano. The PSC

also continues to confer with Imerys and counsel for Mr. Kelly on both issues and will reschedule the deposition when the issues have been resolved.

### D. PRIVILEGED DOCUMENTS

Imerys has submitted the issue regarding the claw back of certain documents related to an Imerys employee's communications with her spouse to Judge Pisano. The PSC submitted an opposition to Imerys's assertion of privilege on October 29, 2018.

The parties have been meeting and conferring on the issue related to redactions of testing results by third-party R.J. Lee.

## II.    AMENDED COMPLAINTS WITHOUT MOTIONS FOR LEAVE TO AMEND OR DEFENDANTS' CONSENT

Defendants have sent the PSC a chart of amended complaints that Defendants claim were filed outside the time allowed by Fed. R. Civ. P. 15(a)(1).  Plaintiffs have commented and provided responsive information and resubmitted the chart to Defendants for review, and Defendants have responded.  The parties continue to discuss one issue that remains regarding the need to file motions to amend when all parties consent to the amendment. The parties are working to submit a proposed order to the Court to address any amended complaints that were filed improperly without a motion to leave for amend before the next conference.

## III.    STATUS OF CASES RE-FILED IN THE MDL PER CMO 8

There are 61 cases where Plaintiffs who were previously part of a multi-plaintiff complaint have filed short form complaints in this MDL proceeding but have not complied with CMO 8 in either serving the short form complaint on Defendants or filing a notice of filing on the master docket.  *See* CMO 8, ¶¶ 1 and 5 (requiring plaintiffs to file short form complaints pursuant to CMO 2 and to serve these complaints pursuant to CMO 3); *see also* CMO 3, ¶¶ 3 and 4 (requiring filing of an ECF notice if the original service of process was proper or requiring service of process where the original complaint was not properly served).

There are also 681 plaintiffs from multi-plaintiff cases pending in the MDL who have not filed Short Form Complaints pursuant to CMO 8.  In approximately 88 cases, motions to remand are pending and the filing of a Short Form Complaint

is not appropriate at this time.  Of the 681 who have not refiled an individual single plaintiff case in the MDL, 142, have refiled in non-MDL jurisdictions.  The majority of these plaintiffs have re-filed in California and New Jersey per an agreement between Defendants and the PSC.  The parties will work to submit an order dismissing these duplicate filed cases in the MDL, as it has been determined that jurisdiction in the MDL is not proper in these instances.  For any cases that have been refiled outside of the agreement between the PSC and Defendants, Defendants will work with plaintiffs' counsel in that particular case to get one case dismissed.

## IV.     DUPLICATE FILED CASES

There are 97 plaintiffs in this MDL who have multiple cases pending. Plaintiffs and Defendants have been working to resolve these duplicate cases per the Court's instruction at the September status conference.  The parties have conferred regarding a Stipulation of Dismissal pursuant to Fed. R. Civ. P. 41 (a) (1) (A) (ii) which would seek to resolve the issue. If agreement cannot be reached by the end of the month, competing orders will be submitted for consideration by the Court. There will be an Order to Show Cause Hearing held on November 28th at 10:30 a.m. for all duplicate filed cases that cannot be resolved by that time.

## V.     REPORT ON FEDERAL DOCKET

As of October 15, 2018:

> **A.** There are currently 8,373 cases pending in the MDL in which the Johnson & Johnson Defendants have been served or in which Plaintiffs from multi-plaintiff cases pending in the MDL have filed Short Form Complaints on individual dockets and have not served the Johnson & Johnson Defendants (and have opened case numbers), totaling 9,015 Plaintiffs (including <u>618 Plaintiffs</u> in <u>40 multi-plaintiff</u> cases removed from Missouri state court that have not filed Short Form Complaints on individual dockets, <u>12 Plaintiffs</u> in *Harders* removed from Illinois state court that have not filed Short Form Complaints on individual dockets, <u>10 Plaintiffs</u> in *Lovato* removed from New Mexico state court that have not filed Short Form Complaints on individual dockets, <u>1 Plaintiff</u> in *Robb* removed from Oklahoma state court that has not filed Short Form Complaints on individual dockets, <u>15 plaintiffs</u> from the *Crenshaw* case from the Middle District of Georgia that have not filed Short

Form Complaints on individual dockets, and <u>25 plaintiffs</u> from the *Rodriguez* case from the District of Puerto Rico).

