

350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
phone:  973-267-0058
fax:  973-267-6442
www.coughlinduffy.com

Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
phone:  212-485-0105
fax: 212-480-3899

MARK K. SILVER, ESQ.
DIRECT DIAL: (973) 631-6045
EMAIL:  MSILVER@COUGHLINDUFFY.COM

November 13, 2018

*VIA ECF and Email*
The Honorable Freda L. Wolfson, U.S.D.J.
THE Honorable Lois H. Goodman, U.S.M.J.
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

Re:   *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2738

Dear Judge Wolfson:

As you are aware, this firm, together with Gordon & Rees, is counsel for Defendant Imerys Talc America, Inc. ("Imerys").   Imerys writes the Court to advise it on an issue developing regarding Imerys' Transmission Electron Microscopy Grids ("TEM Grids") and the Court's September 5, 2018 Order enjoining Imerys from producing same in other cases.

By way of background, in August 2018, Imerys first brought to Your Honor's attention the fact that it was caught between two masters - this Court and the Court presiding over the matter of the California state action entitled *Leavitt v. Johnson & Johnson, et. al.*, Alameda County Superior Court Case No. RG17882401 with respect to the production of its unique and fragile TEM Grids ("the *Leavitt* Action").  In August 2018, Your Honor held a telephonic conference that ultimately resulted in the issuance of the September 5, 2018 Order enjoining Imerys from producing TEM Grids to anyone until a TEM Grid inspection protocol had been negotiated with the PSC and entered by this Court. (See Exhibit A).

Since the date of that Order, Imerys and the PSC have been diligently working together to negotiate a protocol.  At one point it appeared as though the parties had reached an impasse.  However, Imerys made what it considers to be some major concessions and, on November 6, 2018, circulated a revised draft protocol to the PSC.  Imerys understands that the PSC is still reviewing the new proposed protocol and Imerys is willing to give the PSC whatever time it needs to respond with its comments.



However, an application has been filed in the *Leavitt* Action that could have an impact on this litigation and implicates Your Honor's Order. The Plaintiffs in the *Leavitt* Action, represented by Joseph Satterley, Esq. from the law firm of Kazan, McClain, Satterley & Greenwood, have filed an application (on short notice) seeking to compel Imerys to produce three categories of TEM Grids. Specifically, the *Leavitt* Plaintiffs seek production of: 1) 24 "Vermont Product Grids," which are grids containing talc of the type and grade used in Johnson's Baby Powder; 2) 4 "Waste Rock Grids"; and 3) 22 "Infill Grids," (A copy of the application is attached hereto at Exhibit B.)

The first category of TEM Grids sought by the Kazan firm fall squarely within the Court's September 5, 2018 Order. However, given how TEM Grids is defined in the September 5, 2018 Order, the other two requested categories fall into more of a grey area which unintentionally may leave the Order open to interpretation.

While Imerys believes that the September 5, 2018 Order enjoins it from producing all of its TEM Grids (as evidenced by the last line of the Order), Imerys is concerned that someone may argue that the definition of TEM Grids in the Order has an unintended limiting effect.

This issue was first raised to the PSC, informally, during an October 25, 2018 meet and confer with the PSC on another issue. The PSC advised that it appreciated that the undersigned counsel was advising them of the issue. The PSC stated that it was their initial thought that the "Waste Rock" and "Infill" TEM Grids were relevant to this MDL litigation, but wanted to discuss amongst themselves. On November 6, 2018, Imerys, still having to respond to the *Leavitt* plaintiffs, asked for the PSC's position, in writing, on the issue. On November 9, 2018, the undersigned counsel once again emailed the PSC, advising it of the Kazan firm's application in *Leavitt*, and requested the PSC's position by noon eastern on Monday, November 12, 2018 (which was the date that Imerys' opposition brief was due in the *Leavitt* Action). On Monday, November 12, 2018 at 11:48 a.m., the undersigned counsel emailed the PSC for a third time asking it for its position. The PSC responded this morning advising that it had overlooked the November 12 email and apologizing for same. However, it still never provided its position.

Simply stated, Imerys is trying to determine if there is an actual issue in controversy. In the *Leavitt* Action, Imerys is opposing production of the 24 "Vermont Product Grids," as production would be a clear and undeniable violation of this Court's September 5, 2018 Order. If the PSC believes that the "Waste Rock Grids" and "Infill Grids" are also covered by the September 5, 2018 Order, then Imerys will continue to oppose that production as well. As Imerys did not have the benefit of the PSC's position by the time its opposition was due, Imerys submitted the attached opposition brief in which Imerys opposed production of all three categories of grids. (See Exhibit C.)



A hearing in the *Leavitt* Action is scheduled for this Thursday, November 15, 2018. Imerys is concerned that it could be in a position of trying to comply with conflicting orders. To that end, Imerys writes the Court seeking a telephonic conference with Your Honor wherein it can be determined if it is the PSC's position that the "Waste Rock" and "Infill" TEM Grids are covered by the Court's September 5, 2018 Order.  If that is in fact the case, an Order from Your Honor stating same so that Imerys can avoid being the subject of conflicting orders between this action and the *Leavitt* Action is also requested.

We thank Your Honor for your time and attention to this matter.

Respectfully submitted,
COUGHLIN DUFFY LLP
*/s/ Mark K. Silver*
Mark K. Silver

Nancy M. Erfle, Esq.
Ann Field, Esq.
Gordon & Rees Scully Mansukhani
121 SW Morrison Street, Ste. 1575
Portland, OR 97204

MKS/

Cc:    Plaintiffs' Steering Committee (via ECF and e-mail)
         Susan Sharko, Esq. (via ECF and e-mail)
         Thomas Locke, Esq. (via ECF and email)

3

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ) | MDL NO. 16-2738 (FLW)(LHG) |
| IN RE JOHNSON & JOHNSON ) | |
| ) | PROTECTIVE ORDER |
| TALCUM POWDER PRODUCTS ) | REGARDING |
| ) | DEFENDANT IMERYS TALC |
| MARKETING, SALES PRACTICES, ) | AMERICA, INC.'S |
| ) | TRANSMISSION ELECTRON |
| AND PRODUCTS LIABILITY ) | MICROSCOPY GRIDS |
| ) | |
| LITIGATION ) | |

WHEREAS, Plaintiffs in the above captioned action, as well as other actions throughout the country in which plaintiffs have made personal injury claims regarding Defendants' talcum powder ("Talcum Powder Litigation"), have requested that Imerys Talc America, Inc. ("Imerys") produce for inspection Transmission Electron Microscopy Grids that may contain historical specimens of talc that was provided to Johnson & Johnson Consumer Inc. for Johnson's® Baby Powder or Shower to Shower® (collectively "TEM Grids") for testing;

WHEREAS, Imerys has represented it is in possession of a limited number of TEM Grids responsive to Plaintiffs' request; and

WHEREAS, it is Imerys' position that: 1) due to the age of the TEM Grids in question, the handling of the TEM Grids could lead to irreparable damage of the TEM Grids; and 2) examination of the TEM Grids could potentially be a form of "destructive testing" because the act of a TEM beam coming into contact with a TEM Grid during an examination of the TEM Grid could possibly lead to the TEM Grid breaking; and

WHEREAS, it is also Imerys' position that due to the fragile nature of the TEM Grids and the potential for their destruction through examination, a protocol for examination of the TEM Grids must be negotiated and implemented before any inspection of the TEM Grids can occur (by Defendants or Plaintiffs); and

WHEREAS, Imerys has brought an application before this Court seeking a protective order with respect to the production of the TEM Grids so that they can be produced in an orderly manner to avoid the potential spoliation of irreplaceable evidence; and

WHEREAS, it is the PSC's position that 1) TEM Grids in question constitute evidence highly relevant to pending and future claims in this MDL as well as pending and future personal injury claims involving talcum powder products in other jurisdictions; 2) due to the nature of the TEM Grids, an organized and fair process for allowing access to the TEM Grids for purposes of inspection

2

would inure to the benefit of all Plaintiffs; and 3) that two weeks are needed for all parties to negotiate and finalize a reasonable protocol; and

WHEREAS, this Court has considered the positions of both Imerys and the PSC, and for good cause shown; on the 14th Day of August 2018, it is hereby

ORDERED that Imerys' request for a Protective Order is GRANTED;

IT IS FURTHER ORDERED that in order to protect the integrity of the TEM Grids, Imerys shall retain possession and control over all TEM Grids and is hereby Ordered not to release those TEM Grids to any person or entity for inspection and/or testing until an agreed upon protocol has been negotiated between the parties and approved by this Court.  In addition, Imerys is ordered not to inspect and/or test those TEM Grids until an agreed upon protocol has been negotiated between the parties and approved by this Court.

_Freda L. Wolfson_   9/5/18

Freda L. Wolfson, U.S.D.J.

