# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 16-2738 (FLW) (LHG)** |

### *THIS DOCUMENT RELATES TO ALL CASES*

### PLAINTIFFS' STEERING COMMITTEE'S OBJECTION TO SPECIAL MASTER'S LETTER OPINION ON DEFENDANT IMERYS TALC AMERICA'S CLAWBACK REQUEST OF EMPLOYEE EMAILS

## I.   INTRODUCTION AND BACKGROUND

This discovery dispute concerns defendant Imerys Talc America, Inc.'s ("Imerys") attempt to "claw back" certain emails authored by Imerys employee Ms. Julie Pier.[1]  Ms. Pier has been an employee of Imerys since 1994.  In 2003, Ms. Pier began sending emails to her husband using her Imerys email account.  Imerys identified some of the emails Ms. Pier sent to her husband as being relevant to this litigation, and subsequently produced them in the MDL— the emails were also produced by Imerys in state court cases involving similar allegations of a link between talc-based powder products and cancer.  The PSC is only challenging two of the emails, which are attached to this Objection as **Exhibit 1**.

The two emails reveal aspects of Ms. Pier's work for Imerys related to talc testing and the presence of asbestos in talc, including an admission in **IMERYS299277** that ████████ ████████████████████████████████████████████████████████

---

[1] *See* **Exhibit 1** to this Objection; the emails were produced by Imerys at bates-number **IMERYS299277 and 442535-37;** *see also* **Exhibit 2** to this Objection**,** Imerys' Oct. 19, 2018 Letter at **Exhibit 2**, Imerys claw back request to PSC; *see also* **Exhibit 3** to this Objection, the PSC's Oct. 29, 2018 Letter in Response to the Imerys claw back request.



In the other email, **IMERYS442535-37**, Ms. Pier forwards a communication from Imerys employee Ed McCarthy wherein he notes

[3]

Ms. Pier testified about the email produced at **IMERYS299277** at a deposition on April 6, 2018, and the email was admitted into evidence at a trial in New Jersey state court on April 9, 2018.[4]  Ms. Pier and her husband have therefore known about these emails and their disclosure in various lawsuits for months.  Yet, Ms. Pier waited until July 24, 2018 to ask Imerys to invoke the marital communications privilege on her behalf to prevent the PSC from continuing to use the emails in the MDL.  Imerys then waited until August 30, 2018 to inform the PSC that it wished to claw back the emails pursuant to the marital communications privilege.

Ms. Pier's emails to her husband are not being used in this MDL and have not been used in any state court lawsuits to harass or embarrass her about private spousal communications.  Indeed, Imerys would not have flagged the emails as relevant or produced them multiple times if they dealt with purely private, personal matters.  Imerys produced the emails because they contain factual information that is indisputably relevant to the plaintiffs' allegations in this

---

[2] *See* **Exhibit 1** to this Objection, **IMERYS299277**.
[3] *See* **Exhibit 1** to this Objection, **IMERYS442535-37**.
[4] *See* **Exhibit 2** to this Objection**,** Imerys' Oct. 19, 2018 Letter at **Exhibits 1, 4, and 5**, deposition and trial transcripts.

litigation—specifically, the allegation that Imerys failed to take adequate steps to ensure that the talc it supplied for use in Johnson & Johnson body powder products was free of asbestos and other carcinogens.

On November 6, 2018, Special Master Joel A. Pisano, U. S. D. J. (Ret.) issued a letter opinion (Dkt. No. 8141) granting Imerys' request to claw back Ms. Pier's emails.  Special Master Pisano ruled that the marital communications privilege applies to the emails at issue because Ms. Pier did not anticipate that emails she sent to her husband using her workplace email account—and discussing work-related issues—would eventually become "public record."[5] Special Master Pisano also ruled that the privilege was not waived because there is no "claim or any indication that Mr. Pier [Ms. Pier's husband] waived the privilege."[6]

The PSC now respectfully submits this objection to Special Master Pisano's ruling, and for the reasons set forth below asks the Court to find that 1) the marital communications privilege does not apply to the work-related emails Ms. Pier sent to her husband using her workplace email account, or 2) both Ms. Pier and her husband waived the privilege by failing to invoke it in a timely manner.  Alternatively, the PSC requests that Imerys be required to produce redacted versions of the emails in the manner described below.

