# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------

IN RE: JOHNSON & JOHNSON :    Civil Action No. 3:16-md-2738-FLW-
TALCUM POWDER PRODUCTS :    LHG
MARKETING, SALES PRACTICES :
AND PRODUCTS LIABILITY :        MDL No. 2738
LITIGATION :
 :
 :
 :
 :

-------------------------------------------------

## STATUS REPORT AND PROPOSED JOINT AGENDA
## FOR NOVEMBER 28, 2018 STATUS CONFERENCE

## I.  STATUS OF DISCOVERY

### A.  IMERYS SAMPLES

**PLAINTIFFS' POSITION:**

During the November 7, 2018 telephonic hearing before the Court, Plaintiffs made clear that the newly disclosed 369 Imerys samples were important for these reasons: 1) the samples arose from Vermont for a 10-year period for which Imerys had not previously produced samples (1989-1992; 1994-1997; and 1999-2000); and 2) they included railcar samples, i.e., samples of processed talcum powder taken just before bottling (52 samples from 1991-2002). Some of the samples in question would have involved talc from the Argonaut mine, but not all.  None of Imerys's comments below change any of these facts.  The years in question and the sources are extremely relevant to Plaintiffs' claims as during these years Imerys was the sole supplier of talc for J&J's talcum powder products, and testing should proceed.

Imerys asserts that because Dr. Longo's report of November 14, 2018 did not include Imerys samples somehow makes these new untimely-produced samples irrelevant.  Nothing could be farther from the truth.  Prior to this production of new samples, Imerys had produced only composite samples from the Vermont mines rather than fully processed talcum powder samples (such as rail-car samples). Given the limited time available for testing and the moving landscape of available samples,

Plaintiff's expert, Dr. Longo, focused on testing finished product samples (rather than in-mine, unprocessed talc samples) at this time. That calculus might have been different if Imerys had produced processed talcum powder samples in a timely manner, but Imerys did not. Dr. Longo did not have available to him any Imerys samples of processed talc sample for the years 1991-2003, much less 52 such samples. Any additional testing of the new Imerys samples by Dr. Longo will not be overlapping or cumulative of the testing previously disclosed but rather will encompass the years for which Imerys failed to produce processed samples.

As the Court has previously ordered, Plaintiffs are entitled to test these new Imerys samples. Samples have been selected and Dr. Longo will begin testing these samples as soon as the split samples are received and will provide a report on the additional testing by mid-January 2019. Plaintiffs' experts will be prepared to supplement their reports based on Dr. Longo's test results as appropriate.

**DEFENDANTS' POSITION:**

During the parties' November 7, 2018 telephonic conference with Your Honor, the PSC used Imerys's recent disclosure of additional talc samples as a basis to alter the schedule Your Honor established for expert discovery. In particular, the PSC claimed that testing certain of the samples was critical because they have no samples from the Argonaut Mine. Imerys and the J&J Defendants (collectively, "Defendants") have since reviewed their sample inventories (made available to the PSC back in January and February 2018 and supplemented by Imerys in July 2018) and conducted further inquiry, and disagree with plaintiffs' representations.

First, Imerys identified to the PSC in its February and July 2018 inventories more than 100 talc samples from the Argonaut Mine, which Defendants understand was the exclusive source of cosmetic talc used in Johnson's® Baby Powder sold in the United States from approximately 1996 to 2003. From these more than 100 Argonaut samples, the PSC requested and received portions of approximately 30 Argonaut samples for testing, representing the years 1998, 2001, 2002 and 2003. In addition, the J&J Defendants identified in their January 2018 inventory two samples that they believe were sourced from the Argonaut Mine: one from 1996 and one from the period from approximately 1996 to 2003. Thus, the PSC has had for many months samples representing at least five of the eight years during which the Argonaut Mine was the exclusive source of talc used in Johnson's® Baby Powder sold in the United States.

Most importantly, notwithstanding the fact that the PSC has been in possession of Imerys' samples since March of this year, it appears that the PSC has not tested any of the Imerys samples it already has in its possession. The 2,150 page report of plaintiffs' expert Dr. William Longo does not reference testing of a single Imerys sample. In light of the foregoing facts, Defendants strongly disagree with the PSC's claim that they need to test samples recently identified by Imerys. Since the inception of this litigation, the PSC has received well over 100 samples from Imerys, the J&J Defendants and Pharma Tech Industries, including but not limited to samples from the Argonaut Mine. Defendants hereby request that the PSC's report be deemed "final" reports and that the schedule remain unaltered.

It is notable that while several plaintiffs' experts purport to "rely" on the Longo/Rigler report from 11/14/18, none of this reliance is substantive, nor will any of it be subject to change based on the results of any new testing they still have to complete – the test results simply state, for example, quoting from the report of the pathology expert:

> "5. For purposes of my opinions, I have reviewed and relied upon Dr. Crowley's report regarding the fragrance chemical constituents in Johnson & Johnson talcum powder products (Crowley Report), as well as testing reports and analysis which include, Dr. Blount (Blount Report)< Dr. Longo and Dr. Mark Rigler (Longo et al. Report)…"

Notably no report by Dr. Blount was served. There are only two of 22 experts who have the credentials to speak to the Plaintiffs' testing – and those are the authors of the testing report, Dr. Longo and Dr. Rigler. The other experts by training include six epidemiologists, four gynecological oncologists, three toxicologists and even a former FDA Commissioner who is now a professional witness and many years ago practiced pediatrics.

## B.   IMERYS DOCUMENTS

**PLAINTIFFS' POSITION:**

PSC POSITION: In addition to identifying 369 new samples identified in its Iron Mountain storage facility, Imerys has now identified four distinct categories of relevant documents that it has not produced:

1. 5.5 boxes of new responsive materials that are clearly relevant and likely relate to the geology and composition of talc extracted from Imerys's mines in Vermont;

2. 11 boxes of new materials that Imerys discloses in this report for the first time that are responsive but they believe are not substantive;

3. 1 disc of document from Rio Tinto (its predecessor company in the Vermont mines) that Imerys discloses for the first time in this report; and

4. A new production of responsive document that Imerys discloses for the first time in this report.

The scope of these new productions is beyond what the PSC previously been made aware. Moreover, these documents are clearly relevant to Plaintiffs' claims and particularly, would have been important for Plaintiffs' geology experts to have prior to expert disclosures.

