350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
phone: 973-267-0058
fax: 973-267-6442
www.coughlinduffy.com



Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
phone: 212-485-0105
fax: 212-480-3899

MARK K. SILVER, ESQ.
DIRECT DIAL: (973) 631-6045
EMAIL: MSILVER@COUGHLINDUFFY.COM

January 22, 2019

<u>*VIA ECF and Email*</u>
The Honorable Freda L. Wolfson, U.S.D.J.
The Honorable Lois H. Goodman, U.S.M.J.
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

  Re: *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2738

Dear Judge Wolfson:

  As you are aware, this firm, together with Gordon & Rees, is counsel for Defendant Imerys Talc America, Inc. ("Imerys"). Currently before the Court is the "PSC's Objection to the Special Master's Letter Opinion on Defendant Imerys' Clawback Request of Employee Emails". Please accept this letter as a response to the Court's January 14, 2019 email request for additional information from Imerys on this issue.

  By way of background, the relevant timeframe for the emails in question is 2003-2004. At that time, the entity that Ms. Pier was employed by was Luzenac, not Imerys. At counsel's request, Imerys has searched its records and has confirmed that it is not in possession of documents that would reflect what, if any, policies and procedures Luzenac had in place with respect to an employee's personal use of company email. Similarly, Imerys is unaware which, if any, third-party entities had access to the Luzenac email servers during that time period.

  However, Imerys has no reason to doubt or challenge Ms. Pier's recollection of events. Specifically, per the Supplemental Declaration of Julie Pier submitted herewith (hereinafter Pier Supp. Decl.), Ms. Pier does not recall Luzenac having an employee handbook and/or a specific written policy on computer usage. (Pier Supp. Decl. at ¶2). Per her Declaration, she learned of a general restriction on computer usage when she attempted to download an "Instant Messenger" application on her work computer and discovered that she did not have the administrative permissions to do so. (Pier Supp. Decl. at ¶3). As evidenced by a portion of one of the emails in question, Ms. Pier communicated with an individual (whose identity she cannot remember) and received permission to install and use Instant



Messenger on her work computer for the purpose of communicating with her husband. (Pier Supp. Decl. at ¶¶ 3-4).



(Pier Supp. Decl. at ¶¶ 4).

Per Ms. Pier, the first time that she became aware that her employer could monitor anything on work computers was around 2007, when the company did a one-month long monitoring of all employees' internet use and generated a report (which she received for her lab employees). (Pier Supp. Decl. at ¶¶ 5). Additionally, the monitoring related only to website visits and did not relate to email at all. (Id.) So even as of 2007, she was not aware that her employer could monitor and read her or anyone else's email, and subjectively believed this was not something they could or did do. The first time that Ms. Pier became aware that any third party could access emails she sent through her work computer was sometime in 2018 in connection with the production of documents in the talc litigation. (Pier Supp. Decl. at ¶¶ 64).

In sum, to the extent the Court is attempting to determine whether Ms. Pier had a reasonable expectation of privacy with respect to the emails in question, the facts currently known and available lead to the conclusion that she did hold that expectation. Moreover, although based on the current record there is no reason to believe Luzenac had an official policy regarding an employee's personal use of the company's email during the relevant timeframe, even if one were to assume, *arguendo*, that such a policy existed, Ms. Pier still took reasonable steps to make sure that that hypothetical policy did not apply to the communications at issue. Even though Ms. Pier cannot remember a conversation that occurred 16 years, the documents themselves establish that she sought out and received special permission to communicate with her husband. There is no reason to believe that in obtaining said permission, Ms. Pier knowingly and or voluntarily waived the expectation that she was conducting private communications with her husband.



      Imerys apologizes to the Court that it was not able to obtain additional information on this issue, and it thanks the Court for its time and attention to this matter.

      Respectfully submitted,
COUGHLIN DUFFY LLP

*/s/ Mark K. Silver*
Mark K. Silver

Nancy M. Erfle, Esq.
Ann Field, Esq.
Gordon & Rees Scully Mansukhani
121 SW Morrison Street, Ste. 1575
Portland, OR 97204

MKS/

cc:    Plaintiffs' Steering Committee (via ECF and e-mail)
        Susan Sharko, Esq. (via ECF and e-mail)
        Thomas Locke, Esq. (via ECF and email)