**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, & PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | ) ) ) ) ) ) ) )    MDL No. 16-2738 (FLW)(LHG)<br><br>**SUPPLEMENTAL DECLARATION OF JULIE PIER DATED JANUARY 17, 2019** |

     I, JULIE PIER, declare:

     1.    I am Lead Scientist, Analytical and Metrology, employed by Imerys Talc America, Inc. ("Imerys"). I originally began working for Luzenac America ("Luzenac"), now known as Imerys, in 1994. I worked for Luzenac during the 2003-2004 time period until it became Rio Tinto Minerals in 2006.

     2.    I searched my records for any employee manuals or other documents that might contain a computer use policy that covered the 2003-2004 period and could not find any. To the best of my recollection, Luzenac did not have an employee manual or a written computer use policy.

     3.    In 2003 and earlier, I was unaware of any restrictions my employer put on my use of my work computer. It was not until February 2003, when I attempted to download AOL Instant Messenger onto my work computer and was unable to do so that I became aware of any restrictions. I called my employer's IT department and was informed that corporate policy generally discouraged personal communications from work computers. I asked for a special exception based upon my husband's travel situation and how complex our work schedules are, emphasizing that we often cannot communicate by phone and often can only reach each other at odd hours. My request to privately communicate with my husband using my work computer was granted and the IT department also installed the Instant Messaging service. I thereafter communicated with my husband on both Instant Messaging and using my work email address on my work computer with the knowledge that those communications would remain private.

4. Attached at Exhibit A is a true and correct copy of an excerpt from one of my personal email conversations, dated February 18, 2003, which is the only document I was able to locate that confirms that I did speak with IT around that time. The "sob story", as I called it in this personal email to my husband, is the explanation I gave for why I needed to use my work computer for private, personal communications with my husband. By providing the Court with this excerpt, I do not intend to waive any rights I have to maintain the confidentiality and privilege of the remainder of this email or any other personal, private email with my husband.

///

///



5. The first time I became aware that my employer had any ability to monitor my work computer was in around 2007, when, as a manager, I received a report showing the results of a one-month long monitoring of my lab employees' internet usage. This report focused only on website visits and did not indicate that the company could monitor emails.

6. It was not until sometime in 2018 that I first learned that anyone could remotely access and review my emails – this is when I was told that documents had been pulled out of my computer files, including email, for use in litigation. Prior to this time, I had no knowledge of anyone, within or outside of my employer, having access to any of my emails without my giving them access.

7. Neither Robert nor I authorized Imerys to release or disclose our private and confidential marital communications to third parties. Based on the permission I received from Imerys in early 2003, it was my expectation that these communications were private and confidential, and would remain solely visible to Robert and me. I had no reason to believe that these emails would be reviewed by or made available to anyone else.

I declare under penalty of perjury under the laws of the State of California that the foregoing statements are all true and correct to the best of my knowledge and belief.

DATED this 17th day of January, 2019, in Denver, Colorado.

_____
Julie Pier

# EXHIBIT A

> 
> 
>

