

One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

WALSH.LAW

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

April 19, 2019

**VIA ELECTRONIC MAIL**

All Counsel of Record

      Re:    *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
              Case No. 3:16-md-02738-FLW-LHG

Dear Counsel,

      By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September 11, 2017 (D.I. 704), I was appointed as Special Master for the purpose of overseeing discovery disputes that may arise in the above-captioned multi-district litigation ("MDL").  This MDL contains product liability cases in which Plaintiffs allege that certain Johnson & Johnson products containing talcum powder (the "Products") have been the cause of ovarian cancer for thousands of women who have used the Products.[1]

      This dispute arises out of Defendants' demand, beginning in December 2018, that Plaintiffs "produce all communications between their experts and Health Canada, including any such future correspondence between these experts and Health Canada and any and all documents demonstrating these experts' involvement as consultants to Health Canada."  Health Canada is a regulatory authority which analyzes the causal relationship between a substance and a disease.  In December 2018, Health Canada released a draft Assessment examining the connection between cosmetic talc and ovarian cancer.  Defendants believe that Plaintiffs may be trying to influence Health Canada's assessment of the relationship between cosmetic talc and ovarian cancer by convincing it, through Plaintiffs' experts, of general causation.  Defendants argue that they are therefore entitled to production of all communications and documents between any of Plaintiffs' experts and Health Canada, to determine whether Plaintiffs are

---

[1] I do not provide a detailed factual and procedural background, as I write for the benefit of the Court and the parties, all being familiar with the facts of this case.

April 19, 2019
Page 2

attempting to influence Health Canada's analysis.

Defendant's letter of April 1, 2019 reiterated Defendants' request for all communications between Plaintiffs' experts and Health Canada. On April 5, 2019, Plaintiffs advised, via email, that all communications between Dr. Siemiatycki and Dr. McTiernan and Health Canada were produced. In response, on that same date, Defendants requested confirmation that no other experts besides Dr. Siemiatycki and Dr. McTiernan have made submissions to Health Canada. Later that same date, Plaintiffs advised that communications between Dr. Saed and Health Canada were previously produced, and that Plaintiffs are "unaware of any others." Plaintiffs' response failed to state that Plaintiffs' counsel has inquired of all the expert witnesses and that Plaintiffs are satisfied that all communications have been disclosed. Instead, Plaintiffs stated that they are simply "unaware" of any communications.

Following the above communication, Defendants were unsatisfied as to the completeness of Plaintiffs' production, and on April 12, 2019, Defendants submitted another letter to me, seeking an order requiring Plaintiffs to produce all communications between their expert witnesses and Health Canada. On April 17, 2019, Plaintiffs submitted a letter recognizing the demand for these communications, and disclosing a previously undisclosed email chain from Dr. Siemiatycki to Scott Hancock at Health Canada. She makes no mention of Dr. Saed nor of Dr. McTiernan, but states that the exchange between Siemiatycki and Hancock "completes our response." Again, Plaintiffs response failed to unequivocally affirm that all communications between any of Plaintiffs' experts and Health Canada have been produced. Defendants responded by letter dated April 17, 2019, questioning whether the production includes communications and submissions by *all* of Plaintiffs' experts and Health Canada, and whether future communications will be produced forewith. To date, Plaintiffs have failed to affirmatively state that there are no other communications between any expert witnesses and Health Canada.

I will take Ms. Parfitt's statement to be a representation that she has now produced all communications that any of Plaintiffs' expert witnesses have had with Health Canada. I ask that she confirm that representation, and I will consider this issue to be resolved. Of course, if any expert witness has further communications with Health Canada, those communications shall be produced.

April 19, 2019
Page 3

It is SO ORDERED.

                                        Very truly yours,

                                        Joel A. Pisano

cc:     Honorable Freda L. Wolfson (via ECF and First-Class Mail)
          Honorable Lois H. Goodman (via ECF and First-Class Mail)