

One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

WALSH.LAW

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

April 30, 2019

**VIA ELECTRONIC MAIL**

All Counsel of Record

      Re:    *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
              Case No. 3:16-md-02738-FLW-LHG

Dear Counsel,

      By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September 11, 2017 (D.I. 704), I was appointed as Special Master for the purpose of overseeing discovery disputes that may arise in the above-captioned multi-district litigation ("MDL"). This MDL contains product liability cases in which Plaintiffs allege that certain Johnson & Johnson products containing talcum powder (the "Products") have been the cause of ovarian cancer for thousands of women who have used the Products.[1]

      This letter opinion and order resolves a dispute regarding document requests by Plaintiffs relating to Defendants' expert toxicologist, Nadia Moore, Ph.D., DABT, ERT, and a request for the continuation of Dr. Moore's deposition, and the Defendants' objections to both. The Parties raised the dispute by letters to me dated April 9, 2019, April 12, 2019, and April 17, 2019. I personally reviewed each of the submissions, as well as the complete deposition transcript of Dr. Moore.

      On February 25, 2019, Defendants served Plaintiffs with Dr. Moore's expert report. On March 20, 2019, the PSC served Defendants with a Notice of Deposition (the "Notice"), requesting that certain documents be produced no later than two weeks prior to Dr. Moore's deposition. Defendants represented that their responses and objections to the Notice would be produced at least five days in advance of Dr. Moore's deposition. Dr. Moore was deposed on

---

[1] I do not provide a detailed factual and procedural background, as I write for the benefit of the Court and the parties, all being familiar with the facts of this case.

April 30, 2019
Page 2

April 4, 2019.  On April 3, 2019, the night before Dr. Moore's deposition, Defendants served Plaintiffs with Defendants' Response to Plaintiffs' Document Requests Contained in Notice of Oral and Videotaped Deposition of Nadia Moore, Ph.D., DABT, ERT, and Duces Tecum.  The production contained, among other things, the Complete List of Materials Reviewed and Considered by H. Nadia Moore, Ph.D., DABT, ERT as of April 3, 2019 (the "Reliance List"), which lists approximately 385 documents.  According to the Parties, approximately 300 of the references on Dr. Moore's Reliance List were referenced in the footnotes of Dr. Moore's expert report.  Of the remaining 85 documents, approximately 25 were noted as material reviewed after her February 25 report was submitted, and included reports by other experts in this litigation, and deposition transcripts of those experts.  The PSC complains that the remaining 60 documents were not timely produced.

Plaintiffs' letter application of April 9, 2019, seeks three distinct forms of relief: 1) that Defendants be compelled to produce Dr. Moore for an additional deposition, 2) that Defendants be compelled to produce all documents related to the work performed by Dr. Moore on the toxicology of asbestos and cleavage fragments, and 3) that Defendants produce unredacted invoices showing the work performed by Dr. Moore and other employees of Veritox, Inc.

*Request for Continued Deposition of Dr. Moore*

First, the PSC argue in their letter of April 9, 2019 that the production of materials the night before Dr. Moore's deposition, including her Reliance List which contained new materials, prejudiced the PSC's ability to adequately prepare for and take a full and complete deposition of Dr. Moore.  The PSC claims seven new materials were received the night before Dr. Moore's deposition:  1) the Reliance List, 2) a spreadsheet titled "*Review of Metal Analysis Exhibits in the Report of Mark Krekeler, Ph.D.*" (the "Krekeler Spreadsheet"), 3) A spreadsheet titled "*Review of Metal Analysis Documents Cited in the Report of Robert B. Cook, PhD*" (the "Cook Spreadsheet"), 4) A 51-page Power-Point slide-deck by Dr. Moore from a presentation on June 21-23, 2017, 5) A 30-page Power-Point slide-deck by Dr. Moore from a presentation on May 21-23, 2018, 6) Two articles relating to fragrance ingredients in Baby Powder and Shower-to-Shower (the "Fragrance Ingredients Reports"), and 7) heavily redacted invoices from Veritox, Inc.  Therefore, the PSC requests permission to take a continued deposition of Dr. Moore to remedy the alleged prejudice caused by Defendants' untimely production.

