### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

IN RE:  JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY
LITIGATION

MDL No. 16-2738 (FLW) (LHG)

ORAL ARGUMENT REQUESTED

## DEFENDANT PERSONAL CARE PRODUCTS COUNCIL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

DATED: May 6, 2019

Respectfully submitted,

PERSONAL CARE PRODUCTS COUNCIL


By:   */s/ Thomas T. Locke*
      Thomas T. Locke
      Rebecca Woods
      Renee Appel
      SEYFARTH SHAW LLP
      975 F Street, N.W.
      Washington, DC 20004
      Telephone:  (202) 463-2400
      Facsimile:  (202) 828-5393
      tlocke@seyfarth.com
      rwoods@seyfarth.com

      Richard W. Wedinger
      Jennifer Cheong
      BARRY, McTIERNAN & WEDINGER P.C.
      10 Franklin Avenue
      Edison, NJ 08837
      Telephone: (732) 738-5600
      Facsimile: (732) 738-7518
      ataylor@bmctwlaw.com
      jcheong@bmctwlaw.com

      *Attorneys for Defendant Personal Care*
      *Products Council*

## TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................... 1

STANDARD OF REVIEW ....................................................................................... 2

CHOICE OF LAW ................................................................................................... 2

ARGUMENT ............................................................................................................ 4

I.      PCPC HAS NO LIABILITY FOR LOBBYING AND RELATED ACTIVITIES. .......... 4

        A.      The First Amendment Protects PCPC's Actions. .................................. 4

        B.      The District of Columbia's  Anti-SLAPP Statute Precludes Plaintiffs'
                Claims Against PCPC. ...................................................................... 8

II.     THE NEW JERSEY PRODUCT LIABILITY ACT PRECLUDES PLAINTIFFS'
        CLAIMS AGAINST PCPC. ..................................................................10

III.    AS A MATTER OF LAW, PLAINTIFFS' COMMON LAW CLAIMS FAIL. ..............13

        A.      Plaintiffs'  Negligence  Claim  Fails  Because PCPC Owed No Duty to
                Verify the Safety of the Products. .......................................................13

        B.      Plaintiffs' Fraud and Fraudulent Concealment Claims Also Fail. .......................17

        C.      Plaintiffs' Conspiracy Claim Likewise Fails. .....................................................20

CONCLUSION......................................................................................................21

56709166v.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
  263 F.3d 239 (3d Cir. 2001) ...............................................................................5

*Abbas v. Foreign Policy Grp.*,
  975 F. Supp. 2d 1 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015) .............................9

*In re Accutane Litig.*,
  235 N.J. 229, 194 A.3d 503 (2018) ..............................................................2, 3, 4

*Agostino v. Quest Diagnostics Inc.*,
  No. 04-4362 SRC, 2010 WL 5392688 (D.N.J. Dec. 22, 2010) ...............................3

*Alatishe v. Irwin*,
  No. CIV.A. 86-479, 1987 WL 17666 (D.D.C. Sept. 18, 1987) ...........................20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..........................................................................................2

*Arlandson v. Hartz Mountain Corp.*,
  792 F. Supp. 2d 691 (D.N.J. 2011) ....................................................................11

*Bailey v. Wyeth, Inc.*,
  424 N.J. Super. 278 (Law. Div. 2008), *aff'd sub nom. DeBoard v. Wyeth, Inc.*,
  422 N.J. Super. 360, 28 A.3d 1245 (App. Div. 2011) .......................................11

*Beasock v. Dioguardi Enters.*,
  130 Misc. 2d 25, 494 N.Y.S.2d 974 (Sup. Ct. 1985) ........................................12

*Becker v. Tessitore*,
  356 N.J. Super. 233, 812 A.2d 369 (App. Div. 2002) .......................................12

*Beckwith v. Bethlehem Steel Corp.*,
  182 N.J. Super. 376, 440 A.2d 1372 (Law. Div. 1981) .....................................12

*Bennett v. Kiggins*,
  377 A.2d 57 (D.C. 1977) ...................................................................................17

*Bristol-Myers Squibb Co. v. Immunex Corp.*,
  84 F. Supp. 2d 574 (D.N.J. 2000) .......................................................................6

*Brownsville Golden Age Nursing Home, Inc. v. Wells*,
  839 F.2d 155 (3d Cir. 1988) ..............................................................................20

*In re Cheerios Mktg. & Sales Practices Litig.*,
  No. 09-CV-2413, 2012 WL 3952069 (D.N.J. Sept. 10, 2012) ................................................2

*Chen v. District of Columbia*,
  256 F.R.D. 267 (D.D.C. 2009) ......................................................................................20

*Choose Energy v. Am. Petroleum Inst.*,
  87 F. Supp. 3d 1218 (N.D. Cal. 2015) ...........................................................................9

*Citizens Against Rent Control. v. City of Berkeley*,
  454 U.S. 290 (1981) ....................................................................................................7

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017) .........................................................................6

*Commerce & Indus. Ins. Co. v. Grinnell Corp*,
  No. CIV.A. 97-775, 1999 WL 508357 (E.D. La. July 15, 1999) .........................................15

*Competitive Enter. Inst. v. Mann*,
  150 A.3d 1213 (D.C. 2016) ......................................................................................8, 10

*Conservative Club of Washington v. Finkelstein*,
  738 F. Supp. 6 (D.D.C. 1990) ....................................................................................13

*Covad Comm'cns Co. v. Bell Atl. Corp.*,
  398 F.3d 666 (D.C. Cir. 2005) .....................................................................................4

*Demahy v. Schwarz Pharma, Inc.*,
  702 F.3d 177 (5th Cir. 2012) ......................................................................................12

*E. Penn Mfg. Co. v. Pineda*,
  578 A.2d 1113 (D.C. 1990) ........................................................................................12

*E.R.R. Presidents Conference v. Noerr Motor Freight*,
  365 U.S. 127 (1961) ....................................................................................................5

*Exec. Sandwich Shoppe v. Carr Realty Corp.*,
  749 A.2d 724 (D.C. 2000) ..........................................................................................20

*Fairbanks v. Roller*,
  314 F. Supp. 3d 85 (D.D.C. 2018) ...............................................................................10

*Farah v. Esquire Magazine*,
  863 F. Supp. 2d 29 (D.D.C. 2012), *aff'd*, 736 F.3d 528 (D.C. Cir. 2013) .............................8

