Ex. 1



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

DENISE CECELIA SIMPSON
  Vs.                                           C.A. No.      2016 CA 001931 B
JOHNSON AND JOHNSON et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge MARISA J DEMEO
Date: March 18, 2016
Initial Conference: 9:30 am, Friday, June 17, 2016
Location: Courtroom A-50
          515 5th Street N.W.

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Denise Cecelia Simpson
325 P Street, SW, Apt. 508, Washington, DC 20024

_____
                                    Plaintiff

vs.                                                           Case Number        2016 CA 001931 B

Personal Care Products Council f/k/a Cosmetic, Toiletry and Fragrance Association
1620 L Street, N.W., Suite 1200, Washington, D.C., 20036

_____
                                    Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Michelle A. Parfitt, Esq.
_____
Name of Plaintiff's Attorney                                        *Clerk of the Court*

4900 Seminary Road, Suite 650
_____            By _____
Address                                                                          Deputy Clerk
Alexandria, VA 22311
                                                            03/18/2016
(703) 931-5500
_____            Date _____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                          CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
Demandante

contra

_____                    Número de Caso: _____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

Por: _____
                          Subsecretario

_____
Dirección

Fecha _____

_____
Teléfono
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요          የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-682-2700) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W,. para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

Filed
D.C. Superior Court
03/18/2016 15:35PM
Clerk of the Court

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
**Civil Division**

| | |
|---|---|
| DENISE CECELIA SIMPSON<br>325 P Street, SW, Apt. 508<br>Washington, DC 20024<br><br>     *Plaintiff*<br><br>v.<br><br>JOHNSON & JOHNSON<br>One Johnson & Johnson Plaza<br>New Brunswick, NJ 08933<br><br>Serve: Registered Agent<br>One Johnson & Johnson Plaza<br>New Brunswick, NJ 08933<br><br>and<br><br>JOHNSON & JOHNSON CONSUMER<br>COMPANIES, INC.<br>One Johnson & Johnson Plaza<br>New Brunswick, NJ 08933<br><br>Serve: Registered Agent<br>One Johnson & Johnson Plaza<br>New Brunswick, NJ 08933<br><br>and<br><br>IMERYS TALC AMERICA, INC.,<br>F/K/A LUZENAC AMERICA, INC.<br>1732 North First Street, Suite 450<br>San Jose, CA 95112<br><br>Serve: Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>and<br><br>PERSONAL CARE PRODUCTS<br>COUNCIL (PCPC), F/K/A COSMETIC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. ___2016 CA 001931 B___ |

<table>
<tr><td>TOILETRY, AND FRAGRANCE<br>ASSOCIATION (CTFA)<br>1620 L Street, NW, Suite 1200<br>Washington, DC 20036<br><br>Serve: Thomas Myers, Registered Agent<br>1620 L Street, NW, Suite 1200<br>Washington, DC 20036<br><br>and<br><br>JOHN DOES/JANE DOES 1-30<br>[Real Names and Addresses Unknown]<br><br>and<br><br>UNKNOWN BUSINESSES AND/OR<br>CORPORATIONS 1-30<br>[Real Names and Addresses Unknown]<br><br> <i>Defendants</i> </td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td></tr>
</table>

## COMPLAINT

Plaintiff Denise Simpson, by and through counsel, for her Complaint and Jury Demand against Defendants, alleges the following:

## PARTIES, VENUE, AND JURISDICTION

1.      This action arises out of Denise Simpson's diagnosis of ovarian cancer, which was directly and proximately caused by her regular and prolonged use of talcum powder-containing products known as Johnson & Johnson Baby Powder and Shower to Shower (hereinafter together or individually, "the PRODUCTS") in the perineal area. Plaintiff's damages are a direct and proximate result of negligent, willful, and wrongful conduct of Defendants and/or their corporate predecessors (hereinafter together, "Defendants") in connection with the design, development, manufacture, formulation, testing, packaging, promotion, marketing, distribution, labeling, and/or sale of the PRODUCTS.

2.      This action is brought under the District of Columbia Consumer Protection Act, D.C. Code § 28-3901, *et seq.*, the common law of the District of Columbia, and other applicable law to recover damages and other relief, including the costs of suit and reasonable attorneys' and expert fees, for the injuries Plaintiff sustained as a result of Defendants' negligent and wrongful conduct in connection with the design, development, formulation, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or sale of the PRODUCTS.

3.      Plaintiff is a citizen of the District of Columbia and resides at 325 P St., SW, Apt. 508, Washington, D.C.  20024.

4.      Plaintiff used the PRODUCTS on a continuous basis from her birth in December 1953 until or about approximately September 2014. As a direct and proximate result of using the PRODUCTS, Plaintiff was first diagnosed with ovarian cancer in the District of Columbia on January 2, 2008 with the cancer reoccurring separately in March 2013 and June 2014.

5.      Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.  At all relevant times, upon information and belief, Johnson & Johnson was engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling, and/or distributing the PRODUCTS.  At all relevant times, upon information and belief, Johnson & Johnson regularly transacted, solicited, and conducted business in the District of Columbia, including marketing, promoting, selling, and/or distributing the PRODUCTS.

6.      Johnson & Johnson may be served with process by serving its registered agent at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

7.      Defendant Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.  At all relevant times,

3

upon information and belief, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all relevant times, upon information and belief, Johnson & Johnson Consumer Companies, Inc. regularly transacted, solicited, and conducted business in the District of Columbia, including marketing, promoting, selling, and/or distributing the PRODUCTS.

8.     Johnson & Johnson Consumer Companies, Inc. may be served with process by serving its registered agent located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

9.     Upon information and belief, Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. have, at all relevant times, engaged in the business of designing, developing, licensing, manufacturing, formulating, distributing, selling, marketing, and/or introducing into interstate commerce, and into the District of Columbia, either directly or indirectly through third parties or related entities, the PRODUCTS.

10.     Defendant Johnson & Johnson Consumer Companies, Inc. is and has been at all relevant times a wholly-owned subsidiary of Defendant Johnson & Johnson, under the complete dominion of and control of Defendant Johnson & Johnson. Hereinafter, unless otherwise delineated, these two entities together shall be referred to as the "Johnson & Johnson Defendants."

