Ex. 2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

---

DENISE CECELIA SIMPSON, et al :
                                :
        Plaintiffs,             :
                                : Civil Action No.
v.                              :
                                : 2016 CA 1931 B
JOHNSON & JOHNSON, et al,       :
                                :
        Defendant.              :
--------------------------------:
                        Washington, DC
                        January 13, 2017

        The above-entitled action came on for a hearing
before the Honorable MARISA DEMEO, Associate Judge, in
Courtroom Number 311, commencing at approximately 2:35 p.m.

        THIS TRANSCRIPT REPRESENTS THE PRODUCT
        OF AN OFFICIAL REPORTER, ENGAGED BY
        THE COURT, WHO HAS PERSONALLY CERTIFIED
        THAT IT REPRESENTS THE TESTIMONY
        AND PROCEEDINGS OF THE CASE AS RECORDED.

    APPEARANCES:

    On behalf of the Plaintiff:
    James Green, Esquire
    Patrick Lyons, Esquire

    On behalf of Defendant PCPC:
    James Billings-Kang, Esquire

    On Behalf of Defendant Imerys:
    Angela Hart-Edwards, Esquire

    On Behalf of Defendant Johnson & Johnson:
    Chad Coots, Esquire




Sherry T. Lindsay, RPR              (202) 879-1050
Official Court Reporter

1

1          P R O C E E D I N G S

2                THE DEPUTY CLERK:  This is calling Denise Cecelia

3    Simpson versus Johnson & Johnson, 2016 CA 1931 B.  Parties

4    please --

5                THE COURT:  Parties can you state your names for

6    the record.

7                MR. LYONS:  Good morning, Your Honor.  My name is

8    Patrick Lyons and I represent the plaintiff, Ms. Denise

9    Simpson.

10               MR. GREEN:  Good afternoon, Your Honor.  My name

11   is James Green.  I also represent Ms. Simpson.

12               THE COURT:  All right.  Good afternoon.

13               MR. BILLINGS-KANG:  And good afternoon, Your

14   Honor.

15               Oh, if you will, please.

16               MS. HART-EDWARDS:  Good afternoon, Your Honor.

17   Angela Hart-Edwards for Imerys.

18               Is it okay if we sit --

19               THE COURT:  Sure.  That is fine.

20               MR. COOTS:  Good afternoon.  Chad Coots

21   representing Johnson & Johnson.

22               THE COURT:  Okay.  Good afternoon.

23               MR. BILLINGS-KANG:  Good afternoon, Your Honor.

24   James Billings-Kang on behalf of the Personal Care Products

25   Council.

```
 1              THE COURT:  Okay.  Thank you.  Everyone can have a
 2    seat.
 3              All right.  So this is here on the Defendant,
 4    PCPC's motion to -- special motion to dismiss.  So I will
 5    have you argue your motion first.  And then I will give
 6    plaintiff an opportunity to respond.  I have reviewed the
 7    briefs and the citations within the briefs.
 8              MR. BILLINGS-KANG:  Can I take some time to move
 9    some items from behind?
10              THE COURT:  Sure.  Not a problem.
11              MR. BILLINGS-KANG:  Good afternoon again, Your
12    Honor.  James Billings-Kang on behalf of what I will mention
13    as PCPC for the time being.  Your Honor, the issue is
14    whether the Anti-SLAPP act protects PCPC's speech.  That is
15    some quintessential issue that we have here.  And just to
16    give you some background, although I do recognize that you
17    have read the briefs.  Essentially, plaintiff is arguing and
18    alleging that her use of Johnson & Johnson's talcum powder,
19    baby powder products -- the Shower to Shower and baby powder
20    products caused her ovarian cancer.  With respect to my
21    client, she recognizes that PCPC is a nonprofit trade
22    association.  It represents 600 members of whom are the
23    codefendants Johnson & Johnson and Imerys.  And she does
24    recognize that my client has no product whatsoever.  It
25    doesn't service a product of any kind.  It doesn't design,
```

1    manufacture, advertise or market the product in any way.  So

2    there is no, sort of, connection between the manufacturing

3    and creation of the products at issue and my client.

4         And so the allegation here, at least with respect

5    to what speech is at issue here, it comes in the form of one

6    paragraph.  And that is paragraph 34, particularly.  And

7    that paragraph states that in response -- notably in

8    response to a 1990s -- early 1990s NTP study that is the

9    National Toxicology Program, which is overseen by DHHS.  I

10   think its offices are within NIEHS.  So again, notably, in

11   response to this government study, the allegation is that

12   with the codefendants, PCPC created this task force -- a

13   talc interested task force to essentially study the issue,

14   put out what they claim as bogus studies to muddle the

15   accuracy of the claim that talc does not create ovarian

16   cancer.  They allege that these codefendants, the defendants

17   pooled together to finance this to essentially put out

18   speech that muddles the issue.  That sort of makes the claim

19   that there is -- excuse me -- that the claims are

20   scientifically inaccurate.  So that is the brunt of their

21   allegations, as well as the fact that they claim the speech

22   at issue or the private communications between my client

23   PCPC, Johnson & Johnson and Imerys.  So again it is about

24   communications to the general public; communications to the

25   government, so notably lobbying; and private communications

1   among the defendants concerning the safety of talc.  They do

2   concede that these issues revolve around the safety of talc.

3          So the analysis then at least with respect to the

4   Anti-SLAPP Act, as you know, is a two-part step.  The first

5   step is can PCPC make a prima facie case that it is

6   protected by the act, that can it demonstrate an act in

7   furtherance of the right of advocacy with respect to an

8   issue of public interest?  And if that is met, if PCPC can

9   meet that burden, then the burden shifts.  The evidentiary

10  burden shifts back to the plaintiff to prove that she can

11  prove -- demonstrate that she will be likely successful on

12  the merits.  Interestingly, that latter -- the second prong

13  is not at issue here.  The parties are contesting whether

14  PCPC can make a prima facie case.  In other words, the

15  plaintiff has not put forward any evidence of any kind that

16  she will be successful on the merits -- any likelihood of

17  success on the merits.  And as we know from the recent Mann

18  case that just came out last month, that standard is similar

19  to a motion for summary judgment standard.  And we submit

20  that we have met the prima facie case.  We met that burden

21  and therefore the code mandates -- it mandates a dismissal

22  with prejudice, as well as the awarding of attorney's fees.

23         Now, before I proceed with the specifics of the

24  prima facie hurdle, I would like to -- again to announce the

25  bedrock principles of the act, of course.  We are here

1   talking about speech and the fact that we need to protect

2   speech as sacrosanct, as constitutionally protected.  And so

3   any broad rendering of this act would certainly stifle

4   speech.  And taken to its logical extent, plaintiff's

5   argument is essentially saying, well, if an organization or

6   a company is inherently commercial, and, in fact, if there

7   is any hint of commercialism, then that speech is not

8   protected.  That is the crux of their argument.  But, again,

9   the SLAPP Act -- the Anti-SLAPP Act protects my client from

10  having to stand for trial.  This is a quintessential case

11  that concerns discussions private and public regarding the

12  safety of talc, which is easily an issue of public interest.

13          So the first question is:  Did my client commit an

14  act in furtherance of advocacy?  That is the first step of

15  the prima facie burden.  There are three definitions for

16  that particular component.  The first component comes from

17  section 16-5501(1)(A)(i) of the DC code and that concerns or

18  that defines this particular component that "Any written or

19  oral statement made in connection with an issue under

20  consideration or view by a legislative, executive or

21  judicial body or any other official proceeding authorized by

22  law."

23          Now, again, paragraph 34 states explicitly that

24  the task force, PCPC's action was in response to a study,

25  the NTP study.  And so PCPC's -- that particular action

6

1    should cover -- and anything related to the task force

2    should cover or should be covered by this particular

3    definition.  Now, in response plaintiff will claim, well,

4    no -- yes, the public communications -- we'll concede that

5    perhaps the public communications are protected, but not the

6    private communications.  But if you look at the definition,

7    it does not distinguish between public or private

8    communications.  It is very broad.  It simply says, the

9    statement has to be made in connection -- in connection.

10   That is the nexus defined there.  And the nexus is, so long

11   as the communication has anything to do with an issue being

12   considered by the legislative, executive or judicial branch

13   or any official proceeding authorized by law, then that

14   speech is protected.  And we know that because of -- as well

15   as the legislative history.  Interestingly, the legislative

16   history that Ms. Simpson attached to her opposition includes

17   the testimony from the ACLU, which at page 4, they emphasize

18   that statement -- a statement deserves Anti-SLAPP protection

19   whether it is made in a public place or in a private place.

