# EXHIBIT E5

## Page 1

IN THE TERRITORIAL COURT OF THE VIRGIN ISLANDS   DIVISION OF ST. CROIX

KELVIN MANBODH,            )
      Plaintiff,    )
      vs.              ) Case No. 324/1997
)
HESS OIL VIRGIN ISLANDS CORPORATION;)AMERADA HESS CORPORATION; BORINQUEN )
INSULATION COMPANY, INC.; RAYTHEON )ENGINEERS & CONSTRUCTORS, INC.,   )
Individually and as successor in  )interests to LITWIN CORPORATION and )
LITWIN PAN-AMERICAN CORPORATION;   )OWENS-CORNING FIBERGLAS CORPORATION;)
RARITAN SUPPLY COMPANY, Individually)and as successor in interests to   )
BRIDGE SUPPLY COMPANY; MADSEN &    )HOWELL, INC.; UNION PUMP COMPANY;  )
PITTSBURGH CORNING CORPORATION;    )Individually and as successor to   )
UNARCO INDUSTRIES; GARLOCK, INC.;  )GAF CORPORATION, Individually and as)
successor to RUBEROID; FLEXITALLIC )GASKET COMPANY; ARMSTRONG WORLD    )
INDUSTRIES; CERTAINTEED PRODUCTS   )CORPORATION; FOSTER WHEELER       )
CORPORATION, Individually and as   )successor in interests to         )
FORTY-EIGHT INSULATIONS, INC.,     )3M a/k/a MINNESOTA MINING &       )
MANUFACTURING COMPANY; WESTINGHOUSE )ELECTRIC CORPORATION; INGERSOLL RAND)
CORPORATION; ELLIOTT COMPANY, a   )division of CARRIER; RIGGERS AND  )
ERECTORS INTERNATIONAL, INC.; VIRGIN)ISLANDS INDUSTRIAL MAINTENANCE    )
CORPORATION; DRESSER INDUSTRIES,  )INC., Individually and as successor )
in interests to PACIFIC PUMP, INC.; )
and SHELL OIL CORPORATION;         )
                )
      Defendants.    )

THE ORAL DEPOSITION OF WILLIAM E. LONGO, PH.D.

## Page 2

1  LITWIN CORPORATION and      )LITWIN PAN AMERICAN CORPORATION   )
2                 )    Third-Party Plaintiffs, )
3                 )    vs.            )
4                 )UNIVERAL OIL PRODUCTS COMPANY;   )
5  CHICAGO BRIDGE AND IRON, N.V.,   )individually and as successor in  )
6  interest to CHICAGO BRIDGE AND IRON;)BIGELOW LIPTAK; A.P. GREEN       )
7  INDUSTRIES, INC.; PORTILLA    )CORPORATION; RESCO PRODUCTS, INC.; )
8  DRESSER INDUSTRIES, INC.,     )individually and as successor in  )
9  interest to HARBISON-WALKER   )REFACTORIES COMPANY,         )
10                )
11     Third-Party Defendants. )
12     THE ORAL DEPOSITION OF WILLIAM E. LONGO, PH.D.
13  was taken on the 28th day of May, 2002, at the Atlanta
14  Airport Marriott, 4711 Best Road, College Park, Georgia,
15  between the hours of 10:10 a.m. and 1:50 p.m. pursuant to
16  Notice and Federal Rules of Civil Procedure.
17     _____
18     Reported by:
19     Angela L. Klein, RPR
20     Registered Professional Reporter
21     Caribbean Scribes, Inc.
22     2132 Company Street, Suite 3
23     Christiansted, St. Croix
24     U.S. Virgin Islands 00820
25     (340) 773-8161

## Page 3

1            A-P-P-E-A-R-A-N-C-E-S
2   For the Plaintiffs:
3       Law Offices of
4       Richardson, Patrick, Westbrook & Brickman, L.L.C.
5       174 East Bay Street
6       Charleston, South Carolina  29402
7       By: Christian Hartley
8   For Defendants HOVIC and Amerada Hess:
9       Law Offices of
10      Bryant, Barnes & Moss
11      47 King Street
12      Christiansted, St. Croix
13      U.S. Virgin Islands  00820
14      By: Britain H. Bryant
15      Law Offices of
16      Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
17      33 Washington Street, 18th Floor
18      Newark, New Jersey  07102
19      By: Carolyn O'Connor (By Telephone)
20  For Defendant Borinquen Insulation Company:
21      Law Offices of
22      Duane Morris LLP
23      One Liberty Place
24      Philadelphia, Pennsylvania  19103-7396
25      By: Sharon Caffrey

