# EXHIBIT E7

Page 1

VOLUME I

PAGES: 1-198

EXHIBITS: 1-9

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.    Superior Court Department
of the Trial Court
No. 00-6030

**************************************************

CAROL A. STARKWEATHER,         *
              Plaintiff,        *
                                *
       vs.                      *
                                *
ACandS, INC., et al,            *
              Defendants.       *

**************************************************

DEPOSITION OF DR. WILLIAM E. LONGO, a witness called on behalf of the Defendants, taken pursuant to the applicable provisions of the

Page 2

1   APPEARANCES:
2
    Representing the Plaintiff:
3       LAW OFFICE OF MICHAEL C. SHEPARD, P.C.
        205 Portland Street
4       Boston, MA  02114
        BY:  MICHAEL C. SHEPARD, ESQ.
5       (617) 742-1121  (617) 742-5155 (Fax)
6
    Representing ACandS, Inc., A.P. Green, Inc.,
7   Certainteed, Georgia-Pacific, Pfizer, Quigley,
    Riley Stoker Corporation, and Union Carbide:
8       CETRULO & CAPONE
        2 Seaport Lane
9       10th Floor
        Boston, MA  02210
10      BY:  JENNIFER A. CREEDON, ESQ.
        (617) 217-5500  (617) 217-5200 (Fax)
11
12  Representing New England Insulation:
        CETRULO & CAPONE
13      2 Seaport Lane
        10th Floor
14      Boston, MA  02210
        BY:  KATHARINE S. PERRY, ESQ.
15      (617) 217-5500  (617) 217-5200 (Fax)
16
    Representing Amchem Products, Inc.:
17      CETRULO & CAPONE
        2 Seaport Lane
18      10th Floor
        Boston, MA  02210
19      BY:  TROY C. BAILEY, ESQ.
        (617) 217-5500  (617) 217-5200 (Fax)
20
21  Representing Eckel Industries:
        GOVERNO LAW FIRM, LLC
22      260 Franklin Street
        Boston, MA  02110
23      BY:  BRYNA ROSEN MISIURA, ESQ.
        (617) 737-9045  (617) 737-9046 (Fax)
24

Page 3

1   Representing Combustion Engineering:
        GOVERNO LAW FIRM, LLC
2       260 Franklin Street
        Boston, MA  02110
3       BY:  JENNIFER A.P. CARSON, ESQ.
        (617) 737-9045  (617) 737-9046 (Fax)
4
5   Representing Terex, American Crane, and Koehring:
        GOVERNO LAW FIRM, LLC
6       260 Franklin Street
        Boston, MA  02110
7       BY:  DAVID M. GOVERNO, ESQ.
        (617) 737-9045  (617) 737-9046 (Fax)
8
9   Representing Eastern Refractories Company:
        HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
10      111 Devonshire Street, 8th Floor
        Boston, MA  02109
11      BY:  JOHN R. FELICE, ESQ.
        (617) 728-0050  (617) 728-0052 (Fax)
12
13  Representing Boston Edison:
        McDONOUGH, HACKING & NEUMEIER, LLP
14      11 Beacon Street, Suite 1000
        Boston, MA  02108
15      BY:  CHRISTOPHER W. COSTELLO, ESQ.
        (617) 367-0808  (617) 367-8307 (Fax)
16
17  Representing Paul E. Dutelle & Company, Inc.:
        ANDERSON, ADLER, COHEN & HARVEY
18      230 Congress Street
        Boston, MA  02110
19      BY:  JENNIFER BOYD HERLIHY, ESQ.
        (617) 423-6674  (617) 423-7152 (Fax)
20
21  Representing Dresser Industries, Inc.:
        GIDLEY, SARLI & MARUSAK
22      One Turk's Head Place, Suite 900
        Providence, RI  02903
23      BY:  DENNIS GRIECO, ESQ.
        (401) 274-6644  (401) 331-9304 (Fax)
24

