# EXHIBIT E11

## Page 1

```
         SUPERIOR COURT OF THE STATE OF CALIFORNIA
                  FOR THE COUNTY OF LOS ANGELES


    BARBARA WITTMAN, an          )
    individual; JOHN WITTMAN,    )
    an individual,               )
                                 )
              Plaintiffs,        )
                                 )
         vs.                     )  CASE NO. BC 646439
                                 )
    BRENNTAG NORTH AMERICA,      )
    INC., et al.,                )
                                 )
              Defendants.        )
    _____)



                     DEPOSITION OF

                  WILLIAM E. LONGO, PH.D.


                   November 20, 2017

                      10:00 a.m.


                      Suite 100
              11555 Medlock Bridge Road
                Johns Creek, Georgia



              Frances Buono, RPR, CCR-B-791

                 Atlanta Reporters, Inc.
              Georgia Certified Court Reporters
                      (866) 344-0459
                  www.atlanta-reporters.com
```

Atlanta Reporters, Inc.    866-344-0459    www.atlanta-reporter.com

## Page 2

APPEARANCES OF COUNSEL

On behalf of the Plaintiffs:

    ADAM COOPER, Esq.
    Weitz & Luxenberg
    700 Broadway
    7th Floor
    New York, New York 10003
    Acooper@weitzlux.com

    JERRY KRISTAL, Esq.
    Weitz & Luxenberg
    220 Lake Drive East
    Suite 210
    Cherry Hill, New Jersey 08002
    Jkristal@weitzlux.com

On behalf of the Defendant,
    Johnson & Johnson:

    KEVIN M. HYNES, Esq.
    Orrick, Herrington & Sutcliffe, LLP
    51 West 52nd Street
    New York, New York 10019-6142
    Khynes@orrick.com

On behalf of the Defendant,
    Imerys Talc American, Inc.:

    BRENDAN KRASINSKI, Esq.
    Alston & Bird, LLP
    One Atlantic Center
    1201 West Peachtree Street
    Atlanta, Georgia 30309-3424
    Brendon.krasinski@alston.com

Atlanta Reporters, Inc.    www.atlanta-reporters.com

## Page 3

INDEX TO EXAMINATIONS

Examination                                          Page

Examination by Mr. Hynes                              8
Examination by Mr. Krasinski                        110
Further Examination by Mr. Hynes                    208

                      - - -

Atlanta Reporters, Inc.    www.atlanta-reporters.com

## Page 4

INDEX TO EXHIBITS

Defendants'
 Exhibit   Description                                Page

    1     November 8, 2017 letter to Counsel           8
          from Weitz & Luxenberg

    2     September 13, 2017, letter from             10
          Claire Mayer to Kathy Molyneaux

    3     November 17, 2017, letter from Claire       15
          Mayer to Counsel of Record.  Subject:
          Barbara Wittman, et al., versus
          Brenntag North America, Inc., et al.

    4     Reliance materials                          16

    5     August 2, 2017, report                      17

    6     Photographs of the Johnson & Johnson        17
          Baby Powder and Valiant Shower to
          Shower Talc As Received Containers

    7     MAS Project 14-1852, Below the Waist        18
          Application of Johnson & Johnson Baby
          Powder, September 2017

    8     Article published by Jennifer Pierce,       18
          et al., Evaluation of the Presence of
          Asbestos in Cosmetic Talcum Products,
          Inhalation Toxicology, 2017

    9     Report of Results: MVA 11730,               19
          Investigation of Italian Talc Samples
          for Asbestos, August 1, 2017

   10     Bureau of Mines Information Circular        19
          1977, Campbell, et al., United States
          Department of Interior document

   11     Talc Size Distribution of Johnson &         19
          Johnson and Valiant Shower to Shower
          Amphibole Positive Samples

