# EXHIBIT E24

```
                                                      Page 2727

 1              SUPERIOR COURT OF NEW JERSEY
                LAW DIVISION:  MIDDLESEX COUNTY
 2              DOCKET NO. MID-1748-17AS
 3
 4    ROSALIND HENRY and FREDRICK C.    )
      HENRY,                            ) TRANSCRIPT OF
 5                                      ) PROCEEDINGS
                      Plaintiffs,       )
 6                                      )
           v.                           ) TRIAL
 7                                      )
      BRENNTAG NORTH AMERICA, INC,      ) (VOLUME XII)
 8    et al.,                           )
                                        )
 9                    Defendants.       )
                                        )
10    _____
11
12
                            Wednesday, October 10, 2018
13                          8:35 a.m.
                            Middlesex County Courthouse
14                          New Brunswick, New Jersey
15
16
      B E F O R E:
17
      H O N O R A B L E   A N A   C.   V I S C O M I, JSC
18
19
20
21
22
              REPORTED BY:  ANDREA F. NOCKS, CCR, CRR
23
24
25    Job No. NJ3024662
```

Page 2728

```
 1  A P P E A R A N C E S:
 2  MOTLEY RICE, LLP
     BY: NATHAN D. FINCH, ESQ.
 3  401 9th Street, N.W.
     Suite 1001
 4  Washington, DC  20004
     -and-
 5  MOTLEY RICE, LLP
     BY: W. CHRISTOPHER SWETT, ESQ.
 6  28 Bridgeside Boulevard
     Mt. Pleasant, South Carolina  29464
 7  -and-
     COHEN PLACITELLA & ROTH
 8  BY: JARED PLACITELLA, ESQ.
     BY: DENNIS M. GEIER, ESQ.
 9  127 Maple Avenue
     Red Bank, New Jersey  07701
10  Attorneys for Plaintiffs
11
12  WEIL, GOTSHAL & MANGES LLP
     BY: ALLISON BROWN, ESQ.
13  BY: DIANE SULLIVAN, ESQ.
     BY: MARIHUG CEDENO, ESQ.
14  17 Hulfish Street
     Suite 201
15  Princeton, New Jersey  08542
     Attorneys for Defendants,
16  Johnson & Johnson, and Johnson &
     Johnson Consumer, Inc.
17
18
19
20
21
22
23
24
25
```

Page 2729

```
 1          INDEX
                PAGE
 2  WITNESS:
 3     ROSALIND HENRY
 4  EXAMINATION BY:
 5     (BY VIDEO)              2741-2764
```

Page 2730

1  THE COURT: Good morning, everyone.
2  We're here with regard to Rosalind Henry and
3  Frederick Henry versus Brenntag North America, et
4  al., Docket No. 1748-17, outside the presence of the
5  jury on Wednesday, October 10, 2018.
6       Can I have appearances, please.
7       MR. SWETT: Good morning, your Honor.
8  Chris Swett on behalf of the Henry family.
9       MR. FINCH: Nate Finch on behalf of
10  the Henry family.
11      MR. GEIER: Dennis Geier for the
12  Henry family.
13      MR. PLACITELLA: And Jared Placitella
14  for the Henry family.
15      THE COURT: Thank you.
16      On behalf of JJCI.
17      MS. SULLIVAN: Good morning, your
18  Honor. Diane Sullivan and Alli Brown and Marihug
19  Cedeno on behalf of J&J.
20      THE COURT: Good morning, everyone.
21      I understand you've reached an
22  agreement and that is with regard to the instruction
23  that I am giving the jury which will be the first
24  thing they will essentially hear from me this
25  morning, and that's to substitute one of the

