# EXHIBIT G4



**DANIEL R. LAPINSKI, ESQ.**

T:  732.855.6066
F:  732.726.4735
dlapinski@wilentz.com

90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958
732.636.8000

January 31, 2019

**VIA ELECTRONIC MAIL**

Hon. Joel A. Pisano (Ret.)
Walsh Pizzi O'Reilly Falanga
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102

>   Re:   In re:  Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation, MDL No. 2728

Dear Judge Pisano:

We write in response to Ms. Sharko's letter dated January 25, 2019, related to Plaintiffs' expert, Dr. Ghassan M. Saed, and Defendants' request for the production of additional documents and to continue Dr. Saed's deposition.  The PSC disagrees with the multiple assertions put forth by Defendants and respectfully request that Your Honor deny Defendants' request that (1) Dr. Saed's deposition be continued for an additional 2.5 hours; (2) Your Honor compel the production of communications between Dr. Saed and any lawyer for any plaintiff that pertains in any way to his manuscript; and (3) Your Honor compel the production of all budgets prepared concerning his manuscript and/or the underlying experiments and all related lab work.

**Communications Between Dr. Saed And Counsel Are Privileged**

The PSC's position is that any communications between Dr. Saed and any lawyer for any plaintiff are protected pursuant to Fed. R. Civ. P. 26(b)(4)(C).[1]  Defendants improperly argue that the

---

[1]   Fed. R. Civ. P. 26(b)(4)(C) protects "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) related to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the

communications between counsel and Dr. Saed related to his manuscript are not privileged because the work "was undertaken before he began work on his for-litigation expert report." *See* January 25, 2019 letter to Your Honor from Susan M. Sharko ("Sharko Letter") at 7.[2] However, in contrast to Defendants' argument, Dr. Saed made very clear at his deposition that since Plaintiffs' counsel first contacted Dr. Saed in regard to the above-referenced litigation it was Dr. Saed's understanding that he was working on behalf of the PSC as an expert witness.

When Dr. Saed was first contacted by Plaintiffs' counsel in August 2017 it was to "discuss the ***possibility of acting as a witness expert*** in ovarian cancer inflammation and oxidative stress." *See* January 23, 2019 Deposition of Ghassan M. Saed, Ph.D. ("Saed Dep."), at 25:2-17, excerpts of which are attached hereto as Exhibit A (emphasis added). At that time Plaintiffs' counsel identified herself to Dr. Saed as a lawyer, *id.* at 26:15-22, and he "***was asked to serve as a witness expert in my specialty***, which is what we did and what I do for the last 30 years, ovarian cancer, oxidative stress, and inflammation." *Id.* at 27:3-6 (emphasis added). It was Dr. Saed's express understanding that as a consultant he was also an expert witness, *id.* at 319:10-15 and that "during all of the time that [he was] conducting the studies that [he] testified to today, that [he was] preparing certain publications, [he] was working as an expert witness." In fact, Dr. Saed did not distinguish between the work he was doing as an expert witness and the underlying research that supported his opinions. *See Id.* at 39:16-40:2 (testimony that Dr. Saed did not think about a division of time.).[3] *See Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 581 (D.N.J. 1994) (holding that extensive contact between counsel and the expert clearly demonstrated retention of the expert and "was clearly not a preliminary interview or consultation in order to determine whether an attorney desired to enter into a relationship with an expert.").[4]

As just recently set forth to Your Honor in the PSC's submission concerning Dr. Campion, the issue currently before Your Honor is the same as that which formed the basis of Your Honor's Order of June 28, 2018, resolving disputes relating to Imerys' claim of privilege to several documents. In that Order, Your Honor held that communications between defense counsel and Drs.

---

expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."

[2] The Sharko Letter was the first time that Defendants requested that the PSC produce a privilege log related to communications between Dr. Saed and counsel. The PSC is in the process of preparing a privilege log and will serve it upon Defendants when completed.

