# EXHIBIT G5



**WALSH PIZZI O'REILLY FALANGA**

One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

WALSH.LAW

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

February 5, 2019

**VIA ELECTRONIC MAIL**

All Counsel of Record

Re: *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
Case No. 3:16-md-02738-FLW-LHG

Dear Counsel,

By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September 11, 2017 (D.I. 704), I was appointed as Special Master for the purpose of overseeing discovery disputes that may arise in the above-captioned multi-district litigation ("MDL"). This MDL contains product liability cases in which Plaintiffs allege that certain Johnson & Johnson products containing talcum powder (the "Products") have been the cause of ovarian cancer for thousands of women who have used the Products.[1]

This letter opinion resolves a dispute over document requests by the Johnson & Johnson defendants relating to Plaintiffs' expert, Dr. Ghassan M. Saed and a request for the continuation of Dr. Saed's deposition, and the PSC's objections to the same. The Parties raised the dispute by letters to me dated January 25, 2019 and January 31, 2019, as well as during a telephonic status conference on January 23, 2019 and various email communications. I personally reviewed each of the submissions, as well as the complete deposition transcript of Dr. Saed.

The PSC identified Dr. Saed as an expert witness on general causation, *i.e.*, the allegation that the Products cause ovarian cancer. Dr. Saed was deposed on January 23, 2019. In anticipation of his deposition, Defendants requested production of Dr. Saed's laboratory notebooks and other documents relating to specific conclusions that he reached and the basis for those conclusions. The PSC objected, arguing that the requests were overly broad, vague,

---

[1] I do not provide a detailed factual and procedural background, as I write for the benefit of the Court and the parties, all being familiar with the facts of this case.

Case 3:16-md-02738-MAS-RLS Document 9744-9 Filed 05/07/19 Page 3 of 6 PageID: 49510
Case 3:16-md-02738-FLW-LHG Document 8973 Filed 02/05/19 Page 2 of 3 PageID: 24455

February 5, 2019
Page 2

ambiguous, and unduly burdensome. The PSC agreed, however, to produce Dr. Saed's laboratory notebooks at the time of his deposition. On December 27, 2018, I Ordered that the PSC shall produce Dr. Saed's laboratory notebooks by January 2, 2019, and that the PSC shall produce information regarding funding of Dr. Saed's research and testing. (D.I. 8677). I further ordered that, going forward, the Parties are directed to produce all laboratory notebooks and any other technical material of any expert witness who has done scientific testing at least three weeks prior to the scheduled deposition for that expert witness.

Defendants now claim that the laboratory notebooks were incomplete and produced after the deadline set by my prior Order. Further, the notebooks were produced in a problematic format, which made a comprehensive deposition impossible. As a result, Defendants now request production of (a) copies of all prior drafts of Dr. Saed's manuscript, (b) copies of any correspondence or communication with *OB-GYN Oncology*, and its reviewers or anyone else associated with any journal, in any way in connection with the consideration of Dr. Saed's manuscript for possible publication, (c) copies of any cover letters or other submission-related correspondence that accompanied, preceded, or followed the submission or re-submission of the manuscript to any journal, (d) all communications between Dr. Saed and any lawyer for any plaintiff that pertains in any way to his manuscript, (e) all budgets Dr. Saed prepared concerning his manuscript and/or the underlying experiments and all related lab work relating to any talc product, (f) all accounting documents, invoices, or other original documents that memorialize the expenses, costs, payments, reimbursements, and any similar compensation for work on the manuscript, (g) all communications with Wayne State University regarding Dr. Saed's talc-related experiments, and (h) copies of any correspondence or other communication with any organization or journal, or anyone associated with such group or journal in any way, in connection with the consideration of Dr. Saed's abstracts concerning his experiments with talc. (Def. Ltr. 1/25/2019).

The PSC has agreed to produce copies of correspondence or communications with any scientific journals or its reviewers related to Dr. Saed's work involving talc and prior drafts of Dr. Saed's manuscripts. (Pl. Ltr. 1/31/2019 at 4). The PSC objects to production of communications between Dr. Saed and any lawyer for any plaintiff that pertains in any way to his manuscript and budgets Dr. Saed prepared concerning his manuscript and/or the underlying experiments and all related lab work relating to any talc product, arguing that such information is privileged. (Id. at 5). The PSC further objects to production of accounting documents, invoices, or other original documents that memorialize the expenses, costs, payments, reimbursements, and any similar compensation for work on the manuscript and communications with Wayne State University regarding Dr. Saed's talc-related experiments, arguing that such requests go beyond the scope of what should be produced by an expert, are not relevant, and are designed to harass Plaintiffs' expert. (Id. at 5).

