# EXHIBIT G6



**WALSH**
PIZZI
O'REILLY
FALANGA

**One Riverfront Plaza**

1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

April 26, 2019

**VIA ELECTRONIC MAIL**

All Counsel of Record

> **Re:**  *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
> **Case No. 3:16-md-02738-FLW-LHG**

Dear Counsel,

By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September 11, 2017 (D.I. 704), I was appointed as Special Master for the purpose of overseeing discovery disputes that may arise in the above-captioned multi-district litigation ("MDL").  This MDL contains product liability cases in which Plaintiffs allege that certain Johnson & Johnson products containing talcum powder (the "Products") have been the cause of ovarian cancer for thousands of women who have used the Products.[1]

This dispute relates to Defendants' demand for the production of the laboratory notebooks of Dr. Ghassan M. Saed, one of the PSC's expert witnesses relating to general causation, *i.e.*, the allegation that the Products cause ovarian cancer.  I have read the letters and material submitted relating to this dispute, as well as the transcripts of Dr. Saed's depositions. This dispute first arose by submissions dated December 14, 15, 20, and 21, 2018.  In sum, Defendants requested production of Dr. Saed's laboratory notebooks and other documents relating to specific conclusions that he reached, and the basis for those conclusions, in advance of Dr. Saed's deposition.  The PSC agreed to produce Dr. Saed's laboratory notebooks at the time of his deposition.  On December 27, 2018 I filed a letter opinion and accompanying order requiring the production of Dr. Saed's laboratory notebooks by January 2, 2019.  At the PSC's request, I clarified my Order, via e-mail, to make clear that my Order requires the production of materials which relate to the report being considered, and not all research from an expert's laboratory.

---

[1] I do not provide a detailed factual and procedural background, as I write for the benefit of the Court and the parties, all being familiar with the facts of this case.

All Counsel of Record
April 26, 2019
Page 2

Subsequently, Dr. Saed was deposed on January 23, 2019.  Shortly thereafter, on January 25, 2019, this dispute was returned to my attention.  By letters dated, January 25, and 31, 2019, a telephone conference on January 23, 2019, and various e-mail communications, Defendants complained that the production of Dr. Saed's laboratory notebooks was incomplete and untimely.  For example, there appeared to be different versions of the laboratory notebooks, some with data whited-out, and with pages missing entirely.  On February 5, 2019, I filed a letter order and opinion, again requiring the complete production of Dr. Saed's laboratory notebooks and requiring Dr. Saed to appear for an additional deposition not to exceed one day.

Dr. Saed appeared for a second deposition on February 14, 2019.  At the February 14, 2019 deposition the parties agreed that the court reporter would make copies of Dr. Saed's laboratory notebooks and provide the same to Defendants after the deposition.  I have now been advised that Dr. Saed himself did not permit the court reporter to copy all the pages contained in the laboratory notebook.  The PSC claims that Dr. Saed's laboratory notebook contains, in addition to his work relating to this litigation, certain data and notes on a study commissioned by a separate company and completely unrelated to this litigation.  The PSC argues that Dr. Saed permitted all notebook pages relating to this litigation to be copied, and only did not permit "non talcum powder" research to be copied, claiming that information is beyond the scope of the Court's prior order, and contains confidential and proprietary data that is not relevant to this litigation.  Although the Parties have advised me of an off-the-record discussion regarding the laboratory notebooks, I do not know whether either partial copying or a claim of privilege was discussed.  The deposition transcript does not reflect any claims of privilege over the "irrelevant" pages of the notebook, and Defendants asked questions of Dr. Saed during the deposition relating to those sections of the notebook.

The Parties raised the dispute by letters to me dated April 12, 2019 and April 17, 2019. On April 19, 2019, I requested further information from the parties, via e-mail, to which the Parties responded by letters dated April 22, 2019 and April 23, 2019.

At the outset, I find this dispute to be a distraction to an already complicated discovery process.  This dispute may very well be a tempest in a teapot, and the unproduced laboratory notebook pages on an unrelated project may be of no use to counsel in this matter.  However, this MDL is sprawling in scope and involves claims, defenses, and legal and scientific issues that are of critical importance to the parties and to the public.  It is therefore important for me to oversee the creation of a complete, comprehensive, and accurate record of the discovery process so as to ensure that the litigants obtain information, experts' opinions, and underlying scientific data that are necessary for the presentation of arguments to the Court, so the Court is comfortable that a complete record has been provided in accordance with law and subject to the terms of filed Orders of the Court.

It is unfortunate that additional costs are being incurred as a result of this dispute over a laboratory notebook that I twice ordered and expected to be produced months ago.  It appears

All Counsel of Record
April 26, 2019
Page 3

to me that Dr. Saed is solely responsible for the creation of this distraction.  He was shown to be less than forthcoming in his production of laboratory work materials, he was found to have altered laboratory notebook entries, he combined, incorporated, or commingled notes from different studies in the same notebook, and only having been questioned for 15 hours and having agreed to the copying of the entire notebook did he assert a privacy consideration about notes on a project that may be unrelated to this case.  Putting aside his questionable position that scientists customarily combine notes on more than one project in a notebook, he has caused this dispute apparently to save on the cost of a new notebook.  Defense counsel were permitted to see the entire notebook during the deposition, and I see no justification for Dr. Saed to have refused to permit the court reporter to copy the entire notebook.

I do not know, nor do I now find, whether the unrelated laboratory notes are subject to any privilege, as no such argument has been made (other than the general argument of relevance and disclosure of material proprietary to the project sponsor).  But I am satisfied that the entire laboratory notebook, marked as Exhibit 3 at Dr. Saed's deposition, must be copied and produced to defense counsel.  I find this to be necessary to maintain and provide to the Court a complete record in this case.

Upon receipt of the notebook, defense counsel are instructed to conduct a review subject to the "Attorneys Eyes Only" provision in the Discovery Confidentiality Order.  (D.I. 118).  If the notebook contains entries that are indeed irrelevant to this case, then no further disclosure of those entries shall be made to anyone.  On the other hand, if defense counsel believe that disclosure of the material is warranted, they may apply for an appropriate order and I will hear from all parties with an interest in the matter.

So Ordered.

Very truly yours,

Joel A. Pisano

cc:     Honorable Freda L. Wolfson (via ECF and First-Class Mail)
        Honorable Lois H. Goodman (via ECF and First-Class Mail)