# Exhibit H



Susan M. Sharko
973-549-7350 Direct
973-360-9831 Fax
Susan.Sharko@dbr.com

*Law Offices*

600 Campus Drive
Florham Park, NJ
07932-1047

973-549-7000
973-360-9831 fax
www.drinkerbiddle.com

*A Delaware Limited
Liability Partnership*

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
TEXAS
WASHINGTON D.C.

April 22, 2019

**VIA ELECTRONIC MAIL**

Hon. Joel A. Pisano (Ret.)
Walsh Pizzi O'Reilly Falanga
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, NJ  07102

> Re:   **In re: Johnson & Johnson Talcum Powder Products Marketing, Sales
> Practices and Products Liability Litigation, MDL No. 2738**

Dear Judge Pisano:

I am writing in response to your email of April 19, 2019, which requested that the parties address the questions listed below:

**"[1] if there was a colloquy as to the copying of the Exhibit 3 notebook, whether it would be a complete copying or something less"**

I understand that following the conclusion of Dr. Saed's second deposition on February 14, 2019, there was an off-the-record discussion between the PSC and defense counsel, and during that discussion, defense counsel made it clear that we needed copies of the entire notebooks. The premise for the request was that only partial copies had previously been made available and that, because the lab books had each been marked in their entirety as exhibits, it was necessary to duplicate them in full in order to have a complete record. At no point were we told that we would get anything less than the entire notebooks. Indeed, copying and producing only a portion of an exhibit marked at a deposition would be unusual. The only condition that we recall being placed on our request was that Dr. Saed wished to be present during the duplication of the books, and we assented to that condition. Notably, both depositions where the notebooks were produced were taken in a hotel conference room, rather than a law firm, making it impossible to copy them on the spot.

**"[2] whether defendants knew that Dr. Saed was claiming some kind of confidentiality of the other project (it was clearly identified)"**

To our knowledge, no claim of confidentiality has been made previously, either on or off the record at either of Dr. Saed's depositions. The record reflects Dr. Saed's claim that

*Andrew B. Joseph
Partner responsible for
Florham Park Office*

*Established* 1849

DrinkerBiddle&Reath
LLP

**VIA ELECTRONIC MAIL**

Hon. Joel A. Pisano (Ret.)
April 22, 2019
Page 2

portions of Exhibit 3 relate to other work (1 Saed Dep. 84:3-10), but that work was not described in detail and no claim of confidentiality was asserted over it.

**"[3] whether the notes on that project were disclosed during the deposition"**

The full lab notebooks were brought to both depositions. Because the depositions had to proceed in real time and we were not provided with prior access to the books, we did not have the time at the depositions to review the contents of the notebooks outside the portions for which copies had been provided ahead of time, and naturally assumed that we and the other defense lawyers working on the litigation would be able to review the full notebooks after the deposition. Again, no one expressed any prohibition at the deposition against reviewing any part of either lab book.

**"[4] whether members of the PSC have reviewed those notes before they now claim that they should be withheld from third parties"**

We are not aware whether the PSC reviewed the other portions of the books prior to or at any time after Dr. Saed's depositions but note that there were plaintiffs' lawyers from five different law firms at the depositions.

**"[5] whether the portions of the Exhibit 3 notebook can be disclosed subject to the confidentiality provisions in the discovery order."**

We believe that, assuming the new claims of confidentiality are well grounded, the protective order already in place provides the PSC and Dr. Saed with the protections needed to maintain the allegedly confidential and proprietary nature of the lab books' contents. To the extent a need for heightened protection can be shown (e.g., to the extent claimed trade secrets are at issue), we believe these interests could be protected by designating those portions of the lab notebooks as "attorneys' eyes only." Alternatively, defendants also think it would be appropriate for Your Honor to review the materials in camera and assess what other protections might be appropriate or necessary.

**Your Honor also expressed "curio[sity] about Dr. Saed's statement that notes of multiple lab projects are customarily commingled in one notebook."**

Our understanding from experts who are involved in laboratory studies is that multiple lab projects are not "customarily" commingled in the way Dr. Saed's laboratory has done here. As we have previously noted for Your Honor, Dr. Saed's lab book practices depart from customary approaches in a number of other respects as well, including whiting out critical information like dates and product identification and tearing lab pages out of books (also on the ground that the pages related to a different project) as was done in the

DrinkerBiddle&Reath
L L P

**VIA ELECTRONIC MAIL**

Hon. Joel A. Pisano (Ret.)
April 22, 2019
Page 3

case of the lab book that was Exhibit 2 to Dr. Saed's deposition.  (*E.g.*, 1 Saed Dep.
80:19-83:22.)

Please let us know if we can provide any further information to aid in your resolution of
this matter.

Respectfully,

*s/Susan M. Sharko*

Susan M. Sharko

cc:     Hon. Freda L. Wolfson, U.S.D.J. (via Electronic Mail)
        Hon. Lois H. Goodman, U.S.M.J. (via Electronic Mail)
        Michelle Parfitt, Esq. (via Electronic Mail)
        Leigh O'Dell, Esq. (via Electronic Mail)
        Christopher Placitella, Esq. (via Electronic Mail)
        Mark Silver, Esq. (via Electronic Mail)
        Thomas Locke, Esq. (via Electronic Mail)