

**One Riverfront Plaza**
1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

May 23, 2019

**VIA ELECTRONIC MAIL**

All Counsel of Record

    Re:    *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
             Case No. 3:16-md-02738-FLW-LHG

Dear Counsel,

      By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September 11, 2017 (D.I. 704), I was appointed as Special Master for the purpose of overseeing discovery disputes that may arise in the above-captioned multi-district litigation ("MDL"). This MDL contains product liability cases in which Plaintiffs allege that certain Johnson & Johnson products containing talcum powder (the "Products") have been the cause of ovarian cancer for thousands of women who have used the Products.[1]

      This dispute relates to Defendants' demand for the production of the laboratory notebooks of Dr. Ghassan M. Saed, one of the PSC's expert witnesses relating to general causation, *i.e.*, the allegation that the Products cause ovarian cancer. I have read the letters and material submitted relating to this dispute, as well as the transcripts of Dr. Saed's depositions. This dispute first arose by submissions dated December 14, 15, 20, and 21, 2018. In sum, Defendants requested production of Dr. Saed's laboratory notebooks and other documents relating to specific conclusions that he reached, and the basis for those conclusions, in advance of Dr. Saed's deposition. The PSC agreed to produce Dr. Saed's laboratory notebooks at the time of his deposition. On December 27, 2018 I filed a letter opinion and accompanying order requiring the production of Dr. Saed's laboratory notebooks by January 2, 2019. At the PSC's request, I clarified my Order, via e-mail, to make clear that my Order requires the production of materials which relate to the report being considered, and not all research from an expert's laboratory.

---

[1] I do not provide a detailed factual and procedural background, as I write for the benefit of the Court and the parties, all being familiar with the facts of this case.

All Counsel of Record
May 23, 2019
Page 2

Subsequently, Dr. Saed was deposed on January 23, 2019. Shortly thereafter, on January 25, 2019, this dispute was returned to my attention. By letters dated, January 25, and 31, 2019, a telephone conference on January 23, 2019, and various e-mail communications, Defendants complained that the production of Dr. Saed's laboratory notebooks was incomplete and untimely. For example, there appeared to be different versions of the laboratory notebooks, some with data whited-out, and with pages missing entirely. On February 5, 2019, I filed a letter order and opinion, again requiring the complete production of Dr. Saed's laboratory notebooks and requiring Dr. Saed to appear for an additional deposition not to exceed one day.

Dr. Saed appeared for a second deposition on February 14, 2019. At the February 14, 2019 deposition the parties agreed that the court reporter would make copies of Dr. Saed's laboratory notebooks and provide the same to Defendants after the deposition. However, Dr. Saed himself did not permit the court reporter to copy all the pages contained in one of the laboratory notebooks (the "Notebook in Dispute" or the "Notebook"), that is, Dr. Saed did not allow "non-talcum powder" research to be copied, claiming that the information is beyond the scope of the Court's prior order, and contains confidential and proprietary data that is not relevant to this litigation. The Parties raised the dispute by letters to me dated April 12, 2019 and April 17, 2019. On April 19, 2019, I requested further information from the parties, via e-mail, to which the Parties responded by letters dated April 22, 2019 and April 23, 2019. On April 26, 2019 I issued a third letter opinion, again requiring the production of the entire Notebook in Dispute.

The PSC filed an appeal of my April 26, 2019 letter opinion and order. Judge Wolfson heard argument on the PSC's appeal on May 14, 2019 and ordered the PSC to produce Dr. Saed's entire Notebook in Dispute to me for an *in camera* review. The Court noted that if the unproduced pages of the Notebook are not related to talcum powder, no further action will be necessary, and if the pages are related to talcum powder, the PSC would have a right to appeal my decision to Judge Wolfson. I have reviewed the entire Notebook in Dispute *in camera*, and have compared it to the pages produced and provided to me as Exhibit 24 to Dr. Saed's deposition ("Exhibit 24"). Based on my review, I am satisfied that none of the unproduced pages of the Notebook are relevant to Dr. Saed's talc-related research.

The Notebook in Dispute can be broken into three discrete subparts: 1) Exhibit 24, the portion already produced; 2) the portion containing allegedly unrelated research; and 3) the remainder.

The portion of the Notebook which has been produced, Exhibit 24, coincides with pages 2, and 22-34 of the Notebook, with minor exceptions. This portion of the Notebook contains laboratory notes dated from 9/26/17 to 10/30/17. In reviewing the substance of the pages of Exhibit 24 in comparison to the copy of the full laboratory notebook I reviewed *in camera*, I am satisfied that all relevant information from the talc-related study was produced. I note some instances where copies of notebook pages were cut off, but what is missing does not appear

All Counsel of Record
May 23, 2019
Page 3

significant.  This portion of the Notebook has pages that reference "talc," but the word "talc" does not appear on every page.

      The portion of the Notebook in Dispute containing allegedly unrelated research, pages 3-19 the Notebook, contains experiment notes dated 3/24/17 to 9/25/17.  There is no page from which I can determine the title of the experiment, the sponsor of the project, or why this portion of the Notebook exists.  I note that the word talc does not appear on any page, but the name of a seemingly unrelated product appears on some, but not all, pages.  I am relying on Dr. Saed's deposition testimony (Saed Dep. Tr. at 56:13-23, 81:6-19, 84:3-10), and the representation of Plaintiffs' counsel (L. O'Dell Apr. 17, 2019 Ltr. at 1-2), which I have no reason to doubt, that the project is completely unrelated to the talc-related study.

      The remainder of the Notebook in Dispute contains primarily blank pages.  There are a few pages that include notes and portions of an article, none of which appear to be pertinent.  There are other pages that include a map of the United States and a map of the Washington DC metro system.  I do not find any of these pages to be relevant to any issue in this litigation.

      The unproduced portions of the Notebook in Dispute do not seem to relate to any talc research.  Thus, I find that the remaining pages of the Notebook in Dispute, which I have reviewed *in camera*, should not be produced to Defendants.

      So Ordered.

                                                         Very truly yours,

                                                         Joel A. Pisano

cc:     Honorable Freda L. Wolfson (via ECF and First-Class Mail)
           Honorable Lois H. Goodman (via ECF and First-Class Mail)