# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (FLW) (LHG)<br><br>ORAL ARGUMENT REQUESTED |

## DEFENDANT PERSONAL CARE PRODUCTS COUNCIL'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF JONATHAN BORAK, M.D., DABT

DATED: May 29, 2019

Respectfully submitted,

PERSONAL CARE PRODUCTS COUNCIL

By: */s/ Thomas T. Locke*

Thomas T. Locke
Rebecca Woods
Renee Appel
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 463-2400
Facsimile:  (202) 828-5393
tlocke@seyfarth.com
rwoods@seyfarth.com

Richard W. Wedinger
Jennifer Cheong
BARRY, McTIERNAN & WEDINGER P.C.
10 Franklin Avenue
Edison, NJ 08837
Telephone: (732) 738-5600
Facsimile: (732) 738-7518
ataylor@bmctwlaw.com
jcheong@bmctwlaw.com

*Attorneys for Defendant Personal Care Products Council*

# **TABLE OF CONTENTS**

**Page**

I.     DR. BORAK IS WELL-QUALIFIED TO OFFER HIS OPINIONS. ............1

II.    DR. BORAK'S METHODOLOGY IS WELL-RECOGNIZED AND
       WAS RELIABLY APPLIED. .......................................................................6

CONCLUSION ........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
  299 F. Supp. 3d 1291 (N.D. Fla. 2018) ...............................................................7

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*,
  348 F.3d 271 (1st Cir. 2003).................................................................................15

*Holbrook v. Lykes Bros. S.S. Co.*,
  80 F.3d 777 (3d Cir. 1996) ..............................................................................1, 7

*Humphries v. Mack Trucks, Inc.*,
  198 F.3d 236 (4th Cir. 1999) ..............................................................................11

*In re Mirena IUD Prods. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016) ..................................................................7

*Pineda v. Ford Motor Co.*,
  520 F.3d 237 (3d Cir. 2008) ................................................................................1

*Tompkin v. Philip Morris USA, Inc.*,
  362 F.3d 882 (6th Cir. 2004) ..............................................................................15

*United States v. Caputo*,
  374 F. Supp. 2d 632 (N.D. Ill. 2005)..................................................................11

*In re Welding Fume Prod. Liab. Litig.*,
  No. 1:03-CV-17000, 2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) .................15

*In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod.
Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 6302573 (S.D.
Ill. Dec. 16, 2011) ..............................................................................................11

*In re Zyprexa Prods. Liab. Litig.*,
  489 F. Supp. 2d 230 (E.D.N.Y. 2007) ..................................................................7

## Other Authorities

Fed. R. Civ. P. 26 .....................................................................................................12

Fed. R. Evid. 702 ................................................................................................1, 6

Goldstein & Henifin, Fed. Judicial Ctr., *Reference Guide on Toxicology*, in *Reference Manual on Scientific Evidence* (3 ed. 2011) ................................................................................................3, 6

Green et al., Fed. Judicial Ctr., *Reference Guide on Epidemiology*, in *Reference Manual on Scientific Evidence* (3d ed. 2011) ...................................14

Kaye, David, et al., Fed. Judicial Ctr.*, Reference Guide on Statistics*, in *Reference Manual on Scientific Evidence* (3 ed. 2011)..................................14

Plaintiffs' Motion to Exclude the Opinions of, *inter alia*, Defendant Personal Care Products Council's ("PCPC") Expert Jonathan Borak, M.D. (Dkt No. 9737)[1], fails because:  (1) Dr. Borak, a former Clinical Professor of Epidemiology & Public Health at Yale University, a Board Certified Toxicologist, and a physician, is well-qualified to offer the opinion that science has not established that perineal talc use causes ovarian cancer; and (2) Dr. Borak reliably applied a thorough and well-respected methodology in reaching this and his other opinions.

## I.     DR. BORAK IS WELL-QUALIFIED TO OFFER HIS OPINIONS.

Plaintiffs' specious argument that Dr. Borak is unqualified to offer his opinions mischaracterizes the nature of his opinions, ignores his education and decades of experience, and smacks of desperation.

