# Exhibit 1

Official - Subject to Final Review

```
 1      IN THE SUPREME COURT OF THE UNITED STATES

 2   - - - - - - - - - - - - - - - - - x

 3   KSR INTERNATIONAL CO.,              :

 4            Petitioner                 :

 5      v.                               :  No. 04-1350

 6   TELEFLEX, INC., ET AL.              :

 7   - - - - - - - - - - - - - - - - - x

 8                            Washington, D.C.

 9                            Tuesday, November 28, 2006

10

11            The above-entitled matter came on for oral

12   argument before the Supreme Court of the United States

13   at 11:04 a.m.

14   APPEARANCES:

15   JAMES W. DABNEY, ESQ., New York, N.Y.; on behalf of

16      Petitioner.

17   THOMAS G. HUNGAR, ESQ., Deputy Solicitor General,

18      Department of Justice, Washington, D.C.; on

19      behalf of the United States, as amicus curiae,

20      supporting Petitioner.

21   THOMAS C. GOLDSTEIN, ESQ., Washington, D.C., on behalf

22      Of Respondents

23

24

25
```

1

Official - Subject to Final Review

1                    C O N T E N T S

2    ORAL ARGUMENT OF                                    PAGE

3    JAMES W. DABNEY, ESQ.

4        On behalf of the Petitioner               3

5    ORAL ARGUMENT OF

6    THOMAS G. HUNGAR, ESQ.

7        On behalf of the United States, as amicus

8        curiae, supporting Petitioner             18

9    ORAL ARGUMENT OF

10   THOMAS C. GOLDSTEIN, ESQ.

11       On behalf of the Respondents             27

12   REBUTTAL ARGUMENT OF

13   JAMES W. DABNEY, ESQ.

14       On behalf of Petitioner                  57

15

16

17

18

19

20

21

22

23

24

25

Alderson Reporting Company

Official - Subject to Final Review

 1                    P R O C E E D I N G S

 2                                      (11:04 a.m.)

 3              CHIEF JUSTICE ROBERTS:  We'll hear argument

 4    next in No. 04-1350, KSR International versus Teleflex,

 5    Incorporated.

 6              Mr. Dabney.

 7              ORAL ARGUMENT OF JAMES W. DABNEY

 8                ON BEHALF OF THE PETITIONER

 9              MR. DABNEY:  Mr. Chief Justice, and may it

10    please the Court:

11              This case concerns a very broadly worded

12    patent claim, claim 4 of the Engelgau patent, that the

13    Solicitor General and the United States Patent and

14    Trademark Office have both told this Court is invalid

15    under Section 103 of the Patent Act and was issued in

16    error.  The Federal Circuit's vacatur of summary

17    judgment in this case is grounded in a judicially

18    devised test that is fundamentally inconsistent with --

19              JUSTICE GINSBURG:  May I ask, if that's the

20    position of the PTO, why aren't they proceeding to

21    cancel the patent?

22              MR. DABNEY:  The case is in litigation at

23    this point, Justice Ginsburg, and in patent litigation

24    district courts are  vested with authority and this

25    Court is vested with authority to render a judgment of

Official - Subject to Final Review

1    invalidity under Section 282 of the Patent Act.

2              JUSTICE GINSBURG:  But the question is, you

3    say the PTO has recognized that it issued this patent,

4    that it's an invalid issuance.  So why aren't they

5    curing their own mistakes, never mind what a court is

6    going to do?

7              MR. DABNEY:  Well, there is the possibility

8    of director- initiated re-examination of patents as

9    certainly an administrative remedy that does exist.  But

10   where a case is in pending litigation such as this, the

11   traditional way that these disputes are resolved is for

12   a court to apply the law to the facts and render a

13   judgment on a defense of invalidity which has been

14   pleaded to the plaintiff's claim of patent infringement

15   in this case.  This issue arises in the context of a

16   defense pleaded to a claim for patent infringement and

17   I'm not sure that the Patent Office really could swoop

18   in and cut off the plaintiff's claim in the manner Your

19   Honor is suggesting.

20             The Federal Circuit in this case applied the

21   approach it's applied in previous cases, which is a

22   categorical approach.  The Federal Circuit says that no

23   matter what might be the nature of an alleged invention

24   or improvement, no matter how broad might be a claim

25   made in an issued patent, no matter how small might be

4

Official - Subject to Final Review

1    the difference between a patent claim and prior art, and

2    no matter how modest might have been the degree of skill

3    needed to devise subject matter described by a patent

4    claim, the Federal Circuit says regardless of any or all

5    of that a court of the United States can never, ever

6    sustain a defense of invalidity under Section 103 of the

7    Patent Act except in a very limited and narrowly defined

8    circumstance.

9            That circumstance is a record that includes

10   clear and convincing evidence, that yields a jury

11   verdict or specific finding showing what the Federal

12   Circuit calls a teaching, suggestion, or motivation to

13   combine prior art teachings in the particular manner

14   claimed by the patent at issue.  The decision in this

15   case treats Section 103 not, as this Court has said, as

16   a codification of a condition for patentability whose

17   benchmark is skill and ingenuity.  The decision in this

18   case treats section 1 as implementing a supposed

19   entitlement to patent protection that a court --

20           JUSTICE GINSBURG:  You're talking about in

21   this case.

22           MR. DABNEY:  Yes.

23           JUSTICE GINSBURG:  We're talking about what

24   the law should be.  Would you make, be making the same

25   argument if we were looking at the most recent decisions

Alderson Reporting Company

Official - Subject to Final Review

1    of the Federal Circuit, the ones that they issued within

2    the year, and each as I remember they held that the

3    patent was obvious and therefore invalid?  Suppose we

4    were dealing in what was, the cases were, what were

5    they, Kahn, Alpha, and Diestar?

6              MR. DABNEY:  Your Honor, what the Federal

7    Circuit has done in recent times has been after a

8    certiorari was granted in this case to erect a series of

9    escape devices from what is otherwise a categorical test

10   that must be imposed in all cases.  As a practical

11   matter the Federal Circuit still characterizes as an

12   issue of fact for determination by a jury the presence

13   or absence of teaching, suggestion, or motivation, and

14   so these seemingly remedial steps that have been taken

15   by the Federal Circuit do not materially affect the

16   problem that's praised by this case, which is the well

17   nigh impossibility nowadays of being able to have an

18   efficient, inexpensive, quick and predictable

19   determination of whether claimed subject matter meets

20   the statutory standard.

21             JUSTICE ALITO:  But what is the difference

22   between asking whether something is implicit in the, in

23   the prior art and simply asking whether it would have

24   been obvious to a person of ordinary skill in the art?

25             MR. DABNEY:  The statute and this Court's

6

Official - Subject to Final Review

```
 1   precedents make the benchmark of patentability skill,
 2   what degree of skill is needed to devise subject matter
 3   in respect to an objectively defined problem, objective
 4   looking at the claim and looking at the prior art?  What
 5   the Federal Circuit is talking about now is an inquiry
 6   into motivation, not skill.  Those two are very
 7   different concepts.  There is not a word in this Court's
 8   precedents that says that whether a patent should be
 9   granted or not depends on whether a hypothetical person
10   had hypothetical motivation to do what everybody knows
11   he could do.
12            CHIEF JUSTICE ROBERTS:  Of course, the
13   reason that the Federal Circuit has devised this
14   additional test or gloss on Graham is that they say
15   obviousness is, it's deceptive in hindsight.  In
16   hindsight everybody says, I could have thought of that;
17   and that you need -- if you don't have the sort of
18   constraint that their test imposes, it's going to be too
19   easy to say that everything was obvious.
20            MR. DABNEY:  Well, the Court, Mr. Chief
21   Justice, the Court needs to be very clear what is meant
22   by the term "hindsight."  If by hindsight is meant
23   looking at what's claimed now, the subject matter sought
24   to be patented, and comparing that to the prior art, to
25   call that analytical process improper hindsight is to
```

7

Official - Subject to Final Review

1   make a frontal assault on the statute itself.  If by

2   hindsight means to posit a desired result, a clay

3   doorknob, and to ask whether more skill and ingenuity

4   than were required by ordinary skill in the art was

5   needed to do that, to say that that constitutes improper

6   hindsight is to make a frontal assault on the entire

7   body of this Court's precedents construing section 103

8   and its common law predecessors.

9           With regard to the kind of bias Your Honor

10  is talking about, this Court's precedents provide a

11  wealth of mechanisms for protecting against that,

12  including the statement towards the end of the Graham

13  opinion, which is the only source of the word

14  "hindsight" that I've seen cited in the amici brief,

15  which was a discussion of the secondary consideration.

16  So that in a case like Goodyear against Rayovac there's

17  an excellent case where the claimed subject matter seems

18  so simple in hindsight.  This was a case decided by this

19  Court in 1944.  A leakproof battery that had been a

20  problem that had defied solution for years and there was

21  all kinds of motivation to solve it, and the fact that

22  it was not solved was considered important by this Court

23  in sustaining the validity of the patent in that case,

24  which claimed nothing more than a sheet metal sheath

25  wrapped around the electrodes and materials generated in

Official - Subject to Final Review

1    the battery.

2              JUSTICE BREYER:  I can understand, I think,

3    what a teaching is.  I take it a teaching is you put all

4    the prior art -- that's what I guess that's what Judge

5    Rich explained, which I thought was very enlightening to

6    me in I can't remember the name of the case, Wigmore,

7    Winsmore --

8              MR. DABNEY:  Winslow.

9              JUSTICE BREYER:  Winslow.  You put it all

10   around the room.  All right, we've got it all around the

11   room, and I begin to look at it and if I see over that

12   it somehow teaches me to combine these two things, if it

13   says, Breyer, combine this and that, that's a teaching

14   and then it's obvious.  Now, maybe it doesn't have the

15   teaching, it just has the suggestion.  Maybe it says, we

16   suggest you combine this or that; okay, then it's

17   obvious.  But I don't understand, though I've read it

18   about 15 or 20 times now, it though I've read it about

19   15 or 20 times now, I just don't understand what is

20   meant by the term "motivation."

21             MR. DABNEY:  Well, the best I think anybody

22   could do would be to look at the opinion in this case

23   and try to figure that out.

24             JUSTICE BREYER:  I tried.  You've read a lot

25   of cases.  You're a patent lawyer, and so what is the

9

Official - Subject to Final Review

1    understanding as best you have it of what is just meant

2    by the term "motivation"?  To be more specific, if they

3    mean motivated to go look to the prior art, well,

4    anybody would want to look in the prior art.  If I want

5    to invent something I'll look anywhere.  I'll look to

6    the prior art.  I'll look to the Library of Congress.

7    I'll look to my cousin.  I mean, I'll look wherever I

8    can find it.  So they can't mean that, and if they don't

9    mean that what do they mean?

10          MR. DABNEY:  Well, in this case what the

11   respondents is Mr. Engelgau would have had no motivation

12   to look to the Asano-designed pedal because he was

13   trying to meet the requirements of Fort Motor Company

14   and Asano would not have met those requirements and

15   therefore Mr. Engelgau would have had no motivation to

16   start with Asano.

17          JUSTICE BREYER:  Say that again?  You

18   wouldn't have a motivation to look to the prior art to

19   find your problem.  What's an example where you have a

20   motivation distinguishing you from everybody else?  I

21   mean, everybody has a motivation to look to the prior

22   art.

23          JUSTICE GINSBURG:  You disagree with the

24   motivation test.

25          MR. DABNEY:  Yes.

10

Official - Subject to Final Review

1              JUSTICE GINSBURG:  So perhaps you're not the

2     --

3              JUSTICE BREYER:  Right person to ask.

4              (Laughter.)

5              MR. DABNEY:  I respectfully suggest --

6              CHIEF JUSTICE ROBERTS:  You don't have a

7     motive to answer that question right away.

8              JUSTICE BREYER:  Fine, that's fine.

9              MR. DABNEY:  I believe if you study

10    carefully this Court's precedence, including Graham

11    itself and just about every other case this Court has

12    ever decided, what this Court has said is the measure,

13    what our society agreed to pay off on is subject matter

14    that reflects a certain degree of skill.  And this Court

15    has rejected time and time again the notion that someone

16    who was the first simply to take advantage of the known

17    capability of technology was entitled to a patent.

18             JUSTICE KENNEDY:  Well, would it be, would

19    it be inadvisable for us to say the motive test teaches

20    us something important; it has a valuable place; it's

21    just not the exclusive test for what's obvious.

22             MR. DABNEY:  Certainly.

23             JUSTICE KENNEDY:  Or do we have to reject it

24    all out of -- out of hand?

25             MR. DABNEY:  The -- the presence or absence

Official - Subject to Final Review

1    of motivation to devise something.

2              JUSTICE KENNEDY:  Motivation in this special

3    sense.

4              MR. DABNEY:  Well, I'm not sure it is in a

5    special sense.  What the Federal Circuit has done is

6    has, it has attributed controlling significance to what

7    is in most cases at best a factor, and in fact is

8    nothing more than a legal argument about the preemptive

9    effect of prior art.  The motivation debate in this case

10   is all about what is the preemptive legal effect of the

11   Asano reference.  It either invalidates the claim --

12             JUSTICE KENNEDY:  But, but, but my question

13   is does it not serve to show us at least one way in

14   which there can be obviousness?

15             MR. DABNEY:  I would agree that if there is

16   --

17             JUSTICE KENNEDY:  It may not be the

18   exclusive test.  We're -- I'm asking what the test ought

19   to be.

20             MR. DABNEY:  Well, the test, I mean in this

21   case, the specific claim at issue in this case is very

22   analogous to the claim that this Court considered in the

23   Anderson's-Black Rock case.  What we have in this case

24   is no dispute as to any of the factual inquiries that

25   have traditionally defined patent validity analysis.

Alderson Reporting Company

Official - Subject to Final Review

 1   The prior art that we rely on, it's undisputed that it's

 2   prior art and it's in the record.  The level of skill is

 3   undisputed.  The quantum of difference between the

 4   claimed subject matter and the prior art is undisputed.

 5   The only issue in this case is what legal consequences

 6   follow from that.  What question do you ask to decide

 7   whether or not that difference adds up to a patentable

 8   invention?

 9          It's very analogous to what was going on in

10   the Anderson's-Black Rock case.  Anderson's-Black Rock

11   was a case like this in which someone had invented a

12   radiant heat burner and the patentee in that case had

13   seen that there was a market for using that by attaching

14   it to an asphalt spreader.  So the patent claim in that

15   case was taking someone else's invention, the radiant

16   heat burner and hanging it on a standard painting

17   apparatus and using it for its, one of its marketable

18   purposes.

19          This Court held in this, in the

20   Anderson's-Black Rock case that the patentee had not

21   done anything patentable in that case.  All he had done

22   was take a burner that functioned as a burner, and a

23   spreader that functioned as a spreader, and the two

24   components did not affect one another's operation at

25   all.  It was in the parlance of this Court's precedents,

13

Official - Subject to Final Review

1    an aggregation.

2              JUSTICE SCALIA:  How does -- how does

3    motivation enter into that analysis in that case?  How

4    would you, how would you have applied the motivation?  I

5    -- like Justice Breyer, I don't understand what the

6    motivation -- motivation element is.  How would you have

7    applied the --

8              MR. DABNEY:  Well, if the patentee in that

9    case --

10             JUSTICE SCALIA:  He had no particular

11   motivation to use that earlier patent, did he?

12             MR. DABNEY:  Well, actually in that case

13   there actually was quite a story.  In that case there

14   was a story that for years and years you'd had this cold

15   joint problem of laying successive courses of asphalt

16   blacktop, and -- and this guy actually saw something

17   that was interesting, that you could use this radiant

18   heat burner to solve the asphalt blacktop problem.  That

19   was not what he claimed, though.

20             What he claimed was an apparatus that just

21   had these two things together, and they didn't interact

22   with one another any more than if they had been both put

23   in the same shopping bag.  And that's what we have in

24   this case.  We have an adjustable pedal assembly that

25   does whatever --

14

Official - Subject to Final Review

1          JUSTICE KENNEDY:  No.  No.  No.  It took

2    from 10 years to go from -- I think 10 years from Asano

3    to Engelgau, so it must have been not all that obvious.

4          MR. DABNEY:  Well, the, on this record, and

5    even if you take at face value what's said in the

6    respondent's brief in this case, which is very largely

7    not based on the record, the story is, from Mr. Engelgau

8    is, Fort Motor Company had a particular requirement and

9    Mr. Engelgau sat down to design to it.  He to design a

10   pedal that had would meet Ford's requirements and one

11   way that he did that was to come up with the kind of

12   pedal assembly that's shown in the figures of the

13   patent.

