# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Civil Action No. 3:16-md-2738-FLW-LHG |
| | MDL No. 2738 |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

**THE PLAINTIFFS' STEERING COMMITTEE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE GEOLOGY OPINIONS OF DRS. MARY POULTON AND LAURA WEBB**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES .................................................................. iii

I.    INTRODUCTION ........................................................................1

II.   ARGUMENT ...............................................................................1

   A.   Dr. Poulton's Opinions Should Be Excluded Because She Lacks The
       Relevant Qualifications and Because Her Methodology Was Flawed ...........1

     1.   Dr. Poulton has almost no practical, hands-on experience with selective
         mining procedures, nor does she have the geological training and
         expertise necessary to support her opinions ...............................................2

     2.   To the extent Dr. Poulton employed a "methodology", it was limited to
         reviewing a narrow subset of the relevant information .............................5

     3.   The 1972 Pooley report and Dr. Pooley's testimony confirms the
         presence of fibrous talc and other asbestiform fibers in the Italian talc
         samples ......................................................................................................9

   B.   Dr. Webb's Opinions Should Be Excluded Because Her Inadequate, Made-
       For-Litigation Methodology Was Designed To Reach A Specific Result....11

III.  CONCLUSION ...........................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Claar v. Burlington Northern R. Co.*,
    29 F.3d 499, 502-03 (9th Cir. 1994).............................................................14
*In re Rezulin Products Liab. Litig.*,
    309 F.Supp.2d 531, 550 (S.D.N.Y. 2004) .....................................................14

## I.     INTRODUCTION

The Plaintiffs' Steering Committee ("PSC") respectfully submits this reply memorandum in support of its motion to exclude the opinions and testimony of Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc.'s (together, "J&J") geology experts Dr. Mary Poulton and Dr. Laura Webb.[1]

These J&J experts essentially offer two opinions in this case. The first is that the mines that sourced the talc for J&J's Talcum Powder Products did not contain unsafe/carcinogenic mineral constituents and the second is that the opinions of the PSC's experts (Drs. Cook and Krekeler) on this issue are wrong. However, for J&J's experts to offer admissible opinions on the issues, they must meet the *Daubert* requisites by being qualified, having utilized a reliable methodology to reach their opinions, and their opinions must fit the case. As will be shown below, J&J's experts fail to meet the *Daubert* requirements.

## II.    ARGUMENT

### A.     Dr. Poulton's Opinions Should Be Excluded Because She Lacks The Relevant Qualifications and Because Her Methodology Was Flawed

---

[1] *The Plaintiffs' Steering Committee's Memorandum of Law in Support of its Motion to Exclude the Geology Opinions of Drs. Mary Poulton and Laura Webb* (ECF No. 9745-1), is referred to herein as "PSC Brief at __."

### 1. Dr. Poulton has almost no practical, hands-on experience with selective mining procedures, nor does she have the geological training and expertise necessary to support her <u>opinions</u>

Dr. Mary Poulton is clear on one point—she is not a geologist and she is not qualified to offer opinions about the geology of the mines that sourced the talc for J&J Talcum Powder Products.[2] Yet, she opines on whether the mining processes employed at those mines were sufficient to keep unsafe mineral constituents out of the talc ore product, and she criticizes the opinions offered by the PSC's experts Drs. Cook and Krekeler on that subject.[3]

Dr. Poulton has no practical, hands-on experience working in mines or designing mining processes and procedures. Yet, Dr. Poulton offers opinions regarding the use of selective mining and whether the mining processes employed at J&J mines were sufficient to ensure that asbestos was not included in talc ore used to manufacture Talcum Powder Products. She does so while simultaneously criticising Drs. Cook and Krekeler's opinions on the same topic.[4] However, unlike Drs. Cook and Krekeler, Dr. Poulton's knowledge on the topic is almost exclusively

---

[2] *See* March 18, 2019 Deposition of Dr. Mary Poulton ("Poulton Dep.") at 24:21-26:14 ("…but I am an engineer, not a geologist by degree."); 62:7-62:13; 63:7-63:11; 177:10-15; 181:17-182:3; 182:24-183:9, previously attached to the PSC Brief as Exhibit A.

