# Exhibit 107

Page 1

```
            SUPERIOR COURT OF THE STATE OF CALIFORNIA
                  FOR THE COUNTY OF LOS ANGELES

     COORDINATED PROCEEDING SPECIAL )
     TITLE (RULE 3.550)             )
                                    )
     LAOSD ASBESTOS CASES            )
     _____    )       J.C.C.P. NO. 4674
                                    )
     TINA HERFORD AND DOUGLAS        )       CASE NO.
     HERFORD,                        )       BC646315
                                    )
                 PLAINTIFFS,         )
                                    )
      vs.                            )
                                    )
     AT&T CORP., A SUBSIDIARY OF    )
     AT&T INC. AND ITS SUBSIDIARY   )
     PACIFIC BELL TELEPHONE COMPANY,)
     ET AL.,                         )
                                    )
                 DEFENDANTS.         )
     _____    )

              DEPOSITION OF MICKEY E. GUNTER, Ph.D.

                 TAKEN ON BEHALF OF THE PLAINTIFFS

        AT 875 PERIMETER DR., MCCLURE HALL, ROOM 203,

                          MOSCOW, IDAHO

              SEPTEMBER 8, 2017, AT 10:09 A.M.

     REPORTED BY:
     MICHAEL S. KUPLACK
     CSR 744 (ID), CCR 2750 (WA)
     Notary Public



     Job No. 2689305
```

```
 1                A P P E A R A N C E S
 2
     FOR THE PLAINTIFFS:
 3        MOSHE MAIMON, ESQ. (telephonically)
          LEVY KONIGSBERG, LLP
 4        800 Third Avenue, 11th Floor
          New York, New York 10022
 5        212-605-6200
          mmaimon@levylaw.com
 6
 7   FOR DEFENDANT JOHNSON & JOHNSON:
          SHARLA J. FROST, ESQ. (telephonically)
 8        TUCKER ELLIS, LLP
          405 Main Street, Suite 500
 9        Houston, Texas 77002
          281.657.0730
10        sharla.frost@tuckerellis.com
11
     FOR DEFENDANTS IMERYS TALC AMERICA AND CYPRUS AMAX
12   MINERALS COMPANY:
          BLAKELEY ORANBURG, ESQ. (telephonically)
13        DENTONS US, LLP
          601 S. Figueroa Street, Ste. 2500
14        Los Angeles, California 90017
          213.243.6103
15        blakeley.oranburg@dentons.com
16
     FOR DEFENDANTS SHULTON, INC.:
17        AMY J. TALARICO, ESQ. (telephonically)
          MORGAN, LEWIS & BOCKIUS, LLP
18        One Market, Spear Street Tower
          San Francisco, California 94105
19        415.442.1227
          amy.talarico@morganlewis.com
20
21
22
23
24
25
```

Page 3

```
                      I N D E X
TESTIMONY OF MICKEY E. GUNTER, Ph.D.                      PAGE
Examination by Mr. Maimon                                    5


DEPOSITION EXHIBITS:                                      PAGE
 1   Conference Paper, "Geology of the                      41
     Italian high-quality cosmetic talc from the
     Pinerolo district (Western Alps)"
 2   Article, "Geology of the Fontane talc                  51
     mineralization (Germanasca valley, Italian
     Western Alps); attachment
 3   Peretti article, "Geology and Genesis of               53
     the Talc Deposits in the Pinerolese"

 4   Grill article, "A contribution to the study            59
     of the minerals in the Chissone Valley"
 5   Van Gosen, et al, article, "Using the                 111
     geological setting of talc deposits as an
     indicator of amphibole asbestos content"
 6   York article, "The Mineral History of                 118
     Vermont"

 7   Table 23, Chidester report, USGS                      121

 8   Engelhard Technical Service Request,                  124
     Johns-Manville 5/25/73 Report; Bates
     BASF-EMCC 00095 through 100

 9   Document, 1957, "Vermont Mines and Mineral            132
     Localities, Part I, Southern Vermont," by
     Morrill and Chaffee

10   USGS Mineral Resources On-Line Spatial Data,          137
     "Carleton quarry (Chester talc mine)(Record
     #710) occurrence of asbestos in Windsor
     cou...."
```

