# Exhibit 1

Susan Nicholson, M.D.

```
 1        IN THE UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
 2

                       - - -
 3

    IN RE JOHNSON & JOHNSON  :  MDL NO.
 4  TALCUM POWDER PRODUCTS   :  16-2738 (FLW) (LHG)
    MARKETING, SALES         :
 5  PRACTICES, AND PRODUCTS  :
    LIABILITY LITIGATION     :
 6
    THIS DOCUMENT RELATES    :
 7  TO ALL CASES             :
 8
                       - - -
 9
                  JULY 26, 2018
10
                       - - -
11

12           Videotape deposition of
13  SUSAN NICHOLSON, M.D., taken pursuant to
14  notice, was held at the law offices of
15  Blank Rome, LLP, 301 Carnegie Center, 3rd
16  Floor, Princeton, New Jersey 08540,
17  beginning at 9:37 a.m., on the above
18  date, before Amanda Dee Maslynsky-Miller,
19  a Certified Court Reporter for the State
20  of New Jersey.
21                     - - -
22        GOLKOW LITIGATION SERVICES
      877.370.3377 ph | 917.591.5672 fax
23           deps@golkow.com
24
```

Page 2

```
 1   APPEARANCES:
 2
 3       ASHCRAFT & GEREL, LLP
         BY:  MICHELLE A. PARFITT, ESQUIRE
 4       BY:  ADAM ROSEN, ESQUIRE
         4900 Seminary Road, Suite 650
 5       Alexandria, VA 22311
         (703) 931-5500
 6       MParfitt@ashcraftlaw.com
         ARosen@ashcraftlaw.com
 7       Representing the Plaintiffs'
         Steering Committee
 8
 9
10       LEVIN PAPANTONIO THOMAS MITCHELL
         RAFFERTY PROCTOR, P.A.
11       BY:  CHRISTOPHER V. TISI, ESQUIRE
         316 South Baylen Street
12       Pensacola, Florida 32502
         (850) 435-7000
13       Ctisi@levinlaw.com
         Representing the Plaintiffs'
14       Steering Committee
15
16
         LUNDY LUNDY SOILEAU & SOUTH, LLP
17       BY:  NICHOLAS J. KOHRS, ESQUIRE
         501 Broad Street
18       Lake Charles, Louisiana 70601
         (337) 439-070
19       Nkohrs@lundylawllp.com
         Representing the Plaintiffs'
20       Steering Committee
21
22
23
24
```

Page 3

```
 1   APPEARANCES:  (Continued)
 2
 3       BEASLEY, ALLEN, CROW, METHVIN,
         PORTIS & MILES, P.C.
 4       BY:  TED G. MEADOWS, ESQUIRE
         BY:  RYAN BEATTIE, ESQUIRE
 5       BY:  P. LEIGH O'DELL, ESQUIRE
         218 Commerce Street
 6       Montgomery, Alabama 36104
         (334) 269-2343
 7       Ted.meadows@beasleyallen.com
         Leigh.odell@beasleyallen.com
 8       Ryan.beattie@beasleyallen.com
         Representing the Plaintiffs'
 9       Steering Committee
10
11       GOLOMB & HONIK, P.C.
         BY:  RICHARD GOLOMB, ESQUIRE
12       1835 Market Street
         Suite 2900
13       Philadelphia, Pennsylvania 19103
         (215) 278-4449
14       Rgolomb@golombhonik.com
         Representing the Plaintiffs'
15       Steering Committee
16
17       BLANK ROME, LLP
         BY:  JAMES T. SMITH, ESQUIRE
18       BY:  REBECCA D. WARD, ESQUIRE
         One Logan Square
19       130 North 18th Street
         Philadelphia, Pennsylvania 19103
20       (215) 569-5500
         Smith-jt@blankrome.com
21       Ward@blankrome.com
         Representing the Defendant,
22       Johnson & Johnson entities
23
24
```

Page 4

```
 1   APPEARANCES:  (Continued)
 2
 3       DRINKER, BIDDLE & REATH, LLP
         BY:  SUSAN M. SHARKO, ESQUIRE
 4       600 Campus Drive
         Florham Park, New Jersey 07932
 5       (973) 549-7000
         Susan.sharko@dbr.com
 6       Representing the Defendants,
         Johnson & Johnson entities
 7
 8
 9       GORDON REES SCULLY MANSUKHANI, LLP
         BY:  MICHAEL R. KLATT, ESQUIRE
10       816 Congress Avenue
         Suite 1510
11       Austin, Texas 78701
         (512) 391-0197
12       Mklatt@grsm.com
         Representing the Defendant,
13       Imerys Talc America
14
15
         COUGHLIN DUFFY LLP
16       BY:  MARK K. SILVER, ESQUIRE
         350 Mount Kemble Avenue
17       P.O. Box 1917
         Morristown, New Jersey 07962
18       (973) 631-6045
         Msilver@coughlinduffy.com
19       Representing the Defendant,
         Imerys Talc America
20
21
22
23
24
```

Page 5

```
 1   APPEARANCES:  (Continued)
 2
 3       SEYFARTH SHAW LLP
         BY:  THOMAS T. LOCKE, ESQUIRE
 4       975 F Street, N.W.
