

Montgomery
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

Atlanta
4200 Northside Parkway
Building One, Suite 100
Atlanta, GA 30327

(800) 898-2034

BeasleyAllen.com

**P. Leigh O'Dell**
leigh.odell@beasleyallen.com

July 3, 2019

**VIA ECF AND FEDERAL EXPRESS**

Hon. Freda L. Wolfson, Chief Judge
United States District Court
District of New Jersey
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

> Re:  *In Re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation* (MDL No. 2738)

> **THE PLAINTIFFS' STEERING COMMITTEE'S EXPEDITED MOTION TO COMPEL J&J TO PRODUCE THE BLOUNT REPORT FOR *IN CAMERA* INSPECTION BY THE COURT IN ADVANCE OF THE UPCOMING *DAUBERT* HEARING**

Dear Judge Wolfson:

At the MDL Status Conference held before Your Honor on June 27, 2019, the Plaintiffs' Steering Committee ("PSC") brought to the Court's attention their request that Johnson & Johnson and Johnson & Johnson Consumer, Inc. (collectively "J&J") produce what is referred to below as the "Blount Report." Please allow this letter to serve as an expedited motion to compel J&J to produce for *in camera* review the Blount Report. The parties participated in a telephonic meet-and-confer on July 1, 2019 regarding the issue and have been unable to resolve this dispute.

## I. THE BLOUNT REPORT AND ITS IMPORTANCE TO THE UPCOMING *DAUBERT* HEARING

Dr. Alice Blount is a former Professor of Geology at Rutgers University who was a consulting expert to J&J in the 1990s. The Blount Report was one (1) of three (3) attachments to a letter from Dr. Blount to J&J's lawyers dated April 23, 1998. J&J has produced the other two attachments to the April 23 letter – Dr. Blount's 1990 and 1991 papers – but has not produced the third attachment, the Blount Report. The Blount Report is a 16-page document listed on J&J's Privilege Log, beginning with Bates No. JNJNL61_000052428.

As set forth below, the Blount Report is an important piece of evidence that directly relates to the *Daubert* issues now before the Court. As part of the basis of his work in this case, the PSC's expert, Dr. William Longo, relies in part upon certain aspects of Dr. Blount's published work, including documents J&J has produced relating to Dr. Blount and that work. However, J&J has recently suggested both in mesothelioma talc trials and in its *Daubert* briefing before this Court that Dr. Longo is mistaken about Dr. Blount finding asbestos in Johnson's Baby Powder.[1] In light of the existence of the Blount Report, a document solely in J&J's possession that contradicts representations made by J&J to the Court in *Daubert* briefing, the PSC requests that the Court require J&J to produce the Blount Report for *in camera* review prior to Dr. Longo's upcoming *Daubert* testimony.

## II. FACTUAL BACKGROUND

### A. J&J Learned Of Dr. Blount's Opinion That Johnson's Baby Powder Contains Asbestos In At Least The Early 1990s

In 1991, Dr. Blount published an article, "Amphibole Content of Cosmetic and Pharmaceutical Talcs," in *Environmental Health Perspectives*, a peer-reviewed journal of the National Institute of Environmental Health Sciences.[2] The article

---

[1] *See* Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Reply in Support of Motion to Exclude Plaintiffs' Experts' Asbestos-Related Opinions (ECF No. 10041) at 38, fn. 96 (hereinafter "J&J *Daubert* Reply").

[2] A true and correct copy of "Amphibole Content of Cosmetic and Pharmaceutical Talcs" by A.M. Blount, *Environmental Health Perspectives* Vol. 94, pp. 225-230

detailed Dr. Blount's testing of fifteen samples of pharmaceutical and cosmetic-grade talcum powder for asbestiform amphiboles. Dr. Blount did not identify the brand names of the talcum powder samples in the article. Instead, she marked the samples "A" through "O."[3] Dr. Blount found "needles and fibers" of tremolite asbestos in Sample I.[4] In fact, in discussing Dr. Blount's article the International Agency for Research on Cancer ("IARC"), an arm of World Health Organization, noted that one sample - Sample I, contained amphibole particle size distribution typical of asbestos.[5]

