# Exhibit 5

# In The Matter Of:

*Olson v.*
*J & J*

*April 30, 2019*

*Original File 043019 Olson.txt*
*Min-U-Script® with Word Index*

7294

```
 1  SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK - CIVIL TERM - PART 7
 2  ------------------------------------------------------X
    DONNA A. OLSON and ROBERT M. OLSON,
 3
                              Plaintiff,
 4                                               Index No.
            -against-                            190328/2017
 5
    BRENNTAG NORTH AMERICA, INC.;
 6  BRENNTAG SPECIALTIES, INC.,
        Individually, and f/k/a Mineral Pigment
 7      Solutions, Inc., as successor-in-interest to
        Whittaker, Clark & Daniels, Inc.,
 8  CYPRUS AMAX MINERALS COMPANY,
        Individually and as successor-in-interest to
 9      American Talc Company, Metropolitan Talc
        Company, Inc., Charles Mathieu, Inc., and
10      Resource Processors, Inc.;
    IMERYS TALC AMERICA, INC.,
11  JOHNSON & JOHNSON CONSUMER, INC.;
    WHITTAKER, CLARK & DANIELS, INC.,
12      Individually and as successor-in-interest
        To American Talc Company, Metropolitan Talc
13      Company, Inc., Charles Mathieu, Inc., and
        Resource Processors, Inc.;
14
                              Defendants.
15  ------------------------------------------------------X
                                       60 Centre Street
16  TRIAL                              New York, New York
                                       April 30, 2019
17
    B E F O R E:
18
            HONORABLE GERALD LEBOVITZ,
19                  Justice; and a jury

20

21
              (Appearances on following page)
22

23

24                             ALAN F. BOWIN, CSR, RMR, CRR
                               JOHN PHELPS, CSR, RPR, CRR
25                             Official Court Reporters
```

```
 1   A P P E A R A N C E S:

 2
        For the Plaintiffs:
 3

 4              LEVY KONIGSBERG, LLP
                     800 THIRD AVENUE
 5                   NEW YORK, NEW YORK 10022
                BY:  JEROME H. BLOCK, ESQ.
 6
                          -and-
 7
                MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
 8                   150 WEST 30TH STREET
                     NEW YORK, NEW YORK 10001
 9              BY:  SUZANNE M. RATCLIFFE, ESQ.
                     CHRISTIAN HARTLEY, ESQ.
10                   MARGARET SAMADI, ESQ.

11

12      For the Defendants:

13
                PATTERSON BELKNAP WEBB & TYLER, LLP
14                   1133 AVENUE OF THE AMERICAS
                     NEW YORK, NEW YORK  10036
15              BY:  THOMAS P. KURLAND, ESQ.

16                        -and-

17              KIRKLAND & ELLIS, LLP
                     300 NORTH LaSALLE STREET
18                   CHICAGO, IL  60654
                BY:  BARRY E. FIELDS, ESQ.
19                   MIKE BROCK, ESQ.
                     STACEY GARBIS PAGONIS, ESQ.
20                   ALLISON RAY, ESQ.

21

22

23

24

25
```

**Hopkins - by Defense - Cross/Block**

1           MR. BLOCK:  Okay.
2           THE COURT:  There won't be much we can do about it.
3           MR. BLOCK:  Can I continue, your Honor?
4           THE COURT:  Yes, please.
5           Officer Huie will look into it.
6    BY MR. BLOCK:
7       Q    It says:  "Our major problem with the Pooley procedure
8    is that since one can continually recycle the tailings
9    (concentrate), given enough time, it is possible to arrive at
10   levels of the detectability of asbestos in talc in the
11   [parts-per-million] range."
12           Is that what it says?
13      A    You read what is written.
14      Q    And getting to a level of detectability of asbestos in
15   talc in the parts-per-million range is a good thing, right?
16   That's a good thing.
17      A    Yes.
18      Q    And I think we talked about, yesterday, or last time
19   you were here -- it's been more than since yesterday -- that,
20   for example, ten parts per million, that gets you down to a
21   detection level of 0.00001 percent.
22           Remember, we did that math last time; I gave you my
23   calculator (indicating) for that?
24      A    No need to do it again.  Yes.
25      Q    Okay.

