# Exhibit 11

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
                                                           )
IN RE: JOHNSON & JOHNSON                  )
TALCUM POWDER PRODUCTS              )
MARKETING, SALES PRACTICES AND   )      MDL Docket No. 2738
PRODUCTS LIABILITY LITIGATION          )
_____ )
                                                           )
This Document Relates To All Cases          )
_____ )

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' ASBESTOS-RELATED OPINIONS**

DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

mineral] is,"[95] that is nonsensical because the whole purpose of Drs. Longo and Rigler's analysis is to identify what the mineral is in the first place.[96]

In any event, plaintiffs do not refute that Drs. Longo and Rigler's subjective EDXA determinations cannot be verified without quantitative data. *See, e.g.*, *United States v. Hebshie*, 754 F. Supp. 2d 89, 125 (D. Mass. 2010) ("Documentation is necessary to test a hypothesis" and "reproducibility is the sine qua non of 'science.'"); *Zenith Elecs. Corp. v. WH–TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("Someone else using the same data and methods must be able to replicate the result."). Indeed, plaintiffs fail to address testimony by Dr. Longo refusing to say that an experienced third-party EDXA scientist would agree that

---

[95] (*Id.* at 73.)

[96] Plaintiffs also fault Dr. Dyar and defendants for not considering Dr. Blount's 1991 article. (*Id.* at 74.) But that article says nothing about Drs. Longo and Rigler's methodology since it does not use EDXA at all. *See* Blount, *Amphibole Content of Cosmetic and Pharmaceutical Talcs*, 94 Envt'l Health Perspectives 225 (1991) (attached as Ex. 23 to Pls.' Opp'n). Although plaintiffs have no explanation or citation, they presumably rely on a handwritten notation of unknown origin to argue that "Sample I" in Dr. Blount's paper is Vermont talc. (Ex. J&J-220, at 9 (attached as Ex. 24 to Pls.' Opp'n).) Those notations do not even match the article, which says that Dr. Blount tested four foreign talcs, whereas the handwriting only lists three. And Sample I could not be defendants' talc because Drs. Blount purchased the bottle of defendants' product she used for testing in 1996, years after the 1991 paper. (Dep. of Alice M. Blount, Ph.D. 47:15-25, *Ingham v. Johnson & Johnson,* No. 1522-CC10417-01 (Mo. Cir. Ct. Apr. 13, 2018) (attached as Ex. E34 to 2d Suppl. Tersigni Cert.).) Finally, it is bizarre that plaintiffs point to Dr. Blount as finding a "consistent" mineral type because Drs. Longo and Rigler found almost entirely anthophyllite and she did not purport to identify ***any*** anthophyllite.

38