

Susan M. Sharko
973-549-7350 Direct
973-360-9831 Fax
Susan.Sharko@dbr.com

July 9, 2019

*Law Offices*

600 Campus Drive
Florham Park, NJ
07932-1047

973-549-7000
973-360-9831 fax
www.drinkerbiddle.com

*A Delaware Limited
Liability Partnership*

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
TEXAS
WASHINGTON D.C.

**VIA ECF**

Honorable Freda L. Wolfson, Chief Judge
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

    Re:    **In Re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation, MDL No. 2738**

Dear Judge Wolfson:

    I am writing in response to plaintiffs' July 3, 2019 letter ("Pls.' Letter") requesting that the Court order defendants to produce a report drafted by Dr. Alice Blount while serving as a consulting expert to counsel for Johnson & Johnson in a 1998 lawsuit (the "Report"). Plaintiffs' request should be denied because the Report is protected from disclosure as work product under Rule 26(b)(3) and as the opinion of a non-testifying expert under Rule 26(b)(4), and plaintiffs have not made a sufficient showing to overcome these protections.

    Dr. Blount authored the Report while serving as a consulting expert to J&J in connection with the 1998 case *Darlene Coker, and spouse Ray Coker vs. Bill Thames Pharmacy Inc., et al.*[1] As described in Dr. Blount's letter transmitting the Report to counsel – a letter that was produced to plaintiffs in the MDL proceeding and numerous other talc cases in 2017 – the Report was drafted at counsel's request to assist counsel in understanding regulatory agencies' and the scientific community's definitions of asbestos.[2] Dr. Blount sent the Report to counsel along with two papers she had published in 1990 and 1991 discussing her testing for asbestos in industrial, pharmaceutical and cosmetic talc. In addition to Dr. Blount's letter, defendants have produced the 1990 and 1991 papers, and have identified the Report in their privilege logs.[3]

    A state court in New York recently reviewed the Report and determined that defendants properly withheld it as work product. Trial Tr. 8805:15-8807:9, *Olson v.*

*Andrew B. Joseph
Partner responsible for
Florham Park Office*

---

[1]     *Coker* was not an ovarian cancer case.

[2]     *See* Apr. 23, 1998 letter from Dr. Alice Blount to M. Raymond Hatcher ("According to your letter of March 31, 1998, I have written and enclosed a report on the occurrence, regulation and up-to-date scientific view of asbestos, amphiboles and 'intermediate' fibers.") ("Blount Letter") (attached to Pls.' Letter as Ex. 6).

[3]     A copy of the J&J defendants' privilege log entry for the Report is attached as Exhibit 1.

*Established* 1849

**Drinker Biddle & Reath**
LLP

Honorable Freda L. Wolfson, Chief Judge
July 9, 2019
Page 2

*Brenntag N. Am., Inc.*, No. 190328/2017 (N.Y. Sup. Ct. May 13, 2019) ("*Olson* Tr.") (attached as Ex. 2). In an oral ruling, the *Olson* court explained that "[o]n its face the document is prepared by an expert serving informally as a scientific consultant to a party, providing information that may be relevant to legal arguments and strategy," and that "the contents of the report [are] relevant to legal arguments and strategy." *Id.* at 8805:15-8806:4.

This Court should reach the same result because the Report is covered by two provisions of federal law, each of which justifies withholding it. First, Rule 26(b)(3), which codifies the work product doctrine, provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). Second, Rule 26(b)(4)(D) provides that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). Courts in this Circuit have found both of these protections to apply in similar circumstances to those here. *See Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 263 F.R.D. 190, 193 (E.D. Pa. 2009) (finding that both protections applied to a report written by a consultant who "was retained to provide pre-litigation advice and ha[d] not been disclosed as a testifying expert in this case," making the report "the opinion of a non-testifying expert, protected from disclosure under Fed.R.Civ.P. 26(b)(4)(B)"; further finding that the report "was prepared at the direction of an attorney in anticipation of litigation," and thus was "attorney work product protected by Fed.R.Civ.P. 26(b)(3)").[4]

Here, as the *Olson* court observed, Dr. Blount was a consultant to J&J's counsel when she wrote the Report and expressly prepared the Report at J&J's counsel's request in connection with the *Coker* litigation. As the *Olson* court further observed, the Report provides "information that may be relevant to legal arguments and strategy." *Olson* Tr. 8805:21-8806:1. As such, the Report's "scope and the specific issues discussed [therein] may indirectly reveal the 'mental impressions, conclusions, opinions, or legal theories' of [J&J's] counsel at whose direction it was prepared." *Quinn*, 263 F.R.D. at 193 (citation omitted). The Report accordingly falls squarely within the protections afforded by Rules 26(b)(3) and 26(b)(4)(B).

