# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Civil Action No. 3:16-md-2738-FLW-LHG<br><br>MDL No. 2738 |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

### THE PLAINTIFFS' STEERING COMMITTEE'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO JOHNSON & JOHNSON'S MOTION TO EXCLUDE PLAINTIFFS' EXPERTS GENERAL CAUSATION OPINIONS

The Plaintiffs' Steering Committee ("PSC") files this brief supplement to its Response in Opposition to Johnson & Johnson's Motion to Exclude Plaintiffs' Experts' General Causation Opinions.[1] Specifically, the PSC provides a Sworn Affidavit of Jack Siemiatycki, MSc, Ph.D. (hereinafter "Siemiatycki Affidavit")[2] to address a new contention raised in J&J's Reply Brief[3] regarding a May 2019 article co-authored by Dr. Siemiatycki.[4]

---

[1] ECF No. 9914 (hereinafter "PSC's Response").

[2] Siemiatycki Affidavit, Exhibit 1.

[3] ECF No. 10038 (hereinafter J&J Reply).

[4] *Shift Work Patterns, Chronotype, and Epithelial Cancer Risk,* Cancer Epidemiol. Biomarkers Prev. 987 (2019).

1

Although this May 2019 article has nothing to do with the talc-ovarian cancer relationship, J&J's Reply points out that a single sentence in that article does not list Talcum Powder as a suspected risk factor for ovarian cancer.[5] According to J&J, this sentence **proves** three things: *First*, that Dr. Siemiatycki expresses different opinions on the causal relationship between talcum powder products and ovarian cancer outside the courtroom.[6] *Second,* that it undermines the PSC's contention *the evidence favoring* causation has actually strengthened since the 2000's when Dr. Siemiatycki first found talc "possibly carcinogenic to humans" as chairman of the IARC in 2006, and co-authored the 2008 Langseth study.[7] *Third,* that Dr. Siemiatycki's February 2019 written comments to Health Canada informing his colleagues that the relationship between talc and ovarian cancer is a **causal** one was likely intended to support "plaintiffs' litigation position."[8]

As set forth in the attached Siemiatycki Affidavit, however, none of the suppositions made by J&J concerning this one sentence in this May 2019 article are correct. As the attached Affidavit makes clear, the sentence that J&J highlights was **<u>not</u>** part of the draft manuscript that Dr. Siemiatycki reviewed and approved prior to

---

[5] J&J Reply at 73-74.
[6] *Id.*
[7] *Id.* at 74-80.
[8] *Id*. at 81.

the article's publication. Indeed, the sentence was inserted at the request of an anonymous reviewer ***after*** Dr. Siemiatycki's review and approval of the draft manuscript. As Dr. Siemiatycki explains in his Affidavit:

> The sentence in question here from the Leung et al article was not included in any of the drafts that I reviewed prior to publication. Speaking to Dr. Koushik, I have since learned that the sentence was added to the article shortly before publication at the insistence of an anonymous reviewer. This specific addition, and other minor revisions made to the article which were insisted upon by the anonymous reviewer, were not circulated by the senior author for my review or for review by any other co-authors prior to publication. It is common practice in multi-author scientific publications for the senior author to exercise discretionary privilege to decide when an issue that arises in response to reviewers' comments requires a multilateral consultation with co-authors.[9]

Therefore, none of the arguments in J&J's Reply about this 2019 article are true. Specifically, this single sentence that Dr. Siemiatycki never saw prior to publication does ***not*** "prove" that he expresses a different opinion on the talc-ovarian cancer relationship outside the courtroom. Nor does it support the suggestion that his February 2019 comments to Health Canada (made without consultation with Plaintiffs' counsel) were litigation driven. Indeed, and as set forth in the PSC's Response, Dr. Siemiatycki's conclusions and methodology are fully consistent with those of Health Canada who, in 2018, concluded that the totality of evidence *through 2018* was likely causal.

---

[9] Siemiatycki Affidavit at ¶ 10.

As summarized by Dr. Siemiatycki:

> To be clear and unequivocal, my opinion both in this litigation and in the general scientific community is that talcum powder product use causes and is a risk factor for the development of ovarian cancer. These opinions are explained in great detail in my previously submitted expert witness report. See Rule 26 Expert Report of Jack Siemiatycki MSc, PhD, dated November 16, 2018, attached as Exhibit B.[10]

The PSC respectfully request that this affidavit be considered as part of the initial briefing.

Respectfully submitted,

/s/ *Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-783-6400
Fax: 202-416-6392
mparfitt@ashcraftlaw.com

/s/ *P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
Leigh.odell@beasleyallen.com

*Plaintiffs' Co-Lead Counsel*

---

[10] *Id.* at ¶ 10.

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*