

**Montgomery**
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

**Atlanta**
4200 Northside Parkway
Building One, Suite 100
Atlanta, GA 30327

(800) 898-2034

BeasleyAllen.com

**P. Leigh O'Dell**
leigh.odell@beasleyallen.com

October 29, 2019

Honorable Freda L. Wolfson, U.S.C.D.J.
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

**Re:**   ***In Re: Johnson & Johnson Talcum Powder Products Marketing,
Sales Practices and Products Liability Litigation*** **(MDL No. 2738)**

Dear Chief Judge Wolfson:

The FDA has now made available to the public the Certificate of Analysis and supporting documentation for the Johnson's Baby Powder sample from Lot #22318RB that tested positive for chrysotile asbestos. (*See* Exhibit A). The supporting documentation at pages 5-7 includes photomicrographs of the asbestos fibers under TEM as well as results of analyses by Energy Dispersive X-Ray Analysis (EDXA) and Selected Area Electron Diffraction (SAED), all methods used by Drs. Longo & Rigler when testing historical samples.

The testing data also makes clear that in addition to asbestos, the sample contains talc fibers or fibrous talc, another human carcinogen (Group 1) according to IARC.  Pages 11-15 of the report contains TEM photomicrographs as well as EDXA and SAED analyses that confirm the presence of talc fibers.

The testing was conducted by AMA Analytical Services, Inc. at the direction of its Laboratory Director, Andreas Saldivar.  As recently as June of 2018, J&J has recommended AMA to the FDA as talc testing experts with extensive experience in the testing of talc for the presence of asbestos. (*See* Exhibit B). AMA is the very same testing company used by the FDA for it 2009-2010 testing of cosmetic products for asbestos contamination.  Significantly, J&J has previously retained Mr. Saldivar as an expert in talc litigation. (*See* Exhibit C).

Hon. Freda L. Wolfson, U.S.C.D.J.
October 29, 2019
Page 2

The PSC writes to provide this new information to the Court.  The PSC has conferred with the Johnson & Johnson Defendants regarding the production of responsive discovery.  Discussions are ongoing, but J&J has represented to the PSC that production of documents will begin on a rolling basis on November 1, 2019.

The PSC will keep the Court apprised and supplement the record as warranted. Thank you for your consideration of these matters.

Very truly yours,

*/s/ P. Leigh O'Dell*                          */s/ Michelle A. Parfitt*
P. Leigh O'Dell                               Michelle A. Parfitt


cc:   Susan Sharko, Esq. (via email without enclosure)
      John Beisner, Esq. via email without enclosure)
      Tom Locke, Esq. (via email without enclosure)
      The Plaintiffs' Steering Committee (via email without enclosure)

# Exhibit A

AMA Analytical Services, Inc.
*Focused On Results.*

# CERTIFICATE OF ANALYSIS

**Chain of Custody:** 308006
**Client:** US Food & Drug Adminitration
**Address:** Office of Cosmetics & Colors
4300 River Road
College Park, MD 20740
**Attention:** John Gasper

**Job Name:** Task 3 - Analysis of Official Samples
**Job Location:** 4th Group - 15 Samples
**Job Number:** CLIN 1 - Task 3
**PO Number:** HHSF223201810337P

**Date Submitted:** 7/24/2019
**Date Analyzed:** 8/20/2019-9/18/2019
**Report Date:** 10/3/2019
**Date Sampled:** Not Provided
**Person Submitting:** Goran Periz
**Revised:** 10/11/2019 (Revision #2)

## SUMMARY OF ANALYSIS

| AMA Sample ID | Client Sample ID | TEM LOD Using ASTM D5756 Mass Calculation | TEM LOQ Using ASTM D5756 Mass Calculation | % Tremolite by TEM Using ASTM D5756 Mass Calculation | % Chrysotile by TEM Using ASTM D5756 Mass Calculation | % Total Tremolite & Chrysotile by TEM Using ASTM D5756 Mass Calculation | % Asbestos by PLM | % Organics | % Acid Soluable | % Other | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 308006-6 | D-58 | 0 00000169% | 0.00000675% | ND | ND | ND | ND | 0.3% | 6.7% | 93.1% | Gravimetric Loss from PLM Prep: Organics = 0.3%; Acid Soluable = 7.1%; Other = 92.6% |
| 308006-6A | D-58 | 0 00000133% | 0.00001485% | ND | < 0.00001% | < 0.00001% | ND | 0.2% | 19.5% | 80.2% | Gravimetric Loss from PLM Prep: Organics = 0.2%; Acid Soluable = 8.5%; Other = 91.3% |
| 308006-6B | D-58 | 0 00000135% | 0.00000540% | ND | 0.00002% | 0.00002% | ND | 0.2% | 11.2% | 88.6% | Gravimetric Loss from PLM Prep: Organics = 0.3%; Acid Soluable = 5.5%; Other = 94.2% |

**LOD** = Limit of Detection          **LOQ** = Limit of Quantification          **ND** = Not Detected          **PLM** = Polarized Light Microscopy          **TEM** = Transmission Electron Microscopy

**Analytical Method(s):** PLM by Modified NY ELAP 198.6
TEM by Modified NY ELAP 198.4/ASTM D5756

**Analyst(s): PLM** 
**TEM**

**Technical Director:** Andreas Saldivar

All results are to be considered preliminary and subject to change unless signed by the Technical Director or Deputy

This report applies only to the sample, or samples, investigated and is not necessarily indicative of the quality or condition of apparently identical or similar products. As a mutual protection to clients, the public, and these Laboratories, this report is submitted and accepted for the exclusive use of the client to whom it is addressed and upon the condition that it is not to be used, in whole or in part, in any advertising or publicity matter nor shall it be reproduced, except in full, without prior written authorization from us. Sample types, locations, and collection protocols are based upon the information provided by the persons submitting them and, unless collected by personnel of these Laboratories, we expressly disclaim any knowledge and liability for the accuracy and completeness of this information. Residual sample material will be discarded in accordance with the appropriate regulatory guidelines, unless otherwise requested by the client. NVLAP accreditation applies only to polarized light microscopy of bulk samples and transmission electron microscopy of AHERA air samples. This report must not be used to claim, and does not imply product certification, approval, or endorsement by NY ELAP, AIHA, NVLAP, NIST, or any agency of the Federal Government. All rights reserved. AMA Analytical Services, Inc.

308006-6, 6A, 6B/D58








*Re: FDA Office of Cosmetics & Colors*
*COC 308006-6, 6A,6B/D58, Revised 10/11/2019 (Revision #2)*

## Sample Preparation

Samples were prepared for PLM and TEM bulk analysis by **(b) (6)** on August 13, 2019 through September 5, 2019. Sample preparation consisted of the following steps:

1) Label and weigh two 8mL glass vials for each sample in the set – one vial for the PLM preparation and one vial for the TEM preparation.
2) Weigh out 0.1 to 0.8 grams of material and place in corresponding 8mL glass vial.  Record weight.
3) Burn samples at 480° C for at least 12 hours.
4) Record Post-Ash Weight.
5) Treat ashed sample with concentrated hydrochloric acid.
6) Filter acid reduced material onto a pre-weighed 47mm 0.4um PolyCarbonate filter.
7) Place filter into drying oven for 30 minutes and then record Post-Acid Reduced weight.
8) Make four PLM slide preparations from the PLM residual ash for each sample in 1.550 dispersion oil.  Make additional preparations in 1.605, 1.625, 1.680 and 1.700 dispersion oil as necessary for particle identification.
9) Weigh a portion of the residue from the TEM residual ash and place it into the corresponding pre-weighed 100ml jar.
10) Fill the 100ml jar with deionized water
11) Sonicate the jars for approximate 5-minutes.
12) Filter 0.2ml to 1ml of the solution onto a 47mm 0.22um MCE filter.
13) Dry the filter for 10 minutes then collapse, carbon coat, and place on a 3 TEM grids.

