**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

This Document Relates to:

Melissa Parsons and Terry Lee Parsons,

v.

Johnson & Johnson,
Johnson & Johnson Consumer, Inc.
f/k/a Johnson & Johnson Consumer
Companies, Inc. and
Pikeville Radiology, PLLC

Civil Case No. 3:19-cv-21967-FLW

MDL No. 2738

3:16-md-02738-FLW-LHG

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND**
**AND REQUEST FOR HEARING AND ORAL ARGUMENT**

Come the Plaintiffs, Melissa Parsons and Terry Parsons, by counsel, and for their

Memorandum in Support of Motion to Remand, state as follows.

**I.       Introduction and Relief Requested**

This case is brought by a Kentucky woman[1] who developed ovarian cancer as a result of

her use of defective talcum powder made and sold by the Johnson & Johnson Defendants ("J&J")[2].

Plaintiffs' damages because of J&J were exacerbated by negligently delayed diagnosis of the

cancer by Kentucky defendant Pikeville Radiology, PLLC ("Pikeville Radiology").

---

[1] The woman is Plaintiff Melissa Parsons. Her husband, Plaintiff Terry Parsons, has also asserted a loss of consortium claim arising out of his wife's injury.
[2] The Johnson & Johnson Defendants include Johnson & Johnson and Johnson & Johnson Consumer Inc. f/k/a Johnson & Johnson Consumer Companies Inc.

1

Plaintiffs are citizens of Kentucky and Defendant Pikeville Radiology is also a citizen of Kentucky. See Dkt. #1-1 at 3, ¶¶2-3 (alleging Plaintiffs are Kentucky residents), id. at 5, ¶15 (alleging Pikeville Radiology is a Kentucky limited liability corporation). Plaintiffs thus brought a single action in Pike Circuit Court, Commonwealth of Kentucky, joining both J&J and Pikeville Radiology as Defendants under Kentucky Rule of Civil Procedure ("CR") 20.01.  Plaintiffs sought a single finding of damages and apportionment of the responsibility and obligation for Plaintiffs' damages among all Defendants, both diverse and nondiverse, as mandated by Kentucky Revised Statutes ("KRS") 411.182.

J&J removed the case to the Eastern District of Kentucky. Dkt. #1. J&J did not dispute that Pikeville Radiology is a citizen of Kentucky for subject matter jurisdiction purposes. See Dkt. #1 at ¶¶1-39 (no allegation that Pikeville Radiology is anything but a Kentucky citizen). Even so, in its notice of removal, J&J argues that diversity can be created in this case under the doctrine of "fraudulent **mis**joinder" or by severing Pikeville Radiology as a party. J&J's reliance on alleged fraudulent misjoinder and proposed sever-and-partial-remand remedy are inappropriate for the following reasons:

1.      In this case, there is no fraudulent joinder, there is no allegation of fraudulent joinder, and there is no argument that the claims against Pikeville Radiology are not viable. J&J in turn did not base removal on fraudulent joinder.  And "fraudulent **mis**joinder" has not been adopted by the Third Circuit or by this Court (or even the Sixth Circuit for that matter[3]). *See In Re Plavix Product Liability and Marketing Litigation*, 2014 U.S. Dist. LEXIS 142910, 2014 WL

---

[3] *See Estate of Owens v. E.I. Dupont De Nemours & Co.*, Case No. 12-111-DLB, 2013 U.S. Dist. LEXIS 189836, at *20 (E.D. Ky) (Bunning, J.) ("the Court refuses to recognize the doctrine of fraudulent misjoinder unless and until it is formally adopted by the Sixth Circuit.").

4954654 (D.N.J. 2014). *See also Burgman v. Costco*, 2019 U.S.Dist. LEXIS 222928, 2019 WL 7373010 (D.N.J. 2019).

2.      Even if fraudulent misjoinder were available in this federal circuit, J&J has failed to prove that the claims in this case have been "fraudulently misjoined," as each Defendant is responsible for a portion of Plaintiffs' exacerbated damages related to the ovarian cancer she developed as a result of J&J's defective products, each Defendant raises defenses of comparative and third-party fault for plaintiffs' injuries, and KRS 411.182 requires a single determination of damages and fault apportionment among all parties. As such, the claims were properly joined as mandated by KRS 411.182 and otherwise allowed by CR 20.1 and Fed. R. Civ. P. ("FRCP") 20(a)(2).

3.      J&J's request to sever-and-remand the claims against Pikeville Radiology pursuant to FRCP 21 should be rejected because neither the Third Circuit nor this Court have adopted the doctrine of fraudulent misjoinder, even if they did, they would then use a FRCP 20 and "egregious" standard analysis to determine fraudulent misjoinder. Moreover, this Court does not have subject matter jurisdiction to make a discretionary severance decision, which is better left to the state court. Finally, severance would unfairly prejudice Plaintiffs, but in no way prejudice J&J or Pikeville Radiology.

