## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELISSA PARSONS, et al., | |
| Plaintiffs, | Case No: 3:19-cv-21967-FLW-LHG |
| v. | |
| JOHNSON & JOHNSON, et al., | |
| Defendants. | |

―――――――――――――――――――――――――

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

―――――――――――――――――――――――――

DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

120835082.1

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................4

ARGUMENT......................................................................................................5

I.    THE PTI ENTITIES ARE CITIZENS OF GEORGIA AND
      FLORIDA, NOT MISSOURI. ..................................................................7

II.   PTI UNION SHOULD BE DISREGARDED IN DETERMINING
      WHETHER THERE IS COMPLETE DIVERSITY OF
      CITIZENSHIP. ..........................................................................................9

III.  THE COURT SHOULD DISMISS THE CLAIMS OF THE SEVEN
      PLAINTIFFS WHO ARE NOT DIVERSE FROM THE
      REMAINING DEFENDANTS FOR LACK OF PERSONAL
      JURISDICTION. ......................................................................................19

      A.    The J&J Defendants And PTI Royston Are Not Subject To
            General Jurisdiction In Missouri. ..................................................20

      B.    The J&J Defendants And PTI Royston Are Not Subject To
            Specific Jurisdiction In Missouri As To The Claims Of The
            Seven Plaintiffs Who Are Not Diverse From the Remaining
            Defendants. ....................................................................................27

CONCLUSION ................................................................................................35

120835082.1

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Algiers Development District v. Vista Louisiana, LLC*,
 No. 16-16402 SECTION S, 2017 U.S. Dist. LEXIS 4672
 (E.D. La. Jan. 12, 2017) .............................................................................. 8

*Aronis v. Merck & Co.*,
 No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485
 (E.D. Cal. May 3, 2005) ................................................................ 12, 13, 17

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................... 10

*Ashton v. Florala Memorial Hospital*,
 No. 2:06cv226-ID (WO), 2007 U.S. Dist. LEXIS 38164
 (M.D. Ala. May 24, 2007) .......................................................................... 21

*Badon v. R J R Nabisco Inc.*,
 224 F.3d 382 (5th Cir. 2000) ..................................................................... 11

*Baker v. LivaNova PLC*,
 210 F. Supp. 3d 642 (M.D. Pa. 2016) ........................................................ 26

*Batoff v. State Farm Insurance Co.*,
 977 F.2d 848 (3d Cir. 1992) ...................................................................... 10

*Bernstein v. Stiller*,
 No. 09-659, 2013 WL 3305219 (E.D. Pa. June 27, 2013) ........................... 6

*Berousee v. Janssen Research & Development, LLC*,
 No. 3:17-cv-00716-DRH, 2017 U.S. Dist. LEXIS 157619
 (S.D. Ill. Sept. 26, 2017) ........................................................................... 32

*BNSF Railway Co. v. Tyrrell*,
 137 S. Ct. 1549 (2017) ........................................................................... 3, 19

ii

*In re Briscoe*,
    448 F.3d 201 (3d Cir. 2006) ................................................................10, 11

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S. Ct. 1773 (2017) ........................................................................passim

*Campana v. American Home Products Corp.*,
    No. 1:99cv250 MMP, 2000 WL 35547714 (N.D. Fla. Mar. 7, 2000) ..........15

*Carey v. Sub Sea International, Inc.*,
    211 F.3d 594, 2000 WL 329367 (5th Cir. 2000) ......................................... 6

*In re Chocolate Confectionary Antitrust Litigation*,
    674 F. Supp. 2d 580 (M.D. Pa. 2009) .........................................................23

*Cortina v. Bristol-Myers Squibb Co.*,
    No. 17-cv-00247-JST, 2017 WL 2793808
    (N.D. Cal. June 27, 2017) ...........................................................................32

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...........................................................3, 19, 20, 22

*Devon Robotics, LLC v. DeViedma*,
    798 F.3d 136 (3d Cir. 2015) ........................................................................ 6

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability
    Litigation*,
    294 F. Supp. 2d 667 (E.D. Pa. 2003) .........................................................15

*Dubose v. Bristol-Myers Squibb Co.*,
    No. 17-cv-00244-JST, 2017 WL 2775034
    (N.D. Cal. June 27, 2017) ...................................................................32, 33

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010) ..................................................25, 26

*Flake v. Schrader-Bridgeport International, Inc.*,
    No. 3:07-0925 et al., 2010 U.S. Dist. LEXIS 23951
    (M.D. Tenn. Mar. 15, 2010) .......................................................................23

120835082.1

*GBForefront, L.P. v. Forefront Management Group, LLC*,
    888 F.3d 29 (3d Cir. 2018).............................................................................. 8

*In re Hechinger Investment Co. of Delaware*,
    335 F.3d 243 (3d Cir. 2003)........................................................................... 5

*Jinright v. Johnson & Johnson, Inc.*,
    No. 4:17CV01849 ERW, 2017 WL 3731317
    (E.D. Mo. Aug. 30, 2017) ...................................................................passim

*Keithly v. Mocadlo*,
    No. 4:16 CV 1892 JMB, 2017 U.S. Dist. LEXIS 60899
    (E.D. Mo. Apr. 21, 2017) .............................................................................21

*Leadford v. Bull Moose Tube Co.*,
    No. 15-cv-13565, 2016 WL 4089130 (E.D. Mich. Aug. 2, 2016)..........22, 23

*Legg v. Wyeth*,
    428 F.3d 1317 (11th Cir. 2005).....................................................................11

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015)..........................................................................6, 7

*In re Lipitor Antitrust Litigation*,
    722 F. App'x 132 (3d Cir. 2018)..................................................................24

*Lopienski v. Centocor, Inc.*,
    No. 07-4519 (FLW), 2008 WL 2565065 (D.N.J. June 25, 2008)................10

*McBride v. Johnson & Johnson*,
    No. 16-7891(FLW), 2017 WL 4570289 (D.N.J. Oct. 12, 2017)............10, 11

*Mid American Title Co. v. Transnation Title Insurance Co.*,
    332 F.3d 494 (7th Cir. 2003).........................................................................26

*Miller v. Native Link Construction, LLC*,
    No. 15-1605, 2017 WL 3536175 (W.D. Pa. Aug. 17, 2017)........................20

*Missouri v. Jenkins*,
    515 U.S. 70 (1995)........................................................................................33

*In re Plavix Product Liability & Marketing Litigation*,
    MDL No. 3:13-cv-2418-FLW,
    2014 WL 4954654 (D.N.J. Oct. 1, 2014) ....................................................15

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*,
    MDL No. 2385, 2013 U.S. Dist. LEXIS 24313
    (S.D. Ill. Feb. 22, 2013) ............................................................................12

*Prominent GmbH v. Prominent Systems, Inc.*,
    No. 2:16-cv-01609, 2017 U.S. Dist. LEXIS 54078
    (W.D. Pa. Apr. 10, 2017) ...................................................................passim

*RAE Systems, Inc. v. TSA Systems, Ltd.*,
    No. C 04-2030 FMS, 2005 WL 1513124 (N.D. Cal. June 24, 2005) ..........24

*Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*,
    415 F. App'x 432 (3d Cir. 2011) ...............................................................10

*Ross v. Citifinancial, Inc.*,
    344 F.3d 458 (5th Cir. 2003) .....................................................................11

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) .................................................................................. 5

*Salisbury v. Purdue Pharma, L.P.*,
    166 F. Supp. 2d 546 (E.D. Ky. 2001) ........................................................12

*Salt Lake Tribune Publishing Co. v. AT&T Corp.*,
    No. 2:00-CV-936-ST, 2002 U.S. Dist. LEXIS 27804
    (D. Utah Mar. 27, 2002) ...........................................................................26

