# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MELISSA PARSONS AND TERRY
LEE PARSONS,

      Plaintiffs,

   v.

JOHNSON & JOHNSON,
JOHNSON & JOHNSON CONSUMER
INC. f/k/a JOHNSON & JOHNSON
CONSUMER COMPANIES INC. and,
PIKEVILLE RADIOLOGY, PLLC,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

:
:
:
:
:
:

MDL No. 2738

3:16-md-02738-FLW-LHG

Case No. 3:19-cv-21967-FLW-LHG

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

FAEGRE DRINKER BIDDLE &
REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Defendants Johnson &
Johnson and Johnson & Johnson
Consumer Inc.*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

BACKGROUND ...................................................................................................1

ARGUMENT........................................................................................................3

I.    REMOVAL WAS PROPER BECAUSE DIVERSITY
JURISDICTION EXISTS OVER PLAINTIFFS' LAWSUIT. .....................3

II.    THE COURT SHOULD ALTERNATIVELY SEVER THE CLAIMS
AND REMAND THE MEDICAL NEGLIGENCE CLAIM. .....................16

III.   THE J&J DEFENDANTS SATISFIED THE REQUIREMENTS FOR
REMOVAL. ...........................................................................................24

CONCLUSION ..................................................................................................26

ACTIVE.122006736.01

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Life Insurance Co. v. Foundation Surgery Affiliates, LLC*,
  358 F. Supp. 3d 426 (E.D. Pa. 2008)................................................................18

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997).............................................................................................11

*Asher v. Minnesota Mining & Manufacturing Co.*,
  No. Civ.A. 04CV522KKC, 2005 WL 1593941
  (E.D. Ky. June 30, 2005) ......................................................................5, 15, 16

*In re Benjamin Moore & Co.*,
  318 F.3d 626 (5th Cir. 2002)............................................................................. 4

*Breitner v. Merck & Co.*,
  No. 3:18-cv-15982 (PGS) (TJB), 2019 WL 316026
  (D.N.J. Jan. 24, 2019) ..................................................................................4, 13

*Cohen v. Office Depot, Inc.*,
  204 F.3d 1069 (11th Cir. 2000)......................................................................... 4

*Cooke-Bates v. Bayer Corp.*,
  No. 3:10-CV-261, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010) ........................18

*Crockett v. R.J. Reynolds Tobacco Co.*,
  436 F.3d 529 (5th Cir. 2006)............................................................................16

*DeGidio v. Centocor, Inc.*,
  No. 3:09-CV-721, 2009 WL 1867676 (N.D. Ohio June 29, 2009) .............18, 23

*Elliott v. Archdiocese of New York*,
  682 F.3d 213 (3d Cir. 2012).............................................................................11

*Estate of Owens v. E.I. Dupont De Nemours & Co.*,
  No. 12-111-DLB, 2013 U.S. Dist. LEXIS 189836
  (E.D. Ky. June 17, 2013) ..................................................................................20

ii

*In re Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)*,
    751 F.3d 150 (3d Cir. 2014) ............................................................4, 10, 11, 13

*In re Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)*,
    No. 11-3045, 2012 WL 1118780 (D.N.J. Apr. 3, 2012) ..................................... 4

*Geiman v. Northern Kentucky Water District*,
    No. 2:13-cv-177(WOB-CJS), 2014 WL 12573717
    (E.D. Ky. Jan. 16, 2014) ...................................................................................25

*Gilfert v. Liberty Mutual Insurance Co.*,
    No. Civ.A. 305CV527S, 2006 WL 288628 (W.D. Ky. Feb. 2, 2006)...............25

*Greene v. Wyeth*,
    344 F. Supp. 2d 674 (D. Nev. 2004) ...............................................................4, 5

*Grennell v. Western Southern Life Insurance Co.*,
    298 F. Supp. 2d 390 (S.D. W. Va. 2004)........................................................... 5

*In re Guidant Corp. Implantable Defibrillators Products Liability
    Litigation*,
    No. 07-1487 (DWF/AJB), 2007 U.S. Dist. LEXIS 64942
    (D. Minn. Aug. 30, 2007).......................................................................6, 7, 8, 9

*Hampton v. Insys Therapeutics, Inc.*,
    319 F. Supp. 3d 1204 (D. Nev. 2018)...............................................................17

*Handshoe v. DePuy Synthes Sales, Inc.*,
    No. 7:19-CV-6-REW, 2019 U.S. Dist. LEXIS 145057
    (E.D. Ky. Aug. 7, 2019)...........................................................................22, 23

*Hughes v. Sears, Roebuck & Co.*,
    No. 2:09-CV-93, 2009 WL 2877424 (N.D. W. Va. Sept. 3, 2009)...............5, 16

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)........................................................................................11

*Jameson v. Bethlehem Steel Corp. Pension Plan of Bethlehem Steel Corp.
    & Subsidiary Cos.*,
    765 F.2d 49 (3d Cir. 1985)...............................................................................12

*Johnson v. Bartley*,
    No. 15-56-ART, 2015 WL 5612251 (E.D. Ky. Sept. 21, 2015).......................23

ACTIVE.122006736.01

*Johnson v. City of Saginaw*,
No. 17-cv-13174, 2017 WL 6512451 (E.D. Mich. Dec. 20, 2017) ..................25

*Joseph v. Baxter International Inc.*,
614 F. Supp. 2d 868 (N.D. Ohio 2009) ................................................18, 22, 23

*Kelly v. Aultman Physician Center*,
No. 5:13CV0994, 2013 WL 2358583 n.8 (N.D. Ohio May 29, 2013) .............23

*Mayfield v. London Women's Care, PLLC*,
No. 15-19-DLB, 2015 WL 3440492
(E.D. Ky. May 28, 2015) ........................................................................passim

