**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | CIVIL ACTION NO. 3:16-md-2738-FLW-LGHG<br><br>MDL NO. 2738 |
| *THIS DOCUMENT RELATES TO ALL CASES* |  |

**MEMORANDUM IN SUPPORT OF THE PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER 7(A) ESTABLISHING THE TALC (MDL NO. 2738) COMMON BENEFIT FEE AND EXPENSE ACCOUNTS TO COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES INCURRED FOR CASE ADMINISTRATION AND THE COMMON BENEFIT**

Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC") hereby submits the following *Memorandum of Law in Support of its Motion for Entry of Case Management Order 7(A) Establishing the Talc (MDL 2738) Common Benefit Fee and Expense Accounts to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for Case Administration and the Common Benefit*.

## I.     __INTRODUCTION__

On October 10, 2016, the Judicial Panel on Multidistrict Litigation ("Panel") created this multidistrict litigation ("MDL"). The MDL now involves approximately 17,147 filed cases and it is anticipated that additional cases will be filed directly or transferred into this MDL. The PSC has worked diligently to create a cohesive, cooperative team of attorneys from across the nation to prosecute this mass tort litigation in this MDL and to coordinate with attorneys representing plaintiffs in various state courts who are litigating cases involving Johnson & Johnson Talcum Powder products.

On August 9, 2017, this Court entered Case Management Order No. 7 ("CMO 7"),[1] which established standards and procedures for counsel who would be seeking an award of common benefit fees and reimbursement of common benefit costs for reporting their time and expenses to the Court appointed auditor, Alan Winikur, CPA. CMO 7 also provided for the creation of a litigation fund involving PEC and PSC member firms to which a contribution of money could be made as a litigation fund account for use in paying the common benefit expenses in this litigation.

Pursuant to CMO 7, the members of the PEC, PSC and common benefit attorneys have performed and will continue to perform significant and substantial

---

[1] ECF. Doc. No. 426.

services for the common benefit of all plaintiffs. A substantial amount of administrative, discovery, and expert work has taken place to date with dozens of cooperating lawyers incurring thousands of hours of time and substantial expenses. As this case moves into the next phase,[2] the common benefit attorneys will continue to zealously prosecute this case, including the development of additional discovery and trying bellwether cases, if necessary.  This will require the continued investment of significant resources, including time, effort and money, to prepare for bellwether trials and develop a Trial Package for remanded cases. CMO 7 states, "[a]t an appropriate time the Court will establish a mechanism for creating funds for reimbursing counsel for common benefit costs and awarding common benefit fees." To ensure that common benefit attorneys are fairly compensated, this motion seeks an order supplementing CMO 7 to establish a common benefit assessment for attorneys' fees and costs to be assessed against each "Participating Counsel" and their clients who will receive monetary proceeds in the event her case is resolved through settlement or judgment.

A common benefit fund is a judicially-supervised fund that is established to spread the cost of efforts undertaken by counsel for the benefit of all, among all

---

[2] On May 15, 2020, the Court entered an Order providing for the next phase of this case, addressing the random selection of cases to then be reduced to a discovery pool of cases for a bellwether trial. (ECF. Doc. No. 13317). On May 26, 2020, the Court entered an additional Order for the implementation of the random selection of cases to be administered by Special Master Joel Pisano. (ECF. Doc. No. 13428).

beneficiaries of such efforts. These funds (consisting of money for paying attorneys' fees and reimbursing expenses–sometimes divided into two separate funds) are typically established and governed by a common benefit order and are created in accordance with the century-old common benefit doctrine, which empowers district courts to apportion fees and costs among all beneficiaries as a matter of federal equity jurisdiction. Common benefit funds are commonplace in modern multidistrict litigation. Indeed, every edition of the Federal Judicial Center's *Manual for Complex Litigation* has recommended the creation of both a plaintiff leadership structure and a mechanism for compensating these appointed counsel (on a contingent basis) for the work they perform and costs they incur for the benefit of all plaintiffs. *See* Eldon E. Fallon, *Common Benefit Fees in MDL Cases*, 74 La. L. Rev. 323 (2014).

To date, the members of the Plaintiffs' Steering Committee ("PSC") have already committed substantial time and effort for the benefit of all Plaintiffs. These efforts include drafting and filing a Master Complaint (with a corresponding Short Form Complaint); conducting extensive legal research; establishing discovery training and review protocols; analyzing millions of pages of documents produced by Defendants; establishing centralized document and work-product platforms; drafting and serving initial written discovery on Defendants and Third-Parties; interviewing, retaining and preparing world-renown experts in the fields of epidemiology, gynecologic oncology, toxicology, cell biology, genetics, materials

analysis, Raman spectroscopy, geology, pathology, fragrances, and cosmetic regulations; producing expert reports; preparing these experts for depositions; and having some of these expert witnesses provide testimony at the *Daubert* hearing on general causation before the Court during July 2019. In connection with the *Daubert* hearings the PSC performed extensive legal research and drafted thousands of pages of briefs, both challenging Defendants' experts and defending the PSC's experts. Following the *Daubert* hearing, the Court requested counsel to prepare and submit additional briefing in support of their positions, which the PSC accomplished.

