UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2738 (FLW) (LHG) |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

**OBJECTIONS OF CERTAIN PLAINTIFFS TO MOTION AND
NOTICE OF MOTION FOR ENTRY OF CASE MANAGEMENT
ORDER 7(A) ESTABLISHING THE TALC (MDL 2738)
COMMON BENEFIT FEE AND EXPENSE ACCOUNTS TO
COMPENSATE AND REIMBURSE ATTORNEYS FOR
SERVICES PERFORMEDAND EXPENSES INCURRED FOR
CASE ADMINISTRATION AND THE COMMON BENEFIT**

COME NOW certain Plaintiffs, by counsel (the "Objecting Plaintiffs"), and state the following objections to the "Motion and Notice of Motion for Entry of Case Management Order 7(A) Establishing the Talc (MDL 2738) Common Benefit Fee and Expense Accounts to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for Case Administration and the Common Benefit" (the "Motion to Enter CMO 7(A)" [Doc. No. 13487]:

**I. INTRODUCTION**

The Objecting Plaintiffs recognize both the Court's authority to create a Common Benefit Fund ("CBF") and the practical need for the creation of the CBF. However, it is the Plaintiffs Steering Committee's ("PSC") duty to provide the Court with sufficient information to justify the magnitude and scope of the CBF. The PSC has completely failed to fulfill this duty for at least five reasons. First, the PSC failed to provide sufficient justification for the proposed CBF assessment

1

percentages. Second, the PSC offers no valid justification for a graduated assessment percentage. Third, the PSC's Proposed C.M.O. 7(A) requires withholding of fees and expenses in state cases not in the MDL and unfiled cases; however, this Court has no jurisdiction over those cases. Fourth, the PSC's Proposed C.M.O. 7(A) allows for modification of the proposed percentages by the Plaintiffs Executive Committee ("PEC")/PSC. Fifth, the PSC's Proposed C.M.O. 7(A) lacks a provision for a pro rata return of assessments in excess of fees and expenses ultimately awarded by the Court. For these reasons, as discussed more fully below, the Objecting Plaintiffs respectfully request that the Court deny the Motion to Enter CMO7 (A) at this juncture.

## II. RELEVANT PROCEDURAL HISTORY

On August 9, 2017, the Court entered Case Management Order Number 7 ("CMO 7") [Doc. No. 426]. Among other things, CMO 7 established the CBF. While CMO 7 created the CBF and outlined the rules and procedures for the withholding of certain funds for common benefit work performed by the PEC/PSC, CMO 7 did not indicate the percentage of the assessment against any funds collected by Plaintiffs as a result of settlement or verdict.

The PSC filed its Motion to Enter CMO 7(A) on May 29, 2020 [Doc. No. 13487]. Under the terms of the Proposed CMO 7(A), Plaintiffs who choose to avail themselves of the common benefit work performed by the PSC in the "early" timeframe would be assessed an 8% holdback (6% for fees and 2% for costs) on settlements and/or verdicts. Plaintiffs who wait too long in deciding to utilize the PSC's common benefit work are assessed at 12% (10% fees and 2% costs). The PSC argues that these proposed assessments are "fair and reasonable": not by referencing any empirical data on the value of any of the cases in this MDL, but rather by submitting to the Court a laundry list of common benefit assessment percentages from other wholly unrelated MDLs. *See* Doc. No. 13487 at pp. 11-13.

The PSC also attempts to bring all untransferred state cases and all unfiled claims within scope of Proposed CMO 7(A). See Doc. No. 13487-2 at ¶ 4(b).

Additionally, the Plaintiffs Executive Committee (the "PEC") and the PSC reserve unilateral authority for themselves to seek modification of the assessment percentages later in the litigation. *Id*. at ¶ 34.

Finally, Proposed CMO 7(A) lacks a provision for a return of excess common benefit funds to Participating Plaintiffs on a pro rata basis.

## II. LEGAL STANDARD

The Court's authority to establish a common benefit fund is set forth in CMO 7 [Doc. No. 426 at pp. 1-2] and in the PSC's Motion to Enter CMO 7(A) [Doc. No. 13487 at pp. 8-9].

## III. ARGUMENT

The Objecting Plaintiffs agree that the Court has the authority to create a common benefit fund and that the PSC should be fairly and reasonably compensated for the common benefit work it provides to the Participating Plaintiffs. That is where the agreement ends. The PSC's Motion to Enter CMO 7(A) is defective for the numerous reasons discussed below. For these reasons, the Court should deny said motion.

