UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Applies to All Actions Filed Against Defendant Personal Care Products Council | MDL No. 16-2738 (FLW) (LHG) |

**DEFENDANT PERSONAL CARE PRODUCTS COUNCIL'S
RESPONSE TO PLAINTIFFS' STEERING COMMITTEE'S SUPPLEMENTAL FACTS
IN SUPPORT OF THEIR OPPOSITION**

DATED: June 22, 2020  Respectfully submitted,

PERSONAL CARE PRODUCTS COUNCIL

By: _____/s/_____
Thomas T. Locke
Renee Appel
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004
Telephone: (202) 463-2400
Facsimile: (202) 828-5393

Richard W. Wedinger
Jennifer Cheong
BARRY, McTIERNAN & WEDINGER P.C.
10 Franklin Avenue
Edison, NJ 08837
Telephone: (732) 738-5600
Facsimile: (732) 738-7518

*Attorneys for Defendant Personal Care Products Council*

Personal Care Products Council ("PCPC") hereby responds to Plaintiffs' Statement of Supplement Facts (ECF No. 13590-01).  For the reasons discussed in its Reply in Support of its Motion for Summary Judgment, none of Plaintiffs' statements of alleged facts affect the Court's ability to grant PCPC's Motion for Summary Judgment.

1. PCPC worked with Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, "J&J") and other members on petitioning various government entities regarding the regulation of talc.  As Plaintiffs know, PCPC was not "aware of" many of its members' activities regarding talc.  The exhibits referenced in Plaintiffs' paragraph 1 are task force meeting minutes that show the Food & Drug Administration (the "FDA") requested documentation from talc manufacturers, which they provided.  Ex. 1 (meeting minutes with FDA regarding talc specifications); Ex. 2 (small group to meet that afternoon with FDA); Ex. 3 (summarizing meeting with FDA, revised standard for talc and Congressional oversight hearings that day); Exs. 4 and 5 (documenting meetings and seeking input from critics of cosmetics regarding talc specifications, which was shared with the FDA); Ex. 6 (FDA participated at task force meeting finalizing talc specifications).

2. The Cosmetic Ingredient Review ("CIR") was created in 1976.  PCPC disputes that CIR was created to "avoid any further actions from regulators."  There have been myriad interactions between manufacturers, ingredient suppliers, PCPC and regulators since 1976.  Exhibit 47 reads: "The Cosmetic Ingredient Review (CIR), established in 1976 by the Cosmetic, Toiletry, and Fragrance Association (now the Personal Care Products Council), is a unique endeavor by the industry to thoroughly review and assess the safety of cosmetic ingredients in an unbiased and expert manner."

3. PCPC sent some correspondence regarding scientific issues relating to the regulation of talc, not to "discredit" Dr. Cramer.  Exhibit 8 is an unsent draft.  Exhibit 9 is a response to request for information regarding similarities between talc and asbestos.  Exhibit 10 discusses scientific studies reaching different results.  Exhibit 11 identifies an error in a scientist's article. Exhibit 12 is a letter to Greenpeace with attachments.  Plaintiffs offer no evidence that any of these letters were published or that they were read by the recipients.

4. PCPC disputes Plaintiffs' characterization of the frequency of task force meetings and that members contributed funds to "mislead the public about the safety of talc."

5. PCPC agrees that the FDA requested that PCPC co-sponsor and fund the 1994 symposium hosted jointly by the International Society of Regulatory Toxicology & Pharmacology ("ISRTP"), the FDA, and PCPC.

6. PCPC did not co-write an article on talc relating to the ISRTP/FDA/PCPC.  Per FDA and ISRTP request, PCPC funded a portion of the cost to prepare the article.

7. Undisputed.

8. Plaintiffs' use of the term "talc-based issues" is ambiguous.  PCPC did not retain Nichols-Dezenhall or Burson-Marsteller to submit to any governmental entity or to publish materials regarding talc.  PCPC retained the Weinberg Group in connection with its 2000 National Toxicology Program submission.

9. Undisputed.

10. Undisputed.

11. Undisputed.  Exhibit 47 explains: "Although funded by the Council, CIR and the review process are distinctively separate from the Council and the cosmetics industry, except as the latter contributes directly and substantially by providing data needed for assessing safety."

12. Undisputed.

13. Plaintiffs omit a key part of the preceding portion of the quote from Exhibit 51 which states, "CIR began in 1976 in response to Congressional concerns raised about the safety of cosmetic ingredients."

14. PCPC agrees that it lobbied regarding regulation.

15. The quote and document were neither authored nor received by PCPC. PCPC disputes the substance of the quote and document.

16. PCPC published a definition of talc that could be used in cosmetics. The definition was revised over the years.

17. The FDA and cosmetics manufacturers and their consultants developed tests for evaluating whether talc contained asbestos. Plaintiffs' Exhibit 1 demonstrates that the use of the phrase "non-detectable" asbestos in the talc specifications was suggested by the FDA. PCPC circulated those tests.

18. Undisputed.

19. Plaintiffs' statement is a legal assertion regarding duty, not a statement of fact. The referenced exhibit is an article drafted by a third party.

20. Undisputed.

21. This statement refers to a non-party and not any action or statement made by PCPC for which PCPC has personal knowledge.

22. Disputed. Exhibit 100 is a draft authored by an Imerys employee.

23. Disputed. PCPC funded a study by Dr. Wehner and others in the early 1980s. Exhibits 109 to 112 do not reflect "studies."

24. Disputed. Plaintiffs' Exhibit 109 includes the analysis of two epidemiologists retained by PCPC who discuss the "weak" statistical association between talc and ovarian cancer.

25. Disputed. PCPC did not "proclaim" anything. Exhibit 127 is an "INTERNAL MEMO." Likewise, Plaintiffs offer no evidence that Exhibit 128 was read or published. Exhibit 128 merely states that "CTFA's position is that there is no scientific justification to support labeling as requested by the petition."

26. Disputed. The cited page is the cover of notes regarding PCPC's interactions with the FDA.

27. Disputed. The cited page is the cover page of 2006 PCPC Board of Directors Meeting Minutes and related documents.

64443432v.1