## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **Civil Action No. 3:16-md-2738-FLW-LHG** |
| | **MDL No. 2738** |
| ***This Document Relates to All Cases*** | |

---

## THE PLAINTIFFS' STEERING COMMITTEE'S REPLY IN SUPPORT OF THE ENTRY OF PROPOSED CMO-7(A) AND IN OPPOSITION TO THE OBJECTIONS OF CERTAIN PLAINTIFFS

---

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ ii

I.    INTRODUCTION ..................................................................... 1

II.   ARGUMENT ............................................................................ 5

  A.  The PSC's Motion Adequately Supports the Magnitude and Scope of the Proposed Assessment Percentage ................................................. 6

  B.  The PSC Provided Valid Justification for a Graduated Assessment Percentage ........................................................................................ 8

  C.  The PSC's Proposal Does Not Impermissibly Provide for Withholding of Fees and Expenses in State Court Cases Over Which This MDL Has No Jurisdiction ..................................................................................... 10

  D.  The PSC's Proposal Does Not Impermissibly Empower the PEC to Unilaterally Modify the Proposed Percentages ............................... 11

  E.  The PSC's Proposal Does Not Need to Address at This Time A Mechanism for The Refund of Excess Fees and Expenses That May Be Escrowed ........ 12

III.  CONCLUSION ........................................................................ 15

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*In re Bausch & Lomb Contact Lens Solution Products Liability Litigation*, MDL 1785 (D.S.C. 2008) ................................................................................. 11

*In re Bextra & Celebrex Mkt. Sales Prac. & Prod. Liab. Litig.,* No. 05-1699, 2006 WL 471782 (N.D. Cal. Feb. 28, 2006) ............................................. 4, 5

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* No. CV 09-4115, 2020 WL 128589 (E.D. La. Jan. 10, 2020) ....................................................... 5

*In Re Diet Drugs* ................................................................................................ 6

*In re General Motors LLC Ignition Switch Litig.*, No. 14-2543, Dkt. No. 743 (S.D.N.Y. Mar. 26, 2015) ........................................................................ 4

*In re Guidant Defibrillators Prod. Liab. Litig.*, 2006 WL 409229 (D. Minn. Feb. 15, 2006) ................................................................................................. 4

*In re Syngenta* AG MIR 162 Corn. Litig., No. 14-2591, 2015 WL 2165341 (D. Kan. May 8, 2015) .................................................................................... 4

*In re Vioxx Products Liability Litigation*, MDL 1657 ................................................ 6

*In re Yaz Prods. Liab. Litig.,* MDL No. 2100 (CMO 14) (S.D. Ill. Mar. 25, 2010)..4

*In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256 (2d. Cir. 2006) .................... 11

*In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL 2873 .... 5

*In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*, MDL 2428 ............................................................................................... 6

*In Re: Juul Labs, Inc., Prod. Liab. Lit.,* Dkt 586 (N.D. Cal) ................................. 4, 5

*In Re: Praxada (Dabigatran Etexilate) Products Liability Litigation*, MDL 1748 (N.D. Ill.) .............................................................................................. 6

*In Re: Testosterone Replacement Therapy Products Liability Litigation,* MDL No. 1748 (N. D. Ill.) ...................................................................................... 4, 6

## I.   __INTRODUCTION__

In response to the *Plaintiffs' Steering Committee's Motion for Entry of Case Management Order 7(A) Establishing the TALC (MDL 2738) Common Benefit Fee and Expense Accounts To Compensate And Reimburse Attorneys For Services Performed And Expenses Incurred For Case Administration And The Common Benefit* [Doc. No. 13487] ("Motion"), only a *single*[1] objection, was filed.[2] The law firms who filed the objection are not members of the Plaintiffs' Executive Committee ("PEC") or members of the Plaintiffs' Steering Committee ("PSC"). Moreover, they have not performed any common benefit work in this MDL.[3] Yet,

---

[1] The PSC notes that Defendants have not commented on the Motion, which was expected, as the entry of an Order like what the PSC proposed as CMO-7(A) is commonplace in cases like this MDL. *See, Memorandum in Support of the Plaintiffs' Steering Committee's Motion for Entry of Case Management Order 7(A) Establishing the Talc (MDL No. 2738) Common Benefit Fee and Expense Accounts to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for Case Administration and the Common Benefit* [Doc. No. 13487-1] ("Memorandum") at 11-13, citing numerous cases as precedent.

