# Exhibit A

SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Sun Chemical Corporation v. Fike Corporation** **(A-89-18) (082815)**

**Argued March 17, 2020 -- Decided July 29, 2020**

**SOLOMON, J., writing for the Court.**

In this case the Court considers, in response to a question of law certified to the Court by the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-3, whether a Consumer Fraud Act (CFA) claim can be based, in part or exclusively, on a claim that also might be actionable under the Products Liability Act (PLA).

Sun Chemical Corporation (Sun) purchased an explosion isolation and suppression system (Suppression System) from Fike Corporation and Suppression Systems Incorporated (collectively, Fike) to prevent and contain potential explosions in its new dust collection system. On the first day that the Suppression System was operational, a fire occurred, and an alarm on the Suppression System's control panel activated but was not audible. An explosion sent a fireball through the ducts of the dust collection system, injuring seven Sun employees and damaging Sun's facility.

Sun brought a single-count complaint under the CFA in federal court alleging that Fike made oral and written misrepresentations about four aspects of the Suppression System: (1) the Suppression System would prevent explosions; (2) the Suppression System would have an audible alarm; (3) the Suppression System complied with industry standards; and (4) the system had never failed. The District Court granted Fike's summary judgment motion, finding that Sun's claims would be governed by the PLA and that it could not avoid the requirements of the PLA by crafting its claims under the CFA. Sun appealed, and after determining that extant New Jersey case law was not sufficiently on point to guide its determination of which of the two statutes to apply, the Third Circuit certified its questions to the Court, which the Court reformulated and accepted. ___ N.J. ___ (2019).

**HELD:** The Court answers the certified question in the affirmative. A CFA claim alleging express misrepresentations -- deceptive, fraudulent, misleading, and other unconscionable commercial practices -- may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects. It is the nature of the claims brought, not the nature of the damages sought, that is dispositive of whether the PLA precludes the separate causes of action. In other

1

words, the PLA will not bar a CFA claim alleging express or affirmative misrepresentations.

1.  There is no authority directly addressing the interplay between the CFA and PLA in this setting, but their statutory language, legislative history, and the Court's relevant jurisprudence regarding both statutes inform the Court's answer to the question before it.  The CFA prohibits deceptive, fraudulent, misleading, and other unconscionable commercial practices in connection with the sale of any merchandise or real estate.  The language of the CFA evinces a clear legislative intent that its provisions be applied broadly.  In Lemelledo v. Beneficial Management Corp. of America, 150 N.J. 255, 259-60, 271-73 (1997), a consumer brought a class action under the CFA against a financial services company for loan packing and the defendant argued that the CFA was preempted by other statutes regulating consumer loans.  The Court rejected that argument, holding there is a "presumption that the CFA applies to a covered activity," and the presumption can be overcome only when a court is satisfied "that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes."  Id. at 270.  In Real v. Radir Wheels, Inc., 198 N.J. 511, 514, 526 (2009), the Court applied the principles set forth in Lemelledo and held that the Used Car Lemon Law did not preempt a CFA claim for fraudulent advertisement brought by the purchaser of a used automobile from a private seller.  (pp. 8-13)

2.  The PLA imposes liability upon the manufacturer or seller for a product's manufacturing, warning, and design defects.  Under the PLA, a claimant can recover damages against the manufacturer or seller of a product upon proof that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose.  In In re Lead Paint Litigation, 191 N.J. 405, 436-37 (2007), the Court scrutinized a nuisance-based pleading and, based on a pleading-to-statute comparison, held that the PLA subsumed the plaintiffs' common law public nuisance causes of action that were fundamentally PLA claims.  The Court determined that the theory of liability claimed by the plaintiffs was, in reality, a PLA claim and was therefore actionable only under the strictures of the PLA.  Id. at 440.  In Sinclair v. Merck & Co., 195 N.J. 51, 54 (2008), the Court considered whether plaintiffs who used the drug Vioxx could maintain both CFA and PLA claims.  The Court determined, after considering the nature of the plaintiffs' allegations, that the plaintiffs sought "to avoid the requirements of the PLA by asserting their claims as CFA claims," even though "[t]he heart of [their] case [was] the potential for harm caused by Merck's drug."  Id. at 65-66.  (pp. 13-18)

