

*faegredrinker.com*

**Susan M. Sharko**
Partner
susan.sharko@faegredrinker.com
973-549-7350 direct

Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey  07932
+1 973 549 7000 main
+1 973 360 9831 fax

August 17, 2020

**VIA ECF**

Honorable Freda L. Wolfson, Chief Judge
United States District Court- District of NJ
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Court Room 5E
Trenton, NJ 08608

*Re:  **In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation - MDL 2738***

Dear Chief Judge Wolfson:

Plaintiffs' August 14 letter ("Pls.' Ltr.") to the Court suggests that they have so little confidence in their science positions that they will resort to any argument – no matter how frivolous – to avoid the appointment of neutral science experts in this litigation.

This is most evident in their contention that Fed. R. Evid. 706 is unconstitutional because allowing a jury to hear from neutral expert witnesses would "deprive plaintiffs of their Seventh Amendment right to a jury trial."  (Pls.' Ltr. at 2.)  Plaintiffs' position is fundamentally a "policy argument[] against Rule 706," that "Congress entertained and rejected" when it adopted the rule.  *Monolithic Power Sys., Inc. v. O2 Mico Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009) (rejecting Seventh Amendment argument and discussing legislative history of rule).  And rightly so.  The Seventh "Amendment was designed to preserve the basic institution of jury trial in only its most fundamental elements, not the great mass of procedural forms and details," such as which particular witnesses may be called.  *Galloway v. United States*, 319 U.S. 372, 392 (1943).  As such, "the Supreme Court has long recognized the constitutionality of court-appointed experts."

Honorable Freda L. Wolfson,
Chief Judge

-2-

August 17, 2020

*Monolithic Power Sys.*, 558 F.3d at 1348 (citing *In re Peterson*, 253 U.S. 300 (1920)).  The only ruling plaintiffs cite addressed a proposed settlement term that had nothing to do with Rule 706.  There, the court suggested, without deciding the issue, that **binding resolution** of contested issues before a science panel **selected by the parties** as part of a proposed class settlement **might** be constitutionally "questionable."  Pretrial Order No. 214: Den. Mots. to Alter Schedule on Mot. for Prelim. Approval at 3, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC, ECF No. 11182 (N.D. Cal. July 6, 2020) (Ex. A to Pls.' Ltr.).  In no way did the Roundup MDL court question the constitutionality of Fed. R. Evid. 706.

To the extent plaintiffs suggest that jurors will be overawed by Rule 706 experts and fail to carefully scrutinize their testimony, that concern is equally misplaced.  The advisory committee expressly decided to allow for the use of court-appointed experts notwithstanding the possibility that they would be accorded more weight by jurors.  Fed. R. Evid. 706 advisory committee's notes to 1972 proposed rules.  Moreover, this concern has not been substantiated by empirical data, Tahirih V. Lee, *Court-Appointed Experts & Judicial Reluctance:  A Proposal to Amend Rule 706 of the Federal Rules of Evidence*, 6 Yale L. & Pol'y Rev. 480, 495-96 (1988) ("There is no conclusive, empirical evidence that juries . . . giv[e] court-appointed expert testimony undue weight . . . ."), and the parties would be protected by their ability to cross-examine Court-appointed experts and present their own experts, and by jury instructions explaining that neutral experts can be wrong and that their testimony should be scrutinized just as carefully as any other.

Plaintiffs' effort to reframe defendants' request to provide the jury with additional evidence as an attempt to relitigate the *Daubert* process is similarly misguided.  The Court's *Daubert* proceeding addressed the admissibility of expert evidence; the trial will address the merits of that evidence.  The Court highlighted this distinction time and time again in its ruling. (*See, e.g.*, Op. at 74, ECF No. 13186 (Apr. 27, 2020) ("[I]t is not for the Court to decide whether [experts] reached the correct conclusion . . . or to otherwise disagree with their opinions."); *id.* at 118 ("[T]he question of whose experts are correct is a question for the jury; it would be erroneous for this Court to make those factual findings . . . ."); *id.* at 129 ("The Court, in its capacity as a gatekeeper . . . , cannot determine whose opinions or conclusions are more sound."); *id.* at 119-120 (defendants can "raise . . .

| | | |
|---|---|---|
| Honorable Freda L. Wolfson,<br>Chief Judge | -3- | August 17, 2020 |

issues on cross-examination before the fact-finder" as to plaintiffs' "shaky but admissible" expert testimony) (citation omitted).)  *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("The focus . . . must be solely on principles and methodology, not on the conclusions that they generate."). And plaintiffs argued the same thing when it served their interest. (*See, e.g.*, PSC's Omnibus Br. re:  *Daubert* Legal Standard & Scientific Principles for Assessing General Causation at 2 n.5, ECF No. 9732 (May 7, 2019) (at the *Daubert* stage, "plaintiffs 'do not have to demonstrate to the judge by a preponderance of the evidence that . . . their experts are correct'") (citation omitted).)  Ultimately, plaintiffs' misplaced invocation of *Daubert* is simply another indication that they wish to shield their "shaky but admissible" evidence from scrutiny by neutral, Court-appointed experts.

