**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(609) 989-2182**

CHAMBERS OF
FREDA L. WOLFSON
CHIEF JUDGE

Clarkson S. Fisher Federal
Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

## LETTER ORDER

September 9, 2020

Susan M. Sharko, Esq.
Faegre Drinker Biddle & Reath LLP
600 Campus
Florham Park, NJ 07932

Patricia Leigh O'Dell, Esq.
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36104

Michelle A. Partfitt, Esq.
Ashcraft & Gerel
1825 K Street, NW
Suite 700
Washington, DC 2006

Thomas T. Locke, Esq.
Seyfarth Shaw LLP
975 F Street NW
Washington, DC 20004

> **RE:** *Johnson & Johnson Talcum Powder Products Marketing, Sales*
> *Practices, and Products Liability Litigation*, **MDL No. 16-2738(FLW)**

Counsel:

This matter comes before the Court on Defendants Johnson & Johnson and Johnson &

Johnson Consumer Companies, Inc.'s ("Defendants") letter request for leave to file a motion for

the Court to appoint experts in epidemiology and cancer biology pursuant to Federal Rule of

Evidence 706.    Previously in this matter, the parties filed numerous motions to exclude approximately 35 experts who have been named by the parties pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  On April 27, 2020, the Court, in a 141-page Opinion, resolved the majority of issues raised in those motions.  Specifically, the Court found that the experts presented by both parties were permitted to testify at trial in this matter, subject to certain limitations.  In finding the proposed expert testimony admissible, the Court held that while the parties' experts did not agree, both sides' expert opinions in various scientific fields, including epidemiology and cancer biology, are sufficiently reliable to be presented to a jury, and the weight to be ascribed to the experts' opinions are reserved for the jury to resolve.

Defendants, concerned that the questions of general causation in this matter are too complex for the jury to comprehend, now seeks permission to file a motion for court-appointed experts in the areas of epidemiology and cancer biology.  Specifically, Defendants argue that neutral experts should be called to testify on three issues key to this litigation:  (1) whether scientific evidence supports the conclusion that cosmetic talcum powder use can cause any subtype of ovarian cancer and, if so, what types; (2) whether Plaintiffs' proposed biological mechanism— that talc promotes inflammation that causes ovarian cancer—is consistent with scientific knowledge of ovarian cancer; and (3) whether it is possible to say that a woman's ovarian cancer was caused by talc use and how to reach such a conclusion.  Plaintiffs oppose Defendants' request for leave to file a motion and, correspondingly, their request for the appointment of experts on these issues.  Having considered the submissions of the parties, I find that the filing of a motion to appoint court-appointed experts is not warranted at this time.  In evaluating Defendants' request, I briefly discuss the parties' arguments in their respective letters.

Federal Rule of Evidence 706 "affords the trial judge broad discretion to appoint an independent expert answerable to the court, whether *sua sponte* or on the motion of a party." *Ford v. Mercer Cty. Corr. Ctr.*, 171 F. App'x 416 , 420 (3d Cir. 2006).[1]   Rule 706 is intended to "promote the jury's factfinding ability" and the decision to appoint an expert is discretionary. *Id.* In that regard, the Third Circuit has instructed that "[t]he most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand *without* expert assistance."   *Id.* (emphasis added). Importantly, in *Ford*, the Third Circuit advised that a district court would not abuse its discretion in appointing an expert under Rule 706, in circumstances where the parties did not retain their own experts and the issues involved are esoteric and complex. *Ford*, 171 F. App'x at 421. Nevertheless, despite Rule 706's grant of discretion to the district courts to appoint an independent expert, it is rarely done. *See Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*, 558 F.3d 1341, 1349 (Fed. Cir. 2009) ("Courts and commentators alike have remarked that Rule 706 should be invoked only in rare and compelling circumstances.").

One of the primary reasons that expert appointments under Rule 706 are exceedingly rare is because such appointments by courts "interfere[] with adversarial control over the presentation of evidence." Wright & Miller, *Federal Practice & Procedure* § 6304 (2d ed.).  In other words, Rule 706 appointments are an "extraordinary activity that is appropriate only in rare instances in which the traditional adversarial process has failed to permit an informed assessment of the facts." *Rackemann v. LISNR, Inc.*, No. 17-624, 2017 WL 2971955, at *1 (S.D. Ind. July 11, 2017) (quoting

---

[1]     Rule 706 specifically provides that "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations.  The court may appoint any expert that the parties agree on and any of its own choosing.  But the court may only appoint someone who consents to act." Fed. R. Evid. 706(a).

