# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **CIVIL ACTION NO. 3:16-md-2738-FLW-LGHG**<br><br>**MDL NO. 2738** |
| ***THIS DOCUMENT RELATES TO ALL CASES*** | |

## CASE MANAGEMENT ORDER NO. 7(A)

### (ORDER ESTABLISHING THE TALC (MDL NO. 2738) COMMON BENEFIT FEE AND EXPENSE ACCOUNTS TO COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES INCURRED FOR CASE ADMINISTRATION AND THE COMMON BENEFIT)

**THIS ORDER** is entered to supplement Case Management Order No. 7 ("CMO 7"), entered on August 9, 2017 in this litigation. CMO 7 remains in full force and effect and is hereby supplemented as follows:

1.      The Court enters this Order: (1) to avoid unnecessary conflicts and expense, conserve judicial resources, and expedite the disposition of all cases by enabling the coordination of this multidistrict litigation (MDL) with cases separately pending in state courts that are also litigating claims involving Johnson & Johnson's Baby Powder and/or Shower to Shower products ("Talcum Powder Products") which share common issues and involve common discovery; (2) to provide for the

fair and equitable sharing among Plaintiffs and their counsel of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all Plaintiffs in this complex litigation; and (3) to enable Plaintiffs' attorneys who desire to obtain the work-product of the Plaintiffs' Steering Committee ("PSC") and the work-product of others who perform "Common Benefit Work" that is consistent with the below provisions (collectively, and as defined *infra*, the Common Benefit Work Product "CBWP"), an opportunity to obtain such work product, upon an agreement by Plaintiffs' attorneys who are Participating Counsel, as defined *infra,* that the claims of their clients, whether filed as cases or not, shall be subject to an assessment that will be funding the Talc Common Benefit Fee Account ("TCBFA") and funding a second fund designated the Talc Common Benefit Expense Account ("TCBEA") as described in this Order.

## I.    GOVERNING PRINCIPLES - THE COMMON BENEFIT DOCTRINE

2.    The governing principles are derived from the United States Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881), refined in, *inter alia*, *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884), *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939), *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), and approved and implemented in the MDL context in, *inter alia*, *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. 522, 525-29 (D. Nev. 1987),

*In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977), *In re: Diet Drugs (Phentermine/Ferfluramine/ Dexfenfluramine) Prods. Liab. Litig.,* MDL No. 1203, 2001 WL 497313 (E.D. Pa. May 9, 2001), *In re Zyprexa Prods. Liab*., 594 F.3d 113 (2d Cir. 2010), *In re: Vioxx Prods. Liab. Litig.,* MDL No. 1657 (E.D. La. Aug. 4, 2005) and *In re Xarelto (Rivaroxaban) Prod. Liab. Litig*., MDL No. 2592 (E.D. La. March 23, 2020).

3.    The Court is applying the common benefit doctrine so that attorneys who work for the common good of all plaintiffs can be compensated for their work in recognition that having a procedure for compensating common benefit attorneys is necessary for MDLs to be an effective means for the timely and economic resolution of cases. Management of complex MDLs would be impossible without court-appointed counsel to act as a steering committee to manage the case.  If court-appointed counsel "are to be an effective tool, the court must have the means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon [court-appointed] counsel's performing the duties desired of them for no additional compensation." *Everglades,* 549 F.2d at 1012. Thus, in consolidated MDL proceedings, it is standard to order that a percentage of all recoveries be contributed to a fund to compensate attorneys who provide work for the common benefit of all plaintiffs. *Manual for Complex Litigation (Fourth)* § 20.312 (2004) ("MDL judges generally issue orders directing the defendants who

settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel.").

## II.   <u>APPLICATION AND SCOPE</u>

4.      This Order applies to cases and claims of ovarian cancer injuries, including death cases and claims from Talcum Powder Products.  This Order applies to any claims for a request for a fee or claims for reimbursement of expenses emanating from those cases and claims. Accordingly, this Order applies to:

> a.      All cases now or hereafter subject to the jurisdiction of this Court in this MDL litigation, regardless of whether the case is resolved while the case is pending before this Court or is resolved after a remand from this Court to the transferor federal court;
>
> b.      All cases and/or claims settled pursuant to an MDL-supervised settlement agreement between the parties, which may include cases in any state court and claims that are not filed but participate in any MDL-supervised settlement agreement;
>
> c.      All cases and/or claims of any of the ovarian cancer clients of any counsel who signed or are deemed to have signed the "*Participation Agreement*" that is attached to this Order as Exhibit A hereto, whether case was filed, unfiled or tolled, including cases filed in state court; and,
>
> d.      All cases and/or claims of any ovarian cancer clients of any counsel who received, used, or benefited from the Common Benefit Work Product.

## III.   PLAINTIFFS' LITIGATION FEE AND EXPENSE ACCOUNTS

### A.   ESTABLISHING THE TALC FEE AND EXPENSE ACCOUNTS AND APPOINTMENT OF THE ADMINISTRATOR OF THE ACCOUNTS

5.      In CMO 7, the Court previously approved the retention of Alan B. Winikur, CPA, ABF, CFF to perform the necessary functions of receiving time and expense submissions from attorneys and law firms claiming to have performed common benefit work in the case. CMO 7, para. II, B (3). The Court reaffirms that approval and appoints Alan B. Winikur, CPA, ABF, CFF to serve as the "Administrator" of the two insured, interest-bearing accounts to be established to receive and disburse funds as provided in this Order. The first account to be established shall be designated the Talc Common Benefit Fee Account ("TCBFA"), and the second account to be established shall be designated the Talc Common Benefit Expense Account ("TCBEA") (collectively, the "Accounts"). The Court directs the Administrator to hold all funds deposited into the Accounts, subject to the control of this Court. No disbursement of any money from the Accounts shall be made unless ordered by this Court.

### B.   ADMINISTRATION OF THE ACCOUNTS

6.      The Accounts shall be administered in accordance with this Order and subsequent orders that may be entered by the Court. The Accounts shall be established at a commercial bank selected by the Administrator. That bank shall be

the "Escrow Agent" to hold the funds, subject to the requirements described in this Order. The funds deposited into the Accounts shall be from assessments, as defined *infra.,* on cases and claims that are subject to this Order, and on the cases and claims of attorneys who have signed or are deemed to have signed the *Participation Agreement* as defined below. The funds held in the Accounts are subject to the direction of this Court and no disbursement shall be made from the Account*s* other than by order of this Court pursuant to a Fee and Expense Petition ("Petition") that shall be filed of record requesting an award of fees and reimbursement of expenses from the Accounts. No Petition shall be filed without leave of Court. No party or attorney has any right to make any claim against any of the amounts held in the Accounts except to the extent this Court issues an order directing the disbursement of any amounts to such a person, attorney, or law firm, and in such case, the rights of any such party or person, attorney, or law firm are limited to the amount ordered by the Court to be disbursed.

7.      The amounts held in the Accounts shall not constitute the separate property of any party or person, attorney, or law firm, or be subject to garnishment or attachment for the debts of any party or person, attorney, or law firm; provided, however, that as to amounts that may be ordered by the Court to be disbursed to a party or person, attorney, or law firm, that upon the entry of such an order, the specific amounts so ordered to be disbursed may then be subject to garnishment or

attachment for the debts of the party or person, attorney, or law firm that the Court's order identified for the disbursement, limited to the amount of the disbursement so ordered. These limitations do not preclude a party or person, attorney, or law firm from transferring, assigning, or creating a security interest in potential disbursements from the Accounts to which such party or person, attorney, or law firm may be entitled as determined by the Court and to the extent permitted by applicable state laws; provided, however, that no notice of lien or security interest in said potential disbursements or of a transfer or assignment of a right of said potential disbursements shall be effective except upon a filing of such a notice of lien and security interest in this Court, and upon notice of lien or security interest served upon the Administrator of the Accounts.

8.    In connection with his services, the Administrator of the Accounts shall:

a.    have all such power and authority over the Accounts as necessary or convenient to exercise the authority granted herein;

b.    keep and report periodically to this Court as and to the extent requested by the Court, an accounting of the funds received, maintained and disbursed relating to the Accounts;

c.    have the authority to instruct the Escrow Agent with respect to permitted investments of the Accounts;

d.    make decisions and take action with respect to treatment of the Accounts for purposes of compliance with the Internal Revenue Code and any applicable state or local tax codes, including creating reports, maintaining and reporting  income relating to the Accounts, if any, and to ensure the Accounts are maintained

7

in a Qualified Settlement Fund (QSF) or such other entity as he deems appropriate;

e.   purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds out of the assets of the Accounts;

f.   procure, upon consultation with the Plaintiffs' Executive Committee ("PEC"), professional accounting, legal, and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services; and,

g.   adopt and implement reasonable procedures consistent with this Order in consultation with the PEC.

9.   Unless otherwise agreed to by Defendants and the PEC, the details of any individual settlement agreement, individual settlement amount, and/or individual amounts deposited into escrow shall be confidential and shall not be disclosed by the Administrator of the Accounts to the PEC, PSC, the Court, or the Court's designee, unless the Court requests that it receive that information *in camera*. Monthly statements from the Administrator shall, however, be provided to the PEC and the Court showing the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and the current balance of the Accounts.

## C.   <u>REQUIREMENTS OF THE ESCROW AGENT</u>

10.   The Escrow Agent shall be a commercial bank which: (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States, or any state thereof; and, (3) has a total risk-based capital in excess of $5 billion and meets the minimum risk-based ratios established under

the Federal Deposit Insurance Corporation Improvement Act of 1991. The Escrow Agent may act as paying agent, depository, custodian, or trustee with respect to funds it holds.

11.     The Administrator of the Accounts shall consider, in designating the Escrow Agent and in procuring professional services, the charges that the Escrow Agent or provider of professional services will impose for its actions and the ability of the Escrow Agent or provider of professional services to undertake the tasks called for with efficiency and responsiveness.

12.     The Escrow Agent shall not acquire or hold for longer than 90 days, any debt securities, certificates, or investments unless such instruments are a U.S. Treasury Bill, U.S. Treasury Money Market, U.S. Government Money Market or similar type of account guaranteed by the United States or an agency thereof, including an FDIC-Insured Account. The U.S. Treasury Money Market or U.S. Government Money Market must be registered under the Investment Company Act of 1940, as amended. In determining investments to be held by the Escrow Agent, primary regard shall be given by the Escrow Agent to the safety of the principle.

13.     The reasonable fees and reasonable expenses incurred in connection with the services of the Administrator and the Escrow Agent shall be chargeable against the Accounts. However, until this Court permits the filing of a Petition for approval of fees and expenses to be paid from the Accounts, the reasonable fees and

reasonable expenses of the Administrator and Escrow Agent shall be paid as Shared Common Benefit Expenses from the PEC-MDL No. 2738 MDL Litigation Account. *See* CMO 7 (II)(D)(2). On a monthly basis, the Administrator and Escrow Agent shall each provide the PEC with statements for their reasonable fees and reasonable expenses charged. When this Court authorizes the filing of a Petition, the reasonable fees and expenses of the Administrator and Escrow Agent that were previously paid as Shared Common Benefit Costs may be included as items for reimbursement from the Accounts. The Petition shall include copies of the statements of the Administrator and Escrow Agent that had been submitted on a monthly basis to the PEC to support the request for reimbursement of such payments made by the PEC for which reimbursement is requested.

## IV.   ATTORNEY PARTICIPATION AGREEMENT AND ELIGIBLE PARTICIPATING COUNSEL

### A.   PARTICIPATION AGREEMENT

14.   The *Participation Agreement* (throughout as "Agreement") attached as **Exhibit A** is approved by the Court for signature by attorneys for the purposes set forth below.

15.   The Agreement may be entered into by Plaintiffs' attorneys on a voluntary basis. The Agreement is a private and cooperative agreement between the PEC, PSC, and Plaintiffs' attorneys only. It is not an agreement with any of the named Defendants.

16.     Plaintiffs' attorneys who execute the Agreement or are deemed to have executed the Agreement are hereinafter referred to as "Participating Counsel." Plaintiffs' attorneys who do not execute the Agreement and who are not deemed signatories to the Agreement are hereinafter referred to as "Non-Participating Counsel."

17.     Participating Counsel are entitled to access the Common Benefit Work Product for the use and benefit of clients with cases filed in this MDL or any other court of competent jurisdiction, and in all unfiled ovarian cancer cases and claims, including those for which a tolling agreement exists. All ovarian cases and claims of a Participating Counsel shall be assessed whether the claim/case is filed or unfiled. All claims/cases in which a Participating Counsel has a fee interest shall be assessed.

18.     Non-Participating Counsel shall have no right of access to the Common Benefit Work Product.  However, in the event it is determined that Non-Participating Counsel in some or any fashion benefitted from the Common Benefit Work Product or the administrative functions of the PEC and PSC, then all cases in which Non-Participating Counsel has an interest shall be subject to the common benefit assessment described in this Order. It is deemed that the fair liquidated damages for such unauthorized use of the Common Benefit Work Product is equal to the assessment percentage set by this Order on the cases and claims that shall be assessed pursuant to the Agreement, and in addition, the Court will consider an application

11

by the PEC for payment of its fees and costs to enforce this Order with respect to any unauthorized procurement and/or use of the Common Benefit Work Product.

19.     In support of its efforts to track all cases and claims subject to the assessment, the PEC may periodically request that attorneys who are subject to the assessment provide a list of all cases filed, no matter in what jurisdiction, and a list of all claims of clients represented or in which they have a fee interest regardless of filing or tolling status.

20.     The "Common Benefit Work Product" includes all work performed for the benefit of all plaintiffs, including pre-trial matters, the *Daubert* proceedings, discovery, Bellwether work-up, trial preparation, potential settlement process(es), and all other work that advances this litigation to conclusion.

21.     The Court recognizes the jurisdictional rights and obligations of the state courts to conduct their state court litigation as they so determine, and that the state court litigations include counsel who are Participating Counsel.

22.     PEC and PSC members are deemed Participating Counsel by virtue of their membership on the PEC and/or PSC, regardless of whether that attorney signs the Agreement. Additionally, any counsel that may be appointed by this Court to act as liaisons between the state courts and the MDL are deemed Participating Counsel

by virtue of this appointment, regardless of whether that attorney signs the Agreement.[1]

## V.   ASSESSMENTS AND PAYMENTS INTO THE ACCOUNTS

### A.   EARLY PARTICIPATION

23.   In order for an attorney to qualify for the "Early Participation" assessment amount, the attorney must enter into the Agreement within 45 days of the entry of this CMO 7(A) if the attorney already has a case pending in the MDL at the time of the entry of CMO 7(A) or if no case is pending in the MDL at the time of the entry of CMO 7(A), within 45 days of the first case of the attorney being docketed in the MDL or any other jurisdiction. All attorneys who are deemed to be bound by the Agreement shall also be assessed at the Early Participation assessment percentage. The Early Participation assessment shall be 8% (6% for fees and 2% for expenses) of the Gross Monetary Recovery.

---

[1] The Court is aware there is one exception that the PSC has disclosed to the Court. The Lanier Law Firm, which is a member of the PEC, had tried to a verdict the case of *Ingham, et al. v. Johnson & Johnson, et al.*, Cause No. 1522-CC10417-01 (Circ. Court of City of St. Louis, Missouri). The Court understands that upon discussion by all members of the PSC, the PSC has unanimously agreed with The Lanier Law Firm, that the *Ingham case* will not be subjected to the MDL assessment, except any portion of the case that comes into the MDL following a decision by the Missouri appellate court. The PSC also agreed with The Lanier Law Firm that all other cases in which The Lanier Law Firm has an interest – MDL, state, filed, and unfiled – will be assessed and that *Ingham*-related expenses and hours will not qualify for common benefit consideration unless the case comes into the MDL and is assessed.

## B.   LATE PARTICIPATION

24.     For any attorney who does not qualify for Early Participation as defined above by entering into the Agreement within the deadline that is applicable to that attorney as established for Early Participation, and who enters into this Agreement after the deadline that is applicable to the attorney for Early Participation, the assessment that shall apply to the cases/claims of such attorney shall be 12% (10% for fees and 2% for expenses) of the Gross Monetary Recovery ("Late Participation").

## C.   ASSESSMENT ALLOCATION

25.   The assessment shall be provisionally allocated as follows:

   a.     For *Early Participation* as defined in paragraph 23 above, six percent (6%) to compensate for Common Benefit Fees, and two percent (2%) to compensate for Common Benefit Expenses, with said ratio subject to the right of the PEC of this MDL to request reallocation of the eight percent (8%) total assessment to an increase in percentage for expenses or fees at the time the application for disbursement is made.

   b.     For *Late Participation* as defined in paragraph 24 above, ten percent (10%) to compensate for Common Benefit Fees, and two percent (2%) to compensate for Common Benefit Expenses, with said ratio subject to the right of the PEC of this MDL to request reallocation of the twelve percent (12%) total assessment to an increase in percentage for expenses or fees at the time the application for disbursement is made.

### D.   **CALCULATING THE ASSESSMENT**

26.     For any attorney subject to an assessment under the terms of this Order, the assessment is owed on the "Gross Monetary Recovery" on all of that attorney's cases or claims. Defendants' responsibility to withhold or pay the assessment in any particular case and their other obligations with respect to this Order is governed by paragraphs 30 through 36 below.

27.     A Gross Monetary Recovery occurs when a Plaintiff or their attorney(s) either agree or have agreed – for monetary consideration – to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory and punitive damages (hereinafter a "Settlement"), with respect to any Talcum Powder Product claim.

27.     "Gross Monetary Recovery" includes any and all amounts paid to Plaintiffs by Defendants through a settlement or pursuant to a judgment. In measuring the "Gross Monetary Recovery," the term is defined as follows: (1) it includes all sums to be paid in settlement of the Talcum Powder Products claim/case. To the extent the Plaintiff or claimant has a Medicare, Medicaid, or other private lien asserted against the Plaintiff or claimant, and the lien is resolved from the funds recovered by the Plaintiff or claimant, then such amounts that are used to satisfy the lien are included as part of the Gross Monetary Recovery; (2) it includes the present

value of any fixed and certain payments to be made in the future, such as those that come about as a result of a structured settlement of a claim. This provision means that if the Plaintiff or claimant elects to resolve the case or claim through the establishment of a structured settlement or through a resolution that involves payments to be made to the Plaintiff or claimant over time, Gross Monetary Recovery means the present value of the  amount of the settlement or to be paid in resolution of the case or claim at the time of the settlement or resolution of the case and not the total of the payments being made over time; and (3) excludes court costs that are to be paid by Defendant(s).

28.     This assessment represents a hold back pursuant to *In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006), and shall not be altered in any way unless each of the following occurs: (1) the PSC is consulted and provided an opportunity to be heard at a formally announced meeting prior to the filing of any motion to change the assessment amount; (2) the PSC approves the proposed change to the assessment by a majority vote of the PSC; (3) a noticed motion (including notice to Defendants' Counsel) with an opportunity to be heard is granted by the Court, and (4) this Court, upon good-cause shown, amends this Order.

## E.     **DEFENDANTS' OBLIGATIONS**

29.     Defendants and their counsel shall not distribute any settlement proceeds to Plaintiff's counsel or directly to a Plaintiff until after: (1) Defendants'

counsel notifies the PEC in writing of the existence of a settlement and the name of the individual Plaintiff's attorney (without disclosing the amount of the settlement); and, (2) the PEC advises Defendants' counsel in writing whether the individual Plaintiff's attorney's cases are subject to an assessment and the amount (stated as a percentage of the recovery) of the assessment pursuant to this Order. Defendants' Liaison Counsel shall be permitted to share this information with the PEC, who shall otherwise keep this information confidential.

30.     For cases subject to an assessment,[2] Defendants are directed to withhold an assessment from any and all amounts paid to Plaintiffs and their counsel and to pay the assessment directly into the Accounts based on the allocations and provisions set forth in Paragraph 25 through Paragraph 29, above as a credit against the settlement or judgment. No orders of dismissal of any Plaintiff's claim, subject to this Order, shall be entered unless accompanied by a certificate of Plaintiff's and

---

[2] The Court recognizes that at the time of entry of this Order, it has jurisdiction only over Defendants Johnson & Johnson; Johnson & Johnson Consumer, Inc and PCPC, in that Talcum Powder Products cases and claims that are pending against Defendant Imerys are now part of the proceedings against Imerys in the United States Bankruptcy Court in Delaware. The Court is advised that in those bankruptcy court proceedings, there is a Tort Claimants Committee which, *inter alia*, is representing the interests of the Talcum Powder Product Claimants in that bankruptcy.  To the extent those bankruptcy proceedings result in a recovery for Talcum Powder Product Claimants, the Court will address (to the extent appropriately addressed in this MDL litigation) whether and how any recovery in the Imerys bankruptcy should be assessed pursuant to a process to be established by the bankruptcy court, possibly in conjunction with this MDL Court.

Defendants' counsel that the assessment, where applicable, will be withheld and will be deposited into the Accounts at the same time the settlement proceeds are paid to settling counsel.  If for any reason the assessment is not or has not been so withheld, the Plaintiff and their counsel are jointly responsible for paying the assessment into the Accounts promptly.

31.     Upon payment of the assessment into the Accounts, Defendants, as well as the PEC and PSC, and individual members of the same, shall be released from any and all liability to any person, attorney, or claimant with respect to the assessment placed into the Accounts. Any person, attorney, or claimant allegedly aggrieved by an assessment pursuant to this Order shall seek recourse against the Accounts only, provided however, that notice and an opportunity to be heard shall be given to both the Defendants and the PEC/PSC.

32.     This Order shall not affect or encumber any obligation of Defendants to pay attorneys' fees and costs pursuant to consumer fraud claims or other fee shifting statutes, if any, that may apply in this case.

33.     Nothing in this Order is intended to impair the attorney-client relationship or any lawful contingency fee contract under the attorneys' respective bar rules and/or state court orders.

34.     In the event of a litigation-wide global settlement, and/or a partial or full inventory settlement with an individual law firm, or other settlement program(s)

18

with respect to the cases or claims in the litigation, including a settlement program(s) that also includes unfiled claims and/or cases filed in any state court, such as a global private settlement program, a settlement class action, or any other form of a global settlement, nothing in this Order prohibits the PEC/PSC from applying to this Court for attorneys' fees and reimbursement of expenses at a percentage that is different from (greater or lesser) than the assessment percentage described herein, *e.g.,* the assessment set forth in paragraphs 25 or 26 above, and in the event of any such litigation-wide/global settlement, the Court shall make a determination of the amount of fees and expenses to be awarded.

35.     Counsel for each Defendant shall provide at least quarterly notice to the Court or its designee the names and docket numbers of the cases and claims for which it has paid an assessment into the Accounts since the last such report. A report is not due if there are no payments made into the Accounts by that Defendant during that quarter. Details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into escrow shall be confidential and shall not be disclosed by the Administrator to Plaintiffs' Co-Lead Counsel, Liaison Counsel, the PEC, the Court, or the Court's designee, unless the Court requests that it receive that information. Monthly statements from the Administrator shall, however, be provided to Plaintiffs' Co-Lead Counsel, Liaison Counsel, the PEC, and the Court showing only the aggregate amount of the monthly deposits,

disbursements, interest earned, financial institution charges, if any, and the current balance.

## V.   COMMON BENEFIT WORK

### A.   QUALIFIED COMMON BENEFIT WORK ELIGIBLE FOR REIMBURSEMENT

36.    Only Participating Counsel are eligible for reimbursement for time and efforts expended for the Common Benefit. Participating Counsel shall be eligible for reimbursement for time and efforts expended for Common Benefit work, if said time and efforts are:

   a.    for the Common Benefit;

   b.    appropriately authorized, as defined in this Order, and CMO 7;

   c.    timely submitted;

   d.    certified by a senior partner of the submitting firm each month attesting to the accuracy and correctness of the monthly submission; and,

   e.    approved by this Court.

37.    There is no guarantee that all of the time submitted by any firm will be compensated, and the hourly rate for the work that is compensated is not guaranteed.

### B.   COMPENSABLE COMMON BENEFIT WORK DEFINED

38.    As the litigation progresses and Common Benefit Work Product continues to be generated, the PEC, and Co-Chairs of the MDL committees with the pre-approval of the PEC, will assign Participating Counsel with such work. In the

MDL, Common Benefit work shall include only work specifically assigned to Participating Counsel by the PEC, as well as work approved by the PEC and assigned by the Co-Chairs of the MDL committees. The definition of Common Benefit Work is defined in and limited as set forth in CMO 7.

39.     Examples of Common Benefit work as defined and limited by CMO 7 include, but are not limited to:

a.     authorized maintenance and work related to the document depository;

b.     authorized investigation and research;

c.     conducting authorized discovery (e.g. reviewing, indexing, and coding documents);

d.     authorized preparation of timelines/chronologies;

e.     authorized drafting and filing pleadings, briefs, and pre-trial motions, and orders

f.     authorized preparation of deposition cuts that may be used in a case set for trial;

g.     authorized preparation of trial exhibit(s);

h.     authorized assembly of scientific articles;

i.     certain approved PEC and PSC activities;

j.     authorized work of the MDL Discovery, Law and Briefing, and Science Committee Co-Chairs;

k.     authorized committee work;

l.     authorized expert development authorized by the Chair of the Science Committee or Co-Lead Counsel;

m.     authorized State and Federal Court Trials;

      n.     authorized preparation for and participation at state and federal Court hearings; and,

      o.     authorized preparation for and taking of depositions of Defendants, third-party witnesses, and experts in state or federal court; and, performance of administrative matters, provided that all such work was conducted for the joint and Common Benefit of Plaintiffs in state or federal court.

40.    Work that is not Common Benefit Work Product, includes but is not limited to:

      a.     unauthorized work; and,

      b.     duplicative work.

## C.    **AUTHORIZATION AND TIME-KEEPING**

41.    The provision of CMO 7, Section II and III are incorporated herein as if set forth in their entirety.

## V.    **COMMON BENEFIT EXPENSES**

### A.    **QUALIFIED COMMON BENEFIT EXPENSES ELIGIBLE FOR REIMBURSEMENT**

42.    To be eligible for reimbursement of Common Benefit expenses, said expenses must meet the requirements set forth in CMO 7, Section II, which are incorporated herein as if set forth in their entirety. Specifically, said expenses must be:

      a.     for the Common Benefit;

      b.     appropriately authorized, as set forth in CMO 7, the Agreement, and herein;

      c.     certified by a senior partner of the submitting firm each month attesting to the accuracy and correctness of the monthly submission; and,

      d.     approved by this Court.

**B.**    **COMPENSABLE COMMON EXPENSES DEFINED**

43.    As the litigation progresses and Common Benefit expenses of the same type and kind as defined and limited in CMO 7 will continue to be incurred, authorized and approved by the PEC. Common Benefit expenses shall include only authorized and necessary expenses specifically approved by the PEC.

**C.**    **AUTHORIZATION AND EXPENSE-KEEPING**

44.    The provisions of CMO 7 Section II and III are incorporated herein as if set forth in their entirey.

**D.**    **EXPENSES IN EXCESS OF AMOUNTS AVAILABLE IN THE TCBEA**

45.    Any compensable costs or expenses exceeding the amounts available in the *TCBEA* may be paid from the *TCBFA* upon Order of the Court.

**VI.**    **EVALUATION OF COMMON BENEFIT TIME AND EXPENSES AND COURT APPROVAL REQUIRED FOR ANY DISBURSEMENT FROM THE ACCOUNTS**

46.    The amounts deposited in the Accounts shall be available for distribution only to Participating Counsel who performed professional services or incurred expenses for the common benefit.

47.    No amounts will be disbursed without review and approval by the Court, or such other mechanism as the Court may order. Specifically, such sums shall be distributed only upon Order of the Court in MDL No. 2738.

48.    At an appropriate time, this Court expects to appoint a Common Benefit Fee and Expense Committee for the development of guidelines and criteria that will be utilized in connection with recommendations that will be made to this Court to govern the content of a Common Benefit fee petition, including the evaluation of all time and expense submissions that were made to the Administrator.  This Court will enter an Order in the future relating to these issues.

_/s/ Freda L. Wolfson   9/17/2020_
**HON. FREDA L. WOLFSON**
**U.S. Chief District Judge**

# EXHIBIT A

**UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | CIVIL ACTION NO. 3:16-md-2738-FLW-LGHG<br><br>MDL NO. 2738 |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

**EXHIBIT A TO CASE MANAGEMENT ORDER NO. 7(A)**
**(Common Benefit Participation Agreement)**

**THIS AGREEMENT** is made this ____ day of _____, 20__, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the District of New Jersey in MDL 2738 and _____ **[Name of the Firm Executing the Agreement]** (the "Participating Counsel").

**WHEREAS**, the United States District Court for the District of New Jersey (MDL 2738) has appointed P. Leigh O'Dell (BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, PC); Michelle A. Parfitt (ASHCRAFT & GEREL, LLP); Christopher M. Placitella (COHEN PLACITELLA ROTH, PC); Warren T. Burns (BURNS CHAREST, LLP); Richard Golomb (GOLOMB & HONIK, PC); Richard H. Meadow (THE LANIER LAW FIRM, PC); Hunter J. Shkolnik

(NAPOLI SHKOLNIK, PLLC); Laurence S. Berman (LEVIN SEDRAN & BERMAN LLP); Timothy G. Blood (BLOOD, HURST & O'REARDON, LLP); Sindhu S. Daniel (BARON & BUDD, P.C.); Jeff S. Gibson (WAGNER REESE); Kristie M. Hightower (LUNDY, LUNDY, SOILEAU & SOUTH, LLP); Daniel R. Lapinski (MOTLEY RICE, LLC); Victoria Maniatis (SANDERS PHILLIPS GROSSMAN, LLC); Carmen S. Scott (MOTLEY RICE, LLC); Eric H. Weinberg (THE WEINBERG LAW FIRM); Richard L. Root (MORRIS BART, LLC); and Christopher V. Tisi (LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.) to serve as members of the Plaintiffs' Steering Committee ("PSC") to facilitate the conduct of pretrial proceedings in the federal actions pending in this MDL case relating to ovarian cancer/death from ovarian cancer claims involving Johnson & Johnson's Baby Powder and/or Shower to Shower products ("Talcum Powder Products"), and,

**WHEREAS**, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed or are in the process of developing work product that will be valuable in all proceedings and be of benefit to all plaintiffs alleging ovarian cancer injuries, including death, from the Talcum Powder Products ("PSC Common Benefit Work Product") and,

**WHEREAS**, the undersigned Participating Counsel desires to acquire the PSC Common Benefit Work Product and establish an amicable, working relationship with the PSC for the mutual benefit of its clients, and,

**WHEREAS,** the undersigned Participating Counsel recognizes that those attorneys who: 1) perform work authorized, audited, and approved as common benefit; and 2) who incur expenses for the common benefit, have the right to seek common benefit compensation and reimbursement of common benefit expenses;

**NOW THEREFORE**, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

**I.** <u>**SCOPE AND PURPOSE OF AGREEMENT**</u>

1.     This Participation Agreement  ("*Agreement*") is a private cooperative agreement between plaintiffs' attorneys who, by their execution of this *Agreement* (or are deemed to have executed this Agreement), are Participating Counsel, who will gain access by executing this *Agreement* to the "PSC Common Benefit Work Product" with regard to personal injury claims involving ovarian cancer injuries, including death, from the Talcum Powder Products, pursuant to  Case Management Orders No. 7 and 7(A), and any amendments thereto, Establishing Common Benefit Fee and Expense Fund. Plaintiffs' attorneys who execute this *Agreement* ("Participating Counsel") are entitled to receive the "PSC Common Benefit Work

3

Product" created by those attorneys who have also executed or have been deemed to have executed the *Agreement.*

## II.   AGREEMENT TO PAY AN ASSESSMENT ON GROSS RECOVERY

2.     Subject to the terms of this *Agreement* and the provisions set forth below and the terms of the corresponding CMO 7 and 7(A), and any amendments, all Plaintiffs and their attorneys who, either agree or have agreed for a monetary consideration to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including such compensatory and punitive damages, with respect to Talcum Powder Products claims/cases for ovarian cancer injury/death are subject to an assessment of the gross settlement amount, "Gross Monetary Recovery," as provided herein.

### A.   GROSS MONETARY RECOVERY DEFINED

3.     "Gross Monetary Recovery" includes any and all amounts paid to Plaintiffs by Defendants through a settlement or pursuant to a judgment. In measuring the "Gross Monetary Recovery," the parties define the term as follows: (1) it includes all sums to be paid in settlement of the Talcum Powder Products claim/case. To the extent the Plaintiff or claimant has a Medicare, Medicaid, or other private lien asserted against the Plaintiff or claimant, and the lien is resolved from the funds recovered by the Plaintiff or claimant, then such amounts that are used to

satisfy the lien are included as part of the Gross Monetary Recovery; (2) it includes the present value of any fixed and certain payments to be made in the future, such as those that come about as a result of a structured settlement of a claim and not the total of the payments being made over time; and (3) excludes court costs that are to be paid by Defendant(s).

4.      The assessment shall apply to all of the claims/cases of the Plaintiffs' attorneys who are subject to CMO 7(A), and any amendments, that are pending in the MDL or state court as well as any unfiled or if applicable, tolled claims/cases (if applicable) of such attorneys in which they are counsel or co-counsel, or in which they have any interest.

## B.      **ASSESSMENT AMOUNT**

6.      **Early Participation:** In order for an attorney to qualify for the "Early Participation" assessment amount, the attorney must enter into this *Agreement* within 45 days of the entry of CMO 7(A) if the attorney already has a case pending in the MDL at the time of the entry of CMO 7(A) or if no case is already pending in the MDL at the time of the entry of CMO 7(A), within 45 days of the first case of the attorney being docketed in the MDL or any other jurisdiction. All attorneys who are deemed to be bound by the *Agreement* shall also be assessed at the Early Participation assessment percentage. The Early Participation assessment shall be 8% (6% for fees and 2% for expenses) of the Gross Monetary Recovery ("Early

Participation").

7.     **<u>Late Participation</u>:**  For any attorney who does not qualify for Early Participation as defined above by entering into this Agreement within the deadline that is applicable to that attorney as established for Early Participation, and who enters into this Agreement after the deadline that is applicable to the attorney for Early Participation, the assessment that shall apply to the cases/claims of such attorney shall be 12% (10% for fees and 2% for expenses) of the Gross Monetary Recovery ("Late Participation").

8.     This assessment represents a hold back pursuant to *In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006), and shall not be altered in any way unless each of the following occurs: (1) the PSC is consulted and provided an opportunity to be heard at a formally announced meeting prior to the filing of any motion to change the assessment amount; (2) the PSC approves the proposed change to the assessment by a majority vote of the PSC; (3) a noticed motion (including notice to Defendants' Counsel) with an opportunity to be heard is granted by the Court; or (4) the Court, upon good-cause shown, amends CMO 7(A).

**C.     <u>COVERED CLAIMS/CASES</u>**

9.     Counsel who sign (or who are deemed to have signed) this *Agreement* consent that the assessment shall apply to all the attorneys' ovarian cancer injury/death claims and cases that arise from the Talcum Powder Products including

6

all un-filed claims/cases, tolled (if applicable) claims/cases, and/or claims/cases filed in state court in which they have a fee interest, regardless of the size of that fee interest. The members of the PSC and their law firms are each deemed to have signed this *Agreement* and they are deemed qualified for the Early Participation assessment.

## D.   RIGHTS  AND  OBLIGATIONS  OF  PARTICIPATING COUNSEL

10.    Upon execution of this *Agreement*, the PSC will provide Participating Counsel, with access to the Common Benefit Work Product defined in the Court's CMO 7 and 7(A), and any amendments to which this Exhibit "A" is attached, including access to the document depository as well as all the coding and summarizing of the documents in the depository, access to all deposition transcripts and summaries, deposition cuts for the purpose of trial, medical literature library, legal briefing and research, and, as deemed appropriate by the PSC, expert witness work product.  Participating Counsel agree that all cases in which Participating Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed in state and/or federal court, are subject to the terms of this *Agreement.*

11.    The PSC may periodically request that Participating Counsel produce a list that accurately sets forth the name of each Talcum Powder Product client represented by such counsel (whether a case has or has not been filed for such client) and/or in which they have an interest in the attorneys' fee regardless of what that interest is, together with the Court and docket number (if filed) of each such case.

7

Participating Counsel shall provide the first such list within 45 days of signing this *Agreement* at participatingcounsel@talc-mdl.com. Thereafter, unless otherwise specified, Participating Counsel shall provide updated lists within 30 days of the request. All such lists shall be provided to Plaintiffs' Co-Lead Counsel in the MDL, P. Leigh O'Dell and Michelle A. Parfitt at the email address above.

### E.   **ATTORNEY FEE LIEN**

12.   With respect to each client who a Participating Counsel represents in connection with Talcum Powder Product-related ovarian cancer-cases or related claims that are filed or pending in any federal court, un-filed or subject to a tolling agreement, consistent with CMO 7(A), each Participating Counsel shall agree to have Defendants deposit or cause to be deposited in the Talc Common Benefit Fee Account ("TCBFA") and the Talc Common Benefit Expense Account ("TCBEA"), established by the District Court in the MDL, a percentage proportion of the Gross Monetary Recovery  recovered by each such client that is equal to the assessment amount, e.g., for an Early Participation client, 6% to the TCBFA and 2% to the TCBEA and for a Late Participation client, 10% to the TCBFA and 2% to the TCBEA.  In the event Defendants do not deposit such funds into the TCBFA and the TCBEA, Plaintiff and Plaintiff's Participating Counsel shall deposit or cause to be deposited in the TCBFA and the TCBEA established by the District Court in the

MDL, a percentage proportion of the Gross Monetary Recovery recovered by each such client that is equal to the assessment amount.

13.     Each Participating Counsel shall inform Defendants of the fact that the counsel is a "Participating Counsel" to this Agreement to facilitate the Defendants making the deposits into the TCBFA and TCBEA. Each Participating Counsel shall also advise Defendants whether the counsel is an Early Participation counsel or a Late Participation counsel. Defendants shall then deposit into the TCBFA and TCBEA the amount calculated by the assessment percentage based on whether the Participating Counsel is an Early Participation counsel or a Late Participation Counsel.

14.     Participating Counsel, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any fee generated as a result of any recovery by any client who they represent in connection with any Talcum Powder Product induced ovarian cancer/death case or claim, to the full extent permitted by law, in order to secure payment in accordance with the provisions of this *Agreement.*

15.     Participating Counsel will undertake all actions and execute all documents that are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

16.     Participating Counsel also, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any fee generated as a result of any recovery by any client who they represent in connection with any Talcum Powder Product induced ovarian cancer/death case or claim, to the full extent permitted by law, in order to secure payment in accordance with the provisions of this *Agreement*, that arises from any recovery the Participating Counsel achieves for any Talcum Powder Product client from the Imerys Bankruptcy proceeding.  In this regard, Participating Counsel shall inform the Trustee in bankruptcy for Imerys of the fact that the Participating Counsel is bound by the terms of this *Agreement*, and provide a copy of this *Agreement* to said Trustee so that the Trustee shall be able to comply with the terms of this *Agreeme*nt by imposing the assessment relating to any fee that the Trustee would be paying to the Participating Counsel so that such assessment shall be paid by the Trustee into the TCBFA and TCBEA. Participating Counsel shall inform the Trustee whether the Participating Counsel is an Early Participation Counsel or a Late Participation Counsel so that the Trustee shall be able to deposit the appropriate amount into the TCBFA and TCBEA.

17.     In the event the Trustee in bankruptcy for Imerys fails to make the appropriate deposit into the TCBFA and TCBEA for the Participating Counsel, the Participating Counsel and his/her client remain personally liable to make the

appropriate deposit into the TCBFA and TCBEA based on the amount of the recovery that the client obtains in the Imerys bankruptcy proceedings for any Talcum Powder Product induced ovarian cancer/death case or claim.

18. Participating Counsel will undertake all actions and execute all documents that are reasonably necessary to effectuate and/or perfect the lien and/or security interest relating to any recovery arising out of the Imery Bankruptcy proceeding relating to any Talcum Powder Product induced ovarian cancer/death case or claim.

## II.   COMMON BENEFIT EXPENSES

### A.   QUALIFIED EXPENSES ELIGIBLE FOR REIMBURSEMENT

19. In order to be eligible for reimbursement, expenses ("Common Benefit Expenses") must meet the requirements of CMO 7 and CMO 7(A) and any amendments thereto. Specifically, said expenses must be (a) for the common benefit, (b) appropriately authorized by the PEC and timely submitted, (c) within the defined limitations set forth in this *Agreement* and CMO 7 and CMO 7(A) and any amendments thereto , and (d) verified by a partner or shareholder in the submitting law firm.

### B.   AUTHORIZATION AND SUBMISSION OF EXPENSES

20. Participating Counsel must submit expenses consistent with CMO 7 and CMO 7(A), and any amendments.Expenses incurred on matters common to all

claimants in MDL 2738 and authorized by the MDL PEC may be submitted for reimbursement.

21.    No costs spent on developing or processing individual issues in any case for an individual client (claimant) will be considered or should be submitted, unless that case is an authorized bellwether trial case.

C.    **VERIFICATION/CERTIFICATION**

22.    Attorneys agree to keep receipts for all expenses. Credit card receipts with back-up receipts are an appropriate form of verification so long as accompanied by a declaration from counsel that work was performed and paid for the common benefit.

23.    Cost and expense records shall be electronically submitted to Alan B. Winikur, CPA/ABV/CFF electronically at the website set up to handle time/billing submissions https://johnsonandjohnsontalcmdl.securefilepro.com/portal/login.aspx. It is essential that each firm, on a monthly basis, timely submit its records for the preceding month. All submissions shall be certified by a senior partner in each firm attesting to the accuracy and correctness of the submission.  Untimely submission of Expense/Cost records will result in a waiver of said costs. Submission of cost and expense records does not entitle the attorney to reimbursement of costs and expenses submitted, as the submission shall be subject to audit and no disbursements shall be made from the TCBEA without a Court Order authorizing same.

## III.   COMMON BENEFIT WORK

### A.   QUALIFIED COMMON BENEFIT WORK ELIGIBLE FOR REIMBURSEMENT

24.   In order to be eligible for reimbursement, time and efforts expended for common benefit work must meet the requirements set forth in CMO 7 and CMO-7(A) and any amendments. Specifically said time and efforts must be: (a) for the common benefit, (b) appropriately authorized by the PEC, (c) timely submitted, and (d) approved by the Court. ("Common Benefit Work Product").

### B.   ELIGIBILITY

25.   Participating Counsel are prohibited from sharing Common Benefit Work Product with Non-Participating Counsel. Any counsel who is not a Participating Counsel, as defined herein, shall be a Non-Participating Counsel. Counsel eligible to perform common benefit work includes Plaintiffs' Liaison Counsel, Co-Lead Counsel, members of the PEC and PSC, Co-Chairs of MDL Committees, and other Participating Counsel called upon and authorized by them to assist in performing their responsibilities.

### C.   AUTHORIZATION

26.   Time spent on matters common to all claimants in MDL 2738 must be assigned by the PEC to be eligible for consideration for common benefit.  No time spent on developing or processing individual issues in any case for an individual

13

client (claimant) (with the exception of selected Bellwether cases) will be considered or should be submitted, nor will time spent on unauthorized and unapproved work.

27.     For examples of authorized and unauthorized work please review CMO- 7 and CMO 7(A) and any amendments thereto.

## V.     COMMON     BENEFIT     TIME-KEEPING     AND     EXPENSE PROTOCOLS

28.     As set forth in CMO 7 and CMO 7(A), and any amendments, all time must be accurately and contemporaneously maintained. Participating Counsel agrees to follow the time-keeping protocols set forth in CMO 7 and CMO 7(A) and any amendments.

29.     Participating Counsel shall keep a daily record of their time spent in connection with common benefit work on this litigation, indicating with specificity the hours and particular activity (such as "conducted deposition of  John Doe.").

30.     Time-entries that are not sufficiently detailed may not be considered for common benefit payments.

31.     All common benefit work time for each firm shall be maintained in a tenth-of-an-hour increment.

32.     Upon order of the Court payments may be made from the TCBFA and the TCBEA to Participating Counsel who provide services or incur expenses for the joint and common benefit of plaintiffs. The provision of services or incurring expenses for their own client or clients does not disqualify a Participating Counsel

14

from being eligible to share in any disbursement from the TCBEA and TCBFA, but such time and expenses relating to individual claims shall not be included in determining the amount of common benefit work and expenses incurred by the Participation Counsel unless the individual client becomes a Bellwether Plaintiff for the litigation. Attorneys eligible are limited to the MDL PEC, PSC, Liaison Counsel and other Participating Counsel called upon by them to assist in performing their responsibilities. These guidelines are intended for all activities performed and expenses incurred by counsel that relate to matters common to all claimants in MDL 2738.

## VI.    **DISTRIBUTION OF FEES**

33.    **No Individual Rights to the Funds:**  No party or attorney has any individual right to any of the funds in the TCBEA or TCBFA except to the extent of amounts directed to be disbursed to such person by Order of the MDL Court. These funds will not constitute the property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by court order to a specific person.  These limitations do not prelude a party or attorney from transferring, assigning, or creating a security interest in potential disbursements from the TCBEA or TCBFA if permitted by applicable state laws and if subject to the conditions and contingencies of this Agreement.

34.   **Court Approval:** The amounts deposited in the TCBFA and the TCBEA shall be available for distribution to attorneys who have performed professional services or incurred expenses for the common benefit.  The MDL Court retains jurisdiction over any common benefit award.  Each Participating Counsel who does common benefit work has the right to present their claim(s) for compensation prior to any recommendation to the Court.

35.   **Fee Committee**:  I understand that at a later date the MDL Court may appoint a Fee and Expense Committee to make recommendations to the MDL Court on how funds in the TCBFA and the TCBEA should be distributed.

---

### AGREEMENT TO BE LEGALLY BOUND

Dated:          _____, 20_____

          _____
          **Firm Name:**
          **Attorney's Name:**

I elect to be a **Participating Counsel** and hereby certify that I am signing this Participation Agreement voluntarily. I also certify that have the authority and power to bind my law firm into this Participation Agreement.

#### ON BEHALF OF THE PLAINTIFFS' STEERING COMMITTEE

Dated:          _____, 20_____          _____
                                   **NEED TO ADD NAME HERE**

---