**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(609) 989-2182**

CHAMBERS OF
FREDA L. WOLFSON
CHIEF JUDGE

Clarkson S. Fisher Federal Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

**LETTER ORDER**

September 23, 2020

Michael E. Liska, Esq.
Gary C. Johnson, P.S.C.
110 Caroline Avenue, P.O. Box 231
Pikesville, Kentucky 41501

Richard H. Friedman
Friedman Rubin, PLLP
1109 1st Avenue, Suite 500
Seattle, Washington 98101

Susan M. Sharko, Esq.
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey 07932

John H. Beisner
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005

      **RE:** *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Liability Litigation*, **MDL No. 2738**; *Melissa Parsons & Terry Lee Parsons v. Johnson & Johnson*, **Civ. Action No. 19-21967 (FLW)**

Counsel:

      In this matter, Plaintiffs Melissa Parsons ("Mrs. Parsons") and Terry Lee Parsons (collectively, "Plaintiffs" or "the Parsons") allege that Defendant Johnson & Johnson ("J&J") misrepresented the risks associated with its talc-based hygiene products, causing Mrs. Parsons to

develop ovarian cancer. The Parsons also allege that Defendant Pikeville Radiology, PLLC ("Pikeville") negligently diagnosed Melissa Parson's cancer, aggravating its severity. Plaintiffs initially filed their Complaint in Kentucky state court. J&J removed the matter to federal court pursuant to 28 U.S.C. § 1447, and it was transferred as a member case to the above-referenced multidistrict litigation ("MDL") assigned to me by the MDL Panel. Presently before the Court is Plaintiffs' Motion to Remand, arguing that subject matter jurisdiction is improper due to a lack of diversity. Defendant opposes remand on the grounds that Plaintiffs' claim against the forum-state defendant, Pikeville, is fraudulently misjoined and, even if it is not, the Court should exercise its discretion under Fed. R. Civ. P. 21 to sever Pikeville and remand it. For the reasons set forth below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part. The Court exercises its discretion under Rule 21 to sever and remand Plaintiffs' medical malpractice claims against Pikeville to Kentucky state court, and to retain jurisdiction over Plaintiffs' product liability claims against J&J in the MDL proceeding.

## I. FACTS

The following facts are recounted from Plaintiffs' Complaint and taken as true. Mrs. Parsons used J&J's talc-based products for decades. *See* Mot. to Remand, at 4 ¶ 2. She estimates over 30,000 applications involving various products, including baby powder. *Id.* On November 12, 2018, Mrs. Parsons went to the emergency room with pain on her right side. *Id.* ¶ 4. Doctors scanned her abdomen and pelvis. *Id.* Pikeville physician Dr. Kendall interpreted the results, *id.* ¶ 5, allegedly finding "[m]ild basilar atelectasis," which "may represent ovarian cysts," and recommending an ultrasound in six to eight weeks to "confirm resolution." *Id.* ¶ 6. On the basis of Dr. Kendall's findings, the emergency room discharged Mrs. Parsons, allegedly counseling her that she had "a benign ovarian cyst" that was likely to "disappear" on its own. *Id.* ¶ 7. On January

2

13, 2019, Mrs. Parsons returned to the emergency room, this time with severe symptoms: tearing abdominal pain, unintended weight loss, nausea, vomiting, diarrhea, back pain, dysuria, and blood in her stool. *Id.* ¶ 9. Doctors again scanned her abdomen and pelvis, where they observed metastatic disease and a large pleural effusion. *id.* They diagnosed her with carcinomatosis and referred her to a surgical oncologist. *Id.* ¶ 10. On January 16, 2020, a pathology confirmed adenocarcinoma, and on January 29, 2019, Mrs. Parsons was diagnosed with Stage IV ovarian cancer. *Id.* She stopped using J&J's products that month. *Id.* ¶ 2.

The Parsons filed suit against Pikeville in Pike Circuit Court in the Commonwealth of Kentucky on August 1, 2019. *See* Mot. to Remand, at 8. They amended their Complaint to add J&J on August 6, 2019. *Id.* They accuse J&J with fraudulently misrepresenting, or failing to disclose, the risks associated with its talc-based hygiene products,[1] and Pikeville with negligent medical treatment, both of which contributed to Mrs. Parsons' ovarian cancer, J&J by causing it and Pike Radiology by aggravating it.[2] Mot. to Remand, at 2-4, 6-7. They seek a joint trial in Kentucky. *Id.* 9-10. In its Answer, Pikeville submits that Mrs. Parsons' injuries are "caused and brought about by" the "negligent acts or omissions" of third parties. *See* Dkt 8-1, ¶ 25. J&J likewise asserts that Mrs. Parsons' injuries are caused by "intervening or superseding events . . . for which [J&J is] not liable," *i.e.*, "actions, omissions, and/or conduct of third parties over whom [J&J] had no control or authority." *See* Dkt. 1-1, at 102 (Seventh Defense), 119 (Sixth Defense).

On September 13, 2019, J&J removed this matter to federal court, *see* Dkt. 1, and on December 26, 2019, it was transferred to this Court as part of the MDL proceeding. *See* Dkt. 21.

---

1   Plaintiffs assert strict liability, negligence, and fraud claims against J&J, as well as a claim under Kentucky's Consumer Protection Act ("KCPA") and a claim for punitive damages. *See* First Amended Complaint, ¶ 104-05, 110, 115-55; Opp. Br., at 2.

2   Mr. Parsons also asserts a claim for loss of consortium. *See* Reply Br., at 4 n.2.

3

J&J is a citizen of New Jersey. The Parsons are citizens of Kentucky. Pikeville is also a Kentucky citizen. Despite the obvious lack of diversity, J&J contends in its removal notice that federal jurisdiction is proper because the forum-state defendant, Pikeville, is "fraudulently misjoined." *See* Dkt. 1; Opp. Br., at 3. In the alternative, J&J asks that I sever and remand the Parsons' claim against Pikeville pursuant to my discretion under Fed. R. Civ. P. 21. *See* Opp. Br., at 16. The Parsons contend in their remand motion that the Third Circuit does not recognize fraudulent misjoinder as an exception to the complete diversity requirement, and that Defendant improperly uses Rule 21 to create diversity where it does not exist on the face of the Complaint. Mot. to Remand, at 15.

## II. LEGAL STANDARD

A defendant may remove an action "from state court to federal district court so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014); *MHA LLC v. HealthFirst, Inc.*, 629 Fed. App'x. 409, 411 (3d Cir. 2015) ("Federal courts are courts of limited jurisdiction, and a case can only be removed to a federal district court if the case could have originally been filed there."). A removing defendant bears the burden of demonstrating subject matter jurisdiction. *See Judon v. Travelers Prop. Cas. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014); *see also Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006); *Carroll v. United Air Lines*, 7 F. Supp. 2d 516, 519 (D.N.J. 1998).

Where removal is based on diversity, as here, a defendant may establish subject matter jurisdiction by demonstrating that all plaintiffs and defendants are citizens of different states and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332(a); *Grand Union*

4

*Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005) (requiring "complete diversity between all plaintiffs and all defendants") (citing *Strawbridge v. Curtiss*, 3 Cranch. 267 (1806)); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("[N]o plaintiff [may] be a citizen of the same state as any defendant."). Congress has imposed a further limitation where removal is based on diversity: the "forum defendant rule." *See* 28 U.S.C. § 1441(b)(2). Under this rule, any "action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the . . . defendants is a citizen of the State in which such action is brought." *Id.*; *In re Plavix Prod. Liab. & Mktg. Litig.*, No. 3:13-03610, 2014 WL 4954654, at *3 (D.N.J. Oct. 1, 2014) (citing *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 90 n.3 (3d Cir. 1999)).

A defendant may also establish subject matter jurisdiction by demonstrating an exception to the complete diversity requirement, such as the doctrine of fraudulent joinder. *See In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006). Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the [non-diverse] defendant, or no real intention in good faith to prosecute the action against [that] defendant or seek a joint judgment," *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985), such that the "non-diverse defendant[] [was] . . . joined solely to defeat diversity." *Briscoe*, 448 F.3d at 216. A claim is not colorable if it is "wholly insubstantial and frivolous." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer*, 913 F.2d at 111 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983)). "[T]he removing party carries a heavy burden of persuasion," *Batoff v. State Farm Ins. Co.*, 977 F.2d 848,

851 (3d Cir. 1992) (citations omitted); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), because "removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Batoff*, 977 F.2d at 851 (quoting *Steel Valley Author. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), *cert. dismissed*, 484 U.S. 1021 (1988) (internal citation omitted)). If, on the other hand, there is no possibility that a plaintiff has stated a valid claim against the nondiverse defendant, then the court can retain jurisdiction over the claim against the diverse defendant and remand the claim against the nondiverse defendant.

### III.   DISCUSSION

A. <u>Fraudulent Misjoinder</u>

Defendant here asks the Court to recognize another exception, albeit similar, to the complete diverse requirement—fraudulent misjoinder—which exists where a plaintiff joins claims that do not factually or legally belong together to destroy diversity.[3] *See* Opp. Br., at 3-15. According to Defendant, Plaintiff has effectively plead two separate actions: one against Pikeville that is not removable, and one against it that is.

"[F]raudulent misjoinder tests the procedural basis of a party's joinder," not the "viability of the claims against the [non-diverse] defendant." *Reuters v. Medtronics, Inc.*, No. 10-3019, 2010 WL 4628539, at *3 (D.N.J. Nov. 5, 2010). It may operate as an exception to the complete diversity requirement "where there is no real connection between each of plaintiff's underlying claims." *Breitner v. Merck & Co., Inc.*, 2019 WL 316026, at *3 (D.N.J. 2019); *see also Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008) (explaining fraudulent misjoinder arises where "the factual commonality among the plaintiffs' claims against the different classes of defendants [is]

---

[3]   Fraudulent misjoinder may also occur where a nondiverse plaintiff joins unrelated claims with a diverse plaintiff against a single defendant. *See, e.g.*, *Plavix*, 2014 WL 4954654, at *10; *Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2s 865, 869 (N.D. Ohio 2008).

6

not sufficient to satisfy Rule 20"); *Asher v. Minn. Mining & Mfg. Co.*, No. 04-522, 2005 WL 1593941, at *4 (E.D. Ky. June 30, 2005) (stating fraudulent joinder addresses whether plaintiff's "joined claims are unrelated and have been improperly joined to destroy diversity"); *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1126 (E.D. Ca. 2004) (noting fraudulent misjoinder occurs where a plaintiff joins two claims sharing no common law or fact). The Third Circuit has neither explicitly authorized nor rejected fraudulent misjoinder, but our district courts overwhelmingly disfavor it. *See, e.g.*, *In re Plavix*, 2014 WL 4954654, at *10; *Burgman v. Costco*, No. 19-15834, 2019 WL 7373010, at *1 (D.N.J. Dec. 31, 2019); *Brietner*, 2019 WL 316026, at *2.

Defendant urges the Court to apply fraudulent misjoinder here because various federal courts have "applied the doctrine . . . in almost the exact circumstances"—specifically, where a plaintiff brings a product liability claim with a medical malpractice claim. Opp. Br., at 5-10. Defendant cites a long list of cases in that respect. *See* Opp. Br., at 5-7. While I recognize that federal courts in the Fifth and Eleventh Circuits have found fraudulent misjoinder applicable, as I stated in *Plavix*, such decisions do not "bind[] this Court," 2014 WL 4954654, at *10, *13,

7

especially in view of the overwhelming consensus among federal courts within[4] and outside of this circuit[5] not to adopt the doctrine of fraudulent misjoinder.

In any event, contrary to Defendant's assertion, multiple courts *have* rejected fraudulent misjoinder in cases just like the present one, *i.e.*, where a plaintiff joins a product liability claim with a medical malpractice claim. *See, e.g.*, *Reuter*, 2010 WL 4628439, at *3-5; *Saviour v. Stavropolous*, No. 15-5362, 2015 WL 6810856, at *6-7 (E.D. Pa. Nov. 5, 2015) (rejecting defendant's theory that "the issues concerning the design, manufacture, and labeling of the [medical device] have nothing to do with the [doctor's] alleged interactions with, and medical

---

4   *See, e.g.*, *Kaufman v. Allstate Ins. Co.*, No. 07-6160, 2010 WL 2674130, at *8 (D.N.J. June 30, 2010) ("The Court, without guidance from the Third Circuit, and noting other district courts' reluctance to embrace the [ ] doctrine finds that this issue would be better decided in state court, the court in which the parties were originally joined."); *Belmont Condo. Ass'n, Inc. v. Arrowpoint Capital Corp.*, No. 11-02900, 2011 WL 6721775, at *7 (D.N.J. Dec. 20, 2011) ("This Court declines to include procedural misjoinder as an alternative ground for fraudulent joinder."); *see also In re Paulsboro Derailment Cases*, No. 13-5583, 2014 WL 197818, at *3-7 (D.N.J. Jan. 13, 2014) (declining to apply fraudulent misjoinder because it is unclear whether it is a viable theory in the district, it has never been applied outside of the pharmaceutical context, defendants failed to point to any egregious conduct on the part of plaintiffs, and the requirements of Rule 20 were satisfied); *Prudential Ins. Co. of Am. v. Barclays Bank PLC*, No. 12-5854, 2013 WL 221995, at *10 n.13 (D.N.J. Jan. 22, 2013) ("The Third Circuit has never approved extending the doctrine to attack the joinder of *Plaintiffs,* and some courts refuse to do so."), *report and recommendation adopted,* No. 12-05854, 2013 WL 1890279 (D.N.J. May 6, 2013); *Reuter v. Medtronics, Inc.*, No. 10-3019, 2010 WL 4628439, at *5-6 (D.N.J. Nov. 5, 2010) ("Even assuming fraudulent misjoinder in its most expansive form was accepted in this Circuit (which it clearly is not), it would not apply here."), *report and recommendation adopted*, No. 10-3019, 2010 WL 4902662 (D.N.J. Nov. 23, 2010).

5   *See, e.g.*, *Geffen*, 575 F. Supp. 2d at 872 ("In sum, the Court declines to follow the *Tapscott* holding and apply the doctrine of fraudulent misjoinder."); *Halliburton v. Johnson & Johnson*, 983 F. Supp. 2d 1355, 1359 (W.D. Okla. 2013) ("Given this criticism and the lack of guidance by the Tenth Circuit, the court declines to adopt the procedural misjoinder doctrine and to extend it to the plaintiffs' claims at issue in these actions."); *Myers Indus., Inc. v. Young*, No. 13-01278, 2013 WL 4431250, at *3 (N.D. Ohio Aug. 16, 2013) ("Because the Court cannot conclude with complete certainty that the Sixth Circuit would hold fraudulent joinder analysis applies to plaintiffs, and '[a]ll doubts as to the propriety of removal' must be resolved 'in favor of remand,' the Court is bound to refuse to apply fraudulent joinder analysis."); *Fore Investments, LLC v. Travelers Indem. Co. of Am.*, No. 12-01702, 2013 WL 3467328, at *8 (S.D. Ind. July 9, 2013) ("This court therefore finds that misjoinder is a question for the state court, applying its own procedural rules and its own discretion."); *Interior Cleaning Sys., LLC v. Crum*, No. 14-0199, 2014 WL 3428932, at *5 n. 10 (S.D. Ala. July 14, 2014) ("The Court cannot (and, even if it had discretion to do so, would not) retroactively manufacture federal subject matter jurisdiction in this case by slicing off the nondiverse portions of the case, returning those to state court, and keeping the rest."); *Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 1002 (S.D. Ill. 2007) (collecting cases).

treatment regarding, the plaintiff"); *In re Bard Ivc Filters Prod. Liab. Litig.*, 2016 WL 2956556, at *5-6 (D. Az. May 23, 2016) (same); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 2016 WL 4409555, at *5 (E.D. La. Aug. 19, 2016) ("[Plaintiff's] death was plausibly caused by Dr. Kane, Reliant, the Pharmaceutical Defendants, or some combination of the preceding . . . . rais[ing] issues of material fact appropriate for trial."); *see also Bostic v. Glaxosmithkline, LLC*, No. 15-00084, 2015 WL 8486181, at *1-2 (E.D. Ky. Dec. 9, 2015) (finding a malpractice claim against a pediatrician and a product liability against a pharmaceutical company were not fraudulently misjoined); *Lopez v. Pfeffer*, No. 13-03341, 2013 WL 5367723, at *4-5 (N.D. Cal. Sept. 25, 2013) (same, but for a product liability claim against a medical device manufacturer and a malpractice claim against a medical group); *Williams v. Altman, McGuire, McClellan & Crum, P.S.C.*, No. 12-00131, 2013 WL 28378, at *6 (E.D. Ky. Jan. 2, 2013) (same, but for a product liability claim against J&J and a malpractice claim against a medical practice); *N.C. ex rel. Jones v. Pfizer, Inc.*, No. 12-00531, 2012 WL 1029518, at *2-4 (N.D. Cal. Mar. 26, 2012) (same, but for a product liability claim against a drug manufacturer and a malpractice claim against a hospital); *Watson v. Gish*, No. 10-03770, 2011 WL 2160924, at *3-4 (N.D. Cal. June 1, 2011) (same).

Next, although I declined to apply fraudulent misjoinder in *Plavix*, 2014 WL 4954654, at *11-14, Defendant urges the Court to "reconsider that ruling." Opp. Br., at 10. The gravamen of Defendant's argument in this regard is that the Third Circuit silently affirmed fraudulent misjoinder in *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, No. 11-3045, 2012 WL 1118780, at *2 (D.N.J. Apr. 3, 2012), *aff'd*, 751 F.3d 150, 156 n.10 (3d Cir. 2014). *See* Opp. Br., at 10-12. This argument is as unpersuasive now as it was then. In *Plavix*, I did not read *Fosamax* to affirm fraudulent misjoinder because the doctrine simply "was not on appeal" there. 2014 WL 4954654, at *11 n.12. I do not see any reason to read it differently today, and Defendant's

9

cases do not persuade me otherwise. Indeed, Defendant readily admits that the Third Circuit's "treatment of the issue [in *Fosamax*] was cursory." Opp. Br., at 12. It makes little sense to infer an endorsement of a controversial procedural attack on Plaintiffs' Complaint, which, if adopted, would both expand the jurisdiction of the federal courts and potentially undermine Plaintiffs' choice of forum, based solely on what the Third Circuit did not say about an issue that it did not have occasion to address.[6]

Even if I am "reluctant" to adopt fraudulent misjoinder without explicit guidance from the Third Circuit, Defendant contends, "at a minimum" I should decline to "extend [my reasoning in *Plavix*] to the unique circumstances here involving disparate claims asserted against dissimilar defendants." Opp. Br., at 10, 12, 13-14. Defendant offers two reasons why: *Plavix* involved misjoinder of claims by multiple plaintiffs against one defendant, whereas the present matter involves misjoinder of claims by one plaintiff against multiple defendants, *see* Opp. Br., at 13-14, and Plaintiffs do not seek relief for conduct "arising out of the same transaction [or] occurrence." Opp. Br., at 14-15 (quoting *Smiths v. Hendricks*, 140 F. Supp. 3d 66, 74 (D.D.C. 2014)). Both reasons are unavailing. First, there is no legal or logical difference between one diverse and one nondiverse plaintiff filing purportedly unrelated claims against a single defendant, and a single diverse plaintiff filing purportedly unrelated claims against one diverse and one nondiverse defendant. Courts have repeatedly declined to apply fraudulent misjoinder to both fact patterns for the same reasons. *See supra*, notes 4-5.

---

6    Not only might the doctrine expand subject matter jurisdiction, but it is unclear "whether, when considering the joinder of parties, a court should rely on Rule 20 of the Federal Rules of Civil Procedure or its state law counterpart. In some cases, where the federal rule of procedure on joinder tracks the corresponding state rule, the question would not have a practical import. In states such as California, however, the state's rule permitting joinder is broader than the federal rule." *Osborn*, 341 F. Supp. 2d at 1128.

Second, while I am concerned with the increasingly common manner in which plaintiffs join claims arising out of seemingly unrelated transactions in a single action,[7] Defendant is not without recourse. It may turn to regular, well-established procedural rules to challenge purported forum-shopping, such as Fed. R. Civ. P. 20, which governs permissive party joinder, or Rule 21, which Defendant has also invoked, here, in addition to its fraudulent misjoinder argument. Accordingly, for the reasons stated above, I decline to apply fraudulent misjoinder to this case.[8]

B. <u>Severance Under Fed. R. Civ. P. 21</u>

Although I do not find a reason to apply fraudulent misjoinder, Defendant argues, in the alternative, that I should "exercise [my] discretion to sever the claim[] against Pikeville" under Fed. R. Civ. P. 21, and "assert jurisdiction over the product-liability claims against the removing Defendant[]" while severing and remanding the nondiverse claim. Opp. Br., at 16. This approach makes sense here.

Fed. R. Civd. P. 21 provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *Id.* The Supreme Court and the Third Circuit have specifically held that a court may use its Rule 21 authority to sever a nondiverse, dispensable party *even if* doing so creates diversity jurisdiction where it otherwise would not exist on the face of the complaint.[9] *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826,

---

7   I expressed this point in *Plavix*, 2014 WL 4954654, at *10.

8   Even if I were to adopt fraudulent misjoinder, Plaintiffs' joinder here "in no way approaches a level of egregiousness as to constitute fraud," which is the applicable standard by which I would judge whether a fraudulent misjoinder has occurred. *See, e.g.*, *N.C. ex rel Jones*, 2012 WL 1029518, at *4. In other words, even though one of Plaintiffs' claims sounds in negligence against a doctor and the other in strict liability against a manufacturer, it can hardly be said that there is "no real connection" between them.

9   The Court recognizes that some "[f]ederal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-7153, 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015); *Saviour*, 2015 WL 6810856, at *5. Yet, at the same time, "it is well established that courts, both district and circuit alike, have the power under Fed. R. Civ. P. 21 to dismiss dispensable parties to the suit in order to

832-38 (1989) (explaining this authority is "well-settled"); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 222-23 (3d Cir. 1999), *rev'd on other grounds*, 545 U.S. 546 (2005). To sever a nondiverse party pursuant to Rule 21, "(1) the party to be severed must be dispensable; and if so, (2) the Court must assess whether severing would prejudice any of the parties in the litigation." *Saviour*, 2015 WL 6810856, at *4.

    i.    *Indispensability*

Defendant first asserts argues neither it nor Pikeville is indispensable to this matter. "A Rule 19 inquiry determines who is an indispensable party and should be joined in [an] action." *Burns v. Boston Scientific Corp.*, 2019 WL 1238829, at *4 (D.N.J. Mar. 18, 2019) (citing <u>Bank of America Nat. Trust & Sav. Ass'n. v. Hotel Rittenhouse Associates</u>, 844 F.2d 1050, 1053-54 (3d Cir. 1988)). A party is therefore deemed to be indispensable, or not, based on the factors listed in Fed. R. Civ. P. 19. *See Zambelli*, 592 F.3d at 421. Indispensable parties "not only have an

---

preserve diversity." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 382 n.6 (3d Cir. 2004); *Enza v. We The People, Inc.*, 838 F. Supp. 975, 977 (E.D. Pa. 1993). "Rule 21 is a safety net against misjoinder of a dispensable party . . . and gives a district court broad discretion to re-align the parties in an action according to their true interests." *Burns v. Boston Scientific Corp.*, 2019 WL 1238829, at *4 (D.N.J. Mar. 18, 2019); *see also In-Tech Marketing Inc., et al. v. Hasbro et al.*, 685 F. Supp. 436, 441-42 (D.N.J. 1988) (*citing Dawson v. Columbia Avenue Saving Fund etc.*, 197 U.S. 178, 180 (1905)). Simply put, "[t]he Rule allows a district court to dismiss so-called 'jurisdictional spoilers' – parties whose presence in the litigation destroys jurisdiction – if those parties are not indispensable and if there would be no prejudice to the parties." *Aetna Life Ins. Co. v. Foundation Surgery Affiliates, LLC*, 358 F. Supp. 3d 426, 436 (E.D. Pa. 2018). Even if joinder is permissible under Rule 20, the Court may exercise its Rule 21 discretion to sever or drop a nondiverse defendant. *See, e.g.*, *Patrick Collins, Inc. v. John Does 1-43*, No. 12–3908, 2013 WL 12170608, at *3 (D.N.J. Feb. 15, 2013). Thus, "[t]he decision to sever a claim or to try it separately is left to the sound discretion of the trial court," *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Penn., Inc.*, 49 F. Supp. 2d 709, 721 (D.N.J. 1999); *Burns*, 2019 WL 1238829, at *5, and "if [the nondiverse party's] interests are severable and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the suit dismissed as to [the nondiverse party]." *Fields v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir. 1980), *modified on other grounds, Newman-Green*, 490 U.S. at 833-34; *Aetna Life*, 358 F. Supp. 3d at 437 (citing *Fields*). If there were any remaining doubt as to the Court's discretion under Rule 21, severing a nondiverse defendant to preserve diversity "has long been an exception to the time-of-filing rule" for determining whether diversity exists, as long as "[the parties'] interests are severable and a decree without prejudice can be made." *Grupo Dataflux v. Atlas Global Group, L.F.*, 541 U.S. 567, 572 (2004); *see also Horn v. Lockhart*, 84 U.S. (17 Wall.) 570, 579 (1873).

interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 421 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3d Cir. 1987)). Likewise, a party is indispensable if, absent that party, a court could not accord complete relief. *See* F.R.C.P. 19(a); *Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1053-54 (3d Cir.v1988).

Plaintiffs contends that Pikeville and J&J are indispensable to this case, or else Plaintiffs would "have to battle empty chair defenses in separate trials," where each defendant points to the absent defendant as the party responsible for Mrs. Parsons' damages. Mot. to Remand, at 18; Reply Br., at 10. Defendant contends that it "could not escape liability" by shifting responsibility because Plaintiffs' claims against it and Pikeville are "distinct." Opp. Br., at 24. Plaintiffs' argument is without merit.

First, Plaintiffs depend on implausible assumptions about the positions Pikeville and J&J would take in separate trials. Indeed, Plaintiffs' theories of liability against J&J and Pikeville are distinct. Against Pikeville, Plaintiffs claim that the medical provider failed to timely diagnose Mrs. Parson's cancer, which effectively delayed her treatment and perhaps, her survival rate. As to J&J, Plaintiffs allege that the prolonged use of the company's Baby Powder Talc products caused her cancer. In that regard, the burden of proof on Plaintiffs as to each of those separate and distinct claims is different; that is, Plaintiffs must proffer, *inter alia*, different expert opinions and evidence concerning causation, *i.e.*, whether talc powder can cause ovarian cancer and whether Pikeville's delayed diagnosis medically impacted Plaintiffs' cancer treatment and her survival rate.

13

In that connection, to shift "100%" of liability to J&J, Pikeville would need to argue that it is not responsible for any damages because it did not *cause* Mrs. Parsons' cancer in the first place, regardless whether it allegedly negligently misdiagnosed her cancer when she sought treatment in the emergency room. No reasonable court or jury would entertain that defense, since the initial cause of Mrs. Parsons' cancer is irrelevant to whether Pikeville negligently treated it after it developed. Otherwise, any medical provider could shirk liability for negligent medical treatment simply by claiming that it did not cause the injury. Likewise, to shift "100%" of liability to Pikeville, J&J would need to argue—and it does not appear that J&J is making such an argument—that it is not responsible for any of Mrs. Parsons' damages, regardless of whether its talc-based hygiene products caused her cancer. That defense cannot be reconciled with long standing products liability law.

Second, while Plaintiffs' claims involve the same bottom-line medical condition, *i.e.*, Stage IV ovarian cancer, and share one common question of fact, *i.e.*, what factor or combination of factors caused cancer of that severity, Plaintiffs must prove different legal elements, conduct distinct factual inquiries, and focus on discrete conduct under each theory of liability, *i.e.*, medical malpractice and products liability. Indeed, nearly all other questions of law and fact are specific to each defendant. Plaintiffs charge Pikeville with breaching a professional standard of care by failing to diagnose her cancer in a timely manner. To plead a prima facie case of negligence in this regard, Plaintiffs must probe the events surrounding Mrs. Parsons' emergency room visits and subsequent interactions with doctors—for instance, the care with which Pikeville observed Mrs. Parsons' initial scan, whether it had in place proper procedures for doing so, whether it followed those procedures, and what an average member of the medical community would have recommended. On the other hand, Plaintiffs charge J&J with selling an unsafe talc-based hygiene product, and

14

failing to adequately warn consumers about it, which involves an inquiry into the scientific properties of talc and the way in which J&J advertised or marketed it, as well as the product's design, manufacture, and labeling. Put differently, Plaintiffs' claim against J&J requires proof of facts leading up to the moment Mrs. Parsons presented to the emergency room with cancer, but going back as far as 30 years, whereas the claim against Pikeville requires proof of an entirely different set of facts from that moment forward.[10]

Third, and relatedly, resolution of Plaintiffs' product liability claim against J&J would not resolve their medical negligence claim against Pikeville, nor vice versa. *See, e.g.*, *Sullivan v. Calvert Memorial Hosp.*, 117 F. Supp. 3d 702, 706 (D. Md. 2015) (severing medical negligence claims from product-liability claims under Rule 21); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 872-73 (N.D. Ohio 2009); *Mayfield v. London Women's Care, PLLC*, No. 15-19, 2015 WL 3440492 (E.D. Ky. May 28, 2015) (stating that the claims against the healthcare defendants were "highly distinct" from those against the manufacturers because they were "comprised of unique legal elements" and "based on completely different factual allegations").[11]

---

[10] Plaintiffs cannot rely on the "learned intermediary doctrine" to bridge the gap between their claims, because the allegedly harmful J&J hygiene products were not available by prescription from the same doctor against whom Plaintiffs allege malpractice. Rather, J&J's advertised, marketed, and sold its products directly to consumers. Furthermore, Plaintiffs do not rely on the use of talc and the cause of Mrs. Parson's cancer in its claim against Pikeville. Plaintiffs' negligence claim essentially accuses Pikeville of misdiagnosing Mrs. Parson's condition, which resulted in a more advanced stage of cancer.

[11] Plaintiffs rely on *Hampton v. Insys Therapeutics, Inc.*, 319 F.3d 1204, 1214 (D. Nev. 2018), and *Larue v. Volkswagon Grp. of Am. Inc.*, No. 1:17-00001, 2017 WL 2312480 (W.D. Ky. May 26, 2017), for the proposition that Rule 21 severance is inappropriate and prejudicial. *Larue*, however, is inapposite, as it does not involve Rule 21. And, *Hampton* is unpersuasive, because it significantly understates (if not ignores) the district courts' longstanding authority to drop a nondiverse defendant under Rule 21. *See supra*, note 10. Simply put, and contrary to the holding in *Hampton*, "[t]he rule requiring complete diversity among parties under 28 U.S.C. § 1332 is not absolute," *Williams*, 2013 WL 28378, at *1, such that a court may entertain a severance motion even if diversity exists on the face of a complaint. Finally, I find it especially appropriate to employ Rule 21 here, because it is possible that Defendants are joined purely to defeat diversity, notwithstanding the fact that Plaintiffs sued the nondiverse defendant, Pikeville, first. It is likely that Plaintiffs joined both defendants—in whatever order—with the purpose of keeping this matter out of

While the assessment of damages against J&J and Pikeville could potentially overlap, even if J&J and Pikeville could be considered as joint tortfeasors, not merely successive tortfeasors, the Supreme Court has held that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (agreeing with appellant that it was "error to label joint tortfeasors as indispensable parties"); *Huber v. Taylor*, 532 F.3d 237, 249-50 (3d Cir. 2008) (overturning a district court decision finding joint tortfeasors were indispensable parties); *Lomando v. United States*, 667 F.3d 363, 384 (3d Cir. 2011); *see also PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001) (noting that "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party"). In fact, the comments to Rule 19(a) state that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." 28 U.S.C. App., p. 595. Finally, although Plaintiffs argue that "Kentucky law requires a joint trial" here, Mot. to Remand, at 9, I do not see any such command in state law, but merely a requirement that the jury allocate fault where there is more than one tortfeasor, as well as a statement that Kentucky is a pure comparative negligence state. *See* 411.182; *Williams*, 2013 WL 28378, at *4; Opp. Br., at 14 n.3. Contrary to Plaintiffs' argument, I cannot find that Kentucky state law requires the claims against J&J and Pikeville be tried in one trial. Accordingly, I do not find Pikeville or J&J to be an indispensable party in this case.

  ii. *Prejudice*

Even if a nondiverse party is dispensable, and can be severed under Rule 21, such "authority . . . should be exercised sparingly," and a court must "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Newman-Green*,

---

federal court. *Cf. Goodwin v. Kojian*, No. 13-325, 2013 WL 1528966, at *4 (C.D. Cal. Apr. 12, 2013); *Hampton*, 319 F.3d at 1214 n.4; *Bostic*, 2015 WL 8486181, at *2.

490 U.S. at 837. Here, Plaintiffs argue that severance would prejudice Mrs. Parsons because she is "very sick" and may "not live to go to trial against J&J" if J&J remained in the MDL. Mot. to Remand, at 16-17. Severance, Plaintiffs posit, would also cause multiple discoveries, depositions, and delay. *Id.* Defendant responds that Plaintiffs' claim of prejudice is "legally beside the point," since "the question of prejudice only comes into play when a nondiverse defendant is a necessary party." Opp. Br., at 20-21. Defendant also contends Plaintiffs' claim of prejudice is "without merit," Opp. Br., at 21, because the MDL enhances efficiency and minimizes expense. Opp. Br., at 22-23.

At the outset, Defendant is plainly incorrect that prejudice is only relevant if the nondiverse defendant is deemed necessary. The opposite is in fact true. Prejudice is relevant precisely because the nondiverse defendant is deemed *dispensable*. It would make little sense to analyze prejudice after a determination is made that defendants are indispensable, in which case no party can be severed. That said, however, severance would not prejudice Plaintiffs here. Plaintiffs first "greatly overstate" the prejudice they would experience if they had to try both cases separately. *Mayfield*, 2015 WL 3440492, at *5; *see also DeGidio v. Centocar, Inc.*, No. 3:09-721, 2009 WL 1867676, at *2-3, *4-5 (N.D. Ohio June 29, 2009) ("While fighting on two fronts will no doubt be inconvenient, and probably more expensive, I do not find the maintenance of two lawsuits unfairly or unduly prejudicial."). As Defendant points out, it is plausible that severance will speed up rather than delay Plaintiffs' suit against Pikeville, since Plaintiffs could try that suit immediately, without regard to the MDL, which they presumably intended to do before amending their Complaint to add J&J. *See Mayfield*, 2015 WL 3440492, at *5. As I know firsthand, having held a *Daubert* hearing in the MDL and waded through complex scientific evidence and numerous expert

17

opinions, if Plaintiffs were to try claims against J&J in the same case against Pikeville, Plaintiffs would be substantially delayed in pursuing their medical malpractice claim.

Rather, Plaintiffs may benefit from proceeding in the MDL against J&J. This is true for at least two reasons. Plaintiffs' claims against J&J are identical to the other claims in the MDL, *cf. Bostic*, 2015 WL 8486181, at *3 (declining to sever primarily because the plaintiffs' claims were "distinct from those in the MDL"), and thus, they fall directly within the scope of those proceedings. Likewise, Plaintiffs could combine resources with other plaintiffs and counsel in the MDL with respect to discovery and pretrial motions, thereby eliminating the possibility of duplicative fact-finding or inconsistent rulings, while conserving party and judicial resources. *See, e.g.*, *Joseph*, 614 F. Supp. 2d at 873 ("[T]he plaintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery."). In short, severance may enable Plaintiffs to "more efficiently" prosecute their claims against each defendant, albeit in different forums. *Mayfield*, 2015 WL 3440492, at *4-5.

Further, there is insufficient evidence that MDLs in general proceed so slowly as to prejudice a plaintiff, nor is there evidence that this particular MDL will proceed so slowly as to prejudice Plaintiffs in this case. *See, e.g.*, *Pierce v. Frink,* No 2:17-1731, 2017 WL 4923508, at *4 (E.D. Cal. Oct. 31, 2017) (rejecting plaintiff's argument that she would be "unfairly prejudiced by a delay in [MDL] proceedings" because "the efficiencies gained through the MDL will benefit all parties") (citation omitted); *In re Zicam Cold Remedy Mktg.*, No. 10-0164, 2010 WL 3834019, at *2 (D. Ariz. Sept. 27, 2010) (explaining that purpose of MDL proceedings is "to conserve the resources of the parties, their counsel and the judiciary") (citation omitted).[12] Finally, I have

---

12    Plaintiffs rely on *DeLaventura v. Columbia Acorn Tr.*, 417 F. Supp. 2d 147 (D. Mass. 2006), to argue that "MDL practice actively encourages retention of even trial-ready cases in order to 'encourage settlement.'" *Id.* at 152, 155; Mot. to Remand, at 17. However, if it is true that Mrs. Parsons may not survive until trial, but does not want any aspect of her case delayed so that she can fully "participate," Mot. to

already rejected Plaintiffs' empty chair theory, *supra*, which does not provide a basis for keeping their claims together.[13]

For the above reasons, the Court exercises its discretion under Rule 21 to sever and remand Plaintiffs' medical malpractice claims against Pikeville to Kentucky state court, and to retain jurisdiction over Plaintiffs' product liability claims against J&J in the MDL proceeding. Plaintiffs' Motion to Remand is, accordingly, **GRANTED** in part and **DENIED** in part.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

---

Remand, at 18, then *Delaventura* cuts against her on this point. Severing the claim against Pikeville would enable the Parsons to try the medical malpractice claims as soon as they are ready in state court, with Mrs. Parsons' full participation, while proceeding in the MDL against J&J would permit Mrs. Parsons to benefit from a timely potential settlement regardless of whether her case is trial-ready.

13   I also reject the theory that the strategic advantage Plaintiffs may receive from joining a nondiverse defendant is a reason not to sever their claims. Rather, preventing that manner of forum-shopping is exactly why it is appropriate to employ Rule 21, here. Severance also will not disturb the principle that a plaintiff is the master of her complaint whose choice of forum should always be respected. *Cf. Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 294 (3d Cir. 2010) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) ("[T]he plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue."). That is so because Plaintiffs originally intended to proceed against only Pikeville in state court, and subsequently amended their Complaint to name J&J.