

**Susan M. Sharko**
Partner
susan.sharko@faegredrinker.com
973-549-7350 direct

faegredrinker.com

**Faegre Drinker Biddle & Reath** LLP
600 Campus Drive
Florham Park, New Jersey  07932
+1 973 549 7000 main
+1 973 360 9831 fax

September 29, 2020


**VIA ECF**

Honorable Freda L. Wolfson, Chief Judge
United States District Court- District of NJ
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Court Room 5E
Trenton, NJ 08608

*Re:   In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation - MDL 2738*

*Baxter* **(3:19-cv-12776);** *Hill* **(3:18-cv-15598);** *Hykes* **(3:19-cv-12734)** *Justice* **(3:18-cv-00333);** *Recio* **(3:19-cv-12775);** *Wasial* **(3:19-cv-17838)**

Dear Chief Judge Wolfson:

Please accept this letter in support of defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Motion to Dismiss for failure to comply with the Court's May 15, May 26, June 4, September 17, and September 19, 2020 Orders regarding case-specific discovery for Stage One discovery pool cases.

The six plaintiffs listed above failed to meet their Court-ordered discovery obligations requiring that they submit a complete and verified Plaintiff Profile Form ("PPF"), core medical records, and supporting documents by September 2, 2020. *See* June 4, 2020 Order [Doc. No. 13525]. The case-specific deficiencies which remain unresolved are as follows:

### Baxter

The case remains deficient for failure to submit any core records. *See* September 17, 2020 Order [Doc. No. 14728.]  Apparently, this is because plaintiff ordered records in 2018, but did not bother to follow up on the

Honorable Freda L. Wolfson,
Chief Judge
                                    -2-                         September 29, 2020

requests until two years later in September 2020, at the time of the deadline for completion of this phase of discovery, or after the deadline which had been set by consent of counsel some three months earlier.  *See Baxter* Response to Court's Order, Exhibit A.

### Hill

Counsel cannot locate the plaintiff and the PPF remains materially deficient.  *See* September 19, 2020 Order [Doc. No. 14749]; *Hill* Response to Court's Order, Exhibit B.

### Hykes

Plaintiff Hykes' PPF remains unverified and materially deficient, she has not produced any core records, and has not provided a signed medical authorization.  *See* September 17, 2020 Order [Doc. No. 14728]; September 17, 2020 Order [Doc. No. 14729]; September 19, 2020 Order [Doc. No. 14749].  This is because plaintiff simply did not return the discovery to her attorneys.  She also claims to have ordered records in 2018, but did not bother to follow up on the requests until two years later in September 2020, at the time of the deadline for completion of this phase of discovery, or after the deadline which had been set by consent of counsel some three months earlier.  *See Hykes* Response to Court's Order, Exhibit C.

### Justice

The case remains deficient for failure to submit any core records.  *See* September 17, 2020 Order [Doc. No. 14728.]  Apparently, this is because plaintiff was non-responsive to her counsel's inquiries and records were not ordered until September 2020, at the time of the deadline for completion of this phase of discovery, or after the deadline which had been set by consent of counsel some three months earlier.  *See Justice* Response to Court's Order, Exhibit D.

### Recio

The case remains deficient for failure to submit any core records.  *See* September 17, 2020 Order [Doc. No. 14728.]  Apparently, this is because plaintiff ordered records in 2018, but did not bother to follow up on the requests until two years later in September 2020, at the time of the deadline

Honorable Freda L. Wolfson,
Chief Judge

-3-

September 29, 2020

for completion of this phase of discovery, or after the deadline which had been set by consent of counsel some three months earlier.  *See Recio* Response to Court's Order, Exhibit E.

### Wasial

The case remains deficient for failure to submit any core records.  *See* September 17, 2020 Order [Doc. No. 14728.]  This is because plaintiff did not order records until July 31, 2020, almost two months after the case was selected for the Stage One discovery pool.   Plaintiff fails to offer any explanation for this delay.  *See Wasial* Response to Court's Order, Exhibit F.

The Court's Orders are clear – failure to produce the required discovery or to provide a satisfactory explanation of why the discovery cannot be produced will result in the case being dismissed with prejudice. *See* September 17, 2020 Order [Doc. No. 14729]; September 19, 2020 Order [Doc. No. 14749.]  Despite a four-week extension and further orders directing compliance, these six plaintiffs have not provided satisfactory explanations as to why their discovery remains deficient.  As the Court observed during the September 15, 2020 status conference, the fact that counsel cannot find plaintiff, or that plaintiff is non-responsive, is not a valid excuse for non-compliance.  *See* Transcript of September 15, 2020 Status Conference at 9:14-15, Exhibit G.  Lack of due diligence is equally insufficient.  The Orders direct prompt action and the expectation, both of the Court and defendants, was for "the request[s] to go out virtually immediately", not months after the fact.  *See id.* at 4:24-5:10. Here, requests and follow up on old requests should have been done when the Orders were entered, not in September.

Pursuant to Rule 41(b), "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Plaintiffs have not provided satisfactory explanations of why the discovery has not been produced, and the cases cannot be prepared for trial without it.  Defendants therefore respectfully request that plaintiff's case be dismissed with prejudice pursuant to Rule 41(b).

Honorable Freda L. Wolfson,
Chief Judge

-4-

September 29, 2020

Thank you for your consideration of this matter.

Respectfully submitted,

/s/ *Susan M. Sharko*

Susan M. Sharko
FAEGRE DRINKER BIDDLE
 & REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: 973-549-7350
Facsimile:  973-360-9831
E-mail: susan.sharko@faegredrinker.com

*Attorneys for Defendants Johnson &*
*Johnson and Johnson & Johnson*
*Consumer Inc.*

cc:    All Counsel of Record (via ECF)

# EXHIBIT A

John E. Deaton ∆
Danielle M. Angelo *

# DEATONLAWFIRM, LLC

450 North Broadway, East Providence, Rhode Island 02914

∆ Admitted in RI, MA, CT & IA
* Admitted in MA

**-VIA MDL Centrality-**

September 25, 2020

**Re: Baxter, Jennifer (Plaintiff ID 2233)**

Dear Counsel,

Please be advised that our firm is in receipt of the Court's Orders on Defendants' Motions to Compel. The Plaintiff Profile Form, Verification, and HIPAA Authorization have been uploaded to MDL Centrality. I spoke with Ms. Baxter, and the information has been completed to the best of her knowledge. Additionally, per the Court's Order, I would like to notify counsel that we are still not in receipt of Ms. Baxter's core medical records. Please note that our effort to obtain these records began two years ago in 2018, as well as requests to preserve any relevant pathology, radiology, and other materials. The medical facility has been unresponsive. Attempted communications with the medical facility were made periodically with no response received. Upon receipt of the Court's Order on September 18, 2020, our office has made telephonic calls to the medical facility on each day beginning Monday, September 21 through today, Friday, September 25. Our office also notified the medical facility of the Court's Order, to which the facility responded that they do not accept out of state orders. If the Court is willing to issue a subpoena, we would be happy to effectuate service of that subpoena. The medical facility still has not responded to these requests. The medical receptionist indicated that core records could be produced fairly quickly, but we will continue to make daily telephone calls until these requests are received and can be supplied to counsel.

Lastly, please be advised that our firm was not notified of and/or served with the Court's May 15th, 2020 Order until September 4th, 2020. Our heightened efforts to obtain all relevant information began immediately upon receipt of those Orders.

Please do not hesitate to contact me with any questions.

Sincerely,

*/s/ Danielle Angelo*
Danielle Angelo

# EXHIBIT B



September 23, 2020

Re:     3:18-CV-15598 - Felicia Hill-Porter v. Johnson & Johnson, et al.

Dear Counsel,

I write to you with respect to the Court's September 17 and 18, 2020 Order(s) concerning service of complete fact sheets and verifications/authorizations.

Specifically, I make this statement to show cause as to why a complete fact sheet and verifications/authorizations will not be uploaded onto MDL Centrality by the Court-ordered deadline of September 25, 2020.

On September 1st, while attempting to contact Felicia Hill-Porter, legal representative of decedent Dorothy Hill, my firm confirmed that her phone number had been disconnected.  We subsequently sent out correspondence by email and mail to the last known address we have for Ms. Hill-Porter.  We have not yet received a response.  We have also conducted independent database searches to attempt to find new contact information for Ms. Hill-Porter but have not yet been successful.

Despite our best efforts, we have not been able to resolve the outstanding deficiencies relating to Ms. Hill-Porter's Plaintiff Profile Form or the verifications and authorizations.

We respectfully ask Counsel and the Court to afford our law firm additional time to locate and correspond with Ms. Hill-Porter so that her case may be resolved on the merits rather than this procedural issue that is currently outside of our control.


With kind regards,

KEITH D. GRIFFIN

# EXHIBIT C

John E. Deaton ∆
Danielle M. Angelo *

# DEATONLAWFIRM, LLC

450 North Broadway, East Providence, Rhode Island 02914

∆ Admitted in RI, MA, CT & IA
* Admitted in MA

**-VIA MDL Centrality-**

September 25, 2020

**Re: Hykes, Scarlet (Plaintiff ID 2255)**

Dear Counsel,

Please be advised that our firm is in receipt of the Court's Orders on Defendants' Motions to Compel. I spoke with Ms. Hykes, and she indicated on September 22, 2020, that she had completed the Plaintiff Profile Form to the best of her knowledge and signed the HIPAA authorizations and Declaration page. Ms. Hykes placed these items in the mail on the evening of September 22, 2020 to return to our office. We anticipated receipt prior to today's date, but are unfortunately not in receipt of the documents. I strongly anticipate receipt of the documents within the next three (3) business days. If, for some reason, the documents are not received within that time, I will contact Ms. Hykes in order to verbally complete the Plaintiff Profile Form in a manner allowing me to type the responses on her behalf.

Additionally, per the Court's Order, I would like to notify counsel that we are still not in receipt of Ms. Hykes' core medical records from Highlands Regional Medical Center. Please note that our effort to obtain these records began two years ago in 2018, as well as requests to preserve any relevant pathology, radiology, and other materials. The medical facility has been unresponsive. Attempted communications with the medical facility were made periodically with no response received. Upon receipt of the Court's Order on September 18, 2020, our office has made telephonic calls to the medical facility on each day beginning Monday, September 21 through today, Friday, September 25. If the Court is willing to issue a subpoena, we would be happy to effectuate service of that subpoena. The medical facility still has not responded to these requests. The medical receptionist did indicate that the facility does not fulfill requests made via facsimile. As such, we have issued requests via Fedex, but we will continue to make daily telephone calls until these requests are received and can be supplied to counsel.

Lastly, please be advised that our firm was not notified of and/or served with the Court's May 15th, 2020 Order until September 4th, 2020. Our heightened efforts to obtain all relevant information began immediately upon receipt of those Orders.

Please do not hesitate to contact me with any questions.

Sincerely,

*/s/ Danielle Angelo*
Danielle Angelo

Tel. 401-351-6400 • Fax 401-351-6401 • www.deatonlawfirm.com • All-Deaton@deatonlawfirm.com

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 2738 (FLW) (LHG) |
| THIS DOCUMENT ALSO RELATES TO: JULIE MACLIN, Plaintiff, v. JOHNSON & JOHNSON, et. al. Defendants | Case No. 3:18-cv-00333-FLW-LHG |

## CERTIFICATION OF JAMES A. MORRIS, JR., RE: MEDICAL RECORDS OF DECEDENT PATRICIA ANN JUSTICE

In compliance with the Court's Order Compelling Production of Medical Records Certification by Discovery Pool Plaintiffs, James A. Morris, Jr., states and declares as follow:

1.    I am the attorney for Plaintiff JULIE MACLIN (aka JULIE JUSTICE), individually, and as an Heir at Law, in the above-referenced matter.  The facts set forth in this Certification/Declaration are within my personal knowledge and, if called as a witness, I could and would competently testify as follows:

2.    Plaintiff JULIE MACLIN is the surviving daughter of decedent Patricia Ann Justice.

3.    Starting in and around the middle of June 2020, we sent to Plaintiff the blank Plaintiff Profile Form, along with the authorizations necessary to obtain and produce the core medical records and pathology of her mother Patricia Ann Justice, deceased.  Despite numerous follow-ups, Plaintiff was slow to respond.

4.    At or around the end of August 2020, Plaintiff did respond, providing us with the information necessary to complete her Plaintiff Profile Form; ascertain the identity of the providers who diagnosed Patricia Ann Justice, deceased, with, and treated her for, ovarian cancer; and obtain the signed HIPAA authorizations allowing us to obtain decedent's relevant medical/pathology records.

5.    Core medical, billing, and pathology records for Decedent Patricia Ann Justice were ordered through our copy service Record Grabber on September 3, 2020, from Mark Messing, M.D., and Texas Health Harris Methodist Hospital (HEB).

6.    Upon receipt of our order, Record Grabber prepared and submitted the record requests to Dr. Messing and HEB.

7.    On September 10, 2020, Record Grabber received an invoice for payment from HEB, and remitted payment the same day.

8.      On or about September 14, 2020, Record Grabber confirmed receipt of our record requests from the providers identified above.

9.      On or about September 23, 2020, my assistant, by phone and e-mail, attempted to follow up with our representative at Record Grabber for status.

10.     On September 24, 2020, Record Grabber responded to my assistant by e-mail and, at that time, advised that HEB was requesting an authorization signed by the decedent's husband, as well as a copy of his driver's license.

11.     That same day, we contacted Ms. MACLIN and advised her of the need to obtain her father's authorization and a copy of driver's license no later than the morning of September 25, 2020.

12.     Ms. MACLIN contacted my office the morning of September 25, 2020, to advise that she was in the process of obtaining her father's signature on the requisite HIPAA authorization, and a copy of his driver's license and would be forwarding those materials to our office presently.

13.     Ms. MACLIN, by e-mail, sent the requisite HIPAA materials to our office, which we immediately forwarded to Record Grabber.

14.     While we do not have an exact date of production for decedent's medical records from HEB, we anticipate receiving them in a timely fashion.  We will upload them to MDL Centrality immediately upon receipt.

15.     Record Grabber has advised us that they are in touch with Dr. Messing's office and are attempting to a schedule a date for production of decedent's records. To date, Dr. Messing's office has not provided a date for production of his records.

16.     My office has confirmed with Plaintiff that she is not in possession, custody, or control of any of her mother's medical, billing, or pathology records. Accordingly, we have no records to produce at this time, but we are committed to providing them as required by the Court immediately upon receipt.

I declare under penalty of perjury under the laws of the States of California and North Carolina that the foregoing is true and correct.

Executed this 25th day of September, 2020, at Pinehurst, North Carolina.

By: _____
James A. Morris, Jr.
4001 W. Alameda Ave.
Suite 208
Burbank, CA 91505
747-283-1144 Phone
747-283-1143 Facsimile
jmorris@jamlawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2020, the above and foregoing CERTIFICATION OF JAMES A. MORRIS, JR., RE: MEDICAL RECORDS OF DECEDENT PATRICIA ANN JUSTICE was filed electronically and is available to viewing through the Court's electronic filing system. A true and correct copy has been served upon all counsel of record via the Court's ECF system.

*/s/ James A. Morris, Jr.*
JAMES A. MORRIS, JR.

# EXHIBIT E

John E. Deaton ∆
Danielle M. Angelo *

# DEATONLAWFIRM, LLC

450 North Broadway, East Providence, Rhode Island 02914

∆ Admitted in RI, MA, CT & IA
* Admitted in MA

**-VIA MDL Centrality-**

September 25, 2020

**Re: Recio, Christina (Plaintiff ID 2250)**

Dear Counsel,

Please be advised that our firm is in receipt of the Court's Orders on Defendants' Motions to Compel. The Plaintiff Profile Form, Verification, and HIPAA Authorization have been uploaded to MDL Centrality. I spoke with Ms. Recio, and the information has been completed to the best of her knowledge. Additionally, per the Court's Order, I would like to notify counsel that we are still not in receipt of Ms. Recio's core medical records from Christus Spohn Hospital Corpus Christi - Shoreline. Please note that our effort to obtain these records began two years ago in 2018, as well as requests to preserve any relevant pathology, radiology, and other materials. The medical facility has been unresponsive. Attempted communications with the medical facility were made periodically with no response received. Upon receipt of the Court's Order on September 18, 2020, our office has made telephonic calls to the medical facility on each day beginning Monday, September 21 through today, Friday, September 25. If the Court is willing to issue a subpoena, we would be happy to effectuate service of that subpoena. The medical facility still has not responded to these requests. The medical receptionist did indicate that our fax request was received and that core records could be produced fairly quickly, but we will continue to make daily telephone calls until these requests are received and can be supplied to counsel.

Lastly, please be advised that our firm was not notified of and/or served with the Court's May 15th, 2020 Order until September 4th, 2020. Our heightened efforts to obtain all relevant information began immediately upon receipt of those Orders.

Please do not hesitate to contact me with any questions.

Sincerely,

*/s/ Danielle Angelo*
Danielle Angelo

# EXHIBIT F

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY
LITIGATION

This document relates to:

Case Name:    Terry Welch, Individually
and as Personal Representative of the Estate
of Susan Wasial, deceased v. Johnson &
Johnson, et al.
Case No.        3:19-cv-17838

**MDL NO. 16-2738 (FLW) (LHG)**
**JUDGE FREDA L. WOLFSON**
**MAG. JUDGE LOIS H. GOODMAN**

## CERTIFICATION OF COUNSEL

**IN RESPONSE THEREOF** to the Court's Order Compelling Production of Medical

Records Certification by Discovery Pool Plaintiffs, Plaintiff responds as follows:

Medical records from Carolinas Health System, 905 Pamplico Highway, Florence, SC

29505 were ordered on July 31, 2020 for the 1/1/2005 through 9/11/2017 medical records.  The

facility responded that they do not have any treatment at that facility.

Medical records from Carolinas Pine Regional Medical Center, 1304 W. Bobo Newsom

Hwy, Hartsville, SC 29550 were ordered on July 31, 2020 for the 1/1/2005 through 9/11/2017

medical records.   The last follow-up from our medical records retrieval company was on

September 10, 2020.  The medical records should be provided in the next two weeks.

Medical records from Dr. Tedder Tona were ordered on July 31, 2020 for the 1/1/2005

through 9/11/2017 medical records.  A rejection from the facility was received on August 28,

2020 requesting an additional authorization. We are waiting on that information from the client

to proceed with the medical records request.

**THEREFORE,** Plaintiff certifies that all medical records in the possession of plaintiff and counsel at this time have been produced.

Dated: <u>September 25, 2020</u>          Respectfully Submitted by,


                                        ONDERLAW, LLC

                              By:     <u>/s/ Stephanie Rados</u>
                                      James G. Onder, #38049
                                      William W. Blair, #58196
                                      Stephanie L. Rados, #65117
                                      110 E. Lockwood, 2nd Floor
                                      St. Louis, MO  63119
                                      314-963-9000 telephone
                                      314-963-1700 facsimile
                                      onder@onderlaw.com
                                      blair@onderlaw.com
                                      rados@onderlaw.com

                                      Counsel for Plaintiff(s)

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

                              CIVIL DOCKET NUMBER:

IN RE:  JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS         3:16-md-2738-FLW-LHG
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY         STATUS CONFERENCE VIA
LITIGATION                     REMOTE ZOOM VIDEOCONFERENCE

_____


       Clarkson S. Fisher Building & U.S. Courthouse
       402 East State Street
       Trenton, New Jersey  08608
       September 15, 2020
       Commencing at 1:30 p.m.


**B E F O R E:**            THE HONORABLE FREDA L. WOLFSON,
                           **CHIEF UNITED STATES DISTRICT JUDGE**


**A P P E A R A N C E S:**


       ASHCRAFT & GEREL, LLP
       BY:  MICHELLE A. PARFITT, ESQUIRE
       1825 K STREET, NW
       WASHINGTON, DC  20006
       For the Plaintiffs

       BEASLEY ALLEN LAW FIRM
       BY:  PATRICIA LEIGH O'DELL, ESQUIRE
       218 COMMERCE STREET
       P.O. BOX 4160
       MONTGOMERY, AL  36104
       For the Plaintiffs


              Carol Farrell, Official Court Reporter
                   cfarrell.crr@gmail.com
                       856-318-6100

    Proceedings recorded by mechanical stenography; transcript
         produced by computer-aided transcription.

**A P P E A R A N C E S (Continued):**


GRANT & EISENHOFER, P.A.
BY:  SINDHU SUSAN DANIEL, ESQUIRE
123 JUSTISON STREET, 6TH FLOOR
WILMINGTON, DE  19801
For the Plaintiffs


COHEN, PLACITELLA & ROTH, PC
BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE
127 MAPLE AVENUE
RED BANK, NJ  07701
For the Plaintiffs


FAEGRE DRINKER BIDDLE & REATH LLP
BY:  SUSAN M. SHARKO, ESQUIRE
     JESSICA LEIGH BRENNAN, ESQUIRE
600 CAMPUS
FLORHAM PARK, NJ  07932
For the Defendant, Johnson & Johnson and
Johnson & Johnson Consumer Companies, Inc.,
now known as Johnson & Johnson Consumer Inc.


