```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY


 _____

                                        CIVIL DOCKET NUMBER:
 IN RE:  JOHNSON & JOHNSON
 TALCUM POWDER PRODUCTS                 3:16-md-2738-FLW-LHG
 MARKETING, SALES PRACTICES
 AND PRODUCTS LIABILITY                 STATUS CONFERENCE VIA
 LITIGATION                             REMOTE ZOOM VIDEOCONFERENCE


 _____


        Clarkson S. Fisher Building & U.S. Courthouse
        402 East State Street
        Trenton, New Jersey  08608
        September 15, 2020
        Commencing at 1:30 p.m.


 B E F O R E:             THE HONORABLE FREDA L. WOLFSON,
                          CHIEF UNITED STATES DISTRICT JUDGE


 A P P E A R A N C E S:


        ASHCRAFT & GEREL, LLP
        BY:  MICHELLE A. PARFITT, ESQUIRE
        1825 K STREET, NW
        WASHINGTON, DC  20006
        For the Plaintiffs

        BEASLEY ALLEN LAW FIRM
        BY:  PATRICIA LEIGH O'DELL, ESQUIRE
        218 COMMERCE STREET
        P.O. BOX 4160
        MONTGOMERY, AL  36104
        For the Plaintiffs


               Carol Farrell, Official Court Reporter
                      cfarrell.crr@gmail.com
                          856-318-6100

    Proceedings recorded by mechanical stenography; transcript
             produced by computer-aided transcription.
```

*United States District Court*
*District of New Jersey*

```
 1   A P P E A R A N C E S (Continued):

 2
         GRANT & EISENHOFER, P.A.
 3       BY:  SINDHU SUSAN DANIEL, ESQUIRE
         123 JUSTISON STREET, 6TH FLOOR
 4       WILMINGTON, DE  19801
         For the Plaintiffs
 5
         COHEN, PLACITELLA & ROTH, PC
 6       BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE
         127 MAPLE AVENUE
 7       RED BANK, NJ  07701
         For the Plaintiffs
 8
         FAEGRE DRINKER BIDDLE & REATH LLP
 9       BY:  SUSAN M. SHARKO, ESQUIRE
              JESSICA LEIGH BRENNAN, ESQUIRE
10       600 CAMPUS
         FLORHAM PARK, NJ  07932
11       For the Defendant, Johnson & Johnson and
         Johnson & Johnson Consumer Companies, Inc.,
12       now known as Johnson & Johnson Consumer Inc.

13
         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
14       BY:  JOHN H. BEISNER, ESQUIRE
         1440 NEW YORK AVENUE, N.W.
15       WASHINGTON, DC  20005
         For Defendants, Johnson & Johnson and
16       Johnson & Johnson Consumer Companies, Inc.,
         now known as Johnson & Johnson Consumer Inc.
17

18

19

20

21

22

23

24

25
```

