"EXHIBIT 1"

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL NO. 2738 (FLW) (LHG) |
| THIS DOCUMENT ALSO RELATES TO:<br><br>JULIE MACLIN,<br><br>          Plaintiff,<br>v.<br><br>JOHNSON & JOHNSON, et. al.<br><br>          Defendants | Case No. 3:18-cv-00333-FLW-LHG |

## DECLARATION OF LAUREN PARKER IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I, LAUREN PARKER, STATE AND DECLARE AS FOLLOWS:

1. I am an Account Manager at Record Grabber, a record retrieval service located in Indianapolis, Indiana. The Morris Law Firm is one of my clients. This Declaration is made in support of Plaintiff Julie Maclin's (aka Julie Justice's) Opposition to Defendant's Motion to Dismiss the above-referenced lawsuit. The facts set forth in this Declaration are within my personal knowledge and, if called as a witness, I could and would competently testify as follows:

2. On September 3, 2020, I received a rush request from the Morris Law Firm for medical, billing, and pathology records for Decedent Patricia Ann Justice from Mark Messing, M.D., and Texas Health Harris Methodist Hospital (hereafter "HEB"). The Morris Law Firm provided me with a HIPAA authorization executed by Julie Maclin aka Julie Justice, who I understand is the surviving daughter of Patricia Ann Justice, deceased.

3. It has been my experience that once an order has been submitted, it normally takes between four to six weeks to obtain record from a medical provider.

4. Upon receipt of the order, my staff prepared and faxed the record requests to Dr. Messing's medical records and billing departments on September 4, 2020. That same day, the request for the HEB records was processed and faxed to the medical records and billing departments at the hospital.

5. On September 10, 2020, I received an invoice for billing records from HEB and made payment for those records through Healthmark the same day.

6. On September 14, 2020, I spoke with Deanna in ROI for Dr. Messing and confirmed the medical/billing requests had been received and had been sent to the copy service for processing. I left a message with Lexa Records, the custodian of records for Dr. Messing, asking for a return call regarding status.

7. On September 16, 2020, I contacted the custodian of records for HEB and asked if a copy of the decedent's death certificate would be sufficient to obtain

2

the requested records. The records clerk advised that since the patient is deceased, additional documentation like the Power of Attorney or other administrative papers would be required. I contacted the Morris Law Firm to provide them with this information.

8. On September 17, 2020, the Morris Law Firm asked that I try to get Dr. Messing's and HEB's records with a copy of the death certificate and without a Power of Attorney. In turn, I contacted the respective custodians of records to find out if the death certificate would suffice. I had to leave a message regarding this matter for both locations. I gave both HEB and Dr. Messing's office a few days to contact me back to confirm with their superiors that they could process these requests without the Power of Attorney paperwork.

9. On or about September 23, 2020, the Morris Law Firm phoned and e-mailed me requesting status.

10. On September 24, 2020, I left Deanna a message asking for confirmation on the status of this request and to see if we could get Dr. Messing's records on that date for decedent Patricia Ann Justice.

11. On September 24, 2020, I was advised by the custodian of records for HEB that in order to process my records request, HEB required a HIPAA authorization executed by the decedent's husband, along with a copy of the death

3

certificate and a copy of the husband's photo identification. I immediately contacted the Morris Law Firm to let them know what documentation would be required.

12. The very next day, on September 25, 2020, I received from the Morris Law Firm the HIPAA authorization signed by Mr. Justice with a copy of his driver's license. I immediately forwarded the documentation required by HEB to the custodian of records and asked that they expedite the request.

13. On September 30, 2020, I spoke to the records clerk at HEB and confirmed that they received the updated request with the required additional documentation and were in the process of processing the request. At that time, I was told that this request had been placed in the "urgent queue" for completion.

14. On September 30, 2020, I contacted the Custodian of Records for Dr. Messing, at which time I was advised that the records could not be released without either an authorization signed by the husband of decedent Patricia Ann Justice (because he was listed as the informant on the death certificate and he is the legal next of kin) or legal documents giving Julie Justice the authority to sign the release.

15. On October 1, 2020, I received the invoice for the medical records from HEB and mailed payment to the provider the same day.

16. On October 2, 2020, I updated the request with a HIPAA by the decedent's husband with a copy of his driver's license and the death certificate listing him as the informant. I then faxed these documents immediately to Lexa Records

4

and followed up with phone messages to both Deanna and Lexa Records asking for confirmation that the documentation provided would be sufficient to obtain decedent Patricia Ann Justice's medical and billing records from Dr. Messing. I gave both HEB time to receive our check that was mailed on October 2, 2020 and Lexa Records time to confirm that the updated documents received from the law firm would be sufficient. Over the years, I have encountered that all facilities handle requests differently. Every provider has different procedures and steps that they must take in processing requests. We allow this time gap so that providers can receive, understand, and fulfill requests correctly.

17. On October 7, 2020, I spoke with a records clerk at HEB and was told that the check I mailed on October 1, 2020 has not yet posted to the account. I was asked to allow a few more days for the check to be received in their department.

18. On October 7, 2020, I spoke with a processing clerk at Lexa Records, at which time I was told for the first time that Dr. Messing's records could not be released without the completion of their "patient deceased form." I e-mailed the form to the Morris Law Firm for completion.

19. On October 9, 2020, I received from the Morris Law Firm the "Patient Deceased Form" completed by Julie Justice.

20. On October 13, 2020, I spoke with Maggie at HEB and confirmed that HEB had received my payment on October 9, 2020; however, she informed me that

HEB's legal department had fifteen (15) business days to send us the records. She did state that she had requested that the records to be expedited and sent to us this week.

21. On October 15, 2020, I spoke with Alicia at HEB, who transferred me to Erin, the records manager. I left Erin a message asking if there was anything HEB could do to provide me with the records by the end of day on October 16, 2020. Erin did not return my call.

22. On October 15, 2020, I left a message asking for a Lexa Records clerk contact me immediately to see if I could pay for Dr. Messing's records/bills over the phone so as to be able to provide them to the Morris Law Firm, no later than October 16, 2020.

23. On October 16, 2020, I spoke with Lexa Records and was told for the first time that the sensitive information area on the HIPAA authorization needed to be checked off. I immediately contacted the Morris Law Firm to advise them of this new requirement. The Morris Law Firm was immediately responsive and provided me with the requisite authorization that complied with Lexa Record's requirement, which I in turn instantly forwarded to Lexa Records.

24. On October 19, 2020, I was finally to confirm with HEB that decedent Patricia Ann Justice's medical records were forwarded to me by mail today. I

currently am attempting to compel HEB to produce the records to me digitally so they may be provided to the Morris Law Firm today.

25. On October 19, 2020, I spoke with Lexa Records and confirmed that they were processing the request for Dr. Mark Messing's office. I was told that they could have an invoice to us within the next 5-7 business days. We were told that we could provide payment over the phone and receive documents through fax on the same day.

26. In my six years of obtaining records for my clients, I have rarely encountered a more difficult experience in obtaining a decedent's medical records on behalf of a family member. This process has been a protracted ordeal, which I am still in the process of trying to resolve with these two providers.

I declare under penalty of perjury under the laws of the States of California and North Carolina that the foregoing is true and correct.

Executed this 19th day of October, 2020, at Indianapolis, Indiana.

By: _____
Lauren Parker, Declarant