# Exhibit 2

**Susan M. Sharko**
Partner
susan.sharko@faegredrinker.com
973-549-7350 direct

**Faegre Drinker Biddle & Reath** LLP
600 Campus Drive
Florham Park, New Jersey  07932
+1 973 549 7000 main
+1 973 360 9831 fax

September 22, 2020

**VIA ELECTRONIC MAIL**

P. Leigh O'Dell, Esq.
Beasley Allen Crow Methvin
Portis & Miles, P.C.
218 Commerce Street
Montgomery, AL 36104

Michelle A. Parfitt, Esq.
Ashcraft & Gerel
4900 Seminary Road, Suite 650
Alexandria, VA  22311

Re:   *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*
        *MDL No. 2739*

Dear Counsel:

I write in response to your August 6, 2020 letter requesting seven additional defense company witness depositions.  The Johnson & Johnson defendants object to this duplicative and burdensome request.

To date, there have been approximately 90 days of deposition of current and former employees and/or corporate representatives of the Johnson & Johnson defendants.  Defendants' corporate representatives have testified in more than two dozen trials.  The depositions alone total more than 20,000 pages of testimony and adequately cover the topics for which you now seek additional depositions.

Testimony aside, the Johnson & Johnson defendants have produced more than two million pages of documents and data, collected from over 200 individuals and non-custodial sources.  The production covers all aspects of the products and goes well beyond scientific issues, including the following, some of which have no relevance to issues in the litigation:

- Mining, milling and manufacturing
- Sales and distribution
- Specifications, formulas
- Labeling and packaging
- Marketing
- Testing
- Regulatory

ACTIVE.124918728.01

P. Leigh O'Dell, Esq.
Michelle A. Parfitt, Esq.

-2-

September 22, 2020

- o Post market surveillance
- o Health and safety
- o 2019 voluntary recall of Lot 22318RB of Johnson's Baby Powder
- o 2020 Discontinuance of talc-based Johnson's Baby Powder in the US and Canada

As you know, where as here there is mass tort litigations with thousands of cases, each litigant, lawyer or coordinated proceeding does not get his or her "own" deposition. This is particularly true where your law firms have been at the forefront of litigation in multiple fora. It is patently unfair to require witnesses, here mostly retired people, to sit through multiple, repetitive depositions. Any potential information learned through the seven newly requested depositions would be duplicative of discovery already obtained by plaintiffs over the course of many years of discovery. Plaintiffs have failed to articulate how this additional discovery will add anything new or different beyond the already extensive discovery and testimony to date.

By way of example and not limitation, looking at your proposed 30(b)(6) topics:

**a. J&J/JJCI's policies and procedures for risk assessment and risk mitigation for cosmetic products over the period of time Johnson's Baby Powder and Shower to Shower were used by women in these MDL proceedings;**

**b. J&J/JJCI Risk Assessment and Risk Mitigation Committees for cosmeticproducts over the period of time Johnson's Baby Powder and Shower to Shower were used by women in these MDL proceedings**.

While we do not agree with some of plaintiffs' characterizations in these topics, any relevant facts pertaining to them have already been the subject of deposition testimony. As you know, Dr. John Hopkins has sat for *dozens* of days of deposition (including in the MDL) and has testified at trial many times. These subject matters have been extensively addressed by him from his perspective of having had direct involvement with talc and safety issues historically. In addition, Dr. Susan Nicholson has also testified numerous time at deposition (including in the MDL) and trial. She too has testified as to these subject matters from her perspective as Vice President of Safety Surveillance and Risk Management. There are no reasonable areas of inquiry that have not already been covered.

**c. J&J/JJCI advertising and advertising strategies for Johnson's Baby Powder and Shower to Shower over the period of time Johnson's Baby Powder and Shower to Shower were used by women in these MDL proceedings;**

This was the subject of two days of deposition of a 30(b)(6) equivalent deposition taken by your colleague Joe Satterley on these very same issues. The transcripts cover over 500 pages of testimony. In addition, as you should be aware from your review of the Defendants' production, extensive searches have been conducted for copies of advertisements, marketing plans and related materials. These were all produced in advance of the deposition and a number of them have been the subject of testimony both in depositions of company employees and at trials.

**d. The yearly and quarterly sales of J&J/JJCI Johnson's Baby Powder and Shower to Shower for the period of time those body powders were used by women in these MDL proceedings**

ACTIVE.124918728.01

P. Leigh O'Dell, Esq.
Michelle A. Parfitt, Esq.

-3-

September 22, 2020

    The data that are reasonably available to Defendants on this topic have already been included in Defendants' document production and there is nothing to be gained from a deposition on the matter. If, after reviewing the data, you believe that there is additional information that is needed, we can address that informally.

    As to the specific individuals you identified, we disagree that their depositions are warranted in light of the extensive depositions record in these cases and the roles of these individuals.

    For example, Michael Chudkowski has been retired since 2001. There is nothing additional to be gained by eliciting testimony that necessarily relies wholly on Mr. Chudkowski's memories of events that took place twenty or more years ago.

    Dr. Jijo James, who was Chief Medical Officer for J&J Consumer between 2014 and 2017, was involved in talc issues at only a very high level. However, his direct report, Dr. Susan Nicholson, was extensively involved in talc issues during this time frame. As described above, Dr. Nicholson has testified at length in this litigation.

    Additionally, it is our understanding that Helen Han Hsu was only peripherally involved in issues pertaining to Johnson's Baby Powder or Shower to Shower, and her involvement was limited to a relatively short period of time in the early 2000s. Our understanding is consistent with the documents to or from her that are in Defendants' production. I note that, while investigating her involvement, we discovered that the wrong custodial file was inadvertently collected years ago. Apparently there is more than one Helen Hsu who has worked for Defendants. We are in the process of correcting that inadvertent error and will produce the correct custodial file in the next few weeks. While we do not expect to identify documents that will contradict our understanding of Helen Han Hsu's involvement, we will revisit this issue with you after her file has been produced and we have all had an opportunity to review it.

    The cumulative information that will be derived from the requested depositions and any related document productions is disproportional to the burden that will be placed upon defendants to produce the witnesses for deposition and to collect, review, and produce any requested documents prior to those depositions. Defendants decline to produce witness in response to your letter.

Very truly yours,

*Susan*

Susan M. Sharko

ACTIVE.124918728.01