# Exhibit 5



**One Riverfront Plaza**
1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

February 6, 2018

**VIA ECF AND ELECTRONIC MAIL**
All Counsel of Record

Re: *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
<u>Case No. 3:16-md-02738-FLW-LHG</u>

Dear Counsel,

By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September 11, 2017 (D.I. 704), I was appointed as Special Master for the purpose of overseeing discovery disputes that may arise in the above-captioned multi-district litigation ("MDL"). This MDL contains product liability cases in which Plaintiffs allege that certain Johnson & Johnson products containing talcum powder (the "Products"), have been the cause of ovarian cancer for thousands of women who have used the Products.[1]

This letter order resolves disputes as submitted by the parties in various correspondence between January 5, 2018 and January 19, 2018 and discussed during the conference held on January 22, 2018. These disputes generally relate to Defendants' production of documents and the dates by which Plaintiffs are to serve expert reports on general causation. I have also considered the letter of Johnson & Johnson of January 24, 2018, Plaintiffs' responsive letter of January 30, 2018, and the proposed stipulated product testing protocol between Plaintiffs and Johnson & Johnson.

In previous case management conferences, the Court has called for staging of discovery,

---

[1] I do not provide a detailed factual and procedural background, as I write for the benefit of the Court and the parties, all being familiar with the facts of this case.

February 6, 2018
Page 2

with the initial focus on the area of general causation. In short, Plaintiffs' initial burden will be to prove that there is a causal relationship between the use of the Products and ovarian cancer. This necessarily requires scientific proof of causation by expert testimony. Defendants intend to challenge Plaintiffs' ability to prove causation and urge the Court to permit the filing of dispositive motions ("Daubert Motions") at the earliest opportunity, as the decision on those motions may provide an efficient resolution of the causation issues, which, they argue, will be dispositive of the case.

By order of September 7, 2017, the Court required Plaintiffs to identify expert witnesses who may be called upon to render an opinion on general causation. Plaintiffs have identified 37 potential witnesses. The Court also ordered, by order dated November 9, 2017, that Johnson & Johnson and Imerys complete their production of documents by December 20, 2017 and January 5, 2018, respectively.

Plaintiffs raise issues that affect the discovery that may be required before any witnesses prepares an expert report: a) Plaintiffs argue that they must complete their review of all documents that have been produced by defendants, and defendants have only recently produced hundreds of thousands of documents; and b) the testing of product samples, which has been discussed at recent case management conferences, must be completed. Therefore, Plaintiffs seek several months to complete these tasks prior to submitting expert reports. Defendants, on the other hand, submit that general causation is not dependent on review of document discovery and argue that Plaintiffs request for months of time to serve expert reports is unreasonable.

As for the Plaintiffs' review of Defendants' documents, the issue is whether they are relevant to general causation or are materials that are part of the larger universe of discoverable material. The documents were maintained by Defendants over many decades. There is no question about their being generally discoverable, but whether they are relevant to the issue of general causation is debatable.

I conclude that the discovery of Defendants' documents ought not be conflated with the need for discovery on general causation, and therefore the Plaintiffs' review of these documents should not unreasonably delay their submission of expert reports. *See, e.g.*, Transcript of December 7 Conference, at 19 (Judge Wolfson: "Your experts are going to be opining on the science of that: What supports a connection between this product, whether pure talc, whether with asbestos in it or whatever it might be, can cause ovarian cancer? So that science focus, I don't see how this changed by any of the discovery.").

Case 3:16-md-02738-FLW-LHG Document 4173 Filed 02/06/18 Page 3 of 4 PageID: 9123060

February 6, 2018
Page 3

      Plaintiffs complain about the size of the Defendants' December document production and the burden reviewing those documents places on them. Specifically, Plaintiffs assert that within the last three months, the Johnson & Johnson Defendants have produced documents more than double the volume of documents previously produced, many of which were duplicates of documents already produced, but assigned different bates numbers. Plaintiffs argue that parsing through the documents, both old and new, creates an extraordinary waste on Plaintiffs' resources, and have requested that the cost of reviewing such new documents be shifted to the Johnson & Johnson Defendants.

