```
 1                UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
 2

 3   _____

                                         CIVIL DOCKET NUMBER:
 4   IN RE:  JOHNSON & JOHNSON
     TALCUM POWDER PRODUCTS              3:16-md-2738-FLW-LHG
 5   MARKETING, SALES PRACTICES
     AND PRODUCTS LIABILITY              STATUS CONFERENCE VIA
 6   LITIGATION                          REMOTE ZOOM VIDEOCONFERENCE

 7   _____

 8
         Clarkson S. Fisher Building & U.S. Courthouse
 9       402 East State Street
         Trenton, New Jersey  08608
10       December 14, 2020
         Commencing at 3:00 p.m.
11

12   B E F O R E:             THE HONORABLE FREDA L. WOLFSON,
                              CHIEF UNITED STATES DISTRICT JUDGE
13

14   A P P E A R A N C E S:

15
         MOTLEY RICE LLC
16       BY:  DANIEL R. LAPINSKI, ESQUIRE
         210 LAKE DRIVE EAST, SUITE 101
17       CHERRY HILL, NJ  08002
         For the Plaintiffs
18
         ASHCRAFT & GEREL, LLP
19       BY:  MICHELLE A. PARFITT, ESQUIRE
         1825 K STREET, NW
20       WASHINGTON, DC  20006
         For the Plaintiffs
21

22
                 Carol Farrell, Official Court Reporter
23                      cfarrell.crr@gmail.com
                             856-318-6100
24
     Proceedings recorded by mechanical stenography; transcript
25           produced by computer-aided transcription.
```

*United States District Court*
*District of New Jersey*

```
 1   A P P E A R A N C E S (Continued):

 2
         BEASLEY ALLEN LAW FIRM
 3       BY:  PATRICIA LEIGH O'DELL, ESQUIRE
         218 COMMERCE STREET
 4       P.O. BOX 4160
         MONTGOMERY, AL  36104
 5       For the Plaintiffs

 6       LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
         BY:  CHRISTOPHER V. TISI, ESQUIRE
 7       316 SOUTH BAYLEN STREET
         PENSACOLA, FL  32502
 8       For the Plaintiffs

 9       COHEN, PLACITELLA & ROTH, PC
         BY:  CHRISTOPHER M. PLACITELLA, ESQUIRE
10       127 MAPLE AVENUE
         RED BANK, NJ  07701
11       For the Plaintiffs

12       FAEGRE DRINKER BIDDLE & REATH LLP
         BY:  SUSAN M. SHARKO, ESQUIRE
13       600 CAMPUS
         FLORHAM PARK, NJ  07932
14       For the Defendant, Johnson & Johnson and
         Johnson & Johnson Consumer Companies, Inc.,
15       now known as Johnson & Johnson Consumer Inc.

16
         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
17       BY:  JOHN H. BEISNER, ESQUIRE
              RICHARD T. BERNARDO, ESQUIRE
18       1440 NEW YORK AVENUE, N.W.
         WASHINGTON, DC  20005
19       For Defendants, Johnson & Johnson and
         Johnson & Johnson Consumer Companies, Inc.,
20       now known as Johnson & Johnson Consumer Inc.

21

22

23

24

25
```

```
 1              (PROCEEDINGS held via remote Zoom videoconference
 2    before The Honorable Freda L. Wolfson, Chief United States
 3    District Judge, at 3:00 p.m.)
 4              THE COURT:  Everybody is coming on board, okay.  So
 5    who is going to be speaking on the plaintiffs' side?
 6              MR. LAPINSKI:  Good afternoon, Your Honor.  This is
 7    Dan Lapinski from the Motley Rice firm.  How are you today?
 8              THE COURT:  I'm good, thank you.  You are going to be
 9    the one taking this on?
10              MR. LAPINSKI:  Yes, I will.
11              MR. PLACITELLA:  Your Honor, I may address some of
12    the issues as they interrelate between the two courts.
13              THE COURT:  Yes.
14              MR. PLACITELLA:  I probably have the most intimate
15    factual knowledge about what's going on, so I would probably
16    also speak, if that's all right.
17              THE COURT:  That's fine.  Okay.
18              And on the defense side?
19              MS. SHARKO:  Rich Bernardo will speak for us.
20              MR. BERNARDO:  Good afternoon, Your Honor.
21              THE COURT:  I'm trying to find you.  Oh, there you
22    are -- I'm sorry.
23              MR. BERNARDO:  I'm sorry.  Sorry.  I'll fix that.
24              THE COURT:  Thank you.  You're not "Matt Houston."
25              I'm sorry.  Who is that?  He's on mute also.  I can't
```

```
 1  even hear him.
 2          MR. BERNARDO:  Sorry, your Honor, I'm switching that.
 3  I'm using somebody's computer that's better at Zoom and I'm
 4  renaming it so it's not as confusing.
 5          THE COURT:  Okay.
 6          MR. BERNARDO:   There we go.
 7          THE COURT:  Okay.  So Mr. Bernardo, okay.  You'll be
 8  the one.
 9          All right.  So we have been getting along so well, so
10  it's so unfortunate that now we have an issue.  And I'm a
11  little concerned by it, I will admit, as to what's going on.
12  And I will also be candid that I have spoken with Judge
13  Viscomi who also asked me to relay that she's concerned, and
14  what we want to make sure is this is not gamesmanship going on
15  here, and so I'm letting you know that.  It's a reaction both
16  of us are having.
17          So tell me, maybe Mr. Placitella, you wanted to do it
18  since you're, as you said, so familiar with the facts here of
19  both matters, so go right ahead.
20          MR. PLACITELLA:  Well, good afternoon, Your Honor.
21          THE COURT:  Good afternoon.
22          MR. PLACITELLA:  I guess since I'm featured
23  prominently in letters to both courts, I should accept that as
24  a compliment.  I do --
25          THE COURT:  Actually, you're only featured in the
```

