# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 2738 |
| This Document Relates To All Cases | ) ) ) ) | |

## DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR LEAVE TO AMEND PLAINTIFFS' FIRST AMENDED MASTER LONG FORM COMPLAINT

FAEGRE DRINKER BIDDLE &
REATH LLP
A Delaware Limited Liability
Partnership
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000


SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Defendants Johnson &
Johnson and Johnson & Johnson
Consumer Inc.*

ACTIVE.125953613.01

# **TABLE OF CONTENTS**

**Page**

BACKGROUND ........................................................................................................4

ARGUMENT ............................................................................................................8

I.  PLAINTIFFS' PROPOSED INTENTIONAL SPOLIATION CLAIM IS UNTIMELY. ...............................................................................................9

II.  AMENDING THE MASTER COMPLAINT TO ASSERT A SPOLIATION CAUSE OF ACTION WOULD ALSO BE FUTILE. ...........10

    A.  The Proposed SAC Does Not Plausibly Allege That The J&J Defendants Had A Duty To Retain Evidence At The Time Of The Purported Spoliation. ..................................................................12

    B.  The Proposed SAC Does Not Plausibly Plead That The J&J Defendants Acted With The Requisite Culpable State Of Mind. .......18

    C.  The Proposed SAC Does Not Plausibly Allege That Any Spoliation Prejudiced Plaintiffs' Ability To Prove Their Underlying Claims. ...........................................................................24

CONCLUSION .......................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL CASES

*AMC Technology, LLC v. Cisco Systems, Inc.*,
No. 11-cv-3403 PSG, 2013 WL 3733390 (N.D. Cal. July 15, 2013) ...........17

*Anderson v. General Motors Corp.*,
No. 03-275 JJF, 2004 U.S. Dist. LEXIS 5430 (D. Del. Mar. 29, 2004) .........9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 11, 28

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 11, 28

*Benak v. Alliance Capital Management L.P.*,
435 F.3d 396 (3d Cir. 2006) ............................................................................7

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*,
247 F.R.D. 567 (D. Minn. 2007) ...................................................................17

*Caponegro v. United States Department of Housing & Urban Development*,
No. 15-3431 (KM) (MAH), 2019 U.S. Dist. LEXIS 183348
(D.N.J. Oct. 23, 2019) .....................................................................................7

*City of Philadelphia v. Lead Industries Association*,
994 F.2d 112 (3d Cir. 1993) ..........................................................................19

*CMR D.N. Corp. v. City of Philadelphia*,
703 F.3d 612 (3d Cir. 2013) .......................................................................8, 9

*Cordero v. Froats*,
No. 13-0031 JCH/GBW, 2015 WL 10990332
(D.N.M. Jan. 9, 2015) ..................................................................... 18, 21, 25

*Douglas v. Nesbit*,
No. 1:16-cv-01836, 2017 U.S. Dist. LEXIS 89107
(M.D. Pa. June 9, 2017) ...................................................................................7

ii

*Estate of Oliva ex rel. McHugh v. New Jersey*,
    604 F.3d 788 (3d Cir. 2010) ............................................................................9

*In re Ethicon, Inc. Pelvic Repair Systems Product Liability Litigation*,
    299 F.R.D. 502 (S.D. W. Va. 2014) ............................................................16

*Evans v. City of Philadelphia*,
    763 F. App'x 183 (3d Cir. 2019) ................................................................11

*Fraser v. Nationwide Mutual Insurance Co.*,
    352 F.3d 107 (3d Cir. 2003) ........................................................................8

*Galloway v. Swanson*,
    No. 5:09CV02834, 2011 U.S. Dist. LEXIS 133732
    (N.D. Ohio Nov. 18, 2011) ........................................................................11

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010) ......................................................................11

*Gregg v. SBC/Ameritech*,
    321 F. App'x 442 (6th Cir. 2009).............................................................10

*Jeffery-Wolfert v. UC Health*,
    No. 1:16cv656, 2018 WL 2137693 (S.D. Ohio May 9, 2018)......................11

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices &
    Products Liability Litigation*,
    220 F. Supp. 3d 1356 (J.P.M.L. 2016) ........................................................4

*Kalnoki v. First American LoanStar Trustee Services LLC*,
    No. 2:11-cv-02816-GEB-DAD, 2014 U.S. Dist. LEXIS 59506
    (E.D. Cal. Apr. 28, 2014) ............................................................................7

*Knight v. F/T Endurance*,
    No. A94-121 CV (JKS), 1996 U.S. Dist. LEXIS 11210
    (D. Alaska Feb. 6, 1996)............................................................................27

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) ..........................................................................8

ACTIVE.125953613.01

*Massaro v. Ftaiha*,
No. 95-7006, 1997 U.S. Dist. LEXIS 3275 (E.D. Pa. Mar. 13, 1997)............8

*In re Merck & Co. Securities, Derivative & "ERISA" Litigation*,
No. 05-1151 (SRC), 05-2367 (SRC), 2006 U.S. Dist. LEXIS 2345
(D.N.J. Jan. 20, 2006)..................................................................................7

*Mullins v. Ethicon, Inc.*,
No. 2:12-cv-02952, 2016 WL 6836941
(S.D. W. Va. Nov. 18, 2016) .............................................................. passim

*Newberry v. Silverman*,
789 F.3d 636 (6th Cir. 2015) .......................................................................19

*Oliva ex rel. McHugh v. New Jersey*,
604 F.3d 788 (3d Cir. 2010) ..........................................................................9

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*,
MDL No. 2385, 2013 U.S. Dist. LEXIS 137235
(S.D. Ill. Sept. 25, 2013)..............................................................................16

*Raiser v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*,
No. 2:10-CV-189, 2010 WL 4806740 (S.D. Ohio Nov. 16, 2010)...............13

*Roberts v. City of Fairbanks*,
No. 4:17-cv-0034-HRH, 2020 WL 5848661 (D. Alaska Oct. 1, 2020)........19

*Tremco Canada Division, RPM Can. v. Dartronics, Inc.*,
No. 13-1641 (SRC), 2013 U.S. Dist. LEXIS 78164
(D.N.J. June 4, 2013) ............................................................................ 12, 28

## STATE CASES

*Cambridge Mutual Fire Insurance Co. v. Fox Heating Service, Inc.*,
No. TTDCV136006920S, 2014 WL 1345316
(Conn. Super. Ct. Mar. 11, 2014) ......................................................... 18, 19

