# Exhibit 3



faegredrinker.com

**Susan M. Sharko**
Partner
susan.sharko@faegredrinker.com
973-549-7350 direct

Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey  07932
+1 973 549 7000 main
+1 973 360 9831 fax

December 22, 2020

**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**

Hon. Joel A. Pisano
Walsh Pizzi O'Reilly Falanga LLP
100 Mulberry Street, 15th Floor
Three Gateway Center
Newark, NJ  07102

Re: In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation, MDL No. 2738

Dear Judge Pisano:

      I am writing in response to the Plaintiff Steering Committee's ("PSC's") recent letter, seeking to take 30(b)(6) depositions on various topics, as well as individual corporate liability fact depositions of three current or former J&J or JJCI employees.  The PSC's letter essentially asks Your Honor and Chief Judge Wolfson to disregard the approximately **90 days of deposition testimony** from current and former employees and/or corporate representatives **totaling more than 20,000 pages of testimony**, which have been conducted to date in talcum powder cases across the country.  Proceeding down such a path would be inefficient and burdensome and would frustrate the very purpose of the talc multidistrict litigation ("MDL") proceeding, which is to "eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel, and the judiciary."  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1357-58 (J.P.M.L. 2016).  In truth, the PSC already has more deposition testimony than it could practically need to try any talc cases going forward, and no additional depositions are needed.

      To the extent the Court intends to allow additional deposition practice despite the extensive discovery already available to MDL plaintiffs, a more targeted approach would be appropriate.  To that end, we propose that the parties should first meet and confer on 30(b)(6) deposition topics and conduct any such depositions before moving to individual fact depositions.  If the PSC believes that individual fact depositions are still necessary after that process, it should be required to articulate a specific need with respect to such individuals.  At this point, it is difficult to conceive that such a need exists.  Each of the requested fact witnesses identified in the PSC's letter had minimal involvement in talc matters or has been retired from J&J for so long that he or she would no longer recall any

Hon. Joel A. Pisano -2- December 22, 2020

information probative of plaintiffs' claims.  The only reason these three individuals are listed is that plaintiffs' lawyers have taken so many depositions of current and former employees that the PSC was hard-pressed to come up with new names of people to depose.[1]

### I.     THE PSC HAS A TREASURE TROVE OF GENERAL LIABILITY DEPOSITION TESTIMONY.

The primary goal of an MDL proceeding is to streamline the discovery process by eliminating the need for unnecessary and costly duplication of effort with respect to generally-applicable discovery.  *See In re Johnson & Johnson Talcum Powder*, 220 F. Supp. 3d at 1357-58; *see also* Ann. Manual Complex Lit. § 22.33 (4th ed. May 2020 Update) (centralizing is intended to "serve[] judicial economy by avoiding duplication of discovery" and "conserv[e] the . . . resources of the parties, their counsel, and the judiciary"); *In re Wilson*, 451 F.3d 161, 166 (3d Cir. 2006) (noting the MDL was "effective in providing consistency and reducing duplication of effort and expense" regarding "pretrial proceedings on common factual questions").  Generally, the MDL court takes the lead on discovery, and that discovery is then used in cases around the country.  In this situation, however, the talc litigation has been proceeding for several years in state courts around the country, and there have been 11 ovarian cancer trials (9 of which were tried to verdict); thus, plaintiffs' request to start all over with 30(b)(6) depositions flies in the face of the efficiency goals of this MDL proceeding by disregarding the treasure trove of depositions that have already been conducted over the last several years.  Based on our calculations, approximately **90 days of deposition testimony** from current and former employees and/or corporate representatives, **totaling more than 20,000 pages of testimony**, have been conducted to date in the talc litigation generally.  Defendants' corporate representatives have also testified in more than two dozen talc trials.  On top of that, the J&J defendants have produced approximately 496,000 documents and data, constituting more than two million pages, that were collected from more than 200 individuals and non-custodial sources.

In its letter, the PSC essentially ignores all of the general liability depositions conducted in the ovarian cancer cases and downplays the depositions conducted in the mesothelioma litigation on the ground that they involved mesothelioma rather than ovarian cancer.  For example, the PSC ignores the fact that there have already been nine ovarian cancer cases tried to verdict against Johnson & Johnson, including multiple trials involving the Beasley Allen firm, the Lanier Firm and other very capable firms.  These

---

[1]     The PSC's request is particularly troubling because it fails to inform the Court that at the same time they are seeking additional depositions in this Court, the Beasley Allen firm is seeking *other* fact depositions in a Missouri state-court *ovarian cancer* case, including a deposition of a retired J&J in-house lawyer.  This sort of forum-shopping strategy – attempting to obtain depositions of different witnesses in different courts depending on what plaintiffs' counsel believe those courts will permit – is the antithesis of what MDL counsel should be doing to promote efficiency and consistency in the talc litigation.

