

**WALSH PIZZI O'REILLY FALANGA**

THREE GATEWAY CENTER
100 Mulberry St, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

January 28, 2021

**VIA ECF & EMAIL**
All Counsel of Record

  Re: *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
    Case No. 3:16-md-02738-FLW-LHG

Dear Counsel,

  By Orders of the Honorable Freda L. Wolfson, U.S.D.J. dated August 30, 2017 (D.I. 536) and September 11, 2017 (D.I. 704), I was appointed Special Master for the purpose of overseeing discovery disputes that may arise in the above-captioned multi-district litigation ("MDL"). This MDL contains product liability cases in which Plaintiffs allege that certain Johnson & Johnson products containing talcum powder (the "Products") have been the cause of ovarian cancer for thousands of women who have used the Products.[1]

  This letter order addresses the submissions regarding Plaintiff's Steering Committee's (PSC) request to take MDL liability depositions, consisting of three (3) depositions of Johnson & Johnson ("J&J") fact witnesses along with the examination of 30(b)(6) witnesses on four topic areas and the ability to cross-notice fact witness depositions of J&J employees that are being conducted in state court cases. (PSC's Dec. 16, 2020 Ltr; J&J's Dec. 22, 2020 Ltr.; and PSC's Dec. 28, 2020 Ltr.). I have also reviewed the submissions regarding the coordination of depositions in this MDL and various state court proceedings. (J&J's Jan. 15, 2021 Ltr; PSC's Jan. 20, 2021 Ltr.; J&J's Jan. 27, 2021 Ltr.) I address the disputes below.

  Discovery in this case was bifurcated, and the initial focus was on general causation. As a result, PSC was precluded from taking certain discovery, including depositions of J&J corporate witnesses as to liability until after the causation phase of discovery ended. However, in my February 6, 2018 Order, I noted that the PSC may be entitled to obtain this discovery if the case "eventually moves" from Daubert proceedings and "into fact discovery," and that we would "cross that bridge when we come to it." Feb. 6, 2018 Order at 1-2, n.3. We have now crossed that bridge. Chief Judge Wolfson issued her Daubert ruling on April 27, 2020. The parties are now proceeding with case-specific

---

[1] I do not provide a detailed factual and procedural background, as I write for the benefit of the Court and the parties, all being familiar with the facts of this case.

discovery and the bellwether process, and the focus is now on individual plaintiffs and general liability issues.

The PSC requests the depositions of three J&J corporate fact witnesses, Michael Chudkowski, PhD ("Chudkowski"), Jijo James, MD ("James") and Helen Han Hsu ("Han Hsu"), as well as depositions under Rule 30(b)(6) as to risk and mitigation policies, procedures and committees for cosmetic products, marketing and advertising, and sales. J&J objects to these requests as being duplicative and burdensome. The Parties raised these issues before Chief Judge Wolfson at the November 17, 2020 Conference. At that time, the parties were directed to bring it to the undersigned for resolution.

The parties filed letters on December 16, 22, and 28 outlining their respective positions. The dispute centers on whether the depositions sought by PSC are duplicative, and/or unduly burdensome, given the significant number of J&J witnesses that have been deposed (90 days of depositions), and/or have testified at trial (including nine ovarian cancer trials), in other talc-related proceedings and J&J's significant document production of over 2 million pages of documents. While I am mindful of the significant discovery taken to date in talc-related litigations throughout the country, I find that the PSC is entitled to the requested depositions for the reasons set forth below.

Under Federal Rule of Civil Procedure 26(b)(1) "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .." The Rule 26 relevancy requirement has been construed "broadly and liberally." *DIRECTV, Inc. v. Richards*, No. 03-5606 (GEB), 2005 U.S. Dist. LEXIS 43764, at *8 (D.N.J. June 22, 2005) (Brown, U.S. D.J.); *see* Fed. R. Civ. P. 26 advisory committee's note (2000) (noting that the Rule allows the court to permit discovery on "any matter relevant to subject matter involved in the action").

Here, in addition to proving causation, the PSC's will also have to prove that J&J is liable for a plaintiff's injuries. The PSC avers that central to that liability question is "when J&J became aware that its talcum powder products may be associated with the risk of ovarian cancer, whether there were mitigation steps that J&J failed to take in the face of those potential risks, and whether J&J misled consumers about the safety and purity of its talc." (PSC Dec. 16, 2020 Ltr. at 8.)

To that end, PSC has requested depositions of Mr. Chudkowski, Dr. James, and Ms. Han Hsu, none of whom have been deposed in any talc case. J&J claims that that all employees with relevant knowledge have already been deposed, and that these three individuals either had minimal involvement in Talc or have been retired for so long that they no longer recall information probative of plaintiffs' claims. I discuss each witness further below.

