**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>*This Document Relates to All Cases* | **Civil Action No. 3:16-md-2738-FLW-LHG**<br><br>**MDL No. 2738** |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITIONS TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND
PLAINTIFFS' FIRST AMENDED MASTER LONG FORM COMPLAINT**

Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC"), submit this Reply to Defendants Johnson & Johnson, Johnson & Johnson Consumer Inc. (collectively "J&J Defendants"), and Personal Care Products Council's ("PCPC") Oppositions to Plaintiffs' Motion for Leave to Amend Plaintiffs' First Amended Master Long Form Complaint (ECF Nos. 16334 and 16151, respectively (hereinafter referred to as "J&J Opp." or "PCPC Opp.")).

In opposing the PSC's Motion, the J&J Defendants and PCPC gratuitously gloss over the well-pled allegations of the proposed Second Amended Master Long Form Complaint ("SAC"), offering feigned ignorance to the long history of fraudulent and intentional efforts to mask the dangers associated with regular use of

talcum powder products.  The SAC adequately details Defendants' actions that would subject them to independent claims of spoliation.  Further, the PSC's efforts to amend the current First Amended Master Long Form Complaint are not only timely, but also far from futile. Accordingly, the Court should reject Defendants' oppositions and grant Plaintiffs' motion.

## ARGUMENT

"Fed. R. Civ. P. 15 embodies the liberal pleading philosophy of the federal rules.  Under Rule 15(a), a complaint may be amended once as a matter of right and afterward by leave of the court, which is to be freely granted."  *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984) (*citing Foman v. Davis*, 371 U.S. 178, S. Ct. 277 (1962)).  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Foman*, 371 U.S. at 182, 83 S. Ct. at 230.[1]

## I.   DEFENDANTS HAVE WAIVED THE RIGHT TO OPPOSE PLAINTIFFS' MOTION

Both the J&J Defendants and PCPC waived their rights to oppose Plaintiffs'

---

[1] In opposing the PSC's propose amendments, Defendants argue undue delay, undue prejudice (only by PCPC), and futility (only by J&J Defendants).

motion. In the Joint Status Report and Proposed Joint Agenda for the November 17, 2020 Status Conference ("Joint Status Report"), the parties submitted their positions on a number of issues pending in the MDL at that time. (Joint Status Report, ECF No. 15681 (Nov. 13, 2020).) In the Joint Status Report, Plaintiffs alerted the Court that they "intend to move the Court for an Order permitting Plaintiffs to amend the First Amended Master Long Form Complaint." (*Id.* at 2.) In response, the Defendants simply stated that "[t]he Defendants do not object to the Plaintiffs seeking to amend their master complaint." (*Id.*) The Joint Status Report was signed by counsel for both the J&J Defendants and PCPC. (*Id.* at 6.) The Joint Status Report represents written consent by Defendants as anticipated by Rule 15(a). *See Shane v. Fauver*, 213 F.3d 113, 115 (noting that Fed. R. Civ. P. 15(a) permits plaintiff to amend with leave of court or the ***written consent of the opposing party***). Further, Defendants did not raise any objection between the time of the filing of the Joint Status Report and the filing of Plaintiffs' motion on December 22nd.[2] Defendants clearly had notice that the PSC would be moving to file an amended master

---

[2] PCPC filed two versions of its opposition to Plaintiffs' motion – one filed on December 23, 2020 and a "revised" version filed on December 27, 2020. (*Compare* ECF No. 16147 *with* ECF No. 16151.) Although notably absent in the later revised version, in the December 23rd opposition, PCPC claimed that the PSC did not obtain PCPC's consent to file the motion to amend. This argument is without merit because the PSC's intent to file the motion was expressed in the Joint Status Report and PCPC did not object to the filing of the motion. PCPC had an earlier opportunity to object to Plaintiffs' motion by expressing such an objection in the Joint Status Report or at the Status Conference, but it did not.

complaint. Now, Defendants challenge the timeliness and merits of Plaintiffs' motion despite not previously raising any objections.

## II. PLAINTIFFS' MOTION TO AMEND THE MASTER COMPLAINT IS TIMELY

Both the J&J Defendants and PCPC claim that the PSC's motion is untimely because the PSC possessed the ability to file their motion sooner.

