Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

_____   CIVIL DOCKET NUMBER:

IN RE:  JOHNSON & JOHNSON

TALCOM POWDER PRODUCTS          3:16-md-2738-FLW-LHG

MARKETING, SALES PRACTICES

AND PRODUCTS LIABILITY          STATUS CONFERENCE VIA REMOTE

LITIGATION                      ZOOM VIDEOCONFERENCE

_____

            Date:  March 31, 2021

            Commencing at 3:30 p.m.


 B E F O R E:      JOEL SCHNEIDER, USMJ, RET.


 A P P E A R A N C E S:

   MOTLEY RICE LLC
   BY: DANIEL R. LAPINSKI, ESQUIRE
   210 LAKE DRIVE EAST, SUITE 101
   CHERRY HILL, NJ  08002
   For the Plaintiffs

   ASHCRAFT & GEREL, LLP
   BY:  MICHELLE A. PARFITT, ESQUIRE
   1825 K STREET, NW
   WASHINGTON, DC  20006
   For the Plaintiffs

   BEASLEY ALLEN LAW FIRM
   BY:  PATRICIA LEIGH O'DELL, ESQUIRE
   218 COMMERCE STREET
   P.O. BOX 4160
   MONTGOMERY, AL  36104
   For the Plaintiffs

DocuSign Envelope ID: 0CE15BB5-86EA-42E4-99CB-CBA6B24D2002

March 31, 2021

## Page 2

1  A P P E A R A N C E S (Continued):
2  COHEN, PLACITELLA & ROTH, PC
     BY: CHRISTOPHER M. PLACITELLA, ESQUIRE
3  127 MAPLE AVENUE
     RED BANK, NJ 07701
4  For the Plaintiffs
5  LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
     BY: CHRISTOPHER V. TISI, ESQUIRE
6  316 SOUTH BAYLEN STREET
     PENSACOLA, FL 32502
7  For the Plaintiffs
8  FAEGRE DRINKER BIDDLE & REATH LLP
     BY: SUSAN M. SHARKO, ESQUIRE
9  600 CAMPUS
     FLORHAM PARK, NJ 07932
10  For the Defendant, Johnson & Johnson and
      Johnson & Johnson Consumer Companies, Inc.,
11  now known as Johnson & Johnson Consumer Inc.
12  SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP
      BY: JOHN H. BEISNER, ESQUIRE
13      RICHARD T. BERNADO, ESQUIRE
      1440 NEW YORK AVENUE, N.W.
14  WASHINGTON, DC 20005
      For the Defendants, Johnson & Johnson and
15  Johnson & Johnson Consumer Companies, Inc.,
      now known as Johnson & Johnson Consumer Inc.
16
      SEYFARTH SHAW LLP
17  BY: THOMAS T. LOCKE, ESQUIRE
      975 F STREET, N.W.
18  WASHINGTON, DC 20004
      For the Defendant, Personal Care Products Council
19
      LEVIN, SEDRAN & BERMAN
20  BY: LAURENCE S. BERMAN, ESQUIRE
      510 WALNUT STREET, SUITE 500
21  PHILADELPHIA, PA 19106
22  A L S O P R E S E N T :
23      Rachel L. Goodman, Esquire
      Montgomery McCracken Walker & Rhoads LLP
24
25

## Page 3

1       (PROCEEDINGS held via remote Zoom
2  videoconference before Joel Schneider, USMJ, Ret., at
3  3:30 p.m.)
4       SPECIAL MASTER SCHNEIDER:
5       This is replacement Special Master Retired
6  Judge Schneider.  We are here on the Talc MDL, 16-2738.
7  This is my first call with counsel.  I'm delighted to
8  be here.
9       I don't know what the protocol is with Judge
10  Pisano.  My understanding, I could be wrong, was that he
11  didn't have a court reporter for his conferences, but I
12  was looking at Judge Wolfson's order from 2017, Docket
13  Number 704, and I got the impression that the
14  proceedings should be of record.  So I'm just going to
15  follow the instructions.  I don't think it's a bad
16  practice to put our calls on the record.
17       Why don't we start with the, I guess,
18  introduction and entries of appearances.  Start with
19  the plaintiffs as we usually do.
20       MS. O'DELL:  Good afternoon, Judge, Leigh
21  O'Dell from Beasley Allen on behalf of the plaintiffs,
22  the Steering Committee.
23       MS. PARFITT:  Good afternoon -- good
24  afternoon, Your Honor, Michelle Parfitt, Ashcraft &
25  Gerel, on behalf of the plaintiffs, the Steering

## Page 4

1  Committee.  It's a pleasure to meet you.
2       MR. PLACITELLA:  Good afternoon, Your Honor,
3  Chris Placitella.  Hope you are well.  I'm the liaison
4  counsel for the plaintiffs.
5       MR. LAPINSKI:  Your Honor, good afternoon.
6  Dan Lapinski from the Motley Rice firm.
7       MR. TISI:  Good afternoon, Chris -- this is
8  Chris Tisi from Levin Papantonio Rafferty at the -- on
9  behalf of the plaintiffs.
10       MR. BERMAN:  I may be the last, Laurence
11  Berman, Levin Sedran & Berman, also for the plaintiffs.
12       SPECIAL MASTER SCHNEIDER:  Mr. Placitella,
13  you either have the nicest, organized library I've ever
14  seen, or a very nice backdrop picture.
15       MR. PLACITELLA:  I just finished a seminar
16  and, admittedly, it is a backdrop picture.
17       SPECIAL MASTER SCHNEIDER:  Okay.
18       Defendant.
19       MS. SHARKO:  Susan Sharko from Drinker
20  Biddle, now known as Faegre Drinker, for the J&J
21  defendants.
22       MR. BERNARDO:  Good afternoon, Your Honor,
23  Rich Bernardo from Skadden Arps, also for the
24  defendants.
25       And thank you, and thank you all, for

## Page 5

1  accommodating my -- my COVID shot.  As you all know
2  it's been an ordeal to try to get an appointment.  So
3  moving in line with -- and anyway, I appreciate the
4  courtesy.
5       MR. TISI:  Show me hand, Richard.
6       MR. BERNARDO:  It had nothing to do with my
7  COVID shot, unfortunately.
8       Judge Schneider, just so you know, I am a
9  total mess, I got a COVID shot, my hand is broken.
10  It's not off to a good start.
11       (Discussion off the record.)
12       MR. BEISNER:  Your Honor, it's John Beisner
13  also from Skadden Arps on behalf of the J&J defendants.
14       MS. BRENNAN:  Good afternoon, Your Honor,
15  Jessica Brennan, Faegre Drinker, on behalf of the J&J
16  defendants.
17       MR. LOCKE:  Good afternoon, Your Honor, Tom
18  Locke, Seyfarth Shaw, on behalf of the Personal Care
19  Products Council.
20       SPECIAL MASTER SCHNEIDER:  Rachel, you want
21  to put your name on the record just so everyone knows
22  who you are.
23       MS. GOODMAN:  Sure.  This is Rachel Goodman,
24  Montgomery McCracken.
25       SPECIAL MASTER SCHNEIDER:  So I just want to

March 31, 2021

---

**Page 6**

1    say that I'm delighted to have the appointment by Chief
2    Judge Wolfson, although, like you all, I regret the
3    circumstances under which the appointment occurred.
4         I knew Judge Pisano.  He was a gentleman.  He
5    gave me some great advice when I first joined the
6    bench, and will be missed.  And I know I have big shoes
7    to fill, but I'm going to do my best.
8         I see some familiar faces on the phone, which
9    is great, and I'm sure you all did your due diligence
10   about who I am and where I came from.  So there is no
11   need to go into that.
12        In sum and substance, I just retired after 14
13   years as a magistrate judge in Camden.  And I guess the
14   last five or six years I had the pleasure of working on
15   two MDLs with Judge Kugler.  Then I closed one, which
16   was resolved and Valsartan, which is still going on.
17   And I learned a lot that I think could help and will
18   help me grapple with the issues in this case.  But I
19   know this case has a long tail, and there is a lot to
20   know.
21        I did a fair amount of work to get ready for
22   this call.  I think I understand the general issues and
23   the complexity of this case, because of the parallel
24   proceedings in not only New Jersey State Court, but
25   state court around the country.  I know we have to

---

**Page 7**

1    grapple with those issues.
2         I thought a good way to start this call was
3    just to -- instead of you telling me the history of the
4    case, I'll generally tell you what I know and if you
5    think there is any gaps that need to be filled, we'll
6    fill them in.
7         Talk about the general status of the case;
8    talk about the issues that you would like me to
9    address.  I'm aware of the privilege issue and the
10   deposition issue.
11        And then when we leave this conference have
12   some sort of schedule for how we are going to proceed
13   with deadlines.  I don't think any decisions are being
14   made today.
15        Just so you know, again, I'm new to this
16   asbestos talc world.  So I introduced myself to the
17   players who I thought ought to know about my
18   appointment.  I alerted Judge Porter with New Jersey
19   State Court of my appointment.  We had a very brief
20   conversation.  He's an incredibly gracious and nice
21   gentleman.
22        I alerted Judge Viscomi by e-mail of my
23   appointment.  We had no substantive conversations about
24   the cases.  He acknowledged my e-mail.  Wished me the
25   best.

---

**Page 8**

1         I sent an e-mail to Special Master Norton in
2    Missouri just alerting him to my appointment.  And I
3    recently sent an e-mail to Judge Burlison in Missouri,
4    I think it is, notifying him of my appointment.  But
5    again, we have had no conversations whatsoever.  So to
6    put your mind at ease, I have had no substantive
7    conversations either in person or e-mail with any of
8    these people.  I thought it was appropriate to wait to
9    get some insight from you.
10        My general understanding of where we are is
11   as follows:  I know that the focus of this MDL to date
12   has been on the Daubert issues.  I know that you dealt
13   with causation discovery.  I know that Judge Pisano
14   recently entered an order permitting some corporate
15   depositions to go forward.
16        I'm generally under the impression that you
17   are now in the phase of the case where you are seeking
18   to identify and work up bellwether cases.  I would like
19   to get a little bit more detail on where you are on
20   that.
21        At one time I saw on the docket a scheduling
22   order.  I tried to track it down, but the docket is
23   just so big and my computer power is not that strong.
24   I just couldn't find it again.  So I'm sure you can
25   alert me.  But I have a vague recollection that at

---

**Page 9**

1    least the last scheduling order was sometime in May or
2    June you were going to finish fact discovery.
3         That's what I know about the general status
4    of the case.  At least the two general issues that we
5    are going to discuss today are privilege and
6    depositions.  Anything else you want to discuss is
7    fine, we can, of course, discuss that.
8         But in terms of just a general status of the
9    case, and maybe dealing with it at sort of a
10   10,000-foot level, is my understanding of where we are
11   generally correct; you are through causation, Daubert,
12   discovery?  It doesn't sound -- I could be wrong, it
13   doesn't sound like you've identified yet the
14   bellwethers that you are going to go to trial with, but
15   you have a subset of cases from which those cases are
16   going to be selected.  Some or all of them are being
17   worked up now and at least at sometime in the past
18   there was a deadline that Judge Wolfson probably set to
19   finish fact discovery on those cases.
20        So that's my general understanding of where
21   we are.  Maybe starting with the plaintiffs, can you
22   tell me what I missed and what I should know.
23        Again, we are just talking from a 10,000-foot
24   level, because there is just so much history here that
25   I may not need to know to do the work that I was asked

---

DocuSign Envelope ID: 0CE15BB5-86EA-42E4-99CB-CBA6B24D2002

March 31, 2021

## Page 10

1  to do.
2      MS. PARFITT:  Judge, this is Michelle
3  Parfitt, I am a plaintiff's colead.
4      And perhaps just to start with the bellwether
5  and then pass to my partner and others.
6      We have, in fact, as of yesterday, we have
7  whittled down the number of bellwether selections to
8  three each.  The process started months ago where we
9  worked up preliminarily about 30 cases and then each
10  side selected four, and then yesterday we -- each side
11  struck one case from the other side.
12      So, we are really at the phase of bellwether
13  wherein we have now, both plaintiff and defendant have
14  three cases each, and those cases will then move
15  forward with regard to a more fulsome discovery
16  process.  So that's where we are right now.  So that is
17  moving full steam ahead, and we are obviously
18  encouraged and excited about that process.
19      So I took the very last comment that you
20  talked about first with regard to where we are on the
21  case-specific discovery.
22      And you are absolutely correct with regard to
23  Daubert.  We spent the last few years working up that
24  aspect of the case, and again, very excited to be
25  getting to the liability portion of the case which,

## Page 11

1  frankly, brings many of the issues to you.
2      And I'll pass the baton to my partner, Leigh,
3  and see if she wants to add anything to that.
4      SPECIAL MASTER SCHNEIDER:  Could I just ask
5  you a question there?
6      MS. PARFITT:  Yes, mm-hmm.
7      SPECIAL MASTER SCHNEIDER:  So there is a
8  total of six cases that are now in the bellwether pool.
9      MS. PARFITT:  Yes.
10      SPECIAL MASTER SCHNEIDER:  Do I take it that
11  there is a general consensus that you are going to work
12  up those six individual cases as if they are -- all six
13  are going to go to trial?
14      MS. PARFITT:  That is correct.  And then what
15  will happen is, the plaintiffs will have the
16  opportunity to make the first selection for the first
17  bellwether trial; then the defendants will make the
18  next selection for the second case.
19      So we are on track to move forward.  Judge
20  Wolfson has indicated that she's hopeful that we will
21  perhaps in 2022 be able to actually have a trial.  And,
22  again, we are enthused about that.
23      The discovery order that is before the court
24  right now with regard to those bellwether cases takes
25  us through to about December of 2021.

## Page 12

1      So we have a fairly arduous schedule ahead of
2  us with regard to those six cases, but we've begun that
3  process and, again, optimist that we will be able to
4  have a trial the first of 2022.
5      SPECIAL MASTER SCHNEIDER:  I'm going to pick
6  on you, because I have you in my box here.
7      The latest scheduling order, the one I saw at
8  one time that I couldn't track down; one, do you know
9  the docket number; and, 2, do you have the dates handy
10  what those deadlines are?
11      MS. PARFITT:  I'll do better then that.  Now
12  why don't we send that.  How about that?  I feel like
13  I'm in law school now and I'm the block that you found,
14  right, I'm being called, I'm Vannah White.
15      No, no, I'm delighted to give the infor --
16  why don't we do this, we can send you a copy of not
17  only the scheduling order.  How will that be?  Then you
18  will have that.
19      SPECIAL MASTER SCHNEIDER:  Okay, do you know
20  the deadlines offhand?  Because it -- it probably will
21  be important for what we talk about today in terms of
22  scheduling.
23      MS. PARFITT:  I do.  If you give me just a
24  few minutes, I'll go ahead and get that handy for you,
25  okay?

## Page 13

1      SPECIAL MASTER SCHNEIDER:  Okay.
2      MS. PARFITT:  All right.
3      SPECIAL MASTER SCHNEIDER:  So if you want to
4  pass it off in the meantime to your colleague, that's
5  fine.
6      MS. O'DELL:  Then, great, I will take the
7  baton, Judge.
8      I will say the initial deadline is May 15th
9  for additional discovery in the cases that were
10  selected, initial fact discovery.  And if not mistaken,
11  we depose experts July the 2nd, and it sort of moved
12  through, you know, for the remainder of the year.
13      But we'll put the order in the chat or
14  circulate it, if that is of help to you.
15      And so most of that work, Your Honor, will be
16  case-specific work.  And the expert causation work
17  would be really in somewhat of a separate track than
18  the liability discovery, you know, that will likely be
19  the subject of this call, whether it be privilege
20  challenges, corporate witness depositions, et cetera.
21      SPECIAL MASTER SCHNEIDER:  Generally, from
22  plaintiffs' perspective as to these six cases, is there
23  any, I'll call it fact discovery, generally, we can get
24  into specifics after we drill down a little bit, that
25  you want to take?  Are there additional fact

schedules@mfreporting.com          Mastroianni & Formaroli, Inc.          856-546-1100
Professionals Serving Professionals

DocuSign Envelope ID: 0CE15BB5-86EA-42E4-99CB-CBA6B24D2002

March 31, 2021

## Page 14

1  depositions that -- apart from the ones that Judge
2  Pisano dealt with that you want to take?
3          MS. O'DELL:  Your Honor, let me make sure I'm
4  clear on your question.
5          Are you will talking about in the individual
6  cases that have been selected for the bellwether pool?
7          SPECIAL MASTER SCHNEIDER:  Just the six.
8  Because that's all we are dealing with now; the six
9  cases, right?
10         MS. O'DELL:  Yes, sir.  But in terms of the
11 bellwether preparation, that would be correct.  And I
12 suspect in each of those individual cases, there will
13 be additional fact witnesses, lay witnesses, and then
14 also treating, other kind of health care professionals.
15 We haven't done that analysis, but I suspect that will
16 occur.
17         But in a separate independent track, you
18 know, the Plaintiffs' Steering Committee would like to
19 focus on corporate witness depositions that haven't
20 been taken, certainly not in this MDL, but in other
21 state court proceedings as well.
22         And so that liability discovery is something
23 that we really have not had a opportunity to turn our
24 attention to.
25         SPECIAL MASTER SCHNEIDER:  Are you going to

## Page 15

1  ask to take any corporate depositions other than the
2  ones that Judge Pisano dealt with in his recent order?
3          MS. O'DELL:  You know, right now, I'll defer
4  to my colleague, Chris Tisi, who has been sort of
5  spearheading the discovery, liability discovery.
6          And so Chris, if you want to take that
7  question you can provide a more fulsome answer.  The
8  answer -- the true answer, I believe, Judge, is no.
9  But, Chris, please take it -- take it from there.
10         MR. TISI:  Well, Your Honor, the only reason
11 I know -- this is Chris Tisi, for the record, on behalf
12 of Plaintiffs' Steering Committee.
13         There -- we mentioned -- you raised another
14 one yesterday -- of -- Rich Bernardo, who is my
15 counterpoint on the other side, we talked about Mr.
16 Jutkowski (phonetic) -- I'm sorry, Mr. -- he's a
17 witness, I'm forgetting the name.  Rich, maybe you can
18 help me out on it but...
19         As we go through and are appearing to these,
20 there may be other corporate witnesses who we want to
21 depose.
22         I mean we have -- one of the things, I think,
23 to back up, if you don't mind, we have kind of a dual,
24 a dual responsibility here that I'm trying to navigate.
25 One is to take whatever corporate and third-party

## Page 16

1  discovery we need to do from a more general standpoint,
2  not case specific, that would be usable in the
3  bellwether trials that Judge -- that Judge Wolfson has
4  indicated she intends to try.
5          The other aspect and the other -- I need to
6  keep on is the development of a trial package for the
7  purposes of -- for the purposes of any case that might
8  be remanded from her court.
9          And so to answer your question, I believe
10 there are two subtracks here.  That would be on one
11 hand trying to make sure that we have the liability
12 testimony necessary to prove our case on the liability
13 side for the cases that are bellwether cases and the
14 other one is a more long-term.
15         I would also add here, there are other
16 potential third parties that we are looking into in
17 addition to corporate witnesses.  We are evaluating
18 those.  And so -- so I didn't want to leave this
19 conversation without -- without saying that your
20 question was premised on corporate liability witnesses,
21 but there might be some third-party witnesses who we
22 need to discuss as well.
23         I hope I have answered your question.
24         SPECIAL MASTER SCHNEIDER:  Let me ask you
25 this question:  Does anyone disagree with the notion

## Page 17

1  that we ought to have -- we ought to set a deadline
2  where the plaintiffs, and probably the defendants as
3  well, identify what additional discovery they want just
4  on these six bellwether cases?
5          Ms. Sharko.
6          MS. SHARKO:  Yes.  So in terms of
7  case-specific discovery relating to these specific
8  plaintiffs, we have that order in place.  We have to
9  complete fact discovery by May 14.  We have deadlines
10 for expert reports.  Expert depositions are to be
11 completed by December 3.  And then we move back into
12 Daubert with case-specific Daubert, which we haven't
13 done, and other dispositive motions.
14         So I think in terms of what specific
15 discovery do we need about this plaintiff or that
16 plaintiff, we have a schedule on that.
17         SPECIAL MASTER SCHNEIDER:  Here's what I was
18 thinking about, Ms. Sharko.
19         I know we have a May 14th date.  So I'm
20 trying to get you to that date; finished, done, no
21 extensions.
22         Wouldn't it be prudent to identify, say, in a
23 week or two, what discovery, say, the plaintiffs want.
24 Because if there is going to be an objection, let's tee
25 up the objection, get it decided so that we don't get

Pages 14 to 17

March 31, 2021

## Page 18

1   to May 12th and we have to tee up the issue for
2   decision.  And if it's -- if plaintiff is permitted to
3   go forward with the discovery, it will never get done
4   by May 14th.
5       So if plaintiff intends -- I'm just talking
6   about the 6th now.  If plaintiff intends to take, say,
7   third-party discovery with regard to these six,
8   wouldn't it be prudent for them to identify in a week
9   or two or whatever date we agree to, what they want to
10  take.
11      If there is no objection, fine, plaintiffs
12  have until May 14th to finish.
13      If there is an objection, we can tee up the
14  objection sooner rather than later so we can meet that
15  May 14th date rather than what usually happens is, come
16  May 7th or 10th or 12th, Oh, by the way, Judge, you got
17  to decide this issue, and we need an extension of time,
18  because if you are permitted to go forward, we'll never
19  get it done by the deadline.  That's what I'm thinking.
20      MS. SHARKO:  So I think in fair -- in
21  fairness to the plaintiffs, what the parties intended
22  by the May 14 deadline was the deadline to complete the
23  depositions of the friends and relatives, the doctors,
24  employers, whatever people have specific knowledge
25  about a given plaintiff.

