**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*THIS DOCUMENT RELATES TO ALL CASES* | MDL NO. 16-2738 (FLW) (LHG) |

**THE PLAINTIFFS' STEERING COMMITTEE'S AMENDED NOTICE OF TAKING ORAL DEPOSITION OF JIJO JAMES**

PLEASE TAKE NOTICE that pursuant to Rule 26 and Rule 30 of the Federal Rules of Civil Procedure, the Plaintiffs' Steering Committee (PSC) will take the deposition of **Jijo James** via oral and video examination on **June 22, 2021 beginning at 10 AM Eastern** remotely via Zoom before a certified court reporter and videographer**.**  The deposition, if not completed on the specific date, will continue on a mutually agreeable date from day-to-day until the examination is completed.

Deponent is requested to testify as well as produce any documents and items responsive to the attached Requests to Produce no later than fourteen (14) days prior to the date of the deposition. The deposition will be taken before a notary public or other officer authorized to administer oaths, for the purpose of discovery, for use at trial, or for such other purposes as permitted by the Federal Rules of Procedure. The deposition will be recorded by stenographic means and by videotape.

## DEFINITIONS

The following definitions apply to the Notice of Deposition and are deemed to be incorporated into each subject matter and document requested and listed below. To the extent a term commonly in use in the cosmetic and/or personal care product industry or in use in the medical community is not defined herein, it shall be understood to be consistent with the meaning commonly ascribed to that term in the cosmetic and/or personal care product industry.

1. "Defendants" refer to all Defendants in this action, including Johnson & Johnson (J&J), Johnson & Johnson Consumer Inc. f/k/a Johnson & Johnson Consumer Companies, Inc. (JJCI), Imerys Talc America, Inc. f/k/a Luzenac America, Inc and Personal Care Products Council (PCPC) f/k/a Cosmetic Toiletry and Fragrance Associations (CTFA) (both collectively and individually) as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including all corporations and entities affiliated with Defendants. The term "Defendant" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives. The term "Defendant" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint venturers or other representatives.

2. The term "Talcum Powder Products" refers to the Johnson's Baby Powder and Johnson & Johnson Shower to Shower line products. This term is used interchangeably with the term "Relevant Products."

    3.    The term "Talc," as distinguished from "Talcum Powder Products," refers to the talc that is mined, manufactured, or processed for the purposes of use in the Talcum Powder Products and their processing.

    4.    The term "Heavy Metals" refers to any of the following: nickel, mercury, lead, manganese, copper, cobalt, chromium, magnesium, cadmium, neodymium, aluminum, antimony, and arsenic.

    5.    The term "Asbestos" is used to refer to any matter, substance, material, product (or component thereof) containing asbestos, asbestiform materials (including non-regulated fibers such as winchite and richterite), transition fibers, cleavage fragments, and/or non-asbestiform asbestos materials, regardless of the fiber type, form, or percentage (including less than 1%), as well as chrysotile, amphiboles, amosite, crocidolite, tremolite, anthophyllite, and/or actinolite.

    6.    The term "Documents" and "Documentation" as used in these discovery requests is coextensive with the meaning of the terms "Documents" and "tangible things" in Fed. R. Civ. P. 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "Documents" and "tangible things" under Fed. R. Civ. P. 34, and the applicable Local Rules. Consistent with the above definition, the term Document shall include, without limitation, any database, written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of

investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, correspondence and communications (as defined below) of any type (including but not limited to video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), Documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

7. "Scientific Study" shall mean, without limitation, all scientific studies, including in vitro, in vivo toxicology or pharmacology studies (whether in human or animal), epidemiology and statistical analysis. They include publish or unpublished studies as well as proposed studies and studies actually conducted.

8. The term "Communication(s)" and/or "Correspondence" shall mean and include every manner or means of correspondence, disclosure, transfer, or exchange of information, and every correspondence, disclosure, transfer or exchange of information, whether orally, electronically or by documents, or whether face-to-face, by telephone, mail, email, text messaging, instant messaging, facsimile, personal delivery, overnight delivery, or otherwise.

9. The term "Identify" when used in reference to a person, means to state that person's full name, name of his or her employer, job title or position, and that person's last known residence and/or business addresses and telephone numbers.

10. The term "Identify" when used in reference to a document, means to state the title of the document, its date, its author, its serial or identification number (if any), and its bates number (if previously produced in this lawsuit).

11. The term "Identify" when used in reference to an object, means to state the generic and proprietary name of the object, its version or edition (if applicable), title of the document, its date, its author, its serial or identification number (if any), and the date it was created (if available) with sufficient specificity so that the object (or a reasonable facsimile of it) can be positively identified.

12. The term "Date" means exact day, month and year, if ascertainable, or the best available approximations, including any relationship to other known events (designate whether exact or approximate).

13. The term "Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

14. The use of the singular herein shall be deemed to include the plural and vice versa; and the use of one gender shall include the other, as appropriate in the context. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

15. The term "PCPC" is used to refer to the Personal Care Products Council and all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-

party contractors or other representatives, including any corporations and entities affiliated with PCPC, including its predecessor the Cosmetic, Toiletry and Fragrance Association (CFTA).

16. The term "TIPTF" is used to refer to Talc Interested Party Task Force and all of its member companies, their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and entities affiliated with TIPTF.

