# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (FLW) (LHG) |

## DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S BRIEF IN SUPPORT OF THEIR <u>OMNIBUS MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   STATEMENT OF FACTS ............................................................ 3

    A.    Plaintiff Carol Williams ..................................................... 3

    B.    Plaintiff Linda Hill .............................................................. 4

    C.    Plaintiff Bobbie Landreth .................................................... 7

    D.    Plaintiff Bertha Walton ....................................................... 8

    E.    History of Talc Litigation and Pervasive Attorney Advertising ........ 11

III.  LEGAL STANDARD ................................................................. 14

    A.    Choice of Law in MDL ..................................................... 14

    B.    Summary Judgment Standard ............................................ 15

IV.  ARGUMENT .............................................................................. 16

    A.    The J&J Defendants Are Entitled to Summary Judgment as to Plaintiff Carol Williams's Claims. ................................. 16

        1.    Plaintiff Williams's Claims Are Governed by New York Law.................................................................. 16

        2.    Ms. Williams's Personal Injury Claims Are Barred by the Three-Year Statute of Limitations. ........................... 18

            a.    Ms. Williams's Personal Injury Claims Accrued More Than Three Years Before She Filed Her Complaint. ................................................... 18

            b.    Equitable Estoppel Does Not Toll The Statute of Limitations. ................................................ 20

        3.    The J&J Defendants Are Entitled to Summary Judgment on Ms. Williams's Breach of Warranty Claims ..................... 24

        4.    The J&J Defendants Are Entitled to Summary Judgment on Ms. Williams's Negligent Misrepresentation, Fraud, and Fraudulent Concealment Claims. ................................. 26

        5.    The J&J Defendants Are Entitled to Summary Judgment on Ms. Williams's Consumer Protection Claim. .................... 27

**TABLE OF CONTENTS**
(continued)

6.    The J&J Defendants Are Entitled to Summary Judgment on the Civil Conspiracy, Loss of Consortium, Punitive Damages, and Discovery Rule and Tolling Because New York Does Not Recognize Them as Independent Claims. ......28

B.    The J&J Defendants Are Entitled to Summary Judgment as to All of Plaintiff Linda Hill's Claims. .................................29

    1.    Plaintiff Hill's Claims Are Governed By Virginia Law. .........29

    2.    Ms. Hill's Personal Injury Claims Are Barred By The Two-Year Statute of Limitations. ...........................................31

        a.    The Non-Fraud Claims Are Barred By The Statute of Limitations. ................................................................33

        b.    The Fraud Claims Are Barred By The Statute of Limitations. ....................................................................33

        c.    The Defendant Misrepresentation Exception Does Not Toll The Statute of Limitations. .............................36

    3.    The J&J Defendants Are Entitled to Summary Judgment on Ms. Hill's Consumer Protection Claims. ...........................41

        a.    Ms. Hill's Virginia Consumer Protection Claim is Barred by the Two-Year Statute of Limitations. ...........41

        b.    Ms. Hill's Remaining Consumer Protection Claims Are Not Recognized Under Virginia Law. ....................41

    4.    The J&J Defendants Are Entitled to Summary Judgment on the Loss of Consortium, Punitive Damages, and Discovery Rule and Tolling Claims Because They Are Not Recognized by Virginia. ...................................................42

C.    The J&J Defendants  Are Entitled to Summary Judgment as to All of Plaintiff Bobbie Landreth's Claims. .........................43

    1.    Plaintiff Landreth's Claims Are Governed by Mississippi Law. ...................................................................................43

    2.    Ms. Landreth's Products Liability Claims Are Barred by the Three-Year Statute of Limitations. ....................................45

## TABLE OF CONTENTS
(continued)

Page

a.    Ms. Landreth's Products Liability Claims Accrued More Than Three Years Prior to When She Filed Her Complaint. ................................................45

b.    The Statute of Limitations for Ms. Landreth Is Not Tolled by the Fraudulent Concealment Doctrine. .........47

3.    Ms. Landreth's Negligence and Breach of Warranty Claims are Subsumed by Her Products Liability Claims. .......50

4.    The J&J Defendants Are Entitled to Summary Judgment on Ms. Landreth's Fraud, Fraudulent Concealment, and Negligent Misrepresentation Claims. ....................................51

     a.    Ms. Landreth's Fraud, Fraudulent Concealment, and Negligent Misrepresentation Claims Are Subsumed by Her Products Liability Claims. ...............51

     b.    Ms. Landreth's Fraud, Fraudulent Concealment, and Negligent Misrepresentations Are Barred by the Statute of Limitations. .............................................52

5.    The J&J Defendants Are Entitled to Summary Judgment on Ms. Landreth's Mississippi Consumer Protection Act Claim. .......................................................................................53

     a.    Ms. Landreth Did Not Comply With the Pre-Filing Requirements. .............................................................53

     b.    Alternatively, Ms. Landreth's Mississippi Consumer Protection Act Claim is Subsumed by Her Products Liability Claims or Barred by the Statute of Limitations. ....................................................54

6.    The J&J Defendants Are Entitled to Summary Judgment on Ms. Landreth's Civil Conspiracy, Punitive Damages, and Discovery Rule and Tolling Because Mississippi Does Not Recognize Them as Separate Claims. ....................54

D.    The J&J Defendants Are Entitled to Summary Judgment as to All of Plaintiff Bertha Walton's Claims ............................................55

1.    Plaintiff Walton's Claims Are Governed by Louisiana Law ..........................................................................................55

**TABLE OF CONTENTS**
(continued)

**Page**

2.      The J&J Defendants Are Entitled to Summary Judgment as to All of Ms. Walton's Claims Because She Cannot Provide Sufficient Evidence of Usage of JJCI Talcum Products...................................................................56

V.    CONCLUSION.................................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. City of Fin. Co.*,
   No. Civ.A. 3:02 CV 81, 2004 WL 1638251 (N.D. Miss. May 4,
   2004) ...........................................................................................................54

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................15, 16

*Asbestos v. Bordelon, Inc.*,
   726 So. 2d 926 (La. Ct. App. 1998)............................................................57

*Baker v. Stryker Corp.*,
   770 Fed. App'x 12 (2nd Cir. 2019) .............................................................25

*Barrigan v. Elite Funding*,
   No. 07-0951, 2009 WL 54514 (E.D. Va. Jan. 6, 2009), *aff'd*, 353
   Fed. App'x 813 (4th Cir. 2009) ...................................................................32

*Black v. Covidien, PLC*,
   No. 17-cv-6085, 2018 WL 573569 (W.D.N.Y. Jan. 26, 2018) ....................28

*Blouin v. Johnson & Johnson*,
   No. 2:17-cv-42, 2017 WL 4969345 (S.D. Miss. Nov. 1, 2017)............45, 46, 53

*Blundon v. Goodyear Dunlop Tires N. Am., Ltd.*,
   No. 11-cv-990S, 2015 WL 5943480 (W.D.N.Y. Oct. 13, 2015) ..................17

*Bonti v. Ford Motor Co.*,
   898 F. Supp. 391 (S.D. Miss. 1995) ......................................................43, 44

*Bouchillon v. Same Deutz-Fahr, Grp.*,
   No. 1:14-cv-135, 2016 WL 919550 (N.D. Miss. Mar. 10, 2016)..................43

*Bryant v. Wyeth, Inc.*,
   816 F. Supp. 2d 329 (S.D. Miss. 2011), *aff'd*, 487 Fed. Appx 207
   (5th Cir. 2012).....................................................................................46, 48, 49

*Carey v. Foster*,
345 F.2d 772 (4th Cir. 1965) ...............................................................................42

*Catalano v. BMW of N. Am., LLC*,
167 F. Supp. 3d 540 (S.D.N.Y. 2016) ...............................................................25

*Conboy v. U.S. Small Bus. Admin.*,
992 F.3d 153 (3d Cir. 2021) ...............................................................................15

*Corsello v. Verizon N.Y. Inc.*,
18 N.Y.3d 777 (N.Y. 2012) ................................................................................27

*Crosby v. Pippin*,
No. 1:18-cv-343, 2019 WL 1063377 (S.D. Miss. Mar. 6, 2019) ......................52

*Cuccolo v. Lipsky, Goodkin & Co.*,
826 F. Supp. 763 (S.D.N.Y. 1993) .....................................................................27

*Devore v. Pfizer*,
58 A.D.3d 138 (App. Div. 1st Dep't 2008) ........................................................16

*Dreher v. Budget Rent-A-Car Sys., Inc.*,
272 Va. 390 (Va. 2006) ......................................................................................29

*Elliott v. El Paso Corp.*,
181 So.3d 263 (Miss. 2015)................................................................................50

*F&S Sand, Inc. v. Stringfellow*,
265 So.3d 170 (Miss. 2019)................................................................................46

*Fisher v. APP Pharms., LLC*,
783 F. Supp. 2d 424 (S.D.N.Y. 2011) ...............................................................26

*Flick v. Wyeth LLC*,
No. 3:12-cv-00012, 2012 WL 4458181 (W.D. Va. June 6, 2012) .............*passim*

*Gaidon v. Guardian Life Ins. Co. of Am.*,
750 N.E.2d 1078 (N.Y. 2001)............................................................................27

*Gonik v. Israel Discount Bank of N.Y.*,
914 N.Y.S.2d 63 (App. Div. 1st Dep't 2011)....................................................24

*Grimes v. Suzukawa*,
   262 Va. 330 (Va. 2001) ....................................................................37

*Hall v. Smith & Nephew, Inc.*,
   No. 5:19-cv-13, 2020 WL 3452621 (S.D. Miss. May 29, 2020)..................51, 54

*Hansen v. Stanley Martin Cos.*,
   266 Va. 345 (Va. 2003) ....................................................................33

*Hawks v. DeHart*,
   206 Va. 810 (Va. 1966) ....................................................................37

*Haynes v. Williams*,
   79 N.Y.S.3d 365 (App. Div. 3d Dep't 2018).....................................................19

*Hughley v. Basham*,
   No. Civ.A. 2:03CV85, 2003 WL 24101521 (E.D. Va. Aug. 1,
   2003) ....................................................................................36

*Humphrey v. Citibank NA*,
   No. 2:12-cv-148, 2013 WL 5407195 (N.D. Miss. Sept. 25, 2013) ....................53

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*,
   No. 14-cv-3443, 2015 WL 1516631 (S.D.N.Y. Mar. 26, 2015),
   *aff'd*, 634 Fed. App'x 19 (2d Cir. 2015).......................................................22, 35

*Jackson v. Monsanto Co.*,
   No. 5:18-cv-13, 2018 WL 3995799 (S.D. Miss. Aug. 16, 2018) ....................55

*Jaffe v. Pallotta TeamWorks*,
   374 F.3d 1223 (D.C. Cir. 2004)..............................................................55, 56

*Jean v. Chinitz*,
   163 A.D.3d 497 (App. Div. 1st Dep't 2018) .....................................................28

*Jones v. R.S. Jones & Assocs., Inc.*,
   246 Va. 3 (Va. 1993) ....................................................................29

*Kampuries v. Am. Honda Motor Co.*,
   204 F. Supp. 3d 484 (E.D.N.Y. 2016) .....................................................26

*Kaufman v. Cohen*,
   307 A.D.2d 113 (App. Div. 1st Dep't 2003) .....................................................21

*Kemp v. Metabolife Int'l, Inc.*,
No. 00-3513, 2004 WL 2095618 (E.D. La. Sept. 13, 2004) .............................56

*Kwas v. Intergraph Gov't Solutions*,
No. 15-CV-5897, 2016 WL 4502039 (E.D.N.Y. Aug. 24, 2016) .....................24

*Law v. Aetna Life Ins. Co.*,
No. 5:09-cv-116, 2011 WL 2840870 (S.D. Miss. July 14, 2011) .....................55

*Lincoln Elect. Co. v. McLemore*,
54 So.3d 833 (Miss. 2010) ...............................................................................45

*Mackey v. McDannald*,
298 Va. 645 (Va. 2020) ....................................................................................37

*Metro Mail Servs., Inc. v. Pitney Bowes, Inc.*,
No. 1:16-cv-1416, 2017 WL 1230848 (E.D. Va. Mar. 31, 2017) .....................41

*Newman v. Walker*,
270 Va. 291 (Va. 2005) ....................................................................................37

*Oddo v. Asbestos Corp. Ltd.*,
173 So. 3d 1192 (La. Ct. App. 2015)................................................................56

*Perciballi v. Ethicon, Inc.*,
No. 20-cv-5178, 2021 WL 810339 (E.D.N.Y. Mar. 3, 2021) ...........................28

*Playwell Toy, Inc. v. Bureau Veritas Consumer Prods. Servs., Inc.*,
No. 03-cv-0704C, 2007 WL 2892031 (W.D.N.Y. Sept. 28, 2007)...................16

*Porchie v. Alere Toxicology Servs., Inc.*,
No. 2:20-cv-00022, 2021 WL 232600 (W.D. Va. Jan. 22, 2021) .....................42

