Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Docket No. 3:16-md-2738-FLW-LHG

IN RE:

JOHNSON & JOHNSON TALCUM
POWDER PRODUCTS MARKETING,
SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION

REDACTED TRANSCRIPT

STATUS CONFERENCE VIA
REMOTE ZOOM
VIDEOCONFERENCE

\*       \*       \*       \*

FRIDAY, JUNE 18, 2021

\*       \*       \*       \*

BEFORE:   SPECIAL MASTER JOEL SCHNEIDER, USMJ, RETIRED
jschneider@mmwr.com
856-488-7797

MASTROIANNI & FORMAROLI, INC.

Certified Court Reporting & Videoconferencing

515 South White Horse Pike

Audubon, New Jersey 08106

856-546-1100

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

Page 2

1

2

3

4

5

6                    Transcript of proceedings in the

7    above matter taken stenographically by

8    Theresa Mastroianni Kugler, Certified Court Reporter,

9    license number 30X100085700, Notary Public of the

10   State of New Jersey and the Commonwealth of

11   Pennsylvania, VIA ZOOM REMOTE VIDEOCONFERENCE,

12   commencing at 10:10 AM.

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

Page 3

```
 1
        A P P E A R A N C E S:
 2

 3

        MOTLEY RICE, LLC
 4      BY:   DANIEL R. LAPINSKI, ESQUIRE
        210 LAKE DRIVE EAST - SUITE 101
 5      CHERRY HILL, NEW JERSEY  08002
        856-667-0500
 6      FAX - 856-667-5133
        800-768-4026
 7      dlapinski@motleyrice.com
        ATTORNEYS FOR THE PLAINTIFFS
 8

 9

        ASHCRAFT & GEREL, LLP
10      BY:   MICHELLE A. PARFITT, ESQUIRE
        1825 K STREET, NW
11      WASHINGTON, DC  2006
        800-674-9725
12      202-759-7648
        mparfitt@ashcraftlaw.com
13      ATTORNEYS FOR THE PLAINTIFFS

14

15      BEASLEY ALLEN LAW FIRM
        BY:   LEIGH O'DELL, ESQUIRE
16      218 COMMERCE STREET
        P.O. BOX 4160
17      MONTGOMERY, ALABAMA  36104
        800-898-2034
18      FAX - 334-954-7555
        leigh.odell@beasleyallen.com
19      ATTORNEYS FOR THE PLAINTIFFS

20

21      COHEN, PLACITELLA & ROTH, PC
        BY:   CHRISTOPHER M. PLACITELLA, ESQUIRE
22      127 MAPLE AVENUE
        RED BANK, NEW JERSEY  07701
23      215-567-3500
        732-747-9003
24      FAX - 215-567-6019
        cplacitella@cprlaw.com
25      ATTORNEYS FOR THE PLAINTIFFS
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

```
 1        LEVIN, PAPANTONIO, RAFFERTY, PROCTOR,
          BUCHANAN, O'BRIEN, BARR, MOUGEY, PA
 2        BY:  CHRISTOPHER V. TISI, ESQUIRE
          316 SOUTH BAYLEN STREET
 3        PENSACOLA, FLORIDA  32502
          850-435-7000
 4        800-277-1193
          ctisi@levinlaw.com
 5        ATTORNEYS FOR THE PLAINTIFFS

 6

 7        LEVIN, SEDRAN & BERMAN, LLP
          BY:  LAWRENCE S. BERMAN, ESQUIRE
 8        510 WALNUT STREET
          SUITE 500
 9        PHILADELPHIA, PENNSYLVANIA  19106-3697
          877-882-1011
10        215-592-1500
          FAX - 215-592-4663
11        lberman@lfsblaw.com
          ATTORNEYS FOR THE PLAINTIFFS

12

13

          FAEGRE DRINKER BIDDLE & REATH, LLP
14        BY:  SUSAN M. SHARKO, ESQUIRE
          600 CAMPUS
15        FLORHAM PARK, NEW JERSEY  07932
          DIRECT - 973-549-7350
16        FAX - 973-360-9831
          susan.sharko@faegredrinker.com
17        ATTORNEYS FOR THE DEFENDANT,
          JOHNSON & JOHNSON and JOHNSON & JOHNSON
18        CONSUMER COMPANIES, INC.,
          now known as JOHNSON & JOHNSON CONSUMER, INC.

19

20

21

22

23

24

25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 5

```
 1              SKADDEN ARPS, SLATE, MEAGHER & FLOM, LLP
 2              BY:  RICHARD T. BERNARDO, ESQUIRE
                    - and -
 3              BY:  JESSICA D. MILLER, ESQUIRE
                    - and -
 4              BY:  JOHN H. BEISNER, ESQUIRE
                1440 NEW YORK AVENUE, NW
 5              WASHINGTON, DC  20005
                202-371-7410
 6              john.beisner@skadden.com
                richard.bernardo@skadden.com
 7              ATTORNEYS FOR THE DEFENDANT,
                JOHNSON & JOHNSON and JOHNSON & JOHNSON
 8              CONSUMER COMPANIES, INC.,
                now known as JOHNSON & JOHNSON CONSUMER, INC.
 9

10

11

12

13

14       A L S O   P R E S E N T:
15
16              RACHEL L. GOODMAN, ESQUIRE
                MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
17

18
                LEVY & KONIGSBERG, LLP
19              BY:  JEROME H. BLOCK, ESQUIE
                605 THIRD AVENUE
20              33rd FLOOR
                NEW YORK, NEW YORK  10158
21              jblock@levylaw.com
                ATTORNEYS FOR THE PLAINTIFFS
22              IN THE STATE COURT CASES
23

24

25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 6

1           SPECIAL MASTER SCHNEIDER:  We're on the

2     record in the federal court multidistrict litigation

3     for oral argument on the parties privilege dispute.

4           I think it's a good idea, for purposes

5     of this argument, to get the appearances.  And we'll

6     start with plaintiff.

7           Who is appearing for the plaintiff?

8           MR. LAPINSKI:  Your Honor, good

9     morning.  Daniel Lapinski from the Motley Rice law

10    firm on behalf of plaintiffs.

11          SPECIAL MASTER SCHNEIDER:  Plaintiffs'

12    team, why don't we get everyone's name, and then

13    we'll go to the defense.

14          MS. PARFITT:  Good morning, Judge

15    Schneider.  Michelle Parfitt, Ashcraft & Gerel on

16    behalf of the Plaintiffs Steering Committee for the

17    MDL.  And good morning.

18          MS. O'DELL:  Good morning.  Leigh

19    O'Dell from Beasley Allen on behalf of the Plaintiffs

20    Steering Committee.

21          MR. TISI:  This is Chris Tisi from

22    Levin, Papantonio, Rafferty on behalf of the

23    Plaintiffs Steering Committee.

24          MR. PLACITELLA:  Good morning.  Chris

25    Placitella from Cohen, Placitella & Roth for the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 7

1   plaintiffs.

2                MR. BERMAN:  And you have Lawrence

3   Berman on behalf of the Plaintiffs Steering Committee

4   Levin, Sedran & Berman in Philadelphia.

5                SPECIAL MASTER SCHNEIDER:  Let's now

6   turn to the defendants.

7                MS. MILLER:  Good morning, your Honor.

8   Jessica Miller on behalf of the J&J defendants from

9   Skadden Arps.

10               MR. BERNARDO:  Good morning, your

11  Honor.  Richard Bernardo also for the J&J defendants,

12  also from Skadden Arps.

13               MR. BEISNER:  Good morning, your Honor.

14  John Beisner also from Skadden on behalf of the J&J

15  defendants.

16               MS. SHARKO:  Good morning.  Susan

17  Sharko from Faegre, Drinker, Biddle & Reath.  Also

18  for the J&J defendants.

19               SPECIAL MASTER SCHNEIDER:  First, thing

20  I want to do is just thank everyone for the extra

21  special efforts they made to help myself get ready

22  for this oral argument.

23               It's obvious a tremendous amount of

24  work went into identifying the documents, putting the

25  binders together, et cetera.  And I think it was

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 8

1   immensely helpful to me and I just want to say that I

2   appreciate everyone's efforts who put us in this

3   position.

4           I've studied the documents, I've

5   studied the briefs.  I have some general questions

6   which I'd like to address and then after we get

7   through those, you know, if anyone wants to say

8   anything, of course.

9           Then I have some questions regarding

10  some individual documents.  I sent that email out

11  yesterday, I thought it would help move things along

12  more efficiently today.  Some of those questions have

13  been answered.

14          Ms. Miller and I communicated and we

15  straightened out some supplements to the binders,

16  which was extremely helpful.  I've received all of

17  that.  I'm comfortable I know the record.

18          To be perfectly candid, I don't think

19  there is a tremendous dispute amongst the parties

20  about the applicable law.  It's been set forth in

21  many, many cases, including cases I authored when I

22  was on the bench, but obviously the dispute is how

23  you pigeonhole some of these documents.

24          I understand the difficulties the

25  plaintiffs had responding to the defendant's brief

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 9

1    because they don't have the benefit of seeing the

2    documents, but I understand their arguments and the

3    positions they take.

4                    I welcome Mr. Block who is on the phone

5    as a listener.

6                    You know my feeling.  I think it makes

7    tremendous sense when the issues between the two

8    litigations are so related that everyone should be

9    updated on what's going on and I'm glad to see

10   Mr. Block is a participant, just as a listener, not

11   as a participant.

12                   I thought a good place to start is to

13   understand the history of how we got to where we are

14   right now with the 156 documents and whether the

15   issues that I'm going to deal with and decide have

16   ever been dealt with before and whether the documents

17   at issue have ever been the subject of prior

18   decisions.  And I'll mention in a moment whether

19   similar-type documents have been produced in other

20   litigations and how we deal with the situation if

21   some of the document types that the J&J defendants

22   are claiming in this case are privileged,

23   similar-type documents were produced in other cases

24   and how we deal with that.

25                   So starting from the beginning, maybe

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                           June 18, 2021

Page 10

1   start with the plaintiffs because they're challenging

2   the documents.

3                   How did we get to this 156?

4                   MR. LAPINSKI:   Good morning, your

5   Honor.   This is Dan Lapinski on behalf of the

6   Plaintiffs Steering Committee.

7                   Your Honor, we got to the documents

8   that are in front of you, and I will, as necessary,

9   ask that the other members of the Plaintiffs Steering

10  Committee that are on the call that have more

11  historical background in various state court

12  litigations that have gone on, they can chime in.

13                  But from a broader perspective, in

14  April we were provided with a privilege log and on

15  that privilege log initially I think there were about

16  12 thousand documents that were on the privilege log.

17  We were able to narrow that privilege log down so

18  that we were only dealing with about, and I'm using

19  rough numbers, about six thousand documents we were

20  dealing with after that.   That number got narrowed

21  down further.   We have a collection of documents that

22  are in dispute amongst the parties.

23                  We met and conferred and decided that

24  the best thing to do in order to try and move this

25  process along would be for us to identify categories

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 11

1    of documents that we felt the disputed documents fell

2    into.  And then within those categories of documents

3    provide exemplars of documents that came from those

4    particular categories.

5              I think initially the discussions were

6    that we were going to provide 50 documents from each

7    category.  And plaintiffs initially did that.  Then

8    we had some further meet and confers with defendants.

9    Defendants downgraded some of the documents, we

10   discussed the fact that some of the other documents

11   were duplicative.  And we ultimately ended up not

12   locking ourselves into 50 documents from each

13   category, but just by a random sampling.  And that's

14   why the five categories of documents that are in

15   front of you, there are different numbers of

16   documents that have been presented in each category.

17             So this process has been one where we

18   have met and conferred and worked collaboratively

19   with opposing counsel in order to be able to put

20   representative documents in front of you.  And the

21   hope is that your rulings on these representative

22   documents will give us guideposts that will enable us

23   to continue to meet and confer and either have

24   decisions made where plaintiffs aren't going to

25   challenge other documents or where defendants are

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 12

1  going to agree to produce additional documents so we

2  have everything we have to work with.

3                    SPECIAL MASTER SCHNEIDER:  So the 156

4  is a subset of how many remaining documents at issue?

5                    MR. LAPINSKI:  I think it's -- I'm

6  looking right now.  Hang on one second, your Honor.

7  And Mr. Bernardo might be in a better position to

8  more readily state that.  I want to say that it was

9  just over three thousand documents total that are

10  still at issue.

11                    SPECIAL MASTER SCHNEIDER:  I don't need

12  an exact number.

13                    Is that about right, J&J?

14                    MR. BERNARDO:  Yeah, that's about

15  right, your Honor.

16                    SPECIAL MASTER SCHNEIDER:  So there is

17  plus or minus three thousand still at issue and this

18  group of 156 is representative of that collection of

19  three thousand documents, is that right?

20                    MR. LAPINSKI:  And actually, your

21  Honor, if I can, I'm looking at page one of the

22  briefing that we submitted in order to be able to

23  pull more accurate numbers.  And to go back and

24  address your question from the start, on April 6th

25  defendants had designated 6,886 documents as

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 13

1    privileged.  We did not challenge in excess of four

2    thousand of those documents.  So that would have left

3    us with roughly 2,800 documents that would have been

4    the subject of challenge.  But since that time, the

5    defendants have agreed to downgrade and produce

6    either in full or with redactions 1,300.  So we're

7    probably looking at about a family of over 1,300

8    documents in total that are still subject to

9    challenge.

10                   SPECIAL MASTER SCHNEIDER:

11   Mr. Bernardo, is that about right?  We don't need an

12   exact number.

13                   MR. BERNARDO:  We don't.  But I just

14   want to state, and that's for the very reason you

15   say, your Honor, we've been spending considerable

16   time working with Mr. Lapinski and obviously there is

17   all sorts of nuances.  I'll just say yes, that's

18   about right, but I just want to make it clear that,

19   you know, the number fluctuates depending upon what

20   we're really talking about.

21                   I also want to make clear and I think

22   that Ms. Miller will also want to make that clear,

23   that the defendants don't agree that the documents

24   that plaintiffs have chosen are what I would say

25   representative.  You know, these -- Jessica's

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 14

1    nodding, so I'm going to let her make that point.

2               MS. MILLER:  I was waiting for our

3    turn, Rich.  I was following the rules.

4               MR. LAPINSKI:  By Rich saying that I

5    was right, I thought we started off well.

6               MR. BERNARDO:  I did.  And that's why

7    I'm turning it over to Jessica, so I don't have to

8    disagree with you, Dan.

9               SPECIAL MASTER SCHNEIDER:  Do you know

10   whether any of these 156 documents have been produced

11   in any other litigation?

12              MR. BERNARDO:  Your Honor, I can answer

13   that with as much certainty as you can have when

14   you're dealing with millions of pages of documents,

15   but I'm fairly certain that the answer is no.

16              To answer a question you raised before

17   and help perhaps your Honor to understand, I had

18   responsibility for overseeing discovery on a national

19   basis since probably mid 2017, and since that time

20   one of the things that was asked of me was to make

21   sure that across the country in all of the cases,

22   whether they're mesothelioma, whether they're ovarian

23   cancer, there is a coordination of the document

24   production.  So that if somebody in this case has

25   something, we make sure somebody in the other case

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 15

1    has that.  And we do our best.  I may not be perfect,

2    but I think it's pretty good, to make sure that that

3    happens, and that includes privilege.

4             We recognize that if we're going to

5    downgrade something, for example, in Mr. Block's case

6    in New Jersey that I'm going to provide that to the

7    folks in the MDL and folks in other cases.  And, in

8    fact, we just did that, we just did a production

9    bringing everybody up to speed.

10            To more directly answer your other

11   question, your Honor, I can't really speak to the

12   period prior to '17 with as much certainty, but I can

13   also say that we/I have made efforts to ensure if

14   there were rulings on other documents -- and as far

15   as I'm aware, there has been no large-scale like this

16   challenges, but if there have been rulings, if we

17   haven't appealed them, then we've included the

18   documents within the production.

19            I am only recalling, and Ms. Miller can

20   help my memory here if I'm misremembering, that there

21   has been a document that has had a court ruling in

22   the last several years, and actually -- and that's

23   one of the reasons we sought this kind of

24   coordination because it's had several court rulings,

25   including from Judge Wolfson, dealing with a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 16

1    particular topic and it keeps getting litigated over

2    and over again.  And in each instance the court has

3    upheld our assertion of work product.

4                    I note that that particular document is

5    among the ones that was put before your Honor and I

6    know that we made the point in our brief and in our

7    accompanying charts of that history with that

8    document.  But other than that, we've had a number of

9    what I would call fits and starts of challenges like

10   this.  And what I tried to do is to work with folks,

11   whether it's to follow up or others to try and

12   coordinate so we could make sure that we're not

13   hitting a scenario that your Honor is describing

14   where, you know, one court rules on this and then

15   it's still being challenged.

16                    I hope that answers your question.

17                    SPECIAL MASTER SCHNEIDER:  Well, it

18   sounds like you came on board, which is a good thing,

19   in 2017 and can make representations that after that

20   date there has been a consistency in the productions.

21   But are you confident, as to these 156, are you

22   confident in representing that they haven't been

23   produced at any time in the past in any of the other

24   litigations?

25                    MR. BERNARDO:  Yes, your Honor, I am.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 17

1    And the reason for that is that the privilege log in

2    this case was built from the prior privilege logs as

3    a starting point.  And we've made considerable

4    efforts to work with various firms that have dealt

5    with the document productions to ensure that what

6    your Honor is describing is the case.

7                    The reason I put that delineation, your

8    Honor, is I just want to be careful and make it clear

9    to the court where I come in, but as I stand/sit, I

10   guess, I'm very comfortable that these documents that

11   are on this log and at issue here have not been.

12                   Because that's one of the very things

13   we tried to do, your Honor, and that's one of the

14   things that we worked on in dealing with this and

15   narrowing it, is just to really take a very hard look

16   to make sure that something that's continuing to be

17   challenged didn't inadvertently get produced before.

18   So I'm comfortable.  I just put that delineation for

19   transparency as to when I got involved.

20                   MR. LAPINSKI:  Your Honor --

21                   SPECIAL MASTER SCHNEIDER:  One second,

22   I'll get right to you, Mr. Lapinski.

23                   Just a follow-up question.

24                   Can the same representation be made as

25   to the 1300 documents that you're making as to the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 18

1    156?  The 1300 documents on the privilege log.

2                    MR. BERNARDO:  Oh.  Oh.  I'm sorry,

3    your Honor, I was pausing to write this.

4                    Yes, I'm also comfortable with that

5    within, you know, reasonableness of making -- I'll

6    say better than best efforts to ensure that that is

7    the case.

8                    SPECIAL MASTER SCHNEIDER:  Mr.

9    Lapinski, you wanted to say something?

10                   MR. LAPINSKI:  Your Honor, I just

11   wanted to make the note that in addition to the 13 or

12   1400 documents that we're talking about on the

13   privilege log, there are also a large number of

14   documents that were produced with redactions.  And

15   we've noted that.  We noted that in our briefing,

16   that they're still the subject of meet and confers,

17   but as compared to being able to make general

18   objections in the context of the redactions, that's

19   something that has to be looked at on a

20   document-by-document basis in order to see where the

21   redaction falls in and put it in the context as to

22   whether or not it's going to be challenged.

23                   SPECIAL MASTER SCHNEIDER:  Those of you

24   who have worked together with myself in the past, and

25   Ms. Sharko knows this very well, I've said it a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 19

1    million times, I'm just not a very good poker player

2    and I just put it all on the table.  And I'm really

3    perplexed about something, and let me just explain

4    it.

5                    You know that in connection with the

6    state asbestos cases, Mr. O'Shaughnessy's being

7    deposed next week.  Some of you participated in that

8    phone call, phone calls that we had regarding the

9    logistics of that deposition.  One of the things that

10   we did and agreed to was that each side was going to

11   send a set of binders to myself of potential exhibits

12   they're going to use at O'Shaughnessy's deposition.

13   And I agreed to prepare for the deposition to look at

14   those to be prepared for any objections that have to

15   be addressed.

16                   Late last night when I got back to

17   Ventnor, I opened an email that Mr. Block had sent me

18   with the documents that he may use at the deposition

19   of Mr. O'Shaughnessy next week.  I can't identify any

20   of those documents in particular, but I can say

21   without hesitation that what perplexed me about those

22   documents is, although they weren't identical to some

23   of the documents at issue in this case, they were of

24   the same type.  And there were J&J Bates numbers on

25   some of those documents, which apparently indicates

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                   June 18, 2021

Page 20

1    that they had been produced by J&J at sometime in the

2    past in some litigation.

3              And I guess the question I have is,

4    you'll see this at O'Shaughnessy's deposition when

5    the documents that Mr. Block is going to use, they're

6    so similar to some of the documents at issue in this

7    case, how do I deal with the situation where J&J is

8    contending in this case that documents of this type

9    are privileged, but they produce documents of the

10   same type in other litigations?  And am I permitted

11   to, it's not part of the record in this case

12   obviously, am I permitted to rely on what I learned

13   from those documents that I reviewed that have

14   admittedly been produced by J&J in making a decision

15   as to the privilege issue in this case?

16             I mean one document, the first line of

17   the document says something like "here are my

18   impressions," and this was authored by Mr.

19   O'Shaughnessy.  Unless I'm missing something, it's

20   clearly unequivocally work product, but yet it was

21   produced.  So how do I deal with that?

22             Ms. Miller, you're shaking your head,

23   so let me start with you.

24             MS. MILLER:  I'd like to punt to Rich,

25   and I'll tell you why I'd like to punt to Rich and

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 21

1    I'm going to be -- I am not a poker player either, as

2    everybody on this call knows.   I am known for my

3    bluntness.

4            Rich told you we were involved, became

5    involved in 2017 and when we became involved, we

6    discovered that there had been inadvertently produced

7    documents that were privileged.   And that was,

8    frankly, one of the reasons Rich became involved.

9            And so there is a problem that we have

10   here that some privileged documents, and you're

11   exactly right, they were privileged, they were work

12   product, they unquestionably should not have been

13   produced, have been produced.   And I think Rich can

14   talk about what efforts were made and what we've done

15   about that.   And that is a problem that we have to

16   deal with.

17           MR. BERNARDO:   And, your Honor, as Ms.

18   Miller explained, my first day on this case was to

19   address a memo that parties were fighting over that

20   was so obviously privileged and work product that

21   reflected communications and mental impressions about

22   witnesses, and this was the subject of discussion

23   with Judge Wolfson.   This was the discussion of

24   much -- I forget whether it was briefing or

25   significant letter briefs, but in any event, much

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 22

1    back and forth.  And it was during that that I tried

2    to go back in time and figure out exactly

3    historically what had happened.  And, you know, as

4    best we can tell, there was human error back, you

5    know, years ago in producing things.  It wasn't a

6    matter of what was or wasn't privileged.  And what we

7    were, you know, trying to focus on was this

8    particular document and we dealt with that with Judge

9    Wolfson and she allowed us to claw it back.

10              Having said that, and it is no longer

11   in play.  Having said that --

12              SPECIAL MASTER SCHNEIDER:  Mr.

13   Bernardo, the clawback document, was it a document

14   produced in this litigation or other litigations?  In

15   this MDL or other litigations?

16              MR. BERNARDO:  Both.  It was something

17   that in -- again, what I'm trying to avoid, your

18   Honor, is taking you down into the roots too far and

19   trying to simply answer your question.  But if you

20   need more detail, let me know, I can get it.  It was

21   just the result of the fact that historically similar

22   efforts had been made to provide, you know, the same

23   materials, but it was just a little bit different in

24   terms of how the various cases were proceeding.  I'll

25   just leave it at that.  Again, I can get into more

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 23

1   detail, but I don't think it's necessary.

2                    SPECIAL MASTER SCHNEIDER:  Well, help

3   me a little bit.

4                    MR. BERNARDO:  Sure.

5                    SPECIAL MASTER SCHNEIDER:  Because the

6   issue that Judge Wolfson dealt with, I understand

7   that she did make a ruling to clawback a document in

8   this MDL, but as to the particular document you're

9   talking about, if that was produced in some state

10  litigation somewhere around the country, were there

11  separate efforts in those cases to clawback the

12  document?

13                   MR. BERNARDO:  Yes, your Honor, there

14  were.  And as far as we're aware, it was successfully

15  clawed back.

16                   The issue that Ms. Miller is alluding

17  to and we've grappled with since that time, is 2017

18  was a period of time when discovery in this

19  litigation, both in the mesothelioma cases and the

20  MDL, was, I'll say, blowing up and the idea of

21  clawing back, as you can imagine, was almost an

22  impossibility.

23                   And we also tried to look at materials,

24  and your Honor may see some of them, with an eye

25  toward -- it's been in production for all of these

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 24

1    years, can we even reasonably at this point in time

2    claw it back?  And in most instances, the material

3    that you're seeing, which we've identified over time,

4    the answer was no.  That's why they're still in the

5    production.

6                SPECIAL MASTER SCHNEIDER:  Query.

7    Again, we're not talking about the same exact

8    document.

9                After we hear from you, I want to hear

10   from the plaintiffs.

11               What do we do about the situation

12   which, in my view plainly exists, where documents of

13   the type that J&J is arguing should be privileged in

14   this case, documents of that type have already been

15   produced in the state litigation and there was no

16   effort to claw them back?  Is that somehow a waiver

17   of the privilege in this case?

18               What's J&J's position?

19               MR. BERNARDO:  So since Ms. Miller

20   punted over to me, I'm going to punt it back to her.

21               (Laughter)

22               But let me just say at a very high

23   level I want to make sure that we're being clear, and

24   Ms. Miller will explain the argument on this.

25               We addressed the very issue with Judge

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 25

1    Wolfson because there was a document that had been

2    produced.  And there was a related document, in fact

3    an attachment to this inadvertently produced

4    document, and she agreed that the inadvertent

5    production of, you know, a document did not waive the

6    privilege given the circumstances with respect to

7    this other attachment.

8                    But I just -- I'm going to turn it over

9    to Ms. Miller to explain that in more detail, but I

10   just want to point out that we have addressed this

11   issue with Judge Wolfson previously, and I'll just

12   turn it over to Jessica.

13                   SPECIAL MASTER SCHNEIDER:  Before we go

14   to Ms. Miller, are we talking about inadvertently

15   produced documents?

16                   When I think of an inadvertent

17   production, that's a mistake.  Okay?  They were

18   produced in some litigation in the past.  It doesn't

19   appear to be a mistake.  They might have -- how do we

20   know it was a mistake?  It might have been --

21                   MR. BERNARDO:  Your Honor, can I --

22                   SPECIAL MASTER SCHNEIDER:  -- someone

23   may have determined that it wasn't a privilege.

24                   You used the term inadvertent, I don't

25   know if plaintiffs are going to concede that point.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 26

```
1              MR. BERNARDO:  Your Honor, I think
2    that's fair that they might not concede that point.
3    And I'm now, I'll say, at the edge of what I feel
4    comfortable communicating on record in open court
5    with the plaintiffs.  Having said that, I would be
6    happy to provide additional information to explain to
7    you how I am as close to one hundred percent certain
8    that the inclusion of the documents that you see in
9    the production was human error, inadvertence.
10             I spent more time of my life than I'd
11   like to admit trying to understand that so that I
12   could make sure I was comfortable making the kinds of
13   representations that I just made, including like
14   literally trying to go back and retrace them.  So I'm
15   happy to provide additional information.  I feel
16   uncomfortable doing that in open court because I
17   think it would start to reveal what I would consider
18   to be work product, but I can tell you with certainty
19   that the inclusion of those things was inadvertent.
20             SPECIAL MASTER SCHNEIDER:  Ms. Miller,
21   before we get to -- we're going to get to you, Mr.
22   Lapinski, but I want to hear from Ms. Miller first.
23             Anything to add?
24             MS. MILLER:  Yes, your Honor.
25             We're sort of previewing a conversation
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 27

1    we were expecting to have with you next week.

2                    Under New Jersey law, when you have

3    inadvertent disclosure, the waiver is not a subject

4    matter waiver, it is limited to the four corners of

5    the document.  So we do not believe that the fact

6    that this unfortunate inadvertent production occurred

7    several years ago should in any way affect what

8    gets -- what your rulings are with respect to these

9    documents.  And I can give you the case cites, if

10   that's --

11                   SPECIAL MASTER SCHNEIDER:  You might as

12   well get them now, yeah.

13                   MS. MILLER:  Okay.  We were going to

14   give them to you next week.

15                   One case is D'Onofrio versus Borough of

16   Seaside Park, 2012 Westlaw, 1949854, District New

17   Jersey (2012).

18                   And another case cite is Mason versus

19   City of Atlantic, 2020 Westlaw 4355396, New Jersey

20   Superior Court, Appellate Decision July 30th, 2020.

21                   MR. LAPINSKI:  Can you read the numbers

22   in the cite again?  435 --

23                   MS. MILLER:  Yes.  4355396.

24                   I actually wanted to ask your Honor if

25   it would be okay if we could just submit, because

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

Page 28

1   there was no reply briefing, we had a list of cases

2   that we researched yesterday in response to the

3   opposition, I was wondering if we could just submit

4   that list of cases to you at the end of the day

5   today?

6                   SPECIAL MASTER SCHNEIDER:  Can we save

7   that issue for the end of today's session, whether

8   we're going to close the record or supplement the

9   record, because there may be other issues that come

10  up?

11                  MS. MILLER:  Sure.  Okay.

12                  SPECIAL MASTER SCHNEIDER:  Mr.

13  Lapinski.

14                  MR. LAPINSKI:  Yes, your Honor.  Thank

15  you.

16                  My initial response is Mr. Bernardo and

17  I agree on a second thing for today, and that is

18  plaintiffs aren't going to concede that the documents

19  that have been produced in other state courts, that

20  they should not be made available to us.

21                  SPECIAL MASTER SCHNEIDER:  I'm sorry.

22  Can you say that again?  I'm sorry.

23                  MR. LAPINSKI:  Yes.

24                  It's our position, we do not believe

25  that if a document has been previously produced in

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 29

1    state court and has not been clawed back, it is still

2    available at a particular state court litigation, our

3    position is that document is no longer a privileged

4    document and we have a right to that document here in

5    the MDL.

6                    MR. BERNARDO:  I'm sorry to interrupt,

7    but I think there has been a misinterpretation of

8    what I said, or I misspoke.

9                    You do have that and we agree with

10   that.

11                   MR. LAPINSKI:  Okay.

12                   And so further to my point on that, one

13   of the reasons that we're here in front of your Honor

14   is because in the MDL, the defendants were pushing

15   for coordination of the privilege process going on

16   amongst the various state courts and the federal

17   court, and they were doing so that there was

18   consistency, and we kind of got fast tracked on it in

19   order to start catching up with the state courts.

20                   One of the reasons for looking for that

21   consistency is, from our position, what comes along

22   with that consistency is our right to be able to have

23   access to all state court documents where a

24   determination has been made that they're not

25   privileged or the documents have been produced in the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 30

1    state court.  And I think that that is the response

2    to your inquiry, your Honor.

3                  SPECIAL MASTER SCHNEIDER:  Mr.

4    Bernardo, I understood you to say that you're on the

5    same page with that.  So that's how I understood what

6    you're saying.

7                  So my take-away from this discussion,

8    the issue is if J&J produced a document of the type

9    in state litigation that they're now claiming is

10   privileged in this litigation, not the same exact

11   document but it's a document of the same type, J&J's

12   position is that, one, the state documents were

13   inadvertently produced and that does not result in a

14   waiver of their right to object in this MDL.

15                 Did I correctly summarize, Mr.

16   Bernardo, J&J's position?

17                 MR. BERNARDO:  That is correct, your

18   Honor.  The only distinction is, and again, the point

19   of our legal position is correct, but I just want to

20   again clarify, I think there are distinctions being

21   made between state and MDL that are really no longer

22   and haven't been for years valid because it's all the

23   same document in question, at least for the last five

24   years.

25                 SPECIAL MASTER SCHNEIDER:  Okay.  One

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 31

1    other issue that perplexed me on this front is you

2    know I'm relatively new to this subject matter of

3    litigation, but at least it's my impression that this

4    litigation has been going on for years, from the

5    documents that I've reviewed it's apparent that this

6    has been a concern for a number of years, and I'm

7    just perplexed about why we're in June 2021 and we're

8    still dealing with a set of documents and whether or

9    not they're privileged or not. And I don't

10   understand why the issue is just coming to the

11   forefront now when there is such a long history of

12   this litigation. Why wasn't it previously raised and

13   decided?

14              MR. LAPINSKI: Well, your Honor, from

15   our perspective, the biggest reason is probably that

16   from the outset of the litigation, the litigation was

17   bifurcated and --

18              SPECIAL MASTER SCHNEIDER: So not

19   necessarily -- I'm sorry, not necessarily in this

20   litigation, Mr. Lapinski, but there has been state

21   litigation for umpteen years and Mr. Bernardo and Ms.

22   Miller represent that these particular documents have

23   never been produced before. Why weren't these

24   privilege issues addressed five, 10, 15, 20 years

25   ago?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 32

```
 1               Is there an answer to that question or
 2    we'll just move on?
 3               Chris?
 4               MR. PLACITELLA:  Well, your Honor, one
 5    issue is, and maybe we can pin the date down, but
 6    many of these documents were not produced at all
 7    until 2016 or 2017, so...
 8               SPECIAL MASTER SCHNEIDER:  In which
 9    litigation?
10               State or federal?
11               MR. PLACITELLA: .I believe it was in a
12    state case that Mr. Block's office handled in New
13    Jersey, but I'm not sure.  So there is a whole
14    battery of documents that no one saw, probably, you
15    know, more than five years ago.
16               MS. O'DELL:  Your Honor, if I could add
17    some color to that.
18               When the MDL started, I'd have to go
19    back and get precise numbers, but, you know, the
20    total number of documents that have been produced was
21    less than a hundred thousand is my memory.  And, in
22    fact, I think it was like 80 thousand.  And since
23    then, the volume of the production has grown
24    exponentially.
25               So to support what Chris is saying, not
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 33

1    only was that true with some of the mesothelioma

2    state court cases, it certainly was true in the MDL.

3    And as Dan mentioned, the beginning of the case was

4    focused on science only.  You know, we were targeted

5    on general causation, we were very limited in the

6    discover we could do, and it really is only at this

7    juncture that we've had the opportunity to delve into

8    the privilege log.

9                    MR. BERNARDO:  Your Honor, if I could

10   just add a little bit of color and context, which I

11   think is addressing your question.

12                   And Mr. Placitella and I don't

13   necessarily see eye to eye on the issue of when

14   things were produced, but I don't think that's worth

15   getting into here.

16                   I think it's fair to say that until

17   about 2016, 2017, the litigation was of a very

18   different nature.  There were more sort of one-off

19   cases.  They may or may not have been litigated as

20   much.  So that kind of addresses it up to 2016 and

21   '17.  And while I may not agree with plaintiffs'

22   characterization of the volume of documents produced,

23   I think your Honor raises an interesting question.

24   So, okay, let's take it at least to 2017.

25                   The documents that we're talking about

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 34

1    here have been on logs and in plaintiffs', both in

2    the MDL and in state cases, hands for, you know, the

3    logs themselves for five years.  And we have the same

4    sort of question.

5              I just wanted to give you a little bit

6    of that context.  I can't answer why they haven't

7    been pursued when the litigation has been as active

8    as it has for the last four or five years, but I

9    think that context explains a little bit why the

10   difference between pre 2016-'17, where we talked

11   about.

12             SPECIAL MASTER SCHNEIDER:  Okay.  Let's

13   move on to a different subject on a general matter

14   and another area that I think would be helpful to me

15   in addressing these issues is to get a little bit of

16   a flavor of the organization of J&J.  I really didn't

17   see that anywhere.

18             I see tons of emails with different

19   departments and different sections.  I don't know if

20   the legal department is -- is there one general legal

21   department for all the divisions, subsidiaries, et

22   cetera, or does each sub have its own legal

23   department?  And I see there is a lot of people with

24   the title of Assistant General Counsel.  To me, that

25   sounds like a pretty important position, but there is

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 35

1    so many of them, I don't know how they relate.

2                    So is it possible, Ms. Miller or Mr.

3    Bernardo, you can give me a little tutorial on the

4    organization of J&J and how the legal department fits

5    into it?  Because I've seen so many, so many

6    different departments and sections, I'm trying to put

7    all those pieces together.

8                    MR. BERNARDO:  I'm happy to see if I

9    can give you a very broad overview, your Honor.

10                   Recognizing that, as you can imagine,

11   the corporate structure changes over the years, you

12   know, there have been some nuances and changes.  But

13   at a very, very high level, your Honor is correct,

14   there is a sort of shared-services organization in

15   which the legal department sits.  And there are

16   individuals like Mr. O'Shaughnessy and like Mr. Kim

17   and like Ms. Houghton and Mr. White, and I'm sure

18   there are others, whose sole role is to oversee

19   litigation for various operating companies.  And

20   different people get assigned different products in

21   litigation.

22                   There is also other individuals, other

23   lawyers, who actually at times work for the

24   individual operating companies and provide more sort

25   of day-to-day type of legal input and oversight.  I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

                                                        Page 36

1    don't believe, I wouldn't swear, but I don't believe

2    they're really at issue in these materials, but there

3    is sort of a distinction structurally.  I mean, there

4    are other shared services, but for relevant purposes,

5    that's the way it's worked as long as I go back with

6    Johnson & Johnson, which is more than a decade.  And

7    my understanding in that more than a decade is that

8    that structure has gone back further.

9              I don't know, does that answer your

10   question?

11             SPECIAL MASTER SCHNEIDER:  Well, the

12   people that we're dealing with primarily in this

13   case, O'Shaughnessy, White, I think the woman's name

14   was Villani, or something of that sort, they're all

15   on the general corporate level and provide services

16   to all of J&J?  And are you saying they don't work

17   for a specific division or subsidiary?

18             MR. BERNARDO:  Correct.  So, for

19   example, I mean, I can state firsthand because I've

20   worked with them, Mr. O'Shaughnessy had

21   responsibility to oversee hip implant litigation.

22   And for DePuy, another operating company, as your

23   Honor has seen, he's had responsibility to oversee

24   litigation with respect to talcum powder for Johnson

25   & Johnson Consumer.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1              I know Ms. Sharko, and I'm not trying

2      to date her, she goes back farther than I and could

3      probably give you a list of other operating companies

4      for whom she has worked with Mr. O'Shaughnessy.

5              He's not an individual who has

6      responsibility with any particular company or

7      division.  I can distinguish that, and of course I'm

8      trying to come up with names and I can't, but they're

9      not in play here, I've worked with individuals in the

10     operating company who have more day-to-day

11     responsibility for providing legal advice with

12     respect to sort of the day-to-day issues in the

13     company.  But that's not what we're talking about.

14              Susan, I don't know if you have more to

15     add, because I know, again, you go back a little

16     farther than I do.

17              MS. SHARKO:  Yeah, I go back a lot

18     further than Mr. Bernardo.  And I think, Judge, it's

19     fair to say that where litigation is involved, the

20     oversight of litigation, that's done within the J&J

21     law department.  And so the lawyers within the law

22     department, going from the general counsel to what's

23     relevant here, Mr. Braunreuther to Mr. Kim and to Mr.

24     O'Shaughnessy, Mr. White, Ms. Warren, all those

25     people, their responsibility is litigation which is

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 38

1    brought against any operating company.  And the

2    operating companies, being like subsidiaries, the

3    orthopaedic company, the consumer products company,

4    et cetera.  There are other lawyers who are employed

5    directly in the operating companies and they don't --

6    they're not really at issue here.

7                SPECIAL MASTER SCHNEIDER:  There are

8    two --

9                MS. MILLER:  I'm so sorry.  If I could

10   just add one tiny caveat to everything they said.

11               Your Honor, there are a few foreign

12   attorneys involved in some of these documents, in a

13   handful of documents, and so they would have been

14   employed by foreign subsidiaries.

15               MR. BERNARDO:  Thank you, Jessica.  I

16   forgot that.

17               MS. MILLER:  There are a few lawyers,

18   yeah, like in Saudi Arabia or some of these other

19   countries.  I just wanted to clarify just because,

20   for accuracy, that they would not be employed by J&J

21   Services.

22               MS. SHARKO:  Right.

23               And then there are also regulatory

24   lawyers and patent lawyers, some of whom are at issue

25   here, and they are part of the J&J law department and

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                              June 18, 2021

Page 39

```
 1    they work across the operating companies.
 2                 So if there was a patent issue, it
 3    would go to the patent lawyer who is part of the J&J
 4    law department.
 5                 SPECIAL MASTER SCHNEIDER:  Is a
 6    regulatory lawyer different than a litigation lawyer?
 7    They're separately classified?
 8                 MS. MILLER:  Yes, your Honor.
 9                 MS. SHARKO:  I guess the short answer
10    is yes, but those two groups of people do interact
11    where advice on litigation is necessary.  And you'll
12    see some of that here.
13                 SPECIAL MASTER SCHNEIDER:  Are there
14    two J&J Corporate entities, defendants in this MDL?
15                 MS. SHARKO:  Yes.
16                 SPECIAL MASTER SCHNEIDER:  One is the
17    top of the apex, the top of the triangle, that's J&J,
18    right?
19                 MS. SHARKO:  Correct.
20                 SPECIAL MASTER SCHNEIDER:  And then
21    there is Johnson & Johnson Consumer Products?
22                 MS. SHARKO:  Yes.  And that's an
23    operating company.
24                 SPECIAL MASTER SCHNEIDER:  Okay.  Is
25    that a separate legally distinct company?
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 40

```
 1                    MS. MILLER:  Yes, your Honor.  It's a
 2     subsidiary.
 3                    SPECIAL MASTER SCHNEIDER:  Okay.  So
 4     the lawyers that are at issue in the documents that
 5     we're looking at, are they employed by J&J or the
 6     consumer company?
 7                    MS. MILLER:  They're employed by a
 8     company called J&J Services that provides services to
 9     the parent company, J&J.  None of them is employed by
10     the consumer company.  J&J CI does not have its own
11     lawyers.  There are no lawyers at the business
12     company.
13                    SPECIAL MASTER SCHNEIDER:  Okay.  What
14     is an Assistant General Counsel?  Is there more than
15     one?  Because it seems like there were so many people
16     with that title.
17                    MS. MILLER:  There are several.
18                    MS. SHARKO:  Yeah, there are several.
19     It's a series of titles as you work your way up in
20     the law department.  Just like law firms have
21     partners and senior counsel and counsel and
22     associates and senior associates, so too in the law
23     department.  And yes, there were and there are a lot
24     of people at that level.
25                    SPECIAL MASTER SCHNEIDER:  Is there a
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 41

1    hierarchy in the law department and Mr. Braunreuther.

2    I apologize for mispronouncing his name, I know he

3    was the GC, but below him was there -- like where

4    does O'Shaughnessy fit into the hierarchy?  Is he

5    like the number two or number three person or is

6    he --

7              MS. SHARKO:  Yes.  If you look at the

8    affidavit by John Kim, I think he describes this.

9    But Mr. Braunreuther was responsible generally for

10   litigation and then beneath him you have Mr. Kim, and

11   I would defer to his certification for the exact

12   words, but he's like the next in line for products

13   liability.

14              And then below Mr. Kim are kind of the

15   line lawyers, for want of a better word, that deal

16   specifically with litigation, all things litigation,

17   you know, litigation 24/7.  And that includes Mr.

18   O'Shaughnessy, Mr. White, Ms. Warren is one of the

19   people there.  And that's kind of the structure.

20              Now, within that group of people,

21   O'Shaughnessy, White, et cetera, I think there are

22   various job levels depending on seniority, et cetera,

23   but that's a rough outline of how it works.

24              SPECIAL MASTER SCHNEIDER:  I think I

25   know the answer to this question.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 42

```
1                    Is it J&J's position that people like
2      O'Shaughnessy and White only performed
3      litigation-related services?
4                    MS. MILLER:  One hundred percent.
5                    MR. BERNARDO:  Absolutely.
6                    MS. SHARKO:  Yes.
7                    SPECIAL MASTER SCHNEIDER:
8      O'Shaughnessy was on this -- I forgot the name of it,
9      but he was on this big committee, right?
10                    If you hold on a moment, I could tell
11     you the exact name.  Hold on one moment.
12                    The J&J Worldwide Talc Steering
13     Committee.  O'Shaughnessy was on that committee,
14     right?
15                    MS. MILLER:  Yes.
16                    SPECIAL MASTER SCHNEIDER:  He was on
17     that committee with it looks like Hopkins, LaBow and
18     Slivka, right?  Those four people?
19                    MS. MILLER:  Correct.
20                    SPECIAL MASTER SCHNEIDER:  All right.
21                    Is it J&J's position that his role on
22     that committee was in a litigation role?
23                    MS. MILLER:  Absolutely.  He was there
24     because of concerns that there was going to be
25     litigation.  Litigation was already starting, right,
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                  June 18, 2021

Page 43

1    about this issue and he was there to gain knowledge

2    and understand what the impact was going to be on

3    litigation.

4              Rich, please feel free to chime in.

5              But absolutely for the same reason that

6    we as outside lawyers inform ourselves about industry

7    issues, science issues, et cetera, because we need to

8    understand them in our role in litigation.

9              MR. BERNARDO:  I was going to make

10   that -- highlight that point, Jessica.  Which, your

11   Honor, just by analogy, part of mine and Ms. Miller's

12   and other outside counsels' role is at times to

13   participate in meetings and other events, whether

14   they're conferences that are not litigation, but

15   we're there to educate ourselves and inform ourselves

16   and understand the issues so that we could navigate

17   the litigation so that we could defend the litigation

18   and understand what happened there.

19              So as you point out, he was not the

20   only person there.  There were other people there who

21   were there in other capacities who have been deposed

22   many times in this case.  But certainly Mr.

23   O'Shaughnessy's role, because of what we've all been

24   explaining, was there solely in his capacity to make

25   sure that he could understand issues, understand

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 44

1    potential liability, and oversee potential

2    litigation.  Or, depending upon the time frame,

3    active litigation of this type.

4                SPECIAL MASTER SCHNEIDER:  But the work

5    of the committee, is it agreed that it wasn't solely

6    related to litigation?

7                MS. MILLER:  Absolutely.

8                We are not saying that because Mr.

9    O'Shaughnessy was sitting in that room, the work of

10   the Talc Committee suddenly becomes privileged.  We

11   have never said that.  We are not asserting that.

12   But we are saying that the reason Mr. O'Shaughnessy

13   was there was to inform his duties as a lawyer.

14               I think those are two different things.

15               SPECIAL MASTER SCHNEIDER:  So if there

16   are documents from this committee where, suppose they

17   discuss -- let me make up a hypothetical without

18   getting into a specific document -- strategies for

19   increasing sales in a particular geographic area.

20   Even though O'Shaughnessy is on the committee, would

21   J&J take the position that that document is

22   privileged because he's there in a litigation role?

23               MS. MILLER:  This is a document that's

24   sent to multiple people, in your hypothetical?

25               SPECIAL MASTER SCHNEIDER:  It's a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 45

1    project that the committee is working on.

2              MS. MILLER:   I hope nobody is angry

3    with me, but I sure wouldn't take the position that

4    that's privileged.   But can I take your hypothetical

5    a step further?

6              SPECIAL MASTER SCHNEIDER:   Sure.

7              MS. MILLER:   If Mr. O'Shaughnessy

8    emails me and says:   Jessica, something came up at

9    the conference and I'm worried it will implicate

10   litigation, or something like that, or if Mr.

11   O'Shaughnessy emails someone with a legal issue or

12   his impressions of how something that happened at the

13   meeting would implicate litigation, then a hundred

14   percent that would be privileged.

15             MR. BERNARDO:   And to add to that, your

16   Honor, because I think this goes back maybe to

17   something that you observed at the outset here, I

18   think without question you identified a number of

19   documents that were inadvertently produced.   We

20   discussed that and we passed that.   But I suspect

21   that a number of things you're also seeing support

22   what Ms. Miller is saying.

23             So, for example, just because Mr.

24   O'Shaughnessy is copied on something where nobody is

25   talking to him, nobody is asking him a question, we

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                            June 18, 2021

Page 46

1   don't take the position that that is privileged,

2   particularly like on a situation like this.  That's

3   why there are a number of documents that include him

4   on it in the production.

5            On the other hand, I don't want to

6   repeat the scenario, but if you take the scenario

7   that Ms. Miller just explained where he's speaking or

8   asking questions, then we would consider that to be

9   privileged for the very reason that you explained.

10            But I suspect that some of the ones you

11   are looking at were ones where we would agree that

12   they were not privileged simply because he was copied

13   on something.

14            SPECIAL MASTER SCHNEIDER:  Mr.

15   Lapinski, you don't have to weigh in, do you want to

16   weigh in on this O'Shaughnessy issue?

17            MR. LAPINSKI:  Yeah, your Honor, the

18   only thing I would say is I think what you're hitting

19   on is one of the issues that we're looking at.  There

20   are documents that include Mr. O'Shaughnessy and Mr.

21   O'Shaughnessy's, you know, intimately intertwined in

22   this committee.  And the defendants, as Mr. Bernardo

23   just said, defendants are taking the position that

24   anytime Mr. O'Shaughnessy comments on something, his

25   comment is coming from the perspective of wearing a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 47

1    litigation hat.  And it's our position that his role

2    went -- and comments that he made, things that he

3    did, go beyond him always wearing a litigation hat.

4              SPECIAL MASTER SCHNEIDER:  Well, that's

5    a gigantic issue, because many, many of the documents

6    in this group of 156 address that sort of conundrum.

7              And that's a good way to turn to that,

8    because let's talk about a distinct area of

9    documents, which, if it's not the biggest area, it's

10   certainly up there in the 156 having to do with

11   public notices, press releases, what have you.  And

12   as you know, there are many, many documents with

13   draft press releases, announcements, what have you,

14   and J&J is claiming that they're privileged because

15   of their in-house attorney's comments.

16             So Ms. Miller and Ms. Bernardo, let's

17   start with a question, plain vanilla hypothetical.

18   One of these consultants or an in-house consultant

19   prepares a press release and they send it to Mr.

20   O'Shaughnessy or Mr. White to review.  Those basic

21   vanilla facts.  And counsel redlines the document.

22   Are those redlines privileged?

23             MS. MILLER:  Your Honor, there is a

24   long line of case law recognizing that when you have

25   a controversy like this that -- well, so my short

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 48

1    answer is yes, but I want to make clear that we're

2    talking about a press release that has to do with

3    talc litigation and the talc controversy?

4              SPECIAL MASTER SCHNEIDER:  Yes.

5              MS. MILLER:  Okay.  So this is a press

6    release that has to do with the talc controversy and

7    the talc litigation?

8              SPECIAL MASTER SCHNEIDER:  Yes.

9              MS. MILLER:  And a lawyer is providing

10   comments on a press release that has to do with the

11   talc controversy and talc litigation?

12             SPECIAL MASTER SCHNEIDER:  Yes.

13             MS. MILLER:  Because that lawyer needs

14   to make sure that whatever J&J says about the talc

15   controversy in the talc litigation is legally

16   accurate -- is accurate, is legally accurate and is

17   not going to create any legal problems for Johnson &

18   Johnson.

19             You know, I think the case law is very,

20   very clear that that's a privileged activity.  And I

21   think the Vioxx case was very clear about that.  I

22   think, if I can give you some case law on that, if

23   you'd like, I think a very strong case on that is the

24   Washtenaw case, 2020 Westlaw 3977944.  That's a 2020

25   case.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 49

```
 1                    SPECIAL MASTER SCHNEIDER:  Ms. Miller,
 2   let me give you this hypothetical.
 3                    MS. MILLER:  Okay.  Can I --
 4                    SPECIAL MASTER SCHNEIDER:  I'm sorry,
 5   finish.  Go ahead.  Finish.
 6                    MS. MILLER:  Can I finish?
 7                    I think it's important in this context
 8   to really understand something about this litigation,
 9   if I may.  This litigation by plaintiffs has been
10   litigated substantially in the media.  I'm sure
11   you've heard about, you know, the Reuters article,
12   plaintiffs' counsel have gone to the media.  They've
13   really attacked Johnson & Johnson in the media.
14   They've pitched their case to media organizations.
15   Johnson & Johnson has had to engage in significant PR
16   to improve its reputation.  When Johnson & Johnson
17   has done that, plaintiffs have tried to go to juries,
18   they've tried to argue that these PR efforts were
19   improper.
20                    So when you have plaintiffs going into
21   court and saying that J&J's PR efforts are improper,
22   clearly the lawyer's involvement is necessary because
23   the plaintiffs are trying to use these PR efforts
24   against them.  So if there is any question ever as to
25   whether lawyers' involvement in PR is appropriate,
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 50

1   all you have to do is look at the questioning that

2   happened of Mr. Gorsky in the Barden trial, the J&J

3   CO.  The questioning that's happened, how many PR

4   people have plaintiffs tried to depose in this

5   litigation?  They have made PR the centerpiece of

6   this case.  So clearly, we need our lawyers to be

7   reviewing PR materials because plaintiffs have made

8   them a centerpiece of litigation.

9           That's all I want to say.  Sorry.

10          SPECIAL MASTER SCHNEIDER:  Let me come

11  back and ask a couple of questions.

12          I don't want to take the wind out of

13  plaintiffs' sales, but you read their brief and I

14  anticipate when Mr. Lapinski or his team argues,

15  they're going to say no, no, these press releases

16  weren't done for primarily, quote/unquote, primarily

17  for litigation purposes, they were done to make sure

18  that Johnson & Johnson's puritan image is preserved

19  and its reputation was preserved.

20          Now, if I find that a particular

21  document or comments was directed to Johnson &

22  Johnson's image, reputation rather than to influence

23  jury selection in Idaho, is that document privileged?

24          MS. MILLER:  Your Honor, whether or not

25  the press releases were done for image and reputation

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

Page 51

1    isn't the question because the press releases were

2    produced.  The drafts were produced.  It's the lawyer

3    comments that weren't produced.  The lawyer comments

4    weren't done for image and reputation.  The lawyer

5    comments were done because the lawyers needed to

6    review them to make sure that they didn't raise legal

7    issues.

8              So it's really important to understand

9    that, and we try to make this clear in our briefing,

10   that for virtually every one of these drafts there

11   are dozens of near -- and, you know, Rich told me

12   that the term "near duplicate" was too technical, but

13   when we said in our briefing near duplicates were

14   produced, what we meant was other drafts of these

15   press releases were produced.  Plaintiffs, I mean,

16   are drowning in draft press releases.  Drowning in

17   draft press releases, final press releases, redlined

18   press releases.  They have lots and lots of this

19   material.

20             What they don't have are the lawyers'

21   edits.  They have it.  So the fact that press -- and

22   I can tell you, your Honor, that in some of the cases

23   and I -- one of the hard things in sort of reading

24   Riddell and trying to understand your rulings is we

25   didn't have the documents.  But I know from other

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                        June 18, 2021

Page 52

1   cases that there have been defendants that have

2   basically said oh, we had a privilege with these

3   third party consultants, we can withhold the draft

4   press releases in full, the entire draft press

5   release is privileged.  We didn't do that here.  And

6   we tried to make that clear in our brief when we

7   showed you how many of these like APCO and all those

8   companies' documents were produced.  We didn't

9   withhold the drafts.  We just withheld when there was

10  a lawyer edit.

11            So for every single draft press

12  release, plaintiffs have similar documents, they just

13  don't have the edits.  So they have everything

14  related to image and reputation.  What they don't

15  have are the lawyers' comments.  I want to make sure

16  that's a hundred percent clear.

17            SPECIAL MASTER SCHNEIDER:  Okay.

18  Before we turn to Mr. Lapinski, let me just pose

19  essentially one more hypothetical.

20            They give Mr. O'Shaughnessy a draft

21  press release and his redline -- I'm making this up.

22  This is not true.  I'm making this up.  He has a

23  redline comment that says if you include this sort of

24  language, it violates this section of the Federal

25  Register and could subject us to sanctions.  That's a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 53

1   legal analysis, right?

2                   That's privileged, right?

3                   MS. MILLER:  Yes, sir.

4                   SPECIAL MASTER SCHNEIDER:  Okay.

5                   Suppose the draft goes to Mr.

6   O'Shaughnessy and he says, I'm making this up, I

7   think you should put Paragraph 1 -- I think you

8   should move Paragraph 1 down to Paragraph 3 and move

9   Paragraph 3 up to Paragraph 1.  Nonlegal comment.

10  Stylistic.  Is that privileged?

11                  MS. MILLER:  So I think that's a hard

12  question.  And I think the answer is hard.

13                  SPECIAL MASTER SCHNEIDER:  Well, that's

14  why I asked it.

15                  MS. MILLER:  And I think that sometimes

16  it is very difficulty to parse what is a legal

17  comment and what is not a legal comment.  And I was

18  reading yesterday the Vioxx ruling, and what the

19  Vioxx judge said in that circumstance was that if

20  something is sent to a lawyer and to other people,

21  the court tried to figure out was this mostly legal

22  advice, was it mostly business advice.  But if

23  something was just sent to a lawyer and the lawyer

24  provided comments, the court sort of deferred and

25  assumed that it was legal advice.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 54

1            So perhaps when a lawyer decides, for

2    example, an associate sends me a brief and I say move

3    this paragraph up and that paragraph down, are

4    plaintiffs now entitled to the draft of the brief

5    because I said move this paragraph up and this

6    paragraph down, are my comments no longer legal

7    comments?  No, because I said move this paragraph up

8    and that paragraph down because in my legal judgment

9    this paragraph is more important for the judge to

10   see, this paragraph improves our legal case.

11           So I think that the lawyer's legal

12   judgment may have been involved in saying that this

13   paragraph is more important, perhaps this paragraph

14   is more important from a legal perspective, he wants

15   to make sure that it's highlighted in the press

16   release.  Because, for example, some of these press

17   release are about verdicts, right, as you saw.  Some

18   of these press releases were about jury verdicts.

19   Some of them were about arbitrations.  So maybe the

20   lawyer felt, in his legal judgment, that the one

21   paragraph about the legal verdict was more important

22   from a legal perspective than another.

23           So I'm not sure that it's so easy to

24   dismiss something as stylistic when a lawyer may have

25   been saying that the emphasis from a legal

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 55

1    perspective is more important on the later paragraph.

2                   SPECIAL MASTER SCHNEIDER:  What I hear

3    you arguing, Ms. Miller, and correct me if I'm wrong,

4    is that all comments, no matter how substantive, no

5    matter how stylistic, are privileged?

6                   MS. MILLER:  I think that that probably

7    goes too far.  In other words, if it's just a -- so

8    if a lawyer just makes a spelling fix, I suppose a

9    spelling fix is not privileged.  But I think in the

10   example you gave, if there is a judgment, if it's the

11   lawyer's mental processes, for example, like I think

12   the example you gave would involve a lawyer's mental

13   processes and, therefore, would be work product.  I

14   think there should be deference to if there is some

15   legal judgment, potential legal judgment or mental

16   processes involved and something is just sent to a

17   lawyer in the height of litigation, which is where we

18   are, in a highly sensitive litigation and public

19   relations atmosphere, I think there should be

20   deference that the lawyer's comments are legal unless

21   they very clearly are not.

22                   SPECIAL MASTER SCHNEIDER:  So what if

23   the lawyer's impressions, opinions are primarily

24   directed to a business issue rather than a litigation

25   issue?  That's not privileged, is it?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 56

1          So if the purpose of a press release

2    primarily is to protect the reputation of the company

3    so that it continues to sell products -- this product

4    to mothers who use it on their children, that's the

5    primary purpose of the press release, and a lawyer

6    gives his comments, the force of that purpose, is

7    that privileged?  Wouldn't that be the business

8    purpose?

9          MS. MILLER:  In my experience reviewing

10   these press releases, I do not believe that any

11   lawyer was providing advice in order to increase the

12   likelihood that mothers would buy the product.  I

13   believe the lawyers were providing comments to ensure

14   that the person who may have been trying to encourage

15   the public that the product was safe, or whatever,

16   was doing so in a legally appropriate manner.

17          So it's hard to answer that

18   hypothetical for me because I have not seen any

19   instance where a lawyer was providing legal advice.

20   That doesn't mean that I haven't seen any instance

21   where, in the course of providing legal advice, a

22   lawyer didn't also provide a grammatical fix or a

23   spelling fix.  That's different.  But I honestly have

24   not seen a single instance where I thought a lawyer

25   was providing business advice.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 57

1           I can sitting here recall an instance

2      where a lawyer fixed a spelling, or something like

3      that.  I did not see a single instance where a lawyer

4      said oh, let's say it this way because the lawyer

5      thought saying it this way was more likely to attract

6      consumers.  It was always this is a more legally

7      accurate way to say it.  It was always from the

8      perspective of what's more a legally accurate way,

9      what is going to ensure that this does not, you know,

10     bounce back to us from, you know, from plaintiffs'

11     counsel, who parse every single word in these press

12     release, we can show you that in deposition after

13     deposition of PR people at our company.

14          SPECIAL MASTER SCHNEIDER:  Mr.

15     Lapinski, do you want to weigh in on this press

16     release/public relation consultant issue, because

17     it's certainly important in this context?

18          MR. LAPINSKI:  Yes, your Honor, I

19     would.

20          And I appreciate that Ms. Miller

21     recognizes how difficult it is to make these

22     decisions when you're not actually looking at the

23     documents, because it is very difficult.

24          To hit on a couple of points.  One of

25     the first things that Ms. Miller said was that the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 58

1    short answer is yes as it relates to privilege when

2    it has to do with talc litigation or the talc

3    controversy.  But during her argument, what she's

4    doing is she's expanding the talc litigation and the

5    talc controversy to cover anything at all that has to

6    do with talc.  And that goes too far.

7                I don't think the Steering Committee is

8    looking to take a position that says that if there is

9    a document that has to do with talc litigation and

10   there is going to be a statement by Johnson & Johnson

11   related to talc litigation, for example, responding

12   recently to the Supreme Court denial of cert in the

13   Missouri cases, and an attorney makes comments on

14   that press release that's going to relate to that

15   particular document, then yes, your Honor, I don't

16   think you would see us arguing that that's a

17   privileged document.  But when you're dealing with

18   promotional and marketing material, where the primary

19   objective of the promotional and marketing material

20   is to build up Johnson & Johnson's brand name and to

21   build up and maintain consumer loyalty, those

22   documents are not litigation documents, those

23   documents are business documents.  And the paradigm

24   has to shift as far as the review and consideration

25   to those documents.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 59

```
1              Using your examples, if you have a
2    document that is sent to John O'Shaughnessy that is
3    meant to deal with the brand and reputation of
4    Johnson & Johnson and to build up consumer loyalty
5    and to make sure mothers still purchase this product
6    in order to use this product on themselves and on
7    their children, and that document is sent to Mr.
8    O'Shaughnessy and he comes back and he says I think
9    we should move these paragraphs around, you can't
10   make the assumption that he's moving those paragraphs
11   around for purposes of litigation or for purposes of
12   giving legal advice.  It's a promotional document.
13             I think you were right on point, your
14   Honor, with the examples that you gave.  If that
15   document went to Mr. O'Shaughnessy or to another
16   attorney and the response and the redline back was if
17   you word it this way, we're going to be in violation
18   of a federal regulation, you can't do; or if you word
19   it in a particular way, it's going to impact the
20   position that we're currently taking in talc
21   litigation, so you need to change this, I'd be hard
22   pressed to try to argue that that's not legal.
23             But when it's a promotional document
24   that an attorney is weighing in on with
25   scrivener-type edits and edits that don't go into
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 60

1    legal substance, then those edits, your Honor,

2    they're not privileged and those documents are not

3    privileged.

4                   SPECIAL MASTER SCHNEIDER:  What about,

5    Mr. Lapinski, you've seen the privilege log, there

6    are draft press releases regarding the upcoming

7    Daubert decision.  So there is a draft press release

8    if the motion is granted and there is a draft press

9    release if the motion is denied, and that's given to

10   one of the assistant general counsels and there is

11   redline comments, is that privileged?

12                  MR. LAPINSKI:  So, your Honor, I can't

13   answer that question yes or no without having more

14   substance to the context.  And I'm sure that we'll

15   get to individual documents that provide more

16   substance, but I think it depends upon who's copied,

17   where in the chain the attorney is copied, what the

18   attorney's comments are, who those comments are

19   shared with.  I think all of that goes into an

20   ultimate decision as to whether or not something like

21   that should not be privileged.

22                  SPECIAL MASTER SCHNEIDER:  It's not

23   very complicated.  The email is sent to the

24   communications people, they copy the lawyer.  The

25   lawyer gets it.  And they want to hold the press

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 61

1    release in their pocket depending on what the ruling

2    is.  So that's all you need to know.  And they send a

3    copy to the assistant general counsel, we'd

4    appreciate your comments, it doesn't say we want your

5    legal analysis, it says we want your comments, is

6    that privileged?

7              MR. LAPINSKI:  I think that would

8    depend upon your definition of the quote/unquote

9    communication people.  If the communication people

10   are in-house communication people who are J&J

11   employees that are sending this document to an

12   attorney for those types of comments, then I don't

13   think that there is an issue.

14              When included in those communications

15   are third party consulting organizations that we

16   don't believe have a relationship that creates a

17   functional equivalence and you're now bringing in a

18   third party company whose primary purpose is

19   marketing and branding, then I think you're running

20   into a situation where you're waiving privilege

21   because you're bringing in a third party who has not

22   been hired as a consultant for purposes of litigation

23   and whose primary functions that they're performing

24   on behalf of the organization have nothing to do with

25   litigation.  And that's where I think it changes.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 62

1              SPECIAL MASTER SCHNEIDER:  Suppose it's

2      the outside company that drafted the two Daubert

3      press releases, one if it's granted, one if it's

4      denied, they send a copy to the in-house team, copy

5      to Mr. O'Shaughnessy.  They don't say we want your

6      legal comments, but we want your comments.  Arguably,

7      there is an implied request for legal advice, and J&J

8      cites those cases which talk about that notion.  Is

9      that privileged?

10             MR. LAPINSKI:  It's a lot more fun

11     watching Ms. Miller have to provide answers to your

12     hypotheticals.

13             (Laughter)

14             MR. LAPINSKI:  You know, I think --

15             MS. MILLER:  I'm happy to answer.

16             MR. LAPINSKI:  I think in that

17     situation, your Honor, if you have a third party

18     company who sends their draft release on Daubert

19     rulings pro or con and they send that to the

20     communications department for whom they've been

21     working and then the communications department sends

22     it to the lawyer for comment, I think that the

23     communication that was sent by the J&J employee to

24     the lawyer, if the comments are legal comments, then

25     yes, I think that that would be privileged.  But I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 63

1    think that a third party company like Purple

2    Strategies contacting directly John O'Shaughnessy and

3    saying -- or any other lawyer and saying "here is

4    some draft documents that we've put together, share

5    with us your thoughts on it," I think that there is a

6    waiver there.  That's a third party who is contacting

7    and engaging J&J counsel and that's a waiver of the

8    privilege there.

9              And, your Honor, if and when we're done

10   with this particular point, I want to be able to go

11   back to the Steering Committee discussion that was

12   part of this at the beginning.  I just want to be

13   able to post on that so Mr. Tisi can make some

14   comments.

15             SPECIAL MASTER SCHNEIDER:  Hold that

16   thought.  I don't want to go down too many rabbit

17   holes.

18             MR. LAPINSKI:  Yep.

19             SPECIAL MASTER SCHNEIDER:  There is

20   functional equivalent concept.  So as a general

21   principle, big picture, we know the case law supports

22   the notion that communications between non-lawyers

23   that assist the lawyer in rendering legal advice

24   could be protected.

25             My question, Mr. Lapinski, I'd like

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 64

1    your thoughts on this, is:  Do I necessarily have to

2    find that those third parties are quote/unquote

3    functional equivalent employees in order to find that

4    their communications for the purpose of assisting the

5    lawyer to give legal advice are protected?

6                    So throw the functional equivalent out

7    the window.  I know J&J talks about how small their

8    department is and they're essentially employees, but

9    throw that out the window.  Forget it.  Ignore it.

10   It's admitted they're not a functional equivalent.

11   Does that necessarily mean that a communication from

12   that entity can't be privileged even if it assists

13   the lawyer in rendering legal advice?

14                   MR. LAPINSKI:  Well, I think, your

15   Honor, the answer is yes, it's not privileged.  And

16   by way of example, you take the functional

17   equivalence out of it.  Let's assume I'm not a

18   practicing attorney and I'm just some guy on the

19   street and I decide to write John O'Shaughnessy and

20   say, hey, listen, I think this would be a good

21   response for you to send in a situation where there

22   is a negative Daubert ruling.  And John O'Shaughnessy

23   looks at it, makes some notes on it, changes it and

24   say, hey, this guy off the street is pretty darn good

25   at the way that he writes, I'm going to make a couple

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 65

1   changes and I think this is what we're going to go

2   with.  And he sends me a letter back and says, thank

3   you very much for what you did, I just want to show

4   you the edits I made to it and this is probably what

5   we're going to run with.  That's not privileged.

6                    SPECIAL MASTER SCHNEIDER:  Okay.

7                    So suppose you have the in-house person

8   on the communications team and they want to draft a

9   press release on the Daubert ruling and they're too

10  busy and they don't have the resources to do it and

11  they ask ABC Company, totally independent company, to

12  either draft it or work with them to prepare it.  So

13  ABC is not a functional equivalent, with the idea

14  that they're going to send it to Mr. O'Shaughnessy to

15  bless with comments and a final version.  So it's

16  clear that the ABC Company is providing information

17  to the in-house attorney for the purpose of him

18  giving legal advice, but they're not a functional

19  equivalent.

20                   Is it your position that that's not

21  privileged?

22                   MR. LAPINSKI:  I think that -- yeah, I

23  think that it may be privileged, depending upon the

24  specific context of the writing.  And if we go -- if

25  we go specifically to, you know, the Daubert ruling

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 66

1   and there is a request that someone draft something

2   in order to respond to the Daubert ruling and it's

3   being done for purposes of being able to support

4   litigation, then yes, I do think that there is

5   privilege there.

6                   I think the issue that we run into,

7   your Honor, is that the descriptions that we have in

8   the privilege log for these various types of

9   documents don't allow us to be able to say oh, this

10  is related to a Daubert hearing.  And the same

11  company who might be drafting something that's in

12  response to Daubert is also creating a website that

13  is designed in order to pitch product safety and

14  build brand loyalty and maintain company reputation

15  and we don't have any way of being able to, just by

16  looking at the privilege log, make that

17  determination.

18                   SPECIAL MASTER SCHNEIDER:  I agree with

19  you that the defendants are in a difficult position,

20  I said that at the outset, because you don't have the

21  benefit of seeing the documents.

22                   But, Ms. Miller, I guess the question

23  I'm asking is in this context is the focus -- why is

24  there such a focus on this functional equivalent

25  issue?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 67

1            Should my focus be on whether the work
2    is done to assist the provision of legal advice
3    rather than whether or not they're considered an
4    employee, a functional equivalent employee of the
5    company?
6                 What am I missing?
7            MS. MILLER:  Well, it's funny because I
8    sort of agree with you, but we're constrained by the
9    case law and all the courts look at it in the
10   functional equivalent context.
11               In that regard --
12           SPECIAL MASTER SCHNEIDER:  You know, in
13   Riddell I didn't do that.  I don't think I mentioned
14   functional equivalent in Riddell.  And I dealt with
15   that issue.
16           MS. MILLER:  My sense in Riddell, and
17   this is where I was going a few minutes ago when I
18   said it was hard without seeing the documents, but my
19   sense in Riddell was that there was this third party
20   PR firm and they tried to argue that all the
21   documents with that third party PR firm were
22   privileged, even if they hadn't been sent to lawyers,
23   as though there was this whole cloak of privilege
24   around that PR firm.  I may have been misunderstood.
25   So it seemed inapposite.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 68

1          I wanted to mention, sort of

2     tangentially related to this, that in plaintiffs'

3     briefing they cited Bristol Myers as sort of taking a

4     very narrow view of functional equivalent.  And the

5     Bristol Myers ruling has been really criticized

6     heavily within the Third Circuit.  This goes to my

7     earlier request just because I sent a list of cites

8     to you, but can I -- if I may, I wanted to identify

9     two cases that have really criticized Bristol Myers

10    and saying that courts -- and this is sort of related

11    to your idea of the functional equivalent.  Rather

12    than run away from it, courts have taken a very broad

13    view of what it means.

14          And the first case is Flonase.  And in

15    the Flonase antitrust litigation, 879 F Supp 2d 454,

16    Eastern District of Pennsylvania 2012, the court said

17    that courts in the Third Circuit have adopted a broad

18    practical approach to determining whether an

19    independent contractor is the functional equivalent

20    of an employee.  And I think that broad practical

21    approach is sort of similar to what you're saying.  I

22    think they still are using that term, functional

23    equivalent, but I think the broad practical approach

24    is similar to the idea that you're talking about now.

25          And another case that I think also is

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 69

1    sort of getting at what you're talking about is Smith
2    v Unilife.  And in Smith v Unilife, which is 2015
3    Westlaw 667432, Eastern District of Pennsylvania
4    2015, the court --
5                  SPECIAL MASTER SCHNEIDER:  I wish you
6    would cite a New Jersey case.
7                  MS. MILLER:  It's still the Third
8    Circuit.  Cherry Hill is practically Pennsylvania,
9    your Honor.
10                  SPECIAL MASTER SCHNEIDER:  In my old
11    office, I could almost see the federal courthouse in
12    Philadelphia.  But you know what, you know as well as
13    I know that that authority is not binding in New
14    Jersey.  So the notion that some decision in the
15    Third Circuit that's not from New Jersey has some
16    type of special weight, I don't go for that.  I'm
17    sorry, Ms. Miller, but I think what you're saying.
18                  MS. MILLER:  I think this quote is
19    really important nonetheless.  It says that the
20    Bristol Myers approach imposes an undue burden on
21    corporations in determining how to allocate functions
22    as to which legal advice may be appropriate.  This
23    unduly burdens the right to secure legal advice at
24    the risk of losing the attorney-client privilege.
25                  And I think that's the point you're

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 70

1    making, which is that if you take a very restrictive

2    view of the functional equivalent, it basically

3    forces a company to have to say I'm going to ask this

4    person to draft a press release rather than that

5    person to draft the press release because this person

6    is more likely to be determined a function equivalent

7    than that person.  Whereas regardless of who drafts

8    the press release, it doesn't really make it a

9    functional difference in terms of whether an attorney

10   commenting on it is legal advice or not and whether

11   that should be considered privileged.

12               So whether it's across the river,

13   whether it's Pennsylvania or whether it's New Jersey,

14   I think it is the same point that you were making a

15   few minutes ago, which is that if a company is using

16   an independent contractor in the same type of role

17   that they would be using an in-house PR person, these

18   cases suggest that Bristol Myers got it wrong and you

19   should afford privilege for the same reasons that you

20   would to a communication between a lawyer and an

21   in-house PR person.

22               SPECIAL MASTER SCHNEIDER:  Ms. Miller,

23   what is Project Fortis?

24               MS. MILLER:  So I think actually I'm

25   going to defer to Rich.  He's definitely more

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                               June 18, 2021

Page 71

1    informed about these factual issues than I am.  But

2    basically Project Fortis was an effort to address

3    some of the issues that had come up in part because

4    of the harm that was done to the J&J brand name from

5    the talc litigation in the marketplace.

6              SPECIAL MASTER SCHNEIDER:  So is that a

7    business purpose or a legal purpose?

8              MS. MILLER:  I would say it's a hybrid.

9              Rich, go ahead.

10             SPECIAL MASTER SCHNEIDER:  Which is it

11   primarily?  Would you concede it's primarily

12   business?

13             MR. BERNARDO:  Your Honor, if I could

14   just take a moment and address it.

15             So first, like many names of projects

16   at companies, they tend to get a life of their own

17   and be used for different things.  And what Ms.

18   Miller described is very, very accurate as to what

19   Project Fortis was, but it also transcended a whole

20   host of things, including, as Ms. Miller was saying,

21   dealing with issues that are arising in the

22   litigation and how to manage the company.

23             While there certainly was advice given

24   in connection with Project Fortis by people who have

25   the expertise in marketing and corporate

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 72

1    communications, that kind of business advice, to the

2    extent that it was given to lawyers, I go back to the

3    comment I made earlier about the overall structure

4    and role and responsibility.  If it was given to

5    Mr. White or Mr. O'Shaughnessy or Mr. Fitzpatten, it

6    was given for one purpose and one purpose only, to

7    get their reaction and their input as to what impact

8    that could have in the litigation.

9              And I know that, your Honor, because

10   I've defended witnesses, and I'm actually in the

11   process of preparing one for this litigation, where

12   these issues are coming up.  And these very

13   documents, these Power Points, are all being used.

14   So the fact that somebody is going to a litigation

15   counsel for advice on what does, I would agree,

16   appear to be a business document for which business

17   advice is also being sought, doesn't change the

18   nature of what that advice is.

19              And we've been talking about

20   hypotheticals, and I don't want to throw one out

21   because it's not my place, but I will sort of

22   rhetorically say:  I wonder what this conversation

23   would be like if we were parsing out what Ms. O'Dell

24   or Mr. Lapinski or Mr. Tisi communicates to their

25   clients and whether their edits are legal advice or

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 73

1    are not legal advice?  I mean I have a feeling if we

2    were to do that, we probably would be entitled to a

3    whole bunch of communications of their clients.  And

4    the fact that the tables are turned and we're simply

5    talking about a corporate defendant shouldn't really

6    change the analysis.

7                We're talking about litigation counsel

8    being consulted for their eye, their legal education,

9    as to whether something is going to create liability

10   or otherwise be misused in litigation.  It kind of

11   doesn't matter what their words are or their comments

12   are, what matters is that they're looking at it and

13   giving advice from a legal standpoint in the

14   litigation.

15               MR. LAPINSKI:  Your Honor, I was just

16   going to say that that position makes the

17   inappropriate assumption then that everything that

18   gets sent to a lawyer is sent for purposes of

19   litigation.  And that's not what the law is.  And the

20   burden is on the defendant to be able to show that

21   the document that's being withheld, they have the

22   burden to show it is privileged.

23               SPECIAL MASTER SCHNEIDER:  Mr.

24   Lapinski, is the question the purpose for which the

25   document was reviewed or the nature of the comments

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                           June 18, 2021

Page 74

1    of the attorney?

2                   So let's assume, just assume for the

3    sake of argument, that they send it to Mr.

4    O'Shaughnessy because he's in charge of talc

5    litigation and they wanted to see how it would impact

6    talc litigation, but it provides nonlegal comments.

7                   So if we just looked at the reason they

8    gave it to him in the first instance, it would be

9    privileged.  But arguably, I'm not deciding, I don't

10   know the answer yet, if you look at the comments he

11   gave, if they're non-substantive, non-legal, arguably

12   they may not be privileged.

13                  So which is it?

14               MR. LAPINSKI:  Well, I agree with your

15   Honor.  And that's the reason that in the Valsartan

16   litigation, it was stated in the Valsartan litigation

17   that the court isn't supposed to accept the

18   defendant's representations of what the document is

19   on face value.  The court has to be able to make its

20   own decision.  Because to do otherwise provides the

21   opportunity for the defendants to shelter and hide

22   every document.  Because they can send every document

23   that they want to counsel and say, "Hey, counsel,

24   please give me your comments on this."  And it may be

25   done very well knowing that the comments that are

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 75

1    going to come back are going to be comments that are

2    directed towards business issues as compared to legal

3    issues.  And the opposing party would never have the

4    opportunity to be able to find that out, because the

5    opposing party would be shut off from any type of

6    analysis like that.  And that's not what the purpose

7    of privilege is.

8               SPECIAL MASTER SCHNEIDER:  Let me just

9    say, Mr. Lapinski, I agree with what I said.

10              MR. LAPINSKI:  I was hoping you would,

11   your Honor.

12              (Laughter)

13              SPECIAL MASTER SCHNEIDER:  No, we

14   can't take at face value the litigant's

15   self-described description of something.  And that

16   goes both ways.

17              Let me just get back, because this is

18   so prevalent in the documents.  We know there is

19   publicity about talc and the verdicts that are coming

20   out.  The defendants want to make sure that their

21   side of the story gets out and not negative

22   publicity.  They draft a press release that they're

23   going to appeal this verdict and all the science is

24   against the plaintiffs and we've been studying talc

25   for X years and there is no asbestos, et cetera, et

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                  June 18, 2021

Page 76

```
 1   cetera.  And they draft that press release and they

 2   send it to Mr. O'Shaughnessy.

 3               Is that privileged?  Is that

 4   privileged?

 5               It's related to talc litigation,

 6   obviously.  In the back of the defendant's mind, I

 7   can't read their mind, but arguably they're directing

 8   it to the jury pool in the future case.  Is that a

 9   privileged document even though it touches on the

10   litigation?

11               MR. LAPINSKI:  Your Honor, I don't

12   think that I have an issue with that type of document

13   being a privileged document.  Whereas a press release

14   responds to some type of litigation result or

15   something that is pending and there are legal

16   comments that are provided even if the release goes

17   so far as to say we think our talcum powder, studies

18   show it does not cause ovarian cancer.  If that's a

19   statement that's made in response to the result of

20   the litigation, I don't think the issue is there.  I

21   think the issue is that beyond that when on Monday

22   you make that statement and then on Tuesday, separate

23   and apart from that statement, you're creating a

24   website that is designed to talk about the safety of

25   talc, the absence of asbestos in talc, that's meant
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 77

1    to improve the brand name of Johnson Baby Powder, I

2    think those two things are day and night.  And

3    anything that would be related to facts about talc

4    has to be looked at with a skewed eye for what the

5    real purpose is that it's being sent.

6                    SPECIAL MASTER SCHNEIDER:  Okay.  So

7    following up, let's get to the Daubert documents.

8                    We know that one of the documents

9    you're challenging is the draft press releases

10   regarding a prospective Daubert ruling; one, if it's

11   granted, one if it's denied.  It's related to

12   obviously talc litigation.  They send it to

13   O'Shaughnessy for comments.  Why are you challenging

14   that document?

15                   MR. LAPINSKI:  We may be challenging

16   that document and if we flip to the particular tab of

17   the Daubert one that you're talking about, I'd like

18   to be able to see it in context because I think that

19   originally the document may have been challenged

20   because in the description, I don't think the

21   original description in the privileged log said press

22   release related to and legal edits on potential

23   Daubert press releases.

24                   SPECIAL MASTER SCHNEIDER:  Ms. Miller,

25   do you know offhand know that number?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 78

1                    MS. MILLER:  Yes, your Honor.  It's 15,

2     80, 94 and 95.

3                    SPECIAL MASTER SCHNEIDER:  How about

4     the tab number, do you know offhand?

5                    MS. MILLER:  Oh, because plaintiffs

6     don't have it by tab numbers, so you want the --

7                    MR. LAPINSKI:  No, we have the tabs

8     that have the Bates numbers and that's what I'd like

9     to have so I can flip to the tab --

10                    SPECIAL MASTER SCHNEIDER:  Yeah, me

11    too.

12                    MR. LAPINSKI:  -- and be able to use

13    that in order to look at some different things.

14                    SPECIAL MASTER SCHNEIDER:  Yeah, let's

15    do that.

16                    MS. MILLER:  Those are the tab numbers

17    I just read.  It's 15, 80, 94 and 95.

18                    SPECIAL MASTER SCHNEIDER:  94 and 95.

19                    MS. MILLER:  15, 80, 94 and 95.

20                    SPECIAL MASTER SCHNEIDER:  No, I'm

21    sorry.  I'm confused.

22                    MS. MILLER:  It appears four different

23    times.

24                    SPECIAL MASTER SCHNEIDER:  Oh, okay.

25    Give me the four numbers.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 79

1                    MS. MILLER:  15, 80, 94 and 95.

2                    SPECIAL MASTER SCHNEIDER:  Okay.  Thank

3       you.  Let me pull it out.

4                    MS. MILLER:  The hypothetical was

5       missing one fact, though.

6                    SPECIAL MASTER SCHNEIDER:  Which was?

7                    MS. MILLER:  That as indicated in the

8       cover email for tab 94, which plaintiffs don't have,

9       but we indicated in our description, that an attorney

10      was one of the drafters of the press release.

11                   SPECIAL MASTER SCHNEIDER:  So what?

12                   That's part of the -- I mean -- okay,

13      it's a relevant fact, but I'm asking Mr. Lapinski if,

14      in light of what he said, it's directed to a specific

15      litigation, why is plaintiff challenging that

16      document?

17                   Yeah, 94 and 95.  Perfect.  94 would be

18      a perfect example of trying to get to the crux of

19      this.

20                   MR. LAPINSKI:  So, your Honor, I think

21      the issue would be this as you look at the Daubert

22      statement:  If you have a J&J lawyer who was making

23      an edit that says you have to change this and make it

24      a statement that there is no asbestos, I don't know

25      that -- I don't know that that's a legal as compared

schedules@mfreporting.com Mastroianni & Formaroli, Inc.        856-546-1100
                Professionals Serving Professionals

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

Page 80

1    to a scientific edit.  And to the extent that's a

2    scientific edit, the attorney's not -- the attorney's

3    the one who is not properly in a position to be able

4    to make that scientific statement.

5              You know, not all responses are going

6    to be -- not all edits are going to be legal edits.

7    Not all responses are, you know, just going to by

8    themselves be privileged.  They have to be -- they

9    have to be legal comments.

10             SPECIAL MASTER SCHNEIDER:  Okay.  Let

11   me get another document.  Hold on one moment.

12             76.

13             MR. LAPINSKI:  Should I mark down that

14   tab 15 you found in our favor, your Honor?

15             SPECIAL MASTER SCHNEIDER:  No, not yet.

16             (Laughter)

17             SPECIAL MASTER SCHNEIDER:  Tab 76.

18             This is a document about a specific

19   case drafted by one of these consultants.  And is

20   this privileged?  It was prepared by a consultant at

21   the request of an attorney.  It's directed to a

22   specific case.

23             MR. LAPINSKI:  The argument here, your

24   Honor, would be, you know, in this situation I could

25   argue that it's a third party company that is

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 81

1    involved in the drafting of it, where the third party

2    company was specifically retained by outside counsel.

3    Which if you compare G.F. Bunting being retained by a

4    law firm in order to be able to work in conjunction

5    with the law firm, I don't know that -- for tab 76

6    I'm not going to make an argument that that document

7    is a privileged document.  But I think that that

8    document serves as a good exemplar as to why, when

9    you get into other documents related to APCO, Purple

10   Strategies and Blue SJR where they are retained by

11   the J&J marketing department, their involvement in

12   drafting responses to specific cases should be looked

13   at differently.

14              SPECIAL MASTER SCHNEIDER:  Okay.

15              I think I've covered all I needed to

16   cover about the public relations publicity type

17   documents.

18              Does anyone else have any over comment

19   they want to make on it?  And then we can move on to

20   another area.  I would suggest we just take a short

21   five-minute break, maybe go to either 12:30 or 1

22   o'clock.  It looks like we're going to go long into

23   the day, so we can take a lunch break.  But I just

24   want to make sure we've heard everything we needed to

25   hear generally before we get into specific documents

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                  June 18, 2021

Page 82

1  on the PR issue.

2              MR. LAPINSKI:  So I just want to go

3  back to the Post-it Note that I had put out there

4  that we'd like to have --

5              SPECIAL MASTER SCHNEIDER:  Right.

6  Right.

7              MR. LAPINSKI:  -- comment on the

8  Steering Committee, and we can do that after our

9  five-minute break.

10             SPECIAL MASTER SCHNEIDER:  Okay.

11             MR. LAPINSKI:  The only other point

12  that I'll bring up, and we have to kind of figure it

13  out on our side, your Honor, is my youngest is

14  graduating high school today and 4:30, 5 o'clock-ish

15  I'm going to have to go in order to maintain my

16  marriage and my relationship with my daughter.

17             SPECIAL MASTER SCHNEIDER:  Well, that's

18  more important than arguing over privileged

19  documents, Mr. Lapinski.  We'll break.  If we have to

20  continue another day, we will.  But it's too

21  important not to have you present and heard.  So you

22  don't have to be concerned about that.  You tell us

23  when you need to go and --

24             MR. LAPINSKI:  And I think it very well

25  may be that someone else picks up the baton, and it's

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 83

```
 1   not really an issue, but I just wanted to put that
 2   out there that I --
 3               SPECIAL MASTER SCHNEIDER:  Well, you
 4   can do what Mr. Bernardo and Ms. Miller do and just
 5   pass off the hard questions to somebody else.
 6               (Laughter)
 7               Let's take a five-minute break and
 8   stretch our legs.
 9               (Recess is taken)
10               SPECIAL MASTER SCHNEIDER:  Mr.
11   Lapinski, we're back after a short break.
12               You wanted to discuss a particular
13   issue.  The floor is yours.
14               MR. LAPINSKI:  Yeah, what I wanted to
15   do, your Honor, is I wanted to be able to have Chris
16   Tisi discuss the Steering Committee that we had that
17   was part of the discussion earlier, the Talc Steering
18   Committee that John O'Shaughnessy was a member of.
19               SPECIAL MASTER SCHNEIDER:  Sure.
20               MR. LAPINSKI:  So if you would allow us
21   to have Mr. Tisi speak for a couple minutes.
22               MR. TISI:  Your Honor, this is Chris
23   Tisi.
24               I did want to return to your first
25   point before we got involved in discussions about
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 84

1    press releases and post litigation, you know,

2    discussion about third parties, et cetera.

3                You asked some, I think, really

4    important questions about the involvement of the

5    lawyers in some of the business of talc.  And in

6    response to one of your questions, I think it was Ms.

7    Miller who said, you know, and there was, if I can

8    characterize, some trying to put your arms around

9    what the issue was.  And the term that was settled on

10   was "the talc controversy."  Right?

11               And I think it's important to recognize

12   that the talc controversy goes back decades and deals

13   with a lot of issues that are not legal in nature.

14   Whether or not the product would be reformulated, how

15   they were going to approach different regulatory and

16   semi regulatory bodies, whether or not to add a

17   warning about talc and ovarian cancer, whether or not

18   to fund studies or to criticize studies that were out

19   there.

20               So when you use the word "talc

21   controversy," it involves a lot of different things,

22   including the presence of asbestos or not presence of

23   asbestos.

24               In response some of those business

25   issues or scientific issues, there is committees,

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 85

1   formal and informal, that were historically

2   developed.

3              At some point in the seventies and

4   eighties there was committees that had different

5   people, whose names you may have heard; Mr. Semple

6   and Mr. Ashton, et cetera.  And in the mid 1990s some

7   of these people started to retire and so there was an

8   opportunity to reformulate committees that would deal

9   with or to coordinate the overall business practices,

10  as best we were able to learn.

11             One of those was what you pointed out,

12  which was the Worldwide Talc Steering Committee.

13  Now, it's important to know that that committee was

14  not limited to a discussion of legal advice and legal

15  cases, it involved a whole spectrum of issues

16  relating to the talc controversy.  And if you don't

17  mind me -- I mean, I didn't expect to do this, but if

18  you don't mind if I share a screen for a moment.

19             Am I able to do that, your Honor?

20             SPECIAL MASTER SCHNEIDER:  Technically,

21  sure, if the person can technically do it.  But if

22  you're going to show me the document, which I don't

23  mean to take the wind out of your sails --

24             MR. TISI:  Okay.

25             SPECIAL MASTER SCHNEIDER:  -- but the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 86

```
 1    document that I had in mind was a, let me see, a

 2    September 22nd, 1993 memorandum from D.F. Jones where

 3    it says:  The objective responsibilities of the

 4    committees are, and it list one, two, three.

 5              Is that what you were going to tell me?

 6              MR. TISI:  No.  No.  What I was going

 7    to tell you was that this isn't a situation, and I

 8    think that the -- and this not only goes to documents

 9    that were held for privilege, but also goes to

10    redaction of documents that deal with certain issues.

11              But in response to one of your

12    questions or your hypotheticals, I think Ms. Miller

13    said, well, if somebody then, as a result of the

14    decision that was made by the committee, goes and

15    contacts a lawyer and says how does this impact on a

16    case or some legal issue, that would be legal advice.

17              SPECIAL MASTER SCHNEIDER:  Right.

18              MR. TISI:  But he was involved with the

19    actual process of making the decision in the first

20    instance.  And it would be our view, and the document

21    I was going to show you was a document to show the

22    membership of the committee --

23              SPECIAL MASTER SCHNEIDER:  Go ahead.

24    If you want to put it up, put it up.

25              MR. TISI:  I'll identify it by a --
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                     June 18, 2021

Page 87

```
 1                  SPECIAL MASTER SCHNEIDER:  That's why
 2    we got the professional there.
 3                  MR. TISI:  Right.
 4                  SPECIAL MASTER SCHNEIDER:  Or you're
 5    going to do it?
 6                  MR. TISI:  Yeah.  I didn't expect to
 7    have to use it.
 8                  SPECIAL MASTER SCHNEIDER:  Okay.
 9                  MR. TISI:  The document is J&J
10    00069048, if my eyes are not deceiving me.
11                  But the reason why I really wanted to
12    use this document was to demonstrate to you that the
13    lawyer was involved in a lot of issues that were not
14    in anticipation of litigation or involved in
15    litigation, it was involved in monitoring publication
16    studies, regulatory actions, to prepare and enforce
17    Johnson & Johnson's positions on policies related to
18    source, quality, manufacture of labeling, packaging
19    and sale of talc, to prepare and keep current on
20    emergency response action plans.
21                  SPECIAL MASTER SCHNEIDER:  Mr. Tisi,
22    there is no question about that.
23                  MR. TISI:  Okay.
24                  SPECIAL MASTER SCHNEIDER:  The
25    document, hold on, the document I have lists the same
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 88

1    three bullet points, so we were talking about the

2    same thing.

3                But Ms. Miller's point was, let's take

4    the first bullet point, to monitor publications.

5    Nonlegal -- I mean, generically it's a nonlegal

6    purpose, but J&J's position is the role of

7    O'Shaughnessy was to monitor publications from a

8    legal perspective.

9                Right, Ms. Miller?  That was his role.

10   He was the legal eyes and ears of the committee.  So

11   even if it was a business document generically, he

12   still had to look at it with a legal eye.  And J&J is

13   saying that's privileged.

14               What say you?

15               MR. TISI:  Are you talking to me or

16   to --

17               SPECIAL MASTER SCHNEIDER:  No, you, Mr.

18   Tisi.  What say you?

19               MR. TISI:  I would say if the committee

20   was involved primarily in making business decisions,

21   even if he's got esquire after his name, it is a

22   business decision.

23               Let me give a concrete example.  Let's

24   say the committee decided, you know, there is way too

25   many publications out there that suggest that talc

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 89

1    may cause ovarian cancer.  We think that we should

2    reformulate the product and use corn starch instead

3    of talc.  Right?  That is a business decision that is

4    being made by the company.

5              SPECIAL MASTER SCHNEIDER:  Yes.

6              MR. TISI:  So the fact that a lawyer

7    was involved in making that decision, right, doesn't

8    mean that he's rendering legal advice in anticipation

9    of litigation.  Right?

10             Same thing if they say we need to

11   consider putting a label, we need to change the label

12   to say women should not use the product, you know, if

13   their genital area.  Right?  That's a scientific

14   question.  Okay?  And the question about whether or

15   not to do that or not to do that, the extent to which

16   he was involved in making that decision or objecting

17   to that decision, to me is not a legal question, it

18   is a business question.

19             And so he's wearing two hats here.

20   He's putting on his hat as yes, his title is I am

21   a -- I am the head of litigation, but he was put on a

22   committee that was in charge of making legal --

23   excuse me, making business, scientific and other

24   kinds of decisions that I, as a lawyer, am not

25   trained to do.  I mean, that's just not what we do.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 90

1              SPECIAL MASTER SCHNEIDER:  Agreed.

2                   Now, that's another way of saying that

3       not all the documents of the committee are privileged

4       because Mr. O'Shaughnessy is a member.  J&J doesn't

5       dispute that.

6                   But, take your example, whether they

7       should put a label saying don't use it in the genital

8       area.  Mr. O'Shaughnessy, we want your comments on

9       whether or not we should include that label.  Now,

10      certainly he's not qualified to give a scientific

11      opinion, but isn't he being asked to look at it from

12      a product liability perspective?  Is this going to --

13      if we don't do it, will it expose us to product

14      liability suits?  If we do do it, what happens to the

15      people who used it before the warning change?

16      Wouldn't that be a legal analysis?

17                  MR. TISI:  I don't think so at all.

18                  If he was involved in actually making

19      the decision to put a label on a product, that is a

20      decision that is a scientific and business decision.

21      If the question was:  How does this relate to a case

22      in which he was involved, that's a separate question.

23      But if he's actually involved in the process of

24      making the decision to include a label or not include

25      a label, that is a decision that they made as a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 91

1    company that implicates public health, it implicates

2    science, it implicates all kinds of things.  And you

3    can't separate that out.  He was part of a

4    multi-disciplinary committee.

5              So I would disagree with the suggestion

6    that that would be rendering legal advice.  I'm not

7    saying in the back of his mind he's not asking the

8    question:  How does this impact on future litigation?

9    But that's not where he was.  If he's sitting in a

10   chair in a conference room actually making the

11   decision, that's a business call.

12             SPECIAL MASTER SCHNEIDER:  Suppose,

13   hypothetically, suppose the cover email to Mr.

14   O'Shaughnessy says:  Mr. O'Shaughnessy, are we

15   legally required to give the attached warning on

16   whether to use it in the genital area?  Is that

17   privileged?

18             MR. TISI:  I'd have to see what it

19   actually said in the context, but if the question was

20   we are looking at the science and we believe, as a

21   committee, okay, we need to take a vote on whether to

22   add a warning or not, that is not the rendering of

23   legal advice.

24             I don't know if I'm starting a question

25   or answering a question, but I don't think that it is

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 92

1    rendering legal advice at all.

2                    SPECIAL MASTER SCHNEIDER:  Okay.  Well,

3    I suspect J&J would disagree with that, Ms. Miller.

4                    MS. MILLER:  Your Honor, I think the

5    entire corpus of attorney-client privilege law and

6    every attorney-client privilege treatise would

7    disagree with that because basically what Mr. Tisi

8    just said is that a lawyer cannot give legal advice

9    in a business context.  And that is exactly the

10   opposite of what every single case says.  A lawyer

11   can give business advice, can give legal advice on a

12   business matter.

13                   Basically what Mr. Tisi appears to be

14   saying is that a lawyer cannot advise a client on

15   whether it should or should not add a label to a

16   product and that would basically eviscerate the

17   attorney-client privilege for corporations.  So I'm

18   hoping that's not what he meant, but if that is what

19   he meant, yes, we obviously disagree with that.

20                   MR. TISI:  He's not rendering -- if I

21   could respond.

22                   He's not being sent a note by the

23   committee saying we're thinking about taking this

24   action, what do you think?  He is involved in the

25   decision-making process about whether in the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 93

1    hypothetical that you gave to give the warning or not

2    give the warning.  And I think that's a big

3    difference.

4              MS. MILLER:  If you're sitting around a

5    room and somebody says:  So, scientists, do you think

6    it's a good idea?  The scientists' opinion come from

7    the scientists' perspective.  Hey, marketing person,

8    what do you think from the marketing person

9    perspective?  And then you say hey, lawyer, what are

10   the legal issues implicated by this warning?  Then

11   whatever the lawyer's views are, those are the

12   privileged ones.  The marketing views aren't

13   privileged.  It doesn't matter whether it's in an

14   email or whether it's in a conversation, the legal

15   opinions can't be disclosed, period.

16             MR. TISI:  Just because it comes out of

17   a lawyer's mouth doesn't make it a legal opinion.  It

18   depends on the question being asked and it depends

19   upon the answer being given, but you can't just

20   simply wave a magic wand and say it goes in a black

21   box because it went to a lawyer.

22             MS. MILLER:  Of course not, Mr. Tisi.

23   I feel like Mr. O'Shaughnessy is being set up as a

24   Superman because we all just agreed that we don't

25   know anything about marketing, we don't know anything

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 94

1    about science, but Mr. O'Shaughnessy appears to be

2    this god who you guys think knew everything about

3    science and knew everything about marketing and he's

4    this amazing human being, who even though he's just a

5    lawyer, could run this entire multi-billion dollar

6    company and could give all this advice on science and

7    marketing.

8              This guy was a lawyer.  He gave legal

9    advice, period.

10             SPECIAL MASTER SCHNEIDER:  Okay.  Mr.

11   Tisi, hold on.  Hold on.  Time out.

12             Mr. Tisi, the floor is yours.  Let's

13   hear -- we've exhausted that issue about the labels.

14   Let's hear everything you want to say about this

15   committee issue.

16             MR. TISI:  That's the only point I

17   wanted to make, is if he was involved in the

18   decision-making process that, you know, I think we

19   went down the rabbit hole of dealing with the

20   warning, but there were multiple different decisions

21   that were being made over the course of decades

22   involving this product, and not all of those

23   questions being presented were

24   anticipation-of-litigation questions.  And so I just

25   wanted to make clear that that was -- I know there

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

Page 95

1    was some discussion about it earlier and I thought

2    that factually that might be important for you to

3    consider.

4                  SPECIAL MASTER SCHNEIDER:  Okay.  Let's

5    move on.

6                  Chris, did you want to say something?

7                  MR. PLACITELLA:  The only thing I was

8    going to say, your Honor, is if the question is:

9    Does the FDA regulation require a warning under these

10   circumstances, that's probably legal advice.

11                 If the question is:  Should we do the

12   study to find out the truth and he says I don't think

13   we should do the study, that's not legal advice.  So

14   it really depends on the context of the question and

15   the answer and the information that's being conveyed.

16   That's all.

17                 SPECIAL MASTER SCHNEIDER:  Okay.  The

18   last area I'd like to cover before we break for lunch

19   is this concept of whether or not quote/unquote facts

20   are discoverable.  And as an illustration of this

21   issue, I identified tab 63, Bates stamp 953.

22                 So this is a memorandum which was

23   prepared by J&J's director of research to John

24   Beidler and another assistant general counsel.  And

25   as I read the document, it merely gives objective

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 96

1    facts regarding production.  No legal analysis, what

2    have you.

3                    Why is this privileged, Ms. Miller, Mr.

4    Bernardo, these objective, discoverable facts?

5                    MS. MILLER:  So, your Honor, this

6    document represents a factual investigation that was

7    undertaken with respect to a specific case, the case

8    is listed there at the top of the document, that was

9    undertaken at the request of counsel.  It's both -- I

10   would say this document is both attorney-client

11   privilege and work product.  It was a factual

12   investigation that was undertaken, so both for

13   discovery responses and for case workup.  This is the

14   equivalent of, to put it in perspective, if

15   plaintiffs asked their client for information about

16   her use of Johnson's Baby Powder and some of her

17   experiences with our product and plaintiff sent them

18   a bunch of materials to help with their factual

19   investigation and to help them put together discovery

20   responses, I can assure you that none of that

21   information has ever been produced to us, no

22   communications of any sort like that has ever been

23   produced to us in a single product liability

24   litigation I've ever been involved in.  So this is

25   understood certainly by plaintiffs when it's

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 97

1    something they're getting from their clients to be

2    squarely within work product and attorney-client

3    privilege.

4                    I know that plaintiffs in their

5    briefing said that the work product doctrine is

6    limited to an attorney's mental impressions.  That's

7    definitely not true.  The committee notes to Rule 26

8    makes clear that the attorney work product includes

9    materials that are put together by the party and not

10   just by the attorneys.

11                   I can read to you from the Advisory

12   Committee notes, which state that materials prepared

13   in anticipation of litigation by a party fall

14   squarely within the attorney work product.  And the

15   Third Circuit, not just the Eastern District of

16   Pennsylvania, the Third Circuit itself posited in

17   United Coal, 839 F2d 958 that the work product

18   privilege applies not only to documents reflecting

19   the attorney's mental impressions.

20                   So factual investigation materials that

21   are put together by non-attorney personnel in

22   preparation for litigation are work product.  And in

23   this case, because the factual investigation

24   materials are included in a memo that are to a

25   company lawyer, it's also attorney-client privilege.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 98

1           SPECIAL MASTER SCHNEIDER:  Let me ask a

2    follow-up question.

3           MR. BERNARDO:  I --

4           SPECIAL MASTER SCHNEIDER:  Hold on.

5           Mr. Bernardo, did you want to finish

6    that thought?

7           MR. BERNARDO:  I wanted to make one

8    additional point and to just amplify what Ms. Miller

9    is saying, but I want to be super careful here

10   because I'm trying to do this in a general way so I'm

11   not disclosing content.  There is a process, your

12   Honor, and the process is that plaintiffs in

13   litigation get to ask questions and they have to be

14   answered and sworn to truthfully.  That's how they

15   get information.  They don't ask for like the

16   lawyer's files of the underlying facts that they were

17   investigating for purposes of answering those

18   questions.  That's not our process.  And that's what

19   they're trying to do here.

20           I mean, I'm sure plaintiffs' counsel,

21   like defense counsel, do investigation, use their own

22   thought process and mental impressions to figure out

23   what they want to ask for.  And, of course, as part

24   of that you get factual information.  The

25   responsibility is to provide that through the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 99

1   appropriate mechanism, not to invade the attorney's

2   work product and not just get the final answer, but

3   get sort of what you did to investigate it.  And I

4   just want to make that clear.  And again, it's sort

5   of cryptic in trying not to provide too much

6   information.

7                    MS. MILLER:  I think what Rich might be

8   saying, if I understood it, is that not only does

9   this reflect the non-attorney's factual

10  investigation -- maybe this isn't what Rich is

11  saying, but it's an important point to make.  I think

12  what Rich is saying is that not only does this

13  reflect the non-attorney's factual investigation, but

14  it also reflects the attorney's mental processes

15  because it shows what the attorney asked the

16  non-attorney to do.  Right?  Because obviously

17  Mr. Beidler asked Mr. Jones:  Hey, can you go out and

18  get me all this information, I want it for this case.

19  And so then --

20                   SPECIAL MASTER SCHNEIDER:  How do we

21  know that?

22                   Where is the evidence that -- that gets

23  to my second part of this question about this

24  document.  And this is just representative of what

25  I've seen in a number of documents.  The plaintiffs

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1    have this statement of why this document is

2    privileged.  I have the document in front of me, I'm

3    not revealing what it says, but all it is is

4    objective production numbers.  That's it.  Clearly

5    discoverable, clearly an objective fact.  No

6    impressions, no opinions.  Okay?  That's what it is.

7                    J&J's argument:  This document is

8    protected by the privilege because it was created for

9    the purpose of gathering information in anticipation

10   of litigation.  How in the world am I able to know

11   that just from the document that's in front of me?

12                    Is J&J asking me to make that

13   assumption by just looking at the face of the

14   document?  And then your description, J&J's

15   description goes:  This document is also work

16   product, quote, because it is a document created for

17   the purpose of assisting counsel in preparing for

18   anticipated litigation.

19                    How in the world, from this document,

20   how am I able to make that conclusion?

21                    MS. MILLER:  Because --

22                    SPECIAL MASTER SCHNEIDER:  Why should I

23   accept at face value J&J's description/argument as to

24   why this is protected?  Because I just don't see it.

25                    It's a memo, it's a memo from this

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

1    gentleman, in-house counsel admittedly, but how am I

2    supposed to draw the inference, conclusion, what have

3    you, that this was, one, prepared at counsel's

4    request?  I don't know that.  Two, that this is

5    prepared for litigation purposes?  I don't know that.

6    Are you going to tell me just because that subject is

7    at the top of the memo I have to draw that

8    conclusion?  I don't know what Gambino versus J&J is.

9            So help me.  What am I supposed to do?

10           MS. MILLER:  I think, your Honor, at

11   some point if a memo says that it's about a case, I

12   don't know how -- I mean, do you think that somebody

13   faked a subject line?  I mean, that's a case that was

14   pending against J&J --

15           SPECIAL MASTER SCHNEIDER:  How do I

16   know that?  How do I know that?

17           Can you tell me where this case was

18   pending?  Is this a prospective case?  Is this a

19   possible case?  Is this an actual case?  Can you tell

20   me that?

21           MR. BERNARDO:  Yes, your Honor.

22           SPECIAL MASTER SCHNEIDER:  You can?

23           MR. BERNARDO:  Yes.

24           SPECIAL MASTER SCHNEIDER:  Well,

25   listen, maybe you know the answer.  I don't have the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1   answer.
2               MR. BERNARDO:  Your Honor, this one in
3   particular is a little challenging for the following
4   reason.  I actually don't think the conclusion that
5   you should draw is challenging, I was about to say
6   it's challenging to defend without providing some
7   additional privileged information that I'm obviously
8   not providing here.
9               If it would please your Honor, we would
10  be happy to address this a little bit further to
11  explain a little bit more information.  I just put
12  that out.
13              SPECIAL MASTER SCHNEIDER:  Okay.  Maybe
14  when we go -- we separate, we'll discuss this
15  document.  But I have the same issue with a number of
16  documents.
17              I'm asked to draw a conclusion that
18  this was prepared in anticipation of litigation or at
19  the request of a lawyer, but I don't have evidence to
20  support that.  So that's a concern of mine.
21              Chris?
22              MR. PLACITELLA:  Yes, your Honor.  I
23  don't know what the document says, but I do know
24  there was a case Gambino from the early '80s.  So I
25  don't want the court to spend a lot of time on, you

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 103

1    know, issues that --

2              SPECIAL MASTER SCHNEIDER:  Okay.

3              MR. PLACITELLA:  I'm just telling you,

4    I know there was a case.  I don't know what's in

5    there, but I'm just saying I know there was a case.

6              SPECIAL MASTER SCHNEIDER:  Okay.  So

7    it's a real case.  But even knowing that, let's

8    assume that it is true.  One, are purely objective

9    facts that are provided in a memo work product or

10   privileged?

11             Two, just because there is a case that

12   existed at one time, can I legitimately draw the

13   conclusion that this document was prepared for

14   purposes of litigation just because that's the

15   subject of it?

16             I guess the more important issue is

17   what is plaintiffs' position on whether a memo with

18   purely objective facts is discoverable even if it was

19   prepared at the request of an attorney because they

20   needed it for litigation?

21             MR. LAPINSKI:  Your Honor, I think that

22   if there is -- if there is information that's

23   prepared specifically at the request of an attorney

24   for litigation, I think that that information can be

25   work product information.  I don't think that we have

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 104

1    answers to those questions here, though.  You know,

2    even with you having the documents in front of you,

3    you're unable to draw the conclusions that we're

4    supposed to be drawing with a lot less information.

5    We don't know the purpose for which the document was

6    created.  We don't know if the document was created

7    by Mr. Jones prior to the Gambino litigation and then

8    for purposes of the Gambino litigation he took a --

9    you know, he took the information and the facts that

10   had been created for that memo, dropped it into the

11   Gambino memo and said hey, this might be useful.  We

12   don't know if it was requested or not requested.  We

13   have no -- there is nothing that allows us to be able

14   to form, on our side, our opinion that yes, this is a

15   privileged document that should not be challenged.

16            MR. PLACITELLA:  Just because there are

17   facts doesn't make it something that's automatically

18   not discoverable.  I mean, facts that go to the heart

19   of what should be -- suppose it says these are the

20   documents that are available, you know, to the

21   existence of evidence, and then the evidence isn't

22   disclosed?  I mean, the facts themselves are

23   privileged, you know, at least from my reading of the

24   law.

25            SPECIAL MASTER SCHNEIDER:  I don't

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1   think J&J disagrees with that, that if the plaintiffs

2   said to J&J we need these production statistics for

3   this particular time period that's reflected in this

4   memo, I don't think they're arguing that those facts

5   are protected.

6              MR. BERNARDO:  That's exactly right.

7              SPECIAL MASTER SCHNEIDER:  What they're

8   arguing is that this document that was, in their

9   view, prepared at the request of counsel to prepare

10  for litigation, the document is protected, not the

11  underlying facts.

12             Am I right about that, Mr. Bernardo?

13             MR. BERNARDO:  You're exactly right

14  about that, your Honor.

15             And as I said, I think there is a

16  mechanism under the rules to get those facts and the

17  mechanism is not to seek a lawyer's communication

18  with his client.  Just like I would not say to Mr.

19  Lapinski, may I have the notes that your client gave

20  you that you looked at for purposes of evaluating the

21  facts in putting together either your pursuit of his

22  case or her case or for purposes of answering

23  interrogatories.  That's what's going on here.

24             But I understand your Honor is

25  grappling with a different issue, which I know Ms.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

```
1    Miller is going to explain, which is the proof aspect
2    of it.  But we're not talking about whether facts
3    developed are discoverable or not, we're talking
4    about the process and manner in which they are
5    discovered.
6              MR. LAPINSKI:  And, your Honor, to the
7    extent that the memorandum was created as part of the
8    quote/unquote process, it would be very easy to be
9    able to produce an email that is an email that's sent
10   from John Beidler to Donald Jones that says hey,
11   Donald, can you do me a favor for the Gambino case,
12   can you put this information together and forward it
13   to me so that I can use it in support of the case?
14              (Overlapping Cross talk)
15              MR. LAPINSKI:  I'm not done yet.
16   Counsel, I'm speaking, please.
17              We've seen thousands of entries in the
18   privilege log that we have not challenged that go
19   right along those lines.  This is an example of one
20   of those situations where there is no paper trail
21   like that.  And we're being asked to rely upon the
22   assumption that this was information that was
23   requested by counsel.
24              Maybe Donald Jones is preparing a
25   memorandum because he's looking to be able to make
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 107

1   points with his boss and he wants to be able to send

2   something out that allows him to make points with his

3   boss, but within that memo he said some things that

4   are significantly against the interests of the

5   client. And when the lawyer receives it, the lawyer

6   says I didn't ask for this, you know, I don't need

7   this, I didn't want this.

8                  We don't know if that's the case, your

9   Honor.

10                 So now, Jessica, you can yell at me.

11                 MS. MILLER:  I think that the

12  speculation that's going on here is utterly absurd,

13  your Honor.  This is from 1984.  The people who wrote

14  this memo are long gone from the company.  This goes

15  back to the point in Vioxx that I think is really

16  important.  There is nothing on the face of this

17  document to suggest that it is anything other than

18  ordinary work product.  There is no suggestion of

19  anything irregular, notwithstanding Mr. Lapinski's

20  speculation and creativity here.  This is just the

21  most ordinary, boring memo I've ever seen.  Like, if

22  it weren't for the principles of attorney-client

23  privilege and attorney work product, who could care

24  less if plaintiffs had this?

25                 But, you know, we're here because we're

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1    lawyers and we believe in the law.  And it is so

2    clear from the face of this document that this is

3    material that was an investigation of information for

4    the purposes of the Gambino case.

5                    And so notwithstanding all of the

6    speculation, number one, there is no way to get a

7    declaration from these people because they're long

8    gone.

9                    And, number two, other than rank

10   speculation, there is no way to even consider any

11   possibility that this was done for any purpose other

12   than the Gambino case.

13                   Number three, even if your Honor is

14   concerned that the attorney didn't ask for this, as I

15   noted, which I think is pretty clear the attorney did

16   based on, I think, the second sentence of the memo, I

17   think the second sentence of the memo implies that

18   the attorney asked for this.

19                   But putting all that aside, it doesn't

20   even matter if the attorney asked for this because

21   under Rule 26 I think the law is clear that what a

22   client does in preparation of litigation is work

23   product.  That was the Advisory Committee notes that

24   I read earlier.  So for all those reasons, I think

25   this conversation is sort of -- I think we're

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 109

1   losing basic -- we're getting too far away from basic

2   fundamental principles of work product here.

3                   MR. TISI:  Can I say one thing?

4                   MR. LAPINSKI:  Hang on, Chris.

5                   Your Honor, the only point that I want

6   to be able to bring up in regard to what was just

7   said is if -- again, I'm not looking at the document,

8   so I have no -- nothing else to do but to speculate.

9   If we weren't speculating when we were looking at the

10  six thousand entries on the privilege log, then we

11  wouldn't be doing our job.  We have to try to figure

12  it out through speculation.

13                  If the document itself contains factual

14  information by and from people who are no longer

15  alive and we have no other way to be able to get that

16  information, then even if it is work product, we end

17  up having the right to be able to get it because it's

18  not available to us from anywhere else, that factual

19  information.

20                  So I'm just bringing that point up

21  because Ms. Miller's statement that they can't go out

22  and get declarations in order to support the facts

23  that are in there.  If it's facts that were provided

24  by people who are no longer alive and able to give us

25  those facts, we have a right to the information as

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

Page 110

1    well.

2                    SPECIAL MASTER SCHNEIDER:  Chris?

3                    MR. PLACITELLA:  So the analysis here

4    is substantial need, which is I think what Dan is

5    alluding to.

6                    SPECIAL MASTER SCHNEIDER:  Right.

7                    MR. PLACITELLA:  So if the person no

8    longer is around, is there a representation by

9    Johnson & Johnson that the facts that are in this

10   memo have been disclosed in the course of that case?

11   If they were disclosed, then an argument can be made

12   that there is no substantial need.  If, however, they

13   weren't disclosed, then there would be a substantial

14   need because obviously it was important enough to

15   make it into this memo.

16                    So I think that's actually the

17   analysis.  And the onus should be put on Johnson &

18   Johnson to represent that the facts in the memo were

19   actually disclosed in the case.

20                    MR. TISI:  And actually, your Honor,

21   not only disclosed in that case, but disclosed in

22   this case.

23                    The question is, in this case do we

24   have access to the facts that are being communicated?

25   If this is a 1994 document involving 1994 facts and

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 111

1    we can't get to it, and the only place that those
2    facts exist is in a document that was sent to the
3    lawyer, either work product privilege is, after all
4    as I learned in law school long before I lost all my
5    hair, is a qualified privilege.  It's one that can be
6    overcome by need.  We don't know what's in there, but
7    it seems like we would be -- we have made a showing
8    of that.  This is not --
9              MR. BERNARDO:  One thing Mr. Tisi --
10   well, everything Mr. Tisi says is important, of
11   course.  But one thing Mr. Tisi just said is very
12   important.
13             The other balance of work product is
14   substantial need.  What Mr. Tisi said is I don't know
15   what's in there, but I have substantial need for it.
16   That just doesn't even make common sense.
17             And again, I want to go back to what
18   Ms. Miller was just saying.  We are so -- this
19   discussion has so departed from the law, our
20   profession, the way we work as lawyers, that I can't
21   even get my arms around it.  And I will represent,
22   because it may make this moot, and I'll highlight
23   what Ms. Miller was saying when she said this is the
24   most boring document in the world, yes, these facts
25   are in there.  Plaintiffs have asked for them a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1    million times, plaintiffs have received them.  But

2    that's not what we're talking about here.  We're

3    talking about the law, we're talking about basically

4    wiping away the way lawyers and clients work.  And

5    we're talking about trying to ascertain proof of what

6    happened nearly 40 years ago that is so abundantly

7    clear from the face of the document.

8              I'm sorry to seem agitated, but I feel

9    like this discussion has so deviated from what the

10   purpose of the attorney-client privilege and work

11   product doctrines are all about, the presumption that

12   what we all do as lawyers is protected.  And there is

13   a reason for that, to foster open discourse and

14   dialogue.  And we're here trying to wipe it away by

15   saying I don't know what's in there, but I have

16   substantial need for it because it's 40 years ago.

17             MR. TISI:  That's not what I said.

18             MR. LAPINSKI:  Chris, hang on.

19             First of all, that's not what we

20   stated.

21             Our is statements were:  Based upon

22   what you provided in the privilege log, based upon

23   the supplemental information that you provided in

24   your memo, we do not have the ability to be able to

25   figure out what the purpose of the document was

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 113

1    created for.  So anything you say about this

2    departing from what case law and the legal standard

3    is, they're not questions that have come from our

4    end.  I think that they're sound questions that have

5    been presented by the court based upon Judge

6    Schneider being able to look at the document and

7    still not figure out whether it should be privileged

8    or not.

9              SPECIAL MASTER SCHNEIDER:  Okay.  Last

10   question before we break for lunch to get this behind

11   us.

12             Plaintiffs, defendants take the

13   position that, quote, meaningless non-privileged

14   portions, close quote, of emails, memos, what have

15   you, and portions of these documents that are of

16   quote/unquote no substance, don't have to be

17   produced.  It didn't appear that there is a lot of

18   this in the documents that I reviewed, but do you

19   agree with that?  Can you tell me if that's something

20   that I need to rule on?

21             I mean, I have my own opinion whether

22   these portions are of any substance, but that's a

23   little unfair because I don't know your case like you

24   do.  And I do know that what may seem insignificant

25   to the defendants may seem significant to you.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 114

1          So what's your position with regard to

2     that argument made by the defendants?

3          MR. LAPINSKI:   I think you made pretty

4     much all of my points that I was going to make, your

5     Honor.   I prefer not to have the defendants make the

6     decisions on my part for whether or not information

7     is substantive or non-substantive.

8          There is a reason that the rules

9     provide for producing documents in redacted form, so

10    that when there is privileged information, that

11    privileged information can be redacted and

12    information that is relevant to the litigation,

13    whether substantive or non-substantive, can then be

14    produced and we have the ability to be able to

15    evaluate it and make a decision as to when and how,

16    if at all, it may fit into our case.

17         There are millions of documents that

18    have been produced in this litigation and I know that

19    there is not going to be a million exhibits that are

20    going to be marked at trial.   We need to be able to

21    see this stuff, make our determination on it, and the

22    case law is not such that it doesn't get produced.

23    The case law is that it can be produced, it should be

24    produced, the document should be produced in a

25    redacted form so that we have the ability to look at

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 115

1   the non-privileged information.

2              SPECIAL MASTER SCHNEIDER:  Ms. Miller?

3              MS. MILLER:  Your Honor, I think maybe

4   plaintiffs don't fully understand that we're talking

5   about a couple documents that basically say like

6   "have a nice weekend" or "thank you."

7              MR. LAPINSKI:  So then what's the harm?

8              MS. MILLER:  That's all it is.

9              Because it's a pain in the neck to

10  start producing them in redacted form.

11             MR. LAPINSKI:  For a couple documents?

12             MS. MILLER:  Excuse me, Dan.  You asked

13  me not to interrupt you, so maybe you should also

14  teach me how not to interrupt.

15             MR. LAPINSKI:  That's a very good

16  point.  I apologize.  I apologize.  I'll just leave

17  it at that.

18             MS. MILLER:  It's a lot of work and

19  it's a lot of expense to produce redacted documents

20  and literally all we're talking about, I believe, is

21  two to three documents that either say "thank you" or

22  "have a nice weekend" and we identified case that

23  said that it was not required to do so.

24             I do believe you cited one case in

25  response, but when I went and looked at the case, I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 116

1    did not believe it stood for the proposition that you

2    have to produce documents that say "thank you" or

3    "have a nice weekend" at the top of a long email

4    chain.

5              Rich, I think you can talk better to

6    the expense involved.

7              MR. BERNARDO:  Yeah, I just want to

8    clarify one thing that Ms. Miller said.  I think she

9    was referring to the documents that happen to be at

10   issue in this particular challenge, and I think what

11   she's getting at, which is correct, is when you think

12   of the number of documents on a privilege log, I

13   mean, the judgement that's made is, is this document

14   privileged or are only portions privileged?  If only

15   portions are privileged, then it's produced in

16   redacted form, and plaintiffs have seen that.

17             But if a ten-page email is privileged

18   and the last line of it says THX, there is no reason

19   to spend the time and money, which is not just on two

20   or three documents but on thousands of documents

21   potentially, to go and make that judgment call.  So I

22   just want to point out we're not talking about a few

23   documents and the expense is significant.  And that's

24   why there is case law that says there is a point of

25   reason.  It's not a judgment call of, well, we don't

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1    think this is really relevant or anything, it's

2    something.  And we've -- Jessica, I think you've

3    demonstrated that point, we unredacted a number of

4    them just to show what we were talking about.  And

5    that's why I remembering one of them literally was

6    THX because I'm thinking the person didn't put in the

7    A and the N and the K.  So that's what we're talking

8    about.

9              SPECIAL MASTER SCHNEIDER:  Okay.  I

10    think now is a good time to break.

11              Let me just tell you my thoughts.

12    We've covered a lot of ground this morning.  Over the

13    break, I'm going to go through my notes and see if I

14    have any other generic type, big picture type

15    questions.  My gut tells me the answer is going to be

16    no, but I just want to make sure.  And then we'll

17    come back after the break and see if either side

18    wants to talk about any big picture issues.

19              And then if we get those out of the

20    way, then I'd like to turn to the particular

21    documents that I identified in the email yesterday

22    and maybe over the break you should brainstorm about

23    the best way to handle that.  I'm not quite sure what

24    the answer is.

25              One way is to go right to an in camera

1    session and discuss privileged information just with

2    J&J.  The other way is to go through each document

3    one by one, see if J&J needs to address privilege

4    information in order to address my questions.  If

5    yes, then we'll compile that list and go in camera.

6    I'm not quite sure which is the best way to do it and

7    I would appreciate your thoughts when we come back.

8              Pick a document, say 63, here are the

9    questions I have, J&J.  Maybe they can answer them

10   without revealing privileged information.  Fine.  Get

11   it out of the way.  Move on to the next document.

12   Maybe they'll say we need to go in camera.  So I

13   guess my question is should we just immediately go in

14   camera or go down one by one to find out what

15   eventually we need to separate on.

16             So give that some thought over the

17   break:

18             So it's 1:03, why don't we come back at

19   2 o'clock.

20             Mr. Lapinski, I'm looking to you to

21   tell us when you think you need to leave.  I think

22   your reason is perfectly justified, so please don't

23   run the risk of ruining your marriage for this oral

24   argument.  So we'll talk about that when we get back.

25             MR. LAPINSKI:  Thank you, your Honor.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 119

1           SPECIAL MASTER SCHNEIDER:  So we'll be

2    back at 2 o'clock.

3           MR. LAPINSKI:  Thank you.

4           (Lunch recess is taken)

5           SPECIAL MASTER SCHNEIDER:  If everyone

6    is back, I guess we can get started.

7           Theresa, let's go back on the record.

8    We're back from a lunch break.

9           I just have a couple of miscellaneous

10   questions and then I'd like to turn the floor over to

11   the parties and any general issues they want to

12   address and then get their thoughts on the best way

13   to proceed about the individual documents.

14          I don't think these questions will take

15   a lot of time.  I guess, Ms. Miller and Mr. Bernardo,

16   what's Patty Cake?  There is one document number

17   eight that refers to Patty Cake.

18          MR. BERNARDO:  You're catching me in

19   the reality, your Honor, of no matter how many times

20   I look at these documents, it's as if I've never seen

21   them and I'm forgetting that off the top of my head.

22          MR. PLACITELLA:  Does the redaction say

23   Baker's Man?

24          (Laughter)

25          MR. TISI:  He's incorrigible, your

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 120

1   Honor.

2                SPECIAL MASTER SCHNEIDER:  Materials

3   for the Patty Cake product.  What's that about?

4                MR. BERNARDO:  Jessica, I think you

5   were about to explain.

6                MS. MILLER:  My understanding was that

7   this was a competitor product that made

8   misrepresentations about our product and that this

9   document involves a draft letter written to the

10  manufacturer of that product complaining about

11  misstatements regarding our product in their

12  promotional materials.

13               SPECIAL MASTER SCHNEIDER:  So Patty

14  Cake is another talcum powder?

15               MS. MILLER:  I do not think it was

16  talcum powder.  I think it was some other product,

17  competitor non-talc product.

18               MR. PLACITELLA:  As I recall, Patty

19  Cake was a competitor product that made non-talc

20  powder and advertised that talc was unsafe.  And J&J

21  took issue with that.

22               SPECIAL MASTER SCHNEIDER:  Got it.

23               MS. MILLER:  So the document at issue

24  is a draft letter written by a J&J lawyer complaining

25  that the Patty Cake product misrepresented our

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

Page 121

```
 1   product.  And I think it was, you know, a typical
 2   letter, a cease-and-desist-type of a draft letter.
 3                SPECIAL MASTER SCHNEIDER:  The next
 4   question I had was about document number 11.  In the
 5   description it refers to a talc certificate.  What is
 6   that?
 7                MR. LAPINSKI:  So, your Honor, you went
 8   to 11?
 9                MR. BERNARDO:  Your Honor, a
10   certificate, or a COA, which is referenced later on
11   in the document is a Certificate of Analysis, which
12   is a routine testing document, probably hundreds of
13   which are in the document log.
14                SPECIAL MASTER SCHNEIDER:  So a talc
15   certificate is a certificate of analysis?
16                MR. BERNARDO:  Right.  It's not unique
17   to talc, it's just the name of the document that
18   reports the results of testing.
19                SPECIAL MASTER SCHNEIDER:  Got it.
20                Number 18 attaches photographs and I
21   guess my question is:  Why are those photographs
22   protected?  And since they're older photos from 1994,
23   would that satisfy the substantial need test?
24                MS. MILLER:  So there is no substantial
25   need test for attorney-client privilege.  That would
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                   June 18, 2021

Page 122

1    only apply to work product.

2              This document involves a trademark

3    matter where another company was infringing on the

4    J&J trademark.  I can't imagine why it would

5    possibly, even if this were work product, why

6    plaintiffs would possibly have any substantial need

7    for it.  It was a Mexican company that was creating

8    packaging that looked like J&J packaging.  And the

9    reason the photographs were privileged is that they

10   were attached to a memo that was addressing potential

11   litigation against this Mexican company that was

12   creating packaging that was similar to J&J packaging.

13   And so it was an illustration on a legal memo

14   comparing the labels to show how the Mexican label

15   was infringing upon the U.S. label.

16             SPECIAL MASTER SCHNEIDER:  Last

17   question.

18             Generally not referring to a specific

19   number, there are a number of documents providing

20   factual information to what looks like a J&J patent

21   attorney.  J&J asks to infer from that, just from the

22   provision of the letter and the letter itself, that

23   it was for the purpose of obtaining legal advice.

24             What support is there for that?

25             Can I necessarily draw that conclusion

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

Page 123

1    simply because factual information is provided to an

2    in-house patent attorney?  Is the only reason factual

3    information is provided to someone of that position

4    for legal advice?  If not, how do I determine the

5    purpose for which the information was provided

6    because there is no other background provided?

7              So let's hear J&J and then I want to

8    hear if plaintiff has a position on that.

9              MS. MILLER:  So, your Honor, I actually

10   spent some time thinking about that yesterday because

11   I noticed in that list of documents that there are a

12   lot of patent documents.

13             The first thing I wanted to tell you is

14   that most of those documents are memos to Mr. Tatlow,

15   a patent lawyer.  Unfortunately, in 2014 Mr. Tatlow

16   passed away.  So we had no ability to get an

17   affidavit from Mr. Tatlow.  So that was off the

18   table.

19             In looking at the case law, which I

20   looked at extensively yesterday, the case law, as I

21   read it, appears to suggest that when there is a memo

22   to a patent lawyer, it is assumed that the memo is

23   for purposes of obtaining patent information, of

24   obtaining patent advice.

25             I did find a case where the court said

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 124

1    it wanted to ensure that the underlying information

2    had been made available to plaintiffs in some other

3    context.

4              So last night I requested an associate,

5    a poor associate who did not get a good night of

6    sleep, to go through the production and make sure

7    that for the four patent documents that you had

8    highlighted in your email that the underlying facts

9    about the formulations and everything like that that

10   was included in those memos had been provided to

11   plaintiffs separately in the production.  And he

12   basically sent me a list of Bates numbers where that

13   information has been provided to plaintiffs in a

14   non-privileged context.  And I got that at basically

15   7 AM.

16             So what I can do, if that would

17   interest your Honor, if that would help you make a

18   determination, is we can send you, at the end of this

19   hearing, we can send you the Bates numbers showing

20   that the factual information related to the memos

21   that were sent to the patent lawyers had been

22   produced in other contexts to plaintiff.

23             And the case that gave me the idea of

24   doing that was the Rohm and Hass versus Brotec Corp.

25   case that was affirmed by the Federal Circuit at 815

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 125

1   F. Supp 793.

2                   MR. LAPINSKI:   Jessica, can I interrupt

3   you for a second?  I'm just getting a lot of

4   background noise from somewhere and I don't know

5   where.

6                   MS. MILLER:   It's probably not me

7   because I'm like the one sad person who's in the

8   office.

9                   MS. O'DELL:   I think it's someone from

10  Golkow.

11                  I think it's a technical person from

12  Golkow.  I sent them a chat.

13                  (Off-the-record discussion)

14                  MS. MILLER:   So I'm not sure where I

15  was before that, but basically in the Rohm and Haas

16  case the court said that it appears to be, you know,

17  a memo sent to counsel.  It is only addressed to

18  counsel.  There are comments of a technical nature.

19  It would be apparent that those comments of a

20  technical nature are offered tests as counsel -- in

21  counsel's work, but then the court goes on to say

22  that to the extent there is any concern that somebody

23  tried to sweep the technical data under the

24  privilege, that the party ensure that the technical

25  information had otherwise been produced.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 126

1           So that is the reason why I went to

2    this extra effort of having someone else stay up

3    (Laughter) and do the extra effort of finding other

4    documents where this information had been produced.

5    And so we can send those to you at the end of the day

6    if you would find that helpful.

7           MR. PLACITELLA:  Does the associate

8    need representation?

9           MR. BERNARDO:  I was going to say, that

10   also might explain why we got notice from that

11   associate at eight this morning.

12          (Laughter)

13          SPECIAL MASTER SCHNEIDER:  Ms. Miller,

14   I would accept your representation and proffer,

15   unless there is an objection from plaintiffs.

16          Do you want to be heard on that patent

17   issue, plaintiffs?

18          MR. LAPINSKI:  I do, your Honor.  And I

19   think the only point that I would bring up in regard

20   to that is while there were a small handful of

21   documents that were used as exemplars for purposes of

22   in camera review and ongoing meet and confers, if

23   there are other documents that fall within that silo,

24   we'd like to see, one, those privileged documents

25   identified so we know which ones they are.  And then

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                           June 18, 2021

Page 127

1    sent to you, just as is being done right now or being

2    represented will be done right now by Ms. Miller, the

3    identification of where the facts in those privileged

4    documents have been produced.

5                SPECIAL MASTER SCHNEIDER:  Ms. Miller,

6    you'll take care of that?

7                MS. MILLER:  Sure.  Anthony will be

8    thrilled to know his weekend is going to get ruined

9    too.

10               SPECIAL MASTER SCHNEIDER:  Okay.  So

11   that completes my general questions.

12               I'd like to open the floor, see if

13   anyone has any what I describe as sort of a general

14   issue that doesn't directly implicate one specific

15   document, although we can use that as an exemplar.

16   And after we complete that discussion, then I'd like

17   your thoughts on how to handle the particular

18   documents.

19               So I just want to open the floor.  Are

20   there any other issues of a general nature that

21   either the plaintiffs or the defendant want to raise

22   that haven't previously already been discussed?

23               MR. LAPINSKI:  Your Honor, on behalf of

24   the Steering Committee, I'd like to bring up an issue

25   that we can discuss.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 128

1           Going back to the beginning of the

2   call, we had talked about the number of documents

3   that were on the privilege log and the fact that the

4   defendants had committed to downgrade and produce

5   certain documents since they were no longer being

6   challenged by us because they were going to be

7   produced.

8           The defendants produced documents

9   earlier this week, but a couple issues with the

10  production.

11          One, I believe that the documents that

12  were downgraded were produced along with another

13  batch of documents being produced.  So they weren't

14  just here are the previously privileged documents

15  that are downgraded and being produced to you.  So

16  it's my understanding we kind of have to go on a

17  search now in order to find those documents.

18          The second thing is that a lot of the

19  documents that were downgraded and produced were

20  produced in redacted form and the entire document is

21  redacted.  So what we've essentially gone to is

22  downgrading that goes from a

23  no-you-can't-have-it-because-it's-privileged to

24  yes-you-can-have-it-but-you-can't-read-it-because-it'

25  s-fully-redacted.  And that's -- it's an issue

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                           June 18, 2021

Page 129

1    especially in the context of the upcoming

2    O'Shaughnessy deposition because now we have

3    documents that were downgraded that we believe relate

4    to Mr. O'Shaughnessy that are fully redacted and

5    weren't the subject of what we're talking about

6    today.

7              So what we would propose, and then I'll

8    stop talking, is we would ask that in this situation,

9    in light of the fact that we're on a pretty quick

10   schedule here with the O'Shaughnessy deposition, is

11   that we would ask that the defendants identify the

12   O'Shaughnessy documents that have been downgraded

13   and/or redacted and that they be able to present

14   those documents to you for in camera review so that

15   you have the ability to be able to review them and

16   within the context of everything we're doing here

17   today, you can make a ruling on those documents so

18   that we know for the next week or two what we're

19   dealing with.

20             SPECIAL MASTER SCHNEIDER:  Are you

21   talking, Mr. Lapinski, about the set of documents you

22   just received?

23             MR. LAPINSKI:  Yes, your Honor.

24             SPECIAL MASTER SCHNEIDER:  And what

25   you're asking is for the -- in that collection for

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 130

1    the -- of just the O'Shaughnessy documents to be sent

2    for in camera review?

3              MR. LAPINSKI:  Yes, your Honor.

4              And I think that we can also piggyback

5    on top of that some additional O'Shaughnessy

6    documents that are in the -- that have been

7    identified as redacted documents, take a step back on

8    that.

9              The redaction log that the defendants

10   have provides to us includes nothing more than a

11   beginning Bates stamp number, an end Bates stamp

12   number and a statement that the document has been

13   withheld because of privilege or because of work

14   product.  It gives us no description as to, you know,

15   what it is, why it's being withheld.  It just simply

16   states work product and/or attorney-client privilege.

17             And as we've been going through these

18   documents, we have found additional documents that

19   would relate to John O'Shaughnessy that have either

20   partial or full redactions that we'd also like to be

21   able to present to the court -- or not that we want

22   to present, that the defendants would present to the

23   court for in camera reviews so we know whether or not

24   they're going to be available to us for use in

25   deposition.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 131

1              SPECIAL MASTER SCHNEIDER:  So you all

2   know that, before we hear from Johnson & Johnson, you

3   all know that O'Shaughnessy is going to be deposed in

4   the state talc cases starting on the 22nd.  There is

5   a very good chance, in my view, that that deposition

6   is going to be carried over to the 23rd.  And it

7   remains to be seen whether it's going to carry over

8   to the 24th.

9              I know a date was set for the

10  O'Shaughnessy deposition in the MDL.  I'm looking at

11  my calendar now.  Was that scheduled to start on the

12  22nd, Mr. Lapinski?

13             MR. LAPINSKI:  Yes, I believe so, your

14  Honor.

15             MS. O'DELL:  The 29th and 30th, your

16  Honor.

17             MR. LAPINSKI:  I'm sorry, 29th and

18  30th.

19             SPECIAL MASTER SCHNEIDER:  Oh, you

20  changed it.  29th and 30th.  I'm sorry.

21             MR. LAPINSKI:  Is for the MDL.

22             MR. TISI:  With a spillover to the

23  first, if necessary, your Honor.  We don't know how

24  it's going to go and so we kind of reserved two days,

25  but a spillover to the third.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 132

1              SPECIAL MASTER SCHNEIDER:   Okay.

2              Well, what I relayed to the parties in

3    the state case, Ms. Miller and Mr. Bernardo know

4    this, is ultimately whether the dep spills over to

5    the third day really depends on how much substantive

6    testimony is taken or whether all the time is going

7    to be taken up with argument.  But other things being

8    equal, it would seem to me that two days should be

9    more than enough to take O'Shaughnessy's deposition.

10             Obviously, he's an important witness.

11   I anticipate privilege objections and that will take

12   up some time, but unless something really unusual

13   happens in terms of argument, I don't really see a

14   need for it.  If you're going to ask me to rule on it

15   for a third day, it may not apply to the plaintiffs

16   in the MDL, but what I said to Mr. Block, and

17   hopefully he's still on the phone, is if this

18   deposition is as important as you say it is, why are

19   we taking it in June 2021 instead of, you know, the

20   1990s or the 1980s or the 2010s?  So why did you

21   wait?  Why did the plaintiffs wait so long to take

22   it?  So that would be my general view if I'm asked to

23   rule on that third day.  So if I was the plaintiffs,

24   I think I would do my best to wrap it up in two days,

25   if I'm asked to rule on it.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 133

1          MR. LAPINSKI:  So, your Honor, just for

2    clarification, we weren't asking for you to make any

3    kind of ruling as to whether or not our deposition

4    can carry from a second day to a third day.  We have

5    the ability to put up an example of one of the

6    documents that I was just talking about.  The issue

7    that we have, your Honor, is that we had documents

8    that were downgraded by defendants from the privilege

9    log to the redaction log and then they were produced

10   to us this week.  And the documents that were

11   produced to us are just fully redacted, they're now

12   fully redacted documents.  So instead of being a

13   privilege document, it's now --

14          SPECIAL MASTER SCHNEIDER:  What was the

15   purpose of that?

16          MR. LAPINSKI:  I don't know.  And the

17   reason that I -- the reason that I'm asking or what

18   we're -- the reason that we're putting this on the

19   table now is in hopes that we can identify those

20   types of documents by Bates number, ask that the

21   defendants produce those to you in camera so that

22   when we do the O'Shaughnessy deposition, we have had

23   your input on those types of documents as to whether

24   or not they are privileged.

25          SPECIAL MASTER SCHNEIDER:  Here is my

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1    suggestion.

2              I'm very comfortable that I'm familiar

3    with the legal and factual issues at this point,

4    having reviewed all of these documents and having

5    studied the law in this area.  Especially, I'll

6    follow up with the additional citations that have

7    been given to me.  So I personally have no problem if

8    I get a document, ruling right away, you know, a day

9    or so, whether it's privileged or not.  I don't know

10   if I can get an opinion out in such a short time.

11   But if the parties can get the documents to me by X

12   date, I can assure you that I can rule on those

13   documents in a day or two and I can say sustained,

14   overruled, blah, blah, blah.  I just won't have time

15   to write an opinion, you know, justifying in the

16   detail I like to justify it, the basis of my ruling.

17   If that would be satisfactory, I would welcome that.

18   Because I hope, I hope that O'Shaughnessy is only

19   deposed once.

20             You know my position in this and every

21   other case I ever handled is if there is a materially

22   relevant document that should have been produced at a

23   deposition that wasn't produced, the questioner

24   should have an opportunity to follow up at another

25   deposition.  Nobody wants that.  I'd rather the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 135

```
 1   witness only be deposed once.  So let's get all the
 2   documents on the table and, you know, take your best
 3   shot.  So I'm very perfectly willing to do that.  I
 4   don't think it's a heavy lift given my familiarity
 5   with the subject matter by this time.
 6              So if you want to get a collection of
 7   documents together just for O'Shaughnessy and get it
 8   to me by X date, I can assure you I can get a ruling,
 9   you know, in a day or two before the deposition.  But
10   it won't be accompanied by a written opinion
11   justifying the ruling.  And then I guess you can
12   decide whether or not you want to abide by it.
13              MR. LAPINSKI:  And I appreciate that,
14   your Honor.  And the reason that we brought it up is
15   because we're not the ones that have the documents in
16   hand.  So we have to put it out on the table here in
17   order to get some input as to how and when you want
18   the documents produced by defendants so you can make
19   those rulings.
20              MR. BERNARDO:  Your Honor, may I
21   briefly address this?
22              SPECIAL MASTER SCHNEIDER:  Absolutely.
23              MR. BERNARDO:  There is a little bit of
24   confusion I would like to cut through, and again I
25   say all of this at the risk of going too far into the
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 136

1   weeds, so I'm going to keep it at a very high level

2   and if your Honor has questions, we can address them.

3                    What went on by way of production was

4   the defendant's way of keeping everybody around the

5   country up to date.  We've been working with

6   plaintiffs both in New Jersey and in the MDL where we

7   have more real-time and certainly made separate

8   productions to them of the privilege downgrades with

9   respect to the documents they challenged, the

10  documents we've been discussing.  I feel like we're

11  sort of recycling that process.  And I appreciate

12  that plaintiffs don't understand that, which is why

13  I'm trying to explain that.

14                    The materials, as I understand it, that

15  went out were catching everybody else up to what Mr.

16  Lapinski and his folks already have.  So we're not

17  talking about them first.

18                    I apologize, I forget the

19  circumstances, but I think the issue that he's

20  referring to with the document that was entirely

21  redacted was for a specific reason, a specific

22  request.  But I obviously can't address that as I sit

23  here right now.  I'm happy to work with them on that.

24                    And then finally, you know, to state

25  the obvious, this isn't the perfect world and while I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

Page 137

1    think it would be great to make sure we've gotten

2    each and every last document, I don't think that

3    anything that's in this production that might have

4    Mr. O'Shaughnessy's name on it has not already been

5    considered by plaintiffs.  I kind of have the

6    inability to say that with a hundred percent

7    certainty.  But we acknowledge if there is something

8    in there that after the fact comes up that somehow

9    materially would have affected the deposition, we're

10   going to have to address that.  We've made best

11   efforts to front all of that.  I'm working with Mr.

12   Tisi to further front it.  I just want to be careful

13   of not like having a paper chase here, if you will,

14   and turning this into a bigger project than it is

15   because we are dealing with a substantial number of

16   documents.

17           I just want to point out, I don't think

18   there is an issue here.  We will work with Mr.

19   Lapinski, as we have before, to try to cut through

20   that.  And in fairness to them, Mr. Tisi sent me an

21   email on this yesterday and I just did not have the

22   opportunity to write back and to address what I just

23   said, but I don't think it was an issue.

24           MS. O'DELL:  I have an example, your

25   Honor, to help illustrate this, and if you'll allow

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 138

1    me to put it up, your Honor, I'll do that.

2                    SPECIAL MASTER SCHNEIDER:  Sure.  Of

3    course.

4                    MS. O'DELL:  Let's see if this will

5    allow me to share me screen here.

6                    This is an example of a document that

7    we received yesterday.  And there was a production of

8    about -- looks like it was about 3200 documents.  And

9    of that production, about five hundred were

10   downgraded documents or privileged documents that

11   we -- some of which we had challenged and they were

12   downgraded.  So we sort of set aside our challenge

13   believing they would be produced in a reasonable way,

14   and this is what we got.  It's --

15                   MR. BERNARDO:  Leigh, I believe this is

16   one of the documents that is before Judge Schneider.

17   I don't memorize the documents, but I believe I've

18   seen this document in the last several days as one of

19   the ones in the challenge.

20                   MS. O'DELL:  Well, our point is, it was

21   taken -- we had challenged it.  It was supposedly

22   downgraded.  Now it's been, quote, produced, but it's

23   completely redacted.  And so these are some of the

24   issues that we're going to need your Honor's

25   assistance on.  And, you know, with that, just

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 139

1    showing the example, I'm happy to defer to Dan.

2                 I don't want to usurp what he was

3    saying.

4                 MR. LAPINSKI:  So, your Honor, what

5    we'd like to be able to do is have defendants provide

6    us -- I think Leigh said it was 3300 documents.  From

7    the 3300 documents that were produced, identify those

8    documents that have John O'Shaughnessy tagged on them

9    so that we can then have documents provided to you in

10   camera for you to make a decision as to whether or

11   not redactions like you just saw are, in fact,

12   appropriate and whether the information is

13   privileged.

14                SPECIAL MASTER SCHNEIDER:  Do you want,

15   Dan, the ruling before O'Shaughnessy's deposition?

16                MR. LAPINSKI:  Well, that would be

17   ideal, but I think the -- that's one of the reasons

18   that we're bringing it up now, is because we want to

19   be able to have this process expedited and want your

20   support in getting this process expedited.

21                SPECIAL MASTER SCHNEIDER:  It seems to

22   me that there is a choice here.  Whatever the parties

23   want to do is fine with me.

24                One, you could handle this sort of in

25   the non-accelerated basis, either wait for the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

Page 140

1    court's ruling, supplement the in camera documents

2    you want the court to rule on, and then I'll rule on

3    it with an opinion and with a detailed explanation.

4    With the proviso that if the issue comes before me,

5    you know how I'm going to rule if relevant material

6    documents are produced after a deposition that should

7    have been produced before.  And then if you come back

8    and say we want to depose Mr. O'Shaughnessy on these

9    additional documents we didn't have at the deposition

10   for this finite period of time without ruling on a

11   specific issue, that's going to be granted.

12            The alternative is, if you can get the

13   documents compiled and to me say by Tuesday or

14   Wednesday, I can get you a ruling in a day or two.

15   But in practical terms, it can't be accompanied by a

16   detailed opinion explaining the rulings.  It would

17   say objection sustained; objection overruled because

18   blah, blah, blah, blah, blah.  But there wouldn't be

19   an opinion on it.

20            So pick your poison.  What do you

21   prefer?  What do the defendants prefer?

22            You want to caucus on it and just let

23   me know what you want to do?

24            MR. BERNARDO:  Since no one is

25   speaking, I just wanted to give plaintiffs an

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 141

1    opportunity.  Your Honor, I just don't think what Mr.

2    Lapinski is proposing, while I would love to try to

3    work with him, is practical or reasonable to expect

4    to get done.  It's sort of, for lack of better --

5    it's like massaging it down to its finest point and I

6    don't think that can be done.

7              I'm comfortable with the nature of the

8    material and, spoiler alert, to the extent that your

9    Honor overrules any of the privilege claims that we

10   determine not to appeal, I think plaintiffs are going

11   to be very disappointed, as Ms. Miller said, some of

12   this is particularly boring stuff.  I wish that were

13   the standard because if the standard were we don't

14   care about it, we probably would save an awful lot of

15   time.  Unfortunately, that's not the legal standard.

16   So we have to assert attorney-client privilege.

17             SPECIAL MASTER SCHNEIDER:  You know, I

18   don't necessarily disagree with you.  I'm not

19   immersed in this litigation like you are.

20             MR. BERNARDO:  Of course.

21             SPECIAL MASTER SCHNEIDER:  And I'm not

22   ruling on proportionality and relevance, but if I

23   was, as to some of the documents, not all of them,

24   some of the documents, you know, my favorite

25   expression is, is the juice worth the squeeze.  But I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                     June 18, 2021

Page 142

1    understand plaintiffs' position, they don't know

2    what's in the documents.

3               MR. BERNARDO:  And I do as well, your

4    Honor.  I'm just simply -- since the Zoom was silent,

5    I thought I would at least communicate defendant's

6    position, which is we think it's appropriate to

7    proceed with Mr. O'Shaughnessy's deposition with the

8    record as we have it and with the documents that are

9    before your Honor.  We are the ones and Mr.

10   O'Shaughnessy are the ones who are assuming a

11   significant risk here, I suppose, because your Honor

12   may disagree and say no, I think this is material and

13   he needs to come back.  We don't think that would be

14   the case.  I'm just trying to weigh that, your Honor,

15   against the practical reality.  And I'm not being at

16   all critical of plaintiffs or us, but as your Honor

17   saw, this whole process, because we're working

18   remotely, has been very, very difficult.  Plaintiffs

19   lists are replete with duplications and

20   misunderstanding of documents.

21               Our lists and the material we're

22   sending you, because we're printing remotely, are

23   things that don't have traction.  This is a much more

24   complicated process from a logistics standpoint than

25   it ordinarily would be.  And I'm just trying to be

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 143

1   realistic in my years of experience dealing with this

2   as to what can and cannot be reasonably accomplished

3   in advance of the deposition.  And from the

4   defendant's perspective, again, happy if there is a

5   couple of documents to work with Mr. Lapinski, but I

6   just don't think we can achieve the level of

7   perfection that's being sought in advance.  So that's

8   the defendant's position.

9              MS. MILLER:  I would just also add that

10  we've been on the screen for several hours, we have

11  several hours left to go.  I would like to think that

12  what we're doing is productive.  And so whatever

13  these other documents are, there are probably

14  productive discussions to be had about them that

15  wouldn't be had.  So I'm not sure that it would be a

16  fulsome review if you're not able to ask questions or

17  follow up.  They may raise other legal issues that we

18  haven't had an opportunity to really air.  So I think

19  that's a concern as well.

20              I think --

21             SPECIAL MASTER SCHNEIDER:  I don't

22  really see, Mr. Lapinski, I understand the

23  practicalities of the situation, but I don't really

24  see how plaintiffs are going to be prejudiced.  There

25  is a robust record of O'Shaughnessy documents,

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

1   clearly.  And how many times can I say it?  You're

2   not going to be prejudiced if materially relevant

3   documents have to be produced after the deposition

4   that you didn't have before the deposition.

5            Yes, there are documents that, in my

6   view, without knowing the history of the case, aren't

7   terribly important, but there are some documents that

8   do look important and if I was in your shoes I would

9   want to see.  I don't know how I'm going to rule on

10  that, but you can be assured if the issue comes

11  before me and that those important documents are

12  produced afterwards, and you say, judge, protect our

13  interests, we think we need a finite time to redepose

14  O'Shaughnessy, if I had to rule on the issue, you

15  know how I'm going to rule.  I don't think either

16  side should be prejudiced.  That's just my general

17  feeling, Mr. Lapinski.

18            I guess I would defer to J&J on this

19  issue because, they're right, there are so many

20  logistics that are going to go into Mr.

21  O'Shaughnessy's deposition, to add on to that

22  reviewing another set of in camera documents, it's

23  going to be done if that's what the parties want to

24  do, but certainly would add to the problematic nature

25  of the logistics.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 145

1              MR. BERNARDO:  Besides, your Honor, for

2      the selfish reason I can't afford to lose two more

3      associates.

4              (Laughter)

5              MR. LAPINSKI:  You know, from the

6      plaintiffs' perspective, we always have the

7      anticipation that we're going to find a document that

8      says I ordered the code red.  And, you know,

9      hopefully we'll come across it.  I appreciate your

10     position and what you've had to say and we'll work

11     with counsel in coming up with something that

12     effectively bring us to have this issue addressed.

13     And if we get additional documents that are relevant

14     and feel that we should have the right to be able to

15     go back and re-notice a deposition of John

16     O'Shaughnessy, then we'll be in touch with you about

17     that.

18             SPECIAL MASTER SCHNEIDER:  You won't be

19     prejudiced, Mr. Lapinski.

20             MR. LAPINSKI:  Thank you very much,

21     your Honor.

22             SPECIAL MASTER SCHNEIDER:  Are there

23     any other general issues?

24             MR. LAPINSKI:  Well, you know, I think

25     kind of to build a little bit on something that Ms.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

1    Miller brought up, and it goes with argument that

2    we've been having here and how argument that we're

3    having here may pertain to other documents that

4    weren't put in front of the court, we wanted to kind

5    of have a discussion as to a process for being able

6    to apply decisions that are made by you today to the

7    various silos of documents that we might be dealing

8    with that are similar to documents that you ruled

9    upon today and that have been put before you.

10           SPECIAL MASTER SCHNEIDER:  Well, here

11   is my suggestion, just thinking off the top of my

12   head.  I'm going to do my best when I rule in

13   writing, if it's feasible, to give directions on how

14   to apply it to the other set of documents.  So for

15   example, like I did in -- I can't remember the name

16   of the case.  It was a big business dispute.  I had

17   to rule on seven categories and I said documents --

18   training documents of this sort have to be produced.

19   So I'll try to do that.

20                There may be instances in this case

21   where, and this troubles me but these are the facts

22   of life, where I may say that J&J hasn't produced

23   sufficient information to satisfy its burden of proof

24   on the privilege and work product issue.  That sort

25   of ruling is a stand-alone ruling and it really can't

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1    apply to any other document.

2              MR. LAPINSKI:  Right.

3              SPECIAL MASTER SCHNEIDER:  I hope to

4    avoid that, but it may be inevitable.  A lot will

5    depend on when we separate what J&J tells me, because

6    you can sense I have a concern about justification

7    for some of the claims that they're making.  And if

8    they can't justify them, it means they haven't

9    satisfied their burden and the documents get

10   produced.  That isn't a great precedent for the other

11   sets of documents, but as to, for example, the press

12   releases, if I say -- I don't know how I'm going to

13   rule, but, you know, it's implicit that they give

14   legal advice and blah, blah, blah, all the attorney

15   comments on the press releases are privileged, don't

16   have to be produced, that gives J&J direction what to

17   do with the other documents.  Right?  So maybe we'll

18   have a reasonable time frame after the ruling comes

19   out where you identify any additional documents you

20   want to review, meet and confer, and then we can go

21   through the same process again, although we won't

22   need additional briefing as to the legal issues.  I

23   don't know if that helps.

24             MR. LAPINSKI:  Chris, do you have

25   anything you want to weigh on with that, or weigh in

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1    on with that?

2              MR. PLACITELLA:  I mean I don't.  I

3    think this is a decision for Johnson & Johnson on how

4    they want to proceed.  We flagged the issue and

5    that's fine.

6              MR. LAPINSKI:  Your Honor, the next

7    thing that you had asked about was what our thoughts

8    were on the best way to proceed this afternoon and as

9    we're here.

10             SPECIAL MASTER SCHNEIDER:  Yes.

11             MR. LAPINSKI:  I have confirmed that I

12   need to have my exit strategy so that I'm out of here

13   at 4 o'clock.  So that leaves us an hour and 15

14   minutes.  And what I would propose is that maybe we

15   go through some individual documents.  It will kind

16   of start to give us a flavor as to how these

17   documents are going to be handled.  That might allow

18   us to check some additional documents off that will

19   not have to be addressed at a future time.  And then

20   at 4 o'clock, you know, if you want to have in camera

21   conversations with counsel for J&J at that time, then

22   maybe that's the best use of all of our time.  And

23   again, I apologize.  My daughter's graduation was

24   just recently switched to in-person as compared to

25   any type of virtual or other graduation at all, so I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 149

1    apologize for that.

2                   MR. PLACITELLA:  Well, I think it's

3    important that we have a ruling from a federal judge

4    that you were allowed permission to go to your

5    daughter's graduation.  You can use that going

6    forward.

7                   (Laughter)

8                   SPECIAL MASTER SCHNEIDER:  So ordered.

9                   Well, let's start and we'll see how far

10   we get.

11                  MS. MILLER:  Your Honor, just briefly,

12   may I say one quick thing?

13                  SPECIAL MASTER SCHNEIDER:  Of course,

14   Ms. Miller.

15                  MS. MILLER:  Leigh O'Dell, the document

16   that you put up on the screen is tab 99 in this

17   review.  I am not sure why you got a redacted

18   version.  I have asked an associate what's going on

19   and I'm trying to figure that out, but it is in the

20   court's current review pile.  It is tab 99.

21                  MR. BERNARDO:  Actually, I believe it's

22   also in another tab because I think you --

23                  MS. MILLER:  It's at least.  How's

24   that, Rich, it's at least tab 99.

25                  MR. BERNARDO:  That's why I recognize

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 150

```
 1    the document, because I've seen it so many times in

 2    the binder that we sent to Judge Schneider.

 3              SPECIAL MASTER SCHNEIDER:  That was one

 4    of the documents that I had questions about as well.

 5              So let's then go down individual

 6    documents.  Let's see how it goes and play it by ear.

 7              Why don't we start with number eight.

 8              Number seven, I'm going to skip because

 9    we -- wait a minute.  Wait a minute.  Yeah, number

10    eight, because number seven we received a supplement

11    which answered my question.

12              Number eight.  This is the Patty Cake

13    document.

14              Okay?

15              Draft letter written by the in-house

16    counsel.

17              Mr. Bernardo, you described this as an

18    in-house -- I'm sorry, a cease and desist letter.

19    Why is this privileged?  I mean, it was designed to

20    be sent to a third party.  I don't even know if this

21    is the final version of the letter.

22              It says it's privileged because it

23    concerns matters that are the subject of or could

24    become the subject of litigation.  Is that the

25    standard for privilege?
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

1           MR. BERNARDO:  First, your Honor, I

2    just want to make one clarification and one point and

3    then I'm going to turn it over to Ms. Miller.

4              The clarification, I think she refers

5    to the cease and desist comment, is characterizing

6    it, but I do want to point out, which is stated in

7    the description of it, by analogy, your Honor.  So I

8    write a draft letter to my client for them to send

9    out because they ask me as a lawyer to put something

10   together reflecting my legal advice and input as to

11   the best way for that letter to go out.  The fact

12   that a letter was actually sent, which wouldn't

13   itself be privileged, the final letter, doesn't make

14   the final letter privileged, but it certainly makes

15   my draft as a lawyer privileged.

16             But I'm going to turn it over to Ms.

17   Miller, who may have --

18             SPECIAL MASTER SCHNEIDER:  Was the

19   final version of this letter produced?

20             Was it sent?

21             MR. BERNARDO:  Give me one moment, your

22   Honor.

23             Oh, I think that's part of the issue

24   with this document, is it's unclear if it was.  And a

25   decision may have been made for legal reasons not to

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 152

1    send this letter out.  And for the very reason why,

2    and everybody on this Zoom has probably written

3    drafts of letters and decided they're not going to do

4    that, the fact that it was or wasn't sent doesn't --

5              SPECIAL MASTER SCHNEIDER:  Yeah, but

6    I'm not sure that's really fair, Mr. Bernardo,

7    because it's J&J's burden of proof.  I know it's a

8    1999 document, but I don't think it's really fair to

9    say, well, we don't know if it was sent or not, so

10   assume it wasn't sent and, therefore, it's

11   privileged.  I'm not sure that's fair.

12             MS. MILLER:  I don't think that's what

13   Rich is saying.  Rich is saying whether it was sent

14   or not, the draft is privileged.  If it was sent, we

15   absolutely would have produced the final letter.  But

16   in either instance, the draft is privileged.  All the

17   case law says the draft letter is written by

18   attorneys on privilege.  This is a draft letter, the

19   client asked the attorney to draft a cease and desist

20   letter, a draft cease and desist letter is inherently

21   privileged.  And it's sent --

22             SPECIAL MASTER SCHNEIDER:  Ms. Miller,

23   Ms. Miller, I thought that when I asked this

24   question, the answer was we don't know if this was a

25   draft, we don't know if this letter was sent out.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                         June 18, 2021

Page 153

1              Hold on.  Hold on.

2              Suppose this letter wasn't changed one

3    word and just the only difference was it was put on a

4    letterhead.  That's not a draft letter, that's the

5    final letter.

6              MR. BERNARDO:  Your Honor, I apologize,

7    I want to clarify what I said because I think I may

8    have confused it.

9              What I was saying is, we know this is a

10   draft, you can tell that because it's unsigned.  It

11   wasn't sent, it's not on letterhead.  So we know this

12   document is a draft.  So I just want to clarify that.

13             SPECIAL MASTER SCHNEIDER:  Suppose the

14   court's ruling is the final version of this letter

15   has to be produced.  J&J comes back and says we can't

16   find it, we don't know what the final version is, how

17   do we then know that this version isn't the final

18   version?

19             MS. MILLER:  With all due respect, your

20   Honor, I think that would be an erroneous ruling.

21   This is a draft letter attached to a communication

22   from a lawyer to his client.  The lawyer is asking

23   his client to review the draft letter.  This is no

24   different if Ms. O'Dell sent a letter to her client

25   or plaintiff saying here is a draft letter I want to

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 154

1    send Rich Bernardo or Jessica Miller, can you review

2    this letter for accuracy.  There is no way Ms. O'Dell

3    would be turning over to us a draft letter that she

4    would be sending to her client for accuracy.

5              That's all this is.  It's a draft

6    letter attached to an email to a communication from a

7    lawyer to his client.  Again, this is pure

8    attorney-client communication.  It is attached to a

9    communication to a client saying here is a draft

10   letter.  I can't go into the rest of the email at the

11   risk of waiver, but it's very clear that he's

12   seeking -- I mean, I can't say any more because I'm

13   going to start waiving this.  But this is clearly a

14   communication between a client and counsel.

15             MR. BERNARDO:  And, your Honor, I guess

16   there would be no difference if -- I don't mean to

17   pick on Ms. O'Dell here, but she's front and center

18   on my screen.

19             MS. MILLER:  Yes, that's why I said it.

20             MR. BERNARDO:  It would be -- Mr. Tisi,

21   it would be no different if they drafted a legal

22   brief because their client said I want to see what

23   this looks like.  You look at it, your Honor, and you

24   say it sure looks fine to me.  Do we know whether it

25   went out?  We don't know that, was 20 years ago.  But

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 155

1   you're not going to take something -- because it may

2   not have gone out.  They may have looked at it and

3   their client may have said bad decision, I don't

4   think this should go out.  That doesn't mean that it

5   should be privileged.

6                And the process is such that if there

7   were a final letter and this did go out, it's

8   certainly within the scope of the searches that have

9   been done and it would have been produced.  But as it

10  stands right here, it's unquestionably an unsigned,

11  not-sent draft of a document drafted by a lawyer

12  whose legal advice was sent.  And in that respect no

13  different than a brief that was drafted and --

14                SPECIAL MASTER SCHNEIDER:  Okay.  Let's

15  move on.  But there is no dispute that the final

16  version of this letter, whatever it is, is

17  discoverable.

18                MR. BERNARDO:  No dispute.

19                SPECIAL MASTER SCHNEIDER:  Okay.

20                MR. BERNARDO:  Well, when I say -- a

21  final sent version.  I just want to be clear that

22  we're talking about -- and I don't know what "final"

23  means, but if this were sent out, absolutely.

24                SPECIAL MASTER SCHNEIDER:  All right.

25  Next.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1              Number 11.  This is a series of emails.

2   My first question is, the very first email, very

3   first email in the string, Bates number 5946,

4   December 18, 2018 4:34 AM.  Why isn't, starting with

5   this one email, why isn't just this email

6   discoverable?

7              MR. BERNARDO:  I'm sorry, your Honor,

8   could you -- I was flipping to get the document so I

9   want to be on the right page that you're on.

10             SPECIAL MASTER SCHNEIDER:  Bates number

11  5946.

12             MS. MILLER:  Which is tab 11.

13             MR. BERNARDO:  I just want to

14  understand which particular email he was referring

15  to.

16             SPECIAL MASTER SCHNEIDER:  Yes.  The

17  first email in the series.  12-18-18, 4:34 AM.

18             Standing alone, why isn't just this

19  email discoverable?

20             MR. BERNARDO:  Your Honor, I think we

21  could explain that from the content of the letter of

22  the email, and maybe without your reading it out

23  loud, I can point you to it, if that might help you.

24             SPECIAL MASTER SCHNEIDER:  I think

25  you're talking about the sentence -- I know the

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

Page 157

1   sentence you're talking about, right above the bolded

2   letters sentence, right?

3                    MR. BERNARDO:  That is one of the

4   reasons that explains the circumstance of the

5   first-in-time email and why that's privileged.

6                    MS. MILLER:  It's part of an entire

7   ongoing communication.  And you are correct, your

8   Honor, that in the bottom email, if you didn't have

9   the entire chain, you wouldn't know that it's an

10  ongoing request because it is only specified in the

11  second email.  But it is all part of the ongoing

12  requests.  And he only mentions it in the second one.

13  I understand what you're saying, but it is --

14                   SPECIAL MASTER SCHNEIDER:  Ms. Miller,

15  Ms. Miller, the way that sentence is phrased that you

16  and I are referring to, do you want me to infer that

17  the first email was prepared at the request of an

18  attorney as well?

19                   MS. MILLER:  Yes, because of that

20  fourth word in the second -- in that sentence in the

21  second email.  I think the fourth word.

22                   And also the fact that Rich and I have

23  seen 45 of these emails is how we know it.  But it's

24  because of that fourth word.

25                   Is that correct, Rich?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 158

```
1              MR. BERNARDO:  Yes.
2              MS. MILLER:  That fourth word.  In
3    other words, they send this and then he's like I've
4    got another one.  You understand?
5              SPECIAL MASTER SCHNEIDER:  I got the
6    argument.
7              In the description that's provided to
8    the plaintiffs, it says:  This was a communication
9    for the purpose of gathering information for an
10   attorney to render legal advice.
11             How do we know that?
12             Let's assume -- it's granted, let's
13   assume that the attorney requested this information.
14   Now you want to take the next step and say it was
15   necessarily for legal advice.  Why should I make that
16   assumption?
17             MR. BERNARDO:  I think, your Honor,
18   that might be something we could more easily explain
19   to you ex parte because it requires pointing out
20   other things in the particular document.  We've been
21   doing a good job of talking code so far, but it's
22   getting a little difficult.
23             SPECIAL MASTER SCHNEIDER:  Okay.
24             Number 12.  There is Attorney White's
25   legal comments.  J&J uses the term quote/unquote
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

Page 159

```
 1   legal comments.  Right?  I'm not quite sure what that
 2   means, but that's the term that is referenced in the
 3   description.
 4                 Am I to assume that every one of
 5   Attorney White's comments are quote/unquote legal
 6   comments?
 7                 MR. BERNARDO:  Your Honor, the answer
 8   to that lies in the same argument that we've made
 9   before.  I think we can substitute what I and
10   Ms. Sharko and Ms. Miller said with respect to Mr.
11   O'Shaughnessy and put Mr. White's name in there and I
12   think we would simply be rehashing the same
13   arguments.  I think we've made that point.  We
14   haven't talked about him that much, but you can say
15   the same thing.  And, in fact, he took the baton from
16   Mr. O'Shaughnessy when Mr. O'Shaughnessy retired in
17   talcum powder litigation.
18                 SPECIAL MASTER SCHNEIDER:  Is it fair
19   to assume that the final version of this document was
20   produced?
21                 MR. BERNARDO:  About 135 times.
22                 (Laughter)
23                 It's been the subject of ten
24   depositions that I've defended, it's been the subject
25   of cross-examination at trial.  There are very few
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 160

1    documents that have had as much air time as this one.

2                    SPECIAL MASTER SCHNEIDER:  So I take

3    that as a yes?

4                    MR. BERNARDO:  Yes.

5                    MS. MILLER:  And if you look at the

6    bottom of that description on the cover sheet, it

7    says:  Non-privileged versions of this document

8    without Mr. White's comments have been produced to

9    plaintiffs, EG.

10                   SPECIAL MASTER SCHNEIDER:  Okay.

11                   MR. BERNARDO:  It just didn't say 135.

12                   MS. MILLER:  That's why we went with

13   the E-G, Rich.

14                   MR. BERNARDO:  Got it.

15                   SPECIAL MASTER SCHNEIDER:  21.  Now,

16   this is not a legal document, right?  This is the

17   issue we were discussing this morning.

18                   MS. MILLER:  That is correct, your

19   Honor.  And I think this is actually a great example

20   because this is one of the documents I was thinking

21   about when plaintiffs were talking about the fact

22   that why are lawyers commenting on nonlegal

23   documents.  And obviously I can't describe what the

24   edits are here, but these edits are all to ensure

25   that this document complies with the law, that this

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 161

1   document complies with, you know, regulations, that

2   this document is accurate in terms of the company's

3   legal and regulatory obligations.

4            I don't think I can really go beyond

5   that in my description, but I think this is a perfect

6   example of why a lawyer needs to review a document

7   like this.  This is one of the ones where you

8   couldn't see the changes until that document we sent

9   yesterday because of the way everything was copied,

10  but the thing you got yesterday should show like one,

11  two, three, four, five, six, seven.  It gives like a

12  list of the comments.

13            SPECIAL MASTER SCHNEIDER:  But --

14            MS. MILLER:  All of those comments in

15  my mind are focused on -- I'm trying to find a way to

16  say this that doesn't waive any privilege issues,

17  they're all focused on accurate statements from a

18  regulatory perspective.  They have nothing to do with

19  business.  This person isn't qualified to give

20  business advice.  They have nothing to do with

21  marketing.  Not one of these statements has anything

22  to do with promoting the product or increasing the

23  promotional value of this material.  They're all

24  about accuracy from an FDA perspective.  They're not

25  about like, oh, more people will buy the product if

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                         June 18, 2021

1    we use this word instead of that word.  They're all

2    about from an FDA perspective, let's use this word

3    instead of that word.

4              SPECIAL MASTER SCHNEIDER:  By way of

5    example, could you turn to page 10 of this document.

6              MS. MILLER:  That's the page I'm on.

7              SPECIAL MASTER SCHNEIDER:  Okay.  Do I

8    take it this is a summary of the comments?

9              MS. MILLER:  Yes.

10             SPECIAL MASTER SCHNEIDER:  Okay.  So

11   look at number one.  It appears to me that the

12   attorney is just making a factual comment, that the

13   attorney is not providing any legal advice in the

14   comment.

15             What say you?

16             MS. MILLER:  Yeah, I guess I disagree

17   because the attorney is making sure that if that word

18   had been used, it would have been inaccurate from a

19   legal perspective.  That's not marketing or business

20   advice.  That word would have been -- it would have

21   been -- from a legal perspective, improper to use

22   that word for the reasons she explains.

23             So that's exactly what a lawyer is

24   doing.  A lawyer would say you're overstating this

25   from a legal perspective if you use that word and

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

Page 163

1    that's why we shouldn't use that word.

2              It's so hard to do this in this random

3    speak because I'm trying not to, you know, be

4    specific about what it says.  But I think this is a

5    perfect example of what a lawyer would say:  Hey,

6    don't use that word because that word suggests

7    something from a regulatory perspective that's not

8    accurate.

9              SPECIAL MASTER SCHNEIDER:  Isn't the

10   lawyer just checking the accuracy of a fact?

11             MS. MILLER:  No.

12             SPECIAL MASTER SCHNEIDER:  They're not

13   giving legal advice?

14             MS. MILLER:  No.  No.  I completely

15   disagree.  I think the lawyer is saying that if you

16   use that word, it's inappropriate from the

17   perspective of a lawyer.  The lawyer is making sure

18   that this person is not overstating the -- I'm very

19   worried that if I go any further I'm waiving

20   privilege.

21             SPECIAL MASTER SCHNEIDER:  Let me give

22   you an example, Ms. Miller.

23             Suppose, hypothetical, the document

24   says on June 19th, 1970, we had a meeting.  And the

25   attorney says well, no, it wasn't the 19th, it was

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 164

```
 1   June 21st, 1970.  The attorney is just correcting a
 2   fact.  You're saying that's legal advice?
 3              MS. MILLER:  I don't think that's what
 4   this attorney is doing.  I don't think that
 5   hypothetical is apposite to this situation.
 6              MR. BERNARDO:  Your Honor, could I just
 7   address, again we can talk about this in camera, but
 8   just to put one more point on it while we're on this
 9   document.  Obviously, one of the standards in
10   regulatory law is truthful and not misleading,
11   correct?  Truthful and not misleading.  So in terms
12   of marketing, what is truthful, what is puffery?  I
13   mean, you're attempting to slice this to a fine
14   degree in terms of what a lawyer is commenting on.  I
15   kind of go back to the flip side of this if we were
16   talking about plaintiffs' counsel.  If they were
17   making edits or comments to things that their clients
18   are saying, I'm not going to -- I don't know, maybe I
19   am going to challenge that given this conversation.
20   But ordinarily, I wouldn't challenge that we're
21   entitled to see their advice as to a word choice
22   that's used, and that's because they're lawyers
23   representing their clients and we give regard to
24   those word choices as part of their legal
25   representation.
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

1          I mean, maybe the tables will be turned

2     if plaintiffs are agreeable to providing us this

3     information from their client.  I haven't heard that

4     yet, but...

5               But I think your efforts to try to

6     slice and dice this, with all respect, your Honor, is

7     really sort of losing the purpose of why this lawyer

8     is looking at it.  It's not just to edit it to make

9     it pretty, it's just to make sure that it's

10    appropriate and comports with regulatory

11    requirements.  And we would all be imposing our

12    subjective views as to, okay, what is legal advice

13    and otherwise.

14              MS. MILLER:  And I think an excellent

15    point, following up on Rich, is that we're not going

16    to see somebody filing a complaint with a regulatory

17    body or in federal court or state court saying

18    Johnson & Johnson's marketing materials were

19    inaccurate and we're filing a consumer protection

20    claim under California law because a meeting took

21    place a day earlier or a day later.  But we could one

22    hundred percent see such a claim, a consumer

23    protection claim, because they used this word that I

24    can't say in number one that was changed.  One

25    hundred percent plaintiffs would attack the use of

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 166

1    that word and say that's not true, they lied, this

2    isn't true.  They lied, this thing that was changed

3    in number one, if this hadn't been changed, that this

4    is a lie and this isn't true.

5                And so this is exactly the kind of

6    change a lawyer needs to make to ensure that you

7    don't get sued and that you don't have a consumer

8    protection claim against you in your marketing

9    materials.  Right?  Because that's what a lawyer's

10   job is in reviewing marketing materials, is to

11   protect against liability, both regulatory liability

12   and litigation liability.

13               MR. LAPINSKI:  Your Honor, can I make a

14   couple comments, please?

15               SPECIAL MASTER SCHNEIDER:  Of course.

16               MR. LAPINSKI:  The first comment that I

17   want to make, your Honor, is that in the privilege

18   log, the privilege log stated that this document was

19   a, quote, draft presentation from inside counsel

20   providing legal advice regarding talc communications

21   and marketing material, unquote.

22               Now, from my perspective, when I read

23   that description, I read that description as it may

24   be a presentation that was prepared by an in-house

25   attorney regarding communications and marketing

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

1    material.  I was obviously incorrect on that when I

2    read the description.  So I don't think the

3    description was adequate.

4              When I read the supplemental

5    information that was provided in regard to the

6    document, it's a draft presentation that redline

7    edits were made on by an attorney.

8              My question would be, a couple

9    different points is, was a non-attorney who prepared

10   the draft presentation, to the extent that the draft

11   presentation was not provided to us, we have a right

12   to be able to see that particular draft.  And if

13   production of that particular draft to us requires

14   the redaction of the attorney's redlines in order for

15   us to have the draft, we have a right to that draft.

16             We don't know what the purpose was that

17   the document was created for.  And again, unless it

18   was Patricia Villani reaching out to this

19   non-attorney and saying I need you to prepare a

20   presentation for me so that I can analyze from a

21   legal perspective some communications and marketing

22   stuff, again, we have a right to be able to get a

23   copy of that draft presentation before Ms. Villani

24   made her legal edits to it.  It might not be the

25   final that's presented anywhere, but we have a right

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

Page 168

1    to be able to see documents that are the work

2    processes of a marketing department and iterations

3    that a department is making and what they ultimately

4    put out.

5              SPECIAL MASTER SCHNEIDER:  Any

6    objection to that, Ms. Miller?

7              MS. MILLER:  I would like to reiterate,

8    as we have before and as we did in our briefing,

9    because I'm known to reiterate, we did not withhold

10   drafts simply because they were shared with

11   attorneys.  We did not withhold communications of

12   third party PR people simply because they were at

13   some point shared with attorneys.

14              As you saw in the briefing, and that's

15   why we put it in there, most of the APCO documents

16   were produced.  And you know it from the production.

17   Most of the Purple documents were produced.  You guys

18   know, you have tons and tons, and I said this before,

19   you're drowning and drowning in press releases.  We

20   didn't do that.  All we withheld was the

21   communications with the lawyers and the lawyer's

22   redlines.

23              So for every document that had a

24   stand-alone version separate from the ones that were

25   redlined by the attorneys or in the privilege

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 169

1    communications, there are multiple, multiple copies

2    in the production.

3              MR. LAPINSKI:  Your Honor, the last

4    point that I would bring up in regard to this from

5    our end, this is an example of one of the documents

6    where the attorney is sending this document back not

7    only to the senior global management for Johnson's

8    Baby Powder, but is also copying Chris Durlak and

9    Alec Jacobs from Purple Strategies.  And our position

10   is that Purple Strategies is a third party company,

11   they're not retained as a litigation consultant,

12   they're a marketing consultant, and there is a waiver

13   of any type of privilege related to the edits that

14   were posted.

15             SPECIAL MASTER SCHNEIDER:  Okay.

16             MS. MILLER:  I could repeat --

17             SPECIAL MASTER SCHNEIDER:  Next

18   document.  Next document.  I think we beat that one

19   to death.

20             MS. MILLER:  Okay.

21             SPECIAL MASTER SCHNEIDER:  39.

22             I think this is a stand-alone page.

23   Tell me why this is privileged.  It's not terribly

24   important, but I have to rule on it.

25             You're on mute, Ms. Miller.  Ms.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                          June 18, 2021

Page 170

1    Miller, you're on mute.

2              MS. MILLER:  I'm so sorry.  This is

3    privileged because Ms. Pound is seeking Mr.

4    O'Shaughnessy's review and approval of the

5    attachment.

6              SPECIAL MASTER SCHNEIDER:  How do I

7    know that?

8              What support is there for that?

9              MS. MILLER:  Your Honor, again, I'm

10   going to point you back to the Vioxx case and --

11             SPECIAL MASTER SCHNEIDER:  Hold on.

12   Tell me on this.  Just on the face of the document,

13   is it there?  Just because O'Shaughnessy is copied?

14             MR. BERNARDO:  No, your Honor.

15             Your Honor, this is a good example

16   of --

17             MS. MILLER:  It says John.  Wait, Rich.

18   I don't know where you are, but, your Honor, it says

19   John colon.

20             MR. BERNARDO:  Right.

21             SPECIAL MASTER SCHNEIDER:  So?

22             MS. MILLER:  So it's a note to him.

23             SPECIAL MASTER SCHNEIDER:  So?

24             MS. MILLER:  So she is clearly asking

25   him to review and provide his okay on it.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1            MR. BERNARDO:  I think this is another

2   one that would be appropriate to talk about in camera

3   because, your Honor, I do think the words are all

4   right there on paper.  And this is a perfect example

5   of one where I think in plaintiffs' mind a lawyer is

6   CC'd, but I think we've explained in the briefing,

7   and I think everybody on this Zoom knows, that where

8   a name lands these days in an email chain does not

9   indicate the person to whom everybody else is

10  speaking.  Sometimes --

11           SPECIAL MASTER SCHNEIDER:  You froze,

12  Mr. Bernardo.

13           MR. BERNARDO:  What's that?

14           SPECIAL MASTER SCHNEIDER:  Everybody

15  froze.

16           MR. LAPINSKI:  You know, your Honor, we

17  can hear you, but you're frozen on your screen.

18           MS. O'DELL:  Oh, there we go.

19           MR. LAPINSKI:  Now you're back.

20           MR. BERNARDO:  Your Honor, this might

21  be one we can -- I mean, there is so few words, it's

22  hard to give an example without -- I think we could

23  explain this to your satisfaction, but I was simply

24  making the point that I believe this falls in the

25  category that plaintiffs point out that Mr.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 172

1    O'Shaughnessy is only CC'd and it's simply a product

2    of the way in which everybody just hits "reply all"

3    or "forward" or things like that.  But it's very

4    clear this isn't being directed to him.  But, in any

5    event.

6              MS. MILLER:  I do want to add that

7    point.  If you look at the subject line, it says

8    "re."  So it was a reply all to some other email, so

9    for convenience somebody hit reply all.  But the John

10   colon makes clear that this email was directed to

11   John.

12             And I do feel, your Honor, that when

13   looking at privilege, as lawyers, I don't think we're

14   supposed to throw our common sense away.  And common

15   sense, in plain English, made clear that this was

16   directed to Mr. O'Shaughnessy.

17             MR. PLACITELLA:  The only thing I would

18   say, your Honor, is -- this is Chris -- if lawyers

19   are participating in what the public is being told

20   about talc safety, that deserves extra scrutiny.  And

21   not having seen the document, it's hard to

22   hypothesize, but if representations are being made

23   about the talc safety or information is being

24   conveyed about talc safety, that deserves a hard

25   look.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 173

```
 1              MS. MILLER:  Your Honor, if that's the
 2    case, then we are entitled to all the draft press
 3    releases that plaintiffs' lawyers have put together
 4    because they're making representations about talc
 5    unsafety on a daily basis to the New York Times, to
 6    Reuters.  The Beasley Allen firm has an entire PR
 7    outfit, they're making representations all the time.
 8    Are those entitled to a stricter scrutiny?  I
 9    literally don't understand what Mr. Placitella is
10    talking about.
11              MR. PLACITELLA:  So is that an
12    admission that Mr. O'Shaughnessy and others are, in
13    fact, making input about talc safety?
14              MR. BERNARDO:  No, I think that's --
15    Chris I think that's --
16              MR. PLACITELLA:  Oh.
17              MR. BERNARDO:  Be careful what you ask
18    for because if you apply the very test that you're
19    claiming, while we disagree with your factual
20    assertion, it certainly applies on both sides.
21              SPECIAL MASTER SCHNEIDER:  Mr.
22    Bernardo, wouldn't there be a question of relevancy?
23              I understand that plaintiffs are
24    inquiring directing discovery to these public
25    announcements, relations, whatever, because it's
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 174

1    relevant to their claim that J&J is misrepresenting

2    or hiding, et cetera.  What possible relevance to a

3    claim or defense in the case is it that a law firm

4    for the plaintiffs is sending out press releases?

5    Under Rule 26, what is it relevant to?

6                    MR. BERNARDO:  Actually, it's highly

7    relevant because it caused the product to have to be

8    discontinued.  And that's one of the claims in the

9    case, that --

10                   SPECIAL MASTER SCHNEIDER:  No.  But

11   what's relevant to the claim or defense?

12                   MR. BERNARDO:  One of the claims or

13   defenses in this case, your Honor, is that the

14   product was discontinued for health and safety

15   reasons.  The product was discontinued because

16   plaintiffs' advertising caused it to be discontinued.

17   And that has now become front and center in this

18   case.

19                   SPECIAL MASTER SCHNEIDER:  So then why

20   does a draft -- even if you accept your argument,

21   which is a little bit of a stretch, why in heck is a

22   draft press release relevant if you're arguing the

23   final press release that was released to the public

24   is causing the regulators to withdraw this product

25   from the market?  Why are we arguing about this?  I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 175

1   don't see it.  But I can see the distinction between

2   getting press releases from the plaintiffs and

3   getting press releases from the defendants.  But

4   fortunately, we don't have to decide that here.

5                MR. BERNARDO:  We may have to decide

6   that soon.

7                (Laughter)

8                SPECIAL MASTER SCHNEIDER:  Well, you

9   have a sense of how I would rule.

10               MS. SHARKO:  If I could for a minute,

11  Judge Schneider, maybe you misspoke, but you just

12  said the regulators caused the product to be

13  withdrawn from the market?

14               SPECIAL MASTER SCHNEIDER:  No.  No.

15  That's -- I certainly didn't -- that's not correct.

16               MS. SHARKO:  Okay.  Good.

17               SPECIAL MASTER SCHNEIDER:  I think Mr.

18  Bernardo was arguing that plaintiffs' actions --

19  plaintiffs' press releases somehow led to some type

20  of, I don't know, the record will speak for itself,

21  some type of detrimental action against J&J.  That's

22  what I understood.

23               MR. BERNARDO:  Well, as your Honor

24  learns more about this case, you'll understand that

25  that's just not Mr. Bernardo's assertion, it's

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

 1    actually a very dark reality.  And I say that with

 2    seriousness.  We don't need to go there because

 3    obviously parties disagree about that, but that's an

 4    issue that's coming up in this litigation.

 5              SPECIAL MASTER SCHNEIDER:  Okay.

 6              Number 46.  Ms. Miller, were these

 7    underlying books produced in discovery?

 8              MS. MILLER:  This is a Rich question.

 9              MR. BERNARDO:  Oh, I'm sorry.  My

10    understanding is that they weren't, your Honor.  And

11    there was a fair amount of back and forth about them.

12              SPECIAL MASTER SCHNEIDER:  Okay.

13              47.  It says this was requested by

14    counsel to render legal advice.  Where is the support

15    for that?  Granted, I see the first one, two, three,

16    four words.  So there was some sort of message that

17    was left for the author.  But the representation is

18    that it was made to -- the information was provided

19    so that counsel could render informed legal advice.

20              MR. BERNARDO:  Your Honor, this would

21    be a rehashing of the very issue with which we all

22    may disagree that we discussed before, Mr.

23    O'Shaughnessy's role and his role in 2004 and the

24    very purpose of his keeping himself abreast of these

25    issues.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 177

1          SPECIAL MASTER SCHNEIDER:  Okay.  So

2   this is a good example.  The argument is being made

3   that all factual information regarding talc provided

4   to O'Shaughnessy was necessary for him to render

5   legal advice.

6          MR. BERNARDO:  As a result of ongoing

7   and anticipated litigation, including some that was

8   occurring exactly at that time, but that's correct.

9          And again, I don't want to rehash all

10  our arguments.  Ms. Sharko, Ms. Miller and I already

11  gave you a rendition of Mr. O'Shaughnessy's role.

12  But just given his role, there would be no other

13  reason for Mr. O'Shaughnessy to become educated about

14  this or to try to learn this than for purposes of his

15  defending actively and anticipated litigation.

16          MS. MILLER:  We would add though, I

17  would just add that to the extent he obtained that

18  information in a non-privileged context, like if he's

19  sitting in a room in the Talc Steering Committee,

20  whatever is happening in that room I would not say is

21  privileged, but to the extent he called someone

22  privately and says hey, I need some information, he

23  as a lawyer is calling someone privately and getting

24  information, I would distinguish that from what's

25  happening in a big room where he's sitting in a

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 178

1   meeting.

2              Just, for example, like the example

3   Rich gave earlier, if we go to a conference, whatever

4   happens in that conference isn't privileged because

5   we're there, but if we follow up and call our client

6   and say hey, I was at the conference and I heard this

7   and I'm trying to figure out what it all meant

8   because that's going to be relevant to the advice I

9   later provide my client, that followup call would

10  then be privileged.

11             SPECIAL MASTER SCHNEIDER:  This is

12  representative of a big issue that we have to deal

13  with because you want the inference to be drawn that,

14  in essence, all factual information regarding talc

15  provided by O'Shaughnessy was at his express or

16  implicit request so he could render legal advice.

17             MR. BERNARDO:  That's right, your

18  Honor, because there was no other reason.  I mean,

19  folks have used the words "business purpose."  Mr.

20  O'Shaughnessy doesn't have a business purpose.  He's

21  not a marketer, he's not a scientist, he's not -- Mr.

22  O'Shaughnessy is a litigator who -- I'm not saying he

23  doesn't know anything else, and I go back to

24  Jessica's Superman comment, but he's not Superman,

25  he's a litigator.  And just like everything I've

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                            June 18, 2021

```
 1    learned and I know, and I know all sorts of esoteric

 2    facts, and plaintiffs do as well, and we learn them

 3    because of our need to understand them for purposes

 4    of defending our client.

 5              I don't think it would be appropriate

 6    to depose me about the facts I've learned about

 7    talcum powder because some of them are not privileged

 8    facts.  I've learned them and I understand them as a

 9    lawyer.  And, again, I want to make sure that our

10    agreement to allow Mr. O'Shaughnessy's, you know,

11    understanding of things that he may or may not have

12    done in or out of that capacity to get explored, but

13    by agreeing to put them up it doesn't change the mix.

14    I mean we're not going to depose Mr. Lapinski as to

15    what he knows, we're not going to depose hopefully

16    not me, but maybe we will.  But it is no different

17    for -- I mean, he's really, if you think about it,

18    he's outside counsel who just happens for efficiency

19    purposes to be hired on a hundred percent basis by

20    the company.  He's not their business lawyer, as

21    there are others who are.

22              SPECIAL MASTER SCHNEIDER:  Mr.

23    Lapinski.

24              MR. LAPINSKI:  Yes, your Honor.  The --

25    go ahead, Ms. Miller, if you want to build on Mr.
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

```
 1   Bernardo and then I'll respond to the two of you.
 2              MS. MILLER:  It's just one sentence.
 3   Your Honor mentioned the word inference, and I don't
 4   think it's an inference because Mr. O'Shaughnessy
 5   signed an affidavit in which he swore that all the
 6   work he performed was in his professional capacity as
 7   legal counsel.
 8              SPECIAL MASTER SCHNEIDER:  And what did
 9   I say in Valsartan, or whatever case it was?  I don't
10   have to accept that at face value.  And with all due
11   respect to Mr. O'Shaughnessy, I don't know him from a
12   hole in the wall, I don't know if he's credible or
13   not credible.  But, Ms. Miller, if I accepted a
14   representation like that, then in every single case,
15   in every single instance the document would be
16   privileged because every witness says what Mr.
17   O'Shaughnessy said in general boiler plate fashion in
18   that affidavit.  That's an example of the kind of
19   statement that I just can't accept at face value.  I
20   have to delve a little bit deeper because it would
21   just be too easy to --
22              MS. MILLER:  I understand --
23              SPECIAL MASTER SCHNEIDER:  -- to get
24   around privilege issues by making a general boiler
25   plate statement like that.
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 181

1              MS. MILLER:  I understand, your Honor.

2   I also think, though, that it's really important as

3   we're all sitting here today to sort of take a step

4   back and appreciate that like the attorney-client

5   privilege is something that's sacrosanct in like

6   legal jurisprudence.  It's not like -- I'm almost

7   sort of starting to feel today as if there is this

8   like, I don't know, some sort of presumption that

9   there is some dishonesty going on in the invocation

10   of the attorney-client privilege.  There was almost a

11   suggestion today that somebody would have like

12   falsely put the name of the case on a memorandum as

13   if to hide facts about something in order to

14   circumvent releasing completely unimportant

15   information through using the attorney-client

16   privilege.  And it's a little bit disturbing because,

17   you know, we have poured through these documents,

18   Rich and I, Sunday morning after Sunday morning to

19   pare them down.  And, you know, plaintiffs' brief

20   sort of, I thought, sort of criticized us for

21   downgrading so many documents, but the reason we did

22   that was really to like just pare these down to

23   documents that are clearly instances that relate

24   directly to lawyers doing their job or to non-lawyers

25   providing information related to litigation.  That's

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

1    all that we're talking about here.  There is nothing

2    else.

3              So when people say that like, you know,

4    there are assumptions and there are inferences as

5    though there is some sort of something nefarious

6    going on here, I really want to be clear that there

7    is not a single document here that we feel involves

8    any attorney like -- there is not even any document

9    here that is even a stretch in terms of an attorney

10   going anywhere outside the four corners of providing

11   legal advice.  So I just -- I just feel a little bit

12   like there has been some suggestions on this call

13   that maybe there is an inappropriate effort here to

14   shield these documents.  And as your Honor knows,

15   most of these documents are really extremely boring

16   documents.  So there wouldn't even be a reason to

17   make such an effort, but we're really here because we

18   believe in the attorney-client privilege and because

19   it would be grossly unfair for a corporation to not

20   have the benefit of the attorney-client privilege

21   when that is a sacrosanct principle in the law that

22   is available to every individual.  And especially the

23   fact that some of these lawyers are no longer even

24   living, and so that should not be a reason why the

25   privilege is not available.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1          I really think that's important to sort

2    of take a step back and appreciate that, you know,

3    these are lawyers doing their jobs and that's all

4    that's going on in these documents.

5          MR. LAPINSKI:  Your Honor, one thing

6    that I will say is I don't think that plaintiffs'

7    counsel is coming forward here with a presumption of

8    dishonesty, but the defendants do have the burden in

9    order to establish the attorney-client privilege.

10   And if the burden is not met on a particular

11   document, then the document should be produced.

12          And the arguments that are being made

13   right now are arguments that, as sacrosanct as Ms.

14   Miller has said the attorney-client privilege is, one

15   of the cores of that deals with documents like the

16   one we're dealing with here where if there is no

17   indication that the exchange of information is for

18   the purpose of rendering legal advice, it opens up

19   the opportunity where all anyone will have to do is

20   CC an attorney on a document and that document in and

21   of itself will be rendered attorney-client privileged

22   because that particular attorney, anything that he's

23   involved in is assumed to be for litigation purposes

24   only.

25          And that rolls over to this, that this

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 184

```
 1   email is being sent and the email is being sent, and

 2   simply because it's being sent to an attorney, it has

 3   to be because the attorney is going to render legal

 4   advice or needs it in anticipation of litigation.

 5   That's our position on this.

 6              MS. MILLER:  We did not withhold a

 7   single document merely because a lawyer was CC'd.

 8   Not one document.  I want to make that clear.  Not

 9   one document in here was withheld because a lawyer

10   was CC'd.  This document was withheld because the

11   very first word in it is John colon, it is written to

12   John.

13              SPECIAL MASTER SCHNEIDER:  Okay.

14              MR. PLACITELLA:  Your Honor, just one

15   comment because there is a lot of rhetoric.

16              The essence of what we've been

17   directing our attention to are facts, not assertions

18   of wrongdoing.  Facts.  And that's really been the

19   focus of the discussion.  The fact that the privilege

20   log is vague, you know, that works against us,

21   obviously.  So it's either we're looking for facts or

22   we're looking for places where assertions were made

23   about product safety that were intended to reach the

24   public.  That's it.  So I just want to stop and take

25   a pause because there are a lot of things said I
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 185

```
 1  think that are not fair characterizations.  That's
 2  all.
 3              SPECIAL MASTER SCHNEIDER:  55.
 4              This is another example of pure
 5  objective facts.  And the argument is that the court
 6  should infer that these facts were provided to render
 7  legal advice.  And I'm repeating myself, but what's
 8  the basis for making that inference, implication?  I
 9  know the information was provided to Mr.
10  O'Shaughnessy.  Does it just boil down to all facts
11  provided to Mr. O'Shaughnessy was so that he could
12  render legal advice?
13              MS. MILLER:  So, first of all, I would
14  say that when Mr. O'Shaughnessy as a lawyer for J&J
15  goes to someone at the subsidiary requesting
16  information, yes, he's requesting that information
17  because he's a lawyer and he needs it for a legal
18  purpose.  He was not a businessman.  He was not in
19  marketing.  He was not a scientist.  He had no other
20  job.  I know I sound like a broken record, and I
21  sincerely apologize for that, especially on a Friday
22  afternoon.  I'm told by my children that I repeat
23  myself too much, but I just -- I can't help it
24  because that is the point.
25              I will also happen to mention that
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1   there was a case going on at this exact point, is

2   that correct, Rich, for which this information was

3   being collected.  So it is not just an inference, it

4   is actually a fact that at this point in time he was

5   collecting information for a case that had just been

6   filed.  And Rich can provide more information on that

7   context.

8              MR. BERNARDO:  Your Honor, and I want

9   to make it abundantly clear for the record what I'm

10  about to say has nothing to do with this document.

11  I'm hoping that I can make up some facts that would

12  kind of explain why sometimes facts are mental

13  impressions and work product that a lawyer is using.

14             So if I'm investigating a case of a

15  pharmaceutical and I understand that it may have

16  potential liability, I may say:  Client, I would like

17  to see a rundown of this information.  I would like

18  you to organization it this way because when you do,

19  I can get a sense for myself of what the potential

20  liability might be.  I can get it -- you know, I can

21  get it by whether it's age or whatever stratification

22  I want to make there.  I'm just asking for facts.

23  But what I'm asking for reflects how I want them and

24  why I want them.  Those facts in there are

25  disclosable and they should be disclosable, and I

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 187

1    guarantee you they are disclosed in the litigation.

2    But because I asked for them in the way I asked for

3    them, it changes them from mere facts to my work

4    product that plaintiffs can't show a need for, let

5    alone a substantial need for, because they can get

6    those facts if they want them.  And they have, and

7    they got them through the ordinary discovery process.

8              Again, I don't know if that helps.  And

9    I'm totally, as you know, your Honor, because you're

10   looking at the document, what I'm talking about has

11   nothing to do with this, but it kind of might help

12   explain why it's important to distinguish between

13   ordinary facts and facts and analysis facts for a

14   lawyer in connection with his due diligence or his

15   investigation or his thinking about the case.  And,

16   again, I wish this weren't all such vanilla,

17   unimportant content, that we would be fighting about

18   something a lot sexier than this, but this is what

19   I've got and I'm trying to again -- Ms. Miller and I

20   talk frequently and every third word out of her mouth

21   is waiver.  And that's very important to us.  And I

22   don't want to do anything that is going to risk

23   waiver because, as you know, your Honor, this is part

24   of many cases and people are going to use this

25   transcript and what I say and what's said not just in

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 188

1    this MDL, but in multiple places and claim that we

2    waived something.  So --

3                    SPECIAL MASTER SCHNEIDER:  Let me ask

4    this question.

5                    Since J&J is making this argument that

6    O'Shaughnessy's sole role was litigation, that

7    everything -- not everything, all the facts,

8    information provided to him was necessary for his

9    legal advice or in connection with a particular case,

10   should the court wait to hear what O'Shaughnessy says

11   next Tuesday about his role and what he does?  He'll

12   be questioned by Mr. Block, so that is effectively a

13   cross-examination and we'll have a better idea

14   Tuesday, Wednesday of precisely what Mr.

15   O'Shaughnessy's role was.

16                    MR. BERNARDO:  That's an excellent

17   point, your Honor.  And I really mean this, I was

18   going to earlier make the comment you're going to get

19   to talk to Mr. O'Shaughnessy on Tuesday, but I agree

20   with you, you are going to get a chance to meet

21   virtually him and hopefully meet in person the

22   following week.  And you'll get a chance to speak

23   with him in camera and explore this.  And I'm

24   convinced that when you do, you'll better appreciate

25   what Jessica and Ms. Sharko and I are saying.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 189

1        And it's largely because we worked with

2    Mr. O'Shaughnessy, for me more than a decade.  Susan,

3    I won't out you, I'm guessing it's substantially more

4    than a decade.  And we know what he's done.  We tried

5    to communicate that through his affidavit, and we

6    didn't do that clearly.  We apologize.  But I think

7    you will see that.  So the short answer is yes, your

8    Honor.

9        SPECIAL MASTER SCHNEIDER:  Okay.  So I

10   mean that was one of the things I thought of that I

11   was going to ask counsel.  It makes so much sense to

12   hear from the horse's mouth what his role was rather

13   than, you know, in my view, the general affidavit

14   that we received.  So much of the argument today

15   depends on O'Shaughnessy's role.  Was it exclusively

16   litigation related?  We'll find out Tuesday and

17   Wednesday what it was.

18       So I agree that that testimony will be

19   helpful.  And it really would help answer the

20   question say, for example, 55, were these objective

21   facts solely for litigation purposes or so he could

22   render legal advice.

23       I know Mr. Lapinski has to leave soon,

24   so I just want to focus on hopefully important

25   documents.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 190

1              56.

2              Do you know, Ms. Miller, if the

3    documents referred to in this letter were produced?

4              MS. MILLER:  They were.  I believe it's

5    the same -- this relates to those same binders we

6    talked about earlier.

7              SPECIAL MASTER SCHNEIDER:  Okay.  They

8    sound important.

9              MR. BERNARDO:  You'll be very

10   disappointed, your Honor.

11             (Laughter)

12             MR. PLACITELLA:  Can I just amend the

13   question, your Honor, if you don't mind?  Were they

14   produced at the time, the document, contemporaneous

15   or ever produced?  I think it matters.

16             MR. BERNARDO:  I don't think it matters

17   to the assessment of privilege, Chris, and I'm not in

18   a position, as I sit here, to be able to answer that.

19             MR. PLACITELLA:  Okay.

20             MS. MILLER:  Were they produced

21   contemporaneous with when they occurred?

22             MR. PLACITELLA:  Right.

23             So if there was litigation pending in

24   say 1898 (sic) and there were facts in 1898 (sic),

25   was it produced in 1998 or was it produced in 2017?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 191

1    When you say produced, I just don't know what that
2    means, that's all.
3                   MS. MILLER:  What we're saying is you
4    have it.  I think that's what the judge is asking and
5    our answer is you have it.
6                   SPECIAL MASTER SCHNEIDER:  I'm only
7    concerned about this case.
8                   MS. MILLER:  Yes, you have it.  And our
9    answer is yes.
10                  Is that correct.
11                  SPECIAL MASTER SCHNEIDER:  Ms. Miller,
12   number 58.  I'm not sure I have the right documents.
13   I'll tell you what I have.  I have a document that
14   says this document is addressed in Appendix A above.
15   I don't know what that means.  And then document
16   Bates stamped 474.
17                  So do I not have the right documents?
18                  MS. MILLER:  I believe that it's a
19   dupe, so I believe that tab 6 and tab 58 are just the
20   same document.
21                  SPECIAL MASTER SCHNEIDER:  Six and 58?
22                  MS. MILLER:  Are the same document.
23                  SPECIAL MASTER SCHNEIDER:  Okay.
24                  MS. MILLER:  So if you have questions
25   about it, we can answer your questions and then your

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 192

1    questions will address both six and 58.

2            SPECIAL MASTER SCHNEIDER:  Okay.  I

3    don't have any questions about number six.

4            MS. MILLER:  Then we're good.

5            MR. TISI:  Judge, I'm sorry, I thought

6    we were talking about Exhibit 56, am I wrong, or was

7    it 58?

8            SPECIAL MASTER SCHNEIDER:  The one I

9    just did was 58.

10           MR. TISI:  We were not talking about

11   56?

12           SPECIAL MASTER SCHNEIDER:  56?

13           MS. MILLER:  We moved past it, Chris.

14           MR. TISI:  The one question I had, do

15   we know the date of that document?

16           SPECIAL MASTER SCHNEIDER:  Which one?

17           MR. TISI:  56.

18           MS. MILLER:  It's not dated, Chris.

19           MR. TISI:  Okay.

20           MS. MILLER:  Any document -- Chris, any

21   document that was dated, we put the date on those

22   descriptions.  If there is no date on the

23   description, the document wasn't dated.

24           SPECIAL MASTER SCHNEIDER:  Ms. Miller,

25   number 60.  Is this one of those where the court

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 193

1    should infer that these documents are produced to

2    O'Shaughnessy to render legal advice?  And no

3    other purpose?  Well, the primary purpose?

4                    MS. MILLER:  I'm sorry.  I had to

5    switch binders.  60 is binder two.

6                    Are we going to be discussing these in

7    camera, because I would like --

8                    SPECIAL MASTER SCHNEIDER:  Is this one

9    of the documents you want to discuss?  Okay.

10                   MS. MILLER:  Yes.  Very much so.

11                   SPECIAL MASTER SCHNEIDER:  Okay.

12                   MR. BERNARDO:  I apologize, I had to

13   stop a spam call from disrupting us.

14                   Can somebody tell me what tab we're on?

15                   MS. MILLER:  We're on tab 60.  And I

16   was explaining that tab 60 is one I can only explain

17   in camera.

18                   MR. BERNARDO:  Thank you.

19                   SPECIAL MASTER SCHNEIDER:  How about

20   67, Ms. Miller, am I missing an attachment?

21                   Oh, it might be in the binder.  It

22   might be in the binder.

23                   MS. MILLER:  Yeah.  67 has a pink

24   sheet, that's the attachment.

25                   SPECIAL MASTER SCHNEIDER:  Yeah, you're

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                              June 18, 2021

Page 194

1   right.

2                   MS. MILLER:  And 67 also has a dupe

3   somewhere.

4                   SPECIAL MASTER SCHNEIDER:  Let me see.

5   There was one document that was important that I

6   wanted to get to.

7                   83.

8                   Is the answer to this going to be in

9   that missing document in the supplemental production?

10                  MS. MILLER:  Tab 83 is a document that

11  says on it "fact sheet" and it has a cover email that

12  should be pink.

13                  SPECIAL MASTER SCHNEIDER:  Okay.  I'll

14  get to that.

15                  MS. MILLER:  And the cover email is to

16  Joe Braunreuther, who is the head of litigation.  If

17  you're missing that cover email --

18                  SPECIAL MASTER SCHNEIDER:  No, I have

19  it.

20                  MS. MILLER:  Okay.  Great.

21                  SPECIAL MASTER SCHNEIDER:  Okay.  What

22  do you want to do now?

23                  Do you want to break and go to the in

24  camera discussion and maybe in an hour or so we'll

25  just rejoin and hopefully adjourn after that?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 195

1              MR. LAPINSKI:  Your Honor, that's up to

2    you.

3              Unfortunately, I have to leave in 15

4    minutes.

5              SPECIAL MASTER SCHNEIDER:  Right.

6              Why don't we do that.  Let's take a

7    five-minute break, we'll use the services hopefully

8    of this company and put the defense team in a

9    separate room.

10             Plaintiffs, why don't you join us in

11   one hour, 4:45, and hopefully we'll see if we can

12   wrap it up.  Thank you.

13             So let's adjourn for five minutes and

14   we'll come back with just the defense team.

15             (Off-the-record discussion)

16             (Recess is taken)

17             (The following takes place in a Zoom

18   breakout room out of the presence of plaintiffs'

19   attorneys)

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 196

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                               June 18, 2021

Page 197

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 198

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 199

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REDACTED

June 18, 2021

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 202

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 203

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                               June 18, 2021

Page 204

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

Page 205

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 206

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 207

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 209

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 210

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 211

 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

Page 212

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 213

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

Page 214

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 215

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 216

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 217

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 218

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 219

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 220

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 221

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 222

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 223

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                  June 18, 2021

Page 224

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 225

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 226

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 227

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 228

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                          June 18, 2021

Page 230

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 231

 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

Page 232

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 233

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                June 18, 2021

Page 234

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

June 18, 2021

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 237

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 238

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 239

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14                                                    ,
15
16
17
18
19
20
21
22
23
24
25
```

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 242

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                      June 18, 2021

Page 243

 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                            June 18, 2021

Page 244

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                            June 18, 2021

Page 245

1              (The following takes place with all

2    attorneys present on the Zoom screen)

3              SPECIAL MASTER SCHNEIDER:  We're back

4    on the record now with all counsel.

5              I can represent to plaintiffs' counsel

6    that the discussion that we went into the separate

7    breakout room was solely and exclusively regarding

8    privileged information and nothing other than

9    privileged information was discussed.  We were very

10   careful about that.

11             And the court addressed some particular

12   documents it had concerns about.  Mr. Bernardo and

13   Ms. Miller relayed clear work product information and

14   attorney-client privilege information, and I have no

15   hesitation making that representation.

16             I think it would be helpful if I heard

17   what Mr. O'Shaughnessy has to say next week to render

18   a ruling as to these privilege documents.

19             Mr. Lapinski, I know he had to run to

20   something more important than this argument, but at

21   least if the issue comes before me, you've heard what

22   I said a hundred times:  I will not let plaintiffs be

23   prejudiced if it turns out certain materially

24   relevant documents are produced after the deposition.

25             What else can I say?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                           June 18, 2021

Page 246

1              I think the record should be closed at

2     this point.  Ms. Miller, I don't need any more

3     citations, no more briefs.  We're done.  We're

4     finished.  Let's close the record.

5              We'll wait to hear what Mr.

6     O'Shaughnessy says and then you'll get my rulings.  I

7     think it's prudent, like J&J had said, that we not

8     try to rush these additional documents and get

9     decisions before your deposition on the 29th, I

10    think.  And I think that's the prudent way to

11    proceed.

12              You're fortunate in that hopefully the

13    logistics of the deposition next week have been all

14    worked out.  We worked really hard on that.  So that

15    when the plaintiffs in this case get to depose

16    O'Shaughnessy, hopefully all the rough spots will be

17    worked out and we'll have to see how it goes.

18              In terms of time, you've heard what I

19    had to say if the issue come before me.  I firmly

20    believe that plaintiffs should be able to wrap this

21    up in two days or less, with the caveat that I don't

22    know how much arguing is going to go on.  So if I was

23    in the plaintiffs' shoes, I would use my best efforts

24    to try to wrap up things in two days.  But again, I

25    don't know how much time is going to be argument.

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

1              And oh, by the way, I wouldn't be

2      shocked if J&J does some direct examination, so that

3      may affect the timing.  So I'm prepared.

4              I can't thank you enough for all the

5      hard work that went into today.  I thought it was an

6      extremely valuable argument.  Obviously, there are

7      disagreements between the parties, but that's what

8      litigation is all about.  But, of course, everyone

9      acts thoroughly professional, which is not

10     surprising.

11             I think I have everything I need to

12     decide the issue.  Like I said, no further briefs or

13     affidavits are necessary.  The record is closed.

14             For the good of the order, any other

15     issues anyone wants to raise?

16             Theresa, thank you for staying on the

17     line so long, it's been a long day, but it was

18     worthwhile and your efforts are appreciated.

19             THE REPORTER:  You're welcome, your

20     Honor.

21             SPECIAL MASTER SCHNEIDER:  And that

22     goes for everybody..

23             So for the good of the order, does

24     anyone else have anything else they want to add

25     before we close this session?

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                              June 18, 2021

Page 248

 1                  MS. PARFITT:  I think we want to thank

 2    you, Judge, and wish you a happy Father's Day as

 3    well.

 4                  SPECIAL MASTER SCHNEIDER:  Oh, thanks.

 5    The same to everybody on the phone.

 6                  MR. BERNARDO:  Thank you, your Honor.

 7    We really appreciate the amount of time you've taken

 8    to listen to our arguments.

 9                  SPECIAL MASTER SCHNEIDER:  Okay.

10                  Everybody enjoy the weekend.  Hopefully

11    happy hour is still going or getting started soon.  I

12    don't partake much, but who knows, it's been a long

13    day, maybe I'll have a cold one.  But it's always

14    great dealing with great people and great counsel.

15    And we're adjourned and have a great weekend

16    everybody.

17                  (Hearing concluded)

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

Page 249

```
                C E R T I F I C A T E

 1

 2

 3        I, Theresa Mastroianni Kugler, a Notary Public

 4   and Certified Shorthand Reporter of the State of New

 5   Jersey, do hereby certify that the foregoing is a

 6   true and accurate transcript of the testimony as

 7   taken stenographically by and before me at the time,

 8   place, and on the date hereinbefore set forth.

 9        I DO FURTHER CERTIFY that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel,

13   and that I am not financially interested in the

14   action.

15

16

17

18

19

20

21

22

23

24

25
```

DocuSigned by:

*Theresa Kugler*

439DA67C1C71495...

Theresa Mastroianni Kugler, C.S.R.
Notary Public, State of New Jersey
My Commission Expires May 5, 2021
Certificate No. XIO857
Date: June 20, 2021

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

250

**A**

**ABC** 65:11,13 65:16
**abide** 135:12
**ability** 112:24 114:14,25 123:16 129:15 133:5
**able** 10:17 11:19 12:22 18:17 29:22 63:10,13 66:3,9,15 73:20 74:19 75:4 77:18 78:12 80:3 81:4 83:15 85:10,19 100:10,20 104:13 106:9 106:25 107:1 109:6,15,17,24 112:24 113:6 114:14,20 129:13,15 130:21 139:5 139:19 143:16 145:14 146:5 167:12,22 168:1 190:18 246:20
**abreast** 176:24
**absence** 76:25
**absolutely** 42:5 42:23 43:5 44:7 135:22 152:15 155:23
**absurd** 107:12
**abundantly** 112:6 186:9
**accept** 74:17 100:23 126:14 174:20 180:10 180:19
**accepted** 180:13
**access** 29:23

110:24
**accompanied** 135:10 140:15
**accompanying** 16:7
**accomplished** 143:2
**accuracy** 38:20 154:2,4 161:24 163:10
**accurate** 12:23 48:16,16,16 57:7,8 71:18 161:2,17 163:8 249:6
**achieve** 143:6
**acknowledge** 137:7
**action** 87:20 92:24 175:21 249:11,14
**actions** 87:16 175:18
**active** 34:7 44:3
**actively** 177:15
**activity** 48:20
**acts** 247:9
**actual** 86:19 101:19
**add** 26:23 32:16 33:10 37:15 38:10 45:15 84:16 91:22 92:15 143:9 144:21,24 172:6 177:16 177:17 247:24
**addition** 18:11
**additional** 12:1 26:6,15 98:8 102:7 130:5,18 134:6 140:9 145:13 147:19 147:22 148:18 246:8
**address** 8:6

12:24 21:19
47:6 71:2,14
102:10 118:3,4
119:12 135:21
136:2,22
137:10,22
164:7 192:1
**addressed** 19:15 24:25 25:10 31:24 125:17 145:12 148:19 191:14 245:11
**addresses** 33:20
**addressing** 33:11 34:15 122:10
**adequate** 167:3
**adjourn** 194:25 195:13
**adjourned** 248:15
**admission** 173:12
**admit** 26:11
**admitted** 64:10
**admittedly** 20:14 101:1
**adopted** 68:17
**advance** 143:3,7
**advertised** 120:20
**advertising** 174:16
**advice** 37:11 39:11 53:22,22 53:25 56:11,19 56:21,25 59:12 62:7 63:23 64:5,13 65:18 67:2 69:22,23 70:10 71:23 72:1,15,17,18 72:25 73:1,13 85:14 86:16 89:8 91:6,23 92:1,8,11,11

94:6,9 95:10
95:13 122:23
123:4,24
147:14 151:10
155:12 158:10
158:15 161:20
162:13,20
163:13 164:2
164:21 165:12
166:20 176:14
176:19 177:5
178:8,16
182:11 183:18
184:4 185:7,12
188:9 189:22
193:2
**advise** 92:14
**Advisory** 97:11 108:23
**affect** 27:7 247:3
**affidavit** 41:8 123:17 180:5 180:18 189:5 189:13
**affidavits** 247:13
**affirmed** 124:25
**afford** 70:19 145:2
**afternoon** 148:8 185:22
**age** 186:21
**agitated** 112:8
**ago** 22:5 27:7 31:25 32:15 67:17 70:15 112:6,16 154:25
**agree** 12:1 13:23 28:17 29:9 33:21 46:11 66:18 67:8 72:15 74:14 75:9 113:19 188:19 189:18
**agreeable** 165:2

**agreed** 13:5 19:10,13 25:4 44:5 90:1 93:24
**agreeing** 179:13
**agreement** 179:10
**ahead** 49:5 71:9 86:23 179:25
**air** 143:18 160:1
**ALABAMA** 3:17
**Alec** 169:9
**alert** 141:8
**alive** 109:15,24
**Allen** 3:15 6:19 173:6
**allocate** 69:21
**allow** 66:9 83:20 137:25 138:5 148:17 179:10
**allowed** 22:9 149:4
**allows** 104:13 107:2
**alluding** 23:16 110:5
**alternative** 140:12
**amazing** 94:4
**amend** 190:12
**amount** 7:23 176:11 248:7
**amplify** 98:8
**analogy** 43:11 151:7
**analysis** 53:1 61:5 73:6 75:6 90:16 96:1 110:3,17 121:11,15 187:13
**analyze** 167:20
**and/or** 129:13 130:16
**angry** 45:2

announcements 47:13 173:25
answer 14:12,15 14:16 15:10 22:19 24:4 32:1 34:6 36:9 39:9 41:25 48:1 53:12 56:17 58:1 60:13 62:15 64:15 74:10 93:19 95:15 99:2 101:25 102:1 117:15 117:24 118:9 152:24 159:7 189:7,19 190:18 191:5,9 191:25 194:8
answered 8:13 98:14 150:11
answering 91:25 98:17 105:22
answers 16:16 62:11 104:1
Anthony 127:7
anticipate 50:14 132:11
anticipated 100:18 177:7 177:15
anticipation 87:14 89:8 97:13 100:9 102:18 145:7 184:4
anticipation-o... 94:24
antitrust 68:15
anytime 46:24
apart 76:23
APCO 52:7 81:9 168:15
apex 39:17
apologize 41:2 115:16,16

136:18 148:23 149:1 153:6 185:21 189:6 193:12
apparent 31:5 125:19
apparently 19:25
appeal 75:23 141:10
appealed 15:17
appear 25:19 72:16 113:17
appearances 6:5
appearing 6:7
appears 78:22 92:13 94:1 123:21 125:16 162:11
Appellate 27:20
Appendix 191:14
applicable 8:20
applies 97:18 173:20
apply 122:1 132:15 146:6 146:14 147:1 173:18
apposite 164:5
appreciate 8:2 57:20 61:4 118:7 135:13 136:11 145:9 181:4 183:2 188:24 248:7
appreciated 247:18
approach 68:18 68:21,23 69:20 84:15
appropriate 49:25 56:16 69:22 99:1 139:12 142:6 165:10 171:2

179:5
approval 170:4
April 10:14 12:24
Arabia 38:18
arbitrations 54:19
area 34:14 44:19 47:8,9 81:20 89:13 90:8 91:16 95:18 134:5
arguably 62:6 74:9,11 76:7
argue 49:18 59:22 67:20 80:25
argues 50:14
arguing 24:13 55:3 58:16 82:18 105:4,8 174:22,25 175:18 246:22
argument 6:3,5 7:22 24:24 58:3 74:3 80:23 81:6 100:7 110:11 114:2 118:24 132:7,13 146:1 146:2 158:6 159:8 174:20 177:2 185:5 188:5 189:14 245:20 246:25 247:6
arguments 9:2 159:13 177:10 183:12,13 248:8
arising 71:21
arms 84:8 111:21
Arps 5:1 7:9,12
article 49:11
asbestos 19:6

75:25 76:25 79:24 84:22,23
ascertain 112:5
Ashcraft 3:9 6:15
Ashton 85:6
aside 108:19 138:12
asked 14:20 53:14 84:3 90:11 93:18 96:15 99:15,17 102:17 106:21 108:18,20 111:25 115:12 132:22,25 148:7 149:18 152:19,23 187:2,2
asking 45:25 46:8 66:23 79:13 91:7 100:12 129:25 133:2,17 153:22 170:24 186:22,23 191:4
asks 122:21
aspect 106:1
assert 141:16
asserting 44:11
assertion 16:3 173:20 175:25
assertions 184:17,22
assessment 190:17
assigned 35:20
assist 63:23 67:2
assistance 138:25
assistant 34:24 40:14 60:10 61:3 95:24
assisting 64:4 100:17

assists 64:12
associate 54:2 124:4,5 126:7 126:11 149:18
associates 40:22 40:22 145:3
assume 64:17 74:2,2 103:8 152:10 158:12 158:13 159:4 159:19
assumed 53:25 123:22 183:23
assuming 142:10
assumption 59:10 73:17 100:13 106:22 158:16
assumptions 182:4
assure 96:20 134:12 135:8
assured 144:10
Atlantic 27:19
atmosphere 55:19
attached 91:15 122:10 153:21 154:6,8
attaches 121:20
attachment 25:3 25:7 170:5 193:20,24
attack 165:25
attacked 49:13
attempting 164:13
attention 184:17
attorney 58:13 59:16,24 60:17 61:12 64:18 65:17 70:9 74:1 79:9 80:21 97:8,14 99:15 103:19 103:23 107:23

108:14,15,18
108:20 122:21
123:2 147:14
152:19 157:18
158:10,13,24
159:5 162:12
162:13,17
163:25 164:1,4
166:25 167:7
169:6 182:8,9
183:20,22
184:2,3 249:10
249:12
**attorney's** 47:15
60:18 80:2,2
97:6,19 99:1
99:14 167:14
**attorney-client**
69:24 92:5,6
92:17 96:10
97:2,25 107:22
112:10 121:25
130:16 141:16
154:8 181:4,10
181:15 182:18
182:20 183:9
183:14,21
245:14
**attorneys** 3:7,13
3:19,25 4:5,11
4:17 5:7,21
38:12 97:10
152:18 168:11
168:13,25
195:19 245:2
**attract** 57:5
**Audubon** 1:21
**author** 176:17
**authored** 8:21
20:18
**authority** 69:13
**automatically**
104:17
**available** 28:20
29:2 104:20
109:18 124:2

130:24 182:22
182:25
**AVENUE** 3:22
5:4,19
**avoid** 22:17
147:4
**aware** 15:15
23:14
**awful** 141:14

___ **B** ___

**Baby** 77:1 96:16
169:8
**back** 12:23
19:16 22:1,2,4
22:9 23:15,21
24:2,16,20
26:14 29:1
32:19 36:5,8
37:2,15,17
45:16 50:11
57:10 59:8,16
63:11 65:2
72:2 75:1,17
76:6 82:3
83:11 84:12
91:7 107:15
111:17 117:17
118:7,18,24
119:2,6,7,8
128:1 130:7
137:22 140:7
142:13 145:15
153:15 164:15
169:6 170:10
171:19 176:11
178:23 181:4
183:2 195:14
245:3
**background**
10:11 123:6
125:4
**bad** 155:3
**Baker's** 119:23
**balance** 111:13
**BANK** 3:22

**Barden** 50:2
**BARR** 4:1
**based** 108:16
112:21,22
113:5
**basic** 47:20
109:1,1
**basically** 52:2
70:2 71:2 92:7
92:13,16 112:3
115:5 124:12
124:14 125:15
**basis** 14:19
18:20 134:16
139:25 173:5
179:19 185:8
**batch** 128:13
**Bates** 19:24 78:8
95:21 124:12
124:19 130:11
130:11 133:20
156:3,10
191:16
**baton** 82:25
159:15
**battery** 32:14
**BAYLEN** 4:2
**Beasley** 3:15
6:19 173:6
**beat** 169:18
**beginning** 9:25
33:3 63:12
128:1 130:11
**behalf** 6:10,16
6:19,22 7:3,8
7:14 10:5
61:24 127:23
**Beidler** 95:24
99:17 106:10
**Beisner** 5:4 7:13
7:14
**believe** 27:5
28:24 32:11
36:1,1 56:10
56:13 61:16
91:20 108:1

115:20,24
116:1 128:11
129:3 131:13
138:15,17
149:21 171:24
182:18 190:4
191:18,19
246:20
**believing** 138:13
**bench** 8:22
**beneath** 41:10
**benefit** 9:1 66:21
182:20
**Berman** 4:7,7
7:2,3,4
**Bernardo** 5:2
7:10,11 12:7
12:14 13:11,13
14:6,12 16:25
18:2 21:17
22:13,16 23:4
23:13 24:19
25:21 26:1
28:16 29:6
30:4,16,17
31:21 33:9
35:3,8 36:18
37:18 38:15
42:5 43:9
45:15 46:22
47:16 71:13
83:4 96:4 98:3
98:5,7 101:21
101:23 102:2
105:6,12,13
111:9 116:7
119:15,18
120:4 121:9,16
126:9 132:3
135:20,23
138:15 140:24
141:20 142:3
145:1 149:21
149:25 150:17
151:1,21 152:6
153:6 154:1,15

154:20 155:18
155:20 156:7
156:13,20
157:3 158:1,17
159:7,21 160:4
160:11,14
164:6 170:14
170:20 171:1
171:12,13,20
173:14,17,22
174:6,12 175:5
175:18,23
176:9,20 177:6
178:17 180:1
186:8 188:16
190:9,16
193:12,18
245:12 248:6
**Bernardo's**
175:25
**best** 10:24 15:1
18:6 22:4
85:10 117:23
118:6 119:12
132:24 135:2
137:10 146:12
148:8,22
151:11 246:23
**better** 12:7 18:6
41:15 116:5
141:4 188:13
188:24
**beyond** 47:3
76:21 161:4
**Biddle** 4:13 7:17
**bifurcated** 31:17
**big** 42:9 63:21
93:2 117:14,18
146:16 177:25
178:12
**bigger** 137:14
**biggest** 31:15
47:9
**binder** 150:2
193:5,21,22
**binders** 7:25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

253

8:15 19:11
190:5 193:5
**binding** 69:13
**bit** 22:23 23:3
33:10 34:5,9
34:15 102:10
102:11 135:23
145:25 174:21
180:20 181:16
182:11
**black** 93:20
**blah** 134:14,14
134:14 140:18
140:18,18,18
140:18 147:14
147:14,14
**bless** 65:15
**Block** 5:19 9:4
9:10 19:17
20:5 132:16
188:12
**Block's** 15:5
32:12
**blowing** 23:20
**Blue** 81:10
**bluntness** 21:3
**board** 16:18
**bodies** 84:16
**body** 165:17
**boil** 185:10
**boiler** 180:17,24
**bolded** 157:1
**books** 176:7
**boring** 107:21
111:24 141:12
182:15
**Borough** 27:15
**boss** 107:1,3
**bottom** 157:8
160:6
**bounce** 57:10
**box** 3:16 93:21
**brainstorm**
117:22
**brand** 58:20
59:3 66:14

71:4 77:1
**branding** 61:19
**Braunreuther**
37:23 41:1,9
194:16
**break** 81:21,23
82:9,19 83:7
83:11 95:18
113:10 117:10
117:13,17,22
118:17 119:8
194:23 195:7
**breakout** 195:18
245:7
**brief** 8:25 16:6
50:13 52:6
54:2,4 154:22
155:13 181:19
**briefing** 12:22
18:15 21:24
28:1 51:9,13
68:3 97:5
147:22 168:8
168:14 171:6
**briefly** 135:21
149:11
**briefs** 8:5 21:25
246:3 247:12
**bring** 82:12
109:6 126:19
127:24 145:12
169:4
**bringing** 15:9
61:17,21
109:20 139:18
**Bristol** 68:3,5,9
69:20 70:18
**broad** 35:9
68:12,17,20,23
**broader** 10:13
**broken** 185:20
**Brotec** 124:24
**brought** 38:1
135:14 146:1
**BUCHANAN**
4:1

**build** 58:20,21
59:4 66:14
145:25 179:25
**built** 17:2
**bullet** 88:1,4
**bunch** 73:3
96:18
**Bunting** 81:3
**burden** 69:20
73:20,22
146:23 147:9
152:7 183:8,10
**burdens** 69:23
**business** 40:11
53:22 55:24
56:7,25 58:23
71:7,12 72:1
72:16,16 75:2
84:5,24 85:9
88:11,20,22
89:3,18,23
90:20 91:11,12
92:9,11,12
146:16 161:19
161:20 162:19
178:19,20
179:20
**businessman**
185:18
**busy** 65:10
**buy** 56:12
161:25

**C**

**C** 3:1 249:1,1
**C.S.R** 249:19
**Cake** 119:16,17
120:3,14,19,25
150:12
**calendar** 131:11
**California**
165:20
**call** 10:10 16:9
19:8 21:2
91:11 116:21
116:25 128:2

178:5,9 182:12
193:13
**called** 40:8
177:21
**calling** 177:23
**calls** 19:8
**camera** 117:25
118:5,12,16
126:22 129:14
130:2,23
133:21 139:10
140:1 144:22
148:20 164:7
171:2 188:23
193:7,17
194:24
**CAMPUS** 4:14
**cancer** 14:23
76:18 84:17
89:1
**candid** 8:18
**capacities** 43:21
**capacity** 43:24
179:12 180:6
**care** 107:23
127:6 141:14
**careful** 17:8
98:9 137:12
173:17 245:10
**carried** 131:6
**carry** 131:7
133:4
**case** 9:22 14:24
14:25 15:5
17:2,6 18:7
19:23 20:7,8
20:11,15 21:18
24:14,17 27:9
27:15,18 32:12
33:3 36:13
43:22 47:24
48:19,21,22,23
48:24,25 49:14
50:6 54:10
63:21 67:9
68:14,25 69:6

76:8 80:19,22
86:16 90:21
92:10 96:7,7
96:13 97:23
99:18 101:11
101:13,17,18
101:19,19
102:24 103:4,5
103:7,11
105:22,22
106:11,13
107:8 108:4,12
110:10,19,21
110:22,23
113:2,23
114:16,22,23
115:22,24,25
116:24 123:19
123:20,25
124:23,25
125:16 132:3
134:21 142:14
144:6 146:16
146:20 152:17
170:10 173:2
174:3,9,13,18
175:24 180:9
180:14 181:12
186:1,5,14
187:15 188:9
191:7 246:15
**cases** 5:22 8:21
8:21 9:23
14:21 15:7
19:6 22:24
23:11,19 28:1
28:4 33:2,19
34:2 51:22
52:1 58:13
62:8 68:9
70:18 81:12
85:15 131:4
187:24
**catching** 29:19
119:18 136:15
**categories** 10:25

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED June 18, 2021

254

11:2,4,14
146:17
category 11:7,13
11:16 171:25
caucus 140:22
causation 33:5
cause 76:18 89:1
caused 174:7,16
175:12
causing 174:24
caveat 38:10
246:21
CC 183:20
CC'd 171:6
172:1 184:7,10
cease 150:18
151:5 152:19
152:20
cease-and-desi...
121:2
center 154:17
174:17
centerpiece 50:5
50:8
cert 58:12
certain 14:15
26:7 86:10
128:5 245:23
certainly 33:2
43:22 47:10
57:17 71:23
90:10 96:25
136:7 144:24
151:14 155:8
173:20 175:15
certainty 14:13
15:12 26:18
137:7
certificate 121:5
121:10,11,15
121:15 249:21
certification
41:11
Certified 1:19
2:8 249:4
certify 249:5,9

cetera 7:25
34:22 38:4
41:21,22 43:7
75:25 76:1
84:2 85:6
174:2
chain 60:17
116:4 157:9
171:8
chair 91:10
challenge 11:25
13:1,4,9
116:10 138:12
138:19 164:19
164:20
challenged
16:15 17:17
18:22 77:19
104:15 106:18
128:6 136:9
138:11,21
challenges 15:16
16:9
challenging 10:1
77:9,13,15
79:15 102:3,5
102:6
chance 131:5
188:20,22
change 59:21
72:17 73:6
79:23 89:11
90:15 166:6
179:13
changed 131:20
153:2 165:24
166:2,3
changes 35:11
35:12 61:25
64:23 65:1
161:8 187:3
characterizati...
33:22
characterizati...
185:1
characterize

84:8
characterizing
151:5
charge 74:4
89:22
charts 16:7
chase 137:13
chat 125:12
check 148:18
checking 163:10
Cherry 3:5 69:8
children 56:4
59:7 185:22
chime 10:12
43:4
choice 139:22
164:21
choices 164:24
chosen 13:24
Chris 6:21,24
32:3,25 83:15
83:22 95:6
102:21 109:4
110:2 112:18
147:24 169:8
172:18 173:15
190:17 192:13
192:18,20
CHRISTOPH...
3:21 4:2
CI 40:10
Circuit 68:6,17
69:8,15 97:15
97:16 124:25
circumstance
53:19 157:4
circumstances
25:6 95:10
136:19
circumvent
181:14
citations 134:6
246:3
cite 27:18,22
69:6
cited 68:3

115:24
cites 27:9 62:8
68:7
City 27:19
Civil 1:2
claim 165:20,22
165:23 166:8
174:1,3,11
188:1
claiming 9:22
30:9 47:14
173:19
claims 141:9
147:7 174:8,12
clarification
133:2 151:2,4
clarify 30:20
38:19 116:8
153:7,12
classified 39:7
claw 22:9 24:2
24:16
clawback 22:13
23:7,11
clawed 23:15
29:1
clawing 23:21
clear 13:18,21
13:22 17:8
24:23 48:1,20
48:21 51:9
52:6,16 65:16
94:25 97:8
99:4 108:2,15
108:21 112:7
154:11 155:21
172:4,10,15
182:6 184:8
186:9 245:13
clearly 20:20
49:22 50:6
55:21 100:4,5
144:1 154:13
170:24 181:23
189:6
client 92:14

96:15 105:18
105:19 107:5
108:22 151:8
152:19 153:22
153:23,24
154:4,7,9,14
154:22 155:3
165:3 178:5,9
179:4 186:16
clients 72:25
73:3 97:1
112:4 164:17
164:23
cloak 67:23
close 26:7 28:8
113:14 246:4
247:25
closed 246:1
247:13
COA 121:10
Coal 97:17
code 145:8
158:21
Cohen 3:21 6:25
cold 248:13
collaboratively
11:18
collected 186:3
collecting 186:5
collection 10:21
12:18 129:25
135:6
colon 170:19
172:10 184:11
color 32:17
33:10
come 17:9 28:9
37:8 50:10
71:3 75:1 93:6
113:3 117:17
118:7,18 140:7
142:13 145:9
195:14 246:19
comes 29:21
59:8 93:16
137:8 140:4

144:10 147:18
153:15 245:21
**comfortable**
8:17 17:10,18
18:4 26:4,12
134:2 141:7
**coming** 31:10
46:25 72:12
75:19 145:11
176:4 183:7
**commencing**
2:12
**comment** 46:25
52:23 53:9,17
53:17 62:22
72:3 81:18
82:7 151:5
162:12,14
166:16 178:24
184:15 188:18
**commenting**
70:10 160:22
164:14
**comments** 46:24
47:2,15 48:10
50:21 51:3,3,5
52:15 53:24
54:6,7 55:4,20
56:6,13 58:13
60:11,18,18
61:4,5,12 62:6
62:6,24,24
63:14 65:15
73:11,25 74:6
74:10,24,25
75:1 76:16
77:13 80:9
90:8 125:18,19
147:15 158:25
159:1,5,6
160:8 161:12
161:14 162:8
164:17 166:14
**COMMERCE**
3:16
**Commission**

249:20
**committed**
128:4
**committee** 6:16
6:20,23 7:3
10:6,10 42:9
42:13,13,17,22
44:5,10,16,20
45:1 46:22
58:7 63:11
82:8 83:16,18
85:12,13 86:14
86:22 88:10,19
88:24 89:22
90:3 91:4,21
92:23 94:15
97:7,12 108:23
127:24 177:19
**committees**
84:25 85:4,8
86:4
**common** 111:16
172:14,14
**Commonwealth**
2:10
**communicate**
142:5 189:5
**communicated**
8:14 110:24
**communicates**
72:24
**communicating**
26:4
**communication**
61:9,9,10
62:23 64:11
70:20 105:17
153:21 154:6,8
154:9,14 157:7
158:8
**communicatio...**
21:21 60:24
61:14 62:20,21
63:22 64:4
65:8 72:1 73:3
96:22 166:20

166:25 167:21
168:11,21
169:1
**companies** 4:18
5:8 35:19,24
37:3 38:2,5
39:1 71:16
**companies'** 52:8
**company** 36:22
37:6,10,13
38:1,3,3 39:23
39:25 40:6,8,9
40:10,12 56:2
57:13 61:18
62:2,18 63:1
65:11,11,16
66:11,14 67:5
70:3,15 71:22
80:25 81:2
89:4 91:1 94:6
97:25 107:14
122:3,7,11
169:10 179:20
195:8
**company's**
161:2
**compare** 81:3
**compared** 18:17
75:2 79:25
148:24
**comparing**
122:14
**competitor**
120:7,17,19
**compile** 118:5
**compiled** 140:13
**complaining**
120:10,24
**complaint**
165:16
**complete** 127:16
**completely**
138:23 163:14
181:14
**completes**
127:11

**complicated**
60:23 142:24
**complies** 160:25
161:1
**comports** 165:10
**con** 62:19
**concede** 25:25
26:2 28:18
71:11
**concept** 63:20
95:19
**concern** 31:6
102:20 125:22
143:19 147:6
**concerned** 82:22
108:14 191:7
**concerns** 42:24
150:23 245:12
**concluded**
248:17
**conclusion**
100:20 101:2,8
102:4,17
103:13 122:25
**conclusions**
104:3
**concrete** 88:23
**confer** 11:23
147:20
**conference** 1:5
45:9 91:10
178:3,4,6
**conferences**
43:14
**conferred** 10:23
11:18
**confers** 11:8
18:16 126:22
**confident** 16:21
16:22
**confirmed**
148:11
**confused** 78:21
153:8
**confusion**
135:24

**conjunction**
81:4
**connection** 19:5
71:24 187:14
188:9
**consider** 26:17
46:8 89:11
95:3 108:10
**considerable**
13:15 17:3
**consideration**
58:24
**considered** 67:3
70:11 137:5
**consistency**
16:20 29:18,21
29:22
**constrained** 67:8
**consultant** 47:18
57:16 61:22
80:20 169:11
169:12
**consultants**
47:18 52:3
80:19
**consulted** 73:8
**consulting** 61:15
**consumer** 4:18
4:18 5:8,8
36:25 38:3
39:21 40:6,10
58:21 59:4
165:19,22
166:7
**consumers** 57:6
**contacting** 63:2
63:6
**contacts** 86:15
**contains** 109:13
**contemporane...**
190:14,21
**contending** 20:8
**content** 98:11
156:21 187:17
**context** 18:18,21
33:10 34:6,9

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                                    June 18, 2021

256

49:7 57:17
60:14 65:24
66:23 67:10
77:18 91:19
92:9 95:14
124:3,14 129:1
129:16 177:18
186:7
**contexts** 124:22
**continue** 11:23
82:20
**continues** 56:3
**continuing**
17:16
**contractor** 68:19
70:16
**controversy**
47:25 48:3,6
48:11,15 58:3
58:5 84:10,12
84:21 85:16
**conundrum** 47:6
**convenience**
172:9
**conversation**
26:25 72:22
93:14 108:25
164:19
**conversations**
148:21
**conveyed** 95:15
172:24
**convinced**
188:24
**coordinate**
16:12 85:9
**coordination**
14:23 15:24
29:15
**copied** 45:24
46:12 60:16,17
161:9 170:13
**copies** 169:1
**copy** 60:24 61:3
62:4,4 167:23
**copying** 169:8

**cores** 183:15
**corn** 89:2
**corners** 27:4
182:10
**Corp** 124:24
**corporate** 35:11
36:15 39:14
71:25 73:5
**corporation**
182:19
**corporations**
69:21 92:17
**corpus** 92:5
**correct** 30:17,19
35:13 36:18
39:19 42:19
55:3 116:11
157:7,25
160:18 164:11
175:15 177:8
186:2 191:10
**correcting** 164:1
**correctly** 30:15
**counsel** 11:19
34:24 37:22
40:14,21,21
47:21 49:12
57:11 61:3
63:7 72:15
73:7 74:23,23
81:2 95:24
96:9 98:20,21
100:17 101:1
105:9 106:16
106:23 125:17
125:18,20
145:11 148:21
150:16 154:14
164:16 166:19
176:14,19
179:18 180:7
183:7 189:11
245:4,5 248:14
249:10,12
**counsel's** 101:3
125:21

**counsels** 60:10
**counsels'** 43:12
**countries** 38:19
**country** 14:21
23:10 136:5
**couple** 50:11
57:24 64:25
83:21 115:5,11
119:9 128:9
143:5 166:14
167:8
**course** 8:8 37:7
56:21 93:22
94:21 98:23
110:10 111:11
138:3 141:20
149:13 166:15
247:8
**court** 1:1,19 2:8
5:22 6:2 10:11
15:21,24 16:2
16:14 17:9
26:4,16 27:20
29:1,2,17,23
30:1 33:2
49:21 53:21,24
58:12 68:16
69:4 74:17,19
102:25 113:5
123:25 125:16
125:21 130:21
130:23 140:2
146:4 165:17
165:17 185:5
188:10 192:25
245:11
**court's** 140:1
149:20 153:14
**courthouse**
69:11
**courts** 28:19
29:16,19 67:9
68:10,12,17
**cover** 58:5 79:8
81:16 91:13
95:18 160:6

194:11,15,17
**covered** 81:15
117:12
**cplacitella@c...**
3:24
**create** 48:17
73:9
**created** 100:8,16
104:6,6,10
106:7 113:1
167:17
**creates** 61:16
**creating** 66:12
76:23 122:7,12
**creativity**
107:20
**credible** 180:12
180:13
**critical** 142:16
**criticize** 84:18
**criticized** 68:5,9
181:20
**Cross** 106:14
**cross-examina...**
159:25 188:13
**crux** 79:18
**cryptic** 99:5
**ctisi@levinla...**
4:4
**current** 87:19
149:20
**currently** 59:20
**cut** 135:24
137:19

_____
**D**
**D** 5:3
**D'Onofrio** 27:15
**D.F** 86:2
**daily** 173:5
**Dan** 10:5 14:8
33:3 110:4
115:12 139:1
139:15
**Daniel** 3:4 6:9
**dark** 176:1

**darn** 64:24
**data** 125:23
**date** 16:20 32:5
37:2 131:9
134:12 135:8
136:5 192:15
192:21,22
249:8,21
**dated** 192:18,21
192:23
**Daubert** 60:7
62:2,18 64:22
65:9,25 66:2
66:10,12 77:7
77:10,17,23
79:21
**daughter** 82:16
**daughter's**
148:23 149:5
**day** 21:18 28:4
77:2 81:23
82:20 126:5
132:5,15,23
133:4,4 134:8
134:13 135:9
140:14 165:21
165:21 247:17
248:2,13
**day-to-day**
35:25 37:10,12
**days** 131:24
132:8,24
138:18 171:8
246:21,24
**DC** 3:11 5:5
**deal** 9:15,20,24
20:7,21 21:16
41:15 59:3
85:8 86:10
178:12
**dealing** 10:18,20
14:14 15:25
17:14 31:8
36:12 58:17
71:21 94:19
129:19 137:15

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

257

143:1 146:7
183:16 248:14
**deals** 84:12
183:15
**dealt** 9:16 17:4
22:8 23:6
67:14
**death** 169:19
**decade** 36:6,7
189:2,4
**decades** 84:12
94:21
**deceiving** 87:10
**December** 156:4
**decide** 9:15
64:19 135:12
175:4,5 247:12
**decided** 10:23
31:13 88:24
152:3
**decides** 54:1
**deciding** 74:9
**decision** 20:14
27:20 60:7,20
69:14 74:20
86:14,19 88:22
89:3,7,16,17
90:19,20,20,24
90:25 91:11
114:15 139:10
148:3 151:25
155:3
**decision-maki...**
92:25 94:18
**decisions** 9:18
11:24 57:22
88:20 89:24
94:20 114:6
146:6 246:9
**declaration**
108:7
**declarations**
109:22
**deeper** 180:20
**defend** 43:17
102:6

**defendant** 4:17
5:7 73:5,20
127:21
**defendant's** 8:25
74:18 76:6
136:4 142:5
143:4,8
**defendants** 7:6,8
7:11,15,18
9:21 11:8,9,25
12:25 13:5,23
29:14 39:14
46:22,23 52:1
66:19 74:21
75:20 113:12
113:25 114:2,5
128:4,8 129:11
130:9,22 133:8
133:21 135:18
139:5 140:21
175:3 183:8
**defended** 72:10
159:24
**defending**
177:15 179:4
**defense** 6:13
98:21 174:3,11
195:8,14
**defenses** 174:13
**defer** 41:11
70:25 139:1
144:18
**deference** 55:14
55:20
**deferred** 53:24
**definitely** 70:25
97:7
**definition** 61:8
**degree** 164:14
**delineation** 17:7
17:18
**delve** 33:7
180:20
**demonstrate**
87:12
**demonstrated**

117:3
**denial** 58:12
**denied** 60:9 62:4
77:11
**dep** 132:4
**departed** 111:19
**departing** 113:2
**department**
34:20,21,23
35:4,15 37:21
37:22 38:25
39:4 40:20,23
41:1 62:20,21
64:8 81:11
168:2,3
**departments**
34:19 35:6
**depend** 61:8
147:5
**depending** 13:19
41:22 44:2
61:1 65:23
**depends** 60:16
93:18,18 95:14
132:5 189:15
**depose** 50:4
140:8 179:6,14
179:15 246:15
**deposed** 19:7
43:21 131:3
134:19 135:1
**deposition** 19:9
19:12,13,18
20:4 57:12,13
129:2,10
130:25 131:5
131:10 132:9
132:18 133:3
133:22 134:23
134:25 135:9
137:9 139:15
140:6,9 142:7
143:3 144:3,4
144:21 145:15
245:24 246:9
246:13

**depositions**
159:24
**DePuy** 36:22
**describe** 127:13
160:23
**described** 71:18
150:17
**describes** 41:8
**describing** 16:13
17:6
**description**
75:15 77:20,21
79:9 100:14,15
121:5 130:14
151:7 158:7
159:3 160:6
161:5 166:23
166:23 167:2,3
192:23
**description/ar...**
100:23
**descriptions**
66:7 192:22
**deserves** 172:20
172:24
**designated**
12:25
**designed** 66:13
76:24 150:19
**desist** 150:18
151:5 152:19
152:20
**detail** 22:20 23:1
25:9 134:16
**detailed** 140:3
140:16
**determination**
29:24 66:17
114:21 124:18
**determine** 123:4
141:10
**determined**
25:23 70:6
**determining**
68:18 69:21
**detrimental**

175:21
**developed** 85:2
106:3
**deviated** 112:9
**dialogue** 112:14
**dice** 165:6
**difference** 34:10
70:9 93:3
153:3 154:16
**different** 11:15
22:23 33:18
34:13,18,19
35:6,20,20
39:6 44:14
56:23 71:17
78:13,22 84:15
84:21 85:4
94:20 105:25
153:24 154:21
155:13 167:9
179:16
**differently**
81:13
**difficult** 57:21
57:23 66:19
142:18 158:22
**difficulties** 8:24
**difficulty** 53:16
**diligence** 187:14
**direct** 4:15
247:2
**directed** 50:21
55:24 75:2
79:14 80:21
172:4,10,16
**directing** 76:7
173:24 184:17
**direction** 147:16
**directions**
146:13
**directly** 15:10
38:5 63:2
127:14 181:24
**director** 95:23
**disagree** 14:8
91:5 92:3,7,19

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                                    June 18, 2021

258

141:18 142:12
162:16 163:15
173:19 176:3
176:22
**disagreements**
247:7
**disagrees** 105:1
**disappointed**
141:11 190:10
**disclosable**
186:25,25
**disclosed** 93:15
104:22 110:10
110:11,13,19
110:21,21
187:1
**disclosing** 98:11
**disclosure** 27:3
**discontinued**
174:8,14,15,16
**discourse** 112:13
**discover** 33:6
**discoverable**
95:20 96:4
100:5 103:18
104:18 106:3
155:17 156:6
156:19
**discovered** 21:6
106:5
**discovery** 14:18
23:18 96:13,19
173:24 176:7
187:7
**discuss** 44:17
83:12,16
102:14 118:1
127:25 193:9
**discussed** 11:10
45:20 127:22
176:22 245:9
**discussing**
136:10 160:17
193:6
**discussion** 21:22
21:23 30:7

63:11 83:17
84:2 85:14
95:1 111:19
112:9 125:13
127:16 146:5
184:19 194:24
195:15 245:6
**discussions** 11:5
83:25 143:14
**dishonesty**
181:9 183:8
**dismiss** 54:24
**dispute** 6:3 8:19
8:22 10:22
90:5 146:16
155:15,18
**disputed** 11:1
**disrupting**
193:13
**distinct** 39:25
47:8
**distinction**
30:18 36:3
175:1
**distinctions**
30:20
**distinguish** 37:7
177:24 187:12
**District** 1:1,1
27:16 68:16
69:3 97:15
**disturbing**
181:16
**division** 36:17
37:7
**divisions** 34:21
**dlapinski@m...**
3:7
**Docket** 1:2
**doctrine** 97:5
**doctrines** 112:11
**document** 9:21
14:23 15:21
16:4,8 17:5
20:16,17 22:8
22:13,13 23:7

23:8,12 24:8
25:1,2,4,5 27:5
28:25 29:3,4,4
30:8,11,11,23
44:18,21,23
47:21 50:21,23
58:9,15,17
59:2,7,12,15
59:23 61:11
72:16 73:21,25
74:18,22,22
76:9,12,13
77:14,16,19
79:16 80:11,18
81:6,7,8 85:22
86:1,20,21
87:9,12,25,25
88:11 95:25
96:6,8,10
99:24 100:1,2
100:7,11,14,15
100:16,19
102:15,23
103:13 104:5,6
104:15 105:8
105:10 107:17
108:2 109:7,13
110:25 111:2
111:24 112:7
112:25 113:6
114:24 116:13
118:2,8,11
119:16 120:9
120:23 121:4
121:11,12,13
121:17 122:2
127:15 128:20
130:12 133:13
134:8,22
136:20 137:2
138:6,18 145:7
147:1 149:15
150:1,13
151:24 152:8
153:12 155:11
156:8 158:20

159:19 160:7
160:16,25
161:1,2,6,8
162:5 163:23
164:9 166:18
167:6,17
168:23 169:6
169:18,18
170:12 172:21
180:15 182:7,8
183:11,11,20
183:20 184:7,8
184:9,10
186:10 187:10
190:14 191:13
191:14,15,20
191:22 192:15
192:20,21,23
194:5,9,10
**document-by-...**
18:20
**documents** 7:24
8:4,10,23 9:2
9:14,16,19,23
10:2,7,16,19
10:21 11:1,1,2
11:3,6,9,10,12
11:14,16,20,22
11:25 12:1,4,9
12:19,25 13:2
13:3,8,23
14:10,14 15:14
15:18 17:10,25
18:1,12,14
19:18,20,22,23
19:25 20:5,6,8
20:9,13 21:7
21:10 24:12,14
25:15 26:8
27:9 28:18
29:23,25 30:12
31:5,8,22 32:6
32:14,20 33:22
33:25 38:12,13
40:4 44:16
45:19 46:3,20

47:5,9,12
51:25 52:8,12
57:23 58:22,22
58:23,23,25
60:2,15 63:4
66:9,21 67:18
67:21 72:13
75:18 77:7,8
81:9,17,25
82:19 86:8,10
90:3 97:18
99:25 102:16
104:2,20
113:15,18
114:9,17 115:5
115:11,19,21
116:2,9,12,20
116:20,23
117:21 119:13
119:20 122:19
123:11,12,14
124:7 126:4,21
126:23,24
127:4,18 128:2
128:5,8,11,13
128:14,17,19
129:3,12,14,17
129:21 130:1,6
130:7,18,18
133:6,7,10,12
133:20,23
134:4,11,13
135:2,7,15,18
136:9,10
137:16 138:8
138:10,10,16
138:17 139:6,7
139:8,9 140:1
140:6,9,13
141:23,24
142:2,8,20
143:5,13,25
144:3,5,7,11
144:22 145:13
146:3,7,8,14
146:17,18

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

259

147:9,11,17,19
148:15,17,18
150:4,6 160:1
160:20,23
168:1,15,17
169:5 181:17
181:21,23
182:14,15,16
183:4,15
189:25 190:3
191:12,17
193:1,9 245:12
245:18,24
246:8
doing 26:16
29:17 56:16
58:4 109:11
124:24 129:16
143:12 158:21
162:24 164:4
181:24 183:3
dollar 94:5
Donald 106:10
106:11,24
downgrade 13:5
15:5 128:4
downgraded
11:9 128:12,15
128:19 129:3
129:12 133:8
138:10,12,22
downgrades
136:8
downgrading
128:22 181:21
dozens 51:11
draft 47:13
51:16,17 52:3
52:4,11,20
53:5 54:4 60:6
60:7,8 62:18
63:4 65:8,12
66:1 70:4,5
75:22 76:1
77:9 120:9,24
121:2 150:15

151:8,15
152:14,16,17
152:18,19,20
152:25 153:4
153:10,12,21
153:23,25
154:3,5,9
155:11 166:19
167:6,10,10,12
167:13,15,15
167:23 173:2
174:20,22
drafted 62:2
80:19 154:21
155:11,13
drafters 79:10
drafting 66:11
81:1,12
drafts 51:2,10
51:14 52:9
70:7 152:3
168:10
draw 101:2,7
102:5,17
103:12 104:3
122:25
drawing 104:4
drawn 178:13
Drinker 4:13
7:17
DRIVE 3:4
dropped 104:10
drowning 51:16
51:16 168:19
168:19
due 153:19
180:10 187:14
dupe 191:19
194:2
duplicate 51:12
duplicates 51:13
duplications
142:19
duplicative
11:11
Durlak 169:8

duties 44:13

_____

E

E 3:1,1 5:14,14
249:1,1
E-G 160:13
ear 150:6
earlier 68:7 72:3
83:17 95:1
108:24 128:9
165:21 178:3
188:18 190:6
early 102:24
ears 88:10
easily 158:18
EAST 3:4
Eastern 68:16
69:3 97:15
easy 54:23 106:8
180:21
edge 26:3
edit 52:10 79:23
80:1,2 165:8
edits 51:21
52:13 59:25,25
60:1 65:4
72:25 77:22
80:6,6 160:24
160:24 164:17
167:7,24
169:13
educate 43:15
educated 177:13
education 73:8
effectively
145:12 188:12
efficiency
179:18
efficiently 8:12
effort 24:16 71:2
126:2,3 182:13
182:17
efforts 7:21 8:2
15:13 17:4
18:6 21:14
22:22 23:11

49:18,21,23
137:11 165:5
246:23 247:18
eight 119:17
126:11 150:7
150:10,12
eighties 85:4
either 11:23
13:6 21:1
65:12 81:21
105:21 111:3
115:21 117:17
127:21 130:19
139:25 144:15
152:16 184:21
email 8:10 19:17
60:23 79:8
91:13 93:14
106:9,9 116:3
116:17 117:21
124:8 137:21
154:6,10 156:2
156:3,5,5,14
156:17,19,22
157:5,8,11,17
157:21 171:8
172:8,10 184:1
184:1 194:11
194:15,17
emails 34:18
45:8,11 113:14
156:1 157:23
emergency
87:20
emphasis 54:25
employed 38:4
38:14,20 40:5
40:7,9
employee 62:23
67:4,4 68:20
249:10,12
employees 61:11
64:3,8
enable 11:22
encourage 56:14
ended 11:11

enforce 87:16
engage 49:15
engaging 63:7
English 172:15
enjoy 248:10
ensure 15:13
17:5 18:6
56:13 57:9
124:1 125:24
160:24 166:6
entire 52:4 92:5
94:5 128:20
157:6,9 173:6
entirely 136:20
entities 39:14
entitled 54:4
73:2 164:21
173:2,8
entity 64:12
entries 106:17
109:10
equal 132:8
equivalence
61:17 64:17
equivalent 63:20
64:3,6,10
65:13,19 66:24
67:4,10,14
68:4,11,19,23
70:2,6 96:14
erroneous
153:20
error 22:4 26:9
esoteric 179:1
especially 129:1
134:5 182:22
185:21
ESQUIE 5:19
esquire 3:4,10
3:15,21 4:2,7
4:14 5:2,3,4,16
essence 178:14
184:16
essentially 52:19
64:8 128:21

establish 183:9
et 7:25 34:21
    38:4 41:21,22
    43:7 75:25,25
    84:2 85:6
    174:2
evaluate 114:15
evaluating
    105:20
event 21:25
    172:5
events 43:13
eventually
    118:15
everybody 15:9
    21:2 136:4,15
    152:2 171:7,9
    171:14 172:2
    247:22 248:5
    248:10,16
everyone's 6:12
    8:2
evidence 99:22
    102:19 104:21
    104:21
eviscerate 92:16
ex 158:19
exact 12:12
    13:12 24:7
    30:10 41:11
    42:11 186:1
exactly 21:11
    22:2 92:9
    105:6,13
    162:23 166:5
    177:8
examination
    247:2
example 15:5
    36:19 45:23
    54:2,16 55:10
    55:11,12 58:11
    64:16 79:18
    88:23 90:6
    106:19 133:5
    137:24 138:6

139:1 146:15
147:11 160:19
161:6 162:5
163:5,22 169:5
170:15 171:4
171:22 177:2
178:2,2 180:18
185:4 189:20
examples 59:1
    59:14
excellent 165:14
    188:16
excess 13:1
exchange 183:17
exclusively
    189:15 245:7
excuse 89:23
    115:12
exemplar 81:8
    127:15
exemplars 11:3
    126:21
exhausted 94:13
Exhibit 192:6
exhibits 19:11
    114:19
exist 111:2
existed 103:12
existence 104:21
exists 24:12
exit 148:12
expanding 58:4
expect 85:17
    87:6 141:3
expecting 27:1
expedited
    139:19,20
expense 115:19
    116:6,23
experience 56:9
    143:1
experiences
    96:17
expertise 71:25
Expires 249:20
explain 19:3

24:24 25:9
26:6 102:11
106:1 120:5
126:10 136:13
156:21 158:18
171:23 186:12
187:12 193:16
explained 21:18
    46:7,9 171:6
explaining 43:24
    140:16 193:16
explains 34:9
    157:4 162:22
explanation
    140:3
explore 188:23
explored 179:12
exponentially
    32:24
expose 90:13
express 178:15
expression
    141:25
extensively
    123:20
extent 72:2 80:1
    89:15 106:7
    125:22 141:8
    167:10 177:17
    177:21
extra 7:20 126:2
    126:3 172:20
extremely 8:16
    182:15 247:6
eye 23:24 33:13
    33:13 73:8
    77:4 88:12
eyes 87:10 88:10

_____

F

F 68:15 125:1
    249:1
F2d 97:17
face 74:19 75:14
    100:13,23
    107:16 108:2

112:7 170:12
180:10,19
fact 11:10 15:8
    22:21 25:2
    27:5 32:22
    51:21 72:14
    73:4 79:5,13
    89:6 100:5
    128:3 129:9
    137:8 139:11
    151:11 152:4
    157:22 159:15
    160:21 163:10
    164:2 173:13
    182:23 184:19
    186:4 194:11
facts 47:21 77:3
    95:19 96:1,4
    98:16 103:9,18
    104:9,17,18,22
    105:4,11,16,21
    106:2 109:22
    109:23,25
    110:9,18,24,25
    111:2,24 124:8
    127:3 146:21
    179:2,6,8
    181:13 184:17
    184:18,21
    185:5,6,10
    186:11,12,22
    186:24 187:3,6
    187:13,13,13
    188:7 189:21
    190:24
factual 71:1 96:6
    96:11,18 97:20
    97:23 98:24
    99:9,13 109:13
    109:18 122:20
    123:1,2 124:20
    134:3 162:12
    173:19 177:3
    178:14
factually 95:2
Faegre 4:13 7:17

fair 26:2 33:16
    37:19 152:6,8
    152:11 159:18
    176:11 185:1
fairly 14:15
fairness 137:20
faked 101:13
fall 97:13 126:23
falls 18:21
    171:24
falsely 181:12
familiar 134:2
familiarity
    135:4
family 13:7
far 15:14 22:18
    23:14 55:7
    58:6,24 76:17
    109:1 135:25
    149:9 158:21
farther 37:2,16
fashion 180:17
fast 29:18
Father's 248:2
favor 80:14
    106:11
favorite 141:24
FAX 3:6,18,24
    4:10,16
FDA 95:9
    161:24 162:2
feasible 146:13
federal 6:2
    29:16 32:10
    52:24 59:18
    69:11 124:25
    149:3 165:17
feel 26:3,15 43:4
    93:23 112:8
    136:10 145:14
    172:12 181:7
    182:7,11
feeling 9:6 73:1
    144:17
fell 11:1
felt 11:1 54:20

fighting 21:19
187:17
figure 22:2
53:21 82:12
98:22 109:11
112:25 113:7
149:19 178:7
filed 186:6
files 98:16
filing 165:16,19
final 51:17 65:15
99:2 150:21
151:13,14,19
152:15 153:5
153:14,16,17
155:7,15,21,22
159:19 167:25
174:23
finally 136:24
financially
249:13
find 50:20 64:2
64:3 75:4
95:12 118:14
123:25 126:6
128:17 145:7
153:16 161:15
189:16
finding 126:3
fine 118:10
139:23 148:5
154:24 164:13
finest 141:5
finish 49:5,5,6
98:5
finished 246:4
finite 140:10
144:13
firm 3:15 6:10
67:20,21,24
81:4,5 173:6
174:3
firmly 246:19
firms 17:4 40:20
first 7:19 20:16
21:18 26:22

57:25 68:14
71:15 74:8
83:24 86:19
88:4 112:19
123:13 131:23
136:17 151:1
156:2,2,3,17
157:17 166:16
176:15 184:11
185:13
first-in-time
157:5
firsthand 36:19
fit 41:4 114:16
fits 16:9 35:4
Fitzpatten 72:5
five 11:14 30:23
31:24 32:15
34:3,8 138:9
161:11 195:13
five-minute
81:21 82:9
83:7 195:7
fix 55:8,9 56:22
56:23
fixed 57:2
flagged 148:4
flavor 34:16
148:16
flip 77:16 78:9
164:15
flipping 156:8
FLOM 5:1
Flonase 68:14
68:15
floor 5:20 83:13
94:12 119:10
127:12,19
FLORHAM
4:15
FLORIDA 4:3
fluctuates 13:19
focus 22:7 66:23
66:24 67:1
184:19 189:24
focused 33:4

161:15,17
folks 15:7,7
16:10 136:16
178:19
follow 16:11
134:6,24
143:17 178:5
follow-up 17:23
98:2
following 14:3
77:7 102:3
165:15 188:22
195:17 245:1
followup 178:9
force 56:6
forces 70:3
forefront 31:11
foregoing 249:5
foreign 38:11,14
forget 21:24
64:9 136:18
forgetting
119:21
forgot 38:16
42:8
form 104:14
114:9,25
115:10 116:16
128:20
formal 85:1
FORMAROLI
1:18
formulations
124:9
forth 8:20 22:1
176:11 249:8
Fortis 70:23
71:2,19,24
fortunate 246:12
fortunately
175:4
forward 106:12
149:6 172:3
183:7
foster 112:13
found 80:14

130:18
four 13:1 27:4
34:8 42:18
78:22,25 124:7
161:11 176:16
182:10
fourth 157:20,21
157:24 158:2
frame 44:2
147:18
frankly 21:8
free 43:4
frequently
187:20
Friday 1:11
185:21
front 10:8 11:15
11:20 29:13
31:1 100:2,11
104:2 137:11
137:12 146:4
154:17 174:17
froze 171:11,15
frozen 171:17
full 13:6 52:4
130:20
fully 115:4 129:4
133:11,12
fulsome 143:16
fun 62:10
function 70:6
functional 61:17
63:20 64:3,6
64:10,16 65:13
65:18 66:24
67:4,10,14
68:4,11,19,22
70:2,9
functions 61:23
69:21
fund 84:18
fundamental
109:2
funny 67:7
further 10:21
11:8 29:12

36:8 37:18
45:5 102:10
137:12 163:19
247:12 249:9
future 76:8 91:8
148:19

G

G.F 81:3
gain 43:1
Gambino 101:8
102:24 104:7,8
104:11 106:11
108:4,12
gathering 100:9
158:9
GC 41:3
general 8:5
18:17 33:5
34:13,20,24
36:15 37:22
40:14 60:10
61:3 63:20
95:24 98:10
119:11 127:11
127:13,20
132:22 144:16
145:23 180:17
180:24 189:13
generally 41:9
81:25 122:18
generic 117:14
generically 88:5
88:11
genital 89:13
90:7 91:16
gentleman 101:1
geographic
44:19
Gerel 3:9 6:15
getting 16:1
33:15 44:18
69:1 97:1
109:1 116:11
125:3 139:20
158:22 175:2,3

177:23 248:11
**gigantic** 47:5
**give** 11:22 27:9
  27:14 34:5
  35:3,9 37:3
  48:22 49:2
  52:20 64:5
  74:24 78:25
  88:23 90:10
  91:15 92:8,11
  92:11 93:1,2
  94:6 109:24
  118:16 140:25
  146:13 147:13
  148:16 151:21
  161:19 163:21
  164:23 171:22
**given** 25:6 60:9
  71:23 72:2,4,6
  93:19 134:7
  135:4 164:19
  177:12
**gives** 56:6 95:25
  130:14 147:16
  161:11
**giving** 59:12
  65:18 73:13
  163:13
**glad** 9:9
**global** 169:7
**go** 6:13 12:23
  22:2 25:13
  26:14 32:18
  36:5 37:15,17
  39:3 47:3 49:5
  49:17 59:25
  63:10,16 65:1
  65:24,25 69:16
  71:9 72:2
  81:21,22 82:2
  82:15,23 86:23
  99:17 102:14
  104:18 106:18
  109:21 111:17
  116:21 117:13
  117:25 118:2,5

118:12,13,14
119:7 124:6
128:16 131:24
143:11 144:20
145:15 147:20
148:15 149:4
150:5 151:11
154:10 155:4,7
161:4 163:19
164:15 171:18
176:2 178:3,23
179:25 194:23
246:22
**god** 94:2
**goes** 37:2 45:16
  53:5 55:7 58:6
  60:19 68:6
  75:16 76:16
  84:12 86:8,9
  86:14 93:20
  100:15 107:14
  125:21 128:22
  146:1 150:6
  185:15 246:17
  247:22
**going** 9:9,15
  11:6,24 12:1
  14:1 15:4,6
  18:22 19:10,12
  20:5 21:1
  24:20 25:8,25
  26:21 27:13
  28:8,18 29:15
  31:4 37:22
  42:24 43:2,9
  48:17 49:20
  50:15 57:9
  58:10,14 59:17
  59:19 64:25
  65:1,5,14
  67:17 70:3,25
  72:14 73:9,16
  75:1,1,23 80:5
  80:6,7 81:6,22
  82:15 84:15
  85:22 86:5,6

86:21 87:5
90:12 95:8
101:6 105:23
106:1 107:12
114:4,19,20
117:13,15
126:9 127:8
128:1,6 130:17
130:24 131:3,6
131:7,24 132:6
132:14 135:25
136:1 137:10
138:24 140:5
140:11 141:10
143:24 144:2,9
144:15,20,23
145:7 146:12
147:12 148:17
149:5,18 150:8
151:3,16 152:3
154:13 155:1
164:18,19
165:15 170:10
178:8 179:14
179:15 181:9
182:6,10 183:4
184:3 186:1
187:22,24
188:18,18,20
189:11 193:6
194:8 246:22
246:25 248:11
**Golkow** 125:10
  125:12
**good** 6:4,8,14,17
  6:18,24 7:7,10
  7:13,16 9:12
  10:4 15:2
  16:18 19:1
  47:7 64:20,24
  81:8 93:6
  115:15 117:10
  124:5 131:5
  158:21 170:15
  175:16 177:2
  192:4 247:14

247:23
**GOODMAN**
  5:16
**Gorsky** 50:2
**gotten** 137:1
**graduating**
  82:14
**graduation**
  148:23,25
  149:5
**grammatical**
  56:22
**granted** 60:8
  62:3 77:11
  140:11 158:12
  176:15
**grappled** 23:17
**grappling**
  105:25
**great** 137:1
  147:10 160:19
  194:20 248:14
  248:14,14,15
**grossly** 182:19
**ground** 117:12
**group** 12:18
  41:20 47:6
**groups** 39:10
**grown** 32:23
**guarantee** 187:1
**guess** 17:10 20:3
  39:9 66:22
  103:16 118:13
  119:6,15
  121:21 135:11
  144:18 154:15
  162:16
**guessing** 189:3
**guideposts**
  11:22
**gut** 117:15
**guy** 64:18,24
  94:8
**guys** 94:2 168:17

_____
        **H**
_____

**H** 5:4,19
**Haas** 125:15
**hair** 111:5
**hand** 46:5
  135:16
**handful** 38:13
  126:20
**handle** 117:23
  127:17 139:24
**handled** 32:12
  134:21 148:17
**hands** 34:2
**hang** 12:6 109:4
  112:18
**happen** 116:9
  185:25
**happened** 22:3
  43:18 45:12
  50:2,3 112:6
**happening**
  177:20,25
**happens** 15:3
  90:14 132:13
  178:4 179:18
**happy** 26:6,15
  35:8 62:15
  102:10 136:23
  139:1 143:4
  248:2,11
**hard** 17:15
  51:3 53:11,12
  56:17 59:21
  67:18 83:5
  163:2 171:22
  172:21,24
  246:14 247:5
**harm** 71:4 115:7
**Hass** 124:24
**hat** 47:1,3 89:20
**hats** 89:19
**He'll** 188:11
**head** 20:22
  89:21 119:21
  146:12 194:16
**health** 91:1
  174:14

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                                    June 18, 2021

263

hear 24:9,9
  26:22 55:2
  81:25 94:13,14
  123:7,8 131:2
  171:17 188:10
  189:12 246:5
heard 49:11
  81:24 82:21
  85:5 126:16
  165:3 178:6
  245:16,21
  246:18
hearing 66:10
  124:19 248:17
heart 104:18
heavily 68:6
heavy 135:4
heck 174:21
height 55:17
held 86:9
help 7:21 8:11
  14:17 15:20
  23:2 96:18,19
  101:9 124:17
  137:25 156:23
  185:23 187:11
  189:19
helpful 8:1,16
  34:14 126:6
  189:19 245:16
helps 147:23
  187:8
hereinbefore
  249:8
hesitation 19:21
  245:15
hey 64:20,24
  74:23 93:7,9
  99:17 104:11
  106:10 163:5
  177:22 178:6
hide 74:21
  181:13
hiding 174:2
hierarchy 41:1,4
high 24:22 35:13

82:14 136:1
highlight 43:10
  111:22
highlighted
  54:15 124:8
highly 55:18
  174:6
Hill 3:5 69:8
hip 36:21
hired 61:22
  179:19
historical 10:11
historically 22:3
  22:21 85:1
history 9:13
  16:7 31:11
  144:6
hit 57:24 172:9
hits 172:2
hitting 16:13
  46:18
hold 42:10,11
  60:25 63:15
  80:11 87:25
  94:11,11 98:4
  153:1,1 170:11
hole 94:19
  180:12
holes 63:17
honestly 56:23
Honor 6:8 7:7
  7:11,13 10:5,7
  12:6,15,21
  13:15 14:12,17
  15:11 16:5,13
  16:25 17:6,8
  17:13,20 18:3
  18:10 21:17
  22:18 23:13,24
  25:21 26:1,24
  27:24 28:14
  29:13 30:2,18
  31:14 32:4,16
  33:9,23 35:9
  35:13 36:23
  38:11 39:8

40:1 43:11
45:16 46:17
47:23 50:24
51:22 57:18
58:15 59:14
60:1,12 62:17
63:9 64:15
66:7 69:9
71:13 72:9
73:15 74:15
75:11 76:11
78:1 79:20
80:14,24 82:13
83:15,22 85:19
92:4 95:8 96:5
98:12 101:10
101:21 102:2,9
102:22 103:21
105:14,24
106:6 107:9,13
108:13 109:5
110:20 114:5
115:3 118:25
119:19 120:1
121:7,9 123:9
124:17 126:18
127:23 129:23
130:3 131:14
131:16,23
133:1,7 135:14
135:20 136:2
137:25 138:1
139:4 141:1,9
142:4,9,11,14
142:16 145:1
145:21 148:6
149:11 151:1,7
151:22 153:6
153:20 154:15
154:23 156:7
156:20 157:8
158:17 159:7
160:19 164:6
165:6 166:13
166:17 169:3
170:9,14,15,18

171:3,16,20
172:12,18
173:1 174:13
175:23 176:10
176:20 178:18
179:24 180:3
181:1 182:14
183:5 184:14
186:8 187:9,23
188:17 189:8
190:10,13
195:1 247:20
248:6
Honor's 138:24
hope 11:21
  16:16 45:2
  134:18,18
  147:3
hopefully
  132:17 145:9
  179:15 188:21
  189:24 194:25
  195:7,11
  246:12,16
  248:10
hopes 133:19
hoping 75:10
  92:18 186:11
Hopkins 42:17
Horse 1:20
horse's 189:12
host 71:20
Houghton 35:17
hour 148:13
  194:24 195:11
  248:11
hours 143:10,11
How's 149:23
human 22:4
  26:9 94:4
hundred 26:7
  32:21 42:4
  45:13 52:16
  137:6 138:9
  165:22,25
  179:19 245:22

hundreds
  121:12
hybrid 71:8
hypothesize
  172:22
hypothetical
  44:17,24 45:4
  47:17 49:2
  52:19 56:18
  79:4 93:11
  163:23 164:5
hypothetically
  91:13
hypotheticals
  62:12 72:20
  86:12

I
Idaho 50:23
idea 6:4 23:20
  65:13 68:11,24
  93:6 124:23
  188:13
ideal 139:17
identical 19:22
identification
  127:3
identified 24:3
  45:18 95:21
  115:22 117:21
  126:25 130:7
identify 10:25
  19:19 68:8
  86:25 129:11
  133:19 139:7
  147:19
identifying 7:24
Ignore 64:9
illustrate 137:25
illustration
  95:20 122:13
image 50:18,22
  50:25 51:4
  52:14
imagine 23:21
  35:10 122:4

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

264

immediately 118:13
immensely 8:1
immersed 141:19
impact 43:2 59:19 72:7 74:5 86:15 91:8
implant 36:21
implicate 45:9 45:13 127:14
implicated 93:10
implicates 91:1 91:1,2
implication 185:8
implicit 147:13 178:16
implied 62:7
implies 108:17
important 34:25 49:7 51:8 54:9 54:13,14,21 55:1 57:17 69:19 82:18,21 84:4,11 85:13 95:2 99:11 103:16 107:16 110:14 111:10 111:12 132:10 132:18 144:7,8 144:11 149:3 169:24 181:2 183:1 187:12 187:21 189:24 190:8 194:5 245:20
imposes 69:20
imposing 165:11
impossibility 23:22
impression 31:3
impressions 20:18 21:21 45:12 55:23

97:6,19 98:22 100:6 186:13
improper 49:19 49:21 162:21
improve 49:16 77:1
improves 54:10
in-house 47:15 47:18 61:10 62:4 65:7,17 70:17,21 101:1 123:2 150:15 150:18 166:24
in-person 148:24
inability 137:6
inaccurate 162:18 165:19
inadvertence 26:9
inadvertent 25:4 25:16,24 26:19 27:3,6
inadvertently 17:17 21:6 25:3,14 30:13 45:19
inapposite 67:25
inappropriate 73:17 163:16 182:13
include 46:3,20 52:23 90:9,24 90:24
included 15:17 61:14 97:24 124:10
includes 15:3 41:17 97:8 130:10
including 8:21 15:25 26:13 71:20 84:22 177:7
inclusion 26:8 26:19

incorrect 167:1
incorrigible 119:25
increase 56:11
increasing 44:19 161:22
independent 65:11 68:19 70:16
indicate 171:9
indicated 79:7,9
indicates 19:25
indication 183:17
individual 8:10 35:24 37:5 60:15 119:13 148:15 150:5 182:22
individuals 35:16,22 37:9
industry 43:6
inevitable 147:4
infer 122:21 157:16 185:6 193:1
inference 101:2 178:13 180:3,4 185:8 186:3
inferences 182:4
influence 50:22
inform 43:6,15 44:13
informal 85:1
information 26:6,15 65:16 95:15 96:15,21 98:15,24 99:6 99:18 100:9 102:7,11 103:22,24,25 104:4,9 106:12 106:22 108:3 109:14,16,19 109:25 112:23 114:6,10,11,12

115:1 118:1,4 118:10 122:20 123:1,3,5,23 124:1,13,20 125:25 126:4 139:12 146:23 158:9,13 165:3 167:5 172:23 176:18 177:3 177:18,22,24 178:14 181:15 181:25 183:17 185:9,16,16 186:2,5,6,17 188:8 245:8,9 245:13,14
informed 71:1 176:19
infringing 122:3 122:15
inherently 152:20
initial 28:16
initially 10:15 11:5,7
input 35:25 72:7 133:23 135:17 151:10 173:13
inquiring 173:24
inquiry 30:2
inside 166:19
insignificant 113:24
instance 16:2 56:19,20,24 57:1,3 74:8 86:20 152:16 180:15
instances 24:2 146:20 181:23
intended 184:23
interact 39:10
interest 124:17
interested 249:13

interesting 33:23
interests 107:4 144:13
interrogatories 105:23
interrupt 29:6 115:13,14 125:2
intertwined 46:21
intimately 46:21
invade 99:1
investigate 99:3
investigating 98:17 186:14
investigation 96:6,12,19 97:20,23 98:21 99:10,13 108:3 187:15
invocation 181:9
involve 55:12
involved 17:19 21:4,5,5,8 37:19 38:12 54:12 55:16 81:1 83:25 85:15 86:18 87:13,14,15 88:20 89:7,16 90:18,22,23 92:24 94:17 96:24 116:6 183:23
involvement 49:22,25 81:11 84:4
involves 84:21 120:9 122:2 182:7
involving 94:22 110:25
irregular 107:19
issue 9:17 12:4 12:10,17 17:11

19:23 20:6,15
23:6,16 24:25
25:11 28:7
30:8 31:1,10
32:5 33:13
36:2 38:6,24
39:2 40:4 43:1
45:11 46:16
47:5 55:24,25
57:16 61:13
66:6,25 67:15
76:12,20,21
79:21 82:1
83:1,13 84:9
86:16 94:13,15
95:21 102:15
103:16 105:25
116:10 120:21
120:23 126:17
127:14,24
128:25 133:6
136:19 137:18
137:23 140:4
140:11 144:10
144:14,19
145:12 146:24
148:4 151:23
160:17 176:4
176:21 178:12
245:21 246:19
247:12
**issues** 9:7,15
28:9 31:24
34:15 37:12
43:7,7,16,25
46:19 51:7
71:1,3,21
72:12 75:2,3
84:13,25,25
85:15 86:10
87:13 93:10
103:1 117:18
119:11 127:20
128:9 134:3
138:24 143:17
145:23 147:22

161:16 176:25
180:24 247:15
**iterations** 168:2

**J**

**J&J** 7:8,11,14
7:18 9:21
12:13 19:24
20:1,7,14
24:13 30:8
34:16 35:4
36:16 37:20
38:20,25 39:3
39:14,17 40:5
40:8,9,10
42:12 44:21
47:14 48:14
50:2 61:10
62:7,23 63:7
64:7 71:4
79:22 81:11
87:9 88:12
90:4 92:3
100:12 101:8
101:14 105:1,2
118:2,3,9
120:20,24
122:4,8,12,20
122:21 123:7
144:18 146:22
147:5,16
148:21 153:15
158:25 174:1
175:21 185:14
188:5 246:7
247:2
**J&J's** 24:18
30:11,16 42:1
42:21 49:21
88:6 95:23
100:7,14,23
152:7
**Jacobs** 169:9
**jblock@levyla...**
5:21
**JEROME** 5:19

**Jersey** 1:1,21
2:10 3:5,22
4:15 15:6 27:2
27:17,19 32:13
69:6,14,15
70:13 136:6
249:5,20
**Jessica** 5:3 7:8
14:7 25:12
38:15 43:10
45:8 107:10
117:2 120:4
125:2 154:1
188:25
**Jessica's** 13:25
178:24
**job** 41:22 109:11
158:21 166:10
181:24 185:20
**jobs** 183:3
**Joe** 194:16
**JOEL** 1:14
**John** 5:4 7:14
41:8 59:2 63:2
64:19,22 83:18
95:23 106:10
130:19 139:8
145:15 170:17
170:19 172:9
172:11 184:11
184:12
**john.beisner...**
5:6
**Johnson** 1:5,5
4:17,17,17,17
4:18,18 5:7,7,7
5:7,8,8 36:6,6
36:24,25 39:21
39:21 48:17,18
49:13,13,15,15
49:16,16 50:18
50:21 58:10,10
58:20 59:4,4
77:1 87:17
110:9,9,17,18
131:2,2 148:3

148:3 165:18
**Johnson's** 50:18
50:22 58:20
87:17 96:16
165:18 169:7
**join** 195:10
**Jones** 86:2 99:17
104:7 106:10
106:24
**jschneider@m...**
1:15
**judge** 6:14 15:25
21:23 22:8
23:6 24:25
25:11 37:18
53:19 54:9
113:5 138:16
144:12 149:3
150:2 175:11
191:4 192:5
248:2
**judgement**
116:13
**judgment** 54:8
54:12,20 55:10
55:15,15
116:21,25
**juice** 141:25
**July** 27:20
**juncture** 33:7
**June** 1:11 31:7
132:19 163:24
164:1 249:21
**juries** 49:17
**jurisprudence**
181:6
**jury** 50:23 54:18
76:8
**justification**
147:6
**justified** 118:22
**justify** 134:16
147:8
**justifying**
134:15 135:11

**K**

**K** 3:10 117:7
**keep** 87:19
136:1
**keeping** 136:4
176:24
**keeps** 16:1
**Kim** 35:16 37:23
41:8,10,14
**kind** 15:23 29:18
33:20 41:14,19
72:1 73:10
82:12 128:16
131:24 133:3
137:5 145:25
146:4 148:15
164:15 166:5
180:18 186:12
187:11
**kinds** 26:12
89:24 91:2
**knew** 94:2,3
**know** 8:7,17 9:6
13:19,25 14:9
16:6,14 18:5
19:5 22:3,5,7
22:20,22 25:5
25:20,25 31:2
32:15,19 33:4
34:2,19 35:1
35:12 36:9
37:1,14,15
41:2,17,25
46:21 47:12
48:19 49:11
51:11,25 57:9
57:10 61:2
62:14 63:21
64:7 65:25
67:12 69:12,12
69:13 72:9
74:10 75:18
77:8,25,25
78:4 79:24,25
80:5,7,24 81:5

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

266

84:1,7 85:13
88:24 89:12
91:24 93:25,25
94:18,25 97:4
99:21 100:10
101:4,5,8,12
101:16,16,25
102:23,23
103:1,4,4,5
104:1,5,6,9,12
104:20,23
105:25 107:6,8
107:25 111:6
111:14 112:15
113:23,24
114:18 121:1
125:4,16
126:25 127:8
129:18 130:14
130:23 131:2,3
131:9,23 132:3
132:19 133:16
134:8,9,15,20
135:2,9 136:24
138:25 140:5
140:23 141:17
141:24 142:1
144:9,15 145:5
145:8,24
147:12,13,23
148:20 150:20
152:7,9,24,25
153:9,11,16,17
154:24,25
155:22 156:25
157:9,23
158:11 161:1
163:3 164:18
167:16 168:16
168:18 170:7
170:18 171:16
175:20 178:23
179:1,1,10
180:11,12
181:8,17,19
182:3 183:2

184:20 185:9
185:20 186:20
187:8,9,23
189:4,13,23
190:2 191:1,15
192:15 245:19
246:22,25
**knowing** 74:25
103:7 144:6
**knowledge** 43:1
**known** 4:18 5:8
21:2 168:9
**knows** 18:25
21:2 171:7
179:15 182:14
248:12
**KONIGSBERG**
5:18
**Kugler** 2:8
249:3,19

_____
**L**
L 5:14,16
**label** 89:11,11
90:7,9,19,24
90:25 92:15
122:14,15
**labeling** 87:18
**labels** 94:13
122:14
**LaBow** 42:17
**lack** 141:4
**LAKE** 3:4
**lands** 171:8
**language** 52:24
**Lapinski** 3:4 6:8
6:9 10:4,5 12:5
12:20 13:16
14:4 17:20,22
18:9,10 26:22
27:21 28:13,14
28:23 29:11
31:14,20 46:15
46:17 50:14
52:18 57:15,18
60:5,12 61:7

62:10,14,16
63:18,25 64:14
65:22 72:24
73:15,24 74:14
75:9,10 76:11
77:15 78:7,12
79:13,20 80:13
80:23 82:2,7
82:11,19,24
83:11,14,20
103:21 105:19
106:6,15 109:4
112:18 114:3
115:7,11,15
118:20,25
119:3 121:7
125:2 126:18
127:23 129:21
129:23 130:3
131:12,13,17
131:21 133:1
133:16 135:13
136:16 137:19
139:4,16 141:2
143:5,22
144:17 145:5
145:19,20,24
147:2,24 148:6
148:11 166:13
166:16 169:3
171:16,19
179:14,23,24
183:5 189:23
195:1 245:19
**Lapinski's**
107:19
**large** 18:13
**large-scale**
15:15
**largely** 189:1
**Late** 19:16
**Laughter** 24:21
62:13 75:12
80:16 83:6
119:24 126:3
126:12 145:4

149:7 159:22
175:7 190:11
**law** 3:15 6:9
8:20 27:2
37:21,21 38:25
39:4 40:20,20
40:22 41:1
47:24 48:19,22
63:21 67:9
73:19 81:4,5
92:5 104:24
108:1,21 111:4
111:19 112:3
113:2 114:22
114:23 116:24
123:19,20
134:5 152:17
160:25 164:10
165:20 174:3
182:21
**Lawrence** 4:7
7:2
**lawyer** 39:3,6,6
44:13 48:9,13
51:2,3,4 52:10
53:20,23,23
54:1,20,24
55:8,17 56:5
56:11,19,22,24
57:2,3,4 60:24
60:25 62:22,24
63:3,23 64:5
64:13 70:20
73:18 79:22
86:15 87:13
89:6,24 92:8
92:10,14 93:9
93:21 94:5,8
97:25 102:19
107:5,5 111:3
120:24 123:15
123:22 151:9
151:15 153:22
153:22 154:7
155:11 161:6
162:23,24

163:5,10,15,17
163:17 164:14
165:7 166:6
171:5 177:23
179:9,20 184:7
184:9 185:14
185:17 186:13
187:14
**lawyer's** 49:22
54:11 55:11,12
55:20,23 93:11
93:17 98:16
105:17 166:9
168:21
**lawyers** 35:23
37:21 38:4,17
38:24,24 40:4
40:11,11 41:15
43:6 50:6 51:5
56:13 67:22
72:2 84:5
108:1 111:20
112:4,12
124:21 160:22
164:22 168:21
172:13,18
173:3 181:24
182:23 183:3
**lawyers'** 49:25
51:20 52:15
**lberman@lfsb...**
4:11
**learn** 85:10
177:14 179:2
**learned** 20:12
111:4 179:1,6
179:8
**learns** 175:24
**leave** 22:25
115:16 118:21
189:23 195:3
**leaves** 148:13
**led** 175:19
**left** 13:2 143:11
176:17
**legal** 30:19

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                                    June 18, 2021

267

34:20,20,22
35:4,15,25
37:11 45:11
48:17 51:6
53:1,16,17,21
53:25 54:6,8
54:10,11,14,20
54:21,22,25
55:15,15,20
56:19,21 59:12
59:22 60:1
61:5 62:6,7,24
63:23 64:5,13
65:18 67:2
69:22,23 70:10
71:7 72:25
73:1,8,13 75:2
76:15 77:22
79:25 80:6,9
84:13 85:14,14
86:16,16 88:8
88:10,12 89:8
89:17,22 90:16
91:6,23 92:1,8
92:11 93:10,14
93:17 94:8
95:10,13 96:1
113:2 122:13
122:23 123:4
134:3 141:15
143:17 147:14
147:22 151:10
151:25 154:21
155:12 158:10
158:15,25
159:1,5 160:16
161:3 162:13
162:19,21,25
163:13 164:2
164:24 165:12
166:20 167:21
167:24 176:14
176:19 177:5
178:16 180:7
181:6 182:11
183:18 184:3

185:7,12,17
188:9 189:22
193:2
**legally** 39:25
  48:15,16 56:16
  57:6,8 91:15
**legitimately**
  103:12
**legs** 83:8
**Leigh** 3:15 6:18
  138:15 139:6
  149:15
**leigh.odell@b...**
  3:18
**let's** 7:5 33:24
  34:12 47:8,16
  57:4 64:17
  74:2 77:7
  78:14 83:7
  88:3,23 94:12
  94:14 95:4
  103:7 119:7
  123:7 135:1
  138:4 149:9
  150:5,6 155:14
  158:12,12
  162:2 195:6,13
  246:4
**letter** 21:25 65:2
  120:9,24 121:2
  121:2 122:22
  122:22 150:15
  150:18,21
  151:8,11,12,13
  151:14,19
  152:1,15,17,18
  152:20,20,25
  153:2,4,5,14
  153:21,23,24
  153:25 154:2,3
  154:6,10 155:7
  155:16 156:21
  190:3
**letterhead** 153:4
  153:11
**letters** 152:3

157:2
**level** 24:23 35:13
  36:15 40:24
  136:1 143:6
**levels** 41:22
**Levin** 4:1,7 6:22
  7:4
**LEVY** 5:18
**liability** 1:6
  41:13 44:1
  73:9 90:12,14
  96:23 166:11
  166:11,12
  186:16,20
**license** 2:9
**lie** 166:4
**lied** 166:1,2
**lies** 159:8
**life** 26:10 71:16
  146:22
**lift** 135:4
**light** 79:14 129:9
**likelihood** 56:12
**limited** 27:4
  33:5 85:14
  97:6
**line** 20:16 41:12
  41:15 47:24
  101:13 116:18
  172:7 247:17
**lines** 106:19
**list** 28:1,4 37:3
  68:7 86:4
  118:5 123:11
  124:12 161:12
**listed** 96:8
**listen** 64:20
  101:25 248:8
**listener** 9:5,10
**lists** 87:25
  142:19,21
**literally** 26:14
  115:20 117:5
  173:9
**litigant's** 75:14
**litigated** 16:1

33:19 49:10
**litigation** 1:6 6:2
  14:11 20:2
  22:14 23:10,19
  24:15 25:18
  29:2 30:9,10
  31:3,4,12,16
  31:16,20,21
  32:9 33:17
  34:7 35:19,21
  36:21,24 37:19
  37:20,25 39:6
  39:11 41:10,16
  41:16,17 42:22
  42:25,25 43:3
  43:8,14,17,17
  44:2,3,6,22
  45:10,13 47:1
  47:3 48:3,7,11
  48:15 49:8,9
  50:5,8,17
  55:17,18,24
  58:2,4,9,11,22
  59:11,21 61:22
  61:25 66:4
  68:15 71:5,22
  72:8,11,14
  73:7,10,14,19
  74:5,6,16,16
  76:5,10,14,20
  77:12 79:15
  84:1 87:14,15
  89:9,21 91:8
  96:24 97:13,22
  98:13 100:10
  100:18 101:5
  102:18 103:14
  103:20,24
  104:7,8 105:10
  108:22 114:12
  114:18 122:11
  141:19 150:24
  159:17 166:12
  169:11 176:4
  177:7,15
  181:25 183:23

184:4 187:1
  188:6 189:16
  189:21 190:23
  194:16 247:8
**litigation-relat...**
  42:3
**litigations** 9:8,20
  10:12 16:24
  20:10 22:14,15
**litigator** 178:22
  178:25
**little** 22:23 23:3
  33:10 34:5,9
  34:15 35:3
  37:15 102:3,10
  102:11 113:23
  135:23 145:25
  158:22 174:21
  180:20 181:16
  182:11
**living** 182:24
**LLC** 3:3
**LLP** 3:9 4:7,13
  5:1,16,18
**locking** 11:12
**log** 10:14,15,16
  10:17 17:1,11
  18:1,13 33:8
  60:5 66:8,16
  77:21 106:18
  109:10 112:22
  116:12 121:13
  128:3 130:9
  133:9,9 166:18
  166:18 184:20
**logistics** 19:9
  142:24 144:20
  144:25 246:13
**logs** 17:2 34:1,3
**long** 31:11 36:5
  47:24 81:22
  107:14 108:7
  111:4 116:3
  132:21 247:17
  247:17 248:12
**longer** 22:10

29:3 30:21
54:6 109:14,24
110:8 128:5
182:23
**look** 17:15 19:13
23:23 41:7
50:1 67:9
74:10 78:13
79:21 88:12
90:11 113:6
114:25 119:20
144:8 154:23
160:5 162:11
172:7,25
**looked** 18:19
74:7 77:4
81:12 105:20
115:25 122:8
123:20 155:2
**looking** 12:6,21
13:7 29:20
40:5 46:11,19
57:22 58:8
66:16 73:12
91:20 100:13
106:25 109:7,9
118:20 123:19
131:10 165:8
172:13 184:21
184:22 187:10
**looks** 42:17
64:23 81:22
122:20 138:8
154:23,24
**lose** 145:2
**losing** 69:24
109:1 165:7
**lost** 111:4
**lot** 34:23 37:17
40:23 62:10
84:13,21 87:13
102:25 104:4
113:17 115:18
115:19 117:12
119:15 123:12
125:3 128:18

141:14 147:4
184:15,25
187:18
**lots** 51:18,18
**loud** 156:23
**love** 141:2
**loyalty** 58:21
59:4 66:14
**lunch** 81:23
95:18 113:10
119:4,8

———— **M** ————
**M** 3:21 4:14
**magic** 93:20
**maintain** 58:21
66:14 82:15
**making** 17:25
18:5 20:14
26:12 52:21,22
53:6 70:1,14
79:22 86:19
88:20 89:7,16
89:22,23 90:18
90:24 91:10
147:7 162:12
162:17 163:17
164:17 168:3
171:24 173:4,7
173:13 180:24
185:8 188:5
245:15
**Man** 119:23
**manage** 71:22
**management**
169:7
**manner** 56:16
106:4
**manufacture**
87:18
**manufacturer**
120:10
**MAPLE** 3:22
**mark** 80:13
**marked** 114:20
**market** 174:25

175:13
**marketer** 178:21
**marketing** 1:5
58:18,19 61:19
71:25 81:11
93:7,8,12,25
94:3,7 161:21
162:19 164:12
165:18 166:8
166:10,21,25
167:21 168:2
169:12 185:19
**marketplace**
71:5
**marriage** 82:16
118:23
**Mason** 27:18
**massaging** 141:5
**MASTER** 1:14
6:1,11 7:5,19
12:3,11,16
13:10 14:9
16:17 17:21
18:8,23 22:12
23:2,5 24:6
25:13,22 26:20
27:11 28:6,12
28:21 30:3,25
31:18 32:8
34:12 36:11
38:7 39:5,13
39:16,20,24
40:3,13,25
41:24 42:7,16
42:20 44:4,15
44:25 45:6
46:14 47:4
48:4,8,12 49:1
49:4 50:10
52:17 53:4,13
55:2,22 57:14
60:4,22 62:11
63:15,19 65:6
66:18 67:12
69:5,10 70:22
71:6,10 73:23

75:8,13 77:6
77:24 78:3,10
78:14,18,20,24
79:2,6,11
80:10,15,17
81:14 82:5,10
82:17 83:3,10
83:19 85:20,25
86:17,23 87:1
87:4,8,21,24
88:17 89:5
90:1 91:12
92:2 94:10
95:4,17 98:1,4
99:20 100:22
101:15,22,24
102:13 103:2,6
104:25 105:7
110:2,6 113:9
115:2 117:9
119:1,5 120:2
120:13,22
121:3,14,19
122:16 126:13
127:5,10
129:20,24
131:1,19 132:1
133:14,25
135:22 138:2
139:14,21
141:17,21
143:21 145:18
145:22 146:10
147:3 148:10
149:8,13 150:3
151:18 152:5
152:22 153:13
155:14,19,24
156:10,16,24
157:14 158:5
158:23 159:18
160:2,10,15
161:13 162:4,7
162:10 163:9
163:12,21
166:15 168:5

169:15,17,21
170:6,11,21,23
171:11,14
173:21 174:10
174:19 175:8
175:14,17
176:5,12 177:1
178:11 179:22
180:8,23
184:13 185:3
188:3 189:9
190:7 191:6,11
191:21,23
192:2,8,12,16
192:24 193:8
193:11,19,25
194:4,13,18,21
195:5 245:3
247:21 248:4,9
**Mastroianni**
1:18 2:8 249:3
249:19
**material** 24:2
51:19 58:18,19
108:3 140:5
141:8 142:12
142:21 161:23
166:21 167:1
**materially**
134:21 137:9
144:2 245:23
**materials** 22:23
23:23 36:2
50:7 96:18
97:9,12,20,24
120:2,12
136:14 165:18
166:9,10
**matter** 2:7 22:6
27:4 31:2
34:13 55:4,5
73:11 92:12
93:13 108:20
119:19 122:3
135:5
**matters** 73:12

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

269

150:23 190:15
190:16
**McCRACKEN**
5:16
**MDL** 6:17 15:7
22:15 23:8,20
29:5,14 30:14
30:21 32:18
33:2 34:2
39:14 131:10
131:21 132:16
136:6 188:1
**MEAGHER** 5:1
**mean** 20:16 36:3
36:19 51:15
56:20 64:11
73:1 79:12
85:17,23 88:5
89:8,25 98:20
101:12,13
104:18,22
113:21 116:13
148:2 150:19
154:12,16
155:4 164:13
165:1 171:21
178:18 179:14
179:17 188:17
189:10
**meaningless**
113:13
**means** 68:13
147:8 155:23
159:2 191:2,15
**meant** 51:14
59:3 76:25
92:18,19 178:7
**mechanism** 99:1
105:16,17
**media** 49:10,12
49:13,14
**meet** 11:8,23
18:16 126:22
147:20 188:20
188:21
**meeting** 45:13

163:24 165:20
178:1
**meetings** 43:13
**member** 83:18
90:4
**members** 10:9
**membership**
86:22
**memo** 21:19
97:24 100:25
100:25 101:7
101:11 103:9
103:17 104:10
104:11 105:4
107:3,14,21
108:16,17
110:10,15,18
112:24 122:10
122:13 123:21
123:22 125:17
**memorandum**
86:2 95:22
106:7,25
181:12
**memorize**
138:17
**memory** 15:20
32:21
**memos** 113:14
123:14 124:10
124:20
**mental** 21:21
55:11,12,15
97:6,19 98:22
99:14 186:12
**mention** 9:18
68:1 185:25
**mentioned** 33:3
67:13 180:3
**mentions** 157:12
**mere** 187:3
**merely** 95:25
184:7
**mesothelioma**
14:22 23:19
33:1

**message** 176:16
**met** 10:23 11:18
183:10
**Mexican** 122:7
122:11,14
**Michelle** 3:10
6:15
**mid** 14:19 85:6
**Miller** 5:3 7:7,8
8:14 13:22
14:2 15:19
20:22,24 21:18
23:16 24:19,24
25:9,14 26:20
26:22,24 27:13
27:23 28:11
31:22 35:2
38:9,17 39:8
40:1,7,17 42:4
42:15,19,23
44:7,23 45:2,7
45:22 46:7
47:16,23 48:5
48:9,13 49:1,3
49:6 50:24
53:3,11,15
55:3,6 56:9
57:20,25 62:11
62:15 66:22
67:7,16 69:7
69:17,18 70:22
70:24 71:8,18
71:20 77:24
78:1,5,16,19
78:22 79:1,4,7
83:4 84:7
86:12 88:9
92:3,4 93:4,22
96:3,5 98:8
99:7 100:21
101:10 106:1
107:11 111:18
111:23 115:2,3
115:8,12,18
116:8 119:15
120:6,15,23

121:24 123:9
125:6,14
126:13 127:2,5
127:7 132:3
141:11 143:9
146:1 149:11
149:14,15,23
151:3,17
152:12,22,23
153:19 154:1
154:19 156:12
157:6,14,15,19
158:2 159:10
160:5,12,18
161:14 162:6,9
162:16 163:11
163:14,22
164:3 165:14
168:6,7 169:16
169:20,25
170:1,2,9,17
170:22,24
172:6 173:1
176:6,8 177:10
177:16 179:25
180:2,13,22
181:1 183:14
184:6 185:13
187:19 190:2,4
190:20 191:3,8
191:11,18,22
191:24 192:4
192:13,18,20
192:24 193:4
193:10,15,20
193:23 194:2
194:10,15,20
245:13 246:2
**Miller's** 43:11
88:3 109:21
**million** 19:1
112:1 114:19
**millions** 14:14
114:17
**mind** 76:6,7
85:17,18 86:1

91:7 161:15
171:5 190:13
**mine** 43:11
102:20
**minus** 12:17
**minute** 150:9,9
175:10
**minutes** 67:17
70:15 83:21
148:14 195:4
195:13
**miscellaneous**
119:9
**misinterpretat...**
29:7
**misleading**
164:10,11
**mispronouncing**
41:2
**misremerberi...**
15:20
**misrepresenta...**
120:8
**misrepresented**
120:25
**misrepresenting**
174:1
**missing** 20:19
67:6 79:5
193:20 194:9
194:17
**Missouri** 58:13
**misspoke** 29:8
175:11
**misstatements**
120:11
**mistake** 25:17
25:19,20
**misunderstan...**
142:20
**misunderstood**
67:24
**misused** 73:10
**mix** 179:13
**moment** 9:18
42:10,11 71:14

80:11 85:18
151:21
**Monday** 76:21
**money** 116:19
**monitor** 88:4,7
**monitoring**
87:15
**MONTGOM...**
3:17 5:16
**moot** 111:22
**morning** 6:9,14
6:17,18,24 7:7
7:10,13,16
10:4 117:12
126:11 160:17
181:18,18
**mothers** 56:4,12
59:5
**motion** 60:8,9
**Motley** 3:3 6:9
**MOUGEY** 4:1
**mouth** 93:17
187:20 189:12
**move** 8:11 10:24
32:2 34:13
53:8,8 54:2,5,7
59:9 81:19
95:5 118:11
155:15
**moved** 192:13
**moving** 59:10
**mparfitt@ash...**
3:12
**multi-billion**
94:5
**multi-discipli...**
91:4
**multidistrict** 6:2
**multiple** 44:24
94:20 169:1,1
188:1
**mute** 169:25
170:1
**Myers** 68:3,5,9
69:20 70:18

**N**

N 3:1 5:14 117:7
**name** 6:12 36:13
41:2 42:8,11
58:20 71:4
77:1 88:21
121:17 137:4
146:15 159:11
171:8 181:12
**names** 37:8
71:15 85:5
**narrow** 10:17
68:4
**narrowed** 10:20
**narrowing**
17:15
**national** 14:18
**nature** 33:18
72:18 73:25
84:13 125:18
125:20 127:20
141:7 144:24
**navigate** 43:16
**near** 51:11,12,13
**nearly** 112:6
**necessarily**
31:19,19 33:13
64:1,11 122:25
141:18 158:15
**necessary** 10:8
23:1 39:11
49:22 131:23
177:4 188:8
247:13
**neck** 115:9
**need** 12:11
13:11 22:20
43:7 50:6
59:21 61:2
82:23 89:10,11
91:21 105:2
107:6 110:4,12
110:14 111:6
111:14,15
112:16 113:20

114:20 118:12
118:15,21
121:23,25
122:6 126:8
132:14 138:24
144:13 147:22
148:12 167:19
176:2 177:22
179:3 187:4,5
246:2 247:11
**needed** 51:5
81:15,24
103:20
**needs** 48:13
118:3 142:13
161:6 166:6
184:4 185:17
**nefarious** 182:5
**negative** 64:22
75:21
**neither** 249:9,11
**never** 31:23
44:11 75:3
119:20
**new** 1:1,21 2:10
3:5,22 4:15 5:4
5:20,20 15:6
27:2,16,19
31:2 32:12
69:6,13,15
70:13 136:6
173:5 249:4,20
**nice** 115:6,22
116:3
**night** 19:16 77:2
124:4,5
**no-you-can't-...**
128:23
**nodding** 14:1
**noise** 125:4
**non-accelerated**
139:25
**non-attorney**
97:21 99:16
167:9,19
**non-attorney's**

99:9,13
**non-lawyers**
63:22 181:24
**non-legal** 74:11
**non-privileged**
113:13 115:1
124:14 160:7
177:18
**non-substantive**
74:11 114:7,13
**non-talc** 120:17
120:19
**nonlegal** 53:9
74:6 88:5,5
160:22
**not-sent** 155:11
**Notary** 2:9
249:3,20
**note** 16:4 18:11
82:3 92:22
170:22
**noted** 18:15,15
108:15
**notes** 64:23 97:7
97:12 105:19
108:23 117:13
**notice** 126:10
**noticed** 123:11
**notices** 47:11
**notion** 62:8
63:22 69:14
**notwithstandi...**
107:19 108:5
**nuances** 13:17
35:12
**number** 2:9
10:20 12:12
13:12,19 16:8
18:13 31:6
32:20 41:5,5
45:18,21 46:3
77:25 78:4
99:25 102:15
108:6,9,13
116:12 117:3
119:16 121:4

121:20 122:19
122:19 128:2
130:11,12
133:20 137:15
150:7,8,9,10
150:12 156:1,3
156:10 158:24
162:11 165:24
166:3 176:6
191:12 192:3
192:25
**numbers** 10:19
11:15 12:23
19:24 27:21
32:19 78:6,8
78:16,25 100:4
124:12,19
NW 3:10 5:4

**O**

O 5:14
**O'BRIEN** 4:1
**o'clock** 81:22
118:19 119:2
148:13,20
**o'clock-ish**
82:14
**O'Dell** 3:15 6:18
6:19 32:16
72:23 125:9
131:15 137:24
138:4,20
149:15 153:24
154:2,17
171:18
**O'Shaughnessy**
19:19 20:19
35:16 36:13,20
37:4,24 41:4
41:18,21 42:2
42:8,13 44:9
44:12,20 45:7
45:11,24 46:16
46:20,24 47:20
52:20 53:6
59:2,8,15 62:5

63:2 64:19,22
65:14 72:5
74:4 76:2
77:13 83:18
88:7 90:4,8
91:14,14 93:23
94:1 129:2,4
129:10,12
130:1,5,19
131:3,10
133:22 134:18
135:7 139:8
140:8 142:10
143:25 144:14
145:16 159:11
159:16,16
170:13 172:1
172:16 173:12
177:4,13
178:15,20,22
180:4,11,17
185:10,11,14
188:10,19
189:2 193:2
245:17 246:6
246:16
O'Shaughness...
19:6,12 20:4
43:23 46:21
132:9 137:4
139:15 142:7
144:21 170:4
176:23 177:11
179:10 188:6
188:15 189:15
object 30:14
objecting 89:16
objection 126:15
140:17,17
168:6
objections 18:18
19:14 132:11
objective 58:19
86:3 95:25
96:4 100:4,5
103:8,18 185:5

189:20
obligations
161:3
observed 45:17
obtained 177:17
obtaining
122:23 123:23
123:24
obvious 7:23
136:25
obviously 8:22
13:16 20:12
21:20 76:6
77:12 92:19
99:16 102:7
110:14 132:10
136:22 160:23
164:9 167:1
176:3 184:21
247:6
occurred 27:6
190:21
occurring 177:8
Off-the-record
125:13 195:15
offered 125:20
offhand 77:25
78:4
office 32:12
69:11 125:8
oh 18:2,2 52:2
57:4 66:9 78:5
78:24 131:19
151:23 161:25
171:18 173:16
176:9 193:21
247:1 248:4
okay 25:17
27:13,25 28:11
29:11 30:25
33:24 34:12
39:24 40:3,13
48:5 49:3
52:17 53:4
65:6 77:6
78:24 79:2,12

80:10 81:14
82:10 85:24
87:8,23 89:14
91:21 92:2
94:10 95:4,17
100:6 102:13
103:2,6 113:9
117:9 127:10
132:1 150:14
155:14,19
158:23 160:10
162:7,10
165:12 169:15
169:20 170:25
175:16 176:5
176:12 177:1
184:13 189:9
190:7,19
191:23 192:2
192:19 193:9
193:11 194:13
194:20,21
248:9
old 69:10
older 121:22
once 134:19
135:1
one-off 33:18
ones 16:5 46:10
46:11 93:12
126:25 135:15
138:19 142:9
142:10 161:7
168:24
ongoing 126:22
157:7,10,11
177:6
onus 110:17
open 26:4,16
112:13 127:12
127:19
opened 19:17
opens 183:18
operating 35:19
35:24 36:22
37:3,10 38:1,2

38:5 39:1,23
opinion 90:11
93:6,17 104:14
113:21 134:10
134:15 135:10
140:3,16,19
opinions 55:23
93:15 100:6
opportunity
33:7 74:21
75:4 85:8
134:24 137:22
141:1 143:18
183:19
opposing 11:19
75:3,5
opposite 92:10
opposition 28:3
oral 6:3 7:22
118:23
order 10:24
11:19 12:22
18:20 29:19
56:11 59:6
64:3 66:2,13
78:13 81:4
82:15 109:22
118:4 128:17
135:17 167:14
181:13 183:9
247:14,23
ordered 145:8
149:8
ordinarily
142:25 164:20
ordinary 107:18
107:21 187:7
187:13
organization
34:16 35:4,14
61:24 186:18
organizations
49:14 61:15
original 77:21
originally 77:19
orthopaedic

38:3
outfit 173:7
outline 41:23
outset 31:16
45:17 66:20
outside 43:6,12
62:2 81:2
179:18 182:10
ovarian 14:22
76:18 84:17
89:1
overall 72:3 85:9
overcome 111:6
Overlapping
106:14
overruled
134:14 140:17
overrules 141:9
oversee 35:18
36:21,23 44:1
overseeing 14:18
oversight 35:25
37:20
overstating
162:24 163:18
overview 35:9

P

P 3:1,1 5:14
P.O 3:16
PA 4:1
packaging 87:18
122:8,8,12,12
page 12:21 30:5
156:9 162:5,6
169:22
pages 14:14
pain 115:9
Papantonio 4:1
6:22
paper 106:20
137:13 171:4
paradigm 58:23
paragraph 53:7
53:8,8,9,9 54:3
54:3,5,6,7,8,9

54:10,13,13,21
55:1
paragraphs 59:9
59:10
pare 181:19,22
parent 40:9
Parfitt 3:10 6:14
6:15 248:1
Park 4:15 27:16
parse 53:16
57:11
parsing 72:23
part 20:11 38:25
39:3 43:11
63:12 71:3
79:12 83:17
91:3 98:23
99:23 106:7
114:6 151:23
157:6,11
164:24 187:23
partake 248:12
parte 158:19
partial 130:20
participant 9:10
9:11
participate
43:13
participated
19:7
participating
172:19
particular 11:4
16:1,4 19:20
22:8 23:8 29:2
31:22 37:6
44:19 50:20
58:15 59:19
63:10 77:16
83:12 102:3
105:3 116:10
117:20 127:17
156:14 158:20
167:12,13
183:10,22
188:9 245:11

particularly
46:2 141:12
parties 6:3 8:19
10:22 21:19
64:2 84:2
119:11 132:2
134:11 139:22
144:23 176:3
247:7 249:11
partners 40:21
party 52:3 61:15
61:18,21 62:17
63:1,6 67:19
67:21 75:3,5
80:25 81:1
97:9,13 125:24
150:20 168:12
169:10
pass 83:5
passed 45:20
123:16
patent 38:24
39:2,3 122:20
123:2,12,15,22
123:23,24
124:7,21
126:16
Patricia 167:18
Patty 119:16,17
120:3,13,18,25
150:12
pause 184:25
pausing 18:3
PC 3:21
pending 76:15
101:14,18
190:23
Pennsylvania
2:11 4:9 68:16
69:3,8 70:13
97:16
PENSACOLA
4:3
people 34:23
35:20 36:12
37:25 39:10

40:15,24 41:19
41:20 42:1,18
43:20 44:24
50:4 53:20
57:13 60:24
61:9,9,10
71:24 85:5,7
90:15 107:13
108:7 109:14
109:24 161:25
168:12 182:3
187:24 248:14
percent 26:7
42:4 45:14
52:16 137:6
165:22,25
179:19
perfect 15:1
79:17,18
136:25 161:5
163:5 171:4
perfection 143:7
perfectly 8:18
118:22 135:3
performed 42:2
180:6
performing
61:23
period 15:12
23:18 93:15
94:9 105:3
140:10
permission
149:4
permitted 20:10
20:12
perplexed 19:3
19:21 31:1,7
person 41:5
43:20 56:14
65:7 70:4,5,5,7
70:17,21 85:21
93:7,8 110:7
117:6 125:7,11
161:19 163:18
171:9 188:21

personally 134:7
personnel 97:21
perspective
10:13 31:15
46:25 54:14,22
55:1 57:8 88:8
90:12 93:7,9
96:14 143:4
145:6 161:18
161:24 162:2
162:19,21,25
163:7,17
166:22 167:21
pertain 146:3
pharmaceutical
186:15
Philadelphia 4:9
7:4 69:12
phone 9:4 19:8,8
132:17 248:5
photographs
121:20,21
122:9
photos 121:22
phrased 157:15
pick 118:8
140:20 154:17
picks 82:25
picture 63:21
117:14,18
pieces 35:7
pigeonhole 8:23
piggyback 130:4
Pike 1:20
pile 149:20
pin 32:5
pink 193:23
194:12
pitch 66:13
pitched 49:14
place 9:12 72:21
111:1 165:21
195:17 245:1
249:8
places 184:22
188:1

Placitella 3:21
3:21 6:24,25
6:25 32:4,11
33:12 95:7
102:22 103:3
104:16 110:3,7
119:22 120:18
126:7 148:2
149:2 172:17
173:9,11,16
184:14 190:12
190:19,22
plain 47:17
172:15
plainly 24:12
plaintiff 6:6,7
79:15 96:17
123:8 124:22
153:25
plaintiffs 3:7,13
3:19,25 4:5,11
5:21 6:10,16
6:19,23 7:1,3
8:25 10:1,6,9
11:7,24 13:24
24:10 25:25
26:5 28:18
49:9,17,20,23
50:4,7 51:15
52:12 54:4
75:24 78:5
79:8 96:15,25
97:4 98:12
99:25 105:1
107:24 111:25
112:1 113:12
115:4 116:16
122:6 124:2,11
124:13 126:15
126:17 127:21
132:15,21,23
136:6,12 137:5
140:25 141:10
142:16,18
143:24 158:8
160:9,21 165:2

165:25 171:25
173:23 174:4
175:2 179:2
187:4 195:10
245:22 246:15
246:20
**plaintiffs'** 6:11
33:21 34:1
49:12 50:13
57:10 68:2
98:20 103:17
142:1 145:6
164:16 171:5
173:3 174:16
175:18,19
181:19 183:6
195:18 245:5
246:23
**plans** 87:20
**plate** 180:17,25
**play** 22:11 37:9
150:6
**player** 19:1 21:1
**please** 43:4
74:24 102:9
106:16 118:22
166:14
**plus** 12:17
**pocket** 61:1
**point** 14:1 16:6
17:3 24:1
25:10,25 26:2
29:12 30:18
43:10,19 59:13
63:10 69:25
70:14 82:11
83:25 85:3
88:3,4 94:16
98:8 99:11
101:11 107:15
109:5,20
115:16 116:22
116:24 117:3
126:19 134:3
137:17 138:20
141:5 151:2,6

156:23 159:13
164:8 165:15
168:13 169:4
170:10 171:24
171:25 172:7
185:24 186:1,4
188:17 246:2
**pointed** 85:11
**pointing** 158:19
**points** 57:24
72:13 88:1
107:1,2 114:4
167:9
**poison** 140:20
**poker** 19:1 21:1
**policies** 87:17
**pool** 76:8
**poor** 124:5
**portions** 113:14
113:15,22
116:14,15
**pose** 52:18
**posited** 97:16
**position** 8:3 12:7
24:18 28:24
29:3,21 30:12
30:16,19 34:25
42:1,21 44:21
45:3 46:1,23
47:1 58:8
59:20 65:20
66:19 73:16
80:3 88:6
103:17 113:13
114:1 123:3,8
134:20 142:1,6
143:8 145:10
169:9 184:5
190:18
**positions** 9:3
87:17
**possibility**
108:11
**possible** 35:2
101:19 174:2
**possibly** 122:5,6

**post** 63:13 84:1
**Post-it** 82:3
**posted** 169:14
**potential** 19:11
44:1,1 55:15
77:22 122:10
186:16,19
**potentially**
116:21
**Pound** 170:3
**poured** 181:17
**powder** 1:5
36:24 76:17
77:1 96:16
120:14,16,20
159:17 169:8
179:7
**Power** 72:13
**PR** 49:15,18,21
49:23,25 50:3
50:5,7 57:13
67:20,21,24
70:17,21 82:1
168:12 173:6
**practical** 68:18
68:20,23
140:15 141:3
142:15
**practicalities**
143:23
**practically** 69:8
**practices** 1:6
85:9
**practicing** 64:18
**pre** 34:10
**precedent**
147:10
**precise** 32:19
**precisely** 188:14
**prefer** 114:5
140:21,21
**prejudiced**
143:24 144:2
144:16 145:19
245:23
**preparation**

97:22 108:22
**prepare** 19:13
65:12 87:16,19
105:9 167:19
**prepared** 19:14
80:20 95:23
97:12 101:3,5
102:18 103:13
103:19,23
105:9 157:17
166:24 167:9
247:3
**prepares** 47:19
**preparing** 72:11
100:17 106:24
**presence** 84:22
84:22 195:18
**present** 82:21
129:13 130:21
130:22,22
245:2
**presentation**
166:19,24
167:6,10,11,20
167:23
**presented** 11:16
94:23 113:5
167:25
**preserved** 50:18
50:19
**press** 47:11,13
47:19 48:2,5
48:10 50:15,25
51:1,15,16,17
51:17,18,21
52:4,4,11,21
54:15,16,18
56:1,5,10
57:11,15 58:14
60:6,7,8,25
62:3 65:9 70:4
70:5,8 75:22
76:1,13 77:9
77:21,23 79:10
84:1 147:11,15
168:19 173:2

174:4,22,23
175:2,3,19
**pressed** 59:22
**presumption**
112:11 181:8
183:7
**pretty** 15:2
34:25 64:24
108:15 114:3
129:9 165:9
**prevalent** 75:18
**previewing**
26:25
**previously** 25:11
28:25 31:12
127:22 128:14
**primarily** 36:12
50:16,16 55:23
56:2 71:11,11
88:20
**primary** 56:5
58:18 61:18,23
193:3
**principle** 63:21
182:21
**principles**
107:22 109:2
**printing** 142:22
**prior** 9:17 15:12
17:2 104:7
**privately** 177:22
177:23
**privilege** 6:3
10:14,15,16,17
15:3 17:1,2
18:1,13 20:15
24:17 25:6,23
29:15 31:24
33:8 52:2 58:1
60:5 61:20
63:8 66:5,8,16
67:23 69:24
70:19 75:7
86:9 92:5,6,17
96:11 97:3,18
97:25 100:8

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                         June 18, 2021

274

| | | | | |
|---|---|---|---|---|
| 106:18 107:23 | 114:10,11 | 155:6 187:7 | 190:25,25 | 136:8 |
| 109:10 111:3,5 | 116:14,14,15 | **processes** 55:11 | 191:1 193:1 | **productive** |
| 112:10,22 | 116:17 118:1 | 55:13,16 99:14 | 245:24 | 143:12,14 |
| 116:12 118:3 | 118:10 122:9 | 168:2 | **producing** 22:5 | **products** 1:5,6 |
| 121:25 125:24 | 126:24 127:3 | **PROCTOR** 4:1 | 114:9 115:10 | 35:20 38:3 |
| 128:3 130:13 | 128:14 133:24 | **produce** 12:1 | **product** 16:3 | 39:21 41:12 |
| 130:16 132:11 | 134:9 138:10 | 13:5 20:9 | 20:20 21:12,20 | 56:3 |
| 133:8,13 136:8 | 139:13 147:15 | 106:9 115:19 | 26:18 55:13 | **profession** |
| 141:9,16 | 150:19,22 | 116:2 128:4 | 56:3,12,15 | 111:20 |
| 146:24 150:25 | 151:13,14,15 | 133:21 | 59:5,6 66:13 | **professional** |
| 152:18 161:16 | 152:11,14,16 | **produced** 9:19 | 84:14 89:2,12 | 87:2 180:6 |
| 163:20 166:17 | 152:21 155:5 | 9:23 14:10 | 90:12,13,19 | 247:9 |
| 166:18 168:25 | 157:5 169:23 | 16:23 17:17 | 92:16 94:22 | **proffer** 126:14 |
| 169:13 172:13 | 170:3 177:21 | 18:14 20:1,14 | 96:11,17,23 | **project** 45:1 |
| 180:24 181:5 | 178:4,10 179:7 | 20:21 21:6,13 | 97:2,5,8,14,17 | 70:23 71:2,19 |
| 181:10,16 | 180:16 183:21 | 21:13 22:14 | 97:22 99:2 | 71:24 137:14 |
| 182:18,20,25 | 245:8,9 | 23:9 24:15 | 100:16 103:9 | **projects** 71:15 |
| 183:9,14 | **pro** 62:19 | 25:2,3,15,18 | 103:25 107:18 | **promoting** |
| 184:19 190:17 | **probably** 13:7 | 28:19,25 29:25 | 107:23 108:23 | 161:22 |
| 245:14,18 | 14:19 31:15 | 30:8,13 31:23 | 109:2,16 111:3 | **promotional** |
| **privileged** 9:22 | 32:14 37:3 | 32:6,20 33:14 | 111:13 112:11 | 58:18,19 59:12 |
| 13:1 20:9 21:7 | 55:6 65:4 73:2 | 33:22 45:19 | 120:3,7,8,10 | 59:23 120:12 |
| 21:10,11,20 | 95:10 121:12 | 51:2,2,3,14,15 | 120:11,16,17 | 161:23 |
| 22:6 24:13 | 125:6 141:14 | 52:8 96:21,23 | 120:19,25 | **proof** 106:1 |
| 29:3,25 30:10 | 143:13 152:2 | 113:17 114:14 | 121:1 122:1,5 | 112:5 146:23 |
| 31:9 44:10,22 | **problem** 21:9,15 | 114:18,22,23 | 130:14,16 | 152:7 |
| 45:4,14 46:1,9 | 134:7 | 114:24,24 | 146:24 161:22 | **properly** 80:3 |
| 46:12 47:14,22 | **problematic** | 116:15 124:22 | 161:25 172:1 | **proportionality** |
| 48:20 50:23 | 144:24 | 125:25 126:4 | 174:7,14,15,24 | 141:22 |
| 52:5 53:2,10 | **problems** 48:17 | 127:4 128:7,8 | 175:12 184:23 | **propose** 129:7 |
| 55:5,9,25 56:7 | **proceed** 119:13 | 128:12,13,15 | 186:13 187:4 | 148:14 |
| 58:17 60:2,3 | 142:7 148:4,8 | 128:19,20 | 245:13 | **proposing** 141:2 |
| 60:11,21 61:6 | 246:11 | 133:9,11 | **production** | **proposition** |
| 62:9,25 64:12 | **proceeding** | 134:22,23 | 14:24 15:8,18 | 116:1 |
| 64:15 65:5,21 | 22:24 | 135:18 138:13 | 23:25 24:5 | **prospective** |
| 65:23 67:22 | **proceedings** 2:6 | 138:22 139:7 | 25:5,17 26:9 | 77:10 101:18 |
| 70:11 73:22 | **process** 10:25 | 140:6,7 144:3 | 27:6 32:23 | **protect** 56:2 |
| 74:9,12 76:3,4 | 11:17 29:15 | 144:12 146:18 | 46:4 96:1 | 144:12 166:11 |
| 76:9,13 77:21 | 72:11 86:19 | 146:22 147:10 | 100:4 105:2 | **protected** 63:24 |
| 80:8,20 81:7 | 90:23 92:25 | 147:16 151:19 | 124:6,11 | 64:5 100:8,24 |
| 82:18 88:13 | 94:18 98:11,12 | 152:15 153:15 | 128:10 136:3 | 105:5,10 |
| 90:3 91:17 | 98:18,22 106:4 | 155:9 159:20 | 137:3 138:7,9 | 112:12 121:22 |
| 93:12,13 96:3 | 106:8 136:11 | 160:8 168:16 | 167:13 168:16 | **protection** |
| 100:2 102:7 | 139:19,20 | 168:17 176:7 | 169:2 194:9 | 165:19,23 |
| 103:10 104:15 | 142:17,24 | 183:11 190:3 | **productions** | 166:8 |
| 104:23 113:7 | 146:5 147:21 | 190:14,15,20 | 16:20 17:5 | **provide** 11:3,6 |

15:6 22:22
26:6,15 35:24
36:15 56:22
60:15 62:11
98:25 99:5
114:9 139:5
170:25 178:9
186:6
**provided** 10:14
53:24 76:16
103:9 109:23
112:22,23
123:1,3,5,6
124:10,13
139:9 158:7
167:5,11
176:18 177:3
178:15 185:6,9
185:11 188:8
**provides** 40:8
74:6,20 130:10
**providing** 37:11
48:9 56:11,13
56:19,21,25
65:16 102:6,8
122:19 162:13
165:2 166:20
181:25 182:10
**provision** 67:2
122:22
**proviso** 140:4
**prudent** 246:7
246:10
**public** 2:9 47:11
55:18 56:15
81:16 91:1
172:19 173:24
174:23 184:24
249:3,20
**publication**
87:15
**publications**
88:4,7,25
**publicity** 75:19
75:22 81:16
**puffery** 164:12

**pull** 12:23 79:3
**punt** 20:24,25
24:20
**punted** 24:20
**purchase** 59:5
**pure** 154:7
185:4
**purely** 103:8,18
**puritan** 50:18
**Purple** 63:1 81:9
168:17 169:9
169:10
**purpose** 56:1,5,6
56:8 61:18
64:4 65:17
71:7,7 72:6,6
73:24 75:6
77:5 88:6
100:9,17 104:5
108:11 112:10
112:25 122:23
123:5 133:15
158:9 165:7
167:16 176:24
178:19,20
183:18 185:18
193:3,3
**purposes** 6:4
36:4 50:17
59:11,11 61:22
66:3 73:18
98:17 101:5
103:14 104:8
105:20,22
108:4 123:23
126:21 177:14
179:3,19
183:23 189:21
**pursued** 34:7
**pursuit** 105:21
**pushing** 29:14
**put** 8:2 11:19
16:5 17:7,18
18:21 19:2
35:6 53:7 63:4
82:3 83:1 84:8

86:24,24 89:21
90:7,19 96:14
96:19 97:9,21
102:11 106:12
110:17 117:6
133:5 135:16
138:1 146:4,9
149:16 151:9
153:3 159:11
164:8 168:4,15
173:3 179:13
181:12 192:21
195:8
**putting** 7:24
89:11,20
105:21 108:19
133:18

## Q

**qualified** 90:10
111:5 161:19
**quality** 87:18
**Query** 24:6
**question** 12:24
14:16 15:11
16:16 17:23
20:3 22:19
30:23 32:1
33:11,23 34:4
36:10 41:25
45:18,25 47:17
49:24 51:1
53:12 60:13
63:25 66:22
73:24 87:21
89:14,14,17,18
90:21,22 91:8
91:19,24,25
93:18 95:8,11
95:14 98:2
99:23 110:23
113:10 118:13
121:4,21
122:17 150:11
152:24 156:2
167:8 173:22

176:8 188:4
189:20 190:13
192:14
**questioned**
188:12
**questioner**
134:23
**questioning** 50:1
50:3
**questions** 8:5,9
8:12 46:8
50:11 83:5
84:4,6 86:12
94:23,24 98:13
98:18 104:1
113:3,4 117:15
118:4,9 119:10
119:14 127:11
136:2 143:16
150:4 191:24
191:25 192:1,3
**quick** 129:9
149:12
**quite** 117:23
118:6 159:1
**quote** 69:18
100:16 113:13
113:14 138:22
166:19
**quote/unquote**
50:16 61:8
64:2 95:19
106:8 113:16
158:25 159:5

## R

**R** 3:1,4 5:14
249:1
**rabbit** 63:16
94:19
**RACHEL** 5:16
**Rafferty** 4:1
6:22
**raise** 51:6
127:21 143:17
247:15

**raised** 14:16
31:12
**raises** 33:23
**random** 11:13
163:2
**rank** 108:9
**re-notice** 145:15
**reach** 184:23
**reaching** 167:18
**reaction** 72:7
**read** 27:21 50:13
76:7 78:17
95:25 97:11
108:24 123:21
166:22,23
167:2,4
**readily** 12:8
**reading** 51:23
53:18 104:23
156:22
**ready** 7:21
**real** 77:5 103:7
**real-time** 136:7
**realistic** 143:1
**reality** 119:19
142:15 176:1
**really** 13:20
15:11 17:15
19:2 30:21
33:6 34:16
36:2 38:6 49:8
49:13 51:8
68:5,9 69:19
70:8 73:5 83:1
84:3 87:11
95:14 107:15
117:1 132:5,12
132:13 143:18
143:22,23
146:25 152:6,8
161:4 165:7
179:17 181:2
181:22 182:6
182:15,17
183:1 184:18
188:17 189:19

246:14 248:7
**reason** 13:14
  17:1,7 31:15
  43:5 44:12
  46:9 74:7,15
  87:11 102:4
  112:13 114:8
  116:18,25
  118:22 122:9
  123:2 126:1
  133:17,17,18
  135:14 136:21
  145:2 152:1
  177:13 178:18
  181:21 182:16
  182:24
**reasonable**
  138:13 141:3
  147:18
**reasonableness**
  18:5
**reasonably** 24:1
  143:2
**reasons** 15:23
  21:8 29:13,20
  70:19 108:24
  139:17 151:25
  157:4 162:22
  174:15
**Reath** 4:13 7:17
**recall** 57:1
  120:18
**recalling** 15:19
**received** 8:16
  112:1 129:22
  138:7 150:10
  189:14
**receives** 107:5
**recess** 83:9
  119:4 195:16
**recognize** 15:4
  84:11 149:25
**recognizes** 57:21
**recognizing**
  35:10 47:24
**record** 6:2 8:17

20:11 26:4
28:8,9 119:7
142:8 143:25
175:20 185:20
186:9 245:4
246:1,4 247:13
**recycling** 136:11
**red** 3:22 145:8
**redacted** 1:4
  114:9,11,25
  115:10,19
  116:16 128:20
  128:21 129:4
  129:13 130:7
  133:11,12
  136:21 138:23
  149:17
**redaction** 18:21
  86:10 119:22
  130:9 133:9
  167:14
**redactions** 13:6
  18:14,18
  130:20 139:11
**redepose** 144:13
**redline** 52:21,23
  59:16 60:11
  167:6
**redlined** 51:17
  168:25
**redlines** 47:21
  47:22 167:14
  168:22
**referenced**
  121:10 159:2
**referred** 190:3
**referring** 116:9
  122:18 136:20
  156:14 157:16
**refers** 119:17
  121:5 151:4
**reflect** 99:9,13
**reflected** 21:21
  105:3
**reflecting** 97:18
  151:10

**reflects** 99:14
  186:23
**reformulate**
  85:8 89:2
**reformulated**
  84:14
**regard** 67:11
  109:6 114:1
  126:19 164:23
  167:5 169:4
**regarding** 8:9
  19:8 60:6
  77:10 96:1
  120:11 166:20
  166:25 177:3
  178:14 245:7
**regardless** 70:7
**Register** 52:25
**regulation** 59:18
  95:9
**regulations**
  161:1
**regulators**
  174:24 175:12
**regulatory** 38:23
  39:6 84:15,16
  87:16 161:3,18
  163:7 164:10
  165:10,16
  166:11
**rehash** 177:9
**rehashing**
  159:12 176:21
**reiterate** 168:7,9
**rejoin** 194:25
**relate** 35:1 58:14
  90:21 129:3
  130:19 181:23
**related** 9:8 25:2
  44:6 52:14
  58:11 66:10
  68:2,10 76:5
  77:3,11,22
  81:9 87:17
  124:20 169:13
  181:25 189:16

**relates** 58:1
  190:5
**relating** 85:16
**relation** 57:16
**relations** 55:19
  81:16 173:25
**relationship**
  61:16 82:16
**relative** 249:10
  249:12
**relatively** 31:2
**relayed** 132:2
  245:13
**release** 47:19
  48:2,6,10 52:5
  52:12,21 54:16
  54:17 56:1,5
  57:12 58:14
  60:7,9 61:1
  62:18 65:9
  70:4,5,8 75:22
  76:1,13,16
  77:22 79:10
  174:22,23
**release/public**
  57:16
**released** 174:23
**releases** 47:11
  47:13 50:15,25
  51:1,15,16,17
  51:17,18 52:4
  54:18 56:10
  60:6 62:3 77:9
  77:23 84:1
  147:12,15
  168:19 173:3
  174:4 175:2,3
  175:19
**releasing** 181:14
**relevance**
  141:22 174:2
**relevancy**
  173:22
**relevant** 36:4
  37:23 79:13
  114:12 117:1

134:22 140:5
144:2 145:13
174:1,5,7,11
174:22 178:8
245:24
**rely** 20:12
  106:21
**remaining** 12:4
**remains** 131:7
**remember**
  146:15
**remembering**
  117:5
**REMOTE** 1:6
  2:11
**remotely** 142:18
  142:22
**render** 158:10
  176:14,19
  177:4 178:16
  184:3 185:6,12
  189:22 193:2
  245:17
**rendered** 183:21
**rendering** 63:23
  64:13 89:8
  91:6,22 92:1
  92:20 183:18
**rendition** 177:11
**repeat** 46:6
  169:16 185:22
**repeating** 185:7
**replete** 142:19
**reply** 28:1 172:2
  172:8,9
**Reporter** 2:8
  247:19 249:4
**Reporting** 1:19
**reports** 121:18
**represent** 31:22
  110:18 111:21
  245:5
**representation**
  17:24 110:8
  126:8,14
  164:25 176:17

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                                                June 18, 2021

277

180:14 245:15
representations
  16:19 26:13
  74:18 172:22
  173:4,7
representative
  11:20,21 12:18
  13:25 99:24
  178:12
represented
  127:2
representing
  16:22 164:23
represents 96:6
reputation 49:16
  50:19,22,25
  51:4 52:14
  56:2 59:3
  66:14
request 62:7
  66:1 68:7
  80:21 96:9
  101:4 102:19
  103:19,23
  105:9 136:22
  157:10,17
  178:16
requested
  104:12,12
  106:23 124:4
  158:13 176:13
requesting
  185:15,16
requests 157:12
require 95:9
required 91:15
  115:23
requirements
  165:11
requires 158:19
  167:13
research 95:23
researched 28:2
reserved 131:24
resources 65:10
respect 25:6

27:8 36:24
37:12 96:7
136:9 153:19
155:12 159:10
165:6 180:11
respond 66:2
  92:21 180:1
responding 8:25
  58:11
responds 76:14
response 28:2,16
  30:1 59:16
  64:21 66:12
  76:19 84:6,24
  86:11 87:20
  115:25
responses 80:5,7
  81:12 96:13,20
responsibilities
  86:3
responsibility
  14:18 36:21,23
  37:6,11,25
  72:4 98:25
responsible 41:9
rest 154:10
restrictive 70:1
result 22:21
  30:13 76:14,19
  86:13 177:6
results 121:18
retained 81:2,3
  81:10 169:11
retire 85:7
retired 1:14
  159:16
retrace 26:14
return 83:24
Reuters 49:11
  173:6
reveal 26:17
revealing 100:3
  118:10
review 47:20
  51:6 58:24
  126:22 129:14

129:15 130:2
143:16 147:20
149:17,20
153:23 154:1
161:6 170:4,25
reviewed 20:13
  31:5 73:25
  113:18 134:4
reviewing 50:7
  56:9 144:22
  166:10
reviews 130:23
rhetoric 184:15
rhetorically
  72:22
RHOADS 5:16
Rice 3:3 6:9
Rich 14:3,4
  20:24,25 21:4
  21:8,13 43:4
  51:11 70:25
  71:9 99:7,10
  99:12 116:5
  149:24 152:13
  152:13 154:1
  157:22,25
  160:13 165:15
  170:17 176:8
  178:3 181:18
  186:2,6
Richard 5:2
  7:11
richard.berna...
  5:6
Riddell 51:24
  67:13,14,16,19
right 9:14 12:6
  12:13,15,19
  13:11,18 14:5
  17:22 21:11
  29:4,22 30:14
  38:22 39:18
  42:9,14,18,20
  42:25 53:1,2
  54:17 59:13
  69:23 82:5,6

84:10 86:17
87:3 88:9 89:3
89:7,9,13
99:16 105:6,12
105:13 106:19
109:17,25
110:6 117:25
121:16 127:1,2
134:8 136:23
144:19 145:14
147:2,17
155:10,24
156:9 157:1,2
159:1 160:16
166:9 167:11
167:15,22,25
170:20 171:4
178:17 183:13
190:22 191:12
191:17 194:1
195:5
risk 69:24
  118:23 135:25
  142:11 154:11
  187:22
river 70:12
robust 143:25
Rohm 124:24
  125:15
role 35:18 42:21
  42:22 43:8,12
  43:23 44:22
  47:1 70:16
  72:4 88:6,9
  176:23,23
  177:11,12
  188:6,11,15
  189:12,15
rolls 183:25
room 44:9 91:10
  93:5 177:19,20
  177:25 195:9
  195:18 245:7
roots 22:18
Roth 3:21 6:25
rough 10:19

41:23 246:16
roughly 13:3
routine 121:12
ruined 127:8
ruining 118:23
rule 97:7 108:21
  113:20 132:14
  132:23,25
  134:12 140:2,2
  140:5 144:9,14
  144:15 146:12
  146:17 147:13
  169:24 174:5
  175:9
ruled 146:8
rules 14:3 16:14
  105:16 114:8
ruling 15:21
  23:7 53:18
  61:1 64:22
  65:9,25 66:2
  68:5 77:10
  129:17 133:3
  134:8,16 135:8
  135:11 139:15
  140:1,10,14
  141:22 146:25
  146:25 147:18
  149:3 153:14
  153:20 245:18
rulings 11:21
  15:14,16,24
  27:8 51:24
  62:19 135:19
  140:16 246:6
run 65:5 66:6
  68:12 94:5
  118:23 245:19
rundown 186:17
running 61:19
rush 246:8

**S**

S 3:1 4:7 5:14,14
s-fully-redacted
  128:25

**sacrosanct** 181:5
  182:21 183:13
**sad** 125:7
**safe** 56:15
**safety** 66:13
  76:24 172:20
  172:23,24
  173:13 174:14
  184:23
**sails** 85:23
**sake** 74:3
**sale** 87:19
**sales** 1:6 44:19
  50:13
**sampling** 11:13
**sanctions** 52:25
**satisfaction**
  171:23
**satisfactory**
  134:17
**satisfied** 147:9
**satisfy** 121:23
  146:23
**Saudi** 38:18
**save** 28:6 141:14
**saw** 32:14 54:17
  139:11 142:17
  168:14
**saying** 14:4 30:6
  32:25 36:16
  44:8,12 45:22
  49:21 54:12,25
  57:5 63:3,3
  68:10,21 69:17
  71:20 88:13
  90:2,7 91:7
  92:14,23 98:9
  99:8,11,12
  103:5 111:18
  111:23 112:15
  139:3 152:13
  152:13 153:9
  153:25 154:9
  157:13 163:15
  164:2,18
  165:17 167:19

178:22 188:25
  191:3
**says** 20:17 45:8
  48:14 52:23
  53:6 58:8 59:8
  61:5 65:2
  69:19 79:23
  86:3,15 91:14
  92:10 93:5
  95:12 100:3
  101:11 102:23
  104:19 106:10
  107:6 111:10
  116:18,24
  145:8 150:22
  152:17 153:15
  158:8 160:7
  163:4,24,25
  170:17,18
  172:7 176:13
  177:22 180:16
  188:10 191:14
  194:11 246:6
**scenario** 16:13
  46:6,6
**schedule** 129:10
**scheduled**
  131:11
**Schneider** 1:14
  6:1,11,15 7:5
  7:19 12:3,11
  12:16 13:10
  14:9 16:17
  17:21 18:8,23
  22:12 23:2,5
  24:6 25:13,22
  26:20 27:11
  28:6,12,21
  30:3,25 31:18
  32:8 34:12
  36:11 38:7
  39:5,13,16,20
  39:24 40:3,13
  40:25 41:24
  42:7,16,20
  44:4,15,25

45:6 46:14
  47:4 48:4,8,12
  49:1,4 50:10
  52:17 53:4,13
  55:2,22 57:14
  60:4,22 62:1
  63:15,19 65:6
  66:18 67:12
  69:5,10 70:22
  71:6,10 73:23
  75:8,13 77:6
  77:24 78:3,10
  78:14,18,20,24
  79:2,6,11
  80:10,15,17
  81:14 82:5,10
  82:17 83:3,10
  83:19 85:20,25
  86:17,23 87:1
  87:4,8,21,24
  88:17 89:5
  90:1 91:12
  92:2 94:10
  95:4,17 98:1,4
  99:20 100:22
  101:15,22,24
  102:13 103:2,6
  104:25 105:7
  110:2,6 113:6
  113:9 115:2
  117:9 119:1,5
  120:2,13,22
  121:3,14,19
  122:16 126:13
  127:5,10
  129:20,24
  131:1,19 132:1
  133:14,25
  135:22 138:2
  138:16 139:14
  139:21 141:17
  141:21 143:21
  145:18,22
  146:10 147:3
  148:10 149:8
  149:13 150:2,3

151:18 152:5
  152:22 153:13
  155:14,19,24
  156:10,16,24
  157:14 158:5
  158:23 159:18
  160:2,10,15
  161:13 162:4,7
  162:10 163:9
  163:12,21
  166:15 168:5
  169:15,17,21
  170:6,11,21,23
  171:11,14
  173:21 174:10
  174:19 175:8
  175:11,14,17
  176:5,12 177:1
  178:11 179:22
  180:8,23
  184:13 185:3
  188:3 189:9
  190:7 191:6,11
  191:21,23
  192:2,8,12,16
  192:24 193:8
  193:11,19,25
  194:4,13,18,21
  195:5 245:3
  247:21 248:4,9
**school** 82:14
  111:4
**science** 33:4
  43:7 75:23
  91:2,20 94:1,3
  94:6
**scientific** 80:1,2
  80:4 84:25
  89:13,23 90:10
  90:20
**scientist** 178:21
  185:19
**scientists** 93:5
**scientists'** 93:6,7
**scope** 155:8
**screen** 85:18

138:5 143:10
  149:16 154:18
  171:17 245:2
**scrivener-type**
  59:25
**scrutiny** 172:20
  173:8
**search** 128:17
**searches** 155:8
**Seaside** 27:16
**second** 12:6
  17:21 28:17
  99:23 108:16
  108:17 125:3
  128:18 133:4
  157:11,12,20
  157:21
**section** 52:24
**sections** 34:19
  35:6
**secure** 69:23
**Sedran** 4:7 7:4
**see** 9:9 18:20
  20:4 23:24
  26:8 33:13
  34:17,18,23
  35:8 39:12
  54:10 57:3
  58:16 69:11
  74:5 77:18
  86:1 91:18
  100:24 114:21
  117:13,17
  118:3 126:24
  127:12 132:13
  138:4 143:22
  143:24 144:9
  149:9 150:6
  154:22 161:8
  164:21 165:16
  165:22 167:12
  168:1 175:1,1
  176:15 186:17
  189:7 194:4
  195:11 246:17
**seeing** 9:1 24:3

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

279

45:21 66:21
67:18
seek 105:17
seeking 154:12
170:3
seen 35:5 36:23
56:18,20,24
60:5 99:25
106:17 107:21
116:16 119:20
131:7 138:18
150:1 157:23
172:21
selection 50:23
self-described
75:15
selfish 145:2
sell 56:3
semi 84:16
Semple 85:5
send 19:11 47:19
61:2 62:4,19
64:21 65:14
74:3,22 76:2
77:12 107:1
124:18,19
126:5 151:8
152:1 154:1
158:3
sending 61:11
142:22 154:4
169:6 174:4
sends 54:2 62:18
62:21 65:2
senior 40:21,22
169:7
seniority 41:22
sense 9:7 67:16
67:19 111:16
147:6 172:14
172:15 175:9
186:19 189:11
sensitive 55:18
sent 8:10 19:17
44:24 53:20,23
55:16 59:2,7

60:23 62:23
67:22 68:7
73:18,18 77:5
92:22 96:17
106:9 111:2
124:12,21
125:12,17
127:1 130:1
137:20 150:2
150:20 151:12
151:20 152:4,9
152:10,13,14
152:21,25
153:11,24
155:12,21,23
161:8 184:1,1
184:2
sentence 108:16
108:17 156:25
157:1,2,15,20
180:2
separate 23:11
39:25 76:22
90:22 91:3
102:14 118:15
136:7 147:5
168:24 195:9
245:6
separately 39:7
124:11
September 86:2
series 40:19
156:1,17
seriousness
176:2
serves 81:8
services 36:4,15
38:21 40:8,8
42:3 195:7
session 28:7
118:1 247:25
set 8:20 19:11
31:8 93:23
129:21 131:9
138:12 144:22
146:14 249:8

sets 147:11
settled 84:9
seven 146:17
150:8,10
161:11
seventies 85:3
sexier 187:18
shaking 20:22
share 63:4 85:18
138:5
shared 36:4
60:19 168:10
168:13
shared-services
35:14
Sharko 4:14
7:16,17 18:25
37:1,17 38:22
39:9,15,19,22
40:18 41:7
42:6 159:10
175:10,16
177:10 188:25
sheet 160:6
193:24 194:11
shelter 74:21
shield 182:14
shift 58:24
shocked 247:2
shoes 144:8
246:23
short 39:9 47:25
58:1 81:20
83:11 134:10
189:7
Shorthand
249:4
shot 135:3
show 57:12 65:3
73:20,22 76:18
85:22 86:21,21
117:4 122:14
161:10 187:4
showed 52:7
showing 111:7
124:19 139:1

shows 99:15
shut 75:5
sic 190:24,24
side 19:10 75:21
82:13 104:14
117:17 144:16
164:15
sides 173:20
signed 180:5
significant 21:25
49:15 113:25
116:23 142:11
significantly
107:4
silent 142:4
silo 126:23
silos 146:7
similar 20:6
22:21 52:12
68:21,24
122:12 146:8
similar-type
9:19,23
simply 22:19
46:12 73:4
93:20 123:1
130:15 142:4
159:12 168:10
168:12 171:23
172:1 184:2
sincerely 185:21
single 52:11
56:24 57:3,11
92:10 96:23
180:14,15
182:7 184:7
sir 53:3
sit 136:22
190:18
sits 35:15
sitting 44:9 57:1
91:9 93:4
177:19,25
181:3
situation 9:20
20:7 24:11

46:2 61:20
62:17 64:21
80:24 86:7
129:8 143:23
164:5
situations
106:20
six 10:19 109:10
161:11 191:21
192:1,3
SJR 81:10
Skadden 5:1 7:9
7:12,14
skewed 77:4
skip 150:8
SLATE 5:1
sleep 124:6
slice 164:13
165:6
Slivka 42:18
small 64:7
126:20
Smith 69:1,2
sole 35:18 188:6
solely 43:24 44:5
189:21 245:7
somebody 14:24
14:25 72:14
83:5 86:13
93:5 101:12
125:22 165:16
172:9 181:11
193:14
soon 175:6
189:23 248:11
sorry 18:2 28:21
28:22 29:6
31:19 38:9
49:4 50:9
69:17 78:21
112:8 131:17
131:20 150:18
156:7 170:2
176:9 192:5
193:4
sort 26:25 33:18

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

280

34:4 35:14,24
36:3,14 37:12
47:6 51:23
52:23 53:24
67:8 68:1,3,10
68:21 69:1
72:21 96:22
99:3,4 108:25
127:13 136:11
138:12 139:24
141:4 146:18
146:24 165:7
176:16 181:3,7
181:8,20,20
182:5 183:1
**sorts** 13:17
179:1
**sought** 15:23
72:17 143:7
**sound** 113:4
185:20 190:8
**sounds** 16:18
34:25
**source** 87:18
**South** 1:20 4:2
**spam** 193:13
**speak** 15:11
83:21 163:3
175:20 188:22
**speaking** 46:7
106:16 140:25
171:10
**special** 1:14 6:1
6:11 7:5,19,21
12:3,11,16
13:10 14:9
16:17 17:21
18:8,23 22:12
23:2,5 24:6
25:13,22 26:20
27:11 28:6,12
28:21 30:3,25
31:18 32:8
34:12 36:11
38:7 39:5,13
39:16,20,24

40:3,13,25
41:24 42:7,16
42:20 44:4,15
44:25 45:6
46:14 47:4
48:4,8,12 49:1
49:4 50:10
52:17 53:4,13
55:2,22 57:14
60:4,22 62:1
63:15,19 65:6
66:18 67:12
69:5,10,16
70:22 71:6,10
73:23 75:8,13
77:6,24 78:3
78:10,14,18,20
78:24 79:2,6
79:11 80:10,15
80:17 81:14
82:5,10,17
83:3,10,19
85:20,25 86:17
86:23 87:1,4,8
87:21,24 88:17
89:5 90:1
91:12 92:2
94:10 95:4,17
98:1,4 99:20
100:22 101:15
101:22,24
102:13 103:2,6
104:25 105:7
110:2,6 113:9
115:2 117:9
119:1,5 120:2
120:13,22
121:3,14,19
122:16 126:13
127:5,10
129:20,24
131:1,19 132:1
133:14,25
135:22 138:2
139:14,21
141:17,21

143:21 145:18
145:22 146:10
147:3 148:10
149:8,13 150:3
151:18 152:5
152:22 153:13
155:14,19,24
156:10,16,24
157:14 158:5
158:23 159:18
160:2,10,15
161:13 162:4,7
162:10 163:9
163:12,21
166:15 168:5
169:15,17,21
170:6,11,21,23
171:11,14
173:21 174:10
174:19 175:8
175:14,17
176:5,12 177:1
178:11 179:22
180:8,23
184:13 185:3
188:3 189:9
190:7 191:6,11
191:21,23
192:2,8,12,16
192:24 193:8
193:11,19,25
194:4,13,18,21
195:5 245:3
247:21 248:4,9
**specific** 36:17
44:18 65:24
79:14 80:18,22
81:12,25 96:7
122:18 127:14
136:21,21
140:11 163:4
**specifically**
41:16 65:25
81:2 103:23
**specified** 157:10
**spectrum** 85:15

**speculate** 109:8
**speculating**
109:9
**speculation**
107:12,20
108:6,10
109:12
**speed** 15:9
**spelling** 55:8,9
56:23 57:2
**spend** 102:25
116:19
**spending** 13:15
**spent** 26:10
123:10
**spillover** 131:22
131:25
**spills** 132:4
**spoiler** 141:8
**spots** 246:16
**squarely** 97:2,14
**squeeze** 141:25
**stamp** 95:21
130:11,11
**stamped** 191:16
**stand-alone**
146:25 168:24
169:22
**stand/sit** 17:9
**standard** 113:2
141:13,13,15
150:25
**standards** 164:9
**Standing** 156:18
**standpoint**
73:13 142:24
**stands** 155:10
**starch** 89:2
**start** 6:6 9:12
10:1 12:24
20:23 26:17
29:19 47:17
115:10 131:11
148:16 149:9
150:7 154:13
**started** 14:5

32:18 85:7
119:6 248:11
**starting** 9:25
17:3 42:25
91:24 131:4
156:4 181:7
**starts** 16:9
**state** 2:10 5:22
10:11 12:8
13:14 19:6
23:9 24:15
28:19 29:1,2
29:16,19,23
30:1,9,12,21
31:20 32:10,12
33:2 34:2
36:19 97:12
131:4 132:3
136:24 165:17
249:4,20
**stated** 74:16
112:20 151:6
166:18
**statement** 58:10
76:19,22,23
79:22,24 80:4
100:1 109:21
130:12 180:19
180:25
**statements**
112:21 161:17
161:21
**states** 1:1 130:16
**statistics** 105:2
**STATUS** 1:5
**stay** 126:2
**staying** 247:16
**Steering** 6:16,20
6:23 7:3 10:6,9
42:12 58:7
63:11 82:8
83:16,17 85:12
127:24 177:19
**stenographica...**
2:7 249:7
**step** 45:5 130:7

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                    June 18, 2021

281

158:14 181:3 183:2
stood 116:1
stop 129:8
  184:24 193:13
story 75:21
straightened 8:15
strategies 44:18
  63:2 81:10
  169:9,10
strategy 148:12
stratification 186:21
street 3:10,16
  4:2,8 64:19,24
stretch 83:8
  174:21 182:9
stricter 173:8
string 156:3
strong 48:23
structurally 36:3
structure 35:11
  36:8 41:19
  72:3
studied 8:4,5
  134:5
studies 76:17
  84:18,18 87:16
study 95:12,13
studying 75:24
stuff 114:21
  141:12 167:22
stylistic 53:10
  54:24 55:5
sub 34:22
subject 9:17
  13:4,8 18:16
  21:22 27:3
  31:2 34:13
  52:25 101:6,13
  103:15 129:5
  135:5 150:23
  150:24 159:23
  159:24 172:7

subjective 165:12
submit 27:25
  28:3
submitted 12:22
subset 12:4
subsidiaries 34:21 38:2,14
subsidiary 36:17
  40:2 185:15
substance 60:1
  60:14,16
  113:16,22
substantial 110:4,12,13
  111:14,15
  112:16 121:23
  121:24 122:6
  137:15 187:5
substantially 49:10 189:3
substantive 55:4
  114:7,13 132:5
substitute 159:9
successfully 23:14
suddenly 44:10
sued 166:7
sufficient 146:23
suggest 70:18
  81:20 88:25
  107:17 123:21
suggestion 91:5
  107:18 134:1
  146:11 181:11
suggestions 182:12
suggests 163:6
SUITE 3:4 4:8
suits 90:14
summarize 30:15
summary 162:8
Sunday 181:18
  181:18
super 98:9

Superior 27:20
Superman 93:24
  178:24,24
Supp 68:15
  125:1
supplement 28:8
  140:1 150:10
supplemental 112:23 167:4
  194:9
supplements 8:15
support 32:25
  45:21 66:3
  102:20 106:13
  109:22 122:24
  139:20 170:8
  176:14
supports 63:21
suppose 44:16
  53:5 55:8 62:1
  65:7 91:12,13
  104:19 142:11
  153:2,13
  163:23
supposed 74:17
  101:2,9 104:4
  172:14
supposedly 138:21
Supreme 58:12
sure 14:21,25
  15:2 16:12
  17:16 23:4
  24:23 26:12
  28:11 32:13
  35:17 43:25
  45:3,6 48:14
  49:10 50:17
  51:6 52:15
  54:15,23 59:5
  60:14 75:20
  81:24 83:19
  85:21 98:20
  117:16,23
  118:6 124:6

125:14 127:7
137:1 138:2
143:15 149:17
152:6,11
154:24 159:1
162:17 163:17
165:9 179:9
191:12
surprising 247:10
Susan 4:14 7:16
  37:14 189:2
susan.sharko... 4:16
suspect 45:20
  46:10 92:3
sustained 134:13 140:17
swear 36:1
sweep 125:23
switch 193:5
switched 148:24
swore 180:5
sworn 98:14

**T**

T 5:2,14 249:1,1
tab 77:16 78:4,6
  78:9,16 79:8
  80:14,17 81:5
  95:21 149:16
  149:20,22,24
  156:12 191:19
  191:19 193:14
  193:15,16
  194:10
table 19:2
  123:18 133:19
  135:2,16
tables 73:4
  165:1
tabs 78:7
tagged 139:8
take 9:3 17:15
  33:24 44:21
  45:3,4 46:1,6

50:12 58:8
64:16 70:1
71:14 75:14
81:20,23 83:7
85:23 88:3
90:6 91:21
113:12 119:14
127:6 130:7
132:9,11,21
135:2 155:1
158:14 160:2
162:8 181:3
183:2 184:24
195:6
take-away 30:7
taken 2:7 68:12
  83:9 119:4
  132:6,7 138:21
  195:16 248:7
  249:7
takes 195:17
  245:1
talc 42:12 44:10
  48:3,3,6,7,11
  48:11,14,15
  58:2,2,4,5,6,9
  58:11 59:20
  71:5 74:4,6
  75:19,24 76:5
  76:25,25 77:3
  77:12 83:17
  84:5,10,12,17
  84:20 85:12,16
  87:19 88:25
  89:3 120:20
  121:5,14,17
  131:4 166:20
  172:20,23,24
  173:4,13 177:3
  177:19 178:14
talcum 1:5 36:24
  76:17 120:14
  120:16 159:17
  179:7
talk 21:14 47:8
  62:8 76:24

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

282

106:14 116:5
117:18 118:24
164:7 171:2
187:20 188:19
**talked** 34:10
128:2 159:14
190:6
**talking** 13:20
18:12 23:9
24:7 25:14
33:25 37:13
45:25 48:2
68:24 69:1
72:19 73:5,7
77:17 88:1,15
106:2,3 112:2
112:3,3,5
115:4,20
116:22 117:4,7
129:5,8,21
133:6 136:17
155:22 156:25
157:1 158:21
160:21 164:16
173:10 182:1
187:10 192:6
192:10
**talks** 64:7
**tangentially**
68:2
**targeted** 33:4
**Tatlow** 123:14
123:15,17
**teach** 115:14
**team** 6:12 50:14
62:4 65:8
195:8,14
**technical** 51:12
125:11,18,20
125:23,24
**technically**
85:20,21
**tell** 20:25 22:4
26:18 42:10
51:22 82:22
86:5,7 101:6

101:17,19
113:19 117:11
118:21 123:13
153:10 169:23
170:12 191:13
193:14
**telling** 103:3
**tells** 117:15
147:5
**ten** 159:23
**ten-page** 116:17
**tend** 71:16
**term** 25:24
51:12 68:22
84:9 158:25
159:2
**terms** 22:24 70:9
132:13 140:15
161:2 164:11
164:14 182:9
246:18
**terribly** 144:7
169:23
**test** 121:23,25
173:18
**testimony** 132:6
189:18 249:6
**testing** 121:12
121:18
**tests** 125:20
**thank** 7:20
28:14 38:15
65:2 79:2
115:6,21 116:2
118:25 119:3
145:20 193:18
195:12 247:4
247:16 248:1,6
**thanks** 248:4
**Theresa** 2:8
119:7 247:16
249:3,19
**thing** 7:19 10:24
16:18 28:17
46:18 88:2
89:10 95:7

109:3 111:9,11
116:8 123:13
128:18 148:7
149:12 159:15
161:10 166:2
172:17 183:5
**things** 8:11
14:20 17:12,14
19:9 22:5
26:19 33:14
41:16 44:14
45:21 47:2
51:23 57:25
71:17,20 77:2
78:13 84:21
91:2 107:3
132:7 142:23
158:20 164:17
172:3 179:11
184:25 189:10
246:24
**think** 6:4 7:25
8:18 9:6 10:15
11:5 12:5
13:21 15:2
21:13 23:1
25:16 26:1,17
29:7 30:1,20
32:22 33:11,14
33:16,23 34:9
34:14 36:13
37:18 41:8,21
41:24 44:14
45:16,18 46:18
48:19,21,22,23
49:7 53:7,7,11
53:12,15 54:11
55:6,9,11,14
55:19 58:7,16
59:8,13 60:16
60:19 61:7,13
61:19,25 62:14
62:16,22,25
63:1,5 64:14
64:20 65:1,22
65:23 66:4,6

67:13 68:20,22
68:23,25 69:17
69:18,25 70:14
70:24 76:12,17
76:20,21 77:2
77:18,20 79:20
81:7,15 82:24
84:3,6,11 86:8
86:12 89:1
90:17 91:25
92:4,24 93:2,5
93:8 94:2,18
95:12 99:7,11
101:10,12
102:4 103:21
103:24,25
105:1,4,15
107:11,15
108:15,16,17
108:21,24,25
110:4,16 113:4
114:3 115:3
116:5,8,10,11
117:1,2,10
118:21,21
119:14 120:4
120:15,16
121:1 125:9,11
126:19 130:4
132:24 135:4
136:19 137:1,2
137:17,23
139:6,17 141:1
141:6,10 142:6
142:12,13
143:6,11,18,20
144:13,15
145:24 148:3
149:2,22 151:4
151:23 152:8
152:12 153:7
153:20 155:4
156:20,24
157:21 158:17
159:9,12,13
160:19 161:4,5

163:4,15 164:3
164:4 165:5,14
167:2 169:18
169:22 171:1,3
171:5,6,7,22
172:13 173:14
173:15 175:17
179:5,17 180:4
181:2 183:1,6
185:1 189:6
190:15,16
191:4 245:16
246:1,7,10,10
247:11 248:1
**thinking** 92:23
117:6 123:10
146:11 160:20
187:15
**third** 5:19 52:3
61:15,18,21
62:17 63:1,6
64:2 67:19,21
68:6,17 69:7
69:15 80:25
81:1 84:2
97:15,16
131:25 132:5
132:15,23
133:4 150:20
168:12 169:10
187:20
**thoroughly**
247:9
**thought** 8:11
9:12 14:5
56:24 57:5
63:16 95:1
98:6,22 118:16
142:5 152:23
181:20 189:10
192:5 247:5
**thoughts** 63:5
64:1 117:11
118:7 119:12
127:17 148:7
**thousand** 10:16

10:19 12:9,17
12:19 13:2
32:21,22
109:10
**thousands**
106:17 116:20
**three** 12:9,17,19
41:5 86:4 88:1
108:13 115:21
116:20 161:11
176:15
**thrilled** 127:8
**throw** 64:6,9
72:20 172:14
**THX** 116:18
117:6
**time** 13:4,16
14:19 16:23
22:2 23:17,18
24:1,3 26:10
44:2 94:11
102:25 103:12
105:3 116:19
117:10 119:15
123:10 132:6
132:12 134:10
134:14 135:5
140:10 141:15
144:13 147:18
148:19,21,22
160:1 173:7
177:8 186:4
190:14 246:18
246:25 248:7
249:7
**times** 19:1 35:23
43:12,22 78:23
112:1 119:19
144:1 150:1
159:21 173:5
245:22
**timing** 247:3
**tiny** 38:10
**Tisi** 4:2 6:21,21
63:13 72:24
83:16,21,22,23

85:24 86:6,18
86:25 87:3,6,9
87:21,23 88:15
88:18,19 89:6
90:17 91:18
92:7,13,20
93:16,22 94:11
94:12,16 109:3
110:20 111:9
111:10,11,14
112:17 119:25
131:22 137:12
137:20 154:20
192:5,10,14,17
192:19
**title** 34:24 40:16
89:20
**titles** 40:19
**today** 8:12 28:5
28:17 82:14
129:6,17 146:6
146:9 181:3,7
181:11 189:14
247:5
**today's** 28:7
**told** 21:4 51:11
172:19 185:22
**tons** 34:18
168:18,18
**top** 39:17,17
96:8 101:7
116:3 119:21
130:5 146:11
**topic** 16:1
**total** 12:9 13:8
32:20
**totally** 65:11
187:9
**touch** 145:16
**touches** 76:9
**tracked** 29:18
**traction** 142:23
**trademark**
122:2,4
**trail** 106:20
**trained** 89:25

**training** 146:18
**transcended**
71:19
**transcript** 1:4
2:6 187:25
249:6
**transparency**
17:19
**treatise** 92:6
**tremendous**
7:23 8:19 9:7
**trial** 50:2 114:20
159:25
**triangle** 39:17
**tried** 16:10
17:13 22:1
23:23 49:17,18
50:4 52:6
53:21 67:20
125:23 189:4
**troubles** 146:21
**true** 33:1,2
52:22 97:7
103:8 166:1,2
166:4 249:6
**truth** 95:12
**truthful** 164:10
164:11,12
**truthfully** 98:14
**try** 10:24 16:11
51:9 59:22
109:11 137:19
141:2 146:19
165:5 177:14
246:8,24
**trying** 22:7,17
22:19 26:11,14
35:6 37:1,8
49:23 51:24
56:14 79:18
84:8 98:10,19
99:5 112:5,14
136:13 142:14
142:25 149:19
161:15 163:3
178:7 187:19

**Tuesday** 76:22
140:13 188:11
188:14,19
189:16
**turn** 7:6 14:3
25:8,12 47:7
52:18 117:20
119:10 151:3
151:16 162:5
**turned** 73:4
165:1
**turning** 14:7
137:14 154:3
**turns** 245:23
**tutorial** 35:3
**two** 9:7 38:8
39:10,14 41:5
44:14 62:2
68:9 77:2 86:4
89:19 101:4
103:11 108:9
115:21 116:19
129:18 131:24
132:8,24
134:13 135:9
140:14 145:2
161:11 176:15
180:1 193:5
246:21,24
**type** 19:24 20:8
20:10 24:13,14
30:8,11 35:25
44:3 69:16
70:16 75:5
76:12,14 81:16
117:14,14
148:25 169:13
175:19,21
**types** 9:21 61:12
66:8 133:20,23
**typical** 121:1

_____
**U**
**U.S** 122:15
**ultimate** 60:20
**ultimately** 11:11

132:4 168:3
**umpteen** 31:21
**unable** 104:3
**unclear** 151:24
**uncomfortable**
26:16
**underlying**
98:16 105:11
124:1,8 176:7
**understand** 8:24
9:2,13 14:17
23:6 26:11
31:10 43:2,8
43:16,18,25,25
49:8 51:8,24
105:24 115:4
136:12,14
142:1 143:22
156:14 157:13
158:4 173:9,23
175:24 179:3,8
180:22 181:1
186:15
**understanding**
36:7 120:6
128:16 176:10
179:11
**understood** 30:4
30:5 96:25
99:8 175:22
**undertaken** 96:7
96:9,12
**undue** 69:20
**unduly** 69:23
**unequivocally**
20:20
**unfair** 113:23
182:19
**unfortunate**
27:6
**Unfortunately**
123:15 141:15
195:3
**Unilife** 69:2,2
**unimportant**
181:14 187:17

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

284

unique 121:16
United 1:1 97:17
unquestionably 21:12 155:10
unquote 166:21
unredacted 117:3
unsafe 120:20
unsafety 173:5
unsigned 153:10 155:10
unusual 132:12
upcoming 60:6 129:1
updated 9:9
upheld 16:3
use 19:12,18 20:5 49:23 56:4 59:6 78:12 84:20 87:7,12 89:2 89:12 90:7 91:16 96:16 98:21 106:13 127:15 130:24 148:22 149:5 162:1,2,21,25 163:1,6,16 165:25 187:24 195:7 246:23
useful 104:11
uses 158:25
USMJ 1:14
usurp 139:2
utterly 107:12

**V**

v 4:2 69:2,2
vague 184:20
valid 30:22
Valsartan 74:15 74:16 180:9
valuable 247:6
value 74:19 75:14 100:23 161:23 180:10

180:19
vanilla 47:17,21 187:16
various 10:11 17:4 22:24 29:16 35:19 41:22 66:8 146:7
Ventnor 19:17
verdict 54:21 75:23
verdicts 54:17 54:18 75:19
version 65:15 149:18 150:21 151:19 153:14 153:16,17,18 155:16,21 159:19 168:24
versions 160:7
versus 27:15,18 101:8 124:24
VIDEOCONF... 1:6 2:11
Videoconfere... 1:19
view 24:12 68:4 68:13 70:2 86:20 105:9 131:5 132:22 144:6 189:13
views 93:11,12 165:12
Villani 36:14 167:18,23
violates 52:24
violation 59:17
Vioxx 48:21 53:18,19 107:15 170:10
virtual 148:25
virtually 51:10 188:21
volume 32:23 33:22
vote 91:21

**W**

wait 132:21,21 139:25 150:9,9 170:17 188:10 246:5
waiting 14:2
waive 25:5 161:16
waived 188:2
waiver 24:16 27:3,4 30:14 63:6,7 154:11 169:12 187:21 187:23
waiving 61:20 154:13 163:19
WALKER 5:16
wall 180:12
WALNUT 4:8
wand 93:20
want 7:20 8:1 12:8 13:14,18 13:21,22 17:8 24:9,23 25:10 26:22 30:19 41:15 46:5,15 48:1 50:9,12 52:15 57:15 60:25 61:4,5 62:5,6 63:10 63:12,16 65:3 65:8 72:20 74:23 75:20 78:6 81:19,24 82:2 83:24 86:24 90:8 94:14 95:6 98:5,9,23 99:4 99:18 102:25 107:7 109:5 111:17 116:7 116:22 117:16 119:11 123:7 126:16 127:19 127:21 130:21

135:6,12,17
137:12,17
139:2,14,18,19
139:23 140:2,8
140:22,23
144:9,23
147:20,25
148:4,20 151:2
151:6 153:7,12
153:25 154:22
155:21 156:9
156:13 157:16
158:14 166:17
172:6 177:9
178:13 179:9
179:25 182:6
184:8,24 186:8
186:22,23,24
187:6,22
189:24 193:9
194:22,23
247:24 248:1
wanted 18:9,11 27:24 34:5 38:19 68:1,8 74:5 83:1,12 83:14,15 87:11 94:17,25 98:7 123:13 124:1 140:25 146:4 194:6
wants 8:7 54:14 107:1 117:18 134:25 247:15
warning 84:17 90:15 91:15,22 93:1,2,10 94:20 95:9
Warren 37:24 41:18
WASHINGT... 3:11 5:5
Washtenaw 48:24
wasn't 22:5,6 25:23 31:12

44:5 134:23
152:4,10 153:2
153:11 163:25
192:23
watching 62:11
wave 93:20
way 27:7 36:5 40:19 47:7 57:4,5,7,8 59:17,19 64:16 64:25 66:15 88:24 90:6 98:10 108:6,10 109:15 111:20 112:4 117:20 117:23,25 118:2,6,11 119:12 136:3,4 138:13 148:8 151:11 154:2 157:15 161:9 161:15 162:4 172:2 186:18 187:2 246:10 247:1
ways 75:16
we'll 6:5,13 32:2 60:14 82:19 102:14 117:16 118:5,24 119:1 145:9,10,16 147:17 149:9 188:13 189:16 194:24 195:7 195:11,14 246:5,17
we're 6:1 13:6 13:20 15:4 16:12 18:12 23:14 24:7,23 26:21,25 28:8 29:13 31:7,7 33:25 36:12 37:13 40:5 43:15 46:19 48:1 59:17,20

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED

June 18, 2021

285

63:9 65:1,5
67:8 73:4,7
81:22 83:11
92:23 104:3
106:2,3,21
107:25,25
108:25 109:1
112:2,2,3,5,14
115:4,20
116:22 117:7
119:8 129:5,9
129:16,18
133:18,18
135:15 136:10
136:16 137:9
138:24 139:18
142:17,21,22
143:12 145:7
146:2 148:9
155:22 164:8
164:20 165:15
165:19 172:13
178:5 179:14
179:15 181:3
182:1,17
183:16 184:21
184:22 191:3
192:4 193:14
193:15 245:3
246:3,3 248:15
we've 13:15
15:17 16:8
17:3 18:15
21:14 23:17
24:3 33:7
43:23 63:4
72:19 75:24
81:24 94:13
106:17 117:2
117:12 128:21
130:17 136:5
136:10 137:1
137:10 143:10
146:2 158:20
159:8,13 171:6
184:16

we/I 15:13
wearing 46:25
47:3 89:19
website 66:12
76:24
Wednesday
140:14 188:14
189:17
weeds 136:1
week 19:7,19
27:1,14 128:9
129:18 133:10
188:22 245:17
246:13
weekend 115:6
115:22 116:3
127:8 248:10
248:15
weigh 46:15,16
57:15 142:14
147:25,25
weighing 59:24
weight 69:16
welcome 9:4
134:17 247:19
went 7:24 47:2
59:15 93:21
94:19 115:25
121:7 126:1
136:3,15
154:25 160:12
245:6 247:5
weren't 19:22
31:23 50:16
51:3,4 107:22
109:9 110:13
128:13 129:5
133:2 146:4
176:10 187:16
Westlaw 27:16
27:19 48:24
69:3
White 1:20
35:17 36:13
37:24 41:18,21
42:2 47:20

72:5
White's 158:24
159:5,11 160:8
willing 135:3
wind 50:12
85:23
window 64:7,9
wipe 112:14
wiping 112:4
wish 69:5 141:12
187:16 248:2
withdraw
174:24
withdrawn
175:13
withheld 52:9
73:21 130:13
130:15 168:20
184:9,10
withhold 52:3,9
168:9,11 184:6
witness 132:10
135:1 180:16
witnesses 21:22
72:10
Wolfson 15:25
21:23 22:9
23:6 25:1,11
woman's 36:13
women 89:12
wonder 72:22
wondering 28:3
word 41:15
57:11 59:17,18
84:20 153:3
157:20,21,24
158:2 162:1,1
162:2,3,17,20
162:22,25
163:1,6,6,16
164:21,24
165:23 166:1
180:3 184:11
187:20
words 41:12
55:7 73:11

158:3 171:3,21
176:16 178:19
work 7:24 12:2
16:3,10 17:4
20:20 21:11,20
26:18 35:23
36:16 39:1
40:19 44:4,9
55:13 65:12
67:1 81:4
96:11 97:2,5,8
97:14,17,22
99:2 100:15
103:9,25
107:18,23
108:22 109:2
109:16 111:3
111:13,20
112:4,10
115:18 122:1,5
125:21 130:13
130:16 136:23
137:18 141:3
143:5 145:10
146:24 168:1
180:6 186:13
187:3 245:13
247:5
worked 11:18
17:14 18:24
36:5,20 37:4,9
189:1 246:14
246:14,17
working 13:16
45:1 62:21
136:5 137:11
142:17
works 41:23
184:20
workup 96:13
world 100:10,19
111:24 136:25
Worldwide
42:12 85:12
worried 45:9
163:19

worth 33:14
141:25
worthwhile
247:18
wouldn't 36:1
45:3 56:7
90:16 109:11
140:18 143:15
151:12 157:9
164:20 173:22
182:16 247:1
wrap 132:24
195:12 246:20
246:24
write 18:3 64:19
134:15 137:22
151:8
writes 64:25
writing 65:24
146:13
written 120:9,24
135:10 150:15
152:2,17
184:11
wrong 55:3
70:18 192:6
wrongdoing
184:18
wrote 107:13

**X**

X 75:25 134:11
135:8
XIO857 249:21

**Y**

yeah 12:14
27:12 37:17
38:18 40:18
46:17 65:22
78:10,14 79:17
83:14 87:6
116:7 150:9
152:5 162:16
193:23,25
years 15:22 22:5

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                                    June 18, 2021

286

| | | | | |
|---|---|---|---|---|
| 24:1 27:7 | 127 3:22 | 2014 123:15 | 1:2 | 6 191:19 |
| 30:22,24 31:4 | 13 18:11 | 2015 69:2,4 | 30th 27:20 | 6,886 12:25 |
| 31:6,21,24 | 1300 17:25 18:1 | 2016 32:7 33:17 | 131:15,18,20 | 60 192:25 193:5 |
| 32:15 34:3,8 | 135 159:21 | 33:20 | 30X100085700 | 193:15,16 |
| 35:11 75:25 | 160:11 | 2016-'17 34:10 | 2:9 | 600 4:14 |
| 112:6,16 143:1 | 1400 18:12 | 2017 14:19 | 316 4:2 | 605 5:19 |
| 154:25 | 1440 5:4 | 16:19 21:5 | 3200 138:8 | 63 95:21 118:8 |
| yell 107:10 | 15 31:24 78:1,17 | 23:17 32:7 | 32502 4:3 | 667432 69:3 |
| Yep 63:18 | 78:19 79:1 | 33:17,24 | 3300 139:6,7 | 67 193:20,23 |
| yes-you-can-h... | 80:14 148:13 | 190:25 | 334-954-7555 | 194:2 |
| 128:24 | 195:3 | 2018 156:4 | 3:18 | 6th 12:24 |
| yesterday 8:11 | 156 9:14 10:3 | 202-371-7410 | 33rd 5:20 | |
| 28:2 53:18 | 12:3,18 14:10 | 5:5 | 36104 3:17 | **7** |
| 117:21 123:10 | 16:21 18:1 | 202-759-7648 | 39 169:21 | 7 124:15 |
| 123:20 137:21 | 47:6,10 | 3:12 | 3977944 48:24 | 732-747-9003 |
| 138:7 161:9,10 | 17 15:12 33:21 | 2020 27:19,20 | | 3:23 |
| York 5:4,20,20 | 18 1:11 121:20 | 48:24,24 | **4** | 76 80:12,17 81:5 |
| 173:5 | 156:4 | 2021 1:11 31:7 | 4 148:13,20 | 793 125:1 |
| youngest 82:13 | 1825 3:10 | 132:19 249:20 | 4:30 82:14 | |
| | 1898 190:24,24 | 249:21 | 4:34 156:4,17 | **8** |
| **Z** | 19106-3697 4:9 | 21 160:15 | 4:45 195:11 | 80 32:22 78:2,17 |
| Zoom 1:6 2:11 | 1949854 27:16 | 210 3:4 | 40 112:6,16 | 78:19 79:1 |
| 142:4 152:2 | 1970 163:24 | 215-567-3500 | 4160 3:16 | 800-277-1193 |
| 171:7 195:17 | 164:1 | 3:23 | 435 27:22 | 4:4 |
| 245:2 | 1980s 132:20 | 215-567-6019 | 4355396 27:19 | 800-674-9725 |
| | 1984 107:13 | 3:24 | 27:23 | 3:11 |
| **0** | 1990s 85:6 | 215-592-1500 | 45 157:23 | 800-768-4026 |
| 00069048 87:10 | 132:20 | 4:10 | 454 68:15 | 3:6 |
| 07701 3:22 | 1993 86:2 | 215-592-4663 | 46 176:6 | 800-898-2034 |
| 07932 4:15 | 1994 110:25,25 | 4:10 | 47 176:13 | 3:17 |
| 08002 3:5 | 121:22 | 218 3:16 | 474 191:16 | 80s 102:24 |
| 08106 1:21 | 1998 190:25 | 21st 164:1 | | 815 124:25 |
| | 1999 152:8 | 22nd 86:2 131:4 | **5** | 83 194:7,10 |
| **1** | 19th 163:24,25 | 131:12 | 5 82:14 249:20 | 839 97:17 |
| 1 53:7,8,9 81:21 | | 23rd 131:6 | 50 11:6,12 | 850-435-7000 |
| 1,300 13:6,7 | **2** | 24/7 41:17 | 500 4:8 | 4:3 |
| 1:03 118:18 | 2 118:19 119:2 | 24th 131:8 | 510 4:8 | 856-488-7797 |
| 10 31:24 162:5 | 2,800 13:3 | 26 97:7 108:21 | 515 1:20 | 1:15 |
| 10:10 2:12 | 20 31:24 154:25 | 174:5 | 55 185:3 189:20 | 856-546-1100 |
| 101 3:4 | 249:21 | 29th 131:15,17 | 56 190:1 192:6 | 1:22 |
| 10158 5:20 | 20005 5:5 | 131:20 246:9 | 192:11,12,17 | 856-667-0500 |
| 11 121:4,8 156:1 | 2004 176:23 | 2d 68:15 | 58 191:12,19,21 | 3:5 |
| 156:12 | 2006 3:11 | | 192:1,7,9 | 856-667-5133 |
| 12 10:16 158:24 | 2010s 132:20 | **3** | 5946 156:3,11 | 3:6 |
| 12-18-18 156:17 | 2012 27:16,17 | 3 53:8,9 | | 877-882-1011 |
| 12:30 81:21 | 68:16 | 3:16-md-2738-... | **6** | 4:9 |

DocuSign Envelope ID: 4CA92285-E2EB-4445-AF46-5CA905CEBCD9

REDACTED                                        June 18, 2021

287

**879** 68:15

**9**

**94** 78:2,17,18,19
    79:1,8,17,17
**95** 78:2,17,18,19
    79:1,17
**953** 95:21
**958** 97:17
**973-360-9831**
    4:16
**973-549-7350**
    4:15
**99** 149:16,20,24