UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | MDL No. 2738 (FLW) (LHG) |

**REPLACEMENT SPECIAL MASTER ORDER NO. 3 (ADDRESSING PLAINTIFFS' REQUEST FOR JOHN O'SHAUGHNESSY, ESQUIRE'S PERFORMANCE EVALUATIONS)**

This matter is before the Special Master ("SM") on plaintiffs' application requesting that the Johnson & Johnson ("J&J") defendants produce the "performance evaluations" of John O'Shaughnessy, Esquire, a retired J&J attorney who will be deposed starting on June 29, 2021. The SM received the parties' letter briefs and determined that oral argument is not necessary. For the reasons discussed below, plaintiffs' application is denied.

The parties are obviously familiar with the background facts so only a brief summary will be provided. O'Shaughnessy was employed as J&J's in-house counsel from June 1987 to May 1, 2018, during which time he played a key role in J&J's defense of talc litigation. As noted, plaintiffs are scheduled to depose O'Shaughnessy in this MDL on June 29. Plaintiffs also had the benefit of "sitting in" on O'Shaughnessy's June 22-23, 2021 deposition taken in connection with the New Jersey state asbestos cases. In connection with recent depositions taken in this MDL, J&J agreed to produce the performance evaluations of other J&J employees before their depositions. J&J argues O'Shaughnessy's evaluations do not have to be produced because they are privileged and/or irrelevant and he is not an "ordinary fact witness." Plaintiffs disagree. Although J&J has been

involved in talc litigation for years, the SM understands this is the first time plaintiffs have requested O'Shaughnessy's evaluations.[1]

As to discovery, it is well settled that the Federal Rules of Civil Procedure "allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999). Nonetheless, while the scope of discovery pursuant to Rule 26 is broad, it is "not unlimited and may be circumscribed." Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999); see also Kopacz v. Del. River & Bay Authority, 225 F.R.D. 494, 497 (D.N.J. 2004). Even if discovery is relevant, the SM has discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).  The SM has "broad discretion to tailor discovery narrowly" to meet the needs of each case.  Crawford–El v. Britton, 523 U.S. 574, 598 (1998). This rule of proportionality "is intended to guard against redundant or disproportionate discovery by giving the [SM] authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."  Leksi, Inc. v. Fed. Ins. Co., 129 F.R.D. 99, 105 (D.N.J. 1989) (quoting Fed. R. Civ. P. 26 advisory committee note) (internal quotations omitted); see also Pub. Serv. Enter. Grp., Inc. v. Phila. Elec. Co., 130 F.R.D. 543, 551 (D.N.J. 1990) (employing the rule of proportionality to exclude "marginally relevant evidence" from the scope of discovery);  Bowers v. N.C.A.A., No. 97–2600 (JBS), 2008 WL 1757929, at *6 (D.N.J. Feb. 27, 2008) (exercising discretion to bar "marginally relevant" evidence) (quoting Pub. Serv. Enter. Grp., Inc., 130 F.R.D. at 551).

Turning to the specific issue in dispute, for two reasons the SM rules that O'Shaughnessy's performance evaluations do not have to be produced. First, the SM finds that O'Shaughnessy's

---

[1] The SM agrees with J&J that the parties and SM did not contemplate or agree that O'Shaughnessy's performance evaluations would be produced when J&J agreed to produce evaluations for upcoming fact witness depositions.

evaluations are irrelevant to the claims and defenses in this MDL. The key issues regarding O'Shaughnessy are his work duties, his knowledge of the effects of exposure to talc, whether asbestos was present in the talc, and related issues. These issues have already been explored in detail at O'Shaughnessy's state deposition and will undoubtedly be covered at his MDL deposition starting on June 29. Whether O'Shaughnessy did a good or bad job as an attorney and how he was evaluated by his supervisors is irrelevant to these issues and other material issues in dispute.

The case law plaintiffs rely upon is not controlling. It is true that in the Benicar litigation the SM ordered the production of personnel files. However, in that MDL the plaintiffs made a clear and specific showing of the relevance of the requested files. Plaintiffs have not made that showing here. In addition, in Benicar, the production of the requested files was helpful to "efficient and focused" deposition questioning. This is not the case here because plaintiffs have the benefit of O'Shaughnessy's state deposition testimony to help with their questioning. Plaintiffs' reliance on the Liberty Mutual case is unavailing. J&J is not putting O'Shaughnessy at the center of its defense. Further, J&J, unlike Liberty Mutual, did not the place the competence of its in-house counsel at issue. To be clear, as evidenced by the Benicar decision, the SM is not ruling that personnel documents are always off-limits to discovery. Rather, the SM is ruling that whether personnel documents should be produced is necessarily dependent on the facts of each case. In the present case, O'Shaughnessy's evaluations are irrelevant to the claims and defenses at issue.

Second, as noted, even if the requested documents are relevant, the SM has discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit. Even if there was some marginal relevance to O'Shaughnessy's evaluations, which is denied, the burden and expense of the production far outweighs the minimal relevance of the materials. The evaluations are unlikely

to touch on important issues such as causation, what O'Shaughnessy knew or did not know about whether J&J's talc contained asbestos, and what talc/asbestos information O'Shaughnessy relayed to the public and other J&J employees. Production of the requested evaluations is bound to result in numerous tangential discovery disputes that have nothing to do with the key merits issues in the litigation. If plaintiffs' request is granted, it would serve to further delay the litigation and distract the parties from the main issues in dispute. In addition, it is not insignificant that although talc litigation has been ongoing for years, with trials having been held and completed, this is apparently the first occasion when O'Shaughnessy's evaluations have been requested. If the documents were as important or relevant as plaintiffs claim, they undoubtedly would have been the subject of prior requests for production.

Not only is the production of the requested documents denied, so too is the request to review the documents in camera. The SM is not compelled to review in camera every document requested by plaintiffs. The Supreme Court has set out a reasonable standard in the crime-fraud privilege context that the SM applies here:

> We hold that in camera review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception. We further hold, however, that before a district court may engage in in camera review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability. Finally, we hold that the threshold showing to obtain in camera review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.
>
> …
>
> Once that showing is made, the decision whether to engage in in camera review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

U.S. v. Zolin, 491 U.S. 554, 574–75, 572 (1989). Exercising its discretion, the SM determines that an in camera review is not necessary. Not only are O'Shaughnessy's evaluations irrelevant, but in the context of this MDL the evaluations of an in-house attorney, even a person with the important role O'Shaughnessy played, will not add any material information to the record in the case. Plaintiffs argue an in camera review "might speak directly to the issues" the SM was concerned about during the recent oral argument regarding J&J's privilege designations. Letter Brief at 2. This sort of conjecture is not sufficient to justify an in camera review.

To be clear, the SM is not ruling that an inquiry into non-privileged matters regarding O'Shaughnessy's job duties and responsibilities, and the manner in which he performed his job, is off-limits at his deposition. The SM is only ruling that the request to produce O'Shaughnessy's performance evaluations is denied. Importantly, plaintiffs will not be prejudiced in any respect by the SM's rulings. Plaintiffs have the benefit of O'Shaughnessy's extensive deposition transcript from his state deposition as well as the opportunity to question him at his upcoming deposition.

Accordingly, for all the foregoing reasons it is hereby ORDERED this 24rd day of June, 2021, that plaintiffs' application for the production of O'Shaughnessy's performance evaluations, or in the alternative for an in camera review of the evaluations, is DENIED.

By: s/ Joel Schneider
HON. JOEL SCHNEIDER (RET.)
SPECIAL MASTER

DATED: June 24, 2021