UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON<br>TALCUM POWDER PRODUCTS<br>MARKETING, SALES PRACTICES,<br>AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to: HILL et al. v. JOHNSON &<br>JOHNSON et al. 3:18-cv-08344-FLW-LHG | MDL No. 2738 (FLW) (LHG) |

PLAINTIFF LINDA HILL'S MEMORANDUM IN OPPOSITION TO THE JOHNSON &
JOHNSON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

I.     STATEMENT OF FACTS ................................................................................ 1

II.    SUMMARY JUDGMENT STANDARD ......................................................... 5

III.   ARGUMENT .................................................................................................. 5

   A.    New Jersey's Statute of Limitation Applies to Ms. Hill's Claims ................................. 6

   1. Under Virginia Choice-of-Law Rules, the New Jersey Statute of Limitation Applies ....... 6

   2. The Choice-of-Law Provision in the Direct Filing Order is not Applicable to Bellwether
   Cases, and therefore New Jersey's Statute of Limitations Applies. ........................................ 8

   3. Ms. Hill's Negligence Claims Are Timely Under New Jersey Law. .............................. 10

   B.  Ms. Hill's Negligence Claims Are Timely Under Virginia Law. ...................................... 13

   C.     Ms. Hill's Consumer Protection Act and Fraud Claims Are Timely Under  New Jersey
   or Virginia Law. ...................................................................................................... 15

   D.  Loss of Consortium, Punitive Damages, and Equitable Tolling. ....................................... 17

IV.    CONCLUSION ................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986) ...................................................... 5

*Berg Chilling Systems, Inc. v. Hull Corp.* 435 F.3d 455, 462 (3d Cir. 2006) ................................ 6

*Big Apple BMW, Inc. v. BMW of N.* ...................................................................... 5

*Celotex Corp. v.* ...................................................................................... 5

*Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assoc., LLC* 2009 WL 10731079, at *2 (E.D. Va., Apr. 24, 2009, No. 2:09CV66) ................................................................ 7

*Evans v. Trinity Industries, Inc.* 137 F.Supp.3d 877 (E.D. Va. 2015) ...................................... 13

*Flick v. Wyeth LLC*, No. 3:12- cv-00012, 2012 WL 4458181, at *2 (W.D. Va. June 6, 2012).... 13

*Gleason v. Norwest Mortg., Inc.,* .......................................................................... 5

*Gluck v. Unisys Corp.,* 960 F.2d 1168, 1179. (3d Cir. 1992) .............................................. 9

*Hall v. Johnson & Johnson*, 2019 WL 7207491, at *17. (D.N.J. Dec. 27, 2019) ........................ 15

*Hansen v. Stanley Martin Companies, Inc.* 266 Va. 345, 351 (2003) ...................................... 6

*In re Asbestos Products Liability Litigation* 611 Fed.Appx. 86, 89 (3d Cir. 2015) ...................... 7

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Litigation* 2020 WL 8968851, at *25(D.N.J., Apr. 27, 2020, No. CV 16-2738(FLW)) ............ 3

*In re Lewis,* 517 B.R. 615, 619 (Bankr. E.D. Va. 2014) .................................................... 7

*Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 717 (Mo. Ct. App. 2020) ............................... 14

*Jones v. R.S. Jones and Assoc., Inc.* 246 Va. 3, 5 (1993) ................................................ 7

*Kramer v. Ciba–Geigy Corp.,* 371 N.J.Super. 580, 601, 854 A.2d 948 (App.Div.2004).............. 9

*L-3 Commc'n Corp. v. Serco, Inc.* 926 F.3d 85, 96 (4th Cir. 2019) ...................................... 7

*Lopez v. Swyer* 62 N.J. 267, 275 (1973) .................................................................. 16

*Lopez v. Swyer,* 62 N.J. 267, 272 (1973) ................................................................. 10

*Mackey v. McDannald* 298 Va. 645, 657 (2020) ......................................................... 13

*Mackey,* 298 Va. at 658 ................................................................................... 14

*Maertin v. Armstrong World Indus., Inc.*, 2000 WL 554168, at *15 (D.N.J., May 3, 2000) ....... 11

*Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) ........................................ 5

*McCarrell v. Hoffmann-La Roche, Inc.* 227 N.J. 569, 597 (2017) ....................................... 10

*Miller v. Butler*, 2014 WL 200646, at *3–4 (D.N.J., Jan. 15, 2014) ...................................... 9

*RMS Tech.y, Inc. v. TDY Indus., Inc.,* 64 Fed.Appx. 853, 857 (4th Cir. 2003) ........................... 8

