## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 2738 (FLW) (LHG)** |
| *This document relates to:* | |
| *Carol J. Williams, et al.,* No. 3:19-cv-18778 | |
| *Linda H. Hill*, No. 3:18-cv-08344 | |
| *Michael Scroggins o/b/o Bertha M. Walton*, No. 3:18-cv-12766 | |

## DEFENDANTS JOHNSON & JOHNSON AND
## JOHNSON & JOHNSON CONSUMER INC.'S
## REPLY BRIEF IN SUPPORT OF THEIR
## <u>OMNIBUS MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................1

II.    ARGUMENT...........................................................................4

    A.    Summary Judgment Should be Granted as to Plaintiff Carol Williams's Claims................................................................4

    B.    Summary Judgment Should be Granted as to Plaintiff Linda Hill's Claims...............................................................10

        1.    Ms. Hill's Claims Are Governed by Virginia Law. ...............11

        2.    Ms. Hill's Negligence Claims Are Barred by the Virginia Statute of Limitations.............................................16

        3.    Ms. Hill's Fraud and Consumer Protection Act Claims Are Barred. ..................................................................20

        4.    Ms. Hill Concedes That Loss of Consortium and Equitable Tolling Are Not Recognized by Virginia and that Punitive Damages Is Not Recognized as a Standalone Cause of Action. ..................................................21

        5.    Ms. Hill's Claims Would Also Be Barred by the New Jersey Statute of Limitations. ................................................22

    C.    Summary Judgment Should be Granted as to Plaintiff Michael Scroggins's Claims. ........................................................24

III.    CONCLUSION ........................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Martinsville Dupont Credit Union*,
573 F. Supp. 2d 103 (D.D.C. 2008)...................................................................24

*Asbestos v. Bordelon, Inc.*,
726 So. 2d 926 (La. App. 1998).............................................................25, 26

*Bulboff v. King Aircraft Title, Inc.*,
No. 19-18236, 2021 WL 1186822 (D.N.J. Mar. 30, 2021).........................28, 29

*Catrett v. Johns-Mansville Sales Corp.*,
826 F.2d 33 (D.C. Cir. 1987) .............................................................27

*Claytor v. Owens-Corning Fiberglass Corp.*,
662 A.2d 1374 (D.C. 1995)........................................................25, 26

*Evans v. Trinity Industries, Inc.*,
137 F. Supp. 3d 877 (E.D. Va. 2015) ........................................................17, 18

*Flick v. Wyeth LLC*,
No. 3:12-cv-00012, 2012 WL 4458181 (W.D. Va. June 6, 2012) ........ 17, 18, 19

*In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*,
76 F. Supp. 3d 294 (D. Mass. 2015)........................................................11, 12

*Gonik v. Israel Disc. Bank of N.Y.*,
914 N.Y.S.2d 63 (App. Div. 1st Dep't 2011) .....................................................6

*Grimes v. Suzukawa*,
262 Va. 330 (Va. 2001)..................................................................16

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*,
489 F. Supp. 2d 932 (D. Minn. 2007)........................................................13, 14

*Hall v. Johnson & Johnson*,
No. 18-1833, 2019 WL 7207491 (D.N.J. Dec. 27, 2019) ..........................19, 21

# TABLE OF AUTHORITIES
(continued)

**Page**

*Hughes v. Foley*,
  203 Va. 904 (Va. 1962)..................................................................20

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*,
  No. 14-cv-3443, 2015 WL 1516631 (S.D.N.Y. Mar. 26, 2015),
  *aff'd*, 634 F. App'x 19 (2d Cir. 2015) ...........................................8, 9

*Kaufman v. Cohen*,
  307 A.D.2d 113 (App. Div. 1st Dep't 2003) ......................................6

*Kwas v. Intergraph Government Solutions*,
  No. 15-CV-5897, 2016 WL 4502039 (E.D.N.Y. Aug. 24, 2016) ..............6, 7, 8

*Lapka v. Porter Hayden Co.*,
  162 N.J. 545 (2000) ...............................................................22, 23

*Lopez v. Swyer*,
  62 N.J. 267 (N.J. 1973)................................................................24

*Lucaj v. FBI*,
  852 F.3d 541 (6th Cir. 2017).........................................................22

*Mackey v. McDannald*,
  298 Va. 645 (Va. 2020)...........................................................17, 18

*McCarrell v. Hoffmann-La Roche, Inc.*,
  227 N.J. 569 (2017) ...................................................................15

*McFarlin v. N.H. Ins. Co.*,
  No. 12-3033, 2016 WL 3645200 (W.D. La. June 30, 2016)...........................25

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
  236 F. Supp. 2d 69 (D. Mass. 2002), *aff'd*, 346 F.3d 218 (1st Cir.
  2003) ....................................................................................13

*Robare v. Fortune Brands, Inc.*,
  833 N.Y.S.2d 753 (N.Y. App. Div. 3d Dep't 2007) ...................................5, 6, 7

# TABLE OF AUTHORITIES
(continued)

**Page**

*Schmidt v. Household Fin. Corp., II*,
276 Va. 108 (Va. 2008)............................................................................20

*Schreiber v. Allis-Chalmers Corp.*,
611 F.2d 790 (10th Cir. 1979)................................................................13

*Stat. Phone Philly v. NYNEX Corp.*,
116 F. Supp. 2d 468 (S.D.N.Y. 2000), *aff'd sub nom., Black Radio Network, Inc. v. Nynex Corp.*, 14 Fed. App'x 111 (2d Cir. 2001)......................8

*Statler v. Dell, Inc.*,
775 F. Supp. 2d 474 (E.D.N.Y. 2011) .............................................5

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)................................................................................11

*Vispisiano v. Ashland Chemical Co.*,
107 N.J. 416 (1987) ...............................................................................23

*Wahl v. Gen. Elec. Co.*,
983 F. Supp. 2d 937 (M.D. Tenn. 2013), *aff'd*, 786 F.3d 491 (6th Cir. 2015)................................................................................................11

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
977 F. Supp. 2d 885 (N.D. Ill. 2013)................................................11

*Wilson Sporting Goods Co. v. Hickox*,
59 A.3d 1267 (D.C. 2013)......................................................................25

*Zirvi v. Flatley*,
838 Fed. App'x 582 (2d Cir. 2020), *petition for cert. docketed*, No. 20-1612 (U.S. May 19, 2021) ...............................................................9

**Statutes**

Va. Code Ann. § 8.01-229(D) ...............................................................16

**Other Authorities**

Fed. R. Evid. 802 ...................................................................................26

## TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Civ. P. 56(d) .........................................................................28, 29

Restatement (Second) of Conflict of Laws § 142 ...................................15

Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.

