# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*This document relates to:*<br><br>*Linda H. Hill*, No. 3:18-cv-08344 | MDL No. 2738 (FLW) (LHG) |

## DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S RESPONSE TO PLAINTIFF LINDA HILL'S STATEMENT OF DISPUTED MATERIAL FACTS

| PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS: | DEFENDANTS' RESPONSE[1]: |
|---|---|
| 1. Linda Hill ("Ms. Hill") was diagnosed with ovarian cancer in 2013 after prolonged and extensive exposure to Johnson's Baby Powder ("JBP") and Shower ("JBP") and Shower to Shower ("STS"). | 1. For the purposes of this Motion only, the J&J Defendants do not dispute that Ms. Hill was diagnosed with ovarian cancer in 2013, or that she alleges that she was exposed to Johnson's Baby Powder and/or Shower to Shower. Ms. Hill's characterization of her exposure as "prolonged and extensive" is an opinion, rather than fact, and, therefore, not proper under Local Rule 56.1(a). |

---

[1] Defendants' responses are for the sole purpose of the current Motion only. Defendants reserve the right to dispute any facts in any other cases, as we as throughout the remainder of this litigation, including at trial.

| PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS: | DEFENDANTS' RESPONSE[1]: |
|---|---|
| 2.  Ms. Hill as diagnosed in North Carolina with Stage IIC ovarian cancer. | 2.  Undisputed. |
| 3.  Ms. Hill started applying JBP in Kansas as a young lady and continued to do so until she was diagnosed with ovarian cancer. | 3.  For the purposes of this Motion only, the J&J Defendants do not dispute that Ms. Hill alleges that she started applying JBP in Kansas as a young lady and continued to do so until she was diagnosed with ovarian cancer. |
| 4.  In August of 2016, Ms. Hill first discovered the risks associated with exposure to talcum powder and ovarian cancer. | 4.  Disputed.  Ms. Hill testified that she first started looking for attorneys in August 2016.  (Shah Decl., Ex. A 22:18-20.) |
| 5.  Before August of 2016, Ms. Hill believed JBP and STS to be safe to use on her body and was never warned by J&J that their talc products could cause ovarian cancer. | 5.  For the purposes of this Motion only, the J&J Defendants do not dispute that prior to 2016, Ms. Hill alleges that she believed JBP and STS to be safe to use on her body and was never warned by J&J that their talc products could cause ovarian cancer. The J&J Defendants dispute that Ms. Hill first learned of the potential association in August of 2016.  Ms. Hill testified that her son told her about the attorney advertisement in 2016, but did not state the month.  (Brennan Decl., Ex. 6 23:9-21, 121:4-18.) |
| 6.  J&J made representations to Ms. Hill that its talcum powder was "pure" and natural. | 6.  Whether J&J made any representations to Ms. Hill is a legal conclusion and not proper under Local Rule 56.1(a). |

| PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS: | DEFENDANTS' RESPONSE[1]: |
|---|---|
| 7.  Those representations made her "feel safe and secure" because "it's, it's natural, it's good for you." | 7.  Whether J&J made any representations to Ms. Hill is a legal conclusion and not proper under Local Rule 56.1(a). |
| 8.  In fact, J&J sold Johnson's baby powder labeled as "gently absorb moisture, helping skin feel comfortable.  Our incredibly soft, hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief." | 8.  Undisputed. |
| 9.  The bottle of Shower-to-Shower tells consumers that the product causes "ultimate freshness" and "pampers your skin." | 9.  Undisputed. |
| 10.  Ms. Hill relied on these representations that talc was safe for use on the body. | 10.  Whether J&J made any representations to Ms. Hill and whether Ms. Hill relied on such representations are legal conclusions and not proper under Local Rule 56.1(a). |
| 11.  J&J has long been aware of the risk of ovarian cancer with talc products, and have long been aware that its talc products contain asbestos, yet it refused to warn about the products. | 11.  Disputed but not dispositive of this Motion.  Whether J&J has "long been aware" of the risk of ovarian cancer or that its talc products contain asbestos, as well as whether J&J "refused to warn" about the products are opinions, rather than facts, and, therefore, are not proper under Local Rule 56.1(a). |

| PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS: | DEFENDANTS' RESPONSE[1]: |
|---|---|
| 12.  In 1972, a report by the University of Minnesota alerted J&J to the presence of asbestos in STS. | 12.  Disputed but not dispositive of this Motion.  The cited document does not support this statement. |
| 13.  Early on, J&J determined it was critical to recommend its own testing technique before the FDA adopted "more sophisticated techniques with higher levels of sensitization." | 13.   Disputed as stated but not dispositive of this Motion.  The cited document does not support this statement. |
| 14.  It was important to J&J to keep the FDA from utilizing a "separation and isolation" technique using "concentration procedures" to detect asbestos because "there are many talcs on all markets which will be hard pressed in supporting purity claims." | 14.  Disputed as stated but not dispositive of this Motion.  The cited document does not support this statement. |
| 15.  J&J in its own testing "deliberately have not included a concentration technique as we felt it would not be in worldwide company interests to do this." | 15.  Disputed as stated but not dispositive of this Motion.  The cited document does not support this statement. |
| 16.  The FDA privately determined that J&J's testing techniques do "not offer much assurance that cosmetic talc are adequately tested for asbestos." | 16.  Disputed but not dispositive of this Motion.  The cited document does not support this statement. |

| PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS: | DEFENDANTS' RESPONSE[1]: |
|---|---|
| 17.  The FDA ultimately determined it lacked "the legal authority, the man power, and the money to adequately protect the public for potentially hazardous cosmetics" and was ultimately forced to rely on J&J to voluntarily implement its own inadequate testing techniques to determine the amount of asbestos. | 17.  Disputed but not dispositive of this Motion.  The cited document does not support this statement. |
| 18.  J&J's fraud in hiding the presence of asbestos by designing a purposefully inadequate testing system was first laid bare to the general public and a December 14, 2018 Reuters Article. | 18.  Disputed but not dispositive of this Motion.  Whether J&J committed any fraud is a legal conclusions and not proper under Local Rule 56.1(a). |
| 19.  In late 1997, J&J retained a toxicology consultant, Dr. Alfred Wehner, who candidly informed J&J that its claims about the safety of talc were fraudulent. | 19.  Disputed but not dispositive of this Motion.  Dr. Wehner's letter focuses on statements of the CTFA, not J&J. Additionally whether Dr. Wehner "candidly informed J&J that its claims about the safety of talc were fraudulent" is an opinion, rather than a fact, and, therefore, is not proper under Local Rule 56.1(a). |
| 20.  In an October 7, 2000, confidential memo J&J determined it would not "sh[y] away from a tough battle" and committed to an "unbending defense" of "the safety of talc's use in cosmetic products." | 20.  Disputed but not dispositive of this Motion.  The confidential memo was drafted by Eric Dezenhall and Elena Solovyov of Nichols Dezenhall, and is dated October 27, 2000.  (Shah Decl., Ex. M.) |

| PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS: | DEFENDANTS' RESPONSE[1]: |
|---|---|
| 21.  J&J continued to "vigorously defend" talc notwithstanding a safer alternative in cornstarch and despite pressure from gynecologists' "concerns about life" with the continued use of talcum powder. | 21.  Disputed but not dispositive of this Motion.  The confidential memo was drafted by Eric Dezenhall and Elena Solovyov of Nichols Dezenhall.  (Shah Decl., Ex. M.) |
| 22.  The strategy was to "maintain consumer confidence in cosmetics products that include talc," "prevent a consumer scare and to allow the continued marketing of these products." | 22.   Disputed as stated but not dispositive of this Motion.  The cited document does not support this statement. |
| 23.  On May 19, 2020, even as it pulled talc products from the U.S. market, J&J stated it will "continue to vigorously defend the product" and "its safety." | 23.  Undisputed. |
| 24.  On December 03, 2019, J&J issued a press release titled "Company Investigation Confirms No Asbestos in Johnson's Baby Powder." | 24.  Undisputed. |
| 25.  On April 27, 2020, J&J issued a press release that sought to cast doubt on this Court's *Daubert* Order noting that Plaintiffs' experts were deemed to have non-scientifically sound opinions. | 25.  The J&J defendants do not dispute that on April 27, 2020, J&J issued a press release noting that Plaintiffs' experts were deemed to have non-scientifically sound opinions.  Whether the J&J press release cast doubt on this Court's *Daubert* Order is an opinion, rather than a fact, and, therefore, is not proper under Local Rule 56.1(a). |

Dated: July 21, 2021                     Respectfully submitted,


                                         /s/ *Susan M. Sharko*
Brianna L. Silverstein                   Susan M. Sharko
FAEGRE DRINKER BIDDLE                    FAEGRE DRINKER BIDDLE
& REATH LLP                              & REATH LLP
*On the brief*                           600 Campus Drive
                                         Florham Park, New Jersey 07932
                                         Telephone:   973-549-7000
                                         Facsimile:   973-360-9831
                                         E-mail:  susan.sharko@faegredrinker.com

                                         John H. Beisner
                                         Jessica D. Miller
                                         SKADDEN, ARPS, SLATE,
                                         MEAGHER & FLOM LLP
                                         1440 New York Avenue, N.W.
                                         Washington, D.C. 20005
                                         Telephone: 202-371-7000

                                         *Attorneys for Defendants Johnson &*
                                         *Johnson and Johnson & Johnson Consumer*
                                         *Inc.*