UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

**IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**

MDL No. 2738 (FLW) (LHG)

**SPECIAL MASTER ORDER NO. 8 (DECIDING DEFENDANTS' REQUEST FOR RECONSIDERATION OF PORTIONS OF THE SPECIAL MASTER'S JULY 26, 2021 OPINION AND ORDER NO. 5 ADDRESSING PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PRIVILEGE ASSERTIONS)**

This matter is before the Special Master ("SM") on defendants' request for reconsideration of portions of the SM's July 26, 2021 Opinion and Order No. 5 ("Opinion") addressing plaintiffs' objections to defendants' privilege assertions. The SM did not receive any written opposition from plaintiffs and decided oral argument was not necessary. For the reasons to be discussed, defendants' request for reconsideration is denied in part and granted in part. Defendants' request is denied as to Tabs 61, 108, and 72. Defendants' request for reconsideration is granted as to Tab 103.

**BACKGROUND**

The background of this matter is set forth in the SM's Opinion, which is incorporated herein by reference. See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig., No. MDL 2738 (FLW) (LHG), 2021 WL 3144945 (D.N.J. July 26, 2021). Defendants challenge the SM's decision as to four (4) documents: Tabs 61, 108, 72, and 103. The SM will address each document separately after discussion of the basic principles guiding the SM's decision.

5599322v1

## LEGAL DISCUSSION

A timely motion for reconsideration requires a finding of at least one of the following factors: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the application at issue was decided; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). In the absence of new controlling law or previously unavailable evidence, a party seeking reconsideration must limit its arguments to legal and factual issues that were properly presented in the initial application, but which the moving party believes were "overlooked." See Bowers v. NCAA, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) ("[T]he initial motion is the 'main event,' not a 'tryout on the road' to a motion for reargument." (citation and quotation marks omitted); see also Polizzi Meats, Inc. v. Aetna Life & Cas. Co., 931 F. Supp. 328, 339 (D.N.J. 1996) ("[The reconsideration standard] explicitly invites counsel to draw the court's attention to decisions which may have been overlooked by the court, not those which were overlooked by counsel."). Accordingly, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, Inc. v. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 (D.N.J. 1992); see also Bowers, 130 F. Supp. 2d at 613 ("Only where matters were overlooked and which, if considered by the Court, might reasonably have resulted in a different conclusion, will the Court entertain such a motion."). Importantly, a motion for reconsideration is not an appropriate venue for a party to voice his or her disagreement with a court's reasoning or ultimate decision. In re Telfair, 745 F. Supp. 2d 536, 561 (D.N.J. 2010) (citing Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp., 996 F. Supp. 409, 442 (D.N.J. (1998)), aff'd in part, vacated in part sub nom. Telfair v. Off. of U.S. Att'y, 443 F. App'x

674 (3d Cir. 2011); see also Abramowitz v. Tropicana Atlantic City Corp., No. CV 15-1694 (JS), 2017 WL 11465995, at *2 (D.N.J. Sept. 29, 2017).

Although not specifically set forth, it appears defendants are arguing the SM made a clear error or overlooked relevant evidence. Importantly, even though defendants rely on new evidence to support their reconsideration request, they have not argued the new evidence was not available when the SM issued its Opinion.

   1.   Tab 61 (P2_JNJTALC_000000768)

This is a March 14, 1994 memorandum authored by defendants' Associate Director of Research & Development Catherine Christensen and sent to in-house litigation counsel John O'Shaughnessy enclosing "literature search results on talc" as well as pages "on talcosis" and references to "experts and consultants[.]" Defendants' request for reconsideration is denied for the same reasons set forth in the Opinion. Defendants have not satisfied their burden to show the information at issue was provided to render legal advice or was prepared in anticipation of litigation. The SM disagrees that defendants satisfied their burden via Christensen's statement that she "found references on experts and consultants that may be of interest to [O'Shaughnessy]." There is no indication that Christensen is referring to litigation experts and consultants rather than the myriad of other types of experts and consultants she likely encounters in her role as Associate Director of Research & Development. Therefore, the SM is not satisfied that the proof presented sufficiently supports defendants' requested inference. Although O'Shaughnessy was primarily a litigator, the record shows that he was involved in other talc-related undertakings that did not necessarily relate to specific talc litigation. Thus, it is reasonable to assume or infer that, on occasion, he received information about general talc/asbestos experts and consultants apart from those used in litigation. Although not specifically stated, it appears defendants are arguing the SM

overlooked Christensen's statement. To the contrary, this was explicitly considered but discounted for the reasons explained.

