August 27, 2021

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Docket No. 3:16-md-2738-FLW-LHG

_____

IN RE:

JOHNSON & JOHNSON TALCUM          ORAL ARGUMENT AND
POWDER PRODUCTS MARKETING,        ORAL OPINION RE:
SALES PRACTICES AND PRODUCTS      DEFENDANTS'
LIABILITY LITIGATION              APPLICATION FOR
                                  PLAINTIFFS' EXPERTS'
                                  DOCUMENTS VIA
                                  REMOTE ZOOM
                                  VIDEOCONFERENCE


_____


          *      *      *      *

        Friday, August 27, 2021

          *      *      *      *


BEFORE:  SPECIAL MASTER JOEL SCHNEIDER, USMJ,
RETIRED
         jschneider@mmwr.com
         856-488-7797




        MASTROIANNI & FORMAROLI, INC.

Certified Court Reporting & Videoconferencing

        515 South White Horse Pike

        Audubon, New Jersey 08106

          856-546-1100

DocuSign Envelope ID: E1736FB6-F7B1-4FAC-A76A-A1010B842074

August 27, 2021

Page 2

1

2

3

4

5                    Transcript of proceedings in the

6    above matter taken stenographically by

7    Sharon M. Vance, Certified Court Reporter, license

8    number 30X100211300, Notary Public of the State of

9    New Jersey and the Commonwealth of Pennsylvania, VIA

10   ZOOM REMOTE VIDEOCONFERENCE, commencing at 9:00 a.m.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: E1736FD6-F781-4FAC-A76A-A10A9B842074

August 27, 2021

Page 3

```
 1
       A P P E A R A N C E S:
 2

 3

              MOTLEY RICE, LLC
 4            BY:  DANIEL R. LAPINSKI, ESQUIRE
              210 LAKE DRIVE EAST - SUITE 101
 5            CHERRY HILL, NEW JERSEY 08002
              856-667-0500
 6            FAX - 856-667-5133
              800-768-4026
 7            dlapinski@motleyrice.com
              ATTORNEYS FOR THE PLAINTIFFS
 8

 9
              ASHCRAFT & GEREL, LLP
10            BY:  MICHELLE A. PARFITT, ESQUIRE
                 - and -
11            BY:  PATRICK LYONS, ESQUIRE
              1825 K STREET, NW
12            WASHINGTON, DC 2006
              800-674-9725
13            202-759-7648
              mparfitt@ashcraftlaw.com
14            ATTORNEYS FOR THE PLAINTIFFS

15

16            LEVIN, SEDRAN & BERMAN, LLP
              BY:  LAWRENCE S. BERMAN, ESQUIRE
17            510 WALNUT STREET
              SUITE 500
18            PHILADELPHIA, PENNSYLVANIA 19106-3697
              877-882-1011
19            215-592-1500
              FAX - 215-592-4663
20            lberman@lfsblaw.com
              ATTORNEYS FOR THE PLAINTIFFS
21

22

23

24

25
```

DocuSign Envelope ID: E1736EB6-F7B1-4FAC-A76A-A10A0B842074

August 27, 2021

Page 4

```
 1

 2
        FAEGRE DRINKER BIDDLE & REATH, LLP
 3      BY:  SUSAN M. SHARKO, ESQUIRE
        600 CAMPUS
 4      FLORHAM PARK, NEW JERSEY 07932
        DIRECT - 973-549-7350
 5      FAX - 973-360-9831
        susan.sharko@faegredrinker.com
 6      ATTORNEYS FOR THE DEFENDANT,
        JOHNSON & JOHNSON and JOHNSON & JOHNSON
 7      CONSUMER COMPANIES, INC.,
        now known as JOHNSON & JOHNSON CONSUMER, INC.
 8

 9
        SKADDEN ARPS, SLATE, MEAGHER & FLOM, LLP
10      BY:  JOHN H. BEISNER, ESQUIRE
        1440 NEW YORK AVENUE, NW
11      WASHINGTON, DC 20005
        202-371-7410
12      john.beisner@skadden.com
        richard.bernardo@skadden.com
13      ATTORNEYS FOR THE DEFENDANT,
        JOHNSON & JOHNSON and JOHNSON & JOHNSON
14      CONSUMER COMPANIES, INC.,
        now known as JOHNSON & JOHNSON CONSUMER, INC.
15

16

17

18   A L S O   P R E S E N T:

19

20      MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
        BY:  RACHEL L. GOODMAN, ESQUIRE
21      1735 MARKET STREET
        21st FLOOR
22      PHILADELPHIA, PENNSYLVANIA 19103-7505
        215-772-7411
23      FAX - 215-772-7620
        rgoodman@mmwr.com
24

25
```

DocuSign Envelope ID: E1736FB6-F781-4FAC-A76A-A1040B842074

August 27, 2021

Page 5

1          SPECIAL MASTER SCHNEIDER:  So we are

2    on the record in the Talc MDL.  Why don't we just

3    get the appearances starting with the Plaintiffs.

4          MS. PARFITT:  Michelle Parfitt,

5    Counsel for the Plaintiff.

6          MR. LAPINSKI:  Good morning, Your

7    Honor.  Daniel Lapinski on behalf of the Plaintiffs.

8          MS. SHARKO:  Susan Sharko from Faegre

9    Drinker for the Johnson & Johnson Defendants.

10         SPECIAL MASTER SCHNEIDER:  So we're

11   here for oral argument on Defendants' August 20, '21

12   application.  I received the parties' papers.  I've

13   reviewed them.  I think I'm familiar with the

14   issues, although I have a couple of questions.

15         What I anticipate happening, barring

16   unforeseen circumstances, is, after oral argument,

17   I'll read the Special Master's opinion into the

18   record to be confirmed in a Court Order.  So, expect

19   to leave the Zoom, barring unforeseen circumstances,

20   with rulings on the specific disputes at issue.

21         I think a good place to start is

22   Defendants' August 20 Letter.  Let's just go down

23   those issues one by one.  If one issue or another is

24   moot, that's great, and we'll just move on.

25         (Whereupon, Mr. Lyons enters the

DocuSign Envelope ID: E1736FD6-F781-4FAC-A76A-A10A9B842074

August 27, 2021

Page 6

 1   proceedings.)

 2              SPECIAL MASTER SCHNEIDER:  So Miss

 3   Sharko, let me turn the floor over to you.  I have

 4   your letter in front of me, and why don't we just

 5   start with the first issue.

 6              MS. SHARKO:  Thank you, Judge.

 7              Let me get the letter opened up.

 8              So, the first issue is how far back do

 9   the requests go.  And I don't know that there's any

10   real dispute here, or should be a real dispute.  If

11   the documents exist, and they existed prior to the

12   depositions -- the last round of depositions, and

13   they weren't produced, they need to be produced now.

14   We're not asking that things be produced again.

15              (Whereupon, Mr. Berman enters the

16   proceedings.)

17              MS. SHARKO:  And it's hard for me to

18   believe that the Plaintiffs would disagree on that

19   point.

20              Should I move on to Issue No. 2?

21              SPECIAL MASTER SCHNEIDER:  Let's do

22   one issue at a time.  Let's see if there's any

23   opposition now.

24              MS. PARFITT:  Your Honor, the question

25   I think came whether or not there was this arbitrary

DocuSign Envelope ID: E17365D6-F7B1-4FAC-A76A-A10A9B842074

August 27, 2021

```
 1    timeline with regard to request of information of

 2    the witnesses.  And Your Honor was very clear in His

 3    Order that what we would not do is go back in time

 4    and re-review foundational questions, et cetera.  If

 5    it happened, if the -- they had an opportunity over

 6    seven hours to take the depositions in real time.

 7    Certainly if there is something that was asked about

 8    during those earlier depositions we didn't turn over

 9    and in some discovery fashion they know about that

10    or they've learned that, then that seems to make

11    some sense.  We're not using an arbitrary timeline

12    is what's suggested.

13              What we're arguing about is there

14    shouldn't be a second opportunity to go back and

15    rediscover from the beginning to the end new

16    information.  They had adequate time to make a full

17    inquiry, and I think that's where we're going.

18              And we're seeing it a bit -- a very

19    limited amount; I want to be fair about that -- in

20    these depositions.  We're now on the third.  The

21    requests that -- and discovery that's happening is

22    using a basis that 'I need to re-ask questions as a

23    foundational matter to ask the new questions.'  And,

24    in essence, we are going back to information that

25    could have been inquired about at the time of the
```

DocuSign Envelope ID: E1736FB6-F781-4FAC-A76A-A1040B842074

August 27, 2021

Page 8

```
 1   first deposition, but as a rule -- as a general
 2   rule, as long as it's not an abusive use of the
 3   process, then I don't think the Plaintiffs have a
 4   problem, but I don't think these depositions were
 5   designed as re-do's.  They were designed for new
 6   information, and that we can all agree upon.
 7               SPECIAL MASTER SCHNEIDER:  Okay.  I
 8   don't think we need to dwell on this.  You were
 9   talking about deposition questions, Plaintiff, but I
10   think for the moment the issue before the Special
11   Master is the documents.
12               So, Miss Sharko, let's move on to
13   Issue No. 2.
14               MS. SHARKO:  Okay.  Thank you.
15               It is about the documents, and Dr.
16   Godleski was not an MDL Daubert expert.  So, while
17   he is very experienced in the Talc litigation, he's
18   not been part of the MDL to date.
19               So, Issue No. 2 are documents related
20   to peer review; peer review of the paper that Dr.
21   Smith-Bindman wrote and is now undergoing peer
22   review; peer review of the papers that Dr. Godleski
23   has published, so peer review is complete; and
24   peer review --
25               SPECIAL MASTER SCHNEIDER:  What
```

DocuSign Envelope ID: E1736FB6-F7B1-4FAC-A76A-A101QB842074

August 27, 2021

Page 9

1   precisely does peer review mean?

2              MS. SHARKO:  So peer review is when

3   you want to publish a paper in a journal, the

4   journal takes the manuscript, the draft that's

5   submitted, and sends it out to experts in the field

6   and asks them to review it, almost always

7   anonymously, and what --

8              SPECIAL MASTER SCHNEIDER:  And what

9   are you -- go ahead.

10             MS. SHARKO:  They send back comments

11  that go to the journal and the author.  And then

12  generally, if the comments are favorable and the

13  journal is interested, the author is given an

14  opportunity to review and resubmit.

15             SPECIAL MASTER SCHNEIDER:  So, you

16  answered my question.  So, if there are comments,

17  they would go to Dr. Godleski.

18             MS. SHARKO:  Yes --

19             MS. PARFITT:  Not necessarily.

20             MS. SHARKO:  Just please let me

21  finish.

22             MS. PARFITT:  I'm sorry, Susan.

23             MS. SHARKO:  Yes, of course.

24             No problem.

25             And what we found, for example, with

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

```
 1    Dr. Saed and the last publication, which was the

 2    subject of extensive testimony in the MDL Daubert

 3    Hearing, is sometimes the peer review comments are

 4    very pointed and sometimes they're very negative.

 5                    And the peer review comments that Dr.

 6    Saed got, the first two -- maybe two times he tried

 7    to get his experiment published were used as

 8    exhibits extensively in the Daubert Hearing, and I

 9    think they might be quoted in Chief Judge Wolfson's

10    opinion, although I don't recall that.  And so we'd

11    like to have those documents.  And we will agree to

12    put them under an "Attorney's Eyes Only" or whatever

13    type of protective order the Plaintiff wants.

14                    I mean, after all, Judge, we turned

15    over the ingredient list, the formula, for Johnson's

16    Baby Powder -- that's like the formula for Coke --

17    to the Plaintiffs.  And we'll honor that protective

18    order.  There is absolutely no reason to believe the

19    scurrilous or static in the Plaintiff's brief about,

20    you know, we're going to go out and do things to

21    interfere in the peer review process.  We're not,

22    but a protective order solves that issue.

23                    SPECIAL MASTER SCHNEIDER:  So each of

24    these three experts, do they currently have articles

25    out for peer review?
```

DocuSign Envelope ID: 51F36FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

 1          In other words, let me be more

 2   precise.  Have Defendants identified the specific

 3   articles that are out for peer review that they want

 4   the comments about?

 5          MS. SHARKO:  Yes.  Those are the

 6   subject of our Request For Production.  The Request

 7   For Production -- other than one catchall request

 8   about Health Canada and the FDA, the Request For

 9   Production are laser focused on the study that Dr.

10   Smith-Bindman did recently and is now trying to get

11   published that she relies on for the basis for her

12   opinion; Dr. Godleski's papers -- I think there's

13   four of them -- have been published, he relies

14   extensively on them in his expert report; and Dr.

15   Saed has had an abstract or a short version of his

16   experiment published, and there would presumably be

17   peer review for that.  And now, as I understand it,

18   he's trying to get the abstract -- a paper published

19   out of that abstract, and there may be peer review

20   for that.  And every single one of the Plaintiffs'

21   experts relies on that abstract by Dr. Saed.  They

22   all cite it.  The epidemiologist cite it.  The

23   Gynocs cite it.  Everybody relies on that.

24          How many of these documents there are,

25   how many journals the documents have been submitted

DocuSign Envelope ID: 51736FD6-57B1-4EAC-A76A-A1019B842074

August 27, 2021

1    to, there's been no privilege log produced at all,

2    which is another problem here.  So, I can't tell you

3    we're talking about seven pieces of peer review or

4    twenty-five pieces of peer review, but that's the

5    argument in a nutshell.  And the Case Law supports

6    that.  We cited that and discussed that in our

7    Brief, which you have.

8                    SPECIAL MASTER SCHNEIDER:  The

9    specific items that you're inquiring about, I take

10   it that's what's in the definition of study and

11   articles in the Requests that have been served?

12                   MS. SHARKO:  Well, we would like all

13   the documents related to these studies.  We want the

14   drafts.  We want the peer review for Dr. Saed and

15   Dr. Smith-Bindman, and really, for all of them we

16   want the raw data.  We want everything.

17                   And I gather -- and I know Ms. Parfitt

18   will correct me if I'm wrong, but I gather that as

19   to Dr. Saed, they're willing to produce everything

20   but the peer review.

21                   As to Dr. Godleski, the claim is that

22   the documents don't exist or they're too hard to

23   collect, but, again, there's no certification by Dr.

24   Godleski, no affidavit or anything like that.  And

25   it seems unfair that we would have to wait until his

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 13

```
 1    deposition.  I appreciate that we get two days with
 2    Dr. Godleski, but those two days are intended to
 3    cover his opinions on six different plaintiffs.
 4    There's a lot to cover there apart from his general
 5    opinions.
 6              And then as to Dr. Smith-Bindman, I'm
 7    not sure if the Plaintiffs are agreeing to produce
 8    everything but the peer review or if their position
 9    is they won't produce anything until peer review is
10    complete.  I suspect it's the latter, that nothing
11    will be produced, which, again, the woman is going
12    to rely on this study for her expert opinion.  She
13    makes that clear in her report.  And how can we take
14    a deposition of her when we don't have the
15    manuscript, we don't have the peer review, we don't
16    have the analysis of the underlying data.
17              And while she did a review of
18    epidemiology studies the last time around for her
19    MDL opinion, her Daubert opinion, this time she says
20    clearly in her report this is a new re-analysis that
21    she's done.  She used new people at the University,
22    new colleagues, she used new techniques, and she
23    wrote it up.  And she tells us what her conclusion
24    is, but we have no way to test that conclusion.  We
25    can't kick the tires.  We can't query the data.  We
```

DocuSign Envelope ID: 51736FD6-57B1-4FAC-A76A-A1019B842074

August 27, 2021

Page 14

1    can do nothing because she hasn't supplied it.

2              SPECIAL MASTER SCHNEIDER:  One more

3    question, then we'll turn it over to the Plaintiffs.

4              With regard to these three experts,

5    did I understand that maybe two of them, the

6    articles or studies in question have already been

7    peer reviewed, it'S completed, published, and one is

8    currently under review or are they all currently

9    under review?

10             MS. SHARKO:  So, Dr. Godleski is done.

11   His papers are published and we have the published

12   versions.

13             With Dr. Smith-Bindman, we have

14   nothing other than what she says in her expert

15   report, and we do understand that that's subject to

16   peer review.

17             With Dr. Saed, an abstract has been

18   published.

19             And an abstract, Judge, you know in a

20   published opinion there's like the little summary up

21   front --

22             SPECIAL MASTER SCHNEIDER:  Right.

23             MS. SHARKO:  -- and then the whole

24   opinion?

