DocuSign Envelope ID: C8E6AF1A-5E8C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Docket No. 3:16-md-2738-FLW-LHG

_____

IN RE:

JOHNSON & JOHNSON TALCUM      STATUS CONFERENCE VIA
POWDER PRODUCTS MARKETING,        REMOTE ZOOM
SALES PRACTICES AND PRODUCTS    VIDEOCONFERENCE
LIABILITY LITIGATION

_____


*      *      *      *

THURSDAY, SEPTEMBER 16, 2021

*      *      *      *


BEFORE:  SPECIAL MASTER JOEL SCHNEIDER, USMJ, RETIRED
         jschneider@mmwr.com
         856-488-7797



MASTROIANNI & FORMAROLI, INC.

Certified Court Reporting & Videoconferencing

515 South White Horse Pike

Audubon, New Jersey 08106

856-546-1100

DocuSign Envelope ID: C8E6AF1A-9E8C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 2

1

2

3

4

5

6                    Transcript of proceedings in the

7    above matter taken stenographically by

8    Theresa Mastroianni Kugler, Certified Court Reporter,

9    license number 30X100085700, Notary Public of the

10   State of New Jersey and the Commonwealth of

11   Pennsylvania, VIA ZOOM REMOTE VIDEOCONFERENCE,

12   commencing at 4:59 PM.

13

14

15

16

17

18

19

20

21

22

23

24

25

September 16, 2021

Page 3

DocuSign Envelope ID: C8F6AF1A-5E8C-4AEA-B9A6-5F83D9BEE2C

```
 1    A P P E A R A N C E S :

 2

 3         MOTLEY RICE, LLC
           BY:  DANIEL R. LAPINSKI, ESQUIRE
 4         210 LAKE DRIVE EAST - SUITE 101
           CHERRY HILL, NEW JERSEY  08002
 5         856-667-0500
           FAX - 856-667-5133
 6         800-768-4026
           dlapinski@motleyrice.com
 7         ATTORNEYS FOR THE PLAINTIFFS

 8

 9         ASHCRAFT & GEREL, LLP
           BY:  MICHELLE A. PARFITT, ESQUIRE
10         1825 K STREET, NW
           WASHINGTON, DC  2006
11         800-674-9725
           202-759-7648
12         mparfitt@ashcraftlaw.com
           ATTORNEYS FOR THE PLAINTIFFS

13

14
           BEASLEY ALLEN LAW FIRM
15         BY:  LEIGH O'DELL, ESQUIRE
           218 COMMERCE STREET
16         P.O. BOX 4160
           MONTGOMERY, ALABAMA  36104
17         800-898-2034
           FAX - 334-954-7555
18         leigh.odell@beasleyallen.com
           ATTORNEYS FOR THE PLAINTIFFS

19

20
           FAEGRE DRINKER BIDDLE & REATH, LLP
21         BY:  SUSAN M. SHARKO, ESQUIRE
           600 CAMPUS
22         FLORHAM PARK, NEW JERSEY  07932
           DIRECT - 973-549-7350
23         FAX - 973-360-9831
           susan.sharko@faegredrinker.com
24         ATTORNEYS FOR THE DEFENDANT,
           JOHNSON & JOHNSON and JOHNSON & JOHNSON
25         CONSUMER COMPANIES, INC.,
```

DocuSign Envelope ID: C8E6AF1A-5E8C-4AEA-B9A6-5F831D9BEE2C

September 16, 2021

Page 4

1
         CHRISTINE HAAS GEORGIEV,
2        PRINCIPAL CAMPUS COUNSEL
         UC LEGAL - OFFICE OF THE GENERAL COUNSEL
3        UCSF OFFICE OF LEGAL AFFAIRS
         499 ILLINOIS - SECOND FLOOR
4        SAN FRANCISCO, CALIFORNIA  94148
         415-539-8561
5        christine.haasgeorgiev@ucsf.edu
         ATTORNEY FOR UNIVERSITY OF CALIFORNIA
6        SAN FRANCISCO

7

8
   A L S O   P R E S E N T:
9

10
         MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
11       BY:  RACHEL L. GOODMAN, ESQUIRE
         1735 MARKET STREET
12       21st FLOOR
         PHILADELPHIA, PENNSYLVANIA  19103-7505
13       215-772-7411
         FAX - 215-772-7620
14       rgoodman@mmwr.com

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: C8E6AF1A-6E8C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 5

1              SPECIAL MASTER SCHNEIDER:  We're on the

2     record in the Talc Federal MDL.

3              The reason we're here is because late

4     yesterday we received a letter from the University of

5     California regarding an order that I had entered

6     several weeks ago.  For the record, it was the

7     Special Master Order Number 10.  It was dated August

8     30th.

9              So in order to address this issue, we

10    had originally scheduled Zoom for Monday, but

11    Ms. Sharko alerted me that the deposition of Dr.

12    Smith-Bindman is upcoming and today is the deadline,

13    pursuant to the court's scheduling order, to produce

14    the documents.  So without thinking too much, I

15    rushed and scheduled a Zoom at 5 o'clock today, not

16    realizing or forgetting about the Jewish holiday

17    today.

18              So I do want to apologize for those who

19    are celebrating the holiday who can't be on this

20    Zoom.  If I had given the matter appropriate thought,

21    I would not have scheduled it today, I would have

22    waited a day or two not to interfere with the

23    religious observance.  But I don't think anyone is

24    going to be prejudiced because we have

25    representatives of the interested parties on the

DocuSign Envelope ID: C8F6AF1A-5F8C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 6

 1   Zoom.

 2               So why don't we start with the entries

 3   of appearance starting with the plaintiffs.

 4               Who is going to represent the

 5   plaintiffs on this Zoom?

 6               MR. LAPINSKI:  Your Honor, good

 7   afternoon.  Daniel Lapinski from the Motley Rice Law

 8   Firm on behalf of the plaintiffs.

 9               MS. O'DELL:  Leigh O'Dell from Beasley

10   Allen on behalf of the plaintiffs.

11               MS. PARFITT:  Your Honor, Michelle

12   Parfitt on behalf of the plaintiffs.

13               SPECIAL MASTER SCHNEIDER:  And for the

14   defendants?

15               MS. SHARKO:  Susan Sharko from the

16   Faegre Drinker Law Firm for the Johnson & Johnson

17   defendants.

18               SPECIAL MASTER SCHNEIDER:  And is there

19   a representative of the University of California on

20   the Zoom?

21               MS. HAAS GEORGIEV:  Yes, sir.  Yes,

22   your Honor.  It's Christine Haas Georgiev, Principal

23   Campus Counsel for the Regents of the University of

24   California, San Francisco.

25               SPECIAL MASTER SCHNEIDER:  Okay.  So

DocuSign Envelope ID: C8E6AF1A-6F8C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 7

```
 1   just by way of introduction, I'm the Special Master
 2   in the Talc MDL.  I've communicated with Chief Judge
 3   Wolfson about this matter and we both agreed that
 4   since the letters you sent concerned an order that I
 5   had entered, that it's appropriate for me to address
 6   this dispute.
 7               I have the letter that The Regents
 8   served yesterday.  I also have the letter that I
 9   received today.  It's been fully reviewed as well as
10   the case that you cited, so you don't have to be
11   concerned that although the letter came in this
12   afternoon that it wasn't reviewed.  It was reviewed.
13               So there are two main parts, issues
14   that I would like to address.  One is the procedural
15   issues and two is the merits.
16               Procedurally, I just have a question
17   whether, in my words, the dispute was appropriately
18   teed up.  I'm not quite sure if a motion is
19   necessary.  Certainly, reconsideration under the
20   rules is untimely and I don't know if the moving
21   party, The Regents, even has standing to object to a
22   subpoena directed to Dr. Smith-Bindman, unless you
23   tell me you're representing Dr. Smith-Bindman.
24               So they're the procedural issues.  And
25   after we get through that, we can get to the merits
```

DocuSign Envelope ID: C8E6AF1A-5E8C-4AFA-B9A6-5F83JD9BEE2C

September 16, 2021

Page 8

1   of the dispute.

2            So let me hear from counsel in the

3   case, first.  I mean I'm not quite sure what the

4   correct procedure is or should have been for The

5   Regents, the university, what have you, whatever they

6   want to be called, to raise this issue.  Should they

7   have filed a motion to intervene?  Should they have

8   filed a motion for a protective order?  I'm not quite

9   sure procedurally how they should have done it apart

10  from the issue of standing to object to a subpoena

11  directed to a third person.

12           So I guess, Ms. Sharko, do you want to

13  address that in the first instance?

14           MS. SHARKO:  Sure, your Honor.  And I

15  did not receive any submissions that were made today.

16  We only got the letter that was sent to Chief Judge

17  Wolfson yesterday.

18           SPECIAL MASTER SCHNEIDER:  Rachel, do

19  you have a copy of that letter, the one that just

20  came in?  It was largely duplicative.  Not identical,

21  but it was largely duplicative, so I don't think

22  you're missing something.  So while we're on the

23  phone, what I'm going to do is -- Rachel, are you

24  there?

25           MS. GOODMAN:  I'm here.

DocuSign Envelope ID: C8E6AF1A-5E8C-4AEA-B9A6-5F83ID9BEE2C

September 16, 2021

Page 9

 1              SPECIAL MASTER SCHNEIDER:  I'm going to

 2   forward you a copy of the letter.  I'm doing that

 3   right now.  And I would ask that you just serve

 4   everybody on the Zoom with the letter while we're

 5   talking.

 6              MS. GOODMAN:  Okay.  Great.  I'll send

 7   that right out.

 8              MS. SHARKO:  Thank you.

 9              I don't believe that the University of

10   California at San Francisco or The Regents or

11   whatever it is has standing to make this argument.

12              What we're dealing with is a study that

13   Dr. Smith-Bindman did as part of her work as an

14   expert witness for the plaintiffs.  I believe that

15   the study was funded in whole or in part by the

16   plaintiffs' lawyers, the doctor relies on it in her

17   expert report, and I'm fairly certain that she wasn't

18   acting on behalf of the university or The Regents

19   when she did this.  I mean the woman is a radiation

20   oncologist.  This is not even within her research

21   wheelhouse.

22              But going back to the question, no, I

23   don't think the university has standing at all.  And

24   beyond that, the arguments that were raised by the

25   university, at least in the first letter from

DocuSign Envelope ID: C8E6AF1A-6589-4AFA-B9A6-5F831D9BEF2C

September 16, 2021

Page 10

1  yesterday, are precisely the same arguments that the

2  plaintiffs made in opposition to our initial

3  application.  And those arguments were thoroughly

4  considered by your Honor.  And yes, the application

5  is untimely in any event.

6              SPECIAL MASTER SCHNEIDER:  And before

7  we get to the merits, I just want to deal with the

8  procedural issues first.

9              For the university, counsel, do you

10  want to be heard on this?

11              MR. LAPINSKI:  Your Honor, I'd like to

12  be heard as well and I don't know if you want me

13  to --

14              SPECIAL MASTER SCHNEIDER:  Okay.

15              MR. LAPINSKI:  -- speak before or after

16  counsel for the university.

17              SPECIAL MASTER SCHNEIDER:  Well, let me

18  hear from the university first --

19              MR. LAPINSKI:  Sure.

20              SPECIAL MASTER SCHNEIDER:  -- because

21  Ms. Sharko -- well, Ms. Sharko is correct that we

22  argued this issue previously.  The arguments were

23  similar to those presented now, not quite identical.

