UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*THIS DOCUMENT RELATES TO ALL CASES* | MDL NO. 16-2738 (FLW) (LHG) |

**LOCAL RULE 7.1.1 SUPPLEMENTAL DISCLOSURE STATEMENT OF CERTAIN PLAINTIFFS AND GENERAL OBJECTIONS**

COMES NOW The Segal Law Firm and, pursuant to Fed. R. Civ. Pro. 26(b)(5)(A) and Local Rule 7.1.1, The Segal Law Firm, L.C., ("The Segal Law Firm") on behalf of additional Plaintiffs it represents in this Multidistrict Litigation ("MDL") (list of Plaintiffs set forth in Exhibit A), hereby states as follows for its Local Rule 7.1.1 Supplemental Disclosure and General Objections set forth below:

**I. DISCLOSURE**

On March 18, 2020, The Segal Law Firm entered into a Co-counsel Agreement (see privilege log attached hereto as Exhibit B) with another law firm. The Segal Law Firm's co-counsel ("Co-counsel") funds certain aspects of The Segal Law Firm's representation of clients in this MDL. In addition to providing funding, Co-counsel routinely communicates with The Segal Law Firm with regard to, among other things, strategy and tactics employed in the prosecution of Plaintiffs' claims in this MDL. It is The Segal Law Firm's position that the identity of Co-counsel, and all communications associated therewith, are protected by the Attorney-Client Privilege and Work-Product Doctrine.

However, in order to comply with the disclosure requirements of Local Rule 7.1.1 and in the interests of complete transparency, The Segal Law Firm makes this supplemental disclosure, including the information contained in the Privilege Log, in accordance with Fed. R. Civ. P. 26(b)(5)(A), in order to assert and preserve the privileges set forth therein.

Without waiving any of the General Objections lodged below or claims of attorney client privilege and the work product doctrine, The Segal Law Firm makes the following Local Rule 7.1.11 disclosures:

### 1. The Identity of the Funder

Please see Privilege Log, attached hereto as Exhibit B.

### 2. Necessity of Funder's Approval for Litigation and/or Settlement Decisions

Co-counsel's approval is not necessary for litigation decisions or settlement decisions in these actions and Co-counsel has no authority to make litigation or settlement decisions.

### 3. Brief Description of Funder's Financial Interest

Co-counsel provides non-recourse funding for a contingent financial interest based upon the results of this litigation.

## II. GENERAL OBJECTIONS

Plaintiffs also object to Local Rule 7.1.1 in its totality for several reasons. First, Local Rule 7.1.1 violates Plaintiffs' First Amendment right of freedom of association. As the United States Supreme Court recently explained in *Ams. for Prosperity Found. v. Bonta*, 210 L. Ed. 2d 716, 2021 U.S. LEXIS 3569, 141 S. Ct. 2373 (2021):

> The First Amendment prohibits government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." **This Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others**." *Roberts v. United States Jaycees*, 468 U. S. 609, 622, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).

> **Protected association furthers "a wide variety of political, social, economic**, educational, religious, and cultural ends," and "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Ibid*. Government infringement of this freedom "can take a number of forms." *Ibid*. . .
>
> We have also noted that **"[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action."** *NAACP v. Alabama ex rel. Patterson*, 357 U. S. 449, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958). *NAACP v. Alabama* involved this chilling effect in its starkest form. The NAACP opened an Alabama office that supported racial integration in higher education and public transportation. *Id*., at 452, 78 S. Ct. 1163, 2 L. Ed. 2d 1488. In response, NAACP members were threatened with economic reprisals and violence. *Id*., at 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488. As part of an effort to oust the organization from the State, the Alabama Attorney General sought the group's membership lists. *Id*., at 452-453, 78 S. Ct. 1163, 2 L. Ed. 2d 1488. We held that the First Amendment prohibited such compelled disclosure. *Id*., at 466, 78 S. Ct. 1163, 2 L. Ed. 2d 1488. **We explained that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association,"** *id*., at 460, 78 S. Ct. 1163, 2 L. Ed. 2d 1488, and we noted **"the vital relationship between freedom to associate and privacy in one's associations**," *id*., at 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488. Because NAACP members faced a risk of reprisals if their affiliation with the organization became known—and because Alabama had demonstrated no offsetting interest "sufficient to justify the deterrent effect" of disclosure, *id*., at 463, 78 S. Ct. 1163, 2 L. Ed. 2d 1488—we concluded that the State's demand violated the First Amendment.

*Bonta* at 726 (emphasis added). While the *NAACP* opinion did not articulate a standard of review applicable to First Amendment challenges to compelled disclosures, the *Bonta* case announced that such challenges are subjected to "exacting scrutiny."

> Under that standard, there must be "**a substantial relation between the disclosure requirement and a sufficiently important governmental interest**." *Doe v. Reed*, 561 U. S. 186, 196, 130 S. Ct. 2811, 177 L. Ed. 2d 493 (2010) (internal quotation marks omitted). "To withstand this scrutiny, **the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights**." *Ibid*. (internal quotation marks omitted). Such scrutiny, we have held, is appropriate given the "deterrent effect on the exercise of First Amendment rights" that arises as an "inevitable result of the government's conduct in requiring disclosure." *Buckley*, 424 U. S., at 65, 96 S. Ct. 612, 46 L. Ed. 2d 659.

3

*Bonta* at 727 (emphasis added). The Supreme Court further noted that, "[w]hile exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, **it does require that they be narrowly tailored to the government's asserted interest**." *Id*. at 728 (emphasis added).

