IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Civ. Action No. 3:16-md-02738 (FLW) (LHG)<br><br>MDL No. 2738 |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

**THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW
IN RESPONSE AND OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON AND
JOHNSON & JOHNSON CONSUMER INC.'S NOTICE OF BANKRUPTCY FILING
AND STAY OF PROCEEDINGS**

TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

    POINT I   THE NON-DEBTOR ENTITIES ARE NOT ENTITLED TO THE
               PROTECTIONS OF THE AUTOMATIC STAY ......................................... 6

               A.  Section 362(a) Only Applies to a Debtor................................................. 7

               B.  None of the Other Defendants Are Alleged to Have Filed for
                    Bankruptcy .............................................................................................. 8

               C.  The Defendants Unilaterally and Wrongfully Extend Claim to the
                    Automatic Stay to the Non-Debtor Entities Without Court Order ........... 9

    POINT II  THE DEFENDANTS HAVE NOT DEMONSTRATED A BASIS FOR
               EXTENDING THE STAY AND HAVE NOT EVEN ATTEMPTED
               TO DO SO ............................................................................................... 11

               A.  No Record Exists that Would Entitle Defendants to an Extension
                    of the Stay .............................................................................................. 11

               B.  Without a Complete Record, A Multitude of Open Legal and
                    Factual Questions Prohibit Application of the Stay to
                    Non-Debtor Entities .............................................................................. 13

RESERVATION OF RIGHTS .......................................................................................... 17

CONCLUSION.................................................................................................................. 18

TABLE OF AUTHORITIES

Pages

**Cases**

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ....................................................................... passim

*Aldrich Pump LLC v. Those Parties to Actions Listed on Appendix A to Complaint*
  *(In re Aldrich Pump LLC)*, No. 20-30608 (JCW), Adv. Pro. No. 20-03041 (JCW),
  2021 WL 3729335, (Bankr. W.D.N.C. Aug. 23, 2021)................................. 9, 12, 13

*Brock v. Morysville Body Works, Inc.*,
  829 F.2d 383 (3d Cir. 1987) ...................................................................... 11

*Chesapeake Crossing Assocs. v. TJX Cos., Inc.*,
  No. Civ. A. 2:92CV631, 1992 WL 469801 (E.D. Va. 1992) .................................. 14

*Credit Alliance Corp. v. Williams*,
  851 F.2d 119 (4th Cir. 1988) ....................................................................... 7, 15

*CresCom Bank v. Terry*,
  499 B.R. 494 (D.S.C. 2013)........................................................................ 7, 11

*DBMP LLC v. Those Parties Listed on Appendix A to Complaint (In re DBMP LLC)*,
  Case No. 20-30080, Adv. Pro. No. 20-03004, 2021 WL 3552350,
  (Bankr. W.D.N.C. Aug. 11, 2021) ................................................................ 9, 12

*Duval v. Gleason*,
  No. C–90–0242–DLJ, 1990 WL 261364 (N.D. Cal. 1990)..................................... 14

*FPSDA II, LLC v. Larin (In re FPSDA I, LLC)*,
  Bankruptcy No. 10–75439, Adversary No. 12–08032, 2012 WL 6681794
  (Bankr. E.D.N.Y. Dec. 21, 2012) ................................................................ 12

*Forcine Conrete & Const. Co. v. Manning Equip. Sales & Serv.*,
  426 B.R. 520 (E.D. Pa. 2010) ..................................................................... 17

*Gilchrist v. Gen. Elec. Cap. Corp.*,
  262 F.3d 295 (4th Cir. 2001) ....................................................................... 11

*Holland v. High Power Energy*,
  248 B.R. 53 (S.D. W.Va. 2000)..................................................................... 14

*In re All Seasons Resorts, Inc.*,
  79 B.R. 901 (Bankr. C.D. Cal. 1987)............................................................. 9, 15

*In re Baldwin-United Corp. Litig.,*
   765 F.2d 343 (2d Cir.1985) ................................................................. 11

*In re Codfish Corp.,*
   97 B.R. 132 (Bankr. D.P.R. 1988) ...................................................... 15

*In re First Cent. Fin. Corp.,*
   238 B.R. 9 (Bankr. E.D.N.Y. 1999) ................................................... 14

*In re Hart,*
   530 B.R. 293 (Bankr. E.D. Pa. 2015) ................................................ 10

*In re Log, L.L.C.,*
   No. 10-80378, 2010 WL 4774347 (Bankr. M.D.N.C. Nov. 9, 2010) ........ 7

*In re Plan 4 Coll., Inc.,*
   No. 09-17952DK, 2009 WL 3208285 (Bankr. D. Md. Sept. 24, 2009) ....... 9

*In re Uni-Marts, LLC,*
   399 B.R. 400 (Bankr. D. Del. 2009) .................................................. 15

*Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.),*
   402 B.R. 571 (Bankr. S.D.N.Y. 2009) .............................................. 17

*McCartney v. Integra Nat. Bank North,*
   106 F.3d 506 (3d Cir. 1997) ......................................................... 7, 11

*Phar-Mor, Inc. v. General Electric Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.),*
   166 B.R. 57 (W.D. Pa. 1994) ........................................................... 14

