# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738<br>Hon. Freda L. Wolfson<br>Magistrate Judge Lois H. Goodman<br><br>Case No.: 3:16-md-02738-FLW-LHG<br><br>[ORAL ARGUMENT REQUESTED] |

**THE FERRARO LAW FIRM, P.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM <u>COMMON BENEFIT FEE ASSESSMENTS</u>**

David A. Jagolinzer
Fla. Bar No. 181153
daj@ferrarolaw.com
James L. Ferraro, Jr.
Fla. Bar No. 107494
jjr@ferrarolaw.com
Angelica L. Novick
Fla. Bar No. 105069
aln@ferrarolaw.com
THE FERRARO LAW FIRM, P.A.
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Tel.: 305.375.0111

1

The Ferraro Law Firm (hereafter, "Ferraro Law") respectfully files this Memorandum in Support of its Motion for Relief from Common Benefit Fee Assessments, and in support thereof states as follows:

## INTRODUCTION & BACKGROUND

Ferraro Law recently settled 24 cases in its inventory of claims against Johnson and Johnson (hereafter, "J&J") and Johnson & Johnson Consumer Inc. f/k/a Johnson & Johnson Consumer Companies, Inc. (hereafter, "J&J Consumer") (collectively, "J&J Defendants"). Those cases consist of a lawsuit filed in Florida state court on behalf of one Plaintiff, lawsuits filed as part of this MDL on behalf of 22 Plaintiffs, and claims belonging to one individual with an unfiled case. Before negotiating those settlements on behalf of its clients, Ferraro Law actively litigated its ovarian cancer talc cases, including conducting extensive discovery. In December of 2020, as trial approached in one Florida state court case, undersigned counsel contacted Co-Lead Counsel for this MDL, P. Leigh O'Dell with the law firm of Beasley, Allen, Crow, Methvin, Portis and Miles, P.C. (hereafter, "Beasley Allen"), seeking introductions to two expert witnesses—Dr. Ghassan Saed, and Laura Plunkett. Undersigned counsel sought, at a minimum, consultations with both experts to aid with Ferraro Law's case preparation, including the experts' review of issues related thereto. In response to that request, Ms. O'Dell informed undersigned counsel that not only would she not connect him and his colleagues at Ferraro Law

with those experts, she would also instruct both experts not to speak with undersigned counsel or his colleagues altogether.  *See* Declaration of David A. Jagolinzer, attached hereto as **Exhibit B**, ¶¶ 8-10 (hereafter, "Jagolinzer Dec.").  Ms. O'Dell offered no justification for her response at the time, and as of the date of filing this motion, has not provided a reasonable justification for that response.

Ms. O'Dell's unreasonable response not only thwarted Ferraro Law's ability to aggressively advance its clients' cases against the J&J Defendants—which would have truly been to the common benefit of *all* Plaintiffs in this MDL—but it also actively undermined one of the central tenets of her and her firm's role as Co-Lead Counsel—to manage this MDL for the common benefit of *all* Plaintiffs.  Worse yet, Ms. O'Dell's response was also contrary to her and her firm's obligations under the Participation Agreement that Ferraro Law executed (the "Participation Agreement"), the form of which this Court attached to its Case Management Order No. 7(A) (hereafter, "CMO No. 7(A)").  A true and correct copy of the Participation Agreement is attached hereto as **Exhibit C**.  As Ms. O'Dell well knew, Ferraro Law's entry into the Participation Agreement entitled it to access Common Benefit Work Product, as defined therein, including discovery materials and experts.  In exchange for access to Common Benefit Work Product, Ferraro Law agreed to contribute specific percentages of any recoveries it obtained from the J&J

Defendants on behalf of its clients to a common benefit fund to compensate Lead Counsel.

At the time Ferraro Law resolved those 24 cases with the J&J Defendants, there was no discussion of any hold-back or common benefit fee assessment, as these were not MDL-supervised settlements. Instead, the settlements Ferraro Law negotiated with the J&J Defendants were simple and straightforward (*i.e.*, executed releases in exchange for sums certain).[1] However, the J&J Defendants ultimately disbursed only 88% of the total settlement proceeds to Ferraro Law, holding back 12% of the previously negotiated settlement proceeds. The J&J Defendants did so based on what they perceived to be their obligations under CMO No. 7(A). When Ferraro Law objected to the J&J Defendants' withholding 12% of the settlement proceeds for the common benefit fund, the J&J Defendants indicated they would retain those funds until such time as Lead Counsel confirmed to the J&J Defendants in writing that they could either release all those funds to Ferraro Law or hold back a lesser amount pursuant to CMO No. 7(A). *See* Ex. B, Jagolinzer Dec., ¶ 17. To date, and again without justification, Lead Counsel has failed to respond to the J&J Defendants' counsel with their position as to whether any amounts must be withheld from the J&J Defendants' settlements with Ferraro Law's clients, let alone what

---

[1] As discussed further below, settlements that are not MDL-supervised do not fall within the ambit of CMO No. 7(A).

