UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>*THIS DOCUMENT RELATES TO*:<br><br>**THE FERRARO LAW FIRM, P.A.'S MOTIONS FOR RELIEF FROM COMMON BENEFIT FEE ASSESSMENTS (ECF DOC. NOS. 26550 AND 26551)** | **MDL NO. 16-2738 (FLW) (LHG)** |

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO THE MOTIONS FOR RELIEF FROM CMO 7(A) BY THE FERRARO LAW FIRM, P.A.**

**I.   INTRODUCTION**

The Plaintiffs' Steering Committee (hereinafter "PSC") submits this response in opposition to the Motions (ECF Doc. Nos. 26550 and 26551(the "Motions"))[1] filed by The Ferraro Law Firm, P.A. (hereinafter "Ferraro") that seek an exemption from this Court's Case Management Order 7(A) ("CMO 7(A)"), which provides for an escrowed hold back of a percentage of settlement money to

---

[1] The Ferraro Law Firm, P.A. filed the same memorandum of law in support of two separate motions. The PSC submits this single memorandum of law in opposition to both motions.

be used for a possible future common benefit fee and cost award by this Court.[2] The Motions are without foundation. Indeed, Ferraro admits it is a signatory to the Participation Agreement that was made a part of CMO 7(A), thereby making the law firm subject to the Order. *See* Ferraro Memo. at 3. Further, Ferraro admits that of the cases for which it seeks to avoid the common benefit holdback, all but two are MDL cases. *See* Declaration of David A. Jagolinzer ("Jagolinzer Decl.") at 2-3.[3] It is represented that one other case at issue has been or was pending in state court in Florida and another is an unfiled case. *Id.* Clearly, each of the 22 cases pending in the MDL are subject to this Court's jurisdiction and CMO 7(A). Further, the two non-MDL cases became subject to CMO 7(A) upon the Ferraro firm's execution of the Participation Agreement that provides that all of a participating firm's cases are subject to the holdback. Accordingly, the Motions for exemption from CMO (7A) should be denied.

## II.   FACTUAL BACKGROUND

On May 29, 2020, the PSC filed a Motion and Notice of Motion for Entry of Case Management Order 7(A) Establishing the Talc (MDL 2738) Common Benefit Fee and Expense Accounts to Compensate and Reimburse Attorneys for Services

---

[2] The Ferraro Law Firm, P.A.'s Memorandum of Law in Support of Motion for Relief from Common Benefit Fee Assessments is referred to herein as "Ferraro Memo. at __."
[3] The Ferraro Law Firm, P.A. filed the same Declaration of David A. Jagolinzer in support of its motions. *See* Doc. Nos. 26550-2 and 26551-2.

Performed and Expenses Incurred for Case Administration and the Common Benefit (Doc. No. 13487) along with a proposed Participation Agreement (Doc. No. 13487-3) (collectively, the "Assessment Motion"). All counsel of record, including Ferraro, were served with a copy of the Assessment Motion via the Court's ECF system. A single brief was filed in opposition to the Assessment Motion, *see* Doc. No. 13689, in response to which the PSC filed a Reply. *See* Doc. No. 13756.[4] Ferraro, which had cases pending in the MDL when the Assessment Motion was filed, did not oppose the entry of CMO 7(A).

On September 17, 2020, the Court approved and entered CMO 7(A). *See* Doc No. 14741. CMO 7(A) provides that a law firm or counsel with cases in the MDL at that time of the entry of the Order and who executed the Participation Agreement within 45 days of the entry of the Order would be deemed an "Early Participant", meaning that the holdback for such a law firm or counsel would be 8%, consisting of 6% for fees and 2% for costs. *See* CMO 7(A) at 13.

CMO 7(A) further provided that for counsel who filed their first cases after entry of CMO 7(A), they would have 45 days from the filing of their first case in

---

[4] In its Reply, the PSC made clear that any holdback of money against a resolved case is to be held in escrow pending a further order of the Court upon the filing of a fee petition by the common benefit counsel who have performed common benefit work in this MDL. *See* Reply at 3. The PSC argued that a holdback assures money is held under the supervision of the Court on the front end, in escrow, instead of money being disbursed and later there is a determination that the money should be awarded for common benefit purposes, but is not easily capable of being recovered after disbursement.

