# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*THIS DOCUMENT RELATES TO*:<br><br>**THE FERRARO LAW FIRM, P.A.'S MOTIONS FOR RELIEF FROM COMMON BENEFIT FEE ASSESSMENTS (ECF DOC. NOS. 26550 AND 26551)** | MDL NO. 16-2738 (FLW) (LHG) |

**PLAINTIFFS' STEERING COMMITTEE'S SUR-REPLY
TO THE REPLY RELATING TO THE MOTIONS FOR RELIEF FROM
CMO 7(A) BY THE FERRARO LAW FIRM, P.A.**

**I.   INTRODUCTION**

The Plaintiffs' Steering Committee (hereinafter, "PSC") hereby files this sur-reply in further opposition to the motions filed by the Ferraro Law Firm, P.A. ("Ferraro") seeking an exemption from the common benefit assessment imposed on its cases pursuant to CMO 7(A) (ECF Doc. Nos. 26550 and 26551) and to

1

specifically respond to the reply[1] filed by Ferraro wherein Ferraro attacks the PSC[2], mischaracterizes the record, misconstrues the terms of CMO 7(A), and demonstrates a complete misunderstanding of the law that governs common benefit assessment orders.

II.   ARGUMENT

   A.   **Ferraro's Argument That It Is Entitled to an Exemption Because the PSC Allegedly Failed to Inform J&J That the Ferraro Cases Are Subject to An Assessment and What the Assessment Percentage Should Be, Is without Merit and Specious**

Ferraro argues that it is entitled to an exemption from the assessment imposed by CMO 7(A) (to which he agreed to by signing the Participation Agreement) because the PSC breached a substantive requirement of CMO 7(A) by failing to inform J&J of its holdback, as though that alleged failure results in a waiver of the right to assess cases and relieves J&J of paying the holdback.

---

[1] Ferraro filed two replies in support of its request for an exemption, though they appear to be the same, and footnote 2 in each states that only one reply is being filed to support the motions. Reply at 2, nt. 2 (ECF Doc. 26559 and ECF Doc. 26560). Accordingly, the PSC files this single sur-reply brief.

[2] The majority of Ferraro's ad hominem attacks are directed at Leigh O'Dell, Co-Lead counsel in this case. Ms. O'Dell hardly knows how to respond to these attacks, which are unwarranted and seem almost to be of a personal issue. As the Court is aware from the approximate 5 + years that Ms. O'Dell has been practicing before it in this case, Ms. O'Dell has conducted herself with the utmost respect of the Court, the parties, the witnesses, the special master, and anybody else with whom she has had contact in this litigation. Ms. O'Dell believes it is unnecessary to engage in any further discussion about the personal attacks, but certainly, if the Court wishes to hear more on this aspect of the motion, she will make herself available at the Court's convenience.

The argument is specious. First, CMO 7(A) is a Court Order that was filed on the docket of the case, and obviously J&J was aware of it and the obligations outlined in the order. As such, when J&J determined to negotiate a settlement of certain cases represented by Ferraro, it knew, if for no other reason than that it was served through the ECF system with a copy of CMO 7(A) and was on notice that settled cases could be subject to the holdback.

Indeed, CMO 7(A) itself provided that all cases within this Court's jurisdiction are subject to the assessment. J&J knew that 22 of the Ferraro cases it was settling (per Ferraro's representations in its Motion) were pending in the MDL. In fact, all that was at issue was J&J's need to know if the holdback was 8% or 12%, based on whether Ferraro was an "Early Participant" or a "Late Participant." That was clarified for J&J, and in the record of this Motion, the PSC has confirmed that the holdback percentage is 8%. Further, even in the Ferraro reply, its conclusion asks that the holdback be limited to 8%.[3] There really is no dispute by the PSC that the holdback should be 8% and J&J should be aware that the holdback is 8% at this time, particularly after the instant motion practice.

**B.    Ferraro's Argument That the Conduct of Leigh O'Dell and the PSC Prejudiced Its Ability to Pursue Cases and Prevented J&J Defendants from Fully Funding the Negotiated Settlements, Is without Merit**

---

[3] Prior to taking this position, Ferraro had objected to a holdback of any amount, seeking a complete exemption from any assessment holdback.

