September 7, 2022

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Docket No. 3:16-md-2738-FLW-LHG

_____

IN RE:

JOHNSON & JOHNSON TALCUM          ORAL ARGUMENT ON
POWDER PRODUCTS MARKETING,        COMMON BENEFIT MOTION
SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION              VIA REMOTE ZOOM
                                   IDEOCONFERENCE

_____

              *     *     *     *

        WEDNESDAY, SEPTEMBER 7, 2022

              *     *     *     *

BEFORE:  SPECIAL MASTER JOEL SCHNEIDER, USMJ, RETIRED
         jschneider@mmwr.com
         856-488-7797

         MASTROIANNI & FORMAROLI, INC.

     Certified Court Reporting & Videoconferencing

          515 South White Horse Pike

          Audubon, New Jersey 08106

               856-546-1100

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 2

1

2

3

4

5

6

7                    Transcript of proceedings in the

8    above matter taken stenographically by

9    Theresa Mastroianni Kugler, Certified Court Reporter,

10   license number 30X100085700, Notary Public of the

11   State of New Jersey and the Commonwealth of

12   Pennsylvania, VIA ZOOM REMOTE VIDEOCONFERENCE,

13   commencing at 10:01 AM.

14

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Theresa Kugler (001-297-027-4278)                        ca12888e-8bc9-4fea-856b-062117b475b0

```
                                                       Page 3

 1
    A P P E A R A N C E S:
 2

 3
            MOTLEY RICE, LLC
 4          BY:  DANIEL R. LAPINSKI, ESQUIRE
            210 LAKE DRIVE EAST - SUITE 101
 5          CHERRY HILL, NEW JERSEY  08002
            856-667-0500
 6          FAX - 856-667-5133
            800-768-4026
 7          dlapinski@motleyrice.com
            ATTORNEYS FOR THE PLAINTIFFS
 8

 9
            ASHCRAFT & GEREL, LLP
10          BY:  MICHELLE A. PARFITT, ESQUIRE
            1825 K STREET, NW
11          WASHINGTON, DC  2006
            800-674-9725
12          202-759-7648
            mparfitt@ashcraftlaw.com
13          ATTORNEYS FOR THE PLAINTIFFS

14

15          BEASLEY ALLEN LAW FIRM
            BY:  LEIGH O'DELL, ESQUIRE
16          218 COMMERCE STREET
            P.O. BOX 4160
17          MONTGOMERY, ALABAMA  36104
            800-898-2034
18          FAX - 334-954-7555
            leigh.odell@beasleyallen.com
19          ATTORNEYS FOR THE PLAINTIFFS

20

21          LEVIN, SEDRAN & BERMAN, LLP
            BY:  LAWRENCE S. BERMAN, ESQUIRE
22          510 WALNUT STREET
            SUITE 500
23          PHILADELPHIA, PENNSYLVANIA  19106-3697
            877-882-1011
24          215-592-1500
            FAX - 215-592-4663
25          lberman@lfsblaw.com
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 4

```
 1

 2          THE FERRARO LAW FIRM, PA
            BY:  MARC P. KUNEN, ESQUIRE
 3             - and -
            BY:  JAMES L. FERRARO, JR., ESQUIRE
 4             - and -
            BY:  ANGELICA L. NOVICK, ESQUIRE
 5          600 BRICKELL AVENUE
            SUITE 3800
 6          MIAMI, FLORIDA  33131
            305-547-9800
 7          mkunen@ferrarolaw.com
            james@ferrarolaw.com
 8          anovick@ferrarolaw.com
            ATTORNEYS FOR THE PLAINTIFFS
 9

10

            FAEGRE, DRINKER, BIDDLE & REATH, LLP
11          BY:  SUSAN M. SHARKO, ESQUIRE
            600 CAMPUS
12          FLORHAM PARK, NEW JERSEY  07932
            DIRECT - 973-549-7350
13          FAX - 973-360-9831
            susan.sharko@faegredrinker.com
14          ATTORNEYS FOR THE DEFENDANT,
            JOHNSON & JOHNSON and JOHNSON & JOHNSON
15          CONSUMER COMPANIES, INC.,
            now known as JOHNSON & JOHNSON CONSUMER, INC.
16

17

18

19

20

21

22

23

24

25
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

```
                                            Page 5
 1                  SPECIAL MASTER SCHNEIDER:  On the

 2      record.

 3                  This is Special Master Schneider.

 4      We're on the record in the J&J MDL.  We're here for

 5      oral argument on what I call the common benefit

 6      motion.

 7                  Why don't we just start with the

 8      entries of appearance.  We'll start with the movant,

 9      Ferraro Law Firm.

10                  MR. KUNEN:  Good morning again.  Marc

11      Kunen on behalf of the Ferraro Law Firm for the

12      movant.

13                  MR. FERRARO:  Good morning, this is

14      James Ferraro Junior, also on behalf of the movant.

15                  MS. NOVICK:  Angelica Novick also on

16      behalf of the movant.

17                  SPECIAL MASTER SCHNEIDER:  And for the

18      respondents?

19                  MR. LAPINSKI:  Your Honor, good

20      morning, Dan Lapinski from the Motley Rice Law Firm

21      on the behalf of the Plaintiffs' Steering Committee.

22                  MS. PARFITT:  Good morning, your Honor,

23      Michelle Parfitt on behalf of the Plaintiffs'

24      Steering Committee as well.  Thank you.  Good to see

25      you.
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

```
                                                Page 6
  1                 MS. O'DELL:  Leigh O'Dell, co-lead for

  2     the Plaintiffs' Steering Committee.

  3                 MR. BERMAN:  And finally, Lawrence

  4     Berman on behalf of the Plaintiffs' Steering

  5     Committee.

  6                 SPECIAL MASTER SCHNEIDER:  Anyone on

  7     for J&J?

  8                 MS. SHARKO:  Susan Sharko.

  9                 SPECIAL MASTER SCHNEIDER:  Okay.

 10     Great.

 11                 So before we start, there are just

 12     three things I wanted to mention, counsel.

 13                 One, after oral argument, I'm going to

 14     reserve decision, but you should expect a decision

 15     promptly.  There are a couple of issues I just wanted

 16     to see if we can get straightened out during this

 17     oral argument.

 18                 Two, I know there was some question way

 19     back when about the scope of this decision and

 20     whether it would have any impact on future arguments

 21     regarding the common benefit issue.  I want to make

 22     it perfectly clear that I'm only addressing the

 23     issues that are presented in this motion and the

 24     order that will be entered will specifically state as

 25     follows:
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 7

 1                    In order to avoid any misunderstanding

 2    or potential confusion, the Special Master makes it

 3    clear that it is only deciding the narrow issues

 4    presented in movant's motion.  The movant did not

 5    raise, nor is the Special Master addressing or

 6    deciding, the appropriateness of a common benefit fee

 7    or assessment in the bankruptcy context.  All of the

 8    orders and settlements at issue were entered and

 9    finalized before LTL's bankruptcy filing.  The right

10    to object to any future common benefit assessment or

11    the propriety of assessments in the bankruptcy

12    context is reserved.

13                    In addition, the order that will

14    eventually be entered will specifically state that

15    the order is entered without prejudice to Ferraro's

16    right to object in the future whether lead counsel

17    should receive any portion of the common benefit fund

18    as compensation for their work in this MDL.

19                    And the third point I'd like to make

20    before we get started with oral argument is that, I

21    don't want to dwell on this, but there was some of

22    what I call flowery language in the moving papers.  I

23    just want to say, I think that the use of that

24    language and that sort of approach is completely

25    inappropriate and unnecessary and will have

Electronically signed by Theresa Kugler (001-297-027-4278)                              ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 8

1    absolutely no place in this oral argument this

2    morning.  And I hope that we can keep this on a

3    professional level and just deal with the merits of

4    the underlying issues without the type of language

5    and attacks that was in the briefs.  I have a feeling

6    that on reflection, there is a recognition that that

7    was not the most appropriate thing to do.  And we'll

8    just leave it at that.

9              So, movant, it's your motion, you have

10   the burden, we'll start with you with the argument,

11   we'll hear from the respondent, you'll have the last

12   word.  I've read all the papers, I'm familiar with

13   the issues.  I know the record.

14              If I could just start by saying this:

15   It seems to me there are three basic arguments you

16   make, you being the movant, as to why the common

17   benefit fee shouldn't be paid.

18              One, the settlements that we're talking

19   about, the 24 settlements, were not part of a

20   quote/unquote MDL supervised settlement.  That's the

21   first thing.

22              The second argument is that the law

23   firm was denied access to work product, specifically

24   expert work product.

25              The third argument is that the conduct

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 9

1    of co-lead counsel was not justified.

2              And the last argument was that lead

3    counsel did not participate in the 24 settlements and

4    there was no discussion with J&J about the payment of

5    a common benefit assessment.

6              That's my understanding of the issues

7    and the arguments.  If you think I'm wrong, let me

8    know.  And I'm going to turn the floor over to you.

9    But before I do that, let me just close the door so

10   we won't be distracted.

11             Okay.  Counsel, the floor is yours.

12             MR. KUNEN:  Thank you, your Honor, and

13   good morning again.  Marc Kunen on behalf of the

14   movant, Ferraro.

15             And your Honor's summation of the

16   issues that we presented is spot on.  And I'm just

17   going to focus on a few of them and in doing so, what

18   I'm not going to do is get into the kind of back and

19   forth that we all saw within the papers that were

20   submitted to the court.

21             I'm here today first and foremost

22   because Mr. Jagolinzer did have a medical emergency

23   back in April and he's been incapacitated since that

24   time.  So I'm going to avoid getting into some of his

25   declaration statements because I know it was his

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 10

 1   intention and his wish to be able to have that

 2   discussion with the court today.  So I'm going to

 3   rest on the papers and rest on the declaration with

 4   regard to some of those statements.

 5              I don't think that it's disputed that

 6   Ferraro Law did reach out to Mrs. O'Dell and the

 7   steering committee specifically to have conversations

 8   with two experts, Laura Plunkett and Ghassan Saed,

 9   and the firm was prevented from having

10   communications.

11              I have a unique perspective on some of

12   the aspects of the papers and the topic and matters

13   being discussed today because I was lead counsel in

14   the Moore Cabrera mesothelioma case against Johnson &

15   Johnson and I tried that case to verdict in which we

16   got a nine million dollar verdict, and that was back

17   at the beginning of 2020.  So leading up to that, I

18   personally was in the weeds on the liability aspect

19   of the Johnson & Johnson case.

