# EXHIBIT 1

The Honorable David Whedbee<br>
Date of Hearing: August 25, 2023

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR THE COUNTY OF KING

| | |
|---|---|
| JACK LaSALLE and DIANNE LaSALLE, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>**AMERICAN INTERNATIONAL INDUSTRIES**, sued individually, as alter-ego of, and as successor-in-interest to PINAUD, INC., ED PINAUD, INC., d/b/a ED. PINAUD, THE NESLEMUR COMPANY, formerly known as the NESTLE-LE MUR COMPANY; **ARYZ CORP.**; **BARRETTS MINERALS INC**; **BAYER CONSUMER CARE HOLDINGS LLC**, sued individually, as alter-ego of, and as successor-in-interest to SCHOLL, INC.; **BRENNTAG NORTH AMERICA, INC.**, sued individually, as alter-ego of, and as successor-in-interest to MINERAL AND PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER, CLARK & DANIELS, INC.; **BRENNTAG SPECIALTIES, LLC**, individually and as successor-in-interest, parent, alter ego, and equitable trustee to BRENNTAG SPECIALTIES, INC. (formerly known as MINERAL AND PIGMENT SOLUTIONS, INC.) sued individually, as alter-ego of, and as successor-in-interest to WHITTAKE, CLARK & DANIELS, INC.; **CHARLES MATHIEU, INC.**; **CHATTEM,** | No. 23-2-08165-0 SEA<br><br>ORDER GRANTING DEFENDANTS JOHNSON & JOHNSON HOLDCO (NA) INC., AND KENVUE, INC.'S MOTION TO DISMISS |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

JUDGE DAVID WHEDBEE<br>
King County Superior Court<br>
516 – Third Avenue, E-201<br>
Seattle, WA 98104

1 | INC., a subsidiary of SANOFI-AVENTIS U.S. LLC, sued individually, as alter-ego of, and as successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY; **COSTCO WHOLESALE CORPORATION: ERX CORP.**; **GLAMOUR INDUSTRIES CO.** (formerly known as BETTY K. DEVELOPMENT CO.; **JOHNSON & JOHNSON**; **KENVUE INC.**, individually and as successor-in-interest to JOHNSON & JOHNSON BABY PRODUCTS COMPANY ("Old JJCI"); **JOHNSON & JOHNSON CONSUMER INC.**, individually, and as successor-in-interest, parent, alter ego, and equitable trustee of JOHNSON & JOHNSON CONSUMER INC. and JOHNSON & JOHNSON BABY PRODUCTS COMPANY ("New JJCI"); **MERCK & CO., INC.**, sued individually, as alter-ego of, and as successor-in-interest to SCHOLL, INC., **PFIZER INC.**; **PTI ROYSTON, LLC**, a/k/a PHARMA TECH INDUSTRIES; **PTI UNION, LLC**, a/k/a PHARMA TECH INDUSTRIES; **RAZY PROPERTIES, INC.**; **REBGRO CORPORATION**; **SAFEWAY INC.**, **SPECIALTY MINERALS INC.**, and **SRYZ CORP.**

Defendants.

This MATTER has come before the Court upon Defendants' Johnson & Johnson Holdco (NA) Inc. ("Holdco") and Kenvue, Inc.'s ("Kenvue") Motion to Dismiss, and the Court has reviewed and considered the submissions and argument by the parties on August 25, 2023, specifically including the following:

1. Defendants Johnson & Johnson Holdco and Kenvue, Inc.'s Motion to Dismiss, including any supporting materials;

2. Plaintiffs' response to Defendants Johnson & Johnson Holdco and Kenvue, Inc.'s Motion to Dismiss, including any supporting materials;

3. Defendants' Reply and any supporting materials; and

4. The parties supplemental briefing filed on September 1, 2023.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 2

JUDGE DAVID WHEDBEE
King County Superior Court
516 – Third Avenue, E-201
Seattle, WA 98104

The Court is fully advised and makes the following findings and conclusions:

1. Plaintiff Jack LaSalle used asbestos-containing talcum powder products sold by Johnson & Johnson Consumer Inc. ("Old JJCI"), during a period of alleged exposure from 1955 to 2022. In July 2022, Plaintiff was diagnosed with pleural mesothelioma attributed to this exposure.

2. Defendant Holdco, Inc. ("Holdco") is the new entity, incorporated in Texas in 2021, that sprang from a "divisional merger" at Old JJCI whereby "the original entity does not survive the merger," and "it allocates its property, liabilities, and obligations among the new entities according to a plan of merger and, on implementation, its separate existence ends." *In re LTL Mgmt., LLC*, 64 F.4th 84, 95 (3d Cir. 2023).[1]

3. Holdco is also known as the New JJCI. The parties do not dispute that under this "divisional merger," the Old JJCI ceased to exist; the Holdco ("New JJCI") came into existence as a creature of Texas law as the entity that acquired the productive business assets of the Old JJCI; and LTL Management ("LTL") is the entity to which the Old JJCI transferred its talc-related tort liabilities. *LTL Mgmt., LLC*, 64 F.4th at 95-96.

