September 22, 2023

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Docket No. 3:16-MD-2738-FLW-LHG

_____

IN RE:

JOHNSON & JOHNSON TALCUM        J&J's APPLICATION TO
POWDER PRODUCTS MARKETING,            STRIKE
SALES PRACTICES AND PRODUCTS    CONFIDENTIALITY
LIABILITY LITIGATION             DESIGNATIONS
                                VIA REMOTE ZOOM
                                VIDEOCONFERENCE


_____


            *     *     *     *

        FRIDAY, SEPTEMBER 22, 2023

            *     *     *     *


BEFORE:  SPECIAL MASTER JOEL SCHNEIDER, USMJ, RETIRED
         MONTGOMERY, McCRACKEN, WALKER &
           RHOADS, LLP
         jschneider@mmwr.com
         856-488-7797



        MASTROIANNI & FORMAROLI, INC.

    Certified Court Reporting & Videoconferencing

        515 South White Horse Pike

        Audubon, New Jersey 08106

            856-546-1100

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 2

1

2

3

4

5

6

7

8                         Transcript of proceedings in the

9    above matter taken stenographically by

10   Theresa Mastroianni Kugler, Certified Court Reporter,

11   license number 30X100085700, Notary Public of the

12   State of New Jersey and the Commonwealth of

13   Pennsylvania, VIA ZOOM REMOTE VIDEOCONFERENCE,

14   commencing at 3:00 PM.

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

                                                        Page 3

```
 1
    A P P E A R A N C E S:
 2
 3          MOTLEY RICE, LLC
            BY:  DANIEL R. LAPINSKI, ESQUIRE
 4          210 LAKE DRIVE EAST - SUITE 101
            CHERRY HILL, NEW JERSEY  08002
 5          856-667-0500
            FAX - 856-667-5133
 6          800-768-4026
            dlapinski@motleyrice.com
 7          ATTORNEYS FOR THE PLAINTIFFS
 8
 9          ASHCRAFT & GEREL, LLP
            BY:  MICHELLE A. PARFITT, ESQUIRE
10          1825 K STREET, NW
            WASHINGTON, DC  2006
11          800-674-9725
            202-759-7648
12          mparfitt@ashcraftlaw.com
            ATTORNEYS FOR THE PLAINTIFFS
13
14
            BEASLEY ALLEN LAW FIRM
15          BY:  LEIGH O'DELL, ESQUIRE
            218 COMMERCE STREET
16          P.O. BOX 4160
            MONTGOMERY, ALABAMA  36104
17          800-898-2034
            FAX - 334-954-7555
18          leigh.odell@beasleyallen.com
            ATTORNEYS FOR THE PLAINTIFFS
19
20
            LEVIN, PAPANTONIO, RAFFERTY, PROCTOR,
21          BUCHANAN, O'BRIEN, BARR, MOUGEY, PA
            BY:  CHRISTOPHER V. TISI, ESQUIRE
22          316 SOUTH BAYLEN STREET
            PENSACOLA, FLORIDA  32502
23          850-435-7000
            800-277-1193
24          ctisi@levinlaw.com
            ATTORNEYS FOR THE PLAINTIFFS
25
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

```
                                                   Page 4
 1          FAEGRE DRINKER BIDDLE & REATH, LLP
            BY:  SUSAN M. SHARKO, ESQUIRE
 2             - and -
            BY:  ERIC FRIEDMAN, ESQUIRE
 3          600 CAMPUS
            FLORHAM PARK, NEW JERSEY  07932
 4          DIRECT - 973-549-7350
            FAX - 973-360-9831
 5          susan.sharko@faegredrinker.com
            eric.friedman@faegredrinker.com
 6          ATTORNEYS FOR THE DEFENDANT,
            JOHNSON & JOHNSON and JOHNSON & JOHNSON
 7          CONSUMER COMPANIES, INC.,
            now known as JOHNSON & JOHNSON CONSUMER, INC.
 8

 9
            CHRISTINE HAAS GEORGIEV,
10          PRINCIPAL CAMPUS COUNSEL
            UC LEGAL - OFFICE OF THE GENERAL COUNSEL/UCSF
11          OFFICE OF LEGAL AFFAIRS
            499 ILLINOIS 2ND FLOOR
12          SAN FRANCISCO CA 94148
            415-539-8561
13          christine.haasgeorgiev@ucsf.edu
            ATTORNEYS FOR THE REGENTS OF UCSF
14

15

16
     A L S O   P R E S E N T:
17

18              MONTGOMERY, McCRACKEN, WALKER
                  & RHOADS, LLP
19              CLARISSA LINTNER

20

21

22

23

24

25
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

                                                    Page 5
 1                    SPECIAL MASTER SCHNEIDER:  We're on the

 2      record in the Talc MDL.  I think we've been going by

 3      docket 3:16-MD-2738.

 4                    We're here on J&J's application to

 5      strike the confidentiality designations to certain

 6      documents.  I've read the papers, I think I

 7      understand all the arguments.  Why don't we start

 8      with the entries of appearance and we'll get right

 9      into it.

10                    MR. LAPINSKI:  Your Honor, good

11      afternoon.  On behalf of the Plaintiff's Steering

12      Committee, Daniel Lapinski from the Motley Rice law

13      firm.

14                    MS. O'DELL:  Good afternoon, your

15      Honor.  Leigh O'Dell from Beasley Allen on behalf of

16      the Plaintiff's Steering Committee.

17                    MS. PARFITT:  Good afternoon, your

18      Honor.  Michelle Parfitt, Ashcraft & Gerel on behalf

19      of the Plaintiff Steering Committee.

20                    MR. TISI:  Chris Tisi from Levin,

21      Papantonio, Rafferty on behalf of the Plaintiff's

22      Steering Committee.

23                    MS. SHARKO:  Susan Sharko, Faegre

24      Drinker, Biddle & Reath for the Johnson & Johnson

25      defendants.

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 6

```
 1                    MS. HAAS GEORGIEV:  That leaves me, I'm
 2   Christine Haas.  I represent The Regents of the
 3   University of California on behalf of its San
 4   Francisco campus, UCSF.
 5                    SPECIAL MASTER SCHNEIDER:  And you may
 6   see Clarissa on the phone probably.  She works with
 7   me, so I asked her if she could sign in.
 8                    MR. FRIEDMAN:  And Eric Friedman also
 9   for the Johnson & Johnson defendants, Faegre, Drinker
10   Biddle & Reath.
11                    SPECIAL MASTER SCHNEIDER:  Oh, I'm
12   sorry, Eric.  I didn't mean to cut you off.
13                    I've read the papers, I think I
14   understand it.  We've done this a couple of times and
15   I think you know how I like to do things.
16                    I have a couple of questions I'd like
17   to get clarified and then I'll hear any argument, of
18   course, anybody wants to make.
19                    Barring unforeseen circumstances, I
20   hope to rule today to be confirmed in an order, but
21   that remains to be seen.
22                    Just in terms of questions, let's start
23   with basics.  I know we're dealing with the documents
24   of Dr. Saed and Dr. Smith-Bindman.  We went into
25   detail with Dr. Saed's documents, the ones that are
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

```
 1    issued, and I just want to make sure that I got it
 2    right.
 3              Dan, are the documents we're talking
 4    about, one, the peer-review comments on the article
 5    he submitted for publication, drafts of his
 6    manuscript, and I saw some notations to perhaps some
 7    data.  Are those generally the documents we're
 8    talking about?
 9              MR. LAPINSKI:  I think generally, yes,
10    your Honor.  I don't recall the date of the email
11    that I had sent, but in the number of pages that have
12    been produced by Dr. Saed, our position is that
13    everything except for the documents that I
14    specifically identified should remain confidential.
15    And the documents identified that would not be
16    confidential would be things like his CV, invoices
17    that were generated, any manuscripts that have been
18    published, those actual published manuscripts would
19    not be confidential, but that any other materials
20    would be.  Materials such as drafts of manuscripts,
21    underlying data related to the manuscripts, emails
22    between co-authors related to the manuscripts, edits
23    to the manuscripts, emails and exchanges with
24    journals in regard to draft manuscripts and
25    considerations for publication.  It's our position
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 8

1    that all of that information is all part of Dr.

2    Saed's product, the product that he makes, which is

3    published journals.  That's what he does for a

4    living.  He does research in order to create a

5    product and the product is his manuscript that gets

6    published.

7              The same holds true, from our position,

8    for all of Dr. Smith-Bindman's documents where

9    everything that underlies the work that she does in

10    order to publish her product would be considered

11    confidential information.

12              SPECIAL MASTER SCHNEIDER:  You're a

13    little ahead of me, Dan.  I just want to make sure we

14    identify the categories of the documents at issue.

15              So Susan, if we categorize them as

16    communications regarding his manuscript, peer-review

17    documents communications, and data that he developed,

18    is that a fair characterization, in your view, of

19    generally the categories of documents we're dealing

20    with with Dr. Saed?

21              MS. SHARKO:  I think so.  It's really

22    everything that they've produced and they should have

23    produced all of the documents related to the study,

24    from the lab notebooks and documents related to how

25    they did the study.  He did the study all the way up

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 9

1   through publication.  And there will be more

2   documents produced by Dr. Saed and Dr. Smith-Bindman

3   in the future because we stopped, as you all know,

4   when the curtain went down and now the papers have

5   been published and the peer-review process continued

6   to go on, at least as to Dr. Smith-Bindman.  So there

7   will be documents in the future, I expect they'll be

8   the same types of documents, and I expect everybody

9   will be bound by whatever your Honor rules today.

10              SPECIAL MASTER SCHNEIDER:  Dan, we

11  didn't go into as much detail at the last or argument

12  with Dr. Smith-Bindman's documents, but does her

13  documents fit into the same general categories as Dr.

14  Saed?

15              MR. LAPINSKI:  I believe they do and I

16  do see that counsel for the university is nodding in

17  agreement.

18              I think we're generally looking at the

19  same things.  We're looking at communications amongst

20  and between co-authors.  We're looking at

21  communications with peer-reviewers of prospective

22  journals that would publish it.  We're looking at the

23  underlying data and research that was done by the

24  doctors in support of the work that they were doing.

25              The only other category that I would

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 10

 1  add in there, your Honor, that I don't think you

 2  brought up when you were putting categories out there

 3  would be draft manuscripts.  We think the drafts of

 4  the manuscripts would be considered confidential as

 5  would all of the materials that are related to the

 6  research.

 7                    SPECIAL MASTER SCHNEIDER:  Okay.

 8                    Now, with regard to Dr. Saed, my

 9  understanding is that he submitted the manuscript to

10  a number of publications, maybe five sticks in my

11  head, and they were rejected.  So is it a fair

12  assumption that the manuscript we're talking about

13  with regard to Dr. Saed is not going to be published?

14                    MR. LAPINSKI:  Dr. Saed's manuscript

15  was subsequently published, your Honor.  I believe it

16  was published in November of 2021.

17                    SPECIAL MASTER SCHNEIDER:  Okay.

18                    MS. SHARKO:  And then it was published

19  again in April of this year.

20                    SPECIAL MASTER SCHNEIDER:  In different

21  journals?

22                    MS. SHARKO:  Yes, I believe so.

23                    MR. FRIEDMAN:  I think it was the same

24  journal, it was electronically published in November

25  of last year, finally got into print this year.

