**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCT MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION**<br><br>*This Document Relates to All Cases* | Civil Action No. 3:16-md-2738-MAS-RLS<br><br>MDL No. 2738 |

**SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR LEAVE TO FILE A SECOND AMENDED MASTER LONG FORM COMPLAINT**

Plaintiffs, by and through Plaintiffs' Steering Committee ("PSC"), submit this Supplemental Brief in further support of Plaintiffs' Renewed Motion for Leave to File a Second Amended Master Long Form Complaint ("Second Amended Master Complaint") and states as follows:

## I.   INTRODUCTION

On October 24, 2023, Special Master Schneider issued an email to the parties posing several questions relating to the PSC's Renewed Motion for Leave to File a Second Amended Complaint. In particular, the Special Master Schneider's email stated:

> Counsel, I am writing in connection with the motion to amend scheduled for OA on 11/21/23. As to the proposed

1

> spoliation claim it appears the parties are relying on their papers filed in 2020/2021. I want to make sure this is correct and give the parties an opportunity to update their papers if they so desire. To this end plaintiffs may file a supplemental brief on the proposed spoliation claim by 11/4/23. Defendants may respond by 11/14/23. Kindly confirm whether plaintiffs are still asking for an amendment only as to Alaska, Conn., New Mexico, Ohio and West Virginia. If so are there any recent spoliation decisions from these states to be considered? Also, kindly confirm that the only talc decisions addressing the spoliation issue are Hayes (Ky.) and Rimondi (NJ).
>
> Thank you for your consideration.

The PSC submits this supplemental brief in response to the Special Master's inquiry.

## II. DISCUSSION

### A. THE PROPOSED SECOND AMENDED MASTER LONG FORM COMPLAINT SEEKS TO ADD A SPOLIATION CAUSE OF ACTION ONLY AS TO THE STATES OF ALASKA, CONNECTICUT, NEW MEXICO, OHIO, AND WEST VIRGINIA

In the proposed Second Amended Master Long Form Complaint, the PSC asserts a spoliation cause of action as to the States of Alaska, Connecticut, New Mexico, Ohio, and West Virginia. The aforementioned states remain the only states that recognize an *independent* cause of action for spoliation and the law the PSC previously relied on remains good law. As such, the PSC continues to rely on the cases cited to and the arguments articulated in Plaintiffs' Memorandum of Law and Plaintiffs' Reply Memorandum in support of the spoliation claim for the five referenced states.

## B. NO TALC DECISION HAS ADDRESSED THE APPLICABILITY OF SPOLIATION AS A FREE-STANDING CAUSE OF ACTION; TALC CASES DISCUSSING SPOLIATION HAVE DONE SO SOLELY IN THE CONTEXT OF THE PROPRIETY OF THE ISSUANCE OF AN ADVERSE INFERENCE CHARGE TO A JURY

To date, there have been no talc cases that have addressed spoliation as an independent cause of action. As such, Defendants' reliance on *Hayes* and *Rimondi* in support of an argument that a claim of spoliation cannot be added to this case, as a separate count, is misplaced. Neither *Hayes* nor *Rimondi* were decided under the law of any of the five states that recognize spoliation as a separate cause of action, so the cases have no relevance to the issue of whether a spoliation cause of action can be asserted under the laws of those five states.

Apart from analyzing spoliation under inapplicable state laws, both the *Hayes* and *Rimondi* decisions only address spoliation in the context of adverse inference instructions. *See Hayes v. Colgate-Palmolive Co.*, No. 16-CI-003503 (Ky. Cir. Ct. April 12, 2019); *see also Rimondi v. BASF Catalysts LLC, et al.*, No. MID-2912-17AS (N.J. Super. Ct. Law Div. Feb. 22, 2019). At this stage in the litigation, Plaintiffs are not seeking a spoliation instruction and a ruling on this matter would be premature. Instead, Plaintiffs are seeking to amend the Master Long Form Complaint to include spoliation as a separate cause of action for those Plaintiffs relying on the substantive law of the five states that clearly recognize spoliation as a free-standing cause of action. Thus, Defendants have not provided

3

no basis upon which this Court should deny the proposed amendment to include a spoliation cause of action for those five states.

