

**Susan M. Sharko**
Partner
susan.sharko@faegredrinker.com
+1 973 549 7350 direct

Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey  07932
+1 973 549 7000 main
+1 973 360 9831 fax

faegredrinker.com

November 20, 2023

Honorable Michael A. Shipp, U.S.D.J.
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

>   Re: Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation
>     **Case No.: 3:16-md-02738-MAS-RLS**

Dear Judge Shipp:

I write on behalf of the Defendants to request a case management conference to address issues that have arisen with the 17 new and revised expert reports served by the PSC last week for the first bellwether trial.  On September 6, 2023, PSC lead counsel Michelle Parfitt told Your Honor, addressing the need for further R. 702 proceedings: "[W]e don't want to redo.  We're moving forward.  There's nothing new that can't bear cross-examination."   Sept. 6, 2023 Hearing Tr. at 11: 5 to 6.  And: "any amendment to the expert reports of those individual experts that have already undergone a Daubert process, extensive Daubert process and briefing, what we will be doing is simply supplementing any additional literature that they may have read, which one would expect".  Id. at 13:17 to 22.

That's what they said.   But that's not what they did.   These reports run afoul of the intent of the October 10, 2023, scheduling order in that they:

- **Disclose brand new witnesses who are cumulative:** the PSC now discloses reports by **three** entirely new epidemiology experts (two of whom share a report) who have never previously been disclosed in this litigation.  This, despite that (1) the Plaintiffs' lead counsel told this Court in September that epidemiology/general causation has already been definitively addressed, and (2) the PSC had already disclosed five witnesses whose reports were dedicated to epidemiology/general causation; by adding the three new witnesses, the PSC nearly doubles their number of epidemiology witnesses to eight.

- **Add new experts on new subjects**: One of the PSC's new witnesses, George Newman, is a purported marketing expert who seeks to opine on "branding and consumer behavior."  None of the PSC's other experts, and specifically none of the experts who had been disclosed as of when expert discovery from the Plaintiffs closed in the Summer of 2021, addressed this topic.

Honorable Michael A. Shipp,  - 2 -  November 20, 2023
U.S.D.J.

- **Disclose new opinions**: Numerous witnesses who have previously been disclosed, deposed and vetted under R. 702 now add completely new opinions to their previous reports. For example:

    o **New opinions on plaintiff-specific genetic testing**: The amended report of Shawn Levy – who had not previously been disclosed at all with respect to six bellwether pool trial cases – dedicates seven pages of completely new content to a general discussion of genetic testing and the specific genetic testing results for those plaintiffs. *See* Amended Rule 26 Expert Report of Shawn Levy, PhD, Nov. 15, 2023, at 18-24. Note that the genetic testing results for those plaintiffs were available when the PSC made its prior disclosures in 2021.

    o **New opinions on misbranding/adulteration:** The second amended report of Laura Plunkett now adds a new opinion that Defendants' talcum powder products were misbranded and adulterated because they did not list "toxic constituents in talc such as asbestos, fibrous talc, nickel, chromium, and cobalt." *See* Second Amended Report of Laura Plunkett, Nov. 15, 2023, ¶ 105. Previous iterations of the report had defined "misbranding" and "adulteration" but had never opined that those terms applied to the products at issue, let alone explained a basis for such an opinion.

    o **New, extensive opinions on corporate conduct (among other things):** The amended report of David Kessler is 154 pages long; his original report (dated November 2018, was 72 pages long. Thus, Dr. Kessler's "amended" report includes some 82 pages of completely new content, most of which addresses Defendants' historical conduct in ways that were not even hinted at in his first report. Further, until last week, Dr. Kessler had not been specifically identified as an expert for the bellwether trial cases.

- **Add language that is clearly directed to subvert the Court's prior R. 702 rulings**: For example, one of the several supplemental reports served for plaintiff's expert William Longo includes his talc application and exposure container calculations for six of the Bellwether Plaintiffs who comprise the Stage Three cases. Based on his analysis, Dr. Longo concludes that "it would be my opinion [to] a reasonable degree of scientific certainty that [the Plaintiffs] would have had a substantial exposure to asbestos during the many years that they used this J&J talcum powder product." Expert Report re: Six Bellwether Plaintiffs at 20. This appears to be a direct response to Judge Wolfson's Daubert opinion, in which she held that "[b]y failing to conduct an exposure analysis, Dr. Longo's opinion on the likelihood that talc users were exposed to 'significant' amounts of asbestos, and indeed, any exposure, is too attenuated from his findings of trace levels of asbestos in talc." [Doc. 13186 at 59] The exposure analysis conducted here by Dr. Longo, which is unlikely to withstand a R. 702 challenge, is a belated attempt to "fix" the flaws identified by Judge Wolfson. Notably, Dr. Longo states in the report that the exposure calculations are based on studies "primarily in the 1970's" and the "application calculations are based on information provided by the plaintiff's attorneys," all of which preceded October 2021.

