# EXHIBIT 3

| | |
|---|---|
| **From:** | James Conlan |
| **To:** | Van Arsdale, Duane [JJCUS] |
| **Cc:** | Douglas Dachille; Doug Dachille; Haas, Erik [JJCUS]; White, Andrew [JJCUS] |
| **Subject:** | [EXTERNAL] Re: Legacy Liability Solution |
| **Date:** | Wednesday, October 18, 2023 4:21:12 AM |

> **WARNING:** This email originated from outside the company. Do not click on links unless you recognize the sender and have confidence the content is safe. If you have concerns about this email, report it by clicking on the "Report Suspicious Email" button in the Outlook toolbar above.

Duane,

Thank you for your efforts to evaluate our proposal. To further enhance our solution and to address potential auditor concerns, Legacy has the support of lead counsel for the OC Claimants (including Andy Birchfield) for an MDL opt-in settlement matrix with Legacy that will require (and is expected to garner) a 95% opt-in of current OC Claimants. The establishment of a settlement matrix should greatly reduce the uncertainty surrounding the estimation of future claims and the associated challenges of determining the quantum of funding necessary for your auditors to remove the non-cash charge for J&J's current and future talc related liabilities.

Andy Birchfield, Doug Dachille, and I are prepared to meet with you, and your team, in person to share and discuss the terms of such matrix as part of the Legacy acquisition.

Thank you again for your time and consideration.



**James F. Conlan**
Chief Executive Officer and Co-Founder
Legacy Liability Solutions
Bermuda | Dallas | Chicago | Paris
Email | james.conlan@legacyliability.com
Mobile | +312.927.7572
www.legacyliability.com

> On Oct 6, 2023, at 12:43 PM, Van Arsdale, Duane [JJCUS] <DVanArs@its.jnj.com> wrote:
>
> Hi Doug and Jim,
>
> Thank you for the follow-up note to our discussion a few weeks ago.

To close the loop, we have discussed both internally and with our auditors, and at this time, we do not have an interest in pursuing this strategy. While unlikely, we will let you know if this perspective changes in the future.

Thanks again for your time and thoughts.

Duane

---

**From:** Douglas Dachille <ddachille@non-canonical.com>
**Sent:** Thursday, September 28, 2023 10:16 PM
**To:** Van Arsdale, Duane [JJCUS] <DVanArs@its.jnj.com>
**Cc:** James Conlan <james.conlan@legacyliability.com>; Doug Dachille <doug.dachille@legacyliability.com>
**Subject:** [EXTERNAL] Re: RE:

> **WARNING:** This email originated from outside the company. Do not click on links unless you recognize the sender and have confidence the content is safe. If you have concerns about this email, report it by clicking on the "Report Suspicious Email" button in the Outlook toolbar above.

## Hi Duane,

I wanted to thank you for arranging our meeting and for the time you and your colleagues afforded Jim and myself to outline the components of a transaction which we believe could provide J&J with legal finality to its talc liabilities, comparable to what it hoped to achieve through bankruptcy.

As Jim explained, our solution will relieve J&J of both its current and future talc liabilities in the tort system, as well as talc-related claims made against it by Imerys, Cyprus and other third parties (e.g. retailers). It should be noted that bankruptcy would not have resolved direct talc claims against affiliates of LTL, but the Legacy Liability solution will.

To achieve that outcome, Legacy will acquire LTL plus all other legal entities in the J&J corporate family that have any current or future talc liability in the tort system or contractually. This will require a further structural optimization (e.g. divisional merger) of J&J and likely other J&J affiliates. Once this additional structural optimization work is completed, and Legacy becomes the owner of all J&J entities with talc liabilities, J&J will no longer have any liability in the tort system or contractually for talc.

The transfer of ownership of the talc liable entities to Legacy, and the

disaffiliation of those entities from J&J, requires that such entities have assets at the time of transfer that equal or exceed the best estimate of the projected current and future talc claims. By doing so, there can be no fraudulent transfer or unlawful dividend. As a closing condition for the acquisition transaction by Legacy, J&J auditors must reach the foregoing conclusion in order for the ASC 450 non-cash charge to be removed from the financial statements of J&J.

Importantly, any talc claimant who disagrees with the above will lack standing to assert any "avoidance" theories, as all talc claims will continue to be paid in the ordinary course.

In addition to the legal construct of our proposed transaction, we briefly outlined a number of the other considerations  - tax, investment management, creditor issues, claims management, fees and expenses and the use of reinsurance in the form of an adverse development cover as a way for J&J to participate in the favorable development of claims prospectively relative to the original projections which determined the funding amount at inception. We would be happy to provide additional documentation which specifically addresses each of these issues in more detail.

Certainly the most important issues to address with respect to our proposal are the legal ones, but the relevant legal conclusions are quite clear.  Please contact either Jim or myself if there is any additional information we can provide to assist with the internal vetting process that our proposal provides J&J finality with respect to all of its talc-related liabilities.

Regards,
Doug

**From:** Van Arsdale, Duane [JJCUS] <DVanArs@its.jnj.com>
**Sent:** Monday, August 21, 2023 6:12 PM
**To:** Douglas Dachille <ddachille@non-canonical.com>
**Cc:** James Conlan <james.conlan@legacyliability.com>; Haas, Erik [JJCUS] <EHaas8@its.jnj.com>; White, Andrew [JJCUS] <AWhite23@ITS.JNJ.com>; Rockaway, Darlene [JJCUS] <DRockawa@its.jnj.com>
**Subject:** RE:

Hi Doug,

Thanks for the note and nice to meet you as well. I have copied Erik Haas and Andrew White who will also join the discussion.

I will ask Darlene (copied here) to coordinate and propose a few dates for us to get together in the near future. We'll be back in touch shortly.

Thank you,
Duane

**From:** Douglas Dachille <ddachille@non-canonical.com>
**Sent:** Monday, August 21, 2023 4:41 PM
**To:** Huffines, Robert <robert.huffines@jpmorgan.com>
**Cc:** Van Arsdale, Duane [JJCUS] <DVanArs@its.jnj.com>; James Conlan <james.conlan@legacyliability.com>
**Subject:** [EXTERNAL] Re:

> **WARNING:** This email originated from outside the company. Do not click on links unless you recognize the sender and have confidence the content is safe. If you have concerns about this email, report it by clicking on the "Report Suspicious Email" button in the Outlook toolbar above.

Thank you Robert for the introduction.

Duane,

Nice to meet you. Jim and I would we happy to meet with you in person at your earliest convenience.

Best regards,
Doug

Sent from my iPad

> On Aug 21, 2023, at 4:18 PM, Huffines, Robert <robert.huffines@jpmorgan.com> wrote:

Duane - As I mentioned to you and Joe I'd like to introduce you to Doug & James.

Over to you all to connect.

Thanks. Let me know if I can be of help.

Robbie

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

This message is confidential and subject to terms at: [https://www.jpmorgan.com/emaildisclaimer](https://www.jpmorgan.com/emaildisclaimer) including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.