EXHIBIT 4 - Excerpt

Page 1

1

2         UNITED STATES BANKRUPTCY COURT OF NEW JERSEY
                    Case No. 23-12825
3     - - - - - - - - - - - - - - - - -  x
      In re:                            :
4                                       :
      LTL MANAGEMENT LLC,               :
5                                       :
                           Debtor,  :
6     - - - - - - - - - - - - - - - - -x
      LTL MANAGEMENT LLC,               :
7                                       :
                           Plaintiff,  :
8                                       :
                    v.                  :
9                                       :
      THOSE PARTIES LISTED ON APPENDIX A :
10    TO COMPLAINT and JOHN AND JANE DOES:
      1-1000,                           :
11                                      :
                           Defendants. :
12    - - - - - - - - - - - - - - - - -x
13                            April 17, 2023
                              1:12 p.m.
14                            7 Times Square
                              New York, NY
15

16

17

18

19

20              VIDEOTAPED AND REMOTE DEPOSITION UPON
21    ORAL EXAMINATION OF ANDY BIRCHFIELD, ESQ., held
22    at the above-mentioned time and place, before
23    Randi Friedman, a Registered Professional
24    Reporter, within and for the State of New York.
25

```
                                                Page 2
 1                    A. Birchfield, Esq.
 2    APPEARANCES:
 3               OTTERBOURG, P.C.
                 Attorneys for Proposed counsel for the
 4               official committee of talc claimants
 5               230 Park Avenue
                 New York, New York 10169
 6
                 BY:  RICHARD G. HADDAD, ESQ.
 7
 8
                 GOLOMB SPIRT GRUNFELD
 9               Attorneys for TCC
10               1835 Market Street, Suite 2900
                 Philadelphia, Pennsylvania 19103
11
                 BY:  RICHARD M. GOLOMB, ESQ.
12
13
                 LEVIN PAPANTONIO RAFFERTY
14               Attorneys for William Henry
15               316 South Baylen Street
                 Pensicola, Florida 32502
16
                 BY:  CHRISTOPHER V. TISI, ESQ.
17
18
                 BEASLEY ALLEN
19               Attorneys for Alishia Landrum
20               218 Commerce Street
                 Montgomery Alabama 36104
21
                 BY:  LEIGH O'DELL, ESQ.
22
23
24
25    (Appearances continued.)
```

```
                                            Page 3

 1                    A. Birchfield, Esq.
 2      (Appearances continued.)
 3               COHEN, PLACITELLA & ROTH
                 Attorneys for Estate of Kimberly
 4               Naranjo
 5               127 Maple Avenue
                 Red Bank, New Jersey 07701
 6
                 BY:  CHRISTOPHER PLACITELLA, ESQ.
 7
 8
                 JOHNSON & JOHNSON
 9               Attorneys for Johnson & Johnson
10               1 Johnson & Johnson Plaza
                 New Brunswick, New Jersey 08933
11
                 BY:  ERIC HAAS, ESQ.
12
13
                 SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
14               Attorneys for LTL Management
15               One Manhattan West
                 New York, New York 10001
16
                 BY:  ALLISON BROWN, ESQ.
17
18
                 WHITE & CASE, LLP
19               Attorneys for Johnson & Johnson
20               555 South Flower Street, Sute 2700
                 Los Angeles, California 90071
21
                 BY:  GREGORY STARNER, ESQ.
22                    KATHRYN KUETHMAN, ESQ.
23
24
25      (Appearances continued.)
```

Page 4

```
 1                      A. Birchfield, Esq.
 2        (Appearances continued.)
 3
                   KLEHR HARRISON HARVEY BRANZBURG, LLP
 4                 Attorneys for Andy Birchfield, Esq.
 5                 10000 Lincoln Drive East, Suite 201
                   Marlton, New Jersey 08053
 6
                   BY:  CAROL ANN SLOCUM, ESQ.
 7
                             *  *  *
 8
 9
10
11
12
13
14
15
16
17
18
19
20        ALSO PRESENT:
21                 Paul Baker - Videographer
                   Jerry Curran - Concierge
22                 Ted Meadows, Esq.
                   Jim Murdica, Esq.
23
24
25
```

Page 5

1                    A. Birchfield, Esq.

2                         STIPULATIONS

3              IT IS HEREBY STIPULATED AND AGREED, by

4     and among counsel for the respective parties

5     hereto, that the filing, sealing and

6     certification of the within deposition shall be

7     and the same are hereby waived;

8              IT IS FURTHER STIPULATED AND AGREED

9     that all objections, except as to form of the

10    question, shall be reserved to the time of the

11    trial;

12             IT IS FURTHER STIPULATED AND AGREED

13    that the within deposition may be signed before

14    any Notary Public with the same force and effect

15    as if signed and sworn to before the Court.

