UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>This document relates to: AUSTIN, ET AL. v. JOHNSON & JOHNSON, ET AL., C.A. No. 3:23-cv-22364 (E.D. Pennsylvania) | **MDL No. 2738**<br><br>Hearing Date:<br>Courtroom: 5E |

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Pursuant to 28 U.S.C. §1447(c) and for the reasons that follow, this action should be remanded to the Philadelphia Court of Common Pleas, Pennsylvania, for lack of subject matter jurisdiction.

### I.    FACTUAL BACKGROUND

On September 6, 2023, Plaintiffs filed their Complaint against the Johnson & Johnson, Johnson & Johnson Consumer Inc., Johnson & Johnson Holdco Inc., Janssen Pharmaceuticals, Inc., Kenvue Inc., and LTL Management, LLC (defendants are collectively referred to as "Defendants") in the Philadelphia Court of Common Pleas. *See, generally*, Complaint, **Exhibit A**. Plaintiffs' Complaint alleges that the Plaintiffs regularly applied the PRODUCTS to their perineal region, causing them to be diagnosed with Ovarian Cancer. *See*, Complaint at ¶ 5 - 111. It is undisputed that both Janssen and J&J are not diverse from the properly joined Plaintiffs. *See*, Complaint at ¶ 5 and 32. Nor can it be disputed at this stage that Defendants' wrongful and fraudulent conduct, caused Plaintiffs Ovarian Cancer. *See*, Complaint at ¶¶ 5 - 111. Nor is it disputed that a Superior Court Judge of New Jersey has already denied a motion by J&J to dismiss Janssen, Holdco, and Kenvue on the very grounds that J&J removed this case to the MDL. See Order, **Exhibit B**.

1
PLAINTIFFS' MEMORANDUM IN SUPPORT OF  MOTION TO REMAND

For decades, the defendants have either known or should have known that regular use of talc powder in a woman's perineal region causes Ovarian Cancer. In 1971, the first study was conducted that suggested an association between talc use and Ovarian Cancer. *See*, Complaint at ¶ 137. In 1982, the first epidemiological study was performed on talc powder use in the female genital (perineal) region. *See*, Complaint at ¶ 138. Since 1982, there have been approximately twenty-two additional epidemiologic studies providing data regarding the association of talc and Ovarian Cancer. Complaint at ¶ 139. Nearly all of these studies have reported an elevated risk of Ovarian Cancer associated with genital talc use in women. Indeed, in or about February, 2006, the International Agency for Research on Cancer (IARC), the specialized cancer agency of the World Health Organization, published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. *See*, Complaint at ¶ 149; n. 8 [IARC, "Perineal use of talc-based body powder (Group 2B)" available at http://monographs.iarc.fr/ENG/Monographs/PDFs/93-talc.pdf.]

Despite decades of studies showing a clear connection between perineal talc use and Ovarian Cancer, the defendants failed to adequately warn consumers, including Plaintiffs, of the risk of developing Ovarian Cancer after perineal use of the Products. Indeed, the defendants marketed, labeled, and/or sold the Products directly to consumers, such as Plaintiffs, without any warning of the known or knowable carcinogenic dangers posed by the Products; rather, the Products were marketed, labeled, and/or sold to consumers, such as Plaintiffs, as a symbol of "freshness" and "comfort," absorbing "excess wetness," and "clinically proven to be gentle and mild.". *See*, Complaint at ¶134.

Plaintiffs' Complaint devotes hundreds of paragraphs to defendants' specific conduct giving rise to the defendants liability and levies specific allegations against all the defendants for

Strict Liability Failure to Adequately Warn (*see*, Complaint at ¶¶ 166), Negligence (*see*, Complaint at ¶¶ 192), and Negligent Misrepresentation (*see*, Complaint at ¶¶ 226). Nonetheless, on October 26, 2023, the J&J unilaterally and improperly removed this action to this Court. In support of removal, the J&J simply *assume*, on their own, that Plaintiffs do not have "any chance" of recovery against J&J or Janssen on any of these claims. This argument misses the mark and has no basis.

### III.     ARGUMENT

Plaintiffs' motion to remand should be granted because (1) complete diversity of citizenship is lacking, as Plaintiffs and Defendants are not diverse and Plaintiffs' claims against J&J and Janssen are recognized as meritorious under prevailing Pennsylvania law, and (2) Plaintiffs claims have been properly joined.

#### A.  Standard For Remand Under 28 U.S.C. § 1447(c)

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441; cases may be remanded under § 1447(c) for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure. *Baldy v. First Niagara Pavilion, C.C.R.L., LLC*, 149 F. Supp. 3d 551, 555–56 (W.D. Pa. 2015) [citing *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir.1993)]. The party seeking removal bears the burden to establish federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir.1995). It is well-settled that the statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *Baldy*, 149 F. Supp. 3d at 555–56; *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985). Any doubt shall be resolved in favor of remand. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir.2009).

