Exhibit A

**THE MILLER FIRM, LLC**
Tayjes M. Shah (Identification No.: 307899)
The Sherman Building
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672–4224
Fax: (540) 672–3055
E–Mail: tshah@millerfirmllc.com

**ATTORNEYS FOR PLAINTIFF**



*Filed and Attested by the*
*Office of Judicial Records*
*06 SEP 2023 12:25 pm*
*C. SMITH*

**COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**

**NATALIE AUSTIN, NEXT OF KIN TO
NORMA D. WOODS WHITE, DECEASED,**

**EMANUEL AVERY, NEXT OF KIN TO
SONIQIA BROWN, DECEASED,**

**BARRY BARTON, NEXT OF KIN
TO TWILLA BARTON, DECEASED,**

**VICKIE A. BOSTON,**

**RODNEY BOYD, NEXT OF KIN TO ANN
M. BOYD, DECEASED,**

**NANCY CALVILLO,**

**BRENDA CAMPBELL,**

**ELIZABETH CHAPMAN,**

**SHAILEE COUCH,**

**CONSTANCE M. DEGNITZ, NEXT OF KIN
TO KARLA GROLEAU, DECEASED,**

**BRENDA DEMBY,**

**SHARON DOSS,**

**HOLLY DUDLEY,**

**MATTHEW ERMIS, NEXT OF KIN TO
CHARLISA GRACE, DECEASED,**

**ROSE FLEMING,**

1

Case ID: 230900471

**PAUL GAGNE, NEXT OF KIN TO
FLEURETTE WITALISZ, DECEASED,**

**TAMARA GETTIG, NEXT OF KIN TO
FAY GETTIG, DECEASED,**

**LORETTA GRAHAME,**

**JUDY GRATES,**

**DEBRA HARPER,**

**GREGORY HAYES, NEXT OF KIN TO
JEANEE HAYES, DECEASED,**

**GOLDIE HENSON-HULL,**

**ERIC HOLMES, NEXT OF KIN TO
BRENDA THOMPSON, DECEASED,**

**TRISH A. JACKMAN,**

**DEREK KNOX, NEXT OF KIN
TO EVELYN M. HOLLEY, DECEASED,**

**CONSETTA LICAUSI, NEXT OF KIN TO
KAREN B. BRACKENBURY, DECEASED,**

**EMIL LONG, NEXT OF KIN TO PATTI LONG,
DECEASED,**

**ANDREA MARSHALL, NEXT OF KIN
TO ELMA CROOKS, DECEASED,**

**DIANE MARTINEZ,**

**RHONDA MATTHEWS,**

**JOAN MCDEVITT,**

**SHARON M. MONETTE,**

**JESSIKA A. OFFICER,**

**BARBARA OLSON,**

Case ID: 230900471

**NICOLE PACE,**

**JOEL PREME, NEXT OF KIN TO
MARIE T. PREME, DECEASED,**

**RETTA L. PRINGLE,**

**ROBERT PULLEN, NEXT OF KIN
TO ZULA MORRISON, DECEASED,**

**JOSEPH REPICH, NEXT OF KIN TO
RITA REPICH, DECEASED,**

**ALICE RICE,**

**ALBERTO RIVERA, NEXT OF KIN TO
WILHELMINA HINDS, DECEASED,**

**MELYSSA SAWYER, NEXT OF KIN
TO DARLENE KOSKO, DECEASED,**

**RUBY J. SCARBROUGH,**

**MICHAEL SHERIFF, NEXT OF KIN TO
PEGGY D. SHERIFF, DECEASED,**

**TERRY SKULSKI AND GEORGE SKULSKI,**

**CHARLES SMITH, NEXT OF KIN TO
CARMEN SMITH, DECEASED,**

**CAROLE B. STANLEY AND WILFORD
STANLEY,**

**KIM STUDWELL,**

**REBECCA WADE, NEXT OF KIN TO
JANICE J. KECK, DECEASED,**

**SIDNEY WATTS, NEXT OF KIN TO
BETTY JEAN WATTS, DECEASED,**

**KIA WILLIAMS, NEXT OF KIN TO
EVELYN ASHE, DECEASED,**

Case ID: 230900471

**ANGELA WILSON,**

**ALAN FITZPATRICK, NEXT OF KIN
TO NANCY M. FITZPATRICK, DECEASED.**

       **Plaintiffs,**

**v.**                                  **Case No.**

                                         **DEMAND FOR A JURY TRIAL**

**JOHNSON & JOHNSON**

**JOHNSON & JOHNSON CONSUMER INC.
F/K/A JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.**

**JOHNSON & JOHNSON HOLDCO (NA) INC.,
f/k/a Johnson & Johnson Consumer Inc.,**

**KENVUE INC.,**

**JANSSEN PHARMACEUTICALS, INC.,**

**LTL Management, LLC,**

       **Defendants.**

## <u>COMPLAINT</u>

## <u>NOTICE TO PLEAD</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in

4

Case ID: 230900471

the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**Pennsylvania Lawyer Referral Service: (717) 238 6807**

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by undersigned counsel, hereby submit this Complaint against the above-captioned Defendants for equitable relief, monetary restitution, and/or compensatory and punitive damages. Plaintiffs make the following allegations based upon personal knowledge, and upon information and belief, as well as her attorneys' investigative efforts, regarding talcum powder and its connection to Ovarian Cancer.

## STATEMENT OF THE CASE

1.      This is a products liability action against the above-named Defendants (hereinafter, collectively referred to as "Defendants") because plaintiffs, suffered from the severe effects of Ovarian Cancer caused by Johnson & Johnson's baby powder and Shower-to-Shower products which were manufactured, mined, distributed, and/or marketed by Defendants (hereinafter, the "PRODUCTS"). Defendants' PRODUCTS each contain known carcinogens, such as, talc and elements that naturally occur with talc: asbestos, asbestiform fibers, arsenic, heavy metals, and

Case ID: 230900471

other elements. Plaintiffs herein used or was exposed for decades to the PRODUCTS containing dangerous talc, asbestos fibers, asbestiform fibers, and heavy metals, and developed devastating ovarian cancer.

2.      Plaintiffs, through this action, seeks recovery for damages as a result of developing ovarian cancer, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of the PRODUCTS and talcum powder, and the attendant effects of developing ovarian cancer.

3.      At all pertinent times, all Defendants were engaged in the research, development, manufacture, design, testing, packaging, distribution, sale, advertising, promotion, and marketing of Johnson & Johnson Baby Powder and Shower to Shower, and introduced the PRODUCTS into interstate commerce with knowledge and intent that they be sold in the Commonwealth of Pennsylvania, including Philadelphia County, where the PRODUCTS  were indeed sold (subjecting Defendants to the specific personal jurisdiction of Pennsylvania's Courts of Common Pleas).

4.      Defendants concealed and continue to conceal their knowledge of the PRODUCTS' unreasonably dangerous risks from consumers and the medical community.   Specifically, Defendants failed to adequately inform plaintiffs, consumers, and the medical community about the known risks of Ovarian Cancer associated with perineal use of the PRODUCTS.

## PARTIES,  JURISDICTION, AND VENUE

5.      Natalie Austin lives in Bradfordwoods, Pennsylvania.

6.      Natalie Austin is the daughter of Norma D. Woods White that passed away from cancer on May 7, 2012. Ms. Woods White used Defendants PRODUCTS from 1950 – 2012. She was diagnosied with ovarian cancer in 2010.

Case ID: 230900471

7.      Emanuel Avery lives in Mt. Clemens, MI.

8.      Emanuel Avery is the son of Soniqia Brown that passed away from cancer on January 31, 2009. Ms. Brown used Defendants PRODUCTS from 2000 – 2009 and was diagnosed with cancer in 2008.

9.      Barry Barton lives in Kissee Mills, MO.

10.     Mr. Barton was the husband to Twilla Barton that passed away from cancer on November 23, 2005. Ms. Barton used Defendants PRODUCTS from 1952 – 2005 and was diagnosed with cancer in 2003.

11.     Vicki A. Boston lives in Loretto, TN, and used Defendants PRODUCTS from 1986 – 2014 and was diagnosed with cancer in 2015.

12.     Rodney Boyd lives in Fife Lake, MI.

13.     Mr. Boyd was the husband to Mrs. Boyd that passed away from cancer on May 30, 2018. Mrs. Boyd used Defendants PRODUCTS from 1976 – 2018 and was diagnosed with cancer in 2018.

14.     Nancy Calvillo lives in Albuquerque, NM.

15.     Ms. Calvillo used Defendants PRODUCTS from 1957 – 2020 and was diagnosed with cancer in 1997.

16.     Brenda Campbell lives in Flint, MI.

17.     Ms. Campbell used Defendants PRODUCTS from 1953 – 2008 and was diagnosed with cancer in 2008.

18.     Elizabeth Chapman lives in Peyton, CO.

19.     Ms. Chapman used Defendants PRODUCTS from 1963 – 1970 and was diagnosed with cancer in 2005.

Case ID: 230900471

20.     Shailee Couch lives in Ewa Beach, HI.

21.     Ms. Couch used Defendants PRODUCTS from 1988 – 2020 and was diagnosed with cancer in 2021.

22.     Constance M. Degnitz lives in Porterfield, WI.

23.     Ms. Degnitz is the mother of Ms. Groleau that passed away from cancer on December 29. 2002. Ms. Groleau used Defendants PRODUCTS from 1982 – 2002 and was diagnosed with cancer in 2002.

24.     Brenda Demby lives at Chesnee, SC.

25.     Ms. Demby used Defendants PRODUCTS from 1992 – 2000 and was diagnosed with cancer in 2000.

26.     Sharon Doss lives at Parsons, TN.

27.     Ms. Doss used Defendants PRODUCTS from 1966 – 1996 and was diagnosed with cancer in 1998.

28.     Holly Dudley lives in Apopka, FL.

29.     Ms. Dudley used Defendants PRODUCTS from 1977 – 2007 and was diagnosed with cancer in 1999.

30.     Matthew Ermis lives in Federal Way, WA.

31.     Mr. Ermis is the son of Charlisa Grace that passed away on February 3, 2018 after she was diagnosed with cancer in 1996. Ms. Grace used Defendants PRODUCTS from 1960 – 2017.

32.     Alan Fitzpatrick lives at Fair Lawn, NJ.

Case ID: 230900471

33.     Mr. Fitzpatrick was the spouse of Nancy Fitzpatrick that passed away on October 27, 2021 after she was diagnosed with cancer in 2017. Ms. Fitzpatrick used Defendants PRODUCTS from 1970 – 2019.

34.     Paul Gagne lives at Haverhill, MA.

35.     Paul Gagne is the son of Fleurette Witalisz whom passed away on December 23, 2016 after she was diagnosed with cancer in 2016. Ms. Witalisz used Defendants PRODUCTS from 1960 – 2016.

36.     Rose Fleming lives at Arlington, SC.

37.     Ms. Fleming used Defendants PRODUCTS from 1990 – 2016 and was diagnosed with cancer in 2005.

38.     Tamara Gettig lives at Kalispell, MT.

39.     Ms. Gettig is the daughter of Fay Gettig whom passed away in 2019 after she was diagnosed with cancer in 2019. Ms. Gettig used Defendants PRODUCTS from 1953 – 2019.

40.     Loretta Grahame lives in Roanoke, VA.

41.     Ms. Grahame used Defendants PRODUCTS from 1990 – 2020 and was diagnosed with cancer in 2021.

42.     Judy Grates lives in Sallisaw, OK.

43.     Ms. Grates used Defendants PRODUCTS from 1968 – 2020 and was diagnosed with cancer in 2021.

44.     Debra Harper lives in Lakewood, IL.

45.     Ms. Harper used Defendants PRODUCTS from 1980 – 2006 and was diagnosed with cancer in 2006.

46.     Gregory Hayes lives in Pikeville, KY.

Case ID: 230900471

47.     Gregory Hayes was the spouse of Jeanne Hayes whom passed away on February 19. 2012, after she was diagnosed with cancer in 2007. Mrs. Hayes used Defendants PRODUCTS from 1988 – 2012.

48.     Goldie Henson-Hull lives in Odin, IL.

49.     Ms. Henson-Hull used Defendants PRODUCTS from 1970 – 2000 and was diagnosed with cancer in 1998.

50.     Eric Holmes lives in Kansas City, MO.

51.     Eric Holmes is the son of Brenda Thompson whom passed away on October 23, 2010, after she was diagnosed with cancer in 2010. Mrs. Thompson used Defendants PRODUCTS from 1970 – 2010.

52.     Trish A. Jackman lives in Helena, MT.

53.     Ms. Jackman used Defendants PRODUCTS from 1990 – 2010 and was diagnosed with cancer in 2010.

54.     Derek Knox lives in Durham, NC.

55.     Derek Knox is the son of Evelyn M. Holley whom passed away on April 21, 2021, after she was diagnosed with cancer in 2020. Mrs. Holley used Defendants PRODUCTS from 1990 – 2020.

56.     Consetta Licausi lives in Naples, FL.

57.     Consetta Licausi is the spouse of Karen Brackenbury whom passed away on December 5, 2011, after she was diagnosed with cancer in 2005. Mrs. Brackenbury used Defendants PRODUCTS from 1965 – 2011.

58.     Emil Long lives in Cape Coral, FL.

Case ID: 230900471

59.     Emil Long is the spouse of Patti Long whom passed away on November 16, 2015, after she was diagnosed with cancer in 2012. Mrs. Long used Defendants PRODUCTS from 1960 – 2012.

60.     Andrea Marshall lives in Tuscaloosa, AL.

61.     Andrea Marshall is the daughter of Elma Crooks whom passed away on June 25, 2020, after she was diagnosed with cancer in 2019. Mrs. Crooks used Defendants PRODUCTS from 1949 – 2019.

62.     Diane Martinez lives in Melrose, NM.

63.     Ms. Martinez used Defendants PRODUCTS from 1989 – 2004 and was diagnosed with cancer in 2004.

64.     Rhonda Matthews lives in Biloxi, MS.

65.     Ms. Matthews used Defendants PRODUCTS from 1965 – 2006 and was diagnosed with cancer in 2001.

66.     Joann McDevitt lives in Shreveport, LA.

67.     Ms. McDevitt used Defendants PRODUCTS from 1980 – 2020 and was diagnosed with cancer in 2020.

68.     Sharon Monette lives in Farmersville Station, NY.

69.     Ms. Monette used Defendants PRODUCTS from 1978 – 2018 and was diagnosed with cancer in 2020.

70.     Jessika A. Officer lives in McComb, MS.

71.     Ms. Officer used Defendants PRODUCTS from 1996 – 2020 and was diagnosed with cancer in 2020.

72.     Barbara Olson lives in Columbus, NE.

Case ID: 230900471

73.     Ms. Olson used Defendants PRODUCTS from 1960 – 2005 and was diagnosed with cancer in 2005.

74.     Nicole Pace lives in Starkville, MS.

75.     Ms. Pace used Defendants PRODUCTS from 1983 – 2019 and was diagnosed with cancer in 2019.

76.     Joel Preme lives in Brooklyn, NY.

77.     Joel Preme is the son of Marie T. Preme whom passed away on March 3, 2014, after she was diagnosed with cancer in 2011. Mrs. Preme used Defendants PRODUCTS from 1976 – 2014.

78.     Retta L. Pringle lives in Okeechobee, FL.

79.     Ms. Pringle used Defendants PRODUCTS from 1960 – 2021 and was diagnosed with cancer in 2007.

80.     Robert Pullen lives in Waldorf, MD.

81.     Robert Pullen is the son of Zula M. Morrison whom passed away on March 6, 2011, after she was diagnosed with cancer in 2009. Mrs. Morrison used Defendants PRODUCTS from 1983 – 2006.

82.     Joseph Repich lives in Berlin Center, OH.

83.     Mr. Repich is the son of Rita Repich whom passed away on August 6, 2014, after she was diagnosed with cancer in 2014. Mrs. Repich used Defendants PRODUCTS from 1980 – 2014.

84.     Alice Rice lives in Lyman, SC.

85.     Ms. Rice used Defendants PRODUCTS from 1990 – 2005 and was diagnosed with cancer in 2005.

Case ID: 230900471

86.     Alberto Rivera lives in Poinciana, FL.

87.     Mr. Rivera is the son of Wilhelmina Hinds whom passed away on November 20, 2020, after she was diagnosed with cancer in 2019. Mrs. Hinds used Defendants PRODUCTS from 1986 – 2020.

88.     Melyssa Sawyer lives in Fayetteville, TN.

89.     Ms. Sawyer is the daughter of Darlene Kosko whom passed away on July 15, 2021, after she was diagnosed with cancer in 2017. Mrs. Kosko used Defendants PRODUCTS from 1951 – 2016.

90.     Ruby Scarbrough lives in Strawberry Plains, TN.

91.     Ms. Scarbrough used Defendants PRODUCTS from 1949 – 2017 and was diagnosed with cancer in 2017.

92.     Michael Sheriff lives in Greenville, SC.

93.     Mr. Sheriff is the spouse of Peggy D. Sheriff whom passed away on March 7, 2016, after she was diagnosed with cancer in 2012. Mrs. Sheriff used Defendants PRODUCTS from 2000 – 2016.

94.     Terry Skulski and George Skulski live in Columbus, OH.

95.     George Skulski is the spouse of Terry Skulski for all relevant times.

96.     Ms. Skulski used Defendants PRODUCTS from 1970 – 2011 and was diagnosed with cancer in 2011.

97.     Charles Smith lives in Middle Village, NY.

98.     Mr. Smith is the spouse of Carmen Smith whom passed away in February 2012, after she was diagnosed with cancer in 2003. Mrs. Smith used Defendants PRODUCTS from 1973 – 2012.

Case ID: 230900471

99.     Carole B. Stanley and Wilford Stanley live in Hattiesburg, MS.

100.     Wilford Stanly is the spouse of Carole Stanley for all relevant times.

101.     Ms. Stanley used Defendants PRODUCTS from 1946 – 2015 and was diagnosed with cancer in 1997.

102.     Kim Studwell lives in Hopkins, SC.

103.     Ms. Studwell used Defendants PRODUCTS from 1993 – 2013 and was diagnosed with cancer in 2021.

104.     Rebecca Wade lives in Sandusky, OH.

105.     Ms. Wade is the daughter of Janice J. Keck whom passed away on December 3, 2020, after she was diagnosed with cancer in 2018. Mrs. Keck used Defendants PRODUCTS from 1960 – 2018.

106.     Sidney Watts lives in Medina, NY.

107.     Mr. Watts is the spouse of Betty J. Watts whom passed away on March 27, 2014, after she was diagnosed with cancer in 2004. Mrs. Watts used Defendants PRODUCTS from 1980 – 2013.

108.     Kia Williams lives in Colorado Springs, CO.

109.     Ms. Williams is the daughter of Evelyn Ashe whom passed away on March 24, 2017, after she was diagnosed with cancer in 2009. Mrs. Ashe used Defendants PRODUCTS from 1980 – 2013.

110.     Angela Wilson lives in Trenton, SC.

111.     Ms. Wilson used Defendants PRODUCTS from 1985 – 2018 and was diagnosed with cancer in 2018.

Case ID: 230900471

112.    All fo the above Plaintiffs regularly used Defendants' PRODUCTS in their perineal region every day and suffered from severe physical, economic, and emotional injuries as a result of her use of Defendants' PRODUCTS, including but not limited to Ovarian Cancer diagnosed in September 2020.

113.    Defendant, Johnson & Johnson, is a New Jersey corporation with its principal place of business in the State of New Jersey.

114.    At all relevant times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all relevant times, Johnson & Johnson regularly transacted, solicited, and conducted business in the Commonwealth of Pennsylvania.

115.    Defendant Johnson & Johnson Consumer, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.

116.    At all relevant times, defendant Johnson & Johnson Consumer, Inc.was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all relevant times, Johnson & Johnson Consumer, Inc. regularly transacted, solicited, and conducted business in the Commonwealth of Pennsylvania.

117.    Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc. are collectively referred to herein as the ("Johnson & Johnson Defendants" or "J&J").

118.    At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising Johnson & Johnson's baby powder and Shower-to-Shower products.

Case ID: 230900471

119.    At all times relevant hereto, Defendants had offices in Pennsylvania and/or regularly solicited and transacted business[1] in the Commonwealth of Pennsylvania and Philadelphia County.  In addition, the Defendants reasonably expected that their PRODUCTS would be used or consumed in Pennsylvania and Philadelphia County.

120.    This is an action for damages which exceeds fifty thousand dollars ($50,000).

121.    Plaintiffs have timely filed this lawsuit within two years of discovering their cause of action as defined and require by Pennsylvania 42 Pa. Cons. State. § 5524(2).

122.    Venue of this case is proper in Philadelphia County because Defendants regularly conduct business in Philadelphia County.

123.    At all times relevant hereto, Defendants had offices in Pennsylvania and/or regularly solicited and transacted business in the Commonwealth of Pennsylvania and Philadelphia County. In addition, the Defendants reasonably expected that their Products would be used or consumed in Pennsylvania and Philadelphia County.

124.    All of the Defendants regularly conduct substantial business in Philadelphia.

125.    This is a complex product liability tort case.  This Court is renowned for its ability and resources to handle complex tort litigation dockets in an organized and efficient fashion.  No other county in Pennsylvania is better suited to handle such claims.

126.    Pursuant to Pa. R.C.P. 1006(c) in actions alleging joint and several liability against two or more defendants, venue is proper if it is proper as to any of the defendants.  In this case,

---

[1] Pursuant to 42 Pa. Const. Stat § 5322, Defendants have transacted business in Pennsylvania and Philadelphia County by directly, or indirectly through an agent, doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, doing a single act for the purpose of thereby realizing pecuniary benefit, shipping merchandise directly or indirectly into Pennsylvania and Philadelphia County, accepting election or appointment or exercise of powers as a director or officer of a corporation, making application to any government unit for any certificate, license, permit, registration or similar instrument or authorization or exercising any such instrumentation or authorization, committing any violation  within the jurisdiction of Pennsylvania of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or any order of court of other government unit.

Case ID: 230900471

Plaintiff alleges joint and several liability on more than two defendants. Philadelphia County is the proper venue for a number of these defendants. Therefore, venue is proper on all defendants.

127. General and/or specific personal jurisdiction is proper as to Defendants for the reasons stated below.

128. Jurisdiction is proper as to the Johnson & Johnson Defendants because: 1) Johnson & Johnson regularly employs hundreds of employees in Pennsylvania and maintains significant contacts with Pennsylvania (*see, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874 (Cal. 2016); 2) Johnson & Johnson Consumer Inc. consented to jurisdiction in Pennsylvania by registering to do business in Pennsylvania. *See, e.g.*, *Bors v. Johnson & Johnson*, No. CV 16-2866, 2016 WL 517286 at *1 (E.D. Pa. Sept. 20, 2016); 3) Johnson & Johnson maintains regular and significant contacts in Pennsylvania, including but not limited to the sale of its dangerous talc PRODUCTS to consumers in Pennsylvania; 4) Johnson & Johnson Defendants' acts or omissions outside of Pennsylvania caused harm, and tortious injury to Plaintiffs in Pennsylvania; and; 5) Johnson & Johnson Defendants caused the PRODUCTS to travel through Pennsylvania.

## **BACKGROUND**

129. Talc is a magnesium trisilicate that is mined from the earth. Talc is an inorganic mineral. The Defendant, Imerys Talc mined the talc contained in the PRODUCTS.

130. Talc is the main substance in talcum powders. The Defendants manufactured the PRODUCTS. The PRODUCTS are composed almost entirely of talc.

131. At all relevant times, a feasible alternative to the PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness as the PRODUCTS.

Case ID: 230900471

132.   At all relevant times, Imerys Talc mined the talc contained in the PRODUCTS.

133.   At all relevant times, Imerys Talc supplied its customers, including the Johnson & Johnson Defendants, with Material Safety Data Sheets ("MSDS") for talc, which were supposed to convey adequate health and warning information to its customers.

134.   Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity.  During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as a symbol of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" to keep skin feeling dry and comfortable, and "clinically proven gentle and mild."  The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors.  The bottle of "Johnson's Baby Powder" specifically targets women, stating: "For you, use every day to help feel soft, fresh, and comfortable."[2]

135.   At all relevant times, the Johnson & Johnson Defendants advertised and marketed their "Shower to Shower" product as safe for use by women as evidenced in its slogan, "A sprinkle a day keeps odor away," and through advertisements such as: "Your body perspires in more places than just under your arms.  Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."

136.   Plaintiffs used the PRODUCTS to dust their perineum for feminine hygiene purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

137.   In 1971, the first study was conducted that suggested an association between talc and ovarian cancer.  This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

---

[2] Retailer Wal-Mart lists the labels for Johnson's Baby Powder, http://www.walmart.com/ip/Johnson-s-Baby-Powder-22-oz/10294007.

Case ID: 230900471

138.    In 1982, the first epidemiologic study was performed on talc powder use in the female genital area.  That study was conducted by Dr. Daniel Cramer and others.  This study found a ninety-two percent increased risk of ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study.  Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

139.    Since approximately 1982, there have been approximately twenty-two additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk of ovarian cancer associated with genital talc use in women.

140.    In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestos form talc and found clear evidence of carcinogenic activity.  Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.[3]

141.    In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA), now known as the PCPC, formed the Talc Interested Party Task Force (TIPTF).  Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc., and Luzenac—now known as Imerys Talc—were members of the CTFA. J&J and Imerys were the primary actors and contributors of the TIPTF. The stated purpose of TIPTF was to pool financial resources of these companies in order to collectively defend talc use at all

---

[3] Inhalation Toxicology Research Institute Annual Report, 1993 – 1994,
https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=5&ved=0CEEQFjAE&url=http%3A%2F%2Fwww.dtic.mil%2Fget-tr-doc%2Fpdf%3FAD%3DADA292037&ei=XX4IVMfxPIblsASfyIKwCA&usg=AFQjCNGnPtuTJc4YRHp3v0VFPJlOV2yH2w&sig2=WTznSlZK9GojkDadkub0Sw&bvm=bv.74649129,d.cWc&cad=rja

Case ID: 230900471

costs and to prevent regulation of any type over this industry. TIPTF hired scientists to perform biased research regarding the safety of talc. TIPTF members, including Johnson & Johnson, and Luzenac, then had these scientific reports edited prior to the submissions of these scientific reports to governmental agencies. In addition, J&J and Imerys Talc, members of TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies regarding talc. These activities were conducted by these companies and organizations over the past four decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc and its association to ovarian cancer.

142.    At all times relevant, PCPC coordinated the defense of talc and acted as a mouthpiece for the members of the TIPTF, including the Johnson & Johnson Defendants and IMERYS. Upon information and belief, PCPC was funded by the annual dues of its members including the Johnson & Johnson Defendants and Imery Talc.

143.    Since approximately 1973, the Cosmetic Ingredient Review ("CIR") has reviewed the safety of ingredients used in the cosmetic and personal care products industry. Although Defendants have, at all relevant times, promoted CIR as an independent, regulatory body, CIR is an organization within and wholly funded by PCPC. In fact, CIR shares the same office space with PCPC and its employees are paid by PCPC.

144.    Over the years, CIR has reviewed thousands of ingredients used in the cosmetics industry, but has only found 12 ingredients to be "unsafe for use in cosmetics." In contrast, CIR has deemed approximately 1800 ingredients to be "safe as used."

145.    Even though PCPC knew of the safety concerns surrounding talc for almost three decades, the CIR did not begin to review talc until after the first lawsuit alleging a link between

Case ID: 230900471

talc use and ovarian cancer was filed. Upon information and belief, during the CIR review process, Defendants influenced the scientists working on the review and ultimately edited the reviews in a biased manner. Not surprisingly, when CIR published its final report in 2015, it found talc to be safe as used in cosmetics.

146.    On November 19, 1994, the Cancer Prevention Coalition sent a letter to then Johnson & Johnson C.E.O. Ralph Larsen, urging him to substitute cornstarch for talcum powder products and to label its products with a warning on cancer risks.[4]

147.    In 1996, the FDA requested that the condom industry stop dusting condoms with talc due to the health concerns that studies linked talc to ovarian cancer.  Upon this request, all U.S. manufacturers discontinued the use of talc in its condom manufacturing process to reduce the potential health hazards to women.[5]

148.    In 1990, the U.S. Food and Drug Administration (FDA) asked manufacturers to voluntarily stop putting talc on surgical gloves because mounting scientific evidence showed that it caused adhesions in surgical patients.[6]

149.    In February 2006, the International Agency for Research on Cancer (IARC), the specialized cancer agency of the World Health Organization, published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen.[7]  IARC, which is universally accepted as the international authority on cancer issues, concluded that studies

---

[4] Petition Seeking a Cancer Warning on Cosmetic Talc PRODUCTS, May 13, 2008 http://www.preventcancer.com/publications/pdf/FINAL_CitPetTalcOvCa_may138.pdf.

[5] "A Women's Campaign Against Talc on Condoms," *Philly*.com, http://articles.philly.com/1996-01-08/living/25652370_1_talc-condoms-ovarian-cancer.
[6] *Id.*

[7] IARC, "Perineal use of talc-based body powder (Group 2B)," *available at* http://monographs.iarc.fr/ENG/Monographs/PDFs/93-talc.pdf.

Case ID: 230900471

from around the world consistently found an increased risk of ovarian cancer in women who used talc in perineal areas.  IARC determined that between 16-52% of women worldwide used talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%.

150.    In 2006, the Canadian government, under The Hazardous PRODUCTS Act and associated Controlled PRODUCTS Regulations, classified talc as a "D2A," "very toxic," "cancer-causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A."

151.    In 2006, Imerys Talc began placing a warning on the MSDS it provided to the Johnson & Johnson Defendants regarding the talc it sold to them for use in the PRODUCTS.  The MSDSs not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's D2A classification of talc.  Although the Johnson & Johnson Defendants admittedly received these MSDs, they never passed this warning information on to consumers.

152.    On September 26, 2012, the corporate representative for Imerys testified in open court that his company exclusively supplied the Johnson & Johnson Defendants with talc used for its baby powder products and that ovarian cancer is a potential hazard associated with women's perineal use of talc-based body powders, such as the PRODUCTS.  Despite this, the Johnson & Johnson defendants, continue to mislead consumers, maintaining that talc is safe for personal use[8].

---

[8] *See, e.g.*, http://www.safetyandcarecommitment.com/ingredient-info/other/talc ("talc can be used safely in personal care products"; We want to assure women and caregivers who use our talc products that numerous studies support its safety, and these include assessments by external experts in addition to our company testing. Many research papers and epidemiology studies have specifically evaluated talc and perineal use and these studies have found talc to be safe")

Case ID: 230900471

153.    In 2008, the Cancer Prevention Coalition submitted a "Petition Seeking a Cancer Warning on Cosmetic Talc PRODUCTS" to the FDA.   The petition requested that the FDA immediately require cosmetic talcum powder products to bear labels with a prominent warning that frequent talc application in the female genital area is responsible for major risks of ovarian cancer.[9]

154.    In 2013, Cancer Prevention Research published a study that showed that women who used talcum powder in their groin area had a 20 to 30 percent greater risk of developing ovarian cancer than women who did not use talc products in that area.[10]

155.    Presently, the National Cancer Institute[11] and the American Cancer Society[12] list genital talc use as a "risk factor" for ovarian cancer.

156.    The Gilda Radner Familial Ovarian Cancer Registry, Roswell Park Center Institute, and the Department of Gynecologic Oncology University of Vermont publish a pamphlet entitled, "Myths & Facts about ovarian cancer: What you need to know." In this pamphlet, under "known" risk factors for ovarian cancer, it lists: "Use of Talc (Baby Powder) in the Genital Area."[13]

---

[9] Cancer Prevention Coalition "Petition Seeking a Cancer Warning on Cosmetic Talc PRODUCTS" submitted to the FDA on May 13, 2008, http://www.organicconsumers.org/articles/article_12517.cfm

[10] "Genital powder use and risk of ovarian cancer: a pooled analysis of 8,525 cases and 9,859 controls," *Cancer Prevention Research*, June 2013, http://cancerpreventionresearch.aacrjournals.org/content/early/2013/06/12/1940-6207.CAPR-13-0037.short.

[11] National Cancer Institute, Ovarian Cancer Prevention, http://www.cancer.gov/cancertopics/pdq/prevention/ovarian/Patient/page3

[12] American Cancer Society, Risk Factors for Ovarian Cancer, http://www.cancer.org/cancer/ovariancancer/detailedguide/ovarian-cancer-risk-factors

[13] Myths and Facts About Ovarian Cancer, http://imaging.ubmmedica.com/cancernetwork/forpatients/pdfs/7_M&F%20Ovarian%20Cancer.pdf.

Case ID: 230900471

157.    On December 5, 2018,  Health Canada released a "Dear Healthcare Professional Letter" stating that "exposure to the perineal area from the use of certain products containing talc is a possible cause of ovarian cancer."[14]

158.    In May of 2020, after losing Daubert in the Talc MDL, Johnson & Johnson announced that it would stop selling talcum-based baby powder in the United States and Canada.

159.    Upon information and belief, in or about 2021, the Canadian government, under The Canadian Environmental Protection Act, 1999 determined that peritoneal talc exposure is indicative of a causal relationship with ovarian cancer.

160.    At all pertinent times, all Defendants in this action knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s. At all pertinent times, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of ovarian cancer associated with their use by women to powder their perineal area.

161.    All of the Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the use of its PRODUCTS.

162.    All of the Defendants procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding talc.

---

[14] Government of Canada
http://healthycanadians.gc.ca/recall-alert-rappel-avis/hc-sc/2018/68320a-eng.php

Case ID: 230900471

163.     As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Plaintiffs were injured and suffered damages  which required surgeries and treatments.

## JOINT AND SEVERAL LIABILITY

164.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

165.     Defendants each individually, *in solido*, and/or jointly engaged in the following wrongful conduct, directly and proximately causing Plaintiffs' injuries as alleged herein.

## COUNT I – STRICT LIABILITY FAILURE TO ADEQUATELY WARN

166.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

167.     At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing, and otherwise introducing into the stream of interstate commerce, including Philadelphia and Pennsylvania, the PRODUCTS.

168.     At all relevant times, the Johnson & Johnson Defendants knew or should have known that the use of the PRODUCTS in the female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971, and had a duty to warn Plaintiffs of the known or knowable risks of ovarian cancer posed by the PRODUCTS.

169.     At all relevant times, the PRODUCTS, manufactured and supplied by the Johnson & Johnson Defendants, were defective and unreasonably dangerous because, despite the Johnson & Johnson Defendants' knowledge that its PRODUCTS were carcinogenic and could lead to an

Case ID: 230900471

increased risk of ovarian cancer when applied to the female perineal area, a reasonably foreseeable use of the PRODUCTS, the Johnson & Johnson Defendants failed to provide adequate warning or instruction to consumers, including consumers such as Plaintiffs regarding the increased risk of ovarian cancer when the PRODUCTS are applied to the female perineal area.

170.    At all relevant times, Plaintiffs used the PRODUCTS to powder their perineal area, a use that was reasonably foreseeable and for which the PRODUCTS were supplied.

171.    Had Plaintiffs received warning and/or instruction from the Johnson & Johnson Defendants regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiffs would not have used the PRODUCTS in this manner.

172.    Due to the absence of any warning or instruction by the Johnson & Johnson Defendants as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiff was unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

173.    Plaintiffs relied upon the skill, superior knowledge and judgement of Defendants.

174.    As a direct and proximate result of Johnson & Johnson Defendants' failure to warn consumers, including Plaintiffs, of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact, Ms. Plaintiffs developed ovarian cancer and was injured catastrophically and was caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages due to ovarian cancer.

175.    Defendants, as manufacturers, distributors, sellers, and/or advertisers of the PRODUCTS, are held to the level of knowledge of experts in the field.

Case ID: 230900471

176.     Given the above, and given the Johnson & Johnson Defendants' significant contacts with Pennsylvania, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be haled to court in Pennsylvania.

177.     WHEREFORE, Plaintiffs demand judgment against the Johnson & Johnson Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT II – STRICT LIABILITY MANUFACTURING DEFECT AND DESIGN DEFECT

178.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

179.     At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the PRODUCTS into the stream of interstate commerce, including Pennsylvania, which they sold and distributed throughout the United States and in Philadelphia and Pennsylvania.

180.     At all relevant times, the PRODUCTS were expected to and did reach Plaintiffs without a substantial change in condition.

181.     At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by the Johnson & Johnson Defendants in that, when the PRODUCTS left the hands of the Johnson & Johnson Defendants, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

Case ID: 230900471

182.     At all relevant times, the PRODUCTS were defectively manufactured and designed by the Johnson & Johnson Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

183.     At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

184.     At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Johnson & Johnson Defendants to manufacture a product with the same therapeutic purpose as the PRODUCTS.  Despite knowledge of this reasonable and safer alternative design, the Johnson & Johnson Defendants failed to alter the PRODUCTS' design and formulation.  The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

185.     At all relevant times, the PRODUCTS were insufficiently tested, i.e., they caused harmful side effects that outweighed any potential utility.

186.     J&J  knew or should have known that the ultimate users or consumers of the Products would not, and could not, inspect them or otherwise investigate so as to discover the latent defects described above.

187.      Plaintiffs relied upon the skill, superior knowledge and judgement of Defendants.

188.     J&J's actions described above were performed willfully, intentionally and with reckless disregard for the rights of  Plaintiffs and the public.

189.     As a direct and proximate result of the defective design and manufacture of the PRODUCTS,  Plaintiffs developed ovarian cancer and has been injured catastrophically and have

Case ID: 230900471

been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

190.     Given the above, and given the Johnson & Johnson Defendants' significant contacts with Pennsylvania, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be haled to court in Pennsylvania.

191.     WHEREFORE, Plaintiffs demand judgment against the Johnson & Johnson Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT III – NEGLIGENCE

192.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

193.     At all relevant times, the Johnson & Johnson Defendants breached their duty to Plaintiffs and were otherwise negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

    a.  In failing to warn Plaintiffs of the hazards associated with the use of the PRODUCTS;

    b.  In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

    c.  In failing to properly test the PRODUCTS to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

    d.  In failing to inform ultimate users, such as Plaintiffs, as to the safe and proper methods of handling and using the PRODUCTS;

    e.  In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

Case ID: 230900471

f.   In failing to instruct the ultimate users, such as Plaintiffs, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

g.   In failing to inform the public in general and Plaintiffs in particular of the known dangers of using the PRODUCTS for dusting the perineum;

h.   In failing to advise users how to prevent or reduce exposure that caused an increased risk for ovarian cancer;

i.   In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary;

j.   In failing to act like a reasonably prudent company under similar circumstances;

k.   In failing to use a safer alternative to talc in the PRODUCTS, such as cornstarch.

Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs.

194.   At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

195.   Plaintiffs relied upon the skill, superior knowledge and judgement of Defendants.

196.   As a direct and proximate result of the Johnson & Johnson Defendants' negligence, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused her to develop ovarian cancer. As a direct and proximate result,  Plaintiffs was caused to incur medical bills, lost wages, conscious pain, and suffering.

197.   Given the above, and given the Johnson & Johnson Defendants' significant contacts with Pennsylvania, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be haled to court in Pennsylvania.

198.   WHEREFORE, Plaintiffs demand judgment against the Johnson & Johnson Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of

Case ID: 230900471

this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT IV – BREACH OF EXPRESS WARRANTY

199.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

200.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

201.    At all relevant times, the Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in their perineal area. Although the label has changed over time, the message has been the same: that the product is safe for use on women as well as babies.  At least as of 2014, the baby powder label stated that "Johnson's® Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable.  Our incredibly soft, hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief."  The Johnson & Johnson Defendants instruct consumers on the product labeling to "Shake powder directly into your  hand, away from the face, before smoothing onto the skin."

202.    Through other marketing, including on their website for Johnson's® Baby Powder, Defendants similarly encouraged women to use the product daily. Defendants state that Johnson's® Baby Powder "keeps skin feeling soft, fresh and comfortable. It's a classic. Johnson's® Baby Powder helps eliminate friction while keeping skin cool and comfortable.  It's

Case ID: 230900471

made of millions of tiny slippery plates that glide over each other to help reduce the irritation caused by friction." Under a heading "How to Use," "For skin that feels soft, fresh and comfortable, apply Johnson's® Baby Powder close to the body, away from the face. Shake powder into your hand and smooth onto skin." Under a heading "When to Use", the Johnson & Johnson Defendants recommend that the consumer "Use anytime you want skin to feel soft, fresh and comfortable. For baby, use after every bath and diaper change." On their website for Johnson's® Baby Powder, Defendants also state the product is "Clinically proven to be safe, gentle and mild."

203.    In February or March, 2016, after a St. Louis Jury rendered a $72 million dollar verdict against Johnson & Johnson, including punitive damages, Johnson & Johnson published a web page directed at consumers misleadingly assuring them of the safety of talc titled "Our Safety & Care Commitment"[15] and touted the safety of talc, stating, *inter alia*:

    a.  "Decades of Safety: Our confidence in using talc reflects more than 30 years of research by independent scientists, review boards and global authorities, which have concluded that talc can be used safely in personal care products.  Various government agencies and other bodies also have examined talc to determine the potential for any safety risks, and none have concluded that there are safety risks.  In fact, no regulatory agency has ever required a change in labeling to reflect any safety risk from talc powder products."

    b.  "Our Position on Talc: At Johnson & Johnson Consumer Inc., our confidence in using talc is based on a long history of safe use and more than 30 years of research by independent researchers, scientific review boards and global regulatory authorities. Various agencies and governmental bodies have examined whether talc is a carcinogen, and none have concluded that it is. With over 100 years of use, few ingredients have the same demonstrated performance, mildness and safety profile as cosmetic talc."

    c.  "We want to assure women and caregivers who use our talc products that numerous studies support its safety, and these include assessments by external experts in addition to our company testing. Many research papers and epidemiology studies have specifically evaluated talc and perineal use and these studies have found talc to be safe"

---

[15] *See*, http://www.safetyandcarecommitment.com/ingredient-info/other/talc

Case ID: 230900471

204.     Even more recently, in May 2020, Johnson & Johnson published a statement, after lossing Daubert Motions in the Talcum Powder MDL that it was removing talc based powders from North America. Misleadingly, Johnson & Johnson claimed that its decision was based, in part, on "misinformation around the safety of the product."[16]

205.     At all relevant times, even up until present day, the Johnson & Johnson Defendant's representations relating to talc is that the PRODUCTS are safe for personal use, including in the perineal region.

206.     At all relevant times, the PRODUCTS did not conform to these express representations because they cause serious injury, including ovarian cancer, when used by women in the perineal area.

207.     As a direct and proximate result of the Johnson & Johnson Defendants' breach of warranty,  Plaintiffs purchased and used the PRODUCTS that directly and proximately caused her to develop ovarian cancer.  Plaintiffs was caused to incur medical bills, lost wages, and conscious pain, and suffering.

208.     Given the above, and given the Johnson & Johnson Defendants' extensive contacts with Pennsylvania, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be haled to court in Pennsylvania.

209.     WHEREFORE, Plaintiffs demand judgment against the Johnson & Johnson Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT V – BREACH OF IMPLIED WARRANTIES

---

[16]Last access on May 7, 2021:  https://www.jnj.com/our-company/johnson-johnson-consumer-health-announces-discontinuation-of-talc-based-johnsons-baby-powder-in-u-s-and-canada

Case ID: 230900471

210.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

211.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Johnson & Johnson Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the perineal area. With this knowledge, they impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

212.    Defendants breached their implied warranties of the PRODUCTS sold to Plaintiffs because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

213.    As a direct and proximate result of the Johnson & Johnson Defendants' breach of implied warranties, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused her to develop ovarian cancer. As a result, Plaintiffs where caused to incur medical bills, lost wages, conscious pain, and suffering.

214.    Given the above, and given the Johnson & Johnson Defendants' significant contacts with Pennsylvania, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be haled to court in Pennsylvania.

215.    WHEREFORE, Plaintiffs demand judgment against the Johnson & Johnson Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT VI – FRAUD, FRAUDULENT MISREPRESENTATION, AND INTENTIONAL CONCEALMENT

Case ID: 230900471

216.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

217.    At all relevant times, the Johnson & Johnson Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers and users, including  Plaintiffs.

218.    At all relevant times, the Johnson & Johnson Defendants misrepresented and/or concealed material facts concerning the PRODUCTS to consumers, including  Plaintiffs, with knowledge of the falsity of their misrepresentations.

219.    At all relevant times, upon information and belief, the misrepresentations and concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a.    The Johnson & Johnson Defendants falsely labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the odor away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

b.    The Johnson & Johnson Defendants falsely advertised the PRODUCT SHOWER to SHOWER to be applied "all over," and in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c.    The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to  Plaintiffs and the public that the PRODUCTS were safe for use all over the body, including the perineal areas of women.

d.    The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated PRODUCTS, when used in the perineal area, increase the risk of ovarian cancer.

e.    The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the PRODUCTS regarding the potential and actual risks of using the PRODUCTS in the perineal area on women and the nature, scope, severity,

Case ID: 230900471

and duration of any serious injuries resulting therefrom. [17]

      f.      Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

220.    At all relevant times, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public, including  Plaintiffs, and with the intent that the consumers would purchase and use the PRODUCTS in the female perineal area, and  Plaintiffs did regularly apply the PRODUCTS to their perineal region over a number of years.

221.    At all relevant times, the consuming public, including  Plaintiffs, would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of the risks associated with the use of the PRODUCTS in the perineal area.

222.    At all relevant times,  Plaintiffs relied on the Johnson & Johnson Defendants' misrepresentations concerning the safety of the PRODUCTS when purchasing the PRODUCTS and using them in their perineal area, and their reliance was reasonable and justified.

223.    As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' fraudulent conduct,  Plaintiffs purchased and used the PRODUCTS in their perineal area. As a direct and proximate result of such use,  Plaintiffs developed ovarian cancer, and  Plaintiffs where caused to incur medical bills, lost wages, conscious pain, and suffering.

---

[17] Household PRODUCTS Database, Label for Johnson's Baby Powder, Original, http://householdproducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040

Case ID: 230900471

224.     Given the above, and given the Johnson & Johnson Defendants' significant contacts with Pennsylvania, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be haled to court in Pennsylvania.

225.     WHEREFORE, Plaintiffs demand judgment against the Johnson & Johnson Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT VII – NEGLIGENT MISREPRESENTATION

226.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

227.     As a direct, foreseeable and proximate result of the Defendants' fraudulent conduct, Plaintiffs purchased and used the PRODUCTS in their perineal area. As a direct and proximate result of such use,  Plaintiffs developed ovarian cancer, and  Plaintiffs where caused to incur medical bills, lost wages, and conscious pain and suffering.

228.     Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, the public, and  Plaintiffs, the truth about the PRODUCTS' safety and efficacy when used in the perineal area. However, the representations and/or omissions made by Defendants, in fact, were false.

229.     Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented and/or omitted the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

Case ID: 230900471

230.    Defendants breached their duty in representing that the PRODUCTS were safe for use in the perineal areas of women and/or omitting the known or knowable inherently dangerous carcinogenic nature of the PRODUCTS when used in the perineal area.

231.    At all relevant times, upon information and belief, the misrepresentations, omissions and concealments concerning the PRODUCTS made by the Defendants include, but are not limited to the following:

a.    The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

b.    The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction.  Apply after a bikini wax to help reduce irritation and discomfort."

c.    Defendants, through the advertisements described above, among others, misrepresented to consumers, including  Plaintiffs, that the PRODUCTS were safe for use all over the body, including the female perineal area.

d.    Despite actual knowledge of the health risks of the PRODUCTS, the Defendants failed to disclose to the consumers and  Plaintiffs, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers, including  Plaintiffs.

e.    Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of ovarian cancer, the Defendants failed to disclose to consumers and the  Plaintiffs, through adequate warnings, representations, labeling, or otherwise, that material fact.

f.    Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

38

Case ID: 230900471

232.    At all relevant times, Defendants failed to exercise reasonable care in ascertaining or sharing information regarding the safe use of PRODUCTS, failed to disclose facts indicating that the PRODUCTS were inherently dangerous and carcinogenic in nature, and otherwise failed to exercise reasonable care in communicating the information concerning the PRODUCTS to Plaintiffs and/or concealed relevant facts that were known to them.

233.    At all relevant times,  Plaintiffs where not aware of the falsity of the foregoing misrepresentations, nor was she aware that material facts concerning talc and the PRODUCTS had been concealed or omitted by Defendants.   In reasonable reliance upon the Defendants' misrepresentations and/or omissions,  Plaintiffs was induced to and did purchase the PRODUCTS and did use the PRODUCTS on their perineal area.   If the Defendants had disclosed true and accurate material facts concerning the risks of the use of the PRODUCTS, in particular the risk of developing ovarian cancer from using the PRODUCTS in the female perineal area,  Plaintiffs would not have purchased and/or received the PRODUCTS and/or used the PRODUCTS in that manner.

234.    Plaintiffs's reliance upon the Defendants' misrepresentations and/or omissions was justified and reasonable because, among other reasons, those misrepresentations and/or omissions were made by individuals and entities who were in a position to know the material facts concerning the PRODUCTS and the association between the PRODUCTS and the incidence of ovarian cancer, while  Plaintiffs was not in a position to know these material facts, and because Defendants failed to warn or otherwise provide notice to the consuming public as to the risks of the PRODUCTS, thereby inducing  Plaintiffs to use the PRODUCTS in lieu of safer alternatives and in ways that created unreasonably dangerous risks to her health. At all relevant times, the

Case ID: 230900471

Defendants' corporate officers, directors, and/or managing agents knew of and ratified the acts of the Defendants, as alleged herein.

235.    As a direct and proximate result of Defendants' conduct,  Plaintiffs has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

236.    Given the above, it is reasonable and foreseeable that the Defendants would be haled to court in Pennsylvania.

237.    WHEREFORE, Plaintiffs demand judgment against all Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT VII – LOSS OF CONSORTIUM

238.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

239.    As a direct and proximate result of Defendants' liability producing conduct as set forth herein, Plaintiffs have in the past and will in the future be deprived of the care, comfort, companionship, affection, support, and society of their mother/spouse/sister, and due to her death and the permanent economic and non-economic injuries she has sustained.

240.    WHEREFORE, Plaintiffs demand judgment against all Defendants for compensatory and punitive damages in excess of the jurisdictional minimum of this Court, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT VIII – WRONGFUL DEATH

241.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

Case ID: 230900471

242.     As a direct and proximate result of the acts and/or omissions of Defendants as set forth herein, the decedent used the PRODUCTS in their perineal areas. Subsequent to such use, decedent developed ovarian cancer, suffered substantial pain and suffering, both physical and emotional in nature, and subsequently died.

243.     Plaintiffs, on behalf of themselves and all of decedent's next of kin or successors-in-interest are also entitled to recover punitive damages and damages for substantial pain and suffering caused to decedent from the acts and/or omissions of Defendants as fully set forth herein, including without limitations, punitive damages.

244.     As a direct and proximate result of Defendants' conduct, Plaintiffs and decedent have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

245.     WHEREFORE, Plaintiffs demand judgment against all Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## COUNT IX – SURVIVAL ACTION

246.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

247.     As a direct and proximate result of the acts and/or omissions of Defendants as set forth herein, the decedent named in this action used the PRODUCTS in their perineal area. Subsequent to such use, decedent developed ovarian cancer, suffered substantial pain and suffering, both physical and emotional in nature, and subsequently died.

Case ID: 230900471

248.    Plaintiffs, on behalf of themselves and all of the next of kin or successors-in-interest of decedents, are entitled to recover damages as decedent would have if they were living, as a result of acts and/or omissions of Defendants.

249.    Plaintiffs, on behalf of themselves and all of decedent's next of kin or successors-in-interest are also entitled to recover punitive damages and damages for substantial pain and suffering caused to decedent from the acts and/or omissions of Defendants as fully set forth herein, including without limitations, punitive damages.

250.    As a direct and proximate result of Defendants' conduct, Plaintiffs and decedent have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

251.    WHEREFORE, Plaintiffs demand judgment against all Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief, as this Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

(1)     Judgment for Plaintiff against Defendants;

(2)     For medical and related expenses, according to proof;

(3)     For loss of earnings and/or earning capacity, according to proof;

(4)     For exemplary or punitive damages, according to proof;

(5)     For treble damages;

(6)     For mental and physical suffering, according to proof;

(7)     For Plaintiff's cost of suit herein;

(8)     For disgorgement of profits, according to proof;

(9)     Default judgment as a sanction for the bad faith destruction of evidence, if any, and

Case ID: 230900471

according to proof, if any;

(10)    For such other and further relief as this court may deem just and proper, including prejudgment interest.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all claims so triable in this action.

Dated: September 6, 2023

Respectfully submitted,

*/s/ Tayjes M. Shah*
Tayjes M. Shah, Esq. (Identification No.: 307899)
**The Miller Firm, LLC**
108 Railroad Avenue
Orange, VA 22960
Phone: (540) 672-4224
Fax: (540) 672-3055

*Attorney for Plaintiff*

Case ID: 230900471