Exhibit B

SEP 2 7 2023

**PREPARED BY THE COURT**

JOHN C. PORTO, P.J.Cv.

| | |
|---|---|
| **KEVIN NESKO, individually and as Personal Representative of the Estate of BRIDGET NESKO,**<br><br>Plaintiffs,<br><br>**V.**<br><br>**JOHNSON & JOHNSON;**<br><br>**JOHNSON & JOHNSON HOLDCO (NA) INC.,** f/k/a Johnson & Johnson Consumer Inc., individually and successor in interest to Johnson & Johnson subsidiary "Old JJCI";<br><br>**KENVUE INC.,** individually and as successor in interest to Johnson & Johnson Consumer Inc.;<br><br>**JANSSEN PHARMACEUTICALS, INC.,** individually and as successor in interest to Johnson & Johnson subsidiaries named Johnson & Johnson Consumer Inc., both prior to and after its 2021 restructurings and colloquially known as "Old JJCI" and "New JJCI";<br><br>**JOHN DOE CORPORATIONS 1-50;**<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: ATLANTIC COUNTY<br><br>Docket No: ATL-L-000741-23<br><br>CIVIL ACTION<br><br>CASE NO. 300<br><br>TALC-BASED POWDER PRODUCTION LITIGATION<br><br>**ORDER** |

THIS MATTER having come before the Court on the following Defendants Motion to Dismiss: Kenvue Inc.'s, and the Court having reviewed the moving and opposition papers, as well as conducting oral argument, and for good cause shown:

IT IS ON THIS 27th day of September, 2023, ordered:

The Defendants' Motion to Dismiss is DENIED for reasons stated in the corresponding Memorandum of Decision; and

IT IS FURTHER ORDERED that a copy of the within Order shall be served on all counsel within seven (7) days of it's receipt by movant's counsel.

John C. Porto, P.J.Cv.

**Prepared by the Court**

---

KEVIN NESKO, individually and as Personal Representative of the Estate of BRIDGET NESKO,

Plaintiff,

vs.

JOHNSON & JOHNSON; JOHNSON & JOHNSON HOLDCO (NA) INC., f/k/a Johnson & Johnson Consumer Inc., individually and successor in interest to Johnson & Johnson subsidiary "Old JJCI"; KENVUE INC., individually and as successor in interest to Johnson & Johnson Consumer Inc.; JANSSEN PHARMACEUTICALS, INC., individually and as successor in interest to Johnson & Johnson subsidiaries named Johnson & Johnson Consumer Inc., both prior to and after its 2021 restructurings and colloquially known as "Old JJCI" and "New JJCI"; PERSONAL CARE PRODUCTS COUNCIL f/k/a Cosmetic, Toiletry and Fragrance Association; JOHN DOE CORPORATIONS 1-50;

Defendants

: SUPERIOR COURT OF NEW JERSEY
: LAW DIVISION - ATLANTIC COUNTY

: DOCKET NO.: ATL-L-741-23
  Talc-Based Powder Products Litigation
  Case No: 300

: CIVIL ACTION

: DECISION on Defendants' Motion to Dismiss

---

**Decided on: September 27, 2023**

**Christopher M. Placitella, Esquire for Plaintiff**
**Cohen, Placitella & Roth, P.C.**

**Susan M. Sharko, Esquire For Defendants, Kenvue Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson Holdco (NA) Inc.**
**Faegre Drinker Biddle & Reath LLP**

**Porto, P.J.Cv.**

Plaintiff filed the Complaint on April 26, 2023. Co-Defendants Kenvue Inc. ("Kenvue") filed its motion to dismiss the Complaint for failure to state a claim on May 11, 2023. On May 12, 2023, Kenvue filed an amended motion to dismiss the Complaint. Kenvue, Janssen Pharmaceuticals, Inc. ("Janssen"), and Johnson & Johnson Holdco (NA) Inc. ("Holdco") (collectively "Defendants") moved for the dismissal of the Complaint pursuant to Rule 4:6-2(e) on May 16, 2023[1]. Plaintiff opposed the motion on July 13, 2023. Defendants filed their reply on July 27, 2023. Oral argument was conducted on September 13, 2023.

The court examined the legal sufficiency of the facts alleged in the Complaint and determined a fundament of the various causes of a cause of action was pleaded by the Plaintiff.

## Nature of Motion and Procedural History

The full procedural history is well known by the parties and counsel. However, the court provides a general procedural summary for context based upon the relevant allegations from the Complaint as well as from the Declaration of John K. Kim in support of First day Pleadings.

Plaintiff alleges Plaintiff's Decedent was exposed to asbestos containing talc powder "PRODUCTS[2]" on a regular and frequent basis while using baby powder on herself or while being in the vicinity of someone using or having talcum baby powder applied to his or her person. As a direct and proximate result of Plaintiff's Decedent's exposure to and inhalation and ingestion of dust particles and fibers, Plaintiff's Decedent was diagnosed with ovarian cancer on or around April 26, 2021 and as a result of her ovarian cancer passed away on November 28, 2022.

---

[1] In correspondence dated May 12, 2023, Defendants' counsel wrote the relief sought in this motion also applied to the 55 new plaintiff filings of Richard Golomb, Esq.
[2] In paragraph 6 of the Complaint, Plaintiff defines the term "Products" in the Complaint as follows: "PRODUCTS" is defined by talc products utilized by Plaintiff's Decedent, including Johnson's Baby Powder.

2

Holdco is a New Jersey corporation with its principal place of business in the State of New Jersey. Kenvue is a Delaware corporation with its principal place of business in the State of New Jersey. Janssen is a New Jersey Corporation with its principal place of business in the State of New Jersey.

In the Complaint, Plaintiff alleges at all relevant times, upon information and belief, Defendants, or their predecessors, were engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling and/or distributing the asbestos-containing products to which Plaintiff's Decedent was exposed. Plaintiff further alleges, at all relevant times, Defendants, or their predecessors, regularly transacted, solicited, and conducted business in all fifty States of the United States.

Specifically, in paragraph 20 of the Complaint, the Plaintiff alleges the Defendants:

> are either (a) corporations organized under the laws of the various states of the United States of America that were and are doing business in the State of New Jersey that mined, milled, manufactured, sold, supplied, distributed, purchased, and/or marketed asbestos-containing PRODUCTS to which Plaintiff's Decedent was exposed; or (b) are a successor in interest of such corporations described in clause "(a)" which the law holds responsible and liable for injuries and harm caused by their predecessor(s) or by their predecessor's asbestos-containing product lines it or they acquired which, as a consequence, renders them liable under law to the Plaintiff's Decedent for the injuries and damages that are the subject of this suit.

In October 2021, Old JJCI underwent a corporate restructuring under Texas state corporation and business law. Old JJCI split itself into two separate entities

through a device referred to as a "divisive merger[3]". Plaintiff alleges the corporate restructuring was designed and undertaken with the intent to isolate the talc liabilities of Old JJCI into a newly invented company created by J&J called "LTL Management LLC" ("LTL"). "LTL" is an acronym for "Legacy Talc Liability." Following the divisional merger, LTL was put into a Chapter 11 Bankruptcy wherein LTL and other J&J entities sought the protection of the Bankruptcy Code to obtain a stay of all pending litigation and construct an aggregate resolution of its outstanding present and future asbestos liabilities.

As part of the corporate restructuring, Old JJCI ceased to exist, and two new entities were created: LTL and New JJCI[4]. Plaintiff alleges all of the productive assets of Old JJCI, including those used to manufacture and market J&J Baby Powder, were transferred to a new corporate entity named "Johnson & Johnson Consumer Inc." ("New JJCI"). Upon receipt of the Old JJCI's operating assets, Plaintiff alleges "New JJCI... continued to sell J&J Baby Powder, as did Old JJCI previously before when J&J itself directly marketed the product line through an internal division[5]." LTL "was allocated certain of Old JJCI's assets and became solely responsible for the talc-related liabilities of Old JJCI[6]." "New JJCI was allocated all other assets of Old JJCI and became solely responsible for all other liabilities of Old JJCI[7]."

In referencing the Kim Declaration, the Plaintiff notes all talc-related liabilities were transferred to LTL, and "New JJCI operated its business following the 2021 corporate restructuring. This included the manufacture and sale of a broad range of products used in the baby care, beauty, oral care, wound care and women's

---

[3] To the extent this court references said merger, the court refers to it as a "divisional merger".

[4] See Kim Decl. ¶ 24.

[5] See Complaint paragraph 34.

[6] See Kim Decl. ¶ 24.

[7] Id.

health care fields, as well as over-the-counter pharmaceutical products (collectively, the 'Consumer Business')[8]." The Defendants assert New JJCI did not sell any talc-based Johnson's Baby Powder in North America, as that product was discontinued before New JJCI was formed.

According to the Plaintiff, "[o]ver the objection of tens of thousands of personal injury and wrongful death tort plaintiffs, the Bankruptcy Court presiding over LTL's 2021 bankruptcy case, stayed and enjoined prosecution of all litigation against not only the Debtor LTL but all cosmetic talc injury related litigation involving J&J and New JJCI[9]." On appeal before the United States Court of Appeals for the Third Circuit, on January 30, 2023, that court dismissed the LTL Bankruptcy 2021 case[10]. "LTL's efforts to obtain re-argument before the Third Circuit panel hearing its appeal or an *en banc* hearing were denied[11]." Following the Bankruptcy Court's dismissal order, on April 4, 2023, "LTL filed a second Chapter 11 petition for bankruptcy protection in the same court seeking the same relief as in the dismissed case[12]."

Thereafter, New JJCI changed its name to Johnson & Johnson Holdco (NA) Inc. ("Holdco")[13]. Plaintiff alleges during the time the Third Circuit Court of Appeals was considering the propriety of LTL's bankruptcy filing, New JJCI began the process of moving its assets and business to yet another J&J subsidiary, Kenvue by transfers through JJCI's direct parent, Janssen. Holdco transferred its consumer business assets to Janssen, which transferred those assets to Kenvue. Plaintiff further alleges while Mr. Kim's Declaration does not expressly state who the parent

---

[8] See Kim Decl. ¶ 26.
[9] See Complaint paragraph 35.
[10] In re LTL Management, LLC, 64 F.4th 84, 95-96 (3d Cir. 2023).
[11] See Complaint paragraph 37.
[12] See Complaint paragraph 38.
[13] See Complaint paragraph 40.

entity is, "a careful examination of the affidavit demonstrates Janssen is the parent entity of Defendant New JJCI[14]."

Plaintiff now filed this Complaint to name Holdco, Janssen, and Kenvue as Defendants. Plaintiff alleges all assets associated with the production and sale of Johnson & Johnson Consumer Inc.'s ("Old JJCI") cosmetic talc products were transferred to Holdco, Janssen, and Kenvue and focus on the Defendants' corporate activities after the divisional merger.

Based upon a fair reading of the Complaint, Plaintiff's causes of action are brought, in part, under the New Jersey Products Liability Act ("PLA"), N.J.S.A. 2A:58C-1, et seq., New Jersey's Punitive Damages Act, N.J.S.A. 2A:15-5.9 et al. and New Jersey's common law. As alleged in the Complaint, "both Holdco and Janssen are successors to Old JJCI and responsible for the contractual undertakings and tortious conduct of Old JJCI[15]." Similarly with regard to Kenvue; "Kenvue is responsible, individually, and as successor to all predecessor entities involved in the manufacturing, marketing, and sale of the asbestos-containing talc PRODUCTS to which the Plaintiff's Decedent was exposed[16]."

## Contentions[17]

### Defendants

In support of this motion, Defendants look to the divisional merger and argue:

1. Holdco never held any talc-based liabilities;  those liabilities were transferred exclusively to LTL. As the Third Circuit explained, the corporate restructuring under Texas law "allocated LTL responsibility for essentially all liabilities of Old Consumer tied to talc-related claims."

---

[14] See Complaint paragraph 41.
[15] See Complaint paragraph 42.
[16] See Complaint paragraph 49.
[17] The contentions are general summaries from the briefs and arguments of counsel.

2. Aside from Texas law, the general rule in New Jersey is that when a company acquires assets, it is "not liable for the debts and liabilities of the transferor[18]." Defendants contend Plaintiff appears to invoke the so-called "product line" exception to that general rule. Defendants argue as a matter of law, said exception is not applicable to "an asset purchaser that discontinues the product line[19]." Defendants argue their clients did not continue selling talc-based Johnson's Baby Powder in the United States; said sales were discontinued in 2020 before Holdco was initially formed.

According to Defendants' attorney, their clients were named as defendants "not because of a sincere view that they hold any liabilities, but simply as an attempt to circumvent the automatic bankruptcy stay[20]."

## Defendants' Reply

In their reply, Defendants' counsel provided an additional analysis regarding the divisional merger and further refuted the Plaintiff's arguments regarding successor liability.

## Plaintiff

Plaintiff opposed the motion and argues under New Jersey law, the Defendants are liable for Old JJCI's talc-related liabilities. Under New Jersey law, when a corporate entity undergoes a "corporate reorganization," a "viable restructured entity" cannot escape direct liability for the harm caused by a product just because the original manufacturer had made it before the reorganization[21]. Moreover, Plaintiff's attorney contends this court does not need to consider Texas law in the analysis for this motion; the court needs to look only to New Jersey law.

---

[18] <u>Ramirez v. Amsted Indus. Inc.</u>, 86 N.J. 332, 340 (1981).
[19] <u>Lefever v. K.P. Hovnanian Enterprises, Inc.</u>, 160 N.J. 307, 326 n.4 (1999).
[20] During oral argument on September 13, 2023, this court was informed LTL is no longer in Bankruptcy, but an appeal is pending.
[21] <u>Arevalo v. Saginaw Mach. Sys., Inc.</u>, 344 N.J. Super. 490, 497-98 (App. Div. 2001).

Plaintiff argues the Defendants look at a single moment in time, the divisional merger, to argue there is no responsibility for Old JJCI's talc-related liabilities under New Jersey's successor liability doctrines. Plaintiff's attorney disagrees and asserts the Texas Business Code relied upon by the Defendants, Texas Bus. Orgs. Code Ann. § 10.008, does not immunize the Defendants for liabilities imposed under other laws, such as New Jersey's in this case. According to the Plaintiff's attorney, Texas Law does not allow a corporation that was not assigned liabilities in the merger to evade liability when required under the laws of other states and cited from the Third Circuit Court's decision in In re LTL Mgmt., LLC, 64 F.4th at 95-96 to that effect:

> When the original entity does not survive the merger, it allocates its property, liabilities, and obligations among the new entities according to a plan of merger and, on implementation, its separate existence ends. Id. §§ 10.003, 10.008(a)(1). Except as otherwise provided by law or contract, no entity created in the merger is "liable for the debt or other obligation" allocated to any other new entity. Id. § 10.008(a)(4). In simplified terms, the merger splits a legal entity into two, divides its assets and liabilities between the two new entities, and terminates the original entity.

According to the Plaintiff's allegations, the Defendants are directly liable under New Jersey law as a result of the divisional merger as well as successor liability because the connection between Old JJCI and the Defendants here is "clear and obvious". Plaintiff asserts in their brief the Defendants are Old JJCI "albeit reconstituted" and are directly responsible for Old JJCI's talc-related liabilities.

Plaintiff also alleges Defendants continue to profit from Old JJCI's goodwill and the "Johnson's®" iconic brand pointing out Kenvue recently raised billions for J&J through an initial public offering of a small percentage of its shares (with the rest still being held by J&J) and Kenvue's disclosures to the Securities & Exchange Commission ("SEC"), admitted in the SEC filing that it continues to manufacture

and sell Johnson's® Baby Powder outside the United States. Plaintiff further alleges the Defendants continued Old JJCI's business, acquired its assets, and traded on Old JJCI's goodwill, by invoking the 125-year-old brand to sell Johnson's® Baby Powder, including, as Kenvue has purportedly admitted, the talc-based formulation overseas.

The Plaintiff also asserts successor liability flows from Old JJCI's talc-related liabilities because as a general rule, "where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct.[22]"

## Discussion

Defendants seek to have the Plaintiff's Complaint dismissed pursuant to R. 4:4-62(e).  That rule provides in relevant part, "[e]very defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses, unless otherwise provided by R. 4:6-3, may at the option of the pleader be made by motion, with briefs: (e) failure to state a claim upon which relief can be granted…."  Accordingly, in ruling on such a motion, the applicable standard is well known:

> a reviewing court 'searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.' At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. The examination of a complaint's allegations of fact required by the aforestated

---

[22] McKee v. Harris-Seybold Co., Div. of Harris-Intertype Corp., 109 N.J. Super. 555, 561 (Law. Div. 1970), aff'd, 118 N.J. Super. 480 (App. Div. 1972)  This court notes McKee was criticized by Ramirez, 86 N.J. 332 and is not the current standard in determining successor liability.

principles should be one that is at once painstaking and
undertaken with a generous and hospitable approach.

[Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J.
739, 746 (1989) (internal citations omitted).]

It is well-established that a plaintiff is not required to prove its factual allegations at
the motion-to-dismiss stage. See, e.g., Leon v. Rite Aid Corp., 340 N.J. Super. 462,
472 (App. Div. 2001). This court is required to search the complaint "in depth and
with liberality to ascertain whether the fundament of a cause of action may be
gleaned even from an obscure statement of claim, opportunity being given to amend
if necessary." Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252
(App. Div. 1957) "[T]he test for determining the adequacy of a pleading [is] whether
a cause of action is 'suggested' by the facts." Velantzas v. Colgate-Palmolive Co.,
109 N.J. 189, 192 (1988).   The plaintiff receives the benefit of all reasonable
inferences.  Seidenberg v. Summit Bank, 348 N.J. Super. 243, 249-50 (App. Div.
2002). However, "[a] pleading should be dismissed if it states no basis for relief and
discovery would not provide one." Rezem Fam. Assocs., LP v. Borough of
Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011).

Conflict of Laws-Tex. Bus. Orgs. Code Ann. § 10.008

This specific litigation was designated by the New Jersey Supreme Court as a
Multicounty Litigation and received centralized management in Atlantic County[23],
New Jersey.  Although it appears, there may be a dispute among counsel as to
whether New Jersey law applies, this court finds New Jersey law applies because
New Jersey has the most significant relationship to the occurrence and of the parties
as found in In re Accutane, 235 N.J. 229, 264-65 (2018).

---

[23] Atlantic County and Cape May County comprise Vicinage One.  Plaintiff does
assert "[v]enue is proper in this County pursuant to Rule 4:3-2 in that Defendants do
substantial business in Atlantic County, New Jersey." See paragraph 25 of the
Complaint.

For completeness, even if <u>Accutane</u> was not applicable, this court did not find there is a conflict between the laws of the two states as the Texas business statute permits other state law to govern organization liability post-merger. This court finds its support from the Third Circuit's decision as that count pointed out that the Texas divisional merger statute allows the parties to a merger to assign assets to one or more corporations surviving the divisional merger under Tex. Bus. Orgs. Code Ann. §10.008(a)(2)(C), and under Tex. Bus. Orgs. Code Ann. § 10.008(a)(3).   The Statutes permit the parties to a merger to assign liabilities to one or more of the surviving corporations.

However in that same regard, this court finds the Texas Code does not contemplate that a corporation that was not assigned liabilities in the merger to evade liability when required under the laws of other states. This statutory exception was specifically referenced by the Third Circuit Court of Appeals as it discussed the Corporate Restructuring and Divisional Merger and the Texas Business Organization Code §§ 10.001 <u>et</u> <u>seq</u>.:

> When the original entity does not survive the merger, it allocates its property, liabilities, and obligations among the new entities according to a plan of merger and, on implementation, its separate existence ends. <u>Id.</u> §§ 10.003, 10.008(a)(1). <u>Except as otherwise provided by law or contract, no entity created in the merger is "liable for the debt or other obligation" allocated to any other new entity</u>. <u>Id.</u> § 10.008(a)(4). (Emphasis added.).

[<u>LTL Mgmt., LLC</u>, 64 F.4th at 95.]

Accordingly, this court finds the Texas statutes provides that following the divisional merger, and as otherwise provided by law, successor liability of the entity created in the merger is determined in this instance by New Jersey law.   Since there is no conflict of laws present, the court looks to New Jersey law regarding successor liability based upon the allegations contained in the Amended Complaint.

### Successor Liability

The general rule on successor liability in this state is, "where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct." Ramirez, 86 N.J. at 340 (citations omitted.).   However, the Ramirez Court noted there were four exceptions to that general rule: (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities. Id. at 340-41.

In Ramirez, the New Jersey Supreme Court adopted the following test for determining successor corporation liability in the product line exception as "where,… the successor corporation acquires all or substantially all the assets of the predecessor corporation for cash and continues essentially the same manufacturing operation as the predecessor corporation the successor remains liable for the product liability claims of its predecessor." Ramirez, 86 N.J. at 335. According to the Court, "the focus in cases involving corporate successor liability for injuries caused by defective products should be on the successor's continuation of the actual manufacturing operation and not on commonality of ownership and management between the predecessor's and successor's corporate entities,…." Id. at 347.  Upon its review of this decision, this court does not find that the lack of any source of any remedy was the dispositive impetus for any potential liability for corporate successor[24] liability because the Supreme Court said, "[w]hat is most important,

---

[24] "In Ramirez the successor corporation was the only viable corporate entity plaintiff could sue for his injuries; his remedies against the original manufacturer and an intermediate corporation had been destroyed by the successor's acquisition of all the business assets of its predecessors, which subsequently dissolved." Nieves, 86 N.J. at 364.

however, is that there was continuity in the manufacturing of the... product line throughout the history of these asset acquisitions." Ramirez, 86 N.J. at 350.

Nieves v. Bruno Sherman Corp., 86 N.J. 361 (1981) was also decided on the same day as Ramirez. The issue in that case was "whether the Ramirez standard may be extended to impose liability on an intermediate successor corporation, one that acquired all the business assets from the original manufacturer and thereafter transferred those assets to its successor and discontinued the offending product line, all several years before plaintiff's accident occurred." Id. at 364. The Court held, "the Ramirez rationale is not necessarily so limited as to visit liability upon only the current, viable manufacturer of the product line. In certain situations both the current successor corporation and the intermediate manufacturer may be responsible under Ramirez." Id. at 365.

In Lefever, 160 N.J. at 310, the Supreme Court framed the issue as "whether the product-line exception is applicable when the successor has purchased the predecessor's assets at a bankruptcy sale." The bankrupt "was not the manufacturer of the defective product, but rather an intermediary owner of the product line against whom no claim had been made by the injured party." Id. at 310-11. The Court found that it was not "unfair to impose liability on the successor manufacturers of the Lull forklift" because the successor "trad[ed] on the good will generated by a long-standing customer base." Id. at 326. As an aside, in footnote 4 of the opinion, the Court discussed fairness being the guiding principle for the imposition of punitive damages on a successor. Although the Plaintiff did plead a cause of action seeking punitive damages, in the present case, this court is not considering the merits and is looking at the Complaint only in the manner required by Printing Mart.

The Ramirez holding regarding successor liability was again applied to Arevalo, 344 N.J. Super. 490, and Bussell v. Dewalt Products Corp., 259 N.J. Super. 499 (App. Div. 1992). This court finds the Ramirez holding is applicable here.

In accordance with the above principles, the court accepts all of the Plaintiffs' allegations as true. The Complaint alleges product liability and other stated causes of action against the named Defendants as successor corporations of Old JJCI regarding talc liability and asserts damages against such successors as a result of the death of the Plaintiff's Decedent from ovarian cancer. In paragraph 20 of the Complaint, Plaintiff alleges the Defendants:

> are either (a) corporations organized under the laws of the various states of the United States of America that were and are doing business in the State of New Jersey that mined, milled, manufactured, sold, supplied, distributed, purchased, and/or marketed asbestos-containing PRODUCTS to which Plaintiff's Decedent was exposed; or (b) are a successor in interest of such corporations described in clause "(a)" which the law holds responsible and liable for injuries and harm caused by their predecessor(s) or by their predecessor's asbestos-containing product lines it or they acquired which, as a consequence, renders them liable under law to the Plaintiff's Decedent for the injuries and damages that are the subject of this suit.

The Plaintiff asserts, under New Jersey law, the talc-related liabilities follow the talc-related manufacturing assets and operations to the named Defendants. Since the Defendants allegedly took over the Old JJCI business, Plaintiff argues the named Defendants stand in the shoes of Old JJCI and bear the same liabilities as that prior entity in successor liability. This court finds that is clearly alleged in the Complaint.

Following the divisional merger, Old JJCI no longer existed and New JJCI was formed and allegedly became what Plaintiff refers to as a "new hat" of Old JJCI. Plaintiff alleges New JJCI/Holdco, and later Janssen and Kenvue, continued operating the business in the same manner as Old JJCI. According to Plaintiff, the Defendants and Old JJCI are no different: "they function the same, manufacture the same product, have the same leadership and ownership (with the caveat that J&J has

14

since orchestrated the sale of a de minimis number of shares of Kenvue to the public), and use the same Johnson's® Baby Powder brand and manufacturing assets." See Plaintiff's brief at pg. 17.   Plaintiff further alleges the "Defendants admit these companies are vertically integrated within the same corporate structure." Ibid.   Additionally, Plaintiff alleges "there was no change in ownership or management after the merger, and according to Plaintiff, Johnson & Johnson is the corporate parent of New JJCI, Janssen, and Kenvue. Plaintiff also contends that while Kenvue sold a fraction of its shares in an IPO to raise funds for J&J, "that does not change the fact that it is still a J&J company through and through." Ibid. Plaintiff also contends Kenvue "held itself out to investors as Old JJCI" to the SEC by its use of terminology showing "Kenvue has held and continues to hold itself out as Old JJCI, and that that has been the plan all along." Id. at 17-18.

The Plaintiff alleges the Defendants continue to "manufacture and s[ell] both talc and cornstarch-based Johnson's® Baby Powder, and the "Defendants continue to enjoy and profit from Old JJCI's goodwill." Id. at pg. 21.   Plaintiff also alleges Kenvue admitted the "Defendants have kept on selling the talc-based Baby Powder outside the United States and expect that such sales will continue through 2023." Ibid.   For that reason, Plaintiff argues, "[t]here is no basis in law to distinguish between sales inside and outside the United States and little to recommend for creating an artificial distinction that gives multi-national corporations, such as the …Defendants, an undue advantage and undermine the justifications for strict products liability and the product line exception as expressed by the Supreme Court in Ramirez and its progeny." Id. at pg. 22.

The Plaintiff asserted twenty one counts and alleged various causes of action as well as punitive damages premised on successor liability[25] in the Complaint.

---

[25]  Count I - Strict Liability-Failure to Warn (Against Johnson & Johnson Defendants), Count II – Strict Liability –Defective Manufacture and Design (Against Johnson & Johnson Defendants), Count III- Breach of Express Warranties

When this court searched the Plaintiff's 105 page Complaint in the required "painstaking" and "generous and hospitable approach" a fundament of the various causes of action was gleaned;  said named Defendants may be found liable under those causes of action for Old JJCI's talc-related liabilities under New Jersey law and its successor liability case law.  The court finds the Defendants rely upon factual assertions that may or may not "bear fruit" in later proceedings and it should be noted that this court does not take any position in that regard.  At this time, this court's obligation is to determine whether the Complaint pleads a cause of action and the court finds that it does under New Jersey law.

## Conclusion

Accordingly,  based on the above analysis, the Defendants' motion to dismiss the Plaintiff's Complaint is denied.

_John C. Porto, P.J.Cv._

---

(Against Johnson & Johnson Defendants), Count IV – Breach of Implied Warranty of Merchantability (Against The Johnson & Johnson Defendants), Count V – Breach of Implied Warranty of Fitness for a Particular Purpose (Against Johnson & Johnson Defendants), Count VI - Negligence (Against Johnson & Johnson Defendants), Count VIII – Negligent Misrepresentation (Against Johnson & Johnson Defendants), Count IX – Intentional Misrepresentation (Against Johnson & Johnson Defendants), Count X – Negligent Manipulation of Industry Standards (Against the All Defendants), Count XI - Fraud (Against Johnson & Johnson Defendants), Count XIII – Violation of Consumer Protection Laws (Against Johnson & Johnson Defendants), Count XIV – Fraudulent Concealment (Against Johnson & Johnson Defendants), Count XVI – Civil Conspiracy (Against All Defendants), Count XVII– Concerted Action (All Defendants), Count XX - Loss of Consortium/Per Quod (Against All Defendants), Count XXI - Wrongful Death Act Claims (Against All Defendants), Count XXII - Punitive Damages under common law, Punitive Damages Act (N.J.S.A 2A:15-6.9, et seq.) and Products Liability Act (N.J.S.A. 2A:58C-1 et seq.) (Against All Defendants).