# EXHIBIT 1

```
 1                      UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
 2     _____

 3     IN RE JOHNSON & JOHNSON TALCUM
       POWDER PRODUCTS, MARKETING,           16-MD-2738-MAS-RLS
 4     SALES PRACTICES, AND PRODUCTS
       LIABILITY LITIGATION                  STATUS CONFERENCE
 5
       _____
 6     CLARKSON S. FISHER BUILDING & U.S. COURTHOUSE
       402 East State Street, Trenton, New Jersey  08608
 7     September 6, 2023
       Commencing at 9:59 a.m.
 8

 9     B E F O R E:        THE HONORABLE MICHAEL A. SHIPP
                           UNITED STATES DISTRICT JUDGE
10
                           THE HONORABLE RUKHSANAH L. SINGH
11                         UNITED STATES MAGISTRATE JUDGE

12

13     A P P E A R A N C E S:

14     FOR PLAINTIFFS:

15     ASHCRAFT & GEREL
       BY:   MICHELLE A. PARFITT, ESQUIRE
16     BY:   JAMES GREEN, ESQUIRE

17     BEASLEY ALLEN
       BY:   P. LEIGH O'DELL, ESQUIRE
18
       COHEN PLACITELLA & ROTH
19     BY:   CHRISTOPHER PLACITELLA, ESQUIRE
       BY:   JUSTIN PLACITELLA, ESQUIRE
20

21
              Proceedings recorded by mechanical stenography
22          Transcript produced by computer-aided transcription

23
                 Shannan Gagliardi, Official Court Reporter
24                  shannan_gagliardi@njd.uscourts.gov
                              (609)851-2750
25
```

```
 1   GOLOMB SPIRT & GRUNFELD
     BY:  RICHARD GOLOMB, ESQUIRE
 2
     MOTLEY RICE
 3   BY:  DANIEL LAPINSKI, ESQUIRE

 4   GRANT & EISENHOFER
     BY: SINDHU DANIEL, ESQUIRE
 5
     MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN
 6   BY:  VICKI MANIATIS, ESQUIRE

 7   NAPOLI SHKOLNIK
     BY:  CHRIS LoPALO, ESQUIRE
 8

 9   FOR DEFENDANT JOHNSON & JOHNSON:

10   FAEGRE DRINKER BIDDLE & REATH
     BY:  SUSAN M. SHARKO, ESQUIRE
11   BY:  ERIC FRIEDMAN, ESQUIRE

12   SHOOK HARDY & BACON
     BY:  KATHLEEN FRAZIER, ESQUIRE
13
     SKADDEN ARPS
14   BY:  ALLISON BROWN, ESQUIRE

15   KING & SPALDING
     BY:  KRISTEN FOURNIER, ESQUIRE
16
     JOHNSON & JOHNSON
17   BY:  ANDREW C. WHITE, ESQUIRE

18
     FOR DEFENDANT PCPC:
19
     SEYFARTH SHAW
20   BY:  DAVID KATZENSTEIN, ESQUIRE
     BY:  RENÉE APPEL, ESQUIRE
21

22   FOR DEFENDANT PTI:

23   HARDIN KUNDLA McKEON & POLETTO
     BY:  JANET POLETTO, ESQUIRE
24

25
```

1             (PROCEEDINGS held in open court before the Honorable
2        Michael A. Shipp, United States District Judge, at 9:59
3        a.m.)
4             THE DEPUTY CLERK:  All rise.
5             THE COURT:  Please be seated.  Good morning.
6             Well, welcome, or should I say welcome back to the
7    other side of the building to the district court, I guess to a
8    floor that you folks have become well acquainted with seeing as
9    though most of the time you spent was across the hall with our
10   former Chief Judge Wolfson.
11            Generally, I would have everyone enter their
12   appearances.  But by now, I believe everyone has signed in, and
13   just for efficiency purposes, I'm going to use that as your
14   entry of appearances.
15            I do want to have the lead counsel and the people
16   that I guess I've received the correspondence from enter your
17   appearances so we can put names and faces together.
18            So why don't we have entry of appearances, please.
19            MS. PARFITT:  Good morning, Your Honor.  Michelle
20   Parfitt with Ashcraft & Gerel, co-lead.  Very nice to meet you
21   both and to see you again.
22            THE COURT:  Good morning.
23            MS. O'DELL:  Good morning.  Leigh O'Dell from Beasley
24   Allen, one of the co-lead counsel.  It's very nice to be here.
25   Thank you.

```
 1                THE COURT:  Good morning.
 2                MR. PLACITELLA:  Good morning, Your Honor.  Chris
 3   Placitella, liaison counsel.  Nice to see you.
 4                THE COURT:  Good to see you.
 5                MR. LAPINSKI:  Your Honor, good morning.  Daniel
 6   Lapinski from the Motley Rice Law Firm.
 7                MR. GOLOMB:  Good morning, Your Honor.  Richard
 8   Golomb, Golomb Spirt Grunfeld, for the plaintiffs.
 9                THE COURT:  Good morning.
10                MS. SHARKO:  Susan Sharko, Faegre Drinker Biddle &
11   Reath, for the Johnson & Johnson defendants.
12                THE COURT:  Good morning.
13                MS. BROWN:  Good morning, everyone.  I'm Ally Brown
14   from Skadden Arps for the J&J defendants as well.
15                MS. FRAZIER:  Good morning.  Kathleen Frazier with
16   Shook, Hardy & Bacon for the Johnson & Johnson defendants.
17                MR. FRIEDMAN:  Eric Friedman from Faegre Drinker,
18   also for the Johnson & Johnson defendants.
19                THE COURT:  Good morning.  I am Judge Shipp.  I'm
20   going to be the district court judge on this matter.  And this
21   is Judge Singh, who is our United States magistrate judge, and
22   she will be the magistrate judge assigned to the matter.
23                Has everyone who needs to enter an appearance or who
24   has submitted any submission already entered an appearance?
25   Okay.  All right.
```

1  rules seem to suggest applying those methodologies and those
2  principles to the facts of the case.
3           And Judge Wolfson, on page 119 of her order, was very
4  specific with regard to how, in fact, our experts had indeed
5  complied with that particular provision, that they not only
6  used reliable scientific and admissible methodology, but they
7  applied it to the specific facts of this case.
8           So I think that was something that would be very
9  important.  She was very clear that there was not -- even with
10 new science, if opinions changed, that would be relevant.  But
11 if we're just talking about new works that reaffirm, and indeed
12 in this particular case, any science since the time of the
13 briefing for the Daubert proceeding and post the issuing of the
14 Court's order, Health Canada, O'Brien, the O'Brien study, which
15 is really emphasized by the defendants that it is a new study.
16 That study was actually submitted to Judge Wolfson post-Daubert
17 hearing, pre-Daubert order.
18          Health Canada, which was really the most significant
19 systematic analysis, has been done by an agency that was very
20 much in accord with what the plaintiffs' experts had testified
21 to and submitted their reports on.
22          All that to say that it was very clear to the Court
23 that she had considered relevant science and also considered
24 the fact that there would be new science, but we weren't going
25 to come back and redo Daubert on those individuals where she

1   had done extensive, extensive analysis and reviewed not only
2   qualifications but, frankly, their methodology and process, her
3   arriving at their conclusions, which are very much, again, in
4   sync with, I think, what the new rules expect of the Court and
5   its gatekeeping role.
6              So that's the discrepancy, I believe, between the
7   parties, that we not go back and do that which we spent years
8   developing.  If the experts had looked at a new article, I can
9   assure the Court in this particular case all new science, any
10  new science has only further affirmed and confirmed the
11  opinions of our experts on general causation, and there is
12  really nothing new.
13             What was new back in '20 was actually at least in the
14  hands of the judge, and anything that's come from that, even in
15  2021, have been studies -- one other study, the Smith-Bindman
16  and Woolen study, which looked at one issue that was hotly
17  debated, shall I say, during the course of the Daubert
18  proceedings.  And that was, do you see increased risk with
19  increased duration, increased frequency.  And indeed, that
20  study was then performed in 2021 by Woolen and Smith-Bindman,
21  and they concluded that with increased use and duration of the
22  product, there was an increased risk in developing ovarian
23  cancers.
24             So the only thing I would add to what's already been
25  put is that I believe the methodologies have been sharply and

1   astutely and critically examined by Judge Wolfson, and there
2   would be no need to go back and do a redo of those Daubert
3   proceedings.  And I think that's what the counsel have a
4   dispute about.
5           We don't want to redo.  We're moving forward.
6   There's nothing new that can't bear cross-examination.  They
7   will have ample opportunity to examine our experts on any new
8   studies.  They can ask whether or not that's changed opinion.
9   Again, I confirm to the Court that it has not.  It's only
10  further strengthened their opinions.  But they have an
11  opportunity.  That's what cross-examination is about.
12          And if I can read to the Court, and I thought this
13  was just, again, a very important part.  The judge, on page 119
14  of her order, said:  The Court finds that the opinions of the
15  plaintiffs' general causation experts are admissible under
16  Daubert, subject to the limitations on certain testimony as set
17  forth above.  The experts reliably applied each factor of the
18  Bradford Hill analysis.
19          And then she says:  Where, as here -- and this goes
20  to the new rules.  They go into effect on the first of
21  December.  Where, as here, the causation experts' opinions are
22  based on facts, a reasonable investigation, including
23  documented findings, and traditional technical/mechanical
24  expertise, and the experts provide a reasonable link between
25  the information and procedures they use and the conclusions

1    reached, the Daubert requirements are met.

2               And she was, again, very clear to say that my rulings
3    as to the five experts apply to all those other experts that
4    were in those same disciplines, and we need not go back.

5               Certainly, an expert that has not gone forward with
6    the Daubert proceeding, the Court will have to address that.
7    But with regard to going back and redoing what we were doing
8    over the last seven years seems to be an unnecessary delay when
9    Judge Wolfson had done such a, I think, masterful job with
10   regard to that examination.

11              So with that, Your Honor, I'll sit down unless you
12   have any questions.

13              THE COURT:  Before you sit, just one question.

14              MS. PARFITT:  Of course.

15              THE COURT:  Do you believe that this new contemplated
16   rule, or Evidence Rule 702, does it have any impact on Judge
17   Wolfson's opinion?  Do you think it makes it vulnerable?

18              MS. PARFITT:  I think she was there.  As I said, I
19   think she was prescient with regard to that.  Page 119 is
20   almost in sync, the new rules, and the only change is the
21   expert opinion reflects a reliable application of the principle
22   and methods to the facts of the case, exactly what she said
23   these experts did on page 119.

24              The old rule, still the existing rule for us, is the
25   expert has reliably applied the principles and methods to the

1  facts.  In this case, our experts did just that.  And she found
2  that the expert opinions reflect a reliable application of the
3  principles and methods, and they were examined on that.
4          So I think it's very much in sync.  I don't know that
5  she made that distinction.  Perhaps she was even more cautious,
6  cautious than many during -- back in 2020, not knowing what
7  was -- what the world would look like.
8          So I think that it's -- it certainly changes nothing
9  with regard to those experts.  In fact, I think they are in
10 lockstep with any new rules that would be contemplating of an
11 expert.
12         THE COURT:  Do you also think that Judge Wolfson kept
13 open the door -- let me see if I have the exact language.  I
14 know she referred to it.  She says in that same opinion that if
15 the supplemental reports impact my Daubert decisions made in
16 this opinion, I may amend my rulings at a later time.
17         MS. PARFITT:  If I can respond, any amendment to the
18 expert reports of those individual experts that have already
19 undergone a Daubert process, extensive Daubert process and
20 briefing, what we will be doing is simply supplementing any
21 additional literature that they may have read, which one would
22 expect.
23         Let's say we have a trial a year from now.  Your
24 Honor would expect those experts to continue to keep in
25 lockstep with any new science, good or bad.  In this particular

1  case, that's exactly what these experts have done, continued to
2  monitor the literature and make sure they keep pace and they
3  understand literature on both sides of the fence.
4          And in this case, she anticipated that, but I think
5  her written statement is if it changes, if their methodologies
6  would change.  Their methodologies have not changed.  The
7  methodologies that they employed from looking at all the
8  science four years ago is precisely the same methodology that
9  they're employing when they review any new science.
10         That is to say she examined that methodology in these
11 processes, and that's what was critical for her.  Whether or
12 not they come up with different conclusions, that's not --
13 that's not the relevant inquiry.  The relevant inquiry is
14 whether or not they employed reliable and valid scientific
15 methodology, and she found that they passed that.
16         And so, therefore, we would share with the Court that
17 that's what they will continue to do.  So if they look at
18 another article, they're employing the same methodologies that
19 she approved and the same methodologies that she found
20 admissible.  They would just review articles and they would
21 just add that to their arsenal, so to speak, of articles and
22 would report on it.  But it has not changed opinions, and
23 certainly new articles coming up would not change their
24 methodologies, again, which were exhaustively examined by her.
25         I know you weren't there, Judge, but it was really

1  kind of documents what we've talked about here today, but the
2  sooner you can respond with some of the outstanding items, the
3  sooner we can get going in terms of coming up with a more
4  comprehensive plan for moving forward.
5          It was a pleasure meeting all of you.  Have a great
6  day.
7          THE DEPUTY CLERK:  All rise.
8      (Proceedings adjourned at 11:00 a.m.)

10                          CERTIFICATION

12                  I certify that the foregoing is a correct
13 transcript from the record of proceedings in the above-entitled
14 matter.

17 /S/Shannan Gagliardi, RDR, CRR          9/6/2023
18 Court Reporter/Transcriber