AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER ) <br> *Plaintiff* ) <br> v. ) <br> PRODUCTS MARKETING, SALES PRACTICES ) <br> AND PRODUCTS LIABILITY LITIGATION ) <br> *Defendant* ) | Civil Action No. 3:16-md-2738-MAS-RLS |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: KCIC, LLC (attn: Custodian of Records), c/o The Corporation Trust Company
Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
All communications and documents set forth in Schedule A.

| Place: O'Melveny & Myers LLP <br> 1625 Eye Street NW <br> Washington, DC 20006 | Date and Time: <br> 01/05/2024 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*                                             OR       /s/ Stephen Brody

_____                                      _____
*Signature of Clerk or Deputy Clerk*                                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Defendants Johnson & Johnson and LTL Management LLC , who issues or requests this subpoena, are:
Stephen D. Brody, 1625 Eye Street NW, Washington, DC 20006, sbrody@omm.com, (202) 383-5300

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:16-md-2738-MAS-RLS

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case 3:16-md-02738-MAS-RLS   Document 28828-1   Filed 12/19/23   Page 3 of 12 PageID: 169483

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

A. The terms "you," and/or "your" shall mean KCIC Consulting ("KCIC"), including without limitation any agents, representatives, attorneys, investigators, insurers, employees, brokers, independent contractors, subcontractors, and/or any person, persons, entity or entities or persons acting on behalf of the aforesaid.

B. The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these requests any relevant information that might otherwise be construed to be outside the scope of requests.

C. "Communication(s)" means all manner and type of disclosure, transfer, or exchange of information, written and oral, electronic and handwritten, audio and visual, and including text messages, email messages, instant messages, communications made through Signal, Slack, WhatsApp, or other messaging service, letters transmitted by U.S. Postal Service or any private carrier, and voice mail messages.

D. "Document(s)," means any writings, drawings, graphs, charts, photographs, sound recordings, images, Communications, and other data or data compilations, including back-up and archived copies of electronically-stored information ("ESI"), stored in any medium from which information can be obtained directly, or, if necessary, after translation by the responding party into a reasonably usable form. ESI includes, without limitation, all electronic data stored in any form that is responsive to these Requests for Production, including the metadata for all Documents. A draft or non-identical copy is a separate Document within the meaning of this term.

E. "Relating to" or "related to" mean concerning, referring to, describing, evidencing, constituting, comprising, containing, consisting of, setting forth, proposing, showing, disclosing, embodying, discussing, explaining, reflecting, authorizing, pertaining to, recording, memorializing, or mentioning, directly or indirectly.  Requests for Documents "relating"  or "related" to any subject matter include Documents and Communications regarding that subject matter.

F. The term "Legacy" means "Legacy Liability Solutions LLC" and any and all divisions, subdivisions, affiliates, predecessors, successors, joint ventures, present and former officers, directors, employees, representatives, agents, attorneys, accountants, advisors, and all other persons acting or purporting to act on behalf of Legacy Liability Solutions LLC.

G. The term "LTL" means "LTL Management LLC" and any and all divisions, subdivisions, affiliates, predecessors, successors, joint ventures, present and former officers, directors, employees, representatives, agents, attorneys, accountants, advisors, and all other persons acting or purporting to act on behalf of LTL Management LLC.

H. The term "J&J" means "Johnson & Johnson" and any and all divisions, subdivisions, affiliates, predecessors, successors, joint ventures, present and former officers, directors,

employees, representatives, agents, attorneys, accountants, advisors, and all other persons acting or purporting to act on behalf of Johnson & Johnson.

## DOCUMENTS REQUESTED

1. All Documents relating to Legacy, including but not limited to its proposal to acquire LTL and/or other affiliated entities holding liability for present and future cosmetic talc claims.

2. All Communications between you and the following relating to pending or future cosmetic talc claims, liabilities or litigation involving J&J or LTL:

    a. Legacy;

    b. James F. Conlan;

    c. Andy Birchfield; and/or

    d. The Beasley Allen Law Firm.

3. All Documents relating to the settlement grid attached as **Exhibit A**.

4. All Documents prepared, received or otherwise related to your work for Legacy regarding J&J's or LTL's present or future cosmetic talc liabilities.

# EXHIBIT A



November 9, 2023

The Board of Directors
Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Dear Members of the Board,

Legacy Liability Solutions LLC ("Legacy") proposes to acquire LTL and all the talc liable J&J affiliates in a transaction that will: (1) result in the disaffiliation of such entities from J&J, and (2) remove the non-cash charge for all the talc liabilities from J&J's balance sheet. For Legacy to enter into this transaction, the acquired talc liable entities of J&J would be required to hold assets with a present value of **$19.0 Billion**, or such greater amount as determined by J&J's independent auditor to remove from J&J's financial statements the non-cash charge for talc related liabilities.

Put simply, Legacy's proposal would resolve all of J&J's **current and future** talc related liabilities. Importantly, Legacy's proposal has been reviewed and is supported by leadership counsel on both the federal MDL and in state court cases across the country.

**Background to the Proposal**

As you appreciate, J&J's Board must carefully evaluate Legacy's proposal and compare it to all other alternatives.

**Finality**

The word that describes your objective is "Finality". Finality means protection not only from the current talc claims (50,000+) but so-called future claims. Achievement of a confirmed Chapter 11 bankruptcy plan (with a channeling injunction) has many hurdles and is neither the most likely nor the fastest means to provide J&J finality. Indeed, even

if such a plan were confirmed, it simply cannot free J&J of its direct liability. Comparatively, Legacy's proposal is far more certain, is much faster, and **will free J&J of all liabilities including for direct claims against J&J.**

### Restoration of Shareholder Value

The J&J business is truly impressive and is a tribute to management and this Board. On October 17, J&J announced positive third quarter results, beating analyst estimates top to bottom, and even surprised investors by raising guidance for the full year. However, the uncertainty regarding the ultimate resolution of the contingent talc related liabilities has resulted in the capital markets imposing a significant discount to the intrinsic value of J&J shareholder equity. We expect the economic impact of the Legacy proposal to J&J will be significantly less than what is currently reflected in your market capitalization caused by those same talc liabilities. Your investment bankers and capital markets experts will of course advise you on that.

### Details of Proposal

A critical factor of this transaction to achieving the desired finality, is a determination by your independent auditors (PricewaterhouseCoopers LLP) of the amount required to remove the non-cash charge on J&J's financial statements for the talc related liability. Legacy requires that the J&J entities with talc liability hold current assets of $19.0 Billion in present value, or such greater amount as determined by PwC.

To provide enhanced certainty to PwC in its determination, it is important to note that Leading Counsel in the MDL have agreed to support an opt-in settlement with Legacy, post-acquisition, on the terms described in the accompanying matrix (marked "Exhibit"). Leading Counsel in the MDL believe that the matrix settlement will enjoy 95% plus opt in and the matrix settlement is conditioned on achievement of the 95% opt in. Such a settlement should greatly reduce the tail of the distribution of future claims and projections considered by PwC in determining the amount of assets required to remove all talc related charges from J&J's financial statements.

As a result of structural optimization in the form of a Texas divisive merger, much of J&J's talc liability is contained within LTL. J&J's counsel will structurally optimize all other affiliates (including J&J) with talc related liability, and those additional structurally optimized entities will become subsidiaries of LTL. Legacy will acquire 100% of the equity in LTL which will have assets of a value equal to $19 Billion in present value, or such greater amount as determined by PwC.

We believe we can achieve closing in 90 days or less. We will go as fast as J&J and its professionals are able.

### Resources and Capabilities

The individuals running Legacy have led the world in (and quite literally invented) structural optimization and disaffiliation of solvent companies with mass tort liabilities. See, for example, the optimization of BorgWarner and ITT and the disaffiliation of their asbestos liabilities (BorgWarner/Morse-tec), and (ITT/Intelco). See also the optimization of Mine Safety Appliances and disaffiliation of the entities with coal dust related liabilities. John Gasparovic, one of Legacy's principals, was the Chief Legal Officer of BorgWarner and spear-headed the optimization. Notably, PwC was the independent auditor for BorgWarner and presided over removal of BorgWarner's contingent liability for asbestos.

### Asset Management

Our Chief Investment Officer, Doug Dachille is the former CIO of AIG and the investment management firm he founded, First Principles, was a fixed income manager for six of the largest 524(g) asbestos trusts at the direction of Cambridge Associates. Prudent investment guidelines, a minimum liquidity requirement equal to six months of projected claims and a capital adequacy standard will be established to ensure the entity has sufficient financial resources to satisfy its projected future claims obligations and a minimal risk of shortfall. These protections are critical to safeguard the claims paying capacity of LTL's assets. As one of the most experienced asset-liability investors in the world, Doug will ensure that claimants can be paid in full well into the future by taking a prudent and conservative investment approach.

The Legacy team has access to some of the most sophisticated asset management firms serving the insurance, pension, and institutional client segments. It is Legacy's intention to enter into an asset management agreement with New England Asset Management under which it will manage over 50% of LTL's assets.

- **New England Asset Management:** will serve as the investment manager of the liquid high credit quality assets for the investment portfolios of the acquired entities. In addition, NEAM will provide financial and ALM/risk management reporting, including capital stress testing to enable Legacy to dynamically manage the investment portfolio to preserve its claim payment capacity through investment cycles over the long-term horizon.

- **Legacy Liability Solutions:** will establish investment management agreements with a select group of best-in-class asset managers with expertise and origination capabilities in specific asset classes including fixed income and alternative investments.

**Strategic Logistics Partner**

Given the importance of managing litigation for decades into the future, Legacy has partnered with KCIC to provide responsive and technologically sophisticated management for the long term.

KCIC is a nationally recognized industry leader in providing logistics, claims and litigation management services through efficient use of technology to mass tort defendants. Built to last for the foreseeable future, KCIC is staffed at the senior level with industry veterans. KCIC is headquartered in Washington DC with offices in Chicago and Phoenix.

Bringing decades of industry experience, KCIC has established an outsized reputation not only in a range of expert consulting services, but in deploying leading-edge technology to create innovative solutions for clients.

KCIC currently provides full-service litigation and claims management services to over 50 individual asbestos defendants, including some of the very largest, equipping KCIC to take on the challenge of LTL.

Since its founding in 2002, and much earlier in the experience of its senior leadership team, KCIC has been deeply immersed in all aspects of business dispute resolution and mass tort litigation. KCIC's services include:

- Management consulting
- Design and implementation of custom technology solutions
- Claims administration and insurer billing
- Insurance coverage litigation and settlement
- Economic modeling and forensic accounting
- Data normalization, migration, and analytics
- Forecasting of products liabilities
- Expert testimony

**Next Steps**

We propose an in person meeting with the J&J Board (or a subcommittee), and its professionals, in the coming days to provide even greater detail in an effort to aid you in your comparison of our proposal to all other alternatives available to J&J. Together, after our in-person meeting, we will sign an appropriate confidentiality agreement. Thereafter, we will agree on a very specific, staged, action plan to reach closing.

Balancing risks, rewards, and probability of outcome, we believe the Board will conclude that the Legacy proposal is the clear winner in appropriately enhancing shareholder value.

*[signature: James F. Conlan]*

**LEGACY**
LIABILITY SOLUTIONS LLC

**James F. Conlan**
Chief Executive Officer and Co-Founder
Legacy Liability Solutions
Dallas I Chicago I Washington
Email I james.conlan@legacyliability.com

Office I +312.291.4619
Mobile I +312.927.7572
www.legacyliability.com


Cc: Douglas A. Dachille
    John J. Gasparovic

Ex. A

| Age Group | Death, Stage IV, Stage III w/Recurrence | Stage III without Recurrence | Stage II and I with Recurrence | Stage II without Recurrence | Stage I without Recurrence | Stage IV and III Borderline | Stage II and I Borderline |
|---|---|---|---|---|---|---|---|
| Under 45 | $1,000,000 | $628,721 | $435,268 | $265,997 | $169,271 | $96,726 | $64,488 |
| 45-49 | $822,173 | $534,413 | $369,978 | $226,098 | $143,880 | $82,217 | $54,811 |
| 50-54 | $628,721 | $408,669 | $282,924 | $172,898 | $110,026 | $62,872 | $41,911 |
| 55-59 | $531,995 | $345,796 | $239,398 | $146,299 | $93,099 | $53,199 | $35,466 |
| 60-64 | $386,905 | $251,488 | $174,107 | $106,399 | $67,708 | $38,691 | $25,794 |
| 65-69 | $290,179 | $188,616 | $130,580 | $79,799 | $50,781 | $29,018 | $19,345 |
| 70-74 | $241,816 | $157,180 | $108,817 | $66,499 | $42,318 | $24,182 | $16,121 |
| 75-79 | $174,107 | $113,170 | $78,348 | $47,880 | $30,469 | $17,411 | $11,607 |
| 80+ | $116,072 | $75,446 | $52,232 | $31,920 | $20,313 | $11,607 | $7,738 |
| Average Claim Value by Stage | $520,462 | $365,674 | $281,032 | $171,231 | $111,108 | $86,147 | $52,670 |