**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS <br><br> MDL Case No. 2738 <br><br> Motion Day: January 2, 2024 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ORDER TO
SHOW CAUSE WHY ANDY BIRCHFIELD AND BEASLEY ALLEN
SHOULD NOT BE DISQUALIFIED OR REMOVED FROM THE
PLAINTIFFS' STEERING COMMITTEE**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

      I.      Birchfield and Beasley Allen Have Not Shown and Cannot Show
             Cause Why They Should Not Be Disqualified .....................................2

      II.     Beasley Allen Should Be Required To Show Cause Why It Should
             Not Be Removed From The Plaintiffs' Steering Committee ...............9

CONCLUSION ......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bittner v. Waterford Twp. Sch. Dist.*,
2020 WL 10184581 (D.N.J. Apr. 27, 2020) ........................................................8

*Cordy v. Sherwin-Williams Co.*,
156 F.R.D. 575 (D.N.J. 1994) ................................................. 5, 6, 8, 9

*Dewey v. R.J. Reynolds Tobacco Co.*,
536 A.2d 243 (N.J. 1988) ........................................................5

*Est. of Kennedy v. Rosenblatt*,
149 A.3d 5 (N.J. App. Div. 2016) ........................................................9

*Grieg v. Macy's Ne., Inc.*,
1 F. Supp. 2d 397 (D.N.J. 1998)........................................................5

*In re LTL Mgmt., LLC*,
64 F.4th 84 (3d Cir. 2023) ........................................................10

*Maldonado v. N.J. ex rel. Admin. Off. of Courts-Probation Div.*,
225 F.R.D. 120 (D.N.J. 2004) ........................................................4, 6

*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*,
764 F. Supp. 712 (D. Conn. 1991) ........................................................4, 6

*Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*,
2018 WL 6171819 (D.N.J. Nov. 26, 2018)........................................................7

*Shaikh v. Germandig*,
2022 WL 16716116 (D.N.J. Nov. 4, 2022)........................................................8

*United States v. Voigt*,
89 F.3d 1050 (3d Cir. 1996) ........................................................8

**INTRODUCTION**

No one—not Andy Birchfield, not his law firm Beasley Allen, not J&J's former lawyer, James Conlan—disputes the fact that Conlan possesses J&J's privileged and confidential information, including the Company's evaluation of litigation and resolution strategies for the cases in this MDL. After all, Conlan spent 1,600 hours working on the matter for J&J and participated in countless meetings with its in-house and outside counsel teams. No one disputes that Birchfield and Beasley Allen knew Conlan served as J&J's lawyer on this very matter through early 2022. And no one disputes that Birchfield formed an alliance with Conlan so that they—Birchfield, Beasley Allen, and Conlan—could pursue a resolution of talc liabilities that is adverse to J&J both in terms of the amount and process to effectuate that resolution. Their actions strike at the heart of our adversarial system, and J&J therefore asked this Court to require Birchfield and Beasley Allen to show cause why they should not be disqualified.

Instead of responding to J&J's arguments for why a show-cause order should issue, Birchfield and Beasley Allen address a motion J&J did not file—an outright motion for disqualification. But even though Birchfield and Beasley Allen miss the point of J&J's motion, their arguments for why they should not be disqualified—which run contrary to settled case law and are factually implausible—prove the opposite. Accordingly, on the existing and undisputed record, the Court should

1

disqualify them from representing plaintiffs and remove them from the Plaintiffs' Steering Committee in this MDL.[1]

**ARGUMENT**

## I.   BIRCHFIELD AND BEASLEY ALLEN HAVE NOT SHOWN AND CANNOT SHOW CAUSE WHY THEY SHOULD NOT BE DISQUALIFIED

Birchfield's and Beasley Allen's (collectively "Birchfield") factual and legal arguments against disqualification demonstrate that they have not shown and cannot show cause why they should not be disqualified.

A.   <u>Birchfield's factual arguments fail</u>.   Birchfield argues that "there is no evidence that Conlan shared any confidential or privileged information with Birchfield or Beasley Allen."  Opp. at 8.  He is mistaken.  The facts that are material to the Court's disqualification inquiry are undisputed.

Conlan spent 1,600 hours over two years as an integral member of J&J's legal team evaluating strategies for resolution of the company's talc liabilities.  Mot. at 3-5.  As a core member of J&J's legal team, he was party to privileged and confidential conversations about this litigation—including how, when, and on what terms J&J would be inclined to settle claims.  *Id*.  In 2022, Conlan launched Legacy Liability Solutions ("Legacy"), whose business model is to buy legal liabilities (like J&J's

---

[1] Alternatively, the Court should grant J&J's motion and order Birchfield and Beasley Allen to show cause why they should not be disqualified—which they cannot do.

talc liabilities) and settle them for less than the purchase price, while charging fees for administering the claims resolution process. *Id*. at 6.

After J&J rebuffed Conlan's efforts to purchase its talc liabilities, *id.* at 6-7, Conlan turned to J&J's litigation adversary, Birchfield. They developed a settlement matrix estimating the value of J&J's talc liabilities at $19 billion dollars, which Conlan then represented to J&J as having "the support of lead counsel for the [ovarian cancer] claimants (including Andy Birchfield)." *Id*. at 8. Since then, Conlan and Birchfield have moved in lockstep advocating J&J's sale of its talc liabilities to Conlan's company, while simultaneously criticizing J&J's effort to pursue resolution through the bankruptcy process. *Id*. at 10-11. If J&J were to agree to the Legacy scheme, both Conlan and Birchfield would reap significant financial benefits. *Id*. at 9-10.

These facts speak for themselves. J&J's litigation adversary has teamed with its former lawyer to develop a plan for resolving this litigation where both benefit financially. Every step of their plan necessarily incorporated Conlan's learnings and understandings—each derived from his attorney-client relationship with J&J when he represented the Company in this very matter. *Id.* at 2. That Conlan brought that confidential and privileged knowledge forward to his alliance with Birchfield and presentation of their directly adverse resolution plan—including the "settlement matrix" designed to impose billions of dollars of incremental costs on J&J—is not

3

only factually self-evident but exactly what courts have recognized as prohibited. Indeed, the alliance between J&J's former lawyer and current adversary itself casts a dark cloud over the integrity of these proceedings.

These circumstances trigger the "presumption … that confidential information" was, in fact, shared with a litigation adversary. *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 727 (D. Conn. 1991); *see also Maldonado v. N.J. ex rel. Admin. Off. of Courts-Probation Div.*, 225 F.R.D. 120, 137 (D.N.J. 2004); *Grieg v. Macy's Ne., Inc.*, 1 F. Supp. 2d 397, 402-03 (D.N.J. 1998); *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 583-84 (D.N.J. 1994). Birchfield is thus wrong when he argues that no evidence supports disqualification—both the evidentiary record and a legal presumption support that result. *Cf. Dewey v. R.J. Reynolds Tobacco Co.*, 536 A.2d 243, 253 (N.J. 1988) ("We cannot conceive of any situation in which the side-switching attorney or his new firm would be permitted to continue representation if … the attorney had in fact *actually* … acquired confidential information concerning that client's affairs.").

To be sure, Conlan submitted a declaration averring that he "never disclosed to Mr. Birchfield or any member of his firm, Beasley Allen, any confidential information belonging to J&J." Decl. of James Conlan ¶ 9 ("Conlan Decl."). And Birchfield submitted a declaration to similar effect. Decl. of Andy Birchfield ¶ 12 ("Birchfield Decl."). But these conclusory, self-serving declarations only illustrate

4

why a "presumption" of shared confidences exists in the first place. *Cordy*, 156 F.R.D. at 584. "There is an inherent difficulty in determining, at some later time, whether [confidences were shared]." *Id.*; *see also Maldonado*, 225 F.R.D. at 137. And "[s]elf-serving affidavits of counsel and others are not helpful because of their 'undeniable interest in preserving any tactical advantage they may have garnered.'" *Cordy*, 156 F.R.D. at 584 (quoting *MMR/Wallace*, 764 F. Supp. at 726-27).

The facts here bear this out. Conlan has a strong personal and professional interest in denying that he shared J&J's confidences with its adversary.[2] Likewise for Birchfield. He and Beasley Allen have a huge financial stake in their continued presence in this litigation and in the resolution they are pursuing through their alliance with Conlan, *see* Mot. at 9-10, not to mention their interest in preserving the tactical advantage they gained from Conlan should any of their cases proceed to trial.

Conlan also asserts that he does not "have any J&J privileged or confidential information that is required for Legacy to consensually transact with J&J." Conlan Decl. ¶ 10. That is a non-sequitur. What matters here is whether Conlan possesses J&J's confidential information, not whether the confidential information Conlan possesses is necessary for his company to purchase J&J's talc liabilities. Conlan

---

[2] Birchfield asserts that "J&J's decision to not seek relief … against Conlan speaks volumes." Opp. at 9. J&J has not asked this Court to grant relief against Conlan only because Conlan is not before this Court. As an active member of the Illinois State Bar, however, Conlan must answer to that governing body.

does not—and could not—deny that he possesses J&J's confidential information. And Conlan did nothing to screen himself from Legacy's effort to acquire and profit from J&J's talc liabilities.  To the contrary, he has been at the forefront of Legacy's attempts to advance its profit-driven proposal, including through his alliance with Birchfield.

New Jersey's ethical rules confirm the common-sense principle that an attorney cannot compartmentalize confidential client information.  For example, Rule 1.9(b) provides that a lawyer shall not represent a client in a substantially related matter if his former firm represented a client with adverse interests and the lawyer acquired the former client's confidential information.  It is the acquisition of client confidences that triggers the bar; no exception is made for self-compartmentalization because that is impossible.

B.  <u>Birchfield's legal arguments fail</u>.  Birchfield fares no better on the law. Birchfield assumes that an attorney can be disqualified *only* if he violates a Rule of Professional Conduct.  *See* Opp. at 7.[3]  Birchfield then argues that he cannot be disqualified because he personally did not violate a Rule of Professional Conduct

---

[3] Birchfield quotes *Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*, 2018 WL 6171819, at *4 (D.N.J. Nov. 26, 2018), for the proposition that the party seeking disqualification bears the burden of "proving that disqualification is appropriate because the RPC was violated." Opp. at 7.  That quote appears nowhere in *Nasdaq*.  Other courts have used that formulation, but the context of those decisions makes clear that the party seeking disqualification must prove a Rules violation only when the basis for disqualification is a violation of the Rules of Professional Conduct.  *See Bittner v. Waterford Twp. Sch. Dist.*, 2020 WL 10184581, at *2 (D.N.J. Apr. 27, 2020).

and no violation can be imputed from Conlan to him under New Jersey's rules. *See id*. at 9-11. Birchfield's baseline assumption is wrong. As the Third Circuit has made clear, "disqualification" in federal court "need not be … predicated on a finding of a specific [Rules] violation." *United States v. Voigt*, 89 F.3d 1050, 1076 (3d Cir. 1996); *see also, e.g.*, *Shaikh v. Germandig*, 2022 WL 16716116, at *3 (D.N.J. Nov. 4, 2022) (collecting cases); *Cordy*, 156 F.R.D. at 583. Birchfield's argument that he did not personally violate a Rule of Professional Conduct thus misses the mark. And because Birchfield's argument starts from the flawed assumption that a Rules violation is required, he never addresses J&J's actual argument for disqualification—namely, that opposing counsel's possession of his adversary's confidential information so seriously threatens the integrity of the adversarial process that disqualification is required. *See* Mot. at 15-16.

Birchfield also asserts that he should not be disqualified "because the plaintiff talc cancer victims have the right to choose their own lawyer." Opp. at 11. But as the very case law cited by Birchfield shows, a party's right to choose counsel is "limited." *Dewey*, 536 A.2d at 251. Needless to say, the plaintiffs in this litigation have no right to an attorney that knows J&J's confidences. Mot. at 15-16. Notwithstanding any interest that plaintiffs might have in being represented by Birchfield (as opposed to many other lawyers in this litigation), "the fairness and integrity of the judicial process and [J&J's] interest in a trial free from the risk that

7

confidential information has unfairly been used against [it] must also be considered and outweighs [plaintiffs'] interest." *Cordy*, 156 F.R.D. at 584; *see also, e.g.*, *Est. of Kennedy v. Rosenblatt*, 149 A.3d 5, 10 (N.J. App. Div. 2016) (noting "the need to ensure that protected client information is not used to the detriment of a former client").

C. "Smear Tactics." Birchfield's final argument for why he should not be disqualified is that J&J has in his view engaged in "smear tactics." Opp. at 11-12. J&J obviously disagrees with Birchfield's characterization of its litigation conduct.[4] But because, as Birchfield observes, "practicing law is a profession, not a locker-room brawl," *id*. at 1, J&J will stay above the fray and respond directly to the legal point Birchfield seems to be making—namely, that J&J's arguments must be meritless because it "lacks credibility." *Id*.

To start, the record speaks for itself and the facts and law establish the "credibility" of the position advanced in this motion. The facts are the facts, and they show that Birchfield teamed with J&J's former lawyer to formulate a plan adverse to J&J's interests where they both benefit financially. The question for Birchfield is whether he can explain how that alliance could possibly be proper. His

---

[4] For instance, the Third Circuit did not find that LTL filed for bankruptcy "in bad faith." Opp. at 1. The Third Circuit expressly recognized that "it is not bad faith" to seek bankruptcy protection from creditors, and found only that LTL did not make a threshold showing of "financial distress" required to enter bankruptcy. *In re LTL Mgmt., LLC*, 64 F.4th 84, 101 & n.19 (3d Cir. 2023) (quotations and brackets omitted).

opposition shows that he cannot.  Yet should this Court harbor any questions, a show cause order should issue and a hearing should be held.

* * * * *

Birchfield's opposition brief rests not only on the flawed premise that the facts and law support his argument against disqualification, but on the erroneous idea that J&J asked the Court to disqualify him before affording him an opportunity to show cause. *See* Opp. at 8.  He contends that J&J's motion should be denied because J&J did not carry its "burden to disqualify" him. *Id.*  Both positions are refuted by the record.

J&J moved for an order to show cause why Birchfield should not be disqualified and submitted a factual record that showed why disqualification is warranted.   In opposition, Birchfield did not dispute—and concedes—the facts material to the disqualification inquiry.  At this juncture, the record thus warrants an order disqualifying Birchfield and Beasley Allen, or at the very least granting the requested order to show cause.

## II.   BEASLEY ALLEN SHOULD BE REQUIRED TO SHOW CAUSE WHY IT SHOULD NOT BE REMOVED FROM THE PLAINTIFFS' STEERING COMMITTEE

The same circumstances warrant an order removing Beasley Allen from the Plaintiffs' Steering Committee ("PSC"). *See* Mot. 18.  Birchfield's only response is that a different Beasley Allen attorney, Leigh O'Dell, serves on the PSC.  But O'Dell

9

and Birchfield are co-counsel from the same firm, after all, and it would strain credulity to suggest that they do not communicate regularly about this litigation. In his declaration, Birchfield does not assert otherwise, nor does he claim that Beasley Allen has erected an ethical screen between the two. The record affords no basis for Birchfield, the person Conlan called "lead counsel for the [ovarian cancer] plaintiffs" when touting their alliance to J&J, *see* Mot. at 8 (and Haas Decl., Ex. 3), to argue that there is any daylight between himself and O'Dell such that the continued integrity of these proceedings could be maintained if she (or any member of Beasley Allen) remains on the PSC.

Birchfield's opposition is devoid of any mention of the need for the Court to protect that integrity and, with it, the confidence that this litigation will be free from the taint of his relationship with Conlan, a lawyer who spent 1,600 hours representing J&J in the same matter. J&J's former lawyer is aligned with opposing counsel in the same matter where he represented J&J, actively seeking to undermine J&J's strategies to resolve this litigation, and the risk of confidential information being used by Birchfield and Beasley Allen has not been protected against. The Court should exercise its inherent power to remove Beasley Allen from the PSC, or alternatively, require Birchfield to explain why the impropriety of that relationship does not warrant removal.

## CONCLUSION

For all these reasons, Birchfield and Beasley Allen should be disqualified from representing plaintiffs in this MDL and removed from the PSC, or a show-cause order should issue.

DATED: December 29, 2023      Respectfully submitted,

/s/ *Stephen D. Brody*
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com

Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.:  973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson and LTL Management LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the Reply in Support of J&J's Motion for Entry of Order to Show Cause Why Andy Birchfield and Beasley Allen Should Not Be Disqualified From This Litigation or Removed From the Plaintiffs' Steering Committee were served electronically via the Court's CM/ECF system on December 29, 2023.  Copies are also being sent by email to Plaintiffs' Co-Lead Counsel.

By:   */s/ Stephen D. Brody*
Stephen D. Brody