# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2738 |
| *This Document Relates To All Cases* | Argument Date: January 16, 2024 |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' IMPROPER SUPPLEMENTAL REPORTS

**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Tel.: (973) 549-7000

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Tel.: (212) 735-3000

*Attorneys for Defendant Johnson & Johnson*

## **TABLE OF CONTENTS**

ARGUMENT..........................................................................................................2

I.    PLAINTIFFS' NEW DISCLOSURES VIOLATE THE COURT'S CASE MANAGEMENT ORDERS AND RULE 26......................................2

    A.    Plaintiffs' New Experts And Certain New Opinions From Their Previously Disclosed Experts Are Untimely. ......................................2

    B.    Plaintiffs Do Not Have Substantial Justification For The Untimely Designation Of New Experts And Opinions, And Their Admission Would Be Highly Prejudicial...................................4

        1.    Plaintiffs Fail To Establish Substantial Justification..................4

        2.    Plaintiffs Fail To Establish Harmlessness. ...............................6

CONCLUSION ...................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Page(s)**

*In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*,
   MDL No. 3043, 2023 U.S. Dist. LEXIS 224899, --- F. Supp. 3d ---
   - (S.D.N.Y. Dec. 18, 2023) ............................................................................... 7

*DeMarines v. KLM Royal Dutch Airlines*,
   580 F.2d 1193 (3d Cir. 1978) ............................................................................ 8

*In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
   MDL No. 2327, 2017 WL 4769657 (S.D. W. Va. July 21, 2017) ...................... 9

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
   559 F.2d 894 (3d Cir. 1977), *overruled on other grounds* ........................... 6, 10

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) ................................................................................ 8

*Raritan Baykeeper, Inc. v. NL Indus., Inc.*,
   No. 09-4117 (MAS) (DEA), 2022 U.S. Dist. LEXIS 47945 (D.N.J.
   Mar. 17, 2022) ................................................................................................... 6

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 37 ..................................................................................................... 6

Rule 26 ........................................................................................................ 2, 4, 7, 8

Rule 26(a)(2)(A) ....................................................................................................... 2

Rule 26(a)(2)(B) ................................................................................................... 2, 7

Rule 26(e) ................................................................................................................. 6

Rule 702 ................................................................................................................... 4

Although plaintiffs acknowledge that "[b]y the fall of 2021, this MDL was proceeding toward an MDL trial" (Pls.' Opp'n at 3), they nevertheless insist that they should be allowed to start from scratch, nearly double their stable of epidemiology experts, add a marketing expert and introduce a panoply of new opinions into this proceeding because defendants' unsuccessful bankruptcy petitions caused a "two-year delay in this MDL" (*id.* at 1).

In so arguing, plaintiffs have apparently forgotten that just a few months ago they told the Court that their forthcoming disclosures would be limited to "supplementing" their experts' previously served reports. (9/6/2023 Hr'g Tr. 13:17-22 (Mot. Ex. 1).) This is particularly troubling because plaintiffs surely knew by that point that they had retained, or were intending to imminently retain, completely new experts. Nor do plaintiffs explain why the "two-year delay" necessitates new experts, since their previous experts are still available.

Plaintiffs' complaint that defendants did not accept their "compromise" proposal also falls flat. An extension of deadlines would help mitigate some of the prejudice defendants are facing but could not cure the prejudice given the amount of time and effort that will be necessary to address all the new experts and opinions plaintiffs seek to inject into the litigation. Moreover, plaintiffs conditioned their "compromise" on the condition that defendants accept deposition dates unilaterally chosen by plaintiffs, immediately following the December holidays, in other

1

words, without adequate preparation. This is no compromise at all because it would have undermined defendants' ability to prepare adequately for the depositions. In any event, plaintiffs should not be rewarded for reneging on their statement to the Court and surprising defendants with four new experts and six significantly revised expert reports.[1]

## ARGUMENT

I. **PLAINTIFFS' NEW DISCLOSURES VIOLATE THE COURT'S CASE MANAGEMENT ORDERS AND RULE 26.**

    A. **Plaintiffs' New Experts And Certain New Opinions From Their Previously Disclosed Experts Are Untimely.**

Plaintiffs argue that the October CMO allowed them to expand their prior experts' opinions and add four entirely new experts into this litigation, years after general causation discovery and *Daubert* motion work had been completed. (*See* Pls.' Opp'n at 10-13.) Neither is true.

***First***, plaintiffs assert that the Case Management Order directed plaintiffs to serve new reports. (*Id.* at 11.) But the portion of the Order authorizing service of Rule 26(a)(2)(B) reports immediately follows the requirement that "Plaintiffs shall serve, ***if necessary***, ***supplemental and amended*** disclosures of all general and case-specific experts pursuant to Rule 26(a)(2)(A)." (Order ¶ 2, Oct. 10, 2023,

---

[1]    Defendants did accept deposition dates for plaintiffs' experts who had properly supplemented their reports only to address post-2021 developments.

2

ECF No. 28516 (emphasis added).) This context makes it clear that the written reports contemplated by the CMO were only intended to cover "supplemental and amended disclosures" necessitated by the passage of time.

Plaintiffs' contrary interpretation is illogical given that the CMO provided just two months for completing plaintiffs' expert depositions—a period that encompasses the Thanksgiving, Christmas and New Year holidays. The notion that the Court was inviting plaintiffs to introduce entirely new experts (including three new epidemiologists) into this MDL—who could be properly vetted, challenged and deposed in such a compressed period of time—is illogical.

***Second***, plaintiffs argue that the October CMO did not limit their previously designated experts to "supplement[ing] their opinions with new science and developments" because it "reference[s] both supplemental and *amended* disclosures." (Pls.' Opp'n at 12 (emphasis added).) But this argument is belied by plaintiffs' counsel's own representation to the Court that "any *amendment* to the expert reports . . . what we will be doing is simply *supplementing* any additional literature that they may have read." (9/6/2023 Hr'g Tr. 13:17-22 (emphases added).) In other words, plaintiffs themselves used the terms interchangeably. Plaintiffs also argue that the "parties were in agreement that *new* reports would be needed given the passage of time and new science." (Pls.' Opp'n at 12 (emphasis added) (citing 9/6/2023 Hr'g Tr. 16:10-14).) But that is not what defense counsel

3

said. Rather, defense counsel stated that the Court "shouldn't foreclose any arguments on Rule 702 that may have been raised before" because there have "been new articles" and changes to the applicable law (e.g., the recently adopted amendment to Rule 702), making a second look at the already-disclosed opinions appropriate. (9/6/2023 Hr'g Tr. 16:16-25.)

For these reasons, plaintiffs' various arguments that their recently served disclosures are timely should be rejected.

### B. Plaintiffs Do Not Have Substantial Justification For The Untimely Designation Of New Experts And Opinions, And Their Admission Would Be Highly Prejudicial.

Although plaintiffs argue that any violation of Rule 26 "was substantially justified and harmless" (Pls.' Opp'n at 13), they do not come close to carrying their burden of proving either.

#### 1. Plaintiffs Fail To Establish Substantial Justification.

Plaintiffs primarily argue that their interpretation of the CMO is "justified in light of the two-year delay" purportedly caused by defendants' bankruptcy petitions, going so far as to accuse defendants of engaging in "bad[] faith." (Pls.' Opp'n at 14; *see also id.* at 1-2 (similar).) But the fact that defendants pursued a bankruptcy strategy to reasonably resolve thousands of claims in this proceeding is not a reason (much less a substantial justification) for redoing the years of work undertaken by the parties in this proceeding. Rather, plaintiffs' attacks on

4

defendants' bankruptcy strategy are just a transparent attempt to distract the Court from plaintiffs' counsel's own statements to the Court, which inaccurately represented that their experts would be "*supplementing*" their previously disclosed opinions based on recent literature. (9/6/2023 Hr'g Tr. 13:17-22 (emphasis added).)

To the extent plaintiffs proffer any other "justifications," they are unavailing. For example, plaintiffs note that the deposition of defendants' corporate representative on marketing was completed after the July 2021 deadline, thereby justifying their belated disclosure of their marketing expert, Dr. George Newman. (Pls.' Opp'n at 4.) But that examination was completed "before the first bankruptcy filing" (*id.*), and plaintiffs never sought leave to amend their disclosures to include Dr. Newman prior to that filing. Nor did plaintiffs mention to the Court that they intended to retain such an expert at the September conference. Similarly, plaintiffs tout the fact that two of their new epidemiologists, Drs. Harlow and Rothman, published a relevant paper in 2020, while their third new epidemiologist, Dr. Cote, published one in 2016 (*id.* at 5-6), but that only underscores why these witnesses could have been designated much earlier.

Plaintiffs' claims regarding their other experts are similarly unpersuasive. Plaintiffs contend that Dr. David Kessler did not supplement his report in 2021 because, at that time, "he was serving as Chief Science Officer of the United States

5

COVID-19 Response" (Pls.' Opp'n at 7), but "proper expert supplementation under Rule 26(e) requires *timely* corrections of material errors or omissions," *Raritan Baykeeper, Inc. v. NL Indus., Inc.*, No. 09-4117 (MAS) (DEA), 2022 U.S. Dist. LEXIS 47945, at *9 (D.N.J. Mar. 17, 2022) (emphasis added), not a complete overhaul of previously disclosed opinions years later. And although plaintiffs claim that Dr. William Longo could not have performed an exposure analysis at the general-causation stage because "potential bellwether plaintiffs had not been identified" at that point in the proceedings (Pls.' Opp'n at 8), the identity of those claimants and the Colorado School of Mines methodology he purports to have used for his new opinions *were* known to Dr. Longo in July 2021.[2] In sum, plaintiffs have failed to carry their burden of establishing substantial justification.

### 2. Plaintiffs Fail To Establish Harmlessness.

With respect to harmlessness, plaintiffs argue that their untimely disclosures are harmless under the Third Circuit's "*Pennypack* Factors,"[3] which courts have

---

[2] Plaintiffs do not offer any reason why Dr. Levy did not disclose his case-specific testing opinions in July 2021, even though they are based on information available that time. And while plaintiffs argue that the new reports of their previously disclosed epidemiologists are justified based on "recently published scientific literature" (Pls.' Opp'n at 8), much of it (e.g., Gabriel 2019) was published well before the experts submitted their 2021 reports.

[3] These factors originated in a case called *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977), *overruled on other grounds*, which addressed the exclusion of evidence, pursuant to Fed. R. Civ. P. 37, for a party's failure to comply with a discovery order.

considered in assessing whether to exclude evidence that does not comply with the requirements of Rule 26 (i.e., prejudice/surprise, ability to cure the prejudice, the disruption of the proceedings and bad faith or willfulness). (*See* Pls.' Opp'n at 14-19.) As discussed below, however, these factors support defendants' position, not plaintiffs'.

*Surprise/prejudice.* According to plaintiffs, defendants have not suffered any prejudice because they "have been on notice of what would be part of this case for years." (Pls.' Opp'n at 14-15.) But the disclosure requirements of Rule 26 are "witness"-specific, and defendants clearly had no way of knowing that plaintiffs—contrary to their counsel's representations to the Court in September—would be adding completely new experts to this proceeding, much less preparing for what those previously unidentified witnesses would say. Fed. R. Civ. P. 26(a)(2)(B). Moreover, plaintiffs' sudden disclosure of four entirely new experts and new opinions from multiple previously designated witnesses would require the parties to redo years of work and unfairly postpone trial. Plaintiffs' touting of their new epidemiologists' supposed credentials proves as much. Plaintiffs argue that Dr. Rothman co-authored two textbooks on Epidemiology and has been cited "over 100,000 times" and that Dr. Cote "has published extensively in the realm of gynecologic cancers." (Pls.' Opp'n at 5.) Defendants have a fundamental right to review these materials and challenge each expert's methodology. *See In re*

7

*Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, MDL No. 3043, 2023 U.S. Dist. LEXIS 224899, at *55-56, --- F. Supp. 3d ---- (S.D.N.Y. Dec. 18, 2023) ("[E]ach application [of Bradford Hill] is distinct and should be analyzed for reliability.") (citation omitted).[4]

**Ability to cure prejudice.**  Plaintiffs also argue that defendants have conceded that "any prejudice can be cured by granting a four-week extension of the current deadlines." (Pls.' Opp'n at 16.)  That is simply not true.  Defendants' motions states that, "[i]f the Court denies defendants' requested relief" (i.e., the striking of the untimely disclosures), "it should, at a minimum, extend the current deadlines for completing expert-related discovery." (Mot. at 22-23.)  A four-week extension of deadlines would mitigate some of the prejudice caused by plaintiffs' dilatory disclosures, but it would not "cure" (i.e., eliminate) it, given the sheer number of new experts and new opinions covered by those disclosures.  Although plaintiffs also claim that defendants "have refused" to proceed with depositions and "rejected" plaintiffs' offer of an extension (Pls.' Opp'n at 16), plaintiffs' so-

---

[4]   Plaintiffs' authorities involved minor violations of Rule 26 and are inapposite. *See, e.g.*, *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1202 (3d Cir. 1978) (reversing the exclusion of expert testimony that was not precisely included in previously disclosed expert's report); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 792 (3d Cir. 1994) ("[T]here was only a slight deviation from pre-trial notice requirements, and admitting the witness was likely to cause only slight prejudice to the defendants, who were already aware of the basic substance of the witness' testimony.").

called offer required defendants to accept deposition dates in January (shortly after the holidays) for experts who had dramatically expanded their opinions and other experts who were never previously disclosed. Jamming defendants with unilaterally scheduled depositions immediately after the holidays creates prejudice rather than mitigates it. (*See* 11/30/2023 Email from Leigh O'Dell to Susan Sharko (Ex. 1 to Cert. of Susan Sharko).)

***Disruption of trial proceedings.*** Plaintiffs argue that their expert disclosures will not disrupt trial proceedings because discovery has not closed and no trial date has been set (Pls.' Opp'n at 17), ignoring the substantial amount of work necessitated by injecting four new experts and multiple other new opinions into this proceeding. That is the quintessence of disruption, particularly given "the realities of multidistrict litigation and the unique problems an MDL judge faces" in "ensuring that pretrial litigation flows as smoothly and efficiently as possible." *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2017 WL 4769657, at *2 (S.D. W. Va. July 21, 2017).[5]

---

[5] Plaintiffs contend that *In re Ethicon* and other cases cited by defendants are "inapposite" because those cases were more advanced (e.g., discovery had closed). (Pls.' Opp'n at 17-18 & n.12.) However, they miss the import of those authorities, which is that—even where "a trial date has not been set"—"[t]he MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively." *In re Ethicon*, 2017 WL 4769657, at *2 (citation omitted).

9

***Bad faith/willfulness.*** Finally, plaintiffs deny having engaged "in bad faith or intend[tion] to mislead." (Pls.' Opp'n at 18.) Defendants do not wish to use the term "bad faith" lightly. That said: counsel's failure to disclose at the hearing in September 2023 that plaintiffs would soon be serving reports from completely new experts and new opinions from existing experts is troubling. In any event, as plaintiffs' authorities recognize, bad faith/willfulness is generally only required for the "extreme" sanction of excluding "critical" evidence—e.g., "key" witnesses necessary for a plaintiff to prove his claims. *See Pennypack*, 559 F.2d at 904-05 (reversing exclusion of "key" fact witnesses who had not been previously disclosed given the "importan[ce] [of their] testimony . . . and how critical [their] absence" was). Plaintiffs are unable to satisfy this standard, particularly as to their new epidemiology experts, given that they already have four at their disposal.

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendants' opening motion, the Court should grant their motion to strike.

Dated: January 9, 2024            Respectfully submitted,

*/s/ Susan M. Sharko*
Susan M. Sharko
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Tel.: (973) 549-7000
susan.sharko@faegredrinker.com

10

Allison M. Brown
Jessica Davidson
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Tel.: (212) 735-3000
allison.brown@skadden.com
jessica.davidson@skadden.com

*Attorneys for Defendant Johnson & Johnson*