UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (MAS) (RLS) |

## OPINION AND SPECIAL MASTER ORDER NO. 17
## (DECIDING PLAINTIFFS' MOTION TO AMEND)

This matter is before the Special Master ("SM") on plaintiffs' "Renewed Motion for Leave to File a Second Amended Master Long Form Complaint." (Dkt. No. 26636).  The SM received defendants' opposition, plaintiffs' reply, supplemental briefs from the parties, and recently held oral argument.  For the reasons to be discussed, plaintiffs' motion is granted in part and denied in part.  Plaintiffs' motion is granted as to plaintiffs' request to add additional facts, to name LTL, Holdco, Kenvue, and Janssen as defendants, and to add new causes of action for assumption of duty, aiding and abetting, and acting in concert.  Plaintiffs' request to add an independent cause of action for spoliation is denied.

## BACKGROUND

The parties are thoroughly familiar with the background of this matter so only a concise summary will be provided.  This MDL addresses plaintiffs' claim that the prolonged perineal use of J&J's baby powder causes ovarian cancer.[1]  J&J has litigated cases for decades involving whether exposure to its baby powder causes cancer and whether talc in the baby powder contained asbestos.  J&J steadfastly denies plaintiffs' allegations.

---

[1] Unless otherwise indicated references to J&J and Johnson & Johnson will be used interchangeably.

This MDL was created on October 4, 2016.  At present it is estimated as many 50,000 cases have been filed.  On January 5, 2017, plaintiffs filed their Master Long Form Complaint naming the following defendants:  Johnson & Johnson ("J&J"), Johnson & Johnson Consumer Inc. n/k/a Johnson & Johnson Consumer Companies, Inc. ("J&J Consumer"), Imerys Talc America, Inc. f/k/a Luzenac America, Inc., f/k/a Rio Tinto Minerals, Inc. ("Imerys Talc"), and Personal Care Products Council ("PCPC").  As plaintiffs note, the Master Long Form Complaint is the foundational pleading in the litigation.  Memo. of Law at 2.[2]  As will be discussed herein, critically important is the fact that the Master Complaint does not name a particular plaintiff. Instead, each individual plaintiff is required to file a Short Form Complaint adopting the Counts in the Master Complaint that are relevant to her case.  Id.  On March 16, 2017, the First Amended Master Complaint was filed.

Discovery in the early stage of this MDL was bifurcated so Daubert issues could be addressed early.  Accordingly, the early discovery only focused on general causation fact and expert discovery.  On April 27, 2020, the Court issued its Daubert decision.  Not long afterwards, on December 22, 2020, plaintiffs filed their Motion for Leave to Amend Plaintiffs' First Amended Master Long Form Complaint.  While the motion was pending the J&J defendants engaged in a series of restructuring transactions that isolated J&J's talc liabilities into a new company – LTL.  On October 14, 2021, LTL filed its first petition for bankruptcy.  Thereafter, all J&J talc litigation, including this MDL, was stayed.  After plaintiffs obtained a favorable ruling from the Third Circuit, the bankruptcy court dismissed the LTL bankruptcy on April 4,

---

[2] A Master Complaint is a procedural device that facilitates streamlined litigation and does not affect the substantive rights of the parties.  In re Takata Airbag Prod. Liab. Litig., 193 F.Supp 3d 1324, 1332 (S.D. Fla. 2016); In re Mercedes Benz Tele Aid Contract Litig., 257 F.R.D. 46, 56 (D.N.J. 2009).  Although a single complaint is designated the Master Complaint, each civil action remains distinct for purposes of judgment.  In re Propulsid Prods. Liab. Litig., 208 F.R.D. 133, 141 (E.D. La. 2002).

2023. However, LTL re-filed for bankruptcy the same day. The bankruptcy court dismissed the filing on August 11, 2023. Plaintiffs' present motion to amend was filed days later on August 14, 2023.[3]

As to their December 22, 2020 motion to amend, plaintiffs sought leave to amend the First Amended Maser Complaint as follows: (1) to include new facts in support of plaintiffs' claim for fraudulent concealment; (2) to assert an independent cause of action for spoliation under the laws of five (5) states – Alaska, Connecticut, New Mexico, Ohio, and West Virginia; and (3) to identify with more specificity the alleged carcinogenic constituents in defendants' talcum powder products. Plaintiffs still request to make these amendments and in addition seek to amend their Master Complaint as follows: (1) to add additional facts and scientific information; (2) to add new corporate defendants; and (3) to add new causes of action for assumption of duty, aiding and abetting, and acting in concert. The new defendants that plaintiffs seek to add are LTL, Johnson & Johnson Holdco (NA), Inc. ("Holdco"), Kenvue, Inc. ("Kenvue"), and Janssen Pharmaceuticals, Inc. ("Janssen"). As to these new companies, plaintiffs make no allegations of direct liability. Instead, "[t]he allegations related to the new defendants are allegations that they are liable as successors in interest to the other corporate defendants." Nov. 21, 2023 Transcript ("Tr.") of Oral Argument 92:3-9.

Defendants oppose most but not all of plaintiffs' motion. As to plaintiffs' request to add new factual allegations there is no opposition. As to the request to add new defendants LTL, Holdco, Kenvue, and Janssen, defendants oppose the request except as to LTL. Defendants oppose the addition of the spoliation claim. As to the request to add the three new causes of

---

[3] Attached to the motion is plaintiffs' proposed Second Amended Master Long Form Complaint. (Hereinafter "SAMC"). (Dkt. No. 26636-2). The SAMC is 230 pages and asserts 36 Counts in 1,068 paragraphs.

6385447v1

action – assumption of duty, aiding and abetting and acting in concert – defendants oppose the request except as to the aiding and abetting claim.  In sum, defendants oppose plaintiffs' motion to amend as to:  (1) the request to add Holdco, Kenvue, and Janssen as named defendants; (2) the request to add a spoliation claim as to five states; and (3) the request to add claims for assumption of duty and acting in concert.  Defendants do not oppose:  (1) the addition of new factual allegations; (2) the request to add LTL as a defendant; and (3) the addition of an aiding and abetting cause of action.

## LEGAL DISCUSSION

### 1.   Plaintiffs' Leave to Amend

Pursuant to Fed. R. Civ. P. 15(a), leave to amend pleadings "shall be freely given when justice so requires."  Leave shall be freely given in the absence of undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice, or futility of the amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  "[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial [can] be grounded in bad faith or dilatory notice, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."  Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (emphasis in original) (quoting Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1196 (3d Cir. 1994)).

Getting to the crux of the matter, the SM finds that defendants' only viable defense to plaintiffs' motion is futility.  No evidence exists, and none has been raised, that plaintiffs' motion was filed in bad faith, with a dilatory motive, or that there have been repeated failures to cure

deficiencies in previous amendments.[4]  As to defendants' undue delay in filing argument, the argument has no merit.

Defendants argue plaintiffs' request to add claims for spoliation, assumption of duty, and acting in concert are untimely.  Defendants argue the factual allegations supporting plaintiffs' new claims were known by plaintiffs long ago and "to a large degree [are] already present in the operative master complaint."  Defts.' Memo. Of Law in Opp. ("Opp.") at 31.  Plaintiffs counter by arguing their proposed amendments assert new facts learned in general causation discovery taken after their Amended Master Complaint was filed.  Plaintiffs point out that after the discovery was taken, they promptly moved to amend their complaint, but their motion was not decided because of the bankruptcy stay.  Plaintiffs also point out that only days after the stay was lifted, they filed the present motion.

As noted, defendants' timeliness argument has no merit.  Liability discovery did not start until after April 27, 2020, and thousands of documents were produced after this date.  To a large extent, plaintiffs' amendment is based on facts learned during Daubert discovery as well as facts learned after liability discovery commenced.  Further, plaintiffs were diligent in moving to amend after the discovery was taken.  There is little question that there has been no undue delay that warrants denying plaintiffs' motion.

Defendants' undue delay argument is also rejected because defendants are not prejudiced by plaintiffs' amendment.  It has long been held that prejudice is the touchstone for the denial of leave to amend.  Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573

---

[4] The SM does not agree with plaintiffs that the standard to use when deciding whether to grant a Rule 15 motion to amend is whether the proposed amendment is frivolous.  See Plaintiffs' Reply Brief ("RB") at 5-6 ("The Amendments Proposed By The PSC [Plaintiffs' Steering Committee] Are Not Frivolous").  The appropriate standard to use is whether the proposed amendment is futile using the same standard used to evaluate a Rule 12 motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

6385447v1

F.2d 820, 823 (3d Cir. 1978).  In the absence of undue or substantial prejudice, leave to amend should be granted.  Long, 393 F.3d at 400.  Defendants' briefs offered no argument as to any prejudice they will suffer from plaintiffs' amendment.  At oral argument defendants argued they will be prejudiced because plaintiffs may take additional discovery to support their claims.  If this argument is accepted, then almost every motion to amend would be denied.  Further, if any additional discovery is necessary, which may be unlikely, the Court does not expect it to be extensive, burdensome, or undue.  Decades of discovery already exist and plaintiffs have the benefit of using relevant discovery taken in related pending talc litigation.  To show undue prejudice defendants must demonstrate that they will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence" if amendment is allowed.  Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).  Defendants have not made this showing.

The crux of defendants' argument is that plaintiffs' proposed new claims are futile. Futility means that the amended claims fail to state a claim upon which relief may be granted.  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434.  In assessing futility, a court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).  Id.  The court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 663, 679 (2009).  "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."  Harrison Beverage Co. v. Dribeck Importers Inc., 133 F.R.D. 463, 468 (D.N.J. 1990).  Given the liberal standard for amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile."  Pharmaceuticals Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000).  Since futility is defendants' only viable defense to plaintiffs' motion, the defense will be examined in detail.

2. **Plaintiffs' Request for Leave to Join Holdco, Kenvue, and Janssen is Granted**[5]

For two main reasons plaintiffs' motion addressing the proposed new defendants is not straightforward. One, we are dealing with an MDL with plaintiffs likely from all 50 states. Thus, it is not clear what state's law applies to the successor liability question. Two, plaintiffs are not seeking to amend a specific plaintiff's complaint, but instead are seeking to amend a nameless Master Long Form Complaint. This complicates the conflict of laws analysis. In order to address plaintiffs' request to name Holdco, Kenvue, and Janssen, a multi-part analysis must be done. After summarizing the relevant corporate history, the Special Master has to decide what state's law to apply to the successor liability issue. Then the elements of the product line and mere continuation theories of corporate liability must be identified. Last, it must be decided if plaintiffs' SAMC plausibly pleads a cause of action under these theories.

A. **Relevant Corporate History**

Despite the mind-numbing complexity of Johnson & Johnson's corporate history, an attempt will be made to provide a brief summary.[6] J&J first began selling Johnson's Baby Powder in 1894. SAMC ¶ 38a. Old JJCI or Johnson & Johnson Consumer, Inc. came into existence in 2015 and included all former names and historical forms of the company. Id. at ¶ 38f. In October 2021, J&J and Old JJCI completed a corporate restructuring. As a result, Old JJCI ceased to exist and two new entities were created: LTL and "New JJCI" (a/k/a Johnson & Johnson Consumer, Inc.). Id. at ¶ 19. Shortly after its creation, LTL filed for bankruptcy. According to Kim, LTL was allocated certain of Old JJCI's assets and became solely responsible

---

[5] Defendants do not oppose plaintiffs' request for leave to join LTL.

[6] The history is largely taken from the Declaration of John K. Kim ("Kim Decl.") which is incorporated into plaintiffs' SAMC. See SAMC ¶¶ 9, 38.

6385447v1

for the talc-related liabilities of Old JJCI.  Kim Decl. ¶ 24.  New JJCI was allocated all other

assets of Old JJCI and became solely responsible for all other liabilities of Old JJCI.  Id.  In

December 2022, New JJCI changed its name to Johnson & Johnson Holdco (NA), Inc.  SAMC

¶ 50.  In early January 2023, Holdco transferred its consumer business to its parent entity –

Janssen.  SAMC ¶¶ 51-52; Kim Decl. ¶ 26.  As to Kenvue, plaintiffs allege it is a subsidiary of

J&J.  SAMC ¶ 55.  Plaintiffs allege New JJCI moved its assets and businesses to Kenvue by

transfers through JJCI's direct parent, Janssen.  Plaintiffs further allege Holdco transferred its

consumer business assets to Janssen, which transferred the assets to Kenvue.  See Nesko v.

Johnson & Johnson, et al., Dkt. No. ATL-L-000741-23, Case No. 300 at 10 (Atl. Cty. Super Ct.

of New Jersey Sept. 27, 2033) ("Nesko").

## B.    Conflict of Laws

Having summarized the relevant corporate history the SM must decide what state's

substantive law to apply to evaluate the alleged successor liability of Holdco, Kenvue, and

Janssen.  This analysis starts with deciding what state's choice of law rule to apply.  This answer

is not straightforward given that this is a sprawling MDL with litigants likely from all 50 states

with the certainty that conflicts of law exist.  In addition, plaintiffs are seeking to amend a

Master Complaint that does name a specific plaintiff.

Generally, an MDL court will apply the choice of law principles of the transferor court.

In re Johnson & Johnson Talcum Powder Prods. Mktg. Sales Pracs., and Prods. Liab. Litig., 553

F. Supp. 3d 211, 219 (D.N.J. 2021) (citation omitted).  For direct filed cases, the MDL court

ordinarily applies the choice of law rules of "a court sitting in the state where the case

originated."  Sanchez v. Bos. Sci. Corp., No. 2:12-cv-05762, 2014 WL 202787, at * 3-4 (S.D. W.

Va. Jan. 17, 2014).  As to cases directly filed in this MDL, the parties agreed on the law to apply

when individual cases are remanded or set for trial.  See Case Management Order No. 2,

paragraph H (February 7, 2017).  This Order provides:

> All parties stipulate and agree that in any case filed pursuant to this Order, choice of law determinations shall be made in accordance with the law of the jurisdiction that would apply to the action had the matter been initially filed in the Original District.  The term Original District as used in this Direct Filing Order refers to the jurisdiction designated by the Plaintiff in paragraph 10 of the Short Form Complaint, i.e., the district to which the Plaintiff seeks transfer upon completion of pretrial proceedings.

Based on applicable precedent, the likely originating jurisdiction in this talc MDL is the

place where the plaintiff purchased and used defendants' baby powder.  Sanchez, 2014 WL

202787 at *4 (in prescription drug MDL, the originating jurisdiction is the place where the drug

was purchased and prescribed); In re Yasmin and Yaz (Drospirenone) Mktg., Sales Pracs. and

Prod. Liab. Litig., No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *6 (S.D. Ill. April 12,

2011) (same).  Thus, ordinarily when it comes time to address a specific plaintiff's claim of

successor liability the court must do a separate analysis for each plaintiff to decide what conflict

of law rule to apply.  In re General Motors LLC Ignition Switch Litig., No. 14-MC-2543(JMF),

2017 WL 3382071, at *9 (S.D.N.Y. Aug. 3, 2017) ("Accordingly, laborious though it may be,

the Court concludes that it must look to the law of each individual jurisdiction at issue to

determine what substantive law to apply in assessing Plaintiffs' successor liability claims."); see

also In re Yasmin, 2011 WL 1375011 at 7-8, 10-15.  As a practical matter, however, "[w]hile

this choice of law analysis may seem like a particularly laborious task, the answer is quite simple

– the law of each plaintiff's home state should be applied" given plaintiff likely purchased the

product there and consumed the product and was injured there.  In re Valsartan, Losartan, &

Irbesartan Prod. Liab. Litig., No. MDL 2875 (RBK/KW), 2021 WL 307486, at *8 (D.N.J. Jan.

29, 2021).  Further, "each plaintiff's home state has the greater interest in protecting its

consumers from in-state injuries by foreign corporations and in delineating the scope of recovery for its citizens than any other state does." Id.  When and if the cases in this MDL are listed and/or remanded for trial, therefore, the choice of law to apply is likely to be known, the remanded state.  Unfortunately, however, this does not help here because the choice of law rule to apply is presented in the context of a motion to amend a Master Complaint that does not name a specific plaintiff.

Rather than conducting a 50-state analysis of successor liability and choice of law case law, for present purposes the SM will follow the prudent approach taken in In Re: Accutane Litigation, 235 N.J. 229 (2018).  Accutane was a consolidated action consisting of 532 product liability claims involving 18 New Jersey residents and 514 residents from 44 other jurisdictions.  A key issue in the case was the adequacy of the defendants' warnings regarding Accutane and whether New Jersey's Product Liability Law or the law of 44 different jurisdictions applied to evaluate the adequacy of the warnings.  Instead of analyzing the failure to warn case law in different jurisdictions, the New Jersey Supreme Court decided it was appropriate to apply the law of the state with the most significant relationship with the parties and occurrence.  According to Accutane, the trial court has the discretion in a complex case with many parties to use the "most significant relationship" test set forth in sections 6, 145, and 146 of the Restatement (Second) of Conflict of Laws (the "Restatement") and apply the law of a single state to claims asserted against all defendants.  Id. at 258-59 (citation omitted).  The decision reasoned, "[a]pplying a single standard … in the 532 individual cases will ensure predictable and uniform results – rather than disparate outcomes among similarly situated plaintiffs[.]"  Id. at 263.  In addition, the decision reasoned that applying the law of a single state to decide an issue of

successor liability in the context of a motion to amend will remove the fortuity of the place where individual plaintiffs reside and where the injury occurred.  Id. at 263-64.

The analysis used in Accutane will be adopted here.  In the context of deciding plaintiffs' motion to amend, and not for deciding the ultimate liability of Holdco, Kenvue, and Janssen, the law of the state with the most significant relationship to the parties and occurrence will be applied.  As a practical matter using the most significant relationship test is the same result that occurs if typical conflict of law rules apply.  When parties consent to filing a Master Complaint the transferee court (here, New Jersey) becomes the forum court, and the choice of law rules of the transferee court's forum state (New Jersey) apply.  In re January 21 Short Squeeze Trading Litigation, 584 F. Supp. 3d 1161, 1179 (S.D. Fla. 2022) (citation omitted).  As the parties know, New Jersey uses the most significant relationship test in its conflict of law analysis.  P.V., by her Guardian Ad Litem v. Camp Jaycee, 197 N.J. 132, 136 (2008).

To decide which state has the most significant relationship, the factors in Restatement §§146, 145, and 6 are examined.  Under § 146, there is a presumption that the laws of the state where the injury occurred applies.  Accutane, 235 N.J. at 259.  However, this presumption may be overcome if some other state has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts.  Id.  For present purposes, the SM decides that New Jersey has the most significant relationship to the parties and occurrence and its law will apply to decide if plaintiffs have pleaded plausible successor liability claims against Holdco, Kenvue, and Janssen.  Not only is New Jersey the forum state, but Holdco and Janssen are also New Jersey corporations and Holdco, Kenvue, and Janssen have their principal places of

business in the state.[7]  See Hayden Capital USA, LLC v. Northstar Agri Industries, LLC, No. 11 Civ. 594 (DAB), 2012 WL 1449257, at *7 (S.D.N.Y. Apr. 12, 2012) (citations omitted) (successor liability claims implicate questions of corporate liability for the acts of others, and the state of incorporation has the greater interest in the claims).[8]

To be sure, the SM makes it clear it is not deciding the merits of plaintiffs' claims and what law will apply at trial or if a motion for summary judgment is filed.  The only issue addressed and decided is what state's law applies to decide plaintiffs' motion to amend.  As to this choice of law holding, defendants can take solace from the decision in Krys v. Aaron, 106 F. Supp. 3d 472 (D.N.J. 2015).  In that case, after an MDL court in New York decided what law would apply in the context of a motion to dismiss, the case was transferred for final disposition to New Jersey.  In connection with the defendant's motion for summary judgment filed in New Jersey, the plaintiff argued the choice of law decision of the New York Special Master was the "law of the case."  The New Jersey court rejected this argument and ruled that the MDL court's choice of law ruling was not binding.  The Court reasoned that the MDL court did not "actually and fully consider[ ] the choice of law issue in the manner required to arguably preclude a subsequent judicial determination."  Id. at 480.  The New Jersey court reasoned that the MDL court's decision occurred prior to discovery on the relevant issues and based solely on the

---

[7] There appears to be some confusion as to whether Holdco is a Texas or New Jersey corporation.  In the absence of documentary proof, the SM assumes Holdco is a New Jersey corporation as this is stated in the Nesko opinion. Nesko at 3.  More uncertainty exists because of Judge Viscomi's decision in Pressler, et al. v. Kenvue, Inc., et al., MDL-L-001944-23 (Superior Court of NJ, Middlesex Cty., June 1, 2023).  In the court's "Statement of Reasons" it wrote that Kenvue, Janssen, and Holdco are all New Jersey corporations.  However, even if Holdco is a Texas corporation it would not change the result.

[8] In most instances the law of the state of incorporation governs attempts to disregard the corporate entity.  Secon Service System, Inc. v. St. Joseph Bank and Trust Co., 855 F.2d 406, 413 (7th Cir. 1988).  However, this approach is not universal.  See Diebler v. San Medica International, LLC, C.A. No. 19-20155 (NLH/MJS), 2021 WL 5013617, at *8 (D.N.J. Oct. 28, 2021).

-12-

allegations in the plaintiffs' Amended Complaint.  Id.  The court further reasoned that the factual

inquiry necessary for the choice of law analysis was inappropriate or impossible at the motion to

dismiss stage when little or no discovery had taken place.  Id. at 481.  The court concluded "that

the Special Master's conclusion at the pleadings phase constitutes little more than a 'preliminary'

and 'not case-dispositive' finding and, as a result, proves insufficient to set the law of the

case[.]"  Id.  Similarly, the ruling on plaintiffs' motion to amend is not the "law of the case" or

dispositive as to what law applies when an individual case is remanded or goes to trial.

### C.   The Product Line and Mere Continuation Theories of Successor Liability

Plaintiffs pursue two theories of lability as to why Holdco, Kenvue, and Janssen may be

liable on a successor liability theory.  Plaintiffs first argue each of the companies is liable under

the product line exception to the traditional analysis of corporate successor liability.  Second,

plaintiffs argue the new parties may be liable since they are a mere continuation of a prior

responsible corporation, namely Old JJCI.  McKee v. Harris-Seybold Co., 109 N.J. Super. 555,

561, aff'd, 118 N.J. Super. 480 (App. Div. 1972).

The seminal New Jersey case addressing the product line exception is Ramirez v. Amsted

Industries, Inc., 86 N.J. 332 (1981).  Ramirez held:

> [W]here one corporation acquires all or substantially all the
> manufacturing assets of another corporation, even if exclusively
> for cash, and undertakes essentially the same manufacturing
> precaution as to selling corporation, the purchasing corporation is
> strictly liable for injuries caused by defects in units of the same
> product line, even if previously manufactured and distributed by
> the selling corporation or its predecessor.

Id. at 358.  As noted in Ramirez, the product line theory of liability is not concerned with the

continuation of the corporate entity but instead focuses on the "successor's undertaking to

manufacture essentially the same line of products as the predecessor."  Id. at 347.  Important to

-13-

this analysis is whether the successor corporation enjoyed the trade name, goodwill, and the continuation of an established manufacturing enterprise.  Id. at 352.  As noted in Ramirez, a strong reason for imposing successor liability is where the successor "benefits from trading its product line on the name of the predecessor and takes advantage from the accumulated good will, business reputation and established customers."  Id. at 358; see also LaPollo by LaPollo v. General Elec. Co., 664 F. Supp. 178, 181 (D.N.J. 1987) (citing Ramirez and holding that "social policies underlying strict products liability [are] best served by extending liability to a successor when it acquires the predecessor's business assets, continues its product line, and enjoys various concomitant benefits such as the name, good will and business reputation of the predecessor.").[9]

The mere continuation theory of liability is an exception to the general rule of corporate law which holds that where one company sells or transfers its assets to another, the successor does not become liable for the transferor's debts and liabilities, including torts.  Polius v. Clark Equipment Co., 802 F.2d 75, 77 (3d Cir. 1986).  A key factor to consider in determining liability is continuity of the seller's enterprise, through management, personnel, physical location, assets, and general business operations.  Turner v. Bituminous Casualty Co., 397 Mich. 406, 430, 244 N.W.2d 873, 882 (1976).  Some other relevant factors are a common identity of stock, directors, and stockholders, and the existence of only one corporation at the completion of the transfer.  Travis v. Harris Corp., 565 F.2d 443, 447 (7th Cir. 1977); see also Potwora ex rel. Gray v. Grip, 319 N.J. Super. 386, 406-407 (App. Div. 2002) (noting the mere continuation exception depends on whether the plaintiff is able to establish continuity in management, shareholders, personnel,

---

[9] Defendants argue Delaware, where Kenvue is incorporated, does not recognize the product line exception.  Memo. of Law at 3.  However, it has already been held that for present purposes New Jersey law applies to evaluate plaintiffs' successor liability claims.  This holding is without prejudice to Kenvue's right to raise its defense under Delaware law when the claim of a specific plaintiff is at issue.

physical location, assets, and general business operations between selling and purchasing corporations following the asset acquisition).

### D.     Plaintiffs SAMC Plausibly Pleads a Claim of Successor Liability

Having analyzed the allegations in the SAMC in detail, the answer to whether plaintiffs plead a plausible successor liability cause of action against Holdco, Kenvue, and Janssen is yes. Plaintiffs allege, inter alia, that at all relevant times Old JJCI, New JJCI, Holdco, and Janssen were in the business of "manufacturing, formulating, marketing, testing, promoting, selling and/or distributing" the talcum powder containing products known as Johnson's Baby Powder and Shower to Shower. SAMC ¶¶ 6, 8, 11, 15, and 18. Plaintiffs also allege New JJCI and Janssen are and have been "under the complete dominion and control" of Johnson & Johnson. Id. ¶ 16. Plaintiffs further allege, New JJCI continued to sell J&J Baby Powder as Old JJCI had done (¶ 45), Janssen received all of JJCI's assets used to manufacture, market, and sell J&J Baby Powder (¶ 52), and Holdco and Janssen are successors to Old JJCI and responsible for the tortious conduct of Old JJCI (¶ 53). In addition, plaintiffs allege the new J&J Defendants function the same as Old JJCI, manufacture the same product, have the same leadership and ownership, and use the same Johnson's Baby Powder brand and manufacturing assets. As a result, the "new JJCI Defendants are simply old JJCI reconstituted[.]" RB at 11. These allegations support plaintiffs' position that their SAMC plausibly pleads that Holdco, Kenvue, and Janssen may be liable under the product line and continuation theories of liability.

As to Kenvue, plaintiffs allege that its SEC registration filing states that it sells Johnson's Baby Powder in the United States (SAMC ¶¶ 56, 61), that Kenvue "acknowledges itself as the company responsible for the manufacture of Johnson's Baby Powder" (¶ 58), that Kenvue acknowledges it is responsible for all liabilities resulting from exposure to talc outside the United States or Canada (¶ 59), that Kenvue is responsible individually and as successor to all

predecessor entities involved in the manufacturing, marketing and sale of asbestos-containing talc (¶ 60), that Kenvue seeks to benefit from the historical sale of Johnson's Baby Powder (¶¶ 62, 67), that even today it is possible to buy talc-based Johnson's Baby Powder online (¶ 64), that Kenvue lists Johnson's as one of its "iconic brands" (¶ 65), and that Kenvue continues to market the reformulated line of Johnson's baby products "under the trusted Johnson's brand name" (¶ 67). Plaintiffs argue defendants' corporate changes "did nothing to change Defendants' consumer products business. Janssen and Kenvue continued running the business as old JJCI had before." RB at 11.

Taken together, plaintiffs' SAMC adequately and plausibly pleads that Holdco, Kenvue, and Janssen may be liable under a product line or mere continuation theory of liability. Without weighing in on the merits of plaintiffs' allegations, the SM agrees with plaintiffs that they have sufficiently alleged that the new defendants continued manufacturing and marketing the Johnson's Baby Powder product-line, a reformulated product that is functionally the same and serves the same purpose, uses the same name, and is marketed to the same audience, as defendants' historical baby powder. RB at 13. The SM also agrees with plaintiffs that they plausibly alleged that the new defendants continue to use and profit from Johnson's trademark, branding, and goodwill. Id. Under New Jersey law, a corporation "cannot avoid liability for the product it manufactured by simply transferring all … operations, assets, and accompanying obligations" to another corporation. Arevalo v. Saginaw Mach. Sys., Inc., 344 N.J. Super. 490, 498, 501-02 (App. Div. 2001).

To a large extent, defendants' arguments are premature in that they raise fact questions not appropriate for disposition at this time. When applying a motion to dismiss standard under Rule 12(b)(6) a court may only consider the allegations contained in the pleading to determine its

sufficiency.  In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016) (citation omitted).  For example, defendants argue no goodwill was transferred as none exists with regard to defendants' baby powder.  Whether or not this is true is a fact question. Defendants also argue Janssen only held relevant assets for 24 hours.  This contention is not pleaded in the SAMC and may not be considered at this time.  The same holds true for defendants' argument that, although Janssen held "liabilities" originally held by Holdco, it did not include talc.  Opp. at 26.  Since this allegation was not included in the SAMC, it may not be considered now.  Defendants argue Holdco and Janssen do not manufacture cosmetic products. Opp. at 2.  However, this contention conflicts with the allegations in plaintiffs' SAMC (see ¶¶ 6, 8, 11, 15, and 18) which for present purposes must be assumed as true.  Defendants argue Holdco, Kenvue, and Janssen did not produce the product line at issue, Kenvue and Janssen are managed independently from Holdco, and Janssen operates in a "different field" from Holdco. Opp. at 3.  These contentions raise fact questions to be addressed at a later time.  In addition, defendants argue the intent of the contracting parties is important to deciding if the continuation theory of liability applies.  Opp. at 23-24.  This plainly cannot be evaluated using a motion to dismiss standard.  See Pressler, et al. v. Kenvue, Inc., et al., supra, wherein Judge Viscomi denied the motion to dismiss filed by Kenvue, Janssen, and Holdco and held, "[a] full record must be developed based on appropriate discovery as to the successor liability issue."

The SM's decision is in accord with Nesko, supra, which reached a similar result when it decided the motion to dismiss filed by Johnson & Johnson, Holdco, Kenvue, and Janssen in New Jersey state court based upon essentially the same allegations presented here.  Applying New Jersey law, the Nesko court held that the plaintiffs adequately pleaded Holdco, Kenvue. and Janssen could be liable as successor corporations.  The court found, similar to this holding, that

since plaintiffs' complaint adequately pleaded the new parties allegedly took over the Old JJCI business, and that under New Jersey law "talc-related liabilities follow the talc-related manufacturing assets and operations," plaintiffs adequately pleaded a successor liability cause of action.  Nesko at 14.  In addition, Nesko held that since plaintiff pleaded that Janssen and later Kenvue continued operating the business in the same manner as Old JJCI, plaintiffs adequately pleaded that Kenvue held and continues to hold itself out as Old JJCI, and that Kenvue continues to enjoy and profit from Old JJCI's goodwill.  Id. at 14-15.

Defendants cite to the decision in LaSalle v. American International Industries, No. 23-2-08165-0-SEA (Superior Ct. of Wash., Kings Cty., Sept. 12, 2023), which granted the motion to dismiss filed by Holdco and Kenvue.  The decision is not controlling as it was decided under Washington and not New Jersey law.  Nor does the decision discuss in meaningful detail the allegations in the Washington plaintiffs' complaint and thus it is not known how they compare to the allegations in the SAMC.  In any event, it is not surprising that different courts may come to different results given that the laws of each state differ as do the allegations pleaded in the operative complaint.

**3.    Spoliation Claim**

As noted, plaintiffs seek an amendment to assert a standalone spoliation cause of action under the laws of the States of Alaska, Connecticut, New Mexico, Ohio, and West Virginia.[10] Plaintiffs posit that these are the only states that recognize an independent cause of action for spoliation.  The gravamen of plaintiffs' claim is that when J&J was under a duty to preserve evidence, J&J intentionally destroyed or discarded evidence relevant to proving that exposure to

---

[10] Plaintiffs do not identify whether plaintiffs who filed complaints in this MDL are from these states and, if so, how many.

Johnson's Baby Powder causes ovarian cancer and/or that the talc in the baby powder contained asbestos.  Plaintiffs plead, inter alia, that J&J failed to preserve historical talc samples, failed to preserve its litigation files from cases alleging exposure to talc caused the plaintiffs' injuries, and intentionally destroyed records from its Hammondsville, Vermont mining operations.  See generally SAMC at ¶¶ 257-303.  J&J denies the allegations.

Although there are some differences amongst the five states at issue as to the precise requirements to make out a spoilation claim, the parties agree there are three essential elements to a viable cause of action:  (1) the existence of a duty to preserve evidence at the time of the alleged spoilation; (2) the absence of the evidence prejudiced plaintiffs' ability to prove their claims; and (3) relevant evidence was destroyed with a culpable state of mind, i.e., in bad faith or with a specific intent to defeat a lawsuit.  Defendants argue plaintiffs SAMC does not plausibly plead these essential elements.

### A.      Duty

As to whether defendants had a duty to preserve relevant evidence, the parties do not disagree that a duty exists when a party reasonably anticipates or foresees future litigation. Plaintiffs argue that as early as 1969 but no later than 1971, J&J was under a duty to preserve relevant evidence regarding claims that exposure to talc caused injuries.  Defendants argue the duty did not arise until 2017 even though they acknowledge J&J instituted a litigation hold in 2000.  While the parties dispute the exact date defendants' duty to preserve relevant talc evidence arose and the scope of the duty, the fact that a duty existed at some time is not disputed. Plaintiffs' SAMC is replete with allegations that defendants were named in talc lawsuits filed decades ago, and that the scientific community regularly investigated talc's safety going back to the 1970s.  SAMC ¶¶ 210-400, 1044-51; see also Lanzo v. Cyprus Amax Minerals Company, 467 N.J. Super. 476, 520-25 (App. Div. 2021) (the record shows that Imerys knew or should

-19-

have known individuals would bring claims and allege they suffered asbestos-related illnesses caused by their use of J&J products made with talc).

Defendants' arguments as to whether plaintiffs plausibly alleged a duty to preserve relevant evidence regarding the safety of its talc and baby powder raises fact questions not appropriate for disposition on a motion to dismiss.  Defendants argue plaintiffs did not plausibly allege that a duty to preserve evidence arose because the first lawsuit plaintiffs refer to was not filed until 1979 and the cases filed in the 1970s and 1980s did not involve cosmetic talc or ovarian cancer.  Defts.' Memo. Of Law in Opp. to First Amended Master Complaint (Dkt. No. 16334) ("Spoliation Opp.") at 15.  Defendants also argue the duty to preserve evidence did not arise as early as plaintiffs claim because only a "handful of lawsuits [were] filed in the 1990's involving the J&J defendants' cosmetic talc products and allegedly asbestos related injuries[.]"  Id. at 15-16.  Defendants also argue a duty to preserve evidence in mass tort litigation only arises when there is a steady increase in filed cases suggesting the prospect of substantial product liability litigation.  Id. at 16.  Defendants' arguments are off the mark. Whether claims involving industrial talc are sufficiently related to cosmetic talc to create a duty to preserve talc evidence, and when and how much talc litigation is necessary to trigger a duty to preserve, are fact questions not appropriate for disposition in the context of defendants' motion to dismiss.  Although the precise parameters of defendants' duty to preserve relevant talc evidence remains to be determined, such as when the duty to preserve first arose and what evidence should have been preserved, plaintiffs plausibly allege that a duty to preserve relevant talc evidence arose at some time during the time period relevant to plaintiffs' claims in this MDL.

-20-

When arguing the spoliation issue the parties spend a good deal of effort addressing two cases – Rimondi v. BASF Catalysts LLC, et al., No. MID-2912-17AS (N.J. Super. Ct. Law Div. Feb. 22, 2019) and Hayes v. Colgate-Palmolive Co., No. 16-CI-003503 (Ky. Cir. Ct. April 12, 2019), No. 16-CI-003503 (Ky. Cir. Ct. April 12, 2019).  Since these cases addressed whether an adverse inference instruction should be given, the cases are not controlling because the dispositive issue here is whether plaintiffs pleaded a plausible spoliation claim sufficient to defeat a motion to dismiss.[11]

**B.**     **Prejudice**

The parties agree an element of plaintiffs' proposed spoliation claim is that plaintiffs must show the alleged spoliation prejudiced their ability to prove their underlying claims.  J&J points out that the laws of Connecticut, New Mexico, Ohio, and West Virginia require "[a]n inability to prevail in the civil action" and that the spoliated evidence must be "vital to the plaintiff's case."  Spoliation Opp. at 25.  According to J&J it is not enough to allege that missing evidence is "relevant, admissible, or even highly probative."  Id. (citation omitted).  Defendants argue plaintiffs' proposed spoliation claim is destined to fail under any of the relevant states' laws because the proposed SAMC does not adequately plead that the supposed spoliation has hindered plaintiffs' ability to prove their underlying claims – much less sufficiently allege an actual inability to prevail.  Id. at 34.  Plaintiffs counter that they pleaded they have been damaged by defendants' spoliation.  RB at 14.

---

[11] The parties agree they have not cited any cases addressing whether a plaintiff may assert spoliation as an independent or standalone cause of action.  It bears repeating that no decision is being made as to the truth of plaintiffs' allegations or whether plaintiffs will succeed on their claims.  The only issue being decided is whether plaintiffs plausibly alleged a viable spoliation claim.

6385447v1

Having reviewed Plaintiffs' SAMC in detail, the Special Master finds that plaintiffs have plausibly alleged they have been materially hindered and prejudiced by defendants' alleged spoliation.  See generally SAMC ¶¶ 257-303.  For example, plaintiffs allege that by 1971 J&J knew information and documents in its possession would be relevant to future talc cases.  Id. at ¶¶ 267, 268.  Plaintiffs further allege the "[t]he missing scientific data is of utmost importance to the fair and proper vetting of Johnson & Johnson's defense."  Id. at ¶ 281.  In addition, plaintiffs allege they "have been damaged as a result of Defendants' intentional spoliation because the absence of the spoliated evidence limits Plaintiffs' ability to present and prove their cases."  Id. at ¶ 1051.  Taken together, and giving plaintiffs the benefit, as it must, of all inference from their averments, the SM finds that plaintiffs plausibly plead enough to satisfy that they have been materially prejudiced by J&J's alleged spoliation.  The fact that plaintiffs did not use the magic word that the spoliated evidence was "vital" to their case is not fatal.  This is a fair inference from plaintiffs' allegations.

### C.    Bad Faith

Although plaintiffs have plausibly alleged defendants had a duty to preserve evidence and they were materially prejudiced by defendants' alleged spoliation, this is not enough to make out an independent cause of action for spoliation.  Plaintiffs must also plausibly allege that defendants spoliated evidence in bad faith.  Under the applicable case law, plaintiffs must allege defendants spoliated evidence with the intent to defeat plaintiffs' claims.  To prevail "it must be shown that the evidence was destroyed with the specific intent to defeat a pending or potential lawsuit."  Mullins v. Ethicon Inc., No. 2:12-cv-02952, 2016 WL 6836941, at *4 (S.D. W. Va. Nov. 18, 2016) (citation omitted); Newberry v. Silverman, 789 F.3d 636, 647 (6th Cir. 2015) (affirming dismissal of spoliation claim where it was not alleged records were destroyed to hinder the plaintiffs' claims).  Plaintiffs agree as to their burden of proof.  See Memo. of Law

at 8-9 ("Plaintiffs generally must allege … destruction of … evidence with a culpable state of mind designed to disrupt the opposing party's case; … [t]he tort of intentional spoliation of evidence consists of the following element[ ] … willful destruction of evidence [with the] intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action[.]"). However, while plaintiffs cite to the legal standard they must meet, their spoliation claim fails because the SAMC does not plausibly allege defendants acted with the requisite intent to defeat their claims. Therefore, plaintiffs' motion is denied as it relates to their proposed spoliation claim.

While plaintiffs' SAMC pleads in numerous instances that defendants intentionally spoliated relevant evidence, nowhere do plaintiffs plead that evidence was destroyed with the intent to defeat plaintiffs' claims. This is fatal to plaintiffs' claim. It is not a fair or reasonable inference to draw the required intent element from the fact that evidence was intentionally destroyed. There may have been different reasons why this occurred, for example, inadvertence, negligence, regularly scheduled document destruction, etc. The point is that in the absence of an allegation addressing defendants' intent, plaintiffs' spoliation claim fails. It is not a fair inference that evidence was intentionally destroyed for a nefarious purpose simply because evidence was intentionally destroyed.

At oral argument plaintiffs pointed to the allegations in SAMC ¶¶ 257-303, 1044-1051, and 187 in an attempt to salvage their spoliation claim. However, these allegations do not cure the deficiencies in the SAMC. As noted, although the allegations in ¶¶ 257-303 ("Johnson & Johnson Destroyed or Secreted Away Relevant Evidence") address the intentional destruction of evidence, they do not allege anything about defendants' intent or why they allegedly

-23-

intentionally destroyed evidence.  Moreover, although plaintiffs focus on Paragraph 187, this paragraph merely alleges that defendants:

> [D]eliberately chose to ignore the health and safety issues raised in the data and embarked upon a plan of deception intended to deprive the public at large, including plaintiffs, of alarming medical and scientific findings surrounding the subject of asbestos containing talc and talcum provider products many of which remained in their exclusive possession and under their exclusive control.

The paragraph does not address defendants' intent.  While paragraph 187 may be relevant to plaintiffs' fraudulent concealment claim, it does not satisfy the intent requirement of plaintiffs' proposed spoliation claim.  Thus, plaintiffs' motion to amend is denied as to plaintiffs' proposed spoliation claim.  In addition, although not dispositive, it is worth noting that for decades plaintiffs have been litigating talc and baby powder cases.  In connection with the litigation, thousands of deposition pages have been generated, hundreds of depositions have likely been taken, and scores of cases have gone to trial.  Nonetheless, no plausible allegation has been made that defendants spoliated evidence with a specific intent to defeat plaintiffs' claims.  If evidence existed to show defendants spoliated evidence with a specific intent to defeat plaintiffs' claims, it is a fair assumption that the evidence would have been cited in the SAMC.

### 4. Assumption of Duty and Acting in Concert Claims[12]

#### A. Assumption of Duty Claim

Plaintiffs seek to amend to add an assumption of duty cause of action against Johnson & Johnson.  SAMC ¶¶ 1052-55.  In essence, plaintiffs allege Johnson & Johnson did not properly exercise the duty it undertook to supervise and direct its subsidiaries' conduct with regard to the presence of asbestos in baby powder.  Plaintiffs allege Johnson & Johnson did not exercise the

---

[12] Defendants do not oppose plaintiffs' request to add a claim for aiding and abetting.

appropriate standard of care with regard to testing for asbestos, communicating the results of the tests, making recommendations regarding removing asbestos, warning customers, and discontinuing and removing from use asbestos contaminated products.  Id.  Ordinarily a parent corporation is not liable for the actions of its subsidiary.  However, if a corporation voluntarily assumes a duty to a third person, liability for harm may result from a failure to exercise reasonable care.  Grice v. CVR Energy, Inc., 921 F.3d 966, 970 (10th Cir. 2019); Boggs v. Blue Diamond Coal Co., 590 F.2d 655, 663 (6th Cir. 1979), cert. denied, 444 U.S. 836 (1979). Plaintiffs have plausibly pleaded that J&J undertook a duty to its subsidiaries and it did not adequately fulfill the duty.

In opposition to plaintiff's motion, J&J argues that a parent corporation is not responsible for its subsidiaries' "conduct unless it has gone well beyond normal supervision."  Memo. of Law at 33-34.  Whether or not J&J exercised the requisite degree of control over its subsidiaries to make out a cause of action against it is a fact question that may not be decided in the context of plaintiffs' motion to amend.  Plaintiffs' SAMC avers in detail the alleged conduct of J&J that supports its assumption of duty claim.  See ¶ 115.  ("Johnson & Johnson, through its Chief Medical Officers, had the independent and ultimate responsibility for the safety of talc and all products developed and sold by all J&J subsidiaries, including all of the Johnson & Johnson Defendants"); see also SAMC at ¶¶ 115-21.  Whether or not plaintiffs will succeed on their claim is left for another day.  Plaintiffs' motion to amend as to the assumption of duty cause of action will be granted.

### B.    Acting in Concert Claim

Plaintiff seeks to add an "acting in concert" claim against all defendants.  SAMC at ¶¶ 1061-63.  Plaintiffs rely in part on Restatement (Second) of Torts, Section 876 which reads:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a)      does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b)      knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c)      gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Plaintiffs allege defendants and the PCPC sought to suppress information regarding talc products and the risk of ovarian cancer in order to maintain profits when they knew the products should contain warnings about their dangers.  In addition, based on statements made at oral argument, plaintiffs' acting in concert claims not only relate to PCPC but also relate to the "actions that the J&J defendants undertook over the course of time."  Tr. 50:23-51:1.  These actions are discussed in detail in the SAMC.  Based on these allegations plaintiffs have pleaded a plausible cause of action.

Defendants argue plaintiffs' acting in concert claim is futile because it would impose liability for a public relations strategy in violation of the First Amendment and the Noerr-Pennington doctrine.  Opp. at 35-36.  Defendants also argue that in some states concert of action requires an intentional tort that was not pled and that a parent corporation cannot act in concert with its own subsidiary.  Id. at 37.  Defendants' defenses are premature.  The Special Master will not speculate as to the precise parameters of plaintiffs' claim or in which state they will be asserted.  Defendants' defenses are preserved for a later date.  Plaintiffs' request to amend to add an acting in concert claim will be granted.

**CONCLUSION**

For all the foregoing reasons, plaintiffs' motion to amend will be granted in part and denied in part.

**ORDER**

Accordingly, for all the reasons stated in the foregoing Opinion, it is hereby ORDERED this 9th day of January, 2024, that plaintiffs' Motion to Amend is GRANTED in part and DENIED in part.  Plaintiffs' motion is GRANTED as to the following requests:

    (1)    to include new facts in support of plaintiffs' claim for fraudulent concealment;

    (2)    to identify with more specificity the alleged carcinogenic constituents in defendants' talcum powder products;

    (3)    to add additional facts and scientific information;

    (4)    to add new corporate defendants LTL, Holdco, Kenvue and Janssen; and

    (5)    to add new causes of action for assumption of duty, aiding and abetting and acting in concert; and it is further

ORDERED that plaintiffs' Motion to Amend is DENIED as to plaintiffs' request to add independent causes of action for spoliation under the laws of Alaska, Connecticut, New Mexico, Ohio, and West Virginia; and it is further

ORDERED that the foregoing Opinion and this Order does not address which state's law applies at trial to determine the liability of Holdco, Kenvue, and Janssen.  That decision will be made by the remanded and/or trial court; and it is further

ORDERED that plaintiffs' request to automatically incorporate all the granted amendments into the filed Short Form Complaints without the need of a formal amendment is

-27-

not addressed in this Opinion and Order.  It is suggested the parties attempt to work out an

acceptable stipulation or present the issue to the Court in a separate application.

By:*s/ Joel Schneider* _____

Judge Joel Schneider (Ret.)
Special Master

Dated:  January 9, 2024

6385447v1