# EXHIBIT C

```
 1        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
 2
                       - - -
 3
    IN RE: JOHNSON &          :  MDL No.
 4  JOHNSON TALCUM POWDER     :  16-2738
    PRODUCTS MARKETING,       :  (MAS)(RES)
 5  SALES PRACTICES, AND      :
    PRODUCTS LIABILITY        :
 6  LITIGATION                :

 7

 8  _____

           SUPERIOR COURT OF NEW JERSEY
 9        LAW DIVISION, ATLANTIC COUNTY

10                     - - -

11  IN RE: TALC-BASED         :  Consolidated
    POWDER PRODUCTS           :  Docket No.
12  LITIGATION                :  ATL-L-2648-15
                              :
13                            :  MCL Case No.
                              :  300
14
                       - - -
15
                 January 10, 2024
16
                       - - -
17
              Remote Oral Expert
18  deposition of JUDITH KAY WOLF, M.D.,
    conducted at the location of the witness
19  in Austin, Texas, commencing at 10:15
    a.m. Eastern, on the above date, before
20  Kimberly A. Cahill, a Federally Approved
    Registered Merit Reporter, Certified
21  Court Reporter, and Notary Public.

22                     - - -

23         GOLKOW TECHNOLOGIES, INC.
        877.370.3377 ph| 917.591.5672
24              deps@golkow.com
```

Page 18

1  So our position is we go
2  forward today, that the deposition
3  will be completed, will not be
4  held open, which is the request
5  that counsel for Johnson & Johnson
6  has made.
7  So that's the position I
8  would take this morning. We're
9  happy to meet and confer about
10 that further, but considering the
11 hour, you know, I would just say
12 let's leave these disputes to be
13 resolved later and continue with
14 the deposition.
15      MR. HEGARTY: For the
16 Johnson & Johnson Defendants, I
17 note that the Special Master
18 opinion and order number 6 from
19 July 30th, 2021 noted or required
20 that -- or ordered that plaintiffs
21 and defendants shall produce at
22 least three days before their
23 experts' depositions all documents
24 considered by the experts in

Page 19

1  forming their opinions, as well as
2  all documents requested in the
3  applicable notices of deposition.
4      The three reports that Ms.
5  O'Dell referenced, Dr. Longo's
6  exposure report of November 17,
7  2023, Dr. Longo's third
8  supplemental report of November
9  17, 2023, and Dr. Levy's report of
10 November 2023, were not disclosed
11 to the Johnson & Johnson
12 Defendants or their counsel three
13 days in advance of the deposition
14 and, in fact, the materials that
15 we were provided included some
16 reports and other materials, but
17 none of the three that we are --
18 that I just referenced.
19      We were first provided
20 notice of which of those reports
21 that Dr. Wolf had reviewed this
22 morning. We did get an e-mail
23 yesterday of a reference to Dr.
24 Levy having reviewed Dr. Longo's

Page 20

1  reports, without a reference to
2  what specific reports that was in
3  relation to. There was a -- also
4  a comment or statement about
5  providing an updated or amended
6  materials considered list
7  yesterday that was not provided.
8  It's still not been provided.
9      The materials that we're
10 talking about do pertain to three
11 of the plaintiffs for which Dr.
12 Wolf has case-specific opinions
13 about. Neither I nor any other
14 counsel to my knowledge for
15 Johnson & Johnson certainly have
16 reviewed those materials for
17 purposes of today's deposition and
18 I'm certainly not prepared to go
19 forward and question Dr. Wolf
20 about reports for which I have not
21 reviewed or even seen.
22     So we would object to any
23 contention that this deposition in
24 the time we have today is limited

Page 21

1  -- would include those materials,
2  that we would have to spend our
3  time on those materials, which we
4  again did not receive notice of
5  until this morning.
6      So subject to that, we are
7  prepared to go forward on the
8  remain -- on what we have received
9  notice about and what we are to
10 prepared to discover -- what are
11 prepared to discuss with Dr. Wolf,
12 but certainly not those three
13 reports.
14     MS. O'DELL: Mr. Hegarty, we
15 agree to disagree and -- but I
16 would just -- it's 9:30 and Dr.
17 Wolf has been waiting, so I would
18 ask that you proceed with the
19 deposition and we'll, off the
20 record with the assistance of, I'm
21 sure, Judge Schneider, will try to
22 resolve this issue.
23     MR. HEGARTY: Yes. And I
24 just want to make it clear, if I

Page 234

1  MS. O'DELL: You may. But,
2  I mean, I'm not saying we're going
3  off the record. I mean, if you're
4  going to ask her questions and
5  mark an exhibit, she will look at
6  it. If it's not that long, she'll
7  answer your questions. If she
8  needs a few more minutes, then we
9  can go off the record.
10  But I just want to -- it's
11  not clear -- if we don't have a
12  paper copy here and you show a
13  limited version -- I'm not being
14  pejorative about that, there's
15  just a limited amount of screen --
16  she can't see the whole thing and
17  I think that's important. And
18  that's been important all day in
19  every sense.
20  So if you want to mark
21  something, just send it to me.
22  She can look at it while we're --
23  and then she'll be prepared to
24  answer your questions.

Page 235

1  MR. HEGARTY: Well, let's
2  try this, because I think we can
3  do this without sharing.
4  BY MR. HEGARTY:
5  Q. Doctor, do you see the
6  document I'm showing you on my screen?
7  MS. O'DELL: And, Mark,
8  you're going to e-mail it to me?
9  MR. HEGARTY: Well, I tried
10  and it wasn't -- it was not going.
11  MS. O'DELL: Yeah, if you --
12  you can e-mail it to me I think if
13  you just do share, send an e-mail.
14  MR. HEGARTY: Oh, I know
15  that.
16  MS. O'DELL: Okay.
17  MR. HEGARTY: It's not
18  letting me do it.
19  MS. O'DELL: That's -- if we
20  can't see the document, she can't
21  adequately respond to your
22  questions.
23  MR. HEGARTY: Well, I'll let
24  her answer that if that's her

Page 236

1  response.
2  BY MR. HEGARTY:
3  Q. Doctor, do you see the
4  document I'm showing on my screen?
5  A. I see the little bit that
6  you're showing. I would like to see the
7  whole document.
8  MR. HEGARTY: Understood.
9  I'll designate this as Exhibit No.
10  18.
11  - - -
12  (Deposition Exhibit No.
13  Wolf-17, "Talcum powder induces
14  malignant transformation in normal
15  human primary ovarian epithelial
16  cells" Paper by Harper, et al, was
17  marked for identification.)
18  - - -
19  (Deposition Exhibit No.
20  Wolf-18, PLOS ONE Reviewer
21  Comments, SAED_SEPT222021_
22  SUPPL_000100 through
23  SAED_SEPT222021_SUPPL_000104, was
24  marked for identification.)

Page 237

1  - - -
2  BY MR. HEGARTY:
3  Q. And as you mentioned, you
4  have not seen reviewer comments to Dr.
5  Saed's paper; correct?
6  A. I have not.
7  Q. I'm going to scroll down to
8  the section under major comments. Do you
9  see the section I'm -- under the heading
10  "Major Comments"?
11  MS. O'DELL: Excuse me. I
12  object to this line of
13  questioning. Dr. Wolf has asked
14  to see it and, Mark, you can just
15  -- you can just e-mail it to us.
16  I don't -- that's available in my
17  PDF program. I'm sure it is for
18  you, too.
19  I actually wonder if you use
20  the little paperclip on the side
21  of your screen there, you probably
22  can e-mail it, but Dr. Wolf is
23  entitled to see it.
24  Now, you can also, which I'm

Page 238

1  so happy for you to do this, put
2  it in the chat and you can -- put
3  it in the chat and then Dr. Wolf
4  is free to pull it up on her
5  computer and look at it and
6  certainly would be happy to answer
7  your questions.
8      MR. HEGARTY: Leigh, I know
9  you have this document already, so
10 I think it's -- I think it's kind
11 of disingenuous for you to ask me
12 -- or present an obstacle to me
13 using this document and asking me
14 to send it to you when you have
15 this document.
16     MS. O'DELL: Well, Mark, to
17 be perfectly fair -- and I won't
18 say you're being disingenuous.
19 I'm going to not say that. I'm
20 going to try to just be clear --
21 there are thousands of documents
22 that have been produced in this
23 litigation, and Dr. Wolf is
24 prepared to answer your questions,

Page 239

1  but this is not a document that is
2  on her materials list and if you
3  want her to answer questions about
4  it, you need to provide it.
5      That's all I'm asking. I
6  think it's perfectly fair.
7      MR. HEGARTY: You already
8  have a copy of it, so let's
9  continue.
10     MS. O'DELL: No, absolutely,
11 she is not answering questions
12 about this --
13     MR. HEGARTY: You're going
14 to instruct her not to answer?
15     MS. O'DELL: I'm going to --
16 I'm asking you, actually, to
17 provide a copy of the document to
18 me.
19     You're super-sophisticated.
20 You're able to do that. You can
21 do it through the chat or you can
22 send me an e-mail and we can get
23 it on Dr. Wolf's screen. She can
24 have an opportunity to review it

Page 240

1  in totality.
2      It's a five-page document,
3  single-spaced, with a lot of data
4  on it and this is a very
5  complicated subject.
6      And for you to want to put
7  up a very small amount and
8  cherry-pick the comments without
9  giving her opportunity to
10 understand the context, I just
11 think it's unfair.
12     And so, again, send it to
13 Dr. Wolf by the chat. Send it to
14 me by e-mail, I'll get it to her,
15 happy to answer your questions.
16     MR. HEGARTY: Let's go off
17 the record. Let's go off the
18 record because -- let's go off the
19 record.
20         - - -
21     (A discussion off the record
22 occurred.)
23         - - -
24     MS. O'DELL: I would like to

Page 241

1  go back on the record, Kim, so I
2  can put this on the record. Thank
3  you so much.
4      Mark, what you're asking is
5  to put a limited portion of a
6  five-page dense document before
7  Dr. Wolf and ask her something,
8  without giving her the opportunity
9  to review the document in
10 totality. She's entitled to that.
11     This is not on her materials
12 considered list and if she's going
13 to be shown something that's not
14 on her materials considered list,
15 then that's the only fair way to
16 do it.
17     Every other study that
18 you've asked her about that's on
19 her list, she has a copy here,
20 she's been ready to go.
21     So if you want to pursue
22 this inquiry, please, you're
23 entitled to do that, but you're
24 not entitled to do it in a way

Page 242

```
 1    that's unfair to Dr. Wolf and
 2    that's point I'm making.
 3         MR. HEGARTY:  Well, the
 4    procedure you're talking about is
 5    one that's going to, for her just
 6    to review the document, take a
 7    half an hour to review.
 8         MS. O'DELL:  I don't know
 9    that she would do that, but she's
10    entitled to look at it in context.
11         And to be fair, you know,
12    we're here by Zoom.  We were
13    willing to be -- have you here in
14    person.  If we were here in
15    person, you would have handed Dr.
16    Wolf a copy of the document.
17    Obviously, it's more convenient
18    for you to do it by Zoom.  We're
19    happy to accommodate that.
20    There's no problem.
21         But under those
22    circumstances, we need to have the
23    documents that are going to be
24    marked in their totality and --
```

Page 243

```
 1         MR. HEGARTY:  So it's your
 2    position, I want to make it clear,
 3    that if we don't provide a
 4    document to you, either in advance
 5    or at the deposition, that the
 6    doctor does not have with them,
 7    then you will instruct the doctor
 8    not to respond to questions.
 9         MS. O'DELL:  That's not what
10    I'm saying.  And we have had many
11    instances in this litigation where
12    there's been a document that's
13    been subject to inquiry and the
14    lawyer for Johnson & Johnson has
15    put it in the chat if it wasn't
16    something the witness had before
17    them.
18         That's so reasonable.  I'm
19    asking for something that has been
20    done consistently -- you're saying
21    -- you either refuse to put it in
22    the chat, you refuse to e-mail it,
23    or you're incapable.  I don't
24    think you're incapable.  I've been
```

Page 244

```
 1    working with you a long time.
 2         And so that's the issue.
 3         MR. HEGARTY:  Well, I think
 4    that's an inappropriate approach,
 5    but if we're going to do that,
 6    I'll e-mail those to you, but
 7    we're -- and the review needs to
 8    be -- needs to be off the record,
 9    not on the record.
10         MS. O'DELL:  Well, send them
11    to us.  She'll pull them up.  If
12    she needs more time, Dr. Wolf is
13    -- will let you know she needs
14    more time to review it.
15         MR. HEGARTY:  Well, the
16    documents we are talking about
17    are, as you said, around five
18    pages.  You've seen them.  You
19    know that it's going to take -- if
20    you're insisting that she read the
21    entirety of it, it's going to take
22    several minutes.
23         MS. O'DELL:  Well, Mark,
24    just send them and she'll look at
```

Page 245

```
 1    and Dr. Wolf, if she believes she
 2    needs more time, she will let you
 3    know and we'll go off the record,
 4    but just send them to us.
 5         The reason I said five pages
 6    is that's what you had up, was a
 7    five-page document.  I don't know
 8    what you had pulled up.  I only
 9    saw a small portion of it either,
10    have no context for it, and it's
11    certainly not something I have a
12    hard copy of it here.
13         So again, provide them, Dr.
14    Wolf can look.  If she needs more
15    time, so be it.  If she doesn't,
16    she'll answer your questions.
17         MR. HEGARTY:  Let's go off
18    the record and I'll e-mail those
19    to you.  Off the record.
20         MS. O'DELL:  We'll take two
21    minutes.
22              - - -
23         (A discussion off the record
24    occurred.)
```