# Exhibit 9

Entered L027383FMAS-RLS5/2018 Nicholson Circuit Clerk

No. 16-CI-003503                                    JEFFERSON CIRCUIT COURT
                                                          DIVISION TEN (10)
                                                JUDGE ANGELA MCCORMICK BISIG


CYNTHIA HAYES, as Executrix of the                                    PLAINTIFF
Estate of DONNA ANN HAYES



vs.


### ORDER REGARDING MOTIONS IN LIMINE,
### FOR SUMMARY JUDGMENT,
### AND FOR MISSING EVIDENCE INSTRUCTIONS


COLGATE-PALMOLIVE COMPANY, *et al.*                              DEFENDANTS

* * * * *

This matter is before the Court on a number of motions.  The first is a Motion by

Defendant Cyprus Amax Minerals Company ("CAMC") for Summary Judgment filed on

October 30, 2018.  Plaintiff Cynthia Hayes, as Executrix of the Estate of Donna Ann Hayes

("Cynthia"), filed a Response on January 7, 2019.  CAMC filed a Reply on January 25, 2019.

The second is a Motion by Defendant Colgate-Palmolive Company ("Colgate") for Summary

Judgment filed on October 30, 2018.  Cynthia filed a Response on January 7, 2019.  Colgate

filed a Reply on January 28, 2019, as well as a Notice of Supplemental Authority on February

22, 2019.  The third is a Motion by Defendant Johnson & Johnson for Summary Judgment filed

on October 30, 2018.  Cynthia filed a Response on January 7, 2019.  Johnson & Johnson filed a

Reply on January 21, 2019.

The fourth is a Motion by Cynthia for a Missing Evidence Instruction against Colgate.

The Motion was filed on December 7, 2018.  Colgate filed a Response on January 11, 2019.

OO : 000001 of 000042

methods employed within the mine. Accordingly, because the Court does not find that Johnson

& Johnson had a duty to preserve the evidence at issue or that a reasonable jury could find the

evidence was destroyed intentionally and in bad faith, Cynthia's Motion for a Missing Evidence

Instruction against Johnson & Johnson is DENIED. Cynthia may renew her Motion at the

conclusion of proof at trial if she believes the evidence warrants such an instruction.

## MOTIONS IN LIMINE

In the interest of judicial economy, the Court addresses the numerous pending Motions in

Limine as follows:

| Number | Motion | Ruling | Basis |
|--------|--------|--------|-------|
| 1 | Defendants' Motions To Exclude Dr. William Longo | DENIED | The objections raised are more properly addressed by cross-examination than exclusion of witness. |
| 2 | Defendants' Motions to Exclude Dr. Steven Compton | DENIED | The objections raised are more properly addressed by cross-examination than exclusion of witness. |
| 3 | Colgate's Motion to Exclude Testing and Opinions of Non-Testifying Experts | GRANTED | Hearsay; relevance; lack of proper foundation. |
| 4 | Plaintiff's Motion in Limine to Exclude Dr. Matthew Sanchez | DENIED | The objections raised are more properly addressed by cross-examination than exclusion of witness. |
| 5 | Plaintiff's Motion to Exclude Reference to FDA Positions and Reference to FDA Regulation of Talc | DENIED | Information is relevant and reliable. |
| 6 | Plaintiff's Motion to Exclude Evidence that FDA Regulates Talc Industry | DENIED | Information is relevant and reliable. |
| 7 | Colgate's Motion to Exclude Evidence of Unauthenticated Talcum Powder | DENIED | Authenticity of samples can be addressed on cross-examination; the evidence is best available given the historical nature of claims. |

OO : 000039 of 000042

| Number | Motion | Ruling | Basis |
|---|---|---|---|
| 8 | Defendants' Motion to Exclude Dr. Jacqueline Moline | GRANTED IN PART, DENIED IN PART | Granted as to information regarding 40 other asbestos plaintiffs not parties to this case on grounds of lack of relevance. Remainder denied. |
| 9 | Defendants' Motion Regarding Dr. David Egilman | GRANTED IN PART, DENIED IN PART | Granted on grounds of lack of relevance as to: 1) asphyxiation deaths; 2) ovarian cancer; 3) mesothelioma caused by asbestos-free talc; 4) Dr. Egilman's own talc testing; and 5) lack of alternative exposure sources. Remainder denied. |
| 10 | Plaintiff's Motion to Exclude Dr. Stanley Geyer | DENIED | The objections raised are more properly addressed by cross-examination than exclusion of witness. |
| 11 | Plaintiff's Motion to Exclude Dr. Alan Gibbs | DENIED | The objections raised are more properly addressed by cross-examination than exclusion of witness. |
| 12 | Plaintiff's Motion to Exclude Dr. John Bailey | DENIED | The objections raised are more properly addressed by cross-examination than exclusion of witness. |
| 13 | Colgate's Motion to Exclude Dr. Lee Poye | PENDING DAUBERT HEARING | The record at this time is insufficient for the Court to exercise its gatekeeper function to measure the proffered opinion against the standards of reliability and relevance. |
| 14 | Colgate's Motion to Exclude Dr. Ronald Dodson | PENDING DAUBERT HEARING | The record at this time is insufficient for the Court to exercise its gatekeeper function to measure the proffered opinion against the standards of reliability and relevance. |
| 15 | Colgate's Motion to Exclude Dr. Jerrold Abraham | GRANTED IN PART, DENIED IN PART | Granted as to testimony regarding opinions of other experts; however, Dr. Abraham may testify that Donna Hayes had mesothelioma. |
| 18 | Plaintiff's Motion to Exclude Alternative Theories of Exposure | DENIED | The information is relevant. |
| 19 | Plaintiff's Motion to Exclude Dr. Mark Taragin | PENDING DAUBERT HEARING | The record at this time is insufficient for the Court to exercise its gatekeeper function to measure the proffered opinion against the standards of reliability and relevance. |

Entered    16-CI-003503    04/12/2019    David L. Nicholson, Jefferson Circuit Clerk

OO : 000040 of 000042

| Number | Motion | Ruling | Basis |
|--------|--------|--------|-------|
| 20 | Plaintiff's Motion to Exclude Dr. Mossman | DENIED | The objections raised are more properly addressed by cross-examination than exclusion of witness. |

## ORDER

**WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that Motion of the Defendant, Cyprus Amax Minerals Company, for Summary Judgment is **GRANTED**. The claims of Plaintiff Cynthia Hayes, as Executrix of the Estate of Donna Hayes, against CAMC are **DISMISSED WITH PREJUDICE**.

**WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that Motion of the Defendant, Colgate-Palmolive Company, for Summary Judgment is **DENIED**.

**WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that Motion of the Defendant, Johnson & Johnson, for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. To the extent Cynthia's claims are based upon Johnson & Johnson's advocacy before the FDA, those claims are **DISMISSED WITH PREJUDICE**. Summary judgment is denied as to the remainder of Cynthia's claims against Johnson & Johnson.

**WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that Cynthia's Motion for a Missing Evidence Instruction against Colgate is **DENIED**.

**WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that Cynthia's Motion for a Missing Evidence Instruction against Johnson & Johnson is **DENIED**.

**WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that the Parties' Motions in Limine are addressed as indicated supra at 39-41. The Parties may utilize the Court's motion docket for the scheduling of a *Daubert* hearing in conformity with those rulings.

Entered          16-CI-003503      04/12/2019          David L. Nicholson, Jefferson Circuit Clerk

OO : 000041 of 000042

Finally, pursuant to KRE 611 and in consideration of the standard two-week service period of Jefferson County jurors, the Court reiterates that it **WILL LIMIT TRIAL** of this matter to a maximum length of three weeks.

**IT IS SO ORDERED** this____day of _____, 2019.

/s/ HON. ANGELA MCCORMICK. BISIG
electronically signed
4/12/2019 2:30:56 PM

_____
JUDGE ANGELA MCCORMICK BISIG
DIVISION TEN (10)
JEFFERSON CIRCUIT COURT

cc:    Counsel of Record

42

2-58-18
1011
11-27-17

Jack N. Frost, Jr. (025312005)
Stephen R. Long (028811980)
**DRINKER BIDDLE & REATH LLP**
A Delaware Limited Liability Partnership
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel. 973-549-7000
Attorneys for Defendant,
*Johnson & Johnson*

**FILED**

FEB 2 1 2018

ANA C. VISCOMI, J.S.C.

| | |
|---|---|
| **STEPHEN LANZO, III** and **KENDRA LANZO,**<br><br>Plaintiffs,<br><br>vs.<br><br>**CYPRUS AMAX MINERALS COMPANY,** et al.,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br>DOCKET NO.: MID-L-7385-16 AS<br><br>CIVIL ACTION<br>**ASBESTOS LITIGATION**<br>denying motion<br>[PROPOSED] ORDER/EXCLUDING DR.<br>**JACQUELINE MOLINE'S EXPERT**<br>**OPINION TESTIMONY** in part |

**THIS MATTER,** having come before the Court by Drinker Biddle & Reath LLP,

attorneys for Defendant Johnson & Johnson for an Order excluding Dr. Jacqueline Moline's

expert testimony or, in the alternative, request for Rule 104 hearing, and the Court having

considered the submissions of the parties and having heard oral argument, and for good cause

shown

IT IS ON THIS ___2155___ day of ___February___, 20_18_.

**ORDERED** that Johnson & Johnson's Motion *In Limine* to excluding Dr. Jacqueline

denied as further indicated in this Order

Moline's expert testimony is hereby ~~GRANTED~~;

**IT IS FURTHER ORDERED** that Johnson & Johnson's request for a Rule 104 hearing

is hereby **GRANTED** _denied_; and

**IT IS FURTHER ORDERED** that a copy of this Order shall be served on all counsel

within seven (7) days of the date hereof.

_Ana C. Viscomi_

Hon. Ana C. Viscomi, J.S.C.

Motion was:

On ___2/21/18___ the
court's statement of reasons
have been set forth on the record.

_____✓ Opposed

_____ Unopposed

90510491.1

_It is further Ordered:_

① Dr Moline may **not** testify with regard to
41 asbestos plaintiffs and her review of their
medical records;

② Dr Moline may testify with regard to the
Lanom study subject to the proper foundation; and

③ Dr Moline may testify with regard to
non-asbestiform cleavage fragments from a
medical point of view.

2

# In The Matter Of:

*Donna A. Olson and Robert M. Olson v.*

*Brenntag North America, Inc. et al*

---

*March 5, 2019*

---

Donna A. Olson and Robert M. Olson v.
Brenntag North America, Inc. et al

March 5, 2019

---

Page 2131

```
 1
 2    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK - CIVIL TERM - PART 7
 3    --------------------------------------X
 4    DONNA A. OLSON and ROBERT M. OLSON,
 5                         Plaintiff,
                                          Index No.
      -against-                          190328/2017
 6
      BRENNTAG NORTH AMERICA, INC.;
 7    BRENNTAG SPECIALTIES, INC.,
         Individually, and f/k/a Mineral Pigment
 8       Solutions, Inc., as successor-in-interest to
         Whittaker, Clark & Daniels, Inc.,
 9    CYPRUS AMAX MINERALS COMPANY,
         Individually and as successor-in-interest to
10       American Talc Company, Metropolitan Talc
         Company, Inc., Charles Mathieu, Inc., and
11       Resource Processors, Inc.;
      IMERYS TALC AMERICA, INC.;
12    JOHNSON & JOHNSON CONSUMER, INC.;
      WHITTAKER, CLARK & DANIELS, INC.,
13       Individually and as successor-in-interest
         To American Talc Company, Metropolitan Talc
14       Company, Inc., Charles Mathieu, Inc., and
         Resource Processors, Inc.;
15
                           Defendants.
16    --------------------------------------X
                                   60 Centre Street
17    Jury Trial                   New York, New York
                                   March 5, 2019
18
      B E F O R E :
19
              HONORABLE  GERALD LEBOVITS,
20
                   JUSTICE
21
      A P P E A R A N C E S :
22
              LEVY KONIGSBERG, LLP
23            ATTORNEYS FOR THE PLAINTIFFS
              800 THIRD AVENUE
24            NEW YORK, NEW YORK 10022
              BY:   JEROME H. BLOCK, ESQ.,
25
```

---

Page 2132

```
 1                            CONTINUED:
 2        APPEARANCES CONTINUED:
 3        MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
              150 WEST 30TH STREET
 4            NEW YORK, NEW YORK 10001
              BY:   SUZANNE M. RATCLIFFE, ESQ.,
 5                  CHRISTIAN HARTLEY, ESQ.,
                    MARGARET SAMADI, ESQ.
 6
 7        PATTERSON BELKNAP WEBB & TYLER, LLP
          ATTORNEYS FOR JOHNSON & JOHNSON
 8            1133 AVENUE OF THE AMERICAS
              NEW YORK, NEW YORK  10036
 9            BY:   THOMAS P. KURLAND, ESQ.,
                    LOUIS M. RUSSO, ESQ.,
10                  -and-
          KIRKLAND & ELLIS, LLP
11            300 NORTH LaSALLE STREET
              CHICAGO, IL  60654
12            BY:   MIKE BROCK, ESQ.,
                    STACEY GARBIS PAGONIS, ESQ.,
13                  BARRY E. FIELDS, ESQ.,
                    ALLISON RAY, ESQ.,
14
15
16
17                      Lori A. Sacco
18                      Michael Ranita
                        Official Court Reporters
19          *           *           *
20
21
22
23
24
25
```

---

PROCEEDINGS                                      Page 2133

```
 1
 2        MR. BLOCK: Could you mark these in evidence.
 3        (Whereupon Plaintiffs' Exhibit No. 322 was marked
 4    received in evidence as of this date.)
 5        (Whereupon Plaintiffs' Exhibit No. 56 was marked
 6    received in evidence as of this date.)
 7        (Whereupon Plaintiffs' Exhibit No. 330-A was marked
 8    received in evidence as of this date.)
 9        (Whereupon Plaintiffs' Exhibit No. 348 was marked
10    received in evidence as of this date.)
11        THE COURT: Ready? Thank you so very much. Good
12    morning. I understand that with regard to the evidentiary
13    issues, plaintiff would like to argue. Go ahead.
14        MS. SAMADI: Yes, your Honor. Margaret Samadi on
15    behalf of the plaintiff. Your Honor, I would like to make a
16    few points regarding the adverse event reports discussed at
17    length yesterday. First, we want to point out that Dr.
18    Moline's opinion does not rely solely on Johnson & Johnson's
19    individual adverse inference report, rather as you heard, it
20    relies on her extensive medical education, background,
21    experience, reasoned scientific methodology, generally
22    accepted scientific and medical principles.
23        THE COURT: More slowly, please.
24        MS. SAMADI: Generally accepted scientific medical
25    principles regarding the link between asbestos and
```

---

PROCEEDINGS                                      Page 2134

```
 1    mesothelioma and personal knowledge gained from treating
 2    mesothelioma patients. Many of the cases cited by Johnson &
 3    Johnson preclude expert testimony when it is the sole --
 4    based solely on adverse reports or and nothing else. For
 5    example, Heckstall versus Pincus case, that's 797 N.Y.S.2d 2
 6    445 out of the First Department. There the expert relied
 7    solely on "unverified listings and recording of adverse
 8    reactions". That's not what's happening here. The same
 9    with Saarai case, S-A-A-R-A-I. In New York case reports can
10    supplement opinions based on other substantive evidence. I
11    would like to point the Court to Zito versus Zabarsky case,
12    28 A.D.3d 42. And I've given the Court a copy. That's out
13    of the Second Department in 2006. And in that it was held
14    that the trial court errored in excluding causation expert
15    testimony that relied upon a single case study coupled with
16    generally scientific theory of the dose response
17    relationship and other scientific --
18        THE COURT: A little bit more slowly, please.
19    Because I'm trying to digest everything you're telling me.
20        MS. SAMADI: Okay -- and other scientifically
21    accepted methodology. So, your Honor, the issue is twofold.
22    Whether the adverse event reports are admissible and whether
23    Dr. Moline may reference the adverse event reports in her
24    testimony. Plaintiffs believe the answer is yes to both
25    inquiries. But if the Court believes one or the other, the
```

---

Donna A. Olson and Robert M. Olson v.
Brenntag North America, Inc. et al

March 5, 2019

PROCEEDINGS                                      Page 2175

1  has used Johnson Baby Powder and has gotten mesothelioma.
2  What we're disputing in this case and all of these cases is
3  whether or not the use of Johnson's Baby Powder in and of
4  itself is a cause of mesothelioma. We are looking at
5  specific causation. And there is a three prong test under
6  Juni. There is a clear requirement that plaintiffs induce
7  evidence of specific causation. They are using Dr. Moline
8  to do that. There are certain things she's allowed to rely
9  in forming that opinion. She needs to have a scientific
10  expression of that causality. And these case reports and
11  these adverse event reports are not a scientific expression
12  of anything, which is why they are routinely excluded as a
13  basis for a causation opinion. So, this idea that we're
14  saying no one who has used Johnson's Baby Powder ever got
15  mesothelioma is simply not a genuine statement of our
16  position. We are saying that we don't believe Johnson's
17  Baby Powder causes mesothelioma. And that's the question
18  this jury is being asked to decide.
19        THE COURT: Okay. I just by coincidence opened up,
20  thank you, one of the binders. It's 103. Here the consumer
21  stopped using Johnson's powder in approximately 2003.
22        MR. KURLAND: Your Honor, I would ask what's the
23  date of the case report, because that would be the relevant
24  question for whether or not it would be admissible for
25  notice purposes. When the company received notice, not when

PROCEEDINGS                                      Page 2176

1  the person said they stopped using the powder.
2        THE COURT: Where does it say that?
3        MR. KURLAND: I believe it's on the first page,
4  your Honor. I don't have the one you're looking at in front
5  of me. I believe there is an entered date on the top.
6        THE COURT: Yes. This one doesn't have it.
7        MR. KURLAND: Typically there is more information.
8        MR. KURLAND: I'm sorry. Oh, sure. It's right on
9  the first page where they have the entry date.
10        MR. HARTLEY: Your Honor, if you look --
11        THE COURT: February 9th, 2017.
12        MR. HARTLEY: I'm looking at -- I don't know the
13  number in the binder, but it's event number 30000133514.
14  And on the first page in the upper right-hand side column,
15  the first line, it gives you a J & J awareness date. So,
16  that would be helpful in terms of when they were aware.
17  This particular one their awareness of it was February 19,
18  2010. And there are going to be a number of others. We
19  would argue that the cutoff date for notice is the date of
20  diagnosis in this case.
21        MR. KURLAND: Based on the charts that the
22  plaintiffs prepared that they handed up yesterday, I believe
23  it was marked, there are two adverse event reports that they
24  are referring to that have a date prior to the plaintiff's
25  statement when she discontinued using the product. It's

PROCEEDINGS                                      Page 2177

1  event number 30000151575. It says date reported 2/19/2010.
2  And 30000133514 says date reported 10/11/2012. Every other
3  one postdates the plaintiff's use. But again --
4        THE COURT: In all binders?
5        MR. KURLAND: Yes. This is all. This list the
6  plaintiffs prepared is all of them. The next one is
7  1/4/2016 and then they go through 2/24/2017, and all the
8  dates are in that period. Again, even if the Court were
9  inclined to admit these for some sort of notice purpose,
10  putting them in through Dr. Moline would be incredibly
11  prejudicial, because it would imply to the jury with any
12  kind of instruction that it's forming her causation opinion
13  and these are improper to form a causation opinion. So, if
14  the plaintiffs want to put these in through a Johnson &
15  Johnson witness and say well isn't it true that you received
16  this report in 2010, maybe that's one thing. It would be
17  admissible for the fact the report was received, not notice
18  of anything. But it's a completely different thing to allow
19  Dr. Moline to talk about them.
20        I'll just read from the one that was just referred
21  to by Mr. Hartley, the notes where it reports what the
22  company learned. It says "Consumer was hurt and injured in
23  her health, strength and activity, sustaining serious and
24  severe injuries to her person and body and to her lungs,
25  respiratory and cardiovascular systems and permanent

PROCEEDINGS                                      Page 2178

1  injuries and have caused and continue to cause great
2  physical, mental and nervous pain and suffering and mental
3  anguish, all of her general damage in a sum which has yet to
4  be ascertained."
5        Now, if that -- if a doctor talks like that, I
6  would be shocked to see it. If a doctor says "damages in a
7  sum yet to be ascertained", I would be shocked to see it.
8  That sounds very much to me this is a cut and paste from a
9  complaint, not a medical investigation of causation, which
10  is what plaintiffs are purporting these are. These are
11  litigation complaints.
12        THE COURT: Let's take a ten minute break and I'll
13  think about it.
14        MR. KURLAND: Thank you, your Honor.
15        (Whereupon a recess was taken.)
16        THE COURT: Thanks counsel for their excellent
17  argument on these difficult issues. The issue before the
18  Court is whether the adverse event reports may be admitted
19  and whether the case studies may be admitted.
20        With respect to the case studies, plaintiffs have
21  not shown that Dr. Moline has personal knowledge of other
22  cases through treating patients who have mesothelioma.
23  Plaintiffs do not provide written documents by which the
24  Court can assess the probative value of information about
25  the cases to which Dr. Moline would testify or would show

| PROCEEDINGS | Page 2179 |
| --- | --- |

1 that these cases are similar in any way to the one here.
2 Dr. Moline may not refer to those other cases in support of
3 her opinion on causation.
4     With respect to the adverse event reports, the
5 Court similarly concludes that Dr. Moline may not refer to
6 those reports as bases for her causation opinion.  Court
7 finds that defendants argued correctly that the report
8 simply reflect the consumer statements, that the consumer
9 used Johnson's talcum products, and the consumers' medical
10 records showing that the consumer has mesothelioma and does
11 not show any causal connection between the two, nor do these
12 documents purport to rule out alternative or other causal
13 explanations for the consumers' mesothelioma.  So, applying
14 the First Department's decision in Heckstall,
15 H-E-C-K-S-T-A-L-L, testimony about these reports is
16 inadmissible.
17     MR. BLOCK: Can Dr. Moline know take the stand?
18     THE COURT: Yes.  Please.
19 J A C Q U E L I N E  M O L I N E,  P h.D, after having been
20 previously duly sworn, was examined and testified further as
21 follows:
22     THE WITNESS: I know you guys were talking a lot,
23 and there was a lot of hot air probably, but it's freezing
24 in here.
25     MR. HARTLEY: May I close the window, your Honor.

| Direct-Moline-Block | Page 2180 |
| --- | --- |

1     THE COURT: Doctor, it's possible a juror might
2 complain about --
3     THE WITNESS: That's fine.
4     THE COURT: -- if it gets a little bit stuffy.
5 Maybe we can try to get you a jacket if that happens or
6 maybe a juror won't complain and everything will be fine.
7 We try to accommodate.
8     THE WITNESS: Thank you.
9     COURT OFFICER: All rise.  Jury entering.
10     (Whereupon the jury panel entered the courtroom.)
11     THE COURT: Good morning.  And please be seated
12 everyone.  Thank you.  We apologize for the delay.  Please
13 continue.
14 CONTINUED DIRECT EXAMINATION
15 BY MR. BLOCK:
16     Q    Good morning, Dr. Moline.
17     MR. BLOCK: Good morning, ladies and gentlemen.
18     THE JURY: Good morning.
19     Q    Dr. Moline, I want to go back to one point from
20 yesterday.  You testified yesterday about something called a
21 fiber per cc year.  Do you remember that?
22     A    Yes.
23     Q    And we talked about that exposure to 0.1 fiber per cc
24 level for ten years, that would equal one fiber per cc year.  Do
25 you recall that testimony from yesterday?

| Direct-Moline-Block | Page 2181 |
| --- | --- |

1     A    Yes.
2     Q    You testified yesterday that published studies
3 demonstrate that exposure at a level of one fiber per cc year is
4 sufficient to cause mesothelioma, is that right?
5     A    Yes.
6     Q    All right.  So, let's do another number here.  So, 0.1
7 fiber per cc times one year, okay.  And does that equal 0.1
8 fiber per cc year?
9     A    Yes.
10     Q    And have published studies demonstrate that even
11 exposure at the zero point fiber per cc level for one year is
12 sufficient to cause mesothelioma?
13     A    They show that there is a significantly increased risk
14 at that level, yes.
15     Q    And how significantly increased?
16     A    I believe it's four fold in some studies.  In other
17 studies if you go to about .15 the rates could go up to about 20
18 fold.
19     Q    Okay.  So -- And so -- And even if the fiber per cc
20 year level is below 0.1, would there still be a significant
21 increased risk but it would just be less?
22     A    Correct.
23     Q    And is that part of a dose-response effect of asbestos
24 in causing mesothelioma?
25     A    Yes.  You can look at it that way.  Mesothelioma is a

| Direct-Moline-Block | Page 2182 |
| --- | --- |

1 dose-response disease where you see it, of all the asbestos-
2 related diseases, it's something you can see at the lowest dose.
3 And we also know the more of a dose you get, the more likely you
4 are to develop mesothelioma.  So, for individuals who have had
5 even more exposure, their risk is even higher.
6     Q    Okay.  And yesterday you talked about the Gordon,
7 Millette paper published in the peer-reviewed literature in
8 2014.  Where does Dr. Gordon work?
9     A    At Mount Sinai.
10     Q    Here in New York?
11     A    Correct.
12     Q    Okay.  And you testified yesterday that exposure at the
13 level that that they identified of asbestos of being in the air
14 when talcum powder is used of 1.9 fiber per cc is sufficient to
15 cause mesothelioma.  Do you recall that testimony from
16 yesterday?
17     A    I do.
18     Q    Did the authors in the Gordon, Millette article
19 conclude that exposure to asbestos from talcum powder is capable
20 of causing mesothelioma?
21     A    Yes.
22     Q    Did they?
23     A    They did, yes.
24     Q    And do you agree with that?
25     A    I do agree with that, yes.

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| **SHARON PIPES,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. CJ-2017-3487** |
| | ) | |
| **JOHNSON & JOHSON, et al.,** | ) | |
| **Defendants.** | ) | |

## JOURNAL ENTRY

This matter comes before me for hearing on this 22nd day of February, 2019, upon

Defendants' Motion to Exclude Plaintiff's Expert, **Jacqueline Moline, MD.** The Court, having

reviewed the pleadings, heard the arguments of counsel, and being fully advised in the premises,

finds that "it is common that medical experts often disagree on diagnosis and causation,

questions of conflicting evidence must be left for the jury's determination." *Hose v. Chicago*

*Northwestern Transp. Co.*, 70 F.3d 968, 976 (8th Cir. 1995). Defendants will cross examine the

witness about the validity of her opinions.

However, the Court further finds that the witness may not discuss the forty (40) other

patients or her opinion on their cases. The Court finds that the witness may, in a general manner,

discuss that she has dealt with other patients and that it was one component on which she based

her opinion. The fact that other people may have suffered the same disease as Plaintiff is not

relevant to the issues in this case. 12 OS §2401. Those issues are: 1) whether a defect existed in

the product, 2) which created an unreasonable danger for this Plaintiff, and 3) which caused

injury to this Plaintiff. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974).

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendants'

Motion to Exclude the Plaintiff's Expert, Jacqueline Moline, MD, is GRANTED IN

PART/DENIED IN PART.

DONE this 25th day of February, 2019.

JUDGE OF THE DISTRICT COURT
SUSAN C. STALLINGS

**FILED**
Superior Court of California
County of Los Angeles

**JUL 23 2018**

Sherri R. Ca~ ........ ~ ....cer/Clerk
By _Alfredo Morales_____ deputy
ALFREDO MORALES

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| Coordinated Proceeding<br>Special Title (Rule 3.550)<br><br>LAOSD ASBESTOS CASES | Case No.: JCCP 4674 |
| CAROLYN WEIRICK, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>BRENNTAG NORTH AMERICA, INC.,<br>et al.,<br><br>Defendants. | Included Action Case No.: BC656425<br><br>**RULINGS ON MOTIONS<br>IN LIMINE** |

This case is an included action within the LAOSD Asbestos Cases, Judicial

Council Coordination Proceeding (JCCP) No. 4674.

1

This Court's rulings on certain motions in limine are set forth on the attached pages. Exhibit A are the rulings on the Plaintiff's Motions in Limine. Exhibit B are the rulings on the defense motions in limine.

The rulings are presented in three columns. Only the third column constitutes the Court's ruling. The first two columns are summaries prepared by the Court's research attorney. These are left in for the convenience of the parties and the trial judge, who might otherwise need to review all the pleadings to get an understanding of the contentions. Where appropriate, this Court has reviewed the original of the motion papers, including the evidence and testimony submitted.

The parties may not bring additional motions in limine during trial except with leave of the trial judge assigned.

With respect to any motions in limine that rely upon Evidence Code § 352, the Court has weighed the probative value (if any) of the evidence against the prejudicial effect of its admission, as well as the potential for such evidence to be cumulative, confuse the jury, or cause undue consumption of time.

The concept of admissibility evolves with trial. As the trial evolves, it may be that evidence originally thought inadmissible becomes admissible in light of the admission of other evidence not anticipated at the beginning of trial. Also, by placing new facts in issue, a party can make previously inadmissible evidence admissible to prevent unfairness to the other side. A motion in limine should be a shield against the incitement of passion and prejudice, not a sword that is used to

2

1   lead the jury to inferences of factual conclusions that are not true or otherwise

2   improper.

3

4       Unless an in limine ruling is revised by the Court, compliance is expected,

5   and counsel should advise the Court outside the presence of the jury before allowing

6   a witness to go outside the bounds of a motion in limine. Counsel are ordered to

7   familiarize themselves with, and comply with, LASC Local Rule 3.57 (e).

8   DATED: July 2018

9

10

11

12

13   JOHN J. KRALIK
     Acting Asbestos Coordination
14   Judge of the Superior Court

15

16

17

18

19

20

21

22

23

24

25

# Exhibit B

**Date:** 6-25-18
**Time:** 9:00 am

## Defense MILs Re: BC656425 (Weirick)

| No. | What to Exclude | Arguments | Ruling |
|---|---|---|---|
| 1 | "[E]vidence or making any reference during trial to diseases allegedly caused by or associated to asbestos-free talc, including ovarian cancer and talcosis." (Motion, p. 1.) | **Defendants contend:**<br><br>"Defendant Chanel, Inc. ("Chanel"), on behalf of itself and the remaining defendants, hereby moves this Court *in limine* for an order precluding Plaintiffs Carolyn Weirick and Elvira Graciela Escudero Lora ("Plaintiffs") from introducing evidence or making any reference during trial to diseases allegedly caused by or associated to asbestos-free talc, including ovarian cancer and talcosis. This is an asbestos action. Plaintiffs allege that Plaintiff Carolyn Weirick ("Weirick") was diagnosed with mesothelioma, a cancer in the lining of her lung, after having allegedly breathed asbestos fibers through her use and general presence around talcum powder products allegedly contaminated with asbestos. Plaintiffs' experts concede that talc alone – absent contamination of asbestos – does not cause mesothelioma. Accordingly, any reference to diseases potentially related to the perineal use of uncontaminated talc (ovarian cancer) and mining and milling of talc (talcosis) would be wholly irrelevant, misleading, and would severely prejudice Defendants by inflaming the jury. Chanel requests an order precluding any evidence or reference to diseases not at issue, including ovarian cancer and talcosis. Similarly, Chanel requests an order precluding reference to the IARC classification for perineal talc use." (Motion, p. 1.) | **Granted:**<br><br>The Court finds that the motion should be granted. In light of the recent publicity and sizeable verdicts in the talc-only cases, the threat of prejudice is too great to allow Plaintiffs to present arguments and evidence regarding ovarian cancer, talcosis, and other non-asbestos injuries allegedly arising out of exposure to talc. The potential prejudice outweighs the probative value. (See, e.g., *Downing v. Barrett Mobile Home Transport* (1974) 38 Cal.App.3d 519 [injury from prior accident held irrelevant where plaintiff did not claim the subject incident caused the injury].) |

1

| No. | What to Exclude | Arguments | Ruling |
|---|---|---|---|
| | | testing, to help inform their opinions in the present case." (Id.) "As manufacturers of asbestos-containing talcum powders, Defendants predictably take issue with expert testimony and opinions regarding the contamination of their talc with asbestos. Defendants' challenge to Dr. Maddox's opinions is the proper subject of vigorous cross-examination, governed by Evidence Code sections 761, 767, 773 and 780, and not an evidentiary hearing under Evidence Code section 402." (Id.) | |
| 30 | Opinions and testimony by Plaintiffs' expert Dr. Jacqueline Moline. | **Defendants contend:** "Dr. Moline intends to tell the jury that plaintiff Carolyn Weirick ("Ms. Weirick") was exposed to asbestos through her use of Johnson's Baby Powder and Shower to Shower talcum powder ("Johnson's talcum powder products"), and that this exposure was a substantial factor in causing her mesothelioma. However, Dr. Moline admitted that she does not know how much asbestos, if any, Ms. Weirick was allegedly exposed to from her use of Johnson's Baby Powder or Shower to Shower. Thus, Dr. Moline's causation opinion is wholly without basis and should be excluded." (Motion, p. 1.) "Defendants anticipate that Dr. Moline may also attempt to tell the jury about the ~50 other plaintiffs in other asbestos litigation who she has concluded developed mesothelioma from exposure to cosmetic talc. Defendants have no information regarding these other plaintiffs, their medical and exposure histories, or their lawsuits (including their allegations of asbestos exposure). Such testimony is not only irrelevant but is highly prejudicial to Defendants and will only result in undue consumption of time and juror confusion." (Id.; see also id. at pp. 3-4.) | **Granted in part. Otherwise denied without prejudice:** Defendants contend Dr. Moline should be excluded because she failed to quantify the dose Ms. Weirick inhaled. Plaintiff cites to *Davis v. Honeywell* (2012) 245 Cal. App.4[th] 477, which holds that the "every exposure" theory is a jury question. Such testimony may be admissible, but Dr. Moline cannot go further in arguing that Plaintiff was exposed to a specific quantifiable dose unless she has a basis for doing so. Apparently she does not. As with Motion in Limine 29 |

48

| | |
|---|---|
| Dr. Moline's opinions lack foundation: "Dr. Moline agrees that asbestos-related mesothelioma is a dose-response disease. (Deposition of Dr. Moline ("Moline Dep."), attached as Exhibit A to Stewart Decl., at 39:15-22.) According to Dr. Moline, only "nontrivial exposures to asbestos" should be considered a substantial factor in the development of mesothelioma. (Id. at 39:23-40:11, 44:22-45:11.) Dr. Moline explained that a "nontrivial exposure" is an exposure "orders of magnitude above background that are associated with increased risk of developing disease." (Id. at 40:12-18.)" (Id. at pp. 1-2.) | Plaintiffs and Dr. Moline must verify that she is able to testify to a reasonable degree of scientific certainty without reliance upon the evidence excluded by this Court. Plaintiffs state that there is enough evidence to establish exposure to asbestos through use of the product. The trial court can decide whether that is so. |
| "Accordingly, by Dr. Moline's own standard, Ms. Weirick would have to be exposed to a "nontrivial" level of asbestos "orders of magnitude above background" from her use of Johnson's talcum powder products in order for Dr. Moline to consider the Johnson's talcum powder products a substantial factor in the development of her mesothelioma. Yet, Dr. Moline admitted at deposition: [1] She has not done a dose calculation to determine how much asbestos Ms. Weirick may have been exposed to through her use of Johnson's talcum powder products (id. at 224:21-225:5; 229:11-25.); [2] She has not calculated a cumulative asbestos fiber dose for Ms. Weirick from her use of Johnson's talcum powder products (id. at 230:7-10); and [3] She has not done a quantitative analysis with respect to the amount of asbestos she believes Ms. Weirick may have been exposed to through her use of Johnson's talcum powder products (id. at 227:23-228:4; 229:11-25.)" (Id. at pp. 1-2.) | Dr. Molina's testimony about asbestos fibers appears to be the subject of the same debate that is occurring between other expert witnesses. The Court is not prepared to take sides by excluding Plaintiffs' evidence at this point.

Dr. Molina's testimony about the specifics of other asbestos cases is excluded. |
| "Dr. Moline clearly has no idea how much asbestos, if any, Ms. Weirick was exposed to from her use of Johnson's talcum powder products Thus, Dr. Moline has absolutely no basis— let alone a reasonable one— on which to opine that Ms. Weirick was exposed to a "nontrivial" amount of asbestos "orders of magnitude above | |

49

background" from her use of Johnson's talcum powder products. Dr. Moline likewise has zero basis on which to opine Ms. Weirick's use of Johnson's talcum powder products was a substantial factor in the development of her mesothelioma. Dr. Moline's causation opinion is entirely lacking in foundation and purely speculative. Dr. Moline's causation opinion is guesswork—not science. Accordingly, Dr. Moline's causation opinion must be excluded pursuant to the standards set forth in Sargon." (Id. at p. 2.)

"In addition, Dr. Moline should not be allowed to rely on the binomial spreadsheet prepared by Plaintiffs' statistical expert, Dr. Stokes, to opine about the probability of Ms. Weirick's exposure. (Exh. A to Stewart Decl. (Moline Dep.), at 227:23-230:25.) Dr. Moline is not an expert in statistics. (Id. at 141:11-13.) All she did was review an affidavit of Dr. Stokes' opinions. She never spoke to Dr. Stokes nor did she ever review Dr. Stokes' deposition testimony. (Id. at 198:16-199:23.) She is also unqualified to conduct her own statistical probability analyses. (Id. at 141:11-13.) She should, therefore, be precluded from offering any opinion about the probability of Ms. Weirick being exposed to asbestos-contaminated talcum powder or the statistics underlying such an analysis." (Id. at pp. 2-3.)

**Chanel contends:**

"Plaintiffs allege that Plaintiff Carolyn Weirick ("Weirick") was diagnosed with mesothelioma, a cancer in the lining of her lung, after having allegedly breathed asbestos fibers through her use and general presence around talcum powder products allegedly contaminated with asbestos. As against Chanel, Plaintiffs allege that Chanel No. 5 After Bath Powder ("Chanel No. 5) has, at some point, been contaminated with asbestos, and that Weirick's mother

50

occasionally applied Chanel No. 5 in Weirick's presence, thereby potentially exposing Weirick to asbestos fibers." (Chanel Motion, p. 1.)

"Dr. Moline is an Occupatioanl Medicine Specialist, retained by Plaintiffs to offer opinions in this matter. It is anticipated the Dr. Moline will be offered at trial to opine that 1) Weirick's presence around her mother while she applied Chanel No. 5 resulted in exposure to asbestos, such that it was a substantial factor in causing Weirick's mesothelioma; 2) asbestos fibers shorter than 5 microns in length can be carcinogenic; and 3) nonasbestiform fibers can cause mesothelioma. However, Dr. Moline's opinions on these subjects are lacking in foundation and should be excluded:

- "Dr. Moline is not aware of any testing conducting on Chanel talcum powderproducts, does not know who supplied talc to Chanel, or which mines the talc in Chanel No. 5 was sourced from (other than through a representation made by Plaintiffs' counsel that Chanel used Italian talc).

- "Dr. Moline's belief that asbestos fibers shorter than 5 microns in length can be carcinogenic is not a generally accepted opinion in the medical or scientific community and is based on a study merely identifying asbestos fibers in the pleura; importantly, the presence of asbestos fibers only identify exposure to asbestos – which everyone experiences through background levels of asbestos – not causation.

- "The basis for Dr. Moline's opinion as to nonasbestiform fibers potentially causing mesothelioma is irrelevant, unsubstantiated, and unreliable." (Id. at pp. 1-2.)

**Plaintiffs contend:**

51

"Defendant's move to preclude Dr. Moline from opining that Mrs. Weirick's exposure to Johnson's Baby Powder, Shower to Shower and Chanel No. 5 After Bath Powder caused or contributed to her disease. At the outset it must be brought to the Court's attention that Dr. Moline's opinions regarding these issues have never been excluded or limited by any Court to Plaintiffs' knowledge. She has testified for many years, across the country, and despite having motions such as the ones filed here, filed in many cases, they have not, to plaintiffs' knowledge been granted. If Dr. Moline's opinions had been excluded in the past Defendants would have attached said orders to their motions. Notably Dr. Moline testified in several recent cases involving Johnson's Baby Powder exposure including the Stephen Lanzo case in New Jersey, the Joanne Anderson case here in Los Angeles, and in the Ilene Brick case here in Los Angeles. Dr. Moline's opinions in this case are not new or novel, or unusual in any way, but are consistent is testimony that has been admitted all over the country for many years." (Opposition, p. 2.)

"Specifically addressing Defendants' motions, talc-containing Johnson's Baby Powder and Shower to Shower powder contains asbestos and has for decades. Chanel has also sold asbestos-containing Chanel No. 5 After Bath Powder for decades. The evidence to be presented at this trial, in the form of expert testimony, historical testing results, internal Johnson & Johnson documents, testing of ore sources, and corporate representative testimony, will overwhelmingly establish the fact that Johnson's Baby Powder, Shower to Shower, and Chanel No. 5 After Bath Powder contained asbestos for decades." (Id.)

"In light of the clear evidence of asbestos content in Defendants' products, Dr. Moline holds the opinion that Mrs. Weirick's decades-long use of Johnson & Johnson baby powder and Shower

52

to Shower exposed her to significant amounts of asbestos and substantially contributed to cause her mesothelioma. Dr. Moline also holds the opinion that Mrs. Weirick's mother's use of Chanel No. 5 After Bath Powder, also caused Mrs. Weirick be exposed to significant amounts of asbestos and substantially contributed to cause her mesothelioma." (Id.)

Dr. Moline relied on reliable materials – Dr. Longo's report, Dr. Compton's report, Dr. Stokes's statistical analysis, Dr. Alice Blount's work, corporate documents, historical tests, etc. (See id. at pp. 4-10.)

Dr. Molines is not required to identify a numerical dose of exposure: "Defendants seem to be arguing that Dr. Moline has testified that in order to reach a causation opinion she must first (a) perform a dose calculation to determine how much asbestos Ms. Weirick may have been exposed to (b) calculate a cumulative asbestos fiber dose for Mrs. Weirick for her use of Johnson's talcum products, and finally (c) a quantitative analysis with respect to the amount of asbestos she believes Mrs. Weirick may have been exposed to through her use of Johnson's talcum powder products. No case, and no testimony by Dr. Moline, supports this conclusion. In fact, the court in Davis v. Honeywell, 245 Cal. App. 4th 477 (2012), held that California law does not require any quantification of dose in order to establish causation in a mesothelioma case." (Id. at p. 10.)

Dr. Moline should be allowed to testify about other mesothelioma plaintiffs: "The issues raised by Defendants in their Motion fall squarely within the realm of vigorous cross-examination, not a 402 hearing. They go to the weight and credibility of evidence (matters for the jury's consideration), rather than admissibility or sufficiency." (Id. at p. 13.) "Specifically, the argument that Dr.

53

| | |
|---|---|
| | Moline's examination of ~50 other people diagnosed with mesothelioma for which talcum powder was a cause cannot be excluded simply because those individuals had legal cases. There is no justification for such a position; no legal basis to exclude this information that Dr. Moline properly relies upon to help inform her opinion in this case. Medical experts routinely rely on their experience and training when giving testimony in front of a jury. It is not at all unusual or out of the norm for a Medical expert to rely on other patients or cases they have seen and evaluated (whether in litigation or not) to help inform their opinions in the present case. As a manufacturer asbestos-containing talcum powder, the Defendants predictably take issue with expert testimony and opinions regarding the contamination of their talc with asbestos. Defendants' challenge to Dr. Moline's opinions is the proper subject of vigorous cross-examination, governed by Evidence Code sections 761, 767, 773 and 780, and not an evidentiary hearing under Evidence Code section 402." (Id.)

Dr. Moline has foundation to opine concerning the asbestos content of Chanel No. 5 After Bath Powder. (See id. at pp. 13-16.)

Dr. Moline should be allowed to testify regarding asbestos fibers shorter than five microns and the distinction between asbestiform and non-asbestiform. (See id. at pp. 16-19.) |

54