# Exhibit 23

```
 1              SUPERIOR COURT OF NEW JERSEY

 2            LAW DIVISION - MIDDLESEX COUNTY

 3

 4

 5   VALERIE JO DALIS              )
     and NICHOLAS J. DALIS,        )
 6                                 )
              Plaintiffs,          )
 7                                 )
          vs.                      )  No. MID-L-4821-15AS
 8                                 )
     BRENNTAG NORTH AMERICA, INC.  )
 9   (sued individually and as     )
     successor-in-interest to      )
10   MINERAL PIGMENT SOLUTIONS, INC.)
     as successor-in-interest to   )   Certified Transcript
11   WHITTAKER, CLARK & DANIELS,   )
     INC.) et al.,                 )
12                                 )
              Defendants.          )  (Pages 1 - 229)
13   _____)

14

15

16

17

18

19            VIDEOTAPED DEPOSITION OF

20                VALERIE JO DALIS

21          Thursday, September 10, 2015

22

23

24   Reported by:   CATHERINE M. MEYER

25               CA CSR No. 11596, RPR
```



### Page 2

```
 1            SUPERIOR COURT OF NEW JERSEY
 2            LAW DIVISION - MIDDLESEX COUNTY
 3
 4
 5   VALERIE JO DALIS            )
     and NICHOLAS J. DALIS,      )
 6                               )
              Plaintiffs,        )
 7                               )
          vs.                    ) No. MID-L-4821-15AS
 8                               )
     BRENNTAG NORTH AMERICA, INC.)
 9   (sued individually and as   )
     successor-in-interest to    )
10   MINERAL PIGMENT SOLUTIONS, INC.)
     as successor-in-interest to )
11   WHITTAKER, CLARK & DANIELS, )
     INC.) et al.,               )
12                               )
              Defendants.        )
13   _____)
14
15
16        Videotaped Deposition of VALERIE JO DALIS,
17   taken on behalf of Defendants, at 1727 Technology Drive,
18   San Jose, California, commencing at 10:21 a.m.,
19   Thursday, September 10, 2013, before CATHERINE M. MEYER,
20   Certified Shorthand Reporter for the State of California
21   No. 11596, RPR.
22
23
24
25
```

### Page 3

```
 1   APPEARANCES:
 2
 3   For Plaintiffs:
 4        SIMON GREENSTONE PANATIER & BARTLETT PC
          BY:  LEAH C. KAGAN, ESQ.
 5        3780 Kilroy Airport Way
          Suite 540
 6        Long Beach, California 90806
          (562) 590-3400
 7        lkagan@sgpblaw.com
 8
 9   For Defendant Con-Air Corporation:
10        CONNELL FOLEY
          BY:  TIMOTHY CORRISTON, ESQ.
11        85 Livingston Avenue
          Roseland, New Jersey 07068
12        (973) 535-0500
          tcorriston@connellfoley.com
13        (Telephonic Appearance)
14
15   For Defendant Cypress Amax Minerals Company:
16        HOAGLAND LONGO MORAN DUNST & DOUKAS LLP
          BY:  ANDREW N. KESSLER, ESQ.
17        40 Paterson Street
          New Brunswick, New Jersey 08903
18        (732) 545-4717
          akessler@hoaglandlongo.com
19
20
     For the Defendant Whittaker, Clark & Daniels, Inc.:
21
          MURRIN & ASSOCIATES LLC
22        BY:  REYNOLD M. MARTINEZ, ESQ.
          3675 Mt. Diablo Boulevard
23        Suite 230
          Lafayette, California 94549
24        (925) 284-5770
          reynold.martinez@murrinlaw.net
25
```

### Page 4

```
 1   For the Defendant Colgate-Palmolive Company:
 2        QUINN EMANUEL URQUHART & SULLIVAN, LLP
          BY:  MEREDITH M. SHAW
 3        50 California Street
          22nd Floor
 4        San Francisco, California 94111
          (415) 875-6600
 5        meredithshaw@quinnemanuel.com
 6
 7   Also Present:
 8        Jason Sayler, CLVS, videographer
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

### Page 5

```
 1                      I N D E X
 2
 3   DEPONENT:        EXAMINATION              PAGE:
 4   VALERIE JO DALIS   BY MS. SHAW            8, 211
                        BY MR. CORRISTON       206
 5
 6
 7
 8             INFORMATION TO BE SUPPLIED
 9                      (None.)
10
11
12
13          QUESTIONS INSTRUCTED NOT TO ANSWER
14                      (None.)
15
16
17
18                  MARKED PORTIONS
19                      (None.)
20
21
22
23
24
25
```



Page 6

```
 1            I N D E X (continued):
 2
 3              E X H I B I T S
 4   MARKED                                    PAGE:
 5   EXHIBIT 1    MEDICAL REPORT DATED          184
                 JUNE 29, 2015
 6               (2 pages)
```

Page 7

```
 1          SAN JOSE, CALIFORNIA
 2        THURSDAY, SEPTEMBER 10, 2015
 3              10:21 a.m.
 4                -o0o-
 5
 6          VALERIE JO DALIS,
 7   called as a deponent and sworn in by
 8   the deposition officer, was examined
 9        and testified as follows:
10                -o0o-
11
12       THE VIDEOGRAPHER:  We are now recording
13   and on the record.  My name is Jason Sayler.  I am
14   a certified legal video specialist for iDepo
15   Reporters.  Our business address is 898 North
16   Sepulveda Boulevard, Suite 750, El Segundo,
17   California 90245.  Today is September, the 10th,
18   2015, and the time is 10:21 a.m.
19       This is the deposition of Valerie Jo
20   Dalis, volume number one, in the matter of Valerie
21   Jo Dalis, et al., Plaintiff, vs. Brenntag North
22   America, et al., Defendants in Superior Court of
23   New Jersey, Law Division, Middlesex County, docket
24   number MID-L-4821-15AS.  This deposition is being
25   taken at 1727 Technology Drive in the city of San
```

Page 8

```
 1   Jose, California on behalf of the defendants.  The
 2   court reporter is Cathy Meyer of iDepo Reporters.
 3   Counsel and all present will state their
 4   appearances and the court reporter will administer
 5   the oath.
 6       MS. KAGAN:  Leah Kagan, Simon Greenstone
 7   Panatier Bartlett, for the plaintiff.
 8       MR. KESSLER:  Andrew Kessler, Hoagland,
 9   Longo, Moran, Dunst & Doukas on behalf of Cypress.
10       MR. MARTINEZ:  Good morning.  Reynold
11   Martinez for Defendant Whittaker, Clark & Daniels.
12       MS. SHAW:  And Meredith Shaw with Quinn
13   Emanuel Urquhart & Sullivan here for
14   Colgate-Palmolive Company.
15       THE VIDEOGRAPHER:  And people on the phone
16   participating, please?
17       MR. CORRISTON:  Yes.  Timothy Corriston,
18   Connell Foley on behalf of Con-Air Corporation.
19       THE VIDEOGRAPHER:  The court reporter will
20   please administer the oath.
21
22              EXAMINATION
23   BY MS. SHAW:
24   Q.  Good morning, again, ma'am.  Again, my
25   name is Meredith Shaw, and I'm going to be asking
```

Page 9

```
 1   you some questions today.
 2       Could you state your name for the record.
 3   A.  Valerie Jo Dalis.
 4   Q.  Did you have a maiden name?
 5   A.  Yes.
 6   Q.  What was your maiden name?
 7   A.  Garcia.
 8   Q.  And was that Valerie Jo Garcia?
 9   A.  Yes.
10   Q.  What was your date of birth?
11   A.  ▓▓▓▓▓
12   Q.  By ▓▓▓▓▓▓▓ you mean ▓▓?
13   A.  Yes.
14   Q.  What's your current address?
15   A.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16   Q.  Is that a single-family home?
17   A.  Yes.
18   Q.  How long have you lived at ▓▓▓▓▓▓▓?
19   A.  About three or four years.
20   Q.  Excuse me?
21   A.  About three or four years.
22   Q.  Do you own your home?
23   A.  No.
24   Q.  Do you rent your home?
25   A.  No.  It was my mother-in-law's home, and
```



Page 218

1  Q. And is Jeffrey -- and to your
2  understanding, Jeffrey is with a different law
3  firm?
4  A. Yes.
5  Q. And do you recall any part of the name of
6  Jeffrey's law firm?
7  A. No. I might have a card or something.
8  Honestly I just don't remember his last name right
9  now.
10  Q. And about -- and you retained Jeffrey or
11  his law firm?
12  A. Right.
13  Q. And approximately when did you retain
14  Jeffrey or his law firm?
15  A. It might have been two or three months
16  after I was diagnosed.
17  Q. Did you ever meet with Jeffrey in person?
18  A. Yes.
19  Q. How many times did you meet with Jeffrey?
20  A. Once. Just once.
21  Q. And did you retain Jeffrey during that
22  meeting?
23  A. I believe so.
24  Q. When -- and how long did Jeffrey continue
25  to represent you?

Page 219

1  A. Up until a few months ago.
2  Q. Did you speak with Jeffrey on the
3  telephone after you met with him in person?
4  A. Yes.
5  Q. How many times did you speak with Jeffrey
6  on the telephone?
7  A. It was either him or his assistant.
8  Usually his assistant would call. Sometimes he
9  would talk and sometimes he wouldn't.
10  Q. And when you say "assistant," do you mean
11  another attorney?
12  A. I don't know if it was another attorney or
13  if it was just an intern or what. I don't know.
14  Q. So you have spoken with either Jeffrey or
15  someone from his law firm on a few occasions --
16  A. Yes.
17  Q. -- over the time that Jeffrey or his law
18  firm represented you?
19  A. Right.
20  Q. And when you say that Jeffrey represented
21  you until a few months ago, do you mean about June
22  of 2015?
23  A. It could be. I think so. No. This is
24  July. June or July I guess. I totally lose track
25  of time. I'm just sorry.

Page 220

1  Q. Now, we started talking about this because
2  you said that Jeffrey or his law firm may have made
3  claims with bankruptcy trusts.
4  A. I think that's what they're called.
5  Q. And when you say that's what they're
6  called, what are you thinking of?
7  A. I know he filed something with -- oh,
8  gosh, I can't remember the name of the trust it was
9  because I received -- I did receive money from some
10  trust. And honestly I didn't see all the
11  paperwork, so I can't give you details.
12  MS. KAGAN: I can represent that it was
13  the Johns-Manville trust that her prior lawyer
14  filed a claim with.
15  THE WITNESS: I just trusted whatever they
16  had said. I just...
17  MS. KAGAN: I can represent that that's
18  the only trust that we're aware of that has been
19  filed with.
20  BY MS. SHAW:
21  Q. What -- are you familiar with
22  Johns-Manville?
23  A. I am now.
24  Q. What do you know about Johns-Manville?
25  A. I really don't know that much. I couldn't

Page 221

1  even tell you what it was until -- and I still
2  don't really know what it was. They manufactured
3  something to do with obviously.
4  Q. What do you think that Johns-Manville
5  manufactured?
6  A. I don't know. I really don't.
7  Q. Do you have any knowledge about how you
8  may have been exposed to asbestos in connection
9  with Johns-Manville?
10  A. No.
11  MS. KAGAN: I'm going to object. Also,
12  Counsel, you're aware that filing to the
13  Johns-Manville Trust does not involve or require
14  exposure to asbestos from a Johns-Manville product.
15  It's based on a market share per diagnosis of
16  either mesothelioma, lung cancer or asbestosis. So
17  your question is misleading, it lacks foundation
18  and argumentative.
19  MS. SHAW: Thank you for the speaking
20  objection.
21  BY MS. SHAW:
22  Q. Do you have any -- do you have any
23  knowledge as to what types of products
24  Johns-Manville may have made?
25  A. No.



Page 222

1    MS. KAGAN:  Asked and answered.
2    BY MS. SHAW:
3        Q.  How much money did you receive from the
4    Johns-Manville Trust?
5        A.  $20,000 around.  Odd number, whatever it
6    was.
7        Q.  And do you have any paperwork in
8    connection with your filing with the Johns-Manville
9    Trust?
10       A.  I probably do.  I don't -- I -- my husband
11   might have kept something.
12       Q.  We just ask that you retain any paperwork
13   in connection with your claim to the Johns-Manville
14   trust and not destroy it.
15       A.  Sure.
16       Q.  If you understand that.  Okay?
17       A.  Yes.
18       Q.  Apart from the -- and when did you receive
19   the $20,000 or thereabouts from the Johns-Manville
20   Trust?
21       A.  I don't remember.
22       Q.  Are you aware of any other claims made to
23   bankruptcy trusts in connection with your illness?
24       A.  No.
25       Q.  Have you received any payments of any kind

Page 223

1    other than the $20,000 from the Johns-Manville
2    Trust in connection with your illness?
3        A.  No.
4        Q.  Why did you -- so at a certain point in
5    time Jeffrey or his law firm ceased representing
6    you; is that correct?
7        A.  Yes.
8        Q.  And why did you choose to end your
9    retention of Jeffrey or his law firm?
10       A.  It was recommended by Jeffrey.
11       MS. KAGAN:  Again, I'm going to object to
12   any further exploration.
13   BY MS. SHAW:
14       Q.  And when you ended your relationship with
15   Jeffrey or his law firm, did you retain another law
16   firm?
17       A.  Yes.
18       Q.  And who did you retain?
19       A.  Leah's law firm.
20       Q.  And how did you find Leah's law firm?
21       A.  It was referred to me.
22       Q.  And who referred you to Ms. Kagan's law
23   firm?
24       A.  Jeffrey.
25       Q.  Other than the lawyers that we've talked

Page 224

1    about, have you retained any other lawyers or law
2    firms in connection with your illness?
3        A.  No.
4        Q.  When you were first diagnosed with your
5    disease, did you talk with your husband about what
6    might have caused it?
7        A.  I'm sure we went over stuff together,
8    sure.
9        Q.  Did you say anything to your husband about
10   what you thought might have caused your disease?
11       A.  No.  I had a hard time figuring it out.
12   It was just -- it's just a mystery.
13       Q.  Other than anything we've talked about
14   today, have you talked with anyone else about what
15   might have caused your disease?
16       A.  No.
17       MS. SHAW:  I think we're finished for the
18   day.  Thank you very much for your patience, ma'am.
19       THE WITNESS:  You're welcome.
20       MS. KAGAN:  Does anybody else have any
21   questions?
22       MR. KESSLER:  No.
23       MR. MARTINEZ:  No.
24       MS. KAGAN:  Thank you so much.  This
25   concludes the defendants' discovery deposition of

Page 225

1    Valerie Jo Dalis.
2        THE VIDEOGRAPHER:  The time is 5:15 p.m.,
3    and today's deposition of Valerie Jo Dalis is
4    concluded.  This is the end of media unit number
5    four in volume number one.  There are a total of
6    four media units.  And we are off the record.
7        (Whereupon the deposition was concluded at
8        5:15 p.m.)



Case 3:16-md-02738-MAS-RLS    Document 28919-24    Filed 01/22/24    Page 7 of 7
PageID: 170279

VALERIE JO DALIS, on 09/10/2015
DALIS, et al. vs. BRENNTAG NORTH AMERICA, INC., et al.

### Page 226

```
 1   State of California    )
                            )ss
 2   County of Alameda      )
 3
 4
 5              Deponent's Declaration
 6
 7        I, VALERIE JO DALIS, do hereby certify
 8   under penalty of perjury I have read the foregoing
 9   transcript of my deposition taken on Thursday,
10   September 10, 2015; that I have made such
11   corrections as appear noted herein; that my
12   testimony as contained herein, as corrected, is
13   true and correct.
14
15        Dated this _____ day of _____,
16   20,___, at _____, California.
17
18
19
20        _____
                    VALERIE JO DALIS
21
22
23
24
25
```

### Page 227

```
 1   State of California    )
                            ) SS.
 2   County of Alameda      )
 3
 4        I, CATHERINE M. MEYER, Certified
 5   Court Reporter, Certificate No. 11596, for the
 6   State of California, hereby certify:
 7        I am the deposition officer who
 8   Stenographically recorded the foregoing deposition;
 9        Written Notice Pursuant to Rule 4:14,
10   Section 4:14-5:, having been sent to
11   the deponent, the deponent:
12             ( )  IN PERSON MADE THE CHANGES SET
                    FORTH IN THE FOREGOING TRANSCRIPT;
13
               ( )  APPROVED THE TRANSCRIPT BY SIGNING
14                  IT;
15             ( )  FAILED OR REFUSED TO SIGN THE
                    TRANSCRIPT BY NOT SIGNING IT;
16
               ( )  BY SIGNED LETTER ATTACHED HERETO,
17                  MADE THE CHANGES SET FORTH THEREIN
                    AND APPROVED, OR REFUSED TO
18                  APPROVE, THE TRANSCRIPT;
19             ( )  FAILED TO CONTACT THE DEPOSITION
                    OFFICER WITHIN THE ALLOTTED TIME
20                  PERIOD.
21
22   DATED: _____
23
24        _____
                (DEPOSITION OFFICER)
25
```

### Page 228

```
 1   State of California    )
                            )ss
 2   County of Alameda      )
 3
 4        I, CATHERINE M. MEYER, Certified Shorthand
 5   Reporter No. 11596, RPR, do hereby certify:
 6        That prior to being examined, the witness
 7   named in the foregoing deposition was by me duly
 8   sworn to testify the truth, the whole truth, and
 9   nothing but the truth;
10        That said deposition was taken down by me
11   in shorthand at the time and place therein named,
12   and thereafter reduced to print by means of
13   computer-aided transcription; and the same is a
14   true, correct, and complete transcript of said
15   proceedings.
16        I further certify that I am not interested
17   in the outcome of the action.
18        Witness my hand this 17th day of September,
19   2015.
20
21        _____
                CATHERINE M. MEYER, RPR
22              Certified Shorthand Reporter
                in and for the State of
23              California
                License No. 11596
24              iDepo Reporters
                323-393-3768 or 1-888-99-iDEPO
25
```

### Page 229

```
 1              ERRATA LIST
 2   Page/Line    From            To
 3   _____    _____    _____
 4   _____    _____    _____
 5   _____    _____    _____
 6   _____    _____    _____
 7   _____    _____    _____
 8   _____    _____    _____
 9   _____    _____    _____
10   _____    _____    _____
11   _____    _____    _____
12   _____    _____    _____
13   _____    _____    _____
14   _____    _____    _____
15   _____    _____    _____
16   _____    _____    _____
17   _____    _____    _____
18   _____    _____    _____
19   _____    _____    _____
20   _____    _____    _____
21   _____    _____    _____
22   _____    _____    _____
23   _____    _____    _____
24   _____    _____    _____
25
```

