# Exhibit 24

```
                                                              Page 1
 1              SUPERIOR COURT OF NEW JERSEY
 2              LAW DIVISION:  MIDDLESEX COUNTY
 3
 4    VALERIE JO DALIS and NICHOLAS J. )
      DALIS,                           )
 5                                     )
                        Plaintiffs,    )
 6                                     ) Case No. MID L-4821-15AS
           vs.                         )
 7                                     )
      BRENNTAG NORTH AMERICA, INC.,    )
 8    ET AL.,                          )
                                       )
 9                      Defendants.    )
                                       )
10    _____)
11
12
13
14
15                DEPOSITION OF NICHOLAS DALIS
16
17
18
19   Date and Time:   Tuesday, December 22, 2015
                      10:01 a.m.
20
21   Location:        301 South Market Street
                      San Jose, CA  95113
22
23   Reported by:     Cammi R. Bowen, CSR-13492
24
25
```

Page 2

```
 1              A P P E A R A N C E S:
 2   For the Plaintiff:   SIMON GREENSTONE PANATIER BARTLETT
                     3780 Kilroy Airport Way
 3                   Suite 540
                     Long Beach, California  90806
 4                   Tel:  (562) 590-3400
                     E-mail: Lkagan@sgpblaw.com
 5                   BY:  LEAH C. KAGAN, ESQ.
 6   For the Defendants   QUINN EMANUEL URQUHART & SULLIVAN LLP
     Colgate-Palmolive:   50 California Street
 7                   22nd Floor
                     San Francisco, California  94111
 8                   Tel:  (415) 875-6421
                     E-mail: Meredithshaw@quinnemanuel.com
 9                   BY:  MEREDITH M. SHAW, ESQ.
10   For the Defendants   HOAGLAND LONGO MORAN, DUNST & DOUKAS, LLP
     Whittaker, Clark &   40 Paterson Street
11   Daniels; Cyprus      P.O. Box 480
     Amax Minerals        New Brunswick, New Jersey  08903
12   Company:             Tel:  (732) 545-4717
                     E-Mail: Mgaffrey@hoaglandlongo.com
13                   BY:  MARC S. GAFFREY, ESQ.
14   For the Defendant   CONNELL FOLEY LLP
     Conair:             85 Livingston Avenue
15                   Roseland, New Jersey  07068
                     Tel:  (973) 535-0500
16                   E-mail: Spress@connellfoley.com
                     BY:  SCOTT M. PRESS, ESQ.
17                   (Telephonically)
18
19      Also Present:   Cassia Leet, Videographer
20
21
22
23
24
25
```

Page 4

```
 1       WITNESS INSTRUCTED NOT TO ANSWER
                PAGE     LINE
 2           16       7
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                    INDEX
 2   EXAMINATIONS:                          PAGE
 3    By Ms. Shaw......................   14
 4    By Mr. Gaffrey..................   189
 5    By Ms. Shaw.....................   242
 6    By Ms. Kagan....................   245
 7
 8                    EXHIBITS
 9   Dfs. Exhibit
        No.           Description       Ident.
10
        Exhibit 1   Notice of Deposition...............  146
11
        Exhibit 2   United States Bankruptcy Court
12                  Voluntary Petition.................  159
13      Exhibit 3   United States Bankruptcy Court
                    Summary of Schedules...............  160
14
        Exhibit 4   United States Bankruptcy Court
15                  Voluntary Petition.................  173
16      Exhibit 5   Special Criminal Hearing
                    information document dated
17                  1/22/93............................  178
18      Exhibit 6   "Information" in the People of
                    the State of California vs.
19                  Garden City, Inc., et al case......  179
20      Exhibit 7   Abstract of Judgment - Prison
                    Commitment for Defendant Nicholas
21                  John Dalis.........................  179
22      Exhibit 8   Document titled "Hit #5 - The
                    Plaintiff was involved in large
23                  criminal case.  Partial summary
                    is below"..........................  195
24
25
```

Page 5

```
 1           MR. GAFFREY:  This is Marc Gaffrey.  I
 2   represent Whittaker, Clark & Daniels, and Cyprus
 3   Amax in this case.
 4           I learned within the last couple of days
 5   that Mr. Dalis, who is to be deposed today and who
 6   is a party to this lawsuit, filed for bankruptcy,
 7   and I understand it to be in September of 2015,
 8   although I'm not certain of the date.
 9           My concern is issues related to bankruptcy.
10   There is an issue in this case as to choice of law.
11   I will admit, I don't know anything about bankruptcy
12   law.  I've been involved in many cases over the
13   years that have had bankruptcy issues.  I have
14   deferred to others much wiser than me with respect
15   to those issues.
16           I don't know and I sought advice last
17   evening with respect to -- since Mr. Dalis is a
18   party to this lawsuit and since his testimony could
19   have an impact, positive or negative, on the value
20   of this case, is it ethically appropriate to proceed
21   with this deposition today?  And, simply, I ask
22   because I don't know.  And I asked a number of
23   attorneys, both California attorneys as well as New
24   Jersey attorneys, and the answer was a resounding,
25   "We don't know."
```

2 (Pages 2 - 5)

Page 138

1  that she had to have it removed. I think there was
2  a cyst and that's why they removed it.
3      Whether it was cancerous or not, I don't
4  believe so.
5      Q. Do you recall what Mrs. Dalis told you
6  about having her ovary removed when you were in
7  daily contact with her during this time?
8      A. I remember discussing it and -- and
9  sympathizing with her, but that's about it.
10     Q. Did your wife also have surgery for a
11  hernia at some point?
12     A. Yes.
13     Q. And was that in about 2000?
14     A. I believe so.
15     Q. And do you know anything about Mrs. Dalis's
16  hernia operation in about 2000?
17     A. Other than the fact that she had it and
18  that's -- that's all I know.
19     Q. I've seen a reference in Mrs. Dalis's
20  medical records to the surgery involving mesh,
21  m-e-s-h.
22      Does that ring any bells for you?
23     A. Sure.
24     Q. Okay. And what do you know about mesh
25  being used in Mrs. Dalis's hernia operation?

Page 139

1      A. Well, I've had a couple of hernia
2  operations myself.
3      Q. Okay.
4      A. And the first time, they tried to repair it
5  with mesh. And I was lifting weights at the time,
6  and I just ripped it up. So they went in and had to
7  correct it through surgery.
8      So the mesh is put on underneath the --
9  and -- and stretched over the hernia so that the
10  hernia can't protrude anymore. And I believe the --
11  her first surgery was the mesh-type surgery for the
12  hernia.
13     Q. When you say Mrs. Dalis's "first surgery,"
14  was there a second surgery?
15     A. I don't think so. I'm not sure.
16     Q. Other than the two surgeries we've just
17  talked about, while you've been married to
18  Mrs. Dalis, do you recall any -- any surgeries?
19     A. She -- cataract surgery.
20     Q. Okay. And I'm excluding from that anything
21  related to her current illness.
22     A. Oh, yes. She --
23     MS. KAGAN: Ex- -- excluding.
24     THE WITNESS: Oh, okay. Right.
25  ///

Page 140

1  BY MS. SHAW:
2      Q. Okay. So there was a surgery to remove
3  the -- the -- her right ovary; right?
4      A. Yes.
5      Q. There was a surgery for the hernia?
6      A. Yes.
7      Q. Okay. And a cataract surgery?
8      A. Yes.
9      Q. Any other surgery that you recall
10  Mrs. Dalis having?
11     A. Other than the surgery that she had
12  regarding this, no, I can't.
13     Q. Okay. While you've been married to
14  Mrs. Dalis, do you recall her having any other
15  significant medical issues other than your common
16  cold or flu up until the time of her current
17  illness?
18     A. No.
19     Q. Is anyone financially dependent on you?
20     A. Not anymore.
21     Q. When you say "not anymore," what do you
22  mean?
23     A. Well, I -- I -- I took care of my mother
24  and my mother-in-law when they were in assisted
25  living. And our sons became self --

Page 141

1  self-sufficient. So there's really nobody else
2  that's dependent upon me.
3      Q. And when -- since you've been married to
4  Mrs. Dalis, you've financially supported Mrs. Dalis?
5      A. Yes.
6      Q. Since Mrs. Dalis has been diagnosed with
7  her current illness in 2014, have you hired anyone
8  to perform work around the house?
9      A. Yes.
10     Q. Who have you hired?
11     A. We have -- we have a -- one gentleman that
12  comes in once a month and cleans everything
13  thoroughly. And I do -- I do all the house
14  cleaning.
15     Q. And when did you first hire the gentleman
16  to do the house cleaning?
17     A. Well, he was originally hired by my mother
18  when my mother was living in the -- in the home, and
19  we -- we kept him on.
20     Q. Okay. So when your mother passed in
21  2008 --
22     A. Yes.
23     Q. -- you continued to employ a gent- -- the
24  gentleman to clean your house about once a month?
25     A. The heavy work, yes.

36 (Pages 138 - 141)

Priority-One Court Reporting Services Inc. – A Veritext Company
718-983-1234

|  | Page 142 |  | Page 144 |
|---|---|---|---|
| 1 | Q. I'm sorry? | 1 | THE WITNESS: Okay. All right. |
| 2 | A. The heavy work in the house. | 2 | MS. KAGAN: -- the attorneys here in the |
| 3 | Q. And -- | 3 | room. |
| 4 | MS. KAGAN: Nick, this is an example where | 4 | (The court reporter addressed |
| 5 | Meredith asked you about hiring somebody after | 5 | simultaneous speaking.) |
| 6 | Valerie got sick. | 6 | THE WITNESS: All right. I understand. |
| 7 | THE WITNESS: Oh. Okay. I'm sorry. | 7 | BY MS. SHAW: |
| 8 | We haven't hired anyone since Valerie has | 8 | Q. I'll ask the question again for you. |
| 9 | been sick. | 9 | A. Yeah. |
| 10 | MS. KAGAN: If there's a time that you | 10 | Q. Okay. Your -- the first attorney that you |
| 11 | don't understand Meredith's question -- | 11 | retained after your wife became ill filed a claim on |
| 12 | THE WITNESS: Right. Okay. | 12 | behalf of you and Mrs. Dalis with the Johns Manville |
| 13 | MS. KAGAN: -- you can tell her and she'll | 13 | trust for Mrs. Dalis's illness; is that right? |
| 14 | rephrase it or ask it again. | 14 | A. Yes. |
| 15 | THE WITNESS: All right. Okay. | 15 | Q. Okay. And the Johns Manville trust paid |
| 16 | BY MS. SHAW: | 16 | you and Mrs. Dalis approximately $21,000 for |
| 17 | Q. Have you and Mrs. Dalis received any | 17 | Mrs. Dalis's illness? |
| 18 | payments in connection with Mrs. Dalis's illness? | 18 | A. Yes. |
| 19 | A. Yes. | 19 | Q. Did you and Mrs. Dalis complete any |
| 20 | Q. What payment have you received in | 20 | paperwork in connection with your claim to the Johns |
| 21 | connection with Mrs. Dalis's illness? | 21 | Manville trust? |
| 22 | A. The first legal group that we retained for | 22 | A. I don't recall. |
| 23 | the mesothelioma advised us to accept a check | 23 | Q. Did you provide any information to the |
| 24 | from -- I believe it was Johns Mansville [sic] -- it | 24 | Johns Manville trust about Mrs. Dalis? |
| 25 | was for $21,000 and change -- advising us that they | 25 | A. I don't recall. |

|  | Page 143 |  | Page 145 |
|---|---|---|---|
| 1 | have this money set aside and we should go ahead and | 1 | Q. Do you know if Mrs. Dalis was exposed to |
| 2 | take it. | 2 | asbestos as a result of a product made or sold by |
| 3 | Q. Okay. So did you and Mrs. Dalis file a | 3 | Johns Manville? |
| 4 | claim with Johns Manville bankruptcy trust for | 4 | MS. KAGAN: Objection. Lacks foundation, |
| 5 | Mrs. Dalis's illness? | 5 | lacks personal knowledge, calls for speculation. |
| 6 | A. The -- the mesothelioma original attorney | 6 | MR. GAFFREY: And I'm going to object to |
| 7 | did. | 7 | form for the use "exposed." |
| 8 | Q. So your attorney filed a claim with the | 8 | BY MS. SHAW: |
| 9 | Johns Manville trust -- | 9 | Q. Do you know if Mrs. Dalis -- do you know if |
| 10 | A. Yes. | 10 | Mrs. Dalis used any product made or sold by Johns |
| 11 | Q. -- on behalf of you and Mr. -- excuse me, | 11 | Manville? |
| 12 | you and Mrs. Dalis for causing Mrs. Dalis's illness; | 12 | A. No, I don't know. |
| 13 | is that right? | 13 | Q. Do you -- what do you know about Johns |
| 14 | MS. KAGAN: Objection. Lacks foundation, | 14 | Manville, if anything? |
| 15 | calls for a legal conclusion, lacks personal | 15 | A. I know they -- they built -- what? -- |
| 16 | knowledge, calls for speculation. | 16 | large, like storm drains. That's about all I know. |
| 17 | THE WITNESS: They told us they were going | 17 | Q. What was your basis for making a claim to |
| 18 | to -- | 18 | the Johns Manville trust for Mrs. Dalis's illness? |
| 19 | MS. KAGAN: Nick, I'm going to object to | 19 | MS. KAGAN: Objection. Lacks foundation, |
| 20 | privilege here. What they told you -- | 20 | lacks personal knowledge, calls for a legal |
| 21 | THE WITNESS: Attorney-client privilege. | 21 | conclusion. |
| 22 | MS. KAGAN: -- is privileged. You -- | 22 | THE WITNESS: Advice by the attorney. |
| 23 | THE WITNESS: Yeah. | 23 | BY MS. SHAW: |
| 24 | MS. KAGAN: -- you don't get to share that | 24 | Q. Do you have any knowledge of any connection |
| 25 | with -- | 25 | between your wife and a product made or sold by |

37 (Pages 142 - 145)

Page 146

1  Johns Manville?
2      A.  No.
3      Q.  And you and your wife accepted compensation
4  from Johns Manville for your wife's illness; is that
5  right?
6          MS. KAGAN:  Asked and answered.
7          THE WITNESS:  Yes.  Upon counsel's advice.
8          MS. SHAW:  I'd like to mark an exhibit.
9          (Defendants' Exhibit 1, Notice of
10             Deposition, was marked for
11             identification.)
12         MS. SHAW:  For the record, we're going to
13  mark as Exhibit 1 the notice of deposition for
14  Mr. Nicholas Dalis's deposition here today.
15  BY MS. SHAW:
16     Q.  Sir, take a moment and take a look through
17  that.
18         Do you recognize this document, Exhibit 1?
19     A.  Do I recognize it?  No, no.
20     Q.  So you see Schedule A to the notice of
21  deposition, Exhibit 1, has a list of "Documents and
22  Other Tangible Things to Be Produced"?
23     A.  No.
24     Q.  Have you made any effort to search for or
25  determine if you have any of the documents listed in

Page 147

1  Schedule A numbered under the heading of "Documents
2  and Other Tangible Things to Be Produced"?
3          MS. KAGAN:  I'm going to object and note
4  for the record that counsel on behalf of Mr. Dalis
5  has responded to this notice and provided responses
6  to each of the 23 requests and objections thereto.
7          THE WITNESS:  And your question is?
8  BY MS. SHAW:
9      Q.  Have you made an effort to search for or
10  determine if you have any of the documents and other
11  tangible things to be produced listed on Schedule A
12  to Exhibit 1?
13         MS. KAGAN:  Same objection, incorporating
14  the objections provided to counsel in response to
15  this notice.
16         THE WITNESS:  I -- I -- I have no idea.
17  BY MS. SHAW:
18     Q.  Let's go through -- go through this, then,
19  and see if you believe you might have any of the
20  documents that are listed on Schedule A; okay?
21         Do you have in your possession any
22  documents that you viewed, looked at, or were shown
23  or were -- which were read to you at any time in
24  preparation for your deposition?
25         MS. KAGAN:  I'm going to object to asked

Page 148

1  and answered.  He's already testified that the only
2  things that he viewed were family photos.  And I've
3  already represented to counsel that in this room,
4  there's a bag of family photos that will be scanned
5  and produced to counsel, which was produced to me on
6  Sunday prior to this deposition.
7          MS. SHAW:  Counsel, again, if you could
8  refrain from the speaking objection, I would
9  appreciate it.
10         MS. KAGAN:  If you can refrain from
11  harassing and duplicative questions, I, too, would
12  appreciate it.
13  BY MS. SHAW:
14     Q.  Sir, do you have my question in mind?
15     A.  No.
16     Q.  Okay.  Do you have in your possession any
17  documents that you viewed, looked at, or were shown
18  or which were read to you by any person at any time
19  in preparation for this deposition?
20     A.  In my possession?
21     Q.  Correct.
22     A.  No.
23     Q.  Do you have any documents that relate to
24  plaintiff Valerie Jo Dalis's application or use of
25  any cosmetic talcum powder product?

Page 149

1          MS. KAGAN:  Same objections, incorporating
2  the objections that were previously provided to
3  counsel with respect to Request Number 2.
4          THE WITNESS:  No.
5  BY MS. SHAW:
6      Q.  Okay.  Do you have any documents that
7  depict, describe, or relate to any cosmetic talcum
8  powder product identified in response to Request
9  Number 2?
10         So we can skip that one.
11         Do you have any documents that relate to
12  plaintiff Valerie Jo Dalis's exposure to asbestos
13  from any source including from construction or
14  remodeling at any of her residences, from asbestos
15  on the clothes of any person, and from
16  environmental, community, or ambient asbestos?
17         MS. KAGAN:  Same objection, incorporating
18  the objections previously provided to counsel.
19         MR. GAFFREY:  On behalf of my two clients,
20  I'm offering Leah a continuing objection along those
21  lines so that we can complete this deposition today.
22         MS. KAGAN:  I don't accept.  I'm entitled
23  to object to each of those questions, but thank you
24  for your offer.
25         MR. GAFFREY:  You -- you are entitled to

Page 246

1  MS. SHAW: Join.
2  THE WITNESS: To the contrary.
3  We have gone through a number of disastrous
4  situations that would probably break up -- any one
5  of which would have broken up other couples. We
6  lost my business, we lost my freedom, we lost a
7  couple of homes.
8  And it's -- we would never have made it
9  this far unless we really loved each other. And
10 she's been the most nurturing wife I could ever --
11 ever want; a great mother and a great homemaker.
12 And a great grandmother, by the way.
13 But to the contrary. She's been -- she's
14 provided me with -- and she stood by me when I was
15 a -- away for almost two years and took care of our
16 stepson as if he were her own son.
17 And to answer your question, no, she's --
18 our relationship is stronger than ever, because -- I
19 just -- unfortunately, we're just not going to be
20 able to get through this final episode, but we're
21 going to try to make it as comfortable as we can for
22 her.
23 MS. KAGAN: Those are all the questions
24 that I have.
25 MS. SHAW: Marc.

Page 247

1  MR. GAFFREY: I'm done.
2  MS. SHAW: I think we're finished for
3  today. Thank you very much, sir.
4  THE WITNESS: Thank you.
5  MS. KAGAN: This concludes the discovery
6  deposition of Nicholas Dalis.
7  THE VIDEOGRAPHER: Okay. The number of
8  media used was four and will be retained by Veritext
9  Legal Solutions. The time is 5:15 p.m. We're off
10 the record.
11 (Off the record.)
12 (Whereupon, the deposition of Nicholas
13 Dalis was concluded at 5:15 p.m.)
14         --oOo--
15
16
17
18
19
20
21
22
23
24
25

Page 248

1  CERTIFICATE OF REPORTER
2
3  I, CAMMI R. BOWEN, a Certified Shorthand
4  Reporter, hereby certify that the witness in the foregoing
5  deposition was by me duly sworn to tell the truth, the
6  whole truth, and nothing but the truth in the
7  within-entitled cause;
8  That said deposition was taken down in shorthand
9  by me, a disinterested person, at the time and place
10 therein stated, and that the testimony of the said witness
11 was thereafter reduced to typewriting, by computer, under
12 my direction and supervision;
13 Further, that if the foregoing pertains to the
14 original transcript of a deposition in a Federal Case,
15 before completion of the proceedings, review of the
16 transcript [ ] was [ ] was not requested.
17 I further certify that I am not of counsel or
18 attorney for either or any of the parties to the said
19 deposition, nor in any way interested in the events of
20 this cause, and that I am not related to any of the
21 parties hereto.
22     DATED: 1/4/2016
23     _____
24     CAMMI R. BOWEN
       CSR #13492
25

63 (Pages 246 - 248)

Priority-One Court Reporting Services Inc. – A Veritext Company
718-983-1234