# Exhibit 32

```
 1         SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2              FOR THE COUNTY OF LOS ANGELES
 3    DEPARTMENT 4          HON. STEPHEN M. MOLONEY, JUDGE
 4
   COORDINATED PROCEEDING SPECIAL TITLE   )
 5 (RULE 3.550)                           )
                                          )
 6 LAOSD ASBESTOS CASES                   )
   _____   )
 7                                        )
                                          )CASE NO.:
 8 SHAWN JOHNSON, AN INDIVIDUAL; HOLLY    )
   JOHNSON, AN INDIVIDUAL,                )JCCP 4674/20STCV17335
 9                                        )
                                          )
10            PLAINTIFFS,                 )
                                          )
11    VS.                                 )
                                          )
12 JOHNSON & JOHNSON; JOHNSON & JOHNSON   )
   CONSUMER INC., A SUBSIDIARY OF         )
13 JOHNSON & JOHNSON; ALBERTSONS          )
   COMPANIES, INC., INDIVIDUALLY AND AS   )
14 SUCCESSOR IN INTEREST TO SAV-ON DRUG   )
   STORES, INC.; COSTCO WHOLESALE         )
15 CORPORATION; RALPHS GROCERY COMPANY;   )
   THRIFTY PAYLESS, INC., DBA RITE AID    )
16 PHARMACY; WALMART, INC. AND DOES 1     )
   THROUGH 400, INCLUSIVE,                )
17                                        )
              DEFENDANTS.                 )
18 _____   )
19
20         REPORTER'S TRANSCRIPT OF PROCEEDINGS
21            WEDNESDAY, OCTOBER 6, 2021
22                   DAY 36
23            (PAGES 10801 TO 11014)
24
25     (APPEARANCES ON NEXT PAGE)
26
27
   REPORTED BY:  DAYNA HESTER, C.S.R. 9970
28         OFFICIAL REPORTER PRO TEMPORE
```

```
1   APPEARANCES:
2   FOR THE PLAINTIFFS:    WEITZ & LUXENBERG, P.C.
3            BY:  DANNY R. KRAFT, ESQ.
             700 BROADWAY
             NEW YORK, NEW YORK  10003
4            (212) 558-5500
5            WEITZ & LUXENBERG, P.C.
             BY:  JOSEPH J. MANDIA, ESQ.
6            220 LAKE DRIVE EAST, SUITE 210
             CHERRY HILL, NEW JERSEY  08002
7            (856) 755-1115
8            WEITZ & LUXENBERG, P.C.
             BY:  BENNO ASHRAFI, ESQ.
9            1880 CENTURY PARK EAST, SUITE 700
             LOS ANGELES, CALIFORNIA 90067
10           (310) 247-0921
11
    FOR DEFENDANTS       CHEHARDY, SHERMAN, WILLIAMS, MURRAY,
12  JOHNSON & JOHNSON     RECILE, STAKELUM, & HAYES LLP
    AND                   BY:  JAMES M. WILLIAMS, PRO HAC VICE
13  JOHNSON & JOHNSON     BY:  INEMESIT U. O'BOYLE, PRO HAC VICE
    CONSUMER INC:     BY:  MATTHEW J. PERTUIT, PRO HAC VICE
14           1 GALLERIA BOULEVARD, SUITE 1100
             METAIRIE, LOUISIANA  70001
15           (504) 833-5600
16           KING & SPALDING LLP
             BY:  STACY L. FOSTER, ESQ.
17           633 WEST FIFTH STREET, SUITE 1600
             LOS ANGELES, CALIFORNIA  90071
18           (213) 443-4355
19
20
21
22
23
24
25
26
27
28
```

```
1        M A S T E R   I N D E X
2        WEDNESDAY, OCTOBER 6, 2021
3              --OOO--
4        PLAINTIFFS' EXHIBITS
5   EXHIBIT  DESCRIPTION       FOR   IN   VOL.
    NO.                    I.D.   EVD.
6
    EXHIBIT   INTERNAL TESTING DOCUMENTS    11014  11014 VOL.
7   185                                36
8
9        DEFENDANTS' EXHIBITS
10         (NONE.)
11       COURT EXHIBITS
         (NONE.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

```
                                              10801
1        M A S T E R   I N D E X
2        WEDNESDAY, OCTOBER 6, 2021
3              --OOO--
4        INDEX OF PROCEEDINGS
    DESCRIPTION                  PAGE   VOL.
5
    A.M. SESSION - OCTOBER 6, 2021      10801   VOL.
6
    DISCUSSION RE  ADMISSION OF PLAINTIFFS' FINAL  10801  VOL.
7   EXHIBIT AFTER CLOSING - BY MR. ASHRAFI
8   DISCUSSION RE  ADMISSION OF PLAINTIFFS' FINAL  10801  VOL.
    EXHIBIT AFTER CLOSING - BY THE COURT
9
    DISCUSSION RE ADMISSION OF PLAINTIFFS' FINAL  10802  VOL.
10  EXHIBIT AFTER CLOSING - BY MR. PERTUIT
11  DISCUSSION RE  JURY INSTRUCTIONS - BY    10802  VOL.
    THE COURT
12
    DISCUSSION RE  CLOSING ARGUMENT DURATIONS - BY  10802  VOL.
13  THE COURT
14  JURY INSTRUCTIONS            10803   VOL.
15  OPENING ARGUMENT  MR. KRAFT      10836   VOL.
16  P.M. SESSION - October 6, 2021      10911  VOL.
17  REBUTTAL ARGUMENT MR. WILLIAMS       10912  VOL.
18  CLOSING ARGUMENT MR. KRAFT       10992  VOL.
19  JURY INSTRUCTIONS      11009   VOL.
20  JUDICIAL ASSISTANT SWORN IN - BY THE COURT   11012  VOL.
21  DISCUSSION RE ADMISSION OF PLAINTIFFS' EXHIBIT  11013  VOL.
    NUMBER 185 - BY MR. MANDIA
22
    DISCUSSION RE ADMISSION OF PLAINTIFFS' EXHIBIT  11013  VOL.
23  NUMBER 185 - BY MS. FOSTER
24  RULING  - BY MR. MANDIA        11013  VOL.
25
         CHRONOLOGICAL INDEX OF WITNESSES
26              (NONE.)
27       ALPHABETICAL INDEX OF WITNESSES
              (NONE.)
28
```

```
1   CASE NUMBER:        JCCP 4674/20STCV17335
2   CASE NAME:      SHAWN JOHNSON, ET AL. V.
             JOHNSON & JOHNSON, ET. AL.
3
    LOS ANGELES, CA      WEDNESDAY, OCTOBER 6, 2021
4
    DEPARTMENT 4     HON. STEPHEN M. MOLONEY, JUDGE
5
    REPORTER:       DAYNA HESTER, C.S.R. 9970
6
    TIME:      8:52 A.M.
7
8   APPEARANCES:
9       REPRESENTING PLAINTIFFS:
            DANNY R. KRAFT, ATTORNEY AT LAW
10          JOSEPH J. MANDIA, ATTORNEY AT LAW
            BENNO ASHRAFI, ATTORNEY AT LAW
11      REPRESENTING DEFENDANTS:
            JAMES M. WILLIAMS, ATTORNEY AT LAW
12          INEMESIT U. O'BOYLE, ATTORNEY AT LAW
            MATTHEW J. PERTUIT, ATTORNEY AT LAW
13          STACY FOSTER, ATTORNEY AT LAW
            -- OOO --
14
15  (THE FOLLOWING WAS HEARD IN OPEN
16  COURT OUTSIDE THE PRESENCE OF THE
17  JURY.)
18      THE COURT:  OKAY.  ALL SET.
19      MR. ASHRAFI:  THERE IS ONE FINAL EXHIBIT THAT'S
20  GOING TO BE DISCUSSED TO BE ADMITTED.  AND COUNSEL FOR
21  DEFENSE AND PLAINTIFFS HAVE AGREED TO DEAL WITH THAT
22  ISSUE EITHER AT THE NOON HOUR OR AT THE CLOSING --
23  CLOSING.
24      NO ONE IS GOING TO MAKE AN ARGUMENT THAT WE
25  HAVE CLOSED, AND WE CAN'T ADMIT ANY FURTHER EXHIBITS.
26      THE COURT:  THAT'S THE COURT'S RULING THAT YOU
27  HAVE RESTED SUBJECT TO THE ADMISSION OF ALL EXHIBITS
28  THAT YOU SEEK.
```

## 10802

1    MR. ASHRAFI:  THANK YOU, YOUR HONOR.

2    MR. PERTUIT:  AND THAT'S CORRECT, YOUR HONOR.

3  THAT'S -- THAT'S OUR POSITION AS WELL.

4    THE COURT:  SO YOU AGREE?

5    MR. PERTUIT:  I AGREE.  YES, YOUR HONOR.

6    (A DISCUSSION WAS HELD OFF THE

7    RECORD IN OPEN COURT.)

8    (PAUSE IN PROCEEDINGS.)

9    THE COURT:  MR. ASHRAFI, AND, MS. FOSTER, THERE

10  ARE TWO SPECIAL JURY INSTRUCTIONS ON REDACTED DOCUMENTS

11  AND ENTITIES.  I'M GOING TO PUT THOSE RIGHT AT THE

12  BEGINNING SO THAT THEY MAKE SENSE.

13    MR. ASHRAFI:  THAT'S FINE.

14    THE COURT:  OKAY, MS. FOSTER?

15    MS. FOSTER:  OKAY.

16    THE COURT:  OKAY.

17    (A DISCUSSION WAS HELD OFF THE

18    RECORD IN OPEN COURT.)

19    (PAUSE IN PROCEEDINGS.)

20    THE COURT:  MR. WILLIAMS, WE HAD A DISCUSSION

21  AMONGST THE TWO TRIAL TEAMS, AND I INDICATED THAT I

22  WOULD ALLOCATE THE TIME EQUALLY AND GIVE THE PLAINTIFF

23  2 HOURS AND 20 -- 15 MINUTES AND THE DEFENSE 2 HOURS

24  AND -- AND 15 MINUTES.

25    MR. KRAFT IS GOING TO RESERVE 30 OF THOSE

26  MINUTES.  SO HE'LL TAKE AN HOUR AND 45 MINUTES --

27  INITIALLY UP TO AN HOUR AND 45.

28    AND THEN WE'LL TAKE OUR BREAK FOR LUNCH AND

## 10803

1  THEN HEAR YOU AT 1:30.

2    MR. WILLIAMS:  THANK YOU.

3    (PAUSE IN PROCEEDINGS.)

4    (THE FOLLOWING WAS HEARD IN OPEN

5    COURT WITHIN THE PRESENCE OF THE

6    JURY.)

7    THE COURT:  GOOD MORNING.

8    AND LET ME THANK ALL OF YOU, AGAIN, JURORS AND

9  ALTERNATES FOR BEING ON TIME.  THANK YOU.

10    JURY PANEL:  GOOD MORNING.

11

12    JURY INSTRUCTIONS

13    THE COURT:  MEMBERS OF THE JURY AND ALTERNATES,

14  YOU HAVE NOW HEARD ALL THE EVIDENCE.  AND SHORTLY YOU

15  WILL HEAR THE CLOSING ARGUMENTS OF THE ATTORNEYS.

16    THEY WILL HAVE ONE LAST CHANCE TO TALK TO YOU

17  DURING THEIR CLOSING ARGUMENT.  BUT BEFORE THEY DO SO,

18  IT'S MY DUTY TO INSTRUCT YOU ON THE LAW THAT APPLIES TO

19  THIS CASE.

20    YOU MUST FOLLOW THESE INSTRUCTIONS AS WELL AS

21  THOSE I PREVIOUSLY GAVE YOU.

22    YOU WILL HAVE A COPY OF MY INSTRUCTIONS WITH

23  YOU WHEN YOU GO TO THE JURY ROOM TO DELIBERATE.

24    YOU MUST DECIDE WHAT THE FACTS ARE.  YOU MUST

25  CONSIDER ALL THE EVIDENCE AND THEN DECIDE WHAT YOU THINK

26  HAPPENED.  YOU MUST DECIDE THE FACTS BASED ON THE

27  EVIDENCE ADMITTED IN THIS TRIAL.

28    DO NOT ALLOW ANYTHING THAT HAPPENS OUTSIDE THE

## 10804

1  COURTROOM TO AFFECT YOUR DECISION.

2    DO NOT TALK ABOUT THE CASE OR THE PEOPLE

3  INVOLVED IN IT WITH ANYONE, INCLUDING FAMILY AND PERSONS

4  LIVING IN YOUR HOUSEHOLD, FRIENDS AND CO-WORKERS,

5  SPIRITUALLY LEADERS, ADVISORS, OR THERAPISTS.

6    DO NOT DO ANY RESEARCH ON YOUR OWN OR AS A

7  GROUP.

8    DO NOT USE DICTIONARIES OR OTHER REFERENCE

9  MATERIALS.

10    THESE PROHIBITIONS ON COMMUNICATIONS AND

11  RESEARCH EXTEND TO ALL FORMS OF ELECTRONIC

12  COMMUNICATIONS.

13    DO NOT USE ANY ELECTRONIC DEVICE OR MEDIA SUCH

14  AS YOUR CELL PHONE OR SMARTPHONE; YOUR COMPUTER; TABLET

15  DEVICE; THE INTERNET; ANY INTERNET SERVICE; ANY TEXT OR

16  INSTANT MESSAGING SERVICE; ANY INTERNET CHAT ROOM, BLOG,

17  OR WEBSITE, INCLUDING SOCIAL NETWORKING WEBSITES OR

18  ONLINE DIARIES TO EITHER SEND OR RECEIVE ANY INFORMATION

19  TO OR FROM ANYONE ABOUT THIS CASE OR YOUR EXPERIENCE AS

20  A JUROR UNTIL YOU HAVE BEEN DISCHARGED FROM YOUR JURY

21  DUTY.

22    DO NOT INVESTIGATE THE CASE OR CONDUCT ANY

23  EXPERIMENTS.

24    DO NOT CONTACT ANYONE TO ASSIST YOU, SUCH AS A

25  FAMILY ACCOUNTANT OR DOCTOR OR LAWYER.

26    DO NOT VISIT OR VIEW THE SCENE OF ANY EVENT

27  INVOLVED IN THIS CASE.  IF YOU HAPPEN TO PASS BY A SCENE

28  MENTIONED IN THIS CASE, DO NOT STOP OR INVESTIGATE.

## 10805

1    ALL JURORS MUST SEE OR HEAR THE SAME EVIDENCE

2  AT THE SAME TIME.

3    ALSO DO NOT LISTEN TO, READ, OR WATCH ANY NEWS

4  ACCOUNTS OF THIS TRIAL.

5    YOU MUST NOT LET BIAS, SYMPATHY, PREJUDICE, OR

6  PUBLIC OPINION INFLUENCE YOUR DECISION.

7    I AM OBLIGATED TO ADVISE YOU THAT, IF YOU

8  VIOLATE ANY OF THESE PROHIBITIONS ON COMMUNICATION AND

9  RESEARCH, INCLUDING PROHIBITIONS ON ELECTRONIC

10  COMMUNICATIONS AND RESEARCH, YOU MAY BE HELD IN CONTEMPT

11  OR FACE OTHER CRIMINAL SANCTIONS.

12    I'LL NOW TELL YOU THE LAW THAT YOU MUST FOLLOW

13  TO REACH YOUR VERDICT:

14    YOU MUST FOLLOW THE LAW EXACTLY AS I GIVE IT TO

15  YOU, EVEN IF YOU DISAGREE WITH IT.

16    IF THE ATTORNEYS SAY ANYTHING DIFFERENT ABOUT

17  WHAT THE LAW MEANS -- AND I DON'T ANTICIPATE THAT THEY

18  WILL -- YOU MUST FOLLOW WHAT I SAY THE LAW IS.

19    IN REACHING YOUR VERDICT, DO NOT GUESS WHAT I

20  THINK YOUR VERDICT SHOULD BE FROM SOMETHING I MAY HAVE

21  SAID OR DONE DURING THE TRIAL.

22    PAY CAREFUL ATTENTION TO ALL OF THE

23  INSTRUCTIONS THAT I GIVE YOU.  ALL OF THE INSTRUCTIONS

24  ARE IMPORTANT BECAUSE TOGETHER THEY STATE THE LAW THAT

25  YOU WILL USE IN THIS CASE.

26    YOU MUST CONSIDER ALL OF THE INSTRUCTIONS

27  TOGETHER.

28    AFTER YOU HAVE DECIDED WHAT THE FACTS ARE, YOU

10862

1  THEM, BEFORE JOHNSON & JOHNSON GOT TO HIM AND SAID,
2  "HEY, YOU WANT TO MAKE SOME MORE MONEY, MILLIONS OF
3  DOLLARS?"  HE WROTE [AS READ]:
4      "IT IS...APPRECIATED THAT TRIVIAL
5      AMPHIBOLE ASBESTOS EXPOSURES MAY CAUSE
6      MESOTHELIOMA IN SUSCEPTIBLE INDIVIDUALS'" --
7      LIKE MR. JOHNSON -- "AND THAT THE RISK
8      CANNOT BE ADEQUATELY CONTROLLED BY WORKPLACE
9      TECHNOLOGY AND CONTROL REGULATIONS.'"
10     THAT'S WHAT HE WROTE BEFORE THEY GOT TO HIM
11  AND THEY STARTED STICKING THEIR MONEY IN HIS COIN SLOT
12  AND BEFORE THEY ASKED HIM TO START SINGING THEIR TUNE,
13  PLAY THEIR SONG.
14     RISK DOESN'T EQUAL CAUSE.
15     HOWEVER, IN THIS INSTANCE, MR. JOHNSON'S RISK
16  OF DEVELOPING DISEASE WAS INCREASED BY HIS EXPOSURE TO
17  JOHNSON'S BABY POWDER, AND HIS PERITONEAL MESOTHELIOMA
18  WAS CAUSED BY THE EXPOSURE TO THIS COMPANY'S PRODUCT.
19  PERIOD.
20     THAT'S THE EVIDENCE IN THE CASE.
21     NOW, MEDICAL EXPERTS.
22     WHY WOULD MR. WILLIAMS GO OUT OF HIS WAY IN
23  OPENING STATEMENTS TO CALL THESE PEOPLE "LAWSUIT
24  SCIENTISTS."
25     YOU HAD A CHANCE TO SEE EVERY EXPERT WITNESS
26  COME IN AND TESTIFY.
27     WHOSE EXPERTS WERE THE LAWSUIT SCIENTISTS?
28     PLAINTIFFS' EXPERTS, ALL TREATING PHYSICIANS.

10863

1      DR. ZHANG, THE ONLY OCCUPATIONAL MEDICAL
2  SPECIALIST AND PATHOLOGIST WITH A PRACTICE IN MEDICAL
3  GENETICS.
4      DR. HORN, LIFE-LONG PRACTICING PULMONOLOGIST
5  HERE IN CALIFORNIA.  I DIDN'T NEED TO FLY TO WALES TO
6  FIND A, QUOTE/UNQUOTE, "ONLY PROFESSOR IN THAT COUNTRY"
7  WHICH, BY THE WAY, DEFIES THE LOGIC OF REASON AND
8  BELIEF.
9      RIGHT HERE IN CALIFORNIA, DR. HORN SEEN
10  THOUSANDS OF ASBESTOS VICTIMS.
11     DR. SMITH, EMERITUS PROFESSOR AT CAL BERKELEY,
12  EPIDEMIOLOGIST, PRACTICING EPIDEMIOLOGIST.  SOMEONE WHO
13  ACTUALLY DOES REAL EPIDEMIOLOGY, TEACHES EPIDEMIOLOGY,
14  HAS BEEN DOING IT FOR DECADES.
15     DR. MOLINE, OCCUPATIONAL AND PREVENTATIVE
16  MEDICINE SPECIALIST.  PRESIDENT OF ONE OF THE LARGEST
17  HEALTH SYSTEMS IN NEW YORK.  SEES PATIENTS EVERY DAY.
18  PART OF THE WORLD TRADE CENTER VICTIMS COMPENSATION
19  FUND.  COVID RESCUE.
20     THESE AREN'T LAWSUIT SCIENTISTS.  THESE ARE
21  THE BEST OF THE BEST IN THEIR FIELD.
22     THE BEST OF THE BEST IN THEIR FIELD.
23     AND THEY CAME IN AND THEY ANSWER QUESTIONS
24  HONESTLY.  THEY DIDN'T DIVERT.  THEY DIDN'T FIGHT.
25  THEY DIDN'T ARGUE.
26     AND WHAT DID THEY HAVE TO SAY?
27     WELL, THIS WHOLE GENETIC TESTING THING, WELL,
28  MR. JOHNSON HAD HIS GENES TESTED AND HIS PHYSICIANS

10864

1  ORIGINALLY THOUGHT HE MAY HAVE SOME -- SOME
2  SUSCEPTIBILITY FOR PROSTATE CANCER, SOME FAMILY ISSUES,
3  SOME HEREDITARY ISSUES, SOME GENETIC ISSUE.
4      SO THEY, AT THE HUNTSMAN CANCER INSTITUTE,
5  TESTED HIM.  TESTED 67 OR 65 OR WHATEVER NUMBER.
6  MR. WILLIAMS COULDN'T REMEMBER.  TESTED HIM FOR ALL
7  THOSE.  AND NOT A SINGLE GENETIC DEFECT WAS FOUND.  NOT
8  ONE.  NOT ONE.
9      NO CLINICALLY SIGNIFICANT VARIANCE DETECTED.
10     NOW, YOU'RE GOING TO NEED TO -- YOU'RE GOING
11  TO HEAR A CHARGE, AND YOU HAVE ALREADY HEARD IT.
12     EVEN IF SHAWN JOHNSON WAS MORE SUSCEPTIBLE TO
13  INJURY THAN A NORMALLY HEALTHY PERSON WOULD HAVE BEEN
14  AND EVEN IF A NORMALLY HEALTH PERSON WOULD NOT HAVE
15  SUFFERED A SIMILAR INJURY, YOU COULD STILL FIND IN HIS
16  FAVOR.
17     IT'S A COMPLETE RED HERRING.  IT'S AN ABSOLUTE
18  MADE-UP FABRICATED DEFENSE THAT'S NOT BASED ON SCIENCE,
19  THAT'S NOT BASED ON PEER-REVIEWED MEDICAL AND
20  SCIENTIFIC LITERATURE.
21     THIS WHOLE IDEA THAT MR. JOHNSON'S DISEASE IS
22  THE RESULT OF SOME FAMILIAL CANCER SYNDROME OR
23  HEREDITARY CANCER SYNDROME IS COMPLETELY FABRICATED.
24     WHY?  BECAUSE THEY NEED SOME KIND OF DEFENSE
25  OTHER THAN THE ASBESTOS CAUSED THE MESOTHELIOMA.
26     BECAUSE EVEN INTERNALLY AT JOHNSON & JOHNSON,
27  JOHNSON & JOHNSON KNOWS MESOTHELIOMA IS ONLY
28  EXCLUSIVELY ALWAYS CAUSED BY ASBESTOS EXPOSURE.

10865

1      GRASPING AT STRAWS, THROWING ANYTHING ON THE
2  WALL, SEEING WHAT STICKS, HOPING SOMETHING STICKS,
3  HOPING ONE OF YOU WILL BITE AT THIS FAKE, FABRICATED
4  NON-SCIENTIFIC DEFENSE.
5      DON'T DO IT, LADIES AND GENTLEMEN.
6      YOU HEARD DR. MOLINE EXPLAIN THE CONCEPT OF
7  INDIVIDUAL SUSCEPTIBILITY TO YOU.  SOMETHING ABOUT OUR
8  INTERNAL MAKEUP MAKES US MORE SUSCEPTIBLE TO CERTAIN
9  TOXINS.
10     SOMETHING INTERNALLY TO MR. JOHNSON HAS MADE
11  HIM MORE SUSCEPTIBLE THAN THE REST OF THE WORLD TO THE
12  ASBESTOS IN JOHNSON'S BABY POWDER.
13     AND JUST BECAUSE HE IS MORE SUSCEPTIBLE,
14  DOESN'T MEAN HE DOESN'T WIN THIS CASE.
15     JOHNSON & JOHNSON, WHEN THEY SELL THIS
16  PRODUCT, THEY HAVE TO MAKE IT SAFE FOR EVERYONE.  AND
17  THAT'S -- THAT'S WHY YOU GET THIS CHARGE, LADIES AND
18  GENTLEMEN.  THAT'S WHY THIS WAS READ TO YOU.
19     I ASKED DR. MOLINE.  REMEMBER, DR. MOLINE HAD
20  A FOUR-STEP PROCESS THAT SHE UTILIZED IN ASSESSING
21  WHETHER MR. JOHNSON'S EXPOSURES TO ASBESTOS FROM
22  JOHNSON'S BABY POWDER CAUSED HIS DISEASE.  AND SHE
23  TALKED ABOUT THE FOUR STEPS THAT SHE WENT THROUGH.
24     AND SHE ARRIVED AT HER CONCLUSION, WHICH WAS
25  BASED UPON SCIENCE, PEER-REVIEWED PUBLICATIONS, HER OWN
26  WRITINGS, HER OWN CASE SERIES.
27     REMEMBER THE MOLINE CASE SERIES, THE EMORY
28  CASE SERIES.  OVER A HUNDRED PEOPLE EXPOSED TO COSMETIC

10866

1 TALC GETTING MESOTHELIOMA.
2 HOW MANY PEOPLE HAVE TO DIE OF MESOTHELIOMA
3 BEFORE THIS COMPANY WILL SAY, "OKAY. ENOUGH'S ENOUGH.
4 WE ADMIT IT WE DID IT"?
5 THE CRAZY THING IN OUR SOCIETY, EVEN IF YOU'RE
6 GUILTY, YOU CAN COME INTO COURT AND REQUIRE THE OTHER
7 SIDE TO PROVE IT.
8 THAT'S WHAT JOHNSON & JOHNSON DID. THEY CAME
9 INTO THIS COURTROOM KNOWING THAT THEY WERE LIABLE,
10 KNOWING THAT THEY WERE GUILTY, AND THEY SAID, "HEY,
11 PLAINTIFF PROVE IT."
12 AND THAT'S WHAT WE'VE DONE OVER THE LAST
13 36 DAYS. AND I KNOW IT'S BEEN EXHAUSTING. IT'S BEEN
14 EXHAUSTING FOR ME AND MY TEAM.
15 I KNOW AT TIMES IT'S BEEN FRUSTRATING FOR YOU
16 AS JURORS. I KNOW IT'S BEEN HARD TO GET HERE EVERY
17 DAY. I KNOW SOMETIMES IT'S HARD TO PAY ATTENTION.
18 BUT IT'S THAT IMPORTANT.
19 THE LAST 36 DAYS, WE SAID TO THEM, "ALL RIGHT.
20 YOU WANT US TO PROVE IT? THAT'S EXACTLY WHAT WE'RE
21 GOING TO DO."
22 AND THAT'S EXACTLY WHAT WE DID, LADIES AND
23 GENTLEMEN.
24 AND DR. MOLINE TELLS YOU HIS EXPOSURES FROM
25 1964 TO 1978. THOSE EXPOSURES ALONE CAUSED HIS
26 DISEASE, INCREASED HIS RISK OF MESOTHELIOMA.
27 SHE TELLS YOU, "ALL RIGHT. IF YOU JUST LOOK
28 AT 1985 THROUGH 2019, THAT EXPOSURE PERIOD ALONE

10867

1 SUFFICIENT TO HAVE CAUSED HIS PERITONEAL MESOTHELIOMA,
2 INCREASED HIS RISK OF DISEASE."
3 DR. SMITH, EPIDEMIOLOGIST, EMERITUS PROFESSOR,
4 CAL BERKELEY.
5 "WHAT WAS THE CAUSE OF DR. JOHNSON'S DISEASE?
6 "ASBESTOS CONTAMINATION OF THE TALCUM POWDER
7 THAT HE USED AND INHALED."
8 DR. HORN.
9 "QUESTION: TO A REASONABLE DEGREE OF MEDICAL
10 CERTAINTY...WHAT WAS [THE] SUBSTANTIAL CONTRIBUTING
11 FACTOR [OF] INCREASING MR. JOHNSON'S RISK OF DEVELOPING
12 MESOTHELIOMA?
13 "ANSWER: ...IT WAS THE USE OF
14 JOHNSON & JOHNSON BABY POWDER."
15 THE BEST OF THE BEST, EXPERTS, PULMONOLOGISTS,
16 EPIDEMIOLOGISTS, OCCUPATIONAL MEDICINE DOCTOR,
17 PATHOLOGISTS ALL CAME INTO THIS COURTROOM AND TOLD YOU
18 IT WAS HIS USE OF BABY POWDER WHICH CAUSED HIS DISEASE
19 AND WHICH IS GOING TO KILL HIM.
20 NOW, LET'S TALK ABOUT THE -- IT KILLED ME --
21 AND RYAN, MR. TRAVIS, MADE ME WRITE "EXPERTS" UP THERE.
22 I HAD ANOTHER WORD. HE MADE ME WRITE "EXPERTS," AND IT
23 KILLED ME TO DO IT.
24 BECAUSE I DON'T BELIEVE THAT THEY WERE --
25 THEY'RE EXPERTS.
26 THEY ARE PAID WITNESSES. PAID PROFESSIONAL
27 WITNESSES. ACTORS.
28 THEY WERE GIVEN A SCRIPT BY JOHNSON & JOHNSON

10868

1 AND PAID TO COME UP ON THAT WITNESS STAND AND NO MATTER
2 WHAT QUESTION I ASKED, THEY WERE PAID TO TELL
3 JOHNSON & JOHNSON'S STORY.
4 AND THAT'S WHAT IT IS. A STORY NOT BASED UPON
5 FACT OR SCIENCE.
6 REMEMBER HOW MR. WILLIAMS TOUTED TO YOU, "OH,
7 SHE IS FROM JOHNS HOPKINS, JOHNS HOPKINS"?
8 JOHNS HOPKINS IS A GREAT UNIVERSITY. THEY HAVE
9 SOME VERY WELL-KNOWN AND RENOWNED PHYSICIANS,
10 CLINICIANS, MOLECULAR BIOLOGISTS, GENETICISTS.
11 JOHNSON & JOHNSON COULDN'T GET ONE OF THOSE PEOPLE.
12 THEY COULD ONLY GET HER.
13 AND I HAVE TO TELL YOU IF I WAS SUFFERING FROM
14 COVID OR I HAD SOME VASCULAR DISEASE, SHE MAY BE THE
15 PERSON YOU GO SEE.
16 BUT WHEN IT COMES TO MESOTHELIOMA AND WHEN IT
17 COMES TO THIS CASE, WRONG PLACE, WRONG TIME, PAID FOR
18 OPINION AS THIN -- AS THIN AS A PIECE OF PAPER.
19 REMEMBER IN "MY COUSIN VINNY" WHERE HE TAKES
20 THE CARDS AND HE SAYS. IF YOU LOOK AT IT AND SEE HOW
21 THIN IT IS, THEY WANT TO SHOW YOU IT'S A BRICK?
22 PAPER-THIN, HER OPINION, BASED UPON BASICALLY
23 NOTHING.
24 [AS READ]:
25 "QUESTION: YOU'VE NEVER DONE ANY RESEARCH
26 IN YOUR LABORATORY RELATED TO MESO...?
27 NEVER, NEVER, NEVER.
28 "ANSWER: ...CORRECT...."

10869

1 "QUESTION: OTHER THAN JOHNSON & JOHNSON
2 AND OTHER DEFENDANTS IN ASBESTOS LITIGATION,
3 NO ONE EVER ASKED YOU ABOUT YOUR OPINION
4 ABOUT COSMETIC TALC OR THE ABILITY OF IT TO
5 CAUSE DISEASE.
6 "HAS THAT EVER HAPPENED?
7 "ANSWER: NO, SIR.
8 "QUESTION: WHEN SOMEONE IS DIAGNOSED WITH
9 MESOTHELIOMA AT THE CANCER CENTER, AT JOHNS
10 HOPKINS, NO ONE EVER CALLS YOU AND SAYS,
11 'HEY, DR. DAMICO, WHAT'S YOUR OPINION AS TO
12 THE CAUSE OF THIS DISEASE'?
13 "THAT NEVER HAPPENS.
14 "ANSWER: THAT'S CORRECT.
15 "QUESTION: WHAT RESEARCH HAVE YOU
16 DONE" --
17 NOW, THIS IS THE BEST.
18 "QUESTION: TELL ME WHAT RESEARCH YOU HAVE
19 EVER DONE ON HERITABLE CANCER SYNDROMES OR
20 FAMILIAL CANCER SYNDROMES.
21 "ANSWER: I HAVE NOT, SIR.
22 "QUESTION: TELL ME THE LECTURES YOU HAVE
23 GIVEN...."
24 "ANSWER: I DON'T THINK I HAVE HAD -- EVER
25 HAD THE OCCASION TO GIVE THAT LECTURE."
26 SHE'S DONE ABSOLUTELY NO RESEARCH ON THE
27 SUBJECT SHE WAS CALLED TO TESTIFY ABOUT. SHE BASES HER
28 ENTIRE OPINION ON A WEBSITE, THE AMERICAN CANCER

11014

1    THEY WILL BE RECEIVED INTO EVIDENCE AND SO MARKED BY
2    MS. GONZALEZ.
3        MR. MANDIA:  WE HAVE THE TAB ON IT, TOO; SO SHE
4    CAN SEE IT'S EXHIBIT 185.
5        (PLAINTIFFS' EXHIBIT 185 WAS MARKED
6        FOR IDENTIFICATION AND RECEIVED INTO
7        EVIDENCE.)
8        (WHEREUPON, AT 4:41 P.M., THE
9        PROCEEDINGS CONCLUDED AND WERE
10       SCHEDULED TO RESUME THURSDAY, OCTOBER
11       7, 2021, AT 9:00 A.M.)
12           --- OOO ---
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

1        SUPERIOR COURT OF THE STATE OF CALIFORNIA
2          FOR THE COUNTY OF LOS ANGELES
3    DEPARTMENT 4        HON. STEPHEN M. MOLONEY, JUDGE
4
    COORDINATED PROCEEDING SPECIAL TITLE   )
5    (RULE 3.550)                          )
                                           )
6    LAOSD ASBESTOS CASES                  )
     _____      )
7    SHAWN JOHNSON, AN INDIVIDUAL.; ET AL., )CASE NO.:
8                                          )
         PLAINTIFFS,      )JCCP 4674/20STCV17335
9    VS.                  )
10                        )
     JOHNSON & JOHNSON; ET AL.,     )
11                                  )
         DEFENDANTS.        )
12   _____      )
13
14       I, DAYNA HESTER, CSR NO. 9970, OFFICIAL
15   REPORTER PRO TEMPORE OF THE SUPERIOR COURT OF THE STATE
16   OF CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO HEREBY
17   CERTIFY THAT I DID CORRECTLY REPORT THE PROCEEDINGS
18   CONTAINED HEREIN AND THE FOREGOING PAGES, 10801 THROUGH
19   11014-11100, COMPRISE A TRUE AND CORRECT TRANSCRIPT OF
20   THE PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED CAUSE ON
21   WEDNESDAY, OCTOBER 6, 2021.
22       DATED THIS THURSDAY, OCTOBER 7, 2021.
23
24
25
26                      , CSR NO. 9970
         DAYNA HESTER
27       OFFICIAL REPORTER
28       PRO TEMPORE