# Exhibit 33

```
                                                              Page 1

 1              GRAVES CIRCUIT COURT
                    DIVISION 1
 2             COMMONWEALTH OF KENTUCKY
                JUDGE TIMOTHY C. STARK
 3   --------------------------------------------------------X
     CAROLYN WARD WIMAN and LATTA W. WIMAN,
 4
                                Plaintiffs,
 5
 6   vs.                          DEPOSITION UNDER ORAL
                                     EXAMINATION OF
 7                               JACQUELINE MOLINE, M.D.
 8
     TRIANGLE ENTERPRISES, et al.,
 9
                                Defendants.
10
     Case No:  18-CI-00181
11   --------------------------------------------------------X
12
13
14
15        Transcript of the deposition of the witness,
     called for Oral Examination in the above-captioned
16   matter, said deposition being taken pursuant to
     Federal Rules of Civil Procedure by and before BRENDA
17   FITZGERALD, a Notary Public and Shorthand Reporter,
     at the Northwell Health, 175 Community Drive, Great
18   Neck, New York on Monday, November 25, 2019,
     commencing at 10:10 in the forenoon.
19
20
21
         PRIORITY-ONE COURT REPORTING SERVICES, INC.
22               290 West Mt. Pleasant Avenue
                 Livingston, New Jersey 07039
23                     (718) 983-1234
24
     Job No. 3782925
25
```

### Page 2

```
                    I N D E X
WITNESS              EXAMINATION BY        PAGE
Jacqueline Moline, M.D.   Mr. Ewald           4
                          Mr. Gault         117

                    EXHIBITS
   MOLINE        DESCRIPTION          FOR IDENT

     1    Deposition notice                20

     2    Dr. Moline's Reference & Reliance List   20

     3    Dr. Moline's Curriculum Vitae    22

     4    Dr. Moline's Deposition/Trial List   25

     5    Dr. Moline's handwritten notes   26

     6    Dr. Moline's Materials Reviewed/Relied   27

     7    Accepted copy of manuscript entitled
          Mesothelioma Associated with the Use of
          Cosmetic Talc                    27

     8    AMA Analytical Services, Inc. Certificate
          of Analysis                      94
     9    Johnson & Johnson press release  97
    10    Accepted copy of Exponent manuscript   101
    11    Copy of article entitled Health Effects
          of Censored Elongated Mineral Particles 107

    12    Copy of PowerPoint slide        110

    13    Copy of PowerPoint slide        111

    14    Copy of PowerPoint slide        113

  * 15    List of contents of documents in three
          binders                         117
  * To be provided
                     - oOo -
```

### Page 3

```
 1  A P P E A R A N C E S:
 2     LEVY KONIGSBERG, LLP
            Attorneys for Plaintiff
 3          800 Third Avenue
            New York, New York 10022
 4     BY:  AMBER LONG, ESQ.
 5
 6     ORRICK, HERRINGTON & SUTCLIFFE, LLP
            Attorneys for the Defendant(s)
 7          Johnson & Johnson
            51 West 52nd Street
 8          New York, New York 10019-6142
       BY:  JOHN L. EWALD, ESQ.
 9          ANNA E. STUART, ESQ.
10
11     NAPIER, GAULT, SCHUPBACH & STEVENS, PLC
            Attorneys for the Defendant(s)
12          Continental Tire
            730 West Main Street
13          Louisville, Kentucky 40202
       BY:  PATRICK W. GAULT, ESQ.
14          (TELEPHONICALLY)
15
16              - oOo -
```

### Page 4

1 J A C Q U E L I N E  M O L I N E, having been first
2 duly sworn by a Notary Public of the State of New
3 York, was examined and testified as follows:
4 EXAMINATION BY
5 MR. EWALD:
6    Q.    Good morning, Dr. Moline.
7    A.    Good morning.
8    Q.    How many hours have you spent preparing
9 for your deposition today?
10   A.    Can you define what you mean by that?
11   Q.    Sure. Let's make it broader. How much
12 time have you spent on your work in this case
13 specifically?
14   A.    I would say approximately ten hours.
15   Q.    Can you please detail how you spent
16 those ten hours.
17   A.    Reading through the medical records,
18 going through taking notes on the medical records.
19 Reading through the materials that were sent to me
20 was the majority of the time, and then I had a brief
21 meeting with Ms. Long on Friday.
22   Q.    How long was that meeting?
23   A.    Where we discussed the case, probably
24 about 30 minutes, if that long.
25   Q.    Have you prepared an invoice for your

### Page 5

1 work in this case?
2    A.    No, not yet.
3    Q.    What are the case-specific opinions
4 you're offering here?
5          MS. LONG: Objection to form.
6    A.    That Carolyn Wiman is suffering from
7 peritoneal mesothelioma as a result of her exposures
8 to asbestos.
9    Q.    What asbestos exposures have you
10 identified that Ms. Wiman encountered?
11   A.    She had exposure from her husband who
12 worked at General Tire, her first husband. Her
13 second husband also worked at General Tire, but he
14 was retired by the time they married, and her
15 exposures to Johnson & Johnson products.
16         There is a question with no information
17 whether her father might have had exposure when he
18 worked as a carpenter helper at the gaseous diffusion
19 plant in Kentucky, but there's no -- it's a possible
20 exposure because there is no information related to
21 what he actually did there, and also she assisted her
22 mother with the laundry, but really helped hang it
23 rather than shake it out and do the laundering, she
24 did more of the hanging to dry, but that is a
25 potential exposure, but the ones where -- the others

Page 46

1 cosmetic talc, but also take-home exposure from her
2 husband. So that was the differentiation. This case
3 actually allows us to give you a stark example of
4 what I meant.
5    Q.   Can you describe what the parameters you
6 used in choosing the individual cases for this
7 series?
8        MS. LONG: Objection to form.
9    A.   Only in a general sense in that I went
10 through various cases and looked to see if there was
11 alternate exposures or additional exposures in
12 addition. For example, a spouse or they were
13 involved in home renovations or something along the
14 like and excluded those cases from the 33 I wrote
15 about.
16   Q.   Were there any other general parameters
17 that you used in choosing the 33 that you write about
18 in the paper?
19   A.   It was the cases that I had to choose
20 from testimony that we were writing the paper.
21 Certainly there have been other cases since the paper
22 was started that I did not include, but it was just
23 going through them sequentially basically.
24   Q.   Is it your understanding, Dr. Moline,
25 that Dr. Gordon was compensated for the tissue

Page 47

1 digestion work that he did as an expert witness in
2 talc litigation for the six cases that are identified
3 here?
4        MS. LONG: Objection to form.
5    A.   I have had no conversations with
6 Dr. Gordon regarding that.
7    Q.   But do you have an understanding that
8 the six tissue digestions of his that are discussed
9 in this paper were done in the context as an expert
10 witness in asbestos litigation?
11       MS. LONG: Objection to form.
12   A.   Yes, that was the initial manner by
13 which he was asked to do the tissue digestion. I
14 think we were pretty explicit in the article about
15 the providence of these cases.
16   Q.   So there was six tissue digestions by
17 Dr. Gordon that are discussed in the paper, correct?
18   A.   Correct.
19   Q.   Did Dr. Gordon conduct any tissue
20 analysis of which you are aware in connection with
21 the other 27 cases discussed?
22   A.   I have not discussed that with him. We
23 decided to limit the number of cases to six. It
24 becomes overwhelming for a reader to read multiple
25 cases that are all very similar. I actually never

Page 48

1 had a discussion with him if he had ever done tissue
2 digestion on the other 27. We decided to write up
3 six cases and then describe other cases.
4    Q.   How did you choose the six cases?
5    A.   Again, it was six cases that Dr. Gordon
6 had, that he had done, and I had also reviewed those
7 cases and we realized in looking at those cases that
8 there had been no additional or no other sources of
9 asbestos apart from the cosmetic talc, so it was
10 looking at a list of these six cases and reviewing to
11 ensure there was no additional exposure.
12   Q.   Who selected the six cases?
13   A.   Dr. Gordon. It was Dr. Gordon did the
14 tissue digestion was the starting point, so it was
15 these six cases that had no additional exposures.
16   Q.   So Dr. Gordon identified these six cases
17 as ones where he did tissue digestions and you said
18 basically yes, we'll focus on these six cases?
19       MS. LONG: Objection to form.
20   A.   Yes, I believe he had given me a list of
21 eight or nine cases, but there were some that had
22 questionable additional exposures so we did not
23 include them. I don't remember the list.
24   Q.   The ones that were not included, are you
25 saying they weren't included amongst the six or they

Page 49

1 weren't included amongst the 33 overall?
2    A.   They weren't included in either.
3    Q.   But you did not tell Dr. Gordon that you
4 wanted to focus on one of the other 33 cases that are
5 listed in the article?
6        MS. LONG: Objection to form.
7    A.   Do you mean one of the other 27?
8    Q.   Yes.
9    A.   I did not. It was the cases he had
10 done, the cases I also reviewed. I did not discuss
11 the others.
12   Q.   Was it Dr. Gordon that thought that six
13 was the right number to focus on?
14   A.   No, it was my choice to limit it to six.
15   Q.   You testified that there were a couple
16 cases that you excluded because of potential
17 alternative exposures, right?
18   A.   Yes, at least one. There was one. I
19 don't know if there were additional.
20   Q.   Of the 33 that ended up being discussed
21 in your article, are there any that Dr. Gordon
22 presented to you as being one of the six that you
23 said no, we should not use that as one of the six?
24       MS. LONG: Objection to form.
25   A.   No, the only cases that I'm aware of

Page 50

1  that Dr. Gordon had any involvement with is the six.
2  It is possible that he did a tissue digestion on the
3  others, but if he did, I did not focus on that
4  because I decided that we were going to stop at six.
5      Q.   Do you have let's call it a key that
6  matches up with each of the 33 case studies with the
7  litigation plaintiff's name?
8           MS. LONG:  Objection to form.
9      A.   Are you asking if I identified the
10 listing of the cases?
11     Q.   Yes.
12     A.   There is an identified case listing.
13 You will not get it.
14     Q.   Why is that?
15     A.   Because it's protected under IRB and
16 HIPAA and it's protected health information.
17     Q.   What is the basis of your understanding
18 for that?
19     A.   That this is a research endeavor and we
20 did not solicit consent with the understanding that
21 they would be anonymous and not identified by name in
22 the article or other identifying features apart from
23 age of diagnosis and occupation or other things along
24 those lines.
25     Q.   Why did you choose 33 as a number?

Page 51

1      A.   Because I'm a history of science major.
2      Q.   You reference the Wagner paper; is that
3  the reason you chose 33?
4      A.   I thought it was a beautifully
5  symmetrical way to describe a -- since Dr. Wagner in
6  1960 made the connection or the widely accepted
7  connection between mesothelioma and asbestos based on
8  a case series of 33 individuals that has been widely
9  accepted in the medical literature, I thought it was
10 only fitting to use that same number in an article
11 almost 60 years later that's describing an exposure
12 that heretofore had not been comprehensively
13 described in the medical literature.  It's of a
14 historical reference.  I could have picked another
15 number, but I like the historical implications.
16     Q.   At the time that you were selecting
17 which cases to use in your case series, how many
18 cases did you have available to select from?
19     A.   More than 33.  I don't remember the
20 exact number.  I have not counted the exact number of
21 cases I've reviewed, so I can't give you an actual
22 number.
23     Q.   Do you have a sense of how many cases
24 you excluded from the series on the basis that they
25 were essential asbestos exposures separate and apart

Page 52

1  from the talc usage?
2      A.   I don't recall the exact number.  It was
3  something initially going through the various cases
4  that I reviewed, which is many more than 33 over the
5  past years.  Honestly, I can't give you an exact
6  number.  I can't say it was 50 percent.  I can't say
7  25 percent.  I don't know because I wasn't cataloging
8  my exclusions.
9      Q.   For those cases where you did not
10 identify a potential other source of asbestos from
11 the cosmetic talc, what criteria did you use to
12 choose your 33?
13     A.   I'm sorry.  I lost you.
14     Q.   You talked about excluding some from the
15 case series where you identified a potential asbestos
16 exposure.
17     A.   Ms. Wiman, for example.
18     Q.   Without would not have been available to
19 you I don't think at the time you were drafting the
20 article, fair?
21          MS. LONG:  Right.  It should be clear
22 that you're using Wiman as an example of the type.
23     A.   She was not considered, nor excluded,
24 but because we're here, hopefully going to get back
25 to the case at some point in my life, she's a prime

Page 53

1  example of someone who would not have been included
2  because she had a second exposure or potentially
3  others.  So that was the same type of analysis that I
4  went through; if in the course of either my interview
5  or the deposition transcripts or other information
6  available there was identification of an alternate
7  exposure, then they would have been excluded.
8      Q.   So my poorly worded question earlier,
9  this isn't much better, my question then is, of the
10 cases available to you at the time you were selecting
11 your 33 that did not in your estimation have a other
12 potential source of asbestos exposure, what criteria
13 did you use to use amongst those for your 33?
14     A.   It was basically sequential.  I went
15 through the various reports that I've written or
16 cases that I've reviewed and began compiling those
17 that are cosmetic talc.  It wasn't like I said
18 73 percent women and 27 percent men.  I didn't have
19 exclusion criteria along those lines apart from
20 having an additional exposure to asbestos or
21 potential asbestos exposure.
22     Q.   If I'm hearing you correctly, once you
23 got to 33 as you're going down the list where there
24 wasn't, in your estimation, other potential source of
25 asbestos exposure you stopped?

Page 150

1            C E R T I F I C A T E
2
3  STATE OF NEW YORK   )
                       )  ss:
4  COUNTY OF NEW YORK  )
5
6        I, BRENDA FITZGERALD, a Shorthand
7  Reporter and Notary Public within and for the State
8  of New York, do hereby certify:
9        That, Jacqueline Moline, M.D., an expert
10 witness whose DEPOSITION was held on November 25,
11 2019, as hereinbefore set forth, was duly sworn by
12 me, and that this transcript of such Examination is a
13 true and accurate record of the testimony given by
14 such witness.
15       I further certify that I am not related
16 to any of the parties to this action by blood or by
17 marriage, and that I am in no way interested in the
18 outcome of this matter.
19       IN WITNESS WHEREOF, I have hereunto set
20 my hand this 2nd day of December 2019.
21
22      *Brenda Fitzgerald*
           _____
23
              BRENDA FITZGERALD
24
25

Page 151

1     ERRATA SHEET
      Priority-One Court Reporting/Veritext
2     718-983-1234
      ASSIGNMENT NO. P1-3782925
3  CASE NAME: Wiman, Carolyn v. Asbestos
   DATE OF DEPOSITION: 11/25/2019
4  WITNESS' NAME: Dr Jacqueline Moline
5
   PAGE/LINE(S)/   CHANGE       REASON
6   ___/_____/_____/_____
    ___/_____/_____/_____
7   ___/_____/_____/_____
    ___/_____/_____/_____
8   ___/_____/_____/_____
    ___/_____/_____/_____
9   ___/_____/_____/_____
    ___/_____/_____/_____
10  ___/_____/_____/_____
    ___/_____/_____/_____
11  ___/_____/_____/_____
    ___/_____/_____/_____
12  ___/_____/_____/_____
    ___/_____/_____/_____
13  ___/_____/_____/_____
    ___/_____/_____/_____
14  ___/_____/_____/_____
    ___/_____/_____/_____
15  ___/_____/_____/_____
    ___/_____/_____/_____
16  ___/_____/_____/_____
    ___/_____/_____/_____
17  ___/_____/_____/_____
    ___/_____/_____/_____
18  ___/_____/_____/_____
    ___/_____/_____/_____
19  ___/_____/_____/_____
20  _____
      Dr Jacqueline Moline
21 (Notary not required in California)
   SUBSCRIBED AND SWORN TO
22 BEFORE ME THIS_____DAY
   OF_____, 2019.
23
   _____
24    NOTARY PUBLIC
25 MY COMMISSION EXPIRES_____

39 (Pages 150 - 151)