# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY
LITIGATION

Case No. 3:16-md-2738-MAS-RLS

MDL Case No. 2738

Motion Day: February 5, 2024

## DEFENDANTS JOHNSON & JOHNSON AND LTL MANAGEMENT LLC'S OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING SUBPOENA DIRECTED AT KCIC, LLC

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

ARGUMENT ....................................................................................4

    A.    The PSC's Privilege Objections Are Unsubstantiated And
Overbroad ........................................................................4

    B.    The Documents Sought By The Subpoena Are Relevant And
Do Not Impose An Undue Burden On KCIC ...................................9

CONCLUSION ................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adesanya v. Novartis Pharms. Corp.*,
2015 WL 7574362 (D.N.J. Nov. 24, 2015) .........................................................5

*Berardino v. Prestige Mgmt. Servs., Inc.*,
2017 WL 9690965 (D.N.J. Dec. 8, 2017) ............................................................9

*Cheeves v. S. Clays, Inc.*,
797 F. Supp. 1570 (M.D. Ga. 1992) ...................................................................10

*Cobell v. Norton*,
237 F. Supp. 2d 71 (D.D.C. 2003) ......................................................................10

*Dawson v. Ocean Twp.*,
2011 WL 890692 (D.N.J. Mar. 14, 2011).........................................................5, 7

*Doe v. Cabrera*,
139 F. Supp. 3d 472 (D.D.C. 2015) .....................................................................9

*Higgenbotham v. City of Trenton*,
2018 WL 10483122 (D.N.J. Aug. 14, 2018) ........................................................8

*N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*,
2017 WL 498710 (D.N.J. Feb. 7, 2017) ...............................................................8

*Napolitano v. Corbishley*,
2021 WL 3486901 (D.N.J. Aug. 9, 2021) ............................................................8

*Nicholas v. Grapetree Shores, Inc.*,
2012 WL 7170433 (D.V.I. July 31, 2012)............................................................9

*Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,
2022 WL 4466578 (D.N.J. Sept. 26, 2022) ..........................................................5

*Sandoz, Inc. v. United Therapeutics Corp.*,
2021 WL 5122069 (D.N.J. Nov. 2, 2021) ............................................................7

*United States v. O'Neill*,
619 F.2d 222 (3d Cir. 1980)..............................................................................5, 6

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States v. Philip Morris Inc.*,
  312 F. Supp. 2d 27 (D.D.C. 2004) ...........................................................................9

*V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*,
  2008 WL 3887621 (D.N.J. Aug. 20, 2008) ................................................. 4, 5, 6

*Wei v. Bodner*,
  127 F.R.D. 91 (D.N.J. 1989) ...................................................................................6

*Weinstein v. Brisman*,
  2020 WL 1485960 (D.N.J. Mar. 26, 2020) ............................................................6

**Rules**

Fed. R. Civ. P. 45(e)(2)(A)(i) ...................................................................................7

Fed. R. Civ. P. 45(e)(2)(A)(ii) .................................................................................7

# INTRODUCTION[1]

After billing 1,600 hours representing Johnson and Johnson and LTL Management LLC (collectively, "J&J") in this litigation, James Conlan switched sides. He teamed up with J&J's litigation adversary, Andy Birchfield and the Beasley Allen law firm, to push for a resolution of J&J's talc liabilities through his newly founded company, Legacy Liability Solutions LLC, that was adverse to J&J. J&J Mot., Ex. 6 at 2. When pitching the proposal to the Company, Conlan represented that Legacy had the support of lead counsel in the MDL, "including Andy Birchfield" for an "MDL opt-in settlement matrix." J&J Mot., Ex. 3 at 2. And just last week, counsel for Beasley Allen admitted in court that Conlan and Birchfield "*did work together* to come up with a strategy to try and resolve or settle disputes." Decl. of Stephen D. Brody ("Brody Decl."), Ex. 2 at 46:5-7 (emphasis added).

These undisputed facts clearly demonstrate that Birchfield and Beasley Allen should be disqualified from this litigation.[2] J&J served the discovery at issue here to assess whether the required relief should be broader—to determine whether other

---

[1] As used in this memorandum, "J&J Motion" and "J&J Mot." refers to its Motion for Order to Show Cause Why Andy Birchfield and Beasley Allen Should Not Be Disqualified From This Litigation or Removed From the Plaintiffs' Steering Committee (ECF No. 28760), and "PSC Mot." refers to the PSC's Memorandum in Support of its Motion to Quash or for Protective Order (ECF No. 28912-1). Page citations to exhibits refer to the pagination as indicated at the top of each filed document.

[2] The Court scheduled oral argument on J&J's motion for February 7, 2024. *See* MDL Text Order, ECF No. 28860.

1

attorneys on the PSC are also in receipt of J&J's confidences—and the full PSC's invocation of non-specific privilege objections in response to that discovery suggests that the confidences have been compromised far beyond just the Beasley Allen firm. Specifically, J&J subpoenaed KCIC—a provider of "logistics, claims and litigation management services" that Conlan described as the "Strategic Logistics Partner" for the Conlan-Beasley plan, J&J Mot., Ex. 6, at 4—seeking certain documents and communications related to its involvement in that plan. PSC Mot., Ex. A. As relevant here, J&J sought from KCIC (1) documents relating to Legacy and (2) communications between KCIC and Legacy, Conlan, Birchfield, and/or Beasley Allen. *Id.* at 6.

KCIC's President contacted counsel for J&J on December 19, 2023—the day the subpoena was served—and asked that J&J extend the subpoena return date by a week, from January 5 to 12 so KCIC could produce documents. Brody Decl. ¶ 3–4. J&J agreed to KCIC's request. *Id.* ¶ 4. Subsequently, on January 2, 2024, the MDL Plaintiffs' Steering Committee ("PSC") advised J&J that it had objections to the KCIC subpoena. PSC Mot., Ex. B at 6. J&J and the PSC conferred on January 4, but could not agree about the scope of the requests. Brody Decl. ¶ 5.[3] The PSC also

---

[3] KCIC did not produce any documents by the January 5 return date or the January 12 extended date. Brody Decl. ¶ 9. Instead, KCIC's outside counsel submitted a four paragraph letter to J&J's outside counsel (copying Beasley Allen), indicating she had received correspondence regarding the PSC's objection to the production, and asserting "the rights and privacy of individuals whose private and medical information is contained within those requested records." PSC Mot., Ex. C. When J&J and KCIC spoke on January 5, 2024, J&J represented it was not seeking any patient

contacted counsel for KCIC, because KCIC did not produce documents before the agreed upon January 12 subpoena return date, which was the date the PSC filed the instant motion to quash or for a protective order.  ECF No. 28912.

None of the PSC's arguments have merit.  The PSC's assertion that the subpoena should be quashed because it calls for privileged information is substantially overbroad.  PSC Mot. at 4–5.  The PSC does not identify with any specificity the documents or communications that would fall within the privileges it asserts, and it is impossible to believe that *every* communication between KCIC and Conlan (or his company) is privileged—unless, of course, Conlan and Legacy are providing legal advice to the PSC, in which case the side-switching problem underlying the J&J Motion runs even deeper than initially appeared.  The PSC also asserts that the subpoena calls for irrelevant information, *id.* at 6–7, but the information sought is obviously relevant to whether J&J can get a fair trial in this MDL.

This Court should reject the PSC's attempt to use discovery as both a sword and shield.  The motion to quash or for a protective order should be denied.

---

health information (private or not), and KCIC subsequently represented it had no documents relating to Legacy and Conlan's settlement matrix.  Brody Decl. ¶¶ 6–7; Ex. 1.  Thus, the subpoena sought only KCIC's documents relating to Legacy and communications between KCIC and Legacy, Conlan, Birchfield, and/or Beasley Allen.

## ARGUMENT

### A.     The PSC's Privilege Objections Are Unsubstantiated And Overbroad

J&J's subpoena seeks documents relating to Legacy's proposal to acquire J&J's talc liabilities and communications relating to that proposal between KCIC and Legacy, Conlan, Birchfield, and/or Beasley Allen.  The PSC moves to quash on the ground that the subpoena seeks privileged information.  But that objection is substantially overbroad.  The subpoena does not facially seek privileged information and the PSC has not carried its burden to identify privileged documents with specificity.

The PSC argues the subpoena should be quashed in its entirety on privilege grounds, but it "cannot be said that every document is privileged." *V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*, 2008 WL 3887621, at *4 (D.N.J. Aug. 20, 2008).  The PSC offers no basis to conclude that this subpoena exclusively seeks privileged information, especially where it requests, among other things, communications between KCIC, a settlement administrator, and Legacy and Conlan, third parties to this litigation.  Indeed, the PSC does not even claim that communications between KCIC and Legacy or Conlan are privileged.  The PSC asserts only that privilege applies to "communications or information exchanged between counsel for members of the LTL Talc Claimants Committee and KCIC." PSC Mot. at 4.  That objection, wrong as it is, cannot justify the relief the PSC

4

seeks—namely, quashing the subpoena in its entirety—because the subpoena seeks documents and communications that the PSC does not claim are privileged.

As for documents and communications between KCIC and Beasley Allen lawyers, the PSC has not followed "the appropriate procedure." *V. Mane Fils, S.A.*, 2008 WL 3887621, at *4. A party objecting on privilege grounds bears the "burden to demonstrate that compliance with the subpoena would … disclose privileged or confidential information." *Adesanya v. Novartis Pharms. Corp.*, 2015 WL 7574362, at *1 (D.N.J. Nov. 24, 2015); *see also Dawson v. Ocean Twp.*, 2011 WL 890692, at *12 (D.N.J. Mar. 14, 2011) (explaining the "party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor" (quotations omitted)). General objections will not do; particularity is required. The Third Circuit has expressly rejected "broadside invocation[s] of privilege" where they "fail[] to designate with particularity the specific documents ... to which [a] claim of privilege applie[s]." *United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980) (executive privilege); *accord Dawson*, 2011 WL 890692, at *17; *see also, e.g.*, *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, 2022 WL 4466578, at *3–5 (D.N.J. Sept. 26, 2022) (rejecting "broad assertion" of work-product, mediation, and other privileges in response to deposition notice because "courts are required to determine the applicability of a privilege on a communication-by-communication

basis" and the special master "ha[d] not been presented with any specific communications to consider").

Yet this is exactly what the PSC asserts—an overbroad application of privilege without any attempt to identify with particularity the documents that are potentially privileged.  The PSC claims the subpoena seeks documents protected by the mediation privilege, but it has not identified which documents those are and why that privilege applies.  PSC Mot. at 4–5.  This "indiscriminate claim of privilege may in itself be [a] sufficient reason to deny" the PSC's Motion.  *O'Neill*, 619 F.2d at 227.

The proper procedure, moreover, is to "produce[] the non-privileged documents and log[] the remainder on a privilege log."  *V. Mane Fils, S.A.*, 2008 WL 3887621, at *4.  Having failed to identify with particularity which documents are privileged or produce a privilege log, the PSC's request should be denied.  *Id.*; *see also Weinstein v. Brisman*, 2020 WL 1485960, at *7 (D.N.J. Mar. 26, 2020) (rejecting assertion of privilege where the non-party did not describe the nature of the documents with "sufficient specificity to allow [the] Court to rule on that objection" and holding the non-party may only "assert privilege ... in conjunction with the preparation of a sufficient privilege log"); *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989) (holding no substantive ruling on privilege assertions could be made because the "mere assertion" of privilege "without a more complete

description ... does not provide the Court with sufficient information to determine whether the standards have been met" and noting such information is also "necessary for the party seeking discovery to have a full and fair opportunity to oppose the assertion of privilege."); *Dawson*, 2011 WL 890692, at *23 (requiring the asserting party to produce a privilege log that meets the requirements set forth in *Wei*); *cf.* Fed. R. Civ. P. 45(e)(2)(A)(i)–(ii) (requiring person withholding subpoenaed information under claim of privilege to "expressly make the claim" and "describe the nature of the withheld" materials to "enable the parties to assess the claim").[4]

Because the PSC has not identified with particularity which documents it believes are privileged, J&J cannot meaningfully assess or respond to the privileges the PSC asserts.   J&J notes, however, that the main privilege invoked—the mediation privilege, PSC Mot. at 5—has (at best) tenuous application here.  For one thing, J&J has not been in mediation with talc claimants.  And as even the PSC's cases recognize, whether a communication will be covered by the mediation privilege "turns on" whether it has a "clear nexus to the mediation."  *Sandoz*, 2021

---

[4] The PSC's own authority confirms this fact—while the court in *Sandoz, Inc. v. United Therapeutics Corp.* later assessed the mediation privilege, *see* PSC Mot. at 5 (citing 2021 WL 5122069, at *2 (D.N.J. Nov. 2, 2021)), it first ordered the plaintiffs to prepare and serve a privilege log "identifying the documents claimed to be protected from disclosure by the mediation privilege," 2021 WL 287872, at *3 (D.N.J. Jan. 28, 2021), because "more information [was] required in order to determine whether the mediation privilege applie[d]." *Id.* at *2.  The same is true here.

WL 5122069, at *2 (quotations omitted).[5]  This need for a "clear nexus" only further illustrates why the PSC should follow "appropriate procedure" and produce a privilege log to allow a document-by-document review of the purportedly privileged documents.  In any event, the mediation privilege does not "require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations," and "document[s] which otherwise exist" or "existed independent of the mediation" are "not subject to th[e] privilege."  *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 2017 WL 498710, at *3 (D.N.J. Feb. 7, 2017) (quotations omitted).[6]

Finally, the PSC cites the "settlement privilege" under Fed. R. Evid. 408.  The PSC has not demonstrated that any—let alone all—of the potential documents and communications between KCIC and Beasley Allen lawyers concerned settlement.  And regardless, Rule 408 provides only that "information regarding settlements and negotiation is inadmissible if offered to prove liability for, invalidity of, or amount of [a] claim."  PSC Mot. at 6 (quoting *Higgenbotham v. City of Trenton*, 2018 WL 10483122, at *2 (D.N.J. Aug. 14, 2018)).  Rule 408 is about admissibility, and it

---

[5]  The other case the PSC cites about a "mediation privilege" is even more off-base.  In *Napolitano v. Corbishley*, the court held that the mediation privilege barred a plaintiff from amending a complaint to add allegations specifically about the mediation.  2021 WL 3486901, at *3 (D.N.J. Aug. 9, 2021).  That is not this case.

[6]  The PSC also references "protected health information," PSC Mot. at 5, but that objection is moot.  J&J made clear to KCIC that it is not seeking production of protected health information.  Brody Decl. ¶ 6.

does not apply unless the settlement communication is used to prove or disprove liability, which is not the purpose of discovery here.  *See Berardino v. Prestige Mgmt. Servs., Inc.*, 2017 WL 9690965, at *5 (D.N.J. Dec. 8, 2017).  J&J seeks these documents solely to determine the extent to which its confidences have been improperly shared and to protect the integrity of the proceedings before the Court.

### B.   The Documents Sought By The Subpoena Are Relevant And Do Not Impose An Undue Burden On KCIC

The subpoena seeks documents—those relating to KCIC's work for Legacy and Conlan, and its communications with Legacy, Conlan, Birchfield, and/or Beasley Allen—that are plainly relevant to whether these proceedings can fairly proceed with J&J's confidential information in the hands of its litigation adversaries. J&J's former lawyer has teamed up with its current litigation adversary, and J&J seeks information that is likely to show the full extent to which its confidences have been passed to the other side, beyond what is already known about Birchfield and Beasley Allen.  This information is relevant, and the Court is authorized to permit discovery relevant to disqualification.  *See Nicholas v. Grapetree Shores, Inc.*, 2012 WL 7170433, at *1 (D.V.I. July 31, 2012) ("The Court finds that the documents requested by the subpoenas at issue are relevant to the issues raised in Defendants' motion to disqualify Plaintiff's counsel and fall within the scope of proper discovery."); *see also Doe v. Cabrera*, 139 F. Supp. 3d 472, 476 (D.D.C. 2015) ("[C]ourts have broad discretion to decide whether to grant formal discovery tailored

to produce evidence for motions to disqualify counsel."); *United States v. Philip Morris Inc*., 312 F. Supp. 2d 27, 34 (D.D.C. 2004) ("The case law is clear that courts have broad discretion to decide whether to grant any formal discovery in disqualification proceedings and, if so, how much."); *cf. Cobell v. Norton*, 237 F. Supp. 2d 71, 101 n.26 (D.D.C. 2003) (explaining that discovery is appropriate to gather "admissible evidence in support of a pending or contemplated motion for disqualification" of presiding judge (quotations omitted)); *Cheeves v. S. Clays, Inc.*, 797 F. Supp. 1570, 1580 (M.D. Ga. 1992) (explaining "the discovery mechanisms of the Federal Rules of Civil Procedures would be available in an appropriate case to a party who contemplates filing a motion for disqualification of the presiding judge" (footnote omitted)).

The PSC also claims the subpoena is "unduly burdensome" because J&J "cannot establish the relevance, importance, or admissibility of the requested information." PSC Mot. at 6. In other words, its burden argument turns on its relevance argument. But the PSC does nothing to meaningfully substantiate its objection—while the PSC asserts the information "relates to a third party's proposal in the LTL bankruptcy proceeding," *id.*, it ignores, as J&J has explained, that the information sought by the subpoena is plainly relevant to the question of disqualification and the extent to which its confidences were improperly shared. *See supra* 9–10. Moreover, to the extent the subpoena would truly create any undue

burden, KCIC, the actual recipient of the subpoena, may object and confer with J&J as appropriate.  The PSC's conclusory assertions on this point have no merit.

## CONCLUSION

For the foregoing reasons, the PSC's motion should be denied.


Dated: January 22, 2024

Respectfully submitted,

*/s/ Stephen D. Brody*
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com

Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.:  973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson and LTL Management LLC n/k/a LLT Management LLC*