## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) |

MDL Docket No. 2738

*This Document Relates To All Cases*

## DEFENDANTS' OBJECTIONS AND MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTIONS TO THE SPECIAL MASTER'S ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND .................................................................................................3

I.    RELEVANT CORPORATE HISTORY ..........................................................3

II.   RELEVANT PROCEDURAL HISTORY.......................................................7

ARGUMENT .....................................................................................................7

I.    THE SPECIAL MASTER INCORRECTLY APPLIED NEW JERSEY LAW ACROSS THE MDL. ................................................................11

II.   UNDER ANY STATE'S LAW, PLAINTIFFS' MOTION SHOULD HAVE BEEN DENIED. ..................................................................17

       A.    Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Product-Line Exception. ............................................18

       B.    Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Mere-Continuation Exception......................................27

CONCLUSION .................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*160 West Broadway Associates, LP v. 1 Memorial Drive, LLC*,
   466 N.J. Super. 600 (App. Div. 2021)...........................................................17

*In re Accutane Litigation*,
   235 N.J. 229 (2018) ...............................................................................12, 13

*Action Nissan, Inc. v. Hyundai Motor America*,
   No. 6:18-cv-380-Orl-78EJK, 2020 WL 7419669
   (M.D. Fla. Nov. 5, 2020) ............................................................................15

*Alta Mesa Holdings, L.P. v. Ives*,
   488 S.W.3d 438 (Tex. App. 2016) ...............................................................22

*Anderson v. General Motors Corp.*,
   No. 03-275 JJF, 2004 U.S. Dist. LEXIS 5430
   (D. Del. Mar. 29, 2004) ................................................................................8

*Aschroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................26, 29

*Barnett v. Rutgers University*,
   No. 17-2503, 2018 WL 1385664 (D.N.J. Mar. 16, 2018)............................23

*Bussell v. DeWalt Products Corp.*,
   259 N.J. Super. 499 (App. Div. 1992)..........................................................26

*C.M. Asfahl Agency v. Tensor, Inc.*,
   135 S.W.3d 768 (Tex. App. 2004) ...............................................................27

*In re Conagra Peanut Butter Products Liability Litigation*,
   251 F.R.D. 689 (N.D. Ga. 2008) .................................................................14

*Danise v. Saxon Mortgage Services, Inc.*,
   738 F. App'x 47 (3d Cir. 2018).....................................................................20

*Dickens v. A-1 Auto Parts & Repair Inc.*,
    No. 1:18CV162-LG-JCG, 2020 WL 6265078
    (S.D. Miss. Oct. 23, 2020)................................................................................24

*Forrest v. Beloit Corp.*,
    278 F. Supp. 2d 471 (E.D. Pa. 2003)......................................................17, 20

*Fraser v. Nationwide Mutual Insurance Co.*,
    352 F.3d 107 (3d Cir. 2003) ...........................................................................8

*In re General Motors LLC Ignition Switch Litigation*,
    No. 14-MD-2543 (JMF), 2017 WL 3382071
    (S.D.N.Y. Aug. 3, 2017)..................................................................13, 14, 15

*In re G-I Holdings, Inc.*,
    No. 02-3626 (SRC), 2008 WL 11513187 (D.N.J. May 30, 2008)..........17, 25

*Giggs v. Capitol Machine Works, Inc.*,
    690 S.W.2d 287 (Tex. App. 1985) ................................................................18

*IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*,
    No. 07-1076 (GEB), 2009 WL 5205968
    (D.N.J. Dec. 28, 2009)...................................................................2, 27, 28, 29

*In re Intel Corp. Microprocessor Antitrust Litigation*,
    526 F. Supp. 2d 461 (D. Del. 2007) ..............................................................8

*In re January 21 Short Squeeze Trading Litigation*,
    584 F. Supp. 3d 1161 (S.D. Fla. 2022)........................................................14

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
    394 F.3d 1143 (9th Cir. 2004) ......................................................................17

*Leo v. Kerr-McGee Chemical Corp.*,
    37 F.3d 96 (3d Cir. 1994) ..................................................................19, 20, 24

*In re LTL Management LLC*,
    64 F.4th 84 (3d Cir. 2023) ......................................................................passim

*In re LTL Management LLC*,
    652 B.R. 433 (Bankr. D.N.J. 2023) ........................................................5, 6, 21

*Marsdale v. Port Liberte Partners*,
    No. A-3890-03T1, 2007 WL 92666
    (N.J. Super. Ct. App. Div. Jan. 9 2007)............................................28, 29, 30

*Massaro v. Ftaiha*,
    No. 95-7006, 1997 U.S. Dist. LEXIS 3275 (E.D. Pa. Mar. 13, 1997)...........8

*Nellom v. Borough*,
    No. 12-4627, 2012 WL 6525668 (E.D. Pa. Dec. 13, 2012) .........................23

*Peoples Gas Light & Coke Co. v. Beazer East, Inc.*,
    802 F.3d 876 (7th Cir. 2015) ......................................................................22

*Potwora ex rel. Gray v. Grip.*,
    319 N.J. Super. 386 (App. Div. 1999)....................................................18, 26

*Ramirez v. Amsted Industries, Inc.*,
    86 N.J. 332 (1981) ................................................................................17, 18

*Randle v. AC Asset Services LLC*,
    No. 19-CV-01074-LJV, 2022 WL 2680079
    (W.D.N.Y. July 12, 2022) ...........................................................................15

*Ryan v. Smith*,
    No. 06-5866-NLH-AMD, 2010 WL 743946 (D.N.J. Mar. 4, 2010).......19, 23

*Schneider v. Arc of Montgomery County*,
    497 F. Supp. 2d 651 (E.D. Pa. 2007)............................................................8

*Taylor v. Union County Correctional Facility*,
    No. 02-0812 (CCC), 2015 WL 5647989 (D.N.J. Sept. 23, 2015)..................9

*Travis v. Harris Corp.*,
    565 F.2d 443 (7th Cir. 1977) ......................................................................28

*Turner v. Bituminous Casualty Co.*,
    244 N.W.2d 873 (Mich. 1976) ...................................................................28

*United States v. Americus Mortgage Corp.*,
No. 4:12-cv-02676, 2013 WL 4829284 (S.D. Tex. Sept. 10, 2013) .......17, 18

*Van Dusen v. Barrack*,
376 U.S. 612 (1964).................................................................................12

*Wang v. University of Pittsburgh*,
No. 2:20-cv-1952, 2023 WL 5214893 (W.D. Pa. Aug. 15, 2023) .................8

## STATUTES

42 U.S.C. § 9607(e) ...............................................................................22

Tex. Bus. Orgs. Code Ann. § 10.008(a)(3)............................................22

Tex. Bus. Orgs. Code Ann. § 10.008(a)(4)............................................22

## RULES

Fed. R. Civ. P. 11(b)(3).........................................................................23

Fed. R. Civ. P. 53(a)(1)(C) .....................................................................8

Fed. R. Civ. P. 53(f) ...............................................................................8

N.J. R. Prof. Cond. 3.3(a)(1)..................................................................23

## OTHER AUTHORITY

Restatement (Second) of Conflict of Laws § 302 ...................................15

Despite multiple rulings rejecting the bankruptcy of LTL Management, LLC ("LTL")[1] on the ground that it has more than sufficient resources to pay any conceivable talc claims, the Plaintiffs' Steering Committee ("PSC") seeks to add three new defendants to this litigation—Johnson & Johnson Holdco (NA), Inc. ("Holdco"); Kenvue, Inc. ("Kenvue"); and Janssen Pharmaceuticals, Inc. ("Janssen")—based on successor liability theories that are reserved for circumstances where a primary defendant is unavailable.  The Special Master granted the PSC's motion, despite the ordinary rule against successor liability.  The Special Master's conclusion was contrary to the Third Circuit's ruling in *In re LTL Management LLC*, 64 F.4th 84 (3d Cir. 2023) ("*LTL I*"), which expressly stated that LTL, not any of the other new defendants, held all talc liability.  *See* Order ("*Yandell* Order") at 4, *Yandell v. Johnson & Johnson*, No. 23STCV11850 (Cal. Super. Ct. Aug. 15, 2023) (attached as Ex. 1 to Cert. of Susan Sharko ("Sharko Cert.")) (Third Circuit "determin[ed] that LTL Management holds all of the talc-based liabilities").  It was erroneous for other related reasons as well.  Leave to add Holdco, Kenvue and Janssen—none of which had anything to do with talcum powder sales in the U.S.—should have been denied as futile.  Holdco is a holding

---

[1]     On December 29, 2023, LTL Management LLC changed its name to LLT Management LLC.  For simplicity, this brief uses the term LTL, which was used by the parties and the Special Master.

company that does not currently manufacture any cosmetic products and has never sold talc-based Johnson's Baby Powder in the United States.  Kenvue is an independent, publicly-traded consumer products company that likewise has never sold talcum powder in the United States.  And Janssen is a pharmaceutical company and wholly owned subsidiary of Johnson & Johnson ("J&J") that has never manufactured any cosmetic products, and whose role in this litigation is tied only to its brief (less than 24-hour) involvement in facilitating a corporate transaction.

The Special Master reasoned that plaintiffs' conclusory allegations were sufficient to plead successor liability against Holdco, Kenvue and Janssen under two exceptions to the general rule that successor corporations do not inherit the tort liability of their predecessors:  the product-line exception, which imposes liability on companies that continue to manufacture a defunct predecessor's line of products, and the mere-continuity exception, which imposes liability on companies where the predecessor has been destroyed and the successor is "nothing but the predecessor in disguise," *IDT Telecom, Inc. v. CVT Prepaid Sols., Inc.*, No. 07-1076 (GEB), 2009 WL 5205968, at *11 (D.N.J. Dec. 28, 2009).

The Special Master's ruling was erroneous.  As a threshold matter, it depended on incorrectly applying New Jersey substantive law to the entire MDL.  That error matters because most states do not accept the product-line exception,

and several, including Texas, do not accept the mere-continuity exception either. The Special Master compounded his error by misapplying New Jersey law. Under the law of New Jersey (and others that recognize these doctrines), neither exception applies to any defendant. Because LTL (the successor to Old JJCI, which manufactured and sold talcum-based Johnson's Baby Powder) exists and has sufficient assets to satisfy any individual claims here, there is currently no basis to impose successor liability of any kind. In addition, the product-line exception cannot possibly apply because the product line that plaintiffs claim injured them was never sold in this country by any of the new defendants. And the mere-continuation exception: (1) does not apply to any of the three defendants because the PSC offers no non-conclusory allegations to support it; and (2) separately fails as to Janssen and Kenvue because their supposed predecessor, Holdco, is still a going concern.

For all of these reasons, discussed further below, the Special Master erred and the Court should decline to adopt his recommendations.

## BACKGROUND

## I.   RELEVANT CORPORATE HISTORY

Several corporate transactions underlie the PSC's effort to name additional

defendants in this matter.[2]  The first is a divisional merger executed under Texas

law in October 2021.  Under that divisional merger, Old JJCI was merged into a

Texas corporation and then split into two companies, both initially Texas LLCs.

(*See* Decl. of John Kim ("Kim Decl.") ¶ 24, *In re LTL Mgmt. LLC*, No. 23-12825-

MBK (D.N.J. Apr. 4, 2023) (Sharko Cert. Ex. 2).)  The first company was LTL,

which was subsequently re-domesticated in North Carolina; the second company

merged into a New Jersey corporation to become New JJCI, now known as

Holdco.[3]  (*See id.*; Prop. Second Am. Compl. ("Prop. SAC") ¶ 13, ECF 26636-2.)

Holdco is LTL's sole member.  Under the divisional merger, LTL was assigned

certain assets along with all talc-related liabilities, while Holdco received other

assets and all other liabilities.  (*See* Kim Decl. ¶ 24.)  Shortly thereafter, LTL filed

for bankruptcy in order to resolve talc claims in a fair and orderly manner.[4]  At that

point, litigation in this Court was stayed.

---

[2]     The structure of these transactions is explained in greater detail in:  (1) the Declaration of John Kim, which is quoted extensively in the proposed complaint and was filed in the bankruptcy court; and (2) the Third Circuit's decision in *In re LTL I*, 64 F.4th at 93.

[3]     For convenience, this brief refers to the company as "Holdco," including at times when it was known as New JJCI.  The Special Master used the terms interchangeably.

[4]     Prior to the corporate restructuring, defendants had won the majority of cases that had gone to trial, but a small number of plaintiffs obtained astronomical verdicts.  (*See* Kim Decl. ¶¶ 36-37.)  The goal was to replace that lottery-like tort system with a more equitable distribution.

Certain plaintiffs' lawyers moved to dismiss LTL's bankruptcy.  (*See id.* ¶ 63.)  After a lengthy evidentiary hearing, the Bankruptcy Court for the District of New Jersey denied the motion.  On appeal, despite highlighting defendants' "[g]ood intentions," the U.S. Court of Appeals for the Third Circuit reversed, *LTL I*, 64 F.4th at 93, holding that although LTL inherited all talc liability, it "was not" "in financial distress."  *Id.*  According to the court, "[t]he value and quality of [LTL's] assets"—including funding agreements from J&J and Holdco—"exceeded any reasonable projections" of talc liability.  *Id.* at 106, 109; *see id.* at 108 ("highly solvent with access to cash to meet comfortably its liabilities").  In other words, LTL was too well-funded.

Thereafter, LTL was approached by counsel representing talc claimants nationwide, including some of the objectors to the first bankruptcy, with a proposal for resolution.  In order to allow claimants to vote on that proposal, LTL filed a second bankruptcy with a different funding agreement.  (*See* Kim Decl. ¶¶ 71-75, 79-84.)  *See In re LTL Mgmt. LLC*, 652 B.R. 433, 439 (Bankr. D.N.J. 2023) ("*LTL II*").  Despite the support of counsel representing the vast majority of talc claimants, some plaintiffs' lawyers again moved to dismiss the complaint.  After another week-long evidentiary hearing, the bankruptcy court granted the motion, feeling constrained to do so by the Third Circuit's holding.  Despite strongly hinting that bankruptcy would produce the "just and right result" for both LTL and

talc claimants, *LTL II*, 652 B.R. at 436, the bankruptcy court found that LTL was too financially strong, and too capable of satisfying any talc judgments, to allow the second bankruptcy to proceed, particularly in light of a "funding backstop" that gave it access to Holdco's assets "having a value approaching $30 billion," *id.* at 448; *see id.* at 444-48.[5]

While LTL made its way through bankruptcy proceedings, the consumer segment of the J&J family of companies underwent its own restructuring, ultimately spinning off Kenvue as its own publicly traded company, which currently sells, among other things, cornstarch-based Johnson's Baby Powder. (*See* Prop. SAC ¶¶ 61-62.)  There is "no relationship" between the Kenvue spin-off and LTL's bankruptcy filings.  *LTL II*, 652 B.R. at 438 (citation omitted).

During the complex spin-off process, J&J's consumer health business, including cornstarch powder, passed through several corporate entities, most of which were set up for the purpose of facilitating the transaction.  None of these companies included Janssen, though for less than a day, Janssen was the corporate parent of a pass-through corporation.  (*See* Decl. of Donald McGraw ("McGraw Decl.") ¶¶ 7-8, Sept. 18, 2023 (Sharko Cert. Ex. 3).)  In August of 2023, J&J

---

[5]    The bankruptcy court nevertheless noted that LTL had made "remarkable progress" toward a "fair, efficient, and expeditious settlement," and "strongly encouraged" it to continue to pursue a global resolution—through bankruptcy. *LTL II*, 652 B.R. at 455.

undertook an exchange offer that will leave it owning fewer than 10% of Kenvue's shares.  (*See* Johnson & Johnson Announces Preliminary Results of Kenvue Inc. Exchange Offer (Aug. 21, 2023), https://www.jnj.com/johnson-johnson-announces-preliminary-results-of-kenvue-inc-exchange-offer.)  Holdco continued to exist after the spin-off.  (*See* Kim Decl. ¶ 27 (explaining current assets).)

## II.  <u>RELEVANT PROCEDURAL HISTORY</u>

The PSC initially filed a motion to amend its complaint to add a spoliation cause of action in December 2020.  (*See* ECF 16132.)  After that motion was fully briefed, but before it was decided, the case was stayed pursuant to LTL's bankruptcy.  Once the bankruptcy was dismissed and this case returned to active litigation, the PSC filed a new motion reiterating its spoliation claim and asserting new claims for assumption of duty, aiding and abetting, and concert of action, and seeking to add Holdco, Kenvue, Janssen, and LTL as defendants.  The motion was referred to Special Master Joel Schneider, who granted it in substantial part, permitting the PSC to add the new defendants and to assert claims of assumption of duty, aiding and abetting, and concert of action, but denying leave to add claims of spoliation.  These objections follow.

## <u>ARGUMENT</u>

A court may appoint a special master to, among other things, "address pretrial . . . matters that cannot be effectively and timely addressed by an available

district judge or magistrate judge."  Fed. R. Civ. P. 53(a)(1)(C).  A special master's authority is limited, however, and his rulings are not entitled to deference.  Rather, this Court "must decide de novo all objections to findings of fact" and "all objections to conclusions of law."  Fed. R. Civ. P. 53(f); *see, e.g.*, *Wang v. Univ. of Pittsburgh*, No. 2:20-cv-1952, 2023 WL 5214893, at *1 (W.D. Pa. Aug. 15, 2023) (stating this rule and sustaining in part objections to special master report); *In re Intel Corp. Microprocessor Antitrust Litig.*, 526 F. Supp. 2d 461, 463-66 (D. Del. 2007) (stating rule and declining to adopt special master's report and recommendation).

The Special Master misapplied the law because the standard for granting leave to amend the complaint was not met.  Under Rule 15, "permission to amend is not to be given automatically but is allowed only 'when justice requires.'" *Massaro v. Ftaiha*, No. 95-7006, 1997 U.S. Dist. LEXIS 3275, at *6-7 (E.D. Pa. Mar. 13, 1997) (citation omitted).  A district court properly denies a motion to amend when the proposed amendment would be futile.  *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).  "An amendment to a pleading is deemed futile if [it] could not withstand a motion to dismiss."  *Anderson v. Gen. Motors Corp.*, No. 03-275 JJF, 2004 U.S. Dist. LEXIS 5430, at *8-9 (D. Del. Mar. 29, 2004); *see, e.g.*, *Schneider v. Arc of Montgomery Cnty.*, 497 F. Supp. 2d 651, 659-60 (E.D. Pa. 2007) (amendment is futile if "the amended complaint cannot

8

withstand a motion to dismiss") (citation omitted); *Taylor v. Union Cnty. Corr. Facility*, No. 02-0812 (CCC), 2015 WL 5647989, at *4 (D.N.J. Sept. 23, 2015) (allowing amendment to cure deficiency, but not "to enlarge the scope of any claims already asserted" or "to add any parties other than those directly responsible").

Here, the PSC's claims against three peripheral defendants—two owned by J&J and one publicly traded—are clearly futile, and the Special Master erred in concluding otherwise. As explained above, none of those defendants has ever manufactured or sold talc-based Johnson's Baby Powder in the United States. Nevertheless, the Special Master, applying New Jersey law nationwide, believed that plaintiffs had plausibly alleged that Holdco, Kenvue, and Janssen could be held liable as the "mere continuation" of old JJCI, or because they continued to manufacture the same product line. He is wrong in both respects.

*First*, New Jersey law does not apply nationwide, and the case on which the Special Master relied to impose that law on the entire MDL has no relevance in federal court. Under the choice-of-law rules applicable to most claims in this MDL, the substantive law of the relevant defendant's state of incorporation should have applied, and the applicable states' laws would therefore be Texas as to Holdco, New Jersey as to Janssen, and Delaware as to Kenvue. This is critical because several states, ***including Texas and Delaware***, do not recognize one or

9

both of the relevant exceptions that the Special Master found applicable.

**Second**, regardless of the state law at issue, the PSC's claims are not viable. Even if the Special Master had been correct that New Jersey law governs and both the product-line and mere-continuation doctrines are cognizable, plaintiffs' factual allegations fall far short of what is required to invoke either exception.  The product-line exception requires that a plaintiff lack any remedy against the original manufacturer and that the successor continue to manufacture a product with the same alleged flaws as the one that supposedly caused injury.  And the mere-continuation exception requires continuity of management, personnel, physical location, assets, and general business operation—factors the PSC has asserted in conclusory fashion at best.  It also requires the extinction of the predecessor company, which precludes imposing liability on Kenvue and Janssen, the predecessor of which (Holdco) remains a going concern.

The error in the Special Master's reasoning is underscored by the fact that several other courts have addressed the same question and reached the opposite conclusion.  *See, e.g.*, Order, *LaSalle v. Am. Int'l Indus.*, No. 23-2-08165-0 SEA (Wash. Super. Ct. Sept. 12, 2023) (Sharko Cert. Ex. 4) (dismissing Holdco and Kenvue under Washington law); Order at 4, *Egli v. Johnson & Johnson*, No. RG20075272 (Cal. Super. Ct. Oct. 26, 2023) (Sharko Cert. Ex. 5) ("Because none of the respective plaintiffs have shown that they do not have adequate remedies

10

against LTL, indisputably the entity that came out of the 2021 divisional merger with possession of the Johnson & Johnson talc liabilities . . . the Court finds that Holdco is not a proper party . . . ."); *Yandell* Order (relying on California law and Third Circuit ruling to dismiss Kenvue, Holdco and Janssen on similar grounds); *Ochoa v. 3M Co*., No. D-307-CV-2023-01125 (N.M. Dist. Ct. Jan. 3, 2024) (Sharko Cert. Ex. 6) (granting motion to dismiss; "Applying Texas law [to divisional merger,] all talc liabilities . . . are now owned by LTL"); Judgment, *Henderson v. Taylor-Seidenbach Inc.*, No. 2022-10279 (La. Civ. Dist. Ct. Dec. 22, 2023) (Sharko Cert. Ex. 7).

The Special Master ignored this precedent, content in his belief that his decision was "in accord with *Nesko*" *v. Johnson & Johnson*, a New Jersey state court case that denied a motion to dismiss by these defendants.  *See* Op. & Special Master Order No. 17 ("Opinion") at 17, ECF 28902.  But for the reasons explained below, *Nesko* was wrongly decided; the Special Master should have followed the greater weight of authority on the issue; and this Court should now sustain defendants' objections to the Special Master's order.

## I.   THE SPECIAL MASTER INCORRECTLY APPLIED NEW JERSEY LAW ACROSS THE MDL.

The Special Master erred first and foremost in applying the successor liability law of just a single state (New Jersey) to the thousands of plaintiffs'

claims implicated by the proposed Second Amended Master Complaint.[6]

As the Special Master recognized, in transferred cases, like the great bulk of the cases here, the Court applies the choice-of-law rules of the transferor state. *See* Opinion at 8; *see also Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). The Special Master also acknowledged that cases that were directly filed in the MDL are treated for choice-of-law purposes as if they were filed in the plaintiffs' home districts, not New Jersey. *See* Opinion at 8-9 (citing Case Mgmt. Order No. 2 ¶ H, ECF 102). The upshot of these legal principles is that plaintiffs' claims—which are being asserted by individuals from across the country—would normally necessitate a "50-state analysis of successor liability and choice of law case law." *Id.* at 10.

"Rather than conduct[]" such an analysis, however, the Special Master reasoned that the New Jersey Supreme Court's decision in *In re Accutane Litigation*, 235 N.J. 229 (2018), supports a truncated choice-of-law analysis that ultimately requires applying New Jersey successor liability law to plaintiffs' motion to amend. That determination was erroneous, and it alone warrants reversal of the Special Master's ruling.

---

[6]     This holding was particularly bizarre because in the very same order, he conducted a proper state-by-state analysis of plaintiffs' proposed claims for intentional spoliation against the existing J&J defendants.

In *In re Accutane*, hundreds of out-of-state and forum plaintiffs sued New Jersey-based defendants in New Jersey, alleging that they failed to adequately warn of the potential risk of developing inflammatory bowel disease ("IBD") as a result of taking the prescription medication Accutane. 235 N.J. at 234. The claims were consolidated in a multi-county litigation ("MCL") proceeding in the Atlantic County Superior Court for administrative purposes. *Id.* In upholding the trial court's grant of summary judgment as to all of the claims, the New Jersey Supreme Court held that "New Jersey has the most significant interests, given the consolidation of the 532 cases for MCL purposes in Atlantic County." *Id.* at 235. The court also reasoned that application of New Jersey's PLA "allows the resolution of common issues of law" and obviates the need for a trial judge to "gain a mastery of the law of forty-five different jurisdictions." *Id.*

The Special Master did not cite any authority countenancing the *Accutane* court's approach to choice-of-law questions in federal MDL proceedings. Instead, the Special Master reasoned that where the parties "consent to filing a Master Complaint . . . the choice of law rules of the transferee court's forum state (New Jersey) apply." Opinion at 11. However, as the MDL authority cited by the Special Master makes clear, a "'a master complaint' in an MDL should ***not*** be used 'as the operative pleading for choice of law purposes' unless 'the parties have consented to such an arrangement.'" *In re Gen. Motors LLC Ignition Switch Litig.*,

13

No. 14-MD-2543 (JMF), 2017 WL 3382071, at *8 (S.D.N.Y. Aug. 3, 2017)

(emphasis added) (quoting *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251

F.R.D. 689, 693 (N.D. Ga. 2008)).  There, the MDL court found that there was no

evidence that the parties had so agreed.  *Id.*[7]  "Accordingly, laborious though it

may be, the [c]ourt conclude[d] that it must look to the law of each individual

jurisdiction at issue to determine what substantive law to apply in assessing

[p]laintiffs' successor liability claims."  *Id.* at *9.[8]

So too here.  Although the parties consented to the filing of a master

complaint, it was for the purpose of "streamlin[ing] the litigation," *In re Gen.*

---

[7]     *In re January 21 Short Squeeze Trading Litigation*, is inapposite.  584 F. Supp. 3d 1161 (S.D. Fla. 2022) (cited in Opinion at 11).  There, "the parties agreed that [p]laintiffs' [c]omplaint would supersede all previous pleadings." *Id.* at 1179 (citing *In re January 21* Joint Status Report ¶ 2, ECF 322 ("Such Master Complaints will supersede the individual complaints . . . and will constitute the operating pleadings with respect to those claims pursuant to Fed. R. Civ. P. 8.") (Sharko Cert. Ex. 8)).  In other words, in *In re January 21*, the parties expressly agreed that the master complaint would be more than just a "procedural device that facilitates streamlined litigation." *Id.*

[8]     The fact that *In re General Motors* applied these principles at summary judgment rather than on the pleadings was not an endorsement of applying different choice-of-law analyses at different stages of litigation. *See* 2017 WL 3382071, at *8 ("[T]he [c]ourt's orders with respect to the consolidated complaint and its opinion explaining those orders were silent on the question of what substantive law would apply.").  Indeed, although the Special Master notes that defendants "can take solace" from the fact that this "choice of law holding" will not qualify as "law of the case" for any subsequent motion for summary judgement or trial, Opinion at 12-13, that is illogical.  Punting a proper choice-of-law analysis to a later date would be highly prejudicial and inefficient and would contravene the purpose of this MDL proceeding.

*Motors*, 2017 WL 3382071, at *8 (citation omitted), not obviating threshold choice-of-law questions regarding the viability of claims in this litigation, much less establishing that New Jersey's successor liability doctrine would govern plaintiffs' request to assert claims against new defendants in this proceeding. Thus, as in *In re General Motors*, the Special Master was required to undertake a state-by-state analysis, which (if properly performed) would have led him to appreciate that although some state choice-of-law regimes dictate application of the successor liability law of the jurisdiction of the plaintiff's home state, the majority of states actually point to the "law of the successor's state of incorporation." *Randle v. AC Asset Servs. LLC*, No. 19-CV-01074-LJV, 2022 WL 2680079, at *2 n.2 (W.D.N.Y. July 12, 2022) (citation omitted).  This state-of-incorporation approach is favored because it provides for "certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied."  Restatement (Second) of Conflict of Laws § 302 cmt. e (1971).[9]

---

[9]     *See also, e.g.*, *Action Nissan, Inc. v. Hyundai Motor Am*., No. 6:18-cv-380-Orl-78EJK, 2020 WL 7419669, at *6 (M.D. Fla. Nov. 5, 2020) (Florida choice-of-law; "the question of successor liability involves their internal affairs" and is "subject to the laws of the state of incorporation") (citation omitted); *Randle*, 2022 WL 2680079, at *2 n.2 ("Under New York choice-of-law rules, it is the law of the successor's state of incorporation that typically determines successor liability.") (citation omitted).

Under that majority approach, New Jersey law would only apply to the question whether Janssen inherited any talc-related liabilities from Holdco because it is the sole new defendant other than LTL that was incorporated in that state.  By contrast, Texas law governs the question whether Holdco inherited any talc-related liabilities from Old JJCI because Holdco was created by a divisional merger under the laws of Texas and was a Texas corporation at its creation, as the Third Circuit has implicitly recognized, *see LTL I*, 64 F.4th at 95-96,[10] while Delaware law governs the question as to Kenvue since it is, and has been since its creation, a Delaware corporation.  (*See* Prop. SAC ¶ 10.)

Needless to say, the Special Master did not even address either Texas or Delaware law, much less analyze the law of each plaintiff's home state that may be implicated under multiple other states' choice-of-law frameworks.  His failure to do so mattered.  As discussed in greater detail below, Delaware, Texas, and the substantial majority of states in the country do not recognize the product-line

---

[10]     The Special Master noted that "[t]here appears to be some confusion as to whether Holdco is a Texas or New Jersey corporation" but that, in any event, "even if Holdco is a Texas corporation it would not change the result."  Opinion at 12 n.7.  However, the Third Circuit essentially decided this question by repeatedly recognizing that the corporate restructuring of Old JJCI into Holdco was effectuated "under Texas law."  *LTL I*, 64 F.4th at 95-96.  In any event, the Special Master made no effort to explain why plaintiffs' proposed claims against Holdco would not be futile under Texas law beyond a conclusory sentence that does not cite any Texas authority or analysis.

exception. *See In re G-I Holdings, Inc.*, No. 02-3626 (SRC), 2008 WL 11513187, at *14 n.12 (D.N.J. May 30, 2008). And Texas does not recognize the mere-continuation exception either. *See United States v. Americus Mortg. Corp.*, No. 4:12-cv-02676, 2013 WL 4829284, at *4 (S.D. Tex. Sept. 10, 2013).

## II.   UNDER ANY STATE'S LAW, PLAINTIFFS' MOTION SHOULD HAVE BEEN DENIED.

It is a general principle of corporate law, in every state, that "'where one company sells or otherwise transfers all its assets to another company[,] the latter is not liable for the debts and liabilities of the transferor, including those arising out of the [transferor's] tortious conduct." *160 West Broadway Assocs., LP v. 1 Mem'l Drive, LLC*, 466 N.J. Super. 600, 610 (App. Div. 2021) (citations omitted); *see, e.g.*, *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1140 (9th Cir. 2004) (stating the same rule under California law); *Forrest v. Beloit Corp.*, 278 F. Supp. 2d 471, 475 (E.D. Pa. 2003) ("generally does not become liable for the debts and liabilities of its predecessor"). In order to account for circumstances in which "the successor deprives the predecessor's creditors [including tort creditors] of their remedy," however, most states have crafted some narrow exceptions to this rule. *Katzir's Floor & Home Designs*, 394 F.3d at 1151; *see Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 358 (1981) (Schreiber, J., concurring) ("The central thesis of [successor liability] is premised on the elimination by the successor of an effective remedy."). The Special Master found that two such

exceptions applied here:  the product-line exception and the mere-continuity exception.  That finding was wrong with respect to both.

### A.   Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Product-Line Exception.

***Holdco.***  The product-line exception does not apply to Holdco both because the exception is not recognized under Texas law—and because even under the law of states that do recognize the exception, the elements are not satisfied.

Texas courts allow successor liability only when "the successor expressly assumes" it or in the case of a fraudulent transfer.  *See, e.g.*, *Americus Mortg. Corp.*, 2013 WL 4829284, at *4.  The product-line exception relied upon by the Special Master does not exist in Texas.  *See Giggs v. Capitol Mach. Works, Inc.*, 690 S.W.2d 287, 290-94 (Tex. App. 1985).

But even if the Special Master were right that New Jersey law applied, the product-line exception would still not apply to impose liability on Holdco.  Under New Jersey law (and the law of the other states that recognize the exception), the product-line exception can only be invoked if the successor "corporation acquires all or substantially all the manufacturing assets of another corporation . . . and undertakes essentially the same manufacturing operation as the selling corporation."  *Potwora ex rel. Gray v. Grip.*, 319 N.J. Super. 386, 403 (App. Div. 1999) (quoting *Ramirez*, 86 N.J. at 358).  "In order to be 'manufacturing essentially the same line of products' . . . it is not enough to simply produce the

18

same general type of product as the predecessor"; rather, there "must be evidence that the successor continued to manufacture a particular line" of products. *Ryan v. Smith*, No. 06-5866-NLH-AMD, 2010 WL 743946, at *4 (D.N.J. Mar. 4, 2010) (citation omitted). Moreover, "if the selling corporation remains a viable entity able to respond in damages to the injured party, a successor acquiring a product line will not be liable"; in other words, "the destruction of the injured party's remedy is a *necessary*" condition for application of the exception. *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 99 (3d Cir. 1994) (New Jersey law).

The New Jersey product-line exception would not apply under these circumstances for two reasons. First, Holdco did not manufacture "essentially the same line of products" as the ones that purportedly injured the plaintiffs. *Ryan*, 2010 WL 743946, at *4 (citation omitted). It has never manufactured or sold talc-based Johnson's Baby Powder in the United States. The PSC's own proposed complaint acknowledges that Johnson's Baby Powder "transitioned to a cornstarch-based formula . . . in the United States and Canada" before Holdco even came into existence. (Prop. SAC ¶ 63.) And as explained below with respect to Kenvue, which currently manufactures the cornstarch product, cornstarch power is not "essentially"—or even remotely—the same product as talcum powder. In fact, plaintiffs' whole theory of the case is that cornstarch has long served as a safer *alternative*.

The product-line exception also does not apply because the corporate transaction that formed Holdco did not eliminate plaintiffs' effective remedies. *See Leo*, 37 F.3d at 99.  In fact, the very lawyers now seeking to add Holdco succeeded in having LTL dismissed from bankruptcy precisely by arguing that LTL is financially stable enough to satisfy any talc liabilities without the benefit of bankruptcy protection.  *See LTL I*, 64 F.4th at 106, 109; *see also Yandell* Order at 4 ("Plaintiff did not establish he has no remedies . . . . To the contrary, the Third Circuit concluded that LTL Management has more than enough resources to cover any liability . . . .").  As such, they are estopped from now arguing that remedies against LTL are insufficient.  *See, e.g.*, *Danise v. Saxon Mortg. Servs., Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018) ("[A] party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.") (citation omitted).[11]  The Special Master entirely ignored the viability of LTL as a defendant.

The Special Master's conclusion that the product-line exception could apply is also incompatible with the Third Circuit's bankruptcy opinion.  As a California court put it, "[t]he Third Circuit . . . has already done most of the work."  *See*

---

[11]    In any event, even if LTL were bankrupt, "a bankruptcy claim" against the original manufacturer provides "a potential remedy."  *Forrest*, 278 F. Supp. 2d at 477-78.

*Yandell* Order at 3-4 ("If, in fact, New Consumer actually held those liabilities and then merged with" Janssen, Holdco, and Kenvue "making those three defendants now liable, one would expect the Third Circuit to have mentioned that.").  The federal appellate court was extremely clear about the effect of the Texas transaction, both within and without the bankruptcy system:  "the merger allocated LTL responsibility for essentially all liabilities of Old" JJCI.  *LTL I*, 64 F.4th at 96; *see id.* at 97 (New JJCI, now Holdco, held "none of [the] talc-related liabilities"). Although the circuit court questioned the subsequent bankruptcy, "neither" that court nor the bankruptcy court for this district "has taken issue with the propriety of the [initial] corporate restructuring."  *LTL II*, 652 B.R. at 448 n.15 (citing *LTL I*, 64 F.4th at 106-07).  Simply put, Holdco never inherited JJCI's talc liability when it was created; that liability, along with assets to satisfy that liability, were assigned to LTL.  Strikingly, even though it was central to defendants' arguments, the Special Master did not mention the Texas divisional merger at all.

 The Third Circuit was clearly correct about the effect of the merger.  The Texas merger statute expressly provides that the "liabilities and obligations" of a party undergoing a divisional merger can be "allocated to one or more of the surviving or new organizations in the manner provided by the plan of merger," and that "except as otherwise provided by the plan of merger or by law or contract, . . . no other new . . . entity . . . created under the plan of merger is liable for the debt."

Tex. Bus. Orgs. Code Ann. § 10.008(a)(3)-(4); *see, e.g.*, *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 449-50 & n.13 (Tex. App. 2016) (applying this rule).[12]

Since Holdco did not inherit any product-line liability, it could not have passed any such liability to either Kenvue or Janssen, and the analysis should stop there. But even if Holdco had somehow retained liability following the divisional merger, it would not have passed it on to Kenvue, a publicly-traded company, or to Janssen, a J&J subsidiary that helped facilitate the spin-off of Kenvue. The corporate transactions that created Kenvue independently cut off liability, and the product-line exception does not apply to those companies either.

*Janssen.* Janssen plainly cannot be held liable under the product-line exception because that rule presupposes that the alleged successor in liability continued manufacturing the product line, and Janssen has never manufactured or sold *any* formulation of Baby Powder.

The Special Master apparently credited the boilerplate allegation that Janssen "manufacture[d]" Baby Powder (Prop. SAC ¶ 8 (cited in Opinion at 17)), but since all parties know that to be entirely counterfactual, those allegations can

---

[12] The "except as otherwise provided" language cannot be read to mean that ordinary successor liability principles can override the plan of merger. If it did, the Texas statutory scheme would be a nullity. The sensible reading of that language is that it encompasses specific statutory prohibitions on transferring liability. *See, e.g.*, *Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 880 (7th Cir. 2015) (discussing one such prohibition in 42 U.S.C. § 9607(e)).

only be interpreted as a restatement of the allegation that Janssen is the successor

to Old JJCI, which manufactured the product.[13]  The Special Master barely

engaged with the PSC's real contention, which is that certain assets, including the

rights to cornstarch Baby Powder, were passed from Holdco to Kenvue

"through . . . Janssen" as part of the creation and spin-off of Kenvue.  (Prop. SAC ¶

50; *see id.* ¶¶ 51-52 (citing Kim Decl. for this proposition).)[14]  If he had, he would

have had to reject this theory, because that level of peripheral involvement clearly

does not suffice to impose liability.  The product-line exception requires that the

defendant actually manufacture or sell the product; acquisition of assets alone does

not suffice.  *See Ryan*, 2010 WL 743946, at *4-5 (rejecting argument that

---

[13]    If the PSC actually intended to allege that Janssen itself manufactured or sold Baby Powder, it would have blatantly violated its obligation to ensure that "factual contentions . . . will likely have evidentiary support," Fed. R. Civ. P. 11(b)(3), as well as its ethical obligation to not "knowingly make a false statement of material fact . . . to a tribunal," N.J. R. Prof. Cond. 3.3(a)(1).  Plaintiffs' counsel is well aware that Janssen did not do so.

[14]    The Kim Declaration, quoted extensively in the proposed amended complaint, largely forms the basis for plaintiffs' successor liability allegations and thus can be considered at the pleading stage.  *See, e.g.*, *Barnett v. Rutgers Univ.*, No. 17-2503, 2018 WL 1385664, at *3 (D.N.J. Mar. 16, 2018) (can "consider 'documents that are integral to or explicitly relied upon in the complaint'") (citation omitted); *Nellom v. Borough*, No. 12-4627, 2012 WL 6525668, at *1 (E.D. Pa. Dec. 13, 2012) ("may look to . . . documents incorporated into the complaint by reference or explicitly relied upon in the complaint").  To be more precise, Janssen's involvement was limited to taking ownership of a subsidiary created for the purpose of the transaction for less than 24 hours while that subsidiary held a portfolio of consumer products that included cornstarch Baby Powder.  (*See* McGraw Decl. ¶¶ 7-8.)

23

acquiring the product line alone suffices to impose liability; companies that acquired trademarks but never manufactured products under those trademarks were not liable).  That principle applies with special force here, because Janssen only acquired those assets to pass them to a different entity, facilitating a transaction primarily involving other companies.[15]

In any event, Janssen did not acquire substantially all of Holdco's assets (much less all the assets of Old JJCI); nor did it destroy any plaintiff's remedy against its predecessor.  *See, e.g.*, *Leo*, 37 F.3d at 99.  Once again, LTL and Holdco remained viable going concerns fully capable of satisfying any liability.  (*See* Kim Decl. ¶¶ 27-28 (explaining Holdco's current assets).)  The Special Master entirely failed to address this requirement, which independently precludes liability against Janssen.

**Kenvue.**  Kenvue also should not be held liable under the product-line exception.  As a threshold matter, Kenvue is incorporated in Delaware and Delaware, like Texas and the majority of states, ***does not recognize*** the product-line exception to the rule against successor liability.  *Dickens v. A-1 Auto Parts &*

---

[15]     Indeed, accepting the Special Master's reasoning would destroy corporate dealmaking.  It is not uncommon for corporate assets to pass through several intermediaries as part of a spin-off or similar transaction, and such transactions would become impossible if companies had to worry about imposing crushing tort liability on every such intermediary.

*Repair Inc.*, No. 1:18CV162-LG-JCG, 2020 WL 6265078, at *3 (S.D. Miss. Oct. 23, 2020) ("There is no indication that Delaware has adopted the product[-]line exception to the general rule against successor liability. . . . Indeed, recent Delaware decisions list no more than the traditional exceptions to the general rule against successor liability.") (footnote omitted); *In re G-I Holdings*, 2008 WL 11513187, at *14 n.12 ("Delaware and most other states do not" "recognize[] . . . the product[-]line exception . . . .").

Even New Jersey law, which the Special Master purported to apply, does not support invocation of the product-line exception in these circumstances. For starters, just like Janssen, Kenvue has not acquired all the assets of its predecessor or destroyed plaintiffs' remedies against it. That alone renders the product-line exception inapplicable.

Moreover, Kenvue does not manufacture the product line alleged to have caused harm. Kenvue manufactures cornstarch powder. It does not and has never manufactured talcum powder for sale in the United States. (*See* Prop. SAC ¶ 63.) The Special Master stated that Kenvue "sells Johnson's Baby Powder in the United States" (Opinion at 15 (citing Prop. SAC ¶¶ 56, 61)), but the current product shares almost nothing beyond a name with the one alleged to have injured plaintiffs.

In holding to the contrary, the Special Master suggested that plaintiffs had "sufficiently alleged that the new defendants continued manufacturing and

marketing the Johnson's Baby Powder product[]line, a reformulated product that is functionally the same and serves the same purpose, uses the same name, and is marketed to the same audience" as talcum powder.  (Opinion at 16.)  None of those facts is relevant to the analysis.  The contention that the two products are "functionally the same" is obviously wrong.  Plaintiffs' whole theory of the case is that cornstarch powder is not carcinogenic and therefore should always have been used in place of talcum powder.  (*See* Prop. SAC ¶¶ 84-85.)  Product-line liability has been imposed when the allegedly harmful component of the product remains— a circumstance plainly absent here.  *See, e.g.*, *Bussell v. DeWalt Prods. Corp.*, 259 N.J. Super. 499, 519 (App. Div. 1992) (A "distinguishing feature . . . ***that injured plaintiff*** is still included in the [product] produced.") (emphasis added).  If the Special Master meant that the product serves similar purposes or served a similar market niche, that is irrelevant.  In *Potwora*, for example, the fact that the successor company continued manufacturing motorcycle helmets was insufficient because it did not manufacture the specific helmet line at issue.  319 N.J. Super. at 707.[16]  The same principle applies here.

_____

[16]    The Special Master also cited the PSC's boilerplate allegation that "the new J&J Defendants . . . manufacture the same product" as Old JJCI.  (Opinion at 15 (citing Pls.' Reply Br. at 11).)  But whether the product is the "same" for purposes of the product-line exception is a legal conclusion, not entitled to a presumption of correctness even at the pleading stage.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In short, both requirements for imposing the product-line exception are lacking as to Holdco, Janssen and Kenvue.

### B. Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Mere-Continuation Exception.

The second exception invoked by the Special Master—the mere-continuation exception—is equally inapplicable.

*Holdco.*  For starters, as with the product-line theory, the PSC's effort to impose liability on Holdco under the mere-continuation exception fails because the Third Circuit has already stated in no uncertain terms that Holdco did not inherit liability from Old JJCI under any theory, and that under the Texas divisional merger, all liability, along with corresponding assets, went to LTL.  *LTL I*, 64 F.4th at 96-97.  That should be the end of the matter as to both exceptions.  Moreover, had the Special Master correctly applied Texas law, he would have had to independently reach the same conclusion.  Texas does not recognize the mere-continuation exception; indeed, its legislature specifically abrogated it.  *See C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 791-92 (Tex. App. 2004) ("[T]he legislature eliminated the 'mere continuation' theory as an exception to the rule of successor non-liability . . . .").

While New Jersey law, which the Special Master applied, recognizes the mere-continuation exception in theory, that exception can only be invoked where the successor is "nothing but the predecessor in disguise."  *IDT Telecom*, 2009 WL

27

5205968, at *11.  To come within this exception, a plaintiff must plead "four elements:  (1) continuity of shareholders or ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the successor of liabilities ordinarily necessary for uninterrupted continuation of business . . . ; and (4) continuation of the enterprise of the selling entity so that there is continuity of management, personnel, physical location, assets, and general business operations."[17]  *Id*.  The "intent of the contracting parties" likewise matters.  *Marsdale v. Port Liberte Partners*, No. A-3890-03T1, 2007 WL 92666, at *5 (N.J. Super. Ct. App. Div. Jan. 9 2007) (per curiam).  As with the product-line exception, the mere-continuation exception is intended for plaintiffs without ordinary recourse, not where the predecessor "continued as [a] separate and distinct entit[y]."  *Id.* at *6.

The Special Master barely evaluated these factors with respect to Holdco, simply stating that "plaintiffs allege the new J&J Defendants" in general "have the same leadership and ownership, and use the same . . . brand and manufacturing assets."  (Opinion at 15.)  In fact, the only such allegations in the complaint are a

---

[17]     Despite purporting to apply New Jersey law to the entire MDL proceeding, the Special Master relied principally on a Michigan case and a federal case interpreting Ohio and Indiana law.  (*See* Opinion at 14 (citing *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873 (Mich. 1976) and *Travis v. Harris Corp.*, 565 F.2d 443 (7th Cir. 1977)).)

series of conclusory buzzwords (*see* Prop. SAC ¶ 429), exactly the "formulaic recitation of the elements of a cause of action" that the Supreme Court has held to be insufficient, *Iqbal*, 556 U.S. at 678 (citation omitted).  The Special Master further held that the intent of the contracting parties "plainly cannot be evaluated using a motion to dismiss standard."  (Opinion at 17.)  But the complaint specifically alleges theintent of the divisional merger:  "to isolate the talc liabilities" with LTL.  (Prop. SAC ¶ 43.)  And as discussed at length above, there is nothing problematic about this goal because plaintiffs have sufficient recourse against LTL.  Thus, even putting aside the Special Master's error as to choice of law, the mere-continuation exception cannot apply to Holdco.

Once again, since Holdco did not inherit any liability, it could not have passed any such liability to Janssen or Kenvue.  Nonetheless, evaluation of the transactions that created Kenvue confirms that those transactions would have further cut off any hypothetical liability.

*Janssen*.  Invocation of the mere-continuation exception against Janssen fails at almost every step.  First, and most importantly, the PSC does not allege that Holdco dissolved after passing on its assets, much less that it did so as soon as possible.  *IDT Telecom*, 2009 WL 5205968, at *11.  Nor does it allege that Janssen ever "assume[d] *all* of the liabilities" previously held by Holdco (much less by Old JJCI).  *Marsdale*, 2007 WL 92666, at *6 (emphasis added).  To the contrary, as

discussed above, Holdco remained a going concern and a proposed defendant in this litigation.  That alone should have defeated the effort to impose liability on Janssen, but the Special Master made no mention of it.  Moreover, the only allegations of continuity between Old JJCI or Holdco and Janssen are entirely conclusory.  No *facts* are alleged about which employees, locations or assets supposedly were shared in common.

In addition, Janssen does not remotely resemble the entity it is alleged to have replaced.  *Cf. Marsdale*, 2007 WL 92666, at *5 ("The more a corporation physically resembles its predecessor, the more reasonable it is to hold [that corporation] fully responsible.") (citations omitted).  Janssen is a pharmaceutical company that does not currently hold any of the assets previously belonging to Holdco.  *See Yandell* Order at 4.  Indeed, plaintiffs concede it only took hold of the assets in order to pass them through to another company.

The Special Master evaded these realities by finding that they "raise[d] fact questions to be addressed at a later time."  (Opinion at 17.)  That was wrong.  The PSC seeks to come within a narrow exception to the rule against successor liability.  It was therefore obligated to plead non-conclusory facts demonstrating that Janssen represents a continuation of Holdco's (and ultimately Old JJCI's) business.  Even taking the allegations in its complaint at face value, it failed to do so.

30

*Kenvue.*  For similar reasons, Kenvue—an independent publicly traded company—does not constitute a mere continuation of Holdco, much less of Old JJCI.  Once again, the Special Master ignored the first and most important factor: Holdco survived the Kenvue spin-off as a productive company, and relatedly, it transferred only a portion of its assets to Kenvue.  In addition, as with all the other defendants, the PSC's allegations of continuity between predecessor and successor are entirely conclusory.  For instance, the proposed amended complaint does not identify any officer or director of Kenvue who previously served at either predecessor company (as opposed to another entity within the broad family of J&J companies).  Nor has the PSC alleged any substantial continuity in ownership or made any allegations about the ownership of Kenvue at all.  Presumably that is because the PSC is well aware that Kenvue is an independent publicly-traded company, which stands in stark contrast with Old JJCI, a wholly-owned subsidiary of J&J, and with Holdco, a direct subsidiary of Janssen and indirect subsidiary of J&J.

For all of these reasons, the PSC's mere-continuation theory is no more viable than their product-line theory, and the motion to amend should have been denied as futile.

## CONCLUSION

For the foregoing reasons, the Court should sustain defendants' objections to

the Special Master's order and deny the PSC's motion to add Holdco, Kenvue, and

Janssen as new defendants.

Dated: January 24, 2024                          Respectfully submitted,

                                                 _Susan Sharko_
                                                 _____
                                                 Susan M. Sharko
                                                 **FAEGRE DRINKER**
                                                 **BIDDLE & REATH LLP**
                                                 600 Campus Drive
                                                 Florham Park, NJ 07932
                                                 Tel.: (973) 549-7000
                                                 susan.sharko@faegredrinker.com

                                                 Allison M. Brown
                                                 Jessica Davidson
                                                 **SKADDEN, ARPS, SLATE,**
                                                 **MEAGHER & FLOM LLP**
                                                 One Manhattan West
                                                 New York, NY 10001
                                                 Tel.: (212) 735-3000
                                                 allison.brown@skadden.com
                                                 jessica.davidson@skadden.com

                                                 *Attorneys for Defendants*