# EXHIBIT 3

## DECLARATION OF DONALD McGRAW

I declare under penalty of perjury that the following is true and correct:

1. My name is Donald McGraw. I have been a member of the Tax Counsel Group of Johnson & Johnson since November 2016. I am over twenty-one years of age and of sound mind. I am competent to affirm all of the matters set out in this Declaration. Unless otherwise stated, all matters herein are within my personal knowledge.

2. I submit this Declaration to provide information regarding a series of internal corporate transactions completed over a period of 18 months which resulted in the separation of Johnson & Johnson's global consumer health business and the creation of a new publicly traded corporation, Kenvue Inc. (to which such business was transferred), including (i) the chronology of events culminating in the transfer; (ii) the reasons for the structure of the transfer; and (iii) individuals and/or entities involved in the transfer. I will refer to these transactions as the "Kenvue Transactions."

3. I understand that it has been claimed that Janssen Pharmaceutical, Inc. ("Janssen") had a significant role in the Kenvue Transactions, including that Janssen directly transferred the U.S. consumer health business to Kenvue, and more broadly, that Janssen operated the consumer health business. However, as explained below, these claims are incorrect.

4. Janssen has had no day-to-day involvement in the operation of the U.S. consumer health business during my time at Johnson & Johnson, and to the best of my understanding, at any time. Rather, long before the Kenvue Transactions, Janssen owned shares of the subsidiary – Johnson & Johnson Consumer Inc. ("JJCI 1") – that operated the U.S. consumer health business. In mid-October 2021, JJCI 1 was merged out of existence in connection with an internal corporate restructuring, in which two new companies were created. The first new company was named LTL Management LLC ("LTL"). Pursuant to the restructuring, LTL became solely responsible for JJCI 1's liabilities arising from North American talc-related claims against it (other than claims for which the exclusive remedy is provided under a workers' compensation statute or similar laws), and the defense of those claims ("Talc-Related Liabilities"). The second new company was named Johnson & Johnson Consumer Inc., which subsequently changed its name to Johnson & Johnson Holdco (NA), Inc. ("Holdco/JJCI 2").

5. In November 2021, Johnson & Johnson announced its intention to separate its global consumer health business, creating a new publicly traded company. The Kenvue Transactions effectuated that planned separation. The hundreds of individual steps comprising the Kenvue Transactions (including many outside the United States) consolidated the global consumer health business in various subsidiaries that were subsequently transferred to Kenvue Inc. for purposes of facilitating the ultimate separation of the global consumer health business from Johnson & Johnson. As part of the Kenvue Transactions, the U.S. consumer health business was transferred by Holdco/JJCI 2 to a newly formed, wholly-owned subsidiary, Johnson & Johnson

Consumer Inc. ("JJCI 3"). Subsequently, JJCI 3 was transferred by Holdco/JJCI 2 to Janssen which, in turn consolidated its ownership of JJCI 3 and another subsidiary under a holding company that was then transferred by Janssen to a series of other Johnson & Johnson companies and ultimately to Kenvue. In connection with the Kenvue Transactions, Janssen directly "owned" JJCI 3 for less than 24 hours and had no day-to-day involvement in the operations of the U.S. consumer business during that time period.

6. As a general matter, the Kenvue Transactions were structured and executed to comply with tax, regulatory and legal requirements, prevent disruption of operations and to effectuate the business transfer in a cost-effective and tax-efficient manner. The specific reasons why the Kenvue Transactions were structured and executed in the way they were cannot be disentangled from legal advice requested and received by Johnson & Johnson. By submitting this declaration, neither I nor the Company intends to waive such privileges. Rather, my statements are made in an effort solely to provide factual information.

7. Set out below is an abbreviated chronology of the Kenvue Transactions that addresses Janssen's principal involvement, with a focus on the transfer of the U.S. consumer health business.

   a. Janssen formed new subsidiary companies, including JNTL Holdings 2, Inc. (completed February 2022);

   b. Holdco/JJCI 2 formed a new subsidiary company, a Nevada corporation named Johnson & Johnson Consumer Inc. ("JJCI 3") (completed June 1, 2022);

   c. Janssen transferred employees to JJCI 3 in exchange for no consideration (completed January 1, 2023);

   d. Janssen transferred 100% of the legal title of the Fort Washington, Pennsylvania property to JJCI 3 in exchange for nominal consideration of $10 (completed January 2, 2023);

   e. JJCI 3 changed its corporate domicile to Delaware (completed January 3, 2023);

   f. HoldCo/JJCI 2 distributed 100% of the shares of JJCI 3 to Janssen (completed February 3, 2023);

   g. Janssen contributed Pevisone IP to JJCI 3 in exchange for additional paid in capital (completed February 3, 2023);

   h. Janssen contributed 100% of the shares of JJCI 3 and other consumer health subsidiaries to JNTL Holdings 2, Inc. in exchange for additional paid in capital (completed February 3, 2023);

    i. Janssen distributed 100% of the shares of JNTL Holdings 2, Inc. to DePuy Synthes, Inc. (completed February 3, 2023);

    j. DePuy Synthes, Inc. contributed 100% of the shares of various consumer health subsidiaries to JNTL Holdings 2, Inc. in exchange for additional paid in capital (completed April 3, 2023);

    k. DePuy Synthes, Inc. distributed 100% of the shares of JNTL Holdings 2, Inc. to Johnson & Johnson International (completed April 3, 2023);

    l. Johnson & Johnson International contributed 100% of the shares of various consumer health subsidiaries to JNTL Holdings 2, Inc. in exchange for additional paid in capital (completed April 3, 2023);

    m. Johnson & Johnson International distributed 100% of the shares of JNTL Holdings 2, Inc. to Johnson & Johnson (completed April 3, 2023); and

    n. Johnson & Johnson transferred (i) 100% of its rights to any consumer health IP agreements, contracts and licenses to Kenvue Inc. in exchange for no consideration and (ii) 100% of its ownership in various consumer health subsidiaries to Kenvue Inc. in exchange for additional paid in capital (completed April 4, 2023).

8. Stated a different way, Janssen received 100% of the shares of the subsidiary that held the consumer health business on February 3, 2023, and *on the same day*, transferred such shares to another Johnson & Johnson subsidiary company, DePuy Synthes, Inc. ("DePuy Synthes"). Later, on April 4, 2023, after several additional steps, Johnson & Johnson transferred 100% of its interests in various consumer health subsidiaries (including JJCI 3) to Kenvue.

9. I have attached as Exhibit A to my Declaration a 20-page slide deck that provides additional detail (includes pictorials) of these and other steps in the Kenvue Transactions related to Janssen's involvement.

10. In addition, attached as Exhibit B to my Declaration are transactional documents (e.g., share distribution agreements) that correspond to the steps described in Exhibit A.

3

11. As a general matter, individuals in the Johnson & Johnson law department and tax department (as well as outside legal and tax advisors) had primary involvement in developing and executing the structure of Kenvue Transactions (including the transfer of the subsidiary operating the U.S. consumer health business to Janssen and the almost immediate transfer of such subsidiary from Janssen to DePuy Synthes). In addition, the agreements and other documents provided in Exhibit B reflect the identities of individuals who were involved in specific transactional steps.

Executed this __18__ day of September, 2023 in _Belle Mead_, _New Jersey_.

_____
DONALD McGRAW