# EXHIBIT 5

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

| | |
|---|---|
| Meredith Egli<br>　　　　Plaintiff/Petitioner(s)<br>vs.<br>Johnson & Johnson et al<br>　　　　Defendant/Respondent(s) | No.　　RG20075272<br><br>Date:　10/26/2023<br>Time:　3:00 PM<br>Dept:　18<br>Judge:　Patrick McKinney<br><br>ORDER re: Hearing on Motion to Quash Service of Summons for Lack of Personal Jurisdiction (JOHNSON & JOHNSON Res. #947468659856) |

The Motion to Quash Service of Summons filed by Johnson & Johnson, JOHNSON & JOHNSON CONSUMER INC., as successor-in-interest, parent, alter ego, and equitable trustee of JOHNSON & JOHNSON CONSUMER INC. and JOHNSON & JOHNSON BABY PRODUCTS COMPANY (New JJCI), Johnson & Johnson Consumer, Inc. on 06/05/2023 is Granted.

This Ruling addresses nine (9) Motions to Quash Service of Summons ("Motions to Quash") brought by defendant Johnson & Johnson Holdco (NA) Inc.'s (note that Holdco's corporate name may have subsequently changed, but the Court will continue to refer to this corporation as "Holdco") in the following nine asbestos torts actions:

(1) Eagles v. Arvinmeritor, Inc. 22CV018294;
(2) Segedie v. Colgate-Palmolive Co., 22CV019385;
(3) Diaz v. Avon Products, Inc., 22CV022885
(4) Sorum v. Albertsons Companies, Inc., 23CV031203
(5) Yerkes v. Avon Products, Inc., 23CV032102
(6) Hofmaister v. Johnson & Johnson, 23CV033743
(7) Leavitt v. Johnson & Johnson, RG 17-882401
(8) Barkley v. Johnson & Johnson, RG 20-066950
(9) Egli v. Johnson & Johnson, RG 20-075272

Holdco's nine Motions to Quash are GRANTED.

The background facts are as follows. Holdco is a wholly-owned subsidiary of defendant Johnson

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
Rene C. Davidson Courthouse

& Johnson, the parent corporation of a large number of related corporations. In or around 1979, Johnson & Johnson placed responsibility for manufacture, distribution and sale of a number of Johnson & Johnson brand consumer products, including as relevant here Johnsons' Baby Powder containing talc, into a subsidiary corporation most recently known as Johnson & Johnson Consumer, Inc. ("Old Consumer"). As of approximately 2021, Old Consumer's consumer talc liabilities had rendered an otherwise profitable Old Consumer unprofitable as of 2020. (See In Re LTL Management, LLC (3d Cir. 2023) 64 F.4th 84, 93-94.) As a result, Johnson and Johnson and Old Consumer developed a scheme to attempt to liquidate Old Consumer's potential talc liabilities into a single liability in a fixed amount.

In 2021, Old Consumer underwent a Texas law divisional merger in which Old Consumer was extinguished as a corporate entity and two new corporate entities were created: Holdco and LTL Management, LLC ("LTL"). Holdco received all or nearly all of Old Consumer's profitable consumer product assets, while LTL received all of Old Consumer's unliquidated consumer talc liabilities and assets worth about $367.1 million and also $6 million in cash. (Id. at 95-96.) As the assets placed in LTL would not fully finance Old Consumer's estimated talc liabilities, LTL also received payment rights in a 2021 Funding Agreement pursuant to which Holdco and Johnson & Johnson jointly and severally agreed to fund LTL's talc liabilities up to the then current value of Holdco, calculated to be $61.5 billion. (Id. at 96-97.)

Following the divisional merger, LTL filed for bankruptcy protection, seeking to liquidate through bankruptcy proceedings its potential talc liabilities by establishing a trust fund in the total amount of $8.9 billion, an amount proposed by LTL. (In re LTL Management, LLC (Bk Ct. N.J. Dist. 2023) 652 BR 433, 440.)

The Third Circuit Court of Appeals dismissed LTL's initial bankruptcy action, finding that at the time of the bankruptcy LTL was not in financial distress because LTL had asset streams of more than $61 billion pursuant to the 2021 Funding Agreement to pay these liabilities, an amount far exceeding reasonable estimates of total talc liabilities. (Id. at 106-110.)

After the initial bankruptcy action was dismissed, Johnson & Johnson, Holdco and LTL tried again. Johnson & Johnson and Holdco unilaterally withdrew the 2021 Funding Agreement and entered into a second Funding Agreement (the "2023 Funding Agreement"), under which, as this Court understands it, Johnson & Johnson had a lesser obligation to back-stop funding of LTL's talc liabilities and whereby Holdco was now only obligated to fund LTL up to the amount slightly less than $30 billion, Holdco's value as of the 2023 Funding Agreement because Holdco had transferred some of the assets it received out of the Old Consumer divisional merger to new or different Johnson & Johnson subsidiaries without receiving in return equal value to the assets transferred. LTL then filed for bankruptcy protection a second time (the "Second BK Action"). (652 BR at 446.)

The New Jersey bankruptcy court, having received evidence from LTL's valuation expert that reasonable estimates of LTL's total talc liabilities were $11 billion to a "worse case scenario" of $21 billion, found that LTL's asset streams under the 2023 Funding Agreement were still greater and, thus, LTL was not in financial distress; and the New Jersey bankruptcy court dismissed the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

Second BK Action.

Neither party has presented evidence that LTL has filed a third bankruptcy action or that Johnson & Johnson and Holdco have unilaterally withdrawn or modified the 2023 Funding Agreement in order to reduce LTL's ability to pay the pending talc claims at issue in the above-referenced nine actions. Plaintiffs have named each of Johnson & Johnson, Holdco and LTL as defendants in each of the above nine actions.

ANALYIS OF SECOND SUPPLEMENTAL BRIEFING

Plaintiffs' recently submitted briefing argues that the two Funding Agreements create successor liability over Holdco as intentional assumptions of these liabilities, citing to Fisher v. Allis-Chalmers Corp. Product Liability Trust (2002) 95 Cal.App.4th 1182, 1188 and CenterPoint Energy, Inc. v. Sup.Ct. (2007) 1101, 1120. However, Fisher is clearly distinguishable from the present circumstances because the alleged successor in interest in Fisher entered into a contract pursuant to which it assumed the at-issue liabilities. Here, Holdco never assumed any talc liabilities assigned to LTL, and instead agreed to fund those liabilities to the extent that the assets assigned to LTL are insufficient to resolve all future talc liabilities.

CenterPoint is a case involving what appears to be another Texas law divisional merger, or something similar, pursuant to which one of the successor corporations received all of the predecessor's regulated energy company assets, while the other successor received all the unregulated energy company assets. The CenterPoint divisional merger was necessitated by a then recently enacted Texas law that required splitting of regulated and unregulated energy company assets into different corporate entities. The California lawsuit involved claims of unlawful manipulating of natural gas prices conducted in the unregulated market. The Court of Appeal held that defendant CenterPoint, the holder of the regulated assets, was not a mere continuation of the predecessor corporation because CenterPoint received only the assets and liabilities of the regulated business operations and none of the assets or liabilities of the unregulated business operations.

CenterPoint's holding could arguably be distinguished from the present circumstances because the entire point of the 2021 Old Consumer divisional merger was to place the talc liabilities in LTL; allow the profitable portions of the Old Consumer business to go forward as Holdco without the talc liabilities; and then to liquidate the talc liabilities through bankruptcy proceedings. Notwithstanding the Johnson & Johnson corporate entities' intentions, plaintiffs herein have not made any evidentiary showing or cited to any finding by a court that the proposed liquidation of talc liabilities in bankruptcy was for the purpose of defrauding talc claimants. Similarly, Johnson & Johnson and LTL are parties to all of the nine pending actions, and the plaintiffs have made no showing that LTL does not presently have the assets to pay any or all of the judgments the plaintiffs might each obtain against it as the holder of the Johnson & Johnson talc liabilities. Although there is certainly reason for plaintiffs to believe, based on the past machinations, that at some time in the future Johnson & Johnson and Holdco might seek to defraud talc claimants, either by unilaterally terminating or revising the 2023 Funding Agreement or by further divestment from Holdco of the assets it would need to fund LTL's talc

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

liabilities without adequate compensation to Holdco, it does not appear that any such fraud acts have yet occurred.

Because none of the respective plaintiffs have shown that they do not have adequate remedies against LTL, indisputably the entity that came out of the 2021 divisional merger with possession of the Johnson & Johnson talc liabilities, except for those allegedly un-transferred liabilities still in the possession of Johnson & Johnson, the Court finds that Holdco is not a proper party to the actions at this time.

Wherefore, the Court GRANTS all of Holdco's Motions to Quash.

Nevertheless, if in the future plaintiffs develop evidence supporting a finding of Johnson & Johnson's, LTL's, Holdco's or any other Johnson & Johnson corporate entities' intent to defraud plaintiffs by making any judgments against LTL uncollectable in full, the Court would certainly be receptive to entertaining motion practice to bring Holdco back into any actions then pending or subject to judgment enforcement proceedings.

Dated :   10/26/2023

*[Signature]*

Patrick McKinney / Judge

ORDER re: Hearing on Motion to Quash Service of Summons for Lack of Personal Jurisdiction (JOHNSON & JOHNSON Res. #947468659856)

Page 4 of 4