

Montgomery
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

Atlanta
4200 Northside Parkway
Building One, Suite 100
Atlanta, GA 30327

(800) 898-2034
BeasleyAllen.com



**P. Leigh O'Dell**
leigh.odell@beasleyallen.com

**Michelle A. Parfitt**
mparfitt@ashcraftlaw.com

January 25, 2024

Honorable Rukhsanah L. Singh, U.S.M.J
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

      Re:   *Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
            Case No.: 3:16-md-02738-MAS-RLS

Dear Judge Singh:

Please accept this letter on behalf of the Plaintiffs' Steering Committee (PSC) in response to the Defendants' letter of January 18, 2024.

### 1. Dr. Daniel Clarke-Pearson and Dr. Judith Wolf Have Each Been Deposed for Over 25 Hours Regarding General and Case-Specific Opinions, In Compliance With this Court's Orders

Dr. Daniel Clarke-Pearson and Dr. Judith Wolf serve as general causation experts and case-specific experts for three bellwether Plaintiffs.[1] To date, Dr. Clarke-Pearson and Dr. Wolf have each been deposed for <u>over 25 hours</u> concerning their general and case-specific opinions in this MDL.

Dr. Clarke-Pearson was questioned: (1) for seven hours on February 4, 2019, regarding his general causation opinions; (2) at the *Daubert* hearing regarding his

---

[1] Dr. Clarke-Pearson submitted case-specific opinions for Hilary Converse, Tamara Newsome, and Pasqualina Rausa. Dr. Wolf submitted case-specific opinions for Linda Bondurant, Anna Gallardo, and Carter Judkins.

general causation opinions; (3) for 14 hours on August 26 and 27, 2021, concerning new literature reviewed for his general causation opinions and his three case-specific opinions, as required by the Court's August 2, 2021 Order; and (4) for four hours on January 17, 2024, in accordance with the Court's October 10, 2023, Amended Order.

Similarly, Dr. Wolf was examined: (1) for seven hours on January 7, 2019, regarding her general causation opinions; (2) for 14 hours on September 13 and 14, 2021, concerning newly reviewed general causation materials and her three case-specific opinions, as required by the Court's August 2, 2021, Order; and (3) for four hours on January 10, 2024, pursuant to the Court's October 10, 2023, Amended Order. Despite these experts having already been exhaustively deposed in compliance with this Court's Orders, Defendants now insist that they are entitled to examine Dr. Clarke-Pearson and Dr. Wolf for <u>an additional 14 hours each</u>. Defendants' demands are not supported by the language or intent of this Court's Orders.

The Court's August 2, 2021, Order allowed Plaintiffs to serve amended and supplemental expert reports and permitted Defendants to conduct limited expert depositions on such reports. Specifically, the Order authorized depositions of general causation experts who served a supplemental report, limited to four hours of testimony concerning only new material contained in the supplemental report. *See* Dkt. No. 24511. The Order further provided that depositions of experts who addressed case-specific issues for three or more cases in addition to providing supplemental reports on general causation were "limited to two days/14 hours of testimony time." Dkt. No. 24511. On July 2, 2021, nearly three years after Plaintiffs' original expert disclosures, Plaintiffs served case-specific expert reports for the six bellwether cases and amended reports for certain general causation experts. Thereafter, Defendants deposed each of Plaintiffs' experts for which a new or amended report was served—including Dr. Clarke-Pearson and Dr. Wolf. Because Drs. Clarke-Pearson and Wolf rendered three case-specific opinions in addition to general causation opinions, and each expert was deposed for 14 hours over two days, as permitted by the Scheduling Order.

The discovery deadlines set forth by the August 2, 2021, Order were interrupted when Johnson & Johnson embarked on a bankruptcy strategy that paused this MDL for nearly two years. *See LTL Mgmt., LLC v. Those Parties Listed on Appendix A To Complaint (In re LTL Mgmt., LLC)*, 58 F.4th 738 (3d Cir. 2023) (dismissing LTL's first bankruptcy petition because it was filed in bad faith and it

was not a debtor in distress); *In re LTL Mgmt., LLC*, 652 B.R. 433 (Bankr. D.N.J. 2023) (dismissing LTL's second bad faith bankruptcy). Once this MDL resumed, the Court entered its October 10, 2023, Order to amend the discovery deadlines previously set forth in the August 2, 2021, Order. *See* Dkt. No. 28516. Like the original scheduling order, the amended order anticipated review by experts of additional literature and provided Defendants the opportunity to conduct expert depositions <u>subject to the same limitations</u> outlined in the 2021 Order.

Accordingly, Plaintiffs served Dr. Clarke-Pearson's and Dr. Wolf's amended expert reports on November 15, 2023. Contrary to Defendants' assertions, neither Dr. Clarke-Pearson nor Dr. Wolf submitted "new reports." *See* Dkt. No. 28915 at 2–3. Rather, each expert revised their report only to reflect additional scientific literature published and reviewed since the last expert disclosures were made over two years ago, and to update the medical history of their bellwether plaintiffs. Dr. Clarke-Pearson's and Dr. Wolf's original <u>opinions remain unchanged</u>. *See* Second Amended Expert Report of Daniel Clarke-Pearson, attached as **Exhibit A** (with redlines of added material); Second Amended Expert Report of Judith Wolf, attached as **Exhibit B** (with redlines of added material). Because both experts already complied with the Court's August 2021 Order in September 2021, they were only subject to one more four-hour deposition addressing the new references contained in their amended reports.[2]

Nor is extra time warranted for Defendants to examine Dr. Wolf about Dr. Longo's Third Supplemental Report, Dr. Longo's exposure analysis for the six bellwether Plaintiffs, or Dr. Levy's analysis of the six bellwether Plaintiffs' genetic testing. To be clear, Dr. Wolf <u>does not rely</u> on these reports in reaching her opinions; rather because they comment on her case-specific bellwether Plaintiffs or include new asbestos testing results, Dr. Wolf <u>reviewed</u> the reports. Plaintiffs served these reports on Defendants in November 2023 along with other PSC expert reports. Plaintiffs believe that Defendants had adequate notice and time during the deposition to examine Dr. Wolf on these references. However, in an effort to reach agreement

---

[2] Notably, prior to Defendants' recent rejection of certain expert reports and demands for extraordinary time for each deposition, the proposed deposition schedule contemplated 17 depositions within 22 days. The 24 additional hours now sought by Defendants would not have been feasible under this timeline. Further, Dr. Clarke-Pearson's and Dr. Wolf's amended reports are only 19 and 23 pages long, respectively, with the new material in the reports being limited to the inclusion of citations and a handful of new sentences and paragraphs, all of which could have been adequately addressed in the four hours previously agreed to by the parties.

with Defendants, Plaintiffs offered another hour for Defendants to examine Dr. Wolf on these three references, but this offer was rejected.

### 2. Dr. Patricia Moorman Issued One Supplemental General Causation Report Subject to One Four-Hour Examination

Dr. Patricia Moorman has submitted two general causation expert reports in this MDL. Dr. Moorman submitted her first report on November 16, 2018, and was deposed concerning the opinions therein for over seven hours on January 25, 2019. Dr. Moorman submitted a Supplemental Expert Report on November 15, 2023 ("2023 Supplemental Report"). As Dr. Moorman explains, the supplement does not offer any new opinions. Rather, it was updated only to reflect newly published scientific literature reviewed by Dr. Moorman in the more than two-year interim since the last expert disclosures. Accordingly, per the Court's October 10, 2023, Order, Dr. Moorman's four-hour deposition was scheduled for January 18, 2024, to "address new material contained in the supplemental report." Dkt. No. 28516.

Part of the additional literature considered by Dr. Moorman was outlined in an April 21, 2021, "Addendum to Rule 26 Expert Report of Patricia G. Moorman" ("2021 Addendum") that was prepared and produced to the Johnson & Johnson Defendants in the Philadelphia state court litigation and attached to Dr. Moorman's 2023 Supplemental Report. On January 8, 2024, counsel for Defendants advised Plaintiffs' counsel that because Dr. Moorman was never questioned on her 2021 Addendum, as the state court rules did not permit depositions, Defendants planned "to make that part of the deposition next week." *See* January 8, 2024, Correspondence from Susan Sharko to Michelle Parfitt, attached as **Exhibit C**. In response, Plaintiffs agreed that Dr. Moorman could be examined on the 2021 Addendum because it was incorporated into her 2023 Supplemental Report. On January 17, 2024, the day before Dr. Moorman's scheduled deposition, counsel for Defendants advised Plaintiffs' counsel for the first time that they would be deposing Dr. Moorman for eight hours. Plaintiffs refused, as the Scheduling Order provides for only four hours of examination concerning new materials contained in a supplemental report. Although Dr. Moorman was in North Carolina and prepared to testify the next day, Defendants elected to forego the deposition.

Despite Defendants' misrepresentations, Dr. Moorman's 2021 Addendum does not constitute a third supplemental report entitling them to a third four-hour deposition. The seven-page Addendum was prepared and produced for a state court

proceeding and serves as reliance material for the 2023 Supplemental Report prepared and produced for this MDL. Defendants' counsel seemingly acknowledged this much in planning to question Dr. Moorman on the 2021 Addendum as "<u>part of</u>" the limited deposition set for January 18, 2024.

### 3. Defendants Selectively Cherry-Pick Portions of the Record in Accusing Plaintiffs' Counsel of Obstructing Depositions

Finally, Defendants selectively cherry-pick portions of Dr. Clarke-Pearson's and Dr. Wolf's transcripts in alleging that Plaintiffs' counsel obstructed the examinations. An accurate account of the proceedings reveals that this allegation is completely baseless.

Defendants assert that Dr. Wolf's deposition was "interrupted at times by lengthy speaking objections from plaintiffs' counsel." Dkt. No. 28915 at 3. Not so. Throughout the four-hour deposition, <u>only one objection by Plaintiffs' counsel extended beyond a single sentence</u>. This particular objection was the result of an ongoing exchange between Defendants' counsel and Plaintiffs' counsel regarding a document not included in Dr. Wolf's materials considered list. Because the document had not been reviewed by the witness, Plaintiffs' counsel objected to the line of questioning unless the document was provided to the witness for review. *See, e.g.,* 1/10/2024 Wolf Deposition 237:11–15, attached as **Exhibit D** ("I object to this line of questioning. Dr. Wolf has asked you to see it and, Mark, you can just . . . e-mail it to us."). Importantly, Dr. Wolf herself expressed the desire to see the entire document, stating, "I would like to see the whole document." *Id*. 236:6–7. Despite both the witness's request and Plaintiffs' counsel's objection, Defendants' counsel persisted with the line of questioning without providing the document. It was only after continued objections and a prolonged exchange between Defendants' counsel and Plaintiffs' counsel that Defendants' counsel provided the document to Dr. Wolf, after which the deposition continued.

With respect to Dr. Clarke-Pearson's deposition, Defendants allege that "counsel's numerous, long-winded objections . . . repeatedly ground the deposition to a halt." Dkt. No. 28915 at 2. Again, Defendants selectively cite portions of the transcript, presenting an unfair and misleading representation of events. For example, Defendants state that "questions had to be re-asked and re-read back to the expert because the witness could not even recall the posed question after waiting for counsel to finish lengthy objections." *Id*. Defendants fail to mention, however, that

the cited objections were asserted because the examiner continuously questioned Dr. Clarke-Pearson about topics predating his last deposition, instead of limiting questions to "new material contained in the supplemental report," as required by the Court's October 10, 2023 Order. Dkt. No. 28516 at 2.

Indeed, Defendants' counsel was inappropriately hostile to Dr. Clarke-Pearson throughout his deposition. *See, e.g.,* 1/17/2024 Clarke-Pearson Deposition 66:12–17, attached as **Exhibit E** (examiner saying to the witness "I don't have all day here" while the witness was trying to locate the paper he was being questioned about).[3] Thus, most of counsel's objections were necessary to protect the witness. *See id.* 178:11–13 ("Objection to form. Asked and answered. Please do not badger Dr. Clarke-Pearson or be disrespectful."). For instance, despite Dr. Clarke-Pearson repeatedly stating that he could not provide a specific percentage of income attributable to expert work because his income is derived from a variety of sources now that he is retired, such as part-time work for a university, expert work, social security, and pension benefits, Defendants' counsel continued to press him for an answer. *See id.* 12:18–13:25 (Dr. Clarke-Pearson ultimately stating, "I just can't give you a specific number. I'm sorry."). As a result, counsel had to object to each question that had already been repeatedly asked and answered by the witness.

Relatedly, each time the examiner asked Dr. Clarke-Pearson to disclose his annual pension earnings, counsel objected, explaining that the defense is not entitled to such information. *See id.* 14:5–8 ("you're not entitled to that information Jessica so I would object to the question and Dr. Clarke-Pearson you don't have to respond to that."). Nevertheless, Defendants' counsel demanded an answer, at one point even insinuating that Dr. Clarke-Pearson was not cooperating. *See id.* 15:2–4 ("Dr. Clarke-Pearson are you refusing to testify to what percentage of your income comes from expert work?"). In all, a cursory review of Dr. Clarke-Pearson's and Dr. Wolf's deposition transcript demonstrates that Plaintiffs' counsel in no way hindered the examinations, but objected as was necessary and appropriate to address harassing and repetitive questioning by Defendants' counsel.

Moreover, the fact that the depositions were conducted virtually, via Zoom, is important context to be considered. Defendants did not provide copies of or identify the documents that would be marked as exhibits in advance of the deposition. Plaintiffs' counsel ensured that both Dr. Wolf and Dr. Clarke-Pearson had copies of their respective reports and cited materials to ensure efficient questioning and

---

[3] The transcript attached is a rough draft, as the final transcript is not yet available.

responsive answers. Often, counsel for Defendants would not allow the witnesses sufficient time to locate a document prior to questions beginning, placing them in an unfair position to adequately respond. Further, the witnesses were questioned about documents that they did not cite in their reports or even include in their materials considered lists. Despite the witnesses not having physical copies of these documents, counsels' questions persisted with limited information visible on the screen. *See, e.g.,* 1/10/2024 Wolf Deposition 236:6–7, attached as **Exhibit D** (Dr. Wolf stating to Defendants' counsel, "I see the little bit that you're showing. I would like to see the whole document."); 238:8–239:9 (Defense counsel disregarding Dr. Wolf's request to see the whole document and insisting "[y]ou already have a copy of it, so let's continue."). This greatly hindered Dr. Wolf's and Dr. Clarke-Pearson's ability to meaningfully respond, prompting Plaintiffs' counsel to seek clarification at times to facilitate—certainly not to impede—the examinations.

The PSC respectfully requests that the Court address these issues at the hearing set for January 29, 2024.

Thank you for your consideration.

Respectfully submitted,

| | |
|---|---|
| */s/ P. Leigh O'Dell* | */s/ Michelle A. Parfitt* |
| P. Leigh O'Dell | Michelle A. Parfitt |

cc:  Hon. Joel Schneider, U.S.M.J. (via email)
    Susan Sharko, Esq. (via email)
    All Counsel (via ECF)