**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION  *THIS DOCUMENT RELATES TO ALL CASES* | MDL No. 16-2738 (MAS) (RLS) |

**REPLY IN SUPPORT OF THE PLAINTIFFS' STEERING COMMITTEE'S
MOTION FOR PROTECTIVE ORDER REGARDING
SUBPOENA DIRECTED AT NORTHWELL HEALTH, INC.**

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC"), submit this Reply in support of their Motion for Protective Order Regarding Subpoena served by Defendant Johnson & Johnson on non-party Northwell Health, Inc. on December 13, 2023.

**INTRODUCTION**

Defendant's Opposition provides an excruciatingly detailed history of Dr. Jacqueline Moline's work as a researcher studying the link between cosmetic talc and mesothelioma, as well as her expert work on behalf of plaintiffs in mesothelioma litigation. Defendant even attaches more than 1,000 pages of exhibits, including Dr. Moline's mesothelioma studies, expert reports from mesothelioma cases, deposition transcripts, and the medical records of plaintiffs in mesothelioma cases. Perhaps

some of this mass of mesothelioma-focused background information about Dr. Moline would be pertinent if: 1) the MDL included mesothelioma cases; 2) Dr. Moline was an expert in the MDL, or 3) any of the Plaintiffs' experts relied on Dr. Moline's studies to support their opinions in the MDL. Yet, none of these things are true.

This begs the obvious question: If the information sought by Defendant's subpoena—the identities of mesothelioma victims included in Dr. Moline's cosmetic talc-mesothelioma studies—is as critical as Defendant alleges, why is Defendant attempting to obtain it in this <u>ovarian cancer MDL</u> rather than in mesothelioma litigation where Dr. Moline serves as an expert? The short answer, discussed in full below, is that defendants in mesothelioma cases throughout the country have repeatedly attempted to obtain the same information and failed. Non-party Northwell should not be forced to expend time and resources fighting this latest attempt to obtain Dr. Moline's sensitive research information when it is so clearly irrelevant to the MDL. The PSC has standing to seek a protective order enjoining the production of irrelevant information, and therefore respectfully requests that the Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) relieving Northwell of any obligation to comply with the subpoena.

## **ARGUMENT**

**1. The PSC has standing to move for a Rule 26(c) protective order regarding a subpoena directed at a non-party on relevance grounds in the Third Circuit.**

The PSC has standing to move for a protective order pursuant to Rule 26(c), and *Rudelli v. Eli Lilly & Co.* is not an "outlier" case in the Third Circuit. 2020 WL 13694732, at *2 (D.N.J. Nov. 13, 2020). In *Rudelli*, the defendant objected to the plaintiff's attempt to subpoena the new employers of the defendant's former employees. *Id.* at *1. The court first analyzed the defendant's standing to file a <u>motion to quash</u> the subpoena served on the non-party, and concluded the defendant could not:

> "object to the subpoenas on privilege grounds…and the subpoenas are not seeking any information regarding or involving Defendants. Additionally, Defendant does not have a privacy interest in the subpoenaed information…the Court finds that Defendant has no standing to object to the third-party subpoenas."

*Id.* at *2. After concluding that no protected interest was at stake and that the defendant did not have standing to file a Rule 45 motion to quash, the court <u>next</u> conducted a separate relevance analysis and denied the motion for protective order pursuant to Rule 26(c) after determining that the information sought was relevant. *Id.* If Defendant's contention that a party must establish both a personal interest <u>and</u> irrelevance to confer standing for a Rule 26(c) protective order was true, there would have been no reason for the *Rudelli* court to conduct a separate relevance analysis

after having already determined that the defendant had no interest at stake. The inquiry would have necessarily ended.

In the lead case cited by Defendant to purportedly rebut *Rudelli*, the court clearly stated that while the defendant did not have standing to file a motion to quash a nonparty subpoena on relevance grounds, it did "have <u>standing</u> under Rule 26 to move for a protective order t<u>o enjoin the production of irrelevant information</u> for subpoenas issued to non-parties…As such, the Court will turn to the question of <u>whether the information sought is relevant</u> to this action." *Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*, 2014 WL 7073466, at *5 (D.N.J. Dec. 15, 2014) (emphasis supplied). The court then analyzed whether the subpoenaed information was relevant to the case and concluded that it was. *Id.* at *5. The Court <u>did not</u> analyze whether the subpoenaed information jeopardized the defendant's interests or identify any applicable privilege or confidentiality issue as part of the Rule 26(c) motion for protective order analysis.

These decisions track the general principle that courts have broad authority to grant protective orders pursuant to Rule 26. In *Staff4Jobs, LLC v. List Logistics, LLC*, the plaintiff filed a motion to quash a subpoena served by the defendant on a non-party law firm that sought discovery materials from a different lawsuit. 2020 WL 13580942, at *1 (D.N.J. Oct. 19, 2020). The court began by noting that a party has standing to bring a motion to quash pursuant to Rule 45 on behalf of a non-party

when the party itself claims a personal right or privilege in the production sought. *Id.* at *2. However, "[e]ven if the moving party has no standing as traditionally considered under Rule 45, it may nonetheless seek to prevent the discovery pursuant to Rule 26." *Id.* at *3 (*citing Aetrex*, 2014 WL 7073466, at *5) (moving party "does have standing under Rule 26 to move for a protective order to enjoin the production of irrelevant information for subpoenas issued to non-parties"). The court went on:

> Here, the Court does not need to decide the issue of standing under Rule 45. As a matter of the Court's inherent authority to engage in case management, I find that it is appropriate to consider the motion as one for a protective order pursuant to Rule 26, given the relevance concerns it raises.

*Id.* at *3 (*citing Khosroabadi v. Mazgani Soc. Serv., Inc.*, 2018 WL 1858153, at *3 (C.D. Cal. Mar. 1, 2018) (under Rule 26 and the discretion granted to courts to manage discovery, a court may *sua sponte* grant a protective order for good cause shown) (emphasis supplied). The court then considered the defendant's relevance arguments, deemed them "unpersuasive," and granted a protective order pursuant to Rule 26. *Id.* at *4. The plaintiff was not required to articulate any personal interest to obtain a protective order from the court—the analysis was limited to relevance.

There are numerous other examples of cases in this district that do not mention "jeopardized interests" at all as part of the Rule 26(c) protective order analysis. *See, e.g.*, *Lilac Development Group, LLC v. Hess Corporation*, 2016 WL 3457012, at *2 (D.N.J. Jun. 20, 2016) (noting "[u]nder Rule 26(c) a party can seek a protective order for a third-party subpoena where the discovery sought is irrelevant," and denying

motion for protective order because subpoenaed documents were relevant); *Government Employees Insurance Co. v. Koppel*, 2023 WL 5526809, at *4 (D.N.J. Aug. 28, 2023) (stating parties have standing under Rule 26(c) to seek protective orders regarding subpoenas issued to non-parties based on "relevance, breadth and proportionality, and any privacy or confidentiality concerns," and analyzing the defendants' motion for protective order based <u>solely</u> on the breadth and proportionality argument having previously rejected the privacy argument in the motion to quash analysis).[1]

At best, Defendant's handful of cherry-picked cases from outside the Third Circuit demonstrate that there is some degree of variation in the way courts in

---

[1] Other Third Circuit courts also regularly analyze Rule 26(c) motions for protective order based solely on relevance. In *Contour Data Solutions LLC v. Gridforce Energy Management, LLC*, the court noted that "[u]nlike Rule 45, Rule 26(c) grants nonproducing parties standing to move for a protective order." 2022 WL 3907530, *2 (E.D. Pa. Jul. 25, 2022). The *Contour* defendant subpoenaed a non-party for information that it argued was "relevant to its contractual defenses" against the plaintiff's claims. *Id.* The court agreed the information was relevant and denied the motion for protective order. *Id.* The court's standing and substantive analyses were focused solely on relevance, not any purported "interests" or other factors. In *Smith v. HCSC-Blood Center, Inc.*, the plaintiff subpoenaed the defendant's experts for copies of their reports in other cases, IRS forms, and copies of appointment books. 2010 WL 4104669, at *2 (E.D. Pa. Oct. 18, 2010). The defendant sought a protective order pursuant to Rule 26(c). The court noted that "irrelevancy satisfies the good cause requirement" and granted the protective order because of the plaintiff's "failure to show particular relevance of the requested reports" and other documents. *Id.* at *3-4. Here again, there was no mention of "interests" as a standing requirement, and the non-party expert's reports from other cases, IRS documents, and appointment books clearly did not implicate any "interest" of the defendant itself.

different jurisdictions analyze a party's standing to challenge a subpoena directed at a non-party pursuant to Rule 26(c).[2] And a party's alleged protected interests can certainly also provide a sufficient basis for the party to challenge a subpoena directed at a non-party. But to be clear, Defendant's contention that relevance alone is not a sufficient basis to challenge a subpoena directed at a non-party pursuant to Rule 26 is not just unsupported by applicable Third Circuit case law, it is contradicted by some of the very cases Defendant cites.[3]

---

[2] Many other Circuits analyze the standing question the same way as the Third Circuit. For example, in a Fifth Circuit case, the court explained that while a party cannot challenge a subpoena directed to a non-party pursuant to Rule 45 on relevance grounds, "[n]evertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena." *Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 314 F.R.D. 214, 218 (M.D.La. 2016). In the Eleventh Circuit, parties have limited standing to quash subpoenas pursuant to Rule 45, but parties "clearly have standing to move for a protective order if the subpoenas seek irrelevant information." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D.Fla. 2005). *See also Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18, 22 (D.D.C. 2005) ("The Court need not address the [Rule 45] standing issue, however, as defendant, as a party to this action asserting no privilege, proprietary interest, or personal right to the information, should have moved for a Rule 26(c) protective order. The Court therefore deems defendant's motions to quash as, in the alternative, motions for protective order, and will evaluate the motions according to the standard enunciated in Rule 26, including whether the information sought is relevant to any claims or defenses in this case.").

[3] In addition to selectively reading *Rudelli* and *Aetrex*, Defendant misses the mark in *Costantino v. City of Atl. City* as well. The *Costantino* court noted "[t]here is authority for the position that a party can move for a protective order in regard to a subpoena issued to a non-party which seeks irrelevant information," and then "deem[ed] plaintiff's motion to quash [the] subpoena to be the equivalent of a motion for protective order pursuant to Fed. R. Civ. P. 26(c)." 2015 WL 12806490,

**2. Plaintiffs' experts do not rely on Dr. Moline's studies to support their opinions regarding talcum powder products and ovarian cancer**.

None of the MDL Plaintiffs' experts rely on Dr. Moline's mesothelioma studies to support any of their opinions. Defendant's entire relevance argument rests on three insignificant references in three expert reports.

- Dr. Rigler includes Dr. Moline's 2020 study on his "Documents List" along with 127 other documents. *See* Exhibit 28 attached to Defendant's Opposition. Dr. Rigler and Dr. Longo do not cite Dr. Moline's study anywhere in their reports and do not rely on it to reach their opinions. Dr. Rigler has testified in mesothelioma cases and his list of materials includes other mesothelioma studies as well as other documents relevant to his opinions in mesothelioma cases.

- Dr. Moline's 2020 study is included in Dr. Plunkett's "List of Materials and Data Considered" in her Second Amended Report—a 100+ page document that also includes Defendant's own documents and materials. *See* Exhibit 29 attached to Defendant's Opposition. Dr. Plunkett does not cite to Dr. Moline's study anywhere in her report and does not rely on it to reach her opinions which relate only to ovarian cancer and regulatory matters. Moreover, Dr. Plunkett has never referenced Dr. Moline's studies during any of her depositions or appearances in this litigation.

- Dr. Singh's only reference to Dr. Moline is in his Appendix of "Included and Excluded Citations" where he marks her 2023 study as <u>excluded</u> from consideration because the studies' subjects <u>did not have ovarian cancer</u>. *See* Exhibit 30 attached to Defendant's Opposition.

---

at *3 (D.N.J. Nov. 4, 2015). Further noting that a subpoena is always subject to the limitations of Rule 26, the court concluded it had "discretion to <u>sua</u> <u>sponte</u> bar discovery if the burden or expense of the discovery outweighs its benefit…the requested…records are irrelevant [and] Plaintiff should not have to waste an ounce of effort reviewing the documents that have nothing to do with the case." *Id.* The court explicitly rejected the subpoenaing party's standing argument: "The Court does not accept the notion that a party can subpoena irrelevant documents in a case with impunity." *Id.*

Defendant, to borrow its own words, takes a "great leap of imagination" from these scant references to argue that the mesothelioma studies hypothetically "could be" presented to a jury at an MDL ovarian cancer trial even though the Plaintiffs' experts are not relying on the studies, Dr. Moline is not an expert in the MDL, and none of the Plaintiffs suffer from mesothelioma. Opposition at 15-16. The reality is that Dr. Moline's mesothelioma studies were <u>not</u> used at any of the fourteen ovarian cancer talc trials that have proceeded in other jurisdictions—Defendant's failure to cite evidence to the contrary speaks volumes. Nor will Dr. Moline's mesothelioma studies be introduced at any MDL ovarian cancer trials. They are simply irrelevant.

### 3. Defendants in various mesothelioma cases have previously tried and failed to obtain the same information about Dr.  Moline's research subjects, and there is no valid basis for them to obtain the information here when it is irrelevant to the Plaintiffs' claims and experts' opinions.

Defendant and other companies named as defendants in mesothelioma cases throughout the country have been trying to discredit Dr. Jacqueline Moline and her work regarding the causal link between cosmetic talc and mesothelioma for many years. As part of that effort, various defendants have tried repeatedly to obtain the identities of the mesothelioma victims included in her case studies. Having failed to convince other courts that the identities of those individuals is relevant even in mesothelioma litigation, Defendant now makes a last-ditch effort to obtain the information in this ovarian cancer MDL where its irrelevance is even more apparent.

In the mesothelioma case *Gref v. American International Industries, et al.* (S.D.N.Y. 1:20-cv-05589-GBD-VF), defendant American International Industries[4] subpoenaed Northwell for the same information Defendant seeks here—the identities of the research subjects included in Dr. Moline's peer-reviewed article. *See* Memorandum in Support of Non-Party Northwell Health Inc.'s Motion, attached as **Exhibit A**. Dr. Moline was an expert for the plaintiff in the *Gref* case. Northwell argued that it would be improper to identify research subjects both under the "bedrock and widely accepted IRB requirements of confidentiality and privacy" and because Northwell is a "covered entity" under the Health Insurance Portability and Accountability Act ("HIPAA") and de-identifying research subjects would divulge their protected health information." *Id.* at pp. 5-6. Northwell later also noted that the mesothelioma plaintiff was withdrawing any purported reliance on Dr. Moline's article. *See* **Exhibit B**. On May 19, 2023, the court denied the defendant's motion to compel compliance with the portions of the subpoena objected to by Northwell, including the defendant's request for the identities of the research subjects. *See* **Exhibit C**.

In short, Northwell already fought and won this same battle less than one year ago in a mesothelioma case where Dr. Moline actually served as an expert. Northwell

---

[4] Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. were originally named as defendants in this case but had been terminated by the time the Northwell subpoena issue was briefed and decided.

should not be forced to expend time and resources yet again on the same issue when the information sought is irrelevant to ovarian cancer cases, where Dr. Moline is not an expert, and where none of Plaintiffs' experts are relying on her studies.[5]

Defendant points to one of Dr. Moline's study subjects, Ms. Betty Bell, whose identify was deanonymized in a cosmetic talc case in North Carolina (*Bell v. American International Industries, Inc.*), to support its argument that it is somehow appropriate to now deanonymize the identities of every one of the individuals included in the studies. However, it is important to note that Ms. Bell's identity was revealed in the case where she was the plaintiff. She had filed a separate workers' compensation claim based on occupational exposure to asbestos that theoretically put her exposure history at issue. Moreover, numerous trial courts have repeatedly precluded or limited arguments or cross-examination regarding Ms. Bell at trial in mesothelioma cases where Dr. Moline served as an expert.[6]

---

[5] In another mesothelioma case in the Superior Court of New Jersey, Middlesex County, defendant Chanel Inc. moved to compel the "underlying case information" from Dr. Moline's mesothelioma case study. The Court denied the motion, noting that the same issue had been similarly rejected in the jurisdiction before. *See* **Exhibit D**, August 19, 2021 Order Denying Chanel Inc.'s Application to Compel Discovery From Plaintiff.

[6] *See* Order in *Metcalf v. Barretts Minerals, Inc., et al.*, Superior Court of the State of California for the County of Los Angeles, Case No. JCCP4674/22STCV21416, dated June 22, 2023, attached as **Exhibit E**; Excerpt of Transcript from *Chapman v. Avon, et al.*, dated Nov. 2, 2022, attached as **Exhibit F**, at 23:7-24:7; Excerpt of Transcript from *Chatfield v. Avon Products, Inc., et al.*, Circuit Court of the State of Oregon for the County of Multnomah, Case No. 210CV40522, dated Feb. 6, 2023, attached as **Exhibit G**, at 1754:12-1759:2; 1808:10-1811:22.

Trial judges have also prohibited the cross-examination of Dr. Moline at trial regarding the identity of the human subjects included in her mesothelioma studies. At a trial in the New Jersey Superior Court, Middlesex County, Judge Ana C. Viscomi recognized the significant distinction between exploring Dr. Moline's methodology and identifying the subjects of her studies.

**The Court**: Didn't that question you just asked seek to identify the person?

…

**Attorney**: Exactly. Well, she should identify the person to me.

**The Court**: Why?

**Attorney**: Well, because she made a representation in the public literature that there's no other exposure to asbestos, right? Well, I'm in the case and I know that not to be true…I'm just saying based on your methodology, you didn't know this woman has a sworn complaint saying she was exposed to thermal insulation at her workplace.

**The Court**: Thank you. I have no issue with you cross-examining individually with regard to all of the different reports that you have or that she may have referenced in that paper that she co-authored, but seeking to identify is inappropriate and so I'm not going to permit that.

     …

**The Court:** But you're asking Dr. Moline to testify as to whether this person is that person that you referred to…and that I will not permit. It's inappropriate. It's improper."[7]

---

[7] *See Johnson/Lashley v. AII, et al.*, Case No. MID-L-006651-16 ASL, MID-L-007336-16AS, Excerpt of Trial Transcript, dated 3/11/20, attached as **Exhibit H**, at 216:24-221-2 (emphasis added).

This is all consistent with case law establishing that the information Defendant seeks is confidential and must be protected.[8] *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (affirming trial court's decision to keep names of medical study participants confidential); *Lampshire v Procter & Gamble Co.*, 94 F.R.D. 58 (N.D. Ga. 1982) (granting protective order over all personal identifying information about participants in study conducted by the CDC).[9]

Even Defendant's own MDL expert, Dr. Gregory Diette, a pulmonologist, previously testified in a mesothelioma case about the importance of protecting the identity of the research subjects included in Dr. Moline's article:

---

[8] Plaintiffs have not waived this argument. Although Plaintiff's primary objection to the production of this information in the MDL is relevance, Plaintiffs also explicitly raised the patient confidentiality issues multiple times in their opening brief and now respond to the arguments raised by Defendant in its Opposition. *See* Rec. Doc. 28913-1 at 3 ("…Johnson & Johnson seeks irrelevant information from a third-party hospital…and intrudes on the privacy interests of non-party patients who have no connection to this litigation."); *Id.* ("…discovery…implicate[s] the privacy interests of multiple non-party mesothelioma victims."); *Id.* at 5 ("Johnson & Johnson's attempt to obtain this irrelevant information is particularly egregious because it implicates the confidential health information of non-party patients. Courts have 'a responsibility to protect privacy and confidentiality interests'…"); *Id.*

[9] *See also Doe v. Am. Red Cross Blood Servs., S.C. Region*, 125 F.R.D. 646 (D.S.C. 1989) (denying motion to compel identity of blood donor plaintiff claimed caused her to contract HIV because privacy interests outweighed plaintiff's need for questioning); *see also Braintree Laboratories, Inc. v. Novel Laboratories, Inc.*, 2013 WL 12170639, at *2 (D.N.J. Apr. 3, 2013) (granting motion to seal documents, including confidential patient medical data from clinical trials and research conducted relating to such trials).

"**Q**: And so it would be unethical and you would have as a medical doctor some real concerns if the individual, these 33 patients, if their identifies were actually disclosed publicly?

**A**: Well, so actually disclosed and maybe there's some reason to do that but that's why we have ethics boards. Right? And that's why research goes through a process. So I don't know of anybody who's done it but you can certainly approach your ethics board and say, you know, I would like to reveal the identity of these people that I'm putting into a medical journal, is that okay. And they could say it's okay or it's not okay. And if they did, there would be an informed consent process. You know, not just signing a consent form but with a real consent process for that. So yes, this is unusual. It's not what I'm familiar with my colleagues doing routinely.

**Q**: Why is that important? Why is it important to go through that ethics board process and to get informed consent, a real informed consent before disclosing the identity of human subjects in this type of publication?

**A:** This is a medical research about a patient. We have rules about how to do human subjects for certain things and they're meant to protect the study subjects themselves and protections are at various levels depending on what the potential for harm. But generally speaking, there's one of the many things that goes into thinking about preparing a report – excuse me, about human subjects is whether or not you're going to be revealing their identity."[10]

In conclusion, multiple courts have already rejected multiple attempts to obtain the identities of Dr. Moline's research subjects. There is no reason for that information to be disclosed in this MDL. It simply has no relevance here and Defendant has failed to establish otherwise.

## CONCLUSION

---

[10] *See* Excerpt of Deposition of G. Diette, M.D., dated 6/19/20, attached as **Exhibit I**, at 118:10-119:16 (emphasis added).

Defendant should not be permitted to use this litigation as an end-run around prior failed attempts to obtain the same information in mesothelioma cases. There are no allegations of mesothelioma caused by talcum powder products in the MDL master complaint, Dr. Moline is not an expert in this MDL, and Plaintiffs' experts do not rely on her mesothelioma studies to support their opinions regarding Defendant's talcum powder products causing ovarian cancer or anything else.

Northwell has already expended considerable time and resources successfully litigating against various defendants' attempts to reveal Dr. Moline's mesothelioma research subjects in other mesothelioma cases. Northwell has now expended additional time and resources objecting to Defendant's subpoena in the MDL. Northwell should not be burdened further. For these reasons, the PSC respectfully requests that this Court issue a protective order pursuant to Rule 26(c), relieving non-party Northwell from any obligation to comply with Defendant's subpoena.

Dated: January 29, 2024                    Respectfully submitted,

                                           */s/ P. Leigh O'Dell*
                                           P. Leigh O'Dell
                                           BEASLEY, ALLEN, CROW,
                                           METHVIN
                                           PORTIS & MILES, P.C.
                                           218 Commerce St.
                                           Montgomery, AL 36104
                                           Tel: 334-269-2343
                                           leigh.odell@beasleyallen.com
                                           **Plaintiffs' Co-Lead Counsel**

/s/ Michelle A. Parfitt
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
**Plaintiffs' Co-Lead Counsel**

/s/ Christopher M. Placitella
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com
**Plaintiffs' Liaison Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

/s/ P. Leigh O'Dell
P. Leigh O'Dell