UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*THIS DOCUMENT RELATES TO ALL CASES* | MDL No. 16-2738 (MAS) (RLS) |

**REPLY IN SUPPORT OF THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING <u>SUBPOENA DIRECTED AT KCIC, LLC</u>**

Pursuant to Federal Rules of Civil Procedure 45(d) and 26(c), Plaintiffs, by and through Plaintiffs' Steering Committee ("PSC"), submit this Reply in support of their Motion to Quash or for Protective Order Regarding Subpoena served by Defendants Johnson & Johnson and LTL Management LLC (collectively, "Defendants") on non-party KCIC, LLC on December 19, 2023.

## **INTRODUCTION**

This Court need not look beyond Defendants' introduction to ascertain the true purpose behind this abusive subpoena—to further argue their motion to disqualify Plaintiffs' counsel, Mr. Andy Birchfield and the Beasley Allen Law Firm. *See* ECF No. 28920 at 1 ("These undisputed facts clearly demonstrate that Birchfield and Beasley Allen should be disqualified from this litigation."); *Id*. at 2 ("the Conlan-Beasley plan"); *Id*. at 3 ("the side-switching problem underlying J&J's

1

Motion"). Defendants' response is littered with unsupported allegations of misconduct by Mr. Birchfield, Beasley Allen, Mr. James Conlan, and Legacy Liability Solutions, couched as foregone conclusions beyond dispute. *See* ECF No. 28920 at 9 (stating that their theory of relevance is "to determine the extent to which its confidences have been improperly shared"); (stating that the subpoena is "plainly relevant to whether these proceedings can fairly proceed with J&J's confidential information in the hands of its litigation adversaries."). Yet, they offer no factual basis for their attacks on counsel or for third parties who have no involvement in this MDL. Defendants' claims have no merit.

Defendants fail to present any legitimate response as to how their intrusive requests are relevant to this litigation or represent anything other than a fishing expedition. That is because they cannot. Tellingly, when the parties met and conferred on January 4, 2024, counsel for Defendants argued that they were entitled to the subpoenaed information because it might be relevant to assessing damages and liability related to the MDL ovarian cancer cases—essentially admitting that they were seeking information about representatives of the LTL Committee of Talc Claimants' ("TCC") opinions regarding the value and strength of ovarian cancer clients' cases. Plaintiffs correctly countered that assuming such information existed, it would not be admissible under Federal Rule of Evidence 408. In their Opposition, Defendants completely abandon that argument and instead argue that the

2

information is sought "solely to determine the extent to which its confidences have been improperly shared." ECF No. 28920 at 9. Defendants' vague argument makes clear that this is nothing more than a fishing expedition and a blatant attempt to further Defendants' meritless disqualification motion. The evidence in the record—sworn declarations from both Mr. Conlan and Mr. Birchfield—establishes that no purported "confidences" belonging to Defendants were conveyed by Mr. Conlan to Mr. Birchfield. *See* ECF Nos. 28826-2, 28826-3, 28826-4.

While Defendants offer pure speculation, one thing is certain: allowing these abusive discovery tactics to proceed will unnecessarily harm Plaintiffs in this MDL, as well as others who are not parties to this litigation, by disclosing *their* confidences. The law is clear: although "the scope of discovery is broad, it is not unlimited and should not serve as a fishing expedition." *Hashem v. Hunterdon Cnty.*, 2017 WL 2215122, at *2 (D.N.J. May 18, 2017). Because the information sought by the subpoena is both irrelevant and inadmissible in this MDL, and implicates protected communications exchanged in furtherance of mediation in the LTL bankruptcy proceeding, this Court should grant the PSC's motion to quash, or in the alternative, motion for protective order.[1]

---

[1] The PSC strongly contests the insinuation that it interfered or in any way behaved inappropriately with respect to non-party KCIC. The PSC simply sent KCIC a copy of the PSC's objections. KCIC's actions thereafter, including serving its own objections, were its own.

## ARGUMENT

1. **The PSC sufficiently established that the subpoena seeks confidential, privileged information, prepared and exchanged in a separate proceeding, and protected by the mediation privilege and common law principles of settlement confidentiality.**

As the PSC's Motion explains, the subpoena directed at KCIC requires disclosure of privileged, confidential information. Defendants seek to hold the PSC to a higher standard for invoking privilege than the law requires. They rely on *United States v. O'Neill* for the principle that "[t]he Third Circuit has expressly rejected 'broadside invocation[s] of privilege' where they 'fail[] to designate with particularity the specific documents . . . to which [a] claim of privilege applies[s]." ECF No. 28920 at 9 (quoting *United States v. O'Neill*, 619 F.2d 222, 225 (3d. Cir. 1980)). But *O'Neill* is inapplicable, as it primarily concerned the executive privilege. The executive privilege is properly invoked only when certain requirements are satisfied, including "a specific designation and description of the documents claimed to be privileged." 619 F.2d at 226 (internal citations and quotations omitted). There, the executive privilege was invoked orally, by someone other than the department head, there was no indication that the documents were personally examined, and "it was a broadside invocation of privilege, which failed to designate with particularity

4

the specific documents or file to which the claim of privilege applied." *Id*. at 226.[2] The PSC is not invoking the executive privilege here.

The deficient invocation of privilege in *Weinstein v. Brisman* is also distinguishable. 2020 WL 1485960, at *7 (D.N.J. Mar. 26, 2020). There, the plaintiff and the defendant, who were siblings, jointly served subpoenas on two non-parties for the production of documents concerning the financial and operational affairs of private foundations established by the parties' late mother. Both non-parties served as directors of the foundations, and one served as legal counsel for the parties' mother for some time. In response to the subpoenas, the non-parties simply stated that the parties sought "production of privilege[d] communications between [their mother] and the Nonparties as her legal counsel." *Id*. at *4. The court rejected the claim of privilege because the nonparties had "not described the nature of the documents subject to any putative privilege with sufficient specificity" to allow the court to quash all 56 categories of documents sought by the subpoena. Indeed, the non-parties in *Weinstein* did not describe the nature of the documents at all.

In contrast, the PSC specifically described the nature of the communications subject to privilege: As the PSC explained in its motion, Mr. Conlan approached the LTL TCC regarding his proposal that his company Legacy would attempt to acquire

---

[2] Likewise, the other case cited by Defendants, *Dawson v. Ocean Twp.*, concerned the governmental privilege. 2011 WL 890692, *17 (D.N.J. Mar. 14, 2011).

5

Defendants' talc liability and then potentially negotiate a settlement with talc claimants. Beasley Allen represented a member of the LTL TCC and Mr. Birchfield, as the Court is aware, is an attorney at Beasley Allen. Mr. Conlan and the TCC were not "aligned" as Defendants constantly suggest, but were discussing a restructuring model being offered by Mr. Conlan's company Legacy Liability Solutions to Defendants to address the resolution of talc claims in preparation for and in furtherance of mediation. Any communications or documents that passed from the LTL TCC (including communications from Beasley Allen or Mr. Birchfield or others acting in their capacities as representatives of one of the TCC members) to Mr. Conlan or KCIC regarding the potential resolution of talc claims are protected under New Jersey's broad mediation privilege.[3] Those communications were exchanged in the LTL bankruptcy for the purpose of developing a position in mediation, and relate to the assessment of the injuries caused by talcum powder products. They may reveal the confidential health information of both MDL plaintiffs and individuals who are not parties to this litigation.

Despite Defendants' insistence that the PSC produce a privilege log, such is not required. And the cases cited by Defendants are inapposite. In each, the court

---

[3] Defendants' contention that they have not been in mediation with talc claimants is false. There were robust mediations in both of the LTL bankruptcies and the Imerys bankruptcy. During the second LTL bankruptcy, the court-appointed mediators were actively engaging the parties for purposes of settlement and there was a mediation order in place.

6

ordered the <u>subpoenaed individual</u> claiming privilege to produce a privilege log. *See V. Mane Fils, S.A. v. Int'l Flavors & Fragrances, Inc.*, 2008 WL 3887621, at *4 (D.N.J. Aug. 20, 2008) (ordering subpoenaed non-party to produce privilege log); *Weinstein*, 2020 WL 1485960, at *7 (D.N.J. Mar. 26, 2020) (same); *see also Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989) (ruling on party's motion to compel and ordering subpoenaed party to produce privilege log); *Dawson*, 2011 WL 890692, *23 (same); *Sandoz, Inc. v. United Therapeutics Corp.*, 2021 WL 287872, at *3 (D.N.J. Jan. 28, 2021) (ordering subpoenaed party to produce privilege log).

Furthermore, communications or documents that passed between Mr. Conlan or his company Legacy and KCIC may also implicate the LTL TCC's confidential, privileged communications (assessments of the value of the cases, etc.). And of course because the PSC and LTL TCC do not have direct access to any direct written communications or document exchanges between Mr. Conlan or Legacy and KCIC, it is not possible for the PSC to provide a privilege log or any further specificity.

All of the subpoenaed information is protected by New Jersey's broad mediation privilege. Defendants seemingly argue that settlement communications are discoverable because Federal Rule of Evidence 408 is not offended. Not so. The confidentiality of settlement-related communications and documents prepared <u>in furtherance of mediation</u> do not depend on the applicability of Rule 408. New Jersey law recognizes that mediation-related communications are privileged and "shall not

7

be subject to discovery or admissible in evidence in a proceeding unless waived." N.J. Stat. Ann. 2A:23C–4. Courts in New Jersey have consistently upheld the mediation privilege absent a "knowing and express" waiver. *See CIBA Speciality Chems. Corp. v. Twp. of Denver*, 2021 WL 7100981, at *11 (N.J. App. Div. 2021), cert. denied, 246 N.J. 440 (2021); *Straus Assoc. II v. Berman*, 2017 WL 4781699, at *4 (N.J. App. Div. Oct. 24, 2017) ("Moreover, because mediation communications are privileged, and plaintiffs have not expressly waived such privilege, [defendant]'s argument that information could be provided through an evidentiary hearing is unavailing.").

The scope of the privilege is quite broad: a mediation communication includes "any statement, whether verbal or nonverbal . . . made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." *Napolitano v. Corbishley*, 2021 WL 3486901, at *2 (D.N.J. Aug. 9, 2021) (citing *Kernaham v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301 (2019)); *Sandoz, Inc.*, 2021 WL 5122069, at *2 (D.N.J. Nov. 2, 2021) (stating that documents prepared for or in furtherance of a mediation are privileged); *see also* N.J. R. Evid. 519. That is, communications made even for the purpose of "considering" mediation or "retaining" a mediator are protected. And here, the parties were actively discussing possible resolutions of the claims in the LTL bankruptcy proceeding with a mediation order and court-appointed mediators in

place. *See* **Exhibit A**, LTL Management LLC Bankruptcy Amended Order Appointing Co-Mediators and Establishing Mediation Protocol.

It is also well settled in New Jersey that "confidentiality is a fundamental ingredient of the settlement process." *Lehr v. Afflitto*, 382 N.J. Super. 376, 394 (App. Div. 2006) (citations omitted); *see also Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 2010 WL 2680562, at *2 (D.N.J. June 30, 2010) ("the confidentiality of a settlement agreement is important because it protects litigation strategy and promotes more settlements"). Courts in this district have emphasized the importance of confidentiality during court-sponsored settlement proceedings especially. *See In Re Paulsboro Derailment Cases*, 2015 WL 12835672, at *2 ("It is well recognized that confidentiality in court-sponsored settlement processes is essential in order to foster settlement and preserve judicial resources."). Based on this public policy, as Defendants' cited authority explains, parties seeking confidential settlement communications "must make a 'heightened, more particularized showing of relevance.'" *Berardino v. Prestige Mgmt. Servs., Inc.*, 2017 WL 9690965, at *5 (quoting *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009)).

In *Berardino v. Prestige Management Services, Inc.*, Berardino sued his former employer, Prestige, for breach of contract following his termination, and Prestige asserted a counter-claim against the former employee for fraud. 2017 WL

9690965, at *5 (D.N.J. Dec. 8, 2017). Berardino subpoenaed a non-party, also a former employee that previously sued Prestige for wrongful termination, to produce the confidential settlement agreement that resolved the non-party's case against Prestige. In denying Prestige's motion to quash, the court carefully analyzed the public policy favoring the confidentiality of settlements against Berardino's need for the agreement. The court concluded that Berardino established a particularized need strong enough to overcome Prestige's interest in maintaining confidentiality because Prestige relied in part on testimony and emails of the non-party to prove its fraud claim against the defendant. According to the court, the settlement agreement could contain obligations, rights, or benefits that factor into the non-party's bias in testifying for Prestige or against Berardino.

Unlike *Berardino*, Defendants have not shown any legitimate need, much less a "heightened, more particularized" need, to overcome the policy of protecting communications made by counsel representatives of TCC members in furtherance of mediation. Even if they could make this threshold showing, the severity of harm resulting from disclosure would still warrant quashing the subpoena. The subpoenaed information implicates protected communications related to the potential resolution of claims that were made outside the MDL in the bankruptcy proceeding.

## 2. Defendants failed to demonstrate a substantial basis that the subpoena is reasonably calculated to lead to admissible evidence in support of its pending motion for disqualification.

"Discovery in aid of a motion for disqualification is appropriate when 'the party seeking discovery is able to demonstrate in good faith, pursuant to Rule 26, a substantial basis that the discovery being sought appears reasonably calculated to lead to the discovery of admissible evidence in support of a pending or contemplated motion for disqualification.'" *Doe v. Cabrera*, 139 F. Supp. 3d 472, 478 (D.D.C. 2015) (quoting *Cobell v. Norton*, 237 F. Supp. 2d 71, 101 n.26 (D.D.C. 2003)).

Defendants have not and cannot make this showing. Their theory of relevance, "to determine the extent to which its confidences have been improperly shared," is premised entirely on conjecture. ECF No. 28920 at 9. Defendants have provided no evidence or basis for alleging that their confidences were disclosed or that discovering the confidential communications made in furtherance of mediation is reasonably calculated to lead to admissible evidence. Nor do they point to a fact, theory, strategy, or piece of confidential information that was purportedly shared. Instead, they conclusively assert that documents relating to KCIC's work for Legacy and Mr. Conlan, and its communications with Legacy, Mr. Conlan, Mr. Birchfield, and Beasley Allen, are "relevant to whether these proceedings can fairly proceed with J&J's confidential information in the hands of its litigation adversaries." *Id*.

11

The Court "is not obliged to find relevance of any <u>speculative defense</u>." *Gilmore v. Jones*, 2022 WL 267422, at *2 (D.N.J. Jan. 28, 2022) (emphasis supplied).

Importantly, Defendants' allegations have been affirmatively denied in sworn declarations submitted to this Court under penalty of perjury. *See* ECF No. 28826-2 Decl. of Andy Birchfield, Jr., ESQ. ("Mr. Conlan has never shared privileged or confidential information he obtained from any of his former clients (including J&J) with me or my firm Beasley Allen."); ECF No. 28826-4 at 2 Decl. of John J. Gasparovic ("At no time has James Conlan disclosed any of J&J's confidential or privileged information to me or Legacy. Legacy has never possessed and therefore never could disclose to Mr. Birchfield or any member of his firm, Beasley Allen, any confidential information belonging to J&J."); ECF No. 28826-3 Decl. of James F. Conlan ("I have never disclosed to Mr. Birchfield or any member of his firm, Beasley Allen, any confidential information belonging to J&J—nor that of any other client from my previous years of practice. Moreover, neither Legacy nor I have any J&J privileged or confidential information that is required for Legacy to consensually transact with J&J to solve J&J's current and future talc liability (with finality); the Legacy model applies similarly to all solvent mass tort defendants."). Defendants' own cases recognize that sworn affidavits and testimony generally provide a sufficient record for the court to rule. *See United States v. Philip Morris, Inc.*, 312 F. Supp. 2d 27, 34–35 (D.D.C. 2004) (explaining that "as long as the trial

12

court concludes that there will be an adequate record for appellate review, whether in the form of affidavits, documents, or submissions in camera, the court may in its discretion decide whether discovery is either warranted or inappropriate.").

Defendants misrepresent the holding of *Cobell v. Norton* on this point. The court did not find "that discovery is appropriate to gather 'admissible evidence in support of a pending or contemplated motion for disqualification' of presiding judge," as Defendants represent. ECF No. 28920 at 10 (citing *Cobell*, 237 F. Supp. 2d at 101). Rather, after analyzing other cases addressing discovery of judicial officers, the court concluded that "[e]ven if [it] were to agree that discovery of judicial officers might be warranted in an appropriate case, the present case [was] manifestly not one of them." *Cobell*, 237 F. Supp. 2d at 101–102. According to the court, permitting discovery on judicial officers is an "extreme step" it was not willing to take.

## CONCLUSION

The information Defendants seek pertaining to Mr. Conlan's proposed acquisition of Defendants' talc liabilities and the potential settlement of talc liabilities have no relevance in the MDL. Defendants cannot refute this. Instead, they make vague assertions that there <u>might</u> be evidence that Defendants' "confidences" were disclosed by Mr. Conlan and that this in turn is relevant to whether this MDL proceeding is "fair." This is speculative at best, specious at worst, and certainly not

sufficient to justify a fishing expedition into confidential communications exchanged <u>outside the MDL</u> in furtherance of mediation.

For these reasons, the PSC respectfully requests that this Court quash Defendants' subpoena, or in the alternative, issue a protective order relieving KCIC of any obligation to comply with the subpoena.

Dated: January 29, 2024	Respectfully submitted,

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003

Case 3:16-md-02738-MAS-RLS   Document 28953   Filed 01/29/24   Page 15 of 15 PageID: 172252

clpacitella@cprlaw.com<br>
***Plaintiffs' Liaison Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*/s/ Michelle A. Parfitt*
Michelle Parfitt

15