# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16–2738 (MAS) (RLS)<br><br>Oral Argument Requested |

## DEFENDANT JOHNSON & JOHNSON'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENA DIRECTED AT NORTHWELL HEALTH, INC.

**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Tel.: (973) 549-7000

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Tel.: (212) 735-3000

**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, NY 10036
Tel.:(212) 556-2100

*Attorneys for Defendant Johnson & Johnson*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii
INTRODUCTION .....................................................................................................1
ARGUMENT.............................................................................................................3
    I.    The PSC's Motion Fails Because Its Own Interests Are Not Jeopardized. ...........................................................................................3
    II.   The Information Sought Is Relevant. ..................................................6
    III.  No Privacy Interest Is At Stake. ..........................................................7
    IV.  The Subpoena Is Not Unduly Burdensome. .....................................11
CONCLUSION .......................................................................................................11

## TABLE OF AUTHORITIES

**Case(s)**     **Page(s)**

*Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*,
2014 WL 7073466 (D.N.J. Dec. 15, 2014) ...................................................... 5

*Arkliss v. Nissan Extended Servs. N. Am., Inc.*,
2018 WL 10502135 (D.N.J. Aug. 16, 2018) .................................................... 4

*Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*,
2013 WL 12170639 (D.N.J. Apr. 3, 2013) ..................................................... 10

*Contour Data Sols. LLC v. Gridforce Energy Mgmt., LLC*,
2022 WL 3907530 (E.D. Pa. July 25, 2022) .................................................... 5

*Doe v. Am. Red Cross Blood Servs., S.C. Region*,
125 F.R.D. 646 (D.S.C. 1989) ....................................................................... 10

*Farnsworth v. Procter & Gamble Co.*,
758 F.2d 1545 (11th Cir. 1985) .................................................................... 10

*Government Employees Insurance Co v. Koppel*
2023 WL 5526809, at *1 (D.N.J. Aug. 28, 2023) ............................................ 4

*Lampshire v. Procter & Gamble Co.*,
94 F.R.D. 58 (N.D. Ga. 1982) ....................................................................... 10

*Lilac Development Group v. Hess Corporation*
2016 WL 3457012, at *3 (D.N.J. June 20, 2016) ........................................ 4, 5

*Rudelli v. Eli Lilly & Co.*,
2020 WL 13694732 (D.N.J. Nov. 13, 2020) ................................................... 5

**Other Authorities**

45 C.F.R. § 164.512(e)(1)(i) .................................................................................. 9

Fed. R. Evid. 401 ................................................................................................... 6

Without first seeking permission as required by Local Rule 37.1(b)(3), the Plaintiffs' Steering Committee ("PSC") filed a reply brief that raised a number of new issues for the first time, necessitating a response. Defendant Johnson & Johnson ("J&J") therefore submits this sur-reply in opposition to the PSC's Motion For Protective Order Regarding Subpoena Directed At Northwell Health, Inc. ("Northwell").

## INTRODUCTION

In its Reply, the PSC mocks J&J for "excruciatingly" describing the underpinnings of Dr. Moline's Articles and for attaching "more than 1,000 pages of exhibits" to its Opposition brief. Reply 1. The PSC must resort to criticizing the *volume* of the evidence because it cannot and does not dispute what the evidence shows: that J&J has very good reason to believe that the Articles are based on a false premise. Similarly, nowhere in its blustering Reply does the PSC invoke the usual arguments that J&J's views about the Articles' falsity are "speculation" or that J&J is simply on a "fishing expedition." Perhaps that is because it can't. The Articles are not legitimate science; they are a litigation tactic.

In reality, the PSC wants to be able to exploit this same litigation tactic for itself. Not surprisingly, the PSC steadfastly has refused to commit that it will not use the Articles during trial. Instead, it provides self-serving assurances that it is "unlikely" that the Articles will come up during future trials. They don't say that

1

they will not rely on any papers that review or touch on mesothelioma—because in fact their expert reliance lists are peppered with such papers. And, most importantly here, the PSC has put forth multiple experts who rely on the Moline Articles. On that basis alone J&J should be permitted to arm itself with the truth about the Articles so it can adequately cross examine these witnesses and allow a jury to understand the Articles—and any opinions premised on them—for what they really are. The need for discovery into the likely false underpinnings of the Articles is only exacerbated when the PSC continues to play coy about its intended use of the Articles.

In order to distract from this obvious conclusion, the PSC focuses its Reply on the contention that "defendants in mesothelioma cases throughout the country have repeatedly attempted to obtain the same information and failed." Reply 2. But it cites almost exclusively to rulings on the scope of permissible cross-examination, not discovery requests—and in cases where J&J was not even a party.

As to the actual discovery order that the PSC focuses on (from the *Gref* case), the PSC notably does not describe what in fact occurred in the matter. It is simply not true that Northwell "already fought and won this same battle" in *Gref*. *See* Reply 10. To the contrary, the plaintiff in *Gref* mooted the issue by committing not to rely on the Articles, something the PSC refuses to do here. That was the *sole basis* for the court's ruling.

2

Similarly, while attempting to claim J&J's own expert Dr. Diette supports the PSC's position, the PSC ignores that Dr. Diette has expressly testified that he ***does not believe*** the identities of the individuals that form the basis of the Articles are confidential since they were already made public: "[M]y opinion as a researcher [is] that there is no longer any confidentiality to protect, at least for the topic of what's in that paper." Ex. 35, Diette *Pichierri* Dep. 63:12-70:5.

Finally, no privacy interest or burden is at stake. The PSC never disputes that all the individuals in the Articles already made their mesothelioma diagnoses and related medical histories public. And in its Reply, the PSC does not even attempt to support its argument that producing two short documents would be burdensome.

This Court should deny the PSC's motion.

## ARGUMENT

### I. The PSC's Motion Fails Because Its Own Interests Are Not Jeopardized.

The PSC does not contend that any of its own interests are implicated by the subpoena. Instead, it makes a purely legal argument that it can move for a protective order even if has absolutely no interest in the outcome.

The PSC conflates two separate requirements. Just because a party has Rule 26(c) standing (because Rule 26(c) expressly mentions a "party" filing a motion, unlike Rule 45), that does not relieve the party from the separate requirement that it must show that its own interests are jeopardized. The PSC responds to this legal

3

truism by citing to cases that stand for the simple proposition that a party has standing under Rule 26(c) to contest relevance. But, again, such cases say nothing about the separate requirement that the moving party's own interests must also be jeopardized.

J&J provided numerous examples of cases from across the country—in addition to *Wright & Miller*—stating that a party must, at minimum, show it has *some* interest that would be jeopardized by the disclosure of information at issue in order to move for a protective order. By contrast, the PSC cites to cases where the court never addressed the issue one way or another, and thus its cases have no bearing on the question. *See Arkliss v. Nissan Extended Servs. N. Am., Inc.*, 2018 WL 10502135, at *4 (D.N.J. Aug. 16, 2018) (stating cases are "not persuasive" that "did not address the argument" at issue). The PSC does not cite a single case granting a protective order and expressly holding that the party need not have shown that its own interest would be jeopardized in some way by the disclosure.

Indeed, the issue of whose interests were at stake may never have arisen in those cases because the moving parties' interests *were* at stake. For example, in *Government Employees Insurance Co v. Koppel,* the "Koppel Defendants" sought to block a subpoena for "all criminal and investigative records from the OIFP's Medicaid Fraud Control Unit **concerning the Koppel Defendants**." 2023 WL 5526809, at *1 (D.N.J. Aug. 28, 2023) (emphasis added). In *Lilac Development*

4

*Group v. Hess Corporation*, the defendant Hess Corporation similarly "stress[ed] the sensitive nature of the information *Hess* was providing" to the third party that was sought by the third-party subpoena. 2016 WL 3457012, at *3 (D.N.J. June 20, 2016) (emphasis added).

In fact, the PSC largely relies on cases where a motion for a protective order was *denied*. *See Koppel*, 2023 WL 5526809, at *4 ("[T]he Koppel Defendants' alternative request for a protective order is DENIED."); *Lilac Dev. Grp.*, 2016 WL 3457012, at *3 ("Defendant Hess Corporation and Speedway, LLC's motion for a protective order is DENIED."); *Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*, 2014 WL 7073466, at *6 (D.N.J. Dec. 15, 2014) ("Defendant's motion for a protective order and to quash the subpoenas is hereby DENIED."); *Rudelli v. Eli Lilly & Co.*, 2020 WL 13694732, at *3 (D.N.J. Nov. 13, 2020) ("To the extent Defendant intended to move for a protective order, such request is denied."); *Contour Data Sols. LLC v. Gridforce Energy Mgmt., LLC*, 2022 WL 3907530, at *3 (E.D. Pa. July 25, 2022) ("Plaintiff's Motion is DENIED.").

Finally, even if the PSC was correct that it may assert *lack of relevance* without its own interest being jeopardized, that does not give the PSC the ability to raise the burden or privacy interests of others—two issues that made up the bulk of the PSC's initial motion. The PSC's own case makes that clear. *See Lilac Dev. Grp.*, 2016 WL 3457012, at *2 ("But Defendants do not have standing to move for a

5

protective order for a third-party based on the burden that subpoena will place on the third-party.").

This Court should deny the PSC's motion for a protective order where it has not claimed that it has any interest in the outcome.

**II.    The Information Sought Is Relevant.**

While it attempts to shield itself from its lack of any interest by pointing to relevance, ironically, the PSC barely contends that the information at issue is not relevant. It does not dispute that the standard for relevance in the context of discovery is *even more liberal* than Rule 401 in the context of a trial. Nor does the PSC dispute that Dr. Moline's Articles could be used to support its contention that J&J's talc products were contaminated with asbestos.

Lastly, the PSC has not committed that it will not use or refer to Dr. Moline's Articles during trial. Rather, the PSC's response on this question amounts to: *Trust us, the Articles won't come up.* The PSC's refusal to make a commitment to refrain from discussing the Articles demonstrates both the Articles' relevance and should be dispositive. If the Articles may arise during trial, J&J has the right to the underlying information to be able to defend itself and demonstrate that those Articles are based on a false premise.

6

### III. No Privacy Interest Is At Stake.

The PSC similarly offers little-to-no support for the idea that any privacy interests are in play. The PSC does not contend that any law prohibits disclosure of the two documents at issue or the information contained therein. And critically, the PSC does not respond at all to the point that the individuals in the Articles already made public that they developed mesothelioma (and their related medical histories) since they were all plaintiffs in litigation.

Take for example the plaintiffs discussed in J&J's opposition brief that appear to match individuals in the Articles. Each filed a public complaint making their mesothelioma diagnosis public:

- **Kohr Complaint**
  "These exposures to asbestos proximately caused HELENE KOHR to develop mesothelioma."

- **Lanzo Complaint**
  "Plaintiff, Stephen Lanzo, III, contracted mesothelioma."

- **Jackson Complaint**
  "Plaintiff Doris Jackson was diagnosed with mesothelioma in November 2014."

- **Dalis Complaint**
  "Plaintiff Valerie Jo Dalis contracted mesothelioma."

- **Rimondi Complaint**
  "RICARDO RIMONDI was diagnosed with malignant mesothelioma on or about 27 September 2016."

Ex. 36, Kohr Compl. ¶ 5; Ex. 37, Lanzo Compl. ¶ 3. Ex. 38, Jackson Compl. ¶ 3; Ex. 39, Dalis Compl. ¶ 2; Ex. 40, Rimondi Compl. ¶ 1.

7

Rather than taking the lack of privacy interests head on, the PSC cites a number of irrelevant rulings and depositions.

*Gref*. The PSC first points to the *Gref* case where J&J was not even a party. But the PSC's contention that "Northwell already fought and won this same battle" in *Gref* is simply not true. *See* Reply 10.

In that matter, the plaintiff withdrew all reliance on Dr. Moline's Articles—something the PSC has refused to do here. The *Gref* plaintiff wrote: "Plaintiff withdraws his experts' reliance on the Moline Article in this matter." Ex. 41, *Gref* Letter Brief (*Gref* ECF 337). The plaintiff further contended that "[s]ince Plaintiff is withdrawing reliance on the article, there can be no argument that the identity of the subjects of the Moline Article are relevant in Mr. Gref's lawsuit." *Id.*

The *Gref* order the PSC attached gave no rationale but instead referred to the reasoning given at a May 19, 2023 hearing, attaching no transcripts. *See* Reply at 10; Reply Ex. C. The bench ruling at the hearing makes clear that the magistrate judge relied exclusively on the fact that the plaintiff withdrew all reliance on the 2020 Article for reaching her conclusion: "I'm not going to give you a written decision because it's pretty clear, given [plaintiff's counsel] Mr. Kramer's statements on the record, that they're not at all using or relying on Dr. Moline's 2020 article, that there just isn't a basis to conclude that the article is relevant." Ex. 42, *Gref* May 19, 2023 Hr'g Tr. 12:14-24.

8

A case where the plaintiff has withdrawn all reliance on Dr. Moline's Articles says nothing about J&J's arguments here, which continue to go unrebutted.[1]

***Lashley* Trial Ruling.** The PSC also provides lengthy quotations of a mid-trial ruling in *Lashley* regarding the appropriate scope of cross examination of Dr. Moline. Again, such a ruling has no bearing on J&J's entitlement to discovery here. That case did not even involve J&J and the PSC does not explain what arguments were or were not presented to the judge. What's more, and critically, that trial occurred in 2020 shortly after the Dr. Moline's original Article first became available—well before the *Bell* ruling and other new information came to light revealing that the premise of the 2020 Article likely is not true.

Plaintiffs' reference to other mid-trial rulings regarding the scope of cross examination of Dr. Moline are similarly not relevant to the discovery question at issue here. *See* Reply at 11. And even if these sorts of rulings were relevant, courts have prohibited plaintiffs from relying on Dr. Moline's Articles because defendants "have been obstructed from meaningfully cross-examining Dr. Moline and obtaining

---

[1] The PSC also quotes Northwell's arguments regarding HIPAA from *Gref,* perhaps in an attempt to avoid the fact it never actually addressed HIPAA in its motion and also in order to raise the specter of HIPAA without developing any genuine argument on the topic. Again, the individuals referred to in the Articles are not Dr. Moline or Northwell's *patients*, which is why the plaintiffs in *Bell* (where a highly redacted version of one of the two documents sought was produced) conceded the information was not HIPAA-protected. In any event, even material that is actually covered by HIPAA may be disclosed "[i]n response to an order of a court." 45 C.F.R. § 164.512(e)(1)(i).

9

discovery that might challenging the finding and conclusions of the Article." Ex. 43, *Smith* Order. Another court adopting that same ruling stated that "there is a serious question as to whether the studies are based upon reliable and rigorous scientific methods." Ex. 44, *Thomas* Order.

**New Case Law.** In two perfunctory parentheticals, the PSC cites new case law for the first time in its Reply. *See* Reply 9. These out-of-circuit cases from over 35 years ago have no bearing on the issue this Court confronts.

In *Farnsworth*, the information sought was "of a highly personal nature" including "sexual practices, contraceptive methods, pregnancy histories, menstrual activity, tampon usage, and douching habits." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1546 (11th Cir. 1985). The study participants were not all plaintiffs who already publicly revealed their medical condition—as with the Articles here. And there was no evidence in that case that the underlying facts reported in the study were simply false, which is precisely the situation here. *Lampshire* was an earlier ruling involving the same study and suffers from the same flaws. *Lampshire v. Procter & Gamble Co.*, 94 F.R.D. 58, 60 (N.D. Ga. 1982).[2]

---

[2] The cases the PSC cites in a footnote are even less relevant. Reply 9 n.13. *Doe* did not involve a study at all, but a request to identify "the HIV positive donor whose blood was transfused into Jane Doe during an operation on January 9, 1985." *Doe v. Am. Red Cross Blood Servs., S.C. Region*, 125 F.R.D. 646, 647 (D.S.C. 1989). In *Braintree*, the relevant documents *were produced*, and the only question is whether information would be filed under seal—a completely different inquiry. *Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*, 2013 WL 12170639, at *1 (D.N.J. Apr. 3, 2013).

10

***Dr. Diette Testimony***. Finally, the PSC misleadingly quotes an excerpt of a deposition transcript of Dr. Diette without providing his full views on the topic. Dr. Diette expressly testified that he ***does not believe*** the subjects of Dr. Moline's article have confidentiality: "[M]y opinion as a researcher [is] that there is no longer any confidentiality to protect, at least for the topic of what's in that paper." Ex. 35, Diette *Pichierri* Dep. 63:12-70:5.

## IV.   The Subpoena Is Not Unduly Burdensome.

While the PSC originally argued that the subpoena would represent an undue burden on Northwell, it does not contest in its Reply that seeking production of only two documents is a burden at all. For this reason as well, which the PSC now appears to concede, its motion should be denied.

## CONCLUSION

The information sought by the subpoena is unquestionably relevant. No privacy interests are implicated. All the plaintiffs in the Articles voluntarily made their mesotheliomas public. And producing two documents is no burden at all. A protective order is therefore not warranted.

The real issue on this motion is that disclosure of the two documents threatens to expose the falsity of the Articles relied upon by the PSC's experts, and the sort of litigation tactics at play across these cases. That is why the PSC is fighting a battle to block this basic discovery.

11

This Court should deny Plaintiffs' Motion for a Protective Order.

Dated: January 31, 2024                    Respectfully submitted,

/s/ Susan Sharko
Susan M. Sharko
**FAEGRE DRINKER BIDDLE & REATH LLP**

Allison M. Brown
Jessica Davidson
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

Kristen R. Fournier
**KING & SPALDING LLP**

*Attorneys for Defendant*