# Exhibit 42

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN JOSEPH GREF,                    : Docket #20-cv-05589

                    Plaintiff,        :

     -against-                        :

AMERICAN INTERNATIONAL
INDUSTRIES, et al,                    : New York, New York
                                        May 19, 2023

                    Defendants.

-------------------------------:

PROCEEDINGS BEFORE
THE HONORABLE VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:        SIMMONS HANLY CONROY
                      BY:  JAMES M. KRAMER, ESQ.
                      112 Madison Avenue, 7th Floor
                      New York, New York 10016


For Defendant:        K&L Gates, LLP
                      BY:  NATHAN A. HUFF, ESQ.
                      430 Davis Drive, Suite 400
                      Morrisville, North Carolina 27560

APPEARANCES (CONTINUED):

For Defendant:        Lathrop GPM, LLP
                      BY:  NEIL SCHONERT, ESQ.
                           KURT W. GREVE, ESQ.
                      7701 Forsyth Boulevard
                      Pierre Laclede Center
                      Suite 500
                      Clayton, Missouri 63105


                      HAWKINS PARNELL YOUNG, LLP
                      BY:  ALFRED J. SARGENTE, ESQ.
                      600 Lexington Avenue, 8th Floor
                      New York, New York 10022


Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

1          THE COURT:  Hi, everyone.  This is Brian

2    Joseph Gref v. American International Industries,

3    20-cv-5589.  Just because of the number of people on

4    the call, I'm just going to limit.  If counsel who,

5    I guess, intend to speak can introduce themselves.

6    So I'm going to start off with counsel for the

7    plaintiffs.

8          I understand Mr. Kramer is on the line; is

9    that correct?

10         MR. KRAMER:  That is correct, Your Honor.

11   Good afternoon.

12         THE COURT:  Good afternoon.  And then for

13   Northwell Health, I understand Mr. Nathan Huff is on

14   the line.

15         MR. HUFF:  Good afternoon, Your Honor.

16   That's correct.

17         THE COURT:  Okay.  And then for American

18   International Industries, Mr. Sargente, will you be

19   speaking or is there someone else that should be

20   identified?

21         MR. SARGENTE:  I believe one of the other

22   attorneys for AII will be primarily the speaker.

23         THE COURT:  And could either or both of

24   those attorneys just identify yourself, please.

25         MR. SCHONERT:  Hi, Your Honor.  This is

1    Neil Schonert with Lathrop, and Kurt Greve is on the

2    line as well.

3            THE COURT:  Okay.  Based on our prior

4    conferences, I think those were generally the three

5    entities that engaged in the discussion.  If there's

6    anyone else who at any other point wants to chime

7    in, you're more than welcome to do so.  I just ask

8    that you identify, make an appearance right now.  So

9    if there's anyone else who wants to make an

10   appearance.

11           MR. MARINO:  Good afternoon, Your Honor.

12   Kevin Marino, Marino, Tortorella & Boyle, for

13   Dr. Moline.  I don't know if I'll be called on to

14   speak, but I wanted you to know I'm on the line.

15           THE COURT:  Oh, yes, I'm sorry, Mr. Marino,

16   that I missed you, but I do recall from the prior

17   conferences.  Thank you.

18           Okay.  So this is really intended to be a

19   very short conference.  I think the reason I asked

20   for the parties to get on this, I just wanted to get

21   on the record and just really get crystal clear what

22   plaintiffs mean when they say in their letter from

23   May 1st at ECF 337 that they're withdrawing

24   Dr. Moline's reliance on the Moline article.

25           And so, Mr. Kramer, if you just want to

1    explain what you mean when you say that, I'd like to
2    just get that on the record.
3         MR. KRAMER:  Certainly, Your Honor.  And I
4    think to get this as crystal clear as I possibly
5    can, and keeping in mind Your Honor's willingness to
6    keep this brief, the record and Your Honor may
7    benefit from just a history of how we got here.  And
8    just to remind the Court of who this case is about,
9    I represent Brian Gref, who's currently 40 years
10   old.  He was diagnosed with a fatal cancer,
11   mesothelioma, back in November of 2019.
12        We filed this case in a New York City
13   asbestos litigation in July of 2020.  It was removed
14   by Johnson & Johnson to the Southern District on
15   July 20th, 2020, after which all discovery took
16   place.  And as Your Honor is acutely aware, we are
17   now in our sixth month of litigating the issue of
18   the subpoena to reveal the identity of the
19   confidential human subjects at the heart of
20   Dr. Moline's 2020 article.
21        As Your Honor is also aware, back in
22   November, before this issue came to light, I and
23   others from my office had met and conferred with
24   defendants in this case to discuss issues
25   surrounding any possible continuation of

1    Dr. Moline's deposition, which had already gone

2    seven and a half hours as of last fall.  At that

3    point, we had come to an understanding that any

4    continuation would be on her dose calculations,

5    which she began to testify about in her deposition.

6            It was only after that meet and confer

7    where we were surprised with AII's application to

8    reveal the identity of the article, which is not

9    something that was met and conferred about, not

10   something that was discussed, and yet became now the

11   central issue of six months of discovery litigation.

12           Now, we made the determination after we

13   appeared before Your Honor to discuss this issue

14   further a month or so ago that our duty to our

15   client, who is dying from a fatal cancer, needs to

16   go forward.  We, therefore, on May 3rd, wrote to

17   Your Honor in our letter stating that because this

18   particular article is merely one of many, many

19   articles in the medical and scientific literature

20   connecting not only asbestos to this cancer, but low

21   levels of asbestos to the cancer, it is among

22   articles discussing fiber levels released by

23   asbestos in cosmetic talc in which Dr. Moline had no

24   hand in writing or researching.

25           And with that in mind and considering the

1    statement made on November 2020 made by AII in

2    Docket Number 263, its initial motion to compel on

3    page five, wherein they state that Dr. Moline is

4    entitled to keep this information confidential

5    should she decide not to testify about the article

6    or the cases therein upon direct examination, we

7    decided to take AII at its word, and we are

8    withdrawing Dr. Moline's reliance on this particular

9    article.  We are withdrawing the minimal reliance,

10    as stated in our other experts' reports on this

11    particular article.

12        And we do not intend to address them on

13    direct examination with any of our experts.  We do

14    not intend to have Dr. Moline discuss the cases on

15    direct examination.  Which thereby, according to, I

16    think, AII's own reasoning, moots the entire issue.

17    We can move forward with discovery and get a trial

18    date for this living plaintiff.

19        So that's where we are, Your Honor.  And,

20    as you may have seen, we filed last night a motion

21    for discovery sanctions against AII because -- and

22    we were not parties to the *Bell* litigation.  Your

23    Honor is aware that this entire issue stems from a

24    false premise based on a false narrative that there

25    is any connection between a so-called allegation of

1    asbestos at Ms. Bell's workplace and her

2    mesothelioma, which has led us down this wild goose

3    chase for six months.

4         It has now been uncovered through discovery

5    in other cases that the entire premise of that has

6    been false.  And there's been an attempt to persuade

7    this Court to unravel and reveal confidential

8    information based on nothing.  AII's own experts

9    agree, after reviewing the same exact information as

10   Dr. Moline did in the *Bell* case, that there was

11   nothing to connect Ms. Bell to any occupational

12   exposure there, therefore no controversy --

13        MR. GREVE:  Excuse me, Mr. Kramer --

14        MR. KRAMER:  I'm still speaking.

15        MR. GREVE:  Your Honor, would you like me

16   to object now before he is done?

17        MR. KRAMER:  No, no, no.

18        MR. GREVE:  I mean, I'm just -- we're

19   talking now about a motion that's not properly

20   before the Court for this hearing.  It was filed

21   last night.

22        MR. KRAMER:  No, I think -- I'm still

23   talking.

24        MR. GREVE:  I think Mr. Kramer understands

25   that the level of misrepresentations here are quite

```
 1   extreme.
 2           MR. KRAMER:  Well, we look forward to the
 3   full argument on that.  I only raise it now, Your
 4   Honor, because --
 5           MR. GREVE:  To summarize --
 6           MR. KRAMER:  Wait a minute, wait a minute.
 7   Your Honor, Your Honor --
 8           MR. HUFF:  I don't understand why he's
 9   still speaking over Mr. Kramer.  I don't understand
10   it.
11           THE COURT:  So I'm just going to chime in a
12   minute.  To just interrupt, I really don't want to
13   spend any more of your time or my time on this.  And
14   the reason for the conference was really to get on
15   the record exactly what Mr. Kramer meant by he was
16   going to withdraw his reliance.
17           Mr. Kramer, I just want to confirm, because
18   I'm familiar with Dr. Moline's expert report and I
19   know she cites to the article.  Despite the
20   citation, there won't be any direct -- she cites to
21   it, I believe, in a footnote.
22           But despite the citation, you don't intend
23   to have her discuss it in any way; is that correct?
24           MR. KRAMER:  That is correct.  And we have
25   offered -- I'm sorry, Your Honor.
```

```
 1              THE COURT:  No, no, go ahead.
 2              MR. KRAMER:  I was saying, and we're
 3    offering her to get to the heart -- to get back to
 4    what was initially the request to continue her
 5    deposition, we feel that it's fair to offer three
 6    hours to further explore the dose calculations that
 7    she discussed.  And, as we also mentioned, because
 8    now we are six months beyond where we had expected
 9    to be in this case, she has authored other articles
10    or one other article in particular.  We feel that is
11    fair game.  We would amend her expert disclosure to
12    include reliance on that as well.
13              THE COURT:  Reliance on a different
14    article?
15              MR. KRAMER:  Correct.
16              THE COURT:  Okay.  And then you had also
17    briefly stated that you had other experts that also
18    relied on this 2020 Dr. Moline article; is that
19    true?
20              MR. KRAMER:  That is true.
21    Dr. Finkelstein --
22              THE COURT:  Then on the -- no, go ahead.
23    Go ahead.
24              MR. KRAMER:  Dr. Finkelstein references the
25    article very minimally in his report.  He has
```

1    already been deposed in this case.  He will not rely
2    upon the article on direct.  And Dr. Zhang, who is
3    our pathologist, who really will only be talking
4    about diagnosis in this case, will not be relying
5    upon it.  We were not going to ask him about it on
6    direct, either.
7         THE COURT:  Okay.  So just to keep this
8    moving along, everyone's aware, you know, the party
9    issuing the subpoena has to demonstrate that there's
10   the information -- on a motion to quash, I'm sorry,
11   the defendants bear the burden of demonstrating that
12   the information sought is relevant and material to
13   the claims of the case.
14        I'm not going to give you a written
15   decision because it's pretty clear, given
16   Mr. Kramer's statements on the record, that they're
17   not at all using or relying on Dr. Moline's 2020
18   article, that there just isn't a basis to conclude
19   that the article is relevant.  And for the reasons
20   we've discussed at length at two conferences, the
21   burden on Northwell Health here, there's no way
22   defendants can overcome the showing of burden if
23   there's no relevance hook.  And if Dr. Moline is not
24   relying on her article, there is no relevance hook.
25        MR. GREVE:  Your Honor, counsel for AII.

1          May I be heard on that?

2          THE COURT:  Sure.

3          Is this Mr. Greve?

4          MR. GREVE:  Yes, Your Honor.  And let me

5     make sure I understand -- if I understood the Court

6     correctly.

7          Is the Court of the opinion at this moment

8     in time that the issue is moot because Mr. Kramer

9     has expressed his disclaimer of the Moline 2020

10    article in any form or fashion?  Did I understand

11    that correctly?

12         THE COURT:  Yeah.  I mean, it's more than

13    just mootness; right?  Under the analysis, we look

14    at the burden on Northwell Health and the relevancy

15    of the information.  You know, at one point

16    previously, I think from the prior two conferences,

17    I might have alluded to the belief that I thought it

18    was relevant because this was -- you know,

19    Dr. Moline is the causation expert, and this was one

20    of the articles she was relying on to show the

21    causal link between the mesothelioma and the

22    exposure to cosmetic talcum powder.

23         If she's no longer relying on this article

24    in any way, which, from Mr. Kramer's assertions,

25    that's what it sounds like or that's what it's being

1  represented to be on the record, then there's no
2  longer a basis for defendants to claim the
3  information is relevant.  And we're not just talking
4  about any information.  Again, we're talking about
5  HIPAA-protected information, information that's
6  protected under the common rule.
7       And for the many reasons Northwell Health
8  has outlined in their letter, it would be burden --
9  unduly burdensome for them to produce that
10  information.  Now, if the information had been
11  relevant, I think there's arguments to be made that
12  the calculation is different.  But right now, if
13  they're not relying on the article in any way,
14  there's no relevancy hook.
15       MR. GREVE:  And, Your Honor, if I can
16  address them not relying on it in any way, again,
17  like we've seen before, they say this, but then what
18  does that really mean?  The Moline 2023 article, the
19  new article that they would like to supplement and
20  make part of the Gref case, incorporates by
21  reference the Moline 2020 article.  It is a
22  continuation of that work.
23       So the representation that there's nothing
24  in any way that would connect what's going to happen
25  in the future to the 2020 article that was subject

1    to the subpoena is absolutely false.  It will be

2    part of it.  And, Your Honor, when plaintiffs make

3    the statement that, oh, we won't use this on direct

4    or we won't use this affirmatively, well, they can

5    still talk.

6           The ultimate opinion that Dr. Moline has

7    that she wants to express is that the cosmetic talc

8    is a cause of pleural or peritoneal mesothelioma.

9    That's the ultimate opinion.  And she can mention

10   this without even mentioning the article name.  But

11   you can't unring this bell.  This is the foundation

12   of her opinion, and it starts with Moline 2020,

13   which is then incorporated into the new article,

14   Moline 2023.

15          And while plaintiffs have made some

16   affirmatives that there may be 500-some-odd

17   referenced articles, as you illustrate or as you

18   asked Mr. Kramer or one of the attorneys on the

19   other side in the last hearing, it ultimately boils

20   down to Emery and Moline for the proposition of any

21   type of cosmetic talc being associated with

22   mesothelioma.  And they need this article.  They

23   need this bridge because they don't have any

24   large-scale, peer-reviewed scientific

25   epidemiological studies to support their position.

1          In fact, that information proves the

2     opposite.  Miners and millers who milled this stuff

3     and mined this stuff didn't get mesothelioma.  And

4     that's why this article was created to begin with.

5     And so if we were just looking at the cross

6     examination aspect of this, it's not as simple to

7     say, oh, well, she's not going to rely on it.  It's

8     part of her foundational opinion.  It's actually

9     referenced in this new article.

10         And then when we cross over to the next

11    level of when we challenge this expert in a Daubert

12    process, the underpinning the foundation of her

13    initial opinion is always going to be at issue here.

14    And the fact that one of Moline's 33 has been

15    established to be suspect, you know, for lack of a

16    better word, but definitely there is significant

17    evidence of alternate exposure that should have been

18    considered by Dr. Moline.  Okay?

19         At the very least, she should have

20    recognized it.  She should have considered it.  And

21    so that goes to her methodology.  And that was

22    something that was talked about extensively in the

23    *Bell* opinion, that when we were dealing with the

24    expert challenge here, her foundation, how she came

25    to this conclusion, her methodology, all of this is

1   going to be significant.  This goes to Dr. Moline's

2   bias, and it goes to her credibility.

3          And their withdrawal of the "we won't

4   mention this on direct" is illusory.  This topic is

5   going to come up.  And despite Mr. Kramer's

6   representations that they weren't going to use this

7   in any form or fashion, it is being used in a form

8   and fashion.  It's directly referenced in the new

9   article that he wants to insert into this exact

10  matter at this late point in time, an article that

11  has the exact same problems as Moline 2020.

12         We haven't asked any of their experts about

13  Moline 2023 and that article.  We haven't talked to

14  anyone about that.  And the discovery that will

15  ensue and will result from us trying to understand

16  the provenance, the history, the foundation for the

17  Moline 2023 hearing, that's going to take an

18  extensive amount of time.

19         And so as plaintiffs are just saying,

20  "Judge, we just want to substitute in this other

21  article; it's really no big deal," it's a huge deal.

22  And the substitution, as I mentioned before, even

23  references the 2021 that they're trying to disclaim

24  reliance on.  It makes no sense.  And it's just not

25  something that will be manageable at trial because

1    there will always be a way for them to get this

2    information in.  And at the same time, they will

3    have run out the clock in terms of any discovery

4    that can be done on this that would reveal the true

5    nature and potential bias of the foundation of

6    these, quote/unquote, test subjects.

7            THE COURT:  Either Mr. Marino or

8    Mr. Kramer, this 2023 article, is it a different

9    scientific study with different individuals?

10           MR. KRAMER:  It has different individuals

11   incorporated within it.

12           Just to frame this correctly, Your Honor --

13   this is Mr. Kramer.  The original article dealt with

14   33 patients of which none of them had any known

15   exposures to asbestos.  The new article actually

16   addresses the very issue that defendants claim they

17   were so interested in because it identifies

18   individuals with both cosmetic talc exposure and

19   other exposures to asbestos-containing products and

20   comes to the same conclusion.

21           So I'm not sure exactly how this would blow

22   open all sorts of credibility issues and issues of

23   discovery.  But, briefly, Your Honor, just to reset

24   the table here of what we're actually here to

25   discuss, we're not here to discuss Daubert.  We're

1    not here to discuss motions for summary judgment.

2    And, respectfully, Your Honor, you're not here to

3    discuss what may happen at the trial after motions

4    in limine or when the trial judge decides how

5    information can be used.

6            We're here on a discovery issue and we've

7    now, I think as Your Honor has already alluded to,

8    given adequate representation such that the

9    relevancy issue is now completely obliterated.

10   Should AII or others wish to raise something about

11   this issue in a Daubert challenge, they're more than

12   free to.  In fact, they could use this affirmation

13   however they want in a Daubert motion.  So they can

14   still do whatever they plan to do regarding

15   foundation.

16           That has nothing to do with whether or not

17   this article should now still be used despite their

18   representations that, even if we withdrew it, that

19   would nullify the issue.  As to credibility, again,

20   there is a disclaimer in every single article on

21   this subject where Dr. Moline tells the world, the

22   publishing world, exactly where she got the

23   information.  So credibility is something that can

24   still be explored on the stand.

25           And as to whether this topic is going to

1    come up, well, it's not going to be coming up

2    through us.  If they choose to somehow insert this,

3    then -- you know, and the door is open, that's on

4    them.  But we have made our affirmation.  We have

5    made our representation to Your Honor.  It's now on

6    the record, and we intend to obviously abide by it

7    in any directive that either Your Honor or the trial

8    judge may give.

9         THE COURT:  Okay.  So I think, Mr. Kramer,

10    I agree, the reliability of Dr. Moline's methodology

11    or her credibility in terms of any scientific method

12    she used for this 2020 article is certainly

13    something that is explored at a Daubert motion or

14    hearing, not here.

15         So, again, for the reasons I've already

16    indicated, I'm going to grant Northwell Health's

17    motion to quash or to modify the subpoenas because I

18    believe they were willing to comply with some

19    aspects of it.  I will enter an order indicating

20    that.  But the reasoning will be the reasons I gave

21    on the record just now.

22         MR. GREVE:  Your Honor, if I may ask one

23    question.  I understand the Court's ruling, but on

24    the issue of mootness, if an underlying dispute

25    between two parties is capable of repetition yet

1    evading review, would that mean it's not moot?

2             THE COURT:  So, just to be clear, I'm not

3    finding that it's moot.  I'm finding that defendants

4    have not established that the information they seek

5    is relevant to their claims here now, and that given

6    the very minimal relevance we're talking about,

7    which is basically that the 2020 article is somehow

8    incorporated into a new article involving new

9    individuals that she published in 2023, and given

10   Mr. Kramer's indications that the 2020 article will

11   not be used offensively in any way by plaintiffs.

12            Again, because defendants haven't shown

13   that the information they're seeking is relevant to

14   their claims, and Northwell Health has made an ample

15   showing that it will be unduly burdensome for them

16   to disclose the identities of these individuals.  So

17   that's the basis of my reasoning that the undue

18   burden on Northwell outweighs any potential

19   relevancy here.  It's not mootness.

20            MR. GREVE:  Okay.  I understand,

21   Your Honor.

22            And then one last point of clarification.

23   So if discovery was allowed and the remaining 32

24   individuals were also identified and also determined

25   to have alternate exposures to asbestos that were

1    not disclosed by Dr. Moline, similar to that of

2    Mrs. Bell, that would not be relevant or sufficient

3    enough relevance to garner that type of discovery.

4         Do I understand that correctly?

5         MR. KRAMER:  Your Honor, I think this is

6    now going into an advisory opinion based on a

7    hypothetical that, frankly, I don't even understand.

8    I don't think it's even appropriate to ask the Court

9    that.

10        MR. GREVE:  Well, let me see if I can -- my

11   question, Your Honor, is:  We're saying that there

12   hasn't been an establishment of this being relevant

13   in light of Northwell's concerns and plaintiff's

14   concerns.  And ultimately, what we're trying to find

15   out is if Dr. Moline made material

16   misrepresentations of fact regarding alternate

17   exposure to known asbestos for the other 32

18   individuals, similar to what was done in the Bell

19   instance.

20        Is it the Court's opinion that that

21   information is not something that a defendant would

22   be entitled to, nor would it have any significance

23   in terms of carrying its burden on this motion?

24        THE COURT:  No.  I mean, I don't think I'm

25   at all suggesting that.  I'm saying that within the

1  context of the information you seek for the 2020

2  article, the basis for the relevancy determination

3  was that she was relying on the 2020 article in her

4  expert opinion and she was using it affirmatively to

5  establish that causation nexus.

6       But if they're no longer relying on it,

7  that's the reason it's no longer relevant, the

8  reason you've no longer shown that it's relevant to

9  the claims here.  Your issue about the material

10 misrepresentations, that's certainly something you

11 could bring up on a Daubert challenge completely

12 unrelated to whether she's relying or using the 2020

13 article.

14      MR. GREVE:  And, Your Honor, one thing, as

15 the new article has been interjected, I think there

16 was a representation that Mr. Gref was not part of

17 the 2020 Moline article.

18      Is there any representation that

19 Plaintiff Gref is not included in the new Moline

20 2023 article?

21      MR. HUFF:  Your Honor, this is Nate Huff

22 for Northwell.  At the appropriate time, I had a

23 clarification I just wanted to make before you issue

24 your ruling.  So whenever you're ready to hear from

25 us on that, we're happy to proceed.

```
 1              THE COURT:  Well, Mr. Huff, I don't know if
 2    now is a good time.  Feel free to chime in.
 3              MR. HUFF:  Sure.
 4              So there have also been -- in the course of
 5    the various briefing on our motion to modify, there
 6    had also been a pair of cross motions to compel that
 7    basically and entirely incorporated by reference all
 8    of the same arguments.  In other words, they weren't
 9    raising new grounds.  It was just an alternate, a
10    repackaging of the same arguments.  And so we just
11    flag that for you in case it's also your intent to
12    simultaneously deny those cross motions to compel.
13              And then you had also noted that there were
14    some aspects of the subpoenas to which Northwell was
15    willing to comply -- or with which Northwell was
16    willing to comply.  We just wanted to note for the
17    record that, with regard to those aspects, we have
18    made a document production already back at the
19    outset.  And so with the Court's ruling, we would
20    view our role in responding to the subpoenas to be
21    complete.
22              THE COURT:  Okay.  Mr. Huff, thanks for the
23    clarification.  I found the cross motion to compel
24    at 281, but the analysis would still be the same.
25              MR. HUFF:  Yes, Your Honor, we agree with
```

1    that because it's the exact same argument.  It's

2    just fully incorporated.  We just wanted to flag

3    that just because those are also hanging out there.

4         THE COURT:  Yes, I appreciate it.  The

5    written order will close out all those motions.

6    And, again, it's for the reasons I've indicated on

7    the record.  So there won't be a written decision.

8         MR. HUFF:  Yes, Your Honor.

9         THE COURT:  Is there anything else from

10   anyone else?

11        MR. GREVE:  Yes, Your Honor.  Kurt Greve

12   with AII.

13        In terms of the logistics associated with

14   this order and the introduction of -- I guess, is

15   the Court going to allow Mr. Kramer to substitute in

16   additional reliance material, specifically the

17   Moline 2023 article?  Because if the Court's

18   inclined not to allow that additional

19   supplementation, then that would alleviate the need

20   for going back and redeposing every single expert in

21   this case on that subject matter.

22        And, obviously, the amount of time that we

23   would need to spend with Dr. Moline would be

24   significant, considering this is a brand new

25   article.  The provenance is obviously going to come

1    into question, the foundations are going to be to

2    questioned, and we're ultimately going to be

3    relitigating the exact same issues that we did with

4    Moline 2020.  Understanding they're now saying

5    they're not going to use it in any way, that we

6    would have the same questions for Moline 2023.

7          So while plaintiff has made some references

8    to attempting to do that, is the Court inclined to

9    allow them to supplement their disclosures and their

10   discovery and allow this new article to come in,

11   which would basically reset expert discovery in the

12   entire case?

13         MR. KRAMER:  Well, Your Honor, I disagree

14   with that representation -- this is Jim Kramer --

15   that it would reset discovery in the entire case.

16   And I also disagree that they would be entitled or

17   have shown any need or entitlement to any

18   information in 2023.  But I wanted to insert that

19   just so that the record is clear.

20         MR. GREVE:  Well, Your Honor, we definitely

21   would need to know if Brian Gref is included in the

22   Moline 2023 article.  That would be extremely

23   relevant to the Gref case.

24         THE COURT:  So I'm just going to chime in a

25   minute because, until this conference, the 2023

```
 1    article was never at all discussed by the parties.
 2    So this might be a situation where it would make
 3    sense for the parties to meet and confer and decide
 4    what's going on with the 2023 article before you
 5    want my involvement, particularly because it's an
 6    issue you just raised.
 7            So that's why, Mr. Greve, I can't tell you
 8    either way what my ruling is on the 2023 article
 9    because this is really something that was not at all
10    within the scope of what we've been talking about
11    until a few minutes ago.
12            MR. GREVE:  Understood.
13            THE COURT:  If there's nothing further,
14    then the issue of the 2023 article, you can
15    certainly meet and confer and send us a letter.  I
16    will say, though, at this point, with the other
17    motion for sanctions that just got filed, if your
18    goal is to try to get this case moving along, the
19    additional motions are only going to slow you down,
20    for obvious reasons.
21            Thank you, everyone.
22            MR. KRAMER:  Understood, Your Honor.  Thank
23    you.
24            MR. GREVE:  Thank you, Your Honor.  Have a
25    good weekend.
```

```
 1              C E R T I F I C A T E

 2

 3        I, Marissa Mignano, certify that the foregoing

 4   transcript of proceedings in the case of

 5   BRIAN JOSEPH GREF v. AMERICAN INTERNATIONAL

 6   INDUSTRIES, et al., Docket #1:20-cv-05589, was

 7   prepared using digital transcription software and is

 8   a true and accurate record of the proceedings.

 9

10

11   Signature  __Marissa Mignano_____

12                  Marissa Mignano

13

14   Date:     May 23, 2023

15

16

17

18

19

20

21

22

23

24

25
```