# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS <br><br> MDL Case No. 2738 <br><br> Motion Day: February 5, 2024 |

## DEFENDANTS JOHNSON & JOHNSON AND LTL MANAGEMENT LLC'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING SUBPOENA DIRECTED AT KCIC, LLC

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

A.   The PSC Fails To Describe The Allegedly Privileged Documents And
Communications With Sufficient Particularity........................................................2

B.   J&J Has A Clear Basis For Seeking Documents Relevant To
Disqualification...........................................................................................7

CONCLUSION .....................................................................................................8

i

# TABLE OF AUTHORITIES

Page

## Cases

*Berardino v. Prestige Management Services, Inc.*,
  2017 WL 9690965 (D.N.J. Dec. 8, 2017) .............................................................6

*Cobell v. Norton*,
  237 F. Supp. 2d 71 (D.D.C. 2003) .......................................................................8

*D.A. v. Nielsen*,
  2018 WL 3158819 (D.N.J. June 28, 2018) ..........................................................2

*Dawson v. Ocean Twp.*,
  2011 WL 890692 (D.N.J. Mar. 14, 2011) ............................................................4

*Gen. Refractories Co. v. Liberty Mut. Ins. Co.*,
  1999 WL 286475 (E.D. Pa. May 5, 1999) ...........................................................3

*Greene v. Phila. Hous. Auth.*,
  484 F. App'x 681 (3d Cir. 2012) .........................................................................4

*In re Human Tissue Prods. Liab. Litig.*,
  255 F.R.D. 151 (D.N.J. 2008) .............................................................................3

*N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*,
  2017 WL 498710 (D.N.J. Feb. 7, 2017) ..............................................................6

*Napolitano v. Corbishley*,
  2021 WL 3486901 (D.N.J. Aug. 9, 2021) ...........................................................5

*Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,
  2023 WL 2306066 ................................................................................................3

*Smith v. F.T.C.*,
  403 F. Supp. 1000 (D. Del. 1975) .......................................................................2

*United States v. O'Neill*,
  619 F.2d 222 (3d Cir. 1980) ................................................................................2

*United States v. Rockwell Int'l*,
  897 F.2d 1255 (3d Cir. 1990) ..............................................................................3

*Wei v. Bodner*,
  127 F.R.D. 91 (D.N.J. 1989) ...............................................................................4

*Younes v. 7-Eleven, Inc.*,
  2014 WL 1959246 (D.N.J. May 15, 2014) ..........................................................2

## TABLE OF AUTHORITIES
### (Continued)

Page

**Rules**

Fed. R. Civ. P. 26(b)(5)..................................................................................................3

Fed. R. Civ. P. 26(b)(5)(A)(ii) ..................................................................................3

# INTRODUCTION[1]

There is no dispute that J&J's current litigation adversary, Beasley Allen, and its former lawyer, James Conlan, have "work[ed] together to come up with a strategy to try and resolve" the cases in this MDL.  J&J Opp., Ex. 2 at 46:5–8. There is no dispute that Conlan possesses J&J's confidences.  And there is no reasonable dispute that Conlan passed those confidences to Andy Birchfield of the Beasley Allen firm during their strategic partnership.  The question that now requires an answer is whether those confidences have been shared more broadly with other members of the Plaintiffs' Steering Committee ("PSC").

To answer that question, J&J issued a third-party subpoena to KCIC.  In response, the PSC has moved to quash the entirety of the subpoena on the ground that every document falls within New Jersey's mediation privilege.  The PSC's objection is incredible on its face.  It admits that it has not reviewed the documents in question, including communications exclusively between third parties, and so it has no basis to claim that every single document in KCIC's possession contains its

---

[1] As used in this memorandum, "J&J Motion" and "J&J Mot." refer to  J&J's Motion for Order to Show Cause Why Andy Birchfield and Beasley Allen Should Not Be Disqualified From This Litigation or Removed From the Plaintiffs' Steering Committee (ECF No. 28760-1); "PSC Mot." refers to the PSC's Memorandum in Support of its Motion to Quash or for Protective Order (ECF No. 28912-1); "J&J Opp." refers to J&J's Opposition to Plaintiffs' Steering Committee's Motion to Quash or for Protective Order (ECF No. 28920); and "PSC Reply" refers to the PSC's Reply in Support of the Plaintiffs' Steering Committee's Motion to Quash or for Protective Order (ECF No. 28953).

1

privileged information.  And the PSC's claim that J&J is engaged in a "fishing expedition" is belied by the facts summarized above.  Lawyers at one firm on the PSC have J&J's confidences.  There is good reason to believe they shared that highly-sensitive information with their co-counsel.  The PSC's motion should be denied.

## ARGUMENT

### A.    The PSC Fails To Describe The Allegedly Privileged Documents And Communications With Sufficient Particularity

The PSC's reply brief confirms that their privilege objections are legally deficient.  The PSC first asserts that it need not object with specificity because the leading Third Circuit case laying out that requirement, *United States v. O'Neill*, 619 F.2d 222 (3d Cir. 1980), arose in the context of a claim for executive privilege, whereas this case involves the mediation privilege.  That is a distinction without a difference.  The level of specificity required for an objection on privilege grounds does not turn on the precise privilege asserted.  *Smith v. F.T.C.*, 403 F. Supp. 1000, 1016 (D. Del. 1975) ("*As with any privilege* the burden is upon the claimant of executive privilege to demonstrate a proper entitlement to exemption from disclosure." (emphasis added)).  Indeed, many courts applying *O'Neill* to other privileges and work product claims have made that clear.  *See, e.g.*, *D.A. v. Nielsen*, 2018 WL 3158819, at *3 (D.N.J. June 28, 2018); *Younes v. 7-Eleven, Inc.*, 2014 WL

1959246, at *3 (D.N.J. May 15, 2014); *Gen. Refractories Co. v. Liberty Mut. Ins. Co.*, 1999 WL 286475, at *2 (E.D. Pa. May 5, 1999).

So do the federal rules.  Rule 26(b) requires a party seeking to withhold information as privileged to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . [to] enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, 2023 WL 2306066, at *4 (explaining the party "asserting a claim of privilege or protection must give notice to the receiving party that is 'as specific as possible in identifying the information and stating the basis for the claim'") (quoting Fed. R. Civ. P. 26(b)(5) Committee's note to 2000 amendment; *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 163 (D.N.J. 2008) (explaining "party asserting the privilege" must prove elements on "document by document basis") (citing *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990)).  A party cannot assess a claim of privilege unless the documents are particularly described.

Recognizing as much, the PSC asserts that it "specifically described" the communications it believes are privileged.  PSC Reply 5.  But that is self-evidently untrue.  The PSC has moved to quash the *entirety* of the KCIC subpoena, including requests for communications between Conlan and KCIC that the PSC admits it does not have "access to." *Id.* at 7.  Obviously, the PSC could not describe with specificity documents it never read.  And the most the PSC says in its reply is that these

3

documents "*may*" implicate confidential information, *id*. at 7 (emphasis added), which confirms the invalidity of its objection. The PSC is asking this Court to quash a subpoena based on the speculative *possibility* that documents it has not reviewed are privileged. That is improper. *See Greene v. Phila. Hous. Auth.*, 484 F. App'x 681, 685 (3d Cir. 2012) (finding plaintiff's "assertion of possible privileged information" that may be produced under subpoena to be "based entirely on speculation").

The PSC's motion is also procedurally deficient because it has not produced a privilege log. The PSC responds that it is not required to produce a privilege log because J&J issued a third-party subpoena and, to log KCIC's documents, the PSC would first need to review documents belonging to KCIC. PSC Reply 6–7. But how can the PSC credibly claim privilege over every single document in a set it has not reviewed? It cannot. The PSC offers no evidence that it even asked to review the documents to find out whether they are privileged, much less a reason why it could not first review the KCIC documents responsive to the subpoena and then log those it believes are privileged. That is the way the process is supposed to work: the point of producing a privilege log and objecting with specificity is to enable the Court and the party seeking discovery to meaningfully assess the claim of privilege. *See* J&J Opp. at 6–7 (quoting *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989); *Dawson v. Ocean Twp.*, 2011 WL 890692, at *23 (D.N.J. Mar. 14, 2011)).

By contrast, if the PSC's argument were adopted, it would be easier for a party who is not the subject of a subpoena to object on privilege grounds than the subpoenaed party itself.  On the PSC's logic, KCIC would need to produce a privilege log if the subpoena called for *its* privileged documents, but the PSC does not need to produce a privilege log only because the subpoena was addressed to someone else.  That makes no sense.  The PSC should be required to review the documents responsive to the subpoena and produce a privilege log for all the documents it believes are privileged.  Meanwhile, non-privileged documents should be produced.

Neither J&J nor this Court can meaningfully assess the PSC's claim that the documents are covered by the mediation privilege without a privilege log and specific objections.  Despite its claim that "[a]ll of the subpoenaed information" is covered by that privilege, PSC Reply 7, it still has not explained how the particular documents covered by the subpoena were "made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator."  *Napolitano v. Corbishley*, 2021 WL 3486901, at *2 (D.N.J. Aug. 9, 2021) (quotation omitted).  Likewise, the mediation privilege does not "require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations," and documents "which otherwise exist" or "existed independent of the mediation" are "not subject to th[e]

privilege." *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 2017 WL 498710, at *3 (D.N.J. Feb. 7, 2017) (quotations omitted).

Thus, the PSC's tactic of pointing out that some responsive documents might have been written while "the parties were actively discussing possible" mediation, PSC Reply 8, is irrelevant. Just because there was a potential mediation does not mean that every communication around that time comes within the mediation privilege. If anything, the PSC's overbroad argument serves only to illustrate why specific objections and a privilege log are required—without them, there is no basis to determine whether the documents were created *because* of mediation or merely happened to be written in a time period when mediation was separately being considered.[2] This is, of course, only if the proposition that communications between Legacy Liability Solutions (or Beasley Allen) and KCIC were prepared for purposes of mediation between the PSC and J&J is even accepted in the first place. It should not be.

---

[2] The PSC's reliance on *Berardino v. Prestige Mgmt. Servs., Inc.*, 2017 WL 9690965 (D.N.J. Dec. 8, 2017), skips a step. In *Berardino*, there was no question that the party who issued the subpoena sought protected information—the plaintiff subpoenaed a third-party to produce "a confidential settlement agreement." *Id.* at *1 (quotation omitted). And the court held that the plaintiff's need for that confidential document overcame the opposing party's interest in confidentiality. *See id.* Here, the PSC has not established the confidentiality of *any* documents responsive to the subpoena, so the question whether J&J can overcome a legitimate claim of privilege is not implicated.

**B.      J&J Has A Clear Basis For Seeking Documents Relevant To Disqualification**

In its reply brief, the PSC argues that J&J is engaged in a "fishing expedition." PSC Reply 3; *see also id.* at 11–13.  Not so.  Counsel for Beasley Allen has already admitted that its lawyers and James Conlan, J&J's former lawyer, "work[ed] together to come up with a strategy to try and resolve or settle disputes."  J&J Opp., Ex. 2 at 46:5–8.  It also cannot be reasonably disputed that Conlan possessed confidential information relevant to this litigation while he was working together with J&J's litigation adversary on a resolution to this litigation.  One key question, therefore, is the full extent to which J&J's client confidences have been shared beyond the alliance between Conlan and Beasley Allen, and in particular with other members of the PSC.  That is more than a solid foundation for the discovery sought, especially given the immense stakes—namely, continued litigation where J&J's adversaries possess its confidences.

The PSC's response is to relitigate the motion to disqualify Birchfield and Beasley Allen.  They say that there is "no evidence," PSC Reply 11, that Conlan disclosed confidential information gained during his representation of J&J to Birchfield, and that self-serving declarations to the contrary "affirmatively" disprove that contention, PSC Reply 12.  But as J&J has already explained, J&J Mot. 8–13, 17, the PSC's arguments are incorrect for two reasons.  First, there is substantial circumstantial evidence that Beasley Allen lawyers now have J&J's confidences.

Second, the PSC has not even attempted to rebut the presumption that J&J's confidences were shared or addressed the many cases holding that self-serving declarations like those submitted here should be disregarded.  Given the facts and legal presumption establishing that members of one firm on the PSC possess J&J's confidences, J&J should be permitted to discover whether other members of the PSC possess the same.[3]

## CONCLUSION

For the foregoing reasons, the PSC's motion should be denied.

Dated: February 5, 2024   Respectfully submitted,

*/s/ Stephen D. Brody*
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com

Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.:  973-549-7000
susan.sharko@faegredrinker.com

---

[3] The PSC accuses J&J of misrepresenting *Cobell v. Norton*, 237 F. Supp. 2d 71 (D.D.C. 2003), as illustrating that discovery may be appropriate to gather evidence in support of a motion for disqualification.  PSC Reply 13.  Cases cited by the PSC, however, make the very same point.  *Compare* J&J Opp. 9, *with* PSC Reply 11. Indeed, the PSC *agrees* that discovery in aid of a motion for disqualification may be appropriate, PSC Reply 11, so its belabored discussion of *Cobell* is a moot point.

*Attorneys for Johnson & Johnson and LTL Management, LLC n/k/a LLT Management LLC*