## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2738 |
| *This Document Relates To All Cases* | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTIONS TO THE SPECIAL MASTER'S ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.   THE SPECIAL MASTER INCORRECTLY APPLIED NEW JERSEY LAW ACROSS THE MDL. ..................................................................1

II.  UNDER ANY STATE'S LAW, PLAINTIFFS' MOTION SHOULD HAVE BEEN DENIED. ...................................................................7

     A.    Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Product-Line Exception. .................................................7

     B.    Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Mere-Continuation Exception.....................................13

CONCLUSION ..........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allstate Insurance Co. v. Countrywide Financial Corp.*,
    824 F. Supp. 2d 1164 (C.D. Cal. 2011) ............................................................4

*Arevalo v. Saginaw Machine Systems, Inc.*,
    344 N.J. Super. 490 (App. Div. 2001) .............................................................9

*Bouchillon v. SAME Deutz-Fahr, Group*,
    268 F. Supp. 3d 890 (N.D. Miss. 2017) .........................................................3

*Bussell v. DeWalt Products Corp.*,
    259 N.J. Super. 499 (App. Div. 1992) ......................................................8, 12

*Chrysler Corp. v. Ford Motor Co.*,
    972 F. Supp. 1097 (E.D. Mich. 1997) .............................................................4

*Elmer v. Tenneco Resins, Inc.*,
    698 F. Supp. 535 (D. Del. 1988) ...................................................................15

*In re General Motors LLC Ignition Switch Litigation*,
    No. 14-MD-2543, 2017 WL 3382071 (S.D.N.Y. Aug. 3, 2017) ...........2, 3, 4

*Home Depot USA, Inc. v. LaFarge North America, Inc.*,
    59 F.4th 55 (3d Cir. 2022) ..............................................................................6

*Intarome Fragrance & Flavor Corp. v. Zarkades*,
    No. 07-873, 2009 WL 931036 (D.N.J. Mar. 30, 2009) ...................................4

*In re January 2021 Short Squeeze Trading Litigation*,
    76 F.4th 1335 (11th Cir. 2023) ...................................................................1, 2

*In re January 21 Short Squeeze Trading Litigation*,
    584 F. Supp. 3d 1161 (S.D. Fla. 2022) ...........................................................2

*Krys v. Aaron*,
106 F. Supp. 3d 472 (D.N.J. 2015) ...................................................................4

*Leo v. Kerr-McGee Chemical Corp.*,
37 F.3d 96 (3d Cir. 1994) ..........................................................................7, 8

*In re LTL Management, LLC*,
64 F.4th 84 (3d Cir. 2023) .....................................................................10, 14

*Nieves v. Bruno Sherman Corp.*,
86 N.J. 361 (1981) ...........................................................................................9

*Norman v. Elkin*,
860 F.3d 111 (3d Cir. 2017) ..........................................................................4

*Pacius v. Thermtroll Corp.*,
259 N.J. Super. 51 (Law Div. 1992)................................................................8

*Potwora ex rel. Gray v. Grip*,
319 N.J. Super. 386 (App. Div. 1999)........................................................8, 12

*Printing Mart-Morristown v. Sharp Electronics Corp.*,
116 N.J. 739 (1989) ........................................................................................7

*Ramirez v. Amsted Industries, Inc.*,
86 N.J. 332 (1981) ....................................................................................8, 11

*Ramos v. Foam America, Inc.*,
No. 15-980, 2018 WL 1684327 (D.N.M. Apr. 5, 2018) .................................9

*Randle v. AC Assets Services LLC*,
No. 19-1074, 2022 WL 2680079 (W.D.N.Y. July 12, 2022).........................4

*Ray v. Alad Corp.*,
560 P.2d 3 (Cal. 1977).................................................................................11

*Saez v. S & S Corrugated Paper Machinery Co.*,
302 N.J. Super. 545 (App. Div. 1997).....................................................8, 13

*Selected Risks Insurance Co. v. Bruno*,
   718 F.2d 67 (3d Cir. 1983) ...........................................................................10

## OTHER AUTHORITY

Restatement (Third) of Torts:  Prod. Liab. § 12 (1998)........................................7, 8

Plaintiffs' brief fails to justify the Special Master's decision to apply New Jersey law across a nationwide MDL proceeding and confirms that neither the product-line exception nor the mere-continuity exception supports departing from the general rule that a successor corporation is not liable for the alleged torts of its predecessor.  The Court should overrule the Special Master and deny leave to add Johnson & Johnson Holdco (NA), Inc. ("Holdco"); Kenvue, Inc. ("Kenvue") and Janssen Pharmaceuticals, Inc. ("Janssen") as defendants.

## I.   THE SPECIAL MASTER INCORRECTLY APPLIED NEW JERSEY LAW ACROSS THE MDL.

The Special Master misapplied longstanding choice-of-law principles in applying New Jersey's successor liability law to the thousands of plaintiffs' claims in this MDL proceeding.  (Defs.' Objs. at 11-17.)  Plaintiffs argue that: (1) this approach to choice-of-law was proper because the Master Complaint is the "operative" pleading at this stage of the litigation; and (2) even if it were not, defendants have not shown that amendment would be futile for "all" plaintiffs. (Pls.' Opp'n at 7-20.)  Neither position has any merit.

*First*, plaintiffs argue that defendants' "consent to the filing of a master complaint" warrants application of New Jersey's choice-of-law principles (and, by extension, New Jersey substantive law).  (Pls.' Opp'n at 4-5; *see also id.* at 8-10.) In so arguing, plaintiffs rely primarily on *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1345-46 (11th Cir. 2023) (cited in Pls.' Opp'n at 5, 10),

which held that the Southern District of Florida was the "forum for pretrial purposes," including with respect to choice-of-law issues. *Id.* In that litigation, however, "the parties agreed that [p]laintiffs' [c]omplaint would supersede all previous pleadings." *In re Jan. 21 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1179 (S.D. Fla. 2022) (citing *In re January 21* Joint Status Report ¶ 2, ECF 322 ("Such Master Complaints will supersede the individual complaints . . . and will constitute the operative pleadings with respect to those claims pursuant to Fed. R. Civ. P. 8.") (Defs.' Objs. Ex. 8 to)). Here, by contrast, plaintiffs, at most, point to a smattering of docket entries showing that defendants "agreed to file answers to the master complaint" (Pls.' Opp'n at 8), and case management orders providing that any short form complaints necessarily "incorporate" the Master Complaint (*see* ECF 257, ¶¶ 1, 2; *see also* ECF 148, ¶ 7), none of which manifests any "agreement" by the parties to treat the Master Complaint as the "operative" pleading, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2017 WL 3382071, at *8 (S.D.N.Y. Aug. 3, 2017) ("*GM*") (citation omitted).

Plaintiffs argue that *GM* is not instructive because it applied to summary judgment (*see* Pls.' Opp'n at 12-13), but they misperceive the critical holding of that case, which is that "'a master complaint' in an MDL [proceeding] should not be used 'as the operative pleading for choice of law purposes'" absent the parties' consent. *See GM*, 2017 WL 3382071, at *8 (citation omitted). That fundamental

2

principle applies at every stage of the litigation.

Even if New Jersey were the sole relevant forum, its choice-of-law rules would only support applying New Jersey law to the proposed claims against Janssen, since Holdco and Kenvue are incorporated elsewhere.  Plaintiffs claim that defendants have not "addressed New Jersey's 'most significant relationship'" choice-of-law framework (Pls.' Opp'n at 14), but the cases cited in defendants' opening brief make clear that, under "the Restatement's 'most significant relationship' test," "successor liability must be determined according to the location of the relationship between the original corporation and the succeeding business entity"—i.e., the successor's state of incorporation.  *GM*, 2017 WL 3382071, at *11 (citation omitted).  While plaintiffs insist that such an approach only applies to "issues relating to the ***internal*** affairs of a corporation" (e.g., disputes between a corporation, its shareholders and officers) (Pls.' Opp'n at 14 (emphasis added)), *GM* applied it to successor-liability claims asserted by mass tort claimants.  *See* 2017 WL 3382071, at *11 (the fact that "D.C. courts abide by an 'internal affairs doctrine'" further weighs in favor of applying law of state of incorporation); *see also Bouchillon v. SAME Deutz-Fahr, Grp.*, 268 F. Supp. 3d 890, 905 (N.D. Miss. 2017) (applying law of state of incorporation to questions of "corporate successor liability" in wrongful death case; such an approach "is a far simpler and easier method than a locus-based approach which would lead to chaos

in multi-plaintiff actions").[1]

Although *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097 (E.D. Mich. 1997) (cited in Pls.' Opp'n at 17), declined to apply the law of the state of incorporation in an environmental tort case, that case was "wrongly decided" (as another, more recent decision recognized) and should not be followed. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1173-74 (C.D. Cal. 2011) ("The better rule is . . . that a court should look to the transaction giving rise to potential successor liability, not the underlying tortious act."). And in plaintiffs' remaining cases, the courts held that arguments like those being made here were "not sufficient to outweigh the" interests of a successor corporation's state of incorporation. *Intarome Fragrance & Flavor Corp. v. Zarkades*, No. 07-873, 2009 WL 931036, at *14 (D.N.J. Mar. 30, 2009) (cited in Pls.' Opp'n at 16); *see also Krys v. Aaron*, 106 F. Supp. 3d 472, 486 (D.N.J. 2015) (similar); *Norman v. Elkin*, 860 F.3d 111, 122 (3d Cir. 2017) (holding that district court correctly "*did* apply" the defendant's state of incorporation, "namely the Delaware borrowing statute, to determine that application of Pennsylvania's statute of limitations was required").

---

[1] Plaintiffs criticize defendants' reliance on *Randle v. AC Assets Services LLC*, No. 19-1074, 2022 WL 2680079, at *2 n.2 (W.D.N.Y. July 12, 2022), as being "contrary" to New York case law, but *Randle* is in accord with New York courts, which "have generally held that successor liability claims are governed by the law of the state of incorporation." *GM*, 2017 WL 3382071, at *13 (citations omitted).

4

In short, plaintiffs' cases largely support defendants' argument that New Jersey law governs the successor-liability issue as to New Jersey-based Janssen, while Texas and Delaware law govern that question as to Holdco and Kenvue, respectively.

***Second***, plaintiffs alternatively argue that, even if the Master Complaint were merely an "administrative summary of plaintiffs' claims" and New Jersey did not supply the sole relevant choice-of-law forum, the Special Master's opinion would still be correct because defendants have not shown that "***no*** plaintiff could plausibly assert successor liability claims against" the proposed new defendants. (Pls.' Opp'n at 17-18 (emphasis added).)  That is simply not true.  As defendants carefully explained in their opening brief, Delaware and Texas do not even recognize the product-line exception, and Texas does not recognize the mere-continuation exception either.  And to the extent New Jersey and other states recognize these doctrines, neither exception applies to any defendant under any state's law for multiple reasons, not the least of which is that the actual successor to the entity that manufactured and sold the products that allegedly caused the plaintiffs' or their decedents' cancers exists and has sufficient assets to satisfy any individual claims.[2]  (*See* Defs.' Objs. at 17-31.)

---

[2]     Defendants focused on New Jersey law in their opening brief because the Special Master applied the law of this State.  Other states, however, impose equally or more demanding requirements to impose successor liability.  (*See* ECF 28070,

Plaintiffs relatedly contend that the Third Circuit has "warned against allowing MDL consolidation to 'diminish' the rights of any party." (Pls.' Opp'n at 18 (citing *Home Depot USA, Inc. v. LaFarge N. Am., Inc.*, 59 F.4th 55, 62 (3d Cir. 2022)).) But in *Home Depot*, the Third Circuit held that the law of the case doctrine could not "bind" a plaintiff to "decisions" rendered in "different cases" and before the plaintiff even commenced its lawsuit. 59 F.4th at 62. Here, by contrast, defendants are merely asking the Court to find that plaintiffs' proposed claims against Holdco, Janssen and Kenvue are not viable under *any* state's law, an outcome that would not change if plaintiffs' claims were pending outside this MDL. Finally, plaintiffs insist that amendment would not "diminish" the proposed new defendants' rights because the Special Master made clear that his ruling was "not a final determination on the choice-of-law issue for any individual case." (Pls.' Opp'n at 19.) That is backwards. Deferring resolution of the choice-of-law issues would effectively undermine defendants' rights by injecting peripheral entities (that are not the real targets of this litigation) into an MDL and subjecting them to costly and onerous discovery that plaintiffs do not need to try their claims. That is the quintessence of prejudice and highlights why the Court should deny

---

13-25 (discussing successor liability standards of California, Delaware, New York, North Carolina, Texas, and Washington, in addition to New Jersey).) It necessarily follows that plaintiffs' claims are futile under the laws of other states as well.

plaintiffs' motion as futile.

## II.   UNDER ANY STATE'S LAW, PLAINTIFFS' MOTION SHOULD HAVE BEEN DENIED.

Even if New Jersey law could be applied nationwide, Plaintiffs' claims would not come within this State's narrow exceptions to successor non-liability.[3]

### A.   Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Product-Line Exception.

The Special Master found that Holdco, Janssen and Kenvue could all be held liable under the product-line exception, which has been rejected as "unfair and socially wasteful" by "a substantial majority of courts," Restatement (Third) of Torts:  Prod. Liab. § 12 cmt. b (1998) ("Restatement"), but is accepted in a very small minority of jurisdictions, including New Jersey.[4]  Under the law of those jurisdictions, plaintiffs must plead:  (1) the "destruction of the injured party's remedy" against the predecessor, *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 99 (3d Cir. 1994); (2) the successor's acquisition of "all or substantially all the manufacturing assets"; and (3) that the successor "undertakes essentially the same

---

[3]      Plaintiffs rely on a handful of New Jersey state court decisions denying motions to dismiss.  Those decisions applied state procedural law that a motion to dismiss "should be granted only in the rarest of circumstances" and never where a claim is so much as "suggested" by the facts.  *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989) (cited in Pls.' Opp'n at 21).  That is not the standard in federal court.

[4]      The others are California, New Mexico, Pennsylvania and Washington.  *See* Restatement § 12 cmt. c.

manufacturing operation," *Potwora ex rel. Gray v. Grip*, 319 N.J. Super. 386, 403

(App. Div. 1999) (citation omitted).  They have not met this standard.

> **Holdco.**[5]  For starters, plaintiffs cannot show the destruction of alternative

remedies.  In fact, they concede that they have ample remedies against LTL, but

they offer two arguments for why this should not matter.

> Plaintiffs first contend that New Jersey does not require the destruction of a

plaintiff's remedy against a predecessor.  That is simply incorrect.  *See Leo*, 37

F.3d at 99 ("[T]he destruction of the injured party's remedy is a *necessary* . . .

basis . . . ."); *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 358 (1981) (Schreiber, J.,

concurring) ("an essential condition precedent to recovery").  The only authority

plaintiffs offer to support this contention is *Bussell v. DeWalt Products Corp.*, 259

N.J. Super. 499 (App. Div. 1992), but even assuming that case is still good law,[6] it

simply holds that "the fact of nonviability of the predecessor company . . .

govern[s] the imposition of liability, not the reason for it."  *Id.* at 519 (App. Div.

1992) (quoting *Pacius v. Thermtroll Corp.*, 259 N.J. Super. 51, 56 (Law Div.

---

[5]     Plaintiffs' brief frequently conflates the three proposed defendants at issue. But each presents distinct facts regarding corporate history and the relationship to Old JJCI's talc- based Johnson's Baby Powder.

[6]     *Bussell* relied on *Pacius v. Thermtroll Corp.*, a case adopting a "blatant . . . 'deep pocket' theory of recovery" that has since been repudiated.  *Saez v. S & S Corrugated Paper Mach. Co.*, 302 N.J. Super. 545, 556-57 (App. Div. 1997); *see* Restatement § 12 cmt. c.

1992)).  Here, there is no "fact of nonviability."

Plaintiffs next argue that although they have recourse against LTL,[7] they lack recourse against Old JJCI, but that hyper-technical argument ignores the purpose of the product-line exception, which is to avoid situations in which "an injured party might otherwise be left without a remedy."  *Arevalo v. Saginaw Mach. Sys., Inc.*, 344 N.J. Super. 490, 496 (App. Div. 2001); *cf. Ramos v. Foam Am., Inc.*, No. 15-980, 2018 WL 1684327, at *6 (D.N.M. Apr. 5, 2018) (plaintiff could not invoke exception where predecessor continued to exist, "albeit under a different name").  Plaintiffs resist this conclusion, citing *Nieves v. Bruno Sherman Corp.*, 86 N.J. 361 (1981), but that case has nothing in common with this one.  In *Nieves*, the court held that a successor that manufactured the product line at issue for eight years could be held liable despite later selling that product line to an indirect successor.  *Id.* at 370-72.  The court declined to absolve that first successor—the one that had actually destroyed the predecessor corporation— "merely because plaintiff's injury did not occur while [it] was actually engaged in the manufacturing process."  *Id.* at 371.  Here, by contrast, it is not the mere fortuity of timing that distinguishes Holdco from LTL.  Rather, LTL stands in the shoes of Old JJCI for the express purpose of paying Old JJCI's talc claimants, and

---

[7]     On December 29, 2023, LTL Management LLC changed its name to LLT Management LLC.  For simplicity, this brief uses the prior term, LTL.

plaintiffs concede it is fully capable of doing do.

Finally, plaintiffs acknowledge that the Third Circuit has already implicitly held that talc liability passed from Old JJCI to LTL, not to Holdco, under the terms of the Texas divisional merger.  *See In re LTL Mgmt., LLC*, 64 F.4th 84, 96-97 (3d Cir. 2023).  Plaintiffs urge the Court to discount this appellate guidance, however, on the ground that a "federal appellate court does not [usually] consider an issue not passed upon below."  (Pls.' Opp'n at 31 n.21 (quoting *Selected Risks Ins. Co. v. Bruno*, 718 F.2d 67, 69 (3d Cir. 1983)).)  That makes no sense.  The respective liabilities of LTL and Holdco were central to the issue (and lower-court opinion) being reviewed in *LTL*.  Anyway, *Selected Risks* merely noted a general and discretionary practice (one the court did not follow in that case).  718 F.2d at 69-70.  It did not negate the precedential value of any statements from a circuit court.

In any event, even if plaintiffs did lack alternative remedies, Holdco never sold essentially the same line of products as Old JJCI using "essentially the same manufacturing operation," since it never sold talcum powder in the United States (as discussed further below).

Because Holdco did not inherit any liability. it could not have passed any to its alleged successors Kenvue and Janssen, as defendants have previously explained.  But even if it had, they still could not be liable in this litigation.

**Kenvue.**  Plaintiffs primarily argue that Kenvue should be liable for

American talcum powder because it continued to sell that product **abroad** until last year.  In so arguing, plaintiffs do not cite a single case under the law of any state that imposes product-line liability on a successor based on foreign product sales, and defendants have not found such a case either.  Instead, plaintiffs cite a series of cases involving "product[s] . . . **manufactured** outside New Jersey."  (Pls.' Opp'n at 25 (emphasis added).)  These cases are irrelevant.  The relevant question is whether liability can be based on products that are not manufactured, advertised, sold, or in any other way connected to the United States.

The policies underlying the product-line exception make clear that the answer should be no.  As discussed above, the primary basis for the exception is to provide a remedy to plaintiffs who would otherwise lack one, a goal that is not implicated here in light of LTL's substantial resources.  Plaintiffs claim that two other policy justifications—the "successor's ability to assume" a "risk-spreading role" and "the fairness of requiring a successor" to assume burdens "necessarily attached to the original manufacturer's goodwill"—support imposing liability for foreign sales.  (Pls.' Opp'n at 26 (quoting *Ramirez*, 86 N.J. at 349).)  Plaintiffs are wrong.  Risk-spreading, as explained by the court to first recognize the product-line exception, means "meeting the cost arising from those risks by spreading it among current purchasers of the product line."  *Ray v. Alad Corp.*, 560 P.2d 3, 5 (Cal. 1977).  There is no reason purchasers in other countries, who have no voice

11

in this proceeding, should subsidize the litigation choices of American plaintiffs. As for "goodwill," it is difficult to imagine that Kenvue inherited any goodwill associated with talcum powder, which had to be removed from the U.S. market in large part because of lawyer advertising vilifying the product.

Plaintiffs alternatively argue that cornstarch powder constitutes the same product line as talcum powder—even though the primary ingredient varies and no plaintiff has ever suggested cornstarch powder can increase the risk of cancer.  The only case plaintiffs cite undermines their argument.  There, liability was premised on the fact that the "distinguishing feature of the radial arm saw that injured the plaintiff [wa]s still included" in the product.  *Bussell*, 259 N.J. Super. at 519 (cited in Pls.' Opp'n at 26).  Plaintiffs point out that talcum powder and cornstarch power "serve the same function, serve the same market, are sold in the same stores, and use the same trademark, branding, esthetic features, and goodwill."  (Pls.' Opp'n at 27.)  But the first several factors are also true for different motorcycle helmets; yet, in *Potwora*, the Appellate Division declined to impose successor liability on a company that "continued manufacturing many of the same helmets" because it did not manufacture the specific RG-4 helmet involved in an accident.  319 N.J. Super. at 405-06.  As for trademarks and branding, plaintiffs offer no authority to suggest those alone can define a product line, especially since the same trademarks are often implied to numerous different products.

In any event, product-line liability independently fails because "Kenvue has not acquired all the assets of its predecessor" Holdco, much less all the assets of Old JJCI. (Defs.' Objs. at 25.) Plaintiffs offer no direct response. And their argument that ample remedies against LTL can be discounted based on a technicality runs contrary to the purpose of the product-line exception, as discussed above.

*Janssen.* Plaintiffs briefly argue that "Old JJCI's consumer health business" passed through Janssen as part of its transfer to Kenvue (Pls.' Opp'n at 2) (which it did for approximately 24 hours), but make no effort to explain what that has to do with the product-line exception. Plaintiffs also argue that "it is not . . . necessary . . . to continue manufacturing any product in the Johnson's Baby Powder product line for the . . . exception to apply." (Pls.' Opp'n at 25.) But the case they cite for that proposition, *Saez v. S & S Corrugated Paper Machinery Co.* holds **exactly the opposite**—i.e., that "*Ramirez* . . . requires . . . the continued manufacture of the predecessor's product." 302 N.J. Super. at 557. Plaintiffs' own citation thus demonstrates that the Special Master erred as to Janssen.

## B.    Holdco, Janssen And Kenvue Cannot Be Held Liable Under The Mere-Continuation Exception.

Plaintiffs' effort to impose liability under the mere-continuation exception fares no better. They correctly state the factors relevant to the inquiry: continuity of ownership; immediate dissolution of the predecessor company; assumption of

necessary liabilities; continuation of management, personnel, physical location, and assets; and, most importantly, an intent to "assume all the benefits and burdens of the predecessor's business."  (Pls.' Opp'n at 33-34 (citation omitted).)  But these factors cut against imposing liability on any of the proposed defendants here.

*Holdco.*  Most obviously, the parties to the divisional merger that created Holdco did not intend for it to "assume all the benefits and burdens" of Old JJCI. The whole point was for LTL to assume both substantial burdens—almost all talc liability—and substantial benefits—worth at minimum hundreds of millions and potentially tens of billions of dollars.  *See LTL*, 64 F.4th at 96-97.  Thus, the "most important" factor precludes treating Holdco as a mere continuation.

*Kenvue.*  Imposition of liability on Kenvue similarly fails at every turn.[8]  For starters, Kenvue did not intend to adopt all of the benefits and burdens of Holdco, much less of Old JJCI.  Moreover, far from immediately dissolving, Kenvue's immediate corporate predecessor, Holdco, still exists.  Plaintiffs write off Holdco as "a 'barren, corporate shell.'"  (Pls.' Opp'n at 34 n.22 (citation omitted).)  That is not alleged in their complaint, however; nor can it be squared with their effort to

---

[8]     Plaintiffs' claim that Kenvue argued differently in New Jersey state court (Pls.' Opp'n at 35) is false.  The sentence they cite, which comes from a discovery dispute, reads (with the portion omitted from plaintiffs' brief in bold): "***Misguided and legally incorrect as it may be***, [p]laintiffs now also have all the information they need, and more, for their successor-liability theory."  (Pls.' Opp'n Ex. E at 5 (citation omitted).)

add Holdco as a defendant or with John Kim's declaration.  (*See* Decl. of John Kim ¶¶ 27-28, *In re LTL Mgmt. LLC*, No. 23-12825-MBK (D.N.J. Apr. 4, 2023) (Defs.' Objs. Ex. 2).)  Plaintiffs offer a bulleted list of things that Kenvue supposedly inherited from Holdco, including manufacturing assets, trademarks, marketing capabilities and "most" employees.  (Pls.' Opp'n at 36.)  But these items cannot outweigh different ownership, the continued existence of Holdco, or the intent of the spin-off transaction.  Plaintiffs also point to testimony that "there w[ere] no 'interruption[s]'" in business (*id*.) as part of the Kenvue spin-off, but it is the corporate entity, not the business, that must continue uninterrupted, *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 542 (D. Del. 1988).

*Janssen.*  Plaintiffs, once again, do not focus on Janssen.  As with Kenvue, liability is unwarranted because Janssen's supposed predecessor, Holdco, still exists and there is no indication that Janssen intended to adopt all the benefits and burdens of Holdco's business.  As to the remaining factors, plaintiffs concede that Janssen "is a pharmaceutical company" in a wholly different line of business from Holdco.  (Pls.' Opp'n at 34 n.22 (citation omitted).)  Beyond common ownership, there is absolutely no continuity between Janssen, Holdco or Old JJCI.

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendants' opening brief, the Court should sustain defendants' objections to the Special Master's order.

Dated: February 13, 2024

Respectfully submitted,

/s/ *Susan M. Sharko*
Susan M. Sharko
**FAEGRE DRINKER
BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Tel.: (973) 549-7000
susan.sharko@faegredrinker.com

Allison M. Brown
Jessica Davidson
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Tel.: (212) 735-3000
allison.brown@skadden.com
jessica.davidson@skadden.com

*Attorneys for Defendants*