UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (MAS) (RLS) |

**SPECIAL MASTER ORDER NO. 19**
**(DECIDING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENA DIRECTED AT NORTHWELL HEALTH, INC.)**

This matter is before the Special Master ("SM") on plaintiffs' "Motion for Protective Order Regarding [J&J's] Subpoena Directed at Northwell Health, Inc." [Dkt. No. 28913] (the "Motion for Protective Order.").[1]  The SM received Johnson & Johnson's ("J&J") Opposition ("Opp."), plaintiffs' Reply, and J&J's Sur-Reply, and recently held oral argument.  Plaintiffs move pursuant to Fed. R. Civ. P. 26(c) for a protective order to bar enforcement of J&J's subpoena directed to Northwell Health, Inc. ("Northwell").  The subpoena directs Northwell to produce two documents that identify the anonymous patients Dr. Jacqueline Moline referred to in her two articles in which she linked exposure to cosmetic talc, including J&J's baby powder, to the mesothelioma contracted by 33 plaintiffs on whose behalf she testified.  For the reasons to be discussed, plaintiffs' Motion for Protective Order is granted with leave given to J&J to re-serve its subpoena if evidence is produced that plaintiffs' trial experts will rely on Moline's articles to support their expert opinions.

**BACKGROUND**

This MDL involves in excess of 50,000 filed claims alleging that the talc in J&J's baby powder contained asbestos and that exposure to the baby powder caused plaintiffs' ovarian cancer.

---

[1] References to "plaintiffs" include the Plaintiffs' Steering Committee who filed the present motion.

J&J steadfastly denies plaintiffs' allegations. In connection with the ongoing proceedings, plaintiffs produced their expert reports. J&J contends that three of plaintiffs' experts (Dr. Rigler, Dr. Plunkett, and Dr. Singh) "rely" on Moline's articles and, therefore, J&J is entitled to know the identities of the individuals studied in Moline's articles in order to discredit Moline's premise that the persons had no known asbestos exposure other than cosmetic talc. Northwell is Moline's former employer and purportedly has possession of the responsive documents.

Although not a designated trial expert in the MDL, Moline has appeared as a trial expert in numerous mesothelioma cases filed against J&J. She is the author of a 2020 article titled "Mesothelioma Associated with the Use of Cosmetic Talc." The article discusses 33 plaintiffs who developed mesothelioma and who brought lawsuits alleging that cosmetic talc was the cause. As noted by J&J, the central premise of Moline's article is that "[t]alcum powder usage was the only source of asbestos for all 33 cases." Opp. at 1 (citation omitted). According to J&J, "[m]any of the individuals in the Moline 2020 [article] used Johnson's Baby Powder and Shower to Shower." Opp. at 6. The SM agrees with J&J's conclusion that if plaintiffs' experts rely on Moline's article, the article "will be used in an attempt to demonstrate that asbestos is present in cosmetic talc," including Johnson's Baby Powder. Id. There is no dispute this is a central issue in this MDL.

Plaintiffs argue that, even though the subpoena is directed to Northwell, they have standing to object to the subpoena. Next, plaintiffs argue J&J's subpoena seeks information that is irrelevant to this ovarian cancer litigation. Third, plaintiffs argue that J&J's subpoena seeks to annoy, harass, and intrude on the privacy interests of non-parties. Last, plaintiffs argue that J&J's subpoena is unduly burdensome, oppressive, and harassing.

J&J's position is that the central premise of Moline's article is false. J&J argues it has matched some anonymous individuals from Moline's article with talc litigation plaintiffs who were exposed to asbestos from non-talc sources. To defend its interests and impeach Moline, J&J seeks to confirm its suspicions by identifying the 33 individuals referenced in Moline's articles. J&J seeks to discredit Moline's premise that the 33 individuals she studied were not exposed to an asbestos source other than cosmetic talc. J&J argues, "[t]he PSC's allegations that asbestos is present in cosmetic talc is a central and hotly disputed issue in this litigation. And as a result, demonstrating that these individuals had other, non-talc exposures to asbestos is critical to explaining how the Articles do not, in fact, demonstrate the presence of asbestos." Opp. at 15 (emphasis in original). To this end, J&J served Northwell with a subpoena asking for the production of the lists identifying the individuals discussed in Moline's articles.[2] J&J argues that plaintiffs do not have standing to object to its Northwell subpoena because plaintiffs are not "assert[ing] [their] own interests." Opp. at 3. J&J also contends that it requests relevant information, no privacy interests are at play, and Northwell faces no burden.

Although Northwell filed written objections to J&J's subpoena (see Plaintiffs' Memo. of Law, Exhibit C), it did not file a motion to quash, nor did it move to intervene to oppose J&J's subpoena. Plaintiffs now move to quash J&J's subpoena pursuant to Rule 26(c).

---

[2] J&J's arguments about the deficiencies in Moline's articles are not fanciful. It has already shown that one subject of Moline's article (Kohr) was exposed to asbestos from a source other than cosmetic talc. Moline recognized her error. See Opp., Exhibit 2. J&J points out, "[t]he falsity of Dr. Moline's article was first laid bare in September 2022 by a federal judge in the District Court for the Middle District of North Carolina." Opp. at 6. See Bell v. Am. Int'l Indus., 627 F.Supp. 3d 520 (M.D.N.C. 2022). In response to Bell, Dr. Moline published a similar article in 2023 titled "Exposure to cosmetic talc and mesothelioma." J&J contends the new article suffers from the same flaws as the first article, e.g., that the referenced subjects were exposed to alternative sources of asbestos other than cosmetic talc. See Opp. at 8-9. Without addressing the merits of Moline's conclusions or J&J's position, the SM recognizes that J&J presents plausible arguments that other subjects of Moline's article suffer from the same problems as Kohr. See Opp. at 8-9.

**LEGAL DISCUSSION**

    **1.    Plaintiffs Have Standing to Seek a Protective Order Regarding J&J's Subpoena Directed to Northwell**

The case law on whether a party has standing under Rule 26(c) to object on relevancy grounds to a subpoena directed to a third-party is far from unambiguous. Both sides present case law supporting their positions. Compare Memo. of Law at 2-3 and Reply at 3-7 with J&J's Reply at 10-13 and Sur-Reply at 3-6. However, the SM finds that its Opinion issued while sitting as a Magistrate Judge in Costantino v. City of Atlantic City, is instructive. C.A. No. 13-6667 (RBK/JS), 2015 WL 12806490 (D.N.J. Nov. 4, 2015). In that case the plaintiff filed a § 1983 excessive force complaint against an Atlantic City police officer. After the officer served a subpoena asking the Atlantic County Prosecutor's Office to produce a Pretrial Intervention Report ("PTI") relating to one of the defendant's victims (Castellani), the plaintiff filed a motion to quash. In opposition to the motion, the defendant argued plaintiff did not have standing to object to the subpoena on relevancy grounds. The SM rejected this argument, reasoning as follows:

> The Court rejects [defendant's] standing argument. The court does not accept the notion that a party can subpoena irrelevant documents in a case with impunity. See Fed. R. Civ. P. 1 (the Court has a duty to construe the Rules of Procedure in a manner to "secure the just, speedy, and inexpensive determination of every action and proceeding."). There is authority for the position that a party can move for a protective order in regard to a subpoena issued to a non-party which seeks irrelevant information. See In re REMEC, Inc. v. Securities Litigation, Civil No. 04cv1948 JLS (AJB), 2008 WL 2282647, at *1 (S.D. Cal. 2008) ("[a] party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information"); Streck, Inc. v. Research & Diagnostic Systems, Inc., No. 8:06cv458, 2009 WL 1562851, at *3 (S.D. Neb. 2009) ("[t]he adverse party has standing to object to a third party subpoena on grounds of relevance"); Washington v. Thurgood Marshall Academy, 230 F.R.D. 18, 22 (D.D.C. 2005) (a party has standing to move for a protective order if a third party subpoena seeks irrelevant information); Firetrace USA, LLC v. Jesclard, 2008 WL 5146691, at **1-2 (D. Ariz. 2008) (analyzing party's right to object to a subpoena to a non-party under Rule 45 and 26 and holding that a party has the right to object

>under Rule 45 asserting a "claim of personal right or privilege" or upon showing "annoyance, embarrassment, oppression or undue burden or expense" under rule 26). Plaintiff should not have to waste any time or effort reviewing or addressing Castellani's irrelevant PTI records. Any effort plaintiff expends on Castellani's irrelevant records is undue. In the interest of justice the Court will deem plaintiff's motion to quash [defendant's] subpoena to be the equivalent of a motion for protective order pursuant to Fed. R. Civ. P. 26(c). See Washington, 230 F.R.D. at 22. Plaintiff has satisfied the good cause requirement under the Rule.

Id. at *3. The SM further reasoned:

>Even if the Court accepts [defendant's] standing argument, which it does not, there is an independent basis to grant plaintiff's motion. A third-party subpoena issued pursuant to Rule 45 is subject to the limitations of Rule 26. Wahoo International, Inc. v. Phix Doctor, Inc., No. 13cv1395-GPC (BLM), 2014 WL 3573400, at *2 (S.D. Ca. July 18, 2014). Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii), the Court has discretion to sua sponte bar discovery if the burden or expense of the discovery outweigh its benefit. This situation exists here since the requested PTI records are irrelevant. Plaintiff should not have to waste an ounce of effort reviewing documents that have nothing to do with the case.

Id. Likewise, in Staff4Jobs, LLC v. List Logistics, LLC, the court granted the plaintiff's request to quash a third-party subpoena on relevancy grounds. C.A. No. 18-13399 (BRM)(LHG), 2020 WL 13580942, at *3-4 (D.N.J. Oct. 19, 2020). The court reasoned that, given its discretion to manage discovery and engage in case management, it had authority under Rule 26 to quash a third-party subpoena requesting irrelevant information. Id. at *3.

For the same reasons the SM rejected the standing defense in Costantino, the SM rejects J&J's standing defense here. The SM does not accept the notion that plaintiffs must stand idly by while J&J subpoenas irrelevant documents. Plaintiffs' interests are impacted by J&J's subpoena since plaintiffs must spend resources addressing discovery directed to Moline. Further, not only does the subpoena have significant implications for related cases that likely directly impact plaintiffs' cases, but the impact of J&J's subpoena on these MDL cases, although unpredictable, could be profound.

2.  **Since Plaintiffs' Experts Do Not Rely on Moline's Articles, J&J's Subpoena to Northwell Requests Irrelevant Information**

Having addressed J&J's standing objection, the SM now turns to plaintiffs' relevancy argument.³ The sine qua non of J&J's opposition is that plaintiffs' experts "rely" on Moline's articles.⁴ If J&J's conclusion is borne out, the SM would be sympathetic to J&J's argument. Whether J&J's talc contains asbestos is at the heart of the case. Moline's articles are directly relevant to this point. If the articles are relied upon by plaintiffs, the articles should be fair game for discovery. As J&J argues, "[b]ecause Dr. Moline claims the individuals in her article had no other exposure to asbestos other than from cosmetic talc, the article purports to support [plaintiffs'] theory that asbestos is present in J&J and others' cosmetic talc products." Opp. at 6. This being the case, if plaintiffs' experts rely on Moline's articles, J&J should have an opportunity to contest Moline's thesis that since the 33 individuals she studied were not exposed to asbestos from other sources, then cosmetic talc was the source of the asbestos. The fact that Moline's article addresses mesothelioma rather than ovarian cancer is of no moment. The premise being addressed is whether asbestos is present in cosmetic talc, an issue that is at the heart of mesothelioma and ovarian claims.

The decision in <u>Bell v. American International Industries</u> is instructive. 627 F.Supp. 3d 520 (M.D.N.C. 2022). As noted in <u>Bell</u>, "[gi]ven the groundbreaking nature of the [Moline] article,

---

³ Plaintiffs' argument that J&J's subpoena is unduly burdensome, oppressive, or harassing is rejected without further discussion. Further, although J&J presents credible arguments that its subpoena does not encroach on anyone's privacy interests, there is no need to rule on the issue since plaintiffs' motion is granted because J&J's subpoena requests irrelevant information.

⁴ <u>See</u> Opp. at 1 ("Multiple Plaintiffs' experts in this litigation rely on an article written by Dr. Jacqueline Moline[.]); Opp. at 3 ("[Plaintiffs'] experts rely on them [Moline's articles]. The articles will be used to support [plaintiffs'] arguments."); Opp. at 9 ("In this MDL, multiple Plaintiffs' experts rely on Dr. Moline's two articles."); Opp. at 10 ("The information sought is highly relevant because plaintiffs' experts rely on the Articles, and they go to a central issue in the case: whether or not asbestos is present in J&J's cosmetic talc products."); Opp. at 14 ("There can be no question in that the information is relevant. <u>Three</u> of plaintiffs' experts in this litigation rely on the Articles."); Opp. at 15 ("[T]he Articles will be used to attempt to show asbestos is present in J&J's talc products."); Sur-Reply at 2 ("[M]ost importantly here, [plaintiffs] ha[ve] put forth multiple experts who rely on the Moline Articles.").

and its express premise that all individuals studied had no known alternative asbestos exposure, the fact that one of the individuals claimed otherwise has direct bearing on the study's credibility." Id. at 530.  Further, the decision noted that Moline's rejection of alternative asbestos exposure evidence is relevant to the potential rate of error in her study and the standards controlling her study's operation." Id. at 531.  If plaintiffs' experts rely on Moline's study, the SM agrees with Bell that, "[t]he absence of any specific information on the identities of the individuals studied precludes inquiry into the basis of the factual underpinning of no known exposure to asbestos other than talcum powder… This is a valid [discovery] purpose, especially given the groundbreaking nature and widespread influence of the article." Id. at 532.  Further, "defendants in cosmetic talc cases deserve a fair opportunity to explore the weight to be assigned to Dr. Moline's facts and conclusions[.]" Id.

Despite the foregoing, however, plaintiffs' motion is granted at this time because J&J has not shown that plaintiffs' experts rely on Moline's articles to support their expert opinions.  At best, the record shows that plaintiffs' experts merely considered Moline's articles along with a wealth of other material in connection with their reports.  There is an important difference between "considering" Moline's articles within the meaning of Rule 26 and "relying" on the articles in support of an expert opinion.  The mere fact that Moline's articles may have been "considered" by plaintiffs' experts and included on a list of materials received and perhaps reviewed does not equate to a reliance on the articles.

Each of plaintiffs' experts produced a lengthy expert report.  Dr. Rigler merely references Moline's 2020 study in his "Document List" along with 127 other documents.  See J&J's Exh. 28.  Dr. Rigler does not cite to Moline's study in her report, and nowhere does she indicate she relies on the study to support her opinions.  As to Dr. Plunkett, Moline's 2020 study is merely included

in her "List of Materials and Data Considered" in her Second Amended Report. See J&J's Exh. 29. Dr. Plunkett does not cite to Moline's study in her report and does not rely on the study. As to Dr. Singh, he merely references Moline in his Appendix of "Included and Excluded Citations." In fact, Dr. Singh excluded Moline's study from consideration because the study's subjects did not have ovarian cancer. See J&J's Exh. 30.

Not only do plaintiffs' expert reports speak for themselves but plaintiffs' briefs unequivocally represent that plaintiffs' experts are not relying on Moline's articles. Plaintiffs write, "[t]he MDL plaintiffs' experts do not rely on Dr. Moline's mesothelioma studies to support their opinions about the link between talcum powder products and ovarian cancer." Memo. of Law at 4 (emphasis in original); see also Reply at 8 ("None of the MDL Plaintiffs' experts rely on Dr. Moline's mesothelioma studies to support any of their opinions."); id. at 9 ("Nor will Dr. Moline's mesothelioma studies be introduced at any MDL ovarian cancer trials."); id. at 11 ("[T]he information sought is irrelevant to ovarian cancer cases, where Dr. Moline is not an expert, and where none of plaintiffs' experts are relying on her studies."); id. at 15 ("Dr. Moline is not an expert in this MDL, and Plaintiffs' experts do not rely on her mesothelioma studies to support their opinions regarding Defendant's talcum powder products causing ovarian cancer or anything else."). Furthermore, Plaintiffs expressly assured J&J and the SM at oral argument that they will not use or seek to introduce Moline's articles at trial.

The fact that plaintiffs' experts listed Moline's article in the attachments to their expert reports is not surprising or controlling. Fed. R. Civ. P. 26(a)(2)(B)(ii) provides that, "the facts or data considered by the [expert] witness" in forming his/her opinions must be disclosed. The term "considered" is given a broad definition and includes all information a testifying expert "generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinion, even

if such information is ultimately rejected." In re Benicar (Olmesartan) Products Limited Liability Litigation, 319 F.R.D. 139, 141 (D.N.J. 2017) (citation omitted). In essence, Rule 26(a)(2)(B)(ii) requires the identification of all documents provided to testifying experts. Id. (citations omitted). Plaintiffs complied with the requirements in Rule 26 by identifying the materials produced to their experts. The fact that Moline's articles may have been produced and perhaps "considered" is different from the conclusion that the experts "relied" upon Moline's articles. Although not dispositive, the fact that Moline's articles are not mentioned in the experts' lengthy reports is instructive.

J&J faults plaintiffs because they have "not committed that [they] will not use or refer to Dr. Moline's Articles during trial." See Sur-Reply at 6. This, however, has been cured by plaintiffs' representation at oral argument and its offer to enter into a binding stipulation to this effect. Speculation that plaintiffs might refer to Moline's articles at trial is not a sufficient basis to permit irrelevant discovery. In the face of plaintiffs' current representations, in the unlikely event plaintiffs' experts attempt to rely on Moline's articles at trial, the trial judge can address the issue.

None of the new arguments J&J raised during oral argument are persuasive. Even if J&J chooses to refer to Moline's articles at trial, that will not open the door to discovery about articles that plaintiffs have disavowed. Further, whether counsel in remanded trials are bound by plaintiffs' representations here will be decided by each trial judge, not this court. The trial judges have the discretion to permit the requested discovery as appropriate.

At bottom, Moline will not testify at trial, her articles are not relied upon by plaintiffs' trial experts, and plaintiffs have unequivocally represented that they will not use or rely on Moline's

articles at trial. The requested discovery asking to identify the subjects of Moline's articles is therefore irrelevant.

**CONCLUSION**

The SM finds that plaintiffs have standing to object to J&J's subpoena directed to Northwell, that the subpoena requests irrelevant information, and good cause exists to grant plaintiffs' motion. Accordingly, plaintiffs' Motion for Protective Order is granted.

## ORDER

For all the foregoing reasons, it is hereby ORDERED this 29th day of February, 2024, that plaintiffs' Motion for Protective Order Regarding J&J's Subpoena Directed at Northwell Health, Inc. is GRANTED and a protective order is entered barring enforcement of the subpoena; and it is further

ORDERED that this Order is entered without prejudice to J&J's right to re-serve its subpoena if evidence is produced that plaintiffs' trial experts will rely on Moline's articles to support their expert opinions; and it is further

ORDERED that this Order does not address the admissibility of plaintiffs' experts' testimony at trial in the event they rely on Moline's articles, and whether the requested discovery is permitted if plaintiffs change course.

Dated: February 29, 2024     By: *s/Joel Schneider*
                                  SPECIAL MASTER
                                  HON. JOEL SCHNEIDER (RET.)