# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS<br><br>MDL Case No. 2738<br><br>Motion Day: April 1, 2024<br><br>**Oral Argument Requested** |

**DEFENDANTS JOHNSON & JOHNSON'S AND LLT MANAGEMENT LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH OR FOR PROTECTIVE ORDER FROM SUBPOENA DIRECTED TO PWC**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................3

    A.    The Communications Sought By The PSC Are Protected Work Product..........................................................................................4

    B.    The Communications Sought By The PwC Subpoena Are Protected By the Attorney-Client Privilege. .........................................6

    C.    J&J Is Not Required To Produce A Privilege Log Because All Responsive Communications Are Protected. .........................................9

    D.    The Only Plausible Purpose Of The Subpoena Is To Vex And Harass. ................................................................................................10

CONCLUSION .....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cobell v. Norton*,
  237 F. Supp. 2d 71 (D.D.C. 2003) .................................................................... 9

*Davine v. Golub Corp.*,
  2017 WL 517749 (D. Mass. Feb. 8, 2017) ........................................................ 8

*Doe v. Cabrera*,
  139 F. Supp. 3d 472 (D.D.C. 2015) .................................................................. 9

*ExteNet Sys., Inc. v. Twp. of N. Bergen*,
  2021 WL 5782977 (D.N.J. Dec. 7, 2021) ......................................................... 3

*Grider v. Keystone Health Plan Central*,
  580 F.3d 119 (3d Cir. 2009) ............................................................................ 10

*Gutter v. E.I. Dupont de Nemours & Co.*,
  1998 WL 2017926 (S.D. Fla. May 18, 1998) ................................................... 7

*Hickman v. Taylor*,
  329 U.S. 495 (1947) .......................................................................................... 4

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
  2023 WL 8595741 (D.N.J. Oct. 16, 2023) ........................................................ 8

*In re Cendant Corp. Sec. Litig.*,
  343 F.3d 658 (3d Cir. 2003) ......................................................................... 4, 5

*In re Flonase Antitrust Litig.*,
  879 F. Supp. 2d 454 (E.D. Pa. 2012) ................................................................ 8

*In re G-I Holdings, Inc.*,
  218 F.R.D. 428 (D.N.J. 2004) ........................................................................... 8

*In re Grand Jury Matter #3*,
  847 F.3d 157 (3d Cir. 2017) ......................................................................... 4, 5

*In re Hubbard*,
  803 F.3d 1298 (11th Cir. 2015) ...................................................................... 10

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices, and Products Liability Litig.*,
   2021 WL 3144945 (D.N.J. July 26, 2021) ................................................... 5, 9

*In re Niaspan Antitrust Litig.*,
   2017 WL 3668907 (E.D. Pa. Aug. 24, 2017) ..................................................... 6

*In re Pfizer Inc. Sec. Litig.*,
   1993 WL 561125 (S.D.N.Y. Dec. 23, 1993) ...................................................... 7

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
   2021 WL 1649894 (E.D. Pa. Apr. 16, 2021), *report and recommendation adopted*, 2021 WL 1628127 (E.D. Pa. Apr. 27, 2021) ......................................... 8

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   237 F.R.D. 176 (N.D. Ill. 2006) ......................................................................... 6

*Martin v. Bally's Park Place Hotel & Casino*,
   983 F.2d 1252 (3d Cir. 1993) ............................................................................. 5

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   229 F.R.D. 441 (S.D.N.Y. 2004) ....................................................................... 6

*Ramos v. Walmart, Inc.*,
   2023 WL 2327208 (D.N.J. Mar. 2, 2023) .......................................................... 3

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ............................................................................. 6

*United States v. Kovel*,
   296 F.2d 918 (2d Cir. 1961) ............................................................................... 7

*United States v. Nobles*,
   422 U.S. 225 (1975) ........................................................................................... 4

*Westinghouse Elec. Corp. v. Republic of Philippines*,
   951 F.2d 1414 (3d Cir. 1991) ............................................................................. 7

**Other Authorities**

1 Testimonial Privileges (3d ed.) ............................................................................. 7

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

Ann. Manual for Complex Litig., Fourth, § 10.221 ...............................................11

Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment...............................5

**Rules**

Fed. R. Civ. P. 26(g)(1)(B)(ii) ................................................................................11

L.R. 37.1...................................................................................................................2

**Statutes**

N.J. Stat. Ann. § 45:2B-65......................................................................................7

## INTRODUCTION

The third-party subpoena served by the Plaintiffs' Steering Committee ("PSC") to Johnson & Johnson's auditor PricewaterhouseCoopers ("PwC") should be quashed because (i) it seeks documents covered by the attorney work product protection and attorney-client privilege, and (ii) the PSC failed to articulate any rationale for its document demands—in utter disregard of its meet-and-confer obligations—and no legitimate rationale exists.

Johnson & Johnson ("J&J") is required to evaluate its potential legal liabilities and to disclose those potential liabilities and their value in certain circumstances.[1] Declaration of Erik Haas ("Haas Decl.") ¶ 3.  J&J hired PwC to audit its compliance with those disclosure requirements.  *Id.* ¶ 5.  PwC was thus charged with evaluating whether the Company's potential talc liabilities require disclosure and, if so, to estimate the value of those potential liabilities for disclosure purposes.  *See id.* ¶ 5. To guide PwC in its analysis, J&J shared its *own* assessment of the legal landscape facing the Company.  *Id.* ¶ 7.  In every respect, PwC's analysis was built on and suffused with J&J's own assessment of its potential talc-related legal liabilities in documents prepared because of the prospect of ongoing litigation.  *See id.*

---

[1] *See, e.g.,* Financial Accounting Standards Board's Accounting Standards Codification, 450-20-55-10.

1

The PSC is now demanding that PwC turn over those communications. Instead of subpoenaing J&J directly for its communications with PwC, the PSC subpoenaed PwC to produce "[a]ll communications between J&J, its internal and external advisors and PWC regarding its contingent liability for J&J's talcum powder products including, but not limited to, the process for removing said talc liability from its balance sheet (or consolidated balance sheet)." PwC Subpoena Schedule A at 4. The PSC's subpoena thus asks in no uncertain terms for PwC to produce communications containing J&J's confidential legal assessment of potential liabilities from this litigation. That is wholly improper. The PSC is not entitled to know how J&J has assessed the viability and value of plaintiffs' claims. That information is protected work product and privileged.

The PSC has not stated[2] and cannot articulate a reason why it is entitled to know J&J's assessment of (a) "its contingent liability for … talcum powder products" or (b) what it would take to "remov[e] said talc liability from its balance sheet." That information is part-and-parcel of J&J's legal assessment of the claims in this litigation and, as courts have held time and again, J&J's adversary cannot be

---

[2] The meet-and-confer process has confirmed that the PSC issued its subpoena for an improper purpose. Instead of offering in good-faith a non-protected reason why the PSC is entitled to this information (which would be impossible since there is no such reason), the PSC stated instead that it would explain the basis for its subpoena *after* J&J moved this Court for relief. That is the exact opposite of how the meet-and-confer process is supposed to work. The point of meeting and conferring is to resolve disputes *before* going to Court. *See* L.R. 37.1. That is impossible if one side refuses to state the basis for its position.

2

allowed to discover it.  For these reasons and those that follow, the Court should quash the subpoena or issue a protective order.

## ARGUMENT

The PSC's subpoena seeks "communications between J&J, its internal and external advisors and PWC" regarding J&J's "contingent liability for J&J's talcum powder products including, but not limited to, the process for removing said talc liability from its balance sheet (or consolidated balance sheet)."  PwC Subpoena Schedule A at 4.  By its terms, the subpoena seeks to discover how J&J evaluates the strength and value of talc plaintiffs' claims, including the total amount necessary to achieve global resolution and remove those liabilities from J&J's balance sheet.  In no universe is the PSC, J&J's litigation adversary, entitled to that information.  It is protected work product and shielded by the attorney-client privilege.

Accordingly, J&J moves under Rules 45(d) and 26(c) for an order quashing the subpoena or, in the alternative, for a protective order.  *See ExteNet Sys., Inc. v. Twp. of N. Bergen*, 2021 WL 5782977, at *2 (D.N.J. Dec. 7, 2021) (party has standing to move to quash third-party subpoena on "privilege or privacy" grounds); *see also Ramos v. Walmart, Inc.*, 2023 WL 2327208, at *3 & n.3 (D.N.J. Mar. 2, 2023) (similar for a protective order).  And because the only information responsive to the PSC's subpoena is shielded by these doctrines, J&J's motion should be granted outright; no privilege log is required.  Indeed, the PSC's litigation conduct reveals

3

that the only possible purpose of the subpoena could be to vex and harass both J&J and PwC, each of which served objections to the subpoena on February 28, 2024. *See* Declaration of Stephen D. Brody ("Brody Decl.") ¶¶ 3–4, Exs. 1 and 2.

### A. The Communications Sought By The PSC Are Protected Work Product.

In our adversarial system, a party is not entitled to build its case off of the insights and preparations of the opposing party's counsel. *See Hickman v. Taylor*, 329 U.S. 495, 514 (1947); *see also In re Grand Jury Matter #3*, 847 F.3d 157, 165 (3d Cir. 2017). The work product doctrine prevents this outcome by shielding from discovery "'the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238 & n.11 (1975)).

Importantly, work-product protection is *not* limited to documents created by lawyers. Attorneys often must rely on the assistance of third-party professionals such as consultants, auditors, and accountants to render legal advice to their clients. *See id.* at 662 (citing *Nobles*, 422 U.S. at 238–39). The work-product doctrine accordingly "extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants," *id.*, so long as that material contains "the mental impressions, conclusions, opinions, or legal theories

4

concerning the litigation of an attorney or other [party representative]," Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment.[3]

That is precisely what the PSC is asking PwC to produce. To guide PwC in its analysis, J&J shared with PwC its own "mental impressions, conclusions, and opinions" about its potential liability in the talc litigation, including the value of the underlying claims—the ultimate issues in the talc litigation. All communications between J&J and PwC about this subject contain J&J's work product. *See In re Cendant Corp.*, 343 F.3d at 662 (citing Fed. R. Civ P. 26, Advisory Comm. Notes, 1970 Amendment). The PSC is essentially asking to discover how J&J values its adversary's claims through a back-door subpoena to its auditor. The PSC obviously could not issue such a subpoena directly. That the PSC seeks the same information from a third-party makes no difference. All of the information responsive to the subpoena that the PSC seeks is protected work product.

---

[3] Courts in this Circuit routinely find communications with non-lawyer third parties to be protected from disclosure by the work product doctrine. *See In re Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices, and Products Liability Litig.*, 2021 WL 3144945, at *9 (D.N.J. July 26, 2021) (J&J did not waive work product protections by disclosure to public relations consultant because consultant was "necessary to advance the representation" (internal quotation marks omitted)); *see also, e.g.*, *In re Cendant Corp.*, 343 F.3d at 667 (communications between deponent, counsel, and trial consultant protected work product where "[t]he communications took place" during a consultation that focused on issues "central to the case"); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261–62 (3d Cir. 1993) (technical report prepared by consulting firm is work product exempt from disclosure because it was prepared in anticipation of litigation by consultant); *In re Grand Jury Matter #3*, 847 F.3d at 165 (forwarding email between client and attorneys to client's accountant protected work product because it was used to prepare for client's case).

5

Courts around the country have reached the same conclusion, finding that where, as here, documents "can fairly be said to have been prepared or obtained *because of* the prospect of litigation," they constitute attorney work product. *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998) (emphasis in original). Importantly, disclosing those materials to an outside auditor does not constitute waiver or change the analysis. *In re Niaspan Antitrust Litig.*, 2017 WL 3668907, at *5 (E.D. Pa. Aug. 24, 2017) (finding that disclosure of litigation-related materials to an auditor does not waive work product protection); *see also*, e.g., *Merrill Lynch & Co. v. Allegheny Energy, Inc.,* 229 F.R.D. 441, 446 (S.D.N.Y. 2004) (disclosure to auditors did not constitute waiver of work product protection); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 237 F.R.D. 176, 183 (N.D. Ill. 2006) ("the fact that an independent auditor must remain independent from the company it audits does not establish that the auditor also has an adversarial relationship with the client" so as to constitute a waiver under the work product doctrine).

**B.    The Communications Sought By The PwC Subpoena Are Protected By The Attorney-Client Privilege.**

The subpoena is improper for the independent reason that responsive communications are protected by the attorney-client privilege. While there is no general privilege protecting communications between clients and their outside auditors and courts have held the attorney-client privilege inapplicable to those communications in various circumstances, *see, e.g., Gutter v. E.I. Dupont de*

6

*Nemours & Co.,* 1998 WL 2017926 (S.D. Fla. May 18, 1998) (but finding communications protected as work product); *In re Pfizer Inc. Sec. Litig.*, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993), the attorney-client privilege applies where, as here, the third-party is acting as the agent of counsel to assist in formulating legal advice for the client.  § 3:5 Risk of waiver of attorney-client privilege and work product protection through disclosure to auditors, 1 Testimonial Privileges (3d ed.); *see also, e.g.*, *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961); *cf.* N.J. Stat. Ann. § 45:2B-65 (establishing expectation of confidentiality by providing that "no licensee or partner, officer, member, manager, shareholder, or employee of a licensee or firm shall disclose information communicated to the licensee or firm by the client relating to and in connection with services rendered to the client by the licensee or firm in the practice of public accountancy").[4]

Communications are also protected if the disclosure "is necessary to further the goal of enabling the client to seek informed legal assistance." *Westinghouse*, 951 F.2d 1414, 1428 (3d Cir. 1991).  Specifically, where a consultant is retained to serve as a "translator or interpreter" between the attorney and client to help facilitate the rendering of legal advice, communications between the party and the consultant are

---

[4] Although the Third Circuit found waiver of the attorney-client privilege where a defendant forwarded an email to his accountant in *In re Grand Jury Matter #3*, it did so based on the fact that the defendant had not done so for the purpose of obtaining (or as relevant here, rendering) legal advice.  847 F.3d at 161.  The Third Circuit found that the forwarded attorney communication was, however, protected from disclosure by the work product doctrine.  *Id.* at 165.

7

protected by the attorney-client privilege. *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 2023 WL 8595741, at *8–9 (D.N.J. Oct. 16, 2023); *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 434–35 (D.N.J. 2004).

J&J enlisted PwC to apply accounting contingency standards to evaluate the universe of potential claims against J&J under the ASC 450 standard. The communications between J&J and PwC about the Company's talc liabilities were specifically designed to facilitate the provision of advice from J&J's Law Department, which is responsible for the financial accounting disclosures pertaining to J&J's potential liabilities arising from anticipated or actual litigation. *See* Haas Decl. ¶¶ 4, 7.

Courts regularly hold that where, as here, a non-attorney consultant helps advise a company "for the purpose of securing legal advice,"[5] those communications are protected by the attorney-client privilege. *See, e.g.*, *Davine v. Golub Corp.*, 2017 WL 517749, *6 (D. Mass. Feb. 8, 2017) (substantive communications from consultant hired to assist counsel in advising client on how to comply with statutory and regulatory requirements were protected by the attorney-client privilege); *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 456–57, 459–60 (E.D. Pa. 2012)

---

[5] *See In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 2021 WL 1649894, at *1 (E.D. Pa. Apr. 16, 2021), *report and recommendation adopted*, 2021 WL 1628127 (E.D. Pa. Apr. 27, 2021) (communication is privileged where rendered for purpose of securing legal advice rather than business advice).

(company's communications with consultant about "legal and regulatory issues" may be protected by attorney-client privilege). Indeed, in this very matter, this Court has protected J&J's confidential communications with an external consultant from disclosure upon finding that "it was necessary for J&J's attorneys to communicate with J&J's outside [] consultants to render legal assistance." *In re Johnson & Johnson*, 2021 WL 3144945 at *9. The Court should reach the same conclusion here. *See id.* (recognizing that "the realities and practicalities of corporate life" often require consultations with third-parties "for in-house counsel to render informed and competent legal advice").

### C.  J&J Is Not Required To Produce A Privilege Log Because All Responsive Communications Are Protected.

This Court recently ordered the PSC to produce a privilege log documenting its objections to a subpoena issued by J&J to third-party KCIC. Special Master Order No. 18, ECF No. 29077 at 3. A privilege log was required both because the communications sought from KCIC are "'reasonably calculated to lead to discovery of admissible evidence in support of a pending or contemplated motion for disqualification,'" *Doe v. Cabrera*, 139 F. Supp. 3d 472, 478 (D.D.C. 2015) (quoting *Cobell v. Norton*, 237 F. Supp. 2d 71, 101 n. 26 (D.D.C. 2003)), and because not all documents responsive to that subpoena are protected—indeed, the PSC did not even know which documents were and were not protected because it had never seen them.

9

This subpoena is different. Unlike the communications at issue in the KCIC subpoena, the subpoena expressly seeks "communications between J&J" and its accountant and all of the communications here are protected. There are no communications about J&J's potential "liability for … its talcum powder products" or "remov[al of] said talc liability from its balance sheet" that are not work product or privileged. And where every responsive document is protected, a privilege log would serve no purpose and is not required. *Cf. In re Hubbard*, 803 F.3d 1298, 1311 (11th Cir. 2015) ("Because the only remaining claim in AEA's lawsuit struck at the heart of the legislative privilege, and none of the information sought could have been outside the privilege, there was no need for the lawmakers to peruse the subpoenaed documents, to specifically designate and describe which documents were covered by the legislative privilege, or to explain why the privilege applied to those documents."); *Grider v. Keystone Health Plan Central*, 580 F.3d 119, 139 n.22 (3d Cir. 2009) (noting privilege log "may not be required for communications with counsel that take place after the filing of a lawsuit").

### D. The Only Plausible Purpose Of The Subpoena Is To Vex And Harass.

The PSC's litigation conduct confirms that its attempt to subpoena PwC to discover how J&J values talc plaintiffs' claims serves no valid purpose. To start, the PSC refused during meet-and-confer discussions to articulate a reason why it thought that information was relevant. That violates the spirit, if not the letter, of

10

this Court's Local Rules. But it is not surprising. Indeed, when it sought to quash J&J's subpoena to KCIC, the PSC took the position that discovery of communications with KCIC would be "both irrelevant and inadmissible in this MDL." PSC Reply in Support of Mot. to Quash KCIC Subpoena, ECF No. 28953 at 3.

Given that the PSC is thus far unwilling even to articulate a reason why it would be entitled to the information it seeks, the only possible conclusion is that the subpoena is meant to "harass" J&J and PwC and "needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). At best, the PSC issued a subpoena for the purpose of issuing a subpoena. At worst, the PSC tactically issued the subpoena in the hopes of marshaling evidence that it could use to oppose another effort to resolve this litigation through the bankruptcy process. Either way, discovering the other side's work product and privileged communications—on a matter as fundamental as the strength and value of potential claims—is not a "[]proper purpose," *id.*, worthy of a steering committee that is tasked above all with "achieving efficiency and economy without jeopardizing fairness to the parties." Ann. Manual for Complex Litig., Fourth, § 10.221 at 25. This is true no matter how much the lawyers on the PSC stand to profit personally by opposing bankruptcy-structured resolutions that are supported by the vast majority of plaintiffs in this MDL.

The subpoena should be quashed.

## CONCLUSION

For the foregoing reasons, J&J respectfully requests that this Court grant J&J's motion to quash the subpoena directed at PwC or, in the alternative, issue a protective order.

Dated: February 29, 2024               Respectfully submitted,

*/s/ Stephen D. Brody*
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com

Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.:  973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson and LTL Management, LLC n/k/a LLT Management LLC*