**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>*THIS DOCUMENT RELATES TO ALL CASES* | **MDL No. 3:16-2738 (MAS) (RLS)**<br><br>Motion Day: April 01, 2024 |

**THE PSC'S RESPONSE IN OPPOSITION
TO DEFENDANTS' JOHNSON & JOHNSON'S AND LLT MANAGEMENT
LLC'S MOTION TO QUASH OR FOR PROTECTIVE ORDER
FROM THE SUBPOENA DIRECTED AT PWC**

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC"), submit this Opposition in response to Johnson & Johnson's and LLT Management LLC's ("Defendants") Motion to Quash or for Protective Order Regarding Subpoena[1] served by PSC on non-party PricewaterhouseCoopers LLP ("PwC") on February 15, 2024.

## INTRODUCTION

On February 15, 2024, the PSC served a subpoena on non-party PwC seeking the production of "[a]ll communications between J&J, its internal and external

---

[1] References to this motion and its corresponding memorandum are hereinafter referred to as "Defendants' Motion."

1

advisors and PwC regarding its contingent liability for J&J's talcum powder products including, but not limited to, the process for removing said talc liability from its balance sheet (or consolidated balance sheet)." In response to the subpoena, Defendants filed a motion to quash the subpoena or for a protective order, challenging the relevancy of the information sought and claiming the requested communications are shielded from discovery by the attorney-client privilege and work-product doctrine.

As discussed below, the information sought here—assessments of Defendants' talc liability—is similar to information sought by Defendants in the subpoena served on non-party KCIC, LLC, which implicates ovarian cancer counsel's internal value assessments of ovarian cancer claims. If ovarian cancer counsels' damages assessments are found to be discoverable, so too should Defendants' liability assessments. Defendants have put the question of their ability to resolve their talc liability at issue, including in this MDL, by initiating two bad faith bankruptcy cases and now publicly threatening to file a third bankruptcy case and bring this litigation to a standstill yet again. Documents pertaining to assessments of Defendants' talc liability, including their liability in this MDL, are directly relevant to that question.

The PSC does not seek privileged information about Defendants from PwC. The PSC seeks factual financial and business information, which is not privileged.

Defendants retained PwC to audit their compliance with required disclosures under the Financial Account Standard Board's Accounting Standards Certification Topic 450 ("ASC 450"), not in anticipation of litigation. *See* Declaration of Erik Haas ¶ 5. This information—auditors' independent financial opinions—constitutes a business matter, not a legal matter, and the attorney-client privilege and work-product doctrine do not attach. Regardless, to the extent Defendants attempt to rely on any privilege to shield responsive documents from production, they are required to produce a privilege log. They have not done so. The Court should deny Defendants' Motion because the information at issue is relevant, and Defendants should be required to produce a privilege log for any documents they claim are privileged.

## ARGUMENT

### 1. The Documents Sought Are Relevant.

The information sought here is similar to information sought by Defendants in the subpoena served on non-party KCIC, LLC, which is currently the subject of the PSC's Motion to Quash or for Protective Order. Rec. Doc. 28912. Certain KCIC documents at issue include ovarian cancer counsel's own damage and value assessments of ovarian cancer claims in the second LTL bankruptcy case. The PSC has invoked the mediation privilege with respect to those documents. However, if the Court determines that those documents are discoverable, so too should

3

Defendants' own non-privileged assessments of their liability for talc ovarian cancer claims be discoverable.

Defendants are publicly threatening to file a third Chapter 11 bankruptcy.[2] Given the dismissal of Defendants' first two bad faith bankruptcies, the PSC is concerned about the delay and prejudice that would result to the MDL plaintiffs if Defendants file yet another bankruptcy case. Contrary to Defendants' assertions, the PSC seeks the requested communications to determine the validity behind Defendants' claims about its solvency, not as a "back door" scheme to uncover Defendants' attorneys' legal theories. The crux of Defendants' solvency claims is the aggregate potential dollar cost of Defendants' talc liability, which is exactly what Defendants retained PwC to evaluate.

Defendants have put the aggregate potential dollar cost of their talc liability squarely at issue, not only with their ongoing threats of bankruptcy, but also by serving a subpoena for documents from non-party KCIC that potentially implicate ovarian cancer counsels' opinions and assessments of the value of ovarian cancer cases. If any of that information is ultimately disclosed, Defendants' own

---

[2] *See, e.g.*, J&J Weighs Third Bankruptcy Try to Settle Baby Powder Suits, October 18, 2023, Bloomberg, https://www.bloomberg.com/news/articles/2023-10-17/j-j-weighs-third-bankruptcy-to-resolve-tainted-baby-powder-suits (last accessed Mar. 17, 2024).

4

assessments should be as well. Defendants should not be permitted to have it both ways.

### 2. The Communications Sought Are Not Shielded by the Attorney Work-Product Doctrine.

Defendants argue that the documents the subpoena requests are not discoverable under the attorney work-product doctrine. In a blanket assertion, Defendants state that <u>all</u> communications between Defendants and PwC requested by the subpoena contain Defendants' attorneys' work product. But the work-product doctrine does not apply here.

"A party seeking to invoke the work-product doctrine must prove at least the following two elements: first, that a document was prepared because of reasonably anticipated litigation; and second, that the material was prepared because of the prospect of litigation <u>and for no other purpose</u>." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2021 WL 3144945, at *4 (D.N.J. July 26, 2021) (emphasis added); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008) (describing the second inquiry of the attorney work-product test as "whether the documents were prepared <u>primarily for the purpose of litigation</u>" (quotations omitted) (emphasis added)); *Graco, Inc. v. PMC Glob., Inc.*, 2011 WL 666048, at *18 (D.N.J. Feb. 14, 2011) (same).

5

Defendants acknowledge that they retained PwC to audit their compliance with Defendants' requirement to make certain financial disclosures regarding potential talc liabilities and the estimation of those liabilities under the Financial Account Standard Board's Accounting Standards Certification Topic 450 ("ASC 450"). Defendants' Motion at 1. The communications between Defendants and PwC were therefore <u>not</u> made in anticipation of litigation, but for a completely independent business purpose. *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1265–66 (3d Cir. 1990) ("Federal Rule of Civil Procedure 26(b)(3) makes clear . . . the necessity that the materials be prepared in anticipation of litigation, and not 'in the ordinary course of business, or pursuant to public requirements unrelated to litigation.'" (citing *United States v. El Paso Co.*, 682 F.2d 530-34 (5th Cir. 1982)); *El Paso*, 682 F.2d at 542 (summary of defendant's contingent liability for additional taxes was not protected by the work-product doctrine because the primary motivating force behind the creation of the documents "not to ready [defendant] for litigation" but "to bring its financial books into conformity with generally accepted auditing principles."); *see also United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29-30 (1st Cir. 2009) (en banc) (holding that tax accrual papers were not work product because they were not prepared "<u>for use</u> in litigation" (emphasis added)). Because the communications between Defendants and PwC were made for

6

the purpose of an independent audit regarding ASC 450 compliance and not in anticipation of litigation, the work-product doctrine does not apply.

Moreover, Defendants' argument that PwC's analysis was "built on and suffused with J&J's own assessment of its potential talc-related legal liabilities in these documents prepared because of the prospect of ongoing litigation," Defendants' Motion at 1, makes no difference. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 220 (N.D. Ill. 2013) ("[Party's] generic description that the documents contained financial analysis 'based in part on and reflecting advice of counsel' is insufficient to establish that the work product doctrine attaches."). Even if this were to somehow render the work-product doctrine applicable (which it does not), auditors are retained to give their independent opinion, and so PwC's conclusions, necessarily, do not reflect those of Defendants. *See Medinol, Ltd. v. Bos. Sci. Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002) ("The auditor's review supports the auditor's independent opinion about the fairness of the company's financial reports, not the audited company's litigation interests."). And even if Defendants' mental impressions could be said to be "suffused" into PwC's communications, "[t]he purpose of the work product doctrine . . . is not violated by allowing discovery of documents that incorporate a lawyer's thoughts in, at best, such an indirect and diluted manner." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987).

Last, the substance of what the PSC seeks—the underlying facts of business and financial information concerning Defendants' talc liability—is not covered by the work-product doctrine. While the doctrine provides protection for legal strategies and mental impressions developed by an attorney in anticipation of litigation, it does not extend this protection to the underlying factual information contained within such work. *See Koch Materials Co. v. Shore Slurry Seal, Inc.,* 208 F.R.D. 109, 122 (D.N.J. 2002) (explaining that a party may not withhold relevant factual information on the basis of attorney work product).

### 3. The Communications Sought Are Not Shielded By The Attorney-Client Privilege.

Defendants also attempt to shield their communications with PwC under the guise of the attorney-client privilege. Although the attorney-client privilege is designed to protect communications between <u>attorneys</u> and their <u>clients</u>, Defendants argue that their communications with PwC are protected because they were "necessary to further the goal of enabling the client to seek informed legal assistance."[3] *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1428 (3d Cir. 1991). According to Defendants, they needed PwC "to facilitate the provision of advice from J&J's Law Department, which is responsible for the

---

[3] In *Westinghouse*, the court acknowledged a specific extension of the attorney-client privilege – namely that the client may allow disclosure to an "agent" assisting the attorney in giving legal advice to the client without waiving the privilege. 951 F.2d at 1424.

8

financial accounting disclosures pertaining to J&J's potential liabilities arising from anticipated or actual litigation." Defendants' Motion at 8.

First, Defendants' required disclosures under the ASC 450 constitute a business matter, not a legal matter, so the attorney-client privilege does not attach. *See Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008) ("Communications which relate to business rather than legal matters do not fall within the protection of the privilege." (quotations omitted)); *see also IQVIA, Inc. v. Veeva Sys., Inc.*, 2019 WL 2083305, at *5 (D.N.J. May 13, 2019) (no attorney-client privilege where audit was intended to inform company's business decision). It makes no difference that Defendants' Law Department is responsible for making such disclosures. *See Rowe v. E.I. duPont de Nemours & Co.,* 2008 WL 4514092, at *1 (D.N.J. Sept. 30, 2008) (noting that modern in-house counsel "participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues" (quotations omitted)).

Second, this Circuit construes the third party "agent" extension of the attorney-client privilege narrowly, requiring parties asserting the privilege to "demonstrate that the third party's involvement [is] necessary to the lawyer's provision of legal advice," meaning the agent must evaluate the information and translate or interpret it for the attorney. *Graco*, 2011 WL 666048, at *16 (quotations

9

omitted) (emphasis added); *see also IQVIA, Inc.*, 2019 WL 2083305, at *5 (noting that the Third Circuit has "been loath to construe the privilege broadly and has viewed what assists an attorney in rendering legal advice narrowly"); *In re G-I Holdings Inc.*, 218 F.R.D. 428, 435 (D.N.J. 2003) (holding that a tax consultant must <u>facilitate communications</u> between attorney and client to qualify as an agent). In *In re G-I Holdings Inc.*, the court found that the attorney-client privilege did not apply to communications with a tax consultant because the company's lawyers had merely "sought [the consultant's] expertise, which they could then use on their own" to advise the company, so the consultant hadn't facilitated communications with the client. *Id.*

Defendants—by their own admission—were seeking <u>PwC's advice</u> on its compliance with ASC 450. *See* Declaration of Erik Haas ¶ 5. "If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no [attorney-client] privilege exists." *IQVIA, Inc.*, 2019 WL 2083305, at *4-5 (ellipses in original) (quotations omitted) ("[W]hile [the auditor] was providing services for the provision of legal advice by the IQVIA legal department, the professional conclusion . . . being sought was that of [the auditor] not IQVIA's legal team."). The attorney-client privilege does not apply.

### 4. Defendants Are Required To Produce A Privilege Log.

In addition to arguing that the work-product doctrine and attorney-client privilege apply (which they do not), Defendants assert that they are not required to produce a privilege log identifying the basis of their privilege objections to documents responsive to the subpoena.

But the Third Circuit is clear that claims of privilege "must be asserted document by document, rather than as a single, blanket assertion."[4] *See Rockwell Int'l,* 897 F.2d at 1265; *Hinsinger* v. *Conifer Insurance Co.,* 2024 WL 866529, at *8 (D.N.J. Feb. 29, 2024) ("[A] party or non-party seeking to withhold purportedly protected communications bears the burden of showing that a privilege applies to each communication in question." (emphasis added)); *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208–09 (D.N.J. 1996) ("The Third Circuit has rejected broadside invocations of privilege which fail to designate with particularity the specific documents or file to which the claim of privilege applies." (cleaned up)); *Schaeffer*

---

[4] In fact, the only Third Circuit authority Defendants can point to in "support" of their position is a footnote in *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 139 n. 22 (3d Cir. 2009). There, the Court acknowledged that "a privilege log may not be required for communications with counsel that take place after the filing of a lawsuit." *Id.* What Defendants failed to mention, however, was the Court's regard to the specific context where counsel agree to omit from the privilege log documents created by outside or in-house counsel after the litigation has commenced. *Id.*

11

*v. Tracey*, 2017 WL 465913, at *3 (D.N.J. Feb. 2, 2017) (The production of an inadequate privilege log or none at all, 'is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver to the privilege.'" (citing Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment)).

Defendants has not provided a sufficient basis to avoid this long-standing requirement. Defendants must produce a privilege log, just as the PSC produced a privilege log once they had access to non-party KCIC's documents and were able to review and identify the specific documents covered by the mediation privilege. Presumably, Defendants are already in possession of all documents exchanged with PwC. And if they are not, they can review any responsive documents provided by PwC in response to the subpoena and create a privilege log, just as the PSC did with KCIC's produced documents.

## CONCLUSION

For the foregoing reasons, the PSC respectfully asks that this Court deny Defendants' Motion to Quash or for Protective Order from the Subpoena Directed at PwC. The subpoena seeks relevant factual financial information and is not protected by any privilege. To the extent Defendants invoke privilege, they should be required to produce a privilege log.

Dated: March 18, 2024                    Respectfully submitted,

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com

***Plaintiffs' Co-Lead Counsel***

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com

***Plaintiffs' Liaison Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt