# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY
LITIGATION

Case No. 3:16-md-2738-MAS-RLS

MDL Case No. 2738

Motion Day: March 20, 2024

## DEFENDANTS JOHNSON & JOHNSON AND LTL MANAGEMENT LLC'S RESPONSE TO THE PLAINTIFFS' STEERING COMMITTEE'S SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING SUBPOENA DIRECTED AT KCIC, LLC

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

    A.    Statements That Coincide With Mediation Are Not
Automatically Covered By New Jersey's Mediation Privilege ...........3

    B.    The Justifications Offered By The PSC Do Not Support The
Application Of The Mediation Privilege To Most Statements
Pre- And Post-Dating Mediation ...........................................................4

CONCLUSION .......................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clanton v. Nissan N. Am., Inc.*,
  2015 WL 5309457 (N.J. App. Div. Sept. 10, 2015) ................................................8

*In re RDM Sports Grp., Inc.*,
  277 B.R. 415 (Bankr. N.D. Ga. 2002) ...................................................5

*Matter of Estate of Osguthorpe*,
  491 P.3d 894 (Utah 2021) ................................................................8

*N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*,
  2017 WL 498710 (D.N.J. Feb. 7, 2017) ...........................................2

*Wimsatt v. Superior Court*,
  152 Cal. App. 4th 137 (2007) .............................................................5

**Statutes**

11 U.S.C. § 502(c) .............................................................................5

N.J.R.E. 519(a)(c) ............................................................................8

N.J.S.A. § 2A:23C-2 ............................................................... 1, 2, 3, 6, 7, 8

N.J.S.A. § 2A:23C-4 ..........................................................................1, 3

N.J.S.A. § 2A:23C-4(c) .............................................................. 1, 2, 5

N.J.S.A. § 2A:23-C8 ...........................................................................1

Defendants Johnson & Johnson and LTL Management, LLC (collectively, "J&J") submit this Response to Plaintiffs' Steering Committee's ("PSC") Supplemental Brief ("PSC Supp. Br.") in Support of their Motion to Quash or for Protective Order Regarding Subpoena served by Defendants on non-party KCIC, LLC on December 19, 2023.

## INTRODUCTION

Under New Jersey law, the mediation privilege applies to a "mediation communication."  N.J.S.A. § 2A:23C-4.  A "mediation communication" is defined as "a statement … that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening mediation or retaining a mediator."  *Id*. § 2A:23C-2.  Thus, there must be a genuine nexus between the statement and mediation.  Statements made independent of mediation do not become privileged simply because they are repeated in connection with a mediation:  "Evidence or information that is otherwise admissible or subject to discovery shall not become inadmissible or protected from discovery solely by reason of its disclosure or use in a mediation."  *Id*. § 2A:23C-4(c); *see also* N.J.R.E. 519 (restating N.J.S.A. §§ 2A:23C-4–C-8).

The PSC's brief does not cite this statute even once.  And it misunderstands this mediation privilege in two crucial respects.

*First*, the PSC confuses temporal proximity to mediation with privilege. A statement is not privileged simply because it was made while a mediation was contemplated or pending. To come within the privilege, the statement must be made (as relevant here) *for purposes of* mediation. N.J.S.A. § 2A:23C-2. In other words, timing alone is not enough to trigger the privilege. Thus, the PSC's argument that "[t]he majority" of the communications on its privilege log are covered by New Jersey's mediation privilege simply because they are dated after the LTL-2 mediation order is legally incorrect. PSC Supp. Br. 3–4.

*Second*, a statement that was made independent of mediation does not suddenly become privileged merely because it was repeated in the context of, or refers to, mediation. *See* N.J.S.A. § 2A:23C-4(c). That is, "documents which otherwise exist, or existed independent of the mediation are not subject to this privilege." *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 2017 WL 498710, at *3 (D.N.J. Feb. 7, 2017) (federal mediation privilege) (alterations and quotations omitted). If the rule were otherwise, a party could launder discoverable statements through a mediation to invoke the privilege.

Thus, contrary to the PSC's argument, documents and analyses that were created before mediation are not privileged simply because they were "shared," PSC Supp. Br. 4–7, while a mediation order was pending. Yet the PSC admits that many of the documents it attempts to shield exist independent of mediation—for example,

2

"[c]ertain ovarian cancer claim-related documents provided … to Legacy [that] had been *previously prepared* by TCC ovarian counsel *for other purposes* during the LTL-proceeding and litigation outside bankruptcy."   Parfitt Decl. ¶ 7 (emphasis added), Dkt. 29595-1.

In the face of these requirements, very few of the communications on the PSC's privilege log are immune from discovery.

## ARGUMENT

### A.   Statements That Coincide With Mediation Are Not Automatically Covered By New Jersey's Mediation Privilege

The PSC's brief asserts, with no analysis, that "[t]he majority of the communications included on [its] privilege log are" covered by New Jersey's mediation privilege simply because they are "dated after the entry of the May 8, 2023 LTL-2 Mediation order and before the bankruptcy court's August 11, 2023 dismissal of LTL-2."  PSC Supp. Br. 3–4.  Put differently, the PSC asserts that the majority of the communications on its privilege log are privileged simply because they coincide with mediation.  That is not the law.

As established above, New Jersey's mediation privilege applies only to a "mediation communication," N.J.S.A. § 2A:23C-4, and a mediation communication is defined to mean a statement made *during a mediation* or *for purposes of mediation*, *id.* § 2A:23C-2.  Under that definition, statements that happen to coincide with a mediation are not privileged, contrary to the PSC's assumption.  Rather, the

3

PSC must prove a genuine nexus to mediation which, for the majority of the communications on its privilege log, it has not done.[1]

**B.    The Justifications Offered By The PSC Do Not Support The Application Of The Mediation Privilege To Most Statements Pre- And Post-Dating Mediation**

The remainder of the communications over which the PSC claims privilege do not appear to come within the scope of New Jersey's statute.  The PSC is using the mediation privilege to shield otherwise discoverable information—information that was created before, and independent of, any mediation.  *See, e.g.*, Parfitt Decl. ¶ 7.  And the PSC erroneously suggests that entire communications are privileged, even when they contain non-privileged statements.[2]

**PSC Privilege Log, Doc. Nos. 16, 283, 366.**  According to the PSC, "[t]hese e-mails reference TCC ovarian counsels' ovarian cancer estimation presentation which had been prepared during the pendency of LTL-1 for the court-appointed estimator."  PSC Supp. Br. at 5.  While any statements in the cover email made for purposes of mediation may be covered, any attachments or description of the estimation presentation would not be.  As the PSC admits, that presentation predated mediation efforts in LTL-2 and was made for purposes of litigation—specifically,

---

[1] Several of the documents during this period, moreover, are simply "draft email[s] to J&J regarding possible meeting to discuss LTL proposal," with no apparent connection to mediation at all.  *See* Priv. Log. Entries 5, 57, 95, 137, 145, 200, 250, 338.

[2] Based on the PSC's description, it appears that documents No. 257, 94, 220, 224, 262, and 412— the first two bullets in the PSC's brief—are privileged.

claims estimation under Bankruptcy Code § 502(c), 11 U.S.C. § 502(c).  Statements made for purposes of litigation do not become privileged merely because they are repeated while a mediation is pending.  *Supra* at 2; N.J.S.A. § 2A:23C-4(c); *see also, e.g.*, *Wimsatt v. Superior Court*, 152 Cal. App. 4th 137, 161 (2007) (construing similarly-worded statute and explaining "that the contents of any purported conversation are not automatically confidential simply because they are referred to in the protected confidential mediation brief and the protected emails"); *In re RDM Sports Grp., Inc.*, 277 B.R. 415, 431 (Bankr. N.D. Ga. 2002) ("[T]he mediation privilege does not apply to shelter from disclosure documents prepared prior to the mediation, merely because those documents were presented to the mediator during the course of the mediation.") (federal mediation privilege).

**PSC Privilege Log, Doc. Nos. 109, 410.**  The same analysis applies to documents 109 and 410.  "These are copies of the TCC ovarian cancer counsels' ovarian cancer estimation presentation which had been prepared during the pendency of LTL-1 for the court-appointed estimator."  PSC Supp. Br. 5.  By the PSC's own admission, this presentation was made for purposes of litigation (claims estimation under the Bankruptcy Code), not mediation.  It did not become privileged merely because it "was shared" for the purpose of mediation.  *Id.*

**PSC Privilege Log, Doc. Nos. 198, 274, 347, 361.**  According to the PSC, "these e-mails reference TCC ovarian cancer counsels' ovarian cancer memorandum

regarding ovarian cancer injuries and damages." PSC Supp. Br. at 6. The PSC does not claim that the memo itself was created for purposes of mediation. Instead, it says that "[t]his information was shared … for the purpose of" mediation. *Id*. Again, sharing information that was created for non-mediation purposes (like the memo here) does not make it privileged. What matters is whether the *statement* was made for the purpose of mediation, N.J.S.A. § 2A:23C-2, and the PSC does not argue that the memo or its contents satisfy that standard.

**PSC Privilege Log, Doc. Nos. 127, 165, 166, 191, 321.** According to the PSC, "[t]hese are copies of the memorandum prepared by TCC ovarian cancer counsel for Legacy regarding ovarian cancer injuries and damages." PSC Supp. Br. 6. The PSC does not claim that it created the memo for purposes of mediation. That is dispositive. Moreover, to the extent the information contained in the memo exists independently of mediation—e.g., was compiled for other any other purpose—New Jersey's mediation privilege also would not apply.

**PSC Privilege Log, Doc. Nos. 29, 37.** According to the PSC, "these e-mails reference TCC ovarian cancer counsels' ovarian cancer 'methodology' presentation." PSC Supp. Br. 6–7. The PSC does not claim that the presentation "was made for purposes of considering, conducting," or otherwise furthering mediation, N.J.S.A. § 2A:23C-2, so any information from that memo contained in the e-mails would not be covered by New Jersey's privilege.

**PSC Privilege Log, Doc. Nos. 39, 124, 329.** According to the PSC, "[t]hese are copies of TCC ovarian cancer counsels' ovarian cancer 'methodology' presentation." PSC Supp. Br. 7. Although that presentation may have been shared for purposes of mediation, the PSC does not contend that it was *created* (or "made", N.J.S.A. § 2A:23C-2) for purposes of mediation. Indeed, the PSC cites paragraph 7 of the Parfitt Declaration, which makes clear that certain documents were made "for other purposes during the LTL-1 proceeding and litigation outside of bankruptcy." Because the presentation is not a "mediation communication," it is not covered by New Jersey's mediation privilege.

**PSC Privilege Log, Doc. Nos. 1, 3, 6, 10, 21, 30, 51, 60, 67, 87, 90, 92, 107, 108, 150, 151, 173, 199, 208, 240, 252, 280, 297, 300, 310, 331, 335, 356, 371, 372, 398, 407, 411.** The PSC represents that these documents "comprise an internal email string between Legacy and KCIC discussing possible next steps after the entry of the LTL-2 Dismissal Order" and "refer back to discussions with TCC ovarian counsel during the pendency of LTL-2 regarding . . . claim resolution." PSC Supp. Br. at 8. The PSC does not argue that those "next steps" involve "considering" mediation. N.J.S.A. § 2A:23C-2. Instead, it suggests that the documents are covered by the mediation privilege because they "refer back to discussions" while the LTL-mediation order was pending and therefore would "reveal communications made for the purpose" of furthering mediation. PSC Supp. Br. 8.

Even taking the PSC's claim at face value, the entire e-mail string would not be covered by the mediation privilege.  That privilege would extend only to those statements made for purposes of mediation.  Any statements that were not made for purposes of mediation would not be covered.  *See, e.g.*, *Matter of Estate of Osguthorpe*, 491 P.3d 894, 926 (Utah 2021) (construing Utah's version of the Uniform Mediation Act and holding that trial court should have allowed redacted version of affidavit that did not "reflect[] the substance of mediation communications").  And merely referring to a recently concluded mediation would likewise not satisfy New Jersey's statutory requirements for protection under the mediation privilege.  N.J.S.A. § 2A:23C-2; *see also, e.g.*, *Clanton v. Nissan N. Am., Inc.*, 2015 WL 5309457, at *9 (N.J. App. Div. Sept. 10, 2015) (to the extent an expert retained for mediation "relies on the facts and data of his or her previous work in formulating opinions in the subsequent litigation, those facts and data would be discoverable") (citing N.J.R.E. 519(a)(c)).

## CONCLUSION

For the foregoing reasons, the PSC's motion should be denied.


Dated: March 20, 2024                    Respectfully submitted,

                                         */s/ Stephen D. Brody*
                                         Stephen D. Brody
                                         O'MELVENY & MYERS LLP
                                         1625 Eye Street N.W.
                                         Washington, DC 20006
                                         Tel.: 202-383-5300
                                         sbrody@omm.com

                                         Susan M. Sharko
                                         FAEGRE DRINKER BIDDLE & REATH
                                         LLP
                                         600 Campus Drive
                                         Florham Park, NJ 07932
                                         Tel.: 973-549-7000
                                         susan.sharko@faegredrinker.com

                                         *Attorneys for Johnson & Johnson and LTL*
                                         *Management, LLC n/k/a LLT Management*
                                         *LLC*