UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (MAS) (RLS) |

SPECIAL MASTER ORDER NO. 21
(GRANTING AND DENYING IN PART PLAINTIFFS'
MOTION TO QUASH OR FOR PROTECTIVE ORDER
REGARDING J&J'S SUBPOENA DIRECTED TO KCIC, LLC)

This matter is before the Special Master on plaintiffs' Motion to Quash or for Protective Order addressed to J&J's subpoena for KCIC's documents. (Dkt. No. 28912).[1] Numerous briefs have been received and conferences held regarding plaintiffs' motion. For the reasons to be discussed, plaintiffs' motion is granted and denied in part. Plaintiffs' motion to quash J&J's subpoena in toto is denied. Plaintiffs' motion for protective order is granted as to all documents listed on plaintiffs' privilege log for the reason that these documents are protected from discovery by the mediation privilege. Plaintiffs' motion for protective order is denied as to the KCIC documents responsive to J&J's subpoena that are not listed on the privilege log. The Special Master has been informed these documents have already been produced to J&J pursuant to Special Master Order No. 20 (entered March 12, 2024) (Dkt. No. 29636).[2]

---

[1] J&J does not challenge plaintiffs standing to file their motion.

[2] Although the Special Master rules in part against J&J, it disagrees with plaintiffs' assertion that J&J is engaging in abusive discovery tactics or a fishing expedition. J&J has a legitimate interest in assuring its former attorney's privileged and confidential information is not shared with J&J's adversaries. After all Conlon and Birchfield collaborated on a settlement proposal to J&J, while, according to J&J, at the same time, "Conlon was privy to wide-ranging, litigation-driven strategy discussions of the strengths, weaknesses, and optimal trial tactics for J&J defense of the underlying tort cases that give rise to J&J's resolution strategies." J&J Motion For Order to Show Cause at 2, 3. (Dkt. No. 28760-1). J&J also represents that, "Conlon's work as counsel for J&J touched every strategic option the Company considered for resolution of talc claims[.]" The Special Master is not weighing in on the merits of

6488056v1

**BACKGROUND**

By way of brief background, J&J's subpoena seeks documents from KCIC purportedly relevant to J&J's pending Motion to Disqualify Andy Birchfield, Esquire and his law firm. J&J contends that Birchfield shared J&J's confidential and privileged information with James Conlon, a lawyer who formerly represented J&J when he was in private practice. Conlon is now the Chief Executive Officer of Legacy Liability Solutions and collaborated with Birchfield to present a settlement proposal to J&J regarding J&J's talc/baby powder liability. Legacy described KCIC as its "Strategy Logistics Partner" for the J&J proposal. J&J Opp. at 2. According to plaintiffs, "Legacy contemplated that KCIC, LLC, a wholly separate claims administration company – would provide claims management services in the event of an acquisition." Pltffs' Memo. of Law at 2. (Dkt. No. 28912-1).

The parties know that over plaintiffs' opposition the Special Master ruled that J&J's subpoena requested documents relevant to J&J's motion to disqualify. However, the Special Master also ruled that before KCIC's documents were produced to J&J plaintiffs should have an opportunity to assert their privilege objections. To this end Special Master Order No. 20 directed that in the first instance KCIC should produce its responsive documents to plaintiffs for a privilege review. KCIC's production to plaintiffs is complete. In accordance with the Order, plaintiffs produced their privilege log claiming the documents it listed are privileged. The Special Master reviewed the listed documents in camera. In addition, the Special Master has been informed that plaintiffs produced to J&J KCIC's non-privileged documents.[3] The present

---

J&J's motion. However, the Special Master feels compelled to note that in view of the circumstances presented to J&J, plaintiffs' claims of unsavory J&J conduct are misguided, misplaced and off-base.

[3] To aid in its in camera review the Special Master also reviewed the non-privileged KCIC documents plaintiffs produced to J&J.

order addresses whether the documents listed on plaintiffs' privilege log are privileged and therefore protected from discovery.

A chronology of key events is helpful to deciding plaintiffs' motion:[4]

- 12/14/21 – LTL files first bankruptcy ("B1")

- 3/18/22 – Judge Kaplan's Order appointing co-mediators in LTL's first bankruptcy

- 8/23/22 – Conlon's first contact with J&J's counsel about a Legacy proposal to resolve J&J's talc liability.

- 1/30/23 – Third Circuit decision regarding B1

- 4/4/23 – Judge Kaplan's Order dismissing B1

- 4/4/23 – LTL files second bankruptcy ("B2")

- 4/27/23 – First call between counsel and for plaintiffs and Legacy

- 5/2/23 – First meeting between counsel and for plaintiffs and Legacy

- 5/8/23 – Judge Kaplan's Order appointing co-mediators in B2

- 7/28/23 – Judge Kaplan's decision regarding B2

- 8/11/23 – Judge Kaplan's Order dismissing B2

The following are important takeaways from the chronology:

- Between 3/18/22 to 4/4/23, the B1 mediation order was in effect

- Between 4/4/23 to 5/7/23, no mediation order was in effect.

- Plaintiffs' first contact with Conlon was on April 27, 2023, and their first meeting was held on May 2, 2023.

- Between 5/8/23 to 8/11/23, the B2 mediation order was in effect.

- After 8/11/23 no mediation order was in effect.

---

[4] All dates are referenced in the record presented to the Special Master. In the interest of expediency and promptly ruling before the scheduled March 25, 2024 evidentiary hearing, specific citations to the referenced documents are not included.

The bulk of the documents on plaintiffs' privilege log were generated while the B2 mediation order was in effect. However, some of the listed documents pre and post-date the inclusive dates of the B2 order. Also noteworthy is the fact that while all of the documents relate to the Legacy/Birchfield proposal, most of the documents involve internal Legacy communications or exchanges between Legacy and KCIC. Albeit, plaintiffs' lawyers are listed in numerous emails. J&J's latest opposition to plaintiffs' motion (Dkt. No. 29872) will be discussed herein.

**LEGAL DISCUSSION**

Since this MDL is before the court based on diversity jurisdiction, state substantive law applies. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000) ("In general, federal privileges apply to federal law claims, and state privileges apply to claims arising under state laws."). The parties do not dispute that New Jersey law applies.

As to the privilege issue to be decided, mediation in New Jersey is governed by N.J.R. 1:40 to 1:40-12, the Mediation Act, N.J.S.A. 2A:23C-1-13 and N.J.R.E. 519. The sum and substance of the Mediation Act is that "mediation communications" are privileged and not discoverable except in limited circumstances which do not apply here. N.J.S.A. 2A:23C-4. The term "mediation communication" is defined broadly in N.J.S.A. 2A:23-C-2 as a "statement, whether verbal or nonverbal or in a record, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." The issue to be decided is whether the documents on plaintiffs' privilege log are "mediation communications" within the meaning of the Mediation Act. If yes, the documents are privileged and not discoverable. If no, the documents should be produced to J&J.

After reviewing the parties' briefs and affidavits, and examining in detail the subject documents in camera, the Special Master finds that all the documents listed on plaintiffs' privilege log are "mediation communications" and, therefore, privileged and protected from discovery. The Special Master finds that all the listed documents were made for the purpose of considering, conducting, participating in or continuing a mediation. This is confirmed by the Declaration of Co-Lead Counsel for Plaintiffs, Michelle A. Parfitt, Esquire, (Dkt. No. 29595-1), wherein she attests, "[c]ommunications between the initial meeting with Legacy on May 2, 2023 and the dismissal of the LTL-2 [B2] proceeding on August 11, 2023 were made for the purpose of considering, conducting, participating in, initiating, and/or continuing mediation in the LTL-2 proceeding." Decl. ¶ 6. Further, a privileged email prepared shortly after the May 2, 2023 meeting (No. 257, KCIC 001594), confirms plaintiffs' intent to pursue Legacy in the upcoming J&J mediation. The document supports plaintiffs' contention that at the May 2 meeting with Legacy, plaintiffs "made clear that they wanted to include 'Legacy in upcoming J&J mediation,' with the express expectation that mediation efforts would continue in LTL-2 [B2] and that all such communications would be for the purpose of considering, conducting, participating in, initiating and/or continuing mediation in the LTL-2 proceeding." Pltffs' Supp. Brief at 2-3 (Dkt. No. 29595). In addition, without revealing privileged information, the import of KCIC's privileged documents reflects plaintiffs' intent to pursue the Legacy settlement proposal in mediation, preparation for mediation, or in anticipation of mediation. This evidence supports plaintiffs' argument that communications between plaintiffs' counsel and KCIC, "were for the purpose of developing a position in mediation [.]" Pltff. Memo of Law at 2.

Having the benefit of reviewing KCIC's documents in camera, the Special Master is able to confirm plaintiffs satisfied their burden of proving the listed privilege documents were made

for the purpose of considering, conducting, participating, initiating and/or continuing mediation. Subjects covered in the privileged documents that support this conclusion include the following:

- Plaintiffs' interest and intent of including the referenced settlement proposal in the mediation with J&J.

- Consideration of what mediator to use.

- The role to be played by the mediator in discussions.

- Communications and meetings with the mediator about the settlement proposal and exchanges about the content of the proposal.

- Close collaboration and strategy communications regarding how to consider, conduct, participate in, initiate and/or continue to mediate with J&J regarding plaintiffs' proposal.

- Regular communications with Birchfield and other counsel for plaintiffs regarding the foregoing matters, including when and how to present the settlement proposal to J&J in the context of mediation.

The fact that some of KCIC's documents pre or post-date the inclusive dates of the Court's mediation order is not fatal to plaintiffs' privilege claims. Documents created before or after the mediation may still be protected if they were prepared for or in furtherance of the mediation. Sandoz, Inc. v. United Therapeutics Corp., C.A. No. 19-C-10170, 2021 WL 5122069, at *2 (D.N.J. Nov. 2, 2021) (Special Master J. Linares). The Sandoz decision held that documents created before or subsequent to the mediation process, "may be protected by the privilege to the extent that they have a clear nexus to the mediation." Id. at *3 (citing U.S. Fid. & Guar. Co. v. Dick Corp., 215 F.R.D. 503, 507 (W.D. Pa. 2003)); see also 7 Mediation: Law Policy and Practice, § 8:27 (Jan. 2024 Update) ("The emerging common law appears to be that courts will treat communications made in preparation for, during, or in anticipation of further mediation as privileged while treating communications without a clear nexus to the mediation session as discoverable and potentially admissible."); Judicial Watch, Inc. v. U.S. Department of Justice, 271 F.Supp. 3d 264, 270 (D. D.C. 2017), aff'd 719 Fed. Appx. 21 (Mem.) (D.C. Cir.

6488056v1

2018) (holding that documents exchanged in advance of the formal inclusive mediation dates were protected because they were "made in connection with" the mediation which the parties anticipated); <u>Wilmington Hospitality, L.L.C. v. New Castle County, ex. Rel. New Castle Department of Land Use</u>, 788 A.2d 536, 541 (DE 2001) (documents exchanged outside the context of a specific mediation conference are protected if "made in or in connection with the mediation that relate to the controversy being mediated"). (Emphasis omitted).

      The Special Master finds that the listed privileged documents that pre and post-date the inclusive Court-ordered mediation dates have a clear nexus to the mediation and, therefore, are protected from discovery by the mediation privilege. The pre-May 8, 2023 documents reflect plaintiffs' intent that the mediation with J&J continue and discuss information relevant to the mediation. The pre-May 8, 2023 documents also reflect that plaintiffs presented information to Legacy for the purpose of considering, conducting, participating in, and/or continuing mediation in B2. As to the documents that post-date August 11, 2023, the documents reflect continued discussions that started during the inclusive dates of the mediation. As such, like the pre-May 8 documents, the post August 11, 2023 documents have a clear nexus to the mediation and were prepared and exchanged in connection with the mediation.

      To the extent J&J argues that plaintiffs do not claim the communications between KCIC and Legacy or Conlon are privileged (<u>see</u> J&J's Opposition at 4) (Dkt. No. 28920), the Special Master disagrees. Many of the documents on plaintiffs' log reflect KCIC/Legacy/Conlon communications. These documents are privileged. The Special Master finds that documents prepared by a non-party participant in a mediation for the benefit of and at the request of a mediation party to be used in the mediation are protected by the mediation privilege. "Communications made during the course of a mediation are generally privileged[.]"

-7-

Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 245 (2013). The term "mediation communication" in N.J.S.A. 2A:23C-2 is not defined to only include a party's communications. The statute defines a "mediation communication" as "a" statement that occurs during a mediation. This evidences an intent not to limit protected communications to only those made by a mediation party. Legacy/Conlon and KCIC worked to provide plaintiffs with the information plaintiffs requested and needed for the J&J mediation. The information Legacy provided was used for considering, conducting, participating in, initiating, continuing or recommencing a mediation. As such, the information developed and provided to plaintiffs by Legacy/Conlon and KCIC is a mediation communication protected from discovery by the mediation privilege. To hold otherwise would discourage frank and open discussions during a mediation which would likely lead to less settlements. The result would also be to discourage mediations. Both consequences are contrary to longstanding public policy favoring settlements and mediation as an important means of settling disputes. Id. at 253-54. At bottom, "the success of mediation as a means of encouraging parties to compromise and settle their disputes depends on confidentiality[.]" Id. at 254.

  J&J's two arguments in opposition to plaintiffs' motion do not carry the day. J&J argues, "a statement is not privileged simply because it was made while a mediation was contemplated or pending." J&J's Response at 2. J&J challenges what it perceives as plaintiffs' position that all communications made during the inclusive dates of a mediation are protected. The Special Master agrees with J&J that the date a document is prepared is not determinative as to whether a document is privileged. It is also agreed that "statements that coincide with mediation are not automatically covered by New Jersey's mediation privilege." Id. at 3. However, the Special Master did not base its privilege rulings solely on the date a document was dated. As explained,

after its <u>in camera</u> review the Special Master determined that the listed documents qualified as mediation communications within the meaning of the Mediation Act.

J&J also argues that documents created before and independent of the mediation are not protected merely because they were exchanged during the mediation. J&J Response at 2-3. J&J argues that documents pre-dating the mediation were not prepared for purposes of mediation and are therefore not protected. <u>Id</u>. What J&J sidesteps, however, is that only "otherwise discoverable" evidence exchanged during a mediation is not protected. <u>NJDEP v. American Thermoplastics Corp.</u>, C.A. No. 98-CV-4781 (WHW)(CLW), 2017 WL 498710, at *3 (D.N.J. Feb. 7, 2017). Privileged information prepared before a mediation does not lose its protection merely because it is exchanged during a mediation. Having the benefit of a detailed <u>in camera</u> review of all the challenged documents cited in J&J's recent Response Brief, the Special Master is convinced the documents are all protected work-product and that the documents were exchanged, "for the purpose of considering, conducting, participating in, initiating, continuing, or reconvening mediation or retaining a mediator." Thus, the Special Master rules that the challenged documents are protected.

## **CONCLUSION**

For all the foregoing reasons plaintiffs' motion is granted in part and denied in part.

## **ORDER**

For the reasons expressed above, IT IS HEREBY ORDERED this 21st day of March, 2024, as follows:

1. Plaintiffs' request to quash the entirety of J&J's subpoena directed to KCIC is DENIED.

2. Plaintiffs' motion for protective order is GRANTED in part and DENIED in part.

3. Plaintiffs' motion for protective order as to all documents listed on plaintiffs' privilege log is GRANTED. These documents do not have to be produced in

      discovery as they are protected by the mediation privilege.

4.     Plaintiffs' motion for protective order as to all responsive KCIC documents is DENIED. To the extent not already done, plaintiffs shall promptly produce to J&J the responsive KCIC documents not listed on plaintiffs' privilege log.[5]

                                    By: *s/ Joel Schneider*
                                    Judge Joel Schneider (Ret.)
                                    Special Master

Dated: March 21, 2024

---

[5] An irony of this ruling is that in spite of the fact KCIC's privileged documents are not going to be produced, J&J still accomplished what it set out to do. J&J served its subpoena to identify other attorneys besides Birchfield who may have had access to its confidential and privileged information. See J&J Opp. at 1-2. (Dkt. No. 28920) ("J&J served the discovery at issue here … to determine whether other attorneys on the PSC are also in receipt of J&J's confidences."). J&J learned this information since the names of the other attorneys who participated in the discussions with Conlon and Legacy are listed in KCIC's produced non-privileged documents and on plaintiffs' detailed privilege log.

6488056v1