# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS<br><br>MDL Case No. 2738<br><br>Motion Day: April 1, 2024<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOHNSON & JOHNSON'S AND LLT MANAGEMENT LLC'S REPLY IN SUPPORT OF
MOTION TO QUASH OR FOR PROTECTIVE ORDER FROM SUBPOENA DIRECTED TO PWC**

# TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................1

    A.    The PSC Admits It Seeks Irrelevant Information For An Improper Purpose ..........................................................................................1

    B.    The Subpoena Seeks J&J's Protected Work Product .........................4

    C.    The Subpoena Seeks Information Covered By The Attorney-Client Privilege ...............................................................................11

    D.    A Privilege Log is Not Required Because All Communications Sought From PwC Are Both Irrelevant And Protected From Discovery .................................................................................................11

CONCLUSION ..........................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*,
   2006 WL 278131 (S.D.N.Y. Feb. 2, 2006) ..................................................... 6, 10

*In re Gabapentin Patent Litig.*,
   214 F.R.D. 178 (D.N.J. 2003) .................................................................................. 8

*In re Grand Jury Proceedings*,
   604 F.2d 798 (3d Cir. 1979) .................................................................................... 5

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2021 WL 3144945 (D.N.J. July 26, 2021) ........................................................... 7, 8

*In re Weatherford Int'l Secs. Litig.*,
   2013 WL 12185082 (S.D.N.Y. Nov. 19, 2013) ..................................................... 10

*Lawrence E. Jaffe Pension Plan v. Household Int'l., Inc.*,
   237 F.R.D. 176 (N.D. Ill. 2006) ......................................................................... 6, 10

*Martz v. Polaris Sales, Inc.*,
   2024 WL 199550 (M.D. Pa. Jan. 18, 2024) ............................................................. 5

*Medinol, Ltd. v. Boston Sci. Corp.*,
   214 F.R.D. 113 (S.D.N.Y. 2002) ........................................................................... 10

*Nielsen Elecs. Inst. v. Student Fin. Corp.*,
   2001 WL 34367325 (D. Del. Jan. 18, 2001) ......................................................... 10

*RBS Citizens, N.A. v. Husain*,
   291 F.R.D. 209 (N.D. Ill. 2013) ............................................................................... 9

*Simon v. G.D. Searle & Co.*,
   816 F.2d 397 (8th Cir. 1987) ................................................................................... 9

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ............................................................................. 5, 6

*United States v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010) ........................................................................ 4, 6, 8

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Vacco v. Harrah's Operating Co.*,
  2008 WL 4793719 (N.D.N.Y. Oct. 29, 2008) ...................................................... 10

*Westerbank P.R. v. Kachkar*,
  2009 WL 530131 (D.P.R. Feb. 9, 2009) ............................................................ 10

**Statutes**

N.J. Stat. Ann. § 45:2B-65 ................................................................................... 12

**Rules**

Fed. R. Civ. P. 26(b)(1) ......................................................................................... 2

Fed. R. Evid. 401 .................................................................................................. 2

**Other Authorities**

Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment ............................. 8

# INTRODUCTION

The first two pages of the PSC's opposition ("PSC Opp.") to J&J's motion ("J&J Mot.") to quash the subpoena directed to J&J's auditor, PwC, should tell this Court everything it needs to know. The PSC admits that it does not seek information relevant to any fact to be tried in this case. According to the PSC, the purpose of the PwC subpoena is to discover evidence about J&J's "solvency." But J&J's "solvency" is not relevant to or admissible in the trial of any MDL plaintiffs' claims. The PSC also admits that it issued the subpoena as a misguided attempt at retaliation after J&J issued a subpoena to KCIC—for the altogether different purpose of discovering evidence relevant to disqualification. The PwC subpoena is an abuse of the discovery process. And it seeks information protected by the work-product doctrine and attorney-client privilege. It should be quashed or a protective order issued.

# ARGUMENT

### A. The PSC Admits It Seeks Irrelevant Information For An Improper Purpose

The PSC's stated purpose for the PwC subpoena is not to prove talc plaintiffs' claims in these proceedings or to disprove J&J's defenses, but rather to address J&J's "solvency" in a hypothetical future bankruptcy case. According to the PSC, it issued the subpoena "to determine the validity behind [J&J's] claims

1

about its solvency," so it could prepare an opposition "if [J&J] file[s] yet another bankruptcy case." PSC Opp. 4.

To state the obvious, information about J&J's "solvency" is not relevant to this case. It does not make any fact at issue in these talc cases "more or less probable," Fed. R. Evid. 401, nor would it tend to establish "any party's claim or defense," Fed. R. Civ. P. 26(b)(1). J&J's "solvency" will not be tried before any jury in these proceedings. *See, e.g.*, Dkt. 29138 at 9–10 (granting protective order regarding Moline article where "Moline will not testify at trial, her articles are not relied upon by plaintiffs' trial experts, and plaintiffs have unequivocally represented that they will not use or rely on Moline's articles at trial"). The information the PSC seeks through the subpoena about J&J's "solvency," in other words, is not relevant to the cases in this MDL nor would it be admissible at trial on any MDL plaintiff's claims.

The premise underlying the PSC's argument is also flawed. The PSC claims to want information about J&J's solvency to prepare an opposition to a future bankruptcy case. But any future bankruptcy case is at this point "[s]peculation." *Id*. at 9. And speculation about what might or might not happen in the future "is not a sufficient basis to permit irrelevant discovery" in this case now. *Id*. Moreover, in the event there were a future bankruptcy filing, the bankruptcy court

2

would have jurisdiction over issues like solvency that a tort claimant committee will be free to raise.

The PSC also errs in conflating its subpoena to PwC with the subpoena issued by J&J to KCIC. The PSC argues that if its own "assessments of the value of ovarian cancer cases" is disclosed in response to the KCIC subpoena, then J&J's "assessments should be as well." PSC Opp. 4–5; *see also id.* at 3–4. The Special Master did not permit J&J to discover the PSC's valuations, finding them protected by the work-product doctrine, Dkt. 29999 at 9, so the PSC's analogy fails out of the gate. But regardless, J&J did not serve the KCIC subpoena for the purpose of discovering how the PSC valued its clients' claims. And the Special Master did not deny the PSC's motion to quash on the theory that responsive documents were relevant because they show how the PSC valued these cases.

As the Special Master recognized, documents responsive to that subpoena were relevant for one reason, and one reason only—they were germane to disqualification of plaintiffs' counsel. *Id.* at 2 & n.2. That consideration is not implicated here. Indeed, the PSC's argument that discovery targeted at its own ethical misconduct somehow opened the door for it to discover irrelevant yet protected information of its adversary reveals the PSC's motion to be nothing more than a misguided attempt at retaliation: J&J issued a legitimate subpoena to KCIC, and the PSC issued this illegitimate subpoena in response.

3

Because the PSC admits that the subpoena exclusively seeks irrelevant information, and because the PSC issued the subpoena for an improper purpose, the subpoena should be quashed or a protective order issued. The Court need go no further in its analysis.

### B. The Subpoena Seeks J&J's Protected Work Product

If the Court were nevertheless to reach the question of whether the subpoena to PwC seeks protected work product, the Court should conclude that that the subpoena impermissibly does so. Indeed, that conclusion flows inescapably from the PSC's admission that the sole purpose of its subpoena is to obtain "assessments of [J&J's] talc liability." PSC Opp. 2.

J&J's assessment of its own potential talc liabilities is work product. J&J conducted those assessments because of litigation, and shared with PwC "documents prepared because of the prospect of litigation" and its analysis "of pending . . . talc litigation." Haas Decl. ¶ 7. And derivative assessments of J&J's talc liability by PwC, in turn, are suffused with J&J's work product—PwC's analysis was based on (and would thus reveal) J&J's own evaluation of its potential legal liabilities that it conducted because of litigation. *See United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) ("material developed in anticipation of litigation can be incorporated into a document produced during an audit without ceasing to be work product").

4

The PSC responds that J&J's "communications" with PwC were not made in anticipation of litigation, but for the "independent business purpose" of auditing J&J's compliance with ASC 450. PSC Opp. 6. The PSC is wrong. Legal analysis necessitated by litigation is work product even if the attorney conducts that analysis for a business reason—that is, even if the purpose of the document/analysis "is not to 'assist' in litigation." *United States v. Adlman*, 134 F.3d 1194, 1198–1203 (2d Cir. 1998). What matters is whether the analysis was conducted "because of" litigation. *Id.* at 1202 ("Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under this formulation merely because it is created in order to assist with a business decision."); *see also id.* (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) (approving "because of" test)); *Martz v. Polaris Sales, Inc.*, 2024 WL 199550, at *3 (M.D. Pa. Jan. 18, 2024) ("The 'because of' standard asks not what the primary purpose of the document is, but whether under the totality of the circumstances, it can be fairly said that the document would not have been created in substantially similar form but for the prospect of litigation.") (footnote omitted).

Thus, the work-product doctrine applies where a "company's independent auditor requests a memorandum prepared by the company's attorneys estimating the likelihood of success in litigation and an accompanying analysis of the

5

company's legal strategies and options to assist it in estimating what should be reserved for litigation losses." *Adlman*, 134 F.3d at 1200.[1]  Likewise here.  J&J's analysis of its potential liabilities would be work product even if it undertook that analysis only to facilitate PwC's audit because it "would have had no need" to conduct that analysis but for the litigation—the analysis of J&J's potential talc liabilities to comply with ASC 450 would have been necessitated by the litigation. *See, e.g.*, *Lawrence E. Jaffe Pension Plan*, 237 F.R.D. at 181.

Here, too, J&J shared documents that were prepared because of the prospect of litigation and communicated with PwC concerning its analysis of pending and anticipated litigation.  *See* Haas Decl. ¶ 7.  And legal analysis does not lose work-product protection merely because it can also be used for some other purpose. *Deloitte*, 610 F.3d at 138 ("[A] document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation"); *cf.* Dkt. 29999 at 9 ("Privileged information prepared before a mediation does not lose its protection merely because it is exchanged during a mediation.").

---

[1] *See also Lawrence E. Jaffe Pension Plan v. Household Int'l., Inc.*, 237 F.R.D. 176, 179–82 (N.D. Ill. 2006) ("opinion letters summarizing pending and threatened litigation" written by defendant's general counsel and shared with defendant's outside auditor protected work product); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*, 2006 WL 278131, at *1–2 (S.D.N.Y. Feb. 2, 2006) (opinion letters written by counsel and provided to outside actuary in connection with report to be submitted to government agency protected work product).

6

Recognizing that substance, not form, is what matters when evaluating work product, the PSC asserts that "the substance of what the PSC seeks—the underlying facts of business and financial information concerning Defendants' talc liability—is not covered by the work-product doctrine." PSC Opp. 8. But the PSC admits that the purpose of its subpoena is *not* to discover "underlying factual information." *Id.* If that were true, the PSC could serve discovery requests to J&J seeking factual information relevant to plaintiffs' claims. But the PSC is very clear that "the information sought here" is "assessments of [J&J's] talc liability." *Id.* at 2. And J&J's assessment of its talc liability simply is not factual information. It is work product composed of attorney impressions, conclusions, and opinions applying the law to the legal landscape facing J&J. *See* Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment (work product includes attorneys' "mental impressions, conclusions, opinions, or legal theories concerning the litigation").

The PSC's reliance on *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.* (*In re J&J*), 2021 WL 3144945, at *4 (D.N.J. July 26, 2021), is misplaced. PwC's analysis here *was* conducted because of litigation—again, there would be no need for ASC 450 disclosures about J&J's potential legal liabilities if there were no talc litigation and thus potential legal liabilities. This is not a case, for example, like *In re Gabapentin Patent Litig.*, 214

7

F.R.D. 178 (D.N.J. 2003), where "[d]ocuments created for *other* purposes" became "useful in *subsequent* litigation," *In re J&J*, 2021 WL 3144945, at *4 (emphasis added). Here, the analysis the PSC seeks to discover was precipitated by J&J's actual and anticipated litigation, thus bringing it squarely within the protections of the work-product doctrine.

The PSC offers no other argument for why communications by J&J assessing its own legal liability are not protected under the work-product doctrine. Instead, it shifts its focus to communications by PwC. Specifically, the PSC argues that it should be allowed to discover PwC's analysis of J&J's liabilities because "auditors are retained to give their independent opinion, and so PwC's conclusions, necessarily, do not reflect those of [J&J]." PSC Opp. 7. That conclusion does not follow. Although PwC was independently assessing J&J's compliance with ASC 450, any evaluation by PwC of J&J's legal "liability for talc ovarian cancer claims," *id.* at 4—the *only* information the PwC seeks through its subpoena—*was* based on work-product provided from J&J. *See Deloitte*, 610 F.3d at 136 ("[T]he question is not who created the document or how they are related to the party asserting work-product protection, but whether the document contains work product—the thoughts and opinions of counsel developed in anticipation of litigation.").

8

As a fallback, the PSC asserts that communications from PwC reflect J&J's assessment of its potential liabilities in only "an indirect and diluted manner." PSC Opp. 7 (quoting *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987)). But there is no substance to the PSC's argument. PwC's audit of J&J's potential legal liabilities necessarily reflects J&J's work product because those assessments were based on J&J's work product.

The one Eighth Circuit case on which the PSC relies is wholly inapposite. The degree to which analysis by a third party dilutes work product was not the issue in *Simon*. The issue in *Simon* was whether aggregate case reserves calculated for exclusively business reasons by non-attorneys in a risk management department revealed individual case reserve figures to a degree that would bring the aggregates within the protection of the work product doctrine. 816 F.2d at 400–02. Here, by contrast, the PSC seeks to discover counsel's assessment of its potential aggregate liability, inclusive of an assessment of the strength of claims and defenses.[2]

---

[2] The PSC cites *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 220 (N.D. Ill. 2013), for the proposition that generic descriptions that documents that incorporate work product are insufficient to trigger the doctrine. But the PSC does not advance any argument on this basis. In any event, unlike in *RBS Citizens*, where the party generically claimed that documents "contained financial analysis 'based in part on and reflecting advice of counsel,'" *id.*, J&J's claim of work product protection is not generic. The information the PSC seeks by its nature implicates work product—the PSC wants valuations of talc plaintiffs' claims, which can only be based on a legal assessment of the strength of those claims and J&J's defenses.

9

Finally, citing *Medinol, Ltd. v. Boston Scientific, Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002), the PSC suggests that J&J waived work-product protections by providing its analysis to its independent auditor. What the PSC fails to mention is that "*Medinol* has been roundly criticized for its holding and analysis." *Westerbank P.R. v. Kachkar*, 2009 WL 530131, at *7 (D.P.R. Feb. 9, 2009). This includes other judges in the Second Circuit, who have likewise explained that the decision "has been almost uniformly rejected," *Vacco v. Harrah's Operating Co.*, 2008 WL 4793719, at *6 (N.D.N.Y. Oct. 29, 2008), and appears "directly in conflict" with binding appellate precedent, *Alcoa Steamship*, 2006 WL 278131, at *2; *see Lawrence E. Jaffe Pension Plan*, 237 F.R.D. at 180 ("It appears that the *Medinol* court is the only one in its jurisdiction to take this position."); *see also In re Weatherford Int'l Secs. Litig.*, 2013 WL 12185082, at *5 (S.D.N.Y. Nov. 19, 2013). The PSC does not identify any Third Circuit case law supporting its position. *See, e.g.*, *Nielsen Elecs. Inst. v. Student Fin. Corp.*, 2001 WL 34367325, at *2 (D. Del. Jan. 18, 2001) (party did not waive work product by disclosing documents to outside accountant). Nor does it grapple with, let alone acknowledge, overwhelming contrary authority, persuasively rejecting its argument here.

### C. The Subpoena Seeks Information Covered By The Attorney-Client Privilege

The Court need not reach the attorney-client privilege because the information sought by the PSC is irrelevant and protected work product. But the privilege is yet another reason to quash the subpoena or to issue a protective order. Communications made with an expectation of confidentiality, N.J. Stat. Ann. § 45:2B-65, that J&J's lawyers made for the purpose of providing legal advice to the Company should be entitled to privilege protection. Case law finding waiver of attorney-client privilege for communications shared with independent auditors should be rejected.

### D. A Privilege Log is Not Required Because All Communications Sought From PwC Are Both Irrelevant And Protected From Discovery

In an about-face from the PSC's position on the KCIC subpoena, Dkt. 28953 at 6–7, the PSC asserts that J&J should be required to produce a privilege log, PSC Opp. 11–12. As J&J has already explained, a privilege log would serve no purpose here and is not required. *See* J&J Mot. 9–10. The *only* information the PSC seeks through its subpoena is "assessments of [J&J's] talc liability." PSC Opp. 2. Whether assessments of potential liability prepared because of pending or anticipated litigation is protected work product is a straightforward legal question—although there is no reason to reach it because assessments of J&J's liability are not relevant here.

11

Here, again, the PSC errs in comparing its subpoena to the one J&J issued to KCIC. The PSC asserts that J&J "must produce a privilege log, just as the PSC produced a privilege log" in response to the KCIC subpoena. *Id.* at 12. But there is a crucial difference between this subpoena and that one. The documents sought from KCIC were relevant to disqualification issues; the documents the PSC seeks from PwC are not relevant to any issue in this case.[3]

## CONCLUSION

For the foregoing reasons, J&J respectfully requests that this Court grant J&J's motion to quash the subpoena directed at PwC or, in the alternative, issue a protective order.

Dated: March 28, 2024                    Respectfully submitted,

*/s/ Stephen D. Brody*
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com

Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH

---

[3] Moreover, although the PSC argued otherwise in its briefing, it admitted at argument before the Special Master that not all the documents responsive to the subpoena were privileged—a point confirmed by the fact that, once the PSC reviewed the documents, it did not claim privilege over many of them. *See* 3/11/2024 Hr'g Tr. 6:11–17. A privilege log was thus necessary because the PSC ultimately recognized it could not claim privilege over every document in question, necessitating a document-by-document review.

12

LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.: 973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson and LTL Management, LLC n/k/a LLT Management LLC*

13