

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Jeffrey M. Pollock
Certified by the Supreme Court of New Jersey
    as a Civil Trial Attorney
Direct Dial:  (609) 896-7660
Email Address:  jmpollock@foxrothschild.com

April 3, 2024

<u>*Via* **PACER/ECF**</u>

The Honorable Rukhsanah L. Singh, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Courtroom 7W
Trenton, New Jersey

> Re:   *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Product Liability Litig.*, **Case No. 3:16-md-2738 (MAS)/(RLS)**

Dear Judge Singh:

This Firm represents Beasley Allen and Andy D. Birchfield, Jr., Esq. (together Beasley Allen) in J&J's Motion to Disqualify Beasley Allen (the Motion) pending before the Court. *See* ECF No. 28760. After midnight last night, Beasley Allen received notice of three subpoenas purportedly issued pursuant to Federal Rule of Civil Procedure 31 and Rule 45 seeking written deposition testimony from LTL mediators Gary J. Russo, Esq., Eric D. Green, Esq., and Fouad Kurdi, Esq (the Deposition Subpoenas). *See* ECF Nos. 030858; 030859; 030860. In advance of the April 10, 2024 plenary hearing on the Motion, Beasley Allen writes to respond to the Deposition Subpoenas and request a brief case management conference to address the issues raised below.

Under no circumstances does Beasley Allen want to delay the April 10, 2024 plenary hearing. J&J apparently noticed the Deposition Subpoenas to force Beasley Allen to either join with J&J in an effort to abrogate New Jersey's sacrosanct mediation privilege or appear to the Courts to be hiding information. Given the scope of this proceeding where J&J has ignored Rule



The Honorable Rukhsanah L. Singh, U.S.M.J
April 3, 2024
Page 2

408 and used the shield of a privilege as a sword, Beasley Allen in this situation chooses to not object. The Deposition Subpoenas do not comply with Federal Rule of Civil Procedure 31(a)(5), which affords Beasley Allen the opportunity to ask cross-questions within 14 days and re-cross questions within 7 days of any redirect questions. Beasley Allen is willing to serve cross-questions on an expedited basis, but it needs to know the final questions J&J seeks to ask and the deponents' availability. For these reasons, **Beasley Allen requests a case management call at the Court's earliest convenience.**

### I.     Motion Discovery Has Concluded and All Agree the Record Is Closed.

The Deposition Subpoenas are J&J's attempt at a fourth bite at the apple and yet another improper attempt to re-open discovery.[1] Both Your Honor and Judge Porto afforded J&J numerous opportunities to supplement the record—including through *in camera* submissions. J&J repeatedly declined to do so after hearings on January 17, 2024, January 23, 2024, February 7, 2024, and February 14, 2024—even where J&J admits it holds the burden of proof and persuasion on the pending Motion. All parties involved in the Motion believed and relied upon the belief that the Motion record is closed. *See, e.g.*, Feb. 14, 2024 Tr. at pgs. 19 (Judge Porto stating that "I don't believe I've seen anything other than what counsel has seen. I didn't get anything in camera. I got everything that was submitted, and I think it was on eCourts."); *id.* at 25 (Judge Porto stating that "I thought our record was closed, too."); *id.* at 31 to 32 (Judge Porto stating that "The record is closed with regard to documents. Whatever comes out is going to be by way of testimony from the witnesses that are going to be produced with the party that has the burden, and that's Mr. Brody's

---

[1] J&J has had three previous opportunities to supplement the record but have declined each time. *See, e.g.*, Jan. 17, 2024 Tr. at 64:1-2 (Judge Porto holding the record open "at this point."); Jan. 23, 2024 Tr. at 14 to 15 (permitting parties more time to review record and provide submissions); Feb. 7, 2024 Tr. at 72:1-12 (Judge Singh noting that Judge Porto kept record open and stating that "I will keep it open in the event that I do determine I need additional information."). J&J took no action to supplement the record in the weeks and months leading up to the March 25, 2024 plenary hearing.

Motions to disqualify should be decided on the paper evidentiary record to prevent the present circumstances—a never-ending cycle of more discovery applications and attempts to drag proceedings out. *City of Atlantic City v. Trupos*, 201 N.J. 447, 463 (N.J. 2010) (reaffirming that motions to disqualify counsel "should ordinarily be decided on the affidavits and documentary evidence submitted[.]"). The Deposition Subpoenas (and J&J's recent conduct) are directly at odds with J&J's prior representation to this Court nearly two (2) months ago—that J&J supposedly had sufficient evidence in the record to disqualify Beasley Allen. *See* Feb. 7, 2024 Tr. at 18:6-11 (Mr. Brody stating to Judge Singh that "Based on that record, even though we are here on a motion for an order to show cause, the facts that are undisputed are sufficient for this Court to enter an order today disqualifying Beasley Allen from representing plaintiffs in this litigation and removing Beasley Allen from the Plaintiffs' Steering Committee."). Despite this representation, J&J persists in its fishing expedition for more discovery.



The Honorable Rukhsanah L. Singh, U.S.M.J
April 3, 2024
Page 3

client. . . . there is no more discovery, no more documents. I got it."). The Deposition Subpoenas are J&J's latest attempts to circumvent a closed record to Beasley Allen's prejudice.

The issues J&J raised as their purported basis for the disqualification of Beasley Allen have been addressed: (1) J&J has no evidence that the matrix in question is J&J property or ever was; (2) J&J now concedes that the $19 billion proposed resolution of all talc claims was not a J&J number. In short, based on J&J's testimony alone, this matter could be dismissed here and now. At the March 25, 2024 hearing before the Court, neither Mr. Haas nor Mr. Murdica even remotely suggested that J&J's confidential information was shared with Beasley Allen. J&J's witnesses testified to the opposite: that the "matrix" appended to Mr. Conlan's November 2023 letter (Exhibit 7/PlenaryHearing067) was not a J&J matrix. *See* Mar. 25, 2024 Tr. at 90-91 (Mr. Haas responding "Yes . . .they have" in response to question from Judge Singh as to whether the "categories within this proposed matrix come up in prior mediation, settlement discussions"?).

Mr. Haas also admitted that the numbers in the matrix attached to the Legacy proposal did not come from J&J. *Id.* at 90-93 (J&J admitting that aggregate and individual numbers are different and "[t]his particular matrix, the numbers here are different than the numbers. The matrix concept is not new to this particular tort."); *id.* at 275 to 276 (Mr. Murdica admitting that the "values" and "the numbers are not the same" in the matrix). J&J's Motion is baseless, and J&J should not be permitted to conduct last minute depositions when the Motion record is closed.[2]  The fact that the matrix did not come from J&J and is not imbued with any J&J confidential information will be further clarified by Mr. Birchfield's testimony on April 10, 2024.

II.     **J&J's Midnight Notice of Deposition Subpoenas to Be Taken Two Days After the Notice Date Is Irregular, and Beasley Allen is Entitled to Serve Cross-Questions Upon the Mediators Under Rule 31(a)(5).**

J&J's midnight filing—where it belatedly seeks deposition testimony from the LTL mediators—reinforces that the Motion is baseless, and that J&J is on a fishing expedition with the goal of dragging this process out indefinitely. J&J likely issued the Deposition Subpoenas expecting (and hoping) that Beasley Allen would raise general objections. In response, J&J would then presumably tell the Court that Beasley Allen objects because it seeks to hide relevant information. Beasley Allen will not engage in that conduct.

---

[2] After J&J's multiple failed bankruptcies, the Deposition Subpoenas are the latest example of what Beasley Allen has voiced concern about repeatedly—that J&J has no interest in seeing the Motion adjudicated—only to use the Motion as a vehicle for harassment and to delay the underlying talcum powder matter as long as possible.



The Honorable Rukhsanah L. Singh, U.S.M.J
April 3, 2024
Page 4

Federal Rule of Civil Procedure 31(a)(5) permits Beasley Allen to serve cross-questions within 14 days and re-cross questions within 7 days after service of any redirect questions. The Court may, for good cause, extend or shorten these times. *Id.* J&J served notice of the Deposition Subpoenas after midnight last night and requested that Beasley Allen "agree" to serve cross questions by tomorrow (April 4) so that the "witnesses' answers can be certified on April 5." Despite J&J's feigned surprise at the March 25, 2024, J&J has known about protected mediation-communications between Beasley Allen and Legacy since at least March 7, 2024. Yet, J&J failed to raise the issue with Your Honor (or Judge Porto) for weeks. Instead, J&J sought to enter the privilege log as evidence at the March 25 plenary hearing weeks later. As it has done throughout this process, J&J seeks to use mediation privilege as both a sword and a shield against Beasley Allen.

If the Court permits J&J to proceed with the Deposition Subpoenas, Beasley Allen has several questions it intends to ask the mediator deponents, including:[3]

1. In the LTL 2 mediation, did the deponent receive any information that he believed was J&J's confidential information?

2. Did the deponent invite Legacy to participate in the mediation?

Beasley Allen also provides a draft revision of J&J's proposed questions in the Deposition Subpoenas in more neutral form, which may better serve the Court. *See* **Exhibit A.**[4]

\*              \*              \*

At the Court's earliest convenience, Beasley Allen requests a brief case management conference to discuss these issues and determine the appropriate course of action.

---

[3] Beasley Allen may ask the mediator deponents to confirm what was not discussed at mediation, *i.e.*, J&J's confidential information, without running afoul of the mediation privilege. *See, e.g.*, *Sandoz, Inc. v. United Therapeutics Corp.*, 2021 WL 5122069, at *2 (D.N.J. Nov. 2, 2021) (citing approvingly the understanding that "discussions among parties outside the presence of the mediator and not occurring at a mediation proceeding are not privileged. Where the mediator has no direct involvement in the discussions and where the discussions were not designated by the parties to be a part of an ongoing mediation process, the rationale underlying the mediation privilege (i.e., that confidentiality will make the mediation more effective) is not implicated. ").

[4] Beasley Allen provides one draft red-line because all three Deposition Subpoenas propose identical "DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS."



The Honorable Rukhsanah L. Singh, U.S.M.J
April 3, 2024
Page 5

       Thank you for your time and continued consideration of this matter.

                             Respectfully submitted,

                             */s/  Jeffrey M. Pollock*

                             JEFFREY M. POLLOCK

cc:  All Counsel (*via* ECF)

# <u>EXHIBIT A</u>

## <u>SCHEDULE A</u>

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS BY J&J (REVISED BY BEASLEY ALLEN)**

1.  Did you request that Legacy participate in the LTL 2 mediation?

    Answer:

    _____
    _____
    _____
    _____

2.  Were you aware that James Conlan had previously represented Johnson & Johnson as outside counsel?

    Answer:

    _____
    _____
    _____
    _____

---

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS  BY BEASLEY ALLEN**

1.  In the LTL 2 mediation, did the deponent receive any information that he believed was J&J's confidential information?

    Answer:

    _____
    _____
    _____
    _____

2.  Did the deponent invite Legacy to participate in the mediation?

    Answer:

    _____
    _____
    _____
    _____

## SCHEDULE A

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

1. ~~On March 25, 2024, during a hearing before New Jersey Superior Court Judge John C. Porto and United States Magistrate Judge for the District of New Jersey Ruksanah L. Singh, on Johnson & Johnson's and LTL Management LLC's Motions for Order to Show Cause Why Andy Birchfield and Beasley Allen Should Not Be Disqualified from representing plaintiffs in MCL Case No. 300 and MDL Case No. 2738, counsel for Beasley Allen and Mr. Birchfield stated: (1) "Were you aware that it was the mediators in the LTL 2 – the LTL matter that requested that Mr. Conlan participate?"; and (2) "you cannot answer the question whether the mediators asked that Mr. Conlan participate in trying to reach a resolution; is that correct?" (March 25, 2024 Hr'g Tr. 289:2-4, 289:17-20.)~~

1. ~~Confirm that you did~~ Did ~~not~~ you request that Legacy ~~former~~ Faegre Drinker Biddle & Reath LLP partner James Conlan ~~participate~~ ~~with the Tort Claimants Committee~~ in the LTL 2 mediation?~~.~~

   Answer:
   _____
   _____
   _____
   _____

2. ~~Confirm that you were not aware at any time prior to December 5, 2023, when Johnson & Johnson and LTL Management LLC filed a Motion for Order to Show Cause Why Andy Birchfield and Beasley Allen Should Not Be Disqualified from representing plaintiffs in MDL Case No. 2738, *In re Johnson & Johnson Talcum Products Marketing, Sales Practices and Products Liability Litigation,*~~ Were you aware that James Conlan had previously represented Johnson & Johnson as outside counsel ~~in the talcum powder products litigation as a partner at Faegre Drinker Biddle & Reath LLP~~?~~.~~

   Answer:
   _____
   _____
   _____
   _____

   ~~Confirm that if served with a subpoena for deposition upon written questions in *In re Talc-Based Powder Products Litigation,* Case No. ATL-L-2648-15, MCL Case 300 (N.J. Super. Ct., Atlantic Cnty.), your answers to the foregoing two questions would be the same.~~

   ~~Answer:~~
   _____
   _____
   _____
   _____

Formatted: Font: 12 pt
Formatted: Font: 12 pt
Formatted: List Paragraph, Right: 0.64", Numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.58" + Indent at: 1.08", Tab stops: 1.08", Left

Formatted: Font: 10 pt

Formatted: Font: 12 pt

Formatted: Right: 0", Numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.58" + Indent at: 1.08", Tab stops: Not at 1.08" + 1.08"

(Questions continued on next page)

Formatted: Left

~~3.1.    Confirm that if served with a subpoena for deposition upon written questions in *In re Talc-Based Powder Products Litigation*, Case No. ATL-L-2648-15, MCL Case 300 (N.J. Super. Ct., Atlantic Cnty.), your answers to the foregoing two questions would be the same.~~

~~Answer:~~
_____
_____
_____
_____

2