**O'Melveny**

O'Melveny & Myers LLP　　T: +1 202 383 5300
1625 Eye Street, NW　　　　F: +1 202 383 5414
Washington, DC 20006-4061　omm.com

April 4, 2024

**Stephen D. Brody**
D: +1 202 383 5167
sbrody@omm.com

<u>**VIA ECF AND ELECTRONIC MAIL**</u>

The Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re:　<u>*In re: Johnson & Johnson Talc-Based Powder Prods. Litig.*, Case No. 3:16-md-2738</u>

Dear Judge Singh:

　　We write on behalf of Johnson & Johnson and LLT Management LLC in response to Beasley Allen's April 3, 2024 letter requesting a case management conference to discuss subpoenas for deposition on three written questions issued by J&J to mediators in the LTL bankruptcy proceeding.  J&J welcomes the opportunity to address the issues raised by counsel for Beasley Allen and any questions the Court might have during tomorrow morning's scheduled telephone conference.  In the meantime, we submit this brief response to Beasley Allen's letter.

　　*First*, Beasley Allen questions the relevance and propriety of the mediators' responses to the three questions posed by J&J's subpoenas.  Beasley Allen omits to mention, however, that it put the mediators' testimony squarely at issue during the Court's March 25, 2024 hearing. During the hearing, counsel for Beasley Allen:

> (1) asked witness James Murdica whether Mr. Murdica was "aware that it was the mediators in the LTL 2 – the LTL matter that requested that Mr. Conlan participate" in the mediation; and
>
> (2) asked Mr. Murdica, "you cannot answer the question whether the mediators asked that Mr. Conlan participate in trying to reach a resolution; is that correct?"

Hrg. Tr. 289:2-4; 289:17-20.

　　J&J served the subpoenas in direct response to those questions—namely, to rebut Beasley Allen's assertion that the mediators, not Mr. Birchfield and Beasley Allen, invited Mr. Conlan to participate in the mediation, and to establish that Mr. Birchfield and Beasley Allen never informed the mediators that Mr. Conlan had previously represented J&J in this litigation.  A lawyer must have a good faith basis for a question posed on cross-examination, and where questions like those posed by counsel for Beasley Allen seek to create ambiguity in a proceeding, they require clarification.  Having affirmatively injected this issue into the evidentiary hearing,

O'Melveny

Beasley Allen cannot credibly object to J&J's effort to secure testimony to rebut counsel's assertion. Nor can Beasley Allen claim that New Jersey's mediation privilege bars the mediators' testimony, when Beasley Allen affirmatively raised this issue during the hearing's first day. As a result, its assertion that "J&J noticed the Deposition Subpoenas to force Beasley Allen to … join with J&J in an effort to abrogate New Jersey's sacrosanct mediation privilege," Dkt. 31044 at 1, is not well taken.

Beasley Allen's April 3 letter doubles down on its counsel's representations at the hearing by suggesting that the mediators' responses would somehow exonerate Birchfield and Beasley Allen of their ethical misconduct. That position merely affirms the propriety of the requests. But to be clear, there is no exoneration to be had.

So too Beasley Allen's myopic focus on whether specific monetary values in the settlement matrix Mr. Conlan sent to J&J in November 2023 (after first sharing it with lead plaintiffs' counsel in this litigation) wholly sidesteps the salient questions the Court must address when deciding whether the firm must be disqualified. Beasley Allen argues in its letter that the Court should rule as a matter of law that disqualification is unwarranted because "J&J has no evidence" that the settlement matrix proposed by Mr. Conlan (with Mr. Birchfield's endorsement) "is J&J property or ever was." Dkt. 31044 at 3. From start to finish, Beasley Allen is wrong. To start, its premise is that the *only* Rule of Professional Conduct at issue in this case is Rule 1.6. But Rule 1.6 is *not* the only Rule of Professional Conduct that Mr. Conlan violated. He also violated Rule 1.9(a) and 1.9(c), and Beasley Allen and Mr. Birchfield are responsible for those violations under Rules 5.3, 1.10, 8.3, and 8.4. J&J does not need to prove that Mr. Conlan divulged its confidences to Beasley Allen to prevail under any of those rules. In fact, J&J does not even need to prove that it disclosed confidential information to Mr. Conlan for Beasley Allen to be disqualified for his violation of Rule 1.9(a). But J&J did so—and then some—establishing that Mr. Conlan was privy to every aspect of J&J's privileged and confidential evaluation of the claims, defenses and resolution strategies in this litigation.

Beasley Allen's further argument that because the settlement matrix proposed by Mr. Conlan did not use figures known only to J&J's lawyers, Mr. Conlan must not have shared J&J's confidences with Birchfield and Beasley Allen does not follow. Obviously, Mr. Conlan could have shared confidences with Beasley Allen lawyers even if the numbers in the final proposal are not those proposed internally by J&J. Indeed, it would have been impossible for Mr. Conlan *not* to share J&J's confidences with Beasley Allen attorneys when discussing any settlement matrix with them, including this one. Mr. Conlan knew how J&J valued plaintiffs' claims in the aggregate and individually. Any substantive discussion he had with Beasley Allen lawyers about a settlement matrix would necessarily reflect that knowledge. After all, Mr. Conlan is human. He could not possibly stow away J&J's claim valuations in a lockbox in his brain to ensure that this confidential information did not influence his input on valuations discussed with plaintiffs' attorneys. That is why in situations like that here, where someone switches sides in the same matter, the party seeking disqualification need not prove that "client confidences were communicated to the lawyer," *Twenty-First Rail Corp. v. N.J. Transit Corp.*, 44 A.3d 592, 599, 600` (N.J. 2012), much less from the lawyer to the other side. And that is true regardless of whether the lawyer continues to practice law, *see* N.J. Rule Prof. Conduct 1.10, or acts in a non-

legal capacity, N.J. Rule Prof. Conduct 5.3; *see also* N.J. Rules Prof. Conduct 8.3, 8.4.  In fact, even in circumstances far less egregious than those here, New Jersey courts recognize a presumption of shared confidences.  *See Maldonado v. N.J. ex rel Admin. Off. of the Courts-Prob. Div.*, 225 F.R.D. 120, 137 (D.N.J. 2004); *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994) ("To believe [expert witness] did not and will not remember and use that information, even 'subliminally,' defies common sense and human nature.").

Just as significantly, J&J's claim valuations are not the only confidential information Mr. Conlan possessed.  As the hearing testimony established, he also possessed J&J's confidential strategies for how to best to pursue and achieve resolution of the claims in this MDL and across the talcum powder products litigation more broadly, including whom to contact first, in what forum, at what times, under what terms, based on what expectations about the number of future claims, and myriad other strategic considerations.  That confidential information is still critical today, just as it was critical during the months-long period last year when Beasley Allen secretly collaborated with Mr. Conlan and engaged with him in "strategy communications regarding how to consider, conduct, participate in, initiate and/or continue to mediate with J&J regarding plaintiffs' [settlement] proposal."  Special Master Order No. 21 (Granting and Denying in Part Plaintiffs' Motion to Quash or for Protective Order Regarding J&J's Subpoena Directed to KCIC, LLC) at 6.  This "close collaboration" involved "regular communications" regarding those strategies, "including when and how to present the settlement proposal to J&J in the context of mediation."  *Id.*

**Second**, Beasley Allen argues that J&J is not entitled to discovery because the record is closed.  That simply is not true.  The record obviously is not closed because we are in the middle of a multi-day evidentiary hearing in which the Court is receiving additional evidence into the record.  The testimony sought here is directly responsive to Beasley Allen's questions in the first day of that hearing.  And contrary to Beasley Allen's argument, J&J has never represented to this Court that the record was closed.  Arguing on behalf of J&J during the Court's February 7, 2024 hearing, we stated only that the then-current record was *sufficient* to disqualify Mr. Birchfield and Beasley Allen and remove them from the Plaintiffs' Steering Committee, not that the record was "closed."  *See* Feb. 7, 2024 Hrg. Tr. 36:6-19 ("[B]ased on the record before the Court, the Court can and should make [the disqualification] decision as a matter of law at this time.").

**Third**, while Beasley Allen complains about the timing of the subpoenas, it affirmatively does not object.  *See* Dkt. 31044 ("Beasley Allen is willing to serve cross-questions on an expedited basis").  And as Beasley Allen acknowledges, J&J explicitly recognized the time afforded by Rule 31 and asked when serving notice of the subpoenas whether Beasley Allen and the PSC would agree to shorten the period for cross-examination under Rule 31(a)(5) so the parties could complete the depositions before the evidentiary hearing resumes on April 10.  *See* Dkt. 31044 at 4.  Beasley Allen does not object to the timing proposed by J&J and has already formulated the written questions it intends to ask the mediators.

Just as significantly, the three mediators have agreed to certify their responses to the written deposition questions on April 8.  Because J&J, Beasley Allen, and the mediators are in agreement on the timing of the depositions, this Court should find "good cause" and "shorten" the times set out in Rule 31(a)(5) to reflect that agreement.  Fed. R. Civ. P. 31(a)(5).

O'Melveny

---

***Finally***, Beasley Allen proposes to unilaterally rewrite J&J's deposition questions. *See* Dkt. 31044, Ex. A. No provision of the Federal Rules allows a party to rewrite the other side's deposition questions, even when it comes to a deposition by written question. A party does not get to decide how its opponent conducts discovery.

For the foregoing reasons, J&J asks that the Court shorten the time set out in Rule 31(a)(5) to reflect the parties' agreement to allow the mediators to certify their answers to J&J's questions and Beasley Allen's cross questions on April 8, 2024.

Respectfully,

*/s/ Stephen D. Brody*

Stephen D. Brody

cc:    Jeffrey M. Pollock, Esquire
       Michelle A. Parfitt, Esquire
       Leigh O'Dell, Esquire
       Susan M. Sharko, Esquire