```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                         TRENTON DIVISION


                                    ) Docket No. 3:16-md-02738-MAS-RLS
                                    )
IN RE:                              ) Courtroom 7W
                                    ) Clarkson S. Fisher Building
JOHNSON & JOHNSON TALCUM            ) & U.S. Courthouse
POWDER PRODUCTS MARKETING,          ) 402 East State Street
SALES PRACTICES, AND PRODUCTS       ) Trenton, New Jersey 08608
LIABILITY LITIGATION.               )
                                    ) April 5, 2024
                                    ) 12:33 p.m.

     TRANSCRIPT OF TELEPHONE CONFERENCE REGARDING DISCOVERY
         DISPUTES SET FORTH IN DOC NOs. 31044 AND 31070
              BEFORE HONORABLE RUKHSANAH L. SINGH
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:        Beasley Allen Law Firm
                           By:  P. LEIGH O'DELL, ESQ.
                                ANDREW BIRCHFIELD, ESQ,
                           218 Commerce Street
                           Montgomery, Alabama 36104

                           Ashcraft & Gerel, LLP
                           By:  MICHELLE A. PARFITT, ESQ.
                           120 E. Baltimore Street
                           Suite 1802
                           Baltimore, Maryland 21202

ESR/Courtroom Deputy:      MARK MORELLI

Transcription Service:     Transcripts Plus, Inc.
                           435 Riverview Circle
                           New Hope, Pennsylvania 18938
                           Telephone:  215-862-1115
                           E-mail: CourtTranscripts@aol.com

  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING. TRANSCRIPT
                PRODUCED BY TRANSCRIPTION SERVICE.
```

```
 1
 2   APPEARANCES:
      (Continued)
 3
     For the Plaintiffs:    Golomb Legal, P.C.
 4                          By:  RICHARD GOLOMB, ESQ.
                            1835 Market Street
 5                          Suite 2900
                            Philadelphia, Pennsylvania 19103
 6
                            Cohen, Placitella & Roth, PC
 7                          By:  CHRISTOPHER PLACITELLA, ESQ.
                            2001 Market Street
 8                          Suite 2900
                            Philadelphia, Pennsylvania 19103
 9
     For Respondent:        Fox Rothschild LLP
10                          By:   JEFFREY M. POLLOCK, ESQ.
                                  MICHAEL W. SABO, ESQ.
11                          Princeton Pike Corporate Center
                            997 Lenox Drive
12                          Lawrenceville, NJ 08648-2311

13   For the Defendants:    Faegre Drinker
                            By:   SUSAN M. SHARKO, ESQ.
14                          600 Campus Drive
                            Florham Park, New Jersey 07932
15
                            O'Melveny & Myers LLP
16                          By:   STEVE BRODY, ESQ.
                            1625 Eye Street, NW
17                          Washington, DC 20006

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  This is Judge Singh.  We are on the
 2   record and recording the line in the matter of In Re Johnson &
 3   Johnson Talcum Powder Products Marketing, Sales Practices, and
 4   Products Liability Litigation, bearing Docket Number 16-md-
 5   2738.
 6              I understand we have a number of people on the phone
 7   today; how are you all?
 8              UNIDENTIFIED ATTORNEY:  Very good; thanks, Your
 9   Honor.
10              UNIDENTIFIED ATTORNEY:  Very good.  Good morning.
11              THE COURT:  Good morning.
12              So I will ask, if you are speaking to please state
13   your name so that it's clear for our recording.  The Court set
14   this call on short notice because I received the letter dated
15   April 3rd, 2024 from Fox Rothschild on behalf of the Beasley
16   Allen Law firm and Andy D. Burchfield, Jr., Esquire.
17              And I also received the response filed by O'Melveny
18   on April 4th, 2024 regarding the subpoenas that have gone out
19   to the mediators.  And I understand there has been outreach to
20   those three individuals who received the notices of the
21   subpoenas, and they have agreed to respond by Monday.  Is that
22   correct, Mr. Brody?
23              MR. BRODY:  Yes.  And for the record, this is Steve
24   Brody.  Yes, Your Honor, that's correct.
25              THE COURT:  Okay.  So, Mr. Pollock, I set up this
```

```
 1   call initially in response to your letter, so what would you
 2   like to do?
 3              MR. POLLOCK:  Your Honor, I'm going to end and begin
 4   that this is really within your sound discretion.  I am put in
 5   a box because the -- obviously we're shortening the time
 6   frame.  We'd have the right normally upon written question to
 7   ask additional questions.  We're treading on the fine edges of
 8   the mediation privilege, if not trampling on it.  And I'm
 9   worried that the most these questions really do, even our own
10   questions, really is give the Court, at best, a bias picture,
11   so I'm worried about that.  Because obviously, this is a
12   significant issue, apparently, I'm sure it'll come
13   (indiscernible).  And it's troubling, because I don't want the
14   Court to have a distorted picture.
15              I can't formally object and say no, because if I do,
16   J&J is going to say, "Well, they're running from the truth,"
17   or you've got an adverse instance and it wouldn't allow the
18   discovery.
19              And the last point I'll raise is that it is odd that
20   you've asked directly, and Judge Porto asked directly, "Do we
21   need more evidence?"  And even yesterday, Mr. Brody, who's on
22   the phone, said, "We think we've proven our case with the two
23   J&J guys, we don't need this additional stuff, but Judge Porto
24   asked for it, so we're going to go forward."
25              So I'm going end and be quiet at this point, I'm
```

1  going to leave it to your sound discretion.  You can

2  understand why I'm in a box because I, frankly, object to it,

3  but I'm not going to die on this mountain.

4              THE COURT:  Okay; understood.

5              Mr. Brody, would you like to respond?

6              MR. BRODY:  Yes.  And I'll be brief, Your Honor.  I

7  mean, the reason we're here is because of the questions that

8  were put to Mr. Murdica during the evidentiary hearing on the

9  25th of March.  And obviously, we're having the evidentiary

10 hearing because Judge Porto initially -- and Your Honor joined

11 in making this a joint hearing.  Judge Porto indicated in his

12 January 30th opinion that he felt he needed the evidentiary

13 hearing in order to make his decision.

14             And so, you know, the idea that this is somehow, you

15 know, outside the bounds of what we're addressing, I think, is

16 incorrect.

17             And, two, it's something that was injected into the

18 proceedings through questioning by Mr. Pollack on behalf of

19 Mr. Birchfield and Beasley Allen.  And obviously we need to be

20 in position to address things that have been raised in the

21 hearing.  You know, our assumption is that Beasley Allen

22 introduced this into the hearing because it felt that it was

23 an important fact, or important facts, that it wanted to

24 develop and eventually argue against the disqualification

25 motion that's been filed by the defendants here.

1            So we're in a situation where, you know, obviously
2    there is a need to shorten the time in order to receive the
3    answers to the depositions upon written question prior to the
4    continuation of the hearing.  And, you know, everybody is
5    committed to completing the hearing on Wednesday of next week
6    on April 10th.
7            Fortunately, it's a very discrete issue.  I don't
8    think there's any -- certainly can't be any basis to claim
9    mediation privilege when the question was put by Mr. Pollock
10   to Mr. Murdica about this very issue.
11           And so, unfortunately, we are in a situation where
12   the mediators have agreed that they will provide their
13   responses on Monday.  You know, the way that will work is a
14   court reporter authorized to certify the responses will go to
15   them, will take down that information, certify their
16   responses, and then we can arrange to have the court reporter
17   transmit those responses to all counsel at the same time, and
18   then all counsel will have it.  And then, of course, whether
19   either side actually uses -- ultimately uses that information
20   in the hearing or not is something that will play out on
21   Wednesday of next week.
22           So I think it's -- I think it's fairly
23   straightforward at this point, and, you know, we have the
24   questions that Beasley Allen wishes the mediators to answer.
25   We can add those, and I'm happy to work with Mr. Pollock to

```
 1   put those into a single document so that a single document can
 2   be presented to the mediators for certification when they
 3   complete the deposition on written question on the 8th.
 4              THE COURT:  Okay.
 5              MR. POLLOCK:  May I respond, Judge?
 6              THE COURT:  Yes, please.  Go ahead.
 7              MR. POLLOCK:  Just very briefly.  One, this is a
 8   plenary hearing, not a full-blown trial.  And so if, in an
 9   ordinary course, I ask a question, you wouldn't say "stop the
10   proceeding, let me issue some subpoenas and get some more
11   witnesses in here to respond."  So we're taking it away from
12   the plenary basis that it was supposed to be to something
13   else.
14              Two, the fact is that I am concerned that the
15   questions -- when I asked those questions, I did not ask and I
16   was -- I'm very aware of the mediation privilege,
17   unfortunately having wasted too much of my limited lifespan
18   litigating the issue.  I did not ask "what was discussed?"  I
19   asked who attend, you know, where did it start from.  But I
20   didn't ask what was discussed during the course.  There's no
21   confidential information disclosed, and I didn't invite that.
22              The last point that I would raise is that if we ask
23   these questions, I will raise this again before Judge Porto,
24   and I'm being candid with you.  I do question if this is the
25   right vehicle I wish to even get the information that J&J
```

```
 1   really wants because it could paint a bias picture.
 2            That said, I'm going to end where I started; it's up
 3   to you.
 4            THE COURT:  Okay.  Does anyone else wish to be
 5   heard?
 6                     (No audible response)
 7            THE COURT:  Okay.  So this is what we're going to
 8   do.  I am going to grant the request under Rule 31(a)(5) to
 9   shorten the time period, such that the questions and cross-
10   questions may be posed to the three individuals who have
11   received these notices.  Do work together to provide a
12   consolidated document, as suggested by Mr. Brody, so that it
13   streamlines the process.
14            I understand that these three individuals, based off
15   of representations from counsel, have consented to providing
16   their respective responses by Monday, April 8th, 2024.  So I
17   am shortening the time period to that date for purposes of the
18   responses.
19            As to the use of any information received in
20   response to the three subpoenas, the Court is reserving.
21   Let's see what the responses are.  Let's see what the parties
22   intend to use, if at all, at the upcoming hearing, and then
23   we'll decide at that point, particularly because Judge Porto
24   does not have the benefit of our dialogue today.  It will give
25   both Judge Porto and I an opportunity to determine in real
```

```
 1   time based off of real responses, if any, what the applicable
 2   appropriateness of the use of any such response should be at
 3   the time.
 4             Okay?
 5             MR. POLLOCK:  Thank you, Your Honor.
 6             MR. PLACITELLA:  Your Honor?
 7             MR. BRODY:  Thank you, Your Honor.
 8             THE COURT:  All right.
 9             MR. PLACITELLA:  Your Honor?
10             THE COURT:  Yes, anything else?
11             UNIDENTIFIED ATTORNEY:  Thank you.
12             MR. PLACITELLA:  Yes, Your Honor, this is Chris
13   Placitella.  Good afternoon; how are you?
14             THE COURT:  Hi; doing well.  How are you?
15             MR. PLACITELLA:  Good.  I have an additional issue,
16   if you have five minutes, to raise (indiscernible) motion
17   practice.
18             THE COURT:  Sure.  What's going on?
19             MR. PLACITELLA:  Unrelated to the hearing.
20             THE COURT:  Okay.
21             MR. PLACITELLA:  So six weeks ago, the parties
22   agreed to the deposition of the hearing Dr. Kessler, who is a
23   former FDA Commissioner, to take place in Washington, DC this
24   coming Monday.
25             Four weeks ago, the deposition was noticed J&J for
```

1    this coming Monday.

2            On Tuesday, we got an email from counsel for J&J

3    saying they're changing the deposition to remote.  There was a

4    discussion about that, that was after business hours.  The

5    next day, we said, fine, if you want to do it remote, but can

6    you please send us two hard copies of the exhibits under seal,

7    which we won't open until the dep starts so we can make the

8    dep go smoothly?

9            J&J said, we're not doing that, we're not sending

10   the documents, and we're doing it remote.

11           We then said, okay, you're not going to send the

12   documents, can you at least send us a link when the deposition

13   starts to make the deposition go smoothly?

14           J&J says, no, we're not going to do that.

15           We say, okay, well, as long as you conduct the

16   deposition and give the -- and if you're going to send them

17   one at a time, that's fine, you just need to give Dr. Kessler

18   the opportunity to look at the document, and then answer any

19   questions.

20           J&J then says, you know what, forget it.  You wanted

21   to do it in person, we're canceling the deposition, set it for

22   another day.

23           We say no, that's not acceptable.  Dr. Kessler has

24   set the schedule out from his schedule.  We've been prepping

25   with him all week.  Frankly, we paid him money to get ready;

1    I'm sure they'll ask him about that.  We have a team -- we
2    have multiple people traveling from different parts of the
3    country, as we speak.  I personally cleared my schedule,
4    arranged my deposition schedule for my upcoming trial around -
5    - from Judge Viscomi around this deposition, and now J&J is
6    saying, "Well, sorry, why don't we just reschedule it in
7    May?"
8              And, respectfully, this deposition should go
9    forward.  It's been scheduled for now over six weeks.  There's
10   people on planes, people have made hotel reservations, and
11   it's simply not fair to pull the plug at this point in time
12   with really, frankly, no good reason to do so.
13             THE COURT:  Okay; I understand the concern.
14             Who would like to speak on behalf of J&J on this
15   issue?  Hopefully they're on the line.
16             MS. SHARKO:  Yes, this is Susan Sharko.  I had no
17   idea Mr. Placitella was going to bring this up, so I don't
18   have my notes.  I'm in an airport there's a lot of background
19   noise.
20             THE COURT:  Oh, I see.
21             MS. SHARKO:  But I'll do my best.  So the
22   depositions of the plaintiffs' experts, most of them have been
23   adjourned and rescheduled for all kinds of reasons, including
24   the plaintiffs' own issues many times.  And we all work
25   together and we come up with a suitable date.  The Longo

 1   deposition was adjourned; the Levy deposition was adjourned

 2   after people bought airplane tickets.  And the depositions get

 3   adjourned and rescheduled.  So that's the background.

 4              Dr. Kessler is a professional witness.  His expert

 5   report, you may recall from the motion to strike, is something

 6   like 132 pages long.  He has never been deposed in this

 7   litigation.  We have, unfortunately, only seven hours for the

 8   deposition.  His reliance list is 87 or so single-spaced

 9   pages.

10              Our assessment was that it would be most efficient,

11   because of all the documents, to do the deposition by Zoom.

12   We let the plaintiffs know.  All of these depositions, Judge,

13   have Zoom link, and so most of the plaintiff lawyers appear by

14   Zoom.

15              Ms. O'Dell responded and objected to that, and said

16   they would only agree to that if we produced, like, within 24

17   or 48 hours, paper copies of all the exhibits.  That was

18   impossible to do, and we said no.

19              And then -- I don't have all the emails in front of

20   me, but their next condition was you can do it by Zoom, but

21   you have to supply all the documents electronically

22   beforehand.  I mean, we're talking about boxes and boxes of

23   documents.

24              So I said -- and I believe it was on Wednesday,

25   fine, you know what, we agree, we'll do the deposition in

1  person, we'll bring all the documents, and we'll use paper,
2  we'll do it the old fashioned way.
3           And the background is that in some of these
4  depositions, for example, the deposition of Dr. Wolf, the
5  first deposition, which was taken by Zoom, we tried to use
6  documents electronically, and there were long breaks by the
7  plaintiffs, and objections, that ate-up a lot of the time
8  because they said they couldn't see the screen, or they wanted
9  to see the whole document, not just the page on the screen,
10 etc.  So we have to pretty much reverted to doing these in
11 person.
12          And so I said, fine, we'll do this in person.  We
13 can't get you all the documents electronically on this short
14 notice.  We can't get you all the paper copies.  So we'll make
15 ourselves available any day of the week of April 15 or April
16 22.  And the plaintiffs' response was the witness is not
17 available until May.
18          And so, because we're now doing these depositions in
19 the MCL cases and in the MDL cases, depositions have already
20 been rescheduled into May.  Dr. Levy, who was long set for, I
21 think, last week, was moved at the plaintiffs' request to, I
22 believe, May 8.  And there's other depositions in May.
23          So if Dr. Kessler isn't -- is not available in
24 April, we'll do it in May.  But this is much ado about
25 nothing.  We have accommodated each other like grown-ups,

1  rescheduling depositions. You know, at this point I don't
2  even lean on Ms. Parfitt or Ms. O'Dell as to, "okay, why do
3  you need to reschedule it? You know, I already bought my
4  airline ticket." I just say, "Okay, please get me some
5  dates." And I expect that when we start deposing the defense
6  experts, which will be probably as soon as May, because we're
7  serving reports -- most of the reports tonight, that they'll
8  extend the same courtesy to us.
9          So at this point, on Friday afternoon, we're not
10 prepared to go forward, given all the back and forth on "you
11 have to do this, you have to do that with the documents."
12 And, frankly, I'm afraid that Dr. Kessler, being a
13 professional witness -- and I've deposed him before, I know
14 what he's like -- is going to say when a document goes up on
15 the screen, "I can't see it. I want the whole document,"
16 etc., etc. And with only seven hours to depose somebody on a
17 132-page report, that's going to be impossible.
18          So, what I don't -- I guess really --
19          MS. PARFITT: Can I --
20          MS. SHARKO: -- what Mr. Placitella is asking for is
21 to order us to go forward on Monday, and we object to that.
22 We would like to reschedule the deposition.
23          Thank you.
24          MS. PARFITT: Mr. Placitella --
25          MR. PLACITELLA: Judge, may I be heard on that?

1          MS. PARFITT:  This is Michelle Parfitt.  Could I
2   make one comment, Mr. Placitella, before?
3          MR. PLACITELLA:   Sure.
4          MS. PARFITT:  Thank you.
5          Judge Singh, this is Michelle Parfitt speaking on
6   behalf of the plaintiffs' steering committee.  And I and Susan
7   have probably spent far more of our time orchestrating these
8   depositions.  I have been at every one, but maybe two, either
9   defending or there.  There have been quite a few that have
10  been remote so far where defense -- I just took two
11  depositions, or attended two, Dr. Cote and Siemiatycki, and we
12  had remote court reporters and we had remote lawyers.
13         When this deposition was set up several weeks ago,
14  it was coordinated and it was mediated, both time and date.
15  It took for both sides -- Susan's absolutely correct, there's
16  been give-and-take, certainly a lot of give that we've placed
17  because of difficulties with defense, defense for plaintiffs.
18         But the bottom line is Dr. Kessler's deposition has
19  been scheduled for weeks.  Up until just days ago, they were
20  ready to go.  And yesterday, with a remote deposition,
21  prepared to do that.
22         Because there was a little pushback, as it's been
23  characterized, to get documents available, we basically said,
24  "We'll move forward.  Let's go.  We've got to get these done."
25  And that -- they were ready to go last week.  Suddenly,

Case 3:16-md-02738-MAS-RLS   Document 31940   Filed 04/18/24   Page 16 of 20
                                 PageID: 180932

16

1  they're not ready to go this week.  The deposition is supposed

2  to be taken at my office.  We are prepared.  We are ready.

3  We'll have all the accommodations that people needed.  They

4  could have been there in person or not in person.

5           The same preparation should have been ongoing weeks

6  ago that apparently now they're shuffling around to try to

7  accommodate.  And there -- this isn't an accommodation.  These

8  have been extremely difficult to get done.  They were ready

9  weeks ago, they should be ready now.  Nothing changed.

10          The last day were questions about how this would be

11 conducted, and they have conducted them completely remotely

12 without even a court reporter, me present by a witness, no one

13 else in the room, and that even seemed to be fine with them on

14 occasion, and then they've moved off it (indiscernible -

15 background noise) put a lawyer and a court report.  So it's

16 gone both ways.

17          This deposition should go forward.  Everyone is

18 ready.  Mr. Placitella has accurately stated that people have

19 come -- changed their schedules, revise what they need to do

20 with their other cases.

21          And Dr. Kessler is described as a professional

22 witness?  He is an expert that's been retained by the

23 plaintiff, a former Federal Commissioner -- FDA Commissioner.

24 And he is still a busy man.  He gave up two years of his life

25 to help the country with regard to the COVID response.  So

```
 1   it's not that he's not a busy human being and is just a
 2   professional witness that has time to spare.
 3              And this -- and I think the concern is, Your Honor,
 4   is that we have spent a lot of time orchestrating this date,
 5   and it was agreeable, mutually agreeable to go forward.  And
 6   it's only as a result of what happened in the last 24 hours,
 7   and suddenly the defendants can't be ready for this deposition
 8   in the last 24 hours, and they're using it as an excuse.
 9              Plaintiffs requested that they simply try to
10   accommodate a witness with regard to exhibits that could be
11   used.
12              Mr. Placitella, I'm sorry, but I did feel the need
13   to speak up because I've been involved in the planning
14   process.
15              MR. PLACITELLA:  No, that's -- that's fine.  And I
16   really hate to even raise this.  It feels so petty, but the
17   circumstances --
18              MS. PARFITT:  Right.
19              MR. PLACITELLA:  -- are just unexplainable.  I
20   personally have a trial scheduled the first week of May.
21   Everyone has moved a lot of things around to make this happen.
22   They can be there in person, they can do it on Zoom, but it
23   needs to get done.  And they're -- and they really haven't
24   given a good reason not to do it, Your Honor, other than they
25   don't want to do it.  They have the documents.  They can come
```

1   in person.  They can do them however they want to do it.  They
2   have armies of lawyers.  Skadden Arps, their national counsel,
3   has an office literally two blocks away from this -- from Ms.
4   Parfitt's office.
5            So, you know, this is -- this is not a heavy lift.
6   But it is going to be difficult and, frankly, burdensome on a
7   lot of people to just lift it at the last second with no real
8   good reason.  I'll keep quiet now.  I apologize.
9            THE COURT:  Okay.  Thank you.
10           MS. SHARKO:  The good reason, Judge -- the good
11  reason, Judge, is that it's -- I'm very, very concerned about
12  the games that are going to be played with the exhibits if
13  they're used electronically.  They've already foreshadowed
14  that.  And at this point --
15           MR. PLACITELLA:  That's not true.
16           MS. SHARKO:  -- you know, we can -- we can -- excuse
17  me.  I'm talking.
18           At this point, let's move the deposition to the
19  following week, and we'll do it in person.  We'll have all the
20  documents in paper, like the plaintiffs demanded, and we can
21  go forward.
22           THE COURT:  So you're unable --
23           UNIDENTIFIED ATTORNEY:  (Indiscernible - multiple
24  speakers) next week.
25           THE COURT:  Oh, okay.

1                  UNIDENTIFIED ATTORNEY:  (Indiscernible).  Sorry.

2                  THE COURT:  That's all right.  Ms. Sharko, are you
3       unable to do the deposition in person on Monday?

4                  MS. SHARKO:  Yes, given the volume of paper we would
5       have to bring.

6                  MS. PARFITT:  Could I get further explanation, Your
7       Honor, on that?  What's -- the office is literally blocks from
8       my office.  We will -- I will tell you, my office will make
9       accommodations to help them bring their boxes, if that's what
10      they need.

11                 THE COURT:  All right, this is what we're going to
12      do.  Proceed with the deposition on Monday in whichever format
13      you can figure out.  Honestly, I don't think I need to be or
14      should be involved in these types of issues, but this case has
15      to move forward.  You have the issue before District Judge
16      Shipp about anticipated Daubert motions, and I am aware of the
17      pending motion for reconsideration as to the scope of those
18      motions.  We do need to move these things forward, so to the
19      extent there's a request to move forward with the deposition
20      on Monday, I am granting that request.  I'm not compelling any
21      particular format at this time.  I'm leaving it up to counsel
22      to make the appropriate judgment calls.

23                 That being said, if you do proceed virtually and
24      there's, let's say, something afoot with regard to exhibits,
25      I'm here in the courthouse on Monday.  Give me a call in real

1  time, and I will call balls and strikes for you as
2  appropriate, and make directions to the witness, if necessary.
3  Okey-dokey?
4              MR. PLACITELLA:  Thank you; sorry.
5              MS. SHARKO:  Thank you, Judge.
6              MS. PARFITT:  Thank you, Your Honor.
7              THE COURT:  Okay.  All right, great.  All right.
8              MS. PARFITT:  Fine.
9              THE COURT:  All right.  Anything else while I have
10 you then?
11                  (No audible response)
12             THE COURT:  All righty.  Well, then I'll let you
13 have the rest of your Fridays.  Safe travels for those of you
14 who seem to all be moving around.  I hope you enjoy your
15 weekend, at least in some fashion.  Thank you for getting on
16 the call on short notice.  Take care.
17             MULTIPLE SPEAKERS:  Thank you.
18      (Whereupon, the hearing adjourned at 12:58 p.m.)
19
                       CERTIFICATE OF TRANSCRIBER
20
21    I, KAREN HARTMANN, a certified Electronic Court
   Transcriber, certify that the foregoing is a correct
22 transcript from the electronic sound recording of the
   proceedings in the above-entitled matter.
23
24 */s/ Karen Hartmann*              Date: April 10, 2024
   Karen Hartmann, AAERT CET 475
25 TRANSCRIPTS PLUS, INC.