# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE
OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-3222
DIRECT FAX
(917) 777-3222
EMAIL ADDRESS
ALLISON.BROWN@SKADDEN.COM

May 17, 2024

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

Re:     In RE: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation (MDL No. 2738) – Request For Expedited Discovery

Dear Judge Singh:

I am lead trial counsel for Johnson & Johnson ("J&J") and LLT Management LLC ("LLT") (collectively, "Defendants") in this MDL. I write on behalf of Defendants to alert the Court to a subpoena for documents that Defendants are issuing to the Beasley Allen Law Firm (*see* **Appendix A**) and to request that this Court **order an expedited response.** The subpoena seeks documents concerning what appears to be a recent and intentional effort by Beasley Allen to bias the vote against the Plan of Reorganization announced by Defendants on May 1, 2024 (the "Plan").[1] Defendants require your immediate assistance and expedited relief **because voting on the Plan will close on July 26, 2024, just over 60 days from today**.

Based on information that Defendants have learned just this week, it appears likely that Beasley Allen (1) already has provided false and misleading information to its own clients and potentially talc ovarian cancer claimants more generally concerning the Plan; (2) has a plan to further flood talc ovarian cancer claimants with an anti-vote campaign or similar biased and misleading advocacy; (3) failed to communicate to its clients the terms of Defendants' numerous prior offers to resolve the talc litigation, including negotiations that occurred with and offers that were made directly and specifically to Beasley Allen on behalf of its clients; and (4) continues to advocate for positions directly contrary to the interests of talc ovarian cancer claimants despite its

---

[1] Defendants are also issuing related third-party subpoenas to both Fortress Investment Group and Thompson Reuters.

ethical duties to represent the claimants with candor as both officers of the court and a member of the PSC.

Beasley Allen's behavior is concerning for a host of reasons detailed more fully herein. If left unchecked, such egregious behavior threatens to degrade the integrity of these proceedings which, regrettably, Beasley Allen's zealous efforts to oppose Defendants' efforts to comprehensively resolve the talc litigation at every turn and through any means necessary has already threatened to do. More temporally pressing, if their efforts to mislead and obstruct are not immediately exposed, Beasley Allen could ultimately deprive claimants of the very thing the Plan is intended to provide them: Namely, the right to review the terms of the Plan for themselves, vote in their own best interests, and have their voices be heard.

Given the short fuse on the Plan's voting window, time is of the essence.

## BACKGROUND

This request for expedited discovery arises from a series of recent, unsolicited and unexpected communications from an individual plaintiff that Beasley Allen purports to represent (the "Claimant"). (*See* **Exhibit A**, Email from Beasley Allen Claimant to counsel for J&J). The Claimant recently copied both J&J's outside counsel and LLT's in-house counsel, as well as a reporter from Thompson Reuters ("Reuters"), on correspondence to Beasley Allen. In her email, the Claimant sought clarification regarding certain representations that Beasley Allen apparently has made concerning the Plan.

In response to her inquiry, Beasley Allen immediately sought to silence the Claimant by asserting attorney privilege protection over her communication – a communication which voluntarily and seemingly intentionally involved both opposing counsel and the media. In so doing, Beasley Allen tellingly removed both the Claimant and Reuters from the chain with Defendants' counsel. (*Id.*) In reality, the firm's privilege claim was spurious for numerous reasons, not the least of which is the simple fact, immediately confirmed by Reuters' in-house counsel, that Beasley Allen does *not* represent Reuters and, therefore, has no good-faith claim to the assert privilege over the communication. (**Exhibit B**, Email between Reuters in-house counsel and counsel for J&J).

The Claimant then reached out separately to J&J's outside counsel, again without solicitation, providing additional details and disclosures concerning her communications with Beasley Allen, including an eye opening description of the false information that the firm previously has shared with her regarding what it contended was Defendants' unwillingness to engage in resolution discussions over time. In the context of these communications, the Claimant again sought clarification of how she could settle her claim, apparently laboring under the false impression that the Plan would not do exactly that. (**Exhibits C, D**, Emails from Beasley Allen Claimant to lawyers for J&J).

These emails, taken as a whole, make abundantly clear that Beasley Allen has not communicated the terms of Defendants' numerous prior settlement offers and is misrepresenting the Plan to the Claimant.

Honorable Rukhsanah L. Singh, U.S.M.J.
May 17, 2024
Page 3

What's more, the Claimant alleges that she has ***clear cell cancer***, yet appears entirely unaware not only that Defendants have made prior offers to settle claims such as hers and, indeed, are currently soliciting a Plan which would provide compensation for her claim, but also that Beasley Allen, by contrast, is publicly and aggressively advocating that clear cell cancer claims should be deemed worthless, "non-qualifying" cancers and receive no compensation under any resolution. In other words, unbeknownst to the Claimant, Beasley Allen has previously and *is right now advocating against this client's interests*. Beasley Allen is undertaking such advocacy despite its ethical obligations as her attorney and despite its position as an officer of the court, and has even gone so far as to advance such advocacy in a press release in response to the Plan (which was immediately republished by Reuters). (*See* **Exhibit E**, May 1, 2024 Beasley Allen Press Release.).

J&J's counsel did not respond to Claimant's unsolicited email, but instead forwarded it to Beasley Allen, and requested that Beasley Allen confirm that it would (1) cease and desist its false and misleading representations regarding the Plan, and (2) provide corrective disclosures to the Claimant and any others like her to whom it has made such misrepresentations. (**Exhibit C**, Email from Beasley Allen Claimant to lawyers for J&J). Beasley Allen refused to provide that confirmation, which necessitated the filing of the subpoena and this letter motion for expedited relief.

## BASIS FOR THE REQUESTED EXPEDITED RELIEF

As already alluded to, the information revealed in the Claimant's correspondence raises a panoply of ethical issues, and further calls into question the propriety of Beasley Allen's position on the Plaintiff Steering Committee ("PSC"). It also threatens the success of the Plan which, notably, would not only resolve all the claims now pending before this Court, but relatedly would provide the Claimant with an opportunity to vote in favor of receiving compensation for her unique form of injury – compensation that her attorneys apparently oppose.

*First*, Beasley Allen's provision of false and misleading information to the Claimant concerning the Plan—in a clear effort to bias the Claimant's vote against the Plan—is unlikely an isolated incident. But even if it were, such efforts represent a breach of Beasley Allen's ethical obligations to the Claimant, constitutes actionable falsehoods and unfair methods of competition, and violates the solicitation provisions of the Bankruptcy Code.[2] The Plan seeks a comprehensive and final resolution of all the claims now pending before this Court. As a member of the PSC, Beasley Allen has an obligation to ensure that true and accurate information concerning any proposed resolution of these claims, including through the Plan, is conveyed to the Claimant, each

---

[2] *See* 11 U.S.C. § 1125(e); *see also Official Comm. of Equity Sec. Holders of Mirant Corp. v. The Wilson Law Firm, P.C. (In re Mirant Corp.)*, 334 B.R. 787, 789-790, 793 (Bankr. N.D. Tex. 2005) (finding that solicitation of rejections of a plan of reorganization through the use of misleading or counterfactual materials does not constitute good faith solicitation within the meaning of section 1125(e) of the Bankruptcy Code).

of their clients, and indeed all plaintiffs in this MDL—instead of doing precisely the opposite, *i.e.*, disseminating false and misleading representations concerning Defendants' proffer.

*Second*, Beasley Allen's provision of false and misleading information to the Claimant concerning Defendants' willingness to compensate her for her clear cell cancer—while at the same time representing to both the Bankruptcy Court and the public that such claims should not be allowed to proceed, let alone receive value—constitutes (1) a breach of Beasley Allen's duties to its client, and (2) a breach of Beasley Allen's duties of candor as an officer of the court. Much like other motions now pending before this Court, these circumstances strongly suggest that Beasley Allen should be relieved from its position on the PSC.

*Third*, Beasley Allen's failure to advise the Claimant of J&J's prior offers to settle her claims (and the claims of other Beasley Allen clients) is a further breach of its duties to the Claimants and all of its clients, which further demonstrates that the firm should not be a member of the PSC. This breach is particularly troubling because it is not the first time that Beasley Allen has failed to communicate openly, honestly and consistent with its ethical obligations concerning financial matters. Indeed, Beasley Allen's conduct suggests other recently discovered financial interests—which should have been disclosed previously—are actually driving its decisions relating to the resolution of the talc litigation.

More specifically, as this Court is aware, District of New Jersey Rule 7.1.1 requires that within 30 days of a case being filed, a party must disclose whether it is in receipt of any third-party funding, and specifically disclose (1) the identity of the funder; (2) "whether the funder's approval is necessary for litigation decisions or settlement decisions in the action…; and (3) "a brief description of the nature of the financial interest." Pertinent to those obligations, unlike other firms, Beasley Allen has never filed a disclosure in this matter. And yet, Andy Birchfield of Beasley Allen testified in the LTL 2 bankruptcy proceedings pending before this Court, that in a number of the cases in which his firm acts as co-counsel with Allen Smith, the case has benefitted from litigation financing from the private equity firm Fortress Investment Group ("Fortress"). (*See* **Exhibit F**, April 17, 2023 Deposition of Andy Birchfield at 44:22-45:6; 155:3-14.[3]

Four inevitable and obvious questions necessarily follow: (1) Why has Beasley Allen concealed its financing? (2) Is the magnitude of that financing, and the interest rate on that financing, influencing (directly or through its co-counsel) derailing Beasley Allen from fulfilling its ongoing ethical obligations in this MDL, including its willingness to resolve the talc litigation on reasonable terms, consistent with its clients' interests? (3) To what extent, under the terms of Fortress's financing arrangement, is Fortress—or any other entity to whom Fortress transferred, syndicated or factored its financing—dictating which settlements should be accepted or promoted by Beasley Allen? And (4) What other undisclosed financing is Beasley Allen receiving that implicates these same issues?

---

[3] Defendants respectfully suggest that it may be appropriate for the Court to remind the counsel involved in this matter of their obligations under Rule 7.1.1, and order immediate compliance with the Rule within the next 10 days.

Honorable Rukhsanah L. Singh, U.S.M.J.
May 17, 2024
Page 5

As wisely raised by New Jersey's Rule 7.1.1, a critical question in the litigation funding space is whether and to what extent the funder's approval is necessary for litigation decisions and/or effectively controlling strategy or settlement. These questions require answers.

## **REUTERS COMPLICITY IN THESE MATTERS**

In addition to the myriad ethical concerns and possible rule violations raised by Beasley Allen's communications, each of which independently justifies the expedited discovery sought by Defendants' subpoena, the Court should order expedited compliance with the subpoena to fully and finally unmask whether and to what extent Beasley Allen has surreptitiously coordinated and communicated with Reuters concerning the talc litigation. And for present purposes, whether Beasley Allen already is or has express designs to use Reuters to disseminate a misinformation campaign related to the Plan.

Unfortunately, Reuters' odd, if not suspicious, inclusion in the Claimant's communications implicates a recurring issue with Reuters' role in fomenting talc litigation on behalf of the plaintiffs' bar. The talc litigation first gained momentum following Reuters' publication in 2018 of a purported exposé—which it termed "a Reuters Investigation"—wherein it incorrectly claimed to have discovered that J&J knew its talc products contained asbestos. J&J's stock dropped 10% the day that article was released, and in turn, the article became the foundation for a securities class action. What discovery in that class action revealed, however, is that Reuters did not conduct an "investigation," but rather had been fed a one-sided narrative by the plaintiffs' bar. Specifically, a declaration submitted by a particular plaintiffs' lawyer in that case attested that he gave Reuters the documents it cited in the article and that the drop in J&J's stock price furthered his firm's interest in the talc litigation. (*See* **Exhibit G**, Lanier declaration). Sadly, Reuters acted as the mouthpiece of the plaintiffs' bar then and has continued to do so since.

Most problematic, Reuters has continued to do the bidding of plaintiff lawyers, including Beasley Allen, by publishing articles disparaging J&J's litigation positions in advance of key events in the talc litigation. By way of example, in advance of the February 2022 hearing on plaintiffs' motion to dismiss LTL 1, plaintiffs' lawyers funneled selective documentation to Reuters, which in turn Reuters cited in its article reiterating the plaintiffs' lawyers' position at the hearing. (*See* **Exhibit H,** Article). The deliberate nature of Reuters' collaboration was revealed at close of LTL 2, when plaintiffs' lawyers inadvertently disclosed the identity of the high-priced public-relations firm they had been using to coordinate their manipulation of public perception surrounding talc litigation generally and the bankruptcy proceedings more specifically. That PR firm, in turn, not only conceded but bragged about the scheme – including its work with Reuters – in public facing material. (*See* **Exhibit I**, TASC website).

Reuters is not entitled to the First Amendment protection afforded to the "Fourth Branch" when it is not acting as an unbiased news agency, but instead as an advocate and mouthpiece of firms like Beasley Allen. Immediate discovery into any communications between Beasley Allen and Reuters regarding the Plan, and in particular any effort to use Reuters to advance a misinformation campaign regarding the Plan, is needed and warranted on an expedited basis. The Plan's voting window is short. If claimants have any chance of truly considering the Plan and

voting their own interests before the deadline, Defendants' efforts to shine a light on and halt Beasley Allen's efforts to bias the voting process must come to fruition in the immediate term.

## CONCLUSION

Beasley Allen's economic motivation to derail the Plan is well established. As Mr. Birchfield has conceded under oath, Beasley Allen stands to profit materially if the Plan is thwarted and it coerces a resolution outside of bankruptcy. (*See* **Exhibit F**, April 17, 2023 Deposition of Andy Birchfield at 18:8-20:8; 20:24-21:11; 25:6-24). Indeed, the very day the Plan was announced, Mr. Birchfield issued a press release denouncing the Plan, without even allowing the Claimant, the firm's broader clients, or claimants represented by other firms the opportunity to first read its terms. (*See* **Exhibit E**, May 1, 2024 Beasley Allen Press Release).

This crazed commitment to derailing, time and again, a comprehensive resolution of the talc docket runs headlong into Beasley Allen's ethical obligations to the Claimant, to its clients, to the broader claimants in this MDL, to this Court and to the Bankruptcy Court. It should not be countenanced or allowed to continue under cover of darkness and masked by false claims of privilege.

For the foregoing reasons, Defendants request that this Court order the expedited production of documents responsive to the subpoena attached as **Appendix A**. Time is of the essence given the short, three-month solicitation period afforded by the Plan. (*See* **Exhibit J**, Plan Press Release.) The exigency is clear.

Defendants are affording all talc ovarian cancer claimants the opportunity to vote and decide for themselves whether the Plan is in their best interests – an objective that Beasley Allen, as an officer of the Court and an ethics-bound representative of injured women, should embrace and encourage. Any effort by Beasley Allen to derail and bias the vote should be addressed immediately.

Respectfully submitted,

Allison M. Brown

cc: All Counsel (via ECF)