# Exhibit F

Page 1

1

2          UNITED STATES BANKRUPTCY COURT OF NEW JERSEY
                      Case No. 23-12825
3    - - - - - - - - - - - - - - - - -  x
     In re:                              :
4                                        :
     LTL MANAGEMENT LLC,                  :
5                                        :
                            Debtor,   :
6    - - - - - - - - - - - - - - - - - -x
     LTL MANAGEMENT LLC,                  :
7                                        :
                          Plaintiff,   :
8                                        :
                v.                       :
9                                        :
     THOSE PARTIES LISTED ON APPENDIX A :
10   TO COMPLAINT and JOHN AND JANE DOES:
     1-1000,                             :
11                                       :
                          Defendants. :
12   - - - - - - - - - - - - - - - - - -x
13                              April 17, 2023
                                1:12 p.m.
14                              7 Times Square
                                New York, NY
15

16

17

18

19

20          VIDEOTAPED AND REMOTE DEPOSITION UPON
21   ORAL EXAMINATION OF ANDY BIRCHFIELD, ESQ., held
22   at the above-mentioned time and place, before
23   Randi Friedman, a Registered Professional
24   Reporter, within and for the State of New York.
25

Page 18

1                A. Birchfield, Esq.
2    A    Yes.                      13:26:38
3    Q    They have been since October 2021;    13:26:38
4    correct?                      13:26:40
5    A    Except for a very brief --       13:26:41
6    Q    Two hours?              13:26:43
7    A    Yes.                    13:26:43
8    Q    And you're aware from your      13:26:45
9    participation in the MDL that in September of    13:26:47
10   2020, Judge Wolfson ordered the formation of --    13:26:51
11   an administration of a common benefit fund for    13:26:54
12   the payment of fees and expenses incurred in    13:26:58
13   connection with the MDL correct?      13:27:01
14   A    I'm aware that a common benefit fee    13:27:03
15   order was entered. I couldn't give you the date.    13:27:06
16   Q    Sometime around the September 2020    13:27:11
17   time frame?                  13:27:13
18   A    I don't dispute that. I don't know.    13:27:16
19   Q    It was sometime before the LTL    13:27:18
20   bankruptcy was commenced in October of 2021;    13:27:21
21   correct?                      13:27:24
22   A    Yes.                    13:27:24
23   Q    And you're generally familiar with the    13:27:25
24   terms of that agreement?          13:27:27
25   A    Yes.                    13:27:28

Page 19

1                A. Birchfield, Esq.
2    Q    Okay. So pursuant to the common    13:27:29
3    benefit order that Judge Wolfson entered, up to    13:27:36
4    12 percent of any amount recovered on talc claims    13:27:39
5    in the MDL is assigned to a common benefit;    13:27:42
6    right?                      13:27:47
7    A    Could be, yes. My understanding is    13:27:48
8    it's -- 10 percent fee is 2 percent cost.    13:27:51
9    Q    Right. So let's say, for example, in    13:27:55
10   the MDL, if the settlement was obtained for    13:27:58
11   $8.9 billion, the common benefit fund would be up    13:28:02
12   to $1.068 billion, which is 12 percent; right?    13:28:07
13          MS. SLOCUM: Objection. You're    13:28:12
14   asking him to speculate as to a settlement    13:28:12
15   in the MDL which did not occur.      13:28:15
16          MR. HAAS: I'm asking him to    13:28:18
17   answer the question of whether or not he    13:28:19
18   would agree that if there's a settlement in    13:28:20
19   the MDL, which is a gross recovery amount in    13:28:21
20   the MDL, up to 12 percent of that would go    13:28:25
21   into the common benefit fund, and that    13:28:30
22   number is, I'll represent for the record, is    13:28:32
23   1.068 billion.                13:28:33
24          MS. SLOCUM: Objection. The    13:28:38
25   court's order states what it is, okay.    13:28:39

Page 20

1                A. Birchfield, Esq.
2          MR. HAAS: No. If you want to    13:28:42
3    object, object. If you want to instruct him    13:28:43
4    not to answer, do so.            13:28:45
5    BY MR. HAAS:                  13:28:46
6    Q    Answer the question.          13:28:47
7    A    When you say up to that amount, I    13:28:48
8    would agree with that. It would not be that    13:28:50
9    amount because there are -- there were different    13:28:53
10   provisions where firms could agree early on and    13:29:00
11   there would be a lesser percentage. So it's not    13:29:04
12   12 percent across the board.        13:29:07
13   Q    You're referring to, let's say,    13:29:08
14   Paragraph 24 of the order, which states that if    13:29:09
15   you participate early on, the contribution    13:29:11
16   percentage would be 8 percent, not 12 percent;    13:29:15
17   right? Is that what you're referring to?    13:29:19
18   A    I'm not sure of the paragraph. I    13:29:20
19   didn't review it, you know -- I didn't review it    13:29:22
20   for this deposition. I'm not disputing that.    13:29:26
21   I'm talking to you in terms of -- I'm testifying    13:29:28
22   in terms of in my general understanding of the    13:29:31
23   common benefit.                13:29:34
24   Q    So your general understanding is that    13:29:36
25   the range of fees that could be contributed to    13:29:38

Page 21

1                A. Birchfield, Esq.
2    the common benefit fund is anywhere from    13:29:41
3    8 percent to 12 percent of the gross recovery    13:29:44
4    amount, depending upon whether or not the    13:29:48
5    individual firms were early participation or not?    13:29:51
6    A    Yes.                    13:29:56
7    Q    So that would be anywhere between    13:29:56
8    $712 million or $1.068 billion for 8.9 gross    13:29:58
9    recovery amount; right?            13:30:05
10   A    I'm trusting your math. I can't do    13:30:08
11   that in my head.                13:30:10
12   Q    Okay.                    13:30:11
13   A    Not quickly, anyway.          13:30:12
14   Q    And that gross recovery amount that is    13:30:14
15   put into the common benefit fund is then provided    13:30:19
16   to those firms that provide common benefit work    13:30:25
17   product for the MDL; correct?      13:30:30
18   A    As a general rule, you know, that is    13:30:34
19   true. I mean, typically what would happen when a    13:30:36
20   court enters a common benefit assessment award    13:30:39
21   like this, then there would be, you know, a    13:30:42
22   determination, you know, at the back end about,    13:30:45
23   you know, the amount -- the amount of the overall    13:30:50
24   pot, the overall common benefit fund amount. And    13:30:54
25   then that amount would be overseen by, you know,    13:31:00

6 (Pages 18 - 21)

Page 22

1           A. Birchfield, Esq.
2  an Article III judge to determine, you know, what   13:31:04
3  is an appropriate, you know, allocation of those   13:31:07
4  funds.  And that's -- you know, that is the   13:31:09
5  typical way, you know, that from my experience   13:31:13
6  the common benefit fees are -- you know, are   13:31:16
7  handled.                    13:31:19
8           So the first determination is, okay,   13:31:19
9  the order is entered, and the order is entered   13:31:22
10  to -- you know, as an approximation of what would   13:31:25
11  be necessary, the court at the end would   13:31:31
12  determine if that is appropriate, and if so, then   13:31:34
13  begin the allocation process among the lawyers   13:31:37
14  who did the work on behalf of the other   13:31:39
15  claimants.                   13:31:42
16      Q    And the allocation of that amount   13:31:45
17  among the lawyers that did the work depends upon   13:31:47
18  what common benefit work they did; correct?   13:31:51
19      A    Yes.                13:31:54
20      Q    Okay.  And the plaintiff steering   13:31:54
21  committee that's in the MDL is tasked with the   13:31:58
22  responsibility of identifying who should do that   13:32:02
23  common benefit work; right?           13:32:04
24      A    As a general -- as a general       13:32:06
25  principle, yes.                13:32:08

Page 23

1           A. Birchfield, Esq.
2      Q    And Beasley Allen sits on that       13:32:09
3  plaintiff steering committee; correct?       13:32:11
4      A    Correct.             13:32:13
5      Q    And Beasley Allen to date, you would   13:32:14
6  agree with me, has performed the vast majority of   13:32:19
7  the common benefit work product incurred,   13:32:22
8  according to Beasley Allen, the largest       13:32:24
9  percentage of the common benefit expenses; right?  13:32:28
10          MS. SLOCUM:  Objection.  That's   13:32:30
11  requiring work product.           13:32:32
12          MR. HAAS:  No, it's not.  It's a   13:32:35
13  fact.                    13:32:36
14  BY MR. HAAS:                13:32:36
15      Q    Go ahead, you can answer.       13:32:37
16          MS. SLOCUM:  Objection still   13:32:38
17  stands.                   13:32:38
18  BY MR. HAAS:                13:32:39
19      Q    You can answer.          13:32:39
20      A    I'm not trying to avoid or be evasive   13:32:42
21  here in any way.  I mean, has Beasley Allen done,   13:32:46
22  you know, a substantial amount of the, you know,   13:32:50
23  the work in the MDL?  Yes.  Sitting here, me   13:32:53
24  personally, I cannot give you an answer about how   13:32:59
25  much, you know, Beasley Allen has done, you know,   13:33:01

Page 24

1           A. Birchfield, Esq.
2  versus, you know, Ashcraft & Gerel or Levin   13:33:05
3  Papantonio and Mr. Tisi versus Mr. Golomb.  So to   13:33:08
4  say vast majority, I think, is more than --   13:33:14
5  that's farther than I can go at this point.   13:33:16
6      Q    Beasley Allen tracks those amounts;   13:33:18
7  right?                   13:33:20
8      A    Beasley Allen -- Beasley Allen tracks,  13:33:23
9  you know, the work that we do for the, you know,   13:33:26
10  for the MDL.                13:33:30
11      Q    Do you provide any reports?       13:33:31
12      A    I don't.             13:33:33
13      Q    Do you know whether Beasley Allen   13:33:34
14  does?                   13:33:35
15      A    I'm not sure.  I mean, Ms. O'Dell is   13:33:36
16  co-lead and --             13:33:41
17      Q    Do you have --          13:33:43
18      A    She's co-lead of the MDL.       13:33:43
19      Q    You're the head of the mass torts   13:33:45
20  litigation practice at Beasley Allen, are you   13:33:47
21  not?                    13:33:47
22      A    I am.                13:33:49
23      Q    Do you have any sense of whether or   13:33:49
24  not Beasley Allen has a claim to be the largest   13:33:50
25  percentage of the common benefit fund based on   13:33:54

Page 25

1           A. Birchfield, Esq.
2  fees and work done to date?           13:33:57
3      A    That would be the determination of --   13:34:00
4  of an Article III judge if it is administered   13:34:03
5  through the MDL court.           13:34:07
6      Q    Based upon the work done to date, is   13:34:09
7  it Beasley Allen's position that it has   13:34:11
8  undertaken the largest percentage of the common   13:34:16
9  benefit work and incurred the largest percentages  13:34:20
10  of the expenses to date?           13:34:23
11          MS. SLOCUM:  Objection.  Asked and   13:34:24
12  answered.                   13:34:24
13          MR. HAAS:  No, it's not.       13:34:25
14  BY MR. HAAS:                13:34:25
15      Q    You can answer.          13:34:26
16          MS. SLOCUM:  He did.  He       13:34:26
17  already --                 13:34:27
18          MR. HAAS:  That was not asked.  He   13:34:28
19  can answer.                 13:34:29
20          MS. SLOCUM:  He answered.       13:34:30
21  BY MR. HAAS:                13:34:31
22      Q    You can answer.  Go ahead.       13:34:32
23      A    If you're asking my opinion as we sit  13:34:33
24  here today, my opinion is probably so.       13:34:35
25      Q    Yeah.                13:34:38

7 (Pages 22 - 25)

Page 42

1         A. Birchfield, Esq.
2 co-counsel arrangements with Mr. Ferrer and his    13:53:12
3 firm.                              13:53:17
4         Nick Johnson, I'm not aware of -- I'm    13:53:19
5 not aware of any cases where we have co-counsel    13:53:22
6 arrangements.                       13:53:27
7         So who else?                 13:53:29
8    Q    Adam Pulaski?                13:53:32
9    A    Adam Pulaski we do have. We do have    13:53:33
10 co-counsel arrangements with Mr. Pulaski.    13:53:37
11   Q    Okay. Anyone else, sitting here    13:53:40
12 today?                           13:53:41
13   A    No. I mean, if you want to -- if you    13:53:47
14 want to tell me who else?           13:53:50
15   Q    We can march it through. If you don't    13:53:53
16 recall, that's fine, I'll move on. I just want    13:53:57
17 to get your understanding and your recollection.    13:54:00
18   A    I don't know of anyone -- I don't know    13:54:04
19 of anyone else, but if you want to ask me about    13:54:07
20 specific ones, I'd be glad to answer.    13:54:09
21   Q    Okay. So circling back, you testified    13:54:11
22 that Allen Smith had a litigation financing    13:54:15
23 arrangement with respect to the talc claims for    13:54:19
24 which you are co-counsel. Do you understand the    13:54:20
25 terms of those litigation financing arrangements?    13:54:22

Page 43

1         A. Birchfield, Esq.
2    A    No.                         13:54:25
3         MS. SLOCUM: I'm going to --    13:54:25
4 BY MR. HAAS:                       13:54:26
5    Q    Do you have an understanding of the    13:54:26
6 financing company? Who it is?        13:54:28
7    A    I'm not certain.             13:54:39
8    Q    Are you familiar with MHR?       13:54:40
9    A    MHR? Are you talking about -- is MHR    13:54:42
10 a financing for --                 13:54:51
11   Q    I'm asking the question. Are you    13:54:53
12 familiar?                         13:54:55
13   A    That does not --             13:54:56
14   Q    So your testimony is you have no    13:55:00
15 understanding of which entity is financing the    13:55:02
16 talc claims that Allen Smith is a co-counsel with    13:55:07
17 you?                             13:55:10
18   A    I'm saying that I am not certain.    13:55:12
19   Q    Who do you think it is?         13:55:15
20        MS. SLOCUM: Objection. Are you    13:55:20
21 asking hum to speculate or guess?    13:55:21
22        MR. HADDAD: Mr. Haas, you have to    13:55:26
23 let other people finish. You're making it    13:55:27
24 very difficult --                  13:55:29
25        MS. SLOCUM: Let me finish my    13:55:30

Page 44

1         A. Birchfield, Esq.
2 objection. You're asking him to take a    13:55:30
3 guess. The witness has testified he doesn't    13:55:32
4 know. He's not familiar. You put out a    13:55:33
5 name, MHR. He either knows --        13:55:36
6         If you don't know, say you don't    13:55:39
7 know.                            13:55:40
8         THE WITNESS: I don't know.      13:55:41
9 BY MR. HAAS:                       13:55:42
10   Q    You said you weren't sure. Do you    13:55:42
11 have any sense -- that's a fact question. Do you    13:55:44
12 have any sense of who it is?         13:55:46
13        MS. SLOCUM: Objection, vague. I    13:55:48
14 don't even know what that means, "any    13:55:49
15 sense."                          13:55:51
16 BY MR. HAAS:                       13:55:51
17   Q    You may answer, sir.           13:55:52
18   A    Are you talking about at any point in    13:55:53
19 time?                            13:55:57
20   Q    Yeah. I'll take whatever testimony    13:55:58
21 you have.                         13:56:00
22   A    I mean, I understand that, you know,    13:56:01
23 that, you know, at one point Fortress, but I    13:56:04
24 can't -- I can't say that with certainty. And I    13:56:10
25 wouldn't want to guess.             13:56:20

Page 45

1         A. Birchfield, Esq.
2    Q    Aside from Fortress, are you aware of    13:56:21
3 any other litigation financing entity that is    13:56:23
4 providing financing for the talc claims for which    13:56:25
5 you have co-counsel?               13:56:29
6    A    No.                         13:56:31
7    Q    Shifting over to the claims for which    13:56:33
8 you do not have co-counsel, are the talc claims    13:56:35
9 that Beasley Allen represents securitization or    13:56:40
10 collateralization for any loan provided to    13:56:45
11 Beasley Allen?                     13:56:47
12        MS. SLOCUM: Objection. I'm going    13:56:48
13 to instruct the witness not to answer that.    13:56:50
14        MR. HAAS: On what grounds?       13:56:52
15        MS. SLOCUM: Relevance.         13:56:54
16        MR. HAAS: On relevancy? You're    13:56:54
17 instructing on a relevancy instruction?    13:56:56
18        MS. SLOCUM: Yeah.             13:56:58
19        MR. HAAS: Let me be absolutely    13:56:58
20 clear what your instruction is. You're    13:57:00
21 instructing the witness not to answer on    13:57:02
22 relevance?                        13:57:03
23        MS. SLOCUM: Also on work product. 13:57:05
24        MR. HAAS: Now it's work product?    13:57:06
25        MS. SLOCUM: I'll do both. Allie    13:57:08

12 (Pages 42 - 45)

Page 154

1          A. Birchfield, Esq.
2    A    They returned a verdict -- a defense   16:37:18
3  verdict. You asked me if I knew how long it took   16:37:20
4  and I said I do not know. You asserted that it   16:37:22
5  was less than an hour. I said I don't dispute   16:37:24
6  that.                              16:37:26
7    Q    All right. We're good. Let's talk   16:37:27
8  about the Forrest case.                16:37:29
9        Do you know where that case was tried?   16:37:30
10   A    I believe the Forrest case was also   16:37:34
11 tried in St. Louis, but I cannot say that with   16:37:38
12 certainty.                          16:37:40
13   Q    And just before I move to the Forrest   16:37:41
14 case, in terms of the Giese, Trentman and Vogeler   16:37:44
15 case, you had co-counsel in that case; right,   16:37:47
16 sir?                               16:37:50
17   A    Yes.                       16:37:50
18   Q    All right. And was Ashcraft & Gerel   16:37:51
19 involved in that case with you folks? Michelle   16:37:56
20 Parfitt?                            16:38:01
21   A    Michelle Parfitt has served as   16:38:04
22 co-counsel in some of these trials and has put on   16:38:07
23 experts. I'm not sure. I cannot say with   16:38:11
24 certainty. I believe she was involved in the   16:38:13
25 Giese trial, but I cannot say that with   16:38:15

Page 155

1          A. Birchfield, Esq.
2  certainty.                          16:38:18
3    Q    Okay. Certainly Allen Smith was   16:38:18
4  involved; right? He opened and closed in that   16:38:20
5  case?                              16:38:22
6    A    That's my understanding, yes.   16:38:23
7    Q    Okay. And he's the one who has the   16:38:23
8  funding from Fortress; right?            16:38:26
9        MR. HADDAD: Objection to the   16:38:31
10 form.                              16:38:32
11       MS. SLOCUM: Objection to the   16:38:32
12 form.                              16:38:32
13       THE WITNESS: To the best of my   16:38:34
14 view, that's my understanding.           16:38:35
15 BY MS. BROWN:                       16:38:36
16   Q    The Forrest case, your team was also   16:38:37
17 teamed up with Allen Smith on that case as well;   16:38:41
18 right, sir?                          16:38:44
19   A    I think that's correct.        16:38:46
20   Q    And I thought there were also some   16:38:47
21 folks from the Onder firm, too; right?   16:38:49
22       MS. SLOCUM: Objection to form.   16:38:52
23 Is that a question?                   16:38:56
24       THE WITNESS: I believe the Onder   16:38:58
25 law firm, you know, served as local counsel.   16:38:59

Page 156

1          A. Birchfield, Esq.
2  BY MS. BROWN:                       16:39:03
3    Q    All right. And in the Forrest case,   16:39:04
4  you and your team put before the jury a request   16:39:05
5  for medical expenses of approximately   16:39:09
6  $260,000.00; right, sir?               16:39:11
7        MR. O'DELL: Object to the form.   16:39:14
8  Which case?                         16:39:15
9        MS. SLOCUM: Object to the form.   16:39:16
10       MS. BROWN: We're up to Forrest.   16:39:17
11 We're going down the list.              16:39:20
12       MS. O'DELL: Excuse me.         16:39:22
13       MS. BROWN: No worries.         16:39:23
14 BY MS. BROWN:                       16:39:24
15   Q    Is that right, sir, if you look where   16:39:24
16 the Fortress line is on the chart?         16:39:27
17   A    Yes.                       16:39:28
18   Q    All right. And that jury awarded $0;   16:39:28
19 right?                             16:39:30
20   A    Yes.                       16:39:30
21   Q    That was also a defense verdict in the   16:39:31
22 City of St. Louis; right?               16:39:33
23   A    Yes.                       16:39:35
24   Q    And in terms of the Fox, Giannecchini,   16:39:35
25 Ristesund and Slemp cases, all of those cases   16:39:40

Page 157

1          A. Birchfield, Esq.
2  were reversed on appeal; right?          16:39:44
3    A    Yes. I mean, you know, the Fox   16:39:48
4  verdict was a 72 million-dollar verdict. The   16:39:52
5  Giannecchini, I believe, was 55. Ristesund, I   16:39:55
6  believe, was -- I believe that was 70. And   16:40:02
7  Slemp, maybe 110. I believe that's correct.   16:40:07
8  Those cases -- those cases were vacated based on   16:40:10
9  the BMS Supreme Court decision on personal   16:40:15
10 jurisdiction. But those cases -- so those cases   16:40:18
11 are refiled and currently pending.        16:40:22
12   Q    Right. But in terms of what's   16:40:25
13 important to an individual claimant, right, the   16:40:26
14 amount of money that ultimately went to these   16:40:29
15 individuals, it was $0; right, sir?       16:40:33
16       MS. BROWN: Objection to form.   16:40:36
17       MR. HADDAD: Objection.         16:40:37
18       THE WITNESS: So far. So far.     16:40:37
19 BY MS. BROWN:                       16:40:38
20   Q    And the Brower case that case you   16:40:39
21 listed here for medical bills of 1.2 million   16:40:41
22 dollars; right, sir?                  16:40:44
23   A    Yes.                       16:40:46
24   Q    All right. And that case ended in a   16:40:46
25 mistrial; right?                     16:40:49

40 (Pages 154 - 157)

Page 214

```
 1            A. Birchfield, Esq.
 2         INDEX TO TESTIMONY
 3          EXAMINATION OF
 4  ANDY BIRCHFIELD, ESQ.              PAGE
 5  BY: Mr. Haas            7
 6  BY: Ms. Brown              141, 209
 7  BY: Mr. Haddad            202
 8            * * *
 9          E X H I B I T S
10  Birchfield
    Number   Description        Page
11  Exhibit 1   Email            65
12  Exhibit 2   Email Exchange        65
13  Exhibit 3   Press Release       126
14  Exhibit 4   Value of Ovarian Cancer Claims  144
15  Exhibit 5   Talcum Powder Verdicts     161
16  Exhibit 6   Talcum Powder        169
17  Exhibit 7   NeoTYPE Analysis Discovery    178
            Profile
18
    Exhibit 8   Susan Vogeler Document      185
19
    Exhibit 9   NCI Document       187
20
    (Exhibits were retained by reporter.)
21            * * *
22
23
24
25
```

Page 215

```
 1            A. Birchfield, Esq.
 2          MARKED QUESTIONS
 3  1)Page 117, Line 22
 4  2)Page 118, Line 20
 5  3)Page 123, Line 3
 6            * * *
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 216

```
 1            A. Birchfield, Esq.
 2          C E R T I F I C A T I O N
 3      I, Randi Friedman, Registered
 4  Professional Reporter and Notary Public of the
 5  State of New York, do hereby certify:
 6      THAT, the witness whose testimony is herein
 7  before set forth, was duly sworn by me, and
 8  THAT, the within transcript is a true record of
 9  the testimony given by said witness.
10      I further certify that I am not related
11  either by blood or marriage to any of the parties
12  to this action; and that I am in no way
13  interested in the outcome of this matter.
14      IN WITNESS WHEREOF, I have hereunto set my
15  hand this 18th day of April, 2023.
16
17
18      Randi C. Friedman
19  Randi Friedman, RPR
20
21
22
23
24
25
```

Page 217

```
 1              ERRATA SHEET
              VERITEXT/NEW YORK REPORTING, LLC
 2
    CASE NAME: In Re: LTL Management, LLC. v.
 3  DATE OF DEPOSITION: 4/17/2023
    WITNESSES' NAME: Andy Birchfield
 4
 5  PAGE  LINE (S)   CHANGE      REASON
 6  _____|_____|_____|_____
 7  _____|_____|_____|_____
 8  _____|_____|_____|_____
 9  _____|_____|_____|_____
10  _____|_____|_____|_____
11  _____|_____|_____|_____
12  _____|_____|_____|_____
13  _____|_____|_____|_____
14  _____|_____|_____|_____
15  _____|_____|_____|_____
16  _____|_____|_____|_____
17  _____|_____|_____|_____
18  _____|_____|_____|_____
19  _____|_____|_____|_____
20  _____|_____|_____|_____
21  _____
              Andy Birchfield
22  SUBSCRIBED AND SWORN TO BEFORE ME
    THIS ____ DAY OF _____, 20__.
23
24  _____
25  (NOTARY PUBLIC)        MY COMMISSION EXPIRES:
```

55 (Pages 214 - 217)