

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Jeffrey M. Pollock
Certified by the Supreme Court of New Jersey
    as a Civil Trial Attorney
Direct Dial:  (609) 896-7660
Email Address:  jmpollock@foxrothschild.com

May 22, 2024

## *Via* PACER/ECF

The Honorable Rukhsanah L. Singh, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Courtroom 7W
Trenton, New Jersey

      Re:   *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Product Liability Litig.*, **Case No. 3:16-md-2738 (MAS)/(RLS)**

Dear Judge Singh:

     We are in receipt of J&J's letters of May 17, 2024 [ECF No. 32200] and May 20, 2024 [ECF No. 32213] requesting expedited discovery of Beasley Allen. Beasley Allen opposes the subpoena (the Subpoena to Beasley Allen) under any circumstance—and certainly opposes these subpoenas being served and responded to on an expedited basis. There is neither good cause for the Subpoena to Beasley Allen nor for the request expedited discovery. J&J's recent conduct—the latest in a long line of abusive bad faith litigation tactics (in addition to the Motion to Disqualify



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 2

pending before both this Court and the Superior Court )—is nothing less than a full-blown assault on the attorney-client privilege and work product doctrine protections.[1]

On May 20, 2024, Beasley Allen sent Ms. Brown (counsel for J&J) an email demanding that J&J withdraw the Subpoena to Beasley Allen and refrain from attacking Beasley Allen and its clients through public filings with this Court. *See* **Exhibit 1** (BA_0002). J&J did not agree to withdraw the subpoena. For these reasons, at the Court's earliest convenience (and to mitigate any further strain on the judicial economy), Beasley Allen requests a discovery conference to resolve these issues and put an end to the abusive and improper tactics once and for all.

**I.      The Facts: J&J's False Statements and Omissions.**

   **A.  J&J's (Mr. Murdica) Effort to Obtain Beasley Allen's Communications with the Firm's Clients Violates New Jersey RPC 4.2.**

In its May 17, 2024 letter, J&J's counsel concedes violating the Rules of Professional Conduct by its outside counsel (Jim Murdica) while at the same time making false charges against Beasley Allen. RPC 4.2 states that "A lawyer shall not communicate about the subject matter of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by counsel . . ."

---

[1] The Court should also reject J&J's attempt to obtain expedited subpoena responses (or any discovery) from other entities served including Ellington Management (ECF Doc. 32215), Thomson Reuters Corporation (ECF Doc. 32204), and Fortress Investment Group, LLC (ECF Doc. 32203). The Court should quash the subpoena to Thomson Reuters for independent reasons, including that New Jersey's broad "Shield Law," *see* N.J.S.A. 2A:84A-21; N.J.R.E. 508 (codifying same), bars a party like J&J from obtaining Thomson Reuters' sources, authors, methods, and memoranda, as well as "any news or information obtained in the course of pursuing" professional activities from "news media." *See Too Much Media, LLC v. Hale*, 206 N.J. 209, 228-30 (2011). These subpoenas are merely an attempt to gain Beasley Allen's privileged communications through the "back-door."



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 3

Here, the following transpired (*See* **Exhibit 6**):

1. <u>May 14, 2024 at 11:43 a.m.-</u> Beasley Allen client DD sent an email to Beasley Allen and Mr. Murdica, counsel for J&J. (BA_0037).

2. <u>May 14, 2024 at 12:54 p.m.-</u> Beasley Allen's Elizabeth Achtemeier, Esq. advised Mr. Murdica to "please disregard the below [DD's email] attorney-client communication." (BA_0038).

3. <u>May 14, 2024 at 5:54 p.m.-</u> J&J's outside counsel, Mr. Murdica, directly contacted a known Beasley Allen client (DD) in violation of RPC 4.2 and then solicited a response from DD.

    a. Mr. Murdica also "added back the original recipients," including DD. (BA_0039). In that email, Mr. Murdica, writing to DD, accused Beasley Allen of "seeking to enter into a surreptitious relationship to thwart a bankruptcy resolution . . . by publishing misleading and deceptive advertising," and suggesting that Beasley Allen was engaged in fraud. *Id.*

    b. Mr. Murdica concluded his email by calling for a response from the Beasley Allen client, asking DD to "confirm that they are in a privileged attorney-client relationship with Beasley Allen." *Id.*

4. <u>May 15, 2024 at 8:57 a.m.-</u> Beasley Allen's Elizabeth Achtemeier, Esq. again advised Mr. Murdica (J&J) that DD "is represented in this matter by Beasley Allen. As you know, it is not permissible for you to communicate directly with a represented individual." (BA_0041).

**Before he communicated regarding the substance of her claims against J&J with DD, Mr. Murdica had actual notice that DD was represented by Beasley Allen**, in addition to constructive notice via Beasley Allen's 2020 prior notice of appearance as the client's counsel of



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 4

record in the MDL case docketed at 3:18-civ-05401; MDL 2738. *See* **Exhibit 2** (BA_000004 - 05). Despite these facts, J&J is now using Mr. Murdica's improper action of communicating directly with a Beasley Allen client to eviscerate the attorney-client privilege by: (1) bringing this motion to obtain insight into Beasley Allen's communications to clients, or (2) assert attorney-client privilege, which J&J will use as a sword by fancifully advancing improper inferences that could only be rebutted by opening up attorney-client communications.

> **B. Mr. Murdica impermissibly communicated with an individual represented by Beasley Allen, in violation of New Jersey RPC 4.2.**

Despite having been told on May 14, 2024 at 12:54 p.m. (**Ex. 6**, BA_0038) that he should cease communications with DD and DD was represented by Beasley Allen, Mr. Murdica violated RPC 4.2 when he sent an email to DD at 5:54 p.m. on May 14, 2024. (**Ex. 6**, BA_0041). RPC 4.2 "contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship, and the uncounseled disclosure of information relating to the representation." ABA Rule 4.2 Comment 1.

Despite J&J's reliance on the "unsolicited" nature of DD's emails (and only the first email was unsolicited), RPC 4.2 "applies even though the represented person initiates or consents to the communication. **A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this rule.**" ABA Rule 4.2 Comment 3. Rather than immediately terminating communication with Beasley Allen's client, Mr. Murdica responded to DD. He affirmatively reached out to her, commented on the merits of her claim, made spurious accusations of misconduct by Beasley Allen (to paint Beasley Allen in a negative light with false



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 5

statements), and requested a response from Beasley Allen's client. (BA_0039 - 41). This is a blatant invasion of the attorney-client relationship.

Even more, by filing this email publicly, J&J is extending that interference beyond a single attorney-client relationship, and is attempting to undermine Beasley Allen's relationships with all of its clients. Somehow, these communications made it to the press the very next day. This is compounded by the blatantly false statements in its letter suggesting that numerous offers have been made by J&J directly and specifically to Beasley Allen clients. **J&J has made no such offer.** J&J's public letter and relentless and baseless attacks and efforts to remove Beasley Allen from the talc litigation are designed to undermine the attorney-client relationship, many of which are of more than 10 years duration, knowing that sowing such uncertainty erodes client confidence.

Upon receipt of an email from a knowingly represented client, any reasonable and ethical lawyer would immediately forward the client email to his adversary indicating that he was deleting the email. That would be the end of it, period. Not Mr. Murdica. Not J&J. Knowing DD was a Beasley Allen client, the Rules of Professional Conduct (RPCs) went out the door and mischief ensued. J&J's recent conduct is consistent with the way J&J used the mediation privilege log as a sword in the Motion to Disqualify hearings before Your Honor and Judge Porto. Instead of acting consistent with the RPCs  Mr. Murdica preyed upon DD's lack of knowledge concerning the impropriety of contacting opposing counsel.

In short, Mr. Murdica violated the rules of professional conduct, and J&J now seeks to capitalize on that violation , and distract this Court and Beasley Allen from the underlying litigation by having full blown discovery of Beasley Allen. Overlooking that this is clearly "fruit of the poisonous tree," any such discovery of Beasley Allen fails because to entertain the Subpoena to Beasley Allen would simply re-inflict and amplify the already existing violation of the Rules of



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 6

Professional Conduct. *State v. Williams*, 461 N.J. Super. 80 (App. Div. 2019); *United States v. Herrold*, 962 F.2d 1131 (3d Cir. 1992).

### C. J&J falsely claims that Beasley Allen "is right now advocating against this client's interest."

With no good faith basis, J&J claims that Beasley Allen "is right now advocating against this client's interest." In its May 17, 2024 letter, J&J asserts that:

> the Claimant [Beasley Allen's client] alleges that she has clear cell cancer, yet appears entirely unaware not only that Defendants have made prior offers to settle claims such as hers and , indeed, are currently soliciting a Plan which would provide compensation for her claim, but also that Beasley Allen by contrast, is publicly and aggressively advocating that clear cell cancer claims should be deemed worthless, "non-qualifying" cancers and receive no compensation under any resolution. In other words, unbeknownst to the Claimant, Beasley Allen has previously and *is right now advocating against this client's interests*.
>
> [ECF Document 32200 at 3.].

This comment is absolutely false. And J&J, without any doubt, knows that it is not true. Yet, J&J in its quest to remove Beasley Allen as an obstacle to the bankruptcy it wants, will make any claim, even if it is completely unfounded.

The Beasley Allen client fact sheet for client DD submitted to J&J provides information regarding the cancer, subtype, and date of diagnosis: that Ovarian, Clear Cell, Stage III, July 1, 2016.

Beasley Allen has steadfastly and consistently maintained that clear cell is a compensable subtype and there is no basis for J&J to claim otherwise:



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 7

1. Plaintiffs' experts have offered causation opinions in two Bellwether cases involving clear cell cancer – Converse and Bondurant.
2. Ms. O'Dell has spoken publicly multiple times stating that clear cell was supported by the science, two instances attached -- before the NJ State Bar and at a Harris Martin, both would be available to defense.
3. In LTL 2.0, the motion for estimation states that clear cell cases are supported by the science – FN 4. ("A causal connection between the genital application of talcum powder and epithelial ovarian cancer is supported for the following histologic subtypes: serous, endometrioid, **clear cell**, undifferentiated, mixed, serious borderline and endometrioid borderline.").
4. Beasley Allen tried to verdict a case involving a clear cell diagnosis.
5. J&J has received a proposed Term Sheet provided by Beasley Allen, on behalf of leadership firms. This proposal was to resolve all current ovarian cancer claims, and it expressly included clear cell claims.

The hypocrisy of J&J statements about clear call cases is stunning. In its desperate attempt to "cram down" an undervalued settlement in a third bad faith bankruptcy, J&J includes other gynecological cancers" in their proposed settlement simply to stuff the ballot box with otherwise non-compensable claims. J&J does so with the knowledge that these cancers would not be compensable in the tort system based on the science and *Daubert* order. Clear cell is not one of those cancers; clear cell is definitely supported by the science and Beasley Allen continues to seek meaningful compensation for such claims on behalf of clients.

### D. Beasley Allen's Reply to J&J's Other False Claims.



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 8

    **1. Beasley Allen keeps clients informed, offers candid legal advice, and acts to further the interests of talc ovarian cancer claimants.** J&J asserts, based on five sentences in an email that J&J's lawyer impermissibly solicited from a represented individual, that Beasley Allen is providing "false and misleading information" to a client about J&J's bankruptcy plan. Beasley Allen has regularly communicated with its clients and—unlike J&J—consistently complied with its ethical obligations.

    **2. J&J falsely accuses Beasley Allen of providing false and misleading information concerning J&J's Bankruptcy Plan.** J&J levels this serious charge without any support, simply repeating the claim over and over hoping sheer repetition will negate the truth. Beasley Allen lawyers, Andy Birchfield, and Leigh O'Dell in particular, have spoken out against the terms of J&J's bankruptcy proposal. Every statement made by Beasley Allen concerning J&J's bad faith bankruptcy plans are truthful and accurate based on the information that J&J has made available.

    **3. J&J falsely accuses Beasley Allen of violating the solicitation provisions of the Bankruptcy Code.** As of this writing, Beasley Allen is unaware of any new bankruptcy filing by J&J or any LTL entity. Therefore, 11 U.S.C. § 1125(e)'s solicitation provisions do not apply. 11 U.S.C. §1125(b) states that "an acceptance or rejection of a plan may not be solicited **after the commencement of the case** under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." (emphasis added). In contrast, 11 U.S.C. § 1125(g) states "Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and **if such holder was solicited before the commencement of the case** in a manner complying with applicable nonbankruptcy law." (emphasis added). Here, there is no



applicable nonbankruptcy law that prohibits counseling a no vote on a plan that has not yet been filed.

The fact that there has been no "commencement of the case" is significant because the lack of pending bankruptcy case allows J&J to move forward with its effort to rig the vote by allowing all claims to vote regardless of whether they are sustainable claims in the tort system. This allows J&J to stuff the ballot box by offering minimal payments to claims who would get nothing in tort system in exchange for a favorable vote. Overpaying by a little such unsupportable claims, while grossly underpaying meritorious claims, allows J&J to fashion a path to a favorable vote that would not otherwise be obtainable. J&J knows that this would be a hotly contested issue if a bankruptcy case were pending at the time of solicitation. J&J's unprecedented prepackaged bankruptcy plan is an effort to skirt such procedural safeguards. For a company with J&J's balance sheet and no immediate financial distress, fair and reasonable compensation values for talcum powder victims should be determined by juries or the parties in good faith settlement negotiations. J&J should not be permitted to violate the RPCs in an effort to remove or silence its opposition to pave a path to coercive resolution.

**4. J&J falsely accuses Beasley Allen of opposing J&J's bankruptcy effort based on common benefit fees.** Mr. Birchfield and Beasley Allen have said from the beginning that they would not negotiate the common benefit fee issue before an agreement on reasonable compensation for clients. Putting his faith in the judicial system and his clients' interests above his own, Mr. Birchfield testified in response to Your Honor's questioning that client interests come first and "Common benefit will take care of itself" that "was the goal, that was the driver, to get a resolution plan that would be acceptable to J&J and that's where the finality came in." Motion to Disqualify (ECF Document 32153-5), May 3 Tr. at 68. Mr. Birchfield further testified that "there is no principle . . . that a bankruptcy court cannot award common benefit fees." *Id.* at 107. Beasley



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 10

Allen has no nefarious motive to block any bankruptcy plan. Rather, Beasley Allen looks out for the best interests of its clients to get "a reasonable compensation . . . [and] the common benefit fee will take care of itself. We are not going to put [common benefit fees] ahead of the clients and the client interest." *Id.* (emphasis added). Beasley Allen opposes J&J's repeated bad faith bankruptcy filings "because of the values that are being offered." *Id.*

In its conclusion, and its narrative since their first failed bankruptcy, J&J has falsely claimed that Beasley Allen "stands to profit materially if the (bankruptcy) plan is thwarted." In support of this falsehood, J&J makes two verifiably untrue statements and intentionally misquotes Mr. Birchfield's deposition.

First, they say, Beasley Allen has a "crazed commitment" to derail the J&J plan because Beasley Allen would not receive common benefit fees in bankruptcy. This is false. Beasley Allen's commitment and goal has always been "getting fair values for [their] clients, period." (*see* **Exhibit 3**, BA_0013 – 14, Birchfield Dep. April 17, 2023 at 28:12-25 to 29:1-14). Second, Mr. Birchfield never testified under oath that Beasley Allen was precluded from receiving common benefit fees in bankruptcy. *See id.* at 28 to 31 (BA_0013 – 16).

The undeniable facts are that: (1) there is no prohibition against common benefit fees being awarded in bankruptcy and just because J&J repeats that legal fiction often and loudly does not make it true; and, (2) in fact, Andy Birchfield's testimony was not as J&J states. Rather, when questioned by Erik Haas himself on April 17, 2023, Mr. Birchfield clearly and unequivocally stated that it was "not his understanding" that plaintiffs' counsel could not get common benefit in bankruptcy and, more importantly, as a general matter, "the common benefit fee issue would never become a barrier to getting fair and reasonable value for our clients." (*see* **Exhibit 3**, BA_0013 - 14, Birchfield Dep. April 17, 2023 at 28:12-25 to 29:1-14).



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 11

J&J has no credibility nor real need in pursuing this discovery. First, there is no good faith basis for J&J inquiring of Beasley Allen's communications with its clients. The attorney-client privilege and the work product doctrine protect those communications. Second, Mr. Haas has conceded that Andy Birchfield and Beasley Allen are his "primary opponent." [2] Turning a blind-eye to J&J's phenomenal financial incentive to avoid paying fair compensation, Mr. Haas makes the false argument that Beasley Allen is motivated by common benefit—Mr. Birchfield has made clear that he will not negotiate common benefit payments (or equivalent) with J&J because that's an issue for the Court to decide. J&J's efforts to remove any significant obstacle-like plaintiffs counsel attempting to obtain reasonable and fair compensation for its clients—are simply are unfounded and lack any credible basis.

In sum, J&J's purported reasons for these subpoenas lack merit. Instead, J&J's filings are the latest attempt to attack and distract Beasley Allen and its clients to obtain a litigation advantage, while at the same time brazenly violating the RPCs themselves to achieve their deadly ends.

II. **The Subpoena to Beasley Allen Seeking Documents Concerning Litigation Funding Is Improper.**

   **A. The Subpoena to Beasley Allen Does Not Seek Relevant Non-Privileged Information.**

The Subpoena to Beasley Allen seeking documents concerning non-existent litigation funding is improper and an invasion of the attorney-client privilege. First, as Judge Joel Schneider, U.S.M.J. ruled in denying a similar request, *see In re Valarsatan*, 405 F. Supp. 3d 612, 615-20 (D.N.J. 2019), the prejudicial value greatly outweighs the probative value (if any) of the existence of litigation funding particularly in an MDL like the case at issue here. Further, the affidavit of

---

[2]  **Exhibit 5**, BA_0034



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 12

David Meisels is telling. The Meisels Affidavit states that he has no knowledge of any litigation funding by Beasley Allen. *See* ECF Document 32213, at 4. Further, Mr. Meisels indicates that the last time he engaged in any litigation with the Smith Law Firm, PLLC was over 3 years ago. *See id.* at ¶4. J&J makes no proffer that a loan that expired three (3) years ago on some legal matter by Mr. Smith is somehow relevant today in the matter before Your Honor. Further, Mr. Birchfield has already testified pointedly that Beasley Allen has not used litigation funding in this matter. *See* Motion to Disqualify (ECF Document 32153) May 3 Tr. at 60 to 62. Moreover, Judge Porto in the Motion to Disqualify plenary hearing already found the issue of litigation funding to be irrelevant. *Id.* at 61 to 62. The demand for discovery of litigation funding is inappropriate in light of New Jersey law but is particularly unwarranted when it has already been the subject of direct testimony before Your Honor and Judge Porto. *Id.*

     J&J's expedited request is nothing more than the latest effort by J&J to avoid paying reasonable and fair compensation to its victims by using the powerful weapon of a bankruptcy proceeding to divest this Court of jurisdiction and victims of the protection ordinarily afforded by the civil justice system. Now, J&J seeks to enlist this Court as its "sounding board" not for the purpose of legitimate discovery, but rather as a sales tool to argue its newly flawed efforts at yet another bad faith bankruptcy plan to coerce cancer victims to accept unfair compensation.[3] J&J (Ms. Brown) proposes expedited discovery, even though she well knows that this request is either irrelevant (litigation funding), *In re Valarsatan*, 405 F. Supp. 3d 612, 620 (D.N.J. 2019) or improper (Mr. Murdica's violation of RPC 4.2 by communicating directly with Beasley Allen's clients).

---

[3] It is interesting to note that the global value of Beasley Allen's matrix grid is remarkably similar to the valuation J&J's own experts provided publicly in the bankruptcy court. *See* Motion to Disqualify Exhibits (P-1/P-2).



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 13

Critically, J&J knows that the Subpoena to Beasley Allen lacks merit. J&J's filings and the Subpoena to Beasley Allen are props, that is a vehicle for publicly "testing" J&J's insufficient offer to resolve valid talc-asbestos claims. J&J's strategy is equally clear—to include claims that are not worthy, in order to sell the new coercive J&J bankruptcy plan. In short, J&J wants to silence its opposition so that talc-asbestos victims will not hear the truth about its effort to use bankruptcy to impose its non-consensual compensation plan on cancer victims. J&J wants to flood the bankruptcy ballot box so that J&J can get away with providing inadequate compensation. This Court should not be used as a political tool for disinformation.

### B. Beasley Allen Has Not Violated District of New Jersey Rule 7.1.1 Because It Does Not Have Third-Party Litigation Funding.

At the outset, litigation funding (if it existed) is not relevant and therefore not discoverable here. *In re Valarsatan*, 405 F. Supp. 3d 612, 615-20 (D.N.J. 2019). Beasley Allen has not violated Local Rule 7.1.1 because it does not have third-party litigation funding in this case. After L. Civ. R. 7.1.1 went into effect, the Court issued a Notice to the Bar, clarifying that Rule 7.1.1 "requires the filing of a statement only where third-party litigation funding exists. That is, L. Civ. R. 7.1.1 does not require the filing of a negative statement to the effect that no third-party litigation funding exists in the case."

Here, Beasley Allen did not file a Disclosure of Third-Party Litigation Funding because Beasley Allen does not have litigation funding. J&J is fully aware of this. As part of LTL-2 bankruptcy proceeding, J&J deposed Andy Birchfield, and questioned him in depth about Beasley Allen's funding sources. In his April 17, 2023, Mr. Birchfield testified: "there was the allegation made that Beasley Allen is so heavily indebted that we could not accept the proposal, and that is– that is categorically false. We have not. **We have not obtained litigation financing or funding for our talc claims.**" (**Exhibit 3**, BA_0017 - 18, Birchfield Dep. April 17, 2023 at 47:23 to 48:4).



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 14

J&J provided the exchange leading up to this response, but notably excluded these pages from Exhibit F of its letter to the Court. Excluding exculpatory evidence and cherry-picking preferred sound bites has become J&J's pattern and practice, not only now, but throughout this case and in the pending Motion to Disqualify Beasley Allen. J&J's entire argument focuses not on an alleged third-party litigation funding agreement with Beasley Allen, but potential litigation funding by co-counsel. The Court should prevent J&J from continuing down this path and disincentivize and prohibit further abusive tactics.

### C. J&J Seeks to Re-write the Last Chapter of the Tobacco Story.

A high level consultant advised J&J that multiple studies "published in the open literature show a statistically significant association between hygienic talc use and ovarian cancer. Anybody who denies this risks that the talc industry will be perceived by the public like it perceives the cigarette industry: denying the obvious in the face of all evidence to the contrary."[4] That was nearly 30 years ago. What the consultant did not know was that J&J had much earlier made the decision to fully embrace the strategy of the cigarette industry: deny all allegations, defend the product at all costs, attack the science underpinning the concerns, and attack all opposition.[5] Sadly, in the years since, instead of breaking away from this strategy, J&J has doubled down. This strategy is on full display in this Court today.

The tobacco industry's strategy worked for decades. For over 40 years, not a single victim was paid a dime.[6] However, when the strategy unraveled for the tobacco companies, it did so in

---

[4] See **Exhibit 4**.
[5] See David Michaels, The Triumph of Doubt, Oxford Press. 2020..
[6] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1117367/ BMJ (Jan 8, 2000) at pgs. 111–13



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 15

spectacular fashion.[7] The industry paid well over $200 billion in settlements. While J&J is following the tobacco strategy of deny, delay, and attack, it is seeking to re-write the last chapter. J&J is using the Texas Two Step and bankruptcy as the means to do so. To succeed in re-writing that last chapter, J&J needs to remove or silence opposition (the pending Motion to Disqualify Beasley Allen) and it needs to stuff the bankruptcy ballot box by flooding the vote with claims that would not be compensable in the tort system.[8]

**III.    J&J's Efforts to Stuff the Bankruptcy Ballot Box (Prior to Any Filed Bankruptcy) Must Be Rejected.**

During the recent hearings before Your Honor and Judge Porto, Erik Haas could not constrain his testimony to the issue at hand (whether some purported disclosure of J&J confidences occurred). Rather, he veered heavily into the effort to sell—once again—his flawed efforts at avoiding payment to talc-asbestos victims by pursuing a third attempt at bankruptcy. Knowing that this effort is likely to fail, Mr. Haas nonetheless pursues his crusade. Mr. Haas made a bad bet on the Texas Two Step, and he continues to try to deflect blame through abusive litigation tactics.

Mr. Birchfield testified openly and candidly that he and his firm are seeking one goal: fair and reasonable compensation for J&J's talc-asbestos victims. Having studied J&J's efforts to avoid paying anywhere near even the amount J&J's own experts testified are appropriate (*see* Motion to

---

[7] "Tobacco litigation, even in the United States, has not been easy or uniformly successful. Indeed, for the first 42 years of litigation, from 1954 to 1996, the industry maintained its proud record of never having paid a penny to its victims. It did this through litigation tactics that made the cases prohibitively expensive for plaintiffs and their attorneys. One internal memo by R J Reynolds Tobacco Company stated, "The way we won these cases, to paraphrase Gen. Patton, is not by spending all of Reynolds' money, but by making the other son of a bitch spend all of his." Although the industry persistently refused to admit that smoking caused any disease, it was remarkably successful at convincing judges and juries that the smoker was entirely at fault for "choosing" to smoke in the face of known risks as well as the government mandated health warnings included on cigarette packs since 1966." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1117367/ BMJ (Jan 8, 2000) at pgs. 111–13
[8] *See* Exhibit 5 (excerpt from May 1, 2024 investors' call).

Case 3:16-md-02738-MAS-RLS   Document 32251   Filed 05/22/24   Page 16 of 16 PageID: 184084



The Honorable Rukhsanah L. Singh, U.S.M.J.
May 22, 2024
Page 16

Disqualify Exhibits P-1/P2), Mr. Birchfield testified pointedly that there are truly valid injured talc-asbestos victims deserving fair compensation. *See* ECF Document 32153-5 at 36 (Mr. Birchfield testifying that he was "not opposed to a vote that would be a fair vote," but instead Beasley Allen opposes a "plan that would essentially stuff the ballot box, in order to coerce the more serious and legitimate claimants to accept unreasonable values."). J&J's goal is to stuff the ballot box by including unsupportable claims in the hopes that these claimants (who know that they have little likelihood of success in the tort system) will rush to join J&J's anticipated third bad faith bankruptcy filing.

      J&J's efforts to stuff the bankruptcy ballot box is the real issue in question in the Beasley Allen Subpoena. Beasley Allen does not believe that this Court is proper forum for a dispute regarding J&J's false offer to resolve the talc-asbestos exposure claims against the company. We are of course ready and able to have this discussion with the Court, but we object to J&J's use of a purported discovery request to engage in public disinformation. J&J misleading Beasley Allen's client DD is strong evidence of what J&J intends to do when it sends out solicitations intended to fraudulently divest this Court of its jurisdiction, while at the same time expending the court's resources with specious applications like this one. This needs to be stopped now. For all these reasons, we respectfully request the opportunity to discuss this matter with Your Honor at the earliest opportunity.

                                        Respectfully submitted,

                                        /s/ Jeffrey M. Pollock
                                        JEFFREY M. POLLOCK
                                        MICHAEL W. SABO

Encl.

cc: All Counsel (*via* ECF)