# EXHIBIT 5

**BA_0023**

REFINITIV STREETEVENTS

# EDITED TRANSCRIPT
JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

EVENT DATE/TIME: MAY 01, 2024 / 12:00PM GMT

**OVERVIEW:**

Company Summary

REFINITIV STREETEVENTS | www.refinitiv.com | Contact Us

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0024

**MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call**

# CORPORATE PARTICIPANTS

**Erik Haas** *Johnson & Johnson - Worldwide Vice President of Litigation*

**Jessica Moore** *Johnson & Johnson - VP of IR*

**Joaquin Duato** *Johnson & Johnson - CEO & Chairman*

**Joseph J. Wolk** *Johnson & Johnson - Executive VP & CFO*

# CONFERENCE CALL PARTICIPANTS

**Christopher Thomas Schott** *JPMorgan Chase & Co, Research Division - Senior Analyst*

**Jayson Tyler Bedford** *Raymond James & Associates, Inc., Research Division - MD & Senior Medical Supplies and Devices Analyst*

**Lawrence H. Biegelsen** *Wells Fargo Securities, LLC, Research Division - Senior Medical Device Equity Research Analyst*

**Matthew Stephan Miksic** *Barclays Bank PLC, Research Division - Research Analyst*

**Vamil Kishore Divan** *Guggenheim Securities, LLC, Research Division - MD of Healthcare Research & Senior Equity Research Analyst*

# PRESENTATION

**Operator**

Good morning, and welcome to Johnson & Johnson's Investor Conference Call. (Operator Instructions). This call is being recorded. (Operator Instructions)

I would now like to turn the conference over to Johnson & Johnson. You may begin.

---

**Jessica Moore** *- Johnson & Johnson - VP of IR*

Hello. This is Jessica Moore, Vice President of Investor Relations for Johnson & Johnson. We appreciate everyone joining us on such short notice to review today's announcement regarding the proposed plan by the company's subsidiary, LLT Management, or LLT, to resolve all current and future ovarian talc claims.

Joining me on today's call are Joaquin Duato, Chairman and Chief Executive Officer; Joe Wolk, Executive Vice President and Chief Financial Officer; and Erik Haas, Worldwide Vice President of Litigation. Following the call, you can find the presentation and additional supplemental resources on the Investor Relations section of the Johnson & Johnson website at investor.jnj.com.

Please note that today's presentation contains forward-looking statements. You are cautioned not to rely on these forward-looking statements, which are based on current expectations of future events using the information available as of the date of this recording and are subject to certain risks and uncertainties that may cause the company's actual results to differ materially from those projected.

A description of these risks, uncertainties and other factors can be found in our SEC filings, including our 2023 Form 10-K, which is available at investor.jnj.com and on the SEC's website.

I'll now turn the call over to Joaquin.

---

REFINITIV STREETEVENTS | www.refinitiv.com | Contact Us

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0025

MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

**Joaquin Duato** - *Johnson & Johnson - CEO & Chairman*

Thanks, Jess, and thank you, everyone, for joining us. Let me start by recognizing the importance of this topic for all our credo stakeholders. As you have heard me say before, our intention with respect to talc litigation is to bring a responsible final and comprehensive resolution to these claims, as we continue our work to deliver life-changing innovation, medicines and technologies to patients.

And with today's announcement, we are making meaningful progress in our efforts to do just that. Today's announcement reflects our unwavering commitment to our credo and the responsibilities we have to all those who count on us. Our sharpened focus, strong operational performance and progress in our portfolio and pipeline gives me great confidence in the trajectory of our business.

Johnson & Johnson's impact across the full spectrum of health care is unique in our industry. And I'm more convinced than ever that we are going to lead the next wave of innovation on behalf of patients.

And with that, I will now turn it over to Erik.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Thank you, Joaquin. The plan we announced today enables the company to resolve all current and future ovarian talc claims through a consensual prepackaged reorganization by the company's subsidiary, LLT. This will result in the resolution of 99.75% of all pending talc lawsuits against Johnson & Johnson and its affiliates in the United States.

The small number of remaining talc personal injury lawsuits relate to mesothelioma and are being addressed outside of the plan. In that regard, the company has already resolved 95% of the mesothelioma lawsuits filed to date. In addition, the talc-related consumer protection claims asserted by states against the company already have been resolved through consensual settlements outside of bankruptcy. And for completeness, the company recently reached an agreement in principle to resolve all talc-related claims asserted against it in the bankruptcy cases filed by the suppliers of its talc, Imerys and Cyprus.

Now as a reminder, in the July 2023 dismissal of LLT's prior bankruptcy case, the New Jersey Bankruptcy Court noted that the company had made remarkable progress towards achieving an efficient and expeditious settlement of all claimants and strongly encourage the company to continue to pursue a comprehensive resolution through another bankruptcy. We followed that directive, and today's announcement is a culmination of those efforts. We firmly believe this plan is in the best interest of claimants and should receive a favorable vote and immediate confirmation from the bankruptcy court.

Notably, the counsel representing the overwhelming majority of current ovarian claimants helped develop and support the proposed plan for good reason. First, this plan commits to pay ovarian claimants a present value of approximately $6.5 billion, which will be paid over 25 years and is a far better recovery than what claimants stand to recover at trial. Second, the company has prevailed in approximately 95% of ovarian cases tried, including every ovarian case tried over the last 6 years. As that track record shows, most ovarian claimants have not recovered, nor are they expected to ever recover anything at trial. Third, at the rate of which these cases have been tried, it would take decades to try the remaining cases, meaning most claimants will never see their day in court.

Finally, in March of this year, the judge presiding over the multi-district litigation, where 93% of the ovarian claims are filed, agreed to reconsider the scientific validity of the opinions offered by plaintiffs' experts in a renewed Daubert hearing. If plaintiff opinions fail that review, all the ovarian claims should then be dismissed. We fully expect that will be the result because the opinions of plaintiff experts are irreconcilable with the research conducted for decades by independent experts as well as governmental and regulatory bodies. Johnson & Johnson's talc products are safe, do not contain asbestos and do not cause cancer, and none of the talc-related claims against the company have any merit whatsoever.

In terms of next steps, the plan provides for a 3-month solicitation period, in which the ovarian claimants will be informed of its terms and will have the opportunity to vote for or against the plan, something they were denied and deprived of in the previous bankruptcy cases due to the efforts



MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

by plaintiff lawyers representing a small minority of claimants. Should the supermajority of the claimants or 75% vote in favor of the plan, [a Company subsidiary] (corrected by company after the call) may then file a consensual prepackaged Chapter 11 bankruptcy to secure confirmation.

During the solicitation period, the company remains firmly committed to pursuing the other 3 pathways towards a comprehensive resolution that we laid out last year, including: first, appealing the dismissal of LLT's prior bankruptcy case up through the Supreme Court, if necessary; second, aggressively litigating in the tort system against the claimants who elect not to settle during the solicitation period, and proceeding with the Daubert hearings in the MDL; and third, challenging the abuses of the mass tort plaintiffs' bar and its experts with our own affirmative actions.

In closing, the plan announced today demonstrates our substantial commitment to resolving the outstanding talc claims is in the best interest of all ovarian claimants and the company and, therefore, should put an end to this litigation.

I will now turn the call over to Joe.

**Joseph J. Wolk** - *Johnson & Johnson - Executive VP & CFO*

Thanks, Erik. You may be wondering how this announcement, along with the financial commitment in prior bankruptcy cases impacts the company's total outstanding liability for talc litigation. Let me walk you through where we stand today. As of year-end 2023, the company had a total reserve of approximately $9 billion. When you take into account today's proposed plan for a comprehensive resolution of the ovarian claims and other already settled claims, the company recorded an incremental charge of approximately $2.7 billion in the first quarter 2024 results.

As mentioned on our first quarter earnings call, the company incurred payments in furtherance of achieving a resolution, netting to a present value reserve balance of approximately $11 billion or a nominal value of $13.7 billion payable over 25 years. Additional details can be found in our first quarter 2024 Form 10-Q filed this morning and in the plan documents. While Johnson & Johnson stands behind the safety of its talc, with the support of counsel representing the overwhelming majority of current ovarian claimants, we believe this proposed plan is in the best interest of both ovarian claimants and the company.

We appreciate that the talc litigation has been on the minds of our investors and, in particular, how this litigation impacts Johnson & Johnson's ability to execute upon our capital allocation priorities. The settlement agreements have payout schedules that span up to 25 years. So while we feel any settlement is unjust based on science, this has not and will not impact Johnson & Johnson's ability to execute on our capital allocation strategy, as you have observed in recent years with record levels of R&D investment, continued annual increases of our dividend, value-creating strategic acquisitions like Abiomed, Ambrx and the pending Shockwave transaction and share repurchase programs.

Our annual free cash flow generation and robust balance sheet will continue to solidify an already strong financial foundation and fuel further investment leading to growth for our business and returns to our shareholders.

We now welcome your questions regarding today's announcement, and kindly ask Kevin to provide instructions and begin the Q&A portion of the call.

# QUESTIONS AND ANSWERS

**Operator**

(Operator Instructions) Our first question is coming from Chris Schott from JPMorgan.

4

REFINITIV STREETEVENTS | www.refinitiv.com | Contact Us

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0027

MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

**Christopher Thomas Schott** - *JPMorgan Chase & Co, Research Division - Senior Analyst*

Great. Thanks so much for hosting the call today and for the question. I just want to make sure I'm clear, just kind of bigger-picture question. Can you just go over what you view as, I guess, the major differences with the announcement today versus, I guess, the attempt or the structure you put forward in April of 2023? Is it simply kind of a larger settlement figure? Is it just wanting plaintiffs to get the ability to express a vote? Is it the updated Daubert hearing? I'm just trying to get a sense of just like where are we today versus where we were in April of '23.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Yes, that's a great question. And you hit on some key considerations, but maybe I can put it into context. First and foremost, what we are doing today is materially different from the prior bankruptcies in two significant respects. First, what we are doing here is we are proposing a consensual prepackaged bankruptcy reorganization. And what that means is that we are going out with a solicitation to determine whether the supermajority or 75% of the claimants support the plan before we make a filing in bankruptcy.

So we're not filing a bankruptcy today or tomorrow. We have a 3-month solicitation period after which, subject to securing the requisite 75% vote that we are required to obtain in order to file, we will then elect whether to file at that point in time.

Now let me just pause there. We fully expect to get that 75% vote for a number of reasons. First, as you may have seen in the LTL 2 bankruptcy last fall during the hearing in June of 2023, the court asked us what the relative support was for and against the bankruptcy resolution at that time. And at that time, the votes in favor or the counsel representing what the votes were in favor of the claim was approximately 70%.

Now based upon our communications with the counsel who we've been negotiating for the last year since the dismissal of the LTL bankruptcy, we now feel we have a much more robust and higher percentage of supporting vote. So the first difference is that the claimants get to decide. What we fundamentally are seeking to do is let the claimants' vote and decide whether this is in their best interest. Because in the prior bankruptcies, we never got there because a very small vocal contingent of plaintiff lawyers prevented that vote from happening. So that's the first and most significant distinction.

The second is that this is an ovarian-only prepackaged bankruptcy resolution proposal. And that's important because going back to where we were in July of 2023 when the LTL 2 bankruptcy was dismissed, we had basically 4 categories of claimants. We had the ovarians, we had the mesothelioma claimants, we had the states and we had the bankruptcies claimants that were from our suppliers, which was pending in the Imerys and Cyprus bankruptcies before Judge Silverstein.

What we have done since July 2023 is we have worked with counsel for each of those constituents in order to get us to where we are today. And in significant respect, what we've done is we resolved all other categories of claimants other than the ovarian claimants. And what do I mean by that? Well, let me start with the proposition of what the court's order was in the July 28 dismissal decision. What the judge said, Judge Kaplan said, was up to this time, notwithstanding that I'm dismissing the parties, both the LTL and the plaintiff lawyers had made "remarkable progress to achieving a comprehensive and final resolution," and he strongly encouraged, and those were his words, that we continue that process to reach a final global resolution through another bankruptcy.

And we followed that directive and that's what we did going forward. And we were since then working with the mesothelioma plaintiffs first. We were able to resolve the 95% of the claims that have been filed to date and effectively put an end to that litigation with the exception of one law firm whose claims are pending, and we are working on the resolution of that claim.

The second category is the states, and we have now entered into settlements with the states. Two states had pending litigations, and there was a coalition of 43 states that had asserted claims, and we have reached final and comprehensive settlements with respect to those state consumer protection claims.

And third, the debtors, the Imerys and Cyprus debtors. Likewise, we entered into negotiations with them, and we were able to resolve and settle all claims in those bankruptcies against the company. So now what we are left with are the ovarian claims.

5

REFINITIV STREETEVENTS | www.refinitiv.com | Contact Us

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0028

MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

And the reason why we are pursuing in the manner that we are is because we have the significant support of the overwhelming majority of the claimants based upon our communications with their counsels and representation. So those are the significant differences between what was previously the case and what is currently the case.

**Operator**

Our next question is coming from Larry Biegelsen from Wells Fargo.

**Lawrence H. Biegelsen** - *Wells Fargo Securities, LLC, Research Division - Senior Medical Device Equity Research Analyst*

Erik, my question is around third-party release. Is there one here? Will the bankruptcy cut off liability for future claims? And what will happen to new claims filed going forward? And just lastly, how confident are you the courts will support this given that this has been a hangup in other product liability litigation that's ongoing.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Excellent question and very important, and it's a key to what the proposal is that we are making. So let me walk through those third-party releases. So we all are quite aware that there's a case before the Supreme Court, the Purdue case, that is addressing the legitimacy of third-party releases. That is in the context of non-asbestos claims. And the releases in that case were pursuant to 105(a) of the bankruptcy code.

We are moving under a different section in addition to 105, but we are moving primarily under 524(g) of the bankruptcy code, which explicitly allows for third-party releases. And if you listened to the Purdue argument before the Supreme Court last fall, that was a distinction that was actually made. The argument was, well, should Purdue be entitled to the third-party releases under its plan when the code did not explicitly provide for it as it did in the context of 524(g), which we are moving under.

So from the perspective of third-party releases, yes, that's a component of the plan. It's a necessary component of the plan to resolve any doubt with respect to finality because in this case, the third-party would-be Johnson & Johnson. But Johnson & Johnson has an indemnification right against the underlying debtors, so there are no valid claims against Johnson & Johnson, which distinguishes it factually from the Purdue matter.

But more importantly, what we have here is a different statutory regime, which allows us to obtain the third-party releases and really sets us apart from that prior precedent. And then the second question was, yes, is whether to what extent we believe the court would support this proposal.

Fundamentally, the difference again is that we are going into the bankruptcy this time with the support of the supermajority of the claimants. This is a prepackaged Chapter 11 reorganization. Courts look at these fundamentally different than they look at the prior bankruptcies that we went into. And importantly here, one component of that is and why they look at it differently is we are not asking for a stay of any litigation outside the bankruptcy before we get that vote. In fact, we are embracing the idea that we are moving forward with the litigation in the tort system and particularly with respect to the ovarian claims in the MDL, where 94% of those claims are housed and specifically having a renewal of the Daubert hearing in those proceedings.

So we are moving on parallel paths, and we expect that, particularly given the leverage that we have in the tort system as a consequence that we will be securing the requisite vote, that's what we've heard from the counsel that we've been working with that will represent the claimants. And once we get the requisite vote and submit it to the court, we would expect a prompt resolution.

**Operator**

Your next question is coming from Jayson Bedford from Raymond James.

6

REFINITIV STREETEVENTS | www.refinitiv.com | Contact Us

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0029

MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

**Jayson Tyler Bedford** - *Raymond James & Associates, Inc., Research Division - MD & Senior Medical Supplies and Devices Analyst*

Just maybe a quick one for me, and I apologize if it's in the public domain already. But what's the timing on the Daubert reconsideration? And how does that fit into the 3-month solicitation window?

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Yes. Great question because it really goes to my last answer in how these two parallel pathways are aligned. The Daubert motion was ordered by the court on March 27. The moving papers will be submitted in July, and the opposition papers will be submitted on August 22. There is a 3-month solicitation period under the proposed plan, which commences on May 1 and runs through July 26. Once the results of that solicitation are processed, we will know right about the time when the opposition papers are filed in the Daubert motion where we stand with respect to the vote. And therefore, we will be able to make an educated determination as to what is the best pathway forward for both claimants and for us.

And in the event that we don't secure the vote, obviously, we'll just move forward with the Daubert proceeding, and we fully expect to prevail in that case. But in the event that we do secure the requisite vote, then we will have the opportunity to make a determination at that time given all the information before us, whether to file.

**Operator**

Our next question is coming from Matt Miksic from Barclays.

**Matthew Stephan Miksic** - *Barclays Bank PLC, Research Division - Research Analyst*

Congrats on the progress here so far. So one question, I think, that investors ask often is sort of what is the breakdown, the helpful statistics that you gave around the percentage of claims remaining under ovarian and the percentage of claims under mesothelioma that you resolved so far. But maybe just taking again kind of a top-down view, the numbers last year being thrown around were kind of approaching in the 100,000 range.

If you could possibly walk through what's the total universe of claims and maybe come through the numbers that way to explain which segments have been resolved and kind of what's the numbers behind the claimants, if that's possible? And then I have one quick follow-up.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Thank you for the question. So 4 categories of claims, I'll take the two easy ones. First, the claims asserted in the bankruptcy proceedings by Imerys and Cyprus, 100% resolved. Those claims are done. Claims asserted by the states, 100% resolved. That leaves the personal injury claims, both mesothelioma and the ovarian claims.

The ovarian claims constitute far more than the vast majority. We're talking about anywhere from 85,000 to 100,000 claims, depending upon the ultimate process that we go through in vetting those claims. In contrast, in the mesothelioma, we're talking hundreds of claims, right? So there's approximately, I would say, 153, if my numbers are correct with respect to the mesothelioma claims filed, 68 of which remain with one single law firm and the other ones are sort of one-offs. So we have resolved all of the significant portfolios of mesothelioma claims, 95% of the claims filed to date.

So that's the mesothelioma world, and that's why we view those as fundamentally resolved. That also explains why we resolved the mesothelioma claims outside of bankruptcy and the ovarian claims inside of bankruptcy. Hundreds of claims to resolve outside of bankruptcy is manageable, and it's also consistent with the established, long-established mesothelioma model that exists outside of bankruptcy, in which we leverage but more in the settlement context rather than through a court-ordered escrow approach.

REFINITIV STREETEVENTS | www.refinitiv.com | Contact Us

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0030

MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

That's a stark contrast to, let's call it, 100,000 claims in the ovarian bankruptcy, which you fundamentally need and require a process such as we are going through with the bankruptcy court, in this case, a prepackaged consensual bankruptcy proceeding in order to seek a resolution. So really, the vast -- overwhelmingly vast and really the most significant volume of claims are the ovarian claims. But a couple of important notes there. The ovarian claims also are the ones that have been the least successful of any claims that have been asserted to date. We have prevailed in 95% of the ovarian claims tried. That's 16 out of 17 cases tried, we have prevailed in every single one of those cases tried in the last 6 years. We prevailed in every one of those cases tried this year.

The one major law firm that has been the opponent of a resolution, the Beasley Allen firm, has lost every single claim they have brought to trial. 13 out of 13, they've lost. They've never recovered a dime for their client. That is why this makes sense for those claimants. We are proposing a resolution that will allow claimants to recover in a reasonable time frame, a significant amount and more than amount than that would otherwise recover in settlements outside of this process. And that is from any measure, objective or subjective, an equitable and efficient resolution from their perspective.

**Operator**

Our final question today is coming from Vamil Divan from Guggenheim.

**Vamil Kishore Divan** - *Guggenheim Securities, LLC, Research Division - MD of Healthcare Research & Senior Equity Research Analyst*

Great. I guess just one to clarify for me. I think you may have touched on this a little bit, but you said 75% of claimants vote in favor in the sort of prepackaged bankruptcy. Is there any reason attorneys that are holding out and not agreeing or the claimants then holding out are not going to just sue them and say that this ultimately should not end up in the bankruptcy side? I guess that's one thing I've been confused about from before. So I'm wondering how this overcomes that potential challenge if people still are arguing that bankruptcy is not the right path for this.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Yes. Great question to end on. So the primary opponent to resolving anything in bankruptcy as the individual I just referenced, it's the Beasley Allen firm and, in particular, Andy Birchfield, who has opposed any resolution through bankruptcy. Because as he testified in the last bankruptcy proceeding in June of 2023, that he has an economic incentive not to resolve his claims in bankruptcy, and we believe that presents an inherent conflict with the interest of his claimants.

The reason why he has a conflict of interest is because he sits on the plaintiff Executive Committee as he testified. And as he testified, it is his firm that stands to recover the vast amount of the common benefit fund amount that is allowed in the multi-district litigation for any recovery obtained outside of bankruptcy. So he stands to recover 12% from everybody else, all the other law firms that have been litigating this matter on top of the 40% fee he charges and admitted he charges his claimants.

So he would lose a lot of money outside of bankruptcy. And within bankruptcy, that would not be available because the plan calls for each of the claimants' counsel to earn their respective amount. So he has been the most vocal opponent to the bankruptcy proceeding to date and continues to be so. I don't see that as an impediment to this resolution for a number of reasons.

First of all, it is this vote that will dictate the claimants get to speak, the claimants' voices get to be heard, and that's the major distinction here. And if the vote is greater than 75%, it doesn't matter that he perhaps persuades his own claimants not to vote in favor of it. And by the way, he doesn't get a vote, his claimants do. So I would say that I would expect his claimants to take this deal because it's a good deal in any event. But regardless, it is the vote that matters at the end of the day.

And so that's one significant reason why I don't think it's going to matter. The other significant reason is I think there's a really good chance that he won't be around for much longer representing his claimants. We have moved to disqualify the Beasley Allen firm from representing claimants in this action as a consequence of their ethical breaches that arose from the Beasley Allen firm and, in particular, Mr. Birchfield, entering into an

8



BA_0031

MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

alliance with a former counsel of J&J. And that is a gross and egregious breach of the ethical obligations of the former counsel as well as Mr. Birchfield and his firm, and that issue is currently being litigated before both the federal and the state cases. The final day of that hearing is on Friday. And we'll have post-trial briefing and then we will determine whether or not Mr. Birchfield has any grounds to raise any objections in any event.

Final point with respect to anyone else who might not be in favor of this proposal, they don't have the standing to do so. This is an ovarian-only case. The parties withstanding are the claimants that have the opportunity to vote in favor of this plan. The mesothelioma claims are being addressed outside of this bankruptcy, as I indicated. And to the extent there's one or perhaps two claimants that law firms have decided not to resolve, we will address those claims outside of bankruptcy.

So the parties withstanding to object to this are the claimants' counsel that are participating in the bankruptcy. And the only real significant objections that they could have is to process. And the process we are following is much more stringent and much more compliant with the code than your typical process. So I feel very strongly that there will be no legitimate basis for objecting to this process. Because in the end, it's the claimants. We let the claimants vote, let the claimants decide if they choose this is in their best interest, it should be confirmed.

**Jessica Moore** - *Johnson & Johnson - VP of IR*

Thank you, Vamil, and thanks to everyone for your questions and your continued interest in our company. We apologize to those that we couldn't get to because of time, but don't hesitate to reach out to the Investor Relations team with any remaining questions you may have.

I will now turn the call back over to Erik and Joaquin for some brief closing remarks.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Thanks, Jess. So let me just reiterate the key takeaways from today's announcement. The plan is focused on current and future ovarian talc claims and would resolve 99.75% of all pending talc claims. The company has already resolved 95% of the mesothelioma lawsuits filed to date as well as all state claims and all claims against the company arising in the Imerys and Cyprus bankruptcy.

The plan differs significantly from the prior reorganization as it allows claimants to have their voice heard with a vote, which was denied to them by lawyers representing a small minority of claimants in the prior bankruptcy. We are letting the claimants decide the outcome. We fully expect to secure a favorable vote as the plan is in the best interest of the ovarian talc claimants, as most ovarian talc claimants have not recovered and will not recover anything at trial. And at the current run rate, most claimants will never get their day in court.

In addition, the plan was developed with the assistance and the support of counsel representing the overwhelming majority of the current claimants. So we know the likely of success is high. Overall, the plan enables Johnson & Johnson to ultimately resolve its talc litigation and to move on with what Johnson & Johnson does every day, which is to develop life-saving therapies for patients.

**Joaquin Duato** - *Johnson & Johnson - CEO & Chairman*

Thanks, Erik. And as Erik has commented, the focus of Johnson & Johnson always has been and will continue to be delivering life-saving solutions and technologies for patients. Today's announcement enables the company to resolve its talc litigation and continue our efforts in leading the next wave of health innovation. Thank you. Have a nice day.

**Operator**

Thank you. This concludes today's Johnson & Johnson Investor Conference Call. You may now disconnect.

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0032

**MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call**

**DISCLAIMER**

Refinitiv reserves the right to make changes to documents, content, or other information on this web site without obligation to notify any person of such changes.

In the conference calls upon which Event Transcripts are based, companies may make projections or other forward-looking statements regarding a variety of items. Such forward-looking statements are based upon current expectations and involve risks and uncertainties. Actual results may differ materially from those stated in any forward-looking statement based on a number of important factors and risks, which are more specifically identified in the companies' most recent SEC filings. Although the companies may indicate and believe that the assumptions underlying the forward-looking statements are reasonable, any of the assumptions could prove inaccurate or incorrect and, therefore, there can be no assurance that the results contemplated in the forward-looking statements will be realized.

THE INFORMATION CONTAINED IN EVENT TRANSCRIPTS IS A TEXTUAL REPRESENTATION OF THE APPLICABLE COMPANY'S CONFERENCE CALL AND WHILE EFFORTS ARE MADE TO PROVIDE AN ACCURATE TRANSCRIPTION, THERE MAY BE MATERIAL ERRORS, OMISSIONS, OR INACCURACIES IN THE REPORTING OF THE SUBSTANCE OF THE CONFERENCE CALLS. IN NO WAY DOES REFINITIV OR THE APPLICABLE COMPANY ASSUME ANY RESPONSIBILITY FOR ANY INVESTMENT OR OTHER DECISIONS MADE BASED UPON THE INFORMATION PROVIDED ON THIS WEB SITE OR IN ANY EVENT TRANSCRIPT. USERS ARE ADVISED TO REVIEW THE APPLICABLE COMPANY'S CONFERENCE CALL ITSELF AND THE APPLICABLE COMPANY'S SEC FILINGS BEFORE MAKING ANY INVESTMENT OR OTHER DECISIONS.

©2024, Refinitiv. All Rights Reserved.

10

REFINITIV STREETEVENTS | www.refinitiv.com | Contact Us

©2024 Refinitiv. All rights reserved. Republication or redistribution of Refinitiv content, including by framing or similar means, is prohibited without the prior written consent of Refinitiv. 'Refinitiv' and the Refinitiv logo are registered trademarks of Refinitiv and its affiliated companies.



BA_0033

## MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

That's a stark contrast to, let's call it, 100,000 claims in the ovarian bankruptcy, which you fundamentally need and require a process such as we are going through with the bankruptcy court, in this case, a prepackaged consensual bankruptcy proceeding in order to seek a resolution. So really, the vast -- overwhelmingly vast and really the most significant volume of claims are the ovarian claims. But a couple of important notes there. The ovarian claims also are the ones that have been the least successful of any claims that have been asserted to date. We have prevailed in 95% of the ovarian claims tried. That's 16 out of 17 cases tried, we have prevailed in every single one of those cases tried in the last 6 years. We prevailed in every one of those cases tried this year.

The one major law firm that has been the opponent of a resolution, the Beasley Allen firm, has lost every single claim they have brought to trial. 13 out of 13, they've lost. They've never recovered a dime for their client. That is why this makes sense for those claimants. We are proposing a resolution that will allow claimants to recover in a reasonable time frame, a significant amount and more than amount than that would otherwise recover in settlements outside of this process. And that is from any measure, objective or subjective, an equitable and efficient resolution from their perspective.

**Operator**

Our final question today is coming from Vamil Divan from Guggenheim.

**Vamil Kishore Divan** - *Guggenheim Securities, LLC, Research Division - MD of Healthcare Research & Senior Equity Research Analyst*

Great. I guess just one to clarify for me. I think you may have touched on this a little bit, but you said 75% of claimants vote in favor in the sort of prepackaged bankruptcy. Is there any reason attorneys that are holding out and not agreeing or the claimants then holding out are not going to just sue them and say that this ultimately should not end up in the bankruptcy side? I guess that's one thing I've been confused about from before. So I'm wondering how this overcomes that potential challenge if people still are arguing that bankruptcy is not the right path for this.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Yes. Great question to end on. So the primary opponent to resolving anything in bankruptcy as the individual I just referenced, it's the Beasley Allen firm and, in particular, Andy Birchfield, who has opposed any resolution through bankruptcy. Because as he testified in the last bankruptcy proceeding in June of 2023, that he has an economic incentive not to resolve his claims in bankruptcy, and we believe that presents an inherent conflict with the interest of his claimants.

The reason why he has a conflict of interest is because he sits on the plaintiff Executive Committee as he testified. And as he testified, it is his firm that stands to recover the vast amount of the common benefit fund amount that is allowed in the multi-district litigation for any recovery obtained outside of bankruptcy. So he stands to recover 12% from everybody else, all the other law firms that have been litigating this matter on top of the 40% fee he charges and admitted he charges his claimants.

So he would lose a lot of money outside of bankruptcy. And within bankruptcy, that would not be available because the plan calls for each of the claimants' counsel to earn their respective amount. So he has been the most vocal opponent to the bankruptcy proceeding to date and continues to be so. I don't see that as an impediment to this resolution for a number of reasons.

First of all, it is this vote that will dictate the claimants get to speak, the claimants' voices get to be heard, and that's the major distinction here. And if the vote is greater than 75%, it doesn't matter that he perhaps persuades his own claimants not to vote in favor of it. And by the way, he doesn't get a vote, his claimants do. So I would say that I would expect his claimants to take this deal because it's a good deal in any event. But regardless, it is the vote that matters at the end of the day.

And so that's one significant reason why I don't think it's going to matter. The other significant reason is I think there's a really good chance that he won't be around for much longer representing his claimants. We have moved to disqualify the Beasley Allen firm from representing claimants in this action as a consequence of their ethical breaches that arose from the Beasley Allen firm and, in particular, Mr. Birchfield, entering into an

8



MAY 01, 2024 / 12:00PM, JNJ.N - Johnson & Johnson Announces Plan by its Subsidiary, LLT Management Conference Call

alliance with a former counsel of J&J. And that is a gross and egregious breach of the ethical obligations of the former counsel as well as Mr. Birchfield and his firm, and that issue is currently being litigated before both the federal and the state cases. The final day of that hearing is on Friday. And we'll have post-trial briefing and then we will determine whether or not Mr. Birchfield has any grounds to raise any objections in any event.

Final point with respect to anyone else who might not be in favor of this proposal, they don't have the standing to do so. This is an ovarian-only case. The parties withstanding are the claimants that have the opportunity to vote in favor of this plan. The mesothelioma claims are being addressed outside of this bankruptcy, as I indicated. And to the extent there's one or perhaps two claimants that law firms have decided not to resolve, we will address those claims outside of bankruptcy.

So the parties withstanding to object to this are the claimants' counsel that are participating in the bankruptcy. And the only real significant objections that they could have is to process. And the process we are following is much more stringent and much more compliant with the code than your typical process. So I feel very strongly that there will be no legitimate basis for objecting to this process. Because in the end, it's the claimants. We let the claimants vote, let the claimants decide if they choose this is in their best interest, it should be confirmed.

**Jessica Moore** - *Johnson & Johnson - VP of IR*

Thank you, Vamil, and thanks to everyone for your questions and your continued interest in our company. We apologize to those that we couldn't get to because of time, but don't hesitate to reach out to the Investor Relations team with any remaining questions you may have.

I will now turn the call back over to Erik and Joaquin for some brief closing remarks.

**Erik Haas** - *Johnson & Johnson - Worldwide Vice President of Litigation*

Thanks, Jess. So let me just reiterate the key takeaways from today's announcement. The plan is focused on current and future ovarian talc claims and would resolve 99.75% of all pending talc claims. The company has already resolved 95% of the mesothelioma lawsuits filed to date as well as all state claims and all claims against the company arising in the Imerys and Cyprus bankruptcy.

The plan differs significantly from the prior reorganization as it allows claimants to have their voice heard with a vote, which was denied to them by lawyers representing a small minority of claimants in the prior bankruptcy. We are letting the claimants decide the outcome. We fully expect to secure a favorable vote as the plan is in the best interest of the ovarian talc claimants, as most ovarian talc claimants have not recovered and will not recover anything at trial. And at the current run rate, most claimants will never get their day in court.

In addition, the plan was developed with the assistance and the support of counsel representing the overwhelming majority of the current claimants. So we know the likely of success is high. Overall, the plan enables Johnson & Johnson to ultimately resolve its talc litigation and to move on with what Johnson & Johnson does every day, which is to develop life-saving therapies for patients.

**Joaquin Duato** - *Johnson & Johnson - CEO & Chairman*

Thanks, Erik. And as Erik has commented, the focus of Johnson & Johnson always has been and will continue to be delivering life-saving solutions and technologies for patients. Today's announcement enables the company to resolve its talc litigation and continue our efforts in leading the next wave of health innovation. Thank you. Have a nice day.

**Operator**

Thank you. This concludes today's Johnson & Johnson Investor Conference Call. You may now disconnect.

