## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

Case No. 3:16-md-2738 (MAS)(RLS)

MLD Case No. 2738

[FILED ELECTRONICALLY]

---

**BEASLEY ALLEN'S POST-PLENARY HEARING REPLY BRIEF IN OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON AND LTL MANAGEMENT LLC'S MOTION AND ORDER TO SHOW CAUSE SEEKING BEASLEY ALLEN'S DISQUALIFICATION FROM THIS LITIGATION AND REMOVAL FROM THE PLAINTIFFS' STEERING COMMITTEE**

---

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Jeffrey M. Pollock, Esq. (015751987)
Michael W. Sabo, Esq. (306252019)
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-896-7660
Facsimile: 609-896-1469
*Attorneys for Andy Birchfield and Beasley Allen*

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ..............................................................................................ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

ARGUMENT ..................................................................................................................... 3

J&J FAILS TO CARRY ITS HEAVY BURDEN THAT BEASLEY ALLEN SHOULD BE DISQUALIFIED FROM THIS LITIGATION UNDER NEW JERSEY LAW ............................. 3

    A.  J&J Again Failed to Prove an Actual Conflict, and Its Contradictory Ethics Theories and Changing Explanations Cannot Support Disqualification Under the RPCs ........................ 3

        1.  There is no evidence that Beasley Allen violated RPC 1.6 ............................................. 4

        2.  There is no evidence that Beasley Allen violated RPC 1.9 because Mr. Conlan does not represent Plaintiffs, he has never been employed or retained by Beasley Allen in any capacity, and he is not "aligned" with Beasley Allen ..................................................... 5

        3.  There is no evidence that Beasley Allen violated RPC 5.3, and the Rule does not apply by its plain terms ........................................................................................................ 7

    B.  Beasley Allen's Compliance with Judge Kaplan's Mediation Orders and Its Confirmed Mediation Privilege Claims Cannot Support Disqualification .......................................... 11

    C.  The Motion Should Be Denied Because J&J Repeatedly Withheld Relevant Evidence, Which Deprived Beasley Allen (and Its Attorneys) Their Right to Due Process.............. 13

    D.  Beasley Allen Did Not Commit Any "Independent" RPC Violation Under RPC 3.3 or RPC 8.4.................................................................................................................................. 14

CONCLUSION.................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*City of Atlantic City v. Trupos*,
    201 N.J. 447 (2010) .......................................................................................................5, 6

*Cordy v. Sherwin-Williams Co.*,
    156 F.R.D. 575 (D.N.J. 1994) .....................................................................................10, 11

*Greig v. Macy's Ne., Inc.*,
    1 F. Supp. 2d 397 (D.N.J. 1998) .......................................................................................11

*In re Grand Jury Subpoena*,
    389 N.J. Super. 281 (App. Div. 2006) ...............................................................................11

*Kane Props., LLC v. City of Hoboken*,
    214 N.J. 199 (2013) ...........................................................................................................10

*In re Logan*,
    70 N.J. 222 (1976) .............................................................................................................14

*IMO of Robertelli*,
    248 N.J. 293 (2021) .............................................................................................................8

*Maldonado v. New Jersey ex rel. Admin. Off. of Cts., Prob. Div.*,
    225 F.R.D. 120 (D.N.J. 2004) .....................................................................................10, 11

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
    348 F. Supp. 2d 332 (D.N.J. 2004) ...................................................................................14

*Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*,
    2011 WL 1466369 (D.N.J. Apr. 18, 2011) .......................................................................11

*Sandoz, Inc. v. United Therapeutics Corp.*,
    2021 WL 5122069 (D.N.J. Nov. 2, 2021) ........................................................................11

*Twenty-First Century Rail Corp. v. N.J. Transit Corp.*,
    210 N.J. 264 (2012) .........................................................................................................6, 7

*U.S. Bank Nat'l Ass'n v. Curcio*,
    444 N.J. Super. 94 (App. Div. 2016) .................................................................................16

**Statutes**

N.J.S.A. 2A:24C-4.b ................................................................................................................11

D.N.J. L.B.R. 9019-2 ..................................................................................................11

**Other Authorities**

RPC 1.6 .......................................................................................................... *passim*

RPC 1.9 .......................................................................................................... *passim*

RPC 1.9(a) ............................................................................................................5, 7

RPC 1.10 ........................................................................................................ *passim*

RPC 3.3 ..........................................................................................................14, 16

RPC 3.3(a)(5) ........................................................................................................14

RPC 5.3(a) ....................................................................................................2, 7, 8

RPC 5.3(b) ..............................................................................................................7

RPC 5.3(c) ............................................................................................2, 8, 10, 11

RPC 5.3(c)(1) ........................................................................................................8

RPC 5.3(c)(2) ......................................................................................................10

RPC 8.4 ..........................................................................................................14, 16

RPC 8.4(d) ..........................................................................................................16

## PRELIMINARY STATEMENT

Johnson & Johnson's (J&J's) motion to disqualify Beasley Allen must be denied. In its rambling sixty pages of post-hearing briefing (after three hearing dates), J&J's motion provides no evidence that its former counsel James Conlan disseminated J&J's confidential information to Beasley Allen. Forgetting where it started on January 17, 2024, before Judge Porto, *see* J&J Dec. 8, 2023 Br. at 15 (admitting there is "no Rule of Professional Conduct [that] explicitly speaks to the precise situation here."), J&J has constantly changed the alleged ethical issues from no RPC violation to a plethora of unsupported breaches. J&J is no longer even attempting to claim that the Legacy Proposal (including the matrix attached to it), the $19 billion-dollar talcum powder claims valuation, or the 75% plaintiffs' support threshold are J&J confidences. Instead, J&J grasps onto an unsupported claim that Beasley Allen should be disqualified based upon pure speculation and bald assertions about what Mr. Conlan must have told Beasley Allen, *i.e.* that any conversation between Legacy and Beasley Allen "necessarily" or "impliedly" constituted an ethics violation.

**RPCs 1.6  and 1.9 do not apply.** After numerous opportunities, J&J has not satisfied its heavy burden to disqualify Beasley Allen under RPC 1.6 because there is no evidence that Mr. Conlan shared J&J confidential information with Beasley Allen. RPC 1.9 does not apply because Mr. Conlan does not represent a talcum powder plaintiff (and has never represented a talcum powder plaintiff) or served as a lawyer, employee, or expert with the Beasley Allen firm. Mr. Conlan is not a "side-switching" lawyer adverse to J&J in any sense under RPCs 1.6 and 1.9. Legacy is a third-party business entity that—if J&J accepted the Legacy Proposal—would immediately become adverse to Beasley Allen and its clients. The premise behind the Legacy Proposal is that Legacy would – through structural optimization and disaffiliation -  acquire J&J's talc liability, current liabilities as well as future liabilities. If J&J had accepted the Legacy Proposal, all claimants would be either litigating (or settling) talc claims against Legacy, not J&J. The

1

Legacy Proposal was entirely dependent upon J&J voluntarily accepting or negotiating terms with Legacy. Shared confidences cannot be "presumed" under current New Jersey law. Further, the facts here do not support presumption. RPC 1.6, 1.9 and 1.10 do not apply by their plain terms.

**RPC 5.3 does not apply.** First, RPC 5.3(a) is irrelevant because Mr. Conlan was indisputably neither "retained" nor "employed" by Beasley Allen or any of its attorneys in any capacity. Under J&J's own theory of RPC 5.3, Mr. Birchfield and Mr. Conlan were never "acting as co-counsel," and Mr. Conlan was indisputably not "a non-lawyer employee" of Beasley Allen. Mr. Conlan and Beasley Allen were actually adverse and not "associated" under RPC 5.3.

Second, RPC 5.3(c) is irrelevant because Legacy (Mr. Conlan) is not a "non-lawyer employee" of Beasley Allen, and Beasley Allen did not "order" or 'ratify" anything Legacy or Conlan did. Mr. Conlan worked at Legacy since he left Faegre in 2022. Legacy (Mr. Conlan) put J&J on notice in February 2023 about solving J&J's talc liability issues months before he ever spoke to Mr. Birchfield or anyone else at Beasley Allen. Notably, J&J never objected to working with Mr. Conlan, a third party, once Mr. Conlan formed Legacy. Mr. Haas, who now complains bitterly, communicated openly and freely with Mr. Conlan after he formed Legacy—a 3[rd] party.

Third, Beasley Allen (and Mr. Birchfield) did not "ratify" any of Mr. Conlan's alleged misconduct, in any sense, let alone within the meaning of RPC 5.3. The matrix included as a component of the Legacy Proposal (the proposal that J&J made public with this action) was solely the product of Beasley Allen and plaintiff leadership. The $19 billion figure was solely the product of Legacy's analysis and not derived from any J&J client confidences. Further, the $19 billion figure was a Legacy term that included all talc liabilities for all time, for which current ovarian cancer claims were only a portion. Given that there was no misconduct by Mr. Conlan that was known or apparent to Mr. Birchfield or Beasley Allen, no "ratification" could have occurred under

RPC 5.3. None of the RPCs cited by J&J (including RPCs 1.6, 1.9, 1.10, 5.3 or 8) apply here.

Worse still, J&J attacks Beasley Allen's invocation of New Jersey's broad mediation privilege (for engaging in the same court-ordered mediation J&J refused to participate in), while at the same time refusing to produce exculpatory evidence under the guise of "privilege." Special Master Schneider upheld the Plaintiffs' Steering Committee's (and Beasley Allen's) mediation privilege claims. After six months, we are back to where we started. J&J insists (without evidence) that unethical conduct inferentially took place and relies upon cases citing the rejected "alliance" or "necessarily imbued" standard (appearance of impropriety re-branded). J&J is not entitled to re-write the RPCs, and it still has not provided any evidence to satisfy its heavy burden that Beasley Allen violated the RPCs and should be disqualified. For these reasons, the Motion should be denied.

## BACKGROUND

Beasley Allen incorporates by reference and adopts the facts detailed in its opening post-hearing brief in further opposition to J&J's motion to disqualify.

## ARGUMENT

### J&J FAILS TO CARRY ITS HEAVY BURDEN THAT BEASLEY ALLEN SHOULD BE DISQUALIFIED FROM THIS LITIGATION UNDER NEW JERSEY LAW.[1]

A.    **J&J Again Failed to Prove an Actual Conflict, and Its Contradictory Ethics Theories and Changing Explanations Cannot Support Disqualification Under the RPCs.**

In its sixty-page overlength brief, J&J fails to identify a single confidence that Mr. Conlan purportedly shared with Mr. Birchfield. J&J's latest brief—replete with speculation, innuendo, and *ad hominem* attacks—is a regurgitation of its prior meritless arguments and an attempt to re-write

---

[1] Beasley Allen incorporates by reference and adopts all facts and arguments in opposition to J&J's motion to disqualify and/or remove Beasley Allen from the Plaintiffs' Steering Committee.

the RPC's plain terms. J&J has no proof of any disclosure by Mr. Conlan to Beasley Allen. In addition to having no evidence supporting its motion, J&J does not satisfy its heavy burden to disqualify Beasley Allen under any legal theory or the RPCs.

### 1.    There is no evidence that Beasley Allen violated RPC 1.6.

After six months of briefing, testimony, and argument, there is no evidence that Beasley Allen violated RPC 1.6 because J&J has not identified any J&J confidence Mr. Conlan purportedly shared with Beasley Allen. Despite having no evidence, J&J argues that the Court may "presume" that Mr. Conlan violated his ethics obligations and shared confidential information. But regardless of what Mr. Conlan may know, there is still no evidence that he shared any J&J confidence with Beasley Allen—the sole inquiry here. *See* (May 3 Tr. at 65, 96 to 97) (Beasley Allen did not receive "any confidential information from Mr. Conlan."). And when J&J first raised the issue with Mr. Conlan, Mr. Conlan—in the document J&J attempted to conceal—immediately denied that he shared any J&J confidences. *See* (P-5). At the hearing, Mr. Conlan again denied that he ever shared with Beasley Allen any confidential information. (April 10 PM Tr. at 70); (*id.* AM Tr. at 113). The unrebutted testimony is that: (1) Mr. Conlan never revealed any J&J confidential information to Beasley Allen or Mr. Birchfield; and (2) Mr. Birchfield never received any confidential information. *See* (May 3 Tr. at 65, 96 to 97); (April 10 AM Tr. at 113). Nor has J&J identified any information that Birchfield or Beasley Allen possesses that could have come from a J&J confidence shared by Mr. Conlan. Nothing – not the matrix, not the $19 billion figure, nor any other point of information. Plus, J&J revealed all this information by filing its own public filings.

When J&J initially accused Mr. Conlan of misconduct, Mr. Conlan immediately pushed back on J&J's baseless ethics claims. *See* (P-5). Two things are particularly telling here because J&J hid them from the Court: (1) first, Mr. Conlan immediately responded to Mr. Murdica's threats; and (2) Mr. Conlan denied not only the alleged breach of the attorney client privilege but,

further, Mr. Conlan expressly refuted the claim in Mr. Murdica's letter that Mr. Conlan recommended the ill-fated J&J Texas Two Step. *See* (P-5); (April 10 PM Tr. at 34, 40 to 43). Mr. Conlan's same day response to J&J is consistent with his testimony at the plenary hearing that he never shared J&J confidential information with Beasley Allen. (*Id.*). Mr. Conlan put J&J on notice in February 2023 that he would "negotiate settlements with interested asbestos-plaintiff law firms . . ." (P-3). Because the unrebutted evidence demonstrates that Mr. Conlan did not share J&J confidential information, RPC 1.6 cannot support disqualification in this case.

> **2.      There is no evidence that Beasley Allen violated RPC 1.9 because Mr. Conlan does not represent Plaintiffs, he has never been employed or retained by Beasley Allen in any capacity, and he is not "aligned" with Beasley Allen.**

Because Mr. Conlan does not and has never represented a talcum powder plaintiff or served as a lawyer with the Beasley Allen firm, RPC 1.9 and 1.10 do not apply by their plain terms. RPC 1.9(a) states "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or substantially related matter in which that client's interests are materially adverse to the interests of the former client[.]" *City of Atlantic City v. Trupos*, 201 N.J. 447, 462 (2010).

Mr. Conlan, an independent businessman at Legacy, is indisputably not a lawyer, expert, associate, partner, or consultant hired by/working for or representing Plaintiffs (or Beasley Allen) in the talc litigation. *Compare* (May 3 Tr. at 63 to 64); *see* (May 3 Tr. at 101 to 102) (Beasley Allen never hired Conlan as an attorney or in any capacity). Beasley Allen never retained James Conlan as an expert. *Id.*; *see* (April 10 PM Tr. at 34 to 35) (confirming that Beasley Allen never employed Conlan); (March 25 AM Tr. at 131 to 132) (Mr. Haas confirming Conlan never served as a Beasley Allen attorney). Beasley Allen never sought advice from Mr. Conlan "regarding how to prosecute or pursue [Plaintiffs'] claims against J&J." (May 3 Tr. at 102). RPC 1.9 does not apply because Mr. Conlan is not plaintiffs' counsel. And no conflict may be imputed from Conlan to

Beasley Allen under RPC 1.10 or any other RPC because Conlan has never been—and is not now—an attorney at Beasley Allen. Therefore, there is no "present and former clients" in this situation-only J&J as Mr. Conlan's former client.

All agree that Mr. Conlan is a businessman acting through Legacy. J&J has not rebutted the fact that if J&J accepted the Legacy Proposal, Legacy would step in J&J's shoes and be adverse to Plaintiffs/Beasley Allen. The Legacy Proposal—which would remove all of J&J's talc liability—"would actually be in the best interest of J&J." (May 3 Tr. at 103). Beasley Allen understood that Mr. Conlan/Legacy would be its adversary because if J&J accepted the Legacy Proposal, Legacy "would be standing in the shoes of J&J" as an adversary. (May 3 Tr. at 65, 101 to 103) (Birchfield addressing the scenario of J&J accepting the Legacy Proposal: "Legacy is standing in the shoes of J&J" and becomes Beasley Allen's "adversary every bit as much as J&J is now. They have all the talc liability."); *see* (April 10 AM Tr. at 112, 121 to 122) (Mr. Conlan confirming that Legacy never tried to position itself with Beasley Allen against J&J). Mr. Conlan is not a "side-switching lawyer" (or any lawyer) like the lawyers in *Twenty-First Century Rail Corporation*. He does not have any current clients—he works for Legacy and Legacy's financial interests only. *See* (April 10 AM Tr. at 100) (Once James Conlan left Faegre, Mr. Conlan was working for Legacy). Mr. Conlan's status as a businessman is not a technicality but the reality of how Mr. Conlan has operated since 2022.[2]

Even if there were a "superficial" overlap between Mr. Conlan's prior work for J&J and the current talc litigation, *see Trupos*, 201 N.J. at 467, the factors outlined in *Trupos* and *Twenty-*

---

[2] Consistent with its ever-changing positions in this proceeding, J&J now tries to conflate RPC 1.9 with RPC 5.3. As discussed *infra*, Section A.3, RPC 5.3 also does not apply here. There is also no "de facto" theory of attorney client conflicts or representation—this is yet another attempt by J&J to revive the defunct appearance of impropriety standard by another name.

*First Century Rail Corporation* are not applicable and cannot be a basis to disqualify Beasley Allen because Mr. Conlan is not Plaintiffs' "lawyer." Mr. Conlan does not represent Plaintiffs in any capacity. *See Twenty-First Century Rail Corp. v. N.J. Transit Corp.*, 210 N.J. 264, 273-76 (2012) ("[i]n clear language RPC 1.9(a) begins with a prohibition that precludes <u>an attorney</u> from engaging in the representation of an adverse client in the same matter") (emphasis added).[3]

Because Mr. Conlan has never been a lawyer at Beasley Allen (or represented any plaintiffs adverse to J&J), the inquiry under RPC 1.9 of whether matters are "the same" or "substantially related" never applies. *Id.* Mr. Haas conceded that Mr. Conlan is not: (1) a "side-switching" attorney; (2) adverse to J&J; or (3) "aligned" with Beasley Allen. (Mar. 25 PM Tr. at 4:17-25). Instead, Mr. Conlan "went to Legacy" and was in "a different role. He opened up a business where he's purporting to go out and pitch the Legacy structured optimization model." (*Id.*). Mr. Haas agreed that Mr. Conlan "went from being a lawyer at Faegre to being a businessman at a company that he formed called Legacy." (*Id.*)  J&J not only communicated with Mr. Conlan long after he left Faegre, *see* Joint Plenary Hearing Exhibit 3 (August to October 2023 emails between Legacy/Conlan and J&J), but J&J actually discussed with Mr. Conlan transferring to Legacy all talc claims against J&J. These documents and Mr. Haas' admissions are dispositive. Beasley Allen cannot be disqualified under any novel theory applying the plain terms of RPC 1.6 or 1.9.

### 3. There is no evidence that Beasley Allen violated RPC 5.3, and the Rule does not apply by its plain terms.

There is no evidence that Beasley Allen violated any part of RPC 5.3, and the Rule does not apply by its plain terms.[4] RPC 5.3(a) states that "With respect to a nonlawyer employed or

---

[3] For these same reasons, no "conflict" can be imputed to Beasley Allen via Mr. Conlan as a matter of law under RPC 1.10.

[4] RPC 5.3(b) does not apply because there is no claim that Beasley Allen (or any of its attorneys)

retained or associated with a lawyer," "every lawyer, law firm or organization" "shall adopt and maintain reasonable efforts to ensure that the conduct of <u>nonlawyers retained or employed</u> by the lawyer, law firm or organization is compatible with the professional obligations of the lawyer." (emphasis added). RPC 5.3 plainly applies to lawyer supervision of employee "nonlawyers" including paralegals, legal assistants and other "nonlawyers retained or employed" by a law firm. *See IMO of Robertelli*, 248 N.J. 293, 320 (2021) (RPC 5.3 non-lawyer provision applies to a lawyer's "surrogates–including investigators or paralegals."). Mr. Conlan (Legacy) is a third-party businessman not Beasley Allen's paralegal, assistant, investigator, or expert.

<u>RPC 5.3(a) is inapplicable.</u> First, RPC 5.3(a) does not apply because Mr. Conlan was indisputably neither "retained" nor "employed" by Beasley Allen or any of its attorneys in any capacity. RPC 5.3(a). *See* (May 3 Tr. at 101 to 103); *see* (April 10 PM Tr. at 34 to 35) (confirming that Conlan never served as an attorney, expert, or expert witness for Beasley Allen). Second, J&J's own citation to the Restatement (Third) 123, cmt. c(iii) confirms that RPC 5.3 does not apply here. *See* J&J Br. at pg. 47 (explaining that "associate" "with one another" means two individuals "acting as co-counsel on the same case."). Mr. Birchfield and Mr. Conlan were never "acting as co-counsel," and Mr. Conlan was indisputably not "a non-lawyer employee" of Beasley Allen. RPC 5.3(a) does not apply here.

<u>RPC 5.3(c) is inapplicable.</u> RPC 5.3(c) states that "a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:" (1) "the lawyer orders or ratifies the conduct involved." RPC 5.3(c)(1). First, there is no allegation that Beasley Allen "ordered" Mr. Conlan to do anything. Mr. Conlan worked at Legacy since he left Faegre in 2022. Beasley Allen's 2023 conversations with Legacy were

---

had "direct supervisory authority" over Mr. Conlan.

consistent with Judge Kaplan's order and finding a path to finality after the Third Circuit's dismissal of LTL 1—not any nefarious purpose. *See* Civ 23-12825 at Doc. 481.

After being approached by Legacy and learning of an alternative that would provide a non-bankruptcy option for "finality," and after being ordered to mediate, in June 2023, Mr. Birchfield sought to include Legacy in the mediation process – not as part of the "Beasley mediation team" but as a business entity with an option that would give J&J the "finality" it sought while also offering fair and reasonable values to cancer victims on a voluntary basis. Had J&J engaged in the mediation process as ordered by the Court, and as Mr. Birchfield and other members of Plaintiffs' leadership anticipated it would, Legacy's involvement would have been known immediately. There was no effort or intention to Legacy's involvement. Quite the opposite. Mr. Birchfield communicated with the Court-appointed mediators. It was anticipated that J&J would comply with the Court's order to mediate and a three-way negotiation in mediation would ensue. J&J, however, failed to participate in the mediation process.

Even so, J&J was aware of Legacy's interest in acquiring J&J's talc liability long before this time. Legacy (Mr. Conlan) approached J&J in February 2023 about solving J&J's talc liability issues months before he ever spoke to Mr. Birchfield or anyone else at Beasley Allen. *Compare* (P-3) (February 2023 letter from Conlan to J&J Board of Directors as well as Mr. Haas advising that Legacy reserves the right "to negotiate settlements with interested asbestos-plaintiff law firms"), *with* (March 25 PM Tr. at 4) (Mr. Haas noting that April 2023 was the first contact between Beasley Allen and Legacy).

Second, Beasley Allen (Mr. Birchfield) never saw the Legacy Proposal before J&J revealed it to the public in these proceedings. (May 3 Tr. at 91 to 92). Beasley Allen provided the matrix to Legacy but did not negotiate any settlement matrix with Legacy or Conlan. (May 3 Tr. at 95 to

98). Beasley Allen (and Mr. Birchfield) did not "ratify" any of Mr. Conlan's alleged conduct, including the Legacy Proposal, in any sense, let alone within the meaning of RPC 5.3.[5] *See* Ratification, Black's Law Dictionary (defined as "Confirmation and acceptance of a previous act."). Beasley Allen and Legacy never compromised, "haggled" over, or "negotiated the matrix" with Legacy (Conlan). *See* (May 3 Tr. at 94 to 97). Factually and legally, there was no order or ratification. RPC 5.3(c).

Beasley Allen had conversations (including in mediation) with Legacy that involved its "proposal of structural optimization and disaffiliation," not any confidences Mr. Conlan may have learned as J&J's counsel. (May 3 Tr. at 67 to 68). Indeed, Mr. Birchfield was not privy to the Legacy Proposal (Plenary Hearing Exhibit 7) prior to J&J's filing of this motion. (May 3 Tr. at 91 to 92). Beasley Allen provided the matrix to Legacy but did not negotiate any settlement matrix with Legacy or James Conlan. (May 3 Tr. at 95 to 98). Beasley Allen therefore never "associated" with Mr. Conlan or Legacy. Legacy and Beasley Allen were dealing at arm's length with Legacy as a business entity offering both J&J and plaintiffs what they sought. Legacy and Beasley Allen were not "allies." (May 3 Tr. at 65, 101 to 104). There was no "ratification" or "confirmation" by Beasley Allen.

J&J's belated invocation of RPC 5.3 (and the decades old *Cordy*, *Voigt*, and *Maldonado* cases) is an attempt to resurrect the appearance of impropriety standard. J&J repeatedly cites stale case law to support its novel ethics theories. But there is no "shared presumption" of conflicts under current New Jersey law. *Compare Kane Props., LLC v. City of Hoboken*, 214 N.J. 199, 220 (2013) (reaffirming that "appearance of impropriety" standard does not govern alleged attorney

---

[5] The remainder of RPC 5.3(c)(2) similarly does not apply because Mr. Birchfield did not have "direct" (or any) "supervisory authority" over Mr. Conlan or Legacy.

conflicts), *with* J&J Brief at pgs. 34-40, 52 ((citing *Maldonado v. New Jersey ex rel. Admin. Off. of Cts., Prob. Div.*, 225 F.R.D. 120, 137 (D.N.J. 2004) (citing appearance of impropriety standard); *Greig v. Macy's Ne., Inc.*, 1 F. Supp. 2d 397 (D.N.J. 1998) (invoking the overturned "appearance of impropriety" standard); *Cordy v. Sherwin-Williams Co*., 156 F.R.D. 575, 583-84 (D.N.J. 1994) (disqualifying firm because of "the appearance of impropriety, as reflected by the ethics rules."))). None of these cases are good law to support disqualification. For these reasons, RPC 5.3(c) does not apply to any of the circumstances here, and the Motion should be denied.

**B.    Beasley Allen's Compliance with Judge Kaplan's Mediation Orders and Its Confirmed Mediation Privilege Claims Cannot Support Disqualification.**

The Motion should be denied because J&J's attacks on Beasley Allen's participation in court-ordered mediation and its confirmed mediation privilege claims cannot be a basis for disqualification. The mediation privilege broadly applies to communications that "have a clear nexus to the mediation." *Sandoz, Inc. v. United Therapeutics Corp.*, 2021 WL 5122069, at *2-4 (D.N.J. Nov. 2, 2021). The mediation privilege covers a wide swath of communications and originates from Judge Kaplan's May 10, 2023 order, *see* case 23-12825-MBK at Doc. No. 481 (Section 5), D.N.J. L.B.R. 9019-2, and N.J.S.A. 2A:24C-4.b. (*See* P-4).

J&J continues to wield the sacrosanct mediation "privilege" (including Beasley Allen's right to invoke mediation privilege) as a sword to baselessly claim Mr. Conlan shared client confidences with Beasley Allen—and use privilege as a shield, revealing "confidences" selectively to its benefit but withholding context and critical evidence to prevent Beasley Allen from testing J&J's claims. *See Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, 2011 WL 1466369, at *22 (D.N.J. Apr. 18, 2011) (a litigant cannot "make use of those privileged communications which support his position while hoping to maintain the privilege as those communications which undercut his legal position"); *In re Grand Jury Subpoena*, 389 N.J. Super. 281, 298 (App. Div.

11

2006) (same).

Special Master Schneider affirmed the Plaintiffs' Steering Committee's (and Beasley Allen's) mediation privilege claims. *See* Trans ID: LCV2024883012; ECF Doc. 29999 at 4. Contrary to J&J's narrative, Special Master Schneider noted that the "bulk of the documents on [Beasley Allen's] privilege log were generated while the" LTL 2 mediation order "was in effect." *Id.* Moreover—and contrary to J&J's attempts to mischaracterize the scope and scale of documents identified in the mediation privilege log—"most of the documents involve internal Legacy communications or exchanges between Legacy and KCIC." *Id.* (emphasis added).

J&J's narrative that Legacy and Beasley Allen worked in secret to harm J&J is both: (1) false; and (2) completely unsupported speculation. First, Beasley Allen and, with mediator approval, Legacy, engaged in court-ordered mediation, which J&J refused to participate in, despite repeated court orders and overtures by Beasley Allen and Plaintiffs' leadership to do so. ECF Case 21-30589-MBK at Doc. No. 2317. *See* (May 3 Tr. at 96 ("J and J really didn't engage in the mediation in LTL-2")). After Judge Kaplan dismissed J&J's second bad faith bankruptcy on August 11, 2023, the Court urged the parties (including J&J) to continue settlement discussions. Case 23-12825-MBK at Doc. No. 1222. J&J again refused to participate. *See* (May 3 Tr. at 96).

Second, as described above, Legacy told J&J in February 2023 it would work with plaintiffs' firms like Beasley Allen. (P-3). Left with no other basis to disqualify Beasley Allen, J&J trains its fire on the mediation process and Special Master Schneider, implicitly impugning the Special Master's finding that the mediation privilege applied and warping the Special Master's mediation privilege findings as a basis to disqualify Beasley Allen. J&J's efforts to disqualify Beasley Allen based upon validly withheld mediation communications are really an attack on the sanctity of mediation privilege itself and the broad protections conferred by New Jersey state law

and reaffirmed by the courts. As Special Master Schneider recognized, J&J's attacks (if successful) would "discourage mediations" and "frank and open discussions during a mediation which would likely lead to less settlements." ECF No. 29999 at 8; Trans ID: LCV2024883012. J&J attacks Beasley Allen (and Legacy) for engaging in the exact conduct Judge Kaplan repeatedly authorized and encouraged.

Special Master Schneider ruled that limited mediation communications between Beasley Allen and Legacy (the same communications J&J now attacks) were privileged. This ruling came after J&J's original motion to disqualify was filed on December 5, 2023. Special Master Schneider found the Beasley Allen/Legacy communications privileged <u>after</u> J&J's pleadings asserted that Mr. Conlan represented it years prior (and sought disqualification). J&J's refusal to participate in court-ordered mediation and its recent feigned surprise that Beasley Allen and Legacy communicated in mediation is not credible, especially in light of Mr. Conlan's February 2023 notice. The Court should deny the Motion and not countenance J&J's continued weaponization of mediation as a sword (and at the same time, using privilege as a shield by repeatedly withholding exculpatory evidence including Mr. Conlan's February 2023 notice to J&J (P-3) and his contemporaneous response that he did not share confidences with anyone (P-5)).

**C.     The Motion Should Be Denied Because J&J Repeatedly Withheld Relevant Evidence, Which Deprived Beasley Allen (and Its Attorneys) Their Right to Due Process.**

Despite being asked (and ordered) to do so on multiple occasions, J&J produced no evidence that Mr. Conlan disclosed a privileged fact or legal theory that belonged to J&J. *See* Transcript Addendum.[6] The Court repeatedly asked J&J to produce relevant evidence. *See, e.g.*,

---

[6] Beasley Allen repeatedly objected to J&J's refusal to produce relevant evidence and complete documents. *See, e.g.*, (March 25 AM Tr. at 13) (Beasley Allen objecting to Mr. Haas' attempt to testifying to "billing entries" not in the record or produced). Moreover, J&J failed to provide any specific evidence to support their claims (even *in camera* or under seal). *See* (March 25 AM Tr. at 52 to 53) (objecting to Mr. Haas speculative testimony without documentary support under Best

Feb. 14, 2024 Hearing Tr. at 18:21-25 to 19:1-7 (Judge Porto noting that to date, "I didn't get anything in camera."). Back in January, Mr. Haas certified he had reviewed and had access to "Mr. Conlan's billing records." (PlenaryHearing00083). J&J refused to produce the "records" for months. Weeks after Mr. Haas and Murdica left the stand, J&J produced heavily redacted and incomprehensible billing records and "timesheets." Incredibly, J&J then tried to call Mr. Haas back to the stand at the end of three days of testimony so he could opine on further issues without confrontation or rebuttal. (May 3 Tr. at 132 to 137). None of the heavily redacted documents or "timesheets" J&J belatedly provided support its disqualification application.

J&J's claims lack credibility because if it had evidence that Mr. Conlan disclosed J&J confidences, then J&J would have put that evidence in the record. *See Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) (factfinder may infer that withheld "evidence might or would have been unfavorable to the position of the offending party"). J&J engaged in the exact conduct and situation the *Yuna* Court sought to prevent—attorneys accused of ethical misconduct without any meaningful chance to cross-examine their accusers consistent with due process. *In re Logan*, 70 N.J. 222, 228 (1976). New Jersey law and fundamental fairness obligated J&J to provide specific evidence or forego the chance. J&J failed to do so.

**D.     Beasley Allen Did Not Commit Any "Independent" RPC Violation Under RPC 3.3 or RPC 8.4.**

**Beasley Allen did not violate RPC 3.3.** RPC 3.3(a)(5) provides that a lawyer shall not knowingly "fail to disclose to the tribunal a material fact knowing that the omission is reasonably certain to mislead the tribunal, except that it shall not be a breach of this rule if the disclosure is protected by a recognized privilege or is otherwise prohibited by law." There is no basis to

---

Evidence Rule and *Yuna*'s Hobson's Choice); (April 10 AM Tr. at 11 to 20) (same).

disqualify Beasley Allen based on a lack of candor to the tribunal.

After six months of briefing and hearings, J&J posits that Beasley Allen (and Mr. Birchfield) was less than candid with the Court because of "deceptive half-truths" that were "far from the whole truth." J&J's supposition is unsubstantiated rank speculation. Mr. Birchfield (and other Beasley Allen attorneys) filed certifications, sat for sworn testimony on multiple dates and answered each question candidly. At no point was Mr. Birchfield's testimony evasive or misleading. Unfortunately (and ironically), J&J is guilty of the exact conduct it now falsely accuses Beasley Allen of engaging in.[7]

First, J&J concealed relevant evidence in this proceeding for months, only recently producing heavily redacted "timesheets," which Beasley Allen was entitled to review from the outset. *See* (May 3 Tr. at 136 to 137) (objecting to use and reference to heavily redacted timesheets produced after days of testimony ended). J&J's use of privilege as a sword (when convenient) and a shield (when convenient) deprived Beasley Allen of the opportunity to test J&J's assertions.

Second, J&J's personal attacks on the veracity of Mr. Birchfield's certifications are not only off base (as described above) but hypocritical. For example, Mr. Murdica's declaration (and later his testimony)— based on hearsay including musings of other people's state of mind—failed to identify a single confidential fact that Mr. Conlan learned or how (or when) he told Beasley Allen. *See* Murdica Declaration at ¶¶4-7 (stating generally that Mr. Conlan worked on "legal strategies," "strategy calls"); *id.* at ¶13 (stating what Mr. Conlan "was not mindful" of); *id.* at ¶14 (same). Consistent with their testimony, neither Mr. Haas nor Mr. Murdica's declarations provided any specific factual or legal basis to disqualify Beasley Allen as New Jersey law requires. *Id.*

---

[7] Mr. Birchfield provided the first date of contact with Legacy because that date is significant in the timeline of events. No confidences could conceivably have been shared before. At that point, J&J's first effort at bankruptcy had been dismissed and it had filed its second petition.

Instead, J&J opted to play a shell game with these proceedings, leaking documents after both matters were fully briefed and withholding other documents (like Mr. Conlan's February 2023 notice (P-3) or his contemporaneous November 5, 2023 disavowal (P-5)) entirely.

Third, until the Court expressly overruled its privilege objections, J&J successfully concealed Mr. Conlan's November 2023 response to J&J's baseless privilege claims (which J&J did not challenge in November 2023). *See* (P-5). Mr. Conlan's response should have been produced by J&J in its initial application in December 2023, but J&J concealed it from the Court because it contained Mr. Conlan's contemporaneous (and inconvenient) reply to J&J's privilege allegations. A litigant "must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings." *U.S. Bank Nat'l Ass'n v. Curcio*, 444 N.J. Super. 94, 113 (App. Div. 2016). J&J has failed to do so repeatedly since it filed the Motion. RPC 3.3 cannot provide a basis for disqualification.

**Beasley Allen did not violate RPC 8.4.** RPC 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." None of Beasley Allen's conduct remotely approaches conduct prejudicial to the administration of justice. Beasley Allen and Legacy did not act "in secret." Mr. Conlan put J&J on notice as far back as February 2023 that Legacy would work with Plaintiffs firms like Beasley Allen to resolve J&J's talcum powder liabilities. *See* (P-3). Beasley Allen communicated with Legacy in the context of court-ordered mediation, not in some clandestine conspiracy. In thirty (30) plus years of practice as attorneys, neither Mr. Birchfield nor Mr. Conlan has ever been accused of any ethical misconduct. Nothing in the record supports the novel ethics accusations made against Beasley Allen (J&J's litigation opponent) now. The Motion—which was clearly brought to gain an improper litigation advantage and smear Beasley Allen—should be denied.

16

## CONCLUSION

Despite J&J's ever-evolving ethics theories, none of the RPCs J&J now points to apply to Beasley Allen or justify the harsh remedy of disqualification. Beasley Allen never represented J&J. Beasley Allen never hired or retained Mr. Conlan in any form. The Supreme Court of New Jersey has repeatedly rejected the "appearance of impropriety" standard (J&J's necessarily imbued or implicated standard) for attorney ethics and disqualification matters. J&J repeatedly played a shell game with privilege—attacking Beasley Allen for engaging in court-ordered mediation (and necessarily invoking sacrosanct mediation privilege) and at the same time shielding exculpatory documents and evidence based on dubious claims of attorney-client privilege. J&J continues to use gamesmanship, personal attacks, and the threat of a third bad faith bankruptcy to avoid the inevitable–J&J should either agree to a fair and equitable settlement through arm's length negotiations as contemplated by Judge Kaplan in LTL 2 or proceed to trial. That is the way the civil justice system works. Plaintiffs remain ready and willing to discuss a fair and reasonable resolution. As there is no basis for J&J's motion, it should be denied, and the matter should proceed to trial with Beasley Allen acting as the champion of the clients who chose it.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*Attorneys for Andy Birchfield and Beasley Allen*

*/s/ Jeffrey M. Pollock*
  Jeffrey M. Pollock
  Michael W. Sabo

Dated: May 24, 2024

17