# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS<br><br>MDL Case No. 2738 |

## DEFENDANTS JOHNSON & JOHNSON'S AND
## LLT MANAGEMENT LLC'S POST-HEARING REPLY BRIEF

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

    A.    Beasley Allen Is Responsible For Conlan's Violations Of Rule 1.6. ...........................................................................................................2

        1.    No authority required J&J to prove the specific confidences that Beasley Allen learned from Conlan.................3

        2.    The presumption of shared confidences applies. ........................6

    B.    Beasley Allen Is Responsible For Conlan's Violation Of 1.9(a).........12

        1.    Beasley Allen's association with Conlan violates Rule 5.3.................................................................................................12

        2.    Conlan's conduct would have been a violation of Rule 1.9(a) if engaged in by a lawyer.................................................14

    C.    Beasley Allen Independently Violated The Rules. ............................19

    D.    Beasley Allen's Conduct Was Actually Improper.............................20

    E.    Beasley Allen Should Be Removed From The PSC..........................22

CONCLUSION ...................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahn v. Kim*,
145 N.J. 423 (1996)..................................................................................................7

*City of Atlantic City v. Trupos*,
201 N.J. 447 (2010) ........................................................................................ 18, 19

*Cordy v. Sherwin-Williams Co.*,
156 F.R.D. 575 (D.N.J. 1994)............................................................... *passim*

*De la Cruz v. Virgin Islands Water & Power Auth.*,
597 F. App'x 83 (3d Cir. 2014) ...........................................................................9

*Dewey v. R.J. Reynolds Tobacco Co.*,
109 N.J. 201 (1988)...........................................................................................8, 9

*Gnaciski v. United Health Care Ins. Co.*,
623 F. Supp. 3d 959 (E.D. Wisc. 2022)............................................................10

*Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings,*
*LLC*, 2018 WL 2065060 (E.D. Pa. May 2, 2018)..................................................9

*Grant v. Thirteenth Court of Appeals*,
888 S.W.2d 466 (Tex. 1994)..................................................................................9

*Greig v. Macy's Ne., Inc.*,
1 F. Supp. 2d 397 (D.N.J 1998) .......................................................................7, 9

*Gulick v. Loder*,
13 N.J.L. 68 (1832) ...............................................................................................10

*Harper v. Everson*,
2016 WL 9149652 (W.D. Ky. May 5, 2016)....................................................9, 10

*Heritage Pharms., Inc. v. Glazer*,
2019 WL 9309180 (D.N.J. Mar. 1, 2019).............................................................4

*In re Complex Asbestos Litig.*,
232 Cal. App. 3d 572 (1991)..................................................................................9

*In re Sup. Ct. Advisory Comm. on Pro. Ethics Opn. No. 697*,
188 N.J. 549 (2006)................................................................................................9

*Murphy v. Simmons*,
2008 WL 65174 (D.N.J. Jan. 3, 2008) ...................................................... 10, 20

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Nat'l Med. Enters. v. Godbey*,
  924 S.W.2d 123 (Tex. 1996) ..................................................................8

*O'Builders & Assocs. v. Yuna Corp. of N.J.*,
  206 N.J. 109 (2011) .............................................................. 4, 5, 16

*Reardon v. Marlayne, Inc.*,
  83 N.J. 460 (1980) ..........................................................................8, 18

*Ryan's Express v. Amador Stage Lines*,
  279 P.3d 166 (Nev. 2012) ...................................................................9

*Shadow Traffic Network v. Superior Court*,
  24 Cal. App. 4th 1067 (1994) ........................................................8, 21

*Shaikh v. Germandig*,
  2022 WL 16716116 (D.N.J. Nov. 4, 2022) ......................................22

*State ex rel. Wal-Mart Stores, Inc. v. Kortum*,
  559 N.W.2d 496 (Neb. 1997) ...........................................................10

*Twenty-First Cent. Rail Corp. v. N.J. Transit Corp.*,
  210 N.J. 264 (2012) ...........................................................................15

*United States v. Voigt*,
  89 F.3d 1050 (3d Cir. 1996) ..............................................................22

**Rules**

N.J.R.E. 301 .............................................................................................9

RPC 1.6(a) ..............................................................................................12

RPC 1.9(a) ...................................................................................... 14, 16

RPC 3.3(a)(5) .........................................................................................19

RPC 5.3 ..................................................................................... 12, 13, 14

RPC 8.4(c) ..............................................................................................19

RPC 8.4(d) ..............................................................................................20

**Other Authorities**

2 McCormick on Evidence § 343 (8th ed. 2022) .....................................7

N.J. Ethics Op. No. 680,
  1995 WL 33971 (1995) ......................................................................21

iii

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

Restatement (Third) of the Law Governing Lawyers § 123, reporter's note to
   cmt. c ................................................................................................................8

# INTRODUCTION

The facts requiring disqualification of Beasley Allen are undisputed. James Conlan was J&J's lawyer on the talc litigation. In that role, he was exposed to J&J's most sensitive confidences: among them, how it valued plaintiffs' claims in the aggregate and individually, how it estimated and valued future claims, and its resolution strategies. Although Beasley Allen knew that Conlan was J&J's former lawyer, it collaborated with him on mediation strategies and a settlement proposal, all adverse to J&J, in the same litigation. They worked together in secret, and Beasley Allen then attempted to conceal its extensive relationship with Conlan from J&J and from this Court.

That course of unscrupulous conduct violated multiple ethical rules. Beasley Allen assisted and induced Conlan to disclose J&J's confidences during their collaboration, in violation of Rule 1.6. By collaborating with Conlan in a mediation adverse to J&J, Beasley Allen sanctioned conduct that "would be a violation of" Rule 1.9(a) "if engaged in by a lawyer," in violation of Rule 5.3(c). And by covering up the collaboration, Beasley Allen violated Rules 3.3(a)(5) and 8.4(c)-(d).

Boxed in by the factual record and plain text of New Jersey's rules, Beasley Allen has very little cogent to say. It all but ignores the evidentiary hearing that revealed the full details of its misconduct. And it makes a hash of the law. Beasley Allen argues that it cannot be disqualified unless J&J proves what confidences

1

Conlan shared with the firm (a mischaracterization of Rule 1.6) *and* that those shared confidences were harmful to J&J (a mischaracterization of Rule 1.9(a)). *See* Beasley Allen Brief ("BA Br.") 22. But J&J is not required to prove a violation of Rule 1.9 to prevail under Rule 1.6—or vice versa. Rule 1.6 requires proof that confidences were shared, not what those specific confidences were. And Rule 1.9(a) does not require proof of shared confidences at all.

What remains of Beasley Allen's argument is a mischaracterization of J&J's position. It accuses J&J of invoking the now-defunct appearance of impropriety standard. But that is not J&J's argument. Beasley Allen's conduct was actually improper and violated multiple ethics rules. Those violations require disqualification and removal from the PSC.

## ARGUMENT

### A.    Beasley Allen Is Responsible For Conlan's Violations Of Rule 1.6.

Beasley Allen does not dispute that if Conlan shared J&J's confidences during their secret collaboration, it would be responsible for Conlan's violation of Rule 1.6. *See* J&J Br. 51-53. Beasley Allen also does not dispute the facts supporting a finding that J&J's confidences were shared. Everyone agrees that Conlan had privileged and confidential discussions as J&J's lawyer on the talc litigation. *See id.* at 13. And everyone agrees that Conlan and Beasley Allen "collaborated on a settlement proposal to J&J" in the talc litigation, Dkt. 29999 at 1 n.2; *see also* J&J Br. 48.

2

Collaboration with an adversary's former lawyer on a settlement proposal to resolve the *same claims* in the *same matter* triggers New Jersey's presumption of shared confidences. *See* J&J Br. 36-37. Powerful circumstantial evidence—coupled with the utter implausibility (indeed, falsity) of Conlan's and Birchfield's excuses—also supports a finding that confidences were shared. *Id.* at 34-36, 38-39. If this Court has any doubts, it must resolve them in J&J's favor. *Id.* at 33.

Beasley Allen responds with two arguments. First, it says that *Yuna* required J&J to identify the "specific confidential information that James Conlan shared with Beasley Allen." BA Br. 20. Second, it says the presumption of shared confidences was abrogated by New Jersey's rejection of the appearance of impropriety standard. *Id.* at 14-15. Both arguments are wrong.

     1.    *No authority required J&J to prove the specific confidences that Beasley Allen learned from Conlan.*

Beasley Allen's primary argument, repeated *ad nauseum*, is that J&J was required to prove through direct evidence—like a witness stand confession—the "specific confidential information James Conlan shared with Beasley Allen." *Id.* at 9. But Beasley Allen does not cite a single case interpreting Rule 1.6 that imposes this invented legal requirement. Nor, to J&J's knowledge, does any such case exist, for it would squarely conflict with the settled "principle that facts in an ethics-related case may be determined through reasonable inferences, as well as by means of

3

circumstantial evidence." *Heritage Pharms., Inc. v. Glazer*, 2019 WL 9309180, at *2 (D.N.J. Mar. 1, 2019) (quotations omitted); *see also* J&J Br. 36.

Beasley Allen purports to derive this rule from *O Builders & Associates, Inc. v. Yuna Corp. of New Jersey*, 206 N.J. 109 (2011), but *Yuna* has nothing to say about the Rule 1.6 violation in this case. J&J already explained this point at length in its brief, *see* J&J Br. 39-42, so we will only summarize it here. *Yuna* is about "those instances" in which the law requires a client to prove the confidences *it* shared with *its own lawyer*. 206 N.J. at 128-29. Beasley Allen does not dispute that J&J shared *volumes* of confidential information with Conlan. Nor could it. Beasley Allen's counsel attempted to stipulate that fact repeatedly and that evidence is in the record, including through admissions by Conlan himself. *See* J&J Br. 41-42.

Assuming *Yuna* had anything to say about Rule 1.6, it would go no further. *Yuna* does not require a party seeking disqualification to prove confidence sharing between its former lawyer and adversary. For good reason. The two rules discussed in *Yuna*, 1.9(a) and 1.18, do not require proof of confidence sharing with the other side. *See* 206 N.J. at 120. And Rule 1.6's text imposes no such requirement either, so there is no basis to import Beasley Allen's erroneous reading of *Yuna* into Rule 1.6. Beasley Allen's argument would also introduce problems of proof. *Yuna* holds that clients are sometimes required to prove what they said to their lawyer. That should be easy. But Beasley Allen seeks to extend *Yuna* to require a party seeking

disqualification (under an unrelated ethical rule) to prove what third parties said to each other—something not required by *Yuna*—in a situation where the firm used the mediation privilege to keep its communications with Conlan out of J&J's view.

Unable to rely on *Yuna*, Beasley Allen's defense falls apart. It asserts that "[*a*] reasonable inference" is that Conlan did not share J&J's confidences. BA Br. 20 (emphasis added). But Beasley Allen cites nothing that credibly supports such an inference and fails to grapple with the inference compelled by the record here— which is the exact opposite. Conlan had both a motive and opportunity to share J&J's confidences. He stood to make millions of dollars from his collaboration only if J&J accepted the "Legacy/Birchfield proposal," so he had every reason to share J&J's thinking with Beasley Allen to make the offer more attractive to J&J. *See* J&J Br. 49. And he obviously had an opportunity: he "and Birchfield collaborated on a settlement proposal to J&J" in secret. Dkt. 29999 at 1 n.2.

What happened next is plain from Birchfield's and Conlan's testimony. Beasley Allen shared its work product concerning case values and damages analysis with Conlan. And they passed drafts of a term sheet back and forth over the course of multiple weeks, which grew in length with edits. J&J Br. 23-25. It "defies common sense and human nature" to suggest that they did not discuss whether the proposal would be acceptable to J&J, when both stood to make significant sums only if J&J agreed to it, or that Conlan was able to segregate everything he learned from

J&J in a lockbox in his brain. *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994); *see* J&J Br. 34-35. The Court should find, based on the weight of the evidence, that Conlan shared J&J's confidences with Beasley Allen.[1]

## 2. *The presumption of shared confidences applies.*

The Court should separately presume that confidences were shared. *See* J&J Br. 36-37. The facts here are far more egregious than cases in which the presumption has been applied. In *Cordy*, for instance, the District of New Jersey applied the presumption when an expert switched sides even though the expert billed for only "28 hours of work." 156 F.R.D. at 581, 584. And in *Greig*, the District of New

---

[1] Beasley Allen's argument that J&J did not have a confidential interest in Conlan's $19 billion proposal, the attached matrix from plaintiffs' counsel, and the concept of structural optimization, BA Br. 16-19, is both wrong and irrelevant. Although Conlan initially insisted that the proposal was based on the market response to the Third Circuit's January 30, 2023 opinion in LTL-1, he later conceded that it needed to be consistent with and account for estimates of current and future claim values, 4/10 (PM) Tr. 49:15-50:5, information he learned while working for J&J. If J&J's talc liabilities exceeded $19 billion, it would make no financial sense for Legacy to acquire them at that number. And Birchfield similarly conceded that any settlement matrix would need to be consistent with the overall valuation of current or future claims to successfully resolve these cases—if the numbers in a settlement matrix, multiplied by the number of claims, exceed what a settling defendant is willing to pay in the aggregate, the matrix is useless. 5/3 (PM) Tr. 41:17-42:13. Putting these admissions together, it is clear that Conlan thought the $19 billion proposal reflected information he learned from J&J and from Beasley Allen, otherwise the proposal would not be financially viable for Legacy. In any case, New Jersey's rules do not require J&J to pinpoint specific confidences, and the inescapable conclusion from the evidence here is that in crafting the "Legacy/Birchfield proposal," Conlan shared J&J's case valuations and settlement strategies. Conlan was exposed to that information, *see* J&J Br. 14-15, and had every reason to share it, for his and Beasley Allen's success required them to offer a figure that J&J would be willing to accept.

Jersey applied the presumption where the same law firm represented a client's former lawyer in a malpractice action and his adversary in the underlying case. *Greig v. Macy's Ne., Inc.*, 1 F. Supp. 2d 397, 401-03 & n.4 (D.N.J 1998).  Here, Conlan billed J&J for 1,600 hours of work on its biggest liability and then switched sides and collaborated with J&J's adversary for months in secret.  That collaboration included a joint settlement proposal in a mediation adverse to J&J and, when that failed, an orchestrated public campaign to thwart J&J's preferred resolution through bankruptcy.  J&J Br. 26-27, 32.

Beasley Allen does not dispute that Conlan's conduct would trigger the presumption—clearly, it would.  Instead, the firm contends that the presumption was abrogated by New Jersey's rejection of the appearance of impropriety standard.  BA Br. 14-15.  But the presumption is not based on the appearance of impropriety, and New Jersey rejected that doctrine for unrelated reasons.

Presumptions are a standard tool in the law that "require[] the fact-finder, once it finds the existence of one fact, to presume the existence of another."  *Ahn v. Kim*, 145 N.J. 423, 438-39 (1996).  They often exist for a "combination of reasons"—e.g., because of "difficulties inherent in proving that the more probable event in fact occurred" and/or because experience has showed "that proof of fact B renders the inference of the existence of fact A ... probable."  2 McCormick on Evidence § 343 (8th ed. 2022).  The presumption of shared confidences exists for both these reasons.

7

It exists in part due to the "inherent difficulty in determining, at some later time, whether" confidences were shared between third parties, and thus places a significant burden on the party opposing disqualification to offer more than self-serving denials. *Cordy*, 156 F.R.D. at 584; *see also, e.g.*, *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1085 (1994) ("presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff" (quotations omitted)); *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 131-32 (Tex. 1996).

The presumption also exists because experience has shown that when parties enter into a privileged or confidential relationship, they share confidences. For example, the law presumes "that confidential information has passed between attorney and former client" when a lawyer switches sides in a substantially related matter. *Reardon v. Marlayne, Inc.*, 83 N.J. 460, 473 (1980).[2]  Similarly, Rule 1.10 imputes disqualification to a lawyer's firm based on the presumption that confidences known by "one lawyer in a firm are shared among all firm lawyers." Restatement (Third) of the Law Governing Lawyers § 123, reporter's note to cmt. c;

---

[2] *Reardon*'s three-part test "for determining whether an attorney should be disqualified based on his or her successive representation of adverse interests" was superseded by Rule 1.9, *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 212 (1988), but the rest of that decision, including its discussion of the "well settled" presumption of shared confidences, Restatement (Third) of the Law Governing Lawyers, *supra*, § 123, reporter's note to cmt. c, remains valid.

*see Harper v. Everson*, 2016 WL 9149652, at \*4 (W.D. Ky. May 5, 2016); *Ryan's Express v. Amador Stage Lines*, 279 P.3d 166, 170 n.2 (Nev. 2012); *cf. Dewey*, 109 N.J. at 217. And the law presumes shared confidences where (as here) a person in possession of client confidences realigns on the other side of the litigation—the inference when someone switches sides is that they will share confidences with the other side. *See Cordy*, 156 F.R.D. at 583-84; *Greig*, 1 F. Supp. 2d at 401-03 & n.4; *see Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467 (Tex. 1994) ("rebuttable presumption that a nonlawyer who switches sides in ongoing litigation … will share the information with members of the new firm").[3]

Because the presumption of shared confidences does not depend on the appearance of impropriety, New Jersey's rejection of that doctrine casts no doubt on the presumption. Indeed, New Jersey rejected the appearance of impropriety for unrelated reasons. In 2004, the Court eliminated that standard because it was "too vague to support discipline." *In re Sup. Ct. Advisory Comm. on Pro. Ethics Opn. No. 697*, 188 N.J. 549, 562 (2006) (quotations omitted); *see* BA Br. 9 ("highly subjective"). But there is nothing vague or subjective about presumptions. They are a mainstay in New Jersey law, *see* N.J.R.E. 301, and have been for centuries, *e.g.*,

---

[3] *See also In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 593 (1991) (similar); *accord De la Cruz v. Virgin Islands Water & Power Auth.*, 597 F. App'x 83, 89 (3d Cir. 2014); *Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, 2018 WL 2065060, at \*12 & n.9 (E.D. Pa. May 2, 2018) (collecting cases).

*Gulick v. Loder*, 13 N.J.L. 68, 72 (1832).  The presumption of shared confidences is no exception.  It can be and has been administered objectively, in New Jersey after the appearance of impropriety standard was rejected, *see Murphy v. Simmons*, 2008 WL 65174, at *14, 18-19 (D.N.J. Jan. 3, 2008) (noting the appearance of impropriety has "been eliminated" and applying the presumption of shared confidences), and in other states that do not have an appearance of impropriety standard.[4]  Beasley Allen's argument that the two are inextricably linked is just wrong.[5]

Beasley Allen has not come close to rebutting the presumption.  Beasley Allen's self-serving denials that it received confidences from Conlan, *see* BA Br. 6, 15, "are not helpful" given the firm's massive financial incentives to remain in this litigation, *Cordy*, 156 F.R.D. at 584.  And those denials proved seriously uncredible at the plenary hearing.  After failing to disclose in his sworn certifications his collaboration on a settlement proposal with Conlan, Birchfield maintained that Conlan's and Legacy's contribution to the draft term sheet was to fix typos and

---

[4] *See, e.g.*, *Gnaciski v. United Health Care Ins. Co.*, 623 F. Supp. 3d 959, 967, 971-72 (E.D. Wisc. 2022); *Harper*, 2016 WL 9149652, at *4, 8-9;  *State ex rel. Wal-Mart Stores, Inc. v. Kortum*, 559 N.W.2d 496, 501-02 (Neb. 1997).

[5] Contrary to Beasley Allen's suggestion, BA Br. 14 n.7, *Cordy* did not invoke the presumption of shared confidences *because* of the appearance of impropriety.  And while it later disqualified counsel on that basis, that is not the basis for J&J's motion here because Beasley Allen's conduct was actually improper in violation of multiple ethical rules.  *See infra* Part D.

grammatical errors.  *See* J&J Br. 24-25.  That story is as far-fetched as they come, which likely explains why it was not corroborated by Conlan.  *Id*.[6]

Conlan's denials were even less persuasive.  Beasley Allen repeats the ridiculous refrain that Conlan, a self-described expert on restructuring mass-tort liabilities and CEO of a highly sophisticated business, lacked "all knowledge about mass tort trial strategy, matrices, claim valuations etc."  BA Br. 4.  Not only is that uncredible, it was refuted by Conlan's *own* billing records and correspondence, to say nothing of the testimony of Haas and Murdica, first-hand witnesses to Conlan's work on "matrices, claims valuations, etc."  *See* J&J Br. 15-18.

Beasley Allen also defends Conlan's claim that he "walled off everything," in his brain, 4/10 (PM) Tr. 70:12-19, asserting that Murdica was able to do so, *see* BA Br. 10.  But that mischaracterizes Murdica's testimony, which does not show that human beings are capable of perfect compartmentalization.[7]  In fact, Murdica said

---

[6] Besides, Birchfield's denial is unpersuasive given his acknowledgement in response to the Court's questioning that he would not necessarily know if he received confidences from Conlan.  5/3 Tr. 66:7-67:5 ("[The Court]: You wouldn't know that. A: I wouldn't.").

[7] Beasley Allen cites Murdica's testimony that he would not share confidential information with *opposing* counsel.  3/25 (PM) Tr. 115:1-117:17.  But there is an obvious difference between negotiating with opposing counsel and collaborating with counsel on the same side.  *Id.*  Attorneys are expected to maintain client confidences when negotiating with opposing counsel unless, for example, they are "impliedly authorized" to disclose confidences to "carry out the representation."  RPC 1.6(a).  Screening rules exist because the same is not true when attorneys associate on the same side.  *Supra* at 12.

the exact opposite: "that it would be impossible to jump and talk to the other side and separate in my brain everything that I've learned by representing J&J." 3/25 (PM) Tr. 81:8-13. Indeed, if Beasley Allen were right about compartmentalization, there would be no need for screening between attorneys—self-screening would do— and the presumption of shared confidences would be rebutted in every case. The presumption applies here, and it has not come close to being rebutted.[8]

**B.   Beasley Allen Is Responsible For Conlan's Violation Of 1.9(a).**

The Court should also disqualify Beasley Allen because it violated Rule 5.3 by sanctioning Conlan's participation on plaintiffs' LTL-2 mediation team.

1.   *Beasley Allen's association with Conlan violates Rule 5.3.*

Beasley Allen admits that Conlan worked with the firm on the talc litigation. *See* J&J Br. 52. Beasley Allen admits that it approved of Conlan's work. J&J Br. 20, 50-51. And Beasley Allen admits that it could not have hired Conlan to work on the talc litigation. 1/17 MCL Hr'g Tr. 47:14-22; 5/3 Tr. 64:1-18; *see also* 4/10 (AM) Tr. 100:19-101:1. That amounts to an admission that Beasley Allen violated Rule 5.3. It "associated" itself with Conlan, RPC 5.3, working hand-in-hand on mediation

---

[8] Beasley Allen also cites Conlan's November 5 email denying that he did not possess any "confidential insights or knowledge that are relevant to Legacy." BA Br. 7. That is neither true nor relevant. It does not matter here whether the information Conlan learned was relevant to Legacy's proposal. The information— claim values, settlement tactics, etc.—was highly relevant to *Beasley Allen*, and the law presumes he shared those confidences with the firm.

strategies and a settlement proposal they both wanted.  J&J Br. 47-50.  Conlan's participation on plaintiffs' mediation team would have violated Rule 1.9(a) if he had been a practicing lawyer.  RPC 5.3(c); *see* J&J Br. 50-51.  And Beasley Allen "ratifie[d]," RPC 5.3(c)(1), Conlan's participation on the plaintiffs' side of the mediation.

Although Beasley Allen recognizes that its conduct implicated Rule 5.3, *see* BA Br. 13, it never squarely addresses the Rule's requirements.  Instead, it claims to have found a gaping loophole.  In its view, it cannot be disqualified for collaborating with J&J's former lawyer on a settlement proposal in a mediation adverse to J&J because Conlan was never technically employed by the firm and had stopped practicing law.  The firm's position is antithetical to New Jersey's ethical rules, and contradicts its own admission that it could not "bypass[] the rules" by doing "through the back door what [it] can't do through the front."  2/7 MDL Hr'g Tr. 41:8-18.

Unsurprisingly, the Beasley Allen loophole does not exist.  Contrary to the firm's argument that it cannot be disqualified because Conlan was not "an attorney or employee at Beasley Allen," BA Br. 14, an employment relationship is not required to trigger Rule 5.3.  The Rule applies to nonlawyers "employed or retained by or *associated with* a firm," RPC 5.3 (emphasis added), and Conlan's and Beasley Allen's collaboration on a settlement proposal is the definition of an "association," *see* J&J Br. 47-50.  Nor does it matter that Conlan was not acting "as a lawyer" when

13

working on the opposite side from J&J.  BA Br. 13-14.  By its terms, Rule 5.3 applies

to "nonlawyers" who (unless they are engaged in the unauthorized practice of law)

will never be acting as a lawyer.  What matters is whether the nonlawyer's conduct

"would be a violation of the Rules of Professional Conduct if engaged in by a

lawyer," RPC 5.3(c), and Beasley Allen correctly conceded Conlan's participation

on plaintiffs' mediation team would violate the rules when it admitted it could not

have hired Conlan to work on the talc litigation.  *Supra* at 12.[9]

> 2.  *Conlan's conduct would have been a violation of Rule 1.9(a) if*
> *engaged in by a lawyer.*

Despite admitting that it could not hire Conlan because of Rule 1.9(a), *see*

1/17 MCL Hr'g Tr. 47:14-22, Beasley Allen asserts that Conlan's participation on

the plaintiffs' side in the LTL-2 mediation could not have violated that rule because

the matters Conlan worked on—namely, the talc litigation—are not substantially

related.  *See* BA Br. 22-28.  But there is no reason to ask whether the talc litigation

is substantially related to the talc litigation because it is *the same matter*.  RPC 1.9(a).

a. The talc litigation is the "same matter" as the talc litigation.  When Conlan

worked for J&J, he worked on the talc litigation—his entire job was to help J&J

resolve the claims asserted in these MDL and MCL proceedings.  When Conlan

---

[9] The Court need not conduct a similar analysis under Rule 1.10 because Beasley Allen's conduct is squarely prohibited by Rule 5.3.  If the Court does reach Rule 1.10, it should find a violation for similar reasons.  *See* J&J Br. 52-53.

collaborated with Beasley Allen, he worked on the talc litigation—his entire focus was on achieving a negotiated resolution to the claims asserted in this MDL and MCL.  No wonder Beasley Allen does not address Rule 1.9(a)'s same matter inquiry: it is definitionally true that Conlan worked on both sides of the same matter.

Previously, Beasley Allen suggested that Conlan did not work on both sides of the same matter because he focused on bankruptcy issues, whereas there is no bankruptcy case currently pending (even though the LTL-2 dismissal is on appeal).  Beasley Allen does not repeat that argument in its brief, and it is a non-starter for the reasons already set out: Conlan represented J&J inside and outside bankruptcy; he worked with plaintiffs inside and outside of bankruptcy; and the bankruptcies were in any event merely "subcomponent[] part[s]" of the same overall matter attempting to resolve the same claims, 4/10 (AM) Tr. 135:12-24.  *See* J&J Br. 44.  No matter how you slice it, Conlan worked on both sides of the same matter.

That renders several of Beasley Allen's arguments irrelevant.  "[B]ecause disqualification, if the matter is indeed the same, does not turn on the identification of any particular confidence having been revealed," *Twenty-First Cent. Rail Corp. v. N.J. Transit Corp.*, 210 N.J. 264, 278 (2012), it is irrelevant whether Conlan possessed confidential information that could be harmful to J&J (he did), and doubly irrelevant whether he "shared … harmful privileged information with Beasley Allen," BA Br. 22 (he did).  It is also irrelevant whether Conlan "put J&J on notice

that Legacy would negotiate settlements with plaintiff law firms." BA Br. 6. J&J's *non-response* to his emailed proposal is not "informed consent confirmed *in writing*" sufficient to waive the conflict. RPC 1.9(a) (emphasis added). Beasley Allen's willingness to adopt another of Conlan's profoundly unserious arguments is telling.

b. <u>The talc litigation is "substantially related" to the talc litigation</u>. Beasley Allen begins by misstating the "substantially related" inquiry. Instead of asking whether Conlan *possessed* confidential information that could be harmful to J&J, Beasley Allen claims there is no evidence that "Conlan *shared* any relevant or significantly harmful privileged information" with the firm. BA Br. 22 (emphasis added). But sharing information with opposing counsel is not part of the inquiry under Rule 1.9(a). The Rule prohibits side-switching, full stop.

Beasley Allen again relies on *Yuna*. To repeat: *Yuna* is about the circumstances when a client must prove that *it* shared confidences with *its* former lawyer (here, from J&J to Conlan). *Yuna* does not require the client to prove that its former lawyer then shared confidences with the other side (here, from Conlan to Beasley Allen). Just compare Beasley Allen's paraphrase of *Yuna*, *see* BA Br. 22, with the language used by the Supreme Court: Under *Yuna*, the inquiry focuses on "the information the [former] lawyer *received*" from the client, 206 N.J. at 113-14 (emphasis added), not information shared by the former lawyer with the other side.

16

Beasley Allen separately claims the talc litigation is not substantially related to the talc litigation because a lot has "changed in the two years since James Conlan left Faegre."  BA Br. 26.  But that's not even the right timeframe.  Conlan violated Rule 1.9(a) in Spring 2023, when he and Beasley Allen collaborated on the LTL-2 bankruptcy mediation.  *See* J&J Br. 20.  And not even Beasley Allen argues that the talc litigation changed between Spring 2023 (when LTL-2 was pending) and when Conlan left J&J in 2022 (when LTL-1 was pending).  *See id.* at 19.

Nor is the talc litigation significantly different today.  *See id.* at 30-32. Beasley Allen asserts that "the total number of claims and various factors affecting reasonable settlement values" have changed, BA Br. 26, but J&J has always accounted for the number and value of future claims, and Conlan was exposed to that information—in fact, he negotiated directly with future claimants' counsel in an effort to settle J&J's talc liabilities through the Imerys bankruptcy.  *See* J&J Br. 11-12, 14.   He was also exposed to J&J's per-claim valuations and strategic considerations that have nothing to do with "settlement values," including J&J's negotiating strategy.  *Id.*  The information Conlan obtained "is as important now as it was then."  3/25 (PM) Tr. 58:23-59:4; *see* J&J Br. 31-32.

Beasley Allen also argues that it knows (and knew during mediation) as much about J&J's legal and settlement strategy, BA Br. 25-26, as a lawyer who billed J&J for 1,600 hours of work and spoke regularly with the highest echelons of J&J's Law

17

Department.  That is absurd.  *See Reardon*, 83 N.J. at 476.  If Beasley Allen's argument were adopted, it would mean that lawyers could freely switch sides toward the end of related cases—on Beasley Allen's logic, each side would know the other's position so confidential information would no longer be materially harmful.

Beasley Allen relies on *City of Atlantic City v. Trupos*, 201 N.J. 447, 469 (2010), but that case is worlds apart.  There, a law firm represented Atlantic City in tax appeals in 2006 and 2007 and later represented taxpayers in unrelated tax appeals in 2009.  The City's "sole complaint" stemmed from the fact that the firm "participated, on a non-voting basis, in the selection of the revaluation company that produced the assessments subject to the 2009 tax appeals." *Id.* at 468.  But "the sole point discussed was the selection of the real estate revaluation company; no discussion of valuation methodology or other substantive matters was held," and the appraiser used by the City in 2006 and 2007 was different than the one "whose appraisals were being challenged by the law firm in … 2009." *Id.*  The matters were not substantially related because the firm was not privy to information that could have been "used against [the City] in the 2009 tax appeals." *Id.* at 468-69.

That is not true of Conlan, who *was* privy to substantial information that could have been used against J&J in the LTL-2 mediation and still could be today.  Nor does the dismissal of the LTL-2 bankruptcy represent a "clean break" in the talc litigation, as Beasley Allen suggests.  BA Br. 26.  For one thing, Conlan worked on

the LTL-1 bankruptcy for J&J and the LTL-2 bankruptcy with plaintiffs, so it does not matter whether a bankruptcy case is currently pending.  *See* J&J Br. 12, 20.  For another, bankruptcy is simply a subcomponent part of the talc litigation, not new, unrelated litigations, as in *Trupos*.  *Id.* at 44.  Most important, the absence of a pending bankruptcy case does not detract from the fact that Conlan received confidential information from J&J that could have been used against it in LTL-2 mediation and today.  *See Trupos*, 210 N.J. at 470.

### C.   Beasley Allen Independently Violated The Rules.

Beasley Allen should also be disqualified for its own rules violations.   It attempted to cover up its collaboration with Conlan to avoid disqualification.  RPCs 3.3(a)(5) & 8.4(c).   Birchfield's initial certification omitted any mention of his extensive relationship with Conlan and his second mentioned only his first contacts.  "[T]here were," in Birchfield's own words, "a lot of things that [he] did not mention in [his] certification," 4/10 (PM) Tr. 102:21-22, including facts directly relevant to disqualification like his extensive relationship with Conlan and their collaboration on a proposal in mediation adverse to J&J.  *See* J&J Br. 54-58.  The firm's conduct has also been prejudicial to the administration of justice.  RPC 8.4(d).  This includes not only Beasley Allen's attempt to impede this Court's truth-seeking function, but also its embrace of J&J's former lawyer on plaintiffs' mediation team, notwithstanding the firm's acknowledgement that a formal relationship with Conlan

would have been improper, *supra* at 12, and that New Jersey's ethics rules do not exalt form over substance, J&J Br. 57-58.

### D.   Beasley Allen's Conduct Was Actually Improper.

J&J's arguments for disqualification are *not* based on the appearance of impropriety.  In fact, one of Beasley Allen's main criticisms of J&J's argument at the January 17, 2024 MCL hearing was that J&J's counsel "did not even mention the words, [a]ppearance of impropriety."  1/17 MCL Tr. 24:7-8.  Yet Beasley Allen persists in mischaracterizing J&J's arguments as invoking the appearance of impropriety standard for disqualification.  *See* BA Br. 8-13.

This time, Beasley Allen asserts that facts showing that Conlan's communications during his "alliance" with Beasley Allen were "necessarily imbued" with J&J's confidential information represent a rebranding of the appearance of impropriety standard  "unmoored from the RPCs."  *Id*. at 8.  Not so. The fact that Conlan's collaboration with Beasley Allen was "necessarily imbued" with J&J's client confidences goes to Rule 1.6.  *See* J&J Br. 34-35.  And it should not be controversial:  Human beings cannot cleanly segregate related information in their minds.  For this reason, Haas explained, it would have been impossible for Conlan to collaborate with Beasley Allen on a settlement proposal to J&J without disclosing J&J's confidences. That point is corroborated by case law and "common sense." *Cordy*, 156 F.R.D. at 584; *see also, e.g.*, *Murphy*, 2008 WL 65174, at *16;

*Shadow Traffic*, 24 Cal. App. 4th at 1086.  That Beasley Allen entered into an "alliance" (or as Judge Schneider put it, a "collaboration") with Conlan is just a factual description of their relationship—a description that supports multiple rules violations.  The collaboration made it possible for Conlan to share confidences in violation of Rule 1.6.  It included Beasley Allen's ratification of Conlan's work on both sides of the talc litigation, in violation of Rules 5.3 and 1.9(a), and was prejudicial to the administration of justice, in violation of Rule 8.4(d).

Beasley Allen's hyperbole about a "sea-change in attorney ethics," BA Br. 9, can thus be rejected out of hand.  The evidence it cites substantiates specific rules violations.  What would constitute a sea change, though, is a rule that side-switching is permissible so long as the person switching sides has left the practice of law or not been formally retained.  Not only would that negate specific ethics rules (like 5.3), but it would repudiate the "established" principle "that an attorney may not do indirectly that which is prohibited directly."  N.J. Ethics Op. No. 680, 1995 WL 33971, at *3 (1995).

That leaves a host of meritless procedural and evidentiary gripes, most of which the Court has already rejected.  *See* BA Br. 15 n.8 (Confrontation and Due Process Clauses), 22 (Best Evidence Rule).  Only one merits a response.  Beasley Allen asserts that "J&J has shifted its … theory" by citing more ethical rules.  *Id*. at 11 n.4.  There is no shift.  J&J's theory has always been the same:  New Jersey ethics

law prohibited Beasley Allen from aligning itself in this litigation with J&J's former lawyer.  J&J's citation of more rules merely reflects the changing record in this case.

When J&J filed its briefs in December 2023, it did not know the full extent of Beasley Allen's engagement with Conlan, which is why it initially asked for a show-cause order requiring the firm to explain its alliance with Conlan.  J&J could not, for example, have argued that Beasley Allen's collaboration on a mediation proposal with Conlan violated Rules 5.3 and 1.9(a) because Beasley Allen was still hiding that fact.  It should come as no surprise that, as the full extent of Beasley Allen's misconduct has come to light, more rules violations have been exposed.[10]

### E.     Beasley Allen Should Be Removed From The PSC.

Beasley Allen does not address J&J's argument that, at a minimum, the firm's multiple ethical lapses warrant removal form the PSC.  Just the opposite.  The firm admits that when it shared privileged and confidential information with Conlan during the LTL-2 mediation, it "understood that James Conlan would be its adversary … if J&J accepted the" Legacy/Birchfield proposal.  BA Br. 5.  That is irrelevant to Beasley Allen's facilitation of Conlan's betrayal of his former client, J&J.  But it is highly relevant to Beasley Allen's betrayal of *its* current clients, the

---

[10] *United States v. Voigt*, 89 F.3d 1050, 1076 n.12 (3d Cir. 1996), held that disqualification need not be "predicated on a finding of a specific RPC violation." Beasley Allen claims (BA Br. 13 n.6) that holding was tied to the appearance of impropriety, but the two are unrelated.  *Voigt* remains good law.  *See Shaikh v. Germandig*, 2022 WL 16716116, at *3 (D.N.J. Nov. 4, 2022).

plaintiffs in the talc litigation. Beasley Allen admits that it knowingly shared confidential information with someone who would be its clients' adversary if everything went to plan. That damning admission warrants removal from the PSC.

More pressingly here, Beasley Allen's secret collaboration with J&J's former lawyer and joint efforts to thwart J&J's preferred resolution of this matter through bankruptcy has poisoned its ability to lead this case. New Jersey does not permit side switching, and Beasley Allen knows that. And its repeated efforts to conceal that collaboration from J&J and this Court amount to no less than a breach of trust.

## CONCLUSION

This Court should disqualify Beasley Allen and remove it from the PSC.

Dated: May 24, 2024                     Respectfully submitted,

*/s/ Stephen D. Brody*
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com

Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.: 973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson and LTL Management, LLC n/k/a LLT Management LLC*