Individual Plaintiffs in the multi-plaintiff cases are in the process of filing Short Form Complaints on individual dockets. Thus far, all of the individual Plaintiffs in the following multi-plaintiff cases have filed Short Form Complaints on individual dockets: *Karen Glenn, et al.* and *Mary Rea, et al.* (one *Rea* Plaintiff, Exia Monroe, a New Jersey resident, has re-filed in New Jersey state court). Additionally, all of the individual Plaintiffs in the *Charmel Rice, et al.* and *Lillie Lewis, et al.* multi-plaintiff cases have filed Short Form Complaints on individual dockets, except individual Plaintiffs Charmel Rice and Lillie Lewis.

There are six Plaintiffs named as the lead Plaintiffs in multi-plaintiff cases who did not refile Short Form Complaints on individual dockets, but filed a Short Form Complaint in their corresponding multi-plaintiff case dockets. These include the lead Plaintiffs from four multi-plaintiff cases removed from Missouri state court (*Brenda Anderson, et al.*, *Lillie Lewis, et al.*, *Charmel Rice, et al.*, and *Jerie Rhode, et al.*), Marie Robb in the *Robb* case removed from Oklahoma State, and Deborah Crenshaw from the *Crenshaw* case originally filed in the Middle District of Georgia.

**B.** There are currently two multi-plaintiff cases removed from Missouri state court and pending in the Eastern District of Missouri, discussed below, that the JPML has not yet transferred into the MDL (totaling

68 plaintiffs).  Motions to dismiss and a motion to remand have been filed in these cases.

The cases pending in the Eastern District of Missouri are listed below along with the judge to which they are assigned.

### Magistrate Judge Shirley Padmore Mensah

Lisa Hitler, et al. v. Johnson & Johnson, et al., Case No. 4:18-cv-01474-SPM

### Judge Audrey G. Fleissing

Eleanor Barsh, et al. v. Johnson & Johnson, et al., Case No. 4:18-cv-01464-AGF

C.   There are a handful of single-plaintiff cases that have been on CTOs and will be transferred in the near future to the MDL.  These cases would not greatly affect the number of cases pending in the MDL absent the plaintiffs in the multi-plaintiff cases.

## VI.   STATE COURT LITIGATION

As of October 15, 2018:

**California:**  There are approximately 560 cases involving 614 plaintiffs pending in the California coordinated proceeding, *Johnson & Johnson Talcum Powder Cases*, Judicial Council Coordinated Proceeding No. 4877. These cases are assigned to Judge Maren E. Nelson, Los Angeles Superior Court.  To date, a *Sargon* hearing has been held, and one case—*Echeverria*—proceeded to trial. Prior to that trial, on July 10, 2017, the court granted Imerys' motion for summary judgment, dismissing all claims against Imerys as to the *Echeverria* case only. The *Echeverria* trial resulted in a plaintiff verdict against the Johnson & Johnson Defendants; however, on October 20, 2017, the Court granted the Johnson & Johnson Defendants' motions for judgment notwithstanding the verdict and, alternatively, for a new trial.  Elisha Echeverria, Acting Trustee of the 2017 Eva Echeverria Trust, filed her Notice of Appeal on December 18, 2017. The Johnson & Johnson Defendants filed their Cross-Notice of Appeal on January 4, 2018.  Appellants' Opening Brief was filed on July 18, 2018, and Respondents' and Cross-Appellants' Brief is due in November 2018.

On May 3, the Court ordered the J&J Defendants to file their Motion to Quash as to the non-California Plaintiffs on personal jurisdictional grounds before ruling on Plaintiffs' request for jurisdictional discovery.  Plaintiffs filed their amended master complaint on May 14, 2018.   Defendants filed their motion to quash Plaintiffs' Second Amended Complaint on June 29, 2018.  The Court further ordered that once the J&J Defendants filed their Motion to Quash the non-California Plaintiffs, Plaintiffs must submit a proposed jurisdictional "discovery plan" by July 16, 2018 "specifically outlining the discovery [Plaintiffs' Executive Committee] requires to oppose the motion(s) and how it has a tendency to show that specific jurisdiction may be exercised" over the J&J Defendants. Pursuant to the Court's order, Plaintiffs submitted their discovery plan.  On August 15, 2018, also pursuant to the Court's order, Plaintiffs filed a second motion seeking jurisdictional discovery which was set for hearing on October 23, 2018.  To date, general discovery (liability and causation) as well as jurisdictional discovery has not yet been ordered in the JCCP.  A case management conference is scheduled for December 4, 2018, which will include a hearing to discuss Plaintiffs' Motion to Conduct Jurisdictional Discovery.

**Delaware**: There are currently 197 cases pending in the Superior Court of Delaware in which the Johnson & Johnson Defendants have been served. All of the Delaware cases have been consolidated before the Hon. Charles E. Butler.  On January 19, 2017, the Johnson & Johnson Defendants filed a motion to dismiss for lack of personal jurisdiction. On January 31, 2017, Plaintiffs served jurisdictional discovery. On March 2, 2017, the Johnson & Johnson Defendants filed a motion for protective order to quash the jurisdictional discovery. Briefing on the motion for protective order was completed on April 17, 2017 and is awaiting an argument date. Judge Butler ordered additional briefing from all parties on the *Bristol Myers* decision to be submitted by September 4, 2017. On December 21, 2017, Judge Butler issued an order requesting Plaintiffs respond to questions about jurisdictional discovery by January 31, 2018. Plaintiffs filed briefing in response to this request. On February 14, 2018, Judge Butler sent a letter to all counsel noting that jurisdictional discovery and personal jurisdiction are too intertwined to be treated separately and requesting Plaintiffs submit any supplemental briefing on personal jurisdiction by March 16, 2018. On March 16, 2018, Plaintiffs submitted supplemental briefing on personal jurisdiction.  Oral argument on Defendants' motions to dismiss for lack of personal jurisdiction took place on July 30, 2018. On September 10, 2018, the Court granted Johnson & Johnson and Johnson & Johnson Consumer Inc.'s motion to dismiss the claims of nonresident plaintiffs based on lack of personal jurisdiction and, therefore, dismissed the nonresident plaintiffs' claims

against the Johnson & Johnson Defendants.  On the same day, the Court also granted the Johnson & Johnson Defendants' motion for a protective order to quash the nonresident plaintiffs' jurisdictional discovery requests.  Plaintiffs have filed a motion for Reargument that is pending.

**Missouri:** There are currently 15 cases, with a total of 605 plaintiffs pending in the 22nd Judicial Circuit Court, St. Louis (City) in which Defendants have been served.

Trial in the case of *Daniels v. Johnson & Johnson, et al.* resulted in a defense verdict on March 3, 2017 (individual claim filed in the multi-plaintiff *Valerie Swann* matter).  Plaintiffs filed a motion for new trial on April 10, 2017, which is pending before the trial court.

Appeals are pending from judgments against the Johnson & Johnson Defendants and Imerys in the *Deborah Giannecchini* and *Lois Slemp* cases.

Trial in the case of *Michael Blaes on behalf of Shawn Blaes v. Johnson & Johnson, et al.* before Judge Rex Burlison is currently stayed and briefing on Defendants' petitions for writs of prohibition is pending before the Missouri Supreme Court on venue challenges.  Oral argument took place on February 27, 2018. On March 2, 2018, the Missouri Supreme Court issued amended preliminary writs of prohibition ordering that Judge Burlison may proceed only with a determination of jurisdiction, but can take no other action until further order by the Missouri Supreme Court.

In the *Lois Slemp* case, that trial court found that plaintiffs had established personal jurisdiction exists in Missouri state court over the Johnson & Johnson defendants and Imerys.   The *Slemp* case is on direct appeal to the Missouri Court of Appeals.  The Missouri Court of Appeals denied Johnson & Johnson's writ of prohibition in the *Slemp* case.

On October 17, 2017, the Missouri Court of Appeals, Eastern District, reversed and vacated the judgment in the *Jacqueline Fox* case for lack of personal jurisdiction.  The Court also rejected Plaintiff's request to remand the case to the trial court to attempt to establish jurisdictional facts.  On December 19, 2017, the Court denied Plaintiff's Motion for Rehearing. On March 6, 2018, the Missouri Supreme Court denied Plaintiff's requested review of the decision.  On March 12, 2018, the Missouri Court of Appeals issued the mandate.  On March 30, 2018, the

trial court entered an order enforcing the mandate from the appellate court that the *Fox* judgment be reversed and vacated for lack of personal jurisdiction.

On June 29, 2018, consistent with the Court's opinion and ruling in *Fox*, the Missouri Court of Appeals, Eastern District, reversed and vacated the judgment in the *Gloria Ristesund* case for lack of personal jurisdiction. Consistent with the *Fox* opinion, the Court also rejected Plaintiff's request to remand the case to the trial court to attempt to establish jurisdictional facts. On August 7, 2018, the Missouri Court of Appeals, Eastern District, denied Plaintiff's application for transfer to the Missouri Supreme Court.

The multi-plaintiff *Gail Lucille Ingham, et al. v. Johnson & Johnson, et al.* case was completed on July 12, 2018.

The St. Louis Court has set the following trial dates in the following cases:

January 21, 2019 – Trial in *Vicki Forrest, et al. v. Johnson & Johnson, et al.*

April 8, 2019 – Trial in *Tracey Young, et al. v. Johnson & Johnson, et al.*

August 5, 2019 – Trial in *Leewing Loyd, Sr., et al. v. Johnson & Johnson, et al.*

October 7, 2019 – Trial in *Tenesha Farrar, et al. v. Johnson & Johnson, et al.*

**New Jersey:** There are currently 501 cases pending in the Atlantic County Superior Court Multicounty Litigation, *In re: Talc-Based Powder Products Litigation*, Case No. 300. The coordinated proceedings were jointly assigned to Judges Johnson and Mendez by the New Jersey Supreme Court, and with Judge Johnson's retirement, the parties expect that they will continue to be managed by Judge Mendez pursuant to the Supreme Court Order. The cases are currently stayed for discovery purposes pending resolution of the plaintiffs' appeal of the ruling by Judge Johnson on the *Kemp* issues. On January 8, 2018, the New Jersey Appellate Division issued a *Sua Sponte* Order staying the appeals for six months or until the New Jersey Supreme Court decides the appeal pending in *In re: Accutane Litigation*, A-25-17, 079958, and *In re: Accutane Litigation*, A-26/27-17, 079933. Oral argument occurred in the Accutane Litigation on April 23, 2018. On August 1, 2018, the New Jersey Supreme Court affirmed the trial court's decision in the *Accutane Litigation*, and held that the *Daubert* factors are incorporated into New Jersey's Rule 702 analysis of the reliability of expert testimony. The stay has since been lifted in the *Balderrama* and *Carl* cases and the Appellate Division has requested that the

parties submit supplemental briefing on certain discreet issues. Supplemental briefing will be completed by October 26th.

**Florida:** There are nineteen cases pending in Florida state court. There are five cases pending in Broward County, Florida, including three cases before Judge Michael A. Robinson, one case before Judge David Haimes, and one case before Judge Sandra Periman. There are four cases pending in Miami-Dade County, Florida, including one case before Judge Michael Hanzman, one case before Judge Dennis Murphy, one case before Maris de Jesus Santovenia, and one case before Judge Barbara Areces. There are three cases pending in Hillsborough County, Florida before Judge Rex Barbas. There is one case pending in Osceola County, Florida before Judge Margaret Schreiber. There are two cases pending in Palm Beach County, Florida (one case before Judge Jaime Goodman and one case before Meenu Sasser). There is one case pending in Volusia County, Florida. There are two cases in Orange County, Florida before Judge Jose R. Rodriguez. There is one case pending in Sarasota County before Judge Andrea McHugh.

In the *Ricketts* matter, pending in Broward County, Imerys' Motion to Dismiss for Lack of Personal Jurisdiction was denied on November 9, with the Court granting 30 days for Imerys to file an appeal. That appeal was filed on December 8, 2017.

**Georgia:** There are seven cases pending in Georgia state court. One in Fulton County, Georgia before Judge Jane Morrison which is set for trial in March of 2019. The court has indicated the case will be tried in March 2019, but Defendants' request for a re-setting to May 2019 is pending. The other six cases are pending in Gwinnet County, Georgia before Judge Shawn F. Bratton.

**Illinois:** There are twenty-two cases pending in Illinois state court. There are two cases in Madison County, Illinois state court before Judge William Mudge. There are eighteen cases pending in Cook County, Illinois, which have been consolidated in the *Harris* matter before Judge Gillespie. There is one case pending in McLean County, Illinois before Judge Rebecca Foley. There is one case pending in St. Clair County.

**Pennsylvania:** There is one case pending in state court in Allegheny County, PA before Judge Robert Colville. On November 13, 2017, the Court granted Imerys' Preliminary Objections to personal jurisdiction in Pennsylvania and dismissed plaintiff's claims against Imerys in this case. There are three cases pending in state court in Philadelphia County, PA (one before Judge Shelley Robins-Newand and one case before Judge John M. Younge).

**Louisiana**: There are sixteen cases pending in Louisiana State Court.  There are twelve in the Parish of Orleans, Louisiana, including two cases before Judge Robin M. Giarrusso, two cases before Judge Melvin Zeno, one case before Judge Paulette Irons, three cases before Judge Kern Reese, one case before Judge Piper Griffin, one case before Judge Donald Johnson, one case before Judge Christopher Bruno, and one case before Judge Rachael Johnson. There are four cases pending in East Baton Rouge Parish, one before Judge Janice Clark, one before Judge Donald Johnson, one before Judge Todd Hernandez, and one before Judge R. Michael Caldwell.

In the *McBride* matter, Imerys' Motion to Dismiss for Lack of Personal Jurisdiction was granted on December 1, 2017. On January 3, 2018, the Court denied the Plaintiff's motion for a new trial on this ruling.  In the *Rose Bowie* case, the Johnson and Johnson Defendants and Imerys have filed several motions, which are due to be heard on May 18, 2018, along with a motion for an expedited trial setting.

## VII.    STATUS OF PENDING MOTIONS

    **A.** The list of motions pending in individual cases is attached hereto as Exhibit A.

    **B.** On July 14, 2017, the Court issued a dismissal of the *Estrada* Consumer Class case, finding that Estrada did not allege an injury in fact. ECF Nos. 50, 51.  The Court dismissed and entered judgment in Estrada's lawsuit on August 10, 2017. ECF No. 53. Estrada has appealed this decision.  On September 6, 20018, a panel of the Third Circuit Court of Appeals affirmed the Court's decision.  Estrada filed a petition for rehearing *en banc* on September 20, 2018.

Respectfully submitted,

s/Susan M. Sharko
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  973-549-7000
Facsimile:  973-360-9831
Email:  susan.sharko@dbr.com

s/Gene M. Williams
Gene M. Williams
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
Telephone:  713-227-8008
Facsimile:  713-227-9508
Email:  gmwilliams@shb.com

s/John H. Beisner
John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  202-371-7000
Facsimile:  202-661-8301
Email: john.beisner@skadden.com

s/Mark K. Silver
Mark K. Silver
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
Telephone:  973-631-6016
Facsimile:  973-267-6442
Email: msilver@coughlinduffy.com

*s/Thomas T. Locke*
Thomas T. Locke
SEYFARTH SHAW LLP
975 F. Street, NW
Washington, DC 20004
Telephone: 202 463-2400
Email: tlocke@seyfarth.com

*s/Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone:  703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
Telephone:  334-269-2343
Email: leigh.odell@beasleyallen.com

*s/Christopher M. Placitella*
Christopher M. Placitella
COHEN PLACITELLA ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701
Telephone:  888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com

# EXHIBIT A

## STATUS OF PENDING MOTIONS IN INDIVIDUAL CASES

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Ellen Gavin v. Johnson & Johnson, et al.* | 3:17-cv-05907 | Plaintiffs' Motion to Remand filed August 10, 2017. Fully briefed. Imerys' Motion to Dismiss filed 9/8/17. Fully briefed 10/10/17. |
| *Edna Brown v. Johnson & Johnson, et al.* | 3:17-cv-05724 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |
| *Carolyn Bennett v. Johnson & Johnson, et al.* | 3:17-cv-05723 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |
| *Maureen Abbeduto, et al. v. Johnson & Johnson, et al.* | 3:17-cv-05812 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |
| *Kim Knight v. Johnson & Johnson, et al.* | 3:17-cv-05796 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Sharon McBee, et al. v. Johnson & Johnson, et al.* | 3:17-cv-5720 | Johnson & Johnson Defendants' Motion to Dismiss filed September 5, 2017. Motion to be terminated pursuant to CMO 8.<br><br>Imerys' Motion to Dismiss filed 9/5/17. Fully briefed 10/13/17.  Motion to be terminated pursuant to CMO 8. |
| *Donna McNichols, et al. v. Johnson & Johnson, et al.* | 3:17-cv-5719 | Johnson & Johnson Defendants' Motion to Dismiss filed September 5, 2017. Motion to be terminated pursuant to CMO 8.<br><br>Imerys' Motion to Dismiss filed 9/5/17. Fully briefed 10/13/17. Motion to be terminated pursuant to CMO 8. |
| *Sandra Lee, et al. v. Johnson & Johnson, et al.* | 3:17-cv-03548 | Plaintiffs' Motion to Remand filed September 25, 2017. Johnson & Johnson Defendants' Opposition filed October 24, 2017.  Defendant Imerys' Opposition filed October 25, 2017.<br><br>Johnson & Johnson Defendants' Motion to Dismiss filed 10/24/2017.  Plaintiffs' Opposition filed November 8, 2017.<br><br>Imerys' Motion to Dismiss filed 10/9/17. Fully briefed. |
| *Ruth Carver v. Johnson & Johnson, et al.* | 3:17-cv-03549 | Plaintiffs' Motion to Remand filed September 25, 2017. Johnson & Johnson Defendants' Opposition filed October 24, 2017.  Defendant Imerys' Opposition filed October 25, 2017. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| | | Johnson & Johnson Defendants' Motion to Dismiss filed 10/24/2017.  Plaintiffs' Opposition filed November 8, 2017.<br><br>Imerys' Motion to Dismiss filed 10/9/17. Fully briefed. |
| *Rebecca Bowers v. Johnson & Johnson, et al.* | 3:17-cv-12308 | Plaintiffs' Motion to Remand filed December 4, 2017. Fully briefed. |
| *Peck, et al. v. Johnson & Johnson, et al.* | 3:17-cv-12665 | Plaintiffs' Motion to Remand filed January 11, 2018. Johnson & Johnson Defendants' Opposition filed January 22, 2018.  Defendant Imerys' Opposition filed February 7, 2018. |
| *Anderson, et al. v. Johnson & Johnson, et al.* | 3:17-cv-2943 | Plaintiff's Motion for Voluntary Dismissal without prejudice filed February 15, 2018. Fully briefed. 2018. |
| *Chathapana, Davahn v. Johnson & Johnson, et al.* | 3:17-cv-05853 | Imerys' Motion to Dismiss filed 9/5/17. No opposition filed.  Motion to be terminated pursuant to CMO 8. |
| *Femminella, Joan v. Johnson & Johnson, et al.* | 3:17-cv-05860 | Imerys' Motion to Dismiss filed 9/5/17. No opposition filed.  Motion to be terminated pursuant to CMO 8. |
| *Glenn, Karen v. Johnson & Johnson, et al.* | 3:17-cv-05071 | Imerys' Motion to Dismiss filed 8/21/17. No opposition filed. Motion to be terminated pursuant to CMO 8. |
| *Guptill, Mary v. Johnson & Johnson, et al.* | 3:17-cv-05869 | Imerys' Motion to Dismiss filed 9/5/17. No opposition filed.  Motion to be terminated pursuant to CMO 8. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Dawn Hannah v. Johnson & Johnson, et al.* | 3:18-cv-01422 | Plaintiff's Motion to Remand filed March 5, 2018.  Fully Briefed.<br><br>Imerys' Motion to Dismiss filed 4/4/18. Fully briefed. |
| *Callahan, Janice v. Johnson & Johnson, et al.* | 3:18-cv-05557 | Plaintiff's Motion to Remand filed May 4, 2018.  Fully briefed.<br><br>Defendant Imerys' Motion to Dismiss filed October 10, 2018.  Plaintiffs' Opposition filed October 22, 2018. Imerys' Reply due November 6, 2018. |
| *Smith, Phyllis v. Johnson & Johnson, et al.* | 3:18-cv-05556 | Plaintiff's Motion to Remand filed May 4, 2018.  Fully briefed.<br><br>Defendant Imerys' Motion to Dismiss filed October 9, 2018. Plaintiffs' Opposition filed October 22, 2018. Imerys' Reply Brief due November 6, 2018. |
| *Baker v. Johnson & Johnson, et al.* | 3:17-cv-07712 | Plaintiff's Motion to Remand filed June 8, 2018.  Fully briefed.<br><br>Defendant Imerys' Motion to Dismiss filed July 9, 2018. No oppositions were filed.<br><br>Plaintiffs' Motion to Stay or Strike Defendant Imerys' Motion to Dismiss filed July 17, 2018. Defendant Imerys' Opposition filed July 27, 2017. |
| *Cartwright, Darren v. Johnson & Johnson, et al.* | 3:18-cv-05535 | Plaintiffs' Motion to Remand filed July 25, 2018.  Fully briefed.<br><br>Defendant Imerys' Motion to Dismiss filed August 24, 2018. Fully Briefed. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Kassimali, Maureen, et al. v. Johnson & Johnson, et al.* | 3:18-cv-05534 | Plaintiffs' Motion to Remand filed July 25, 2018. Fully briefed.<br><br>Defendant Imerys' Motion to Dismiss filed August 24, 2018. Fully Briefed. |
| *Kehoe, Tracey, et al. v. Johnson & Johnson, et al.* | 3:18-cv-11509 | Plaintiffs' Motion to Remand filed July 26, 2018.  Defendants' Opposition filed August 27, 2018.  Plaintiffs' Reply to Johnson & Johnson Defendants' filed October 8, 2018.<br><br>Defendant Imerys' Motion to Dismiss filed October 23, 2018. Plaintiffs' Opposition due November 22, 2018. |
| *Storm, Cathy v. Johnson & Johnson, et al.* | 3:18-cv-10321 | Plaintiff's Motion to Remand filed July 3, 2018. Johnson & Johnson Defendants' Opposition filed August 2, 2018. Defendant Imerys' Opposition filed August 3, 2018.<br><br>Defendant Imerys' Motion to Dismiss filed October 11, 2018. Plaintiffs' Opposition due November 10, 2018. |
| *Jiminez, Sandra, et al. v. Johnson & Johnson, et al.* | 3:18-cv-12526 | Plaintiffs' Motion to Remand filed August 23, 2018.  Fully briefed. |
| *Johnson, Amy v. Johnson & Johnson, et al.* | 3:18-cv-01423 | Plaintiffs' Motion to Remand filed September 26, 2018. Defendants' Opposition filed October 26, 2018. Plaintiffs' Reply due November 12, 2018. |
| *Gavin, Sherron, et al. v. Johnson & Johnson, et al.* | 3:18-cv-10319 | Plaintiffs' Motion to Remand filed September 26, 2018.  Defendants' Oppositions filed October 26, 2018. Plaintiffs' Reply due November 12, 2018. |
| *Reising, Amanda, et al. v. Johnson & Johnson, et al.* | 3:18-cv-10320 | Plaintiffs' Motion to Remand filed September 26, 2018.  Defendants' Oppositions filed October 26, 2018. Plaintiffs' Reply due November 12, 2018. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Farra, Donna v. Johnson & Johnson, et al.* | 3:18-cv-13432 | Plaintiffs' Motion to Remand filed September 28, 2018. Letter from Johnson & Johnson Defendants filed October 29, 2018. |
| *Gendelman, Robert v. Johnson & Johnson, et al.* | 3:17-cv-00461 | Defendant Imerys' Motion to Dismiss filed October 5, 2018.  Plaintiffs' Opposition filed October 16, 2018. Imerys' Reply due October 31, 2018. |