# EXHIBIT B

E-SERVICE
62647694
Nov 07 2018
02:25PM
File & ServeXpress

1   Joseph D. Satterley, Esq. (C.S.B. #286890)
      JSatterley@kazanlaw.com
2   Denyse F. Clancy, Esq. (C.S.B. #255276)
      DClancy@kazanlaw.com
3   Mark A. Swanson, Esq. (C.S.B. #175614)
      MSwanson@kazanlaw.com
4   Andrea Huston, Esq. (C.S.B # 200610)
      AHuston@kazanlaw.com
5   Henry A. Steinberg, Esq. (C.S.B. #284998)
      hsteinberg@kazanlaw.com
6   KAZAN, McCLAIN, SATTERLEY & GREENWOOD
    A Professional Law Corporation
7   Jack London Market
    55 Harrison Street, Suite 400
8   Oakland, California 94607
    Telephone: (510) 302-1000
9   Facsimile: (510) 835-4913

10  Attorneys for Plaintiffs

11              SUPERIOR COURT OF CALIFORNIA

12                 COUNTY OF ALAMEDA

13

14  TERESA ELIZABETH LEAVITT and DEAN      Case No. RG17882401
    J. MCELROY,
15                                          *Assigned for all Pre-Trial Purposes to
                Plaintiffs,                  Judge Brad Seligman, Department 23*
16
          vs.                               **MEMORANDUM OF POINTS AND
17                                          AUTHORITIES IN SUPPORT OF
    JOHNSON & JOHNSON, et al.,              PLAINTIFFS' MOTION TO COMPEL
18                                          THE PRODUCTION OF GRIDS FROM
                Defendants.                 DEFENDANT IMERYS TALC AMERICA,
19                                          INC.**

20                                          Filed Concurrently with Notice of Motion;
                                            Separate Statement; Declaration of Henry A.
21                                          Steinberg; Index of Exhibits

22                                          Date:          November 15, 2018
                                            Time:          1:30 p.m.
23
                                            Trial Date:    December 10, 2018
24                                          Action Filed:  November 14, 2017

25                                          **Reservation No.    R-2019518**

26  ///

27  ///

28  ///

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1691838.1

1

1

## TABLE OF CONTENTS

Page

2

3    I.      INTRODUCTION..................................................................................................4

4    II.     STATEMENT OF FACTS....................................................................................4

5            B.      Mrs. Leavitt's lung tissue contains the *same* ingredients as Johnson's Baby
6                    Powder, including fibrous talc, chrysotile asbestos, and tremolite asbestos.............5

7            D.      The underlying grids (the actual evidence) and not Imerys Talc America's
                     count sheets show whether there is asbestos in the talc. ............................................6

8            F.      After this Court gave Plaintiffs a motion to compel reservation number for
9                    the TEM Grids, Imerys Talc America attempted to tie the grids up in the
                     MDL. ............................................................................................................................9

10           G.      At the third IDC regarding the TEM Grids, ITA agreed the TEM Grids
11                   should be inspected but claimed its hands were now tied by the MDL. ...................9

12           H.      At the fourth IDC on this issue, ITA conceded that it had limited its
                     identification of grids in response to the Court's Order...........................................10

13           I.      On October 16, 018, ITA identified approximately 1400 TEM Grids related
14                   to its Vermont talc .....................................................................................................11

15           J.      Plaintiffs requested 50 of the 1400 TEM grids to review. .......................................11

16           K.      At Plaintiffs' November 2, 2018 Ex Parte Application for an Order
                     Shortening Time, this Court set the hearing date for November 15, 2018................12

17           L.      At the continued Ex Parte hearing on November 6, 2018, at 3:00 pm, ITA
18                   produced a Draft Protocol for the production of Grids in the MDL .........................13

19   III.    ARGUMENT .......................................................................................................14

20           A.      This State Court is Sovereign and is not limited by an Order or Draft
                     Protocol in the MDL Court. .....................................................................................14

21           B.      Plaintiffs require the actual grids, and not Imerys Talc America's
22                   interpretation of the grids. .......................................................................................15

23           C.      Plaintiffs' experts will not "destroy" the grids.......................................................16

24   IV.     CONCLUSION ...................................................................................................17

25

26

27

28

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1691838.1                                          2

MEMO OF P&A - PLFS' MTC PRODUCTION OF GRIDS FROM IMERYS TALC AMERICA, INC.

1

## **TABLE OF AUTHORITIES**

2
                                                                                    **Page(s)**

3  **Cases**

4  *Auto Equity Sales, Inc. v..*
5     *Sup. Ct* (1962) 57 Cal.2d 450, 455 ..............................................................................4, 15

6  *Donovan v. City of Dallas*
7     (1964) 377 U.S. 408, 412 ....................................................................................................14

8  *Fowler v. Ross*
   (1983) 142 Cal.App.3d 472 .................................................................................................14

9  *Kline v. Burke Const. Co.*
10    (1922) 260 U.S. 226 ............................................................................................................14

11 *Lyons v. Colgate-Palmolive Company*
      (2017) 16 Cal.App.5th 463 .................................................................................................15
12
13 *Smith, Smith & Kring v. Superior Court (Oliver)*
      (1997) 60 Cal.App.4th 573.................................................................................................17

14 *Wagner v. Apex Marine Ship Management Corp.*
15    (2000) 83 Cal.App.4th 1444................................................................................................4, 14

16 **Statutes**

17 California Discovery Act .............................................................................................................15

18 Civil Discovery Act......................................................................................................................14

19 Code of Civil Procedure § 2023.030(c) ...................................................................................4, 17

20 Evidence Code § 140....................................................................................................................16

21 **Other Authorities**

22 Wegner, et al., Cal. Practice Guide: Civ. Trials and Evid. (The Rutter Group 2017)
23    ¶ 8:431 ...................................................................................................................................16

24

25

26

27

28

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

I.    **INTRODUCTION**

Plaintiffs move to compel the production by Imerys Talc America ("ITA") of 50 of the 1,400 TEM grids applicable to ITA's Vermont talc operations. This request is made so that Plaintiffs' experts may immediately examine and return the grids.  The protocol is simple, because the production of TEM grids occurs regularly in asbestos litigation. Further, any protocol that may have been agreed to by the parties in the federal MDL in Massachusetts is ***not*** binding on this Court. On the contrary, decisions of federal courts are not binding on state courts. [*See Wagner v. Apex Marine Ship Management Corp.* (2000) 83 Cal.App.4th 1444, 1451] "While decisions of the United States Supreme Court are binding on state courts on federal questions, 'the decisions of the lower federal courts, while persuasive, are not binding on us. [Citation.] Thus, in the absence of a controlling United States Supreme Court opinion, we make an independent determination of federal law.' [Citations.]") [*Auto Equity Sales, Inc. v.. Sup. Ct* (1962) 57 Cal.2d 450, 455.]

The talc grids, containing the talc at issue in this case, are critical evidence. Indeed, Imerys Talc America uses its test results—its own interpretation of what the grids show—to argue that its talc did not contain asbestos. Plaintiffs pray that this Court order the production of the 50 talc grids that Plaintiffs have requested. Alternatively, Plaintiffs request that this Court order under C.C.P. § 2023.030(c) that Imerys Talc America be precluded from introducing into evidence any statement or document purporting to show that Imerys Talc America's talc did not contain asbestos, and for such other relief as to which Plaintiffs may be entitled.

II.    **STATEMENT OF FACTS**

Plaintiffs Teresa Leavitt and Dean McElroy filed a personal injury complaint for Ms. Leavitt's mesothelioma on November 14, 2017. Ms. Leavitt was exposed to asbestos-containing talc used in Johnson Baby Powder ("JBP") from 1966-1998, which contained Imerys Talc America's and its predecessors' asbestos-containing talc. [Declaration of Henry Steinberg ("Steinberg Decl."), ¶ 2.]

A.    **Plaintiffs Served ITA With Requests For Production, Set Three, Seeking Talc Samples, Talc Testing Grids, And Talc Testing Documents.**

Plaintiffs served Requests, Set Three on April 4, 2018 to get talc samples, talc testing grids

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1  and talc testing documents from ITA. [Steinberg Decl., Exh. A, Requests.] Ms. Leavitt claims

2  asbestos exposure through Imerys Talc America's talc used in Johnson's Baby Powder. Imerys

3  Talc America contends there is no asbestos in their talc. Plaintiff require review of the talc-

4  containing grids in order to (i) bear their burden of proof as to whether the talc contains asbestos;

5  and (ii) test Imerys Talc America's defense that its talc does not contain asbestos. In sum, these

6  grids are critical to both Plaintiffs' claims and Imerys Talc America's defenses.

7  **B.  Mrs. Leavitt's lung tissue contains the *same* ingredients as Johnson's Baby Powder, including fibrous talc, chrysotile asbestos, and tremolite asbestos.**

8

9  Plaintiffs' experts have found chrysotile asbestos, tremolite asbestos, and fibrous talc in

10  Mrs. Leavitt's tissue. [Steinberg Decl., Exh. VV (November 1, 2018 Analysis of Dr. Jerrold

11  Abraham's Lung Tissue Digests from Teresa Leavitt's Lung Tissue Using FE-SEM and EDXA).]

12

13    

14  *[Image of*

15  *tremolite*

16  *bundle,*

17  *chrysotile, and*

18  *fibrous talc*

found in

19  *Mrs. Leavitt's tissue;* Exh. VV to Steinberg Decl.]

20  It is critical that Plaintiffs be allowed to examine the TEM Grids of Imerys Talc America's

21  talc for the same fibers found in Mrs. Leavitt's tissue. For example, neither Imerys Talc America

22  nor Johnson & Johnson have ever examined TEM Grids looking for fibrous, or "asbestiform" talc.

23  Yet the International Agency for Research on Cancer (IARC) concluded that there is sufficient

24  evidence for the carcinogenicity to humans of talc containing asbestiform fibers.  [Steinberg Decl.,

25  Exh. WW (excerpts of IARC 1998 Update on Talc and IARC 2010 Volume 93 "Carbon Black,

26  Titanium Dioxide, and Talc).]  In 2010 IARC clarified that the term "asbestiform fiber" means

27  "any mineral, including talc, when it grows in an asbestiform habit." [*Id.* at p. 39.]  Thus, IARC

28  recognized the presence of the fibrous talc in Mrs. Leavitt's tissue is a carcinogen to humans.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    Plaintiffs seek to examine the talc in Imerys Talc America's grids to determine whether

2    this talc contains the same materials as found in Ms. Leavitt's lungs, including fibrous talc.

3    **C.    Because Imerys Talc America destroys talc samples, but not grids, the grids
          are key evidence as to whether its historical talc contained asbestos.**

4

5    Since the 1970's ITA (and its predecessors) only preserve tested talc *samples* for two

6    years, and have done so since the 1970s. [Steinberg Decl., Exh. EE, March 5, 2018 Trial

7    Testimony at 4672:8-4674:16; Exh. FF, October 17, 1994 Letter.] So all of these *samples* have

8    been regularly destroyed for over 30 years. But ITA keeps the TEM grids created during this

9    testing, and finally produced a list of its grids on October 16, 2018. [*Id.*, Exh. EE at 4677:14-

10   4679:3; Exh. GG, March 8, 2018 Trial Testimony at 5103:2-5104:4; 5105:18-5106:7; Exhibit Y,

11   ITA's Fourth Amended Responses to Requests, Set 3.] These grids have never been produced in

12   discovery. [*Id.*] These grids are the only remaining physical evidence of the samples' contents.

13   **D.    The underlying grids (the actual evidence) and not Imerys Talc America's
          count sheets show whether there is asbestos in the talc.**

14

15   ITA's corporate representative Julie Pier confirmed that each ITA TEM report noting

16   "NQ," for non-quantifiable, actually means that the technician saw a suspected asbestos particle.

17   [Steinberg Decl., Exh. EE at 4668:3-4670:12.] A 1996 e-mail from Ms. Pier explained that the

18   "'limit of quantifiable detection' is 5 fibers. In other words, if only 3 fibers are detected, we could

19   say that the amount detected is below the *quantifiable* detection limit." [Steinberg Decl., Exh. NN,

20   December 5, 1996 Email.] For example, a 1990 TEM report described no "quantifiable amounts of

21   asbestiform minerals." [Steinberg Decl., Exh. OO, November 26, 1990 Report on Cyprus Talc.]

22   But the technician's bench sheets did record anthophyllite and chrysotile asbestos fibers. [Id.] And

23   about a dozen more TEM reports from 1992 to 1994 note that "Actinolite," "Amphibole,"

24   "Serpentine 'Antigorite,'" and "tremolite" were seen at "nq" levels, and sometimes at quantifiable

25   levels. [Huston Decl., Exh. PP, 1992-1994 Reports.] So ITA itself recognizes the importance of

26   TEM grids in looking for asbestos content in talc.

27

28

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

**E.      ITA responded with objections only and required two IDCs before finally identifying a subset of its TEM Grids regarding Vermont talc.**

ITA's initial May 4, 2018 responses to Requests, Set 3 did not identify any of the TEM Grids in ITA's possession. [Steinberg Decl., Exh. B, ITA's Responses to Requests.]

Plaintiffs met and conferred on May 17, 2018 outlining the deficiencies in ITA's Responses. [Steinberg Decl., Exh. C, May 17, 2018 Letter.] Plaintiffs sought ITA's Amended Responses curing these deficiencies by May 22, 2018. [*Id.* at p. 9.] On May 22, ITA's response was "We are working on it and I should have a response for you by the end of the week." [Steinberg Decl., Exh. D, May 22, 2018 Email.] Plaintiffs then asked ITA to meet and confer telephonically that week. [*Id.*, Exh. E, May 22, 2018 Email.] The parties talked on May 23, 2018, with ITA's counsel stating he needed to discuss these matters further with ITA. [Steinberg Decl., ¶8.] The parties spoke again on June 28, 2018, but were unable to resolve any issues. [*Id.* at ¶9.]

The Court held an Informal Discovery Conference ("IDC") about the talc samples and grids on July 5. ITA opposed producing the grids because:  (1) Plaintiffs had ITA's testing records related to ITA's review of the grids; (2) Plaintiffs had the talc samples related to the grids; and (3) the grids were very sensitive and movement could compromise their integrity. [Steinberg Decl., Exh. F, July 5, 2018 Transcript at 64:22-66:5.] Plaintiffs noted they did not, in fact, have the samples, and couldn't tell if they had the testing records because ITA wouldn't identify the grids. [*Id.* at 67:2-68:19.] The Court asked the parties to submit letter briefs, and set the matter for a further IDC. [*Id.* at 71:4-13; 72:18-25.] The parties subsequently submitted their briefs. [Steinberg Decl., Exh. G, ITA Letter Brief; Exh. H, Plaintiffs' Letter Brief.]  The parties met and conferred telephonically again on July 9, 2018. [Exh. I, July 10, 2018 Email.] Plaintiffs asked ITA to provide inventories of the talc samples and grids. [*Id.*] ITA did not do so. [Steinberg Decl., ¶ 14.]

***At the July 18 IDC, ITA conceded that ITA created the grids historically over time as part of ITA's examination of talc samples***. [Steinberg Decl., Exh. J, July 18, 2018 Transcript at 6:12-21.] But ITA again argued against producing the grids because:  (a) producing them is "tantamount to destructive testing"; (b) Plaintiffs can have ITA's testing results from ITA's review of the grids in lieu of the grids; and (c) other people have tested talc from these same mines and

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1691838.1

7

MEMO OF P&A - PLFS' MTC PRODUCTION OF GRIDS FROM IMERYS TALC AMERICA, INC.

1  Plaintiffs have access to those grids and results. [*Id.* at 7:4-8:21;9:11:4.] But as noted by the Court:

2          [P]utting aside for the moment the argument that this is destructive testing, which I
        don't think has been established so far, but there maybe is a record that can be
3          established, it seems to me this material is clearly otherwise discoverable, clearly
        otherwise highly relevant, it doesn't make any difference that there might be other
4          ways defendant and plaintiff might attempt to prove the same thing. . . . It's not the
        court's decision to say you are only entitled to the less persuasive evidence. That's
5          plaintiffs' choice. So I think this is prima facie discoverable. [*Id.* at 27:23-28:11.]

6       The Court then ordered ITA to produce inventories of the grids and talc samples, and the

7  parties to meet and confer on a protocol for production with safeguards. [*Id.* at 26:14-28:11.]

8       The Court the explained that it would decide another day whether physical evidence such

9  as the grids and samples were controlled by the MDL but ordered that ITA not ship out samples to

10  the MDL that were not already under control of the MDL, so the parties here could effectively

11  meet and confer:

```
4           THE COURT:  Well, that may be true, but I still
5   have the problem if they are currently under the control
6   of that other court, there's an issue we have to look at.
7   And let me say, I'm not going to resolve this matter
8   today, that with regard to the samples that are not yet
9   at the MDL that we're talking about, they don't go there
10  until you've had your meet and confer on this.
11          Don't ship it out there until we figure out
12  what's going on there because I can at least talk about
13  what's not there.  I will leave open for further briefing
14  or argument what authority I have over those MDL matters.
```

[Steinberg Decl., Exh. J, July 18, 2018 Transcript at 42:4-14.]

     ITA then identified 101 grids on July 31. [Steinberg Decl., Exh. K, Grid Inventory.]

Plaintiffs contacted ITA the next day, identified what appeared to be 11 grids for review, and

provided a proposed protocol. [Steinberg Decl., Exh. L, August 1, 2018 Letter.] ITA did not

respond. Plaintiffs also twice contacted ITA seeking verified Amended Responses that identified

the grids. [*Id.*, Exhs. M-N, July 31 and August 1, 2018 Email.] ITA did not respond. [*Id.*, ¶20.]

     Following the parties' Status Reports and in response to Plaintiffs' request for a reservation

number for a Motion to Compel the TEM Grids, the Court ordered the parties to conclude their

meet and confer on these issues by August 10. [Steinberg Decl., Exh. O, August 7, 2018 Email.]

During their August 10 telephonic meet and confer, ITA stated it would not produce the grids

without a court order, and could not give Plaintiffs a reasonable date-certain by which ITA would

1691838.1                      8

MEMO OF P&A - PLFS' MTC PRODUCTION OF GRIDS FROM IMERYS TALC AMERICA, INC.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    provide verified Amended Responses or a Privilege Log. [Steinberg Decl., Exh. P, August 10,

2    2018 Email.]  The Court than granted Plaintiffs a Reservation Number for a Motion to Compel the

3    physical evidence of samples and grids and further discovery responses. [*Id.*]

4        **F.**    **After this Court gave Plaintiffs a motion to compel reservation number for the**
                  **TEM Grids, Imerys Talc America attempted to tie the grids up in the MDL.**

5
6           On August 15, 2018, Plaintiffs submitted a letter brief to this Court regarding the TEM

7    Grids.  [Steinberg Decl., Exh. Q, August 15, 2018 Letter Brief.]  In that letter, Plaintiffs explained

8    that they learned on August 14, 2018, that Imerys had sought and obtained an order from the

9    federal MDL Court in New Jersey that states that the Imerys' grid samples may not be released "to

10   any person or entity until the agreed upon order has been approved by the [MDL] Court."

11   [*See* Exhibit 2 (Aug. 14, 2018 MDL Docket Order) to Exh. Q to Steinberg Decl.].

12          The federal MDL order was issued in response to a letter brief that Imerys submitted to the

13   federal MDL Court on Monday, August 13, 2018.  Imerys' letter brief asked that the federal MDL

14   Court issue an order specifically for the purpose of superseding any order of this Court.

15             Based on Judge Seligman's comments during the last court conference, it is Imerys'
        impression that Judge Seligman is inclined to issue an Order compelling production of the
        TEM Grids in California. (See Exhibit 3, 7/18/18 Tr. at 27:19-28:19).  Such an Order would

16   [*See* Exhibit 1 at p. 3 (Letter from Mark Silver, Counsel for Imerys to The Honorable Freda L.

17   Wilson, Aug. 13, 2018) attached to Exh. Q to Steinberg Decl.].  Plaintiffs in this case were not

18   served with the August 13, 2018 letter brief to the federal MDL Court, and were not notified of the

19   August 14, 2018 hearing before the federal MDL Court on this matter. [Steinberg Decl., Exh. Q,

20   August 15, 2018 Letter Brief.]

21       **G.**    **At the third IDC regarding the TEM Grids, ITA agreed the TEM Grids**
                  **should be inspected but claimed its hands were now tied by the MDL.**

22
23          The third IDC regarding the TEM Grids was held in this case on August 15, 2018.

24   [Steinberg Decl., Exh. R, August 15, 2018 IDC hearing transcript].  At that IDC, ITA's counsel

25   stated: "The only thing I want to make clear is we're of the position that the grids are going to be

26   inspected…"  [Exh. R at 25:4-9].  Plaintiffs' counsel explained that Plaintiffs already offered to

27   either receive certain TEM Grids for Plaintiffs expert via shipment or for Plaintiffs to send their

28   expert to ITA's lab in San Jose to inspect the grids.   [Exh. R at 28:1-16].

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1   Plaintiffs' counsel further explained that he has discussed his requested inspection of the

2   grids with the MDL Plaintiffs' Steering Committee and the Plaintiffs' Steering Committee did not

3   object to the *Leavitt* Plaintiffs' inspection of the ITA TEM Grids. [*Id.* at 28:17-29:21].

4   That same day, Plaintiffs filed a motion to compel Amended responses to Requests, Set 3

5   on August 15, 2018. [Steinberg Decl., Exh. S, Notice of Motion to Compel.] Based on the IDC

6   held earlier that morning, that Motion sought the identification of all ITA's Vermont TEM Grids.

7   [*Id.*] The production of the TEM Grids was not yet at issue, as meet and confer was still ongoing.

8   [*See i.e.* Exh R, August 15, 2018 IDC transcript].

9   On the day its Opposition was due, ITA served Second Amended Response to Requests,

10   Set 3, on August 24, 2018. [Id. Exh. T, ITA's Second Amended Responses.]  The hearing on

11   Plaintiffs' Motion to Compel was heard and granted on September 7, 2018.  [Steinberg Decl., Exh.

12   U, September 7, 2018 hearing transcript; Exh. V, September 7, 2018 Order Granting Motion to

13   Compel].  This Court ordered that ITA serve amended responses to Request Set 3 and disclose the

14   existence of responsive evidence by October 5, 2018.  [Exh. V.]

**H.    At the fourth IDC on this issue, ITA conceded that it had limited its
identification of grids in response to the Court's Order.**

15

16   On October 10, 2018, the Parties attended the fourth IDC concerning the production of the

17   ITA TEM Grids. [Steinberg Decl, Exh. W, October 10, 2018 IDC transcript].  Plaintiffs' counsel

18   Mr. Satterley explained to the Court that ITA's corporate representative Julie Pier had testified on

19   October 4 and 5, 2018 that ITA maintained many additional grids than those previously disclosed

20   by ITA, and that ITA had "core drilling" grids that weren't in the list of grids that ITA had

21   identified on July 31, 2018. [Exh. W at 6:12-12:23].  ITA's counsel responded:

22

23   ```
4   [ ... ] Imerys Talc America has not withheld and will
5   not withhold identification and any responsive grids
6   based on the inspection.
```

24   ```
7        We don't have anything further that relates to
8   talc used or specified for use in Johnson & Johnson's
9   baby powder.
```

25

26   [Exh. W at 24:4-9].

27   This Court correctly noted that ITA may be using an overly restrictive term of art to

28   narrow its identification of TEM Grids, ordering:

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

```
 9              But it seems to me that at minimum at this
10    point without any further delay the defendants need to
11    give a list of all of the Vermont grids, period.  Not
12    limited.  That's what I think I've said before.
```

[Exh. W at 40:9-12].

**I.    On October 16, 018, ITA identified approximately 1400 TEM Grids related to its Vermont talc**

On the evening of October 16, 2018, ITA served its Fourth Amended Responses to Requests, Set 3. [Exh. Y, ITA's Fourth Amended Responses to Requests, Set 3]. Whereas ITA had only identified 101 TEM Grids on July 31, 2018, ITA finally identified what it claims are all of its Vermont TEM Grids, totaling approximately 1,400 TEM Grids. [*Id., see the last 28 pages thereto for a list of all Vermont TEM Grids*]. Comprising these approximately 1,400 TEM Grids are approximately 800 "Vermont Product Sample Grids," approx. 600 "Vermont Infill Grids," and 32 "Vermont Waste Rock Grids." [*Id.*]

**J.    Plaintiffs requested 50 of the 1400 TEM grids to review.**

After analyzing ITA's list of 1400 TEM Grids, Plaintiffs wrote to ITA on October 25, 2018 and requested 50 grids for review. [Steinberg Decl., Exh. Z, Plaintiffs' October 25, 2018 letter.] Specifically, Plaintiffs requested twenty four TEM Grids from Product Samples, twenty two "Vermont Infill Grids" and four "Vermont Waste Rock Grids." [*Id.*]

Plaintiffs requested a very limited and highly relevant subset of 50 TEM Grids from the 1,400 total grids. Each of the twenty four Product Sample Grids that Plaintiffs requested, from the list of approximately 800 grids in ITA's possession, are from grades of talc that were specified for use in Johnson's Baby Powder. Further, the production of a limited number of infill grids and the waste rock grids is equally important as the production of product sample grids because ITA has defended itself by representing that it takes core samples every 100' feet in its mine to ensure there is no asbestos in the mine.

 

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1691838.1

MEMO OF P&A - PLFS' MTC PRODUCTION OF GRIDS FROM IMERYS TALC AMERICA, INC.

1 [Steinberg Decl. at Exh. TT (PowerPoints used by ITA in opening in *Lanzo* trial).]

2      An examination of the core drilling or infill grids and waste rock may allow Plaintiffs to

3 explain to a jury that there is asbestos throughout the Vermont mines at issue.  For example, each

4 of the twenty two "Vermont Infill Grids" that Plaintiffs requested, from the list of approximately

5 600 Vermont Infill Grids in ITA's possession, represent core samples described by ITA PMQ

6 Julie Pier, from mines where the talc in Johnson's Baby Powder was sourced. The four TEM

7 Grids of "Vermont Waste Rock" represent waste rock found at ITA's Vermont mines that supplied

8 JBP.

9      ITA did not respond to Plaintiffs' meet and confer. Plaintiffs' counsel left several

10 voicemails, and then received a cursory email from ITA stating "…we will get back to you with a

11 response early next week." [Steinberg Decl., Exh. AA, October 26, 2018 email].

12      On October 31, 2018, ITA sent an email to Plaintiffs stating that the 24 Vermont Product

13 Grids "cannot be produced in response to Plaintiffs' requests here" due to the MDL Order dated

14 September 5, 2018.  [Steinberg Decl., Exh. BB, ITA's October 31, 2018 email].  ITA attached the

15 September 5, 2018 MDL Order, of which the *Leavitt* Plaintiffs had no notice, to its October 31,

16 2018 email. [Steinberg Decl., Exh. CC, MDL Order dated September 5, 2018].

17      As to the Waste Rock and Infill Grids, ITA's email asserted an "additional" objection "on

18 relevance grounds given that samples taken from waste composite and infill do not represent any

19 talc that was sold for use in J&J Baby Powder." [*Id.*]  ITA then proposed an unworkable and

20 unnecessary protocol whereby if any grids are damaged, no party may rely on that grid.  [*Id.*]

21 Given that ITA's own expert, Matthew Sanchez damaged TEM Grids in *Lanzo*, and ITA's

22 proposal does not limit the exclusion of damaged grids to only damage caused by Plaintiffs, ITA's

23 protocol would allow ITA to intentionally sabotage its grids where Plaintiffs' experts has found

24 asbestos.  Such a proposal makes no sense.

25   **K.    At Plaintiffs' November 2, 2018 Ex Parte Application for an Order Shortening Time, this Court set the hearing date for November 15, 2018.**

26

27      Given that trial is set for December 10, 2018, and ITA refused to produce the 24 Product

28 Sample Grids, and ITA's proposal regarding the other grids was nonsensical, Plaintiffs appeared

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1  Ex Parte on November 2, 2018 seeking an Order to Shorten Time to file this motion. [Steinberg

2  Decl., Exh. DD, Plaintiffs' Letter Notice of Ex Parte Application].

3        At the Ex Parte hearing, ITA explained that a revised MDL Protocol regarding the

4  production of the grids would be forthcoming on either Monday or Tuesday, November 5 or 6,

5  2018. [Steinberg Decl. ¶ 52.]  The Court set the hearing date for November 15, 2018 and

6  instructed the parties to meet and confer as to a briefing schedule.  Plaintiffs and ITA agreed to a

7  briefing schedule the morning of November 6, 2018 – whereby Plaintiffs would file their motion

8  on November 7, 2018 – and ITA requested a fifth IDC to discuss "the scope of the anticipated

9  motion." [Steinberg Decl., Exh. UU (November 6, 2018 email between Plaintiffs and ITA.).]

10      **L.**    **At the continued Ex Parte hearing on November 6, 2018, at 3:00 pm, ITA**
             **produced a Draft Protocol for the production of Grids in the MDL**

11

12        At the continued Ex Parte on the afternoon of November 6, 2018, ITA's counsel handed

13  Plaintiffs' counsel a Draft protocol signed by the MDL lawyers regarding the production of grids.

14  [Steinberg Decl. ¶ 57.]  The Protocol is not signed by counsel for *Leavitt*, does not apply to this

15  State Court action, and is neither binding on Plaintiffs nor agreeable to Plaintiffs.  There is no

16  reason a Draft protocol in the MDL should supersede this Court's authority over production of

17  ITA's TEM Grids in this present matter.  The Court granted Plaintiffs' Ex Parte Application for an

18  Order to Shorten Time and ordered Plaintiffs to file this motion by November 7, 2018.

19      **M.**    **ITA's Proposed Grid Protocol from the MDL incentivizes the destruction of**
             **evidence, rather than avoid it.**

20

21        Finally, ITA's arguments regarding the "protocol" for the production of its TEM Grids to

22  Plaintiff's experts appear to stem from the mistaken assumption that the parties must work from a

23  Draft protocol provided by the lawyers of the MDL.  This assumption is incorrect.  Parties in

24  asbestos litigation in California routinely exchange TEM Grids, and Plaintiffs have already offered

25  multiple times that ITA can either ship the grids to Plaintiffs' expert, Plaintiffs' expert can

26  examine the grids at ITA's lab, or Plaintiffs can send a messenger to pick up the grids.  This is not

27  complicated.  ITA's Draft MDL Grid Protocol allows for the transport of the grids to Plaintiffs'

28  Expert's laboratory, which is agreeable to Plaintiffs, but includes endless and unnecessary

1691838.1                         13

MEMO OF P&A - PLFS' MTC PRODUCTION OF GRIDS FROM IMERYS TALC AMERICA, INC.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1 additional measures, including a direct incentive for ITA to destroy the very grid openings where

2 Plaintiffs locate asbestos fibers. [*See* Exhibit YY, Draft MDL Grid Protocol, at ¶ 14].

3 **III.   ARGUMENT**

4      **A.    This State Court is Sovereign and is not limited by an Order or Draft Protocol**
         **in the MDL Court.**

5

6      ITA has concocted an elaborate straw man instead of complying with its discovery

7 obligations to produce discoverable evidence in response to Request for Production, Set Three

8 served in April of 2018. This straw man is the argument most recently expressed at the November

9 6, 2018 Ex Parte hearing that for this Court to grant Plaintiffs' Motion to Compel, this Court must

10 "overrule the current injunction." On the contrary, this Court has authority to compel discoverable

11 evidence that is currently in Defendant's possession in its San Jose, CA laboratory regardless of

12 what is set forth in the Draft Protocol or Order Imerys has sought in a Federal MDL case in

13 Massachusetts.

14      "The rule is well established that state and federal courts will not interfere with or try to

15 restrain each other's proceedings" (*Fowler v. Ross* (1983) 142 Cal.App.3d 472, 476, *citing*

16 *Donovan v. City of Dallas* (1964) 377 U.S. 408, 412.) Here, ITA sought the MDL Order expressly

17 to restrain this Court's proceedings. [*See, i.e.* Exh. Q to Steinberg Decl, Exhibit 1 thereto at p. 3

18 (Letter from Mark Silver, Counsel for Imerys to The Honorable Freda L. Wilson, Aug. 13, 208.]

19      That this Court is not constrained in enforcing the Civil Discovery Act to Order a limited

20 number of TEM Grids be made available to Plaintiffs is explained by the U.S. Supreme Court, and

21 quoted at length in *Fowler v. Ross,* 142 Cal.App.3d at 476-477, which itself holds that CA state

22 courts are not restricted by concurrent litigation over similar disputes in federal court: "***These***

23 ***courts do not belong to the same system, so far as their jurisdiction is concurrent; and although***

24 ***they coexist in the same space, they are independent, and have no common superior***."

25 [*Kline v. Burke Const. Co.* (1922) 260 U.S. 226, 229-230 (emphasis added)]

26      Indeed, it is axiomatic that decisions of Federal Courts are not binding on State Courts.

27 (*See Wagner v. Apex Marine Ship Management Corp.* (2000) 83 Cal.App.4th 1444, 1451 "While

28 decisions of the United States Supreme Court are binding on state courts on federal questions, 'the

1691838.1                                              14

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    decisions of the lower federal courts, while persuasive, are not binding on us. [Citation.] Thus, in

2    the absence of a controlling United States Supreme Court opinion, we make an independent

3    determination of federal law.' [Citations.]")   While this Court is of course controlled by *stare*

4    *decisis*, an agreed order of a Federal MDL trial court has no role in *stare decisis*. [*Auto Equity*

5    *Sales, Inc. v.. Sup. Ct* (1962) 57 Cal.2d 450, 455.]

6           Finally, it bears noting that this entire issue is of ITA's own construction, and ITA alone

7    has caused and continues to cause this straw man of a dilemma for itself.  For example, the Draft

8    MDL Grid Protocol clearly states that ITA is only enjoined (in the MDL) from producing the

9    TEM Grids "absent agreement of the PSC and Imerys [ITA]". [Exh. YY to Steinberg Decl., at p.

10   3.]  The PSC has no objection to ITA producing the requested TEM Grids to Plaintiffs in this

11   action.  [*See* Exh. R to Steinberg Decl, at 28:17-29:21, August 15, 2018 IDC]

12          This Court is bound by the California Discovery Act.  Plaintiffs and this Court have

13   entertained over six months of delay from ITA regarding its TEM Grids.  There is no valid

14   objection to producing this evidence, and this Court has authority to compel the production of this

15   evidence pursuant to Request for Production of Documents, Set Three.

16   **B.    Plaintiffs require the actual grids, and not Imerys Talc America's**
          **interpretation of the grids.**
17

18          In resisting grid production, ITA claims "There are other sources" for the evidence, such as

19   ITA's testing reports with ITA's conclusions. [Steinberg Decl., Exh. J at 8:10-21; 9:15-10:4.] But

20   ITA defends this case in part by claiming that "at all relevant times, [ITA's] conduct was

21   consistent with applicable government safety laws and regulations", that ITA tested for serpentine

22   and amphibole asbestiform minerals, and that "by the early 1970s as a matter of policy, did not

23   sell talc that tested positive [for] tremolite, regardless of whether it was asbestiform or not."

24   [Steinberg Decl., Exh. QQ, ITA's Responses to Form Interrogatory No. 15.1 at 4:27-5:13.] And

25   *Plaintiffs have the right to test these defenses and claims by examining the underlying evidence*.

26          The essential question in talc/asbestos cases is whether the source talc, and therefore the

27   final consumer product, contained asbestos fibers. [*Lyons v. Colgate-Palmolive Company* (2017)

28   16 Cal.App.5th 463, 467-468 (competing expert witnesses precluded summary judgment, even

1691838.1

MEMO OF P&A - PLFS' MTC PRODUCTION OF GRIDS FROM IMERYS TALC AMERICA, INC.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    though the plaintiff lacked "the packaging and testing of the very container that plaintiff used.").]

2         In any tort case that turns on the characteristics of "material objects," those material

3    objects should be discovered and shown to the jury. [Evid. Code § 140.] As the Rutter Guide

4    explains, discoverable and admissible "Real Evidence" includes "any tangible thing that is *itself at*

5    *issue* in the case; e.g., the defective product in a consumer product liability case, the murder

6    weapon or burglary tool, etc." [Wegner, et al., Cal. Practice Guide: Civ. Trials and Evid. (The

7    Rutter Group 2017) ¶ 8:431 (italics original, underlining added).]

8         Here, ITA erroneously argues that instead of allowing Plaintiffs to analyze the grids to see

9    what asbestos fibers they truly contain, Plaintiffs and the jury should just trust ITA's own TEM

10   testing reports. [Steinberg Decl., Exh. G, ITA Letter Brief at p. 3, final ¶.] But Imerys Talc

11   America's testing records are not the underlying evidence; they are Imerys Talc America's gloss

12   on the evidence. Plaintiffs and the jury should receive the benefit of a full and careful reanalysis of

13   the actual underlying evidence.

14        **C.    Plaintiffs' experts will not "destroy" the grids.**

15        ITA has identified 1400 Grids in its possession in its San Jose, CA laboratory: 800 grids

16   from "Product Samples," 600 grids from "Vermont Infill" and 32 Grids from "Vermont Waste

17   Rock." [Steinberg Decl., Exh. Y.]

18        Plaintiffs have only asked for 50 out of 1400 grids, and have offered to send their expert to

19   Imerys' lab in San Jose to conduct the review. [Steinberg Decl., Exh. Z.]

20        But ITA asserts the TEM grids are too fragile to ever be handled or analyzed again

21   (begging the question as to why ITA maintains the grids in the first place). [Steinberg Decl., Exh.

22   G, ITA Letter Brief at p. 3, and Exhibit BB, ITA's October 31, 2018 email] But ITA offers no

23   supporting statement by any percipient witness, nor by any expert witness. ITA cites a section of

24   expert William Longo, Ph.D.'s prior testimony, while using misleading ellipses, but fails to note

25   that Dr. Longo was speaking about grids produced via the "Blount" method. [Steinberg Decl.,

26   Exh. RR, Longo Trans. at 39:1-23 (Exh. C thereto).] ITA fails to show that its TEM grids are

27   similar to "Blount" grids; and Dr. Longo did not even say that "Blount" grids are useless after the

28

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

first analysis – only that "You may be missing a fiber." [*Id.*] In reality, as Dr. Longo explains in his declaration, TEM grids can be successfully reanalyzed, including at the facility where they are stored, here in San Jose, California. [Steinberg Decl., Exh. RR, Longo Decl.]

No witness – especially not Dr. Longo – has stated that the grids would be ruined by touching or looking at them again. To the contrary, Dr. Longo in his declaration explains how his own lab permits defense expert witnesses to visit the lab and analyze Dr. Longo's TEM grids without destroying them. This Court should not accept ITA's counsel's unsupported statements about ITA's TEM grids. [*Smith, Smith & Kring v. Superior Court (Oliver)* (1997) 60 Cal.App.4th 573, 578 ("The matters set forth in the unverified 'Statement of Facts' and in memoranda of points and authorities are not evidence and cannot provide the basis for the granting of the motion.").]

## IV.    CONCLUSION

For the reasons outlined above, Plaintiffs respectfully move this Court for an Order Compelling the Production to Plaintiffs of the 50 TEM Grids Plaintiffs have requested.  No complicated protocol is necessary; As requested on August 1, 2018, Plaintiffs will review the TEM Grids and return them, undamaged, to ITA within two weeks of their production. Alternatively, Plaintiffs that this Court order under C.C.P. § 2023.030(c) that Imerys Talc America be precluded from introducing into evidence any statement or document purporting to show that Imerys Talc America's talc did not contain asbestos, and for such other relief as to which Plaintiffs may be entitled.

DATED: November 7, 2018

KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation

By: _____
Henry A. Steinberg
Attorneys for Plaintiffs

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

# EXHIBIT C

E-SERVICE
62661389
Nov 12 2018
04:58PM
File & ServeXpress

1    BRAD DEJARDIN (Bar No. 195764)
     brad.dejardin@dentons.com
2    MORDECAI D. BOONE (Bar No. 196811)
     mordecai.boone@dentons.com
3    JENNIFER J. LEE (Bar No. 203774)
     jennifer.lee@dentons.com
4    DENTONS US LLP
     One Market Plaza
5    Spear Tower, 24th Floor
     San Francisco, California  94105
6    Telephone:    (415) 267-4000
     Facsimile:    (415) 267 4198
7
     ROGER A. CERDA (Bar No. 239027)
8    Roger.Cerda@alston.com
     JESUS TORRES (Bar No. 222726)
9    Jesus.Torres@alston.com
     RODRIGO E. SALAS (Bar No. 194462)
10   Rodrigo.Salas@alston.com
     ALSTON & BIRD LLP
11   333 South Hope Street, 16th Floor
     Los Angeles, CA  90071-1410
12   Telephone:    (213) 576-1000
     Facsimile:    (213) 576-1100
13
     Attorneys for Defendant
14   IMERYS TALC AMERICA, INC.

15                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                             COUNTY OF ALAMEDA

17

18
     TERESA LEAVITT, et al.,                No. RG17882401
19
                        Plaintiffs,         **DEFENDANT IMERYS TALC**
20                                          **AMERICA, INC.'S MEMORANDUM**
              vs.                           **OF POINTS AND AUTHORITIES IN**
21                                          **OPPOSITION TO PLAINTIFF'S**
     JOHNSON & JOHNSON, et al.,             **MOTION TO COMPEL**
22                                          **PRODUCTION OF TEM GRIDS**
                        Defendants.
23                                          Accompanying Documents
                                            1.  Declaration of Jennifer J. Lee
24                                          2.  Declaration of Julie Pier

25                                          Date:        November 15, 2018
                                            Time:        1:30 PM
26                                          Dept:        23
                                            Judge:       Hon. Brad Seligman
27                                          Trial Date:  December 10, 2018
                                            SAC Filed:   March 23, 2018
28

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

# I.   **INTRODUCTION**

Plaintiffs seek the production from Imerys Talc America ("Imerys") of 50 TEM grids, which fall into three categories.  First, Plaintiffs seek 24 "Vermont Product Grids," which are grids containing talc of the type and grade used in Johnson's Baby Powder.  Second, Plaintiffs seek 4 "Waste Rock Grids," which are grids containing mineral taken the ground that was not used to make Johnson's Baby Powder.  Finally, Plaintiffs seek 22 "Infill Grids," which also contain mineral taken the ground that was not used to make Johnson's Baby Powder.  These grids date from 2014 only for the Waste Rock Grids, and from 2010 to 2016 for the Infill Grids.

Plaintiffs' motion supporting their request spends much time trying their case—what they allegedly found in Ms. Leavitt's tissues, what historical documents claim was present at various Vermont talc mines, and an attempted response to Imerys' past trial strategy—but it almost entirely misses the point. Imerys cannot produce the grids because United States District Judge Freda L. Wolfson enjoined Imerys from producing them in *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, MDL Case No. 16-2378 (FLW)(HLG) on September 5, 2018. The Supremacy Clause of the Constitution of the United States means Imerys has no choice but to comply with Judge Wolfson's order even in the face of a contrary state court order. Judge Wolfson's order explicitly covers the Vermont Product Grids, and Imerys has no reason to believe it does not cover the Waste Rock and Infill Grids. No grids should be produced for that reason.[1]

In addition, the Waste Rock Grids are not themselves discoverable and are not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs do not contend that these grids contain any talc ever actually used to make Johnson's Baby Powder. That simple fact makes the Waste Rock grids representative of nothing to which Ms. Leavitt was ever exposed.[2]

---

[1] Imerys is attempting to obtain the Plaintiffs' Steering Committee ("PSC")'s position on whether the Waste Rock and Infill Grids are within the scope of Judge Wolfson's order. To date they have not done so, so Imerys must proceed on the basis that the injunction applies to all of the requested grids in order to avoid the risk of violating it.
[2] For purposes of this motion only, Imerys is not contending that the Infill Grids are not discoverable.  Imerys reserves all of its rights to object on relevance grounds at trial and to object to the discoverability of Infill Grids in other cases

DEFENDANT IMERYS TALC AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF TEM GRIDS

109596627

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1    Finally, Imerys notes that it is working with the Plaintiffs' Steering Committee ("PSC") in

2    the federal litigation to finalize a protocol that would permit plaintiffs, including Plaintiffs here,

3    to inspect the grids.  That protocol is not yet agreed to by the parties, though they have made

4    much progress.  In the event that the PSC, on behalf of all plaintiffs in the federal litigation,

5    disclaims any interest in the Waste Rock and Infill Grids, Imerys would be happy to produce

6    them directly to Plaintiffs in this case in this case pursuant to the Protocol that Imerys has

7    provided.  Imerys' Protocol is fair and reasonable.  It does not limit inspection to only Imerys

8    premises (which Plaintiffs' expert states his organization MAS required).  Instead, it attempts to

9    strike a balance between providing the Plaintiffs with what they claim they need while still

10   protecting Imerys against (1) the chance that one or more grids are damaged and (2) claims by

11   plaintiffs in other cases that Imerys spoliated the evidence by producing them here.  These

12   protections are needed because each grid is, in some cases, up to 17 years old (in the case of

13   certain Vermont Product Grids), but in all cases, one of a kind and irreplaceable.

14   Unfortunately, Plaintiffs reject Imerys' proposed protocol for inspecting any grids. Their

15   objection is that the proposed protocol precludes any party from relying on a grid opening that is

16   damaged during analysis, whether by Plaintiffs or by Imerys. Plaintiffs believe Imerys will

17   intentionally destroy grid openings where Plaintiffs' experts claim to have found asbestos fibers

18   in order to prevent Plaintiffs from using that evidence.  But Plaintiffs do not address the

19   possibility that their experts may point to alleged contamination in grids that are damaged,

20   preventing Imerys from evaluating that same evidence.  Accordingly, Imerys' proposal is the only

21   fair way to account for the possibility that grid openings may be damaged when analyzed. Willful

22   destruction of evidence has serious civil, ethical, and potentially *criminal* penalties. It is absurd

23   and offensive to suggest that Imerys would do any such thing—and the "incentive," if any, to

24   destroy evidence applies equally to Plaintiffs.

25   The Court should deny Plaintiffs' motion to compel, as stated herein.

26   //

27   //

28   //

- 2 -

II.    **FACTS**

A.    **Plaintiffs misrepresent the state of the evidence, and actual samples are available for testing.**

Plaintiffs claim that the *grids* are "the only remaining physical evidence of the samples' contents" because "ITA (and its predecessors) only preserve tested talc *samples* for two years, and have done so since the 1970s." (Mot. at 6:5-12 [emphasis in original].) Whatever testimony may have been elicited from Imerys witnesses about policies or practices, the fact is that Imerys has disclosed to Plaintiffs—and offered to provide for testing—hundreds samples of actual Vermont-mined product specified for use in Johnson's Baby Powder from 1989 through 2003. (Lee Decl., Exh. A.)  This is clearly far longer than two years ago. Such samples are, will be and have been available for Plaintiffs to test—and they have requested and received many of them *in this very case*. (Lee Decl., ¶ 3.)

B.    **Judge Wolfson's injunction.**

While Plaintiffs refer to an "Order Imerys has sought in a Federal MDL case in *Massachusetts*" (Mot. at 14:12-13 [italics added]), Imerys assumes Plaintiffs are referring to the injunction issued by United States District Judge Freda L. Wolfson of the District of New Jersey in *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, MDL Case No. 16-2378 (FLW)(HLG) on September 5, 2018. (Lee Decl., Exh. B.) This injunction prohibits Imerys from producing TEM Grids. Judge Wolfson's Order states:

> IT IS FURTHER ORDERED that in order to protect the integrity of the TEM Grids, Imerys shall retain possession and control over all TEM Grids and is hereby Ordered not to release those TEM Grids to any person or entity for inspection and/or testing until an agreed upon protocol has been negotiated between the parties and approved by this Court. In addition, Imerys is ordered not to inspect and/or test those grids until an agreed upon protocol has been negotiated between the parties and approved by this Court.

(Lee Decl., Exh. B, at p. 3.) Imerys has asked the MDL PSC whether they would agree that the Waste Rock and Infill Grids will forever be outside the scope of the MDL, but to date they have not done so. Accordingly, Imerys must proceed on the basis that the injunction applies to all of

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

- 3 -

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1    the requested grids. (Lee Decl., ¶ 4.)

2                              III.    **DISCUSSION**

3    **A.**    **The Court cannot order Imerys to produce grids that Judge Wolfson has enjoined**

4              **Imerys from producing.**

5              Putting aside the question of whether any particular grids are relevant to Plaintiffs' claims,

6    United States District Judge Freda Wolfson has enjoined Imerys from producing certain grids.

7    Plaintiffs do not deny that Judge Wolfson's protective order of September 5, 2018 does so on its

8    face. Rather, Plaintiffs believe that this Court may order Imerys to do something that a United

9    States District Judge has ordered it not to do. Plaintiffs are wrong. The supremacy clause of the

10   Constitution of the United States makes orders of United States District Courts trump orders of

11   state courts.

12             Rather than acknowledge this concept, Plaintiffs attempt to mislead the Court by framing

13   this dispute as one of state and federal courts which have competing interpretations of law (Mot.

14   at 14:26-15:5), and that the grids covered by Judge Wolfson's order may be produced here

15   because the only federal court which binds this Court is the United States Supreme Court.  This

16   argument is frivolous. The issue before the Court has nothing to do with competing "decisions" of

17   federal and state courts as to the application of law, where both state and federal courts are free to

18   interpret any law and are bound only by higher courts in their respective systems and, on federal

19   law, the United States Supreme Court. Rather, the only question here is whether the Court may

20   issue an order contravening an order of a United States District Court. It cannot. *Gates v.*

21   *Municipal Court* (1992) 9 Cal.App.4th 45 clearly confirms this is the case. In *Gates*, a United

22   States District Court ordered a population limit on the Orange County men's main jail. (9

23   Cal.App.4th at p. 49.) In order to comply with this order, the Orange County Sheriff instituted a

24   "cite and release" program under which arrestees would not be kept at the jail. (*Ibid.*) The Orange

25   County Superior Court found out about this program, believed it violated a Penal Code provision

26   strictly requiring pretrial incarceration for certain types of crimes, and ordered the sheriff to stop

27   releasing arrestees for such crimes. Though he did so, the court still held a contempt proceeding

28   and convicted the sheriff of contempt. The court found that it was necessary to hold the sheriff in

                                                    - 4 -

1   contempt because it "needed to protect now the ability of the Court to enforce its own orders,"

2   i.e., the order not to release certain types of arrestees, and that it had the "inherent power to

3   coerce other branches to give it the ability to enforce its orders." (*Id.* at p. 51.)

4          The Court of Appeal reversed the contempt finding:

5                   In finding the sheriff guilty of contempt, the presiding judge of the
                    municipal court delivered a civics lesson about the separation of
6                   powers. He should have discussed federalism.

7                   *The single overriding fact here is Judge Gray's federal court order.*
                    *It romps through this case like the proverbial 800-pound gorilla.*
8                   *Neither the presiding judge of the municipal court, nor we, nor*
                    *even the California Supreme Court has any legal authority to affect*
9                   *that order.* (Ableman v. Booth (1859) 62 U.S. 506 [16 L.Ed 169].)
                    *One may applaud the order; one may deplore it. It makes no*
10                  *difference. The sheriff had no choice but to obey it*

11                  To the extent that violating section 827.1 may have been necessary
                    to comply with Judge Gray's federal court order, the supremacy
12                  clause of the Constitution of the United States afforded the sheriff
                    immunity from state prosecution. (*Washington v. Fishing Vessel*
13                  *Assn.* (1979) 443 U.S. 658, 695 [61 L.Ed.2d 823, 851, 99 S.Ct.
                    3055] ["State-law prohibition against compliance with the District
14                  Court's decree cannot survive the command of the Supremacy
                    Clause of the United States Constitution."].)
15
                    . . .
16
                    Thus, to the degree that Gates's cite and release program was
17                  necessary to implement the federal court order, Gates was immune
                    from prosecution for failing to enforce conflicting state law by
18                  virtue of the supremacy clause. To that degree, enforcement of
                    section 827.1 in the face of the federal court order was legally
19                  impossible.

20   (*Gates*, 9 Cal.App.4th at pp. 53-55 [italics added].) Neither the trial court in *Gates*, nor the Court

21   of Appeal, nor the California Supreme Court, had any power to "affect" the federal district court's

22   order. So too, here. This Court has "no legal authority to affect" Judge Wolfson's order enjoining

23   Imerys from producing the grids subject to it. The analysis ends there. Any order to produce the

24   grids subject to Judge Wolfson's order would, like the order in *Gates*, be issued under the

25   authority of state law (in this case, the Code of Civil Procedure, rather than some combination of

26   the Penal Code and state contempt law), which is in all cases subordinate to competing federal

27   law. (U.S. Const., art. IV, cl. 2.) Thus, whether Plaintiffs or the Court "applaud" or "deplore"

28   Judge Wolfson's order, "it makes no difference." Imerys "ha[s] no choice but to obey it," and all

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- 5 -

1    parties and the Court must respect it and refrain from interfering with its operation.[3]  Imerys has

2    requested the PSC's position on whether they believe Judge Wolfson's order coverts the Waste

3    Rock and Infill Grids—but absent a response, Imerys must proceed as if they are covered to avoid

4    violating a federal court order.

5    **B.     The Waste Rock Grids are not discoverable.**

6         If for any reason the Court determines that it can order production of any grids, the Waste

7    Rock Grids are not themselves discoverable and are not reasonably calculated to lead to the

8    discovery of admissible evidence. Plaintiffs do not contend that these grids contain any talc ever

9    actually used to make Johnson's Baby Powder. That simple fact makes the Waste Rock grids

10   representative of *nothing* to which Ms. Leavitt was ever exposed.[4] Nor do the Waste Rock grids

11   "represent" the content of the ore used that was mined from Vermont—the waste rock is just

12   that—waste—and is not used to make anything.

13   **C.     Imerys' proposed limitation on use of damaged grids is reasonable and fair.**

14        In the event Imerys becomes able to produce, or is ordered to produce, the Waste Rock

15   and Infill Grids and, if the Court were to overrule Imerys' position that they are not discoverable,

16   the Court should condition any production on Plaintiffs agreeing to the Protocol Imerys provided.

17   The Protocol is fair and reasonable, and does not condition production on the grids being

18   examined at Imerys' facility—which Plaintiffs' expert Dr. Longo states is his practice in having

19   examined grids in the past. (Steinberg Decl.,. Exh. SS, at 2:1-6 [Stating that inspecting grids at his

20   laboratory, and being handled only by his laboratory employees, was done "[i]n order to allow all

21   parties the opportunity to test the grids that MAS has used to analyze talc samples, and still

22   preserve the integrity of the grids"].)

23        Plaintiffs essentially do not object to any portion of Imerys' proposed protocol for

24   examining grids except for a single provision: that if any grid opening is damaged, no expert may

25   ──────────────────

26   [3] Interference with the operation of Judge Wolfson's order may be susceptible to further
     injunctions directed at Plaintiffs or at the Court itself. (28 U.S.C. 1651(a); *Sandpiper Vill. Condo
     Ass'n v. Louisiana-Pacific Corp.* (9th Cir. 2005) 428 F.3d 831, 843-844.)

27   [4] Again, for purposes of this motion only, Imerys is not contending that the Infill Grids are not
     discoverable.  Imerys reserves all of its rights to object on relevance grounds at trial and to object

28   to the discoverability of Infill Grids in other cases.

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24th FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1  rely on it when offering opinions. Plaintiffs' objection boils down to a scurrilous allegation that

2  this arrangement would create the incentive for Imerys experts to *intentionally* damage grid

3  openings containing asbestos fibers so that Plaintiffs will be unable to meet their burden of proof.

4  Plaintiffs thus believe that Imerys and its experts will likely *commit a crime* if this provision is

5  included. (Pen. Code, § 135 ["A person who, knowing that any . . . matter or thing, is about to be

6  produced in evidence upon a trial, inquiry, or investigation, authorized by law, willfully destroys .

7  . . the same, with the intent to prevent it or its content from being produced, is guilty of a

8  misdemeanor"].)

9       This is ridiculous—and if it were true, the same incentive would exist for *Plaintiffs'*

10  experts to destroy grid openings after allegedly finding asbestos, so that Imerys could not *deny*

11  the presence of asbestos fibers on the grids. Moreover, Plaintiffs do not deny that damage to grid

12  openings is a possibility when analyzing grids with a transmission electron microscope. Their

13  proffered declaration of Dr. Longo states only that a particular procedure "has worked well to

14  prevent damage to the grids[.]" (Steinberg Decl., Exh. SS, at 2:6-7.) Sanctions for intentional

15  destruction of evidence are severe. (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18

16  Cal.4th 1, 12-13 ["[R]emedies for spoliation are both effective and extensive and apparently

17  effective for, although real, the problem of spoliation does not appear to be widespread. . . . The

18  infrequency of spoliation suggests that existing remedies are generally effective at deterring

19  spoliation"].) The Court should expect *all* parties to take care not to damage any evidence—but

20  should be able to implement a reasonable and fair remedy should any inadvertent damage occur,

21  which given the age of these grids and the fact that the testing involves shooting a beam of

22  electrons at the specimen in the grid, is possible.  Moreover, this provision is necessary to protect

23  both parties from baseless claims of spoliation precisely because it is an undisputed fact that TEM

24  grids can be damaged during examination.[5]

25       Indeed, Imerys' Lead Scientist Julie Pier provides a detailed description of the incredibly

26

27  [5] The very fact that Plaintiffs' expert and his organization MAS did not even allow others to touch
the grids shows that Imerys is correct about the potential for damage.  Otherwise, Plaintiffs'

28  expert would have simply produced the grids for inspection.

- 7 -

small and fragile grids and "grid openings" that are individually analyzed during a TEM analysis. TEM grids are made of extremely thin copper approximately 25 microns thick, which have the consistency of aluminum foil.  The entire grid is 3mm in diameter with 100 openings within it, so each grid opening is very small with very small bars making up the "frame" of each of the 100 grid openings; each bar making up the "frame" is only about 25 microns wide.  In other words, each grid opening bar is as narrow as the thickness of a piece of aluminum foil. (Pier Decl., ¶ 2.) When a grid is prepared for analysis in a TEM, the sample material is embedded in a carbon film that is applied to the top of the grid.  The carbon film is approximately 15 to 25 nanometers thick, or approximately 700 times thinner than the width of a piece of aluminum foil. (Pier Decl., ¶ 3.)

To be clear, Imerys is not claiming that analysis of the grids *will definitely* damage them. Rather, the issue is that the *possibility* of accidental damage is high, such that there needs to be a fair remedy in case that happens. Specifically, it is unclear how these very thin carbon films, or the copper grids to which they are applied, age over time.  (Pier Decl., ¶ 4. ) A concern is that these materials become more brittle over the years and are therefore more likely to be damaged with repeated handling.  Although Ms. Pier has never attempted to re-examine a TEM grid that is over a decade old, and have not spoken to anyone who ever has, she raises the significant concern that handling such old grids may cause physical damage to the grid itself or the carbon film in which the sample is embedded.  If a grid or the carbon film in which the sample is embedded is damaged, the sample in that grid opening may not be viewable or subject to analysis by anyone who attempts to analyze that grid opening after the damage occurs. (*Ibid.*) Thus, once the damage is done, there may be no way for anyone to confirm or deny what was found (or not found).

Plaintiffs may state that they are asking to examine grids much newer than the oldest grids disclosed. Age alone does not solve the problem. Even newer grids that are not upwards of 15 years old are fragile and can be bent just as easily as a piece of aluminum foil.  If a grid is accidentally dropped, or even handled normally with tweezers, it is possible for the grid, the carbon film or the contents on the film to be damaged.  (Pier Decl., ¶ 5.) Ms. Pier has personally seen this occur with new, recently-prepared grids.  Thus, because damage to a grid is a risk of even normal handling of new grids, there is an even greater risk of damage when the older grids

- 8 -

1   are handled. (*Ibid.*)

2       Plaintiffs offer no evidence to the contrary—in fact, Dr. Longo's declaration essentially

3   *confirms* that the grids are fragile. This uncontradicted evidence shows that the restriction on use

4   by any party of a damaged grid is fair and reasonable. Certainly, all parties will take care not to

5   damage any evidence—particularly such fragile evidence—when examining it. But the potential

6   for irreversible damage here is high, and accidents sometimes happen. Litigants generally should

7   not be able to benefit from evidence that is not available to the other party, and the proposed

8   limitation fairly enforces that rule.

9   **D.    No sanctions may be awarded.**

10      Plaintiffs' memorandum of points and authorities, as an afterthought, purports to ask the

11  Court to issue an evidence sanction "in the alternative" to the Court ordering production of the

12  grids. (Mot. at 4:16-19, 17:16-19.) The Court should deny the request for three reasons. *First*, the

13  "alternative" request makes no sense. If the Court will not order production of the grids,

14  Plaintiffs' motion will be denied, no production will be ordered, and that will be the end of this

15  issue. There is no "alternative" to answering the yes or no question of "should the grids be

16  produced." Either they should or they should not.

17      *Second*, the request is premature. Code of Civil Procedure section 2031.300, subdivision

18  (c) states, in relevant part:

19          [T]he court shall impose a monetary sanction under Chapter 7
            (commencing with Section 2023.010) against any party, person, or
20          attorney who unsuccessfully makes or opposes a motion to compel
            a response to a demand for inspection, copying, testing, or
21          sampling, unless it finds that the one subject to the sanction acted
            with substantial justification or that other circumstances make the
22          imposition of the sanction unjust. *If a party then fails to obey the
            order compelling a response, the court may make those orders that
23          are just, including the imposition of an issue sanction, an evidence
            sanction, or a terminating sanction under Chapter 7 (commencing
24          with Section 2023.010).*

25  (Code Civ. Proc., § 2031.300, subd. (c) [italics added].) Thus, an "order compelling a response"

26  must first be obtained before an evidence or issue sanction can even be sought, much less

27  awarded. The Court has never ordered Imerys to produce any TEM grids, so there is no statutory

28  basis to impose an evidence sanction.

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- 9 -

1    *Third*, the request is procedurally improper because it is not stated in Plaintiffs' notice of

2    motion. Code of Civil Procedure section 2023.040 states: "A request for a sanction shall, in the

3    notice of motion, identify every person, party, and attorney against whom the sanction is sought,

4    and specify the type of sanction sought." Plaintiffs failed to comply with this section because

5    Plaintiffs' notice does not state anywhere that *any* type of sanction is sought; the only statutory

6    reference is to "California Code of Civil Procedure sections 2017.010 *et seq.*" (Ntc. at 3:3.)

### IV.    CONCLUSION

8    The Court should deny Plaintiffs' motion as stated herein.

9    Dated: November 12, 2018                    DENTONS US LLP

By: _____
       Jennifer J. Lee
       Brad DeJardin
       Mordecai D. Boone

       Attorneys for Defendant
       IMERYS TALC AMERICA, INC.

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

DEFENDANT IMERYS TALC AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF TEM GRIDS

109596627

1

## PROOF OF SERVICE VIA FILE & SERVEXPRESS

2

3        I am a citizen of the United States and employed in San Francisco County, California.  I

4   am over the age of eighteen years and not a party to the within-entitled action.  My business

5   address is Spear Tower, One Market Plaza, 24th Floor,  San Francisco, California 94105.

6        On November 12, 2018, I electronically served the document(s) via File & ServeXpress

7   described as:

8   **DEFENDANT IMERYS TALC AMERICA, INC.'S MEMORANDUM OF POINTS
    AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
9   PRODUCTION OF TEM GRIDS**

10       on the recipients designated on the Transaction Receipt located on the File & ServeXpress

11  website.  I declare under penalty of perjury pursuant to the laws of the State of California that the

12  foregoing is true and correct and was executed on November 12, 2018, at Oakland, California.

13

14                                          

15                                          _____
                                                      Rose Manabat
16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

DEFENDANT IMERYS TALC AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF TEM GRIDS

109596627