## II.     ARGUMENT

### A.  Standard of Review

Federal Rule of Civil Procedure 53 sets forth the standard this Court must apply when reviewing a report and recommendation of a Special Master.  *See* Fed. R. Civ. P. 53(f)(3)-(5). With respect to the Special Master's decisions, the Court "may adopt or affirm, modify, wholly

---

[5] Dkt. 8141, Ltr. Opinion at p. 2.
[6] Dkt. 8141, Ltr. Opinion at p. 2.

or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

Rule 53(f) further provides that "[t]he court must decide *de novo* all objections to conclusions of

law made or recommended by a master." Fed. R. Civ. P. 53(f)(4).  Similarly, all objections to

the master's findings of fact, unless the parties stipulate otherwise, are reviewed *de novo*.  *See*

Fed. R. Civ. P. 53(f)(3).  "The Special Master's rulings on procedural matters are reviewed under

the abuse of discretion standard." Fed. R. Civ. P. 53(f)(5).

There has been no stipulation regarding the standard of review here, and the Special

Master's findings of fact and conclusions of law should therefore be reviewed d*e novo* pursuant

to Fed. R. Civ. P. 53(f)(3)-(4).  And, for the reasons set forth below, this Court should conclude

that the Special Master erred as a matter of law by 1) ruling that the marital communications

privilege applies to the emails at issue, and 2) ruling that Ms. Pier and her husband did not waive

the marital communications privilege.

> **B. Ms. Pier did not have a reasonable expectation of privacy when she communicated with her husband using her Imerys work email account, and the marital communications privilege does not apply.**

The marital communications privilege, like other evidentiary privileges, "deprives fact-

finders of potentially useful information." *In re Reserve Fund Securities and Derivative*

*Litigation*, 275 F.R.D. 154, 157 (S.D.N.Y. 2013) (*citing United States v. Etkin*, 2008 WL

482281, at *2 (S.D.N.Y. Feb. 20, 2008)).  Accordingly, the privilege is strictly construed and

accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant

evidence has a public good transcending the normally predominant principle of utilizing all

rational means for ascertaining truth." *Id.* (*citing Trammel v. U.S.*, 445 U.S. 40, 50 (1980)). The

marital communications privilege only applies where the party invoking the privilege can

establish that the communications were made with a reasonable expectation of confidentiality.

*U.S. Elect. Services, Inc., v. Electrical Solutions Group, Inc.*, 2015 WL 1057769, at *2 (N.J. 2015).  Employees generally do not have an expectation of confidentiality when using their employers' computers and work email accounts. *See, e.g., U.S. v. Hamilton*, 701 F.3d 404, 407-409 (4th Cir. 2012) (*citing Wolfle v. United States*, 291 U.S. 7, 14 (1934)).

Special Master Pisano ruled that the marital communications privilege applies to the emails Ms. Pier sent to her husband using her Imerys email account because there is "no evidence of notice to Imerys employees that communications on a work computer might become public record."[7]  However, the appropriate inquiry is not whether Ms. Pier anticipated or predicted that her work emails would become "public record."  Rather, Ms. Pier must establish that she had a reasonable expectation of confidentiality—that is, an expectation that no party outside the marital relationship, including, but not limited to, **her employer Imerys**, would be privy to the communications she sent to her husband using her work email account.  *See, e.g. In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* 2011 WL 1193030, at *3 (E.D. La. Mar. 28, 2011) (holding that it was not "objectively reasonable for an employee to have an expectation of privacy" where the employer monitored and accessed employee emails and where the emails were subject to production by a subpoena.).

The declaration submitted by Ms. Pier to support her untimely privilege assertion establishes only one thing:  Imerys allowed Ms. Pier to communicate with her husband on her workplace email account.[8]  The declaration does not establish that Imerys relinquished its right to search, review, retrieve, and/or produce any of Ms. Pier's emails pursuant to a subpoena, in response to anticipated or actual litigation, or for any other reason.  There is no evidence that

---

[7] Dkt. 8141, Ltr. Opinion at p. 2.
[8] *See* **Exhibit 2** to this Objection**,** Imerys' Oct. 19, 2018 Letter, Ms. Julie Pier's declaration.

Imerys told Ms. Pier the emails she sent to her husband would be sequestered from her other work emails or shielded in any way.  Neither Ms. Pier nor Imerys have provided any documentation setting forth the details or communications surrounding their alleged agreement that Ms. Pier could use of her work email for personal use.  Perhaps most telling, Imerys itself has not alleged via declaration or otherwise that it ever represented to Ms. Pier that her emails to her husband would be shielded from access by Imerys.

Imerys admitted in its letter to Special Master Pisano that it "discourages" its employees from using work email for personal communications.[9]  Most employers retain the right to access and review all communications sent by their employees on the employers' email system.  *See, e.g., Muick v. Glenayre Electronics*, 280 F.3d 741, 743 (7th Cir. 2002) (noting "abuse of access to workplace computers is so common (workers being prone to use them as media of gossip, titillation, and other entertainment and distraction) that reserving a right of inspection is so far from being unreasonable that the failure to do so might well be thought irresponsible.").

Imerys has not provided copies of any actual employee email policies.  The PSC submits that before the Court rules on whether the marital communications privilege applies here, Imerys should be required to produce copies of whatever policies it had in place in 2004 and 2005 (the years the two emails at issue were written).  If Ms. Pier had actual written notice that her work email account was subject to access and review by Imerys, her eleventh-hour invocation of the marital communications privilege should fail on that basis alone.

Imerys, like most employers, clearly **did reserve the right** to access and inspect its employees', including Ms. Pier's, emails.  We know this because Imerys searched for, retrieved, and then produced Ms. Pier's emails multiple times in different jurisdictions over the past year.

---

[9] *See* **Exhibit 2** to this Objection**,** Imerys' Oct. 19, 2018 Letter at p. 2

Ms. Pier has provided zero evidence that Imerys ever intended or promised her that emails she sent to her husband would remain confidential or that Imerys would treat them differently than her other work emails.  If any such promise or representation had been made by Imerys to Ms. Pier, Ms. Pier would have said so in her declaration, or Imerys would have provided its own declaration to that effect.

All Ms. Pier can claim is that she had a **subjective** "understanding that those communications would remain private."  In *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, an employee similarly argued that emails he sent to his wife using his workplace email account demonstrated "that he intended them to be confidential," and that he therefore had a "subjective expectation of privacy."  2011 WL 1193030, at *3 (E.D. La. Mar. 28, 2011).  The court rejected the argument, holding that it was not "objectively reasonable for an employee to have an expectation of privacy" where the employer monitored and accessed employee emails and where the emails were subject to production by a subpoena. *Id.* at *4.

Imerys retained the right to monitor and access all of its employees' emails and produce them in litigation pursuant to subpoenas or otherwise.  Neither Imerys nor Ms. Pier have produced any evidence to the contrary.  Ms. Pier's alleged subjective belief that Imerys would not do so is insufficient to establish a reasonable expectation of confidentiality on her part. Accordingly, because Ms. Pier has failed to show that she had a reasonable expectation of confidentiality with respect to any emails she sent using her employer Imerys' computer and email system, the emails at issue here are not protected by the marital communications privilege.

> **C.  Even assuming the marital communications privilege applies, Ms. Pier and her husband waived the privilege by failing to invoke it in a timely manner.**

Setting aside the fact that Ms. Pier has failed to establish she had a reasonable expectation that Imerys would never access or disclose the emails she sent to her husband on her work email account, both Ms. Pier and her husband waived the purported privilege by failing to invoke it in a timely manner.  Special Master Pisano did not directly address whether Ms. Pier herself waived the privilege when she failed to raise it until several months after she had already testified about the emails at a deposition and after they were admitted at trial.  Instead, Special Master Pisano ruled that there is no indication that Ms. Pier's *husband* waived the privilege.[10]

The PSC submits that there is no distinction between Ms. Pier and her husband on the question of waiver—if either spouse wanted to invoke and maintain the privilege, they needed to do so before Ms. Pier testified about the emails at a deposition and before they were admitted at trial.  **Both spouses** failed to invoke the privilege in a timely manner.  Once an otherwise privileged communication is disclosed to someone outside the privileged relationship—including via testimony at a deposition or at trial—the privilege is waived.  "A waiver [of attorney-client privilege] at one stage of a trial should be final for all further stages, and a waiver at a first trial should suffice as a waiver for a later trial, since there is no longer any reason for preserving secrecy." *U.S. v. Brock*, 724 F.3d 817, n. 2 (7th Cir. 2013) (*citing* Wigmore on Evidence § 2328 at 638–39 (McNaughton rev. 1961).

"Failure to make an adequate or timely objection to disclosure either in responding to interrogatories, **giving testimony in depositions** or in producing documents may well be fatal to any successful assertion of the privileged matter at trial.... Likewise, **disclosure in court effects a waiver**." *Brock*, 724 F.3d at n. 2 (*citing* Edna Selan Epstein, The Attorney–Client Privilege and the Work–Product Doctrine 299 (4th ed. 2001) (emphasis supplied)).

---

[10] Dkt. 8141, Ltr. Opinion at p. 2.

In her declaration, Ms. Pier tries to circumvent her untimely invocation of the marital communications privilege by arguing that her disclosures were not voluntary. However, the Seventh Circuit's discussion in *U.S. v. Brock* as to the meaning of "voluntary" in the context of the marital communications privilege is instructive: "While waiver of certain constitutional rights must be 'knowing, voluntary, and intelligent, this standard generally does not apply to common law privileges protecting confidential communications." 724 F.3d at 822. A waiver of the marital communications privilege must be "voluntary only in the sense that the once-confidential communication is being revealed." *Id.*

Ms. Pier was aware that the contents of the emails at issue were being revealed when she testified about them at her April 6, 2018 deposition and when they were admitted as evidence at trial on April 9, 2018. Yet neither Ms. Pier or her husband invoked the privilege until late July 2018—and Imerys did not assert the privilege on Ms. Pier's behalf until August 30, 2018. The privilege claim comes too late: "[T]here can be no disclosure of that which is already known, for when a secret is out, it is out for all of time, and cannot be caught again like a bird, and put back in its cage." *Brock,* 724 F.3d at 822*; see also U.S. v. Premises Known as 281 Syosset Woodbury Road, Woodbury N.Y.*, 71 F.3d 1067, 1072 (2d Cir. 1995) (finding waiver after disclosure of confidential marital communications and holding that the "confidential marital communications privilege is no more sacred than the Fifth Amendment."). Accordingly, the PSC respectfully asks the Court to find that Ms. Pier and her husband waived the marital communications privilege.

### D.  At a minimum, Imerys should be required to produce redacted versions of the emails at issue, with the relevant underlying facts unredacted.

At an absolute minimum, the PSC should be permitted to retain and use redacted versions of the emails at issue. The portions of Ms. Pier's emails concerning ████████████

████████████████████████████████████████████████████

█████████████████████ constitute relevant underlying facts. Underlying facts are never privileged. *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 164 (D.N.J. 2008). When discoverable, underlying facts are contained in an otherwise privileged communication, the proper practice is to produce the underlying facts via redaction—not to withhold both the privileged communications and facts altogether. Therefore, in the event the Court concludes that the emails are protected by the marital communications privilege and that the privilege has not been waived, the PSC requests that Imerys be required to re-produce redacted versions of the emails as follows:

- **IMERYS299277**: Re-produce with the following portion **unredacted**: ███████████
████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████

- **IMERYS442535-37**: The entire document should be re-produced with only the following line **redacted**: ████████████████████████████████

███████████████████████████ The remainder of the document is an email written
by Imerys employee Ed McCarthy about a meeting he attended with other Imerys employees
(including Ms. Pier) to address concerns about talc and its association with asbestos.  Mr.
McCarthy's email to his Imerys co-workers is clearly not protected by the marital
communications privilege or any other privilege, and there is no basis for it be withheld simply
because Ms. Pier forwarded it to her husband.

### III.    CONCLUSION

Ms. Pier chose to discuss work-related issues with her husband using a workplace
computer and email system.  Certain facts Ms. Pier shared with her husband, including ████████

████████████████████████████████████████████████████████

████████,[12] are central to the plaintiffs' allegations in this litigation about the safety of the talc
used in Johnson & Johnson talcum-powder products.

No evidence has been presented demonstrating that Imerys told Ms. Pier her emails to her
husband would be treated any differently than her other work emails, or that Imerys was
forfeiting its right to access, review, and/or disclose the emails at its discretion.  Ms. Pier has not
established via declaration or otherwise that she had a reasonable expectation of confidentiality
with respect to those emails, and the marital communications privilege therefore does not apply.
Alternatively, assuming the privilege does apply, Ms. Pier and her husband waived the privilege
when they failed to invoke it in a timely manner.  The emails have already been produced
multiple times, used at depositions, and admitted as evidence at trial.  However, if the Court
determines that the marital communications privilege applies and has not been waived, the PSC

---

[11] *See* **Exhibit 1** to this Objection at **IMERYS 299277.**
[12] *See* **Exhibit 1** to this Objection at **IMERYS 442535-37.**

respectfully requests that Imerys be ordered to reproduce **IMERYS299277** and

**IMERYS442535-37** with redactions in the manner outlined above.

Dated:  November 20, 2018                        Respectfully submitted,

*s/ Warren T. Burns*
Warren T. Burns
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: 469.904.4550
Email: wburns@burnscharest.com

*s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone: 703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS&MILES, PC
218 Commerce Street
Montgomery, AL 36104
Telephone: 334-269-2343
Email: leigh.odell@beasleyallen.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2018, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*s/ Warren T. Burns*
Warren T. Burns
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: 469.904.4550
Email: wburns@burnscharest.com