The PSC requests that Imerys be required to identify the type and quantity of documents that it will produce and ordered to produce the documents no later than November 30, 2018. In addition, the PSC proposes that: 1) that the PSC's experts need not be produced for deposition until after January 21; 2) that all other deadlines relating to Defendants' experts remain in place, including the identification of its experts January 11, 2018 and the production of its expert reports February 15, 2019 remain in place; and 3) that the PSC be permitted to file any appropriate supplemental expert reports based on these new documents (as well as J&J documents discussed below). It is the position of the PSC that its experts not be required to be produced for deposition on any new material or opinions they may have as a result of any of the newly produced Imerys (and J&J) material.

**IMERYS' POSITION:**

As a follow up to last month's agenda, Imerys is continuing its review of the boxes it located in its Iron Mountain storage facility. As of this writing, Imerys has been able to determine that there are only approximately 5.5 boxes of potentially responsive substantive documents. These documents have been sent to the discovery vendor for scanning, reviewing, and de-duplication. Imerys has also determined that there are approximately 11 boxes of non-substantive documents known as "Silo Batch/Picking tickets". Silo Batch/Picking tickets are hand-written records documenting when silo shipments were approved and shipped. These types of records have already been produced in discovery. Imerys will produce these "Silo

Batch/Picking tickets", but their production should in no way affect the expert schedule.

Additionally, an attorney from Rio Tinto located a disc of Rio Tinto documents and provided the disc to Imerys. Imerys has reviewed the documents and there are less than a box of responsive, non-privileged documents. In addition, as Rio Tinto closed an office, it located some documents and sent them to Imerys. Imerys has reviewed those documents and identified approximately less than one box of responsive documents. Imerys will produce the documents described in this paragraph by December 1, 2018.

Finally, as the PSC's theories of liability have changed throughout the lifespan of this case, Imerys has spent the last few months re-reviewing documents that were initially identified as non-responsive. That review is complete and Imerys will be producing a small subset of documents that were initially marked as non-responsive, but are now potentially relevant.

## C.   THE JOHNSON & JOHNSON DEFENDANTS' DISCOVERY

### PLAINTIFFS' POSITION:

As set forth below, and <u>following</u> the November 7, 2018 Court teleconference, J&J disclosed that it will likely produce more than 130,000 new documents almost surely exceeding a half million pages of new material. Indeed, as this report was being drafted, J&J provided information that suggests that the number could expand to up to 236,000 documents. These documents are relevant to science, regulatory, safety surveillance, toxicology, and other relevant general causation topics spanning 25 years. This production (which J&J represents as a vendor error) will culminate in a massive document production on or about December 17. J&J's untimely production of documents is unacceptable and is highly prejudicial to the PSC.

As a preliminary matter, the PSC raised concerns about J&J's document production in the October 31, 2018 status report and during the November 7th teleconference that followed. The PSC noted its concern that J&J had not collected relevant documents and that other relevant documents may have been destroyed. *See* October 31, 2018 Status Report (Doc. 8048). During the November 7th teleconference, the PSC requested a 30(b)(6) deposition on that issue. J&J's counsel adamantly objected to *any* suggestion that its document production was deficient and rebuffed *any* suggestion that its document production should be questioned by conducting a 30(b)(6) deposition. Specifically, J&J counsel declared that discovery

was complete, and that J&J was not going to do discovery about discovery. J&J represented unequivocally to *both* the Court *and* the PSC that J&J had produced *all* relevant documents and its document production was complete.

On November 15, a week after representing to the Court that "discovery is complete" (and the day before Plaintiffs' expert reports were produced), J&J informed the PSC by email that, in fact, its document production was *not* complete (without providing any sense of the magnitude of the issue). It was not until November 19, 2018, during a telephone meet and confer that the Plaintiffs learned the extent of the failure – that upwards of 130,000 documents had not been produced. J&J's explanation for their misrepresentation to the Court and failure to comply with the Court's prior order to produce all documents is "vendor error." It is more than curious that this same *mea culpa* occurred last year at this very same time. The Court may recall that in December of 2017, J&J erred in its production responsibilities and produced almost half a million documents over the December holidays.

Specifically, the PSC was informed this week of the following production schedule:

1. On Friday, November 16, 2018, J&J produced 4,732 new documents. Among other things these new documents include Baby Powder and Shower to Shower product "Fact Books," cataloging the history of these J&J products, MSDS Sheets for talc, asbestos documents and other science related materials; and

2. On Friday, December 14, 2018, J&J will produce an additional 125,000 to 236,000 documents. On November 21, 2018, as this status report was being prepared, J&J provided additional information on the withheld documents. J&J disclosed that the new production contained over 230,000 documents that "hit" the search terms used in this litigation. Moreover, J&J revealed that this production included documents from two of the three witnesses that J&J presented for the MDL 30(b)(6) depositions – **Susan Nicholson, MD and Donald Hicks who were deposed on the topics of bias and composition.** These documents apparently span a 25-year period from 1994-2017. The custodians of these newly disclosed documents include J&J's Global Head of Epidemiology, Vice President of Regulatory Affairs, Chief Medical Officers of JJCI and J&J, Vice President of Research & Development, Principal Scientist, Vice President of Quality Assurance, Research Director (Toxicology), and Vice President of Safety Surveillance, among others.

On Monday, November 26, 2018, after multiple drafts of this report had been exchanged, J&J's counsel has represented that the number of documents has been reduced to approximately 5,000. Plaintiffs have not been provided any explanation as to how the number of documents at issue the day before Thanksgiving (i.e., 236,000 documents) could be reduced to approximately 5,000 documents by Monday after the holiday, other than J&J has deemed the documents irrelevant.

To illustrate the timing and the scale of the new productions, the PSC provides the following chart which is conservative and assumes that the average length of the new documents is approximately 5 pages per document:



**First**, the anticipated production of documents (conservatively 130,000 documents or approximately 650,00 pages, but likely more) between November 16th and December 17th is 25% of J&J's total production, all after Plaintiffs' expert disclosures.

**Second,** the timing of this production is particularly suspect since J&J requested — indeed demanded — that the PSC adhere strictly to the expert disclosure deadline and disclose its experts by November 16, 2018. J&J's most recent document production occurred the very same day, on Friday, November 16. Now, having made its disclosures, the PSC must review these new materials and determine which, if any should be produced to their experts for review and consideration.  As J&J makes clear, the materials it will be producing include documents from science-related witnesses relevant to general causation issues.

***Third,*** J&J below attempts to soften the blow of its most recent failure by focusing on the "considerable resources" it has expended to cure its misfeasance. At the same time, it emphasizes that this error was "inadvertent." This is a familiar and frequent refrain which has worn thin and candidly, is beside the point.

The cumulative effect of J&J's repeated discovery failures is unacceptable. The disclosures of these most recent untimely productions have deprived Plaintiffs and their experts from the opportunity to utilize this evidence.

Accordingly, the PSC would request that remedies for this late production be discussed at the November 28, 2018 status conference but, at the very least, the PSC proposes the following:

- That J&J provide certification that its production is now complete;

- That the PSC's experts need not be produced for deposition until after January 21, 2019;

- That all other deadlines relating to Defendants' experts remain in place, including the identification of its experts January 11, 2018 and the production of its expert reports on February 15, 2019 remain in place;

- That the PSC be permitted to serve any appropriate supplemental expert reports and that the PSC's experts not be required to appear for depositions on any new material or opinions they may have as a result of any of the material newly produced J&J (and Imerys);

- That Plaintiffs be allowed to take a 30(b)(6) deposition of J&J regarding document collection and production; and

- That costs and other remedies be discussed.

**DEFENDANTS' POSITION:**

Plaintiffs' characterization of a recent ***inadvertent human error by one of the J&J Defendants' e-discovery vendors*** is wrong in every way. Plaintiffs are prematurely making incorrect judgments about the size, scope and impact of the upcoming production based on preliminary estimates that were provided to Plaintiffs' counsel before the J&J Defendants even had the opportunity to begin reviewing the materials at issue. The facts are:

- On November 13, the J&J Defendants learned from one of their e-discovery vendors that a relatively small percentage (approximately 3%) of the ***electronic documents*** collected had accidentally been set aside from the data set against which the agreed-upon search terms have been run to create the J&J Defendants' global document production.

- Within 48 hours of learning of this information, the J&J Defendants contacted the PSC and set up a call so they could provide some ***preliminary information*** regarding the scope of the error and anticipated supplemental production. Counsel explained that the preliminary information provided could change as the J&J Defendants began reviewing the documents.

- Now that the review of the documents is in progress, it appears that the documents are ***overwhelmingly irrelevant,*** and that the number of documents produced will be a very small fraction of the number that was originally estimated based on the preliminary data. Based on current data, the J&J Defendants expect that fewer than 5,000 documents will be produced.

- The documents at issue are all electronic records -- not historic documents from the Company's archives -- and are largely from the last five or six years. They are from individuals representing a wide array of disciplines; they are not limited to individuals who would be expected to have a role in scientific issues.

- This inadvertent human error by an e-discovery vendor has no relevance to the scope of the J&J Defendants searches for documents; no new "source" of documents has been located at J&J. Plaintiffs' renewed request for a "discovery on discovery" deposition and reference to costs is without basis and, in any event, should be raised with Judge Pisano as this Court directed at the last status conference.

- The November production the Plaintiffs reference was a production of documents that were ***duplicates of previously produced documents*** and

documents not requested by Plaintiffs, but rather by plaintiffs in ongoing
state-court mesothelioma state court cases.

There is nothing "suspect" about the timing of this issue and any suggestion
to the contrary is without basis and uncalled for.  This document issue should not
affect the expert schedule which has been in place for many months.  The issue
before the Court is whether Plaintiffs' experts and their theories on general causation
can pass the *Daubert* test.  The rigorous scientific analysis and methodology required
to support expert reports on the theory of general causation will not be found in
Company e-mails.  Indeed, collectively the Plaintiffs' experts in their reports cite to
less than one tenth of one percent of the documents produced by the J&J Defendants
thus far.

The J&J Defendants are devoting significant resources to addressing this issue
and will be producing any responsive documents as soon as practicably possible,
which is expected to be no later than December 10, 2018. In the unlikely event that
Plaintiffs find documents in the December production that they believe are critical
for any of their 22 identified experts to rely on, they should supplement that report
by December 31.  If that expert has already been deposed, the parties can meet and
confer to determine whether a supplemental deposition is necessary and if so, the
parameters of said deposition.   The Plaintiffs should not be permitted to use this
new production to expand their universe of experts or change the existing schedule.

## D.    EXPERT DISCOVERY

## PLAINTIFFS' POSITION:

Pursuant to the Court's scheduling order, plaintiffs served 21 expert reports.
As a direct result of Imerys's failure to timely provide additional samples for testing,
the Court ruled on November 7, 2018 that the expert reports submitted by the
plaintiff on November 16, 2018 were to be considered preliminary and plaintiffs
would be afforded the opportunity to file supplemental expert reports. The Court
further stated that there would be no depositions until such time as supplemental
reports are submitted. There is no agreement by the parties to supply deposition
dates.  Moreover, the Court specifically stated that the issue of depositions, etc. will
be discussed in a more fulsome manner at the upcoming status conference scheduled
for November 28, 2018.

**DEFENDANTS' POSITION:**

On the evening of November 16, plaintiffs served the reports of 22 experts for *Daubert* question of general causation. The reports are largely duplicative and include reports on issues which have no conceivable relevance to *Daubert* assessment of general causation including reports of regulatory persons and mining engineers. The depositions of these experts need to be completed by December 17. While the parties had agreed to supply three deposition dates for each expert with the reports, the plaintiffs didn't supply those dates, and now refuse to do so. Defendants ask that the Plaintiffs be ordered to immediately supply three deposition dates for each expert to be completed by the original deadline, with the exception of Drs. Longo and Rigler.

## II. AMENDED COMPLAINTS FILED OUT OF TIME AND WITHOUT MOTIONS FOR LEAVE TO AMEND

**DEFENDANTS' POSITION:**

Defendants have sent the PSC a chart of amended complaints that Defendants claim were filed outside the time allowed by Fed. R. Civ. P. 15(a)(1). Plaintiffs have commented on the chart. The parties are working to submit a proposed order to the Court to address any amended complaints that have already been filed improperly without a motion to leave for amend.

The parties disagree as to whether, going forward, plaintiffs must file a motion for leave to amend their complaints, regardless of whether defendants consent to the amendment. Local Civil Rule 15.1(a) is clear that a formal motion must be filed and must state whether the motion to amend is being made with consent of the parties:

> "(a) Except as provided in section (b) of this Rule, or as may be excused by the Court, ***a party who seeks leave to amend a pleading <u>shall</u> do so by motion***, which shall state whether such motion is opposed, and shall attach to the motion. . ." (Emphasis added).

There is no ambiguity – New Jersey's Local Rule requires a plaintiff who wishes to amend his or her complaint to file a motion seeking leave to do so. Plaintiffs cannot ignore the requirements of Local Rule 15.1 simply because they like *F.R.C.P.* 15 better. Defendants have requested that plaintiffs seeking to amend their complaints do so pursuant to Local Civil Rule 15.1(a), but plaintiffs have refused. Defendants respectfully request that the Court enter an order directing

plaintiffs to comply with Local Civil Rule 15.1(a), and requiring a motion for leave before filing an amended complaint.

### PLAINTIFFS' POSITION:

As background, this minor dispute arises from four cases identified by Defendants in the chart reference above that was sent to Plaintiffs. In those four cases, plaintiffs' counsel reached out to defense counsel in late October 2017 and asked for consent to file the amended complaints. Defendants provided written consent for the filings by email in early November, and Plaintiffs then filed their amended complaints shortly thereafter. Plaintiffs were not aware that Defendants objected to this procedure until Defendants sent Plaintiffs the chart in late August 2018 that included these four cases. Despite multiple meet and confers on the issue, the parties have reached an impasse on the interpretation of Federal Rule of Civil Procedure 15 and Local Civil Rule 15.1. Plaintiffs are not refusing to follow any relevant rules. Rather, Plaintiff simply disagree that Local Rule 15.1 applies in this scenario.

Here, Defendants have failed to read the plain language of the relevant rules at issue. Under Federal Rule of Civil Procedure 15, there are two scenarios in which a party can file an amended pleading outside of the timeframe allowed under 15(a)(1): "with the opposing party's written consent" *or* with **"**the court's leave." Federal Rule of Civil Procedure 15 states in pertinent part as follows:

(a) Amendments Before Trial.

    (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

        (A) 21 days after serving it, or

        (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

    (2) Other Amendments. **In all other cases, a party may amend its pleading only with the opposing party's written consent <u>or</u> the court's leave.** The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15 (emphasis added). And Local Rule 15.1 states in part, "a party who seeks leave to amend a pleading shall do so by motion[.]"

Local Civil Rule 15.1(a) simply supplements Fed. R. Civ. P. 15(a)(2) in that it clarifies how a party must seek *leave* under 15(a)(2), i.e. by motion with certain other requirements. Local Rule 15.1 only applies when a party seeks "the court's leave," but it does *not* apply to situations in which a party has the "opposing party's written consent" under Fed. R. Civ. P. 15(a)(2).

According to Local Civil Rule 1.1(a), "[t]he following Rules supplement the Federal Rules of Civil Procedure[] . . . and are applicable in all proceedings when not inconsistent therewith." To read that Local Rule 15.1 requires a motion in all circumstances ignores the plain language of Fed. R. Civ. P. 15(a)(2), which allows a party to file an amended pleading either "with the opposing party's consent" *or* with "the court's leave." This motion requirement that defendants want in all circumstances is therefore inconsistent with Fed. R. Civ. P. 15(a)(2).

## III.    STATUS OF CASES RE-FILED IN THE MDL PER CMO 8

There are 61 cases where Plaintiffs who were previously part of a multi-plaintiff complaint have filed short form complaints in this MDL proceeding but have not complied with CMO 8 in either serving the short form complaint on Defendants or filing a notice of filing on the master docket. *See* CMO 8, ¶¶ 1 and 5 (requiring plaintiffs to file short form complaints pursuant to CMO 2 and to serve these complaints pursuant to CMO 3); *see also* CMO 3, ¶¶ 3 and 4 (requiring filing of an ECF notice if the original service of process was proper or requiring service of process where the original complaint was not properly served).

There are also 666 plaintiffs from multi-plaintiff cases pending in the MDL who have not filed Short Form Complaints pursuant to CMO 8.  In five cases involving approximately 319 plaintiffs, motions to remand are pending and the filing of a Short Form Complaint is not appropriate at this time.  Of the 666 who have not refiled an individual single plaintiff case in the MDL, 141, have refiled in non-MDL jurisdictions.  The majority of these plaintiffs have re-filed in California and New Jersey per an agreement between Defendants and the PSC.  The parties will work to submit an order dismissing these duplicate filed cases in the MDL, as it has been determined that jurisdiction in the MDL is not proper in these instances.  For any cases that have been refiled outside of the agreement between the PSC and

Defendants, Defendants will work with plaintiffs' counsel in that particular case to get one case dismissed.

## IV.   DUPLICATE FILED CASES

There are 100 plaintiffs in this MDL who have multiple cases pending. Plaintiffs and Defendants have been working to resolve these duplicate cases per the Court's instruction at the September status conference, and will submit a proposed Consent Order for the Court's approval.  Any plaintiffs not included as part of this order have been informed that they must appear at the show cause hearing schedule on November 28, 2018.

## V.   REPORT ON FEDERAL DOCKET

As of November 15, 2018:

A. There are currently 8,779 cases pending in the MDL in which the Johnson & Johnson Defendants have been served or in which Plaintiffs from multi-plaintiff cases pending in the MDL have filed Short Form Complaints on individual dockets and have not served the Johnson & Johnson Defendants (and have opened case numbers), totaling  9,408 Plaintiffs (including 615 Plaintiffs in 40 multi-plaintiff cases removed from Missouri state court that have not filed Short Form Complaints on individual dockets, 11 Plaintiffs in *Harders* removed from Illinois state court that have not filed Short Form Complaints on individual dockets, 2 Plaintiffs in *Lovato* removed from New Mexico state court that have not filed Short Form Complaints on individual dockets, 1 Plaintiff in *Robb* removed from Oklahoma state court that has not filed Short Form Complaints on individual dockets, 13 plaintiffs from the *Crenshaw* case from the Middle District of Georgia that have not filed Short Form Complaints on individual dockets, and 24 plaintiffs from the *Flores-Rodriguez* case from the District of Puerto Rico).

Individual Plaintiffs in the multi-plaintiff cases are in the process of filing Short Form Complaints on individual dockets. Thus far, all of the individual Plaintiffs in the following multi-plaintiff cases have filed Short Form Complaints on individual dockets: *Karen Glenn, et al.* and *Mary Rea, et al.* (one *Rea* Plaintiff, Exia Monroe, a New Jersey resident, has re-filed in New Jersey state court). Additionally,

all of the individual Plaintiffs in the *Charmel Rice, et al.* and *Lillie Lewis, et al.* multi-plaintiff cases have filed Short Form Complaints on individual dockets, except individual Plaintiffs Charmel Rice and Lillie Lewis.

There are seven Plaintiffs named as the lead Plaintiffs in multi-plaintiff cases who did not refile Short Form Complaints on individual dockets, but filed a Short Form Complaint in their corresponding multi-plaintiff case dockets. These include the lead Plaintiffs from four multi-plaintiff cases removed from Missouri state court (*Brenda Anderson, et al.*, *Lillie Lewis, et al.*, *Charmel Rice, et al.*, and *Jerie Rhode, et al.*), Marie Robb in the *Robb* case removed from Oklahoma State, and Deborah Crenshaw from the *Crenshaw* case originally filed in the Middle District of Georgia, and Samary Flores-Rodriguez in the *Flores-Rodriguez* case transferred from the District of Puerto Rico.

**B.** There are currently three multi-plaintiff cases removed from Missouri state court and pending in the Eastern District of Missouri, discussed below, that the JPML has not yet transferred into the MDL (totaling 140 plaintiffs). Motions to dismiss and motions to remand have been filed in these cases.

The cases pending in the Eastern District of Missouri are listed below along with the judge to whom they are presently assigned.

### Judge Stephen N. Limbaugh, Jr.

Lisa Hittler, et al. v. Johnson & Johnson, et al., Case No. 4:18-cv-01474-SPM

### Judge Audrey G. Fleissing

Eleanor Barsh, et al. v. Johnson & Johnson, et al., Case No. 4:18-cv-01464-AGF

### Judge Ronnie L. White

Tashay Benford, et al. v. Johnson & Johnson, et al., Case No. 4:18-cv-01903-AGF

15

    **C.** There are a handful of single-plaintiff cases that have been on CTOs and will be transferred in the near future to the MDL. These cases would not greatly affect the number of cases pending in the MDL absent the plaintiffs in the multi-plaintiff cases.

## I.   STATE COURT LITIGATION

As of November 15, 2018:

**California:** There are approximately 675 ovarian cancer cases involving 740 plaintiffs pending in the California coordinated proceeding, *Johnson & Johnson Talcum Powder Cases*, Judicial Council Coordinated Proceeding No. 4877. These cases are assigned to Judge Maren E. Nelson, Los Angeles Superior Court. To date, a *Sargon* hearing has been held, and one case—*Echeverria*—proceeded to trial. Prior to that trial, on July 10, 2017, the court granted Imerys' motion for summary judgment, dismissing all claims against Imerys as to the *Echeverria* case only. The *Echeverria* trial resulted in a plaintiff verdict against the Johnson & Johnson Defendants; however, on October 20, 2017, the Court granted the Johnson & Johnson Defendants' motions for judgment notwithstanding the verdict and, alternatively, for a new trial. Elisha Echeverria, Acting Trustee of the 2017 Eva Echeverria Trust, filed her Notice of Appeal on December 18, 2017. The Johnson & Johnson Defendants filed their Cross-Notice of Appeal on January 4, 2018. Appellants' Opening Brief was filed on July 18, 2018, and Respondents' and Cross-Appellants' Brief is due on November 26, 2018.

On May 3, the Court ordered the J&J Defendants to file their Motion to Quash as to the non-California Plaintiffs on personal jurisdictional grounds before ruling on Plaintiffs' request for jurisdictional discovery. Plaintiffs filed their amended master complaint on May 14, 2018. Defendants filed their motion to quash Plaintiffs' Second Amended Complaint on June 29, 2018. The Court further ordered that once the J&J Defendants filed their Motion to Quash the non-California Plaintiffs. Plaintiffs must submit a proposed jurisdictional "discovery plan" by July 16, 2018 "specifically outlining the discovery [Plaintiffs' Executive Committee] requires to oppose the motion(s) and how it has a tendency to show that specific jurisdiction may be exercised" over the J&J Defendants. Pursuant to the Court's order, Plaintiffs submitted their discovery plan. On August 15, 2018, also pursuant to the Court's order, Plaintiffs filed a second motion seeking jurisdictional discovery which was set for hearing on October 23, 2018. To date, general discovery (liability and causation) as well as jurisdictional discovery has not yet been ordered in the

JCCP. A case management conference is scheduled for December 4, 2018, which will include a hearing to discuss Plaintiffs' Motion to Conduct Jurisdictional Discovery.

**Delaware**: There are currently 197 cases pending in the Superior Court of Delaware in which the Johnson & Johnson Defendants have been served. All of the Delaware cases have been consolidated before the Hon. Charles E. Butler. On January 19, 2017, the Johnson & Johnson Defendants filed a motion to dismiss for lack of personal jurisdiction. On January 31, 2017, Plaintiffs served jurisdictional discovery. On March 2, 2017, the Johnson & Johnson Defendants filed a motion for protective order to quash the jurisdictional discovery. On September 10, 2018, the Court granted Johnson & Johnson and Johnson & Johnson Consumer Inc.'s motion to dismiss the claims of nonresident plaintiffs based on lack of personal jurisdiction and, therefore, dismissed the nonresident plaintiffs' claims against the Johnson & Johnson Defendants. On the same day, the Court also granted the Johnson & Johnson Defendants' motion for a protective order to quash the nonresident plaintiffs' jurisdictional discovery requests. On October 26, 2018, the Court denied Plaintiffs' motion for re-argument.

**Missouri:** There are currently 15 cases, with a total of 605 plaintiffs pending in the 22nd Judicial Circuit Court, St. Louis (City) in which Defendants have been served.

Trial in the case of *Daniels v. Johnson & Johnson, et al.* resulted in a defense verdict on March 3, 2017 (individual claim filed in the multi-plaintiff *Valerie Swann* matter). Plaintiffs filed a motion for new trial on April 10, 2017, which is pending before the trial court.

Appeals are pending from judgments against the Johnson & Johnson Defendants and Imerys in the *Deborah Giannecchini* and *Lois Slemp* cases.

Trial in the case of *Michael Blaes on behalf of Shawn Blaes v. Johnson & Johnson, et al.* before Judge Rex Burlison is currently stayed and briefing on Defendants' petitions for writs of prohibition is pending before the Missouri Supreme Court on venue challenges. Oral argument took place on February 27, 2018. On March 2, 2018, the Missouri Supreme Court issued amended preliminary writs of prohibition ordering that Judge Burlison may proceed only with a determination of jurisdiction, but can take no other action until further order by the Missouri Supreme Court.

In the *Lois Slemp* case, that trial court found that plaintiffs had established personal jurisdiction exists in Missouri state court over the Johnson & Johnson defendants and Imerys.   The *Slemp* case is on direct appeal to the Missouri Court of Appeals.   The Missouri Court of Appeals denied Johnson & Johnson's writ of prohibition in the *Slemp* case.

On October 17, 2017, the Missouri Court of Appeals, Eastern District, reversed and vacated the judgment in the *Jacqueline Fox* case for lack of personal jurisdiction.  The Court also rejected Plaintiff's request to remand the case to the trial court to attempt to establish jurisdictional facts.  On December 19, 2017, the Court denied Plaintiff's Motion for Rehearing. On March 6, 2018, the Missouri Supreme Court denied Plaintiff's requested review of the decision.  On March 12, 2018, the Missouri Court of Appeals issued the mandate.  On March 30, 2018, the trial court entered an order enforcing the mandate from the appellate court that the *Fox* judgment be reversed and vacated for lack of personal jurisdiction.   On November 13, 2018, the *Fox* case was refiled in the MDL.

On June 29, 2018, consistent with the Court's opinion and ruling in *Fox*, the Missouri Court of Appeals, Eastern District, reversed and vacated the judgment in the *Gloria Ristesund* case for lack of personal jurisdiction.  Consistent with the *Fox* opinion, the Court also rejected Plaintiff's request to remand the case to the trial court to attempt to establish jurisdictional facts.  On August 7, 2018, the Missouri Court of Appeals, Eastern District, denied Plaintiff's application for transfer to the Missouri Supreme Court.  On October 30, 2018, the Missouri Supreme Court denied Plaintiff's application to transfer the case from the Missouri Court of Appeals.

The multi-plaintiff *Gail Lucille Ingham, et al. v. Johnson & Johnson, et al.* case was completed on July 12, 2018.

The St. Louis Court has set the following trial dates in the following cases:

January 21, 2019 – Trial in *Vicki Forrest, et al. v. Johnson & Johnson, et al.*

April 8, 2019 – Trial in *Tracey Young, et al. v. Johnson & Johnson, et al.*

August 5, 2019 – Trial in *Leewing Loyd, Sr., et al. v. Johnson & Johnson, et al.*

October 7, 2019 – Trial in *Tenesha Farrar, et al. v. Johnson & Johnson, et al.*

**New Jersey:** There are currently 509 cases pending in the Atlantic County Superior Court Multicounty Litigation, *In re: Talc-Based Powder Products*

*Litigation*, Case No. 300.  The coordinated proceedings were jointly assigned to Judges Johnson and Mendez by the New Jersey Supreme Court, and with Judge Johnson's retirement, the parties expect that they will continue to be managed by Judge Mendez pursuant to the Supreme Court Order.  The cases are currently stayed for discovery purposes pending resolution of the plaintiffs' appeal of the ruling by Judge Johnson on the *Kemp* issues.  On January 8, 2018, the New Jersey Appellate Division issued a *Sua Sponte* Order staying the appeals for six months or until the New Jersey Supreme Court decides the appeal pending in *In re: Accutane Litigation*, A-25-17, 079958*,* and *In re: Accutane Litigation*, A-26/27-17, 079933.  Oral argument occurred in the Accutane Litigation on April 23, 2018.  On August 1, 2018, the New Jersey Supreme Court affirmed the trial court's decision in the *Accutane Litigation*, and held that the *Daubert* factors are incorporated into New Jersey's Rule 702 analysis of the reliability of expert testimony.  The stay has since been lifted in the *Balderrama* and *Carl* cases and the Appellate Division requested that the parties submit supplemental briefing on certain discreet issues, which was completed on October 26th.  Briefing is now complete.

**Florida:** There are nineteen cases pending in Florida state court. There are five cases pending in Broward County, Florida, including three cases before Judge Michael A. Robinson, one case before Judge David Haimes, and one case before Judge Sandra Periman.  There are four cases pending in Miami-Dade County, Florida, including one case before Judge Michael Hanzman, one case before Judge Dennis Murphy, one case before Maris de Jesus Santovenia, and one case before Judge Barbara Areces. There are three cases pending in Hillsborough County, Florida before Judge Rex Barbas.  There is one case pending in Osceola County, Florida before Judge Margaret Schreiber.  There are two cases pending in Palm Beach County, Florida (one case before Judge Jaime Goodman and one case before Meenu Sasser).  There is one case pending in Volusia County, Florida.  There are two cases in Orange County, Florida before Judge Jose R. Rodriguez. There is one case pending in Sarasota County before Judge Andrea McHugh.

In the *Ricketts* matter, pending in Broward County, Imerys' Motion to Dismiss for Lack of Personal Jurisdiction was denied on November 9, with the Court granting 30 days for Imerys to file an appeal. That appeal was filed on December 8, 2017.

**Georgia:** There are  eight cases pending in Georgia state court. One in Fulton County, Georgia before Judge Jane Morrison which is set for trial in March of 2019.  The court has indicated the case will be tried in March 2019, but Defendants' request for a re-setting to May 2019 is pending.  There are six cases pending in

Gwinnet County, Georgia before Judge Shawn F. Bratton.   There is one case pending in Richmond County before Judge Patricia W. Booker.

**Illinois:** There are twenty-two cases pending in Illinois state court. There are two cases in Madison County, Illinois state court before Judge William Mudge. There are eighteen cases pending in Cook County, Illinois, which have been consolidated in the *Harris* matter before Judge Gillespie.  There is one case pending in McLean County, Illinois before Judge Rebecca Foley. There is one case pending in St. Clair County.

**Pennsylvania:** There is one case pending in state court in Allegheny County, PA before Judge Robert Colville.  On November 13, 2017, the Court granted Imerys' Preliminary Objections to personal jurisdiction in Pennsylvania and dismissed plaintiff's claims against Imerys in this case.  There are five cases pending in state court in Philadelphia County, PA (two cases before Judge John M. Younge, two cases before Judge Idee Fox, and one case before Judge Arnold New).

**Louisiana**: There are sixteen cases pending in Louisiana State Court.  There are twelve in the Parish of Orleans, Louisiana, including two cases before Judge Robin M. Giarrusso, two cases before Judge Melvin Zeno, one case before Judge Paulette Irons, three cases before Judge Kern Reese, one case before Judge Piper Griffin, one case before Judge Donald Johnson, one case before Judge Christopher Bruno, and one case before Judge Rachael Johnson. There are four cases pending in East Baton Rouge Parish, one before Judge Janice Clark, one before Judge Donald Johnson, one before Judge Todd Hernandez, and one before Judge R. Michael Caldwell.

 In the *McBride* matter, Imerys' Motion to Dismiss for Lack of Personal Jurisdiction was granted on December 1, 2017. On January 3, 2018, the Court denied the Plaintiff's motion for a new trial on this ruling.  In the *Rose Bowie* case, the Johnson and Johnson Defendants and Imerys have filed several motions, which are due to be heard on May 18, 2018, along with a motion for an expedited trial setting.

**Arizona**: There is one case pending in Pima County, Arizona.

## II.   STATUS OF PENDING MOTIONS

**A.** The list of motions pending in individual cases is attached hereto as Exhibit A.

**B.** On July 14, 2017, the Court issued a dismissal of the *Estrada* Consumer Class case, finding that Estrada did not allege an injury in fact. ECF Nos. 50, 51.  The Court dismissed and entered judgment in Estrada's lawsuit on August 10, 2017. ECF No. 53. Estrada has appealed this decision.  On September 6, 20018, a panel of the Third Circuit Court of Appeals affirmed the Court's decision.  Estrada filed a petition for rehearing *en banc* on September 20, 2018.

Respectfully submitted,

*s/Susan M. Sharko*
Susan M. Sharko
DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  973-549-7000
Facsimile:  973-360-9831
Email:  susan.sharko@dbr.com

*s/Gene M. Williams*
Gene M. Williams
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
Telephone:  713-227-8008
Facsimile:  713-227-9508
Email:  gmwilliams@shb.com

*s/John H. Beisner*
John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.

Washington, D.C. 20005
Telephone:  202-371-7000
Facsimile:  202-661-8301
Email: john.beisner@skadden.com

*s/Mark K. Silver*
Mark K. Silver
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
Telephone:  973-631-6016
Facsimile:  973-267-6442
Email: msilver@coughlinduffy.com

*s/Thomas T. Locke*
Thomas T. Locke
SEYFARTH SHAW LLP
975 F. Street, NW
Washington, DC 20004
Telephone: 202 463-2400
Email: tlocke@seyfarth.com

*s/Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
4900 Seminary Road, Suite 650
Alexandria, VA 22311
Telephone:  703-931-5500
Email: mparfitt@ashcraftlaw.com

*s/P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
Telephone:  334-269-2343
Email: leigh.odell@beasleyallen.com

*s/Christopher M. Placitella*
Christopher M. Placitella
COHEN PLACITELLA ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701
Telephone:  888-219-3599
Facsimile: 215-567-6019
Email: cplacitella@cprlaw.com

# EXHIBIT A

## STATUS OF PENDING MOTIONS IN INDIVIDUAL CASES

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Ellen Gavin v. Johnson & Johnson, et al.* | 3:17-cv-05907 | Plaintiffs' Motion to Remand filed August 10, 2017. Fully briefed. |
| | | Imerys' Motion to Dismiss filed 9/8/17. Fully briefed 10/10/17. |
| *Edna Brown v. Johnson & Johnson, et al.* | 3:17-cv-05724 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. |
| | | Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |
| *Carolyn Bennett v. Johnson & Johnson, et al.* | 3:17-cv-05723 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. |
| | | Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |
| *Maureen Abbeduto, et al. v. Johnson & Johnson, et al.* | 3:17-cv-05812 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. |
| | | Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |
| *Kim Knight v. Johnson & Johnson, et al.* | 3:17-cv-05796 | Plaintiffs' Motion to Remand filed September 1, 2017. Fully briefed. |
| | | Imerys' Motion to Dismiss filed 9/5/17. Fully briefed. |
| *Sharon McBee, et al. v. Johnson & Johnson, et al.* | 3:17-cv-5720 | Johnson & Johnson Defendants' Motion to Dismiss filed September 5, 2017. Motion to be terminated pursuant to CMO 8. |
| | | Imerys' Motion to Dismiss filed 9/5/17.  Fully briefed 10/13/17.  Motion to be terminated pursuant to CMO 8. |
| *Donna McNichols, et al. v. Johnson & Johnson, et al.* | 3:17-cv-5719 | Johnson & Johnson Defendants' Motion to Dismiss filed September 5, 2017. Motion to be terminated pursuant to CMO 8. |
| | | Imerys' Motion to Dismiss filed 9/5/17.  Fully briefed 10/13/17. Motion to be terminated pursuant to CMO 8. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Sandra Lee, et al. v. Johnson & Johnson, et al.* | 3:17-cv-03548 | Plaintiffs' Motion to Remand filed September 25, 2017. Johnson & Johnson Defendants' Opposition filed October 24, 2017.  Defendant Imerys' Opposition filed October 25, 2017.<br>Johnson & Johnson Defendants' Motion to Dismiss filed 10/24/2017.  Plaintiffs' Opposition filed November 8, 2017.<br>Imerys' Motion to Dismiss filed 10/9/17.  Fully briefed. |
| *Ruth Carver v. Johnson & Johnson, et al.* | 3:17-cv-03549 | Plaintiffs' Motion to Remand filed September 25, 2017. Johnson & Johnson Defendants' Opposition filed October 24, 2017.  Defendant Imerys' Opposition filed October 25, 2017.<br><br>Johnson & Johnson Defendants' Motion to Dismiss filed 10/24/2017.  Plaintiffs' Opposition filed November 8, 2017.<br><br>Imerys' Motion to Dismiss filed 10/9/17. Fully briefed. |
| *Rebecca Bowers v. Johnson & Johnson, et al.* | 3:17-cv-12308 | Plaintiffs' Motion to Remand filed December 4, 2017. Fully briefed. |
| *Peck, et al. v. Johnson & Johnson, et al.* | 3:17-cv-12665 | Plaintiffs' Motion to Remand filed January 11, 2018. Johnson & Johnson Defendants' Opposition filed January 22, 2018.  Defendant Imerys' Opposition filed February 7, 2018.<br><br>Imerys' Motion to Dismiss filed November 8, 2017. Plaintiffs' Opposition due December 10, 2018. |
| *Anderson, et al. v. Johnson & Johnson, et al.* | 3:17-cv-2943 | Plaintiff's Motion for Voluntary Dismissal without prejudice filed February 15, 2018. Fully briefed. 2018. |
| *Chathapana, Davahn v. Johnson & Johnson, et al.* | 3:17-cv-05853 | Imerys' Motion to Dismiss filed 9/5/17.  No opposition filed.  Motion to be terminated pursuant to CMO 8. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Femminella, Joan v. Johnson & Johnson, et al.* | 3:17-cv-05860 | Imerys' Motion to Dismiss filed 9/5/17.  No opposition filed.  Motion to be terminated pursuant to CMO 8. |
| *Glenn, Karen v. Johnson & Johnson, et al.* | 3:17-cv-05071 | Imerys' Motion to Dismiss filed 8/21/17.  No opposition filed. Motion to be terminated pursuant to CMO 8. |
| *Guptill, Mary v. Johnson & Johnson, et al.* | 3:17-cv-05869 | Imerys' Motion to Dismiss filed 9/5/17.  No opposition filed.  Motion to be terminated pursuant to CMO 8. |
| *Dawn Hannah v. Johnson & Johnson, et al.* | 3:18-cv-01422 | Plaintiff's Motion to Remand filed March 5, 2018.  Fully Briefed. Imerys' Motion to Dismiss filed 4/4/18. Fully briefed. |
| *Callahan, Janice v. Johnson & Johnson, et al.* | 3:18-cv-05557 | Plaintiff's Motion to Remand filed May 4, 2018.  Fully briefed. Defendant Imerys' Motion to Dismiss filed October 10, 2018.  Fully Briefed. |
| *Smith, Phyllis v. Johnson & Johnson, et al.* | 3:18-cv-05556 | Plaintiff's Motion to Remand filed May 4, 2018.  Fully briefed. Defendant Imerys' Motion to Dismiss filed October 9, 2018. Fully Briefed. |
| *Baker v. Johnson & Johnson, et al.* | 3:17-cv-07712 | Plaintiff's Motion to Remand filed June 8, 2018.  Fully briefed. Defendant Imerys' Motion to Dismiss filed July 9, 2018. No oppositions were filed. Plaintiffs' Motion to Stay or Strike Defendant Imerys' Motion to Dismiss filed July 17, 2018.  Defendant Imerys' Opposition filed July 27, 2017. |
| *Cartwright, Darren v. Johnson & Johnson, et al.* | 3:18-cv-05535 | Plaintiffs' Motion to Remand filed July 25, 2018.  Fully briefed. Defendant Imerys' Motion to Dismiss filed August 24, 2018. Fully Briefed. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Kassimali, Maureen, et al. v. Johnson & Johnson, et al.* | 3:18-cv-05534 | Plaintiffs' Motion to Remand filed July 25, 2018. Fully briefed.<br><br>Defendant Imerys' Motion to Dismiss filed August 24, 2018. Fully Briefed. |
| *Kehoe, Tracey, et al. v. Johnson & Johnson, et al.* | 3:18-cv-11509 | Plaintiffs' Motion to Remand filed July 26, 2018. Defendants' Opposition filed August 27, 2018. Plaintiffs' Reply to Johnson & Johnson Defendants' filed October 8, 2018.<br><br>Defendant Imerys' Motion to Dismiss filed October 23, 2018. Plaintiffs' Opposition filed November 6, 2018. Imerys' Reply Brief due November 21, 2018. |
| *Storm, Cathy v. Johnson & Johnson, et al.* | 3:18-cv-10321 | Plaintiff's Motion to Remand filed July 3, 2018. Johnson & Johnson Defendants' Opposition filed August 2, 2018. Defendant Imerys' Opposition filed August 3, 2018.<br><br>Defendant Imerys' Motion to Dismiss filed October 11, 2018. Plaintiffs' Opposition Cross Motion for Jurisdictional Discovery filed October 26, 2018. Imerys' Reply Brief due November 27, 2018. |
| *Jiminez, Sandra, et al. v. Johnson & Johnson, et al.* | 3:18-cv-12526 | Plaintiffs' Motion to Remand filed August 23, 2018.  Fully briefed. |
| *Johnson, Amy v. Johnson & Johnson, et al.* | 3:18-cv-01423 | Plaintiffs' Motion to Remand filed September 26, 2018. Fully Briefed.<br><br>Imerys' Motion to Dismiss filed October 26, 2018. Plaintiffs' Opposition filed November 5, 2018. Imerys' Reply Brief due November 20, 2018. |
| *Gavin, Sherron, et al. v. Johnson & Johnson, et al.* | 3:18-cv-10319 | Plaintiffs' Motion to Remand filed September 26, 2018.  Fully Briefed.<br><br>Imerys' Motion to Dismiss filed October 26, 2018. Plaintiffs' Opposition filed November 5, 2018. Imerys' Reply Brief due November 20, 2018. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Reising, Amanda, et al. v. Johnson & Johnson, et al.* | 3:18-cv-10320 | Plaintiffs' Motion to Remand filed September 26, 2018.  Fully Briefed.<br><br>Imerys' Motion to Dismiss filed October 26, 2018. Plaintiffs' Opposition filed November 5, 2018. Imerys' Reply Brief due November 20, 2018. |
| *Farra, Donna v. Johnson & Johnson, et al.* | 3:18-cv-13432 | Plaintiffs' Motion to Remand filed September 28, 2018.  Fully Briefed.<br><br>Imerys' Motion to Dismiss filed October 29, 2018. Plaintiffs' Opposition filed November 19, 2018. Imerys' Reply Brief due December 4, 2018. |
| *Gendelman, Robert v. Johnson & Johnson, et al.* | 3:17-cv-00461 | On 11/14/18, Defendant Imerys and Plaintiff submitted joint letter to Judge Wolfson withdrawing Motion to Remand and Motion to Dismiss without prejudice. |
| *Aikens, Chelsea v. Johnson & Johnson, et al.* | 3:17-cv-12675 | Motion to Remand (consolidated under Motion to Remand filed in the Sandra Peck matter filed January 11, 2018. Defendant Johnson & Johnson's Opposition filed January 22, 2018. Imerys' Opposition filed February 7, 2018.<br><br>Imerys' Motion to Dismiss filed November 14, 2018. Plaintiffs' Opposition due December 14, 2018. |
| *Comardelle, Pamela v. Johnson & Johnson, et al.* | 3:17-cv-13365 | Motion to Remand (consolidated under Motion to Remand filed in the Sandra Peck matter filed January 11, 2018. Defendant Johnson & Johnson's Opposition filed January 22, 2018. Imerys' Opposition filed February 7, 2018.<br><br>Imerys' Motion to Dismiss filed November 12, 2018. Plaintiffs' Opposition due December 12, 2018. |
| *Gibson, Cynthia v. Johnson & Johnson, et al.* | 3:18-cv-14637 | Plaintiffs' Motion to Remand filed November 1, 2018. Defendants' Oppositions due December 3, 2018. |

| Case Name | Case No. | Status of Pending Motions |
|---|---|---|
| *Lightfoot, Brandy v. Johnson & Johnson, et al.* | 3:17-cv-13361 | Motion to Remand (consolidated under Motion to Remand filed in the Sandra Peck matter filed January 11, 2018. Defendant Johnson & Johnson's Opposition filed January 22, 2018. Imerys' Opposition filed February 7, 2018.<br><br>Imerys' Motion to Dismiss filed November 13, 2018. Plaintiffs' Opposition due December 13, 2018. |
| *Mouton, Geneva v. Johnson & Johnson, et al.* | 3:17-cv-12674 | Motion to Remand (consolidated under Motion to Remand filed in the Sandra Peck matter filed January 11, 2018. Defendant Johnson & Johnson's Opposition filed January 22, 2018. Imerys' Opposition filed February 7, 2018.<br><br>Imerys' Motion to Dismiss filed November 13, 2018. Plaintiffs' Opposition due December 13, 2018. |
| *Sansome, Kristina v. Johnson & Johnson, et al.* | 3:17-cv-12673 | Motion to Remand (consolidated under Motion to Remand filed in the Sandra Peck matter filed January 11, 2018. Defendant Johnson & Johnson's Opposition filed January 22, 2018. Imerys' Opposition filed February 7, 2018.<br><br>Imerys' Motion to Dismiss filed November 15, 2018. Plaintiffs' Opposition due December 15, 2018. |