Defendants argue, in their letter dated April 12, 2019, that the majority of newly disclosed items on the Reliance List were expert reports and expert deposition transcripts in this litigation.  Defendants further argue that to the extent any materials were new, the PSC questioned Dr. Moore about many of these documents and have not contended they needed more time for any particular document or line of questioning.  Therefore, Defendants assert the PSC has not shown prejudice by the production on April 3, and therefore the PSC is not entitled to a continued

April 30, 2019
Page 3

deposition. Defendants also note that they have received similarly untimely productions from the PSC in connection to the PSC's expert depositions.

Federal Rule of Civil Procedure 26(a)(2)(B)(i)-(ii) requires an expert witness to provide "(i) a complete statement of all opinions the witness will express and the basis and reasons for the them; [and] (ii) the facts or data considered by the witness in forming them." Rule 26(a)(2)(B) applies to "material disclosed to and considered by an expert witness for purposes of his or her expert report and testimony -- that is, information the expert receives or considers in his or her capacity as a testifying expert witness." *Bro-Tech Corp. v. Thermax, Inc.*, 2008 U.S. Dist. LEXIS 21233 at *11, 2008 WL 724627 (E.D. Pa. March 17, 2008). Dr. Moore's expert report, and supplemental addition of the Reliance list, thus complies with the requirements of Rule 26.

The majority of the materials listed on Dr. Moore's Reliance List were previously disclosed and produced to the PSC in connection with Dr. Moore's expert report, and her reliance on these materials was noted in her report. Of those materials not previously disclosed to the PSC as being considered by Dr. Moore, a large portion of those materials constituted expert reports and expert deposition transcripts in connection with this litigation. This leaves a very small number of documents which the PSC claims they were not aware of until immediately before Dr. Moore's deposition.

Yet, the PSC questioned Dr. Moore on several of the topics and documents that they now claim they were inadequately prepared for. For example, the PSC questioned Dr. Moore regarding the Krekeler Spreadsheet (*e.g.*, Moore Transcript 332:11-333:9), Dr. Moore's slide decks (*e.g.*, *id.* at 109:6-125:7), and the Fragrance Ingredient Reports (*e.g.*, *id.* at 303:3-313:18).

The PSC's deposition of Dr. Moore on April 4, 2019 lasted nearly nine hours, with only a few short breaks. Of the nearly nine-hour deposition, the PSC spent nearly half of its time discussing Dr. Moore's background, expertise and questioning the creation and production of the Reliance List.[2]

I find that the PSC had an adequate opportunity to depose Dr. Moore. Not only did the PSC ask questions of Dr. Moore indicating they were prepared to question her on many of the "new" materials, but the PSC has not identified any line of questioning that they would have asked of Dr. Moore if there was additional time given. Therefore, even if Defendants were required under Federal Rule of Civil Procedure 26 to have provided the Reliance List further in advance of the deposition, the PSC has not shown any prejudice resulting from the late disclosure. Therefore, the PSC's request for a continued deposition is denied.

---

[2] The first question about Dr. Moore's report was asked at page 125 of the transcript of her deposition.

April 30, 2019
Page 4

*Request for Production of Documents Related to Toxicology and Cleavage Fragments*

The PSC also argues that Defendants have improperly withheld materials relating to Dr. Moore's work, on behalf of Johnson & Johnson beginning in December 2017, related to the toxicology of asbestos and cleavage fragments ("Asbestos and Cleavage Fragments work"). The PSC asserts that Dr. Moore's Asbestos and Cleavage Fragments work is indistinguishable from the work Dr. Moore performed in support of her opinions in the present matter, and therefore the PSC should have the opportunity to review Dr. Moore's work and examine her results and the relationship between those results and Dr. Moore's opinion in this matter.

Defendants object to the production, arguing that Dr. Moore's Asbestos and Cleavage Fragments work as a non-testifying expert is protected by the work product doctrine pursuant to Federal Rule of Civil Procedure 26. Defendants assert that Dr. Moore's Asbestos and Cleavage Fragments work was an unrelated project which began a year prior to being retained as a testifying expert in connection with this MDL proceeding. Defendants assert that Dr. Moore was retained by a different law firm as a non-testifying consultant to aid counsel in an unrelated project. Moreover, Dr. Moore did not testify that her previous work played a role in her opinion and report. Defendants rely on *Bro-Tech Corp.*, 2008 U.S. Dist. LEXIS 21233. There, the court held that an employee of a forensic services firm was not required to produce materials that he obtained through work that he performed as a consulting expert for the same firm. *Id*. at *11. The Court held that the work that the employee performed as a consulting expert was outside the scope of his expert report and did not inform his role as a testifying expert. *Id*.

In response, the PSC argues that Dr. Moore's Asbestos and Cleavage Fragments work is "inextricably intertwined" with the work that forms the basis of her opinions in this litigation because it involves the same subject matters and her Asbestos and Cleavage Fragments work is currently ongoing. The PSC argues that Defendants' arguments misrepresent Dr. Moore's deposition testimony, and claims that because Dr. Moore may have read some of the same materials for both projects implies that the projects are indistinguishable. Furthermore, the PSC asserts that Defendants' reliance on *Bro-tech Corp.* is misleading, and that the facts at issue in *Bro-tech Corp* were distinct from the facts at issue.

As discussed above, Rule 26(a)(2)(B) applies to "materials disclosed to and considered by an expert witness for purposes of his or her expert report and testimony. . ." *Bro-Tech Corp.*, 2008 U.S. Dist. LEXIS 21233 at *11. The disclosure requirement for materials reviewed by a consulting expert is more limited than for the testifying expert. *Id.* "Information exclusively considered by such an expert in his or her capacity as a consulting expert does not fall under Rule 26(a)(2)(B)." *Id.* If a witness provides a "dual role," one as a consulting expert and one as a testifying expert, the privilege applies "only [to] those materials generated or considered

April 30, 2019
Page 5

uniquely in the expert's role as consultant." *S.E.C. v. Reyes*, 2007 U.S. Dist. LEXIS 27767, 2007 WL 963400 at *1 (N.D. Cal. Mar. 30, 2007).

I have read through Dr. Moore's deposition transcript and the Parties' arguments. I find that the work previously performed by Dr. Moore is unrelated to the testimony and expert report she prepared. Finding that Dr. Moore played a dual role in this litigation because she read some of the same articles in both projects is a stretch. Dr. Moore provided a different function in her role as a consulting expert for her work relating to Asbestos and Cleavage Fragments work. She was asked, by separate counsel from this litigation, to review scientific data regarding the toxicology of asbestos and cleavage fragments in general. Dr. Moore did not prepare an expert report relating to that matter. Moreover, the expert report prepared for the MDL proceeding does not mention cleavage fragments or discuss the toxicology of cleavage fragments as compared to asbestos. Therefore, the PSC's request that Defendants produce all documents related to Dr. Moore's Asbestos and Cleavage Fragments work is denied.

*Request for Unredacted Veritox Inc. Invoices*

Finally, the PSC argues that they are entitled to the production of unredacted invoices from Veritox, Inc. Dr. Moore is a principal at Veritox, Inc., and therefore her compensation is, in part, dependent upon the success of contracts with its clients, such as Johnson & Johnson. The PSC therefore argues that it is entitled to information regarding Dr. Moore's compensation in the form of unredacted invoices.

Defendants respond to this request only in a footnote, arguing that the information that was redacted is customary, and the redacted information is not relevant to the PSC's assessment of Dr. Moore's opinions. The PSC does not discuss this last request in their reply letter dated April 19, 2019.

Defendants have already produced the Veritox, Inc. invoices, redacting the identity of certain employees, the work they performed, and the rates being charged. This information is customarily redacted from invoices before production, and is routinely considered privileged information. The PSC has not provided any explanation as to why the redacted information would not be privileged, and, in any event, the information's relevance to the matter.

It is clear that the PSC had a full and fair opportunity to depose Dr. Moore on all relevant topics in the nearly nine-hour deposition on April 4, 2019. The PSC was not prejudiced by the late production of Dr. Moore's Reliance List and other documents, and therefore, an additional deposition relating to these materials is unwarranted. Further, the PSC's requests for documents and materials related to Dr. Moore's unrelated Asbestos and Cleavage Fragments work and unredacted invoices are not relevant to the current litigation, and therefore are not required to

April 30, 2019
Page 6

be produced.  As such, Plaintiffs' request to continue Dr. Moore's deposition and the production of additional documents is denied in its entirety.

    So Ordered.

                                                   Very truly yours,

                                                   Joel A. Pisano

cc:    Honorable Freda L. Wolfson (via ECF and First-Class Mail)
        Honorable Lois H. Goodman (via ECF and First-Class Mail)