*Fed. Prescription Serv. v. Am. Pharm. Ass'n*,
  663 F.2d 253 (D.C. Cir. 1981) ......................................................................................6

*Findlay v. CitiMortgage, Inc.*,
  813 F. Supp. 2d 108 (D.D.C. 2011) ....................................................................20

*Forras v. Rauf*,
  39 F. Supp. 3d 45 (D.D.C. 2014), *aff'd on other grounds*, 812 F.3d 1102 (D.C.
  Cir. 2016) .........................................................................................................8, 9

*Fraser v. Bovino*,
  317 N.J. Super 23 (App. Div. 1998) .....................................................................7

*Friends of Rockland Shelter Animals v. Mullen*,
  313 F. Supp. 2d 339 (S.D.N.Y. 2004) ..................................................................6

*Fritz v. Islamic Republic of Iran*,
  320 F. Supp. 3d 48 (D.D.C. 2018) ........................................................................3

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010) ...................................................................................9

*Hakki v. Zima Co.*,
  No. 03-9183, 2006 WL 852126 (D.C. Super. Ct. Mar. 28, 2016) ......................14

*Scott v. Harris*,
  550 U.S. 372, 380 (2007) .......................................................................................2

*Hedgepeth v. Whitman Walker Clinic*,
  22 A.3d 789 (D.C. 2011) .....................................................................................13

*Henry v. Lake Charles Am. Press*,
  566 F.3d 164 (5th Cir. 2009) .................................................................................9

*Horsemen's Benevolent & Protective Ass'n v. Penn. Horse Racing Comm'n*,
  530 F. Supp. 1098 (E.D. Pa.), *aff'd*, 688 F.2d 821 (3d Cir. 1982) .......................6

*Howard Univ. v. Watkins*,
  857 F. Supp. 2d 67 (D.D.C. 2012) .......................................................................17

*Inox Wares Pvt. Ltd. v. Interchange Bank*,
  No. CIV.A. 06-4307 (SRC), 2008 WL 4691906 (D.N.J. Oct. 22, 2008) .............14

*Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*,
  590 F.2d 1139 (D.C. Cir. 1978) .............................................................................7

*Koruba v. Am. Honda Motor Co.*,
  396 N.J. Super. 517 (App. Div. 2007) .................................................................11

*In re Lead Paint Litig.*,
  191 N.J. 405 (2007) .............................................................................................11

iv

*Liberty Synergistics v. Microflo Ltd.*,
  718 F.3d 138 (2d Cir. 2013) ..................................................................9

*Lightning Lube v. Witco Corp.*,
  4 F.3d 1153,1185 (3d Cir. 1993) .........................................................17

*Main St. at Woolwich, LLC v. Ammons Supermarket*,
  451 N.J. Super. 135 (App. Div. 2017) ...................................................5

*Manistee Town Ctr. v. City of Glendale*,
  227 F.3d 1090 (9th Cir. 2000) ..............................................................5

*McAlonan v. Tracy*,
  No. A-6034-07T2,  2011 WL 6125 (N.J. Super. Ct. App. Div., Mar. 16, 2010),
  *cert. denied*, 202 N.J. 347 (2010) ........................................................5

*McCarrell v. Hoffmann-La Roche*,
  227 N.J. 569 (2017) ...............................................................................3

*McDarby v. Merck & Co.*,
  401 N.J. Super. 10, 949 A.2d 223 (App. Div. 2008) ...........................11

*Meineke Car Care Ctrs. v. Juliano*,
  No. CV1712408, 2018 WL 4629517 (D.N.J. Sept. 26, 2018).............17

*Meyers v. Donnatacci*,
  220 N.J. Super. 73 (Law. Div. 1987) ..................................................16

*Mills v. Cosmopolitan Ins. Agency*,
  424 A.2d 43 (D.C. 1980) ......................................................................17

*Murray v. Motorola Inc.*,
  2011 WL 2885872 (D.C. Super. Ct. July 14, 2011) ...........................15

*Nader v. The Dem. Nat'l Comm.*,
  555 F. Supp. 2d 137 (D.D.C. 2008),  *aff'd on other grounds*, 567 F.3d 692
  (D.C. Cir. 2009)......................................................................................4

*Nader v. Democratic Nat'l Comm.*,
  567 F.3d 692 (D.C. Cir. 2009) .............................................................19

*Nova Bank v. Samuel D. Schenker, L.L.C.*,
  No. A-0553-13T4,  2015 WL 751529 (N.J. Super. Ct. App. Div. Feb. 24,
  2015)......................................................................................................20

*Pfizer Inc. v. Giles (In re Asbestos Sch. Litig.)*,
  46 F.3d 1284 (3d Cir. 1994) .................................................................20

v

*Polzo v. Cty. of Essex*,
196 N.J. 569 (2008) ...........................................................................................13

*Price v. Stossel*,
620 F.3d 992 (9th Cir. 2010) ..............................................................................9

*Redmond v. Birkel*,
933 F. Supp. 1 (D.D.C. 1996) ...........................................................................17

*Shtutman v. Carr*,
No. A-1064-15T1, 2017 WL 4402045 (N.J. Super. Ct. App. Div. Oct. 4, 2017) .................18

*Simpson v. Johnson & Johnson*,
No. 2016 CA 001931 (D.C. Super. Ct., Jan. 13, 2017) ...................................7, 8, 9

*Snyder v. Am. Ass'n of Blood Banks*,
144 N.J. 269 (1996) ...........................................................................................15

*Tuosto v. Philip Morris USA*,
No. 05CIV.9384, 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ...........................................6

*Tuttle v. Lorillard Tobacco Co.*,
No. CIV.99-1550(PAM/JGL), 2003 WL 1571584 (D. Minn. Mar. 3, 2003),
aff'd, 377 F.3d 917 (8th Cir. 2004) ...................................................................15

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965) .............................................................................................5

*Venetian Casino Resort v. N.L.R.B.*,
793 F.3d 85 (D.C. Cir. 2015) ..............................................................................4

*Village Supermarket, Inc. v. Mayfair*,
269 N.J. Super. 224 (Law Div. 1995) ..................................................................7

*In re Welding Fume Prod. Liab. Litig.*,
526 F. Supp. 2d 775 (N.D. Ohio 2007) ..............................................................15

**Statutes**

D.C. Code § 16-5501 ...................................................................................8, 9

D.C. Code § 16-5502 .............................................................................7, 8, 9

N.J.S.A. 2A:58C-1(a) ......................................................................................10

N.J.S.A. 2A:58C-1(b) ...............................................................................10, 11

N.J.S.A. 2A:58C-2 ...........................................................................................11

N.J.S.A. 2A:58C-8 ................................................................................................11

Neb. Code § 25-21,180 .......................................................................................12

S.C. Code § 15-73-10 ..........................................................................................12

**Other Authorities**

21 C.F.R. 740.1 ....................................................................................................14

Fed. R. Civ. P. 9 ...................................................................................................17

Fed. R. Civ. P. 12 ...................................................................................................9

Fed. R. Civ. P. 56 ..............................................................................................1, 9

Restatement (Second) of Conflict of Laws (Am. Law Inst. 1971, amended 1988) ...................2, 3

U.S. Const. Amend. I....................................................................................1, 2, 4, 13

56709166v.1

Pursuant to Fed. R. Civ. P. 56, Defendant Personal Care Products Council ("PCPC") submits this Memorandum of Law in support of its Motion for Summary Judgment for all MDL lawsuits from which PCPC was not previously dismissed per CMO No. 10, Dkts. 4767, 6721.

## INTRODUCTION

PCPC is a Washington DC-based trade association that does not manufacture or sell any cosmetic product. Nevertheless, Plaintiffs allege that PCPC is liable for their ovarian cancer, asserting negligence, fraud, fraudulent concealment and conspiracy causes of action. Their claims are premised on Plaintiffs' belief that PCPC misrepresented to regulators the purported harmful effects of cosmetic talc. Plaintiffs' claims fail and PCPC is entitled to summary judgment for the following reasons:

*First*, the First Amendment of the United States Constitution and the *Noerr-Pennington* doctrine preclude liability for actions relating to petitioning the government. Similarly, the District of Columbia's Anti-Strategic Lawsuit Against Public Participation ("Anti-SLAPP") statute precludes liability arising from advocacy on issues of public interest. *Second*, under the New Jersey Product Liability Act, actions for defective products may be asserted only against manufacturers and retailers, not third parties like PCPC that played no role in placing a product into the stream of commerce. *Third*, even if those impediments could be overcome—and they cannot—there is no genuine issue of material fact preventing summary judgment. PCPC did not owe a duty to Plaintiffs to test or verify the safety of the products at issue here or to enforce cosmetics regulations or standards, and PCPC was not negligent, did not commit fraud or fraudulent concealment, and did not participate in a conspiracy. Far from being tortious, PCPC's public statements regarding cosmetic talc were consistent with the views of the vast majority of scientists. As the National Cancer Institute states on its website, "The weight of evidence does

1

not support an association between perineal talc exposure and an increased risk of ovarian cancer." PCPC cannot be liable for agreeing with the scientific establishment.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes over irrelevant facts will not preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non–moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation and quotation omitted).

## CHOICE OF LAW

The Court does not need to resolve choice of law to grant PCPC's motion based on the First Amendment. Either New Jersey or Washington, D.C. law applies to the other issues.

In the context of an MDL, the choice-of-law rules of the transferor court apply. *In re Cheerios Mktg. & Sales Practices Litig.*, No. 09-CV-2413, 2012 WL 3952069, at *7 (D.N.J. Sept. 10, 2012); *see also* CMO No. 2, Dkt. 102 ("All parties stipulate and agree that in any case [directly] filed pursuant to this Order, choice of law determinations shall be made in accordance with the law of the jurisdiction that would apply to the action had the matter been initially filed in the Original District."). Pursuant to CMO No. 10, PCPC has been dismissed from all lawsuits except those designating New Jersey or Washington, D.C. for trial. Dkt. 4767. Accordingly, New Jersey's choice-of-law rules apply to those cases designating New Jersey for trial, and Washington, D.C.'s choice-of-law rules apply to the cases originating from there.

2

For personal injury cases, New Jersey applies the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws (Am. Law Inst. 1971, amended 1988) ("Restatement").  *In re Accutane Litig.*, 235 N.J. 229, 257, 194 A.3d 503, 519 (2018). "Washington, D.C. uses a choice-of-law rule that blends a 'governmental interest analysis' with a 'most significant relationship' test."  *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 89 (D.D.C. 2018).

In complex cases with many plaintiffs from different states, courts may apply the law of a single state with the most significant relationship.  *Accutane*, 235 N.J. at 263-64.  In reaching its holding, the New Jersey Supreme Court explained that the "two most significant Restatement factors" in consolidated, multi-party litigation are "certainty, predictability and uniformity of result" and "ease in the determination and application of the law to be applied."  *Id.* at 263. "Administrative ease and efficiency" favor the application of the forum's state law.  *See id.* at 264.  Here, that law is either New Jersey or Washington, D.C.

The application of other state's laws would not only yield mixed results, *see id.* at 260, but would be based on uncertain determinations: Plaintiffs' claims against PCPC are rooted in fraud and misrepresentation, PCPC's alleged conduct was not directed to a particular Plaintiff in a particular state, and the locations of their injuries are fortuitous.  *See Agostino v. Quest Diagnostics Inc.*, No. 04-4362 SRC, 2010 WL 5392688, at *5 (D.N.J. Dec. 22, 2010) (applying Restatement § 148 to fraud claim based on alleged misrepresentations).  Plaintiffs do not allege that they even heard of PCPC prior to this litigation, much less relied on any alleged representation directed to each of them in a particular state.  Instead, the Complaints merely allege that representations were made in Washington, D.C., where PCPC and the regulators are located.

Another factor supporting the application of the law of either New Jersey or Washington, D.C. is the governmental policies underlying their statutes. *See, e.g.*, *McCarrell v. Hoffmann-La Roche*, 227 N.J. 569, 590 (2017). New Jersey has a paramount interest in the application of its Product Liability Act (which is discussed in Part II *infra*), particularly as the products at issue were developed here. *See, e.g.*, *Accutane*, 235 N.J. at 260. Washington, D.C. has a significant interest in protecting the advocacy rights of its citizens, as articulated by its Anti- SLAPP statute (which is discussed in Part I.B. *infra*).

And, the application of either New Jersey or Washington, D.C. law is consistent with Plaintiffs' expectations, as they chose to file their lawsuits in New Jersey or Washington, D.C. in order to obtain personal jurisdiction over PCPC. *See generally Accutane*, 235 N.J. at 262-63.

## ARGUMENT

## I.  PCPC HAS NO LIABILITY FOR LOBBYING AND RELATED ACTIVITIES.

Plaintiffs' allegations focus on PCPC's role "interacting with and influencing local, state and federal government agencies on issues related to . . . the regulation and marketing of talc based body powders and the PRODUCTS." First Amended Master Complaint ("Compl.") ¶¶ 12, 134, 161, 163, 164, 166, 199, 205, 213. Even if those allegations were true—and there is no evidence that PCPC lobbied local or state agencies regarding talc or federal agencies regarding marketing products—PCPC's lobbying and related activities are protected under the First Amendment and Anti-SLAPP laws.

### A.  The First Amendment Protects PCPC's Actions.

PCPC cannot be liable for exercising its First Amendment right to lobby and its related publicity activities. "The *Noerr-Pennington* doctrine holds that entities who petition the government, 'whether by efforts to influence legislative or executive action or by seeking redress in court,' are immune from liability for such activity under the First Amendment." *Nader v. The*

4

*Dem. Nat'l Comm.*, 555 F. Supp. 2d 137, 156-57 (D.D.C. 2008), *aff'd on other grounds*, 567 F.3d 692 (D.C. Cir. 2009) (quoting *Covad Comm'cns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005)); *see also Venetian Casino Resort v. N.L.R.B.*, 793 F.3d 85, 90 (D.C. Cir. 2015) (protected activities include "advocate[ing] causes and points of view" or "attempt[ing] to influence the passage or enforcement of law"); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) ("A publicity campaign directed at the general public and seeking government action is covered by Noerr-Pennington immunity.").

The *Noerr-Pennington* doctrine takes its name from two cases, *E.R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). Those cases held that liability could not be imposed for the exercise of constitutional rights, such as engaging in a publicity campaign or lobbying efforts. The *Noerr-Pennington* doctrine protects two types of actions: "injuries which result from the petitioning itself" and "injuries caused by government action which results from the petitioning." *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 251 (3d Cir. 2001).

Although the *Noerr-Pennington* doctrine arose in the context of antitrust, courts have extended the doctrine beyond antitrust cases, including tort cases. *See, e.g.*, *Main St. at Woolwich, LLC v. Ammons Supermarket*, 451 N.J. Super. 135, 144 (App. Div. 2017) ("The doctrine's provenance lies in the field of antitrust law, but its reach has since then been extended to include common-law torts. . . ."). The *Noerr-Pennington* doctrine has been applied in product liability lawsuits, including suits brought under negligence, conspiracy and related theories. *See, e.g.*, *McAlonan v. Tracy*, No. A-6034-07T2, 2011 WL 6125, at *13 (N.J. Super. Ct. App. Div., Mar. 16, 2010), *cert. denied*, 202 N.J. 347 (2010) (holding that comments submitted to National

5

Highway Traffic Safety Administration regarding proposed rulemaking were protected under *Noerr-Pennington* doctrine and could not substantiate plaintiff's products liability claims).

Plaintiffs' attempt to avoid the *Noerr-Pennington* doctrine by arguing that "PCPC's conduct constituted a sham" (Compl. ¶¶ 139, 169, 203, 215) fails as a matter of law and fact. "*Noerr-Pennington* protection has been extended to all advocacy intended to influence government action, **including to allegedly false statements**." *Tuosto v. Philip Morris USA*, No. 05CIV.9384, 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007) (emphasis added). "Even statements that may fall far short of the ethical standards generally approved in this country are protected by the Noerr-Pennington doctrine if they are made in the course of petitioning the government." *Id*. "[I]mmunity is not disturbed by a defendant's deliberate deception of the public through a misleading publicity campaign, improper or even unlawful lobbying techniques, or the dissemination of false information during a lobbying campaign. . . ." *Bristol-Myers Squibb Co. v. Immunex Corp.*, 84 F. Supp. 2d 574, 575 (D.N.J. 2000).

The "sham" exception applies only where lobbying activities "subverted the integrity of the governmental process" by, for example, attempting to influence governmental action through overtly corrupt conduct, such as bribes. *Fed. Prescription Serv. v. Am. Pharm. Ass'n*, 663 F.2d 253, 262 (D.C. Cir. 1981). Plaintiffs do not allege that PCPC engaged in overtly corrupt conduct, and there is no such evidence. "[L]obbying activities that are unethical or result in deception are not actionable under the *Noerr-Pennington* doctrine." *Friends of Rockland Shelter Animals v. Mullen*, 313 F. Supp. 2d 339, 344 (S.D.N.Y. 2004). So long as the lobbying and public relations campaign is genuinely intended to influence, there is no sham. *Horsemen's Benevolent & Protective Ass'n v. Penn. Horse Racing Comm'n*, 530 F. Supp. 1098, 1110 (E.D. Pa.), *aff'd*, 688 F.2d 821 (3d Cir. 1982).

6

In similar circumstances, courts repeatedly have held that trade associations have no liability. *See, e.g.*, *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas*, 235 F. Supp. 3d 1132, 1157 (E.D. Cal. 2017) (dismissing claims against two trade associations because their alleged conduct—including "closed-door" gatherings, marketing and public relations campaigns, and letter-writing campaigns—"f[ell] within the scope of protected petitioning").

At best, Plaintiffs' allegations reflect a disagreement regarding the science and research concerning talc. Compl. ¶¶ 28-35, 39, 47. As discussed below in Part III, PCPC's lobbying and related activities were consistent with positions taken by the vast majority of scientists. Regardless, the substance of PCPC's conduct is contemplated by *Noerr-Pennington*'s protection. *See, e.g.*, *Citizens Against Rent Control. v. City of Berkeley*, 454 U.S. 290, 295 (1981) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly."); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1148 (D.C. Cir. 1978) ("Even economically motivated expression or association is not disqualified from protection under the first amendment."); *Fraser v. Bovino*, 317 N.J. Super 23, 37 (App. Div. 1998) (recognizing "the fundamental values that undergird a citizen's right to communicate on issues of public import"); *Village Supermarket, Inc. v. Mayfair,* 269 N.J. Super. 224, 229-32 (Law Div. 1995) (refusing to permit claims based on lobbying activity protected by the First Amendment masquerading as tort claims). Thus, even if PCPC had taken a minority position and was wrong, pursuant to the *Noerr-Pennington* doctrine, PCPC still would have no liability.

7

**B.** **The District of <u>Columbia's Anti-SLAPP Statute Precludes Plaintiffs' Claims Against PCPC</u>**.

As to the lawsuits emanating from Washington, D.C., the claims are barred by D.C.'s Anti-SLAPP statute.  D.C. Code § 16-5502; *Simpson v. Johnson & Johnson*, No. 2016 CA 001931 (D.C. Super. Ct., Jan. 13, 2017) (granting PCPC's Anti SLAPP motion to dismiss).

To make a *prima facie* showing under the statute, a movant must demonstrate that the claim arises from "an act in furtherance of the right of advocacy" or "exercise of the right of petition" "on issues of public interest."  *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1227 (D.C. 2016).  "Public interest" is broadly defined.  D.C. Code § 16-5502; *Forras v. Rauf*, 39 F. Supp. 3d 45, 53 (D.D.C. 2014), *aff'd on other grounds*, 812 F.3d 1102 (D.C. Cir. 2016). Plaintiffs allege that PCPC petitioned "regulatory bodies" regarding the "safety of talc" (*see, e.g.*, Compl. ¶ 35), confirming that PCPC's activities raised an issue of public interest.

An act in furtherance of the right of advocacy includes "[a]ny written or oral statement" made (i) "[i]n connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," (ii) "[i]n a place open to the public or a public forum in connection with an issue of public interest," or (iii) [a]ny other expression or expressive conduct that involves petitioning the government or communicating views to members of the public in connection with an issue of public interest."  D.C. Code § 16-5501*; see also Farah v. Esquire Magazine*, 863 F. Supp. 2d 29, 38 (D.D.C. 2012), *aff'd*, 736 F.3d 528 (D.C. Cir. 2013) (internet post qualifies as "'written . . . statement'" made in a "'place open to the public or a public forum'") (quoting D.C. Code § 16-5501(1)(A)).  The Complaint alleges, for example, that PCPC responded to a United States National Toxicology Program request on the safety of talc and that PCPC submitted scientific reports.  *See, e.g.*, Compl. ¶¶ 34-36, 52.  This alleged conduct constitutes an act in furtherance of the right of advocacy.

8

In 2017, the District of Columbia Superior Court held that the same activities allegedly taken by PCPC were protected from liability under D.C.'s Anti-SLAPP statute. *See Simpson v. Johnson & Johnson*, No. 2016 CA 001931 (D.C. Super. Ct., Jan. 13, 2017) Hearing Tr., at 37:14–17 (attached as Exh. 2 to T.Locke's Affidavit). The Court held that PCPC's alleged conduct satisfied each of the three categories of protected conduct. *Simpson* Hearing Tr. at 41 (submission of reports to government met §16-5501(1)(A)(i)); 41-42 (publication of information regarding safety of talc met § (ii)); 42-43 (petition of government and communications with public met "catchall definition" § (B)).

Because PCPC has made a *prima facie* showing, to avoid summary judgment, Plaintiffs have the burden of establishing that their claims are "likely to succeed on the merits." D.C. Code § 16-5502(b); *see also Abbas v. Foreign Policy Grp.*, 975 F. Supp. 2d 1, 20 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015) (granting Anti-SLAPP motion after defendant made *prima facie* showing and plaintiff failed to establish likelihood of success on the merits). Courts have interpreted this standard as being "comparable to that used on a motion for judgment as a matter of law." *Forras*, 39 F. Supp. 3d at 54 (quotation omitted). As the D.C. Superior Court held in *Simpson*, Plaintiffs cannot meet their burden. *Simpson* Hearing Tr., at 43:17-21.[1]

The majority view is that federal courts exercising diversity jurisdiction can apply a state's Anti-SLAPP act. *See, e.g.*, *Liberty Synergistics v. Microflo Ltd.*, 718 F.3d 138, 143-44 (2d Cir. 2013); *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010); *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010); *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 168–69 (5th Cir. 2009). The

---

[1] The same result is mandated by Anti-SLAPP statutes in California, Florida, Indiana, Louisiana, Maryland, Massachusetts, Nevada, New York, Oklahoma and Texas. In California, for example, courts have conferred Anti-SLAPP protection on trade associations, reasoning that "the statute protects both private and corporate speech . . . and that an issue of public interest is any issue in which the public is interested." *Choose Energy v. Am. Petroleum Inst.*, 87 F. Supp. 3d 1218, 1224 (N.D. Cal. 2015) (quotations and citations omitted).

contrary position is distinguishable.  In *Abbas*, the D.C. Circuit declined to apply the Anti-SLAPP statute at the motion to dismiss stage because the statute's dismissal standard differs from both Fed. R. Civ. P. 12 and 56.  783 F.3d at 1332.  However, D.C. federal courts have since clarified that the "'likelihood of success on the merits' standard mirrors the Rule 56 summary judgment standard.'"  *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 94 (D.D.C. 2018) (citing *Competitive Enter. v. Mann*, 150 A.3d 1213, 1238 n. 32 (D.C. 2016)).  Because PCPC is moving for summary judgment, the federal rules and the Anti-SLAPP statutes are in accord.  Therefore, both the *Noerr-Pennington* doctrine and Anti-SLAPP statutes warrant summary judgment.

## II.     THE NEW JERSEY PRODUCT LIABILITY ACT PRECLUDES PLAINTIFFS' CLAIMS AGAINST PCPC.

At a minimum, the New Jersey Product Liability Act (the "NJPLA") governs the lawsuits designated for trial in New Jersey.  Plaintiffs attempt to circumvent the NJPLA by asserting common law claims against PCPC. These claims fail because: (1) common law claims are subsumed by the NJPLA; and (2) the NJPLA provides that only manufacturers and sellers are subject to liability for products claims.  Accordingly, PCPC is entitled to summary judgment.

Plaintiffs "seek compensatory and punitive damages . . . as a result of **injuries incurred by Defendants' defective products**."  Compl. at 1 (emphasis added).  The New Jersey legislature enacted the NJPLA to establish "clear rules with respect to certain matters relating to actions for damages **for harm causing by products**."  N.J.S.A. 2A:58C-1(a) (emphasis added).  The NJPLA governs all "product liability actions" that include any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty.  N.J.S.A. 2A:58C-1(b)(3).  Under the NJPLA, "harm" is defined broadly to include: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental

anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c)." N.J.S.A. 2A:58C-1(b)(2).

The New Jersey Supreme Court has explicitly held that "[w]ith the passage of the Product Liability Act, . . . there came to be one unified, statutorily defined theory of recovery for harm caused by product[.]'" *In re Lead Paint Litig.*, 191 N.J. 405, 436 (2007). The Court explained that the NJPLA is "both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *Id.*

Although Plaintiffs assert common law claims, the premise of their claims remains the same—alleged harm caused by a product containing talcum powder. *See Koruba v. Am. Honda Motor Co.*, 396 N.J. Super. 517, 531 (App. Div. 2007) (holding that "the PLA no longer recognizes negligence . . . as a viable separate claim"); *Bailey v. Wyeth, Inc.*, 424 N.J. Super. 278, 335-36 (Law. Div. 2008), *aff'd sub nom. DeBoard v. Wyeth, Inc.*, 422 N.J. Super. 360, 28 A.3d 1245 (App. Div. 2011) (concluding that "there is no doubt plaintiffs' common-law causes of action, including their fraud and misrepresentation . . . claims involve harm caused by a product under the PLA" and are therefore subsumed by the NJPLA); *McDarby v. Merck & Co.*, 401 N.J. Super. 10, 98, 949 A.2d 223, 278 (App. Div. 2008) (stating that injuries that are "encompassed within the definition of harm set forth in the PLA" are consequently subsumed by the Act, thereby indicating an inclusion of consortium per the NJPLA's definition of harm, N.J.S.A. 2A:58C-1(b)(2)).

Because Plaintiffs' claims are premised on the alleged harmfulness of talc-containing consumer products, their claims can be brought only under the NJPLA. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703 (D.N.J. 2011) ("[R]egardless of how a claim is

11

pleaded, where the core issue is the harmfulness of the product's chemicals, the claim must be pleaded as an NJPLA claim.")\

The NJPLA limits product liability actions to manufacturers and sellers. N.J.S.A. 2A:58C-2. Under § 2A:58C-8, a "manufacturer" is someone who contributes to the making of the product. A "seller" is someone who is involved in placing the product in the line of commerce. Because the NJPLA is the only method to pursue a products liability action, and the NJPLA omits any other types of parties, only manufacturers and sellers are subject to potential liability. *See, e.g.*, *Becker v. Tessitore*, 356 N.J. Super. 233, 249, 812 A.2d 369, 379 (App. Div. 2002) (affirming dismissal of products liability claim against defendant trucking company because it was not a "manufacturer" or "seller" under the NJPLA).

PCPC never manufactured or sold cosmetic products. Indeed, Plaintiffs refer to PCPC solely as a trade association. Compl. ¶ 12. The NJPLA does not provide for trade association liability. *See, e.g.*, *Beckwith v. Bethlehem Steel Corp.*, 182 N.J. Super. 376, 385, 440 A.2d 1372, 1377 (Law. Div. 1981) (granting summary judgment in trade association's favor in product liability lawsuit).

Even if the law in other jurisdictions applied, the result would be the same. At least fourteen other states—Alabama, Arkansas, Connecticut, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Ohio, Oregon, Tennessee, Texas and Washington—have adopted a variation of the Model Product Liability Act. In those states, Plaintiffs' claims against PCPC also are precluded.[2] And, statutes in at least 25 states where Plaintiffs reside contemplate the

---

[2] *See, e.g.*, *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182, n. 4 (5th Cir. 2012) ("The vast majority of decisions have held that the LPLA broadly applies to all suits involving injuries from products, and these decisions rejected the argument that common law tort claims can still be brought for injuries stemming from products under facts nearly identical to those in the current case.").

liability of manufacturers and sellers only, not trade associations.[3]  *See also Beasock v. Dioguardi Enters.*, 130 Misc. 2d 25, 29–30, 494 N.Y.S.2d 974, 978 (Sup. Ct. 1985) (holding that publications by trade association did not produce injuries and could not serve as basis for liability). This consensus exists because product liability logically relates only to manufacturers and sellers. *See generally E. Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1118 (D.C. 1990) (discussing theories of liability and duties applicable to manufacturers and sellers). Products liability does not extend to third parties falling outside of the chain of commerce.

Accordingly, Plaintiffs' claims against PCPC fail and it is entitled to summary judgment.

## III.   AS A MATTER OF LAW, PLAINTIFFS' COMMON LAW CLAIMS FAIL.

Even if Plaintiffs could overcome the First Amendment, the *Noerr Pennington* doctrine and D.C.'s Anti-SLAPP statute's prohibition of liability regarding advocacy on issues of public interest, **and** Plaintiffs could overcome the NJPLA's subsuming common law causes of actions like those that Plaintiffs assert, **and** Plaintiffs could overcome the NJPLA's limitation of product liability actions to manufacturers and sellers—which Plaintiffs cannot—there is no genuine issue of material fact preventing summary judgment. As a matter of law, Plaintiffs cannot establish that PCPC owed a duty to them to verify the safety of the products at issue here, which is required for a negligence cause of action. Nor can Plaintiffs establish the elements of fraud, fraudulent concealment, or conspiracy.

### A.   Plaintiffs' Negligence Claim Fails Because PCPC Owed No Duty to Verify the Safety of the Products.

"[A] claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused

---

[3] *See, e.g.*, Neb. Code § 25-21,180 ("Product liability action shall mean any action brought against a manufacturer, seller, or lessor of a product, regardless of the substantive legal theory or theories upon which the action is brought…"); S.C. Code § 15-73-10 (providing exclusive remedy for defective product against seller).

by the breach." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011); *see also Polzo v. Cty. of Essex*, 196 N.J. 569, 584 (2008) (same). When a duty is lacking, a claim of negligence does not exist. *Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 11 (D.D.C. 1990) ("Negligence does not exist in the abstract, it contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it.") (quotation and citation omitted).

"The issue whether a defendant owes a legal duty is generally a question of law for the court to decide." *Inox Wares Pvt. Ltd. v. Interchange Bank*, No. CIV.A. 06-4307 (SRC), 2008 WL 4691906, at *3 (D.N.J. Oct. 22, 2008). Courts generally do not impose a duty on a third party to protect a plaintiff unless there is a "special relationship." *Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126, at *4 (D.C. Super. Ct. Mar. 28, 2016). There is no relationship between PCPC and Plaintiffs. Due to the lack of relationship, Plaintiffs cannot establish the requisite "duty" element of a negligence claim.

Plaintiffs argue that PCPC voluntarily undertook "a duty of care to Plaintiffs by self-regulating the cosmetics industry." Compl. ¶ 136. There is no support for that argument. Plaintiffs concede that PCPC was not granted governmental authority to regulate cosmetics. *Id.* ¶¶ 12, 34. Plaintiffs also concede that the U.S. Food and Drug Administration ("FDA") regulates the manufacture and sale of talc products. *Id.* ¶ 53 ("Talc as a cosmetic ingredient and talc based body powder as a cosmetic product is regulated by the FDA. *See* Ex. 41 (P-324 (21 C.F.R. 740.1))"). And, Plaintiffs do not allege that they ever consulted, relied upon, or even heard of any talc-related work performed by PCPC. *See id.* (omitting any such allegations). Moreover, whatever Plaintiffs mean by "self-regulating the cosmetics industry," that does not equate to PCPC verifying the safety of the products at issue in this litigation. There is no evidence that

14

PCPC represented that it would: test cosmetic products to verify their safety; ensure that cosmetics manufacturers performed tests on their products; inspect cosmetic manufacturers' facilities or practices; control the practices of cosmetic manufacturers; or accredit cosmetic manufacturers' practices and testing. Plaintiffs do not even allege that.

The cases recognizing the voluntary acceptance of a duty of care by trade associations are distinguishable. Those cases involved trade associations that: (1) established regulations designed for the benefit of consumers; **and (2) enforced those regulations**. *See, e.g.*, *Murray v. Motorola Inc.*, 2011 WL 2885872 (D.C. Super. Ct. July 14, 2011) (association allegedly set cell telephone radiation safety standard, **tested** phones, and **placed a stamp of approval on the phones** so that consumers could rely on the testing); *Snyder v. Am. Ass'n of Blood Banks*, 144 N.J. 269, 273 (1996) (association **annually inspected and accredited its members**). In contrast, courts routinely reject arguments that a duty exists where the trade association has no control or enforcement authority over manufacturers. *See, e.g., In re Welding Fume Prod. Liab. Litig.*, 526 F. Supp. 2d 775, 799 (N.D. Ohio 2007) ("[C]ourts have repeatedly held that trade associations, themselves, have no duty to users of products in that trade."); *Tuttle v. Lorillard Tobacco Co.*, No. CIV.99-1550(PAM/JGL), 2003 WL 1571584, at *1 (D. Minn. Mar. 3, 2003), aff'd, 377 F.3d 917 (8th Cir. 2004) (finding that, regardless of alleged misstatements about health effects of smokeless tobacco, trade association did not exercise sufficient responsibility for duty to exist); *Commerce & Indus. Ins. Co. v. Grinnell Corp*, No. CIV.A. 97-775, 1999 WL 508357, at *1 (E.D. La. July 15, 1999) (declining to impose liability "on a voluntary, nonprofit standards setting association" because association merely set safety standards that third parties may or may not choose to adopt, modify or reject).

PCPC did circulate a definition of cosmetic talc and, with input from, and the consensus of its members and the FDA, voluntary testing guidelines for its members to determine whether contaminants were in cosmetic talc. SOF ¶ 10. However, there is no evidence that PCPC represented that it would test cosmetic talc or any finished consumer product incorporating cosmetic talc. Nor is there any evidence that PCPC had the scientists or facilities to test cosmetic talc or finished products. Likewise, there is no evidence that PCPC represented that it would verify or enforce whether tests were performed by manufacturers on cosmetic talc or their finished cosmetic products incorporating talc. There is no evidence that PCPC represented that it would accredit any testing or audit test results, nor that it could enforce any testing standards. And, there is no evidence that PCPC placed its stamp of approval on talc-based body powders, verifying their safety. SOF ¶ 11. In fact, Plaintiffs do not allege that PCPC made such representations. Accordingly, there is no evidence that PCPC voluntarily undertook a duty to verify the safety of the products at issue here.

Moreover, Johnson & Johnson Consumer, Inc. ("JJCI") conducted electron microscopy testing of the cosmetic talc used in the products at issue here. This additional testing has been characterized as the "gold standard." SOF ¶ 12. Accordingly, the voluntary testing guidelines that PCPC circulated to its members are inapplicable in this litigation because JJCI conducted its own supplemental tests.

Plaintiffs' allegations are akin to—but less favorable to Plaintiffs than—those raised in *Meyers v. Donnatacci*, 220 N.J. Super. 73, 76 (Law. Div. 1987). In *Meyers*, the Court granted summary judgment to a trade association regarding plaintiff's negligence and other claims. The Court held that the association owed no duty to plaintiff, notwithstanding that the association promulgated standards, which were circulated to members, industry, and public officials for

16

comment. *Id*. Here, as in *Meyers*, there is no evidence that PCPC represented that it would perform testing or monitor manufacturers' compliance with testing guidelines. In fact, here, JJCI performed its own supplemental tests. SOF ¶12.

As Plaintiffs concede, PCPC is a "trade association" tasked with "representing the personal care and cosmetics industry." Compl. ¶12. Indeed, Plaintiffs allege that PCPC "acted as a mouthpiece for the members." *Id*. ¶36. PCPC never had a "special relationship" with Plaintiffs that would create a duty to them. *See Meyers*, 220 N.J. Super. at 81 (noting no special relationship between association and plaintiff).

Because PCPC did not assume a duty to Plaintiffs, their negligence claim fails.

**B.    Plaintiffs' Fraud and Fraudulent Concealment Claims Also Fail.**

Plaintiffs only vaguely allege that PCPC misrepresented or concealed facts regarding whether talc-based body powders cause ovarian cancer. Compl. ¶¶160, 165, 198, 295. "Fraud is never presumed and must be particularly pleaded." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). Rule 9 of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." "To meet this stringent standard, the party must plead or allege **the date, time and place** of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Meineke Car Care Ctrs. v. Juliano*, No. CV1712408, 2018 WL 4629517, at *4 (D.N.J. Sept. 26, 2018) (emphasis added). "A fraud plaintiff must prove each of these factors by clear and convincing evidence and lack of proof as to one or more of the elements causes a fraud claim to fail." *Redmond v. Birkel*, 933 F. Supp. 1, 3 (D.D.C. 1996) (internal citation omitted).

"The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Id.*; *see also Mills v. Cosmopolitan*

17

*Ins. Agency*, 424 A.2d 43, 46 (D.C. 1980) (same).  Like a negligence claim, a fraudulent concealment claims fails if a defendant owed no duty to disclose material facts to a plaintiff. *Lightning Lube v. Witco Corp.*, 4 F.3d 1153,1185 (3d Cir. 1993) (applying New Jersey law); *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 75 (D.D.C. 2012) (applying DC law).  "[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'"  *Id.* (citations omitted).

As discussed in Part III.A above, there is no relationship between PCPC and Plaintiffs. Due to the lack of relationship and the lack of a material representation requiring correction, Plaintiffs cannot establish the requisite "duty" element of a fraudulent concealment claim.

Plaintiffs fail to identify a relevant material misrepresentation or concealment.[4]  Instead, Plaintiffs restate the elements of fraud and summarily state that PCPC "misrepresented and/or concealed material facts."  Compl. ¶¶ 34-39; 162-164; 199-200.  This is insufficient.  For example, Plaintiffs allege that PCPC "knowingly released false information about the safety of talc based body powder" and "caused to be released, published and disseminated, medical and scientific data, literature and reports containing information and statements regarding the risk of ovarian cancer."  *See id.* ¶¶ 35; 164(c) and (e).  But, Plaintiffs fail to identify the date, time and place of an alleged representation, much less that it was material, PCPC knew it was false, PCPC intended Plaintiffs to rely on the representation, and Plaintiffs relied on it to their detriment.

Expressions of opinions are not representations with the knowledge of falsity and the intent to deceive.  They do not satisfy the elements of fraudulent misrepresentation.  *See, e.g.*, *Shtutman v. Carr*, No. A-1064-15T1, 2017 WL 4402045, at *4 (N.J. Super. Ct. App. Div. Oct. 4,

---

[4]The few specific allegations that Plaintiffs make relate to protected lobbying activity. As discussed above in Part I, there is no liability for this alleged activity.

2017).  Moreover, even if opinions could be the basis for fraud, as a matter of law, Plaintiffs cannot produce clear and convincing evidence of a PCPC opinion that is a material misrepresentation made with knowledge of its falsity.

The statement that PCPC posted in 2007 on its website regarding talc and ovarian cancer is illustrative.  SOF ¶16.  That statement, which briefly described the cosmetic ingredient talc and addressed questions raised regarding the alleged association between talc and ovarian cancer, was consistent with contemporaneous statements made by Plaintiffs' experts and the medical community.  In 2008, one of Plaintiffs' experts published an article concluding: "The current body of experimental and epidemiological evidence is insufficient to establish a causal association between perineal use of talc and ovarian cancer risk."  SOF ¶14.  Another Plaintiffs' expert co-authored a study the same year describing the association between perineal talc use and ovarian cancer as "controversial due to the lack of a clear dose-response with increasing frequency or duration of talc use, the possibility of confounding or other biases, and the uncertain biological mechanism."  SOF ¶15.  At that time, PCPC's website noted epidemiology studies reporting small increases in ovarian cancer among women who use talc in the perineal area, identified the International Agency for Research on Cancer 2006 analysis, and provided a link to its work.  SOF ¶16.  In other words, PCPC acknowledged the issue but, like Plaintiffs' experts, indicated that it was controversial and there was insufficient evidence.

In 2014, the FDA denied two "Citizen's Petitions" seeking warning labels on cosmetic talc products, stating that, "[a]fter careful review and consideration of the information submitted, . . . FDA did not find that the data submitted presented conclusive evidence of a causal association between talc use in the perineal area and ovarian cancer."  SOF ¶9.  To this day, most medical and scientific websites do not list perineal use of talc as a risk factor for

19

ovarian cancer. SOF ¶17. Importantly, the National Cancer Institute currently states, "The weight of evidence does not support an association between perineal talc exposure and an increased risk of ovarian cancer." SOF ¶18. **PCPC's agreement with the majority of scientists cannot be a material misrepresentation**.

### C.   Plaintiffs' Conspiracy Claim Likewise Fails.

"[C]ivil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009). "A claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied." *Id.* For at least two reasons, Plaintiffs' negligence claim cannot serve as the predicate to a conspiracy claim. First, negligence is not intentional. *See Alatishe v. Irwin*, No. CIV.A. 86-479, 1987 WL 17666, at *3 (D.D.C. Sept. 18, 1987). Conspiracy requires an unlawful act or a lawful act committed for an unlawful purpose. *Exec. Sandwich Shoppe v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000). Therefore, a negligence claim cannot be the basis for conspiracy. *See Chen v. District of Columbia*, 256 F.R.D. 267, 273 n. 5 (D.D.C. 2009) (explaining that "[c]onspiracy is obviously an intentional tort").

Second, even if there could be a negligent conspiracy cause of action, as discussed above, PCPC undertook no duty to Plaintiffs. Because Plaintiffs' negligence claim fails, their conspiracy claim also fails. *See, e.g.*, *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) (dismissing plaintiff's conspiracy claim because negligence claim was dismissed—without deciding whether negligent conspiracy claim could even exist).

Likewise, because Plaintiffs' fraud and fraudulent concealment claims fail, as a matter of law, the conspiracy claim also fails. *See also Nova Bank v. Samuel D. Schenker, L.L.C.*, No. A-0553-13T4, 2015 WL 751529, at *3 (N.J. Super. Ct. App. Div. Feb. 24, 2015) ("Because civil

20

conspiracy requires 'an underlying wrong,' we have stated that civil conspiracy to commit fraud is untenable if the underlying claim of common law fraud failed.").

And, as discussed above, PCPC's coordinated lobbying activities cannot serve as a basis for a conspiracy claim.  *See, e.g.*, *Pfizer Inc. v. Giles (In re Asbestos Sch. Litig.)*, 46 F.3d 1284 (3d Cir. 1994); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155 (3d Cir. 1988) (extending the principles of the *Noerr–Pennington* doctrine in non-anti-trust cases and holding that the respective defendants were immune from liability for civil conspiracy).

## CONCLUSION

Based on the foregoing, PCPC respectfully requests that its motion be granted.

DATED: May 6, 2019

Respectfully submitted,

PERSONAL CARE PRODUCTS COUNCIL

By:   */s/ Thomas T. Locke*
   Thomas T. Locke
   Rebecca Woods
   Renee Appel
   SEYFARTH SHAW LLP
   975 F Street, N.W.
   Washington, DC 20004
   Telephone:  (202) 463-2400
   Facsimile:  (202) 828-5393
   tlocke@seyfarth.com
   rwoods@seyfarth.com

   Richard W. Wedinger
   Jennifer Cheong
   BARRY, McTIERNAN & WEDINGER P.C.
   10 Franklin Avenue
   Edison, NJ 08837
   Telephone: (732) 738-5600
   Facsimile: (732) 738-7518
   ataylor@bmctwlaw.com
   jcheong@bmctwlaw.com

   *Attorneys for Defendant Personal Care Products Council*

56709166v.1