11.     Defendant Imerys Talc America, Inc., f/k/a Luzenac America, Inc. (hereinafter, "Imerys Talc"), is a Delaware corporation with its principal place of business in the State of California, located at 1732 North First Street, Suite 450, San Jose, CA 95112. At all relevant times, Imerys Talc has maintained a registered agent in the State of Delaware. Imerys Talc may

be served with process of this Court via service on its registered agent, Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

12.     At all relevant times, upon information and belief, Imerys Talc has been in the business of mining and distributing talc for use in talcum powder-based products, including the PRODUCTS. Imerys Talc is the successor or continuation of Luzenac America, Inc., and Imerys Talc is legally responsible for Luzenac America, Inc.'s conduct.

13.     Defendant Personal Care Products Council ("PCPC"), f/k/a Cosmetic, Toiletry, and Fragrance Association ("CTFA"), is a corporation organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia. At all relevant times, upon information and belief, PCPC was a national trade association representing the personal care and cosmetics industry. At all relevant times, upon information and belief, Imerys Talc and Johnson & Johnson have been active members of PCPC. PCPC may be served with process of this Court via service on its registered agent, Thomas Myers, at 1620 L Street, N.W., Suite 1200, Washington, District of Columbia 20036.   PCPC is the successor or continuation of CTFA, and PCPC is legally responsible for CTFA's conduct.

14.     Defendants John Does/Jane Does 1-30 are those persons, agents, employees, and/or representatives of Defendants whose conduct as described herein caused or contributed to the damages of the Plaintiff, all of whose names and legal identities are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained, individually and jointly.

15.     Defendants Unknown Businesses and/or Corporations A-Z are unknown entities whose conduct as described herein caused or contributed to the damages of the Plaintiff, all of whose names and legal identities are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained, individually and jointly.

16.     The Court has personal jurisdiction over Defendant PCPC pursuant to D.C. Code § 13-422, whereby a District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining its principal place of business in the District of Columbia.

17.     The Court has personal jurisdiction over all Defendants pursuant to D.C. Code § 13-423, whereby jurisdiction is conferred over persons transacting any business in the District of Columbia.

18.     Venue is proper in this Court as, at all relevant times, Defendants conducted business in the District of Columbia and tested, manufactured, labeled, licensed, marketed, distributed, promoted and/or sold the PRODUCTS to Denise Simpson in the District of Columbia. Defendant PCPC is also domiciled in, organized under the laws of, and/or maintains its principal place of business in the District of Columbia.

## GENERAL ALLEGATIONS

19.     Talc is a magnesium trisilicate that is mined from the earth.  It is an inorganic mineral.

20.     The PRODUCTS are composed almost entirely of talc.

21.     At all relevant times, a feasible alternative to the PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects.  Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness as talcum powders.

22.     At all relevant times, Defendant Imerys Talc[1] mined the talc contained in the PRODUCTS.

---

[1] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

6

23.     At all relevant times, Imerys Talc continually advertised and marketed talc as safe for human use.

24.     At all relevant times, Imerys Talc supplied its customers, including the Johnson & Johnson Defendants, with Material Safety Data Sheets ("MSDS") for talc, which conveyed health and warning information about talc.

25.     At all relevant times, the Johnson & Johnson Defendants advertised and marketed their "Johnson's Baby Powder" product as a symbol of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" to keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Johnson & Johnson Defendants induced women through advertisements to dust themselves with this product to mask odors. The Johnson's Baby Powder bottle specifically targets women, stating: "For you, use every day to help feel soft, fresh, and comfortable."[2]

26.     At all relevant times, the Johnson & Johnson Defendants advertised and marketed their "Shower to Shower" product as safe for use by women as evidenced in its slogan, "A sprinkle a day keeps odor away," and through advertisements such as: "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body." The website includes the suggested use of the product "Shower to Shower" in the genital area with the following: "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."[3]

---

[2] Retailer Wal-Mart lists the labels for Johnson's Baby Powder, http://www.walmart.com/ip/Johnson-s-Baby-Powder-22-oz/10294007.

[3] Shower to Shower website, http://showertoshower.com/the-power-of-powder. Although Shower to Shower is no longer owned by Johnson & Johnson, Plaintiff, upon information and belief, alleges that the marketing (including

27.     Plaintiff used the PRODUCTS to dust her perineum for feminine hygiene purposes from approximately 1953 to 2014. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

28.     In December 1953, Plaintiff was living in the District of Columbia when she first used the PRODUCTS, and she used the PRODUCTS continuously thereafter until 2014.

29.     In January 2008, at age 54, Plaintiff was first diagnosed with ovarian cancer. Her ovarian cancer has reoccurred twice since then, and has necessitated chemotherapy treatments and multiple surgeries.

30.     Upon information and belief, in or about 1971, a study was conducted by Dr. WJ Henderson and others in Cardiff, Wales, which found an association between talc and ovarian cancer.

31.     Upon information and belief, in or about 1982, an epidemiologic study was performed on talc powder use in the female genital area. That study was conducted by Dr. Daniel Cramer and others. This study found a ninety-two percent increased risk of ovarian cancer with women who reported genital talc use.

32.     Upon information and belief, since approximately 1982, numerous additional epidemiologic studies have been conducted, which provide data regarding the association of talc and ovarian cancer, reporting an elevated risk of ovarian cancer associated with genital talc use in women.

33.     Upon information and belief, in or about 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestos form talc and found clear

_____

the phrased used to describe the product to consumers) of Shower to Shower was substantially similar as when Johnson & Johnson owned the brand.

8

evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.[4]

34.     Upon information and belief, in response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA), now known as the PCPC, formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc., and Luzenac—now known as Imerys Talc—were members of the CTFA and involved in TIPTF. The stated purpose of TIPTF was to pool financial resources in order to collectively defend talc use at all costs and to prevent regulation of this industry. TIPTF hired scientists to perform biased research regarding the safety of talc. TIPTF members, including Johnson & Johnson and Luzenac, then edited these scientific reports before they were submitted to governmental agencies. In addition, members of TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies. These activities were conducted by these companies and organizations, including Johnson & Johnson and Luzenac, over the past four decades in an effort to prevent regulation of talc and to mislead the consuming public about the true hazards of talc.

35.     Upon information and belief, on or about November 19, 1994, the Cancer Prevention Coalition sent a letter to Ralph Larsen, then-CEO of Johnson & Johnson, urging him to substitute cornstarch for talcum powder products and to label its products with a warning on cancer risks.

---

[4] Inhalation Toxicology Research Institute Annual Report, 1993–1994, https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=5&ved=0CEEQFjAE&url=http%3A%2F%2Fwww.dtic.mil%2Fget-tr-doc%2Fpdf%3FAD%3DADA292037&ei=XX4IVMfxPlbIsASfyIKwCA&usg=AFQjCNGnPtuTJc4YRHp3v0VFPJIOV2yH2w&sig2=WTzoSlZK9Gojkl3adkabtSsw&bvm=bv.74649120,d.cWc&cad=rja.

9

36.     Upon information and belief, in or about 1996, the FDA requested that the condom industry stop dusting condoms with talc due to the health concerns that studies linked talc to ovarian cancer.  Upon this request, all U.S. manufacturers discontinued the use of talc in its condom manufacturing process.[5]

37.     Upon information and belief, in or about 1990, the U.S. Food and Drug Administration (FDA) asked manufacturers to voluntarily stop putting talc on surgical gloves because mounting scientific evidence showed that it caused adhesions in surgical patients.[6]

38.     Upon information and belief, in or about February 2006, the International Agency for Research on Cancer (IARC), the specialized cancer agency of the World Health Organization, classified perineal use of talc-based body powder as a "Group 2B" human carcinogen.  IARC, which is well-regarded as an international authority on cancer research, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women who used talc in perineal areas.[7]

39.     Upon information and belief, in or about 2006, the Canadian government, under The Hazardous Products Act and associated Controlled Products Regulations, classified talc as a "D2A," "very toxic," "cancer-causing" substance under its Workplace Hazardous Materials Information System (WHMIS).  Asbestos is also classified as "D2A."

40.     Upon information and belief, in or about 2006, Imerys Talc began placing a warning on the MSDS it provided to the Johnson & Johnson Defendants regarding the talc it sold

---

[5] "A Women's Campaign Against Talc on Condoms," *Philly*.com, http://articles.philly.com/1996-01-08/living/25657370_1_talc-condoms-ovarian-cancer.

[6] *Id.*

[7] *See* IARC Monograph Vol. 93, *Talc Not Containing Asbestiform Fibres, available at* http://monographs.iarc.fr/ENG/Monographs/vol93/mono93-8.pdf.

to them for use in the PRODUCTS.  The MSDS not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's D2A classification of talc.

41.   In 2008, the Cancer Prevention Coalition submitted a "Petition Seeking a Cancer Warning on Cosmetic Talc Products" to the FDA.  The petition requested that the FDA immediately require cosmetic talcum powder products to bear labels with a prominent warning that frequent talc application in the female genital area is responsible for major risks of ovarian cancer.[8]

42.   In 2013, Cancer Prevention Research published a study that showed that women who used talcum powder in their groin area had a 20 to 30 percent greater risk of developing ovarian cancer than women who did not use talc products in that area.[9]

43.   Presently, the National Cancer Institute[10] and the American Cancer Society[11] list genital talc use as a "risk factor" for ovarian cancer.

44.   The Gilda Radner Familial Ovarian Cancer Registry, Roswell Park Center Institute, and the Department of Gynecologic Oncology University of Vermont publish a pamphlet entitled, "Myths & Facts about ovarian cancer: What you need to know." In this

---

[8] Cancer Prevention Coalition's "Petition Seeking a Cancer Warning on Cosmetic Talc Products" submitted to the FDA on May 13, 2008, http://www.organicconsumers.org/articles/article_12517.cfm.

[9] "Genital powder use and risk of ovarian cancer: a pooled analysis of 8,525 cases and 9,859 controls," *Cancer Prevention Research*, June 2013, http://cancerpreventionresearch.aacrjournals.org/content/early/2013/06/12/1940-6207.CAPR-13-0037.short.

[10] National Cancer Institute, Ovarian Cancer Prevention, http://www.cancer.gov/cancertopics/pdq/prevention/ovarian/Patient/page3.

[11] American Cancer Society, Risk Factors for Ovarian Cancer, http://www.cancer.org/cancer/ovariancancer/detailedguide/ovarian-cancer-risk-factors.

11

pamphlet, under "known" risk factors for ovarian cancer, it lists: "Use of Talc (Baby Powder) in the Genital Area."[12]

## FEDERAL STANDARDS AND REQUIREMENTS

45.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 44 of this Complaint as if fully set forth herein

46.    At all relevant times, Defendants had the obligation to comply with federal standards and regulations in the manufacture, design, marketing, branding, labeling, distribution, and sale of the PRODUCTS.

47.    Defendants, each individually, *in solido*, and/or jointly, violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*

48.    Defendants have or may have failed to comply with federal standards and requirements governing the manufacture, design, marketing, branding, and sale of the PRODUCTS including, but not limited to, the following violations of sections and subsections of the United States Code and the Code of Federal Regulations:

a.    The PRODUCTS are adulterated pursuant in violation of 21 U.S.C. § 361 because, among other things, they contain a poisonous or deleterious substance which may render them injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual.

b.    The PRODUCTS are misbranded in violation of 21 U.S.C. § 362 because, among other things, their labeling is false or misleading.

c.    The PRODUCTS are misbranded in violation 21 U.S.C. § 362 because words, statements, or other information required by or under authority of 21

---

[12] Myths and Facts About Ovarian Cancer, http://imaging.ubmmedica.com/cancernetwork/forpatients/pdfs/7_M&F%20Ovarian%20Cancer.pdf.

U.S.C. § 362 are not prominently placed thereon with such conspicuousness and in such terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

d.      The PRODUCTS are misbranded in violation of 21 C.F.R. § 701.1 because they contain false or misleading representations that they are safe for daily application to all parts of the female body.

e.      The PRODUCTS do not bear a warning statement, in violation of 21 C.F.R. § 740.1, to prevent a health hazard that may be associated with the PRODUCTS, namely that the PRODUCTS may cause ovarian cancer or a heightened risk of ovarian cancer when applied to the perineal area.

f.      The PRODUCTS do not prominently and conspicuously bear a warning statement, in violation of 21 C.F.R. § 740.2, as to the risk of ovarian cancer caused by the use of the PRODUCTS when applied to the perineal area, in such terms and design that it is likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

g.      The PRODUCTS, in violation of 21 C.F.R. § 740.10, do not conspicuously state on their principal display panel that the safety of the PRODUCTS have not been determined and/or that the safety of the PRODUCTS' principal ingredients have not been determined.

<u>Count I – Violation of the D.C. Consumer Protection Procedures Act,</u>

<u>D.C. Code § 28-3901 *et seq.*</u>

<u>(Against the Johnson & Johnson Defendants)</u>

49.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     Plaintiff is a "consumer" as defined in D.C. Code § 28-3901(2), in that Plaintiff purchased or received, other than for purposes of resale, goods from the Johnson & Johnson Defendants.

51.     The Johnson & Johnson Defendants are "merchants" as defined in D.C. Code § 28-3901(3), in that they sold, either directly or indirectly, consumer goods to Plaintiff in the ordinary course of business.

52.     The Johnson & Johnson Defendants' actions in marketing, advertising, and otherwise making public representations about the PRODUCTS constitute "trade practices" as defined by D.C. Code § 28-3901(6), as they were actions that created, altered, repaired, furnished, made available, provided information about, or, directly or indirectly, solicited or offered for or effectuated a sale, lease, or transfer of consumer goods.

53.     At all relevant times, the Johnson & Johnson Defendants knew or should have known of the unreasonably dangerous and carcinogenic nature of talc, especially when used in a woman's perineal region.

54.     At all relevant times, the Johnson & Johnson Defendants, through their labeling and marketing of the PRODUCTS, intentionally misrepresented material facts in order to mislead consumers that the PRODUCTS were safe for use in the female perineal area and induce consumers to purchase its PRODUCTS. The Johnson & Johnson Defendants, through their

14

labeling, advertisements, and public representations associated with the PRODUCTS, since the PRODUCTS' introduction into the marketplace, have stated that the PRODUCTS were safe for use all over the body, including the female perineal area. The Johnson & Johnson Defendants' misrepresentations constitute unlawful trade practices under D.C. Code §§ 28-3904(a), (d), and (e).

55.     The labeling and advertisements for the PRODUCTS include, but are not limited to, the following statements: "For you, use every day to help feel soft, fresh, and comfortable;"[13] "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."[14]

56.     In particular, the Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and suggested that women use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

57.     At all relevant times, the Johnson & Johnson Defendants misled consumers by failing to state material facts about the PRODUCTS. In particular, the Johnson & Johnson Defendants failed to disclose to the public that the PRODUCTS were unsafe and posed serious health hazards, particularly when used in the perineal areas of women. The first study that suggested an association between talc and ovarian cancer was conducted in 1971, and studies confirming this association have been and continue to be conducted. The Johnson & Johnson Defendants were aware of the hazardous risks posed by the PRODUCTS and yet failed to inform

---

[13] Retailer Wal-Mart lists the labels for Johnson's Baby Powder, http://www.walmart.com/ip/Johnson-s-Baby-Powder-22-oz/10294007.

[14] Shower to Shower website, http://showertoshower.com/the-power-of-powder.

the public of these risks through their advertisements, labeling, or other means available to them. The Johnson & Johnson Defendants' failure to state material facts about their PRODUCTS constitutes a violation of D.C. Code §28-3904(f) in that the failure to state material facts misled consumers, including the Plaintiff.

58.    At all relevant times, Plaintiff was deceived by Defendants' intentional misrepresentations and omissions, including by the orchestrated claims made on or in television commercials, advertising materials, Web sites, and on product labels and packaging regarding the usage and safety of the PRODUCTS.

59.    At all relevant times, Plaintiff acted in reasonable reliance upon the Johnson & Johnson Defendants' unlawful trade practices, and had the Johnson & Johnson Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or received the PRODUCTS.

60.    As a direct and proximate result of the unlawful trade practices of the Johnson & Johnson Defendants, in violation of D.C. Code §28-3901, *et seq.*, Plaintiff has suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count II – Negligence

### (Against Imerys Talc)

61.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.    At all relevant times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew that Johnson & Johnson was then packaging and selling to consumers

as the PRODUCTS and that consumers of the PRODUCTS were using it to powder their perineal regions.

63.     At all relevant times, Imerys Talc had a duty to act with reasonable care in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring, and sale of the PRODUCTS.

64.     At all relevant times, Imerys Talc knew or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when used in a woman's perineal regions, and it knew or should have known that the Johnson & Johnson Defendants did not warn its consumers of that danger.

65.     At all relevant times, Imerys Talc was negligent in supplying talc to the Johnson & Johnson Defendants, when it knew or should have known that the talc would be used in the PRODUCTS, without adequately taking steps to ensure that consumers of the PRODUCTS, including Plaintiff, received material information that Imerys Talc possessed on carcinogenic properties of talc, including its risk of causing ovarian cancer.

66.     At all relevant times, Imerys Talc breached their duty of reasonable care to Plaintiff in that they negligently designed, developed, marketed, labeled, manufactured, formulated, tested, monitored, and/or sold the PRODUCTS

67.     As a direct and proximate result of Imerys Talc's negligence, Plaintiff has suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count III – Negligence

### (Against the Johnson & Johnson Defendants)

68.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     At all relevant times, the Johnson & Johnson Defendants manufactured, designed, formulated, marketed, tested, promoted, supplied, sold and/or distributed the PRODUCTS in the regular course of business.

70.     At all relevant times, the Johnson & Johnson Defendants had a duty to act with reasonable care in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring, distribution, and sale of the PRODUCTS.

71.     At all relevant times, the Johnson & Johnson Defendants had a duty to act with reasonable care and to warn Plaintiff of the risk, dangers, and adverse side effects of the PRODUCTS.

72.     At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when used in a reasonably foreseeable manner.

73.     The Johnson & Johnson Defendants breached their duty to Plaintiff and were otherwise negligent in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring, distribution, and/or sale of the PRODUCTS utilized by Plaintiff, which were inherently dangerous and defective, and unfit and unsafe for their intended and reasonably foreseeable uses.

74.     The Johnson & Johnson Defendants were further negligent in failing to accompany the PRODUCTS with proper warnings or adequate labeling regarding the dangerous

and potentially fatal health risks associated with the use of the PRODUCTS, particularly when used in the perineal area of women, which was their intended or reasonable foreseeable use.

75. As a direct and proximate result of the Johnson & Johnson Defendants' negligence, Plaintiff has suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

<u>Count IV -- Negligence</u>

<u>(Against PCPC)</u>

76. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. At all relevant times, PCPC was a national trade association representing the personal care and cosmetics industry of which Johnson & Johnson and Imerys Talc were active members.

78. At all relevant times, PCPC had actual knowledge of the significant risk of ovarian cancer caused by application of the PRODUCTS to the female perineal area.

79. At all relevant times, PCPC voluntarily undertook a duty of care to Plaintiff by promulgating standards, norms, and/or bylaws that govern, control, and/or inform the manufacturing, design, labeling, marketing, distribution, and/or branding practices of its member companies, including but not limited to the Johnson & Johnson Defendants and Imerys Talc.

80. At all relevant times, PCPC had the means and authority to control the safety standards of the Johnson & Johnson Defendants and Imerys Talc in manufacturing, design, labeling, marketing, distribution, and/or branding the PRODUCTS.

19

81.     PCPC breached its duty of care to Plaintiff by negligently failing to ensure that the Johnson & Johnson Defendants and Imerys Talc complied and adhered to the PCPC standards, norms, and/or bylaws concerning the safe manufacture, design, labeling, marketing, distribution, and/or branding of the PRODUCTS, and subsequently allowing the PRODUCTS to be introduced into the stream of interstate commerce despite their significant health and safety risks of which PCPC had full knowledge.

82.     As a direct and proximate result of PCPC's negligence, the Johnson & Johnson Defendants and Imerys Talc manufactured, designed, labeled, marketed, distributed, and branded its PRODUCTS in a way that foreseeably caused a significant risk of ovarian cancer when the PRODUCTS were applied to the female perineal area.

83.     As a further direct and proximate result of PCPC's negligence, Plaintiff suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count V – Strict Liability – Defective Manufacture and Design

### (Against Imerys Talc)

84.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.     Imerys Talc is liable under the theory of strict liability as set forth in the Restatement (Second) of Torts § 402A.

86.     At all relevant times, Defendant Imerys Talc was engaged in the business of mining and distributing talcum to Johnson & Johnson Defendants for use in the PRODUCTS, and they were knowingly an integral part of the overall manufacture, design, and production of the PRODUCTS and their introduction into the stream of interstate commerce.

87.     At all relevant times, the PRODUCTS were expected to and did reach Plaintiff without a substantial change in their condition.

88.     At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by Imerys Talc in that, when Imerys Talc supplied its talc product to Johnson & Johnson with full knowledge that Johnson & Johnson would use its talc in formulating the PRODUCTS and that the talc would be the primary ingredient in the PRODUCTS, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

89.     At all relevant times, the PRODUCTS were defectively manufactured and designed by Imerys Talc in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

90.     At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

91.     As a direct and proximate result of the defective design and manufacture of the PRODUCTS, Plaintiff suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

### Count VI – Strict Liability – Defective Manufacture and Design
### (Against the Johnson & Johnson Defendants)

92.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.     The Johnson & Johnson Defendants are liable under the theory of strict liability as set forth in the Restatement (Second) of Torts § 402A.

94.     At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the PRODUCTS into the stream of interstate commerce, which they sold and distributed throughout the United States.

95.     At all relevant times, the PRODUCTS were expected to and did reach Plaintiff without a substantial change in condition.

96.     At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by the Johnson & Johnson Defendants in that, when the PRODUCTS left the hands of the Johnson & Johnson Defendants, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

97.     At all relevant times, the PRODUCTS were defectively manufactured and designed by the Johnson & Johnson Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

98.     At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

99.     At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Johnson & Johnson Defendants to manufacture a product with the same therapeutic purpose as the PRODUCTS.  Despite knowledge of this

reasonable and safer alternative design, the Johnson & Johnson Defendants failed to alter the PRODUCTS' design and formulation.  The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

100.    As a direct and proximate result of the defective design and manufacture of the PRODUCTS, Plaintiff has suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

### Count VII – Strict Liability – Failure to Warn

### (Against Imerys Talc)

101.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 100 of this Complaint as if fully set forth herein.

102.    Imerys Talc is liable under a theory of strict products liability as set forth in § 402A of the Restatement of Torts (Second).

103.    At all relevant times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants with full knowledge that the Johnson & Johnson Defendants were then packaging the talc and selling to consumers as the PRODUCTS and that consumers of the PRODUCTS were using it to powder their perineal regions.

104.    At all relevant times, by mining talc and supplying that talc to the Johnson & Johnson Defendants for use in the PRODUCTS, Imerys Talc was knowingly an integral part of the overall manufacture, design, and production of the PRODUCTS and their introduction into the stream of interstate commerce.

105.    At all relevant times, Imerys Talc knew or should have known of the

unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when applied to a woman's perineal regions, and it knew or should have known that Johnson & Johnson was not warning its consumers of this danger.

106.   At all relevant times, Imerys Talc knew or should have known that the use of the PRODUCTS significantly increase the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

107.   At all relevant times, the PRODUCTS were defective and unreasonably dangerous when used in a reasonably foreseeable manner because, despite Imerys Talc's knowledge that the PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer, Imerys Talc failed to provide adequate warning and/or instruction to consumers, including Plaintiff, regarding the increased risk of ovarian cancer associated with the use of the PRODUCTS when applied to the perineal area.

108.   Had Plaintiff received warning or instruction regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

109.   Due to the absence of any warning or instruction by the Defendants as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiff was unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

110.   As a direct and proximate result of Imerys Talc's failure to warn Plaintiff of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact., Plaintiff has suffered and will continue

to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count VIII – Strict Liability – Failure to Warn

### (Against the Johnson & Johnson Defendants)

111.   Plaintiff incorporates by reference and re-alleges paragraphs 1 through 110 of this Complaint as if fully set forth herein.

112.   The Johnson & Johnson Defendants are liable under a theory of strict products liability as set forth in § 402A of the Restatement of Torts (Second).

113.   At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, formulating, designing, marketing, testing, promoting, selling, distributing, and otherwise introducing into the stream of interstate commerce the PRODUCTS.

114.   At all relevant times, the Johnson & Johnson Defendants knew or should have known that the use of the PRODUCTS in the female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

115.   At all relevant times, the PRODUCTS, manufactured and supplied by the Johnson & Johnson Defendants, were defective and unreasonably dangerous because, despite the Johnson & Johnson Defendants' knowledge that its PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer when applied to the female perineal area, a reasonably foreseeable use of the PRODUCTS, the Johnson & Johnson Defendants failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk of ovarian cancer when the PRODUCTS are applied to the female perineal area.

116.   At all relevant times, Plaintiff used the PRODUCTS to powder her perineal area, a use that was reasonably foreseeable and for which the PRODUCTS were supplied.

117.    Had Plaintiff received warning and/or instruction from the Johnson & Johnson Defendants regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

118.    Due to the absence of any warning or instruction by the Johnson & Johnson Defendants as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiff was unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

119.    As the direct and proximate result of the reasonably foreseeable use of the PRODUCTS as manufactured, formulated, marketed, tested, promoted, sold, distributed, and introduced into the stream of commerce by the Johnson & Johnson Defendants, Plaintiff suffered and will continue to suffer damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count IX – Negligent Misrepresentation
### (Against the Johnson & Johnson Defendants)

120.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 119 of this Complaint as if fully set forth herein.

121.    At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling and/or distributing the PRODUCTS.

122.    At all relevant times, the Johnson & Johnson Defendants had a duty to disclose to consumers and the public material facts about the PRODUCTS, including the material fact that application of the PRODUCTS to the female perineal area causes a significantly increased risk of ovarian cancer.

123. Through their actions and omissions in advertising, promoting, labeling, and otherwise, Defendants made public misrepresentations of material facts to, and/or concealed material facts from, consumers like Plaintiff concerning the character, safety, and effectiveness of the PRODUCTS.

124. At all relevant times, those misrepresentations and omissions included, but are not limited to, the following:

    a.    The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

    b.    The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

    c.    The Johnson & Johnson Defendants, through the advertisements described above, among others, misrepresented to consumers, including the Plaintiff, that the PRODUCTS were safe for use all over the body, including the female perineal area.

    d.    Despite actual knowledge of the health risks of the PRODUCTS, the Johnson & Johnson Defendants failed to disclose to the consumers and the

Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e.   Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of ovarian cancer, the Johnson & Johnson Defendants failed to disclose to consumers and the Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

125.   At all relevant times, the Johnson & Johnson Defendants failed to exercise reasonable care in ascertaining or sharing information regarding the safe use of PRODUCTS, failed to disclose facts indicating that the PRODUCTS were inherently dangerous and carcinogenic in nature, and otherwise failed to exercise reasonable care in communicating the information concerning the PRODUCTS to Plaintiff and/or concealed relevant facts that were known to them.

126.   At all relevant times, Plaintiff was not aware of the falsity of the foregoing misrepresentations, nor was she aware that material facts concerning talc and the PRODUCTS had been concealed or omitted.  In reasonable reliance upon the Johnson & Johnson Defendants' misrepresentations and/or omissions, Plaintiff was induced to and did purchase the PRODUCTS and did use the PRODUCTS on her perineal area.  If the Johnson & Johnson Defendants had disclosed true and accurate material facts concerning the risks of the use of the PRODUCTS, in particular the risk of developing ovarian cancer from using the PRODUCTS in the female perineal area, Plaintiff would not have purchased and/or received the PRODUCTS and/or used the PRODUCTS in that manner.

127.    Plaintiff's reliance upon the Johnson & Johnson Defendants' misrepresentations and omissions was justified and reasonable because, among other reasons, those misrepresentations and omissions were made by individuals and entities who were in a position to know the material facts concerning the PRODUCTS and the association between the PRODUCTS and the incidence of ovarian cancer, while Plaintiff was not in a position to know these material facts, and because the Johnson & Johnson Defendants failed to warn or otherwise provide notice to the consuming public as to the risks of the PRODUCTS, thereby inducing Plaintiff to use the PRODUCTS in lieu of safer alternatives and in ways that created unreasonably dangerous risks to her health. At all relevant times, the Johnson & Johnson Defendants' corporate officers, directors, and/or managing agents knew of and ratified the acts of the Johnson & Johnson Defendants, as alleged herein.

128.    As a direct and proximate result of the Johnson & Johnson Defendants' negligent misrepresentations and/or omissions concerning the risks and benefits of the PRODUCTS, Plaintiff suffered and continues to suffer from the injuries and damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

### Count X – Fraud

#### (Against the Johnson & Johnson Defendants)

129.    Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 128 of this Complaint as if fully set forth herein.

130.    At all relevant times, the Johnson & Johnson Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers and users, including Plaintiff.

131.    At all relevant times, the Johnson & Johnson Defendants misrepresented and/or concealed material facts concerning the PRODUCTS to consumers, including the Plaintiff, with knowledge of the falsity of their misrepresentations.

132.    At all relevant times, upon information and belief, the misrepresentations and concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a.    The Johnson & Johnson Defendants falsely labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the odor away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

b.    The Johnson & Johnson Defendants falsely advertised the PRODUCT SHOWER to SHOWER to be applied "all over," and in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c.    The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to Plaintiff and the public that the PRODUCTS were safe for use all over the body, including the perineal areas of women.

d.    The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated PRODUCTS, when used in the perineal area, increase the risk of ovarian cancer.

e.     The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the PRODUCTS regarding the potential and actual risks of using the PRODUCTS in the perineal area on women and the nature, scope, severity, and duration of any serious injuries resulting therefrom.[15]

f.     Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

133.   At all relevant times, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use the PRODUCTS in the female perineal area.

134.   At all relevant times, the consuming public, including Plaintiff, would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of the risks associated with the use of the PRODUCTS in the perineal area.

135.   At all relevant times, Plaintiff relied on the Johnson & Johnson Defendants' misrepresentations concerning the safety of the PRODUCTS when purchasing the PRODUCTS and using them in her perineal area, and her reliance was reasonable and justified.

136.   As a direct and proximate result of the Johnson & Johnson Defendant's fraudulent conduct concerning the PRODUCTS, as described herein, Plaintiff suffered and continues to

---

[15] Household Products Database, Label for Johnson's Baby Powder, Original, http://householdproducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040.

suffer from the injuries and damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

### Count XI – Fraud

### (Against PCPC)

137.    Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 136 of this Complaint as if fully set forth herein.

138.    At all relevant times, PCPC intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers and users of the PRODUCTS, including Plaintiff.

139.    At all relevant times, PCPC fraudulently misrepresented and/or concealed material facts to consumers and users of the PRODUCTS, including Plaintiff, with knowledge of the falsity of their misrepresentations.

140.    At all relevant times, upon information and belief, PCPC's conduct giving rise to fraud includes, but is not limited, to the following:

        a.    PCPC formed the TIPTF, with the purpose to pool financial resources in an effort to prevent regulation of talc products, including the PRODUCTS.

        b.    PCPC, through the TIPTF, hired and funded scientists to perform research regarding the safety of talc. The TIPTC then edited the scientific reports in an effort to skew the data so that it demonstrated safety of talc and talc products and suppress data demonstrating the dangers of talc. The TIPTF then released and disseminated this biased and intentionally misleading data to governmental agencies.

c.      PCPC, through the TIPTF, knowingly released false information about the

safety of talc products to the consuming public with the intent to induce

consumers, including the Plaintiff, to purchase talc products.

d.      PCPC extensively lobbied and used political and economic influence on

governmental bodies in order to prevent regulation of talc products, including the

PRODUCTS.  These efforts were based knowingly on false and misleading

information about the safety of talc.

e.      PCPC caused to be released, published, and disseminated medical and

scientific data, literature, and reports containing information and statements

regarding the risks of ovarian cancer which PCPC knew were incorrect,

incomplete, and misleading.

141.    At all relevant times, PCPC actively, knowingly, and intentionally concealed and

misrepresented these material facts to consumers, including the Plaintiff, with the intent to

deceive the public and Plaintiff, and with the intent that consumers would purchase and use the

product in the female perineal area.

142.    The consuming public, including Plaintiff, would not have purchased the

PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of

the risks associated with the use of the PRODUCTS in that manner.

143.    At all relevant times, Plaintiff relied on PCPC's misrepresentations concerning

the safety of the PRODUCTS and fraudulent conduct when purchasing the PRODUCTS and

using them in her perineal area, and her reliance was reasonable and justified.

144.    As a direct and proximate result of PCPC's fraudulent conduct concerning the

PRODUCTS, as described herein, Plaintiff suffered and continues to suffer from the injuries and

damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count XII – Breach of Express Warranties

### (Against the Johnson & Johnson Defendants)

145.    Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 144 of this Complaint as if fully set forth herein.

146.    The Johnson & Johnson Defendants, through their advertising and promotional materials, expressly warranted and affirmed that the PRODUCTS were safe for the uses for which they were intended and for uses which were reasonably foreseeable. The Johnson & Johnson Defendants' express warranties extended beyond delivery of the PRODUCTS and expressly warranted for future performance of the PRODUCTS. These express warranties include, but are not limited to, the following :

      a.    The Johnson & Johnson Defendants advertised and labeled the PRODUCTS as safe for application all over the body, including the following: "For you, use every day to help feel soft, fresh, and comfortable;"[16] "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."[17]

      b.    The Johnson & Johnson Defendants advertised the PRODUCT SHOWER to SHOWER to be applied around or on the perineal area. For example, the

---

[16] Retailer Wal-Mart lists the labels for Johnson's Baby Powder, http://www.walmart.com/ip/Johnson-s-Baby-Powder-22-oz/10294007.

[17] Shower to Shower website, http://showertoshower.com/the-power-of-powder.

Johnson & Johnson Defendants advertised that women should use their SHOWER to SHOWER PRODUCT to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."[18]

c.     The Johnson & Johnson Defendants, through the advertisements as listed above, made express warranties to Plaintiff and the public that the PRODUCTS were safe and effective when applied all over the body, including the female perineal area.

147.    At all relevant times, the Johnson & Johnson Defendants breached said express warranties in that the PRODUCTS were unsafe and ineffective for application all over the body, specifically when used in the female perineal area, because the PRODUCTS when used in this manner for which the Johnson & Johnson Defendants advertised and promoted significantly increased the risk of developing ovarian cancer among consumers.

148.    At all relevant times, the Johnson & Johnson Defendants had knowledge of the hazards and health risks posed by the PRODUCTS when applied to the perineal area.

149.    At all relevant times, the Johnson & Johnson Defendants willfully failed to disclose the defects and health risks of the PRODUCTS to Plaintiff and the consuming public.

150.    At all relevant times, in reliance upon the express warranties made by the Johnson & Johnson Defendants as set forth above, Plaintiff purchased and used the PRODUCTS in her perineal area, believing that the PRODUCTS were safe when used in this manner

151.    As a direct and proximate result the Johnson & Johnson Defendant's express warranties concerning the PRODUCTS, as described herein, Plaintiff suffered and continues to

_____

[18] *Id.*

suffer from the injuries and damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees..

### Count XIII – Civil Conspiracy

### (Against All Defendants)

152.    Plaintiff incorporates by reference and re-alleges paragraphs 1 though 151 of this Complaint as if fully set forth herein.

153.    At all relevant times, the Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and/or conspired to cause Plaintiff's injuries by exposing the Plaintiff to harmful and dangerous PRODUCTS.

154.    Further, at all relevant times, the Defendants knowingly agreed, contrived, confederated, and/or conspired to defraud Plaintiff and consumers of the PRODUCTS regarding the true nature of the PRODUCTS and their potential to cause ovarian cancer when used in a reasonably foreseeable manner.

155.    At all relevant times, the Defendants knowingly agreed, contrived, confederated, and/or conspired to defraud Plaintiff and consumers of the PRODUCTS with the purpose of maintaining the popularity and reputation of the PRODUCTS and therefore maintaining high PRODUCT sales, at the expense of consumer safety.

156.    At all relevant times, pursuant to and in furtherance of said conspiracies, the Defendants performed the following overt and unlawful acts:

     a.    For many decades, upon information and belief, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports, which indicate that, when applied to the perineal area, an ordinary and foreseeable use by women, the PRODUCTS are

36

unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b.      Upon information and belief, despite the medical and scientific data, literature, and test reports possessed by and available to the Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously:

     i.      Withheld, concealed, and suppressed said medical information regarding the increased risk of ovarian cancer from consumers, including Plaintiff;

     ii.     The Defendants, through the TIPTF, instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants, through the TIPTF, used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC;

     iii.    Caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer, which Defendants knew were incorrect, incomplete, and misleading.

c.      Upon information and belief, by these false and fraudulent representations, omissions, and concealments, Defendants intended to induce consumers, including the Plaintiff, to rely upon said false and fraudulent representations, omissions, and concealments, and to continue to expose herself to the dangers inherent in the use of the PRODUCTS.

157.    Plaintiff reasonably relied upon the aforementioned fraudulent representations, omissions, and concealments made by the Defendants regarding the nature of the PRODUCTS.

158.    As a direct and proximate result of Defendants' overt unlawful acts regarding the nature of the PRODUCTS which were made pursuant to and in furtherance of a common scheme, and Plaintiff's reliance thereon, Plaintiff suffered and continues to suffer from the injuries and damages for which she is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees..

<u>Count XIV – Punitive Damages</u>

<u>(Against All Defendants)</u>

159.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 158 of this Complaint as if fully set forth herein.

160.    Plaintiff is entitled to punitive damages because Defendants' wrongful acts and/or omissions were attended by circumstances of fraud, malice, or willful and wanton conduct, and done heedlessly or recklessly, without regard to consequences or the rights and safety of others, particularly Plaintiff. Such conduct includes, but is not limited to the following:

a.    At all relevant times, Defendants knew of the PRODUCTS' defective nature, as set forth herein, but continued to design, formulate, manufacture, market, and sell the PRODUCTS to maximize sales and profits at the expense of the health and safety of the consuming public, including Plaintiff, and in conscious disregard of the foreseeable harm caused by the PRODUCTS;

b.    At all relevant times, despite their knowledge of the risk of ovarian cancer associated with the PRODUCTS, Defendants failed to disclose this risk through marketing and promotional efforts and product labeling;

c.       At all relevant times, Defendants continued to promote the PRODUCTS as safe for perineal use and failed to provide adequate warnings regarding the risk of developing ovarian cancer if using the PRODUCTS in the perineal area;

d.       At all relevant times, Defendants had knowledge of safer alternative designs for the PRODUCTS and failed to substitute such safer design.

## ACCRUAL OF THE CAUSES OF ACTION

161.    Plaintiff incorporates by reference and realleges paragraphs 1 through 160 of this Complaint as if fully set forth herein.

162.    Plaintiff had no knowledge of the cause in fact of her injury nor did she have any evidence of wrongdoing on the part of Defendants until September 2014. Therefore, the discovery rule applies, and her causes of action against Defendants did not accrue until September 2014.

163.    Additionally, Defendants acts of fraudulent concealment alleged herein operated to equitably toll the applicable statute of limitations.

## DAMAGES AND PRAYER FOR RELIEF

164.    Plaintiff incorporates by reference and realleges paragraphs 1 through 163 of this Complaint as if fully set forth herein.

165.    WHEREFORE, Plaintiff seeks judgment in her favor against the Defendants as follows:

a.  Severe impairment to her ovaries and reproductive system;

b.  Medical expenses;

c.  Pain and suffering;

d.  Mental anguish, anxiety, and discomfort;

e.  Lost wages and income;

f.  Fear of cancer or other related diseases;

g.  Physical impairment;

h.  Physical disfigurement;

i.  Loss of enjoyment of life;

j.  Loss of consortium;

k.  Pre and post judgment interest;

l.  Exemplary and punitive damages in an amount to be determined at trial;

m.  Treble damages;

n.  General damages;

o.  Reasonable and necessary attorneys' fees and other disbursements and expenses of this action;

p.  Such other relief to which Plaintiff may be justly entitled; and

q.  Any and all other damages to be shown at trial.

WHEREFORE, Plaintiff Denise Simpson, prays for judgment against the Defendants, individually and collectively, in the amount of One Hundred Million Dollars ($100,000,000.00), and for additional aggravating circumstances damages, and for the costs and fees herein expended.

RESPECTFULLY SUBMITTED,

ASHCRAFT & GEREL, LLP

BY:  /s/ Michelle A. Parfitt
Michelle A. Parfitt (D.C. Bar No. 358592)
James F. Green (D.C. Bar No. 214965)
4900 Seminary Rd., Ste. 650
Alexandria, VA 22311
(703) 931-5500
mparfitt@ashcraftlaw.com

40

jgreen@ashcraftlaw.com
**Attorney for Plaintiff**

PLAINTIFF RESPECTFULLY REQUESTS A JURY TRIAL.

/s/ Michelle A. Parfitt
Michelle A. Parfitt