20   So, again, there is no distinction between public or private

21   that should persuade the Court to not provide the protection

22   for private communications.

23           Additionally, the Court may also look to other

24   jurisdictions for guidance.  The DC Circuit has stated in

25   three cases that -- particularly California is somewhere

1   that we should look for guidance, because California has had

2   a 10-year head start on this analysis of Anti-SLAPP motions.

3   It has about 2,000 cases that have analyzed their respective

4   Anti-SLAPP motions.  And that amounts to about 85 percent of

5   the jurisprudence involving Anti-SLAPP motions.  So in a

6   case, for instance, Rivera against First Databank Inc., 187

7   Cal.App.4th 709, that is 2010.  The Court maintained that

8   the focus of the speaker's conduct should be the public

9   interest, nevertheless it may encompass activity between

10  private people.

11          So, again, the distinction between what is public

12  and private is of no moment.  It shouldn't be considered, at

13  least with respect to this particular definition.  And,

14  again, the complaint presupposes by the way it couches the

15  allegations, it presupposes that PCPC responded to a

16  government activity.

17          The second component or the second definition of

18  advocacy concerns written or oral statement made in a place

19  open to the public or a public forum in connection with an

20  issue of public interest.  Again, there are allegations in

21  that specific paragraph of the complaint, 34, mention

22  studies, representations made in a public forum.

23          And finally there is a third catchall definition

24  and that defines advocacy as any other expression or

25  expressive conduct that involves petitioning the government

8

1   or communicating views to members of the public in

2   connection with an issue of public interest.  Again, I

3   submit that the communications at issue, even meet that

4   catchall provision, should not meet the other components of

5   the definition.

6           And so that then leads to the second part of the

7   prima facie analysis, which I think is the most contested

8   argument of the two.  And so was -- the question was, was

9   there an issue of public interest encapsulated within PCPC's

10  speech?  Ms. Simpson says no, that the thrust of PCPC's

11  speech was directed primarily toward PCPC's commercial

12  interest.  Now, I must say that the onus, not even just the

13  onus, but the evidentiary burden is on Ms. Simpson to prove

14  that our speech, during these times, was directed primarily

15  towards our commercial interest.  It is not our onus to

16  prove otherwise.  And that is from Doe number 1 against

17  Burke, a case from the Court of Appeals in 2014.  And I can

18  provide the citation, if the Court would like.  That is 91

19  A.3d 1031, DC Court of Appeals 2014, which the Court says,

20  "The anonymous speaker" -- just to give some background, Doe

21  against Burke involved the Wikipedia page.  Ms. Burke is a

22  reputable attorney that we all probably know of.  And she

23  had sought to subpoena Wikipedia to get the identity of

24  certain editors of a post related to her.  And Doe number 1

25  moved to quash that subpoena under the Anti-SLAPP act.  And,

1  notably, the Court there noted that the anonymous speaker

2  must also disprove -- excuse me -- just to backtrack, the

3  Court noted "It appears to have been the trial Court's

4  understanding that in order to establish an act in

5  furtherance of the right advocacy on issues of public

6  interest, the anonymous speaker must disprove the commercial

7  motivation, even where such motivation is not apparent from

8  the contents of the speech.  This apparent presumption,

9  though, of commercial interest has no foundation in the

10  statute which merely states what an issue of public interest

11  is or is not.  Moreover, such a presumption is inappropriate

12  in the context of a prima facie showing for which we have

13  felt that the burden of proof is not onerous."

14           So, again, the Court of Appeals is stating there

15  that it is not PCPC's burden to prove that its speech --

16  these particular alleged speech had some sort of substantial

17  nexus with a pecuniary interest.  That burden again lies

18  with Ms. Simpson.  And --

19           THE COURT:  What page were you citing to just now?

20           MR. BILLINGS-KANG:  Sure.  That is 1043, is the

21  pinpoint.

22           THE COURT:  Okay.  Thank you.

23           MR. BILLINGS-KANG:  And I have copies of --

24           THE COURT:  I have a copy here.  I just wanted to

25  make sure I was looking at it.

1          MR. BILLINGS-KANG:  Sure.

2          THE COURT:  Okay.

3          MR. BILLINGS-KANG:  Now, the operative language

4   here that Ms. Simpson is pinpointing to is the definition of

5   public interest, which certainly excludes private speech,

6   that is speech directed primarily towards protecting the

7   speaker's commercial interest, as opposed to commenting on a

8   matter of public significance.  So the operative phrase

9   there is directly -- primarily directed -- primarily

10  directed.  Primarily being the adverb, which from the OED we

11  know means to the great or greatest degree, for the most,

12  mainly.  So, again, Ms. Simpson has to show that the

13  speech -- PCPC's speech for the most part, was for

14  protecting its commercial interest, for the most part,

15  mainly.  In other words, Ms. Simpson has to show that

16  commentary concerning the safety of talc was substantially

17  outweighed by its commercial interest.  California courts

18  have indicated that when courts look at this particular

19  issue, they should look at it not through the lens of the

20  complaint or the form of the complaint or the colorful

21  language of the complaint, but rather look at the basis of

22  the language here.  And that is from -- I am going to botch

23  the name of this plaintiff -- Hecimovich against Encinal

24  School Parent Teacher Organization, 203 Cal.App 4th 450 and

25  that is from 2012.  And we also get that from a case which I

1   think I mentioned before actually, the Rivera case.

2          So, again, the Court should objectively look at

3   the complaint, but not formulate the analysis as if through

4   the lens of Ms. Simpson here.

5          Now, they have submitted some evidence, I will

6   concede that.  But the evidence is PCPC's website.  And they

7   also used the declaration from Mr. Pollak that we submitted

8   with our motion to dismiss.  That is the breadth of their

9   evidence to try to show this nexus between PCPC speech and

10  pecuniary interest.  Again, there is no allegation that

11  PCPC's speech was perpetuated to advertise its services, to

12  advertise its membership, to advertise some sort of

13  connection with PCPC and the products.  Again, the products

14  are not created, designed, manufactured, marketed by PCPC.

15         So let's look at the two types of evidence that

16  Ms. Simpson has proffered.  The website.  She states that on

17  the website is the mission of PCPC, which is to protect or

18  at least advocate on behalf of its 600 members.  And she

19  makes the same point about Mr. Pollak's declaration.  Again,

20  he concedes that he represents 600 personal care products

21  members.  They each have their own interests.  And from

22  there, Ms. Simpson concludes generally that, you know, any

23  speech by PCPC must mean it is commercial -- inherently

24  commercial and therefore deserves no protection of the

25  Anti-SLAPP Act.  Now, as I said before, we are walking on

1   dangerous grounds here, if we permit that interpretation.

2   So, again, taken to the logical extent, that argument

3   suggests any organization, especially any trade association

4   cannot seek protection under the Anti-SLAPP act.  And as I

5   noted from Doe, the burden is on Ms. Simpson though to find

6   that substantial nexus.  And you can't rely on speculation,

7   we know that from Doe.  You can't rely on conclusionary

8   allegation.  There has to be substantially more.  And they

9   have not submitted anything to substantiate that, in fact,

10  PCPC had in mind its commercial interest.  For example, did

11  it have in mind its membership dues when it is making this

12  speech?  It is tough to make that finding if the connection

13  is that tenuous.  And it is tenuous because it, again, is

14  based on a website and Mr. Pollak's declaration about the

15  general structure of PCPC, which we know is a general

16  structure for every trade association.  And if that

17  interpretation is true and Ms. Simpson's interpretation is

18  going to be correct, then we have to wonder about the

19  holding for many other case law in this jurisdiction.  So,

20  for instance, the Farah case against Esquire Magazine where

21  Esquire Magazine had reportedly put out satire of a book

22  that was being promoted for by Mr. Farah, a book involving

23  the birther movement.  And even though that particular

24  publication may inherently have increased traffic to this

25  particular blog, that was of no consequence.  The question

1    there was, again, you can't look at it through the lens of
2    the plaintiff, look at it through what is being -- what is
3    the speech here?  You have to look at what is the target of
4    the speech.  And the target of the speech there was a book,
5    not so much the commercial interest of Esquire Magazine,
6    even though plaintiff claimed that Esquire Magazine was a
7    competitor as well.  That was of no consequence.  And the
8    same is true of the other magazine cases that we have.  So,
9    again, I am just going to botch these names, Abbas against
10   Foreign Policy Group, LLC, 975 F.Supp. 2d1.  And that is
11   from the US District for the District of DC in 2013.  Again,
12   that was a case involving a publication that had made
13   mention of plaintiff's finances and its purported connection
14   with the PLO.
15           There is another magazine case, Boley against
16   Atlantic Monthly Group 950 F.Supp.2d 249, 2013.  That
17   publication involved describing plaintiff as a warlord.  And
18   despite the fact that the publications may have somehow
19   increased the circulation and traffic and therefore the
20   commercialism of the speaker, again that was of no moment
21   because the onus is on the plaintiff to prove this
22   connection.  And it has to be a target connection.  Again,
23   the language says, directed primarily towards.  You can't
24   just simply say, hey, look on the website, therefore every
25   speech must mean that it is directly towards trade

1    association's public interest.  And I can continue and

2    continue about the consequences of this interpretation.

3           We also have the Rivera case that I mentioned

4    before from California, which I think is very apt.  And

5    there, the Rivera family or the family members of the

6    decedent who had committed suicide after taking an

7    antidepressant, Paxil.  The defendant had filed an

8    Anti-SLAPP motion.  He had essentially created a drug

9    monograph about a number of drugs, not just about Paxil and

10   had a working relationship with Costco where he would

11   publish the monographs and submit them to Costco.  Costco

12   would then utilize these monographs as a means to advertise

13   and persuade people to take drugs or convince them to take

14   certain drugs.  The Rivera family had indicated that the

15   Paxil monograph that the defendant had created was

16   deceptive, was not holistic, was very confusing and vague,

17   just like Ms. Simpson is claiming our speech somehow is sort

18   of muddling the issue of talc.  In that case, even though

19   the defendant had inherent commercial interest in the

20   monograph, he certainly made money off these monographs, a

21   substantial amount with a working relationship with Costco,

22   the Court granted the Anti-SLAPP motion.  Because, again,

23   not looking at it through the lens of the plaintiff, but

24   looking at the monograph itself, but what it was targeting.

25   It was targeting Paxil, which was an issue of public health

15

```
 1    and inexorably an issue of public safety.  Excuse me.  As a
 2    consequence in light of what I just mentioned, Your Honor,
 3    we have met the prima facie burden.  It is not onerous as
 4    the Court has said in Doe.  Ms. Simpson has not put forth
 5    any evidence besides conclusory evidence like the website
 6    and Mr. Pollak's declaration to show there is some sort of
 7    nexus that somehow PCPC was thinking about its interest,
 8    even though -- again, the complaint said it was responding
 9    to the government.  And so now the burden is on Ms. Simpson
10    to prove otherwise, to put forth evidence that she will
11    likely succeed on the merits.
12              I can go through the three causes of action with
13    respect to PCPC, but, frankly, I don't think it is at issue
14    because Ms. Simpson has not put forth any evidence.  So if I
15    may reserve my time with respect to those, if that is
16    raised.  But, again, Your Honor, they have not put forth any
17    evidence concerning the three causes of action.  And as a
18    result, Your Honor, I would respectfully request that you
19    grant PCPC's special motion to dismiss.
20              THE COURT:  All right.  Thank you.
21              MR. BILLINGS-KANG:  Thank you, Your Honor.
22              THE COURT:  Counsel.
23              MR. LYONS:  Thank you, Your Honor.
24              THE COURT:  Sure.
25              MR. LYONS:  Good afternoon again, Your Honor.  My
```

1    name is Patrick Lyons.  And I represent the plaintiff,

2    Ms. Denise Simpson.

3              THE COURT:  Good afternoon.

4              MR. LYONS:  Thank you.  In this case, Ms. Simpson

5    alleges in her complaint that the Personal Care Products

6    Council or PCPC, along with Johnson & Johnson, defendants,

7    and Imerys Talc America over the course of about 40 years

8    conspired and collaborated to not only publish and fund

9    studies that would discredit the already published studies

10   about the dangers of talc, they hired scientists to perform

11   reviews.  And they acted in this way, also releasing

12   information to the general public contrary to the already

13   published studies about the dangers of talc.  Ms. Simpson

14   not only alleges that in paragraph 34 of her complaint.  But

15   also has allegations in the three counts and the causes of

16   action she brings against PCPC, those are:  Negligence,

17   fraud and conspiracy.

18             In all, every single one of PCPC's statements and

19   actions they took in conjunction with Johnson & Johnson and

20   Imerys over the course of 40 years were all motivated by the

21   private commercial interests of PCPC and its member

22   companies.  And, therefore, none of the action or statements

23   fall under the protection under the DC Anti-SLAPP Act.

24             Now, I would like to just start by refuting just a

25   few points that was made by counsel for PCPC.  Number 1, the

1    statute explicitly puts the initial burden on Personal Care

2    Products Council to provide a prima facie showing that it's

3    protected under the act.  Number 2, counsel referred to

4    several cases from California, as well as the District of

5    Columbia Circuit.  However, those cases are not applicable

6    here.  California, for example, does not have the particular

7    provision, the private interest provision definition of

8    public interest that the District of Columbia Anti-SLAPP Act

9    does.  So that entire definitional phrase is not included in

10   the California Anti-SLAPP Act.  So every single California

11   case that has analyzed the Anti-SLAPP Act has not looked at

12   it through the lens of, well, is issue of public interest

13   described as this way or this way?  So, here, the DC

14   Anti-SLAPP act is actually a little bit narrower in that

15   sense because it provides a very detailed definition of what

16   a public interest is and that excludes private interests,

17   such as those meant to promote the commercial interests of

18   the speaker.  The DC Circuit cases that counsel for PCPC has

19   cited are no longer good law in plaintiff's -- plaintiff's

20   opinion because of Abbas -- the Abbas case from the DC

21   Circuit which was decided in 2015.  And that is 783 F.3d

22   1328.  In that case, the District of Columbia Circuit Court

23   held that a Federal court sitting in diversity may not apply

24   the Anti-SLAPP Act.  So while the Court affirmed the

25   dismissal, it affirmed the dismissal on separate grounds,

1   Rule 12 and Rule 56 of the Federal Rules of Civil Procedure.

2   Counsel for PCPC does make mention that if trade

3   associations aren't allowed the protection of the Anti-SLAPP

4   Act, there is nothing else that is going to protect them.

5   That is frankly not true, because the District of Columbia

6   Rules of Civil Procedure provide for motions to dismiss

7   plaintiff's complaint under very similar circumstances if

8   they do not actually make a cause of action.  Here PCPC has

9   not filed such a motion.  I will note that a motion to

10  dismiss PCPC's fraud and civil conspiracy claims were

11  brought in a separate case, Oules versus Johnson & Johnson

12  and that motion was denied by Judge Holeman.

13          Now, I would like to start with the second element

14  of the prima facie case that PCPC must make in order to

15  prove that it deserves the protection of this act.  And that

16  is that PCPC -- so let me just go back to what the Act

17  actually says.  So it says a party may file a special motion

18  to dismiss any claim arising from an act in furtherance of

19  the right of advocacy on an issue of public interest.  Now,

20  this provides for two elements.  The first element is an act

21  in furtherance of the right of advocacy.  And the second

22  element is on an issue of public interest.  However, I will

23  say that the second element actually plays into the first

24  element.  Because the full first element is an act in

25  furtherance of the right of advocacy on issues of public

19

1   interest.  So determining whether or not PCPC's statements

2   and activities were truly directed towards an issue of

3   public interest are dispositive of the first element.

4   Because if the Court finds that PCPC's statements and

5   activities were indeed on issues of public interest, then

6   that goes back to the first element and we have to analyze

7   each and every single statement and activity over the course

8   of four decades.  And we are talking about in a similar

9   case, documents that were produced -- about 80,000 pages of

10  documents from PCPC that implicate plaintiff's claims in

11  some way.  That is not only to count the 800,000 documents

12  that were produce by the other defendants in a similar case.

13  So we are talking about having to go back through and look

14  at the statements and activities over the course of four

15  decades.  This is not a typical case.  For example, in the

16  other casus that have been cited by the District of Columbia

17  Court of Appeals, for example, Competitive Enterprise

18  Institute versus Mann, which was just a few weeks ago

19  actually.  This was again a simple defamation action

20  involving two published articles.  So it wasn't like we had

21  to go through 80,000 pages of documents and determine was

22  this statement in act of furtherance of the right of public

23  advocacy or was this statement an act in furtherance of the

24  right of public advocacy?  So you had to look at two

25  articles and make that decision.  So that case Doe versus

1    Burke, for example, involves an edit to a Wikipedia page.

2    So it is very simple to analyze, did those statements arise

3    from an act in furtherance of the public advocacy.  Indeed,

4    Farah versus Esquire Magazine, it was again a defamation

5    case involving one single satirical article that was

6    published by Esquire Magazine.  So just on that, we see the

7    differences in what a case involving a true Anti-SLAPP issue

8    looks like versus one that does not.  That goes to the

9    example of what kind of claims are typically brought in

10   Anti-SLAPP lawsuits.  And those are typically defamation and

11   related torts.  We -- here the plaintiffs bring causes of

12   action found in negligence and in fraud.  So these are not

13   the -- also not the typical claims that are brought in an

14   Anti-SLAPP lawsuit.

15           Now I will go and discuss why PCPC's statements

16   and actions alleged in Ms. Simpson's complaint are not on

17   issues of public interest.  And here it is, that one

18   definition of what is an issue of public interest?  And it

19   says a public interest is not to be construed to mean

20   private interests, such as statements directed primarily

21   towards protecting the commercial interests of the speaker.

22   As I mentioned before, again, this makes it a little

23   narrower.  And in analyzing this element, the prime facie

24   case, the motivations of the speaker are very important.

25   And just that definition itself indicates that you have to

1   analyze what the motivations of the speaker were.  Because

2   you have to determine whether the statements were made

3   primarily to protect commercial interests or the speaker's

4   commercial interest.  The language of the Act itself also

5   makes it clear that you have to take a look at the

6   motivations of the speaker.  It says an act in furtherance

7   of.  In furtherance simply means the advancement of a scheme

8   or interest.  So you have to look at the motivations of the

9   speaker.  And here PCPC is a trade association that

10  represents its member companies.  Inherently PCPC's member

11  companies are cosmetic companies that are commercial in

12  nature.  PCPC, I don't dispute -- I don't believe would

13  dispute that Johnson & Johnson and Imerys Talc America are

14  commercial companies by nature.  They are for-profit

15  corporations.  And in this case, the products Johnson's Baby

16  Powder and Shower to Shower are at issue.  And those are

17  products that are manufactured by the Johnson & Johnson

18  defendants.  And in those products are talc, which is a

19  substance that is mined and provided to Johnson & Johnson by

20  Imerys Talc America.  So these are inherently commercial

21  interests that the defendants have.  And PCPC, as a trade

22  organization, naturally represents the interests of its

23  members.  And it has an inherent private interest in

24  promoting the commercial interests of its members.  That is

25  what trade associations do.  This isn't, you know, an

1    indictment of trade associations.  It is just an honest

2    discussion of whose interest they represent.  It is their

3    member companies' commercials interests, not the public's,

4    not the government's.  Inherently, trade associations are

5    built to represent the interests of their members.  And

6    those are commercial interest in this case.

7          In fact, Mr. Pollak, the executive vice president,

8    states that the trade association -- PCPC is a trade

9    association that represents the other defendants.  And they

10   advocate on issues of interest to some or all of its

11   members.  Again, this is the issue at interest is directed

12   primarily toward protecting the commercial interests of its

13   members.  PCPC website states that it represents the

14   industry on issues of interest to the cosmetic and personal

15   care industry.  In another page on its website it states

16   that PCPC works on behalf of the industry to find solutions

17   that benefit the industry.  Even PCPC's tax return, the form

18   990, states in its mission that PCPC represents the common

19   business interests of the personal care products industry.

20   So clearly PCPC as an organization is built to represent the

21   commercial interests of its members.

22          If Johnson & Johnson, Imerys Talc America did not

23   have commercial interests in protecting the products and the

24   substance involved in Ms. Simpson's complaint that she

25   alleges caused her ovarian cancer, PCPC would not have taken

1    any of the actions -- it would not have formed a talc

2    interested task force for the purpose of disseminating false

3    information, hiring scientists to conduct biased reviews and

4    generally releasing information to the public and the

5    government that was false or misleading, if it wasn't for

6    its member companies' commercial interests.  And, Your

7    Honor, I would like to turn -- just to discuss -- again,

8    there are procedural safeguards that would protect Personal

9    Care Products Council absent the Anti-SLAPP Act.  And it is

10   not like every state has an Anti-SLAPP Act, a little over

11   half do.  Trade associations can take advantage of Rule 12,

12   Rule 56 of other rules to dismiss plaintiff's complaint, if

13   they truly believe they do not have any merit.

14            But the intent of the Anti-SLAPP Act, again, is

15   to -- is not to protect commercial interests.  That is

16   completely different.  The intent of the Anti-SLAPP Act is

17   to promote and protect honest public discourse about issues

18   of public interest and by specifically defining in a way

19   that is very different than every other Anti-SLAPP Act in

20   specifically defining what an issue of public interest is

21   and by stating that it is not to include private interest,

22   such as interests meant to protect the commercial interests

23   of the speaker, the DC Council meant to provide for a

24   situation exactly like this where the defendants, Johnson &

25   Johnson and Imerys Talc America, they do not claim they can

1   get the protection of the Anti-SLAPP Act for the exact same

2   statements and activities that PCPC -- what they undertook

3   with PCPC.  But now PCPC claims it can claim the Anti-SLAPP

4   protection for the exact same activities that Johnson &

5   Johnson or Imerys would not be able to claim.  So I think

6   this definitional exclusion of private interests is meant to

7   cover a situation like this.  Again, trade associations are

8   meant to promote and protect the interest of its members and

9   these are inherently commercial interests.

10          So, for example, I remember a transitive property

11  for math.  I am not very good at math, but this helped me

12  remember.  If Personal Care Products Council is -- seeks to

13  protect its members' interests and its members seek to

14  protect their commercial interest, then PCP seeks to protect

15  and promote its member companies' commercial interest.  So I

16  would also like to point out that -- the private interests

17  that are at issue here, such as statements meant to protect

18  the speaker's commercial interests as an example.  And I

19  think it is an example that does fit in this case.  But,

20  again, it is just an example of one type of private interest

21  that the act does not protect.  And so here, even if the

22  wording of the example, such as protecting the speaker's

23  public interests -- private -- I mean, commercial interests

24  does not exactly fit, which, again, we believe it does fit

25  in this case, there is room to show that these private

1    interests which would not be protected by -- or any other

2    company or for any other individual, somehow should apply to

3    PCPC.  Because PCPC advocated for a private commercial

4    interest of itself and its members, it does not deserve the

5    protection of the Anti-SLAPP act.  And thank you, Your

6    Honor, appreciate your time.

7                   THE COURT:  Thank you.

8                   Do you wish to respond?

9                   MR. BILLINGS-KANG:  Yes, Your Honor.  Just a few

10   points.  Counsel started off his response by indicating that

11   the onus is on PCPC to disprove it's targeting -- its

12   commercial interests.  Again, I would submit that is

13   incorrect.  And we know that from Doe against Burke, the

14   2014 case where the plaintiff had speculated that there were

15   some sort of pecuniary interest that had motivated Doe's

16   intent to quash the subpoena.  The Court there noted that

17   you can't rely on the allegation or conclusory statements.

18   And the onus is, in fact, on the plaintiff to put forth some

19   evidence, some direct evidence linking the speech with the

20   commercial interest.  So, again, I submit that is not a

21   correct characterization of that burden.

22                   He also makes the claim that this is not a typical

23   case, that because this case involves 40 years of

24   statements, it involves 80,000 documents, it is unlike the

25   other cases where the issue may have arisen in a span of one

1    year or one blog entry or two blog entries.  But, again, the

2    courts do not have that distinction in mind at all.  There

3    is no dispositive case that suggests that duration has

4    anything to do with -- if anything, as the California courts

5    have guided us towards is that you have got to look at

6    this -- the speech is not through the lens of the plaintiff.

7    So what he is suggesting is, oh, a plaintiff can come here,

8    couch the complaint with many sort of causes of action,

9    bring in a duration of any kind and say it is not typical,

10   therefore the Anti-SLAPP act does not apply here.  Again,

11   you can't look at, Your Honor, the form of the complaint or

12   look at it through the lens of the compliant.  We have to

13   look at what speech are we talking about here.  And they

14   have not met their burden in showing anything but

15   circumstantial indications of the inherent nature of PCPC.

16   Again, they just simply point to Mr. Pollak's declaration in

17   the website.  And these are just circumstantial documents.

18   And a website that describes the inherent structure of PCPC.

19   And, again, I think that is dangerous to suggest as counsel

20   would claim that inherently, a trade association is

21   commercial, therefore, it cannot submit a special motion to

22   dismiss.  I think the way the counsel crafted the language

23   is that we have to look at this exclusion from public

24   interest in a narrow fashion.  Because as we know from case

25   law, the act is broad.  And it should be construed broadly.

1  And that is because we want to again protect speech and not

2  stifle it.  And we want to allow people -- even people whose

3  speech might have some sort of commercial element to it,

4  still be protected and still be able to participate

5  publicly.

6          And counsel even conceded that, that the exclusion

7  and the definition of public interest is narrow.  He

8  mentioned that.

9          And then he also put forward the fact -- the claim

10  that, well, PCPC has other procedural safeguards in light of

11  the fact that it can't file a special motion to dismiss.

12  Well, that is not the purpose of the special motion to

13  dismiss.  The purpose is to allow the speaker to

14  expeditiously get a disposition.  The fact that there are

15  procedural safeguards, the fact that there might be

16  alternative ways to have a case dismissed or a case

17  concluded, runs afoul of the purpose of the Act, which

18  requires that a court take this into special consideration

19  which I respectfully thank you for and to consider what is

20  the speech here.  So I'd submit that those other procedural

21  avenues should not even be considered in this argument.

22          And, finally, I'd like to rest with the muzzling

23  consequences, if the Court should agree with the plaintiff

24  here.  What the plaintiff is suggesting is that your speech

25  is not protected, if, for instance, it was paid for.  Again,

1  in Rivera that speech was paid for by Costco, the drug

2  monograph.  We have another case called Industrial Waste --

3  out in California -- Industrial Waste & Debris Box against

4  Murphy, 4 Cal.App.5th 1135 and the pinpoint is 1150251.  And

5  there the Court considered a private report actually -- a

6  private report that was paid for by a consultant who had

7  analyzed the plaintiff and other drug disposal statistics on

8  its disposal program.  That private report was then given to

9  the speaker's client.  And the client used that in

10  government form to essentially make the case that it should

11  be hired instead of the plaintiff.  The plaintiff, again,

12  did not look at the competing body's interest, but rather

13  the speaker, the consultant there.  In plaintiff's mind, in

14  Ms. Simpson's mind, just because a speech is paid for, again

15  has a financial element to it, that speech would not be

16  protected.  But as the Court said there, "Whether speech has

17  a commercial or promotional aspect is not dispositive of

18  whether it addresses a matter of public interest."  So,

19  again, you have to look at the entirety of the speech and

20  can't just simply say, oh, here is a website, here is their

21  organizational structure, therefore there is a commercial

22  element, the Act does not apply.  No.  You have to show

23  again -- and I submit it is a measuring stick, right.  You

24  can't just simply say, oh, there is an element, there is a

25  scintilla of commercialism here.  No.  The act defines a

1  speech that is not incorporated as a public interest as one

2  that is directed primarily -- so, again, back to the

3  definition of primarily from OED, means mainly, for the most

4  part, to the greatest degree.  So they have to put forward

5  evidence that tips the scales substantially in their favor

6  to link the speech with a pecuniary interest.  And they have

7  not done that.  Ms. Simpson has not done that.

8         I have already mentioned the magazines, which I

9  think would not be protected if plaintiff's argument would

10 hold weight here.  And I think I would submit that even

11 public advocacy groups couldn't get their speeches protected

12 if, for instance, they were responding to competing

13 interests, which would inherently raise their profile, raise

14 their causes.  And that is the particular example that we

15 saw in the ACLU's testimony between the right to life and

16 Planned Parenthood.  Could plaintiff's argument be construed

17 to vitiate the protection afforded to these groups?  I think

18 it would.  I think by allowing this broad interpretation, it

19 would.

20        So again, Your Honor, taken to the logical extent,

21 I think this is dangerous grounds here.  The argument that

22 no matter how tenuous the nexus between the speech and the

23 commercial interest, there is no protection by the Act and I

24 think that runs in contravention of the legislative history,

25 the purpose and the jurisprudence and especially the cases I

1    cited in California, while not authoritative, they provide

2    illuminating guidance, Your Honor.   Thank you very much.

3              THE COURT:  All right.   Thank you.

4              MR. LYONS:  Your Honor, may I address three quick

5    points?

6              THE COURT:  Okay.

7              MR. LYONS:  Thank you, Your Honor.   We don't

8    suggest that any commercial interest, just any little bit of

9    commercial interest will tip the scale and not allow for the

10   protection of the Anti-SLAPP Act.   But the definition says

11   that if it is motivated primarily by -- primarily to protect

12   the commercial interest.   So there still has to be

13   primarily.   We just argue that trade associations by nature

14   exclusively advocate on issues of private commercial

15   interest.

16             Number two, the cases from California that are

17   cited that discuss the public interest requirement under the

18   Act, again, they don't have the same definition of what an

19   issue of public interest is.   So those cases that interpret

20   public interest are really not applicable here.

21             Number three, we did not have the benefit of

22   discovery.   There are again, like I said, 80,000 documents

23   produced by PCPC and 800,000 produced by the other

24   defendants.   At the time this was briefed, we did not have

25   that discovery.   We do now.   And we have some extra

1    discovery, so we could certainly brief this issue further.

2    But I'd say, I do not believe that the burden has shifted to

3    the plaintiff to proving its causes of action because PCPC

4    has not met that prima facie burden, which is in the

5    statute.  Thank you, Your Honor.

6             THE COURT:  All right.  There were just a couple

7    of points that I want to go back to my chambers to take a

8    quick look at.  And then I will be back.  If the parties can

9    just return in 20 minutes, at a quarter to 4:00.  We'll

10   stand in recess until then.

11            MR. LYONS:  Thank you, Your Honor.

12            MR. BILLINGS-KANG:  Thank you, Your Honor.

13                      (Recess taken.)

14            THE DEPUTY CLERK:  Calling Denise Cecelia Simpson

15   versus Johnson & Johnson 2016 CA 1931.

16            THE COURT:  All right.  Good afternoon.  All

17   parties are present.  Thank you for your patience.  All

18   right.  So just for the record, the Court is, of course,

19   using the statutory language, DC Code 16-5502 on special

20   motion to dismiss, specifically looking at subsection B, "If

21   a party filing a special motion to dismiss under the section

22   makes a prima facie showing that the claim at issue arises

23   from an act in furtherance of a right of advocacy on issues

24   of public interest, then the motion shall be granted, unless

25   the responding party demonstrates that the claim is likely

1    to succeed on the merits, in which case the motion shall be

2    denied."

3              So one of the issues that didn't come out as

4    strongly in the briefs, but clearly came out in terms of the

5    arguments is burden, who has the burden.  And so the Court

6    just wants to cite to the case that the parties have

7    referenced, the Competitive Enterprise Institute versus Mann

8    case, which came out in December of 2016 by the DC Appellate

9    Court, 2016 DC.App Lexis 435, which states under the

10   District's Anti-SLAPP Act, the party filing a special motion

11   to dismiss must first show entitlement to the protections of

12   the act by making a prima facie showing that the claim at

13   issue arises from an act in furtherance of the right of

14   advocacy on issues of public interest, citing to the code.

15   Once that prima facie showing is made, the burden shifts to

16   the nonmoving party, usually the plaintiff, who must

17   demonstrate that the claim is likely to succeed on the

18   merits.  If the plaintiff cannot meet that burden, the

19   motion to dismiss must be granted and the litigation is

20   brought to a speedy end.  So the Court is using that statute

21   and that framework as interpreted by the Court of Appeals in

22   terms of the process of where the analysis starts and where

23   it goes in terms of burden.  If, in fact, the prima facie

24   showing is established.

25              The Court also noted during oral argument -- so I

1    wanted to just make sure I made a point of addressing it --
2    there was back and forth about the use of California law.
3    And so -- the Abbas District Court case had language in it
4    that said, "In construing the Act, the Court cannot rely on
5    guidance from the DC Court of Appeals, which has not yet
6    published an opinion in interpreting the statute."  Of
7    course, this was I believe a 2013 case, so this was prior to
8    some of the more recent litigation and decisions that have
9    come up by the Court of Appeals.  And then the District
10   Court had said, Where, as here, the substantive law of the
11   forum state is uncertain or ambiguous, the job of federal
12   court is carefully to predict how the highest court of the
13   forum state would resolve the uncertainty or ambiguity.
14   With this in mind, the Court notes that the committee report
15   prepared on the Anti-SLAPP Act emphasize that the statute
16   followed the model set forth in a number of other
17   jurisdictions.  The DC Court of Appeals has accorded great
18   weight to such reports in interpreting other DC statutes.
19   Therefore, where necessary and appropriate, the Court will
20   look to decisions from other jurisdictions, particularly
21   California, which has a well developed body of case law
22   interpreting a similar California statute for guidance and
23   predicting how the DC court of Appeals would interpret the
24   District's Anti-SLAPP statute.
25           Of course, the plaintiff points out that the

34

```
 1    Circuit Court actually affirmed on different grounds and
 2    specifically said that the first issue before the Court is
 3    whether a Federal Court exercising diversity jurisdiction
 4    may apply the DC Anti-SLAPP Act's special motion to dismiss
 5    provision.  The answer is no.  Federal Rules of Civil
 6    Procedure 12 and 56 establish the standards for granting
 7    pretrial judgment to defendants in cases in Federal Court.
 8    A Federal Court must apply those Federal Rules instead of
 9    the DC Anti-SLAPP Act's special motion to dismiss provision.
10    So technically as a matter of law, this Court would not cite
11    to the District Court case.  First of all, it wouldn't be
12    precedent for this Court anyway, as the parties know.  If
13    anything, it would be persuasive, since they are not an
14    appellate court to this Court.  And then in light of the
15    fact that the Circuit Court said District Court really
16    shouldn't have ruled on the issue of Anti-SLAPP anyway.
17    This Court doesn't decide this matter based on the District
18    Court Abbes language.  Nevertheless, I read it.  And the
19    Court actually agrees with what the District Court said.  I
20    understand that I have no basis to cite to it, since in
21    essence, it was reversed, it was abrogated by the Circuit
22    Court.  But what this Court does know is what the DC Court
23    of Appeals ordinarily does do and as it did in Mann itself
24    when it was looking at the issues that were raised in the
25    Mann case that was decided in 2016.  For example, in
```

35

1  footnote 31, it did an analysis of what Colorado has done.

2  It also talked about what other states have done.  For

3  example, the Mann case said other -- the Appellate Court,

4  said other states have adopted similar approaches.

5  California's Anti-SLAPP statute, which requires a showing

6  that there is a probability that the plaintiff will prevail

7  on the claim has been interpreted as requiring the plaintiff

8  to state and substantiate a legally sufficient claim, et

9  cetera. I am not going to cite the full language, because,

10  obviously, there was a really different issue that was being

11  contested in Mann, separate and apart from what is the

12  really contested issue here.  The point being that to the

13  extent that this DC Court of Appeals has not specifically

14  ruled on the legal issue that is facing this trial Court,

15  this Court does look to other jurisdictions where this Court

16  finds language to be similar, although not identical.  The

17  Court concedes that and plaintiff makes that point.  But I

18  found the language of the California Anti-SLAPP statute to

19  be sufficiently similar.  And the amount of litigation on

20  Anti-SLAPP challenges at the California courts to be of such

21  volume that this Court did find California court

22  interpretations of California's Anti-SLAPP statute to be

23  beneficial and persuasive, recognizing again it is not

24  identical language.  But it was similar enough that this

25  Court did look to California law to be of help to this Court

36

1    in terms of trying to determine what the DC Court of Appeals

2    ultimately, would interpret.  Obviously, the DC Court of

3    Appeals is the only ones who can tell me, ultimately, how

4    they would interpret it.  All I can do is do my best to make

5    a proper interpretation and then the Court of Appeals can

6    instruct this Court whether it got it right or got it wrong.

7              So the Court just -- this Court just wanted to

8    highlight a couple of issues related to the burden and the

9    California law because those were matters that I had not

10   focused on extensively in preparing for today's hearing.

11             All right.  Give me just a moment.

12             So turning first to whether the defendant PCPC,

13   who is the party who has filed this special motion to

14   dismiss has made a prima facie showing that the claim at

15   issue arises from an act in furtherance of the right of

16   advocacy on issues of public interest, the Court focuses

17   first on -- while the Court understands that full phrase

18   must be analyzed, much of the debate, both in the briefs and

19   in the oral arguments, focused on the definition of "on

20   issues of public interest."  And as I just a moment ago

21   explained, since the DCCA has not yet ruled on the specific

22   issue, this Court -- our statute when looking at the

23   committee report has been modeled after Anti-SLAPP statutes

24   in other jurisdictions.  And the Court -- this Court found

25   California's Anti-SLAPP statute to be sufficiently similar

1   to provide this Court some analysis that this Court found to

2   be helpful.  So I turned to the California courts for

3   guidance on the issue, finding the language to be similar

4   and similar enough to provide guidance.  In Choose Energy

5   versus American Petroleum Institute 87 F.Supp.3d 1218,

6   Northern District of California 2015, the US District for

7   the Northern District of California held that the defendant

8   trade association's conduct fell within the protection of

9   Anti-SLAPP because its conduct was noncommercial in nature

10  and addresses energy policy, an issue that is currently the

11  subject of pending legislative efforts and one of public

12  concern.  The Court further noted that an issue of public

13  interest is an issue in which the public is interested.  In

14  LA Taxi Cooperative Inc. versus Independent Taxi Owners'

15  Association of Los Angeles, 239 Cal.App.4th at 918, the

16  Court held that commercial speech about a specific product

17  or service is not a matter of public interest within the

18  meaning of the Anti-SLAPP statute even if the product

19  category is the subject of public interest and the products

20  are regulated by public agencies.  That was citing to

21  Consumer Justice Center versus TriMedica International, 107

22  Cal.App4th at 595.

23          In this case, the LA Taxi case, the Court found

24  that commercial speech was not protected by the Anti-SLAPP

25  statute, because it was about a specific taxicab company,

1    not general public transportation by taxi companies.  As the

2    Court has listened very carefully to each side of the

3    argument, it really -- plaintiff's arguments focused

4    primarily on this -- call it logical thinking which is if

5    the trade association is representing members and the

6    members have commercial interests, therefore the Court must

7    conclude that the trade association is a commercial

8    interest, as opposed to a public interest.  However, the

9    Court distinguishes between when a trade association is

10   promoting a specific product or the benefits of a specific

11   product versus when a trade association is speaking more

12   generally about products and the health and safety of those

13   products as opposed to a specific commercial product named.

14         The Court does find in this case that PCPC has

15   made a prima facie showing that its alleged acts were made

16   in furtherance of the right of advocacy on issues of public

17   interest.  So I am focusing now on the public interest

18   component.  This is because plaintiff's complaint does not

19   allege that PCPC made any representations regarding a

20   particular product, only about the safety of talc in

21   general.  Further, defendant PCPC is a nonprofit trade

22   association.  It does not manufacture, design or sell any

23   products.  As a result, PCPC does not have, this Court

24   concludes, a commercial interest to protect.  While

25   plaintiff argues that PCPC does represent the commercial

1   organizations, that is Johnson & Johnson and Imerys, which

2   are profit-seeking corporations, this Court finds that

3   PCPC's own speech is not commercial in nature.  Further,

4   PCPC's alleged acts fit squarely within the plain meaning of

5   the statute of issues of public interest.  The statute

6   defines public interest to mean, an issue related to health

7   or safety.  Here, the safety of talc is clearly an issue

8   related to health or safety.

9          I analyzed the public interest component first,

10  because I actually think that was of most import in terms of

11  the debate between the parties.  That, obviously, is the

12  issue that would need to be resolved by the Court of Appeals

13  should this matter be appealed.  All of the issues would

14  need to be resolved, but that one is clearly an issue of

15  first impression.

16         The Court now moves backwards in terms of the --

17  whether it is the -- this is an issue that arises from an

18  act in furtherance of the right of advocacy.  I took it a

19  little bit out of order, just so that the Court could

20  address the most contentious issue first.  And now I turn to

21  the first part.

22         In the briefs, the Court would conclude that the

23  plaintiff concedes that if PCPC's advocacy was based on

24  issues of public interest rather than on issues of private

25  commercial interest, then at least some of the advocacy of

1   PCPC would meet this element.  Although, in its briefs,

2   plaintiff further argues that statements and actions among

3   PCPC and its members, the other defendants, would not meet

4   the element.

5            The statute defines act in furtherance of the

6   right of advocacy on issues of public interest in three

7   ways, as the parties have noted.  One, a written or oral

8   statement made in connection with an issue under

9   consideration or review by a legislative or judicial body or

10  any other official proceeding authorized by law.  This is

11  under the section 16-5501(1)(A)(i).  Here, the complaint

12  alleges that PCPC formed the talc interested party task

13  force, a lobbying group regarding the safety of talc in

14  response to a study regarding the safety of talc and that

15  PCPC submitted scientific reports to government agencies.

16  Defendant argues that this allegation clearly constitutes an

17  act in furtherance of the right of advocacy in accordance

18  with the first potential definition of what qualifies and

19  the Court agrees.  The Court finds that the alleged act

20  meets the definition as PCPC submitted reports to government

21  agencies.

22           The Court looks at the second manner in which it

23  might be established that the issue arises from an act in

24  furtherance of the right of advocacy, a written -- that is

25  number two, a written or oral statement made in a place open

1    to the public or public forum in connection with an issue of

2    public interest.  This is section 16-5501 (1)(A)(ii).  The

3    complaint alleges that PCPC released information regarding

4    the safety of talc to the public.  The defendant argues that

5    this constitutes an act in furtherance of the right of

6    advocacy.  Under the second definition, the Court does agree

7    with defendant.  The Court finds that the alleged acts meet

8    the definition, as PCPC did release this information about

9    the safety of talc to the public.

10            Looking at the third potential way that this part

11   of the element can be established, any other expression or

12   expressive conduct that involves petitioning the government

13   or communicating views to members of the public in

14   connection with an issue of public issues.  The complaint

15   alleges PCPC petitioned the government and communicated with

16   the public regarding the safety of talc.  The defendant

17   argues this is an act in furtherance of the right of

18   advocacy.  Under this third catchall definition, the Court

19   agrees, PCPC's actions fall within the catchall definition.

20   So under any of the three, the Court finds that plaintiff

21   meets the elements.  The Court finds that the allegations in

22   plaintiff's complaint fit within the definition of act in

23   furtherance of the right of advocacy.  And further having

24   found that they are on issues of public interest, I find

25   that the entire prima facie showing has been established by

1    the plaintiff.  While plaintiff does argue both in her

2    briefs and oral arguments and in her complaint that PCPC and

3    the other defendants acted in concert to collectively defend

4    talc use and that these statements, in which they were

5    directed to the other defendants, that is, PCPC's statements

6    to the other defendants, that those would not be acts in

7    furtherance of a right of advocacy.  The plaintiff fails to

8    show what these statements were or how they would further

9    her underlying claims.  This Court find that plaintiff's

10   additional argument fails.

11            This Court, in light of the full analysis of the

12   elements that are required for the prima facie showing,

13   which is the plaintiff's burden initially, this Court does

14   conclude that the prima facie showing that a claim -- that

15   the claim at issue arises from an act in furtherance of the

16   right of advocacy on issues of public interest has been met.

17   The burden has been met by the plaintiff.  That brings the

18   Court to then the motion shall be granted, unless the

19   responding party demonstrates that the claim is likely to

20   succeed on the merits, in which case the motion shall be

21   denied.

22            So the -- going back to the Mann case for a

23   moment -- again, citing to the Mann case, 2016 DC.App. Lexis

24   435, decided on December 22nd, 2016, the Court of Appeals

25   said that we conclude that in considering a special motion

1   to dismiss, the Court evaluates the likely success of the

2   claim by asking whether a jury properly instructed on the

3   applicable legal and constitutional standards could

4   reasonably find that the claim is supported in light of the

5   evidence that has been produced or proffered in connection

6   with the motion.   This standard achieves the Anti-SLAPP

7   Act's goal of weeding out meritless litigation by ensuring

8   early legal review of the legal sufficiency of the evidence,

9   consistent with First Amendment principles while preserving

10  the claimant's right to a jury trial.   The Court also said

11  that our analysis begins with the language of the statute,

12  which requires that to prevail in opposing a special motion

13  to dismiss, the opponent must demonstrate that the claim is

14  likely to succeed on the merits, as neither the phrase nor

15  any of its components is defined in the statute, we look to

16  the language of the statute by itself to see if the language

17  is plain and admits of no more than one meaning.   Although

18  we can be confident that on the merits refers to success on

19  the substance of the claim, the meaning of the requirement

20  that the opponent demonstrate that the claim is likely to

21  succeed is more elusive.   Use of the word demonstrate

22  indicates that once the burden has shifted to the claimant.

23  The statute requires more than mere reliance on allegations

24  in the complaint and mandates the production or proffer of

25  evidence that supports the claim.   This interpretation is

 1    supported by another provision in the act, section
 2    16-5502(C) that states discovery upon the filing of a
 3    special motion to dismiss until the motion has been disposed
 4    of, unless it appears likely that targeted discovery will
 5    enable the plaintiff to defeat the motion and that the
 6    discovery will not be unduly burdensome.  If evidence were
 7    not required to successfully oppose a special motion to
 8    dismiss under section 16-5502(B), there would be no need for
 9    a provision allowing targeted discovery for that purpose.
10    Moreover, unless something more than argument based on the
11    allegations in the complaint is required, the special motion
12    to dismiss created by the Act would be redundant in light of
13    the general availability in all civil proceedings,
14    regardless of the nature of the claim of motions to dismiss
15    under Rule 12(B)(6).
16              The precise question the Court must ask,
17    therefore, is whether a jury properly instructed on the law,
18    including any applicable heightened fault and proof
19    requirements could reasonably find for the claimant on the
20    evidence presented.  So the Court turns to the claims here,
21    that is, the -- because the burden now shifts to whether the
22    responding party has demonstrated that the claim is likely
23    to succeed on the merits, as I have defined it by the Court
24    of Appeals, how the Court of Appeals tells this Court how I
25    must analyze it.  The plaintiff here must offer evidence on

1   the negligence claim, that is the first claim, of the

2   existence of a duty, violation of a standard of care, and

3   injury resulting as a proximate cause of the violation.

4   Here, plaintiff alleges that PCPC voluntarily undertook a

5   duty of care to plaintiff by promulgating standards, norms

6   and bylaws that govern control or inform the manufacturing,

7   design, labeling of its member companies.  That is the

8   complaint, paragraph 79.  Plaintiff further alleges that

9   PCPC had the means and authority to control the safety,

10  standards of the other defendants but breached its duty by

11  failing to ensure that they complied with the standards.

12  Defendant argues that the allegations are unsupported and

13  the Court agrees with the defendant's position.

14          The plaintiff has failed to establish if the jury

15  was properly instructed on the law, including any applicable

16  heightened fault and proof requirements, the Court has to

17  ask could a jury reasonably find for the claimant on the

18  evidence presented?  Here, the plaintiff has failed to

19  establish that PCPC had any duty of care to her.

20  Furthermore, defendant submits an affidavit by showing that

21  PCPC has no authority to regulate its members and thus it

22  could not have prevented the sale of products.  Plaintiff

23  presents nothing to counter that.  Using the standard from

24  the Mann decision, the Court finds that on the claim of

25  negligence a jury properly instructed on the law could not

1    reasonably find for the claimant on the evidence presented.

2            Turning to the fraud claim.  Plaintiff must offer

3    evidence establishing, one, a false representation; two, in

4    reference to a material fact; three, made with knowledge of

5    its falsity; four, with intent to deceive; and, five, action

6    is take in reliance upon representation.  Plaintiff has

7    failed to address the specific elements and how she would

8    succeed on the merits.  Defendant has argued both its

9    actions were protected under the First Amendment under

10    Noerr-Pennington doctrine and, further, plaintiff has no

11    evidence that defendant made any representations with the

12    knowledge of its falsity and is unlikely to have any

13    evidence that she relied on statements made by PCPC prior to

14    using talc.  The Court agrees that plaintiff has not put

15    forward sufficient evidence on the two elements of fraud

16    highlighted by defendant to establish a likelihood of

17    success on the fraud claim, specifically that there needs to

18    be sufficient evidence where a jury properly instructed on

19    the law, could reasonably find for the claimant on evidence

20    presented on the issue of the element of -- that PCPC made

21    with knowledge of its falsity, whatever statement it was.

22    And there is not sufficient evidence that a reasonable juror

23    could find for the claimant on that element.  And, further,

24    there is not sufficient evidence presented by the plaintiff

25    on the element where a reasonable juror could -- a jury

1   could reasonably find for the claimant on the element of --

2   that action was taken in reliance upon the representation,

3   by -- that is, action taken by the plaintiff in reliance

4   upon the representation by defendant PCPC.  So the Court

5   finds using the standard taken from Mann that a jury

6   properly instructed on the law, could not reasonably find on

7   the fraud claim for the claimant on the evidence presented.

8         This brings the Court to the conspiracy claim.

9   Plaintiff must offer evidence establishing an agreement

10   between two or more persons to participate in an unlawful

11   act or in a lawful act in an unlawful manner, an injury

12   caused by an unlawful overt act or performed by one of the

13   parties to the agreement, pursuant to and in furtherance of

14   the common scheme.  In addition, civil conspiracy depends on

15   the performance of some underlying tortious act.  It is thus

16   not an independent action.  It is rather a means for

17   establishing a vicarious liability for the underlying tort.

18         Plaintiff has failed to address the specific

19   elements of conspiracy.  Defendant argues plaintiff cannot

20   present any admissible evidence that PCPC either performed

21   an unlawful act or a lawful act in an unlawful manner or

22   reached an agreement with one or more of the other

23   defendants, which was part of a common scheme for one of the

24   codefendants to commit an unlawful overt act against the

25   plaintiff.  The Court agrees with the defendant.  Plaintiff

48

1    has not presented sufficient evidence on the conspiracy

2    claim to establish a likelihood of success on the merits.

3    In other words, should a -- if a jury properly instructed on

4    the law were presented with the evidence that the plaintiff

5    has presented to this Court at this stage of this motion,

6    the jury could not reasonably find for the claimant on the

7    claim of conspiracy.

8             In essence, in plaintiff's brief, it just seems to

9    have foregone any argument on these points on the issue of

10   likelihood of success.  But the Court is obligated, in my

11   opinion, to go through the entire analysis.  Instead

12   plaintiff argues that she would be prejudiced without

13   additional limited discovery as provided for under the Act,

14   which, the Act does clearly provide that when it appears --

15   and this is under 16-5502(C)(2), when it appears likely that

16   targeted discovery will enable the plaintiff to defeat the

17   motion and that the discovery will not be unduly burdensome,

18   the Court may order that specified discovery be conducted.

19   Such an order may be conditioned upon the plaintiff paying

20   any expenses incurred by the defendant in responding to such

21   discovery.  Here, plaintiff -- it is this Court's assessment

22   that plaintiff has not demonstrated what targeted discovery

23   would be needed to defeat the motion.  Further, defendant

24   states and plaintiff not only did not oppose the statement

25   in its briefs but in court acknowledged that plaintiff has

1    already received thousands upon thousands of pages of

2    discovery in other similar litigation and even in this very

3    litigation.   And despite having received all of that

4    discovery, there doesn't appear to this Court to be any

5    demonstration by the plaintiff of what additional targeted

6    discovery would assist the plaintiff in defeating the

7    motion.   Seeing that the plaintiff did not oppose the

8    defendant's arguments that it could not succeed under the

9    claims, but instead requested additional discovery, the

10   Court finds that plaintiff cannot establish likelihood of

11   success on the underlying claims and the Court is not

12   ordering additional discovery as plaintiff has not

13   demonstrated what targeted discovery would be necessary to

14   defeat the motion, nor that additional discovery will likely

15   enable the plaintiff to defeat the motion.

16            So looking at the statute as whole, again, the

17   Court first found that the plaintiff did establish its --

18   and presented its prima facie showing that the claim at

19   issue arises from an act in furtherance of the right of

20   advocacy on issues of public interest, the motion to dismiss

21   must be granted unless the responding party demonstrates

22   that the claim is likely to succeed on the merits.   I have

23   found that the responding party has not demonstrated that

24   the claim is likely to succeed on the merits.   So it is

25   mandatory that the motion be granted.   The exception being

1  if it appears likely that targeted discovery will enable the

2  plaintiff to defeat the motion and that the discovery will

3  not be unduly burdensome, the Court may order that specified

4  discovery be conducted, however, this Court has concluded

5  that it will not approve targeted discovery finding for the

6  reasons that I have already stated.  That presents the Court

7  with the one outcome that the statute tells me to do and

8  that is I am granting the special motion to dismiss by PCPC.

9          So let's turn briefly in light of that to the

10  question of attorneys' fees.  I will take brief argument on

11  that.  I will hear from PCPC first.

12          MR. BILLINGS-KANG:  Thank you, Your Honor.  I

13  think that point is very clear in terms of a presumptive

14  award of attorneys' fees.  It is mandated by the statute and

15  that is a question that was considered by the Court of

16  Appeals in Doe against Burke, not the 2014 opinion, but the

17  2016 opinion, in which the Court interpreted the statute to

18  entitle the moving party who prevails to a presumptive award

19  of reasonable attorney fees on request.  And, Your Honor, we

20  have made that request respectfully.  And we would ask that

21  the Court grant that motion.  Thank you.

22          THE COURT:  All right.

23          Plaintiff.

24          MR. LYONS:  Your Honor, there is a provision

25  that -- there is presumptive award of attorney fees in cases

51

1    in which motion to dismiss is granted, unless special

2    circumstances exist.  I do believe -- and plaintiff's

3    position is that this is a special circumstance.  This is an

4    issue, as Your Honor mentioned, of first impression, has not

5    been litigated before.  And plaintiff in filing its

6    complaint had no idea that a motion to dismiss based on the

7    Anti-SLAPP statute would be filed, did not anticipate this

8    issue.  And we are not specifically filing this lawsuit with

9    the SLAPP provisions in mind.  And we do believe there are

10   special circumstances given that this is the first time this

11   issue has been brought before the Court and a matter of

12   first impression and that attorneys' fees should not be

13   granted in this case.

14              THE COURT:  Okay.

15              MR. LYONS:  Thank you, Your Honor.

16              THE COURT:  So the Court notes the standards the

17   attorneys cited to is the same standard the Court has

18   referenced in making a decision here, DC Code 16-5504, "The

19   Court may award a moving party who prevails in whole or in

20   part on a motion brought under section 16-5502 or section

21   16-5503, the cost of litigation, including reasonable

22   attorneys' fees."  And cited to by defendant, Doe v. Burke

23   and the language referenced by plaintiff, that Court has

24   held that DC Code 16-6504(A) entitles the moving party who

25   prevails on a special motion to quash or dismiss to a

1    presumptive award of reasonable attorneys' fees on request

2    unless special circumstances would render such an award

3    unjust.

4            In the Doe case itself, the Court of Appeals did

5    not find special circumstances to render such an award

6    unjust, despite noting that the losing parties' attorneys

7    were employed by a public interest organization, that the

8    losing party was represented pro bono and that the losing

9    party had rejected an earlier settlement offer.  The Court

10   awarded the prevailing party its attorneys' fees.  So I have

11   heard the argument by plaintiff that this is a matter of

12   first impression, but this Court does not find that that

13   falls under this Court's interpretation of what would

14   constitute special circumstances.  And so the Court is going

15   to follow the presumptive nature of the award and I am

16   granting an award of reasonable attorneys' fees, since it

17   has been requested by defendant.  And defendant, you can

18   have -- how many -- do you need ten days?

19           MR. BILLINGS-KANG:  Ten days, Your Honor, is

20   sufficient.

21           THE COURT:  Ten days from today to make a filing

22   so that the Court can determine whether what you are

23   requesting are reasonable attorney fees.

24           All right.  As you noted, I do have a court

25   reporter.  I know you have been writing furiously, but if

1    anyone needs the transcript, I have asked her to be here in

2    light of the unique nature of my ruling.  Okay.

3            Anything further from plaintiff at this time?

4            MR. LYONS:  Nothing further, Your Honor.

5            THE COURT:  Anything further from defendant?

6            MR. BILLINGS-KANG:  Nothing further, Your Honor.

7    Thank you very much.

8            THE COURT:  Thank you.  Parties are excused and

9    thank you for accommodating my schedule.

10           MR. BILLINGS-KANG:  Thank you, Your Honor.

11                    (Proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        CERTIFICATE OF REPORTER

2           I, Sherry T. Lindsay, an Official Court Reporter

3   for the Superior Court of the District of Columbia, do

4   hereby certify that I reported, by machine shorthand, in my

5   official capacity, the proceedings had and testimony

6   adduced, upon the hearing in the case of DENISE CECELIA

7   SIMPSON, et al, V. JOHNSON & JOHNSON, et al, Civil Action

8   No. 2016 CA 1931 B, in said Court, on the 13th day of

9   January 2017.

10          I further certify that the foregoing 54 pages

11  constitute the official transcript of said proceedings, as

12  taken from my computer realtime display, together with the

13  audio sync of said proceedings.

14          In witness whereof, I have hereto subscribed my

15  name, this the 18th day of January 2017.

16

17

18

19

20

21

22

23

24          Sherry T. Lindsay
            Official Court Reporter

25

55