## Page 4

1   For Defendant Litwin:
2       Law Offices ofHymes & Zebedee
3       1131 King Street, Suite 309Christiansted, St. Croix
4       U.S. Virgin Islands  00820
5       By: James L. Hymes, III
6       Law Offices ofW. Mark Wilczynski
7       P.O. Box 1150Charlotte Amalie, St. Thomas
8       U.S. Virgin Islands  00804
9       By: W. Mark Wilczynski
10  For Defendants Fluor and Resco:
11      Law Offices of
12      Blaire & Cole, PA2801 Ponce de Leon Boulevard
13      Coral Gables, Florida  33134
14      By: Susan J. Cole
15  For Defendant Universal Oil Products Company:
16      Law Offices of
17      Hunter, Cole & Bennett1138 King Street
18      Christiansted, St. CroixU.S. Virgin Islands  00820
19      By: Richard H. Hunter
20
21  For Defendant John Crane, Inc.:
22      Law Offices ofO'Connell & O'Sullivan
23      217 N. McLean Boulevard, Suite 2CElgin, Illinois  60123
24      By: John O'Sullivan
25

Page 5

```
 1   For Defendant Parson Corporation:
 2   Law Offices ofStacy L. White
 3   1112 King StreetChristiansted, St. Croix
 4   U.S. Virgin Islands  00820
 5   By: Stacy L. White
 6   For Defendant Tuthill Corporation:
 7   Law Offices of
 8   Dudley, Clark & Chan9720 Estate St. Thomas, Suite 1
 9   Charlotte Amalie, St. ThomasU.S. Virgin Islands  00802
10   By: Erik E. Woodbury
11
12   For Defendant Garlock, Inc.:
13   Law Offices ofGoldfein & Hosmer
14   1600 Market Street33rd Floor
15   Philadelphia, Pennsylvania  19103
16   By: John A. Turlik
17   For Defendant Rubber & Gasket Company of Puerto Rico:
18   Law Offices of
19   Wilfredo A. Geigel20 Anchor Way
20   Gallows Bay, St. CroixU.S. Virgin Islands  00824
21   By: Eugenio Geigel
22
23
24
25
```

Page 6

```
 1   For Defendant Elliott Company:
 2   Law Offices ofStryker, Duensing, Casner & Dollison
 3   Upper Level Drake's PassageCharlotte Amalie, St. Thomas
 4   U.S. Virgin Islands  00804
 5   By: Michael Fitzsimmons
 6   For Defendants Madsen & Howell, Inc. and CertainTeed:
 7   Law Offices of
 8   Pattie & Daley1104 Strand Street, Suite 204
 9   Christiansted, St. CroixU.S. Virgin Islands  00820
10   By: Richard E. Daley (By Telephone)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 7

```
 1
 2                    E-X-A-M-I-N-A-T-I-O-N
 3
 4                            Page
 5   Direct by Ms. Cole                8
 6   Cross by Mr. Bryant             100
 7   Cross by Mr. Geigel             106
 8   Cross by Ms. Caffrey            110
 9   Cross by Mr. Wilczynski          114
10   Redirect by Ms. Cole            115
11   Recross by Mr. Daley            116
12
13
14                    E-X-H-I-B-I-T-S
15
16   Exhibit No. 1 ....................9      Documents
17   Exhibit No. 2 ...................12      June 1, 1999
     Expert Report
18   Exhibit No. 3 ...................14      Curriculum Vitae
19   Exhibit No. 4 ...................49      Notice Of
     Deposition
20
21
22
23
24
25
```

Page 8

```
 1              WILLIAM E. LONGO, PH.D.,
 2      Called as a witness, having been first duly sworn,
 3              Testified on his oath as follows:
 4                   DIRECT EXAMINATION
 5   BY MS. COLE:
 6       Q.  Dr. Longo, before we get started, there are some
 7   folks here that have some objections that they want to place
 8   on the record.  So you can finish eating your cantaloupe, and
 9   we'll do the objections, and then we'll get started.
10              MS. CAFFREY:  This is Sharon Caffrey on behalf
11   of Borinquen Insulation Company.  Some time ago
12   Mr. Wilczynski on behalf of the defendants requested all the
13   background materials that Dr. Longo was going to reply upon
14   for his opinions today.
15              I received those materials in my office Friday
16   at approximately 11:00 a.m. for the first time, and it was
17   the day before a holiday weekend.  The box consisted of
18   ten pounds of material.  There were eight binders and nine
19   videos, and it was humanly impossible to get through all of
20   these materials.
21              In addition, I've already sent letters to
22   counsel objecting to what we view as an expansion of
23   Dr. Longo's originally designated testimony to include
24   products other than Certainteed gaskets and Unibestos.  We
25   believe it's in violation of the case management order and
```

2 (Pages 5 to 8)

Page 101

1   or you didn't receive it?
2       A.  I received it.  I have a degree that says Master
3   of Science and Engineering.
4           When I say completed the requirements, at the
5   University of Florida Material Science Department, once -- if
6   you -- if you are able to pass your Ph.D. qualifiers, which
7   essentially is three days of examination of all the graduate
8   level courses taught in that department, they bestow a
9   Master's on you.
10          So it's not a Master's in some sense in which
11  people have to write a thesis.
12      Q.  All right.  What did you do between June of 1977
13  when you got your BS at the University of Florida, and I
14  understand all of your schooling is there, what did you do
15  until 1983?
16      A.  I was in school.
17      Q.  Studying for your Master's or your Ph.D.?
18      A.  Well, both.
19      Q.  Did you work at all?
20          Did you work at all during that period?
21      A.  I worked in the Material Science Department as a
22  graduate assistant.
23      Q.  Okay.  No outside work?
24      A.  No, sir.
25      Q.  Have you had any -- I'll withdraw the question.

Page 102

1           What are your billing rates for this case?
2       A.  Two seventy-five an hour for deposition and trial
3   testimony, a hundred and seventy-five an hour for consulting,
4   and a hundred and fifty dollars an hour for travel.
5       Q.  You mean, you get a hundred and fifty-eight
6   dollars -- did you say a hundred and fifty-eight?
7       A.  A hundred and fifty.
8       Q.  Oh, a hundred and fifty dollars an hour for
9   driving your car?
10      A.  Driving my car, sitting on a plane, in an
11  airport, whatever.
12      Q.  And if this -- and how much an hour for your
13  deposition for sitting here answering these questions?
14      A.  Two seventy-five an hour.
15      Q.  And if you come down for trial in this case, what
16  is your trial testimony per hour?
17      A.  Two seventy-five.
18      Q.  Okay.  And then do you charge for that -- would
19  you charge these plaintiffs' lawyers two seventy-five an hour
20  to fly down there, too, or do you get the hundred and fifty
21  dollar an hour driving time?
22      A.  They get the hundred and fifty dollars an hour
23  drive time.
24      Q.  Okay.  I haven't seen your bill in this case --
25  any of your billing records.  Did you bring those with you

Page 103

1   today?
2       A.  No, sir.
3       Q.  You've never submitted those in this case, have
4   you?
5       A.  I'm sure back in 1999 I did.
6       Q.  They weren't attached with your report or your
7   resume.  I have checked with the other lawyers here.  None of
8   us got them.
9           Do you have an idea what you billed to these
10  plaintiffs' lawyers in this case to date?
11      A.  To do that report -- I don't have any independent
12  recollection.  But to do that report probably took two or
13  three hours at a hundred and seventy-five an hour.
14      Q.  Okay.  I didn't see any type of case log with
15  your report or your CV.
16          Do you have a case log of where you've
17  testified in depositions and trials listing the state or the
18  county, the court, who hired you, plaintiffs or defendants?
19      A.  I don't have any up-to-date one, no.
20      Q.  And you haven't submitted any in this case at
21  all, have you?
22      A.  No, sir.
23      Q.  In your CV, you have got an article -- by the
24  way, did you bring any of those articles with you other than
25  these reports you have that you list in your CV or you got a

Page 104

1   bunch of articles you either contributed to or co-authored?
2       A.  No, sir, I didn't.
3       Q.  Okay.  There's one on Page 3 of your CV that you
4   did which looks like a Roggli?
5       A.  Roggli.
6       Q.  Roggli.
7           The Mineral Fiber Content of Lung Tissue in
8   Patients with Environmental Exposures:  Household Contacts
9   vs. Building Occupants.
10      A.  Yes, sir.
11      Q.  What's that about?
12      A.  That's about some mesothelioma cases in which the
13  individuals had very, very low exposure, and these
14  individuals were household contacts, meaning somebody else
15  brought it into their house, and, also, they worked in
16  buildings that contained asbestos.  And we were looking at
17  the lung burden of how much asbestos was in the lungs of
18  these individuals and then compared it to occupational
19  exposures.
20      Q.  All right.  A minute ago in your testimony when
21  you were answering questions with Ms. Cole, I believe you
22  mentioned asbestos in schools.  What other kinds of buildings
23  and things have you found the asbestos in that people have
24  been exposed to?
25      A.  Well, just about every building built between the

Page 105

1   timeframe of about 1950 to 1972, '73 had some sort of
2   asbestos construction product in it.
3       Q.   Where in the buildings?
4       A.   Usually if it's a multi-story building it has
5   fireproofing during that timeframe that would be asbestos
6   there. If it's a school or an auditorium or a hospital or
7   courtroom or jail, you usually will have acoustical plasters
8   during that timeframe that had asbestos in it. Ceiling tiles
9   will have asbestos in it during that timeframe. Floor tiles,
10  thermal insulation on heating systems if they have
11  temperatures that run that range and joint compounds. Those
12  are, I'd say, the majority of what's found in buildings from
13  the fifties to '72.
14      Q.   In addition to that, have you done any work with
15  respect to the amount of exposure that people may get from
16  the asbestos fibers that they used to have in the brakes and
17  brake linings? Have you done any work in that?
18      A.   Yes.
19      Q.   Were any studies you did based upon any type of
20  exposure levels to people who had, say, mechanical garages or
21  worked in garages, anything like that?
22      A.   Yes. That's the studies we've done would be
23  mechanics who either changed brakes out, used compressed air
24  or did some sort of grinding on the brake shoes to fit the
25  contour back to the wheel drums.

Page 106

1       Q.   Is there -- as a result of the -- was there a
2   period in time as a result of mechanics and other people that
3   worked with brakes a lot being exposed -- a level of asbestos
4   in the air actually from people putting on brakes out in the
5   streets in cities where there's heavy congestion of traffic?
6       A.   There have been studies of what is generated from
7   brake systems out in the streets when they used to have brake
8   shoes, and most of the braking systems in automobiles are
9   closed-in systems, very little really escaped out on city
10  streets in my opinion.
11      Q.   **What other exposures -- household contacts would**
12  **people have other than those you've mentioned?**
13      A.   **Usually that's it.**
14      Q.   **Talcum powder that was used on babies, did some**
15  **of that contain asbestos?**
16      A.   **We've looked. We have not found it.**
17      Q.   **You're not aware of any?**
18      A.   **I'm not aware of us ever proving that talcum**
19  **powder had tremolite or anthophyllite.**
20          MR. BRYANT: I thank you, sir. I have no
21  further questions.
22              CROSS-EXAMINATION
23  BY MR. GEIGEL:
24      Q.   Good morning, Mr. Longo. I'm Eugenio Geigel. I
25  represent Rubber & Gasket Company of Puerto Rico.

Page 107

1           Doctor, do you consider yourself a scientist?
2       A.   Yes.
3       Q.   As part of your report, did you ever look at the
4   purchase orders of Harvey Aluminum or --
5       A.   No, sir.
6       Q.   -- any of the other --
7       A.   I have not.
8       Q.   In your report the one we've got on Page 3 the --
9   Page 2 -- I think it's Page 2 of the report, subtitled
10  William E. Longo, Ph.D. Qualifications, the fifth paragraph
11  reads: These tests were conducted to determine if
12  individuals performing routine work practices around
13  asbestos -- it goes on.
14          What do you consider to be routine work
15  practices?
16      A.   Hold on. I'm having trouble finding it.
17          MR. HARTLEY: Which paragraph?
18          MR. GEIGEL: The fifth paragraph.
19      A.   Well, routine work practices involving thermal
20  insulation is that individuals would have to do two things
21  routinely; handle the material to place it on systems and
22  from time to time cut the material.
23      Q.   (Mr. Geigel:) Nothing else?
24      A.   That's the only practices we measured.
25      Q.   Right below that in the next -- it's not a

Page 108

1   complete paragraph. It's the next -- would be the next
2   paragraph it reads: Dr. Longo will testify about the results
3   of these studies and provide testimony on how the routine use
4   and disturbance of asbestos-containing thermal insulation,
5   flat sheet gasket material -- and it goes on and on.
6           My question to you, sir, is what do you
7   consider to be routine use and disturbance of
8   asbestos-containing insulation?
9       A.   Routine use would be, of course, insulating
10  pipes, insulating boilers, insulating vessels to keep the
11  heat in. Also during that insulation, the cutting,
12  especially on vessels where you had to change the curvature
13  of the block, and also another routine use is its removal
14  during maintenance, such as pipe that needs to be fixed or a
15  steam line or a flange that has to be removed, thermal
16  insulation is typically removed.
17      Q.   Now, you are aware of federal regulations
18  regarding asbestos exposure, correct?
19      A.   Some of them, yes.
20      Q.   Are you aware of the state or territorial
21  regulations for asbestos?
22      A.   No.
23      Q.   What they are?
24      A.   No.
25      Q.   Would you say that some states normally comply

Page 109

1  but go beyond what federal regulations require?
2           MR. HARTLEY: Object to the form.
3       A. Again, I'm not that aware of the different
4  states, I'm more aware of the federals. I can't tell you if
5  the state regulations are as good as or better or worse. I
6  can't tell you.
7       Q. (Mr. Geigel:) All right. Are you familiar with
8  all types of gaskets?
9       A. Pretty much.
10      Q. Are you familiar with the difference of
11 manufacturing of gaskets?
12          MR. HARTLEY: Object to the form.
13      A. And again, let me back up. When you say all
14 types of gaskets, I'm mostly familiar with flat sheet gaskets
15 that contain asbestos, the Flexitallic-type gaskets. I'm not
16 familiar with every gasket that's been made, no.
17      Q. (Mr. Geigel:) Would you consider pulling
18 asbestos gaskets from shelves to be within your definition of
19 disturbance -- routine use and disturbance of asbestos?
20      A. Certainly the pulling of asbestos gaskets from
21 shelves is a routine use of the gaskets if they're on the
22 shelf and you have to pull them. The mere handling of an
23 asbestos gasket is not what I would term as a major
24 disturbance of the gasket. Unless you damage or cut or
25 fabricate, after you fabricate these gaskets or removal is

Page 110

1  where I believe the primary exposures are. I don't believe
2  handling asbestos-containing sheet gaskets gives much of an
3  exposure.
4           MR. GEIGEL: Thank you, sir.
5           MR. TURLIK: I pass.
6           MR. HYMES: No questions.
7           MR. WHITE: No questions.
8           MR. HUNTER: No questions.
9           MR. FITZSIMMONS: No questions.
10          MR. WOODBURY: No questions.
11          MS. CAFFREY: I have a few questions for you,
12 and I'm going to ask these questions based upon the report
13 that we have before us and subject to my prior objections.
14              CROSS-EXAMINATION
15 BY MS. CAFFREY:
16      Q. Dr. Longo, --
17      A. Yes.
18      Q. -- you have been precluded from testifying in at
19 least one jurisdiction of which I'm aware, have you not?
20      A. That's not true.
21      Q. Do you remember being precluded in Texas in the
22 In Re: Lamar County Asbestos Litigation?
23      A. I remember that my studies was precluded. If you
24 read the order, I was not personally precluded.
25      Q. So you were not -- you were not allowed to talk

Page 111

1  about your studies because they were considered to be by the
2  Court "junk science"; is that correct?
3       A. That's what Judge Levitts stated.
4       Q. How many times have you been precluded from
5  discussing your studies in court?
6       A. Once.
7           MR. DALEY: Sharon, could you get closer to
8  the microphone, please?
9           MS. CAFFREY: No, I can't.
10          MR. DALEY: That's better what you just said.
11          MS. CAFFREY: All right. I'll try to yell,
12 Rick.
13          MS. COLE: Turn up your hearing aid, Rick.
14          MR. DALEY: It's on ten.
15      Q. (Ms. Caffrey:) Have you been precluded -- in
16 addition to the In Re: Lamar County Case, have you been
17 precluded by other courts from using your videos at trial?
18      A. Oh, sure. I would estimate about five percent of
19 the time. The judge will rule that they're prejudicial and
20 inappropriate.
21      Q. And do you recall which courts or judges have
22 precluded your videos?
23      A. No, that's not something I keep score of.
24      Q. Am I correct that all of your studies or
25 simulations were done for litigation either directly when you

Page 112

1  were asked by counsel or something that you did to support
2  the theories on which you intended to testify?
3           MR. HARTLEY: Object to the form.
4       A. No, you're incorrect. I don't do any of these
5  studies for litigation.
6       Q. (Ms. Caffrey:) Well, you were hired by
7  counsel -- plaintiffs' counsel at least fifty percent of the
8  time to do the studies, correct?
9       A. Well, I think more or less -- I think that's
10 maybe in the ballpark. But we've been hired by plaintiffs'
11 counsel to do the studies, we've been hired by defense
12 counsel to do these studies. But each of these groups have
13 to agree that this data will be shared publicly one way or
14 the other. So I don't consider these for litigation. Some
15 of these studies have never been in litigation. I look at it
16 as research in this area.
17      Q. What defense counsel has hired you to do studies?
18      A. I can't talk about one that's -- we're talking
19 about -- I mean, one we'll do in the future. But we have
20 done a work practice study for Carborundum. Tom Tardy was
21 the defense attorney out of Mississippi.
22      Q. Anybody else?
23      A. That's the only one I can talk about right now.
24          Actually I've got two, two more that we're
25 talking to.

Page 117

1  couldn't hear your answer, what is SBR?
2      A.  Styrene Butidiene Rubber.
3      Q.  And all of the gaskets referred to in the report
4  that you have in front of you that was filed in this case
5  involved gaskets with that type of grinder?
6      A.  Yes, sir.
7      Q.  And, again, you don't have any specific
8  information about the work histories or the specific manner
9  in which either of the four plaintiffs whose cases are
10 scheduled for trial in November were exposed to
11 asbestos-containing products in the HOVIC Refinery, do you?
12     A.  I do not.
13         MR. DALEY:  I don't think I have anything
14 else.
15         MR. HARTLEY:  Anyone else on the telephone or
16 elsewhere?
17         MS. O'CONNOR:  No questions.
18      (Whereupon the deposition concluded
19            at 1:50 p.m.)
20
21
22
23
24
25

Page 118

1              C-E-R-T-I-F-I-C-A-T-E
2      I, ANGELA L. KLEIN, a Registered Professional
3  Reporter and Notary Public for the U.S. Virgin Islands,
4  Christiansted, St. Croix, do hereby certify that the
5  above-named witness, William E. Longo, Ph.D., was
6  first duly sworn to testify the truth; that said witness
7  did thereupon testify as is set forth; that the answers
8  of said witness to the oral interrogatories propounded by
9  counsel were taken by me in Stenotype and thereafter
10 reduced to typewriting under my personal direction and
11 supervision.
12     I further certify that the facts stated in the
13 caption hereto are true; and that all of the proceedings
14 in the course of the hearing of said deposition are
15 correctly and accurately set forth herein.
16     I further certify that I am not counsel, attorney or
17 relative of either party, nor financially or otherwise
18 interested in the event of this suit.
19     IN WITNESS WHEREOF, I have hereunto set my hand as
20 such Registered Professional Reporter and Notary Public
21 on this the 8th day of July, 2002, at Christiansted,
22 St. Croix, United States Virgin Islands.
23
24         _____
           ANGELA L. KLEIN, RPR
25

30 (Pages 117 to 118)