Page 4

1   Representing Uniroyal, Inc.:
        NIXON PEABODY, LLP
2       101 Federal Street
        Boston, MA  02110
3       BY:  DENNIS M. DUGGAN, JR., ESQ.
        (617) 345-1000  (617) 345-1300 (Fax)
4
5   Representing Manitowoc Company, Inc., Manitowoc
    Cranes, Inc., and Bucyrus International, Inc.:
6       LECOMTE, EMANUELSON, MOTEJUNAS & DOYLE
        Presidents Place, 1250 Hancock Street
7       Quincy, MA  02169
        BY:  FRANCIS M. LYNCH, ESQ.
8       (617) 328-1900  (617) 328-2030 (Fax)
9
    Representing Ingersoll-Rand and Link Belt:
10      LECOMTE, EMANUELSON, MOTEJUNAS & DOYLE
        Presidents Place, 1250 Hancock Street
11      Quincy, MA  02169
        BY:  RICHARD B. KIRBY, ESQ.
12      (617) 328-1900  (617) 328-2030 (Fax)
13
    Representing Thomas O'Connor Company:
14      BROADHURST, LAKIN & LAKIN
        One Elm Square
15      Andover, MA  01810
        BY:  KENNETH A. LAKIN, ESQ.
16      (978) 470-3545  (978) 470-3464 (Fax)
17
    Representing Waldo Brothers:
18      McCARTER & ENGLISH, LLP
        755 Main Street
19      Hartford, CT  06103
        BY:  JAMES T. ZOIS, ESQ.
20      (860) 493-3900  (860) 493-3939 (Fax)
21
22
23
24

Page 5

```
VOLUME I
PAGES: 1-198
EXHIBITS: 1-9
COMMONWEALTH OF MASSACHUSETTS
Middlesex, ss.    Superior Court Department
```

Page 6

APPEARANCES:

Representing the Plaintiffs:
 LAW OFFICE OF MICHAEL C. SHEPARD, P.C.
 205 Portland Street
 Boston, MA 02114
 BY: MICHAEL C. SHEPARD, ESQ.
 (617) 742-1121 (617) 742-5155 (Fax)

Representing Riley Stoker Corporation, The Sherwin-Williams Company, Georgia-Pacific, and Quigley:
 CETRULO & CAPONE
 2 Seaport Lane
 10th Floor
 Boston, MA 02210
 BY: JENNIFER A. CREEDON, ESQ.
 (617) 217-5500 (617) 217-5200 (Fax)

Representing New England Insulation:
 CETRULO & CAPONE
 2 Seaport Lane
 10th Floor
 Boston, MA 02210
 BY: KATHARINE S. PERRY, ESQ.
 (617) 217-5500 (617) 217-5200 (Fax)

Representing Amchem Products, Inc., Pfizer, and Union Carbide:
 CETRULO & CAPONE
 2 Seaport Lane
 10th Floor
 Boston, MA 02210
 BY: TROY C. BAILEY, ESQ.
 (617) 217-5500 (617) 217-5200 (Fax)

Representing Eastern Refractories Company:
 HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
 111 Devonshire Street, 8th Floor
 Boston, MA 02109
 BY: JOHN FELICE, ESQ.
 (617) 728-0050 (617) 728-0052 (Fax)

Page 7

Representing Waldo Bros., Inc.:
 McCARTER & ENGLISH, LLP
 755 Main Street
 Hartford, CT 06103
 BY: JAMES T. ZOIS, ESQ.
 (860) 493-3900 (860) 493-3939 (Fax)

Representing Thomas O'Connor Company:
 BROADHURST, LAKIN & LAKIN
 One Elm Square
 Andover, MA 01810
 BY: KENNETH LAKIN, ESQ.
 (978) 470-3545 (978) 470-3464 (Fax)

Representing Combustion Engineering:
 GOVERNO LAW FIRM, LLC
 260 Franklin Street
 Boston, MA 02110
 BY: JENNIFER A.P. CARSON, ESQ.
 (617) 737-9045 (617) 737-9046 (Fax)

Representing American Standard and Paul E. Dutelle & Company, Inc.:
 ANDERSON, ADLER, COHEN & HARVEY
 230 Congress Street
 Boston, MA 02110
 BY: JENNIFER BOYD HERLIHY, ESQ.
 (617) 423-6674 (617) 423-7152 (Fax)

Representing Weil-McLain and Plibrico:
 PIERCE, DAVIS & PERRITANO, LLP
 Ten Winthrop Square
 Boston, MA 02110
 BY: JOEL F. PIERCE, ESQ.
 (617) 350-0950 (617) 350-7760 (Fax)

Representing Burnham Corporation:
 TUCKER, HEIFETZ & SALTZMAN
 Three School Street
 Boston, MA 02018
 BY: M. THERESE ROCHE, ESQ.
 (617) 557-9696 (617) 227-9191 (Fax)

Page 8

Representing Ingersoll-Rand, Pecora Corporation, California Products, Kaiser Gypsum Co., Inc., and Kelly Moore Paint Company, Inc.:
 LECOMTE, EMANUELSON & DOYLE
 Presidents Place
 1250 Hancock Street
 Quincy, MA 02169
 BY: RICHARD B. KIRBY, ESQ.
 (617) 328-1900 (617) 328-2030 (Fax)

Representing Duro-Dyne Corporation, Bird, Inc., and Cleaver-Brooks, a division of Aquachem:
 LECOMTE, EMANUELSON & DOYLE
 Presidents Place
 1250 Hancock Street
 Quincy, MA 02169
 BY: FRANCIS M. LYNCH, ESQ.
 (617) 328-1900 (617) 328-2030 (Fax)

Representing H.B. Fuller:
 POSTERNAK, BLANKSTEIN & LUND
 100 Charles River Plaza
 Boston, MA 02114
 BY: JOHN EGAN, ESQ.
 (617) 973-6100 (617) 367-2315 (Fax)

Representing Boston Edison:
 McDONOUGH, HACKING & NEUMEIER, LLP
 11 Beacon Street, Suite 1000
 Boston, MA 02108
 BY: CHRISTOPHER W. COSTELLO, ESQ.
 (617) 367-0808 (617) 367-8307 (Fax)

Also Present:
 CETRULO & CAPONE
 2 Seaport Lane
 10th Floor
 Boston, MA 02210
 BY: TIERNEY CHADWICK
  JEREMY EVANS
  KARA DOWAL
 (617) 217-5500 (617) 217-5200 (Fax)

Page 149

1  MR. SHEPARD: Objection.
2  A. Well, when you say that they typically
3  wore, it would be my opinion that they typically
4  did not wear those types, and if they did, it was
5  usually along the lines of those 3M paper masks,
6  but I haven't run across that many individuals
7  that actually said they wore masks.
8  Q. Have you seen any papers -- strike
9  that.
10  Other than paper masks, are there any
11  other types of respirators that you're familiar
12  with that painters wore in the '70s while they
13  were using simulated ceiling acoustics?
14  MR. SHEPARD: Objection.
15  A. Not that I'm aware of.
16  Q. I'm sorry, I have to go over a few
17  questions.
18  A. That's fine.
19  Q. Have you ever visited any of the work
20  sites that Mr. Belisle testified he worked at?
21  A. Not that I'm aware of. I don't believe
22  so.
23  Q. Have you ever been to L Street Station?
24  A. No.

Page 150

1  Q. Have you ever seen plans of any of the
2  work sites that Mr. Belisle worked at?
3  A. No.
4  Q. What types of buildings did Mr. Belisle
5  work at?
6  A. Schools, commercial, power plants,
7  chemical plants, heavy industry, commercial
8  office type buildings. A wide range of buildings
9  over his years.
10  Q. Have you ever visited a power plant in
11  Massachusetts?
12  A. I have not.
13  Q. Have you ever seen any photographs of
14  the power plants in Massachusetts?
15  A. No.
16  Q. Have you ever done any dust sampling in
17  a power plant?
18  MR. SHEPARD: In Massachusetts or
19  anywhere?
20  MS. CREEDON: Anywhere.
21  A. Possibly.
22  Q. Where did you possibly do that?
23  MR. SHEPARD: Objection. Asked and
24  answered.

Page 151

1  A. Again, I was in two cases in this
2  state. The City of Boston versus all the
3  asbestos manufacturers, and the State of
4  Massachusetts versus all the asbestos
5  manufacturers, and both of those cases we did
6  bulk sampling and dust sampling.
7  Now, I can't tell you what those
8  results are or where or et cetera, but I have no
9  intention of relying on those, but if I were to
10  pull all those files out from bygone years, there
11  probably would be some of that data in there.
12  Maybe not, I just don't know.
13  Q. With respect to L Street Station, do
14  you know the dimensions of L Street Station?
15  A. I would estimate a couple hundred yards
16  long, looks like 20 stories tall.
17  Q. Do you know what kind of ventilation it
18  has?
19  A. I can't see it from here, so the answer
20  is no.
21  Q. Do you know which portion of L Street
22  Mr. Belisle worked in?
23  A. No, I do not.
24  Q. Would you agree that various asbestos-

Page 152

1  containing products cause different releases of
2  fiber?
3  A. Maybe, and that would depend on what
4  you did to them.
5  Q. Are you relying on any studies that
6  attempt to quantify asbestos exposure with
7  respect to painters?
8  A. Well, I guess, yes. I mean, you have
9  published literature of what happens when
10  somebody sands spackling and joint compounds, and
11  certainly as a painter, certainly Mr. Belisle
12  talked about having to sand spackling and joint
13  compounds.
14  Selikoff's work did quantify those
15  studies and those types of activities, and those
16  are very good examples because they're real world
17  studies.
18  Q. Do you remember the title of Selikoff's
19  study?
20  A. I think it's entitled The Sanding of
21  Patching and Joint Compounds, I believe. It was
22  in the Journal of Science, 1974. I don't
23  remember the lead author, but Selikoff was on the
24  tail end.

Page 153

1   Q. Is that an epidemiological study?
2   A. No. Well, hold on. I think there was
3   some of that in there, but most of it was actual
4   field measurements of individuals using these
5   products.
6   Q. Are you relying on any epidemiological
7   studies in the Belisle case?
8   A. No, that's not my area.
9   Q. The last time you testified in
10  Massachusetts you testified that you were not an
11  industrial hygienist. Is that true today?
12  A. I don't believe I've ever said that.
13  Q. You are not -- you don't have a degree
14  in industrial hygiene; is that accurate?
15  A. I do not have a degree in industrial
16  hygiene, and I am not a certified industrial
17  hygienist.
18  Q. Have you ever reviewed any materials
19  regarding a product called Bloc-tex?
20  A. I know that product.
21  Q. What is that product?
22  A. As I recall, it's a sealer for
23  concrete, concrete blocks, concrete walls. It's
24  a paint-type material that does have asbestos in

Page 154

1   it.
2   Q. Who makes it?
3   A. I think your client does, or used to.
4   Q. Do you know how much asbestos it
5   contains?
6   A. That I can't recall.
7   Q. Have you ever tested that product?
8   A. I have not.
9   Q. Have you ever seen any studies of
10  anyone else testing that product?
11  A. No, I have not.
12  Q. You'll agree that your demonstrations
13  do not replicate the workplace?
14  A. I agree.
15      MS. CREEDON: That's all the questions
16  I have for you today.
17      THE WITNESS: Thank you.
18              **********
19  EXAMINATION BY MR. GOVERNO:
20  Q. My name is David Governo. I represent
21  Terex, American Crane, and Koerhing.
22      You talked about a 1995, 1996 Report to
23  Congress on secondary exposures?
24  A. Yes.

Page 155

1   Q. And you said that included a good
2   review of literature on secondary exposures,
3   including secondary exposure to asbestos?
4   A. Yes, sir.
5   Q. When was the first piece of literature
6   cited in that actually published?
7   A. 1961 or 2.
8   Q. Are you familiar with the asbestos
9   content of cosmetics?
10  A. In my field I have -- it's sort of like
11  an urban legend about the talcs in cosmetics
12  containing tremolite. I've never been able to
13  verify that.
14  * Q. Have you looked for studies reporting
15  on asbestos contamination of talc and other
16  ingredients of cosmetics?
17  A. Well, I'm certainly very familiar with
18  the asbestos contamination of talc, but what
19  we've seen -- now, I have seen inference to it
20  and I have seen studies on talc, and we have done
21  our own studies on talc, but what I haven't been
22  able to do is find a cosmetic where I can say,
23  yes, that has asbestos in it. Tremolite.
24      MR. GOVERNO: Can you read my question

Page 156

1   back, please.
2       (* Question read back)
3   A. I have looked for all studies on
4   contamination of talc involving tremolite. I
5   have not seen one with cosmetics.
6       MR. GOVERNO: No further questions.
7               **********
8   EXAMINATION BY MR. GRIECO:
9   Q. My name is Dennis Grieco. I have a few
10  questions for you. I'll be brief. I have just a
11  couple of fill-in questions.
12  A. Sure.
13  Q. We talked about studies and videos and
14  I think I have an idea of where the two shall
15  meet, so to speak, but let me see if I can go
16  over it with you.
17      First, you recall that you were deposed
18  here in Massachusetts in that Ondik case in
19  January of 2001?
20  A. I recall I was here.
21  Q. Okay. I'm going to represent to you
22  that it was in January of 2001.
23  A. I have no reason to dispute that.
24  Q. What specific studies have you or your

Page 157

1  firm performed since that date?
2     A.  Since January of 2001, as I mentioned
3  earlier, we have done additional friction studies
4  pertaining to arc grinding of brake shoes.  I
5  believe we have done a friction study on sanding
6  of brake shoes since that time.  We have done
7  gasket studies in May, a fairly big study, Gasket
8  Studies IV and V.
9         We have done -- oh, we have done a
10 transite study, cutting transite panel.  I left
11 that one out earlier.  I forgot about that one.
12 We cut transite panels with a skill saw with a
13 carbide blade.  I know there's a couple others,
14 but I apologize.
15    Q.  Of those that you just listed for me,
16 and any others that you recall in answering this
17 next question, which do you intend to or are you
18 relying upon with respect to your testimony in
19 the Starkweather case?
20    A.  There are no studies that were done
21 after 2001, that I'm aware of, that I would be --
22 excuse me, after January of 2001 that I would be
23 relying on here.
24    Q.  Just so I can make sure I understand,

Page 158

1  Doctor --
2     A.  Yes, sir.
3     Q.  -- focussing again on the studies that
4  you will rely upon in the Starkweather case,
5  those include the specific studies that were
6  performed by others that you described for us
7  concerning thermal insulation, correct?
8     A.  Yes, sir.
9     Q.  Your own studies performed by you or
10 your company with respect to thermal insulation?
11    A.  That's correct.
12    Q.  With respect to insulation materials,
13 other than thermal insulation in the Starkweather
14 case, you intend to rely upon literature produced
15 by Peter Harries in the mid '60s; is that right?
16    A.  That's one of the studies.
17    Q.  What are the others?
18    A.  Oh, on insulating cements?
19    Q.  Yes.
20    A.  I don't know of another one besides
21 his.
22    Q.  And you also intend to rely upon your
23 Secondary Exposure Studies II and III in the
24 Starkweather case, correct?

Page 159

1     A.  That's correct.
2     Q.  And there are videos to those two
3  studies?
4     A.  That's correct.
5     Q.  And there's also a video related to the
6  thermal insulation study that you just mentioned,
7  correct?
8     A.  That's correct.
9     Q.  And that is the full gamut of studies,
10 literature, and/or videos that you intend to rely
11 upon in the Starkweather case?
12    A.  Oh, no.  Maybe I wasn't asked, but
13 certainly I have a library of secondary exposure
14 studies.  As I was talking about earlier, the
15 Report to Congress.  If you want to look for one
16 document that really is a good compilation of all
17 the studies, that's a good one, the '95 Report to
18 Congress.
19    Q.  Okay.  Outside of that '95 Report to
20 Congress and the studies and videos you just
21 described for me, are there any other studies or
22 literature that you intend to rely upon or are
23 relying upon for your opinions in the
24 Starkweather case?

Page 160

1     A.  Just to be clear, I think the answer is
2  no, but to make sure of that, the references in
3  that Report to Congress are all references that I
4  have, but other than that, no, that's it.
5     Q.  And we've described all the videos or
6  other graphic presentations that you intend to
7  rely upon in the Starkweather case?
8     A.  Based on the information I have now,
9  yes.
10    Q.  Okay.  Now, turning specifically to
11 your understanding of Mr. Byrnes' exposure, Mrs.
12 Starkweather's father, am I correct in
13 understanding that, as you sit here today, you
14 don't know which, if any, work site his asbestos
15 exposure took place at, but you know it was with
16 respect to this dust cloud from ripping down the
17 boiler that Mr. Riley mentioned; is that correct?
18         MR. SHEPARD:  Objection.
19         MR. COSTELLO:  Objection.
20    A.  No, not quite correct.  I said that was
21 probably one of the larger exposures, but it is
22 my opinion that any time during that time frame
23 working at any powerhouse you're going to have
24 some exposure, even if you're outside, just

Page 193

1  nor rejected.
2      Q.  Okay. That's even a finer line than
3  the one I thought you were drawing. Okay.
4          What can you tell me, if anything,
5  about your friction studies and whether they've
6  been --
7      A.  Same thing.
8      Q.  Exact same answer?
9      A.  Yes, sir.
10     Q.  Okay.
11         MR. LYNCH: That's all I have. Anybody
12 else?
13         THE WITNESS: And I apologize, because
14 I understand, but after my last go-around with my
15 recent paper and what happened and all the behind
16 the scenes to try to stop it, I'm really more
17 sensitive now than I've ever been about that sort
18 of stuff.
19         MR. KIRBY: We can certainly appreciate
20 that.
21         MR. LYNCH: Does anybody have any more
22 questions? Okay. Does anybody have anything
23 else they want to put on the record?
24         MS. ROCHE: Am I correct that we're

Page 194

1  suspending pending the receipt of the documents
2  we've specified?
3          MR. SHEPARD: The defendants' position
4  is it's suspended; the plaintiff's position is it
5  is over.
6          MS. ROCHE: I just want to make sure
7  it's on the record.
8          MR. SHEPARD: Yes.
9
10         (Off the record at 3:38 p.m.)

Page 195

COMMONWEALTH OF MASSACHUSETTS
Middlesex, ss.
    I, LORENE R. EPPLEY, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing deposition was taken before me on the 18th day of July, 2002;
    That the witness named in the deposition, prior to being examined, was by me first duly sworn;
    That said deposition was taken before me at the time and place therein set forth, and was taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;
    That said deposition is a true record of the testimony given by the witness and of all objections made at the time of the examination.
    I further certify that I am neither counsel for nor related to any party to said action, nor in any way interested in the outcome thereof.
    IN WITNESS WHEREOF, I have subscribed my name and affixed my seal this 31st day of July, 2002.

                _____
                Lorene R. Eppley, Notary Public in and for
                the Commonwealth of Massachusetts
                My Commission expires: May 26, 2006

PLEASE NOTE:
THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING REPORTER.

196
                July 31, 2002
Michael C. Shepard, Esq.
LAW OFFICE OF MICHAEL C. SHEPARD
205 Portland Street
Boston, MA 02114

In Re: Carol Starkweather case and
       Paul Bielicki case
Dear Attorney Shepard:
    Enclosed herewith is a copy of the deposition transcript of DR. WILLIAM LONGO taken on Thursday, July 18, 2002, in the above-captioned cases.
    According to the Massachusetts Rules of Civil Procedure, the witness has 30 days to read and sign the deposition transcript.
    Please have the witness read and sign the signature page/errata sheet. If the witness has not read and signed the original signature page within 30 days from the above date, it will be deemed signed.
    Please have the witness forward the signed signature page/errata sheet to Attorney Frank Lynch so that he may attach same to the original deposition transcript. Thank you in advance for your cooperation in this matter.

                Sincerely,
                Lorene R. Eppley
cc: All Counsel of Record.

197
            INSTRUCTIONS TO DEPONENT
    After reading this volume of your deposition, indicate any corrections or changes to your testimony and the reasons therefor on the Errata Sheet supplied to you, and sign it.
        DO NOT MAKE MARKS OR NOTATIONS ON THE TRANSCRIPT VOLUME ITSELF.

        ERRATA SHEET HANDLING/DISTRIBUTION
    The original of the Errata Sheet has been delivered to Michael Shepard, Esq. When the Errata Sheet has been completed by the deponent and signed, a copy thereof should be delivered to each party of record and the ORIGINAL thereof delivered to Francis Lynch, Esq., to whom the original deposition transcript was delivered.

    PLEASE REPLACE THIS PAGE OF THE TRANSCRIPT WITH THE COMPLETED AND SIGNED ERRATA SHEET WHEN YOU RECEIVE IT.
-------------------------------------------------
198
            SIGNATURE-ERRATA SHEET
    I, DR. WILLIAM LONGO, hereby certify under the pains and penalties of perjury that I have read the foregoing transcript of my testimony and further certify that said transcript is a true and accurate record of my testimony (with the exception of the corrections, additions, and/or deletions noted below).
PAGE  LINE  CORRECTION, ADDITION, OR DELETION
____  ____  _____
____  ____  _____
____  ____  _____
____  ____  _____
____  ____  _____

    Signed under the penalties of perjury this
    _____ day of _____, 2002.
                _____
                DR. WILLIAM LONGO