Atlanta Reporters, Inc.    www.atlanta-reporters.com

## 197

```
15:57:34   1   problem with, or 5-to-1, greater than 5-to-1 I do.  I
15:57:37   2   mean, you could have 20-to-1, 30-to-1, 40-to-1.  So
15:57:42   3   no, I don't agree with that.
15:57:43   4       Q.   Okay.  Next sentence says, "The
15:57:44   5   distinction of how to tell an asbestos fiber from a
15:57:47   6   cleavage fragment is currently being debated within
15:57:51   7   the scientific community."
15:57:52   8            Do you agree that there's some debate
15:57:55   9   within the scientific community about --
15:57:57  10       A.   I would agree that as I've already
15:57:59  11   discussed numerous times, on single fibers, I'm not
15:58:04  12   aware of a method, without knowing the source of the
15:58:08  13   material, if it's asbestiform or not.
15:58:13  14       Q.   Okay.
15:58:14  15       A.   At the TEM level.
15:58:16  16       Q.   I'm not -- can you read back the answer?
15:58:36  17            (The record was read by the reporter.)
15:58:36  18       Q.   (By Mr. Krasinski)  In that answer were
15:58:38  19   you referring to you're not aware of a method for
15:58:42  20   distinguishing single fibers of cleavage fragment
15:58:45  21   versus asbestiform fibers?
15:58:47  22       A.   At the TEM level at high magnification
15:58:52  23   when you're dealing with a single fiber without any
15:58:54  24   other information, no, I'm not aware of a method.
15:59:00  25       Q.   Okay.  So then how did you characterize
```

## 198

```
15:59:03   1   your -- the fibers that you found as asbestos fibers
15:59:07   2   and not cleavage fragments?
15:59:11   3       A.   Because the counting rules by TEM, as
15:59:18   4   we've already discussed, and in those counting rules
15:59:21   5   it states that if it meets this criteria it is an
15:59:24   6   asbestos fiber.  Doesn't say asbestos fiber, doesn't
15:59:32   7   say asbestiform fiber, it says here's the counting
15:59:35   8   rules for asbestos at the TEM magnifications.  And I
15:59:40   9   have to take a short break.
16:00:13  10       Q.   Sure.
16:00:13  11            (Off the record.)
16:02:54  12       Q.   (By Mr. Krasinski)  So we're back on
16:03:03  13   Page 42 where we left off.  The first full paragraph
16:03:07  14   there.  And here Millette says, "A population of
16:03:10  15   fibers as observed in a bulk sample having the
16:03:13  16   asbestiform habit is generally recognized by several
16:03:17  17   characteristics.  These include mean aspect ratios in
16:03:19  18   the range from 20-to-1 to 100-to-1 or higher for
16:03:24  19   fiber longer than 5 microns."
16:03:26  20            So now again, this is now Millette is
16:03:30  21   saying that you can look at -- to characterize
16:03:34  22   asbestos you should look at a population of fibers
16:03:36  23   and that population should have mean aspect ratios
16:03:40  24   20-to-1 and up.
16:03:42  25            Do you agree that that's what he's saying
```

## 199

```
16:03:46   1   here?
16:03:46   2       A.   That's what is stated here.  It just
16:03:50   3   parrots what's in the R-93.  I disagree that this is
16:03:55   4   how you characterize asbestos, that it doesn't
16:03:58   5   require this.
16:03:59   6            And again, I can go through all the
16:04:01   7   reasons in the past, but I disagree with this.  If
16:04:05   8   you have a grab sample, as I've talked about before,
16:04:08   9   if you have a grab sample out of a mine, you can
16:04:12  10   probably use this to characterize it, but this has
16:04:17  11   nothing to do with TEM analysis.  Nothing.
16:04:22  12       Q.   Right.  Just goes on to list the other
16:04:25  13   criteria that we've seen.  But I want to look at just
16:04:29  14   focusing on the first sentence there in the second
16:04:32  15   full paragraph, not the bullet points.
16:04:35  16            Millette says, "It is more difficult to
16:04:37  17   classify individual fibers as to asbestiform or
16:04:39  18   cleavage fragments because individual fibers do not
16:04:45  19   exhibit all the characteristics of a population."
16:04:47  20            Do you agree with that?
16:04:51  21            MR. COOPER:  I'm sorry, I think it's fair
16:04:55  22   that you need to read it in context with the
16:04:57  23   next line or lines before -- this is the problem
16:05:01  24   without having seen the document, and I
16:05:03  25   understand you're trying to get me out of here;
```

## 200

```
16:05:05   1   however, I do have a job to do.
16:05:08   2            So I think it may be fair for him to read
16:05:10   3   on a little more, at least in my opinion, gives
16:05:12   4   it a little bit move context to be able to
16:05:14   5   answer that question.
16:05:24   6            THE WITNESS:  I would agree with that if
16:05:26   7   it's -- as long as the two sentences are put in
16:05:30   8   there, you know, "With the exception of the
16:05:32   9   requirements given in the TEM standard methods
16:05:34  10   that the asbestos fibers have substantially
16:05:36  11   parallel or stepped sides," and so on and so
16:05:42  12   forth.
16:05:42  13            But, I've said I don't know how many times
16:05:44  14   on the TEM side, asbestos characterized by very
16:05:49  15   thin, usually less than point width and two or
16:05:55  16   more of the following, parallel -- occurring in
16:05:56  17   bundles.  Fiber bundles displaying the splayed
16:05:59  18   ends, matted masses of individual fibers, and
16:06:00  19   fibers showing curvature.
16:06:03  20            At the TEM level you're only going to see
16:06:05  21   the first one, usually.  You don't see fiber
16:06:07  22   bundles typically displaying splayed ends,
16:06:12  23   that's not a size of a bundle seen in the TEM.
16:06:21  24       Q.   (By Mr. Krasinski)  And then the paragraph
16:06:39  25   goes on -- if you want to read it you're welcome to.
```

**201**

16:06:41  1  Obviously it goes on to discuss this figure 2.11 at
16:06:47  2  the top, which is comparing aspect ratios for
16:06:52  3  tremolite fibers from the standard reference material
16:06:54  4  1876, tremolite asbestos and tremolite from a talc
16:06:58  5  sample.
16:07:01  6           Do you see that?
16:07:02  7       A.  Yes.
16:07:02  8       Q.  And again, you're welcome to read whatever
16:07:07  9  you want, but there's a sentence in about the bottom
16:07:13 10  third of that paragraph where Millette says, "The
16:07:16 11  population of tremolite fibers in talc" -- and he's
16:07:19 12  referring to the population in figure 2.11.  "The
16:07:23 13  population of tremolite fibers in talc is considered
16:07:25 14  to be nonasbestiform because the mean aspect ratio is
16:07:32 15  less than 20-to-1."
16:07:34 16           Would you disagree that the population of
16:07:36 17  fibers -- would you agree or disagree that the
16:07:39 18  population of fibers in this analysis should be
16:07:42 19  considered nonasbestiform?
16:07:44 20       A.  No.
16:07:44 21       Q.  Okay.  Why not?
16:07:47 22       A.  You have to read the whole thing.  It's
16:08:02 23  talking about bulk samples found in bulk -- samples.
16:08:07 24  So what Dr. Millette is trying to say here is if you
16:08:11 25  use this other criteria that it's less than 20-to-1

Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

**202**

16:08:15  1  for the bulk samples above, then some people would
16:08:18  2  say that's not asbestos; however, if you look at the
16:08:21  3  NIST 1876 where that is asbestos, it has this range
16:08:26  4  of aspect ratios that are similar, in fact -- that
16:08:36  5  are less than 10 to 20-to-1.
16:08:41  6           So you can't take these PLM bulk samples
16:08:43  7  with this arbitrary 20-to-1 to 100-to-1, there has to
16:08:44  8  be some distribution in there for that to happen.
16:08:49  9           Again, we're dealing with PLM analysis of
16:08:54 10  a draft method versus TEM that has very specific
16:08:57 11  counting rules for what you call asbestos.
16:08:59 12       Q.  Okay.  So we've just looked at a couple of
16:09:08 13  different papers, articles, methods, that have
16:09:11 14  recommended looking at population of fibers when
16:09:15 15  trying to determine whether asbestos is present.
16:09:16 16       A.  No, that's not what we did.  What you did
16:09:18 17  was try to look at what people are saying about
16:09:22 18  polarized light microscopy and specifically about a
16:09:25 19  draft EPA method and then trying to say this is what
16:09:28 20  you're supposed to do over in TEM analysis.  It's two
16:09:32 21  completely different things.
16:09:33 22       Q.  I'm not asking that.  Again, you could do
16:09:35 23  both; right?
16:09:38 24       A.  We could do both.
16:09:39 25       Q.  And if you did PLM, you would be able to

Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

**203**

16:09:43  1  look more at a population of the fibers; correct?
16:09:45  2       A.  No.  For these types of ground and milled
16:09:51  3  cosmetic talc, you're not going to see this
16:09:55  4  population of fibers.  You're looking at an
16:09:58  5  artificially ground up material.  You're not looking
16:10:01  6  what comes out of the ground.
16:10:03  7           You're trying to say what comes out -- the
16:10:06  8  definition of asbestos by this draft EPA method, what
16:10:10  9  comes out of the ground or walking around and picking
16:10:12 10  up a grab sample is completely different than what
16:10:17 11  you've done to this sample to get it in the cosmetic
16:10:21 12  talc.  200 mesh, you're grinding it.  ==TEM is the only==
16:10:25 13  ==method to determine that.==
16:10:26 14       Q.  Okay.  Are you aware that in 1992 OSHA
16:10:39 15  revised its asbestos standard?
16:10:47 16       A.  OSHA had a criteria because they looked at
16:10:50 17  cleavage fragments and said don't count cleavage
16:10:54 18  fragments.  And then OSHA never changed their
16:10:57 19  criteria for their greater than 3-to-1 aspect ratio
16:11:00 20  in their '94 7400 Method for PCM and the 7402 Method,
16:11:04 21  so the only thing I can deduce in that is OSHA said
16:11:08 22  something but then abandoned it because their
16:11:10 23  methodology never changed.
16:11:12 24       Q.  So when OSHA removed cleavage fragments
16:11:19 25  from its criteria, do you know why they did that,

Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

**204**

16:11:24  1  what their rational was?
16:11:27  2       A.  Well, let's see.  I'm not sure what the
16:11:31  3  rationale is.  Certainly if it doesn't have parallel
16:11:34  4  sides -- but OSHA never changed their counting
16:11:38  5  protocol.
16:11:39  6           Before they came up with this criteria it
16:11:41  7  was greater than 3-to-1 aspect ratio, greater than
16:11:45  8  5 micrometers in length, and greater than
16:11:48  9  .25 micrometers in width and had to have parallel
16:11:52 10  sides.  After when they issued the '94 7400 Method,
16:11:55 11  nothing changed.
16:12:03 12       Q.  Have you reviewed a document that NIOSH
16:12:14 13  put out in 2011 referred -- well, let me just show
16:12:25 14  it -- let's go ahead and mark it.  So this will be --
16:12:31 15  make sure I'm giving you the right one here.
16:12:35 16       A.  I haven't reviewed that.
16:12:36 17       Q.  You haven't reviewed this?
16:12:37 18       A.  No.
16:12:37 19           (Defendants' Exhibit 35 was marked for
16:12:59 20  identification.)
16:12:59 21       Q.  (By Mr. Krasinski)  So we have marked as
16:13:00 22  Exhibit 35 the NIOSH Current Intelligence Bulletin
16:13:06 23  62, Asbestos Fibers and Other Elongate Mineral
16:13:08 24  Particles:  State of the Science and Roadmap for
16:13:11 25  Research, Revised Edition.

Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

### Page 205

```
16:13:13   1              And you said this is not something that
16:13:14   2   you have seen; correct?
16:13:16   3       A.     People have showed it to me lately, but I
16:13:20   4   have not reviewed it to any degree so I can talk
16:13:24   5   intelligently about it.
16:13:25   6       Q.     Okay.  Were you aware that -- were you
16:13:41   7   aware that 1990 NIOSH kept nonasbestiform amphiboles
16:13:49   8   in its definition of asbestos fibers?
16:13:52   9       A.     I don't know if I was aware one way or the
16:13:57  10   other.
16:13:57  11       Q.     So you weren't aware -- okay.
16:13:59  12              So you don't know what NIOSH's definition
16:14:02  13   of asbestos fibers was in its 1990 recommendation
16:14:08  14   concerning occupational exposure to airborne asbestos
16:14:11  15   fibers?
16:14:12  16       A.     We do the NIOSH protocol all the time, the
16:14:18  17   '94 7400, and its definition of a fiber is a 3-to-1
16:14:24  18   aspect ratio -- greater than a 3-to-1 aspect ratio or
16:14:31  19   3-to-1 or greater aspect ratio, greater than
16:14:34  20   5 micrometers, greater than about .25 micrometers in
16:14:36  21   width.  That's their definition of a fiber.  They
16:14:39  22   don't identify it as asbestos -- or you can't
16:14:41  23   identify asbestos or nonasbestos.
16:14:43  24              And then they have their definition of the
16:14:45  25   7400 Method.  7402 Method, which is a TEM method.
```
Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

### Page 206

```
16:14:50   1   That takes the same size fibers and if it is
16:14:53   2   asbestos, then you count it as asbestos according to
16:14:57   3   the 7402 Method.
16:14:59   4       Q.     Okay.  Are you willing to look at what's
16:15:03   5   in here?
16:15:04   6       A.     I have to read the whole thing.  I mean, I
16:15:06   7   just told you my opinion that what we do today is it
16:15:12   8   has a certain criteria and you call it asbestos.  The
16:15:15   9   7402 Method.  Nothing has changed.  When is this,
16:15:21  10   1990?
16:15:22  11       Q.     No, 2011.  This document is 2011.
16:15:25  12       A.     But if you're talking about what they said
16:15:26  13   in 1990, nothing has changed with NIOSH in the way
16:15:30  14   they're analyzing it and calling it asbestos.
16:15:32  15       Q.     I understand.  Are you aware that in 1990
16:15:38  16   NIOSH explicitly included elongated mineral particles
16:15:43  17   from the nonasbestiform amphiboles in its 1990
16:15:46  18   revised definition of airborne asbestos fibers?
16:15:51  19       A.     No.
16:15:51  20       Q.     Okay.  Are you aware that in this document
16:15:56  21   that they say that decision was based on inconclusive
16:15:59  22   science and contrast with the regulatory approach
16:16:03  23   subsequently taken by OSHA and MSHA?
16:16:05  24       A.     Again, I haven't read this.  I don't have
16:16:08  25   an opinion one way or another on what it clashes or
```
Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

### Page 207

```
16:16:12   1   doesn't clash with.
16:16:17   2       Q.     Are you aware on Page 7 of this document
16:16:20   3   -- well, on Page 7 of this document it says, "NIOSH
16:16:21   4   recognizes that its 1990 description of the particles
16:16:24   5   covered by the REL" -- which is the recommended
16:16:30   6   exposure levels -- or limit -- "for airborne asbestos
16:16:33   7   fiber has created confusion causing many to infer
16:16:36   8   that the nonasbestiform minerals included in the
16:16:40   9   NIOSH definition are 'asbestos.'"
16:16:43  10              Were you aware of that?
16:16:44  11       A.     Again, I haven't reviewed this document.
16:16:47  12       Q.     Okay.  And then it goes on to say,
16:16:50  13   "Therefore, in this roadmap NIOSH makes clear that
16:16:52  14   such nonasbestiform minerals are not asbestos or
16:16:55  15   asbestos minerals and clarifies which particles are
16:16:58  16   included in the REL."
16:17:03  17              Do you agree -- or were you aware that
16:17:05  18   NIOSH put out this document explicitly to clarify
16:17:09  19   that the nonasbestiform particles, although counted,
16:17:13  20   are not asbestos?
16:17:15  21       A.     I guess that's what they stated in 2011.
16:17:18  22   Nothing has changed in the protocols that I can think
16:17:22  23   of in the last six years, seven years.
16:17:33  24              MR. KRASINSKI:  Okay.  I believe I'm
16:17:35  25       finished, so I'm going to go ahead and let him
```
Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

### Page 208

```
16:17:37   1       have his 15 minutes.
16:17:38   2                   FURTHER EXAMINATION
16:17:43   3   BY MR. HYNES:
16:17:43   4       Q.     I'll be quick.  Dr. Longo, I'm going to
16:17:48   5   flip you to Exhibit 3.  This is the November 17
16:17:50   6   letter from Weitz enclosing two of the results.  I
16:17:55   7   just want you to take a look at this TEM photograph
16:17:58   8   labeled M66203-005-004.  Are you with me?
16:18:04   9       A.     Yes, sir.
16:18:05  10       Q.     And we looked at this earlier; is that
16:18:06  11   correct?
16:18:06  12       A.     We have.
16:18:07  13       Q.     And you said that you saw something like
16:18:09  14   five or six individual fibers in this TEM image; is
16:18:14  15   that correct?
16:18:14  16       A.     Yes.
16:18:14  17       Q.     And could I have you circle the five or
16:18:18  18   six individual fibers there, please?
16:18:49  19       A.     (Indicating).
16:18:51  20       Q.     And just for the record, Dr. Longo
16:19:34  21   identified the five different fibers he identified on
16:19:39  22   M66203-005-004.  Thank you.
16:19:44  23              And next I would like to turn to your
16:19:49  24   Below-the-Waist report.  Pages not numbered.  It's
16:19:56  25   Exhibit 7 here.  I wanted to flip to the image that's
```
Atlanta Reporters, Inc.866-344-0459   www.atlanta-reporters.com

217

```
16:32:53  1   record.  The September 2, 2017, report, the
16:32:59  2   Below-the-Waist report, to my knowledge that was
16:33:02  3   not part of Dr. Longo's reliance materials in
16:33:07  4   the Herford matter and so to the extent that
16:33:10  5   this was not disclosed until -- as part of his
16:33:15  6   reliance materials in this case until today's
16:33:18  7   deposition, I would like to put an objection on
16:33:20  8   the record about that.
16:33:24  9            THE WITNESS:  It was produced in Lanzo.
16:33:28 10            MR. COOPER:  Well.
16:33:28 11            MR. HYNES:  But the letter refers to
16:33:30 12   materials relied upon in Herford.
16:33:32 13            THE WITNESS:  That's not my argument.
16:33:33 14            MR. COOPER:  I'm going to say, I
16:33:35 15   appreciate you throwing your two cents in there,
16:33:39 16   but ultimately we'll deal with it with the
16:33:42 17   court, actually.
16:33:43 18            The one thing I was told to ask is if you
16:33:45 19   guys are willing to stip to use a rough, if
16:33:49 20   necessary, for any motions in limine?
16:33:53 21            MR. KRASINSKI:  Yes.
16:33:54 22            MR. HYNES:  I agree.
16:33:55 23       Q.   (By Mr. Hynes)  And I guess I'll close
16:33:58 24   out.  I had asked you earlier whether we've covered
16:34:03 25   all of your opinions that you intend to offer at
```

Atlanta Reporters, Inc.866-344-0459  www.atlanta-reporters.com

218

```
16:34:05  1   trial in this case.
16:34:06  2            At this point, late in the day, have we
16:34:09  3   covered essentially all the opinions that you're
16:34:12  4   intending to offer in this case?
16:34:16  5       A.   It's always hard for me to know everything
16:34:18  6   that I've stated and if I've covered everything or
16:34:21  7   not, but I believe I've covered the majority of the
16:34:23  8   opinions that I would be offering in this case.
16:34:25  9            And I'm not saying I haven't covered them
16:34:28 10   all, but it's after six hours of deposition, I can't
16:34:33 11   imagine there's something that I didn't cover.
16:34:36 12            MR. HYNES:  All right.  Do you have
16:34:37 13   anything else?
16:34:39 14            MR. KRASINSKI:  No.
16:34:55 15            (Deposition concluded at 4:34 p.m.)
         16            (Pursuant to Rule 30(e) of the Federal
         17   Rules of Civil Procedure and/or O.C.G.A.
         18   9-11-30(e), signature of the witness has been
         19   reserved.)
         20            (Original transcript sent to Mr. Hynes.)
```

Atlanta Reporters, Inc.866-344-0459  www.atlanta-reporters.com

219

```
 1                    C E R T I F I C A T E
 2
 3   STATE OF GEORGIA:
 4   COUNTY OF HALL:
 5
 6            I hereby certify that the foregoing
 7   transcript was taken down, as stated in the
 8   caption, and the questions and answers thereto
 9   were reduced to typewriting under my direction;
10   that the foregoing pages 1 through 218 represent
11   a true, complete, and correct transcript of the
12   evidence given upon said hearing, and I further
13   certify that I am not of kin or counsel to the
14   parties in the case; am not in the regular
15   employ of counsel for any of said parties; nor
16   am I in anywise interested in the result of said
17   case.
18            This, the 29th day of November, 2017.
19
20
                       _____
21                     FRANCES BUONO, B-791
                       Georgia Certified Court Reporter
```

Atlanta Reporters, Inc.866-344-0459  www.atlanta-reporters.com

220

```
 2                COURT REPORTER DISCLOSURE
 3
 4            Pursuant to Article 10.B. of the Rules and
     Regulations of the Board of Court Reporting of the
 5   Judicial Council of Georgia which states: "Each court
     reporter shall tender a disclosure form at the time
 6   of the taking of the deposition stating the
     arrangements made for the reporting services of the
 7   certified court reporter, by the certified court
     reporter, the court reporter's employer, or the
 8   referral source for the deposition, with any party to
     the litigation, counsel to the parties or other
 9   entity.  Such form shall be attached to the
     deposition transcript," I make the following
10   disclosure:
11            I am a Georgia Certified Court Reporter.  I am
     here as a representative of Atlanta Reporters, Inc.
12   Atlanta Reporters was contacted by Weitz & Luxenberg
     to provide court reporting services for the
13   deposition.  Atlanta Reporters will not be taking
     this deposition under any contract that is prohibited
14   by O.C.G.A. 15-14-37(a) and (b).
15            Atlanta Reporters has no contract/agreement to
     provide reporting services with any party to the
16   case, any counsel in the case, or any reporter or
     reporting agency from whom a referral might have been
17   made to cover this deposition.  Atlanta Reporters
     will charge its usual and customary rates to all
18   parties in the case, and a financial discount will
     not be given to any party to this litigation.
19
20
                       _____
21                     FRANCES BUONO, B-791
                       Georgia Certified Court Reporter
```

Atlanta Reporters, Inc.866-344-0459  www.atlanta-reporters.com