Page 2731

1  sentences so that the new sentence added in will be
2  "no party or its lawyers or the witness did anything
3  wrong and you are not to speculate about the reason
4  for striking this testimony."
5       So I've deleted the prior sentence
6  that was there and now the new admonition or
7  instruction or, that I will give to this jury is as
8  follows: "The last testimony you heard prior to the
9  long weekend was from defendant's expert,
10  Dr. Gregory Diette. I am striking only that portion
11  of Mr. Diette's testimony and slide presentation
12  regarding the 2009 meta-analysis study by lead
13  author Sawka. No party or its lawyers or the
14  witness did anything wrong, and you are not to
15  speculate about the reason for striking this
16  testimony. You are free to consider the rest of his
17  testimony. I will have a further instruction as
18  part of my charge to you later today."
19      MS. BROWN: Your Honor, can we just
20  substitute improper for wrong, no one did anything
21  improper?
22      MR. FINCH: That's fine.
23      THE COURT: Where was the word
24  improper?
25      MS. BROWN: In the sentence its

2 (Pages 2728 - 2731)

Page 2884

1  mines didn't become operational until 1967.  And if
2  you recall, NIOSH did a study based on the
3  information that Johnson & Johnson gave them,
4  Johnson & Johnson handpicked the miners they would
5  include in that study.  And in 1975 they looked at
6  392 miners and NIOSH concluded that there were no
7  cases of mesothelioma out of those 392 miners.
8         But Johnson & Johnson knew you
9  wouldn't expect to have any.  The latency period
10 wasn't long enough.  From '67 to '75 is only eight
11 years.  From first exposure in '67, you wouldn't
12 have any cases of mesothelioma.
13        But what Johnson & Johnson's attorney
14 did not tell you in opening statement is that Lamm
15 and Star followed up with those same 392 miners
16 about 13 years later.  So that would have been 21
17 years after first exposure.  '67, I think this is
18 1988.  And after only 21 years there was one case of
19 mesothelioma out of 392 miners, exactly what she
20 said you should expect to find if there's asbestos
21 in the mine.  There was a case.
22        And Dr. Finkelstein came.  He's an
23 expert epidemiologist.  He's a little rough around
24 the edges, but he's smart.  He knows his stuff.  He
25 was asked to be on the EPA advisory board.  He has

Page 2885

1  served as the epidemiologist for the government.
2  Dr. Diette wasn't asked to do that.
3         But he came and told you why this is
4  significant.  This is significant because in the
5  average population you would only expect one case of
6  mesothelioma out of 100,000 people.  And the fact
7  that there was one case of mesothelioma out of 392
8  people, that's all, that's a substantial increased
9  risk.  That tells you there's asbestos in those
10 mines.  You know what else?  Those 392 miners were
11 wearing respirators and one guy still got
12 mesothelioma.  That's a substantial increased risk.
13        Now, Johnson & Johnson's lawyers also
14 told you about some testing.  We heard a lot about
15 testing.  The truth of the matter is Johnson &
16 Johnson didn't start sending their talc out to be
17 tested by so-called independent labs until 1974.
18 This is the document that started it all.  This is
19 the document where, one, Johnson & Johnson admits
20 that TEM, transmission electron microscopy, is the
21 only absolute proof.  You've got to use TEM to
22 determine whether or not there's asbestos in talc.
23        But if you read in the very top in
24 handwriting, I'll read it to you, it's hard to read
25 but you'll have this document, this is Exhibit

Page 2886

1  P-181.  It says, "What is cost of each sample
2  submitted to McCrone?  Quick scan would be about,"
3  and it looks like it says $20, but the actual amount
4  kind of got wiped out when it was copied.  But this
5  is when they first decided to start sending their
6  talc out to outside labs, 1974.  And the reason they
7  did, if you look at the last sentence it says, "In
8  view of the latest findings at Windsor Minerals, it
9  appears wise that we maintain a closer surveillance
10 on both the ore and the finished product."
11        In '74 they were already finding
12 asbestos in their ore and their baby powder and they
13 weren't sending it out to these independent labs to
14 test it for asbestos.  They were -- they didn't want
15 them to find the asbestos.  They were trying to
16 cover themselves because Dr. Hopkins told you, we
17 make these labs use our testing method.  Johnson &
18 Johnson developed a rigged testing method.  TEM
19 7024.  These so-called independent labs had to use
20 Johnson & Johnson's method.
21        Even though Johnson & Johnson knew
22 and these labs told Johnson & Johnson, TEM 7024 is
23 not an optimal method for asbestos testing.  It's
24 not a good method to find the asbestos in the talc.
25 These labs told Johnson & Johnson that, but yet

Page 2887

1  Johnson & Johnson still made the RJ Lee Group use
2  this method, still made the Colorado School of Mines
3  use this method.
4         I went to a military college, and in
5  the service academies and in the military there's a
6  saying called the five Ps:  Proper preparation
7  prevents poor performance.  And just like anything
8  in life, preparation is key.  If you're going to
9  cook dinner, you got to prep.  If you are going to a
10 job interview, you got to prepare.  Before I came
11 into the courtroom to try and get justice for the
12 Henry family, I prepared, I reviewed all the
13 documents.
14        The reason TEM 7024 is not an optimal
15 or a good method for finding the asbestos in talc is
16 because it did not incorporate the proper
17 preparation.  The Colorado School of Mines told
18 Johnson & Johnson if you want to find asbestos in
19 talc at less than one percent, you have to use the
20 pre-concentration method.  And the Colorado School
21 of Mines developed this method.  Using heavy liquid
22 you can separate out the asbestos from all the talc
23 particles and then you can use whatever microscope
24 you want.  If you are using TEM, you're using the
25 best microscope, but you can use PLM like

Page 2888

1 Professor Blount did or you can use TEM like
2 Dr. Longo did.
3          But nonetheless, Colorado School of
4 Mines told Johnson & Johnson if you want to find the
5 needle in the haystack, if you want to find the
6 asbestos needle in the talc, you got to use
7 pre-concentration.
8          Professor Blount used
9 pre-concentration, Dr. Longo used pre-concentration,
10 and 100 percent of the time they found asbestos in
11 the talc using pre-concentration. But Johnson &
12 Johnson didn't let any of the other labs, outside
13 labs use pre-concentration. And there's a reason
14 why. Dr. Hopkins tells us why.
15          (Video plays:
16     Q.    It depends on how close you look,
17 though, right, whether you're going to find asbestos
18 or not if it's present?
19     A.    If you use the best techniques,
20 you'll find it, right.
21          (Video stops.)
22          MR. SWETT: If you are using the best
23 techniques, if you're using pre-concentration, you
24 will find the asbestos in the talc. Johnson &
25 Johnson knows this. It's in black and white. Don't

Page 2889

1 just take Dr. Hopkins' word for it a year ago when
2 he testified. This is P-126. April 26, 1973.
3 "With appropriate concentrating techniques, a good
4 laboratory will be able to identify the asbestos or
5 tremolite in a talc sample." It's Johnson &
6 Johnson's own document. With appropriate
7 concentrating techniques, a good lab will find it.
8          There's another reason that TEM 7024
9 was not a good method for finding the asbestos in
10 the talc. Now, when Dr. Hopkins came to testify in
11 this case they flew him over from England. They
12 flew him to New Jersey to talk about Johnson &
13 Johnson's documents. He kind of danced around this
14 question that I asked him about five fibers. You
15 may remember the very next day, Thursday, the very
16 next thing I did, I put a transcript over the
17 overhead where he actually was honest about this
18 method, you have to find five fibers of the same
19 asbestos type under Johnson & Johnson's rigged test
20 method where they'll say it contains asbestos. If
21 you only have four tremolite fibers it's non-detect.
22 They say there's no asbestos there.
23          But you got to think about this.
24 When you're testing with TEM you're only looking at
25 .00002 grams of talc at a time. That's like

Page 2890

1 one/one-millionth the weight of a breath mint. It's
2 a very tiny bit of talc. And you can find four
3 tremolite fibers in that. And under Johnson &
4 Johnson's rigged testing method, that's
5 asbestos-free.
6          You can find four tremolite and four
7 anthophyllite fibers, still asbestos-free according
8 to Johnson & Johnson. You can find four tremolite
9 fibers, four anthophyllite fibers, four actinolite
10 fibers in that small sample of talc and it's still,
11 according to Johnson & Johnson, it's asbestos-free.
12 Johnson & Johnson deceives and misleads.
13          Now, Dr. Longo performed calculations
14 and they're on the screen. He calculated if you had
15 four tremolite fibers, that would equate to
16 56,800,000 asbestos fibers per gram. Now, 425 grams
17 in this bottle. So if we do the math, 56,800,000
18 times 425 grams, that's 24 billion 140 million
19 asbestos fibers in one bottle of Johnson's Baby
20 Powder. And oh, by the way, this is asbestos-free
21 according to Johnson & Johnson. 26 billion in one
22 bottle and they'll still say it's asbestos-free.
23 That's why they supposedly have all these
24 non-detects and our products never ever contained
25 asbestos. It's a rigged testing method.

Page 2891

1          You may get back in your
2 deliberations and one of your fellow jurors may say
3 what about the FDA testing. So I want to address
4 the FDA testing. Let's talk about the 2009 testing
5 first, because I think even during closing there was
6 a website from the FDA put up there about testing
7 that the FDA did in 2009 and didn't find any
8 asbestos.
9          ==Well, they're trying to deceive and==
10 ==mislead you. In 2009, the talc was made from China==
11 ==mines. The China mines don't have asbestos in them.==
12 ==Anything made after 2003, remember I told you the==
13 ==time period they had the Vermont mines. 2009==
14 ==testing is irrelevant.==
15          So let's talk about the 1976 testing.
16 Let's talk about Harvard testing, Princeton testing,
17 FDA testing in '76. They were all using another
18 rigged test method, J4-1. If you recall, the FDA
19 was looking at pre-concentration. I showed you the
20 document. The FDA was starting to look at
21 regulating asbestos in talc. Johnson & Johnson
22 didn't want the FDA to regulate asbestos in talc.
23          So here's the document, P-573. This
24 is Johnson & Johnson writing to the CTFA. I'll read
25 the last sentence. It says, "We believe it's

Page 2892

1 critical for the CTFA to now recommend these methods
2 to the FDA before the art advances to more
3 sophisticated techniques with higher levels of
4 sensitization." They didn't want the FDA to use a
5 more sensitive method so they pushed through J4-1,
6 which is an industry standard, by the way.
7     The FDA didn't adopt it. The FDA
8 doesn't enforce it. It's something that industry
9 developed and it only has two parts, it has XRD and
10 it has PLM. There's no TEM. Even though Johnson &
11 Johnson says in its own document earlier this year,
12 January of 1974, even though they say TEM's the only
13 way you could find asbestos in talc, when they
14 pushed through this method they don't include TEM.
15 And XRD can only find asbestos in talc if it's below
16 .5 percent.
17     Now, I know Dr. Hopkins' video that
18 you watched was a long video, and you may not have
19 caught this, but XRD can only detect asbestos in
20 talc at .5 percent or higher generally. But we've
21 seen, through Johnson & Johnson's documents, that
22 typically the asbestos in their product was less
23 than that. It was .01 percent, .1 percent. And
24 Dr. Hopkins admitted on video that at point, I
25 believe it was 01 percent, that's still millions of

Page 2893

1 asbestos fibers in one bottle. So it's not
2 sensitive enough. J4-1, that can only detect
3 asbestos at .5 percent or higher. It's not
4 sensitive enough to detect all the asbestos fibers.
5     And that brings us to the round
6 robin. Johnson & Johnson's lawyer showed you this
7 document in opening statement and showed you a
8 completely different table that had nothing to do
9 with the final results. This is the table with the
10 preliminary final results. They spiked two talc
11 samples. Mount Sinai did not participate. They
12 spiked two talc samples with tremolite asbestos and
13 anthophyllite asbestos. Why in the world would they
14 spike something with a non-asbestos? What's the
15 whole point of spiking it?
16     They spiked tremolite asbestos and
17 anthophyllite asbestos. And of course, all the
18 labs, all seven labs that participated found the
19 anthophyllite. That's 3.5 percent. That's
20 billions, probably trillions of asbestos fibers.
21 But only one out of seven found the tremolite.
22     This is what Johnson & Johnson's
23 lawyer told you in opening. I'm going to show you a
24 document she showed you. It actually showed that
25 the labs got it right. That all but one lab was

Page 2894

1 able to use the test reliably, and it's still the
2 test used today by the FDA and outside experts to
3 determine whether there's asbestos or not. Well,
4 one thing's true about that; that is still the test
5 that's used today. But the other truth about it is
6 it's only 14 percent accurate. You are only going
7 to find asbestos once out of every seven times.
8     Now, Dr. Hopkins came, and I think
9 there was some confusion because I think there was a
10 question after he got done testifying about this
11 document. He talked all over himself. He was
12 trying to build up the credibility of the Johnson &
13 Johnson lawyer. He was trying to support her and
14 say well, no, six out of seven labs did find it.
15 The problem was that, is this, last year he actually
16 told the truth and we got it on tape. He
17 admitted -- we'll watch this. Play this John,
18 please.
19     (Video plays:
20   Q.   Number two, test and verify CTFA
21 method J4-1 for this purpose, assurance that the
22 method is accurate, reliable and practical, right?
23   A.   Yes.
24   Q.   It must be those things, correct?
25   A.   Yes.

Page 2895

1   Q.   He then reported these objectives
2 have not yet been achieved, correct?
3   A.   That's what he reports.
4   Q.   Dr. Schultz provided the results of
5 the completed first round robin test providing the
6 following table, and he has the products there and
7 he's got the spiked samples, right? And that's a
8 summary of what you and I already looked at where,
9 of the seven samples, only one lab detected the CTFA
10 tremolite spiked talc of seven, correct?
11   A.   That's correct.
12   Q.   Now, one out of seven, that's what
13 percentage of seven?
14   A.   14.
15   Q.   14 percent?
16   A.   Give or take plus, yes.
17   Q.   So if you took a test and you got a
18 14 percent on it, that's like an F minus, right?
19   A.   I'm sure.
20   Q.   I mean, okay. UK has letter grades,
21 right?
22   A.   Yes.
23   Q.   Whether you're on letter grades or
24 pass, fail, this is an F, right?
25   A.   Yes.

43 (Pages 2892 - 2895)

Page 2980

1  preserve our objection, I don't believe Mr. Swett
2  came close to curing misrepresenting the record on
3  the issue of when he said, put up on the bullet
4  point that her doctors told her that her meso was
5  from asbestos.
6        THE COURT:  Thank you.  I
7  particularly paid attention to that and I felt that
8  it was sufficient.  But your objection is preserved.
9        MS. SULLIVAN:  Thank you.
10       THE COURT:  Do you want to make any
11 statement on the record with regard to that?
12       MR. SWETT:  No, your Honor.  The
13 transcript will speak for itself and your Honor's
14 decision will stand.
15       THE COURT:  So I'm reviewing the rest
16 of the summation for the issue that was raised with
17 regard to your closing statement, and then with
18 regard to the plaintiffs as to the comment relative
19 to Dr. Swett --
20       MS. SULLIVAN:  Dr. Diette.
21       THE COURT:  Dr. Swett.
22       MR. FINCH:  He went to medical school
23 after he went to military school.
24       THE COURT:  Hey, you might become
25 Dr. Quincy.  I can't believe you found that little

Page 2981

1  picture of him, Quincy and his assistant.  What was
2  his assistant's name?
3        MS. SULLIVAN:  Mr. --
4        THE COURT:  He probably knows.  All
5  right.  So I'll see you tomorrow morning.
6        (Sidebar ends.)
7        (Proceedings adjourn at 4:07 p.m.)

Page 2982

1             CERTIFICATE OF OFFICER
2
3        I CERTIFY that the foregoing is a true
4  and accurate transcript of the testimony and
5  proceedings as reported stenographically by me at
6  the time, place and on the date as hereinbefore set
7  forth.
8        I DO FURTHER CERTIFY that I am neither
9  a relative nor employee nor attorney or counsel of
10 any of the parties to this action, and that I am
11 neither a relative nor employee of such attorney or
12 counsel, and that I am not financially interested in
13 the action.
14
        *Andrea Nocks CCR CRR*
15 ---------------------------------
16     ANDREA NOCKS, CCR, CRR
        Certificate No. XI001573

65 (Pages 2980 - 2982)