[3] Defendants' argument that Dr. Saed's work was all his own and uninfluenced by his financiers is unavailing to the issue of privilege. It would be fully expected that the research and opinions of an expert would be his own work and not influenced or driven by financing or litigation. *See Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 594-95 (D.N.J. 2002), *aff'd* 68 F. App'x (3d Cir. 2003) (holding that a Rule 702 inquiry assesses, among other things, "whether the expert is being ***as careful as he would be in his professional work outside of the litigation*** context." (emphasis added)).

[4] Dr. Saed's clear testimony that he was serving as an expert witness for the PSC from the time he was first contacted in August 2017 undercuts Defendants' assertion that the PSC "paid tens of thousands of dollars to Dr. Saed for the development of his manuscript before he undertook to write his report in this litigation." *See* Sharko Letter at 7.

Muscat and Huncharek were privileged. The communications related to a 2011 article published by Drs. Muscat and Huncharek related to talcum powder. Your Honor upheld Defendants' claim of privilege because Drs. Muscat and Huncharek had been retained by defense counsel in 2010, prior to the publication of the 2011 article.

Given that the research and work done by Dr. Saed from August 2017 until he finalized his expert report was done at the request of Plaintiffs' counsel and for the purpose of litigation and given further that the research forms the basis of the opinions he offers, communications between Dr. Saed and Plaintiffs' counsel are privileged. Defendants have failed to define how any exceptions to the privileges afforded by the federal rules would apply.[5] The decision by Dr. Saed to publish the research that he conducted in support of his expert opinion in no way undermines the privilege that protects these communications. For the reasons stated above, the PSC respectfully requests that Defendants' request for production of all communication between Dr. Saed and any lawyer for any plaintiff that pertains in any way to his manuscript be denied.

**Plaintiffs' Counsel Properly Produced Documents Pursuant To Your Honor's Order And Defendants' Multiple Document Requests**

Defendants' request that the deposition of Dr. Saed be continued for 2.5 hours as a result of a failure on the part of Plaintiffs' counsel to timely produce documents is without merit. As outlined below, the PSC timely produced documents as required by the December 27, 2018 Letter Order entered by Your Honor, as well as all documents responsive to Defendants' requests for documents that preceded Dr. Saed's deposition.

As requested by Defendants and as set forth in the Order entered by Your Honor, the PSC produced, among other documents, "all laboratory notebook pages corresponding to the research referred to on pages 13 to 21 of the report," including all data points, experimental replicates, analytical assays, and raw data. The totality of the aforementioned was produced on January 14, 2019 as Your Honor directed.[6] The Lab Notebook represented everything in Dr. Saed's possession believed to be related to the research referred to on pages 13 to 21 of his expert report. Included in the actual lab notebook that Dr. Saed brought to his deposition were 29-pages of information that referenced Johnson's Baby Powder. However, the 29-pages did not contain information that was recorded in the manuscript or reported in Dr. Saed's expert report. The pages referenced a distinct experiment. The earlier experiment did not impact the data reported in his manuscript or expert report. *See* Saed Dep. at 52:4-9 ("So, yeah, so this part starting here, from here all the way to the end, that represents everything in the manuscript. Q. You're pointing to 30? A. From Here, yes.");

---

[5] The PSC objects to the production of the budget that was prepared by Dr. Saed for Plaintiffs' counsel. The communication sought by Defendants is protected by Fed. R. Civ. P. 26(b)(4)(C) and does not fall within any of the exceptions that would require production.

[6] This production was Bates numbered 000001-97 and marked as Exhibit 1 during the Saed Dep (hereinafter "Lab Notebook"). Defendants' statement that the notebooks were not produced prior to January 14, 2019 because they had not yet been completely written is neither accurate nor relevant to the issues currently being considered by Your Honor.

Hon. Joel A. Pisano (Ret.)
January 31, 2019
Page 4

52:16-19 ("Q. Do pages 1-29 represent activities as part of the work that generated the results contained on Page 30 thereafter?  A. No.").

On the day of the deposition, and in response to Defendants' Notice of Oral and Videotaped Deposition of Ghassan M. Saed, Ph.D and Second Duces Tecum, served on Plaintiffs' counsel on December 21, 2019, Plaintiffs' counsel produced to Defendants data and information related to a study conducted by Dr. Saed using Fisher talc.  That data and information was marked as Exhibit 3 during the Saed Dep.  The Fisher Data was also separate and distinct from the work done by Dr. Saed for his manuscript.  It exposed ovarian cancer cells to Fisher talc and looked at oxidative stress markers.  The work resulted in a poster that was presented at a meeting in March 2018.  *See* Saed Dep. at 57:8-16.  The data from this experiment was also published in an abstract which has been in the public domain since March 2018 and presumably available to Defendants.

The PSC also timely produced all documents related to Defendants' request for funding.  In particular, Defendants requested "[d]ocuments reflecting the amount of ***funding received by You*** and the ***identity of the sources from which such funding was received*** for all experiments or other research that You have conducted regarding talc and ovarian cancer (whether published or unpublished), including but not limited to the Harper/Saed 2018 Abstract identified in Paragraph 1 above and the experiments referenced/identified in Paragraph 2 above."  *See* Notice of Oral and Videotaped Deposition of Ghassan M. Saed, Ph.D and Duces Tecum, Request No. 3 (emphasis added).  Defendants were provided with all invoices for payments received by Dr. Saed from Plaintiffs' counsel.  *See* Saed Dep. Exhibit 4.  *See also* Saed Dep. at 22:9-15 ("Would you look at Exhibit 4, and tell me whether those are copies of all the invoices you have generated for purposes of your work in this case?  A. Yeah, they look fine to me.").  Defendants were also provided with a listing of the costs incurred by Dr. Saed's lab related to the work that was done and which was paid from discretionary lab funds provided for ongoing research by Wayne State University.  *See* Saed Dep. Exhibit 5.  *See also* Saed Dep. at 35:11-13 ("Q.  Can you tell me what Exhibit 5 is?  A. So this is the cost of this project since the beginning till now from my lab from my side.").  Exhibit 5 captures all of the personnel, lab supplies, equipment, services, and costs for the project which were paid by Wayne State, *id.* at 40:3-5, and the combination of Exhibits 4 and 5 account for all funding expended for the research included in Dr. Saed's manuscript or expert report.  Prior to Dr. Saed's deposition, Defendants did not request and there was no obligation for Plaintiffs' counsel to produce invoices and receipts related to the work performed by Dr. Saed.  Documents of that nature do not reflect funding received but, instead, how the funding was spent.  For these reasons, Defendants' motion to continue Dr. Saed's deposition should be denied.

Prior to the deposition, Defendants did not request: (1) copies of correspondence or communications with any scientific journals (such as *Gynecologic Oncology*) or its reviewers related to Dr. Saed's work involving talc; or (2) prior drafts of Dr. Saed's manuscripts. To the extent Dr. Saed is in possession of responsive documents, Plaintiffs' counsel is working with Dr. Saed to produce those documents.

In sum, the PSC timely produced all documents as required by Your Honor's Letter Order.  The PSC also produced all documents in Dr. Saed's possession that were responsive to

Defendants' multiple documents requests.  To the extent Dr. Saed is in possession of additional documents identified by Defendants that the PSC believes to be responsive, we are working with Dr. Saed to produce those documents.  However, in that regard, the PSC objects to the production of documents related to requests 2(d), 2(e), 2(f) and 2(g) of the Sharko Letter. As noted above, the PSC maintains that requests 2(d) and 2(e) seek privileged information.  Further, requests 2(f) and 2(g) go beyond the scope of what should be produced by an expert, are not relevant, and are designed to harass Plaintiffs' expert.

      We thank Your Honor for the consideration.

                                Respectfully submitted,

                                WILENTZ, GOLDMAN & SPITZER, P.A.

                                By:         */s/ Daniel R. Lapinski*
                                            Daniel R. Lapinski

cc via electronic mail:

Susan Sharko, Esq.
Mark Silver, Esq.
Thomas Locke, Esq.
Leigh O'Dell, Esq.
Michelle Parfitt, Esq.
Christopher Placitella, Esq.

#10400683.1(164320.003)