February 5, 2019
Page 3

     I find that communications between the PSC and Dr. Saed are privileged and the PSC shall not be required to produce them. Federal Rule of Civil Procedure 26(b)(4)(C) protects communications between a Party's attorney and an expert witness to the extent those communications fall into three limited exceptions. Thus, to the extent the communications between Dr. Saed and the PSC do not "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming opinions to be expressed," the PSC shall not be required to produce them.

     With respect to the current and renewed request for documents, as laid out in detail above, I find those documents are discoverable and should be produced. First, there is no basis for a claim of privilege over communications between Dr. Saed and Wayne State University. Additionally, the funding and budgeting of Dr. Saed's work, either between Dr. Saed and the PSC or with Wayne State University, are relevant to the Defendants' inquiry into the funding and therefore potential bias of the study and resulting expert report and article. Thus, these documents are relevant, and should be produced to Defendants.

     It is clear that the PSC failed to produce the laboratory notebooks and technical notebooks as ordered. Further, much of Dr. Saed's deposition was dedicated to making sense of his untimely and confusing production. As a result, defense counsel was unable to conduct a productive and informative deposition. As such, Defendants' request to continue Dr. Saed's deposition is entirely justified, and I will order that he appear for continued deposition not to exceed one day.

     Very truly yours,

     Joel A. Pisano

cc:    Honorable Freda L. Wolfson (via ECF and First-Class Mail)
       Honorable Lois H. Goodman (via ECF and First-Class Mail)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) Civil Action No.: 16-MD-2738-FLW-LHG<br><br>MDL No. 2738<br><br>**DISCOVERY ORDER OF THE SPECIAL MASTER** |

**THIS MATTER** having come before the undersigned, Joel A. Pisano, U.S.D.J. (Ret.) appointed as Special Master by Court Order; and after review of submissions on behalf of each party; and for the reasons set forth in the accompanying letter opinion; and for good cause shown,

**IT IS** on this 5th day of February 2019 hereby:

**ORDERED** as follows:

1. Dr. Saed shall appear for a continued deposition by Defendants not to exceed one day; and

2. Within seven (7) days of entry of this Order, the PSC shall produce:

   a. Copies of prior drafts of Dr. Saed's manuscript, *Molecular basis supporting the association of talcum powder use with increased risk of ovarian cancer*, including, but not limited to, all initial, revised, and final versions of drafts submitted to *Reproductive Sciences* and *OB-GYN Oncology* or any other journal or other correspondence;

   b. Copies of any correspondence or other communication with *OB-GYN Oncology*, and its reviewers or anyone else associated with any journal, in any way in

1

    connection with the consideration of Dr. Saed's manuscript for possible publication;

  c. Copies of any cover letters or other submission-related correspondence, regardless of form, but including any letters or any statements entered into online submission forms, and wherever maintained, either in the possession of Dr. Saed or his lab or maintained in online accounts associated with the journals to which Dr. Saed has access, that accompanied, preceded, or followed the submission or re-submission of the manuscript to any journal;

  d. All budgets Dr. Saed prepared concerning his manuscript and/or the underlying experiments and all related lab work, whether in connection with Johnson's Baby Powder, Fisher talc, or any other talc product;

  e. All accounting documents, invoices or other original documents that memorialize the expenses, costs, payments, reimbursements, and any similar compensation, whether in monetary or other form, for work on the manuscript, including all documents maintained and/or referenced by Sharon Pepe in calculating the cost figures contained in Exhibits No. 5 to Dr. Saed's deposition;

  f. All communications with Wayne State University regarding Dr. Saed's talc-related experiments; and

  g. Copies of any correspondence or other communication with any organization, including SGO, SRI or any other group or journal in any way, in connection with the consideration of Dr. Saed's abstracts concerning his experiments with talc.

DATED February 5, 2019

                                                     Joel A. Pisano, U.S.D.J. (Ret.)
                                                     Special Master