The qualification requirements of Rule 702 of the Federal Rules of Evidence are interpreted "liberally."  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).  "[M]ost arguments about an expert's qualifications relate more to the weight to be given the expert's testimony than to its admissibility."  *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782-83 (3d Cir. 1996).

---

[1] The full title of Plaintiffs' supporting memorandum is "The Plaintiffs' Steering Committee's Memorandum of Law in Support of its Motion to Exclude the Opinions of Defendants' Epidemiology Experts Karl Ballman Ph.D., Christian Merlo, M.D., MPH, Gregory Diette, M.D., MHS, and Jonathan Borak, M.D., DABT" (Dkt. No. 9737-1) (hereinafter, "Plaintiffs' Motion to Exclude Epidemiology Experts").  PCPC responds only to that portion of Plaintiffs' motion relating to Dr. Borak.

Without any basis, Plaintiffs attempt to limit Dr. Borak's opinions to epidemiology. Nowhere in his report or deposition testimony is there support for this limitation. Dr. Borak is an epidemiologist. He also is a toxicologist and a physician. As he repeatedly stated during his deposition when plaintiffs attempted to limit his testimony, his opinions relate to all three fields.[2]

Plaintiffs argue that Dr. Borak cannot offer his opinions because "[h]e does not have a degree in epidemiology." Plf. Motion at 6. That argument misses the mark for several reasons. Dr. Borak is Board Certified in Toxicology by the American Board of Toxicology.[3] He is a Fellow of the Academy of Toxicological Sciences, and the American Industrial Hygiene Association. For nearly two decades at the Yale University School of Public Health, Dr. Borak taught required courses entitled "Foundations of Toxicology" and "Foundations of Risk Assessment."[4] Toxicology involves identifying and understanding the alleged

---

[2] *See, e.g.*, Borak Deposition Transcript ("Borak Tr.") Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 128:6-20 (testifying, "I'm not here simply as an epidemiologist."). Rather than submit duplicate copies and add to the exhibits presented to the Court, PCPC references the exhibits submitted by Plaintiffs and the Johnson & Johnson defendants. If the Court would prefer that PCPC submit separate copies of exhibits for this Opposition, PCPC will do so on request.

[3] Dr. Borak's Curriculum Vitae, Exhibit 2 to the Deposition of Dr. Borak attached as Exhibit 1 to the Declaration of Thomas T. Locke.

[4] Borak Tr. at 46:20-24.

adverse effects of external chemicals substances on biological systems.[5]  That is precisely what Dr. Borak's opinions relate to in this litigation.

Dr. Borak also is Board Certified in Internal Medicine and Preventive Medicine (Occupational Medicine).  He is a Clinical Professor of Medicine at Yale University, a faculty member of the Yale Occupational and Environmental Medicine Program, and an Adjunct Associate Professor of Medicine at The Johns Hopkins University.  Dr. Borak is a Fellow of the American College of Physicians, the American College of Occupational and Environmental Medicine, and the Royal College of Physicians of Canada.[6]

And, Dr. Borak is an epidemiologist.  Until recently, Dr. Borak was "Clinical Professor of **Epidemiology** & Public Health" at Yale University.[7]  He held that position for a decade.  Before that, for eight years, he was "Associate Clinical Professor of Epidemiology & Public Health" at Yale University.  Yale invited Dr. Borak to teach epidemiology based on his decades of experience

---

[5]Goldstein & Henifin, Fed. Judicial Ctr., *Reference Guide on Toxicology*, in *Reference Manual on Scientific Evidence* at 635 (3d ed. 2011) (herein after *Ref. Guide on Toxicology*).

[6] Borak Report Exhibit 10 to Plaintiffs' Motion to Exclude Epidemiology Experts at 1-2, ¶¶2-5.

[7] Borak Report at 1, ¶1(emphasis added).  *See also* Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 38:4-16; 39:22 - 40:7 (responding to questions regarding epidemiology training and work); 44:9-21 (discussing Clinical Professor of Epidemiology & Public Health at Yale University).

working "in the area of risk management and epidemiological-type studies."[8]  The fact that Yale concluded that Dr. Borak was sufficiently qualified in epidemiology to be a full professor on the topic should end the debate on his epidemiologic qualifications.

In a vain attempt to minimize his position as a Clinical Professor of Epidemiology & Public Health at Yale University and his decades of epidemiological experience, Plaintiffs misleadingly argue that Dr. Borak has not taught a course on epidemiology.  In fact, Dr. Borak regularly "lectured in a number of courses in epidemiology and public health."[9]  Although he may not have been the director for epidemiology courses, he was called upon because of his expertise to lecture regularly in the area of epidemiology.[10]  His teaching included the topics of design, development and interpretation of epidemiological studies, (*e.g.*, cohort versus case-control, prospective versus retrospective) and causal

---

[8] Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 38:17 - 39:7 (responding to questions regarding reason Yale invited him to join epidemiology faculty).

[9] Borak Tr. 46:24 - 47:2.  With respect to questions regarding courses he taught and lectures he gave, for whatever reason, plaintiffs' counsel directed Dr. Borak not to refer to his CV for answers.  Borak Tr. 46:7-10.

[10] Borak Tr. 47:3 - 48:19.

inference (*e.g.*, Bradford-Hill's Postulates, Koch's Postulates, dose-response, and biological models of cancer).[11]

Dr. Borak studied epidemiology beginning in 1974 at McGill University as part of a Robert Wood Johnson funded postdoctoral program.[12]  His Board Certification examinations in toxicology and occupational medicine required epidemiological courses and concepts.[13]  Dr. Borak has written book chapters that deal with the epidemiological aspects of certain kinds of exposures.[14] Epidemiological concepts are central to a great number of articles and papers that Dr. Borak has had published.[15] And, he has published on epidemiological studies.[16] As Dr. Borak explained in his deposition:

> Epidemiology permeates my thinking scientifically, so it's hard to differentiate. I don't think that I'm working as specifically an epidemiologist, though I am doing that here, but I'm not here simply as an epidemiologist.[17]

---

[11] Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 220:16 - 221:1; 114:4-12.

[12] Borak Tr. at 32:24 - 33:3.

[13] Borak Tr. at 40:2-6.

[14] Borak Tr. at 60:7-9.  *See also* Borak Report Exhibit 10 to Plaintiffs' Motion to Exclude Epidemiology Experts at 2, ¶6.

[15] Borak Tr. at 63:16-20.

[16] *See, e.g.*, Borak Tr. at 64:4-23; 113:13-17.

[17] Borak Tr. at 128:1-7.

The Reference Manual on Scientific Evidence, "Reference Guide on Toxicology" recognizes the value of combined toxicological and epidemiologic expertise. "Clearly, both epidemiology and toxicology have much to offer in elucidating the causal relationship between chemical exposure and disease."[18]  As a toxicologist, an epidemiologist and a physician, Dr. Borak is well qualified to provide expert testimony regarding the alleged adverse effects of talc-based body powders.

## II.    DR. BORAK'S METHODOLOGY IS WELL-RECOGNIZED AND WAS RELIABLY APPLIED.

Plaintiffs erroneously argue that Dr. Borak "did no analysis whatsoever and employed no methodology" to reach these opinions.[19]  Again, Plaintiffs' argument fails on multiple levels.  As with their failed attempt to limit his qualifications, Plaintiffs' methodology argument ignores Dr. Borak's report, his testimony and the nature of his opinions.

Rule 702 of the Federal Rules of Evidence provides that expert testimony is admissible when a qualified witness offers an opinion that "is based on sufficient facts or data," and is "the product of reliable principles and methods," which have been reliably applied.

---

[18] *Ref. Guide on Toxicology* at 657.

[19] Plaintiffs' Motion to Exclude Epidemiology Experts at 64.

Defense experts are not expected to offer opinions that would be sufficient to prove or disprove a causal relationship. *See Holbrook*, 80 F.3d at 786 (noting that, although expert's testimony would have been insufficient to prove causation, the defense did not bear this burden). This is so because defendants "have no burden to produce models or methods of their own; they need only attack those of plaintiffs' experts." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007). As a result, it is "entirely appropriate" for defendants' experts to offer what are "essentially, critiques of [p]laintiffs' experts' evidence, methodologies, and conclusions." *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1368 (N.D. Fla. 2018). Thus, "pointing to the absence of convincing studies or the weaknesses of studies on which [p]laintiffs rely, and evaluating them in light of their . . . experience, training and research, is . . . a logical and valid approach" to responding to plaintiffs' experts' opinions. *See, e.g., In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 418-19 (S.D.N.Y. 2016). In other words, a defense expert has no obligation to "offer a competing general causation opinion" and may offer an opinion that "criticiz[es] the analysis and conclusions presented by another party." *See In re Abilify,* 299 F. Supp. 3d at 1368.

With that framework, among other topics, Dr. Borak opines that science has not established that perineal talc use causes ovarian cancer. Plaintiffs concede that,

to opine on whether or not talcum powder causes ovarian cancer, or whether science has established that it does (or does not)[, Dr. Borak] has to review the evidence and employ some discernable methodology.[20]

Plaintiffs argue that Dr. Borak did neither.  The facts demonstrate otherwise.

To form his opinions, for the past five years, Dr. Borak personally analyzed:

- **510 scientific papers and articles** regarding the alleged connection between talc and ovarian cancer and related issues.[21]  The list of materials that Dr. Borak analyzed is 28-pages long;

- **45 expert reports** from this and other talc-ovarian cancer litigation;[22]

- **23 days of deposition transcripts** for experts in this and other talc-ovarian cancer litigation;[23] and

- **22 days of trial and *Kemp* hearing transcripts** for experts in this and other talc-ovarian cancer litigation.[24]

- Countless websites regarding ovarian cancer risk factors on a periodic frequency.[25]

---

[20] Plaintiffs' Motion to Exclude Epidemiology Experts at 63.

[21] Borak Report Exhibit 10 to Plaintiffs' Motion to Exclude Epidemiology Experts at Attachment 2; Supplemental List of Materials Reviewed dated March 29, 2019.

[22] Borak Report Attachment 1.

[23] Borak Report Attachment 1.

[24] Borak Report Attachment 1.

[25] Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 242:1-6; 292:20-24; 293:9-16.

No Plaintiffs' expert exceeds the number and breadth of materials that Dr. Borak reviewed, and few even come close to analyzing this much information.[26] Dr. Borak spent 900 hours analyzing the alleged connection between talc and ovarian cancer.[27] Applying Plaintiffs' terminology and standard, Dr. Borak clearly "review[ed] the evidence."

After analyzing all of this information, Dr. Borak drafted a 17-page report with 50 references and a 12-page chronology with 37 references.[28] The report and chronology summarize, among other topics, his findings regarding whether, when and by whom, if any one, it has been determined that perineal use of talc-

---

[26] *Compare* McTiernan Report Exh. C7 to Tersigni Cert. (240 documents considered); Moorman Report Exh. C35 to Tersigni Cert. (345 documents considered); Plunkett Report Exh. C28 to Tersigni Cert. (245 documents considered); Siemiatycki Report Exh. C21 to Tersigni Cert. (161 documents available in the public domain and 289 documents not available in the public domain); Singh Report Exh. C40 to Tersigni Cert. (322 documents considered); Smith-Bindman Report" Exh. C36 to Tersigni Cert. (523 documents considered); Zelikoff Report Exh. C24 to Tersigni Cert. (433 documents considered).

[27] Exhibits 3 and 30 to the Deposition of Dr. Borak attached as Exhibit 2 to the Declaration of Thomas T. Locke (invoices reflecting approximately 900 hours of time analyze issues). Dr. Borak's researchers spent an addition 212 hours analyzing related issues. Ironically, given the arguments they now make, during his deposition, Plaintiffs' counsel chided Dr. Borak for spending so much time analyzing talc issues. *See, e.g.*, Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 230:14-24.

[28] Borak Report Exhibit 10 to Plaintiffs' Motion to Exclude Epidemiology Experts and Attachment 3.

containing powder causes ovarian cancer.[29]  Dr. Borak concluded that "science has

not established that perineal talc use causes ovarian cancer."[30]  He further

concluded that,

> Outside of reports and testimony by litigation experts, the
> strongest published statement I have found regarding the
> proposed carcinogenicity of perineal talc is the 2010 IARC
> conclusion that the evidence is "*limited*" and that it is "*possibly
> carcinogenic to humans*", a conclusion that has been repeated in
> the most recent studies and reports.[31]

Plaintiffs erroneously argue that Dr. Borak employed no methodology to

reach these opinions.[32]  To the contrary, in forming his opinions, Dr. Borak

analyzed every epidemiological cohort study, case control study, meta-analysis,

animal exposure study, in vitro study, toxicological article and every other

scientific paper regarding the alleged link between talc and ovarian cancer.  He

analyzed what other experts opined on the topic.  He then re-read important

materials.  And, Dr. Borak used his over 45 years of experience and training to

evaluate the merits of those scientific materials.[33]

---

[29] Borak Report at 2, ¶8; Borak Tr. 230:14-24.

[30] Borak Report at 13, ¶47.

[31] Borak Report at 13, ¶46.

[32] Plaintiffs' Motion to Exclude Epidemiology Experts at 64.

[33] Borak Report at 2, ¶¶ 8-10; Borak Tr. 202:4 - 203:23; 239:15 - 241:6; 241:16 -
242:6  (briefing discussing the method for forming his opinions).

Courts routinely recognize that experts, especially those like Dr. Borak with epidemiology expertise, approach their work by reviewing the relevant literature and drawing on their experience to render an opinion. *See, e.g.*, *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 6302573, at *14 (S.D. Ill. Dec. 16, 2011); *United States v. Caputo*, 374 F. Supp. 2d 632, 642 (N.D. Ill. 2005) (reasoning that, for an expert with substantial experience, "the review of records, studies, and literature available during the relevant time period presents a sound methodology"). Dr. Borak's opinions are well-supported by the scientific literature, thereby reinforcing the reliability and admissibility of his opinions. *See, e.g.*, *Humphries v. Mack Trucks, Inc.*, 198 F.3d 236 (4th Cir. 1999) (reasoning that expert opinion supported by relevant literature is more reliable and, therefore, admissible).

Plaintiffs grossly mischaracterize his report and testimony when they argued that Dr. Borak "did not address studies that, for some inexplicable reason, 'did not strike [him] as being significant,'"[34] Dr. Borak clearly considered and "addressed" all relevant studies—they are included in his list of materials considered. Plaintiffs have not identified a relevant study that Dr. Borak failed to consider. The questions that elicited the answers that Plaintiffs mischaracterize relate to how Dr. Borak decided whether or not to reference in his report or his chronology a

---

[34] Plaintiffs' Motion to Exclude Epidemiology Experts at 63.

particular study.  Dr. Borak explained that he included in his report or his chronology studies because "they were more important markers," they reflect "the comments of some of the experts in their testimony," or were "the important papers when IARC looked at it."[35]  This is precisely the type of analysis that experts perform.  Including in a report or chronology every article that he reviewed is not required by Rule 26 of Federal Rules of Civil Procedure and would have resulted in an unwieldy laundry list that would have been of little value.

Plaintiffs' also complain that Dr. Borak did not perform a Bradford Hill analysis.  Plaintiffs essentially argue that Bradford Hill is a litmus test for whether an expert has used an appropriate methodology.  If that is so, plaintiffs' pharmacologist and toxicologist must be excluded because neither performed that analysis.[36]  One of Plaintiffs' epidemiologists even refutes Plaintiffs' argument when he states that Bradford Hill postulates "are not formal criteria, but rather are

---

[35] Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 298:10-21.  *See also* 299:15-23 (explaining that "some of these papers were disregarded by [the IARC authors] for example, for various and specific reasons. And I accepted that as I read, I was aware of the papers, and I read them all. But by 2006 those papers had been adjudicated, so to speak, by the IARC group. And so I was looking for highlights in the chronology prior to that.").

[36] Neither Dr. Plunkett nor Dr. Zelikoff reference a Bradford Hill analysis in their reports.  Plunkett Report Exh. C28 to Tersigni Cert.; Zelikoff Report Exh. C24 to Tersigni Cert. *See also* Plunkett Deposition Tr. Exh. B33 to Tersigni Cert. at 74:16-18; 75:1-4 (testifying that she "did not sit down and do a Bradford Hill analysis."); Zelikoff Deposition Tr. Exh. B31 toTersigni Cert. at 73: 8-16 (same).

12

more in the nature of a memory aid to help us review the evidence about any given causal association," and "any suggestion that Hill's 'aspects' or 'features' or 'characteristics' of an association should be used as a formal checklist of criteria is simplistic and wrong."[37]  Moreover, as Dr. Borak explained: "I have been teaching Bradford Hill and writing about Bradford Hill.  And it permeates my -- my professional thinking.  It is hard for me to review the scientific literature without a little piece of Bradford Hill back there somewhere in my occipital."[38]

Oddly, Plaintiffs also argue that his methodology and/or qualifications are unsound because, prior to five years ago when he was retained in connection with talc-ovarian cancer litigation, Dr. Borak had not previously considered the causation issue.  If that disqualifies an Dr. Borak, it also disqualifies Plaintiffs' toxicologists and many of their other experts, who considered the alleged talc-ovarian cancer connection for far less time and in far less depth.[39]

---

[37] Siemiatycki Report Exh. C21 to Tersigni Cert. at 22.

[38] Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 114:4-12.

[39] *See, e.g.*, Zelikoff Deposition Tr. Exh. B31 to Tersigni Cert. at 18:14-17 22:10-17, 25:3-19, 30:3 - 31:15, 141-10-17, 165:1-7 (Zelikoff analyzed talc-ovarian cancer alleged link for only 13 months (Apr. 2017 - Feb. 2018 and Oct. 2018 - Nov. 2018)); Plunkett Deposition Tr. Exh. B33 to Tersigni Cert. at 10:22-25, 11-12, 18:12-25, 19:1-6; McTiernan Deposition Tr. Exh. B2 to Tersigni Cert.at 46:12-22, 59:10 - 61:1; Singh Deposition Tr. Exh. B47 to Tersigni Cert. at 40:20-25, 41:1-2, 84:10-17, 85:6-8 (Singh analyzed talc-ovarian cancer alleged link for only 12 months (June - Aug. and Oct 2017; Feb. - Mar., May - Jul, and Sept. - Nov. 2018)); Smith-Bindman Deposition Tr. at Exh. B40 to Tersigni Cert. at  48:14-20

Similarly, Plaintiffs argue that Dr. Borak applied no methodology because he only analyzed, evaluated and explained existing scientific materials. That argument undercuts the methodology that Plaintiffs' experts applied. Plaintiffs' toxicologists did no independent animal or other experiments to reach their opinions.[40] They merely analyzed existing science. And, Plaintiffs' epidemiologists performed no new, independent cohort or case control studies.[41] Again, if analyzing and evaluating scientific materials precludes the testimony of Dr. Borak, it also precludes the testimony of Plaintiffs' experts who purport to apply the same approach but considered fewer materials.

---

and 259:14-25; 260 - 261 (Smith-Bindman analyzed talc-ovarian cancer alleged link for only 8 months (June and Nov. 2017; Mar. - Apr., June, Sept. - Nov. 2018)).

[40] *See, e.g.*, Plunkett Report Exh. C28 to Tersigni Cert. (not identifying any experiments that she performed); Zelikoff Report Exh. C24 to Tersigni Cert (same).

[41] McTiernan Report (failing to cite any cohort or case control study performed by expert); Singh Report (same); Smith-Bindman Report (same). Although some of Plaintiffs' epidemiologists purport to perform meta-analyses, as Dr. Borak explained, a meta-analysis is not an original study. Borak Tr. Exh. 11 to Plaintiffs' Motion to Exclude Epidemiology Experts at 317:18-24. A meta-analysis involves "aggregate[ing] results across studies." Kaye, David, et al., Fed. Judicial Ctr.*, Reference Guide on Statistics*, in *Reference Manual on Scientific Evidence* at 254 n. 107 and 289 (3d ed. 2011) (a meta-analysis "[a]ttempts to combine information from all studies on a certain topic). *See also* Green et al., Fed. Judicial Ctr.*, Reference Guide on Epidemiology*, in *Reference Manual on Scientific Evidence* at 579 (3d ed. 2011) (same). Plaintiffs' experts are manipulating the same cohort and case control studies in a misguided effort to change the results and create a relationship that does not exist.

Plaintiffs also criticize the chronologic nature of Dr. Borak's report. However, Plaintiffs allege that PCPC and its members manipulated the science regarding whether talc-based body powders cause ovarian cancer.[42]  That is the essence of Plaintiffs' claim against PCPC.  At Plaintiffs' request, the Court authorized Plaintiffs' to conduct broad discovery on that topic.[43]  In that regard, Dr. Borak analyzed when, who and what scientists published regarding the alleged link between talc and ovarian cancer.  Having raised the issue, Plaintiffs cannot now argue that PCPC is precluded from offering expert testimony regarding when, if at all, scientists opined that talc causes ovarian cancer.

Courts routinely admit expert testimony regarding the history of scientific and medical literature on the connection between a purported risk factor and a disease.  *See, e.g.*, *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 887 (6th Cir. 2004); *Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 277 (1st Cir. 2003).  An expert need not be a trained historian.  If the expert is qualified by other means, the expert may be permitted to offer a historical review and comparison of the publically available medical and scientific literature regarding an alleged toxin. *See, e.g.*, *In re Welding Fume Prod. Liab. Litig.*,  No. 1:03-CV-17000, 2005 WL 1868046, at *16 (N.D. Ohio Aug. 8, 2005).

---

[42] See Amended Complaint ¶¶ 35, 39, 52, 164(b), 164(e), 213(b).

[43] MDL Status Conf. Tr., Sept. 6, 2017 at 4–5.

To be sure, Dr. Borak's opinions are not limited to his chronological evaluation of the scientific and medical studies and articles.  He concludes, based on his review of all relevant materials from whatever time, that science has not established that perineal talc use causes ovarian cancer.[44]  Nonetheless, his historical perspective is relevant to the allegations that Plaintiffs raised in this phase of the litigation regarding defendants' purported manipulation of science to make it appear that the products at issue here do not cause ovarian cancer.

## CONCLUSION

For the reasons set forth above, PCPC respectfully requests that The Plaintiffs' Steering Committee's Memorandum of Law in Support of its Motion to Exclude the Opinions of Defendants' Epidemiology Experts Karl Ballman Ph.D., Christian Merlo, M.D., MPH, Gregory Diette, M.D., MHS, and Jonathan Borak, M.D., DABT (Dkt. No. 9737-1) be denied.

---

[44] Borak Report Exhibit 10 to Plaintiffs' Motion to Exclude Epidemiology Experts at 13, ¶47.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document and supporting materials were filed electronically with the Clerk of the Court using the CM/ECF system and is available for viewing and downloading from the CM/ECF system. The forgoing documents were also served upon all counsel of record via the CM/ECF system on this 29th day of May, 2019.

SEYFARTH SHAW LLP
*Attorneys for Personal Care Products Council*

*/s/ Thomas T. Locke*

Thomas T. Locke, Esq.