14          But we are not here talking about the

15   patentability of the figures of the patent.  We are not

16   talking about the patentability of claims 1, 2 or 3 of

17   the patent; we are talking about claim 4 in which these

18   respondents got a little greedy.  Claim 4 describes

19   almost nothing --

20          JUSTICE KENNEDY:  Do you, do you concede --

21   do you concede that claims 1 through 3 are valid?

22          MR. DABNEY:  We take no position on that.

23   They're not an issue in the case.

24          JUSTICE KENNEDY:  If I had asked your

25   opinion as an expert would you --

15

```
 1                    (Laughter.)

 2                    MR. DABNEY:  Well, Your Honor, with respect,

 3       I would have no opinion on that question.

 4                    (Laughter.)

 5                    MR. DABNEY:  I could stand here and make

 6       arguments.

 7                    JUSTICE KENNEDY:  Well, I mean it seems to

 8       me that the whole argument that you're making as to Ford

 9       is that anybody knows you could, you use an electronic

10       -- you have an electronic throttle, it serves a purpose;

11       the pedal serves a purpose; put the two together.

12                    MR. DABNEY:  Here's the --

13                    JUSTICE KENNEDY:  Why doesn't -- don't 1, 2

14       and 3 do the same thing?

15                    MR. DABNEY:  Well, because -- because --

16                    JUSTICE KENNEDY:  If they're invalid then I

17       have -- then I'm struggling to find what your test is.

18                    MR. DABNEY:  Here's the reason.

19                    JUSTICE KENNEDY:  I don't know what your

20       test is.

21                    MR. DABNEY:  Here's the reason.  What's

22       shown in the figures of the Engelgau patent is an

23       adjustable pedal assembly that has a large bore tube

24       from which you suspended a pedal arm on a yoke, and it

25       slides back and forth along the tube.  And that's the
```

16

Official - Subject to Final Review

1   way that it provides for adjustment.  And in claims 1, 2

2   and 3 some of that structure is recited.  So those

3   claims would not necessarily be invalid by the Asano

4   reference because the Asana adjustment mechanism doesn't

5   use a tube, and doesn't use a yoke; it uses pins and

6   slots and it provides adjustment by a different

7   mechanism.  The respondents have not asserted claims 1,

8   2 and 3 in this case because those claims don't describe

9   anything remotely like the petitioner's pedals.  They

10  limited their claim to claim 4 because only by claiming

11  this enormous verbal abstraction that is claim 4 can

12  they make a colorable claim of patent infringement

13  against the petitioner in this case.

14          So I would respectfully submit that the

15  Court does not need to decide whether 1, 2 or 3 would be

16  valid but the point would be, the question would be what

17  we did in the Hotchkiss case or in the Anderson's-Black

18  Rock case or any of these cases.  Would it have required

19  more than ordinary skill to devise that claim structure

20  with those additional structural limitations to solve

21  some objectively defined problem, and that hasn't been

22  litigated or briefed.

23          JUSTICE KENNEDY:  Going back to the asphalt

24  case, were you suggesting that if they had made a claim

25  for a process patent, that it might have been valid?

17

Official - Subject to Final Review

1               MR. DABNEY:  Conceivably.  If there are no

2       further questions I'd like to reserve the rest of my

3       time.

4               CHIEF JUSTICE ROBERTS:  Thank you,

5       Mr. Dabney.

6               Mr. Hungar.

7           ORAL ARGUMENT OF THOMAS G. HUNGAR

8       ON BEHALF OF THE UNITED STATES, AS AMICUS CURIAE

9               SUPPORTING PETITIONER

10              MR. HUNGAR:  Thank you, Mr. Chief Justice,

11      and may it please the Court.

12              Construed as the sole means of proving

13      obviousness the teaching suggestion motivation test is

14      contrary to the Patent Act, irreconcilable with this

15      Court's precedents and bad policy.  It asks the wrong

16      question and in cases like this one, it produces the

17      wrong answer.  It should be rejected and the judgment of

18      the Court of Appeals should be reversed.

19              CHIEF JUSTICE ROBERTS:  What do you

20      understand motivation to refer to in that test?

21              MR. HUNGAR:  Well, it's not entirely clear,

22      Your Honor.  I think that it's sometimes difficult to

23      distinguish, certainly between motivation and

24      suggestion.  One way in which it is used for example, is

25      if there were some indication in the prior art that

18

Official - Subject to Final Review

1    doing something a certain way might save money and then

2    there would be a motivation to save money, which might

3    supply the requisite motivation for combining the two

4    prior art references.

5              JUSTICE KENNEDY:  Do you agree that in that

6    context it would serve a valid purpose, i.e., can we --

7    that is to say, can we keep the motivation test and then

8    supplement it with other, with other means of, other

9    ways of showing obviousness?

10             MR. HUNGAR:  Yes, Your Honor.  We agree that

11   teaching suggestion and motivation are valid means of

12   proving obviousness, valid considerations for the Court.

13   And this Court's precedents are entirely consistent with

14   that.  A number of cases cited by respondent show that

15   the Court has looked to suggestion as a means to

16   determining whether a patent is obvious.

17             The problem with the Federal Circuit's test

18   is it makes that the exclusive test and precludes

19   obviousness determinations in the absence of

20   satisfaction of that test which this Court's precedents

21   are clearly not consistent with.  In fact in Graham

22   itself, in the Sakraida case, in Dann against Johnston,

23   lower courts had held patents valid because of a lack of

24   suggestion.  This Court reversed without requiring or

25   even addressing the question whether there was some

19

Official - Subject to Final Review

1    explicit principle that had been proven by the party

2    challenging the patent, by clear evidence that there was

3    such a teaching suggestion motivation.  It's just

4    foreign to this Court's precedents as a mandatory

5    prerequisite for obviousness.

6              JUSTICE SOUTER:  What do you make of the,

7    sort of the revolution argument that whether it's

8    contrary or intention with, in fact the, it's been

9    applied in what is now the Fed Circuit for what, 20

10   years, more than 20 years I guess.  And to tip it over

11   now is going to produce chaos.  What's the answer to

12   that?

13             MR. HUNGAR:  Well, several things, Your

14   Honor.  First of all, of course, there can be no

15   legitimate reliance in lower court precedent that's

16   contrary to Supreme Court precedent, and it was an open

17   secret in the patent bar that the approach being taken

18   by the Federal Circuit was inconsistent with cases such

19   as this Court's Sakraida decision.

20             JUSTICE SOUTER:  Well, I realize there's

21   been comment on it, but guess I'm -- I'm raising the

22   question that comes up in the old motto.  I mean, if the

23   error is common enough and long enough, the error

24   becomes the law.  And in effect is that what we are

25   confronted with here?

20

Official - Subject to Final Review

1              MR. HUNGAR:  No, Your Honor.  I just think

2      it would be dangerous proposition for this Court to

3      endorse that line of argumentation but even leaving that

4      aside, it's not justified here on the facts.  And this

5      patent is a good example.  No one is suggesting that

6      claims 1 through 3 are invalid; the problem here is that

7      claim 4 sweeps so broadly, so much broader than what the

8      applicant in fact invented, that it sweeps in obvious

9      manifestations.

10             JUSTICE SOUTER:  No, but -- if we see it

11     your way, are there going to be 100,000 cases filed

12     tomorrow morning?

13             MR. HUNGAR:  I don't think so, Your Honor.

14     What we are talking about here are claims at the outer

15     boundaries of patentability, even under the Federal

16     Circuit's test.  And in those cases there will no doubt

17     be some claims, such as the claim in this case that can

18     be resolved at summary judgment by a court, that the

19     court can simply determine as a matter of law, it's

20     obvious.  Whereas under the Federal Circuit's test it

21     has to go to a jury and the somewhat unpredictable, at

22     the least --

23             JUSTICE GINSBURG:  Mr. Hungar, this is the

24     problem that I have with your test.  I think I

25     understand you right, now, just to say teaching

21

Official - Subject to Final Review

1    suggestion motivation has its place; it's okay; but it

2    shouldn't be the exclusive test.

3            MR. HUNGAR:  Correct.

4            JUSTICE GINSBURG:  And what I understand

5    your brief to say is that it has to be supplemented with

6    what you have called, you've labelled "sufficiently

7    innovative."  And then I begin to think well, what's

8    "sufficiently innovative?"  How is a trier supposed to

9    know if something -- in other words I think what you're

10   suggesting as a supplement is rather vague.

11           MR. HUNGAR:  Your Honor, I think the

12   "sufficiently innovative" is more of a description

13   rather than a test; it's a description of what this

14   Court said in Graham.  In Graham itself the Court laid

15   out the proper analysis which is you need to consider in

16   detail, not in the more cursory fashion that the Federal

17   Circuit's test encourages, but in detail the

18   capabilities of a person of ordinary skill and the

19   content of the prior art and the differences between the

20   prior art and the invention, and ascertain -- it's

21   ultimately a legal judgment informed by those detailed

22   factual inquiries, whether it is obvious or nonobvious

23   and entitled to patent protection.

24           And in addition I would point out that this

25   Court in Sakraida provided a framework for assessing

22

Official - Subject to Final Review

1    patents like this one, where each of the elements is set

2    forth in the prior art and each of the elements in the

3    claimed invention is merely performing its already

4    known, previously known function as set forth in the

5    prior art.

6          JUSTICE SCALIA:  Mr. Hungar, I have a

7    question that's sort of along the lines of Justice

8    Ginsburg's.  It isn't just the Federal Circuit that has

9    been applying this test.  It's also the Patent Office

10   and it's been following the Federal Circuit's test for

11   20 years or so.

12         What, what is -- assuming that we sweep that

13   test aside and say it's been incorrect, what happens to

14   the presumption of validity of, of patents which the

15   courts have been, have been traditionally applying?

16   Does it make any sense to presume that patents are valid

17   which have been issued under an erroneous test for the

18   last 20 years?

19         MR. HUNGAR:  Your Honor, I think that it

20   would make sense because the statute requires it, and as

21   a practical matter it shouldn't make any difference,

22   because the only category of cases in which the result

23   would change under our test is the category in which as

24   a matter of law, in light of the factual issues that are

25   required under Graham, as a matter of law the Court

23

1    concludes that the difference between the claimed

2    invention and the prior art is so trivial that it cannot

3    be given the protection of a patent.  And in those

4    circumstances the presumption doesn't come into play.

5    It's a legal determination; the presumption has been

6    understood to effect the burden of proof, and in the

7    Federal Circuit's view the measure of the burden of

8    proof requiring clear and convincing evidence on the

9    underlying factual considerations, not the ultimate

10   legal determination.

11          But one of the problems with the Federal

12   Circuit's test is that it transforms what this Court

13   made clear in Graham is supposed to be a legal

14   determination.  Ultimately it transforms it into a jury

15   question.  Because in a case like this one where you

16   have as conclusory affidavits from respondent's experts

17   saying "oh, this would not have been obvious."  And that

18   in the Court of Appeals view is enough to create a jury

19   question and then you then have to role the dice in

20   front of a jury in each one of these cases, except of

21   course the many cases in which the challenger can't meet

22   the teaching suggestion motivation test at all and

23   simply is unable to challenge the validity of the

24   patent, notwithstanding this Court's holding in Graham

25   that it's ultimately a legal determination -- admittedly

Official - Subject to Final Review

1    one informed by detailed factual inquiries.

2              Another problem with the Federal Circuit's

3    test is that it devalues and de-emphasizes the statutory

4    focus and this Court's focus in Graham on the

5    capabilities of the person of ordinary skill.

6              CHIEF JUSTICE ROBERTS:  Well when you talk

7    about the statutory focus, your innovation test -- I

8    mean, do you regard that, is that a legal conclusion of

9    nonobviousness?  Or is it an additional test beyond what

10   the statute requires?

11             MR. HUNGAR:  We haven't suggested an

12   innovation test, Your Honor.  We were simply attempting

13   to describe in perhaps imprecise terms the holding of

14   this Court in Graham, and the holding of this Court in

15   Graham is that the ultimate inquiry for the court,

16   obviously suggestion, teaching, motivation, teaching a

17   way in the prior art, all of these are factual,

18   subsidiary factual issues that will shed light and a

19   great deal of light on the ultimate question in each

20   particular case, but ultimately the question for the

21   court is whether in light of all those underlying

22   factual showings the differences between the claimed

23   invention and the prior art are sufficient to, that they

24   would have been obvious to a person of ordinary skill in

25   the art.  And that ultimately is a legal determination,

25

Official - Subject to Final Review

1    you can refer to that as sufficiently innovative to

2    justify a patent, but the ultimate question, the

3    ultimate test is the one set forth in the statute and in

4    the Graham decision.

5            JUSTICE KENNEDY:  In this case, would there

6    have been anything for a jury under your test?

7            MR. HUNGAR:  No, Your Honor, because in this

8    case it is perfectly clear that it would have been

9    obvious for a person of ordinary skill to take the Asano

10   patent, add the sensor, the electronic sensor in a

11   manner that that off-the-shelf sensor is designed to be

12   added, and voila, you have a winning combination.

13           JUSTICE KENNEDY:  What about claims 1, 2 and

14   3?

15           MR. HUNGAR:  I don't know, Your Honor.

16   Those have not been litigated.  Those have additional

17   limitations that are not present in claim 4 that,

18   depending on what the prior art might reveal about

19   those, we have no way of knowing whether they would or

20   would not be obvious because obviously, that question

21   has not been litigated.  Certainly there is nothing in

22   the record in this case that would suggest they are

23   obvious.

24           JUSTICE GINSBURG:  What about the experts?

25   You said this was obvious and this should have, not have

26

Official - Subject to Final Review

1   gotten very far.  But there were two experts, were there

2   not, who made declarations, that had all kinds of

3   credentials, and they called it elegant, novel and

4   nonobvious.

5         MR. HUNGAR:  Yes, Your Honor.  There are two

6   problems with that.  Number one, the conclusory

7   assertion that an invention is nonobvious, just like the

8   assertion that it's obvious from an expert, should have

9   no weight because of course --

10        JUSTICE GINSBURG:  Well these, these were

11   declarants who gave a whole declaration.  They didn't

12   just say that bottom line.

13        MR. HUNGAR:  But again, it's a legal

14   question.  And moreover and more importantly, the

15   problem with the Court of Appeals analysis, one problem,

16   and with the experts' analysis, is that they're focusing

17   on the narrow definition of the quote unquote problem by

18   looking only at what this particular inventor was trying

19   to solve, but the scope of the claim is far broader.

20   Thank you.

21        CHIEF JUSTICE ROBERTS:  Thank you,

22   Mr. Hungar.  Mr. Goldstein.

23        ORAL ARGUMENT OF THOMAS C. GOLDSTEIN

24         ON BEHALF OF THE RESPONDENTS

25        MR. GOLDSTEIN:  Thank you, Mr. Chief

27

Official - Subject to Final Review

1    Justice, and may it please the Court:

2              I think the Court will want to have

3    available to it the red brief and also this big, which

4    is the supplemental joint appendix which has some of the

5    patents in it, and I'm going to quote from both of them.

6    I think you can't understand what motivation means and

7    what the whole test that the Federal Circuit is

8    employing means --

9              JUSTICE SCALIA:  You're right about that.

10             MR. GOLDSTEIN:  -- without --

11             (Laughter.)

12             MR. GOLDSTEIN:  -- without starting from the

13   statute itself.  And so I want to start with the

14   statutory text and use that as the jumping off point

15   like the Court of Appeals has for the inquiry that it's

16   asking.  It's reproduced at page 21 of the red brief.

17   And Congress said it's the first blocked quote, that a

18   patent may not be obtained though the invention is not

19   identically disclosed or described, as set forth in

20   Section 102 of this title.  Those are the other

21   requirements for giving a patent.  If the differences

22   between the subject matter sought to be patented and the

23   prior art are such that the subject matter as a whole

24   would have been obvious at the time the invention was

25   made to a person having ordinary skill in the art.  So

28

1    the term of art here is obvious, and the plain meaning

2    of obvious, if you understand that the outcome of this

3    case is obvious or if you think that the, what the

4    Federal Circuit means by its test is not obvious, is

5    something that's either apparent or not apparent, and

6    that's what the Federal Circuit is asking.  It says

7    look, take the invention and see whether or not it was

8    apparent or not apparent, and what the Federal -- to a

9    person of ordinary skill at the time of the invention.

10   And what the Federal Circuit says is, we want to be

11   inclusive.

12          The other side takes these words, teaching,

13   suggestion, motivation, as if they were words of

14   limitation rather than these words of inclusion.  And

15   what the Federal Circuit has said is what we mean by

16   teaching a suggestion or a motivation, and it can be

17   explicit or implicit, is anything that would have made

18   this invention apparent to a practitioner at the time.

19   That's what it's after.  It wants to know, look, was it

20   apparent to someone else, a practitioner at the time of

21   the invention of Engelgau to take Asano and put the

22   electronic throttle control on pin --

23          JUSTICE BREYER:  Well, if that's all it

24   means, why don't they say it?

25          MR. GOLDSTEIN:  They do say that.

29

Official - Subject to Final Review

1          JUSTICE BREYER:  Well, then what is this

2    word that confused me a lot, motivation?  I found a lot

3    of enlightenment in Judge Rich's idea of taking all the

4    relevant art and putting it up around the room in

5    pictures.  And then I thought, well, okay, if that art

6    teaches me to do what your client did, okay, it doesn't.

7    Does it suggest it?  Not really.  Well then, you say

8    motivated.  Where does that get you?

9          MR. GOLDSTEIN:  I understand.  Can I take

10   you to their, the Federal Circuit's answer?  It's two

11   pages before the quote that I just gave you, page 19,

12   there's another blocked quote.  The Federal Circuit has

13   explained what it's talking about when it means a

14   motivation.  They say that they have repeatedly held

15   that there is an implicit motivation to combine.  It

16   exists not only when a suggestion may be gleaned from

17   the prior art as a whole, that's a teaching, but when

18   the improvement is technology independent and the

19   combination of references results in a product or

20   process.  And these are common motivations.  You would

21   do it because it's more desirable because it's stronger,

22   cheaper, faster, lighter, smaller, more durable, more

23   efficient.

24          JUSTICE BREYER:  For who?  For me?

25          MR. GOLDSTEIN:  For a practitioner, yes.

30

1               JUSTICE BREYER:  For me the inventor?

2               MR. GOLDSTEIN:  Yes.

3               JUSTICE BREYER:  I know that, because

4       otherwise --

5               MR. GOLDSTEIN:  No.  Justice Breyer, you

6       don't understand.

7               JUSTICE BREYER:  That's true.

8               (Laughter.)

9               MR. GOLDSTEIN:  The question is not -- I can

10      illustrate it with this case.  The question is not do

11      you want more efficient pedals.  If that's the test,

12      then everything is obvious because we always want more

13      efficient pedals, Justice, and I'll come back to this.

14      It's always going to be the case that if your test is

15      capability, every patent including the first three

16      claims of this one is going to be obvious, because

17      you're always capable of assembling a pedal.  What it

18      says, what the Federal Circuit says, is there a

19      motivation to make this invention?  Was there

20      motivation, and this was the heart of the Federal

21      Circuit's ruling in this case, their theory is that

22      Asano renders our patent obvious.  And the Federal

23      Circuit said all right, what's the motivation to take

24      Asano and take the electronic throttle control and make

25      it responsive --

Official - Subject to Final Review

1          JUSTICE SCALIA:  Well, the claim goes beyond

2     that.  Your claim goes beyond the Asano combination and

3     in your brief you, you, you discuss the case as though

4     your, your limited claim 4 just relates to this

5     invention that you, you -- nobody would have thought of

6     using the Asano pedal in the Ford car given the limited

7     space available and so forth, and therefore, this was

8     really an invention.  But that's not the claim.  The

9     claim is simply combining the, any pedal, the Asano

10     pedal or any other one with the, with the automatic

11     electronic sensor.

12          MR. GOLDSTEIN:  In a particular place, yes,

13     that's correct.  Justice Scalia, the reason these

14     Federal Circuit judges were right notwithstanding your

15     correct point which is, just to be clear, our invention

16     is not limited to Asano.  Our invention takes any fixed

17     pivot adjustable pedal and any electronic throttle

18     control and says combine it in a particular way.  The

19     Federal Circuit's point is their motion rests on Asano.

20          The other side's theory is, we've got this

21     invention, Engelgau.  As has been pointed out, nobody

22     did anything like this for 10 years.  The other side

23     comes back and says yes, that it would have been obvious

24     to somebody who had an Asano to do the same thing

25     basically.  And so the Federal Circuit said okay, show

32

1    us.  If this isn't going to be hindsight, where we just

2    give you the invention and you just say oh, I could have

3    done that, they say give us any evidence that someone

4    would have done what you say, which is take Asano, it's

5    their argument, Asano --

6              JUSTICE SCALIA:  But why Asano?

7              MR. GOLDSTEIN:  You'll have to ask them,

8    Justice Scalia.  They filed a motion that it was

9    obvious.

10             JUSTICE SCALIA:  You're the one that's

11   standing up here making that argument.  They're not

12   doing it.

13             MR. GOLDSTEIN:  Justice Scalia, the patent

14   examiner gave us a patent, initially rejected this

15   patent as obvious, decided that it wasn't after

16   considering all of these things, a statutory presumption

17   of validity attached under Section 282.  So we have what

18   we say is clear and convincing evidence, the question

19   isn't presented here, but whatever.  The other side

20   comes in and tries to knock our patent out.  They file a

21   motion, and the motion rests on a piece of prior art.

22   And so what the Federal Circuit said is, if we're not

23   going to knock all of these patents out by hindsight,

24   all we want to know is one thing and you know, on

25   remand, they may well be able to prove it.  We don't

Official - Subject to Final Review

1    think they can.  But all it's asking for is for the

2    district court to make a finding that says the other

3    side is right, that it would have been obvious to take

4    Asano, which is their only example, and combine it with

5    electronic throttle control in this way.  That is what's

6    so --

7              JUSTICE BREYER:  You look at that thing, you

8    think what this genius did, and I don't doubt that he's

9    a genius, is there are wheels that turn around.  And the

10   wheels turn around to a fixed proportion to when you

11   make the accelerator go up and down.  Now I think since

12   high school a person has known that if you have three

13   parts in a machine and they each move in a fixed ratio

14   one to the other, you can measure the speed of any part

15   by attaching a device to any other as long as you know

16   these elementary mathematics.  I suppose it wasn't

17   Mr. Engelgau, it was probably Archimedes that figured

18   that one out.  So he simply looks to something that

19   moves, and he sticks a sticker on it.

20              Now to me, I grant you I'm not an expert,

21   but it looks at about the same level as I have a sensor

22   on my garage door at the lower hinge for when the car is

23   coming in and out, and the raccoons are eating it.  So I

24   think of the brainstorm of putting it on the upper

25   hinge, okay?  Now I just think that how could I get a

34

Official - Subject to Final Review

1    patent for that, and that -- now that's very naive,

2    that's very naive.  But the point is, I don't see what

3    we're talking about, and what is supposed to happen with

4    all these affidavits.  And the -- the -- Mr. Asano

5    himself, I would think at some point when the Ford

6    company decides to switch to electronic throttles, of

7    course will have every motivation in the world to do

8    precisely what your client did, because he can't use

9    that thing that pulls back and forth anymore.  Rather,

10   he has to get a little electronic cap and attach it to

11   something that moves in fixed proportion to the

12   accelerator going up and down.  Now those are my whole

13   reactions when I saw this and I began to think it looks

14   pretty obvious.  What's supposed to go on, I don't

15   understand it.

16               MR. GOLDSTEIN:  Okay.  Let me answer it in a

17   few different ways because I want to again specify and

18   make clear what it is that the Federal Circuit says is

19   included within teaching, suggestions, motivations.

20   Then I want to turn to our invention and the affidavits

21   in the case.  The Federal Circuit has said, and I'll

22   just -- you can come back to it for future reference.

23   It's recorded at the bottom of page 19 of our brief.

24   Common sense, common knowledge, common understandings

25   are all included within teaching, suggestions or

Official - Subject to Final Review

1    motivations.

2            JUSTICE KENNEDY:  It looks like Dystar was

3    decided by the Federal Circuit after it decided this

4    case, didn't it?

5            MR. GOLDSTEIN:  Yes, it did.

6            JUSTICE KENNEDY:  I mean, you have to be

7    defending what the Federal Circuit did in this case.

8    And the fact that they say well now, what this means is

9    really in some other case, that seems to me that's

10   really irrelevant.

11           MR. GOLDSTEIN:  If I could just clarify,

12   Dystar --

13           JUSTICE KENNEDY:  And I think you should

14   tell us when the case has been decided after, I think it

15   has much less, much less weight.

16           MR. GOLDSTEIN:  Justice Kennedy, I agree

17   that you have to distinguish two things rightly.  The

18   first is the state of the law as it exists now, and

19   that's what we ask you to affirm.  And that is, the

20   Federal Circuit has made quite clear that its test is

21   inclusive, and we think that that establishes that it's

22   not necessary to add some new sort of undetermined test

23   of --

24           JUSTICE SCALIA:  You say its test is

25   inclusive.  I would say its test is meaningless.  They

36

1   have essentially said, our test simply reduces to what,

2   what your opponents in this litigation say.  If you

3   think that's being inclusive, you know -- it doesn't add

4   anything whatever to -- to the -- to the question, would

5   a person of the ordinary skill in this field have

6   conceived of this idea.

7           MR. GOLDSTEIN:  Justice Scalia, I disagree

8   for the following reasons, and that is:  What the

9   Federal Circuit is saying is that any amount of

10  evidence, any form of evidence is relevant to answer a

11  particular question.  We have a question that we want

12  answered.  They have a question they want answered.

13  Their question, the petitioner at least, I'm not sure

14  about the Solicitor General, the petitioner's standard

15  is, was somebody capable of doing this?  We have a

16  different question.  Would it have been apparent to, and

17  that's what we think the text requires, would it have

18  been apparent to one skilled in the art?  And so the

19  Federal Circuit is saying whatever evidence you want to

20  bring to bear --

21          JUSTICE STEVENS:  Don't you think there's a

22  grammatical difference in the meaning of the word

23  obvious and the meaning of the word apparent?

24          MR. GOLDSTEIN:  No, I don't.

25          JUSTICE STEVENS:  So you're saying that the

37

Official - Subject to Final Review

1    question is whether it's obvious?

2              MR. GOLDSTEIN:  Yes, that's right.  And what

3    the Federal Circuit is saying, you have -- what it's

4    saying is, if you just look to capability, and that is,

5    could you put Asano together on pin 54, you will miss

6    the most important part of invention.  And that is,

7    invention isn't at the end when you put the two things

8    together.  Invention is finding the problem, deciding

9    what pieces of the prior art to use, and deciding how to

10   put them together.  Everybody is always capable of, it

11   will always be the case, I think, that a practitioner of

12   the art can put them together.  Remember the very point

13   of a patent, when you look at our patent at the end of

14   the case, we were required to explain it in great

15   detail.

16             JUSTICE KENNEDY:  Yes, but your -- the

17   Federal Circuit is saying that, the gist of it is if and

18   only if the previous patents taught this.  But you, you

19   can look at these two devices, and you're a good

20   mechanic, you've never seen a patent, you've never read

21   these patents, you've never read these claims, you've

22   never been to the Supreme Court, and you put them

23   together.

24             MR. GOLDSTEIN:  Justice Kennedy, that's

25   not --

38

Official - Subject to Final Review

1        JUSTICE KENNEDY:  And the Federal Circuit

2   said oh, it's not in the patent, it's not obvious.

3        MR. GOLDSTEIN:  Justice Kennedy, with

4   respect, that is not a fair description of the Federal

5   Circuit's test, and I will take you to the language that

6   addressed this claim.  It's at the bottom of page 18 of

7   our brief and also at the top of 19, and we quote the

8   Solicitor General's brief.  The Solicitor General

9   asserts to the contrary, that Federal Circuit precedent

10  focuses attention exclusively on a search for teaching,

11  suggestions and motivations in the prior art.  That is

12  not accurate.  That was a quote from their brief.

13        Here is a quote from the Solicitor General.

14  It is from a new opinion of the Federal Circuit, but it

15  is quoting, it is citing a series of old opinions from

16  the Federal Circuit.  Under our nonrigid motivation,

17  suggestion, teaching test, a suggestion to combine need

18  not be found in the prior art.  And then there is the

19  blocked quote that I read to Justice Breyer about making

20  things cheaper, faster, lighter, common knowledge and

21  common sense.

22        JUSTICE ALITO:  Well, once you define the

23  teaching, suggestion and motivation test that way so

24  that it can be implicit, it can be based on common

25  sense, I don't quite understand the difference between

39

Official - Subject to Final Review

1    that and simply asking whether it's obvious.  Could you

2    just explain what that adds?

3              MR. GOLDSTEIN:  Well, all that it adds is an

4    analytical framework.  It's an elaboration.  The word

5    "obvious" --

6              CHIEF JUSTICE ROBERTS:  It adds a layer of

7    Federal Circuit jargon that lawyers can then bandy back

8    and forth, but if it's -- particularly if it's

9    nonexclusive, you can say you can meet our teaching,

10   suggestion, or motivation test or you can show that it's

11   nonobvious, it seems to me that it's worse than

12   meaningless because it complicates the inquiry rather

13   than focusing on the statute.

14             MR. GOLDSTEIN:  Mr. Chief Justice, the

15   reason that the Federal Circuit disagrees and over 30

16   years this special court has elaborated this problem --

17   these judges alone, for example, have heard 300 cases on

18   nonobviousness -- is that we need a guidance, we need

19   guidance for the lower courts.  We need to focus them on

20   the right question, and for patent examiners and patent

21   practitioners, and the right question is not is -- was

22   someone merely capable of putting the two together.  The

23   right question is is there any reason to believe that it

24   would have been apparent at the time of the invention to

25   create this invention whether it's through a teaching, a

1    suggestion, a motivation.

2            JUSTICE SCALIA:  Or anything else.

3            MR. GOLDSTEIN:  Or anything else.

4            JUSTICE SCALIA:  So why don't you say that?

5            MR. GOLDSTEIN:  They have.

6            JUSTICE SCALIA:  It is -- I agree with the

7    Chief Justice.  It is misleading to say that the whole

8    world is embraced within these three nouns, teaching,

9    suggestion, or motivation, and then you define teaching,

10   suggestion, or motivation to mean anything that renders

11   it nonobvious.  This is gobbledygook.  It really is,

12   it's irrational.

13           MR. GOLDSTEIN:  Justice Scalia, I this it

14   would be surprising for this experienced Court and all

15   of the patent bar -- remember, every single major patent

16   bar association in the country has filed on our side --

17           CHIEF JUSTICE ROBERTS:  Well, which way does

18   that cut?  That just indicates that this is profitable

19   for the patent bar.

20           (Laughter.)

21           MR. GOLDSTEIN:  Mr. Chief Justice, it turns

22   out that actually is not accurate.

23           JUSTICE SCALIA:  It produces more patents,

24   which is what the patent bar gets paid for, to acquire

25   patents, not to get patent applications denied but to

 1    get them granted.  And the more you narrow the

 2    obviousness standard to these three imponderable nouns,

 3    the more likely it is that the patent will be granted.

 4              MR. GOLDSTEIN:  Justice Scalia, that is not

 5    the point of these bar associations' either.  These bar

 6    associations, including the American Bar Association,

 7    the American Intellectual Property Law Association, have

 8    lawyers on both sides of all these cases.  They're

 9    looking for a test that has balance and that is what the

10    Federal Circuit has done.  Now, let me just say --

11              JUSTICE BREYER:  As you know, we've had a

12    series of cases and in these series of cases we have

13    received many, many briefs from all kinds of

14    organizations and there are many from various parts of

15    the patent bar that defend very much what the Federal

16    circuit does and there are many from parts of the patent

17    bar and others who are saying basically that they've

18    leaned too far in the direction of never seeing a patent

19    they didn't like and that has unfortunate implications

20    for the economy.  So if you're going to these very basic

21    deep issues, is there a reason for me to think, which I

22    do now think, that there is a huge argument going on in

23    those who are interested in patent as to whether there

24    is too much protectionism and not enough attention paid

25    to competition or whether it's about right, or whether

1    it goes some other way.

2           In other words, your argument now suggests

3    all this is well settled, but I tend to think maybe it

4    isn't well settled and maybe it is a proper thing for us

5    to be involved in.  So what are your views since you

6    brought it up?

7           MR. GOLDSTEIN:  Justice Breyer, there is a

8    big debate over whether or not there is too much

9    patenting in this country and Congress is involved in

10   the debate.  What I don't think that there is that much

11   debate about is whether a properly applied test that the

12   Federal Circuit has articulated strikes the right

13   balance, because that is why all of the patent bar

14   associations have filed on our side, I think, and that

15   is it takes account of the interests of both sides and

16   that is it says, you're right, we have to be concerned

17   about overpatenting, it says on the other hand we have

18   to be very concerned about hindsight determinations of

19   obviousness.

20          But I do want to just step back and make a

21   point about judicial administration.  If the ultimate

22   conclusion of this Court is that teaching, suggestion,

23   motivation just boils down into an inquiry into

24   obviousness, I still think that an opinion that says

25   that and says that it, that this Court believes that it

Official - Subject to Final Review

1    is embracing the bottom line of what the Federal Circuit

2    has been doing, is the one that will be much better for

3    the patent system and for the courts, because we have a

4    real concern and that was articulated -- asked about at

5    least by Justice Ginsburg and Justice Scalia, and that

6    is if you purport to change the rules unnecessarily, if

7    you say we're going off in a different direction, this

8    test has -- underlies 160,000 patents issued every year.

9    There is no rhyme or reason to applying a presumption of

10   validity if you're saying the patent examiner applied

11   the wrong test.  And it will create genuine dramatic

12   instability.

13          The question I think is if you think instead

14   that the teaching, suggestion, motivation test is

15   incomplete, what is it that you want to add on top of

16   it, and that's really what I didn't understand from the

17   first half-hour.  If it's going to be --

18          JUSTICE BREYER:  It doesn't have to go on

19   top.  It's just to say what you've been saying, that

20   what you're supposed to look to ultimately is whether a

21   person, as the statute says, who is familiar with the

22   subject, of ordinary skill in the art, whether to such a

23   person this would have been obvious.  Now, there are

24   many, and this Court has listed several, factors that

25   might count in favor of it not being obvious, such as

44

Official - Subject to Final Review

1    people have been trying to do it for a long time and

2    they haven't been able to figure out how.  That's a good

3    one, and there are some other ones here.  If there's a

4    teaching right there, it seems to cut the other way.

5            But to hope to have a nonexclusive list

6    seems to me a little bit like Holmes trying to hope to

7    have an exclusive list of what counts as negligence.  In

8    the law we have many standards that you can get clues

9    about, but you can't absolutely define them, and why

10   isn't this one of them?

11           MR. GOLDSTEIN:  Justice Breyer, I think

12   that's the dilemma that the Federal Circuit has been

13   facing and is in answer to the criticism of Justice

14   Scalia and that is the Federal Circuit isn't trying to

15   articulate every single possible thing that can show you

16   that it is obvious.  What it's trying to do is focus you

17   on the right question.  It's trying to say, here's the

18   process of invention:  We have to figure out there's a

19   problem.  We have to figure out what prior art you're

20   going to use.  You have to figure out how you're going

21   to combine it, and then you actually combine it.

22           The act of invention, the thing that is the

23   discovery that we want to encourage, is there in the

24   middle.  It's picking out the prior art and deciding how

25   to put it together.

```
 1              JUSTICE BREYER:  Supposing we then were to
 2      say exactly what this Court already said, that the
 3      standard here is obvious, we list a few of these
 4      additional factors that they've thrown in, and just as
 5      the Court said before, all these additional factors are
 6      there.  They can be considered in an appropriate case,
 7      but it is important to remember that the ultimate matter
 8      which is for the judge is to apply the word "obvious" or
 9      not in light of the evidence and what the experts say
10      and the facts as found by a jury or whoever is the
11      factfinder.  Would you have any objection to an opinion
12      like that.
13              MR. GOLDSTEIN:  No.
14              JUSTICE KENNEDY:  Well then, in this case
15      let's assume that we all strike out on coming out with
16      the magic formulation.  One of the ways the law
17      progresses is we go from case to case, and in this case
18      you have two standards of operation.  One is a pedal
19      that basically operates by pressure.  The other -- and
20      by levers.  Other is by electronics, and these are two
21      different methods of making the carburetor release the
22      fuel. So why not, so somebody combines them.  Why is
23      that such a big deal as, as claim 4 says it is.
24      Certainly this inventor would not be the only one to
25      think that the two could and should be combined.
```

46

Official - Subject to Final Review

```
 1              MR. GOLDSTEIN:  Justice Kennedy, that's
 2    absolutely right, and I just want to focus you on why it
 3    is you now think I lose.  We don't lose because that's
 4    not our invention.  The Federal Circuit's point was that
 5    that this invention, claim 4, does not put an electronic
 6    throttle control together with an adjustable pedal.
 7    It's do it in a particular way.  And let me take you in
 8    summary judgment in this case to the declarations and
 9    explain why it is that the experts here said you would
10    not have done this.  And I just have to urge the Court
11    to cross the t's and dot the i's here and pay particular
12    attention to exactly what it is that we claimed and
13    exactly what it is that they said rendered our patent
14    obvious.
15              CHIEF JUSTICE ROBERTS:  Where in claim 4 do
16    you say it's putting it together in a particular way?
17              MR. GOLDSTEIN:  Mr. Chief Justice, if I can
18    take you to the big book that I asked you to --
19              CHIEF JUSTICE ROBERTS:  Right, page 8.
20              MR. GOLDSTEIN:  Page 8, exactly.  And that
21    is, there are six different pieces to claim 4 and I'm
22    going to take you to the relevant one.  And they are the
23    last two paragraphs here.  We claim an electronic
24    control attached to the support, so we specify where the
25    electronic control is going to be.  And then we say
```

47

1  where, what that electronic control is going to be

2  responsive to, and that's the next paragraph:  Said

3  apparatus characterized by said electronic control being

4  responsive to said pivot, and that said pivot is defined

5  above to be a fixed pivot.  So here is the design.

6        Let me take you to a picture if I could, and

7  that's going to be at the back of the red brief.

8  Engelgau is the third foldout page.  It looks like this.

9  What we say is there is going to be a fixed pivot.  It's

10  the red pivot in our picture, and there's going to be an

11  electronic throttle control.  That's actually on the --

12  you can't see it because you're looking straight at the

13  device.  That's on the next page.  It's in green.

14  There's going to be an electronic throttle control and

15  it's going to respond to that pivot.

16        So we specify where we're going to put the

17  electronic throttle, on the support.  That's what the

18  Federal Circuit recognized was our invention.  Now --

19        JUSTICE BREYER:  Is it basically an

20  invention where in fact there are only four or five

21  moving parts on the thing that we have seen, every one

22  of the moving parts is moving with a fixed ratio to the

23  accelerator going up and down, as it must be because

24  they're also moving in fixed ratio with the throttle

25  thing coming out.  And so, whichever of those four that

Official - Subject to Final Review

1   you figured out you were going to attach it to, it's

2   obvious, isn't it, that you have to attach it either to

3   the pedal or to the throttle thing that comes out, or to

4   a part of the machine that moves in fixed ratio to the

5   movements of one of those two?  Now, that's what I would

6   find fairly obvious.  Why isn't that obvious?

7            MR. GOLDSTEIN:  All right.  Let me, Justice

8   Breyer.  The experts say it's not obvious and the reason

9   nobody did it for 12 years and the reason that Asano was

10  never combined with an electronic throttle control is

11  explained in the record in this case and it's twofold.

12  The first is, and I have to take you now to the picture

13  of Asano because that's what the claim that is supposed

14  to make our invention obvious is.  They say you would

15  have done this with Asano.  What the experts say is this

16  Asano thing, no one would ever use it at all.

17           CHIEF JUSTICE ROBERTS:  Who do you get to be

18  an expert to tell you something's not obvious.

19           MR. GOLDSTEIN:  You get --

20           CHIEF JUSTICE ROBERTS:  I mean, the least

21  insightful person you can find?

22           (Laughter.)

23           MR. GOLDSTEIN:  Mr. Chief Justice, we got a

24  Ph.D. and somebody who had worked in pedal design for 25

25  years.

49

1          CHIEF JUSTICE ROBERTS:  Exactly.

2          MR. GOLDSTEIN:  And people who actually know

3     this industry.  And they, there are two things that come

4     from the record in this case.  The first is all of the

5     experts and Engelgau himself testified not simply, no,

6     this is not obvious, but you would have never used Asano

7     to solve this or any other problem with an electronic

8     throttle control.

9          JUSTICE SCALIA:  Excuse me.  You keep coming

10    back to Asano.  Why do you keep coming back?  Your claim

11    here does not say anything about Asano.

12         MR. GOLDSTEIN:  Justice Scalia, the way

13    these cases are litigated, and properly so, is the other

14    side says this would be obvious in light of a particular

15    piece or collection of prior art.  You may have a

16    nonprior art motivation to combine them, but you're

17    going to say something else already exists.  They say

18    it's Asano, and you're going to combine it with

19    something else.  This is their motion.  Their argument,

20    the argument that was presented to the Federal Circuit,

21    was that you would take Asano.  That's why --

22         JUSTICE SCALIA:  I think they happened to

23    use Asano simply because that's what you stuck it on.

24    But I think their basis, their basic point, is anybody

25    would have thought to stick it on, whether it's stick it

Official - Subject to Final Review

1   on Asano or stick it onto some other mechanical

2   accelerator mechanism.

3           MR. GOLDSTEIN:  Well, that is not -- we did

4   not stick it on Asano.  Nobody stuck it on Asano.  They

5   picked Asano because it was the prior art of adjustable

6   pedal designs.

7           Justice Scalia, you --

8           CHIEF JUSTICE ROBERTS:  Well, that's because

9   the Federal Circuit's approach focuses narrowly prior to

10  our grant of certiorari, allegedly more flexibly after,

11  on prior art, as opposed.

12          To I would say common sense.  And so they

13  say we have to find something in prior art to show that

14  this was non -- that this was obvious.

15          MR. GOLDSTEIN:  Mr. Chief Justice, that's

16  not correct.  Even under a capability standard, even

17  under an extraordinary innovation standard, you are

18  going to compare something to prior art.  You're going

19  to take what exists now and compare it to what existed

20  before, no matter what standard you're employing.  And

21  what they did is they compared it to the prior art,

22  which is Asano, and the Federal Circuit said, all right,

23  you want to say it will come from Asano.  It would not

24  come from Asano for either of two reasons.

25          The first is you would never use Asano.

51

Official - Subject to Final Review

1    That's the expert testimony.  The second is the reason

2    given by the PTO in its brief in this case and that is

3    you wouldn't put it on the pin that would render

4    Engelgau obvious.  You would put it somewhere else.

5    They say that you would put it attached to a lever up

6    high.  What I want to make clear is two things.  The

7    first is, though the Federal Circuit has in recent

8    opinions been quite emphatic about how inclusive its

9    test is, it has consistently cited earlier Federal

10   Circuit precedent and said that the other side and the

11   people who claimed that their standard is too narrow and

12   misguided are mischaracterizing it.  And the second is,

13   the judgment in this case quite explicitly acknowledges

14   and implies the implicit teaching, suggestion,

15   motivation standard.

16           So I don't want you to have the mistaken

17   impression that there has been some radical change in

18   Federal Circuit law.  But no matter what one thinks

19   about the differential between Federal Circuit law today

20   and Federal Circuit law a year ago or two years ago,

21   there is a quite considerable cost by articulating a

22   desire to head off in a new direction, because there

23   will be dramatic instability in the patent system, the

24   incalculable investments that underlie current patents.

25   There is nothing fundamentally not functional about how

Alderson Reporting Company

Official - Subject to Final Review

1    the Federal Circuit is approaching this question.  It

2    has had decades to look at this to try and elaborate a

3    standard.  This court in cases like Sakraida and --

4                JUSTICE BREYER:  And it so quickly modified

5    itself.

6                JUSTICE SCALIA:  And in the last year or so,

7    after we granted cert in this case after these decades

8    of thinking about it, it suddenly decides to polish it

9    up.

10               MR. GOLDSTEIN:  Justice Scalia, if you

11   actually believe that, then you just don't believe the

12   judges in the Federal Circuit because in each of these

13   opinions they say quite explicitly we are not changing

14   it.

15               JUSTICE ALITO:  Would you dispute that in

16   some of the earlier cases, like Dembiczak with the

17   garbage bag that looks like a pumpkin, that this TSM

18   test was applied in a way that seemed to ask for

19   something quite explicit in the prior art?

20               MR. GOLDSTEIN:  I do think that you can find

21   outliers.  I think that's fair.  These judges as I said

22   have heard 300 of these cases.  There are mistakes in

23   the Patent Office; there are mistakes by judges.  The

24   Federal Circuit explains in Dembiczak what it was

25   actually looking for is an explanation.  It wasn't

53

Official - Subject to Final Review

1    saying that you had to use the prior art, and it has

2    tried to make quite clear that the law is not that you

3    have to have prior art.  Or that those decisions here

4    today.

5              You can't take, in a system that produces so

6    many patents, and say ah, look at this side swing

7    patent, or the garbage bags, and draw from that the

8    conclusion that the system is fundamentally broken.

9              Justice Breyer, I meant to come back to

10   that.  We can look through the studies, we cite a series

11   of empirical studies in our brief that have looked at

12   this problem, the rhetorical claim that the obviousness

13   rule is leading to gross over-patenting.

14             JUSTICE STEVENS:  Tell me again, just to be

15   sure I have it my -- tell me very briefly, what it is

16   that makes this invention nonobvious?

17             MR. GOLDSTEIN:  Two things.  The first is --

18   and they do arise from the other side's motion under

19   Asano.  First you wouldn't have chosen Asano.  The

20   second is the Federal Circuit explained -- excuse me,

21   the Solicitor General explains that you would have put

22   the electronic throttle control somewhere else,

23   technically on what's called pivot 60, which would not,

24   would have rendered, would have not have rendered

25   Engelgau obvious.

54

Official - Subject to Final Review

1                JUSTICE STEVENS:  The invention, to use an

2      old-fashioned term, is the decision of where to put the

3      control.

4                MR. GOLDSTEIN:  That is the extent of the

5      entire invention.

6                CHIEF JUSTICE ROBERTS:  And just -- what

7      makes it nonobvious is that it's attached to a nonmoving

8      piece?

9                MR. GOLDSTEIN:  An adjustable pedal that has

10     a nonmoving pivot, yes.

11               JUSTICE SCALIA:  But the claim doesn't

12     require that.

13               MR. GOLDSTEIN:  Yes it does.  It does.  I

14     promise.

15               (Laughter.)

16               CHIEF JUSTICE ROBERTS:  But just to follow

17     up from Justice Stevens' question, what makes this

18     nonobvious is the decision to place the electronic

19     control on a part of the car that doesn't move?

20               MR. GOLDSTEIN:  On the support --

21               CHIEF JUSTICE ROBERTS:  Right.

22               MR. GOLDSTEIN:  And then a particular kind

23     of adjustable pedal.  That's the state of the record so

24     far.

25               JUSTICE BREYER:  I'm sorry.  Doesn't the

55

Official - Subject to Final Review

1   axis turn?

2          MR. GOLDSTEIN:  Does the pivot turn?

3          JUSTICE BREYER:  Isn't there an axis, and

4   the axis turns?

5          MR. GOLDSTEIN:  Yes.

6          JUSTICE BREYER:  The pivot rotates?

7          MR. GOLDSTEIN:  The pivot rotates, but it

8   doesn't -- the difference is that the pivot doesn't move

9   with the adjustment of the pedal.  It spins around, of

10  course, you have to have something that you can -- but

11  the prior art, almost all that involved a pivot that

12  when the pedal moved out, the electronic throttle

13  control would go with it.

14         CHIEF JUSTICE ROBERTS:  And the wires would

15  get worn, worn down, right?  And the invention here is

16  well, let's not put it somewhere where it doesn't move,

17  and so the wires won't move and it won't get worn down.

18         MR. GOLDSTEIN:  That would be a motivation.

19  That's absolutely right, why you would want to improve

20  on the part.  The Federal Circuit said that you would

21  never do it in the way that was described here.  You may

22  be able to prove it some other way on a remand.  This

23  was a very specific motion, and the Federal Circuit

24  faithfully addressed the claim of obviousness that was

25  presented to it.

Official - Subject to Final Review

1          CHIEF JUSTICE ROBERTS:  Thank you.

2   Mr. Dabney, you have three minutes remaining but you may

3   take four.

4          REBUTTAL ARGUMENT BY JAMES W. DABNEY

5             ON BEHALF OF PETITIONER

6          MR. DABNEY:  Thank you, Mr. Chief Justice.

7          As someone who tries patent cases, there is

8   no legal regime that is a greater generator of patent

9   litigation than the teaching suggestion motivation test

10  that is urged by the respondent.  Where in this

11  unbelievable situation where, in the District Court,

12  this Court's precedents were cited, were not followed.

13  In the Court of Appeals, this Court's precedents in

14  Anderson's-Black Rock and others were cited, not

15  distinguished, followed at all.

16          If the law of this Court had been applied in

17  the District Court I wouldn't be standing here right

18  now.  The reason that we have this, this proceeding

19  going on is because of this extraordinary situation,

20  where notwithstanding that this Court has issued

21  precedents in a variety of circumstances dealing with

22  multiple technologies, lots of different kinds of

23  differences, lots of different kinds of alleged

24  innovation, they are simply not paid attention to in the

25  corpus of the Federal Circuit's case law up until about

57

1    a month ago.

2            So the, this Court could do no greater

3    service to the actual process of determining whether

4    claimed subject matter does and does not comply with the

5    statute than to decide with case.  The worst possible

6    thing that can happen in this case is for the case not

7    to end here, and for the Court not to provide a

8    precedent as it has done in so many particular past

9    cases, and give the public an example of a particular

10   claim and a particular difference that does not meet the

11   standard.

12           What's made clear throughout the history of

13   patent decisionmaking is that no verbal formula is ever

14   going to get you there.  What we have as a functional

15   approach; it's not as opposing counsel suggests -- is

16   "it" apparent, is "it" obvious, would it have been

17   obvious to do "it?"

18           What this Court has held over and over again

19   starting with the doorknob case in 1851 is to pose a

20   problem.  Would it have --

21           JUSTICE KENNEDY:  What about in this case

22   where the wires were getting frayed until this

23   disclosure?

24           MR. DABNEY:  That's not, if you read the

25   affidavits carefully that is not an accurate

Official - Subject to Final Review

1    characterization of -- of any evidence put in by the

2    petitioner.  That was an argument --

3               JUSTICE KENNEDY:  So suppose I read the

4    record the other way.  Suppose I read the record as

5    saying this invention stopped the wires from being

6    frayed and therefore it was an advance.

7               MR. DABNEY:  That would be, to the extent

8    that that -- if that is established that could be taken

9    into consideration along with other facts.

10              JUSTICE BREYER:  Why would that be?  I mean,

11   I've worked out that the raccoons are gnawing the

12   machine, at the bottom of the garage door and that's a

13   problem.  So I move it to the top of the garage door.

14   Does that suddenly -- nobody before thought of moving it

15   to the top of the garage door; nobody before had thought

16   of moving it to a different part that moves in a

17   constant ratio with the accelerator.

18              MR. DABNEY:  What the statute calls for,

19   Justice Kennedy, is not to focus on a particular

20   subjective problem like fitting into a Ford F 350, or

21   particular difference between a prior art pedal that

22   provides wire chafing and a claimed invention.  The law

23   has always required that the patentability be determined

24   by the smallest amount of difference.  So if it were

25   true that there was wire chafing, that that was a

59

1    problem that would have had to have been overcome, if

2    you started with a prior art pedal that, that provided

3    for wires to move -- well then, maybe that combination

4    would not make the claimed subject matter obvious.

5           But that would not foreclose the defendant

6    from saying well, this other technology over here that

7    doesn't suffer from that problem, it's a simple matter

8    to modify that, so the premise of the question, that

9    because there is some other potential combination that

10    might have been, might have been more difference or less

11    reason to modify it than the one that's relied on by the

12    petitioner, is legally not material to the decision in

13    this case.

14           So I respectfully submit that the -- I

15    really have to emphasize this.  I mean, this is a

16    litigation between, you know, two real businesses.  The

17    justified expectations, Justice Souter that I think this

18    Court has recognized over and over again, are the

19    expectations of real innovators, who make real products

20    and have real inventions.  And -- and I think it would

21    come as a great surprise to the owner of the Asano

22    patent to find as Justice Breyer suggested, that in

23    order to supply it to a modern vehicle maker it would

24    have to pay tribute to the Engelgau patent.

25           Thank you.

Official - Subject to Final Review

1              CHIEF JUSTICE ROBERTS:  Thank you, Counsel.

2      The case is submitted.

3              (Whereupon, at 12:07 p.m., the case in the

4      above-entitled matter was submitted.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Alderson Reporting Company

Official - Subject to Final Review

1

**A**

**able** 6:17 33:25
  45:2 56:22
**above-entitled**
  1:11 61:4
**absence** 6:13
  11:25 19:19
**absolutely** 45:9
  47:2 56:19
**abstraction**
  17:11
**accelerator**
  34:11 35:12
  48:23 51:2
  59:17
**account** 43:15
**accurate** 39:12
  41:22 58:25
**acknowledges**
  52:13
**acquire** 41:24
**act** 3:15 4:1 5:7
  18:14 45:22
**actual** 58:3
**add** 26:10 36:22
  37:3 44:15
**added** 26:12
**addition** 22:24
**additional** 7:14
  17:20 25:9
  26:16 46:4,5
**addressed** 39:6
  56:24
**addressing**
  19:25
**adds** 13:7 40:2,3
  40:6
**adjustable**
  14:24 16:23
  32:17 47:6
  51:5 55:9,23
**adjustment** 17:1
  17:4,6 56:9
**administration**
  43:21
**administrative**
  4:9

**admittedly**
  24:25
**advance** 59:6
**advantage** 11:16
**affect** 6:15 13:24
**affidavits** 24:16
  35:4,20 58:25
**affirm** 36:19
**aggregation**
  14:1
**ago** 52:20,20
  58:1
**agree** 12:15 19:5
  19:10 36:16
  41:6
**agreed** 11:13
**ah** 54:6
**AL** 1:6
**ALITO** 6:21
  39:22 53:15
**alleged** 4:23
  57:23
**allegedly** 51:10
**Alpha** 6:5
**American** 42:6
  42:7
**amici** 8:14
**amicus** 1:19 2:7
  18:8
**amount** 37:9
  59:24
**analogous** 12:22
  13:9
**analysis** 12:25
  14:3 22:15
  27:15,16
**analytical** 7:25
  40:4
**Anderson's-Bl...**
  12:23 13:10,10
  13:20 17:17
  57:14
**another's** 13:24
**answer** 11:7
  18:17 20:11
  30:10 35:16
  37:10 45:13

**answered** 37:12
  37:12
**anybody** 9:21
  10:4 16:9
  50:24
**anymore** 35:9
**apparatus** 13:17
  14:20 48:3
**apparent** 29:5,5
  29:8,8,18,20
  37:16,18,23
  40:24 58:16
**Appeals** 18:18
  24:18 27:15
  28:15 57:13
**APPEARAN...**
  1:14
**appendix** 28:4
**applicant** 21:8
**applications**
  41:25
**applied** 4:20,21
  14:4,7 20:9
  43:11 44:10
  53:18 57:16
**apply** 4:12 46:8
**applying** 23:9
  23:15 44:9
**approach** 4:21
  4:22 20:17
  51:9 58:15
**approaching**
  53:1
**appropriate**
  46:6
**Archimedes**
  34:17
**argument** 1:12
  2:2,5,9,12 3:3
  3:7 5:25 12:8
  16:8 18:7 20:7
  27:23 33:5,11
  42:22 43:2
  50:19,20 57:4
  59:2
**argumentation**
  21:3

**arguments** 16:6
**arises** 4:15
**arm** 16:24
**art** 5:1,13 6:23
  6:24 7:4,24 8:4
  9:4 10:3,4,6,18
  10:22 12:9
  13:1,2,4 18:25
  19:4 22:19,20
  23:2,5 24:2
  25:17,23,25
  26:18 28:23,25
  29:1 30:4,5,17
  33:21 37:18
  38:9,12 39:11
  39:18 44:22
  45:19,24 50:15
  50:16 51:5,11
  51:13,18,21
  53:19 54:1,3
  56:11 59:21
  60:2
**articulate** 45:15
**articulated**
  43:12 44:4
**articulating**
  52:21
**Asana** 17:4
**Asano** 10:14,16
  12:11 15:2
  17:3 26:9
  29:21 31:22,24
  32:2,6,9,16,19
  32:24 33:4,5,6
  34:4 35:4 38:5
  49:9,13,15,16
  50:6,10,11,18
  50:21,23 51:1
  51:4,4,5,22,23
  51:24,25 54:19
  54:19 60:21
**Asano-designed**
  10:12
**ascertain** 22:20
**aside** 21:4 23:13
**asked** 15:24
  44:4 47:18

**asking** 6:22,23
  12:18 28:16
  29:6 34:1 40:1
**asks** 18:15
**asphalt** 13:14
  14:15,18 17:23
**assault** 8:1,6
**assembling**
  31:17
**assembly** 14:24
  15:12 16:23
**asserted** 17:7
**assertion** 27:7,8
**asserts** 39:9
**assessing** 22:25
**association**
  41:16 42:6,7
**associations**
  42:5,6 43:14
**assume** 46:15
**assuming** 23:12
**attach** 35:10
  49:1,2
**attached** 33:17
  47:24 52:5
  55:7
**attaching** 13:13
  34:15
**attempting**
  25:12
**attention** 39:10
  42:24 47:12
  57:24
**attributed** 12:6
**authority** 3:24
  3:25
**automatic** 32:10
**available** 28:3
  32:7
**axis** 56:1,3,4
**a.m** 1:13 3:2

**B**

**back** 16:25
  17:23 31:13
  32:23 35:9,22
  40:7 43:20

48:7 50:10,10
54:9
**bad** 18:15
**bag** 14:23 53:17
**bags** 54:7
**balance** 42:9
43:13
**bandy** 40:7
**bar** 20:17 41:15
41:16,19,24
42:5,5,6,15,17
43:13
**based** 15:7
39:24
**basic** 42:20
50:24
**basically** 32:25
42:17 46:19
48:19
**basis** 50:24
**battery** 8:19 9:1
**bear** 37:20
**began** 35:13
**behalf** 1:15,19
1:21 2:4,7,11
2:14 3:8 18:8
27:24 57:5
**believe** 11:9
40:23 53:11,11
**believes** 43:25
**benchmark** 5:17
7:1
**best** 9:21 10:1
12:7
**better** 44:2
**beyond** 25:9
32:1,2
**bias** 8:9
**big** 28:3 43:8
46:23 47:18
**bit** 45:6
**blacktop** 14:16
14:18
**blocked** 28:17
30:12 39:19
**body** 8:7
**boils** 43:23

**book** 47:18
**bore** 16:23
**bottom** 27:12
35:23 39:6
44:1 59:12
**boundaries**
21:15
**brainstorm**
34:24
**Breyer** 9:2,9,13
9:24 10:17
11:3,8 14:5
29:23 30:1,24
31:1,3,5,7 34:7
39:19 42:11
43:7 44:18
45:11 46:1
48:19 49:8
53:4 54:9
55:25 56:3,6
59:10 60:22
**brief** 8:14 15:6
22:5 28:3,16
32:3 35:23
39:7,8,12 48:7
52:2 54:11
**briefed** 17:22
**briefly** 54:15
**briefs** 42:13
**bring** 37:20
**broad** 4:24
**broader** 21:7
27:19
**broadly** 3:11
21:7
**broken** 54:8
**brought** 43:6
**burden** 24:6,7
**burner** 13:12,16
13:22,22 14:18
**businesses** 60:16

─────────
**C**
─────────
**C** 1:21 2:1,10
3:1 27:23
**call** 7:25
**called** 22:6 27:3

54:23
**calls** 5:12 59:18
**cancel** 3:21
**cap** 35:10
**capabilities**
22:18 25:5
**capability** 11:17
31:15 38:4
51:16
**capable** 31:17
37:15 38:10
40:22
**car** 32:6 34:22
55:19
**carburetor**
46:21
**carefully** 11:10
58:25
**case** 3:11,17,22
4:10,15,20
5:15,18,21 6:8
6:16 8:16,17
8:18,23 9:6,22
10:10 11:11
12:9,21,21,23
12:23 13:5,10
13:11,12,15,20
13:21 14:3,9
14:12,13,24
15:6,23 17:8
17:13,17,18,24
19:22 21:17
24:15 25:20
26:5,8,22 29:3
31:10,14,21
32:3 35:21
36:4,7,9,14
38:11,14 46:6
46:14,17,17,17
47:8 49:11
50:4 52:2,13
53:7 57:25
58:5,6,6,19,21
60:13 61:2,3
**cases** 4:21 6:4
6:10 9:25 12:7
17:18 18:16

19:14 20:18
21:11,16 23:22
24:20,21 40:17
42:8,12,12
50:13 53:3,16
53:22 57:7
58:9
**categorical** 4:22
6:9
**category** 23:22
23:23
**cert** 53:7
**certain** 11:14
19:1
**certainly** 4:9
11:22 18:23
26:21 46:24
**certiorari** 6:8
51:10
**chafing** 59:22,25
**challenge** 24:23
**challenger**
24:21
**challenging** 20:2
**change** 23:23
44:6 52:17
**changing** 53:13
**chaos** 20:11
**characterizati...**
59:1
**characterized**
48:3
**characterizes**
6:11
**cheaper** 30:22
39:20
**Chief** 3:3,9 7:12
7:20 11:6 18:4
18:10,19 25:6
27:21,25 40:6
40:14 41:7,17
41:21 47:15,17
47:19 49:17,20
49:23 50:1
51:8,15 55:6
55:16,21 56:14
57:1,6 61:1

**chosen** 54:19
**circuit** 4:20,22
5:4,12 6:1,7,11
6:15 7:5,13
12:5 20:9,18
23:8 28:7 29:4
29:6,10,15
30:12 31:18,23
32:14,25 33:22
35:18,21 36:3
36:7,20 37:9
37:19 38:3,17
39:1,9,14,16
40:7,15 42:10
42:16 43:12
44:1 45:12,14
48:18 50:20
51:22 52:7,10
52:18,19,20
53:1,12,24
54:20 56:20,23
**Circuit's** 3:16
19:17 21:16,20
22:17 23:10
24:7,12 25:2
30:10 31:21
32:19 39:5
47:4 51:9
57:25
**circumstance**
5:8,9
**circumstances**
24:4 57:21
**cite** 54:10
**cited** 8:14 19:14
52:9 57:12,14
**citing** 39:15
**claim** 3:12,12
4:14,16,18,24
5:1,4 7:4 12:11
12:21,22 13:14
15:17,18 17:10
17:10,11,12,19
17:24 21:7,17
26:17 27:19
32:1,2,4,8,9
39:6 46:23

47:5,15,21,23
49:13 50:10
54:12 55:11
56:24 58:10
**claimed** 5:14
6:19 7:23 8:17
8:24 13:4
14:19,20 23:3
24:1 25:22
47:12 52:11
58:4 59:22
60:4
**claiming** 17:10
**claims** 15:16,21
17:1,3,7,8 21:6
21:14,17 26:13
31:16 38:21
**clarify** 36:11
**clay** 8:2
**clear** 5:10 7:21
18:21 20:2
24:8,13 26:8
32:15 33:18
35:18 36:20
52:6 54:2
58:12
**clearly** 19:21
**client** 30:6 35:8
**clues** 45:8
**codification**
5:16
**cold** 14:14
**collection** 50:15
**colorable** 17:12
**combination**
26:12 30:19
32:2 60:3,9
**combine** 5:13
9:12,13,16
30:15 32:18
34:4 39:17
45:21,21 50:16
50:18
**combined** 46:25
49:10
**combines** 46:22
**combining** 19:3

32:9
**come** 15:11 24:4
31:13 35:22
50:3 51:23,24
54:9 60:21
**comes** 20:22
32:23 33:20
49:3
**coming** 34:23
46:15 48:25
50:9,10
**comment** 20:21
**common** 8:8
20:23 30:20
35:24,24,24
39:20,21,24
51:12
**company** 10:13
15:8 35:6
**compare** 51:18
51:19
**compared** 51:21
**comparing** 7:24
**competition**
42:25
**complicates**
40:12
**comply** 58:4
**components**
13:24
**concede** 15:20
15:21
**Conceivably**
18:1
**conceived** 37:6
**concepts** 7:7
**concern** 44:4
**concerned** 43:16
43:18
**concerns** 3:11
**concludes** 24:1
**conclusion** 25:8
43:22 54:8
**conclusory**
24:16 27:6
**condition** 5:16
**confronted**

20:25
**confused** 30:2
**Congress** 10:6
28:17 43:9
**consequences**
13:5
**consider** 22:15
**considerable**
52:21
**consideration**
8:15 59:9
**considerations**
19:12 24:9
**considered** 8:22
12:22 46:6
**considering**
33:16
**consistent** 19:13
19:21
**consistently**
52:9
**constant** 59:17
**constitutes** 8:5
**constraint** 7:18
**Construed**
18:12
**construing** 8:7
**content** 22:19
**context** 4:15
19:6
**contrary** 18:14
20:8,16 39:9
**control** 29:22
31:24 32:18
34:5 47:6,24
47:25 48:1,3
48:11,14 49:10
50:8 54:22
55:3,19 56:13
**controlling** 12:6
**convincing** 5:10
24:8 33:18
**corpus** 57:25
**correct** 22:3
32:13,15 51:16
**cost** 52:21
**counsel** 58:15

61:1
**count** 44:25
**country** 41:16
43:9
**counts** 45:7
**course** 7:12
20:14 24:21
27:9 35:7
56:10
**courses** 14:15
**court** 1:1,12
3:10,14,25 4:5
4:12 5:5,15,19
7:20,21 8:19
8:22 11:11,12
11:14 12:22
13:19 17:15
18:11,18 19:12
19:15,24 20:15
20:16 21:2,18
21:19 22:14,14
22:25 23:25
24:12,18 25:14
25:14,15,21
27:15 28:1,2
28:15 34:2
38:22 40:16
41:14 43:22,25
44:24 46:2,5
47:10 53:3
57:11,13,16,17
57:20 58:2,7
58:18 60:18
**courts** 3:24
19:23 23:15
40:19 44:3
**Court's** 6:25 7:7
8:7,10 11:10
13:25 18:15
19:13,20 20:4
20:19 24:24
25:4 57:12,13
**cousin** 10:7
**create** 24:18
40:25 44:11
**credentials** 27:3
**criticism** 45:13

**cross** 47:11
**curiae** 1:19 2:8
18:8
**curing** 4:5
**current** 52:24
**cursory** 22:16
**cut** 4:18 41:18
45:4

---

**D**

**D** 3:1
**Dabney** 1:15 2:3
2:13 3:6,7,9,22
4:7 5:22 6:6,25
7:20 9:8,21
10:10,25 11:5
11:9,22,25
12:4,15,20
14:8,12 15:4
15:22 16:2,5
16:12,15,18,21
18:1,5 57:2,4,6
58:24 59:7,18
**dangerous** 21:2
**Dann** 19:22
**deal** 25:19 46:23
**dealing** 6:4
57:21
**debate** 12:9 43:8
43:10,11
**decades** 53:2,7
**deceptive** 7:15
**decide** 13:6
17:15 58:5
**decided** 8:18
11:12 33:15
36:3,3,14
**decides** 35:6
53:8
**deciding** 38:8,9
45:24
**decision** 5:14,17
20:19 26:4
55:2,18 60:12
**decisionmaking**
58:13
**decisions** 5:25

54:3
**declarants**
27:11
**declaration**
27:11
**declarations**
27:2 47:8
**deep** 42:21
**defend** 42:15
**defendant** 60:5
**defending** 36:7
**defense** 4:13,16
5:6
**defied** 8:20
**define** 39:22
41:9 45:9
**defined** 5:7 7:3
12:25 17:21
48:4
**definition** 27:17
**degree** 5:2 7:2
11:14
**Dembiczak**
53:16,24
**denied** 41:25
**Department**
1:18
**depending**
26:18
**depends** 7:9
**Deputy** 1:17
**describe** 17:8
25:13
**described** 5:3
28:19 56:21
**describes** 15:18
**description**
22:12,13 39:4
**design** 15:9,9
46:21 47:21
48:5 49:24
**designed** 26:11
**designs** 51:6
**desirable** 30:21
**desire** 52:22
**desired** 8:2
**detail** 22:16,17
38:15

**detailed** 22:21
25:1
**determination**
6:12,19 24:5
24:10,14,25
25:25
**determinations**
19:19 43:18
**determine** 21:19
**determined**
59:23
**determining**
19:16 58:3
**devalues** 25:3
**device** 34:15
48:13
**devices** 6:9
38:19
**devise** 5:3 7:2
12:1 17:19
**devised** 3:18
7:13
**de-emphasizes**
25:3
**dice** 24:19
**Diestar** 6:5
**difference** 5:1
6:21 13:3,7
23:21 24:1
37:22 39:25
56:8 58:10
59:21,24 60:10
**differences**
22:19 25:22
28:21 57:23
**different** 7:7
17:6 35:17
37:16 44:7
46:21 47:21
57:22,23 59:16
**differential**
52:19
**difficult** 18:22
**dilemma** 45:12
**direction** 42:18
44:7 52:22
**director** 4:8

**disagree** 10:23
37:7
**disagrees** 40:15
**disclosed** 28:19
**disclosure** 58:23
**discovery** 45:23
**discuss** 32:3
**discussion** 8:15
**dispute** 12:24
53:15
**disputes** 4:11
**distinguish**
18:23 36:17
**distinguished**
57:15
**distinguishing**
10:20
**district** 3:24
34:2 57:11,17
**doing** 19:1 33:12
37:15 44:2
**door** 34:22
59:12,13,15
**doorknob** 8:3
58:19
**dot** 47:11
**doubt** 21:16
34:8
**dramatic** 44:11
52:23
**draw** 54:7
**durable** 30:22
**Dystar** 36:2,12
**D.C** 1:8,18,21

**E**
**E** 2:1 3:1,1
**earlier** 14:11
52:9 53:16
**easy** 7:19
**eating** 34:23
**economy** 42:20
**effect** 12:9,10
20:24 24:6
**efficient** 6:18
30:23 31:11,13
**either** 12:11

29:5 42:5 49:2
51:24
**elaborate** 53:2
**elaborated**
40:16
**elaboration** 40:4
**electrodes** 8:25
**electronic** 16:9
16:10 26:10
29:22 31:24
32:11,17 34:5
35:6,10 47:5
47:23,25 48:1
48:3,11,14,17
49:10 50:7
54:22 55:18
56:12
**electronics**
46:20
**elegant** 27:3
**element** 14:6
**elementary**
34:16
**elements** 23:1,2
**else's** 13:15
**embraced** 41:8
**embracing** 44:1
**emphasize**
60:15
**emphatic** 52:8
**empirical** 54:11
**employing** 28:8
51:20
**encourage** 45:23
**encourages**
22:17
**endorse** 21:3
**Engelgau** 3:12
10:11,15 15:3
15:7,9 16:22
29:21 32:21
34:17 48:8
50:5 52:4
54:25 60:24
**enlightening** 9:5
**enlightenment**
30:3

**enormous** 17:11
**enter** 14:3
**entire** 8:6 55:5
**entirely** 18:21
19:13
**entitled** 11:17
22:23
**entitlement** 5:19
**erect** 6:8
**erroneous** 23:17
**error** 3:16 20:23
20:23
**escape** 6:9
**ESQ** 1:15,17,21
2:3,6,10,13
**essentially** 37:1
**established** 59:8
**establishes**
36:21
**ET** 1:6
**everybody** 7:10
7:16 10:20,21
38:10
**evidence** 5:10
20:2 24:8 33:3
33:18 37:10,10
37:19 46:9
59:1
**exactly** 46:2
47:12,13,20
50:1
**examiner** 33:14
44:10
**examiners** 40:20
**example** 10:19
18:24 21:5
34:4 40:17
58:9
**excellent** 8:17
**exclusive** 11:21
12:18 19:18
22:2 45:7
**exclusively**
39:10
**excuse** 50:9
54:20
**exist** 4:9

**existed** 51:19
**exists** 30:16
  36:18 50:17
  51:19
**expectations**
  60:17,19
**experienced**
  41:14
**expert** 15:25
  27:8 34:20
  49:18 52:1
**experts** 24:16
  26:24 27:1,16
  46:9 47:9 49:8
  49:15 50:5
**explain** 38:14
  40:2 47:9
**explained** 9:5
  30:13 49:11
  54:20
**explains** 53:24
  54:21
**explanation**
  53:25
**explicit** 20:1
  29:17 53:19
**explicitly** 52:13
  53:13
**extent** 55:4 59:7
**extraordinary**
  51:17 57:19

————— **F** —————

**F** 59:20
**face** 15:5
**facing** 45:13
**fact** 6:12 8:21
  12:7 19:21
  20:8 21:8 36:8
  48:20
**factfinder** 46:11
**factor** 12:7
**factors** 44:24
  46:4,5
**facts** 4:12 21:4
  46:10 59:9
**factual** 12:24

22:22 23:24
  24:9 25:1,17
  25:18,22
**fair** 39:4 53:21
**fairly** 49:6
**faithfully** 56:24
**familiar** 44:21
**far** 27:1,19
  42:18 55:24
**fashion** 22:16
**faster** 30:22
  39:20
**favor** 44:25
**Fed** 20:9
**Federal** 3:16
  4:20,22 5:4,11
  6:1,6,11,15 7:5
  7:13 12:5
  19:17 20:18
  21:15,20 22:16
  23:8,10 24:7
  24:11 25:2
  28:7 29:4,6,8
  29:10,15 30:10
  30:12 31:18,20
  31:22 32:14,19
  32:25 33:22
  35:18,21 36:3
  36:7,20 37:9
  37:19 38:3,17
  39:1,4,9,14,16
  40:7,15 42:10
  42:15 43:12
  44:1 45:12,14
  47:4 48:18
  50:20 51:9,22
  52:7,9,18,19
  52:20 53:1,12
  53:24 54:20
  56:20,23 57:25
**field** 37:5
**figure** 9:23 45:2
  45:18,19,20
**figured** 34:17
  49:1
**figures** 15:12,15
  16:22

**file** 33:20
**filed** 21:11 33:8
  41:16 43:14
**find** 10:8,19
  16:17 49:6,21
  51:13 53:20
  60:22
**finding** 5:11
  34:2 38:8
**fine** 11:8,8
**first** 11:16 20:14
  28:17 31:15
  36:18 44:17
  49:12 50:4
  51:25 52:7
  54:17,19
**fitting** 59:20
**five** 48:20
**fixed** 32:16
  34:10,13 35:11
  48:5,9,22,24
  49:4
**flexibly** 51:10
**focus** 25:4,4,7
  40:19 45:16
  47:2 59:19
**focuses** 39:10
  51:9
**focusing** 27:16
  40:13
**foldout** 48:8
**follow** 13:6
  55:16
**followed** 57:12
  57:15
**following** 23:10
  37:8
**Ford** 16:8 32:6
  35:5 59:20
**Ford's** 15:10
**foreclose** 60:5
**foreign** 20:4
**form** 37:10
**formula** 58:13
**formulation**
  46:16
**Fort** 10:13 15:8

**forth** 16:25 23:2
  23:4 26:3
  28:19 32:7
  35:9 40:8
**found** 30:2
  39:18 46:10
**four** 48:20,25
  57:3
**framework**
  22:25 40:4
**frayed** 58:22
  59:6
**front** 24:20
**frontal** 8:1,6
**fuel** 46:22
**function** 23:4
**functional** 52:25
  58:14
**functioned**
  13:22,23
**fundamentally**
  3:18 52:25
  54:8
**further** 18:2
**future** 35:22

————— **G** —————

**G** 1:17 2:6 3:1
  18:7
**garage** 34:22
  59:12,13,15
**garbage** 53:17
  54:7
**General** 1:17
  3:13 37:14
  39:8,13 54:21
**General's** 39:8
**generated** 8:25
**generator** 57:8
**genius** 34:8,9
**genuine** 44:11
**getting** 58:22
**Ginsburg** 3:19
  3:23 4:2 5:20
  5:23 10:23
  11:1 21:23
  22:4 26:24

27:10 44:5
**Ginsburg's** 23:8
**gist** 38:17
**give** 33:2,3 58:9
**given** 24:3 32:6
  52:2
**giving** 28:21
**gleaned** 30:16
**gloss** 7:14
**gnawing** 59:11
**go** 10:3 15:2
  21:21 34:11
  35:14 44:18
  46:17 56:13
**gobbledygook**
  41:11
**goes** 32:1,2 43:1
**going** 4:6 7:18
  13:9 17:23
  20:11 21:11
  28:5 31:14,16
  33:1,23 35:12
  42:20,22 44:7
  44:17 45:20,20
  47:22,25 48:1
  48:7,9,10,14
  48:15,16,23
  49:1 50:17,18
  51:18,18 57:19
  58:14
**Goldstein** 1:21
  2:10 27:22,23
  27:25 28:10,12
  29:25 30:9,25
  31:2,5,9 32:12
  33:7,13 35:16
  36:5,11,16
  37:7,24 38:2
  38:24 39:3
  40:3,14 41:3,5
  41:13,21 42:4
  43:7 45:11
  46:13 47:1,17
  47:20 49:7,19
  49:23 50:2,12
  51:3,15 53:10
  53:20 54:17

55:4,9,13,20
55:22 56:2,5,7
56:18
**good** 21:5 38:19
45:2
**Goodyear** 8:16
**gotten** 27:1
**Graham** 7:14
8:12 11:10
19:21 22:14,14
23:25 24:13,24
25:4,14,15
26:4
**grammatical**
37:22
**grant** 34:20
51:10
**granted** 6:8 7:9
42:1,3 53:7
**great** 25:19
38:14 60:21
**greater** 57:8
58:2
**greedy** 15:18
**green** 48:13
**gross** 54:13
**grounded** 3:17
**guess** 9:4 20:10
20:21
**guidance** 40:18
40:19
**guy** 14:16

---

**H**

**half-hour** 44:17
**hand** 11:24
43:17
**hanging** 13:16
**happen** 35:3
58:6
**happened** 50:22
**happens** 23:13
**head** 52:22
**hear** 3:3
**heard** 40:17
53:22
**heart** 31:20

**heat** 13:12,16
14:18
**held** 6:2 13:19
19:23 30:14
58:18
**high** 34:12 52:6
**hindsight** 7:15
7:16,22,22,25
8:2,6,14,18
33:1,23 43:18
**hinge** 34:22,25
**history** 58:12
**holding** 24:24
25:13,14
**Holmes** 45:6
**Honor** 4:19 6:6
8:9 16:2 18:22
19:10 20:14
21:1,13 22:11
23:19 25:12
26:7,15 27:5
**hope** 45:5,6
**Hotchkiss** 17:17
**huge** 42:22
**Hungar** 1:17 2:6
18:6,7,10,21
19:10 20:13
21:1,13,23
22:3,11 23:6
23:19 25:11
26:7,15 27:5
27:13,22
**hypothetical** 7:9
7:10

---

**I**

**idea** 30:3 37:6
**identically**
28:19
**illustrate** 31:10
**implementing**
5:18
**implications**
42:19
**implicit** 6:22
29:17 30:15
39:24 52:14

**implies** 52:14
**imponderable**
42:2
**important** 8:22
11:20 38:6
46:7
**importantly**
27:14
**imposed** 6:10
**imposes** 7:18
**impossibility**
6:17
**imprecise** 25:13
**impression**
52:17
**improper** 7:25
8:5
**improve** 56:19
**improvement**
4:24 30:18
**inadvisable**
11:19
**incalculable**
52:24
**included** 35:19
35:25
**includes** 5:9
**including** 8:12
11:10 31:15
42:6
**inclusion** 29:14
**inclusive** 29:11
36:21,25 37:3
52:8
**incomplete**
44:15
**inconsistent**
3:18 20:18
**Incorporated**
3:5
**incorrect** 23:13
**independent**
30:18
**indicates** 41:18
**indication** 18:25
**industry** 50:3
**inexpensive**

6:18
**informed** 22:21
25:1
**infringement**
4:14,16 17:12
**ingenuity** 5:17
8:3
**initially** 33:14
**initiated** 4:8
**innovation** 25:7
25:12 51:17
57:24
**innovative** 22:7
22:8,12 26:1
**innovators**
60:19
**inquiries** 12:24
22:22 25:1
**inquiry** 7:5
25:15 28:15
40:12 43:23
**insightful** 49:21
**instability** 44:12
52:23
**Intellectual** 42:7
**intention** 20:8
**interact** 14:21
**interested** 42:23
**interesting**
14:17
**interests** 43:15
**International**
1:3 3:4
**invalid** 3:14 4:4
6:3 16:16 17:3
21:6
**invalidates**
12:11
**invalidity** 4:1,13
5:6
**invent** 10:5
**invented** 13:11
21:8
**invention** 4:23
13:8,15 22:20
23:3 24:2
25:23 27:7

28:18,24 29:7
29:9,18,21
31:19 32:5,8
32:15,16,21
33:2 35:20
38:6,7,8 40:24
40:25 45:18,22
47:4,5 48:18
48:20 49:14
54:16 55:1,5
56:15 59:5,22
**inventions** 60:20
**inventor** 27:18
31:1 46:24
**investments**
52:24
**involved** 43:5,9
56:11
**irrational** 41:12
**irreconcilable**
18:14
**irrelevant** 36:10
**issuance** 4:4
**issue** 4:15 5:14
6:12 12:21
13:5 15:23
**issued** 3:15 4:3
4:25 6:1 23:17
44:8 57:20
**issues** 23:24
25:18 42:21
**i's** 47:11
**i.e** 19:6

---

**J**

**JAMES** 1:15 2:3
2:13 3:7 57:4
**jargon** 40:7
**Johnston** 19:22
**joint** 14:15 28:4
**judge** 9:4 30:3
46:8
**judges** 32:14
40:17 53:12,21
53:23
**judgment** 3:17
3:25 4:13

Case 3:16-md-02738-MAS-RLS   Document 10032-3   Filed 06/17/19   Page 70 of 76 PageID: 82476
Official - Subject to Final Review

Page 69

18:17 21:18
22:21 47:8
52:13
**judicial** 43:21
**judicially** 3:17
**jumping** 28:14
**jury** 5:10 6:12
21:21 24:14,18
24:20 26:6
46:10
**Justice** 1:18 3:3
3:9,19,23 4:2
5:20,23 6:21
7:12,21 9:2,9
9:24 10:17,23
11:1,3,6,8,18
11:23 12:2,12
12:17 14:2,5
14:10 15:1,20
15:24 16:7,13
16:16,19 17:23
18:4,10,19
19:5 20:6,20
21:10,23 22:4
23:6,7 25:6
26:5,13,24
27:10,21 28:1
28:9 29:23
30:1,24 31:1,3
31:5,7,13 32:1
32:13 33:6,8
33:10,13 34:7
36:2,6,13,16
36:24 37:7,21
37:25 38:16,24
39:1,3,19,22
40:6,14 41:2,4
41:6,7,13,17
41:21,23 42:4
42:11 43:7
44:5,5,18
45:11,13 46:1
46:14 47:1,15
47:17,19 48:19
49:7,17,20,23
50:1,9,12,22
51:7,8,15 53:4

53:6,10,15
54:9,14 55:1,6
55:11,16,17,21
55:25 56:3,6
56:14 57:1,6
58:21 59:3,10
59:19 60:17,22
61:1
**justified** 21:4
60:17
**justify** 26:2

_____ **K** _____

**Kahn** 6:5
**keep** 19:7 50:9
50:10
**Kennedy** 11:18
11:23 12:2,12
12:17 15:1,20
15:24 16:7,13
16:16,19 17:23
19:5 26:5,13
36:2,6,13,16
38:16,24 39:1
39:3 46:14
47:1 58:21
59:3,19
**kind** 8:9 15:11
55:22
**kinds** 8:21 27:2
42:13 57:22,23
**knock** 33:20,23
**know** 16:19 22:9
26:15 29:19
31:3 33:24,24
34:15 37:3
42:11 50:2
60:16
**knowing** 26:19
**knowledge**
35:24 39:20
**known** 11:16
23:4,4 34:12
**knows** 7:10 16:9
**KSR** 1:3 3:4

_____ **L** _____

**labelled** 22:6

**lack** 19:23
**laid** 22:14
**language** 39:5
**large** 16:23
**largely** 15:6
**Laughter** 11:4
16:1,4 28:11
31:8 41:20
49:22 55:15
**law** 4:12 5:24
8:8 20:24
21:19 23:24,25
36:18 42:7
45:8 46:16
52:18,19,20
54:2 57:16,25
59:22
**lawyer** 9:25
**lawyers** 40:7
42:8
**layer** 40:6
**laying** 14:15
**leading** 54:13
**leakproof** 8:19
**leaned** 42:18
**leaving** 21:3
**legal** 12:8,10
13:5 22:21
24:5,10,13,25
25:8,25 27:13
57:8
**legally** 60:12
**legitimate** 20:15
**let's** 46:15 56:16
**level** 13:2 34:21
**lever** 52:5
**levers** 46:20
**Library** 10:6
**light** 23:24
25:18,19,21
46:9 50:14
**lighter** 30:22
39:20
**limitation** 29:14
**limitations**
17:20 26:17
**limited** 5:7

17:10 32:4,6
32:16
**line** 21:3 27:12
44:1
**lines** 23:7
**list** 45:5,7 46:3
**listed** 44:24
**litigated** 17:22
26:16,21 50:13
**litigation** 3:22
3:23 4:10 37:2
57:9 60:16
**little** 15:18
35:10 45:6
**long** 20:23 34:15
45:1
**look** 9:11,22
10:3,4,5,5,6,7
10:7,12,18,21
29:7,19 34:7
38:4,13,19
44:20 53:2
54:6,10
**looked** 19:15
54:11
**looking** 5:25 7:4
7:4,23 27:18
42:9 48:12
53:25
**looks** 34:18,21
35:13 36:2
48:8 53:17
**lose** 47:3,3
**lot** 9:24 30:2,2
**lots** 57:22,23
**lower** 19:23
20:15 34:22
40:19

_____ **M** _____

**machine** 34:13
49:4 59:12
**magic** 46:16
**major** 41:15
**maker** 60:23
**making** 5:24
16:8 33:11

39:19 46:21
**mandatory** 20:4
**manifestations**
21:9
**manner** 4:18
5:13 26:11
**market** 13:13
**marketable**
13:17
**material** 60:12
**materially** 6:15
**materials** 8:25
**mathematics**
34:16
**matter** 1:11 4:23
4:24,25 5:2,3
6:11,19 7:2,23
8:17 11:13
13:4 21:19
23:21,24,25
28:22,23 46:7
51:20 52:18
58:4 60:4,7
61:4
**mean** 10:3,7,8,9
10:9,21 12:20
16:7 20:22
25:8 29:15
36:6 41:10
49:20 59:10
60:15
**meaning** 29:1
37:22,23
**meaningless**
36:25 40:12
**means** 8:2 18:12
19:8,11,15
28:6,8 29:4,24
30:13 36:8
**meant** 7:21,22
9:20 10:1 54:9
**measure** 11:12
24:7 34:14
**mechanic** 38:20
**mechanical** 51:1
**mechanism** 17:4
17:7 51:2

Case 3:16-md-02738-MAS-RLS   Document 10032-3   Filed 06/17/19   Page 71 of 76 PageID: 82477
Official - Subject to Final Review

Page 70

mechanisms
  8:11
meet 10:13
  15:10 24:21
  40:9 58:10
meets 6:19
merely 23:3
  40:22
met 10:14
metal 8:24
methods 46:21
middle 45:24
mind 4:5
minutes 57:2
mischaracteri...
  52:12
misguided 52:12
misleading 41:7
mistaken 52:16
mistakes 4:5
  53:22,23
modern 60:23
modest 5:2
modified 53:4
modify 60:8,11
money 19:1,2
month 58:1
morning 21:12
motion 32:19
  33:8,21,21
  50:19 54:18
  56:23
motivated 10:3
  30:8
motivation 5:12
  6:13 7:6,10
  8:21 9:20 10:2
  10:11,15,18,20
  10:21,24 12:1
  12:2,9 14:3,4,6
  14:6,11 18:13
  18:20,23 19:2
  19:3,7,11 20:3
  22:1 24:22
  25:16 28:6
  29:13,16 30:2
  30:14,15 31:19

31:20,23 35:7
39:16,23 40:10
41:1,9,10
43:23 44:14
50:16 52:15
56:18 57:9
motivations
  30:20 35:19
  36:1 39:11
motive 11:7,19
Motor 10:13
  15:8
motto 20:22
move 34:13
  55:19 56:8,16
  56:17 59:13
  60:3
moved 56:12
movements 49:5
moves 34:19
  35:11 49:4
  59:16
moving 48:21,22
  48:22,24 59:14
  59:16
multiple 57:22

**N**

N 2:1,1 3:1
naive 35:1,2
name 9:6
narrow 27:17
  42:1 52:11
narrowly 5:7
  51:9
nature 4:23
necessarily 17:3
necessary 36:22
need 7:17 17:15
  22:15 39:17
  40:18,18,19
needed 5:3 7:2
  8:5
needs 7:21
negligence 45:7
never 4:5 5:5
  38:20,20,21,22

42:18 49:10
50:6 51:25
56:21
new 1:15 36:22
  39:14 52:22
nigh 6:17
non 51:14
nonexclusive
  40:9 45:5
nonmoving 55:7
  55:10
nonobvious
  22:22 27:4,7
  40:11 41:11
  54:16 55:7,18
nonobviousness
  25:9 40:18
nonprior 50:16
nonrigid 39:16
notion 11:15
notwithstandi...
  24:24 32:14
  57:20
nouns 41:8 42:2
novel 27:3
November 1:9
nowadays 6:17
number 19:14
  27:6
N.Y 1:15

**O**

O 2:1 3:1
objection 46:11
objective 7:3
objectively 7:3
  17:21
obtained 28:18
obvious 6:3,24
  7:19 9:14,17
  11:21 15:3
  19:16 21:8,20
  22:22 24:17
  25:24 26:9,20
  26:23,25 27:8
  28:24 29:1,2,3
  29:4 31:12,16

31:22 32:23
33:9,15 34:3
35:14 37:23
38:1 39:2 40:1
40:5 44:23,25
45:16 46:3,8
47:14 49:2,6,6
49:8,14,18
50:6,14 51:14
52:4 54:25
58:16,17 60:4
obviously 25:16
  26:20
obviousness
  7:15 12:14
  18:13 19:9,12
  19:19 20:5
  42:2 43:19,24
  54:12 56:24
Office 3:14 4:17
  23:9 53:23
off-the-shelf
  26:11
oh 24:17 33:2
  39:2
okay 9:16 22:1
  30:5,6 32:25
  34:25 35:16
old 20:22 39:15
old-fashioned
  55:2
once 39:22
ones 6:1 45:3
open 20:16
operates 46:19
operation 13:24
  46:18
opinion 8:13
  9:22 15:25
  16:3 39:14
  43:24 46:11
opinions 39:15
  52:8 53:13
opponents 37:2
opposed 51:11
opposing 58:15
oral 1:11 2:2,5,9

3:7 18:7 27:23
order 60:23
ordinary 6:24
  8:4 17:19
  22:18 25:5,24
  26:9 28:25
  29:9 37:5
  44:22
organizations
  42:14
ought 12:18
outcome 29:2
outer 21:14
outliers 53:21
overcome 60:1
overpatenting
  43:17
over-patenting
  54:13
owner 60:21

**P**

P 3:1
page 2:2 28:16
  30:11 35:23
  39:6 47:19,20
  48:8,13
pages 30:11
paid 41:24 42:24
  57:24
painting 13:16
paragraph 48:2
paragraphs
  47:23
parlance 13:25
part 34:14 38:6
  49:4 55:19
  56:20 59:16
particular 5:13
  14:10 15:8
  25:20 27:18
  32:12,18 37:11
  47:7,11,16
  50:14 55:22
  58:8,9,10
  59:19,21
particularly

40:8
**parts** 34:13
42:14,16 48:21
48:22
**party** 20:1
**patent** 3:12,12
3:13,15,21,23
4:1,3,14,16,17
4:25 5:1,3,7,14
5:19 6:3 7:8
8:23 9:25
11:17 12:25
13:14 14:11
15:13,15,17
16:22 17:12,25
18:14 19:16
20:2,17 21:5
22:23 23:9
24:3,24 26:2
26:10 28:18,21
31:15,22 33:13
33:14,15,20
35:1 38:13,13
38:20 39:2
40:20,20 41:15
41:15,19,24,25
42:3,15,16,18
42:23 43:13
44:3,10 47:13
52:23 53:23
54:7 57:7,8
58:13 60:22,24
**patentability**
5:16 7:1 15:15
15:16 21:15
59:23
**patentable** 13:7
13:21
**patented** 7:24
28:22
**patentee** 13:12
13:20 14:8
**patenting** 43:9
**patents** 4:8
19:23 23:1,14
23:16 28:5
33:23 38:18,21

41:23,25 44:8
52:24 54:6
**pay** 11:13 47:11
60:24
**pedal** 10:12
14:24 15:10,12
16:11,23,24
31:17 32:6,9
32:10,17 46:18
47:6 49:3,24
51:6 55:9,23
56:9,12 59:21
60:2
**pedals** 17:9
31:11,13
**pending** 4:10
**people** 45:1 50:2
52:11
**perfectly** 26:8
**performing** 23:3
**person** 6:24 7:9
11:3 22:18
25:5,24 26:9
28:25 29:9
34:12 37:5
44:21,23 49:21
**petitioner** 1:4,16
1:20 2:4,8,14
3:8 17:13 18:9
37:13 57:5
59:2 60:12
**petitioner's** 17:9
37:14
**Ph.D** 49:24
**picked** 51:5
**picking** 45:24
**picture** 48:6,10
49:12
**pictures** 30:5
**piece** 33:21
50:15 55:8
**pieces** 38:9
47:21
**pin** 29:22 38:5
52:3
**pins** 17:5
**pivot** 32:17 48:4

48:4,5,9,10,15
54:23 55:10
56:2,6,7,8,11
**place** 11:20 22:1
32:12 55:18
**plain** 29:1
**plaintiff's** 4:14
4:18
**play** 24:4
**pleaded** 4:14,16
**please** 3:10
18:11 28:1
**point** 3:23 17:16
22:24 28:14
32:15,19 35:2
35:5 38:12
42:5 43:21
47:4 50:24
**pointed** 32:21
**policy** 18:15
**polish** 53:8
**pose** 58:19
**posit** 8:2
**position** 3:20
15:22
**possibility** 4:7
**possible** 45:15
58:5
**potential** 60:9
**practical** 6:10
23:21
**practitioner**
29:18,20 30:25
38:11
**practitioners**
40:21
**praised** 6:16
**precedence**
11:10
**precedent** 20:15
20:16 39:9
52:10 58:8
**precedents** 7:1,8
8:7,10 13:25
18:15 19:13,20
20:4 57:12,13
57:21

**precisely** 35:8
**precludes** 19:18
**predecessors**
8:8
**predictable** 6:18
**preemptive** 12:8
12:10
**premise** 60:8
**prerequisite**
20:5
**presence** 6:12
11:25
**present** 26:17
**presented** 33:19
50:20 56:25
**pressure** 46:19
**presume** 23:16
**presumption**
23:14 24:4,5
33:16 44:9
**pretty** 35:14
**previous** 4:21
38:18
**previously** 23:4
**principle** 20:1
**prior** 5:1,13
6:23 7:4,24 9:4
10:3,4,6,18,21
12:9 13:1,2,4
18:25 19:4
22:19,20 23:2
23:5 24:2
25:17,23 26:18
28:23 30:17
33:21 38:9
39:11,18 45:19
45:24 50:15
51:5,9,11,13
51:18,21 53:19
54:1,3 56:11
59:21 60:2
**probably** 34:17
**problem** 6:16
7:3 8:20 10:19
14:15,18 17:21
19:17 21:6,24
25:2 27:15,15

27:17 38:8
40:16 45:19
50:7 54:12
58:20 59:13,20
60:1,7
**problems** 24:11
27:6
**proceeding** 3:20
57:18
**process** 7:25
17:25 30:20
45:18 58:3
**produce** 20:11
**produces** 18:16
41:23 54:5
**product** 30:19
**products** 60:19
**profitable** 41:18
**progresses**
46:17
**promise** 55:14
**proof** 24:6,8
**proper** 22:15
43:4
**properly** 43:11
50:13
**Property** 42:7
**proportion**
34:10 35:11
**proposition** 21:2
**protecting** 8:11
**protection** 5:19
22:23 24:3
**protectionism**
42:24
**prove** 33:25
56:22
**proven** 20:1
**provide** 8:10
58:7
**provided** 22:25
60:2
**provides** 17:1,6
59:22
**proving** 18:12
19:12
**PTO** 3:20 4:3

Official - Subject to Final Review

public 58:9
pulls 35:9
pumpkin 53:17
purport 44:6
purpose 16:10
    16:11 19:6
purposes 13:18
put 9:3,9 14:22
    16:11 29:21
    38:5,7,10,12
    38:22 45:25
    47:5 48:16
    52:3,4,5 54:21
    55:2 56:16
    59:1
putting 30:4
    34:24 40:22
    47:16
p.m 61:3

**Q**

quantum 13:3
question 4:2
    11:7 12:12
    13:6 16:3
    17:16 18:16
    19:25 20:22
    23:7 24:15,19
    25:19,20 26:2
    26:20 27:14
    31:9,10 33:18
    37:4,11,11,12
    37:13,16 38:1
    40:20,21,23
    44:13 45:17
    53:1 55:17
    60:8
questions 18:2
quick 6:18
quickly 53:4
quite 14:13
    36:20 39:25
    52:8,13,21
    53:13,19 54:2
quote 27:17 28:5
    28:17 30:11,12
    39:7,12,13,19

quoting 39:15

**R**

R 3:1
raccoons 34:23
    59:11
radiant 13:12,15
    14:17
radical 52:17
raising 20:21
ratio 34:13
    48:22,24 49:4
    59:17
Rayovac 8:16
reactions 35:13
read 9:17,18,24
    38:20,21 39:19
    58:24 59:3,4
real 44:4 60:16
    60:19,19,20
realize 20:20
really 4:17 30:7
    32:8 36:9,10
    41:11 44:16
    60:15
reason 7:13
    16:18,21 32:13
    40:15,23 42:21
    44:9 49:8,9
    52:1 57:18
    60:11
reasons 37:8
    51:24
REBUTTAL
    2:12 57:4
received 42:13
recited 17:2
recognized 4:3
    48:18 60:18
record 5:9 13:2
    15:4,7 26:22
    49:11 50:4
    55:23 59:4,4
recorded 35:23
red 28:3,16 48:7
    48:10
reduces 37:1

refer 18:20 26:1
reference 12:11
    17:4 35:22
references 19:4
    30:19
reflects 11:14
regard 8:9 25:8
regardless 5:4
regime 57:8
reject 11:23
rejected 11:15
    18:17 33:14
relates 32:4
release 46:21
relevant 30:4
    37:10 47:22
reliance 20:15
relied 60:11
rely 13:1
remaining 57:2
remand 33:25
    56:22
remedial 6:14
remedy 4:9
remember 6:2
    9:6 38:12
    41:15 46:7
remotely 17:9
render 3:25 4:12
    52:3
rendered 47:13
    54:24,24
renders 31:22
    41:10
repeatedly
    30:14
reproduced
    28:16
require 55:12
required 8:4
    17:18 23:25
    38:14 59:23
requirement
    15:8
requirements
    10:13,14 15:10
    28:21

requires 23:20
    25:10 37:17
requiring 19:24
    24:8
requisite 19:3
reserve 18:2
resolved 4:11
    21:18
respect 7:3 16:2
    39:4
respectfully
    11:5 17:14
    60:14
respond 48:15
respondent
    19:14 57:10
respondents
    1:22 2:11
    10:11 15:18
    17:7 27:24
respondent's
    15:6 24:16
responsive
    31:25 48:2,4
rest 18:2
rests 32:19
    33:21
result 8:2 23:22
results 30:19
reveal 26:18
reversed 18:18
    19:24
revolution 20:7
re-examination
    4:8
rhetorical 54:12
rhyme 44:9
Rich 9:5
Rich's 30:3
right 9:10 11:3,7
    21:25 28:9
    31:23 32:14
    34:3 38:2
    40:20,21,23
    42:25 43:12,16
    45:4,17 47:2
    47:19 49:7

51:22 55:21
    56:15,19 57:17
rightly 36:17
ROBERTS 3:3
    7:12 11:6 18:4
    18:19 25:6
    27:21 40:6
    41:17 47:15,19
    49:17,20 50:1
    51:8 55:6,16
    55:21 56:14
    57:1 61:1
Rock 12:23
    13:10,10,20
    17:18 57:14
role 24:19
room 9:10,11
    30:4
rotates 56:6,7
rule 54:13
rules 44:6
ruling 31:21

**S**

S 2:1 3:1
Sakraida 19:22
    20:19 22:25
    53:3
sat 15:9
satisfaction
    19:20
save 19:1,2
saw 14:16 35:13
saying 24:17
    37:9,19,25
    38:3,4,17
    42:17 44:10,19
    54:1 59:5 60:6
says 4:22 5:4 7:8
    7:16 9:13,15
    29:6,10 31:18
    31:18 32:18,23
    34:2 35:18
    43:16,17,24,25
    44:21 46:23
    50:14
Scalia 14:2,10

Official - Subject to Final Review

23:6 28:9 32:1
32:13 33:6,8
33:10,13 36:24
37:7 41:2,4,6
41:13,23 42:4
44:5 45:14
50:9,12,22
51:7 53:6,10
55:11
**school** 34:12
**scope** 27:19
**search** 39:10
**second** 52:1,12
54:20
**secondary** 8:15
**secret** 20:17
**section** 3:15 4:1
5:6,15,18 8:7
28:20 33:17
**see** 9:11 21:10
29:7 35:2
48:12
**seeing** 42:18
**seemingly** 6:14
**seen** 8:14 13:13
38:20 48:21
**sense** 12:3,5
23:16,20 35:24
39:21,25 51:12
**sensor** 26:10,10
26:11 32:11
34:21
**series** 6:8 39:15
42:12,12 54:10
**serve** 12:13 19:6
**serves** 16:10,11
**service** 58:3
**set** 23:1,4 26:3
28:19
**settled** 43:3,4
**sheath** 8:24
**shed** 25:18
**sheet** 8:24
**shopping** 14:23
**show** 12:13
19:14 32:25
40:10 45:15

51:13
**showing** 5:11
19:9
**showings** 25:22
**shown** 15:12
16:22
**side** 29:12 32:22
33:19 34:3
41:16 43:14
50:14 52:10
54:6
**sides** 42:8 43:15
**side's** 32:20
54:18
**significance**
12:6
**simple** 8:18 60:7
**simply** 6:23
11:16 21:19
24:23 25:12
32:9 34:18
37:1 40:1 50:5
50:23 57:24
**single** 41:15
45:15
**situation** 57:11
57:19
**six** 47:21
**skill** 5:2,17 6:24
7:1,2,6 8:3,4
11:14 13:2
17:19 22:18
25:5,24 26:9
28:25 29:9
37:5 44:22
**skilled** 37:18
**slides** 16:25
**slots** 17:6
**small** 4:25
**smaller** 30:22
**smallest** 59:24
**society** 11:13
**sole** 18:12
**Solicitor** 1:17
3:13 37:14
39:8,8,13
54:21

**solution** 8:20
**solve** 8:21 14:18
17:20 27:19
50:7
**solved** 8:22
**somebody** 32:24
37:15 46:22
49:24
**something's**
49:18
**somewhat** 21:21
**sorry** 55:25
**sort** 7:17 20:7
23:7 36:22
**sought** 7:23
28:22
**source** 8:13
**Souter** 20:6,20
21:10 60:17
**space** 32:7
**special** 12:2,5
40:16
**specific** 5:11
10:2 12:21
56:23
**specify** 35:17
47:24 48:16
**speed** 34:14
**spins** 56:9
**spreader** 13:14
13:23,23
**stand** 16:5
**standard** 6:20
13:16 37:14
42:2 46:3
51:16,17,20
52:11,15 53:3
58:11
**standards** 45:8
46:18
**standing** 33:11
57:17
**start** 10:16
28:13
**started** 60:2
**starting** 28:12
58:19

**state** 36:18
55:23
**statement** 8:12
**States** 1:1,12,19
2:7 3:13 5:5
18:8
**statute** 6:25 8:1
23:20 25:10
26:3 28:13
40:13 44:21
58:5 59:18
**statutory** 6:20
25:3,7 28:14
33:16
**step** 43:20
**steps** 6:14
**Stevens** 37:21
37:25 54:14
55:1,17
**stick** 50:25,25
51:1,4
**sticker** 34:19
**sticks** 34:19
**stopped** 59:5
**story** 14:13,14
15:7
**straight** 48:12
**strike** 46:15
**strikes** 43:12
**stronger** 30:21
**structural** 17:20
**structure** 17:2
17:19
**struggling** 16:17
**stuck** 50:23 51:4
**studies** 54:10,11
**study** 11:9
**subject** 5:3 6:19
7:2,23 8:17
11:13 13:4
28:22,23 44:22
58:4 60:4
**subjective** 59:20
**submit** 17:14
60:14
**submitted** 61:2
61:4

**subsidiary**
25:18
**successive** 14:15
**suddenly** 53:8
59:14
**suffer** 60:7
**sufficient** 25:23
**sufficiently** 22:6
22:8,12 26:1
**suggest** 9:16
11:5 26:22
30:7
**suggested** 25:11
60:22
**suggesting** 4:19
17:24 21:5
22:10
**suggestion** 5:12
6:13 9:15
18:13,24 19:11
19:15,24 20:3
22:1 24:22
25:16 29:13,16
30:16 39:17,17
39:23 40:10
41:1,9,10
43:22 44:14
52:14 57:9
**suggestions**
35:19,25 39:11
**suggests** 43:2
58:15
**summary** 3:16
21:18 47:8
**supplement**
19:8 22:10
**supplemental**
28:4
**supplemented**
22:5
**supply** 19:3
60:23
**support** 47:24
48:17 55:20
**supporting** 1:20
2:8 18:9
**suppose** 6:3

Official - Subject to Final Review

34:16 59:3,4
**supposed** 5:18
 22:8 24:13
 35:3,14 44:20
 49:13
**Supposing** 46:1
**Supreme** 1:1,12
 20:16 38:22
**sure** 4:17 12:4
 37:13 54:15
**surprise** 60:21
**surprising** 41:14
**suspended**
 16:24
**sustain** 5:6
**sustaining** 8:23
**sweep** 23:12
**sweeps** 21:7,8
**swing** 54:6
**switch** 35:6
**swoop** 4:17
**system** 44:3
 52:23 54:5,8

**T**

**T** 2:1,1
**take** 9:3 11:16
 13:22 15:5,22
 26:9 29:7,21
 30:9 31:23,24
 33:4 34:3 39:5
 47:7,18,22
 48:6 49:12
 50:21 51:19
 54:5 57:3
**taken** 6:14 20:17
 59:8
**takes** 29:12
 32:16 43:15
**talk** 25:6
**talking** 5:20,23
 7:5 8:10 15:14
 15:16,17 21:14
 30:13 35:3
**taught** 38:18
**teaches** 9:12
 11:19 30:6

**teaching** 5:12
 6:13 9:3,3,13
 9:15 18:13
 19:11 20:3
 21:25 24:22
 25:16,16 29:12
 29:16 30:17
 35:19,25 39:10
 39:17,23 40:9
 40:25 41:8,9
 43:22 44:14
 45:4 52:14
 57:9
**teachings** 5:13
**technically**
 54:23
**technologies**
 57:22
**technology**
 11:17 30:18
 60:6
**Teleflex** 1:6 3:4
**tell** 36:14 49:18
 54:14,15
**tend** 43:3
**term** 7:22 9:20
 10:2 29:1 55:2
**terms** 25:13
**test** 3:18 6:9
 7:14,18 10:24
 11:19,21 12:18
 12:18,20 16:17
 16:20 18:13,20
 19:7,17,18,20
 21:16,20,24
 22:2,13,17
 23:9,10,13,17
 23:23 24:12,22
 25:3,7,9,12
 26:3,6 28:7
 29:4 31:11,14
 36:20,22,24,25
 37:1 39:5,17
 39:23 40:10
 42:9 43:11
 44:8,11,14
 52:9 53:18

57:9
**testified** 50:5
**testimony** 52:1
**text** 28:14 37:17
**Thank** 18:4,10
 27:20,21,25
 57:1,6 60:25
 61:1
**theory** 31:21
 32:20
**thing** 16:14
 32:24 33:24
 34:7 35:9 43:4
 45:15,22 48:21
 48:25 49:3,16
 58:6
**things** 9:12
 14:21 20:13
 33:16 36:17
 38:7 39:20
 50:3 52:6
 54:17
**think** 9:2,21
 15:2 18:22
 21:1,13,24
 22:7,9,11
 23:19 28:2,6
 29:3 34:1,8,11
 34:24,25 35:5
 35:13 36:13,14
 36:21 37:3,17
 37:21 38:11
 42:21,22 43:3
 43:10,14,24
 44:13,13 45:11
 46:25 47:3
 50:22,24 53:20
 53:21 60:17,20
**thinking** 53:8
**thinks** 52:18
**third** 48:8
**THOMAS** 1:17
 1:21 2:6,10
 18:7 27:23
**thought** 7:16 9:5
 30:5 32:5
 50:25 59:14,15

**three** 31:15
 34:12 41:8
 42:2 57:2
**throttle** 16:10
 29:22 31:24
 32:17 34:5
 47:6 48:11,14
 48:17,24 49:3
 49:10 50:8
 54:22 56:12
**throttles** 35:6
**thrown** 46:4
**time** 11:15,15
 18:3 28:24
 29:9,18,20
 40:24 45:1
**times** 6:7 9:18
 9:19
**tip** 20:10
**title** 28:20
**today** 52:19 54:4
**told** 3:14
**tomorrow** 21:12
**top** 39:7 44:15
 44:19 59:13,15
**Trademark**
 3:14
**traditional** 4:11
**traditionally**
 12:25 23:15
**transforms**
 24:12,14
**treats** 5:15,18
**tribute** 60:24
**tried** 9:24 54:2
**trier** 22:8
**tries** 33:20 57:7
**trivial** 24:2
**true** 31:7 59:25
**try** 9:23 53:2
**trying** 10:13
 27:18 45:1,6
 45:14,16,17
**TSM** 53:17
**tube** 16:23,25
 17:5
**Tuesday** 1:9

**turn** 34:9,10
 35:20 56:1,2
**turns** 41:21 56:4
**two** 7:6 9:12
 13:23 14:21
 16:11 19:3
 27:1,5 30:10
 36:17 38:7,19
 40:22 46:18,20
 46:25 47:23
 49:5 50:3
 51:24 52:6,20
 54:17 60:16
**twofold** 49:11
**t's** 47:11

**U**

**ultimate** 24:9
 25:15,19 26:2
 26:3 43:21
 46:7
**ultimately** 22:21
 24:14,25 25:20
 25:25 44:20
**unable** 24:23
**unbelievable**
 57:11
**underlie** 52:24
**underlies** 44:8
**underlying** 24:9
 25:21
**understand** 9:2
 9:17,19 14:5
 18:20 21:25
 22:4 28:6 29:2
 30:9 31:6
 35:15 39:25
 44:16
**understanding**
 10:1
**understandings**
 35:24
**understood** 24:6
**undetermined**
 36:22
**undisputed** 13:1
 13:3,4

Alderson Reporting Company

Official - Subject to Final Review

unfortunate 42:19
United 1:1,12,19 2:7 3:13 5:5 18:8
unnecessarily 44:6
unpredictable 21:21
unquote 27:17
upper 34:24
urge 47:10
urged 57:10
use 14:11,17 16:9 17:5,5 28:14 35:8 38:9 45:20 49:16 50:23 51:25 54:1 55:1
uses 17:5

**V**

v 1:5
vacatur 3:16
vague 22:10
valid 15:21 17:16,25 19:6 19:11,12,23 23:16
validity 8:23 12:25 23:14 24:23 33:17 44:10
valuable 11:20
value 15:5
variety 57:21
various 42:14
vehicle 60:23
verbal 17:11 58:13
verdict 5:11
versus 3:4
vested 3:24,25
view 24:7,18
views 43:5
voila 26:12

**W**

W 1:15 2:3,13 3:7 57:4
want 10:4,4 28:2 28:13 29:10 31:11,12 33:24 35:17,20 37:11 37:12,19 43:20 44:15 45:23 47:2 51:23 52:6,16 56:19
wants 29:19
Washington 1:8 1:18,21
wasn't 33:15 34:16 53:25
way 4:11 12:13 15:11 17:1 18:24 19:1 21:11 25:17 26:19 32:18 34:5 39:23 41:17 43:1 45:4 47:7,16 50:12 53:18 56:21,22 59:4
ways 19:9 35:17 46:16
wealth 8:11
weight 27:9 36:15
We'll 3:3
we're 5:23 12:18 33:22 35:3 44:7 48:16
we've 9:10 32:20 42:11
wheels 34:9,10
whichever 48:25
Wigmore 9:6
winning 26:12
Winslow 9:8,9
Winsmore 9:7
wire 59:22,25
wires 56:14,17 58:22 59:5 60:3

word 7:7 8:13 30:2 37:22,23 40:4 46:8
worded 3:11
words 22:9 29:12,13,14 43:2
worked 49:24 59:11
world 35:7 41:8
worn 56:15,15 56:17
worse 40:11
worst 58:5
wouldn't 10:18 52:3 54:19 57:17
wrapped 8:25
wrong 18:15,17 44:11

**X**

x 1:2,7

**Y**

year 6:2 44:8 52:20 53:6
years 8:20 14:14 14:14 15:2,2 20:10,10 23:11 23:18 32:22 40:16 49:9,25 52:20
yields 5:10
yoke 16:24 17:5
York 1:15

**0**

04-1350 1:5 3:4

**1**

1 5:18 15:16,21 16:13 17:1,7 17:15 21:6 26:13
10 15:2,2 32:22
100,000 21:11
102 28:20

103 3:15 5:6,15 8:7
11:04 1:13 3:2
12 49:9
12:07 61:3
15 9:18,19
160,000 44:8
18 2:8 39:6
1851 58:19
19 30:11 35:23 39:7
1944 8:19

**2**

2 15:16 16:13 17:1,8,15 26:13
20 9:18,19 20:9 20:10 23:11,18
2006 1:9
21 28:16
25 49:24
27 2:11
28 1:9
282 4:1 33:17

**3**

3 2:4 15:16,21 16:14 17:2,8 17:15 21:6 26:14
30 40:15
300 40:17 53:22
350 59:20

**4**

4 3:12 15:17,18 17:10,11 21:7 26:17 32:4 46:23 47:5,15 47:21

**5**

54 38:5
57 2:14

**6**

60 54:23

**8**

8 47:19,20