[3] *See* February 25, 2019 Expert Report of Dr. Mary Poulton ("Poulton Report") at 16, previously attached to PSC Brief as Exhibit D.

[4] Poulton Report at 16**.**

academic. Contrary to J&J's representation that Dr. Poulton has "significant experience as a geological engineer with substantial mining experience,"[5] she has never actually worked in mines or developed mining processes, nor does she have any expertise in the techniques used to examine talc taken from talc mines.[6] The last and only time she was hired in any capacity to develop a drill program or participate in a core drill program was when she was an undergraduate student in 1984.[7] She has never been hired by a mining company to perform mineralogic exploration for purposes of economic exploitation and has never designed a mine plan for any type of mine, including a talc mine.[8] She has never designed or operated a beneficiation process nor has she studied beneficiation plants outside of her work as a professor in an academic setting.[9]

In addition to her lack of practical experience and expertise with mining, it is not appropriate for Dr. Poulton to offer opinions about whether selective mining procedures can avoid unwanted mineral constituents (asbestos, fibrous talc, heavy metals, etc.) when she does not understand the geology of the mines at issue and

---

[5] Defs. Opp. at 10.

[6] Poulton Dep. at 35:19-22.

[7] Poulton Dep. at 24:21-26:14; 36:19-39:4.

[8] Poulton Dep. at 39:7-39:23.

[9] Poulton Dep. at 73:14-73:18.

cannot account for all possible minerals that may be present there.[10] Dr. Poulton acknowledges that she is not an expert in geology, in general, or specifically in relation to the eastern part of the United States, including Vermont.[11] Yet, Dr. Poulton repeatedly criticizes Drs. Cook and Krekeler and their opinions regarding the mineralogy present in the ore bodies of the mines, the minerals associated with talc, and the regional and zone metamorphism—**all topics directly governed by geology**.[12]

J&J argues that geology has no bearing on Dr. Poulton's opinions on mining practices.[13] This is nonsensical and uninformed because mining practices such as selective mining are specifically employed based on the particular mineralogy present in a mine. Dr. Poulton's lack of expertise and ability to "select" what should be included in ore versus waste was demonstrated during her deposition when she refused to identify talc ore boundaries in a picture that *she* included in her report to illustrate the purported ease of such identification.[14]

---

[10] Selective mining involves an excavator operator scooping minerals for transport with a bucket loader. *See* PSC Brief at 26.

[11] Poulton Dep. at 24:21-26:14 ("...but I am an engineer, not a geologist by degree."); 62:7-62:13; 63:7-63:11; 177:10-15; 181:17-182:3; 182:24-183:9.

[12] Poulton Report at 6-9.

[13] Defs. Opp. at 20.

[14] Poulton Report at 25; Poulton Dep. at 331:21-336:3.

Dr. Poulton should not be permitted to offer opinions on the use of selective mining at the talc mines when she has almost no real-world experience with mining procedures, and when she has herself disavowed any expertise in the field of geology. Furthermore, she is not qualified to offer opinions on selective mining processes without an understanding of the geology, and thus the mineralogy, of the mines because mining practices are specifically designed to account for the potential minerals present.

### 2. To the extent Dr. Poulton employed a "methodology", it was limited to reviewing a narrow subset of the relevant information

Contrary to J&J's assertion, Dr. Poulton did not consider "all of the materials she needed to determine whether the opinions offered by Drs. Cook and Krekeler were consistent with their own reliance materials."[15] Dr. Poulton did not review the scientific literature pertaining to the relevant geology and she performed only an extremely limited review of the pertinent corporate documents to reach her opinions about the mines at issue in this case.[16]

---

[15] Defs. Opp. at 18.

[16] J&J concedes that Dr. Poulton is not offering opinions related to the geology of mines used to source its Talcum Powder Products. *See Defendants' Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Memorandum of Law in Opposition to Plaintiffs' Steering Committee's Motion to Exclude the Geology Opinions of Drs. Mary Poulton and Laura Webb* (ECF No. 9876) ("Defs. Opp.") at 16, 20.

For example, she reviewed only those documents *specifically cited* by Drs. Cook and Krekeler in their expert reports. These documents represent only a subset of the documents they *reviewed and considered* in forming their opinions.[17] In other words, Drs. Cook and Krekeler reviewed a large volume of documents and chose to cite certain ones in their expert reports. In contrast, Dr. Poulton reviewed only the documents that Drs. Cook and Krekeler cite and did not review more than those.

Dr. Poulton's primary task was to critique Drs. Cook and Krekeler's opinions on the mining processes used at the talc mines, specifically as they relate to 1) the likelihood that the talc ore deposits used to source the Talcum Powder Products were formed in a manner that allowed the development of asbestos, and 2) the usefulness of selective mining practices to ensure extraction of high grade talc.[18] Dr. Poulton employed no methodology of her own to address these issues, much less one that is scientifically accepted. Instead, Dr. Poulton simply offered her own alternative interpretation of the documents cited by Drs. Cook and Krekeler—she did not point to any *additional* information that 1) refutes Drs. Cook and Krekeler's opinions, or 2) strengthens her own arguments.

---

[17] PSC Brief at 21.

[18] PSC Brief at 21; *see also* Defs. Opp. at 8.

The PSC does not argue that Dr. Poulton "needed access to documents on which Cook and Krekeler *did not rely*."[19]  That is a misrepresentation of the PSC's position, which is this: if Dr. Poulton's primary task was to criticize Drs. Cook and Krekeler's opinions, she should have been given access to *every document they considered*, including complete deposition transcripts, which she was not.

There is a stark contrast between Dr. Poulton's limited review of materials and the comprehensive review undertaken by Drs. Cook and Krekeler.  For example, as Dr. Krekeler explains in his report: "To reach [my] opinions…I reviewed documents, both those produced by the defendants as well as deposition transcripts of company witnesses. I have also conducted an extensive review of peer-reviewed literature and other works, such as geologic survey documents and government agency information. Finally, I rely on my experience and methodology in both the academic and private sector in preparing my opinions."[20] Without a sufficient factual foundation to support her opinions, Dr. Poulton's opinions are methodologically unsound and not reliable.

---

[19] Defs. Opp. at 18. (emphasis supplied).

[20] Krekeler Report at 2; *see also* January 25, 2019 Deposition of Mark Krekeler Ph.D. ("Krekeler Dep.") at 29: 2-12; 324: 2-25; 325: 1-25; 326:1-16, attached hereto as **Exhibit 1**.

Furthermore, Dr. Poulton criticizes Drs. Cook and Krekeler for "improperly extrapolat[ing] mineralogy from different regions." [21] But that is not what Drs. Cook and Krekeler did. Drs. Cook and Krekeler reviewed both the relevant regional geology *and* documents specific to the mines used to source talc for J&J's Talcum Powder Products, many of which are J&J and Imerys corporate documents produced in litigation. This criticism of the PSC's experts is based solely on *ipse dixit.* In fact, Dr. Poulton's criticism more accurately applies to the  methodology employed by J&J's expert Dr. Webb in this litigation—as discussed below, it was Dr. Webb who focused almost exclusively on the broad, regional geology and ignored or minimized information relating to the specific mines.

Both Drs. Cook and Krekeler reviewed the relevant geology literature and internal documents specific to the mines used to source talc for the Talcum Powder Products.  How can Dr. Poulton reliably opine on the proper way to mine a deposit when her area of expertise is not geology or mining, she has not reviewed the relevant scientific literature and mining data about what is actually present in the mines, and had only limited information about the "specific" mines at issue?  She cannot.

---

[21] *Id.* at 5.

3.      **The 1972 Pooley report and Dr. Pooley's testimony confirms the presence of fibrous talc and other asbestiform fibers in the Italian talc samples**

Dr. Fred Pooley's 1972 report on Italian talc documents multiple fibrous talc deposits present not only along the walls of the mine, but in the talc ore itself.[22] Contrary to Dr. Poulton's assertions, the PSC is not arguing that fibrous talc is itself asbestos—rather, the PSC's position is that fibrous talc has the same carcinogenic properties as asbestos.[23] IARC classifies fibrous talc as a Group 1 known human carcinogen.[24] The Agency for Toxic Substances and Disease Registry ("ATSDR") defines asbestos as six fibrous minerals in two general classes: serpentine and amphibole.[25] "Whether a fiber is considered asbestiform is primarily dependent on its aspect ratio, or the length to width measurement of the fiber."[26] Dr. Poulton admitted at her deposition that fibrous talc was identified in the Italian talc ore that

[22] *See* Report of Italian Mine Samples (Pooley Report), previously attached to PSC Brief as Exhibit G.

[23] Krekeler Report at 14, citing IARC, 2012.

[24] *Id.*

[25] Krekeler Report at 4.

[26] *Id.*

would have been used by J&J for finished Talcum Powder Products.[27] She also admitted that some talc ore considered in the production area included fibrous talc.[28]

Further, Dr. Poulton's assertion that the actinolite and tremolite referenced in the Pooley report are non-asbestiform contradicts Dr. Pooley's testimony. In fact, Dr. Pooley testified in his deposition that he found tremolite that was asbestiform.[29] Asbestos and non-asbestiform habit minerals often occur alongside one-another, and the presence of many of these minerals documented in the Pooley report and Dr. Pooley's testimony makes it clear that asbestiform minerals were present.[30] Dr.

---

[27] Poulton Dep. at 122: 14-20: "**Q.** And so in that sample of talc ore, he identifies fibrous material true? **A.** He identifies fibrous talc. **Q.** Okay. He identifies fibrous material, true? **A.** He identifies fibrous talc;" *see also Id.* at 126:14:24 "**Q.** Fibrous -- let me strike that and start again. Dr. Pooley did report on finding fibrous material within the samples that he reported on in Exhibit 8, true? **A.** He listed fibrous talc. **Q.** So the answer to my question is yes, he did report fibrous material in Exhibit 8? **A.** So he -- he did list fibrous talc."

[28] Poulton Dep. at 130:14-24; 131:1-22: "**Q.** …certainly there were fibrous material within the -- 24 the samples, we've agreed on that, right? **A. There was fibrous talc described**. **Q.** And -- and "any non-asbestiform amphiboles identified were not located in ore typical of production." That's what you write. Yet we've identified today some talc ore that did, in fact, have tremolite, true? **A.** So we would want to look at the location of those specimens to make sure even though they said ore, that was considered in a production area. **Q.** He called them talc ore? **A.** Well, that doesn't necessarily mean that they would be in a production area. **Q.** Dr. Pooley referred to them as talc ore, true? **A.** He said ore, but that does not necessarily equate to production areas."

[29] *See* February 1, 2018 Deposition of Frederick Pooley, Ph.D. ("Pooley Dep.") at 428:10-429:11, excerpts attached hereto as **Exhibit 2.**

[30] Krekeler Report at 4.

Poulton's speculation that all of the minerals reported were non-asbestiform is not based on the record, not helpful to the jury, and should not be allowed.

In sum, Dr. Poulton's opinions should be excluded in their entirety. Dr. Poulton is unqualified to offer her opinions because of her admitted lack of expertise in geology, specifically, the geology of the eastern seaboard, including Vermont where J&J sourced talc for the Talcum Powder Products.[31] Importantly, the geology defines the mineralogy of an ore deposit, where selective mining procedures are employed. Dr. Poulton's lack of expertise paired with her failure to review the relevant literature and employ a reliable methodology renders her opinions on mining processes and selective mining unreliable.

## B. Dr. Webb's Opinions Should Be Excluded Because Her Inadequate, Made-For-Litigation Methodology Was Designed To Reach A Specific Result

Dr. Webb's methodology lacks reference to the specific mines in question. We know the identities of the *specific* mines in Italy, Vermont, and China used to source talc for J&J's Talcum Powder Products—not just the *general* regions and areas where they are located. There is evidence that asbestos and fibrous talc are present in the finished Talcum Powder Products because of Drs. Longo and Rigler's testing. And, there is substantial evidence both J&J and Imerys were aware of and

---

[31] Poulton Dep. at 177:10-177:15.

concerned about the presence of asbestos and fibrous talc at the mines used to source the Talcum Powder Products because of numerous documents they produced in this litigation and which are cited in Drs. Cook and Krekeler's reports.

Yet, in forming her opinions about whether asbestos is present at the mines, Dr. Webb took almost none of this information into account. Dr. Webb ignored large swaths of pertinent information in order to reach her conclusion that asbestos is not *likely* present at the mines used to source J&J Talcum Powder Products.[32] She limited her review to less than 20 of J&J's and Imerys's internal documents and she did not review geologic materials *specific* to the mines at issue. Unlike Drs. Cook and Krekeler, Dr. Webb focused almost exclusively on a broad review of the "regional" geology rather than documents and testing that are *specific to the mines at issue* in Vermont, Italy, and China. She excluded from consideration numerous examples in J&J's and Imerys's own documents of concerns about the presence of asbestos and fibrous talc in the mines.[33] There is no sound reason or reliable

---

[32] As discussed in more detail below, Dr. Webb's opinions are couched in vague and non-committal language—rather than saying outright that asbestos is not present, she opines that the literature and geologic principles "[do] not support" the presence of asbestos and "[do not] suggest" that asbestos should be there. The language Dr. Webb uses undermines her claim that her opinions are made with a reasonable degree of scientific *certainty*.

[33] Krekeler Report at 14-29; *see also* November 16, 2018 Expert Report of Robert B. Cook, Ph.D. ("Cook Report") at 13-26, previously attached to PSC Brief as Exhibit B.

methodology that would support her decision to exclude information specific to the actual mines in reaching her opinion.

Making her methodology even more suspect, Dr. Webb testified that she never asked J&J for additional information about the specific mines, including mine maps or samples.[34] In essence, it is as though she placed her head in the sand so as to not make herself knowledgeable about information that would undermine her opinion. Without that knowledge and foundational information, the myopic opinion that she expressed is not reliable.

Indeed, it was only by failing to review and address the substantial evidence that asbestos is present in the mines that Dr. Webb could opine it *probably* isn't there—Dr. Webb's slippery language says it all:

- The literature she reviewed "***does not support***" the assertion that there was asbestos in the mines;
- Geologic principles "***[do not] suggest that there should be***" asbestos;
- The conditions at the mines "***were not amenable*** to asbestos formation;"
- Any amphibole "***would likely be***" incidental cleavage fragments.[35]

In sum, even after a purposely narrow, limited review, Dr. Webb cannot affirmatively say that asbestos is not present at the mines. While Dr. Webb claims

---

[34] *See* March 29, 2019 Deposition of Laura Webb, Ph.D. ("Webb Dep.") at 134:18-135:3, previously attached to PSC Brief as Exhibit F.

[35] Webb Report at 1.

to express her opinions with a reasonable degree of scientific certainty, her equivocal language calls her alleged certainty into question. It is clear that Dr. Webb conformed her methodology to fit her desired conclusion, particularly when one compares Dr. Webb's typical methodology that she uses as a geologist outside of litigation to the methodology she employed in this litigation. An expert may not develop an opinion for litigation and then work backwards, "searching for support s[he] could contort to fit the preconceived theory."[36] This approach does not comport with scientific principles. "Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method."[37]

Dr. Webb's narrow review is jarring when compared to the methodology she typically employs in her work as a geologist. Her testimony makes clear that her normal process is very hands-on and takes all available, relevant information into account. As a geologist, Dr. Webb studies the histories of rocks and regions.[38] When she wants to evaluate the age of a rock, she typically employs a "field-based" approach—it is a hands-on approach where she looks at all of the available evidence, gathers samples, reviews the samples under a microscope and does radioactive

---

[36] *In re Rezulin Products Liab. Litig.*, 309 F.Supp.2d 531, 550 (S.D.N.Y. 2004) ("[A]n expert may not reach his conclusion first and do the research later.").

[37] *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994).

[38] Webb Report at 1.

testing.[39, 40] Of course, Dr. Webb may also review literature that pertains to the rocks she is studying, but her process does not stop there. To reach her litigation opinions, Dr. Webb pivoted away from her typical process. In contrast, where the pertinent question is whether asbestos is specifically present at the Val Chisone mine in Italy, the Hammondsville, Hamm, and Argonaut mines in Vermont, and the Jizhua mine in China, she ignored or minimized information specific to those mines. She only considered general information (literally, using Google Earth images and conducting "general web searches"), focusing almost exclusively on broad "regional" geology and a limited literature review.[41] Dr. Webb is someone who typically examines the object of her study under a microscope—but again in this case, she zoomed her lens out as far as possible and focused only on abstract geologic principles, maps of the general region (including some she created with Google Earth images and internet

---

[39] To be clear, the PSC is not arguing that Dr. Webb should have done radioactive testing on the rocks at the mines. Rather, the PSC argues that it is wholly unreliable for Dr. Webb to opine on the conditions at the mines without relying on the best available information—documents and testing **pertaining to those specific mines**.

[40] PSC Brief at 39.

[41] Webb Dep. at 24:11-19; 39:6-10; 40:1-7. It is ironic that Dr. Webb focused on regional geology yet Dr. Poulton criticizes Drs. Cook and Krekeler for any reliance they may have placed on scientific literature describing regional geology. *See* Poulton Rep. at 1, 7-8.

searches), and mines that were not used to source talc for J&J's Talcum Powder Products, like the Frostbite Mine.[42]

It is a fatal flaw in Dr. Webb's methodology that she failed to request or review core logs, map mines, rock samples, or other information relevant to the specific mines at issue—particularly the mines in Vermont that are no more than a few hours from her workplace.[43] Dr. Webb's testimony makes clear that her normal process takes all available, relevant information into account—but here, it is clear she ignored evidence in this case that undermines her opinions. She is offering opinions about the geology of the mines (and specifically whether it is possible for asbestos to be present there) but did not review any geological maps or data related to the mines—she did not even ask if *any existed*.[44]

Dr. Webb's explanation for her paltry review of existing evidence is unavailing—she claims any review beyond the general, regional geology is not necessary unless there are gaps or "outstanding questions" in the record.[45] But, there are glaring outstanding questions and gaps. Dr. Webb acknowledges in her report

---

[42] Webb Dep. at 39:8-10; 40:1-15.

[43] *Id.* at 130:3-8.

[44] *Id.* at 134:18-135:3.

[45] *Id.* at 30:19-32:24.

that very little is known about the geology of the Jizhua mine in China.[46] J&J's corporate representative Donald Hicks testified that although core samples were taken from the Jizhua mine in 1998, J&J does not have them.[47] When confronted with the fact that there is no peer-reviewed literature or reports on samples taken from the Argonaut mine in Vermont, Dr. Webb vaguely testified that it was sufficient for her to rely on information pertaining to the general region.[48] And contrary to J&J's argument, the PSC is not suggesting that Dr. Webb should have conducted radioactive testing on samples from the mines—it is not possible to do that testing on talc or asbestos. The point is that Dr. Webb offers opinions about the *specific* talc ore extracted from *specific* mines. However, the basis for her opinions rests on a generalized review of information, which lacks specific data regarding the relevant mines or materials, and which renders her methodology unreliable.[49]

Dr. Webb's opinions should be excluded because of her biased, limited, conclusion-driven methodology.

---

[46] Webb Report at 23 ("Little information is available in the peer-reviewed published literature on the talc deposits in the Guangxi Province in China.").

[47] *See* June 29, 2018 Deposition of Mr. Donald Hicks ("Hicks Dep.") at 369:4-370:9, excerpts attached hereto as **Exhibit 3**.

[48] Webb Dep. at 128:8-130:1.

[49] Webb Dep. at 89:22-92:2.

## III.   CONCLUSION

For these  reasons and those outlined in detail in the PSC's Brief, the opinions

of Drs. Poulton and Webb should be excluded in their entirety.

Dated: June 17, 2019                          Respectfully submitted,

/s/ *Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-783-6400
Fax: 202-416-6392
mparfitt@ashcraftlaw.com

/s/ *P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
Leigh.odell@beasleyallen.com

**Plaintiffs' Co-Lead Counsel**

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com

**Plaintiffs' Liaison Counsel**

18

**PLAINTIFFS' EXECUTIVE COMMITTEE:**

Warren T. Burns
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, TX 75201
Tel: 469-904-4551
Fax: 469-444-5002
wburns@burnscharest.com

Richard Golomb
GOLOMB & HONIK, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
rgolomb@golombhonik.com

Richard H. Meadow
THE LANIER LAW FIRM PC
6810 FM 1960 West
Houston, TX 77069
Tel: 713-659-5200
Fax: 713-659-2204
richard.meadow@lanierlawfirm.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11thFloor
New York, NY 10017
Tel: 212-397-1000
hunter@napolilaw.com

**PLAINTIFFS' STEERING COMMITTEE:**

Laurence S. Berman
LEVIN, SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
lberman@lfsblaw.com

Timothy G. Blood
BLOOD, HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619-338-1100
Fax: 619-338-1101
tblood@bholaw.com

Sindhu S. Daniel
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, #1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181
sdaniel@baronbudd.com

Jeff S. Gibson
WAGNER REESE, LLP
11939 N. Meridian St.
Carmel, IN 46032
Tel: (317) 569-0000
Fax: (317) 569-8088
jgibson@wagnerreese.com

Kristie M. Hightower
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Tel: 337-439-0707
Fax: 337-439-1029
khightower@lundylawllp.com

Victoria Maniatis
SANDERS PHILLIPS GROSSMAN, LLC
100 Garden City Plaza, Suite 500
Garden City, NJ 11530
Tel: 516-640-3913
Fax: 516-741-0128
vmaniatis@thesandersfirm.com

Eric H. Weinberg
THE WEINBERG LAW FIRM
149 Livingston Avenue
New Brunswick, NJ 08901
Tel: 732-246-7080
Fax: 732-246-1981
ehw@erichweinberg.com

Christopher V. Tisi
LEVIN PAPANTONIO
316 South Baylen St.
Pensacola, FL 32502
(850) 435-7000
ctisi@levinlaw.com

Daniel R. Lapinski
MOTLEY RICE LLC
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel: 856-667-0500
Fax: 856-667-5133
dlapinski@motleyrice.com

Carmen S. Scott
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: 843-216-9162
Fax: 843-216-9450
cscott@motleyrice.com

Richard L. Root
MORRIS BART, LLC
Pan America Life Center
601 Poydras St., 24th Fl.
New Orleans, LA 70130
Tel. 504-525-8000
Fax: 504-599-3392
rroot@morrisbart.com