(Continued on next page....)

```
                                                        Page 4
 1    DEPOSITION EXHIBITS (Contd.):                       PAGE
 2
      11   Veblen and Burnham article, "New               138
 3         biopyriboles from Chester, Vermont:
           I. Descriptive mineralogy"
 4
      12   Document, "Vermont Due Diligence: Product      139
 5         Quality and Quality Control"; Bates
           CAMC-Sabatelli-000573 through 600
 6
      13   Document, "Schedule 5.16"; Bates               149
 7         CAMC-Greco-001021 through 1033
 8    14   USGS Mineral Resources On-Line Spatial Data,   154
           "Reading Talc Mine (MRDS #10081816) TLC"
 9
      15   Mindat.org document, "Reading Talc Mine,       155
10         Woodstock, Windsor Co., Vermont, USA"
11    16   Mindat.org document, "Argonaut Mine            155
           (Argonaut Talc Mine), Ludlow, Windsor Co.,
12         Vermont, USA"
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1      THE DEPOSITION OF MICKEY E. GUNTER, Ph.D.,
2  was taken on behalf of the PLAINTIFFS, on SEPTEMBER 8,
3  2017, at UNIVERSITY OF IDAHO, 875 PERIMETER DR.,
4  MCCLURE HALL, ROOM 203, MOSCOW, IDAHO, before M & M
5  Court Reporting Services, Inc., by MICHAEL S. KUPLACK,
6  Court Reporter and Notary Public within and for the
7  State of Idaho, to be used in an action pending in the
8  Superior Court of the State of California, County of
9  Los Angeles, said cause being Case No. BC646315 in said
10 Court.
11         AND THEREUPON, the following testimony was
12 adduced, to wit:
13             MICKEY E. GUNTER, Ph.D.,
14 having been first duly sworn to tell the truth, the
15 whole truth, and nothing but the truth, relating to
16 said cause, deposes and says:
17                  EXAMINATION
18 QUESTIONS BY MR. MAIMON:
19    Q.  Good morning, Dr. Gunter.
20    A.  Good morning, Moshe.
21    Q.  My name is Moshe Maimon and I'm here to depose
22 you in the Herford case on behalf of the plaintiff.
23 It's my understanding that you've been retained as an
24 expert in the Herford case.  Is that correct?
25    A.  Yes, sir.

Page 6

1    Q.   And by whom have you been retained?
2    A.   Johnson & Johnson.
3    Q.   This is a deposition that's taking place
4    telephonically.  You're at the University of Idaho in
5    Moscow, Idaho; is that correct?
6    A.   Yes, sir.
7    Q.   You're in McClure Hall, Room 203?
8    A.   That's correct.
9    Q.   And is anyone there with you aside from the
10   court reporter?
11   A.   No, sir.
12   Q.   Are you being paid for your time today?
13   A.   Yes, sir.
14   Q.   At what rate?
15   A.   $450 an hour.
16   Q.   And is that payment going to go to you
17   personally or does that go to your department at the
18   university?
19   A.   It goes to me personally.
20   Q.   Is this considered a vacation day for you?
21   A.   We don't get vacations.  I mean, I'm on a
22   nine-month contract, and academics don't get vacations
23   but we are allowed to do --
24   Q.   (Inaudible.)
25   A.   I'm sorry.

Page 160

1  A. Correct. That's what she told me.
2  Q. And --
3  A. And Samples J --
4  Q. Do you know that --
5  A. Go ahead.
6  Q. Do you know that Dr. Blount actually wrote
7  letters to both Luzenac and lawyers for Johnson &
8  Johnson referencing this article and telling them that
9  there was asbestos in Johnson & Johnson talcs?
10      DEFENDANTS' COUNSEL: Objection. Basis, no
11 foundation.
12 A. I've not seen that.
13 Q. (BY MR. MAIMON) The lawyers for Johnson &
14 Johnson didn't give you the letter that Dr. Blount
15 sent to their attorneys, telling them that, quote, "I
16 believe that Johnson & Johnson Vermont talc contains
17 trace amounts of asbestos"?
18      DEFENDANTS' COUNSEL: Objection. Form,
19 foundation.
20 A. Again, I don't recall seeing that.
21 Q. (BY MR. MAIMON) What she describes on
22 page 228 of her article with regard to Sample I would
23 be consistent with asbestos, correct?
24 A. Yes. And samples --
25 Q. (Inaudible.)

Page 161

1    A.   But samples -- Just for the record, samples J
2    through M were also from Windsor Minerals.
3    Q.   Yeah, you understand those to be the talc ore
4    from Windsor Minerals, J through M?
5    A.   That's what she told me.
6    Q.   Okay.  And have you seen any documents from
7    Johnson & Johnson which indicate where they -- you
8    know, what they were from, what runs they were from
9    and so forth?
10   A.   No.
11   Q.   Do you know which deposits among the Windsor
12   mines samples J through M came from?
13          DEFENDANTS' COUNSEL:  Objection.
14   Foundation, asked and answered.
15   A.   Well, if it was '91 -- Well, again, it would
16   have been before '91.  I read somewhere that only the
17   Hammondsville and the Argonaut Mines were cosmetic
18   purposes.  But it could have -- it could have been --
19   This could have been Italy, also, but I don't know.  I
20   know what she told me.
21   Q.   (BY MR. MAIMON)  Okay.  But you don't know,
22   within the Windsor mines, which particular mine
23   sourced samples J through M, correct?
24   A.   Correct.
25   Q.   Okay.  And so it's true, is it not, that this

Page 162

1   is a published article which shows asbestos in
2   Johnson & Johnson talc products?
3            DEFENDANTS' COUNSEL:  Objection.  Form.
4       A.   In that one particular sample.
5       Q.   (BY MR. MAIMON)  Yes?
6       A.   Yes.
7            DEFENDANTS' COUNSEL:  Same objection.
8       A.   In that one --
9       Q.   (BY MR. MAIMON)  Okay.  You also mentioned
10  earlier, one of the first things, that you have
11  Dr. Longo's report in this matter, correct?
12      A.   Yes.
13      Q.   And I'd like to know, similar to the questions
14  that I asked you about Dr. Compton's report, do you
15  have any criticism of the methodology that Dr. Longo
16  utilized as described in his expert report?
17      A.   Yes.
18      Q.   Can you tell me what your criticisms are?
19      A.   The main one is that he used -- did a heavy
20  liquid separation and he used a density of 2.85; and
21  based upon that, he then said that no anthophyllite
22  would appear in the heavy portion because iron-free
23  anthophyllite would have a density similar to 2.85.  I
24  disagree with that and -- because the density that I
25  calculated for an iron-free anthophyllite is 3.02 and

Page 163

1  another anthophyllite sample I had was 3.08.  So, my
2  biggest criticism --
3      Q.  What were those densities, 3.02 and 3.08?
4      A.  Yes.
5      Q.  Go ahead.
6      A.  My biggest criticism would be his assumption
7  that none of the anthophyllite would be in the heavy
8  portion based on the densities in anthophyllite.  And
9  also he found -- He has talc, which has a lower
10 density, in some of his data.
11         So, that would be the biggest -- sorry, the
12 biggest criticism.
13     Q.  Okay.  So, I'm talking about the -- maybe
14 something different, and I'm sorry if you didn't
15 understand.  The method that he used, I'm not talking
16 about his interpretation of the results or his
17 assumptions.  I understand that you have a -- that you
18 disagree with his assumption that iron-free
19 anthophyllite would have a density of 2.85 and
20 therefore would not be revealed as present through
21 this testing, correct?
22     A.  Yes.
23     Q.  Okay.  The testing that he says that he did is
24 testing that would show tremolite, correct?
25     A.  That's what he states, yes.

Page 164

1  Q. He bases this on the work of Dr. Blount,
2  correct?
3  A. He bases the density separation, but then not
4  the -- He uses an AHERA interpretation of a fiber and
5  not Alice's interpretation of fibers and needles.  So,
6  he uses a different interpretation of what would be
7  asbestos and what wouldn't be than Alice did.
8  Q. Okay.  So, he performed a specific analysis,
9  correct?
10  A. Yes.
11  Q. And then he got data from that analysis and he
12  interpreted it a certain way, correct?
13  A. Yes.
14  Q. And one of the interpretations that he made
15  was his counting, the way he counted the fibers or
16  particles that he included in his report, correct?
17  A. Yes.
18  Q. And then another interpretation that he made
19  was the -- where -- or what the density would be for
20  iron-free anthophyllite, correct?
21  A. Correct.
22  Q. And you disagree with both of those, correct?
23  A. They're wrong.
24  Q. The choice of the analysis, by separating the
25  heavier particles by the high density, is that, in

Page 165

1   your mind, an invalid methodology?
2       A.  No.
3       Q.  Okay.  You have a disagreement with Dr. Longo
4   as to what the density would be for iron-free
5   anthophyllite, correct?
6       A.  Correct.
7       Q.  His identification of tremolite, do you take
8   issue with that?
9       A.  Some of these could be tremolite to tremolite
10  slash actinolite based on the iron content, but
11  nothing significant, no.
12      Q.  Okay.  So, you don't take issue with his
13  identification, mineralogical identification, of the
14  tremolite, correct?
15      A.  The tremolite and actinolite, correct.
16      Q.  Okay.  I take it that you do take issue with
17  his choice to count certain particles as asbestos,
18  correct?
19      A.  Well, again, he's saying he uses Blount's
20  method, but then he doesn't use the same counting
21  criteria she did.  And he's using the AHERA air method
22  for his counting rules and not a bulk method, so....
23      Q.  So, if you take a look, he describes using the
24  Blount talc density heavy liquid preparation method,
25  correct?

Page 166

1    A.   Yes.
2    Q.   And he did that, correct?
3    A.   Yes.
4    Q.   Dr. Blount counted -- based on aspect ratios
5    and for greater than 15 to 1, she counted those as
6    fibers, and you agreed that those showed asbestos,
7    correct?
8    A.   Not necessarily.  I mean, I have seen single
9    particles of anthophyllite from the Vanderbilt
10   deposit, and other places, that could have very high
11   aspect ratios and not be -- not be from an asbestiform
12   sample.
13   Q.   I understand that you've done that in other
14   circumstances, but you agreed with me that
15   Dr. Blount's characterization of Sample I would be
16   consistent with asbestos in the sample, correct?
17   A.   It would be consistent with, again, the
18   counting criteria and those sorts of things, yes.
19   Q.   So, Dr. Longo, he used her method of sample
20   preparation by heavy liquid, correct?
21   A.   Correct.
22   Q.   And do you have any criticism of how he did
23   the preparation by the density heavy liquid method?
24   A.   No.
25   Q.   Okay.  He then identified by TEM the particles

```
 1       Q.  (BY MR. MAIMON)  Dr. Gunter, are you still
 2   there?
 3       A.  No.  Yes, yes.
 4       Q.  I've got one more question, and hopefully it's
 5   only one.  Have you ever analyzed a sample of cosmetic
 6   talc and determined that it had asbestos in it?
 7       A.  No.
 8           MR. MAIMON:  That's all I have.
 9           (The deposition concluded at 3:14 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          CERTIFICATE OF WITNESS

2

3     I, MICKEY E. GUNTER, Ph.D., being first duly

4  sworn, depose and say:

5     That I am the witness named in the foregoing

6  deposition consisting of pages 1 through 169; that I

7  have read said deposition and know the contents

8  thereof; that the questions contained therein were

9  propounded to me; and that the answers therein

10 contained are true and correct except for any changes

11 that I may have listed on the Change Sheet attached

12 hereto.

13     DATED this ____ day of _____, 2017.

14

15                       _____

16                            MICKEY E. GUNTER, Ph.D.

17

18     SUBSCRIBED AND SWORN to before me this ____

19 day of _____, 2017.

20

21                       _____

22                       NAME OF NOTARY PUBLIC

23                       NOTARY PUBLIC FOR _____

24                       RESIDING AT _____

25                       MY COMMISSION EXPIRES _____

REPORTER'S CERTIFICATE

I, MICHAEL S. KUPLACK, Certified Shorthand Reporter, do hereby certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time any witnesses were placed under oath;

That the testimony and all objections made were recorded stenographically by me and were thereafter transcribed by me or under my direction;

That the foregoing is a true and correct record of all testimony given, to the best of my ability;

That I am not a relative or employee of any attorney or of any of the parties, nor am I financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and seal September 15, 2017.

_____
MICHAEL S. KUPLACK, ID CSR NO. 744
Notary Public

My Commission Expires August 13, 2019.