         Washington, D.C. 20004
 5       (202) 463-2400
         Tlocke@seyfarth.com
 6       Representing the Defendant,
         PCPC
 7
 8
 9   ALSO PRESENT:
     Henry Marte, Videographer
10   Ingrid Rodriguez, Videographer
     Zac Hone, Trial Technician
11
                  - - -
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 6

```
 1                   - - -
 2             I N D E X
 3                   - - -
 4   Testimony of: SUSAN NICHOLSON, M.D.
 5
 6     By Mr. Parfitt              16
       By Mr. Tisi                 173
 7
                     - - -
 8
             E X H I B I T S
 9
                     - - -
10
11   NO.        DESCRIPTION            PAGE

12   Nicholson-1    The Plaintiffs' Steering
                    Committee's Second Amended
13                  Notice of the 30(b)(6)
                    Deposition of Defendant
14                  Johnson & Johnson     23

15   Nicholson-2    The Plaintiffs' Steering
                    Committee's Amended Notice
16                  Of the 30(b)(6) Deposition
                    Of Defendant Johnson &
17                  Johnson                23

     Nicholson-3    Curriculum Vitae, Susan C.
18                  Nicholson, M.D., F.I.D.S.A. 49
19   Nicholson-4    Handwritten Notes     95
20   Nicholson-5    JNJ 000526208         134
21   Nicholson-6    JNJ 000637879-881     144
22   Nicholson-7    FDA printout; Talc    145
23   Nicholson-8    Consumer and Personal
                    Products Spreadsheet  178
24
```

Page 7

```
 1                   - - -
 2             E X H I B I T S
 3                   - - -
 4   NO.        DESCRIPTION            PAGE
 5   Nicholson-9    JNJ 000018732-737    195
 6   Nicholson-10   JNJ 000375876-883    201
 7   Nicholson-11   IMERYS 154013-020    202
 8   Nicholson-12   Perineal Talc Use and
                    Ovarian Cancer Risk: A
 9                  Case Study of Scientific
                    Standards in Environmental
10                  Epidemiology           203
11   Nicholson-13   Interrogatory Answers 207
12   Nicholson-14   SKIPPED
13   Nicholson-15   JNJ 000389796-804    214
14   Nicholson-16   SKIPPED
15   Nicholson-17   JNJ 000379354-357    231
16   Nicholson-18   JNJ 000017587-612    235
17   Nicholson-19   IMERYS-A_0023852     244
18   Nicholson-20   JNJ 000022060-061    252
19   Nicholson-21   JNJ 000017613-627    262
20   Nicholson-22   JNJ 000377405        268
21   Nicholson-23   JNJ 000003399-400    297
22   Nicholson-24   JNJ 000014057-059    314
23   Nicholson-25   Crowell & Moring;
                    Environmental & Toxic
24                  Tort Litigation       323
```

Page 8

```
 1                   - - -
 2             E X H I B I T S
 3                   - - -
 4   NO.        DESCRIPTION            PAGE
 5   Nicholson-26   LinkedIn; Bob Glenn   325
 6   Nicholson-27   JNJ 000369193-195     329
 7   Nicholson-28   JNJNL61_000101028-029 337
 8   Nicholson-29   JNJ 000391641         350
 9   Nicholson-30   JNJ 000369203         350
10   Nicholson-31   JNJ 000375565-804     351
11   Nicholson-32   JNJ 000388207-213     365
12   Nicholson-33   MUSCAT000001187-188   373
13   Nicholson-34   IMERYS 324762-922     381
14   Nicholson-35   IMERYS 242353-362     443
15   Nicholson-36   IMERYS 242340-352     443
16   Nicholson-37   IMERYS 280060-072     444
17   Nicholson-38   IMERYS 272262-275     445
18   Nicholson-39   JNJ 000379348-349     447
19   Nicholson-40   IMERYS 241866-869     449
20   Nicholson-41   JNJ 000376096-102     454
21   Nicholson-42   IMERYS 322237-238     489
22   Nicholson-43   IMERYS 248635         501
23   Nicholson-44   JNJ 000394320-329     502
24
```

Page 9

```
 1                   - - -
 2        DEPOSITION SUPPORT INDEX
 3                   - - -
 4
 5   Direction to Witness Not to Answer
 6   Page Line    Page Line    Page Line
 7   None
 8
 9
10   Request for Production of Documents
11   Page  Line   Page Line    Page Line
12   238   3
13   434   20
14
15   Stipulations
16   Page Line    Page Line    Page Line
17    10   1
18
19
20   Question Marked
21   Page Line    Page Line    Page Line
22   None
23
24
```

Susan Nicholson, M.D.

Page 10

1          - - -
2          (It is hereby stipulated and
3    agreed by and among counsel that
4    sealing, filing and certification
5    are waived; and that all
6    objections, except as to the form
7    of the question, will be reserved
8    until the time of trial.)
9          - - -
10         VIDEO TECHNICIAN:  We are
11   now on the record.  My name is
12   Henry Marte, I'm a videographer
13   with Golkow Litigation Services.
14   Today's date is July 26th, 2018,
15   and the time is 9:37 a.m.
16         This videotape deposition is
17   being held in Princeton, New
18   Jersey, in the matter of Talcum
19   Powder Litigation.  The deponent
20   today is Susan Nicholson.
21         All appearances will be
22   noted on the stenographic record.
23   The court reporter is Amanda
24   Miller and will now administer the

Page 11

1    oath to the witness.
2          - - -
3          SUSAN NICHOLSON, M.D., after
4    having been duly sworn, was
5    examined and testified as follows:
6          - - -
7          MR. SMITH:  Good morning.
8          MS. PARFITT:  Good morning.
9          MR. SMITH:  Jim Smith on
10   behalf of J&J and J&J Consumer.
11         I just want to state a few
12   things for the record before we
13   get started.
14         First, we are producing this
15   witness pursuant to the March
16   19th, 2018, 30(b)(6) deposition
17   notice that was served by the
18   plaintiffs.
19         Two, we're producing this
20   witness pursuant to the MDL
21   protective order dated March 1,
22   2017, and we want to make clear
23   for the record that we object to
24   the definitions in the deposition

Page 12

1    notice, including, without
2    limitation, the deposition -- the
3    definition of asbestos.
4          Three, we want to make clear
5    that this witness is being offered
6    on behalf of J&J and J&J Consumer.
7          Four, it's my understanding
8    that, by agreement of counsel,
9    this deposition may also be used
10   in the Georgia case, the Bower
11   case.  And if you need me to give
12   the caption, I would be happy to
13   do it.
14         And then, finally, I just
15   want to make clear on the record
16   that Dr. Nicholson is here today
17   as the corporate representative
18   with respect to items Roman
19   Numeral II, Item 10; Roman Numeral
20   IV, Items 1, 2, 3, 4, 5, 6, 7, 8,
21   not 9, 10, 11, 12, 13, 14 and 15.
22         And with that, I thank you.
23         MS. PARFITT:  You're very
24   welcome.

Page 13

1          Mr. Smith, I would just like
2    to correct, perhaps, one thing you
3    stated.
4          My understanding is that Dr.
5    Nicholson is here as well to give
6    testimony on the area of 1.1, as
7    it pertains to the warnings area
8    with regard to the product and
9    labels.
10         MS. SHARKO:  That was
11   resolved by giving you a chart, I
12   believe.
13         MS. PARFITT:  No.  I think
14   that was with regard to the actual
15   products but not necessarily the
16   accessory components, such as
17   labels and things like that.  So
18   we will be talking to the doctor
19   with regard to that as well.
20         Most of those areas were
21   indeed addressed, but there was
22   remaining an area pertaining to
23   specifically the warning area.
24         MS. SHARKO:  That's not my

Susan Nicholson, M.D.

Page 14

1  recollection or understanding.  I
2  will look at Pisano's opinion and
3  my notes, and I assume it won't
4  impede going forward --
5      MS. PARFITT:  No, I can
6  move forward --
7      MR. TISI:  Susan, excuse me,
8  I believe following the resolution
9  by the judge, you offered this
10 witness for that category, absent
11 -- you should go back and take a
12 look at your proffer of this
13 witness as well.
14     MS. SHARKO:  All right.  If
15 you have something, why don't you
16 send it to me?
17     MR. TISI:  I'll do that.
18 I'm happy to do that.
19     MS. SHARKO:  Okay.
20     MR. TISI:  I'll do it.
21     MR. SMITH:  So can we agree,
22 because there's obviously some
23 confusion about this, that that
24 subject matter we'll talk about

Page 15

1  off the record, and then we'll put
2  on the record whatever we need to
3  put on the record.
4      But for now, the witness is
5  not going to be asked questions
6  about Roman Numeral I, Item Number
7  1.
8      MS. PARFITT:  Well, I think
9  what we can agree to is that we'll
10 look at the order and make sure we
11 all have the same understanding,
12 and I can certainly come back to
13 it.
14     MR. SMITH:  Perfect.
15     MS. PARFITT:  All right.
16 We're good.
17     MR. MEADOWS:  You made
18 reference to the Georgia case.
19     MR. SMITH:  Yes.
20     MR. MEADOWS:  And I assume
21 you're referring to the Brower
22 case.  And I am not aware of any
23 cross-notice that was filed in the
24 Brower case with respect to this

Page 16

1  deposition.
2      So for the record, to the
3  extent I need to object at this
4  point, I'm objecting.
5      MR. SMITH:  Thank you, Mr.
6  Meadows.
7      I was told that, by
8  agreement of counsel, the
9  deposition could be used.  But why
10 don't we look into it on a break,
11 and we'll see if we can work it
12 out.  Fair enough?
13     But your objection is noted.
14     MR. MEADOWS:  Thank you.
15     MS. PARFITT:  I think with
16 that we can begin.
17         - - -
18     EXAMINATION
19         - - -
20 BY MS. PARFITT:
21  Q.  Good morning, Dr. Nicholson.
22  A.  Good morning.
23  Q.  We previously introduced
24 ourselves, but again my name is Michelle

Page 17

1 Parfitt.  We'll be spending some time
2 today, as well as some of my colleagues,
3 and some -- a few preparatory remarks, if
4 I may.
5      This is not your first
6 deposition, correct?
7  A.  It is, actually.
8  Q.  It is your first deposition.
9 All right.  Very good.
10     Well, then, we will talk
11 then a bit about some of the rules that
12 might apply to it.
13     But before that, for the
14 ladies and gentlemen of the jury, you are
15 a medical doctor, correct?
16  A.  I am.  That's correct.
17  Q.  And your current employer is
18 Johnson & Johnson; is that correct?
19  A.  That's correct.
20  Q.  Do your paychecks read
21 Johnson & Johnson or Johnson & Johnson
22 CI?
23  A.  That's a good question.  I
24 haven't looked at them very closely.

Susan Nicholson, M.D.

Page 18

1  Q. From your C.V. that you were
2  kind enough to provide us, I understand
3  you've been with Johnson & Johnson since
4  about 2006; is that correct?
5  A. That's correct. May of
6  2006.
7  Q. Dr. Nicholson, this
8  deposition is being taken pursuant to
9  Special Master Pisano's order of February
10 6th, 2018, wherein he provided that we
11 were able to take permissible topics
12 described in the order that your counsel
13 has just discussed.
14       We reserve the right to
15 follow-up on any and all of those topics,
16 including inquiry of any individuals that
17 you may identify in response to those
18 various topics. You have, indeed, been
19 designated to these matters. And in one
20 moment I'll be showing you the amended
21 notice of deposition.
22       To the extent you are
23 unprepared, not competent -- I mean those
24 in very professional ways -- to answer

Page 19

1  any of the questions, what I would ask
2  you to do is to advise me of that point,
3  that these are areas or these are
4  substantive questions for which you just
5  do not feel competent or do not feel
6  prepared to answer the question, so that
7  I can take appropriate action.
8       Do we have that
9  understanding?
10 A. Yes.
11 Q. I also reserve the right, as
12 Judge Pisano has permitted, to request a
13 supplemental deposition in the event that
14 many of the matters that we hope to
15 discuss today need to be addressed by
16 someone else.
17       At this point, what I'd like
18 to do is mark your notice of deposition.
19 And this is entitled, Plaintiffs'
20 Steering Committee Second Amended Notice
21 of Deposition, 30(b)(6), of Defendant
22 Johnson & Johnson.
23       MR. SMITH: Counsel, is this
24    the notice dated March 19, 2018?

Page 20

1       MS. PARFITT: It is dated
2  June 22nd. I believe that's the
3  amended. There was an original
4  notice of deposition and then
5  there was an amended notice of
6  deposition.
7       MR. SMITH: So I want to
8  make sure that -- as I appreciate
9  it, there are differences between
10 the two notices. And I don't want
11 there to be any confusion on the
12 record.
13      MS. PARFITT: Correct.
14      MR. SMITH: We're producing
15 the witness pursuant to the March
16 19, 2018 notice. And if we can
17 put that notice before the
18 witness, I would be grateful.
19      MS. PARFITT: Well, my
20 understanding is the amended
21 notice of deposition is the one
22 that we would be operating under,
23 Mr. Smith. It was subsequently
24 filed and agreed upon by the

Page 21

1  parties.
2       Let me check the date for
3  you.
4       MR. SMITH: Okay.
5       MS. SHARKO: So, Michelle, I
6  can clear this up. After Judge
7  Pisano ruled, the plaintiffs went
8  back and rewrote the deposition
9  notice and added a lot of things
10 in. We took the position that
11 that was a nullity, that we're
12 operating under the original
13 notice. And we don't agree with
14 your editorial comments and your
15 things in that notice.
16      And I think we just agree to
17 disagree. So that's -- that's
18 where that dispute landed.
19      I don't think there's a
20 dispute as to the wording of the
21 topics as modified by the judge.
22 It's more over the form and the
23 additions and things you wrote in
24 the June notice.

Susan Nicholson, M.D.

Page 22

1       So our position is we're
2   doing March.  I understand your
3   position is we're doing June.  And
4   I don't know that --
5       MS. PARFITT:  Correct.  And
6   I'm not sure --
7       MS. SHARKO:  -- it should
8   impede the deposition.
9       MS. PARFITT:  Thank you,
10  Susan, I appreciate that.
11      But you are correct, I am
12  proceeding as though we were
13  moving forward under the second
14  notice of deposition.  And that is
15  the one that I have prepared to
16  mark.
17      I do not even have a copy of
18  the original notice of deposition.
19      Jim, if you have that, we
20  can mark both --
21      MR. SMITH:  We do.
22      MS. PARFITT:  -- if you'd
23  like.
24      MR. SMITH:  Yes.

Page 23

1       MS. PARFITT:  Very good.
2   But we will be proceeding, for
3   purposes of the day, at least the
4   plaintiffs, me, who is taking your
5   deposition, pursuant to the second
6   amended.
7       And, Susan, I understand
8   your comments and your objection.
9       So what we'll do is have the
10  first, the original notice of
11  30(b)(6) deposition also marked,
12  and that would be Exhibit-2.
13          - - -
14      (Whereupon, Exhibit
15  Nicholson-1, The Plaintiffs'
16  Steering Committee's Second
17  Amended Notice of the 30(b)(6)
18  Deposition of Defendant
19  Johnson & Johnson, was marked for
20  identification.)
21          - - -
22      (Whereupon, Exhibit
23  Nicholson-2, The Plaintiffs'
24  Steering Committee's Amended

Page 24

1   Notice of the 30(b)(6) Deposition
2   of Defendant Johnson & Johnson,
3   was marked for identification.)
4           - - -
5   BY MS. PARFITT:
6       Q.   If I may, Dr. Nicholson,
7   I'll reach over here and hand you a copy
8   of what's been marked as Exhibit-1.  And
9   that's the Nicholson notice of -- excuse
10  me, the 30(b)(6) notice of deposition.
11      Dr. Nicholson, if I may, let
12  me hand you what's been marked as Exhibit
13  Number 2.  And that is the plaintiffs'
14  steering committee amended notice of
15  deposition.
16      MR. SMITH:  And just for the
17      record, this is the notice, "this"
18      being Exhibit Number 2, for
19      defendant Johnson & Johnson.  And
20      Exhibit Number 1 is for defendant
21      Johnson & Johnson.  I think there
22      were separate notices --
23      MS. PARFITT:  There were.
24      MR. SMITH:  -- for consumer.

Page 25

1       I don't know that we need to
2       mark them.  But if you think we
3       do, I just wanted to point that
4       out for the record.
5       MS. PARFITT:  Well, that was
6       one of the next questions.
7   BY MS. PARFITT:
8       Q.   Dr. Nicholson, you are
9   appearing today on behalf of Johnson &
10  Johnson and Johnson & Johnson CI; is that
11  correct?
12      A.   That is correct.
13      Q.   All right.  If at any point
14  in time in responding to my questions
15  your response is not relevant to one or
16  the other, I need you to tell me that.
17      Do we have that
18  understanding?
19      MR. SMITH:  Objection.
20      I don't have that
21      understanding.  I think if the
22      witness can do it, but I don't
23      want to impose a burden upon her,
24      a continuing burden to decide

Page 26

1 what's relevant and what's not.
2     Obviously, if there are
3 things that come to mind that
4 wouldn't apply to one, she'll do
5 her best to tell you. But I
6 don't -- well, enough said.
7     MS. PARFITT: Understood.
8 BY MS. PARFITT:
9   Q.  I know you'll do the best
10 you can. And I don't expect that will
11 happen often, Dr. Nicholson, but if there
12 is a situation, I would just like you to
13 alert me to that.
14     The other thing is, is you
15 understand that your testimony here today
16 as a 30(b)(6) witness is binding upon
17 both corporations, Johnson & Johnson and
18 Johnson & Johnson CI; is that correct?
19   A.  That is correct.
20   Q.  Now, I understand from your
21 counsel you have previously been provided
22 these notices of deposition, correct?
23   A.  Not these two. But the
24 March notice of deposition, yes, I have.

Page 27

1   Q.  All right. And you've had
2 an opportunity to read through the
3 document so that you have an
4 understanding as to the areas of
5 testimony that your counsel previously
6 identified; is that correct?
7   A.  That's correct.
8   Q.  And you are here today
9 prepared to talk about those areas of
10 deposition -- areas of inquiry; is that
11 correct?
12   A.  That is correct.
13     MR. SILVER: Michelle, one
14 question for the record. I think
15 it's part of the rules, but agree
16 that an objection for one is
17 objection for all?
18     MS. PARFITT: Yes, indeed.
19 You're very welcome.
20 BY MS. PARFITT:
21   Q.  As we move through today and
22 tomorrow, Dr. Nicholson, we will be
23 talking about these various areas. And
24 we'll try to make it as orderly as we

Page 28

1 can, but I must share with you that we'll
2 probably, and the ladies and gentlemen of
3 the jury, be jumping around a little bit
4 because there is a certain amount of
5 overlap.
6     Do you understand that?
7   A.  I do. I'll do my best to
8 follow.
9   Q.  Is there any reason that you
10 are not prepared to move forward today?
11   A.  Not that I'm aware of, no.
12   Q.  Can we agree on certain
13 definitions? One being when I say or you
14 say "Johnson & Johnson," we're talking
15 about Johnson & Johnson and Johnson &
16 Johnson CI, unless you tell me otherwise?
17   A.  That's fine.
18   Q.  That will shorten things a
19 bit.
20   A.  Okay. That's fine.
21   Q.  Can we also agree that when
22 I say "talcum powder products," we're
23 talking about Johnson & Johnson's talcum
24 baby powder and we're talking about

Page 29

1 Johnson & Johnson's Shower to Shower; is
2 that agreed?
3   A.  Yes. That's fair.
4   Q.  And when we talk about
5 "Imerys," can we agree, if I say "Imerys"
6 or "Luzenac," can we agree that they are
7 fairly interchangeable?
8   A.  Yes.
9   Q.  I understand different
10 corporations.
11     Likewise, with Rio Tinto?
12   A.  Yes.
13   Q.  And, again, you'll clarify
14 for me in the event that there needs to
15 be a clarification, right?
16   A.  Yes.
17   Q.  All right. I learned today
18 that this is the first time you've
19 actually been deposed?
20   A.  That's correct.
21   Q.  So on other occasions where
22 you've had the opportunity to give
23 testimony, they have been in trial; is
24 that correct --

Susan Nicholson, M.D.

Page 30

1    A.   That is correct.
2    Q.   -- relevant to the Johnson &
3 Johnson baby powder?
4    A.   That's correct.
5    Q.   All right.  Would I be
6 correct that you have testified three
7 times on behalf of Johnson & Johnson in
8 trial?
9    A.   Yes, that is correct.
10   Q.   Would that be the Ingham
11 case being one?
12   A.   I believe so.
13   Q.   In St. Louis?
14   A.   Yes.
15   Q.   All right.  And the Daniels
16 case --
17   A.   Correct.
18   Q.   -- in St. Louis?
19        And I believe we have a
20 Gianna Keany?  And I may not pronounce --
21   A.   Gianna Keany I think is the
22 name.
23   Q.   Thank you very much, yes.
24        And that would be the third?

Page 31

1    A.   That's correct.
2    Q.   Have you provided trial
3 testimony relevant to the issues that
4 we're talking about today in any other
5 forum other than those trial courts?
6    A.   No, I have not.
7    Q.   Have you ever been asked to
8 testify, prior to today, as a 30(b)(6)
9 witness on behalf of the corporations J&J
10 and J&J CI?
11   A.   I don't believe I have.  But
12 I'm not always clear on what the legal
13 designation I have in the courtroom.
14   Q.   Is it possible that you have
15 been designated as not only an expert
16 witness but also a corporate rep in some
17 of those trials?
18   A.   Yes, that is possible.
19   Q.   Have you gone and appeared
20 at any trials where you have not given
21 testimony but you have been there in the
22 capacity as a corporate representative of
23 the company?
24   A.   In one trial I was in the

Page 32

1 courtroom with the intention to appear as
2 a witness, but that trial was dismissed
3 as a mistrial before I actually
4 testified.
5    Q.   All right.  Very good.
6         You have previously
7 testified, Dr. Nicholson, that Johnson &
8 Johnson is a healthcare company; is that
9 correct?
10   A.   That is correct.
11   Q.   That's what Johnson &
12 Johnson does; is that correct?
13   A.   That's correct.
14   Q.   And one of your interests
15 has been women's health issues; is that
16 also correct?
17   A.   That is correct.
18   Q.   And you have gone on record
19 saying that J&J is ahead of the pack in
20 promoting health, wellness and leadership
21 of women; is that correct?
22   A.   I don't recall using "ahead
23 of the pack" as a terminology, but
24 certainly it is a commitment that we

Page 33

1 have, yes.
2    Q.   If I represented to you
3 that -- most recently you had an
4 opportunity to testify in the Ingham
5 case?
6    A.   Yes.
7    Q.   I think that was as recent
8 as back in June of 2018.
9         So those words at least seem
10 familiar, "ahead of the pack"?
11   A.   I don't recall using that
12 terminology.  I may have, but I don't
13 recall using that terminology.
14   Q.   It wouldn't be improper or
15 something you wouldn't want to say, that
16 J&J is ahead of the pack; is that
17 correct?  Would that be an accurate
18 statement?
19   A.   Well, it would depend on the
20 area.  Generally, I do think that we are
21 ahead of the pack in certain areas, but I
22 would not say in every area.
23   Q.   Fair enough.
24   A.   So I would qualify that.

Susan Nicholson, M.D.

Page 34

1  Q. Where would you say that J&J
2 is ahead of the pack, in what healthcare
3 areas?
4  A. When it comes to maternal
5 health and maternal/baby bonding and the
6 science around bonding between mother and
7 newborn, J&J has certainly been a leader
8 in studying that area and publishing in
9 that area.
10  Q. Fair enough. Thank you.
11  Now, your job for Johnson &
12 Johnson has been, for many years, to
13 accept responsibility on behalf of the
14 corporation for the safety of its
15 products; is that correct?
16  A. I wouldn't term it exactly
17 like that. My job has been to oversee
18 the safety of products. I think that it
19 is not possible to guarantee the
20 performance of any given product, due to
21 the variety of ways those products are
22 used.
23  But, certainly, I've
24 committed myself to the responsibility of

Page 35

1 the oversight of the safety of products.
2  Q. And that includes Johnson &
3 Johnson talcum powder -- or, excuse me,
4 baby powder and Shower to Shower?
5  A. That's correct.
6  MR. SMITH: Counsel, let me
7  just note for the record while
8  there's no question pending.
9  MS. PARFITT: Of course.
10  MR. SMITH: Can I have an
11  agreement that I have just a
12  continuing objection to this as
13  beyond the scope to 30(b)(6)?
14  MS. PARFITT: Sure.
15  MR. SMITH: I have no
16  objection to you asking background
17  questions, I think it's fair.
18  But, obviously, some of these
19  questions, I just want to make
20  sure the record is clear, are not
21  30(b)(6) issues.
22  MS. PARFITT: I will accept
23  your --
24  MR. SMITH: Thank you.

Page 36

1  MS. PARFITT: -- reservation.
2  Not that I agree with you, but I
3  accept it and we'll move forward.
4  And this is, indeed, some
5  background.
6 BY MS. PARFITT:
7  Q. Today you're going to be
8 talking about talc -- Johnson & Johnson's
9 baby powder and its -- the safety of that
10 product; is that correct? That's an area
11 you're going to talk about?
12  A. That's correct.
13  Q. You're also going to be
14 talking about issues related to the
15 purity of the Johnson & Johnson's baby
16 powders, correct?
17  A. That is covered in some of
18 the topics, yes.
19  Q. And you will also be talking
20 today about whether or not your talcum
21 powder products contain asbestos; is that
22 correct?
23  A. I don't believe that is
24 actually part of the topics that I'm

Page 37

1 covering.
2  Q. Well, if your products
3 contain asbestos, would you agree with me
4 that that impacts the safety of the
5 product?
6  A. Absolutely, yes.
7  Q. Would you agree that Johnson
8 & Johnson has a zero tolerance policy
9 with regard to having asbestos in their
10 talcum powder products?
11  A. That is correct.
12  Q. In fact, as a representative
13 of the company, it's your position that
14 your Johnson & Johnson's talcum powder
15 products should not contain asbestos; is
16 that correct?
17  A. That is correct.
18  Q. And you would agree with me
19 that if your talcum powder products had
20 asbestos in them, it would place the
21 consumers that use your product in
22 needless danger, correct?
23  A. It could, yes.
24  Q. Now, you are also going to

Page 38

1 be testifying in your capacity or former
2 capacity as a risk assessor; is that
3 correct?
4  A. I'm here representing the
5 corporation. I'm not here as an expert,
6 per se.
7  Q. And I'm glad you clarified.
8     As the corporate
9 representative, what you bring is your
10 role previously with Johnson & Johnson in
11 the area of risk management; is that
12 fair?
13  A. Fair enough.
14  Q. That's a job that you held?
15  A. Absolutely.
16  Q. And I believe, Dr.
17 Nicholson, that you had -- up until about
18 2015, you were vice president of -- I
19 have it here -- safety surveillance and
20 risk management?
21  A. Actually, up until May of
22 2018.
23  Q. Thank you.
24  A. Yes, I was vice president of

Page 39

1 safety surveillance and risk management
2 in the consumer division of Johnson &
3 Johnson.
4  Q. And in your role of vice
5 president of safety surveillance and risk
6 management, is it fair to say that job
7 requires you to balance risks of a
8 product with the benefits of a product?
9 Is that fair?
10  A. That's correct.
11  Q. And the reason a company
12 like Johnson & Johnson needs someone like
13 you in that position is so -- is to
14 ensure a safe passage for their products;
15 is that correct?
16  A. "Safe passage" is an
17 interesting term. If I could rephrase.
18     The job is to ensure that
19 the benefits outweigh the risks and that
20 those products can be used safely and
21 appropriately by whomever the end user
22 is, whether it's a physician, a hospital,
23 nurse or a consumer. So that is correct.
24  Q. All right. So in light of

Page 40

1 that experience that you bring to bear as
2 a corporate rep for the company, would
3 you agree that when there's more than one
4 way to achieve the same level of benefit
5 and safety, one should select, as a
6 manufacturer, as a supplier, a method or
7 pathway that puts a consumer in the least
8 amount of risk, fair?
9  A. I don't know what you mean
10 by "more than one way," if that refers to
11 a procedure or a --
12  Q. Let me give you an example.
13  A. -- consumer use.
14     Thank you.
15  Q. Let me give you an example.
16 Sure.
17     If we were sitting here
18 today and I were to offer you a piece of
19 candy that was a mint, and then I was to
20 offer you something that's toxic, and
21 they both were foods, the better choice
22 would be to go with that which is safer,
23 fair?
24     MR. SMITH: I just want to

Page 41

1    object again and make sure we're
2    clear that these are outside the
3    scope.
4     MS. PARFITT: Sure.
5    Understood.
6 BY MS. PARFITT:
7  Q. Fair?
8  A. Well, if you were offering
9 me poison versus a mint, I would most
10 certainly choose the mint.
11     But it's sort of -- it's a
12 difficult analogy, when you're talking
13 about healthcare products because I do
14 think that in some instances we do accept
15 some risk for benefit, you know, broadly
16 speaking.
17     So I think each individual
18 case is analyzed on its own merit and the
19 conditions of use. So it -- and that's
20 why we have so many professionals focused
21 in this area.
22  Q. Sure.
23  A. Because it's never so super
24 straightforward.

Page 42

1  Q. Assuming all things equal,
2  both have the same benefit; two products,
3  same benefit. One has a higher risk or
4  hazard profile.
5     Which one would you
6  recommend, on behalf of the company, that
7  one of your consumers use?
8  A. Well, obviously, the safer
9  product.
10 Q. Now, it's fair to say that
11 during the course of today, as a 30(b)(6)
12 witness, you're also going to be
13 testifying on behalf of your companies
14 with regard to whether or not baby powder
15 poses a hazard to women -- to consumer
16 health, fair?
17 A. Fair enough.
18 Q. And I believe you have
19 previously testified that talc does not
20 cause -- or talcum powder products
21 manufactured by Johnson & Johnson do not
22 cause ovarian cancer.
23    That's your position,
24 correct?

Page 43

1  A. That's correct. That's what
2  the data shows.
3  Q. Is it fair to say, for the
4  purposes of the ladies and gentlemen of
5  the jury that will be hearing this, that
6  it is the position of Johnson & Johnson
7  that talcum powder products manufactured
8  by Johnson & Johnson and Johnson &
9  Johnson CI do not cause ovarian cancer?
10 A. That's correct.
11 Q. That's the position the
12 company is taking?
13 A. The company position is that
14 those products do not cause cancer,
15 correct.
16 Q. And the date today is the
17 26th of July 2018, and the company is
18 still maintaining that position, fair?
19 A. That's correct.
20 Q. Now, in the most recent case
21 where you've given testimony, the Ingham
22 case, you were hired by J&J -- or, excuse
23 me, you were testifying for J&J and JJCI,
24 correct?

Page 44

1  A. That's correct.
2  Q. Did any of the other
3  defendants, Imerys or PCPC, also have you
4  as an expert testifying in that case, or
5  was it limited to J&J and JJCI?
6  A. I was not actually
7  testifying as an expert in that case. I
8  was a fact witness.
9     And I was testifying on
10 behalf of Johnson & Johnson.
11 Q. So you were neither an
12 expert witness nor a corporate
13 representative, you were testifying as a
14 factual witness in the Ingham matter?
15 A. In that case, yes, that's
16 correct.
17 Q. In the Daniels case, were
18 you testifying as an expert witness,
19 corporate representative or factual
20 witness?
21 A. I know for sure I was an
22 expert witness.
23    And back to the question you
24 asked me earlier, I'm not sure if I was

Page 45

1  officially a corporate witness. I think
2  I may have been, but I'm not 100 percent
3  sure on that.
4  Q. Same response to Gianna
5  Keany?
6  A. Gianna Keany.
7  Q. Gianna Keany.
8  A. It's a tough name.
9  Q. Thank you. I should do
10 better, though. That's important to the
11 individual.
12 A. Fair.
13    So I was a medical expert in
14 that case.
15 Q. In the Ingham case, is it
16 fair to say that you testified that
17 talcum powder products did not cause
18 ovarian cancer?
19 A. That's correct.
20 Q. Your company's product,
21 correct?
22 A. Any talcum powder use does
23 not cause ovarian cancer.
24 Q. Is it fair to say that the

Susan Nicholson, M.D.

Page 46

1  jury did not, our peers, did not agree
2  with that testimony of Johnson & Johnson
3  that talcum powder products does not
4  cause ovarian cancer?  Is that fair?
5          MR. SMITH:  Objection.
6          THE WITNESS:  So the jury
7      did rule against that -- Johnson &
8      Johnson in that case, that's
9      correct.
10 BY MS. PARFITT:
11     Q.   Did you sit through the
12 whole trial?
13     A.   I did not.
14     Q.   Is it fair to say that the
15 jury in the Ingham case also disagreed
16 with the corporate position of Johnson &
17 Johnson that talcum powder products are
18 safe --
19     A.   They did rule --
20     Q.   -- when used in the perineal
21 area?
22     A.   Can you restate the
23 question?
24     Q.   I absolutely can.

Page 47

1          Is it fair to say -- excuse
2  me.  Let me just say that.
3          Is it fair to say that the
4  jury in the Ingham case did not agree
5  with the corporate position of Johnson &
6  Johnson that talcum powder products are
7  safe?
8      A.   I'm not sure that was the
9  exact wording in the ruling.  But they
10 did, again, rule against Johnson &
11 Johnson in that case.
12     Q.   And safety of talcum powder
13 products was at issue in that trial,
14 correct?
15     A.   It was.  But I do know that
16 there was also a question about warning
17 and whether there should be a warning or
18 not.
19          So the exact language of the
20 ruling, I'm not intimately familiar with.
21     Q.   But you would agree with me
22 that overall, in finding for the
23 plaintiff, they found that the product
24 was not safe?

Page 48

1      A.   I would agree that it's
2  likely that that was their opinion.
3      Q.   Now, that Ingham case also
4  involved the issue of asbestos, correct?
5      A.   It did.
6      Q.   Asbestos in the product?
7          Is it fair to say that the
8  jury did not agree with the position of
9  Johnson & Johnson, that there's no
10 evidence that Johnson & Johnson baby
11 powder has ever had asbestos in it; is
12 that fair?
13     A.   Yes, that is fair.
14     Q.   You would agree, Dr.
15 Nicholson, if Johnson & Johnson baby
16 powder indeed had asbestos in it, it
17 would be imprudent and not reasonable for
18 Johnson & Johnson to sell it to its
19 consumers?
20     A.   I would agree with that.
21     Q.   Because that would put
22 customers and consumers at unnecessary
23 risk, correct?
24     A.   It potentially could put

Page 49

1  people at unnecessary risk, yes.
2      Q.   That would just be wrong,
3  correct?
4          MR. SMITH:  Objection.
5          You can answer.
6          THE WITNESS:  Thank you.
7      I would not support Johnson
8      & Johnson selling a product that
9      contained asbestos.
10 BY MS. PARFITT:
11     Q.   Because it would be wrong,
12 correct?
13     A.   It would -- from my point of
14 view, yes, it would be wrong.
15         MS. PARFITT:  Let me mark,
16     if I may, your curriculum vitae,
17     which you were kind enough to
18     provide us.  And we will make that
19     Exhibit Number 3.
20              - - -
21         (Whereupon, Exhibit
22     Nicholson-3, Curriculum Vitae,
23     Susan C. Nicholson, M.D.,
24     F.I.D.S.A., was marked for