Several years later, in March 1998, J&J defended the *Coker v. Bill Thames Pharmacy Inc., et al.* case in Texas. On March 16, 1998, in defense of that case, an attorney for J&J's outside counsel, Mehaffey & Weber, wrote to John O'Shaughnessy of J&J's Office of General Counsel informing Mr. O'Shaughnessy that he "spoke with Dr. Alice Bloundt [sic] about the possibility of retaining her as an expert in the [Coker] case."[6] Mr. Hatcher, the Mehaffey & Weber attorney, reported, "in [Dr. Blount's] opinion, commercial talcum powder preparations including Johnson & Johnson Baby Powder contain trace amounts of asbestos."[7] This was not news to J&J, as it had already known of Dr. Blount's opinion of asbestos in Johnson's Baby Powder since at least the early 1990s.[8] In fact, J&J was in possession of two separate "keys" that identified "Sample I" in Dr. Blount's 1991

---

(1991) with typewritten key is attached hereto as **Exhibit 1,** and a handwritten key is attached hereto as **Exhibit 2**.

[3] A person reading Dr. Blount's article today would still not know the identity of the lettered samples because the typewritten and handwritten keys contained in Exhibits 1 and 2, respectively, were not published as part of the article.

[4] *See* Exhibit 1 at 228.

[5] *See* IARC Monograph 100c on Asbestos (2012) at 232, attached as **Exhibit 3**.

[6] A true and correct copy of the March 16, 1998 correspondence is attached hereto as **Exhibit 4**.

[7] *See id*.

[8] *See* pertinent excerpts of *Olson v. J&J* Trial Transcript, April 30, 2019, attached hereto as **Exhibit 5** at 7453:20–7455:1.

publication as Johnson's Baby Powder made with Vermont talc.[9] J&J produced these keys under a Protective Order in June 2017.

On April 23, 1998, Dr. Blount wrote to Mehaffey & Weber and again identified Sample I as "Johnson & Johnson's Vermont talc" and once more advised that "Johnson & Johnson's Vermont talc contains trace amounts of asbestos."[10] She attached three documents to her letter: (1) a copy of her 1990 paper; (2) a copy of her 1991 paper; and (3) the Blount Report.[11] To date, J&J has only disclosed Dr. Blount's 1990 and 1991 papers, but has not produced the Blount Report.

### B. Decades Later, Dr. Blount Reaffirmed Her Finding Of Asbestos In Johnson's Baby Powder

Dr. Blount is now retired and lives in Vermont. Last year, Dr. Blount reaffirmed her findings of asbestos in Johnson's Baby Powder during an April 13, 2018 deposition, as follows:[12]

- When asked, "[h]ave you tested Johnson & Johnson baby powder for asbestos?" she answered "Yes."[13]

- When asked, "[d]oes Johnson's baby powder, or did it when you tested it, have asbestos?," Dr. Blount again answered "Yes."[14]

- Further, Dr. Blount brought the pictures of asbestos that she found in Johnson's Baby Powder to the

---

[9] *See* typewritten and handwritten keys in Exhibits 1 and 2, respectively.

[10] A true and correct copy of Dr. Blount's April 23, 1998 correspondence is attached hereto as **Exhibit 6**.

[11] *See id.* Dr. Blount described the Blount Report as "a report on the occurrence, regulation and up-to-date scientific view of asbestos, amphiboles and 'intermediate fibers.'"

[12] A true and correct copy of the April 13, 2018 Deposition of Dr. Alice Blount is attached hereto as **Exhibit 7**.

[13] *Id.* at 10:11-13.

[14] *Id.* at 10:15-19.

deposition, identifying and explaining the tremolite asbestos she found.[15]

- In fact, Dr. Blount testified that her testing Johnson's Baby Powder and finding asbestos was not an isolated incident, but that she has tested Johnson's Baby Powder more than once and has consistently found asbestos in it.[16]

- When asked, "Dr. Blount, based upon what you know from what you did and your expertise, was Johnson & Johnson's baby powder. . . since the 1970s asbestos-free or did it have asbestos in it?," her reply was: "It had asbestos."[17]

### C. J&J Challenges Dr. Blount's Credibility And Denies She Found Asbestos In Johnson's Baby Powder

J&J challenged Dr. Blount's credibility at her April 13, 2018 deposition, and disputed her identification of Sample I as Johnson's Baby Powder. To be clear, J&J denied that Dr. Blount ever found asbestos in Johnson's Baby Powder. J&J's counsel implied that only Dr. Blount's word supported her opinion regarding Johnson's Baby Powder:

Question: Okay. But at least sitting here today, there's no results of any other testing that I can take a look at that we have with us, right?

Answer: With us today, don't think so.[18]

J&J's counsel implied that there was no evidence supporting Dr. Blount's position while knowing very well that it was in possession of her 16-page report, which presumably contains the bases for her opinions.

---

[15] *Id.* at 18:3–22:20.

[16] *Id.* at 86:23–87:6.

[17] *Id.* at 42:3-9.

[18] *Id.* at 101:18-102:19.

### D. The Relevance Of The Blount Report Only Recently Came To Light

On February 15, 2019 in *Olson v. Johnson & Johnson, et al.*, J&J did not object to the admission of Dr. Blount's April 23, 1998 letter, and the letter was published to the jury.[19] However, J&J refused to disclose the Blount Report, which was originally attached to the April 23 letter, claiming it was work-product and that plaintiffs' raising of the issue was untimely given that J&J included the Blount Report in its June 2017 Privilege Log.[20] However, J&J's reliance on the June 2017 Privilege Log[21] is without merit because even J&J's own counsel, Mr. Kurland, did not know whether the 16-page report he brought to court was indeed the Blount Report attached to the April 23, 1998 letter:

```
15          MR. KURLAND:  Well, I think the Court should take a
16     moment to review the documents; but I think plaintiffs'
17     arguments are based on an assumption about what the report
18     says, which the report did not in fact say at all.
19          MR. HARTLEY:  Are we -- are we all --
20          Is it clear now that this is, in fact, the report
21     that was attached to the letter?  Because we only assume it
22     based on its place in the Bates range.
23          MR. KURLAND:  I pulled out the Bates number and
24     looked at the document because it has the slip sheet.
25          MR. HARTLEY:  I understand that.  I'm asking you,
```

---

[19] *See* a true and correct copy of the pertinent excerpts of the *Olson* trial transcript, February 15, 2019, attached hereto as **Exhibit 8** at 807:14–808:3.

[20] *See* a true and correct copy of pertinent excerpts of the *Olson* trial transcript, May 10, 2019, attached hereto as **Exhibit 9** at 8534:1–8537:15.

[21] A true and correct copy of the June 2017 JJCI Privilege Log is attached hereto as **Exhibit 10**.

```
 1    are you representing that it is the report?
 2         MR. KURLAND:  I don't know.  I know what document
 3    was withheld with that slip sheet, and so that's what I
 4    pulled.  And I did not work at Mehaffy & Weber in the 1990s
 5    and I have no personal knowledge of what was transmitted
 6    with that letter when it was sent.  But the document that
 7    was withheld was the Bates number -- that (indicating) is
 8    the document that had a slip sheet.
 9         MR. HARTLEY:  And it's from Alice Blount.
10         THE COURT:  Can I say?  That much, can I say?
11         MR. KURLAND:  I leave it to the Court's discretion,
12    but --
13         THE COURT:  Yeah, this (indicating) is the
14    document.
```
[22]

Despite their own lack of knowledge, J&J argued in *Olson* that plaintiffs' counsel should have known the 16-page document was indeed the Blount Report when it produced its Privilege Log in 2017. Further, the attachment was buried within the Privilege Log of 1,493 pages of documents.[23] The existence of the Blount Report, therefore, was not known until the statements set forth above in the *Olson* proceeding occurred.

Last week, in the J&J *Daubert* Reply, J&J disputed that Dr. Blount ever found asbestos in Johnson's Baby Powder using methods described in her published work, or otherwise. J&J argued that "Sample I could not be defendants' talc because Dr.

---

[22] Exhibit 9 at 8545:15–8546:14.

[23] After *in camera* review, Judge Lebovits declined to order production of the Blount Report finding it is protected work product under New York law. *See* pertinent excerpts of *Olson v. J&J* Trial Transcript, May 13, 2019 attached hereto **Exhibit 12** at 8805:15–8807:9. However, New York law does not apply to this proceeding, the circumstances regarding the relevance of the Blount Report are different, and applicable law supports the production of the Blount Report in the present matter.

Blount purchased the bottle of defendants' product she used for testing in 1996, years after her 1991 paper."[24] J&J's position rests upon the same 2018 deposition testimony of Dr. Blount discussed above, wherein J&J, despite having the Blount Report and other supporting documentation in its possession, muddied the record about the testing Dr. Blount had conducted in connection with her published work twenty-seven years earlier.

The PSC expects that J&J will continue to attack Dr. Longo and his understanding of Dr. Blount's work, despite being in sole possession of relevant information that contradicts their position. The current record makes clear that J&J's own consulting expert Dr. Blount found asbestos in Johnson's Baby Powder over twenty years ago. However, the Blount Report should not only remove all doubt that Dr. Longo's understanding is correct, and his methodology is reliable, but will also show that J&J withheld corroborating evidence while affirmatively arguing to the contrary. Neither Dr. Longo nor the PSC have seen the Blount Report but, based on the facts outlined above, the PSC believes that the Blount Report contains additional information highly relevant to the *Daubert* motions presently before the Court.

### III. LEGAL ARGUMENT

The work-product doctrine, first recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S 495, 67 S. Ct. 385 (1947), "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp.*, 343 F.3d 658, 661-662 (D.N.J. 2003). The work-product doctrine encompasses "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives." Fed. R. Civ. P. 26(b)(3)(A). "The work product doctrine provides qualified not absolute protection." *United States v. Nobles*, 422 U.S. 225, 238, 95 S. Ct. 2160 (1975). "The qualified privilege depends on the information being sought and the adversary's need for the information. *George v. Siemens Industrial Automation, Inc.*, 182 F.R.D. 134, 140 (D.N.J. 1998) (citing *Hickman*, 329 U.S. at 512).

---

[24] *See* J&J *Daubert* Reply at 38, fn. 96. J&J's position relies upon the same 2018 deposition testimony of Dr. Blount discussed above (and attached hereto as Exhibit 7).

To overcome the protections of the work-product doctrine the party seeking production must show a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Maertin v. Armstrong World Industries, Inc.*, 172 F.R.D. 143, 147 (D.N.J. 1997) citing Fed. R. Civ. P. 26(b)(3). The PSC has satisfied this burden and the Blount Report should be produced.

In challenging the opinions of Dr. Longo, J&J has argued that Dr. Longo has neither citation nor explanation to argue that Sample I referenced in Dr. Blount's paper refers to Vermont talc or that J&J talc contains asbestos. J&J has also sought to undercut the opinions expressed publicly by Dr. Blount that J&J's Vermont talc contains trace amounts of asbestos. By asserting this position in opposition to Dr. Longo's methodology and results, J&J has put the findings and opinions of Dr. Blount directly at issue in this case. As such, the information contained in the Blount Report is not protected by any privilege. *See George*, 182 F.R.D. at 143 (holding that statements related to particular issue raised in case were not protected by any privilege).

Even if the work-product doctrine applied to the Blount Report, it would be discoverable in this matter. Documents prepared by a party in anticipation of litigation are discoverable if the party seeking discovery "has substantial need of the materials and is unable without undue hardship to obtain their equivalent by other means." *See Ward v. Maritz*, 156 F.R.D. 592, 597 (D.N.J. 1994); *Leonen v. Johns-Mansville*, 135 F.R.D. 94, 96 (D.N.J. 1990). Here, the Blount Report is important evidence highly relevant to the *Daubert* hearing in the MDL and plaintiffs are unable to obtain the report from any other source. J&J has and continues to attack all of the PSC's MDL experts as having no valid basis for opining that there is asbestos in Johnson's Baby Powder, yet J&J refuses to disclose Dr. Blount's Report, which may contain additional support for her opinions that Johnson's Baby Powder contains asbestos. *See George*, 182 F.R.D. at 143 (holding that defendants would be at a disadvantage if information was not disclosed, even if they were not aware of the type of information contained in the information being withheld).

## IV.   **CONCLUSION**

The Blount Report is clearly relevant to the *Daubert* hearing and this issue should be resolved before the *Daubert* hearings commence or, if not, at the very least, before Dr. Longo is to testify. It is for this reason the PSC requests an

expedited briefing schedule related to this issue. At a minimum, even if the Court chooses not to resolve a discovery dispute on an expedited basis, the PSC asks that the Court review the Blount Report *in camera* before Dr. Longo testifies.

Very truly yours,

| | |
|---|---|
| */s/ P. Leigh O'Dell* | */s/ Michelle A. Parfitt* |
| P. Leigh O'Dell | Michelle A. Parfitt |

cc:   Hon. Lois H. Goodman (via electronic mail)
   Susan Sharko, Esq. (via electronic mail)
   John Beisner, Esq. (via electronic mail)
   Tom Locke, Esq. (via electronic mail)
   The Plaintiffs' Steering Committee (via electronic mail)