ALAN F. BOWIN, CSR, RMR, CRR

7453

**Hopkins - by Defense - Cross/Block**

1  A    I'm not disagreeing.

2  Q    All right.

3       And then it goes on to say:  "We really want to exclude
4  the concentration techniques in any proposed analytical
5  procedure and are really looking at this method very quietly so
6  that we will be informed and up-[to]-date with this area of
7  technology."

8       Is that what it says?

9  A    Yes.

10 Q    And Johnson & Johnson certainly didn't want to promote
11 a test for asbestos that could detect low levels, down to
12 0.00001 percent, did they?

13 A    Well, what -- if I may respond -- what the sentence
14 says is that we're looking at this method quietly so that we
15 will be informed and up to date with this area of technology.

16 Q    And what -- Mr. Rolle then said:  "We want to avoid
17 promotion of this approach," right?

18 A    Until they're up to date.

19          (Image removed.)

20 Q    Okay, I want to ask you about a different topic.  And
21 you know, Dr. Hopkins, based upon your years of working at
22 Johnson & Johnson, that Johnson & Johnson has known about Alice
23 Blount's identification of asbestos in Johnson & Johnson's Baby
24 Powder products since the early 1990s; correct?

25 A    The company has certainly been aware of Dr. Blount's

ALAN F. BOWIN, CSR, RMR, CRR

**Hopkins - by Defense - Cross/Block**

1  publication -- publications -- in the literature, yes.
2     Q    Let me have you turn to your transcript from June 25th,
3  2018.
4          I think the transcripts are there (indicating), in the
5  black binders with the tabs.  It's the tab that says:  "June
6  25th, 2018."
7     A    Yes.
8     Q    Okay.
9          All right.  And I'm going to direct your attention to
10 page 107, line 10, and I'm going to read you the question you
11 were asked at that deposition, and I'm going to put the question
12 you were asked at that deposition up on the screen (indicating),
13 and I want to ask you what your answer was.
14              (Image displayed.)
15    Q    Okay?  Are you there?
16    A    Yes, yes.
17    Q    Page 107, line 10.
18    A    No; we're there (indicating), yeah.
19    Q    So your sworn testimony from June 25th, 2018:
20             "Question:  And Johnson & [Johnson] has known about
21       Alice [Blount's] identification of asbestos in Johnson &
22       Johnson's baby powder products since the early 1990s;
23       correct?"
24             And your answer was:  "Yes."
25             Did you give that testimony?

7455

**Hopkins - by Defense - Cross/Block**

1   A   Yes.

2       (Image removed.)

3   Q   Okay. Now, let me show you what is in evidence as
4   Exhibits 11 and 12 in this case. Okay, 11 and 12 (handing).
5       All right. And what I would like to do is look at
6   these two documents, Exhibits 11 and 12, and look at how they're
7   the same and how they're different, if at all.
8       And Exhibit 12 was a document produced by Johnson &
9   Johnson; correct?
10  A   Yes.
11  Q   And it's Dr. Blount's article, published in
12  Environmental Health Perspectives in 1991; correct?
13  A   Yes.
14  Q   And the document has a key that was produced by Johnson
15  & Johnson (indicating); and if we look at the page of the Bates
16  label, you see the page ends in "436"; and then, if we turn to
17  the very next page that was produced by Johnson & Johnson
18  (indicating), it's the key; correct?
19  A   Well, there is a key, yes.
20  Q   Okay. All right, a key. So -- and I want to talk to
21  you about the key, all right?
22      But before I do that, I want to ask you about the key
23  in Exhibit 11. So, if we could look at Exhibit 11 --
24      And this is also a document produced by Johnson &
25  Johnson, right?

ALAN F. BOWIN, CSR, RMR, CRR