Plaintiffs do not seriously contest that the work product doctrine applies to the Report. Instead, they argue that the Report should be produced because they have shown

---

[4] Plaintiffs' letter ignores Rule 26(b)(4)(B), which is an independent ground for holding that the Report was correctly withheld. *See In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 664-65 (3d Cir. 2003) ("Rule 26(b)(3) provides work product protection independently of Rule 26(b)(4)(B).").

Honorable Freda L. Wolfson, Chief Judge
July 9, 2019
Page 3

a "substantial need" for it. (Pls.' Letter at 9.) *See* Fed. R. Civ. P. 26(b)(3) (providing that work product is discoverable if a "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"). According to plaintiffs, the Report "is important evidence highly relevant to the *Daubert* hearing" because they believe that the Report will corroborate theirs and Dr. Longo's theory that a sample in which Dr. Blount claimed to find asbestos, discussed in her 1991 paper ("Sample I"), *was* defendants' cosmetic talc.[5]

Plaintiffs' argument is misplaced. As an initial matter, plaintiffs are mistaken regarding the contents of the Report. Defendants represent that the Report does not discuss Sample I or provide any information that could support identifying it as corresponding to defendants' cosmetic talc. As such, it does not "contain[] the bases for her opinions" that defendants' talc products contain asbestos. (Pls.' Letter at 5.)[6]

In any event, courts have made clear that the "substantial need" showing is not satisfied by mere relevancy to issues in a case or a party's belief that the materials in question will strengthen its arguments. *See, e.g.*, *Ebert v. C.R. Bard, Inc.*, No. 12-01253, 2014 WL 1632155, at *4-5 (E.D. Pa. Apr. 24, 2014); *U-Haul Co. of Nev., Inc. v. Gregory J. Kamer, Ltd.*, No. 2:12-cv-00231-KJD-CWH, 2013 WL 1249706, at *5 (D. Nev. Mar. 26, 2013) (finding that the "potential relevance" of materials did not "justif[y] waiver of the work product doctrine"; work product is not overcome "merely on a showing of relevancy," and the party seeking discovery has the burden to show that the materials are "essential to the preparation of one's case") (citation omitted). Rather, "substantial need" is "shown when the materials sought are *essential to prove* the discovering party's case, or where without the information a distinct advantage would accrue to the party having it." *Peerless Heater Co. v. Mestek, Inc.*, No. 98-6532, 1999 WL 35147370, at *5-6 (E.D. Pa. Dec. 6, 1999) (emphasis added) (citation omitted). For example, in *Ebert*, the plaintiff argued that it had a "substantial need" requiring the production of a report written by the defendants' litigation consultant that allegedly showed that the defendant was aware that its product was defective. 2014 WL 1632155, at *4-5. The court disagreed, explaining that there was other evidence of a defect in the record, and the plaintiff's belief that the report would "serve as stronger evidence of the defendants' awareness of the [product's]

---

[5] Plaintiffs' description of Dr. Blount's testimony (Pls.' Letter at 4-5) omits her critical admission that she first purchased a bottle of Johnson's Baby Powder for testing in 1996, years after her 1991 paper (*see* Dep. of Alice M. Blount, Ph.D. 47:15-25, *Ingham v. Johnson & Johnson*, No. 1522-CC10417-01 (Mo. Cir. Ct. Apr. 13, 2018) (attached to Pls.' Letter as Ex. 7)).

[6] Notably, Dr. Blount wrote in her letter transmitting the Report to counsel that she "believe[s] that Johnson & Johnson's Vermont talc contains trace amounts of asbestos which are *well below those specified by OSHA*," which set a "0.1% limit for amphibole asbestos." Blount Letter (emphasis added).

Case 3:16-md-02738-MAS-RLS   Document 10153   Filed 07/09/19   Page 4 of 5 PageID: 91599

DrinkerBiddle&Reath
LLP

Honorable Freda L. Wolfson, Chief Judge
July 9, 2019
Page 4

dangerousness" was "not enough of a substantial need to overcome Rule 26's work product discovery bar." *Id.*

Here, plaintiffs have plenty of evidence that is relevant to the admissibility of Dr. Longo's opinions, including his own deposition testimony, his reports and numerous other documents that plaintiffs have cited purportedly showing that defendants' talc contains asbestos. Moreover, the chief issues with respect to the admissibility of Dr. Longo's opinions are: (1) whether his definition of asbestos fits the facts of the case given that it includes nonasbestiform cleavage fragments; and (2) whether he followed reliable microscopy techniques in purporting to detect asbestos in samples of defendants' talc. (*See generally, e.g.*, Defs.' Mot. to Exclude Pls.' Experts' Asbestos-Related Ops.) Even if plaintiffs' speculation that the Report confirms that Dr. Blount detected asbestos in defendants' Vermont talc were correct (and it is not), that would implicate only Dr. Longo's conclusions, and say nothing about his methodology. *See Peerless Heater Co.*, 1999 WL 35147370, at *5-6 ("[T]he desire to impeach or corroborate a witness's testimony, by itself, cannot overcome [work product] protection . . . .") (quoting *In re Grand Jury Investigation*, 599 F.2d 1224, 1232 (3d Cir. 1979)); *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054-55 (8th Cir. 2000) ("A party also does not demonstrate substantial need when it merely seeks corroborative evidence.").[7] Finally, plaintiffs' argument that the Report is relevant to defendants' efforts to "undercut" Dr. Blount's opinions is a red herring because **Dr. Blount's** opinions are not at issue in the *Daubert* hearing.

Plaintiffs' other arguments attempting to demonstrate the Report's importance are unavailing. For one thing, plaintiffs' contention that they learned about the Report "[o]nly [r]ecently" (Pls.' Letter at 6-7) is false. The truth is that Dr. Blount's letter explicitly identifying the Report and describing its subject matter has been in defendants' document productions since 2017 – and other plaintiffs have used that letter as evidence in other talc

---

[7] Plaintiffs' authority only underscores that there is no "substantial need" to overcome work product protection here. In plaintiffs' primary case – *George v. Siemens Industrial Automation, Inc.*, 182 F.R.D. 134 (D.N.J. 1998) – the court ordered production of a portion of a document that the defendants "undoubtedly need[ed] to prepare an adequate defense." *Id.* at 142 (cited in Pls.' Letter at 9). For the reasons just explained, there is no colorable argument that plaintiffs "undoubtedly need" the Report "to prepare an adequate defense" of Dr. Longo's opinions. Plaintiffs' remaining cases are inapposite. (*See* Pls.' Letter at 9.) In *Ward v. Maritz Inc.*, 156 F.R.D. 592 (D.N.J. 1994), the court found that plaintiff's counsel's "unprofessional behavior" in counseling the plaintiff "to surreptitiously record [certain] conversations" with witnesses "vitiated" any work product protection the recordings might have had. *Id.* at 598. And *Leonen v. Johns-Manville*, 135 F.R.D. 94, 97 (D.N.J. 1990), primarily concerned whether materials were prepared in anticipation of litigation and thus work product in the first instance; it did not find that there was a substantial need for production of the documents that were protected.

DrinkerBiddle&Reath
LLP

Honorable Freda L. Wolfson, Chief Judge
July 9, 2019
Page 5

trials. Indeed, in August of last year, MDL plaintiffs' counsel (Mr. Placitella) questioned defendants' witness John Hopkins about the Report, quoting Dr. Blount's description of it in her letter. (*See* Dep. of John Hopkins 662:1-21, Aug. 17, 2018 (attached as Ex. 3).) Finally, although plaintiffs argue that a footnote in defendants' reply brief seeking to exclude Dr. Longo somehow heightens the relevancy of the Report (Pls.' Letter at 7-8), none of their authority remotely suggests that a desire to file what amounts to a sur-reply constitutes "substantial need" for documents protected by the work product doctrine.

For all of these reasons, the Court should hold that the Report was correctly withheld by defendants.[8]

Thank you for your consideration of this letter.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

*/s/ Susan M. Sharko*

Susan M. Sharko

cc: Leigh O'Dell, Esq. (via ECF)
Michelle Parfitt, Esq. (via ECF)
Christopher Placitella, Esq. (via ECF)
Thomas Locke, Esq. (via ECF)

---

[8] Defendants stand ready to produce the Report for *in camera* review at the Court's request.