## PLM Analysis

Analysis was performed in accordance with NY ELAP 198.6 protocols.  The analysis was conducted using an Olympus BH-2 polarized light microscope (PLM) equipped with a dispersion staining objective.  All four slide preparations for each aliquot were examined.  400-point count was performed for those samples on which asbestos was observed.  If no asbestos was detected on any of the slides, the percentage of fibrous components was determined by visual estimation. The results of this analysis are detailed below in the *Discussion and Interpretation of Analytical Findings* section for each individual sample.

## TEM Analysis

Analysis was performed in accordance with modified NY ELAP Method 198.4 protocols.  The analysis was performed using a JEOL JEM-100CX II transmission electron microscope (TEM), equipped with a Thermo Fisher Quest Energy Dispersive X-Ray Analyzer (EDXA), at magnifications of 19,000x.  Two grids for each aliquot were examined. Twenty (20) grid openings were examined per sample.

Modifications to the NY ELAP 198.4 Method were:

1) The residue was not placed in alcohol and prepared using the quick drop method. To obtain a more uniform preparation, the residue was placed in a jar and filled with 100ml of deionized water. The jar was sonicated, and a portion of the solution was filtered onto a 47mm 0.22um MCE filter.
2) The tremolite and chrysotile were not visually estimated. The length and width of the observed particles were measured, and the mass of each amphibole particle was calculated using the ASTM D5756 method.
3) All particles identified as tremolite were included with the counts/concentrations, regardless of size and aspect ratio.

The results of this analysis are detailed below in the *Discussion and Interpretation of Analytical Findings* section for each individual sample.

## Calculations

*ASTM D5756 Mass*

$$M = \pi/4 \; L * W^2 * D * 10^{-12}$$

M = mass
L = length

 AMA Analytical Services, Inc.

W = width
D = density
*Percent Calculation*

$$\frac{EFA(mm^2) * 100ml * MA(g) * RW(g)}{VF(ml) * IW(g) * AA(mm^2) * RJ(g)}$$

The calculated value is then multiplied by 100 to convert it to percent.

EFA – Effective filter area
MA – Mass of asbestos
RW – Weight of residue
VF – Volume filtered
IW – Initial weight of the sample
AA – Area analyzed
RJ – Weight of residue placed into the jar

**Limit of Detection and Quantification**

We used the mass of a 0.5 x 0.04-micron tremolite or chrysotile fiber, depending on what was found in each sample, as the basis for our calculations.  Limit of detection was defined as 1 fiber and limit of quantification was defined as 4 fibers.

Some aliquots of sample D58 contained very small amounts of asbestos that were either at or below our 4-fiber limit of quantification.  For these samples we defined our limit of quantification as follows:

308006-6A:  mass of the two observed chrysotile structures plus the mass of two chrysotile fibers measuring 0.5 x 0.04 microns
308006-6B:  mass of 4 chrysotile fibers measuring 0.5 x 0.04-micron

**Discussion and Interpretation of Analytical Findings:**

308006-6, 6A, 6B Client Sample D-58

*PLM*

All three aliquots of sample D-58 were analyzed by <span style="background:black">(b) (6)</span> on September 13, 2019.   No asbestos or non-asbestos amphibole variants were detected the samples. The results were calculated using the equations detailed in the calculations section.

| 308006-6 | NAD |
|----------|-----|
| 308006-6A | NAD |
| 308006-6B | NAD |

*TEM*

Sample 6 was analyzed by <span style="background:black">(b) (6)</span> on September 3, 2019.  Samples 6A and 6B were analyzed by <span style="background:black">(b) (6)</span> on September 7, 2019.  The primary particle observed was talc along with a few talc fibers, talc ribbons and mica particles.  Two Chrysotile structures were detected on the aliquot for 6A and four chrysotile structures were detected on the aliquot for 6B.  The results were calculated using the equations detailed in the calculations section.

| 308006-6 | NAD |
|----------|-----|
| 308006-6A | <0.00002% |
| 308006-6B | 0.00002% |

Below are pictures, diffraction patterns, and chemistry from some of the observed particles. The unidentified peaks in chemistry spectra are copper, zinc, and carbon. Those peaks are from the TEM specimen holder and specimen grid.

*Sample 308006-6A, Chrysotile Structures*



308006 FDA_101.jpg
Chrysotile Structures
308006-6a
Cal: 0.001774 µm/pix
14:06 9/7/2019
TEM Mode: Imaging
Microscopist: CD
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 std. frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

500 nm
HV=100kV
Direct Mag: 5800 x
AMA Analytical Services, Inc

*Diffraction Pattern from Chrysotile Structure 1 pictured above*



308006 FDA_100.jpg
Chrysotile Dif
308006-6a
14:03 9/7/2019
TEM Mode: Diffraction
Microscopist: CD
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 std. frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

100 (1/Å)
HV=100kV
Cam Len: 0.2200 m
AMA Analytical Services, Inc

*Re: FDA Office of Cosmetics & Colors*
*COC 308006-6, 6A,6B/D58, Revised 10/11/2019 (Revision #2)*

*Sample 308006-6B, Chrysotile Structure 1*



308006 FDA _103.jpg
Chrysotile Cluster
308006-6b
Cal: 0.001429 µm/pix
15:33 9/7/2019
TEM Mode: Imaging
Microscopist: CD
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 std. frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

400 nm
HV=100kV
Direct Mag: 7200 x
AMA Analytical Services, Inc

*Diffraction Pattern from Chrysotile Structure pictured above*



308006 FDA _102.jpg
Chrysotile Dif
308006-6b
15:32 9/7/2019
TEM Mode: Diffraction
Microscopist: CD
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 std. frames, Gain: 1, Bin: 1
Gamma: 1.90, No Sharpening, Normal Contrast

100 (1/Å)
HV=100kV
Cam Len: 0.2200 m
AMA Analytical Services, Inc

*Re:  FDA Office of Cosmetics & Colors*
*COC 308006-6, 6A,6B/D58, Revised 10/11/2019 (Revision #2)*

*Chemistry from Chrysotile Structure pictured above*



*308006-6B, Chrysotile Structure 2*



*Diffraction Pattern from Chrysotile Structure pictured above*



308006 FDA_104.jpg
Chrysotile Dif
308006-6b
16:03 9/7/2019
TEM Mode: Diffraction
Microscopist: CD
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 std. frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

100 (1/Å)
HV=100kV
Cam Len: 0.2200 m
AMA Analytical Services, Inc

*308006-6, Talc Particle*



308006 FDA_052.jpg
Talc Particle
Cal: 0.001774 µm/pix
17:18 9/3/2019
TEM Mode: Imaging
Microscopist: MG
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 drift frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

500 nm
HV=100kV
Direct Mag: 5800 x
AMA Analytical Services, Inc

*Hexagonal Diffraction Pattern from Talc Particle pictured above*



*Chemistry from Talc Particle pictured above*



*Re: FDA Office of Cosmetics & Colors*
*COC 308006-6, 6A,6B/D58, Revised 10/11/2019 (Revision #2)*

*306008-6, Mica Particle*



308006 FDA_054.jpg
Mica Particle
Cal: 0.001429 µm/pix
17:21 9/3/2019
TEM Mode: Imaging
Microscopist: MG
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 drift frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

400 nm
HV=100kV
Direct Mag: 7200 x
AMA Analytical Services, Inc

*Diffraction Pattern from Mica Particle pictured above*



308006 FDA_056.jpg
Mica Particle
17:22 9/3/2019
TEM Mode: Diffraction
Microscopist: MG
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 drift frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

100 (1/Å)
HV=100kV
Cam Len: 0.2200 m
AMA Analytical Services, Inc

*Chemistry from Mica Particle pictured above*



*308006-6, Talc Fiber*



*Diffraction Pattern from Talc Fiber pictured above*



308006 FDA_058.jpg
Talc Fiber
17:28 9/3/2019
TEM Mode: Diffraction
Microscopist: MG
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 drift frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

100 (1/Å)
HV=100kV
Cam Len: 0.2200 m
AMA Analytical Services, Inc

*Chemistry from Talc Fiber pictured above*



Full scale counts: 235                    308006-6(3)

Re: FDA Office of Cosmetics & Colors
COC 308006-6, 6A,6B/D58, Revised 10/11/2019 (Revision #2)

308006-6, Talc Ribbon



308006 FDA_059.jpg
Talc Ribbon
Cal: 0.001774 μm/pix
17:37 9/3/2019
TEM Mode: Imaging
Microscopist: MG
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 drift frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

500 nm
HV=100kV
Direct Mag: 5800 x
AMA Analytical Services, Inc

Diffraction Pattern from Talc Ribbon pictured above



308006 FDA_060.jpg
Talc Ribbon
17:38 9/3/2019
TEM Mode: Diffraction
Microscopist: MG
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 drift frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

100 (1/Å)
HV=100kV
Cam Len: 0.2200 m
AMA Analytical Services, Inc

*Chemistry from Talc Ribbon pictured above*



*308006-6, Talc Fiber*



*Re: FDA Office of Cosmetics & Colors*
*COC 308006-6, 6A,6B/D58, Revised 10/11/2019 (Revision #2)*

*Diffraction Pattern from Talc Fiber pictured above*



308006 FDA_062.jpg
Talc Fiber
17:51 9/3/2019
TEM Mode: Diffraction
Microscopist: MG
Camera: NANOSPRT5, Exposure: 800 (ms) x 5 drift frames, Gain: 1, Bin: 1
Gamma: 1.00, No Sharpening, Normal Contrast

100 (1/Å)
HV=100kV
Cam Len: 0.2200 m
AMA Analytical Services, Inc

*Chemistry from Talc Fiber pictured above*



*Re: FDA Office of Cosmetics & Colors*
*COC 308006-6, 6A,6B/D58, Revised 10/11/2019 (Revision #2)*

**QC Discussion:**
During preparation, three blank control samples and one reference control sample were prepared. These samples were prepared alongside the customer samples. The blank samples were prepared using Sigma-Aldrich Talc Powder, <10 micron, and was analyzed by (b) (6) ▓▓▓▓▓▓ on September 18, 2019. No asbestos was detected on the blank samples. The reference sample was made from the same Sigma-Aldrich talc powder spiked with 10% Chrysotile. The reference sample was analyzed by (b) (6) ▓▓▓▓▓▓ on September 18, 2019 and found to be within acceptable limits. Additionally, filter blanks were prepared with each batch of carbon coated filters. Filter blank number EB-54155 was associated with the carbon coating for samples 308006-6, 6A, 6B/D-58. No asbestos was detected on the filter blank sample.

Our laboratory information management system (LIMS) randomly selected samples 308006-2/D-54 and 308006-15/D-67 for additional replicate QC analysis. Separate preparations were made for PLM and TEM analysis. The replicate QC analysis was performed by (b) (6) ▓▓▓▓▓ on September 13, 2019, 2019 for PLM analysis and by (b) (6) ▓▓▓▓▓ on September 18, 2019 for TEM analysis. The QC results matched the original analysis.

**Attachments:**
The following items are attached to this case narrative for your reference:
1) Sample Log-In Sheet
2) Daily PLM Scope Calibration Log
3) Refractive Index Oil Calibration Log
4) Daily TEM Scope Calibration Log
5) QC Results Summary
6) Replicate & Duplicate QC Chart for (b) (6) ▓▓▓▓▓▓▓▓ for samples analyzed between 1/1/2019 and 9/18/2019
7) Replicate & Duplicate QC Chart for (b) (6) ▓▓▓▓▓ for samples analyzed between 1/1/2019 and 9/18/2019
8) Replicate & Duplicate QC Chart for (b) (6) ▓▓▓▓▓▓ for samples analyzed between 1/1/2018 and 9/18/2019
9) Raw Data Sheets
    a. Gravimetric Data
    b. Filtration Worksheets
    c. PLM Analysis
    d. TEM Analysis
    e. QC Samples

I certify that all information contained in this report pertaining to laboratory events, procedures, and protocols is true and accurately describes the handling of this project by AMA Analytical Services, Inc. and its personnel.

_____        10/11/2019
Andreas Saldivar                          Date
Laboratory Director

# Exhibit B

$\mathcal{J}ohnson$ & $\mathcal{J}ohnson$

## CONSUMER INC.

June 20, 2018

U.S. Food and Drug Administration
Office of Cosmetics and Colors
Center for Food Safety and Applied Nutrition
5001 Campus Drive
College Park, MD 20740
ATTN:    Linda M. Katz, M.D., M.P.H, Director, Office of Cosmetics and Colors
         Acting Chief Medical Officer Center for Food Safety and Applied Nutrition
         Food and Drug Administration
         5001 Campus Drive, HFS-100
         College Park, MD 20740

Re: Recommendations for Talc Testing Experts

Dear Dr. Katz:

You have asked Johnson & Johnson to recommend talc testing experts for the workshop you intend to host later this year. FDA's involvement in assessing the safety of talc over the last four decades has been important and we look forward to the agency's continued involvement.

We include below recommendations for talc testing experts. Mr. Andreas Saldivar and Dr. Matthew Sanchez have extensive experience in the testing of talc for the presence of asbestos. Mr. Saldivar is employed by AMA Analytical Services, Inc. (AMA). Johnson & Johnson retained Mr. Saldivar in 2017 to testify as an expert on behalf of Johnson & Johnson in the talc litigation. Dr. Sanchez is employed by RJ Lee Group, Inc. (RJ Lee), a laboratory that has been providing consulting services and testing Johnson & Johnson's talc containing products since the late 1980s. Johnson & Johnson retained Dr. Sanchez in 2016 to testify as an expert on behalf of Johnson & Johnson in the talc litigation. Dr. Ann Wylie is a geologist employed by the University of Maryland. She has decades of experience in the study of asbestos. Dr. Wylie has worked briefly with Johnson & Johnson on talc issues, but has not been retained by Johnson & Johnson as an expert in the talc litigation. We have not contacted Dr. Wylie about assisting FDA in this process, but are happy to do so if it would be useful.

1.  Mr. Andreas Saldivar

Mr. Saldivar is the Laboratory Director and TEM Technical Director of AMA, the laboratory that conducted testing for asbestos, on behalf of FDA, in connection with the 2009-2010 survey of off-the-shelf talc products as well as raw talc from suppliers. Notably, Mr. Saldivar was the lead AMA analyst who actually conducted this testing on behalf of FDA. He is trained and experienced in asbestos analysis techniques including Transmission Electron Microscopy (TEM), Polarized Light Microscopy (PLM), and Phase Contrast Microscopy (PCM).

Page 1 of 3

JNJTALC000881982

Response to FDA Request for Recommendations Regarding Talc Testing Experts

Mr. Saldivar is engaged in professional associations including ASTM International – D22.07 Asbestos Sampling & Analysis Committee and the Environmental Information Association (EIA), where he served as Vice President and President of the EIA Mid-Atlantic Chapter from 2009 to 2015.

2.  Matthew S. Sanchez, Ph.D.

Dr. Sanchez is the Principal Investigator of RJ Lee, specializing in characterization of asbestos in raw materials and in building products and the development of asbestos analytical methods.  He has experience working with mine and quarry sites to identify the occurrences of asbestos and analyzing complex mixed mineral assemblages, such as talc, for asbestos.  He is trained and experienced in asbestos analysis techniques including polarized light microscopy (PLM), powder x-ray diffraction (XRD), x-ray fluorescence (XRF), scanning electron microscopy (SEM), transmission electron microscopy (TEM), and electron probe microanalysis (EPMA).

Dr. Sanchez is familiar with mandated or approved asbestos testing methods by the federal regulatory agencies, including the U.S. Environmental Protection Agency (EPA), U.S. Occupational Safety and Health Administration (OSHA), the National Institute of Occupational Safety and Health (NIOSH), and the U.S. Food and Drug Administration (FDA), as well as asbestos testing methods adopted and under consideration by standards setting bodies such as the U.S. Pharmacopeial Convention (USP), the American Society for Testing and Materials (ASTM), and the International Organization for Standardization (ISO).

He is involved in various committees on the analysis of talc and asbestos and has been appointed to the USP Talc Expert Panel.  Dr. Sanchez has authored or co-authored dozens of articles, including on the identification, characterization, and quantification of asbestos.

3.  Dr. Ann G. Wylie

Dr. Wylie is an Emerita Professor in the Department of Geology of the University of Maryland.  She has spent more than 30 years studying asbestos.

Dr. Wylie's research lab, Laboratory for Mineral Deposits Research (LMDR) was founded over 20 years ago by Dr. Wylie and other researchers.  She has done work for the federal government agencies including the U.S. Environmental Protection Agency (EPA) and the U.S. Bureau of Mines (USBM) analyzing and studying asbestos and the population characteristics of asbestos.  Dr. Wylie authored and co-authored dozens of articles on asbestos analysis and its mineralogical characteristics.

The curricula vitarum of the above three experts are attached.  Please note Dr. Wylie's curriculum vitae is from 2009, because a more recent copy was not publicly available.  If FDA would like additional recommendations, please let us know.  If you have any questions, please contact me at (609) 358-1193, or via email at jekuta@its.jnj.com.

JNJTALC000881983

Response to FDA Request for Recommendations Regarding Talc Testing Experts

Sincerely,

Jethro
Ekuta

Digitally signed by Jethro Ekuta
DN: c=US, o=JNJ, ou=Subscribers,
cn=Jethro Ekuta,
0.9.2342.19200300.100.1.1=1018932
Reason: I am the author of this document.
Date: 2018.06.20 13:15:24 -04'00'
Adobe Acrobat version: 11.0.20

Jethro Ekuta, D.V.M., Ph.D., RAC, FRAPS
Vice President, Regulatory Affairs North America
Johnson & Johnson Consumer Inc.
Mobile: (609) 358-1193

JNJTALC000881984



# AMA Analytical Services, Inc.

Focused on Results.



**NY ELAP**

---

## Andreas Saldivar

---

**Position:** President and Laboratory Director / Electron and Optical Microscopist

**Education:** B.S., Geology, University of Maryland, 1988

**Professional Experience:** AMA Analytical Services, Inc. (June 1989 – Present)

Mr. Saldivar is an advanced asbestos analyst with AMA Analytical Services, Inc.  He is trained and experienced in all types of asbestos analysis – Transmission Electron Microscopy (TEM), Polarized Light Microscopy (PLM), and Phase Contrast Microscopy (PCM).  He has analyzed thousands of PLM and TEM asbestos samples since joining the firm.  He is an industry expert on asbestos analytical procedures and methods.

As Laboratory Director, Mr. Saldivar is responsible for the overall operation of the laboratory.  He ensures that client deadlines are met, analysis is conducted in accordance with our laboratory's Standard Operating Procedures, QA/QC measures are met from a reporting standpoint, and laboratory accreditations are maintained.  He also assumes the role of the TEM Technical Director and is responsible for the overall performance of TEM asbestos samples in the laboratory

Finally, Mr. Saldivar works to develop internal laboratory preparation and analytical methods for difficult and non-standard matrices to allow AMA to provide more technically competent data.

**Special Training:** NIOSH 582 – "Sampling & Evaluating Airborne Asbestos Dust"
(August 1989)

McCrone Research Institute – "Microscopial Identification of Asbestos"
(September 1989)

Georgia Institute of Technology (GTRI) – " Advanced Transmission Electron Microscopy Asbestos Analysis"
(January 1990)

McCrone Research Institute – "Indoor Air Quality: Fungal Spore Identification"
(May 2005)

**Professional Associations:** ASTM International – D22.07 Asbestos Sampling & Analysis Committee

The Environmental Information Association  (EIA)

EIA Mid-Atlantic Chapter, Vice President 2009

EIA Mid-Atlantic Chapter, President Elect, 2010-2011

EIA Mid-Atlantic Chapter, President, 2012-2014

EIA Mid-Atlantic Chapter, Past President, 2014-2015

**Publications:** Saldivar, A., Soto, V., (2008), Asbestos in the United States: Occurrences, Use and Control

Saldivar, A., Soto, V., (2009), Arsenic: An Abundant Natural Poison

**Asbestos · Mold · Metals · Nano-Particles**

---

4475 Forbes Blvd. · Lanham, MD 20706 · (301) 459-2640/(800) 346-0961 · Fax (301) 459-2643 · www.amalab.com

JNJTALC000881985

# Exhibit C

**MISSOURI CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**
**ST. LOUIS CITY**

| | | |
|---|---|---|
| GAIL LUCILLE INGHAM AND ROBERT INGHAM, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1522-CC10417-01 |
| v. | ) ) | Division: 10 |
| | ) | |
| JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; AND IMERYS TALC AMERICA, INC., F/K/A LUZENAC AMERICA, INC., | ) ) ) ) ) ) | |
| Defendants. | | |

<u>**JOHNSON & JOHNSON DEFENDANTS' DISCLOSURE OF EXPERT TESTIMONY**</u>

COME NOW defendants Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc. (hereinafter "Johnson & Johnson Consumer Inc.") and Johnson & Johnson (collectively, the "Johnson & Johnson Defendants" or "Johnson & Johnson"), by and through their undersigned counsel of record, and submit the following Disclosure.

**I.      Retained Experts**

> **Emanuela Taioli, M.D., Ph.D.**
> **Institute for Translational Epidemiology**
> **Icahn Building**
> **1425 Madison Avenue**
> **Room 2-70A**
> **New York, NY 10029**

Dr. Taioli is designated as an expert in the areas of epidemiology generally and cancer epidemiology.  She may testify regarding epidemiology and how information regarding particular exposures and health outcomes is assessed, including study design, types of studies, and hierarchy of study types for assessing causation.  She may testify regarding the evaluation and interpretation of studies and the limitations associated with specific study designs.  She may

testify regarding the assessment of causation and the criteria that favor causation versus association or correlation.

Dr. Taioli may testify about the literature regarding the association between asbestos and health outcomes as well as cosmetic talc and health outcomes, based on epidemiology studies. She may also testify about alleged exposures to Johnson & Johnson products and any potential relationship between alleged exposures and health outcomes. She may testify about the role of other potential exposures or factors and health outcomes.

Dr. Taioli may testify regarding the scientific literature, documents, testimony or other materials produced or entered into evidence. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs. The witness's curriculum vitae will be provided to counsel electronically. The hourly rate for this witness's deposition testimony is $600.

**Gregory Diette, M.D.**
**1800 Orleans St.**
**Sheikh Zayed Tower**
**Baltimore, MD 21287**

Dr. Diette is designated as an expert in the areas of epidemiology of talc exposure, asbestos-related disease and other diseases which the Plaintiffs may allege and/or may have suffered from, analysis of Plaintiffs' alleged exposure to different minerals, and potential agents, discussion of the latency of exposure to asbestos and other potential agents, and discussion of the contribution of any alleged use of or exposure to Johnson & Johnson product(s), if any, to the alleged illnesses of the Plaintiffs, discussion of various models of risk versus time, duration, and extent of exposure, and other related topics. Dr. Diette may also discuss the literature concerning diagnosis of asbestos-related diseases and the carcinogenicity (or lack thereof) of talc or other

minerals in their various habits, including the literature related to talc millers and miners and pleurodesis patients.

Dr. Diette may also discuss the prognosis, risk of cancer of various forms, risk of progression, including but not limited to discussion of risk of cancer (or lack thereof) from various minerals in different habits, and risk factors of cancer.  He may also perform an analysis of Plaintiffs' home and work environment, work history, occupational history, including but not limited to discussion of the significance, intensity, and disease causing potential arising from alleged exposure to Johnson & Johnson products (if any) versus other types of exposure may also be discussed.  He may offer testimony on alternative causation, association of disease with work with or around asbestos-containing products, and the lack of any such association with work around or the use of talc.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $600.

> **Suresh Moolgavkar, Ph.D.**
> **Exponent, Inc.**
> **15375 SE 30th Place, Suite 250**
> **Bellevue, WA 98007**

Dr. Moolgavkar is designated as an expert in the areas of epidemiology generally and statistics and biostatistics in the context of epidemiology, including the statistical power of epidemiological studies.  Dr. Moolgavkar may discuss the science and basic principles of epidemiology, including the differences between case reports and the various types of epidemiological studies, the strengths and weaknesses of analytical and descriptive epidemiological studies, and the interpretation and trustworthiness of epidemiological studies.

The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs. The witness's curriculum vitae will be provided to counsel electronically. The hourly rate for this witness's deposition testimony is $750.

**Warner K. Huh, M.D.**
**UAB Woman's & Infants Center**
**619 19th Street South, Floor 10**
**Birmingham, AL 35233**

Dr. Huh is designated as an expert in the areas of gynecologic oncology and tumors of the female reproductive tract. Dr. Huh may testify generally about the diagnosis, treatment, and counseling of patients with ovarian cancer, the risk factors associated with and the potential causes of ovarian cancer, as well as the epidemiology pertaining to talc exposure and ovarian cancer. In addition, he may testify concerning his review of plaintiff medical records, including the plaintiff's specific diagnosis, clinical course, risk factors and potential causes of her disease. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs. The witness's curriculum vitae will be provided to counsel electronically. The hourly rate for this witness's deposition testimony is $550.

**Cheryl C. Saenz, M.D.**
**UC San Diego Health**
**Moores Cancer Center**
**3855 Health Sciences Drive**
**La Jolla, CA 92093**

Dr. Saenz is designated as an expert in the areas of gynecologic oncology and tumors of the female reproductive tract. Dr. Saenz may testify generally about the diagnosis, treatment, and counseling of patients with ovarian cancer, the risk factors associated with and the potential causes of ovarian cancer, as well as the epidemiology pertaining to talc exposure and ovarian

cancer.  In addition, she may testify concerning his review of plaintiff medical records, including the plaintiff's specific diagnosis, clinical course, risk factors and potential causes of her disease. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $1,200.

> **Paul DiSilvestro, M.D.**
> **Women & Infants Hospital,**
> **1 Blackstone Place**
> **Providence, RI 02905**

Dr. DiSilvestro is designated as an expert in the areas of gynecologic oncology and tumors of the female reproductive tract.  Dr. DiSilvestro may testify generally about the diagnosis, treatment, and counseling of patients with ovarian cancer, the risk factors associated with and the potential causes of ovarian cancer, as well as the epidemiology pertaining to talc exposure and ovarian cancer.  In addition, he may testify concerning his review of plaintiff medical records, including the plaintiff's specific diagnosis, clinical course, risk factors and potential causes of her disease.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $600.

> **Kevin Holcomb, M.D.**
> **Weill Cornell Medicine**
> **525 East 68th Street, Suite J-130**
> **New York, NY 10065**

Dr. Holcomb is designated as an expert in the areas of gynecologic oncology and tumors of the female reproductive tract.  Dr. Holcomb may testify generally about the diagnosis,

treatment, and counseling of patients with ovarian cancer, the risk factors associated with and the potential causes of ovarian cancer, as well as the epidemiology pertaining to talc exposure and ovarian cancer.  In addition, he may testify concerning his review of plaintiff medical records, including the plaintiff's specific diagnosis, clinical course, risk factors and potential causes of her disease.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $850.

> **Michael A. Finan, M.D.**
> **University South Alabama**
> **USA Mitchell Cancer Institute**
> **1660 Springhill Avenue**
> **Mobile, Alabama 36604**

Dr. Finan is designated as an expert in the areas of gynecologic oncology and tumors of the female reproductive tract.  Dr. Finan may testify generally about the diagnosis, treatment, and counseling of patients with ovarian cancer, the risk factors associated with and the potential causes of ovarian cancer, as well as the epidemiology pertaining to talc exposure and ovarian cancer.  In addition, he may testify concerning his review of plaintiff medical records, including the plaintiff's specific diagnosis, clinical course, risk factors and potential causes of her disease. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The witness charges $2,000 for the first 2 hours of time spent testifying at deposition and $500 an hour thereafter.

**Michael McHale, M.D.**
**UC San Diego Health**
**Moores Cancer Center**
**3855 Health Sciences Drive**
**La Jolla, CA 92093**

Dr. McHale is designated as an expert in the areas of gynecologic oncology and tumors of the female reproductive tract. Dr. McHale may testify generally about the diagnosis, treatment, and counseling of patients with ovarian cancer, the risk factors associated with and the potential causes of ovarian cancer, as well as the epidemiology pertaining to talc exposure and ovarian cancer. In addition, he may testify concerning his review of plaintiff medical records, including the plaintiff's specific diagnosis, clinical course, risk factors and potential causes of her disease. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs. The hourly rate for this witness's deposition testimony is $900.

**Robert Kurman, M.D.**
**The Johns Hopkins Hospital**
**401 N Broadway**
**Department of Pathology**
**Weinberg Bldg., Rm 2242**
**Baltimore, Maryland 21231**

Dr. Kurman is designated as an expert in the areas of gynecologic pathology and pathogenesis of ovarian cancers. Dr. Kurman may testify regarding the role and function of a pathologist in the diagnosis of disease, as well as the various techniques utilized by pathologists in the diagnosis of disease. He also may testify concerning the diagnosis and potential causes of the plaintiff's disease and his review of the pathology, cytology, medical records and related studies or analyses in this case. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not

7

limited to, testimony of witnesses offered by the Plaintiffs.  The hourly rate for this witness's deposition testimony is $500.

**Oluwole Fadare, M.D.**
**UC San Diego School of Medicine**
**Department of Pathology**
**9500 Gilman Dr**
**La Jolla, CA 92093**

Dr. Fadare is designated as an expert in the area of gynecologic pathology and pathogenesis of ovarian cancers.  Dr. Fadare may testify regarding the role and function of a pathologist in the diagnosis of disease, as well as the various techniques utilized by pathologists in the diagnosis of disease.  He also may testify concerning the diagnosis and potential causes of the plaintiff's disease and his review of the pathology, cytology, medical records and related studies or analyses in this case.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $500.

**Matthew Sanchez, Ph.D.**
**RJ Lee Group, Inc.**
**350 Hochberg Road**
**Monroeville, PA 15146**

Dr. Sanchez is designated as an expert in the areas of minerology and geology.  Dr. Sanchez may testify to methodologies and techniques for testing for the presence of asbestos, as well as for identification, characterization, and quantification of asbestos, and the history of those methods and techniques.  He may testify as to the types, uses and properties of talc and asbestos. He may testify on the testing of Johnson & Johnson talc products for asbestos, the constituents of those products, his own testing, including visits to and testing of talc mines, and his own testing

8

of samples from Plaintiffs, if any.

Dr. Sanchez may testify on the FDA's proposed regulation and testing methodology of talc for the presence of asbestos, as well as other governmental and industrial standards.  He may testify on the geological formation of talc and asbestos, the mineralogical content and geological formation of talc source mines, and the likelihood of contamination during the mining process.  He may testify on the geological differences in location for various fiber and mineral types, the mineralogy of specific mineral deposits, and the nature of minerals which make up different products, including, but not limited to, Johnson & Johnson's talc products and minerals.  He may offer testimony about studies concerning talc and other related research.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $500.

**Andreas Saldivar, Ph.D.**
**AMA Analytical Services, Inc.**
**4475 Forbes Boulevard**
**Lanham, MD 20706**

Dr. Saldivar is designated as an expert in the areas of minerology and geology.  He may testify to methodologies and techniques for testing for the presence of asbestos, as well as for identification, characterization, and quantification of asbestos, and the history of those methods and techniques.  He may testify as to the types, uses and properties of talc and asbestos.  Dr. Saldivar may testify on the testing of Johnson & Johnson talc products for asbestos, the constituents of those products, his own testing, and his own testing of samples from Plaintiffs, if any.

Dr. Saldivar may testify on the FDA's proposed regulation and testing methodology of

talc for the presence of asbestos, as well as other governmental and industrial standards.  He may testify on the geological formation of talc and asbestos, the mineralogical content and geological formation of talc source mines, and the likelihood of contamination during the mining process. He may testify on the geological differences in location for various fiber and mineral types, the mineralogy of specific mineral deposits, and the nature of minerals which make up different products, including, but not limited to, Johnson & Johnson's talc products and minerals.  Dr. Saldivar may offer testimony about studies concerning talc and other related research.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $350.

**Alan Andersen, MS, Ph.D.**
**196 Regal Sunset Avenue**
**Henderson, NV 89002**

Dr. Andersen will testify on the Cosmetic Ingredient Review Panel's review and safety assessment of talc as used in cosmetics, the FDA's regulation of talc and the potential warnings. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $695.

**Dana M. Hollins, MPH CIH**
**Cardno ChemRisk**
**101 2nd Street, Suite 700**
**San Francisco, CA 94105**

Ms. Hollins is designated as an expert in industrial hygiene, epidemiology, environmental and occupational exposure assessment and human health risk assessment.  Ms. Hollins may testify regarding the scientific methodology employed by industrial hygienists in connection with

the potential hazards associated with talc.  She may testify as to the state-of-the-art with respect to the evolution of knowledge in the field of industrial hygiene regarding the identification, evaluation and control of the hazards of asbestos.

Ms. Hollins' testimony may be used to establish the nature of Plaintiffs' alleged asbestos and/or heavy metal exposure.  She may testify on her assessment of causation (or lack thereof) between exposure to cosmetic talc and various health outcomes, including, without limitation, her assessment informed by the toxicology and epidemiology literature that has evaluated the carcinogenic potential of cosmetic talc.  She may also testify about the differences in health implications of asbestiform and non-asbestiform minerals, including cleavage fragments.  She may provide testimony regarding occupational and environmental exposure limits for talc and asbestos, including ACGIH threshold limit values and OSHA's PELs.  She may will testify about regulatory and public health agency views regarding the potential risk of disease associated with exposure to talc.   Ms. Hollins may discuss scientific studies relevant to Plaintiffs' alleged exposure to cosmetic talc, such as cosmetic talc mining or milling cohorts.  She may provide testimony regarding bulk testing of talc from various sources, as well as monitoring and specifications for cosmetic talc.

Ms. Hollins may provide an estimate of potential cumulative exposure to talcum powder that may have been experienced by Plaintiffs, and compare that estimate to a "no-effect exposure" for asbestiform tremolite-related neoplasms or malignancies or to cumulative lifetime exposures to ambient asbestos.  She may also testify about airborne asbestos or talc concentrations related to bystander and secondary take-home exposure and the minimal risk associated with such exposure.  She may discuss ambient air exposure to asbestos and the sources of ambient air asbestos exposure, and opine that these exposures, if any, are not harmful or hazardous.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $375.

11

**Scott Phillips, MD, FACP, FACMT, FAACT**
**Newfields Environmental Engineering**
**PO Box 13250**
**Burton, WA 98013**

Mr. Phillips is designated as an expert in the area of medical toxicology.  Mr. Phillips is expected to testify in areas that include causation evaluation, toxicology, human health risk assessment, and epidemiology.  Mr. Phillips' testimony may be used to establish the nature of Plaintiffs' alleged asbestos and/or heavy metal exposure.   He may relate the exposure information, if any, to relevant epidemiological literature pertaining to talc and asbestos exposure demonstrating risk factors for various asbestos-related diseases.  Mr. Phillips also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $425.

**Michael Peterson, MEM, DABT**
**Gradient**
**600 Stewart Street Suite 1900**
**Seattle, WA 98101**

Mr. Peterson is designated as an expert in the areas toxicology, specializing in evaluating the toxicity of inhaled fibers, particles, and gases, human health risk assessment, critical analysis of human and animal toxicology and epidemiology studies, and multimedia assessment of exposure to chemicals.  Mr. Peterson's testimony may be used to establish the nature of Plaintiffs' alleged asbestos and/or heavy metal exposure and the significance of fiber type to Plaintiffs' alleged asbestos exposure.  Mr. Peterson is expected to testify in areas that include causation evaluation, toxicology, human health risk assessment, and epidemiology.   He may relate the exposure information, if any, to relevant epidemiological literature pertaining to talc and asbestos exposure demonstrating risk factors for various asbestos-related

12

diseases.  Mr. Peterson also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.   The hourly rate for this witness's deposition testimony is $350.

**Michael Aschner, Ph.D.**
**Albert Einstein College of Medicine**
**Jack and Pearl Resnick Campus**
**1300 Morris Park Avenue**
**Forchheimer Building, Room 209**
**Bronx, NY 10461**

Dr. Aschner is designated as an expert in the areas of toxicology and heavy metal exposure.  Dr. Aschner is designated to rebut or respond to the opinions of Plaintiffs' experts or any non-retained treating physicians that involve or relate to Dr. Aschner's areas of expertise, generally and as to any plaintiff.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.   The hourly rate for this witness's deposition testimony is $500.

**Laurie C. Haws, Ph.D., DABT**
**ToxStrategies, Inc.**
**9390 Research Blvd**
**Suite 100**
**Austin, TX 78759**

Dr. Haws is designated as an expert in the areas of toxicology, human health risk assessment, risk communication, and scientific and regulatory policy.  She may testify on the potential health risks associated with exposures to a wide variety of chemicals and metals present in personal care products.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not

13

limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $275.

> **Nadia Moore, Ph.D., DABT, ERT**
> **Veritox, Inc.**
> **18372 Redmond Way**
> **Redmond, WA 98052**

Dr. Moore is designated as an expert in the areas of toxicology, risk assessment, and the causation of disease.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $600.

> **Daniel Labow, M.D.**
> **Mount Sinai Hospital**
> **1470 Madison Avenue**
> **3rd Floor**
> **New York, NY 10029**

Dr. Labow is designated as an expert in the areas of surgical oncology and peritoneal mesothelioma.  Dr. Labow is designated to rebut or respond to the opinions of Plaintiffs' experts or any non-retained treating physicians that involve or relate to Dr. Labow's areas of expertise, generally and as to any plaintiff.  Dr. Labow may testify generally about the diagnosis, treatment, and counseling of patients with peritoneal mesothelioma and the risk factors associated with and the potential causes of peritoneal mesothelioma.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.  The witness's curriculum vitae will be provided to counsel electronically.  The rate for this witness's deposition testimony is $4,250 per half-day or $8,500 per day.

14

**M. Laurentius Marais, MS, Ph.D.**
**William E. Wecker Associates, Inc.**
**270 E. Simpson Ave**
**P.O. Box 1010**
**Jackson, WY 83001-1010**

Dr. Marais is designated as an expert in the area of statistics and the uses of biostatistical and epidemiological methods to draw conclusions from data. Dr. Marais may provide testimony in response to the opinions, methodology, and conclusions provided by experts retained by other parties. He may also testify concerning the statistical significance of past testing and so-called representative sampling of talc. Dr. Marais may also answer population and case-specific hypothetical questions regarding statistical analysis of the likelihood of exposure generally to talcum powder and products allegedly containing asbestos. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs. The witness's curriculum vitae will be provided to counsel electronically. The hourly rate for this witness's deposition testimony is $700.

**Rachel Maines, Ph.D.**
**26 Dart Drive**
**Ithaca NY 14850**

Dr. Maines is designated as an expert on the history of industrial standards concerning talc and asbestos and will testify on the same. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs. The witness's curriculum vitae will be provided to counsel electronically. The hourly rate for this witness's deposition testimony is $550.

**Stanley J. Geyer, MD**
**Geyer Pathology Services, LLC**
**3 Willow Farms Lane**
**Pittsburgh, PA 15238**

Dr. Geyer is designated as an expert in the area of pathology.  He may testify regarding the role and function of a pathologist in the diagnosis of disease as well as the various techniques utilized by pathologists in the diagnosis of disease.   He also may testify regarding the pathological aspects of asbestos-related diseases.  Dr. Geyer may testify about tissue digestions generally as well as any specific tissue digestions he may conduct in connection with this case. Dr. Geyer may testify concerning his review of medical records, pathology materials and other diagnostic studies in this case.  Dr. Geyer may testify regarding general asbestos medicine, the epidemiology of asbestos diseases, the criteria for diagnosis of asbestos-related disease, as well as the existence of a dose response relationship between exposure to asbestos and asbestos-related diseases. He may testify on the carcinogenic potency of different types of asbestos fibers. The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.   The witness's curriculum vitae will be provided to counsel electronically.  The hourly rate for this witness's deposition testimony is $600.

## II.  Fact/Expert Witnesses

The following are fact witnesses being disclosed herein to the extent any of their testimony may be considered expert opinion testimony.

**Susan Nicholson, M.D.**
**Vice President of Safety Surveillance and Risk Management**
**Office of Consumer Medical Safety**
**Johnson & Johnson Consumer**

Dr. Nicholson is a fact witness and is also designated as an expert who may testify regarding an assessment of causation (or lack thereof) between exposure to cosmetic talc and

16

various health outcomes.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.

**John Hopkins, B.Sc., Ph.D.**
**The Elms, Oxford Rd**
**Chieveley, Newbury**
**RG20 8RT, United Kingdom**

Dr. Hopkins is a fact witness and is also designated as an expert in the areas of toxicology.  He also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.

**Don Hicks**
**3729 Windridge Dr.**
**Doylestown, PA 18902**

Mr. Hicks is a fact witness designated as an expert in the area of talcum powder testing for asbestos, including the analysis and interpretation of those test results, the reliability of those results, and why reliance on certain test methods, results, and testing entities is reasonable from a company perspective.  He also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.

17

**Brooke Mossman, Ph.D.**
**University of Vermont College of Medicine**
**Department of Pathology**
**139 Beaumont Ave., Given Bldg.**
**Burlington, VT 05405**

Dr. Mossman is fact witness qualified as an expert to discuss her own research and any potential misstatements of her work, to the extent they arise in this case.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.

III.    **Non-Retained Experts**

**John Bailey Ph.D.**
**EAS Consulting Group, LLC**
**1700 Diagonal Road, Suite 750**
**Alexandria, VA 22314**

Dr. Bailey is an expert on the FDA's authority, policy, and procedures generally, including as it relates to actual/proposed regulation and testing methodology of talc for the presence of asbestos, as well as other governmental and industrial standards, and may testify on the same.  This includes, without limitation, the role of the CTFA/PCPC in the cosmetics industry and the setting of industry standards.  Dr. Bailey may further testify regarding the work that has gone into the FDA's consistent conclusion that talc was never a public health concern warranting action by the FDA, including the FDA's testing and review of relevant research.  The witness also may be asked to respond to the testimony and documents of certain witnesses offered at the time of trial or in deposition, including, but not limited to, testimony of witnesses offered by the Plaintiffs.

IV.   **Other Parties' Experts**

**Imerys Experts**

Johnson & Johnson incorporates Defendant Imerys Talc America, Inc.'s expert witness disclosures, together with all written reports, opinions contained therein, and curricula vitae.

**Plaintiffs' Experts**

Johnson & Johnson reserves the right to elicit, under the adverse witness rule, or otherwise, by way of cross-examination or direct examination, expert opinions from any individuals designated by Plaintiffs. By designating Plaintiffs' experts, Johnson & Johnson in no way acknowledges or accepts their qualifications as experts. Johnson & Johnson specifically reserves the right to challenge each of these witnesses' qualifications and/or opinions.

V.   **Treating Healthcare Providers**

In addition to the experts identified above, Johnson & Johnson reserves the right to rely upon the statements of Plaintiffs' treating healthcare providers as set forth in their medical records and deposition testimony. Thus, in addition to the experts identified above, Johnson & Johnson may call Plaintiffs' health care providers, including, but not limited to, the following providers attached in Exhibit A to these disclosures.

The treating healthcare providers may testify regarding the treatment of the Plaintiffs, as well as their diagnoses and prognoses. Their opinions and impressions concerning these matters and the basis of same are set forth in the medical records of the plaintiffs and the depositions of such treating healthcare providers, which are incorporated herein. Though Johnson & Johnson designates these healthcare providers and/or custodians, Johnson & Johnson specifically reserves the right to challenge each of these witnesses' qualifications and/or opinions.

VI.   **Rebuttal/Impeachment Witnesses**

In addition to the witnesses identified above, Johnson & Johnson reserves the right to call

expert witnesses or elicit expert testimony for rebuttal or impeachment. Johnson & Johnson cannot reasonably anticipate at this time whether rebuttal witnesses will be required. If Johnson & Johnson determines that rebuttal testimony will be needed, it will supplement this designation as necessary.

## **RESERVATIONS**

1.      Johnson & Johnson reserves the right to supplement, modify, or delete from this listing, including, without limitation, as warranted by: further discovery; the rulings of this Court or any other court decisions that may affect the scope of evidence in this trial; in the event Plaintiffs alter or amend their witness list; generic or case specific opinions expressed by Plaintiffs' experts after the date of this filing, including amended opinions.

2.      Johnson & Johnson reserves the right to elicit and offer, by way of direct examination, cross-examination, deposition testimony or medical records testimony, opinion testimony from any and all experts designated or called by other parties to this suit.

3.      Johnson & Johnson reserves the right to call and solicit opinion testimony from any and all healthcare providers involved in the assessment, care, and treatment of Plaintiffs.

4.      Johnson & Johnson reserves the right to strike any depositions and/or withdraw any designated experts prior to trial.

5.      Johnson & Johnson maintains the right to full protection of all consulting expert witnesses as provided for by the Missouri Rules of Civil Procedure, Supreme Court Rules, Rules of Evidence, Local Rules and applicable case law prohibiting Plaintiffs from using any deposition or portions thereof of any consulting expert not chosen by Johnson & Johnson to be called as an expert witness to give testimony at trial.

6.      Johnson & Johnson expressly reserves, and does not waive, any right it may have under the Missouri Rules of Civil Procedure, Supreme Court Rules, Rules of Evidence, Local

Rules and applicable case law to object to Plaintiffs calling defense experts or eliciting certain expert testimony from defense experts, even though said experts may have been listed in this document and are deposed by the Plaintiffs.

7.      Johnson & Johnson expressly reserves the right to call and elicit testimony from any and all witnesses identified in answers to interrogatories and/or any and all fact witnesses disclosed in deposition testimony.

8.      The above is not intended as a complete listing of any witness's expected testimony and is not intended as a substitute for deposition testimony.

9.      Johnson & Johnson reserves the right to call un-designated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of evidence against Defendants.

10.      Johnson & Johnson reserves the right to withdraw or de-designate any expert prior to testimony and to positively aver that such previously designated expert will not be called as a witness at trial and to re-designate that expert as a consulting expert who cannot be called by opposing counsel.

11.      Johnson & Johnson reserves the right to offer amended and/or supplemental expert opinions based on new and/or updated medical records, deposition testimony and/or information, new information relative to the talc litigation, literature, and/or scientific studies related to talc, asbestos, heavy metals, contaminants, ovarian cancer, or this litigation.

12.      Johnson & Johnson reserves the right to supplement or update the references considered and/or relied upon by the experts identified including, without limitation, in order to respond to new, amended, or supplemental opinions offered by Plaintiffs experts and to address newly available literature or information.

13.      All witnesses may testify about their skill, knowledge, experience, training and

education in their respective fields; the relevant medical and scientific literature, techniques, and methods of their fields; and the description and nature of their practice.  They may testify about their publications, presentations, research, and all matters detailed in their respective curriculum vitae.  They may testify based on facts or data perceived by or made known to them at or before trial.  They may testify in rebuttal to the matters opined on by experts in their respective fields or subjects testifying for the defense, whether global or case-specific.   They may employ demonstrative and visual aids.

14.     While Plaintiffs have designated Frederick Pooley, Ph.D. as a non-retained expert witness, it is Johnson & Johnson's position that he is a fact witness whose deposition was only intended to elicit fact testimony.  Johnson & Johnson may offer Dr. Pooley's fact testimony by video at trial, but objects to Plaintiffs' designation of Dr. Pooley as an expert witness and reserves its right to object to Plaintiffs' improper questioning beyond the scope of that testimony.

Date:  March 19, 2018                              Respectfully submitted,


/s/  Mark C. Hegarty
Mark C. Hegarty, #40995
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mhegarty@shb.com

*Attorney for Johnson and Johnson and Johnson and Johnson Consumer Companies, Inc., now known as Johnson & Johnson Consumer Inc.*

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2018, a true and correct copy of the foregoing document was served upon the following via electronic mail:

Eric D. Holland
R. Seth Crompton
Patrick R. Dowd
HOLLAND LAW FIRM
300 N. Tucker Blvd., Suite #801
Saint Louis, Missouri, 63101
314-241-8111 - Telephone
314-241-5554 - Facsimile
eholland@allfela.com
scrompton@allfela.com
pdowd@allfela.com

W. Mark Lanier
Richard D. Meadow
THE LANIER LAW FIRM, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022
212-421-2800 - Telephone
212-421-2878 - Facsimile
WML@lanierlawfirm.com
Richard.Meadow@LanierLawFirm.com

Lee A. Cirsch
Michael A. Akselrud
THE LANIER LAW FIRM, PC
10866 Wilshire Blvd., #400
Los Angeles, CA 90024
310-277-5100 - Telephone
310-277-5103 - Facsimile
Lee.Cirsch@lanierlawfirm.com
Michael.Akselrud@lanierlawfirm.com

Thomas K. Neill
GRAY, RITER & GRAHAM, P.C.
701 Market Street, Suite 800
St. Louis, MO  63101-1826
314-241-5620
314-241-4140 – Fax
tneill@grgpc.com

*Attorneys for Plaintiffs*

Mary Anne Mellow
Mark A. Prost
SANDBERG PHOENIX & VON GONTARD P.C.
600 Washington Avenue – 15th Floor
St. Louis, MO 63101
Telephone: 314.446.4226
mmellow@sandbergphoenix.com
mprost@sandbergphoenix.com

Nancy M. Erfle
GORDON & REES LLP
121 SW Morrison St., Ste. 1575
Portland, OR 97204
Telephone: 503.222-1075
Facsimile: 503.616-3600
nerfle@gordonrees.com

**Attorneys for Imerys Talc America, Inc.**

/s/ Mark C. Hegarty
*Attorney for Johnson and Johnson and Johnson and Johnson Consumer Companies, Inc., now known as Johnson & Johnson Consumer Inc.*