When J&J filed its Notice of Removal, it failed to also timely "file in the district court … a copy of all process, pleadings, and orders served upon such defendant or defendants in such action," as required by 28 U.S.C. § 1446(a).

II.     **Background Facts**

A.     **Substantive Factual Allegations**

The following is a summary of the substantive facts of the case, as alleged in Plaintiffs' operative First Amended Complaint. See Dkt. 1-1, at 1-73.

1.     Melissa Parsons was born in April 1971. She and her husband Terry Parsons are residents of Pike County, Kentucky.

2.     Mrs. Parsons had Johnson's Baby Powder administered to her pelvis from age 0-4 (from 1971-1975). She started perineal uses herself, including for vaginal dusting and on sanitary napkins, beginning at age 11 (in 1982) until January 2019. She also used Shower to Shower from 1989-1995. Beginning at age 11 she would use the PRODUCTS two times per day, and 5-6 times per day when menstruating. Conservatively, she used the PRODUCTS for over 40 years and over 30,000 individual applications.

3.     For decades, she purchased and used the PRODUCTS in Kentucky. She used the them in accordance their instructions for use and in a manner reasonably foreseeable to J&J.

4.     On November 12, 2018, Mrs. Parsons presented to the Emergency Department at Pikeville Medical Center with various complaints, including right side pain. An emergency room physician ordered a CT scan of her abdomen and pelvis, which she had on November 12, 2018. The CT scan was of diagnostic quality, with multiple images being obtained.

5.     The November 12, 2018 CT scan of Mrs. Parsons' abdomen and pelvis was read, interpreted, and reported on by Dr. Kendall, of Pikeville Radiology. Dr. Kendall also prepared a formal report setting forth his findings and interpretation of the CT scan for Mrs. Parsons' other medical providers at Pikeville Medical Center to use and rely upon in their treatment, diagnosis, and recommendations for Mrs. Parsons.

6.      In the November 12, 2018 CT scan report, Dr. Kendall reported that "[t]here is mild basilar atelectasis. There is a small amount of free peritoneal fluid.  There is no evidence of free air.  There are no acute gastrointestinal abnormalities identified.  The patient is status post cholecystectomy.  The unenhanced solid abdominal organs demonstrate no evidence of acute abnormality.  There is a 2.9 x 2.4 cm left adnexal cystic mass and a 1.7 x 1.9 cm right adnexal cystic mass." Dr. Kendall's Impression was "[m]ild basilar atelectasis.  Small amount of free peritoneal fluid.  Bilateral adnexal cystic masses. These may represent ovarian cysts.  Recommend follow-up ultrasound in 6-8 weeks to confirm resolution."

7.      In reliance upon Dr. Kendall's findings and the CT scan report, the PMC Emergency Department diagnosed Mrs. Parsons with a "cyst, unspecified ovary, other," and also told Mrs. Parsons that the cyst was a "benign ovarian cyst," "benign means noncancerous," and "[m]ost ovarian cysts require no treatment and disappear on their own within a few months."

8.      The CT scan's images of Mrs. Parsons' abdomen and pelvis do reveal bilateral low-density adnexal masses most consistent with bilateral ovarian cysts.  However, there is also a constellation of imaging findings worrisome for metastatic disease, including fluid overlying the liver and within the pelvis and areas of inflammatory stranding of the omentum and mesentery of the adjacent bowel loops within the pelvis. There are also scattered areas of omental thickening elsewhere within the abdomen, most conspicuous in the left side of the abdomen.  Dr. Kendall failed to appreciate these findings during his interpretation of the CT scan.  Dr. Kendall failed to communicate these findings in the CT scan report relied upon by the other providers at PMC.  As a direct and proximate result of these failures, on November 12, 2018, Mrs. Parsons was told she had only a "benign ovarian cyst."

9.      On or about January 13, 2019, Mrs. Parsons returned to the PMC Emergency Department with various complaints, including tearing abdominal pain, 20-30 pounds of unintended weight loss over the last couple of weeks, nausea, vomiting, diarrhea, back pain, dysuria, and dark red blood in stools. She subsequently underwent a second CT scan of the abdomen and pelvis, which revealed progression of metastatic disease including large right pleural effusion, increased abdominal ascites, and increased omental metastatic disease.

10.     In light of the second CT scan findings, Mrs. Parsons's doctors diagnosed her with "carcinomatosis" and immediately scheduled her to see a surgical oncologist in Pikeville. That doctor was "worried that she may have extension of disease into pleural space." A doctor in Lexington confirmed by pathology, on January 16, 2019, that Mrs. Parsons had metastatic adenocarcinoma. On January 29, 2019, an oncologist in Pikeville, Kentucky, diagnosed Stage IV metastatic ovarian cancer, for which she is now undergoing treatment.

11.     Dr. Kendall, and thus Pikeville Radiology, failed to recognize and report the omental metastatic disease which was causing the pelvic fluid and small right pleural effusion. This deviated from the normal standard of care in failing to timely recognize and diagnose the constellation of findings as metastatic disease. Said deviation from the normal standard of care by Dr. Kendall was a substantial contributing factor in causing a delay in diagnosis of Mrs. Parsons' ovarian cancer. The delay caused Mrs. Parsons to suffer various injuries and damages, including but not limited to aggravation and worsening of her cancer condition, severe and extreme emotional distress and mental anguish, increased and continued pain and other symptoms, making her cancer more difficult to treat, loss of enjoyment of life, increased fear of cancer recurrence and death, an increased likelihood of future complications also initiating and resulting in additional severe and serious mental distress, and also increased physical and mental pain and suffering,

bodily harm, disfigurement, medical expenses, lost wages, future impairment, destruction of power to labor and earn money, and miscellaneous other expenses, harms and losses, all past, present and future. The delay also caused Mr. Parsons to suffer past, present, and future deprivation of the services, assistance, aid, society, companionship, and relations of his wife.

12.     Mrs. Parsons's original development of ovarian cancer was a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder, the main ingredients of Johnson's Baby Powder and Shower to Shower, and J&J's wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the PRODUCTS.

13.     Mrs. Parsons's development of ovarian cancer, because of the defective nature of J&J's products, has caused her various injuries and damages, including but not limited to severe and extreme physical and mental pain and suffering, emotional distress and mental anguish, bodily harm, disfigurement, medical expenses, lost wages, future impairment, permanent impairment, destruction of power to labor and earn money, loss of enjoyment of life, increased likelihood of future complications, and miscellaneous other expenses, harms and losses, all past, present and future. Again, the ovarian cancer also caused Mr. Parsons the past, present, and future consortium loss, as described above.

Put briefly, Mrs. Parsons's product claims against J&J are for causing the ovarian cancer that she ultimately discovered. Mrs. Parsons's malpractice claim against Pikeville Radiology is for delaying diagnosis of that cancer, causing her additional pain and damages and a poorer prognosis. At trial, the jury must decide the total value of the damages from the exacerbated ovarian cancer and the percentage of fault for that amount that should be borne by J&J (for causing it) versus Pikeville Radiology (for making it worse) as mandated by KRS 411.182.

### B.  Procedural History

Plaintiffs brought suit in Pike Circuit Court on August 1, 2019. Dkt. 1-1 at 58-68. Plaintiffs amended their complaint to add claims against J&J on August 6, 2019. Dkt. 1-1 at 2-57.

Pikeville Radiology filed its answer to the First Amended Complaint on August 21, 2019. See Dkt. 8-1, Liska (Plaintiffs' counsel) Declaration attaching Pikeville Radiology's Answer that was not included with J&J's Notice of Removal.   In its Answer, Pikeville Radiology raised defenses that implicate J&J's conduct. Pikeville Radiology alleged that plaintiffs' damages "were caused and brought about by the actions and//or inactions of some third party[.]" Id. at ¶25. It also alleged "negligent acts or omissions by third parties/liable persons or entities as defined in KRS 411.182," and demanded that any damages award "must be reduced by the percentage of fault to be apportioned to those third parties/liable persons or entities." Id. at ¶26.

Johnson & Johnson Consumer, Inc. was served on August 14, 2019.  Dkt. 1-1 at 69. Johnson & Johnson was served on August 19, 2019.  Dkt. 1-1 at 75. J&J answered the First Amended Complaint two weeks later on September 3, 2019. Dkt. 1-1 at 78. J&J also raised defenses implicating Pikeville Radiology. J&J alleged plaintiffs' damages were caused by "intervening or superseding events … for which [J&J is] not liable." Dkt. 1-1 at 102 (Seventh Defense). J&J also alleged plaintiffs' damages were "barred … in part by the actions, omissions and/or conduct of third parties over whom Defendants had no control or authority[.]" Id. at 119 (Sixth Defense).

Both Defendants raised Plaintiffs' alleged fault in their Answers. Pikeville Radiology alleged "comparative negligence" of Plaintiffs. Dkt. 8-1 at ¶27. J&J raised the issue in several different ways. See Dkt. 1-1 at 101 (Fourth Defense: "assumption of the risks"); id. at 103 (13th

Defense: "failure to mitigate any damages"); id. at 120 (17th Defense: "contributory or comparative negligence … and … fault"); Id. at 105-106 (23rd Defense: "fault of plaintiff").

In other words, the First Amended Complaint and the Answers each Defendant filed to that complaint raise numerous questions of law and fact common to all defendants. Each defendant claimed Plaintiffs' "damages" were caused by some other third party, superseding, and/or intervening event, and pre-existing medical conditions implicating the other defendant, in their Answers. J&J also raised as a defense set-off for damages caused by any other tortfeasor. Pikeville Radiology specifically argues apportionment pursuant to "KRS 411.182 [and that] any award of damages must be reduced by the percentage of fault to be apportioned to those third parties/liable persons or entities." Each defendant also raised Plaintiffs' alleged fault as affirmative defenses in their Answers.

Under these circumstances, Kentucky law requires a joint trial, even in cases involving products liability claims:

(1) In all tort actions, including products liability actions, involving fault of more than one (1) party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share

of the obligation to each claimant in accordance with the respective percentages of fault[.]

KRS 411.182.   Otherwise, Plaintiffs could be the victim of a potentially absurd result wherein the Defendants in their separate federal and state trials blame the empty chair and each jury ends up apportioning 100% of Plaintiffs' damages to the empty chair. This would leave Plaintiffs with nothing even though separate juries ultimately believe both empty chair defendants are 100% responsible for Plaintiffs' damages.

J&J removed this action to the Eastern District of Kentucky on September 13, 2019. Dkt. 1.  As noted above, J&J did not include Pikeville Radiology's Answer[4] with its Notice of Removal filings. Id.; Dkt. 8-1. More than thirty days after it was served with the First Amended Complaint, after being called out on it by Plaintiffs, J&J later filed Pikeville Radiology's Answer with a supplemental filing on October 7, 2019. Dkt. 10.

This case was transferred to this Court as part of MDL 2738 and opened in the District of New Jersey as Case No. 3:19-cv-21967 on December 27, 2019. Dkt. 22.

### III.   Evidence Relied Upon

Plaintiffs rely on the documents and pleadings on file herein.

### IV.   Argument and Authority

#### A.   Applicable Law.

As a preliminary matter, as an MDL court sitting within the Third Circuit, this District Court must apply the Third Circuit's standards. *McBride v. Johnson & Johnson, et.al.,* MDL 2738, Civil Action No.: 16-7891 (FLW), 2017 WL 4570289 at 3. In the Third Circuit:

> The defendant seeking to remove the matter bears the burden of showing that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and

---

[4] J&J also did not include a consent to removal from Pikeville Radiology with its Notice of Removal filings. Dkt. 13. Pikeville Radiology did later file, more than 30 days after the notice of removal,  a consent to removal in the Eastern District of Kentucky proceedings.

(3) removal was proper. 28 U.S.C. §§ 1441, 1446, 1447; *Boyer v. Snap–on Tools Corp*., 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). After a case has been removed, the district court, however, may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c).

In cases where subject matter is based on diversity jurisdiction, *see* 28 U.S.C. § 1332, each party must be of diverse citizenship from each other and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a); *Grand Union Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). Additionally, Section 1441(b)(2) imposes an added condition on removal known as the "forum defendant rule," which provides that an "action otherwise removable solely on the basis of [diversity] jurisdiction ... may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." "Therefore, the forum defendant rule prohibits removal based on diversity where a defendant is a citizen of the forum state—the state in which the plaintiff originally filed the case." 7 *In Re Plavix Prod. Liab. & Mktg. Litig.*, 2014 WL 4954654, at *3 (citing *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 90 n.3 (3d Cir. 1999)).

*McBride* at 3-4.

The statute that provides for federal subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332(a)(1), requires "complete diversity between all plaintiffs and all defendants." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (*citing Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806)). "The right to remove a case from a state to a federal court is purely statutory and its scope and the terms of its availability therefore are entirely dependent on acts of Congress." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3721 (Rev. 4th ed.) (*citing Martin v. Hunter's Lessee*, 14 U.S. 304, 1 Wheat. 304, 4 L. Ed. 97, 1816 WL 1721 (1816) (Story, J)). "The time, the process, and the manner," of removal "must be subject to its absolute legislative control." *Martin*, 14 U.S. at 349.

"Federal courts should strictly construe the general removal statute and resolve doubts in favor of remand." 14C Fed. Prac. & Proc. Juris. § 3721. This is because "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they

scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Id*. (*quoting Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. at 100, 108-109 (1941).

### B.   Neither the Third Circuit nor this District Court have adopted the doctrine of fraudulent misjoinder.

An exception to the "forum defendant rule" is the doctrine of fraudulent joinder wherein "the diverse defendant[s] may still remove the action if [they] can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *In re Briscoe*, 448 F.3d 201, 215–16 (3rd Cir. 2006). However, to make this showing, "the removing party carries a heavy burden of persuasion." *Batoff v. State Farm Ins. Co*., 977 F.2d 848, 851 (3d Cir. 1992). In this case, knowing it could not meet its "heavy burden" and that Pikeville Radiology was not fraudulently joined, J&J did not base removal on the doctrine of fraudulent joinder. Instead, J&J asserts that Pikeville Radiology was "fraudulently *mis*joined" in order to try to side-step the necessity of complete diversity.

However, neither the Third Circuit nor this Court have adopted the doctrine of fraudulent misjoinder. *See In Re Plavix Product Liability and Marketing Litigation*, 2014 U.S. Dist. LEXIS 142910, 2014 WL 4954654 (D.N.J. 2014). *See also Burgman v. Costco*, 2019 U.S.Dist. LEXIS 222928, 2019 WL 7373010 (D.N.J. 2019). In the words of Honorable Freda L. Wolfson:

> [T]here are considerable reasons against adopting the fraudulent misjoinder doctrine. Conducting fraudulent misjoinder analysis in this case necessarily requires the Court to wade into a thorny thicket of unsettled law; indeed, disagreements exist as to numerous questions about the doctrine, and "the last thing the federal courts need is more procedural complexity." In fact, these unresolved issues have raised significant doubt in the context of remand. Absent a Third Circuit directive, this Court declines to adopt the fraudulent misjoinder doctrine. As a matter of policy, this approach is prudent in light of the Third Circuit's well-settled principle that the removal statutes should be strictly construed, and all doubts regarding the propriety of removal are to be resolved in favor of remand. Moreover, "creating a new doctrine having the effect of expanding the removability of state court cases that, on their face, do not fall within the limited jurisdiction of the federal courts is neither wise nor warranted." Indeed, doing so would contravene

the circuit court's instruction to narrowly construe the removal statutes. . . .

*In Re Plavix Product Liability and Marketing Litigation* at 10.

Other courts agree with Judge Wolfson. For example, *see Rutherford v. Merck & Co., Inc*., 428 F. Supp. 2d 842, 852 (S.D. Ill. 2006) (finding that removal statutes are to be narrowly construed and the doctrine of fraudulent misjoinder would impermissibly expand the jurisdiction of the federal courts and providing a list of cases that reach this conclusion). The doctrine has created "enormous judicial confusion" because of unsettled question about its proper application, which frustrates the longstanding policy that jurisdictional rules are to be clear, predictable, and easy to use. *Id*.  It would be an "exceptionally weird and pernicious intrusion by federal courts into matters properly of state concern" if they analyzed whether parties were properly joined under state law in order to exercise federal jurisdiction. *Id*. at 854.  *See also Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004) (rejecting fraudulent misjoinder because "the last thing the federal courts need is more procedural complexity").

Even if the Third Circuit and this Court had adopted the doctrine of fraudulent misjoinder, they would then invoke Federal Civil Procedure Rule 20 and employ a two-step analysis. *Lipson v. Metro Corp. Holdings, Inc*., 2019 U.S. Dist. LEXIS 107773, 2019 WL 2636081 (D.N.J. 2019) at 4-5.  In *Lipson*, the Court explained:

Under the more novel fraudulent misjoinder doctrine, Federal Civil Procedure Rule 20 is invoked, and a two-step analysis employed.

Rule 20(b) provides:

Persons . . . may be joined in one action as defendants if:
(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).

For the two-step analysis, a court must (1) determine whether the claims were misjoined under Fed. R. Civ. P. 20, and then (2) determine whether the joinder was egregious. *Breitner v. Merck & Co., Inc.*, 2019 U.S. Dist. LEXIS 11457, 2019 WL 316026, at *3 (D.N.J. 2019) (citing *Welsh v. Merck Sharpe & Dohme Corp. (In re Fosamax Prods. Liab. Litig.)*, No. 2243, 2012 U.S. Dist. LEXIS 48114, at *19 (D.N.J. 2012)).

The joinder of Pikeville Radiology satisfies FRCP 20. As noted above, Plaintiffs have asserted claims against all of the Defendants, both diverse and nondiverse, jointly, severally, and also arising out of the same occurrence or series of occurrences, and questions of law and fact common to all Defendants will arise in the action. Each claim ultimately arises out of Mrs. Parsons' development of ovarian cancer as a result of being exposed to J&J's products. As the First Amended Complaint and Answers make clear, there are numerous common questions of fact: the cause and extent of the Parsons' damages, whether Plaintiffs contributed to their injuries, and whether and how any damages should be apportioned among the Defendants.

Moreover, FRCP 20(a) speaks to "series of . . . occurrences." The series of occurrences here include causation of ovarian cancer over decades of talcum powder use and then exacerbation of the cancer by delayed diagnosis. J&J concedes that Plaintiffs seek to hold J&J and Pikeville Radiology jointly and severally liable for the damages for which they are both responsible. Each Defendant is responsible for a portion of Plaintiffs' exacerbated damages related to the ovarian cancer she developed as a result of J&J's defective products, each Defendant raises defenses of comparative and third-party fault for Plaintiffs' injuries, and KRS 411.182 requires a single determination of damages and fault apportionment among all parties. As such, the claims were properly joined as mandated by KRS 411.182 and otherwise within the meaning of both Kentucky's CR 20.1 and FRCP 20(a)(2). J&J cannot show the claims were misjoined under FRCP 20.

J&J particularly cannot show the joinder was "egregious."  J&J cannot even show what it means to be egregious in the Third Circuit because the Third Circuit has neither adopted the doctrine of fraudulent misjoinder nor defined "egregious."

There is no dispute that "complete diversity" is lacking. J&J cannot simply disregard the citizenship of non-diverse Defendant Pikeville Radiology to create federal diversity jurisdiction. There is no argument that the claims against Pikeville Radiology are non-viable, the Third Circuit and this Court have not adopted the "fraudulent misjoinder" doctrine, and Pikeville Radiology has been properly joined.

And it would unfairly prejudice Plaintiffs (but not J&J) to litigate this case as two separate cases. Plaintiffs would potentially face the absurd result of recovering nothing even though separate juries each apportion 100% of the responsibility for Plaintiffs' damages to each of the empty chair Defendants pursuant to KRS 411.182 as discussed elsewhere herein. Even if fraudulent misjoinder were available in the Third Circuit, J&J cannot show that the claims in this case were misjoined, much less egregiously.

**C.    J&J cannot use Rule 21 severance to conjure diversity jurisdiction where none exists.**

J&J raises the alternative argument that Pikeville Radiology can just be severed to ***create*** diversity jurisdiction. A defendant cannot "conjure diversity jurisdiction where none exists simply by 'dropping' a named defendant." *Smith v. Am. Med. Sys., Inc*., Case No. 2:09-cv-168-TMP, 2009 WL 10688480, at *4–6 (N.D. Ala. Aug. 25, 2009), adopted, 2009 WL 10688481 (N.D. Ala. Sept. 25, 2009). "Federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." Id. at 1213-1214 (*quoting Brown v. Endo Pharms., Inc.*, 38 F.Supp.3d 1312, 1326 (S.D. Ala. 2014) (collecting cases)). This would be "an improper end-run around the Court's rejection of the fraudulent misjoinder doctrine." *Hampton v. Insys*

*Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1214 n.10 (D. Nev. 2018). This is because "a defendant lacking "the proper jurisdictional key with which to open the doors of federal court" cannot rely on Rule 21 severance as a surreptitious means "to climb in the window." *Id. (quoting Perry v. Norwest Fin'l Ala., Inc.*, Case No. Civ. A 98-0260-CB-C, 1998 WL 964987, at \*2 (N.D. Ala. Dec. 9, 1998)).

The *Hampton* court explained that use of Rule 21 severance turns the burdens normally involved in removal on their heads. "Unlike the heavy burden that applies to establishing jurisdiction on removal, a defendant 'could succeed on a Rule 21 motion on a far lesser standard simply by appealing to the court's discretion.' " *Id*. at 1214 (*quoting Rouse v. State Farm Mut. Auto. Ins. Co*., Case No. 1:14-cv-690, 2015 WL 3849648, at \*5 (M.D.N.C. June 22, 2015)). Thus, *Hampton* concluded: "The better approach is to have such severance arguments addressed to, and adjudicated by, the state court." *Id*.

Even when a party can be severed under Rule 21, the "authority to dismiss a dispensable nondiverse party . . . should be exercised sparingly." *See e.g. Johnson v. Bartley*, CV 15-56-ART, 2015 WL 5612251, at \*2 (E.D. Ky. Sept. 21, 2015) (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837-8). Courts must "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation" before severing them. Id.

The appropriate standard, prejudice to "any of the parties in the litigation," shows why severance is inappropriate here. Foremost among these is that Mrs. Parsons is very sick. Severance would subject her to multiple discovery and evidence depositions. Worse, delay caused by being transferred to the MDL could mean that she does not live to go to trial against J&J. Plaintiffs mean absolutely no disrespect to MDL courts which go to great lengths and do a wonderful and perhaps

thankless job of managing very large numbers of diverse cases among competing interests. But the reality of MDL litigation for Mrs. Parsons is that:

> [A]s compared to the processing time of an average case, MDL practice is slow, very slow. See Christopher J. Roche, A Litigation Association Model to Aggregate Mass Tort Claims for Adjudication, 91 Va. L.Rev. 1463, 1469 (2005) ("[D]elay is a common feature of mass tort litigation. Resolution of cases may take years, in some cases effectively precluding plaintiffs from any meaningful recovery."). Despite the assumption that "transfer and consolidation will promote judicial efficiency which will result in convenience to the parties and witnesses", Stanley J. Levy, Complex Multidistrict Litigation and the Federal Courts, 40 Fordham L.Rev. 41, 47 (1971), the purported "efficiency gains of consolidated trial are not supported by reality", Benjamin W. Larson, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*: Respecting the Plaintiff's Choice of Forum, 74 Notre Dame L.Rev. 1337, 1364 (1999).

*DeLaventura v. Columbia Acorn Tr.*, 417 F. Supp. 2d 147, 150 (D. Mass. 2006). "MDL practice actively encourages retention even of trial-ready cases in order to 'encourage' settlement." Id. at 152. And this practice "sharply skews" MDL settlements in favor of defendants:

> Once trial is no longer a realistic alternative, bargaining shifts in ways that inevitably favor the defense. After all, a major goal of nearly every defendant is to avoid a public jury trial of the plaintiff's claims. Fact finding is relegated to a subsidiary role,[] and bargaining focuses instead on ability to pay, the economic consequences of the litigation, and the terms of the minimum payout necessary to extinguish the plaintiff's claims. Commentators generally agree that MDL practice favors the defense.

*Id*. at 155-155 (footnotes omitted).

Keeping a case in the MDL just for the sake of collecting cases is not a reason to use severance to create diversity jurisdiction.  *See e.g. Freitas v. McKesson Corporation*, 889 F.Supp.2d 931 (E.D.Ky. 2012).  In *Freitas*, the Court rejected the alternative "severance" argument J&J makes, holding:

> The defendants contend that severance is appropriate in this case because "[m]aintaining as many claims as possible in the MDL serves the purposes for which the MDL was established: for the convenience of the parties and witnesses, and in order to promote the just and efficient conduct of the litigation." [MDL Record No. 1528, p. 17] That is the extent of their argument, and it is unconvincing.

*Id.* at 944.

Thus, in this case, and particularly due to Mrs. Parsons's condition, MDL litigation will not benefit Mrs. Parsons. It will harm her case and jeopardize her ability to participate in her trial. And decisions on dispensability are highly context-sensitive. They "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests[.]" *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968).

Severance would also put Plaintiffs in a position in which they may not achieve full recovery due to the empty-chair defenses each Defendant has raised. KRS 411.182 and its rules regarding apportionment and damages mandate a single damages finding, apportionment of fault to empty chairs, and damages awards "in accordance with the findings". KRS 411.182(2)-(3). This means Plaintiffs could see all fault apportioned to J&J in the severed state case but to Pikeville Radiology in federal court. It is prejudicial to put Plaintiffs in that danger when fault should and must (according to KRS 411.182) be apportioned to both Defendants. *See e.g. Larue v. Volkswagon Grp. of Am. Inc*., 2017 U.S.Dist. LEXIS 81185; 2017 WL 2312480 (wherein the defendant removed based on alleged fraudulent joinder and asked the court to dismiss the claim against the nondiverse defendant). *Larue* held it would be wholly inappropriate under KRS 411.182 to dismiss the nondiverse defendant because of the empty chair predicament that would then be faced by plaintiff. *Id.* at 11-12.

Severance would also subject the Plaintiffs to the expense of two trials rather than one which should also be considered in combination with the other factors already described in this case. And severing would make it harder for Pikeville Radiology to discover facts necessary for its empty chair defense against J&J. Pikeville Radiology will not get the benefit of the MDL. In

other words, Pikeville Radiology will not be prejudiced by remanding the case, as a whole, to state court.

J&J will certainly suffer no prejudice if severance is denied. In fact, as noted in the case above, J&J could have sought severance in Pike Circuit Court. *See also Handshoe v. DePuy Synthes Sales, Inc.*, 2019 U.S. Dist. LEXIS 145057, at *8-9 (E.D.Ky.) ("fraudulent misjoinder is a solution without a problem. Rather, 'the problem that the fraudulent misjoinder doctrine is designed to address can ordinarily be resolved by having the state court rule on the propriety of the joinder in the  first instance, and permitting removal if the parties and claims are severed into two or more cases, at least one of which is clearly removable.'") (citation omitted).  If J&J's arguments were strong enough, it then could have removed the case without any question as to diversity. Instead, it removed the case before establishing diversity. The balance of prejudice in this case weighs against severance.

As noted above, if the Court does not have subject matter jurisdiction, it cannot rule on discretionary procedural issues such as whether to sever under FRCP 21. Importantly, no federal rule, even FRCP 21, can expand the subject matter jurisdiction of the federal courts. See FRCP 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts."); *Lincoln Property v. Roche*, 546 U.S. 81, 90 (2005) (holding that FRCP 19 addresses "party joinder, not federal subject-matter jurisdiction.").

In *Owens, supra*, the removing defendants made the same request J&J makes here. They asked to sever the medical defendants even though there had been no showing of fraudulent joinder or misjoinder, and the properly joined defendants were not completely diverse. *Id*. at *22-23. The Court rejected the request, finding that "this approach exceeds the authority of the federal courts."

*Id.* at *23. Specifically, the Court found that the proposed approach put the procedural "cart" before the jurisdictional "horse":

> If the Court were to decide a procedural issue without first assuring that it has jurisdiction over the case, it would effectively put the proverbial cart before the horse. Federal courts are vested with limited jurisdiction circumscribed by the provisions of Article III of the Constitution and Acts of Congress. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). "[T]he issue of subject matter jurisdiction is threshold to the court's authority to invoke its jurisdiction to proceed with an action." Stone v. William Beaumont Hosp., 782 F.2d 609, 613 n. 3 (6th Cir. 1986). This requirement "springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (internal citations omitted). It would be improper for the Court to take any action in a case over which it does have jurisdiction with the sole purpose of creating jurisdiction.

*Id.* at *23. This analysis applies without qualification to this case.

### D.   The removal notice violated 28 U.S.C. § 1446(a) because it did not contain a copy of Pikeville Radiology's Answer to Plaintiffs' First Amended Complaint.

Moreover, J&J has failed to scrupulously follow the precise requirements of the removal statute, 28 U.S.C. § 1446. The first provision of that statute required J&J to file, "together with" its notice of removal, "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). J&J did not do so. Specifically, J&J did not file a copy of Pikeville Radiology's Answer to Plaintiff's First Amended Complaint with its initial removal documents.[5] See Dkt. 1-1 (Answer not provided). That Answer was "served upon such defendant." See Dkt. 8-1 at 7-8 (Certificate of Service shows service on August 21, 2019, on both "Johnson & Johnson" and "Johnson & Johnson Consumer, Inc."). Thus, J&J failed to comply with the requirements set out by Congress for removal.  J&J did try to correct this failure after it was

---

[5] As noted above, greater than thirty days after it was served with the First Amended Complaint, J&J later filed Pikeville Radiology's Answer with a supplemental filing on October 7, 2019. Dkt. 10.

pointed out by Plaintiffs in their earlier memorandum filed herein. However, by that point, the horse had already left the barn.

Although some courts have excused the failure to file documents as required by §1446(a), this Court should not excuse that removal here. Excusing this omission would be a failure to "scrupulously confine" this Court's jurisdiction to "the precise limits" of the method for securing removal jurisdiction that Congress has explicitly defined. *See Shamrock*, 313 U.S. at 100. Put differently, if the "manner" of removal is to be subject to Congress's "absolute legislative control," *Martin*, 14 U.S. at 349, then federal courts must treat all of the statute's requirements seriously. Ignoring certain requirements mandated by Congress is the same as reading those requirements out of the statute. This Court should not do so.

Moreover, this is an omission of consequence. The document that J&J chose to omit from the state court record is the one that sets out the affirmative defenses that show that the Defendants were appropriately joined. Specifically, these affirmative defenses help show that the claims against J&J and Pikeville Radiology involve common questions of law and fact. See FRCP 20 and CR 20 ("All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."). J&J's only basis for removal in its notice is that Pikeville Radiology was fraudulently misjoined or should be severed. It omitted a key document necessary to evaluate that claim, contrary to the explicit requirement of §1446(a).

## V.    <u>Conclusion</u>

For the reasons set forth above, Plaintiffs respectfully request the Court to remand this action to the Pike Circuit Court. Plaintiffs also respectfully request the Court to set this matter for hearing and oral argument in the event the Court is not inclined to immediately remand this matter.

Respectfully submitted,

GARY C. JOHNSON, P.S.C.

By:    <u>/s/ Michael E. Liska</u>
Gary C. Jonson
Michael E. Liska
Brittany Deskins Johnson
GARY C. JOHNSON, P.S.C.
110 Caroline Avenue
P. O. Box 231
Pikeville, Kentucky 41501
Telephone: (606) 437-4002
Facsimile: (606) 437-0021
gary@garycjohnson.com
mliska@garycjohnson.com
brittany@garycjohnson.com
*Co-Counsel for Plaintiffs*

-and-

Richard H. Friedman
Peter J. Mullenix
Friedman Rubin, PLLP
1109 1st Avenue
Suite 501
Seattle, Washington 98101
Telephone: (206) 501-4446
Facsimile: (206) 623-0794
RFriedman@friedmanrubin.com
PMullenix@friedmanrubin.com
*Co-Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of January, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicate on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that I served the foregoing on the following via either electronic mail or United States First Class Mail this the 17th day of January, 2020:

Clayton L. Robinson
Jonathan D. Weber
Robinson & Havens, PSC
101 Prosperous Place
Suite 100
Lexington, KY  40509
**Counsel for Defendant,**
**Pikeville Radiology, PLLC**

Carol Dan Browning
Stites & Harbison, PLLC - Louisville
400 W. Market Street
Suite 1800
Louisville, KY 40202
**Counsel for Defendant,**
**Johnson & Johnson and**
**Johnson & Johnson Consumer Inc.**
f/k/a Johnson & Johnson Consumer Companies Inc.

Zachary Myers VanVactor
Stites & Harbison, PLLC - Louisville
400 W. Market Street
Suite 1800
Louisville, KY 40202
**Counsel for Defendant,**
**Johnson & Johnson and**
**Johnson & Johnson Consumer Inc.**
**f/k/a Johnson & Johnson Consumer Companies Inc.**

Scott A. James
Shook Hardy & Bacon, LLP
600 Travis Street, Suite 3400
Houston, TX 77002-2926
**Counsel for Defendant,**
**Johnson & Johnson and**
**Johnson & Johnson Consumer Inc.**
**f/k/a Johnson & Johnson Consumer Companies Inc.**

 /s/ Michael E. Liska
***Co-Counsel for Plaintiffs***