*Samson v. Allis-Chalmers Products Liability Trust*,
    CIV. A. No. 90-0139, 1990 WL 87394 (E.D. Pa. June 21, 1990) ................ 8

*Schubel v. Lampland*,
    No. 13-1426 (PAM/JSM), 2013 WL 5787881 (D. Minn. Oct. 28, 2013)...... 8

*Sinochem International Co. v. Malaysia International Shipping Corp.*,
    549 U.S. 422 (2007) .................................................................................. 5

v

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)......................................................................20

*In re Syngenta Mass Tort Actions*,
    No. 3:16-cv-00255-DRH, 2017 WL 2117728 (S.D. Ill. May 15, 2017).......33

*Taggart v. Morgan Stanley ABS Capital I Inc. Trust 2007-HE2*,
    No. 16-62, 2016 U.S. Dist. LEXIS 100130 (E.D. Pa. Aug. 1, 2016) ..........11

*U.S. Bank National Association v. Polyphase Electric Co.*,
    No. 10-4881 (DWF/LIB), 2011 WL 3625102
    (D. Minn. Aug. 17, 2011)............................................................................ 8

*Wagner v. Cruz*,
    662 F. App'x 554 (10th Cir. 2016)............................................................. 5

*Williams v. National Credit Adjusters, LLC*,
    No. 4:14-CV-267-CAS, 2014 WL 5823457 (E.D. Mo. Nov. 10, 2014)........ 8

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017)...................................................................21

## STATE CASES

*Blanks v. Fluor Corp.*,
    450 S.W.3d 308 (Mo. Ct. App. 2014) ........................................................24

*Collet v. American National Stores, Inc.*,
    708 S.W.2d 273 (Mo. Ct. App. 1986) ........................................................24

*Estate of Fox v. Johnson & Johnson*,
    539 S.W.3d 48 (Mo. Ct. App. 2017) .........................................................27

*M.M. ex rel. Meyers v. GlaxoSmithKline LLC*,
    61 N.E.3d 1026 (Ill. App. Ct. 2016)..........................................................33

120835082.1

**INTRODUCTION**

Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. ("JJCI"), formerly known as Johnson & Johnson Consumer Companies, Inc. (collectively, the "J&J defendants") respectfully request that the Court deny plaintiffs' motion to remand this action to state court.

In a patent attempt at forum-shopping, 70 plaintiffs from 22 different states (none a Missouri resident or citizen) joined their claims together and brought suit in Missouri state court, naming as defendants not only Johnson & Johnson and JJCI but also PTI Union and PTI Royston. Plaintiffs' bid for remand fails because: (1) PTI Union is fraudulently joined; and (2) the seven plaintiffs who are not diverse from the remaining defendants should be dismissed from the case for lack of personal jurisdiction.

Plaintiffs argue otherwise, claiming that two defendants – PTI Union, LLC and PTI Royston, LLC (together, "the PTI entities") – are citizens of Missouri, making removal from a Missouri state court improper. In fact, removal was proper because: (1) the PTI entities are not Missouri citizens; (2) PTI Union is fraudulently joined; and (3) personal jurisdiction over the remaining defendants is

lacking with respect to the claims of all plaintiffs whose citizenship would defeat complete diversity.[1]

***First***, the evidence in the record makes clear that the PTI entities are citizens of Florida and Georgia – not Missouri.  As set forth below, each of these entities is an LLC, and the citizenship of an LLC is controlled by the citizenship of its members.  The members of these entities are trusts, and each trust's citizenship is controlled by the citizenship of its trustees.  As of June 2018 – before this case was filed – the trustees at issue are citizens of Georgia and Florida.  As a result, plaintiffs' allegation that the PTI entities are Missouri citizens for diversity purposes is simply false.

***Second***, regardless of its citizenship, the claims against PTI Union should not be considered for purposes of assessing jurisdiction because no plaintiff alleges that she purchased a product manufactured by that defendant.  PTI Union briefly manufactured one JJCI product, Shower to Shower Shimmer Effects ("Shimmer Effects"), and there is no allegation that any plaintiff ever purchased Shimmer Effects, much less that any plaintiff was sufficiently exposed to that product that it could have been a cause of her injury.  Plaintiffs contend that their allegations –

---

[1]     Defendants do not address personal jurisdiction with respect to the claims of the remaining plaintiffs because doing so is not relevant to the analysis of subject-matter jurisdiction here.  However, defendants preserve their objections with respect to personal jurisdiction as to those other plaintiffs until an appropriate time after subject-matter jurisdiction is resolved.

120835082.1

which are directed at Johnson's Baby Powder and Shower to Shower – also encompass Shimmer Effects, and that, in any event, their allegations against PTI Union extend to "all" of JJCI's talcum powder products.  But no plaintiff alleges perineal use of Shimmer Effects, which is not surprising since the purpose of that product – to create glowing skin – would have made it a very odd choice for perineal use.  And plaintiffs' alternative argument is foreclosed by the evidence establishing that PTI Union had *no* role in the production of Johnson's Baby Powder and Shower to Shower.

 *Third*, the claims of the seven plaintiffs who are not diverse from the remaining defendants should be dismissed for lack of personal jurisdiction – a straightforward determination that can and should be made prior to a final conclusion on subject-matter jurisdiction.  Specifically:

- The J&J defendants and PTI Royston are not subject to *general jurisdiction* in Missouri under the exacting standards enunciated by the U.S. Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and recently reiterated in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017), which limit the exercise of general jurisdiction to a jurisdiction where a defendant is "at home" – i.e., the state of incorporation or principal place of business.  Plaintiffs appear to concede that there is no general jurisdiction over the J&J defendants, but argue that PTI Royston is subject to general jurisdiction in Missouri on the ground that one of its members is a citizen of that state.  But this contention is false, as set forth in defendants' Notice of Removal. Plaintiffs also argue that general jurisdiction can be exercised over PTI Royston because it qualifies as the "alter ego" of both its Missouri-based predecessor, Pharma Tech Industries, Inc. ("Pharma Tech"), and its Missouri-based sister company, PTI Union.  However, plaintiffs do not come close to adequately pleading such a nebulous "alter ego" theory of

3

personal jurisdiction in the First Amended Petition ("Petition" or "Pet."), and the documents they rely on in their motion fall woefully short of making a prima facie case.

- The J&J defendants and PTI Royston are also not subject to ***specific jurisdiction*** in Missouri as to the claims of the seven plaintiffs who are not diverse from the remaining defendants.  The Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), confirmed that specific jurisdiction is lacking over defendants with respect to product-defect claims asserted by plaintiffs who have no connection to the forum where an action is commenced, regardless of whether those plaintiffs joined their claims with plaintiffs whose claims have some connection to the forum. Although plaintiffs contend that the state circuit court has concluded that sufficient evidence establishes specific jurisdiction under these circumstances, that ruling has not been reviewed by an appellate court and clearly contravenes federal court decisions.

For all of these reasons, complete diversity exists and the Court should deny plaintiffs' motion.[2]

## BACKGROUND

This is a personal injury product liability action that includes 70 plaintiffs from 22 different states.  The plaintiffs allege that they or their decedents developed an unspecified subtype of ovarian cancer as a result of applying "talcum powder" products – specifically, JJCI's Baby Powder and Shower to Shower – to their perineal areas.  (Pet. ¶ 1.)  Plaintiffs have filed claims against four defendants: the J&J defendants, PTI Union and PTI Royston.  (*Id.* ¶¶ 76-85.)  Six plaintiffs –

---

[2]    Plaintiffs do not dispute that venue is proper under 28 U.S.C. § 1441(a), the amount in controversy exceeds $75,000, and the remaining procedural requirements of 28 U.S.C. § 1446 are satisfied.  (*See* Notice of Removal ¶¶ 32-37, ECF No. 1.)

120835082.1

Kristina Angelo, Deborah Fitzpatrick, Joanne Haas, Denise Horn, Tamika Johns and Karen O'Malley-Kostner – share New Jersey citizenship with J&J and JJCI. (*Id.* ¶¶ 8, 23, 32, 34, 38, 74.)  And one plaintiff, Barbara Kern, shares Florida citizenship with the PTI entities.  (*Id.* ¶ 42.)  None of these seven plaintiffs alleges that she purchased or used the Products in Missouri.  (*Id.* ¶¶ 8, 23, 32, 34, 38, 42, 74.)

On July 10, 2019, the J&J defendants removed this action to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  (*See* Notice of Removal at 2-3.)

## **ARGUMENT**

As set forth below, complete diversity of citizenship exists because:  (1) PTI Union is fraudulently joined and should not be considered as part of any jurisdictional analysis; and (2) the seven plaintiffs who are not diverse from the remaining defendants allege no connection to Missouri and should be dismissed for lack of personal jurisdiction.

Plaintiffs complain that it is wrong to "ping-pong[] back and forth" between fraudulent joinder and personal jurisdiction issues (Mem. of Law in Supp. of Pls.' Mot. to Remand ("Mem.") at 2), but they cite no authority in support.  To the contrary, "there is no mandatory 'sequencing of jurisdictional issues.'"  *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting

5

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)) (court has leeway to address nonmerits issues in any order).  As such, the Court is "not . . . obligated to address 'jurisdictional issues' in any particular order."  *In re Hechinger Inv. Co. of Del.*, 335 F.3d 243, 250-51 (3d Cir. 2003) (citation omitted); *see also Wagner v. Cruz*, 662 F. App'x 554, 556 (10th Cir. 2016) ("[T]his court has discretion to address jurisdictional issues in any sequence we wish."); *Carey v. Sub Sea Int'l, Inc.*, 211 F.3d 594 (table), 2000 WL 329367, at *3 (5th Cir. 2000) (unpublished opinion) ("rigid sequencing" of jurisdictional considerations "contrary to the letter and spirit" of *Ruhrgas*).  Rather, the Court should address all non-merits issues "in the order that best serves judicial economy."  *Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 141 (3d Cir. 2015); *see also, e.g.*, *Bernstein v. Stiller*, No. 09-659, 2013 WL 3305219, at *2 (E.D. Pa. June 27, 2013) (noting that "[j]udicial economy" should be considered "when choosing which jurisdictional issue should be first addressed").  The fraudulent joinder of PTI Union and the lack of personal jurisdiction for the claims of the seven plaintiffs who are not diverse from the remaining defendants present straightforward questions.

Ultimately, plaintiffs' squabbles with the structure of the J&J defendants' Notice of Removal cannot obscure the fundamental point:  the only non-diverse claims before the Court are not subject to personal jurisdiction in Missouri, requiring their dismissal, and defeating plaintiffs' arguments in support of remand.

6

## I.   THE PTI ENTITIES ARE CITIZENS OF GEORGIA AND FLORIDA, NOT MISSOURI.

The citizenship of an LLC like the PTI entities is determined by the citizenship of its members. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). Further, "where an LLC has, as one of its members, another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of . . . members there may be' to determine the citizenship of the LLC." *Id.* at 105 n.16 (citations omitted).

Here, the sole member of PTI Union and PTI Royston is Broadview Investments, LLC. (*See* Decl. of Edward "Tee" Noland, Jr. ("Noland Decl.") ¶ 7, Aug. 29, 2018 (attached as Ex. 1 to Certification of Jessica Brennan, Esq. ("Brennan Cert.")).) The sole members of Broadview Investments, LLC are four trusts: (a) the Revocable Living Trust of Edward T. Noland, Jr.; (b) the Edward T. Noland, Jr. Irrevocable Gifting Trust; (c) the Laura Noland Tarrasch Revocable Trust; and (d) the Tarrasch Family Trust. (*See id.* ¶ 8; Decl. of Laura Tarrasch ("Tarrasch Decl.") ¶ 4, Aug. 29, 2018 (attached as Ex. 2 to Brennan Cert.).) Historically, the trustees for the Laura Noland Tarrasch Revocable Trust and the Tarrasch Family Trust were citizens of Missouri. However, as of June 6, 2018, the sole trustee of both of these trusts is Grant McKay, who is a citizen of Florida. (*See* Tarrasch Decl. ¶ 6 (stating Grant McKay, a "citizen and resident of Collier County, Florida," "is the sole trustee of the Laura Noland Tarrasch Revocable

7

Trust"); *id.* ¶¶ 6, 8 (stating Grant McKay, a "citizen and resident of Collier County, Florida," "is the sole trustee of the Tarrasch Family Trust"); *see also* Addendum to Decl. of Laura Tarrasch ¶¶ 2-3, Dec. 4, 2018 (attached as Ex. 3 to Brennan Cert.).) The trustees of the two remaining trusts are citizens of Georgia.  (*See* Noland Decl. ¶¶ 2, 10 (stating that Edward Noland, a "citizen of the State of Georgia," is the "sole trustee of the Revocable Living Trust of Edward T. Noland, Jr."); *id.* ¶ 12 (stating that Kimberly Noland, a "citizen and resident of Athens, Georgia," "is the sole trustee of the Edward T. Noland, Jr. Irrevocable Gifting Trust").)

As the Third Circuit recently held, "the citizenship of a traditional trust is only that of its trustee." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 39 (3d Cir. 2018); *see also, e.g.*, *Algiers Dev. Dist. v. Vista La., LLC*, No. 16-16402 SECTION "S", 2017 U.S. Dist. LEXIS 4672, at *7-8 (E.D. La. Jan. 12, 2017) (denying motion to remand where affidavit "explains that Vista Trust is a traditional trust that is an *inter vivos* gift for [affiant's] children" and the sole trustee was a citizen of California, who was completely diverse from defendants); *Samson v. Allis-Chalmers Prods. Liab. Tr.*, CIV. A. No. 90-0139, 1990 WL 87394, at *2 (E.D. Pa. June 21, 1990) ("It is well-settled that the citizenship of a trust is determined by the citizenship of the trustee."); *Schubel v. Lampland*, No. 13-1426 (PAM/JSM), 2013 WL 5787881, at *1 (D. Minn. Oct. 28, 2013) ("[T]he citizenship of the trust is the citizenship of the trustee or trustees."); *U.S. Bank*

8

*Nat'l Ass'n v. Polyphase Elec. Co.*, No. 10-4881 (DWF/LIB), 2011 WL 3625102, at *1 (D. Minn. Aug. 17, 2011) ("[B]ecause a trust is not an entity that can sue and be sued, the trustee's citizenship is what matters for the purposes of diversity jurisdiction.") (citation omitted); *Williams v. Nat'l Credit Adjusters, LLC*, No. 4:14-CV-267-CAS, 2014 WL 5823457, at *2 (E.D. Mo. Nov. 10, 2014) (diversity jurisdiction existed in a case involving trusts where "the citizenship of the trustees . . . of the two trusts were diverse from plaintiff").

The purpose of each of the four trusts that comprise Broadview Investments, LLC "is to determine how certain property is to be managed and distributed during" the life of Laura Tarrasch and Edward "Tee" Noland, Jr.  (*See* Noland Decl. ¶¶ 9, 11; Tarrasch Decl. ¶¶ 5, 7.)  And according to the attached declarations, the trust agreements vest the trustees with "various *fiduciary* responsibilities to manage and distribute the property within the trust and various other administrative obligations."  (Noland Decl. ¶¶ 9, 11 (emphasis added); Tarrasch Decl. ¶¶ 5, 7 (emphasis added).)  As such, the trusts in question are indisputably traditional trusts, such that their citizenship is determined by the citizenship of the respective trustees, which is Florida and Georgia.

## II.    <u>PTI UNION SHOULD BE DISREGARDED IN DETERMINING WHETHER THERE IS COMPLETE DIVERSITY OF CITIZENSHIP.</u>

PTI Union should be dismissed under the fraudulent joinder doctrine because none of the plaintiffs alleges that she purchased any product manufactured

9

by that entity.  This is critical to the Court's jurisdictional analysis because one key reason plaintiffs have named PTI Union in this lawsuit is to attempt to establish general personal jurisdiction over one defendant with respect to the claims asserted by non-Missouri plaintiffs so as to defeat diversity with respect to the other, out-of-state defendants.  Accordingly, the same fraudulent joinder principles should apply.

As this Court has recognized, a defendant is fraudulently joined "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Lopienski v. Centocor, Inc.*, No. 07-4519 (FLW), 2008 WL 2565065, at *2 (D.N.J. June 25, 2008) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)); *see also Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*, 415 F. App'x 432, 433 (3d Cir. 2011) (affirming finding of fraudulent joinder because the claims were not "colorable") (citation omitted).  In such a case, the resident defendant is deemed a "nominal" party whose citizenship should be disregarded by the district court.  *Lopienski*, 2008 WL 2565065, at *2; *see also Roggio*, 415 F. App'x at 433 (similar).  "The propriety of removal is to be determined based upon the facts as they are alleged in the complaint." *Lopienski*, 2008 WL 2565065, at *2.

This Court has held that "a court's determination of fraudulent joinder does not focus on whether plaintiff's claims are 'plausible' under *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) or Rule 12(b)(6), rather it focuses on whether they are more than 'frivolous.'" *McBride v. Johnson & Johnson*, No. 16-7891(FLW), 2017 WL 4570289, at \*4 (D.N.J. Oct. 12, 2017) (quoting *In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006)).  This is so, the Court stated, because "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Id.* (quoting *In re Briscoe*, 448 F.3d at 218).

Under this standard, a finding of fraudulent joinder is warranted where there is "no colorable basis in law or fact for" imposing liability on the non-diverse defendant. *Taggart v. Morgan Stanley ABS Capital I Inc. Trust 2007-HE2*, No. 16-62, 2016 U.S. Dist. LEXIS 100130, at \*11-12 (E.D. Pa. Aug. 1, 2016) (finding fraudulent joinder because "Taggart has no basis to sue Schlechter on the facts alleged in the original complaint").  Moreover, a mere "theoretical" possibility of recovery against a defendant is not enough to defeat removal.  *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003).  Likewise, a plaintiff's "mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts."  *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (alteration in original) (quoting *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)).

As set forth in the Notice of Removal, plaintiffs lack a colorable claim against PTI Union because it manufactured a distinct product, Shimmer Effects, and there is no allegation that any plaintiff or decedent ever purchased Shimmer Effects, much less that any plaintiff or decedent was sufficiently exposed to that product such that it could have been a cause of injury.  (*See* Notice of Removal ¶¶ 3, 11-16.)  As other courts have recognized, when seeking to join an in-state product manufacturer or distributor to defeat diversity jurisdiction, the plaintiff must plausibly "allege a causal connection between the injury and the conduct of that defendant" – i.e., that the ***specific*** defendant actually "contributed in [some] way to her injuries."  *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder because the plaintiff only alleged that "Vioxx is manufactured and distributed by the defendants") (quoting complaint); *see also, e.g.*, *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 552 (E.D. Ky. 2001) (defendant pharmacies were fraudulently joined; "Plaintiffs' complaint fails to connect the defendant pharmacies with plaintiffs' acquisition of OxyContin.  Absent such an allegation, plaintiffs cannot establish proximate cause and their claim against the pharmacies fails as a matter of law."); *In re Pradaxa* (*Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, 2013 U.S. Dist. LEXIS 24313, at *28-29 (S.D. Ill. Feb. 22, 2013) (finding fraudulent joinder where the plaintiffs did "not allege that [the defendant]

120835082.1

distributed or supplied the Pradaxa *that caused their alleged injuries*") (emphasis added).

For example, in *Aronis*, the plaintiff sued for injuries arising out of her use of the drug Vioxx, joining both the diverse manufacturer of the product, as well as an in-state distributor of the product, McKesson.  2005 WL 5518485, at *1.  The manufacturer removed the case to federal court on the ground that the in-state distributor had been fraudulently joined, and the plaintiff moved to remand.  *Id.* The court denied the motion to remand, finding that "[t]he complaint d[id] not state a cause of action against [the distributor], and that [the] failure [was] obvious." *Id.* As the court explained, "[a]ll plaintiff allege[d] [was] that 'Vioxx is manufactured and distributed by the defendants.'"  *Id.* (quoting complaint).  In other words, the plaintiff made "no allegation that McKesson ever handled the *specific* pills that were allegedly the cause of her injuries." *Id.* (emphasis added).  According to the court, merely alleging that McKesson was a "major distributor" of the drug in question did not suffice because "a plaintiff must allege a causal connection between the injury and the conduct of *that defendant*." *Id.* (emphasis added). Because the plaintiff did "not allege that McKesson contributed in any way to her injuries, only that McKesson is a distributor," the court concluded that the in-state defendant had been fraudulently joined.  *Id.*

13

The same is true here.  Plaintiffs' claims concern "Baby Powder and Shower to Shower."  (Pet. ¶ 1.)  But PTI Union's involvement in the manufacture of talc products in Missouri involved a distinct product – Shimmer Effects – that was marketed from 2005 to 2010, when it was discontinued because it was a business failure.  (Aff. of Kathleen Decker ("Decker Aff.") ¶¶ 4, 7, July 10, 2017 (attached as Ex. 4 to Brennan Cert.).)  Importantly, the Shimmer Effects product was designed with an ingredient intended to give the user a sparkling or shimmering effect when applied to the skin (*id.* ¶ 4) and was thus likely to be applied to visible portions of the body rather than used perineally.  Because plaintiffs have failed to plead a colorable causal connection between any purported misconduct by PTI Union and their own alleged injuries in this case, there is no reasonable possibility that they could recover against that defendant, and it is therefore fraudulently joined.

In response, plaintiffs argue that:  (1) the Court cannot conduct an inquiry into the sufficiency of their claims against PTI Union at this stage; (2) their allegations of product usage encompass Shimmer Effects™, which was manufactured by PTI Union in Missouri; and (3) in any event, their allegations extend to PTI Union's "role in bringing to market all the Johnson's Baby Powder and Shower to Shower products."  (Mem. at 30-33.)  None of these arguments has merit.

14

120835082.1

*First*, relying largely on this Court's decision in *Plavix*, plaintiffs contend that the Court cannot consider the merits of their allegations against PTI Union without "impermissibly transform[ing] the fraudulent joinder inquiry into that of a Rule 12(b)(6) motion." (Mem. at 27-29.) Plaintiffs' argument stretches *Plavix* too far. In *Plavix*, the non-diverse defendant was "one of many . . . distributors" of a single undifferentiated drug and the plaintiffs alleged injuries arising from that particular drug. *In re Plavix Prod. Liab. & Mktg. Litig.*, MDL No. 3:13-cv-2418-FLW, 2014 WL 4954654, at *9 (D.N.J. Oct. 1, 2014). The Court held that whether or not the plaintiffs had stated a claim under California law, they had come close enough to stating a claim to defeat a finding of fraudulent joinder. *See id.* Here, by contrast, plaintiffs allege use of an ***identifiably different product*** from the one manufactured by PTI Union – i.e., that they used Johnson's Baby Powder or Shower to Shower, manufactured by other defendants, and not the Shimmer Effects product manufactured by PTI Union. Courts in analogous circumstances have not hesitated to find fraudulent joinder. *Cf., e.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 677 (E.D. Pa. 2003) (sales representatives fraudulently joined in part because they sold a different drug from the one ingested by plaintiffs); *Campana v. Am. Home Prods. Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, at *1-3 (N.D. Fla.

15

Mar. 7, 2000) (defendant fraudulently joined because he did not "market, advertise, sell, or distribute" the type of drugs ingested by plaintiff).

*Second*, and relatedly, plaintiffs argue that they were not required to "specifically plead" which "subcategories of Shower to Shower" they purchased and used since "Shower to Shower Shimmer Effects was one of the multiple lines of Shower to Shower sold on store shelves next to one another." (Mem. at 30.) But remarkably, plaintiffs still do not claim that even a single one of them or their decedents actually used Shimmer Effects – the talc product manufactured by PTI Union. (*See* Decker Aff. ¶ 6.) Nor can plaintiffs possibly impose liability on PTI Union for the Johnson's Baby Powder and Shower to Shower that they allegedly *did* use because those other products were manufactured in Georgia by PTI Royston, a separate and distinct company. (*See id.* ¶ 8.) Accordingly, plaintiffs are still unable to connect a single product supposedly manufactured by PTI Union to their own claimed injuries, further demonstrating that this defendant is fraudulently joined.

*Third*, plaintiffs alternatively contend that "allegations of PTI Union's involvement in this controversy are not limited to its manufacture of Shower to Shower Shimmer Effects; they run to PTI Union's role in bringing to market all the Johnson's Baby Powder and Shower to Shower products." (Mem. at 32.) But the evidence submitted by the J&J defendants demonstrates that *all* of these other

16

products were produced by entities *other than PTI Union*.  (Aff. of Rosa Son ¶ 7, Dec. 13, 2016 (attached as Ex. 5 to Brennan Cert.) (JJCI "does not manufacture, research, develop, design, or test JOHNSON'S® Baby Powder and SHOWER TO SHOWER® in Missouri"); Decker Aff. ¶ 8 (Baby Powder and Shower to Shower "were manufactured in Royston, Georgia by PTI Royston, LLC during the time period . . . that SHIMMER EFFECTS was manufactured in Union, Missouri").)

While plaintiffs cite a series of documents as supposed evidence of PTI Union's involvement in the production of Johnson's Baby Powder and Shower to Shower products, none of those documents supports a plausible inference that "[PTI Union] ever handled the *specific* [talcum powder products] that were allegedly the cause of [plaintiffs' alleged] injuries," *Aronis*, 2005 WL 5518485, at *1 (emphasis added) – the dispositive question raised by plaintiffs' motion.

Indeed, the great bulk of plaintiffs' evidence *simply does not relate to PTI Union at all*; rather, it relates to Pharma Tech.[3]  Pharma Tech is not a party to this suit; nor is it, as plaintiffs baselessly and repeatedly assert, PTI Union's predecessor.  (*See* Mem. at 14, 44, 45.)  Plaintiffs point to a series of contracts between JJCI and either Pharma Tech or PTI Royston, including a letter of intent

---

[3]     Plaintiffs also argue that these same documents demonstrate that PTI Union is a mere alter ego of Pharma Tech such that Pharma Tech's jurisdictional contacts can be imputed to PTI Union.  For the reasons discussed below, this claim is similarly unavailing.

17

for the sale of the Royston, Georgia facility (*see id.* at 9-10 (citing Mem. Ex. 8)), an asset purchase agreement (*see id.* at 10-11 (citing Mem. Ex. 11)), a manufacturing and supply agreement (along with an amended version of the same agreement) (*see id.* at 11-12 (citing Mem. Exs. 12, 14)), and a supply chain agreement (*see id.* at 17-18 (citing Mem. Ex. 26)).  Except for the amended asset purchase agreement, which involved PTI Royston as assignee of Pharma Tech, all of these contracts were entered into by Pharma Tech, and none so much as mentions PTI Union.  Whatever these documents may show about the involvement of Pharma Tech, which is not a party to this case, in the production of talc products other than Shimmer Effects, they do nothing to advance plaintiffs' case against PTI Union.  Most of the internal Luzenac or Imerys documents plaintiffs cite similarly mention Pharma Tech, not PTI Union – and are therefore similarly unavailing. (*See id.* at 18-19 (citing Mem. Exs. 27-30).)

The few documents that do mention PTI Union also fail to demonstrate any connection to talc products other than Shimmer Effects.  For instance, plaintiffs point to a Luzenac Industrial Sales Activity Report from 2005 that mentions "synergies between the labs in Royston and Union."  (*Id.* at 16 (quoting Mem. Ex. 24).)  Notably missing from that report, however, is any statement that PTI Union – or the Union, Missouri facility – played any role in the production of Johnson's Baby Powder or Shower to Shower.  Plaintiffs also point to a 2008 letter from

Edward Noland of Pharma Tech advising Luzenac of a merger between the Union and Royston companies.  (*See id.* at 20 (citing Mem. Ex. 37).)  Although plaintiffs claim it refers to a merger that had already been completed (*see id.*), the letter states only that the companies *will* merge (Mem. Ex. 37), and as the affidavit of Edward Noland makes clear, no such merger ever took place (*see* Aff. of Edward "Tee" Noland, Jr. ¶¶ 12-13, Apr. 11, 2018 (attached as Ex. 6 to Brennan Cert.)).

In short, none of the exhibits touted by plaintiffs as supposedly evidencing "PTI Union's role in bringing to market <u>all</u> the Johnson's Baby Powder and Shower to Shower products" (Mem. at 32) actually does so.  And because the evidence submitted by the J&J defendants *disproves* plaintiffs' claim, plaintiffs' argument must be rejected.  For all of these reasons, PTI Union should be deemed fraudulently joined, and its presence in this lawsuit should be disregarded in the Court's jurisdictional analysis.

## III. <u>THE COURT SHOULD DISMISS THE CLAIMS OF THE SEVEN PLAINTIFFS WHO ARE NOT DIVERSE FROM THE REMAINING DEFENDANTS FOR LACK OF PERSONAL JURISDICTION.</u>

Finally, the Court should also dismiss the claims of the seven plaintiffs who are not diverse from any of the remaining defendants for lack of personal jurisdiction, which would leave in the case only parties that are completely diverse.

19

A. **The J&J Defendants And PTI Royston Are Not Subject To General Jurisdiction In Missouri.**

The J&J defendants and PTI Royston are not subject to general jurisdiction in Missouri under the exacting standards the U.S. Supreme Court laid down in *Daimler*, 571 U.S. 117, and recently reiterated in *BNSF Railway*, 137 S. Ct. 1549. Under *Daimler*, an out-of-state defendant is only subject to general jurisdiction in the forum state if its contacts with that state "are ***so constant and pervasive 'as to render [it] essentially at home in the forum State***.'" 571 U.S. at 122 (alteration in original) (emphasis added) (citation omitted). A corporation generally is "at home" only in its place of incorporation and principal place of business. *Id.* at 136-37; *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 223 (2d Cir. 2014) (per curiam) (stating that *Daimler* "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the ***exceptional case*** where its contacts with another forum are so substantial as to render it 'at home' in that state") (emphasis added). Likewise, a limited liability company "will only be subjected to general jurisdiction in the state of its organization and principal place of business." *Miller v. Native Link Constr., LLC*, No. 15-1605, 2017 WL 3536175, at *30 (W.D. Pa. Aug. 17, 2017).

Here, the J&J defendants and PTI Royston are not incorporated or headquartered in Missouri, as plaintiffs acknowledge in their Petition. (Pet. ¶¶ 76, 78, 83.) For example, with respect to the J&J defendants, plaintiffs merely allege

20

120835082.1

that they "regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri." (*Id.* ¶¶ 77, 79.) Plaintiffs do not deny that these boilerplate allegations come nowhere close to establishing general jurisdiction over the J&J defendants under the standards set forth in *Daimler*. Instead, they argue that general jurisdiction exists over PTI Royston in Missouri because: (1) "one or more of its members is a citizen of Missouri" (Mem. at 44); and (2) there is "a unity of interest and ownership" between Missouri-based PTI Union and Georgia-based PTI Royston such that the Missouri contacts of the former can be imputed to the latter for purposes of general jurisdiction (*id.*). But as already discussed, none of the members of PTI Royston is a citizen of Missouri, rendering plaintiffs' first argument utterly without merit. And as explained below, plaintiffs' attempt to ground general jurisdiction over PTI Royston on an alter-ego theory of personal jurisdiction – i.e., that "PTI Union and PTI Royston have a unity of interest and ownership" (Mem. at 44) – also lacks merit.

As an initial matter, this theory was not pled in plaintiffs' Petition. This Court determines its jurisdiction based on the pleadings in the Petition at the time of removal, *e.g.*, *Keithly v. Mocadlo*, No. 4:16 CV 1892 JMB, 2017 U.S. Dist. LEXIS 60899, at *11 (E.D. Mo. Apr. 21, 2017), and the Petition in this case did not contain any allegation of fact remotely suggestive of this new alter-ego theory

21

of personal jurisdiction.[4]  Nor can plaintiffs "amend [their] . . . complaint by arguing in a brief a theory of personal jurisdiction which differs from the one relied upon in [their] . . . complaint." *Ashton v. Florala Mem'l Hosp.*, No. 2:06cv226-ID (WO), 2007 U.S. Dist. LEXIS 38164, at *12-13 (M.D. Ala. May 24, 2007) ("[T]he court finds that Ashton has switched theories for alleging personal jurisdiction over Emerald Coast through an improper format and in an untimely manner.").  For this reason alone, plaintiffs' alter-ego theory of personal jurisdiction is procedurally infirm and must be rejected.

In any event, plaintiffs' theory also fails on the merits.  In *Daimler*, the Supreme Court clarified the very high bar a plaintiff must clear to establish personal jurisdiction based on a theory of alter ego.  The Court observed that "several Courts of Appeals have held[] that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego."  571 U.S. at 134-35.  The Court expressly rejected the Ninth

---

[4]      Plaintiffs assert that they have "pled that Defendant PTI Royston was acting at the direction of or on behalf of PTI Union." (Mem. at 40.)  But the Petition actually pleads that "Defendant PTI Royston, LLC was acting at the direction of or on behalf of the Johnson & Johnson Defendants, Imerys Talc, ***and/or*** PTI Union, LLC carrying out a common plan, scheme, or conspiracy, acting within the . . . scope of its employment or agency." (*E.g.*, Pet. ¶ 85 (emphasis added).)  This generic allegation does not remotely suggest that PTI Union is the alter ego of PTI Royston.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021-22 (9th Cir. 2017) (rejecting alter-ego theory of personal jurisdiction because the "complaint makes almost no factual allegations regarding the nature of the parent-subsidiary relationship").

120835082.1

Circuit's holding that a mere finding of an "agency" relationship between a subsidiary and a parent sufficed to impute personal jurisdiction to the parent. *Id.*

As other courts have concluded from this reasoning, even assuming that an alter-ego theory of personal jurisdiction is cognizable after *Daimler*, such a theory would only apply where one company "exerts so much control over [an affiliated company] that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."[5] *Leadford v. Bull Moose Tube Co.*, No. 15-cv-13565, 2016 WL 4089130, at *2-3 (E.D. Mich. Aug. 2, 2016) (citation omitted). Although courts have articulated the test in various ways, "the *sine qua non* of an alter ego relationship is **daily**, **operational** control." *Prominent GmbH v. Prominent Sys., Inc.*, No. 2:16-cv-01609, 2017 U.S. Dist. LEXIS 54078, at *25 (W.D. Pa. Apr. 10, 2017) (emphasis added) (distinguishing one of plaintiff's authorities). A handful of "commonalities" between affiliated companies in terms of management, branding and the like "do not yield the degree of daily, operational control necessary, above and beyond that normally associated with common ownership and directorship, to allow [a] [c]ourt to conclude that" one affiliated company is the alter ego of the other for purposes of personal jurisdiction. *Id.* at *31 (rejecting alter-ego theory of personal jurisdiction); *Leadford*, 2016 WL

---

[5]     Plaintiffs exclusively cite cases that long predate the Supreme Court's decision in *Daimler*.

4089130, at *3 ("While BMT does hold BME out as an arm of BMT, merely doing business as a parent entity does not make a subsidiary an alter-ego of the parent company.").[6]

The limited Missouri precedent imposes a similarly high standard. Under Missouri law, to pierce the corporate veil and impute the acts of one company to sibling or parent companies, the plaintiff must prove: "(1) . . . complete domination . . . so that the corporate entity . . . had at the time no separate mind, will or existence of its own; and (2) [s]uch control must have been used by the defendant to commit fraud . . . wrong . . . in contravention of plaintiff's legal rights; and (3) [t]he aforesaid control and breach of duty must proximately cause

---

[6]        In contrast to *Prominent GmbH*, *In re Chocolate Confectionary Antitrust Litigation*, 674 F. Supp. 2d 580 (M.D. Pa. 2009) (cited in Mem. at 42), involved "prima facie evidence that Cadbury USA act[ed] as the alter ego" of its parent corporations by way of a centralized committee, "which exercise[d] ***centralized control*** over 'the day-to-day management' of all Cadbury entities" "to the exclusion of their respective boards of directors." *In re Chocolate*, 674 F. Supp. 2d at 615-17 (emphasis added) (citation omitted); *see also Flake v. Schrader-Bridgeport Int'l, Inc.*, No. 3:07-0925 et al., 2010 U.S. Dist. LEXIS 23951, at *21-22 (M.D. Tenn. Mar. 15, 2010) (distinguishing *In re Chocolate*, "where a manager of [a] British parent corporation conscripted its American subsidiaries to effect a centralized management for all of the corporate entities"). Similarly, in *RAE Systems, Inc. v. TSA Systems, Ltd.*, No. C 04-2030 FMS, 2005 WL 1513124, at *4 (N.D. Cal. June 24, 2005) (cited in Mem. at 42), the plaintiff pled facts that went "beyond 'conclusory allegations' in support of its alter ego theory," including, for example, that "TSA transferred all of its interest in Polimaster products to GNP in order to evade TSA's contractual obligations to RAE and that TSA used GNP to interfere with RAE's contractual relationship with Polimaster." 2005 WL 1513124, at *4. No comparable allegations are pled in the Petition here.

the injury." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 374-76 (Mo. Ct. App. 2014) (quoting *Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986)).[7]

Plaintiffs do not – and cannot – make the requisite showing under either federal or Missouri law.  Most importantly, none of their proffered evidence speaks at all to the "daily, operational control" that is the "*sine qua non* of" personal jurisdiction.  *Prominent GmbH*, 2017 U.S. Dist. LEXIS 54078, at *25.  Aside from a document referencing a proposed merger that never happened, plaintiffs' evidence ultimately boils down to a showing of coordination between Pharma Tech, PTI Union and PTI Royston, common branding, and shared employees and ownership.

For instance, plaintiffs point to a contract between Pharma Tech and Johnson & Johnson that gave Pharma Tech "responsibility for PTI Royston" (Mem. at 12-13 (citing Mem. Exs. 15, 16)), documents showing "ongoing 'synergies between'" PTI Royston and the other PTI entities (*id.* at 16 (quoting Mem. Ex. 24)), and "strategic planning meetings" between Imerys and Pharma Tech (*id.* at

---

[7]     Tacitly admitting that they cannot meet this bar, plaintiffs speculate that Missouri courts might impose a less-demanding standard for imputing jurisdictional contacts than they do for imputing liability (which was at issue in *Blanks*).  But plaintiffs offer no support for their speculation, and they bear the burden to demonstrate personal jurisdiction.  *See, e.g.*, *In re Lipitor Antitrust Litig.*, 722 F. App'x 132, 138 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 320 (2018) (mem.).

120835082.1

17-18).  None of this suffices to prove alter ego:  "A degree of control naturally flows from . . . the parent-subsidiary relationship, but this incidental control does not rise to the level required to permit the exercise of jurisdiction over the parent." *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 323-24 (W.D. Pa. 2010).  As such, plaintiffs have offered nothing showing control that goes "above and beyond [activity] normally associated with common ownership and directorship."  *Prominent GmbH*, 2017 U.S. Dist. LEXIS 54078, at *31.

Plaintiffs' evidence of shared employees – derived primarily from the LinkedIn page of Bryan Cox, whose profile lists Pharma Tech Industries as a former employer (*see* Mem. at 22-23; Mem. Ex. 41) – is likewise woefully insufficient to support an alter-ego theory.  The "fact of common officers, by itself, can ***never*** be grounds for piercing the corporate veil of" an affiliated company. *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, No. 2:00-CV-936-ST, 2002 U.S. Dist. LEXIS 27804, at *37 (D. Utah Mar. 27, 2002) (emphasis added); *see also Mid Am. Title Co. v. Transnation Title Ins. Co.*, 332 F.3d 494, 495 (7th Cir. 2003) (evidence of "overlapping corporate officers" is "insufficient evidence of unity of control"); *Prominent GmbH*, 2017 U.S. Dist. LEXIS 54078, at *26-27 (even if court were to find shared employees, this would not establish alter-ego status).  Finally, plaintiffs provide extensive evidence – from Pharma Tech's website, its

promotional videos, and its interactions with Imerys and Johnson & Johnson – that shows common branding.  (*See* Mem. at 18-19, 21-23.)  But use of a common brand "falls extremely short" of the requisite showing required for alter-ego jurisdiction.  *Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 649 (M.D. Pa. 2016); *In re Enter. Rent-A-Car*, 735 F. Supp. 2d at 319 ("single, homogeneous brand" does not render subsidiary an alter ego).

In short, plaintiffs have come nowhere close to satisfying the standard needed to justify personal jurisdiction based on an alter-ego theory.  As such, there is no basis for this Court to exercise general jurisdiction over PTI Royston.

### B.  The J&J Defendants And PTI Royston Are Not Subject To Specific Jurisdiction In Missouri As To The Claims Of The Seven Plaintiffs Who Are Not Diverse From the Remaining Defendants.

The J&J defendants and PTI Royston are not subject to specific jurisdiction in Missouri as to the claims of the seven plaintiffs who are not diverse from the remaining defendants, requiring dismissal of these plaintiffs' claims, as multiple courts have recognized in analogous circumstances.  *See, e.g.*, *Estate of Fox v. Johnson & Johnson*, 539 S.W.3d 48, 50 (Mo. Ct. App. 2017) (reversing verdict in favor of non-Missouri plaintiff for lack of personal jurisdiction "[i]n light of the United States Supreme Court's recent holding in *Bristol-Myers*"); *Jinright v. Johnson & Johnson, Inc.*, No. 4:17CV01849 ERW, 2017 WL 3731317, at *4 (E.D.

27

Mo. Aug. 30, 2017) ("There are simply no facts connecting nonresident [p]laintiffs to the State of Missouri.").

In their motion to remand, plaintiffs argue that "the Missouri connection giving rise to the controversy" is sufficiently "meaningful" to create jurisdiction over the claims of plaintiffs who did not purchase the products in Missouri. (Mem. at 39.) Specifically, plaintiffs argue that "[d]uring relevant time periods, the subject Products were manufactured, processed, bottled, mislabeled, and mispackaged – thereby creating the defect – in only two forums, Missouri and Georgia." (*Id.*) But as already discussed, none of the plaintiffs alleges use of Shimmer Effects, which was manufactured by PTI Union; to the contrary, plaintiffs' allegations involve Baby Powder and Shower to Shower, which were only manufactured by PTI Royston in Royston, Georgia. And for the reasons set forth in the last section, plaintiffs' efforts to fabricate relevant Missouri conduct by conflating PTI Royston and PTI Union are utterly without support. On that basis alone, plaintiffs' specific jurisdiction theory fails as a matter of law.

Moreover, even if the plaintiffs or decedents had used products that were manufactured in Missouri, any such Missouri contact would be entirely fortuitous in light of the crux of plaintiffs' claims, which is that they were allegedly injured by ***the J&J defendants'*** products. They do not allege any facts, for example, showing that PTI Union or PTI Royston designed or had responsibility for the

28

content of the labeling on Johnson's Baby Powder or Shower to Shower – only that they manufactured products pursuant to the J&J defendants' direction.  (*E.g.*, Pet. ¶¶ 82, 85.)  As such, any Missouri contacts resulting from these entities' conduct are irrelevant for personal jurisdiction purposes.  Companies contract with third parties to facilitate product manufacture and sales all the time, and a company's decision to outsource one link in the chain of product sales to a third party does not give rise to personal jurisdiction over the company in the third party's home jurisdiction.  *See Jinright*, 2017 WL 3731317, at *4-5 (even if plaintiffs could show that the talcum powder they used was manufactured in Missouri, it would be insufficient to subject Johnson & Johnson to personal jurisdiction there); *cf., e.g.*, *Bristol-Myers*, 137 S. Ct. at 1783 (rejecting the contention that Bristol-Myers's decision to contract with a California company to distribute its product nationally provided a sufficient basis for personal jurisdiction).  Were it otherwise, companies could find themselves subject to jurisdiction against all plaintiffs from any part of the country wherever they might have contracted with other parties to help develop or sell a product, no matter how incidental those third parties' efforts are relative to the specifics of the plaintiffs' claims.  Such a development would undercut the Supreme Court's recent attempts to bring predictability and order to the doctrine of personal jurisdiction and resemble the "loose and spurious form of general

29

jurisdiction" that the Supreme Court expressly rejected in *Bristol-Myers*, 137 S. Ct. at 1781.

Plaintiffs further suggest that specific jurisdiction can be exercised over the J&J defendants and PTI Royston based on their contractual arrangements with PTI Union regarding talcum powder. But such a theory of jurisdiction is plainly foreclosed by *Bristol-Myers*, as the *Jinright* court recognized. In *Jinright*, as here, the plaintiffs argued that specific jurisdiction could be exercised over the J&J defendants based on the claim that "Imerys sen[t] their raw talc, with a Material Safety Data sheet warning of the risk of ovarian cancer, to Pharma Tech Industries in Union, Missouri, where, ***at the direction of Johnson & Johnson***, the warning [was] cast aside and the talc [was] processed, bottled and labeled without warning, creating the defect in Missouri." 2017 WL 3731317, at *4 (emphasis added). As the *Jinright* court explained, the Supreme Court rejected a virtually identical theory of personal jurisdiction in *Bristol-Myers*, reasoning that "the bare fact that [Bristol-Myers] contracted with a California distributor is not enough to establish personal jurisdiction in the State." *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1783). Applying that reasoning, *Jinright* explained that "[n]one of the evidence presented create[d] a connection between nonresident [p]laintiffs' injuries in this matter, the Johnson & Johnson products used by nonresident [p]laintiffs, and what was manufactured by Pharma Tech." *Id.* at *5. Instead, "[a]ll they have shown is a

30

connection with a third party in Missouri. That is not enough to create specific jurisdiction for nonresidents' claims." *Id.*

This case calls for the same result. While plaintiffs attempt to downplay the import of *Jinright* on the ground that the PTI entities were not named defendants in that case (*see* Mem. at 47-48), that distinction does not matter. It was plaintiffs' theory of personal jurisdiction (identical to the one being advanced here) that both courts rejected. And with good reason. Due process must "be met as to ***each*** defendant over whom a state court exercises jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1783 (emphasis added) (citation omitted). Exercising specific jurisdiction over the non-Missouri-based defendants would contravene that principle because there are no allegations "creat[ing] a connection between nonresident [p]laintiffs' injuries in this matter, the Johnson & Johnson products ***used by nonresident [p]laintiffs, and what was manufactured by***" PTI Union. *Jinright*, 2017 WL 3731317, at *5 (emphasis added).[8]

---

[8]     For similar reasons, plaintiffs' laundry list of alleged misstatements that are taken out of context – regarding, for example, whether the J&J defendants manufacture Baby Powder or Shower to Shower in Missouri and whether PTI Union's or PTI Royston's alleged roles were properly acknowledged in prior testimony – is a red herring. The facts set forth in defendants' briefing are uncontested, and the statements plucked from prior submissions and proceedings involved different issues and were not contrary to the facts set forth here. Notably, the *Jinright* court addressed allegations of the PTI entities' involvement just like the ones made here and agreed that personal jurisdiction was lacking.

31

The so-called "host" of "post-*Bristol-Myers* cases" cited by plaintiffs (Mem. at 35) do not dictate a different result.  All of those cases were decided on the erroneous premise that conducting clinical trials for an FDA-approved product in the forum suffices to establish specific jurisdiction as to any and all claims involving that product.  For example, in a pair of virtually identical cases involving the drug Saxagliptin decided on the same day by the same judge, the court found that jurisdiction could be exercised over foreign companies in California with respect to claims asserted by non-California residents based on the theory that "nearly every pivotal clinical trial necessary for [FDA] approval involved studying of the Saxagliptin drugs throughout the State of California," and that "but for the pre-NDA development of the Saxagliptin drugs within the State of California, the drugs would not have been . . . ingested by Plaintiff."  *Dubose v. Bristol-Myers Squibb Co.*, No. 17-cv-00244-JST, 2017 WL 2775034, at *4 (N.D. Cal. June 27, 2017) (citation omitted); *Cortina v. Bristol-Myers Squibb Co.*, No. 17-cv-00247-JST, 2017 WL 2793808, at *4 (N.D. Cal. June 27, 2017) (same).  These cases did not faithfully apply *Bristol-Myers*, which made clear that specific jurisdiction requires concrete allegations of a "connection between the forum and the ***specific*** claims at issue."  137 S. Ct. at 1781 (emphasis added) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at

issue.").[9]  A federal judge in Illinois recognized as much in multiple cases involving the drug Xarelto, rejecting the argument that "pharmaceutical clinical testing within Illinois" is "a basis for granting personal jurisdiction over non-Illinois plaintiffs' claims." *Berousee v. Janssen Research & Dev., LLC*, No. 3:17-cv-00716-DRH, 2017 U.S. Dist. LEXIS 157619, at *9-11 (S.D. Ill. Sept. 26, 2017) (dismissing the claims of the non-Illinois plaintiffs; "[t]he instant matter is analogous to [*Bristol-Myers*]" because "the non-Illinois plaintiffs failed to allege ingestion of Xarelto in Illinois, or [that they] suffered from injuries caused by Xarelto in Illinois").[10]  In any event, plaintiffs are unable to point to anything analogous even to the tenuous "linkage between [d]efendants' in-state clinical trial

---

[9]      The cases are also bizarre procedurally because, while the court rejected the personal jurisdiction arguments presented, it transferred the cases to the plaintiffs' home jurisdictions in the same ruling, thereby obviating the personal jurisdiction objections and insulating the rulings from appellate review.  *See Dubose*, 2017 WL 2775034, at *5; *Cortina*, 2017 WL 2793808, at *5.  For this reason, too, the cases lack persuasive value and should not be followed.

[10]     The same is true of the two other cases cited by plaintiffs, which – contrary to plaintiffs' assertion – ***predated*** *Bristol-Myers*.  *See M.M. ex rel. Meyers v. GlaxoSmithKline LLC*, 61 N.E.3d 1026 (Ill. App. Ct. 2016), *cert. denied*, 138 S. Ct. 64 (2017) (mem.) (cited in Mem. at 36-37); *In re Syngenta Mass Tort Actions*, No. 3:16-cv-00255-DRH, 2017 WL 2117728 (S.D. Ill. May 15, 2017) (cited in Mem. at 37).  With respect to *M.M.* in particular, plaintiffs argue that the Supreme Court's recent denial of the defendants' petition for a writ of certiorari "signal[s] [the Supreme Court's] approval of the *M.M.* court's application of *Bristol-Myers*." (Mem. at 37.)  Not so.  "[T]he denial of a writ of certiorari imports ***no*** expression of opinion upon the merits of the case, as the bar has been told many times." *Missouri v. Jenkins*, 515 U.S. 70, 85 (1995) (emphasis added) (citation omitted).

activity and [p]laintiff[s'] injur[ies]" that was deemed sufficient in *Dubose* and *Cortina*. 2017 WL 2775034, at \*4; *see also id.* at \*3 ("The related state court case on which [p]laintiff relie[d] also note[d] that 'Saxagliptin was developed (at least in part) in California.'") (citation omitted). Most notably, in contrast to *Dubose* and *Cortina*, where the defendants did not – and could not – dispute that clinical trials necessary for the approval of the drug at issue occurred in California, *see id.*, the evidence here demonstrates that *no* conduct by the J&J defendants relevant to the specific products that are alleged to have caused these plaintiffs' injuries occurred in Missouri. For all of these reasons, plaintiffs' theory of specific jurisdiction is irreconcilable with *Bristol-Myers* and must be rejected – just as it was in *Jinright*.

\* \* \*

Because the transferor court lacked jurisdiction over the claims of the seven plaintiffs who are not diverse from the J&J defendants and PTI Royston, their claims should be dismissed, and diversity jurisdiction exists over this matter.

120835082.1

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny plaintiffs' motion to remand.

Dated:  September 30, 2019                    Respectfully submitted,

                                        *s/ Susan M. Sharko*
                                        Susan M. Sharko
                                        DRINKER BIDDLE & REATH LLP
                                        600 Campus Drive
                                        Florham Park, New Jersey 07932
                                        Telephone:  973-549-7000
                                        Facsimile:  973-360-9831
                                        Email:  susan.sharko@dbr.com

                                        *s/ John H. Beisner*
                                        John H. Beisner
                                        SKADDEN, ARPS, SLATE,
                                        MEAGHER & FLOM LLP
                                        1440 New York Avenue, N.W.
                                        Washington, D.C. 20005
                                        Telephone:  202-371-7000
                                        Facsimile:  202-661-8301
                                        Email: john.beisner@skadden.com

                                        *Attorneys for Defendants Johnson &
                                        Johnson and Johnson & Johnson
                                        Consumer Inc.*

120835082.1