*Michalak v. ServPro Industries, Inc.*,
No. 18-1727 (RBK/KMW), 2018 WL 3122327 (D.N.J. June 20, 2018)...........25

*Newman-Green, Inc. v. Alfonso-Larrain*,
490 U.S. 826 (1989)..............................................................................17, 20

*Palermo v. Letourneau Technologies, Inc.*,
542 F. Supp. 2d 499 (S.D. Miss. 2008) ........................................................16

*Pierce v. Frink*,
No 2:17-1731 WBS DB, 2017 WL 4923508 (E.D. Cal. Oct. 31, 2017)............21

*Pittman v. Purdue Pharma Co.*,
No. 3:03cv152BN, 2004 U.S. Dist. LEXIS 9840
(S.D. Miss. Mar. 12, 2004)................................................................... 6

*In re Plavix Product Liability & Marketing Litigation*,
No. 3:13-cv-2418-FLW, 2014 WL 4954654 (D.N.J. Oct. 1, 2014) ............10, 13

*In re Propecia (Finasteride) Product Liability Litigation*,
Nos. 12-MD-2331 (JG)(VVP), 12-CV-2049 (JG)(VVP), 2013 WL
3729570 (E.D.N.Y. May 17, 2013) ...............................................................22

*In re Resorts International, Inc.*,
372 F.3d 154 (3d Cir. 2004).........................................................................11

*In re Rezulin Products Liability Litigation*,
No. MDL 1348, 00 Civ. 2843 (LAK), 2003 WL 21276425
(S.D.N.Y. June 2, 2003)....................................................................... 6

iv

*Smith v. Hendricks*,
140 F. Supp. 3d 66 (D.D.C. 2015) ...................................................................14

*Soberay Machine & Equipment Co. v. MRF Limited, Inc.*,
181 F.3d 759 (6th Cir. 1999)...........................................................................18

*In re Stryker Rejuvenate & ABG II Hip Implant Products Liability
Litigation*,
No. 13-1811 (DWF/FLN), 2013 WL 6511855
(D. Minn. Dec. 12, 2013) .........................................................................passim

*Sullivan v. Calvert Memorial Hospital*,
117 F. Supp. 3d 702 (D. Md. 2015).........................................................19, 24

*Sutter v. Oxford Health Plans LLC*,
Nos. 05-2198 (GEB), 10-4903 (GEB), 2011 WL 734933
(D.N.J. Feb. 22, 2011)....................................................................................11

*Sutton v. Davol, Inc.*,
251 F.R.D. 500 (E.D. Cal. 2008)...................................................................4, 5

*Tapscott v. MS Dealer Service Corp.*,
77 F.3d 1353 (11th Cir. 1996).......................................................................... 4

*Temple v. Synthes Corp.*,
498 U.S. 5 (1990)............................................................................................21

*United States v. Stanley*,
No. 5:11cv117-DCB-RHW, 2013 WL 4508410
(S.D. Miss. Aug. 23, 2013) ............................................................................12

*In re Zicam Cold Remedy Marketing*,
No. CV-10-0164-PHX-FJM, 2010 WL 3834019
(D. Ariz. Sept. 27, 2010)................................................................................22

## STATUTES

28 U.S.C. § 1446(a) ...............................................................................24, 25, 26

28 U.S.C. § 1447(d)............................................................................................13

Ky. Rev. Stat. Ann. § 411.182 ............................................................................14

v

# RULE

Fed. R. Civ. P. 21.....................................................................................................16

ACTIVE.122006736.01

Plaintiffs, citizens of Kentucky, are suing defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. ("JJCI") (collectively, the "J&J defendants" or "removing defendants"), two New Jersey companies, alleging that plaintiff Melissa Parsons developed ovarian cancer as a result of using Johnson's® Baby Powder and Shower to Shower® (collectively, the "Products").  Hoping to defeat diversity jurisdiction – and inclusion in this MDL proceeding – plaintiffs have also named a non-diverse healthcare provider, Pikeville Radiology ("Pikeville"), in this action.

This effort should fail for one fundamental reason:  plaintiffs' medical malpractice claim against Pikeville is fraudulently misjoined with their product-liability claims against the removing defendants.  But even if the Court were to find that the sole claim against Pikeville is not fraudulently misjoined, it should sever the malpractice claim against the nondiverse defendants and retain jurisdiction over the product-liability claims so that removing defendants are not forced to engage in duplicative and burdensome litigation that would undermine the very purpose of this MDL proceeding.

For these reasons, as detailed below, the citizenship of the non-diverse defendant should be disregarded, and plaintiffs' motion should be denied.

## **BACKGROUND**

Plaintiffs filed a First Amended Complaint ("FAC") on or about August 6,

2019 in the Pike Circuit Court, in the Commonwealth of Kentucky.  Plaintiffs allege that Ms. Parsons developed ovarian cancer as a result of using the Products. (*See, e.g.*, FAC ¶ 82.)  In addition to the removing defendants, plaintiffs have sued healthcare provider Pikeville, alleging medical negligence arising out of its treatment of Ms. Parsons.  (*Id.* ¶¶ 156-170.)  The gravamen of plaintiffs' negligence claim against Pikeville is that one of its radiologists, Dr. Kendall, "deviated from the normal standard of care in failing to timely recognize and diagnose the constellation of findings" in a CT scan "as metastatic disease."  (*Id.* ¶ 101.)  According to the First Amended Complaint, "[s]aid deviation from the normal standard of care by Dr. Kendall was a substantial contributing factor in causing a delay in diagnosis of [Ms.] Parsons' ovarian cancer," which "was and is a substantial factor in causing [her] to suffer various injuries and damages."  (*Id.* ¶ 102.)

By contrast, plaintiffs have asserted the following product-liability causes of action against the J&J defendants:  (1) strict liability; (2) negligence; (3) fraud; (4) violation of Kentucky's Consumer Protection Act ("KCPA"); and (5) punitive damages.  (*See id.* ¶¶ 104-155.)  Each of these claims centers on the purportedly "defective, unsafe, and unreasonably dangerous" nature of the Products and the removing defendants' alleged "manufacturing, marketing and selling the PRODUCTS."  (*Id.* ¶¶ 105, 110; *see also id.* ¶¶ 115-155.)

2

The J&J defendants timely removed this case to federal court on September 13, 2019, explaining that removal was proper because there is complete diversity of citizenship between plaintiffs and the removing defendants; the amount in controversy satisfies the jurisdictional minimum; and Pikeville is fraudulently misjoined.  (*See generally* Notice of Removal, ECF No. 1.)  On December 26, 2019, this case was transferred to this Court as part of the MDL proceeding.  (*See* Transfer Order, ECF No. 21.)

## ARGUMENT

## I.    REMOVAL WAS PROPER BECAUSE DIVERSITY JURISDICTION EXISTS OVER PLAINTIFFS' LAWSUIT.

Plaintiffs do not dispute that they are diverse from the removing defendants and that the $75,000 jurisdictional threshold is satisfied.  Rather, plaintiffs assert that complete diversity of citizenship does not exist in this case because defendant Pikeville is a citizen of the Commonwealth of Kentucky, like plaintiffs.  (Pls.' Mem. at 2.)  As set forth in the Notice of Removal – and as elaborated below – the citizenship of this defendant should be disregarded for purposes of complete diversity of citizenship because the single claim for *medical negligence* asserted against Pikeville is fraudulently misjoined with the *product-liability* claims asserted against the removing defendants.

The fraudulent misjoinder doctrine provides "an exception to the complete diversity requirement, whereby a diverse defendant 'may still remove the action if

3

it can establish that the non-diverse defendants were "fraudulently" named or joined solely to defeat diversity jurisdiction.'" *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, No. 11-3045, 2012 WL 1118780, at *2 (D.N.J. Apr. 3, 2012) (citation omitted), *aff'd*, 751 F.3d 150 (3d Cir. 2014); *see also Breitner v. Merck & Co.*, No. 3:18-cv-15982 (PGS)(TJB), 2019 WL 316026, at *2 (D.N.J. Jan. 24, 2019) (recognizing the fraudulent misjoinder doctrine as "an exception to the complete diversity rule") (citation omitted).  Fraudulent misjoinder arises where "the factual commonality among the plaintiffs' claims against the different classes of defendants [is] not sufficient to satisfy Rule 20." *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008); *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (fraudulent misjoinder occurs when the claims "have no real connection" to one another), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000).[1]

---

[1]      Federal courts throughout the country have recognized the validity of the fraudulent misjoinder doctrine.  *See, e.g.*, *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (noting "the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("[T]his [c]ourt agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court.") (footnotes omitted);

ACTIVE.122006736.01

Court after court has applied the doctrine of fraudulent misjoinder in almost the exact circumstances presented in this case – i.e., where a plaintiff attempts to join factually dissimilar product-liability claims against a product manufacturer with medical malpractice claims against a healthcare provider. *See, e.g.*, *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, No. 13-1811 (DWF/FLN), 2013 WL 6511855, at *1, *4 (D. Minn. Dec. 12, 2013) ("The joinder of any malpractice . . . claim against the [h]ospital [d]efendants with the other product liability claims (that are properly asserted against the device manufacturer) is inappropriate . . . ."); *Sutton*, 251 F.R.D. at 505 (finding that federal jurisdiction existed with regard to manufacturer of medical device but remanding claims against non-diverse physician/hospital defendants); *Greene*, 344 F. Supp. 2d at 683-85 (physician who prescribed drug was misjoined as a non-diverse defendant in product-liability suit against the manufacturer of the drug); *see also Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *6 (N.D. W. Va. Sept. 3, 2009) (finding that there was fraudulent misjoinder where the claims against some defendants involved "product liability legal theories," whereas the

---

*Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004) (holding that diversity jurisdiction cannot be defeated "through . . . joining nondiverse plaintiffs"); *Asher v. Minn. Mining & Mfg. Co.*, No. Civ.A. 04CV522KKC, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005) (explaining that a federal court may "find diversity jurisdiction where diversity is destroyed only through misjoinder of parties").

ACTIVE.122006736.01

claims against another defendant involved "medical negligence"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 07-1487 (DWF/AJB), 2007 U.S. Dist. LEXIS 64942, at *8 (D. Minn. Aug. 30, 2007) (denying remand and finding that a malpractice claim against a physician was fraudulently misjoined with product-liability claims against the device manufacturer); *Pittman v. Purdue Pharma Co.*, No. 3:03cv152BN, 2004 U.S. Dist. LEXIS 9840, at *18 (S.D. Miss. Mar. 12, 2004) (medical negligence claims against physician defendants were fraudulently misjoined with misrepresentation claims against pharmaceutical company because, *inter alia*, the cases involved "different facts and different witnesses" and the malpractice claims "would likely create volumes of evidence and jury confusion"); *In re Rezulin Prods. Liab. Litig.*, No. MDL 1348, 00 Civ. 2843(LAK), 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003) (denying the plaintiff's motion to remand product-liability claims against manufacturer of prescription drug, while severing and remanding malpractice claim against doctor).

For example, in *Stryker*, the plaintiff brought suit in connection with an allegedly defective hip implant, asserting claims for malpractice, negligence, and misrepresentation against non-diverse hospital defendants and claims sounding in product liability against diverse device manufacturer defendants. 2013 WL 6511855, at *4. The manufacturer defendants removed the case, and the plaintiff moved to remand. *Id.* at *1-2. The court granted the remand motion with respect

6

to the hospital defendants but denied it with respect to the manufacturer defendants, holding that joinder of the disparate sets of claims was improper. *Id.* at *4-5. The court explained that joinder of the claims against the hospital defendants with the product-liability claims against the manufacturer defendants was "inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability 'arising out of the same transaction, occurrence, or series of transactions or occurrences.'" *Id.* at *4 (citation omitted). Specifically, with respect to the medical negligence and misrepresentation claims against the hospital defendants, "such claims require evidence regarding [p]laintiff's care, treatment, and services provided by the [h]ospital [d]efendants and their staff, and representations made related thereto." *Id.* By contrast, the product-liability claims against the manufacturer defendants "will require evidence as to the development, manufacture, and testing of such devices as well as the [manufacturer] entities' knowledge, warnings, and disclosures regarding risks associated with [the products]." *Id.*

Similarly, in *Guidant*, the plaintiff sued his doctor for medical negligence, alleging that the doctor implanted a defective defibrillator and negligently removed and replaced it. 2007 U.S. Dist. LEXIS 64942, at *3-4. At the same time, the plaintiff also brought product-liability claims against Guidant, the manufacturer of the defibrillator. *Id*. at *4. Guidant removed the case, and the plaintiff moved to

7

remand.  *Id.*  In denying the remand motion, the court held that joinder of the claims was improper because they did "not both involve common questions of law or fact" and the plaintiff did not assert liability "arising out of the same transaction, occurrence, or series of transactions or occurrences."  *Id.* at *7-8 (citation omitted). According to the court, the medical negligence claim against the plaintiff's doctor would require "evidence on [the plaintiff's] care, treatment, and services provided" by the doctor.  *Id.* at *7.  By contrast, the product-liability claims against the manufacturer were "based on alleged manufacturing and design defects, alleged failure to properly warn, and alleged misrepresentation of the health risks associated with certain cardiac medical devices," which "would require evidence on the development, manufacture, and testing of [the product] along with evidence of [the manufacturer's] knowledge, warnings, and representations regarding" the allegedly defective product.  *Id.* at *7-8.  The court thus severed the action against the doctor, "preserv[ing the manufacturer's] right to removal in the remaining action."  *Id.* at *10.

The same reasoning applies here.  Plaintiffs' medical negligence claim against Pikeville is based on medical malpractice, and is legally and factually distinct from their claims against the removing defendants, which are grounded in product liability.  Specifically, the claim against Pikeville rests on its alleged "duty to provide radiology services to [its] patients, including Melissa Parsons."  (FAC ¶

8

157.)  According to the FAC, Pikeville breached that duty in "failing to timely recognize and diagnose the constellation of findings" in a CT scan "as metastatic disease," "causing a delay in diagnosis of [Ms.] Parsons' ovarian cancer."  (*Id.* ¶¶ 101-102.)  By contrast, the panoply of claims asserted against the removing defendants sound in product liability and center on the purportedly defective nature of the Products.  (*Id.* ¶ 105 (alleging that the Products were "defective, unsafe, and unreasonably dangerous for their intended and/or foreseeable uses"); *id.* ¶ 110 (negligence claim asserted against the removing defendants based on allegation that they "were aware, or should have been, that sustained perineal use of the PRODUCTS would increase the risk to users of developing ovarian cancer"); *id.* ¶ 116 (fraud-based claims asserted against the removing defendants for "engag[ing] in a strategy to promote and sell the defective PRODUCTS"); *see also id.* ¶ 137 (similar with respect to alleged KCPA violation).)

In short, just as in *Guidant* and *Stryker*, the medical negligence claims against the healthcare provider defendant would require "evidence on [the plaintiff's] care, treatment, and services provided" by the doctor, *Guidant*, 2007 U.S. Dist. LEXIS 64942, at *7, whereas the product-liability claims against the removing defendants "would require evidence on the development, manufacture, and testing of [the products] along with evidence of [the removing defendants'] knowledge, warnings, and representations regarding" the products, *id.* at *7-8; *see*

9

*also Stryker*, 2013 WL 6511855, at *4.  Accordingly, the Court should disregard the citizenship of Pikeville and deny plaintiffs' motion.

Plaintiffs argue that remand is appropriate because:  (1) "neither the Third Circuit nor this Court have adopted the doctrine of fraudulent misjoinder"; and (2) their claim against Pikeville is properly joined with their multiple product-liability claims against the removing defendants.  (Pls.' Mem. at 12-15.)  As discussed below, both arguments should be rejected.

***First***, although this Court has previously declined to adopt the fraudulent misjoinder doctrine, *In re Plavix Prod. Liab. & Mktg. Litig.*, No. 3:13-cv-2418-FLW, 2014 WL 4954654, at *11-14 (D.N.J. Oct. 1, 2014), the removing defendants respectfully urge the Court to reconsider that ruling or – at a minimum – not extend it to the unique circumstances here involving disparate claims asserted against dissimilar defendants.  As the Court acknowledged in *Plavix*, removal on fraudulent misjoinder grounds was approved by the district court in the *Fosamax* litigation in a case that later went to the Third Circuit.  *See Plavix*, 2014 WL 4954654, at *11.  Although the Third Circuit saw "no reason to disturb" the jurisdictional ruling, *Fosamax*, 751 F.3d at 156 n.10, this Court did not regard that statement as an affirmation of the fraudulent misjoinder ruling because the issue "was not on appeal before the Third Circuit," *Plavix*, 2014 WL 4954654, at *11 n.12.  But the jurisdictional issue was necessarily before the Third Circuit in

10

ACTIVE.122006736.01

*Fosamax* because its subject-matter jurisdiction over the appeal depended on the correctness of the district court's fraudulent misjoinder ruling – a fact that the Third Circuit acknowledged in that case. *See Fosamax*, 751 F.3d at 156 n.10 (explaining that the district court "exercised diversity jurisdiction under 28 U.S.C. § 1332 after it 'disregard[ed], for purposes of jurisdiction, the citizenship of fraudulently joined' parties") (citation omitted); *see also, e.g.*, *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) (cited in *Fosamax*, 751 F.3d at 155) (noting that "[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, ***but also that of the lower courts in a cause under review, even though the parties are prepared to concede it***" (emphasis added) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997)); "[n]o action of the parties can confer subject-matter jurisdiction upon a federal court" (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); and "[s]ubject matter jurisdiction cannot be conferred by consent of the parties" (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004))). Moreover, a number of courts have specifically recognized that when an appellate court affirms a case on the merits where the parties did not contest the lower court's jurisdictional decision, it implicitly affirms the jurisdictional holding as well. *See, e.g.*, *Sutter v. Oxford Health Plans LLC*, Nos. 05-2198 (GEB), 10-4903 (GEB), 2011 WL 734933, at *2 (D.N.J. Feb. 22, 2011) ("[I]n affirming Judge

Greenaway's October 31, 2005 denial of Oxford's motion to vacate the Partial

Award, the Third Circuit did not address subject-matter jurisdiction in any way.

As such, the procedural history of this case makes clear that Judge Greenaway

explicitly, *and a panel of the Third Circuit implicitly*, determined that diversity

jurisdiction exists in this case.") (emphasis added), *aff'd*, 675 F.3d 215 (3d Cir.

2012), *aff'd*, 569 U.S. 564 (2013); *United States v. Stanley*, No. 5:11cv117-DCB-

RHW, 2013 WL 4508410, at *2 (S.D. Miss. Aug. 23, 2013) ("Although the Fifth

Circuit was not asked to address explicitly the basis for the district court's

jurisdiction over a § 523(a)(1)(C) suit, the district court's jurisdiction was certainly

implied from the Fifth Circuit's decision to affirm on the merits."), *aff'd*, 595 F.

App'x 314 (5th Cir. 2014) (per curiam); *cf. Jameson v. Bethlehem Steel Corp.*

*Pension Plan of Bethlehem Steel Corp. & Subsidiary Cos.*, 765 F.2d 49, 52 (3d Cir.

1985) (discussing a previous case in which the Third Circuit had "*sub silentio*

found jurisdiction").  This is exactly what happened in *Fosamax* – although the

Third Circuit's treatment of the issue was cursory, it necessarily did "resolve" the

question of subject-matter jurisdiction, and its resolution was that fraudulent

misjoinder is a sound basis for exercising jurisdiction over a case removed on

diversity grounds.[2]  Accordingly, and particularly given that other district courts

---

[2]       To the extent the Court remains reluctant to apply the fraudulent misjoinder

ACTIVE.122006736.01

within the Third Circuit have more recently recognized fraudulent misjoinder as "an exception to the complete diversity rule," *Breitner*, 2019 WL 316026, at *2 (citation omitted), the removing defendants request that the Court reconsider its prior ruling.

In any event, the Court should – at a minimum – decline to apply the reasoning of *Plavix* to the unique circumstances of this case.  In *Plavix*, the Court was faced with the misjoinder of multiple ***plaintiffs*** asserting the same kinds of causes of action against the same defendants, *see* 2014 WL 4954654, at *2, *10-11, whereas this case involves the misjoinder of disparate ***claims*** against distinct ***defendants***.  In other words, plaintiffs seek to litigate two entirely different sets of claims – both of which turn on different facts and are governed by different legal requirements.  Simply put, whatever factual differences existed in *Plavix* pale in comparison to the utter lack of factual and legal connection between plaintiffs'

---

doctrine without more expansive guidance from the Third Circuit, the J&J defendants respectfully submit that such clear guidance may never come due to the nature of fraudulent misjoinder and the rules governing orders remanding cases to state court.  Specifically, if a federal court grants a motion to remand, the defendant never has an opportunity to challenge that ruling in federal court.  28 U.S.C. § 1447(d).  Conversely, if a federal court denies remand, the plaintiff would have an opportunity to challenge that ruling only if the defendant ultimately prevails in the litigation – and plaintiffs in such cases may well choose not to do so.  Indeed, that is precisely what happened in *Fosamax*, where the district court denied remand on fraudulent misjoinder grounds, the defendants ultimately prevailed at trial and the plaintiffs elected not to challenge the court's jurisdictional ruling.  *See Fosamax*, 751 F.3d at 156 n.10.

13

single medical malpractice claim and their multiple product-liability claims against the removing defendants.  For this reason as well, the removing defendants respectfully submit that *Plavix* does not support plaintiffs' motion to remand.

*Second*, plaintiffs alternatively argue that the claims are not fraudulently misjoined and that removal was improper because "[e]ach claim ultimately arises out of [Ms.] Parsons' development of ovarian cancer as a result of being exposed to J&J's products."  (Pls.' Mem. at 14.)  "It is immaterial," however, "that the claims are linked, in *some* sense, as [p]laintiff claims."  *Smith v. Hendricks*, 140 F. Supp. 3d 66, 74 (D.D.C. 2015) (emphasis added) (rejecting argument that malpractice and product-liability claims were not fraudulently misjoined because if "Boston Scientific had never manufactured the Advantage system, Dr. Hendricks could never have performed surgery on [p]laintiff that entailed implanting the Advantage system").  Rather, "the applicable test for joinder requires more" – specifically, "whether [p]laintiff seeks relief from the several defendants 'arising out of the same transaction, occurrence, or series of transactions or occurrences.'"  *Id.*[3]

---

[3]     There is no truth to plaintiffs' argument that Kentucky Revised Statute Annotated 411.182 "*mandate[s]*" the joinder of the dissimilar product-liability and malpractice claims.  (Pls.' Mem. at 14 (emphasis added).)  This provision merely addresses allocation of fault in tort actions with multiple defendants.  It does not remotely suggest that a plaintiff who asserts two different torts (one for product liability and one for medical malpractice) must join them in one lawsuit.

14

And the only fair reading of the FAC is that plaintiffs have failed that test as to the sole claim against Pikeville and the entirely different set of product-liability claims against removing defendants.  As already discussed, plaintiffs' claims against the removing defendants center on their alleged conduct with regard to the purportedly defective Products, while the sole basis for Pikeville's alleged liability is that it "failed to use that degree of *medical care* that an ordinarily prudent healthcare provider would have rendered."  (FAC ¶ 158 (emphasis added).)  Put simply, "[a]ny liability that may be found against either the [removing] entities or the [radiology] [d]efendant[] would not be a basis for liability as to the other. However, separate liability as to each could be separately found."  *Stryker*, 2013 WL 6511855, at *4.  Under these circumstances, the factual and legal bases underlying the claim asserted against Pikeville are simply too dissimilar from those underlying the product-liability claims asserted against removing defendants, rendering that non-diverse defendant fraudulently misjoined.

Finally, plaintiffs argue that "J&J particularly cannot show the joinder was 'egregious'" and "cannot even show what it means to be egregious in the Third Circuit."  (Pls.' Mem. at 15.)  This argument is a red herring.  As another court explained, "the proper inquiry" for resolving fraudulent joinder questions "is whether there is even arguably a *reasonable* basis for predicting that state law might impose liability on the nondiverse defendants."  *Asher*, 2005 WL 1593941,

15

at \*7 (emphasis added).  Applying "the same rationale to fraudulent misjoinder as to fraudulent joinder" compels a straightforward standard:  "whether there is even arguably a reasonable basis for predicting that the state court would find that the claims were properly joined."  *Id.*; *see also, e.g.*, *Hughes*, 2009 WL 2877424, at \*3 ("[I]t is clear that the core issue is whether there is a '*reasonable possibility* that a state court would find that [the plaintiffs'] claims against [one set of defendants] were properly joined with [the] claims against the other defendants[.]'") (emphasis added) (citation omitted); *Palermo v. Letourneau Techs., Inc.*, 542 F. Supp. 2d 499, 525 n.7 (S.D. Miss. 2008) ("To the extent that 'egregiousness' may nevertheless be required . . . , the [c]ourt finds that the requirement is met by the absence of a reasonable possibility that the state court would find joinder proper in this case.").  The answer to that question here is no, for the reasons set forth above.

For all of these reasons, Pikeville is fraudulently misjoined and remand is improper.

## II.     THE COURT SHOULD ALTERNATIVELY SEVER THE CLAIMS AND REMAND THE MEDICAL NEGLIGENCE CLAIM.

Even if the Court were to find that the claims against the healthcare provider defendant and the removing defendants were not fraudulently misjoined, it should exercise its discretion to sever the claims against Pikeville under Federal Rule of Civil Procedure 21 and assert jurisdiction over the product-liability claims against the removing defendants, as explained in the Notice of Removal.  *See Crockett v.*

ACTIVE.122006736.01

*R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) (removal was proper following state court's severance of plaintiff's improperly – though not fraudulently – joined claims against healthcare defendants from his claims against the tobacco defendants because "the medical negligence and malpractice claim and the burden of proof to sustain [that] claim is totally different [from] the burden of proof . . . necessary to secure judgment for product liability") (citation omitted). (*See also* Notice of Removal ¶¶ 18-25.)

In their motion to remand, plaintiffs advance two arguments as to why severance would be improper:  (1) the Court must evaluate federal subject-matter jurisdiction first; and (2) requiring plaintiffs to litigate two separate lawsuits simultaneously would unfairly prejudice them.  (Pls.' Mem. at 15-20.)  Neither argument has any merit.

**First**, relying primarily on *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204 (D. Nev. 2018), plaintiffs argue that severing the single claim against Pikeville and remanding it "would be 'an improper end-run around the [c]ourt's rejection of the fraudulent misjoinder doctrine.'"  (Pls.' Mem. at 15 (quoting *Hampton*, 319 F. Supp. 3d at 1214 n.10).)  But "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at *any* time." *Newman-Green, Inc. v. Alfonso-Larrain*, 490 U.S. 826,

ACTIVE.122006736.01

832 (1989) (emphasis added); *see also Aetna Life Ins. Co. v. Found. Surgery Affiliates, LLC*, 358 F. Supp. 3d 426, 436 (E.D. Pa. 2008) (same).

Consistent with this principle, removing defendants respectfully submit that the *Hampton* court's reasoning is at odds with decisions from courts across the country that have severed claims against healthcare defendants in cases similar to this one because "it is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity."  *See Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *3 (E.D. Ky. May 28, 2015) (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763 (6th Cir. 1999)); *DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *5 (N.D. Ohio June 29, 2009), *as amended* (July 8, 2009) ("Having reached my determination that diversity jurisdiction can be perfected by remanding the claims against the [d]ealthcare [d]efendants on the basis of their dispensability, it is not necessary to address the parties' contention with regard to fraudulent joinder and/or misjoinder."); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 874 (N.D. Ohio 2009) (severing claims against non-diverse healthcare defendants and therefore finding it was unnecessary to opine on "whether the [h]ealthcare [d]efendants were fraudulently misjoined to determine whether diversity jurisdiction exists"); *Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010) (severing claim against healthcare

ACTIVE.122006736.01

defendant and stating that "Rule 21 permits the [c]ourt to sever a party from a case in order to achieve complete diversity and establish proper jurisdiction of a civil action"); *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 703 n.1, 706 (D. Md. 2015) (severing medical negligence claims from product-liability claims under Rule 21 and stating that "the medical negligence claims against the [healthcare defendants] involve legal standards and factual inquiries distinctly different from the products liability claims").

For example, in *Mayfield*, the plaintiff alleged injuries arising out of a pelvic mesh implant surgery and brought product liability claims against the implant manufacturers and medical malpractice claims against the non-diverse physician and his clinic. *See* 2015 WL 3440492, at *1. The manufacturer defendants removed the case to federal court, arguing that the non-diverse healthcare defendants should be severed. *Id.* at *2. The court agreed, finding that the healthcare defendants should be severed because the treating physician and his clinic were not necessary parties to the litigation against the manufacturer defendants. *Id.* at *4. In so finding, the court stated that the claims against the healthcare defendants were "highly distinct" from those against the manufacturers because they were "comprised of unique legal elements" and "based on completely different factual allegations." *Id.* Further, the court stated that "[h]aving concluded that [the healthcare defendants] should be severed from this action

pursuant to Rule 21, the [c]ourt need not address the doctrine of fraudulent misjoinder." *Id.* at *6.

Here, just as in *Mayfield*, plaintiffs' medical negligence claim brought against the healthcare provider, Pikeville, involves "unique legal elements" and is "based on completely different factual allegations" from the product-liability claims asserted against the removing defendants. *See id.* at *4. Accordingly, even if the Court finds that the claim against Pikeville is not fraudulently misjoined, the Court should sever and remand that claim under Rule 21.[4]

***Second***, plaintiffs alternatively argue that prejudice precludes the removing defendants' request for severance. (Pls.' Mem. at 19.) Not so. As previously explained – and as discussed in the Notice of Removal – Pikeville is not a necessary party because the resolution of a claim against it would not necessarily resolve plaintiffs' claims against the J&J defendants. (Notice of Removal ¶¶ 19-20.) And because the question of prejudice only comes into play when a non-

---

[4]     Plaintiffs rely heavily upon *Estate of Owens v. E.I. Dupont De Nemours & Co.*, No. 12-111-DLB, 2013 U.S. Dist. LEXIS 189836 (E.D. Ky. June 17, 2013). However, that decision ***predated*** *Mayfield*, which was decided by the same judge. Although *Mayfield* does not address *Owens*, that court's most recent articulation of its view of severance could not be clearer: "[i]t is well-settled that Rule 21 can be used to sever a dispensable, nondiverse party in order to preserve federal jurisdiction." 2015 WL 3440492, at *3. The removing defendants respectfully urge the Court to follow *Mayfield*, which is rooted in the Supreme Court's decision in *Newman-Green*, 490 U.S. at 832. *See id.* (citing *Newman-Green*, 490 U.S. at 832).

ACTIVE.122006736.01

diverse defendant is a necessary party, plaintiffs' claim of prejudice is legally beside the point. *See Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) ("Here, no inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied."); *Mayfield*, 2015 WL 3440492, at *5.

In any event, plaintiffs' claim of prejudice is without merit. Plaintiffs initially complain that severance will result in "delay," as "MDL practice is slow." (Pls.' Mem. at 16-17 (citation omitted).) But the circumstances of this MDL proceeding tell a different story. Indeed, there has been significant progress for cases like plaintiffs' that are pending in the MDL, most notably in the areas of fact discovery, expert discovery, and motion practice related to the admissibility of expert witnesses' opinions. *See Pierce v. Frink*, No 2:17-1731 WBS DB, 2017 WL 4923508, at *4 (E.D. Cal. Oct. 31, 2017) (rejecting plaintiff's argument that she would be "unfairly prejudiced by a delay in [MDL] proceedings" because "the efficiencies gained through the MDL will benefit *all* parties") (citation omitted).

Moreover, plaintiffs' claim that severance "would subject her to multiple discovery and evidence depositions" (Pls.' Mem. at 16) is backwards. As the *Mayfield* court explained, "[t]he cost and burden of litigating against [the removing defendants] would drop considerably," and "they could proceed with discovery of the medical malpractice claim ***immediately***, and do so more efficiently, as other attorneys will take the lead in the . . . MDL." 2015 WL 3440492, at *5 (emphasis

21

added).  It is precisely for these reasons that courts have routinely found that the

existence of an MDL proceeding weighs *against* prejudice and *supports* severance.

*See, e.g.*, *id.*; *Joseph*, 614 F. Supp. 2d at 873 ("[T]he plaintiffs will benefit from the

MDL process:  they will not bear the burden of having to engage on their own, and

at their sole expense, in discovery vis-a-vis Baxter."); *In re Propecia (Finasteride)*

*Prod. Liab. Litig.*, Nos. 12-MD-2331 (JG)(VVP), 12-CV-2049 (JG)(VVP), 2013

WL 3729570, at *8 (E.D.N.Y. May 17, 2013) ("The MDL procedure is designed to

direct judicial resources and the parties' pretrial litigation efforts more efficiently

to benefit both plaintiffs and defendants.").  In short, litigating the product-liability

claims against the removing defendants in the MDL proceeding – which already

includes thousands of similar cases – will inure to the benefit of *both* plaintiffs and

the removing defendants and "preserve the interests of judicial expediency and

justice."  *Stryker*, 2013 WL 6511855, at *5; *see also In re Zicam Cold Remedy*

*Mktg.*, No. CV-10-0164-PHX-FJM, 2010 WL 3834019, at *2 (D. Ariz. Sept. 27,

2010) (explaining that purpose of MDL proceedings is "to conserve the resources

of the parties, their counsel and the judiciary") (citation omitted).[5]

      Plaintiffs also assert that severance would prejudice them by forcing them to

---

[5]    Plaintiffs summarily assert that severance would not be proper because the J&J defendants "will certainly suffer no prejudice if severance is denied."  (Pls.' Mem. at 19.)  But the only case they cite – *Handshoe v. DePuy Synthes Sales, Inc.*,

undergo "the expense of two trials rather than one."  (Pls.' Mem. at 18.)  But other courts have rejected such conclusory arguments against severance.  *See DeGidio*, 2009 WL 1867676, at *2-3, *4-5 ("While fighting on two fronts will no doubt be inconvenient, and probably more expensive, I do not find the maintenance of two lawsuits unfairly or unduly prejudicial."); *Kelly v. Aultman Physician Ctr.*, No. 5:13CV0994, 2013 WL 2358583, at *3 n.8 (N.D. Ohio May 29, 2013) ("[T]he mere fact that plaintiff will be maintaining two lawsuits is not unduly or unfairly prejudicial, and does not require a finding that the [m]edical [d]efendants are necessary or dispensable parties.").  To the contrary, courts have recognized that "the inconvenience and potential prejudice to [the defendants]" if the court keeps a case out of the MDL proceeding would "substantially outweigh the inconvenience and possible prejudice to the plaintiffs" because the defendants "would potentially be fighting many more than just two fronts."  *Joseph*, 614 F. Supp. 2d at 873.

---

No. 7:19-CV-6-REW, 2019 U.S. Dist. LEXIS 145057 (E.D. Ky. Aug. 7, 2019) – specifically distinguished the facts of that case from others on the ground that there was no pending MDL proceeding, implicitly recognizing that this undermined the defendants' claim of prejudice in that case.  *Id.* at *12 n.8; *see also Johnson v. Bartley*, No. 15-56-ART, 2015 WL 5612251, at *3 (E.D. Ky. Sept. 21, 2015) (cited in Pls.' Mem. at 16) (case was "distinguishable on its facts" from other cases granting severance because "there [wa]s ***no*** MDL") (emphasis added).  Here, by contrast, there is an MDL proceeding overseeing thousands of talcum powder cases, which is precisely why the removing defendants will suffer considerable prejudice if the claim against Pikeville is not severed, as discussed in text.

Finally, plaintiffs argue that "[s]everance would also put [them] in a position in which they may not achieve full recovery due to the empty-chair defenses each [d]efendant has raised." (Pls.' Mem. at 18.) But the removing defendants could not escape liability in federal court by merely pointing to the "empty chair" of the missing defendant – i.e., Pikeville. After all, the claim against Pikeville is distinct from those asserted against the removing defendants; thus, plaintiffs' burden of showing culpability against each defendant remains identical regardless of whether the litigation proceeds together or separately, as courts have repeatedly held. *See, e.g.*, *Sullivan*, 117 F. Supp. 3d at 707-08 (severing and remanding claims against healthcare defendants); *Mayfield*, 2015 WL 3440492, at *5 (same).

For all of these reasons, even if the Court declines to find that the claim against Pikeville is fraudulently misjoined, the Court can and should sever that claim and retain jurisdiction over the product-liability claims against the removing defendants.

## III.   THE J&J DEFENDANTS SATISFIED THE REQUIREMENTS FOR REMOVAL.

Finally, the J&J defendants have satisfied all procedural requirements of 28 U.S.C. § 1446(a).

In their motion to remand, plaintiffs ask the Court to decline to exercise jurisdiction over this case because the J&J defendants failed to satisfy 28 U.S.C. § 1446(a) by not attaching a copy of Pikeville's Answer to the First Amended

24

Complaint to their Notice of Removal.  (Pls.' Mem. at 20.)  However, courts have consistently held that the failure to attach any pleadings, process, or orders required by 28 U.S.C. § 1446(a) is a procedural defect that may be cured.  *See Geiman v. N. Ky. Water Dist.*, No. 2:13-cv-177(WOB-CJS), 2014 WL 12573717, at *4 (E.D. Ky. Jan. 16, 2014) (holding that defendant's subsequent filing of state court record cured deficient notice of removal); *Gilfert v. Liberty Mut. Ins. Co.*, No. Civ.A. 305CV527S, 2006 WL 288628, at *3 (W.D. Ky. Feb. 2, 2006) (concluding that "an omission to file a copy of a summons would be treated as a remediable procedural defect with no impact upon the jurisdiction of the court"); *Johnson v. City of Saginaw*, No. 17-cv-13174, 2017 WL 6512451, at *2 (E.D. Mich. Dec. 20, 2017) (holding that defendant's failure to attach a copy of the summons to the notice of removal was a de minimis procedural defect that was curable and did not warrant remand; "[c]ourts have reached that conclusion almost without exception"); *Michalak v. ServPro Indus., Inc.*, No. 18-1727 (RBK/KMW), 2018 WL 3122327, at *4 (D.N.J. June 20, 2018) (holding that "failure to attach proper summons" was a *de minimis* procedural defect that may be cured). Plaintiffs do not cite any cases suggesting – much less holding – otherwise.

The J&J defendants filed a Supplementation of State Court Record on October 7, 2019.  (*See* J&J Defs.' Notice of Supplementation of State Court Record, ECF No. 10.)  Thus, to the extent that the J&J defendants' Notice of

25

Removal failed to attach any pleadings, process, or orders required by 28 U.S.C. § 1446(a), the omission was a procedural defect that has been cured, and plaintiffs' arguments are thus moot.

## **CONCLUSION**

For the foregoing reasons, the Court should deny plaintiffs' motion to remand.

Dated: February 18, 2020

Respectfully submitted,

*s/ Susan M. Sharko*
Susan M. Sharko
FAEGRE DRINKER BIDDLE &
REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone: 973-549-7000
Facsimile: 973-360-9831
Email: susan.sharko@faegredrinker.com

*s/ John H. Beisner*
John H. Beisner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-7000
Facsimile: 202-661-8301
Email: john.beisner@skadden.com

*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

ACTIVE.122006736.01