In addition to the many thousands of hours of attorney and staff time, the work performed by the PSC and the common benefit attorneys, this litigation has required a substantial financial investment of money to pay for the expenses of the litigation, with no guarantee of any recovery or reimbursement of the expenses advanced. And this is only the start. As the litigation moves into the next phase, it is anticipated that additional funds will be spent in relation to the substantial time and efforts that will be undertaken to prepare and try bellwether cases. In addition, to fulfil its charge as a leadership committee, the PSC will devote considerable time and expense to prepare the common benefit work product (*i.e.,* the trial package) to ensure that plaintiffs whose cases are remanded to their Transferor Courts have the necessary general causation and liability evidence to litigate their cases.

Due to these extensive work efforts, financial investments and the future work that remains to be completed, the PSC respectfully submits that the litigation has advanced to the point that it is necessary and appropriate to establish a common benefit fund and to establish an assessment percentage to be levied against cases to create a fund by which to compensate counsel for their common benefit time and reimburse counsel for their common benefit expenses. To that end, the PSC submits proposed Case Management Order No. 7(A) ("CMO 7(A)") with an attached proposed Participation Agreement that will be a pre-requisite to counsel having access to the common benefit work product that is created in this MDL.

## II.    THE PROPOSED COMMON BENEFIT ORDER

Proposed CMO 7(A):

- creates a procedure for plaintiffs' counsel to execute a Participation Agreement through which counsel may obtain access to the common benefit work product;

- sets an "early participation" assessment amount of 8% (6% fees and 2% costs) for counsel who execute a Participation Agreement within certain time frames;

- sets "late participation" assessment amount of 12% (10% fees and 2% costs) for counsel who execute a Participation Agreement at a date after eligibility for the "early participation" assessment has expired for a particular attorney;

- requires Defendants to hold back the assessment amounts from any settlements or other recoveries until they ascertain from the PEC if the case is one that is subject to assessment and if so at what assessment percentage; and,

- establishes procedures for establishing and administering bank accounts for the common benefit fund.

The purpose of proposed CMO 7(A) is to: (1) establish fee and expense funds and to preserve them  until the Court later determines eligibility for common benefit fees and cost reimbursement; (2) to avoid unnecessary conflicts and expense, conserve judicial resources, and expedite the disposition of all cases by enabling the coordination of this MDL with cases separately pending in state courts that are also litigating claims involving Johnson's Baby Powder and/or Shower to Shower products ("Talcum Powder Products") which share common issues and involve common discovery; (3) to provide for the fair and equitable sharing among Plaintiffs and their counsel of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all Plaintiffs in this complex litigation; and (4) to enable Plaintiffs' attorneys who desire to obtain the work-product of the PSC and the work-product of others who perform common benefit work in the MDL and state court to obtain same in a manner that is consistent with the below provisions (collectively, and as defined *infra*, the Common Benefit Work Product "CBWP"), upon an agreement by the signatory Plaintiffs' attorneys that the claims of their clients, whether filed or unfiled, shall be subject to an assessment that will fund the Talc Common Benefit Fee Account ("TCBFA") and fund a second fund designated the Talc Common Benefit Expense Account ("TCBEA").

III.   **ARGUMENT**

    A.   **The Court Has Well-Established Authority to Establish a Common Benefit Fund**

For more than a century, the Supreme Court has recognized both the equitable imperative and practical necessity of providing judicially supervised and enforced mechanisms to spread the costs of efforts undertaken for the common benefit among all beneficiaries. *See Trustees v. Greenough*, 105 U.S. 527 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing v. Van Gemert*, 444 U.S. 472 (1980). The resulting "common benefit doctrine" empowers the district courts to apportion such fees and costs among all beneficiaries as a matter of federal equity jurisdiction and is the long-standing principle that modern MDL courts have adopted and operationalized through common benefit orders. *See, e.g., In re Bextra & Celebrex Mkt. Sales Prac. & Prod. Liab. Litig.*, No. 05-1699, 2006 WL 471782, at *1 (N.D. Cal. Feb. 28, 2006); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. CV 09-4115, 2020 WL 128589, at *25 (E.D. La. Jan. 10, 2020).

The entry of common benefit orders by MDL courts has long been approved as a case management exercise, arising not only from the courts' equity jurisdiction under the common benefit doctrine, but also from the additional authority of MDL courts to assess common benefit fees and costs that "comes from the inherent

'managerial' power over the consolidated litigation." *In re Cook Medical, Inc., Pelvic Repair* Systems, 365 F. Supp. 3d 685, 695 (MDL No. 2440) (S.D.W.V. 2019) (citing cases).[3] A trial court has managerial power that has been described as "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), as cited in *Florida Everglades*, 549 F. 2d at 1012.

### B. The Requested Common Benefit Fee Assessment Is Fair and Reasonable

The requested fee assessment of 6% for the "Early Participation" counsel is well within the norm for large and complex multidistrict litigation.[4]  In proposing

---

[3] *See also In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); *In re Zyprexa Prods. Liab. Litig.* (MDL No. 1596), 467 F. Supp. 2d 256, 265-267 (E.D.N.Y. 2009); *In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 268 F. Supp. 2d 907 (N.D. Ohio 2003), *affirmed*, 398 F.3d 778 (6th Cir. 2005); *In re Genetically Modified Rice Litig.*, No. 06-1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010) ("An MDL court's authority to establish a trust and to order compensations to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power."). *Manual for Complex Litigation* § 14.215 (4th ed., Federal Judicial Center 2004)).

[4] In the event of a global settlement (partial or full), or other settlement program with respect to MDL 2738 including a settlement program that also includes unfiled claims and/or cases filed in state court, such as a global private settlement program, a settlement class action or any other form of a global settlement, the PSC and Common-Benefit Attorneys may determine as appropriate under the circumstances

this percentage, the PSC considered several factors including: the substantial time and effort that has occurred and will be necessary to prosecute the litigation; the complexity of the legal issues; the number of cases filed in the MDL and state court proceedings; the complexity and cost of discovery; the reasonable values of various types of cases in the litigation; the likelihood and timing of any potential settlement and the percentages adopted and results obtained in other similar cases. Furthermore, the assessment percentage has been agreed to by the entire PSC, all of whom will be subject to the assessment for filed and unfiled cases in which they have individual representation agreements, including many filed in state court.[5]

A fee assessment of 6% falls in the lower range of fee assessments granted in other MDLs[6]:

---

to apply to the Court for attorneys' fees and reimbursement of expenses at a percentage that is different from (greater or lesser) than the assessment percentage.

[5] There is one exception that the PSC discloses to the Court. The Lanier Law Firm, which is a member of the PEC, had tried to a verdict the case of *Ingham, et al. v. Johnson & Johnson, et al.*, Cause No. 1522-CC10417-01 (Circ. Court of City of St. Louis, Missouri). Upon discussion by all members of the PSC, the PSC has unanimously agreed with The Lanier Law Firm, that the *Ingham case* will not be subjected to the MDL assessment, except any portion of the case that comes into the MDL following a decision by the Missouri appellate court. The PSC also agreed with The Lanier Law Firm that all other cases in which The Lanier Law Firm has an interest – MDL, state, filed, and unfiled – will be assessed and that *Ingham*-related expenses and hours will not qualify for common benefit consideration unless the case comes into the MDL and is assessed.

[6] The PSC stand ready to provide the Court with copies of the orders referenced in the chart in the text should the Court wish to review them in detail.

| Case | MDL No. | Assessment |
|---|---|---|
| *In Re: Aqueous Film-Forming Foams Products Liability Litigation* | 2873 | (9% assessment; 6% for attorneys' fees; 3% for costs) |
| *In Re: Avandia Marketing, Sales Practices and Products Liability Litigation* | 1871 | (7% assessment; 4% for attorneys' fees; 3% for costs) |
| *In re Bausch & Lomb Contact Lens Solution Products Liability Litigation* | 1785 | (ReNu and MoistureLoc PI claims - 6% assessment; 4% for attorneys' fees; 2% for costs) |
| *In re Baycol Products Litigation* | 1431 | (6% assessment; 4% for attorneys' fees; 2% for costs) |
| *In Re: Benicar® (Olmesartan) Products Liability Litigation* | 2606 | (8% assessment; 6% for attorneys' fees; 2% for costs) |
| *In Re: Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Product Liability Litigation* | 1203 | (9% assessment in MDL) (6% assessment in state court) |
| *In Re: Gadolinium Based Contrast Agents Products Liability Litigation* | 1909 | (6% assessment; 5% for attorneys' fees; 1% for costs) |
| *In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation* | 2428 | (9% assessment; 7% for attorneys' fees; 2% for costs) |
| *In Re: Heparin Products Liability Litigation* | 1953 | (6% assessment; 3% for attorneys' fees; 3% for costs) |
| *In Re: Invokana (Canagliflozin) Products Liability Litigation* | 2750 | Diabetic ketoacidosis Injury with resolution before 5/31/2017 – 7% assessment; 5% for attorneys' fees; 2% for costs<br>Diabetic ketoacidosis injury with resolution before 7/15/2017 - 9% assessment; 7% for attorneys' fees; 2% for costs<br><br>Diabetic Ketoacidosis injury with resolution after 7/15/2017 – 12% |

| | | |
|---|---|---|
| | | assessment; 9% for attorneys' fees; 3% for costs<br><br>Other injury with resolution after 3/31/2017 – 12% assessment; 9% attorneys' fees; 3% costs<br><br>Diabetic ketoacidosis claims with resolution before 4/2/2017, 5% assessment; 3% attorneys' fees; 2% costs |
| *In Re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation* | 2385 | 6% assessment; 4% for attorneys' fees; 2% for costs |
| *In Re St. Jude Medical Inc., Silizone Heart Valves Products Liability Litigation* | 1396 | 6% assessment |
| *In Re: Testosterone Replacement Therapy Products Liability Litigation* | 1748 | (Increases if participation agreement is not executed) 10% assessment; 8% for attorneys' fees; 2% for costs |
| *In Re: Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation* | 2436 | 19% assessment; 10% for attorneys' fees; 9% for costs |
| *In Re: Vioxx Products Liability Litigation* | 1657 | 3% assessment; 2% for attorneys' fees; 1% for costs<br><br>Subsequently increased to 6% assessment. |
| *In Re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Products Liability Litigation* | 2100 | Early participation – 6% assessment; 4% for attorneys' fees; 2% for costs<br>Late participation – 10% assessment; 8% attorneys' fees; 2% for costs |
| *In Re: Zoloft (Sertraline Hydrochloride) Products Liability Litigation* | 2342 | 5% assessment; 4% for attorneys' fees; 1% for costs |
| *In Re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation* | 2244 | 10% assessment; 7% for attorneys' fees; 3% for costs |

| *In Re: Juul Labs, Inc., Marketing, Sales Practices, And Products Liability Litigation* | 2913 | Early participation- 7% assessment; 5 for attorneys' fees; 2% for cost Late participation – 10% assessment; 8%for attorneys' fees; 2% for costs. |
|---|---|---|

It is also standard and reasonable to apply a higher assessment to counsel who do not agree to having their cases assessed until a later date to discourage attorneys from a wait-and-see approach to common discovery.[7]

The PSC has worked diligently and has extensive efforts invested in this case to date, and when coupled with the efforts to be expended in the future, the work of the PSC more than supports a 6% assessment.

## C.    The Requested Common Benefit Cost Assessment Is Fair and Reasonable

The Talc Litigation Fund was originally established pursuant to CMO 7 through contributions by members of the PEC and PSC in order to pay for shared common expenses of the litigation. To date, the PEC and PSC has spent a

---

[7] *See, e.g., In re Syngenta* AG MIR 162 Corn. Litig., No. 14-2591, 2015 WL 2165341, at *6 (D. Kan. May 8, 2015) (overruling objections to "different percentages for Participating Counsel based on when such counsel signed a participation agreement" and concluding "that there is a benefit to encouraging early participation in the common benefit scheme"); *Bextra*, Dkt. No. 2507 (specifying higher assessment for later participation); *In re General Motors LLC Ignition Switch Litig.*, No. 14-2543, Dkt. No. 743 (S.D.N.Y. Mar. 26, 2015) (same); *In re Guidant Defibrillators Prod. Liab. Litig.*, No. 05-1708, 2006 WL 409229, at *3 (D. Minn. Feb. 15, 20067) (same); *In re Yaz Prods. Liab. Litig.,* MDL No. 2100 (S.D. Ill.); *In Re: Testosterone Replacement Therapy Products Liability Litigation,* MDL No. 1748 (N. D. Ill.); *In Re: Juul Labs, Inc., Prod. Liab. Lit.,* Dkt 586 at para. 37(N.D. Cal).

considerable amount of money on litigation expenses from the Talc Litigation Fund. The vast majority of these expenses to date are associated with the establishment of a document repository and the utilization of a third-party vendor to assist with the collection, sorting and review of documents produced by Defendants; the costs the PSC incurred that were associated with retaining expert witnesses and in proffering expert reports; the costs associated with deposing expert witnesses; and the expenses associated with the *Daubert* hearing. In addition to the shared costs paid through the Talc Litigation Fund, to date the PEC and PSC firms and common benefit attorneys have separately incurred unreimbursed expenses for the common benefit of the MDL. Additional expenses will also be incurred by the common benefit attorneys as they continue to see a just resolution of this litigation including for fact witness and 30(b)(6) depositions and bellwether trials.

The requested 2% cost assessment is standard in similar MDLs.[8]

---

[8] *See In re: Xarelto*, 2020 WL 1433923, *10 (2.75% costs assessment); *In re: E.I. Du Pont de Nemours & Co. C-8 Personal Injury Litig.*, No. 13-2433, 2018 WL 4771524, at *5 (S.D. Ohio Oct. 3, 2018) (citing common benefit orders assessing 3%); *In re: Aqueous Film-Forming Foams Prod. Liab. Litig.*, MDL No. 18-2873, Doc. 72 at 16 (D.S.C. April 26, 2019) (3%); *Bair Hugger*, Dkt. No. 47 (2%); *Bard,* Dkt. No. 372 (2%); *Fresenius,* Dkt. No. 865 (2%); *Testosterone,* Dkt. No. 488 (N.D. Ill. November 25, 2014) (2%); *Rice*, Dkt. No. 2754 (3%); *Bextra,* Dkt. No. 2507 (2%).

**D.    This Court Has Authority to Assess a Common Benefit Reimbursement Fee Against State Court Claimants and their Attorneys Who Have Benefited from the Work of the PSC <u>Provided They Have Consented to the Assessment</u>**

Proposed CMO 7(A) applies to several types of claims:

- All cases now or hereafter subject to the jurisdiction of this Court;

- All cases now or hereafter subject to the jurisdiction of this Court in this MDL litigation, regardless of whether the case is resolved while the case is pending before this Court or is resolved after a remand from this Court to the transferor federal court;

- All cases and/or claims settled pursuant to an MDL-supervised settlement agreement between the parties, which may include cases in any state court and claims that are not filed but participate in any MDL-supervised settlement agreement;

- All cases and/or claims of any of the ovarian cancer clients of any counsel who signed or are deemed to have signed the "*Participation Agreement*" that is attached to this Order as Exhibit A hereto, whether case was filed, unfiled or tolled, including cases filed in state court; and,

- All cases and/or claims of any ovarian cancer clients of any counsel who received, used, or benefited from the Common Benefit Work Product.

(Proposed CMO 7(A), ¶ 4).

Attached as Exhibit "A" to proposed CMO 7(A) is a Participation Agreement which enables Plaintiff's attorneys who desire to obtain the work-product of the PSC and of others who perform common-benefit work (including participating state court attorneys) an opportunity to obtain such work. (Proposed CMO 7(A), ¶ 4(c)).

15

Attorneys who choose not to execute the Participation Agreement but file and or otherwise have cases in the MDL (such as through removal and/or transfer or for other reasons) are permitted to receive the Common Benefit Work Product but they may utilize it in their MDL filed cases only. (Proposed CMO 7(A) ¶ 18). The MDL filed cases will be assessed regardless of whether the counsel executes the Participation Agreement but such counsel are not to use the Common Benefit Work Product for any of their state cases or unfiled cases and because they did not execute the Participation Agreement, the percentage assessment will be at the "Late Participation" rate, as a failure to timely execute the Participation Agreement by the deadline date for "Early Participation" necessarily defaults to the "Late Participation" rate. However, in the event it is determined that such counsel in some fashion or in any manner utilized the Common Benefit Work Product on behalf of cases and/or clients that are not filed cases in the MDL, in any manner whatsoever, then all cases and claims of such counsel, whether filed or not, shall be subject to the assessment at the Late Participation rate. (Proposed CMO 7(A), ¶ 24).

Counsel who choose not to execute the Participation Agreement, and who have cases filed in state court only and/or unfiled cases are not entitled to receive, nor will they be provided access to, the Common Benefit Work Product. They also will not be eligible to apply for a common benefit fee award nor for reimbursement of any expenses. Only Participating Counsel are eligible to apply for common

16

benefit fees and reimbursement of common benefit expenses.  However, in the event it is determined that such counsel in some or in any fashion obtained the Common Benefit Work Product, then all cases and claims of such counsel, whether filed or not, shall be subject to the assessment regardless of whether the counsel executed the Participation Agreement, at the Late Participation rate. (Proposed CMO 7(A), ¶ 24).

The reason for the structure described as to which cases/claims and unfiled matters shall be assessed is that the Common-Benefit Work Product is, as the name connotes, "work product." Accordingly, it is properly protected from "free" use.

As a matter of equity, state court Plaintiffs and their attorneys should be assessed to the extent that they benefit from much of the work performed by the PSC and other common-benefit attorneys. As the court in *Zyprex*a noted, requiring state plaintiffs' attorneys to pay their proportionate share of the time and costs incurred by the PSC in its work for the benefit of all plaintiffs:

> would avoid the troubling potential for attorney conflict of interests that otherwise would exist: Attorneys face distorted incentives to file cases in state courts without respect for the best interests of their clients because attorneys can use [the PSC's] work without paying for it out of their fees when in state court, but would have to pay their fair share if they were in federal court.

467 F.Supp.2d at 269.  Thus, as a matter of equity, a state court attorney who benefits from the work of the common-benefit attorneys should contribute her proportionate share into the common-benefit fund.

Proposed CMO 7(A) facilitates federal-state cooperation and coordination by tying the assessment to consent and voluntary acceptance of the fruits of common benefit work. The proposed order applies to several types of cases: (1) those subject to this Court's jurisdiction because their counsel has a case pending in the MDL and (2) any other case where counsel accept the benefits of common work product. *See, e.g., In re Avandia Mkt., Sales Prac., & Prods. Liab. Litig.,* No. 07-1871, 2015 WL 4480827, at *3-7 (E.D. Pa. July 21, 2015) (upholding assessment on state-court settlement where counsel accessed common benefit work product).

Aside from equity supporting this Court's assessment of cases pending in state court and unfiled cases where the plaintiff/claimant, there are other means by which the assessment can be ordered. At a minimum, this MDL Court has the authority to assess state court plaintiffs that have agreed to the assessment. This is the most common method by which federal courts have ordered that a common-benefit assessment be applied to state court cases. *See, e.g.,* May 21, 2008 Order, *In re Bausch & Lomb*, MDL 1785 (D.S.C. 2008) (stating that common-benefit assessment applies to "any state court or unfiled case where the plaintiff's attorney and/or his or her firm has executed an agreement to cooperate with the MDL and to pay the

assessment"); *see also In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 644, 665 n.12 (E.D. Pa. 2003) (noting in dicta that a common-benefit fund assessment could be applied to state court plaintiffs "by agreement of the parties").

### E. Defendants Should Be Required to Withhold and Deposit Assessments into the Common Benefit Fund

Because defendants are the only parties with complete knowledge of the universe of settlements and access to every dollar of any settlement, it is standard for MDL courts to require Defendants to hold back assessment amounts from any settlement unless they are told by Plaintiffs' Co-Lead Counsel that a case is not subject to assessment after consulting with Plaintiffs' leadership counsel.[9] This is the standard procedure that has been implemented by courts in this district and by

---

[9] The PSC recognizes that the Court has jurisdiction at this time only over Defendants Johnson & Johnson; Johnson & Johnson Consumer, Inc and PCPC, in that Talcum Powder Products cases and claims that are pending against Defendant Imerys are now part of the proceedings against Imerys in the United States Bankruptcy Court in Delaware. In those bankruptcy court proceedings, there is a Tort Claimants Committee which, *inter alia*, is representing the interests of the Talcum Powder Product claimants in that bankruptcy. To the extent those bankruptcy proceedings result in a recovery for Talcum Powder Product Claimants, the PSC expects that such recovery would be assessed pursuant to a process to be established by the bankruptcy court, possibly in conjunction with this MDL Court. However, the attorneys in this MDL who execute the Participation Agreement whose clients also have claims in the Imerys bankruptcy, are agreeing through their execution of the Participation Agreement that an Attorney's Lien is also being created against the attorney in the percentage of the assessment as to any recovery a claimant is entitled to receive in the Imerys bankruptcy proceedings. This Court has jurisdiction over the attorney for the enforcement of an Attorney's Lien even if this Court does not have jurisdiction over Imerys because of its status as a bankrupt.

multiple courts around the country in similarly complex MDLs. *See In re Invokana (Canagliflozin) Prods. Liab. Litig.,* MDL 2750 (D.N.J.) ("Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment."); *In re Benicar (Olmesartan) Prods. Liab. Litig.,* MDL 2606 (D.N.J.) ("In the event of any settlement or judgment encompassing claims concerning injuries alleged in this MDL, Defendants are directed to withhold the Assessment Amount from, the amount paid in settlement or to satisfy a judgment, and to pay the Assessment Amount for distribution to the Plaintiff's Steering Committee Fund").[10]

---

[10] The PSC stands ready to provide the Court with copies of the following should the Court wish to review them in detail: *In re Avandia Prods. Liab. Litig.*, MDL 1871, Dkt. No. 495 (E.D. Pa. Aug. 26, 2009) ("Defendant is directed to withhold the assessment from amounts paid on any Covered Claim and to pay the assessment directly into the Fund as a credit against the Settlement or Judgment. If for any reason the assessment is not or has not been so withheld, the Defendant as well as the plaintiff and his or her counsel are jointly and severally responsible for paying the assessment into the Fund promptly); *In re Tylenol Prods. Liab. Litig*, MDL 2436 (E.D. Pa.) "Defendants are directed to withhold the Assessment from the amounts paid on any Covered Claim and to pay the Assessment directly into the MDL 2436 Fund…"; *In re Gadolinium Prods. Liab. Litig.,* MDL 1909 (N.D. Ohio) ("For cases subject to an assessment, defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment."); *In re Vioxx Prods. Liab. Litig.*, MDL 1657 (E.D. La.) ("Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the fund as a credit against the settlement or judgment."); *In re Prempro Prods. Liab. Litig. (HRT)*, MDL 1507 (E.D. Ark.) ("Before making any claim to a personal injury plaintiff whose claim has been resolved in federal court, defendants shall deduct from the payment an amount equal to five percent (5%) of the gross amount and shall pay such sum as hereinafter provided for deposit

into the MDL 1507 Fee and Cost Trust Account."); *In re Baycol Prods. Liab. Litig.*, MDL 1431 (D. Minn.) ("Before making any claim payment to a plaintiff or claimant to whom this Order applies, defendants shall deduct from such payments an amount equal to six percent (6%) of the aggregate amount being paid…"); *In re Bextra and Celebrex Prods. Liab. Litig*., MDL 1699 (N.D. Cal.)  ("Defendants are directed to withhold the amount of this assessment from any amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the common benefit fund as a credit against the settlement or judgment.' *In re Yaz Prods. Liab. Litig.,* MDL 2100 (S.D. Ill.)  ("For cases subject to an assessment, defendants are directed to withhold the assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment. No orders of dismissal of any plaintiff's claim, subject to this Order, shall be entered unless accompanied by a certificate of plaintiff's and defendant's counsel that the assessment, where applicable, will be withheld and will be deposited into the Funds at the same time the settlement proceeds are paid to settling counsel. If for any reason the assessment is not or has not been so withheld, the plaintiff and his counsel are jointly responsible for paying the assessment into the Fund promptly"); *In re Gadolinium Prods. Liab. Litig.,* MDL 1909 (N.D. Ohio)  ("For cases subject to an assessment, defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment."); *In re Bausch & Lomb Contact Lens Solution Prods. Liab. Litig*., MDL 1785 (D.S.C) ("For all cases in which a settlement was or is entered into, or a judgment was or is paid, beginning April 8, 2008 and going forward, defendant is directed to withhold this assessment from any amounts paid to a plaintiff and her counsel…"); *In re Guidant Defibrillators Prods. Liab. Litig*., MDL 1708 (D. Minn.)  ("Defendants are directed to withhold the amount of this assessment from any amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the common benefit fund as a credit against the settlement or judgment." *In re Rezulin Prods. Liab. Litig.*, MDL 1348 (S.D.N.Y.) ("Before making any Claim Payment, each paying defendant shall deduct therefrom and pay to the Clerk for deposit to the CRIS Account the Escrow Amount."); *In re Protegen Sling and Vesica Sys. Prods. Liab. Litig.*, MDL 1387 (N.D. Md.) ("Defendants shall have primary responsibility for withholding nine percent (9%) of the claim payments and tendering such sums to the MDL 1387 Fee and Cost Account."); *In re Propulsid Prods. Liab. Litig.*, MDL 1355 (E.D. La.) ("Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the fund as a credit against the settlement or judgment."); *In re Diet Drug Prods. Liab. Litig. (Fen/Phen)*, MDL 1203 (E.D. Pa.) ("Defendants shall have primary responsibility

for withholding nine percent (9%) of the claim payments and tendering such sums to the MDL 1203 Fee and Cost Account."); *In re Latex Gloves Prods. Liab. Litig.*, MDL 1148 (E.D. Pa.) ("Defendants are hereby authorized and directed to pay all withheld amounts promptly and directly into the Escrow Fund at the time of payment of the settlement or judgment or other recovery."); *In re Orthopedic Bone Screw Prods. Liab. Litig*., MDL 1014 (E.D. Pa.) ("Each MDL 1014 defendant, before making any claim payment to any plaintiff, shall deduct from such payment an amount equal to 5% of the aggregate amount being paid, and any amounts to be paid in the future; and shall pay such sum as hereinafter provided for deposit into the MDL 1014 PLC Costs Account."); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, MDL 926 (N.D. Ala) ("Defendants are directed to withhold this assessment from amounts paid to plaintiffs and their counsel, and to pay the assessment into the fund as a credit against the settlement or judgment."); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig,* MDL 2385 (S.D. Ill.) ("For cases subject to an assessment, Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment." *In re: C.R. Bard, Inc.*, PTO # 84, at pp. 4-5, MDL No. 2187 (S.D.W.Va. August 16, 2013)  ("Defendants are directed to withhold the Assessment from amounts paid on any Covered Claim and to pay the Assessment directly into the MDL 2187 Fund as a credit against the Settlement or Judgment. If for any reason the Assessment is not or has not been so withheld, the Defendants as well as the plaintiff and his or her counsel are jointly responsible for paying the Assessment into the MDL 2187 Fund promptly." *In re: American Medical Systems, Inc.*, PTO # 77, at pp. 4-5, MDL 2325 (S.D.W.Va. August 26, 2013) ("Defendants are directed to withhold the Assessment from amounts paid on any Covered Claim and to pay the Assessment directly into the MDL 2325 Fund as a credit against the Settlement or Judgment. If for any reason the assessment is not or has not been so withheld, the Defendants as well as the plaintiff and his or her counsel are jointly responsible for paying the assessment into the MDL 2325 Fund promptly." *In re: Boston Scientific Corp.*, PTO # 52, at pp. 4-5, MDL 2326 (S.D.W.Va. August 26, 2013)  ("Defendants are directed to withhold the Assessment from amounts paid on any Covered Claim and to pay the Assessment directly into the MDL 2326 Fund as a credit against the Settlement or Judgment. If for any reason the Assessment is not or has not been so withheld, the Defendants as well as the plaintiff and his or her counsel are jointly responsible for paying the assessment into the MDL 2326 Fund promptly." *In re: Ethicon, Inc.*, PTO # 62, at pp. 4-5, MDL 2327 (S.D.W.Va. August 26, 2013) ("Defendants are directed to withhold the Assessment from amounts paid on any Covered Claim and to pay the Assessment directly into the MDL 2327 Fund as a credit against the Settlement or

In each of the above-referenced orders, the Defendants were directed to withhold the assessment from amounts paid to any plaintiff and to deposit the assessment into the common-benefit fund.

The commonality of this practice demonstrates that the procedure works to avoid complications rather than create further disputes. Under proposed CMO 7(A) the Defendants would not be required to police the funds or incur any increased burden. Rather, the Order sets forth the following straight-forward process. Prior to distributing any settlement to a Plaintiff's counsel, Defendants will notify the PEC in writing regarding the existence of a settlement and the name of the individual Plaintiff's attorney. (Proposed CMO 7(A), ¶ 29). The PEC will then advise the Defendants' counsel in writing as to whether the individual Plaintiff's attorney's cases or claims are subject to the assessment. *Id.* If Plaintiffs' Co-Lead Counsel notifies a Defendant that the claim falls within the scope of the Order, the settling Defendant would deposit the assessment percentage of the settlement into the fund.

---

Judgment. If for any reason the Assessment is not or has not been so withheld, the Defendants as well as the plaintiff and his or her counsel are jointly responsible for paying the assessment into the MDL 2327 Fund promptly." *In re: Aqueous Film-Forming Foams Prod. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, Doc. 72 at p. 16 (D.S.C. April 26, 2019) ("Defendants are, therefore, directed to withhold this amount from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the interest bearing accounts that will be established by a future order.').

*Id.* Once the assessment is deposited into the fund, Defendants are absolved of all liability with respect to the assessed amount. To the extent that the plaintiff or plaintiff's attorney has any objection to the assessment, the proposed CMO directs the aggrieved party to seek recourse against the *fund*. Thus, under the current proposed CMO 7(A), Defendants will not be obligated to police, monitor, or bear any responsibility for assessments deposited in the fund. Rather, needless complication and dispute will be avoided by insuring that any legitimately assessed amounts need only travel from point A to B rather than from A to C to B.  Based on the common use of this procedure in many similarly complex products liability MDLs, the Court should be reassured that the process has been tested and approved.

## III.   **CONCLUSION**

For the reasons set forth in this motion, the PSC, respectfully request that the

Court enter the proposed Common Benefit Order, CMO 7(A), submitted with this

Motion.

Dated:         May 29, 2020                       Respectfully submitted,

_/s/ Michelle A. Parfitt_                         _/s/ P. Leigh O'Dell_
Michelle A. Parfitt                               P. Leigh O'Dell
ASHCRAFT & GEREL, LLP                             BEASLEY, ALLEN, CROW,
1825 K Street, NW, Suite 700                      METHVIN, PORTIS & MILES, P.C.
Washington, DC 20006                              218 Commerce Street
Tel: 202-783-6400                                 Montgomery, AL 36104
Fax: 202-416-6392                                 Tel: 334-269-2343
mparfitt@ashcraftlaw.com                          Fax: 334-954-7555
**_Plaintiffs' Co-Lead Counsel_**                 Leigh.odell@beasleyallen.com

_/s/ Christopher M. Placitella_
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com
**_Plaintiffs' Liaison Counsel_**