    **A.    The PSC has not provided sufficient justification for the CBF assessment percentages.**

In determining the proper assessment percentage for the CBF, the Court should not rely on mere references to assessment percentages in other randomly selected MDLs. Instead, the Court must analyze the proposed assessment percentage based on the facts of this case and by reference to assessment percentages from other MDLs with an overall value similar to that of the MDL at bar.

With respect to the common benefit funds, "[t]he transferee court must formulate some methodology for establishing the total amount of the common benefit fund and some procedure for disbursing the fund. **The total amount of the common benefit fund should be reasonable under the circumstances**, and the method for distributing it should be fair, transparent, and based on accurately recorded data." Eldon E. Fallon[1], *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371 (2014) (emphasis added). However, while "[t]ypically, the transferee judge creates the architecture for this fund at the outset of litigation, . . . it will usually remain unfunded until much later in the litigation process, when cases are resolved through trial or settlement." The Duke Law Center for Judicial Studies, *MDL Standards and Best Practices* (2014), at pp. 52-53.

With regard to the proper percentage of an attorney fee award, the United States Court of Appeals for the Fifth Circuit observed in *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 683 (5th Cir. 2006), that ". . . the percentage [of the attorney fee award] **should not be completely arbitrary, devoid of reality, or inconsistent with the usual fees for the type of case involved**. In short, there is no one percentage that should apply to all cases. Each case should be analyzed on its own basis." (Emphasis added). Stated another way:

> . . . there has been much discussion regarding the process by which this Court, or any court, should allocate attorneys' fees. The Fifth Circuit's opinion in *In re High Sulfur* is instructive in this respect. In *High Sulfur*, the Fifth Circuit reviewed an allocation of attorneys' fees in a class action case. The takeaway from *High Sulfur* is that in allocating a fund of attorney's fees, **the Court must conform to "traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight**." 517 F.3d at 234. That requires creating a sufficient record, making sufficient factual findings, considering the time worked and the *Johnson* factors, providing an opportunity to be heard to all the applicants, and **exercising independent judgment in allocating those fees rather than simply rubber-stamping a committee recommendation**.

*In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 772 (E.D. La. 2011) (emphasis added).

---

[1] Judge, United States District Court for the Eastern District of Louisiana.

The District Court's attorney fee analysis in *In re Cook Med., Inc.*, 365 F. Supp. 3d 685, (S.D. W. Va. 2019), is instructive on the issue of the assessment percentage dispute in the MDL at bar. The District Court began its analysis by noting that:

> Throughout the history of MDL common fund calculations, courts have employed three approaches when assessing the reasonableness of attorney's fees: (1) the lodestar method, (2) the percentage method, or (3) the blended method which combines the first two approaches. *Fallon*, *supra*, at 381. Under the lodestar method, a court multiplies "the reasonable hours expended on the litigation by an adjusted hourly rate" to produce a multiplier whereas the percentage method "compensates attorneys who recovered some identified sum by awarding them a fraction of that sum[.]" *Id*.
>
> Courts within our district frequently employ a blended approach. They award attorneys fees based on a reasonable benchmark percentage of the fund verified by a lodestar cross-check. *See*, *e.g.*, *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009).

*In re Cook Med.*, at 695. While this MDL is not yet at the attorney fee determination stage, the District Court's benchmark percentage analysis is pertinent to the present dispute.

In arriving at a proper benchmark percentage, the District Court noted that not all of the cases had settled; however,

> . . . this court is equipped with sufficient information to make a reasonable estimate as to the total amount of recovery the plaintiffs will receive. Having presided over these MDLs for nearly nine years, **the court is intimately aware of the cases that remain, the alleged injuries of the women, and the range of possible verdicts and settlement values available to them. Therefore, for the purposes of evaluating how much common benefit counsel's contributions are worth, the court is uniquely situated to make a reasonable estimate of the final total recovery amount**. Because not all of the recoveries have been paid by the defendants, these MDL funds are pay-as-you-go, meaning the payments into the MDL common benefit funds will continue after this court's order is entered. "Where the settlement provides benefits on a 'pay-as-you-go' basis over a period beyond the point that a common benefit fee is to be awarded, the settlement fund also includes a reasonable estimate of the amount of future payments that will be made to" the individual plaintiffs. *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on April 20, 2010*, MDL No. 2179, 2016 U.S. Dist. LEXIS 147378, 2016 WL 6215974, at *15 (E.D. La. Oct. 25, 2016) (*citing Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 334 (3d Cir. 1998)).

*In re Cook Med.*, at 696 (emphasis added). The District Court went on to note that there had already been $7.25 Billion Dollars in payments from the defendant to plaintiffs whose recoveries were subject to the common benefit fund with an estimated $3.75 Billion Dollars more in future settlements.

Having determined a reasonable estimated value of the cases, the District Court proceeded to the benchmark percentage analysis:

> Now that the court has ascertained a reasonable estimate of the total recoveries the plaintiffs will receive, the next step requires the court "**to arrive at an independent and justified reasonable percentage" for this litigation**. *Poole v. Eichholz Law Firm, P.C. (In re Vioxx Prods. Liab. Litig.)*, MDL No. 1657, 2013 U.S. Dist. LEXIS 133462, 2013 WL 5295707, at *3 (E.D. La. Sept. 18, [*697] 2013). . .
>
> The court does this in part by looking at **comparable awards in similar MDLs** with common benefit attorneys. *See In re Actos*, 274 F. Supp. 3d at 524. Because the total anticipated recovery for all plaintiffs in these MDLs exceeds $1 billion, the court considers this a "super-mega-fund" litigation. Id. at 524-25. In *In re Actos*, the court found that the average fee awards in "super-mega-fund" litigation was 9.9%. *Id*. at 525. The court in *In re Actos* noted that "**it, also, appears that as the size of the recovery increases, the percentage [awarded] tends to decrease**." *Id*. at 524.
>
> Super-mega-fund cases are often near the 5% the FCC has requested:

*In re Cook Med.*, at 696 (emphasis added). The District Court's opinion contained a chart listing six (6) attorney fee awards in mega-super-fund MDLs, the overall value of the MDL and the percentage of the fee award compared to the overall recovery. The fee awards ranged from 4.3 to 14.5%. *Id*.

The purpose of the citation to the *In re Cook Med.*, benchmark percentage analysis is not to show that the assessment percentage requested by the PSC in this case is excessive. Rather, the benchmark percentage analysis shows that the PSC has failed to provide the Court with the

6

information it needs to ". . . 'to arrive at an independent and justified reasonable percentage' for this litigation." *In re Cook Med.*, at 696 (internal citation omitted).

In *In re Cook Med.*, the District Court had an intimate knowledge of ". . . the alleged injuries of the women, and the range of possible verdicts and settlement values available to them." *Id*. In the present case, it is not yet certain what expert evidence will be permitted at trial. Moreover, in this MDL, there have been no bellwether trials, there have been no settlements and there have been no settlement negotiations. In short, the PSC has provided this Court with <u>no</u> information to make a reasonable estimate of the total amount of recovery. In the absence of such information, the Court cannot determine if the overall value of the cases in this MDL falls above or below the super-mega fund litigation threshold. Without this critical information, the Court cannot make an apples to apples comparison of the proposed assessment percentage in this MDL to the percentages used in other MDLs. In fact, the Court does not even know if this MDL is an apple or an orange making a meaningful comparison to benchmark percentages in other MDLs impossible.

Because the PSC failed in its obligation to provide the Court with sufficient information to determine whether or not the proposed assessment percentage is fair and reasonable, the Court should, at this juncture, deny the PSC's Motion to Enter CMO 7(A).

### B. Proposed CMO 7(A) provides no justification for the graduated assessment percentage.

The PSC's proposed 4% increase in assessment percentage for Plaintiffs who do execute Participation Agreements fast enough for its liking serves only two purposes: coercion and punishment. Instead of giving Plaintiffs Attorneys the benefit of actually seeing the common benefit work product the PSC is producing prior to opting in, the PSC is attempting to coerce Plaintiffs Attorneys to buy in early to avoid additional what is essentially a financial penalty. Those Plaintiffs Attorneys who would rather wait to see what they are buying before blindly agreeing to

7

an 8% percent assessment would then be penalized a 4% sur-charge should they ultimately decide to opt in. This type of coercive and punitive assessment structure is antithetical to the common benefit concept. In reality, this proposed schedule benefits only the PSC. The approval of such a scheme is inherently unfair to all Plaintiffs Attorneys who opt-in, whether early or late, because it deprives them of the benefit to gauge the value of common benefit work. One need only to look at the PSC's performance in the recent *Daubert* challenge to understand why the value of the PSC's common benefit work may be questionable.[2]

Because the graduated percentage assessment scheme proposed by the PSC is patently unfair to Participating Attorneys, regardless of when they opt in, the Court should deny the PSC's Motion to Enter CMO 7(A).

### C. Proposed CMO 7(A) requires withholding of fees and expenses in state cases not in the MDL and unfiled cases; however, this Court has no jurisdiction over those cases.

The PSC seeks to extend the reach of CMO 7(A) to cases that are beyond this Court's jurisdiction. Specifically, the PSC attempts to bring cases filed in state court and claims that have not yet been filed under the purview of CMO 7(A), if such cases and/or claims are settled pursuant to an "MDL-supervised settlement agreement." In reality, this Court has no jurisdiction over either cases pending in state court or unfiled claims.

Co-lead counsel in *In re Syngenta AG MIR 162 Corn Litig.*, 2015 U.S. Dist. LEXIS 61639, 2015 WL 2165341 (D. Ks. 2015) attempted a nearly identical overreach in their petition to the District Court for common benefit fees. The defendant and certain plaintiffs objected to the

---

[2] On April 27, 2020, this Court entered an Order denying, in part, Johnson & Johnson's Motion to Exclude Plaintiffs' expert witnesses [Doc. No. 13187]. In that Order, the Court ruled that certain portions of opinions rendered by Drs. Saed, Longo, McTiernan, Carson and Clarke-Pearson were inadmissible.

overreach and the District Court sustained the objection. The District Court analyzed the objection as follows:

> The only circuit courts of appeal to have addressed this issue have held that a district court does not have such jurisdiction to subject parties not before it to common benefit assessments. *See In re Showa Denko K.K. L-Tryptophan Prods. Liability Litig.-II*, 953 F.2d 162, 165-66 (4th Cir. 1992); *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873-74 (8th Cir. 2014). In *Showa Denko*, the Fourth Circuit addressed an MDL common benefit order that "compel[led] contributions from plaintiffs in state or federal litigation who are not before the court and by claimants who have chosen not to litigate but to compromise their claims outside of the court." *See Showa Denko*, 953 F.2d at 166. **The court noted that the MDL mechanism did not expand the transferee court's jurisdiction beyond cases and controversies between parties to the transferred cases, and it stated that "any attempt without service of process to reach others who are unrelated [was] beyond the court's powers."** *See id*. at 165-66 (citing *Hartland v. Alaska Airlines*, 544 F.2d 992, 1002 (9th Cir. 1976)). In rejecting the common benefit order as too broad, the Fourth Circuit concluded as follows:
>
>> **Claimants who have not sued and plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court nor have they been brought in by process. The district court simply has no power to extend the obligations of its order to them.**
>
> *See id*. at 166.
>
> In the *Rice* litigation, District Court Judge Perry followed *Showa Denko* in concluding that the court lacked jurisdiction to require the defendant, pursuant to an MDL common benefit order, to hold back percentages of settlements and judgments obtained outside the MDL. *See In re Genetically Modified Rice Litig.*, 2010 U.S. Dist. LEXIS 19168, 2010 WL 716190, at *4-5 (E.D. Mo. Feb. 24, 2010) (noting that "[m]ost cases considering this issue have reached the same conclusion"). The Eighth Circuit affirmed, holding that **the district court "did not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries," as the "state-court plaintiffs at issue neither agreed to be part of the federal MDL nor participated in the MDL**." *See Rice*, 764 F.3d at 873-74 (*citing Showa Denko*, 953 F.2d at 165).

*In re Syngenta* at 182 (emphasis added).

The PSC admits that the most common way for federal courts to exercise jurisdiction over untransferred state cases is through the state court plaintiffs' agreement to the assessment. See Doc. No. 13487 at pp. 18-19. Tellingly, the Motion is bereft of any evidence suggesting that any

9

state court plaintiff has agreed to the PSC's assessment. In the absence of such agreement, the PSC impliedly concedes that there is simply no federal jurisdiction over untransferred state cases.

The PSC's attempt to extend application of CMO 7(A) to state cases and unfiled claims in the present action is legally invalid for the same reasons enunciated in *In re Syngenta*, *supra*. In short, this Court simply lacks jurisdiction over unstransferred state cases and unfiled claims. The PSC's thinly veiled referenced to nebulous "MDL-supervised settlements" as some type of jurisdictional hook is facially insufficient to confer federal jurisdictions over state suits and unfiled claims. For these reasons, the Court should deny the PSC's Motion to Enter CMO 7(A).

### D. Proposed C.M.O. 7(A) allows for modification of the proposed percentages by the PEC/PSC.

In one breath the PSC represents to the Court that the proposed assessment percentages are fair and reasonable. In the next breath, the PSC reserves for itself the right to seek a modification of the assessment percentage once the value of the pending cases becomes known. See Doc. No. 13478-2 at. ¶ 34. This proposed provision is an implicit admission that the PSC has insufficient information to formulate a reasonable and fair assessment percentage at this stage in the litigation. Furthermore, a grant of unilateral authority to the PSC to seek a modification of the assessment percentage in the late stages of this litigation undermines the very purposes of establishing an assessment percentage in the first place: i.e., transparency of the fee award process and certainty in the settlement/trial analysis. Based on the PSC's admitted lack of certainty in the reasonableness and fairness of the proposed assessment percentages, the Court should deny the Motion to Enter CMO 7(A).

In the Vioxx MDL, the Negotiating Plaintiffs' Committee ("NPC") attempted to arrogate for itself the very type of flexibility sought by the PSC in the present MDL with regard to adjustments to the assessment percentages. See Charles L. Becker, Shanin Specter, Thomas R.

Kline, *How Not to Manage a Common Benefit Fund: Allocating Attorneys' Fees in Vioxx Litigation*, Drexel L. Rev. 2016 at pp. 29-32. Specifically, the participation agreement limited the assessment percentage for participating attorneys to 3%. However, the settlement agreement, which purported to negate the participation agreements, included a clause that permitted the presiding judge to the assessment percentage at no more than 8%. *Id*. The plaintiffs' liaison counsel subsequently moved the District Court to increase the assessment percentage to 8% pursuant to the terms of the settlement agreement. Objections and further litigation of the issue ensued. *Id*. In analyzing the effect of the NPC's deceptive maneuvering, the authors of the article wrote:

> The abrogation of the FPO contracts in Vioxx may make future plaintiffs' counsel shy about participating in MDL proceedings based on a promise that the common benefit assessment will be a certain amount. Whether "permissible" as a matter of law, the judge's about-face on the assessment amount may risk the vitality of the Federal MDL litigation. **Counsel may be deterred by the prospect of being baited into an MDL and then switched to a higher fee once the litigation settles.**

*Id*. at 32 (emphasis added).

The assessment percentage modification provision proposed by the PSC in this MDL sets the stage for the very type of bait and switch that occurred in the Vioxx litigation. Concepts of fairness, transparency and predictability mandate the denial of any request for inclusion of such a clause in any of this Court's case management orders. Accordingly, the Court should deny the PSC's Motion to Enter CMO 7(A).

     **E.    Proposed CMO 7(A) lacks a provision for a pro rata return of assessments in excess of fees and expenses ultimately awarded by the Court.**

At this point in the litigation, there is simply no data to justify the imposition of the assessments proposed by the PSC. Without any indication of what the overall settlement/verdict value of the pending cases will be, this Court simply cannot properly analyze the reasonableness of the proposed assessment. In the event that the overall value of these cases is very large, it may

well be that the assessments will far exceed the value of the common benefit services provided by the PSC. Without a provision for the return of excess funds to participating Plaintiff attorneys on a pro rata basis, the PSC would receive an award of fees and costs that it did not earn at the expense of the participating Plaintiffs attorneys.

The District Court in the Ethicon MDL faced a similar objection; however, the common benefit fund framework in that MDL expressly provided for the return of excess funds to participating attorneys on a pro rata basis. In light of that express provision, the Court ruled as follows:

> The objector argues that the PSC has not provided sufficient information to evaluate whether the proposed percentage of 12 per cent for cases resolved on or after August 1, 2016 is fair and reasonable. The PSC correctly notes that at this stage, the Court must rely on predictions and cannot analyze precisely whether the percentage assessment reflects a fair and reasonable fee under the traditional factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The proposed order contemplates that near the conclusion of this litigation, the Court will assess the reasonableness of fees under the lodestar method. In addition, **the proposed order provides that after distribution of approved fees and expenses, any funds remaining will be reimbursed pro rata to contributing plaintiffs.** The PSC has set forth a reasoned basis for an assessment of 12 per cent starting at a date after it has incurred substantial common benefit work. **While this amount ultimately may be higher than necessary to cover fees and expenses associated with common benefit work, the process of court approval of fees — combined with the return of any residual funds to contributing plaintiffs — ensures that any excess will not be a windfall to PSC members.**

*In re Ethicon, Inc., Power Morcellator Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 54017, 18 (D. Ks. 2016) (emphasis added).

At this early stage in the litigation, the Court cannot accurately gauge the overall value of the pending and future cases. Simply put, the Court, at this juncture, must rely on predictions and cannot analyze precisely whether the percentage assessments are fair and reasonable under the *Johnson* factors. Without reliable empirical information, the Court cannot accurately determine a proper assessment percentage. If the Court imposes an assessment percentage that is too high and

the overall value of the cases in this MDL is very large, the PSC will unfairly receive a windfall at the expense of the participating Plaintiffs attorneys. The PSC's Proposed CMO 7(A) contains no safeguards against such a scenario. Accordingly, the Court should deny the Motion to Enter CMO 7(A) because it lacks a provision for the return of excess funds to participating Plaintiffs Attorneys.

### IV. CONCLUSION

Proposed CMO 7(A) suffers from several defects that preclude its entry: (1) the proposed assessment percentages lack any factual justification; (2) the proposed graduated assessment percentage schedule is coercive and punitive; (3) the reach of CMO 7(A) exceeds the Court's jurisdiction; (4) the freedom of modification sought by the PSC vitiates the purposes of establishing a common benefit fund; and (5) there is no provision for return of excess funds to participating Plaintiffs Attorneys on a pro rata basis.

WHEREFORE, based upon the foregoing legal authority and argument, the Objecting Plaintiffs respectfully request that the Court deny the PSC's Motion to Enter CMO 7(A).

| **THE SEGAL LAW FIRM**<br>**A Legal Corporation** | **MORELLI LAW FIRM, PLLC** |
|---|---|
| _____s/ *Scott S. Segal*_____<br>Scott S. Segal<br>WV Bar No. 4717<br>scott.segal@segal-law.com<br>Robin Jean Davis<br>WV Bar No. 964<br>robinjeandavis@segal-law.com<br>Jason P. Foster<br>WV Bar No. 10593<br>jason.foster@segal-law.com<br>C. Edward Amos, III<br>WV Bar No. 12362<br>edward.amos@segal-law.com<br>810 Kanawha Boulevard, East<br>Charleston, West Virginia 25301<br>Tel: (304) 344-9100<br>Fax: (304) 344-9105 | _____s/ *Benedict S. Morelli*_____<br>Benedict P. Morelli<br>N.Y. Bar No.: 1060441<br>bmorelli@morellilaw.com<br>David T. Sirotkin<br>D.N.J. Bar ID: DS4863<br>dsirotkin@morellilaw.com<br>Alexander Morelli<br>N.Y. Bar No.:5592522<br>armorelli@morellilaw.com<br>777 Third Avenue, 31st Floor<br>New York, New York 10017<br>Tel: (212) 751-9800<br>Fax: (212) 751-0046 |

**ARNOLD & ITKIN LLP**

_____*s/ Jason A. Itkin*_____
Jason A. Itkin
State Bar No. 24032461
Kurt B. Arnold
Texas Bar No. 24036150
Noah M. Wexler
State Bar No. 24060816
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
jitkin@arnolditkin.com
karnold@arnolditkin.com
nwexler@arnolditkin.com
e-service@arnolditkin.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 16-2738 (FLW) (LHG) |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2020, the above and foregoing "***Objections of Certain Plaintiffs to Motion and Notice of Motion for Entry of Case Management Order 7(A) Establishing the Talc (MDL 2738) Common Benefit Fee and Expense Accounts to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for Case Administration and the Common Benefit***" was filed electronically and is available to viewing through the Court's electronic filing system. A true and correct copy has been served upon all counsel of record via the Court's CM/ECF system.

                                                                                                                                                                                                          _____s/ *Jason P. Foster*_____
                                                   Jason P. Foster
                                                   WV Bar No. 10593
                                                 jason.foster@segal-law.com
                                                 **The Segal Law Firm**
                                                 **A Legal Corporation**
                                                 810 Kanawha Boulevard, East
                                                 Charleston, West Virginia 25301
                                                 Tel: (304) 344-9100
                                                 Fax: (304) 344-9105