[2] *See,* Objections of Certain Plaintiffs, filed June 22, 2020, [Doc. No. 13689] The PSC notes importantly that the objectors do not contest the authority of this Court to enter an order to govern as assessment of common benefit fees and expenses. *Cf. id.* at 3. Thus, what is at issue is the terms of the Order to govern the common benefit fee and expense assessment, not the power of the Court to enter an Order.

[3] CMO-7 established a time and expense reporting mechanism for attorneys performing common benefit work, with the reports to be made to the Court-appointed auditor, Alan Winikur, CPA. The objectors have not reported any common benefit time and expenses to Mr. Winikur. Moreover, pursuant to CMO-7, only work and expenses authorized by the PEC/PSC was eligible to be reported to Mr. Winikur. The PEC/PSC never authorized any work or expenses for these three

1

they object to the entry of CMO-7(A). This is the unfortunate but classic gambit of counsel who do no work but expect to rely on the common benefit work and expenses of others to benefit their cases, and who do not want to bear a fair share of the cost of developing common benefit work product.

These objectors raise five reasons why they believe the PSC's Proposed CMO-7(A) should not be entered:

1)   The PSC allegedly failed to support with information the magnitude and scope of the proposed assessment percentage;

2)   The PSC allegedly failed to provide valid justification for a graduated assessment percentage;

3)   The PSC's proposal impermissibly provides for withholding of fees and expenses in state court cases over which this MDL has no jurisdiction;

4)   The PSC's proposal impermissibly empowers the PEC to modify the proposed percentages; and,

5)   The PSC's proposal impermissibly fails to address a mechanism for the refund of excess fees and expenses that may be escrowed.

The PSC will respond to each of these contentions, demonstrating not only that they are without merit, but also, that they are not necessarily in context to the proposal the PSC has submitted, leading to the query by the PSC of whether the objections are nothing more than a recycle of previously used "canned" objections from another case. Indeed, a good part of the text of the objector's memorandum

---

objecting law firms and have no record of these firms even asking for an assignment of work to be performed.

sounds more like an objection to a "final" award of and allocations of fees and expenses withheld, rather than objections to the fact of implementing an assessment against cases as they resolve, *to be held in escrow*, pending further order of the Court.

Not at issue now is any request for the Court to:

1) set a final assessment percentage;

2) determine the gross aggregate fee for the common benefit work performed;

3) perform a lodestar crosscheck as to the amount of common benefit work performed in order to confirm the propriety of a fee award; and,

4) allocate fees and expenses for common work performed.

None of these are at issue now, because these matters are not ripe for a Court decision. This, however, does not undermine that it is appropriate at this time for the PSC to seek entry of a common benefit fee and expense assessment order setting forth a percentage to protect the PSC and other common benefit attorneys for the extensive work they have performed to date.

The Objectors insinuate that all that the PSC can offer now is work performed in an "early" timeframe. *Id.* at 2. ("Plaintiffs who choose to avail themselves of the common benefit work performed by the PSC in the "early" timeframe would be assessed an 8% holdback….[while] Plaintiffs who wait too long in deciding to utilize the PSC's common benefit work are assessed at 12%...").

But, as the Court knows, this case is far beyond an "early" timeframe. This MDL is quite well developed,[4] particularly as to the common benefit aspects, with the PSC having discovered and produced evidence and expert reports to establish general causation, the Court having held an extensive *Daubert* hearing and made rulings thereon, and with the case now proceeding into a bellwether stage.[5] Thus, the suggestion that this case is in an early stage and hence it is premature to consider setting an assessment percentage is false.

Moreover, it is common in MDL cases for the MDL Court to enter an assessment percentage very early in the case.[6] But contrary to the process adopted

---

[4] Memorandum at 4-6 describing the nature of the work performed to date. The Court may take judicial notice of the quantity and quality of work to determine  an assessment is properly ordered.

[5] The PSC's role is not to litigate case specific matters, which typically occur later, except for the PSC's involvement in bellwether cases.

[6] *Memorandum* at  13, n.7. *See, e.g., In re Syngenta* AG MIR 162 Corn. Litig., No. 14-2591, 2015 WL 2165341, at *6 (D. Kan. May 8, 2015) (overruling objections to "different percentages for Participating Counsel based on when such counsel signed a participation agreement" and concluding "that there is a benefit to encouraging early participation in the common benefit scheme"); *Bextra*, Dkt. No. 2507 (specifying higher assessment for later participation); *In re General Motors LLC Ignition Switch Litig.*, No. 14-2543, Dkt. No. 743 (S.D.N.Y. Mar. 26, 2015) (same); *In re Guidant Defibrillators Prod. Liab. Litig.*, No. 05-1708, 2006 WL 409229, at *3 (D. Minn. Feb. 15, 2006) (same); *In re Yaz Prods. Liab. Litig.*, MDL No. 2100 (CMO 14) (S.D. Ill. Mar. 25, 2010); *In Re: Testosterone Replacement Therapy Products Liability Litigation*, MDL No. 1748 (N. D. Ill.); *In Re: Juul Labs, Inc., Prod. Liab. Lit.*, Dkt 586 at ¶ 37 (N.D. Cal).

and judicially approved in many other cases, here, the PSC waited almost three full years since the entry of CMO-7 (entered August 9, 2017) to request the entry of CMO-7(A) to set a percentage assessment.[7] Clearly, the PSC is not jumping the gun in asking that an assessment percentage be set at this time. Moreover, whatever percentage is set now will be subject to review by the Court at the time any disbursement is ordered for common benefit fees and expenses.[8]

## II.   **ARGUMENT**

---

[7] By comparison, in *Juul*, the MDL court entered the assessment order only a few months after that MDL was established, and while *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL 2873, is a bit more mature, the entry of the common benefit assessment order in that case has occurred prior to any settlements and while the case remains in an early stage.

[8] *See,* proposed CMO 7(A) at ¶¶ 47-48 ("47. No amounts will be disbursed without review and approval by the Court, or such other mechanism as the Court may order. Specifically, such sums shall be distributed only upon Order of the Court in MDL No. 2738. 48. At an appropriate time, this Court expects to appoint a Common Benefit Fee and Expense Committee for the development of guidelines and criteria that will be utilized in connection with recommendations that will be made to this Court to govern the content of a Common Benefit fee petition, including the evaluation of all time and expense submissions that were made to the Administrator. This Court will enter an Order in the future relating to these issues"). *See also,* Memorandum at 8 ("The resulting "common benefit doctrine" empowers the district courts to apportion such fees and costs among all beneficiaries as a matter of federal equity jurisdiction and is the long-standing principle that modern MDL courts have adopted and operationalized through common benefit orders. *See, e.g., In re Bextra & Celebrex Mkt. Sales Prac. & Prod. Liab. Litig.,* No. 05-1699, 2006 WL 471782, at *1 (N.D. Cal. Feb. 28, 2006); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* No. CV 09-4115, 2020 WL 128589, at *25 (E.D. La. Jan. 10, 2020)).

A.    **The PSC's Motion Adequately Supports the Magnitude and Scope of the Proposed Assessment Percentage**

To the extent Objectors suggest an assessment percentage cannot be set until the end of a case in order to be able to determine a reference for the amount of the assessment in context to the value of the settlement(s), this is misleading as to what the PSC is attempting to accomplish by the entry of CMO-7(A). As the PSC has stated, what it seeks is a percentage which protects the work and expenses of the common benefit attorneys. The instant Motion does not seek to establish a final percentage, nor is there a request for the disbursement of or allocation of money. Indeed, there are no settled cases now that would be subject to the assessment proposed in CMO-7(A) to even be able to consider what the final percentage should be and any allocation of money.

Objectors' argument that the PSC erred in failing to provide a reference point for the proposed assessment percentage in this case and that the PSC erred by instead referencing the final assessment percentages in other cases is also misleading. The PSC recognizes that if this case resolves, it may do so as a "mega-fund" case. The chart of cases included in the Memorandum, includes mega-fund cases that resolved and an analysis of percentages from those cases.[9] The law reflects that as the value

---

[9] *Memorandum* at 11-13 (*Citing, In Re Diet Drugs* (multi-billion-dollar settlement); *In re Vioxx* (multi-billion dollar settlement) and cases settling at "nine-figure" (exceeding $100 million) amounts, like *Praxada*, *Fresenius*, and *Testosterone*.

of a case increases and reaches mega-fund status, the percentage assessment necessarily may go down because the percentage is being applied against a larger recovery, thereby generating an amount of holdback that would be expected to be sufficient to compensate the attorneys performing common benefit work and incurring common benefit expenses.  In other words, the larger a global settlement amount, the lesser the percentage may have to be.   However, the PSC's motion also reflects that as cases resolve for lesser amounts and do not reach a mega fund status, the percentage assessment may be higher to generate sufficient money to compensate for common benefit work and expenses. The PSC has provided the Court with a balanced analysis of cases and assessments as guidance for what the PSC believes is an appropriate assessment for now, pending adjustment by the Court later if necessary.[10]

Presently, there are no settlements in this MDL nor any that would be subject to the proposed assessment order and percentage. But as developments occur – it is possible that some cases could settle. Were that to occur, Defendants will need to know before disbursing settlement funds if there is any holdback to be paid to the Court-appointed escrow agent as an assessment; for once money is paid without an assessment, obtaining the return of the money could be very complicated and

---

[10] *See* Memorandum at 9-14.

difficult. Setting a percentage now as a placeholder is therefore a critical and responsible step to take.

The PSC here has suggested a fair and reasonable place holder assessment percentage to be applied. Were this percentage to prove to be too high at a later stage of the litigation, the percentage can be reduced prior to the Court awarding any fees and costs, thereby addressing Objectors' concern about a refund possibility. However, were the percentage to be set too low now, increasing it later is much more complicated.  The PSC has not taken license to request an overtly high percentage, but in terms of erring on one side or the other, *e.g.,* erring on a too high percentage that still allows for a refund versus erring on too low a percentage that may not be capable of being cured, erring in the former manner is preferable, and certainly the percentage suggested falls well within the range of mega fund case percentages.

**B.     The PSC Provided Valid Justification for a Graduated Assessment Percentage**

Next, Objectors argue the PSC failed to support why a graduated percentage assessment is justified. To the contrary, the PSC proposal is supported by numerous cases which utilized an "Early Participation" percentage and a "Late Participation" approach.[11]

---

[11] *See,* Memorandum at 13, n. 7.

As outlined in the PSC's motion and memorandum, the justification for having two different percentages is to prevent Plaintiffs from gaming the circumstances by withholding an agreement to have their cases assessed with the hope they may be able to resolve cases without having to pay any assessment, and failing that, to then agree to an assessment because that becomes the only way for them to resolve their cases. Permitting counsel to unfairly game the system should not be countenanced. Therefore, for counsel who do not make a decision to participate within a reasonable period of time to qualify as an "Early Participant" and choose to sit on the sidelines should not be permitted to gain access to the work product at the same assessment rate as others who agreed to be assessed from the outset. Setting a different assessment percentage for those who hold back on the sidelines is a matter of fundamental fairness.

A dual percentage provides an incentive for Plaintiffs to be "Early Participants." Without that incentive and an across the board singular percentage, there is a risk that too many Plaintiffs may choose not to participate and wait, in which case a single percentage would need to be higher. This is simple math. As more plaintiffs participate early, the percentage for them can be lower and still create a sufficient fund to compensate for the common benefit work and expenses. If less plaintiffs participate early, the percentage needs to be higher to create the same fund amount. The dual percentage proposed here, which has been adopted by many

Courts in other litigations, provides a slight discount for early participation and a slight penalty for late participation, compared to a single percentage that would have to be set somewhere in the middle. This explains why dual percentage approaches have been approved.[12]

### C.   The PSC's Proposal Does Not Impermissibly Provide for Withholding of Fees and Expenses in State Court Cases Over Which This MDL Has No Jurisdiction

Objector's third argument relates to the mechanics of the application of the assessment to state court cases. The Objectors misconstrue what is requested by the PSC's Motion.

The Motion provides for an assessment against all cases of all counsel who agree to participate. Counsel have the freedom to choose to participate at the early or late participation rate, or not participate at all.  If they choose not to participate, but have cases in the MDL, those cases will still be assessed because this MDL Court has jurisdiction over those cases.  But there is no effort by the PSC to assess state court cases of counsel who choose not to participate at all.  However, those counsel are not permitted to use the common benefit work product in their state court cases,

---

[12] The PSC again notes that what is at issue is establishing a mechanism for protecting the work-product that the common benefit counsel have created. The reason for the structure described is to protect this work product from "free" use and from gaming.

with the proposed penalty for doing so being set at the equivalent of the late participation assessment percentage.

If, however, a counsel chooses to participate, thereby giving such counsel the ability to use the common benefit work in their state court cases as well as in their MDL cases, that voluntary action by the counsel acts as a consent for their state court cases to be assessed.[13] There is no request that this Court  exercise jurisdiction over state court cases where the counsel does not agree to be a participating attorney. If counsel agrees to be a participating attorney, the jurisdiction of the Court is over the attorney and the common work product and not the actual state court cases *per se.*[14]

### D.   The PSC's Proposal Does Not Impermissibly Empower the PEC to Unilaterally Modify the Proposed Percentages

The Objector's fourth argument relates to the PEC purportedly reserving for itself a right to modify the assessment percentage on its own. This is a complete misunderstanding of the proposed CMO-7(A) as submitted.

The Proposed Order provides:

> This assessment represents a hold back pursuant to *In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006), and shall not be altered in any way unless each of the following occurs: (1) the PSC is consulted and provided an opportunity to be heard at a formally announced meeting prior to the filing of any motion to change the assessment amount; (2) the PSC approves the proposed change to the assessment by a majority vote of the PSC; (3) a noticed

---

[13] *See* Memorandum at 15-19.

[14] Memorandum at 18-19 (*citing In re Bausch & Lomb*, MDL 1785 (D.S.C. 2008).

11

motion (including notice to Defendants' Counsel) with an opportunity to be heard is granted by the Court, and (4) **this Court, upon good-cause shown, amends this Order**.

*See*, Proposed Order at ¶ 28 (emphasis added).

This makes clear that there are a number of required steps to change assessment percentages and, even after the occurrence of these steps, a change in the percentage still requires this Court to amend the Order.  Thus, assuming the Court enters the proposed Order as submitted, the PSC will not be accorded some mythical unilateral power to change the assessment percentage. And, whatever the percentage may be, it is a placeholder pending a formal petition for an award of fees and costs to be submitted at a later date, where the Court can determine what the final percentage should be.

### E.   The PSC's Proposal Does Not Need to Address at This Time A Mechanism for The Refund of Excess Fees and Expenses That May Be Escrowed

Objectors' final objection is that the Motion and proposal fails to provide a mechanism for the refund of any excess fees and expenses withheld. This objection is premature. Moreover, as made clear, no disbursement can occur without a Court order.

The usual procedure in MDL cases with an assessment, and what will occur in this case, is that if and when a time comes for the Court to order the release of money from the assessment account, the PEC/PSC fully expects to file a formal fee

petition setting forth the relevant law and facts to support an award of fees and expenses and the release of money from the escrow accounts.

The fee petition will be based on information about the total of time expended in the case with a lodestar computation cross check, and costs expended. The fee petition will explain what the PSC contends is the fair and reasonable gross fee to be awarded based on the facts and a lodestar cross check and will compare that amount against the amount withheld through assessments. The fee petition will consider all relevant law governing an award of fees, including percentages in mega fund cases if this case resolves within the criteria of a mega fund case.

In the event the percentage assessed is inappropriate when considering all factors, it is expected that the PSC will ask the Court to modify the percentage accordingly. Were this needed, it is possible that the percentage may need to be reduced or increased; though, as previously noted, increasing a percentage after the fact presents the difficulty of how to recover money already paid out. However, if a reduction in the percentage is appropriate, the Court can consider a mechanism to accomplish that result.[15] At present, the PSC has made a good faith estimate of what

---

[15] Since the assessment is against an attorney's private contingent fee percentage, were a refund to be warranted, the refund would be paid to the attorney who experienced an assessment against the private fee for the case. Because attorneys may be representing numerous plaintiffs in this litigation, the assessment will involve withholding a known amount for the attorney associated with the aggregate of that attorney's cases. If the percentage assessment is reduced, the escrow agent,

the percentage should be, recognizing that the percentage may need to be adjusted if and when cases settle, so that the amount of the fund collected is commensurate with the work performed.

As an aside, the PSC notes that many cases like this ultimately end-up settling pursuant to a global opt-in voluntary settlement agreement. When a case settles in that fashion, (and such a settlement usually involves a requirement that a certain percentage of cases participate), a known global value for the case is set and the application of the percentage assessment will provide a known fund amount. Even if there is no global settlement, but settlements involving individual law firms, typically such a settlement requires that a certain percentage of plaintiffs participate in order to effectuate the settlement. The process, whether in relation to a global settlement of this entire MDL or individual settlements involving cases of a law firm, typically requires a minimum participation rate  before the exchange of any money.

Once the amount of money that is being set aside is known, from the aggregation of individual settlements or a global settlement, the fee petition will then be based on the  money held by a Qualified Settlement Administrator. There is no reason to expect that this case will not follow this typical pattern, which  will afford the Objectors here (and any in the future who may object to the final fee petition) a

---

Mr. Winikur, could calculate the overage withheld by attorney and calculate a refund amount. Doing this should not be overly complicated, if necessary.

procedure to raise any issues they may have regarding the assessment and fee petition. There will an appropriate time for objections to a fee petition to be made, but now is not that time. The Objectors have simply jumped the gun with their premature objection to the Motion.

Finally, the Participation Agreement makes clear that there will be no disbursement without a Court Order and that a Fee Committee mechanism is expected to be established to determine fees, costs, allocation, and a final percentage.[16]

## III.   <u>CONCLUSION</u>

For the reasons set forth above and in the PSC's Motion, the PSC respectfully requests the Court enter proposed CMO-7(A).

Dated:        June 29, 2020                Respectfully submitted,

                                           /s/ *Michelle A. Parfitt*
                                           Michelle A. Parfitt
                                           ASHCRAFT & GEREL, LLP
                                           1825 K Street, NW, Suite 700
                                           Washington, DC 20006
                                           Tel: 202-783-6400
                                           Fax: 202-416-6392
                                           mparfitt@ashcraftlaw.com

                                           /s/ *P. Leigh O'Dell*
                                           P. Leigh O'Dell

---

[16] *See*, proposed Participation Agreement, at Section VI. "Distribution of Fees", ¶¶ 33-35 (Exhibit A to the Motion).

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
Leigh.odell@beasleyallen.com

*Plaintiffs' Co-Lead Counsel*

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*

**PLAINTIFFS' EXECUTIVE COMMITTEE:**

Warren T. Burns
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, TX 75201
Tel: 469-904-4551
Fax: 469-444-5002
wburns@burnscharest.com

Richard Golomb
GOLOMB & HONIK, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
rgolomb@golombhonik.com

Richard H. Meadow
THE LANIER LAW FIRM PC
6810 FM 1960 West
Houston, TX 77069
Tel: 713-659-5200
Fax: 713-659-2204
richard.meadow@lanierlawfirm.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11thFloor
New York, NY 10017
Tel: 212-397-1000
hunter@napolilaw.com

16

**PLAINTIFFS' STEERING COMMITTEE:**

Laurence S. Berman
Michael M. Weinkowitz
LEVIN, SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
lberman@lfsblaw.com

Timothy G. Blood
BLOOD, HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619-338-1100
Fax: 619-338-1101
tblood@bholaw.com

Sindhu S. Daniel
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, #1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181
sdaniel@baronbudd.com

Jeff S. Gibson
WAGNER REESE, LLP
11939 N. Meridian St.
Carmel, IN 46032
Tel: (317) 569-0000
Fax: (317) 569-8088
jgibson@wagnerreese.com

Kristie M. Hightower
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Tel: 337-439-0707
Fax: 337-439-1029
khightower@lundylawllp.com

Daniel R. Lapinski
MOTLEY RICE LLC
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel: 856-667-0500
Fax: 856-667-5133
dlapinski@motleyrice.com

Victoria Maniatis
SANDERS PHILLIPS GROSSMAN, LLC
100 Garden City Plaza, Suite 500
Garden City, NJ 11530
Tel: 516-640-3913
Fax: 516-741-0128
vmaniatis@thesandersfirm.com

Carmen S. Scott
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: 843-216-9162
Fax: 843-216-9450
cscott@motleyrice.com

Eric H. Weinberg
THE WEINBERG LAW FIRM
149 Livingston Avenue

Richard L. Root
MORRIS BART, LLC
Pan America Life Center

New Brunswick, NJ 08901
Tel: 732-246-7080
Fax: 732-246-1981
ehw@erichweinberg.com

Christopher V. Tisi
LEVIN PAPANTONIO
316 South Baylen St.
Pensacola, FL 32502
(850) 435-7000
ctisi@levinlaw.com

601 Poydras St., 24th Fl.
New Orleans, LA 70130
Tel. 504-525-8000
Fax: 504-599-3392
rroot@morrisbart.com