3.  The CFA and PLA are intended to govern different conduct and to provide different remedies for such conduct.  There is thus no direct and unavoidable conflict between the CFA and PLA.  The PLA governs the legal universe of products liability actions as defined in that Act and the CFA applies to fraud and

misrepresentation and provides unique remedies intended to root out such conduct. Although the Court has rejected the idea that contract-based claims could be pled under the PLA, the Court has not yet considered the question at the center of this matter: whether tort-based claims that can be pled under the PLA can also -- or instead -- be pled under the CFA. The failure to warn of a product defect is cognizable under the PLA, while an affirmative misrepresentation that a specific flaw did not exist, or a product had never failed may be brought under the CFA. If a claim is premised upon a product's manufacturing, warning, or design defect, that claim must be brought under the PLA with damages limited to those available under that statute; CFA claims for the same conduct are precluded. But nothing about the PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the sale of the product. Indeed, the CFA is expressly "in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State." N.J.S.A. 56:8-2.13. (pp. 18-20)

4. Said differently, if a claim is based on deceptive, fraudulent, misleading, and other unconscionable commercial practices, it is not covered by the PLA and may be brought as a separate CFA claim. PLA and CFA claims may proceed in separate counts of the same suit, alleging different theories of liability and seeking dissimilar damages. Had the Legislature intended for the PLA to preempt, displace, or subsume the CFA, it would have said so. Neither the Federal Rules of Civil Procedure nor the New Jersey Court Rules preclude separate claims premised upon separate theories of liability from being advanced in the same pleading and sought at the same trial. (pp. 20-21)

5. How a given claim must be pled depends on the underlying theory of liability. The phrase "the essential nature of the claim[]" in Lead Paint is best understood not as an assessment of whether a claim is for harm caused by a product, but of whether the claim is based upon a product's manufacturing, warning, or design defect and therefore covered by the PLA. Significantly, it is the nature of the action giving rise to a claim that determines how a claim is characterized. Sun is mistaken in its heavy reliance on the nature of the damages it seeks. The nature of the plaintiff's damages does not determine whether the cause of action falls under the CFA or PLA; rather, it is the theory of liability underlying the claim that determines the recoverable damages. (pp. 21-24)

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion. JUSTICES PATTERSON and TIMPONE did not participate.**

SUPREME COURT OF NEW JERSEY

A-89 September Term 2018

082815

Sun Chemical Corporation,

Plaintiff-Appellant,

v.

Fike Corporation and Suppression
Systems Incorporated,

Defendants-Respondents.

On certification of question of law from the United
States Court of Appeals for the Third Circuit.

| Argued | Decided |
|--------|---------|
| March 17, 2020 | July 29, 2020 |

Lance J. Kalik argued the cause on behalf of appellant
(Riker Danzig Scherer Hyland & Perretti, attorneys;
Lance J. Kalik, of counsel and on the briefs, and
Jeffrey A. Beer, Jr., on the briefs).

Gino P. Mecoli argued the cause on behalf of
respondents (Reilly, McDevitt & Henrich, attorneys;
Gino P. Mecoli and Suzanne I. Turpin, on the brief).

Christopher M. Placitella argued the cause on behalf
of amicus curiae New Jersey Association of Justice
(Cohen, Placitella & Roth, attorneys; Christopher M.
Placitella, Jared M. Placitella, and Michael Coren, of
counsel and on the brief).

1

Kevin R. Jespersen, Assistant Attorney General,
argued the cause on behalf of amicus curiae Attorney
General of New Jersey (Gurbir S. Grewal, Attorney
General, attorney; Jason W. Rockwell, Assistant
Attorney General and Janine N. Matton, Assistant
Attorney General, of counsel, and Zachary N. Klein,
Deputy Attorney General, on the brief).

---

JUSTICE SOLOMON delivered the opinion of the Court.

---

New Jersey's Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -224, and

Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, are remedial statutes

that target different wrongs, address distinct types of harm, and provide for

divergent remedies.

The CFA is to be expansively read to proscribe unconscionable business

practices.  The PLA's reach is more limited -- it permits pursuit of product

liability claims brought by "claimants" for "harm," as those terms are defined

in the statute.  Just as the PLA is more limited in scope, it is more limited in

remedy:  it provides only for damages traditionally available in tort actions,

such as remuneration for destroyed property, emotional distress, and loss of

consortium; the CFA on the other hand entitles successful plaintiffs to treble

damages, costs, and attorney's fees.

In this case we consider, in response to a question of law certified by the

United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-3,

whether "a Consumer Fraud Act claim [can] be based, in part or exclusively, on a claim that also might be actionable under the Products Liability Act."[1]

---

[1]  In accepting the certified question, ___ N.J. ___ (2019), we exercised our authority under Rule 2:12A-2 to reformulate as the single question indicated above the following questions posed by the Third Circuit:

> (1) When a court decides a CFA claim based on affirmative and material misrepresentation about the features of a product, but the plaintiff is seeking damages for harm caused by the product's failure to conform to those features, what criteria should the court consider to determine whether the claim may proceed as a CFA claim or is subsumed under the PLA?
>
> (2)  In determining whether a claim may proceed under the CFA or is subsumed under the PLA, what significance should a court place on a plaintiff's assertion that its harm resulted primarily from physical injury to third parties (like employees) rather than property damage or personal physical injury?
>
> (3)  Where a complaint pleads a single CFA claim that asserts multiple harms, some of which fall within the ambit of the PLA, and others which do not, is the entire claim subsumed by the PLA or should the distinct categories of harm be deemed severable claims, some of which would not be subsumed and could instead be pursued under the CFA?
>
> (4)  Under the CFA, when can a commercial purchaser of a product recover consequential economic losses -- such as workers' compensation payments, attorneys' fees incurred in litigation, fees incurred in government investigations, and increased labor or production costs -- based on alleged misrepresentations the seller made about the features and capabilities of the product?

We conclude that, irrespective of the nature of the damages, a CFA claim alleging express misrepresentations -- deceptive, fraudulent, misleading, and other unconscionable commercial practices -- may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects.  It is the nature of the claims brought, and not the nature of the damages sought, that is dispositive of whether the PLA precludes the separate causes of action.  In other words, the PLA will not bar a CFA claim alleging express or affirmative misrepresentations.

I.

A.

We rely upon the following facts provided by the opinions of the Third Circuit and the United States District Court for the District of New Jersey.

Sun Chemical Corporation (Sun) has long operated an ink manufacturing business in New Jersey.  In 2012, Sun installed a new dust collection system at its facility.  Sun then purchased an explosion isolation and suppression system (Suppression System) from Fike Corporation and Suppression Systems Incorporated (collectively, Fike) to prevent and contain potential explosions in that dust collection system.

On the first day that the Suppression System was operational, a fire occurred in the dust collection system and an alarm on the Suppression

4

System's control panel activated but was not audible.  Sun employees attempted to extinguish the fire, but an explosion sent a fireball through the ducts of the dust collection system, injuring seven Sun employees and causing damage to Sun's facility.

## B.

Sun brought a single-count complaint under the CFA alleging that Fike made material oral and written misrepresentations about four aspects of the Suppression System:  (1) the Suppression System would prevent explosions; (2) the Suppression System would have an audible alarm; (3) the Suppression System complied with industry standards; and (4) the system had never failed. Following discovery, both parties moved for summary judgment.  The District Court granted Fike's motion, finding that Sun's claims would be governed by the PLA and noting that "a plaintiff may not avoid the requirements of the PLA by artfully crafting its claims under the CFA."

Sun appealed, and the Third Circuit noted that, although "the resemblance of Sun's claim to a product liability action" suggests it would fall under the PLA, the plain text of the CFA seems potentially hospitable to Sun's argument that "affirmative misrepresentations can be brought under the CFA . . . even though the damages claimed for those representations involve[] personal injuries to third parties and some property damage."  After

5

determining that extant New Jersey case law was not sufficiently on point to guide its determination of which of the two statutes to apply, the Third Circuit certified its questions to this Court.

After reformulating and accepting the question, we granted motions by the New Jersey Attorney General and the New Jersey Association for Justice (NJAJ) to participate as amici curiae. We consider their arguments along with those of the parties.

## II.

Sun concedes that five percent of its losses result from damage to its facility and are "physical damage to property" -- a "harm" specifically identified in N.J.S.A. 2A:58C-1(b)(2)(a), a section of the PLA. Sun maintains that the PLA is nevertheless inapplicable to those losses because they resulted from Fike's misrepresentations, not alleged defects.

Sun argues that the cost of the failed Suppression System likewise does not fall within the PLA, which explicitly excludes from its definition of "harm" in N.J.S.A. 2A:58C-1(b)(2)(a) any "damage . . . to the product itself." According to Sun, the cost of the Suppression System is a purely economic loss outside the scope of the PLA but specifically cognizable under the CFA.

Sun further contends that lost workhours and workers' compensation benefits paid as a result of injuries to its employees are purely economic losses

6

and thus do not establish "loss deriving from" personal injury within the meaning of N.J.S.A. 2A:58C-1(b)(2)(b) or (b)(2)(d) of the PLA.  In support, Sun notes that the PLA codified the economic loss doctrine,[2] which provides that economic loss resulting from harm to employees is not a cognizable "loss deriving from" personal injury.  In any case, Sun suggests that it should be able to proceed with a PLA count for its PLA damages and a separate count for its non-PLA damages.

Fike argues that the cost of the Suppression System does not qualify as "damage . . . to the product itself" under N.J.S.A. 2A:58C-1(b)(2)(a) because the Suppression System was not defective and was not damaged during the explosion.  Fike further contends that the losses resulting from injuries to Sun's employees constitute "loss deriving from" personal injury under N.J.S.A. 2A:58C-1(b)(2)(b) and (b)(2)(d).  Fike asserts that Sun cannot avoid application of the PLA by pleading only economic damages.  Rather, Fike argues, New Jersey courts look to the "essential nature of the claim" and will apply the PLA where appropriate, regardless of how the claim is pled.

---

[2]  The economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract.  See Dean v. Barrett Homes, Inc., 204 N.J. 286, 296-97 (2010).  Thus, under the economic loss doctrine, "the [PLA] and common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product."  Ford Motor Credit Co., LLC v. Mendola, 427 N.J. Super. 226, 240 (App. Div. 2012).

Amicus curiae NJAJ argues that CFA and PLA claims should be able to proceed concurrently if both are supported by the facts.  NJAJ asserts that the correct reading of the two statutes is that, "[s]ince representation-based claims and products liability claims deal with two distinct categories of unlawful conduct rather than two different theories covering the same underlying conduct, the PLA does not subsume representation-based claims."  (quoting Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC, 945 F. Supp. 2d 543, 556 n.5 (D.N.J. 2013)).

The Attorney General argues that recovery under the PLA is limited to those tort-based theories of recovery for losses that fit the PLA definition of harm.  The Attorney General also asserts that losses premised on non-tort theories of recovery and losses that do not fit the PLA definition of harm can proceed in separate counts of the same suit as PLA counts.

III.

There is no authority directly addressing the interplay between the CFA and PLA in this setting.  Nevertheless, their statutory language, legislative history, and this Court's relevant jurisprudence regarding both statutes inform our answer to the question before us.  We therefore begin by reviewing the pertinent provisions of the CFA and PLA, their purposes, and cases applying them.

8

A.

The Legislature passed the CFA in 1960 "to permit the Attorney General to combat the increasingly widespread practice of defrauding the consumer." Cox v. Sears Roebuck & Co., 138 N.J. 2, 14 (1994) (quoting S. Comm. Statement to S. 199 (1960)).  In so doing, the Legislature "intended to confer on the Attorney General the broadest kind of power to act in the interest of the consumer public."  Kugler v. Romain, 58 N.J. 522, 537 (1971).

The CFA prohibits deceptive, fraudulent, misleading, and other unconscionable commercial practices "in connection with the sale . . . of any merchandise or real estate."  N.J.S.A. 56:8-2.  "Merchandise" is broadly defined to "include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."  N.J.S.A. 56:8-1(c).  For the purposes of this certified question, the parties do not dispute that the Suppression System is a product offered to the public for sale.

In 1971, the Legislature amended the CFA to provide for private causes of action by consumers to recover for an "ascertainable loss of moneys or property, real or personal."  Weinberg v. Sprint Corp., 173 N.J. 233, 247-51 (2002) (quoting N.J.S.A. 56:8-19).  The amendment also enabled successful private plaintiffs to recover treble damages, reasonable attorneys' fees and costs, and "any other appropriate legal or equitable relief."  Id. at 250 (quoting

9

N.J.S.A. 56:8-19).  The private right of action "is integral to fulfilling the [CFA's] legislative purposes," Cox, 138 N.J. at 16, and by allowing recovery of attorneys' fees and costs, private attorneys are incentivized to bring CFA claims, thus reducing the enforcement burdens that otherwise would fall on the State, Weinberg, 173 N.J. at 248-49.

The CFA's history "is one of constant expansion of consumer protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997).  The statute has been "repeatedly amended and expanded . . . often by adding sections to address particular areas of concern and to include them specifically within its protective sweep." Czar, Inc. v. Heath, 198 N.J. 195, 201 (2009) (listing statutory changes).

In addition to its ever-growing scope, "[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly." Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 264 (1997). "[L]ike most remedial legislation, the [CFA] should be construed liberally in favor of consumers." Cox, 138 N.J. at 15.

And, by the plain terms of the statute, "[t]he rights, remedies and prohibitions" created by the CFA are "in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State." N.J.S.A. 56:8-2.13.  Courts are therefore reluctant "to undermine

10

the CFA's enforcement structure . . . by carving out exemptions for each allegedly fraudulent practice that may concomitantly be regulated by another source of law."  Lemelledo, 150 N.J. at 270.

This Court considered the reach of the CFA in the context of other regulatory laws in Lemelledo v. Beneficial Management Corp. of America and Real v. Radir Wheels, Inc.  We review those decisions in turn.

1.

In Lemelledo, a consumer brought a class action under the CFA against a financial services company for loan packing -- increasing a loan amount by including related services like credit insurance.  Id. at 259-60.  The defendant argued that the CFA was preempted by other statutes regulating consumer loans.  Id. at 271-73.  We rejected that argument, holding there is a "presumption that the CFA applies to a covered activity," a presumption that can be overcome only when a court is satisfied "that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes."  Id. at 270.

Tying the claim in Lemelledo to the CFA's purpose, we noted that,

> [i]f the hurdle for rebutting the basic assumption of applicability of the CFA to covered conduct is too easily overcome, the statute's remedial measures may be rendered impotent as primary weapons in combatting clear forms of fraud simply because those

11

> fraudulent practices happen also to be covered by some
> other statute or regulation.

[Ibid.]

With respect to other remedial statutes specifically, we noted that "[i]t is not readily to be inferred that the Legislature, by enacting multiple remedial statutes designed to augment protection, actually intended that parties be subject only to one source of regulation." Id. at 271. We nevertheless held that, in applying statutes that cover the same conduct as the CFA, courts should avoid statutory interpretations that impose overlapping or conflicting duties and obligations:

> Conflicting applications of the respective statutes and regulatory schemes can be avoided if courts are cognizant of the obligations created by other statutes and if they interpret the scope of the broad language of the CFA so as not to impose conflicting duties or duplicative financial obligations on the regulated party.

[Id. at 273.]

2.

Later, in Radir Wheels, we applied the principles set forth in Lemelledo in considering whether the Used Car Lemon Law, N.J.S.A. 56:8-67 to -80, preempted a CFA claim for fraudulent advertisement brought by the purchaser of a used automobile from a private seller. 198 N.J. 511, 514 (2009). The Appellate Division held that the consumer failed to state a cause of action

under the CFA because the "commercial activities of a casual seller . . . d[id] not fall within the CFA's private civil cause of action." Ibid.  We disagreed.

Discussing the standard for displacing the CFA set forth in Lemelledo, we noted that "[t]he measured application of those principles has led to few, very limited exceptions to the CFA's reach." Id. at 523 (citing Macedo v. Dello Russo, 178 N.J. 340, 345-46 (2004) (explaining that the CFA does not apply to "learned professionals . . . operating in their professional capacities"); Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 272-73 (1978) (holding the CFA inapplicable "to public utility rates subject to the Board of Public Utilities' exclusive rate-setting jurisdiction")); see also id. at 523 n.9 (collecting examples of additional settings in which the CFA did not apply).

Ultimately, we held that the consumer's CFA claim was not preempted by the Used Car Lemon Law, which expressly provides that "[n]othing in this act shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law." Id. at 526 (quoting N.J.S.A. 56:8-75).

B.

The PLA was enacted in 1987, nearly three decades after the CFA.  See Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 94-95 (1990).  As a New Jersey tort-reform statute, the PLA codified certain issues relating to the

common law governing product liability actions and "establish[ed] new rules regarding the burden of proof and the imposition of liability."  Id. at 95.

The PLA is intended to protect users from harm caused by defective products by "establish[ing] clear rules" in "actions for damages for harm caused by products."  N.J.S.A. 2A:58C-1(a).  Specifically, the PLA imposes liability upon the manufacturer or seller for a product's "manufacturing defects, warning defects, and design defects."  Assemb. Ins. Comm. Statement to S. Comm. Substitute for S. 2805 (L. 1987, c. 197) (June 22, 1987); Sponsor's Statement to S. 2805 (L. 1987, c. 197) (Nov. 17, 1986); see also N.J.S.A. 2A:58C-2.

Under the PLA, a claimant can recover damages against the "manufacturer or seller of a product" upon proof "that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose." N.J.S.A. 2A:58C-2.  A "claimant" is "any person who brings a product liability action," N.J.S.A. 2A:58C-1(b)(1), and a "product liability action" is a claim for harm caused by a manufacturing, warning, or design defect, "except actions for harm caused by breach of an express warranty," N.J.S.A. 2A:58C-

14

1(b)(3).[3]  In addition to the exception for breach of an express warranty, the PLA excludes environmental tort actions.  N.J.S.A. 2A:58C-6.

Damages recoverable under the PLA for "harm" caused by the product are:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.
>
> [N.J.S.A. 2A:58C-1(b)(2).]

This Court has considered the kinds of claims covered by the PLA in In re Lead Paint Litigation and Sinclair v. Merck & Co.  We review those cases below.

### 1.

Twenty years after enactment of the PLA, this Court decided Lead Paint in which we scrutinized a nuisance-based pleading and, based on a pleading-to-statute comparison, held that the PLA subsumed the plaintiffs' common law public nuisance causes of action that were fundamentally PLA claims.  191

---

[3]  The PLA and its legislative history, to which the Legislature expressly encourages reference, makes clear that the PLA did not intend to wholly supplant the products liability case law in New Jersey.  See N.J.S.A. 2A:58C-1(a).  Thus, our focus must be on the PLA's defined theories on which claims of harm may be actionable against a manufacturer or seller.  See id. at -2.

N.J. 405, 436-37 (2007).  In Lead Paint, twenty-six municipalities and counties asserted common law public nuisance claims against manufacturers and distributors of lead paint, in part for the costs of medical care for lead poisoning and for the detection and removal of the paint.  Id. at 408-09.  In doing so, the municipalities sought to apply the environmental tort exception to the PLA, N.J.S.A. 2A:58C-6.  Id. at 437.

We found that the harms attributable to the lead paint -- physical damage to property and personal physical illness or injury -- were of the type intended to be remedied through the PLA.  The common law claims asserted by the plaintiffs essentially sounded in "product liability" for failure to warn and were therefore also covered by the PLA.  Id. at 436-40.

> The central focus of plaintiffs' complaints is that defendants were aware of dangers associated with lead -- and by extension, with the dangers of including it in paint intended to be used in homes and businesses -- and failed to warn of those dangers.  This classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA.
>
> [Id. at 437.]

Thus, we determined that the theory of liability claimed by the plaintiffs was, in reality, a PLA claim and was therefore actionable only under the strictures of the PLA.  Id. at 440.

2.

One year later, in Sinclair, we considered whether plaintiffs who used the drug Vioxx could maintain both CFA and PLA claims.  195 N.J. 51, 54 (2008).  In that case, the plaintiffs sought certification of a nationwide class of individuals who took the drug "for at least six consecutive weeks" and "who had not sought to recover damages for personal injuries caused by Vioxx."  Id. at 55.  The plaintiffs alleged that "as a result of their direct and prolonged consumption of Vioxx" they were at increased risk of future cardiac disorders like heart attack or stroke; they therefore sought medical monitoring and punitive damages.  Id. at 55-56.

Unlike the present case where Sun brought CFA and PLA claims in the same count of a single-count complaint, in Sinclair the CFA and PLA causes of action were brought in separate but nearly indistinguishable counts.  First Amended Class Action Complaint for Damages and Equitable and Injunctive Relief ¶¶ 119, 123, Sinclair v. Merck & Co., ATL-L3771-04 MT (N.J. Super. Ct. Law Div. Mar. 17, 2015).  Further, the relief the plaintiffs sought under the CFA count of the complaint matched the PLA count word-for-word.  Compare id. ¶ 124 with id. ¶ 133.

The focus of Sinclair was whether the plaintiffs' claimed risk of future cardiovascular injury was cognizable under the PLA despite their failure to

17

allege present physical injuries.  We found that the plaintiffs' claimed risk of future cardiovascular injury was not cognizable under the PLA because the statute "require[s] a physical injury."  Sinclair, 195 N.J. at 64; see ibid. ("Nothing in the legislative history of the PLA suggests that the Legislature intended to eliminate that physical component.").  More importantly, we determined, after considering the nature of the plaintiffs' allegations, that the plaintiffs sought "to avoid the requirements of the PLA by asserting their claims as CFA claims," even though "[t]he heart of [their] case [was] the potential for harm caused by Merck's drug." Id. at 65-66.  That claim, we explained, "does not fall within an exception to the PLA, but rather clearly falls within its scope." Id. at 66.

### IV.

### A.

As our review of the statutes reveals, the CFA and PLA are intended to govern different conduct and to provide different remedies for such conduct. There is thus no direct and unavoidable conflict between the CFA and PLA. The PLA governs the legal universe of products liability actions as defined in that Act and the CFA applies to fraud and misrepresentation and provides unique remedies intended to root out such conduct.

We have stressed that the PLA cannot be stretched to encompass claims sounding in contract, noting that the PLA's definition of harm "draw[s] a clear line between remedies available in tort and contract."  See Dean v. Barrett Homes, Inc., 204 N.J. 286, 305 (2010).  Although we have thus rejected the idea that contract-based claims could be pled under the PLA, we have not yet considered the question at the center of this matter:  whether tort-based claims that can be pled under the PLA can also -- or instead -- be pled under the CFA.

Legislative intent to allow certain CFA claims to co-exist with separately pled statutory PLA claims may be found in the CFA's 1990 and 2007 amendments requiring notice and prohibiting the sale of certain defective, hazardous, or dangerous children's products.  See N.J.S.A. 56:8-20, -51, and -53.1 to -53.5.  Those post-PLA amendments to the CFA evidence the statutes' complementary nature since both concern product safety and the protection of child consumers.  Violation of either amendment would give rise to a CFA claim irrespective of whether a product defect caused injury actionable under the PLA.  The failure to warn of a product defect is likewise cognizable under the PLA, N.J.S.A. 2A:58C-2 (identifying as actionable the failure to provide adequate warnings or instructions for a product), while an affirmative misrepresentation that a specific flaw did not exist or a product had never failed may be brought under the CFA, N.J.S.A. 56:8-2 (identifying as

19

actionable a "misrepresentation or the knowing[] concealment, suppression or omission of any material fact").

If a claim is premised upon a product's manufacturing, warning, or design defect, that claim must be brought under the PLA with damages limited to those available under that statute; CFA claims for the same conduct are precluded.  But nothing about the PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the sale of the product.  Indeed, the CFA is expressly "in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State."  N.J.S.A. 56:8-2.13. Said differently, if a claim is based on deceptive, fraudulent, misleading, and other unconscionable commercial practices, it is not covered by the PLA and may be brought as a separate CFA claim.

We agree with amici that PLA and CFA claims may proceed in separate counts of the same suit, alleging different theories of liability and seeking dissimilar damages.  As we noted in Lemelledo, CFA rights and remedies are "cumulative to those created by other sources of law," 150 N.J. at 264, 268, and the presumptive application of the CFA is overcome only if "a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes," id. at 270.

20

And as we pointed out in <u>Sinclair</u>, had the Legislature intended for the PLA to preempt, displace, or subsume the CFA, it would have said so.  195 N.J. at 65-66; <u>see also</u> <u>DiProspero v. Penn</u>, 183 N.J. 477, 494-95 (2005) ("[T]he Legislature knows how to incorporate into a new statute a standard articulated in a prior opinion of this Court."); <u>Miah v. Ahmed</u>, 179 N.J. 511, 520 (2004) (explaining that judicial interpretation begins with the plain language of the statute).  Instead, as noted above, the Legislature has announced the opposite -- the CFA supplements any other right or remedy available.  <u>See</u> N.J.S.A. 56:8-2.13.

Neither the Federal Rules of Civil Procedure nor the New Jersey Court Rules preclude separate claims premised upon separate theories of liability from being advanced in the same pleading and sought at the same trial.  <u>See</u> Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); <u>R.</u> 4:5-6 ("As many separate claims or defenses as the party has may be stated regardless of their consistency and whether based on legal or on equitable grounds or on both.").

## B.

How a given claim must be pled, in turn, depends on what is at the "heart of plaintiffs' case" -- the underlying theory of liability.  <u>Sinclair</u>, 195 N.J. at 66.

21

The phrase "the essential nature of the claim[]" was referenced by this Court in Lead Paint when we were engaged in a review of the pleadings to determine whether the theory pled on the facts presented, although denoted as a nuisance claim, was in fact one of the three codified theories made exclusively actionable under the PLA. 191 N.J. at 437. If so, then the claim was supplanted by the PLA. Although helpful in explaining our analysis in that matter, it is not to be regarded as the interpretative guide to the PLA. It is best understood not as an assessment of whether a claim is for harm caused by a product, but of whether the claim is based upon a product's manufacturing, warning, or design defect and therefore covered by the PLA. See Sinclair, 195 N.J. at 54, 62 (finding the "essential nature" of the disputed pleading to be a product defect claim); Lead Paint, 191 N.J. at 437 (finding the disputed pleading to be essentially a failure to warn claim).

We noted in Sinclair that the Legislature intended that the defined products liability actions remain "within the scope of the PLA," 195 N.J. at 65, and expressly excluded from that "actions for harm caused by breach of an express warranty," id. at 62 (quoting N.J.S.A. 2A:58C-1(b)(3)). Notably, breach of an express warranty may be covered by the CFA as a misleading commercial practice. See N.J.S.A. 56:8-2 (declaring unlawful the use of a "false promise . . . in connection with the sale or advertisement of any

22

merchandise"). Thus, aside from breach of express warranty claims,[4] claims that sound in the type of products liability actions defined in the PLA must be brought under the PLA.

Significantly, it is the nature of the action giving rise to a claim that determines how a claim is characterized. Sun is mistaken in its heavy reliance on the nature of the damages it seeks, claiming they are economic losses rather than damages for injury to persons or property. The nature of the plaintiff's damages does not determine whether the cause of action falls under the CFA or PLA; rather, it is the theory of liability underlying the claim that determines the recoverable damages.

Therefore, a CFA claim alleging express misrepresentations -- deceptive, fraudulent, misleading, and other unconscionable commercial practices -- may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects. In other words, the PLA will not bar a CFA claim alleging express or affirmative misrepresentations.

## V.

For the reasons set forth above, we answer the certified question in the affirmative. A CFA claim alleging express or affirmative misrepresentations

---

[4] As explained previously, environmental tort actions are also excepted from the PLA. N.J.S.A. 2A:58C-6.

23

-- deceptive, fraudulent, misleading, and other unconscionable commercial practices -- may proceed in separate counts of the same pleading as a PLA claim alleging product design, manufacturing, or warning defects.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion.  JUSTICES PATTERSON and TIMPONE did not participate.