Finally, while plaintiffs concede that a similar process was used in the *Breast Implant* MDL proceeding, they note that courts invoke their authority under Rule 706 infrequently, and contend that the cases in which the rule has been invoked are distinguishable.  Strikingly, however, they offer **no authority of their own** to suggest that appointment of experts is inappropriate here.  Most fundamentally, the fact that a procedure is rarely utilized does not mean it is never appropriate.  And the policy behind Rule 706 – the "promot[ion] [of] accurate factfinding," 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Evidence § 6302 (2d ed.) – is of especially profound importance in a bellwether trial that will guide the resolution of thousands upon thousands of other cases.  *See* Howard M. Erichson, *Mass Tort Litigation & Inquisitorial Justice*, 87 Geo. L.J. 1983, 1994-95 (1999) ("[W]here the stakes are high, the scientific dispute central, and the public interest great—as in much mass tort litigation—it is difficult to justify the failure to employ independent experts.") (footnote omitted).

In any event, plaintiffs' effort to distinguish previous cases in which Rule 706 panels were used is largely without merit.  Plaintiffs labor to distinguish *Breast Implant*, but cannot meaningfully do so.  They point out that in that litigation, "the MDL court had reached the point of remanding cases for trial." (Pls.' Ltr. at 5.)  But plaintiffs do not even try to explain why the particular forum in which forthcoming jury trials are to take place could possibly be relevant.  They also cherry-pick a single quote from a single report to suggest that *Breast Implant* has been "much criticized." (*Id.*)  But the report they cite actually found that "the expert panels developed . . .

Honorable Freda L. Wolfson,
Chief Judge

-4-

August 17, 2020

reports of extraordinarily high quality" and concluded with a series of suggestions for productive use of similar procedures in future cases. Laural L. Hooper et al., *Neutral Science Panels: Two Examples of Panels of Court-Appointed Experts in the Breast Implant Products Liability Litigation* at 87 (F.J.C. 2001).

Plaintiffs point out that a series of other cases in which expert panels under Rule 706 were either appointed or recommended are not entirely factually analogous. (*See* Pls.' Ltr. at 6 (collecting cases).) But plaintiffs do not explain why epidemiology and cancer biology are any less fit for neutral expert testimony than computer mechanics, *see Monolithic Power Sys.*, 558 F.3d 1341, or economic statistics, *see In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002). The fundamental point – that the issues are beyond the ken of the typical juror and that the parties' experts are in irreconcilable conflict – is the same. Moreover, Rule 706 panels are also frequently employed in product liability or personal injury cases, including to testify at trial. *See, e.g., Cramer v. Beiser*, No. 3:13-cv-262-J-39JRK, 2018 WL 3417114, at *3 (M.D. Fla. July 13, 2018) ("parties' disputed interpretations" regarding proper medical care); *In re Cooper/T. Smith Stevedoring Co.*, 942 F. Supp. 267, 270 (E.D. La. 1996) (appointing expert in "orthopedic surgery" "[b]ecause of the divergent views of the two experts"); *DeAngelis v. A. Tarricone, Inc.*, 151 F.R.D. 245, 246 (S.D.N.Y. 1993) ("physical and psychological impacts of . . . gasoline leakage"). Indeed, when one study asked judges what kind of cases would benefit from Rule 706 testimony, "product liability" cases were the second most common answer. *See* Joe S. Cecil & Thomas E. Willging, *Court-Appointed Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706* at 19, 79 (F.J.C. 1993).

In short, plaintiffs raise a series of meritless objections to the concept of neutral experts, apparently fearful of what Court-appointed scientists would tell a jury about plaintiffs' theories. But a trial should be a search for the truth, not merely a battle of paid experts. Here, jurors will be faced with complicated scientific issues that implicate epidemiology, statistics and cancer biology, and there can be no question that Court-appointed scientists with experience in the relevant fields would assist them in understanding the relevant scientific standards, data and other evidence necessary to reach a fair and informed verdict.

Honorable Freda L. Wolfson,
Chief Judge
-5-
August 17, 2020

      For these reasons, defendants respectfully request that the Court permit defendants to file a motion so that the Court can address this proposal on more comprehensive briefing or that the Court hold a conference so that the parties can respond to any questions that the Court may have with respect to the possibility of Rule 706 experts.

      Respectfully submitted,

/s/ *Susan M. Sharko*
Susan M. Sharko
FAEGRE DRINKER BIDDLE
 & REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: 973-549-7350
Facsimile:  973-360-9831
E-mail: susan.sharko@faegredrinker.com

*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

cc:   All Counsel of Record (via ECF)
       Hon. Joel A. Pisano (ret.)