Cecil & Willging, *Court-Appointed Experts: Defining the Role of Experts Appointed under Federal Rule of Evidence* 4 (Fed. Jud. Ctr. 1993)); *see also Carranza v. Fraas*, 471 F. Supp. 2d 8, 9 (D.D.C. 2007) ("Court invocation of this Rule typically occurs in 'exceptional cases in which the ordinary adversary process does not suffice,' or when a case presents 'compelling circumstances' warranting the appointment of an expert." (citations omitted)).  Here, I do not find that the traditional adversarial process has faltered in any way.  Both Plaintiffs and Defendants have identified experts that will testify on their respective behalf in bellwether trials in this matter. While those experts have diverging opinions, that, in and of itself, is not a reason to appoint a Rule 706 expert; indeed, a battle of experts is commonplace in products liability actions.  As I commented in my *Daubert* Opinion in this matter, this case presents a classic "battle of the experts" scenario, which the jury must resolve.  *See Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1216 (3d Cir. 1993) ("[I]t is well-established that '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'").  With both parties already presenting competent experts, who all withstood the *Daubert* scrutiny, it is unclear how court-appointed experts would meaningfully assist the fact-finder in resolving this battle of experts.  *See Newark Grp. v. Dopaco, Inc.*, No. 08-2623, 2011 WL 6012414, at *1 (E.D. Cal. Dec. 1, 2011) (denying request to appoint an independent expert where "experts [were] already involved in the case and it [was] unclear how the referenced expert could provide the Court with additional meaningful assistance").  In fact, the appointments may have a deleterious effect on trial. In that regard, appointing these so-called "neutral" experts has the potential result of suggesting a "correct" answer to the jury on certain key issues of causation, instead of the jurors independently weighing the testimony of experts proffered by the parties.  Such a result would clearly be prejudicial.

Moreover, while the issues in this case are admittedly complicated, they are not "overly complex," but rather, are the type of issues regularly considered by juries in similar products liability matters, particularly where the parties are presenting their own experts. *See, e.g.*, *Jama Investments, LLC v. Incorporated Cty. of Los Alamos*, No. 04-1173, 2006 WL 1228800, at *2 (D. N. Mex. Feb. 17, 2006) (denying request for Rule 706 expert where the issues in the case were "difficult" but "not 'unwieldy, complex, or technical . . . " and the parties planned on calling their own experts); *Anderson v. United States*, No. 05-876, 2009 WL 2044670 , at *2 (S.D.W.V. July 8, 2009) (declining to appoint Rule 706 witness where the case was not "overly complex or scientific and the court entertains cases of a similar nature without the benefit of a court-appointed expert regularly").

Finally, the case law presented by Defendants in support of their request for leave is not persuasive. Defendants place significant weight on the procedures used in *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, No. 92-1000, 1996 WL 34401813 (N.D. Ala. May 31, 1996).  In that MDL, the court appointed a selection panel tasked with recommending neutral experts in certain fields that would "review, critique, and evaluate existing scientific literature, research, and publications" on topics identified by the court, specifically with respect to issues of general causation. *Id.* at *3.  However, it appears from the *Breast Implant* court's orders that, at the time the court sought to appoint experts, the parties had not named any experts that they would call at trial. *See id.* at *3 ("As provided in Rule 706(d), neither the appointment of the Science Panel nor the findings by members of the Science Panel will preclude the parties from calling expert witnesses of their own selection.").  Conversely, here, the parties have named and retained experts and engaged in significant motion practice regarding the admissibility of the experts' opinions.  In that regard, as the parties and Court have already expended significant time resolving issues

surrounding the expert witnesses in this case and ensuring that the experts' testimony is sufficiently reliable for trial, permitting Defendants to file a motion to appoint experts would not serve the interests of efficiency.  In fact, commentators have routinely noted that appointment of Rule 706 experts is costly and time consuming.  Hooper, et al., *Neutral Science Panels: Two Examples of Panels of Court-Appointed Experts in the Breast Implants Product Liability Litigation* 93–94 (Fed. Jud. Ctr. 2001) ("Even in the best circumstances, such appointments of expert panels are costly and time consuming, present difficult issues of administration, and raise concerns about the independence of judicial consideration.").  The Court is not satisfied that the time and cost required to appoint experts is a judicious use of resources.[2]

In sum, the Court finds that appointment of Rule 706 experts in this matter would not further assist the finder of fact. Indeed, adding neutral court-appointed experts to supplement the parties' experts could potentially usurp the independent assessment of the evidence by the jurors. In addition, it would needlessly delay this matter from proceeding to trial.  As evidenced by my comments in the *Daubert* Opinion, while the experts retained by both sides are qualified, they are far from perfect.  However, it is not the Court's role under Rule 706 to appoint experts to resolve conflicting opinions amongst the parties' experts.  Rather, those disputes are better left for the jury to resolve through the adversarial process. Accordingly, for the reasons set forth herein,

---

[2]      Other cases relied upon by Defendants in support of their request can similarly be distinguished.  For example, in *In re High Fructose Corn Syrup Antitrust Litigation*, the Seventh Circuit recommended that the district court exercise its discretion to appoint a Rule 706 expert in a case that involved "highly technical statistical material."  295 F.3d 651, 665 (7th Cir. 2002). Indeed, the *High Fructose Corn Syrup* matter was so complicated that the Seventh Circuit suggested that even with a neutral expert, there was still the chance that the judge and jury would struggle to understand the experts. *See id.*  That is simply not the case here.  While the scientific evidence in this matter is complicated, it is not so complicated that it is outside the understanding of the Court and the average juror when explained by competent experts already admitted to testify at trial.

Defendants' request for leave to file a motion for appointment of experts pursuant to Rule 706 is

**DENIED**.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge