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
BY:  JOHN H. BEISNER, ESQUIRE
1440 NEW YORK AVENUE, N.W.
WASHINGTON, DC  20005
For Defendants, Johnson & Johnson and
Johnson & Johnson Consumer Companies, Inc.,
now known as Johnson & Johnson Consumer Inc.

 1            (PROCEEDINGS held via remote Zoom videoconference

 2   before The Honorable Freda L. Wolfson, Chief United States

 3   District Judge, at 1:30 p.m.)

 4            THE COURT:  Okay.  So let's see.  I've got my

 5   chambers on.  There's counsel.  You'll also see on everybody's

 6   screen someone by the name of Carol Farrell.  We've done

 7   Vinnie Russoniello, and he's retired.  Carol is my new court

 8   reporter, and that's who you're seeing on the screen.  So I

 9   think having to come back to court for things after the

10   pandemic, it was enough to make Vinnie retire, and after 18

11   years with me, the end of August he left.

12            So, but Carol is very tech savvy, and so she's even

13   got me on LiveNote on an iPad here, on realtime, so pretty

14   cool.

15            Okay.  Who's going to be talking today on each side?

16   For the plaintiffs, who is going to be speaking?

17            MS. PARFITT:  Your Honor, Michelle Parfitt -- [audio

18   distortion].  It's not good.  Your Honor?

19            THE COURT:  Yes.

20            MS. PARFITT:  It should be Michelle Parfitt, Leigh

21   O'Dell, and Sindhu Daniel.

22            THE COURT:  I'm sorry.  Who else besides Ms. Parfitt

23   and O'Dell?  Who else?

24            MS. PARFITT:  Sindhu Daniel.

25            THE COURT:  You're muted.  What is it?

```
 1          MS. PARFITT:  Sindhu Daniel.

 2          THE COURT:  Okay.  Who is going to be speaking for

 3   defendant?

 4          MS. SHARKO:  Susan Sharko, Jessica Brennan, and John

 5   Beisner.

 6          THE COURT:  Okay.  Good enough.

 7          All right.  Anyone who is not speaking, please mute

 8   your phone.  Please mute.  Okay.  Thank you.

 9          All right.  So I asked for this conference today to

10   deal with the issue that was raised first by the letter of

11   September 8th from plaintiffs' counsel, and then Ms. Sharko

12   sent out something as well, and this is dealing with the issue

13   of the 90-day period to provide plaintiff profiles and medical

14   retrieval authorizations and produce core records.

15          Please mute, everybody mute.  When you're ready to

16   talk, we'll get you off of mute, okay?  It's just too much

17   feedback.  So, okay.  Ms. Parfitt, Ms. O'Dell, please mute.

18   Do you know how to do it?  Okay.  If you could, please.

19          All right.  So I have a question before we even go to

20   what it is that the defendants are looking to do, what's

21   really out there, what's not out there, some of the excuses

22   that have been given by some of the plaintiffs' counsel, and

23   the issue about the 90 days and producing records.

24          Just let me tell you my interpretation of the order

25   was when I said it was promptly to be done, I expected the
```

```
 1   request to go out virtually immediately, within the beginning
 2   of that period.  I understand we may not always get them back
 3   within the 90 days, so it's not a drop-dead date of the
 4   records had to be received within the 90 days, but I want to
 5   know when the request went out to get them.  If I hear they
 6   went out a week before the 90-day expiration, that to me does
 7   not satisfy my order -- or two weeks before or 30 days.  It
 8   should have gone out immediately.  So how am I going to get
 9   that answer?  I need a certification as to anyone who didn't
10   produce the medical records when they were requested.
11           You want to respond to that?
12           MS. PARFITT:  Your Honor --
13           THE COURT:  Yes.  Who is speaking?  There is a lot of
14   feedback on that one.
15           MS. PARFITT:  This is me, Michelle Parfitt.
16           THE COURT:  Okay.
17           MS. PARFITT:  There seems to be some --
18           THE COURT:  There is a big echo when you speak.
19           MS. PARFITT:  How is this?
20           THE COURT:  Not good.
21           MS. PARFITT:  How is this?
22           THE COURT:  Yes.  Good.
23           MS. PARFITT:  How is this?
24           THE COURT:  Good.  Yes, that's fine.
25           MS. PARFITT:  I've lost you.  I've lost the Court.
```

```
 1          THE COURT:  Oh.  She's lost us.  I see her.  I see
 2   you.  I see you, Ms. Parfitt.  Can you hear me?  Everybody
 3   else hear me?
 4          MS. O'DELL:  Yes, Your Honor.
 5          THE COURT:  Yes.  Well, Ms. O'Dell, can you respond
 6   to that maybe, my question?
 7          MS. O'DELL:  I will do that, Your Honor.  We -- what
 8   I understand the Court to be asking for is a certification for
 9   when the records are ordered.  I think in many instances a
10   records request has been uploaded -- [interruption for
11   electronic noise] -- that in many instances a records request
12   has been uploaded to MDL Centrality to make that date known
13   already, but for those who have not provided medical records,
14   we can request a certification from plaintiffs' counsel.  We
15   don't have any objection to that.
16          We have been in touch with plaintiffs' counsel with
17   PPF cases.  I think we've had five or six Zoom calls.  We've
18   had follow-up e-mails.  They're well aware.  And I think most
19   of these firms did comply and order promptly, and as soon as
20   they're receiving records, they are uploading them to the
21   portal.
22          THE COURT:  Okay.  Go ahead.  Who is that?
23   Ms. Sharko?
24          MS. SHARKO:  I was just going to say what Your Honor
25   proposes is satisfactory to us and I think solves the issue as
```

1    to medical records.

2          THE COURT:  Okay.  We're good on medical records

3    then.

4          We've got other situations where I think you've

5    indicated, Ms. Sharko, that essentially nothing has been

6    received for some of the plaintiffs; is that right?  I'm just

7    trying to figure out what the other issues are that we have.

8          Ms. Sharko, you're muted.  Okay.

9          MS. SHARKO:  Okay.  There are two groups of issues

10   left.

11         THE COURT:  Yes.

12         MS. SHARKO:  One are the people who did nothing.

13         THE COURT:  Right.

14         MS. SHARKO:  And those are the 15 cases in our motion

15   that are now down to 13.  And the other group are people who

16   we believe, on a first pass through the PFSs, failed to

17   respond to the most important questions, including the type of

18   cancer they have, things like that, an order compelling people

19   to do that and get their PFSs responsive within 10 days or so

20   would solve that problem, I think.

21         THE COURT:  Let me hear from plaintiffs' counsel.  In

22   lieu of the motion to dismiss, what I'm hearing is, if there

23   is compliance within an order that says compel and comply

24   within ten days, they can live with that.

25         Are you suggesting that, Ms. Sharko, as to all the

1  cases, some where there aren't appropriate answers, or does it

2  not include the 13 cases where nothing was provided?  Is it

3  everything or only the ones where inadequate responses are,

4  but some response was given?  Which is it, Ms. Sharko?

5          MS. SHARKO:  It's the ones where inadequate

6  responses, where there are blanks.  The people who did

7  nothing, our position is those cases should be dismissed now.

8          THE COURT:  Okay.  Got it.  So this is only as to the

9  others.

10          Look, I'm going to let your motion stand as to the 13

11  cases.  The plaintiffs can respond to it in a formal manner.

12  I'd like to see it.  It's not going to be dealt with in this

13  informal manner.

14          But for the ones where there are inadequate

15  responses, time period for getting them?  Ms. Sharko is

16  suggesting a ten-day period, which already takes us well

17  beyond the 90 anyway, but okay.  Plaintiffs' response to that?

18          MS. PARFITT:  Yes, Your Honor, can you hear me?

19          THE COURT:  Yes.

20          MS. PARFITT:  All right.  Your Honor, a ten-day

21  response I think would be appropriate.

22          I was cut off, Your Honor, for a short period of

23  time, so perhaps Ms. O'Dell can fill in, but I'm not sure

24  whether or not we were able to give you as well our report

25  with regard to the numbers of individuals who have complied,

1    and I think that is important and that is something that

2    Ms. Daniel had as well.

3            But I think as to your immediate question, the ten

4    day, we should be able to remedy that.

5            THE COURT:  Okay.  All that you missed was with

6    regard to the medical records, it was acceptable to the

7    defendants that I said there be a certification submitted as

8    to whether the medical records were requested.

9            All right.  So ten days where we have inadequate

10   responses.

11           For those 13 cases where absolutely nothing was

12   provided, you're going to have to respond to the motion.  What

13   do they fall within?  Why don't we have responses at all from

14   these people?  Can't find them, their lawyers lost them?

15   Well, that's not the way it works, right?  That's too bad.

16           MS. PARFITT:  Your Honor, I would submit to the Court

17   that, actually, through the efforts of counsel over the last

18   few weeks, we probably had no less than five or six calls out

19   to all of the claim -- law firms that represent the claimants,

20   as well as numerous communications, and we have received a

21   very good response, and especially, since Your Honor has

22   received the letters, we have endeavored to determine exactly

23   what is outstanding and what is not outstanding, and the

24   reasons for the most part have been very meaningful.  They

25   have not been for lack of effort or lack of ordering records

1  pursuant to the orders of the Court back in May 15th and May

2  26th, so they've been timely ordered.  It's been much as the

3  Court has talked about, that there has just been an issue with

4  regard to through COVID, through other issues of getting

5  appropriate medical records.  They may have been uploaded and

6  they were uploaded in and named a different --

7           THE COURT:  I'm not talking about medical records.

8           I'm talking about the 13 cases that Ms. Sharko says

9  no information has been provided for 13 plaintiffs.

10  Ms. Sharko, isn't that correct, that's what you're talking

11  about?

12           MS. SHARKO:  That's correct.  And --

13           THE COURT:  Right.  So cases where nothing has been

14  provided.  I'm putting aside the medical records for now.

15           MS. PARFITT:  Understood.  And, Ms. Daniel, would you

16  be able to report on what we have understood has been the

17  response?

18           MS. DANIEL:  It's Sindhu Daniel, Your Honor.

19           For those 13 cases, Your Honor, I mean, we wouldn't

20  have -- it's really a case-by-case basis.  Right?  Some are --

21  we wouldn't know specifically as to why, but, obviously, you

22  know, those plaintiffs' counsel will have to come forward and

23  explain specifically why they've been unable to complete the

24  PPF, the Plaintiff Profile Form.  We wouldn't have that

25  specific knowledge.  But, unfortunately, it's a case-by-case

```
 1   basis.  People are deceased, people are missing.  Even their,
 2   you know, their decedents, the people who are taking over the
 3   case, are missing now, or are deceased as well.  So we have
 4   heard all iterations of these issues.  But I think Your Honor
 5   will see that every single -- every single one of the 13 cases
 6   is going to have a particular different issue.
 7           THE COURT:  So the --
 8           MS. PARFITT:  I'm sorry, Your Honor.  And the reason
 9   I was asking Ms. Daniel to speak is that there has been a
10   collective effort by all of us to reach out to those
11   individuals and to ascertain precise reasons, and Sindhu is
12   absolutely correct.  It's been -- it's very individual to the
13   law firm and very individual to the claimant.
14           There has been -- there have been private
15   investigators that have been sent out, that sort of
16   information.  So I think the Court will be satisfied when she
17   hears the responses that have been not just because of undue
18   delay or to prejudice the other side, but there have been
19   zealous efforts made to reach out to the clients, not only by
20   the individual law firm, but frankly, by the leadership in
21   order to respond to the Court in an appropriate manner and,
22   frankly, to respond to the defendants.
23           This is not a question where there has just been
24   delays and delays that create some type of prejudice or delay
25   in the process here.  We are as eager as the defendants are to
```

1    keep these cases moving.

2         THE COURT:  All right.  So the bottom line is with

3    regard to those 13 cases, they will proceed by formal motion,

4    and plaintiffs will respond to them.  So that's as to the 13.

5         Ms. Sharko, you'll submit to me an order with regard

6    to those cases for which you claim there are inadequate

7    responses, and then the ten-day-time period for responding to

8    them.  Okay?  Ms. Sharko, yes?

9         MS. SHARKO:  Yes.

10        THE COURT:  Okay.  Then, with regard to the medical,

11   we have resolved that by saying there is to be a certification

12   as to when the requests were made for each of those cases for

13   which medical records have not been received or received late,

14   let's say within the last week.  When can that certification

15   be provided?

16        MS. O'DELL:  Your Honor, if we could have ten days to

17   do that?  This is Leigh O'Dell.

18        THE COURT:  Yes.

19        MS. O'DELL:  That would be great.  And I understand

20   there are only about 23 instances where medical records are

21   deficient at this point, and we'll be in touch with those

22   counsel and the certifications should be easily accomplished

23   in the ten days.

24        THE COURT:  Okay.  So, can I have a breakdown at this

25   point then?  And I don't know who it's going to be, if it's

```
 1   Ms. Sharko, whoever.  We have 13 cases with nothing.  I think

 2   you told me you're down to about 20-some I guess with the

 3   medical not being available there.  How many inadequate

 4   response cases do we have, Ms. Sharko?

 5           MS. SHARKO:  We sent out -- so we have 32 cases with

 6   no records at all, but I guess we're in the ballpark.  We sent

 7   out 169 notices where we thought the responses were lacking in

 8   a very material way.  I believe that some of those have been

 9   cured.  Ms. Brennan may have a more up-to-date number.

10           THE COURT:  Ms. Brennan?

11           MS. BRENNAN:  Hi, Your Honor.

12           The 169 is down, but I've only heard from a handful

13   of plaintiffs' counsel as to whether or not they have actually

14   cured, so we are keeping track of that data up to the moment

15   with the vendor.

16           THE COURT:  You don't have a ballpark number then of

17   where you are, of those who are still not compliant?

18           MS. BRENNAN:  Not right now, no.

19           THE COURT:  Okay.

20           MS. DANIEL:  Your Honor, it's Sindhu Daniel for

21   plaintiffs.

22           We have also worked very closely with MDL Centrality.

23   That is the website that houses all of the PPFs.  Our

24   understanding is that 83 cases still have a blank response,

25   and that means that there is one question or more that is
```

 1   blank in the PPF.  That doesn't mean they didn't prove it.

 2   And it could be as immaterial as height, weight, something

 3   like that.  And I don't mean to say it's immaterial, but it

 4   could be just a blank response.  There are 83 blank responses.

 5            Additionally, I think Ms. O'Dell went into we have 23

 6   cases that are missing a medical record, and so, you know,

 7   counsel has worked very diligently in these cases.  You know,

 8   it was -- the numbers were a little higher previously, and we

 9   have really worked those numbers down on the plaintiffs' side

10   to get to a position where we are here, where only 23 are

11   missing a medical record.

12            THE COURT:  All right.  So I think we have resolved

13   the issues and at the moment we are only going forward with

14   one motion, and that is as to the 13 cases.

15            While I have you on the line, anything else that we

16   need to discuss?  Because we did not have obviously a status

17   conference set up because we're waiting for some of this

18   process to occur to see what's next, so anything else that you

19   want to address with me today or -- and, if not, then we will

20   probably set something up now so we can have a better

21   discussion when these things are resolved.  Is there anything

22   else you need to --

23            MS. O'Dell:  Your Honor, yes.

24            MS. SHARKO:  Not from the defense.

25            MS. O'DELL:  Yes.  This is Leigh O'Dell, Your Honor,

1  for the Plaintiffs' Steering Committee.  At the end of May,

2  the Plaintiffs' Steering Committee filed a motion to establish

3  a common benefit holdback --

4       THE COURT:  I've got it.  It's being worked on.  I

5  know it's there.

6       MS. O'DELL:  Thank you very much.  And, Your Honor,

7  the reason I raise this is there's -- I've been provided

8  information about settlements that are imminent with firms

9  other than leadership that's on this call, and so it seems to

10 be a more timely issue, and so we appreciate the Court's

11 attention to that matter.

12      THE COURT:  Okay.  There are a lot of priorities

13 right now in my court, so -- okay?

14      MS. O'DELL:  I'm sure that's -- and of course, Your

15 Honor, right now all we're seeking is a holdback.  We know

16 that there will be much more briefing on the actual common

17 benefit, the application, distribution, et cetera.  We are

18 just -- we're trying to just maintain the status quo for the

19 future.  So thank you.

20      THE COURT:  Okay.  Anything else?

21      MS. SHARKO:  No.  Thank you.

22      MS. O'DELL:  Not for the plaintiffs, Your Honor.

23      THE COURT:  It's been a more than difficult time for

24 our court this summer, in many ways, besides COVID.  So we're

25 treading water, getting things done, moving ahead.  We've got

 1    decisions to make.  So, you know, we have been hit pretty

 2    hard.  But I will get to it.  So, okay.

 3            MS. O'DELL:  Thank you very much.

 4            MS. PARFITT:  Thank you.

 5            THE COURT:  And, unfortunately, because of my role,

 6    it means I take a lot more of that time than others on the

 7    court might be doing with some of these issues, as being

 8    Chief.

 9            Okay.  What's a good time to check in for a status

10    then?

11            MR. PLACITELLA:  The only thing I would say, Your

12    Honor -- this is Chris Placitella -- I can't even imagine what

13    you've gone through this summer, in light of everything, can't

14    even imagine.

15            THE COURT:  It has been a time, and still is.

16            MR. PLACITELLA:  Yes.

17            THE COURT:  And a lot of our mission is and things

18    are dealing with security right now and have been -- lots and

19    lots of our time.  So, anyway, for another day.

20            But we're working.  I think we've done 1500 Zoom

21    conferences this summer.  I do at least two a day, a plea or

22    sentencing, and trying to keep our criminal cases afloat by

23    Zoom.  I've even gone in three times for in-person sentencings

24    for those who are not in custody, so we're moving, and we're

25    doing things.

```
 1              What's a good time for a first status?  How much time

 2    would you like to kind of figure out what you're seeing and

 3    what's next?

 4              MS. SHARKO:  Maybe the first week in October?  And,

 5    hopefully, if we don't have all the cases picked for the next

 6    pool, we'll have many of them.

 7              THE COURT:  Well, believe it or not, I'm doing a

 8    virtual patent trial then, the first one in our district, so

 9    that's not going to happen.

10              MS. SHARKO:  Okay.

11              THE COURT:  I could get you on --

12              MS. PARFITT:  [Audio distortion]

13              THE COURT:  Go ahead.  What was that?  You want to do

14    something middle October?

15              MS. O'DELL:  Yes, Your Honor, that would be good.

16              THE COURT:  Okay.  So how about the 13th?  Jackie,

17    October 13th?

18              THE COURTROOM DEPUTY:  Okay.  Same thing, like a Zoom

19    call?

20              THE COURT:  Yes.

21              THE COURTROOM DEPUTY:  Okay.  11:00?

22              THE COURT:  Sure.  Is that good for everybody?

23              MS. SHARKO:  No, I'm sorry.  I have another

24    conference on the 13th at 11.  So any other day.

25              THE COURT:  How about in the afternoon?  How about
```

```
 1   the afternoon?  2:00?

 2            MS. SHARKO:  Sure.

 3            THE COURT:  2:00 on the 13th.  And then I'll let you

 4   all know how a virtual patent trial with witnesses from Japan

 5   and Great Britain went.  Some days we start in the afternoon

 6   because it's 5 a.m. in Japan.  So we'll see how it goes.  I'll

 7   let you know.  Hey, we have to be creative, right?  And do

 8   these.  Okay.

 9            All right.  We'll convene then and -- the one thing

10   about the Zoom, at least, look, it does let us get on, so if

11   you've got a problem, I'll try and deal with it as it arises

12   so we don't let too much time go on, so we can really move

13   this forward, right?

14            Okay.  I heard the word "settlement."  Anybody

15   talking about settlement in my cases?  No?

16            MS. O'DELL:  I would say, Your Honor, hope springs

17   eternal, but there is nothing to report, you know.

18            THE COURT:  Chris Placitella, did I hear you're

19   settling state cases or is that a rumor?

20            MR. PLACITELLA:  There are state cases that have

21   resolved in more than one jurisdiction is my understanding.

22            THE COURT:  Your cases, I heard that you had cases

23   that were settling.  Did you have cases that settled?

24            MR. PLACITELLA:  I have cases that I'm not at liberty

25   to discuss in public.
```

```
 1              THE COURT:  So somebody had information that was
 2    inside being shared with me, okay, that I shouldn't have known
 3    about.  Okay.  I hear it.  I didn't have any particulars.  I
 4    just heard it involved you, so okay.  Fair enough.  I won't
 5    put you on the spot today.
 6              Okay.  Thanks, everybody.  I'm glad that you're well
 7    and on the phone with us today or on your iPads, computers,
 8    whatever.  We'll keep pushing along.  We'll get to a point at
 9    some point when people get back to the courtroom, right?
10              MULTIPLE VOICES:  Thank you.
11              THE COURT:  Okay.  If I could ask my staff to stay
12    on, everybody else can get off, just my staff stay on, please.
13    Thanks.
14              (The proceedings concluded at 2:01 p.m.)
15              -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -
16
17              I certify that the foregoing is a correct transcript
18    from the record of proceedings in the above-entitled matter.
19
20    /S/ Carol Farrell, NJ-CRCR, FCRR, RDR, CRR, RMR, CRC, CRI
      Court Reporter/Transcriber
21
22    September 28, 2020
          Date
23
24
25
```

*United States District Court*
*District of New Jersey*