1         (PROCEEDINGS held via remote Zoom videoconference
2    before The Honorable Freda L. Wolfson, Chief United States
3    District Judge, at 1:30 p.m.)
4         THE COURT:  Okay.  So let's see.  I've got my
5    chambers on.  There's counsel.  You'll also see on everybody's
6    screen someone by the name of Carol Farrell.  We've done
7    Vinnie Russoniello, and he's retired.  Carol is my new court
8    reporter, and that's who you're seeing on the screen.  So I
9    think having to come back to court for things after the
10   pandemic, it was enough to make Vinnie retire, and after 18
11   years with me, the end of August he left.
12        So, but Carol is very tech savvy, and so she's even
13   got me on LiveNote on an iPad here, on realtime, so pretty
14   cool.
15        Okay.  Who's going to be talking today on each side?
16   For the plaintiffs, who is going to be speaking?
17        MS. PARFITT:  Your Honor, Michelle Parfitt -- [audio
18   distortion].  It's not good.  Your Honor?
19        THE COURT:  Yes.
20        MS. PARFITT:  It should be Michelle Parfitt, Leigh
21   O'Dell, and Sindhu Daniel.
22        THE COURT:  I'm sorry.  Who else besides Ms. Parfitt
23   and O'Dell?  Who else?
24        MS. PARFITT:  Sindhu Daniel.
25        THE COURT:  You're muted.  What is it?

```
 1            MS. PARFITT:  Sindhu Daniel.
 2            THE COURT:  Okay.  Who is going to be speaking for
 3  defendant?
 4            MS. SHARKO:  Susan Sharko, Jessica Brennan, and John
 5  Beisner.
 6            THE COURT:  Okay.  Good enough.
 7            All right.  Anyone who is not speaking, please mute
 8  your phone.  Please mute.  Okay.  Thank you.
 9            All right.  So I asked for this conference today to
10  deal with the issue that was raised first by the letter of
11  September 8th from plaintiffs' counsel, and then Ms. Sharko
12  sent out something as well, and this is dealing with the issue
13  of the 90-day period to provide plaintiff profiles and medical
14  retrieval authorizations and produce core records.
15            Please mute, everybody mute.  When you're ready to
16  talk, we'll get you off of mute, okay?  It's just too much
17  feedback.  So, okay.  Ms. Parfitt, Ms. O'Dell, please mute.
18  Do you know how to do it?  Okay.  If you could, please.
19            All right.  So I have a question before we even go to
20  what it is that the defendants are looking to do, what's
21  really out there, what's not out there, some of the excuses
22  that have been given by some of the plaintiffs' counsel, and
23  the issue about the 90 days and producing records.
24            Just let me tell you my interpretation of the order
25  was when I said it was promptly to be done, I expected the
```

1  request to go out virtually immediately, within the beginning
2  of that period.  I understand we may not always get them back
3  within the 90 days, so it's not a drop-dead date of the
4  records had to be received within the 90 days, but I want to
5  know when the request went out to get them.  If I hear they
6  went out a week before the 90-day expiration, that to me does
7  not satisfy my order -- or two weeks before or 30 days.  It
8  should have gone out immediately.  So how am I going to get
9  that answer?  I need a certification as to anyone who didn't
10 produce the medical records when they were requested.
11            You want to respond to that?
12            MS. PARFITT:  Your Honor --
13            THE COURT:  Yes.  Who is speaking?  There is a lot of
14 feedback on that one.
15            MS. PARFITT:  This is me, Michelle Parfitt.
16            THE COURT:  Okay.
17            MS. PARFITT:  There seems to be some --
18            THE COURT:  There is a big echo when you speak.
19            MS. PARFITT:  How is this?
20            THE COURT:  Not good.
21            MS. PARFITT:  How is this?
22            THE COURT:  Yes.  Good.
23            MS. PARFITT:  How is this?
24            THE COURT:  Good.  Yes, that's fine.
25            MS. PARFITT:  I've lost you.  I've lost the Court.

1    THE COURT: Oh. She's lost us. I see her. I see
2 you. I see you, Ms. Parfitt. Can you hear me? Everybody
3 else hear me?
4    MS. O'DELL: Yes, Your Honor.
5    THE COURT: Yes. Well, Ms. O'Dell, can you respond
6 to that maybe, my question?
7    MS. O'DELL: I will do that, Your Honor. We -- what
8 I understand the Court to be asking for is a certification for
9 when the records are ordered. I think in many instances a
10 records request has been uploaded -- [interruption for
11 electronic noise] -- that in many instances a records request
12 has been uploaded to MDL Centrality to make that date known
13 already, but for those who have not provided medical records,
14 we can request a certification from plaintiffs' counsel. We
15 don't have any objection to that.
16    We have been in touch with plaintiffs' counsel with
17 PPF cases. I think we've had five or six Zoom calls. We've
18 had follow-up e-mails. They're well aware. And I think most
19 of these firms did comply and order promptly, and as soon as
20 they're receiving records, they are uploading them to the
21 portal.
22    THE COURT: Okay. Go ahead. Who is that?
23 Ms. Sharko?
24    MS. SHARKO: I was just going to say what Your Honor
25 proposes is satisfactory to us and I think solves the issue as

1  to medical records.
2          THE COURT:  Okay.  We're good on medical records
3  then.
4          We've got other situations where I think you've
5  indicated, Ms. Sharko, that essentially nothing has been
6  received for some of the plaintiffs; is that right?  I'm just
7  trying to figure out what the other issues are that we have.
8          Ms. Sharko, you're muted.  Okay.
9          MS. SHARKO:  Okay.  There are two groups of issues
10 left.
11         THE COURT:  Yes.
12         MS. SHARKO:  One are the people who did nothing.
13         THE COURT:  Right.
14         MS. SHARKO:  And those are the 15 cases in our motion
15 that are now down to 13.  And the other group are people who
16 we believe, on a first pass through the PFSs, failed to
17 respond to the most important questions, including the type of
18 cancer they have, things like that, an order compelling people
19 to do that and get their PFSs responsive within 10 days or so
20 would solve that problem, I think.
21         THE COURT:  Let me hear from plaintiffs' counsel.  In
22 lieu of the motion to dismiss, what I'm hearing is, if there
23 is compliance within an order that says compel and comply
24 within ten days, they can live with that.
25         Are you suggesting that, Ms. Sharko, as to all the

1   cases, some where there aren't appropriate answers, or does it
2   not include the 13 cases where nothing was provided?  Is it
3   everything or only the ones where inadequate responses are,
4   but some response was given?  Which is it, Ms. Sharko?
5           MS. SHARKO:  It's the ones where inadequate
6   responses, where there are blanks.  The people who did
7   nothing, our position is those cases should be dismissed now.
8           THE COURT:  Okay.  Got it.  So this is only as to the
9   others.
10          Look, I'm going to let your motion stand as to the 13
11  cases.  The plaintiffs can respond to it in a formal manner.
12  I'd like to see it.  It's not going to be dealt with in this
13  informal manner.
14          But for the ones where there are inadequate
15  responses, time period for getting them?  Ms. Sharko is
16  suggesting a ten-day period, which already takes us well
17  beyond the 90 anyway, but okay.  Plaintiffs' response to that?
18          MS. PARFITT:  Yes, Your Honor, can you hear me?
19          THE COURT:  Yes.
20          MS. PARFITT:  All right.  Your Honor, a ten-day
21  response I think would be appropriate.
22          I was cut off, Your Honor, for a short period of
23  time, so perhaps Ms. O'Dell can fill in, but I'm not sure
24  whether or not we were able to give you as well our report
25  with regard to the numbers of individuals who have complied,

1  and I think that is important and that is something that
2  Ms. Daniel had as well.
3              But I think as to your immediate question, the ten
4  day, we should be able to remedy that.
5              THE COURT:  Okay.  All that you missed was with
6  regard to the medical records, it was acceptable to the
7  defendants that I said there be a certification submitted as
8  to whether the medical records were requested.
9              All right.  So ten days where we have inadequate
10 responses.
11             For those 13 cases where absolutely nothing was
12 provided, you're going to have to respond to the motion.  What
13 do they fall within?  Why don't we have responses at all from
14 these people?  Can't find them, their lawyers lost them?
15 Well, that's not the way it works, right?  That's too bad.
16             MS. PARFITT:  Your Honor, I would submit to the Court
17 that, actually, through the efforts of counsel over the last
18 few weeks, we probably had no less than five or six calls out
19 to all of the claim -- law firms that represent the claimants,
20 as well as numerous communications, and we have received a
21 very good response, and especially, since Your Honor has
22 received the letters, we have endeavored to determine exactly
23 what is outstanding and what is not outstanding, and the
24 reasons for the most part have been very meaningful.  They
25 have not been for lack of effort or lack of ordering records

1  pursuant to the orders of the Court back in May 15th and May
2  26th, so they've been timely ordered.  It's been much as the
3  Court has talked about, that there has just been an issue with
4  regard to through COVID, through other issues of getting
5  appropriate medical records.  They may have been uploaded and
6  they were uploaded in and named a different --
7           THE COURT:  I'm not talking about medical records.
8           I'm talking about the 13 cases that Ms. Sharko says
9  no information has been provided for 13 plaintiffs.
10 Ms. Sharko, isn't that correct, that's what you're talking
11 about?
12          MS. SHARKO:  That's correct.  And --
13          THE COURT:  Right.  So cases where nothing has been
14 provided.  I'm putting aside the medical records for now.
15          MS. PARFITT:  Understood.  And, Ms. Daniel, would you
16 be able to report on what we have understood has been the
17 response?
18          MS. DANIEL:  It's Sindhu Daniel, Your Honor.
19          For those 13 cases, Your Honor, I mean, we wouldn't
20 have -- it's really a case-by-case basis.  Right?  Some are --
21 we wouldn't know specifically as to why, but, obviously, you
22 know, those plaintiffs' counsel will have to come forward and
23 explain specifically why they've been unable to complete the
24 PPF, the Plaintiff Profile Form.  We wouldn't have that
25 specific knowledge.  But, unfortunately, it's a case-by-case

1  basis.  People are deceased, people are missing.  Even their,
2  you know, their decedents, the people who are taking over the
3  case, are missing now, or are deceased as well.  So we have
4  heard all iterations of these issues.  But I think Your Honor
5  will see that every single -- every single one of the 13 cases
6  is going to have a particular different issue.
7         THE COURT:  So the --
8         MS. PARFITT:  I'm sorry, Your Honor.  And the reason
9  I was asking Ms. Daniel to speak is that there has been a
10 collective effort by all of us to reach out to those
11 individuals and to ascertain precise reasons, and Sindhu is
12 absolutely correct.  It's been -- it's very individual to the
13 law firm and very individual to the claimant.
14        There has been -- there have been private
15 investigators that have been sent out, that sort of
16 information.  So I think the Court will be satisfied when she
17 hears the responses that have been not just because of undue
18 delay or to prejudice the other side, but there have been
19 zealous efforts made to reach out to the clients, not only by
20 the individual law firm, but frankly, by the leadership in
21 order to respond to the Court in an appropriate manner and,
22 frankly, to respond to the defendants.
23        This is not a question where there has just been
24 delays and delays that create some type of prejudice or delay
25 in the process here.  We are as eager as the defendants are to

```
 1  keep these cases moving.
 2          THE COURT:  All right.  So the bottom line is with
 3  regard to those 13 cases, they will proceed by formal motion,
 4  and plaintiffs will respond to them.  So that's as to the 13.
 5          Ms. Sharko, you'll submit to me an order with regard
 6  to those cases for which you claim there are inadequate
 7  responses, and then the ten-day-time period for responding to
 8  them.  Okay?  Ms. Sharko, yes?
 9          MS. SHARKO:  Yes.
10          THE COURT:  Okay.  Then, with regard to the medical,
11  we have resolved that by saying there is to be a certification
12  as to when the requests were made for each of those cases for
13  which medical records have not been received or received late,
14  let's say within the last week.  When can that certification
15  be provided?
16          MS. O'DELL:  Your Honor, if we could have ten days to
17  do that?  This is Leigh O'Dell.
18          THE COURT:  Yes.
19          MS. O'DELL:  That would be great.  And I understand
20  there are only about 23 instances where medical records are
21  deficient at this point, and we'll be in touch with those
22  counsel and the certifications should be easily accomplished
23  in the ten days.
24          THE COURT:  Okay.  So, can I have a breakdown at this
25  point then?  And I don't know who it's going to be, if it's
```

1  Ms. Sharko, whoever.  We have 13 cases with nothing.  I think
2  you told me you're down to about 20-some I guess with the
3  medical not being available there.  How many inadequate
4  response cases do we have, Ms. Sharko?
5              MS. SHARKO:  We sent out -- so we have 32 cases with
6  no records at all, but I guess we're in the ballpark.  We sent
7  out 169 notices where we thought the responses were lacking in
8  a very material way.  I believe that some of those have been
9  cured.  Ms. Brennan may have a more up-to-date number.
10             THE COURT:  Ms. Brennan?
11             MS. BRENNAN:  Hi, Your Honor.
12             The 169 is down, but I've only heard from a handful
13 of plaintiffs' counsel as to whether or not they have actually
14 cured, so we are keeping track of that data up to the moment
15 with the vendor.
16             THE COURT:  You don't have a ballpark number then of
17 where you are, of those who are still not compliant?
18             MS. BRENNAN:  Not right now, no.
19             THE COURT:  Okay.
20             MS. DANIEL:  Your Honor, it's Sindhu Daniel for
21 plaintiffs.
22             We have also worked very closely with MDL Centrality.
23 That is the website that houses all of the PPFs.  Our
24 understanding is that 83 cases still have a blank response,
25 and that means that there is one question or more that is

1   blank in the PPF.  That doesn't mean they didn't prove it.
2   And it could be as immaterial as height, weight, something
3   like that.  And I don't mean to say it's immaterial, but it
4   could be just a blank response.  There are 83 blank responses.
5           Additionally, I think Ms. O'Dell went into we have 23
6   cases that are missing a medical record, and so, you know,
7   counsel has worked very diligently in these cases.  You know,
8   it was -- the numbers were a little higher previously, and we
9   have really worked those numbers down on the plaintiffs' side
10  to get to a position where we are here, where only 23 are
11  missing a medical record.
12          THE COURT:  All right.  So I think we have resolved
13  the issues and at the moment we are only going forward with
14  one motion, and that is as to the 13 cases.
15          While I have you on the line, anything else that we
16  need to discuss?  Because we did not have obviously a status
17  conference set up because we're waiting for some of this
18  process to occur to see what's next, so anything else that you
19  want to address with me today or -- and, if not, then we will
20  probably set something up now so we can have a better
21  discussion when these things are resolved.  Is there anything
22  else you need to --
23          MS. O'Dell:  Your Honor, yes.
24          MS. SHARKO:  Not from the defense.
25          MS. O'DELL:  Yes.  This is Leigh O'Dell, Your Honor,

1  for the Plaintiffs' Steering Committee.  At the end of May,
2  the Plaintiffs' Steering Committee filed a motion to establish
3  a common benefit holdback --
4             THE COURT:  I've got it.  It's being worked on.  I
5  know it's there.
6             MS. O'DELL:  Thank you very much.  And, Your Honor,
7  the reason I raise this is there's -- I've been provided
8  information about settlements that are imminent with firms
9  other than leadership that's on this call, and so it seems to
10 be a more timely issue, and so we appreciate the Court's
11 attention to that matter.
12            THE COURT:  Okay.  There are a lot of priorities
13 right now in my court, so -- okay?
14            MS. O'DELL:  I'm sure that's -- and of course, Your
15 Honor, right now all we're seeking is a holdback.  We know
16 that there will be much more briefing on the actual common
17 benefit, the application, distribution, et cetera.  We are
18 just -- we're trying to just maintain the status quo for the
19 future.  So thank you.
20            THE COURT:  Okay.  Anything else?
21            MS. SHARKO:  No.  Thank you.
22            MS. O'DELL:  Not for the plaintiffs, Your Honor.
23            THE COURT:  It's been a more than difficult time for
24 our court this summer, in many ways, besides COVID.  So we're
25 treading water, getting things done, moving ahead.  We've got

```
 1  decisions to make.  So, you know, we have been hit pretty
 2  hard.  But I will get to it.  So, okay.
 3          MS. O'DELL:  Thank you very much.
 4          MS. PARFITT:  Thank you.
 5          THE COURT:  And, unfortunately, because of my role,
 6  it means I take a lot more of that time than others on the
 7  court might be doing with some of these issues, as being
 8  Chief.
 9          Okay.  What's a good time to check in for a status
10  then?
11          MR. PLACITELLA:  The only thing I would say, Your
12  Honor -- this is Chris Placitella -- I can't even imagine what
13  you've gone through this summer, in light of everything, can't
14  even imagine.
15          THE COURT:  It has been a time, and still is.
16          MR. PLACITELLA:  Yes.
17          THE COURT:  And a lot of our mission is and things
18  are dealing with security right now and have been -- lots and
19  lots of our time.  So, anyway, for another day.
20          But we're working.  I think we've done 1500 Zoom
21  conferences this summer.  I do at least two a day, a plea or
22  sentencing, and trying to keep our criminal cases afloat by
23  Zoom.  I've even gone in three times for in-person sentencings
24  for those who are not in custody, so we're moving, and we're
25  doing things.
```

1                What's a good time for a first status?  How much time
2    would you like to kind of figure out what you're seeing and
3    what's next?
4            MS. SHARKO:  Maybe the first week in October?  And,
5    hopefully, if we don't have all the cases picked for the next
6    pool, we'll have many of them.
7            THE COURT:  Well, believe it or not, I'm doing a
8    virtual patent trial then, the first one in our district, so
9    that's not going to happen.
10           MS. SHARKO:  Okay.
11           THE COURT:  I could get you on --
12           MS. PARFITT:  [Audio distortion]
13           THE COURT: Go ahead.  What was that?  You want to do
14   something middle October?
15           MS. O'DELL:  Yes, Your Honor, that would be good.
16           THE COURT:  Okay.  So how about the 13th?  Jackie,
17   October 13th?
18           THE COURTROOM DEPUTY:  Okay.  Same thing, like a Zoom
19   call?
20           THE COURT:  Yes.
21           THE COURTROOM DEPUTY:  Okay.  11:00?
22           THE COURT:  Sure.  Is that good for everybody?
23           MS. SHARKO:  No, I'm sorry.  I have another
24   conference on the 13th at 11.  So any other day.
25           THE COURT:  How about in the afternoon?  How about

```
 1  the afternoon?  2:00?
 2          MS. SHARKO:  Sure.
 3          THE COURT:  2:00 on the 13th.  And then I'll let you
 4  all know how a virtual patent trial with witnesses from Japan
 5  and Great Britain went.  Some days we start in the afternoon
 6  because it's 5 a.m. in Japan.  So we'll see how it goes.  I'll
 7  let you know.  Hey, we have to be creative, right?  And do
 8  these.  Okay.
 9          All right.  We'll convene then and -- the one thing
10  about the Zoom, at least, look, it does let us get on, so if
11  you've got a problem, I'll try and deal with it as it arises
12  so we don't let too much time go on, so we can really move
13  this forward, right?
14          Okay.  I heard the word "settlement."  Anybody
15  talking about settlement in my cases?  No?
16          MS. O'DELL:  I would say, Your Honor, hope springs
17  eternal, but there is nothing to report, you know.
18          THE COURT:  Chris Placitella, did I hear you're
19  settling state cases or is that a rumor?
20          MR. PLACITELLA:  There are state cases that have
21  resolved in more than one jurisdiction is my understanding.
22          THE COURT:  Your cases, I heard that you had cases
23  that were settling.  Did you have cases that settled?
24          MR. PLACITELLA:  I have cases that I'm not at liberty
25  to discuss in public.
```

1  THE COURT: So somebody had information that was
2  inside being shared with me, okay, that I shouldn't have known
3  about. Okay. I hear it. I didn't have any particulars. I
4  just heard it involved you, so okay. Fair enough. I won't
5  put you on the spot today.
6  Okay. Thanks, everybody. I'm glad that you're well
7  and on the phone with us today or on your iPads, computers,
8  whatever. We'll keep pushing along. We'll get to a point at
9  some point when people get back to the courtroom, right?
10  MULTIPLE VOICES: Thank you.
11  THE COURT: Okay. If I could ask my staff to stay
12  on, everybody else can get off, just my staff stay on, please.
13  Thanks.
14  (The proceedings concluded at 2:01 p.m.)
15  - - - - - - - - - - - - - - -
16  
17  I certify that the foregoing is a correct transcript
18  from the record of proceedings in the above-entitled matter.
19  
20  */S/ Carol Farrell, NJ-CRCR, FCRR, RDR, CRR, RMR, CRC, CRI*
   *Court Reporter/Transcriber*
21  
22  *September 28, 2020*
        *Date*
23  
24  
25