      Defendants oppose Plaintiffs' requests for cost-shifting, but have offered to create a spreadsheet to assist Plaintiffs in identifying documents that were produced in duplication. Defendants' offer to share the burden by creating such a spreadsheet is intended to alleviate any undue burden Plaintiffs face in de-duplicating and reviewing the documents. Since all parties have expended great effort on this project, I find that the parties should bear their own costs during this production and review process. Therefore Plaintiffs' request to shift the cost of reviewing the recent production is denied.[2]

      Plaintiffs also request, and Defendants have opposed, that fact depositions be completed before expert reports can be finalized. Plaintiffs have produced a list of 62 employees/former employees of Defendants, whom they allege will provide them with information necessary for completion of expert reports on general causation.

      During the January 22 conference, I specifically asked why this discovery was necessary prior to production of causation expert reports. Plaintiffs have identified four categories of information that they believe will be obtained through these depositions: 1) composition of the Products; 2) testing of the Products by Defendants; 3) sampling of the Products by Defendants; and 4) any influence or bias in the published literature caused by Defendants.

      There is a middle ground that may accommodate the dispute. Indeed, Plaintiffs conceded during the January 22 conference that not *all* 62 depositions would be necessary to assist the experts in finalizing their opinions. Although it is reasonable that Plaintiffs may need to depose someone with knowledge on these topics to assist the experts

---

[2] And, as discussed herein, the time necessary to complete testing on samples of the Products will afford Plaintiffs additional time to review the documents produced prior to serving expert reports.

Case 3:16-md-02738-MAS-RLS Document 16105-5 Filed 12/16/20 Page 5 of 5 PageID: 122866
Case 3:16-md-02738-FLW-LHG Document 4173 Filed 02/06/18 Page 4 of 4 PageID: 12361

February 6, 2018
Page 4

in forming and finalizing opinions, seeking 62 depositions prior to serving expert reports is unreasonably burdensome and would be excessively time consuming. *See* Fed. R. Civ. P. 26(b)(1) (requiring discovery to be proportional to the needs of the case). Plaintiffs list of deponents is therefore stricken as overly broad, as they have not established a need for 62 depositions at this stage. I find that one deposition per Defendant should suffice to provide Plaintiffs with information on these areas of inquiry. Therefore, to the extent that depositions may be necessary, prior to completion of Plaintiffs' causation expert reports, Plaintiffs are entitled to one Rule 30(b)(6) witness per defendant, limited to the subjects described above. [3]

Next, Plaintiffs wish to test certain samples of the Products (the "Samples"), which exist in limited quantities for the relevant time periods. Plaintiffs allege this testing is necessary to determine the composition of the Products during the relevant time periods, which is crucial to expert opinions and ultimately a determination of general causation, *i.e.*, whether the Products cause ovarian cancer with perineal use. The Parties have agreed upon a testing protocol which will result in data that may be of interest and of need to the experts. The agreed upon protocol is expected to be approved by the Court. It contemplates testing to be commenced in about 45 days from Court approval. From a review of the testing protocol, it appears unlikely that test results will be returned to the Parties in less than 60 days from the commencement of testing (approximately mid-June 2018). Because I find that Plaintiffs' general causation experts may legitimately need the test results to form their opinions, expert reports cannot be served until after the testing is completed. Therefore, I will require Plaintiffs' expert reports on general causation to be served within 45 days from the date test results are received.

Finally, the Parties suggested that privilege logs will be served as discovery efforts are ongoing. I will address any issues relating to privilege logs that arise when the issues are ripe.

A case management order accompanies this letter opinion.

Very truly yours,

*s/ Joel A. Pisano*

Joel A. Pisano

cc: Honorable Freda L. Wolfson (via ECF and First-Class Mail)
Honorable Lois H. Goodman (via ECF and First-Class Mail)

---

[3] This Order does not speak to the need for other depositions as the case eventually moves into fact discovery. We will cross that bridge when we come to it.