1  body of it because you didn't author the one to me.
2          MR. PLACITELLA:  Correct.
3          THE COURT:  Yes.
4          MR. PLACITELLA:  Correct.  For good reason.
5          It's ironic, I guess, that I'm the one discussing
6  letters to both courts as I've had no discussions with Johnson
7  & Johnson about privilege issues in any MDL capacity, and I
8  haven't filed any motion with Judge Viscomi in the State Court
9  over this issue.  Johnson & Johnson tried to pull me into the
10 issue with Judge Viscomi.
11         In fact, Mr. Bernardo and I, for many months, have
12 been working diligently to resolve privilege issues in the
13 State Court in my particular mesothelioma cases, and we have
14 literally worked out hundreds of documents without me ever
15 filing a motion.  And it's true that the issues may overlap,
16 but they certainly -- are certainly not the same.  And in my
17 State Court cases, I have actually avoided carefully any
18 discussion about withheld documents that may focus on ovarian
19 cancer because that's not an interest of mine in the State
20 Court litigation.
21         It's also worth noting that none of the parties with
22 motions actually filed before Judge Viscomi are on this call.
23 They have live mesothelioma cases before Judge Viscomi that
24 are given priority in terms of trial dates by order of the New
25 Jersey Supreme Court.

1                I also think it's somewhat ironic that the plaintiffs
2    here in the MDL, who have nothing pending before Your Honor,
3    have been accused of forum shopping, when the only application
4    that appears is in an unrelated matter in the State Court.
5                Right now we have, in the MDL, have been focused on
6    getting discovery done, getting our depositions done, and have
7    not raised any issues.  So --
8                THE COURT:  Let me ask you a question,
9    Mr. Placitella.
10               MR. PLACITELLA:  Yes.
11               THE COURT:  The letters indicate there are
12   approximately 75 documents that someone, not you, another
13   plaintiffs' counsel I guess, perhaps, has requested that Judge
14   Viscomi review for privilege.  Were any of those 75 ever the
15   subject of argument before Judge Pisano?
16               MR. PLACITELLA:  Not to my knowledge, not ever.
17               Almost all of these documents, as I read the motions
18   that were filed, after they were filed, relate to issues
19   involving third-party public relations people in the last two
20   to three years, and were not before Judge Pisano.
21               THE COURT:  Okay.  Are they documents that would
22   become relevant in my MDL?  For instance, if Judge Viscomi
23   were to rule on them and find that they were not privileged
24   and to be disclosed, are they documents that would be relevant
25   to this case?

1          MR. PLACITELLA:  I mean, I guess that's always
2  possible, but without actually seeing the documents, it's hard
3  to say.
4          MR. BERNARDO:  Your Honor, as the person who probably
5  has the most factual knowledge with respect to the documents,
6  I apologize for interrupting, but if I may address that.
7          MR. PLACITELLA:  That's okay.  You did interrupt, but
8  okay.
9          MR. BERNARDO:  I apologize.  I just -- I'm in a
10 position to answer the Court's question, so I just wanted to.
11         Your Honor, the answer is a definite yes.  These are
12 documents that, as Mr. Placitella said, at least in this first
13 round of challenge, deal with important broad-ranging
14 principles about the scope of privilege and whether even
15 outside counsel or in-house counsel's communications in
16 connection with the media coverage of the litigation,
17 including media coverage of various reports including on
18 *Daubert* rulings, would be protected.  They include challenges
19 to whether reports on verdicts and discussions among counsel
20 or communications with counsel and third party would be
21 protected.  They're all part of the overall theme that's being
22 tried in these cases, both mesothelioma and ovarian cancer
23 alike, as to the nature and extent of Johnson & Johnson's
24 continued communications through the public, through the
25 media, whether in response to the Reuters article that I'm

1  sure Your Honor is familiar with or the voluntary recall or
2  the discontinuance or other issues.  So there are very broadly
3  documents that will play prominently in both cases, should the
4  Court overrule their privilege nature.
5           THE COURT:  Okay.
6           MR. PLACITELLA:  I'm glad to hear that they might be
7  relevant, but there is no challenge here about these issues,
8  to be honest, and, you know, I don't know what to say.  Could
9  it possibly be relevant?  Of course, it possibly could be
10 relevant.  But that's --
11          THE COURT:  But, Chris -- okay, but Chris, so but the
12 issue is, I mean right now, maybe they weren't as interested
13 in them and that's not their focus, and the focus really has
14 become also doing the discovery that we've now set up for the
15 plaintiffs, that we've now randomized and where we're going,
16 the *Daubert* motion, so it may not be the focus.
17          On the other hand, the question is going to become if
18 these documents end up being disclosed -- and we don't know
19 what Judge Viscomi might decide with regard to whether they're
20 published or not, but if the plaintiffs in the State Court
21 case were successful in getting them disclosed, the
22 plaintiffs' counsel in here, in this case, wouldn't feel it
23 necessary to litigate it before me because they're saying,
24 guess what, they're out there, and we've got them and we're
25 going to use them, and so it never gets decided in my case and

1  the cat's out of the bag.  I mean, that's the problem here.
2              So this is what I am going to suggest to you.  I'm
3  certainly not having any kind of broad order about
4  coordination.  I like to do my cases my way, and let the State
5  Court do what it wants to do.  That's not my thing, and we may
6  see things differently.  But I can tell you Judge Viscomi is
7  concerned by this, and I think she was even thinking that
8  someone might withdraw the motion.  She said, well, why don't
9  they just go take their challenges to Judge Pisano; he's
10 already been deciding privilege questions.  But we're not
11 looking for work that isn't before us right now.
12             But what I'm going to say to you, and this is all
13 kind of informal at this point, is that if those challenges
14 persist and you are not able to whittle down any further,
15 because I've heard from you, Chris, and I guess from Rich,
16 that you have been working diligently, or the two parties have
17 in State Court, trying to narrow the issues.  You'll get to a
18 point, maybe you're already at that point with the 75, where
19 it's not going to be narrowed any further, that it is likely
20 that I will involve myself with Judge Viscomi or at least we
21 will be speaking about it, and then I'll decide if it's going
22 to be formalized into some order or not.  But we both feel
23 that we've got different cases -- hers is meso cases, mine is
24 ovarian -- but the documents we're talking about perhaps are
25 things that could be used in either, especially since asbestos

1  has been brought into this case, that it's not what it may
2  have been when it was first filed, and so there certainly is
3  some overlap.
4        I'm not prepared to say today that there is a
5  coordination order that's going to be entered.  I think right
6  now it's looser.  Judge Viscomi has already indicated she
7  won't even be addressing these until, at the earliest, in
8  January.  She has other things on her plate right now.  So, if
9  they persist before her, I think that we will probably be
10 talking, and I'll let you know what, if anything, I determine
11 to do at that point, because I have no doubt that in some way,
12 they'll make themselves into this case, and I don't want to be
13 deprived of the ability to decide that issue myself.  Okay?
14        MR. PLACITELLA:  I don't know if I took -- Dan --
15 Your Honor, Dan was supposed to take charge, and I don't know
16 if he wanted to add anything, but I understand where you are.
17        THE COURT:  I'm happy to hear from you.  Go ahead.
18        MR. LAPINSKY:  I made a note just to say what he
19 said, Your Honor.
20        THE COURT:  Okay.  Then we'll leave it at that.
21 Right now I don't think there is any decision that I find it
22 necessary to make today.  Let me see what's going to happen
23 before Judge Viscomi, but we're both aware.  She made me
24 aware, I guess in her case the defense counsel is from
25 McCarter & English, and it sounded like the letter she

1 received was almost identical to Ms. Sharko's, so no surprise,
2 no surprise, but, you know, so she's getting the same argument
3 before her as I have. And we're not strangers to each other
4 so we'll figure it out when she's ready -- she hasn't even
5 read the motions yet -- when she's ready to look at them, and
6 I'll let you know how we're going to go about that. But I
7 want to make sure that there is nothing that's done there that
8 will impact my case without me having the ability to have my
9 say on it. Okay?
10     MR. PLACITELLA: Fair enough.
11     THE COURT: Everybody is good? Everyone is healthy?
12     (Discussion held off the record.)
13     THE COURT: It's good to see everyone. Jackie
14 initially set this up as a conference call, and I said, oh,
15 no, no, get them on Zoom. I want to see their faces. And
16 Jackie came on too. Wayne, however, will not, unless he has
17 been dressed appropriately. The rest of us don't seem to mind
18 as much.
19     But seriously, it's really been with all of you a
20 pleasure to deal with you, you're all professionals, over the
21 last few years, so it's good to see you and to wish you in
22 person, sort of, happy holidays, safe holidays please, and
23 we're all looking forward to something very different in 2021.
24 All right? Okay. All right. Everyone take care.
25     (The proceedings concluded at 3:15 p.m.)

1        - - - - - - - - - - - - - - -

2

3           I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6   */S/ Carol Farrell, NJ-CRCR, FCRR, RDR, CRR, RMR, CRC, CRI*
    *Court Reporter/Transcriber*

7

8   *December 23, 2020*
           *Date*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25