*Domand v. Caldera*,
No. CV116011514S, 2013 WL 6916752
(Conn. Super. Ct. Dec. 6, 2013) ...................................................... 13, 25, 26

iv

*Estate of Day v. Willis*,
　　897 P.2d 78 (Alaska 1995) ...........................................................................27

*Fifth Third Bank v. General Bag Corp.*,
　　No. 92793, 2010 WL 1920046 (Ohio Ct. App. May 13, 2010) ...................29

*Hazen v. Municipality of Anchorage*,
　　718 P.2d 456 (Alaska 1986) .........................................................................13

*Nichols v. State Farm Fire & Casualty Co.*,
　　6 P.3d 300 (Alaska 2000) ..............................................................................19

*Rizzuto v. Davidson Ladders, Inc.*,
　　905 A.2d 1165 (Conn. 2006) .................................................................. 13, 25

*State v. Carpenter*,
　　171 P.3d 41 (Alaska 2007) ............................................................................19

*State ex rel. Vedder v. Zakaib*,
　　618 S.E.2d 537 (W. Va. 2005) ......................................................................10

*Threadgill v. 6001, Inc.*,
　　No. A-1-CA-34785, 2018 WL 3869717 (N.M. Ct. App. July 2, 2018)........13

*Williams v. Werner Enterprises, Inc.*,
　　770 S.E.2d 532 (W. Va. 2015) ......................................................................13

*Woodell v. Ormet Primary Aluminum Corp.*,
　　No. 03 MO 7, 2005 Ohio App. LEXIS 3971 (Aug. 19, 2005)......................25

## OTHER AUTHORITY

Lisa Girion, *Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder*, Reuters (Dec. 14, 2018),
　　https://www.reuters.com/investigates/special-report/johnsonandjohnson-cancer/ ...........................................................................................................4

Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc. ("JJCI") (collectively, the "Johnson & Johnson defendants") respectfully oppose the Plaintiffs' Steering Committee's ("PSC") motion for leave to amend plaintiffs' First Amended Master Long Form Complaint to add a cause of action for spoliation of evidence.[1]

Nearly four years after the PSC filed the First Amended Master Long Form Complaint – and eight months after this Court issued its *Daubert* ruling – the PSC seeks to bring an independent cause of action for spoliation of evidence under the laws of Alaska, Connecticut, New Mexico, Ohio and West Virginia.  The crux of the PSC's proposed new claim is that:  (1) the J&J defendants allegedly failed to preserve historical talc samples that were tested for asbestos, the final results of the testing and underlying scientific data; (2) the J&J defendants allegedly failed to preserve documents from litigation primarily involving ***industrial*** talc products and ***non***-asbestos-related illnesses; and (3) a former J&J subsidiary allegedly destroyed documents relating to a mine that previously supplied talc used in Johnson's Baby

---

[1]    The PSC's motion also seeks leave to amend the Master Complaint to "[e]nhance" the previously asserted fraudulent concealment count and to include new allegations regarding purported "constituents in Johnson's talcum powder products."  (Mem. at 6, 7, 10.)  While the J&J defendants strongly dispute those proposed allegations, they are not the subject of this brief.  Instead, the J&J defendants will challenge them in future dispositive motion practice.

Powder prior to the mine's closure.  The Court should reject the PSC's proposal to add a spoliation claim because it is untimely and because the proposed amendment would be futile.

*First*, the motion comes too late.  The PSC knew or should have known of the purported basis for an alleged spoliation claim long before it brought the present motion, rendering the proposed amendment untimely.

*Second*, amendment would be futile because the SAC does not come close to plausibly alleging the duty, intentionality and prejudice elements of the relevant states' spoliation laws under Rule 8, much less under the heightened particularity standard of Rule 9(b), which governs spoliation claims.  Indeed, two courts have already rejected motions for spoliation sanctions based on largely the same proposed allegations as those being pressed here.  Order Regarding Mots. in Limine, for Summ. J., & for Missing Evid. Instrs., *Hayes v. Colgate-Palmolive Co.*, No. 16-CI-003503 (Ky. Cir. Ct. Apr. 12, 2019) ("*Hayes* Order") (attached as Ex. 1 to Certification of Jessica Brennan, Esq. ("Brennan Cert.")); Hr'g Tr. 17:17-22:25, *Rimondi v. BASF Catalysts, LLC*, No. MID-2912-17AS (N.J. Super. Ct. Law Div. Feb. 22, 2019) ("*Rimondi* Hr'g Tr.") (Ex. 2 to Brennan Cert.).

With respect to duty, both courts recognized that neither a 1969 document speculating about the conceivability of litigation nor the filing of isolated personal injury lawsuits involving **industrial** talc and **non-asbestos-related** injuries could

2

have caused the J&J defendants to "reasonably anticipate" litigation alleging that their cosmetic talc products cause asbestos-related cancer.  As to intentionality, both courts also found that there was no evidence that defendants destroyed any documents in bad faith – i.e., with a specific intent to defeat any plaintiff's underlying claims.  Notably, the proposed Second Amended Complaint does not even ***attempt*** to plead such culpability, instead alleging in boilerplate fashion with no factual support that defendants "failed to" or "intentionally" destroyed evidence.  Finally, with respect to prejudice, the *Rimondi* court reasoned that any loss of evidence (e.g., historical talc samples) could not have harmed the plaintiffs' ability to prove their claims because they not only had "samples that span decades of usage," but also had samples dating as far back as "the early 1900s" and perhaps even "the late 1800s."  *Rimondi* Hr'g Tr. 20:22-25, 22:2-22.  The proposed SAC does not seriously attempt to plead otherwise, again simply alleging with no factual support that the loss of evidence has somehow "limit[ed]" plaintiffs' ability to prove their cases (Proposed SAC ¶ 500), while also effectively pleading that the PSC ***already*** has evidence at its disposal to prevail on plaintiffs' claims.

For all of these reasons, as elaborated in greater detail below, the Court should deny the PSC's motion for leave to amend to assert a spoliation claim.[2]

---

[2]     In the event the Court grants the PSC's motion, the J&J defendants are prepared to move to dismiss the spoliation claim for failure to state a claim and, if necessary, for summary judgment.

3

## BACKGROUND

The Judicial Panel on Multidistrict Litigation created this MDL proceeding on October 4, 2016. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1357-58 (J.P.M.L. 2016). As noted in the PSC's motion, the original Master Complaint was filed on January 5, 2017. (Mem. at 1-2.) The PSC subsequently filed a First Amended Master Complaint on March 15, 2017. (*Id.* at 2.)

In the following year, Reuters published an article entitled "Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder." *See* Lisa Girion, *Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder*, Reuters (Dec. 14, 2018), https://www.reuters.com/investigates/special-report/johnsonandjohnson-cancer/. The piece featured commentary and pictures provided to Reuters by Mark Lanier, whose firm has served as a member of the Plaintiffs' Executive Committee ("PEC") in this MDL proceeding. Among the many highly-charged allegations included in that document was the accusation that "[a] J&J memo reveals that records of the Hammondsville mine, the main source of Baby Powder talc from 1966 until 1990, were ***destroyed*** by mine managers while J&J still owned the business." *Id.* (emphasis added). Around the same time that the Reuters article was published, the Lanier Law Firm – echoing the accusations made in the piece – started filing motions for spoliation sanctions on

4

behalf of plaintiffs in mesothelioma cases, including in a Kentucky case titled *Hayes v. Colgate-Palmolive Co.*, and a New Jersey action titled *Rimondi v. BASF Catalysts, LLC*.

Both motions were denied on multiple grounds. *See, e.g.*, *Hayes* Order at 37-39; *Rimondi* Hr'g Tr. 22:2-7. The courts first rejected the plaintiffs' argument that the J&J defendants had a duty to preserve evidence prior to a groundswell of litigation specifically alleging that defendants' ***cosmetic*** talc products caused asbestos-related illnesses. *Hayes* Order at 37-38; *Rimondi* Hr'g Tr. 18:12-20:8. Both courts also rejected the plaintiffs' argument that "evidence was lost or destroyed intentionally and in bad faith." *Hayes* Order at 38; *see also Rimondi* Hr'g Tr. 20:15-19 ("So the court finds that essentially the plaintiffs have failed to meet their burden of proof as to intentional bad faith or even negligently spoiling evidence; in fact, I saw the summary of samples that were produced in this case."). And the *Rimondi* court separately found that the plaintiffs in that case could not establish the element of prejudice as to historical talc samples that had not been retained because they "ha[d] the ability to have testing done on a ***whole series of available samples that span the decades***." *Rimondi* Hr'g Tr. 22:11-22 (emphasis added); *see also id.* 20:22-25 (noting that "there might be one in the late 1800s, but certainly in the early 1900s").

Approximately *two years* after the Reuters article was published and these prior spoliation motions were mounted and defeated, the PSC is seeking to add a claim for spoliation to the Master Complaint.  The proposed SAC recycles many of the same allegations advanced in the Kentucky and New Jersey cases, including, *inter alia*, that:  (1) J&J "failed to ensure the preservation of" historical talc "samples, TEM grids, count sheets, photomicrographs, and other documents generated" during testing (Proposed SAC ¶ 228; *see also id.* ¶¶ 203-204, 208); (2) J&J "historically preserved no records whatsoever from the majority of cases in which it has been sued for causing talc related injuries" (*id.* ¶ 215; *see also id.* ¶¶ 216-217); and (3) J&J allegedly "intentionally" destroyed records relating to its Hammondsville, Vermont mining operations (*id.* ¶ 211).

In support of its proposed allegations, the PSC cites and attaches no fewer than 17 exhibits, including documents produced by the J&J defendants during discovery and transcripts of seven depositions of J&J employees/corporate representatives.  (*See, e.g.*, *id.* ¶¶ 186-229.)  All of the produced documents have been in the possession of the PSC for several years.  In addition, five of the seven depositions – all of which were conducted in 2018 and 2019 – were taken by Mr. Placitella, who serves as MDL Plaintiffs' Liaison Counsel.  (*See, e.g.*, Proposed SAC Exs. 1, 2, 13, 83, 129.)

6

Because these materials are cited in – and attached to – the proposed SAC, the Court may properly consider their substance in assessing the PSC's motion for leave to amend. *See Caponegro v. U.S. Dep't of Hous. & Urban Dev.*, No. 15-3431 (KM) (MAH), 2019 U.S. Dist. LEXIS 183348, at *12 n.4 (D.N.J. Oct. 23, 2019) ("In evaluating whether a proposed amendment is futile, a court may consider the proposed pleading, [and] exhibits attached to that pleading . . . ."); *see also Douglas v. Nesbit*, No. 1:16-cv-01836, 2017 U.S. Dist. LEXIS 89107, at *7-8 (M.D. Pa. June 9, 2017) (in assessing a motion for leave to amend and accompanying proposed amended complaint, "the court may consider, in addition to the facts alleged on the fact of the complaint, any exhibits attached to the complaint, [or] 'any matters incorporated by reference or integral to the claim'") (citation omitted).  In addition, the Court may properly take judicial notice of certain public documents, including – for example, news articles and judicial rulings.  *See, e.g.*, *In re Merck & Co. Sec., Derivative & "ERISA" Litig.*, No. 05-1151 (SRC), 05-2367 (SRC), 2006 U.S. Dist. LEXIS 2345, at *19 (D.N.J. Jan. 20, 2006) ("In light of the Third Circuit's recent determination, this [c]ourt shall take judicial notice of the 40 news stories submitted by [d]efendants in their [m]otion to [d]ismiss, and by implication shall also judicially notice the 32 science and medical submissions, the 39 analyst reports and the composite charts in question.") (citing *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396 (3d Cir. 2006)); *Kalnoki v.*

7

*First Am. LoanStar Tr. Servs. LLC*, No. 2:11-cv-02816-GEB-DAD, 2014 U.S. Dist. LEXIS 59506, at *17-18 (E.D. Cal. Apr. 28, 2014) (taking judicial notice of prior filings by the plaintiffs in state trial court and rulings issued by that court in assessing whether they "have unduly delayed in seeking leave to amend" "since courts 'may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue'") (citation omitted).

## ARGUMENT

"When considering a motion for leave to amend, Rule 15 makes clear that permission to amend is not to be given automatically but is allowed only 'when justice requires.'" *Massaro v. Ftaiha*, No. 95-7006, 1997 U.S. Dist. LEXIS 3275, at *6-7 (E.D. Pa. Mar. 13, 1997) (citation omitted). As the Third Circuit has recognized, a district court properly exercises its discretion in ***denying*** a proposed amendment where the plaintiff has unjustifiably delayed in seeking amendment, *see CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013), or where the proposed amendment would be futile, *see Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming denial of motion to amend on both undue delay and futility grounds; "probably all of" the facts "were available when she [previously] amended her complaint" approximately two years prior to filing the motion to amend and "even if they were pled, these additional facts would not breathe life

8

into her RICO claim"); *Anderson v. Gen. Motors Corp.*, No. 03-275 JJF, 2004 U.S. Dist. LEXIS 5430, at *7-8 (D. Del. Mar. 29, 2004) ("[A] court should deny leave to amend if the moving party is guilty of undue delay . . . or his or her amended claims are futile."). As discussed below, the PSC's motion to add an independent claim for spoliation of evidence should be denied for *both* reasons.

## I. PLAINTIFFS' PROPOSED INTENTIONAL SPOLIATION CLAIM IS UNTIMELY.

The Third Circuit has "explained that a significant, unjustified, or 'undue' delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend." *CMR D.N.*, 703 F.3d at 629. "Following this principle, [the Third Circuit] ha[s] refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment." *Id.* at 629-30 (affirming denial of motion to amend because "Waterfront has proffered no good reason for failing to mention the width restriction in any of its court filings until . . . three years after it filed its original complaint"); *see also Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) ("Oliva's delay in seeking leave to amend was undue" because "[t]he presence of a potential First Amendment retaliation claim was or should

ACTIVE.125953613.01

have been apparent to him from at least the time that he filed his second amended complaint on February 3, 2003.").[3]

The closest the PSC comes to articulating *any* reason for seeking to introduce a spoliation claim into the Master Complaint at this juncture is that "newly learned facts show that a prima facie claim for spoliation seems to exist under the general principles for such a claim." (Mem. at 10.) But there are no newly learned facts alleged in their proposed SAC. To the contrary, *every* exhibit cited in support of the PSC's proposed pleading has long been in the possession of MDL counsel, including transcripts of depositions taken by Mr. Placitella as long ago as *2018*. For this reason alone, the motion should be denied.

## II. AMENDING THE MASTER COMPLAINT TO ASSERT A SPOLIATION CAUSE OF ACTION WOULD ALSO BE FUTILE.

The motion should also be denied because amendment would be futile. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted,' and is analyzed under the same legal sufficiency

---

[3]   Notably, state and federal courts have repeatedly denied belated motions to amend complaints to add claims for spoliation where the purported bases for such claims "should have been apparent to" the plaintiff well before the filing of the motion. *See, e.g.*, *State ex rel. Vedder v. Zakaib*, 618 S.E.2d 537, 542-43 (W. Va. 2005) ("[W]e find that, in the absence of a valid reason, a delay of two years and three months from the time [p]etitioner became aware of a potential claim for spoliation of evidence until the time she moved to amend her complaint to assert such a claim is unreasonable and constitutes a lack of diligence."); *Gregg v. SBC/Ameritech*, 321 F. App'x 442, 449 (6th Cir. 2009) (per curiam) (similar).

ACTIVE.125953613.01

standard as a Rule 12(b)(6) motion." *Evans v. City of Phila.*, 763 F. App'x 183, 185-86 (3d Cir. 2019). In other words, a plaintiff seeking to amend her complaint for the purpose of adding a new cause of action must satisfy the "pleading standards" enunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *see Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176-77 (3d Cir. 2010).

Under these standards, a plaintiff must not only "nudge[] [the proposed] claim[] across the line from conceivable to plausible," *Great Western Mining & Mineral Co.*, 615 F.3d at 177 (quoting *Twombly*, 550 U.S. at 567, 570), but do so without relying on "any conclusory allegations," *id.* at 178; *see also, e.g.*, *Jeffery-Wolfert v. UC Health*, No. 1:16cv656, 2018 WL 2137693, at *5 (S.D. Ohio May 9, 2018) (because the plaintiff failed to plausibly allege intentionality and prejudice, her "spoliation claim would not survive a motion to dismiss and such an amendment would therefore be futile"). Moreover, claims that sound in fraud, such as intentional spoliation of evidence, are subject to a higher pleading standard – i.e., the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *See Galloway v. Swanson*, No. 5:09CV02834, 2011 U.S. Dist. LEXIS 133732, at *21-24 (N.D. Ohio Nov. 18, 2011) (dismissing claim of spoliation because it was not pled "with particularity" under Rule 9(b)). Importantly,

11

"[s]tatements which parrot the element of a claim without asserting facts to support that element do not satisfy the minimal pleading standard of Rule 8(a), much less the particularity requirements of Rule 9(b)." *Tremco Can. Div., RPM Can. v. Dartronics, Inc.*, No. 13-1641 (SRC), 2013 U.S. Dist. LEXIS 78164, at *9 (D.N.J. June 4, 2013).

In its motion, the PSC asserts that its "research has identified multiple states that specifically recognize an independent cause of action for spoliation" (i.e., Alaska, Connecticut, New Mexico, Ohio and West Virginia).  (Mem. at 8-9.) However, as elaborated below, even a cursory review of the proposed SAC makes clear that the PSC does not come close to plausibly alleging three essential elements of spoliation under each of the relevant states' laws:  (1) that the J&J defendants had a duty to preserve evidence; (2) that they destroyed evidence with the requisite culpable intent; and (3) that any spoliation prejudiced plaintiffs' ability to prove their claims.

A.    **The Proposed SAC Does Not Plausibly Allege That The J&J Defendants Had A Duty To Retain Evidence At The Time Of The Purported Spoliation.**

Amendment of the Master Complaint to add a spoliation claim would first be futile because the proposed allegations do not support a plausible basis for imposing a duty to preserve evidence during the time of the alleged spoliation.

ACTIVE.125953613.01

"The tort of intentional spoliation is designed to preclude a party from destroying evidence with the intent to harm another party's ability to bring or defend a legal claim.  But the tort is not intended to unduly interfere with the rights of individuals to dispose of their property lawfully." *Williams v. Werner Enters., Inc.*, 770 S.E.2d 532, 542 (W. Va. 2015).  Accordingly, a product-liability defendant only has a duty to preserve evidence where it "perceived or . . . suspected impending future litigation" related to the product in question.  *Id.* ("Because there is no evidence of record to say Werner was aware, informed, perceived, or had any knowledge that would lead it to the conclusion the plaintiffs had a pending or potential suit when it destroyed the tractor-trailer, the circuit court was correct in granting summary judgment.").[4]

---

[4]     *See also, e.g.*, *Domand v. Caldera*, No. CV116011514S, 2013 WL 6916752, at *3 (Conn. Super. Ct. Dec. 6, 2013) (unpublished) (one "essential" element is the "defendant's knowledge of a pending or impending civil action involving the plaintiff'") (quoting *Rizzuto v. Davidson Ladders, Inc.*, 905 A.2d 1165, 1179 (Conn. 2006)); *Raiser v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 2:10-CV-189, 2010 WL 4806740, at *5 (S.D. Ohio Nov. 16, 2010) (denying proposed amendment because, *inter alia*, "[p]laintiff fails to articulate any facts in support of the allegation that [d]efendants should have been aware that litigation was probable"); *Threadgill v. 6001, Inc.*, No. A-1-CA-34785, 2018 WL 3869717, at *4 (N.M. Ct. App. July 2, 2018) (unpublished) (element of intentional spoliation is "the existence of a potential lawsuit" and "the defendant's knowledge of the potential lawsuit") (citation omitted); *Hazen v. Mun. of Anchorage*, 718 P.2d 456, 464 (Alaska 1986) (spoliation was actionable because "prospective false arrest and malicious prosecution actions were valuable ***probable expectancies***") (emphasis added).

ACTIVE.125953613.01

According to the PSC, "Johnson & Johnson has had the duty to preserve evidence and documents relevant to foreseeable litigation, including the responsibility to suspend any document destruction policies beginning 1969, and certainly no later than 1971." (Proposed SAC ¶ 186.)  With respect to the J&J defendants' supposed duty to preserve in 1969, the PSC relies on a 1969 J&J letter stating that "it is not inconceivable that [J&J] could become involved in litigation in which pulmonary fibrosis or other changes might be rightfully or wrongfully attributed to inhalation of our powder formulations."  (*Id.* ¶ 189 (quoting Proposed SAC Ex. 81).)  As a Kentucky court recognized in denying spoliation sanctions in a talc mesothelioma case, the statement that litigation is "not ***inconceivable***" "falls short of a statement sufficient to support a finding that litigation was ***reasonably anticipated***."  *Hayes* Order at 37 (emphases added); *see also Rimondi* Hr'g Tr. 18:12-21 (rejecting any duty to preserve in 1969 "on the basis of that one document," unable "to find any case law that goes back to 1969 that would require something of that nature").  Accordingly, the document relied upon by the PSC is incapable of "support[ing] a finding that Johnson & Johnson had a duty to preserve evidence in 1969."  *Hayes* Order at 37.

Plaintiffs' allegation that J&J had a duty to preserve evidence "certainly no later than 1971" – when it first became involved in litigating "personal injury cases related to its talc products" (Proposed SAC ¶¶ 186, 191) – is similarly meritless.

14

The first specific lawsuit identified by plaintiffs – *Westfall v. Whittaker Clark & Daniels* (D.R.I.) – was not filed until 1979 (*see id.* ¶ 238), and plaintiffs do not even address the substance of the allegations in that action.  In truth, *Westfall* involved "alleged exposures to industrial" talc, which "is not at issue" in cosmetic talc litigation.  *Rimondi* Hr'g Tr. 19:12-15.  The same is true with respect to the handful of other talc lawsuits filed in the 1980s, which either involved ***industrial*** talc or ***talcosis***.  (*See, e.g.*, Proposed SAC ¶¶ 240-241, 243.)  *See also, e.g.*, *Hayes* Order at 37 ("[T]he 1970s and 1980s talc cases . . . involved either industrial talc or talcosis, and did not involve cosmetic talc or mesothelioma."); *Rimondi* Hr'g Tr. 19:24-20:2 ("There was also the *Gambino* case of 1983.  That case involved talcosis, did not involve mesothelioma or an asbestos-related illness for that matter.").  Because "[t]hese cases . . . involved issues different from the presence or absence of asbestos in Johnson & Johnson's cosmetic talcum powder products . . . they did not give rise to a duty to preserve the evidence" related to allegations that Johnson's Baby Powder is contaminated with asbestos and causes mesothelioma.  *Hayes* Order at 38.  It follows perforce that these irrelevant lawsuits did not give rise to a duty to preserve with respect to potential cosmetic talc litigation involving ***ovarian cancer*** – the subject of this MDL proceeding.

And while the PSC also identifies a handful of lawsuits filed in the 1990s involving the J&J defendants' cosmetic talc products and allegedly asbestos-

related injuries (*see, e.g.*, Proposed SAC ¶¶ 257-284), those cases, too, did not create a duty for the J&J defendants to preserve evidence potentially relevant to future litigation.  As another MDL court has recognized, the existence of a limited number of "isolated product liability" cases is not "good cause to implement ongoing, large scale document preservation measures" applicable to all future cases that may arise.  *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 513, 517 (S.D. W. Va. 2014).  Instead, a general duty to preserve in mass tort litigation is triggered, at the earliest, when a steady increase in filed cases "suggest[s] the looming prospect of substantial product liability litigation" involving a particular product.  *Id.*; *see also In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, 2013 U.S. Dist. LEXIS 137235, at *36, *42 (S.D. Ill. Sept. 25, 2013) (existence of prior one-off cases involving "allegations . . . identical to the allegations at issue in th[e] MDL" was "not sufficient to trigger a general preservation obligation" applicable to all MDL actions).  Here, "discovery in the [1990s] cases was very limited and Johnson & Johnson was dismissed from the actions before trial," *Hayes* Order at 38, as confirmed by the proposed SAC.  (*See, e.g.*, Proposed SAC ¶¶ 250-284 (alleging purportedly "fraudulent dismissals . . . in the 1980s and 1990s").)

Finally, while plaintiffs seek to allege that the J&J defendants "failed to retain samples" "[e]ven after a litigation hold was finally issued in 2000" (*id.* ¶

16

205), the law did not require that they broadly retain *all* documents and materials that *might* theoretically have some tangential relevance to future litigation. *See Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 247 F.R.D. 567, 570-71 (D. Minn. 2007) (a party's duty to preserve "does not require the preservation of all potential evidence or '*every single scrap of paper*' in a business") (emphasis added) (citation omitted). Rather, "the scope of this duty is confined to what is reasonably foreseeable to be relevant to the action." *AMC Tech., LLC v. Cisco Sys., Inc.*, No. 11-cv-3403 PSG, 2013 WL 3733390, at *3 (N.D. Cal. July 15, 2013) (no duty to preserve documents that were "only tangentially related" to the litigation).

Here, the proposed SAC is devoid of any allegations capable of supporting the inference that the J&J defendants reasonably expected that historical talc samples would be sought by plaintiffs in future litigation. For example, there is no allegation of any specific requests for these materials *before* the J&J defendants started preserving them in 2017. (*See* Proposed SAC ¶ 198.) *See Best Buy*, 247 F.R.D. at 570 ("Absent specific discovery requests or additional facts suggesting that the database was of particular relevance to this litigation, the court determines that Best Buy did not have an obligation to maintain the *Odom* database at a monthly cost of over $ 27,000."). Accordingly, if the J&J defendants had a duty

with respect to any of these materials, that duty did not arise prior to 2017.  For this reason, too, the motion should be denied.

**B.  The Proposed SAC Does Not Plausibly Plead That The J&J Defendants Acted With The Requisite Culpable State Of Mind.**

Amending the complaint to add a spoliation claim would also be futile because the proposed allegations do not plausibly support an inference that the J&J defendants disposed of documents with the intent of defeating any plaintiff's claims.

To prevail on a claim for spoliation in the relevant states, "it must be shown that the evidence was destroyed with the ***specific intent*** to defeat a pending or potential lawsuit."  *Mullins v. Ethicon, Inc.*, No. 2:12-cv-02952, 2016 WL 6836941, at *4 (S.D. W. Va. Nov. 18, 2016) (emphasis added) (citation omitted). The intentionality standard requires "bad faith," *Cambridge Mut. Fire Ins. Co. v. Fox Heating Serv., Inc.*, No. TTDCV136006920S, 2014 WL 1345316, at *4 (Conn. Super. Ct. Mar. 11, 2014) (unpublished) – i.e., a "malicious intent to harm," *Cordero v. Froats*, No. 13-0031 JCH/GBW, 2015 WL 10990332, at *8 (D.N.M. Jan. 9, 2015).

The onus is on the plaintiff to "articulate[] facts that have the hallmarks of a plausible claim that [the defendant] ***intended*** to spoliate evidence in order to ***prevent*** the plaintiff[] from prevailing in th[e] action."  *Mullins*, 2016 WL 6836941, at *5 (emphases added).  This requires more than simply "mak[ing]

18

conclusory allegations that are unsupported by the facts alleged." *Cambridge Mut.*, 2014 WL 1345316, at *4 ("[E]ven construing the allegations in the plaintiff's complaint broadly, the plaintiff has failed to allege any facts that in any way support the plaintiff's legal conclusion that the defendant's actions were done in bad faith with the intent to deprive the plaintiff of its cause of action."); *see also, e.g.*, *Newberry v. Silverman*, 789 F.3d 636, 647 (6th Cir. 2015) (affirming dismissal of spoliation claim because plaintiff "has not alleged that Silverman in fact destroyed [the records] to hinder Newberry's claim, and Ohio law does not recognize a spoliation claim based on speculation and guesswork"); *Roberts v. City of Fairbanks*, No. 4:17-cv-0034-HRH, 2020 WL 5848661, at *7 (D. Alaska Oct. 1, 2020) (dismissing intentional spoliation claim because "plaintiffs have only made the conclusory allegation that this evidence was destroyed for the purpose of interfering with their prospective civil action"), *petition for cert. filed* (U.S. Nov. 20, 2020) (No. 20-711).[5]

---

[5]     In *Nichols v. State Farm Fire & Casualty Co.*, 6 P.3d 300 (Alaska 2000), the Alaska Supreme Court affirmed the dismissal of "intentional and ***reckless*** spoliation" claims where the plaintiff "opined only that State Farm acted negligently." *Id.* at 305 (emphasis added).  But *Nichols* did not squarely recognize the viability of such a claim, and it appears to be the only Alaska decision addressing so-called "reckless" spoliation.  Indeed, even the PSC's sole – and more recent – authority makes "clear" that one of the "elements of the spoliation tort" is that the defendant acted "***with the intent to disrupt [the plaintiff's] prospective civil action***."  *State v. Carpenter*, 171 P.3d 41, 64 (Alaska 2007) (emphasis added) (citation omitted) (cited in Mem. at 9).  Sitting in diversity, this Court should decline to expand Alaska's spoliation jurisprudence.  *See City of Phila. v. Lead*

For example, in *Mullins*, the plaintiffs asserted spoliation claims under West Virginia law arising out of defendant Ethicon's loss of documents from former company employees related to allegedly defective mesh products.  2016 WL 6836941, at *1, *5.  The "sole" allegation of intentionality was that "Ethicon has intended and/or intends to defeat [p]laintiffs' ability to prevail in this present action because evidence destruction and preservation failures continue to occur despite" prior judicial findings of spoliation.  *Id.* at *4 (citation omitted).  As the court explained, that "allegation simply d[id] not sufficiently allege the requisite specific intent element of the claim" because "Ethicon could have just as easily spoliated evidence through *negligent*" conduct, which was not actionable under West Virginia law.  *Id.* (emphasis added).  Moreover, while the plaintiffs peppered their motion with assertions that "large sets of documents ha[d] been 'lost' or 'conveniently destroyed,'" they were unable to point to a single "factual allegation support[ing] a reasonable inference that Ethicon spoliated *with the intent of preventing the plaintiffs from prevailing*."  *Id.* at *5 (emphasis added).

Here, the vast majority of spoliation-related allegations are bereft of *any* claim that any of the J&J defendants intentionally destroyed evidence – much less did so with the intent to defeat plaintiffs' ability to prevail in their lawsuits.  For

---

*Indus. Ass'n*, 994 F.2d 112, 115, 123 (3d Cir. 1993) ("A federal court may act as a judicial pioneer when interpreting the United States Constitution and federal law. In a diversity case, however, federal courts may not engage in judicial activism.").

ACTIVE.125953613.01

example, with respect to the purported spoliation of historical talc samples, the proposed SAC alleges that "those samples have not been produced" or that J&J "failed to" preserve that evidence.  (Proposed SAC ¶¶ 195-196.)  Such alleged conduct evinces (at most) negligence, ***not*** a "malicious intent to harm."  *Cordero*, 2015 WL 10990332, at \*8.  Indeed, the proposed SAC alleges that the samples were "not retained under the company's evidence retention schedules," which belies any claim that J&J engaged in intentional and bad-faith destruction of evidence.  *See Hayes* Order at 38 ("The [c]ourt also does not find that [the plaintiff] has shown a reasonable jury could conclude the evidence was lost or destroyed intentionally and in bad faith" because, *inter alia*, "the samples and related materials were discarded pursuant to standard retention policies.").

To the extent any of the spoliation allegations ***do*** attempt to plead intentionality, they are either far too conclusory to satisfy Rule 8 – much less the dictates of Rule 9(b) – or implausible in light of the exhibits attached to the proposed SAC.  For example, while the PSC alleges that "Defendant Johnson & Johnson intentionally failed to preserve relevant documents generated in litigation in a number of cases filed against it between 1960s to the 1990s" (Proposed SAC ¶ 229), the proposed SAC contains "no factual allegation [that] supports a reasonable inference that [J&J] spoliated with the intent of preventing the plaintiffs from prevailing," *Mullins*, 2016 WL 6836941, at \*5.  Instead, the PSC alleges that J&J

21

"has not located its records related to" a lawsuit known as *Joly* and purports to identify a handful of lawsuits involving unspecified talc-related allegations in which defendants "either lost or destroyed" litigation documents.  (Proposed SAC ¶¶ 214, 216; *see also id.* ¶ 215 (alleging that J&J "historically preserved no records whatsoever from the majority of cases in which it has been sued")).)  Not only are these conclusory allegations deficient under Rule 8 – and even more so under Rule 9(b) – but they are also "just as" consistent with alleged "negligent conduct" as they are with supposed bad faith.  *See Mullins*, 2016 WL 6836941, at *4.

Similarly, although the PSC alleges that former J&J employee John P. Schelz "intentionally" "destroyed the code keys to . . . 'round robin' testing results" in 1977 (Proposed SAC ¶¶ 225, 496), that allegation is implausible in light of the exhibits cited by the PSC in support of it.  Most notably, one of the exhibits – a 1978 letter in which Mr. Schelz, writing on behalf of a Cosmetic, Toiletry and Fragrance Association task force that conducted blinded, round-robin testing of various industrial manufacturers' talc products for asbestos – expressly states that "no talcum product failed" the testing performed in the study because "no product was found to contain asbestiform amphibole at a level equal to or greater than 0.5% by weight."  (Proposed SAC Ex. 169.)  The letter further explains the importance of disseminating the testing results applicable to each participant in a manner that protects the confidentiality of information regarding each participant's

22

particular product and specifies that the document used to identify which tested samples pertained to which manufacturer's product should be destroyed after the results are revealed to each individual participant.  (*Id.*)  This is the typical industry practice for conducting blind testing of multiple manufacturers' products and does not remotely support a plausible inference of "specific intent" to "defeat" ***any*** plaintiff's product-liability claims.

Finally, the same is true with respect to the proposed allegation that "[i]n 1989, after facing litigation related to its talc-based products for nearly two decades and anticipating further litigation, Johnson & Johnson intentionally destroyed records relating to its Hammondsville, Vermont mining operations." (Proposed SAC ¶ 211 (citing Proposed SAC Ex. 166).)  Exhibit 166 is a 1993 memo written by now former JJCI employee Robert Denton regarding his tour of the Hammondsville mine, in which he stated that "[t]he specifics of the mining operation at Hammondsville are uncertain, as most of the pre-Luzenac records were destroyed by the mine management staff just prior to the J&J divestiture and the Cyprus purchase."  (*See* Proposed SAC Ex. 166 at 3.)  But the comment about document loss plainly reflects that the documents were lost "just prior to the J&J divestiture and the Cyprus purchase" (*id.*) – i.e., "in anticipation of the closing of

ACTIVE.125953613.01

the mine where they were kept" as opposed to a "bad faith effort to avoid discovery," *Hayes* Order at 38.[6]

In sum, the proposed SAC "insufficiently allege[s] that [the J&J defendants] possessed the requisite intent" for a claim of spoliation. *Mullins*, 2016 WL 6836941, at *5. For this reason as well, any amendment to add a claim for spoliation would be futile.

### C.   The Proposed SAC Does Not Plausibly Allege That Any Spoliation Prejudiced Plaintiffs' Ability To Prove Their Underlying Claims.

Finally, the PSC's proposal to add a claim for spoliation would be futile for a third and independent reason:   the proposed SAC does not come close to plausibly alleging that any purported spoliation has actually prejudiced a single plaintiff's ability to prove her underlying claims.

---

[6]     The smattering of other alleged instances of spoliation are also woefully inadequate for similar reasons.  For example, the PSC alleges that J&J "once maintained a paper file documenting all of its telephone conversations with the FDA related to its talc-based cosmetic products dating to the early 1970s" – which "no longer exists." (Proposed SAC ¶ 218 (citing Proposed SAC Ex. 83 (2/19/19 Nicholson Dep. 48:9-15)).)  But nowhere does the PSC allege that the file was intentionally destroyed – let alone spoliated with the specific purpose of defeating plaintiffs' product-liability claims.  (*See id.*)  The proposed SAC also alleges that J&J "once maintained toxicology information in boxes and binders" – information that was "never disclosed."  (Proposed SAC ¶ 219 (citing Proposed SAC Ex. 13 (11/28/18 Musco Dep. 149:7-152:24)).)  But there is no allegation that such information was even spoliated, much less destroyed with the requisite intent. Moreover, the testimony cited by plaintiffs indicates that this information ***remains*** "in the toxicology department."  (Proposed SAC Ex. 13 (11/28/18 Musco Dep. 153:20-24).)

ACTIVE.125953613.01

All of the states at issue require evidence that the alleged spoliation harmed the plaintiff's ability to prosecute her underlying claims.  Moreover, the laws of Connecticut, New Mexico, Ohio and West Virginia "require[] an '*inability* to prevail in the civil action.'"  *Mullins*, 2016 WL 6836941, at *5 (emphasis added) (citation omitted).[7]  In these states, only evidence that is "vital" to the plaintiff's case can support a cause of action for spoliation.  *See id.*; *see also Woodell*, 2005 Ohio App. LEXIS 3971, at *32 (Because "numerous people testified of the statements that Woodell claimed were made about him during this labor dispute, even high-level supervisors . . . the need for either the strike log or the videotape is not *imperative* to the claims raised to the trial court or to this court.") (emphasis added).

Consistent with this standard, it is not enough to allege that missing evidence is "relevant, admissible, or even highly probative."  *Mullins*, 2016 WL 6836941, at *5.  Indeed, even "[t]he absence of direct evidence . . . is not . . . fatal to a plaintiff's claims."  *Domand*, 2013 WL 6916752, at *3 (citation omitted).

---

[7]    *See also, e.g.*, *Cordero*, 2015 WL 10990332, at *8 (a claim for spoliation in New Mexico requires a "causal relationship between the act of spoliation and the inability to prove the lawsuit"); *Domand*, 2013 WL 6916752, at *3 (Connecticut "requires the plaintiff to prove *a complete inability* to litigate his underlying cause of action.") (quoting *Rizzuto*, 905 A.2d at 1180 n.13); *Woodell v. Ormet Primary Aluminum Corp.*, No. 03 MO 7, 2005 Ohio App. LEXIS 3971, at *32-33 (Aug. 19, 2005) ("The lack of the alleged entries in the strike log or lack of videotapes does not *destroy* Woodell's ability to assert his claim.") (emphasis added).

ACTIVE.125953613.01

Accordingly, "the mere *possibility* that the plaintiffs will not succeed on their underlying claims absent the spoliated evidence cannot establish this necessary element; *actual* inability is required." *Mullins*, 2016 WL 6836941, at *5; *see also Domand*, 2013 WL 6916752, at *3 ("Even construed in the light most favorable to the pleader, the complaint does not imply that the plaintiff is completely unable to establish a prima facie case based solely on the claim that her case has been injured.  Although the plaintiff argues that she is entitled to every piece of available evidence to prove her case, that is not the standard for a spoliation of evidence claim.") (footnote omitted).

For example, in *Mullins*, beyond the plaintiffs' "pure legal recitation" of the prejudice element, "the only alleged factual information supplied state[d] that 'much' of the spoliated evidence [was] 'related' to key Ethicon employees." *Mullins*, 2016 WL 6836941, at *5.  However, "[t]he plaintiffs provide[d] no context for how the evidence [was] '***vital***' to each of their cases." *Id.* (emphasis added).  "In fact, the closest the plaintiffs c[a]me to discussing how 'vital' the evidence [was to their cases [was] to argue that Ethicon destroyed evidence that *may have* been useful to the plaintiffs when Ethicon destroyed certain [allegedly defective mesh] samples." *Id.*  As the court explained, the fact that "certain evidence *may have been helpful*" is not tantamount to pleading that the "same evidence was 'vital' to their claims." *Id.*  In short, "[t]he fact that the plaintiffs

26

'*may* be unable to prevail' d[id] not sufficiently allege an *actual* inability to prevail." *Id.*

While it does not appear that a complete inability to prevail is a required element of Alaska's spoliation doctrine, "[a]n action based on the tort of spoliation is meritless" under Alaska law "unless it can be shown that a party's underlying cause of action has been prejudiced by the spoliation." *Est. of Day v. Willis*, 897 P.2d 78, 81 (Alaska 1995). Although courts applying Alaska law have not clearly elucidated the parameters of this prejudice element, a plaintiff must prove that the purportedly spoliated "evidence hindered the claimant's ability to establish a *prima facie* case." *Knight v. F/T Endurance*, No. A94-121 CV (JKS), 1996 U.S. Dist. LEXIS 11210, at *27-28 (D. Alaska Feb. 6, 1996) (spoliation claim failed because "[e]ven if air had been let out of the remote control system during this two-day time period, however, it would not have prejudiced North Star's *prima facie* case").

Applying a similar standard in *Rimondi*, Judge Viscomi rejected the plaintiffs' request for spoliation sanctions in large part due to the lack of any prejudice. While the plaintiffs argued that missing talc samples hindered their ability to prove their claims, the court reasoned that they "nonetheless ha[d] an availability of samples that ***span decades of usage*** of the product as alleged by Mr. Rimondi." *Rimondi* Hr'g Tr. 22:2-7 (emphasis added). In addition, "the court

27

f[ou]nd[] persuasive the testimony of Dr. [William] Longo wherein . . . he basically says . . . the mines really don't change over a long period of time." *Id.* 22:7-10.  Thus, "while one may not have the samples that correspond with the documents that were produced in" Mr. Rimondi's case, that did not unfairly prejudice the plaintiffs' ability to prove their claims.  *See id.* 22:11-22.

Here, the PSC's proposed spoliation claim is destined to fail under ***any*** of the relevant states' laws because the proposed SAC does not adequately plead that the supposed spoliation has hindered plaintiffs' ability to prove their underlying claims – much less "sufficiently allege an *actual* inability to prevail."  Instead, the proposed SAC baldly asserts that plaintiffs "have been damaged as a result of [d]efendants' intentional spoliation because the absence of the spoliated evidence limits [p]laintiffs' ability to present and prove their cases."  (Proposed SAC ¶ 500.) But that is precisely the kind of "naked assertion[]" that cannot suffice to state a claim under Rule 8, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), much less under the even more exacting particularity standard of Rule 9(b), *see Tremco*, 2013 U.S. Dist. LEXIS 78164, at *9 ("Statements which parrot the element of a claim without asserting facts to support that element do not satisfy the minimal pleading standard of Rule 8(a), much less the particularity requirements of Rule 9(b).").

ACTIVE.125953613.01

Plaintiffs also allege in their proposed SAC that "[t]h[e] missing scientific data is of utmost importance to the fair and proper vetting of Johnson & Johnson's defense." (Proposed SAC ¶ 209.) But according to plaintiffs, "[t]he limited underlying scientific data that still exists" (i.e., the evidence that allegedly was not spoliated) "***confirms*** that the reports of 'no detectable' asbestos are belied by the underlying scientific data, which shows evidence of asbestos." (*Id.* (emphasis added).) By this logic, the PSC ***already has evidence*** at its disposal to prove plaintiffs' allegations, undermining the PSC's claim of prejudice. *See Fifth Third Bank v. Gen. Bag Corp.*, No. 92793, 2010 WL 1920046, at *7 (Ohio Ct. App. May 13, 2010) ("Because the information was available from other sources . . . appellant failed to establish a prima facie case for spoliation of evidence."). Indeed, as the court explained in *Rimondi*, cosmetic talc plaintiffs "have an availability of samples that span decades of usage of the product" – ***dating as far back as "the late 1800s"*** – meaning that any loss of evidence could not have seriously prejudiced their ability to pursue their claims. *Rimondi* Hr'g Tr. 20:15-25, 22:2-22 (emphasis added).

In sum, the proposed SAC does not plausibly allege the essential prejudice element of any spoliation claim under the relevant states' laws. For this reason as well, any amendment to add such a claim would be futile.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the PSC's motion for leave to amend to add a spoliation claim to the Master Complaint.

Dated: January 12, 2021   Respectfully submitted,

<u>/s/ *Susan M. Sharko*</u>
Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH
600 Campus Drive
Florham Park, New Jersey 07932
Telephone: 973-549-7000
Facsimile: 973-360-9831
E-mail:  susan.sharko@dbr.com

John H. Beisner
Jessica D. Miller
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-7000
Facsimile: 202-393-5760
E-mail:  john.beisner@skadden.com
E-mail:  jessica.miller@skadden.com

*Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

ACTIVE.125953613.01