Hon. Joel A. Pisano	-3-	December 22, 2020

trials involved extensive testimony – both pre-trial and at trial – regarding general liability issues, including, but not limited to, the issues for which the PSC now seeks testimony. Plaintiffs also ignore the depositions taken in this very MDL proceeding. The PSC has already deposed five 30(b)(6) witnesses – Tina French, Margaret Gurowitz, Donald Hicks, John Hopkins and Susan Nicholson – on a variety of topics. Dr. Hopkins testified for four days, totaling 1,207 pages of testimony, and Dr. Nicholson testified for two days, totaling more than 1,072 pages of testimony. Plaintiffs cannot seriously contend that they have been prevented from ascertaining information about the J&J defendants' alleged liability in ovarian cancer cases given the plethora of discovery conducted – and readily available to the PSC – in ovarian cancer cases specifically.

The PSC also argues that the vast majority of deposition testimony elicited during the numerous talc mesothelioma trials in New Jersey, California and multiple other state courts is somehow irrelevant because such cases involved mesothelioma, not ovarian cancer. But the PSC's own requested "topics" of examination on page 5 of their letter belie their argument. (*See* PSC's Letter at 5.) For example, J&J's alleged failure to conduct studies of the safety of its talc products; J&J's decision not to reformulate its talc products with cornstarch; J&J's alleged "collusion" (*id.*) with other talc manufacturers to prevent "*any* warnings to consumers regarding the *risks* of cosmetic talc use" (*id.* (emphases added)); and J&J's marketing of the products as "safe and pure" (*id.*) are all highly general topics that have been the subject of numerous depositions in mesothelioma cases, and testimony regarding these topics would apply equally in ovarian cancer cases.

Furthermore, the PSC's contention that they were prevented from taking J&J corporate witness testimony on seven separate topics misses the point. For example, the PSC asserts that it has not taken "any testimony of any individual J&J corporate employees" on the topic of marketing. (PSC's Letter at 5.) But marketing was the subject of two days of depositions of a 30(b)(6) equivalent deposition taken by the Kazan law firm, which produced more than 500 pages of testimony. Moreover, extensive searches have been conducted for copies of advertisements, marketing plans and related materials that were produced to plaintiffs, and marketing issues were addressed in a number of fact witness depositions as well. Thus, the PSC already has access to vast discovery on the issue of marketing.

Plaintiffs' request for a 30(b)(6) deposition on the topic of "[p]olicies and [p]rocedures for [r]isk [a]ssessment and [r]isk [m]itigation" (PSC's Letter at 7) has similarly been the subject of extensive deposition testimony. Dr. Hopkins, who had direct involvement with talc and safety issues for many years, has sat for 37 days of depositions (approximately 296 hours of testimony) – including four days in this MDL proceeding, as noted above – and has testified at trial many times. In addition, Dr. Nicholson has sat for 16 days of depositions (approximately 128 hours of testimony) – including two days in this MDL proceeding and five days in other ovarian cancer cases, as well as numerous ovarian cancer trials – to provide her perspective as Vice President of Safety Surveillance

Hon. Joel A. Pisano                              -4-                              December 22, 2020

and Risk Management. The amount of deposition testimony available to plaintiffs is staggering, and the scope of the depositions is comprehensive. At this point, there is nothing new under the sun: there simply are no reasonable areas of inquiry that have not already been covered.

In sum, any potential information obtained through the newly requested 30(b)(6) depositions would be duplicative of discovery already obtained by plaintiffs over the course of many years of discovery. The PSC has failed to articulate how this additional discovery would add anything new or different beyond the already extensive discovery and testimony that has been taken to date. Nonetheless, the J&J defendants will meet and confer with the PSC in good faith on topics for 30(b)(6) depositions in an attempt to narrow the list to topics that have not been fully addressed in prior corporate witness depositions if the Court finds such a course to be appropriate.

## II. ANY INDIVIDUAL FACT DEPOSITIONS SHOULD TAKE PLACE AFTER 30(B)(6) DEPOSITIONS UPON A SHOWING OF GOOD CAUSE.

The J&J defendants strongly believe that any individual fact depositions should not occur until the 30(b)(6) process concludes and plaintiffs demonstrate a legitimate need to depose specific individuals.

"Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 593 n.13 (2007) ("Rule 26 confers broad discretion to control the combination of interrogatories, requests for admissions, production requests, and depositions permitted in a given case; the sequence in which such discovery devices may be deployed; and the limitations imposed upon them."). Because "[t]he preferred approach for deposing a corporation is the use of Rule 30(b)(6)," it would be proper to "require [the PSC] to first take the Rule 30(b)(6) corporate deposition" and then "consider whether to" allow fact depositions. *Folwell v. Hernandez*, 210 F.R.D. 169, 173 (M.D.N.C. 2002) (holding that "if dissatisfied with the corporation's selection of [30(b)(6)] deponents, plaintiffs can then select" an additional witness for depositions). In fact, as one court noted, a party should "not [be] permit[ted] . . . to wear out or harass a corporation with a number of futile Rule 30(a)(1) depositions," and "[t]he consequence of plaintiffs' excessive use of Rule 30(a)(1) instead of using Rule 30(b)(6) can be the granting of a protective order against further Rule 30(a)(1) corporate depositions." *Id.*

Here, the PSC should not be permitted to take individual fact depositions until the 30(b)(6) depositions are completed because the particular topics that are the subject of any 30(b)(6) depositions will necessarily inform what (if any) individual fact depositions would be appropriate. In fact, the PSC's own attorneys have previously recognized that 30(b)(6) depositions "would be the first [depositions] that [they] would want to do." 1/22/2018 Tr. 45:17-18 (statement by Mr. Tisi) (Ex. 1); *see also id.* 45:13-16 (Judge Pisano recognizing that "Placitella just stood up and said he wants to read the documents

Hon. Joel A. Pisano -5- December 22, 2020

and just take 30(b)(6) depositions" before the 62 company witness depositions originally proposed); 1/24/2018 Letter from Susan M. Sharko to Judge Pisano (agreeing that, "provided that [the PSC] withdraw all the[] requests for depositions of the current and former employees of [J&J]," J&J would "produce . . . a 30(b)(6) witness," "as suggested by Mr. Placitella") (Ex. 2).  After the conclusion of the 30(b)(6) depositions, to the extent the PSC continues to believe that individual depositions are necessary, it should identify what information it needs from which individuals.  The Court should allow such depositions to take place only upon a showing of good cause, including identifying the specific documents that form the basis of such a request.  *See* Order, Feb. 6, 2018 (Doc. 4173) (Pisano, J.) (striking the PSC's list of 62 fact witnesses because "they [did] not establish[] a need for 62 depositions") (Ex. 3).  Simply put, the PSC should not be permitted "to wear out or harass [J&J] with a number of futile [fact] depositions," *Folwell*, 210 F.R.D. at 173, particularly given the volume of deposition testimony that is already available for plaintiffs' use in this proceeding.

### III.     THE INDIVIDUAL FACT WITNESSES IDENTIFIED IN THE PSC'S LETTER ARE NOT APPROPRIATE DEPONENTS IN TALC LITIGATION.

Finally, the J&J defendants note that to the extent additional fact witness depositions may be warranted after the completion of the 30(b)(6) depositions, it is difficult to imagine that plaintiffs will be able to show good cause for taking the depositions of the three individuals identified in the PSC's letter.

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999); *see also Anderson v. Buena Bd. of Educ.*, No. 17-06816(JS), 2019 WL 1262647, at *2 (D.N.J. Mar. 19, 2019) ("[W]hile the scope of discovery pursuant to Rule 26 is broad, it is not unlimited . . . .").  In particular, "[t]he Federal Rules of Civil Procedure expressly allow a district court to use its discretion and deny discovery requests if the material sought is 'unreasonably cumulative,'" *Bayer AG*, 173 F.3d at 191 (citation omitted), or "overly broad," Order, Feb. 6, 2018 (Doc. 4173) (Pisano, J.) (citing Fed. R. Civ. P. 26(b)(1) for the proposition that "discovery [must] be proportional to the needs of the case").  "The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action" and discoverable.  *Anderson*, 2019 WL 1262647, at *2.

Here, the reality is that all the J&J employees with relevant knowledge have already been deposed in this litigation, many of them multiple times.  The only reason the J&J employees identified in the PSC's letter have not yet been deposed is that they had minimal involvement in talc matters or have been retired from J&J for so long that they would no longer recall information probative of plaintiffs' claims.  For example:

- Michael Chudkowski has not been an employee at J&J for **more than 19 years** and is approximately 80 years old.  There is nothing additional to be

Hon. Joel A. Pisano -6- December 22, 2020

gained by eliciting testimony from Mr. Chudkowski about his memory of events that took place 20 or more years ago. This is particularly true because the PSC has access to testimony from other witnesses covering the same topics on which Mr. Chudkowski was involved. For example, Dr. Hopkins has testified extensively in talcum powder litigation and has specifically provided testimony on documents that Mr. Chudkowski is identified on and on meetings with Mr. Chudkowski. (*See, e.g.*, Dep. of Dr. John Hopkins 98:7-103:10, *Hayes v. Colgate-Palmolive Co.*, No. 16-CI-03503 (Ky. Cir. Ct. June 26, 2018) (Ex. 4).) Additionally, the topics on which Mr. Chudkowski may have personal knowledge (i.e., talc animal studies), are topics for which J&J's 30(b)(6) witnesses have already provided testimony in this MDL proceeding. (*See, e.g.*, PSC's 2nd Am. Not. of 30(b)(6) Dep. Topics II.10 (Ex. 5).)

- Dr. Jijo James, who was Chief Medical Officer for J&J Consumer between 2014 and 2017, was not directly involved in talc issues. As explained in his attached declaration, Dr. James did "not ha[ve] any direct involvement . . . in . . . any decisions concerning the research, development, testing, safety or marketing of talcum powder products." (Decl. of Jijo James ¶ 4 (Ex. 6); *see also id.* ("While I was generally made aware of talc allegations, I was not actively involved in addressing them."); *id.* ¶ 6 ("I have limited personal knowledge of talc issues and the talc litigation generally . . . .").) This is further demonstrated by the fact that Dr. James is only referenced in a tiny portion of documents in the talc production and even those documents reflect minimal involvement in talc matters. On the other hand, Dr. James's direct report, Dr. Susan Nicholson, "was directly responsible for talc oversight." (*Id.* ¶ 4.) Dr. Nicholson has already testified at length in this MDL proceeding and talc litigation nationwide. As explained above, Dr. Nicholson testified in this MDL proceeding for two days, totaling more than 1,072 pages of testimony and has sat for 16 days of depositions (approximately 128 hours of testimony) in talcum powder litigation. Dr. James cannot "provide any information that cannot be obtained from Dr. Susan Nicholson." (*Id.* ¶ 6.)

- Helen Han Hsu, who served as Director of Preclinical Drug Development between 1998 and 2001, retired from her most recent position as Head of Nonclinical Safety, Asia Pacific Region almost a year ago. During her tenure at J&J, she was only peripherally involved in issues pertaining to Johnson's Baby Powder or Shower to Shower. Specifically, her involvement was limited to a relatively short period of time in the early 2000s when she was involved in matters relating to the NTP's classification of talc. In fact, there are only 716 documents in the production that involve Ms. Han Hsu (out of more than half a million). And the discrete issue in which she was involved (the NTP classification) is a topic on which J&J's 30(b)(6)

Hon. Joel A. Pisano					-7-					December 22, 2020

witnesses have already provided testimony in this MDL proceeding.  (*See, e.g.*, PSC's 2nd Am. Not. of 30(b)(6) Dep. Topic IV.3.)  Thus, her deposition is unnecessary, and even if necessary, could be completed in just a few hours.

## **CONCLUSION**

The J&J defendants suggest that the parties meet and confer in good faith on topics for 30(b)(6) depositions, and that discussions of individual fact depositions occur after the 30(b)(6) process concludes.  Additionally, following the conclusion of 30(b)(6) depositions, the PSC should only be permitted to take additional fact witness depositions if it demonstrates good cause – i.e., a legitimate need for information as to each requested witness.  Notably, the PSC has not done so with respect to the three proposed fact witnesses here, who were peripheral to talc issues, and in the case of one of the three, retired from J&J almost two decades ago.

Respectfully submitted,

Susan M. Sharko

SMS
Enclosure

cc:	Thomas T. Locke, Esq.
	Michelle A. Parfitt, Esq.
	P. Leigh O'Dell, Esq.