- Mr. Chudkowski. PSC contends that as J&J's Direct of Product Safety until 2001, Mr. Chudkowski "has knowledge of critical decision making regarding emerging evidence of talc-associated ovarian cancer and how J&J reacted to that evidence." PSC Dec. 16 Ltr at 6. PSC contends they are entitled to test his memory as to

      same. J&J objects to his deposition on several grounds. First, J&J notes that Mr. Chudkowski is approximately 80 years old and retired from J&J more than 19 years ago. J&J Dec. 22 Ltr. at 5-6. J&J also contends that PSC has access to testimony from other witnesses as to the same topics Mr. Chudkowski would cover; specifically, J&J contends that Dr. John Hopkins testified as to documents that Mr. Chudkowski is identified on and on meetings with Mr. Chudkowski, and that J&J's 30(b)(6) witnesses have already testified as to talc animal studies, which is a subject on which Mr. Chudkowski has personal knowledge.

- Dr. James. The PSC states that Dr. James was JJCI's Chief Medical Officer in charge of Johnson's Baby Powder through 2017. Dr. James has never been deposed, but his subordinate, Susan Nicholson, MD was previously produced as a witness. The PSC contends that it is entitled to depose Dr. James and not rely on the testimony of his subordinate, Dr. Nicholson, who did not have professional responsibilities related to Johnson's Baby Powder until 2015. The PSC also notes that Dr. Nicholson was produced as a Rule 30(b)(6) witness designated on bias in studies, and "ovarian cancer" was mentioned only 81 times in Dr. Nicholson's two days of testimony. J&J objects to this deposition. J&J submitted a declaration from Dr. James that he did not have direct involvement in decisions concerning the research, development, testing, safety or marketing of talcum powder products, and that while he was generally made aware of allegations, he was not actively involved in addressing them. By contrast, Dr. James' subordinate, Dr. Nicholson, was directly responsible for talc oversight, and she has already testified in this MDL proceeding and in talc litigation nationwide; Dr. James contends that he cannot provide any information that cannot be obtained from Dr. Nicholson.

- Ms. Han Hsu. The PSC believes that during the time that Ms. Han Hsu was Vice President and Head of Drug Safety Sciences at JJCI, she coordinated J&J's response to the National Toxicology Program ("NTP"), a quasi-regulatory agency. The PSC alleges that during this period, the NTP initially voted to list talc as a carcinogen in the early 2000s and "Han Hsu was instrumental in derailing that listing." (PSC Dec. 16, 2020 Ltr. at 7). The PSC wants to question her on what transpired and led to NTP's decision. Again, J&J objects on several grounds. Ms. Han Hsu was Director of Preclinical Drug Development from 1998 to 2001, and retired from J&J approximately one year ago. J&J contends that she was only peripherally involved in issues pertaining to Johnson's Baby Powder or Shower to Shower, and that her involvement was limited to a short period of time in the early 2000s in matters relating to NTP's classification of talc. J&J also notes that there is only a discrete number of documents that involve Ms. Han Hsu (716 out of 496,000 documents) and that J&J's 30(b)(6) witnesses have already provided testimony as to the NTP classification.

      I find that the PSC is entitled to depose the three witnesses requested. These three individuals have not yet been deposed and all had a role at J&J which suggests that they would have information relevant to the claims at issue here. J&J may ultimately be correct that any one of these witnesses (or all of them) provide testimony that is duplicative to that given by other witnesses, but I cannot find that the PSC is precluded from deposing these witnesses simply because there *might* be an overlap. Additionally,

January 28, 2021
Page 4

with respect to Mr. Chudkowski, I find that given his role he may have knowledge that is relevant to the liability issues, and while J&J may be correct regarding his ability to recall events from 20+ years ago, the PSC is entitled to test his memory.  Furthermore, the fact that Dr. James and Ms. Han Hsu were only referenced in a discrete number of documents does not justify a blanket prohibition on their depositions.  Again, whether and to what extent these witnesses offer new information remains to be seen, but the PSC is entitled to find out.  Finally, while I am granting the deposition requests, I am mindful of the impact of the ongoing pandemic, and the particular risk that may result from Mr. Chudkowski's age[2], and to that end, I expect counsel to work cooperatively to complete these depositions and for the PSC to provide reasonable accommodations as necessary.

As noted, the PSC also requested 30(b)(6) depositions on the topics listed above.  The PSC contends that the requested 30(b)(6) depositions have not been taken in any state or federal ovarian cancer case.  The PSC also asserts that the majority of the J&J corporate witness depositions were taken in the "talc-induced mesothelioma cases" where J&J's knowledge of, and actions, regarding talc-induced ovarian cancer was not an issue.  Additionally, the PSC argues that new subject matter exists as the majority of the J&J corporate witness depositions t occurred before 2018, meaning that at the time J&J had produced only about twenty five percent of the documents it has since produced in this MDL.  Finally, to the extent that J&J attempts to prohibit depositions because it produced documents, the PSC contends that this argument is non sensical since the Federal Rules permit the parties to depose a party from whom documents are produced.

With respect to the PSC's request for depositions of 30(b)(6) witnesses generally, the PSC asserts that although J&J finds that these areas were covered by the PSC's 30(b)(6) depositions of Dr. John Hopkins (designated on talc testing methods) and Dr. Susan Nicholson (designated on bias in studies), a review of the transcripts demonstrates that J&J's position is incorrect.  First, the PSC contends that Dr. John Hopkins nor Dr. Susan Nicholson were employed between the years 1999 and 2015, "the timeframe when the evidence of ovarian cancer risk was mounting." Additionally, the PSC asserts that the words "ovarian cancer" was mentioned only seven times in the two days of Dr. Hopkin's deposition and as mentioned above only 81 times in Dr. Nicholson's two days of testimony.  Moreover, the terms "safety Committee," "Policies" or "SOP" only appeared a total of 3 times in their combined four days of testimony.

In response, J&J argues that the PSC's request is burdensome and duplicative and goes against the efficiency goals of the MDL proceeding. (J&J Dec. 22, 2020 Ltr. at 1).  J&J argues that any potential information obtained through the newly requested 30(b)(6) depositions have already been obtained by plaintiffs over the course of many years of discovery.  J&J points out that there are about "90 days of deposition testimony from current and former employees and corporate representatives that total more than 20,000 pages of testimony.  Furthermore J&J defendants have produced approximately

---

[2] Given Mr. Chudkowski's age and the fact that he retired 19 years ago, J&J's position is not unreasonable, and while I am allowing the deposition to proceed, I caution the parties to be mindful of his circumstances.

496,000 documents to date, constituting more than two million pages, that were collected from more than 200 individuals and non-custodial sources." (J&J Dec. 22, 2020 Ltr. at 2). Furthermore, J&J highlights that its corporate representatives have testified in more than two dozen trials.

Generally, J&J contends that the PSC ignores that there have already been nine ovarian cases tried to verdict and that such trials include extensive testimony involving general liability issues. (J&J Dec. 22, 2020 Ltr. at 3). J&J argues that although the deposition testimony taken in the numerous talc proceedings in New Jersey, California and other states addressed mesothelioma cases, the deposition testimony is relevant in this MDL proceeding because the testimony regarding the 30(b)(6) topics covered in the mesothelioma cases would apply equally in the ovarian cancer cases. (J&J Dec. 22, 2020 Ltr. at 3).

J&J also objects to the specific topics and argues that the PSC already has access to a vast amount of discovery on each 30(b)(6) topic of marketing. For example, J&J argues the Kazan law firm took two days of "30(b)(6) equivalent" depositions that addressed the subject of marketing. Additionally, as to the topic of "policies and procedures for the risk assessment and risk mitigation," J&J avers that it has produced Dr. Hopkins and Dr. Nicholson. J&J contends that Dr. Hopkins "had direct involvement with talc and safety issues for many years" and "sat for 37 days of depositions (approximately 296 hours of testimony) – including four days in this MDL proceeding . . . and has testified at trial many times." (J&J Dec. 22, 2020 Ltr. at 3). In addition, Dr. Nicholson "sat for 16 days of depositions . . . including two days in this MDL proceeding and five days in other ovarian cancer cases, as well as numerous ovarian cancer trials – to provide her perspective as Vice President of Safety Surveillance and Risk Management." (J&J Dec. 22, 2020 Ltr. at 3-4).

While I am cognizant that significant discovery has occurred, I nonetheless find that the PSC is entitled to examine 30(b)(6) witness(es) on the requested topics. The topics are limited and targeted to liability issues relevant to plaintiffs' claims regarding ovarian cancer. The volume of pages of testimony and depositions produced does not justify a blanket prohibition on further 30(b)(6) depositions, particularly since 30(b)(6) depositions have not yet been taken on these topics in ovarian cancer cases and in any event, the vast majority of the depositions occurred prior to J&J's production of most of its documents. Accordingly, I find the PSC is entitled to take these depositions at this time.

Finally, I must address to requests by J&J regarding the order of the requested discovery and coordination with other talc litigation. First, J&J requested that 30(b)(6) depositions occur first, and only thereafter, and upon a showing of good cause, should the PSC be permitted to proceed with fact depositions. I have already found that the PSC is entitled to these depositions, and find no basis to require the PSC to proceed with the 30(b)(6) deposition first; I leave the scheduling to the discretion of counsel. Second, J&J advised the Court of various requested depositions in the state court proceedings and noted that the PSC has cross-noticed those depositions. J&J has requested that the

depositions be coordinated, and specifically requested that Plaintiffs' Liaison Counsel, Mr. Placitella, be directed to confer with counsel in the related state-court cases regarding these depositions and to coordinate accordingly.  In response, the PSC has pointed to the case management orders that have already been entered providing for the coordination of such depositions, and confirming that it will abide by same while also cooperating with J&J.  The PSC further asks that I reject J&J's request requiring Mr. Placitella to be the specific person who is in charge of the coordination efforts.  Given the case management orders that are already in effect, and the representations from counsel regarding their coordination efforts, I do not find that any further order is required at this time.

So Ordered.

*s/Joel A. Pisano*

Joel A. Pisano