In its opposition, PCPC argues that "Plaintiffs possessed the purported 'new' information to amend their complaint for years." (PCPC Opp. at 2.). Similar to PCPC, the J&J Defendants claim in their opposition that because "every exhibit cited in support of the PSC's proposed pleading has long been in the possession of MDL counsel . . . [,]" Plaintiffs' motion is untimely. (J&J Opp. at 10.). Ultimately, both the J&J Defendants and PCPC complain that the PSC should have moved to amend at some point prior to December 2020.

As the Third Circuit has noted, "[]the mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Adams*, 739 F.2d at 868). While a delay may "become undue" at some point in time, "the question of undue delay requires that [a court] focus on the movant's reasons for not amending sooner." *Id.* Here, Plaintiffs have valid reasons for not seeking to amend the Master Complaint sooner.

While Plaintiffs may have been in possession of documents and deposition

transcripts for some time, this alone does not mean the motion is untimely. Just because the PSC possessed documents containing information does not mean it was in a position to file an amended complaint. To the contrary, given the complex nature of this case and the hundreds of thousands of pages of documents and deposition testimony produced in this MDL and other related state court cases, it takes a significant amount of time and resources to review the information, condense the information into allegations, and determine what allegations should be included in an amended master complaint, especially where the PSC represents the interests of thousands of individual plaintiffs.

In fact, the PSC worked for months prior to the December filing, preparing the proposed Second Amended Master Long Form Complaint. Further, discovery in this matter is ongoing and the PSC determined that it would be more efficient to move only once for leave to file an amended complaint rather than to have filed such a motion several months earlier, only to have to file additional motions as more facts, knowledge and the synthesis of information became known, warranting a further amendment.[3] The timing of the motion is still early enough in the proceedings before a bellwether trial has occurred to not prejudice the Defendants.

In their opposition, the J&J Defendants concede that some testimony cited in

---

[3] As noted by Judge Pisano in his January 28, 2021 ruling, "[t]he parties are now proceeding with case-specific discovery and the bellwether process, and the focus is now on individual plaintiffs and general liability issues."  ECF No. 16468.

the proposed SAC occurred as recently as 2019. (J&J Opp. at 6.) Indeed, Plaintiffs

cite to the trial testimony of Johns Hopkins from July 22, 2019 (Ex. B to Pls.' Mot.

to Amend at ¶32) as well as multiple other deposition and trial transcripts from 2019.

(Ex. B to Pls.' Mot. to Amend at ¶¶32, 77, 248.) Plaintiffs also cite testimony taken

in 2020. (Ex. B to Pls.' Mot. to Amend at ¶¶174.).   Plaintiffs further cite to

documents and events that were produced or occurred as recently as 2019. For

example, Plaintiffs cite the following:

- FDA's findings of asbestos in Johnson's Baby Powder and the subsequent recall of the affected lot of Johnson's Baby Powder, which occurred in October 2019. (Ex. B to Pls.' Mot. to Amend at ¶60);
- Exhibits used during a state court trial in August 2019 (Ex. B to Pls.' Mot. to Amend at ¶¶68-69); and
- The publication of the Taher et al. study in August 2019 (Ex. B to Pls.' Mot. to Amend at ¶50(z)).

If the PSC sought to amend the master complaint every time a new document

was produced or new deposition testimony was obtained in this case, the PSC would

be forced to amend the master complaint dozens of times a year. Rather, the PSC

has carefully calculated the best time to seek to amend the master complaint—after

Chief Judge Wolfson's *Daubert* decision and prior to the scheduling of bellwether

trials. The timing of the amendment is meant to allow the pleadings to conform to

the evidence now that bellwether trials are anticipated to be scheduled in the near

future.

6

## III.   AMENDMENT OF THE MASTER COMPLAINT WILL NOT UNFAIRLY PREJUDICE PCPC

PCPC's primary prejudice argument centers on the briefing schedule of PCPC's motion for summary judgment.[4] PCPC claims "Plaintiffs' amended complaint would delay adjudication of PCPC's summary judgment motion . . . ." (PCPC Opp. at 4.)[5] In support, PCPC asserts that "the complaint would require additional briefing regarding alleged facts that Plaintiffs knew about when they filed their lengthy opposition to PCPC['s] motion, but Plaintiffs failed to cite." (PCPC Opp. at 2.). PCPC argues it "would be forced to brief Plaintiffs' tardy and specious spoliation cause of action." (PCPC Opp. at 2.). Not true.  Further, PCPC argues that

---

[4] PCPC also argues that "Plaintiffs' proposed amendment and the new cause of action would unduly prejudice PCPC by Plaintiffs' apparent attempt to seek additional discovery." (PCPC Opp. at 5.) PCPC's argument does not hold weight. Discovery is not closed in this case. Plaintiffs have the right to seek additional discovery against any party under the Federal Rules. Even if PCPC were not a party to this case, the PSC could seek additional discovery against it through subpoena. As a result, the perceived threat of additional discovery is not unduly prejudicial.

[5] Admittedly, as pointed out by PCPC, the PSC misstated in its motion that the filing of the motion occurred "well prior to the filing of a dispositive motion." (PCPC Opp. at 2.) Because the new allegations in the amended complaint are largely directed toward the J&J Defendants, this statement in Plaintiffs' motion was only meant to note for the Court that the J&J Defendants have not filed a dispositive motion yet. And PCPC does not cite any law explicitly prohibiting the filing of a motion to amend a pleading after the filing of a dispositive motion.

"Plaintiffs' proposed amendment would extend the litigation schedule, further prejudicing PCPC." (PCPC Opp. at 5.)

The only new cause of action asserted against PCPC in the proposed SAC is spoliation. All other causes of action were already briefed and the PSC does not seek to file supplemental briefing related to those other causes of actions. And, any new facts contained in the proposed SAC do not alter the arguments made in PCPC's motion for summary judgment. Plaintiffs' assertions against PCPC in the proposed SAC (other than spoliation) are essentially the same as previously alleged and argued in summary judgment briefing. PCPC fails to argue exactly how the new facts (again, other than those related to spoliation) would impact summary judgment briefing on the other causes of action.

At this point, the first trials are not expected to take place for some months and, as necessary, there is ample time to brief the additional, limited spoliation cause of action raised in Plaintiffs' proposed SAC.

## IV.  PLAINTIFFS' AMENDMENTS TO THE MASTER COMPLAINT ARE NOT FUTILE

In opposing the proposed SAC, J&J Defendants argue that a spoliation cause of action would be futile.  "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Evans v. City of Phila.*, 763 F. App'x 183, 185-86 (3d Cir. 2019).  In assessing futility, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "The District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007).

As asserted in the SAC, the PSC alleges that five states recognize spoliation as an independent cause of action – Alaska, Connecticut, New Mexico, Ohio and West Virginia.  SAC ¶ 493.[6]  J&J Defendants argue that the "PSC does not come close to plausibly alleging three essential elements of spoliation under each of the relevant states' laws: (1) that the J&J defendants had a duty to preserve evidence; (2) that they destroyed evidence with requisite culpable intent; and (3) that any spoliation prejudiced plaintiffs' ability to prove their claims. (J&J Opp. at 12.) Contrary to the position of J&J Defendants, the PSC has adequately alleged each of these elements.

---

[6] *See Hibbits v. Sides*, 34 P.3d 327, 328-330 (Alaska 2001) (recognizing intentional first and third-party spoliation cause of action); *Rizzuto v. Davidson Ladders, Inc.*, 280 Conn. 225, 244-45, 905 A.2d 1165, 1173 (2006) (citing elements of tort of intentional spoliation); *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 650, 905 P.2d 185, 190 (1995) (holding New Mexico recognizes a cause of action for intentional spoliation of evidence); *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 29, 615 N.E.3d 1037, 1038 (1993) (recognizing cause of action in tort for interference with or destruction of evidence); *Hannah v. Heeter*, 213 W.Va. 704, 715 584 S.E.2d 560, 571 (2003) ("West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party.").

### A. The PSC Sufficiently Alleges Defendants' Duty To Preserve Evidence

The PSC has specifically alleged that Defendants had a duty to preserve evidence since at least 1971.[7]  (*See* SAC ¶ 494 ("At least since 1971, Defendants J&J, J&J Consumer, and PCPC had a duty to preserve relevant evidence even though litigation had not commenced because Defendants knew litigation related to the PRODUCTS was probable at some point in the future.").)[8]  In support of the assertion that Defendants had a duty to preserve evidence, the SAC devotes over forty (40) paragraphs, referencing dozens of exhibits, summarizing the circumstances that triggered Defendants' obligations, and the failures on the part of Defendants to adequately preserve evidence.[9]  (*See, e.g.*, ¶¶ 192 (citing testimony that since 1971, Johnson & Johnson has been aware of "ongoing," "pending," and "anticipated" litigation regarding Johnson's Baby Powder); ¶ 196 (J&J Defendants

---

[7] The PSC recognizes that a corporation is not under a duty to keep or retain every document in its possession.  However, once a company becomes aware that documents or information or things in its possession are relevant to potential future litigation, the duty to preserve is triggered.  *See Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D. Minn. 1989) (citations omitted).

[8] *See also* SAC at ¶ 186 ("Johnson & Johnson has had the duty to preserve evidence and documents relevant to foreseeable litigation, including the responsibility to suspend any document destruction policies beginning in 1969, and certainly not later than 1971.").

[9] Section VIII of the SAC, ¶¶ 186-229, details the J&J Defendants' duty to preserve evidence and the actions taken to destroy relevant evidence.

acknowledged a duty to preserve evidence once litigation concerning health effects of its talc products was foreseeable, but failed to do so); ¶ 199 ("Although litigation was pending and anticipated, the samples chosen by Johnson & Johnson specifically to create test results were not retained under the company's evidence retention schedules."); ¶ 203 ("Johnson & Johnson did not instruct its consultants that repeatedly tested its talc ore and products to retain the samples tested, even though litigation was pending and anticipated.").) *See Williams v. BASF Catalysts*, 765 F.3d 306, 321 (3d Cir. 2014) (holding defendant duty-bound where it faced actual or threatened litigation and "anticipated additional litigation in the future.").

In opposing the PSC's motion to amend, the J&J Defendants ignore legal precedent requiring the Court to "take all pleaded allegations as true and viewing them in a light most favorable to plaintiff." *Winer Family Trust*, 503 F.3d at 330-31. Instead, J&J Defendants argue the merits of the allegations and attempt to explain away their actions. (*See* J&J Opp. at 14-18.) To be clear, J&J Defendants are asking this Court to assess the motion under a Rule 56 standard in arguing there is no merit to the claim. This is an improper attempt to apply an incorrect burden of proof at this time.

Tellingly, the cases cited by Defendants in support of their argument were decided on the eve of trial, well beyond the posture of the current litigation. *See* April 12, 2019 Order in *Hayes v. Colgate-Palmolive Company*, No. 16-CI-003503

(Ky. Cir. Ct. April 12, 2019), attached to J&J Opp. as Exhibit 1, at 3 ("Various parties have also filed a number of motions in limine ahead of the jury trial scheduled to begin in this matter on July 16, 2019."); hearing transcript from *Rimondi v. BASF Catalysts LLC, et al.*, No. MID-2912-17AS (N.J. Super. Ct. Law Div. Feb. 22, 2019), attached to J&J Opp. as Exhibit 2, at 3 ("continuing in limine matters prior to the commencement of this trial which is Monday, February 25."); *In re Ethicon, Inc. Pelvic Repair Systems Prods. Liab. Litig.*, 299 F.R.D. 502, 507 (S.D.W.V. 2014) (addressing Pretrial Order seeking default judgment against Ethicon in 3 bellwether trials).

Defendants' case citations are also contrary to their argument that a limited number of product liability cases does not trigger a preservation obligation.  In *In re Ethicon*, the court held that defendant's obligation to preserve evidence was triggered no later than 2008, when in-house counsel had described litigation as "ongoing."  (*Id* at 517.)[10]  Likewise, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2013 WL 5377164 (S.D. Ill. Sept. 25, 2013), although the court held that a single "injury that occurred in relation to taking Pradaxa during a clinical trial, before Pradaxa was approved by the FDA" did not trigger a duty, it held that the duty to preserve did arise "when defendants' received a demand letter related to the

---

[10] The *Ethicon* court also held that plaintiffs should be permitted on a case-by-case basis to introduce evidence of spoliation at trial, when appropriate.  *See In re Ethicon, Inc. Pelvic Repair Systems Prods. Liab. Litig.*, 299 F.R.D. at 507.

first postlaunch Pradaxa product liability case." (*Id.* at *13-14.)

Viewing the allegations in the light most favorable to Plaintiffs, the SAC sufficiently alleges Defendants' duty to preserve evidence.

## B. The SAC Sufficiently Alleges Defendants' Intent To Destroy Relevant Evidence

The PSC has specifically alleged Defendants' intent to destroy relevant evidence. (*See* SAC ¶ 495 ("Defendants J&J, J&J Consumer, and PCPC intentionally destroyed relevant evidence despite knowledge of the potential for future litigation and the need to preserve the evidence.").) The SAC details how Defendants, for decades, misrepresented to regulatory agencies, the public, and the courts that the PRODUCTS were asbestos free. (*See* SAC ¶¶ 139 through 185.) Defendants did so while engaging in a pattern and practice of knowingly and intentionally concealing evidence to the contrary. (*See* SAC ¶¶ 230 through 286.) Defendants' pattern and practice included, among other things, destroying the very evidence that undercut their lies and was relevant to numerous litigations, including the matters currently before this Court. The SAC alleges Defendants' intentional destruction and/or intentional failure to retain relevant evidence. (*See* SAC ¶¶ 186 through 229.) Defendants' intentional actions have included, but are not limited to, code keys corresponding to the tables with asbestos test results for "round robin" testing conducted in 1977 (SAC ¶ 496); documents created or produced in prior litigation related to talc (SAC ¶ 497); talc and talc samples, including TEM grids,

13

tested for asbestos content from the 1950s to the 2000s (SAC ¶ 498); count sheets, photomicrographs, and other documentation generated during the testing of talc samples for asbestos and other fibers from the 1950s to the 2000s (SAC ¶ 499); and geologic and other records related to the Hammondsville, Vermont mining operations (SAC ¶ 211).

It is farcical for Defendants to argue that the SAC, when construing allegations in a light most favorable to Plaintiffs, fails to allege facts that in any way support a legal conclusion that Defendants' actions were done with the intent to prevent plaintiffs across numerous litigation platforms from prevailing.

### C. The PSC Sufficiently Alleges that Defendants' Spoliation Prejudiced Plaintiffs' Ability To Prove Their Claims

Plaintiffs have alleged that they have been damaged as a result of Defendants' spoliation because the absence of the spoliated evidence limits Plaintiffs' ability to present and prove their cases. (*See* SAC ¶ 500.) Central to the liability question is when J&J Defendants became aware that its talcum powder products may be associated with the risk of ovarian cancer, including the presence of constituents such as asbestos, whether there were mitigation steps that J&J failed to take in the face of those potential risks, and whether J&J misled consumers about the safety and purity of its talc. The information destroyed by Defendants is vital to this litigation for several reasons. To start, Defendants continue to contest allegations that its PRODUCTS contain asbestos. As recently as December 2019, J&J Defendants'

14

CEO publicly asserted that Johnson's Baby Powder is asbestos free and that they have always cooperated fully and openly with the FDA and other regulators and have given them full access to talc testing results.  (*See* SAC ¶ 141.)  It is critical for Plaintiffs to produce evidence of what Defendants knew and when they knew it. This is particularly true given the decades of product usage involved in this litigation and the prolonged latency period associated with ovarian cancer.  The absence of evidence related to talc sampling, samples, sample testing and back up material (including "round robin" testing), TEM grids, geologic records and the like prejudices the ability of each Plaintiff to prove her individual claim.

## CONCLUSION

The right to amend a complaint should be liberally granted when justice so requires, enabling Plaintiffs the opportunity to test their claims on the merits.  For the reasons cited above and stated in Plaintiffs' Motion and Memorandum of Law, the Court should grant Plaintiffs' Motion for Leave to Amend Plaintiffs' First Amended Master Long Form Complaint.


Dated:        January 29, 2021          Respectfully submitted,

                                        /s/ *Michelle A. Parfitt*
                                        Michelle A. Parfitt
                                        ASHCRAFT & GEREL, LLP
                                        1825 K Street, NW, Suite 700
                                        Washington, DC 20006
                                        Tel: 202-783-6400

Fax: 202-416-6392
mparfitt@ashcraftlaw.com

/s/ *P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
Leigh.odell@beasleyallen.com

**Plaintiffs' Co-Lead Counsel**

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com

**Plaintiffs' Liaison Counsel**

16