## Page 19

1       I don't think we intended May 14 to be a
2   deadline to complete any other discovery.  We are happy
3   to have a deadline.  May 14 might --
4       SPECIAL MASTER SCHNEIDER:  What about the
5   third -- what about the third-party discovery?  That's
6   fact discovery.
7       MS. SHARKO:  I don't know what third-party --
8   I don't know what third-party discovery they
9   anticipate.
10      SPECIAL MASTER SCHNEIDER:  That's why --
11  that's why I think -- that's why I suggest wouldn't it
12  be prudent to get that identified sooner rather than
13  later to see if there is an objection.
14      MS. SHARKO:  Sure.
15      MS. O'DELL:  Your Honor, we certainly would
16  be open to, you know, a schedule.  But as Ms. Sharko
17  has said, and what the order says, and I sent it to you
18  by e-mail.  Your Honor, somehow I can't place it in the
19  chat on the Zoom, and so I apologize for that.
20      But it really is case specific and it was
21  intended to be, as she said, family and friends,
22  specific health care providers for that particular
23  plaintiff.
24      And since we have not had opportunity to do
25  liability discovery at all, and there's been, to date,

## Page 20

1   no contemplation of a cutoff of that, because we really
2   are getting started.
3       And so, you know, we are very open to what
4   Your Honor would like in terms of contemplating a
5   schedule.  But trying to get those depositions done by
6   May 14th, I'm not sure, you know, how that can be
7   accomplished.
8       SPECIAL MASTER SCHNEIDER:  Yeah.
9       Well, Ms. O'Dell, I'm in a tough position
10  here, because in my former life I had some say over the
11  schedule, and I would say, "extension granted."
12      But right now my hands are tied, and I have
13  to live with this May 14.
14      Now, I don't disagree with you that I would
15  love for every -- since you've already identified these
16  six cases yesterday, right?  The odds are pretty good
17  you haven't rolled up your sleeves and studied these to
18  the nth degree like you will for trial, both sides,
19  right?
20      So would it be prudent to give both sides an
21  opportunity to identify, to study those cases, what
22  they want, see if there is any objections.  Maybe you
23  all can agree on a reasonable new date to complete all,
24  A-L-L, discovery, not just friends and relatives,
25  doctors.  Because I don't think it was anticipated when

## Page 21

1   this deadline was set that there would be a carveout
2   just for doctors and friends.  I think when it says
3   "fact discovery," that's everything, right,
4   third-parties, corporate deps, everything.
5       MS. O'DELL:  No, sir.  Actually it says, case
6   specific, you know, fact witnesses, I believe, in
7   that -- in relation to the May 14th or May 12th -- I
8   can't remember the date -- maybe May 14th deadline.
9   And it was really --
10      SPECIAL MASTER SCHNEIDER:  Don't you think
11  that that encompassed all discovery that you need for
12  trial of that case?
13      MS. O'DELL:  No, sir.
14      MS. PARFITT:  No.
15      SPECIAL MASTER SCHNEIDER:  No?
16      MS. PARFITT:  I think so.
17      I think this may be the one time, Your Honor,
18  that all of us are perhaps in agreement.  Note this
19  moment.  This is a good moment.  You are right.
20      SPECIAL MASTER SCHNEIDER:  Freeze frame.
21      MS. PARFITT:  Freeze it.  Freeze the frame.
22  That's right.
23      But I think the gentleman is exactly right
24  with what we -- we totally -- and that's what we are
25  hopeful to talk about today with you and if we need to

Pages 18 to 21

March 31, 2021

## Page 22

1 go back to Judge Wolfson.
2      I will say that, as everyone has indicated,
3 that that case specific, factual specific deadlines, we
4 really did anticipate that was just to get the cases
5 worked up. I hear the Court.
6      SPECIAL MASTER SCHNEIDER:  Okay.
7      MS. PARFITT:  I know, I hear you completely.
8      SPECIAL MASTER SCHNEIDER:  Okay.
9      MS. PARFITT:  We could -- there is a lot we
10 would like to do. And that's probably what brings us
11 to you today as well, because all of those things that
12 you are talking about would be prudent to do, we would
13 like to do. There are any number of deponents that we
14 would like to talk to Your Honor about today that we
15 feel would be important to take.
16      And you are absolutely correct, there will be
17 some additional -- I suspect there will be some
18 additional deponents based upon the depositions of the
19 current list. So we --
20      SPECIAL MASTER SCHNEIDER:  Can I ask you this
21 question? You are in agreement on the May 14th date,
22 fine.
23      The expert date, plaintiffs' expert date is
24 August 27th. Is it fair to state that it was
25 contemplated that before that date all fact discovery

## Page 23

1 would be done? All the fact discovery that you are
2 going to use for that case at trial?
3      MR. TISI:  Judge, I don't think -- and maybe
4 part of the problem -- this is Chris Tisi, again --
5 part of the issue was that this was bifurcated. And I
6 would refer Your Honor to the December 16th letter we
7 sent to Judge Pisano. We made it clear in that letter
8 that we were going to identify additional third parties
9 on a separate track as well as perhaps some other --
10 other corporate depositions.
11      Now, in terms of the date, the August date,
12 you know, I could be wrong here, but my impression was
13 that those were proceeding on a separate -- on a
14 separate track than the generic fact discovery that we
15 were trying to work with Judge Pisano on.
16      I think you have to recall, until Judge
17 Pisano actually issued his order in January, the
18 positions of the parties were we need to do some
19 discovery; no discovery ought to need happen at all.
20 So until January happened, we were -- the car was still
21 in the garage. We couldn't do anything.
22      SPECIAL MASTER SCHNEIDER:  How about this
23 suggestion. How about -- why don't you agree amongst
24 yourselves, and I can present it to Judge Wolfson or
25 you could present it to Judge Wolfson, say May 14th you

## Page 24

1 are going to do friends and family and doctors. And
2 August 1st, soup to nuts, you are going to finish
3 everything, fact discovery, on those six cases.
4      MS. SHARKO:  So, Judge, if I may.
5      The deadline for the plaintiffs' expert
6 reports, which is all their expert reports, is
7 July 2nd, per the order that Ms. O'Dell, Ms. Parfitt --
8      SPECIAL MASTER SCHNEIDER:  Okay. You're
9 right. Okay, I mixed it up. I have it in front of me.
10 You're right.
11      MS. SHARKO:  That's okay. But I want to
12 add -- add more.
13      I don't want to inject any static, but I mean
14 we disagree -- we disagree that we are at the beginning
15 of discovery. If the car's in the garage, it's there
16 because the journey is complete.
17      Moving -- I'm not done. I'm not done.
18      Moving -- so moving -- moving on, where we
19 need the most help from Your Honor right now is on the
20 privilege issues and the requests for the deposition of
21 the lawyer.
22      SPECIAL MASTER SCHNEIDER:  No problem. Easy
23 enough. I'd like to put that issue aside, though,
24 because I don't -- that's going to be easy to deal
25 with --

## Page 25

1      MS. SHARKO:  Okay.
2      SPECIAL MASTER SCHNEIDER:  -- but if
3 plaintiffs' final -- these six cases, expert reports
4 are due July 2nd, can we say that all fact discovery,
5 friends and family, third parties, any corporate
6 additional depositions that you are permitted to take
7 now or in the future are going to be done by June 1?
8      MR. PLACITELLA:  Your Honor, can I just --
9 can I just weigh in for one second?
10      Plaintiffs' expert report deadline was set.
11 There were certain assumptions that were going to be
12 made.
13      To the extent that the depositions of --
14 corporate depositions are relevant and would be taken
15 into account in fashioning an expert report, there's
16 gotta be -- we have to program in enough lead time
17 between when that expert report is actually due and
18 when we finish the liability discovery.
19      Now, not every expert is going to be impacted
20 by liability discovery, but some will be.
21      SPECIAL MASTER SCHNEIDER:  Right.
22      MR. PLACITELLA:  And when that date was
23 established, I think it was established with the
24 assumption that there would be some level of inertia
25 going forward to get things going.

DocuSign Envelope ID: 0CE15BB5-86EA-42E4-99CB-CBA6B24D2002

March 31, 2021

| Page 26 | Page 28 |
|---|---|

**Page 26**

1 Unfortunately, without getting into who is
2 responsible for what, while the car may be in the
3 garage, there seems like a bunch of vehicles that have
4 been stuck in the mud.
5 So, you know, we are going to have to get
6 them out of the mud and moving forward and we may have
7 to adjust some of those deadlines. That's all I'm
8 saying.
9 SPECIAL MASTER SCHNEIDER: Would you -- would
10 you agree with me then, Mr. Placitella, that at least
11 at the moment, as far as plaintiffs are concerned,
12 there is no what I'll call a drop-dead deadline to
13 complete fact discovery for these six cases?
14 MR. PLACITELLA: Yeah, if that includes
15 third-party discovery, I think the answer is yes.
16 MS. SHARKO: That's correct.
17 SPECIAL MASTER SCHNEIDER: Okay. Do you
18 think it's prudent that we set that date, like you --
19 first you -- see if you can agree with the defendants
20 on it.
21 And by no means, by setting the date, don't
22 take that to mean that all the discovery that the
23 plaintiffs want is going to go forward. If there is an
24 objection, we have to deal with it, of course.
25 But I'm hearing that although -- and you are

**Page 27**

1 all on the same page, there is a May 14th date, that is
2 not the date to complete everything. It just seems to
3 me the goal should be to get these six cases worked up
4 so that you can get ready to try them. We can't do
5 that unless we have a drop-dead fact discovery date,
6 corporate, third-party, friends, family, doctors,
7 whatever.
8 What do you will suggest that date is?
9 MR. TISI: May I just at least inject
10 something we haven't talked about now so at least you
11 have a full picture of where we are.
12 One of the issues -- and this was
13 contemplated early on when we -- when we co-drafted and
14 the judge approved CMO No. 11, which was the defendants
15 had asked that we attempt to coordinate with other
16 jurisdictions that are conducting discovery. And one
17 of the challenges that -- that Rich and I have had, and
18 I don't want to ever speak for Rich -- but one of the
19 challenges we've had is if were just trying to schedule
20 depositions on our own it, would be a little bit
21 easier. One of the things that happened over time
22 was -- and we've had -- we've run into this a couple of
23 times -- because the defendants want to coordinate, or
24 conversely, if there is a deposition going on in
25 another jurisdiction that we want to cross notice, we

**Page 28**

1 are not only at the mercy of the people on this phone
2 call, but we have to accommodate the schedules of other
3 people who might -- who might also need to take the
4 deposition.
5 So we have run into a situation, I'm thinking
6 I'm thinking off the top of my head of a situation, we
7 agreed on a date, it was okay with folks in Florida and
8 Missouri and the MDL, but we come to learn it wasn't
9 okay with the lawyers coordinating in California. So
10 now we had to take the date and then push it down the
11 road to a time where it could accommodate everybody.
12 So there is some scheduling challenges here
13 that I -- because of the way in which this case has
14 progressed that at least have to take into
15 consideration as we set those dates.
16 If we were with just setting those dates for
17 doctors, for example, case-specific doctors in this
18 case, those are relatively easy to schedule.
19 MS. SHARKO: So I have a suggestion. I have
20 a suggestion.
21 I think it is pretty clear that no one on the
22 call, except Your Honor, was prepared to talk about
23 this issue. And we have done pretty well, I have to
24 say, Leigh and Michelle and I, in meeting and
25 conferring and agreeing on things.

**Page 29**

1 So my suggestion is you leave us to meeting
2 and confer about the concept of a deadline for
3 identifying the discovery and then a deadline for
4 completing it, consistent with the orders to which we
5 already agreed, because we definitely don't want to
6 undo those. We made progress to get there.
7 And then when we have our next meeting, come
8 back and maybe we'll have an agreed-upon order,
9 hopefully, but if not, perhaps you can help us.
10 SPECIAL MASTER SCHNEIDER: I think that's a
11 very good idea. That's an excellent idea, because,
12 one, these six cases were just identified yesterday.
13 So in fairness, we don't know what we don't know yet.
14 And, you know, I live in the real world. I
15 don't live in a fantasy world. The orders are pretty
16 good you are going to ask Judge Wolfson for an
17 extension of time to complete -- well, maybe you are
18 going to object --
19 MS. SHARKO: No.
20 SPECIAL MASTER SCHNEIDER: -- but the
21 plaintiffs will.
22 MS. SHARKO: We are -- we are committed to
23 getting this done so we can have a trial the first
24 quarter of 2022. I think Ms. O'Dell and Ms. Parfitt
25 and I stand united.

schedules@mfreporting.com          Mastroianni & Formaroli, Inc.          856-546-1100
Professionals Serving Professionals

March 31, 2021

Page 30

1    SPECIAL MASTER SCHNEIDER:  Right.  No, I
2    don't -- I don't disagree with that.  I don't think the
3    back end is going to be extended at all.  But the
4    interim deadlines may have to be adjusted to
5    accommodate the plaintiff.
6        We are hearing from the plaintiff today that
7    they are saying that they are not going to get
8    everything done by May 14th.
9        MS. O'DELL:  Your Honor.
10       SPECIAL MASTER SCHNEIDER:  That's what I'm
11   hearing from the plaintiff.
12       MR. BERNARDO:  Your Honor.
13       MS. O'DELL:  Your Honor, if I could just --
14   if I could interject here.
15       I mean, we are really not -- you know, what
16   was contemplated for the order for the bellwethers is
17   Susan and Michelle and I did agree to that order.  We
18   had no sense that for those case-specific preparations
19   for those bellwether trials that we would need an
20   extension at this point.  Unless there is something
21   unforeseen, another wave of COVID, something else
22   happens, we are on track for that.
23       What we have always envisioned is that there
24   would be a separate parallel track for liability
25   discovery that would not only be used for the

Page 31

1    bellwethers in 2022, but would be materials that would
2    be gathered and marshaled for a trial package that
3    would be used in these cases when they are remanded to
4    their home jurisdictions.
5        And so we have never thought -- we thought
6    they would work together.  And so to be honest, I would
7    have anticipated, and I need to talk to my colleagues,
8    that liability discovery would be ongoing throughout
9    the remainder of the year because it's going to be used
10   in, you know, thousands of cases.
11       SPECIAL MASTER SCHNEIDER:  But Ms. O'Dell,
12   but here's the problem with that, that I see.  I want
13   to get back to what Mr. Placitella said, which I agree
14   with.
15       Some of the ongoing fact discovery that you
16   want to take is likely -- not all of it, of course --
17   is likely to be relevant to the expert reports that are
18   due by whatever the date is, June or July.
19       So there is that conundrum of -- I mean,
20   if -- if the plaintiffs agree that they will get their
21   final expert reports in, that's it, we are done,
22   finished.  I don't think the defendants are going to
23   object if you continue to take discovery.
24       If they have an objection to the substance --
25   in theory, they may have an objection to the substance

Page 32

1    of it.
2        But Mr. Placitella raised what I think is a
3    good point, and how do we deal with that?  How does --
4    how does discovery continue through the end of the year
5    if it's relevant to the expert reports that are due in
6    June or July?
7        MS. O'DELL:  I think -- yes, and to pick up
8    on Chris's comments.  There -- there are certain
9    experts that would be more pertinent, too.
10       SPECIAL MASTER SCHNEIDER:  Yes.  Absolutely.
11       MS. O'DELL:  And so if you have a
12   case-specific gyn oncologist, for example, that is
13   offering a general causation and a causation opinion,
14   some of it might support -- further support their
15   opinions, but it's unlikely to provide a new opinion,
16   because they are relying on a lot of the discovery that
17   has already been taken, as well as for the causation
18   case.
19       So understand Your Honor's point.  I just
20   wanted to share with you what our perspective has been
21   in terms of preparing the cases going forward to the
22   bellwethers.
23       MR. TISI:  Judge, I'm sorry, I didn't mean
24   to --
25       SPECIAL MASTER SCHNEIDER:  No, go ahead,

Page 33

1    counsel.
2        MR. TISI:  We did face this issue in the TRT
3    litigation, Your Honor.  And the way in which it was
4    handled was, the parties can continue, and I think
5    Judge Connolly issued an order, that the parties, there
6    was a deadline for the parties to take liability
7    witnesses that would be usable in one of the bellwether
8    trials up until, I want to say it was 30 days before
9    trial, 45 days before trial, I would have to take a
10   check of the order.
11       The fact of the matter is that for the
12   liability questions, okay, it is unlikely that they
13   will affect the expert reports.  The expert reports are
14   primarily going to be scientific and medical, okay.
15   The depositions that we are taking primarily right now
16   are relating to, for lack of a better term, what did
17   you know and when did you know it?  And that is
18   not typically --
19       SPECIAL MASTER SCHNEIDER:  Okay, fair enough.
20       MR. TISI:  This is not typically going to be
21   a question that is the subject of -- now, I'm not
22   saying that an expert wouldn't say, look, you know, I
23   think that such and such should have happened by such
24   and such date and, you know, now I read the deposition
25   of something that happened later on in the case.

Pages 30 to 33

## Page 34

1    But for the most part, the corporate
2  liability depositions we are taking are fact witnesses,
3  much like a witness to an automobile accident case.
4  That is not typically going to be the subject of expert
5  testimony.  I'm not saying it won't be.
6    So the way in which we dealt with it in the
7  TRT litigation was, Judge Connolly issued an order that
8  said, you know, no later than "X" date for this trial
9  all depositions need to be conducted by that date.
10   Now, he didn't foreclose that there might be
11 other depositions for other trials, but for that date
12 he -- that's what he did.
13   So I offer that as just a learning from
14 another piece of litigation that might be useful, for
15 whatever it worth.  And it may not be worth much, but
16 it's what I throw out there.
17   MS. SHARKO:  So I just -- I'm concerned
18 because it is 4:13 and we lose Mr. Bernardo at 4:30,
19 and we need him to weigh in on the defense' side.  I
20 think on the plaintiffs' side, too.  They like to talk
21 to him better than they like to talk to me on these
22 issues.  We need him on privilege and on the
23 lawyer-deposition issues.
24   SPECIAL MASTER SCHNEIDER:  Okay, let's turn
25 to that then, Ms. Sharko.

## Page 35

1    MS. SHARKO:  Thank you.
2    SPECIAL MASTER SCHNEIDER:  And then if need
3  be, we can turn back to the other issue.
4    I'm looking to you as the best way to tee up
5  this privilege issue.  I think that -- I read the
6  transcript of the hearing, and I thought Judge
7  Wolfson's instructions were pretty clear.
8    February 17th I wrote down:  Privilege
9  question should be raised right at the outset so
10 everyone understands what's fair game and what's not.
11 If you think somewhere down the line any of these
12 documents may come into the case or you may be
13 interested in them you have to bring your objections
14 now; and if you don't do it, they are not coming into
15 this case.  Can't do it later.
16   So the instruction is, if the plaintiffs
17 think they may want to use any of these alleged
18 privileged documents at trial, they have to tee up this
19 objection now.
20   And I read the transcript, you did, too,
21 Judge Wolfson said, in effect, I don't care if some
22 judge in Missouri said they are not privileged, we are
23 going to live and die by the decisions in this case.
24   So really, I think the ball is in plaintiffs'
25 court.  Do you know what you want to challenge, if

## Page 36

1  anything?  And then we'll discuss how to tee up the
2  issue to get it decided.
3    MS. O'DELL:  Your Honor, we do have
4  challenges.  We have been looking at the revised
5  privilege law.  There has been a lot of activity on the
6  defense' side in terms of certain documents being
7  de-privileged.
8    And so we have been looking at that.  We are
9  expecting some new material from Rich, you know,
10 shortly in terms of the outstanding challenges that are
11 going on in state court as well so we can coordinate.
12   Our discussion -- just discussion internally
13 has been that we would identify the documents that we
14 plan to challenge the privilege designation by April
15 the 9th in order to provide to Rich and others, meet
16 and confer, for those that we could not reach agreement
17 on that we would bring those challenges to Your Honor
18 for purposes of having you decide the issues.
19   SPECIAL MASTER SCHNEIDER:  That's great.  No
20 problem at all.
21   Question:  If we are dealing with a hundred,
22 hundred and fifty documents, very easily look at every
23 single one in camera.  If we are dealing with seven or
24 eight thousand, you know, I can do it easy enough, I've
25 done it before, but it will make it a little bit

## Page 37

1  harder, unless the parties can agree to put the
2  documents in categories and have a representative
3  sample of each category and the ruling as to the
4  representative sample will apply to that category.
5    Any discussion about that?
6    MR. BERNARDO:  Your Honor, this is exactly
7  how we have been agreeing to do it in connection with
8  the New Jersey litigation.  And I have been working well
9  with Ms. O'Dell and Ms. Parfitt, Mr. Tisi, and will
10 continue to do that to try and streamline this.  I
11 think the April 9th deadline is fine.
12   I think the key here is that there are
13 challenges being made in multiple courts over the same
14 documents.  And we needed to do something to ensure
15 that they are getting dealt with in some coordinated
16 manner.
17   I think Step 1 is as Ms. O'Dell suggests, for
18 us to meet and confer and come up with the list.  I
19 think your suggestion, Your Honor, of categories is
20 spot on.  That's how the challenges really have been
21 done in the ones in New Jersey, and we already have
22 focused on categories.  And as I think that Your Honor
23 knows, several of those categories have already been
24 briefed.  And we would suggest that those be the first
25 in line, so that whatever courts are looking at them,

Page 38

1    Your Honor, in conjunction with Judge Viscomi or Judge
2    Norton, however that's going to work, it get done
3    together.
4          So I'm happy to work with Ms. O'Dell to
5    narrow that. Also agree that trying to refine it to a
6    representative set makes much more sense. I think some
7    of these are legal issues that could -- I would say,
8    uphold the privilege of large swaths of documents.
9    Ms. O'Dell may have the opposite view. In any event, I
10   think we are all on board with that.
11         And if I may, since there actually is a
12   transition here from the privilege issue to the
13   deposition issue, if I could just segue into that, Your
14   Honor, simply because that has some time sensitivity
15   associated with it in light of --
16         SPECIAL MASTER SCHNEIDER: Can I ask one
17   question, though, before we get to that, Mr. Bernardo.
18         The question would be to Ms. O'Dell.
19         April 9th, whatever you present to the court,
20   let's say there is a hundred and fifty documents, two
21   hundred documents, whatever, either that's the whole
22   set or that's the representative sample.
23         Do you anticipate on April 9 you are just
24   going to send me a one-page or a two-page letter saying
25   these are the documents? Or on April 9th am I going to

Page 39

1    get the documents to review in camera with the
2    appropriate supporting affidavit to support the
3    privilege or work product claim?
4          MS. O'DELL: Our suggestion, Your Honor, was
5    that on April 9th we will give the final list to Rich
6    of those documents that we are going to challenge.
7    Thereafter, the parties would meet and confer. We
8    would narrow down to those areas where we --
9    disagreement remains. And then we would submit that to
10   Your Honor with briefing on why plaintiffs believe that
11   the documents are not privileged.
12         So that would occur sometime -- and
13   depending, you know, on our meet and confer, sometime
14   at the end of April.
15         SPECIAL MASTER SCHNEIDER: Well, let's get a
16   date for that now.
17         Let's get a definite -- let's get a date.
18         If April 9 defendant is going to get the
19   list, you are going to meet and confer, hopefully the
20   sky will fall in and you will agree on everything, but
21   that's not going to happen.
22         So can we say on April 23rd, defendant, you
23   have the burden of proof, you are going to submit your
24   letter brief, supporting affidavits. And a week after
25   that, plaintiff, you will respond, and then we'll

Page 40

1    decide the issue?
2          MR. BERNARDO: Your Honor, I think that
3    works. What I would like to build in, if we may, is an
4    opportunity, if you are available after we get their
5    list on April 9th, to confer with Your Honor if we feel
6    as if however this is going to get adjudicated doesn't
7    really make sense in light of the other issues that are
8    being briefed. I agree with the schedule.
9          SPECIAL MASTER SCHNEIDER: No problem.
10         MR. BERNARDO: With that minor edit, once I
11   get Ms. O'Dell's list -- I'll even after this call set
12   up a date with her to discuss their list. Because I am
13   sure we can do that in short order.
14         And then if based on the list or the process
15   we have issues, we'll reach out to Your Honor to raise
16   them. Because I think there may be some logistical
17   procedural issues that we will want to discuss with you
18   before we put it in writing.
19         SPECIAL MASTER SCHNEIDER: Okay. How about
20   this, Mr. Bernardo -- I don't disagree with anything
21   you said. April 9 you will get the list. You will
22   meet and confer. To the extent you can't agree -- this
23   is the default setting: By April 23rd, defendant will
24   file its letter brief with supporting affidavit,
25   affidavits.

Page 41

1    Plaintiff responds by April 30th.
2          If you think it will help advance the ball to
3    have a phone call between the 9th and the 23rd,
4    perfectly fine, and we can change this procedure. So
5    let's just have a default procedure so at least we have
6    some sort of plan going forward.
7          MR. BERNARDO: That makes sense to the
8    defense.
9          SPECIAL MASTER SCHNEIDER: Okay. Let's segue
10   to the deposition issue, unless we -- Mr. Placitella?
11         MR. PLACITELLA: Yeah, I would just ask the
12   Court, this is a pretty important issue, and if we can
13   have a few more days other than a week to respond, that
14   would be appreciated.
15         SPECIAL MASTER SCHNEIDER: Okay. That
16   reminds me of a question I wanted to ask Ms. O'Dell.
17         If this issue has been briefed already, can I
18   see those -- I don't want to see the decision, but can
19   I see the briefs that have already been filed on these
20   documents? So I may get to a decision as quickly as
21   possible?
22         MR. PLACITELLA: Well, they have been briefed
23   by the parties in a state mesothelioma case. And I
24   don't even know that all the people on the Plaintiffs'
25   Steering Committee have seen the briefs. I've seen

Page 42

1    them. But the issues are not the same.
2         SPECIAL MASTER SCHNEIDER: Okay.
3         MR. PLACITELLA: Some are the same. Some,
4    you know, they overlap but, you know, we still think
5    it's really important to fully brief the issue for you.
6         SPECIAL MASTER SCHNEIDER: No problem.
7         Mr. Placitella, I'm familiar with the issues.
8    I don't need to know the boilerplate --
9         MR. PLACITELLA: I understand.
10        SPECIAL MASTER SCHNEIDER: -- about the
11   attorney-client privilege.
12        Your briefs should just get to the crux of
13   it. That's what I'm really interested in.
14        How about May 5th; is that okay? That will
15   give you the weekend and a few extra days?
16        MS. O'DELL: Your Honor, can I ask our
17   colleague, Dan Lapinski, who is going to probably be
18   taking some of the laboring ore on this. I hate to
19   agree to stuff while his on the phone. He can kick me
20   under the table figuratively.
21        So, Dan, does this work or do you need...
22        MR. LAPINSKI: I like the -- I like the
23   August 27th deadline that you were talking about
24   earlier, but...
25        Yes, the 5th should be fine.

Page 43

1         MS. O'DELL: Thank you.
2         SPECIAL MASTER SCHNEIDER: Okay. Again,
3    without prejudice, Mr. Bernardo, to have the call that
4    we talked about.
5         Let me just say this, you've done this a
6    million times before. I've done this a million times
7    before. And I recently wrote on this in Valsartan.
8         When you send your supporting affidavits in
9    support of the privilege claim, I don't want to see
10   sort of a generic, it's privileged, pro forma
11   affidavit, you know. You know what is needed to be --
12   to support a claim.
13        So I would -- would not expect the caliber of
14   the lawyers in this case that we are going to get what
15   we typically get, the pro forma affidavit, it's
16   privileged, work product, I anticipated litigation.
17        But you know that I'm talking about, right?
18        MR. BERNARDO: I do, Your Honor. And I will
19   assure you what you will get will not be pro forma, it
20   will be far from it.
21        We have really done, I think, a good job of
22   trying to cut though as many of these claims, and as
23   Ms. O'Dell alluded to, downgrade documents where there
24   is no risk of waiver, and we think they might fall into
25   gray areas.

Page 44

1    So what we, I think, would be presenting to
2    Your Honor would be things for which we think there is
3    a legitimate basis for privilege and the supporting
4    materials will not be pro forma.
5         SPECIAL MASTER SCHNEIDER: I know Ms. Sharko
6    said it's only one percent of the production. But one
7    percent of multi-millions is a lot of documents, right,
8    Ms. Sharko?
9         MR. BERNARDO: I'm sure given how far we have
10   gone in downgrading documents, that Ms. O'Dell's
11   challenges will be very targeted as to a much smaller
12   number.
13        SPECIAL MASTER SCHNEIDER: I don't have any
14   doubt whatsoever.
15        Let's segue to the deposition issue you
16   wanted.
17        It seems to me there's -- it seems to me
18   there's two categories to deal with. There is the
19   three people that are in your letter and then the
20   president. I don't really see them as the same issue.
21        MR. BERNARDO: I agree. And I'll just say,
22   again, we can note the time and date for the record. I
23   agree with what Mr. Tisi said earlier in the call,
24   where he and I have been working well together to try
25   and deal with the depositions that have been requested

Page 45

1    in that letter. Other depositions we have agreed on.
2    Many of them we are coordinating on dates.
3         There is really one in particular that we
4    just wanted to raise with Your Honor, because it raises
5    significant issues that we believe Your Honor ought to
6    be addressing.
7         SPECIAL MASTER SCHNEIDER: This is
8    Mr. O'Shaughnessy?
9         MR. BERNARDO: This is Mr. O'Shaughnessy, is
10   a former assistant general counsel.
11        SPECIAL MASTER SCHNEIDER: Right.
12        The plaintiff says the judge in Missouri
13   already ordered that deposition to go forward. And
14   if -- are you -- plaintiff, I take it you are not
15   seeking to take the deposition in this case, are you?
16        MR. TISI: Yeah, Your Honor, let me -- let
17   me -- oh, I'm sorry. Go ahead, Leigh.
18        MS. O'DELL: No, no.
19        MR. TISI: No, no, no. Go ahead. Go ahead.
20   I'm sorry, I thought this was my issue, but I...
21        MS. O'DELL: It is -- it is your issue. I
22   can't keep my mouth shut, Chris, I'm sorry.
23        MR. BERNARDO: I will be happy to take it,
24   but I don't think...
25        MS. PARFITT: Thank you, Rich, but we

Pages 42 to 45

March 31, 2021

---

## Page 46

1  appreciate it.
2      MR. BERNARDO:  I was just volunteering.
3      MR. TISI:  So -- so Judge, this falls within
4  the category of, you know, the fact that -- let me just
5  back up and say that over -- I want to say about four
6  or five thousand non-privileged documents have been
7  produced in this case that have Mr. O'Shaughnessy's
8  name on it.  So clearly he has some factual information
9  that is the not privileged based on -- based at least
10  on --
11      SPECIAL MASTER SCHNEIDER:  Could I -- I know
12  Mr. Bernardo has to leave.  So let's get to the crux of
13  this question.
14      MR. TISI:  All right.  So --
15      SPECIAL MASTER SCHNEIDER:  Is the deposition
16  of Mr. O'Shaughnessy cross noticed in this case?
17      MR. TISI:  It will be.
18      SPECIAL MASTER SCHNEIDER:  Okay.  Then the
19  defendants have standing to move to quash it for use in
20  this case, don't they?
21      MR. TISI:  I think that they -- I think that
22  they do.
23      What they don't have, which is what Mr.
24  Bernardo and I talked about yesterday, is they are
25  seeking to have the question of whether or not this

---

## Page 47

1  deposition goes in the first place, removed from a
2  state court judge, which we don't think is appropriate.
3      SPECIAL MASTER SCHNEIDER:  So how can I do
4  that?  How can I do that?
5      MR. TISI:  Your Honor -- Your Honor, I don't
6  think you can.  I don't think you can.
7      So really where we are here, Judge, if I can
8  frame the issue is, we have a -- we have a Missouri
9  judge who has ordered the deposition.  He has been
10  served in this case.  The judge has already concluded
11  that he has relevant information to provide.
12      SPECIAL MASTER SCHNEIDER:  Okay.
13      MR. TISI:  The question is whether or not
14  there is a cross notice.
15      Now, he was just served yesterday, so there
16  is no cross notice yet, but there will be.  So the
17  question is --
18      SPECIAL MASTER SCHNEIDER:  Okay.  So then we
19  can tee up the objection in this case.
20      MR. TISI:  For the cross notice.  Correct.
21      SPECIAL MASTER SCHNEIDER:  Now, Mr. Bernardo,
22  do you think we have the power to tell the Missouri
23  state judge that he or she has to -- you know what I'm
24  trying to say.
25      MR. BERNARDO:  Your Honor, let me --

---

## Page 48

1      SPECIAL MASTER SCHNEIDER:  What can we do --
2  what can we do about the Missouri state court order?
3      MR. BERNARDO:  It's very simple.  And we
4  accomplished this in the state court proceeding as
5  well.
6      I mean, the starting point, Your Honor, is we
7  believe, given this deposition, the issue of whether it
8  goes forward ought to be decided by this court.  And if
9  it does go forward -- and I'll explain how --
10      SPECIAL MASTER SCHNEIDER:  But the Missouri
11  court already decided it.
12      MR. BERNARDO:  But that -- Your Honor, I
13  think -- I think there is an important point that's
14  being missed here.  This is part of the uniform
15  subpoena act, et cetera.  And the only thing that the
16  Missouri court did was authorize the issuance of a
17  subpoena, which was issued in a Pennsylvania court that
18  has no connection whatsoever to this litigation.
19      So the issue of whether the deposition will
20  go forward or not is going to be decided, at the
21  moment, by a state court judge randomly assigned.  And
22  pursuant to that statute, the deposition and objections
23  to it and privilege rulings that will be impacting this
24  court would be ruled by a randomly-assigned judge in
25  Pennsylvania.

---

## Page 49

1      It is our position that this court ought to
2  make those decisions.  And there is a very simple and
3  elegant way in which that can be accomplished.  And
4  this is exactly what was done in New Jersey state
5  proceeding, which was the potential deponent,
6  Mr. O'Shaughnessy, has agreed to accept service in
7  New Jersey of a New Jersey subpoena, properly executed,
8  and will not contest the jurisdiction of the court to
9  rule on, one, whether the deposition goes forward, and
10  if it does; two, to have it take place in New Jersey.
11      This is how we did it in the state
12  mesothelioma case, for the very important reason that
13  having -- in that instance, I believe it was a criminal
14  judge in Bucks County who was going to be calling balls
15  and strikes if the deposition were going to go forward
16  on privilege issues.
17      And Your Honor is already going to be
18  addressing these privilege issues in connection with
19  the documents.
20      So it's defendants' position that it just
21  makes sense for this court to be adjudicating this, not
22  for a randomly-assigned judge in Pennsylvania.
23      And as I just offered, I think there is an
24  easy way for that to be accomplished.  And to satisfy
25  everybody and do this -- if it's going -- if we lose on

---

**Page 50**

1   our motion to quash to have it proceed in this court to
2   be coordinated for all of the other ovarian cancer
3   actions rather than to have it, you know, be done again
4   in the state court.
5       SPECIAL MASTER SCHNEIDER:  The only thing,
6   when you say there is an easy way to do it, Mr.
7   Bernardo, the only easy way that I can think of is if
8   the parties consent to have this court decide the
9   issue.  What is the easy -- easy solution that you are
10  referring to?
11      MR. BERNARDO:  Is simply what was done in
12  New Jersey.  Because the parties can't, as a matter of
13  jurisdiction, consent to have it adjudicated here.
14  Because if it's issued in Pennsylvania pursuant to
15  their laws, the deposition takes place in Pennsylvania
16  pursuant to Pennsylvania laws.  So it would have to be
17  done pursuant to a New Jersey subpoena.
18      I mean, we are willing to consent to that,
19  and we are willing, through the parties' lawyer who we
20  coordinated with, to have the witness consent to have
21  this court adjudicate whether the deposition goes
22  forward; and if it does, to adjudicate the objections.
23      We can't just do it through -- we can't just
24  do it through consent as far as we read the law, Your
25  Honor, just because of the way the Uniform Deposition

**Page 51**

1   Subpoena Act confers jurisdiction on Pennsylvania.
2       MR. TISI:  First of all, Judge, let me be
3   clear.  I'm pretty sure -- and I could be wrong about
4   this, but I'm pretty sure that this is not being done
5   pursuant to the Uniform Deposition Act.  I don't think
6   that Missouri is part of that.
7       But putting that issue aside for the moment,
8   we can deal with that question, there is a big material
9   difference.  And even Rich and I spent some time with
10  this yesterday.  There is as big material difference
11  between what is going on in the state court in New
12  Jersey with Judge Viscomi and with what is going on
13  here.
14      In that case, okay, you had a New Jersey
15  mesothelioma case, where the New Jersey lawyers went to
16  Pennsylvania to serve Mr. O'Shaughnessy with a dep --
17  with a subpoena.
18      The question of whether or not that
19  deposition goes forward ultimately is decided by the
20  court in New Jersey.  You serve a subpoena, the
21  Pennsylvania -- the Pennsylvania judge puts a stamp on
22  it or doesn't.  Mr. O'Shaughnessy is served.  Motion to
23  quash is filed in New Jersey and Judge Viscomi decides
24  the question.  Here it's a very different --
25      MR. PLACITELLA:  That's not actually what

**Page 52**

1   happened.  No, that's not the way it worked, Chris.
2       MR. TISI:  Chris, let me -- let me finish
3   what I'm saying here, because...
4       The question of -- if the judge in
5   Pennsylvania agrees that the subpoena goes forward --
6   Judge Burlison in Missouri has already decided that the
7   deposition goes forward.  It doesn't come to Your
8   Honor.  It doesn't come to Judge Wolfson in any event.
9   It would go to that judge who ordered the deposition in
10  the first place.
11      The third point I would make that is really
12  important in this case is, this wasn't just an order
13  that was issued pro forma under the -- under the Act.
14  J&J went to Judge Burlison, as best as I know, I wasn't
15  part of the proceedings, asked for reconsideration.
16  The judge actually issued an order specifically
17  considering the question of whether or not
18  Mr. O'Shaughnessy should -- his deposition should be
19  taken; and he affirmatively on reconsideration decided
20  that it should.
21      So the question about where this goes, it
22  goes back to Judge Burlison.  In New Jersey it would go
23  to Judge Viscomi, and that's why procedurally it
24  happened that way.
25      If I'm incorrect, Chris, please feel free.

**Page 53**

1       MR. PLACITELLA:  Well, there's one --
2       SPECIAL MASTER SCHNEIDER:  Do you have a date
3   for Mr. O'Shaughnessy's deposition?
4       MR. TISI:  It's -- right now -- he was served
5   yesterday in the Missouri matter, as best as I know.
6       SPECIAL MASTER SCHNEIDER:  So there is no
7   date certain now when he's going to be deposed?
8       MR. TISI:  No.  I anticipate that J&J will
9   file, J&J or Mr. O'Shaughnessy, one and the same, will
10  be filing a motion to quash in Pennsylvania.
11      If that should be -- if that should be
12  granted, then we are in a position where the only place
13  it could occur is here.  If it should be denied, the
14  deposition goes forward and has to be set in the
15  Forrest case.
16      And then sole question for Your Honor is
17  whether or not it gets cross noticed here.
18      MR. PLACITELLA:  So Your Honor, if I may on
19  procedure, because I've been in -- knowledge about
20  both, but not in both -- in either case, actually, but
21  I've been present.
22      In New Jersey the subpoena was issued to
23  Mr. O'Shaughnessy originally in Pennsylvania.
24      A motion to quash was filed in Pennsylvania.
25  It was actually briefed.  And then the parties in New

Page 54

1  Jersey agreed to have Judge Viscomi ultimately rule on
2  a subpoena that was subsequently issued in New Jersey
3  and took it outside the jurisdiction of Pennsylvania.
4        What we have, from what I understand, in
5  Missouri, is you have a circumstance where whether it
6  should go forward was fought in Missouri.  The subpoena
7  is then subsequently served in Pennsylvania.  I
8  anticipate J&J will file their motion to quash in
9  Pennsylvania.  Will be fought out there.  And should
10  the motion to quash not be successful, it was my
11  understanding that the intent of the court in Missouri
12  was to preside over that deposition and make rulings as
13  that deposition went forward.
14        MR. BERMAN:  If I can make a practical
15  suggestion here?  Since -- I will start by saying, I'm
16  not a Pennsylvania lawyer, Your Honor.  I have spoken
17  to enough Pennsylvania lawyers in connection with this
18  last subpoena to feel as if I at least understand this
19  process.
20        What I would suggest is maybe we submit a
21  very short letter brief in the next couple of days.
22  We'll make our -- Mr. O'Shaughnessy, he has his own
23  separate counsel.  And, obviously, J&J would be moving
24  on behalf of J&J.
25        Happy to explain why what Mr. Placitella is

Page 55

1  saying, at least in our understanding of the law, is
2  incorrect.  In other words, that if the subpoena is
3  issued in Pennsylvania, that the Pennsylvania court
4  would be the one to decide whether or not it goes
5  forward.  And once that is decided, that it would get
6  adjudicated in Pennsylvania.  And we think it ought to
7  be adjudicated before Your Honor.
8        If we are wrong about that -- and our intent
9  simply is -- and I wouldn't understand why plaintiffs
10  would object to that -- is that if it goes forward,
11  Your Honor is the one to decide issues with respect to
12  the scope of privilege of that deposition, because
13  there is no question but that that deposition, if it
14  goes forward, would be used by the people whom you are
15  looking at on this phone call on the plaintiffs' side
16  in this case.
17        And apropos of Judge Wolfson's admonition of
18  privilege issues and how they get decided, they can't
19  unlearn what they learn at a deposition because they
20  are taking it in another case.
21        So we just -- if it's going to go forward,
22  it's obviously an important deposition, and we think it
23  really ought to get decided here.
24        So happy to submit a very short explanation
25  of why we think the procedure is what it is and why we

Page 56

1  think there is an easy way of procedurally having this
2  appear before your court -- before Your Honor.
3        And if plaintiffs disagree that it should be
4  before Your Honor, we can talk about that separately,
5  but I think it makes sense to be before Your Honor.
6        SPECIAL MASTER SCHNEIDER:  There doesn't seem
7  to be a dispute, and there can't be, that if the
8  deposition is cross noticed in the MDL, that this court
9  has jurisdiction to deal with the question of whether
10  or not the MDL deposition of O'Shaughnessy should be
11  quashed.
12        The stickler is whether this court has
13  jurisdiction to upset somehow the decision that has
14  already been made by the Missouri court, right?
15        MR. TISI:  Correct.  And to compare the
16  analogy, Rich's analogy further, I think Judge Wolfson
17  understood that when she was dealing with the
18  arguments.
19        She understood, as best as I understand, that
20  a state court judge could decide that a particular
21  document is unprivileged, it is not privileged
22  according to Missouri law, and she also understood that
23  Your Honor may make a different decision.
24        Her remedy was it doesn't get used in this
25  court.

Page 57

1        SPECIAL MASTER SCHNEIDER:  But why don't we
2  do this, Mr. Tisi, why don't we do this.
3        Why don't we give the plaintiffs a deadline,
4  if they are going to cross notice, this is the
5  drop-dead date.  If you're going to do it, do it by
6  this date; and if you don't do it, you can't take the
7  deposition in connection with this case.
8        Presumably you will cross notice.  J&J files
9  its request to quash.  Plaintiff responds.  I'll decide
10  in the first instance the MDL issue.
11        I don't see how I have jurisdiction over the
12  Missouri court.
13        MR. TISI:  Respectfully, I think you are
14  probably right in that.
15        SPECIAL MASTER SCHNEIDER:  So here's a
16  question for you.  I don't know the answer to this.
17  Suppose, hypothetically, just purely hypothetically,
18  the deposition is just taken with a caption from
19  Missouri.  You get to trial in the six cases.  Can that
20  deposition from Missouri be used in this case?
21        MR. TISI:  We think -- we think that it
22  should be.  And, you know, obviously there are
23  questions there.  But that's ultimately a decision that
24  gets taken down the road.  I mean...
25        SPECIAL MASTER SCHNEIDER:  But isn't that

## Page 58

1   getting through the back door what you can get through
2   the front door?
3        MR. BERNARDO: I think Your Honor hit the
4   nail on the head. That's exactly what's happening. It
5   is going through the back door.
6        It goes back to Judge Wolfson's comment. And
7   I think she specifically raised the challenge created
8   by depositions. And to be clear, I think, if this
9   deposition were to go forward, I would expect that
10  after the witness were to state his name for the
11  record, the response to the first question would
12  probably be a instruction not to answer on the grounds
13  of attorney-client privilege. That's going to have to
14  get adjudicated, because he's the in-house counsel and
15  his responsibility was litigation.
16       SPECIAL MASTER SCHNEIDER: Mr. Bernardo, in
17  view of the direction that Judge Wolfson already gave,
18  purely hypothetical, cross notice. The deposition of
19  O'Shaughnessy is quashed in the MDL. The deposition is
20  taken in Missouri.
21       Do you think Judge Wolfson is going to let
22  that deposition from Missouri come into this case if
23  this court, if this court, me, or the magistrate or
24  Judge Wolfson, decided that the deposition of
25  O'Shaughnessy should be quashed?

## Page 59

1        MR. PLACITELLA: Well, can I respond to that
2   actually?
3        So there is -- there is a misstep here, I
4   think. And that is the Pennsylvania court, they are
5   going to move to quash. If the Pennsylvania court
6   quashes the dep in Pennsylvania, then there is nothing
7   to cross notice, right?
8        SPECIAL MASTER SCHNEIDER: Right. That's
9   exactly right. That's exactly right.
10       MR. PLACITELLA: So it's not yet ripe.
11       Then we come to the point do we want to take
12  the deposition or wait. The plaintiffs want to take
13  the deposition in the MDL. It would be a separate
14  notice which they say Mr. O'Shaughnessy will accept.
15  And at that point you would make a determination.
16       The one thing I probably disagree with on a
17  theoretical basis, a deposition taken in another state,
18  even given Judge Wolfson's statements, does become like
19  a document. If information in that deposition turns
20  out to be privileged, well then it won't come in here.
21  That will be a -- you would look -- you would rule on
22  that like you would rule on any other document.
23       But if there is information in that
24  deposition that is not privileged, well then the court
25  can confront it at that time about how you want to deal

## Page 60

1   with it.
2        To me, I think that we are never going to get
3   there, frankly, because we are going to cross notice
4   it. If it -- if the judge in Pennsylvania allows it to
5   go forward and you are going to deal with it; or if the
6   judge in Pennsylvania doesn't allow it to go forward,
7   then it will be before you on a direct notice. So...
8        SPECIAL MASTER SCHNEIDER: Mr. Placitella,
9   why do we have to wait for the Pennsylvania court to
10  decide? Why can't I just say, if you are going to
11  cross notice it, do it within a week. We'll tee up the
12  issue in this MDL and get it decided. Why do we have
13  to wait for the Pennsylvania court to say whether or
14  not --
15       MR. PLACITELLA: Why am I going to cross
16  notice a deposition that is that going not forward?
17       SPECIAL MASTER SCHNEIDER: Right now it's
18  go -- but until it's -- until it's quashed it's --
19       MR. PLACITELLA: Until they quash the
20  deposition. They've said it in Pennsylvania. From
21  their perspective it should not go forward.
22       So how can you tee up whether it should go
23  forward here if they are fighting it in Pennsylvania?
24  If in Pennsylvania they win, the issue is moot.
25       SPECIAL MASTER SCHNEIDER: I respectfully

## Page 61

1   disagree.
2        I don't we need to wait -- do we know when
3   the Pennsylvania court is going to decide it?
4        MR. BERNARDO: The motion hasn't even been
5   filed, Your Honor. And given our experience in the
6   last iteration of this, my guess is it would probably
7   be a number of weeks before there is any decision.
8        SPECIAL MASTER SCHNEIDER: My goal is to get
9   you to the finish line. So let's tee up the issue
10  sooner rather than later.
11       MR. BERNARDO: Well, and Your Honor, but this
12  is -- this is exactly what we were proposing. We just
13  were suggesting that the easy way to do it is to
14  withdraw that subpoena. Serve it. Have it occur at
15  the MDL and then the deposition happens and it get
16  coordinated.
17       I'm not sure why the resistance to having
18  Your Honor deal with it --
19       MR. TISI: Okay. Let me be -- let me be
20  clear -- let me be clear, Judge, if I can say this.
21       The plaintiffs in the Missouri case have
22  every right to pursue the discovery that they feel they
23  need to have for those cases.
24       For Mr. Bernardo to assume that we have the
25  same interest, that they are exactly a co-existing, is

DocuSign Envelope ID: 0CE15BBF-85FA-4254-90CB-6BA6B24D2002

March 31, 2021

## Page 62

1　very presumptuous.  There are 20,000 -- 25,000 women
2　involved in this litigation.
3　　So what happens is, what is done in that
4　case -- and I think you had it exactly right -- what is
5　done in that case, that judge will rule on -- that
6　judge already ruled that it goes forward, assuming the
7　Pennsylvania court agrees.  He is then going to have to
8　decide -- he has appointed a special master that will
9　preside over that deposition and the rulings on
10　privilege as it goes forward.
11　　Ultimately, that judge will decide what comes
12　into his courtroom.
13　　If we have a circumstance where we get --
14　where we get -- where it's cross noticed, Your Honor
15　and Judge Wolfson will have the same responsibility.
16　　SPECIAL MASTER SCHNEIDER:  Right, right.
17　　MR. TISI:  And the reason why it's not
18　necessarily -- the reason why it is not necessarily --
19　we need to do it on a fast track here is for two
20　reasons:  No. 1, there are -- this isn't a situation
21　where the plaintiffs, as best as I know -- because I
22　have looked at the documents that have been produced.
23　We have -- start to take the deposition of Mr. Bernardo
24　where we have no documents.  They have already produced
25　in this case approximately fifteen hundred documents

## Page 63

1　from Mr. O'Shaughnessy, substantive documents, okay,
2　where -- where he is -- even they agree, that there is
3　no privilege for those documents, okay.
4　　So for those -- even if --
5　　SPECIAL MASTER SCHNEIDER:  Yeah, but doesn't
6　mean -- one, it doesn't mean it's relevant and it
7　doesn't mean it's proportional.
8　　MR. TISI:  Right.  But relevant -- relevancy
9　gets decided obviously down the road.
10　　The second issue is, we already discussed
11　with Your Honor a process to tee up privileged
12　questions to Your Honor which will presumably, I can
13　guarantee you, will involve documents where
14　Mr. O'Shaughnessy is actually --
15　　SPECIAL MASTER SCHNEIDER:  Here's my
16　suggestion.  Here's my suggestion.
17　　If plaintiffs are going to cross notice
18　O'Shaughnessy in this case, do it by April 9.
19　Defendants file their objection by April 23rd.  And
20　plaintiffs respond by May 5th.  Same schedule as the
21　privilege documents, right?
22　　This way we will tee up -- I don't think we
23　have to wait for the Pennsylvania court to rule to tee
24　up the issue in this MDL.
25　　MR. TISI:  Okay.

## Page 64

1　　SPECIAL MASTER SCHNEIDER:  Let's -- let's get
2　it teed up and decided.  That will -- that will give
3　us -- I mean, is the objection to O'Shaughnessy, Mr.
4　Bernardo, is it, one, all of what he has to say is
5　privileged; two, it's irrelevant; or three,
6　proportionality under Rule 26?
7　　MR. BERNARDO:  You generally have it.  It is
8　a little bit more nuance than that, but I think you hit
9　the primary points, yes.
10　　SPECIAL MASTER SCHNEIDER:  Okay, it's all
11　three.  Okay.
12　　MR. BERNARDO:  And I think your suggestion is
13　appropriate.  And I think we'll proceed to file papers
14　and so has counsel in Pennsylvania.
15　　By we may, after we further talk, and I'll
16　talk to Mr. Tisi, we may come back to you if there's
17　any procedural obstacles to achieving that way in light
18　of like you told us.
19　　I was just trying to propose what I thought
20　was a simple solution to accomplish the very same
21　thing, but we are fine with Your Honor's suggestion.
22　　SPECIAL MASTER SCHNEIDER:  If the parties
23　agree on a procedure, I'm all for it.  I'm happy.  But
24　I think it's a little uphill battle for you to say --
25　my instinct is, for you to say to plaintiffs -- they

## Page 65

1　already have an order from the court in Missouri that
2　says they can take this deposition.  You are asking the
3　plaintiffs to say, put that aside and let's redo the
4　issue in the case.  That's a heavy lift.
5　　MR. BERNARDO:  Yeah, I'm not sure I agree
6　it's exactly that, but I take your point, Your Honor.
7　　But I think the way Your Honor suggested
8　proceeding can work.  We'll take a look and talk to
9　Pennsylvania lawyers and figure out if it raises any
10　issues with respect to that particular subpoena.  And
11　if it does, we can come and revisit with Your Honor.
12　　SPECIAL MASTER SCHNEIDER:  Mr. Placitella, is
13　this that same issue of O'Shaughnessy's dep before
14　Judge Viscomi?
15　　MR. PLACITELLA:  Yes.
16　　The issue -- the issue is before Judge
17　Viscomi.  But right now I think they have, if I recall,
18　somebody told me it was April 15th or something that
19　they have briefs due.
20　　But yes, it is.  The issues there are
21　probably more narrow, because that focuses, you know,
22　that is about mesothelioma and asbestos.  Here the
23　issues are broader.  They do overlap for sure.
24　　But, you know, because of the issues here,
25　asbestos is not the only issue.  And there is certainly

## Page 66

1    overlap.
2         The Court should be aware -- the Court should
3    be aware that I was on the phone, and Johnson & Johnson
4    asked Judge Viscomi to, you know, coordinate this with
5    the federal court or Missouri, and Judge Viscomi said,
6    no, these are mesothelioma cases. They are here. I'm
7    going to deal with it, and I'm going to move forward on
8    my docket and my timeline.
9         SPECIAL MASTER SCHNEIDER: Do we have to deal
10   with the -- Ms. Sharko has mentioned in her letter,
11   Mr. McKeegan and Ms. Goodrich, that's one issue. And
12   then I consider this a separate issue, the Mr. Gorski
13   issue.
14        MR. BERNARDO: So Your Honor, I'll address
15   those. The McKeegan and Goodrich issues are not yet
16   ripe. I think they are going to be the same type of
17   issues we are talking about here. But I think if we
18   establish something with respect to Mr. O'Shaughnessy,
19   that will probably address those.
20        With respect to the Gorski issue that is
21   something that I think we would like to discuss with
22   Your Honor at a subsequent discussion. We really
23   wanted to put it on the table because it is a
24   deposition that we see getting increasingly asked for
25   in both ovarian and mesothelioma cases. And we just

## Page 67

1    want to achieve some level of coordinate considering --
2    I'm not sure there is an apex that's any more apex than
3    the CEO of a company like that.
4         And so we just wanted to put it in there
5    really to put that on Your Honor's radar, if you will.
6         SPECIAL MASTER SCHNEIDER: Are the plaintiffs
7    going to notice Gorski in this case?
8         MR. TISI: I don't even -- honestly, Judge,
9    and other people on this call may know other than
10   myself. I don't even know who requested Mr. Gorski's
11   deposition.
12        But pursuant to CMO No. 11, you know, we
13   would -- if it was an ovarian cancer case, we would try
14   to coordinate, yeah, we would.
15        But I don't -- I don't know anything -- until
16   I got Ms. Sharko's letter yesterday, I don't think -- I
17   know I spoke to Ms. Parfitt and Ms. O'Dell this
18   morning, none of us knew anything about a request for
19   Mr. Gorski, and I spoke to Rich Bernardo yesterday and
20   it didn't come up. So I don't know anything about it.
21        MR. PLACITELLA: Yeah, the one thing I would
22   say in terms of apex, they are all apex. In the last
23   case I tried, Mr. Gorski took the witness stand and the
24   issue went all the way to the New Jersey Supreme Court,
25   and he was forced to do testify.

## Page 68

1         MR. BERNARDO: Again, Your Honor, I think
2    this is an issue we can discuss it more. And it was
3    really to bring it to your attention as something that
4    is on the radar.
5         SPECIAL MASTER SCHNEIDER: If that's not
6    ripe, than that's fine. No problem.
7         MR. BERNARDO: And I apologize. I'm probably
8    at very close risk in losing my appointment. So I
9    wanted to be sure I addressed this. So I'm going to --
10   to leave.
11        Thank you, Your Honor.
12        SPECIAL MASTER SCHNEIDER: Okay. I have a
13   suggestion in terms of scheduling. We have, according
14   to the schedule, the next call with Judge Wolfson, I
15   think, is on May 15th.
16        Do I have that right?
17        MS. PARFITT: It's May the 12th, Your Honor.
18        MS. SHARKO: May 12th.
19        SPECIAL MASTER SCHNEIDER: May 12th, okay.
20        MS. PARFITT: It's at 4 o'clock.
21        SPECIAL MASTER SCHNEIDER: So why don't we
22   put another call with me at 4 o'clock. And we'll -- if
23   need be, we will have oral argument on those
24   applications that date. All right?
25        MS. PARFITT: Thank you, Your Honor.

## Page 69

1         MS. SHARKO: Okay.
2         SPECIAL MASTER SCHNEIDER: The other thought
3    I had was -- and I appreciate your input on this.
4         Going back to the beginning of this call, I
5    think it's important that you straighten out the
6    schedule, because I think that's something Judge
7    Wolfson would want to straighten out, too, this issue
8    about whether depositions are going to continue after
9    the current fact date and expert reports and this and
10   that.
11        Hopefully, you will come to some sort of
12   agreement and understanding on that.
13        Why don't we tentatively schedule a call in,
14   say, like two weeks to talk about the schedule, because
15   if you are going to propose a change to Judge Wolfson,
16   I can't decide it, but you could -- we could discuss it
17   on the phone and then you can send your letter to Judge
18   Wolfson, say we discussed it, blah, blah, blah. But I
19   would rather get that scheduling issue firmed up before
20   May 15th, right? It's in your best interest.
21        MS. O'DELL: Yes.
22        SPECIAL MASTER SCHNEIDER: I agree with you
23   wholeheartedly, you ought to keep the date for the
24   bellwether trials in early or the spring of 2022.
25        I think it's feasible to adjust some of the

## Page 70

1    other deadlines and still keep that bellwether trial.
2         MS. SHARKO:  We really -- we really do not
3    want to adjust the schedule that we have.  But I think
4    instead, it sounds like Your Honor is suggesting that
5    we consider putting some additional deadlines in there.
6    So we'll meet and confer and...
7         SPECIAL MASTER SCHNEIDER:  I think if
8    you're -- there is a consensus on your part, then
9    that's fine.  That you were just talking about friends
10   and family and doctors for the current date.  But you
11   know there's going to the other issues, third parties
12   potentially, some either individual or corporate
13   additional J&J deps.  So you need a time frame for
14   that, if those are going to go forward.  You ought to
15   discuss what that ought to be.  Let's firm up the
16   schedule, so there is no misunderstanding.
17        You know, my goal is to keep you on that
18   schedule to try that case in early -- as early as
19   possible in 2022.  And I think that's Judge Wolfson's
20   goal, too.
21        MS. SHARKO:  How about if we report back to
22   Your Honor on April 22nd?
23        SPECIAL MASTER SCHNEIDER:  Let me look at my
24   calendar.  April 22nd is...
25        MS. SHARKO:  A Thursday.

## Page 71

1         SPECIAL MASTER SCHNEIDER:  So today -- today
2    is the 31st.
3         Ms. Sharko, why don't we pencil in a call or
4    a Zoom.  It can always be canceled.  And let me know
5    by, say, the 20th what's going on.  By the 20th, have a
6    proposal on how you agree to adjust, if at all, the
7    schedule.
8         We'll tentatively schedule a Zoom on the 22nd
9    at, let's say, three, but if need be, we'll just cancel
10   it.  And then we --
11        MS. SHARKO:  That's good for us.
12        SPECIAL MASTER SCHNEIDER:  And then we, on
13   the 12th at 4 o'clock, we'll have oral argument on the
14   two issues you are going to brief with the proviso that
15   Mr. Bernardo and I discussed that after April 9th we
16   may set up a phone call to change that proceeding,
17   depending on what the parties propose.
18        MS. PARFITT:  And Judge Schneider, would 2
19   o'clock by any chance or four -- I have a standing
20   3 o'clock on Thursday.
21        SPECIAL MASTER SCHNEIDER:  No problem.
22        MS. PARFITT:  Would that work for others?
23        MR. TISI:  I'm sorry, my only issue is I have
24   Mr. Bernardo's issue.  My second COVID shot is at
25   4 o'clock -- or actually 2 o'clock your time.  I'm on

## Page 72

1    mountain time, so...
2         SPECIAL MASTER SCHNEIDER:  How about
3    4 o'clock, Ms. Parfitt?
4         MR. TISI:  Yeah, I -- so 4 o'clock would be
5    fine.
6         MS. PARFITT:  Perfectly fine.
7         MR. TISI:  But that might be too -- yes.
8         MR. LAPINSKI:  That's April 22nd?
9         SPECIAL MASTER SCHNEIDER:  Tentatively, in
10   pencil, Mr. Lapinski.  We may not need that call.
11        MR. LAPINSKI:  And that's the call just to
12   adjust -- just to adjust the scheduling, if necessary,
13   correct?
14        SPECIAL MASTER SCHNEIDER:  Exactly.
15        MR. LAPINSKI:  A question that I have on
16   that, Your Honor, is for the purposes of just these
17   six -- these six bellwether cases, why wouldn't we make
18   a discovery end date December 3rd that aligns with the
19   last date for any defendant expert depositions?
20        MS. SHARKO:  I think it's something we should
21   all meet and confer on.  We haven't thought this
22   through or talked about it.  Hopefully, we can resolve
23   it.  We have resolved almost everything else and that
24   gives us enough time to do it.
25        SPECIAL MASTER SCHNEIDER:  Okay.  So let me

## Page 73

1    sum up where we are.  We'll have the same schedule for
2    the privilege issues and for the O'Shaughnessy issue.
3         On the privilege issue by April 9, plaintiff
4    is going to identify the disputed documents.  By
5    April 23rd defendant is going to submit its brief and
6    supporting affidavits in support of its defense,
7    objection.  Plaintiff responds by May 5th.  And then
8    hopefully your oral argument on May 15th at four.
9         With regard to the O'Shaughnessy issue,
10   plaintiffs have until April 9 to co-designate.  If they
11   don't co-designate, then they can't take his deposition
12   in connection with this case.  Presumably they will.
13        Defendants move to quash on April 23rd.
14   Plaintiffs respond May 5th.  Oral argument May 12th at
15   four.
16        And by April 20, the parties will inform me
17   or the court about what they propose with regard to
18   schedule.  We'll pencil in a Zoom or a call on
19   April 22nd at four with the understanding that that may
20   be postponed.
21        And then lastly, that all this is without
22   prejudice, if after the April 9th letter from plaintiff
23   about the privilege documents and the co-designation,
24   if the parties think a phone call would help advance
25   the ball, let us know, and we'll set it up quickly and

DocuSign Envelope ID: 0CE15BBF-85EA-4254-90CB-6BA6B24D2002

March 31, 2021

## Page 74

1  maybe we'll avoid a lot of this.
2  MR. LAPINSKI:  Your Honor, the only thing
3  that I'll bring up is everything that you just said, is
4  just I want to confirm, it's May 12th at 4 o'clock that
5  we are having our next call.
6  SPECIAL MASTER SCHNEIDER:  Yeah, I'm sorry
7  about that.  I misspoke.
8  Okay.  I think that's a good plan.
9  My thought is unless Judge Wolfson tells me
10  differently, is to make sure that everything is ready,
11  done, by the deadlines in the order, most importantly
12  to get you to trial in early 2022 on the bellwethers.
13  I assume you will let her know about you've
14  agreed on the six bellwethers, but I don't know.
15  MS. PARFITT:  She's been notified, Your
16  Honor, of those.  Yes.
17  SPECIAL MASTER SCHNEIDER:  Great.  Terrific.
18  MR. TISI:  Judge, one clarification point.
19  And I just want to make sure I understand.
20  If the Pennsylvania judge has not yet ruled
21  so there is no -- we don't have a deposition to cross
22  notice, you still want our intent to cross notice on
23  this?
24  SPECIAL MASTER SCHNEIDER:  No, you do have a
25  deposition to cross notice.  Because until it is

## Page 75

1  quashed it is alive, isn't it?  Right?
2  MR. TISI:  I think -- I think procedurally,
3  as I understand it -- and I'm not a Pennsylvania
4  lawyer -- until that subpoena -- as I understand the
5  process, what Judge Burlison in Missouri has done, is
6  he has ordered a conclusion to get a subpoena.  Until
7  there is actually a subpoena that is issued -- we have
8  Pennsylvania lawyers here, Mr. Berman -- until there is
9  actually a subpoena that's issued out of the court in
10  Bucks County, I don't know that that's -- that that
11  has the --
12  SPECIAL MASTER SCHNEIDER:  Why do I care
13  about the subpoena?  I only care about the notice.
14  MR. TISI:  I agree.  I just wanted to make
15  sure --
16  MR. PLACITELLA:  But it's not a subpoena that
17  notice.
18  MS. SHARKO:  But now we are -- now we are
19  rearguing the same issue.
20  MR. PLACITELLA:  No, no, it's not -- it
21  wasn't a subpoena.
22  MR. TISI:  Right.  There is not a subpoena
23  until the subpoena is actually stamped by the clerk.
24  SPECIAL MASTER SCHNEIDER:  So wasn't there a
25  notice of deposition?

## Page 76

1  MR. TISI:  No, not yet.  It can't be noticed
2  until -- until the subpoena has been authorized under
3  the State Law of Pennsylvania.  That's the question
4  mark that I have.
5  And you know, I don't know if Mr. Berman, and
6  I know we have Pennsylvania lawyers here, want to weigh
7  in on it.
8  But as I understand it procedurally, there is
9  nothing to cross notice until a subpoena is issued out
10  of the court in Pennsylvania.
11  SPECIAL MASTER SCHNEIDER:  But suppose this
12  is a normal case -- this is not a normal case, right?
13  No subpoenas.  No notices of deposition.  We get to a
14  conference.
15  The defendant -- the plaintiff says to the
16  defendant, I want to depose Jane Doe.  Do I have to
17  wait until a formal notice or subpoena is issued to
18  rule on that issue?  Or can I say, send me your briefs,
19  and I'll decide whether you can go forward?  I don't
20  think I need to wait.
21  MR. TISI:  I agree.  I agree.
22  MR. PLACITELLA:  I think it's probably form
23  over substance at this point, because I thought he was
24  served with a stamped subpoena.  Maybe I'm wrong, but I
25  thought he was served at this point.

## Page 77

1  MS. O'DELL:  Right, yeah.
2  SPECIAL MASTER SCHNEIDER:  Yeah, I would
3  rather not kick the can down the road.  I would rather
4  get this issue teed up and decided and deal with it.  I
5  think that's a pretty straightforward issue.
6  The harder issue is Mr. Bernardo's request
7  that this court somehow supersede the Missouri court.
8  I don't know how you do that.
9  MR. LAPINSKI:  Yeah, we think that is a
10  pretty issue as well.
11  MS. SHARKO:  Well, wait for our brief.  You
12  will be impressed.
13  MS. PARFITT:  That might be a good trailer
14  for a movie.
15  (Discussion off the record.)
16  SPECIAL MASTER SCHNEIDER:  Some poor old
17  retired magistrate judge is going to upset 225 years of
18  constitutional federalism.
19  MS. SHARKO:  Okay, we are laughing.
20  MR. PLACITELLA:  All right.  Well, Happy
21  Easter and happy Passover.
22  SPECIAL MASTER SCHNEIDER:  Have a good
23  holiday, everyone.
24  MR. LAPINSKI:  Happy holidays to everybody.
25  (Deposition adjourned at 5:11 p.m.)

March 31, 2021

Page 78

```
1              C E R T I F I C A T E
2
3          I CERTIFY that the foregoing is a true and
4     accurate transcript of the testimony as taken by and
5     before me stenographically at the time and place
6     aforementioned.
7          I FURTHER CERTIFY that I am neither
8     attorney for nor counsel to any of the parties; parties
9     of any of the attorneys in this action; and that I am
10    not financially interested in the outcome of this case.
11
12
13
14
15         HOWARD A. RAPPAPORT, C.C.R
           Certificate No. XI00416
16
17
18
19
20
21
22
23
24
25
```



DocuSigned by:

*Howard Rappaport*

439DA67C1C71495...

schedules@mfreporting.com          Mastroianni & Formaroli, Inc.          856-546-1100
                                   Professionals Serving Professionals

**A**

**A-L-L** 20:24
**able** 11:21 12:3
**absolutely** 10:22
  22:16 32:10
**accept** 49:6
  59:14
**accident** 34:3
**accommodate**
  28:2,11 30:5
**accommodating**
  5:1
**accomplish**
  64:20
**accomplished**
  20:7 48:4 49:3
  49:24
**account** 25:15
**accurate** 78:4
**achieve** 67:1
**achieving** 64:17
**acknowledged**
  7:24
**act** 48:15 51:1,5
  52:13
**action** 78:9
**actions** 50:3
**activity** 36:5
**add** 11:3 16:15
  24:12,12
**addition** 16:17
**additional** 13:9
  13:25 14:13
  17:3 22:17,18
  23:8 25:6 70:5
  70:13
**address** 7:9
  66:14,19
**addressed** 68:9
**addressing** 45:6
  49:18
**adjourned** 77:25
**adjudicate** 50:21
  50:22
**adjudicated**

40:6 50:13
  55:6,7 58:14
**adjudicating**
  49:21
**adjust** 26:7
  69:25 70:3
  71:6 72:12,12
**adjusted** 30:4
**admittedly** 4:16
**admonition**
  55:17
**advance** 41:2
  73:24
**advice** 6:5
**affect** 33:13
**affidavit** 39:2
  40:24 43:11,15
**affidavits** 39:24
  40:25 43:8
  73:6
**affirmatively**
  52:19
**aforementioned**
  78:6
**afternoon** 3:20
  3:23,24 4:2,5,7
  4:22 5:14,17
**ago** 10:8
**agree** 18:9 20:23
  23:23 26:10,19
  30:17 31:13,20
  37:1 38:5
  39:20 40:8,22
  42:19 44:21,23
  63:2 64:23
  65:5 69:22
  71:6 75:14
  76:21,21
**agreed** 28:7 29:5
  45:1 49:6 54:1
  74:14
**agreed-upon**
  29:8
**agreeing** 28:25
  37:7
**agreement** 21:18

22:21 36:16
  69:12
**agrees** 52:5 62:7
**ahead** 10:17
  12:1,24 32:25
  45:17,19,19
**AL** 1:19
**alert** 8:25
**alerted** 7:18,22
**alerting** 8:2
**aligns** 72:18
**alive** 75:1
**alleged** 35:17
**Allen** 1:17 3:21
**allow** 60:6
**allows** 60:4
**alluded** 43:23
**amount** 6:21
**analogy** 56:16
  56:16
**analysis** 14:15
**answer** 15:7,8,8
  16:9 26:15
  57:16 58:12
**answered** 16:23
**anticipate** 19:9
  22:4 38:23
  53:8 54:8
**anticipated**
  20:25 31:7
  43:16
**anyway** 5:3
**apart** 14:1
**apex** 67:2,2,22
  67:22
**apologize** 19:19
  68:7
**appear** 56:2
**appearances**
  3:18
**appearing** 15:19
**applications**
  68:24
**apply** 37:4
**appointed** 62:8
**appointment** 5:2

6:1,3 7:18,19
  7:23 8:2,4 68:8
**appreciate** 5:3
  46:1 69:3
**appreciated**
  41:14
**appropriate** 8:8
  39:2 47:2
  64:13
**approved** 27:14
**approximately**
  62:25
**April** 36:14
  37:11 38:19,23
  38:25 39:5,14
  39:18,22 40:5
  40:21,23 41:1
  63:18,19 65:18
  70:22,24 71:15
  72:8 73:3,5,10
  73:13,16,19,22
**apropos** 55:17
**arduous** 12:1
**areas** 39:8 43:25
**argument** 68:23
  71:13 73:8,14
**arguments**
  56:18
**Arps** 2:12 4:23
  5:13
**asbestos** 7:16
  65:22,25
**Ashcraft** 1:14
  3:24
**aside** 24:23 51:7
  65:3
**asked** 9:25 27:15
  52:15 66:4,24
**asking** 65:2
**aspect** 10:24
  16:5
**assigned** 48:21
**assistant** 45:10
**associated** 38:15
**assume** 61:24
  74:13

**assuming** 62:6
**assumption**
  25:24
**assumptions**
  25:11
**assure** 43:19
**attempt** 27:15
**attention** 14:24
  68:3
**attorney** 78:8
**attorney-client**
  42:11 58:13
**attorneys** 78:9
**August** 22:24
  23:11 24:2
  42:23
**authorize** 48:16
**authorized** 76:2
**automobile** 34:3
**available** 40:4
**AVENUE** 2:3,13
**avoid** 74:1
**aware** 7:9 66:2,3

**B**

**B** 1:9
**back** 15:23
  17:11 22:1
  29:8 30:3
  31:13 35:3
  46:5 52:22
  58:1,5,6 64:16
  69:4 70:21
**backdrop** 4:14
  4:16
**bad** 3:15
**ball** 35:24 41:2
  73:25
**balls** 49:14
**BANK** 2:3
**based** 22:18
  40:14 46:9,9
**basis** 44:3 59:17
**baton** 11:2 13:7
**battle** 64:24
**BAYLEN** 2:6

**Beasley** 1:17
3:21
**beginning** 24:14
69:4
**begun** 12:2
**behalf** 3:21,25
4:9 5:13,15,18
15:11 54:24
**Beisner** 2:12
5:12,12
**believe** 15:8 16:9
21:6 39:10
45:5 48:7
49:13
**bellwether** 8:18
10:4,7,12 11:8
11:17,24 14:6
14:11 16:3,13
17:4 30:19
33:7 69:24
70:1 72:17
**bellwethers** 9:14
30:16 31:1
32:22 74:12,14
**bench** 6:6
**Berman** 2:19,20
4:10,11,11
54:14 75:8
76:5
**BERNADO** 2:13
**Bernardo** 4:22
4:23 5:6 15:14
30:12 34:18
37:6 38:17
40:2,10,20
41:7 43:3,18
44:9,21 45:9
45:23 46:2,12
46:24 47:21,25
48:3,12 50:7
50:11 58:3,16
61:4,11,24
62:23 64:4,7
64:12 65:5
66:14 67:19
68:1,7 71:15

**Bernardo's**
71:24 77:6
**best** 6:7 7:25
35:4 52:14
53:5 56:19
62:21 69:20
**better** 12:11
33:16 34:21
**Biddle** 2:8 4:20
**bifurcated** 23:5
**big** 6:6 8:23 51:8
51:10
**bit** 8:19 13:24
27:20 36:25
64:8
**blah** 69:18,18,18
**block** 12:13
**board** 38:10
**boilerplate** 42:8
**box** 1:19 12:6
**Brennan** 5:14,15
**brief** 7:19 39:24
40:24 42:5
54:21 71:14
73:5 77:11
**briefed** 37:24
40:8 41:17,22
53:25
**briefing** 39:10
**briefs** 41:19,25
42:12 65:19
76:18
**bring** 35:13
36:17 68:3
74:3
**brings** 11:1
22:10
**broader** 65:23
**broken** 5:9
**Bucks** 49:14
75:10
**build** 40:3
**bunch** 26:3
**burden** 39:23
**Burlison** 8:3
52:6,14,22

75:5
_____
**C**
_____
**C** 1:10 2:1 78:1
78:1
**C.C.R** 78:15
**calendar** 70:24
**caliber** 43:13
**California** 28:9
**call** 3:7 6:22 7:2
13:19,23 26:12
28:2,22 40:11
41:3 43:3
44:23 55:15
67:9 68:14,22
69:4,13 71:3
71:16 72:10,11
73:18,24 74:5
**called** 12:14
**calling** 49:14
**calls** 3:16
**Camden** 6:13
**camera** 36:23
39:1
**CAMPUS** 2:9
**cancel** 71:9
**canceled** 71:4
**cancer** 50:2
67:13
**caption** 57:18
**car** 23:20 26:2
**car's** 24:15
**care** 2:18 5:18
14:14 19:22
35:21 75:12,13
**carveout** 21:1
**case** 6:18,19,23
7:4,7 8:17 9:4
9:9 10:11,24
10:25 11:18
16:2,7,12
19:20 21:5,12
22:3 23:2
28:13,18 32:18
33:25 34:3
35:12,15,23

41:23 43:14
45:15 46:7,16
46:20 47:10,19
49:12 51:14,15
52:12 53:15,20
55:16,20 57:7
57:20 58:22
61:21 62:4,5
62:25 63:18
65:4 67:7,13
67:23 70:18
73:12 76:12,12
78:10
**case-specific**
10:21 13:16
17:7,12 28:17
30:18 32:12
**cases** 7:24 8:18
9:15,15,19
10:9,14,14
11:8,12,24
12:2 13:9,22
14:6,9,12
16:13,13 17:4
20:16,21 22:4
24:3 25:3
26:13 27:3
29:12 31:3,10
32:21 57:19
61:23 66:6,25
72:17
**categories** 37:2
37:19,22,23
44:18
**category** 37:3,4
46:4
**causation** 8:13
9:11 13:16
32:13,13,17
**CEO** 67:3
**certain** 25:11
32:8 36:6 53:7
**certainly** 14:20
19:15 65:25
**Certificate**
78:15

**CERTIFY** 78:3
78:7
**cetera** 13:20
48:15
**challenge** 35:25
36:14 37:8
39:6 58:7
**challenges** 13:20
27:17,19 28:12
36:4,10,17
37:13,20 44:11
**chance** 71:19
**change** 41:4
69:15 71:16
**chat** 13:13 19:19
**check** 33:10
**CHERRY** 1:13
**Chief** 6:1
**Chris** 4:3,7,8
15:4,6,9,11
23:4 45:22
52:1,2,25
**Chris's** 32:8
**CHRISTOPH...**
2:2,5
**circulate** 13:14
**circumstance**
54:5 62:13
**circumstances**
6:3
**CIVIL** 1:3
**claim** 39:3 43:9
43:12
**claims** 43:22
**clarification**
74:18
**clear** 14:4 23:7
28:21 35:7
51:3 58:8
61:20,20
**clearly** 46:8
**clerk** 75:23
**close** 68:8
**closed** 6:15
**CMO** 27:14
67:12

DocuSign Envelope ID: 0CE15BBF-85FA-4254-90CB-6BA9B24D2002

March 31, 2021

co-designate 73:10,11
co-designation 73:23
co-drafted 27:13
co-existing 61:25
COHEN 2:2
colead 10:3
colleague 13:4 15:4 42:17
colleagues 31:7
come 18:15 28:8 29:7 35:12 37:18 52:7,8 58:22 59:11,20 64:16 65:11 67:20 69:11
comes 62:11
coming 35:14
comission 75:6
Commencing 1:7
comment 10:19 58:6
comments 32:8
COMMERCE 1:18
committed 29:22
Committee 3:22 4:1 14:18 15:12 41:25
Companies 2:10 2:15
company 67:3
compare 56:15
complete 17:9 18:22 19:2 20:23 24:16 26:13 27:2 29:17
completed 17:11
completely 22:7
completing 29:4
complexity 6:23

computer 8:23
concept 29:2
concerned 26:11 34:17
concluded 47:10
conducted 34:9
conducting 27:16
confer 29:2 36:16 37:18 39:7,13,19 40:5,22 70:6 72:21
conference 1:5 7:11 76:14
conferences 3:11
conferring 28:25
confers 51:1
confirm 74:4
confront 59:25
conjunction 38:1
connection 37:7 48:18 49:18 54:17 57:7 73:12
Connolly 33:5 34:7
consensus 11:11 70:8
consent 50:8,13 50:18,20,24
consider 66:12 70:5
consideration 28:15
considering 52:17 67:1
consistent 29:4
constitutional 77:18
Consumer 2:10 2:11,15,15
contemplated 22:25 27:13 30:16

contemplating 20:4
contemplation 20:1
contest 49:8
continue 31:23 32:4 33:4 37:10 69:8
Continued 2:1
conundrum 31:19
conversation 7:20 16:19
conversations 7:23 8:5,7
conversely 27:24
coordinate 27:15,23 36:11 66:4 67:1,14
coordinated 37:15 50:2,20 61:16
coordinating 28:9 45:2
copy 12:16
corporate 8:14 13:20 14:19 15:1,20,25 16:17,20 21:4 23:10 25:5,14 27:6 34:1 70:12
correct 9:11 10:22 11:14 14:11 22:16 26:16 47:20 56:15 72:13
Council 2:18 5:19
counsel 3:7 4:4 33:1 45:10 54:23 58:14 64:14 78:8
counterpoint 15:15
country 6:25

County 49:14 75:10
couple 27:22 54:21
course 9:7 26:24 31:16
court 1:1 3:11 6:24,25 7:19 11:23 14:21 16:8 22:5 35:25 36:11 38:19 41:12 47:2 48:2,4,8 48:11,16,17,21 48:24 49:1,8 49:21 50:1,4,8 50:21 51:11,20 54:11 55:3 56:2,8,12,14 56:20,25 57:12 58:23,23 59:4 59:5,24 60:9 60:13 61:3 62:7 63:23 65:1 66:2,2,5 67:24 73:17 75:9 76:10 77:7,7
courtesy 5:4
courtroom 62:12
courts 37:13,25
COVID 5:1,7,9 30:21 71:24
created 58:7
criminal 49:13
cross 27:25 46:16 47:14,16 47:20 53:17 56:8 57:4,8 58:18 59:7 60:3,11,15 62:14 63:17 74:21,22,25 76:9
crux 42:12 46:12

current 22:19 69:9 70:10
cut 43:22
cutoff 20:1

**D**

Dan 4:6 42:17 42:21
DANIEL 1:12
date 1:7 8:11 17:19,20 18:9 18:15 19:25 20:23 21:8 22:21,23,23,25 23:11,11 25:22 26:18,21 27:1 27:2,5,8 28:7 28:10 31:18 33:24 34:8,9 34:11 39:16,17 40:12 44:22 53:2,7 57:5,6 68:24 69:9,23 70:10 72:18,19
dates 12:9 28:15 28:16 45:2
Daubert 8:12 9:11 10:23 17:12,12
days 33:8,9 41:13 42:15 54:21
DC 1:16 2:14,18
de-privileged 36:7
deadline 9:18 13:8 17:1 18:19,22,22 19:2,3 21:1,8 24:5 25:10 26:12 29:2,3 33:6 37:11 42:23 57:3
deadlines 7:13 12:10,20 17:9 22:3 26:7 30:4

70:1,5 74:11
**deal** 24:24 26:24
32:3 44:18,25
51:8 56:9
59:25 60:5
61:18 66:7,9
77:4
**dealing** 9:9 14:8
36:21,23 56:17
**dealt** 8:12 14:2
15:2 34:6
37:15
**December** 11:25
17:11 23:6
72:18
**decide** 18:17
36:18 40:1
50:8 55:4,11
56:20 57:9
60:10 61:3
62:8,11 69:16
76:19
**decided** 17:25
36:2 48:8,11
48:20 51:19
52:6,19 55:5
55:18,23 58:24
60:12 63:9
64:2 77:4
**decides** 51:23
**decision** 18:2
41:18,20 56:13
56:23 57:23
61:7
**decisions** 7:13
35:23 49:2
**default** 40:23
41:5
**defendant** 2:10
2:18 4:18
10:13 39:18,22
40:23 72:19
73:5 76:15,16
**defendants** 2:14
4:21,24 5:13
5:16 11:17

17:2 26:19
27:14,23 31:22
46:19 63:19
73:13
**defendants'**
49:20
**defense** 41:8
73:6
**defense'** 34:19
36:6
**defer** 15:3
**definite** 39:17
**definitely** 29:5
**degree** 20:18
**delighted** 3:7 6:1
12:15
**denied** 53:13
**dep** 51:16 59:6
65:13
**depending** 39:13
71:17
**deponent** 49:5
**deponents** 22:13
22:18
**depose** 13:11
15:21 76:16
**deposed** 53:7
**deposition** 7:10
24:20 27:24
28:4 33:24
38:13 41:10
44:15 45:13,15
46:15 47:1,9
48:7,19,22
49:9,15 50:15
50:21,25 51:5
51:19 52:7,9
52:18 53:3,14
54:12,13 55:12
55:13,19,22
56:8,10 57:7
57:18,20 58:9
58:18,19,22,24
59:12,13,17,19
59:24 60:16,20
61:15 62:9,23

65:2 66:24
67:11 73:11
74:21,25 75:25
76:13 77:25
**depositions** 8:15
9:6 13:20 14:1
14:19 15:1
17:10 18:23
20:5 22:18
23:10 25:6,13
25:14 27:20
33:15 34:2,9
34:11 44:25
45:1 58:8 69:8
72:19
**deps** 21:4 70:13
**designation**
36:14
**detail** 8:19
**determination**
59:15
**development**
16:6
**die** 35:23
**difference** 51:9
51:10
**different** 51:24
56:23
**differently**
74:10
**diligence** 6:9
**direct** 60:7
**direction** 58:17
**disagree** 16:25
20:14 24:14,14
30:2 40:20
56:3 59:16
61:1
**disagreement**
39:9
**discovery** 8:13
9:2,12,19
10:15,21 11:23
13:9,10,18,23
14:22 15:5,5
16:1 17:3,7,9

17:15,23 18:3
18:7 19:2,5,6,8
19:25 20:24
21:3,11 22:25
23:1,14,19,19
24:3,15 25:4
25:18,20 26:13
26:15,22 27:5
27:16 29:3
30:25 31:8,15
31:23 32:4,16
61:22 72:18
**discuss** 9:5,6,7
16:22 36:1
40:12,17 66:21
68:2 69:16
70:15
**discussed** 63:10
69:18 71:15
**discussion** 5:11
36:12,12 37:5
66:22 77:15
**dispositive**
17:13
**dispute** 56:7
**disputed** 73:4
**DISTRICT** 1:1
1:1
**docket** 1:3 3:12
8:21,22 12:9
66:8
**doctors** 18:23
20:25 21:2
24:1 27:6
28:17,17 70:10
**document** 56:21
59:19,22
**documents**
35:12,18 36:6
36:13,22 37:2
37:14 38:8,20
38:21,25 39:1
39:6,11 41:20
43:23 44:7,10
46:6 49:19
62:22,24,25

63:1,3,13,21
73:4,23
**Doe** 76:16
**door** 58:1,2,5
**doubt** 44:14
**downgrade**
43:23
**downgrading**
44:10
**drill** 13:24
**Drinker** 2:8 4:19
4:20 5:15
**DRIVE** 1:12
**drop-dead** 26:12
27:5 57:5
**dual** 15:23,24
**due** 6:9 25:4,17
31:18 32:5
65:19

---

### E

**E** 1:9,9,10,10 2:1
2:1,22,22 78:1
78:1
**e-mail** 7:22,24
8:1,3,7 19:18
**earlier** 42:24
44:23
**early** 27:13
69:24 70:18,18
74:12
**ease** 8:6
**easier** 27:21
**easily** 36:22
**EAST** 1:12
**Easter** 77:21
**easy** 24:22,24
28:18 36:24
49:24 50:6,7,9
50:9 56:1
61:13
**edit** 40:10
**effect** 35:21
**eight** 36:24
**either** 4:13 8:7
38:21 53:20

70:12
elegant 49:3
employers 18:24
encompassed 21:11
encouraged 10:18
ensure 37:14
entered 8:14
enthused 11:22
entries 3:18
envisioned 30:23
Esquire 1:12,15 1:18 2:2,5,8,12 2:13,17,20,23
establish 66:18
established 25:23,23
et 13:20 48:15
evaluating 16:17
event 38:9 52:8
everybody 28:11 49:25 77:24
exactly 21:23 37:6 49:4 58:4 59:9,9 61:12 61:25 62:4 65:6 72:14
example 28:17 32:12
excellent 29:11
excited 10:18,24
executed 49:7
expect 43:13 58:9
expecting 36:9
experience 61:5
expert 13:16 17:10,10 22:23 22:23 24:5,6 25:3,10,15,17 25:19 31:17,21 32:5 33:13,13 33:22 34:4 69:9 72:19

experts 13:11 32:9
explain 48:9 54:25
explanation 55:24
extended 30:3
extension 18:17 20:11 29:17 30:20
extensions 17:21
extent 25:13 40:22
extra 42:15

**F**

F 1:9 2:17 78:1
face 33:2
faces 6:8
fact 9:2,19 10:6 13:10,23,25 14:13 17:9 19:6 21:3,6 22:25 23:1,14 24:3 25:4 26:13 27:5 31:15 33:11 34:2 46:4 69:9
factual 22:3 46:8
Faegre 2:8 4:20 5:15
fair 6:21 18:20 22:24 33:19 35:10
fairly 12:1
fairness 18:21 29:13
fall 39:20 43:24
falls 46:3
familiar 6:8 42:7
family 19:21 24:1 25:5 27:6 70:10
fantasy 29:15
far 26:11 43:20 44:9 50:24

fashioning 25:15
fast 62:19
feasible 69:25
February 35:8
federal 66:5
federalism 77:18
feel 12:12 22:15 40:5 52:25 54:18 61:22
fifteen 62:25
fifty 36:22 38:20
fighting 60:23
figuratively 42:20
figure 65:9
file 40:24 53:9 54:8 63:19 64:13
filed 41:19 51:23 53:24 61:5
files 57:8
filing 53:10
fill 6:7 7:6
filled 7:5
final 25:3 31:21 39:5
financially 78:10
find 8:24
fine 9:7 13:5 18:11 22:22 37:11 41:4 42:25 64:21 68:6 70:9 72:5 72:6
finish 9:2,19 18:12 24:2 25:18 52:2 61:9
finished 4:15 17:20 31:22
firm 1:17 4:6 70:15
firmed 69:19
first 3:7 6:5 10:20 11:16,16

12:4 26:19 29:23 37:24 47:1 51:2 52:10 57:10 58:11
five 6:14 46:6
FL 2:6
FLOM 2:12
FLORHAM 2:9
Florida 28:7
focus 8:11 14:19
focused 37:22
focuses 65:21
folks 28:7
follow 3:15
follows 8:11
forced 67:25
foreclose 34:10
foregoing 78:3
forgetting 15:17
form 76:22
forma 43:10,15 43:19 44:4 52:13
formal 76:17
former 20:10 45:10
Forrest 53:15
forward 8:15 10:15 11:19 18:3,18 25:25 26:6,23 32:21 41:6 45:13 48:8,9,20 49:9 49:15 50:22 51:19 52:5,7 53:14 54:6,13 55:5,10,14,21 58:9 60:5,6,16 60:21,23 62:6 62:10 66:7 70:14 76:19
fought 54:6,9
found 12:13
four 10:10 46:5 71:19 73:8,15

73:19
frame 21:20,21 47:8 70:13
frankly 11:1 60:3
free 52:25
Freeze 21:20,21 21:21
friends 18:23 19:21 20:24 21:2 24:1 25:5 27:6 70:9
front 24:9 58:2
full 10:17 27:11
fully 42:5
fulsome 10:15 15:7
further 32:14 56:16 64:15 78:7
future 25:7

**G**

game 35:10
gaps 7:5
garage 23:21 24:15 26:3
gathered 31:2
general 6:22 7:7 8:10 9:3,4,8,20 11:11 16:1 32:13 45:10
generally 7:4 8:16 9:11 13:21,23 64:7
generic 23:14 43:10
gentleman 6:4 7:21 21:23
Gerel 1:14 3:25
getting 10:25 20:2 26:1 29:23 37:15 58:1 66:24
give 12:15,23 20:20 39:5

March 31, 2021

84

42:15 57:3
64:2
**given** 18:25 44:9
48:7 59:18
61:5
**gives** 72:24
**go** 6:11 8:15
9:14 11:13
12:24 15:19
18:3,18 22:1
26:23 32:25
45:13,17,19,19
48:9,20 49:15
52:9,22 54:6
55:21 58:9
60:5,6,18,21
60:22 70:14
76:19
**goal** 27:3 61:8
70:17,20
**goes** 47:1 48:8
49:9 50:21
51:19 52:5,7
52:21,22 53:14
55:4,10,14
58:6 62:6,10
**going** 3:14 6:7
6:16 7:12 9:2,5
9:14,16 11:11
11:13 12:5
14:25 17:24
23:2,8 24:1,2
24:24 25:7,11
25:19,25,25
26:5,23 27:24
29:16,18 30:3
30:7 31:9,22
32:21 33:14,20
34:4 35:23
36:11 38:2,24
38:25 39:6,18
39:19,21,23
40:6 41:6
42:17 43:14
48:20 49:14,15
49:17,25 51:11

51:12 53:7
55:21 57:4,5
58:5,13,21
59:5 60:2,3,5
60:10,15,16
61:3 62:7
63:17 66:7,7
66:16 67:7
68:9 69:4,8,15
70:11,14 71:5
71:14 73:4,5
77:17
**good** 3:20,23,23
4:2,5,7,22 5:10
5:14,17 7:2
20:16 21:19
29:11,16 32:3
43:21 71:11
74:8 77:13,22
**Goodman** 2:23
5:23,23
**Goodrich** 66:11
66:15
**Gorski** 66:12,20
67:7,19,23
**Gorski's** 67:10
**gotta** 25:16
**gracious** 7:20
**granted** 20:11
53:12
**grapple** 6:18 7:1
**gray** 43:25
**great** 6:5,9 13:6
36:19 74:17
**grounds** 58:12
**guarantee** 63:13
**guess** 3:17 6:13
61:6
**gyn** 32:12

**H**

**H** 2:12
**hand** 5:5,9 16:11
**handled** 33:4
**hands** 20:12
**handy** 12:9,24

**happen** 11:15
23:19 39:21
**happened** 23:20
27:21 33:23,25
52:1,24
**happening** 58:4
**happens** 18:15
30:22 61:15
62:3
**happy** 19:2 38:4
45:23 54:25
55:24 64:23
77:20,21,24
**harder** 37:1 77:6
**hate** 42:18
**head** 28:6 58:4
**health** 14:14
19:22
**hear** 22:5,7
**hearing** 26:25
30:6,11 35:6
**heavy** 65:4
**held** 3:1
**help** 6:17,18
13:14 15:18
24:19 29:9
41:2 73:24
**HILL** 1:13
**history** 7:3 9:24
**hit** 58:3 64:8
**holiday** 77:23
**holidays** 77:24
**home** 31:4
**honest** 31:6
**honestly** 67:8
**Honor** 3:24 4:2
4:5,22 5:12,14
5:17 13:15
14:3 15:10
19:15,18 20:4
21:17 22:14
23:6 24:19
25:8 28:22
30:9,12,13
33:3 36:3,17
37:6,19,22

38:1,14 39:4
39:10 40:2,5
40:15 42:16
43:18 44:2
45:4,5,16 47:5
47:5,25 48:6
48:12 49:17
50:25 52:8
53:16,18 54:16
55:7,11 56:2,4
56:5,23 58:3
61:5,11,18
62:14 63:11,12
65:6,7,11
66:14,22 68:1
68:11,17,25
70:4,22 72:16
74:2,16
**Honor's** 32:19
64:21 67:5
**hope** 4:3 16:23
**hopeful** 11:20
21:25
**hopefully** 29:9
39:19 69:11
72:22 73:8
**HOWARD**
78:15
**hundred** 36:21
36:22 38:20,21
62:25
**hypothetical**
58:18
**hypothetically**
57:17,17

**I**

**idea** 29:11,11
**identified** 9:13
19:12 20:15
29:12
**identify** 8:18
17:3,22 18:8
20:21 23:8
36:13 73:4
**identifying** 29:3

**impacted** 25:19
**impacting** 48:23
**important** 12:21
22:15 41:12
42:5 48:13
49:12 52:12
55:22 69:5
**importantly**
74:11
**impressed** 77:12
**impression** 3:13
8:16 23:12
**in-house** 58:14
**includes** 26:14
**incorrect** 52:25
55:2
**increasingly**
66:24
**incredibly** 7:20
**independent**
14:17
**indicated** 11:20
16:4 22:2
**individual** 11:12
14:5,12 70:12
**inertia** 25:24
**infor** 12:15
**inform** 73:16
**information**
46:8 47:11
59:19,23
**initial** 13:8,10
**inject** 24:13 27:9
**input** 69:3
**insight** 8:9
**instance** 49:13
57:10
**instinct** 64:25
**instruction**
35:16 58:12
**instructions**
3:15 35:7
**intended** 18:21
19:1,21
**intends** 16:4
18:5,6

intent 54:11
55:8 74:22
interest 61:25
69:20
interested 35:13
42:13 78:10
interim 30:4
interject 30:14
internally 36:12
introduced 7:16
introduction
3:18
involve 63:13
involved 62:2
irrelevant 64:5
issuance 48:16
issue 7:9,10 18:1
18:17 23:5
24:23 28:23
33:2 35:3,5
36:2 38:12,13
40:1 41:10,12
41:17 42:5
44:15,20 45:20
45:21 47:8
48:7,19 50:9
51:7 57:10
60:12,24 61:9
63:10,24 65:4
65:13,16,16,25
66:11,12,13,20
67:24 68:2
69:7,19 71:23
71:24 73:2,3,9
75:19 76:18
77:4,5,6,10
issued 23:17
33:5 34:7
48:17 50:14
52:13,16 53:22
54:2 55:3 75:7
75:9 76:9,17
issues 6:18,22
7:1,8 8:12 9:4
11:1 24:20
27:12 34:22,23

36:18 38:7
40:7,15,17
42:1,7 45:5
49:16,18 55:11
55:18 65:10,20
65:23,24 66:15
66:17 70:11
71:14 73:2
iteration 61:6

---

**J**

J&J 4:20 5:13
5:15 52:14
53:8,9 54:8,23
54:24 57:8
70:13
Jane 76:16
January 23:17
23:20
Jersey 1:1 6:24
7:18 37:8,21
49:4,7,7,10
50:12,17 51:12
51:14,15,20,23
52:22 53:22
54:1,2 67:24
Jessica 5:15
job 43:21
Joel 1:9 3:2
John 2:12 5:12
Johnson 1:3,3
2:10,10,10,10
2:11,11,14,14
2:15,15,15,15
66:3,3
joined 6:5
journey 24:16
judge 3:6,9,12
3:20 5:8 6:2,4
6:13,15 7:18
7:22 8:3,13
9:18 10:2
11:19 13:7
14:1 15:2,8
16:3,3 18:16
22:1 23:3,7,15

23:16,24,25
24:4 27:14
29:16 32:23
33:5 34:7 35:6
35:21,22 38:1
38:1 45:12
46:3 47:2,7,9
47:10,23 48:21
48:24 49:14,22
51:2,12,21,23
52:4,6,8,9,14
52:16,22,23
54:1 55:17
56:16,20 58:6
58:17,21,24
59:18 60:4,6
61:20 62:5,6
62:11,15 65:14
65:16 66:4,5
67:8 68:14
69:6,15,17
70:19 71:18
74:9,18,20
75:5 77:17
July 11:1 24:7
25:4 31:18
32:6
June 9:2 25:7
31:18 32:6
jurisdiction
27:25 49:8
50:13 51:1
54:3 56:9,13
57:11
jurisdictions
27:16 31:4
Jutkowski 15:16

---

**K**

K 1:15
keep 16:6 45:22
69:23 70:1,17
key 37:12
kick 42:19 77:3
kind 14:14 15:23
knew 6:4 67:18

know 3:9 5:1,8
6:6,19,20,25
7:4,15,17 8:11
8:12,13 9:3,22
9:25 12:8,19
13:12,18 14:18
15:3,11 17:19
19:7,8,16 20:3
20:6 21:6 22:7
23:12 26:5
29:13,13,14
30:15 31:10
33:17,17,22,24
34:8 35:25
36:9,24 39:13
41:24 42:4,4,8
43:11,11,17
44:5 46:4,11
47:23 50:3
52:14 53:5
57:16,22 61:2
62:21 65:21,24
66:4 67:9,10
67:12,15,17,20
70:11,17 71:4
73:25 74:13,14
75:10 76:5,5,6
77:8
knowledge
18:24 53:19
known 2:11,15
4:20
knows 5:21
37:23
Kugler 6:15

---

**L**

L 2:22,23
laboring 42:18
lack 33:16
LAKE 1:12
Lapinski 1:12
4:5,6 42:17,22
72:8,10,11,15
74:2 77:9,24
large 38:8

lastly 73:21
latest 12:7
laughing 77:19
Laurence 2:20
4:10
law 1:17 12:13
36:5 50:24
55:1 56:22
76:3
laws 50:15,16
lawyer 24:21
50:19 54:16
75:4
lawyer-deposi...
34:23
lawyers 28:9
43:14 51:15
54:17 65:9
75:8 76:6
lay 14:13
lead 25:16
learn 28:8 55:19
learned 6:17
learning 34:13
leave 7:11 16:18
29:1 46:12
68:10
legal 38:7
legitimate 44:3
Leigh 1:18 3:20
11:2 28:24
45:17
let's 17:24 34:24
38:20 39:15,17
39:17 41:5,9
44:15 46:12
61:9 64:1,1
65:3 70:15
71:9
letter 23:6,7
38:24 39:24
40:24 44:19
45:1 54:21
66:10 67:16
69:17 73:22
level 9:10,24

DocuSign Envelope ID: 0CE15BBF-85EA-4254-90CB-6BA9B24D2002

March 31, 2021

86

25:24 67:1
**Levin** 2:5,19 4:8
4:11
**liability** 1:5
10:25 13:18
14:22 15:5
16:11,12,20
19:25 25:18,20
30:24 31:8
33:6,12 34:2
**liaison** 4:3
**library** 4:13
**life** 20:10
**lift** 65:4
**light** 38:15 40:7
64:17
**line** 5:3 35:11
37:25 61:9
**list** 22:19 37:18
39:5,19 40:5
40:11,12,14,21
**litigation** 1:5
33:3 34:7,14
43:16 48:18
58:15 62:2
**little** 8:19 13:24
27:20 36:25
64:8,24
**live** 20:13 29:14
29:15 35:23
**LLC** 1:11
**LLP** 1:14 2:8,12
2:16,23
**Locke** 2:17 5:17
5:18
**logistical** 40:16
**long** 6:19
**long-term** 16:14
**look** 33:22 36:22
59:21 65:8
70:23
**looked** 62:22
**looking** 3:12
16:16 35:4
36:4,8 37:25
55:15

**lose** 34:18 49:25
**losing** 68:8
**lot** 6:17,19 22:9
32:16 36:5
44:7 74:1
**love** 20:15

**M**

**M** 2:2,8
**magistrate** 6:13
58:23 77:17
**manner** 37:16
**MAPLE** 2:3
**March** 1:7
**mark** 76:4
**MARKETING**
1:4
**marshaled** 31:2
**master** 3:4,5
4:12,17 5:20
5:25 8:1 11:4,7
11:10 12:5,19
13:1,3,21 14:7
14:25 16:24
17:17 19:4,10
20:8 21:10,15
21:20 22:6,8
22:20 23:22
24:8,22 25:2
25:21 26:9,17
29:10,20 30:1
30:10 31:11
32:10,25 33:19
34:24 35:2
36:19 38:16
39:15 40:9,19
41:9,15 42:2,6
42:10 43:2
44:5,13 45:7
45:11 46:11,15
46:18 47:3,12
47:18,21 48:1
48:10 50:5
53:2,6 56:6
57:1,15,25
58:16 59:8

60:8,17,25
61:8 62:8,16
63:5,15 64:1
64:10,22 65:12
66:9 67:6 68:5
68:12,19,21
69:2,22 70:7
70:23 71:1,12
71:21 72:2,9
72:14,25 74:6
74:17,24 75:12
75:24 76:11
77:2,16,22
**material** 36:9
51:8,10
**materials** 31:1
44:4
**matter** 33:11
50:12 53:5
**McCracken**
2:23 5:24
**McKeegan**
66:11,15
**MDL** 3:6 8:11
14:20 28:8
56:8,10 57:10
58:19 59:13
60:12 61:15
63:24
**MDLs** 6:15
**MEAGHER**
2:12
**mean** 15:22
24:13 26:22
30:15 31:19
32:23 48:6
50:18 57:24
63:6,6,7 64:3
**means** 26:21
**medical** 33:14
**meet** 4:1 18:14
36:15 37:18
39:7,13,19
40:22 70:6
72:21
**meeting** 28:24

29:1,7
**mentioned** 15:13
66:10
**mercy** 28:1
**mesothelioma**
41:23 49:12
51:15 65:22
66:6,25
**mess** 5:9
**Michelle** 1:15
3:24 10:2
28:24 30:17
**million** 43:6,6
**mind** 8:6 15:23
**minor** 40:10
**minutes** 12:24
**missed** 6:6 9:22
48:14
**Missouri** 8:2,3
28:8 35:22
45:12 47:8,22
48:2,10,16
51:6 52:6 53:5
54:5,6,11
56:14,22 57:12
57:19,20 58:20
58:22 61:21
65:1 66:5 75:5
77:7
**misspoke** 74:7
**misstep** 59:3
**mistaken** 13:10
**misunderstan...**
70:16
**MITCHELL**
2:5
**mixed** 24:9
**mm-hmm** 11:6
**moment** 21:19
21:19 26:11
48:21 51:7
**Montgomery**
1:19 2:23 5:24
**months** 10:8
**moot** 60:24
**morning** 67:18

**motion** 50:1
51:22 53:10,24
54:8,10 61:4
**motions** 17:13
**Motley** 1:11 4:6
**mountain** 72:1
**mouth** 45:22
**move** 10:14
11:19 17:11
46:19 59:5
66:7 73:13
**moved** 13:11
**movie** 77:14
**moving** 5:3
10:17 24:17,18
24:18,18 26:6
54:23
**mud** 26:4,6
**multi-millions**
44:7
**multiple** 37:13

**N**

**N** 1:10 2:1,22
**N.W** 2:13,17
**nail** 58:4
**name** 5:21 15:17
46:8 58:10
**narrow** 38:5
39:8 65:21
**navigate** 15:24
**necessarily**
62:18,18
**necessary** 16:12
72:12
**need** 6:11 7:5
9:25 16:1,5,22
17:15 18:17
21:11,25 23:18
23:19 24:19
28:3 30:19
31:7 34:9,19
34:22 35:2
42:8,21 61:2
61:23 62:19
68:23 70:13

DocuSign Envelope ID: 0CE15BBF-85EA-4254-90CB-GBA8B24D2002

March 31, 2021

71:9 72:10 76:20
needed 37:14 43:11
neither 78:7
never 18:3,18 31:5 60:2
new 1:1 2:13 6:24 7:15,18 20:23 32:15 36:9 37:8,21 49:4,7,7,10 50:12,17 51:11 51:14,15,20,23 52:22 53:22,25 54:2 67:24
nice 4:14 7:20
nicest 4:13
NJ 1:13 2:3,9
non-privileged 46:6
normal 76:12,12
Norton 8:1 38:2
note 21:18 44:22
notice 27:25 47:14,16,20 57:4,8 58:18 59:7,14 60:3,7 60:11,16 63:17 67:7 74:22,22 74:25 75:13,17 75:25 76:9,17
noticed 46:16 53:17 56:8 62:14 76:1
notices 76:13
notified 74:15
notifying 8:4
notion 16:25
nth 20:18
nuance 64:8
number 1:3 3:13 10:7 12:9 22:13 44:12 61:7
nuts 24:2

NW 1:15

O

O 1:9 2:22
o'clock 68:20,22 71:13,19,20,25 71:25 72:3,4 74:4
O'Dell 1:18 3:20 3:21 13:6 14:3 14:10 15:3 19:15 20:9 21:5,13 24:7 29:24 30:9,13 31:11 32:7,11 36:3 37:9,17 38:4,9,18 39:4 41:16 42:16 43:1,23 45:18 45:21 67:17 69:21 77:1
O'Dell's 40:11 44:10
O'Shaughnessy 45:8,9 46:16 49:6 51:16,22 52:18 53:9,23 54:22 56:10 58:19,25 59:14 63:1,14,18 64:3 66:18 73:2,9
O'Shaughness... 46:7 53:3 65:13
object 29:18 31:23 55:10
objection 17:24 17:25 18:11,13 18:14 19:13 26:24 31:24,25 35:19 47:19 63:19 64:3 73:7
objections 20:22 35:13 48:22

50:22
obstacles 64:17
obviously 10:17 54:23 55:22 57:22 63:9
occur 14:16 39:12 53:13 61:14
occurred 6:3
odds 20:16
offer 34:13
offered 49:23
offering 32:13
offhand 12:20
oh 18:16 45:17
okay 4:17 12:19 12:25 13:1 22:6,8 24:8,9 24:11 25:1 26:17 28:7,9 33:12,14,19 34:24 40:19 41:9,15 42:2 42:14 43:2 46:18 47:12,18 51:14 61:19 63:1,3,25 64:10,11 68:12 68:19 69:1 72:25 74:8 77:19
old 77:16
once 40:10 55:5
oncologist 32:12
one-page 38:24
ones 14:1 15:2 37:21
ongoing 31:8,15
open 19:16 20:3
opinion 32:13,15
opinions 32:15
opportunity 11:16 14:23 19:24 20:21 40:4
opposite 38:9

optimist 12:3
oral 68:23 71:13 73:8,14
ordeal 5:2
order 3:12 8:14 8:22 9:1 11:23 12:7,17 13:13 15:2 17:8 19:17 23:17 24:7 29:8 30:16,17 33:5 33:10 34:7 36:15 40:13 48:2 52:12,16 65:1 74:11
ordered 45:13 47:9 52:9 75:6
orders 29:4,15
ore 42:18
organized 4:13
originally 53:23
ought 7:17 17:1 17:1 23:19 45:5 48:8 49:1 55:6,23 69:23 70:14,15
outcome 78:10
outset 35:9
outside 54:3
outstanding 36:10
ovarian 50:2 66:25 67:13
overlap 42:4 65:23 66:1

P

P 1:10,10 2:1,1 2:22
P.A 2:5
p.m 1:7 3:3 77:25
P.O 1:19
PA 2:21
package 16:6 31:2

page 27:1
Papantonio 2:5 4:8
papers 64:13
parallel 6:23 30:24
Parfitt 1:15 3:23 3:24 10:2,3 11:6,9,14 12:11,23 13:2 21:14,16,21 22:7,9 24:7 29:24 37:9 45:25 67:17 68:17,20,25 71:18,22 72:3 72:6 74:15 77:13
PARK 2:9
part 23:4,5 34:1 48:14 51:6 52:15 70:8
particular 19:22 45:3 56:20 65:10
parties 16:16 18:21 23:8,18 25:5 33:4,5,6 37:1 39:7 41:23 50:8,12 53:25 64:22 70:11 71:17 73:16,24 78:8 78:8
parties' 50:19
partner 10:5 11:2
pass 10:5 11:2 13:4
Passover 77:21
PATRICIA 1:18
PC 2:2
pencil 71:3 72:10 73:18
Pennsylvania 48:17,25 49:22

50:14,15,16
51:1,16,21,21
52:5 53:10,23
53:24 54:3,7,9
54:16,17 55:3
55:3,6 59:4,5,6
60:4,6,9,13,20
60:23,24 61:3
62:7 63:23
64:14 65:9
74:20 75:3,8
76:3,6,10
**PENSACOLA**
2:6
**people** 8:8 18:24
28:1,3 41:24
44:19 55:14
67:9
**percent** 44:6,7
**perfectly** 41:4
72:6
**permitted** 18:2
18:18 25:6
**permitting** 8:14
**person** 8:7
**Personal** 2:18
5:18
**perspective**
13:22 32:20
60:21
**pertinent** 32:9
**phase** 8:17 10:12
**PHILADELP...**
2:21
**phone** 6:8 28:1
41:3 42:19
55:15 66:3
69:17 71:16
73:24
**phonetic** 15:16
**pick** 12:5 32:7
**picture** 4:14,16
27:11
**piece** 34:14
**Pisano** 3:10 6:4
8:13 14:2 15:2

23:7,15,17
**place** 17:8 19:18
47:1 49:10
50:15 52:10
53:12 78:5
**Placitella** 2:2,2
4:2,3,12,15
25:8,22 26:10
26:14 31:13
32:2 41:10,11
41:22 42:3,7,9
51:25 53:1,18
54:25 59:1,10
60:8,15,19
65:12,15 67:21
75:16,20 76:22
77:20
**plaintiff** 10:13
17:15,16 18:2
18:5,6,25
19:23 30:5,6
30:11 39:25
41:1 45:12,14
57:9 73:3,7,22
76:15
**plaintiff's** 10:3
**plaintiffs** 1:13
1:16,20 2:4,7
3:19,21,25 4:4
4:9,11 9:21
11:15 17:2,8
17:23 18:11,21
26:11,23 29:21
31:20 35:16
39:10 55:9
56:3 57:3
59:12 61:21
62:21 63:17,20
64:25 65:3
67:6 73:10,14
**plaintiffs'** 13:22
14:18 15:12
22:23 24:5
25:3,10 34:20
35:24 41:24
55:15

**plan** 36:14 41:6
74:8
**players** 7:17
**please** 15:9
52:25
**pleasure** 4:1
6:14
**point** 30:20 32:3
32:19 48:6,13
52:11 59:11,15
65:6 74:18
76:23,25
**points** 64:9
**pool** 11:8 14:6
**poor** 77:16
**Porter** 7:18
**portion** 10:25
**position** 20:9
49:1,20 53:12
**positions** 23:18
**possible** 41:21
70:19
**postponed** 73:20
**potential** 16:16
49:5
**potentially**
70:12
**POWDER** 1:4
**power** 8:23
47:22
**practical** 54:14
**practice** 3:16
**PRACTICES**
1:4
**prejudice** 43:3
73:22
**preliminarily**
10:9
**premised** 16:20
**preparation**
14:11
**preparations**
30:18
**prepared** 28:22
**preparing** 32:21
**present** 23:24,25

38:19 53:21
**presenting** 44:1
**preside** 54:12
62:9
**president** 44:20
**presumably**
57:8 63:12
73:12
**presumptuous**
62:1
**pretty** 20:16
28:21,23 29:15
35:7 41:12
51:3,4 77:5,10
**primarily** 33:14
33:15
**primary** 64:9
**privilege** 7:9 9:5
13:19 24:20
34:22 35:5,8
36:5,14 38:8
38:12 39:3
42:11 43:9
44:3 48:23
49:16,18 55:12
55:18 58:13
62:10 63:3,21
73:2,3,23
**privileged** 35:18
35:22 39:11
43:10,16 46:9
56:21 59:20,24
63:11 64:5
**pro** 43:10,15,19
44:4 52:13
**probably** 9:18
12:20 17:2
22:10 42:17
57:14 58:12
59:16 61:6
65:21 66:19
68:7 76:22
**problem** 23:4
24:22 31:12
36:20 40:9
42:6 68:6

71:21
**procedural**
40:17 64:17
**procedurally**
52:23 56:1
75:2 76:8
**procedure** 41:4
41:5 53:19
55:25 64:23
**proceed** 7:12
50:1 64:13
**proceeding**
23:13 48:4
49:5 65:8
71:16
**proceedings** 3:1
3:14 6:24
14:21 52:15
**process** 10:8,16
10:18 12:3
40:14 54:19
63:11 75:5
**PROCTOR** 2:5
**produced** 46:7
62:22,24
**product** 39:3
43:16
**production** 44:6
**Products** 1:4,5
2:18 5:19
**professionals**
14:14
**program** 25:16
**progress** 29:6
**progressed**
28:14
**proof** 39:23
**properly** 49:7
**proportional**
63:7
**proportionality**
64:6
**proposal** 71:6
**propose** 64:19
69:15 71:17
73:17

proposing 61:12
protocol 3:9
prove 16:12
provide 15:7
  32:15 36:15
  47:11
providers 19:22
proviso 71:14
prudent 17:22
  18:8 19:12
  20:20 22:12
  26:18
purely 57:17
  58:18
purposes 16:7,7
  36:18 72:16
pursuant 48:22
  50:14,16,17
  51:5 67:12
pursue 61:22
push 28:10
put 3:16 5:21
  8:6 13:13
  24:23 37:1
  40:18 65:3
  66:23 67:4,5
  68:22
puts 51:21
putting 51:7
  70:5

**Q**

quarter 29:24
quash 46:19
  50:1 51:23
  53:10,24 54:8
  54:10 57:9
  59:5 60:19
  73:13
quashed 56:11
  58:19,25 60:18
  75:1
quashes 59:6
question 11:5
  14:4 15:7 16:9
  16:20,23,25

22:21 33:21
  35:9 36:21
  38:17,18 41:16
  46:13,25 47:13
  47:17 51:8,18
  51:24 52:4,17
  52:21 53:16
  55:13 56:9
  57:16 58:11
  72:15 76:3
questions 33:12
  57:23 63:12
quickly 41:20
  73:25

**R**

R 1:9,10,12 2:1
  2:22 78:1
Rachel 2:23 5:20
  5:23
radar 67:5 68:4
Rafferty 2:5 4:8
raise 40:15 45:4
raised 15:13
  32:2 35:9 58:7
raises 45:4 65:9
randomly 48:21
randomly-assi...
  48:24 49:22
RAPPAPORT
  78:15
reach 36:16
  40:15
read 33:24 35:5
  35:20 50:24
ready 6:21 27:4
  74:10
real 29:14
really 10:12
  13:17 14:23
  19:20 20:1
  21:9 22:4
  30:15 35:24
  37:20 40:7
  42:5,13 43:21
  44:20 45:3

47:7 52:11
  55:23 66:22
  67:5 68:3 70:2
  70:2
rearguing 75:19
reason 15:10
  49:12 62:17,18
reasonable
  20:23
reasons 62:20
REATH 2:8
recall 23:16
  65:17
recollection 8:25
reconsideration
  52:15,19
record 3:14,16
  5:11,21 15:11
  44:22 58:11
  77:15
RED 2:3
redo 65:3
refer 23:6
referring 50:10
refine 38:5
regard 10:15,20
  10:22 11:24
  12:2 18:7 73:9
  73:17
regret 6:2
relating 17:7
  33:16
relation 21:7
relatively 28:18
relatives 18:23
  20:24
relevancy 63:8
relevant 25:14
  31:17 32:5
  47:11 63:6,8
relying 32:16
remainder 13:12
  31:9
remains 39:9
remanded 16:8
  31:3

remedy 56:24
remember 21:8
reminds 41:16
remote 1:5 3:1
removed 47:1
replacement 3:5
report 25:10,15
  25:17 70:21
reporter 3:11
reports 17:10
  24:6,6 25:3
  31:17,21 32:5
  33:13,13 69:9
representative
  37:2,4 38:6,22
request 57:9
  67:18 77:6
requested 44:25
  67:10
requests 24:20
resistance 61:17
resolve 72:22
resolved 6:16
  72:23
respect 55:11
  65:10 66:18,20
respectfully
  57:13 60:25
respond 39:25
  41:13 59:1
  63:20 73:14
responds 41:1
  57:9 73:7
response 58:11
responsibility
  15:24 58:15
  62:15
responsible 26:2
Ret 1:9 3:2
retired 3:5 6:12
  77:17
review 39:1
revised 36:4
revisit 65:11
Rhoads 2:23
Rice 1:11 4:6

Rich 4:23 15:14
  15:17 27:17,18
  36:9,15 39:5
  45:25 51:9
  67:19
Rich's 56:16
Richard 2:13
  5:5
right 10:16
  11:24 12:14
  13:2 14:9 15:3
  20:12,16,19
  21:3,19,22,23
  24:9,10,19
  25:21 30:1
  33:15 35:9
  43:17 44:7
  45:11 46:14
  53:4 56:14
  57:14 59:7,8,9
  59:9 60:17
  61:22 62:4,16
  62:16 63:8,21
  65:17 68:16,24
  69:20 75:1,22
  76:12 77:1,20
ripe 59:10 66:16
  68:6
risk 43:24 68:8
road 28:11
  57:24 63:9
  77:3
rolled 20:17
ROTH 2:2
rule 49:9 54:1
  59:21,22 62:5
  62:13 64:6
  76:18
ruled 48:24 62:6
  74:20
ruling 37:3
rulings 48:23
  54:12 62:9
run 27:22 28:5

**S**

**S** 1:10 2:1,20,22
2:22
**SALES** 1:4
**sample** 37:3,4
38:22
**satisfy** 49:24
**saw** 8:21 12:7
**saying** 16:19
26:8 30:7
33:22 34:5
38:24 52:3
54:15 55:1
**says** 19:17 21:2
21:5 45:12
65:2 76:15
**schedule** 7:12
12:1 17:16
19:16 20:5,11
27:19 28:18
40:8 63:20
68:14 69:6,13
69:14 70:3,16
70:18 71:7,8
73:1,18
**schedules** 28:2
**scheduling** 8:21
9:1 12:7,17,22
28:12 68:13
69:19 72:12
**Schneider** 1:9
3:2,4,6 4:12,17
5:8,20,25 11:4
11:7,10 12:5
12:19 13:1,3
13:21 14:7,25
16:24 17:17
19:4,10 20:8
21:10,15,20
22:6,8,20
23:22 24:8,22
25:2,21 26:9
26:17 29:10,20
30:1,10 31:11
32:10,25 33:19
34:24 35:2
36:19 38:16

39:15 40:9,19
41:9,15 42:2,6
42:10 43:2
44:5,13 45:7
45:11 46:11,15
46:18 47:3,12
47:18,21 48:1
48:10 50:5
53:2,6 56:6
57:1,15,25
58:16 59:8
60:8,17,25
61:8 62:16
63:5,15 64:1
64:10,22 65:12
66:9 67:6 68:5
68:12,19,21
69:2,22 70:7
70:23 71:1,12
71:18,21 72:2
72:9,14,25
74:6,17,24
75:12,24 76:11
77:2,16,22
**school** 12:13
**scientific** 33:14
**scope** 55:12
**second** 11:18
25:9 63:10
71:24
**Sedran** 2:19
4:11
**see** 6:8 11:3
19:13 20:22
26:19 31:12
41:18,18,19
43:9 44:20
57:11 66:24
**seeking** 8:17
45:15 46:25
**seen** 4:14 41:25
41:25
**segue** 38:13 41:9
44:15
**selected** 9:16
10:10 13:10

14:6
**selection** 11:16
11:18
**selections** 10:7
**seminar** 4:15
**send** 12:12,16
38:24 43:8
69:17 76:18
**sense** 30:18 38:6
40:7 41:7
49:21 56:5
**sensitivity** 38:14
**sent** 8:1,3 19:17
23:7
**separate** 13:17
14:17 23:9,13
23:14 30:24
54:23 59:13
66:12
**separately** 56:4
**serve** 51:16,20
61:14
**served** 47:10,15
51:22 53:4
54:7 76:24,25
**service** 49:6
**set** 9:18 17:1
21:1 25:10
26:18 28:15
38:6,22 40:11
53:14 71:16
73:25
**setting** 26:21
28:16 40:23
**seven** 36:23
**Seyfarth** 2:16
5:18
**share** 32:20
**Sharko** 2:8 4:19
4:19 17:5,6,18
18:20 19:7,14
19:16 24:4,11
25:1 26:16
28:19 29:19,22
34:17,25 35:1
44:5,8 66:10

68:18 69:1
70:2,21,25
71:3,11 72:20
75:18 77:11,19
**Sharko's** 67:16
**Shaw** 2:16 5:18
**shoes** 6:6
**short** 40:13
54:21 55:24
**shortly** 36:10
**shot** 5:1,7,9
71:24
**Show** 5:5
**shut** 45:22
**side** 10:10,10,11
15:15 16:13
34:19,20 36:6
55:15
**sides** 20:18,20
**significant** 45:5
**simple** 48:3 49:2
64:20
**simply** 38:14
50:11 55:9
**single** 36:23
**sir** 14:10 21:5,13
**situation** 28:5,6
62:20
**six** 6:14 11:8,12
11:12 12:2
13:22 14:7,8
17:4 18:7
20:16 24:3
25:3 26:13
27:3 29:12
57:19 72:17,17
74:14
**Skadden** 2:12
4:23 5:13
**sky** 39:20
**SLATE** 2:12
**sleeves** 20:17
**smaller** 44:11
**sole** 53:16
**solution** 50:9
64:20

**somebody** 65:18
**somewhat** 13:17
**sooner** 18:14
19:12 61:10
**sorry** 15:16
32:23 45:17,20
45:22 71:23
74:6
**sort** 7:12 9:9
13:11 15:4
41:6 43:10
69:11
**sound** 9:12,13
**sounds** 70:4
**soup** 24:2
**SOUTH** 2:6
**speak** 27:18
**spearheading**
15:5
**special** 3:4,5
4:12,17 5:20
5:25 8:1 11:4,7
11:10 12:5,19
13:1,3,21 14:7
14:25 16:24
17:17 19:4,10
20:8 21:10,15
21:20 22:6,8
22:20 23:22
24:8,22 25:2
25:21 26:9,17
29:10,20 30:1
30:10 31:11
32:10,25 33:19
34:24 35:2
36:19 38:16
39:15 40:9,19
41:9,15 42:2,6
42:10 43:2
44:5,13 45:7
45:11 46:11,15
46:18 47:3,12
47:18,21 48:1
48:10 50:5
53:2,6 56:6
57:1,15,25

DocuSign Envelope ID: 0CE15BBF-85EA-4254-90CB-6BA9B24D2002

58:16 59:8
60:8,17,25
61:8 62:8,16
63:5,15 64:1
64:10,22 65:12
66:9 67:6 68:5
68:12,19,21
69:2,22 70:7
70:23 71:1,12
71:21 72:2,9
72:14,25 74:6
74:17,24 75:12
75:24 76:11
77:2,16,22
**specific** 16:2
   17:7,14 18:24
   19:20,22 21:6
   22:3,3
**specifically**
   52:16 58:7
**specifics** 13:24
**spent** 10:23 51:9
**spoke** 67:17,19
**spoken** 54:16
**spot** 37:20
**spring** 69:24
**stamp** 51:21
**stamped** 75:23
   76:24
**stand** 29:25
   67:23
**standing** 46:19
   71:19
**standpoint** 16:1
**start** 3:17,18
   5:10 7:2 10:4
   54:15 62:23
**started** 10:8
   20:2
**starting** 9:21
   48:6
**state** 6:24,25
   7:19 14:21
   22:24 36:11
   41:23 47:2,23
   48:2,4,21 49:4

49:11 50:4
51:11 56:20
58:10 59:17
76:3
**statements**
   59:18
**STATES** 1:1
**static** 24:13
**status** 1:5 7:7
   9:3,8
**statute** 48:22
**steam** 10:17
**Steering** 3:22,25
   14:18 15:12
   41:25
**stenographica...**
   78:5
**Step** 37:17
**stickler** 56:12
**straighten** 69:5
   69:7
**straightforward**
   77:5
**streamline** 37:10
**STREET** 1:15
   1:18 2:6,17,20
**strikes** 49:15
**strong** 8:23
**struck** 10:11
**stuck** 26:4
**studied** 20:17
**study** 20:21
**stuff** 42:19
**subject** 13:19
   33:21 34:4
**submit** 39:9,23
   54:20 55:24
   73:5
**subpoena** 48:15
   48:17 49:7
   50:17 51:1,17
   51:20 52:5
   53:22 54:2,6
   54:18 55:2
   61:14 65:10
   75:4,6,7,9,13

75:16,21,22,23
76:2,9,17,24
**subpoenas** 76:13
**subsequent**
   66:22
**subsequently**
   54:2,7
**subset** 9:15
**substance** 6:12
   31:24,25 76:23
**substantive** 7:23
   8:6 63:1
**subtracks** 16:10
**successful** 54:10
**suggest** 19:11
   27:8 37:24
   54:20
**suggested** 65:7
**suggesting** 61:13
   70:4
**suggestion** 23:23
   28:19,20 29:1
   37:19 39:4
   54:15 63:16,16
   64:12,21 68:13
**suggests** 37:17
**SUITE** 1:12
   2:20
**sum** 6:12 73:1
**supersede** 77:7
**support** 32:14
   32:14 39:2
   43:9,12 73:6
**supporting** 39:2
   39:24 40:24
   43:8 44:3 73:6
**suppose** 57:17
   76:11
**Supreme** 67:24
**sure** 5:23 6:9
   8:24 14:3
   16:11 19:14
   20:6 40:13
   44:9 51:3,4
   61:17 65:5,23
   67:2 68:9

74:10,19 75:15
**Susan** 2:8 4:19
   30:17
**suspect** 14:12,15
   22:17
**swaths** 38:8

─────────

**T**

**T** 2:13,17,22
   78:1,1
**table** 42:20
   66:23
**tail** 6:19
**take** 11:10 13:6
   13:25 14:2
   15:1,6,9,9,25
   18:6,10 22:15
   25:6 26:22
   28:3,10,14
   31:16,23 33:6
   33:9 45:14,15
   45:23 49:10
   57:6 59:11,12
   62:23 65:2,6,8
   73:11
**taken** 14:20
   25:14 32:17
   52:19 57:18,24
   58:20 59:17
   78:4
**takes** 11:24
   50:15
**talc** 3:6 7:16
**TALCOM** 1:4
**talk** 7:7,8 12:21
   21:25 22:14
   28:22 31:7
   34:20,21 56:4
   64:15,16 65:8
   69:14
**talked** 10:20
   15:15 27:10
   43:4 46:24
   72:22
**talking** 9:23
   14:5 18:5

22:12 42:23
43:17 66:17
70:9
**targeted** 44:11
**tee** 17:24 18:1,13
   35:4,18 36:1
   47:19 60:11,22
   61:9 63:11,22
   63:23
**teed** 64:2 77:4
**tell** 7:4 9:22
   47:22
**telling** 7:3
**tells** 74:9
**tentatively** 69:13
   71:8 72:9
**term** 33:16
**terms** 9:8 12:21
   14:10 17:6,14
   20:4 23:11
   32:21 36:6,10
   67:22 68:13
**Terrific** 74:17
**testify** 67:25
**testimony** 16:12
   34:5 78:4
**thank** 4:25,25
   35:1 43:1
   45:25 68:11,25
**theoretical**
   59:17
**theory** 31:25
**thing** 48:15 50:5
   59:16 64:21
   67:21 74:2
**things** 15:22
   22:11 25:25
   27:21 28:25
   44:2
**think** 3:15 6:17
   6:22 7:5,13 8:4
   15:22 17:14
   18:20 19:1,11
   20:25 21:2,10
   21:16,17,23
   23:3,16 25:23

26:15,18 28:21
29:10,24 30:2
31:22 32:2,7
33:4,23 34:20
35:5,11,17,24
37:11,12,17,19
37:22 38:6,10
40:2,16 41:2
42:4 43:21,24
44:1,2 45:24
46:21,21 47:2
47:6,6,22
48:13,13 49:23
50:7 51:5 55:6
55:22,25 56:1
56:5,16 57:13
57:21,21 58:3
58:7,8,21 59:4
60:2 62:4
63:22 64:8,12
64:13,24 65:7
65:17 66:16,17
66:21 67:16
68:1,15 69:5,6
69:25 70:3,7
70:19 72:20
73:24 74:8
75:2,2 76:20
76:22 77:5,9
**thinking** 17:18
18:19 28:5,6
**third** 16:16 19:5
23:8 25:5
52:11 70:11
**third-parties**
21:4
**third-party**
15:25 16:21
18:7 19:5,7,8
26:15 27:6
**THOMAS** 2:5
2:17
**thought** 7:2,17
8:8 31:5,5 35:6
45:20 64:19
69:2 72:21

74:9 76:23,25
**thousand** 36:24
46:6
**thousands** 31:10
**three** 10:8,14
44:19 64:5,11
71:9
**throw** 34:16
**Thursday** 70:25
71:20
**tied** 20:12
**time** 8:21 12:8
18:17 21:17
25:16 27:21
28:11 29:17
38:14 44:22
51:9 59:25
70:13 71:25
72:1,24 78:5
**timeline** 66:8
**times** 27:23 43:6
43:6
**Tisi** 2:5 4:7,8 5:5
15:4,10,11
23:3,4 27:9
32:23 33:2,20
37:9 44:23
45:16,19 46:3
46:14,17,21
47:5,13,20
51:2 52:2 53:4
53:8 56:15
57:2,13,21
61:19 62:17
63:8,25 64:16
67:8 71:23
72:4,7 74:18
75:2,14,22
76:1,21
**today** 7:14 9:5
12:21 21:25
22:11,14 30:6
71:1,1
**told** 64:18 65:18
**Tom** 5:17
**top** 28:6

**total** 5:9 11:8
**totally** 21:24
**tough** 20:9
**track** 8:22 11:19
12:8 13:17
14:17 23:9,14
30:22,24 62:19
**trailer** 77:13
**transcript** 35:6
35:20 78:4
**transition** 38:12
**treating** 14:14
**trial** 9:14 11:13
11:17,21 12:4
16:6 20:18
21:12 23:2
29:23 31:2
33:9,9 34:8
35:18 57:19
70:1 74:12
**trials** 16:3 30:19
33:8 34:11
69:24
**tried** 8:22 67:23
**TRT** 33:2 34:7
**true** 15:8 78:3
**try** 5:2 16:4 27:4
37:10 44:24
67:13 70:18
**trying** 15:24
16:11 17:20
20:5 23:15
27:19 38:5
43:22 47:24
64:19
**turn** 14:23 34:24
35:3
**turns** 59:19
**two** 6:15 9:4
16:10 17:23
18:9 38:20
44:18 49:10
62:19 64:5
69:14 71:14
**two-page** 38:24
**type** 66:16

**typically** 33:18
33:20 34:4
43:15

_____
**U**

**ultimately** 51:19
54:1 57:23
62:11
**understand** 6:22
32:19 42:9
54:4,18 55:9
56:19 74:19
75:3,4 76:8
**understanding**
3:10 8:10 9:10
9:20 54:11
55:1 69:12
73:19
**understands**
35:10
**understood**
56:17,19,22
**undo** 29:6
**unforeseen**
30:21
**unfortunately**
5:7 26:1
**uniform** 48:14
50:25 51:5
**united** 1:1 29:25
**unlearn** 55:19
**unprivileged**
56:21
**uphill** 64:24
**uphold** 38:8
**upset** 56:13
77:17
**usable** 16:2 33:7
**use** 23:2 35:17
46:19
**useful** 34:14
**USMJ** 1:9 3:2
**usually** 3:19
18:15

_____
**V**

**V** 2:5
**vague** 8:25
**Valsartan** 6:16
43:7
**Vannah** 12:14
**vehicles** 26:3
**videoconference**
1:5 3:2
**view** 38:9 58:17
**Viscomi** 7:22
38:1 51:12,23
52:23 54:1
65:14,17 66:4
66:5
**volunteering**
46:2

_____
**W**

**wait** 8:8 59:12
60:9,13 61:2
63:23 76:17,20
77:11
**waiver** 43:24
**Walker** 2:23
**WALNUT** 2:20
**want** 5:20,25 9:6
13:3,25 14:2
15:6,20 16:18
17:3,23 18:9
20:22 24:11,13
26:23 27:18,23
27:25 29:5
31:12,16 33:8
35:17,25 40:17
41:18 43:9
46:5 59:11,12
59:25 67:1
69:7 70:3 74:4
74:19,22 76:6
76:16
**wanted** 32:20
41:16 44:16
45:4 66:23
67:4 68:9
75:14
**wants** 11:3

**WASHINGT...** 1:16 2:14,18
**wasn't** 28:8 52:12,14 75:21 75:24
**wave** 30:21
**way** 7:2 18:16 28:13 33:3 34:6 35:4 49:3 49:24 50:6,7 50:25 52:1,24 56:1 61:13 63:22 64:17 65:7 67:24
**we'll** 7:5 13:13 18:18 29:8 36:1 39:25 40:15 54:22 60:11 64:13 65:8 68:22 70:6 71:8,9,13 73:1,18,25 74:1
**we've** 12:2 27:19 27:22,22
**week** 17:23 18:8 39:24 41:13 60:11
**weekend** 42:15
**weeks** 61:7 69:14
**weigh** 25:9 34:19 76:6
**went** 51:15 52:14 54:13 67:24
**whatsoever** 8:5 44:14 48:18
**White** 12:14
**whittled** 10:7
**wholeheartedly** 69:23
**willing** 50:18,19
**win** 60:24
**Wished** 7:24
**withdraw** 61:14

**witness** 13:20 14:19 15:17 34:3 50:20 58:10 67:23
**witnesses** 14:13 14:13 15:20 16:17,20,21 21:6 33:7 34:2
**Wolfson** 6:2 9:18 11:20 16:3 22:1 23:24,25 29:16 35:21 52:8 56:16 58:17,21 58:24 62:15 68:14 69:7,15 69:18 74:9
**Wolfson's** 3:12 35:7 55:17 58:6 59:18 70:19
**women** 62:1
**words** 55:2
**work** 6:21 8:18 9:25 11:11 13:15,16,16 23:15 31:6 38:2,4 39:3 42:21 43:16 65:8 71:22
**worked** 9:17 10:9 22:5 27:3 52:1
**working** 6:14 10:23 37:8 44:24
**works** 40:3
**world** 7:16 29:14,15
**worth** 34:15,15
**wouldn't** 17:22 18:8 19:11 33:22 55:9 72:17
**writing** 40:18
**wrong** 3:10 9:12

23:12 51:3 55:8 76:24
**wrote** 35:8 43:7

**X**

**X** 34:8
**XI00416** 78:15

**Y**

**yeah** 20:8 26:14 41:11 45:16 63:5 65:5 67:14,21 72:4 74:6 77:1,2,9
**year** 13:12 31:9 32:4
**years** 6:13,14 10:23 77:17
**yesterday** 10:6 10:10 15:14 20:16 29:12 46:24 47:15 51:10 53:5 67:16,19
**YORK** 2:13

**Z**

**Zoom** 1:5 3:1 19:19 71:4,8 73:18

**0**

**07701** 2:3
**07932** 2:9
**08002** 1:13

**1**

**1** 25:7 37:17 62:20
**10,000-foot** 9:10 9:23
**101** 1:12
**10th** 18:16
**11** 27:14 67:12
**127** 2:3
**12th** 18:1,16 21:7 68:17,18

68:19 71:13 73:14 74:4
**14** 6:12 17:9 18:22 19:1,3 20:13
**1440** 2:13
**14th** 17:19 18:4 18:12,15 20:6 21:7,8 22:21 23:25 27:1 30:8
**15th** 13:8 65:18 68:15 69:20 73:8
**16-2738** 3:6
**16th** 23:6
**17th** 35:8
**1825** 1:15
**19106** 2:21
**1st** 24:2

**2**

**2** 12:9 71:18,25
**20** 73:16
**20,000** 62:1
**20004** 2:18
**20005** 2:14
**20006** 1:16
**2017** 3:12
**2021** 1:7 11:25
**2022** 11:21 12:4 29:24 31:1 69:24 70:19 74:12
**20th** 71:5,5
**210** 1:12
**218** 1:18
**225** 77:17
**22nd** 70:22,24 71:8 72:8 73:19
**23rd** 39:22 40:23 41:3 63:19 73:5,13
**25,000** 62:1
**26** 64:6

**27th** 22:24 42:23
**2nd** 13:11 24:7 25:4

**3**

**3** 17:11 71:20
**3:16-md-2738-...** 1:4
**3:30** 1:7 3:3
**30** 10:9 33:8
**30th** 41:1
**31** 1:7
**316** 2:6
**31st** 71:2
**32502** 2:6
**36104** 1:19
**3rd** 72:18

**4**

**4** 68:20,22 71:13 71:25 72:3,4 74:4
**4:10** 34:18
**4:30** 34:18
**4160** 1:19
**45** 33:9

**5**

**5:11** 77:25
**500** 2:20
**510** 2:20
**5th** 42:14,25 63:20 73:7,14

**6**

**600** 2:9
**6th** 18:6

**7**

**704** 3:13
**7th** 18:16

**8**

**9**

**9** 38:23 39:18 40:21 63:18

DocuSign Envelope ID: 0CE15BBF-86FA-4254-90CB-CBA9B24D2002

March 31, 2021

94

| | | | | |
|---|---|---|---|---|
| 73:3,10<br>**975** 2:17<br>**9th** 36:15 37:11<br>38:19,25 39:5<br>40:5 41:3<br>71:15 73:22 | | | | |