17. The term "CIR" is used to refer to Cosmetic Ingredient Review and all of their partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors or other representatives, including all expert panel members of the CIR.

18. The term "CRE" is used to refer to Multinational Business Services, Inc. d/b/a the Center for Regulatory Effectiveness and all of its partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors or other representatives, including any corporations and entities affiliated with CRE. For the purposes of this notice, CRE is also used to refer to Multinational Legal Services, PLLC f/k/a Multinational Legal Services P.C.

19. The term "IARC" is used to refer to International Agency for Research on Cancer and all of their partners, members, staff, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and entities affiliated with IARC.

20. The term "ISTRP" is used to refer to International Society of Regulatory Toxicology and Pharmacology and all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and entities affiliated with ISTRP.

21.     The term "NTP" is used to refer to National Toxicology Program and all of their committees, review groups, partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including any corporations and entities affiliated with NTP.

22.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery requests all responses that might otherwise be construed to be outside of its scope.

23.     "Related to" or "regarding," mean, without limitation, discuss, describe, reflect, deal with, pertain to, analyze, evaluate, estimate, constitute, study, survey, project, assess, record, summarize, criticize, report, comment, or otherwise involve, in whole or in part.

24.     The term "Concerning" means referring to, relating to, describing, regarding, evidencing, or constituting; and each such term shall be deemed synonymous to the others when used herein.

**25.**    "Regulatory Agency" is used to refer to any domestic or foreign governmental body, entity, department, or division that oversees, monitors, or regulates cosmetic and/or personal care products, including but not limited to the Food and Drug Administration (FDA) and the Consumer Product Safety Commission (CPSC).

## SCHEDULE A

1. A copy of the witness's current or most recent resume or curriculum vitae.

2. The witness's complete personnel file, including but not limited to, any and all performance reviews and personnel records that relate or refer to the witness's work on Johnson's Baby Powder and any other talcum powder products.

3. Any and all documents pertaining to the witness's compensation while employed by Johnson and Johnson or any of its subsidiary companies.

4. Any and all documents in the witness's possession, custody, or control which discuss, mention, consider, or contemplate the presence of asbestos in Johnson's Baby Powder, Shower to Shower, or other talcum powder products.

5. Any and all documents in the witness's possession, custody, or control which discuss, mention, consider, or contemplate the association between talcum powder and ovarian cancer.

6. Any and all documents in the witness's possession, custody, or control which discuss, mention, consider, or contemplate the association between Johnson's Baby Powder, Shower to Shower, or other talcum powder products and ovarian cancer.

7. Any and all documents in the witness's possession, custody, or control which discuss, mention, consider, or contemplate the association between asbestos and ovarian cancer.

8. Any and all documents in the witness's possession, custody, or control which reflect communications with any Johnson and Johnson entity or employee, including its lawyers, regarding talcum powder products.

9. Any and all documents in the witness's possession, custody, or control which reflect communications specifically with Susan Nicholson, MD.

10. Any and all documents in the witness's possession, custody, or control which reflect communications with any Johnson and Johnson entity or employee.

11. Any and all documents in the witness's possession, custody, or control which reflect communications with any Johnson and Johnson entity or employee regarding talcum powder products.

12. Any and all documents in the witness's possession, custody, or control which refer or relate to, in any way, the following specific individuals or entities regarding talcum powder products:

    a. Imerys or any of its predecessor companies including Rio Tinto and Luzenac
    b. Crowell and Moring, including Ridgeway Hall
    c. Robert Glenn
    d. Meta-Analysis Research Group
    e. Joshua Muscat MD
    f. Michael Huncharek, MD
    g. Brooke Mossman, PhD
    h. National Toxicology Program
    i. Person Care Products Counsel (PCPC)
    j. Talc Interested Party Task Force
    k. International Agency for Research on Cancer (IARC)
    l. International Society of Regulatory Toxicology and Pharmacology (ISTRP)
    m. Cosmetic Ingredient Review (CIR)

13. Any and all documents in the witness's possession, custody, or control which discuss, mention, consider, or contemplate the International Agency for Research on Caner's (IARC) consideration of talc as a human carcinogen.

14. Any and all documents in the witness's possession, custody, or control which reflect communications specifically with the Food and Drug Administration (FDA) regarding talcum powder products.

15. Any and all documents in the witness's possession, custody, or control which reflect communications specifically with Rich Zazenski regarding talcum powder or talcum powder products.

16. All communications with or about John Hopkins relating to talcum powder products.

17. All communications with or about John O'Shaughnessy relating to talcum powder products since Mr. O'Shaughnessy left Johnson & Johnson's employment.

18. All communications with or about Bill Ashton relating to talcum powder products.

9

18.     All communications with or about Center for Regulatory Effectiveness (CRE), Multinational Business Services (MBS), Multinational Legal Services (MLS), Bill Kelly, Jim Tozzi, or Alfred Wehner relating to talcum powder products.

Dated: June 9, 2021                      RESPECTFULLY SUBMITTED,

/s/ *Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP

/s/ *P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.

*Plaintiffs' Co-Lead Counsel*

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

*/s/ P. Leigh O'Dell*
P. LEIGH O'DELL
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C
218 Commerce Street
Montgomery, Alabama 36104
334-269-2343
leigh.odell@beasleyallen.com

ATTORNEY FOR PLAINTIFFS