*Quillen v. Int'l Playtex, Inc.*,
789 F.2d 1041 (4th Cir. 1986) ..........................................................................29

*Quintana Lopez v. Liggett Grp., Inc.*,
336 F. Supp. 2d 153 (D.P.R. 2004) ..................................................................35

*Robare v. Fortune Brands, Inc.*,
833 N.Y.S.2d 753 (N.Y. App. Div. 3d Dep't 2007)..................................21, 24

*Schmidt v. Household Fin. Corp., II*,
   276 Va. 108 (Va. 2008) ..................................................................................34

*Sharkey v. Barber*,
   188 So.3d 1245 (Miss. Ct. App. 2016) ..........................................................54

*Sirak v. Aiken*,
   No. 3:19-cv-179, 2019 WL 6689912 (E.D. Va. Dec. 6, 2019) .........................42

*Statler v. Dell, Inc.*,
   775 F. Supp. 2d 474 (E.D.N.Y. 2011) ............................................................21

*STB Mktg. Corp. v. Zolfoghari*,
   240 Va. 140 (Va. 1990) ..................................................................................33

*Tanner v. Pfizer, Inc.*,
   No. 1:15-cv-75, 2015 WL 6133207 (S.D. Miss. Oct. 19, 2015) .................45, 46

*In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*,
   97 F.3d 1050 (8th Cir. 1996) ..........................................................................14

*Torkie-Tork v. Wyeth*,
   739 F. Supp. 2d 887 (E.D. Va. 2010) .............................................................31

*Trustmark Nat'l Bank v. Meador*,
   81 So.3d 1112 (Miss. 2012) ...........................................................................48

*Wade v. Danek Med., Inc.*,
   182 F.3d 281 (4th Cir. 1999) ..........................................................................32

*Welsh v. Pfizer, Inc.*,
   No. 2:10-cv-40, 2012 WL 6690925 (S.D. Miss. Dec. 21, 2012) .......................47

*Wender v. Gilberg Agency*,
   716 N.Y.S.2d 40 (App. Div. 1st Dep't 2000) ...................................................27

*West Virginia v. Bristol Myers Squibb Co.*,
   No. 13-1603, 2014 WL 793569 (D.N.J. Feb. 26, 2014) ...................................14

*Wheat v. Pfizer, Inc.*,
   31 F.3d 340 (5th Cir. 1994) ............................................................................57

*Whitaker v. Limeco Corp.*,
    32 So.3d 429 (Miss. 2010)................................................................................49

*Young v. Bristol-Myers Squibb Co.*,
    No. 4:16-cv-00108, 2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ...................52

*Zachariou v. Manios*,
    50 A.D.3d 257 (App. Div. 1st Dep't 2008) .......................................................29

*Zedd v. Jenkins*,
    194 Va. 704 (Va. 1953) .....................................................................................42

*Zirvi v. Flatley*,
    No. 20-546-cv, 838 Fed. App'x 582 (2d Cir. 2020)..........................................22

**Statutes**

General Business Law § 349...................................................................................27

Miss. Code Ann. § 11-1-63.............................................................................50, 51

Miss. Code Ann. § 11-1-63(a)(i)(4).......................................................................51

Miss Code Ann. § 15-1-49.....................................................................................54

Miss. Code Ann. § 15-1-49(1)...............................................................................46

Miss. Code Ann. § 15-1-49(2).........................................................................45, 52

Miss. Code Ann. § 15-1-67.....................................................................................47

Miss. Code Ann. § 75-24-15..................................................................................53

NY UCC § 2-725(1)...............................................................................................24

NY UCC § 2-725(2)...............................................................................................24

Va. Code Ann. § 8.01-230................................................................................31, 33

Va. Code Ann. § 8.01-243(A).................................................................................32

Va. Code Ann. § 8.01-246......................................................................................32

Va. Code Ann. § 8.01-249......................................................................................32

Va. Code Ann. § 8.01-249(1)............................................................................41

Va. Code Ann. § 59.1-204.1(A)........................................................................41

Va. Code § 8.01-229(D).........................................................................36, 38, 39, 40

Va. Code § 8.01-249(4) ..................................................................................33

**Other Authorities**

CPLR 214(2) ................................................................................................28

CPLR § 214(5) ......................................................................................18, 26

CPLR § 214-c(2) .........................................................................................18

CPLR § 214-c(4) .........................................................................................19

Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, the "J&J defendants") submit this brief in support of their Omnibus Motion for Summary Judgment on the statute of limitations in three cases from the Stage Two work up pool identified in the Court's March 3, 2021 Order (Dkt. 17833) and for lack of admissible evidence of product usage in one case from that pool.

## I. INTRODUCTION

Plaintiffs Carol Williams, Linda Hill, and Bobbie Landreth were each diagnosed with ovarian cancer at least seven years ago. In each case, plaintiffs waited far too long to file suit and their claims are time-barred. Specifically:

- Plaintiff Williams's claims are governed by New York law, and accrued in January 2007 when she was diagnosed with ovarian cancer; her claims expired in January 2010 – nearly a decade before she filed suit. Moreover, the identification of numerous pre-2010 scientific articles in plaintiffs' own complaint that plaintiffs claim support their theory of causation, coupled with the extensive publicity and attorney advertising surrounding talc litigation, demonstrate that Ms. Williams reasonably could have commenced suit well before 2019, precluding any reliance on New York's narrow latent injury exception to the statute of limitations.

- Plaintiff Hill's claims are governed by Virginia law, and accrued in May 2013 when she was diagnosed with ovarian cancer; her claims expired in May 2015 – three years before she brought suit. Virginia law is clear that non-fraud-based personal injury claims accrue upon the date of injury, not when the supposed cause of that injury was discovered. And while Virginia recognizes a discovery rule for fraud-based causes of action, such claims are stale because Ms. Hill could have reasonably discovered the purported causal link she is advancing

in this case well before she filed her lawsuit in light of the ubiquitous publicity surrounding talc allegations.

- Plaintiff Landreth's claims are governed by Mississippi law, and accrued in October 2014 when she was diagnosed with ovarian cancer; her claims expired in October 2017 – several months before she initiated her lawsuit.  Mississippi's narrow fraudulent concealment doctrine cannot salvage Ms. Landreth's product-liability claims because her testimony establishes that she was on notice of the alleged causal link between talc use and ovarian cancer in 2014 or "early" 2015 – three years before the filing of her complaint. Plaintiff's fraud-based claims are subsumed by her product-liability claims and are also untimely, in any event.

The claims of Plaintiff Bertha Walton's Estate fail for a different reason:  the Estate lacks  evidence that Ms. Walton actually used any of the J&J defendants' *talc*-based products – much less that she did so in a manner capable of satisfying Louisiana's substantial factor causation standard.  Ms. Walton is deceased, and the two persons identified as having knowledge of her alleged use of talc products – her son and her sister – testified that Ms. Walton never used Shower to Shower and could not say whether the Johnson's Baby Powder that Ms. Walton did use was made of talc or cornstarch.  Moreover, the only evidence that Ms. Walton applied Johnson's Baby Powder to her perineum consists of her sister's testimony recounting exposures nearly 50 years before Ms. Walton's ovarian cancer diagnosis.   Thus, the J&J defendants are entitled to summary judgment on all of the claims asserted by Ms. Walton's Estate.

## II. STATEMENT OF FACTS

### A. Plaintiff Carol Williams

Ms. Williams, a resident of New York for over fifty years, started feeling bloating and pelvic pain in late 2006.  (Declaration of Jessica L. Brennan ("Brennan Decl."), Ex. 1 (Transcript of Deposition of Carol J. Williams dated January 19, 2021) at 102:9-11, 167:9-19; Brennan Decl., Ex. 2 (Ms. Williams' First Amended Short Form Complaint dated October 17, 2019) at 5).  Suspecting an ovarian cyst, she called her doctor who then performed a CAT scan and bloodwork, and ultimately diagnosed her with ovarian cancer.  (Brennan Decl., Ex. 1 at 170:2-171:1).  In January 2007, Ms. Williams ███████████████████ ██████████████████████████████████████████████████████ ████████████████████████████.  (Brennan Decl., Ex. 3 (Operative Report, Catholic Health System, dated January 25, 2007) at CWILLIAMS-PL-03204, 03209-03211).  Following her surgery, Ms. Williams had chemotherapy and has been cancer free since 2008. (Brennan Decl., Ex. 1 at 49:5-17).

Despite her diagnosis in late 2006/early 2007, Ms. Williams did not undertake any research into the potential causes of her ovarian cancer.  (*Id*. at 14:4-18).  Ms. Williams learned about the alleged connection between talc use and ovarian cancer by happenstance—she saw a documentary on a news show around

Thanksgiving 2016 that discussed the potential association.  (*Id*. at 104:7-14).  She then stopped using talcum powder products.  (*Id.*)

*Nearly 12 years after being diagnosed with ovarian cancer*, Ms. Williams and her husband, James Williams, filed their original complaint in the Western District of New York on September 24, 2019 (Brennan Decl., Ex. 4 (Ms. Williams' Complaint dated September 24, 2019)), and it was subsequently transferred to the MDL.  Ms. Williams's operative short form complaint alleges the following counts: Products Liability—Strict Liability—Failure to Warn (Count II); Products Liability—Strict Liability—Defective Manufacture and Design (Count IV); Breach of Express Warranties (Count V); Breach of Implied Warranty of Merchantability (Count VI); Breach of Implied Warranty of Fitness for a Particular Purpose (Count VII); Negligence (Count IX); Negligent Misrepresentation (Count XI); Fraud (Count XII); Violation of State Consumer Protection Laws of the State of New York (Count XIV); Fraudulent Concealment (Count XVI); Civil Conspiracy (Count XVIII); Loss of Consortium (presumably the only count asserted by Mr. Williams) (Count XIX); Punitive Damages (Count XX); and Discovery Rule and Tolling (Count XXI).  (Brennan Decl., Ex. 2 at 6-7).

## B. Plaintiff Linda Hill

Plaintiff Linda Hill, a resident of Virginia for over fifty years, had received no gynecological care for approximately twenty years before ███████████████

4

 in May 2013 ████████████████. (Brennan Decl., Ex. 5 (All Purpose Form, Twin County Regional Healthcare, dated May 1, 2013) at HillL-TCRHMR-00044-00045; Brennan Decl., Ex. 6 (Transcript of Deposition of Ms. Hill dated January 20, 2021) at 58:21-59:1).  A ████████████████ ████████████████████. (Brennan Decl., Ex. 7 (Post Operative Note, Twin County Regional Healthcare, dated May 2, 2013) at HillL-WFBMCMR-00550).  At her request, she was transferred to Wake Forest Medical Center in North Carolina, about an hour away, where, ████████████████ ██████████████████████████████ ████████████ (Brennan Decl., Ex. 8 (Surgical Pathology Report, North Carolina Baptist Hospitals, Inc., dated May 17, 2013) at HillL-TCRHPath-00003; *see also* Brennan Decl., Ex. 9 (Ms. Hill's Plaintiff Profile Form dated January 20, 2021) at 3).

Ms. Hill was diagnosed with ovarian cancer in 2013, but she has never asked any of her doctors what caused her ovarian cancer or undertaken any research into what may have caused her ovarian cancer.  (Brennan Decl., Ex. 6 at 22:5-8, 24:5-9, 123:23-124:10).  Instead, Ms. Hill claims that she first learned of the alleged connection between use of JJCI talcum products and ovarian cancer in 2016, when her son told her about an attorney advertisement he saw while watching television. (*Id*. at 23:9-21, 121:4-18).

*Several years after her son saw the advertisement on television and nearly five years after she was diagnosed with ovarian cancer*, Ms. Hill and her husband Rex Hill filed their complaint directly in the MDL on April 26, 2018.  (Brennan Decl., Ex. 10 (Ms. Hill's Short Form Complaint dated April 26, 2018)).  Ms. Hill would have filed it in the Western District of Virginia absent the MDL and requests transfer back to the Western District of Virginia upon completion of pretrial proceedings.  (Brennan Decl., Ex. 11 (Ms. Hill's Amended Short Form Complaint dated October 19, 2020) at 4).  Ms. Hill's operative short form complaint alleges the following counts: Products Liability—Strict Liability—Failure to Warn (Count II); Products Liability—Strict Liability—Defective Manufacture and Design (Count IV); Breach of Express Warranties (Count V); Breach of Implied Warranty of Merchantability (Count VI); Breach of Implied Warranty of Fitness for a Particular Purpose (Count VII); Negligence (Count IX); Negligent Misrepresentation (Count XI); Fraud (Count XII); Violation of State Consumer Protection Laws of the States of Kansas, Florida, North Carolina, and Virginia (Count XIV); Fraudulent Concealment (Count XVI); Civil Conspiracy (Count XVIII); Loss of Consortium (presumably the only count asserted by Mr. Hill) (Count XIX); Punitive Damages (Count XX); and Discovery Rule and Tolling (Count XXI).  (*Id.* at 6-7).

### C. Plaintiff Bobbie Landreth

Ms. Landreth, a resident of Mississippi who allegedly purchased and used

JJCI talcum powder products in Mississippi, ███████████████████████

███████████████ on September 25, 2014.  (Brennan Decl., Ex. 12 (Progress Note,

Southern Women's Health PLLC, dated September 25, 2014) at BLANDRETH-

PL-00167-00169; Brennan Decl., Ex. 13 (Transcript of Deposition of Ms. Landreth

dated December 21, 2020) at 30:1-8, 69:16-19; Brennan Decl., Ex. 14 (Ms.

Landreth's Amended Short Form Complaint dated October 19, 2020) at 4).  At her

request, Ms. Landreth was referred to a gynecologic oncologist and, ████████████

██████████████████████████████████████████ on October 3, 2014.

(Brennan Decl. Ex. 12 at BLANDRETH-PL-00167-00169; Brennan Decl., Ex. 15

(Ms. Landreth's Plaintiff Profile Form) at 3).

Despite her diagnosis in 2014, Ms. Landreth has never asked her doctors

what, if anything, caused her ovarian cancer.  (Brennan Decl., Ex. 13 at 49:9-19).

Like Ms. Hill, Ms. Landreth claims that she became aware of the alleged

connection between talc usage and ovarian cancer through an advertisement on

television in 2014 or "early '15."  (*Id.* at 29:6-18).  Ms. Landreth testified multiple

times that she last used talc products in 2014 because "[t]hat's when [she] found

out about what it may do to you."  (*Id.* at 27:24-28:16, 31:15-20, 31:25-32:2; *see

also* Brennan Decl., Ex. 15 at 16.)  Ms. Landreth filed her complaint directly in the

MDL on January 21, 2018.  (Brennan Decl., Ex. 16 (Ms. Landreth's Short Form

Complaint dated January 31, 2018)).  Ms. Landreth would have filed it in the

Southern District of Mississippi absent the MDL and requests transfer back to the

Southern District of Mississippi upon completion of pretrial proceedings.

(Brennan Decl., Ex. 14 at 4).  Ms. Landreth's operative short form complaint

alleges the following counts: Products Liability—Strict Liability—Failure to Warn

(Count II); Products Liability—Strict Liability—Defective Manufacture and

Design (Count IV); Breach of Express Warranties (Count V); Breach of Implied

Warranty of Merchantability (Count VI); Breach of Implied Warranty of Fitness

for a Particular Purpose (Count VII); Negligence (Count IX); Negligent

Misrepresentation (Count XI); Fraud (Count XII); Violation of State Consumer

Protection Laws of the State of Mississippi (Count XIV); Fraudulent Concealment

(Count XVI); Civil Conspiracy (Count XVIII); Punitive Damages (Count XX); and

Discovery Rule and Tolling (Count XXI).  (*Id*. at 5-6).

### D. Plaintiff Bertha Walton

Ms. Walton, a lifelong resident of Louisiana, ██████████████████████

███████████████████ in early 2015.  (Brennan Decl., Ex. 17 (medical

records, Willis-Knighton Health System, dated January 16, 2015) at

BWALTONPL-NSFM-00003-00006).  ████████████████████████

████████████████████████████████████████████████

████████████████████████ in May 2015.  (*Id.* at

BWALTONPL-NSFM-00056-00057; Brennan Decl., Ex. 18 (medical records,

Gynecologic Oncology Associates, dated May 22, 2015) at BWALTONPL-HOA-

00002-00004, 00011-00013).  Ms. Walton commenced a lawsuit in the District

Court for the District of Columbia on April 26, 2018 (Brennan Decl., Ex. 19 (Ms.

Walton's Complaint dated April 26, 2018)), in an attempt to avoid the one year

statute of limitations in Louisiana, and the case was then transferred to the MDL.

Ms. Walton passed away on August 28, 2019.  (Brennan Decl., Ex. 20 (Death

Certificate of Ms. Walton dated August 28, 2019)).  She was not deposed before

she died.

Ms. Walton's short form complaint – which was filed before she passed

away – alleged that the decedent had used JJCI talcum powder products from

January 1980 until January 1990.  (Brennan Decl., Ex. 21 (Ms. Walton's Short

Form Complaint dated August 31, 2018) at 5).  The Plaintiff Profile Form that was

verified by her son after her death states that Ms. Walton used Johnson & Johnson

Baby Powder from 1971 until 1981 and Johnson & Johnson Shower to Shower

from 1973 until 1978.  (Brennan Decl., Ex. 22 (Plaintiff Profile Form of Michael

Scroggins on behalf of Ms. Walton, undated) at 16).  However, there is no

evidence that Ms. Walton actually used *talc*-based Johnson's Baby Powder, the

record established that Ms. Walton did ***not*** use Shower to Shower and there is no

evidence that Ms. Walton used any JJCI talc products in her perineal region as an adult.

First, Ms. Walton's sister Eloise Hawkins, produced by the plaintiffs as the person most knowledgeable about the facts, testified that she was not sure whether the Johnson's Baby Powder Ms. Walton used was cornstarch-based, as opposed to talc-based. (Brennan Decl., Ex. 23 (Transcript of Deposition of Eloise Hawkins dated March 10, 2021)at 108:23-109:5). Ms. Hawkins also testified that Ms. Walton never used Shower to Shower. (*Id*. at 109:10-12). Ms. Walton's son also testified that Ms. Walton never used Shower to Shower. (Brennan Decl., Ex. 24 (Transcript of Deposition of Michael Scroggins dated June 4, 2021) at 27:6-8, 30:14-17, 31:8-11, 32:16-19, 36:24-37:9, 71:18-25).

Second, there is no admissible testimony as to **how** the late Ms. Walton allegedly used Johnson's Baby Powder as an adult – i.e., whether she applied it to her perineal area. Specifically, her son testified that he "did not physically see" his mother apply powder to herself and that she never did so when he was "present in the room." (Brennan Decl., Ex. 24 at 31:8-11, 32:16-19 (confirming that over his lifetime, he never watched his mother "physically put powder on her own body.")). Ms. Walton's son further testified that his mother never "told [him] anything specific about how she applied it to her own body," and that he can only assume how his mother used the product. (*Id*. at 40:5-8, 71:18-25).

10

Ms. Walton's sister testified that she only observed Ms. Walton using Johnson & Johnson Baby Powder from the time Ms. Hawkins was 8 or 9 (1959 or 1960) until she was 12 or 13 (1964 or 1965), some fifty years before the cancer diagnosis.  (Brennan Decl., Ex. 23 at 29:4-5, 76:9-77:9, 111:11-17, 209:1-210:5).

### E.  History of Talc Litigation and Pervasive Attorney Advertising

The filing dates for these claims must be viewed through the lens of the litigation history.  Plaintiffs alleging that JJCI talc products caused their ovarian cancer began filing lawsuits against the J&J defendants as early as December 2009.  (Declaration of Kathleen Frazier ("Frazier Decl.") at ¶ 2).  And as shown in the chart below, the number of talc cases filed each year increased exponentially beginning in 2014:

| Year | Cases Served | Plaintiffs Served | Cases Filed | Plaintiffs Filed |
|------|-------------|-------------------|-------------|------------------|
| 2014 | 46 | 426 | 70 | 450 |
| 2015 | 131 | 907 | 136 | 913 |
| 2016 | 324 | 2081 | 425 | 2401 |
| 2017 | 4824 | 6300 | 5848 | 7360 |

(*Id*. at ¶ 3).

The first jury verdict against the J&J defendants – *Berg* – occurred in October 2013.  (Frazier Decl. at ¶ 4).  Within four months, the first complaint in New Jersey was filed on January 31, 2014.  (*Id*. at ¶ 5).  Plaintiffs' co-lead counsel in the MDL, the Beasley Allen firm, filed their first complaint several months after

that on April 28, 2014.  (*Id.*).  The New Jersey Supreme Court created the Multi-County Litigation before then Judge Carol E. Higbee on October 20, 2015. (Brennan Decl. at ¶ 27).

In 2016, there were a trio of jury trials in St. Louis – *Fox*, *Ristesund*, and *Giannecchini* – all resulting in multi-million dollar jury verdicts (and all later reversed on appeal).  (Frazier Decl. at ¶ 6).  These verdicts garnered heightened media attention and more trials followed.  (*Id.*; *see also* Frazier Decl., Ex. A (*Drugwatch*, "Jury Orders J&J to Pay $72M in Ovarian Cancer Talcum Powder Case," dated February 24, 2016), Ex. B (*Reuters*, "Big Verdict Doesn't Assure More Wins for Plaintiffs in Talc-Cancer Cases," dated February 26, 2016), Ex. C (*New York Post*, " Turned Down $1M from Johnson & Johnson, and Blew the Whistle Instead," dated March 2, 2016), Ex. D (*St. Louis Business Journal*, "Jim Onder's $72 Million Baby Powder Win," dated March 11-17, 2016), Ex. E (U.S. Chamber Institute for Legal Reform, *Gaming the System: How Lawsuit Advertising Drives the Litigation Lifecycle*, dated April 2020) at 12-13).  Just a few examples of the heightened media attention are:

- February 24, 2016 article on drugwatch website entitled "Jury Orders J&J to Pay $72M in Ovarian Cancer Talcum Powder Case (Frazier Decl., Ex. A);

- February 26, 2016 Reuters article noting in the lede the $72 million verdict against J&J (Frazier Decl., Ex. B); and

- March 2, 2016 NY Post article regarding the *Berg* verdict noting in the lede the $72 million against J&J (Frazier Decl., Ex. C).

Simultaneously, plaintiffs' attorneys spent significant sums of money touting their theories and these verdicts, perpetuating the purported claim that talc causes ovarian cancer and advertising potential lawsuits across the country.  In early 2016, it is estimated plaintiffs' attorneys were spending between $1 million and $4.5 million per month.  (Frazier Decl. at ¶ 7; *see also* Frazier Decl., Ex. E at 33-34).  Attorney advertising occurred online, on radio, and on television.  (*Id*.; *see also* Frazier Decl., Ex. F (*Legal Monitor Worldwide*, "Attorneys Handling Baby Powder Lawsuits Help Families of Women Suffering from Ovarian Cancer," dated October 23, 2014), Ex. G (*PRWeb*, "Attorneys Provide New Case Summaries for Talcum Powder Cancer Lawsuits," (dated December 16, 2014)). By April 2020, plaintiffs' attorneys had spent an estimated $63 million to air more than 175,000 TV ads touting their allegations and soliciting plaintiffs. (Frazier Decl., at ¶ 8; *see also* Frazier Decl., Ex. E at 25-37).

These ads, which included "lengthy infomercials," "assert that the presence of asbestos is to blame" for ovarian cancer and mesothelioma, and "tell viewers that defendants knew of the presence of asbestos in their products." (Frazier Decl., Ex. E at 31–33; *see also* Frazier Decl., Exs. F-G)  Some of the ads have been in a format mimicking television news reports with actors playing fake  medical

13

doctors and lawyers.  (*See* Frazier Decl., Ex. H (advertisement, "Dalimonte Rueb, LLP TV Commercial, 'Talcum Powder Legal Helpline: Ovarian Cancer & Mesothelioma'")).[1]  Attorney ads began running as early as 2014, and "skyrocket[ed]" in early 2016; from May through August 2016, "plaintiffs lawyers and lead generators spen[t] a remarkable $15.8 million on over 33,000 ads." (Frazier Decl., at ¶ 8; *id.*, Ex. E at 33–34).

Between the increased media attention and the pervasive attorney advertising, the allegations regarding talc and ovarian cancer were well-known and widely publicized.

## III.   LEGAL STANDARD

### A. Choice of Law in MDL

"[U]nder the MDL rules, in transferred diversity-of-citizenship cases, the transferee federal district court is required to apply the substantive state law of the transferor court, including its choice-of-law rules."  *West Virginia v. Bristol Myers Squibb Co.*, No. 13-1603, 2014 WL 793569, at *2 (D.N.J. Feb. 26, 2014) (internal citation omitted); *see also In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citing *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594, 610 (7th Cir. 1981)).  Similarly, the Direct Filing

---

[1] *Available at* https://www.ispot.tv/ad/ZNKY/dalimonte-rueb-llp-talcum-powder-legal-helpline-ovarian-cancer-and-mesothelioma.

Order (Case Management Order No. 2) in this case states, "[a]ll parties stipulate and agree that in any case filed pursuant to this Order, choice of law determinations shall be made in accordance with the laws of the jurisdiction that would apply to the action had the matter been initially filed in the Original District",  which is "the district to which the Plaintiff seeks transfer upon completion of pretrial proceedings."  (Dkt. 102 at 3.)

Thus, the choice of law questions related to the claims of plaintiff Linda Hill are governed by the law of Virginia; the choice of law questions related to the claims of plaintiff Bobbie Landreth are governed by the law of Mississippi; the choice of law questions related to the claims of plaintiff Carol Williams are governed by the law of New York; and the choice of law questions related to the claims of plaintiff Bertha Walton for the purposes of this motion are governed by the law of the District of Columbia.

## B. Summary Judgment Standard

A party is entitled to summary judgment by showing "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 159-60 (3d Cir. 2021).  A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  Thus, a

15

party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation and citation omitted).

## IV.   ARGUMENT

### A. The J&J Defendants Are Entitled to Summary Judgment as to Plaintiff Carol Williams's Claims.

#### 1.  Plaintiff Williams's Claims Are Governed by New York Law.

New York law applies because Ms. Williams resided in New York and was diagnosed in New York.  New York employs an "interest analysis" to determine choice of law, meaning "'the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.'"  *Playwell Toy, Inc. v. Bureau Veritas Consumer Prods. Servs., Inc.*, No. 03-cv-0704C, 2007 WL 2892031, at *2 (W.D.N.Y. Sept. 28, 2007) (quoting *Miller v. Miller*, 237 N.E.2d 877, 879 (N.Y. 1968)).  "When the purpose of the statute is to regulate conduct, 'the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'"  *Devore v. Pfizer*, 58 A.D.3d 138, 141 (App. Div. 1st Dep't 2008) (quoting *Cooney v. Osgood Mach.*, 612 N.E. 2d 277 (N.Y. 1993)).  "The locus of a tort is generally defined as the place of the injury," *id.* (citing *Schultz v. Boy Scouts of Am.*, 480 N.E.2d 679 (N.Y. 1985)), and New

16

York gives great weight to the law of the plaintiff's domicile in products liability actions, *Blundon v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 11-cv-990S, 2015 WL 5943480, at *4 (W.D.N.Y. Oct. 13, 2015).  Because Ms. Williams has lived in New York for more than 50 years and was diagnosed with her alleged injury in New York, that state's law applies to her claims.[2]  And, as summarized here and outlined in more detail below, all of Ms. Williams's claims are time-barred under New York law.

| Plaintiff's Claim | Date Accrued | Deadline for Filing | Date Filed |
|---|---|---|---|
| Products Liability—Strict Liability—Failure to Warn (Count II) | January 2007 | January 2010 | September 24, 2019 |
| Products Liability—Strict Liability—Defective Manufacture and Design (Count IV) | January 2007 | January 2010 | September 24, 2019 |
| Breach of Express Warranties (Count V) | 2006 | 2010 | September 24, 2019 |
| Breach of Implied Warranty of Merchantability (Count VI) | 2006 | 2010 | September 24, 2019 |
| Breach of Implied Warranty of Fitness for a Particular Purpose (Count VII) | 2006 | 2010 | September 24, 2019 |
| Negligence (Count IX) | January 2007 | January 2010 | September 24, 2019 |
| Negligent Misrepresentation (Count XI) | January 2007 | January 2010 | September 24, 2019 |
| Fraud (Count XII) | January 2007 | January 2010 | September 24, 2019 |
| Violation of State Consumer Protection Laws of the State of New York (Count XIV) | January 2007 | January 2010 | September 24, 2019 |

---

[2] To the extent Ms. Williams's demand for punitive damages survives this motion, it is the position of the J&J defendants the New Jersey law governs the claim for punitive damages.

| Plaintiff's Claim | Date Accrued | Deadline for Filing | Date Filed |
|---|---|---|---|
| Fraudulent Concealment (Count XVI) | January 2007 | January 2010 | September 24, 2019 |
| Civil Conspiracy (Count XVIII) | N/A – Not recognized as an independent cause of action | | |
| Loss of Consortium (Count XIX) | N/A – Not recognized as an independent cause of action | | |
| Punitive Damages (Count XX) | N/A – Not recognized as an independent cause of action | | |
| Discovery Rule and Tolling (Count XXI) | N/A – Not recognized as an independent cause of action | | |

### 2. Ms. Williams's Personal Injury Claims Are Barred by the Three-Year Statute of Limitations.

#### a. Ms. Williams's Personal Injury Claims Accrued More Than Three Years Before She Filed Her Complaint.

Ms. Williams was diagnosed with ovarian cancer in January 2007. New York law requires that she file her lawsuit by January 2010. She filed on September 24, 2019. Ms. Williams's delay in filing her complaint until twelve years after she was first diagnosed with ovarian cancer bars her personal injury (products liability and negligence) claims. In New York, the statute of limitations in personal injury actions is three years. CPLR § 214(5). Where the plaintiff alleges "personal injury . . . caused by the latent effect of exposure to any substance," the statute of limitations accrues on "the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." CPLR § 214-c(2). "As the Court of Appeals has held, 'when the legislature used

18

the phrase 'discovery of the injury' it meant discovery of the physical condition and not . . . the more complex concept of discovery of both the condition and the nonorganic etiology of that condition.'" *Haynes v. Williams*, 79 N.Y.S.3d 365, 367 (App. Div. 3d Dep't 2018) (quoting *Matter of N.Y. Cnty. DES Litig.*, 89 N.Y.2d 506 (N.Y. 1997)).  Thus, Ms. Williams's claims accrued when she was diagnosed with cancer in January 2007 – which is when she discovered her injury.

While New York recognizes a limited latent injury exception to the statute of limitations, such an exception only applies to cases "where the discovery of the cause of the injury is alleged to have occurred less than five years after the discovery of the injury or when with reasonable diligence such injury should have been discovered" *and* where the plaintiff can prove "that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized."  CPLR § 214-c(4).  In such cases, the statute of limitations is one year following the discovery of the cause of the injury.  *Id.*

Plaintiff cannot establish any of these requirements.  For starters, the limited latent injury exception requires that the plaintiff reasonably discover her cause of injury within five years from discovery of the injury.  CPLR § 214-c(4).  As a result, the latest Ms. Williams could have discovered the cause of her injury was

2012, and in that case, the statute of limitations would have expired in 2013—still six years before she brought suit.

Moreover, any reliance on this narrow exception independently fails because plaintiff's own Complaint forecloses any argument that "technical, scientific or medical knowledge and information sufficient to ascertain the cause of [her] injury" was not available before 2010 (i.e., three years after the date of her cancer diagnosis). After all, Plaintiffs' Second Amended Long Form Complaint lists 17 articles and studies from before 2010 that Plaintiffs allege show a causal connection between ovarian cancer and talc use, and by 2010, the litigation had already commenced. (Brennan Decl., Ex. 25 (Plaintiffs' Proposed Second Amended Master Long Form Complaint dated December 22, 2020) at ¶ 50(a)-(q); Frazier Decl., at ¶ 2). Thus, Ms. Williams's personal injury claims accrued more than three years before she filed her complaint.

### b. Equitable Estoppel Does Not Toll The Statute of Limitations.

The doctrine of equitable estoppel does not apply because Ms. Williams relies upon the same facts to show equitable estoppel as she does for her claims, and she cannot show either a statement by the J&J defendants that she relied upon in delaying filing the complaint or that she acted with due diligence in discovering her claim. "The doctrine of equitable estoppel will prohibit the defendant from raising a statute of limitations defense where the plaintiff was induced by the

defendant's fraud, misrepresentations or deception to refrain from filing a timely action and the plaintiff . . . reasonably relied on the defendant's misrepresentations." *Robare v. Fortune Brands, Inc.*, 833 N.Y.S.2d 753, 755 (N.Y. App. Div. 3d Dep't 2007) (internal quotations and citations omitted).  The plaintiff must establish "that subsequent and specific actions by the defendant somehow kept him or her from timely bringing suit." *Id.* (internal quotation and citation omitted).  "Notably, equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of the plaintiff's underlying substantive causes of action." *Id.* (internal quotation and citation omitted). "[T]olling can apply only when a plaintiff has acted with reasonable diligence and can show extraordinary circumstances that justify the requested toll." *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011).

Equitable estoppel does not apply here for multiple reasons.  First, the alleged fraudulent concealment—the J&J defendants' alleged concealment of asbestos in the talc products—is the same act which forms the basis of Ms. Williams's substantive personal injury claims and thus equitable estoppel is inapplicable. *See Kaufman v. Cohen*, 307 A.D.2d 113, 122 (App. Div. 1st Dep't 2003) (rejecting application of equitable estoppel because "it is the very same wrongful act—Cohen's misrepresentation and intentional concealment concerning

the opportunity to reacquire an interest in the Falchi Building--which forms the basis of both the estoppel argument and the underlying claims for fraud and breach of fiduciary duty").

Second, Ms. Williams cannot show that she acted with the requisite due diligence to avail herself of equitable estoppel. New York courts have held in the equitable estoppel context that prior publicized lawsuits asserting claims similar to those filed by a plaintiff are evidence that plaintiffs failed to exercise reasonable diligence. *See Zirvi v. Flatley*, No. 20-546-cv, 838 Fed. App'x 582, at 586 (2d Cir. 2020) ("[W]e agree with the district court that "the matters in this case are substantially similar to the ones that Barany and Cornell litigated before the USPTO and in the District of Delaware, matters about which plaintiffs were either actually aware because they were named in the litigation or constructively aware because the proceedings were public."); *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, No. 14-cv-3443, 2015 WL 1516631, at *4-5 (S.D.N.Y. Mar. 26, 2015) (plaintiff could have reasonably discovered the bases for its claims when a similar lawsuit had been filed years before containing the same "key factual allegations underlying [plaintiff's] claims," including "numerous citations to facts that were publicly available at the time"; rejecting plaintiff's "insistence that it did not credit the 'truth' of King County's allegations when they were first filed"), *aff'd*, 634 Fed. App'x 19 (2d Cir. 2015).

22

Ms. Hill failed to exercise such reasonable diligence here in light of the mounting and highly publicized talc litigation that preceded the filing of her lawsuit. Plaintiffs began filing lawsuits against the J&J defendants alleging that their baby powder use caused ovarian cancer in December 2009. (Frazier Decl. at ¶ 2). The first jury verdict against the J&J defendants occurred in October 2013. (*Id.* at ¶ 4). This jury verdict spurred more filings, and the cases grew exponentially. (*Id*). In 2014, there were 70 cases filed on behalf of 450 plaintiffs. (*Id.* at ¶ 8). In 2015, 136 cases were filed on behalf of 913 plaintiffs. (*Id.*). In 2016, 425 cases were filed on behalf of 2,401 plaintiffs. (*Id.*) By early 2016, there had been multiple jury verdicts against the J&J defendants, and they all garnered heighted media attention. (*See id.* at ¶ 6; *see also, e.g.*, Frazier Decl., Exs. A-D). Further, plaintiff lawyers began advertising at least as early as 2014, spending up to $4.5 million **per month** during 2016. (Frazier Decl., Ex. E at 33; *see also id.*, Ex. F). Thus, equitable estoppel is unavailable here because had Ms. Williams exercised due diligence, she would have discovered the alleged fraud more than three years before filing her complaint.

Finally, there is no evidence that Ms. Williams relied upon any statement by the J&J defendants that caused her to delay filing her lawsuit. Ms. Williams did not do any research into the cause of her ovarian cancer or have any direct contact with the J&J defendants before filing her lawsuit. (Brennan Decl., Ex 1 at 14:4-18,

150:24-151:9).  Lack of direct contact between the plaintiff and the defendant, such as in this case, defeats any claim of tolling based on equitable estoppel.  *See Kwas v. Intergraph Gov't Solutions*, No. 15-CV-5897, 2016 WL 4502039, at *3 (E.D.N.Y. Aug. 24, 2016) (noting the plaintiff did not allege any direct contact with the defendant); *Gonik v. Israel Discount Bank of N.Y.*, 914 N.Y.S.2d 63, 64 (App. Div. 1st Dep't 2011) (noting plaintiff "had no contact with defendant at any time during her life—either before or after the alleged wrongful acts were committed—and thus has failed to sufficiently allege that defendant made an actual misrepresentation separate from or subsequent to the alleged tortious acts which form the basis of her complaint"); *Robar*, 833 N.Y.S.2d at 756 (not enough to show mere denials of wrongdoings).  Accordingly, equitable estoppel does not toll the statute of limitations for her personal injury claims, and the J&J defendants are entitled to summary judgment.

### 3.  The J&J Defendants Are Entitled to Summary Judgment on Ms. Williams's Breach of Warranty Claims.

Ms. Williams's breach of warranty claims are also barred by the statute of limitations to the extent they rely on ovarian cancer as her alleged injury because she purchased the talc products that allegedly caused her injury more than four years before filing her lawsuit.  In New York, the statute of limitations for breach of warranty claims is four years.  NY UCC § 2-725(1).  It begins to accrue "when tender of delivery is made."  NY UCC § 2-725(2).  In products liability cases, "the

statute begins to run when 'the product is placed in the stream of commerce or at the time of sale by the manufacturer.'" *Baker v. Stryker Corp.*, 770 Fed. App'x 12, 15 (2nd Cir. 2019) (quoting *Schrader v. Sunnyside Corp.*, 747 N.Y.S.2d 26, 28 (App. Div. 2nd Dep't 2002)).  Accordingly, under New York law, equitable estoppel principles do not apply to breach-of-warranty claims.  *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 558 (S.D.N.Y. 2016) ("Because the commencement of the limitations period does not depend on a plaintiff's knowledge of a defect, there is no basis to apply equitable tolling to Catalano's implied warranty claims. . . . In other words, no discovery rule applies to such claims.").

The only purchases underlying plaintiff's warranty claims that could even be alleged to have caused Ms. Williams's ovarian cancer are clearly time-barred under this straightforward framework.  After all, Ms. Williams was diagnosed with ovarian cancer at the latest in January 2007 (Brennan Decl., Ex. 1 at 49:5-17, 170:2-171:1), meaning that any purchase of JJCI talc products underlying her warranty claims necessarily accrued well before that date.  Thus, under the four-year statute of limitations, Ms. Williams's warranty claims had to be brought no later than 2011.  And because Ms. Williams did not file her lawsuit until — eight years later, her breach-of-warranty claims are time-barred and the J&J defendants are entitled to summary judgment on those claims as well.

### 4. The J&J Defendants Are Entitled to Summary Judgment on Ms. Williams's Negligent Misrepresentation, Fraud, and Fraudulent Concealment Claims.

Ms. Williams's negligent misrepresentation, fraud, and fraudulent concealment claims are also untimely. Where negligent misrepresentation, fraud, and fraudulent concealment claims are "merely incidental" to products liability claims, they share the three-year statute of limitations from CPLR § 214(5). *Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 429 (S.D.N.Y. 2011). Ms. Williams's negligent representation, fraud, and fraudulent concealment claims all center on the J&J defendants' alleged failure to disclose the side effects of talc usage – which are the bases for plaintiff's product-liability claims. (Brennan Decl., Ex. 25 at ¶¶ 381-97, 426-35). Therefore, those claims are subject to the same statute of limitations as her product-liability claims. *See Fisher*, 783 F. Supp. 2d at 429. As discussed above, Ms. Williams's delay bars her product-liability claims, and thus, also bars her negligent representation, fraud, and fraudulent concealment claims.

Even if the fraud statute of limitations applies, Ms. Williams's claims are still time-barred. The statute of limitations for any fraud action, including fraudulent concealment and negligent misrepresentation claims based on the same factual situation as fraud claims, is the greater of "six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud or could with reasonable diligence of discovered it." *Kampuries v. Am. Honda*

26

*Motor Co.*, 204 F. Supp. 3d 484, 489 (E.D.N.Y. 2016) (quoting CPLR § 213(8)).

"[A] fraud action accrues on the date of the fraudulent act." *Cuccolo v. Lipsky, Goodkin & Co.*, 826 F. Supp. 763, 770 (S.D.N.Y. 1993).  Because Ms. Williams was diagnosed with ovarian cancer at the latest in early 2007, any alleged fraud or misrepresentation that resulted in her ovarian cancer must have occurred well before 2007.  Further, Ms. Williams's own testimony shows that she became aware of the alleged fraud or misrepresentation—that the J&J defendants failed to disclose that talc use can cause ovarian cancer—via a news report in 2016. (Brennan Decl., Ex. 1 at 103:24-104:14).  Thus, her claims accrued (at the latest) in 2018—one year before she filed her complaint—and, as discussed above, the statute is not tolled by equitable estoppel.  Accordingly, Ms. Williams's negligent misrepresentation, fraud, and fraudulent concealment claims are time-barred.

### 5. The J&J Defendants Are Entitled to Summary Judgment on Ms. Williams's Consumer Protection Claim.

Ms. Williams's claim under the New York Deceptive Trade Practices Act is also stale.  The statute of limitations for New York Deceptive Trade Practices Act claims is three years.  *Corsello v. Verizon N.Y. Inc.*, 18 N.Y.3d 777, 789 (N.Y. 2012).  The three-year period begins to run from the date of injury and there is no "discovery rule" to toll the statute of limitations.  *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001); *Wender v. Gilberg Agency*, 716 N.Y.S.2d 40, 41–42 (App. Div. 1st Dep't 2000) ("Plaintiff's claims under General

27

Business Law § 349, however, are time-barred as the three-year limitations period set forth in CPLR 214(2) applies to causes of action predicated thereon and the date of discovery rule is not applicable and cannot serve to extend that limitations period." (citations omitted)).

Ms. Williams's consumer protection claim accrued at the latest in 2010—three years after Ms. Williams was diagnosed with her ovarian cancer and nine years before she filed her complaint. As demonstrated above, equitable estoppel does not toll the statute of limitations. Therefore, the J&J defendants are entitled to summary judgment on Ms. Williams's consumer protection claim.

### 6. The J&J Defendants Are Entitled to Summary Judgment on the Civil Conspiracy, Loss of Consortium, Punitive Damages, and Discovery Rule and Tolling Because New York Does Not Recognize Them as Independent Claims.

Finally, the J&J defendants are also entitled to summary judgment on the remaining claims because they are not recognized by New York. New York does not recognize civil conspiracy, loss of consortium, punitive damages, or discovery rule and tolling as independent causes of action. *See Perciballi v. Ethicon, Inc.*, No. 20-cv-5178, 2021 WL 810339, at *3 n.4 (E.D.N.Y. Mar. 3, 2021) ("The plaintiffs' claim[] for . . . 'discovery rule and tolling' (Count XVIII) [is] not independent [an] cause[] of action."); *Jean v. Chinitz*, 163 A.D.3d 497, 498 (App. Div. 1st Dep't 2018) ("A separate cause of action for punitive damages is not legally cognizable."); *Black v. Covidien, PLC*, No. 17-cv-6085, 2018 WL 573569,

at *3 (W.D.N.Y. Jan. 26, 2018) ("[L]oss of consortium [] is a derivative claim . . . ."); *Zachariou v. Manios*, 50 A.D.3d 257, 257 (App. Div. 1st Dep't 2008) ("There is no independent cause of action for civil conspiracy.").  Given that the other claims are time-barred, the J&J defendants are entitled to summary judgment as to the civil conspiracy, loss of consortium, punitive damages, and discovery rule and tolling claims.

## B. The J&J Defendants Are Entitled to Summary Judgment as to All of Plaintiff Linda Hill's Claims.

### 1. Plaintiff Hill's Claims Are Governed By Virginia Law.

Virginia law applies to Ms. Hill's claims because she has been a Virginia resident for over fifty years, including when she was diagnosed with ovarian cancer, and she would have filed her complaint in the Western District of Virginia absent the MDL.  In tort actions, Virginia applies the *lex loci delicti* rule as to the substantive law of the case, "meaning the law of the place of the wrong governs all matters related to the basis of the right of action."  *Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 395 (Va. 2006) (citations omitted).  The place of the wrong is "the place where the last event necessary to make an act liable for an alleged tort took place."  *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (internal quotation and citation omitted).  For procedural questions, Virginia applies the principles of *lex fori*, meaning that the law of the state where the action is brought governs.  *Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3, 5 (Va. 1993).

Because Ms. Hill has resided in Virginia since she was seventeen, it was likely the place where her injury—ovarian cancer—developed. (Brennan Decl., Ex. 6 at 58:21-59:1). Further, Ms. Hill would have filed her complaint in the Western District of Virginia absent the MDL. (Brennan Decl., Ex. 11 at 4). Thus, both Virginia substantive and procedural law apply to Ms. Hill's claims. And, as summarized here and outlined in more detail below, all of Ms. Hill's claims are time-barred under Virginia law.

| Plaintiff's Claim | Date Accrued | Deadline for Filing | Date Filed |
|---|---|---|---|
| Products Liability—Strict Liability—Failure to Warn (Count II) | May 2013 | May 2015 | April 26, 2018 |
| Products Liability—Strict Liability—Defective Manufacture and Design (Count IV) | May 2013 | May 2015 | April 26, 2018 |
| Breach of Express Warranties (Count V) | May 2013 | May 2015 | April 26, 2018 |
| Breach of Implied Warranty of Merchantability (Count VI) | May 2013 | May 2015 | April 26, 2018 |
| Breach of Implied Warranty of Fitness for a Particular Purpose (Count VII) | May 2013 | May 2015 | April 26, 2018 |
| Negligence (Count IX) | May 2013 | May 2015 | April 26, 2018 |
| Negligent Misrepresentation (Count XI) | Before April 2016 | Before April 2018 | April 26, 2018 |
| Fraud (Count XII) | Before April 2016 | Before April 2018 | April 26, 2018 |
| Violation of State Consumer Protection Laws of the States of Kansas, Florida, North Carolina, and Virginia (Count XIV) | Virginia – same as Fraud Kansas, Florida, North Carolina – not recognized by Virginia | | |
| Fraudulent Concealment (Count XVI) | Before April 2016 | Before April 2018 | April 26, 2018 |

30

| Plaintiff's Claim | Date Accrued | Deadline for Filing | Date Filed |
|---|---|---|---|
| Civil Conspiracy (Count XVIII) | Before April 2016 | Before April 2018 | April 26, 2018 |
| Loss of Consortium (Count XIX) | N/A – Not recognized as an independent cause of action | | |
| Punitive Damages (Count XX) | N/A – Not recognized as an independent cause of action | | |
| Discovery Rule and Tolling (Count XXI) | N/A – Not recognized as an independent cause of action | | |

### 2. Ms. Hill's Personal Injury Claims Are Barred By The Two-Year Statute of Limitations.

Ms. Hill was diagnosed with ovarian cancer in May 2013.  Virginia law requires that she file her lawsuit by May 2015.  She filed on April 26, 2018.  Ms. Hill's delay in filing her complaint nearly five years after her diagnosis bars her personal injury claims.  In Virginia, non-fraud personal injury causes of action begin to accrue "from the date the injury is sustained . . . and not when the resulting damage is discovered."  Va. Code Ann. § 8.01-230.  "[I]n a personal injury action alleging claims other than fraud, it does not matter when a plaintiff discovered—or reasonably could have discovered—that she was injured, or when she could have discovered that her injury was caused by the defendant's product.  Rather, the only question is when the injury occurred."  *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 887, 891 (E.D. Va. 2010).  Conversely, "actions for fraud or mistake" accrue "when such fraud, mistake, misrepresentation, deception, or undue

31

influence is discovered or by the exercise of due diligence reasonably should have been discovered."  Va. Code Ann. § 8.01-249.

"Every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues."  Va. Code Ann. § 8.01-243(A).  The two-year statute of limitations covers Ms. Hill's products liability/strict liability (counts II and IV), breach of warranty (counts V, VI, and VII), negligence (count IX), negligent misrepresentation (count XI), fraud (XII), fraudulent concealment (XVI), and civil conspiracy (count XVIII) claims.  *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 284 (4th Cir. 1999) (confirming two-year statute of limitations applies to negligence, strict liability, and conspiracy claims); *Flick v. Wyeth LLC*, No. 3:12-cv-00012, 2012 WL 4458181, at *2 (W.D. Va. June 6, 2012) (confirming two-year statute of limitations applies to negligence, product liability, breach of warranty, and fraud claims); *Barrigan v. Elite Funding*, No. 07-0951, 2009 WL 54514, at *2 (E.D. Va. Jan. 6, 2009) (confirming two-year statute of limitations applies to fraud and negligent misrepresentation claims), *aff'd*, 353 Fed. App'x 813 (4th Cir. 2009); *see also* Va. Code Ann. § 8.01-246 (stating that any action under the Uniform Commercial Code for injury to a person is subject to the limitation in § 8.01-243).

### a. The Non-Fraud Claims Are Barred By The Statute of Limitations.

Ms. Hill's non-fraud personal injury claims accrued when she was diagnosed with ovarian cancer in May 2013 and therefore had to be asserted by May 2015. However, because she did not file suit until five years later, her claims are time-barred. *See* Va. Code Ann. § 8.01-230; *see also* Va. Code § 8.01-249(4) (claims for personal injury "resulting from exposure to asbestos or products containing asbestos" accrue upon diagnosis by a physician where such diagnosis is "asbestosis, interstitial fibrosis, mesothelioma, or other disabling asbestos-related injury or disease").

### b. The Fraud Claims Are Barred By The Statute of Limitations.

Ms. Hill's fraud claims are also barred by the statute of limitations because she did not file her complaint within two years of when "the fraud or negligent misrepresentation '[wa]s discovered or by the exercise of due diligence reasonably should have been discovered.'" *Hansen v. Stanley Martin Cos.,* 266 Va. 345, 354 (Va. 2003) (quoting Va. Code Ann. § 8.01-249(1)). The Supreme Court of Virginia has held that due diligence requires "such a measure of prudence, activity, or assiduity, as is properly to be expected from, and, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending upon the relative facts of the case." *STB Mktg. Corp. v. Zolfoghari*, 240 Va. 140, 144 (Va. 1990) (internal quotation and citation omitted). In addition, the plaintiff bears the burden "to prove that, despite

33

the exercise of due diligence, he could not have discovered the alleged fraud [except] within the two-year period before he commenced the action." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 117 (Va. 2008).

Ms. Hill cannot meet her burden.  As an initial matter, the record shows that Ms. Hill actually discovered the alleged association between talc usage and ovarian cancer more than two years before she filed her complaint in April 2018 because she was first alerted of a potential association through an attorney advertisement sometime in 2016.  (Brennan Decl., Ex. 6 at 23:9-21, 121:4-18).  If she actually learned about the potential association before April 2016, then her claims began to accrue more than two years before she filed her lawsuit.

In any event, Ms. Hill's fraud claims would still be untimely even if she did not view the advertisement until after April 2016 because she could have, through due diligence, discovered the alleged claims before April 2016.  Ms. Hill never asked her doctors about the cause of her ovarian cancer and never did any research regarding the cause of her ovarian cancer.  (*Id*. at 22:5-8, 24:5-9, 123:23-124:10). And the reality is that even the slightest amount of due diligence would have revealed the alleged link that lawyers were making between ovarian cancer and talc use before April 2016.  After all, as previously discussed in Part IV.A, Plaintiffs' Second Amended Master Long Form Complaint relies almost entirely on studies published before April 2016 as evidence of the alleged association between talc

34

use and ovarian cancer.  (Brennan Decl., Ex. 25 at § II).  As a result, Ms. Hill could have, through due diligence, discovered the putative causal thoery well before she initiated her lawsuit.

Moreover, Ms. Hill's lack of diligence is further demonstrated by the mounting talc lawsuits, verdicts, and pervasive attorney advertising regarding those verdicts long before she filed suit.  *See, e.g.*, *IKB Deutsche Industriebank AG*, 2015 WL 1516631, at *4-5 (plaintiff could have reasonably discovered the bases for its claims when a similar lawsuit had been filed years before containing the same "key factual allegations underlying [plaintiff's] claims"); *Quintana Lopez v. Liggett Grp., Inc.*, 336 F. Supp. 2d 153, 158-59 (D.P.R. 2004) (noting that periodic news coverage of tobacco litigation settlements contributed to the triggering of Puerto Rico's limitations period).  In particular, a talc verdict against the J&J defendants in October 2013 spawned a bevy of lawsuits making the same exact allegations as Ms. Hill is advancing here, culminating in  240 cases  being filed on behalf of 1,574 plaintiffs by April 2016.  (Frazier Decl. at ¶¶ 3, 8.)  This flurry of litigation was spurred in large part by the millions of dollars of spending by talc plaintiffs' lawyers, who touted already highly publicized talc verdicts they obtained and saturated media markets with claims that talc usage causes ovarian cancer.   (*Id*. at ¶ 8; *see also, e.g.*, Exs. D-G).  The prevalence of attorney advertising at this time is evidenced by the fact that Ms. Hill herself was alerted to

the alleged association between talc usage and ovarian cancer in 2016 through an attorney advertisement on the television.  (Brennan Decl., Ex. 6 at 23:9-21, 121:4-18).  In short, Ms. Hill's own pleadings and the state of publicity surrounding talc litigation demonstrate that she cannot meet the burden of showing that had she acted with diligence, she could not have discovered the alleged fraud prior to the expiration of the limitations period.  Accordingly, her fraud-based personal injury claims are barred.

### c.  The Defendant Misrepresentation Exception Does Not Toll The Statute of Limitations.

In order to take advantage of the "defendant misrepresentation exception" to toll the statute of limitations, Ms. Hill is required to identify affirmative representations by the J&J defendants that actually obstructed her from filing her complaint or any evidence of obstructive intent by the J&J defendants.  In Virginia, the statute of limitations may be tolled by a defendant's misrepresentation only "[w]hen the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of an action."  Va. Code § 8.01-229(D).  "While the defendant bears the burden of proving that the statute of limitations has expired, the plaintiff bears the burden of proving facts sufficient to warrant tolling of the statute of limitations."  *Hughley v. Basham*, No. Civ.A. 2:03CV85, 2003 WL 24101521, at *3 (E.D. Va. Aug. 1, 2003) (citing *Rivera v. Nedrich*, 259 Va. 1 (Va. 1999)), *aff'd*, 91 Fed. App'x 273 (4th Cir. 2004).

36

To satisfy this burden, a plaintiff "must establish that the defendant took an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action." *Grimes v. Suzukawa*, 262 Va. 330, 332 (Va. 2001). "There must be something actually said or done which is directly intended to prevent discovery." *Newman v. Walker*, 270 Va. 291, 296 (Va. 2005) (quotations omitted). Such affirmative acts must consist of misrepresentations, not mere silence or passive concealment, "must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action." *Id.* at 296-97. Put another way, a "defendant must intend to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order for the exception to apply." *Hawks v. DeHart*, 206 Va. 810, 814 (Va. 1966) (internal quotation and citation omitted). "If a defendant lacks this obstructive intent . . . there can be no tolling." *Mackey v. McDannald*, 298 Va. 645, 657 (Va. 2020).

Ms. Hill is wholly unable to meet her burden. The laundry list of alleged misrepresentations by the J&J defendants in Plaintiffs' Second Amended Master Long Form Complaint (Brennan Decl., Ex. 25 at §§ VII, IX), are very similar to those that were found insufficient to toll the statute of limitations in *Flick v. Wyeth*. In *Flick*, plaintiff underwent hormone replacement therapy, ingesting the medicines Prempro, Premarin, and Provera manufactured by defendants, before

37

developing breast cancer and filing suit.  2012 WL 4458181 at *1.  Defendants

moved for summary judgment, arguing plaintiff's claims were time-barred

because, like Ms. Hill, she filed her complaint more than two years after the date of

her breast cancer diagnosis.  *Id*.  In response, the plaintiff argued that the

limitations period had been tolled by Va. Code Ann. § 8.01-229(D) because

defendant engaged in "allegedly obstructive conduct."  *Id*. at *4.  In particular,

plaintiff identified "sixteen examples of purportedly fraudulent or obstructive

conduct":

> (1)  Wyeth sales representatives emphasizing unproven
> benefits and downplaying the risk of breast cancer; (2)
> Wyeth forbidding sales representatives to initiate
> discussions with doctors about certain drug risks; (3)
> Wyeth ignoring certain findings from Dr. Malcolm Pike
> about the subject of menopause therapy and breast
> cancer and not hiring him to design a study; (4) Wyeth
> disputing and suppressing Dr. Graham Colditz's study that
> showed an increased cancer risk from hormone drugs; (5)
> Wyeth's failure to aid[] a study by the International
> Agency for Research on Cancer, and creating a task force
> to ensure that there would be no public condemnation of
> the drugs; (6) Wyeth deciding to not "fill the scientific
> void" when an FDA Advisory Committee reported that
> there was insufficient data about cancer risks related to
> hormone therapy; (7) Wyeth ensuring that an oncologist
> would not chair a seminar about hormone drugs; (8)
> Wyeth adhering to its policy to never fund breast
> cancer studies and not giving Dr. Fiona Gilbert access to
> its data without significant restrictions; (9) Wyeth's
> attempts to shift media focus away from a study by Dr.
> Colditz that described increased cancer risks from HRT;
> (10) Wyeth organizing a committee to downplay the
> findings of a 1996 study by a Dr. Cummings; (11) Wyeth

38

reminding its sales representatives to not discuss a 1997 study with physicians; (12) Wyeth funding a Continuing Medical Education program intended to reassure patients and doctors that HRT brought no increased cancer risk; (13) Wyeth failing to follow-up with a German scientist's hypothesis that Wyeth's estrogen drug might be uniquely carcinogenic; (14) Wyeth, in response to two studies published in 2000, advising doctors that the studies were inconclusive and that risks were unproven; (15) Wyeth refusing to follow FDA orders to strengthen the language on its warning label; and (16) Wyeth "ghostwriting" medical articles downplaying HRT risks and thus "pollut[ing] the scientific evidence that doctors relied upon in forming their opinions."

*Id.* at \*5.  Defendants argued that the plaintiff was "simply trying to repackage her liability theories as evidence of 'fraudulent concealment' or 'obstruction' in order to toll the limitations period," and that "even if [p]laintiff's allegations [were] accepted as true, she did not allege that [d]efendants acted with the requisite *intent* to obstruct litigation."  *Id*. at \*4 (emphasis in original).

The court agreed with defendants, holding that plaintiff's "examples d[id] not allege any 'affirmative act' taken by" defendants, and "[s]pecifically, examples 3, 6, 8, and 13 all fail[ed] to describe affirmative acts contemplated by § 8.01-229(D)."  *Id*. at \*5.  The court stressed that "Virginia courts that have applied § 8.01-229(D) have clearly distinguished the concept of a passive 'concealment' from that of an 'affirmative act' designed to 'misrepresent,'" and "[t]he latter act tolls the ruling of the statute of limitations, but the former behavior does not."  *Id*. As the court explained, "[w]hile the cases draw a fine distinction," here the

39

plaintiff's "examples fail[ed] to allege facts necessary to carry her burden to establish that [d]efendants' activities were committed with moral turpitude or with the intent to obstruct her ability to file her action," and "§ 8.01-229(D) d[id] not toll the running of the two-year statute of limitations." *Id.*

Just as in *Flick*, Ms. Hill's allegations are merely repackaged liability theories, which do not suffice to toll the statute of limitations.  Indeed, a number of the allegations (e.g., that J&J "did not tell the FDA" about certain purported testing results and allegedly failed to disclose "relevant and discoverable evidence" in other litigations (*see, e.g.*, Brennan Decl., Ex. 25 at ¶¶ 144, 158, 230)) sound in concealment and do not reflect  any affirmative action by the J&J defendants at all. And to the extent that the Complaint does attempt to allege affirmative misconduct, it fails to adequately plead that such conduct was "committed with moral turpitude or with the intent to obstruct [Ms. Hill's] ability to file her action" in a timely manner.  *Flick*, 2012 WL 4458181, at *5.  Notably, such an allegation would be entirely implausible in light of the record evidence, which (as previously discussed), makes clear that Ms. Hill exercised zero diligence in attempting to determine the alleged cause of her ovarian cancer.  In short, just like in *Flick*, plaintiff's bid to invoke Virginia's narrow fraudulent-misrepresentation doctrine fails and should be rejected.

40

### 3. The J&J Defendants Are Entitled to Summary Judgment on Ms. Hill's Consumer Protection Claims.

None of Ms. Hill consumer protection claims is viable.

### a. Ms. Hill's Virginia Consumer Protection Claim is Barred by the Two-Year Statute of Limitations.

The statute of limitations for a Virginia Consumer Protection Act ("VCPA") violation is two years. Va. Code Ann. § 59.1-204.1(A). Just as with her other fraud claims, her VCPA claims accrued "when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249(1). Because Ms. Hill's VCPA claims are based upon the same facts as her other fraud claims, they are barred because she discovered or should have discovered the alleged fraud underlying the VCPA claims more than two years prior to filing her complaint and she cannot show that the statute of limitations should be tolled based upon any misrepresentations by the J&J defendants, as explained above. Thus, Ms. Hill's VCPA claims are barred by the statute of limitations.

### b. Ms. Hill's Remaining Consumer Protection Claims Are Not Recognized Under Virginia Law.

Virginia does not recognize claims under other states' consumer protection laws. *See Metro Mail Servs., Inc. v. Pitney Bowes, Inc.*, No. 1:16-cv-1416, 2017 WL 1230848, at *5 (E.D. Va. Mar. 31, 2017) (holding that Virginia substantive

law does not recognize consumer protection statutes from another jurisdiction).

Thus, the J&J defendants are entitled to summary judgment on Ms. Hill's

consumer protection claims under Kansas, Florida, and North Carolina law.

### 4. The J&J Defendants Are Entitled to Summary Judgment on the Loss of Consortium, Punitive Damages, and Discovery Rule and Tolling Claims Because They Are Not Recognized by Virginia.

The J&J defendants are entitled to summary judgment on the remaining

claims asserted by Ms. Hill  because they are not recognized under Virginia law.

"Virginia does not recognize loss of consortium as a viable cause of action." *Sirak*

*v. Aiken*, No. 3:19-cv-179, 2019 WL 6689912, at *3 (E.D. Va. Dec. 6, 2019); *see*

*also Carey v. Foster*, 345 F.2d 772 (4th Cir. 1965).  Additionally, Virginia only

allows punitive damages in cases where there is an underlying claim and does not

recognize a separate cause of action for punitive damages.  *Porchie v. Alere*

*Toxicology Servs., Inc.*, No. 2:20-cv-00022, 2021 WL 232600, at *3 (W.D. Va.

Jan. 22, 2021) (citing *Roche v. Lincoln Prop. Co.*, 175 Fed. App'x 597, 606 (4th

Cir. 2006); *see also Zedd v. Jenkins*, 194 Va. 704, 706-07 (Va. 1953) ("The general

rule is that a plaintiff cannot maintain an action to recover mere punitive damages

or exemplary damages, and that a finding of compensatory damages is prerequisite

to an award of exemplary damages.").  Finally, although Ms. Hill lists "Discovery

Rule and Tolling" as a separate count, these allegations appear to go to Ms. Hill's

arguments that the statute of limitations should be tolled, and are not a separate

cause of action.  (Brennan Decl., Ex. 25 at ¶¶ 501-05).  Thus, the J&J defendants

are entitled to summary judgment as to Ms. Hill and Mr. Hill's claims for loss of

consortium, punitive damages, and discovery rule and tolling claims.

### C. The J&J Defendants  Are Entitled to Summary Judgment as to All of Plaintiff Bobbie Landreth's Claims.

#### 1.  Plaintiff Landreth's Claims Are Governed by Mississippi Law.

Mississippi law applies to Ms. Landreth's claims because all of the events

relevant to her claims happened in Mississippi.  Mississippi applies the "most

significant relationship test" from the Restatement (Second) Conflicts of Law.

*Bonti v. Ford Motor Co.*, 898 F. Supp. 391, 395 (S.D. Miss. 1995) (citing *Craig v.

Columbus Compress & Warehouse Co.*, 210 So.2d 645, 649 (Miss. 1966)), *aff'd*,

85 F.3d 625 (5th Cir. 1996).  "Under Mississippi's choice-of-law rules, issues of

tort are governed by the law of the place of the injury unless another state has a

more substantial relationship to the action."  *Bouchillon v. Same Deutz-Fahr, Grp.*,

No. 1:14-cv-135, 2016 WL 919550, at *3 (N.D. Miss. Mar. 10, 2016) (internal

quotation and citation omitted).  The following contacts are reviewed in order to

determine which jurisdiction has a more substantial relationship to the action: (a)

the place where the injury occurred; (b) the place where the conduct causing the

injury occurred; (c) the domicile, residence, nationality, place of incorporation and

place of business of the parties; and (d) the place where the relationship, if any,

between the parties is centered.  *Bonti*, 898 F. Supp. at 395.  Given that the alleged

injury occurred Mississippi, Ms. Landreth purchased and used JJCI's talcum powder products  in Mississippi, and Ms. Landreth resides in Mississippi, Mississippi law applies.[3] (Brennan Decl., Ex. 14 at 4; Brennan Decl., Ex. 13 at 69:16-19).  And, as summarized here and outlined in more detail below, all of Ms. Landreth's claims are time-barred under Mississippi law.

| Plaintiff's Claim | Date Accrued | Deadline for Filing | Date Filed |
|---|---|---|---|
| Products Liability—Strict Liability—Failure to Warn (Count II) | October 2014 | October 2017 | January 21, 2018 |
| Products Liability—Strict Liability—Defective Manufacture and Design (Count IV) | October 2014 | October 2017 | January 21, 2018 |
| Breach of Express Warranties (Count V) | N/A – Subsumed by products liability claims | | |
| Breach of Implied Warranty of Merchantability (Count VI) | N/A – Subsumed by products liability claims | | |
| Breach of Implied Warranty of Fitness for a Particular Purpose (Count VII) | N/A – Subsumed by products liability claims | | |
| Negligence (Count IX) | October 2014 | October 2017 | January 21, 2018 |
| Negligent Misrepresentation (Count XI) | N/A – Subsumed by products liability claims | | |
| Fraud (Count XII) | N/A – Subsumed by products liability claims | | |
| Violation of State Consumer Protection Laws of the State of Mississippi (Count XIV) | N/A – Did not comply with pre-filing requirements | | |
| Fraudulent Concealment (Count XVI) | N/A – Subsumed by products liability claims | | |

---

[3] Mississippi applies the choice of law analysis to each issue independently.  *Bonti*, 898 F. Supp. at 395.  Thus, to the extent Ms. Landreth's demand for punitive damages survives this motion, the J&J defendants will argue that New Jersey law governs any  claim for punitive damages.

| Plaintiff's Claim | Date Accrued | Deadline for Filing | Date Filed |
|---|---|---|---|
| Civil Conspiracy (Count XVIII) | N/A – Not recognized as an independent cause of action | | |
| Punitive Damages (Count XX) | N/A – Not recognized as an independent cause of action | | |
| Discovery Rule and Tolling (Count XXI) | N/A – Not recognized as an independent cause of action | | |

### 2. Ms. Landreth's Products Liability Claims Are Barred by the Three-Year Statute of Limitations.

#### a. Ms. Landreth's Products Liability Claims Accrued More Than Three Years Prior to When She Filed Her Complaint.

Ms. Landreth was diagnosed with ovarian cancer in October 2014.

Mississippi law requires that she file her lawsuit by October 2017. She filed on January 21, 2018. Ms. Landreth's delay of over three years after her diagnosis to file her complaint bars her products liability claims. "Under Mississippi law, it is well settled that claims begin to accrue when a plaintiff discovers his injury, and discovery of the 'cause' of the injury is not required." *Tanner v. Pfizer, Inc.*, No. 1:15-cv-75, 2015 WL 6133207, at *2 (S.D. Miss. Oct. 19, 2015) (quoting *Lincoln Elect. Co. v. McLemore*, 54 So.3d 833, 838 (Miss. 2010)); *see also* Miss. Code Ann. § 15-1-49(2); *Blouin v. Johnson & Johnson*, No. 2:17-cv-42, 2017 WL 4969345 at *1 (S.D. Miss. Nov. 1, 2017) ("MPLA claims accrue when the plaintiff discovers, or by reasonable diligence should have discovered, the injury."). "[K]nowledge of the cause of an injury is irrelevant to the analysis. The inquiry is when the party knew or should have known of an injury." *Lincoln*, 54 So.3d at

838 (citing *Angle v. Koppers, Inc.*, 42 So.3d 1, 5 (Miss. 2010)).  The statute of limitations for products liability actions in Mississippi is "three (3) years next after the cause of such action accrued, and not after."  Miss. Code Ann. § 15-1-49(1).

Ms. Landreth's product-liability claims accrued in October 2014 because that is when she  was diagnosed with ovarian cancer.  Yet Ms. Landreth waited to file her complaint until January 31, 2018.  Thus, summary judgment is warranted here because Ms. Landreth filed her claim more than three years after discovery of her injury.  *See F&S Sand, Inc. v. Stringfellow*, 265 So.3d 170, 174-75 (Miss. 2019) (reversing trial court's denial of summary judgment because plaintiff had presented to hospital with symptoms consistent with potential silicosis more than three years before filing complaint); *Bryant v. Wyeth, Inc.*, 816 F. Supp. 2d 329, 335 (S.D. Miss. 2011), *aff'd*, 487 Fed. Appx 207 (5th Cir. 2012) (granting motion for summary judgment where plaintiff did not file her claim within three years of cancer diagnosis and rejecting, *inter alia*, argument that she could not have "perceive[d]" injury at the time); *see also Blouin*, 2017 WL 4969345, at *2 (granting defendant Johnson & Johnson's motion to dismiss where plaintiff filed her products liability action more than three years after the date of the decedent's death); *Tanner*, 2015 WL 6133207 (granting defendant's motion to dismiss for failure to state a claim where plaintiff filed his action more than three years after his melanoma diagnosis and did not adequately plead facts to establish either

46

defendant's concealment or his own due diligence); *Welsh v. Pfizer, Inc.*, No. 2:10-cv-40, 2012 WL 6690925 (S.D. Miss. Dec. 21, 2012) (granting defendant's motion for summary judgment where plaintiff did not file her action within three years of cancer diagnosis despite alleged inability to discover causal link and rejecting claim of fraudulent concealment).

### b. The Statute of Limitations for Ms. Landreth Is Not Tolled by the Fraudulent Concealment Doctrine.

While Ms. Landreth invokes fraudulent-concealment tolling, her reliance on that doctrine must fail because she has not shown any affirmative action by the J&J defendants that prevented her from filing her claim or that she acted with due diligence in attempting to discover her claim. In Mississippi, the doctrine of tolling based on fraudulent concealment is narrow: "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." Miss. Code Ann. § 15-1-67.

As an initial matter, Ms. Landreth's own testimony forecloses tolling under this narrow doctrine. In particular, Ms. Landreth testified that she became aware of the alleged connection between talc usage and ovarian cancer through an advertisement on television in 2014 or "early '15." (Brennan Decl., Ex. 13 at 29:6-

47

18).  She also testified multiple times that she last used JJCI's talc products in 2014 because "[t]hat's when [she] found out about what it may do to you."  (*Id*. at 27:24-28:16, 31:15-20, 31:25-32:2; Brennan Decl., Ex. 15 at 16).  Because Ms. Landreth knew about the alleged connection between talc usage and ovarian cancer within the limitations period – i.e., her claims accrued more than three years before filing her complaint –  they are clearly time-barred.

Even assuming that Ms. Landreth could somehow show that she did not actually discover her claims before January 31, 2015, she would still be unable to establish the requirements of fraudulent-concealment tolling.  In order to establish a claim of fraudulent concealment, the plaintiff "is required to show that (1) some affirmative act of conduct was done and prevented discovery of the claim; and (2) due diligence was performed on its part to discover the claim."  *Trustmark Nat'l Bank v. Meador*, 81 So.3d 1112, 1119 (Miss. 2012).  Ms. Landreth cannot show either.

***First***, Ms. Landreth has not shown any affirmative act or conduct by J&J and/or JJCI that prevented Ms. Landreth from filing her claim.  "The requirement of proof of an affirmative act refers not to proof of the act that gives rise to the claim but rather to a *subsequent* affirmative act of concealment."  *Bryant*, 816 F. Supp. 2d at 335.  While Plaintiffs' Second Amended Master Long Form Complaint contains a laundry list of alleged misrepresentations and omissions by the J&J

48

defendants  regarding asbestos in talc products (Brennan Decl., Ex. 25 at §§ VII, IX), that alleged conduct "ultimately form[s] the basis of plaintiffs' claims for relief and do[es] not constitute subsequent affirmative acts of concealment." *Bryan*, 816 F. Supp. 2d at 335 ("Inadequacies in Wyeth's labeling which ultimately form the basis of plaintiff's claims for relief do not constitute subsequent affirmative acts of concealment."). For this reason alone, Ms. Landreth cannot rely on Mississippi's fraudulent-concealment doctrine.

*Second*, even assuming Ms. Landreth did not discover the purported basis for her claims by January 31, 2015, reasonable diligence would have revealed that supposed predicate shortly thereafter. To assess whether a plaintiff was diligent in discovery of her claims, "[t]he proper test is whether a reasonable person similarly situated would have discovered potential claims." *Whitaker v. Limeco Corp.*, 32 So.3d 429, 436 (Miss. 2010) (internal quotation and citation omitted). A reasonable person similarly situated to Ms. Landreth (i.e., one who was not only diagnosed with cancer in 2014 but who was exposed to attorney advertising alleging that talc causes ovarian cancer in the wake of that diagnosis) would have undoubtedly discovered the potential claims within the limitations period given the extensive publicity surrounding talc allegations in 2014 and beyond. But Ms. Landreth did not undertake *any* (much less reasonable) diligence. She never asked her doctors what, if anything, caused her ovarian cancer. (Brennan Decl., Ex. 13 at

49

49:9-19).  And even after she saw the talc advertisement on television in 2014 or early 2015, she did not do any research to determine if the claims in the ad were true.  (*Id*. at 138:24-139:9).  These undisputed facts establish that Ms. Landreth did nothing to discover the cause of her cancer and provide an independent basis for rejecting plaintiff's reliance on the narrow fraudulent concealment doctrine.

In sum,  Ms. Landreth actually knew about the alleged connection between her talc use and her ovarian cancer more than three years prior to filing her complaint, and even if she did not,  she cannot show any affirmative act JJCI or J&J took to prevent her from filing her complaint or that she acted with due diligence.  As a result, the fraudulent concealment doctrine does not toll the statute of limitations.

### 3.  Ms. Landreth's Negligence and Breach of Warranty Claims are Subsumed by Her Products Liability Claims.

The J&J defendants are entitled to summary judgment on Ms. Landreth's negligence and breach of warranty claims because they are subsumed by her products liability claims.  The Mississippi Products Liability Act ("MPLA") governs "any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty, except for commercial damage to the product itself."  Miss. Code Ann. § 11-1-63; *see also Elliott v. El Paso Corp.*, 181 So.3d 263, 268-69 (Miss. 2015) ("To the extent that Plaintiffs purport to make common-law

negligence or strict-liability claims based on damages caused by odorant fade, we find that those claims fail as a matter of law."). The MPLA also expressly covers breaches of express warranty due to damages caused by a product. Miss. Code Ann. § 11-1-63(a)(i)(4) ("The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product."). Thus, the Court should enter summary judgment on Ms. Landreth's negligence and breach of warranty claims either because they are subsumed by her products liability claims or because they are subject to the statute of limitations for products liability claims, which bars them as discussed above. *See Elliot*, 181 So.263 at 269.

### 4. The J&J Defendants Are Entitled to Summary Judgment on Ms. Landreth's Fraud, Fraudulent Concealment, and Negligent Misrepresentation Claims.

### a. Ms. Landreth's Fraud, Fraudulent Concealment, and Negligent Misrepresentation Claims Are Subsumed by Her Products Liability Claims.

Similar to her negligence and breach of warranty counts, Ms. Landreth's fraud, fraudulent concealment, and negligent misrepresentation claims are actions for damages caused by a product and are similarly subsumed by the MPLA. Miss. Code Ann. § 11-1-63; *Hall v. Smith & Nephew, Inc.*, No. 5:19-cv-13, 2020 WL 3452621, at *1 (S.D. Miss. May 29, 2020) (granting summary judgment and treating fraud and misrepresentation claims as MPLA claims because the Act "provides the exclusive remedy for product liability actions") (citing *Elliot*, 181

51

So.3d at 268); *Young v. Bristol-Myers Squibb Co.*, No. 4:16-cv-00108, 2017 WL 706320, at *4 (N.D. Miss. Feb. 22, 2017) (dismissing misrepresentation and fraud claims because "common law claims based on damages caused by a product are subsumed by the MPLA") (citing *Elliot*, 181 So.3d at 268). Accordingly, the Court should grant summary judgment on Ms. Landreth's negligent misrepresentation, fraud, and fraudulent concealment claims either because they are subsumed by her products liability claims or because they are subject to the statute of limitations for products liability claims, which bars them as discussed above.

> **b. Ms. Landreth's Fraud, Fraudulent Concealment, and Negligent Misrepresentations Are Barred by the Statute of Limitations.**

Even if Ms. Landreth's fraud, fraudulent concealment, and negligent misrepresentation claims were not subsumed by her MPLA claims, they would still be barred by their own statute of limitations. Fraud, fraudulent concealment, and negligent representation claims have a three-year statute of limitations. *Crosby v. Pippin*, No. 1:18-cv-343, 2019 WL 1063377, at *2 (S.D. Miss. Mar. 6, 2019) (citing Miss. Code Ann. § 15-1-49(1); *Bonds v. Modern Woodmen of Am.*, No. 3:13-cv-059, 2014 WL 1255426, at *2 (N.D. Miss. Mar. 26, 2014); *Stephens v. Equitable Life Assurance Society of U.S.*, 850 So.2d 78, 82 (Miss. 2003)). The latent injury rule applies so that accrual occurs when the plaintiff discovered or should have discovered her injury. Miss. Code Ann. § 15-1-49(2).

52

Thus, just as with the products liability claim, the fraud, fraudulent concealment, and negligent misrepresentation causes of action accrued when Ms. Landreth was diagnosed with ovarian cancer (i.e., October 2014), which is more than three years prior to when she filed her complaint.  Also, as shown above, the statute of limitations is not tolled by the doctrine of fraudulent concealment.  Thus, Ms. Landreth's fraud, fraudulent concealment, and negligent misrepresentation claims are barred by the statute of limitations.

### 5. The J&J Defendants Are Entitled to Summary Judgment on Ms. Landreth's Mississippi Consumer Protection Act Claim.

#### a. Ms. Landreth Did Not Comply With the Pre-Filing Requirements.

Ms. Landreth's consumer fraud claims must fail because she did not comply with Mississippi's pre-filing requirements.  Before bringing a consumer fraud action pursuant to the Mississippi Consumer Protection Act ("MCPA"), "the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General."  Miss. Code Ann. § 75-24-15.  Failure to comply with this provision bars a plaintiff from bringing an action under the MCPA.  *Blouin*, 2017 WL 4969345, at *3 (dismissing claim for failure to "plead any facts demonstrating that [plaintiffs] complied with this statute"); *Humphrey v. Citibank NA*, No. 2:12-cv-148, 2013 WL 5407195, at *6 (N.D. Miss. Sept. 25, 2013) (dismissing claim in part because the "[c]omplaint allege[d] no attempt . . . to resolve [p]laintiff's MCPA claim through an informal

dispute settlement process"). Because Ms. Landreth has not pled compliance with the pre-filing requirement, the J&J defendants are entitled to summary judgment on her MCPA claim.

### b. Alternatively, Ms. Landreth's Mississippi Consumer Protection Act Claim is Subsumed by Her Products Liability Claims or Barred by the Statute of Limitations.

Even if Ms. Landreth had pled compliance with the pre-filing requirement, her MCPA claim would still fail as a matter of law because it is based on damage from a product and, thus, is subsumed by the MPLA. *Hall*, 2020 WL 3452621, at *1. Further, MCPA claims are subject to the same three-year statute of limitations set forth in Miss Code Ann. § 15-1-49 as product-liability claims. *Alexander v. City of Fin. Co.*, No. Civ.A. 3:02 CV 81, 2004 WL 1638251, at *1 (N.D. Miss. May 4, 2004). Thus, the Court should enter summary judgment on Ms. Landreth's MCPA claim because it is subsumed by the MPLA or it is barred by the three-year statute of limitations as discussed above.

### 6. The J&J Defendants Are Entitled to Summary Judgment on Ms. Landreth's Civil Conspiracy, Punitive Damages, and Discovery Rule and Tolling Because Mississippi Does Not Recognize Them as Separate Claims.

The J&J defendants are also entitled to summary judgment on Ms. Landreth's remaining claims because they are not recognized causes of action in Mississippi. In Mississippi, civil conspiracy claims do not stand alone, and are derivative on another tort. *Sharkey v. Barber*, 188 So.3d 1245, 1247 (Miss. Ct.

App. 2016); *Jackson v. Monsanto Co.*, No. 5:18-cv-13, 2018 WL 3995799, at *2 (S.D. Miss. Aug. 16, 2018).  Similarly, a claim for punitive damages is not separate and distinct, and is derivative of the other claims.  *Law v. Aetna Life Ins. Co.*, No. 5:09-cv-116, 2011 WL 2840870, at *2 n.2 (S.D. Miss. July 14, 2011).  Finally, although Ms. Landreth lists "Discovery Rule and Tolling" as a separate count, these allegations appear to go to her arguments that the statute of limitations should be tolled, and are not a separate cause of action.  (Brennan Decl., Ex. 25 at ¶¶ 501-05).  Thus, the Court should enter summary judgment in favor of the J&J defendants on Ms. Landreth's civil conspiracy, punitive damages, and discovery rule and tolling claims.

### D. The J&J Defendants Are Entitled to Summary Judgment as to All of Plaintiff Bertha Walton's Claims.

#### 1. Plaintiff Walton's Claims Are Governed by Louisiana Law.

Despite the fact that Ms. Walton filed her complaint in the District Court for the District of Columbia, Louisiana law applies to her claims because she has resided in Louisiana her entire life and she was diagnosed with cancer in Louisiana.  The District of Columbia applies the "most significant relationship" test from the Restatement (Second) Conflicts of Law to determine which law applies to claims.  *Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004).  In order to determine which jurisdiction has the most significant relationship to the claims, courts look to the following factors: "(1) the place where

the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered." *Id.*

Ms. Walton was a lifelong resident of Louisiana.  (Brennan Decl., Ex. 23 at 100:23-101:3).  She was diagnosed with ovarian cancer and she was treated for her ovarian cancer in Louisiana.  (Brennan Decl., Ex. 21 at 5; Brennan Decl., Ex. 22 at 10).  Thus, Louisiana has the most significant relationship to Ms. Walton's claims, and Louisiana law applies.

### 2. The J&J Defendants Are Entitled to Summary Judgment as to All of Ms. Walton's Claims Because She Cannot Provide Sufficient Evidence of Usage of JJCI Talcum Products.

Louisiana law requires that in a products liability case, the plaintiff "bears the burden of proving by a preponderance of evidence a causal relationship between his or her injury and the . . . use of the product." *Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004) (citing *Maranto v. Goodyear Tire & Rubber Co.*, 650 So.2d 757, 759 (La. 1995)).  The onus is on the plaintiff to establish that exposure to the defendant's product was a "substantial contributing cause" of her injury.  *See Oddo v. Asbestos Corp. Ltd.*, 173 So. 3d 1192, 1200 (La. Ct. App. 2015).  This requires ***both*** that the plaintiff was actually exposed to the defendant's product and that she "was substantially exposed to" it in a sufficient dosage to cause the injury.  *See e.g.*, *id.* at 1208

56

("There is no direct evidence Southern Talc's product was even present in the driveway on Marion Avenue," and "[t]here is no expert testimony that talc contained in the driveway resulted in Mr. Oddo's above-background exposure to asbestos."); *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 343-44 (5th Cir. 1994) (affirming summary judgment because there was no evidence that plaintiff used defendant's medication despite vague identification of the medication at the plaintiff's residence by third parties); *see also Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948-49 (La. Ct. App. 1998) ("Without *frequent*, *regular* exposure to Flexitallic's gaskets by the plaintiffs, we are without authority to say that the plaintiffs' handling of Flexitallic gaskets was a substantial factor in the causation of their injuries.") (some emphasis added)).  As discussed below, plaintiff lacks evidence of either requirement.

First, the record does not contain sufficient evidence that Ms. Walton was even exposed to defendants' *talc* products.  Both Ms. Walton's sister (Eloise Hawkins) and Ms. Walton's son (Michael Scroggins) testified that the decedent *never* used Shower to Shower.  (*See, e.g.*, Brennan Decl., Ex. 23 at 109:10-12; Ex. 24 at 27:6-8, 30:14-17, 31:8-11, 32:16-19, 36:24-37:9, 71;18-25).  And both witnesses also testified that they were not sure whether the Johnson's Baby Powder Ms. Walton used was cornstarch-based, as opposed to talc-based.  (*See* Brennan Decl, Ex. 23 at 108:23-109:5; Ex. 24 at 29:17-30:1, 36:24-37:9).  Absent actual

57

evidence that Ms. Hawkins was exposed to a *talc* based product, plaintiff cannot establish causation, which warrants a grant of summary judgment on all of her claims.

Second, even assuming that the witnesses' testimony qualified as competent evidence that Ms. Hawkins was actually exposed to a *talc*-based product, plaintiff would still lack evidence that such exposure was substantial – i.e., that it was sufficiently "frequent" and "regular" as opposed to trivial. After all, the only witness who actually saw Ms. Walton use Johnson's Baby Powder was Ms. Hawkins, and she only observed Ms. Walton using that product from the time Ms. Hawkins was 8 or 9 (1959 or 1960) until she was 12 or 13 (1964 or 1965) (Brennan Decl., Ex. 23 at 29:4-5, 76:9-77:9, 109:10-12, 111:11-17, 209:1-210:5). Needless to say, the record is bereft of any evidence that such minimal exposure – some 50 years before the decedent's ovarian cancer diagnosis – could have possibly been a substantial cause of that injury.

Moreover, while Mr. Scroggins testified that his mother used talc products throughout her lifetime, there is no admissible evidence of adult *perineal* use, a perquisite for these claims. Notwithstanding what he wrote in the Plaintiff Profile Form ("PPF"), Mr. Scroggins's testimony makes clear that he has no personal knowledge of Ms. Walton's talcum powder use, including whether she used it on her perineum. Mr. Scroggins testified he is "just assum[ing]" that Ms. Watson

58

used talcum powder products because over his lifetime, he never "at any point watch[ed his] mother physically put powder on her own body at any point in time." (Brennan Decl., Ex. 24 at 30:14-17, 31:8-11, 32:16-19).  He further testified that Ms. Walton never told him "anything specific about how she applied [ powder] to her own body." (*Id*. at 40:5-8).  As to perineal use, Mr. Scroggins testified that he can only "assume" she used talcum powder that way because he "didn't physically see" her apply it. (*Id*. at 71:18-25).  Simply put, there is no evidence that Ms. Walton – as an adult – actually used a JJCI talc product in a manner that could have caused her ovarian cancer under plaintiffs' theory of the case.

For all of these reasons, plaintiffs cannot establish that Ms. Walton was even exposed to talc in the J&J defendants' products, much less that she was exposed to it substantially or in a manner that could have caused her ovarian cancer.

## V. CONCLUSION

For the foregoing reasons, the J&J defendants respectfully request the Court grant this Motion, and enter summary judgment in favor of the J&J defendants as to all of the claims of the Linda Hill complaint, the Bobbie Landreth complaint, the Carol Williams complaint, and the Bertha Walton complaint.

Dated: June 18, 2021

Respectfully submitted,

/s/ *Susan M. Sharko*

Brianna L. Silverstein
FAEGRE DRINKER BIDDLE
& REATH LLP
*On the brief*

Susan M. Sharko
FAEGRE DRINKER BIDDLE
& REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  973-549-7000
Facsimile:   973-360-9831
E-mail:  susan.sharko@faegredrinker.com

John H. Beisner
Jessica D. Miller
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-7000

*Attorneys for Defendants Johnson &
Johnson and Johnson & Johnson Consumer
Inc.*