*Roche v. Lincoln Property Co.* (4th Cir. 2006) 175 Fed.Appx. 597 .............................................. 17

*School Bd. of City of Norfolk v. U.S. Gypsum Co.* 234 Va. 32, 36 (1987) .................................... 7

*Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990) ............................................ 5

*Various Plaintiffs v. Various Defendants* (Oil Field Cases) 673 F.Supp.2d 358, 362 (E.D. Pa. 2009)............................................................................................................................................... 7

*Vispisiano v. Ashland Chem. Co.* 107 N.J. 416, 434 (1987)......................................................... 10

**Statutes**

Va. Code Ann. § 8.01-229(D).......................................................................................................... 13

Va. Code Ann. § 8.01-249 .............................................................................................................. 16

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 5

**Treatises**

Restatement (Second) of Conflict of Laws § 142 ......................................................................... 10

Plaintiffs, by and through the undersigned counsel, respectfully submit this Response in Opposition to the Johnson & Johnson Defendants' ("J&J") Motion for Summary Judgment.[1]

## I.    STATEMENT OF FACTS

Linda Hill ("Ms. Hill") was diagnosed with ovarian cancer in 2013 after prolonged and extensive exposure to Johnson's Baby Powder ("JBP") and Shower to Shower ("STS").  (Shah Decl. Exhibit A, 1/20/2021 Deposition of Linda Hill ("Hill Dep.") 32:6-33:11, 53:8-16, 129:4-15) Ms. Hill was diagnosed in North Carolina with Stage IIC ovarian cancer after applying both JBP and STS to her perineal area for over 35 years. Ms. Hill first started applying JBP in Kansas as a young lady and continued to do so until she was diagnosed with ovarian cancer. *Id.* at 58:15-59:5, 69:10-22. In August of 2016, Ms. Hill first discovered the risks associated with exposure to talcum powder and ovarian cancer. *Id.* at 22:18-20. Before August of 2016, Ms. Hill believed JBP and STS to be safe to use on her body and was never warned by J&J that their talc products could cause ovarian cancer. *Id.* at 152:1-6.  J&J made representations to Ms. Hill that its talcum powder was "pure" and natural. *Id.* at 150:1-151:14.  Those representations made her "feel safe and secure" because "it's, it's natural, it's good for you." *Id.* at 152:1-6. In fact, J&J sold Johnson's baby powder labeled as "gently absorb moisture, helping skin feel comfortable. Our incredibly soft, hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief." (Shah Decl. Exhibit B., image of JBP). The bottle of Shower-to-Shower tells consumers that the product causes the "ultimate freshness"

---

[1] The PSC states for the benefit of making it clear on the record that this opposition filed by the bellwether plaintiff in this matter is filed solely in her own individual case, for her own benefit and as her own individual arguments, and that this opposition is not to be construed as a statement or position on issues that are made by or on behalf of or attributable to the PSC.  The arguments in this opposition do not bind any other plaintiff unless any such other plaintiff explicitly adopts the arguments herein.

and "pampers your skin." (Shah Decl. Exhibit C. image of STS). Ms. Hill relied on these representations that talc was safe for use on the body. (Shah Decl. Exhibit A. at 151: 1-152:6).

J&J has long been aware of the risk of ovarian cancer with talc products, and have long been aware that its talc products contain asbestos, yet it has refused to warn about the products. (Shah Decl. Exhibit D. Expert Report of Laura M. Plunkett, Ph.D., DABT. November 16, 2018, ¶¶ 28-33, 76-99, 106-118 (citing internal J&J documents)).   Ms. Hill also incorporates by reference, Sections I(B)-(E) of Plaintiff Bobbie N. Landreth's contemporaneously filed Memorandum in Opposition to Defendants' Motion for Summary Judgment in Case No. 3:17-cv-11755-FLW-LHG.

Of particular relevance to Ms. Hill's claims, J&J was long been aware that its talcum powder products are not in fact "pure," but contain asbestos a "known carcinogen;" and affirmatively acted to prevent the public from learning that talc contains asbestos.  (Shah Decl. Exhibit D at ¶ 32. For example in 1972, a report by the University of Minnesota alerted J&J to the presence of asbestos in STS. (Shah Decl. Exhibit E. JOJO-MA2546-01298). J&J therefore, in the 1970s, pushed the FDA to adopt a testing method that was designed to fail to detect asbestos  in talcum powder, despite knowing that there was a more accurate testing method available that would have detected asbestos in  its talcum powder products. For example, J&J determined it was critical to recommend its own testing technique before the FDA adopted "more sophisticated techniques with higher levels of sensitization." (Shah Decl. Exhibit F, JNJMX68_000009139). Specifically, it was essential to keep the FDA from utilizing a "separation and isolation" technique using "concentration procedures" to detect asbestos because "there are many talcs on all markets which will be hard pressed in supporting purity claims." (Shah Decl. Exhibit G, JNJMX68_000004346). J&J in its own testing "deliberately have not included a concentration

technique as we felt it would not be in worldwide company interests to do this." (Shah Decl. Exhibit H, JNJNL61_000062953). The FDA privately determined that J&J's testing techniques do "not offer much assurance that cosmetic talcs are adequately tested for asbestos" (Shah Decl. Exhibit I, Kazan_FDA_FOIA 000068). However, the FDA ultimately determined it lacked "the legal authority, the man power, and the money to adequately protect the public for potentionally hazardous cosmetics" and was ultimately forced to rely on J&J to voluntarily implement its own inadequate testing techniques to determine the amount of asbestos.[2] (Shah Decl. Exhibit J, JNJ000037743). J&J's fraud in hiding the precense of asbestos by designing a purposefully inadequate testing system was first laid bare to the general public in a December 14, 2018 Reuters Article. (Shah Decl. Exhibit K, Lisa Girion, "Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder" REUTERS, 12/14/2018). Ms. Hill was thus left unprotected from J&J's false claims that its talcum powder was "pure."

J&J also affirmatively acted to create confidence in consumers like Ms. Hill that its talcum powder products were safe; despite knowing that studies have consistently demonstrated that talc was associated with ovarian cancer. As but one example, in the late 1997, J&J retained a toxicology consultant, Dr. Alfred Wehner, who candidly informed J&J that its claims about the safety of talc were fraudulent, stating:

> …The problem with the response statement dated July 8, 1992, is more serious. The last sentence in the second paragraph states: "Finally, human studies on talc and cancer in industrial settings have shown that industrial exposure to talc, both by skin contact and inhalation, even at levels thousands of times higher than lifetime consumer exposure, presents no significant risk." **This statement is outright false.**

---

[2] The court has already determined that plaintiffs' have presented admissible expert testimony that "Defendants' talc products contain asbestos" *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Litigation* 2020 WL 8968851, at *25(D.N.J., Apr. 27, 2020, No. CV 16-2738(FLW))

3

...The response statement dated November 17, 1994, is just as bad. The second sentence in the third paragraph reads: The workshop concluded that, although some of these studies suggested a weak association might exist, **when taken together the results of the studies are insufficient to demonstrate any real association." This statement is also inaccurate**, to phrase it euphemistically. **At that time there had been about 9 studies (more by now) published in the open literature that did show a statistically significant association between hygienic talc use and ovarian cancer. Anybody who denies this risks that the talc industry will be perceived by the public like it perceives the cigarette industry: denying the obvious in the face of all evidence to the contrary**…

… As point out above, **a "real" statistically significant association has been undeniably established** independently by several investigators, which without doubt will be readily attested to by a number of reputable scientists/clinicians, including Bernard Harlow, Debra Novotny, Candace Sue Kasper, Debra Heller, and others.

(Shah Decl. Exhibit L, JNJ000024462-JNJ000024463). (emphasis added).  Despite awareness of the outright falsity of claims of talc's safety, in an October 7, 2000 confidential memo J&J determined it would not "sh[y] away from a tough battle" and committed to an "unbending defense" of "the safety of talc's use in cosmetic products." (Shah Decl. Exhibit M, JNJ 000238236). J&J continued to "vigorously defend" talc notwithstanding a safer alternative in cornstarch and despite pressure from gynecologists' "concerns about life" with the continued use of talcum powder.  *Id.*  The strategy was to "maintain consumer confidence in cosmetics products that include talc," "prevent a consumer scare and to allow the continued marketing of these products." *Id.*  That strategy was successful with Ms. Hill.

To this day, J&J continues to conceal the harmful association between talc products and ovarian cancer. On May 19, 2020, even as it pulled its talc products from the U.S. market, J&J stated it will "continue to vigorously defend the product" and "its safety." (Shah Delc. Exhibit N, J&J Press Release 5/19/2020).  On December 03, 2019, J&J issued a press release titled "Company Investigation Confirms No Asbestos in Johnson's Baby Powder." (Shah Decl. Exhibit O, J&J Press Release 12/3/2019). As recently as April 2020, J&J issued a press release that sought to cast doubt

on this Court's *Daubert* Order noting that Plaintiffs' experts were deemed to have non-scientifically sound opinions. (Shah Decl. Exhibit P, J&J Press Release 4/27/2020).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).

In reviewing a motion for summary judgment, a court must construe the facts in the light most favorable to the non-moving party and must resolve "all reasonable doubts about the facts in favor of the non-movant." *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) *(quoting Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986)). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* "Defendants bear a heavy burden" on demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001). Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc*., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   ARGUMENT

Defendant's motion for summary judgment with respect to Linda Hill misrepresents the facts and the law, and therefore should be denied in its entirety. First, rather than conducting a meaningful choice-of-law analysis, Defendants simply assume, incorrectly, that the Virginia statute of limitations applies. A proper choice-of-law analysis mandates application of New Jersey's statute of limitations. Second, Defendants simply failed to read the entirety of Ms. Hill's deposition, or are intentionally misleading the Court. Ms. Hill was unambiguous in her deposition that she was unaware of any connection between talc and ovarian cancer until August of 2016, less than two years before she filed her complaint. (Shah Decl. Exhibit A, at 22:18-24:9). Third, even if the Virginia statute of limitation applied, Ms. Hill's claims based in negligence and fraud are timely filed due to Defendants' fraudulent concealment of the safety risks of its talcum powder and the presence of asbestos.

A.     **New Jersey's Statute of Limitation Applies to Ms. Hill's Claims**

Ms. Hill does not agree with J&J that that Virginia choice-of-law rules apply to her case. As explained below, because Ms. Hill's case was directly filed in this court and because she waived *Lexecon*, New Jersey choice-of-law rules apply. However, under either New Jersey or Virginia choice-of-law rules, it is the New Jersey statute of limitations which applies to Ms. Hill's claims. Where "the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *Berg Chilling Systems, Inc. v. Hull Corp.* 435 F.3d 455, 462 (3d Cir. 2006). Thus because Virginia choice-of-law rules result in the application of the New Jersey statute of limitation, the court need not ultimately decide which choice-of-law rules apply.

**1. Under Virginia Choice-of-Law Rules, the New Jersey Statute of Limitation Applies**

Under Virginia choice-of-law rules, "matters of procedure are governed by the situs of the proceedings." *Hansen v. Stanley Martin Companies, Inc*. 266 Va. 345, 351 (2003); *Jones v. R.S. Jones and Assoc., Inc.* 246 Va. 3, 5 (1993) (holding that *lex loci* governs substantive law, and *lex fori* governs procedural law.) "Under Virginia law, statutes of limitations are considered procedural rules governed by the law of the forum state." *L-3 Commc'n Corp. v. Serco, Inc.* 926 F.3d 85, 96 (4th Cir. 2019); *School Bd. of City of Norfolk v. U.S. Gypsum Co.* 234 Va. 32, 36 (1987) ("An ordinary statute of limitations is a procedural statute."); *Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assoc., LLC* 2009 WL 10731079, at *2 (E.D. Va., Apr. 24, 2009, No. 2:09CV66) ("The courts in Virginia have repeatedly held that statutes of limitation are generally matters of procedure.") (collecting cases).   *Lex Fori* is defined as "[t]he law of the forum; the law of jurisdiction where the case is pending." Black's Law Dictionary (7th ed. 1999). Having waived *Lexecon* and being selected as a bellwether case, the *lex fori* or situs of these proceedings is now in New Jersey, and thus the New Jersey statute of limitations applies. This definition is consistent with Third Circuit law that  "[o]n matters of procedure, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits." *Various Plaintiffs v. Various Defendants* (Oil Field Cases) 673 F.Supp.2d 358, 362 (E.D. Pa. 2009); *In re Asbestos Products Liability Litigation*  611 Fed.Appx. 86, 89 (3d Cir. 2015) (quoting *Various Plaintiffs* with approval).

Furthermore, "[u]nder Virginia conflict of law principles, the parties' choice of law provision will be enforced, provided that it reasonably relates to the purpose of the agreement and only to the extent that the question is one of substantive law."  *In re Lewis,* 517 B.R. 615, 619 (Bankr. E.D. Va. 2014).  Therefore, the choice-of-law provision in CMO 2 is unenforceable to the extent it could be read to apply Virginia's statute of limitations, a question of procedural law.

Under Virginia law a "choice of law provision does not extend to procedural questions. Statutes of limitations are considered matters of procedure in Virginia courts . . ." *RMS Tech.y, Inc. v. TDY Indus., Inc.,* 64 Fed.Appx. 853, 857 (4th Cir. 2003).  Additionally, because Ms. Hill's case is a bellwether case and will not be transferred back to Virginia, the choice-of-law provision no longer relates for the purpose of CMO 2.  Under any possible analysis, the New Jersey statute of limitations applies to this case.

### 2. The Choice-of-Law Provision in the Direct Filing Order is not Applicable to Bellwether Cases, and therefore New Jersey's Statute of Limitations Applies.

If this Court disagrees that Virginia choice-of-law rules lead to the application of the New Jersey statute of limitations, then there is a conflict and the Court must apply New Jersey choice-of-law rules. Defendants claim that Virginia choice-of-law rules apply because Ms. Hill's case was filed in this district pursuant to the direct filing order.  However, the Direct Filing Order applies only to cases that will be remanded back to other venues upon completion of pre-trial proceedings in this MDL.  CMO 2.  Because Ms. Hill's case was selected as a bellwether and because she waived *Lexecon*, (Dkt. No.14108), her case is no longer governed by CMO 2.  CMO 2 provides that direct filed cases "will be filed in MDL No. 2738 for pretrial proceedings only" and that cases "not selected to be tried as bellwether trials" will be transferred "to the federal district court designated by Plaintiff."  CMO 2, ¶¶ E, F.  Ms. Hill's case is no longer pending for pretrial proceedings only, and is now being prepared for trial in this court, thus it can no longer be governed by CMO 2.  CMO 2 does provide that "[a]ll parties stipulate and agree that in any case filed pursuant to this Order, choice of law determinations shall be made in accordance with the law of the jurisdiction that would apply to the action had the matter been initially filed in the Original District." *Id*. ¶ H.  However, "[t]he term Original District as used in this Direct Filing Order refers to the jurisdiction designated by the Plaintiff in paragraph 10 of the Short Form Complaint, i.e.,

the district to **which the Plaintiff seeks transfer** upon completion of pretrial proceedings."[3] *Id.* (emphasis added). By waiving *Lexecon*, Plaintiff no longer "seeks transfer" back to Virginia and thus the stipulation on Virginia law is no longer applicable. The choice-of-law analysis should thus be applied under New Jersey law.

Even if the CMO 2 choice-of-law provision was still applicable to Ms. Hill's case, it would not apply to the statute of limitations. "Choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express." *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1179. (3d Cir. 1992)**.** This is because **"**[c]hoice-of-law clauses relate to substantive law, and thus do not incorporate a statute of limitations, which is procedural." *Miller v. Butler*, 2014 WL 200646, at *3–4 (D.N.J., Jan. 15, 2014) (citing *Kramer v. Ciba–Geigy Corp.,* 371 N.J.Super. 580, 601, 854 A.2d 948 (App.Div.2004) ("when parties have adopted an otherwise valid choice of law provision in an agreement, that provision will not govern when an issue is procedural.")) Here, the stipulation in CMO 2 is essentially a contractual provision between the parties (endorsed by the court) to allow direct filing of complaints in the MDL in exchange for plaintiffs not asserting that New Jersey choice-of-law rules apply upon remand.

Under New Jersey choice-of-law rules, the New Jersey Supreme Court has recently mandated that the New Jersey statute of limitation applies when an out-of-state Plaintiff brings a product liability case in New Jersey against a New Jersey manufacturer. *McCarrell v. Hoffmann-*

---

[3] The choice-of-caw provision makes sense for cases transferred out of this district.  Generally, the choice-of-law rules of the transferor court applies. *West Virginia v. Bristol Myers Squibb Co*., No. 13-1603, 2014 WL 793569, at *2 (D.N.J. Feb. 26, 2014).  CMO 2 thus prevents the various venues which will receive the thousands of remanded talc claims from having to treat New Jersey as the transferor court and applying New Jersey choice-of-law rules. For cases that are selected as bellwethers and waive *Lexecon* it is more efficient to apply New Jersey choice-of-law rules.

*La Roche, Inc.* 227 N.J. 569, 597 (2017).  The Court adopted Restatement (Second) of Conflict of Laws § 142 which provides that the "forum state, presumptively applies its own statute of limitations unless (1) New Jersey has no significant interest in the maintenance of the claim . . ." *Id.*  The Supreme Court held that "[o]ur State's interest extends to protecting not just the citizens of this State, but also the citizens of other states, from unreasonably dangerous products originating from New Jersey." *Id.* at 598.  The New Jersey statute of limitation thus undoubtedly applies to Ms. Hill's claims against J&J, a New Jersey company.

**3. Ms. Hill's Negligence Claims Are Timely Under New Jersey Law.**

New Jersey's two-year statute of limitations can be extended by the "discovery rule" which provides that "the statute of limitations does not begin to run 'until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'"  *McCarrell*, 227 N.J. at 597 (quoting *Lopez v. Swyer*, 62 N.J. 267, 272 (1973)).  What constitutes the definition of "reasonable diligence" and the "quality of the requisite state of mind will of course vary from case to case, and more than that, from type of case to type of case." *Vispisiano v. Ashland Chem. Co.* 107 N.J. 416, 434 (1987). Due to the "difficulty" for a lay person to discerning "nature and source of toxic tort injuries," such as this one, the discovery rule is applied liberally and a very high requisite state of mind is required before the SOL begins to run.

> Given our requirement that before a toxic-tort-case plaintiff may be deemed, in a "discovery rule" context, to have the requisite state of knowledge that would trigger the running of the statute of limitations his impression of the nature of the injury and of **its cause must have some reasonable medical support,** we are convinced that defendants were not entitled to summary judgment. We hasten to add that we do not insist on medical confirmation as such: a physician's willingness to include chemical poisoning in the differential diagnosis would probably suffice, as would any other reasonably reliable source of information. . .

*Id.* at 434. As such, "[t]he mere fact that one has been diagnosed with cancer does not necessarily put someone on notice that any particular element is to blame." *Maertin v. Armstrong World Indus., Inc.*, 2000 WL 554168, at *15 (D.N.J., May 3, 2000) (emphasis added).

Here, *McCarrell* is controlling and the New Jersey "discovery rule" applies because Defendants are headquartered in New Jersey. Defendants, however, fail to make any argument that Ms. Hill's negligence claims are untimely under New Jersey law, and therefore that argument should be deemed waived. Defendants do point to a handful of news articles and trade publications that reported on talc verdicts in early 2016, but Ms. Hill did not see any of the articles referenced by Defendants. Defendants point to television advertisements, but Ms. Hill, like many people, does not watch "TV that has commercials" and did not see these advertisements. (Shah Decl. Exhibit A. at 121:7-8). Fortunately, her son does watch TV with commercials, and when he saw an attorney advertisement for talc lawsuits in August of 2016, he told his mother and she promptly searched online for an attorney. *Id.* at 22:18-24:9. Defendants deposed Ms. Hill, but strategically avoided asking Ms. Hill if she saw any of the articles or commercials, upon which Defendants now rely, prior to April 28, 2016.

Defendants also point to scientific journal articles cited in the Master Complaint. However, Ms. Hill did not see these articles; does not have scientific training; and under *Vispisiano*, it is not reasonable to impose a duty on Ms. Hill to conduct her own medical research on all potential causes of ovarian cancer. 107 N.J. at 434. From a layperson perspective there was no reason for Ms. Hill to suspect or know that talc, a product advertised as "pure" and natural, could have been the cause of her ovarian cancer. No doctor told her that talc could have caused her cancer. Even if Ms. Hill read an article about a jury verdict (which she did not), a newspaper article would not constitute "reasonable medical support." *See Maertin*, 2000 WL 554168, at *15 ("This Court finds

11

that the information disseminated in these media, much of which downplayed the degree of exposure, the overall risks, or both, would not have necessarily caused a reasonable person using ordinary diligence to make the link between their previous possible exposure to PCBs and cancer. . . .") Defendants should also be estopped from arguing that the SOL has started to run under New Jersey law as they continue to vigorously deny that there is any "reasonable medical support" that talc causes ovarian cancer. [4]

The analysis by attorneys at Shook, Hardy & Bacon of attorney talcum powder lawsuit advertisements also strongly supports Ms. Hill's testimony that she was unaware of the link between talc and ovarian cancer before August 2016.  (Frazier Decl. at Exhibit E, (U.S. Chamber Institute for Legal Reform, Gaming the System: How Lawsuit Advertising Drives the Litigation Lifecycle, dated April 2020) at 33-34).  This analysis demonstrates that advertising occurred at "low levels" prior to March 2016. *Id.*  The vast majority of advertising occurred <u>after</u> April 2016, less than two years before Ms. Hill filed her claim. *Id.* The highest spending occurred in August 2016, the same month that Ms. Hill's son informed Ms. Hill about the advertisements, prompting her to search for a law firm.  *Id.*  Defendants even acknowledge that attorney advertisements were the main source of safety information for consumers about the link between talc and ovarian cancer, claiming that declining sales of talc were "fueled by misinformation around the safety of the product and a constant barrage of litigation advertising."  (Shah Decl. Exhibit N.)

---

[4] Defendants recently issued a press release stating that "Johnson & Johnson remains steadfastly confident in the safety of talc-based Johnson's Baby Powder. Decades of scientific studies by medical experts around the world support the safety of our product. We will continue to vigorously defend the product, its safety, and the unfounded allegations against it and the Company in the courtroom." Exhibit N

Finally, if the Court is unable to determine as a matter of law that Ms. Hill was not in possession of sufficient "reasonable medical support" to support her causation claims prior to April 28, 2016 then a court hearing may be required. "Generally, the inquiry into the discovery rule requires that the Court hold a hearing and take testimony. However, '[w]here credibility is not involved, affidavits, with or without depositions may suffice; it is for the trial judge to decide....'" *Maertin.*, 2000 WL 554168, at *14 (quoting *Lopez,* 62 N.J. at 275-76.)  Here, defendants don't actually question Ms. Hill's credibility that she first learned of the link of talc and ovarian cancer in August of 2016, they just ignore that testimony.  However, if the Court harbors any doubts as to whether Ms. Hill's claim is timely filed, then Plaintiff requests a *Lopez* hearing under New Jersey Law.

**B. Ms. Hill's Negligence Claims Are Timely Under Virginia Law.**

Ms. Hill's negligence claims under Virginia law are timely because they were tolled by Va. Code Ann. § 8.01-229(D) which provides that "[w]hen the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought."  The Virginia Supreme Court recently interpreted the scope of § 8.01-229(D) to include fraudulent misrepresentations made prior to the injury. *Mackey v. McDannald* 298 Va. 645, 657 (2020).  The Virginia Supreme Court adopted the reasoning in, *Evans v. Trinity Industries, Inc.* 137 F.Supp.3d 877 (E.D. Va. 2015), because "its reasoning evinces sound policy." *Id.* [5] Whether the statute of limitations is tolled due to obstructive acts "is a question for the trier of fact . . . " *Mackey,* 298 Va. at 658.

___

[5] Defendants cite to *Flick v. Wyeth LLC*, No. 3:12- cv-00012, 2012 WL 4458181, at *2 (W.D. Va. June 6, 2012) as support.  *Flick*, however, was decided prior to *Evans* and *Mackey*; and

In *Evans,* the district court held that plaintiffs could invoke § 8.01-229(D) to toll the statute of limitations where "Plaintiffs have alleged that the Defendants acted to conceal from those similarly situated members . . .—including the Plaintiffs . . . the facts forming the basis of a claim in products liability," and also where "the Plaintiffs have alleged that the Defendants' misrepresentations 'prevented the Plaintiffs from suspecting that the injuries and deaths in question did not stem from a defective product,' and thus caused the Plaintiffs to delay filing suit." *Evans*, 137 F.Supp.3d at 884. In *Mackey,* a misrepresentation from a defendant that plaintiff had "no reason not to trust" which simply dissuaded plaintiff from looking up easily available public information was sufficient for a plaintiff to invoke the tolling provisions of  § 8.01-229(D). *Mackey*, 298 Va. at 658.

As in *Mackey*, Ms. Hill had no reason not to trust Defendants representations to her that its talcum powder was "pure" and natural. (Shah Decl. Exhibit A. at 150:1-151:14).  In fact those representations made her "feel safe and secure" because "it's, it's natural, it's good for you." *Id.* at 152:1-6.   As in *Evans*, Plaintiff has evidence that Defendants acted to conceal from the public at large, including plaintiff, the facts forming the basis of this current action; and that those misrepresentations prevented the Plaintiff from suspecting that her ovarian cancer was caused by talc and that talc contained asbestos. *See Supra,* pp. 1-4.  Furthermore, other courts have held that under these facts, J&J engaged in deceptive conduct, because they "published articles downplaying the safety hazards associated with talc through deception without revealing their funding." *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 717 (Mo. Ct. App. 2020).   J&J's deception and misrepresentations include efforts "to conceal" from the public and the FDA that its product

---

should no longer be considered persuasive in light of *Mackey's* adoption of *Evans.*  *Evans* explicitly declined to follow *Flick. Evans,* 137 F.Supp.3d at fn. 5.

contained asbestos, "by persuading the industry to adopt the J-41 method rather than a pre-concentration testing method." *Id.* at 719.

This Court has previously held (in class action claims) there are "sufficiently alleged facts suggesting that that Defendants' statements regarding the safety and asbestos free nature of its Talc Products were either false or materially misleading, at the time they were made." *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *17. (D.N.J. Dec. 27, 2019). This Court specifically highlighted the following misrepresentations that Plaintiffs will likewise use as evidence in this case including: "The Company's "Our Safety and Care Commitment" website . . .which stated that 'we want to assure women and caregivers who use our talc products that numerous studies support its safety;'" a page on J&J's "website, entitled 'The Facts About Talc Safety' which explained among other things, that 'Johnson's talc products do not contain asbestos,' the '[t]he safety of talc is based on a long history of safe use and decades of research...;'"and quotes in news articles that "Johnson's Baby Powder has been used for more than 120 years and it does not contain asbestos or cause mesothelioma." *Hall*, 2019 WL 7207491, at *17.

Therefore, even if the Virginia statute of limitations applied, it was tolled because there is sufficient evidence for a jury to find that Defendants made misrepresentations that prevented Ms. Hill from suspecting that here ovarian cancer was caused by talcum powder.

C.     **Ms. Hill's Consumer Protection Act and Fraud Claims Are Timely Under New Jersey or Virginia Law.**

There are no substantial differences between the Virginia and New Jersey Statute of Limitations with respect to fraud or consumer protection act claims as Defendant concedes the discovery rule is applicable to these claims even under Virginia law.  Defs.' Memo. at 33, 41.  The discovery rule for fraud claims under New Jersey and Virginia law are substantially similar. *Lopez*

*v. Swyer* 62 N.J. 267, 275 (1973) ("In case of fraud the period of limitation, in equity, begins to run only from the discovery of the fraud or the time when, by reasonable diligence, it could have been discovered."); Va. Code Ann. § 8.01-249 (SOL begins to run when fraud "is discovered or by the exercise of due diligence reasonably should have been discovered.")  Where Ms. Hill was unable to discovery a connection between talc and ovarian cancer before August 2016, she certainly could not have discovered the underlying fraud by Defendants in concealing this connection and in concealing the fact that talc contains asbestos.

This court has already applied this standard to determine that there is doubt that even savvy investors in J&J stock "in the exercise of reasonable diligence" would have discovered the true extent of Defendant's fraud in concealing the ovarian cancer risks of talcum powder and the presence of asbestos prior to December 14, 2018, eight months after Plaintiff filed her case. *Hall* 2019 WL 7207491, at *29.  As the Court noted, a December 14, 2018 Reuters article was the first time that J&J's fraud was truly documented as the article noted "[a] small portion of the documents have been produced at trial and cited in media reports. Many were shielded from public view by court orders that allowed J&J to turn over thousands of documents it designated as confidential. Much of their contents is reported here for the first time." *Id.* As stated above, and as the Court found in *Hill*, there were multiple alleged instance of fraud and material misrepresentations made by Defendants over several decades.  (Shah Decl. Exhibit D. at page ¶¶ 28-33, 76-99, 106-118; *Supra* at pp. 1-4).  Ms. Hill relied on J&J's representations of JBP and STS as pure and natural. (Shah Decl., Exhibit A, at 12:8-15:19). She testified that J&J's advertisements made her feel safe. *Id.* at 151:1-5. She had not reason to believe otherwise until August of 2016. *Id.* at 22:18-20. Because the statute of limitations begins to run when the fraud could have been discovered by the exercise of reasonable diligence, J&J's motion should be denied.  Va. Code Ann. § 8.01-249.

**D.  Loss of Consortium, Punitive Damages, and Equitable Tolling.**

Plaintiff agrees that Virginia does not allow loss of consortium claims and under either Virginia or New Jersey choice-of-law rules, Virginia substantive law would apply.  Plaintiff also agrees that punitive damages are a derivative claim under Virginia law.  Plaintiff maintains, however, that they are entitled to punitive damages under the facts of this case, if the jury also awards compensatory damages. *Roche v. Lincoln Property Co.* (4th Cir. 2006) 175 Fed.Appx. 597, 606 (It is "well-settled that a finding of compensatory damages is a prerequisite for an award of punitive liability.") Defendant in its motion does not argue that Plaintiff cannot prove either her claims for compensatory or punitive damages.  Plaintiff also agrees that under Virginia law equitable tolling is not an independent cause of action, but rather a defense to Defendants' assertion of the statute of limitations which creates a factual dispute to be resolved by the jury. However, as stated above, the New Jersey statute of limitations applies to this matter.

**IV.      CONCLUSION**

For the above reasons, except for the loss of consortium claims, Defendants' motion should be denied.

DATED: July 9, 2021

> Respectfully submitted,
>
> **THE MILLER FIRM, LLC**
>
> By: _/s/ Tayjes M. Shah_____
> Tayjes M. Shah
> The Sherman Building
> 108 Railroad Avenue
> Orange, Virginia 22960
> Tel: (540) 672-4224
> Fax: (540) 672-3055
> E-Mail: tshah@millerfirmllc.com