("JJCI") (collectively, the "J&J Defendants") respectfully submit this reply brief in

support of their Omnibus Motion for Summary Judgment in the cases of Carol

Williams and Linda Hill on the statute of limitations and Estate of Bertha Walton

for lack of evidence of product usage  (Dkt. No. 22865). [1]

## I.    INTRODUCTION

Plaintiff Carol Williams freely acknowledges that the only way her claims

are not barred by the statute of limitations is if the Court applies New York's

equitable estoppel doctrine.  But her theory of equitable estoppel – i.e., that the J&J

Defendants supposedly misrepresented the "purity" and "safety" of talc – is also

the alleged predicate for her substantive product-liability and fraud-based causes of

action.  Because New York courts have repeatedly made clear that a plaintiff

cannot repackage her liability theories in support of a claim of equitable tolling,

plaintiff's reliance on that narrow doctrine fails as a matter of law.  Ms. Williams

also repeatedly highlights that she did not know about a purported causal link

between talc and ovarian cancer until she saw a television program discussing it in

November 2016.  But the relevant standard is objective (not subjective) in nature,

and the ample publicity surrounding talc litigation discussed in the opening brief

---

[1] As defense counsel alerted the Court on July 13, 2021, the J&J Defendants
withdraw without prejudice their motion in regards to Plaintiff Bobbie Landreth's
claims.

compels the conclusion that Ms. Williams failed to exercise the requisite due diligence to invoke equitable estoppel tolling under New York law.  And while Ms. Williams also points to testimony that she relied on talc-related marketing and that the marketing somehow prevented her from timely commencing suit, New York law requires a fiduciary or privity-like relationship with the defendant to invoke tolling – a requirement that Ms. Williams does not even attempt to satisfy.

Plaintiff Linda Hill's claims are also untimely under Virginia's statute of limitations, as the J&J Defendants explained in their opening brief.  Ms. Hill's novel argument that the timeliness of her claims should be considered under *New Jersey's* discovery rule because she filed her lawsuit directly in this MDL proceeding is foreclosed both by the applicable case law and by the Court's Case Management Order governing choice of law for direct-filed claims, which make clear that the originating court for choice-of-law purposes in Virginia.  And under Virginia's *lex fori* choice-of-law principles, that state's statute of limitations governs Ms. Hill's claims.

In any event, Ms. Hill's claims would be untimely under either state's laws.  Contrary to plaintiff's arguments, her claims do not fall within the narrow misrepresentation exception to the Virginia statute of limitations.  Rather, that exception only encompasses "affirmative" acts intended to obstruct a litigant's ability to bring suit, not repackaged theories of liability like those being pressed

here – i.e., that the J&J Defendants allegedly concealed the supposed asbestos content of their talc products.  And Ms. Hill's claims would also be untimely if New Jersey law applied because the record makes clear that the plaintiff could have discovered the purported cause of her injury by exercising reasonable diligence.

While the applicable law in these two states is different, it remains universal that advertising a product does not toll a statute of limitations.  The defense of a product in litigation and in public does not toll or eviscerate statutes of limitations. All defendants are entitled to the protection of the law.  Plaintiffs' aggressive attacks on the defendants and the cut and paste of their opening statements into their briefs are misplaced in this setting and should be disregarded.

Finally, plaintiff Michael Scroggins (for himself and as administrator of the estate of Bertha Walton) essentially concedes that the only competent evidence of Ms. Walton's perineal use of any talc-based Johnson's Baby Powder is from Ms. Walton's sister – Eloise Hawkins – who claims that she saw Ms. Walton apply the product some 50 years before Ms. Walton's diagnosis with ovarian cancer.  The record is devoid of *any* evidence that such de minimis and remote exposure could have been a substantial factor in causing her ovarian cancer, and nothing would support such a claim.  Tellingly, Mr. Scroggins failed to produce an affidavit specifying what information could possibly be obtained from additional discovery,

which plaintiff himself recognizes is the only legitimate ground for deferring consideration of a purportedly "premature" motion for summary judgment. And to the extent Mr. Scroggins half-heartedly argues that he has "sufficient evidence" of more substantial talc usage, it is based on plaintiff's speculative assumption of how his late mother ***might*** have used Johnson's talcum powder products, which cannot prevent summary judgment.

For all of these reasons, as elaborated in greater detail below, the Court should reject the arguments offered by Ms. Williams, Ms. Hill and the Walton Estate, and grant the J&J Defendants summary judgment on all of their claims.

## II.    ARGUMENT

### A.    Summary Judgment Should be Granted as to Plaintiff Carol Williams's Claims.

As set forth in the J&J Defendants' opening brief, all of Ms. Williams's claims are stale because she delayed filing her complaint until 12 years after she was first diagnosed with ovarian cancer: ***nine years after the expiration of the statute of limitations***. J&J Defs.' Br. at 18.[2] In response, Ms. Williams invokes equitable estoppel and argues that the statute of limitations was tolled until she herself became aware of the purported link between talc and ovarian cancer when

---

[2] For the purposes of this Motion, it is not necessary to decide which law governs punitive damages in this case and defendants reserve their response on those arguments.

4

she saw a television program in November 2016.  Williams Opp'n at 10.  But equitable estoppel does not save the day.  It applies only when the plaintiff can show that she "was induced by the defendant's fraud, misrepresentations or deception to refrain from filing a timely action and the plaintiff . . . reasonably relied on the defendant's misrepresentations."  *Robare v. Fortune Brands, Inc.*, 833 N.Y.S.2d 753, 755 (N.Y. App. Div. 3d Dep't 2007) (internal quotations and citations omitted).  This requires the plaintiff to show that she was prevented from filing suit by a subsequent action that is separate and apart from the act that forms the basis of the substantive causes of action, *id.*, and that the plaintiff acted with reasonable diligence, *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011).  Here, none of these requirements are met.[3]

**First**, it is undisputed that Ms. Williams has used her allegations of alleged concealment of asbestos as the basis of both her equitable estoppel and personal injury claims.  J&J Br. at 21-22.  Ms. Williams's diatribe regarding the J&J Defendants' alleged misrepresentation does not create an issue of fact on this point.  Instead, it highlights that she intends to rely on these allegations, which the J&J Defendants deny, as the basis of both the equitable estoppel and products liability claims.  New York courts have found that using the same allegations as the basis

---

[3] Plaintiff ignores the J&J Defendants' argument that equitable estoppel principles do **not** apply to breach-of-warranty claims.  J&J Defs.' Br. at 25.  As such, plaintiff effectively concedes that her breach-of-warranty claims are time-barred.

5

for both the equitable estoppel and substantive claims, as Ms. Williams has, forecloses a plaintiff from relying upon equitable estoppel. *See Robare*, 833 N.Y.S.2d at 755; *Kaufman v. Cohen*, 307 A.D.2d 113, 122 (App. Div. 1st Dep't 2003). This alone compels the conclusion that under New York law, equitable estoppel cannot apply to her claims. *See id.*

**Second**, Ms. Williams likewise does not meaningfully address the J&J Defendants' argument that any reliance on equitable estoppel is separately barred by New York law where – as here – there is no direct or fiduciary relationship between the parties. *See Gonik v. Israel Disc. Bank of N.Y.*, 914 N.Y.S.2d 63, 64 (App. Div. 1st Dep't 2011) (holding that there was no "basis to apply the doctrine of equitable estoppel to bar defendant from asserting the statute of limitations as a defense" where plaintiff failed to adequately plead direct "contact" or fiduciary relationship with defendant). Ms. Williams does not cite a single case suggesting – much less holding – otherwise. Instead, she argues that certain of the J&J Defendants' authorities do not "limit" equitable estoppel to such circumstances. Williams Opp'n at 13 n.5. But plaintiff's treatment of the J&J Defendants' cases is unpersuasive and misperceives their holdings.

For example, plaintiff appears to suggest that, in *Kwas v. Intergraph Government Solutions*, No. 15-CV-5897, 2016 WL 4502039, at *3 (E.D.N.Y. Aug. 24, 2016), the court merely held that equitable estoppel was not available because

6

the plaintiff had "not alleged that the defendant made *any* misrepresentations." Williams Opp'n at 13 (quoting *Kwas*, 2016 WL 4502039, at *3).  But, in that case, the court rejected tolling because the "plaintiff d[id] not allege that he had any contact with the defendant whatsoever, let alone a fiduciary relationship with the defendant . . . requiring it to inform plaintiff of certain facts underlying the claim." *Kwas*, 2016 WL 4502039, *3.  Nor is there any truth to plaintiff's suggestion that another one of the J&J Defendants' cases – *Robare*, 833 N.Y.S.2d at 755– turned on the plaintiff's knowledge of the hazard about which he was complaining during the limitations period.  *See* Williams Opp'n at 15 n.6.  Rather, just like *Kwas*, *Robare* made clear that a plaintiff must "demonstrate[] the existence of any fiduciary relationship with defendants that *differs in kind or degree from defendants' relationship with others generally*" in order to invoke equitable estoppel.  *Robare*, 833 N.Y.S.2d at 756 (emphasis added); *see also id.* ("[T]he plaintiff may not merely rely on the [defendants'] status in general, but must come forward with facts demonstrating that his or her relationship with the institution[s] was somehow unique or distinct from the institution[s'] relationship with other[s] generally.") (citation omitted).

In short, the J&J Defendants' authorities leave no doubt that equitable estoppel requires a direct or fiduciary-like relationship between the parties.  And because Ms. Williams does not even attempt to argue that she had such a

relationship with the J&J Defendants, her reliance on equitable estoppel fails for this reason as well.[4]

**Third**, plaintiff's argument regarding her supposed exercise of due diligence is also meritless. The gist of her argument is that "[b]efore late November 2016" – when she saw a television program discussing an alleged link between talc and ovarian cancer – she "had no information regarding th[at] possible link[.]" Williams Opp'n at 20. However, what Ms. Williams subjectively knew is beside the point; rather, the question is whether she had an **objective** reason to know the basis for her lawsuit. *See, e.g.*, *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, No. 14-cv-3443, 2015 WL 1516631, at *5 (S.D.N.Y. Mar. 26, 2015) (rejecting "proposition that a plaintiff's subjective disbelief prevents the statute of limitations from running" because "such a rule would completely eviscerate any statute of limitations"), *aff'd*, 634 F. App'x 19 (2d Cir. 2015); *see also Stat. Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 483 (S.D.N.Y. 2000) ("[T]he running of the limitations period will not await the plaintiff's satisfaction as to the merits of

---

[4] Ms. Williams asserts that, "[r]egardless, defendants' false statements were provided **directly** to Carol Williams by J&J each and every time she purchased J&J talc products as well as through J&J's direct-to-consumer advertising." Williams Opp'n at 13 n.5 (emphasis added). But *Kwas* once again defeats plaintiff's argument because merely "se[lling] a [purportedly] defective product" to a consumer does not constitute direct statements to that consumer. 2016 WL 4502039, at *3.

his or her case, much less the defendant's voluntary self-incrimination.") (citation omitted), *aff'd sub nom., Black Radio Network, Inc. v. Nynex Corp.*, 14 Fed. App'x 111 (2d Cir. 2001).

Here, the J&J Defendants cited ample evidence of the ubiquitous publicity surrounding talc litigation and jury verdicts between 2009 and early 2016 – well outside the three-year limitations period that governs Ms. Williams's claims. *See* J&J Defs.' Br. at 23. Even assuming that Ms. Williams – a self-proclaimed "label reader" – would somehow be oblivious to such pervasive litigation-related publicity, *see* Williams Opp'n at 2, 21, the reality is that a ***reasonable*** person would not. That is why court after court applying New York limitations principles has imputed knowledge to a plaintiff based on the existence of other, earlier litigation with similar allegations. *See, e.g., Zirvi v. Flatley*, 838 Fed. App'x 582, 587 (2d Cir. 2020) ("[W]e agree with the district court that 'the matters in this case are substantially similar to the ones that Barany and Cornell litigated before the USPTO and in the District of Delaware, matters about which plaintiffs were . . . constructively aware because the proceedings were public.'") (citation omitted), *petition for cert. docketed*, No. 20-1612 (U.S. May 19, 2021); *IKB Deutsche Industriebank*, 2015 WL 1516631, at *4 (holding that plaintiff could have reasonably discovered the bases for its claims when a similar lawsuit had been filed years before containing the same "key factual allegations underlying

9

[plaintiff's] claims"). Once again, Ms. Williams fails to address any of these cases, much less cite a single authority holding otherwise.[5]

For all of these reasons, Ms. Williams's arguments should be rejected, and the Court should grant the J&J Defendants summary judgment on all of her claims.

## B.  Summary Judgment Should be Granted as to Plaintiff Linda Hill's Claims.

As explained in the J&J Defendants' opening brief, Ms. Hill's claims are untimely because she did not file this suit until nearly five years after she was diagnosed with ovarian cancer – well outside Virginia's two-year statute of limitations. *See* J&J Defs.' Br. at 31-32. In response, Ms. Hill argues that her claims are timely under *New Jersey's* discovery rule – an argument that contravenes well-established choice-of-law principles and this Court's Case Management Order No. 2. As explained below, Ms. Hill's claims are governed by – and fail under – Virginia law (and would fail under New Jersey law as well).

---

[5] The Court should also reject Ms. Williams's one-sentence suggestion that the statute of limitations was somehow tolled until May 2020 (i.e., when the J&J Defendants supposedly "recalled" talc-based Johnson's Baby Powder in the United States). Williams Opp'n at 22. Far from "recalling" the product, JJCI made a business decision – four years after Ms. Williams stopped using Johnson's Baby Powder – to stop selling the product in parts of North America, as a result of declining sales and consumer confusion, which were spurred by inflammatory attorney advertising.

10

### 1.    Ms. Hill's Claims Are Governed by Virginia Law.

Under both ordinary choice-of-law principles and the governing case management order, Ms. Hill's claims – which were directly filed in this MDL proceeding – are governed by Virginia's statute of limitations.

The United States Supreme Court has held that in federal cases that are transferred to different venues, "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue" because "[a] change of venue . . . generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  "[T]he prevailing rule . . . is that in a case that was directly filed in the MDL . . . but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated," i.e., ***would have been brought absent the MDL***.  *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013); *see, e.g.*, *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 943 & n.11 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply the choice of law rules of the 'originating' jurisdiction (i.e., where the case would have been brought but for the CMO permitting direct filing) . . . ."), *aff'd*, 786 F.3d 491 (6th Cir. 2015); ; *In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 294, 301, 303 (D. Mass. 2015) (because "direct filing should

not alter the substantive law that governs any particular case" the court held that "[f]or the cases specifying Mississippi as the home forum [in the short form complaint, the court] will apply Mississippi choice of law rules").

The Court's Direct Filing Order (Case Management Order No. 2) reflects this "prevailing" approach, providing "that in any case filed pursuant to this Order, choice of law determinations shall be made in accordance with the laws of the jurisdiction that would apply to the action had the matter been initially filed in the Original District . . . designated by the Plaintiff in paragraph 10 of the Short Form Complaint."  (Dkt. No. 102 at 3; *see also id.* at 1 ("this Order thereby designates the federal district in which the complaint should be deemed to have otherwise been originally filed").)  Consistent with this Order, Ms. Hill designated the United States District Court for the Western District of Virginia as the Original District in paragraph 10 of her operative short-form complaint.  (*See* Brennan Decl., Ex. 10 at 4.)[6]  As such, Ms. Hill should be estopped from arguing that Case Management

---

[6] Ms. Hill attempts to brush aside the CMO by comparing it to a mere contract and citing a series of cases for the proposition that choice-of-law provisions in contracts are not determinative of the applicable statute-of-limitations law.  *See* Hill Opp'n at 7-9 (citations omitted).  But none of those cases discusses the validity of choice-of-law provisions in court orders, such as Case Management Order No. 2 – which is not merely an agreement between the parties, but instead is signed by the Court and has the force of law.  *See In re Fresenius*, 76 F. Supp. 3d at 301 ("To be sure, the drafting of CMI-7 was done by the parties, who agreed on the text that they submitted.  But I reviewed and then issued the agreed-upon text as a court order, and it therefore falls to me to construe the meaning and

Order No. 2 does not apply to her case because she took advantage of that very order to file her case directly in the District of New Jersey. She is not entitled to pick and choose among the provisions she would like to apply to her case.

Whether Ms. Hill's claims are timely is a question governed by ***Virginia's*** *lex fori* choice-of-law principles, which Ms. Hill acknowledges look to the limitations law of the forum. Hill Opp'n at 7. Other federal courts applying *lex fori* to determine the statute of limitations in transferred cases have found that the statute of limitations of the transferor court applies. *See Schreiber v. Allis-Chalmers Corp.*, 611 F.2d 790, 794 (10th Cir. 1979); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 236 F. Supp. 2d 69, 74 (D. Mass. 2002), *aff'd*, 346 F.3d 218 (1st Cir. 2003).

Ms. Hill nonetheless argues that "the *lex fori* or situs of these proceedings is now in New Jersey" given that she has "waived *Lexecon*," with her lawsuit proceeding as a "bellwether case[.]" Hill Opp'n at 7. But that makes no difference; *Lexecon* waivers relate to defenses of jurisdiction and venue, not choice-of-law rules. Other MDL courts have expressly held as much. *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 489 F. Supp. 2d 932, 935 (D. Minn. 2007), is instructive. There, the plaintiff argued

---

implications of the order." (citing *Harvey v. Johanns*, 494 F.3d 237, 242 (1st Cir. 2007) (deference afforded district court's interpretation of its own order)).

(similarly to Ms. Hill) that the law of the transferee/MDL court (Minnesota) should apply instead of the laws of the transferor/original court (California) because the plaintiff had filed an amended complaint in the MDL, and agreed to waive *Lexecon* venue requirements and to have the case tried in Minnesota. *Id.* The plaintiff argued that such actions effectively "turn[ed] his case" into a District of Minnesota lawsuit governed by Minnesota law. *Id.* The MDL court disagreed, reasoning that the filing of an amended complaint was "merely a procedural device designed to promote judicial economy, and, as such, it does not affect the rights of the parties in separate suits." *Id.* at 936. The MDL court also made clear that "waiving *Lexecon* requirements do[es] not impact the applicable choice-of-law rules." *Id.* So too here.

Ms. Hill cites no contrary authority. Instead, she cites two cases that recognize the uncontroversial principle that as to matters of ***federal*** procedural law, the interpretations of the transferee circuit control. *See* Hill Opp'n at 7 (citing *Various Plaintiffs v. Various Defendants ("Oil Field Cases")*, 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) & *In re Asbestos Prods. Liab. Litig.*, 611 F. App'x 86, 89 (3d Cir. 2015)). Neither case remotely supports Ms. Hill's argument here, which would upend MDL practice by allowing a plaintiff to resurrect stale claims by directly filing her lawsuit in an MDL proceeding located in a state that happens to

14

have more liberal statutes of limitations than those of the plaintiff's own state, regardless of whether the state where the MDL was located had jurisdiction.

Finally, *McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569 (2017), does not require the Court to apply the New Jersey statute of limitations here.  In *McCarrell*, a case dealing with out-of-state plaintiffs who wanted to pursue their claims in New Jersey **state court,**  the court looked to the Restatement (Second) of Conflict of Laws § 142, which requires an analysis of whether New Jersey has any significant interest in maintenance of the claim.  *Id*. at 574-75.  Thus, much of the discussion in *McCarrell* focused on New Jersey's "substantial interest in deterring its manufacturers from developing, making, and distributing unsafe products, including inadequately labeled prescription drugs."  *Id*. at 575.

The policy reasons *McCarrell* provides for adopting the forum state's statute of limitation support adopting the Virginia statute of limitations in this case. Specifically, *McCarrell* recognizes applying the law of the forum state "benefits from an ease of application; places both [the forum state's] and out-of-state's citizens on an equal playing field, thus promoting principles of comity; advances predictability and uniformity in decision-making; and allows for greater certainty in the expectations of the parties."  *Id*. at 593.  These considerations all favor using the law of the original forum –Virginia – for Ms. Hill's claims.  Thus, in order to create predictability in MDL cases, the statute of limitations of the original forum,

not the forum of the MDL, should apply.  Otherwise, the New Jersey statute of limitations would apply to every case in the MDL, which would be game changing for many plaintiffs who have relied in good faith on the established case law and Direct Filing Order in filing their cases pursuant to that order for the last four years.

In short, Virginia's statute-of-limitations law applies, regardless of Ms. Hill's later waiver of the *Lexecon* requirements.

### 2. Ms. Hill's Negligence Claims Are Barred by the Virginia Statute of Limitations.

As set forth in the J&J Defendants' opening brief, Ms. Hill's negligence claims are untimely because she was diagnosed with ovarian cancer, and could have discovered its purported cause, well more than two years before she filed suit. *See* J&J Defs.' Br. at 33-36.  In response, Ms. Hill argues that her negligence claims are timely under the misrepresentation exception to the statute of limitations codified at Va. Code Ann. § 8.01-229(D).  *See* Hill Opp'n at 13-14.

In order to invoke that exception, however, Ms. Hill "must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct [her] right to file her action." *Grimes v. Suzukawa*, 262 Va. 330, 332 (Va. 2001).  And as elaborated in the J&J Defendants' opening brief, Ms. Hill cannot possibly make the requisite showing because her theory of misrepresentation for purposes of tolling is predicated on the same alleged conduct

16

underlying her fraud-based causes of action.  *See* J&J Defs.' Br. at 37-40.  Indeed, the very same argument was made by the plaintiff in *Flick v. Wyeth LLC*, No. 3:12-cv-00012, 2012 WL 4458181 (W.D. Va. June 6, 2012), which squarely ***rejected*** virtually identical allegations of purported fraud to those being pressed by Ms. Hill here.  *See Flick*, 2012 WL 4458181, at *5 (rejecting as inadequate 16 examples of purportedly fraudulent conduct, including sales representatives downplaying the risks of the alleged injury, the defendant ignoring, disputing, and suppressing various study results, and the defendant refusing to strengthen its warning label) (addressed in further detail in J&J Defs.' Br. at 32, 37-40).

In her opposition brief, Ms. Hill does not dispute that her allegations mirror those squarely rejected in *Flick*.  Instead, she asserts that because *Flick* was decided prior to two other decisions – *Mackey v. McDannald*, 298 Va. 645 (Va. 2020), and *Evans v. Trinity Industries, Inc.*, 137 F. Supp. 3d 877 (E.D. Va. 2015) – *Flick* is no longer persuasive.  Hill Opp'n at 13 n.5.  But neither *Mackey* nor *Evans* remotely suggests that *Flick* was wrongly decided – much less purports to overrule that prior decision.  Indeed, *Mackey* did not address *Flick* at all, and while *Evans* briefly mentioned it in a footnote, it did so simply to point out the paucity of case law addressing the narrow question presented in *Evan* and later in *Flick*: whether alleged concealment that occurs "prior to the injury in question and was not directly targeted at obstructing the ***particular plaintiff's*** claims" suffices under

17

Virginia law. *Evans*, 137 F. Supp. 3d at 883 & n.5 (emphasis added); *see also Mackey*, 298 Va. at 657 (similar).

Here, by contrast, the J&J Defendants are not arguing that any alleged fraud is outside the misrepresentation exception because it supposedly occurred *prior* to Ms. Hill's cancer diagnosis. Instead, the J&J Defendants' argument – just like the one sustained in *Flick* – is that Ms. Hill is "simply trying to re-package her liability theories as evidence of 'fraudulent concealment' or 'obstruction' in order to toll the limitations period." 2012 WL 4458181, at *4. Ms. Hill's own brief essentially recognizes as much, confirming that the proffered basis for misrepresentation for purposes of tolling the statute of limitations is nothing but a recycled version of her liability arguments – namely, that the J&J Defendants "represent[ed] to her that [their] talcum powder [was] 'pure' and natural," while "conceal[ing]" evidence tending to suggest that it can be contaminated with asbestos and increase the risk of ovarian cancer. Hill Opp'n at 14. If that were enough, the statute of limitations would be nullified in essentially every product-liability case (and a wide swath of other cases as well), all of which turn on allegations that a defendant downplayed the risks associated with a product. Instead, more is needed – i.e., evidence that the alleged conduct was specifically intended to obstruct plaintiff's ability to bring suit. *Flick*, 2012 WL 4458181, at *5.

18

This Court's decision in *Hall v. Johnson & Johnson*, No. 18-1833, 2019 WL 7207491 (D.N.J. Dec. 27, 2019) (cited in Hill Opp'n at 15), does not dictate a contrary conclusion. As an initial matter, the Court in *Hall* was ruling on a motion to dismiss, and the Court explicitly stated that its "ruling should not be construed as the Court's acknowledgment of the underlying merits of the substance of Plaintiff's claims, including whether the scientific evidence supports Plaintiff's allegations." *Id.* at *30. Thus, despite Ms. Hill's insinuation otherwise, this Court has not found that the statements by the J&J Defendants are misleading. Additionally, *Hall* is a class actions securities litigation where the key question was how the market would have reacted had they known about the J&J Defendants' alleged misrepresentations. *Id.* at *11-12. That is a very different question from whether the misrepresentations alleged by Ms. Hill were enough to obstruct her from filing her lawsuit under Virginia law. Thus, *Hall* is irrelevant to Ms. Hill's allegations.

In sum, because Ms. Hill is unable to dispute that her theory of misrepresentation tracks that previously rejected in *Flick*, she cannot prove that the J&J Defendants engaged in the requisite "affirmative" conduct to trigger application of Virginia's misrepresentation exception. Accordingly, Ms. Hill's negligence claims are untimely and cannot proceed.

19

### 3. Ms. Hill's Fraud and Consumer Protection Act Claims Are Barred.

As set forth in the opening brief, Ms. Hill's claims for fraud and violation of the Virginia Consumer Protection Act ("VCPA") are also untimely because she could have reasonably discovered the alleged fraud underlying these claims more than two years prior to the filing of her complaint. *See* J&J Defs.' Br. at 33-36, 41. Ms. Hill bears the burden "to prove that, ***despite the exercise of due diligence***, [she] could not have discovered the alleged fraud [except] within the two-year period before [she] commenced the action." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 117 (Va. 2008) (emphasis added); *see also Hughes v. Foley*, 203 Va. 904, 906 (Va. 1962) ("[T]he critical question is whether, in the exercise of due diligence, he ***should*** have discovered such mistake earlier.") (emphasis added)). Ms. Hill cannot carry that burden because she did not exercise ***any*** diligence. She not only failed to ask her doctor about the cause of her ovarian cancer, but also neglected to do any research regarding the cause of that diagnosis. (*See* Brennan Decl., Ex. 6 at 22:5-8, 24:5-9, 123:23-124:10.) Moreover, had Ms. Hill done any research, she would have discovered the extensive publicity, media reports, and attorney advertising regarding talc litigation and the purported link between talc and ovarian cancer long before her son told her about an attorney advertisement in 2016. (*See* Frazier Decl. at ¶¶ 3, 8.)

Ms. Hill does not seriously attempt to argue otherwise, suggesting instead that such diligence is irrelevant under this Court's decision in *Hall*.  *See* Hill Opp'n at 16.  But that case focused on the plausibility of ***allegations*** under federal securities laws, as already discussed.  *Hall* does not remotely support Ms. Hill's argument here – i.e., that she did not have to undertake any diligence in exploring the potential cause of her ovarian cancer under Virginia's statute of limitations.  In short, while Virginia's discovery rule governs Ms. Hill's fraud-based claims, the record establishes that she could have reasonably discovered the alleged basis for this lawsuit long before 2016.

### 4. Ms. Hill Concedes That Loss of Consortium and Equitable Tolling Are Not Recognized by Virginia and that Punitive Damages Is Not Recognized as a Standalone Cause of Action.

Ms. Hill concedes that Virginia does not recognize a claim for loss of consortium or a cause of action for equitable tolling.  Hill Opp'n at 17.  Thus, the Court should grant the J&J Defendants summary judgment on those counts.  Ms. Hill also concedes that punitive damages is a derivative claim, *id.*; thus, to the extent the Court grants summary judgment on Ms. Hill's remaining substantive claims, it should also grant summary judgment on Ms. Hill's punitive damages claim.

21

### 5. Ms. Hill's Claims Would Also Be Barred by the New Jersey Statute of Limitations.

As previously discussed, Virginia's two-year statute of limitations applies to all of Ms. Hill's claims. But even if New Jersey law applied, the J&J Defendants would still be entitled to summary judgment as to Ms. Hill's claims.[7]

While New Jersey recognizes a discovery rule for product-liability and fraud-based causes of action, the burden is on the plaintiff to establish that she filed suit "within two years from the date [she] discovered, or by the exercise of reasonable diligence and intelligence should have discovered, the basis for an actionable claim." *Lapka v. Porter Hayden Co.*, 162 N.J. 545, 553 (2000). In other words, "discovery will be imputed when an injury has occurred and there exists the awareness of 'facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct *may* have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care.'" *Id.* at 556 (citation omitted). As already discussed, Ms. Hill cannot meet her burden of showing that she could not have

---

[7] Ms. Hill suggests, in passing and without any citation to authority, that the J&J Defendants waived the right to assert a statute-of-limitations defense under New Jersey law because they only argued Virginia law in their opening brief. Hill Opp'n at 11. But the possibility that New Jersey law would apply was raised for the first time in Ms. Hill's opposition brief, and the J&J Defendants cannot be faulted for failing to anticipate it. *See Lucaj v. FBI*, 852 F.3d 541, 548-49 n.4 (6th Cir. 2017) ("To suggest that [a party] forfeited an argument that he addressed as soon as he could cuts against principles of forfeiture and, frankly, fairness.").

reasonably discovered the basis for her lawsuit prior to April 2016 in light of the abundant publicity surrounding talc litigation, talc verdicts, and attorney advertising regarding the purported link between talc and ovarian cancer.

*Vispisiano v. Ashland Chemical Co.*, 107 N.J. 416 (1987) (cited in Hill Opp'n at 10), does not hold otherwise.  In that case, the New Jersey Supreme Court merely rejected the contention that "an uninformed guess or . . . speculation without some reasonable medical support" would "start[] the running of the statute of limitations."  *Id.* at 434.  As the New Jersey Supreme highlighted in a subsequent decision, the plaintiff in *Vispisiano* lacked the requisite level of constructive knowledge until shortly before filing suit in large part because his doctor "***discouraged*** the belief that there was a connection sufficient to form the basis of a cause of action."  *Lapka*, 162 N.J. at 557 (emphasis added).  That is a far cry from the situation here, where Ms. Hill never even asked her doctors about the cause of the ovarian cancer – much less was "discouraged" from advancing her ultimate litigation position.  (Brennan Decl., Ex. 6 at 123:23-124:10.)  Moreover, the New Jersey Supreme Court later reiterated that nothing in *Vispisiano* relieves a plaintiff of the duty to investigate the nature of her condition and exercise reasonable diligence.  *See Lapka*, 162 N.J. at 557 ("We did not hold in *Vispisiano*

that medical confirmation of [a] plaintiff's injury in a toxic tort case is necessary for a cause of action to accrue.").[8]

In sum, Ms. Hill does not dispute that she failed to exercise any (much less reasonable) diligence in ascertaining the purported cause of her ovarian cancer, which precludes her bid to invoke New Jersey's discovery rule.

### C.  Summary Judgment Should be Granted as to Plaintiff Michael Scroggins's Claims.

Mr. Scroggins admits that he bears the burden to show that exposure to Johnson's talcum powder products were a "substantial contributing factor" to Ms. Walton's injury. Walton Opp'n at 7-8.  In order to meet this burden, both Louisiana and D.C. law[9] require plaintiff to show that Ms. Walton "was

---

[8] Ms. Hill also suggests that a "court hearing may be required" before the Court determines whether she is entitled to rely on New Jersey's discovery rule.  Hill Opp'n at 13.  As Ms. Hill recognizes, however, such a hearing is only required when there is a question of credibility, *Lopez v. Swyer*, 62 N.J. 267, 275-76 (N.J. 1973), not where – as here – the plaintiff has conceded that she did nothing to investigate the cause of her cancer.

[9] Mr. Scroggins relies on Ms. Walton's filing in D.C. to argue that because there is no conflict between Louisiana and D.C. law, D.C. law applies, and then claims that D.C. and Louisiana law are the same. Walton Opp'n Br. at 6-8.  First, however, this case has nothing to do with D.C.  The complaint, like many others, was filed in D.C. to take advantage of the three-year statute of limitations and application of the discovery rule.  Second, Plaintiffs are wrong when they say that the law of the two jurisdictions is the same - there are clear, material differences in the laws of D.C. and Louisiana.  For example, D.C. common law governs product-liability claims, while Louisiana is not a common-law jurisdiction and has enacted a specific statutory regime addressing product-liability claims, under the Louisiana Product Liability Act – a significant difference for choice-of-law purposes.  *Cf. Adams v. Martinsville Dupont Credit Union*, 573 F. Supp. 2d 103, 110 (D.D.C. 2008) (where

24

substantially exposed to" the product in a sufficient dosage to cause the injury.  *See Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948-49 (La. App. 1998) ("Without frequent, regular exposure to Flexitallic's gaskets by the plaintiffs, we are without authority to say that the plaintiffs' handling of Flexitallic gaskets was a substantial factor in the causation of their injuries."); *Claytor v. Owens-Corning Fiberglass Corp.*, 662 A.2d 1374, 1384-85 & n.11 (D.C. 1995) (noting inexactness in date of exposure shows weakness of claim and inability to survive summary judgment). There is no such admissible evidence of frequent and regular exposure here.  There is no witness who can testify to perineal use of the product after 1964 or 1965, some fifty years before the ovarian cancer diagnosis in 2015.  (Brennan Decl., Ex. 23 at 29:4-5, 76:9-77:9, 109:10-12, 111:11-17, 209:1-210:5.)  This is not enough to meet plaintiff's burden of showing substantial exposure.  J&J Defs.' Br. at 58.

---

one state's causes of action "are not recognized as causes of action" in the other, "it is axiomatic that a true conflict of law exists").  Moreover, the jurisdictions apply different standards to allegations of product defect.  *Compare, e.g.*, *McFarlin v. N.H. Ins. Co.*, No. 12-3033, 2016 WL 3645200, at *5-7 (W.D. La. June 30, 2016) (such claims governed by "risk-utility" test), *with Wilson Sporting Goods Co. v. Hickox*, 59 A.3d 1267, 1274-75 (D.C. 2013) (applying either a "consumer-expectation" or "risk-utility" test depending on the facts of the particular case). Accordingly, plaintiff's suggestion that the laws of Louisiana and D.C. are identical is simply false.  And because plaintiff does not dispute that Ms. Walton was a lifelong Louisiana resident whose alleged exposure to Johnson's talcum powder product occurred in that state, *see* Walton Opp'n at 2-3, that state's law governs plaintiff's claims.

Plaintiff's reliance on Mr. Scroggins's testimony is misplaced. Mr. Scroggins testified unequivocally that he "did not physically see" his mother apply powder to herself, that she never did so when he was "present in the room," that his mother never "told [him] anything specific about how she applied [powder] to her own body," and that he can only assume how his mother used the product." (Brennan Decl., Ex. 24 at 31:8-11, 32:16-19, 40:5-8, 71:18-25.) Thus, any testimony by Mr. Scroggins regarding his mother's alleged talcum powder use, including his statements in the Plaintiff Profile Form, is inadmissible hearsay. Fed. R. Evid. 802. Given that the only admissible evidence of Ms. Walton's Johnson's Baby Powder use is that Ms. Walton used it for at most six years fifty years prior to her diagnosis,[10] plaintiff cannot meet the burden of showing substantial exposure because such infrequent use is legally insufficient to meet the standard. *See, e.g., Asbestos*, 726 So. 2d at 948-49; *Claytor*, 662 A.2d at 1384-85 & n.11.

---

[10] And even that is not stated accurately in the opposition brief. Plaintiff notes that, after that five-year period, Ms. Walton moved into the apartment next door to Ms. Hawkins, that Ms. Hawkins would "frequently" stay at her sister's apartment – during which Ms. Hawkins would observe Ms. Walton applying Johnson's Baby Powder to her underwear. Walton Opp'n at 2 (citing Hawkins Dep. at 212:5-9, 212:20-25). But the testimony is actually limited to the statement that Ms. Hawkins would ***sometimes*** "spend the night[.]" (Brennan Decl., Ex. 23 at 212:5-9.) Moreover, as plaintiff acknowledges, Ms. Hawkins "could not remember the exact years [her sister] lived next door," estimating that it was no more than one or two years. Walton Opp'n at 3; (*see also* Brennan Decl., Ex. 23 at 219:4-6, 220:3-5.) As a result, this additional testimony from Ms. Hawkins does not change the fact that the only evidence of perineal talc usage is sporadic in nature and predates the relevant cancer diagnosis by nearly five decades.

26

*Catrett v. Johns-Mansville Sales Corp.*, 826 F.2d 33 (D.C. Cir. 1987), cited by plaintiff, does not require a different result.  In *Catrett*, the plaintiff was able to produce four separate pieces of evidence in support of the decedent's exposure to asbestos, and the Court relied heavily upon the four items in finding there was a factual dispute.  *Id.* at 40.  By contrast, Mr. Scroggins has only produced one witness to an at best sporadic exposure from more than fifty years prior to her filing her lawsuit.  (Brennan Decl., Ex. 23 at 29:4-5, 76:9-77:9, 109:10-12, 111:11-17, 209:1-210:5.)  Thus, if anything, *Catrett* supports granting summary judgment in this case.

Plaintiff's argument that this Motion is premature because expert testimony is required to show causation is simply wrong.  First, the point of this motion is whether there is sufficient evidence to meet the burden of showing substantial exposure.  There is no evidence before the Court to justify a finding that four to five years of alleged perineal usage fifty years before the diagnosis of ovarian cancer constitutes substantial exposure such that there is a question for the jury.  Notably plaintiff's own causation expert Dr. Laura Plunkett has testified in multiple prior talc litigations that the latency period for ovarian cancer is ten to twenty years from exposure.  (*See, e.g.*, Declaration of Kaitlyn E. Stone in Support of Defendants' Omnibus Motion for Summary Judgment ("Stone Decl."), Ex. A (Transcript Deposition of Laura M. Plunkett dated January 13, 2017) at 978:12-15,

27

1144:23-1145:8; Stone Decl., Ex. B (Transcript of Deposition of Laura M. Plunkett dated September 28, 2018) at 194:10-19.)  Indeed, in their efforts to manufacture proof of dose-response, the very experts on which plaintiff relies all stressed that the risk of developing ovarian cancer rises to the level of the "20-50%" cited in plaintiff's brief only after substantial duration of use.[11]  And none of these experts purported to opine that a few years of exposure in childhood could produce ovarian cancer half a century later.  Further discovery will not solve this problem because the science itself is what is barring plaintiff's way forward – a reality laid bare by plaintiff's failure to even argue in his brief that five years of exposure to talcum powder could cause ovarian cancer.

Second, plaintiff recognizes that the proper way to object to a summary judgment motion as being premature due to lack of expert discovery is through Federal Rule of Civil Procedure 56(d).  Walton Opp'n at 9 n.4.  However, plaintiff failed to provide *any* affidavit with its opposition, let alone one that "specif[ies] what particular information is sought or how, if disclosed, it would preclude summary judgment."  *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 WL 1186822, at *5 (D.N.J. Mar. 30, 2021) (Kugler, J.).  The failure to provide such specific information is fatal to a request to defer consideration of a motion for

---

[11] *E.g.*, Walton Opp'n Ex. 8, McTiernan Rep. at 54-55, Siemiatycki Rep. at 43-44, Smith-Bindman Rep. at 39-40.

28

summary judgment. *Id.* (citing *Malouf v. Turner*, 814 F. Supp. 2d 454, 460 (D.N.J. 2011)).  Here, plaintiffs' counsel have served reports from twenty-four experts in this case.  Surely, if they had expert testimony to support their claims here, they would have submitted it with a Rule 56(d) affidavit.

Because Mr. Scroggins cannot meet his burden of showing substantial exposure to Johnson's Baby Powder, summary judgment should be granted on all of Ms. Walton's claims.

## III.  CONCLUSION

For the foregoing reasons and those set forth in the J&J Defendants' opening brief, the J&J Defendants respectfully request that the Court grant their Motion, and enter summary judgment in favor of the J&J Defendants as to all of the claims of the Linda Hill complaint, the Carol Williams complaint, and the Bertha Walton complaint.

Dated: July 21, 2021                  Respectfully submitted,

/s/ *Susan M. Sharko*

Brianna L. Silverstein          Susan M. Sharko
FAEGRE DRINKER BIDDLE            FAEGRE DRINKER BIDDLE
& REATH LLP                      & REATH LLP
*On the brief*                   600 Campus Drive
                                 Florham Park, New Jersey 07932
                                 Telephone:  973-549-7000
                                 Facsimile:  973-360-9831
                                 E-mail:  susan.sharko@faegredrinker.com

John H. Beisner
Jessica D. Miller
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-7000

*Attorneys for Defendants Johnson &
Johnson and Johnson & Johnson Consumer
Inc.*