For the same reasons already discussed, the SM does not afford any weight to defendants' references to documents and arguments that were not previously presented and instead raised in the instant application for the first time. The new references were not overlooked since they were not previously cited. As noted in Summerfield v. Equifax Information Services, 264 F.R.D. 133, 145 (D.N.J. 2009), the word "overlooked" is the operative term in the reconsideration standard of review and has been interpreted consistently by referring to facts and legal arguments properly presented when the application on which reconsideration is sought was originally decided. A request for reconsideration is not an opportunity to raise matters that could have been raised before the original decision was rendered. See Bowers, 130 F. Supp. 2d at 613. Reconsideration is not appropriate "as a means of having a second bite at the proverbial apple." U.S. v. DeLaurentis, 83 F. Supp. 2d 455, 474 n.2 (D.N.J. 2000), vacated by 230 F. 3d 659 (3d Cir. 2000).

To the extent defendants argue it is inequitable to discount their new evidence, the SM disagrees. Perhaps most importantly, defendants should not be concerned that the SM's decision sets forth a substantive precedent that will result in a dispositive ruling or waiver as to other alleged privileged documents. The SM is not ruling that defendants cannot satisfy their burden if they provide timely competent proof to support their privilege assertions. Rather, the SM's ruling is based on defendants' failure to satisfy their burden of proof here. Defendants are sophisticated parties who should have foreseen what was needed to support their privilege objections. In addition, defendants have not argued that the "new" information they rely upon was not previously available at the time of their initial application. Also, in order to bring this litigation to a close, the

record must be closed at some point in time or motion-practice and discovery disputes will continue indefinitely.

    2.    <u>Tab 108 (P2_JNJTALC_000000774)</u>

This is a March 3, 1994 memo from JJCI Medical Services Manager Nancy Musco to O'Shaughnessy listing "contacts as we discussed." Defendants' request for reconsideration is denied for the same reasons set forth in the Opinion. Defendants' memo does not explicitly or implicitly indicate that the requested information was provided so that O'Shaughnessy could provide legal advice. Defendants rely on new evidence to support their positions that the SM made an error or overlooked evidence when it made its decision. For the reasons already discussed, the SM discounts defendants' new evidence. The SM could not have overlooked the cited arguments and evidence since they were not previously presented.

The SM also disagrees with defendants' argument that the SM upheld defendants' claims of protection as to other "similar" documents. To the contrary, the SM found that defendants satisfied their burden of proof as to the documents. Tab 54 specifically mentions information provided to O'Shaughnessy for litigation, Tab 10 directly requests information needed by "legal team … for a case" they are working on, Tab 9 provides information for answers to interrogatories in an active case, Tab 11 unambiguously refers to a report from "outside legal counsel," and Tab 22 clearly discusses "legal considerations" and potential litigation. Tab 108 does not contain similar language and is therefore distinguishable.

    3.    <u>Tab 72 (P2_JNJTALC_000006866)</u>

This document contains a series of August 2018 emails regarding a draft letter to *The New York Times* that defendants' outside counsel wrote following an in-person meeting with a *Times* reporter. For the same reasons set forth in its Opinion, the SM finds this document is not protected

and, therefore, denies defendants' request for reconsideration.  This document does not set forth any legal analysis; rather, it merely summarizes facts already shared with the newspaper.  The draft email itself confirms as much, stating, "we wanted to set down for you a recap of the key facts we shared yesterday."  It then goes on to summarize the information discussed at the meeting in a fair amount of detail.  Neither the attorney-client privilege nor the work-product doctrine protects facts that defendants shared with the *Times*.  See, e.g., In re Hum. Tissue Prod. Liab. Litig., 255 F.R.D. 151, 156 (D.N.J. 2008), aff'd, No. CIV. 06-135, 2009 WL 1097671 (D.N.J. Apr. 23, 2009) ("The attorney-client privilege is limited to communications—not underlying facts."); Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 422 (D.N.J. 2009) ("Underlying facts are not protected by the work-product doctrine.").

Another reason why Tab 72 is not protected is because the attorney-client privilege only protects communications expected or intended to be confidential. See, e.g., O'Boyle v. Borough of Longport, 94 A.3d 299, 309 (N.J. 2014).  The information that defendants' counsel shared with the *Times* is plainly not confidential.  In fact, the opposite is true since defendants likely hoped their version of the facts would be published.

The SM also disagrees with defendants that Tab 72 is work-product.  It is not the case that all statements regarding topics generally implicated in litigation are work-product.  Otherwise, all of defendants' statements regarding talc litigation would be protected, which is plainly not the case. The SM also discounts defendants' attempted analogy to the SM's rulings regarding draft press releases.  The draft email to the *Times* reporter is materially different from defendants' press releases since no facts had to be checked in defendants' email.  As set forth in the text of the draft email itself, the draft merely summarizes facts that were already relayed to the *Times*.

Defendants' reliance on In re Premera Blue Cross Customer Data Security Breach Litigation, 329 F.R.D. 656 (D. Or. 2019) is misplaced. Defendants quote Premera as stating, "[a] draft document prepared by outside counsel and emailed to its client Premera for review is protected by the attorney-client privilege and work-product protection." Id. at 662. However, the opinion's very next sentence cautions, "[a]n exception to this would be if counsel is drafting the document as a delegatee of Premera's business function." Id. The opinion subsequently concludes that "drafts of newspaper articles, press releases, and notification letters, that are merely sent to or from attorneys without seeking or providing legal advice or input, are not privileged." Id. at 666. In fact, ruling on a prior privilege dispute between the parties, the court had already defined "business functions" to expressly include the drafting of documents relating to "media interactions," adding that "[c]ommunications relating to those drafts similarly are not automatically privileged . . . [unless] sent to or from counsel seeking or providing actual legal advice, such as about possible legal consequences of proposed text or an action being contemplated by Premera[.]" In re Premera Blue Cross Customer Data Sec. Breach Litig., 296 F. Supp. 3d 1230, 1244 (D. Or. 2017). Thus, defendants' citation to Premera is not persuasive.

4. Tab 103 (P2JNJTALC000000342)

This is an October 3, 1972 memo with an attachment providing information to defendants' in-house counsel regarding a proposed federal regulation banning "asbestos-form" particles in food. Defendants' request for reconsideration as to this document is granted. Thus, this document is protected and does not have to be produced. The SM initially ruled this document was discoverable because the document did "not explicitly or implicitly request legal advice and appear[s] to be routine business communications designed to update in-house counsel on a regulatory development." In re Johnson & Johnson Talcum Powder, 2021 WL 3144945, at *14.

However, when the SM issued this ruling, it overlooked the fact that the information was provided to legal counsel "to help in the formulation of [defendants'] comment on the proposal." Information and arguments provided to in-house counsel to assist in making a legal objection to a proposed regulation are protected by the attorney-client privilege. Thus, defendants' privilege objection to producing this document is sustained.

## ORDER

Accordingly, for all the forgoing reasons it is hereby ORDERED this 17th day of August, that defendants' application for reconsideration of the SM's July 26, 2021 Opinion and Order is DENIED in part and GRANTED in part. The application is DENIED as to Tabs 61, 108, and 72, which defendants shall produce forthwith. The application is GRANTED as to Tab 103.

IT IS SO ORDERED.


Dated:  August 17, 2021                    By:  s/ Joel Schneider
                                                SPECIAL MASTER
                                                HON. JOEL SCHNEIDER (RET.)