25             The abstract is like a little summary

DocuSign Envelope ID: 51736FD6-57B1-4EAC-A76A-A1019B842074

August 27, 2021

Page 15

1    up front, so, we have that.  We don't have the peer

2    review and we don't have any of the underlying

3    documents for it.

4                    SPECIAL MASTER SCHNEIDER:  Okay,

5    Plaintiff, let me turn the floor over to you.

6                    MS. PARFITT:  Thank you.

7                    And Your Honor, I'm going to do this

8    in parts.  First I'm going to take generally what

9    our disagreements are broadly that go across all the

10   experts and then I'll probably address Smith-Bindman

11   specifically and Dr. Godleski, and Dan I know will

12   be talking about Dr. Saed as he's worked closely

13   with him.

14                    But, generally, where the issue arises

15   is, we've gotten -- Your Honor identified it -- are

16   matters already peer reviewed?  Are matters part of

17   an active or anticipated peer review process?  And

18   they are very different and very distinct processes.

19                    One is that the article has been

20   submitted.  The peer review process has occurred.

21   There are comments that are sent to the authors.

22                    And importantly, not all authors get

23   these comments.  What happens is, there's usually a

24   corresponding author, and the peer review process

25   and the comment and the editorial about the

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

1  submission usually goes to that corresponding

2  author.  So, you may be lead author, but not

3  necessarily corresponding author, and this will

4  become important as we go through the discussion.

5           But an issue that arises for us is we

6  have a situation where the Defendants are asking

7  that our expert submit any and all editorial

8  comments, reviews, et cetera, with regard to an

9  ongoing process.

10           You might submit it to the British

11  Medical Journal.  They may have comment about it and

12  say at this point in time, because of X, Y and Z, do

13  a redo or add this material, but it's not accepted.

14  Then you go to another journal, and that can happen.

15           And why is it important that that

16  information not be out in the public arena?  Because

17  the process is continuing.  Whether or not an

18  article is then published could be influenced

19  greatly by the fact that you have the new reviewing

20  journal perhaps having access to these other

21  comments and that could very well influence.

22           Miss Sharko says, you know, what is

23  the big deal here?  We'll put it under protective

24  order.  My question is, why do you want it then at

25  this stage?  What useful purpose?

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 17

```
 1                      The useful purpose, I suspect, is that
 2    when those individuals are then in deposition
 3    they're going to be asked about those comments.  So
 4    now you have information -- unless the entire
 5    deposition is then sealed, it becomes part of the
 6    public read or it's used for purpose of
 7    cross-examination.
 8                      And the process is still ongoing.
 9    It's a significant process.  It is a very important
10    process to these authors.  And so to interfere with
11    a rather private process where you have the editors
12    feeling free to be truthful and critique
13    something -- and it's not always a rejection.  It
14    just may be a comment to do something different with
15    it, a question they have that perhaps the authors
16    have not considered.
17                      So, I think there is a very, very
18    significant difference between what is already out
19    there -- and not that we wouldn't object that they
20    aren't entitled to every last piece of raw data as
21    it pertains to even a published peer reviewed
22    article, but clearly as it pertains to someone like
23    Dr. Smith-Bindman.  Her article is currently in
24    process, and it's a serious process and it could
25    have great impact to whether or not that information
```

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 18

1    is ever then published.  So, that's one issue and I

2    think one issue that we need to address as to

3    vis-a-vis Dr. Smith-Bindman.

4              With regard to Dr. Godleski, you'll

5    see there are several requests about his

6    publications, and they have been peer reviewed and

7    that process has come to an end.  What the

8    Defendants are asking for are data, data with regard

9    to the individual subjects of those studies where --

10             SPECIAL MASTER SCHNEIDER:  I think

11   we're getting ahead of ourselves.

12             MS. PARFITT:  Okay.

13             SPECIAL MASTER SCHNEIDER:  I know the

14   issue you're talking about and that's a specific

15   request of Godleski.  I'd like to save that.

16             MS. PARFITT:  Right.

17             SPECIAL MASTER SCHNEIDER:  Now we're

18   just talking about the peer review issue.  We'll get

19   to that issue.

20             MS. PARFITT:  Very good.

21             Dan, if you want to add anything to

22   that, feel free on the general issue of the peer

23   review process.

24             MR. LAPINSKI:  No, the general issue

25   of the peer review process, I don't have anything to

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 19

1   add.  I think it pertains equally across the board

2   to all three of the experts that we're talking

3   about.

4                    SPECIAL MASTER SCHNEIDER:  The floor

5   is still your's.

6                    MS. PARFITT:  Okay.

7                    So as to that information, that's

8   where the parties really disagree.  I think that's

9   where it breaks down and this is where we're

10  struggling because this peer review process happens

11  to be a very important issue to us.

12                   So, again, as it pertains to

13  Smith-Bindman we have asked that the Court keep that

14  information, not allow the Defendants to obtain that

15  information at this point in time.  It will be

16  published.  Hopefully it will be published, at which

17  time they will have access to that kinds of

18  information.

19                   We have in the past where there's been

20  a peer review article, that those comments had been

21  obtained either directly from the author or from a

22  coauthor.  Because, again, be mindful of the fact

23  that coauthors sometimes have the information but

24  not one of the authors and I can't make a

25  representation to the Court that all that

DocuSign Envelope ID: 51F36FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 20

1  information lies with Dr. Smith-Bindman.  In fact,

2  it does not.  So sometimes you have to go to a

3  co-author.  You go to a third party to obtain that

4  information.  At times they've gone to the actual

5  journal editors, and then they take whatever

6  position they wish to take.

7            But I think the Court needs to be

8  mindful of what a private process this is.  It's

9  instituted this way for a purpose, and that is so

10  that you're not getting information out there to the

11  general public while something is in progress

12  because changes can be made.  And they're good

13  changes at times.  This isn't just it's a lousy

14  paper and we're not going to publish it.

15  Oftentimes, would you make an adjustment?  Would you

16  consider this data?  Resubmit it.  Nothing bad, but

17  it has to happen in a more insular environment and

18  it is not out there for the public consumption, at

19  least at this stage.

20            So, at that point I think that's

21  probably the overarching issue on where the parties

22  are just not having a meeting of the minds.

23            And as far as the Case Law, there

24  was --

25            SPECIAL MASTER SCHNEIDER:  Can I ask

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 21

1    you one question?

2                    MS. PARFITT:  Yes.

3                    SPECIAL MASTER SCHNEIDER:  Let's

4    assume hypothetically there's a comment, the comment

5    is not sent directly to the Doctor, but perhaps it's

6    sent to a co-author or the publication, does the

7    Doctor have the right to ask his or her co-author or

8    the publication to send her all comments that they

9    received because she would like to see them, even

10   though they weren't sent to her directly?

11                   MS. PARFITT:  I'm certain that that

12   can happen.  I can't imagine an author or

13   co-author -- all of them have access to the

14   information.  I'm just saying as a request exists

15   directly to a particular person, it may not be a

16   direct linear request.  But candidly, Your Honor,

17   I'm sure that happens.

18                   It makes sense to me that if you're

19   writing a paper and an editorial board has a comment

20   about a paper that you're a part of that you can ask

21   for that, but the point I was making, it's not

22   always in the possession of one of the authors who

23   has contributed to it.

24                   SPECIAL MASTER SCHNEIDER:  Let me just

25   add --

DocuSign Envelope ID: 51736FD6-57B1-4EAC-A76A-A1019B842074

August 27, 2021

 1          MS. PARFITT:  Please.

 2          SPECIAL MASTER SCHNEIDER:  I'm getting

 3    ahead of myself, but what you're going to hear is

 4    that -- and it's no surprise -- simply because a

 5    document is not in physical possession of one of

 6    these experts does not mean that that absolves them

 7    from their duty to produce the document.  The legal

 8    standard is possession, custody or control.

 9          And that applies to both sides, not

10    just these experts.  It applies to the Plaintiffs

11    and it applies to the Defendant.

12          So, if one of these experts, although

13    they don't have physical possession of a responsive

14    document, but they have the right to request a copy

15    of it, that's control within the meaning of the law

16    and there's a duty to produce that.

17          But I'm getting ahead of myself,

18    Plaintiff, but I think this was an opportune time to

19    mention that because as we go further in this

20    discussion, I suspect that issue may come up again.

21          So now I think you were going to talk

22    about the second part of this peer review issue.

23          MS. PARFITT:  And if I can just

24    respond to that, this is not gamesmanship over here

25    with the Plaintiffs.  We are not trying to -- if

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 23

1  something is legitimately to be produced, we are not

2  trying to secret it away in different places, Your

3  Honor.

4           SPECIAL MASTER SCHNEIDER:  I don't

5  think so either.

6           MS. PARFITT:  We completely respect

7  that and understand what the law is.  I want to make

8  clear on that.  That's not part of our process to

9  say, oh, she has it over here and her office is two

10  doors down and so Dr. Smith-Bindman can't -- and I

11  want to make that clear.  That is not -- it's a much

12  more significant issue quite frankly than that and

13  I'm not -- gamesmanship is not our -- is not what we

14  do.

15           And with respect to the Smith v. Dow

16  Chemical, that Case Law is not binding in your

17  Court.  And, frankly, the Order that Judge Pisano,

18  as I indicated in our papers of April 26, 2019, he

19  really didn't address this issue of peer review

20  process, in the process, part of an active or

21  anticipated peer review process.  So this is,

22  frankly, an issue that's distinct and really hasn't

23  been addressed, but is important.  It's important

24  because the remedy seems to be give it to the Court

25  for some type of -- or put it under some type of

DocuSign Envelope ID: 51F36FD6-57B1-4EAC-A76A-A1019B842074

August 27, 2021

Page 24

 1    protective order, but, again, the question I raise

 2    is, why do you need it then?  What are you going to

 3    do with it?  Are you going to cross-examine the

 4    person in a public place?  Are you going to use it

 5    for purposes of deposition?

 6                Let the process play out.  I think

 7    that's all we're asking.  It's a process that the

 8    medical and scientific community has set up and it's

 9    a rigorous process.  And it's good that they have it

10    because the science that gets out there in the

11    public is science that has been reviewed by other

12    scientists who are upstanding in their own fields,

13    who are getting to make comments so we don't put

14    junk science out there.  That it's actually a

15    rigorous science and a process where any particular

16    scientist can step back a little bit, consider what

17    has been asked of them and move forward.

18                Sometimes something is not accepted

19    for peer review just because it's a topic that so

20    many other people have written about.  The review

21    journal may simply say, very interesting, well done,

22    but there's a lot of that out there and it's just

23    not something we're going to put in our journal now.

24    It's not -- it's not really with the time right now.

25    For instance, you may not get a lot more CoVid

Page 25

1   articles on certain very specific issues because so

2   much has been written.  Not because they aren't

3   scientific, they aren't good, they aren't

4   meaningful, but because it's a subject matter that

5   has been -- has had a lot of other authors writing

6   about it.  So, I want to make that clear, too.  So,

7   peer review includes that.  That's a rejection

8   standard as well.

9              So with regard to turning over that

10  information, we're saying let the process play out.

11  It was designed as a process by the scientific

12  community.  Let it play out.  It will be hopefully

13  published and that process will be complete.  And

14  then, as we're saying with regard to other articles

15  that have been peer reviewed, we're now in a little

16  different place in time.

17              So, frankly, on that issue I don't

18  have much further --

19              SPECIAL MASTER SCHNEIDER:  Okay, I

20  think, really -- Miss Sharko, real quick.

21              MS. SHARKO:  Yeah, three quick points.

22              First of all, this is science

23  published by lawyers and science promulgated by

24  people who are expert witnesses and expert witnesses

25  who are going to rely on these papers.  That's an

Page 26

1   important distinction.

2              No. 2, all peer review comments go to

3   all the authors.  I'm sitting -- I'm making this

4   argument in a hotel room with my daughter who has

5   published, actually, a number of peer-reviewed

6   papers and she's sitting on the bed laughing

7   since -- about that because she's been through this

8   process and that's the experience.

9              And finally --

10             SPECIAL MASTER SCHNEIDER:  She must be

11  wondering why in the world this is what my mother

12  does for a living; right?

13             MS. SHARKO:  That's why none of my

14  four children are lawyers, Judge.

15             And lastly, why do we want it?  We

16  want it to explore and challenge the Plaintiffs'

17  opinions.  And if we use it -- if we use it in

18  deposition, obviously that portion of the deposition

19  will be sealed just like portions of Mr.

20  O'Shaughnessy -- the whole thing with Mr.

21  O'Shaughnessy were.  And if we get to trial and we

22  want to use it and it's still under peer review,

23  we'll deal with that then.  There's a lot of smart

24  people working on this.  They can figure out how to

25  do it.

DocuSign Envelope ID: 51736FD6-57B1-4EAC-A76A-A1019B842074

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 27

1            So, thank you.

2            SPECIAL MASTER SCHNEIDER:  Next issue.

3            MS. SHARKO:  Okay.  Next issue is --

4            SPECIAL MASTER SCHNEIDER:  I think the

5    bottom of Page 2, Dr. Smith-Bindman.  But the

6    Plaintiff hasn't raised that in their response, so I

7    wonder if that's a dispute.

8            MS. SHARKO:  Ms. Parfitt, I think

9    that's you.

10           MS. PARFITT:  I'm not sure what issue,

11   Your Honor, you're raising with regard --

12           SPECIAL MASTER SCHNEIDER:  I'm on the

13   bottom of Page 2 of Miss Sharko's August 20 Letter,

14   Dr. Smith-Bindman.  I did not see a response in

15   Plaintiffs' letter to that.

16           Is it fair to assume that since there

17   wasn't a response to that, there's no dispute?

18           MS. PARFITT:  That's right.  If you're

19   talking about the analysis -- in fact, I think today

20   Dr. Smith-Bindman is on the stand being questioned

21   about her analysis of regular use of talcum powder.

22   So, that's something that's being discussed by J&J

23   with Dr. Smith-Bindman today, so that's why we did

24   not address that issue.

25           SPECIAL MASTER SCHNEIDER:  Okay.

DocuSign Envelope ID: 51F36FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 28

 1              MS. SHARKO:  Wait.  We don't have the

 2    documents.  The documents haven't been produced and

 3    there's no privilege on it.

 4              So, are we going to get the documents?

 5    I mean, that's my question.

 6              I'd also -- the trial that Ms. Parfitt

 7    is talking about is ongoing in Philadelphia, and

 8    this information that we're talking about was not

 9    part of the Smith-Bindman Expert Report that was

10    used in Philadelphia so I don't even know if they're

11    going to be allowed to use that on either side.

12              SPECIAL MASTER SCHNEIDER:  Miss

13    Sharko, could you identify specifically what it is

14    that the Defendants are requesting.

15              MS. SHARKO:  We're requesting all of

16    the documents that relate to this new analysis that

17    she did, that she registered with the PROSPERO

18    website as starting on November 13, 2019, and which

19    formed the basis of the manuscript that is

20    apparently out for peer review and the conclusions

21    that she relies on in her expert report.

22              SPECIAL MASTER SCHNEIDER:  Can you be

23    a little more specific about what you're requesting

24    other than all documents that relate to this

25    material.  That's pretty broad.

DocuSign Envelope ID: 51736FD6-57B1-4EAC-A76A-A1019B842074

August 27, 2021

Page 29

1                      What is it you want?

2                      MS. SHARKO:  I'm just opening the

3     document request.

4                      SPECIAL MASTER SCHNEIDER:  That's a

5     good idea.

6                      MS. SHARKO:  So, Document Request No.

7     1 is, All documents relating to any funding that she

8     got for the work -- she or her colleagues got for

9     the work.

10                     Document Request No. 2 is, All drafts,

11    edits and revisions of any reports, publications or

12    submissions of the study.

13                     Request No. 3 are, All communications

14    concerning the study, including -- this would

15    include the peer review, but would also include

16    communications between the authors of the study, the

17    people working on it, the E-mails back and forth

18    between Dr. Smith-Bindman and her coauthors, and the

19    people doing the data analysis or the data

20    collision, everybody who was working on the study,

21    and then communications with Health Canada or FDA

22    about the study.

23                     SPECIAL MASTER SCHNEIDER:  So maybe to

24    sort of summarize it, it's Document Requests 1, 2,

25    3.  Any other numbers?

DocuSign Envelope ID: 51736FD6 57B1 45AC A76A A1019B842074

August 27, 2021

Page 30

 1                    MS. SHARKO:  Four would be

 2    presentations about the study.

 3                    And then five I think is really the

 4    peer review.

 5                    Six are the qualifications of the

 6    people who are working on the study.

 7                    And seven are the documents related to

 8    the design and conduct of the study, and that's

 9    defined more specifically in seven and -- apparently

10    we misnumbered it so there's no No. 8.

11                    Oh, I see.  It's reversed here.

12                    No. 9 are the analyses of the study,

13    data and the summaries of that because this is an

14    epidemiological type study.  It's actually a -- it's

15    my understanding it's a meta-analysis.

16                    And then No. 8 relates to funding and

17    expenditures.

18                    SPECIAL MASTER SCHNEIDER:  Okay, so

19    Plaintiff, we'll deal with the peer review

20    separately --

21                    MS. PARFITT:  Sure, Judge.

22                    SPECIAL MASTER SCHNEIDER:  -- but

23    Defendants are requesting the documents in Document

24    Requests 1 to 9 regarding this study from Dr.

25    Smith-Bindman.  What is Plaintiffs' position?

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 31

1          MS. PARFITT:  All right.

2              First it may help to give context as

3     to what the study is.  Miss Sharko is correct.  It

4     is a new meta-analysis that she did looking at

5     regular use of talcum powder.  So, it is another

6     meta-analysis of the data.

7              The problem with some of the

8     Requests -- and we have indicated on many of these

9     that we will turn them over.  The question becomes

10    this:  Some of this is overlapping as to the peer

11    review.  By way of example, co-author communications

12    could be addressing communications that were

13    addressed to them, the authors, by the peer

14    reviewers.  It's not that clean.  They have to talk

15    about it in some fashion.  Sometimes those

16    discussions then are written communications.

17             So, by virtue of saying give me all

18    the communications with your co-investigators, you

19    may very well then move into this peer review

20    process that, again, is in process.  So, we are

21    not -- with regard to funding, there wasn't any so

22    we can say that.

23             With regard to a lot of this

24    information -- she didn't communicate with Health

25    Canada.  We'll say that.

DocuSign Envelope ID: 51F36FD6-57B1-4FAC-A76A-A1019B842074

August 27, 2021

1        There were no presentations, slide

2  presentations, or power points from this new study.

3  We can say that.

4        That type of information is

5  information that we aren't objecting to.  What our

6  overarching issue is, with regard to communications

7  of this peer review process in process, we can't

8  give that up.  That shouldn't be.  That should be --

9  again, regardless of the comments made by Miss

10  Sharko, that is -- should be protected information

11  until it's not.  And some of these Requests will

12  have us veer into these issues and we want to be

13  able to be complete and candid and thorough with our

14  responses, but I think it's important the Court

15  understand that some of those responses necessarily

16  get us into that territory.  So, again, we probably

17  have less disagreement then one would think.

18        It's not as if we're refusing to turn

19  over her CV.  They can have her CV.  And we will

20  have Dr. Smith-Bindman ask her coauthors for their

21  CVs.  That's not a heavy lift for us, nor would that

22  be -- why would we not produce that.  We're not

23  being -- again, this isn't gamesmanship.  This is a

24  serious matter.  These are serious Requests of them

25  and we're trying to be mindful of a process that we

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 33

```
 1   as -- bless you -- respect.
 2              SPECIAL MASTER SCHNEIDER:  Okay.  And
 3   I'll deal with the peer review issue when we wrap up
 4   and I issue my opinion.
 5              Back to Miss Sharko, I think we're up
 6   to Dr. Godleski, and why don't we go through each of
 7   the Requests one by one.
 8              MS. SHARKO:  Okay.  Thank you.
 9              So part of the problem is we don't
10   have a privilege log and we don't have any statement
11   by Dr. Godleski.  Request No. 1 seeks all the
12   documents relating to funding for the articles.
13              So, Dr. Godleski, as I understand it,
14   is retired and he operates out of his own personal
15   corporation and he does the studies through this
16   corporation.  These are studies that are not -- I
17   mean, money has to be spent to be done -- to do
18   these studies.  There's laboratory analyses.
19   There's review of pathology, et cetera.  Somebody
20   has to be paying for this and we want to know who.
21   We suspect that it's the Plaintiffs lawyers either
22   directly or indirectly.  And that's obviously very
23   important.
24              The disclosures in the journals are,
25   of course, limited to what the journal requirements
```

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 34

1    are for disclosures are, and, you know, they're very

2    vague.

3                One article just states, Support for

4    this study was provided by the authors.  Well, who

5    provided the money to the authors.

6                Another article says, Funding for the

7    research was provided through an NIH grant, the

8    authors and John Godleski, MD, PLLC.  So, who paid

9    John Godleski, MD, PLLC?  That's the funding issue.

10               And we've already been down this road

11   with Judge Pisano who ruled that funding is a

12   legitimate area for discovery.  What we found out

13   once we ultimately got the discovery from Dr. Saed

14   was that some of it did come from the Plaintiffs in

15   a very general way.

16               Request No. 2 --

17               SPECIAL MASTER SCHNEIDER:  Let's do

18   one at a time.

19               Plaintiff, No. 1.

20               MS. SHARKO:  Okay.

21               MS. PARFITT:  If I may respond, Dr.

22   Godleski has a corporation.  He is paid a salary as

23   well as the other scientists within that

24   corporation.  I spoke with Dr. Godleski personally,

25   because I wanted to be able to represent to this

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

1  Court that I have spoken to him, and I went through

2  these Requests one by one very specifically.

3              And I will represent to the Court that

4  with regard to Request No. 1, I was advised there

5  was no funding and there was no lawyer funding.  Is

6  Dr. Godleski paid for the review of blocks and

7  slides that he reviews in individual plaintiff

8  litigation cases yes, he is.

9              Does someone pay that bill?  Yes, the

10  Plaintiffs' attorney that represents that client.

11  Yes, he gets that money.

12              With regard to his articles and

13  research, that is something that the corporation --

14  there is no -- is paying for.  There is no other

15  source of funding, and least of which is the

16  Plaintiffs' funding.

17              So, that was an important request of

18  him.  They will have Dr. Godleski before them again

19  in the next few weeks.  They can ask that question

20  again.  If I have in any way been in err, they can

21  correct that.

22              But I knew and was hoping that we

23  would go through these individually, and, so, I did

24  speak with him and that is the response and I can't

25  make it look any other way.  There is a corporation

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 36

1    and the corporation does pay that.  I suspect --

2    Johnson & Johnson is a corporation and they pay

3    bills, too.  They write it out of their corporate

4    account.

5                  SPECIAL MASTER SCHNEIDER:  Okay.

6                  Request No. 2, Defendant.

7                  MS. SHARKO:  Request No. 2 seeks

8    drafts, edits and revisions of the articles, and the

9    Plaintiffs' position is that there are no such

10   documents.  It's hard for me to believe that you

11   would have no drafts of any of these articles that

12   were submitted to publication.  Nobody goes from

13   their fingertips on the keyboard to bold print in a

14   journal.

15                  If Dr. Godleski and his coauthors all

16   destroyed all the documents, then we probably have a

17   spoliation issue, but right now we don't have an

18   affidavit from Dr. Godleski.

19                  So, on some of these -- Miss Parfitt

20   made a lot of representations just now on funding.

21   She's made representations on drafts.  I, of course,

22   don't challenge Miss Parfitt's word.  I have no

23   reason to believe she's not telling the truth, but I

24   think we need this from Dr. Godleski in an affidavit

25   or a certification.  We shouldn't have to wait to

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 37

1   the deposition.  We should have that now.

2                  SPECIAL MASTER SCHNEIDER:  I think the

3   answer to this is you could cover this at Dr.

4   Godleski's deposition.  We're not going to require

5   him to provide an affidavit before his deposition.

6                  So Plaintiff, I don't know if there's

7   anything else to say.  Can we just move on to No. 3

8   then?

9                  MS. PARFITT:  Yes.

10                  SPECIAL MASTER SCHNEIDER:  So Miss

11  Sharko, No. 3.

12                  MS. SHARKO:  No. 3 is the peer review

13  question, communication --

14                  SPECIAL MASTER SCHNEIDER:  Okay.  That

15  will be covered separately in the Court's opinion.

16                  No. 4.

17                  MR. LAPINSKI:  Is Susan still there?

18                  MS. SHARKO:  Yeah.

19                  MS. PARFITT:  I think she -- Susan,

20  your picture froze, but you can hear us?

21                  MS. SHARKO:  Yes.  Yup.

22                  MS. PARFITT:  Okay.

23                  MS. SHARKO:  Okay.  Should I go on to

24  No. 4?

25                  SPECIAL MASTER SCHNEIDER:  Correct.

DocuSign Envelope ID: 51736FD6-57B1-4FAC-A76A-A4019B842074

August 27, 2021

Page 38

 1          MS. SHARKO:  Okay.

 2          No. 4 relates to presentations he's

 3   made.  Miss Parfitt's representation is there are no

 4   other presentations.  First it was there were none,

 5   but we know there was one.

 6          SPECIAL MASTER SCHNEIDER:  Okay.  This

 7   will be covered at the deposition as well.  So,

 8   that's the answer to that one.

 9          So, I need your help on seven, eight,

10   nine and ten, Miss Sharko.  These are the Requests I

11   need a little better understanding of what it is

12   you're requesting.

13          So, let's start with No. 7.

14          MS. SHARKO:  Okay.

15          These articles relate to the testing

16   analysis of pathology specimens.

17          SPECIAL MASTER SCHNEIDER:  How many

18   specimens?

19          MS. SHARKO:  Well, there are -- across

20   all the papers there are forty-four patients.  We

21   know that one of the forty-four was a plaintiff in

22   litigation and the specimens and the documents were

23   produced for that one individual, but we don't have

24   anything for the other forty-three.

25          SPECIAL MASTER SCHNEIDER:  Okay.  So,

DocuSign Envelope ID: 51F36FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 39

1   there are specimens of forty-three patients.  Is

2   there only one specimen per patient or more?

3                  MS. SHARKO:  I don't know the answer

4   to that.  I suspect that there could be more, but

5   it's not only the physical specimens, the tissue

6   blocks, but it will be the documents and notes

7   related that casting.

8                  SPECIAL MASTER SCHNEIDER:  And where

9   physically is this information?  Is it all in one

10  place or is it all over the country?

11                 MS. SHARKO:  I think Miss Parfitt

12  would have to answer that question.

13                 MS. PARFITT:  I would.  I didn't want

14  to interrupt.

15                 If I may, Your Honor, the issue is,

16  with regard to tissue blocks, you're absolutely

17  correct, whether it be slides or blocks, there are,

18  in many cases, are multiple multiples of those for a

19  particular patient.  What happens is, when they're

20  requested from a pathology lab, they are sent

21  usually directly from the pathology lab into Dr.

22  Godleski.  They are then to be returned.  We

23  actually have orders in place in this case with

24  regard to the processing and chain of custody of

25  this information.  So, he doesn't hold on to those

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 40

1    things.  That's in a litigation context and

2    that's -- the one person that Susan was indicating

3    is involved in the forty-four, we've given it to

4    them and then the specimens have been sent back.

5                    Similarly, though, with regard to

6    these other forty-three, Dr. Godleski doesn't hold

7    on to the slides and the blocks.  Hospitals are

8    really pretty particular about loaning that

9    information out.  So, he doesn't keep them.  He

10   doesn't even have his lab any more.  So, they go

11   back.  So, it's not a question of not wanting to

12   give.  It's a question of not having.

13                   And, again, Defendants can make a

14   fuller inquiry, more fulsome inquiry, of him

15   directly if I'm, again, not accurately representing,

16   which I'm trying to do.

17                   But he doesn't keep all this stuff,

18   because once he's looked at it and examined it, at

19   least as for slides and blocks, that can then be

20   returned to its original owner.

21                   And to the extent that there might be

22   some somewhere, he has since closed his lab at

23   Harvard, as Miss Sharko has indicated.  You know,

24   he's working in different places, so, you know,

25   that's -- the process would be to return that which

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 41

1    one has after one has used and examined and done the

2    type of experiments that they wish to.  So, that's

3    really with regard to the tissue and -- blocks and

4    tissue analysis.

5              SPECIAL MASTER SCHNEIDER:  So were

6    these sent back to different places, hospitals?

7              MS. PARFITT:  Different medical

8    facilities because a woman could have her pathology

9    that could come from different sources, yes.

10              SPECIAL MASTER SCHNEIDER:  So question

11   for you.

12              Don't worry, Miss Sharko, we'll come

13   back to you.

14              Can you hear us, Miss Sharko?  Your

15   video was frozen.

16              MS. SHARKO:  Yes.  Yes, I'm here.

17              SPECIAL MASTER SCHNEIDER:  Okay.

18              So, how did these forty-four specimens

19   come to be picked?  Did someone decide to send these

20   forty-four to Dr. Godleski?  Did he pick them out of

21   a hat?  Did he pick them out of a spreadsheet?

22              MS. PARFITT:  No.

23              SPECIAL MASTER SCHNEIDER:  How is it

24   that these forty-four got to him?

25              MS. PARFITT:  And I'm going to give

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A4019B842074

August 27, 2021

Page 42

1    you hopefully an educated guess.

2              These would be subjects where he had

3    slides available either through -- let's say, he was

4    working at Harvard and there were slides of ovarian

5    cancer he was able to obtain.

6              And, again, I don't want to be held --

7    this representation I am trying to give you by way

8    of example.  These are not litigation cases.  These

9    are slides that someone like Dr. Godleski as a

10   pathologist would have access to to study or could

11   gain access to --

12              SPECIAL MASTER SCHNEIDER:  Okay.

13              MS. PARFITT:  -- and then when he's

14   done with them, he sends them back.

15              (Whereupon, Miss Sharko has connection

16   issues and has left the proceedings.)

17              SPECIAL MASTER SCHNEIDER:  Does he

18   have a record, Plaintiff -- wait a minute.  We lost

19   Miss Sharko.  Let's wait until she gets back on the

20   line.

21              (Discussion off the record.)

22              MS. SHARKO:  Okay.  The last I heard,

23   Judge, was some questions about what happened with

24   the pathology and then I lost my connection.

25              SPECIAL MASTER SCHNEIDER:  We saw when

Page 43

1   you cut off so nothing went on after you cut off.

2                I was about to ask Plaintiff, does Dr.

3   Godleski have at least -- he may not have physical

4   possession of the specimens, but does he at least

5   have a record of what these forty-three specimens

6   are, and if Miss Sharko's client wanted to track

7   them down, who to go to?

8                MS. PARFITT:  And my representation

9   is, I don't know.  That is --

10               SPECIAL MASTER SCHNEIDER:  Fair

11  enough.  Fair enough.

12               MS. PARFITT:  I can make that inquiry.

13  It's very specific.  I can ask whether he does, or

14  he can be asked during his deposition.  I can't

15  answer that, Your Honor.  I don't know.

16               SPECIAL MASTER SCHNEIDER:  Miss Sharko

17  can cover that at his deposition if it's important

18  enough.

19               Okay.  Let's go to No. 8 then.

20               Miss Sharko?

21               MS. SHARKO:  No. 8 relates to the

22  funding of the studies, invoices and other financial

23  documentation relating work done for the article.

24  The Plaintiffs claim privilege.

25               SPECIAL MASTER SCHNEIDER:  Privilege?

DocuSign Envelope ID: 51736FD6-57B1-4EAC-A76A-A1019B842074

August 27, 2021

Page 44

1          MS. SHARKO:  And there's no privilege

2   log.

3          SPECIAL MASTER SCHNEIDER:  What

4   privilege?

5          MS. PARFITT:  I don't think -- I think

6   we put, objection, vague, overbroad, and we did say

7   protection, privileged communications between --

8   Your Honor, I can represent again that I don't have

9   any funding documents.  What I do have and what he

10  does have would be invoices for the review of

11  individual plaintiffs whose tissue he has looked at.

12          And we turned that over at every

13  plaintiffs' deposition he is asked that in advance

14  and he has at each and every opportunity turned that

15  information over.  We haven't withheld that.

16          I just don't have invoices for --

17  because I don't believe they exist, but, again, she

18  could make that inquiry at deposition of him.

19          SPECIAL MASTER SCHNEIDER:  Yeah, I

20  know you don't have those documents, but I

21  understand Defendants' request to seek documents

22  regarding who funded -- who paid for this study.

23  That's what Plaintiff -- I'm sorry, that's what

24  Defendants are asking for.

25          So, you don't have any responsive

Page 45

1    documents, fine.  Miss Sharko can cover this at the

2    Doctor's deposition.  If there any and who funded

3    them, he should expect to be asked those questions.

4              MS. PARFITT:  And Your Honor, I may do

5    this as well at the conclusion of this.  And my

6    first opportunity to speak to Dr. Godleski, I will

7    indicate to him that these questions have been

8    raised.  If I have in any way not answered them

9    appropriately, let me know and if you have something

10   that's different, I'll let the Court and Defendants

11   know.  But he'll be prepared to answer all of these.

12             MS. SHARKO:  One of the overarching

13   concerns here is they've looked at pathology

14   specimens for forty-four people.  Some of these

15   forty-four people are, in fact, plaintiffs in the

16   litigation.  They have to be.  We know that one is,

17   and we've gotten the material -- the documents

18   related to that one.  But what about the other

19   forty-three?

20             Just because Dr. Godleski hasn't been

21   disclosed as an expert in litigation, if he got the

22   pathology samples and the background material for

23   one of his study participants from a lawyer, I think

24   we're entitled to know that and have that

25   identified.  Not necessarily by name, but whether

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 46

1  that study participant was, in fact, referred by a

2  lawyer or is part of the litigation.  I mean, as the

3  Plaintiffs say at almost every hearing -- they

4  haven't said it at this hearing -- there's over

5  thirty-five thousand plaintiffs.

6              SPECIAL MASTER SCHNEIDER:  Well, Miss

7  Sharko, the information you just indicated you

8  requested, what request number is that encompassed

9  within?

10              MS. SHARKO:  That's within No. 7 and

11  No. 9.

12              No. 7 is the documents related to the

13  pathology specimens.  No. 9 are the pathology

14  specimens themselves.  And so when we were

15  discussing No. 7, we were focused in on the physical

16  specimens.

17              That's actually No. 9, and so because

18  of that, I'll pass on No. 9.

19              SPECIAL MASTER SCHNEIDER:  Okay.  No.

20  9 is the physical specimen.

21              Let's go back to No. 7, though.  I

22  mean, if one of the forty-four is a plaintiff, I

23  would think that you're entitled to -- one of the

24  forty-three is a plaintiff, you're entitled to know

25  that.  You don't at present know the identities of

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

 1   those forty-three?

 2            MS. SHARKO:  No, we do not, and we

 3   have no documents related to the analyses of those

 4   forty-three.

 5            There should be -- and I don't think

 6   there's any dispute about this.  There should be a

 7   stack of documents, notes, reports, things like

 8   that, on each -- on the analyses of the material for

 9   each individual person.  And if a person is a

10   plaintiff in litigation, produces a report by Dr.

11   Godleski, and Dr. Godleski is deposed, then we get

12   that package of materials.  And, so, we've gotten it

13   for one of the forty-four, but we don't have that

14   set of materials for the rest.

15            MS. PARFITT:  And if I may respond,

16   Your Honor, I mean, that's suggesting that they

17   are -- Miss Sharko seems to suggest that there are

18   other plaintiffs in that -- one -- she's just

19   guessing that.  We have one patient that she knows

20   about that happens to be a litigant.  Some folks

21   could have their tissue examined and not be a

22   litigant.  Just because Dr. Godleski's looked at

23   your tissue doesn't mean that you're a litigant in

24   this litigation.

25            So, again, she could make that inquiry

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 48

1   when he's there, but I -- but to turn over data,

2   confidential data, about someone who is not even a

3   plaintiff or may not be a plaintiff, he was --

4                SPECIAL MASTER SCHNEIDER:  I got it.

5                MS. PARFITT:  -- he was --

6                SPECIAL MASTER SCHNEIDER:  Okay.

7                Okay.  We did eight.

8                Nine is the pathology material.  We

9   know that Dr. Godleski doesn't have physical

10  possession of them any longer, but Defendants are

11  going to be able to cover -- expect Defendants to

12  cover with Dr. Godleski at his deposition if he has

13  records identifying who the specimens were from and

14  where he sent them back to.

15               Okay?

16               And then the last issue is Dr. Saed?

17               MS. SHARKO:  Well there's -- yeah,

18  okay, so Number --

19               SPECIAL MASTER SCHNEIDER:  No. 10.

20  No. 10.

21               MS. SHARKO:  Thank you.

22               SPECIAL MASTER SCHNEIDER:  I suppose

23  it's the same issue.

24               MS. PARFITT:  Yes.

25               MS. SHARKO:  I think you've probably

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

```
 1   covered No. 10, Judge.  It's the chain of custody --

 2               SPECIAL MASTER SCHNEIDER:  Yeah.

 3               MS. SHARKO:  -- where I get it from

 4   and what do we do with it.

 5               SPECIAL MASTER SCHNEIDER:  Okay.  Got

 6   it.

 7               Okay.

 8               MS. PARFITT:  And if I may, with

 9   regard to Dr. Saed, if I could just turn that over

10   to my very distinguished colleague to address, also

11   sports authority.

12               MS. SHARKO:  So, on Dr. Saed, I think,

13   Judge, the dispute has been substantially narrowed.

14   I gather now that with the exception of peer review

15   which Your Honor will address, Plaintiffs are

16   agreeable to producing all of the documents

17   requested as to Dr. Saed, but they want forty-five

18   days to do it, and we have a real problem with the

19   forty-five days.  They've had this request since

20   August 3rd, and forty-five days takes us to really

21   the week before all expert reports are due which

22   doesn't give -- assuming that the production is

23   complete in forty-five days, it doesn't give our

24   experts any real time to analyze the data or comment

25   on it or go through it.
```

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 50

1             And we also know from past experience

2    with Dr. Saed and his last publication -- and, Judge

3    Pisano was actively involved in that as you can see

4    from his opinions -- there's a real question as to

5    whether Dr. Saed will produce everything the first

6    time around.

7             So, we would ask that the document

8    production be made within ten days.  I mean, Dr.

9    Saed has experience with the litigation system now.

10   He's been through this before.  We're asking for the

11   same types of documents that he had to produce the

12   last time around.  Presumably he anticipated, or

13   hopefully he anticipated that he would be in this

14   position this time around, and we think ten days

15   should be more than adequate, especially since he's

16   known of this since August 3.

17            SPECIAL MASTER SCHNEIDER:  When are

18   Defendants' expert reports due?

19            MS. SHARKO:  October 22.

20            SPECIAL MASTER SCHNEIDER:  And today

21   is August 27th.

22            MS. SHARKO:  Yes.

23            SPECIAL MASTER SCHNEIDER:  Plaintiff,

24   Defendants' argument doesn't sound unreasonable that

25   they need time to prepare their expert report.

Page 51

1              There is a history with Dr. Saed, so

2      it's not clear his initial response will be

3      completely responsive.

4              In the interest of fairness we have to

5      give Defendants a fair amount of time to respond to

6      Dr. Saed, so Defendants are saying ten days,

7      Plaintiffs are saying forty-five days, what say you?

8              MR. LAPINSKI:  Thirty-two-and-a-half

9      days I think is the middle of that, if my math is

10     correct.

11             Your Honor, the first thing that I

12     would say is that I do take a little bit of issue

13     with all of the stones that have been thrown at Dr.

14     Saed and don't necessarily agree with all the

15     comments that have been made, but now is not the

16     time to be making arguments about that.

17             We're simply in a situation where when

18     this Request For Documents was served, Dr. Saed was

19     out of the country.  Dr. Saed has since returned to

20     the country and has since returned to his full-time

21     job at Wayne State and has to both pick up his

22     responsibilities that he had while he was away and

23     now also respond to these requests for documents.

24             One thing that was said that was

25     correct is that Dr. Saed is much more familiar with

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 52

1   the process that we're involved in now.  The first

2   time around it was the first time that Dr. Saed had

3   testified as an expert, had ever been involved in

4   any type of litigation as an expert and wasn't

5   familiar with the processes that we were dealing

6   with.  So, it will be more streamlined this time

7   around.  I don't have concerns about the manner and

8   the quality in which the documents and the

9   information will be produced, but he does need time

10  to be able to gather this information in order to be

11  able to provide it to Defense Counsel.

12              SPECIAL MASTER SCHNEIDER:  Here is

13  what I'm going to say and here is what I'm going to

14  put in my order.  Mr. Lapinski, Dr. Saed knew what

15  he was getting into when he elected to be a

16  testimonial expert in this Talc litigation.  And of

17  course I recognize he's a practicing physician, but

18  that doesn't excuse his obligation to comply with

19  the Federal Rules of Civil Procedure.  If Dr. Saed

20  felt that he couldn't comply with the Rules and with

21  what the Court or the Special Master directs, then

22  he could have elected not to testify at this trial.

23              So, I'm going to require the

24  production by September 22nd.  That gives him plenty

25  of time to get these documents together.  That gives

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 53

1    the Defendants at least thirty days to review the

2    material, which in my judgment is sufficient time.

3                So, does that address all the issues

4    that are in dispute?

5                MR. LAPINSKI:  Your Honor, I think it

6    does, unless Miss Sharko is going to raise issue

7    with Document Request No. 10, which we objected to

8    as just being overly broad and a catchall.  And the

9    Document Request is any and all other documents not

10   described herein relating in any way to the study,

11   and I'm not sure that you could draft a document

12   request any broader than that.

13               And Your Honor noted when discussing

14   Dr. Smith-Bindman's request, that the -- that all

15   documents that relate to is a pretty broad request,

16   and that that's what we're dealing with here.  We

17   have already agreed that we're going to be producing

18   documents on funding, analyses and summaries, design

19   and conduct, his CVs and the technical

20   certifications of everyone he works for, journal

21   communications and submissions, presentations,

22   communications, drafts, edits, revisions and -- you

23   know, I don't know what is left and I don't think

24   that it's, pursuant to Request No. 10, fair to try

25   and have someone guess what else Defendants might be

DocuSign Envelope ID: 51736FD6 57B1 45AC A76A A1019B842074

August 27, 2021

Page 54

1    looking for.

2                   SPECIAL MASTER SCHNEIDER:  I'm

3    familiar with the issue.  I don't think any further

4    argument is necessary.

5                   Are there any other issues we need to

6    address that we haven't already addressed?

7                   MS. PARFITT:  Your Honor, for the

8    Plaintiff, we appreciate the thorough discussion.

9                   MS. SHARKO:  No, Judge.  Thank you.

10                   MR. LAPINSKI:  Thank you, Your Honor.

11                   SPECIAL MASTER SCHNEIDER:  Okay.  This

12   is what I'd like to do.  I'm going to go off video

13   and I'm going to read my opinion into the record.

14   And it will be memorialized in a followup Order to

15   be entered, so while I'm reading I'm just going to

16   go off video.

17                   MS. PARFITT:  Very good.

18                   SPECIAL MASTER SCHNEIDER:  So this

19   will serve as the Court's Oral Opinion.  This is

20   matter is before the Special Master on Defendants'

21   August 20, '21 Letter Application.

22                   The Special Master received

23   Plaintiffs' August 26th, 2021 response and held oral

24   argument this date, August 27, 2021.

25                   Defendants asked the Special Master to

DocuSign Envelope ID: 51736ED6-57B1-45AC-A76A-A1019B842074

August 27, 2021

1    direct Plaintiffs to produce documents associated

2    with Plaintiffs' experts Dr. Smith-Bindman, Dr.

3    Godleski and Dr. Saed.  For the reasons to be

4    discussed, Defendants' request is granted in part

5    and denied in part.

6              At the outset, the Special Master

7    notes that it agrees with and incorporates the

8    statement from Page 2 of Judge Pisano's April 26th,

9    2019 ruling at Docket No. 9662.

10             Let me just read that into the record.

11             Judge Pisano noted, Quote, it is

12   therefore important for me to oversee the creation

13   of a complete, comprehensive and accurate record of

14   the discovery process so as to ensure that the

15   litigants obtain information, experts' opinions and

16   underlying scientific data that are necessary for

17   the presentation of arguments to the Court, so the

18   Court is comfortable that a complete record has been

19   provided in accordance with law and subject to the

20   terms of filed Orders of the Court, period, close

21   quote.

22             The first issue to address is whether

23   Plaintiffs must produce documents that existed at

24   the time of these witnesses' last deposition.  The

25   answer is yes for two reasons.  First, Defendants

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 56

1    represent they did not and could not know about the

2    requested documents at the time of the last

3    depositions.  Thus, this alone justifies Defendants'

4    request.

5              Second, the litigated issues are too

6    important to bar relevant discovery simply because

7    the discovery could have been requested earlier.

8    This is especially true here where there is no

9    material prejudice or burden resulting from the

10   requested production.

11             The second issue to address is

12   Defendants' request for the production of peer

13   review materials from Plaintiffs' three experts.

14   These are Requests 5 to Dr. Smith-Bindman, Request 3

15   to Dr. Godleski, and Request 1, 2 and 4 to Dr. Saed.

16   Plaintiffs object to producing the requested

17   documents until the peer review process has been

18   completed and because Plaintiffs argue of the,

19   quote, highly confidential nature of peer review

20   deliberations and the risk of influencing reviewers,

21   period close quote.

22             The Special Master rules that

23   Plaintiffs' objection is overruled for the following

24   reasons:  One, the requested documents are relevant

25   and Plaintiffs have not argued the requested

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 57

1    documents are irrelevant.

2             Two, Plaintiffs have not claimed the

3    requested documents are privileged.  To the extent

4    they do, no supporting case law has been provided to

5    the Court to indicate that the requested peer review

6    documents are privileged.

7             Three, Plaintiffs have not argued it

8    would be unduly burdensome to produce the requested

9    documents.

10            Four, Plaintiffs' concern about

11   publicity and release of the information, and the

12   confidentiality of the requested peer review

13   materials, are overblown.  The produced documents

14   shall be designated "Attorney Eyes Only" in the

15   first instance.  If Defendants request to reduce the

16   designation, they shall meet and confer with

17   Plaintiffs about the issue.  The Special Master

18   should be contacted if there is a dispute.  The

19   "Attorneys Eyes Only" designation addresses

20   Plaintiffs' confidentiality concerns and protects

21   the interests of Dr. Smith-Bindman and the peer

22   review process.  Dr. Smith-Bindman may not be happy

23   about the Court -- I'm sorry, the Special Master's

24   ruling, but this is a consequence of her choice to

25   act as a trial expert and be subject to the Federal

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 58

1    Civil Rules of Procedure.

2                    There was discussion about the

3    Document Request directed to Dr. Smith-Bindman.  Dr.

4    Smith-Bindman shall respond to Document Requests 1

5    to 9.

6                    The next issue to address is the

7    Requests For Production directed to Dr. Godleski.

8    Request 1 asks for funding information.  Plaintiffs

9    argue that no responsive documents exist.

10                    As to the relevance of the subject

11   documents and whether they need to be produced,

12   there apparently is no dispute, but if there is a

13   dispute, the Special Master rules that the documents

14   have to be produced.

15                    If it's true that the response is

16   complete as stated, that ends the inquiry.  However,

17   Plaintiffs also state in their responses that to the

18   extent any responsive documents might exist, they're

19   in the custody of the coauthors of the articles at

20   issue.  To be clear, the mere fact that responsive

21   documents may be in the custody of someone else does

22   not necessarily absolve Dr. Saed of the duty to

23   produce the requested documents.

24                    The Special Master refers the parties

25   to the Special Master's opinion in Haskins versus

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 59

1    First American, 2012 Westlaw 5183908, District of

2    New Jersey, October 18, 2012.  That opinion gives a

3    more detailed discussion of the duty to produce

4    documents.  In that decision, the Special Master

5    noted, a party has a duty to produce documents

6    within its, quote, possession, custody or control,

7    period, close quote.  The term control is read

8    broadly to encompass a situation where a party quote

9    has the legal right or ability to obtain the

10   documents from another source upon demand, period,

11   close quote.  A party is not required to have

12   physical possession for control to be present.

13   Control exists, for example, where a party has a

14   contractual right to compel someone else to produce

15   documents.  Haskins, at *1.

16             Although, Dr. Saed himself may not

17   have physical possession of the documents responsive

18   to Request 1, if he has control of the documents

19   within the meaning as set out in Haskins, he must

20   produce the responsive documents.

21             Defendants may explore this area at

22   Dr. Godleski's deposition.

23             Request 2 asks for drafts of the

24   articles.  Plaintiffs argue Dr. Godleski has no

25   responsive documents.

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 60

1           The same ruling as Request No. 1 is

2    incorporated by reference.  To be clear, this ruling

3    is incorporated herein for all of Dr. Godleski's

4    responses, as is the Special Master's comment that

5    the disputed subject areas may be explored at Dr.

6    Godleski's deposition to determine if responsive

7    documents exist and if he has possession, control or

8    custody of the requested documents.

9           Request 3 asks for communications

10   between Dr. Godleski and third parties.  Plaintiffs

11   have agreed to produce comments received.

12           The Special Master denies Plaintiffs'

13   request to delay the production and rules that the

14   production shall not await the completion of a peer

15   review process.  As stated, responsive documents

16   shall be designated "Attorneys Eyes Only."

17           Request 4 asks for presentations.

18   Plaintiffs have represented this response is

19   complete so there is nothing more to say.  The area

20   and subject matter may be covered at Dr. Godleski's

21   deposition.

22           Request 7 seeks documents relating to

23   the testing of pathology specimens in the studies

24   underlying the articles.

25           The Special Master reserves decision

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 61

1  on this request until after Dr. Godleski's

2  deposition.  The Special Master believes it is

3  premature to rule on this issue without a more

4  detailed record regarding the identity of the

5  specimens at issue, where they're located, et

6  cetera.  The parties should find out what exists,

7  where, and matters of that sort so that if there is

8  a dispute about any production, the Special Master

9  will have a complete record to make an informed

10  decision.

11                Request 8 seeks invoices and other

12  financial documentation regarding the work done on

13  the articles for any lawyer or law firm.

14                The request is granted.  I expect that

15  Defendants will cover this subject matter at Dr.

16  Godleski's deposition.

17                Request 9 seeks pathology materials

18  from the articles.

19                As the Special Master noted with

20  regard to Request 7, the decision is reserved until

21  a more fulsome record on this issue is developed.

22  Quite frankly, the Special Master is reluctant to

23  rule on such an important issue until there's a

24  complete record which the Special Master expects

25  will be developed at Dr. Godleski's deposition.

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 62

1        I expect the parties will meet and

2  confer after that and if there's a dispute, it

3  should be brought to the Special Master's attention.

4        As to Dr. Saed, Defendants' Document

5  Requests are generally directed to an in vitro

6  experiment the doctor performed.  At issue is

7  Defendants' Request for Documents No. 10 seeking,

8  quote, any and all other documents not described

9  herein relating in any way, close quote, to Dr.

10  Saed's experiment.  Plaintiffs object to this

11  request as overbroad.

12        Plaintiffs objection to the request is

13  sustained.  Defendants' Document Requests to

14  Plaintiffs are required to describe with reasonable

15  particularity the documents they request.  Request

16  No. 10 does not satisfy this requirement.  Quite

17  simply, the Request is overbroad and over-inclusive.

18  If the Special Master approved a request of this

19  type, then in every case a party would only need to

20  serve one request since Request No. 10 would subsume

21  all other requests.  This is unacceptable and does

22  not put Plaintiffs on fair notice of what is

23  responsive to Defendants' Request for Documents.

24        Request No. 10 is similar to other

25  overbroad requests that have been rejected by courts

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 63

```
 1    such as requests asking for the production of all

 2    relevant information in the case.

 3                    As an aside, the Special Master

 4    expects that if the Plaintiffs made a similar

 5    all-inclusive request to Defendants, the Special

 6    Master fully expects Defendants would object on the

 7    same grounds Plaintiffs now assert.

 8                    As to the timing of Dr. Saed's

 9    document production, the document production shall

10    be completed by September 22nd, 2021.

11                    Accordingly, for all the foregoing

12    reasons, Defendants' application is granted in part

13    and denied in part.  An Order memorializing the

14    Special Master's rulings will be entered.

15                    Counsel, that completes the Court's

16    opinion.  I believe we've exhausted all the issues

17    that were before the Special Master as reflected in

18    Miss Sharko's letter, but since we're together, if

19    there are any other issues or matters we need to

20    address, I'm happy to address them.

21                    Is there anything else we need to

22    address, Counsel?

23                    MS. SHARKO:  Not from the Defense,

24    thank you, Judge.

25                    Thank you very much for the prompt
```

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

August 27, 2021

Page 64

1    hearing on this issue.  We appreciate it.  We all

2    appreciate it.

3                MS. PARFITT:  Your Honor, nothing from

4    the Plaintiff.

5                MR. LAPINSKI:  Nothing from the

6    Plaintiffs, Your Honor.

7                (Discussion off the record.)

8                SPECIAL MASTER SCHNEIDER:  Good luck,

9    everybody.  It's always good to talk to you.

10               MS. SHARKO:  Thank you.

11               MS. PARFITT:  Judge, thank you very

12   much.

13               MR. LAPINSKI:  Thank you, Your Honor.

14               (Status Conference ended at 10:26

15   a.m.)

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

Page 65

```
1                C E R T I F I C A T E

2

3         I, Sharon M. Vance, a Notary Public and

4    Certified Court Reporter of the State of New Jersey,

5    do hereby certify that the foregoing is a true and

6    accurate transcript of the proceedings as taken

7    stenographically by and before me at the time,

8    place, and on the date hereinbefore set forth, to

9    the best of my ability.

10        I do further certify that I am neither a

11   relative, nor employee, nor attorney, nor counsel of

12   any of the parties to this action, and that I am

13   neither a relative, nor employee of such attorney or

14   counsel, and that I am not financially interested in

15   the action.

16

17

18   _____
     Sharon M. Vance, RPR, CCR
19   Notary Public, State of New Jersey
     My Commission Expires June 30, 2022
20   Certificate No. XI00211300
     Date:  August 27, 2021

21

22

23

24

25
```

**A**

**a.m** 2:10 64:15
**ability** 59:9 65:9
**able** 32:13 34:25
  42:5 48:11
  52:10,11
**absolutely** 10:18
  39:16
**absolve** 58:22
**absolves** 22:6
**abstract** 11:15
  11:18,19,21
  14:17,19,25
**abusive** 8:2
**accepted** 16:13
  24:18
**access** 16:20
  19:17 21:13
  42:10,11
**account** 36:4
**accurate** 55:13
  65:6
**accurately** 40:15
**act** 57:25
**action** 65:12,15
**active** 15:17
  23:20
**actively** 50:3
**actual** 20:4
**add** 16:13 18:21
  19:1 21:25
**address** 15:10
  18:2 23:19
  27:24 49:10,15
  53:3 54:6
  55:22 56:11
  58:6 63:20,20
  63:22
**addressed** 23:23
  31:13 54:6
**addresses** 57:19
**addressing**
  31:12
**adequate** 7:16
  50:15

**adjustment**
  20:15
**advance** 44:13
**advised** 35:4
**affidavit** 12:24
  36:18,24 37:5
**agree** 8:6 10:11
  51:14
**agreeable** 49:16
**agreed** 53:17
  60:11
**agreeing** 13:7
**agrees** 55:7
**ahead** 9:9 18:11
  22:3,17
**all-inclusive**
  63:5
**allow** 19:14
**allowed** 28:11
**American** 59:1
**amount** 7:19
  51:5
**analyses** 30:12
  33:18 47:3,8
  53:18
**analysis** 13:16
  27:19,21 28:16
  29:19 38:16
  41:4
**analyze** 49:24
**anonymously**
  9:7
**answer** 37:3
  38:8 39:3,12
  43:15 45:11
  55:25
**answered** 9:16
  45:8
**anticipate** 5:15
**anticipated**
  15:17 23:21
  50:12,13
**apart** 13:4
**apparently**
  28:20 30:9
  58:12

**appearances** 5:3
**application** 1:6
  5:12 54:21
  63:12
**applies** 22:9,10
  22:11
**appreciate** 13:1
  54:8 64:1,2
**appropriately**
  45:9
**approved** 62:18
**April** 23:18 55:8
**arbitrary** 6:25
  7:11
**area** 34:12 59:21
  60:19
**areas** 60:5
**arena** 16:16
**argue** 56:18 58:9
  59:24
**argued** 56:25
  57:7
**arguing** 7:13
**argument** 1:5
  5:11,16 12:5
  26:4 50:24
  54:4,24
**arguments**
  51:16 55:17
**arises** 15:14 16:5
**ARPS** 4:9
**article** 15:19
  16:18 17:22,23
  19:20 34:3,6
  43:23
**articles** 10:24
  11:3 12:11
  14:6 25:1,14
  33:12 35:12
  36:8,11 38:15
  58:19 59:24
  60:24 61:13,18
**ASHCRAFT** 3:9
**aside** 63:3
**asked** 7:7 17:3
  19:13 24:17

43:14 44:13
  45:3 54:25
**asking** 6:14 16:6
  18:8 24:7
  44:24 50:10
  63:1
**asks** 9:6 58:8
  59:23 60:9,17
**assert** 63:7
**associated** 55:1
**assume** 21:4
  27:16
**assuming** 49:22
**attention** 62:3
**attorney** 35:10
  57:14 65:11,13
**Attorney's** 10:12
**Attorneys** 3:7,14
  3:20 4:6,13
  57:19 60:16
**Audubon** 1:24
**August** 1:13
  5:11,22 27:13
  49:20 50:16,21
  54:21,23,24
  65:20
**author** 9:11,13
  15:24 16:2,2,3
  19:21 21:12
**authority** 49:11
**authors** 15:21
  15:22 17:10,15
  19:24 21:22
  25:5 26:3
  29:16 31:13
  34:4,5,8
**available** 42:3
**AVENUE** 4:10
**await** 60:14

**B**

**Baby** 10:16
**back** 6:8 7:3,14
  7:24 9:10
  24:16 29:17
  33:5 40:4,11

41:6,13 42:14
  42:19 46:21
  48:14
**background**
  45:22
**bad** 20:16
**bar** 56:6
**barring** 5:15,19
**basis** 7:22 11:11
  28:19
**bed** 26:6
**beginning** 7:15
**behalf** 5:7
**BEISNER** 4:10
**believe** 6:18
  10:18 36:10,23
  44:17 63:16
**believes** 61:2
**Berman** 3:16,16
  6:15
**best** 65:9
**better** 38:11
**BIDDLE** 4:2
**big** 16:23
**bill** 35:9
**bills** 36:3
**binding** 23:16
**bit** 7:18 24:16
  51:12
**bless** 33:1
**blocks** 35:6 39:6
  39:16,17 40:7
  40:19 41:3
**board** 19:1
  21:19
**bold** 36:13
**bottom** 27:5,13
**breaks** 19:9
**brief** 10:19 12:7
**British** 16:10
**broad** 28:25
  53:8,15
**broader** 53:12
**broadly** 15:9
  59:8
**brought** 62:3

**burden** 56:9
**burdensome** 57:8

---

**C**
**C** 3:1 65:1,1
**CAMPUS** 4:3
**Canada** 11:8 29:21 31:25
**cancer** 42:5
**candid** 32:13
**candidly** 21:16
**case** 12:5 20:23 23:16 39:23 57:4 62:19 63:2
**cases** 35:8 39:18 42:8
**casting** 39:7
**catchall** 11:7 53:8
**CCR** 65:18
**certain** 21:11 25:1
**Certainly** 7:7
**Certificate** 65:20
**certification** 12:23 36:25
**certifications** 53:20
**Certified** 1:22 2:7 65:4
**certify** 65:5,10
**cetera** 7:4 16:8 33:19 61:6
**chain** 39:24 49:1
**challenge** 26:16 36:22
**changes** 20:12 20:13
**Chemical** 23:16
**CHERRY** 3:5
**Chief** 10:9
**children** 26:14
**choice** 57:24

**circumstances** 5:16,19
**cite** 11:22,22,23
**cited** 12:6
**Civil** 1:2 52:19 58:1
**claim** 12:21 43:24
**claimed** 57:2
**clean** 31:14
**clear** 7:2 13:13 23:8,11 25:6 51:2 58:20 60:2
**clearly** 13:20 17:22
**client** 35:10 43:6
**close** 55:20 56:21 59:7,11 62:9
**closed** 40:22
**closely** 15:12
**co-author** 20:3 21:6,7,13 31:11
**co-investigators** 31:18
**coauthor** 19:22
**coauthors** 19:23 29:18 32:20 36:15 58:19
**Coke** 10:16
**colleague** 49:10
**colleagues** 13:22 29:8
**collect** 12:23
**collision** 29:20
**come** 18:7 22:20 34:14 41:9,12 41:19
**comfortable** 55:18
**commencing** 2:10
**comment** 15:25 16:11 17:14

21:4,4,19 49:24 60:4
**comments** 9:10 9:12,16 10:3,5 11:4 15:21,23 16:8,21 17:3 19:20 21:8 24:13 26:2 32:9 51:15 60:11
**Commission** 65:19
**Commonwealth** 2:9
**communicate** 31:24
**communication** 37:13
**communicatio...** 29:13,16,21 31:11,12,16,18 32:6 44:7 53:21,22 60:9
**community** 24:8 25:12
**COMPANIES** 4:7,14
**compel** 59:14
**complete** 8:23 13:10 25:13 32:13 49:23 55:13,18 58:16 60:19 61:9,24
**completed** 14:7 56:18 63:10
**completely** 23:6 51:3
**completes** 63:15
**completion** 60:14
**comply** 52:18,20
**comprehensive** 55:13
**concern** 57:10
**concerning** 29:14

**concerns** 45:13 52:7 57:20
**conclusion** 13:23,24 45:5
**conclusions** 28:20
**conduct** 30:8 53:19
**confer** 57:16 62:2
**Conference** 64:14
**confidential** 48:2 56:19
**confidentiality** 57:12,20
**confirmed** 5:18
**connection** 42:15,24
**consequence** 57:24
**consider** 20:16 24:16
**considered** 17:16
**CONSUMER** 4:7,7,14,14
**consumption** 20:18
**contacted** 57:18
**context** 31:2 40:1
**continuing** 16:17
**contractual** 59:14
**contributed** 21:23
**control** 22:8,15 59:6,7,12,13 59:18 60:7
**copy** 22:14
**corporate** 36:3
**corporation** 33:15,16 34:22 34:24 35:13,25

36:1,2
**correct** 12:18 31:3 35:21 37:25 39:17 51:10,25
**corresponding** 15:24 16:1,3
**counsel** 5:5 52:11 63:15,22 65:11,14
**country** 39:10 51:19,20
**couple** 5:14
**course** 9:23 33:25 36:21 52:17
**Court** 1:1,22 2:7 5:18 19:13,25 20:7 23:17,24 32:14 35:1,3 45:10 52:21 55:17,18,20 57:5,23 65:4
**Court's** 37:15 54:19 63:15
**courts** 62:25
**cover** 13:3,4 37:3 43:17 45:1 48:11,12 61:15
**covered** 37:15 38:7 49:1 60:20
**CoVid** 24:25
**creation** 55:12
**critique** 17:12
**cross-examina...** 17:7
**cross-examine** 24:3
**currently** 10:24 14:8,8 17:23
**custody** 22:8 39:24 49:1 58:19,21 59:6 60:8

cut 43:1,1
CV 32:19,19
CVs 32:21 53:19

**D**
Dan 15:11 18:21
Daniel 3:4 5:7
data 12:16 13:16
  13:25 17:20
  18:8,8 20:16
  29:19,19 30:13
  31:6 48:1,2
  49:24 55:16
date 8:18 54:24
  65:8,20
Daubert 8:16
  10:2,8 13:19
daughter 26:4
days 13:1,2
  49:18,19,20,23
  50:8,14 51:6,7
  51:9 53:1
DC 3:12 4:11
deal 16:23 26:23
  30:19 33:3
dealing 52:5
  53:16
decide 41:19
decision 59:4
  60:25 61:10,20
Defendant 4:6
  4:13 22:11
  36:6
Defendants 5:9
  11:2 16:6 18:8
  19:14 28:14
  30:23 40:13
  44:24 45:10
  48:10,11 51:5
  51:6 53:1,25
  54:25 55:25
  57:15 59:21
  61:15 63:5,6
Defendants' 1:6
  5:11,22 44:21
  50:18,24 54:20

55:4 56:3,12
  62:4,7,13,23
  63:12
Defense 52:11
  63:23
defined 30:9
definition 12:10
delay 60:13
deliberations
  56:20
demand 59:10
denied 55:5
  63:13
denies 60:12
deposed 47:11
deposition 8:1,9
  13:1,14 17:2,5
  24:5 26:18,18
  37:1,4,5 38:7
  43:14,17 44:13
  44:18 45:2
  48:12 55:24
  59:22 60:6,21
  61:2,16,25
depositions 6:12
  6:12 7:6,8,20
  8:4 56:3
describe 62:14
described 53:10
  62:8
design 30:8
  53:18
designated
  57:14 60:16
designation
  57:16,19
designed 8:5,5
  25:11
destroyed 36:16
detailed 59:3
  61:4
determine 60:6
developed 61:21
  61:25
difference 17:18
different 13:3

15:18 17:14
  23:2 25:16
  40:24 41:6,7,9
  45:10
direct 4:4 21:16
  55:1
directed 58:3,7
  62:5
directly 19:21
  21:5,10,15
  33:22 39:21
  40:15
directs 52:21
disagree 6:18
  19:8
disagreement
  32:17
disagreements
  15:9
disclosed 45:21
disclosures
  33:24 34:1
discovery 7:9,21
  34:12,13 55:14
  56:6,7
discussed 12:6
  27:22 55:4
discussing 46:15
  53:13
discussion 16:4
  22:20 42:21
  54:8 58:2 59:3
  64:7
discussions
  31:16
dispute 6:10,10
  27:7,17 47:6
  49:13 53:4
  57:18 58:12,13
  61:8 62:2
disputed 60:5
disputes 5:20
distinct 15:18
  23:22
distinction 26:1
distinguished

49:10
District 1:1,1
  59:1
dlapinski@m...
  3:7
Docket 1:2 55:9
doctor 21:5,7
  62:6
Doctor's 45:2
document 22:5,7
  22:14 29:3,6
  29:10,24 30:23
  50:7 53:7,9,11
  58:3,4 62:4,13
  63:9,9
documentation
  43:23 61:12
documents 1:7
  6:11 8:11,15
  8:19 10:11
  11:24,25 12:13
  12:22 15:3
  28:2,2,4,16,24
  29:7 30:7,23
  33:12 36:10,16
  38:22 39:6
  44:9,20,21
  45:1,17 46:12
  47:3,7 49:16
  50:11 51:18,23
  52:8,25 53:9
  53:15,18 55:1
  55:23 56:2,17
  56:24 57:1,3,6
  57:9,13 58:9
  58:11,13,18,21
  58:23 59:4,5
  59:10,15,17,18
  59:20,25 60:7
  60:8,15,22
  62:7,8,15,23
  doing 29:19
  doors 23:10
  Dow 23:15
  Dr 8:15,20,22
  9:17 10:1,5

11:9,12,14,21
  12:14,15,19,21
  12:23 13:2,6
  14:10,13,17
  15:11,12 17:23
  18:3,4 20:1
  23:10 27:5,14
  27:20,23 29:18
  30:24 32:20
  33:6,11,13
  34:13,21,24
  35:6,18 36:15
  36:18,24 37:3
  39:21 40:6
  41:20 42:9
  43:2 45:6,20
  47:10,11,22
  48:9,12,16
  49:9,12,17
  50:2,5,8 51:1,6
  51:13,18,19,25
  52:2,14,19
  53:14 55:2,2,3
  56:14,15,15
  57:21,22 58:3
  58:3,7,22
  59:16,22,24
  60:3,5,10,20
  61:1,15,25
  62:4,9 63:8
draft 9:4 53:11
drafts 12:14
  29:10 36:8,11
  36:21 53:22
  59:23
Drinker 4:2 5:9
DRIVE 3:4
due 49:21 50:18
duty 22:7,16
  58:22 59:3,5
dwell 8:8

**E**
E 3:1,1 4:18,18
  65:1,1
E-mails 29:17

earlier 7:8 56:7
**EAST** 3:4
editorial 15:25
   16:7 21:19
editors 17:11
   20:5
edits 29:11 36:8
   53:22
educated 42:1
eight 38:9 48:7
either 19:21
   23:5 28:11
   33:21 42:3
elected 52:15,22
employee 65:11
   65:13
encompass 59:8
encompassed
   46:8
ended 64:14
ends 58:16
ensure 55:14
entered 54:15
   63:14
enters 5:25 6:15
entire 17:4
entitled 17:20
   45:24 46:23,24
environment
   20:17
epidemiological
   30:14
epidemiologist
   11:22
epidemiology
   13:18
equally 19:1
err 35:20
especially 50:15
   56:8
**ESQUIRE** 3:4
   3:10,11,16 4:3
   4:10,20
essence 7:24
et 7:4 16:8 33:19
   61:5

everybody 11:23
   29:20 64:9
examined 40:18
   41:1 47:21
example 9:25
   31:11 42:8
   59:13
exception 49:14
excuse 52:18
exhausted 63:16
exhibits 10:8
exist 6:11 12:22
   44:17 58:9,18
   60:7
existed 6:11
   55:23
exists 21:14
   59:13 61:6
expect 5:18 45:3
   48:11 61:14
   62:1
expects 61:24
   63:4,6
expenditures
   30:17
experience 26:8
   50:1,9
experienced
   8:17
experiment 10:7
   11:16 62:6,10
experiments
   41:2
expert 8:16
   11:14 13:12
   14:14 16:7
   25:24,24 28:9
   28:21 45:21
   49:21 50:18,25
   52:3,4,16
   57:25
experts 9:5
   10:24 11:21
   14:4 15:10
   19:2 22:6,10
   22:12 49:24

55:2 56:13
experts' 1:7
   55:15
**Expires** 65:19
explore 26:16
   59:21
explored 60:5
extensive 10:2
extensively 10:8
   11:14
extent 40:21
   57:3 58:18
**Eyes** 10:12
   57:14,19 60:16

─────────────
**F**
─────────────

**F** 65:1
facilities 41:8
fact 16:19 19:22
   20:1 27:19
   45:15 46:1
   58:20
**Faegre** 4:2 5:8
fair 7:19 27:16
   43:10,11 51:5
   53:24 62:22
fairness 51:4
familiar 5:13
   51:25 52:5
   54:3
far 6:8 20:23
fashion 7:9
   31:15
favorable 9:12
**FAX** 3:6,19 4:5
   4:23
**FDA** 11:8 29:21
**Federal** 52:19
   57:25
feel 18:22
feeling 17:12
felt 52:20
field 9:5
fields 24:12
figure 26:24
filed 55:20

finally 26:9
financial 43:22
   61:12
financially
   65:14
find 61:6
fine 45:1
fingertips 36:13
finish 9:21
firm 61:13
first 6:5,8 8:1
   10:6 15:8
   25:22 31:2
   38:4 45:6 50:5
   51:11 52:1,2
   55:22,25 57:15
   59:1
five 30:3
**FLOM** 4:9
floor 4:21 6:3
   15:5 19:4
**FLORHAM** 4:4
focused 11:9
   46:15
folks 47:20
following 56:23
followup 54:14
foregoing 63:11
   65:5
**FORMAROLI**
   1:21
formed 28:19
formula 10:15
   10:16
forth 29:17 65:8
forty-five 49:17
   49:19,20,23
   51:7
forty-four 38:20
   38:21 40:3
   41:18,20,24
   45:14,15 46:22
   47:13
forty-three
   38:24 39:1
   40:6 43:5

45:19 46:24
   47:1,4
forward 24:17
found 9:25
   34:12
foundational 7:4
   7:23
four 11:13 26:14
   30:1 57:10
frankly 23:12,17
   23:22 25:17
   61:22
free 17:12 18:22
**Friday** 1:13
front 6:4 14:21
   15:1
froze 37:20
frozen 41:15
full 7:16
full-time 51:20
fuller 40:14
fully 63:6
fulsome 40:14
   61:21
funded 44:22
   45:2
funding 29:7
   30:16 31:21
   33:12 34:6,9
   34:11 35:5,5
   35:15,16 36:20
   43:22 44:9
   53:18 58:8
further 22:19
   25:18 54:3
   65:10

─────────────
**G**
─────────────

gain 42:11
gamesmanship
   22:24 23:13
   32:23
gather 12:17,18
   49:14 52:10
general 8:1 13:4
   18:22,24 20:11

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

34:15
**generally** 9:12
  15:8,14 62:5
**GEREL** 3:9
**getting** 18:11
  20:10 22:2,17
  24:13 52:15
**give** 23:24 31:2
  31:17 32:8
  40:12 41:25
  42:7 49:22,23
  51:5
**given** 9:13 40:3
**gives** 52:24,25
  59:2
**go** 5:22 6:9 7:3
  7:14 9:9,11,17
  10:20 15:9
  16:4,14 20:2,3
  22:19 26:2
  33:6 35:23
  37:23 40:10
  43:7,19 46:21
  49:25 54:12,16
**Godleski** 8:16
  8:22 9:17
  12:21,24 13:2
  14:10 15:11
  18:4,15 33:6
  33:11,13 34:8
  34:9,22,24
  35:6,18 36:15
  36:18,24 39:22
  40:6 41:20
  42:9 43:3 45:6
  45:20 47:11,11
  48:9,12 55:3
  56:15 58:7
  59:24 60:10
**Godleski's** 11:12
  37:4 47:22
  59:22 60:3,6
  60:20 61:1,16
  61:25
**goes** 16:1 36:12
**going** 7:17,24

10:20 13:11
  15:7,8 17:3
  20:14 22:3,21
  24:2,3,4,23
  25:25 28:4,11
  37:4 41:25
  48:11 52:13,13
  52:23 53:6,17
  54:12,13,15
**good** 5:6,21
  18:20 20:12
  24:9 25:3 29:5
  54:17 64:8,9
**GOODMAN**
  4:20
**gotten** 15:15
  45:17 47:12
**grant** 34:7
**granted** 55:4
  61:14 63:12
**great** 5:24 17:25
**greatly** 16:19
**grounds** 63:7
**guess** 42:1 53:25
**guessing** 47:14
**Gynocs** 11:23

─────────────
       **H**
─────────────
**H** 4:10
**happen** 16:14
  20:17 21:12
**happened** 7:5
  42:23
**happening** 5:15
  7:21
**happens** 15:23
  19:10 21:17
  39:19 47:20
**happy** 57:22
  63:20
**hard** 6:17 12:22
  36:10
**Harvard** 40:23
  42:4
**Haskins** 58:25
  59:15,19

**hat** 41:21
**he'll** 45:11
**Health** 11:8
  29:21 31:24
**hear** 22:3 37:20
  41:14
**heard** 42:22
**hearing** 10:3,8
  46:3,4 64:1
**heavy** 32:21
**held** 42:6 54:23
**help** 31:2 38:9
**hereinbefore**
  65:8
**highly** 56:19
**HILL** 3:5
**history** 51:1
**hold** 39:25 40:6
**honor** 5:7 6:24
  7:2 10:17 15:7
  15:15 21:16
  23:3 27:11
  39:15 43:15
  44:8 45:4
  47:16 49:15
  51:11 53:5,13
  54:7,10 64:3,6
  64:13
**hopefully** 19:16
  25:12 42:1
  50:13
**hoping** 35:22
**Horse** 1:23
**hospitals** 40:7
  41:6
**hotel** 26:4
**hours** 7:6
**hypothetically**
  21:4

─────────────
       **I**
─────────────
**idea** 29:5
**identified** 11:2
  15:15 45:25
**identify** 28:13
**identifying**

48:13
**identities** 46:25
**identity** 61:4
**imagine** 21:12
**impact** 17:25
**important** 16:4
  16:15 17:9
  19:11 23:23,23
  26:1 32:14
  33:23 35:17
  43:17 55:12
  56:6 61:23
**importantly**
  15:22
**include** 29:15,15
**includes** 25:7
**including** 29:14
**incorporated**
  60:2,3
**incorporates**
  55:7
**indicate** 45:7
  57:5
**indicated** 23:18
  31:8 40:23
  46:7
**indicating** 40:2
**indirectly** 33:22
**individual** 18:9
  35:7 38:23
  44:11 47:9
**individually**
  35:23
**individuals** 17:2
**influence** 16:21
**influenced** 16:18
**influencing**
  56:20
**information** 7:1
  7:16,24 8:6
  16:16 17:4,25
  19:7,14,15,18
  19:23 20:1,4
  20:10 21:14
  25:10 28:8
  31:24 32:4,5

32:10 39:9,25
  40:9 44:15
  46:7 52:9,10
  55:15 57:11
  58:8 63:2
**informed** 61:9
**ingredient** 10:15
**initial** 51:2
**inquired** 7:25
**inquiring** 12:9
**inquiry** 7:17
  40:14,14 43:12
  44:18 47:25
  58:16
**instance** 24:25
  57:15
**instituted** 20:9
**insular** 20:17
**intended** 13:2
**interest** 51:4
**interested** 9:13
  65:14
**interesting**
  24:21
**interests** 57:21
**interfere** 10:21
  17:10
**interrupt** 39:14
**invoices** 43:22
  44:10,16 61:11
**involved** 40:3
  50:3 52:1,3
**irrelevant** 57:1
**issue** 5:20,23 6:5
  6:8,20,22 8:10
  8:13,19 10:22
  15:14 16:5
  18:1,2,14,18
  18:19,22,24
  19:11 20:21
  22:20,22 23:12
  23:19,22 25:17
  27:2,3,10,24
  32:6 33:3,4
  34:9 36:17
  39:15 48:16,23

51:12 53:6
54:3 55:22
56:11 57:17
58:6,20 61:3,5
61:21,23 62:6
64:1
**issues** 5:14,23
25:1 32:12
42:16 53:3
54:5 56:5
63:16,19
**items** 12:9

**J**

**J&J** 27:22
**Jersey** 1:1,24 2:9
3:5 4:4 59:2
65:4,19
**job** 51:21
**JOEL** 1:16
**John** 4:10 34:8,9
**john.beisner...**
4:12
**Johnson** 1:5,5
4:6,6,6,6,7,7
4:13,13,13,13
4:14,14 5:9,9
36:2,2
**Johnson's** 10:15
**journal** 9:3,4,11
9:13 16:11,14
16:20 20:5
24:21,23 33:25
36:14 53:20
**journals** 11:25
33:24
**jschneider@m...**
1:17
**Judge** 6:6 10:9
10:14 14:19
23:17 26:14
30:21 34:11
42:23 49:1,13
50:2 54:9 55:8
55:11 63:24
64:11

**judgment** 53:2
**June** 65:19
**junk** 24:14
**justifies** 56:3

**K**

**K** 3:11
**keep** 19:13 40:9
40:17
**keyboard** 36:13
**kick** 13:25
**kinds** 19:17
**knew** 35:22
52:14
**know** 6:9 7:9
10:20 12:17
14:19 15:11
16:22 18:13
28:10 33:20
34:1 37:6 38:5
38:21 39:3
40:23,24 43:9
43:15 44:20
45:9,11,16,24
46:24,25 48:9
50:1 53:23,23
56:1
**known** 4:7,14
50:16
**knows** 47:19

**L**

**L** 4:18,20
**lab** 39:20,21
40:10,22
**laboratory**
33:18
**LAKE** 3:4
**Lapinski** 3:4 5:6
5:7 18:24
37:17 51:8
52:14 53:5
54:10 64:5,13
**laser** 11:9
**lastly** 26:15
**laughing** 26:6

**law** 12:5 20:23
22:15 23:7,16
55:19 57:4
61:13
**LAWRENCE**
3:16
**lawyer** 35:5
45:23 46:2
61:13
**lawyers** 25:23
26:14 33:21
**lberman@lfsb...**
3:20
**lead** 16:2
**learned** 7:10
**leave** 5:19
**left** 42:16 53:23
**legal** 22:7 59:9
**legitimate** 34:12
**legitimately** 23:1
**let's** 5:22 6:21,22
8:12 21:3
34:17 38:13
42:3,19 43:19
46:21
**letter** 5:22 6:4,7
27:13,15 54:21
63:18
**LEVIN** 3:16
**LIABILITY** 1:6
**license** 2:7
**lies** 20:1
**lift** 32:21
**limited** 7:19
33:25
**line** 42:20
**linear** 21:16
**list** 10:15
**litigant** 47:20,22
47:23
**litigants** 55:15
**litigated** 56:5
**litigation** 1:6
8:17 35:8
38:22 40:1
42:8 45:16,21

46:2 47:10,24
50:9 52:4,16
**little** 14:20,25
24:16 25:15
28:23 38:11
51:12
**living** 26:12
**LLC** 3:3
**LLP** 3:9,16 4:2,9
4:20
**loaning** 40:8
**located** 61:5
**log** 12:1 33:10
44:2
**long** 8:2
**longer** 48:10
**look** 35:25
**looked** 40:18
44:11 45:13
47:22
**looking** 31:4
54:1
**lost** 42:18,24
**lot** 13:4 24:22,25
25:5 26:23
31:23 36:20
**lousy** 20:13
**luck** 64:8
**Lyons** 3:11 5:25

**M**

**M** 2:7 4:3 65:3
65:18
**making** 21:21
26:3 51:16
**manner** 52:7
**manuscript** 9:4
13:15 28:19
**MARKET** 4:21
**MARKETING**
1:5
**Master** 1:16 5:1
5:10 6:2,21 8:7
8:11,25 9:8,15
10:23 12:8
14:2,22 15:4

18:10,13,17
19:4 20:25
21:3,24 22:2
23:4 25:19
26:10 27:2,4
27:12,25 28:12
28:22 29:4,23
30:18,22 33:2
34:17 36:5
37:2,10,14,25
38:6,17,25
39:8 41:5,10
41:17,23 42:12
42:17,25 43:10
43:16,25 44:3
44:19 46:6,19
48:4,6,19,22
49:2,5 50:17
50:20,23 52:12
52:21 54:2,11
54:18,20,22,25
55:6 56:22
57:17 58:13,24
59:4 60:12,25
61:2,8,19,22
61:24 62:18
63:3,6,17 64:8
**Master's** 5:17
57:23 58:25
60:4 62:3
63:14
**MASTROIA...**
1:21
**material** 16:13
28:25 45:17,22
47:8 48:8 53:2
56:9
**materials** 47:12
47:14 56:13
57:13 61:17
**math** 51:9
**matter** 2:6 7:23
25:4 32:24
54:20 60:20
61:15
**matters** 15:16,16

61:7 63:19
**McCRACKEN** 4:20
**MD** 34:8,9
**MDL** 5:2 8:16 8:18 10:2 13:19
**MEAGHER** 4:9
**mean** 9:1 10:14 22:6 28:5 33:17 46:2,22 47:16,23 50:8
**meaning** 22:15 59:19
**meaningful** 25:4
**medical** 16:11 24:8 41:7
**meet** 57:16 62:1
**meeting** 20:22
**memorialized** 54:14
**memorializing** 63:13
**mention** 22:19
**mere** 58:20
**meta-analysis** 30:15 31:4,6
**Michelle** 3:10 5:4
**middle** 51:9
**mindful** 19:22 20:8 32:25
**minds** 20:22
**minute** 42:18
**misnumbered** 30:10
**moment** 8:10
**money** 33:17 34:5 35:11
**MONTGOM...** 4:20
**moot** 5:24
**morning** 5:6
**mother** 26:11
**MOTLEY** 3:3
**move** 5:24 6:20

8:12 24:17 31:19 37:7
**mparfitt@ash...** 3:13
**multiple** 39:18
**multiples** 39:18

**N**

**N** 3:1 4:18
**name** 45:25
**narrowed** 49:13
**nature** 56:19
**necessarily** 9:19 16:3 32:15 45:25 51:14 58:22
**necessary** 54:4 55:16
**need** 6:13 7:22 8:8 18:2 24:2 36:24 38:9,11 50:25 52:9 54:5 58:11 62:19 63:19,21
**needs** 20:7
**negative** 10:4
**neither** 65:10,13
**new** 1:1,24 2:9 3:5 4:4,10 7:15 7:23 8:5 13:20 13:21,22,22 16:19 28:16 31:4 32:2 59:2 65:4,19
**NIH** 34:7
**nine** 38:10 48:8
**Notary** 2:8 65:3 65:19
**noted** 53:13 55:11 59:5 61:19
**notes** 39:6 47:7 55:7
**notice** 62:22
**November** 28:18
**number** 2:8 26:5

46:8 48:18
**numbers** 29:25
**nutshell** 12:5
**NW** 3:11 4:10

**O**

**O** 4:18
**O'Shaughnessy** 26:20,21
**object** 17:19 56:16 62:10 63:6
**objected** 53:7
**objecting** 32:5
**objection** 44:6 56:23 62:12
**obligation** 52:18
**obtain** 19:14 20:3 42:5 55:15 59:9
**obtained** 19:21
**obviously** 26:18 33:22
**occurred** 15:20
**October** 50:19 59:2
**office** 23:9
**Oftentimes** 20:15
**oh** 23:9 30:11
**okay** 8:7,14 15:4 18:12 19:6 25:19 27:3,25 30:18 33:2,8 34:20 36:5 37:14,22,23 38:1,6,14,25 41:17 42:12,22 43:19 46:19 48:6,7,15,18 49:5,7 54:11
**once** 34:13 40:18
**ongoing** 16:9 17:8 28:7
**opened** 6:7
**opening** 29:2

**operates** 33:14
**opinion** 1:5 5:17 10:10 11:12 13:12,19,19 14:20,24 33:4 37:15 54:13,19 58:25 59:2 63:16
**opinions** 13:3,5 26:17 50:4 55:15
**opportune** 22:18
**opportunity** 7:5 7:14 9:14 44:14 45:6
**opposition** 6:23
**oral** 1:5,5 5:11 5:16 54:19,23
**order** 5:18 7:3 10:13,18,22 16:24 23:17 24:1 52:10,14 54:14 63:13
**orders** 39:23 55:20
**original** 40:20
**outset** 55:6
**ovarian** 42:4
**over-inclusive** 62:17
**overarching** 20:21 32:6 45:12
**overblown** 57:13
**overbroad** 44:6 62:11,17,25
**overlapping** 31:10
**overly** 53:8
**overruled** 56:23
**oversee** 55:12
**owner** 40:20

**P**

**P** 3:1,1 4:18

**package** 47:12
**Page** 27:5,13 55:8
**paid** 34:8,22 35:6 44:22
**paper** 8:20 9:3 11:18 20:14 21:19,20
**papers** 5:12 8:22 11:12 14:11 23:18 25:25 26:6 38:20
**Parfitt** 3:10 5:4 5:4 6:24 9:19 9:22 12:17 15:6 18:12,16 18:20 19:6 21:2,11 22:1 22:23 23:6 27:8,10,18 28:6 30:21 31:1 34:21 36:19 37:9,19 37:22 39:11,13 41:7,22,25 42:13 43:8,12 44:5 45:4 47:15 48:5,24 49:8 54:7,17 64:3,11
**Parfitt's** 36:22 38:3
**PARK** 4:4
**part** 8:18 15:16 17:5 21:20 22:22 23:8,20 28:9 33:9 46:2 55:4,5 63:12 63:13
**participant** 46:1
**participants** 45:23
**particular** 21:15 24:15 39:19 40:8
**particularity**

62:15
**parties** 19:8
20:21 58:24
60:10 61:6
62:1 65:12
**parties'** 5:12
**parts** 15:8
**party** 20:3 59:5
59:8,11,13
62:19
**pass** 46:18
**pathologist**
42:10
**pathology** 33:19
38:16 39:20,21
41:8 42:24
45:13,22 46:13
46:13 48:8
60:23 61:17
**patient** 39:2,19
47:19
**patients** 38:20
39:1
**PATRICK** 3:11
**pay** 35:9 36:1,2
**paying** 33:20
35:14
**peer** 8:20,20,21
8:22,23,24 9:1
9:2 10:3,5,21
10:25 11:3,17
11:19 12:3,4
12:14,20 13:8
13:9,15 14:7
14:16 15:1,16
15:17,20,24
17:21 18:6,18
18:22,25 19:10
19:20 22:22
23:19,21 24:19
25:7,15 26:2
26:22 28:20
29:15 30:4,19
31:10,13,19
32:7 33:3
37:12 49:14

56:12,17,19
57:5,12,21
60:14
**peer-reviewed**
26:5
**Pennsylvania**
2:9 3:18 4:22
**people** 13:21
24:20 25:24
26:24 29:17,19
30:6 45:14,15
**performed** 62:6
**period** 55:20
56:21 59:7,10
**person** 21:15
24:4 40:2 47:9
47:9
**personal** 33:14
**personally** 34:24
**pertains** 17:21
17:22 19:1,12
**Philadelphia**
3:18 4:22 28:7
28:10
**physical** 22:5,13
39:5 43:3
46:15,20 48:9
59:12,17
**physically** 39:9
**physician** 52:17
**pick** 41:20,21
51:21
**picked** 41:19
**picture** 37:20
**piece** 17:20
**pieces** 12:3,4
**Pike** 1:23
**Pisano** 23:17
34:11 50:3
55:11
**Pisano's** 55:8
**place** 5:21 24:4
25:16 39:10,23
65:8
**places** 23:2
40:24 41:6

**plaintiff** 5:5 8:9
10:13 15:5
22:18 27:6
30:19 34:19
35:7 37:6
38:21 42:18
43:2 44:23
46:22,24 47:10
48:3,3 50:23
54:8 64:4
**Plaintiff's** 10:19
**plaintiffs** 3:7,14
3:20 5:3,7 6:18
8:3 10:17 13:3
13:7 14:3
22:10,25 33:21
34:14 43:24
44:11 45:15
46:3,5 47:18
49:15 51:7
55:1,23 56:16
56:18,25 57:2
57:7,17 58:8
58:17 59:24
60:10,18 62:10
62:12,14,22
63:4,7 64:6
**plaintiffs'** 1:7
11:20 26:16
27:15 30:25
35:10,16 36:9
44:13 54:23
55:2 56:13,23
57:10,20 60:12
**play** 24:6 25:10
25:12
**please** 9:20 22:1
**plenty** 52:24
**PLLC** 34:8,9
**point** 6:19 16:12
19:15 20:20
21:21
**pointed** 10:4
**points** 25:21
32:2
**portion** 26:18

**portions** 26:19
**position** 13:8
20:6 30:25
36:9 50:14
**possession** 21:22
22:5,8,13 43:4
48:10 59:6,12
59:17 60:7
**powder** 1:5
10:16 27:21
31:5
**power** 32:2
**PRACTICES**
1:6
**practicing** 52:17
**precise** 11:2
**precisely** 9:1
**prejudice** 56:9
**premature** 61:3
**prepare** 50:25
**prepared** 45:11
**present** 46:25
59:12
**presentation**
55:17
**presentations**
30:2 32:1,2
38:2,4 53:21
60:17
**presumably**
11:16 50:12
**pretty** 28:25
40:8 53:15
**print** 36:13
**prior** 6:11
**private** 17:11
20:8
**privilege** 12:1
28:3 33:10
43:24,25 44:1
44:4
**privileged** 44:7
57:3,6
**probably** 15:10
20:21 32:16
36:16 48:25

**problem** 8:4
9:24 12:2 31:7
33:9 49:18
**Procedure** 52:19
58:1
**proceedings** 2:5
6:1,16 42:16
65:6
**process** 8:3
10:21 15:17,20
15:24 16:9,17
17:8,9,10,11
17:24,24 18:7
18:23,25 19:10
20:8 23:8,20
23:20,21 24:6
24:7,9,15
25:10,11,13
26:8 31:20,20
32:7,7,25
40:25 52:1
55:14 56:17
57:22 60:15
**processes** 15:18
52:5
**processing** 39:24
**produce** 12:19
13:7,9 22:7,16
32:22 50:5,11
55:1,23 57:8
58:23 59:3,5
59:14,20 60:11
**produced** 6:13
6:13,14 12:1
13:11 23:1
28:2 38:23
52:9 57:13
58:11,14
**produces** 47:10
**producing** 49:16
53:17 56:16
**production** 11:6
11:7,9 49:22
50:8 52:24
56:10,12 58:7
60:13,14 61:8

63:1,9,9
**PRODUCTS** 1:5
  1:6
**progress** 20:11
**prompt** 63:25
**promulgated**
  25:23
**PROSPERO**
  28:17
**protected** 32:10
**protection** 44:7
**protective** 10:13
  10:17,22 16:23
  24:1
**protects** 57:20
**provide** 37:5
  52:11
**provided** 34:4,5
  34:7 55:19
  57:4
**public** 2:8 16:16
  17:6 20:11,18
  24:4,11 65:3
  65:19
**publication** 10:1
  21:6,8 36:12
  50:2
**publications**
  18:6 29:11
**publicity** 57:11
**publish** 9:3
  20:14
**published** 8:23
  10:7 11:11,13
  11:16,18 14:7
  14:11,11,18,20
  16:18 17:21
  18:1 19:16,16
  25:13,23 26:5
**purpose** 16:25
  17:1,6 20:9
**purposes** 24:5
**pursuant** 53:24
**put** 10:12 16:23
  23:25 24:13,23
  44:6 52:14

62:22

─────────

**Q**

**qualifications**
  30:5
**quality** 52:8
**query** 13:25
**question** 6:24
  9:16 14:3,6
  16:24 17:15
  21:1 24:1 28:5
  31:9 35:19
  37:13 39:12
  40:11,12 41:10
  50:4
**questioned**
  27:20
**questions** 5:14
  7:4,22 8:9
  42:23 45:3,7
**questions.'** 7:23
**quick** 25:20,21
**quite** 23:12
  61:22 62:16
**quote** 55:11,21
  56:19,21 59:6
  59:7,8,11 62:8
  62:9
**quoted** 10:9

─────────

**R**

**R** 3:1,4 4:18
  65:1
**RACHEL** 4:20
**raise** 24:1 53:6
**raised** 27:6 45:8
**raising** 27:11
**raw** 12:16 17:20
**re-analysis**
  13:20
**re-ask** 7:22
**re-do's** 8:5
**re-review** 7:4
**read** 5:17 17:6
  54:13 55:10
  59:7

**reading** 54:15
**real** 6:10,10 7:6
  25:20 49:18,24
  50:4
**really** 12:15 19:8
  23:19,22 24:24
  25:20 30:3
  40:8 41:3
  49:20
**reason** 10:18
  36:23
**reasonable**
  62:14
**reasons** 55:3,25
  56:24 63:12
**REATH** 4:2
**recall** 10:10
**received** 5:12
  21:9 54:22
  60:11
**recognize** 52:17
**record** 5:2,18
  42:18,21 43:5
  54:13 55:10,13
  55:18 61:4,9
  61:21,24 64:7
**records** 48:13
**rediscover** 7:15
**redo** 16:13
**reduce** 57:15
**reference** 60:2
**referred** 46:1
**refers** 58:24
**reflected** 63:17
**refusing** 32:18
**regard** 7:1 14:4
  16:8 18:4,8
  25:9,14 27:11
  31:21,23 32:6
  35:4,12 39:16
  39:24 40:5
  41:3 49:9
  61:20
**regarding** 30:24
  44:22 61:4,12
**regardless** 32:9

**registered** 28:17
**regular** 27:21
  31:5
**rejected** 62:25
**rejection** 17:13
  25:7
**relate** 28:16,24
  38:15 53:15
**related** 8:19
  12:13 30:7
  39:7 45:18
  46:12 47:3
**relates** 30:16
  38:2 43:21
**relating** 29:7
  33:12 43:23
  53:10 60:22
  62:9
**relative** 65:11,13
**release** 57:11
**relevance** 58:10
**relevant** 56:6,24
  63:2
**relies** 11:11,13
  11:21,23 28:21
**reluctant** 61:22
**rely** 13:12 25:25
**remedy** 23:24
**REMOTE** 1:8
  2:10
**report** 11:14
  13:13,20 14:15
  28:9,21 47:10
  50:25
**Reporter** 2:7
  65:4
**Reporting** 1:22
**reports** 29:11
  47:7 49:21
  50:18
**represent** 34:25
  35:3 44:8 56:1
**representation**
  19:25 38:3
  42:7 43:8
**representations**

36:20,21
**represented**
  60:18
**representing**
  40:15
**represents** 35:10
**request** 7:1 11:6
  11:6,7,8 18:15
  21:14,16 22:14
  29:3,6,10,13
  33:11 34:16
  35:4,17 36:6,7
  44:21 46:8
  49:19 51:18
  53:7,9,12,14
  53:15,24 55:4
  56:4,12,14,15
  57:15 58:3,8
  59:18,23 60:1
  60:9,13,17,22
  61:1,11,14,17
  61:20 62:7,11
  62:12,15,15,17
  62:18,20,20,23
  62:24 63:5
**requested** 39:20
  46:8 49:17
  56:2,7,10,16
  56:24,25 57:3
  57:5,8,12
  58:23 60:8
**requesting** 28:14
  28:15,23 30:23
  38:12
**requests** 6:9
  7:21 12:11
  18:5 29:24
  30:24 31:8
  32:11,24 33:7
  35:2 38:10
  51:23 56:14
  58:4,7 62:5,13
  62:21,25 63:1
**require** 37:4
  52:23
**required** 59:11

62:14
**requirement** 62:16
**requirements** 33:25
**research** 34:7 35:13
**reserved** 61:20
**reserves** 60:25
**respect** 23:6,15 33:1
**respond** 22:24 34:21 47:15 51:5,23 58:4
**response** 27:6,14 27:17 35:24 51:2 54:23 58:15 60:18
**responses** 32:14 32:15 58:17 60:4
**responsibilities** 51:22
**responsive** 22:13 44:25 51:3 58:9,18,20 59:17,20,25 60:6,15 62:23
**rest** 47:14
**resubmit** 9:14 20:16
**resulting** 56:9
**retired** 1:16 33:14
**return** 40:25
**returned** 39:22 40:20 51:19,20
**reversed** 30:11
**review** 8:20,20 8:22,22,23,24 9:1,2,6,14 10:3 10:5,21,25 11:3,17,19 12:3,4,14,20 13:8,9,15,17 14:8,9,16 15:2

15:17,20,24 18:18,23,25 19:10,20 22:22 23:19,21 24:19 24:20 25:7 26:2,22 28:20 29:15 30:4,19 31:11,19 32:7 33:3,19 35:6 37:12 44:10 49:14 53:1 56:13,17,19 57:5,12,22 60:15
**reviewed** 5:13 14:7 15:16 17:21 18:6 24:11 25:15
**reviewers** 31:14 56:20
**reviewing** 16:19
**reviews** 16:8 35:7
**revisions** 29:11 36:8 53:22
**rgoodman@m...** 4:23
**RHOADS** 4:20
**RICE** 3:3
**richard.berna...** 4:12
**right** 14:22 18:16 21:7 22:14 24:24 26:12 27:18 31:1 36:17 59:9,14
**rigorous** 24:9,15
**risk** 56:20
**road** 34:10
**room** 26:4
**round** 6:12
**RPR** 65:18
**rule** 8:1,2 61:3 61:23
**ruled** 34:11

**rules** 52:19,20 56:22 58:1,13 60:13
**ruling** 55:9 57:24 60:1,2
**rulings** 5:20 63:14

_____
**S**
**S** 3:1,16 4:18,18
**Saed** 10:1,6 11:15,21 12:14 12:19 14:17 15:12 34:13 48:16 49:9,12 49:17 50:2,5,9 51:1,6,14,18 51:19,25 52:2 52:14,19 55:3 56:15 58:22 59:16 62:4
**Saed's** 62:10 63:8
**salary** 34:22
**SALES** 1:6
**samples** 45:22
**satisfy** 62:16
**save** 18:15
**saw** 42:25
**saying** 21:14 25:10,14 31:17 51:6,7
**says** 13:19 14:14 16:22 34:6
**SCHNEIDER** 1:16 5:1,10 6:2 6:21 8:7,25 9:8 9:15 10:23 12:8 14:2,22 15:4 18:10,13 18:17 19:4 20:25 21:3,24 22:2 23:4 25:19 26:10 27:2,4,12,25 28:12,22 29:4

29:23 30:18,22 33:2 34:17 36:5 37:2,10 37:14,25 38:6 38:17,25 39:8 41:5,10,17,23 42:12,17,25 43:10,16,25 44:3,19 46:6 46:19 48:4,6 48:19,22 49:2 49:5 50:17,20 50:23 52:12 54:2,11,18 64:8
**science** 24:10,11 24:14,15 25:22 25:23
**scientific** 24:8 25:3,11 55:16
**scientist** 24:16
**scientists** 24:12 34:23
**scurrilous** 10:19
**sealed** 17:5 26:19
**second** 7:14 22:22 56:5,11
**secret** 23:2
**SEDRAN** 3:16
**see** 6:22 18:5 21:9 27:14 30:11 50:3
**seeing** 7:18
**seek** 44:21
**seeking** 62:7
**seeks** 33:11 36:7 60:22 61:11,17
**send** 9:10 21:8 41:19
**sends** 9:5 42:14
**sense** 7:11 21:18
**sent** 15:21 21:5,6 21:10 39:20 40:4 41:6 48:14

**separately** 30:20 37:15
**September** 52:24 63:10
**serious** 17:24 32:24,24
**serve** 54:19 62:20
**served** 12:11 51:18
**set** 24:8 47:14 59:19 65:8
**seven** 7:6 12:3 30:7,9 38:9
**Sharko** 4:3 5:8,8 6:3,6,17 8:12 8:14 9:2,10,18 9:20,23 11:5 12:12 14:10,23 16:22 25:20,21 26:13 27:3,8 28:1,13,15 29:2,6 30:1 31:3 32:10 33:5,8 34:20 36:7 37:11,12 37:18,21,23 38:1,10,14,19 39:3,11 40:23 41:12,14,16 42:15,19,22 43:16,20,21 44:1 45:1,12 46:7,10 47:2 47:17 48:17,21 48:25 49:3,12 50:19,22 53:6 54:9 63:23 64:10
**Sharko's** 27:13 43:6 63:18
**Sharon** 2:7 65:3 65:18
**short** 11:15
**side** 28:11
**sides** 22:9

significant 17:9
    17:18 23:12
similar 62:24
    63:4
Similarly 40:5
simply 22:4
    24:21 51:17
    56:6 62:17
single 11:20
sitting 26:3,6
situation 16:6
    51:17 59:8
six 13:3 30:5
SKADDEN 4:9
SLATE 4:9
slide 32:1
slides 35:7 39:17
    40:7,19 42:3,4
    42:9
smart 26:23
Smith 23:15
Smith-Bindman
    8:21 11:10
    12:15 13:6
    14:13 15:10
    17:23 18:3
    19:13 20:1
    23:10 27:5,14
    27:20,23 28:9
    29:18 30:25
    32:20 55:2
    56:14 57:21,22
    58:3,4
Smith-Bindm...
    53:14
solves 10:22
Somebody 33:19
sorry 9:22 44:23
    57:23
sort 29:24 61:7
sound 50:24
source 35:15
    59:10
sources 41:9
South 1:23
speak 35:24 45:6

Special 1:16 5:1
    5:10,17 6:2,21
    8:7,10,25 9:8
    9:15 10:23
    12:8 14:2,22
    15:4 18:10,13
    18:17 19:4
    20:25 21:3,24
    22:2 23:4
    25:19 26:10
    27:2,4,12,25
    28:12,22 29:4
    29:23 30:18,22
    33:2 34:17
    36:5 37:2,10
    37:14,25 38:6
    38:17,25 39:8
    41:5,10,17,23
    42:12,17,25
    43:10,16,25
    44:3,19 46:6
    46:19 48:4,6
    48:19,22 49:2
    49:5 50:17,20
    50:23 52:12,21
    54:2,11,18,20
    54:22,25 55:6
    56:22 57:17,23
    58:13,24,25
    59:4 60:4,12
    60:25 61:2,8
    61:19,22,24
    62:3,18 63:3,5
    63:14,17 64:8
specific 5:20
    11:2 12:9
    18:14 25:1
    28:23 43:13
specifically
    15:11 28:13
    30:9 35:2
specimen 39:2
    46:20
specimens 38:16
    38:18,22 39:1
    39:5 40:4

41:18 43:4,5
    45:14 46:13,14
    46:16 48:13
    60:23 61:5
spent 33:17
spoke 34:24
spoken 35:1
spoliation 36:17
sports 49:11
spreadsheet
    41:21
stack 47:7
stage 16:25
    20:19
stand 27:20
standard 22:8
    25:8
start 5:21 6:5
    38:13
starting 5:3
    28:18
state 2:8 51:21
    58:17 65:4,19
stated 58:16
    60:15
statement 33:10
    55:8
states 1:1 34:3
static 10:19
Status 64:14
stenographica...
    2:6 65:7
step 24:16
stones 51:13
streamlined
    52:6
STREET 3:11
    3:17 4:21
struggling 19:10
studies 12:13
    13:18 14:6
    18:9 33:15,16
    33:18 43:22
    60:23
study 11:9 12:10
    13:12 29:12,14

29:16,20,22
    30:2,6,8,12,14
    30:24 31:3
    32:2 34:4
    42:10 44:22
    45:23 46:1
    53:10
stuff 40:17
subject 10:2
    11:6 14:15
    25:4 55:19
    57:25 58:10
    60:5,20 61:15
subjects 18:9
    42:2
submission 16:1
submissions
    29:12 53:21
submit 16:7,10
submitted 9:5
    11:25 15:20
    36:12
substantially
    49:13
subsume 62:20
sufficient 53:2
suggest 47:17
suggested 7:12
suggesting 47:16
SUITE 3:4,17
summaries
    30:13 53:18
summarize
    29:24
summary 14:20
    14:25
supplied 14:1
Support 34:3
supporting 57:4
supports 12:5
suppose 48:22
sure 13:7 21:17
    27:10 30:21
    53:11
surprise 22:4
Susan 4:3 5:8

9:22 37:17,19
    40:2
susan.sharko...
    4:5
suspect 13:10
    17:1 22:20
    33:21 36:1
    39:4
sustained 62:13
system 50:9

T
T 4:18 65:1,1
take 7:6 12:9
    13:13 15:8
    20:5,6 51:12
taken 2:6 65:6
takes 9:4 49:20
Talc 5:2 8:17
    52:16
talcum 1:5 27:21
    31:5
talk 22:21 31:14
    64:9
talking 8:9 12:3
    15:12 18:14,18
    19:2 27:19
    27:7,8
technical 53:19
techniques
    13:22
tell 12:2
telling 36:23
tells 13:23
ten 38:10 50:8
    50:14 51:6
term 59:7
terms 55:20
territory 32:16
test 13:24
testified 52:3
testify 52:22
testimonial
    52:16
testimony 10:2
testing 38:15

60:23
**thank** 6:6 8:14
  15:6 27:1 33:8
  48:21 54:9,10
  63:24,25 64:10
  64:11,13
**thing** 26:20
  51:11,24
**things** 6:14
  10:20 40:1
  47:7
**think** 5:13,21
  6:25 7:17 8:3,4
  8:8,10 10:9
  11:12 17:17
  18:2,10 19:1,8
  20:7,20 22:18
  22:21 23:5
  24:6 25:20
  27:4,8,19 30:3
  32:14,17 33:5
  36:24 37:2,19
  39:11 44:5,5
  45:23 46:23
  47:5 48:25
  49:12 50:14
  51:9 53:5,23
  54:3
**third** 7:20 20:3
  60:10
**thirty** 53:1
**thirty-five** 46:5
**Thirty-two-an...**
  51:8
**thorough** 32:13
  54:8
**thousand** 46:5
**three** 10:24 14:4
  19:2 25:21
  56:13 57:7
**thrown** 51:13
**time** 6:22 7:3,6
  7:16,25 13:18
  13:19 16:12
  19:15,17 22:18
  24:24 25:16

34:18 49:24
  50:6,12,14,25
  51:5,16 52:2,2
  52:6,9,25 53:2
  55:24 56:2
  65:7
**timeline** 7:1,11
**times** 10:6 20:4
  20:13
**timing** 63:8
**tires** 13:25
**tissue** 39:5,16
  41:3,4 44:11
  47:21,23
**today** 27:19,23
  50:20
**topic** 24:19
**track** 43:6
**transcript** 2:5
  65:6
**trial** 26:21 28:6
  52:22 57:25
**tried** 10:6
**true** 56:8 58:15
  65:5
**truth** 36:23
**truthful** 17:12
**try** 53:24
**trying** 11:10,18
  22:25 23:2
  32:25 40:16
  42:7
**turn** 6:3 7:8 14:3
  15:5 31:9
  32:18 48:1
  49:9
**turned** 10:14
  44:12,14
**turning** 25:9
**twenty-five** 12:4
**two** 10:6,6 13:1
  13:2 14:5 23:9
  55:25 57:2
**type** 10:13 23:25
  23:25 30:14
  32:4 41:2 52:4

62:19
**types** 50:11

_____

**U**

**ultimately** 34:13
**unacceptable**
  62:21
**undergoing** 8:21
**underlying**
  13:16 15:2
  55:16 60:24
**understand**
  11:17 14:5,15
  23:7 32:15
  33:13 44:21
**understanding**
  30:15 38:11
**unduly** 57:8
**unfair** 12:25
**unforeseen** 5:16
  5:19
**UNITED** 1:1
**University** 13:21
**unreasonable**
  50:24
**upstanding**
  24:12
**use** 8:2 24:4
  26:17,17,22
  27:21 28:11
  31:5
**useful** 16:25
  17:1
**USMJ** 1:16
**usually** 15:23
  16:1 39:21

_____

**V**

**v** 23:15
**vague** 34:2 44:6
**Vance** 2:7 65:3
  65:18
**veer** 32:12
**version** 11:15
**versions** 14:12
**versus** 58:25

**video** 41:15
  54:12,16
**VIDEOCONF...**
  1:8 2:10
**Videoconfere...**
  1:22
**virtue** 31:17
**vis-a-vis** 18:3
**vitro** 62:5

_____

**W**

**wait** 12:25 28:1
  36:25 42:18,19
**WALKER** 4:20
**WALNUT** 3:17
**want** 7:19 9:3
  11:3 12:13,14
  12:16,16 16:24
  18:21 23:7,11
  25:6 26:15,16
  26:22 29:1
  32:12 33:20
  39:13 42:6
  49:17
**wanted** 34:25
  43:6
**wanting** 40:11
**wants** 10:13
**WASHINGT...**
  3:12 4:11
**wasn't** 27:17
  31:21 52:4
**way** 13:24 20:9
  31:11 34:15
  35:20,25 42:7
  45:8 53:10
  62:9
**Wayne** 51:21
**we'll** 5:24 10:17
  14:3 16:23
  18:18 26:23
  30:19 31:25
  41:12
**we're** 5:10 6:14
  7:11,13,17,18
  7:20 10:20,21

12:3 18:11,17
  19:2,9 20:14
  24:7,23 25:10
  25:14,15 28:8
  28:15 32:18,22
  32:25 33:5
  37:4 45:24
  50:10 51:17
  52:1 53:16,17
  63:18
**we've** 15:15
  34:10 40:3
  45:17 47:12
  63:16
**website** 28:18
**week** 49:21
**weeks** 35:19
**went** 35:1 43:1
**weren't** 6:13
  21:10
**Westlaw** 59:1
**White** 1:23
**willing** 12:19
**wish** 20:6 41:2
**withheld** 44:15
**witnesses** 7:2
  25:24,24
**witnesses'** 55:24
**Wolfson's** 10:9
**woman** 13:11
  41:8
**wonder** 27:7
**wondering**
  26:11
**word** 36:22
**words** 11:1
**work** 29:8,9
  43:23 61:12
**worked** 15:12
**working** 26:24
  29:17,20 30:6
  40:24 42:4
**works** 53:20
**world** 26:11
**worry** 41:12
**wouldn't** 17:19

DocuSign Envelope ID: 51736FD6-57B1-45AC-A76A-A1019B842074

**wrap** 33:3
**write** 36:3
**writing** 21:19
25:5
**written** 24:20
25:2 31:16
**wrong** 12:18
**wrote** 8:21 13:23

**X**

**X** 16:12
**XI00211300**
65:20

**Y**

**Y** 16:12
**yeah** 25:21
37:18 44:19
48:17 49:2
**YORK** 4:10
**your's** 19:5
**Yup** 37:21

**Z**

**Z** 16:12
**Zoom** 1:8 2:10
5:19

**0**

**07932** 4:4
**08002** 3:5
**08106** 1:24

**1**

**1** 29:7,24 30:24
33:11 34:19
35:4 56:15
58:4,8 59:15
59:18 60:1
**10** 48:19,20 49:1
53:7,24 62:7
62:16,20,24
**10:26** 64:14
**101** 3:4
**13** 28:18
**1440** 4:10
**1735** 4:21

**18** 59:2
**1825** 3:11
**19103-7505** 4:22
**19106-3697** 3:18

**2**

**2** 6:20 8:13,19
26:2 27:5,13
29:10,24 34:16
36:6,7 55:8
56:15 59:23
**20** 5:11,22 27:13
54:21
**20005** 4:11
**2006** 3:12
**2012** 59:1,2
**2019** 23:18
28:18 55:9
**202-371-7410**
4:11
**202-759-7648**
3:13
**2021** 1:13 54:23
54:24 63:10
65:20
**2022** 65:19
**21** 5:11 54:21
**210** 3:4
**215-592-1500**
3:19
**215-592-4663**
3:19
**215-772-7411**
4:22
**215-772-7620**
4:23
**21st** 4:21
**22** 50:19
**22nd** 52:24
63:10
**26** 23:18
**26th** 54:23 55:8
**27** 1:13 54:24
65:20
**27th** 50:21

**3**

**3** 29:13,25 37:7
37:11,12 50:16
56:14 60:9
**3:16-md-2738-...**
1:2
**30** 65:19
**30X100211300**
2:8
**3rd** 49:20

**4**

**4** 37:16,24 38:2
56:15 60:17

**5**

**5** 56:14
**500** 3:17
**510** 3:17
**515** 1:23
**5183908** 59:1

**6**

**600** 4:3

**7**

**7** 38:13 46:10,12
46:15,21 60:22
61:20

**8**

**8** 30:10,16 43:19
43:21 61:11
**800-674-9725**
3:12
**800-768-4026**
3:6
**856-488-7797**
1:17
**856-546-1100**
1:25
**856-667-0500**
3:5
**856-667-5133**
3:6
**877-882-1011**

3:18

**9**

**9** 30:12,24 46:11
46:13,17,18,20
58:5 61:17
**9:00** 2:10
**9662** 55:9
**973-360-9831**
4:5
**973-549-7350**
4:4