24  Certainly the university has cited cases that the

25  plaintiffs didn't cite, but the plaintiffs were heard

DocuSign Envelope ID: C8F6AF1A-658C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 11

1   on the issue and the court didn't rule in their

2   favor.  So let me hear from the university first and

3   then, Mr. Lapinski, we'll hear from you.

4               MR. LAPINSKI:  And your Honor, I'm

5   sorry.  If I could just make one or two statements

6   just to clear up a few things that Ms. Sharko said

7   before anyone from the university talks.

8               And the couple points that I want to

9   clear up is that, one, the work that we're talking

10  about is not work that was funded by plaintiffs'

11  counsel.  So Ms. Sharko's representation that it's

12  work that was funded by plaintiffs' counsel is

13  incorrect because we haven't paid for any of the work

14  that Dr. Smith-Bindman did.

15              The second point that she brought up

16  was that it's work that was done as part of her work

17  as an expert witness, which it was not.  The work

18  that we're dealing with right now is work that was

19  done by Dr. Smith-Bindman independently after she had

20  submitted her expert report, after she had provided

21  testimony as it relates to her expert report.

22              In a subsequent trial, Dr.

23  Smith-Bindman testified to the fact that it was the

24  interest that she had in the topic that she wrote her

25  expert report on that led her to decide, within the

September 16, 2021

Page 12

1   university context, to do the research that is

2   currently at issue now.  But it's not research that

3   she did as part of her work as an expert and it's not

4   research that she's relying upon in support of her

5   expert report.

6            And then the last thing I'll bring up

7   is that to say that this is something that's not in

8   her wheelhouse as a researcher, Dr. Smith-Bindman is

9   a renowned epidemiologist.  And that's exactly the

10  work that she's doing here.  So I just wanted to

11  bring those points up, your Honor, and then I

12  apologize that I jumped in.

13           SPECIAL MASTER SCHNEIDER:  Can I ask a

14  question?  Because you raised a critical point, Mr.

15  Lapinski.  And it's the first time I'm hearing this

16  argument from plaintiffs.

17           In your words, you argued that Dr.

18  Smith-Bindman is not, quote/unquote, relying on this

19  study or these documents in connection with this

20  case.  That's not the standard for discovery of an

21  expert's material.  The standard is whether it was,

22  quote/unquote, considered.  And as I stated in my

23  oral opinion when this issue came up, that's given a

24  very broad reading.

25           So even if a testifying expert doesn't,

DocuSign Envelope ID: C8E6AF1A-6589-4AF4-B9A6-5F831D9BEE2C

September 16, 2021

Page 13

1   quote/unquote, rely on something, if they considered

2   it, it's discoverable.

3                This is the very first time I'm ever

4   hearing some type of insinuation that Dr.

5   Smith-Bindman did not consider this information in

6   connection with her expert opinion.  It certainly

7   wasn't argued the last time we were together and I

8   don't even know if you're making that argument.

9                Are you arguing that Dr. Smith-Bindman

10  did not, quote/unquote, consider this information?

11               MR. LAPINSKI:  Your Honor, what I can

12  say as I sit here without me confirming with Dr.

13  Smith-Bindman, and Ms. O'Dell might be able to jump

14  in and provide more substance to that, I know that

15  the report that she submitted in the MDL and the

16  amended report in the MDL, she's not relying upon the

17  information.  I don't believe she considered it, but

18  I have to defer to Ms. O'Dell who is closer to the

19  issue than I am in that regard.

20               SPECIAL MASTER SCHNEIDER:  Ms. O'Dell,

21  do you have anything to add?

22               MS. O'DELL:  Your Honor, she certainly

23  was aware of it because obviously the work was

24  ongoing.  Is that considering it, you know, for

25  purposes of reaching her opinion?  No.  Her opinions

DocuSign Envelope ID: C8F6AF1A-658C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 14

```
 1    are the same.  But she certainly had information

 2    about the study because it was ongoing with her

 3    colleagues there at UC San Francisco.

 4              So Dan is quite correct on the points

 5    he made.  She doesn't rely on it to reach her

 6    opinions.  Her opinions are based on her systematic

 7    review that's outlined in her report that has a

 8    different design in terms of the studies included and

 9    the results reached.

10              So that's how I can respond to that and

11    we can certainly add more detail after talking with

12    Dr. Smith-Bindman, but that's my understanding.

13              SPECIAL MASTER SCHNEIDER:  Ms. Sharko?

14              MS. SHARKO:  Yes.  So first of all, we

15    have no affidavits from Dr. Smith-Bindman.  We have

16    no discovery on this study because it's brand new.

17    If we go back to Dr. Smith-Bindman's first report,

18    she did a study which was discussed in her expert

19    report.  She was deposed on it.  The underlying

20    documents were produced.  And a lot of questions were

21    raised about that first study and how it was done.

22    So many questions were raised that the judge in

23    Philadelphia, where a trial is ongoing, wouldn't let

24    it come into evidence.  I know plaintiffs were then

25    trying to get reconsideration of that ruling, I don't
```

DocuSign Envelope ID: C8F6AF1A-658C-4A5A-B9A6-5F831D9BEE2C

September 16, 2021

Page 15

1    know if the judge ruled.

2                    SPECIAL MASTER SCHNEIDER:  Are we

3    talking about the new documents?

4                    MS. SHARKO:  No.  No.  We're talking

5    about her first study.

6                    So then after the Daubert Hearing, as

7    your Honor knows, we went to the amended expert

8    reports.  And Dr. Smith-Bindman, in that expert

9    report, discusses the new study, which I believe she

10   said in her expert report is similar to the old

11   study, but different.  She brought in different

12   people to help her.  And we don't know a lot about

13   that because we haven't taken her deposition.

14                    I think that discovery on the funding

15   of that study will be interesting.  We haven't had

16   that yet.  But to say that she didn't consider that,

17   I don't know how you could say that.  It's work that

18   she did.  It's directly on point with her opinions

19   and I don't see how that bell can be unrung, how she

20   can be divorced from that.

21                    SPECIAL MASTER SCHNEIDER:  Did she cite

22   to it in her supplemental report?

23                    MS. SHARKO:  Yes.  That's how --

24                    (Indiscernible crosstalk)

25                    MS. O'DELL:  -- I've got it in front of

DocuSign Envelope ID: C8F6AF1A-6582-4AF4-B9A6-5F831D9BEE2C

September 16, 2021

```
 1   me.

 2                The only thing that she said is that --

 3   and I'm just turning the report in front of me.  And

 4   if the court is interested, I'd be happy to clarify

 5   maybe some misunderstandings Ms. Sharko has about

 6   what's occurred in Philadelphia, because I've been

 7   very involved in that.

 8                But she goes on to say in her report

 9   that -- excuse me, I'm on the wrong page, your Honor.

10   Just let me turn to it because I want to be precise.

11                I apologize for the moment.

12                MR. LAPINSKI:  On page 17, Leigh.

13                MS. O'DELL:  Thank you.

14                What she says in her report dated July

15   the 2nd is that she decided to publish a

16   meta-analysis and that it's a separate analysis.  It

17   was performed with colleagues from UC San Francisco

18   who are not involved in litigation.

19                She did disclose that she had

20   registered the study and that it would have similar

21   but not identical methodology.  And that she included

22   not only the published studies but she also, this is

23   what she said, that she obtained additional raw data

24   from one of the cohort studies that have been at

25   issue in the case, the Nurses' Health Study One,
```

DocuSign Envelope ID: C8F6AF1A-6582-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 17

1   which has not been previously made available in the

2   public.  So it's a different study.

3                I say, your Honor, she was certainly

4   aware of that information, but it's not something

5   that is being considered for purposes -- she's aware,

6   but not being considered for purposes --

7                SPECIAL MASTER SCHNEIDER:  Why did she

8   cite to it, if she didn't consider it?

9                MS. O'DELL:  I think she wanted to be

10  forthright.  I mean she wanted to say it was coming

11  and for full disclosure purposes.

12                SPECIAL MASTER SCHNEIDER:  In essence,

13  is she going to say that since she was last deposed

14  they did a similar, although not identical, study and

15  it supports the results of the initial study?

16                MS. O'DELL:  I don't know.  I don't

17  know that she'll say that, your Honor.  I think that

18  the study will stand on its own.  It will be in the

19  literature and it will be -- it's a distinct study

20  with other colleagues -- that she's done with other

21  colleagues at UC San Francisco and it's my

22  understanding that others of her colleagues have

23  really led the study.  That's my understanding.

24                MS. SHARKO:  But, Judge, the issue of

25  what the epidemiology shows is the whole purpose of

Page 18

1    Dr. Smith-Bindman as an expert witness.  And it's
2    inconceivable that she's done this study and she's
3    not going to talk about it, that she's gotten new
4    data, if that's the case as Ms. O'Dell suggests.  And
5    that Dr. Smith-Bindman is just going to take herself
6    back to 2018 and ignore anything she's learned since
7    then.  The realty is that she's trying to get the
8    study published and then she and the plaintiffs are
9    going to rely on it in litigation.  I don't see how
10   one can draw any other conclusion.  And when you look
11   at her expert report in this case, 75 percent of it
12   is about epidemiology.  That's why she was brought
13   in.  And she talks in the study, in the new expert
14   report, about how she's concerned with the reviews
15   that have been undertaken so far, the meta-analyses
16   and the need for her to do her own.
17             So to say that this is not something
18   she considered, I just don't accept that.  The
19   evidence does not support that.  And there is no
20   affidavit from her on any of these issues.
21             SPECIAL MASTER SCHNEIDER:  Let me turn
22   to the university's counsel.  Where we were is on the
23   first main issue that I'm concerned about
24   procedurally, procedurally, is this issue ripe and
25   was it appropriately addressed?

DocuSign Envelope ID: C8F6AF1A-6580-4AE4-B9A6-5E831D9BEE2C

September 16, 2021

 1                    One, should you move to intervene and

 2    file a motion?

 3                    Two, do you have standing to object to

 4    a subpoena directed to Dr. Smith-Bindman?

 5                    And three, we know, if you're asking

 6    for reconsideration, we know under the rules it's

 7    late.

 8                    So could you address those issues?

 9                    MS. HAAS GEORGIEV:  Yes, your Honor.

10    So my understanding, based on communications from my

11    chief campus counsel, is that she just learned about

12    this entire issue, I believe, within the last couple

13    of days.  So I don't know what else she could have

14    done other than to immediately notify you -- to be

15    honest with you, I don't want to misrepresent

16    anything I say.  I learned of this issue this

17    morning.  I've been trying to prepare myself and be

18    adequately prepared for this hearing.

19                    But based on the information that I'm

20    aware of, and UCSF is a very honest institution, my

21    understanding is that this is preliminary research.

22    As such, it would be the property of UCSF.  And also,

23    the research not only of Dr. Smith-Bindman, but the

24    research of her fellow collaborators.  And so this

25    has, you know, become a surprise to us.

1            Irrespective, under both California and

2    federal law, preliminary research that's not final

3    would not normally be subject to disclosure.  I can't

4    speak to any of the past history that's occurred

5    because I have no information about it.  But that

6    would be the general belief and premise upon which we

7    stand.

8            I would seek guidance from you as to

9    what we should do given where this case seems to be.

10   But generally, this is property that, as I

11   understand, has not been vetted or peer-reviewed yet,

12   has not been published, has many people participating

13   in it, and will affect the institution and the other

14   research collaborators and should not be divulged.  I

15   think we should have at least an opportunity to

16   ascertain the facts, be able to potentially obtain a

17   declaration from Dr. Bindman.

18           We're not seeking to cause any havoc

19   with obviously a serious case that's pending, but I

20   believe we should be able to try to protect our

21   rights and those of our other researchers along with

22   Dr. Smith-Bindman.

23           SPECIAL MASTER SCHNEIDER:  My response

24   to that is this:  I don't know exactly what happened,

25   but I suspect what you represent is correct, that the

DocuSign Envelope ID: C8F6AF1A-658C-4AFA-B9A6-5F831D9BEF2C

September 16, 2021

Page 21

```
 1   university only very recently found out about this.
 2   And I don't -- I'm not going to question that.  I'm
 3   going to assume that's the case.  But I can't fault
 4   the defendants for that because I don't think they
 5   had any duty to notify the university of this issue.
 6   I'm going to leave the plaintiffs aside.  I'm not
 7   sure whether or not they had a duty, but certainly
 8   Dr. Smith-Bindman had to have known about the
 9   subpoena and she could have alerted the university to
10   the issue.  And apparently she didn't.
11             The problem we have here is, you know
12   and we all know that this is a very serious case,
13   there is tens of thousands of these cases that are
14   pending not only in New Jersey but around the
15   country.  There is a scheduling order in place.  Dr.
16   Smith-Bindman apparently is scheduled to be deposed
17   next week.  It's been represented that today is the
18   deadline to produce the subject documents.  And
19   although I'm very sympathetic to the university's
20   plight that they only found about this, I can't fault
21   the defendants for that.  And --
22             MS. HAAS GEORGIEV:  But the university
23   shouldn't be prejudiced either.
24             And again, I would say it's their
25   property along with all of the doctors involved, not
```

DocuSign Envelope ID: C8E6AF1A-6589-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 22

```
 1   just one.  So I think there should be some recourse

 2   available to the university.  And again, I don't

 3   know the suit or -- I understand the gravity, but I

 4   don't know the breadth and scope, but I just think

 5   there has to be a way for the university to be given

 6   an opportunity, even on an expedited basis, to be

 7   able to protect its rights.

 8              SPECIAL MASTER SCHNEIDER:  Well, let me

 9   ask you this, and maybe we're combining the merits

10   and the procedure here --

11              MS. HAAS GEORGIEV:  Apologies.

12              SPECIAL MASTER SCHNEIDER:  -- which is

13   fine.

14              I understand the university's plight,

15   I'm sympathetic to the university's plight.  But I

16   guess one of the big questions I have is, under the

17   current scheme and the order that's been entered, how

18   is the university prejudiced in any manner?  Because

19   whatever documents are going to be produced in the

20   first instance are going to be produced under an

21   "attorneys eyes only" designation.  So only the

22   attorneys are going to see it, the witness is going

23   to be questioned about it.  And one thought that

24   occurs to me during this discussion is if Ms. Sharko

25   is going to question the witness about these
```

DocuSign Envelope ID: C8E6AF1A-658C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 23

1    documents, unquestionably, and if it turns out that

2    Dr. Smith-Bindman didn't, quote/unquote, consider

3    these documents in forming her opinions, I'm going to

4    order the documents be returned.

5              So under that scenario, how is the

6    university prejudiced?  Doesn't that result in a fair

7    balance of the parties' interests?

8              The information isn't released to the

9    public, it won't be released to the public unless and

10   until there is a court order that reduces the

11   designation or the parties agree to it.  And if it

12   turns out that under the applicable rules the

13   information is not discoverable, i.e., it wasn't

14   considered by Dr. Smith-Bindman, the documents are

15   going to be returned.

16             So how is the university prejudiced

17   under that scenario?

18             MS. HAAS GEORGIEV:  So I'm just

19   learning of this for the first time.

20             So under your scenario, assuming no

21   leaks and assuming that they weren't considered and

22   the documents are returned to the university, they

23   wouldn't be prejudiced.

24             But let's say you decide, you know,

25   they had been considered.  There are other peoples'

DocuSign Envelope ID: C8F6AF1A-6589-4AF4-B9A6-5F831D9BFF2C

September 16, 2021

Page 24

```
 1   interests in addition -- Dr. Smith-Bindman's for
 2   sure, but also the university's and other
 3   researchers.  And the research isn't final.
 4            It's very unusual to have disclosure
 5   prior to final peer-review, publication, et cetera.
 6   So I just -- you know what, I understand your dilema,
 7   I just hope with this attorney peer-review that you
 8   guys are doing your case -- because it sounds like
 9   you're going to order that, I just hope that -- I do
10   think that we should have intervener rights or
11   something, we do have a personal interest in the
12   situation.
13            And I don't know the remedy.  I can't
14   tell you after six hours what should be done, but I
15   do think we have a vested interest in what occurs and
16   yet what you're describing to me is a rational
17   discovery process and I can't argue with that.
18            SPECIAL MASTER SCHNEIDER:  One of the
19   key differences between this case and, say, the
20   Humane case that you cited is this case is in the
21   context of a federal litigation.  And this issue came
22   up in oral argument and almost the same exact
23   arguments were made at oral argument about it's going
24   to have a chilling effect and this and that,
25   et cetera, et cetera.  And my response was, well,
```

DocuSign Envelope ID: C8E6AF1A-658C-4AF4-B9A6-5F831D9BEE2C

September 16, 2021

Page 25

1    that doesn't trump the Federal Rules of Civil

2    Procedure.  The Federal Rules of Civil Procedure say

3    that if an expert, quote/unquote, considered

4    materials in forming her opinions, it's discoverable.

5              Dr. Smith-Bindman is a sophisticated

6    person, she knew what she was getting into when she

7    signed up to be a trial expert, and this just, in my

8    words, comes with the territory.

9              MS. HAAS GEORGIEV:  Yeah.  So

10   understood.

11             Can I just raise one more issue?  And

12   you may not consider it, but in California we have,

13   no different than FOIA, a California Public Records

14   Act.  And in that case, because we're a California

15   constitution, we have the authority to make a

16   determination as to what documents are exempt.  And

17   under the California Government Code 6254, whether

18   it's under trade secret or the balancing test, those

19   records would be exempt under California law.  And I

20   also think under federal law under the OMB Circular.

21   So I don't know that you'll find that compelling, but

22   that is a true statement, your Honor, and I just

23   wanted to communicate that.

24             SPECIAL MASTER SCHNEIDER:  Well, it's

25   appropriate for you to state that on the record, but

DocuSign Envelope ID: C8F6AF1A-658C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 26

1    I don't find that compelling because the guidance

2    that the court has to look at is Federal Rule of

3    Civil Procedure 26 which talks about discoverable

4    material, standard of relevance, proportionality,

5    et cetera, et cetera.

6                    But I think the bottom line is this:  I

7    am sensitive to the interests of the university, but

8    the way this is going to play out, I don't think

9    their interests are going to be prejudiced.

10                   The information is going to be

11   produced, it's going to be produced hopefully by

12   today because that's the court's order.  The

13   information is going to be produced under "attorneys

14   eyes only" designation.  And I'm going to make my

15   order clear, if it's not clear now, that it will

16   remain under that designation until the court orders

17   it reduced or lessened.

18                   If that application is made, there is

19   no question the university is going to be put on

20   notice of it and then you'll have a full opportunity

21   to be heard.

22                   So let's play this out.  Ms. Sharko

23   gets the documents, she takes her deposition, witness

24   testifies she didn't consider the documents, it's

25   easy, they'll be returned.

DocuSign Envelope ID: C8F6AF1A-658C-4AF4-B9A6-5F831D9BFE2C

September 16, 2021

Page 27

1           Ms. Sharko takes the deposition, likely

2    the witness is going to testify that she considered,

3    under the broad meaning under the case law, the

4    documents.

5           Okay.

6           Ms. Sharko is then going to say, okay,

7    we want to show these documents to our expert or

8    consultant or client.  They're going to have to make

9    an application, notice is going to go to university

10   and then we'll hash out these issues about the

11   merits.  You can argue privilege, what have you.  But

12   I don't think, in the context of this case, I don't

13   think the California statute that you're relying on

14   trumps the Federal Rules of Civil Procedure.

15           MS. HAAS GEORGIEV:  My only point was,

16   ours aligned with the OMB Circular.

17           So understood, your Honor.  I

18   understand you're going to make a decision and it's

19   very Solomon-like and I just wanted to present our

20   arguments and our feelings about the situation.

21           SPECIAL MASTER SCHNEIDER:  Ms. Sharko,

22   I interrupted you.  Did you want to add something?

23           MS. SHARKO:  Yes.

24           Number one, just so Ms. Georgiev is

25   aware, we first requested these documents on July 22.

September 16, 2021

Page 28

1  So this is not something that is new.

2          When Dr. Smith-Bindman learned of that

3  request, I have no idea, but I just want to make the

4  record clear that this dispute has been out there for

5  a while.

6          Number two, I suspect that had we, as

7  defense lawyers, gone to the university to talk about

8  what plaintiff's expert was doing, we would have been

9  soundly criticized for that and accused of somehow

10  interfering with Dr. Smith-Bindman.

11          And number three, while I don't think

12  your Honor has seen the red lined version of Dr.

13  Smith-Bindman's report, I'm happy to submit it to

14  you, but there are references and discussions of this

15  study throughout that report.  And so I think

16  everybody should just be on notice that if Dr.

17  Smith-Bindman is somehow prepared to come in and say

18  no, I didn't consider it and thinks that that will be

19  the end of it, I just want you to know that we will,

20  we will be back.  Because I suspect that the record

21  will show that even if she says I didn't consider it,

22  it is part and parcel of the fabric of what she's

23  relying on.

24          And certainly if this study is

25  published between now and the time of trial, all the

DocuSign Envelope ID: C8F6AF1A-6580-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 29

1    experts are going to be relying on it.  And then

2    we'll be in the position of trying to catch up on

3    discovery.

4                I appreciate that you've ordered it, I

5    just wanted to make those points for the record.

6                SPECIAL MASTER SCHNEIDER:  Well, I'm

7    not going to be surprised if the issue comes up

8    again, but I think we have a very prudent way to

9    proceed that protects everybody's interests.

10               J&J's interests are protected because

11   it's going to get the documents and have a full and

12   fair opportunity and complete opportunity to question

13   Dr. Smith-Bindman.

14               The university is protected because

15   only the attorneys are going to see the documents.

16               And if, as I suspect down the road, J&J

17   asks to lessen or reduce the designation, my order is

18   going to provide that a formal application has to be

19   made with notice to the university.  So you'll have a

20   full and fair opportunity at that time to present the

21   views of your client.

22               I'm afraid I can't give any legal

23   advice about the right way to present the issue

24   procedurally, but between now and whenever it comes

25   up again, you'll --

DocuSign Envelope ID: C8F6AF1A-6580-4AF4-B9A6-5F831D9BEF2C

September 16, 2021

 1            MS. HAAS GEORGIEV:  I'll figure it out

 2    between now and then.

 3            MR. LAPINSKI:  And, your Honor, if I

 4    may, you had asked me to defer until after the

 5    university had the opportunity to speak as far as the

 6    procedural issues are concerned.

 7            SPECIAL MASTER SCHNEIDER:  Sure.

 8            MR. LAPINSKI:  I know that the letter

 9    that was sent yesterday by the university requested

10    that the court reconsider the decision that it had

11    made in regard to this issue.  And while it uses the

12    word reconsider, I don't think that that at all

13    undermines the right of the university to be able to

14    intervene in a case where it's their product, their

15    work product that is at issue.  So I think

16    procedurally they have the right to intervene.  I

17    think procedurally they would also have the right to

18    move to quash the subpoena.  And I just wanted to

19    bring those points up.

20            MS. HAAS GEORGIEV:  I just appreciate

21    the fact that his Honor is going to provide us with

22    notice as well.  So thank you.  Thank you both.

23            SPECIAL MASTER SCHNEIDER:  Mr.

24    Lapinski, I don't think it would be a request to

25    quash the subpoena at that point because presumably

DocuSign Envelope ID: C8F6AF1A-658C-4AF4-B9A6-5F831D9BEE2C

September 16, 2021

1    the cat is out of the bag as of today.

2                    MR. LAPINSKI:  Right.

3                    SPECIAL MASTER SCHNEIDER:  But I think

4    you know, because we've been together so many times,

5    my goal and effort is to decide issues on the merits.

6    And I recognize the equities of the situation, that

7    the university has a significant interest, but so do

8    plaintiffs and so do defendants.  So they all have to

9    be taken into consideration.  And when there is any

10   question or doubt, I'll always go to a decision on

11   the merits.  And if I have to do some gymnastics to

12   get there, I will.  And I think you understand what

13   I'm trying to say.

14                   MR. LAPINSKI:  Yes, your Honor.

15                   SPECIAL MASTER SCHNEIDER:  So let me

16   just sum up and then we'll see if there is anything

17   for the good of the order to say on this issue.

18                   The Master -- I just don't like calling

19   myself Master.  Whatever I am.

20                   MS. PARFITT:  Special Master, that's

21   even better, not just Master, you're the Special

22   Master.

23                   SPECIAL MASTER SCHNEIDER:  I don't like

24   that.  Legally it's fine, but I have problems calling

25   myself that.

September 16, 2021

Page 32

 1               Anyway, the order will be that the

 2   documents are going to be produced in accordance with

 3   whatever schedule exists now.  They're still under an

 4   "attorneys eyes only" designation, will remain under

 5   "attorneys eyes" designation absent a contrary court

 6   order; that the deposition is going to be taken; that

 7   if the expert testifies she didn't consider this

 8   material and if J&J agrees that she didn't consider

 9   it, the documents have to be returned.

10               If J&J refuses to return the documents

11   for some reason, plaintiffs or the university can

12   make an application that the documents be returned.

13               In the likely event, although my

14   prediction is in the likely event, but we don't know

15   what's going to happen, it turns out the witness did

16   consider this information, then the likely next step

17   will be J&J will want to reduce the designation so it

18   can give the documents to some other people, clients,

19   consultants, what have you, to prepare for trial,

20   they'll have to do that on a formal application with

21   notice, obviously, to the plaintiffs and the

22   university.  And then we'll set a reasonable schedule

23   for everybody to be heard on whatever issues they

24   want to be heard on and we'll decide the issue.

25               So I think that's a very fair way to

DocuSign Envelope ID: C8F6AF1A-658C-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 33

 1  balance everyone's interests.  And in honor of the

 2  religious holiday, like counsel for the university

 3  said, it's a very Solomonic -- is that how you

 4  pronounce it?

 5            MS. HAAS GEORGIEV:  I said Solomon-like

 6  approach.

 7            MS. PARFITT:  Your Honor, if I could be

 8  heard on one thing, it's more logistics.

 9            Because this issue has come up and

10  because your order indicates that we are to produce

11  them today and counsel for the university has

12  explained the machinations and the issues that

13  they've been presented with, I don't know what

14  position we're in to actually get them to the

15  court --

16            SPECIAL MASTER SCHNEIDER:  Do you have

17  them?  Do you have the documents?

18            MS. PARFITT:  Do I?  I'll let others

19  speak to that, but let me make one proposal.  If this

20  is going to take us a little time to speak with

21  counsel, and remember, they are in control of some of

22  these documents, so --

23            SPECIAL MASTER SCHNEIDER:  If they were

24  due today, shouldn't they be in an envelope or an

25  email ready to press the button or put in the

DocuSign Envelope ID: C8F6AF1A-658C-4AF4-B9A6-5F831D9BEF2C

September 16, 2021

Page 34

 1   mailbox?

 2             MS. PARFITT:  Dan, maybe you want to

 3   explain that?

 4             MR. LAPINSKI:  Yeah.

 5             MS. PARFITT:  What I was going to say

 6   is, to make this fair, which we are certainly trying,

 7   and appreciating the court's order and the ruling, if

 8   it takes us a day, we can extend that depo if we

 9   still need to have the seven days.  But, Dan, you can

10   explain --

11             SPECIAL MASTER SCHNEIDER:  You can work

12   it out, maybe just work it out with Ms. Sharko.

13             MR. LAPINSKI:  Your Honor, what I would

14   say in response to the question that you've asked is,

15   I have been in touch with Dr. Smith-Bindman and we

16   have been exchanging emails specifically in regard to

17   the point that you just brought up.

18             To the extent that there was a decision

19   this afternoon, can we click a button and have

20   everything, and while I would like to say the answer

21   is yes we can click a button and have everything, we

22   haven't had any documents produced to us yet for the

23   same reason that counsel is on the phone today saying

24   that they don't want to produce them to defense

25   counsel, because they consider it to be product that

September 16, 2021

Page 35

```
 1   they don't want produced.  So we don't have anything
 2   yet.  But based upon what you just said on the record
 3   and what your decision is going to be, we're going to
 4   start to work to get those documents brought in.  We
 5   still have to be able to look at them and determine
 6   what is responsive, what's not responsive, what may
 7   be missing that makes us go back and ask questions,
 8   well, what about request number so-and-so, do you
 9   have any documents.  So I'll be working tonight in
10   order to try to make sure that we can make a
11   substantive production to opposing counsel tonight.
12               SPECIAL MASTER SCHNEIDER:  Ms. Sharko,
13   I know you're anxious, but just wait a second.  I
14   know you wanted to jump in there.
15               One, I'm a little surprised because --
16   I don't know, I've been told that the documents were
17   due today.
18               MS. PARFITT:  Correct.
19               SPECIAL MASTER SCHNEIDER:  This issue
20   with the university just came up late yesterday, so I
21   would think that pretty much everything should have
22   been done to get the documents timely produced.
23               That being said, okay, we live in the
24   real world, right?  Try to work out a schedule with
25   J&J and see if you can work it out.  Under no
```

DocuSign Envelope ID: C8F6AF1A-658C-4AEA-B9A6-5F831D9BFF2C

September 16, 2021

Page 36

1   circumstances, no circumstances is the doctor's

2   deposition being put off.

3                  MS. PARFITT:  Fair enough.

4                  SPECIAL MASTER SCHNEIDER:  If it turns

5   out that J&J can satisfy me that they don't have

6   enough time to review these documents and prepare,

7   I'm going to order Dr. Smith-Bindman to be produced

8   again for deposition at her cost or plaintiffs' cost

9   because J&J shouldn't be prejudiced because the

10  documents were not timely produced.

11                 So I don't know if I took the wind out

12  of your sails, Ms. Sharko, but I'm going to turn the

13  floor over to you.

14                 MS. SHARKO:  Thank you, Judge, but we

15  respectfully object to that way of proceeding.

16                 We've been seeking these documents

17  since July 22nd.  The deposition of Dr. Smith-Bindman

18  has been scheduled and adjourned by the plaintiffs

19  several times.  Your honor ruled back a month or two

20  or three ago, whenever you ruled, the documents would

21  be produced within seven days before her deposition.

22  It's clear we're not going to get those documents

23  seven days before the deposition.  We need time to

24  review and analyze the documents and make sure

25  they're complete.

DocuSign Envelope ID: C8F6AF1A-658C-4AEA-B9A6-5F831D9BEF2C

September 16, 2021

Page 37

1            Frankly, seven days was too short, but

2    that's what your Honor ruled.  So our preference is

3    that you set a deadline for complete production of

4    the documents and then we take the deposition

5    thereafter.  We only have four hours for this

6    deposition.  I don't want to go into the deposition

7    without having all the documents or getting the

8    documents a day or two or three before.

9            We've had, frankly, a lot of problems

10   with the document productions where you have said we

11   get other documents three days before and we get the

12   documents at 10 PM at night or the following morning.

13   And I haven't raised those with your Honor, I've

14   tried to live in the real world with the plaintiffs.

15   But I don't want to go forward with this deposition

16   in a week if we're not going to have the documents

17   seven days before.

18            It's already quarter of six, it's clear

19   that we're not going to get all of the documents

20   today.  So our request is that the plaintiffs be

21   ordered to do the production within, I don't know,

22   two days, if that's enough time, three days, and then

23   we get a new date for the deposition of Dr.

24   Smith-Bindman.

25            SPECIAL MASTER SCHNEIDER:  I don't

DocuSign Envelope ID: C8F6AF1A-6582-4AFA-B9A6-5F831D9BEE2C

September 16, 2021

Page 38

 1   think J&J should be prejudiced because of a late

 2   production.

 3                    If J&J, given the realities of the

 4   situation, is agreeable to putting off the deposition

 5   of Dr. Smith-Bindman for a very short time, that's

 6   fine with me.  So I'm perfectly comfortable, if J&J

 7   and the plaintiffs agree, to put off the dep to get a

 8   new date reasonably close to the current date.

 9                    In terms of a realistic date to produce

10   the documents at issue, I don't want to be in the

11   same position, if we order it by Monday or Tuesday,

12   that we're in today where plaintiffs are going to say

13   we used our best efforts, but yet we don't have an

14   answer yet.

15                    I was of the belief, Ms. Sharko, that

16   if we kept the deposition on or set a new date

17   reasonably close with the proviso that if the

18   documents were not timely produced, you would depose

19   Dr. Bindman again, that would incentivize her to

20   produce the documents promptly.

21                    So, Mr. Lapinski, plaintiffs, help me,

22   when are these documents going to be produced?

23                    MR. LAPINSKI:  Your Honor, I just

24   received an email from Dr. Smith-Bindman that went to

25   my -- it's on hold in my network and I'm not sure why

DocuSign Envelope ID: C8E6AF1A-6589-4AEA-B9A6-5F821D9BEE2C

September 16, 2021

Page 39

1   it's on hold in my network, but she just sent me an

2   email, she sent me a second one saying just confirm

3   that you received this.  I don't know what she's

4   sending in to me right now.  I can't sit here and

5   represent to you that it's everything that's going to

6   be needed.

7               Our intention is to be able to get the

8   documents from Dr. Smith-Bindman today, be able to

9   produce them today, that's all I can represent as I

10  sit here right now without being able to speak

11  directly to Dr. Smith-Bindman and see what she's

12  sending over to me.

13              If you want to give me the opportunity

14  to send an update email, as soon as I've spoken with

15  her I can send an update email to Ms. Sharko and

16  include you on the email so that you have an

17  understanding of what we're dealing with, I'm happy

18  to do that.

19              You know, I think on the plaintiffs'

20  side, we're also amenable to rescheduling the

21  deposition and pushing it out for a couple of days to

22  a week so that Ms. Sharko has the documents in time

23  for her to be able to prepare for the deposition.

24              SPECIAL MASTER SCHNEIDER:  I don't mean

25  to interrupt, Mr. Lapinski.  I'm sorry.  But why

DocuSign Envelope ID: C8F6AF1A-658C-4AEA-B9A6-5F831D9BEE2C

September 16, 2021

Page 40

1    don't I leave it, as I like to do, in counsels' very

2    capable hands.

3              Can you consult with Ms. Sharko and

4    whatever you agree to is fine with me.  I'll order

5    it, whatever you agree to.  You need an opportunity

6    to find out from the doctor realistically when you're

7    going to get the production complete and then you and

8    Ms. Sharko can work on a new date or place for the

9    deposition.

10             So maybe you work that out by tomorrow,

11   but if you don't work it out by Monday, Ms. Sharko,

12   let me know and we'll have another Zoom and I'll

13   order whatever is reasonable under the circumstances,

14   but hopefully you'll be able to work this out with

15   the plaintiffs by tomorrow sometime, after Mr.

16   Lapinski has an opportunity to talk to the doctor.

17             MS. SHARKO:  That's fine.  I appreciate

18   it, Judge.

19             Dan, why don't you let me know when is

20   good to talk tomorrow.  We'll consider that the

21   deposition on September 23 is off and then also get

22   me a couple dates that would work for the deposition

23   and then we can reverse engineer the document due

24   date.

25             MR. LAPINSKI:  Susan, I will follow up

DocuSign Envelope ID: C8F6AF1A-6580-4AFA-B9A6-5F831D9BEF2C

September 16, 2021

Page 41

 1    with you sometime in the afternoon since she's on

 2    west coast and it will give her an opportunity

 3    tomorrow morning in addition to tonight to be able to

 4    get to me all the substantive information.  So if you

 5    want me to just give you a call, I can, or if you

 6    want to schedule a time.

 7                SPECIAL MASTER SCHNEIDER:  Counsel for

 8    the university, having heard what goes on at these

 9    conferences, are you sure you want to intervene in

10    the case?

11                MS. HAAS GEORGIEV:  I wasn't saying I'm

12    sure of anything, but I want to have some rights in

13    case I need them.  But I thank you, your Honor, and I

14    also thank all the professional counsel for staying

15    late and hearing our concerns and addressing them.

16                MS. SHARKO:  Sure.  Thanks.

17                Dan, if you can give me a call around

18    one tomorrow, maybe we can get this squared away

19    before the plaintiffs' next Zoom court emergency in

20    state court.

21                MR. LAPINSKI:  Okay.

22                MS. SHARKO:  Okay.  Thanks.

23                MR. LAPINSKI:  All right.  Very good.

24                SPECIAL MASTER SCHNEIDER:  Thank you,

25    counsel.

DocuSign Envelope ID: C8F6AF1A-658C-4AEA-B9A6-5F821D9BEE2C

September 16, 2021

Page 42

1              MR. LAPINSKI:  Thank you, very much,

2      your Honor.  Have a good evening.

3                  (Hearing concluded)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: C8F6AF1A-658C-4AFA-B9A6-5F831D9BEF2C

September 16, 2021

Page 43

```
 1                    C E R T I F I C A T E

 2

 3        I, Theresa Mastroianni Kugler, a Notary Public

 4   and Certified Shorthand Reporter of the State of New

 5   Jersey, do hereby certify that the foregoing is a

 6   true and accurate transcript of the testimony as

 7   taken stenographically by and before me at the time,

 8   place, and on the date hereinbefore set forth.

 9        I DO FURTHER CERTIFY that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel,

13   and that I am not financially interested in the

14   action.

15

16

17

18

19
     _____
20   Theresa Mastroianni Kugler,
     Certified Court Reporter
     Certificate No. XIO857
21   Notary Public, State of New Jersey
     Commission Expires July 11, 2026
22   Commission No. 2410394
     Date: September 17, 2021
23

24

25
```

**A**

**able** 13:13 20:16 20:20 22:7 30:13 35:5 39:7,8,10,23 40:14 41:3
**absent** 32:5
**accept** 18:18
**accurate** 43:6
**accused** 28:9
**Act** 25:14
**acting** 9:18
**action** 43:11,14
**add** 13:21 14:11 27:22
**addition** 24:1 41:3
**additional** 16:23
**address** 5:9 7:5 7:14 8:13 19:8
**addressed** 18:25
**addressing** 41:15
**adequately** 19:18
**adjourned** 36:18
**advice** 29:23
**AFFAIRS** 4:3
**affect** 20:13
**affidavit** 18:20
**affidavits** 14:15
**afraid** 29:22
**afternoon** 6:7 7:12 34:19 41:1
**ago** 5:6 36:20
**agree** 23:11 38:7 40:4,5
**agreeable** 38:4
**agreed** 7:3
**agrees** 32:8
**ALABAMA** 3:16
**alerted** 5:11 21:9

**aligned** 27:16
**Allen** 3:14 6:10
**amenable** 39:20
**amended** 13:16 15:7
**analysis** 16:16
**analyze** 36:24
**answer** 34:20 38:14
**anxious** 35:13
**Anyway** 32:1
**apart** 8:9
**Apologies** 22:11
**apologize** 5:18 12:12 16:11
**apparently** 21:10,16
**appearance** 6:3
**applicable** 23:12
**application** 10:3 10:4 26:18 27:9 29:18 32:12,20
**appreciate** 29:4 30:20 40:17
**appreciating** 34:7
**approach** 33:6
**appropriate** 5:20 7:5 25:25
**appropriately** 7:17 18:25
**argue** 24:17 27:11
**argued** 10:22 12:17 13:7
**arguing** 13:9
**argument** 9:11 12:16 13:8 24:22,23
**arguments** 9:24 10:1,3,22 24:23 27:20
**ascertain** 20:16
**ASHCRAFT** 3:9
**aside** 21:6

**asked** 30:4 34:14
**asking** 19:5
**asks** 29:17
**assume** 21:3
**assuming** 23:20 23:21
**attorney** 4:5 24:7 43:10,12
**attorneys** 3:7,12 3:18,24 22:21 22:22 26:13 29:15 32:4,5
**Audubon** 1:21
**August** 5:7
**authority** 25:15
**available** 17:1 22:2
**aware** 13:23 17:4,5 19:20 27:25

**B**

**back** 9:22 14:17 18:6 28:20 35:7 36:19
**bag** 31:1
**balance** 23:7 33:1
**balancing** 25:18
**based** 14:6 19:10 19:19 35:2
**basis** 22:6
**Beasley** 3:14 6:9
**behalf** 6:8,10,12 9:18
**belief** 20:6 38:15
**believe** 9:9,14 13:17 15:9 19:12 20:20
**bell** 15:19
**best** 38:13
**better** 31:21
**beyond** 9:24
**BIDDLE** 3:20
**big** 22:16
**Bindman** 20:17

38:19
**bottom** 26:6
**BOX** 3:16
**brand** 14:16
**breadth** 22:4
**bring** 12:6,11 30:19
**broad** 12:24 27:3
**brought** 11:15 15:11 18:12 34:17 35:4
**button** 33:25 34:19,21

**C**

**C** 3:1 43:1,1
**California** 4:4,5 5:5 6:19,24 9:10 20:1 25:12,13,14,17 25:19 27:13
**call** 41:5,17
**called** 8:6
**calling** 31:18,24
**campus** 3:21 4:2 6:23 19:11
**capable** 40:2
**case** 7:10 8:3 12:20 16:25 18:4,11 20:9 20:19 21:3,12 24:8,19,20,20 25:14 27:3,12 30:14 41:10,13
**cases** 10:24 21:13
**cat** 31:1
**catch** 29:2
**cause** 20:18
**celebrating** 5:19
**certain** 9:17
**certainly** 7:19 10:24 13:6,22 14:1,11 17:3 21:7 28:24

34:6
**Certificate** 43:20
**Certified** 1:19 2:8 43:4,20
**certify** 43:5,9
**cetera** 24:5,25 24:25 26:5,5
**CHERRY** 3:4
**chief** 7:2 8:16 19:11
**chilling** 24:24
**Christine** 4:1 6:22
**christine.haas...** 4:5
**Circular** 25:20 27:16
**circumstances** 36:1,1 40:13
**cite** 10:25 15:21 17:8
**cited** 7:10 10:24 24:20
**Civil** 1:2 25:1,2 26:3 27:14
**clarify** 16:4
**clear** 11:6,9 26:15,15 28:4 36:22 37:18
**click** 34:19,21
**client** 27:8 29:21
**clients** 32:18
**close** 38:8,17
**closer** 13:18
**coast** 41:2
**Code** 25:17
**cohort** 16:24
**collaborators** 19:24 20:14
**colleagues** 14:3 16:17 17:20,21 17:22
**combining** 22:9
**come** 14:24 28:17 33:9

**comes** 25:8 29:7 29:24
**comfortable** 38:6
**coming** 17:10
**commencing** 2:12
**COMMERCE** 3:15
**Commission** 43:21,22
**Commonwealth** 2:10
**communicate** 25:23
**communicated** 7:2
**communicatio...** 19:10
**COMPANIES** 3:25
**compelling** 25:21 26:1
**complete** 29:12 36:25 37:3 40:7
**concerned** 7:4 7:11 18:14,23 30:6
**concerns** 41:15
**concluded** 42:3
**conclusion** 18:10
**CONFEREN...** 1:5
**conferences** 41:9
**confirm** 39:2
**confirming** 13:12
**connection** 12:19 13:6
**consider** 13:5,10 15:16 17:8 23:2 25:12 26:24 28:18,21 32:7,8,16

34:25 40:20
**consideration** 31:9
**considered** 10:4 12:22 13:1,17 17:5,6 18:18 23:14,21,25 25:3 27:2
**considering** 13:24
**constitution** 25:15
**consult** 40:3
**consultant** 27:8
**consultants** 32:19
**CONSUMER** 3:25
**context** 12:1 24:21 27:12
**contrary** 32:5
**control** 33:21
**copy** 8:19 9:2
**correct** 8:4 10:21 14:4 20:25 35:18
**cost** 36:8,8
**counsel** 4:2,2 6:23 8:2 10:9 10:16 11:11,12 18:22 19:11 33:2,11,21 34:23,25 35:11 41:7,14,25 43:10,12
**counsels'** 40:1
**country** 21:15
**couple** 11:8 19:12 39:21 40:22
**court** 1:1,19 2:8 11:1 16:4 23:10 26:2,16 30:10 32:5 33:15 41:19,20 43:20

**court's** 5:13 26:12 34:7
**critical** 12:14
**criticized** 28:9
**crosstalk** 15:24
**current** 22:17 38:8
**currently** 12:2

**D**

**Dan** 14:4 34:2,9 40:19 41:17
**Daniel** 3:3 6:7
**data** 16:23 18:4
**date** 37:23 38:8 38:8,9,16 40:8 40:24 43:8,22
**dated** 5:7 16:14
**dates** 40:22
**Daubert** 15:6
**day** 5:22 34:8 37:8
**days** 19:13 34:9 36:21,23 37:1 37:11,17,22,22 39:21
**DC** 3:10
**deadline** 5:12 21:18 37:3
**deal** 10:7
**dealing** 9:12 11:18 39:17
**decide** 11:25 23:24 31:5 32:24
**decided** 16:15
**decision** 27:18 30:10 31:10 34:18 35:3
**declaration** 20:17
**DEFENDANT** 3:24
**defendants** 6:14 6:17 21:4,21 31:8

**defense** 28:7 34:24
**defer** 13:18 30:4
**dep** 38:7
**depo** 34:8
**depose** 38:18
**deposed** 14:19 17:13 21:16
**deposition** 5:11 15:13 26:23 27:1 32:6 36:2 36:8,17,21,23 37:4,6,6,15,23 38:4,16 39:21 39:23 40:9,21 40:22
**describing** 24:16
**design** 14:8
**designation** 22:21 23:11 26:14,16 29:17 32:4,5,17
**detail** 14:11
**determination** 25:16
**determine** 35:5
**differences** 24:19
**different** 14:8 15:11,11 17:2 25:13
**dilema** 24:6
**DIRECT** 3:22
**directed** 7:22 8:11 19:4
**directly** 15:18 39:11
**disclose** 16:19
**disclosure** 17:11 20:3 24:4
**discoverable** 13:2 23:13 25:4 26:3
**discovery** 12:20 14:16 15:14 24:17 29:3

**discussed** 14:18
**discusses** 15:9
**discussion** 22:24
**discussions** 28:14
**dispute** 7:6,17 8:1 28:4
**distinct** 17:19
**DISTRICT** 1:1 1:1
**divorced** 15:20
**divulged** 20:14
**dlapinski@m...** 3:6
**Docket** 1:2
**doctor** 9:16 40:6 40:16
**doctor's** 36:1
**doctors** 21:25
**document** 37:10 40:23
**documents** 5:14 12:19 14:20 15:3 21:18 22:19 23:1,3,4 23:14,22 25:16 26:23,24 27:4 27:7,25 29:11 29:15 32:2,9 32:10,12,18 33:17,22 34:22 35:4,9,16,22 36:6,10,16,20 36:22,24 37:4 37:7,8,11,12 37:16,19 38:10 38:18,20,22 39:8,22
**doing** 9:2 12:10 24:8 28:8
**doubt** 31:10
**Dr** 5:11 7:22,23 9:13 11:14,19 11:22 12:8,17 13:4,9,12 14:12,15,17

15:8 18:1,5
19:4,23 20:17
20:22 21:8,15
23:2,14 24:1
25:5 28:2,10
28:12,16 29:13
34:15 36:7,17
37:23 38:5,19
38:24 39:8,11
draw 18:10
Drinker 3:20
6:16
DRIVE 3:4
due 33:24 35:17
40:23
duplicative 8:20
8:21
duty 21:5,7

**E**

E 3:1,1 4:8,8
43:1,1
EAST 3:4
easy 26:25
effect 24:24
effort 31:5
efforts 38:13
either 21:23
email 33:25
38:24 39:2,14
39:15,16
emails 34:16
emergency
41:19
employee 43:10
43:12
engineer 40:23
entered 5:5 7:5
22:17
entire 19:12
entries 6:2
envelope 33:24
epidemiologist
12:9
epidemiology
17:25 18:12

equities 31:6
ESQUIRE 3:3,9
3:15,21 4:11
essence 17:12
et 24:5,25,25
26:5,5
evening 42:2
event 10:5 32:13
32:14
everybody 9:4
28:16 32:23
everybody's
29:9
everyone's 33:1
evidence 14:24
18:19
exact 24:22
exactly 12:9
20:24
exchanging
34:16
excuse 16:9
exempt 25:16,19
exists 32:3
expedited 22:6
expert 9:14,17
11:17,20,21,25
12:3,5,25 13:6
14:18 15:7,8
15:10 18:1,11
18:13 25:3,7
27:7 28:8 32:7
expert's 12:21
experts 29:1
Expires 43:21
explain 34:3,10
explained 33:12
extend 34:8
extent 34:18
eyes 22:21 26:14
32:4,5

**F**

F 43:1
fabric 28:22
fact 11:23 30:21

facts 20:16
Faegre 3:20 6:16
fair 23:6 29:12
29:20 32:25
34:6 36:3
fairly 9:17
far 18:15 30:5
fault 21:3,20
favor 11:2
FAX 3:5,17,23
4:13
federal 5:2 20:2
24:21 25:1,2
25:20 26:2
27:14
feelings 27:20
fellow 19:24
figure 30:1
file 19:2
filed 8:7,8
final 20:2 24:3,5
financially
43:13
find 25:21 26:1
40:6
fine 22:13 31:24
38:6 40:4,17
Firm 3:14 6:8,16
first 8:3,13 9:25
10:8,18 11:2
12:15 13:3
14:14,17,21
15:5 18:23
22:20 23:19
27:25
floor 4:3,12
36:13
FLORHAM
3:22
FOIA 25:13
follow 40:25
following 37:12
foregoing 43:5
forgetting 5:16
formal 29:18
32:20

FORMAROLI
1:18
forming 23:3
25:4
forth 43:8
forthright 17:10
forward 9:2
37:15
found 21:1,20
four 37:5
Francisco 4:4,6
6:24 9:10 14:3
16:17 17:21
frankly 37:1,9
front 15:25 16:3
full 17:11 26:20
29:11,20
fully 7:9
funded 9:15
11:10,12
funding 15:14
FURTHER 43:9

**G**

general 4:2 20:6
generally 20:10
Georgiev 4:1
6:21,22 19:9
21:22 22:11
23:18 25:9
27:15,24 30:1
30:20 33:5
41:11
GEREL 3:9
getting 25:6 37:7
give 29:22 32:18
39:13 41:2,5
41:17
given 5:20 12:23
20:9 22:5 38:3
go 14:17 27:9
31:10 35:7
37:6,15
goal 31:5
goes 16:8 41:8
going 5:24 6:4

8:23 9:1,22
17:13 18:3,5,9
21:2,3,6 22:19
22:20,22,22,25
23:3,15 24:9
24:23 26:8,9
26:10,11,13,14
26:19 27:2,6,8
27:9,18 29:1,7
29:11,15,18
30:21 32:2,6
32:15 33:20
34:5 35:3,3
36:7,12,22
37:16,19 38:12
38:22 39:5
40:7
good 6:6 31:17
40:20 41:23
42:2
GOODMAN
4:11 8:25 9:6
gotten 18:3
Government
25:17
gravity 22:3
Great 9:6
guess 8:12 22:16
guidance 20:8
26:1
guys 24:8
gymnastics
31:11

**H**

Haas 4:1 6:21,22
19:9 21:22
22:11 23:18
25:9 27:15
30:1,20 33:5
41:11
hands 40:2
happen 32:15
happened 20:24
happy 16:4
28:13 39:17

hash 27:10
havoc 20:18
**Health** 16:25
hear 8:2 10:18
  11:2,3
heard 10:10,12
  10:25 26:21
  32:23,24 33:8
  41:8
hearing 12:15
  13:4 15:6
  19:18 41:15
  42:3
help 15:12 38:21
hereinbefore
  43:8
**HILL** 3:4
history 20:4
hold 38:25 39:1
holiday 5:16,19
  33:2
honest 19:15,20
honor 6:6,11,22
  8:14 10:4,11
  11:4 12:11
  13:11,22 15:7
  16:9 17:3,17
  19:9 25:22
  27:17 28:12
  30:3,21 31:14
  33:1,7 34:13
  36:19 37:2,13
  38:23 41:13
  42:2
hope 24:7,9
hopefully 26:11
  40:14
**Horse** 1:20
hours 24:14 37:5
**Humane** 24:20

**I**
i.e 23:13
idea 28:3
identical 8:20
  10:23 16:21

17:14
ignore 18:6
**ILLINOIS** 4:3
immediately
  19:14
incentivize
  38:19
include 39:16
included 14:8
  16:21
inconceivable
  18:2
incorrect 11:13
independently
  11:19
indicates 33:10
**Indiscernible**
  15:24
information
  13:5,10,17
  14:1 17:4
  19:19 20:5
  23:8,13 26:10
  26:13 32:16
  41:4
initial 10:2
  17:15
insinuation 13:4
instance 8:13
  22:20
institution 19:20
  20:13
intention 39:7
interest 11:24
  24:11,15 31:7
interested 5:25
  16:4 43:13
interesting
  15:15
interests 23:7
  24:1 26:7,9
  29:9,10 33:1
interfere 5:22
interfering
  28:10
interrupt 39:25

interrupted
  27:22
intervene 8:7
  19:1 30:14,16
  41:9
intervener 24:10
introduction 7:1
involved 16:7,18
  21:25
**Irrespective**
  20:1
issue 5:9 8:6,10
  10:22 11:1
  12:2,23 13:19
  16:25 17:24
  18:23,24 19:12
  19:16 21:5,10
  24:21 25:11
  29:7,23 30:11
  30:15 31:17
  32:24 33:9
  35:19 38:10
issues 7:13,15,24
  10:8 18:20
  19:8 27:10
  30:6 31:5
  32:23 33:12

**J**
**J&J** 29:16 32:8
  32:10,17 35:25
  36:5,9 38:1,3,6
**J&J's** 29:10
**Jersey** 1:1,21
  2:10 3:4,22
  21:14 43:5,21
**Jewish** 5:16
**JOEL** 1:14
**Johnson** 1:5,5
  3:24,24,24,24
  6:16,16
jschneider@m...
  1:14
judge 7:2 8:16
  14:22 15:1
  17:24 36:14

40:18
**July** 16:14 27:25
  36:17 43:21
jump 13:13
  35:14
jumped 12:12

**K**
**K** 3:10
kept 38:16
key 24:19
knew 25:6
know 7:20 10:12
  13:8,14,24
  14:24 15:1,12
  15:17 17:16,17
  19:5,6,13,25
  20:24 21:11,12
  22:3,4 23:24
  24:6,13 25:21
  28:19 30:8
  31:4 32:14
  33:13 35:13,14
  35:16 36:11
  37:21 39:3,19
  40:12,19
known 21:8
knows 15:7
**Kugler** 2:8 43:3
  43:19

**L**
**L** 4:8,11
**LAKE** 3:4
**Lapinski** 3:3 6:6
  6:7 10:11,15
  10:19 11:3,4
  12:15 13:11
  16:12 30:3,8
  30:24 31:2,14
  34:4,13 38:21
  38:23 39:25
  40:16,25 41:21
  41:23 42:1
largely 8:20,21
late 5:3 19:7

35:20 38:1
  41:15
law 3:14 6:7,16
  20:2 25:19,20
  27:3
lawyers 9:16
  28:7
leaks 23:21
learned 18:6
  19:11,16 28:2
learning 23:19
leave 21:6 40:1
led 11:25 17:23
legal 4:2,3 29:22
**Legally** 31:24
**Leigh** 3:15 6:9
  16:12
leigh.odell@b...
  3:18
lessen 29:17
lessened 26:17
let's 23:24 26:22
letter 5:4 7:7,8
  7:11 8:16,19
  9:2,4,25 30:8
letters 7:4
**LIABILITY** 1:6
license 2:9
line 26:6
lined 28:12
literature 17:19
litigation 1:6
  16:18 18:9
  24:21
little 33:20 35:15
live 35:23 37:14
**LLC** 3:3
**LLP** 3:9,20 4:10
logistics 33:8
look 18:10 26:2
  35:5
lot 14:20 15:12
  37:9

**M**
**M** 3:21

DocuSign Envelope ID: C8F6AF1A-658C-4AF4-B9A6-5F831D9BEE2C

**machinations** 33:12
**mailbox** 34:1
**main** 7:13 18:23
**making** 13:8
**manner** 22:18
**MARKET** 4:11
**MARKETING** 1:5
**Master** 1:14 5:1 5:7 6:13,18,25 7:1 8:18 9:1 10:6,14,17,20 12:13 13:20 14:13 15:2,21 17:7,12 18:21 20:23 22:8,12 24:18 25:24 27:21 29:6 30:7,23 31:3 31:15,18,19,20 31:21,22,23 33:16,23 34:11 35:12,19 36:4 37:25 39:24 41:7,24
**Mastroianni** 1:18 2:8 43:3 43:19
**material** 12:21 26:4 32:8
**materials** 25:4
**matter** 2:7 5:20 7:3
**McCRACKEN** 4:10
**MDL** 5:2 7:2 13:15,16
**mean** 8:3 9:19 17:10 39:24
**meaning** 27:3
**merits** 7:15,25 10:7 22:9 27:11 31:5,11
**meta-analyses** 18:15

**meta-analysis** 16:16
**methodology** 16:21
**Michelle** 3:9 6:11
**misrepresent** 19:15
**missing** 8:22 35:7
**misunderstan...** 16:5
**moment** 16:11
**Monday** 5:10 38:11 40:11
**MONTGOM...** 3:16 4:10
**month** 36:19
**morning** 19:17 37:12 41:3
**motion** 7:18 8:7 8:8 19:2
**Motley** 3:3 6:7
**move** 19:1 30:18
**moving** 7:20
**mparfitt@ash...** 3:12

___

**N**

**N** 3:1 4:8
**necessary** 7:19
**need** 18:16 34:9 36:23 40:5 41:13
**needed** 39:6
**neither** 43:9,11
**network** 38:25 39:1
**new** 1:1,21 2:10 3:4,22 14:16 15:3,9 18:3,13 21:14 28:1 37:23 38:8,16 40:8 43:4,21
**night** 37:12
**normally** 20:3

**Notary** 2:9 43:3 43:21
**notice** 26:20 27:9 28:16 29:19 30:22 32:21
**notify** 19:14 21:5
**number** 2:9 5:7 27:24 28:6,11 35:8
**Nurses'** 16:25
**NW** 3:10

___

**O**

**O** 4:8
**o'clock** 5:15
**O'Dell** 3:15 6:9 6:9 13:13,18 13:20,22 15:25 16:13 17:9,16 18:4
**object** 7:21 8:10 19:3 36:15
**observance** 5:23
**obtain** 20:16
**obtained** 16:23
**obviously** 13:23 20:19 32:21
**occurred** 16:6 20:4
**occurs** 22:24 24:15
**OFFICE** 4:2,3
**okay** 6:25 9:6 10:14 27:5,6 35:23 41:21,22
**old** 15:10
**OMB** 25:20 27:16
**oncologist** 9:20
**ongoing** 13:24 14:2,23
**opinion** 12:23 13:6,25
**opinions** 13:25

14:6,6 15:18 23:3 25:4
**opportunity** 20:15 22:6 26:20 29:12,12 29:20 30:5 39:13 40:5,16 41:2
**opposing** 35:11
**opposition** 10:2
**oral** 12:23 24:22 24:23
**order** 5:5,7,9,13 7:4 8:8 21:15 22:17 23:4,10 24:9 26:12,15 29:17 31:17 32:1,6 33:10 34:7 35:10 36:7 38:11 40:4,13
**ordered** 29:4 37:21
**orders** 26:16
**originally** 5:10
**outlined** 14:7

___

**P**

**P** 3:1,1 4:8
**P.O** 3:16
**page** 16:9,12
**paid** 11:13
**parcel** 28:22
**Parfitt** 3:9 6:11 6:12 31:20 33:7,18 34:2,5 35:18 36:3
**PARK** 3:22
**part** 9:13,15 11:16 12:3 28:22
**participating** 20:12
**parties** 5:25 23:11 43:11
**parties'** 23:7

**parts** 7:13
**party** 7:21
**peer-review** 24:5,7
**peer-reviewed** 20:11
**pending** 20:19 21:14
**Pennsylvania** 2:11 4:12
**people** 15:12 20:12 32:18
**peoples'** 23:25
**percent** 18:11
**perfectly** 38:6
**performed** 16:17
**person** 8:11 25:6
**personal** 24:11
**Philadelphia** 4:12 14:23 16:6
**phone** 8:23 34:23
**Pike** 1:20
**place** 21:15 40:8 43:8
**plaintiff's** 28:8
**plaintiffs** 3:7,12 3:18 6:3,5,8,10 6:12 9:14 10:2 10:25,25 12:16 14:24 18:8 21:6 31:8 32:11,21 36:18 37:14,20 38:7 38:12,21 40:15
**plaintiffs'** 9:16 11:10,12 36:8 39:19 41:19
**play** 26:8,22
**plight** 21:20 22:14,15
**PM** 2:12 37:12
**point** 11:15 12:14 15:18

27:15 30:25
34:17
**points** 11:8
12:11 14:4
29:5 30:19
**position** 29:2
33:14 38:11
**potentially**
20:16
**POWDER** 1:5
**PRACTICES**
1:6
**precise** 16:10
**precisely** 10:1
**prediction** 32:14
**preference** 37:2
**prejudiced** 5:24
21:23 22:18
23:6,16,23
26:9 36:9 38:1
**preliminary**
19:21 20:2
**premise** 20:6
**prepare** 19:17
32:19 36:6
39:23
**prepared** 19:18
28:17
**present** 27:19
29:20,23
**presented** 10:23
33:13
**press** 33:25
**presumably**
30:25
**pretty** 35:21
**previously** 10:22
17:1
**Principal** 4:2
6:22
**prior** 24:5
**privilege** 27:11
**problem** 21:11
**problems** 31:24
37:9
**procedural** 7:14

7:24 10:8 30:6
**procedurally**
7:16 8:9 18:24
18:24 29:24
30:16,17
**procedure** 8:4
22:10 25:2,2
26:3 27:14
**proceed** 29:9
**proceeding**
36:15
**proceedings** 2:6
**process** 24:17
**produce** 5:13
21:18 33:10
34:24 38:9,20
39:9
**produced** 14:20
22:19,20 26:11
26:11,13 32:2
34:22 35:1,22
36:7,10,21
38:18,22
**product** 30:14
30:15 34:25
**production**
35:11 37:3,21
38:2 40:7
**productions**
37:10
**PRODUCTS** 1:5
1:6
**professional**
41:14
**promptly** 38:20
**pronounce** 33:4
**property** 19:22
20:10 21:25
**proportionality**
26:4
**proposal** 33:19
**protect** 20:20
22:7
**protected** 29:10
29:14
**protective** 8:8

**protects** 29:9
**provide** 13:14
29:18 30:21
**provided** 11:20
**proviso** 38:17
**prudent** 29:8
**public** 2:9 17:2
23:9,9 25:13
43:3,21
**publication** 24:5
**publish** 16:15
**published** 16:22
18:8 20:12
28:25
**purpose** 17:25
**purposes** 13:25
17:5,6,11
**pursuant** 5:13
**pushing** 39:21
**put** 26:19 33:25
36:2 38:7
**putting** 38:4

_____
**Q**
**quarter** 37:18
**quash** 30:18,25
**question** 7:16
9:22 12:14
21:2 22:25
26:19 29:12
31:10 34:14
**questioned**
22:23
**questions** 14:20
14:22 22:16
35:7
**quite** 7:18 8:3,8
10:23 14:4
**quote/unquote**
12:18,22 13:1
13:10 23:2
25:3

_____
**R**
**R** 3:1,3 4:8 43:1
**Rachel** 4:11 8:18

8:23
**radiation** 9:19
**raise** 8:6 25:11
**raised** 9:24
12:14 14:21,22
37:13
**rational** 24:16
**raw** 16:23
**reach** 14:5
**reached** 14:9
**reaching** 13:25
**reading** 12:24
**ready** 33:25
**real** 35:24 37:14
**realistic** 38:9
**realistically** 40:6
**realities** 38:3
**realizing** 5:16
**really** 17:23
**realty** 18:7
**reason** 5:3 32:11
34:23
**reasonable**
32:22 40:13
**reasonably** 38:8
38:17
**REATH** 3:20
**receive** 8:15
**received** 5:4 7:9
38:24 39:3
**recognize** 31:6
**reconsider** 30:10
30:12
**reconsideration**
7:19 14:25
19:6
**record** 5:2,6
25:25 28:4,20
29:5 35:2
**records** 25:13,19
**recourse** 22:1
**red** 28:12
**reduce** 29:17
32:17
**reduced** 26:17
**reduces** 23:10

**references** 28:14
**refuses** 32:10
**regard** 13:19
30:11 34:16
**regarding** 5:5
**Regents** 6:23 7:7
7:21 8:5 9:10
9:18
**registered** 16:20
**relates** 11:21
**relative** 43:10,12
**released** 23:8,9
**relevance** 26:4
**relies** 9:16
**religious** 5:23
33:2
**rely** 13:1 14:5
18:9
**relying** 12:4,18
13:16 27:13
28:23 29:1
**remain** 26:16
32:4
**remedy** 24:13
**remember** 33:21
**REMOTE** 1:5
2:11
**renowned** 12:9
**report** 9:17
11:20,21,25
12:5 13:15,16
14:7,17,19
15:9,10,22
16:3,8,14
18:11,14 28:13
28:15
**Reporter** 2:8
43:4,20
**Reporting** 1:19
**reports** 15:8
**represent** 6:4
20:25 39:5,9
**representation**
11:11
**representative**
6:19

representatives 5:25
represented 21:17
representing 7:23
request 28:3 30:24 35:8 37:20
requested 27:25 30:9
rescheduling 39:20
research 9:20 12:1,2,4 19:21 19:23,24 20:2 20:14 24:3
researcher 12:8
researchers 20:21 24:3
respectfully 36:15
respond 14:10
response 20:23 24:25 34:14
responsive 35:6 35:6
result 23:6
results 14:9 17:15
RETIRED 1:14
return 32:10
returned 23:4 23:15,22 26:25 32:9,12
reverse 40:23
review 14:7 36:6 36:24
reviewed 7:9,12 7:12
reviews 18:14
rgoodman@m... 4:14
RHOADS 4:10
Rice 3:3 6:7
right 9:3,7 11:18

29:23 30:13,16 30:17 31:2 35:24 39:4,10 41:23
rights 20:21 22:7 24:10 41:12
ripe 18:24
road 29:16
rule 11:1 26:2
ruled 15:1 36:19 36:20 37:2
rules 7:20 19:6 23:12 25:1,2 27:14
ruling 14:25 34:7
rushed 5:15

─────────

**S**

S 3:1 4:8,8
sails 36:12
SALES 1:6
San 4:4,6 6:24 9:10 14:3 16:17 17:21
satisfy 36:5
saying 34:23 39:2 41:11
says 16:14 28:21
scenario 23:5,17 23:20
schedule 32:3,22 35:24 41:6
scheduled 5:10 5:15,21 21:16 36:18
scheduling 5:13 21:15
scheme 22:17
SCHNEIDER 1:14 5:1 6:13 6:18,25 8:18 9:1 10:6,14,17 10:20 12:13 13:20 14:13

15:2,21 17:7 17:12 18:21 20:23 22:8,12 24:18 25:24 27:21 29:6 30:7,23 31:3 31:15,23 33:16 33:23 34:11 35:12,19 36:4 37:25 39:24 41:7,24
scope 22:4
second 4:3 11:15 35:13 39:2
secret 25:18
see 15:19 18:9 22:22 29:15 31:16 35:25 39:11
seek 20:8
seeking 20:18 36:16
seen 28:12
send 9:6 39:14 39:15
sending 39:4,12
sensitive 26:7
sent 7:4 8:16 30:9 39:1,2
separate 16:16
September 1:11 40:21 43:22
serious 20:19 21:12
serve 9:3
served 7:8
set 32:22 37:3 38:16 43:8
seven 34:9 36:21 36:23 37:1,17
Sharko 3:21 5:11 6:15,15 8:12,14 9:8 10:21,21 11:6 14:13,14 15:4 15:23 16:5

17:24 22:24 26:22 27:1,6 27:21,23 34:12 35:12 36:12,14 38:15 39:15,22 40:3,8,11,17 41:16,22
Sharko's 11:11
she'll 17:17
short 37:1 38:5
Shorthand 43:4
show 27:7 28:21
shows 17:25
side 39:20
signed 25:7
significant 31:7
similar 10:23 15:10 16:20 17:14
sir 6:21
sit 13:12 39:4,10
situation 24:12 27:20 31:6 38:4
six 24:14 37:18
Smith-Bindman 5:12 7:22,23 9:13 11:14,19 11:23 12:8,18 13:5,9,13 14:12,15 15:8 18:1,5 19:4,23 20:22 21:8,16 23:2,14 25:5 28:2,10,17 29:13 34:15 36:7,17 37:24 38:5,24 39:8 39:11
Smith-Bindm... 14:17 24:1 28:13
so-and-so 35:8
Solomon-like 27:19 33:5
Solomonic 33:3

soon 39:14
sophisticated 25:5
sorry 11:5 39:25
soundly 28:9
sounds 24:8
South 1:20
speak 10:15 20:4 30:5 33:19,20 39:10
Special 1:14 5:1 5:7 6:13,18,25 7:1 8:18 9:1 10:6,14,17,20 12:13 13:20 14:13 15:2,21 17:7,12 18:21 20:23 22:8,12 24:18 25:24 27:21 29:6 30:7,23 31:3 31:15,20,21,23 33:16,23 34:11 35:12,19 36:4 37:25 39:24 41:7,24
specifically 34:16
spoken 39:14
squared 41:18
stand 17:18 20:7
standard 12:20 12:21 26:4
standing 7:21 8:10 9:11,23 19:3
start 6:2 35:4
starting 6:3
state 2:10 25:25 41:20 43:4,21
stated 12:22
statement 25:22
statements 11:5
STATES 1:1
STATUS 1:5
statute 27:13

staying 41:14
stenographica...
  2:7 43:7
step 32:16
STREET 3:10
  3:15 4:11
studies 14:8
  16:22,24
study 9:12,15
  12:19 14:2,16
  14:18,21 15:5
  15:9,11,15
  16:20,25 17:2
  17:14,15,18,19
  17:23 18:2,8
  18:13 28:15,24
subject 20:3
  21:18
submissions
  8:15
submit 28:13
submitted 11:20
  13:15
subpoena 7:22
  8:10 19:4 21:9
  30:18,25
subsequent
  11:22
substance 13:14
substantive
  35:11 41:4
suggests 18:4
suit 22:3
SUITE 3:4
sum 31:16
supplemental
  15:22
support 12:4
  18:19
supports 17:15
sure 7:18 8:3,9
  8:14 10:19
  21:7 24:2 30:7
  35:10 36:24
  38:25 41:9,12
  41:16

surprise 19:25
surprised 29:7
  35:15
Susan 3:21 6:15
  40:25
susan.sharko...
  3:23
suspect 20:25
  28:6,20 29:16
sympathetic
  21:19 22:15
systematic 14:6

─────── T ───────
T 4:8 43:1,1
take 18:5 33:20
  37:4
taken 2:7 15:13
  31:9 32:6 43:7
takes 26:23 27:1
  34:8
Tale 5:2 7:2
TALCUM 1:5
talk 18:3 28:7
  40:16,20
talking 9:5 11:9
  14:11 15:3,4
talks 11:7 18:13
  26:3
teed 7:18
tell 7:23 24:14
tens 21:13
terms 14:8 38:9
territory 25:8
test 25:18
testified 11:23
testifies 26:24
  32:7
testify 27:2
testifying 12:25
testimony 11:21
  43:6
thank 9:8 16:13
  30:22,22 36:14
  41:13,14,24
  42:1

Thanks 41:16,22
Theresa 2:8 43:3
  43:19
thing 12:6 16:2
  33:8
things 11:6
think 5:23 8:21
  9:23 15:14
  17:9,17 20:15
  21:4 22:1,4
  24:10,15 25:20
  26:6,8 27:12
  27:13 28:11,15
  29:8 30:12,15
  30:17,24 31:3
  31:12 32:25
  35:21 38:1
  39:19
thinking 5:14
thinks 28:18
third 8:11
thoroughly 10:3
thought 5:20
  22:23
thousands 21:13
three 19:5 28:11
  36:20 37:8,11
  37:22
THURSDAY
  1:11
time 12:15 13:3
  13:7 23:19
  28:25 29:20
  33:20 36:6,23
  37:22 38:5
  39:22 41:6
  43:7
timely 35:22
  36:10 38:18
times 31:4 36:19
today 5:12,15,17
  5:21 7:9 8:15
  21:17 26:12
  31:1 33:11,24
  34:23 35:17
  37:20 38:12

39:8,9
told 35:16
tomorrow 40:10
  40:15,20 41:3
  41:18
tonight 35:9,11
  41:3
topic 11:24
touch 34:15
trade 25:18
transcript 2:6
  43:6
trial 11:22 14:23
  25:7 28:25
  32:19
tried 37:14
true 25:22 43:6
trump 25:1
trumps 27:14
try 20:20 35:10
  35:24
trying 14:25
  18:7 19:17
  29:2 31:13
  34:6
Tuesday 38:11
turn 16:10 18:21
  36:12
turning 16:3
turns 23:1,12
  32:15 36:4
two 5:22 7:13,15
  11:5 19:3 28:6
  36:19 37:8,22
type 13:4

─────── U ───────
UC 4:2 14:3
  16:17 17:21
UCSF 4:3 19:20
  19:22
underlying
  14:19
undermines
  30:13
understand

20:11 22:3,14
  24:6 27:18
  31:12
understanding
  14:12 17:22,23
  19:10,21 39:17
understood
  25:10 27:17
undertaken
  18:15
UNITED 1:1
university 4:5
  5:4 6:19,23 8:5
  9:9,18,23,25
  10:9,16,18,24
  11:2,7 12:1
  21:1,5,9,22
  22:2,5,18 23:6
  23:16,22 26:7
  26:19 27:9
  28:7 29:14,19
  30:5,9,13 31:7
  32:11,22 33:2
  33:11 35:20
  41:8
university's
  18:22 21:19
  22:14,15 24:2
unquestionably
  23:1
unrung 15:19
untimely 7:20
  10:5
unusual 24:4
upcoming 5:12
update 39:14,15
uses 30:11
USMJ 1:14

─────── V ───────
version 28:12
vested 24:15
vetted 20:11
VIDEOCONF...
  1:6 2:11
Videoconfere...

1:19
**views** 29:21

___

**W**

**wait** 35:13
**waited** 5:22
**WALKER** 4:10
**want** 5:18 8:6,12
  10:7,10,12
  11:8 16:10
  19:15 27:7,22
  28:3,19 32:17
  32:24 34:2,24
  35:1 37:6,15
  38:10 39:13
  41:5,6,9,12
**wanted** 12:10
  17:9,10 25:23
  27:19 29:5
  30:18 35:14
**WASHINGT...**
  3:10
**wasn't** 7:12 9:17
  13:7 23:13
  41:11
**way** 7:1 22:5
  26:8 29:8,23
  32:25 36:15
**we'll** 11:3 27:10
  29:2 31:16
  32:22,24 40:12
  40:20
**we're** 5:1,3 8:22
  9:4,12 11:9,18
  15:4 20:18
  22:9 25:14
  33:14 35:3
  36:22 37:16,19
  38:12 39:17,20
**we've** 31:4 36:16
  37:9
**week** 21:17
  37:16 39:22
**weeks** 5:6
**went** 15:7 38:24
**weren't** 23:21

**west** 41:2
**wheelhouse** 9:21
  12:8
**White** 1:20
**wind** 36:11
**witness** 9:14
  11:17 18:1
  22:22,25 26:23
  27:2 32:15
**Wolfson** 7:3
  8:17
**woman** 9:19
**word** 30:12
**words** 7:17
  12:17 25:8
**work** 9:13 11:9
  11:10,12,13,16
  11:16,17,18
  12:3,10 13:23
  15:17 30:15
  34:11,12 35:4
  35:24,25 40:8
  40:10,11,14,22
**working** 35:9
**world** 35:24
  37:14
**wouldn't** 14:23
  23:23
**wrong** 16:9
**wrote** 11:24

___

**X**

**XIO857** 43:20

___

**Y**

**Yeah** 25:9 34:4
**yesterday** 5:4
  7:8 8:17 10:1
  30:9 35:20

___

**Z**

**Zoom** 1:5 2:11
  5:10,15,20 6:1
  6:5,20 9:4
  40:12 41:19

___

**0**

**07932** 3:22
**08002** 3:4
**08106** 1:21

___

**1**

**10** 5:7 37:12
**101** 3:4
**11** 43:21
**16** 1:11
**17** 16:12 43:22
**1735** 4:11
**1825** 3:10
**19103-7505** 4:12

___

**2**

**2006** 3:10
**2018** 18:6
**202-759-7648**
  3:11
**2021** 1:11 43:22
**2026** 43:21
**210** 3:4
**215-772-7411**
  4:13
**215-772-7620**
  4:13
**218** 3:15
**21st** 4:12
**22** 27:25
**22nd** 36:17
**23** 40:21
**2410394** 43:22
**26** 26:3
**2nd** 16:15

___

**3**

**3:16-md-2738-...**
  1:2
**30th** 5:8
**30X100085700**
  2:9
**334-954-7555**
  3:17
**36104** 3:16

___

**4**

**4:59** 2:12
**415-539-8561**
  4:4
**4160** 3:16
**499** 4:3

___

**5**

**5** 5:15
**515** 1:20

___

**6**

**600** 3:21
**6254** 25:17

___

**7**

**75** 18:11

___

**8**

**800-674-9725**
  3:11
**800-768-4026**
  3:6
**800-898-2034**
  3:17
**856-488-7797**
  1:15
**856-546-1100**
  1:22
**856-667-0500**
  3:5
**856-667-5133**
  3:5

___

**9**

**94148** 4:4
**973-360-9831**
  3:23
**973-549-7350**
  3:22

___