Local Rule 7.1.1 fails the exacting scrutiny standard. While the district court's interest is not stated in the Rule, the Rule presumably seeks disclosure of entities providing litigation funding to assess the potential for conflicts of interest. However, the blanket disclosure requirement is not tailored at all to serve this important, though narrow interest. On the other hand, Plaintiffs have a significant interest in limiting the scope of the disclosure of their association with entities that provide funding for their cases—in particular, compelled disclosure in open court is far broader than necessary to appraise the court of potential recusal or conflict issues, while also likely to lead to harassment and invasive inquiries under the (laxer) discovery standard that Local Rule 7.1.1 provides to defendants.  The disclosure requirements imposed by Local Rule 7.1.1 thus violate Plaintiffs' First Amendment right of association and are unenforceable, both on their face and as applied here.

Second, Local Rule 7.1.1 violates Plaintiffs' Fifth Amendment Due Process rights because it is overly vague. As explained in *Bagarozy v. Goodwin*, 2008 U.S. Dist. LEXIS 73017, 2008 WL 4416455 (D.N.J 2008):

> The void for vagueness doctrine holds that a statute is unconstitutional if it is **so vague that it fails to provide notice to average individuals of prohibited conduct or fails to provide minimal guidelines such that arbitrary or discriminatory enforcement of the statute ensues**. *Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). An important goal of the vagueness doctrine is to "establish minimal guidelines" to govern the enforcement of laws so that individuals are not subject to the whim of persons with enforcement power. *Id*. (*citing Smith v. Goguen*, 415 U.S. 566, 574, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974)).

4

*Bagarozy*, at 22 (emphasis added).[1] Local Rule 7.1.1 is very vague. There is a strong argument that it would not even apply to the Disclosure undersigned counsel feels compelled to make in the in the interests of full transparency. Specifically, several critical terms in Local Rule 7.1.1 are undefined. These terms include, but are not limited to "third-party litigation funding"; "funder"; "non-recourse basis"; and "non-monetary results." The vagueness of these terms render compliance nebulous and enforcement arbitrary. Consequently, Local Rule 7.1.1 is void for vagueness.

Third, Local Rule 7.1.1 is inconsistent with Federal Rule of Civil Procedure 26 and the Rules Enabling Act. According to 28 USCS § 2071, "[t]he Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. **Such rules shall be consistent with** Acts of Congress and **rules of practice and procedure prescribed under section 2072 of this title** [28 USCS § 2072]."[2] Under this statute, all local rules prescribed by district courts must be consistent with, among other things, the Federal Rules of Civil Procedure. This mandate is reiterated in Federal Rule of Civil Procedure 83(a)(1) which states, in pertinent part, that: "a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§2072 and 2075[.]"

Local Rule 7.1.1 is inconsistent with Fed. R. Civ. Pro. 26(b)(1) because it unfairly and disproportionately places unilateral burdens on plaintiffs. Rule 26(b)(1) states, in pertinent part, that:

---

[1] "Federal procedural rules, which are promulgated by the U.S. Supreme Court and approved by Congress, have the force of statute. See 28 U.S.C. § 2072; *Sempier v. Johnson & Higgins*, 45 F.3d 724, 736 (3d Cir. 1995); *United States v. Christian*, 660 F.2d 892, 899 (3d Cir. 1981)." *Iremashvili v. Rodriguez*, 2017 U.S. Dist. LEXIS 33546, 2017 WL 935441 (D.N.J. 2017).

[2] 28 USCS § 2072(a) states that, "The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrates [magistrate judges] thereof) and courts of appeals."

> Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, **the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit**.

(Emphasis added). Often times, as in this MDL, defendants are corporate entities that provide their own financing. Accordingly, Local Rule 7.1.1 inherently places an unfair unilateral burden on plaintiffs. Furthermore, disclosure of the source of funding is not relevant to any claims or defenses; therefore, almost by definition, requests for such information are disproportional to the needs of cases. And that is particularly true in the context of this MDL and other cases like it. *See In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612 (D.N.J. 2019) (stating that, "Plaintiffs' litigation funding is a 'side issue' that has nothing to do with addressing the key issues in the case such as what caused defendants' valsartan contamination, whether the contamination caused any injuries, and whether plaintiffs may recover under their theories of liability. Unless and until defendants make a legitimate showing that plaintiffs' litigation funding is directed to a relevant issue, which has not been done, the discovery is denied."). Because a local rule that is not consistent with the Federal Rules of Civil Procedure is invalid, Local Rule 7.1.1 is unlawful both on its face and as applied here—particularly insofar as it requires any disclosures beyond those made herein.

Finally, as further explained above, Local Rule 7.1.1 can—and, here, does—mandate the disclosure of materials that are protected by attorney-client privilege, the work-product doctrine, or both. That makes the rule both facially invalid and unlawful as applied unless protections are allowed for privileged information, consistent with the disclosures above. *See infra* pp. 1-2.

Date:  October 14, 2021 		Respectfully Submitted,


      */s/ Jason P. Foster*
Scott S. Segal, Esq. (WV Bar# 4717)
C. Edward Amos, II, Esq. (WV Bar #12362)
Jason P. Foster, Esq. (WV Bar# 10593)
The Segal Law Firm, L.C.
810 Kanawha Blvd., East
Charleston, WV 25301
(304) 344-9100
(304) 344-9105 (fax)
*Counsel for Plaintiffs*