*Queenie, Ltd. v. Nygard Int'l,*
   321 F.3d 282 (2d Cir. 2003) ....................................................... 16, 17

*Teachers Ins. and Annuity Assoc. of Am. v. Butler,*
   803 F.2d 61 (2d Cir. 1986) ............................................................... 7

*Trustees of the Sickness & Accident Fund of Local One-L v. Philips Winson, Inc.,*
   No. 00 Civ. 9554 (MHD), 2005 WL 273017 (S.D.N.Y. Feb. 3, 2005) ..... 17

*Williford v. Armstrong World Indus., Inc.,*
   715 F.2d 124 (4th Cir. 1983) ........................................................... 7

**Statutes**

11 U.S.C. § 362 ................................................................................ 1, 5

11 U.S.C. § 362(a) ...................................................................................................... 7

11 U.S.C. § 362(a) (1)......................................................................................... passim

11 U.S.C. § 362(a) (3) ................................................................................................ 7

11 U.S.C. § 502(e)(1)(B) ......................................................................................... 16

**Rules**

Fed. R. Bankr. P. 7001(7)........................................................................................... 9

The Plaintiffs' Steering Committee (the "**PSC**") in the *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Multi-District Litigation* (MDL No. 2738) before the United States District Court for the District of New Jersey (the "**MDL Litigation**"), by and through its undersigned counsel, respectfully submits its response in opposition (the "**Opposition**") to the Notice of Bankruptcy Filing and Stay of Proceedings (the "**Stay Notice**") filed by Defendants Johnson & Johnson ("**J&J**") and Johnson & Johnson Consumer Inc. ("**JJCI**" and together with J&J, the "**Defendants**").  In support of the Opposition, the PSC respectfully states as follows:

## PRELIMINARY STATEMENT

1.     The Stay Notice filed by the Defendants is legally flawed and procedurally defective.  First, the Stay Notice baldly claims that the bankruptcy filing of LTL Management LLC ("**LTL**") on October 14, 2021 (the "**LTL Bankruptcy Case**") automatically stayed this action against every one of the nearly 150 Non-Debtor Entities (defined below). This is completely wrong as a matter of law.  There is no question that section 362 of the Bankruptcy Code[1] provides by its express terms for an <u>automatic</u> stay *only for debtors and their property*.

2.     Second, while it is possible for the stay of collection efforts imposed under the Bankruptcy Code to be extended to non-debtors in narrow circumstances, such an extension is not self-effectuating.   The party seeking to invoke the protections of the stay—tantamount to an injunction—must first meet its burden to prove the need for such relief and obtain a court order— just as it would for an injunction.  This procedure is well established, and requires adequate notice to the affected parties and a hearing.  By filing the patently defective Stay Notice, LTL and the Defendants show their disregard for the judicial process at the expense of the tens of thousands of

---

[1] The Bankruptcy Code refers to title 11 of the United States Code, §§ 101 *et seq.*  All references to "§__" are to the Bankruptcy Code unless otherwise indicated.

victims who have suffered severe injuries caused by the Defendants, among others, and who are parties in the MDL Litigation.

3.      Indeed, LTL and the Defendants appear to know that the Stay Notice is incorrect and misleading.  After filing the Stay Notice, asserting that a stay was automatically in effect with respect to non-debtors, LTL filed a motion to extend the stay to the Defendants and the other Non-Debtor Entities with the Bankruptcy Court.  But if such a stay were automatic or beyond doubt, LTL's motion in the Bankruptcy Court would be entirely unnecessary.  The Defendants are taking the extraordinary step of attempting to have two separate courts simultaneously decide the same issue, by motion no less, on an expedited basis and with hardly any notice to affected parties, rather than by complying with the requisite commencement of an adversary proceeding in the bankruptcy case, on notice to every affected party, seeking injunctive relief.

4.      The Defendants cannot unilaterally declare that all claims against them are enjoined.  Procedures to obtain a stay of third party actions pursuant to injunction proceedings exist for a reason—to allow notice to all parties impacted by such injunction and an opportunity to be heard.  Moreover, because the Defendants have chosen to proceed by way of the Stay Notice, there is no factual record on which this Court might make such a determination.

5.      Every day of delay puts at risk the very precise schedule that was put in place by this Court.  On the precipice of the start of the bellwether trials, and at a critical juncture in the discovery process, any delay can be detrimental to ensuring that the Plaintiffs have the opportunity to prosecute their direct claims against the non-debtor Defendants.  The Defendants' unilateral declaration that a stay is in effect as to the Non-Debtor Entities—which it is not and which they know to be improper based upon their recent filing in the Bankruptcy Court seeking a stay—should not stand.  Accordingly, the PSC respectfully requests that the Court reject the Defendants'

2

assertion that a stay is in effect and allow the MDL Litigation to proceed in accordance with the current discovery, briefing and trial schedule.

## BACKGROUND

**The MDL Litigation**

6.      The MDL Litigation features the tragic experiences of tens of thousands of individuals and/or their loved ones who have suffered from ovarian cancer attributable to the use of and exposure to Johnson's Baby Powder® and Shower to Shower®.  The Plaintiffs in the MDL Litigation are numerous (totaling in excess of 35,000) and are not nameless, faceless Plaintiffs, but people with their own unique story and history.  The Plaintiffs consist of women, many of whom waited for years to have their day in court, or the families of women who did not live long enough to see their day in court, on their claims that their or their family member's use of J&J's talcum powder products caused ovarian cancer, and resulted in loss of life, unbearable pain and suffering, and overwhelming medical expense.

7.      The MDL Litigation is nearing the end of case-specific discovery for the bellwether plaintiffs and is scheduled for trial beginning on April 25, 2022.

**The Divisive Merger**

8.      On October 11, 2021 (three days before the commencement of the LTL Bankruptcy Case), LTL's predecessor, Johnson & Johnson Consumer, Inc. ("**Old JJCI**"), formed Royalty A&M LLC ("**Royalty**") in the State of North Carolina.  The totality of Royalty's "operations" consist of no more than collecting royalty streams based on third party sales and potentially reinvesting the income to acquire new third party royalty streams. *See Declaration of John K. Kim in Support of First Day Pleadings* (the "**First Day Declaration**") [LTL Bankruptcy Case, Dkt. 5], at ¶18 (attached as Exhibit "A" to the Declaration of P. Leigh O'Dell (the "**O'Dell Dec.**").   The

3

estimated value of the Debtor's interest in Royalty is approximately $373 million, primarily comprised of the fair market value of the royalty streams. *See First Day Declaration*, at ¶ 26. LTL's bankruptcy filings provide no discussion of how the royalty streams were selected, how and when they are paid, conditions to payment, how they are serviced, what, if any, collection efforts are required and what, if any, other "operations" are being performed by Johnson and Johnson Services, Inc., a New Jersey company, on LTL's behalf.

9.      The day after Royalty was formed—two days before the commencement of the LTL Bankruptcy Case—Old JJCI orchestrated an additional series of corporate maneuvers, known as a "**Texas Two-Step**," to convert into a Texas limited liability company and, then as such, to take advantage of that state's laws permitting divisive mergers that enable a business entity to split into two or more entities and assign its assets and liabilities as it wishes among the successor entities. *See First Day Declaration*, at ¶ 23.  In the mass tort context, as here, the intent and design of the divisive merger is crystal clear: to quarantine all of the Old JJCI's problematic liabilities in one entity ("**BadCo**") and, thus, to untether those liabilities from the Old JJCI's valuable assets and profitable operations, which were, in turn  assigned to an entirely separate entity ("**GoodCo**").

10.      Specifically, on October 12, 2021, Old JJCI formed LTL in Texas as the BadCo, to which it transferred all of Old JJCI's talc related liabilities and certain intangible assets related thereto (*e.g.*, contracts, records, and privileges associated with Old JJCI's talcum powder business). *See First Day Declaration*, at ¶¶ 18, 24.  The same day LTL re-domiciled in North Carolina.  *Id.*  Old JJCI also transferred to LTL a portion of its remaining assets—ownership of Royalty, a bank account with approximately $6 million in cash and the rights under a funding agreement the approval of which LTL seeks, by motion, at the outset of LTL's Bankruptcy Case (but not at the first day hearing scheduled for October 20, 2021 at 9:30 a.m. (ET)).  *Id.*

11.     Simultaneously, Old JJCI organized another Texas entity, which immediately thereafter merged into a New Jersey corporation, called Johnson & Johnson Consumer, Inc. ("**New JJCI**") as the GoodCo, to which Old JJCI's other assets and liabilities were assigned.  According to LTL, New JJCI, LTL's immediate parent company, "manufactures and sells a broad range of products used in the baby care, beauty, oral care, wound care and women's health care fields, as well as over-the-counter pharmaceutical products." *First Day Declaration*, at ¶ 19.

**The LTL Bankruptcy Case and the Defendants' Filing of the Stay Notice**

12.     On October 14, 2021 (the "**Bankruptcy Filing Date**"), LTL filed for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") and assigned Case No. 21-30589. *See Voluntary Petition for Non-Individuals Filing for Bankruptcy* (the "**Bankruptcy Petition**") attached as Exhibit B to the O'Dell Dec.

13.     One day after the Bankruptcy Filing Date, the Defendants filed the Stay Notice in this case.  [MDL Litigation, Dkt. No. 25928].

14.     Through the Stay Notice, the Defendants state, among other things:

> PLEASE TAKE FURTHER NOTICE THAT, upon the filing of LTL's chapter 11 case, the automatic stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") became immediately effective and, as a result, all claims asserted against LTL in the above-captioned action (the "Proceeding") are stayed absent an order of the Bankruptcy Court lifting or modifying the Automatic Stay.

> PLEASE TAKE FURTHER NOTICE THAT: (i) Defendant Johnson & Johnson Consumer Inc. ("Old JJCI"), following a corporate restructuring that was completed on October 14, 2021, ceased to exist; (ii) as a result of the restructuring, LTL is now responsible for the talc-related claims asserted against Old JJCI in this Proceeding; and (iii) a new entity named Johnson & Johnson Consumer Inc. ("New JJCI") was created as part of the same restructuring.

PLEASE TAKE FURTHER NOTICE THAT: (i) one or more of the entities set forth on the list attached hereto as Exhibit B and/or Johnson & Johnson are Defendants in this Proceeding (collectively with Old JJCI and New JJCI, the "LTL Defendants"); and (ii) **as a result of the Automatic Stay, no further action may be taken to prosecute the talc-related claims against any LTL Defendant absent an order of the Bankruptcy Court lifting or modifying the Automatic Stay** because (a) all LTL Defendants share such an identity of interest with LTL that LTL is, in effect, the real-party defendant in any claims asserted against them in this Proceeding and/or (b) prosecution of the talc-related claims against any LTL Defendant would allow plaintiffs to fix claims against LTL – particularly through indemnity or alleged indemnity obligations, but also through collateral estoppel, res judicata and evidentiary prejudice.

*Stay Notice*, pp. 1-2 (emphasis added).

15.     On October 18, 2021, LTL filed with the Bankruptcy Court the *Debtor's Emergency Motion to Enforce the Automatic Stay Against Talc Claimants who Seek to Pursue Their Claims Against the Debtor and Non-Debtor Affiliates* (the "**Emergency Stay Motion**"), which is attached as Exhibit C to the O'Dell Dec.  In short, the Emergency Stay Motion requests that the Court enter an order determining that the automatic stay applies to the Non-Debtor Entities herein.

**ARGUMENT**

**POINT I**

**THE NON-DEBTOR ENTITIES ARE NOT ENTITLED TO THE PROTECTIONS OF THE AUTOMATIC STAY**

16.     By filing the Stay Notice, the Defendants have attempted to short circuit the well-established procedure for extending the Bankruptcy Code's automatic stay.  Only LTL filed a bankruptcy petition, and therefore only LTL and its property as of the time of the Bankruptcy Filing Date are entitled to the benefit of the automatic stay.  A bankruptcy stay is not automatic for actions against non-debtor third parties, but must be affirmatively extended to such parties

6

after—at a minimum—notice, a hearing, and court order. It is LTL's burden to prove the need for such an extension and to obtain an order to that effect. Accordingly, with the exception of LTL, at this time the automatic stay under the Bankruptcy Code is not applicable to stay the litigation pending against the other Defendants, each of whom are presently non-debtors in the LTL Bankruptcy Case.

### A.   Section 362(a) Only Applies to a Debtor

17.   Upon commencement of a debtor's bankruptcy case, § 362(a) of the Bankruptcy Code immediately and automatically stays all "action[s] or proceeding[s] against the debtor" and all actions "to obtain possession ... or to exercise control over property of the estate." 11 U.S.C. §§ 362(a) (1), (3).  It is clear on its face, the automatic stay under Bankruptcy Code § 362 protects *only* debtors and their property—not non-debtors or their property. *See, e.g., McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 509–10 (3d Cir. 1997) (noting that section 362(a)(1) does not benefit sureties, guarantors, co-obligors, or others with connection to the debtor); *Teachers Ins. and Annuity Assoc. of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126 (4th Cir. 1983) ("[W]e need only examine the plain wording of the statute itself. It provides only for an automatic stay of any judicial proceeding 'against the debtor.'"); *CresCom Bank v. Terry*, 499 B.R. 494, 496 (D.S.C. 2013) ("This automatic stay provision applies to judicial proceedings and enforcement of judgments against only the debtor, not third party defendants or co-defendants." (citing *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988))); *In re Log, L.L.C.,* No. 10-80378, 2010 WL 4774347, at *2 (Bankr. M.D.N.C. Nov. 9, 2010) ("[Section 362(a)(1)] has traditionally

7

been interpreted to include only formal legal proceedings against the debtor, and not litigation that collaterally affects the debtor.").

18.     Here, a bankruptcy petition was filed solely by LTL.  Yet, incredibly, the Defendants attached to the Stay Notice an astounding list of *nearly 150 entities* that the Defendants assert are protected by the automatic stay of the Bankruptcy Code as a result of LTL's bankruptcy filing.  The list includes not only J&J and JJCI, but also a breathtaking array of entities—such as "7-Eleven," "Albertson's Companies, Inc.," "Family Dollar Stores," "Target Corporation," etc.,— whose immediate relation to these entities or to LTL is not stated (collectively, the "**Non-Debtor Entities**").  The breadth of the list is without reasonable justification as it appears that not all of the Non-Debtor Entities are even Defendants in the MDL Litigation.  As the Defendants merely point out, "one or more of the entities set forth on the list" are Defendants as opposed to definitively stating each of the Non-Debtor Entities is a Defendant in the MDL Litigation.  *Stay Notice*, p. 2. The Defendants have presented nothing—neither evidence nor meaningful argument—to support the claim that this extensive list of parties benefit from the automatic stay.

### B.     None of the Other Defendants Are Alleged to Have Filed for Bankruptcy

19.     Notably, nowhere in the Stay Notice is it stated that either J&J and/or JJCI filed a bankruptcy petition of their own making them a debtor under the Bankruptcy Code.

20.     Nor is it stated in the Stay Notice that any of the other entities on Exhibit B to the Stay Notice filed a bankruptcy petition of their own, making them a debtor under the Bankruptcy Code.

21.     Accordingly, none of J&J, JJCI or the other non-Debtor Entities on Exhibit B to the Stay Notice can avail themselves of the automatic stay under § 362 as a debtor under the Bankruptcy Code.

C.     **The Defendants Unilaterally and Wrongfully Extend Claim to the Automatic Stay to the Non-Debtor Entities Without Court Order**

22.     Though LTL is the only debtor in connection with the LTL Bankruptcy Case, the Defendants have taken it upon themselves to expand the scope of the automatic stay to the Non-Debtor Entities in the absence of a court order.  While an extension of the bankruptcy stay to non-debtor parties is possible in limited and rare instances, no such extension is available automatically or as of right by virtue of the statutory text.  *See, e.g., In re Plan 4 Coll., Inc.*, No. 09-17952DK, 2009 WL 3208285, at *1 (Bankr. D. Md. Sept. 24, 2009) ("[T]here is no cognizable dispute that by law 11 U.S.C. § 362(a)(1) only creates a stay of actions that were or could have been commenced against the debtor but does not create automatically such a stay of actions against non-debtor parties.").  To the contrary, an extension of the kind that the Defendants assert requires a court order.  *See In re All Seasons Resorts, Inc.*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987) ("[T]he automatic stay does not *automatically* encompass co-defendants.  A court must make that determination upon request of the debtor.").

23.     Moreover, where, as here, relief requested is injunctive or equitable in nature, it requires an adversary proceeding under the Federal Rules of Bankruptcy Procedure.  *See* FED. R. BANKR. P. 7001(7) (making "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding).  Accordingly, an extension of the stay of the kind that the Defendants assert is almost exclusively sought in the context of an adversary proceeding with a request for a preliminary injunction—including within the Western District of North Carolina, where the LTL Bankruptcy Case is pending. *See, e.g., See Aldrich Pump LLC v. Those Parties to Actions Listed on Appendix A to Complaint (In re Aldrich Pump LLC)*, No. 20-30608 (JCW), Adv. Pro. No. 20-03041 (JCW), 2021 WL 3729335, at *1-2 (Bankr. W.D.N.C. Aug. 23, 2021); *DBMP LLC v. Those Parties Listed on Appendix A to Complaint (In re DBMP LLC)*, Case No. 20-30080, Adv. Pro. No.

9

20-03004, 2021 WL 3552350, at *1-2 (Bankr. W.D.N.C. Aug. 11, 2021).  This is also true within the Third Circuit.  *See, e.g., In re Hart*, 530 B.R. 293, 309 (Bankr. E.D. Pa. 2015) (concluding that an adversary proceeding is *required* to seek an extension of the stay).

24.     But there is no adversary proceeding or court order here.  Instead, the Defendants simply and brazenly state, "one or more of the entities set forth on the list attached [thereto] as Exhibit B and/or Johnson & Johnson are Defendants in this Proceeding (collectively with Old JJCI and New JJCI, the 'LTL Defendants')" and as a result of the Automatic Stay (which is defined in the Stay Notice to mean the automatic stay imposed upon the filing of the LTL bankruptcy case), "no further action may be taken to prosecute the talc-related claims against any LTL Defendant absent an order of the Bankruptcy Court lifting or modifying the Automatic Stay."  *Stay Notice*, p. 2.  The foregoing statement is not only misleading to the Court, the parties in the MDL Litigation and the public at large, but it is a gross mischaracterization of the scope and operation of the automatic stay afforded by § 362(a)(1).

25.     Most charitably interpreted, the Defendants' statement appears to be based on the fact that, within the Fourth Circuit—where the LTL Bankruptcy Case is pending—the automatic stay has, in other cases, been extended to non-debtor parties on the grounds stated in the Stay Notice.  *See Stay Notice* (asserting that any claim pending against *any* party that either (i) shares "an identity of interest" such that LTL is the "true defendant" or (ii) would result in claims against LTL's estate are automatically stayed simply because of LTL's filing); *see also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (holding that, though § 362(a)(1) is limited by its text to debtors, under "unusual circumstances," a "bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants").

26.     The Defendants' bare assertion in the Stay Notice that this type of extension applies is of no moment.  In fact, it underscores that the Defendants were first required to seek and obtain an order extending the stay to the Non-Debtor Entities, which they have not.  The Fourth Circuit's language in *Piccinin* makes clear that a bankruptcy court must first make a finding of unusual circumstances in order to effect a stay as to non-debtor third-parties.  *Id.*  In other words, whether a stay for non-debtors is appropriate is a determination that must be made on a case-by-case basis; it is not self-effectuating. While this Court may also determine whether the stay applies in this action,[2] the bottom line is that the determination is one that must be made by a court, and not unilaterally by debtors or non-debtors seeking the benefits of the stay. As described further below, this is of particular importance here, as there is no factual record whatsoever to establish a predicate for any extension of the stay—no less one so broad—and therefore reason to conclude that such a stay does not apply.

## POINT II

### THE DEFENDANTS HAVE NOT DEMONSTRATED A BASIS FOR EXTENDING THE STAY AND HAVE NOT EVEN ATTEMPTED TO DO SO

**A.**     **No Record Exists that Would Entitle Defendants to an Extension of the Stay**

27.     As noted above, the Fourth Circuit applies an "unusual circumstance" test to determine whether an extension of § 362(a)(1)'s stay to non-debtors is appropriate.  *Piccinin*, 788 F.2d at 999; *see also McCartney*, 106 F.3d at 511 (making "unusual circumstance" exception applicable within the Third Circuit).  The available facts here would not satisfy the "unusual

---

[2]  A district court has authority co-extensive with a bankruptcy court to determine whether an action before it is stayed by operation of the bankruptcy code. *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir.1985) ("Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending ... and the bankruptcy court supervising the reorganization."); *see also Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 303 (4th Cir. 2001) (citing *Baldwin* approvingly*)*; *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 387 (3d Cir. 1987) (adopting *Baldwin*'s holding). The determination is often left to bankruptcy courts, however. *See, e.g.*, *CresCom*, 499 B.R. at 497–98.

circumstances" test, however.  The facts and circumstances here, while perhaps facially similar to recent "Texas Two Step" cases pending in the Western District of North Carolina in which the stay was extended to non-debtor third-parties, are distinct.  *See In re Aldrich Pump LLC*, 2021 WL 3729335, at 30\*–32 (Bankr. W.D.N.C. Aug. 23, 2021); *In re DBMP LLC*, 2021 WL 355230, at \*27–28 (Bankr. W.D.N.C. Aug. 11, 2021).

28.     There, as here, the burden of proving appropriateness was on the party seeking the benefit of the stay.  Generally, the debtor must establish the basis for an extension by clear and convincing evidence.  *See Piccinin*, 788 F.2d at 1003 (noting that "clear and convincing circumstances" must be demonstrated for court to use equitable powers to stay actions against third parties); *see also FPSDA II, LLC v. Larin (In re FPSDA I, LLC)*, Bankruptcy No. 10–75439, Adversary No. 12–08032, 2012 WL 6681794, at \*8 (Bankr. E.D.N.Y. Dec. 21, 2012), *as corrected* (Dec. 26, 2012) ("[E]xtensions of the stay to protect non-debtor parties are the exception, not the rule, and are generally not favored.  Thus, the movant must show by 'clear and convincing evidence' that extension of the stay is warranted.").  And indeed, the debtors in those cases commenced adversary proceedings before the bankruptcy court to determine whether an extension of the stay was warranted.  In each case, the decision was rendered on a full record after evidentiary hearing.

29.     In *Aldrich Pump*, for instance, the debtor—represented by the same bankruptcy counsel as LTL—commenced an adversary proceeding on June 18, 2020, and contemporaneously filed a motion seeking a preliminary injunction and to extend the stay to certain non-debtor third-parties.  *Aldrich*, 2021 WL 3729335, at \*1–2.  The Court ruled on the motion on August 23, 2021, more than a year later, after contested discovery and a bench trial with live testimony from a half dozen witnesses.  *Id.*  Based on that extensive record, the *Aldrich* Court determined that a

continuation of litigation against the non-debtor entities would result in claims against the debtor and trigger indemnification rights. *Aldrich*, 2021 WL 3729335, at *31. Here, however, the Court and the parties are simply being asked to reach this same conclusion based solely on one paragraph in the Defendants' Stay Notice quoting the applicable Fourth Circuit standard from *Piccinin*.[3]

30.     Simply put, despite the Defendants' assertions, there is currently no evidentiary basis for this or any other court to determine whether the automatic stay should apply here. The Defendants have made no representation about the relationship between LTL and the nearly 150 parties on Exhibit B to the Stay Notice, no less explained the nature of the indemnification obligations between the parties.

**B.     Without a Complete Record, A Multitude of Open Legal and Factual Questions Prohibit Application of the Stay to Non-Debtor Entities**

31.     By attempting to avail themselves of the automatic stay by the Stay Notice, the Defendants treat mere facial similarity to past cases as sufficient to extend the stay automatically to the Non-Debtor Entities. But whether the stay applies to the Non-Debtor Entities requires resolution of a host of factual and legal issues. As things stand, it is simply impossible to adequately assess the merits of the Defendants' assertion in the absence of a complete record—and, as a result, it is impossible for LTL or the Defendants to have met their burden to obtain an extension of the stay.

32.     In the first instance, the Defendants simply assume an identity of interest exists between LTL and the Non-Debtor Entities, contending in the Stay Notice that "all LTL Defendants share such an identity of interest with LTL that LTL is, in effect, the real-party defendant in any

_____
[3] Notably, neither the *Aldrich* court nor the *DMBP* court determined that an extension of § 362(a)(1) is automatic. *See Aldrich*, 2021 WL 3729335, at *30 (concluding only that § 362(a)(1) "either presently extends to, or can be extended through" the pending injunction motion); *DMBP*, 2021 WL 3552350, at *27 (same).

claims asserted against them in this Proceeding." *Stay Notice*, p. 2.  Yet, a stay is not appropriate to the extent that the Plaintiffs have independent claims against the Non-Debtor Entities, which the Plaintiffs have. *See Plaintiffs' First Amended Master Long Form Complaint and Jury Demand* [MDL Litigation, Dkt. No. 132].  Where a party holds an independent direct claim against a non-debtor, "there is no compelling basis by which a court must extend the automatic stay provisions of § 362 to the non-debtor co-defendants." *In re First Cent. Fin. Corp*., 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (*quoting Duval v. Gleason*, No. C–90–0242–DLJ, 1990 WL 261364, *4 (N.D. Cal. 1990)); *see also Holland v. High Power Energy*, 248 B.R. 53, 58 (S.D. W.Va. 2000) (stating that unusual circumstance exception is inapplicable when a third party has "obligations that are 'independent' and primary, not derivative of those of the debtor"); *Phar-Mor, Inc. v. Gen. Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.)*, 166 B.R. 57, 62 (W.D. Pa. 1994) ("[T]he Code was not intended to stay actions ... where the nondebtor's liability rests upon his own breach of duty."); *Chesapeake Crossing Assocs. v. TJX Cos., Inc*., No. Civ. A. 2:92CV631, 1992 WL 469801, *4 (E.D. Va. 1992) ("[A] third-party defendant will not be covered under the stay '. . . where the non-debtor's liability rests upon his own breach of duty.'" (quoting *Piccinin*, 788 F.2d at 999)).

33.     The existence of independent claims is critical in this case because, as a result of the merger, LTL holds all of the Defendants' talc liabilities, but not all of their assets.  As noted above, LTL was only given ownership of Royalty, a bank account with approximately $6 million in cash and the rights under a funding agreement.  By attempting to stay these claims against the Non-Debtor entities and forcing them into the bankruptcy, it would therefore artificially cap all liability to the extent of LTL's limited assets.

34.     While the Defendants further contend in the Stay Notice that the stay of litigation against the Non-Debtor Entities is justified because the continued prosecution of claims against Non-Debtor Entities will implicate potential indemnification obligations against LTL, there is, again, no factual predicate for this.  Neither LTL nor the Non-Debtor Entities has stated the nature of the indemnification obligations that might flow between these parties.   While the Court and the parties are therefore only left to guess at the nature of these obligations, applicable law suggests that only a narrow set of circumstances would afford the Non-Debtor entities the benefit of a stay.

35.     The mere existence of indemnity or guaranty obligation does not automatically justify extension of the automatic stay to non-debtors.  In *Credit Alliance*, for example, the Fourth Circuit refused to expand the automatic stay to include the guarantor of a note despite the fact that the guarantor would be entitled to bring claims for reimbursement through the bankruptcy proceedings.  *Credit Alliance*, 851 F.2d at 121.

36.     Where a non-debtor party "is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case[,]" extension of the automatic stay may be appropriate.  *Piccinin*, 788 F.2d at 999 (emphasis added).  But the existence of a right of indemnity is not, in and of itself, grounds for extension of the automatic stay.  *See, e.g.*, *In re Uni-Marts, LLC*, 399 B.R. 400, 416 (Bankr. D. Del. 2009) (concluding that indemnification obligation did not constitute "unusual circumstances" where it did not threaten reorganization); *In re Codfish Corp.*, 97 B.R. 132, 135 (Bankr. D.P.R. 1988); *All Seasons Resorts*, 79 B.R. at 904 ("Although there is a closeness between debtor and co-defendants by reason of their officer and agent status and their right to indemnification ... the magnitude of the harm to debtor if no stay is in force does not approach the scope of the potential injuries besetting the debtors in Robins and Johns-Manville.").

37.     All of the claims and causes of action asserted in the MDL Litigation arise out of transactions that occurred prior to the Bankruptcy Filing Date.  Accordingly, any indemnification claim asserted by a Non-Debtor Entity is, at best, a general unsecured pre-petition claim subject to the same review and allowance procedures as any other general unsecured pre-petition claim before the Bankruptcy Court, and could be subject to expungement as contingent and unliquidated pursuant to § 502(e)(1)(B) of the Bankruptcy Code.[4]

38.     Furthermore, to the extent that the Defendants assert that prosecution of the claims against the Non-Debtor Entities will result in decisions or judgments against debtor LTL, or that there is risk of collateral estoppel, stare decisis or evidentiary prejudice against LTL, this notion is also flawed.

39.     Indeed, the risk of collateral estoppel, stare decisis, and evidentiary prejudice against LTL is a red herring.  The fact that another plaintiff may attempt to assert collateral estoppel or a related doctrine based on a finding by the court in this action is not an appropriate ground on which to enjoin the actions.  *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003) ("If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants."). Indeed, in *Queenie*, the Second Circuit noted that it had "not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive

---

[4] Section 502(e)(1)(B) provides:

> (e)(1)   Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . .
>
> (B)   such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

11 U.S.C. § 502(e)(1)(B).

16

collateral estoppel or the precedential effect of an adverse decision." *Id.*; *see also Forcine Conrete & Const. Co. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 526 (E.D. Pa. 2010) ("[T]he *Queenie* court 'located [no] decision[s] applying the stay to a non-debtor' solely on collateral estoppel grounds, and this court has discovered no post-*Queenie* cases in this district extending a stay on such grounds."); *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 591 (Bankr. S.D.N.Y. 2009) (declining to find irreparable injury as a consequence of the potential application of collateral estoppel, res judicata, or stare decisis); *Trustees of the Sickness & Accident Fund of Local One-L v. Philips Winson, Inc.*, No. 00 Civ. 9554 (MHD), 2005 WL 273017, at *2 (S.D.N.Y. Feb. 3, 2005) (citing Queenie and holding that the "possible precedential effect on the debtor's case ... is not an adequate basis for extending the automatic stay to a non-debtor").

40.     Finally, there will be no burden on or distraction of any employee of LTL by reason of the prosecution of the MDL Litigation against the Non-Debtor Entities.  Certainly, J&J, one of the world's largest healthcare companies, cannot convincingly demonstrate that it has limited resources or staff such that the continued prosecution of claims against it would burden J&J's daily operations.

## **RESERVATION OF RIGHTS**

41.     Should any of the Defendants subsequently seek an extension of the stay by motion or application before this or any other Court, the PSC reserves the right to amend, modify and/or supplement this Opposition, and/or file a separate objection, based on new information, including but not limited to any new information that may be produced by the Defendants.

## **CONCLUSION**

42.     For the reasons set forth above, there is currently no stay effective against the Non-Debtor Entities.  Neither LTL nor the Non-Debtor Entities have sought such a stay by procedurally proper means and, as a result, have not provided this Court with an adequate basis to determine that the automatic stay applies as set forth in the Stay Notice.  This Court should therefore conclude that the automatic stay does not presently apply to the Non-Debtor Entities subject to further order of this Court or the Bankruptcy Court, and grant such other and further relief as the Court may deem proper.

Dated: October 20, 2021              Respectfully submitted,

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel:    202-783-6400
Fax:    202-416-6392
mparfitt@ashcraftlaw.com

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel:    334-269-2343
Fax:    334-954-7555
leigh.odell@beasleyallen.com

***Plaintiffs' Co-Lead Counsel***

/s/ Christopher M. Placitella
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel:    732-747-9003
Fax:    732-747-9004
cplacitella@cprlaw.com

**Plaintiffs' Liaison Counsel**

**PLAINTIFFS' EXECUTIVE COMMITTEE:**

Warren T. Burns
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, TX 75201
Tel:    469-904-4551
Fax:    469-444-5002
wburns@burnscharest.com

Richard Golomb
GOLOMB & HONIK, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel:    215-985-9177
rgolomb@golombhonik.com

Richard H. Meadow
THE LANIER LAW FIRM PC
6810 FM 1960 West
Houston, TX 77069
Tel:    713-659-5200
Fax:    713-659-2204
richard.meadow@lanierlawfirm.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11thFloor
New York, NY 10017
Tel:    212-397-1000
hunter@napolilaw.com

**PLAINTIFFS' STEERING COMMITTEE:**

Laurence S. Berman
LEVIN, SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel:    215-592-1500
Fax:    215-592-4663
lberman@lfsblaw.com

Timothy G. Blood
BLOOD, HURST & O'REARDON,
LLP
701 B Street, Suite 1700
San Diego, CA 92101
Tel:    619-338-1100
Fax:    619-338-1101
tblood@bholaw.com

Sindhu S. Daniel
GRANT & EISENHOFER
123 Justison Street
7th Floor
Wilmington, DE 19801
Tel:    302-622-7000
Fax:    302-622-7100
sdaniel@gelaw.com

Kristie M. Hightower
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Tel:    337-439-0707
Fax:    337-439-1029
khightower@lundylawllp.com

Victoria Maniatis
SANDERS PHILLIPS GROSSMAN, LLC
100 Garden City Plaza, Suite 500
Garden City, NJ 11530
Tel:    516-640-3913
Fax:    516-741-0128
vmaniatis@thesandersfirm.com

Eric H. Weinberg
THE WEINBERG LAW FIRM
149 Livingston Avenue
New Brunswick, NJ 08901
Tel:    732-246-7080
Fax:    732-246-1981
ehw@erichweinberg.com

Christopher V. Tisi
LEVIN PAPANTONIO
316 South Baylen St.
Pensacola, FL 32502
Tel:    850-435-7000
ctisi@levinlaw.com

Jeff S. Gibson
WAGNER REESE, LLP
11939 N. Meridian St.
Carmel, IN 46032
Tel:    317-569-0000
Fax:    317-569-8088
jgibson@wagnerreese.com

Daniel R. Lapinski
MOTLEY RICE LLC
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel:    856-667-0500
Fax:    856-667-5133
dlapinski@motleyrice.com

Carmen S. Scott
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel:    843-216-9162
Fax:    843-216-9450
cscott@motleyrice.com

Richard L. Root
MORRIS BART, LLC
Pan America Life Center
601 Poydras St., 24th Fl.
New Orleans, LA 70130
Tel.    504-525-8000
Fax:    504-599-3392
rroot@morrisbart.com