4

amount of those funds the J&J Defendants should withhold as required by CMO No. 7(A).  *See id.*; *see also* CMO No. 7(A), ¶ 29.[2]

Ferraro Law and Lead Counsel have attempted to resolve this dispute prior to Ferraro Law filing this Motion but were not successful in reaching a resolution.  As discussed above and more fully below, Ferraro Law contends that ***none*** of the amounts it has recovered (or will recover) as part of its representation of individuals against the J&J Defendants should be held back for contribution to the common benefit fund.  First and foremost, Ferraro Law's recently settled cases are not covered by CMO No. 7(A) because those settlements were not reached as part of an MDL-supervised settlement agreement, and Ferraro Law and its clients were unreasonably denied the benefit of any "Common Benefit Work Product" that would justify any such contributions.  Co-Lead Counsel's conduct toward Ferraro Law was also antithetical to the "common benefit" MDL leadership is bound to pursue and should not be incentivized by permitting Ferraro Law's clients' recoveries to be automatically reduced without Court intervention.

---

[2] Ferraro Law's position is that it and its clients should not be required to contribute any amounts recovered from the J&J Defendants to the common benefit fund due to Ms. O'Dell's reprehensible conduct, in either the 24 cases resolved to-date or any of the other actions it has filed, will file, or will otherwise pursue on behalf of other Plaintiffs. However, should the Court decide Ferraro Law must contribute a portion of any amounts recovered from the J&J Defendants through its efforts on behalf of its clients, Ferraro Law requests that the J&J Defendants be required to hold back 8% (rather than 12%) of those amounts under CMO No. 7(A) and the Participation Agreement.

# ARGUMENT

## A. THE MDL COMMON BENEFIT FEE ASSESSMENT IS INAPPLICABLE TO FERRARO LAW'S INVENTORY OF SETTLED CASES PURSUANT TO CMO NO. 7(A).

First, Ferraro Law's recently settled cases should not be subjected to a common benefit fee assessment because those cases are not covered by CMO No. 7(A). CMO No. 7(A) expressly applies "to cases and claims of ovarian cancer injuries, including death cases and claims from Talcum Powder Products…[as well as] any claims for a request for a fee or claims for reimbursement of expenses emanating from those cases and claims." (*Id.* ¶ 4.) CMO No. 7(A) further specifically enumerates its application as follows:

a. All cases now or hereafter subject to the jurisdiction of this Court in this MDL litigation, regardless of whether the case is resolved while the case is pending before this Court or is resolved after a remand from this Court to the transferor federal court;

b. All cases and/or claims settled pursuant to an MDL-supervised settlement agreement between the parties, which may include cases in any state court and claims that are not filed but participate in any MDL-supervised settlement agreement;

c. All cases and/or claims of any of the ovarian cancer clients of any counsel who signed or are deemed to have signed the "*Participation Agreement*" that is attached to this Order as Exhibit A hereto, whether case was filed, unfiled or tolled, including cases filed in state court; **_and_**

d. All cases and/or claims of any ovarian cancer clients of any counsel who received, used, or benefited from the Common Benefit Work Product.

(*Id.* ¶ 4) (emphasis added).

As emphasized above, for a case to be subject to CMO No. 7(A), and therefore, to common benefit fee assessment under the Participation Agreement, any settled case or claim must meet *all* the criteria enumerated above. None of the cases Ferraro Law settled from its inventory fall under subsection b. (covering "[a]ll cases and/or claims settled pursuant to an MDL-supervised settlement agreement between the parties…") or subsection d. ("[a]ll cases and/or claims of any ovarian cancer clients of any counsel who received, used, or benefited from the Common Benefit Work Product.").

None of the cases Ferraro Law settled were settled pursuant to an MDL-supervised settlement agreement, nor did any of those cases receive, use, or benefit from any Common Benefit Work Product. To the contrary, Ferraro Law settled those cases without *any* involvement or input from Lead Counsel. *See* Ex. B, Jagolinzer Dec., ¶¶ 4-5, 7. Moreover, although Ferraro Law tried to avail itself of Common Benefit Work Product as Participating Counsel, Co-Lead Counsel rejected undersigned counsel's request and blocked Ferraro Law's access to the requested Common Benefit Work Product—critically important experts. *See id.*, ¶¶ 8-14. While they were negotiating the resolution of the 24 cases underlying this motion, Ferraro Law and the J&J Defendants also never discussed a common benefit fee assessment. *See id.*, ¶ 6. The terms of the settlements negotiated also did not include

7

any duties or obligations pertaining to the MDL or any pending state court actions (other than dismissal of any associated lawsuits). *See id.* In sum, no aspect of the settlements invoked CMO No. 7(A), including any common benefit fee assessment thereunder. The Court should therefore grant this motion and, in doing so, specifically find that the funds the J&J Defendants held back from those settlements are exempt from CMO No. 7(A) altogether.

**B. FERRARO LAW DID NOT RECEIVE ANY COMMON BENEFIT WORK PRODUCT, AND THEREFORE, THE SETTLEMENTS IT REACHED SHOULD NOT BE SUBJECTED TO ANY COMMON BENEFIT FEE ASSESSMENT.**

Even if the cases Ferraro Law settled with the J&J Defendants did fall within the scope of CMO No. 7(A)—which they do not—none of the settlement proceeds should be deposited into the common benefit fund. Put simply, Co-Lead Counsel Ms. O'Dell breached the Participation Agreement when she disregarded Ferraro Law's status as Participating Counsel and unjustifiably blocked Ferraro Law's access to Common Benefit Work Product.

Ms. O'Dell did so despite the clear language of the Participation Agreement, which states in pertinent part that "[u]pon execution of this *Agreement*, **the PSC will provide Participating Counsel[] with access to the Common Benefit Work Product** defined in the Court's CMO 7 and 7(A)…including access to…as deemed appropriate by the PSC, expert witness work product." Ex. C, ¶ 10 (emphasis added). Co-Lead Counsel breached the Participation Agreement when Ms. O'Dell

8

refused to facilitate undersigned counsel's and Ferraro Law's access to two critical experts. Rather than act as a leader with the aim of facilitating the MDL to the benefit of all Plaintiffs, Ms. O'Dell indicated she would block Ferraro Law from accessing those experts if Ferraro Law sought to contact them independently. *See* Ex. B, Jagolinzer Dec., ¶¶ 8-14.

In addition to being unreasonable and unjustified, Ms. O'Dell's conduct also runs counter to the principles supporting common benefit fee assessments in MDLs like this one. Common benefit fee assessments are generally based on the common-benefit doctrine, which "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *In re Gen. Motors Ignition Switch Litig.*, 477 F. Supp. 3d 170, 179 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Here, Ferraro Law did not successfully negotiate settlements with the J&J Defendants after receiving any Common Benefit Work Product prepared at Lead Counsel's expense—quite the opposite. Throughout the course of its representations, Ferraro Law worked independently from Lead Counsel. *See* Ex. B, Jagolinzer Dec., ¶¶ 4-5, 7. On the one occasion when Ferraro Law sought to avail itself of the benefits of its status as Participating Counsel under the Participation Agreement, Co-Lead Counsel Ms. O'Dell unjustifiably shirked her obligation to work for the common benefit and denied Ferraro Law's request. *See id.*, ¶¶ 8-14.

Ms. O'Dell's conduct was also not consistent with her role as Co-Lead Counsel in this MDL—a role for which she and Beasley Allen were selected with the expectation that they would work collaboratively with other Plaintiffs' counsel to conduct this litigation for the common benefit of all Plaintiffs.  When Ms. O'Dell told undersigned counsel that she would not connect him and Ferraro Law with the requested experts, Ms. O'Dell did so completely unilaterally, without conferring with her Co-Lead Counsel.  To the extent Ms. O'Dell now claims (after-the-fact) that she was concerned about Ferraro Law interacting with the experts, that claim lacks merit.[3]  Ms. O'Dell is (and was) aware that Ferraro Law has extensive experience navigating issues related to admitting the opinions of experts under Florida law.  *See, e.g.*, *Castillo v. E.I. DuPont De NeMours & Co., Inc.*, 854 So.2d 1264 (Fla. 2003) (pertaining to admissibility of expert testimony in Florida courts under the *Frye* standard); *see also DeLisle v. Crane Co.*, 258 So.3d 1219 (Fla. 2018) (analyzing both the *Frye* and *Daubert* standards, and reaffirming the *Frye* standard as the standard governing expert admissibility under Florida law).  As such, any concerns Ms. O'Dell may have had about Ferraro Law's ability to manage expert witness discovery in its cases against the J&J Defendants were unfounded.

---

[3] When undersigned counsel and Lead Counsel met and conferred before Ferraro Law filed this Motion, Ms. O'Dell offered unfounded and weak *post hoc* rationalizations for her unilateral refusal to provide access to one expert, Dr. Ghassan Saed.  Ms. O'Dell did not attempt to justify her actions with respect to Laura Plunkett (the other expert Ferraro Law sought access to).

Even giving the concerns Ms. O'Dell may have had credence, Ms. O'Dell could have taken any number of actions in her leadership capacity short of completely denying Ferraro Law access to the experts. For example, Ms. O'Dell could have asked that she or her Co-Lead Counsel join any conferences Ferraro Law scheduled with each expert. Ms. O'Dell also could have requested that she or her Co-Lead Counsel be involved with the preparation of either expert witness for deposition as part of discovery in Ferraro Law's cases (to the extent Ferraro Law may have sought to disclose them as testifying experts). Ferraro Law would have obliged either of those requests, and certainly would have been open to collaborating with Ms. O'Dell and other Lead Counsel to the common benefit of its clients and all Plaintiffs with claims against the J&J Defendants.

However, Ms. O'Dell never considered, let alone offered, any such collaborative alternatives. Instead, Ms. O'Dell immediately and unequivocally denied Ferraro Law access to the requested experts altogether. Any justification Ms. O'Dell may now offer for her conduct is of no moment. Regardless of how it is characterized, Ms. O'Dell's refusal to act in her capacity as Co-Lead Counsel to facilitate Ferraro Law's representation of its clients was not becoming of a leader

seeking a share of all amounts other counsel recover as compensation for her work in this MDL.[4]

The common-benefit doctrine is generally employed to prevent "free-riders" and to incentivize attorneys to serve as lead counsel in complex MDLs. Requiring any portion of Ferraro Law's clients' hard-earned recoveries to be added to the common benefit fund for a potential future award to Lead Counsel under these circumstances would serve only to allow Lead Counsel to potentially "free-ride" on Ferraro Law's efforts. As Ms. O'Dell's colleagues at Beasley Allen argued in a recent filing in the *In Re Roundup Products Liability Litigation*, counsel like Ferraro Law are not unjustly enriched at Lead Counsel's expense where they "have prosecuted their own cases, without the assistance of MDL Leadership, through the development of experts and discovery and incurring their own risks and expenses." *See* Opposition to Plaintiffs' Co-Lead Counsel's Motion to Supplement Pre-Trial Order 12: Common Benefit Fund Order to Establish an 8% Hold-back Percentage, filed Feb. 4, 2021, at pp. 3-4, attached hereto as **Exhibit D.**

Like Beasley Allen in the pending Roundup MDL, Ferraro Law has received no assistance or support from Lead Counsel in the prosecution of its cases to-date against the J&J Defendants, and therefore, Ferraro Law's clients should not be

---

[4] Whether common benefit fee assessments should be held back from other Plaintiffs' counsels' attorneys' fees in this MDL is a matter Ferraro Law leaves to those counsel to argue.

required to contribute any portion of their recoveries to the common benefit fund. The Court should not countenance Lead Counsel's unacceptable and un-cooperative behavior toward Ferraro Law, and instead, should grant this Motion and enter an Order exempting Ferraro Law's clients' recoveries (obtained to-date and in the future) from any common benefit fee assessment.

## C. IN THE ALTERNATIVE, THE COURT SHOULD COMPEL THE J&J DEFENDANTS TO WITHHOLD 8%, RATHER THAN 12%, OF THE SETTLEMENT PROCEEDS AS THE COMMON BENEFIT FEE ASSESSMENT.[5]

To the extent the Court determines that the settlements Ferraro Law negotiated with the J&J Defendants should be subject to assessment pursuant to CMO No. 7(A) and the Participation Agreement, the Court should nevertheless compel the J&J Defendants to withhold only 8% of those proceeds, rather than the 12% the J&J Defendants have withheld to date. Under the Participation Agreement, Ferraro Law qualifies for the "Early Participation" assessment amount. The Participation Agreement Ferraro Law executed defines "Early Participation" as requiring "the [executing] attorney [to] enter into th[e] [*Participation*] *Agreement* within 45 days of the time of the entry of CMO 7(A) or if no case is already pending in the MDL at the time of the entry of CMO 7(A), within 45 days of the first case of the attorney

---

[5] This argument is submitted without prejudice to Ferraro Law's right to oppose any future motion for attorneys' fees Lead Counsel may file in this MDL. Ferraro Law reserves argument on the issue of whether Lead Counsel (including Ms. O'Dell and Beasley Allen) should receive any portion of the common benefit fund as compensation for their work in this MDL for a later date.

13

being docketed in the MDL or any other jurisdiction." *See* Participation Agreement, Ex. C, Section B, ¶ 6. The Participation Agreement goes on to define the "Early Participation assessment" as "8% (6% for fees and 2% for expenses) of the Gross Monetary Recovery." *Id.* CMO No. 7(A) was entered on September 17, 2020. In turn, Ferraro Law executed its Participation Agreement on or about September 21, 2020, well within 45 days of the entry of CMO No. 7(A). As such, any common benefit fee assessment applied to the settlements Ferraro Law negotiated with the J&J Defendants should be limited to a total of 8%, not 12%, of those settlement amounts.

In yet another example of Lead Counsel's disregard for their obligations under CMO No. 7(A) and the Participation Agreement, Lead Counsel has yet to respond to the J&J Defendants' counsel regarding whether the J&J Defendants must withhold any funds from the proceeds of its settlements with Ferraro Law's clients, and if so, what percentage of those proceeds the J&J Defendants should withhold. *See* CMO No. 7(A), ¶ 29. Relatedly, Ferraro Law understands that because of the stay entered in connection with *In re: LTL Management LLC*, Case No. 21-30589, pending in the U.S. Bankruptcy Court for the District of New Jersey, the J&J Defendants may currently be unable to fund the remaining settlement amounts owed to Ferraro Law and its clients. Ferraro Law attempted to resolve this dispute with Lead Counsel before the bankruptcy stay was imposed, and while doing so, made

clear it sought a resolution before the imposition of the bankruptcy stay. Co-Lead Counsel Ms. O'Dell's failure to respond to requests regarding the rate of hold-back, coupled with the other unacceptable behavior described herein, has further prejudiced Ferraro Law and its clients because now it is unclear when—if ever—their settlements will be fully funded. This conduct, too, is not what is expected of lead counsel in an MDL. As a potential remedy, Ferraro Law respectfully requests that the Court consider whether Beasley Allen should be responsible for remitting the additional 4% of the settlement proceeds the J&J Defendants held back in light of the pending bankruptcy stay. That issue notwithstanding, should the Court otherwise decide the settlements Ferraro Law negotiated with the J&J Defendants should be subject to a common benefit fee assessment, Ferraro Law respectfully requests that the Court order the J&J Defendants to hold back 8%, rather than 12%, of those proceeds.

## CONCLUSION

WHEREFORE, Ferraro Law respectfully requests that the Court grant its motion and enter an Order: (1) exempting its clients' settlements and recoveries to-date and in the future from any common benefit fee assessment under CMO No. 7(A) and the Participation Agreement; or, alternatively; (2) limiting any such common benefit fee assessment to 8% of the Gross Monetary Recovery, rather than

12% of the Gross Monetary Recovery; and (3) granting such other relief as the Court deems just and proper under the circumstances.

Dated: December 10, 2021

Respectfully submitted,

s/ *David A. Jagolinzer*
David A. Jagolinzer
Fla. Bar No. 181153
daj@ferrarolaw.com
James L. Ferraro, Jr.
Fla. Bar No. 107494
jjr@ferrarolaw.com
Angelica L. Novick
Fla. Bar No. 105069
aln@ferrarolaw.com
THE FERRARO LAW FIRM, P.A.
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Tel.: 305.375.0111

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record. Consistent with Rule 7.1(g) of the Local Rules of the United States District Court for the District of New Jersey, Ferraro Law will forward a file-stamped courtesy copy of this filing to the Court.

s/ *David A. Jagolinzer*
David A. Jagolinzer