the MDL to execute the Participation Agreement to be considered an "Early Participant." *Id*. Counsel who did not act in accordance with the requirements of CMO 7(A) to be an "Early Participant", but that later became bound by CMO 7(A), were deemed "Late Participants" and the Order provides that the cases of such counsel would be assessed a 12% holdback, consisting of 10% for fees and 2% for costs. *See* CMO 7(A) at 14.[5]

In its Motion, the Ferraro firm states that is has settled 24 cases, 22 of which are in the MDL, one of which is in state court in Florida, and one of which is an unfiled case. It cannot be denied that of the 24 Ferraro cases, 22 have directly benefited from the services of the PSC as well as the accommodations of this Court. The other two cases that settled also undoubtedly benefited from the work and expenses incurred in the MDL as well as by the settlement of the 22 MDL cases. Regardless, pursuant to the terms of CMO 7(A) and the Participation Agreement that the Ferraro firm executed, all of these cases are subject to the MDL holdback. However, Ferraro seeks an exemption from the holdback, arguing the following:

  1. The PSC did not "cooperate" with Ferraro with regard to providing MDL work product, particularly relating to access to MDL experts Dr.

---

[5] Ferraro executed the Participation Agreement on September 21, 2020, within 45 days of entry of CMO 7(A) and, accordingly, its cases are subject to the "Early Participant" holdback. In the Motion, the Ferraro firm seems to think its cases are subject to a 12% holdback. The PSC does not understand Ferraro's position that its cases are subject to a 12% holdback since it is an Early Participant.

4

>    Ghassan Saed and Dr. Laura Plunkett;
>
> 2. Settlement of the Ferraro cases was accomplished without administration of Lead Counsel, without the approval of Lead Counsel, and without Lead Counsel having any control of the cases or the settlement; and
>
> 3. Settlement of the Ferraro cases did not include any discussions with the J&J Defendants about the common benefit fee, or any duties or obligations pertaining to the MDL or pending state court actions.

Relating to point number 1, Co-Lead Counsel Leigh O'Dell spoke with Mr. Jagolinzer (an attorney with Ferraro) on December 18, 2020, about PSC assistance for the Ferraro cases. *See* Declaration of Leigh O'Dell, attached as Exhibit A. During this conversation Mr. Jagolinzer requested that Ms. O'Dell facilitate the availability and/or provision of testimony of Drs. Saed and Plunkett, MDL experts, as well as Dr. John Godleski (not yet an MDL case-specific pathologist), in the firm's pending *state* court trials. Ms. O'Dell explained that it was the PSC's intent to preserve the testimony of Drs. Saed and Plunkett in trial ready videotape depositions so that the testimony would be available to be utilized by those with access to MDL work product. Co-Lead Counsel have taken the same position with other state court counsel who sought to have MDL experts testify in state court cases. As to Points 2 and 3, nowhere is it stated that settlements must be negotiated and/or administered by the PSC in order to be subject to the holdback imposed by CMO 7(A). Nor is there a requirement that Defendants consider common benefit fee assessments as part of the settlement discussions.

5

For the reasons set forth below, the PSC respectfully requests that this Court deny Ferraro's Motion for an exemption to CMO 7(A). The Court should not engage in a case-by-case determination to decide whether to apply an assessment in the context of a prolix docket and complex MDL litigation. It would defeat the efficiencies underlying the purposes of MDL litigation to require a Court to evaluate individual counsel's uses of MDL discovery and work product when making fee awards. Here, what is at issue is not even a request for a fee and cost award, but merely a request that funds be escrowed until a later date.

### III. HISTORY OF THE MDL

On October 4, 2016, the Judicial Panel on Multi-District Litigation directed the transfer of federal Talcum Powder cases to the United States District Court for the District of New Jersey for coordinated and/or consolidated pretrial proceedings under MDL Docket No. 2738. As of October 16, 2021, approximately 35,000 civil actions involving allegations of Talcum Powder use had been transferred to MDL No. 2738.

Managing this docket with the view towards readying the cases for trial and prompt remand presented an enormous undertaking. To achieve this goal, the Court required the completion of a series of steps towards the scheduling of bellwether trials. The Court appointed Plaintiffs' Co-Lead Counsel, Liaison Counsel and both an Executive Committee and Steering Committee to steer this

litigation. The Court also appointed a Special Master to handle discovery disputes and other issues in the case. The PSC was charged with assisting the Court, the Special Master and individual plaintiffs' counsel in conducting coordinated pretrial proceedings and conducting discovery of general applicability on behalf of the plaintiffs.

The PSC held frequent "all-counsel" calls and issued numerous "all counsel" emails to keep the hundreds of attorneys representing plaintiffs in this litigation apprised of the case events. The PSC also discharged this Court-imposed mandate by engaging in activities that included, but have not been limited to, the following:

- Actively participated in numerous Court conferences, both those held live in Court, those held by teleconference, and upon the occurrence of COVID-19, by video zoom;

- Managed the production of over 750,000 documents by Defendants, including the review, analysis, culling and abstraction of the documents for use with experts, fact witnesses and at deposition;

- Took more than 20 fact depositions, including multi-day 30(b)(6) depositions;

- Retained, worked with and proffered twenty-five extremely qualified expert witnesses, many of whose general causation testimony will be preserved and made available in the trial package for use by all of the parties that have signed the Participation Agreement;[6]

- Briefed, presented testimony, and engaged in post-argument briefing

---

[6] It is noteworthy, that the Ferraro Motion focuses on but two of the 25 expert witnesses that the PSC proffered in this litigation. The existence of these many other expert witnesses undoubtedly presented a threat to the J&J defendants that supported the ability of the Ferraro firm to settle its cases.

> of extensive *Daubert* motions relating to the experts;
>
> - Participated in numerous Special Master Conferences, including those in person, by telephone and by video conferencing;
>
> - Developed the general causation and general liability case for the Talcum Powder litigants by issuing written discovery, resolving discovery disputes (especially over documents that J&J improperly asserted various privileges); and
>
> - Undertook a comprehensive analysis of the relevant medical and scientific literature involving hundreds of articles and integrating them into the general causation case against the J&J defendants.

The PSC has been working on the amalgam of this material into a "trial package" that would be made available to all the parties that signed the Participation Agreement. The discovery conducted by the PSC provides a rich texture of interwoven lines of evidence showing that J&J knew that its Johnson's Baby Powder and Shower to Shower talc-based body powders can cause ovarian cancer. The evidence also shows that Defendant deliberately failed to disclose these risks because such a disclosure would adversely affect its profits and corporate image.

Recognizing the scope and complexity of the work done by the PSC on behalf of all plaintiffs, this Court developed a procedure for the judicial award of MDL common benefit fees. In CMO 7, entered on August 9, 2017, the Court created a mechanism to provide for attorneys performing common benefit work and incurring common benefit expenses to record such work and expenses so that

at an appropriate time, they could seek reimbursement of costs and award of attorneys' fees for providing case-wide services to this MDL Court and to the litigants. CMO 7 provided for the reporting of time and expenses to an independent auditor appointed by the Court. Later, CMO 7(A) provided for the sequestration of a percentage of payments made by defendants in settlements or satisfaction of judgments/verdicts into the separate fee and cost escrow accounts. *See* CMO 7(A) at 16-20.

As noted above, there was only a single objection to the Assessment Motion, jointly filed by three law firms. After entry of CMO 7(A), 127 law firms executed a Participation Agreement agreeing to be bound by the Order and the holdback mandated by the Order. Ferraro is one of those firms.

## IV. <u>ARGUMENT</u>

Ferraro's challenge to this Court's authority to assess cases subject to this coordinated proceeding is unavailing. Ferraro argues this Court cannot impose an assessment on its cases because its settlements were reached with J&J due solely to its own work, without regard for any work performed by the PSC. Its argument is premised only on its alleged inability to utilize two experts as live witnesses in a state court trial and for an unfiled case without regard to any other issues or matters that would support the assessment. Ferraro attempts to create secondary litigation over what work the PSC performed, the value PSC work may have had not only in

9

the eyes of Ferraro, but in the eyes of J&J (*i.e.,* that PSC work product created a "threat" to J&J, causing it to settle with Ferraro), and ignores that the PSC had made available to Ferraro factual information that inured to Ferraro's benefit.[7] Certainly, J&J knew what evidence the PSC compiled, and knew that such evidence would have been available to and been used by Ferraro if J&J did not settle the Ferraro cases. It is for just such reasons that the United States Supreme Court long ago held that "a second, unnecessary litigation," about entitlement to fees should not occur. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The governing principles of common benefit fee awards derived from long-standing jurisprudence, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881) and refined in, *inter alia*, *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and approved and implemented in the MDL context, in *inter alia*, *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 772-75 (11th Cir. 1991) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009); *In re*

---

[7] Moreover, had Ferraro's cases proceeded to trial, preservation depositions of MDL experts would have also been available for use.

10

*Genetically Modified Rice Litig.*, 835 F.3d 822 (8th Cir. 2016).

An MDL court, like every trial court,[8] has managerial authority to oversee the litigation and the litigants. 28 U.S.C. § 1407; MANUAL FOR COMPLEX LITIGATION, 4th § 10.1 (2004); *Fla. Everglades*, 549 F.2d at 1012; *Diet Drugs*, 582 F.3d at 524; *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014) ("it was reasonable for the court to exercise its managerial power to ensure that Lead Counsel and the other common benefit attorneys were fully compensated for work that assisted other parties"). The inherent docket management powers of the court include the power to appoint lead counsel to manage complex multi-district litigation and the power to assure compensation for such services. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1997); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522 (D. Nev. 1987); *Orthopedic Bone Screw*, 1996 WL 900349 (E.D. Pa. Jun.17, 1996); *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606-07 (1st Cir. 1992); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2nd Cir. 1992); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985)*, rev'd in part on other grounds*, 818 F.2d 226 (2nd Cir. 1987). That "power is illusory," however, "if it is dependent upon lead counsel's performing the duties desired of them for no

---

[8] *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

additional compensation." *Fla. Everglades*, 549 F.2d at 1016.

Ferraro's argument that it can avoid its obligation to compensate the PSC by claiming it did not physically receive or use the PSC work product is incorrect. The PSC conferred a public benefit for the Court, Ferraro, and the other litigants by way of docket administration and managerial tasks. More importantly, litigation of the general causation question by the PSC deserves consideration, whether used by Ferraro or not, because it was that MDL work and work product that sustained talcum powder-ovarian cancer litigation nationwide. That individual counsel might choose to ignore singular aspects of the many services performed by the PSC is insufficient grounds to avoid the holdback altogether. Entertaining Ferraro's myopic argument undermines the Court's power to secure management services in complex litigation, is at odds with the principle of equitable fee-shifting announced in *Boeing v. Van Gemert*, 444 U.S. 472, 479 (1980), and would require the district court to undertake state-of-mind determinations for hundreds of individual lawyers in violation of the Supreme Court's admonition that fee award proceedings should not, in their nature, engender a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 427 (1983). *See also In re Diet Drugs*, PTO No. 1492 (E.D. Pa. Nov. 8, 2000) ("The court does not have the time or capacity to make individualized factual determinations as to whether an individual plaintiff actually used any common benefit material or whether the availability of that material actually

influenced AHP's decision to settle a case. To engage in such a process would frustrate the goals of consolidated proceedings-the achievement of efficiency and economy.")

Ferraro's arguments are similar to those of certain objectors in *Diet Drugs*, who contested paying common benefit fees because they opted out of the class before a global settlement was reached and claimed they did not use the common benefit work product of the plaintiffs' steering committee. In rejecting those arguments, the Third Circuit recognized that MDL leadership counsel secured "favorable discovery and evidentiary rulings that applied on a litigation-wide basis … [in] every MDL case against" defendant. *Diet Drugs*, 582 F.3d at 548. The Third Circuit held that defendant knew the plaintiffs had access to MDL common discovery, so all plaintiffs benefited in defendant's "loss of bargaining power due to the [leadership's] efforts." *Id*. Thus, the court held, "those plaintiffs stood a better chance of recovery from [the defendant] than they would have absent the [leadership's] efforts." *Id*.

The same is true here. Had the PSC not litigated the question of J&J's liability and the causal connection between the use of talcum powder and ovarian cancer, it is unlikely that Ferraro would have resolved its cases.

As to Ferraro's contention that it should be relieved from its holdback obligation because it was not provided with access to experts Dr. Saed and Dr.

Plunkett, Ferraro misconstrues the terms of the Participation Agreement. CMO 7(A) does not obligate the PSC to provide access to <u>all</u> expert evidence or provide experts for in-person testimony in *state* court trials. To the contrary, the Participation Agreement makes clear that the PSC retains discretion as to the provision of expert evidence:

> 10. Upon execution of this Agreement, the PSC will provide Participating Counsel, with access to the Common Benefit Work Product defined in the Court's CMO 7 and 7(A), and any amendments to which this Exhibit "A" is attached, summarizing of the documents in the depository, access to all deposition transcripts and summaries, deposition cuts for the purpose of trial, medical literature library, legal briefing and research, and, *as deemed appropriate by the PSC, expert witness work product*. Participating Counsel agree that all cases in which Participating Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed in state and/or federal court, are subject to the terms of this Agreement. (emphasis added)

This point was made clear to Mr. Jagolinzer. The PSC did not deem it appropriate to subject certain experts to live trial examination as requested by Ferraro but did inform Ferraro that testimony of the MDL general causation experts would be preserved and available for state court trials.

To the extent Ferraro claims it should be relieved from the holdback because J&J did not discuss the holdback during negotiations is similarly unavailing. CMO 7(A) imposes on J&J only an obligation to pay into the fee and cost escrow accounts a percentage of the case settlements. J&J had no duty to alert counsel

that a portion of any settlement would be held back in common benefit escrow accounts. Indeed, with Ferraro having executed the Participation Agreement, it knew or should have known of the holdback obligation and could have taken that in account in determining the settlement value of its cases. In fact, no one knows whether such an adjustment was made, which is all the more the reason why the Supreme Court held in *Hensley*, that there should not be secondary litigation over fees. *See Hensley*, 461 U.S. at 427.

It also bears noting that the primary issue raised by Ferraro does not relate to the net recovery that the settling plaintiffs or clients will receive, but to Ferraro bearing a reduction in its contingent fee recovery by application of the holdback percentage. As the Court will recall, the holdback fee percentage is deducted from the contingent fee percentage of the private counsel and does not increase the amount of fee that a plaintiff/client bears. The holdback cost percentage is deducted from the plaintiff's recovery just as individual costs are deducted from a plaintiff's recovery, but spreads the common benefit costs so that the plaintiff does not bear an undue burden.

The manner of calculation requires counsel to bear the burden of the reduction for fees to compensate for the common benefit work performed by MDL counsel that would otherwise have to had been done by the participating firm.

To the extent Ferraro attempts to "poison the well" by including in its

15

moving papers a copy of an objection to an assessment award filed by the Beasley Allen firm in the *Roundup* litigation, that argument is also without merit. There are key factual distinctions between *Roundup* and the present matter, including that: in *Roundup*, Beasley Allen did *not* execute a Participation Agreement; the cases in question were not pending in the *Roundup* MDL; and the cases in question were not subject to the *Roundup* MDL's jurisdiction.[9] To the contrary, here, Ferraro executed the Participation agreement, 22 of its 24 cases are pending in the MDL and subject to the MDL's jurisdiction and, by reason of the Participation agreement, Ferraro made all of its cases subject to the holdback, regardless of whether a specific case was pending in the MDL, in state court, or not filed.

Finally, although not argued by Ferraro, prior to filing its motion, Ferraro asked the PSC to waive the holdback against its settlements, arguing that a group of cases represented by attorney Mark Lanier are not subject to the holdback and that Ferraro should be accorded the same treatment. However, the only Lanier cases exempted from CMO 7(A) were those in the *Ingham* consolidated trial (22 plaintiffs).[10] This exemption was disclosed to the Court in the PSC's Assessment

---

[9] *See* Order Granting in Part and Denying in Part Motion to Establish a Holdback Percentage, Dkt. No. 12394, *In re: RoundUp Prod. Liab. Litig.*, MDL No. 2741 (N.D. Ca. June 21, 2021) (sustaining objections to the application of the common benefit holdback percentage to cases *not* filed in the MDL and represented by firms who *had not signed a participation agreement*).

[10] The Lanier firm represents numerous plaintiffs. Only the *Ingham* plaintiffs (22) are exempt from the holdback. At the time the PSC filed its Assessment Motion, the *Ingham* case had already been tried to judgment and was on appeal. The remainder of the Lanier cases are subject to the holdback.

16

Motion and was considered by the Court prior to entry of CMO 7(A). Ferraro did not object to the exemption of the group of Lanier cases, nor did Ferraro specifically identify cases it wanted exempted prior to executing the Participation Agreement. In fact, Ferraro had no basis to ask for an exemption prior to executing the Participation Agreement.

## V.  CONCLUSION

For the reasons outlined above, Ferraro's motions should be denied.

Dated:    January 4, 2022           Respectfully submitted,

/s/ *P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
Leigh.odell@beasleyallen.com

/s/ *Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-783-6400
Fax: 202-416-6392
mparfitt@ashcraftlaw.com

***Plaintiffs' Co-Lead Counsel***

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*

18