3

What is at issue here is not a question of "fully funding the negotiated settlements." Assuming that Ferraro and J&J have fully consummated a settlement of the cases at issue, J&J can (perhaps subject now to the proceedings in bankruptcy[4]) can fund the settlement of those cases, subject to allocating the settlement money between Ferraro and the Common Benefit Fee and Cost escrow accounts. Nothing the PSC did prevents J&J from funding the settlements with 92% to be paid to Ferraro (also subject perhaps to liens) and 8% paid to the common benefit escrow accounts pending further order of the Court.

C. **Ferraro's Argument That CMO 7(A) and the Assessment Is Not Applicable to Him Because Provisions of CMO 7(A) Were Not Satisfied, Is without Merit**

In what appears to be an act of desperation, Ferraro argues that its cases are not subject to the assessment because a case can be subject to the assessment only if the cases fall within each of 4 different categories, and that here, all 4 of the matters do not apply. Its emphasis is on Section II of CMO 7(A) that provides as follows:

> b. All cases and/or claim settled pursuant to an MDL-supervised settlement agreement between the parties, which may include cases in any state court and claims that are not filed but participate in any MDL-supervised settlement agreement.

---

[4] At the moment, with the stay of all cases because of the bankruptcy proceedings (a stay to which the PSC has objected), it is a strawman argument to say that the PSC has prevented Ferraro from pursuing cases. Ferraro filed its Motion after the commencement of the bankruptcy and stay of proceedings, so what is presently preventing Ferraro from pursuing cases is not conduct of the PSC but the bankruptcy. There can be no valid allegation that Ferraro was denied an ability to "settle" other cases because of conduct of the PSC, where J&J determined to attempt to cease all litigation through its bankruptcy effort.

Ferraro's argument is that because there is no MDL-supervised settlement here, that no cases can be assessed as any assessment is dependent on the existence of an MDL-supervised settlement. Ferraro attempts to bolster the argument by stating that provisions a., b., c., and d. of Section II are interconnected by the use of the word "and", meaning that for a case to be subject to the assessment, each of the 4 provisions must apply to a case.

Obviously, the manner in which Ferraro is interpreting CMO 7(A) is incorrect. The intent Ferraro attributes to the provisions make no sense as effectively it would mean no case could be subject to a holdback unless the case was part of a court-supervised global settlement. However, cases settled outside of a court supervised-opt in global settlement that benefit from the work of a PSC are subject to assessments even if the case settles on its own. This is precisely what the Third Circuit held in *Diet Drugs* (cited in the PSC's opening opposition):

> Ferraro's arguments are similar to those of certain objectors in *Diet Drugs*, who contested paying common benefit fees because they opted out of the class before a global settlement was reached and claimed they did not use the common benefit work product of the plaintiffs' steering committee. In rejecting those arguments, the Third Circuit recognized that MDL leadership counsel secured "favorable discovery and evidentiary rulings that applied on a litigation-wide basis … [in] every MDL case against" defendant. *Diet Drugs*, 582 F.3d at 548. The Third Circuit held that defendant knew the plaintiffs had access to MDL common discovery, so all plaintiffs benefited in defendant's "loss of bargaining power due to the [leadership's] efforts." Id. Thus, the court held, "those plaintiffs stood a better chance of

5

> recovery from [the defendant] than they would have absent the [leadership's] efforts." *Id*.

PSC's Opposition, ECF Doc. 26558, at 13 (citing *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009)).

Ferraro's effort to tutor the Court in the meaning of the word "and" is simply wrong. There is no requirement that a case fit all aspects of the provisions before it can be assessed. The assessment is broadly inclusive to apply to all cases in the MDL, as well as to cases not in the MDL but agreeing to opt into a global settlement, cases subject to a Participation Agreement and cases where the attorney received benefit from the PSC work product. The assessment applies particularly to the cases where the attorney executes a Participation Agreement expanding the reach of the assessment to cases beyond those filed in the MDL to include cases filed in state court or not filed at all. At the expense of being redundant, as noted in the PSC's opening opposition:

> The governing principles of common benefit fee awards derived from long-standing jurisprudence, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881) and refined in, *inter alia, Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and approved and implemented in the MDL context, in *inter alia, In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 772-75 (11th Cir. 1991) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009); *In re Genetically Modified Rice Litig.*, 835 F.3d 822 (8th Cir. 2016).

> An MDL court, like every trial court,7F[8] has managerial authority to oversee the litigation and the litigants. 28 U.S.C. § 1407; MANUAL FOR COMPLEX LITIGATION, 4th § 10.1 (2004); *Fla. Everglades*, 549 F.2d at 1012; *Diet Drugs*, 582 F.3d at 524; *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014) ("it was reasonable for the court to exercise its managerial power to ensure that Lead Counsel and the other common benefit attorneys were fully compensated for work that assisted other parties"). The inherent docket management powers of the court include the power to appoint lead counsel to manage complex multi-district litigation and the power to assure compensation for such services. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1997); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522 (D. Nev. 1987); *Orthopedic Bone Screw*, 1996 WL 900349 (E.D. Pa. Jun.17, 1996); *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606-07 (1st Cir. 1992); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2nd Cir. 1992); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985), *rev'd in part on other grounds*, 818 F.2d 226 (2nd Cir. 1987). That "power is illusory," however, "if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation." *Fla. Everglades*, 549 F.2d at 1016.

PSC's Opposition, ECF Doc. 26558, at 10-12.

Ferraro's argument that the assessment must fail because he did not receive PSC work product is similarly wrong because provision (d) of the assessment order provides that a case is to be assessed where the case received, used or benefited from the Common Benefit Work Product. Regardless of whether Ferraro received or used Common Benefit Work product, *per se*, the word "benefited" is broadly interpreted by MDL courts. As noted above, in *Diet Drugs* Courts have held that the MDL Common Benefit Counsel provide benefits in more ways than just through providing

7

a trial package or expert evidence. Nevertheless, the PSC does not rest on it simply managing this MDL. As noted in the PSC's opening response, the PSC performed a wide variety of common benefit work, including doing among other activities, developing numerous experts (beyond just the two that Ferraro focuses on), defending and prevailing on *Daubert* motions on behalf of all cases in the MDL (including Ferraro's), depositions, review of thousands of documents, developing liability and possible punitive damages evidence, and the expenditure of millions of dollars in expenses etc. MDL Courts recognize these efforts warrant compensation to the common benefit counsel, and have refused to engage in side shows about the use of MDL work product and the benefits provided by a PSC when deciding entitlement to fee awards.[5]

### D. Ferraro's Argument that the PSC Somehow Has Waived Opposing its Motion is without Merit

The weakness of Ferraro's position is evidenced by the argument that the PSC somehow has failed to oppose the Motion because the PSC arguably did not address some of the arguments made, and hence this alleged failure to oppose constitutes a waiver and default by the PSC and that Ferraro should therefore prevail on the basis of a non-opposition to the motion.

---

[5] Also as noted in the PSC's opening opposition, what is at issue now is the holding of funds in escrow pending later proceedings, i.e., a fee petition for an award of fees and costs as the Court may determine.

Like the PSC noted in its opening opposition that it did not understand Ferraro's argument that the assessment it thought was being applied to its cases was 12% where it clearly was an "Early Participant" and hence only subject to an 8% assessment, the PSC does not understand this argument either. Obviously, Ferraro knows the PSC opposes the motion, and found it necessary to file a reply to the PSC's opposition. This shows that the motion is not unopposed. Further, the reply acknowledges that the PSC has argued Ferraro is wrong in thinking the assessment does not apply to its cases, so how it can argue in the same breath that the PSC does not oppose his motion is simply bewildering.

E. **Ferraro's Argument That It Generally Does Not Oppose the Idea of Assessments Is a Feigned Effort to Make It Appear That Ferraro Is Not Being Unreasonable, Where in Fact What Ferraro Seeks Is an Omnibus Exemption for All of Its Cases Even after Executing the Participation Agreement**

In what can only be characterized as an effort to mislead the Court to thinking that Ferraro is actually the "reasonable" party in this dispute, Ferraro says it does not oppose assessments, generally. But the rub here is that, in fact, Ferraro is opposing any assessment of any of his cases. In other words, Ferraro is asking for an omnibus exemption from the assessment not only for the 24 cases at issue in this motion, but also, for any cases he settles in the future regardless of him saying that generally, he does not oppose assessments. Ferraro is simply saying assessments are okay, just

not for their firm and not in this MDL. Such an argument is inconsistent with this Court's orders and the applicable jurisprudence and should be roundly rejected.

### F. Ferraro Waived its Ability to Challenge CMO 7(A)

Ferraro tries to minimize the fact that it did not object to the original motion for entry of CMO 7(A) when filed. Ferraro has no valid response to the PSC's argument in opposing the instant motion that the firm's failure to object to CMO 7(A) constituted a waiver. Frankly, what Ferraro's own pleadings suggest is that it was lying in wait looking to hedge its situation instead of taking a stand in a timely manner. Ferraro attached as Exhibit "C" to its reply a copy of a mesothelioma verdict it obtained in early 2020. The point seems to be that because he was able to obtain that verdict back in early 2020, it was capable of proceeding on its own (despite the differences in disease), did not need PSC work product and that the later settled 24 cases should not be subject to an assessment.

However, in that Ferraro had in hand a verdict back in early 2020, well before CMO 7(A) was entered, the firm could have filed an opposition to the entry of CMO 7(A) or sought some specific exception as did the Lanier Law Firm for the *Ingham* cases for which there was a verdict. The Motion to enter CMO 7(A) clearly revealed that the Lanier Law Firm was asking for an exception for the *Ingham* group of cases. As such, Ferraro did not oppose the entry of CMO 7(A) as it was transparent about that exception.

Ferraro could have taken timely action at that time to have asked for some type of exception. The firm knew at the time that the motion to enter CMO 7(A) was filed and that he had cases that were going to be subject to the assessment, yet the firm also apparently believed, based on the verdict he obtained in early 2020 that he was capable of going it alone. If that was its belief, the firm should have acted. Instead, Ferraro signed the Participation Agreement and then about a year later, surfaced to ask for an exemption of all of its cases. Ferraro's failure to object and its agreement to the Participation Agreement constitute a waiver of any objection to CMO 7(A).

### G. Ferraro's Argument That It Is Entitled to an Exemption Because It Did Not "Use" the MDL Work Product Ignores Well Settled Law

Ferraro argues that the PSC work product did not provide any leverage to help it settle cases. This argument is without merit. As the PSC has noted already, the U.S. Supreme Court has held that secondary litigation over what value, use, benefit or otherwise a PSC Work Product afforded a counsel should not occur. The Court here certainly can take judicial notice of all of the work the PSC and other common benefit members have performed in this litigation. That work and effort was noted in the PSC's opening opposition. Ferraro has no reasonable retort to this. And, if it felt that what the PSC did in this litigation was not of any value, it could have opposed the entry of CMO 7(A) and could have chosen not to sign the Participation

Agreement. It obviously knew what inventory of cases it had and could have attempted to secure an exemption from an assessment. It took no such action.

### H. Ferraro's Argument That Because There Was Some Alleged Ambiguity in the Percentage Holdback to Apply to Its Cases, That There Should Be No Holdback, Is Non-Sensical

Ferraro's last argument is because there was some alleged ambiguity about the percentage hold back against its cases and an alleged lack of knowledge by J&J about what percentage to hold back, that rises to a waiver of any and all hold back. This argument is also without merit. Any alleged issue about the percentage of holdback is easily cured. Simply, reference to the provisions of CMO 7(A) along with review of the date that Ferraro executed the Participation Agreement, resolves the ambiguity. CMO 7(A) provides that the holdback percentage is to be either 8% or 12%, depending on whether the case is an Early Participant or Late Participant case. The PSC's opposition to the motion confirms that Ferraro is an Early Participant and hence subject to the 8% holdback.

Even so, had 12% been inadvertently withheld, the remedy is not for there to be no holdback at all, but to correct the overage withheld and to release the excess so that only 8% in fact was paid into the escrow accounts. Of course, this presumes that J&J is able to pay anything to anyone at this time in light of the bankruptcy proceedings. But that aside, the PSC confirms the holdback as to Ferraro is 8%.

## III. **CONCLUSION**

For the reasons outlined above and those outlined in the Plaintiff Steering Committee's opposition, Ferraro's motions should be denied.

Dated: January 18, 2022				Respectfully submitted,

/s/ *P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: 334-269-2343
Fax: 334-954-7555
Leigh.odell@beasleyallen.com


/s/ *Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-783-6400
Fax: 202-416-6392
mparfitt@ashcraftlaw.com

***Plaintiffs' Co-Lead Counsel***

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
Tel: 732-747-9003
Fax: 732-747-9004
cplacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*