20              Johnson & Johnson in that litigation

21   and in other state court litigations turned over

22   millions of pages of documents and I personally went

23   through tens of thousands of pages of documents in

24   preparing for that trial.  So, all of the aspects of

25   the liability was stuff that Ferraro Law and me

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 11

```
 1    specifically, since I would have been the one trying

 2    these state court cases against Johnson & Johnson,

 3    that's all stuff that was within the knowledge and

 4    work product of Ferraro Law.  There was no reliance

 5    on anything related to the PSC or any work that they

 6    had done in the MDL.

 7              And I bring that up because it's

 8    important when I read some of the papers that were

 9    submitted and going through some of the briefing,

10    there really isn't any contradiction other than some

11    conclusory statements from the respondent with regard

12    to stuff that -- information, work product that would

13    have been gleaned from the PSC.  At the end of the

14    day, all of the liability aspect was already in the

15    can, so to speak, at Ferraro Law.

16              SPECIAL MASTER SCHNEIDER:  Can I ask

17    you a question, counsel?

18              MR. KUNEN:  Sure.

19              SPECIAL MASTER SCHNEIDER:  I'm going to

20    assume for the purposes of the argument that you're

21    correct.  And I think the argument you're making is

22    that the law firm did not access any of the

23    quote/unquote common benefit work product and that

24    its settlement with J&J was a result of its

25    independent actions and not any work product of the
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 12

 1    Plaintiffs' Steering Committee.  Let's assume for the

 2    sake of argument that's right.

 3                   Is actual use of the work product a

 4    prerequisite to paying a common benefit assessment or

 5    is merely having the right to access the common

 6    benefit work product the necessary trigger?  Does

 7    someone have to actually use the work product in

 8    order to be obligated to pay an assessment?  Because

 9    you seem to be arguing that use is the key, but the

10    PSC argues access is the key.

11                   What say you?

12                   MR. KUNEN:  Whether you want to say

13    access or use, first of all, it's only one aspect of

14    the entire consideration when we're looking at the

15    settlement that actually took place here.  And I

16    would just add to your Honor's statement that it's

17    not just in terms of use of the work product.  The

18    reason I mentioned the trial is because that was the

19    only verdict that had gone against Johnson & Johnson

20    in the State of Florida.  That was the leverage that

21    the firm used to actually force a settlement.  And so

22    to answer your Honor's point, there wasn't access to

23    any documents or anything like that.  The one time

24    that we sought access was in reaching out to these

25    two experts and that was the only time that there was

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 13

1    any communication with the Plaintiffs' Steering

2    Committee to actually get access.  And that was

3    denied and there is really no dispute to that.  And

4    that was just to have a consultation with them.  It

5    wasn't to do depositions or to hire them or anything

6    like that.

7                    SPECIAL MASTER SCHNEIDER:  Let me ask

8    you this question, counsel.  It's undisputed that the

9    law firm signed the participation agreement and is

10   bound by the terms in that agreement, correct?

11                   MR. KUNEN:  Yes.

12                   SPECIAL MASTER SCHNEIDER:  All right.

13   So if you look at Paragraph D10 of the agreement as

14   to expert work product, and you can correct me if I'm

15   wrong and if you read it differently, let me know,

16   but that particular provision provides that, and I'm

17   paraphrasing, access to expert work product shall be

18   "as deemed appropriate by the PSC."

19                   What do you think that means?  Because

20   the PSC is arguing that they had justification for

21   denying the law firm access, independent access, a

22   separate audience, so to speak, with the experts.

23                   MR. KUNEN:  I think it's important to

24   point out that that section points to the PSC having

25   discretion as to expert witness work product.

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 14

 1    Ferraro wasn't asking for any work product of the

 2    experts.  All Ferraro was requesting is a

 3    consultation with those two experts.  And I can tell

 4    your Honor why.  Having gone in the weeds and worked

 5    up an asbestos case or a mesothelioma case against

 6    Johnson & Johnson, the only difference between the

 7    mesothelioma and asbestos case versus the talcum

 8    powder and ovarian cancer case is what those two

 9    experts had to offer, which is specifically Dr. Saed,

10    the OB, and Mrs. Plunkett, the toxicologist.

11                 What we were trying to figure out at

12    that point is in terms of the scientific, how the

13    talc migrates to the ovaries and causes ovarian

14    cancer.  It's really that scientific question.  So

15    there wasn't any request for any type of work product

16    or anything like that where -- then I get it, you

17    know, if the PSC wants to use their discretion to try

18    to block work product, that's fine.  But I still go

19    back to the fact that, you know, this is their role

20    as the PSC is to help facilitate and to work on

21    behalf of the plaintiffs that are part of the MDL.

22    And that's why we signed that agreement.  And to have

23    that consultation denied was fundamentally divergent

24    from the purpose of the agreement itself.  But I

25    would also just --

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 15

1                    SPECIAL MASTER SCHNEIDER:  Counsel, let
2     me ask you this question.  And I'm sorry for
3     interrupting, but you'll have all the time to say
4     whatever you want to say.
5                    The record reflects that I read that at
6     least 127 law firms signed the participation
7     agreement.  So there were 127 firms, lawyers, what
8     have you, who had the same rights as you.  Is it
9     practical that every time one of those 127 lawyers
10    requested to speak with the experts that the PSC had
11    to grant an audience to the experts?  Is that
12    realistic?  Is that practical?  Is that workable?
13                   MR. KUNEN:  If every one of the 127
14    were asking, then maybe there would have needed --
15    we would have needed some sort of process or
16    something to set it up, but I don't think that was
17    the situation here.  And I haven't heard any argument
18    that that was the reason why access was denied.  The
19    respondent hasn't said, well, you know, it was a
20    situation where there were so many people coming to
21    us trying to get access.  That wasn't their
22    reasoning.  So, you know, whether it's practical or
23    not I don't think is really the point here.  The
24    realty is, from what we've seen from the respondent's
25    briefing, we're the only people that asked for access

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 16

1     to these two experts.  And it was denied.

2                     But I just want to take a step back,

3     your Honor, because the important thing here is I

4     think when we're talking about CMO number 7A and

5     we're looking at what we cited in our brief, which is

6     Subsections A through D.  Now these are all of the

7     sections that allow for the PSC to assess a common

8     benefit fee.  And so if we look at these -- and by

9     the way, CMO number 7A, I agree with your Honor's

10    statement earlier, we signed it, we accepted it as it

11    is.  We didn't dispute it.  But as it's written, and

12    this was written by the PSC, this was submitted by

13    the PSC, in their own language it's important to

14    actually look at A, B, C and D.  And although we can

15    kind of go back on Subsection D and say, you know,

16    argue it -- and that's what the reply -- or the

17    response and the surreply of the respondent, that's

18    exactly what they do, they go back and forth and try

19    to argue against Subsection D, but really they have

20    no argument against Subsection B.  And their own

21    agreement that they drafted is -- can be strictly

22    construed based on the clear unambiguous language in

23    the statement to require that all four of those

24    sections are required in order for them to assess a

25    common benefit fee.

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 17

1                 And so even though we've spent this

2      morning so far going back and forth on Subsection D,

3      it's clear and unambiguous that Subsection B was not

4      met.

5                 SPECIAL MASTER SCHNEIDER:  Let me ask

6      you a question about that, counsel, because I do

7      think that's a very important point and that's a very

8      important argument that you make.

9                 Am I correct that if your

10     interpretation of Paragraph 4 is accepted in CMO 7A,

11     that all four criteria in A, B, C, D have to be met

12     in order for a common benefit assessment to be paid;

13     that the only way a common benefit assessment would

14     be paid is if there is a quote/unquote MDL supervised

15     settlement?

16                Is that how you read Paragraph 4?

17                MR. KUNEN:  Absolutely.

18                SPECIAL MASTER SCHNEIDER:  Okay.

19                MR. KUNEN:  And it's not just how I

20     read it, it's how it's written and it was written by

21     the PSC.

22                SPECIAL MASTER SCHNEIDER:  So let me

23     give you a hypothetical situation, purely

24     hypothetical.  I'm just making this up.

25                You have a lawyer who is handling an

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 18

1    ovarian case in state court.

2              Okay?

3              And unlike you, they accessed the keys

4    to the kingdom, they got all the work product that

5    they could from the PSC, they got the transcripts,

6    the summaries.  Whatever was in there, they got.

7    They got the keys to the kingdom.  They settled that

8    case.  It's a one-off settlement, right?  One state

9    case.  Is it correct that if your interpretation of

10   that Paragraph 4 is accepted, that person who used

11   and benefitted from that work product from that

12   common benefit work would not have to pay a common

13   benefit assessment because there was no MDL

14   supervised settlement?

15             Is that your position?

16             MR. KUNEN:  That's my position, your

17   Honor.

18             SPECIAL MASTER SCHNEIDER:  Okay.

19             MR. KUNEN:  And that's how it's

20   written.

21             But I'd like to point out, I am in full

22   agreement with what your Honor stated at the

23   beginning of this hearing and what your Honor would

24   be entering in this order.  I know we're kind of

25   talking about hypotheticals here, but my intention

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 19

1    here is to argue solely about what's happened in this

2    instance and limit it to what's going on in this

3    instance, in this MDL and the matters that are

4    presented before your Honor.

5                    So the answer is yes, but I would agree

6    with your Honor's assessment of keeping it limited to

7    the facts in this case and not starting to go down

8    those other paths.

9                    But it's clear and unambiguous from the

10   language.  And really, the only response that the

11   respondent provides in their papers to this point is

12   to say well, gee, that's really not what was actually

13   meant.  Even though we drafted the document and got

14   it approved, it's really not what we meant.  And I

15   don't think that's a sufficient argument.  It's clear

16   from the language itself that it includes all four

17   prongs, all four prongs need to be met.  And because

18   they are not met, I believe your Honor is handcuffed

19   into finding in favor for Ferraro in this particular

20   case, in this particular instance.

21                   So I'm going to rest on the rest of the

22   arguments that we've made.  I think that last point,

23   I think it was the second point that your Honor

24   presented in your summation, that's the most

25   important one, which is they have to meet all four of

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 20

1    these prongs in order to assess a common benefit fee

2    assessment.  And it's clear that that's not met in

3    this instance.

4                I think that D also was not met, but

5    instead of going back and forth on it, there is

6    really no argument to the fact that B was not met,

7    this was not an MDL supervised settlement agreement.

8                So the last point I'd like to bring up

9    is our alternative argument in this case, you know,

10   while resting on the rest of the papers that we've

11   submitted.  And the alternative argument focuses

12   really on if there is entitlement for the PSC to a

13   common benefit fee assessment, that fee should be

14   eight percent and not 12 percent.  And I know --

15               SPECIAL MASTER SCHNEIDER:  Counsel, I

16   don't mean to cut you short, but I don't think that's

17   an issue anymore.  I think that issue is moot.  I

18   think there is a recognition that if there is an

19   assessment, it's eight percent and I don't think

20   there is any contention anymore, or if there ever was

21   any contention, that the 12 percent assessment is

22   owed.  And we'll get that from the PSC itself.  But

23   as I read the papers, that's not an issue anymore.

24   Either it's eight percent or nothing.

25               MR. KUNEN:  Here is my concern, your

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

1   Honor, and here is why it still is a potential issue.

2   Under the CMO number 7A, there is a requirement that

3   when a settlement is concluded, outside of any MDL

4   settlement obviously, Johnson & Johnson communicates

5   that settlement to the PSC.  The exact language is

6   quoted in our papers.  The PSC is then required,

7   under the CMO, to advise Johnson & Johnson what, if

8   any, percentage of common benefit fee assessment

9   should be withheld.  After we consummated the

10  settlement, Johnson & Johnson did their part under

11  the CMO and timely reached out to the PSC and advised

12  them of the settlement asking them, as they were

13  required to do, asking the PSC what the percentage,

14  if any, of the common benefit fee assessment should

15  be held back.  They got radio silence.  This is after

16  multiple communications with the PSC, no response

17  whatsoever was provided to Johnson & Johnson from the

18  PSC.

19              Why this becomes an issue, your Honor,

20  is, as we all know, Johnson & Johnson subsequently

21  branched off into LTL and they did the bankruptcy, so

22  there is a stay right now.  And so my concern, your

23  Honor, is what should have been an easy communication

24  from the PSC from the get-go saying look, we're not

25  holding back 12 percent, we're going to ask that we

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 22

1    hold back eight percent, what should have been an

2    easy communication from the PSC and what they were

3    required to do under the CMO never happened.

4                    So now in their papers for the first

5    time, Judge, this is a first time in their papers

6    that they're conceding that sure, alternatively eight

7    percent would apply, not the 12 percent.  The problem

8    is since Johnson & Johnson's in bankruptcy or LTL

9    Management, LLC is in bankruptcy, there is a stay, my

10   concern, your Honor, what our papers ask is that

11   well, to the extent that we're now unable to get that

12   four percent from Johnson & Johnson because the PSC

13   didn't do their part initially, we should be entitled

14   to get that money, those funds from the PSC, from

15   Beasley Allen directly.  And if there is some avenue

16   for them to get it in the bankruptcy court, Ferraro

17   shouldn't be burdened with that.  We shouldn't be

18   prejudiced by having to go through that.  We're more

19   than happy to assign that four percent to the PSC and

20   let them to go at it to see if they can ever get it.

21   But that's the concern now, is that four percent,

22   which should have easily -- it should have been a

23   non-issue, now all of a sudden I'm in a position that

24   I don't know if I can even get those funds and now we

25   have to wait however long to potentially get them and

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 23

1    to go through the bankruptcy proceeding.

2              So that's the issue, your Honor, and

3    that's the last issue that I wanted to raise and

4    that's why we requested from the PSC in our papers

5    that they essentially pay that four percent

6    difference to us, if your Honor finds accordingly,

7    that they pay the four percent for us and we'll

8    assign that money to them and they can have at it in

9    the bankruptcy.

10             SPECIAL MASTER SCHNEIDER:  Okay.  Thank

11   you, counsel.  Like I said, you'll have the last

12   word.

13             I don't know who is going to speak for

14   the PSC, but the floor is yours.

15             MR. LAPINSKI:  Good morning, your

16   Honor.  This is Dan Lapinski from the Motley Rice

17   firm on behalf of the Plaintiffs' Steering Committee.

18             Your Honor, I want to start off by just

19   going back in time a little bit as it relates to

20   entry of the CMO order.  It was originally in August,

21   2017 that CMO 7 was put in place that established a

22   common benefit protocol.

23             In May of 2020, the PSC filed a motion

24   to approve a CMO holdback agreement and at the time

25   of that May 2020 motion, there was a single objection

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 24

1    to any type of holdback agreement, and that single

2    objection did not come from the Ferraro Law firm,

3    even though they did have the right to be able to

4    object.

5              In September of 2020, CMO 7A was

6    entered, which was the holdback agreement and the

7    Ferraro Law Firm in September of 2020 executed their

8    participation agreement, agreeing to be a participant

9    in the common benefit procedures.  It wasn't until a

10   year after the discussions with Ms. O'Dell that are

11   at issue here regarding the experts that the Ferraro

12   firm decided to file this motion saying that it

13   wasn't subject to the common benefit order.  It

14   wasn't until 15 months after they had signed on to

15   the participation agreement that they raised this

16   issue.  All issues that could have been raised

17   sooner.

18             The issue involves 24 cases that the

19   Ferraro firm settled, 22 of which are pending in the

20   MDL and by their very nature would be subject to the

21   common benefit order.

22             A couple points in response to the

23   arguments that have been made.  First, as your Honor

24   noted, the PSC did have the right to be able to deny

25   the access to the expert work product that the

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 25

 1   Ferraro firm was looking for.  The participation

 2   agreement does not provide unfettered access to all

 3   MDL work product.  And as your Honor had pointed out

 4   in particular as it relates to the experts, access to

 5   expert witness work product was quote/unquote as

 6   deemed appropriate by the PSC.  The failure on the

 7   part of the PSC to provide the expert work product is

 8   not a breach of the agreement, it doesn't give the

 9   right to the Ferraro Law Firm to step outside of the

10   terms of the agreement.

11               SPECIAL MASTER SCHNEIDER:  Can I ask a

12   question about that, Mr. Lapinski?

13               MR. LAPINSKI:  Yes, your Honor.

14               SPECIAL MASTER SCHNEIDER:  Does the

15   agreement give the PSC or the co-lead counsel

16   unfettered discretion to deny access to work product?

17   Suppose, for example, the denial is arbitrary and

18   capricious?  Suppose the denial is not related to

19   merits issues, but there is a personality dispute,

20   what would happen in that instance?  Are you taking

21   the position that discretion is unlimited?

22               MR. LAPINSKI:  Your Honor, I'm not

23   taking the position that the discretion is unlimited.

24   I'm taking the position that the Plaintiffs' Steering

25   Committee, pursuant to the terms of the agreement,

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 26

1    they have the right to deny that access when they

2    deem it to be appropriate.

3                  SPECIAL MASTER SCHNEIDER:  Well, that's

4    what I'm asking.  They could deem it to be

5    appropriate because there is a personality

6    difference.  Is that an appropriate reason to deny

7    access to expert work product?

8                  MR. LAPINSKI:  Well, counsel brought up

9    the point that there is a difference, your Honor,

10   between expert work product and access to the experts

11   themselves.  And that's an interesting point in the

12   following regard:  We don't, we meaning the

13   Plaintiffs' Steering Committee, we don't control Dr.

14   Saed to the extent that if someone reached out to him

15   and said Dr. Saed, we'd like to be able to talk to

16   you about talc litigation.  The Ferraro firm could

17   have picked up the telephone to do that.  We don't

18   have the ability to deny them the ability to do that.

19                  Dr. Saed, in his capacity as a PSC

20   expert, could have said thank you for the phone call,

21   I have some concerns about being able to share

22   information with you, work with you in regard to the

23   case that you're working up because it could create

24   conflicts for me in the work that I'm doing in the

25   PSC.  They could have done that.  They contacted the

Page 27

1    Plaintiffs' Steering Committee and asked if we could

2    put them in touch and it was a decision on behalf of

3    the steering committee to say we don't think that it

4    would benefit the overall efforts of the steering

5    committee to put you in contact, to make Dr. Saed

6    feel as if there is an obligation or some type of

7    commitment to do work on your behalf.  And that's

8    where things ended.

9               There isn't an argument put forward

10   that the decision was arbitrary and capricious, there

11   is just a decision that they didn't like the ultimate

12   choice of the Plaintiffs' Steering Committee not to

13   make the introduction and not to allow for the

14   consultation.

15              SPECIAL MASTER SCHNEIDER:  So as part

16   of this decision-making, do I have to decide whether

17   the denial was reasonable or not?

18              MR. LAPINSKI:  I don't think you do,

19   your Honor.  And the reason I don't think you do is

20   because once you start to do that, your Honor -- you

21   had brought up a point in the very beginning of the

22   discussions that the scope of the decision, the

23   impact on future arguments was that you were only

24   addressing the issues in this motion.  And while you

25   are only addressing the issues in this motion, diving

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

1    into the details of all of these decisions opens up a
2    Pandora's box.  Because what it will then create is
3    on a case-by-case basis any law firm being able to
4    come forward that has signed on to the participation
5    agreement and say here are all the facts related to
6    my law firm and yes, despite the fact that I signed
7    on to the participation agreement, I don't think that
8    I should have to pay because I had an interaction
9    with the Plaintiffs' Steering Committee at this
10   particular point in time, which looking back I now
11   disagree with and I want you to be able to able to
12   analyze, your Honor, my situation and whether or not
13   my interactions and the reactions of the Plaintiffs'
14   Steering Committee were reasonable, whether they were
15   arbitrary and capricious and it creates a situation
16   where the participation agreement means nothing.
17              SPECIAL MASTER SCHNEIDER:  Isn't
18   that what -- but I don't think -- it doesn't sound to
19   me like this is a hypothetical situation outside the
20   four corners of this motion because the movant argues
21   that there was no justification for the denial of the
22   access.  So in effect, they're arguing that the
23   denial was arbitrary and capricious, there was no
24   good or rational reason to deny them access.  So I
25   don't think this is a hypothetical situation that we

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 29

 1    can save for another day.

 2                    MR. LAPINSKI:  Well, the statement by

 3    the movant that it was just an arbitrary and

 4    capricious decision and was unjustified isn't based

 5    upon anything other than their dissatisfaction with

 6    the decision of the Plaintiffs' Steering Committee.

 7                    SPECIAL MASTER SCHNEIDER:  So what was

 8    the basis of the denial?

 9                    MR. LAPINSKI:  The basis of the denial

10    is the fact that the steering committee and the work

11    done by the steering committee over a six-year period

12    of time includes working with dozens of experts and

13    the management of dozens of experts.  And, your

14    Honor, we've spent days on Zoom hearings with your

15    Honor and with Ms. Sharko arguing about different

16    aspects of experts, including Dr. Saed, and

17    challenges to Dr. Saed on multiple levels.  And from

18    a PSC perspective, to open Dr. Saed up to challenges

19    not only within the MDL but then within various state

20    courts where the PSC doesn't have the same level of

21    involvement and Dr. Saed is opened up to challenges

22    where different attorneys are defending those

23    challenges, where his opinions can be taken and

24    construed in a way that is contrary to the way that

25    the MDL wants his opinions to be used, that's, you

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 30

1    know, that's significant and that's one of the main

2    reasons that the MDL looks to be able to manage the

3    work product and have some control over the experts

4    that are going to be relied upon.  You know, the

5    underlying issue becomes there are state court cases

6    that are getting moved forward and the state court

7    cases, for the good or the bad, can get moved forward

8    at a pace that's faster than what's happening in the

9    MDL.  And when that happens, it's important for the

10   MDL and the Plaintiffs' Steering Committee to be able

11   to manage and maintain the experts that have been

12   worked up over the prolonged period of time,

13   otherwise the hundreds of hours of work that gets put

14   into an expert, the amount of money that's spent in

15   being able to work with the expert and have the

16   expert develop the opinions can all be thrown away

17   because a state court case moved ahead of the MDL

18   case and that particular state court attorney decided

19   that they wanted to be able to take the expert, use

20   them in a particular way that ends up being contrary

21   to the MDL.

22              And I think, you know, that's one of

23   the major reasons that we want to be able to maintain

24   the access to the work product of the experts and

25   have some control over the experts.  And I don't

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

1    think that that's any different than you see in any

2    other multidistrict litigation.

3                    If that answers your question on that

4    topic, your Honor, I'll move on to the other points.

5                    SPECIAL MASTER SCHNEIDER:  It does.

6                    MR. LAPINSKI:  I'm sorry.  Did you say

7    it does?

8                    SPECIAL MASTER SCHNEIDER:  It does.

9                    MR. LAPINSKI:  Thank you.

10                   Your Honor, one of the other points

11   that was raised by counsel was that the settlements

12   that they entered into were settlements that didn't

13   benefit from any of the MDL efforts.  And I think

14   that that statement is simply false.  What that

15   statement does is that statement ignores the work

16   that's been done by the MDL since October of 2016.

17   It ignores all of the factual information that's been

18   made available to the Ferraro firm by the MDL.  And I

19   thought that you hit on a very good point, your

20   Honor, was that there is a difference between having

21   access to the MDL work product and actually going

22   into and working with the MDL work product.  There

23   does not have to be actual use of the MDL work

24   product.  You sign the participation agreement so

25   that you have access to the MDL work product.

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 32

1                    The MDL work has put pressure on the

2      defendants on the ovarian cancer side of things.  And

3      I think it's very interesting that counsel pointed to

4      the fact that the Ferraro liability work was done on

5      the asbestos side of things and that the Ferraro firm

6      took the first asbestos case to verdict in Florida

7      and had a plaintiff's verdict in Florida, but then

8      turned to the MDL for the ovarian cancer side of

9      work.  Now, it may have been that the Ferraro firm

10     was able to begin settlement discussions because it

11     had a successful asbestos verdict, but your Honor has

12     full familiarity with these cases and you know that

13     the arguments on the asbestos side of the litigation

14     are different than the arguments that are being made

15     on the ovarian cancer side of the litigation.  And

16     while it may have been an asbestos case that started

17     the settlement discussions, the work that's been done

18     by the MDL, the pressure that's been put on

19     defendants on the ovarian cancer side by the MDL

20     benefitted the Ferraro firm.

21                    Ms. Sharko, for the last six years on

22     behalf of her client, has taken the position that

23     there is no link at all between the use of talcum

24     powder and ovarian cancer, yet over the last six

25     years the MDL has been able to develop the science

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

```
 1    and develop the arguments that support an argument

 2    that there is a link.  And that benefitted the

 3    Ferraro firm, whether it be, you know -- although

 4    it's not a member of the Plaintiffs' Steering

 5    Committee sitting in the room and making the

 6    arguments on behalf of the Ferraro firm, those

 7    arguments have been made on behalf of all

 8    participants in the MDL in order to put pressure on

 9    the defendant to do things like settle ovarian cancer

10    cases when the opportunity is there similar to

11    what has been done in this case.

12               The PSC efforts have conferred benefit

13    to the Ferraro firm and to all litigants in the

14    docketing and the administration of these cases since

15    the inception of the litigation, in the management of

16    the MDL coordination, in the development of the case.

17    There has been over 750 thousand documents produced

18    in the ovarian cancer litigation.  We've done dozens

19    of fact depositions.  We've argued discovery disputes

20    before your Honor, before Judge Wolfson.  As I

21    indicated earlier, we've worked with and developed 25

22    experts who support the ovarian cancer arguments.  We

23    successfully briefed and argued Daubert motions that

24    kept these cases alive.  But for the efforts of the

25    MDL on the ovarian cancer side of things and but for
```

Page 34

1    our ability to successfully argue Daubert, the tone

2    and tenor of these cases would have been entirely

3    different when it came time for the Ferraro firm to

4    negotiate the settlements that are at issue here.

5    And that's something that can't be taken lightly at

6    all.  If the MDL had not been successful in the

7    Daubert arguments, we'd be in a totally different

8    situation and the Ferraro firm has absolutely

9    benefitted from that.

10              I had mentioned earlier when you --

11   well, I won't go back to the case-by-case issue

12   because I already brought that point up, your Honor.

13              SPECIAL MASTER SCHNEIDER:  Mr.

14   Lapinski, can you address the movant's argument how

15   Paragraph 4 of CMO 7A should be read?  Because that's

16   really a critical issue in this argument and I'd like

17   to hear the position of the PSC on that.

18              I think the movant's position is that

19   all four criteria have to be met.  I know the PSC

20   disagrees.

21              Why?

22              MR. LAPINSKI:  Your Honor, the PSC

23   disagrees because the order itself does not say, you

24   know, these four criteria have to be met.  The order

25   says that the participation agreement applies to the

Electronically signed by Theresa Kugler (001-297-027-4278)                ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 35

1    following categories of cases.  It applies to A, all

2    cases that are subject to the jurisdiction of the MDL

3    court.  It applies to B, all cases or claims that are

4    settled pursuant to an MDL supervised settlement

5    agreement.  It applies to C, all cases or claims

6    where there are ovarian cancer clients of counsel who

7    signed or are deemed to have signed the participation

8    agreement whether the cases are filed, unfiled or

9    told.  And it applies to the final category, category

10   D, all cases and/or claims of ovarian cancer clients

11   of any counsel who received, used or benefited from

12   the common benefit work product.

13             There are four different categories of

14   cases to which the agreement applies.

15             SPECIAL MASTER SCHNEIDER:  Yeah, but

16   let's get to the crux of this, Mr. Lapinski.

17             MR. LAPINSKI:  Sure.

18             SPECIAL MASTER SCHNEIDER:  The movant's

19   argument is that the word "and" after subparagraph C

20   signifies that all four criteria should have been

21   met.  And the movant didn't argue this specifically,

22   but it's understood that their argument is that if it

23   was intended that you only had to meet one of the

24   four criteria, instead of using the word "and," the

25   word "or" would have been used.

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 36

1                      How do you respond to that argument?

2                      MR. LAPINSKI:  I don't think that it's

3     necessary to have used the word "or," your Honor.  I

4     think that the use of the word "and" there is an

5     inclusive term that includes those four categories of

6     cases that are -- that the order applies to.  It says

7     "the order applies to" and lists four categories of

8     cases.  It doesn't say that the order applies to

9     cases that meet these criteria.  If it had said it

10    has to meet these criteria, then that would have been

11    language structured in a way that would have been

12    inclusive language, saying it has to be all of these,

13    and including the fourth one.  That's not the way

14    that it's written.  It says, "accordingly, this order

15    applies to" and it lists the four different

16    categories of cases that the order applies to.

17                      SPECIAL MASTER SCHNEIDER:  Okay.  You

18    can move on, Mr. Lapinski.

19                      MR. LAPINSKI:  Thank you, your Honor.

20                      Your Honor, the other two points that I

21    will quickly hit on, one is in regard to the

22    defendants' obligation to alert the Ferraro firm

23    about the common benefit obligation.  That was an

24    argument that was raised by the Ferraro firm that

25    defendants never said hey, listen, you know, just be

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 37

1    aware that the negotiations we're having, your cases

2    are going to be subject to the common benefit

3    obligation.  We don't think the defendants had any

4    obligation to do that.  The obligation is on the

5    Ferraro Law Firm to understand the agreements they

6    have or have not entered into and we don't think that

7    there is anything to that argument as to a reason why

8    the movant should be able to avoid the common benefit

9    fee that is due and owing.

10                   You know, in regard to the 12 percent

11   versus the eight percent, your Honor, my position

12   would be that the defendant has withheld 12 percent.

13   That 12 percent, pursuant to the various agreements,

14   should have been withheld and be in some type of

15   qualified settlement fund right now.  And to the

16   extent that we sit here and say we don't disagree

17   that eight percent is the appropriate assessment,

18   then I don't think the bankruptcy has any impact at

19   all on the defendants' ability to be able to address

20   the four percent because it would have been put into

21   a fund pre-bankruptcy and should be available for

22   payment to the Ferraro firm once the issues of

23   assessment are resolved.

24                   SPECIAL MASTER SCHNEIDER:  How do you

25   respond to the argument that the PSC did not timely

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

                                                    Page 38

1    notify J&J that only an eight percent assessment

2    should be withheld?

3               MR. LAPINSKI:  Well, your Honor, I

4    think the issue of timeliness goes to the filing of

5    the motion.  And I think that, you know, upon the

6    filing of the Ferraro motion, and I'd have to go back

7    and look at the timing, but I believe that the PSC

8    did not provide any type of response because there

9    was a motion filed and it was an issue that was

10   raised before the court and that was pending before

11   the court and has been pending for a period of time.

12              SPECIAL MASTER SCHNEIDER:  I understand

13   the movant to argue, and I'm sure when they get a

14   chance to talk they'll address this, but in their

15   words, when they reached out to the PSC, there was

16   quote/unquote radio silence.

17              MR. LAPINSKI:  And I think that radio

18   silence, your Honor, and again I wasn't involved with

19   the communications that the Ferraro firm is referring

20   to so I don't have the specific dates in front of me,

21   but I believe that radio silence would have been

22   brought about by the filing of a motion and the fact

23   that the issue was put before the court.  There was

24   radio silence because there was a motion that was

25   pending and arguments were being made in the papers.

Electronically signed by Theresa Kugler (001-297-027-4278)                ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 39

1               Your Honor, the last point that I'll

2    bring up relates to movant's reference to the Beasley

3    Allen firm in a motion that the Beasley Allen firm

4    had filed in a Round Up litigation and likening their

5    current situation to a motion and order that was

6    entered in the Round Up litigation as to why they

7    should be able to not have to pay the common benefit

8    order -- pay the common benefit assessment.  And the

9    points that I'll bring up there is just to

10   distinguish the Round Up motion and order from the

11   present matter is that in the Round Up motion and

12   order, there was no participation agreement like we

13   have here where the Ferraro firm has signed the

14   participation agreement.

15               The second big factor is that all of

16   the cases that were subject of the motion in the

17   Round Up litigation were either pending in state

18   court or had been filed in Federal court, transferred

19   to the MDL and were subject of a pending motion to

20   remand, to have the cases sent back to state court.

21   So that there was an effort on the part of the

22   Beasley Allen firm to keep their cases separate and

23   apart from the MDL.

24               And the third thing, your Honor, is

25   that there was no use of any work product.  In the

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 40

1    Round Up litigation, the Beasley Allen law firm did

2    not use any of the MDL work product, did not sign a

3    participation agreement, whereas here, the Ferraro

4    Law Firm signed a participation agreement, had the

5    right to access the work product and that's the

6    distinguishing factors between those two cases, your

7    Honor.

8                    And, your Honor, unless you have any

9    questions, I don't have any other points to bring up.

10                   SPECIAL MASTER SCHNEIDER:  I do have

11   one question before we turn the floor over.  And I'm

12   not sure if you have the knowledge or Ms. O'Dell has

13   this knowledge, but I seem to recall from reading the

14   record that there was a reference that the Ferraro

15   Law Firm wasn't the only firm where this issue came

16   up about whether a law firm could have direct

17   communications with the PSC's common benefit experts.

18   And counsel for the movant made a statement that they

19   were the only one who requested that access.  And I

20   know this is a factual issue, but can you clarify it

21   for me, Mr. Lapinski or Ms. O'Dell, whether the

22   Ferraro Law Firm was the only firm that requested

23   this access or was the Ferraro firm treated the same

24   as the other firms who requested such access?

25                   MR. LAPINSKI:  Go ahead, Leigh.  I was

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 41

1    going to respond, but if you want to respond, go

2    ahead.

3                    MS. O'DELL:  Dan, excuse me.

4                    Your Honor, Michelle Parfitt and I, as

5    co-leads, were contacted by many firms about their

6    individual state court cases.  And we took a

7    consistent position with these firms that experts in

8    the MDL, particularly general causation experts like

9    Dr. Saed and Dr. Plunkett, their depositions would be

10   taken as part of the trial package and be made

11   available to anybody for use in their state court

12   trials, but that unfettered access to the experts to

13   testify live at their own individual state court

14   trials or to consult individually was not something

15   that we were facilitating.  And that was our

16   position.

17                    I took that consistently in many

18   conversations.  And Ms. Parfitt's on the phone and

19   I'm sure she would say the same thing.

20                    MS. PARFITT:  Your Honor, I will.  And

21   for the record, Ms. O'Dell is absolutely correct.  It

22   was the policy position that we took across the

23   board.  Everyone, all firms were treated fairly and

24   the same.  It was systematized because it was the

25   only way to make this work.  It was not -- we felt it

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 42

1    was a prudent decision for the protection of all

2    claimants in all law firms that would make a request,

3    so I think it is very important that the Ferraro firm

4    was not an outlier, that we decided for some reason

5    we didn't like the Ferraro firm or the Ferraro firm

6    weren't good enough lawyers.  Nothing like that.  It

7    was not that kind of indiscriminate decision-making.

8    It was something that early on we had to develop some

9    type of policy or position as to what is prudent for

10   all law firms, all claimants, all 38 thousand women

11   and their families.  And that's the position that we

12   took.  And we tried to honor that with each and every

13   inquiry that came in.  And, as Ms. O'Dell has

14   indicated, there were many.

15             MR. LAPINSKI:  Your Honor, going back

16   to the question you had asked before, I think the

17   points that were just brought up by Ms. O'Dell and

18   Ms. Parfitt go to the reasonableness of this decision

19   as it relates to the Ferraro firm as compared to it

20   being unjustified or arbitrary or capricious.  It's a

21   decision that was implemented across the board, it

22   wasn't a decision that was unique to just this one

23   law firm.

24             Your Honor, the last point that I want

25   to be able to make is in regard to the question that

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 43

1    you had asked about the 12 percent/eight percent and

2    the radio silence on the plaintiffs' side.  And I

3    just want to note that it's our understanding that

4    the Ferraro firm's position at the outset was they

5    didn't feel that they had to pay any assessment.  It

6    wasn't a question of whether it was eight percent or

7    12 percent, it was a question of whether or not they

8    had to pay any assessment at all.  And, therefore, at

9    the outset there was no -- there was no need for us

10    to weigh in on 12 percent versus eight percent

11    because the position was our obligation is zero

12    percent.

13                SPECIAL MASTER SCHNEIDER:  Got it.

14                Thank you, Mr. Lapinski, Ms. O'Dell,

15    Ms. Parfitt.

16                Okay.  Movant, you have the last word.

17    The floor is yours.

18                MR. KUNEN:  Thank you, your Honor.

19                SPECIAL MASTER SCHNEIDER:  If any.  You

20    don't have to reply, but if you want to, you can.

21                MR. KUNEN:  I'm going to be brief.  And

22    a lot of what the respondents just argued went to

23    exactly what I was trying to avoid, which is the back

24    and forth on Subsection D.

25                What they noticeably failed to address

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 44

 1    or argue with any substance was the fact that the

 2    CMO, that they wrote themselves, states clearly that

 3    it applies to the four prongs set forth, A through D,

 4    and that the only time that they can assess a common

 5    benefit fee is if not just one or, as your Honor said

 6    using the word "or," or two or three or four of the

 7    prongs are met, but that all four, one, two, three

 8    and four, are met.

 9                    And so your Honor asked the question

10    and I didn't hear a response other than, well, we

11    think it meant to do this.  There certainly was no

12    citation to CMO 7A saying well, actually here is an

13    exception to it, here is where it says that no, just

14    one of the prongs needs to be met.

15                    So your Honor is left in the position

16    where -- we can go out in the world of hypotheticals

17    and talk about, your know, Pandora's box and

18    everything else, but the issue before your Honor

19    right now really goes to the four corners of the CMO.

20    And it states in uncertain terms -- excuse me, it

21    states with no uncertain terms that all four of those

22    prongs have to be met.  There hasn't been an argument

23    against it in their papers and your Honor hasn't

24    heard any legitimate argument against it today.

25                    Based on that alone, and I have a lot

Page 45

 1   of things that I would say about Subsection D and the

 2   back and forth, I'm going to make one or two comments

 3   on it, but the realty of the situation is your Honor

 4   is in a position where, based on the unambiguous, the

 5   clear language of CMO 7A that they drafted, and

 6   which, by the way, we don't object to.  You know,

 7   there was talk about that, about objecting to the

 8   holdback agreement, things like that.  We don't

 9   object to the language.  We did sign it.  It sounds

10   like now, when it doesn't suit them, they're the ones

11   that, if anything, are objecting to the language in

12   CMO number 7.  I mean, they're the ones that have

13   issues with the language now, issues with language

14   they created.

15             So the reality of the matter is your

16   Honor is in a position where, based on the simple

17   construction of CMO number 7A, your Honor is bound by

18   it and has to find for this particular set of facts

19   in this situation that not all four of those prongs

20   are met and, therefore, a common benefit fee

21   assessment can't be levied in this situation.

22             I do want to point out some issues that

23   I have with some of the stuff on Subsection D, but

24   I'm going to be brief because it kind of detracts

25   from the main focus her and why your Honor is here

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

Page 46

 1    and the decision your Honor has.  But just to be

 2    absolutely clear, this was not a situation where we

 3    could simply pick up the phone and call the experts.

 4    It's in the papers, they specifically told these

 5    individuals and they told Mr. Jagolinzer, it's in his

 6    declaration, that hey, if you guys try to reach out

 7    to them, we're going to tell them not to talk to you.

 8    And unlike their reason -- because you asked them a

 9    very pointed question:  What was your basis?  And to

10    be clear, no basis was advised to Ferraro when the

11    request was made.  And that's in the declaration,

12    too.

13              Mrs. O'Dell from the declaration did

14    not consult with the other individuals that are

15    arguing now and there was no justification or

16    explanation provided at that time.  So we're left

17    with the fact that if we went and tried to reach out

18    to these people, our calls would have been ignored

19    because they were advised.  And I think it's really,

20    really important to point out, your Honor, that their

21    justifications now talk about preserving the experts

22    and not trying to get them tied up into depositions

23    and trial and stuff like that.  From the get-go,

24    that's not what Ferraro was trying to do.  All we

25    were trying to do was have a consultation with them

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 47

1    to ask some of these questions, some of these

2    scientific questions that they admit today that they

3    have vetted and they have done all this leg work on.

4    What is the purpose of an MDL and everything that

5    they're saying that they did in working up this

6    litigation if not for a plaintiff's firm like Ferraro

7    to be able to just have those discussions with those

8    experts, just a discussion?

9              And, you know, in case there is any

10   ambiguity, in Florida at least, in most states, those

11   consultations are not discoverable.  So just to have

12   those discussions with people that they admit they've

13   done all this leg work with, they've worked it up,

14   they've vetted all these people, they've done all

15   this work product stuff, we didn't ask for any of

16   that.

17             And I dispute that we had access to it.

18   You know, these trial packages, they didn't exist.

19   All right?  So there wasn't any, you know, any access

20   to any of this stuff.  All our office wanted to do is

21   have conversations so that we could alleviate the

22   need to have to do, you know, months of work, leg

23   work, which we ultimately had to do because we were

24   denied that access.

25             The liability is not an issue, it was

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 48

1    just the medical stuff.  And they denied us, they
2    prevented us access, they told these folks, if
3    Ferraro reaches out to you, you're not to talk to
4    them.  It's the antithesis of what they're suppose to
5    be doing as part of the PSC.
6                    And I would also just point out that,
7    you know, the last kind of part is, your Honor asked
8    about this on the fee percentage being eight percent
9    versus 12 percent, I mean, it sounds like the
10   argument they're making now is, well, they found out
11   when the motion was filed -- and just for the record,
12   Johnson & Johnson, when they requested to the PSC
13   what that percentage should be, as they're required
14   to do under the CMO, that was well before the
15   bankruptcy, that was well before the movant, Ferraro,
16   filed this motion.
17                    And I would just also say, your Honor,
18   in our motion we say alternatively it should be eight
19   percent.  So I mean to say that, well, you know, they
20   were just kind of not responding because there was
21   some dispute, that dispute, these papers came long
22   after the request from Johnson & Johnson.  The
23   Johnson & Johnson request came right after the
24   settlement was finalized.  So you know, saying that
25   without -- you know, it's just an argument, they're

Electronically signed by Theresa Kugler (001-297-027-4278)                     ca12888e-8bc9-4fea-856b-062117b475b0

```
 1    not substantiating any of the argument, but to say
 2    that, well, you know, we kind of knew this was on the
 3    horizon, so you know, we just kept all of it, the
 4    right thing, what you're supposed to do, just like in
 5    any transaction, when you have a disputed amount, you
 6    put that amount aside.  Maybe they say okay, well you
 7    have to hold back the disputed amount.  But if
 8    they're saying, as they've said in their papers, that
 9    that four percent difference was never disputed, then
10    what they should have done is told -- actually
11    responded, right?  So that's the first step, is
12    actually responding to Johnson & Johnson, instead of
13    just making argument now.  And they should have
14    responded and said, you know, this four percent is
15    not disputed, but we still need you to hold back
16    eight percent even though that's disputed.  None of
17    that happened and now we're in a position, and it's
18    again speculation here as to whether Johnson &
19    Johnson can actually turn that over.  And if that's
20    the case that it's sitting in escrow and they can
21    give us that four percent, then, you know, it is what
22    it is and that's fine.  But if that's not the case,
23    which is that's what's been suggested to my office,
24    that that's not the case that it's just sitting there
25    for access, then, you know, if anything, that should
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 50

 1    be incumbent on the PSC.  Because of their

 2    inadequacies, it should be incumbent on them to go

 3    and go after that money.  And if it's sitting there,

 4    great, you know, it's easy for them.  And if not, you

 5    know, that's leg work that they should have to deal

 6    with.

 7              But other than that, your Honor, again

 8    focusing on the four prongs not being met, I'd rest

 9    my argument, unless your Honor has additional

10    questions.

11              SPECIAL MASTER SCHNEIDER:  No

12    additional questions.

13              I do want to thank counsel for the

14    excellent argument, not unexpected, during today's

15    oral argument.

16              The record is closed.

17              As I said, I'm reserving decision, but

18    you will receive the opinion and order promptly.  So

19    if there is no further issues or matters to discuss,

20    we'll adjourn today's proceeding.

21              And again, I thank you all.  Have a

22    good day.  Bye.

23              SEVERAL ATTORNEYS:  Thank you, your

24    Honor.

25              (Hearing concluded.)

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

September 7, 2022

Page 51

```
 1              C E R T I F I C A T E

 2

 3        I, Theresa Mastroianni Kugler, a Notary Public

 4    and Certified Court Reporter of the State of New

 5    Jersey, do hereby certify that the foregoing is a

 6    true and accurate transcript of the testimony as

 7    taken stenographically by and before me at the time,

 8    place, and on the date hereinbefore set forth.

 9

10        I DO FURTHER CERTIFY that I am neither a

11    relative nor employee nor attorney nor counsel of any

12    of the parties to this action, and that I am neither

13    a relative nor employee of such attorney or counsel,

14    and that I am not financially interested in the

15    action.

16

17

18

19    _____

      Theresa Mastroianni Kugler,
20    Certified Court Reporter
      Certificate No. XIO857
21    Notary Public, State of New Jersey
      Commission Expires July 11, 2026
22    Commission No. 2410394
      Date:  September 7, 2022
23

24

25
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    ca12888e-8bc9-4fea-856b-062117b475b0

| A | | | |
|---|---|---|---|

**ability** 26:18,18 34:1 37:19
**able** 10:1 24:3 24:24 26:15,21 28:3,11,11 30:2,10,15,19 30:33 32:10,25 37:8,19 39:7 42:25 47:7
**absolutely** 8:1 17:17 34:8 41:21 46:2
**accepted** 16:10 17:10 18:10
**access** 8:23 11:22 12:5,10 12:13,22,24 13:2,17,21,21 15:18,21,25 24:25 25:2,4 25:16 26:1,7 26:10 28:22,24 30:24 31:21,25 40:5,19,23,24 41:12 47:17,19 47:24 48:2 49:25
**accessed** 18:3
**accurate** 51:6
**action** 51:12,15
**actions** 11:25
**actual** 12:3 31:23
**add** 12:16
**addition** 7:13
**additional** 50:9 50:12
**address** 34:14 37:19 38:14 43:25
**addressing** 6:22 7:5 27:24,25
**adjourn** 50:20
**administration** 33:14

**admit** 47:2,12
**advise** 21:7
**advised** 21:11 46:10,19
**agree** 16:9 19:5
**agreeing** 24:8
**agreement** 13:9 13:10,13 14:22 14:24 15:7 16:21 18:22 20:7 23:24 24:1,6,8,15 25:2,8,10,15 25:25 28:5,7 28:16 31:24 34:25 35:5,8 35:14 39:12,14 40:3,4 45:8
**agreements** 37:5 37:13
**ahead** 30:17 40:25 41:2
**ALABAMA** 3:17
**alert** 36:22
**alive** 33:24
**Allen** 3:15 22:15 39:3,3,22 40:1
**alleviate** 47:21
**allow** 16:7 27:13
**alternative** 20:9 20:11
**alternatively** 22:6 48:18
**ambiguity** 47:10
**amount** 30:14 49:5,6,7
**analyze** 28:12
**and/or** 35:10
**Angelica** 4:4 5:15
**anovick@ferr...** 4:8
**answer** 12:22 19:5
**answers** 31:3

**antithesis** 48:4
**anybody** 41:11
**anymore** 20:17 20:20,23
**apart** 39:23
**appearance** 5:8
**applies** 34:25 35:1,3,5,9,14 36:6,7,8,15,16 44:3
**apply** 22:7
**approach** 7:24
**appropriate** 8:7 13:18 25:6 26:2,5,6 37:17
**appropriateness** 7:6
**approve** 23:24
**approved** 19:14
**April** 9:23
**arbitrary** 25:17 27:10 28:15,23 29:3 42:20
**argue** 16:16,19 19:1 34:1 35:21 38:13 44:1
**argued** 33:19,23 43:22
**argues** 12:10 28:20
**arguing** 12:9 13:20 28:22 29:15 46:15
**argument** 1:5 5:5 6:13,17 7:20 8:1,10,22 8:25 9:2 11:20 11:21 12:2 15:17 16:20 17:8 19:15 20:6,9,11 27:9 33:1 34:14,16 35:19,22 36:1 36:24 37:7,25 44:22,24 48:10

48:25 49:1,13 50:9,14,15
**arguments** 6:20 8:15 9:7 19:22 24:23 27:23 32:13,14 33:1 33:6,7,22 34:7 38:25
**asbestos** 14:5,7 32:5,6,11,13 32:16
**ASHCRAFT** 3:9
**aside** 49:6
**asked** 15:25 27:1 42:16 43:1 44:9 46:8 48:7
**asking** 14:1 15:14 21:12,13 26:4
**aspect** 10:18 11:14 12:13
**aspects** 10:12,24 29:16
**assess** 16:7,24 20:1 44:4
**assessment** 7:7 7:10 9:5 12:4,8 17:12,13 18:13 19:6 20:2,13 20:19,21 21:8 21:14 37:17,23 38:1 39:8 43:5 43:8 45:21
**assessments** 7:11
**assign** 22:19 23:8
**assume** 11:20 12:1
**attacks** 8:5
**attorney** 30:18 51:11,13
**attorneys** 3:7,13 3:19 4:8,14

29:22 50:23
**audience** 13:22 15:11
**Audubon** 1:22
**August** 23:20
**available** 31:18 37:21 41:11
**avenue** 4:5 22:15
**avoid** 7:1 9:24 37:8 43:23
**aware** 37:1

| B | | | |
|---|---|---|---|

**B** 16:14,20 17:3 17:11 20:6 35:3
**back** 6:19 9:18 9:23 10:16 14:19 16:2,15 16:18 17:2 20:5 21:15,25 22:1 23:19 28:10 34:11 38:6 39:20 42:15 43:23 45:2 49:7,15
**bad** 30:7
**bankruptcy** 7:7 7:9,11 21:21 22:8,9,16 23:1 23:9 37:18 48:15
**based** 16:22 29:4 44:25 45:4,16
**basic** 8:15
**basis** 28:3 29:8,9 46:9,10
**Beasley** 3:15 22:15 39:2,3 39:22 40:1
**beginning** 10:17 18:23 27:21
**behalf** 5:11,14 5:16,21,23 6:4

9:13 14:21
23:17 27:2,7
32:22 33:6,7
**believe** 19:18
38:7,21
**benefit** 1:5 5:5
6:21 7:6,10,17
8:17 9:5 11:23
12:4,6 16:8,25
17:12,13 18:12
18:13 20:1,13
21:8,14 23:22
24:9,13,21
27:4 31:13
33:12 35:12
36:23 37:2,8
39:7,8 40:17
44:5 45:20
**benefited** 35:11
**benefitted** 18:11
32:20 33:2
34:9
**Berman** 3:21,21
6:3,4
**BIDDLE** 4:10
**big** 39:15
**bit** 23:19
**block** 14:18
**board** 41:23
42:21
**bound** 13:10
45:17
**box** 3:16 28:2
44:17
**branched** 21:21
**breach** 25:8
**BRICKELL** 4:5
**brief** 16:5 43:21
45:24
**briefed** 33:23
**briefing** 11:9
15:25
**briefs** 8:5
**bring** 11:7 20:8
39:2,9 40:9
**brought** 26:8

27:21 34:12
38:22 42:17
**burden** 8:10
**burdened** 22:17
**Bye** 50:22

_____

**C**

**C** 3:1 16:14
17:11 35:5,19
51:1,1
**Cabrera** 10:14
**call** 5:5 7:22
26:20 46:3
**calls** 46:18
**CAMPUS** 4:11
**cancer** 14:8,14
32:2,8,15,19
32:24 33:9,18
33:22,25 35:6
35:10
**capacity** 26:19
**capricious** 25:18
27:10 28:15,23
29:4 42:20
**case** 10:14,15,19
14:5,5,7,8 18:1
18:8,9 19:7,20
20:9 26:23
30:17,18 32:6
32:16 33:11,16
47:9 49:20,22
49:24
**case-by-case**
28:3 34:11
**cases** 11:2 24:18
30:5,7 32:12
33:10,14,24
34:2 35:1,2,3,5
35:8,10,14
36:6,8,9,16
37:1 39:16,20
39:22 40:6
41:6
**categories** 35:1
35:13 36:5,7
36:16

**category** 35:9,9
**causation** 41:8
**causes** 14:13
**certainly** 44:11
**Certificate**
51:20
**Certified** 1:20
2:9 51:4,20
**certify** 51:5,10
**challenges** 29:17
29:18,21,23
**chance** 38:14
**CHERRY** 3:5
**choice** 27:12
**citation** 44:12
**cited** 16:5
**Civil** 1:2
**claimants** 42:2
42:10
**claims** 35:3,5,10
**clarify** 40:20
**clear** 6:22 7:3
16:22 17:3
19:9,15 20:2
45:5 46:2,10
**clearly** 44:2
**client** 32:22
**clients** 35:6,10
**close** 9:9
**closed** 50:16
**CMO** 16:4,9
17:10 21:2,7
21:11 22:3
23:20,21,24
24:5 34:15
44:2,12,19
45:5,12,17
48:14
**co-lead** 6:1 9:1
25:15
**co-leads** 41:5
**come** 24:2 28:4
**coming** 15:20
**commencing**
2:13
**comments** 45:2

**COMMERCE**
3:16
**Commission**
51:21,22
**commitment**
27:7
**committee** 5:21
5:24 6:2,5 10:7
12:1 13:2
23:17 25:25
26:13 27:1,3,5
27:12 28:9,14
29:6,10,11
30:10 33:5
**common** 1:5 5:5
6:21 7:6,10,17
8:16 9:5 11:23
12:4,5 16:7,25
17:12,13 18:12
18:12 20:1,13
21:8,14 23:22
24:9,13,21
35:12 36:23
37:2,8 39:7,8
40:17 44:4
45:20
**Commonwealth**
2:11
**communicates**
21:4
**communication**
13:1 21:23
22:2
**communicatio...**
10:10 21:16
38:19 40:17
**COMPANIES**
4:15
**compared** 42:19
**compensation**
7:18
**completely** 7:24
**conceding** 22:6
**concern** 20:25
21:22 22:10,21
**concerns** 26:21

**concluded** 21:3
50:25
**conclusory**
11:11
**conduct** 8:25
**conferred** 33:12
**conflicts** 26:24
**confusion** 7:2
**consideration**
12:14
**consistent** 41:7
**consistently**
41:17
**construction**
45:17
**construed** 16:22
29:24
**consult** 41:14
46:14
**consultation**
13:4 14:3,23
27:14 46:25
**consultations**
47:11
**CONSUMER**
4:15,15
**consummated**
21:9
**contact** 27:5
**contacted** 26:25
41:5
**contention**
20:20,21
**context** 7:7,12
**contradiction**
11:10
**contrary** 29:24
30:20
**control** 26:13
30:3,25
**conversations**
10:7 41:18
47:21
**coordination**
33:16
**corners** 28:20

44:19
**correct** 11:21
  13:10,14 17:9
  18:9 41:21
**counsel** 6:12
  7:16 9:1,3,11
  10:13 11:17
  13:8 15:1 17:6
  20:15 23:11
  25:15 26:8
  31:11 32:3
  35:6,11 40:18
  50:13 51:11,13
**couple** 6:15
  24:22
**court** 1:1,20 2:9
  9:20 10:2,21
  11:2 18:1
  22:16 30:5,6
  30:17,18 35:3
  38:10,11,23
  39:18,18,20
  41:6,11,13
  51:4,20
**courts** 29:20
**create** 26:23
  28:2
**created** 45:14
**creates** 28:15
**criteria** 17:11
  34:19,24 35:20
  35:24 36:9,10
**critical** 34:16
**crux** 35:16
**current** 39:5
**cut** 20:16

    **D**
**D** 16:6,14,15,19
  17:2,11 20:4
  35:10 43:24
  44:3 45:1,23
**D10** 13:13
**Dan** 5:20 23:16
  41:3
**DANIEL** 3:4

**date** 51:8,22
**dates** 38:20
**Daubert** 33:23
  34:1,7
**day** 11:14 29:1
  50:22
**days** 29:14
**DC** 3:11
**deal** 8:3 50:5
**decide** 27:16
**decided** 24:12
  30:18 42:4
**deciding** 7:3,6
**decision** 6:14,14
  6:19 27:2,10
  27:11,22 29:4
  29:6 42:1,18
  42:21,22 46:1
  50:17
**decision-maki...**
  27:16 42:7
**decisions** 28:1
**declaration** 9:25
  10:3 46:6,11
  46:13
**deem** 26:2,4
**deemed** 13:18
  25:6 35:7
**defendant** 4:14
  33:9 37:12
**defendants** 32:2
  32:19 36:25
  37:3
**defendants'**
  36:22 37:19
**defending** 29:22
**denial** 25:17,18
  27:17 28:21,23
  29:8,9
**denied** 8:23 13:3
  14:23 15:18
  16:1 47:24
  48:1
**deny** 24:24
  25:16 26:1,6
  26:18 28:24

**denying** 13:21
**depositions** 13:5
  33:19 41:9
  46:22
**despite** 28:6
**details** 28:1
**detracts** 45:24
**develop** 30:16
  32:25 33:1
  42:8
**developed** 33:21
**development**
  33:16
**difference** 14:6
  23:6 26:6,9
  31:20 49:9
**different** 29:15
  29:22 31:1
  32:14 34:3,7
  35:13 36:15
**differently**
  13:15
**direct** 4:12
  40:16
**directly** 22:15
**disagree** 28:11
  37:16
**disagrees** 34:20
  34:23
**discoverable**
  47:11
**discovery** 33:19
**discretion** 13:25
  14:17 25:16,21
  25:23
**discuss** 50:19
**discussed** 10:13
**discussion** 9:4
  10:2 47:8
**discussions**
  24:10 27:22
  32:10,17 47:7
  47:12
**dispute** 13:3
  16:11 25:19
  47:17 48:21,21

**disputed** 10:5
  49:5,7,9,15,16
**disputes** 33:19
**dissatisfaction**
  29:5
**distinguish**
  39:10
**distinguishing**
  40:6
**distracted** 9:10
**DISTRICT** 1:1
  1:1
**divergent** 14:23
**diving** 27:25
**dlapinski@m...**
  3:7
**Docket** 1:2
**docketing** 33:14
**document** 19:13
**documents**
  10:22,23 12:23
  33:17
**doing** 9:17 26:24
  48:5
**dollar** 10:16
**door** 9:9
**dozens** 29:12,13
  33:18
**Dr** 14:9 26:13,15
  26:19 27:5
  29:16,17,18,21
  41:9,9
**drafted** 16:21
  19:13 45:5
**DRINKER** 4:10
**DRIVE** 3:4
**due** 37:9
**dwell** 7:21

    **E**
**E** 3:1,1 51:1,1
**earlier** 16:10
  33:21 34:10
**early** 42:8
**easily** 22:22
**EAST** 3:4

**easy** 21:23 22:2
  50:4
**effect** 28:22
**effort** 39:21
**efforts** 27:4
  31:13 33:12,24
**eight** 20:14,19
  20:24 22:1,6
  37:11,17 38:1
  43:6,10 48:8
  48:18 49:16
**either** 20:24
  39:17
**emergency** 9:22
**employee** 51:11
  51:13
**ended** 27:8
**ends** 30:20
**entered** 6:24 7:8
  7:14,15 24:6
  31:12 37:6
  39:6
**entering** 18:24
**entire** 12:14
**entirely** 34:2
**entitled** 22:13
**entitlement**
  20:12
**entries** 5:8
**entry** 23:20
**escrow** 49:20
**ESQUIRE** 3:4
  3:10,15,21 4:2
  4:3,4,11
**essentially** 23:5
**established**
  23:21
**eventually** 7:14
**exact** 21:5
**exactly** 16:18
  43:23
**example** 25:17
**excellent** 50:14
**exception** 44:13
**excuse** 41:3
  44:20

executed 24:7
exist 47:18
expect 6:14
expert 8:24
  13:14,17,25
  24:25 25:5,7
  26:7,10,20
  30:14,15,16,19
experts 10:8
  12:25 13:22
  14:2,3,9 15:10
  15:11 16:1
  24:11 25:4
  26:10 29:12,13
  29:16 30:3,11
  30:24,25 33:22
  40:17 41:7,8
  41:12 46:3,21
  47:8
Expires 51:21
explanation
  46:16
extent 22:11
  26:14 37:16

**F**

F 51:1
facilitate 14:20
facilitating
  41:15
fact 14:19 20:6
  28:6 29:10
  32:4 33:19
  38:22 44:1
  46:17
factor 39:15
factors 40:6
facts 19:7 28:5
  45:18
factual 31:17
  40:20
FAEGRE 4:10
failed 43:25
failure 25:6
fairly 41:23
false 31:14

familiar 8:12
familiarity
  32:12
families 42:11
far 17:2
faster 30:8
favor 19:19
FAX 5:6,18,24
  4:13
Federal 39:18
fee 7:6 8:17 16:8
  16:25 20:1,13
  20:13 21:8,14
  37:9 44:5
  45:20 48:8
feel 27:6 43:5
feeling 8:5
felt 41:25
Ferraro 4:2,3
  5:9,11,13,14
  9:14 10:6,25
  11:4,15 14:1,2
  19:19 22:16
  24:2,7,11,19
  25:1,9 26:16
  31:18 32:4,5,9
  32:20 33:3,6
  33:13 34:3,8
  36:22,24 37:5
  37:22 38:6,19
  39:13 40:3,14
  40:22,23 42:3
  42:5,5,19 43:4
  46:10,24 47:6
  48:3,15
Ferraro's 7:15
figure 14:11
file 24:12
filed 23:23 35:8
  38:9 39:4,18
  48:11,16
filing 7:9 38:4,6
  38:22
final 35:9
finalized 7:9
  48:24

finally 6:3
financially
  51:14
find 45:18
finding 19:19
finds 23:6
fine 14:18 49:22
firm 3:15 4:2 5:9
  5:11,20 8:23
  10:9 11:22
  12:21 13:9,21
  23:17 24:2,7
  24:12,19 25:1
  25:9 26:16
  28:3,6 31:18
  32:5,9,20 33:3
  33:6,13 34:3,8
  36:22,24 37:5
  37:22 38:19
  39:3,3,13,22
  40:1,4,15,15
  40:16,22,22,23
  42:3,5,5,19,23
  47:6
firm's 43:4
firms 15:6,7
  40:24 41:5,7
  41:23 42:2,10
first 8:21 9:21
  12:13 22:4,5
  24:23 32:6
  49:11
floor 9:8,11
  23:14 40:11
  43:17
FLORHAM
  4:12
Florida 4:6
  12:20 32:6,7
  47:10
flowery 7:22
focus 9:17 45:25
focuses 20:11
focusing 50:8
folks 48:2
following 26:12

35:1
follows 6:25
force 12:21
foregoing 51:5
foremost 9:21
FORMAROLI
  1:19
forth 9:19 16:18
  17:2 20:5
  43:24 44:3
  45:2 51:8
forward 27:9
  28:4 30:6,7
found 48:10
four 16:23 17:11
  19:16,17,25
  22:12,19,21
  23:5,7 28:20
  34:19,24 35:13
  35:20,24 36:5
  36:7,15 37:20
  44:3,6,7,8,19
  44:21 45:19
  49:9,14,21
  50:8
fourth 36:13
front 38:20
full 18:21 32:12
fund 7:17 37:15
  37:21
fundamentally
  14:23
funds 22:14,24
further 50:19
  51:10
future 6:20 7:10
  7:16 27:23

**G**

gee 19:12
general 41:8
GEREL 3:9
get-go 21:24
  46:23
getting 9:24
  30:6

Ghassan 10:8
give 17:23 25:8
  25:15 49:21
gleaned 11:13
go 14:18 16:15
  16:18 19:7
  22:18,20 23:1
  34:11 38:6
  40:25 41:1
  42:18 44:16
  50:2,3
goes 38:4 44:19
going 6:13 9:8
  9:17,18,24
  10:2 11:9,19
  17:2 19:2,21
  20:5 21:25
  23:13,19 30:4
  31:21 37:2
  41:1 42:15
  43:21 45:2,24
  46:7
good 5:10,13,19
  5:22,24 9:13
  23:15 28:24
  30:7 31:19
  42:6 50:22
grant 15:11
great 6:10 50:4
guys 46:6

**H**

handcuffed
  19:18
handling 17:25
happen 25:20
happened 19:1
  22:3 49:17
happening 30:8
happens 30:9
happy 22:19
hear 8:11 34:17
  44:10
heard 15:17
  44:24
hearing 18:23

50:25
**hearings** 29:14
**held** 21:15
**help** 14:20
**hereinbefore**
51:8
**hey** 36:25 46:6
**HILL** 3:5
**hire** 13:5
**hit** 31:19 36:21
**hold** 22:1 49:7
49:15
**holdback** 23:24
24:1,6 45:8
**holding** 21:25
**honor** 5:19,22
9:12 14:4 16:3
18:17,22,23
19:4,18,23
21:1,19,23
22:10 23:2,6
23:16,18 24:23
25:3,13,22
26:9 27:19,20
28:12 29:14,15
31:4,10,20
32:11 33:20
34:12,22 36:3
36:19,20 37:11
38:3,18 39:1
39:24 40:7,8
41:4,20 42:12
42:15,24 43:18
44:5,9,15,18
44:23 45:3,16
45:17,25 46:1
46:20 48:7,17
50:7,9,24
**Honor's** 9:15
12:16,22 16:9
19:6
**hope** 8:2
**horizon** 49:3
**Horse** 1:21
**hours** 30:13
**hundreds** 30:13

**hypothetical**
17:23,24 28:19
28:25
**hypotheticals**
18:25 44:16

**I**

**IDEOCONFE...**
1:7
**ignored** 46:18
**ignores** 31:15,17
**impact** 6:20
27:23 37:18
**implemented**
42:21
**important** 11:8
13:23 16:3,13
17:7,8 19:25
30:9 42:3
46:20
**inadequacies**
50:2
**inappropriate**
7:25
**incapacitated**
9:23
**inception** 33:15
**includes** 19:16
29:12 36:5
**including** 29:16
36:13
**inclusive** 36:5
36:12
**incumbent** 50:1
50:2
**independent**
11:25 13:21
**indicated** 33:21
42:14
**indiscriminate**
42:7
**individual** 41:6
41:13
**individually**
41:14
**individuals** 46:5

46:14
**information**
11:12 26:22
31:17
**initially** 22:13
**inquiry** 42:13
**instance** 19:2,3
19:20 20:3
25:20
**intended** 35:23
**intention** 10:1
18:25
**interaction** 28:8
**interactions**
28:13
**interested** 51:14
**interesting**
26:11 32:3
**interpretation**
17:10 18:9
**interrupting**
15:3
**introduction**
27:13
**involved** 38:18
**involvement**
29:21
**involves** 24:18
**issue** 6:21 7:8
20:17,17,23
21:1,19 23:2,3
24:11,16,18
30:5 34:4,11
34:16 38:4,9
38:23 40:15,20
44:18 47:25
**issues** 6:15,23
7:3 8:4,13 9:6
9:16 24:16
25:19 27:24,25
37:22 45:13,13
45:22 50:19

**J**

**J&J** 5:4 6:7 9:4
11:24 38:1

**Jagolinzer** 9:22
46:5
**James** 4:3 5:14
**james@ferrar...**
4:7
**Jersey** 1:1,22
2:11 3:5 4:12
51:5,21
**JOEL** 1:15
**Johnson** 1:5,5
4:14,14,14,14
4:15,15 10:14
10:15,19,19,20
10:20 11:2,2
12:19,19 14:6
14:6 21:4,4,7,7
21:10,10,17,17
21:20,20 22:8
22:12,12 48:12
48:12,22,22,23
48:23 49:12,12
49:18,19
**Johnson's** 22:8
**JR** 4:3
**jschneider@...**
1:15
**Judge** 22:5
33:20
**July** 51:21
**Junior** 5:14
**jurisdiction** 35:2
**justification**
13:20 28:21
46:15
**justifications**
46:21
**justified** 9:1

**K**

**K** 3:10
**keep** 8:2 39:22
**keeping** 19:6
**kept** 33:24 49:3
**key** 12:9,10
**keys** 18:3,7
**kind** 9:18 16:15

18:24 42:7
45:24 48:7,20
49:2
**kingdom** 18:4,7
**knew** 49:2
**know** 6:18 8:13
9:8,25 13:15
14:17,19 15:19
15:22 16:15
18:24 20:9,14
21:20 22:24
23:13 30:1,4
30:22 32:12
33:3 34:19,24
36:25 37:10
38:5 40:20
44:17 45:6
47:9,18,19,22
48:7,19,24,25
46:2,3,14,21
49:25 50:4,5
**knowledge** 11:3
40:12,13
**known** 4:15
**Kugler** 2:9 51:3
51:19
**Kunen** 4:2 5:10
5:11 9:12,13
11:18 12:12
13:11,23 15:13
17:17,19 18:16
18:19 20:25
43:18,21

**L**

**L** 4:3,4
**LAKE** 3:4
**language** 7:22
7:24 8:4 16:13
16:22 19:10,16
21:5 36:11,12
45:5,9,11,13
45:13
**Lapinski** 3:4
5:19,20 23:15
23:16 25:12,13

25:22 26:8
27:18 29:2,9
31:6,9 34:14
34:22 35:16,17
36:2,18,19
38:3,17 40:21
40:25 42:15
43:14
**Laura** 10:8
**law** 3:15 4:2 5:9
5:11,20 8:22
10:6,25 11:4
11:15,22 13:9
13:21 15:6
24:2,7 25:9
28:3,6 37:5
40:1,4,15,16
40:22 42:2,10
42:23
**Lawrence** 3:21
6:3
**lawyer** 17:25
**lawyers** 15:7,9
42:6
**lberman@lfsb...**
3:25
**lead** 7:16 9:2
10:13
**leading** 10:17
**leave** 8:8
**left** 44:15 46:16
**leg** 47:3,13,22
50:5
**legitimate** 44:24
**Leigh** 3:15 6:1
40:25
**leigh.odell@b...**
3:18
**let's** 12:1 35:16
**level** 8:3 29:20
**levels** 29:17
**leverage** 12:20
**levied** 45:21
**LEVIN** 3:21
**liability** 1:6
10:18,25 11:14

32:4 47:25
**license** 2:10
**lightly** 34:5
**likening** 39:4
**limit** 19:2
**limited** 19:6
**link** 32:23 33:2
**listen** 36:25
**lists** 36:7,15
**litigants** 33:13
**litigation** 1:6
10:20 26:16
31:2 32:13,15
33:15,18 39:4
39:6,17 40:1
47:6
**litigations** 10:21
**little** 23:19
**live** 41:13
**LLC** 3:3 22:9
**LLP** 3:9,21 4:10
**long** 22:25 48:21
**look** 13:13 16:8
16:14 21:24
38:7
**looking** 12:14
16:5 25:1
28:10
**looks** 30:2
**lot** 43:22 44:25
**LTL** 21:21 22:8
**LTL's** 7:9

**M**

**M** 4:11
**main** 30:1 45:25
**maintain** 30:11
30:23
**major** 30:23
**making** 11:21
17:24 33:5
48:10 49:13
**manage** 30:2,11
**management**
22:9 29:13
33:15

**Marc** 4:2 5:10
9:13
**MARKETING**
1:5
**Master** 1:15 5:1
5:3,17 6:6,9
7:2,5 11:16,19
13:7,12 15:1
17:5,18,22
18:18 20:15
23:10 25:11,14
26:3 27:15
28:17 29:7
31:5,8 34:13
35:15,18 36:17
37:24 38:12
40:10 43:13,19
50:11
**Mastroianni**
1:19 2:9 51:3
51:19
**matter** 2:8 39:11
45:15
**matters** 10:12
19:3 50:19
**MDL** 5:4 7:18
8:20 11:6
14:21 17:14
18:13 19:3
20:7 21:3
24:20 25:3
30:9,10,17,21
31:13,16,18,21
31:22,23,25
32:1,8,18,19
32:25 33:8,16
33:25 34:6
35:2,4 39:19
39:23 40:2
41:8 47:4
**mean** 20:16
45:12 48:9,19
**meaning** 26:12
**means** 13:19
28:16

**meant** 19:13,14
44:11
**medical** 9:22
48:1
**meet** 19:25
35:23 36:9,10
**member** 33:4
**mention** 6:12
**mentioned**
12:18 34:10
**merely** 12:5
**merits** 8:3 25:19
**mesothelioma**
10:14 14:5,7
**met** 17:4,11
19:17,18 20:2
20:4,6 34:19
34:24 35:21
44:7,8,14,22
45:20 50:8
**MIAMI** 4:6
**Michelle** 3:10
5:23 41:4
**migrates** 14:13
**million** 10:16
**millions** 10:22
**misunderstan...**
7:1
**mkunen@ferr...**
4:7
**money** 22:14
23:8 30:14
50:3
**MONTGOM...**
3:17
**months** 24:14
47:22
**Moore** 10:14
**moot** 20:17
**morning** 5:10,13
5:20,22 8:2
9:13 17:2
23:15
**motion** 1:5 5:6
6:23 7:4 8:9
23:23,25 24:12

27:24,25 28:20
38:5,6,9,22,24
39:3,5,10,11
39:16,19 48:11
48:16,18
**motions** 33:23
**Motley** 3:3 5:20
23:16
**movant** 5:8,12
5:14,16 7:4 8:9
8:16 9:14
28:20 29:3
35:21 37:8
38:13 40:18
43:16 48:15
**movant's** 7:4
34:14,18 35:18
39:2
**move** 31:4 36:18
**moved** 30:6,7,17
**moving** 7:22
**mparfitt@ash...**
3:12
**multidistrict**
31:2
**multiple** 21:16
29:17

**N**

**N** 3:1
**narrow** 7:3
**nature** 24:20
**necessary** 12:6
36:3
**need** 19:17 43:9
47:22 49:15
**needed** 15:14,15
**needs** 44:14
**negotiate** 34:4
**negotiations**
37:1
**neither** 51:10,12
**never** 22:3 36:25
49:9
**New** 1:1,22 2:11
3:5 4:12 51:4

51:21
nine 10:16
non-issue 22:23
Notary 2:10
  51:3,21
note 43:3
noted 24:24
noticeably 43:25
notify 38:1
Novick 4:4 5:15
  5:15
number 2:10
  16:4,9 21:2
  45:12,17
NW 3:10

**O**

O'Dell 3:15 6:1
  6:1 10:6 24:10
  40:12,21 41:3
  41:21 42:13,17
  43:14 46:13
OB 14:10
object 7:10,16
  24:4 45:6,9
objecting 45:7
  45:11
objection 23:25
  24:2
obligated 12:8
obligation 27:6
  36:22,23 37:3
  37:4,4 43:11
obviously 21:4
October 31:16
offer 14:9
office 47:20
  49:23
okay 6:9 9:11
  17:18 18:2,18
  23:10 36:17
  43:16 49:6
once 27:20
  37:22
one-off 18:8
ones 45:10,12

open 29:18
opened 29:21
opens 28:1
opinion 50:18
opinions 29:23
  29:25 30:16
opportunity
  33:10
oral 1:5 5:5 6:13
  6:17 7:20 8:1
  50:15
order 6:24 7:1
  7:13,15 12:8
  16:24 17:12
  18:24 20:1
  23:20 24:13,21
  33:8 34:23,24
  36:6,7,8,14,16
  39:5,8,10,12
  50:18
orders 7:8
originally 23:20
outlier 42:4
outset 43:4,9
outside 21:3
  25:9 28:19
ovarian 14:8,13
  18:1 32:2,8,15
  32:19,24 33:9
  33:18,22,25
  35:6,10
ovaries 14:13
overall 27:4
owed 20:22
owing 37:9

**P**

P 3:1,1 4:2
P.O 3:16
PA 4:2
pace 30:8
package 41:10
packages 47:18
pages 10:22,23
paid 8:17 17:12
  17:14

Pandora's 28:2
  44:17
papers 7:22 8:12
  9:19 10:3,12
  11:8 19:11
  20:10,23 21:6
  22:4,5,10 23:4
  38:25 44:23
  46:4 48:21
  49:8
Paragraph
  13:13 17:10,16
  18:10 34:15
paraphrasing
  13:17
Parfitt 3:10 5:22
  5:23 41:4,20
  42:18 43:15
Parfitt's 41:18
PARK 4:12
part 8:19 14:21
  21:10 22:13
  25:7 27:15
  39:21 41:10
  48:5,7
participant 24:8
participants
  33:8
participate 9:3
participation
  13:9 15:6 24:8
  24:15 25:1
  28:4,7,16
  31:24 34:25
  35:7 39:12,14
  40:3,4
particular 13:16
  19:19,20 25:4
  28:10 30:18,20
  45:18
particularly
  41:8
parties 51:12
paths 19:8
pay 12:8 18:12
  23:5,7 28:8

39:7,8 43:5,8
paying 12:4
payment 9:4
  37:22
pending 24:19
  38:10,11,25
  39:17,19
Pennsylvania
  2:12 3:23
people 15:20,25
  46:18 47:12,14
percent 20:14
  20:14,19,21,24
  21:25 22:1,7,7
  22:12,19,21
  23:5,7 37:10
  37:11,12,13,17
  37:20 38:1
  43:1,6,7,10,10
  43:12 48:8,9
  48:19 49:9,14
  49:16,21
percent/eight
  43:1
percentage 21:8
  21:13 48:8,13
perfectly 6:22
period 29:11
  30:12 38:11
person 18:10
personality
  25:19 26:5
personally 10:18
  10:22
perspective
  10:11 29:18
PHILADELP...
  3:23
phone 26:20
  41:18 46:3
pick 46:3
picked 26:17
Pike 1:21
place 8:1 12:15
  23:21 51:8
plaintiff's 32:7

47:6
plaintiffs 3:7,13
  3:19 4:8 14:21
plaintiffs' 5:21
  5:23 6:2,4 12:1
  13:1 23:17
  25:24 26:13
  27:1,12 28:9
  28:13 29:6
  30:10 33:4
  43:2
Plunkett 10:8
  14:10 41:9
point 7:19 12:22
  13:24 14:12
  15:23 17:7
  18:21 19:11,22
  19:23 20:8
  26:9,11 27:21
  28:10 31:19
  34:12 39:1
  42:24 45:22
  46:20 48:6
pointed 25:3
  32:3 46:9
points 13:24
  24:22 31:4,10
  36:20 39:9
  40:9 42:17
policy 41:22
  42:9
portion 7:17
position 18:15
  18:16 22:23
  25:21,23,24
  32:22 34:17,18
  37:11 41:7,16
  41:22 42:9,11
  43:4,11 44:15
  45:4,16 49:17
potential 7:2
  21:1
potentially
  22:25
powder 1:5 14:8
  32:24

| | | | | |
|---|---|---|---|---|
| practical 15:9 15:12,22 | 50:18 | **Q** | 19:10,12,14 20:6,12 34:16 | remand 39:20 |
| **PRACTICES** 1:6 | prongs 19:17,17 20:1 44:3,7,14 | qualified 37:15 | 44:19 46:19,20 | **REMOTE** 1:6 2:12 |
| pre-bankruptcy 37:21 | 44:22 45:19 50:8 | question 6:18 11:17 13:8 | realty 15:24 45:3 | reply 16:16 43:20 |
| prejudice 7:15 | propriety 7:11 | 14:14 15:2 | reason 12:18 | **Reporter** 2:9 |
| prejudiced 22:18 | protection 42:1 protocol 23:22 | 17:6 25:12 31:3 40:11 | 15:18 26:6 27:19 28:24 | 51:4,20 **Reporting** 1:20 |
| preparing 10:24 | provide 25:2,7 | 42:16,25 43:6 | 37:7 42:4 46:8 | request 14:15 |
| prerequisite 12:4 | 38:8 provided 21:17 | 43:7 44:9 46:9 questions 40:9 | reasonable 27:17 28:14 | 42:2 46:11 48:22,23 |
| present 39:11 | 46:16 | 47:1,2 50:10 | reasonableness | requested 15:10 |
| presented 6:23 7:4 9:16 19:4 | provides 13:16 19:11 | 50:12 quickly 36:21 | 42:18 reasoning 15:22 | 23:4 40:19,22 40:24 48:12 |
| 19:24 | provision 13:16 | quote/unquote | reasons 30:2,23 | requesting 14:2 |
| preserving 46:21 | prudent 42:1,9 **PSC** 11:5,13 | 8:20 11:23 17:14 25:5 | **REATH** 4:10 recall 40:13 | require 16:23 required 16:24 |
| pressure 32:1,18 33:8 | 12:10 13:18,20 13:24 14:17,20 | 38:16 quoted 21:6 | receive 7:17 50:18 | 21:6,13 22:3 48:13 |
| prevented 10:9 48:2 | 15:10 16:7,12 16:13 17:21 | **R** | received 35:11 recognition 8:6 | requirement 21:2 |
| problem 22:7 | 18:5 20:12,22 | **R** 3:1,4 51:1 | 20:18 | reserve 6:14 |
| procedures 24:9 | 21:5,6,11,13 | radio 21:15 | record 5:2,4 | reserved 7:12 |
| proceeding 23:1 50:20 | 21:16,18,24 22:2,12,14,19 | 38:16,17,21,24 43:2 | 8:13 15:5 40:14 41:21 | reserving 50:17 resolved 37:23 |
| proceedings 2:7 | 23:4,14,23 | raise 7:5 23:3 | 48:11 50:16 | respond 36:1 |
| process 15:15 | 24:24 25:6,7 | raised 24:15,16 | reference 39:2 | 37:25 41:1,1 |
| produced 33:17 | 25:15 26:19,25 | 31:11 36:24 | 40:14 | responded 49:11 |
| product 8:23,24 | 29:18,20 33:12 | 38:10 | referring 38:19 | 49:14 |
| 11:4,12,23,25 | 34:17,19,22 | rational 28:24 | reflection 8:6 | respondent 8:11 |
| 12:3,6,7,17 | 37:25 38:7,15 | reach 10:6 46:6 | reflects 15:5 | 11:11 15:19 |
| 13:14,17,25 | 48:5,12 50:1 | 46:17 | regard 10:4 | 16:17 19:11 |
| 14:1,15,18 | **PSC's** 40:17 | reached 21:11 | 11:11 26:12,22 | respondent's |
| 18:4,11 24:25 | **Public** 2:10 51:3 | 26:14 38:15 | 36:21 37:10 | 15:24 |
| 25:3,5,7,16 | 51:21 | reaches 48:3 | 42:25 | respondents |
| 26:7,10 30:3 | purely 17:23 | reaching 12:24 | regarding 6:21 | 5:18 43:22 |
| 30:24 31:21,22 | purpose 14:24 | reactions 28:13 | 24:11 | responding |
| 31:24,25 35:12 | 47:4 | read 8:12 11:8 | related 11:5 | 48:20 49:12 |
| 39:25 40:2,5 | purposes 11:20 | 13:15 15:5 | 25:18 28:5 | response 16:17 |
| 47:15 | pursuant 25:25 | 17:16,20 20:23 | relates 23:19 | 19:10 21:16 |
| **PRODUCTS** 1:5,6 | 35:4 37:13 put 23:21 27:2,5 | 34:15 reading 40:13 | 25:4 39:2 42:19 | 24:22 38:8 44:10 |
| professional 8:3 | 27:9 30:13 | realistic 15:12 | relative 51:11 | rest 10:3,3 19:21 |
| prolonged 30:12 | 32:1,18 33:8 | reality 45:15 | 51:13 | 19:21 20:10 |
| promptly 6:15 | 37:20 38:23 49:6 | really 11:10 13:3 14:14 15:23 16:19 | reliance 11:4 relied 30:4 | 50:8 resting 20:10 |

result 11:24
RETIRED 1:15
Rice 3:3 5:20
  23:16
right 7:9,16 12:2
  12:5 13:12
  18:8 21:22
  24:3,24 25:9
  26:1 37:15
  40:5 44:19
  47:19 48:23
  49:4,11
rights 15:8
role 14:19
room 33:5
Round 39:4,6,10
  39:11,17 40:1

**S**

S 3:1,21
Saed 10:8 14:9
  26:14,15,19
  27:5 29:16,17
  29:18,21 41:9
sake 12:2
SALES 1:6
save 29:1
saw 9:19
saying 8:14
  21:24 24:12
  36:12 44:12
  47:5 48:24
  49:8
says 34:25 36:6
  36:14 44:13
Schneider 1:15
  5:1,3,17 6:6,9
  11:16,19 13:7
  13:12 15:1
  17:5,18,22
  18:18 20:15
  23:10 25:11,14
  26:3 27:15
  28:17 29:7
  31:5,8 34:13
  35:15,18 36:17

37:24 38:12
  40:10 43:13,19
  50:11
science 32:25
scientific 14:12
  14:14 47:2
scope 6:19 27:22
second 8:22
  19:23 39:15
section 13:24
sections 16:7,24
SEDRAN 3:21
see 5:24 6:16
  22:20 31:1
seen 15:24
sent 39:20
separate 13:22
  39:22
September 1:12
  24:5,7 51:22
set 15:16 44:3
  45:18 51:8
settle 33:9
settled 18:7
  24:19 35:4
settlement 8:20
  11:24 12:15,21
  17:15 18:8,14
  20:7 21:3,4,5
  21:10,12 32:10
  32:17 35:4
  37:15 48:24
settlements 7:8
  8:18,19 9:3
  31:11,12 34:4
share 26:21
Sharko 4:11 6:8
  6:8 29:15
  32:21
short 20:16
side 32:2,5,8,13
  32:15,19 33:25
  43:2
sign 31:24 40:2
  45:9
signed 13:9

14:22 15:6
  16:10 24:14
  28:4,6 35:7,7
  39:13 40:4
significant 30:1
signifies 35:20
silence 21:15
  38:16,18,21,24
  43:2
similar 33:10
simple 45:16
simply 31:14
  46:3
single 23:25
  24:1
sit 37:16
sitting 33:5
  49:20,24 50:3
situation 15:17
  15:20 17:23
  28:12,15,19,25
  34:8 39:5 45:3
  45:19,21 46:2
six 32:21,24
six-year 29:11
solely 19:1
sooner 24:17
sorry 15:2 31:6
sort 7:24 15:15
sought 12:24
sound 28:18
sounds 45:9
  48:9
South 1:21
speak 11:15
  13:22 15:10
  23:13
Special 1:15 5:1
  5:3,17 6:6,9
  7:2,5 11:16,19
  13:7,12 15:1
  17:5,18,22
  18:18 20:15
  23:10 25:11,14
  26:3 27:15
  28:17 29:7

31:5,8 34:13
  35:15,18 36:17
  37:24 38:12
  40:10 43:13,19
  50:11
specific 38:20
specifically 6:24
  7:14 8:23 10:7
  11:1 14:9
  35:21 46:4
speculation
  49:18
spent 17:1 29:14
  30:14
spot 9:16
start 5:7,8 6:11
  8:10,14 23:18
  27:20
started 7:20
  32:16
starting 19:7
state 2:11 6:24
  7:14 10:21
  11:2 12:20
  18:1,8 29:19
  30:5,6,17,18
  39:17,20 41:6
  41:11,13 51:4
  51:21
stated 18:22
statement 12:16
  16:10,23 29:2
  31:14,15,15
  40:18
statements 9:25
  10:4 11:11
states 1:1 44:2
  44:20,21 47:10
stay 21:22 22:9
steering 5:21,24
  6:2,4 10:7 12:1
  13:1 23:17
  25:24 26:13
  27:1,3,4,12
  28:9,14 29:6
  29:10,11 30:10

33:4
stenographica...
  2:8 51:7
step 16:2 25:9
  49:11
straightened
  6:16
STREET 3:10
  3:16,22
strictly 16:21
structured
  36:11
stuff 10:25 11:3
  11:12 45:23
  46:23 47:15,20
  48:1
subject 24:13,20
  35:2 37:2
  39:16,19
submitted 9:20
  11:9 16:12
  20:11
subparagraph
  35:19
Subsection
  16:15,19,20
  17:2,3 43:24
  45:1,23
Subsections
  16:6
subsequently
  21:20
substance 44:1
substantiating
  49:1
successful 32:11
  34:6
successfully
  33:23 34:1
sudden 22:23
sufficient 19:15
suggested 49:23
suit 45:10
SUITE 3:4,22
  4:5
summaries 18:6

summation 9:15
19:24
supervised 8:20
17:14 18:14
20:7 35:4
support 33:1,22
suppose 25:17
25:18 48:4
supposed 49:4
sure 11:18 22:6
35:17 38:13
40:12 41:19
surreply 16:17
Susan 4:11 6:8
susan.sharko...
4:13
systematized
41:24

**T**

T 51:1,1
take 16:2 30:19
taken 2:8 29:23
32:22 34:5
41:10 51:7
talc 14:13 26:16
talcum 1:5 14:7
32:23
talk 26:15 38:14
44:17 45:7
46:7,21 48:3
talking 8:18
16:4 18:25
telephone 26:17
tell 14:3 46:7
tenor 34:2
tens 10:23
term 36:5
terms 12:17
13:10 14:12
25:10,25 44:20
44:21
testify 41:13
testimony 51:6
thank 5:24 9:12
23:10 26:20

31:9 36:19
43:14,18 50:13
50:21,23
Theresa 2:9
51:3,19
thing 8:7,21
16:3 39:24
41:19 49:4
things 6:12 27:8
32:2,5 33:9,25
45:1,8
think 7:23 9:7
10:5 11:21
13:19,23 15:16
15:23 16:4
17:7 19:15,22
19:23 20:4,16
20:17,18,19
27:3,18,19
28:7,18,25
30:22 31:1,13
32:3 34:18
36:2,4 37:3,6
37:18 38:4,5
38:17 42:3,16
44:11 46:19
third 7:19 8:25
39:24
thought 31:19
thousand 33:17
42:10
thousands 10:23
three 6:12 8:15
44:6,7
thrown 30:16
tied 46:22
time 9:24 12:23
12:25 15:3,9
22:5,5 23:19
23:24 28:10
29:12 30:12
34:3 38:11
44:4 46:16
51:7
timeliness 38:4
timely 21:11

37:25
timing 38:7
today 9:21 10:2
10:13 44:24
47:2
today's 50:14,20
told 35:9 46:4,5
48:2 49:10
tone 34:1
topic 10:12 31:4
totally 34:7
touch 27:2
toxicologist
14:10
transaction 49:5
transcript 2:7
51:6
transcripts 18:5
transferred
39:18
treated 40:23
41:23
trial 10:24 12:18
41:10 46:23
47:18
trials 41:12,14
tried 10:15
42:12 46:17
trigger 12:6
true 51:6
try 14:17 16:18
46:6
trying 11:1
14:11 15:21
43:23 46:22,24
46:25
turn 9:8 40:11
49:19
turned 10:21
32:8
two 6:18 10:8
12:25 14:3,8
16:1 36:20
40:6 44:6,7
45:2
type 8:4 14:15

24:1 27:6
37:14 38:8
42:9

**U**

ultimate 27:11
ultimately 47:23
unable 22:11
unambiguous
16:22 17:3
19:9 45:4
uncertain 44:20
44:21
underlying 8:4
30:5
understand 37:5
38:12
understanding
9:6 43:3
understood
35:22
undisputed 13:8
unexpected
50:14
unfettered 25:2
25:16 41:12
unfiled 35:8
unique 10:11
42:22
UNITED 1:1
unjustified 29:4
42:20
unlimited 25:21
25:23
unnecessary
7:25
use 7:23 12:3,7,9
12:13,17 14:17
30:19 31:23
32:23 36:4
39:25 40:2
41:11
USMJ 1:15

**V**

various 29:19

37:13
verdict 10:15,16
12:19 32:6,7
32:11
versus 14:7
37:11 43:10
48:9
vetted 47:3,14
VIDEOCONF...
2:12
Videoconfere...
1:20

**W**

wait 22:25
WALNUT 3:22
want 6:21 7:21
7:23 12:12
15:4 16:2
23:18 28:11
30:23 41:1
42:24 43:3,20
45:22 50:13
wanted 6:12,15
23:3 30:19
47:20
wants 14:17
29:25
WASHINGT...
3:11
wasn't 12:22
13:5 14:1,15
15:21 24:9,13
24:14 38:18
40:15 42:22
43:6 47:19
way 6:18 16:9
17:13 29:24,24
30:20 36:11,13
41:25 45:6
we'll 5:8 8:7,10
8:11 20:22
23:7 50:20
we're 5:4,4 8:18
12:14 15:25
16:4,5 18:24

21:24,25 22:11
22:18 37:1
46:7,16 49:17
**we've** 15:24 17:1
19:22 20:10
29:14 33:18,19
33:21
**WEDNESDAY**
1:12
**weeds** 10:18
14:4
**weigh** 43:10
**went** 10:22
43:22 46:17
**weren't** 42:6
**whatsoever**
21:17
**White** 1:21
**wish** 10:1
**withheld** 21:9
37:12,14 38:2
**witness** 13:25
25:5
**Wolfson** 33:20
**women** 42:10
**word** 8:12 23:12
35:19,24,25
36:3,4 43:16
44:6
**words** 38:15
**work** 7:18 8:23
8:24 11:4,5,12
11:23,25 12:3
12:6,7,17
13:14,17,25
14:1,15,18,20
18:4,11,12
24:25 25:3,5,7
25:16 26:7,10
26:22,24 27:7
29:10 30:3,13
30:15,24 31:15
31:21,22,23,25
32:1,4,9,17
35:12 39:25
40:2,5 41:25

47:3,13,15,22
47:23 50:5
**workable** 15:12
**worked** 14:4
30:12 33:21
47:13
**working** 26:23
29:12 31:22
47:5
**world** 44:16
**written** 16:11,12
17:20,20 18:20
36:14
**wrong** 9:7 13:15
**wrote** 44:2

## X

**XIO857** 51:20

## Y

**Yeah** 35:15
**year** 24:10
**years** 32:21,25

## Z

**zero** 43:11
**Zoom** 1:6 2:12
29:14

## 0

**07932** 4:12
**08002** 3:5
**08106** 1:22

## 1

**10:01** 2:13
**101** 3:4
**11** 51:21
**12** 20:14,21
21:25 22:7
37:10,12,13
43:1,7,10 48:9
**127** 15:6,7,9,13
**15** 24:14
**1825** 3:10
**19106-3697** 3:23

## 2

**2006** 3:11
**2016** 31:16
**2017** 23:21
**202-759-7648**
3:12
**2020** 10:17
23:23,25 24:5
24:7
**2022** 1:12 51:22
**2026** 51:21
**210** 3:4
**215-592-1500**
3:24
**215-592-4663**
3:24
**218** 3:16
**22** 24:19
**24** 8:19 9:3
24:18
**2410394** 51:22
**25** 33:21

## 3

**3:16-md-2738...**
1:2
**305-547-9800**
4:6
**30X100085700**
2:10
**33131** 4:6
**334-954-7555**
3:18
**36104** 3:17
**38** 42:10
**3800** 4:5

## 4

**4** 17:10,16 18:10
34:15
**4160** 3:16

## 5

**500** 3:22
**510** 3:22
**515** 1:21

## 6

**600** 4:5,11

## 7

**7** 1:12 23:21
45:12 51:22
**750** 33:17
**7A** 16:4,9 17:10
21:2 24:5
34:15 44:12
45:5,17

## 8

**800-674-9725**
3:11
**800-768-4026**
3:6
**800-898-2034**
3:17
**856-488-7797**
1:16
**856-546-1100**
1:23
**856-667-0500**
3:5
**856-667-5133**
3:6
**877-882-1011**
3:23

## 9

**973-360-9831**
4:13
**973-549-7350**
4:12