4. Kenvue, a New JJCI subsidiary, did not come into existence until 2022. Kenvue has

---

[1] At oral argument, Plaintiff at times claimed that the defense relied on *LTL Management* as "extrinsic evidence," which the Court could not view in a light most favorable to Defendants, the moving parties. The Court cites *LTL Management* for some undisputed background about the nature of the relevant corporate entities here and their restructuring under Texas law. *See* Tex. Bus. Orgs. Code Ann. §§ 10.001 *et seq.* Both parties cite *LTL Management* for this relevant background, including the Third Circuit's rejection of LTL's Chapter 11 bankruptcy filing as not made in good faith because LTL, as the successor-in-interest to Old JJCI, was not in financial distress. *See* 64 F.4th at 106-110. The Court may consider the Third Circuit's conclusions about the bankruptcy court's findings as a matter of comity. *See Chonah v. Coastal Villages Pollock, LLC*, 5 Wn. App.2d 139, 152, 425 P.3d 895, 902 (2018). The Court does not consider the Third Circuit opinion to be "evidence," and likewise does not take judicial notice of any records in that case. *See Spokane Rsch. & Def. Fund v. Cty. of Spokane*, 155 Wn.2d 89, 98, 117 P.3d 1117, 1122 (2005). The only extrinsic evidence considered here were the 2021 and 2023 Funding Agreements that both parties submitted, and both agreements are undisputed in relevant part.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

JUDGE DAVID WHEDBEE
King County Superior Court
516 – Third Avenue, E-201
Seattle, WA 98104

never sold talc products in the United States and Canada, according to its Securities and Exchange Commission filings, and will discontinue selling any talc-containing products elsewhere by the close of 2023.

5. Defendants stress that Plaintiffs cannot sue Old JJCI because it no longer exists; Plaintiffs cannot sue Holdco ("New JJCI") because it is undisputed that LTL acquired all the talc-related liabilities; and Plaintiffs cannot sue Kenvue because it never produced any talc-containing products in the United States during Plaintiff's period of alleged exposure.

6. Plaintiffs did not originally sue LTL, although it undisputedly possesses its predecessor-in-interest's talc-related liabilities as discussed above. At oral argument, Plaintiffs' counsel represented that Plaintiffs did not name LTL because of the concern that LTL attempted to file bankruptcy (unsuccessfully) and could attempt to do so again, triggering an automatic stay. Plaintiffs' Complaint also makes no specific allegations about any corporate restructuring, or the past or current interrelationships between these entities. At most, the Complaint names Defendant Old JJCI "individually and as successor-in-interest to Johnson & Johnson Baby Products Company," and Defendant New JJCI "individually, successor-in-interest, parent, alter ego, and equitable trustee to Johnson & Johnson Baby Products Company." *See* Dkt. 1.

7. "The general rule in Washington is that a corporation purchasing the assets of another corporation does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation, except where: (1) the purchaser expressly or impliedly agrees to assume liability; (2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability." *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 261–62, 692 P.2d 787, 789–90 (1984). "The

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 4

basis of this traditional corporate law doctrine is that a sale of corporate assets transfers an interest separable from the corporate entity and does not result in a transfer of unbargained-for liabilities from the seller to the purchaser." *Id.* at 262.

### The Purchaser (Holdco) Did Not Expressly or Impliedly Assume Liability for Talc-Related Death or Injury Claims.

8. The 2021 and 2023 Funding Agreements did not expressly allocate any tort liability to Holdco. It is undisputed that at the time of the divisional merger, the Old JJCI ceased to exist; Holdco (aka New JJCI) succeeded the Old JJCI as the entity that acquired the productive business assets; and LTL became the successor entity that carried the talc-related tort liabilities. The divisional merger and related Funding Agreements thus expressly disclaimed the successor liability Plaintiffs argue are at play. This theory is unavailing. *See Martin v. Dematic*, 178 Wn. App. 646, 657, 315 P.3d 1126, 1132 (2013) (expressly "excluded liabilities" do not transfer to successor as "assumed liabilities"), *rev'd on other grounds*, 182 Wn.2d 281, 340 P.3d 834 (2014).

9. As both parties note, the Third Circuit observed that under the Funding Agreements LTL had the right "outside of bankruptcy, . . . to cause New Consumer and J&J [aka Holdco], jointly and severally, to pay it cash up to the value of New Consumer for purposes of satisfying any talc-related costs as well as normal course expenses. . . . The value of the payment right could not drop below a floor defined as the value of New Consumer measured as of the time of the divisional merger, estimated by LTL at $61.5 billion, and was subject to increase as the value of New Consumer increased after it." *LTL Mgmt.*, 64 F.4th at 96–97.

10. The Court finds that 2021 and 2023 Funding Agreements provided just that: funding arrangements that were triggered only if and when LTL's own funds were depleted and could not pay any judgments/settlements. This is different than assuming

liability because, with the incipient fund of approximately $61.5 billion that can be supplemented, it may never come to pass that LTL cannot cover all talc-related liability. *LTL Mgmt.*, 64 F.4th at 106-107 (where LTL could not show financial distress Chapter 11 bankruptcy filing improper).

11. The Funding Agreements here function as indemnification, not impliedly assumed liability. *See Simons v. Tri-State Const. Co.*, 33 Wn. App. 315, 316-317, 655 P.2d 703, 705 (1982) ("contractor's obligation to indemnify and hold harmless the city from claims, losses and damages arising from the work . . . does not impose liability on the contractor").

12. Plaintiffs have made now showing on the undisputed facts that Holdco assumed any liabilities, impliedly or otherwise.

13. Kenvue did not come into existence into existence until 2022, and has never sold talc products in the United States and Canada. Plaintiffs likewise have made no showing that Kenvue expressly or impliedly assumed any liabilities from the now defunct Old JJCI.

### There Was No Mere Continuation of Old JCCI's Business Related to Talc-Related Products.

14. Holdco and Kenvue did not continue the Old JJCI operation of productive business assets in any material way because Holdco and Kenvue never sold the talc products that allegedly harmed Plaintiff. And Plaintiffs have not pleaded any commonality of officers, directors, and stockholders so as to support this exception to the general rule that the transfer of corporate ownership does not include the transfer of liabilities. Again, this claim is a nonstarter because it is undisputed that the Old JJCI transferred its liabilities to LTL.

### The Fraudulent-Purpose Exception Does Not Apply.

15. "Good faith, or the lack thereof, ultimately rests upon the intent of the parties

involved in the transaction. Transferring assets to another corporation to hinder or delay creditors is by definition a fraudulent transfer." *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 135 Wn.2d 894, 909–10, 959 P.2d 1052, 1059 (1998).

16. The Court does not read the *LTL Management* to hold that LTL failed to file for Chapter 11 bankruptcy protection "in good faith" because LTL, or even the Old JJCI, intended to delay or hinder creditors. *LTL Management* reversed the bankruptcy court's finding of good faith because the bankruptcy court erroneously concluded LTL was in financial distress, overlooking the substantial assets the divisional merger allocated to LTL to pay tort claims—at least $61.5 billion. *See* 64 F.4th at 106-107. The Third Circuit did not disagree with the bankruptcy court's opinion that the filing served a "valid bankruptcy purpose" because:

> it sought to resolve talc liability by creating a trust for the benefit of claimants under § 524(g) of the Bankruptcy Code. At a high level, that provision allows a debtor satisfying certain conditions to establish, in a plan of reorganization, a trust for the benefit of current and future claimants against which an injunction channels all asbestos litigation. The Court highlighted what it viewed as several benefits of claims administration through a § 524(g) trust, compared to mass asbestos litigation in trial courts, including the possibility it could resolve claims more efficiently (from both a cost and time perspective), ensure more balanced recoveries among claimants, and preserve funds for future claimants.

*LTL Mgmt.*, 64 F.4th at 98.

17. The bankruptcy filing was at best premature, and at worst unwarranted because LTL was flush with cash reserves to shoulder any financial burden from mass talc-related litigation. But the purpose of the divisional merger, which is the salient issue here, was expressly to anticipate creditor claims, not to evade them. For this reason, Plaintiffs' fraudulent-purpose theory of successor liability lacks merit.

**Product-line Theory of Successor Liability Is Inapplicable.**

18. "The product line exception requires three factors to be established in order to find

liability. First, the transferee must acquire substantially all of the transferor's assets, leaving no more than a corporate shell remaining. Secondly, the transferee must hold itself out to the public as a continuation of the transferor, and must do so by producing the same product line under a similar name. Finally, the transferee corporation must benefit from the goodwill of the transferor." *George v. Parke-Davis*, 107 Wn.2d 584, 588, 733 P.2d 507, 510 (1987). "A key premise of the product line exception is that successor liability is only appropriate when the successor corporation by its acquisition actually played some role in curtailing or destroying the claimants' remedies." *Hall*, 103 Wn.2d at 265–266.

19. Here, as mentioned, the divisional merger did not transfer all the assets, leaving only a corporate shell. Rather, instead of "curtailing or destroying the claimants' remedies," the divisional merger created LTL to pay Old JJCI's talc-related tort liabilities. This theory fails.

20. For the foregoing reasons, the Court finds that Plaintiffs failed to plead sufficient facts and otherwise made no showing that Holdco, or Kenvue, carry any successor liability.

IT HEREBY ORDERS, ADJUDGES, AND DECREES that Defendants Johnson & Johnson Holdco and Kenvue, Inc.'s Motion to Dismiss is GRANTED. Defendants Johnson & Johnson Holdco (NA) Inc. and Kenvue, Inc. are hereby dismissed without prejudice.

DONE IN COURT this 12th day of September, 2023.

JUDGE DAVID WHEDBEE