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 11

```
 1                    SPECIAL MASTER SCHNEIDER:  Okay.  So do
 2    you happen to know the name of that journal that it
 3    was published in?
 4                    MR. LAPINSKI:  Your Honor, I don't have
 5    that right in front of me, but I have a feeling that
 6    Eric is going to be able to tell us.
 7                    MR. FRIEDMAN:  It's Minerva Obstetrics
 8    and Gynecology.  The full cite is in our submission
 9    of September 12th.
10                    SPECIAL MASTER SCHNEIDER:  Got it.
11                    Is that the same manuscript that was
12    not accepted by the five other journals?
13                    MR. LAPINSKI:  What I will say, your
14    Honor, is that it's a manuscript that is based upon
15    the same underlying work that was done by Dr. Saed.
16    As Dr. Saed submitted it from one journal to another
17    journal, there may have been edits that were made to
18    his manuscript based upon comments and criticisms
19    that he may have received from one journal in
20    rejecting it.  So I won't say that it's the same
21    exact manuscript, I'll say that it's all based upon
22    the same underlying data.
23                    SPECIAL MASTER SCHNEIDER:  And there is
24    no question that Dr. Smith-Bindman's manuscript,
25    article, what have you, was, in fact, published,
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 12

1    right?

2              MR. LAPINSKI:  Correct, your Honor.

3              SPECIAL MASTER SCHNEIDER:  Okay.

4              There was discussion, at least at the

5    last argument, about posters and abstracts of Dr.

6    Saed, and I think that was before his article was

7    published.

8              Is that at issue in this dispute?

9              MR. LAPINSKI:  Well, your Honor, I

10   don't think the actual abstract that was published or

11   the published manuscript, I don't think that either

12   of those things are at issue here.  From plaintiffs'

13   perspective, those things have been published and

14   we're not looking to keep that confidential.  It's a

15   published manuscript.  It was an abstract that was

16   displayed at a particular conference.  We don't think

17   that that's confidential.  What we do think is

18   confidential is all of the data underlying it, all of

19   the drafts related to the abstracts and manuscripts,

20   and all of the communications between the co-authors

21   and between journals that considered the manuscript

22   for peer-review.  We think all of that should remain

23   confidential.

24             SPECIAL MASTER SCHNEIDER:  Okay.  Got

25   it.

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 13

 1                    I have a couple more questions.

 2                    I know Ms. Sharko's answer to this.

 3    Let me ask plaintiffs.

 4                    Is there a dispute that other experts,

 5    testimonial experts, are relying on the work product

 6    of Dr. Saed and Dr. Smith-Bindman in their expert

 7    reports and opinions?

 8                    MR. LAPINSKI:  I think that there is

 9    probably a dispute in the way that that's worded,

10    your Honor, for the following reason.  Our experts

11    are relying upon Dr. Saed's published manuscript.

12    They're relying upon Dr. Smith-Bindman's published

13    manuscript.  Our experts have not been given and are

14    not relying upon the draft manuscripts or the

15    laboratory notebooks or the underlying data that has

16    not been published as part of the manuscript.  Our

17    other experts have not been given communications

18    between the co-authors related to draft manuscripts,

19    they're relying upon published information that's out

20    in the public domain.

21                    SPECIAL MASTER SCHNEIDER:  But at least

22    as to the final version, the final manuscript, the

23    published article, other experts besides Dr. Saed,

24    Dr. Smith-Bindman are relying on those final

25    articles, manuscripts, what have you, in support of

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 14

 1    their opinions?

 2                MR. LAPINSKI:  Yeah, I believe on the

 3    plaintiffs' side and on the defense side as well.

 4    The defendants are probably relying upon it and the

 5    defense experts are probably relying upon it in order

 6    to try and undercut the plaintiffs' positions.

 7                SPECIAL MASTER SCHNEIDER:  All right.

 8                Dan, you argued in your letter brief,

 9    and correct me if I'm wrong, if I'm misstating your

10    argument.  I don't want to put words in your mouth.

11                MR. LAPINSKI:  Are you willing to tell

12    me whether you agree or disagree with my argument

13    before you ask me to clarify my position?

14                (Laughter.)

15                SPECIAL MASTER SCHNEIDER:  Well, let me

16    say this:  The court ruled on October 8th, 2021 that

17    the attorneys'-eyes-only designation was stricken,

18    but keep the confidentiality designations.

19                It's pretty clear in the transcript,

20    and I can cite the page and line numbers, if you

21    want, that I clearly indicated that I was basing the

22    decision on the record that existed at that time and

23    that if new facts or circumstances were presented, I

24    would listen to J&J's application.

25                If I read your argument correctly, Dan,

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 15

1    you were arguing that there are no new facts and

2    circumstances that justify revisiting the decision

3    from a couple of years ago.

4               Did I correctly state your position?

5               MR. LAPINSKI:  I think that fairly

6    states it, your Honor, yes.

7               SPECIAL MASTER SCHNEIDER:  All right.

8               Why do you take the position that there

9    hasn't been a change in circumstances?

10              MR. LAPINSKI:  Well, the primary reason

11   for that position, your Honor, is that at the time of

12   our argument on October 8th of 2021, plaintiffs

13   argued not only that we had satisfied the Valsartan

14   standards, that we had satisfied the good faith

15   standards of Pansy, but that in addition to that, our

16   arguments were the same arguments regardless of

17   whether the manuscripts got published or did not get

18   published.  And the only thing that occurred in the

19   two-year period of time that J&J was in bankruptcy

20   and this case was stayed was that the manuscripts

21   were published.  And during our arguments on October

22   8th, we addressed that issue with your Honor that

23   regardless of whether the manuscripts were published

24   or not published, the facts would remain the same;

25   that this was confidential information, it was all

Electronically signed by Theresa Kugler (001-297-027-4278)                          29271353-654a-498b-9a9c-513671d2e776

Page 16

1    information that was part of the product that Dr.

2    Saed produces, part of the product that Dr.

3    Smith-Bindman produces as the work that they do.  So

4    from our perspective, nothing has changed.

5              And Ms. Sharko's arguments in

6    revisiting this issue were that we didn't meet the

7    standards of Valsartan, yet you've already

8    established that we had, you've already ruled that we

9    had.  And that, two, our sole argument the first time

10   was that it was only based upon the fact that they

11   were draft manuscripts and that everything would

12   change once they were published.  And that was never

13   our position.  And in my letter to your Honor, I

14   cited to the part of the transcript where I

15   specifically said that even after the manuscripts

16   were accepted for publication, it would still be our

17   position that the information is confidential.

18              SPECIAL MASTER SCHNEIDER:  Bear with me

19   one second.

20              Susan, of course you're going to have

21   an opportunity to respond.

22              When we had the argument on October 8,

23   2021, I have the transcript here, Dr. Saed's article

24   had not been published, correct?

25              MR. LAPINSKI:  Correct.

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 17

 1                     SPECIAL MASTER SCHNEIDER:  Is the same
 2     true for Dr. Smith-Bindman?
 3                     MR. LAPINSKI:  At the time of argument
 4     in October of 2021, yes, correct.  Her manuscript had
 5     not been published either.
 6                     SPECIAL MASTER SCHNEIDER:  Dan, do you
 7     have the transcript there from October, 2021?
 8                     MR. LAPINSKI:  I do.
 9                     SPECIAL MASTER SCHNEIDER:  All right.
10     So on pages 37 and 38, you were talking about Ms.
11     Sharko's argument and there was some discussion of
12     PLOS ONE.
13                     And on page 38 line 12 you say:
14     "They don't want you publishing the peer-review
15     comments before it's accepted because there is a
16     recognition not only by PLOS ONE, but by everyone in
17     the industry, that this is a closed and confidential
18     process and the integrity of the process would be
19     undermined if these reviews are published at any time
20     prior to the manuscript being accepted."
21                     So should I take that to mean that what
22     you said about Ms. Sharko's argument wasn't correct?
23                     And we'll ask her, but are you certain
24     that J&J's argument was that it doesn't make a
25     difference if it was before or after publication?

Electronically signed by Theresa Kugler (001-297-027-4278)                      29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 18

 1                    MR. LAPINSKI:  Well, I'll let Ms.

 2    Sharko speak for herself, but I know her argument was

 3    it didn't make any difference whether it was before

 4    or after publication, that everything should be free

 5    and open to the public and not have any type of

 6    confidentiality designation.

 7                    SPECIAL MASTER SCHNEIDER:  Right.

 8                    MR. LAPINSKI:  At pages 37 and 38, that

 9    argument as it relates to PLOS ONE, first of all, was

10    dealing with the attorneys'-eyes-only designation and

11    not a confidential designation.  That was dealing

12    with an argument related to attorneys' eyes only.

13                    Second, and within the context of the

14    information coming out at all before the manuscript

15    is published would have a negative impact on the

16    ability of an expert to be able to get it published

17    at all.  And that's why we wanted to have the

18    attorneys'-eyes-only designation.

19                    Specific to PLOS ONE, at the time, Ms.

20    Sharko's argument was that PLOS ONE encourages the

21    editor to come forward and say I will publish my

22    comments along with the published manuscript.  It

23    doesn't say that what PLOS ONE says is, if we're

24    going to publish the manuscript, we'll go back and

25    we'll try and find criticisms from JAMA or criticisms

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 19

1   from another journal and make sure that we publish

2   all of those negative criticisms as well.  It just

3   said, we'll leave it to the editor at the time that

4   we have accepted and are going to publish this

5   manuscript, we'll leave it to the editor as to

6   whether or not they want to provide their comments.

7                   But again, our argument there was

8   within the context of attorneys' eyes only and

9   impacting the integrity of the review process before

10  a manuscript is published.

11                  SPECIAL MASTER SCHNEIDER:  And so to be

12  clear, I just want to be clear because I'm not clear,

13  is it your position that before publication, the

14  materials should be designated attorneys' eyes only,

15  but after publication, it's sufficient just having a

16  confidentiality designation?

17                  MR. LAPINSKI:  Yes.  And you ruled on

18  October 8th that --

19                  SPECIAL MASTER SCHNEIDER:  Right.

20                  MR. LAPINSKI:  -- it should not have an

21  attorneys'-eyes-only designation and that's a ruling

22  that we accepted, your Honor.  But we accept that

23  ruling in the same way that we accepted your ruling

24  that the documents would remain confidential.  And we

25  think the documents should be confidential because

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 20

 1   all of the information that we're talking about is

 2   all of the information that goes into the making of

 3   the product.

 4              If we were going to look at the secret

 5   sauce that Burger King makes, there might be

 6   publications about what people think of the secret

 7   sauce.  And if Burger King is involved in a

 8   litigation, they may have to produce documents to the

 9   opposing party as to what makes up their secret

10   sauce, but that's going to be produced in confidence

11   and it's going to be confidential.  And that's the

12   same way that this work should be looked at.

13              For a living, Dr. Saed and Dr.

14   Smith-Bindman conduct research on behalf of their

15   universities in an effort to get that research

16   published.  The publication is their product.  That's

17   what they make for a living.  And what goes in to

18   that final product being put out on to the market,

19   all of that should be confidential.  Just as J&J

20   would not want us publishing all of the ingredients

21   and how they make up the fragrance of their talcum

22   powder, they wouldn't want us to publish that in the

23   Wall Street Journal and say, hey, this isn't

24   confidential because talc is subject to litigation.

25   That's confidential information because that is how

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 21

1    they make their end product.

2              So we can look at it as opposition in

3    this litigation, but we have to look at it under the

4    guise of a protective order.  And the same should

5    hold true for Dr. Saed's product and Dr.

6    Smith-Bindman's product.

7              SPECIAL MASTER SCHNEIDER:  We're not

8    going to revisit the issue of whether the documents

9    are confidential because I already ruled that they

10   are, but that's not the answer to the issue that we

11   have to deal with, whether that designation should be

12   stricken.  The issue is, if you balance the interests

13   of the parties, whose interests come out on top?

14             At the time, in October 2021, I ruled

15   that the doctors' interests came out on top because

16   of the circumstances that then existed.  But let's

17   hear from Susan about whether there was a change of

18   circumstances that validates changing the balancing

19   process.

20             But I'm going to ask your indulgence

21   for one second because if I don't plug my iPad into

22   the electricity, my battery is going to run out and

23   I'm going to disappear.  So just give me three

24   seconds.

25             Susan, I'm going to take a wild guess

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 22

1    that you don't agree with Mr. Lapinski when he says

2    that there has been no material change in

3    circumstances that would justify a different result

4    when we balance the interests.  But if I'm wrong, let

5    me know.

6              MS. SHARKO:  No, you're absolutely

7    right.  And I'd like to address that and the other

8    portion of Mr. Lapinski's argument.

9              So as to the change in circumstances,

10   there absolutely has been a change in circumstances.

11             Back in October, the plaintiffs were

12   arguing that they were afraid that there would be

13   some interference or potential interference in the

14   ability of these people, experts for hire, to get

15   their papers published.  And they argued that that

16   was the harm, the alleged harm, that met the very

17   high standards in Valsartan and Pansy.

18             I disagreed with that at the time, I

19   still disagree with the fact or the conclusion that

20   they met the standards then, but that was then and

21   this is now and the circumstances are very different.

22             The papers have been published and

23   they're now out there in the scientific literature in

24   the public arena for the public to look at, for

25   scientists to look at, for people to kick the tires

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 23

1    and indeed try and replicate what they did.  And

2    that's an inherent part of the scientific method,

3    that research can be studied and replicated.  And you

4    see, not infrequently now, journals retracting papers

5    where scientists try to replicate studies that were

6    published and they couldn't do it.

7                   And so the argument that this research

8    is a, quote/unquote, product and some type of,

9    quote/unquote, secret sauce that needs to be

10   protected, flies in the face of how science works,

11   how experiments are done, what other scientists think

12   of them, drafts, all that is and should be in the

13   public domain just as a matter of general public

14   policy for the advancement of science.  And even more

15   so here, where these experts voluntarily engaged in

16   litigation.

17                  This is not a situation where there was

18   a scientist who was publishing a paper who is not

19   involved in litigation.  These are two individuals

20   who absolutely were involved in litigation.  In Dr.

21   Saed's case, at least as to the first round of

22   research that he did, the plaintiffs paid for him to

23   do that.  The plaintiffs even paid him by the hour to

24   write his publication.

25                  Now, I don't know if circumstances

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 24

1    changed with regard to the second paper, we'll find

2    that out if and when he is deposed.  And we'll learn

3    more about Dr. Smith-Bindman's paper if and when she

4    is deposed on the paper and the new information.

5              But these individuals voluntarily got

6    involved in the litigation knowing, and they had to

7    know, and certainly they knew after the first Rule

8    702 hearing before Chief Judge Wolfson, that their

9    work would be scrutinized from stem to stern.

10             And so yes, circumstances have changed

11   and the idea that this research is a, quote/unquote,

12   product, I submit is not a valid or legitimate

13   argument and it certainly can't be used to try and

14   establish the clear harm that you have to show, clear

15   potential harm that you have to show to get past the

16   bar in Pansy and Valsartan.

17             SPECIAL MASTER SCHNEIDER:  This is what

18   plaintiffs argue in their September 20th letter, page

19   4.  And I'll just paraphrase.

20             The research and manuscripts are highly

21   sensitive business information and represent a

22   written form of the researchers' ongoing intellect

23   and scientific endeavors.  It's business information

24   that belongs to the researchers and the universities.

25   If confidentiality is not maintained, the experts

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 25

1    will suffer harm and be placed at a competitive

2    disadvantage.  Public access will enable other

3    researchers and institutions to replicate practices

4    and processes that these experts have developed over

5    decades of practice.

6                    Do you agree with that?

7                    MS. SHARKO:  I don't agree with that

8    for the reasons that I just said.  And I note that

9    there is nothing in support of that argument.  Those

10   are lawyers words.  There is nothing from Dr. Saed,

11   there is nothing from Dr. Smith-Bindman, and I

12   wouldn't expect there to be anything from them

13   because I don't think that they could credibly take

14   that position as scientists.  That's not how science

15   works.

16                   So I strongly disagree with that.

17                   SPECIAL MASTER SCHNEIDER:  Dan, do you

18   want to respond?

19                   And then I have another question.

20                   MR. LAPINSKI:  Sure.

21                   I'll respond in a couple different

22   points I'll bring up.

23                   First, in the October 8th, 2021

24   decision that you entered on the record on page 72,

25   lines 9 through 15, you said:  The Special Master's

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 26

```
 1   ruling, in its belief, will result in no material
 2   prejudice to defendants.  The defendant, and we're
 3   talking about a ruling of confidentiality, the
 4   defendant can still use the documents to adequately
 5   protect its interests and to the Special Master's
 6   understanding, those individuals who are on a
 7   need-to-know basis will be able to see the documents.
 8                    So your Honor has already recognized
 9   that when it's a balancing of harms, the
10   confidentiality designation results in no harm to the
11   defendants and no material prejudice to the
12   defendants.
13                    Now, when we look at the harm on the
14   side of the experts and the disclosure of this
15   information, Ms. Sharko brought up the fact that
16   general public policy would encourage that all of
17   this information be released.  But general public
18   policy, in the way that things are currently done in
19   the medical and scientific community, is not for this
20   information to be published and released at the time
21   that a manuscript is published.  And it's not our
22   position to change what the medical and scientific
23   community does because Susan Sharko decides that she
24   wants to put something out in the public domain.
25   That's just not how it works.
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 27

```
 1              In regard to the need for it to be out
 2   there because they're experts and their work needs to
 3   be scrutinized, that's what the defendants will be
 4   able to do and that's what your Honor recognized in
 5   his order when you said there will be no material
 6   prejudice, that the individuals who are on a
 7   need-to-know basis will see the information that they
 8   need to see so that they can scrutinize and they can
 9   attack the work that was done by Dr. Smith-Bindman
10   and Dr. Saed.
11              When it comes to someone publishing a
12   manuscript, and as Ms. Sharko said, in the scientific
13   community people will try and replicate it, the
14   published work, in order to be able to build upon it
15   or undercut it, well, that would be gone if someone
16   just handed them the entire playbook and said this is
17   how I do it.  This is what I said to my co-author,
18   this is what I said to my co-researcher, this is how
19   we did things, then no doctor would serve any
20   long-term benefit to a university.  Because once a
21   university and a physician published something, the
22   next university could just take that entire process,
23   those processes, those interactions and they could
24   use it and equally apply it inside their labs and do
25   it that way and it puts Dr. Saed and Dr.
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 28

1    Smith-Bindman and their universities at a competitive

2    disadvantage.

3              If doctors and researchers want to try

4    and replicate the work that has been done, they can

5    try and replicate the work that has been done by Dr.

6    Saed and Dr. Smith-Bindman in the same way that they

7    would try and replicate the work that was done by any

8    other researcher who had their research published in

9    a manuscript.  And that's not by getting internal

10   emails, by getting draft manuscripts, by getting lab

11   notes, by getting data, that's not how it works.

12             As far as the idea of interference with

13   publication being the only harm, that was not the

14   only harm that was discussed during October 8th.

15   October 8th 2021, we talked about the harm associated

16   with interference with a publication for purposes of

17   attorneys'-eyes-only designation.  But we also talked

18   during oral argument and prior to your ruling about

19   issues of the underlying data and information and

20   correspondence being confidential because of the harm

21   that would be suffered.

22             If Dr. Smith-Bindman and Dr. Saed

23   published their playbook on how they do their

24   research and what goes into conducting their

25   research, what's to stop anybody from doing it?

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 29

 1    What's to stop anybody from making the same products

 2    that they make, from doing the same work that they

 3    do, from beating them in the next novel area that

 4    they want to publish on, from beating them to the

 5    punch there, because they know how Dr. Smith-Bindman

 6    and Dr. Saed do things?  That's the actual harm

 7    that's there.  It's real and it's tangible.

 8                  SPECIAL MASTER SCHNEIDER:  Let me drill

 9    down on that on a couple of points, Dan.

10                  It's correct that in October '21 when I

11    balanced the interests of J&J against the plaintiffs,

12    I came out on the side of plaintiffs keeping the

13    designation.  But it's true at that time that these

14    articles had not been published yet, correct?

15                  MR. LAPINSKI:  Correct.

16                  SPECIAL MASTER SCHNEIDER:  All right.

17                  And the other thing that I'll just ask

18    you, and I would appreciate your answer on this so we

19    can go into it further is, when I have to balance the

20    interests as to whether confidentiality should be

21    kept or not kept, do you disagree that the public

22    interest in this information is a relevant factor

23    that should be evaluated?

24                  MR. LAPINSKI:  I think the public

25    interest lies in the publication of the manuscript

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 30

1    and the ability to see the manuscript just like any

2    other manuscript that is at issue in this litigation,

3    whether it's the O'Brien study, whether it's the Saed

4    study, whether it's the Smith-Bindman study, doesn't

5    matter what study it is, it's in the public interest

6    to be able to see those published studies and be able

7    to comparatively look at those published studies.

8                    Defendants will have the opportunity to

9    be able to show to the public what their experts

10   believe of Dr. Smith-Bindman's study, what their

11   experts believe of Dr. Saed's study.  They will have

12   their experts be able to look at the underlying data

13   and provide the necessary testimony and the necessary

14   information for the public to be able to analyze

15   this.

16                   I go back to my earlier point.  From a

17   public policy and a need to know, it would be in the

18   best interests of the public for the public to know

19   exactly how talcum powder and the fragrance within

20   talcum powder was manufactured and what the amounts

21   of each ingredient were inside of that.  But in the

22   interests of confidentiality and because that's a

23   product that's produced by J&J, that's withheld from

24   the public.  To the extent that it becomes an issue

25   at trial and it's discussed at trial, that will come

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 31

1   out and the public will be aware of it.  But just the

2   general need for the public to know, no, beyond the

3   published manuscript, they don't have a right or a

4   need to know what's going on underneath and what the

5   underlying processes are.  I don't think that there

6   is a public interest that goes beyond the protective

7   order in that regard.

8                SPECIAL MASTER SCHNEIDER:  The harm to

9   the doctors that you've talked about, Dan, I

10  summarized and I took it from page 4 of your

11  September 20th letter.

12               MR. LAPINSKI:  Yes.

13               SPECIAL MASTER SCHNEIDER:  The middle

14  two paragraphs, highly sensitive information, they

15  can replicate the practices, et cetera.  Where is the

16  evidentiary proof and evidence to support those

17  contentions?

18               MR. LAPINSKI:  Where is the evidentiary

19  proof that it's highly sensitive information?

20               SPECIAL MASTER SCHNEIDER:  Yes.

21               MR. LAPINSKI:  Because it's information

22  that's in, as Ms. Sharko had said earlier, general

23  public policy.  The general public policy is that

24  this type of information is not information that is

25  readily shared, its business information.

Electronically signed by Theresa Kugler (001-297-027-4278)          29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 32

```
 1                  Dr. Saed can do studies and take
 2    studies down a long path and ultimately decide that
 3    that research was a dead end, but then three or four
 4    years later may discover something else that would
 5    reopen the opportunity of that research.  And so any
 6    communications that are related to the underlying
 7    research that's done, that's proprietary information,
 8    that's information that he's doing as part of his
 9    business.  And from an evidentiary perspective, the
10    fact that it's not released in other situations and
11    that it's always maintained and not part of
12    publications, if it were the general practice that
13    all of this information was supposed to be shared,
14    then when a manuscript was published, there would be
15    thousands of pages attached to the manuscript that
16    would be all of the back and forth between the
17    co-authors, that would be all of the underlying data,
18    all of the underlying lab notes.  That's just not how
19    it's done.  And the reason that its not done is
20    because this is a highly competitive environment.
21    There are doctors who are competing against each
22    other in research to be able to publish.  There are
23    universities that are relying upon those doctors and
24    the research that's done by those doctors in order to
25    increase the prestige of those universities.  So
```

Electronically signed by Theresa Kugler (001-297-027-4278)                              29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 33

1    that's what I put forward as evidence.

2                    SPECIAL MASTER SCHNEIDER:  Dan, you may

3    or may not be true, I'm not going to weigh in on that

4    as to articles that are published generally for

5    academic purposes.  I'm not saying this isn't an

6    academic purpose, but we're in the litigation context

7    here now.  Can you make the same representation that

8    in the litigation context that it's always always the

9    case that peer-reviewed documents aren't

10   discoverable?

11                   MR. LAPINSKI:  Well --

12                   SPECIAL MASTER SCHNEIDER:  Or even

13   confidential?

14                   MR. LAPINSKI:  I think what you need to

15   separate there, your Honor, is that in the litigation

16   context, Dr. Saed and Dr. Smith-Bindman submitted

17   expert reports that provided their opinions on the

18   research that they were doing.  And those expert

19   reports are fully available and can be scrutinized

20   and the public can have access to them.  Their

21   publications and Dr. Saed publishing in Minerva in

22   his first publication that he had and Dr.

23   Smith-Bindman's publications, that's not part of

24   litigation, that's part of what they do for a living.

25   That's part of what they're paid to do by the

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 34

1    universities, is to conduct research and publish

2    manuscripts.

3                    So I think there is a difference

4    between the two.  The publications and their

5    manuscripts are part of what they do as a living.

6    Their expert reports they submitted and the testimony

7    that they provide in the litigation is something

8    that's wholly separate and apart from their

9    publications.  And that's why --

10                   SPECIAL MASTER SCHNEIDER:  So let me

11   address a situation.

12                   On August 30th, the plaintiffs wrote to

13   Judge Shipp and cited, in support of this Daubert

14   dispute that the parties are having, Dr.

15   Smith-Bindman's article, correct?

16                   MR. LAPINSKI:  I think it responds to

17   Ms. Sharko's letter to the court about all of this

18   new science that has been published in favor of the

19   defendants' position.  In response we wrote and said

20   science is changing, there is new science that's out

21   there.  This O'Brien study is out there.  There is a

22   study that's out there by Saed, there is a study

23   that's out there by Smith-Bindman.

24                   SPECIAL MASTER SCHNEIDER:  I know Dr.

25   Smith-Bindman's article was cited to Judge Shipp.

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 35

 1    Was Dr. Saed's article also cited in support?

 2                    MS. O'DELL:  It was not.

 3                    MR. LAPINSKI:  I don't believe --

 4                    MS. O'DELL:  It was not.

 5                    SPECIAL MASTER SCHNEIDER:  It was just

 6    Dr. Smith-Bindman.  Okay.

 7                    So now the public has access to this

 8    document and the public's reading that the

 9    plaintiffs' attorneys believe that Dr.

10    Smith-Bindman's article supports their conclusions

11    and opinions.

12                    Hypothetical question, Dan.  Purely

13    hypothetical.  Suppose there is peer-review comments

14    in Dr. Smith-Bindman's confidential files similar to

15    those that have been cited that I read about that

16    were in Dr. Saed's file substantially criticizing the

17    work product.  Would it not be prejudicial to J&J if

18    they couldn't get word out to the public that these

19    articles that were cited to Judge Shipp in support of

20    plaintiffs' opinions may not be as accurate or

21    truthful as the plaintiffs say it to be?

22                    And doesn't that weigh into the

23    balancing of interests here?  Does the public have a

24    right to see that information, what those

25    peer-reviewers say?  I don't know exactly what they

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 36

1    say, Dan, they could be this is the greatest article

2    in the world and that would be great.  I don't know.

3    I don't know if they're good or bad.  But if this

4    article is presented to the court and is presented to

5    the public to support the plaintiffs' position,

6    shouldn't the public have the right to see all

7    information that's relevant to the veracity and

8    credibility and believability of that study?

9              MR. LAPINSKI:  I don't think that's

10    correct.  And the reason that's not correct, the

11    simple reason is that when defendants cite to an

12    article, and let's use the O'Brien article as an

13    example, when the defendants cite to the O'Brien

14    article, the public has the ability to be able to go

15    and search for and pull up the O'Brien article and

16    read the O'Brien article and make a determination as

17    to their position on the O'Brien article.

18              When plaintiffs cite to the

19    Smith-Bindman article that's been published, the

20    public has the ability to be able to go and pull up

21    the Smith-Bindman manuscript and look at the

22    Smith-Bindman manuscript and form their opinion as to

23    what they think of the Smith-Bindman manuscript.

24    What the public does not have the ability to do is to

25    pull up all of the comments that may be underlying

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 37

1    the O'Brien manuscript, if any.

2                   SPECIAL MASTER SCHNEIDER:   Why not?

3                   MR. LAPINSKI:   Well, because the

4    O'Brien manuscript is a manuscript that was published

5    in the same way that the Smith-Bindman manuscript was

6    published, but the difference is that Dr.

7    Smith-Bindman has also agreed to testify as an expert

8    in this case.   So people interested in O'Brien can't

9    get emails back and forth between O'Brien and the

10   co-authors about what they're doing, they can't get

11   critiques from manuscripts, they can't get underlying

12   lab notebooks or data, they can't get that

13   information.   Nor should they be able to get that

14   information as it relates to Dr. Smith-Bindman's

15   article.

16                  Now, down the road, because defendants

17   will have this information in confidence, the

18   defendants will be able to say we think Dr. Saed's

19   opinions are hogwash, we think Dr. Saed is a paid

20   shill for the plaintiffs, and we don't think that

21   there is any credence or credibility to what Dr. Saed

22   says.   And the defendants will be able to have their

23   experts testify as to why.   But just generally making

24   it open and available to the public because someone

25   has decided that they want to be able to testify as

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 38

 1   an expert in litigation, that's not appropriate.

 2   That goes back to something that we talked about in

 3   October of 2021 and the Hobson's choice that would be

 4   created for not only plaintiffs' experts, but for

 5   plaintiffs' counsel:

 6                     Plaintiffs' experts would be in a

 7   position where they would have to say, do I want to

 8   testify as an expert or do I want to do research.  I

 9   can't do both because if I do research and I testify

10   as a plaintiffs' expert, then my career as a

11   researcher is going to be put in jeopardy because I

12   have to share all of my information with everybody

13   and it can be replicated, it can be picked apart,

14   anything can happen.  I don't want to have to undergo

15   that.  You want to test the experts on their

16   published manuscripts, the public has the right to be

17   able to do that, just as the public has the right to

18   be able to say, J&J, we don't think your talcum

19   powder and fragrances are up to snuff.  But they

20   don't get to look at what all of the ingredients are

21   in making that determination.

22                     SPECIAL MASTER SCHNEIDER:

23   Hypothetically, again, I just want to emphasize this

24   is hypothetical, if there is something, and I don't

25   know if there is something, in Dr. Smith-Bindman's

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 39

1    confidential documents that are detrimental to her

2    credibility, bias, whatever, is not J&J prejudiced

3    because plaintiffs have held this article out to

4    Judge Shipp and the public as credible, but J&J can't

5    publicly rebut that at the present time with harmful

6    information that may exist?

7                    MR. LAPINSKI:  Well, your Honor, I

8    guess we'd have to define what harmful information is

9    because ultimately, the manuscript was published.  So

10   ultimately, there was a reputable medical journal

11   that looked at the information that was contained in

12   the manuscript, looked at the work that was done and

13   felt that the work was credible and that the work

14   should be published.  So I think --

15                   SPECIAL MASTER SCHNEIDER:  Well, look

16   at Dr. Saed, some of the comments that I read.  This

17   is what I read in the briefs.

18                   MR. LAPINSKI:  Sure.

19                   SPECIAL MASTER SCHNEIDER:  Some of the

20   comments are pretty harsh.  Okay?  Pretty harsh.  But

21   the article was published in the journal.

22                   Do you think it's prejudicial to J&J

23   that if Dr. Saed's article is held out to the public

24   as some ground-breaking proof that J&J can't publicly

25   reveal what supposedly competent peer-reviewers said

Electronically signed by Theresa Kugler (001-297-027-4278)                     29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 40

 1   about that article?

 2                MR. LAPINSKI:  Well, first of all, your

 3   Honor, we don't know who the peer-reviewers are so we

 4   don't know the competency of the peer-reviewers, we

 5   don't know the motivations of the peer-reviewers.  We

 6   don't know the purpose behind the peer-reviewers'

 7   comments.

 8                There are some peer-reviewers' comments

 9   that were minimal in nature and were just comments

10   about formatting or something.  There were other

11   comments from peer-reviewers that were written like a

12   Daubert motion.  And you have to question that type

13   of peer-review.

14                But ultimately, they're the opinions of

15   one, two, three, four people.  And the opinions of

16   those four people shouldn't be used as a way to try

17   and skewer Dr. Saed and/or Dr. Smith-Bindman.  And

18   for J&J to say that it's beyond them to do something

19   like that, I would just point to the ongoing

20   litigation against Dr. Moline right now.  Dr. Moline

21   is an expert who testified at various trials and J&J

22   is now taking the position where they're going to sue

23   Dr. Moline for fraud and for statements that Dr.

24   Moline made.  And that's what happens when the

25   information goes from being confidential and gets

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 41

1    moved out into the public domain.  J&J then takes it

2    and doesn't use it just to say, hey, public look at

3    this, they use it in order to try and discourage

4    plaintiffs' experts from doing the work and doing the

5    research that they do.

6                    SPECIAL MASTER SCHNEIDER:  Last

7    question, then we'll turn it over to Susan.

8                    Do you then believe that the public has

9    no right to see what these peer-reviewers said, good

10   or bad, good or bad, it doesn't matter, about these

11   published articles that are held out by one party or

12   the other as definitive and authoritative?

13                   MR. LAPINSKI:  Okay.  So I don't think

14   that the public has a right to be able to see that.

15                   Again, it's the opinions and criticisms

16   of one particular pier-reviewer.  If we go back to

17   the October 2021 arguments when Ms. Sharko pointed

18   out and you brought up earlier today, your Honor, the

19   policy of PLOS ONE to leave it to the peer-reviewers

20   as to whether or not they wanted their comments

21   published along with the manuscript when the

22   manuscript was published.  What you're doing is

23   you're taking information that was provided by a

24   peer-reviewer as criticism to someone's manuscript.

25   We don't know that the peer-reviewer wants that

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 42

1    information shared.  We don't know that the

2    peer-reviewer isn't being hypercritical for purposes

3    of maintaining a higher standard.  We don't know what

4    the motivation of the peer-reviewer was.  But using

5    PLOS ONE as an example, we know that at minimum it

6    should be the option of the peer-reviewer as to

7    whether or not they want their comments shared.  We

8    also know that again, we don't know what the

9    underlying bases or motivations are for the

10    peer-reviewer to make those comments.

11              So for those comments to be put out in

12    relation to a published manuscript just because the

13    author of that manuscript has chosen to testify as a

14    plaintiffs' expert, it actually creates more harm

15    than good because then those experts who have stepped

16    up and said yes, in addition to publishing

17    manuscripts, I will also testify as an expert, all of

18    the bad can come out about their work whereas none of

19    the potential bad underlying any other work comes

20    out.  And it creates an improper and unbalanced

21    playing field.

22              SPECIAL MASTER SCHNEIDER:  Susan, let

23    me turn the floor over to you.

24              We spent a lot of time with plaintiffs

25    about why their interests would be prejudiced if the

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 43

1    designations are stricken.  If you believe the

2    contrary is true, that either they won't be harmed or

3    that your client or the public will be prejudiced or

4    harmed, let's hear it.

5            MS. SHARKO:  Sure.

6            So the law is absolutely clear that the

7    plaintiffs have the burden of showing a,

8    quote/unquote, clearly defined and serious injury to

9    the party seeking confidentiality.  And I'm reading

10   from the Pansy case at page 786.  The defendant here

11   has no burden of proof at all.  And the plaintiffs

12   have, in fact, adduced no evidence, no admissible

13   evidence, of a clearly defined or serious injury to

14   Dr. Saed or Dr. Smith-Bindman.

15           SPECIAL MASTER SCHNEIDER:  Is that the

16   standard to justify a confidentiality designation in

17   the first instance?

18           MS. SHARKO:  Yes.

19           SPECIAL MASTER SCHNEIDER:  Okay.  So

20   we're over that hump, Susan.  We're over that hump.

21   I already held on October 8th, 2021 that they met the

22   Pansy standard.  We're not going to reargue that

23   issue.

24           The issue now is balancing the

25   interests of the doctors and the interests of the

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 44

1    public and the parties, on whose side does the

2    balance now fall?  Because in October 2021 when the

3    articles weren't published yet, when the articles

4    weren't out in the public, when one of articles

5    wasn't cited to Judge Shipp in support of the

6    plaintiffs' position, that didn't exist.  Now they

7    exist.  So why should the balance now fall in your

8    favor rather than the same as it did two years ago in

9    plaintiffs' favor?

10              MS. SHARKO:  Because we're starting

11   over now.  The harm that was alleged two years ago

12   was that the papers hadn't been published and, gee

13   whiz, if this stuff got out, maybe no journal would

14   publish them.  And now they've been published.  And

15   the new argument is that somehow the livelihood of

16   these experts will be impacted if the curtain is

17   lifted so the public can see exactly how they've done

18   this work.  And I submit that there is no evidence of

19   that that's been put forward here.  And, in fact, if

20   the expert were on the stand and had to respond to

21   these questions, they wouldn't take that position.

22   Because they have to say and I think they have said

23   that they did their studies by the book, that they

24   followed standard scientific methodology that anybody

25   would do.  I don't think that either of these experts

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 45

```
 1    will say that their methodology was unique or special
 2    or should be kept secret.  If they did, they would be
 3    even more vulnerable to a 702 challenge.  There is no
 4    evidence that their livelihood would be affected,
 5    there is no evidence to support the idea that there
 6    is a Hobson's choice here now that the papers have
 7    been published.
 8                   And essentially what the plaintiffs are
 9    arguing is that the public is too dumb to understand
10    the underlying documents.  And it's important to
11    recognize that the plaintiffs' bar has been very,
12    very vocal.  It's in advertising, it's in the press,
13    it's everywhere that this product allegedly causes
14    ovarian cancer and they have scientific proof of
15    that.  And I think the public is entitled to see the
16    underside of this alleged scientific proof.  And if
17    the public doesn't see that, they're mislead in whole
18    or in part and my client is prejudiced.
19                   This is totally different from should
20    the formula for talcum powder be released.  First of
21    all, the ingredients were on the bottle back two
22    years ago when the product was available in the US.
23    But a formula for the making of a very unique and
24    special, indeed iconic, product is totally different
25    from how an alleged scientist performed an experiment
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 46

 1    and what other people thought of it.  It's night and
 2    day.
 3                  So I submit that the designations
 4    should be stricken, these documents should not be
 5    protected, but they should be available in the normal
 6    course of things.
 7                  SPECIAL MASTER SCHNEIDER:  I only have
 8    one more question and then I'll hear anything else
 9    you want to add.
10                  Do we have a dispute anymore about the
11    attorneys'-eyes-only designation and is really the
12    only issue whether the confidentiality designation
13    should remain?  Because I thought I held in
14    October 2021 that the attorneys'-eyes-only
15    designation as to Dr. Saed's documents was stricken
16    and I thought that was going to be equally applicable
17    to Dr. Smith-Bindman's documents, but I just want to
18    make sure that there is no dispute about that.
19                  MR. LAPINSKI:  Your Honor, the only
20    point that I would bring up is that the Plaintiffs'
21    Steering Committee and plaintiffs' counsel is not
22    taking a position on attorneys' eyes only, whether
23    it's related to Dr. Saed or Dr. Smith-Bindman.
24    However, at the October 2021 argument and hearing,
25    counsel for the university wasn't present because it

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 47

```
 1   was a hearing that was related specifically to Dr.
 2   Saed and then Dr. Smith-Bindman was brought up at the
 3   end.  And it was for that reason that you maintained
 4   the attorneys'-eyes-only designation on Dr.
 5   Smith-Bindman's documents because you wanted the
 6   university to have the opportunity to be heard on the
 7   issues.  So I would just point that out and counsel
 8   for the university is here today.
 9                SPECIAL MASTER SCHNEIDER:  Okay.  Well,
10   that's a good segue to the university.
11                Christine, is there anything that you
12   want to add?  I received your letter, email, brief,
13   what have you.
14                Any argument you may have?
15                MS. HAAS GEORGIEV:  Just a few, if you
16   don't mind, I'd like to raise a few points.
17                I don't really know what to say about
18   your last question because my understanding is that
19   her documents were attorneys' eyes only, so that's
20   what I assumed they are.
21                Again, I want to remind everyone that
22   the university's position in October 2021 was that
23   this was an inadvertent, unauthorized disclosure of
24   documents that could be detrimental to other UCSF
25   doctors and other interagency personnel.
```

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 48

```
 1                    I'd like you to know that any

 2      third-party request for UC documents are subject to

 3      the Public Records Act.  It doesn't matter if it's in

 4      the context of a formal request under the act.  An

 5      email, typically we get most of our requests via

 6      email or in civil litigation, if it's a UC document,

 7      we're entitled to our exemptions.

 8                    It's the university's position --

 9                    SPECIAL MASTER SCHNEIDER:  Can I have a

10      time out?  Can I have a time out there?

11                    What's the support for that, Counsel?

12      Can you give me a case or a citation that says that?

13      Because I can give you -- I'm going to give you a

14      citation and a case or two that says exactly the

15      opposite.

16                    Do you have anything that supports what

17      you just said?

18                    MS. HAAS GEORGIEV:  That any third

19      party request is subject to the --

20                    SPECIAL MASTER SCHNEIDER:  No, that the

21      Public Records Act trumps civil litigation.

22                    MS. HAAS GEORGIEV:  It's not that it

23      trumps civil litigation, it's that we still are

24      allowed to maintain our exemptions.  We don't waive

25      our exemptions --
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 49

 1                    SPECIAL MASTER SCHNEIDER:  What is the

 2    support for that?  Because I'm telling you, I'm going

 3    to give you a citation in the statute and case law

 4    that says exactly the opposite.

 5                    What are you relying on?

 6                    MS. HAAS GEORGIEV:  Okay.  I'm relying

 7    on our policy and the statute.  I've never heard such

 8    a thing, your Honor, to be honest with you.

 9                    SPECIAL MASTER SCHNEIDER:  Can you give

10    me the citation?

11                    MS. HAAS GEORGIEV:  Not off the top of

12    my head.

13                    SPECIAL MASTER SCHNEIDER:  It must have

14    been in your papers.  I mean you say it, but if there

15    is support for your position, I'd love to see it.  I

16    would love to see it.

17                    MS. HAAS GEORGIEV:  All right.  After

18    this call, I will --

19                    SPECIAL MASTER SCHNEIDER:  No.  We're

20    done.  I'm ruling on the argument.  We're not holding

21    this up.

22                    MS. HAAS GEORGIEV:  Okay.

23                    Well, you've seen my brief, I guess

24    I'll stop on that.

25                    But my final point is that J&J is

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 50

 1    effectively requesting documents under CPRA by

 2    requesting the reclassification from attorneys' eyes

 3    only to publication.

 4                 SPECIAL MASTER SCHNEIDER:  Okay.

 5                 Susan, you have the burden of proof, so

 6    let's hear from Dan first.

 7                 Dan, any last word you want to add that

 8    we haven't talked about?

 9                 MR. LAPINSKI:  The last comments that

10    I'll make, your Honor, is simply that Ms. Sharko said

11    that plaintiffs' position was that the public was too

12    dumb to make a determination as to the credibility of

13    the publications of either Dr. Saed or Dr.

14    Smith-Bindman and, therefore, they shouldn't be

15    provided with the documents.  And that's not our

16    position at all.

17                 Our position, your Honor, is that if

18    there is going to be a decision that's going to be

19    made about the credibility of Dr. Saed and Dr.

20    Smith-Bindman, it should be done at trial and it

21    should be done on cross-examination when there is an

22    opportunity for the evidence to be put into the

23    appropriate context and done at the appropriate time.

24    Neither Dr. Saed nor Dr. Smith-Bindman should be

25    tried in the public eye by Johnson & Johnson or

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 51

1    anyone else before we reach trial.

2              And to the extent that these documents

3    are made public, one, the experts are harmed by the

4    publication for the reasons that I've cited

5    previously.  But then two, plaintiffs and plaintiffs'

6    counsel are harmed because it provides the

7    opportunity to be able to taint the experts before

8    trial and before the experts get to be tested on the

9    stand.

10             SPECIAL MASTER SCHNEIDER:  Susan, last

11   word?

12             MS. SHARKO:  Thank you.

13             My clients have been harmed and

14   continue to be harmed by the trial of this case in

15   the public eye, number one.

16             Number two, the general public is

17   harmed by the trial of the case in the public eye

18   when all the information and the true facts are

19   hidden from view.

20             Number three, sunlight is the best

21   disinfectant.  These are issues of significance and

22   public importance at this point in time and

23   everything should be out there in terms of the expert

24   materials.  That's my argument.

25             And then finally, I just want to make

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 52

1    sure that UCSF, having come to New Jersey, having

2    interjected themselves into this dispute, having

3    taken part in oral argument, and having filed briefs

4    will be bound by your Honor's rulings.

5              That's my position.

6              SPECIAL MASTER SCHNEIDER:  Don't you

7    already have the documents?

8              MS. SHARKO:  I have the documents so

9    far, but there are more documents to be had.

10             Discovery was put on pause two years

11   ago and now we have the publication.  And under the

12   proposed case management order that we submitted to

13   Judge Shipp, the plaintiffs have the ability to

14   supplement and amend all of their expert disclosures

15   on or before November 15 and then we have the

16   opportunity to take depositions as to new material.

17             Judge Shipp hasn't signed that order

18   yet, but those points I just raised were not in

19   dispute.  Ms. Parfitt, Ms. O'Dell and I agreed to

20   those.  There is only one paragraph that's in

21   dispute.

22             SPECIAL MASTER SCHNEIDER:  The issue as

23   to the discoverability of future documents is

24   certainly not before me at the present time, so I am

25   not going to weigh in on that issue one way or the

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 53

 1   other.

 2              The only issue I want to weigh in on is

 3   the issue before me, which is the application to

 4   strike the confidentiality and I'll also say the

 5   attorneys'-eyes-only designations as to these

 6   doctors' documents.

 7              What I'd like to do now, it's about

 8   4:10 now, can we take a very short break, let me get

 9   my notes together and we'll come back on the record.

10   I'll read my oral opinion into the record to be

11   confirmed by a court order.

12              Why don't we come back at 4:30, that's

13   20 minutes, and you'll get my ruling.

14              Okay?

15              MS. PARFITT:  Very good.

16              MR. LAPINSKI:  Thank you, your Honor.

17              MS. SHARKO:  Thank you.

18              (Recess is taken.)

19              SPECIAL MASTER SCHNEIDER:  What I'm

20   going to do is I'm going to read my ruling into the

21   record, I'm going to confirm it in an order, and like

22   I did the last time, I'm going to go off video

23   because I think it's a lot easier for me to read it

24   if I'm not on video and then I'll get back on.

25              This matter is before the Special

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 54

```
 1    Master on J&J's application to strike the
 2    confidentiality designations on documents from Dr.
 3    Saed and Dr. Smith-Bindman.
 4              Generally, the documents at issue are
 5    anonymous peer-review documents and manuscripts that
 6    doctors submitted for publication which have
 7    eventually been published; some draft manuscripts,
 8    communications regarding the manuscripts, and perhaps
 9    some data generated in the course of the doctors'
10    studies.
11              The application is opposed by the
12    plaintiffs in the case as well as The Regents of the
13    University of California, which will hereinafter be
14    referred to as "The Regents."
15              It's important to note that the doctors
16    at issue, Dr. Saed and Dr. Smith-Bindman, are both
17    testimonial experts in this talc litigation.  This is
18    not the first time the Special Master has addressed
19    these doctors' documents.  On August 3rd, 2021 in
20    Special Master Order Number 10, the Special Master
21    addressed whether the documents from these doctors
22    are discoverable.  Defendants' application for the
23    documents was granted and denied in part.
24              On October 8, 2021, the Special Master
25    held oral arguments on defendants' challenge to
```

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 55

1   plaintiffs' attorneys-eyes-only designations on the

2   doctors' documents.

3            The Special Master struck the

4   attorneys'-eyes-only designations, but ordered that

5   they be replaced with a confidentiality designation.

6   The rulings then applied to the documents of Dr.

7   Saed.  Although the Special Master incorporated its

8   rulings into Special Master Order Number 13 dated

9   October 12, 2021, the order never made it to the

10  docket because of LTL's bankruptcy filing.

11           During the oral argument on October 8,

12  2021, the Special Master addressed whether, in the

13  first instance, plaintiffs met the standard in the

14  Third Circuit's Pansy decision.  The Special Master

15  held that the doctors' documents met that standard

16  and it has no intention of revisiting that ruling.

17           In the first instance, the Special

18  Master held that the plaintiffs have met the good

19  cause standard to designate the documents as

20  confidential.  The Special Master also ruled that the

21  documents at issue were relevant and not privileged

22  and that holding will not be disturbed.

23           As the parties know, while the Special

24  Master was on the bench, it issued a detailed opinion

25  addressing a similar although not identical issue to

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 56

1    what is presented here.  See In re Valsartan, 512

2    F.Supp. 3d 546 (DNJ 2021).  That opinion addressed

3    the standard to justify a confidentiality designation

4    under a discovery confidentiality order or sometimes

5    known as a protective order and whether that standard

6    was met.  The Valsartan ruling and discussion is

7    incorporated herein by reference.

8                    As the Special Master said on October

9    8, 2021, the ultimate question to be decided is not

10   whether there is good cause to designate the

11   documents at issue as confidential since that issue

12   has been decided.  The real issue to decide is

13   whether the interests of the doctors and The Regents

14   outweighs the interests of defendants and the public

15   necessitating that plaintiffs' confidentiality

16   designations stay or be stricken.

17                   After weighing all relevant factors,

18   the Special Master concludes, based on the new

19   evidence defendants submitted and the change in

20   circumstances from what existed on October 8, 2021,

21   that the paramount interests of the public and the

22   interests of the defendants outweigh those of the

23   doctors and The Regents.  And accordingly, it will be

24   ordered that plaintiffs' confidentiality designations

25   on the documents at issue be stricken.

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

Page 57

1               Plaintiffs argue nothing new has been

2    presented to justify a different ruling from October

3    8, 2021.  The Special Master wholeheartedly disagrees

4    and believes the record presently before the Special

5    Master is materially different than what existed on

6    October 8, 2021.  I will explain.

7               One, plaintiffs relied on Dr.

8    Smith-Bindman's article in an argument presented to

9    Judge Shipp in a public record.  The documents at

10   issue address the article plaintiffs relied upon in a

11   public filing.

12              Two, contrary to what plaintiffs argue,

13   the fact that the articles were not published at the

14   time of the October, 2021 argument was, in fact, a

15   material factor in the Special Master's ruling as to

16   why a confidentiality designation was appropriate.

17   The possibility that the manuscripts may be published

18   is now a nullity since, in fact, the manuscripts have

19   been published.

20              Three, other experts have considered

21   and may be relying on the expert opinions of Dr. Saed

22   and Dr. Smith-Bindman in their research and opinions

23   that are addressed in the published articles.

24              Four, the public interest in this case

25   and the experts' opinions in the case are even more

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 58

1    magnified than it was in 2021 due to the massive

2    publicity generated by LTL's bankruptcy filing.  The

3    public's interest in the experts' conclusions cannot

4    be underestimated.

5                    It is clear to the Special Master,

6    therefore, based on the new circumstances presented,

7    that a new balancing of interests is necessary and

8    that the Special Master cannot rely on the balancing

9    done in October 2021 under different circumstances.

10                   Importantly, the Special Master noted

11   in its October 8, 2021 oral opinion that its decision

12   was based on the present record then existing.  I

13   specifically noted that I would entertain a new

14   application from J&J based on new facts.  That is

15   what is being done now.

16                   Amongst the most important reasons

17   justifying the present ruling is the fact that J&J is

18   materially prejudiced by plaintiffs' confidentiality

19   designations.  The reason is because although Dr.

20   Saed and Dr. Smith-Bindman's opinions have been

21   published and Dr. Smith-Bindman's article has been

22   cited to Judge Shipp, the medical community and the

23   public at large, due to plaintiffs' confidentiality

24   designations, J&J is unable to fully and effectively

25   rebut their opinions because it cannot publicly cite

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 59

1   to the documents that have been designated

2   confidential.

3                The confidentiality designations

4   prevent J&J from educating the public that Dr. Saed's

5   opinions and work product and possibly Dr.

6   Smith-Bindman's have been discredited by others.  It

7   is fundamentally unfair to J&J to permit the doctors

8   to publicly espouse their opinions but deny J&J the

9   opportunity to effectively defend itself.

10               The Special Master takes no sides in

11   who is right or who is wrong, however, when one side

12   is prevented from telling the full story, J&J should

13   have an adequate and equal opportunity to present the

14   other side.  The fact that J&J has the data these

15   experts relied upon, in the Special Master's view, is

16   not enough.  The comments of peer-reviewers will help

17   present a complete picture.  The public can give the

18   comments whatever weight it wants.

19               The other main reason justifying the

20   Special Master's ruling is the paramount public

21   interest in this litigation and the experts'

22   opinions.  The public deserves to hear the full story

23   and weigh for itself what to believe or not to

24   believe.  At present, it only hears Dr. Saed's and

25   Dr. Smith-Bindman's full side of the story.  In

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 60

 1    fairness and to assure equal treatment and

 2    opportunity, the public has a paramount interest in

 3    hearing information that may or may not rebut the

 4    doctors' opinions.  The public needs to have an

 5    opportunity to give whatever weight it wants to the

 6    comments of anonymous peer-reviewers.

 7              Also significant to the Special

 8    Master's analysis is that plaintiffs rely on Dr.

 9    Smith-Bindman's article in a public filing to Judge

10    Shipp.  Unless the confidentiality of the documents

11    is stricken, J&J will be denied an opportunity to

12    publicly effectively rebut and discredit her opinions

13    that have been revealed to the public, and again, the

14    public will be prevented from getting the whole

15    story.

16              To be sure, the Special Master is not

17    holding that in every case peer-review comments and

18    draft manuscripts are discoverable and do not deserve

19    confidentiality protection.  Here we have a situation

20    where we are dealing with articles that were already

21    published and both of the authors are testimonial

22    experts for a party in a case of paramount public

23    importance.

24              In addition, plaintiffs have already

25    relied on the experts' work product that has been

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 61

1    publicized to the court and public.  In addition, the

2    public interest in the subject matter at issue is

3    intense and the subject matter involves an issue of

4    grave importance to the public health.

5                   Last, for the reasons stated, a party

6    defendant will be materially prejudiced unless the

7    confidentiality designations on the experts'

8    documents are removed.  Balanced against these

9    interests favoring public disclosure, respectfully,

10   plaintiffs present only vague and general notions of

11   harm that could occur if their confidentiality

12   designations are stricken.

13                  The Special Master is not satisfied

14   plaintiffs have made the case that the experts' work

15   product and methodology is especially secret and

16   novel, nor does the Special Master believe the

17   peer-review process will be materially impacted by

18   disclosure given the special circumstances presented

19   here.

20                  By no means does the Special Master

21   believe its ruling will open the flood gates to the

22   discovery of peer-review documents and public

23   disclosure of peer-review documents.

24                  The crux of plaintiffs' arguments as to

25   the harm to be suffered by striking the

Electronically signed by Theresa Kugler (001-297-027-4278)                29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 62

 1    confidentiality designations is on page 4 of

 2    plaintiffs' September 20, 2023 letter.

 3                The Special Master finds plaintiffs

 4    have not satisfied their burden of proof as to those

 5    arguments with supporting evidence.

 6                At bottom, the parties can quibble over

 7    whether the interests of the doctors or J&J are more

 8    important.  However, what can't be legitimately

 9    argued in this case is that the public interest is

10    paramount.  The Special Master believes that was not

11    fully taken into account in plaintiffs' arguments.

12    Given the paramount public interest in this matter

13    and the public's unqualified right of access to

14    non-privileged relevant evidence bearing on an issue

15    of paramount public importance to the public health,

16    the Special Master finds that the confidentiality

17    designation should be stricken.

18                As noted, The Regents filed their

19    opposition to J&J's application.  The Special Master

20    has considered The Regents' arguments and as will be

21    explained, rejects its position that J&J's

22    application should be denied.

23                First, there is a substantial question

24    whether The Regents have standing to object to J&J's

25    application.  Further, it is not insignificant that

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 63

1    Dr. Smith-Bindman has not objected or weighed in on

2    J&J's application.  Nevertheless, the Special Master

3    does not have to decide the standing issue to deny

4    The Regents' application.  The Regents primarily rely

5    on the California Public Records Act to support its

6    argument that Dr. Smith-Bindman's documents should

7    remain confidential.  However, that statute has no

8    applicability here because we are not addressing a

9    FOIA or Right-to-Know-type information request

10   directed to The Regents.  Instead, we are addressing

11   an issue in connection with civil litigation.

12              Section 7920.200 of the Public Records

13   Act provides that the statute does not affect the

14   rights of litigants under the laws of discovery of

15   California.  Further, a leading California evidence

16   treatise notes that the "Public Records Act does not

17   affect discovery rights" and that "information may be

18   subject to discovery even though it is exempted from

19   public disclosure."  See Witkin California Evidence,

20   6th Edition, Witnesses Section 302 (2023).

21              In addition, in Marylander v Superior

22   Court, 81 Cal.App 4th, page 1119, pages 1124-25

23   (2000), the court held that as to civil discovery,

24   the rules of civil procedure and evidentiary rules

25   govern rather than California's Public Records Act.

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

September 22, 2023

Page 64

 1                    The case cited by The Regents in its

 2    opposition email, Humane Society of US v Superior

 3    Court, has no applicability here since it did not

 4    address civil discovery.

 5                    It is clear, therefore, that the

 6    authority The Regents rely on is not applicable here

 7    and does not bar J&J's application.  The Regents'

 8    reliance on the deliberative process privilege, the

 9    official information privilege, and the researcher's

10    privilege is rejected without even addressing whether

11    these privileges exist.  The Regents presented no

12    arguments or facts to satisfy its burden of proof

13    that these privileges exist and apply here.

14                    Last, the Special Master notes that

15    even under the Public Records Act, if a specific

16    exemption does not apply, which appears to be the

17    case here, a balancing test of the parties' interests

18    is done to determine if disclosure is required.  The

19    Special Master has already discussed why the

20    balancing of interests favors striking plaintiffs'

21    confidentiality designations.

22                    Accordingly, in sum, for the reasons

23    stated, J&J's application to strike the

24    confidentiality designations and the

25    attorneys'-eyes-only designations on Dr. Saed and Dr.

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

Page 65

 1    Smith-Bindman's documents will be granted.  Like it

 2    did before, the order will provide that the status

 3    quo will remain in effect for at least 14 days until

 4    plaintiffs decide whether to appeal.  If no appeal is

 5    timely taken, this order may be implemented.

 6                    Counsel, that's the court's order.

 7                    For the good of the order, are there

 8    any questions or any other issues that you want to

 9    address?

10                    I'm going to ask Theresa if she can get

11    the transcript to me in accordance with the local

12    rules.  I doubt it will be necessary, but in case I

13    have to just clean up the oral opinion, I'll do that.

14    It will be published and you'll have a record of it.

15                    The order should be entered probably

16    not today, but I would hope by Monday at the latest.

17                    If there is nothing else, we can be

18    adjourned and I wish everyone a great weekend.

19                    Thank you.

20                    (Hearing Adjourned)

21

22

23

24

25

September 22, 2023

Page 66

```
 1                C E R T I F I C A T E

 2

 3         I, Theresa Mastroianni Kugler, a Notary Public

 4   and Certified Court Reporter of the State of New

 5   Jersey, do hereby certify that the foregoing is a

 6   true and accurate transcript of the testimony as

 7   taken stenographically by and before me at the time,

 8   place, and on the date hereinbefore set forth.

 9

10         I DO FURTHER CERTIFY that I am neither a

11   relative nor employee nor attorney nor counsel of any

12   of the parties to this action, and that I am neither

13   a relative nor employee of such attorney or counsel,

14   and that I am not financially interested in the

15   action.

16

17

18

19   _____
     Theresa Mastroianni Kugler,
20   Certified Court Reporter
     Certificate No. XIO857
21   Notary Public, State of New Jersey
     Commission Expires July 11, 2026
22   Commission No. 2410394
     Date:  September 25, 2023
23

24

25
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    29271353-654a-498b-9a9c-513671d2e776

**A**

**ability** 18:16
22:14 30:1
36:14,20,24
52:13
**able** 11:6 18:16
26:7 27:4,14
30:6,6,9,12,14
32:22 36:14,20
37:13,18,22,25
38:17,18 41:14
51:7
**absolutely** 22:6
22:10 23:20
43:6
**abstract** 12:10
12:15
**abstracts** 12:5
12:19
**academic** 33:5,6
**accept** 19:22
**accepted** 11:12
16:16 17:15,20
19:4,22,23
**access** 25:2
33:20 35:7
62:13
**account** 62:11
**accurate** 35:20
66:6
**act** 48:3,4,21
63:5,13,16,25
64:15
**action** 66:12,15
**actual** 7:18
12:10 29:6
**add** 10:1 46:9
47:12 50:7
**addition** 15:15
42:16 60:24
61:1 63:21
**address** 22:7
34:11 57:10
64:4 65:9
**addressed** 15:22
54:18,21 55:12

**56:2 57:23**
**addressing**
55:25 63:8,10
64:10
**adduced** 43:12
**adequate** 59:13
**adequately** 26:4
**adjourned** 65:18
65:20
**admissible**
43:12
**advancement**
23:14
**advertising**
45:12
**AFFAIRS** 4:11
**affect** 63:13,17
**afraid** 22:12
**afternoon** 5:11
5:14,17
**ago** 15:3 44:8,11
45:22 52:11
**agree** 14:12 22:1
25:6,7
**agreed** 37:7
52:19
**agreement** 9:17
**ahead** 8:13
**ALABAMA**
3:16
**alleged** 22:16
44:11 45:16,25
**allegedly** 45:13
**Allen** 3:14 5:15
**allowed** 48:24
**amend** 52:14
**amounts** 30:20
**analysis** 60:8
**analyze** 30:14
**and/or** 40:17
**anonymous** 54:5
60:6
**answer** 13:2
21:10 29:18
**anybody** 6:18
28:25 29:1

44:24
**anymore** 46:10
**apart** 34:8 38:13
**appeal** 65:4,4
**appearance** 5:8
**appears** 64:16
**applicability**
63:8 64:3
**applicable** 46:16
64:6
**application** 1:5
5:4 14:24 53:3
54:1,11,22
58:14 62:19,22
62:25 63:2,4
64:7,23
**applied** 55:6
**apply** 27:24
64:13,16
**appreciate**
29:18
**appropriate**
38:1 50:23,23
57:16
**April** 10:19
**area** 29:3
**arena** 22:24
**argue** 24:18
57:1,12
**argued** 14:8
15:13 22:15
62:9
**arguing** 15:1
22:12 45:9
**argument** 6:17
9:11 12:5
14:10,12,25
15:12 16:9,22
17:3,11,22,24
18:2,9,12,20
19:7 22:8 23:7
24:13 25:9
28:18 44:15
46:24 47:14
49:20 51:24
52:3 55:11

57:8,14 63:6
**arguments** 5:7
15:16,16,21
16:5 41:17
54:25 61:24
62:5,11,20
64:12
**article** 7:4 11:25
12:6 13:23
16:23 34:15,25
35:1,10 36:1,4
36:12,12,14,15
36:16,17,19
37:15 39:3,21
39:23 40:1
57:8,10 58:21
60:9
**articles** 13:25
29:14 33:4
35:19 41:11
44:3,3,4 57:13
57:23 60:20
**Ashcraft** 3:9
5:18
**asked** 6:7
**associated** 28:15
**assumed** 47:20
**assumption**
10:12
**assure** 60:1
**attached** 32:15
**attack** 27:9
**attorney** 66:11
66:13
**attorneys** 3:7,12
3:18,24 4:6,13
35:9
**attorneys'** 18:12
19:8,14 46:22
47:19 50:2
**attorneys'-eye-**
14:17 18:10,18
19:21 28:17
46:11,14 47:4
53:5 55:4
64:25

**attorneys-eyes...**
55:1
**Audubon** 1:23
**August** 34:12
54:19
**author** 42:13
**authoritative**
41:12
**authority** 64:6
**authors** 60:21
**available** 33:19
37:24 45:22
46:5
**aware** 31:1

**B**

**back** 18:24
22:11 30:16
32:16 37:9
38:2 41:16
45:21 53:9,12
53:24
**bad** 36:3 41:10
41:10 42:18,19
**balance** 21:12
22:4 29:19
44:2,7
**balanced** 29:11
61:8
**balancing** 21:18
26:9 35:23
43:24 58:7,8
64:17,20
**bankruptcy**
15:19 55:10
58:2
**bar** 24:16 45:11
64:7
**BARR** 3:21
**Barring** 6:19
**based** 11:14,18
11:21 16:10
56:18 58:6,12
58:14
**bases** 42:9
**basics** 6:23

basing 14:21
basis 26:7 27:7
battery 21:22
BAYLEN 3:22
Bear 16:18
bearing 62:14
Beasley 3:14
  5:15
beating 29:3,4
behalf 5:11,15
  5:18,21 6:3
  20:14
belief 26:1
believability
  36:8
believe 9:15
  10:15,22 14:2
  30:10,11 35:3
  35:9 41:8 43:1
  59:23,24 61:16
  61:21
believes 57:4
  62:10
belongs 24:24
bench 55:24
benefit 27:20
best 30:18 51:20
beyond 31:2,6
  40:18
bias 39:2
Biddle 4:1 5:24
  6:10
book 44:23
bottle 45:21
bottom 62:6
bound 9:9 52:4
BOX 3:16
break 53:8
brief 14:8 47:12
  49:23
briefs 39:17
  52:3
bring 25:22
  46:20
brought 10:2
  26:15 41:18

47:2
BUCHANAN
  3:21
build 27:14
burden 43:7,11
  50:5 62:4
  64:12
Burger 20:5,7
business 24:21
  24:23 31:25
  32:9

———— C ————
C 3:1 66:1,1
CA 4:12
Cal.App 63:22
California 6:3
  54:13 63:5,15
  63:15,19
California's
  63:25
call 49:18
campus 4:3,10
  6:4
cancer 45:14
career 38:10
case 15:20 23:21
  33:9 37:8
  43:10 48:12,14
  49:3 51:14,17
  52:12 54:12
  57:24,25 60:17
  60:22 61:14
  62:9 64:1,17
  65:12
categories 8:14
  8:19 9:13 10:2
categorize 8:15
category 9:25
cause 55:19
  56:10
causes 45:13
certain 5:5
  17:23
certainly 24:7
  24:13 52:24

Certificate
  66:20
Certified 1:21
  2:10 66:4,20
certify 66:5,10
cetera 31:15
challenge 45:3
  54:25
change 15:9
  16:12 21:17
  22:2,9,10
  26:22 56:19
changed 16:4
  24:1,10
changing 21:18
  34:20
characterizati...
  8:18
CHERRY 3:4
Chief 24:8
choice 38:3 45:6
chosen 42:13
Chris 5:20
Christine 4:9
  6:2 47:11
christine.haas...
  4:13
CHRISTOPH...
  3:21
Circuit's 55:14
circumstances
  6:19 14:23
  15:2,9 21:16
  21:18 22:3,9
  22:10,21 23:25
  24:10 56:20
  58:6,9 61:18
citation 48:12
  48:14 49:3,10
cite 11:8 14:20
  36:11,13,18
  58:25
cited 16:14
  34:13,25 35:1
  35:15,19 44:5
  51:4 58:22

64:1
civil 1:2 48:6,21
  48:23 63:11,23
  63:24 64:4
clarified 6:17
clarify 14:13
Clarissa 4:19
  6:6
clean 65:13
clear 14:19
  19:12,12,12
  24:14,14 43:6
  58:5 64:5
clearly 14:21
  43:8,13
client 43:3 45:18
clients 51:13
closed 17:17
co-author 27:17
co-authors 7:22
  9:20 12:20
  13:18 32:17
  37:10
co-researcher
  27:18
come 18:21
  21:13 30:25
  42:18 52:1
  53:9,12
comes 27:11
  42:19
coming 18:14
commencing
  2:14
comments 7:4
  11:18 17:15
  18:22 19:6
  35:13 36:25
  39:16,20 40:7
  40:8,9,11
  41:20 42:7,10
  42:11 50:9
  59:16,18 60:6
  60:17
COMMERCE
  3:15

Commission
  66:21,22
Committee 5:12
  5:16,19,22
  46:21
Commonwealth
  2:12
communicatio...
  8:16,17 9:19
  9:21 12:20
  13:17 32:6
  54:8
community
  26:19,23 27:13
  58:22
COMPANIES
  4:7
comparatively
  30:7
competency
  40:4
competent 39:25
competing 32:21
competitive 25:1
  28:1 32:20
complete 59:17
concludes 56:18
conclusion
  22:19
conclusions
  35:10 58:3
conduct 20:14
  34:1
conducting
  28:24
conference
  12:16
confidence
  20:10 37:17
confidential
  7:14,16,19
  8:11 10:4
  12:14,17,18,23
  15:25 16:17
  17:17 18:11
  19:24,25 20:11

20:19,24,25
21:9 28:20
33:13 35:14
39:1 40:25
55:20 56:11
59:2 63:7
**confidentiality**
1:6 5:5 14:18
18:6 19:16
24:25 26:3,10
29:20 30:22
43:9,16 46:12
53:4 54:2 55:5
56:3,4,15,24
57:16 58:18,23
59:3 60:10,19
61:7,11 62:1
62:16 64:21,24
**confirm** 53:21
**confirmed** 6:20
53:11
**connection**
63:11
**considerations**
7:25
**considered** 8:10
10:4 12:21
57:20 62:20
**CONSUMER**
4:7,7
**contained** 39:11
**contentions**
31:17
**context** 18:13
19:8 33:6,8,16
48:4 50:23
**continue** 51:14
**continued** 9:5
**contrary** 43:2
57:12
**correct** 12:2
14:9 16:24,25
17:4,22 29:10
29:14,15 34:15
36:10,10
**correctly** 14:25

15:4
**correspondence**
28:20
**counsel** 4:10
9:16 38:5
46:21,25 47:7
48:11 51:6
65:6 66:11,13
**COUNSEL/U...**
4:10
**couple** 6:14,16
13:1 15:3
25:21 29:9
**course** 6:18
16:20 46:6
54:9
**court** 1:1,21
2:10 14:16
34:17 36:4
53:11 61:1
63:22,23 64:3
66:4,20
**court's** 65:6
**CPRA** 50:1
**create** 8:4
**created** 38:4
**creates** 42:14,20
**credence** 37:21
**credibility** 36:8
37:21 39:2
50:12,19
**credible** 39:4,13
**credibly** 25:13
**criticism** 41:24
**criticisms** 11:18
18:25,25 19:2
41:15
**criticizing** 35:16
**critiques** 37:11
**cross-examina...**
50:21
**crux** 61:24
**ctisi@levinla...**
3:24
**currently** 26:18
**curtain** 9:4

44:16
**cut** 6:12
**CV** 7:16

**D**
**Dan** 7:3 8:13
9:10 14:8,25
17:6 25:17
29:9 31:9 33:2
35:12 36:1
50:6,7
**Daniel** 3:3 5:12
**data** 7:7,21 8:17
9:23 11:22
12:18 13:15
28:11,19 30:12
32:17 37:12
54:9 59:14
**date** 7:10 66:8
66:22
**dated** 55:8
**Daubert** 34:13
40:12
**day** 46:2
**days** 65:3
**DC** 3:10
**dead** 32:3
**deal** 21:11
**dealing** 6:23
8:19 18:10,11
60:20
**decades** 25:5
**decide** 32:2
56:12 63:3
65:4
**decided** 37:25
56:9,12
**decides** 26:23
**decision** 14:22
15:2 25:24
50:18 55:14
58:11
**defend** 59:9
**defendant** 4:6
26:2,4 43:10
61:6

**defendants** 5:25
6:9 14:4 26:2
26:11,12 27:3
30:8 36:11,13
37:16,18,22
56:14,19,22
**defendants'**
34:19 54:22,25
**defense** 14:3,5
**define** 39:8
**defined** 43:8,13
**definitive** 41:12
**deliberative**
64:8
**denied** 54:23
60:11 62:22
**deny** 59:8 63:3
**deposed** 24:2,4
**depositions**
52:16
**deserve** 60:18
**deserves** 59:22
**designate** 55:19
56:10
**designated**
19:14 59:1
**designation**
14:17 18:6,10
18:11,18 19:16
19:21 21:11
26:10 28:17
29:13 43:16
46:11,12,15
47:4 55:5 56:3
57:16 62:17
**designations** 1:6
5:5 14:18 43:1
46:3 53:5 54:2
55:1,4 56:16
56:24 58:19,24
59:3 61:7,12
62:1 64:21,24
64:25
**detail** 6:25 9:11
**detailed** 55:24
**determination**

36:16 38:21
50:12
**determine** 64:18
**detrimental**
39:1 47:24
**developed** 8:17
25:4
**difference** 17:25
18:3 34:3 37:6
**different** 10:20
22:3,21 25:21
45:19,24 57:2
57:5 58:9
**DIRECT** 4:4
**directed** 63:10
**disadvantage**
25:2 28:2
**disagree** 14:12
22:19 25:16
29:21
**disagreed** 22:18
**disagrees** 57:3
**disappear** 21:23
**disclosure** 26:14
47:23 61:9,18
61:23 63:19
64:18
**disclosures**
52:14
**discourage** 41:3
**discover** 32:4
**discoverability**
52:23
**discoverable**
33:10 54:22
60:18
**discovery** 52:10
56:4 61:22
63:14,17,18,23
64:4
**discredit** 60:12
**discredited** 59:6
**discussed** 28:14
30:25 64:19
**discussion** 12:4
17:11 56:6

disinfectant 51:21
displayed 12:16
dispute 12:8
  13:4,9 34:14
  46:10,18 52:2
  52:19,21
DISTRICT 1:1
  1:1
disturbed 55:22
dlapinski@m...
  3:6
DNJ 56:2
docket 1:2 5:3
  55:10
doctor 27:19
doctors 9:24
  28:3 31:9
  32:21,23,24
  43:25 47:25
  54:6,15,21
  56:13,23 59:7
  62:7
doctors' 21:15
  53:6 54:9,19
  55:2,15 60:4
document 35:8
  48:6
documents 5:6
  6:23,25 7:3,7
  7:13,15 8:8,14
  8:17,19,23,24
  9:2,7,8,12,13
  19:24,25 20:8
  21:8 26:4,7
  33:9 39:1
  45:10 46:4,15
  46:17 47:5,19
  47:24 48:2
  50:1,15 51:2
  52:7,8,9,23
  53:6 54:2,4,5
  54:19,21,23
  55:2,6,15,19
  55:21 56:11,25
  57:9 59:1

60:10 61:8,22
  61:23 63:6
  65:1
doing 9:24 28:25
  29:2 32:8
  33:18 37:10
  41:4,4,22
domain 13:20
  23:13 26:24
  41:1
doubt 65:12
Dr 6:24,24,25
  7:12 8:1,8,20
  9:2,2,6,12,13
  10:8,13,14
  11:15,16,24
  12:5 13:6,6,11
  13:12,23,24
  16:1,2,23 17:2
  20:13,13 21:5
  21:5 23:20
  24:3 25:10,11
  27:9,10,25,25
  28:5,6,22,22
  29:5,6 30:10
  30:11 32:1
  33:16,16,21,22
  34:14,24 35:1
  35:6,9,14,16
  37:6,14,18,19
  37:21 38:25
  39:16,23 40:17
  40:17,20,20,23
  40:23 43:14,14
  46:15,17,23,23
  47:1,2,4 50:13
  50:13,19,19,24
  50:24 54:2,3
  54:16,16 55:6
  57:7,21,22
  58:19,20,21
  59:4,5,24,25
  60:8 63:1,6
  64:25,25
draft 7:24 10:3
  13:14,18 16:11

28:10 54:7
  60:18
drafts 7:5,20
  10:3 12:19
  23:12
drill 29:8
Drinker 4:1
  5:24 6:9
DRIVE 3:4
due 58:1,23
dumb 45:9
  50:12

_____

E
E 3:1,1 4:16,16
  66:1,1
earlier 30:16
  31:22 41:18
easier 53:23
EAST 3:4
Edition 63:20
editor 18:21
  19:3,5
edits 7:22 11:17
educating 59:4
effect 65:3
effectively 50:1
  58:24 59:9
  60:12
effort 20:15
either 12:11
  17:5 43:2
  44:25 50:13
electricity 21:22
electronically
  10:24
email 7:10 47:12
  48:5,6 64:2
emails 7:21,23
  28:10 37:9
emphasize 38:23
employee 66:11
  66:13
enable 25:2
encourage 26:16
encourages

18:20
endeavors 24:23
engaged 23:15
entered 25:24
  65:15
entertain 58:13
entire 27:16,22
entitled 45:15
  48:7
entries 5:8
environment
  32:20
equal 59:13 60:1
equally 27:24
  46:16
Eric 4:2 6:8,12
  11:6
eric.friedman...
  4:5
especially 61:15
espouse 59:8
ESQUIRE 3:3,9
  3:15,21 4:1,2
essentially 45:8
establish 24:14
established 16:8
et 31:15
evaluated 29:23
eventually 54:7
everybody 9:8
  38:12
evidence 31:16
  33:1 43:12,13
  44:18 45:4,5
  50:22 56:19
  62:5,14 63:15
  63:19
evidentiary
  31:16,18 32:9
  63:24
exact 11:21
exactly 30:19
  35:25 44:17
  48:14 49:4
example 36:13
  42:5

exchanges 7:23
exempted 63:18
exemption 64:16
exemptions 48:7
  48:24,25
exist 39:6 44:6,7
  64:11,13
existed 14:22
  21:16 56:20
  57:5
existing 58:12
expect 9:7,8
  25:12
experiment
  45:25
experiments
  23:11
expert 13:6
  18:16 33:17,18
  34:6 37:7 38:1
  38:8,10 40:21
  42:14,17 44:20
  51:23 52:14
  57:21
experts 13:4,5
  13:10,13,17,23
  14:5 22:14
  23:15 24:25
  25:4 26:14
  27:2 30:9,11
  30:12 37:23
  38:4,6,15 41:4
  42:15 44:16,25
  51:3,7,8 54:17
  57:20 59:15
  60:22
experts' 57:25
  58:3 59:21
  60:25 61:7,14
Expires 66:21
explain 57:6
explained 62:21
extent 30:24
  51:2
eye 50:25 51:15
  51:17

eyes 18:12 19:8
  19:14 46:22
  47:19 50:2

**F**

**F** 66:1
**F.Supp** 56:2
**face** 23:10
**fact** 11:25 16:10
  22:19 26:15
  32:10 43:12
  44:19 57:13,14
  57:18 58:17
  59:14
**factor** 29:22
  57:15
**factors** 56:17
**facts** 14:23 15:1
  15:24 51:18
  58:14 64:12
**Faegre** 4:1 5:23
  6:9
**fair** 8:18 10:11
**fairly** 15:5
**fairness** 60:1
**faith** 15:14
**fall** 44:2,7
**far** 28:12 52:9
**favor** 34:18 44:8
  44:9
**favoring** 61:9
**favors** 64:20
**FAX** 3:5,17 4:4
**feeling** 11:5
**felt** 39:13
**field** 42:21
**file** 35:16
**filed** 52:3 62:18
**files** 35:14
**filing** 55:10
  57:11 58:2
  60:9
**final** 13:22,22
  13:24 20:18
  49:25
**finally** 10:25

51:25
**financially**
  66:14
**find** 18:25 24:1
**finds** 62:3,16
**firm** 3:14 5:13
**first** 16:9 18:9
  23:21 24:7
  25:23 33:22
  40:2 43:17
  45:20 50:6
  54:18 55:13,17
  62:23
**fit** 9:13
**five** 10:10 11:12
**flies** 23:10
**flood** 61:21
**floor** 4:11 42:23
**FLORHAM** 4:3
**FLORIDA** 3:22
**FOIA** 63:9
**followed** 44:24
**following** 13:10
**foregoing** 66:5
**form** 24:22
  36:22
**formal** 48:4
**FORMAROLI**
  1:20
**formatting**
  40:10
**formula** 45:20
  45:23
**forth** 32:16 37:9
  66:8
**forward** 18:21
  33:1 44:19
**four** 32:3 40:15
  40:16 57:24
**fragrance** 20:21
  30:19
**fragrances**
  38:19
**Francisco** 4:12
  6:4
**fraud** 40:23

**free** 18:4
**FRIDAY** 1:12
**Friedman** 4:2
  6:8,8 10:23
  11:7
**front** 11:5
**full** 11:8 59:12
  59:22,25
**fully** 33:19
  58:24 62:11
**fundamentally**
  59:7
**further** 29:19
  62:25 63:15
  66:10
**future** 9:3,7
  52:23

**G**

**gates** 61:21
**gee** 44:12
**general** 4:10
  9:13 23:13
  26:16,17 31:2
  31:22,23 32:12
  51:16 61:10
**generally** 7:7,9
  8:19 9:18 33:4
  37:23 54:4
**generated** 7:17
  54:9 58:2
**GEORGIEV**
  4:9 6:1 47:15
  48:18,22 49:6
  49:11,17,22
**Gerel** 3:9 5:18
**getting** 28:9,10
  28:10,11 60:14
**give** 21:23 48:12
  48:13,13 49:3
  49:9 59:17
  60:5
**given** 13:13,17
  61:18 62:12
**go** 9:6,11 18:24
  29:19 30:16

36:14,20 41:16
  53:22
**goes** 20:2,17
  28:24 31:6
  38:2 40:25
**going** 5:2 10:13
  11:6 16:20
  18:24 19:4
  20:4,10,11
  21:8,20,22,23
  21:25 31:4
  33:3 38:11
  40:22 43:22
  46:16 48:13
  49:2 50:18,18
  52:25 53:20,20
  53:21,22 65:10
**good** 5:10,14,17
  15:14 36:3
  41:9,10 42:15
  47:10 53:15
  55:18 56:10
  65:7
**govern** 63:25
**granted** 54:23
  65:1
**grave** 61:4
**great** 36:2 65:18
**greatest** 36:1
**ground-break...**
  39:24
**guess** 21:25 39:8
  49:23
**guise** 21:4
**Gynecology**
  11:8

**H**

**Haas** 4:9 6:1,2
  47:15 48:18,22
  49:6,11,17,22
**handed** 27:16
**happen** 11:2
  38:14
**happens** 40:24
**harm** 22:16,16

24:14,15 25:1
  26:10,13 28:13
  28:14,15,20
  29:6 31:8
  42:14 44:11
  61:11,25
**harmed** 43:2,4
  51:3,6,13,14
  51:17
**harmful** 39:5,8
**harms** 26:9
**harsh** 39:20,20
**head** 10:11
  49:12
**health** 61:4
  62:15
**hear** 6:17 21:17
  43:4 46:8 50:6
  59:22
**heard** 47:6 49:7
**hearing** 24:8
  46:24 47:1
  60:3 65:20
**hears** 59:24
**held** 39:3,23
  41:11 43:21
  46:13 54:25
  55:15,18 63:23
**help** 59:16
**hereinafter**
  54:13
**hereinbefore**
  66:8
**hey** 20:23 41:2
**hidden** 51:19
**high** 22:17
**higher** 42:3
**highly** 24:20
  31:14,19 32:20
**HILL** 3:4
**hire** 22:14
**Hobson's** 38:3
  45:6
**hogwash** 37:19
**hold** 21:5
**holding** 49:20

55:22 60:17
**holds** 8:7
**honest** 49:8
**Honor** 5:10,15
    5:18 7:10 9:9
    10:1,15 11:4
    11:14 12:2,9
    13:10 15:6,11
    15:22 16:13
    19:22 26:8
    27:4 33:15
    39:7 40:3
    41:18 46:19
    49:8 50:10,17
    53:16
**Honor's** 52:4
**hope** 6:20 65:16
**Horse** 1:22
**hour** 23:23
**Humane** 64:2
**hump** 43:20,20
**hypercritical**
    42:2
**hypothetical**
    35:12,13 38:24
**Hypothetically**
    38:23

**I**

**iconic** 45:24
**idea** 24:11 28:12
    45:5
**identical** 55:25
**identified** 7:14
    7:15
**identify** 8:14
**ILLINOIS** 4:11
**impact** 18:15
**impacted** 44:16
    61:17
**impacting** 19:9
**implemented**
    65:5
**importance**
    51:22 60:23
    61:4 62:15

**important** 45:10
    54:15 58:16
    62:8
**Importantly**
    58:10
**improper** 42:20
**inadvertent**
    47:23
**incorporated**
    55:7 56:7
**increase** 32:25
**indicated** 14:21
**individuals**
    23:19 24:5
    26:6 27:6
**indulgence**
    21:20
**industry** 17:17
**information** 8:1
    8:11 13:19
    15:25 16:1,17
    18:14 20:1,2
    20:25 24:4,21
    24:23 26:15,17
    26:20 27:7
    28:19 29:22
    30:14 31:14,19
    31:21,24,24,25
    32:7,8,13
    35:24 36:7
    37:13,14,17
    38:12 39:6,8
    39:11 40:25
    41:23 42:1
    51:18 60:3
    63:9,17 64:9
**infrequently**
    23:4
**ingredient** 30:21
**ingredients**
    20:20 38:20
    45:21
**inherent** 23:2
**injury** 43:8,13
**inside** 27:24
    30:21

**insignificant**
    62:25
**instance** 43:17
    55:13,17
**institutions** 25:3
**integrity** 17:18
    19:9
**intellect** 24:22
**intense** 61:3
**intention** 55:16
**interactions**
    27:23
**interagency**
    47:25
**interest** 29:22
    29:25 30:5
    31:6 57:24
    58:3 59:21
    60:2 61:2 62:9
    62:12
**interested** 37:8
    66:14
**interests** 21:12
    21:13,15 22:4
    26:5 29:11,20
    30:18,22 35:23
    42:25 43:25,25
    56:13,14,21,22
    58:7 61:9 62:7
    64:17,20
**interference**
    22:13,13 28:12
    28:16
**interjected** 52:2
**internal** 28:9
**invoices** 7:16
**involved** 20:7
    23:19,20 24:6
**involves** 61:3
**iPad** 21:21
**issue** 8:14 12:8
    12:12 15:22
    16:6 21:8,10
    21:12 30:2,24
    43:23,24 46:12
    52:22,25 53:2

53:3 54:4,16
55:21,25 56:11
56:11,12,25
57:10 61:2,3
62:14 63:3,11
**issued** 7:1 55:24
**issues** 28:19
    47:7 51:21
    65:8

**J**

**J&J** 15:19 20:19
    29:11 30:23
    35:17 38:18
    39:2,4,22,24
    40:18,21 41:1
    49:25 58:14,17
    58:24 59:4,7,8
    59:12,14 60:11
    62:7
**J&J's** 1:5 5:4
    14:24 17:24
    54:1 62:19,21
    62:24 63:2
    64:7,23
**JAMA** 18:25
**jeopardy** 38:11
**Jersey** 1:1,23
    2:12 3:4 4:3
    52:1 66:5,21
**JOEL** 1:15
**Johnson** 1:5,5
    4:6,6,6,6,7,7
    5:24,24 6:9,9
    50:25,25
**journal** 10:24
    11:2,16,17,19
    19:1 20:23
    39:10,21 44:13
**journals** 7:24
    8:3 9:22 10:21
    11:12 12:21
    23:4
**jschneider@...**
    1:17
**Judge** 24:8

34:13,25 35:19
39:4 44:5
52:13,17 57:9
58:22 60:9
**July** 66:21
**justify** 15:2 22:3
    43:16 56:3
    57:2
**justifying** 58:17
    59:19

**K**

**K** 3:10
**keep** 12:14
    14:18
**keeping** 29:12
**kept** 29:21,21
    45:2
**kick** 22:25
**King** 20:5,7
**knew** 24:7
**know** 6:15,23
    9:3 11:2 13:2
    18:2 22:5
    23:25 24:7
    29:5 30:17,18
    31:2,4 34:24
    35:25 36:2,3
    38:25 40:3,4,5
    40:6 41:25
    42:1,3,5,8,8
    47:17 48:1
    55:23
**knowing** 24:6
**known** 4:7 56:5
**Kugler** 2:10
    66:3,19

**L**

**L** 4:16
**lab** 8:24 28:10
    32:18 37:12
**laboratory**
    13:15
**labs** 27:24
**LAKE** 3:4

| | | | | |
|---|---|---|---|---|
| **Lapinski** 3:3 | **lifted** 44:17 | **maintain** 48:24 | **Master** 1:15 5:1 | 30:5 41:10 |
| 5:10,12 7:9 | **line** 14:20 17:13 | **maintained** | 6:5,11 8:12 | 48:3 53:25 |
| 9:15 10:14 | **lines** 25:25 | 24:25 32:11 | 9:10 10:7,17 | 61:2,3 62:12 |
| 11:4,13 12:2,9 | **LINTNER** 4:19 | 47:3 | 10:20 11:1,10 | **McCRACKEN** |
| 13:8 14:2,11 | **listen** 14:24 | **maintaining** | 11:23 12:3,24 | 1:16 4:18 |
| 15:5,10 16:25 | **literature** 22:23 | 42:3 | 13:21 14:7,15 | **MDL** 5:2 |
| 17:3,8 18:1,8 | **litigants** 63:14 | **making** 20:2 | 15:7 16:18 | **mean** 6:12 17:21 |
| 19:17,20 22:1 | **litigation** 1:6 | 29:1 37:23 | 17:1,6,9 18:7 | 49:14 |
| 25:20 29:15,24 | 20:8,24 21:3 | 38:21 45:23 | 19:11,19 21:7 | **means** 61:20 |
| 31:12,18,21 | 23:16,19,20 | **management** | 24:17 25:17 | **medical** 26:19 |
| 33:11,14 34:16 | 24:6 30:2 33:6 | 52:12 | 29:8,16 31:8 | 26:22 39:10 |
| 35:3 36:9 37:3 | 33:8,15,24 | **manufactured** | 31:13,20 33:2 | 58:22 |
| 39:7,18 40:2 | 34:7 38:1 | 30:20 | 33:12 34:10,24 | **meet** 16:6 |
| 41:13 46:19 | 40:20 48:6,21 | **manuscript** 7:6 | 35:5 37:2 | **met** 22:16,20 |
| 50:9 53:16 | 48:23 54:17 | 8:5,16 10:9,12 | 38:22 39:15,19 | 43:21 55:13,15 |
| **Lapinski's** 22:8 | 59:21 63:11 | 10:14 11:11,14 | 41:6 42:22 | 55:18 56:6 |
| **large** 58:23 | **little** 8:13 | 11:18,21,24 | 43:15,19 46:7 | **method** 23:2 |
| **latest** 65:16 | **livelihood** 44:15 | 12:11,15,21 | 47:9 48:9,20 | **methodology** |
| **Laughter** 14:14 | 45:4 | 13:11,13,16,22 | 49:1,9,13,19 | 44:24 45:1 |
| **law** 3:14 5:12 | **living** 8:4 20:13 | 17:4,20 18:14 | 50:4 51:10 | 61:15 |
| 43:6 49:3 | 20:17 33:24 | 18:22,24 19:5 | 52:6,22 53:19 | **Michelle** 3:9 |
| **laws** 63:14 | 34:5 | 19:10 26:21 | 54:1,18,20,20 | 5:18 |
| **lawyers** 25:10 | **LLC** 3:3 | 27:12 28:9 | 54:24 55:3,7,8 | **middle** 31:13 |
| **leading** 63:15 | **LLP** 1:16 3:9 | 29:25 30:1,2 | 55:12,14,18,20 | **mind** 47:16 |
| **learn** 24:2 | 4:1,18 | 31:3 32:14,15 | 55:24 56:8,18 | **Minerva** 11:7 |
| **leave** 19:3,5 | **local** 65:11 | 36:21,22,23 | 57:3,5 58:5,8 | 33:21 |
| 41:19 | **long** 32:2 | 37:1,4,4,5 39:9 | 58:10 59:10 | **minimal** 40:9 |
| **leaves** 6:1 | **long-term** 27:20 | 39:12 41:21,22 | 60:16 61:13,16 | **minimum** 42:5 |
| **LEGAL** 4:10,11 | **look** 20:4 21:2,3 | 41:24 42:12,13 | 61:20 62:3,10 | **minutes** 53:13 |
| **legitimate** 24:12 | 22:24,25 26:13 | **manuscripts** | 62:16,19 63:2 | **mislead** 45:17 |
| **legitimately** | 30:7,12 36:21 | 7:17,18,20,21 | 64:14,19 | **misstating** 14:9 |
| 62:8 | 38:20 39:15 | 7:22,23,24 | **Master's** 25:25 | **Moline** 40:20,20 |
| **Leigh** 3:15 5:15 | 41:2 | 10:3,4 12:19 | 26:5 57:15 | 40:23,24 |
| **leigh.odell@b...** | **looked** 20:12 | 13:14,18,25 | 59:15,20 60:8 | **Monday** 65:16 |
| 3:18 | 39:11,12 | 15:17,20,23 | **Mastroianni** | **MONTGOM...** |
| **let's** 6:22 21:16 | **looking** 9:18,19 | 16:11,15 24:20 | 1:20 2:10 66:3 | 1:16 3:16 4:18 |
| 36:12 43:4 | 9:20,22 12:14 | 28:10 34:2,5 | 66:19 | **motion** 40:12 |
| 50:6 | **lot** 42:24 53:23 | 37:11 38:16 | **material** 22:2 | **motivation** 42:4 |
| **letter** 14:8 16:13 | **love** 49:15,16 | 42:17 54:5,7,8 | 26:1,11 27:5 | **motivations** |
| 24:18 31:11 | **LTL's** 55:10 | 57:17,18 60:18 | 52:16 57:15 | 40:5 42:9 |
| 34:17 47:12 | 58:2 | **market** 20:18 | **materially** 57:5 | **Motley** 3:3 5:12 |
| 62:2 | | **MARKETING** | 58:18 61:6,17 | **MOUGEY** 3:21 |
| **Levin** 3:20 5:20 | **M** | 1:5 | **materials** 7:19 | **mouth** 14:10 |
| **LIABILITY** 1:6 | **M** 4:1 | **Marylander** | 7:20 10:5 | **moved** 41:1 |
| **license** 2:11 | **magnified** 58:1 | 63:21 | 19:14 51:24 | **mparfitt@ash...** |
| **lies** 29:25 | **main** 59:19 | **massive** 58:1 | **matter** 2:9 23:13 | 3:12 |

| | | | | |
|---|---|---|---|---|
| **N** | 63:16 64:14 | 35:6 39:20 | 55:8,9 56:4,5 | **PARK** 4:3 |

**N** 3:1 4:16
**name** 11:2
**nature** 40:9
**necessary** 30:13
  30:13 58:7
  65:12
**necessitating**
  56:15
**need** 27:1,8
  30:17 31:2,4
  33:14
**need-to-know**
  26:7 27:7
**needs** 23:9 27:2
  60:4
**negative** 18:15
  19:2
**neither** 50:24
  66:10,12
**never** 16:12 49:7
  55:9
**Nevertheless**
  63:2
**new** 1:1,23 2:12
  3:4 4:3 14:23
  15:1 24:4
  34:18,20 44:15
  52:1,16 56:18
  57:1 58:6,7,13
  58:14 66:4,21
**night** 46:1
**nodding** 9:16
**non-privileged**
  62:14
**normal** 46:5
**Notary** 2:11
  66:3,21
**notations** 7:6
**note** 25:8 54:15
**notebooks** 8:24
  13:15 37:12
**noted** 58:10,13
  62:18
**notes** 28:11
  32:18 53:9

notions 61:10
**novel** 29:3 61:16
**November** 10:16
  10:24 52:15
**nullity** 57:18
**number** 2:11
  7:11 10:10
  51:15,16,20
  54:20 55:8
**numbers** 14:20
**NW** 3:10

**O**

**O** 4:16
**O'Brien** 3:21
  30:3 34:21
  36:12,13,15,16
  36:17 37:1,4,8
  37:9
**O'Dell** 3:15 5:14
  5:15 35:2,4
  52:19
**object** 62:24
**objected** 63:1
**Obstetrics** 11:7
**occur** 61:11
**occurred** 15:18
**October** 14:16
  15:12,21 16:22
  17:4,7 19:18
  21:14 22:11
  25:23 28:14,15
  29:10 38:3
  41:17 43:21
  44:2 46:14,24
  47:22 54:24
  55:9,11 56:8
  56:20 57:2,6
  57:14 58:9,11
**OFFICE** 4:10
  4:11
**official** 64:9
**Oh** 6:11
**Okay** 10:7,17
  11:1 12:3,24

35:6 39:20
  41:13 43:19
  47:9 49:6,22
  50:4 53:14
**once** 16:12
  27:20
**ones** 6:25
**ongoing** 24:22
  40:19
**open** 18:5 37:24
  61:21
**opinion** 36:22
  53:10 55:24
  56:2 58:11
  65:13
**opinions** 13:7
  14:1 33:17
  35:11,20 37:19
  40:14,15 41:15
  57:21,22,25
  58:20,25 59:5
  59:8,22 60:4
  60:12
**opportunity**
  16:21 30:8
  32:5 47:6
  50:22 51:7
  52:16 59:9,13
  60:2,5,11
**opposed** 54:11
**opposing** 20:9
**opposite** 48:15
  49:4
**opposition** 21:2
  62:19 64:2
**option** 42:6
**oral** 28:18 52:3
  53:10 54:25
  55:11 58:11
  65:13
**order** 6:20 8:4
  8:10 14:5 21:4
  27:5,14 31:7
  32:24 41:3
  52:12,17 53:11
  53:21 54:20

55:8,9 56:4,5
  65:2,5,6,7,15
**ordered** 55:4
  56:24
**outweigh** 56:22
**outweighs** 56:14
**ovarian** 45:14

**P**

**P** 3:1,1 4:16
**P.O** 3:16
**PA** 3:21
**page** 14:20
  17:13 24:18
  25:24 31:10
  43:10 62:1
  63:22
**pages** 7:11 17:10
  18:8 32:15
  63:22
**paid** 23:22,23
  33:25 37:19
**Pansy** 15:15
  22:17 24:16
  43:10,22 55:14
**Papantonio** 3:20
  5:21
**paper** 23:18
  24:1,3,4
**papers** 5:6 6:13
  9:4 22:15,22
  23:4 44:12
  45:6 49:14
**paragraph**
  52:20
**paragraphs**
  31:14
**paramount**
  56:21 59:20
  60:2,22 62:10
  62:12,15
**paraphrase**
  24:19
**Parfitt** 3:9 5:17
  5:18 52:19
  53:15

**PARK** 4:3
**part** 8:1 13:16
  16:1,2,14 23:2
  32:8,11 33:23
  33:24,25 34:5
  45:18 52:3
  54:23
**particular** 12:16
  41:16
**parties** 21:13
  34:14 44:1
  55:23 62:6
  66:12
**parties'** 64:17
**party** 20:9 41:11
  43:9 48:19
  60:22 61:5
**path** 32:2
**pause** 52:10
**peer-review** 7:4
  8:16 9:5 12:22
  17:14 35:13
  40:13 54:5
  60:17 61:17,22
  61:23
**peer-reviewed**
  33:9
**peer-reviewer**
  41:24,25 42:2
  42:4,6,10
**peer-reviewers**
  9:21 35:25
  39:25 40:3,4,5
  40:11 41:9,19
  59:16 60:6
**peer-reviewers'**
  40:6,8
**Pennsylvania**
  2:13
**PENSACOLA**
  3:22
**people** 20:6
  22:14,25 27:13
  37:8 40:15,16
  46:1
**performed**

45:25
period 15:19
permit 59:7
personnel 47:25
perspective
   12:13 16:4
   32:9
phone 6:6
physician 27:21
picked 38:13
picture 59:17
pier-reviewer
   41:16
Pike 1:22
place 66:8
placed 25:1
Plaintiff 5:19
Plaintiff's 5:11
   5:16,21
plaintiffs 3:7,12
   3:18,24 13:3
   15:12 22:11
   23:22,23 24:18
   29:11,12 34:12
   35:21 36:18
   37:20 39:3
   42:24 43:7,11
   45:8 51:5
   52:13 54:12
   55:13,18 57:1
   57:7,10,12
   60:8,24 61:10
   61:14 62:3
   65:4
plaintiffs' 12:12
   14:3,6 35:9,20
   36:5 38:4,5,6
   38:10 41:4
   42:14 44:6,9
   45:11 46:20,21
   50:11 51:5
   55:1 56:15,24
   58:18,23 61:24
   62:2,11 64:20
playbook 27:16
   28:23

playing 42:21
PLOS 17:12,16
   18:9,19,20,23
   41:19 42:5
plug 21:21
PM 2:14
point 30:16
   40:19 46:20
   47:7 49:25
   51:22
pointed 41:17
points 25:22
   29:9 47:16
   52:18
policy 23:14
   26:16,18 30:17
   31:23,23 41:19
   49:7
portion 22:8
position 7:12,25
   8:7 14:13 15:4
   15:8,11 16:13
   16:17 19:13
   25:14 26:22
   34:19 36:5,17
   38:7 40:22
   44:6,21 46:22
   47:22 48:8
   49:15 50:11,16
   50:17 52:5
   62:21
positions 14:6
possibility 57:17
possibly 59:5
posters 12:5
potential 22:13
   24:15 42:19
powder 1:5
   20:22 30:19,20
   38:19 45:20
practice 25:5
   32:12
practices 1:6
   25:3 31:15
prejudice 26:2
   26:11 27:6

prejudiced 39:2
   42:25 43:3
   45:18 58:18
   61:6
prejudicial
   35:17 39:22
present 39:5
   46:25 52:24
   58:12,17 59:13
   59:17,24 61:10
presented 14:23
   36:4,4 56:1
   57:2,8 58:6
   61:18 64:11
presently 57:4
press 45:12
prestige 32:25
pretty 14:19
   39:20,20
prevent 59:4
prevented 59:12
   60:14
previously 51:5
primarily 63:4
primary 15:10
PRINCIPAL
   4:10
print 10:25
prior 17:20
   28:18
privilege 64:8,9
   64:10
privileged 55:21
privileges 64:11
   64:13
probably 6:6
   13:9 14:4,5
   65:15
procedure 63:24
proceedings 2:8
process 9:5
   17:18,18 19:9
   21:19 27:22
   61:17 64:8
processes 25:4
   27:23 31:5

PROCTOR
   3:20
produce 20:8
produced 7:12
   8:22,23 9:2
   20:10 30:23
produces 16:2,3
product 8:2,2,5
   8:5,10 13:5
   16:1,2 20:3,16
   20:18 21:1,5,6
   23:8 24:12
   30:23 35:17
   45:13,22,24
   59:5 60:25
   61:15
products 1:5,6
   29:1
proof 31:16,19
   39:24 43:11
   45:14,16 50:5
   62:4 64:12
proposed 52:12
proprietary
   32:7
prospective 9:21
protect 26:5
protected 23:10
   46:5
protection 60:19
protective 21:4
   31:6 56:5
provide 19:6
   30:13 34:7
   65:2
provided 33:17
   41:23 50:15
provides 51:6
   63:13
public 2:11
   13:20 18:5
   22:24,24 23:13
   23:13 25:2
   26:16,17,24
   29:21,24 30:5
   30:9,14,17,18

30:18,24 31:1
   31:2,6,23,23
   33:20 35:7,18
   35:23 36:5,6
   36:14,20,24
   37:24 38:16,17
   39:4,23 41:1,2
   41:8,14 43:3
   44:1,4,17 45:9
   45:15,17 48:3
   48:21 50:11,25
   51:3,15,16,17
   51:22 56:14,21
   57:9,11,24
   58:23 59:4,17
   59:20,22 60:2
   60:4,9,13,14
   60:22 61:1,2,4
   61:9,22 62:9
   62:12,15,15
   63:5,12,16,19
   63:25 64:15
   66:3,21
public's 35:8
   58:3 62:13
publication 7:5
   7:25 9:1 16:16
   17:25 18:4
   19:13,15 20:16
   23:24 28:13,16
   29:25 33:22
   50:3 51:4
   52:11 54:6
publications
   10:10 20:6
   32:12 33:21,23
   34:4,9 50:13
publicity 58:2
publicized 61:1
publicly 39:5,24
   58:25 59:8
   60:12
publish 8:10
   9:22 18:21,24
   19:1,4 20:22
   29:4 32:22

**Q**

34:1 44:14
**published** 7:18
7:18 8:3,6 9:5
10:13,15,16,18
10:24 11:3,25
12:7,10,11,13
12:15 13:11,12
13:16,19,23
15:17,18,21,23
15:24 16:12,24
17:5,19 18:15
18:16,22 19:10
20:16 22:15,22
23:6 26:20,21
27:14,21 28:8
28:23 29:14
30:6,7 31:3
32:14 33:4
34:18 36:19
37:4,6 38:16
39:9,14,21
41:11,21,22
42:12 44:3,12
44:14 45:7
54:7 57:13,17
57:19,23 58:21
60:21 65:14
**publishing**
17:14 20:20
23:18 27:11
33:21 42:16
**pull** 36:15,20,25
**punch** 29:5
**Purely** 35:12
**purpose** 33:6
40:6
**purposes** 28:16
33:5 42:2
**put** 14:10 20:18
26:24 33:1
38:11 42:11
44:19 50:22
52:10
**puts** 27:25
**putting** 10:2

**Q**

**question** 11:24
25:19 35:12
40:12 41:7
46:8 47:18
56:9 62:23
**questions** 6:16
6:22 13:1
44:21 65:8
**quibble** 62:6
**quo** 65:3
**quote/unquote**
23:8,9 24:11
43:8

**R**

**R** 3:1,3 4:16
66:1
**Rafferty** 3:20
**raise** 47:16
**raised** 52:18
**reach** 51:1
**read** 5:6 6:13
14:25 35:15
36:16 39:16,17
53:10,20,23
**readily** 31:25
**reading** 35:8
43:9
**real** 29:7 56:12
**really** 8:21
46:11 47:17
**reargue** 43:22
**reason** 13:10
15:10 32:19
36:10,11 47:3
58:19 59:19
**reasons** 25:8
51:4 58:16
61:5 64:22
**Reath** 4:1 5:24
6:10
**rebut** 39:5 58:25
60:3,12
**recall** 7:10

**received** 11:19
47:12
**Recess** 53:18
**reclassification**
50:2
**recognition**
17:16
**recognize** 45:11
**recognized** 26:8
27:4
**record** 5:2 14:22
25:24 53:9,10
53:21 57:4,9
58:12 65:14
**Records** 48:3,21
63:5,12,16,25
64:15
**reference** 56:7
**referred** 54:14
**regard** 7:24 10:8
10:13 24:1
27:1 31:7
**regarding** 8:16
54:8
**regardless** 15:16
15:23
**Regents** 4:13 6:2
54:12,14 56:13
56:23 62:18,24
63:4,10 64:1,6
64:11
**Regents'** 62:20
63:4 64:7
**rejected** 10:11
64:10
**rejecting** 11:20
**rejects** 62:21
**related** 7:21,22
8:23,24 10:5
12:19 13:18
18:12 32:6
46:23 47:1
**relates** 18:9
37:14
**relation** 42:12
**relative** 66:11

66:13
**released** 26:17
26:20 32:10
45:20
**relevant** 29:22
36:7 55:21
56:17 62:14
**reliance** 64:8
**relied** 57:7,10
59:15 60:25
**rely** 58:8 60:8
63:4 64:6
**relying** 13:5,11
13:12,14,19,24
14:4,5 32:23
49:5,6 57:21
**remain** 7:14
12:22 15:24
19:24 46:13
63:7 65:3
**remains** 6:21
**remind** 47:21
**REMOTE** 1:7
2:13
**removed** 61:8
**reopen** 32:5
**replaced** 55:5
**replicate** 23:1,5
25:3 27:13
28:4,5,7 31:15
**replicated** 23:3
38:13
**Reporter** 2:10
66:4,20
**Reporting** 1:21
**reports** 13:7
33:17,19 34:6
**represent** 6:2
24:21
**representation**
33:7
**reputable** 39:10
**request** 48:2,4
48:19 63:9
**requesting** 50:1
50:2

**requests** 48:5
**required** 64:18
**research** 8:4
9:23 10:6
20:14,15 23:3
23:7,22 24:11
24:20 28:8,24
28:25 32:3,5,7
32:22,24 33:18
34:1 38:8,9
41:5 57:22
**researcher** 28:8
38:11
**researcher's**
64:9
**researchers**
24:24 25:3
28:3
**researchers'**
24:22
**respectfully**
61:9
**respond** 16:21
25:18,21 44:20
**responds** 34:16
**response** 34:19
**result** 22:3 26:1
**results** 26:10
**RETIRED** 1:15
**retracting** 23:4
**reveal** 39:25
**revealed** 60:13
**review** 19:9
**reviews** 17:17
**revisit** 21:8
**revisiting** 15:2
16:6 55:16
**RHOADS** 1:16
4:18
**Rice** 3:3 5:12
**right** 5:8 7:2
11:5 12:1 14:7
15:7 17:9 18:7
19:19 22:7
29:16 31:3
35:24 36:6

38:16,17 40:20
41:9,14 49:17
59:11 62:13
**Right-to-Kno...**
63:9
**rights** 63:14,17
**road** 37:16
**round** 23:21
**rule** 6:20 24:7
**ruled** 14:16 16:8
19:17 21:9,14
55:20
**rules** 9:9 63:24
63:24 65:12
**ruling** 19:21,23
19:23 26:1,3
28:18 49:20
53:13,20 55:16
56:6 57:2,15
58:17 59:20
61:21
**rulings** 52:4
55:6,8
**run** 21:22

_____
**S**
**S** 3:1 4:16,16
**Saed** 6:24 7:12
8:20 9:2,14
10:8,13 11:15
11:16 12:6
13:6,23 16:2
20:13 25:10
27:10,25 28:6
28:22 29:6
30:3 32:1
33:16,21 34:22
37:19,21 39:16
40:17 43:14
46:23 47:2
50:13,19,24
54:3,16 55:7
57:21 58:20
64:25
**Saed's** 6:25 8:2
10:14 13:11

16:23 21:5
23:21 30:11
35:1,16 37:18
39:23 46:15
59:4,24
**SALES** 1:6
**San** 4:12 6:3
**satisfied** 15:13
15:14 61:13
62:4
**satisfy** 64:12
**sauce** 20:5,7,10
23:9
**saw** 7:6
**saying** 33:5
**says** 18:23 22:1
37:22 48:12,14
49:4
**SCHNEIDER**
1:15 5:1 6:5,11
8:12 9:10 10:7
10:17,20 11:1
11:10,23 12:3
12:24 13:21
14:7,15 15:7
16:18 17:1,6,9
18:7 19:11,19
21:7 24:17
25:17 29:8,16
31:8,13,20
33:2,12 34:10
34:24 35:5
37:2 38:22
39:15,19 41:6
42:22 43:15,19
46:7 47:9 48:9
48:20 49:1,9
49:13,19 50:4
51:10 52:6,22
53:19
**science** 23:10,14
25:14 34:18,20
34:20
**scientific** 22:23
23:2 24:23
26:19,22 27:12

44:24 45:14,16
**scientist** 23:18
45:25
**scientists** 22:25
23:5,11 25:14
**scrutinize** 27:8
**scrutinized** 24:9
27:3 33:19
**search** 36:15
**second** 16:19
18:13 21:21
24:1
**seconds** 21:24
**secret** 20:4,6,9
23:9 45:2
61:15
**Section** 63:12,20
**see** 6:6 9:16 23:4
26:7 27:7,8
30:1,6 35:24
36:6 41:9,14
44:17 45:15,17
49:15,16 56:1
63:19
**seeking** 43:9
**seen** 6:21 49:23
**segue** 47:10
**sensitive** 24:21
31:14,19
**sent** 7:11
**separate** 33:15
34:8
**September** 1:12
11:9 24:18
31:11 62:2
66:22
**serious** 43:8,13
**serve** 27:19
**set** 66:8
**share** 38:12
**shared** 31:25
32:13 42:1,7
**Sharko** 4:1 5:23
5:23 8:21
10:18,22 18:2
22:6 25:7

26:15,23 27:12
31:22 41:17
43:5,18 44:10
50:10 51:12
52:8 53:17
**Sharko's** 13:2
16:5 17:11,22
18:20 34:17
**shill** 37:20
**Shipp** 34:13,25
35:19 39:4
44:5 52:13,17
57:9 58:22
60:10
**short** 53:8
**show** 24:14,15
30:9
**showing** 43:7
**side** 14:3,3 26:14
29:12 44:1
59:11,14,25
**sides** 59:10
**sign** 6:7
**signed** 52:17
**significance**
51:21
**significant** 60:7
**similar** 35:14
55:25
**simple** 36:11
**simply** 50:10
**situation** 23:17
34:11 60:19
**situations** 32:10
**skewer** 40:17
**Smith-Bindman**
6:24 9:2,6 13:6
13:24 16:3
17:2 20:14
25:11 27:9
28:1,6,22 29:5
30:4 33:16
34:23 35:6
36:19,21,22,23
37:5,7 40:17
43:14 46:23

47:2 50:14,20
50:24 54:3,16
57:22 63:1
**Smith-Bindm...**
8:8 9:12 11:24
13:12 21:6
24:3 30:10
33:23 34:15,25
35:10,14 37:14
38:25 46:17
47:5 57:8
58:20,21 59:6
59:25 60:9
63:6 65:1
**snuff** 38:19
**Society** 46:2
**sole** 16:9
**someone's** 41:24
**sorry** 6:12
**South** 1:22 3:22
**speak** 18:2
**special** 1:15 5:1
6:5,11 8:12
9:10 10:7,17
10:20 11:1,10
11:23 12:3,24
13:21 14:7,15
15:7 16:18
17:1,6,9 18:7
19:11,19 21:7
24:17 25:17,25
26:5 29:8,16
31:8,13,20
33:2,12 34:10
34:24 35:5
37:2 38:22
39:15,19 41:6
42:22 43:15,19
45:1,24 46:7
47:9 48:9,20
49:1,9,13,19
50:4 51:10
52:6,22 53:19
53:25 54:18,20
54:20,24 55:3
55:7,8,12,14

55:17,20,23
56:8,18 57:3,4
57:15 58:5,8
58:10 59:10,15
59:20 60:7,16
61:13,16,18,20
62:3,10,16,19
63:2 64:14,19
**specific** 18:19
64:15
**specifically** 7:14
16:15 47:1
58:13
**spent** 42:24
**stand** 44:20 51:9
**standard** 42:3
43:16,22 44:24
55:13,15,19
56:3,5
**standards** 15:14
15:15 16:7
22:17,20
**standing** 62:24
63:3
**start** 5:7 6:22
**starting** 44:10
**state** 2:12 15:4
66:4,21
**stated** 61:5
64:23
**statements**
40:23
**states** 1:1 15:6
**status** 65:2
**statute** 49:3,7
63:7,13
**stay** 56:16
**stayed** 15:20
**Steering** 5:11,16
5:19,22 46:21
**stem** 24:9
**stenographica...**
2:9 66:7
**stepped** 42:15
**stern** 24:9
**sticks** 10:10

**stop** 28:25 29:1
49:24
**stopped** 9:3
**story** 59:12,22
59:25 60:15
**Street** 3:10,15
3:22 20:23
**stricken** 14:17
21:12 43:1
46:4,15 56:16
56:25 60:11
61:12 62:17
**strike** 1:5 5:5
53:4 54:1
64:23
**striking** 61:25
64:20
**strongly** 25:16
**struck** 55:3
**studied** 23:3
**studies** 23:5
30:6,7 32:1,2
44:23 54:10
**study** 8:23,25,25
30:3,4,4,5,10
30:11 34:21,22
34:22 36:8
**stuff** 44:13
**subject** 20:24
48:2,19 61:2,3
63:18
**submission** 11:8
**submit** 24:12
44:18 46:3
**submitted** 7:5
10:9 11:16
33:16 34:6
52:12 54:6
56:19
**subsequently**
10:15
**substantial**
62:23
**substantially**
35:16
**sue** 40:22

**suffer** 25:1
**suffered** 28:21
61:25
**sufficient** 19:15
**SUITE** 3:4
**sum** 64:22
**summarized**
31:10
**sunlight** 51:20
**Superior** 63:21
64:2
**supplement**
52:14
**support** 9:24
13:25 25:9
31:16 34:13
35:1,19 36:5
44:5 45:5
48:11 49:2,15
63:5
**supporting** 62:5
**supports** 35:10
48:16
**Suppose** 35:13
**supposed** 32:13
**supposedly**
39:25
**sure** 7:1 8:13
19:1 25:20
39:18 43:5
46:18 52:1
60:16
**Susan** 4:1 5:23
8:15 16:20
21:17,25 26:23
41:7 42:22
43:20 50:5
51:10
**susan.sharko...**
4:5

————————————

**T**
**T** 4:16 66:1,1
**taint** 51:7
**take** 15:8 17:21
21:25 25:13

27:22 32:1
44:21 52:16
53:8
**taken** 2:9 52:3
53:18 62:11
65:5 66:7
**takes** 41:1 59:10
**talc** 5:2 20:24
54:17
**talcum** 1:5
20:21 30:19,20
38:18 45:20
**talked** 28:15,17
31:9 38:2 50:8
**talking** 7:3,8
10:12 17:10
20:1 26:3
**tangible** 29:7
**tell** 11:6 14:11
**telling** 49:2
59:12
**terms** 6:22 51:23
**test** 38:15 64:17
**tested** 51:8
**testified** 40:21
**testify** 37:7,23
37:25 38:8,9
42:13,17
**testimonial** 13:5
54:17 60:21
**testimony** 30:13
34:6 66:6
**Thank** 51:12
53:16,17 65:19
**Theresa** 2:10
65:10 66:3,19
**thing** 15:18
29:17 49:8
**things** 6:15 7:16
9:19 12:12,13
26:18 27:19
29:6 46:6
**think** 5:2,6 6:13
6:15 7:9 8:21
9:18 10:1,3,23
12:6,10,11,16

12:17,22 13:8
15:5 19:25
20:6 23:11
25:13 29:24
31:5 33:14
34:3,16 36:9
36:23 37:18,19
37:20 38:18
39:14,22 41:13
44:22,25 45:15
53:23
**third** 48:18
55:14
**third-party** 48:2
**thought** 46:1,13
46:16
**thousands** 32:15
**three** 21:23 32:3
40:15 51:20
57:20
**time** 14:22 15:11
15:19 16:9
17:3,19 18:19
19:3 21:14
22:18 26:20
29:13 39:5
42:24 48:10,10
50:23 51:22
52:24 53:22
54:18 57:14
66:7
**timely** 65:5
**times** 6:14
**tires** 22:25
**Tisi** 3:21 5:20,20
**today** 6:20 9:9
41:18 47:8
65:16
**top** 21:13,15
49:11
**totally** 45:19,24
**transcript** 2:8
14:19 16:14,23
17:7 65:11
66:6
**treatise** 63:16

treatment 60:1
**trial** 30:25,25
50:20 51:1,8
51:14,17
**trials** 40:21
**tried** 50:25
**true** 8:7 17:2
21:5 29:13
33:3 43:2
51:18 66:6
**trumps** 48:21,23
**truthful** 35:21
**try** 14:6 18:25
23:1,5 24:13
27:13 28:3,5,7
40:16 41:3
**turn** 41:7 42:23
**two** 16:9 23:19
31:14 34:4
40:15 44:8,11
45:21 48:14
51:5,16 52:10
57:12
**two-year** 15:19
**type** 18:5 23:8
31:24 40:12
**types** 9:8
**typically** 48:5

**U**

**UC** 4:10 48:2,6
**UCSF** 4:13 6:4
47:24 52:1
**ultimate** 56:9
**ultimately** 32:2
39:9,10 40:14
**unable** 58:24
**unauthorized**
47:23
**unbalanced**
42:20
**undercut** 14:6
27:15
**underestimated**
58:4
**undergo** 38:14

**underlies** 8:9
**underlying** 7:21
9:23 11:15,22
12:18 13:15
28:19 30:12
31:5 32:6,17
32:18 36:25
37:11 42:9,19
45:10
**undermined**
17:19
**underneath** 31:4
**underside** 45:16
**understand** 5:7
6:14 45:9
**understanding**
10:9 26:6
47:18
**unfair** 59:7
**unforeseen** 6:19
**unique** 45:1,23
**UNITED** 1:1
**universities**
20:15 24:24
28:1 32:23,25
34:1
**university** 6:3
9:16 27:20,21
27:22 46:25
47:6,8,10
54:13
**university's**
47:22 48:8
**unqualified**
62:13
**use** 26:4 27:24
36:12 41:2,3
**USMJ** 1:15

**V**

**v** 3:21 63:21
64:2
**vague** 61:10
**valid** 24:12
**validates** 21:18
**Valsartan** 15:13

16:7 22:17
24:16 56:1,6
**various** 40:21
**veracity** 36:7
**version** 13:22
**video** 53:22,24
**VIDEOCONF...**
1:7 2:13
**Videoconfere...**
1:21
**view** 8:18 51:19
59:15
**vocal** 45:12
**voluntarily**
23:15 24:5
**vulnerable** 45:3

**W**

**waive** 48:24
**WALKER** 1:16
4:18
**Wall** 20:23
**want** 7:1 8:13
14:10,21 17:14
19:6,12 20:20
20:22 25:18
28:3 29:4
37:25 38:7,8
38:14,15,23
42:7 46:9,17
47:12,21 50:7
51:25 53:2
65:8
**wanted** 18:17
41:20 47:5
**wants** 6:18
26:24 41:25
59:18 60:5
**WASHINGT...**
3:10
**wasn't** 17:22
44:5 46:25
**way** 8:25 13:9
19:23 20:12
26:18 27:25
28:6 37:5

40:16 52:25
**we'll** 5:8 17:23
18:24,25 19:3
19:5 24:1,2
41:7 53:9
**we're** 5:1,4 6:23
7:3,7 8:19 9:18
9:19,20,22
10:12 12:14
18:23 20:1
21:7 26:2 33:6
43:20,20,22
44:10 48:7
49:19,20
**we've** 5:2 6:14
**weekend** 65:18
**weigh** 33:3
35:22 52:25
53:2 59:23
**weighed** 63:1
**weighing** 56:17
**weight** 59:18
60:5
**went** 6:24 9:4
**weren't** 44:3,4
**White** 1:22
**whiz** 44:13
**wholeheartedly**
57:3
**wholly** 34:8
**wild** 21:25
**willing** 14:11
**wish** 65:18
**withheld** 30:23
**Witkin** 63:19
**Witnesses** 63:20
**Wolfson** 24:8
**word** 35:18 50:7
51:11
**worded** 13:9
**words** 14:10
25:10
**work** 8:9 9:24
11:15 13:5
16:3 20:12
24:9 27:2,9,14

28:4,5,7 29:2
35:17 39:12,13
39:13 41:4
42:18,19 44:18
59:5 60:25
61:14
**works** 6:6 23:10
25:15 26:25
28:11
**world** 36:2
**wouldn't** 20:22
25:12 44:21
**write** 23:24
**written** 24:22
40:11
**wrong** 14:9 22:4
59:11
**wrote** 34:12,19

**X**

**XIO857** 66:20

**Y**

**Yeah** 14:2
**year** 10:19,25,25
**years** 15:3 32:4
44:8,11 45:22
52:10

**Z**

**ZOOM** 1:7 2:13

**0**

**07932** 4:3
**08002** 3:4
**08106** 1:23

**1**

**10** 54:20
**101** 3:4
**11** 66:21
**1119** 63:22
**1124-25** 63:22
**12** 17:13 55:9
**12th** 11:9
**13** 55:8
**14** 65:3

September 22, 2023

Page 80

**15** 25:25 52:15
**1825** 3:10

---
**2**

**20** 53:13 62:2
**2000** 63:23
**2006** 3:10
**202-759-7648**
  3:11
**2021** 10:16
  14:16 15:12
  16:23 17:4,7
  21:14 25:23
  28:15 38:3
  41:17 43:21
  44:2 46:14,24
  47:22 54:19,24
  55:9,12 56:2,9
  56:20 57:3,6
  57:14 58:1,9
  58:11
**2023** 1:12 62:2
  63:20 66:22
**2026** 66:21
**20th** 24:18 31:11
**21** 29:10
**210** 3:4
**218** 3:15
**22** 1:12
**2410394** 66:22
**25** 66:22
**2ND** 4:11

---
**3**

**3:00** 2:14
**3:16-MD-2738**
  5:3
**3:16-MD-2738...**
  1:2
**302** 63:20
**30th** 34:12
**30X100085700**
  2:11
**316** 3:22
**32502** 3:22
**334-954-7555**

  3:17
**36104** 3:16
**37** 17:10 18:8
**38** 17:10,13 18:8
**3d** 56:2
**3rd** 54:19

---
**4**

**4** 24:19 31:10
  62:1
**4:10** 53:8
**4:30** 53:12
**415-539-8561**
  4:12
**4160** 3:16
**499** 4:11
**4th** 63:22

---
**5**

**512** 56:1
**515** 1:22
**546** 56:2

---
**6**

**600** 4:3
**6th** 63:20

---
**7**

**702** 24:8 45:3
**72** 25:24
**786** 43:10
**7920.200** 63:12

---
**8**

**8** 16:22 54:24
  55:11 56:9,20
  57:3,6 58:11
**800-277-1193**
  3:23
**800-674-9725**
  3:11
**800-768-4026**
  3:6
**800-898-2034**
  3:17
**81** 63:22
**850-435-7000**

  3:23
**856-488-7797**
  1:17
**856-546-1100**
  1:24
**856-667-0500**
  3:5
**856-667-5133**
  3:5
**8th** 14:16 15:12
  15:22 19:18
  25:23 28:14,15
  43:21

---
**9**

**9** 25:25
**94148** 4:12
**973-360-9831**
  4:4
**973-549-7350**
  4:4