In *Hayes*, a Kentucky trial court applied Kentucky evidentiary and jury charge rules. The court denied the request for a jury instruction on spoliation, finding that the plaintiffs failed to show that Johnson & Johnson ("J&J") should have reasonably anticipated litigation. *See* No. 16-CI-003503 at 38. However, because Kentucky does not recognize spoliation as a free-standing claim, the decision has no relevance to the issue before this Court and, to the extent it does, it is only relevant to an adverse inference charge at trial. Further, as compared to *Hayes*, the proposed Second Amended Master Consolidated Complaint includes myriad allegations supporting an adverse inference charge.

The *Hayes* decision can be broken down into three parts. First, the court considered whether a 1969 J&J letter composed by Dr. T.M. Thompson provided J&J with reasonable notice of anticipated litigation. *See id.* at 37. The court found that "[Dr. Thompson's] statement that litigation is 'not inconceivable' falls short of a statement sufficient to support a finding that litigation was reasonable anticipated." *Id.* However, the remainder of the letter indicates that Dr. Thompson recommended that "someone in the Law Department should be consulted with regard to the defensibility of our position in the event that such a situation could ever arise." *See* **Ex. 96** (JNJ000087991 (4/15/1969 Letter from T. Thompson to W.

4

Ashton Re: Alternate Domestic Talc Sources)); *see also* **Ex. 2** (2/15/2019 Musco Dep. 64:18—68:1). The court also discredited the effect that such an implication may have on the company because the statement was made "by a doctor rather than by an employee that might be expected to be responsible for assessing Johnson & Johnson's litigation risks." No. 16-CI-003503 at 37. The trial court's generalized statement undervalued Dr. Thompson's role as J&J's Medical Director, the capacity in which he wrote the letter to Mr. William Ashton, a J&J executive supervising the company's talc-based products. *See* **Ex. 96** (JNJ000087991 (4/15/1969 Letter from T. Thompson to W. Ashton Re: Alternate Domestic Talc Sources)).

    Next, the court held that the multiple talc-related cases initiated in the 1970s to the 1980s did not give rise to a reasonable anticipation of litigation. *See Hayes*, No. 16-CI-003503 at 37. However, in contrast to the holding in *Hayes*, the proposed Second Amended Master Long Form Complaint alleges that beginning as early as 1971, J&J was required to turn over documentation which related to "ongoing," "pending," and "anticipated" litigation regarding Johnson's Baby Powder. *See* **Ex. 2** (2/15/2019 Musco Dep. 74:23—76:7, 93:3-16). In fact, during the 1970s alone, J&J had been sued in talc-based suits nearly every year of the decade. *See id.* (2/15/2019 Musco Dep. 81:25—82:18).

5

In contrast to *Hayes*, in *Lanzo v. Cyprus Amax Mins. Co.*, 254 A.3d 691 (N.J. Super. Ct. App. Div.), *cert. denied,* 258 A.3d 355 (N.J. 2021), a New Jersey appellate court upheld the provision of an adverse inference jury instruction in a talc case. *Lanzo* was decided after the briefing on the PSC's prior request to amend the master complaint, so *Lanzo* provides an updated analysis and provides more relevant direction for the Court.

In *Lanzo*, the plaintiff alleged he contracted mesothelioma from his long-term use of Johnson's Baby Powder and Johnson & Johnson's Shower to Shower talcum powder. *See id.* At 697. In its opinion, the appellate court analyzed defendant's involvement in another prominent case, *Westfall v. Whittaker, Clark & Daniels, Metro. Talc Co.*, 571 F. Supp. 304 (D.R.I. 1983). *See id.* At 717. Filed in 1979, *Westfall* is often cited as "the first of many asbestos lawsuits." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 313 (3d Cir. 2014).[1] Although *Westfall* involved injuries from industrial talc exposure, the court held that the case provided the defendant with sufficient notice that a plaintiff would likely bring a suit claiming to have suffered from an asbestos-related disease. *See Lanzo*, 254 A.3d at 717. Finding that the defendant knew or should have known that talc samples may be necessary for future litigants, the *Lanzo* court upheld the trial

---

[1] Plaintiffs continue to separately assert the independent tort of fraudulent concealment for all states, which in some states encompasses destruction of evidence. *Williams*, 765 F.3d at 319.

6

court's decision to issue an adverse inference instruction to remedy the prejudice experienced because of the spoliation of evidence. *Id.* at 721.

Finally, in *Hayes*, the court held that the cases pending against J&J in the 1990s, which "[a]dmittedly … involved claims of mesothelioma arising from use of Johnson & Johnson's cosmetic talcum powder products," still did not prove sufficient notice because these actions were dismissed before trial. *See* No. 16-CI-003503 at 38. However, it is well established that the duty to preserve commences once a lawsuit has been filed. *See generally Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) ("Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence."). Moreover, the numerous cases pending against J&J, even for a brief period, taken in the aggregate would have provided J&J with sufficient notice that more lawsuits were likely to come.

In *Rimondi*, a case decided prior to *Lanzo,* the court briefly analyzed whether J&J's involvement in *Westfall* triggered its duty to preserve talc samples. *See* No. MID-2912-17AS at 18-19. The court held that although J&J, through its subsidiary Windsor Minerals ("Windsor"), was a party to the case, its involvement was short lived and, thus, did not establish a duty to preserve. *See id.*; *see also Westfall*, 571 F. Supp. 306 (noting that the plaintiff amended her complaint in 1982 to add Windsor as a defendant). Again, as indicated above, the duty to preserve commences once a claim has been filed. *See Turner*, 736 F.3d at 282. Therefore,

7

no matter how long Windsor was a party to the case, notice of the litigation was sufficiently provided once they became a defendant in 1982. Further, although the *Westfall* court never addressed whether Windsor knew or should have known that it may be brought into the litigation prior to 1982, the facts of the case indicate that it likely did. *See generally Westfall*, 571 F. Supp. at 313. When *Westfall* was originally filed, a "John Doe Corporation" was used to describe an entity that manufactured and/or distributed talc to Uniroyal, Inc ("Uniroyal"). *See id.* Documents produced in discovery later revealed that Uniroyal was receiving talc from J&J's Vermont Mine during the time in question. *See id.* at 315. As such, J&J should have reasonably anticipated litigation as early as 1979 given that its talc was derived from the same mines. *See generally Lanzo*, 254 A.3d at 717 (finding that the defendant's participation in *Westfall* put the defendant on notice as early as 1979); *see also Williams v. BASF Catalysts LLC*, No. 11-1754, 2016 WL 1367375, at *5 (D.N.J. Apr. 5, 2016) (same).

The facts of this case are more akin to *Bader v. Johnson & Johnson,* 303 Cal. Rptr. 3d 162 (Cal. Ct. App. 2022), *as modified on denial of reh'g* (Jan. 23, 2023), *review denied* (Apr. 12, 2023). In *Bader*, the court found that the plaintiffs provided ample evidentiary support to show that J&J was aware that its products contained asbestos and wrongfully destroyed documents that supported this conclusion. *See id.* at 194-95. Here, Plaintiffs' proposed amendments provide

8

sufficient evidentiary support that J&J should have anticipated litigation and, in fact, wrongfully destroyed evidence to protect itself from foreseen lawsuits. *See* SAC ¶¶ 210-400, 1044-1051. Additionally, *Lanzo* and *Willaims* also recognize sufficient notice stemming from the defendants' involvement in *Westfall*. *See Lanzo*, 254 A.3d at 717; *see also Williams*, 2016 WL 1367375, at *5.

To this end, although no talc decision has addressed the issue of spoliation as an independent cause of action, *Bader, Lanzo* and *Williams* provide the most accurate insight into how the issue of spoliation has been addressed in recent talc decisions. These cases stand for the proposition that spoliation claims and/or adverse inference jury instructions are warranted here. However, at the pleadings stage, where the issue before the Court is whether the PSC's proposed Second Amended Master Long Form Complaint can include an independent cause of action for spoliation for the five states that recognize spoliation as an independent cause of action, the Court need not consider whether an adverse inference instruction or any other remedies available under other causes of action are appropriate.

### III. CONCLUSION

For the foregoing reasons, the PSC respectfully request the Court grant their Renewed Motion for Leave to File a Second Amended Master Long Form

Complaint and deem the amendments automatically incorporated in all short form complaints.

Dated: November 4, 2023

Respectfully submitted,

/s/ *Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Telephone: (202) 783-6400
Fax: (202) 416-6392
mparfitt@ashcraftlaw.com

/s/ *P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Fax: (334) 954-7555
Leigh.odell@beasleyallen.com

*Plaintiffs' Co-Lead Counsel*

/s/ *Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 00701
Telephone: (732) 747-9003
Fax: (732) 747-9004
cplacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*

10