    Similarly, Judge Wolfson held that "Dr. Longo is not permitted to testif[y] as to his testing results under the PLM" because of "the very real reliability and reproducibility issues plaguing Dr. Longo's PLM testing." [Doc. 13186 at 56-57] Plaintiffs now attempt to fix

Honorable Michael A. Shipp,              - 3 -                    November 20, 2023
U.S.D.J.

> this by having Dr. Longo opine to a new PLM method (which R. 702 analysis will show is not any more reliable than the method previously excluded by Judge Wolfson).

- **Add opinions on issues that were rejected by Chief Judge Wolfson (eg. Inhalation, see Doc. 13186 at 96) or left dormant and not addressed (eg. heavy metals).**

And these are just a few examples. Because of this, we request that the Court set a conference as soon as practicable to discuss these developments.

Context and history are important here. As outlined above, on September 6, 2023, Plaintiffs' lead counsel came before Your Honor and urged that there be no further adjudication of R. 702 issues as to their general causation experts, arguing among other things that the Court had already issued an order regarding admissibility following eight days of hearings on those experts. The Plaintiffs' position, as related to Your Honor, was that "we weren't going to come back and redo *Daubert*" and the Court should "not go back and do that which we spent years developing." Hearing Tr. at 9-10.

The Defendants pointed out that the science and the law had changed since the R. 702 hearings before Judge Wolfson in 2019, which concerned reports that Plaintiffs' experts had issued in November 2018 (and on which they were subsequently deposed in 2018). The science and the law have also changed considerably since the Plaintiffs' experts issued their reports for the bellwether pool trial cases in June/July 2021 and gave depositions in the ensuing months. This is why the Parties agreed to paragraph 2 of the Court's October 10, 2023, Scheduling Order [Doc. 28516] which provided:

> Plaintiffs shall serve, if necessary, supplemental and amended disclosures of all general and case-specific experts pursuant to Rule 26(a)(2)(A) and serve on Defendants' counsel the Rule 26(a)(2)(B) reports of all general and case-specific expert witnesses they may use at trial in any of the Stage Three cases [bellwether pool trial cases] on or before **November 15, 2023**.

[Doc. 28516, ¶ 2.] All that was permitted here was to update the Plaintiffs' ten experts' reports and depositions to reflect changes in the last two years of the science.

While the science changed, the underlying facts which form the basis of the new opinions did not. All of the new opinions, save discussion of literature published between July 2021 and November 2023, could have been addressed in the PSC's July 2021 disclosures. But for the bankruptcy stay, the cases would have proceeded to trial with the plaintiffs bound to the witnesses and opinions disclosed in those July 2021 disclosures. The provision for updating those July 2021 disclosures to reflect interim developments was not meant to permit the Plaintiffs to reboot the entire expert discovery process from scratch. While Plaintiffs argued vociferously back in September against what they perceived as a "do-over", they are now essentially "doing over" their expert line up and opinions.

For these reasons, Defendants request that the Court hold a case management conference as soon as practicable to discuss the permissible scope of the PSC's bellwether trial pool expert disclosures and how that scope impacts the existing pretrial schedule, limits imposed on expert depositions, when Plaintiffs have to disclose which of the 28 expert witnesses they may call in the first bellwether trial, and the scope and scheduling of R. 702 challenges on all of these 17 experts and their opinions, both old and new .

Honorable Michael A. Shipp, U.S.D.J.      - 4 -      November 20, 2023

Thank you for your consideration of these matters.

Respectfully,

*Susan Sharko*

Susan M. Sharko

SMS/emf

cc: Hon. Joel Schneider, U.S.M.J. (ret.) (via email)
    The Plaintiffs' Steering Committee (via email)
    All Counsel (via ECF)