16                         * * *

17

18

19

20

21

22

23

24

25

Page 6

1                    A. Birchfield, Esq.

2                    MR. VIDEOGRAPHER:  Good afternoon.    13:12:46

3          We are going on the record at 1:12 p.m.    13:12:47

4          Eastern Daylight Time on Monday, April 17th,  13:12:51

5          2023.                                         13:12:54

6                    Please note that the microphones    13:12:56

7          are sensitive and may pick up whispering and  13:12:58

8          private conversation.  Please mute all        13:13:02

9          cellphones at this time.                      13:13:04

10                   This is Media Unit 1 of the          13:13:05

11         video-recorded deposition of Andy Birchfield  13:13:06

12         in the matter of LTL Management LLC, filed     13:13:08

13         in the United States Bankruptcy Court,         13:13:13

14         District of New Jersey, Case No. 23-12825.     13:13:14

15         This deposition is being held at Brown         13:13:21

16         Rudnick LLP, located at 7 Times Square, New    13:13:23

17         York, New York.                                13:13:26

18                   My name is Paul Baker and I am the   13:13:28

19         videographer.  The court reporter is Randi     13:13:29

20         Friedman, and we are both from Veritext.       13:13:31

21         Appearances have been noted on the             13:13:34

22         stenographic record.                           13:13:36

23                   Will the court reporter please       13:13:38

24         swear in the witness.                          13:13:47

25                                                        13:13:47

Page 7

```
 1              A. Birchfield, Esq.

 2                  * * *                      13:13:47

 3              ANDY BIRCHFIELD, the witness   13:13:47

 4       herein, having been duly sworn, was examined  13:13:47

 5       and testified as follows:             13:13:47

 6                  * * *                      13:13:47

 7              EXAMINATION                    13:13:47

 8   BY MR. HAAS:                              13:13:47

 9       Q    Mr. Birchfield, good afternoon.  13:13:48

10       A    Good afternoon.                  13:13:50

11       Q    My name is Eric Haas, on behalf of  13:13:50

12   Johnson & Johnson.  We've met before; correct?  13:13:53

13       A    Yes.                            13:13:56

14       Q    Mr. Birchfield, you're a lawyer;  13:13:56

15   right?                                    13:13:58

16       A    Yes.                            13:13:58

17       Q    Are you affiliated with any law firm?  13:13:59

18       A    Beasley Allen Law Firm in Montgomery,  13:14:01

19   Alabama.                                  13:14:03

20       Q    Any other law firms?            13:14:05

21       A    No.                             13:14:06

22       Q    Mr. Birchfield, which of the Beasley  13:14:08

23   Allen partners have been involved in talc  13:14:10

24   litigation or recovery of talc-related claims  13:14:14

25   against Johnson & Johnson or its affiliation?  13:14:18
```

```
                                                    Page 8

 1                    A. Birchfield, Esq.

 2        A     You're going to test my memory here.    13:14:22

 3   Certainly Leigh O'Dell and Ted Meadows.  We have    13:14:24

 4   had over the course of the last nine years, had a  13:14:27

 5   number of law partners that have been involved as  13:14:34

 6   well.  David Dearing, Ryan Beatty.  We've had a    13:14:36

 7   former law partner, Daniel Mason Ward, was         13:14:42

 8   involved.  Maybe other law partners that have      13:14:46

 9   been involved as well, but those are the ones      13:14:52

10   that I can think of off the top of my head.        13:14:55

11        Q     Okay.  Thank you.                       13:14:57

12              When I refer to talc-related            13:14:58

13   litigation or talc claims or talc litigation,      13:15:00

14   I'll be referring to the talc litigation against   13:15:03

15   Johnson & Johnson and its affiliates; okay?        13:15:07

16        A     Yes.                                    13:15:10

17        Q     How many individuals with talc claims   13:15:10

18   do you and/or Beasley Allen currently represent?   13:15:13

19        A     It would be approximately 11,300.       13:15:19

20        Q     Now, Mr. Birchfield, of any of those    13:15:32

21   11,300 individuals, are any of them claimants who  13:15:35

22   have not yet filed their claims in any court?      13:15:42

23        A     Yes.  There would be roughly -- my      13:15:46

24   best understanding is approximately 100 that       13:15:52

25   would have been -- would have been retained        13:15:55
```

```
                                                Page 9
 1                    A. Birchfield, Esq.
 2    and -- during the time of the pendency of        13:16:00
 3    bankruptcy, and not filed.                       13:16:03
 4        Q     Why were they not filed?               13:16:06
 5        A     Because of the pendency of the         13:16:07
 6    bankruptcy.                                      13:16:08
 7        Q     In other words, because there was an   13:16:09
 8    automatic stay --                                13:16:10
 9        A     Automatic stay.                        13:16:11
10        Q     -- that precluded you from filing      13:16:11
11    those claims?                                    13:16:14
12        A     Yes.                                   13:16:14
13        Q     Okay.  Of the 11,300 claims that       13:16:15
14    Beasley Allen represents, how many of those have 13:16:23
15    been filed in the multi-district litigation      13:16:26
16    pending in New Jersey?                           13:16:29
17        A     I couldn't give you a precise number.  13:16:33
18    Approximately 5,000.                             13:16:35
19        Q     So of the 11,200 claims that are       13:16:47
20    filed --                                         13:16:51
21        A     Let me back up.                        13:16:52
22        Q     Would you like to correct that?        13:16:54
23        A     I think it would probably be closer to 13:16:55
24    6,000.  My best estimate.                        13:16:57
25        Q     Okay.  So of the 11,200 claims that    13:17:03
```

```
                                                    Page 10

 1                      A. Birchfield, Esq.

 2      you said are filed, how many of those --        13:17:06

 3          A     No.  I'm sorry.                        13:17:10

 4          Q     Okay.                                  13:17:11

 5          A     So you asked how many claimants we     13:17:12

 6      represent.                                       13:17:14

 7          Q     Right.  And you said --                13:17:14

 8          A     11,300.                                13:17:15

 9          Q     Okay.                                  13:17:17

10          A     And you asked how many cases we have   13:17:18

11      that would be ready to be filed or would be filed 13:17:22

12      if -- but for the stay, and that's approximately 13:17:24

13      100.  You know, there are -- you know, there are 13:17:28

14      additional claims that are unfiled claims, but   13:17:31

15      would not be -- would not necessarily be cases to 13:17:34

16      be filed, you know, in the immediate term.       13:17:37

17          Q     What is the distinction you're making  13:17:42

18      between claims that are not files and claims that 13:17:45

19      are not ready to be filed in the immediate near  13:17:48

20      term?                                            13:17:51

21                MS. SLOCUM:  I'm going to object       13:17:51

22           and instruct the witness to the extent it   13:17:53

23           calls for work product, don't answer the    13:17:54

24           question.                                   13:17:57

25                THE WITNESS:  I will follow the        13:18:03
```

```
                                                      Page 11

 1                      A. Birchfield, Esq.

 2          advice of my counsel.                      13:18:04

 3      BY MR. HAAS:                                   13:18:04

 4          Q     Okay.  So let me just be clear then. 13:18:05

 5      Of the 11,300 claims that you testified that   13:18:08

 6      Beasley Allen represents, how many of those have 13:18:14

 7      not yet been filed with any court?             13:18:17

 8          A     So there would be approximately, you 13:18:21

 9      know, 5,000 claims that are -- that are unfiled 13:18:23

10      claims.                                        13:18:28

11          Q     So of the 5,000 that are unfiled, 100 13:18:31

12      have not been filed due to the automatic stay? 13:18:36

13          A     Right.                               13:18:39

14          Q     And the remaining 4,900 are not filed 13:18:39

15      for some other reason?                         13:18:45

16          A     Correct.                             13:18:46

17          Q     Do those 4,900 other claims constitute 13:19:01

18      viable claims?                                 13:19:06

19                    MS. SLOCUM:  Objection.  Instruct 13:19:08

20          the witness to the extent it requires work 13:19:09

21          product to be divulged, do not answer the  13:19:12

22          question.                                  13:19:16

23                    MR. HAAS:  There has been         13:19:17

24          extensive inquiry about claims in this     13:19:18

25          litigation by the group that Mr. Birchfield 13:19:21
```

```
                                              Page 12

  1                    A. Birchfield, Esq.

  2           is a part, so I am inquiring as to which    13:19:24

  3           claims are viable claims and fall within the 13:19:27

  4           bucket of claims that he believes are        13:19:30

  5           associated with his views of the case.       13:19:37

  6                    MS. SLOCUM:  And that requires him  13:19:39

  7           to disclose work product, his analysis of    13:19:40

  8           the claims and -- or his firm's analysis and 13:19:43

  9           determination of what is viable.             13:19:47

 10   BY MR. HAAS:                                         13:19:49

 11       Q    Mr. Birchfield, let me ask it this          13:19:49

 12   way:                                                 13:19:51

 13                    Do the 4,900 claims that are not filed 13:19:52

 14   for some other reason other than the automatic       13:19:56

 15   stay represent claims that are not supportive LTL    13:19:57

 16   bankruptcy claims?                                   13:20:08

 17       A    Okay.  Let me -- a couple of things I       13:20:09

 18   need to correct there.                               13:20:11

 19                    First of all, in regards to the -- you 13:20:13

 20   know, the 4,900, I was giving you approximate        13:20:15

 21   numbers.                                             13:20:19

 22                    In regards to, you know, an LTL plan, 13:20:20

 23   I haven't seen an LTL plan.  I have seen, you        13:20:24

 24   know, the term sheet that has been proposed, and,    13:20:29

 25   you know, I'm not aware of any of the -- any of      13:20:35
```

```
                                              Page 13
  1                 A. Birchfield, Esq.
  2     those claims that, you know, would be outside of   13:20:40
  3     what is -- what's referenced in that -- in the     13:20:44
  4     term sheet.  But, you know, I would not -- I       13:20:48
  5     would not recommend filing some of the types of    13:20:54
  6     claims that are referenced in the term sheet.      13:20:57
  7         Q    Okay.  So let me try walking through      13:21:05
  8     this one more time, see if we understand what      13:21:08
  9     we're talking about here.                          13:21:10
 10              So you have 11,300 claims that you        13:21:11
 11     contend that Beasley Allen represents; correct?    13:21:14
 12         A    Yes.                                      13:21:18
 13         Q    Of those, 6,000 claims are actually       13:21:20
 14     filed in the MDL?                                  13:21:22
 15         A    Approximately.                            13:21:24
 16         Q    5,000 are unfiled claims?                 13:21:25
 17         A    Correct, approximately.                   13:21:28
 18         Q    Of the 5,000, 100 are claims that you     13:21:30
 19     say would be filed but for the automatic stay?     13:21:33
 20         A    Right.                                    13:21:36
 21         Q    And the other 4,900 balance represents    13:21:37
 22     claims that you are not sure whether or not they   13:21:41
 23     would be filed?                                    13:21:45
 24         A    That's correct.  I mean, first of all,    13:21:48
 25     I am not personally reviewing these cases and      13:21:53
```

```
                                                    Page 14

  1                 A. Birchfield, Esq.

  2    making these decisions, so there are lawyers at    13:21:57

  3    Beasley Allen that review these cases.  There's    13:22:01

  4    staff that collect the medical records.  So I'm    13:22:04

  5    not -- I'm not personally reviewing these 5,000    13:22:07

  6    cases and making decisions.                        13:22:11

  7        Q    So focusing on the 4900 claims, has       13:22:13

  8    anyone at Beasley Allen reviewed those claims and  13:22:17

  9    determined whether they will be filed?             13:22:20

 10              MS. SLOCUM:  Objection.  I'm going        13:22:21

 11         to again instruct not to answer based on      13:22:22

 12         work product.                                  13:22:25

 13              MR. HAAS:  It's a question of            13:22:25

 14         whether.  I'm not getting into any           13:22:26

 15         attorney-client privilege or work product    13:22:28

 16         information.  Has anyone done it, so let's    13:22:29

 17         start --                                       13:22:32

 18              MS. SLOCUM:  No.  You asked             13:22:33

 19         whether anybody has determined them to be    13:22:34

 20         viable.  That was your question.              13:22:36

 21              MR. HAAS:  I didn't ask that.           13:22:39

 22    BY MR. HAAS:                                        13:22:39

 23        Q    Has anyone done an analysis to            13:22:40

 24    determine whether they can be filed?               13:22:42

 25        A    So for all of the cases that Beasley     13:22:46
```

```
                                              Page 15

  1                    A. Birchfield, Esq.

  2    Allen has, you know, has taken in, we would -- we   13:22:50

  3    would obtain medical records, we would do an        13:22:55

  4    evaluation, you know, of those claims.  And that    13:22:59

  5    would have been done for the vast majority of       13:23:05

  6    those claims.  I cannot say that it has been done   13:23:08

  7    for every claim.  If we got a case in last week,    13:23:11

  8    you know, it may not have happened.  But for the    13:23:15

  9    vast majority of the claims, we have -- we          13:23:17

 10    obtained the medical records and we're in the       13:23:23

 11    process of evaluating those claims.                 13:23:25

 12         Q    Okay.  So to circle back, you have as     13:23:27

 13    of this time 6,100 claims that you have             13:23:32

 14    determined that will or have been filed in court?   13:23:38

 15         A    Approximately.  I'm giving you            13:23:46

 16    approximate numbers.                                13:23:47

 17         Q    Approximately.  Okay.  6,100.  Okay.      13:23:48

 18              Now starting with the very first claim    13:23:53

 19    that Beasley Allen was engaged with respect to,     13:23:58

 20    when was that?                                      13:24:02

 21         A    If you want a precise date, I can't       13:24:06

 22    give you that.                                      13:24:08

 23         Q    Round terms.                              13:24:09

 24         A    I believe that to have been in the        13:24:11

 25    2013 time frame.                                    13:24:13
```

```
                                                      Page 16

 1                    A. Birchfield, Esq.

 2        Q     Okay.  You indicated that there are    13:24:16

 3   approximately 6,000 claims in the MDL.  By what   13:24:20

 4   time frame had Beasley Allen been retained with   13:24:25

 5   respect to those 6,000 claims?                    13:24:28

 6        A     Well, it would have been -- it would   13:24:32

 7   have been before October of '21.  I can't say.  I 13:24:35

 8   can't say when the last case was retained and was 13:24:39

 9   filed in the MDL, but I know it would have been   13:24:43

10   before October of '21.                            13:24:45

11        Q     And just for a general sense,          13:24:47

12   Mr. Birchfield, what was the time frame in which  13:24:49

13   you acquired those 6,000 claims between 2013 and  13:24:52

14   2021, in general terms?                           13:24:56

15        A     I really can't answer that question.   13:25:03

16        Q     When were the majority of the claims   13:25:04

17   obtained by?                                      13:25:08

18        A     I can't answer that question.  We have 13:25:09

19   been taking, you know, cases, you know, from      13:25:13

20   lawyers throughout the -- you know, throughout    13:25:18

21   this period, but I can't tell you, you know -- I  13:25:20

22   can't tell you, you know, how many were in 2014   13:25:24

23   versus '15 versus '16.  I don't know that.        13:25:27

24        Q     Did you have the majority of the       13:25:31

25   claims by 2018?                                   13:25:33
```

```
                                                    Page 17
  1                    A. Birchfield, Esq.

  2        A      I can't say.  Probably, but I can't    13:25:39

  3    give you a definitive answer.                     13:25:41

  4        Q      Did you have the majority of claims by  13:25:42

  5    2019?                                             13:25:43

  6        A      Probably so, but I can't say           13:25:47

  7    definitively.                                     13:25:49

  8        Q      Did you obtain any claims in '20 and   13:25:50

  9    '21 of the 6,000 that were filed in the MDL?      13:25:51

 10        A      I can't say definitively, but I would  13:25:57

 11    certainly think so.                               13:25:59

 12        Q      So is it fair to say that you obtained 13:26:03

 13    the majority of the claims that have been filed   13:26:05

 14    in the MDL by no later than 2019?                 13:26:07

 15                MS. SLOCUM:  Objection.               13:26:10

 16                THE WITNESS:  When you say            13:26:11

 17        "majority," I mean, you're talking about      13:26:12

 18        more than 50 percent, I would just have to    13:26:14

 19        guess, but I would think most of those cases  13:26:18

 20        had been retained by then, but I don't know   13:26:22

 21        definitively.                                 13:26:24

 22    BY MR. HAAS:                                      13:26:25

 23        Q      So with respect to the 6,000 claims    13:26:28

 24    that have been filed in the MDL, those cases are  13:26:31

 25    currently stayed; correct?                        13:26:36
```

```
                                              Page 18
 1                    A. Birchfield, Esq.

 2         A     Yes.                           13:26:38

 3         Q     They have been since October 2021;   13:26:38

 4    correct?                                  13:26:40

 5         A     Except for a very brief --      13:26:41

 6         Q     Two hours?                     13:26:43

 7         A     Yes.                           13:26:43

 8         Q     And you're aware from your     13:26:45

 9    participation in the MDL that in September of   13:26:47

10    2020, Judge Wolfson ordered the formation of --   13:26:51

11    an administration of a common benefit fund for   13:26:54

12    the payment of fees and expenses incurred in   13:26:58

13    connection with the MDL correct?          13:27:01

14         A     I'm aware that a common benefit fee   13:27:03

15    order was entered.  I couldn't give you the date.   13:27:06

16         Q     Sometime around the September 2020   13:27:11

17    time frame?                               13:27:13

18         A     I don't dispute that.  I don't know.   13:27:16

19         Q     It was sometime before the LTL   13:27:18

20    bankruptcy was commenced in October of 2021;   13:27:21

21    correct?                                  13:27:24

22         A     Yes.                           13:27:24

23         Q     And you're generally familiar with the   13:27:25

24    terms of that agreement?                  13:27:27

25         A     Yes.                           13:27:28
```

Page 19

```
 1              A. Birchfield, Esq.
 2      Q    Okay.  So pursuant to the common     13:27:29
 3  benefit order that Judge Wolfson entered, up to  13:27:36
 4  12 percent of any amount recovered on talc claims 13:27:39
 5  in the MDL is assigned to a common benefit;      13:27:42
 6  right?                                           13:27:47
 7      A    Could be, yes.  My understanding is    13:27:48
 8  it's -- 10 percent fee is 2 percent cost.        13:27:51
 9      Q    Right.  So let's say, for example, in  13:27:55
10  the MDL, if the settlement was obtained for      13:27:58
11  $8.9 billion, the common benefit fund would be up 13:28:02
12  to $1.068 billion, which is 12 percent; right?   13:28:07
13              MS. SLOCUM:  Objection.  You're     13:28:12
14      asking him to speculate as to a settlement   13:28:12
15      in the MDL which did not occur.              13:28:15
16              MR. HAAS:  I'm asking him to         13:28:18
17      answer the question of whether or not he     13:28:19
18      would agree that if there's a settlement in  13:28:20
19      the MDL, which is a gross recovery amount in  13:28:21
20      the MDL, up to 12 percent of that would go   13:28:25
21      into the common benefit fund, and that       13:28:30
22      number is, I'll represent for the record, is 13:28:32
23      1.068 billion.                               13:28:33
24              MS. SLOCUM:  Objection.  The         13:28:38
25      court's order states what it is, okay.       13:28:39
```

Page 20

```
 1                    A. Birchfield, Esq.
 2                MR. HAAS:  No.  If you want to       13:28:42
 3        object, object.  If you want to instruct him  13:28:43
 4        not to answer, do so.                          13:28:45
 5   BY MR. HAAS:                                         13:28:46
 6        Q     Answer the question.                     13:28:47
 7        A     When you say up to that amount, I        13:28:48
 8   would agree with that.  It would not be that        13:28:50
 9   amount because there are -- there were different    13:28:53
10   provisions where firms could agree early on and     13:29:00
11   there would be a lesser percentage.  So it's not    13:29:04
12   12 percent across the board.                        13:29:07
13        Q     You're referring to, let's say,          13:29:08
14   Paragraph 24 of the order, which states that if     13:29:09
15   you participate early on, the contribution          13:29:11
16   percentage would be 8 percent, not 12 percent;      13:29:15
17   right?  Is that what you're referring to?           13:29:19
18        A     I'm not sure of the paragraph.  I        13:29:20
19   didn't review it, you know -- I didn't review it    13:29:22
20   for this deposition.  I'm not disputing that.       13:29:26
21   I'm talking to you in terms of -- I'm testifying    13:29:28
22   in terms of in my general understanding of the      13:29:31
23   common benefit.                                     13:29:34
24        Q     So your general understanding is that    13:29:36
25   the range of fees that could be contributed to      13:29:38
```

```
                                              Page 21

 1                    A. Birchfield, Esq.

 2    the common benefit fund is anywhere from      13:29:41

 3    8 percent to 12 percent of the gross recovery 13:29:44

 4    amount, depending upon whether or not the     13:29:48

 5    individual firms were early participation or not? 13:29:51

 6         A    Yes.                                 13:29:56

 7         Q    So that would be anywhere between    13:29:56

 8    $712 million or $1.068 billion for 8.9 gross   13:29:58

 9    recovery amount; right?                        13:30:05

10         A    I'm trusting your math.  I can't do  13:30:08

11    that in my head.                               13:30:11

12         Q    Okay.                                13:30:11

13         A    Not quickly, anyway.                 13:30:12

14         Q    And that gross recovery amount that is 13:30:14

15    put into the common benefit fund is then provided 13:30:19

16    to those firms that provide common benefit work 13:30:25

17    product for the MDL; correct?                  13:30:30

18         A    As a general rule, you know, that is 13:30:34

19    true.  I mean, typically what would happen when a 13:30:36

20    court enters a common benefit assessment award 13:30:39

21    like this, then there would be, you know, a    13:30:42

22    determination, you know, at the back end about, 13:30:45

23    you know, the amount -- the amount of the overall 13:30:50

24    pot, the overall common benefit fund amount.  And 13:30:54

25    then that amount would be overseen by, you know, 13:31:00
```

```
                                                    Page 22

 1                    A. Birchfield, Esq.

 2      an Article III judge to determine, you know, what   13:31:04

 3      is an appropriate, you know, allocation of those    13:31:07

 4      funds.  And that's -- you know, that is the         13:31:09

 5      typical way, you know, that from my experience      13:31:13

 6      the common benefit fees are -- you know, are        13:31:16

 7      handled.                                            13:31:19

 8              So the first determination is, okay,        13:31:19

 9      the order is entered, and the order is entered      13:31:22

10      to -- you know, as an approximation of what would   13:31:25

11      be necessary, the court at the end would            13:31:29

12      determine if that is appropriate, and if so, then   13:31:34

13      begin the allocation process among the lawyers      13:31:37

14      who did the work on behalf of the other             13:31:39

15      claimants.                                          13:31:42

16          Q    And the allocation of that amount          13:31:45

17      among the lawyers that did the work depends upon    13:31:47

18      what common benefit work they did; correct?         13:31:51

19          A    Yes.                                       13:31:54

20          Q    Okay.  And the plaintiff steering          13:31:54

21      committee that's in the MDL is tasked with the      13:31:58

22      responsibility of identifying who should do that    13:32:02

23      common benefit work; right?                         13:32:04

24          A    As a general -- as a general               13:32:06

25      principle, yes.                                     13:32:08
```

```
                                                 Page 23

 1                  A. Birchfield, Esq.

 2        Q     And Beasley Allen sits on that      13:32:09

 3   plaintiff steering committee; correct?         13:32:11

 4        A     Correct.                             13:32:13

 5        Q     And Beasley Allen to date, you would 13:32:14

 6   agree with me, has performed the vast majority of 13:32:19

 7   the common benefit work product incurred,      13:32:22

 8   according to Beasley Allen, the largest         13:32:24

 9   percentage of the common benefit expenses; right? 13:32:28

10              MS. SLOCUM:  Objection.  That's      13:32:30

11        requiring work product.                    13:32:32

12              MR. HAAS:  No, it's not.  It's a      13:32:35

13        fact.                                       13:32:36

14   BY MR. HAAS:                                     13:32:36

15        Q     Go ahead, you can answer.            13:32:37

16              MS. SLOCUM:  Objection still         13:32:38

17        stands.                                     13:32:38

18   BY MR. HAAS:                                     13:32:39

19        Q     You can answer.                       13:32:39

20        A     I'm not trying to avoid or be evasive 13:32:42

21   here in any way.  I mean, has Beasley Allen done, 13:32:46

22   you know, a substantial amount of the, you know, 13:32:50

23   the work in the MDL?  Yes.  Sitting here, me     13:32:53

24   personally, I cannot give you an answer about how 13:32:59

25   much, you know, Beasley Allen has done, you know, 13:33:01
```

```
                                                      Page 24

 1                    A. Birchfield, Esq.

 2    versus, you know, Ashcraft & Gerel or Levin      13:33:05

 3    Papantonio and Mr. Tisi versus Mr. Golomb.  So to 13:33:08

 4    say vast majority, I think, is more than --      13:33:14

 5    that's farther than I can go at this point.      13:33:16

 6         Q     Beasley Allen tracks those amounts;   13:33:18

 7    right?                                           13:33:20

 8         A     Beasley Allen -- Beasley Allen tracks, 13:33:23

 9    you know, the work that we do for the, you know, 13:33:26

10    for the MDL.                                     13:33:30

11         Q     Do you provide any reports?           13:33:31

12         A     I don't.                              13:33:33

13         Q     Do you know whether Beasley Allen     13:33:34

14    does?                                            13:33:35

15         A     I'm not sure.  I mean, Ms. O'Dell is  13:33:36

16    co-lead and --                                   13:33:41

17         Q     Do you have --                        13:33:43

18         A     She's co-lead of the MDL.             13:33:43

19         Q     You're the head of the mass torts     13:33:45

20    litigation practice at Beasley Allen, are you    13:33:47

21    not?                                             13:33:47

22         A     I am.                                 13:33:49

23         Q     Do you have any sense of whether or   13:33:49

24    not Beasley Allen has a claim to be the largest  13:33:50

25    percentage of the common benefit fund based on   13:33:54
```

```
                                             Page 25
 1                  A. Birchfield, Esq.
 2    fees and work done to date?                13:33:57
 3        A     That would be the determination of --  13:34:00
 4    of an Article III judge if it is administered  13:34:03
 5    through the MDL court.                      13:34:07
 6        Q     Based upon the work done to date, is  13:34:09
 7    it Beasley Allen's position that it has      13:34:11
 8    undertaken the largest percentage of the common  13:34:16
 9    benefit work and incurred the largest percentages  13:34:20
10    of the expenses to date?                    13:34:23
11              MS. SLOCUM:  Objection.  Asked and  13:34:24
12        answered.                               13:34:24
13              MR. HAAS:  No, it's not.          13:34:25
14    BY MR. HAAS:                                 13:34:25
15        Q     You can answer.                   13:34:26
16              MS. SLOCUM:  He did.  He          13:34:26
17        already --                              13:34:27
18              MR. HAAS:  That was not asked.  He  13:34:28
19        can answer.                             13:34:29
20              MS. SLOCUM:  He answered.         13:34:30
21    BY MR. HAAS:                                 13:34:31
22        Q     You can answer.  Go ahead.        13:34:32
23        A     If you're asking my opinion as we sit  13:34:33
24    here today, my opinion is probably so.      13:34:35
25        Q     Yeah.                             13:34:38
```

Page 26

```
 1              A. Birchfield, Esq.

 2      A    But I can't say that definitively.    13:34:39

 3      Q    You're the lead plaintiff counsel in  13:34:40

 4    the MDL, aren't you?                          13:34:40

 5      A    We're co-lead.                         13:34:43

 6      Q    You're not going to go to the court   13:34:45

 7    and say, "No, no, no, we're not entitled to the 13:34:46

 8    biggest percentage"?                          13:34:48

 9      A    But the difference in what you're     13:34:51

10    asking and what I am saying is you're not --  13:34:52

11    you're saying are you entitled to that.       13:34:56

12      Q    No, I understand the process, that you 13:34:59

13    have to basically make your submission.  The  13:35:01

14    ultimate determination is made by the         13:35:04

15    administrator.  I get that.  My question is   13:35:06

16    whether with respect to the work done to date 13:35:09

17    that would qualify you in the threshold inquiry 13:35:10

18    is whether or not Beasley Allen has done most of 13:35:15

19    the work and incurred most of the expenses from 13:35:17

20    your perspective.                             13:35:19

21      A    So first of all, it would not be -- in 13:35:24

22    my view, it would not be an administrator.  It 13:35:26

23    would be an Article III judge that would make the 13:35:29

24    determination.  And I do think Beasley Allen -- 13:35:31

25    you could take the position that we've done the 13:35:35
```

                                                    Page 27

 1                    A. Birchfield, Esq.

 2    majority of the work.  Probably so.          13:35:39

 3         Q     If the Article III judge, in your view  13:35:43

 4    as the proper determiner, in the end allocates a  13:35:44

 5    portion of that 700 million to over a billion  13:35:50

 6    dollars worth of common benefit fees and expenses  13:35:55

 7    to Beasley Allen, that would be on top of the  13:36:01

 8    attorney fees that you otherwise would be      13:36:03

 9    entitled to get; correct?                     13:36:05

10         A     Partially.                         13:36:10

11         Q     Because there's a participation    13:36:13

12    percentage that you pay?                      13:36:15

13         A     Yeah, because part of the fees would  13:36:17

14    be paid, you know, out of the -- you know, of the  13:36:18

15    attorneys' fees portion.  And so a substantial  13:36:22

16    amount of the, you know, the common benefit, you  13:36:27

17    know, fund would be, you know, based on our    13:36:29

18    attorneys' fees.  So you cannot -- it would be  13:36:33

19    inappropriate to say that that is on top of the  13:36:35

20    attorneys' fees.                              13:36:39

21         Q     Because under the order you are deemed  13:36:40

22    a participating attorney or participating counsel  13:36:42

23    in the common benefit fund agreement; correct?  13:36:47

24         A     Yes.                               13:36:49

25                    MS. SLOCUM:  Objection.       13:36:49

```
                                                    Page 28

 1                    A. Birchfield, Esq.

 2      BY MR. HAAS:                              13:36:50

 3          Q     So to summarize, Beasley Allen would   13:36:51

 4      be entitled to a share of the common benefit fund  13:36:56

 5      and a portion of its attorney fees that it   13:36:59

 6      otherwise charged; right?                13:37:04

 7          A     If the court made that determination,   13:37:07

 8      yes.                                     13:37:09

 9          Q     Okay.  And the fees you otherwise   13:37:10

10      charge is a 40 percent contingency fee; correct?   13:37:11

11          A     As a general rule, that's true.   13:37:15

12          Q     Yes.  So it's fair to say that in   13:37:17

13      terms of the relative economic incentives,   13:37:23

14      because Beasley Allen is entitled to those   13:37:29

15      amounts from the common benefit fund outside of   13:37:32

16      bankruptcy, but not entitled to those amounts   13:37:34

17      inside a bankruptcy, that Beasley Allen has an   13:37:38

18      economic incentive to resolve the cases outside   13:37:41

19      of bankruptcy; correct?                  13:37:46

20                    MS. SLOCUM:  Objection.   13:37:47

21                    THE WITNESS:  No.  Our interest --   13:37:48

22          our interest is getting fair values for our   13:37:54

23          clients, period.  And that is our goal.  And   13:37:56

24          I have been steadfast.  I have been   13:38:02

25          steadfast on the position that we are not --   13:38:06
```

Page 29

```
 1                    A. Birchfield, Esq.
 2          that I have urged, you know, everyone on our   13:38:09
 3          side and we have -- we have maintained the     13:38:12
 4          position we are not going to have the common   13:38:15
 5          benefit, you know, fee issue become a          13:38:18
 6          barrier to getting reasonable resolution,      13:38:21
 7          fair values for our clients.                   13:38:26
 8  BY MR. HAAS:                                           13:38:27
 9      Q    We'll come back to that in a moment,          13:38:27
10  but you understand that as a general matter in         13:38:29
11  bankruptcy you would not be entitled to any            13:38:34
12  portion of a common benefit fund that you would        13:38:36
13  be entitled outside of bankruptcy; correct?            13:38:39
14      A    No, I do not.                                 13:38:42
15              MS. SLOCUM:  Object.  The witness          13:38:44
16          is not here to testify to bankruptcy law.      13:38:45
17              MR. HAAS:  He can answer the               13:38:47
18          question.  If you want to instruct him not     13:38:47
19          to answer --                                   13:38:49
20              MS. SLOCUM:  Don't answer the              13:38:50
21          question.                                      13:38:50
22  BY MR. HAAS:                                           13:38:51
23      Q    Is it your view, Mr. Birchfield, that         13:38:51
24  as a general proposition you are entitled to the       13:38:53
25  common benefit fee in bankruptcy?                      13:38:56
```

```
                                                 Page 30

 1                   A. Birchfield, Esq.

 2                   MS. SLOCUM:  Objection.  Again,    13:38:59

 3          I'll instruct the witness not to answer.    13:39:00

 4          He's not here to testify as to --          13:39:02

 5                   MS. O'DELL:  Please don't          13:39:06

 6          interrupt.                                  13:39:07

 7                   MR. HAAS:  I understand he has his 13:39:07

 8          motivation for participating or not         13:39:08

 9          participating in the proposed               13:39:10

10          reorganization, and that's what I'm         13:39:12

11          inquiring as to.                            13:39:16

12     BY MR. HAAS:                                     13:39:16

13          Q    You can answer the question.          13:39:16

14                   MS. SLOCUM:  No.  I'm instructing  13:39:17

15          the witness not to answer.  He's not here to 13:39:17

16          testify as to bankruptcy law on a plan that 13:39:20

17          hasn't been filed.                          13:39:22

18                   MR. HAAS:  A plan has been filed.  13:39:23

19     BY MR. HAAS:                                     13:39:28

20          Q    Again, Mr. -- I'll ask it one more    13:39:28

21     time.  If your counsel is going to instruct you 13:39:33

22     not to answer, we can address it later.  I      13:39:34

23     usually ask at least three times.  If I don't get 13:39:37

24     it on the third time, I move on.                13:39:39

25          A    I can't answer.  You said you wanted  13:39:41
```

```
                                              Page 130
   1                  A. Birchfield, Esq.
   2     notwithstanding the fact that Beasley Allen has    15:58:32
   3     litigated on behalf of talc claimants for          15:58:35
   4     decades, you have never record a dime for talc     15:58:37
   5     claimants in litigation; correct?                  15:58:40
   6               MS. SLOCUM:  Objection, form.            15:58:42
   7               THE WITNESS:  We haven't litigated       15:58:43
   8          for decades; okay.  The litigation is         15:58:44
   9          approximately ten years.  That's a decade.    15:58:51
  10          So that is true, but it's not decades.        15:58:52
  11          And -- but we have not -- you know, J&J has   15:58:57
  12          not -- has not settled with Beasley Allen     15:59:00
  13          any of our claims.                            15:59:06
  14     BY MR. HAAS:                                        15:59:09
  15          Q     And you have lost every single one of   15:59:10
  16     the cases you tried, either at trial or on         15:59:11
  17     appeal; correct?                                   15:59:13
  18          A     No.  That's a mischaracterization.  I   15:59:15
  19     mean, when you -- when you say that, you know,     15:59:17
  20     that a verdict is vacated on personal              15:59:23
  21     jurisdictional grounds, that is not losing on the  15:59:26
  22     merits.  Those are still valid claims.             15:59:28
  23          Q     Mr. Birchfield, in the entire           15:59:30
  24     decade plus time --                                15:59:34
  25               MR. PLACITELLA:  Referee.  One           15:59:36
```

```
                                                      Page 143

 1                    A. Birchfield, Esq.

 2         we get reasonable compensation.  Reasonable   16:26:46

 3         values for our clients.                       16:26:49

 4    BY MS. BROWN:                                      16:26:51

 5         Q     Sure, and I understand your position.   16:26:51

 6    I'm just talking about kind of what has happened   16:26:52

 7    to date, and you would believe that to date,       16:26:55

 8    every client whose case Beasley Allen has taken    16:26:57

 9    to a trial has gone home with $0 --                16:27:02

10                    MS. SLOCUM:  Objection.            16:27:05

11    BY MS. BROWN:                                      16:27:06

12         Q     -- right?                               16:27:07

13                    MS. SLOCUM:  Asked and answered,   16:27:08

14         like, about 15 times now.                     16:27:08

15                    THE WITNESS:  So Beasley Allen --  16:27:10

16         for the cases that have gone to trial, none   16:27:12

17         of those -- you know, none of the verdicts,   16:27:14

18         the favorable verdicts, none of those have    16:27:16

19         been paid.  None of the defense verdicts      16:27:19

20         have been paid.  So it is true there have     16:27:21

21         been no payments on the 11 or 12 plaintiffs   16:27:24

22         that Beasley Allen represents that have gone  16:27:29

23         to trial to date.                             16:27:31

24    BY MS. BROWN:                                      16:27:32

25         Q     I want to ask you some questions, sir,  16:27:33
```