When a defendant attempts to argue that the forum defendant was "fraudulently joined",

the defendant carries a "heavy burden" of persuasion; and removability is determined by reference to Plaintiffs' initial pleading in state court, with all doubts resolved in favor of remand. *Tamera Rothschild Esq. v. Lancer Ins. Co.*, No. CV 15-1072, 2016 WL 1237353, at *4 (W.D. Pa. Mar. 30, 2016). Plaintiffs' motives are "irrelevant"; and removal will be upheld only if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute." *Id*. A defendant removing a case for "fraudulent joinder" must present "clear and convincing" **evidence** of fraudulent joinder. *DiMichelle v. Sears & Roebuck Co.*, No. CIV. A. 97-6470, 1997 WL 793589, at *2 (E.D. Pa. Dec. 5, 1997) [citing *Nobers v. Crucible, Inc.* 602 F.Supp. 703, 705–06 (W.D.Pa.1985)]. In other words, the J&J Defendants must show, by clear and convincing **evidence**, that "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgement." *Id*. Indeed, this is a very low bar; if there is **any possibility** that a Pennsylvania court would find that a complaint states a cause of action against J&J or Janssen, the action must be remanded. On matters of substantive law, "[i]f there is even a possibility that a state court would find that a plaintiff's complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court*.*" *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 352 F. Supp. 2d 533, 537 (E.D. Pa. 2004) [citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990)]. Any uncertainties as to the current state of controlling substantive law should be held in favor of the plaintiff. *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 624 F. Supp. 2d 396, 412 (E.D. Pa. 2009).

      Defendant's procedurally misjoined arguments must also fail because the Third Circuit

has not adopted the rule that fraudulent misjoinder of Plaintiffs can support removal of an action filed in state court. Only one Circuit Court has adopted that doctrine, which has been severely criticized. In 1996, the Eleventh Circuit ruled in *Tapscott v. MS Dealer Service Corporation* that federal courts can consider the fraudulent or "egregious" misjoinder of a plaintiff when evaluating the propriety of removal. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated by Cohen v. Off. Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). But the *Tapscott* Court held that mere misjoinder under Fed. R. Civ. P. 20 does not support removal: "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id*.

## I. Diversity of Jurisdiction Does Not Exist From All Properly Joined Plaintiffs

It is J&J' duty to show, by clear and convincing **evidence**, that "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgement." . *DiMichelle v. Sears & Roebuck Co.*, No. CIV. A. 97-6470, 1997 WL 793589, at *2 (E.D. Pa. Dec. 5, 1997) [citing *Nobers v. Crucible, Inc.* 602 F.Supp. 703, 705–06 (W.D.Pa.1985)].

J&J has put forth no evidence of fraudulent joinder and instead erroneously claimed that Plaintiffs have not set forth any allegations against any defendant except for J&J. Such an argument is nonsense.

Plaintiffs' Complaint is full of over 250 paragraphs of allegations against all the listed defendants, including J&J and Janssen. *See copy of Complaint*. Indeed, the complaint alleges that all of the defendants' actions caused Plaintiffs to develop ovarian cancer and that the defendants continue to this day to "conceal their knowledge of the PRODUCTS' unreasonably dangerous

risks from consumers and the medical community." Complaint at ¶ 4.  That the defendants "failed to adequately inform plaintiffs, consumers, and the medical community about the known risks of Ovarian Cancer associated with perineal use of the PRODUCTS." *Id*.

Because the complaint is replete with allegations agaisnt all of the defendants, Plaintiffs have properly named and do intent to prosecute all of the Defendants.

II.   **Plaintiffs' Claims Are Related and Arise Out of the Same Series of Transactions and Occurrences and There are Questions of Law and Fact Common to All Plaintiffs**

Plaintiffs allege that the same product, Talcum powder, manufactured by the same defendants, caused the same disease. Such claims are properly joined in one complaint under Pennsylvania law.  Pennsylvania Rule of Civil Procedure 2229(a) describes when claims of plaintiffs may be joined in one action:

> Persons may join as plaintiffs who assert any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action.

Pa. R.C.P. 2229(a). Rule 2229 is to be liberally construed in order to "[p]revent a multiplicity of suits, and expedite the final determination of litigation by inclusion in one suit of all parties directly interested in the controversy despite technical objections previously existing in many situations. It also recognizes the economy of a procedure under which several demands arising out of the same occurrence may be tried together, thus avoiding the reiteration of the evidence relating to facts common to the several demands." *Siranovich v. Butkovich*, 76 A.2d 640, 643 (Pa. 1950) (Rule 2229 adapted from Federal Rule 20).

Pennsylvania courts have interpreted the "same transaction or occurrence" test articulated in Rule 2229 broadly so as to achieve these policy goals. The Pennsylvania Supreme Court has

6

PLAINTIFFS' MEMORANDUM IN SUPPORT OF  MOTION TO REMAND

held that the "same transaction or occurrence" gives rise to claims when they arise from "a common factual background or common factual or legal questions." *Stokes v. Loyal Order of Moose Lodge No*. 696, 466 A.2d 1341, 1344-45 (Pa. 1983). The term "transaction" has itself been broadly defined to include "any act as affecting legal rights or obligations," embracing "an entire occurrence out of which a legal right springs or on which a legal obligation is predicated." *Hineline*, 586 A.2d at 457. Thus, the comments to Rule 2229 confirm that plaintiffs may be joined together when the claims stated arise from a common set of facts, so long as a question of law or fact is common to all: "This joinder is permitted although the causes of action are 1) several; 2) separate or independent; or 3) in the alternative." *Buchanan*, 1975 WL 16967, at n.3 (quoting comments to Rule 2229).

Likewise, Rule 20(a) joinder of plaintiffs is properly used for the efficient adjudication of toxic tort and product liability cases where "all of the Plaintiffs' claims rely upon the same theory that direct…exposure to" an environmental toxin "caused their injuries." *Pallano v. AES Corportation*, No. CV N09C-11-021 JRJ, 2016 WL 97496, at *2 (Del. Super. Ct. Jan. 4, 2016). *Pallano* held that 24 plaintiffs in a multi-plaintiff complaint were properly joined despite defendants' objections that the exposures occurred at different times and the injuries were not identical. *Id.* Joinder was proper because Plaintiffs' injuries were caused by the same series of Defendants' bad acts that resulted in Plaintiffs' toxic exposures; and had overlapping expert testimony related to causation and damages. *Id.* Not only did the Court determine the joinder of the 25 plaintiffs was proper under Rule 20, the Court found joinder was proper for trial under Rule 42. *Id; See also Campbell v. Boston Scientific Corp.*, 882 F.3d 70 (4th Cir. 2018) (Finding sufficient "common questions of fact" to support joinder in a failure-to-warn case where plaintiffs suffered similar injuries from a medical device implanted by different doctors at

different times but "shared expert witnesses and relied on much of the same evidence from [corporate] documents."); *Egnayem v. Boston Scientific Corp.*, 873 F. 3d 1304, 1310-11 (11th Cir. 2017) (holding that the trial court did not abuse its discretion in consolidating four cases as any differences in plaintiffs' medical histories, treatments, dates of use, exposure lengths, and causation issues were insufficient to prevent consolidation because the plaintiffs all brought the same claims based largely on the same liability theory).

Joinder is proper even where exposure to a toxic product caused injury in different states where at essence:

> plaintiffs' complaint raises common questions of law or fact regarding injuries alleged from use of the same product and arising from the same design, testing, development, labeling, packaging, distribution, marketing, and sales practices for that product. Also, because plaintiffs' allegations relate to defendants' design, manufacture, testing, and promotion of Risperidone—occurrences common as to all plaintiffs—their claims also arise out of the same transaction or occurrence, or series thereof. That is so even if the end-of-the-line exposures occurred in different states and under the supervision of different medical professionals. Thus, joinder of all sixty-four plaintiffs' claims under Rule 20(a) is proper.

*Gracey v. Janssen Pharms., Inc.*, No. 4:15-CV-407 CEJ, 2015 WL 2066242, at *4 (E.D. Mo. May 4, 2015); *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 682 (Mo. Ct. App. 2020) (Joinder proper where "[p]laintiffs' claims against Defendants arose out of the same occurrence: each Plaintiff used Defendants' Products. Their Petition alleged they each developed ovarian cancer because of Defendants' wrongful conduct in manufacturing, marketing, testing, promoting, selling, and distributing the Products.").

Here, likewise all of the Plaintiffs allege that Defendants failed to warn of the risks of ovarian disease associated with the use of talcum powder. Defendants concealed and continue to conceal their knowledge of talcum powder's unreasonably dangerous risks from Plaintiffs to advance their financial gains.

As such, Plaintiffs used the same products and were diagnosed with the same medical condition of ovarian cancer. Plaintiffs' claims thus undoubtedly arise out of the same series of occurrences and share common questions of law and fact.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court GRANT Plaintiffs' Motion to Remand.

**Dated: December 11, 2023**

    Respectfully submitted,

    */s/ Tayjes M. Shah*
    Tayjes M. Shah  (01750)
    **THE MILLER FIRM, LLC**
    The Sherman Building
    108 Railroad Avenue
    Orange, Virginia 22960
    Ph: (540) 672-4224
    Fax: (540) 672-3055
    E-Mail: tshah@millerfirmllc.com

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed electronically on the court's ECF system and is available for viewing and downloading from the ECF system.  All counsel of record listed on the Court's CM/ECF system are to be served by the Court via Notice of Electronic Filing (NEF).

    By: *Tayjes M. Shah*

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND