## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (MAS) (RLS)<br><br>Motion Day: July 1, 2024 |

*THIS DOCUMENT RELATES TO ALL CASES*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' STEERING COMMITTEE'S MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING SUBPOENAS DIRECTED AT BEASLEY ALLEN LAW FIRM, SMITH LAW FIRM, AND ELLINGTON MANAGEMENT GROUP**

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

ARGUMENT ......................................................................................................3

    A. The Subpoenas Exceed the Scope of Permissible Discovery.........................5

        1. The discovery sought is irrelevant to the claims and defenses in this MDL .................................................................................................................6

        2. The discovery sought is not proportional to the needs of this MDL........11

    B. The Subpoenas Require Disclosure of Privileged Matters...........................12

        1. The communications requested implicate the attorney-client privilege, community of interest privilege, mediation privilege, and work product doctrine .....................................................................................................13

        2. The litigation financing information requested is protected by the work product doctrine and intrudes upon the attorney-client privilege ............15

    C. The Subpoenas are Unduly Burdensome, Oppressive, and Harassing .........17

CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cooper Health Sys. v. Virtua Health, Inc.*,
259 F.R.D. 208 (D.N.J. 2009) ................................................................. 18

*Costantino v. City of Atl. City*,
2015 WL 12806490 (D.N.J. Nov. 4, 2015) ............................................. 9

*Devon IT, Inc. v. IBM Corp.*,
2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ....................................... 21

*DIRECTV, Inc. v. Richards*,
2005 WL 1514187 (D.N.J. June 27, 2005) ............................................ 21

*Fulton v. Foley*,
2019 WL 6609298, at *1 (N.D. Ill. Dec. 5, 2019) ................................ 16

*Glenmede Tr. Co. v. Thompson*,
56 F.3d 476 (3d Cir. 1995) ..................................................................... 9

*Gov't Emps. Ins. Co. v. Trnovski*,
2018 WL 5281424 (D.N.J. Oct. 23, 2018) ........................................ 7, 10

*Gross-Quatrone v. Mizdol*,
2021 WL 9978409 (D.N.J. Mar. 1, 2021) .............................................. 9

*Hashem v. Hunterdon Cnty.*,
2017 WL 2215122 (D.N.J. May 18, 2017) ........................................... 16

*Hedden v. Kean Univ.*,
434 N.J. Super. 1, 82 A.3d 238 (N.J. Super. Ct. App. Div. 2013) ....... 17

*Hinsinger v. Conifer Ins. Co.*,
2024 WL 866529, at *7 (D.N.J. Feb. 29, 2024) .................................. 17

*Ioengine, LLC v. Interactive Media Corp.*,
1:14-cv-01571-GMS, slip op. at 2 (D. Del. Aug. 3, 2016) .................. 19

*In re Int'l Oil Trading Co., LLC*,
548 B.R. 825, 832, 836 (S.D. Fla. Bankr. 2016) ................................. 20

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*,
2024 WL 1914760 (April 5, 2024) ................................................. 10, 11

*In re Teleglobe Commc'ns Corp.*,

493 F.3d 345 (3d Cir. 2007) .................................................................18

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
405 F. Supp. 3d 612 (D.N.J. 2019) ........................................................ 13, 14, 15

*Kernaham v. Home Warranty Adm'r of Fla., Inc.*,
236 N.J. 301 (2019) .............................................................................19

*Lambeth Magnetic Structures LLC v. Seagate Tech. (US) Holdings Inc.*,
2018 WL 466045 (W.D. Pa. Jan. 18, 2018) .........................................19

*Maldonado v. New Jersey ex. rel. Admin. Off. of Cts. Prob. Div.*,
225 F.R.D. 120 (D.N.J. 2004) ...............................................................18

*McVicker v. King*,
266 F.R.D. 92, 97 (W.D. Pa. 2010) ......................................................13

*Napolitano v. Corbishley*,
2021 WL 3486901 (D.N.J. Aug. 9, 2021) .............................................19

*Northrop Corp. v. McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir. 1984) ..............................................................21

*OMS Invs., Inc. v. Lebanon Seaboard Corp.*,
2008 WL 4952445 (D.N.J. Nov. 18, 2008) ............................................8

*Preservation Techs. LLC v. MindGeek USA, Inc.*,
2020 WL 10965161 (C.D. Cal. Dec. 18, 2020) ...................................20

*Ramos v. Walmart, Inc.*,
2023 WL 2327208 (D.N.J. Mar. 2, 2023) ........................................9, 10

*Rudelli v. Eli Lilly & Co.*,
2020 WL 13694732 (D.N.J. Nov. 13, 2020) ..........................................9

*Schmulovich v. 1161 Rt. 9 LLC*,
2007 WL 2362598 (D.N.J. Aug. 15, 2007) .......................................8, 21

*Securitypoint Holdings, Inc. v. United States*,
2019 WL 1751194 (Fed. Cl. Apr. 16, 2019) ........................................19

*Seven Z Enters., Inc. v. Giant Eagle, Inc.*,
2020 WL 7240365 (W.D. Pa. Mar. 6, 2020) ........................................16

*Staff4Jobs, LLC v. List Logistics, LLC*,
2020 WL 13580942 (D.N.J. Oct. 19, 2020) ...........................................9

*Thomas v. Marina Assocs.*,
202 F.R.D. 433 (E.D. Pa. 2001) ..............................................................8

*Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*,
    2005 WL 1038956 (D.N.J. May 3, 2005)..............................................................17

*U.S. v. Homeward Residential, Inc.*,
    2016 WL 1031154 (E.D. Tex. Mar. 15, 2016) ....................................................20

*V5 Techs. v. Switch, Ltd.*,
    334 F.R.D. 306 (D. Nev. 2019) ...........................................................................14

*VHT, Inc. v. Zillow Grp., Inc.*,
    2016 WL 7077235 (W.D. Wash. Sept. 8, 2016)...................................................13

*Viamedia, Inc. v. Comcast Corp.*,
    2017 WL 2834535 (N.D. Ill. June 30, 2017)........................................................20

*Westinghouse Elec. Corp. v. Republic of Philippines*,
    951 F.2d 1414 (3d Cir. 1991) ..............................................................................18

**Rules**

Fed. R. Civ. P. 26 ................................................................................ *passim*

Fed. R. Civ. P. 45 ............................................................................................4

Pursuant to Federal Rules of Civil Procedure 45(d) and 26(c), Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC"), submit this Memorandum of Law in support of their Motion to Quash, or in the alternative, for Protective Order regarding the subpoenas issued by defendants Johnson & Johnson ("J&J") and LLT Management LLC on non-parties the Beasley Allen Law Firm (ECF No. 32201), the Smith Law Firm (ECF No. 32226), and Ellington Management Group (ECF No. 322215).

## BACKGROUND

On May 20, 2024, defendants Johnson & Johnson and LLT Management LLC issued a subpoena to non-party the Beasley Allen Law Firm ("Beasley Allen") for the production of (1) all documents, communications, or agreements related to the existence and details of third-party litigation funding arrangements, (2) all documents, communications, or agreements "concerning the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein," (3) all communications between Beasley Allen and any non-party related to the proposed plan of reorganization announced by defendants on May 1, 2024, and the solicitation of personal injury Plaintiffs regarding same, and (4) all communications between Beasley Allen and any non-party related to settlement offers made by defendants in connection with the talc litigation. Beasley Allen Subpoena, ECF No. 32201.

Three days later, defendants served a nearly identical subpoena on non-party the Smith Law Firm ("Smith Law"), seeking the production of (1) all documents, communications, or agreements related to the existence and details of third-party litigation funding arrangements, (2) all documents, communications, or agreements "concerning the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein," (3) all communications between Smith Law and any non-party related to the proposed plan of reorganization announced by defendants on May 1, 2024, and the solicitation of personal injury Plaintiffs regarding same, and (4) all communications between Smith Law and any non-party related to settlement offers made by defendants in connection with the talc litigation. Smith Law Subpoena, ECF No. 32226.

Defendants subsequently served another subpoena on non-party Ellington Management Group ("Ellington"), demanding the production of (1) all communications and agreements between Ellington and any law firm related to the litigation, (2) all communications, agreements, and documents reflecting any funding provided to law firms in this litigation, including which law firms received funding, when funding began, and the terms of funding, (3) all communications between Ellington and any law firm concerning any of defendants' proposed resolutions from 2020 through the present, (4) all communications between Ellington and any law firm related to the proposed plan of reorganization announced

by defendants on May 1, 2024, and the solicitation of personal injury Plaintiffs regarding same, (5) all communications between Ellington and Beasley Allen, (6) all documents, communications, and agreements related to any funding Ellington provided to Beasley Allen, (7) all communications between Ellington and Smith Law, and (8) all documents, communications, and agreements related to any funding Ellington provided to Smith Law. See Ellington Subpoena, ECF No. 32215.

As explained below, these subpoenas exceed the permissible scope of discovery by requesting irrelevant information that is disproportionate to the needs of this case and requires the disclosure of privileged matters. The PSC respectfully requests that this Court quash the subpoenas, or in the alternative, enter a protective order enjoining Beasley Allen's, Smith Law's, and Ellington's obligations to comply with the subpoenas, recognizing them for what they are: defendants' latest abusive and improper use of discovery tools to burden, oppress, and harass plaintiffs' counsel.

## **ARGUMENT**

Federal Rule of Civil Procedure 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A non-party subpoena authorized by Federal Rule of Civil Procedure 45 "must fall within the scope of discovery permissible under Rule 26(b)." *Gov't Emps. Ins. Co. v. Trnovski*,

2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018) (citing *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, 2008 WL 4952445 (D.N.J. Nov. 18, 2008)). If a non-party subpoena exceeds the bounds of permissible discovery, the court may issue a protective order, modify the subpoena, or quash the subpoena entirely. *See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); Fed. R. Civ. P. 45(d)(3)(A) (providing four circumstances in which quashing or modifying a subpoena is required); Fed. R. Civ. P. 45(d)(3)(B) (setting forth two instances in which quashing or modifying a subpoena is permitted).

A party has standing to quash a non-party subpoena pursuant to Rule 45 "when it claims a privilege or privacy interest in the information sought." *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (citing *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434–435 (E.D. Pa. 2001)). Courts must quash or modify a subpoena that requires "disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Alternatively, Rule 26 permits the Court, for good cause, to issue a protective order to prevent "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious

injury." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see Costantino v. City of Atl. City*, 2015 WL 12806490, at *3 (D.N.J. Nov. 4, 2015) (good cause requirement satisfied where plaintiff demonstrated that third-party subpoena sought irrelevant documents).

A party "ha[s] standing to move under Rule 26(c) for a protective order limiting, or altogether disallowing, the third-party discovery, on the basis that it seeks information beyond the scope of Rule 26(b)(1)." *Ramos v. Walmart, Inc.*, 2023 WL 2327208, at *3 n.3 (D.N.J. Mar. 2, 2023); *see also* Special Master Order No. 19, Doc. No. 29138 (Feb. 29, 2024) (PSC has standing to seek protective order regarding non-party subpoena on relevancy grounds); *Staff4Jobs, LLC v. List Logistics, LLC,* 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020) ("Even if the moving party has no standing as traditionally considered under Rule 45, it may nonetheless seek to prevent the discovery pursuant to Rule 26."); *Costantino*, 2015 WL 12806490, at *3; *Rudelli v. Eli Lilly & Co.*, 2020 WL 13694732, at *2 (D.N.J. Nov. 13, 2020).

## A. The Subpoenas Exceed the Scope of Permissible Discovery

The Beasley Allen, Smith Law, and Ellington subpoenas far exceed the scope of permissible discovery. *See Gross-Quatrone v. Mizdol*, 2021 WL 9978409, at *2 (D.N.J. Mar. 1, 2021) ("First, the subpoenaing party must demonstrate that the information sought is relevant to any party's claim or defense and proportional to

5

the needs of the case under Rule 26(b)(1)." (citation omitted)); *Trnovski*, 2018 WL 5281424, at *2; *Ramos*, 2023 WL 2327208, at *3 n.3.

### 1. The discovery sought is irrelevant to the claims and defenses in this MDL.

The subpoenas broadly request all communications between Beasley Allen and any non-party, Smith Law and any non-party, and Ellington and any law firm regarding defendants' most recently proposed plan of reorganization and the solicitation of claimants for the same. *See* Beasley Allen Subpoena, ECF No. 32201 at 15; Smith Law Subpoena, ECF No. 32226 at 15; Ellington Subpoena, ECF No. 32215 at 13. Defendants do not and cannot show that this information is relevant to any claim or defense in this MDL. In fact, they concede this information is pertinent to "the success of the plan"—a proposed plan of reorganization to be filed in a future bankruptcy proceeding that defendants have yet to commence—and admittedly seek to investigate their unfounded suspicions that Beasley Allen intends "to disseminate a misinformation campaign" to "bias the vote" and "derail" the plan. Def.'s Letter Br., ECF No. 32200 at 1, 5–6. Defendants do not even attempt to connect Smith Law or Ellington to this conspiracy. Regardless, this information is simply irrelevant to this MDL since it "will not be tried before any jury in these proceedings." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2024 WL 1914760, at *2 (April 5, 2024).

6

The subpoenas further command the production of documents, agreements, and communications concerning Beasley Allen's and Smith Law's settlement authority and communications with any non-party regarding prior settlement offers from defendants, as well as all communications between Ellington and any law firm related to defendants' proposed resolutions from 2020 to the present. *See* Beasley Allen Subpoena, ECF No. 32201 at 15; Smith Law Subpoena, ECF No. 32226 at 15; Ellington Subpoena, ECF No. 32215 at 13. This information is also irrelevant to the claims and defenses in this case, as it "has nothing to do with whether exposure to J&J's baby powder caused plaintiffs' ovarian cancer which is the heart of the case." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2024 WL 1914760 at *2.

Rather than articulating credible theories of relevance, defendants try to justify this impermissible discovery by accusing plaintiffs' counsel of committing ethical violations. *See* Def.'s Letter Br., ECF No. 32200 at 3–5. Defendants base these serious accusations on speculation and a contrived interpretation of statements that were improperly solicited from a represented individual ("DD") by defendants' counsel, Jim Murdica. *See* Def.'s Letter Br., Exs. A, C, D, ECF Nos. 32200-2, 32200-4, 32200-5. Specifically, on May 14, 2024, Beasley Allen client DD sent an email to Beasley Allen, J&J's outside counsel, and LLT's in-house counsel, copying a reporter from Thomson Reuters. *See id*. That email asked for "the exact date

7

[defendants] plan to issue paperwork for the 3rd bankruptcy." *Id*. Despite Beasley Allen attorney Elizabeth Achtemeier removing DD and the reporter from the email chain and instructing Mr. Murdica to "please disregard [DD's] attorney-client communication," Mr. Murdica "added back the original recipients," including DD, accused Beasley Allen of "seeking to enter into a surreptitious relationship to thwart a bankruptcy resolution . . . by publishing misleading and deceptive advertising," and asked DD to "confirm that they are in a privileged attorney-client relationship with Beasley Allen." *Id*. DD responded, in part, that she previously inquired about settlement, and her attorney advised, "Johnson & Johnson is not willing to settle your case at this time" and "to date, J&J has been unwilling to settle." *Id*.

Based on this ambiguous statement, notably lacking any context or indication as to when and under what circumstances the representation was made, defendants ask the Court to infer that Beasley Allen furnished "false and misleading information" to talc claimants concerning the proposed plan, intends to "further flood talc ovarian cancer claimants with an anti-vote campaign," failed to convey prior resolution offers to its clients, and advocates "for positions directly contrary to the interests of talc ovarian cancer claimants." Def.'s Letter Br., ECF No. 32200 at 1. Such inferences are unreasonable and not supported by the email exchange.[1]

---

[1] The only ethical violation reflected by the series of emails was committed by defendants' counsel, not by Beasley Allen. *See* New Jersey Rule of Professional Conduct 4.2 (providing that "a lawyer shall not communicate about the subject of

Defendants' conjecture does not suffice to bring its requests within the realm of permissible discovery. *See McVicker v. King*, 266 F.R.D. 92, 97 (W.D. Pa. 2010) (denying discovery of media communications based upon speculation).

Similarly, third-party litigation financing is not relevant to this MDL. The consensus among courts is that such information is irrelevant and therefore not discoverable. *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("The Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant.") (citing cases). Courts only find discovery appropriate upon a "sufficient showing" that "something untoward occurred" to render litigation financing relevant. *Id*. at 615. This requires "some objective evidence" that the requesting party's "theories of relevance are more than just theories." *VHT, Inc. v. Zillow Grp., Inc.*, Case No. C15-1096JLR, 2016 WL 7077235, at *1, 2 (W.D. Wash. Sept. 8, 2016). "For example, discovery will be ordered where there is a sufficient

---

the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter. . . ."); ABA Model Rule of Professional Conduct 4.2 (also providing that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter. . . ."); ABA Model Rule of Professional Conduct 4.2 cmt. 3 (clarifying that Rule 4.2 "applies even though the represented person initiates or consents to the communication" and that "[a] lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by" Rule 4.2.).

showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or not being protected, or conflicts of interest exist." *In re Valsartan*, 405 F. Supp. 3d at 615. "Mere speculation by the party seeking this discovery will not suffice." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019).

Defendants do not present "objective evidence" of something untoward. Instead, they appear to argue that because Smith Law previously had a financing arrangement with Fortress Investment Group LLC ("Fortress"), allegedly entered an arrangement with Ellington Management Group ("Ellington") thereafter, and such arrangements were never disclosed by Smith Law, then the law firm must be purposefully concealing the arrangements and acting under the control of the financers in making litigation strategy and settlement decisions. Def.'s Letter Br., ECF No. 32200 at 4–5. This manufactured theory of relevance is purely speculative. They present no evidence that Fortress, Ellington, or any other third-party funder is controlling decisions in this MDL. Even more, defendants present no evidence that Smith Law's arrangements with Fortress and Ellington funded cases pending in this MDL at all, and the declaration of David Meisels, the Managing Director and Head of Litigation for Fortress, does not indicate so. *See* Def.'s Letter Br., Ex. A, ECF No. 32213 at 4–5. Notably, Smith Law has never appeared in this MDL.

Nor do defendants explain how the financial arrangement of one of Beasley Allen's several hundred co-counsel relationships has any bearing on Beasley Allen or its representation in this MDL. *See* Beasley Allen Resp. Letter Br., Ex. 3, ECF No. 32251-3 at 11 (Andy Birchfield, when asked about the number of Beasley Allen's co-counsel relationships, responding that "hundreds would be my best, you know, estimate."). That's because they cannot. Andy Birchfield previously testified that Beasley Allen has not used litigation funding for talc cases before this Court, *see* Hr'g Tr. on Def.'s Mot. to Disqualify, ECF No. 32153 at 60–62, and while being deposed during the LTL-2 bankruptcy proceeding, which defendants conveniently left out of the exhibit accompanying their letter to this Court. *See* Beasley Allen Resp. Letter Br., Ex. 3, ECF No. 32251-3 at 11–13 (Andy Birchfield stating: "there was the allegation made that Beasley Allen is so heavily indebted that we could not accept the proposal, and . . . that is categorically false. We have not. We have not obtained litigation financing or funding for our talc claims."). Further, David Meisels' declaration indicates that Fortress has never provided funding to Beasley Allen. *See* Def.'s Letter Br., Ex. A, ECF No. 32213 at 4. Because defendants merely raise "a parade of horribles that could or may arise from litigation funding agreements" and present "no nonspeculative basis for their discovery request," it should be denied. *In re Valsartan*, 405 F. Supp. 3d at 615–16.

**2. The discovery sought is not proportional to the needs of this MDL.**

Even if the requested information was marginally relevant, the requests still exceed the permissible bounds of discovery because they are not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The subpoena vaguely seeks *all* documents, communications, and agreements related to litigation funding and authority to settle claims or otherwise resolve the litigation, as well as *all* communications between the subpoenaed parties, including their directors, officers, employees, and agents, and any non-party regarding defendants' most recent bankruptcy proposal and prior settlement offers. These requests are facially overbroad and flout the requirement that discovery be proportional to the needs of the case. *See Seven Z Enters., Inc. v. Giant Eagle, Inc.*, 2020 WL 7240365, at *3 (W.D. Pa. Mar. 6, 2020) ("The sheer scope of the subpoenas speaks to [the document requests'] disproportionality."). "While the scope of discovery is broad, it is not unlimited . . . and should not serve as a fishing expedition." *Hashem v. Hunterdon Cnty.*, 2017 WL 2215122, at *2 (D.N.J. May 18, 2017).

## B. The Subpoenas Require Disclosure of Privileged Matters

Next, the subpoenas should be quashed because they seek disclosure of privileged documents and communications, which plaintiffs have an interest in protecting. *See Fulton v. Foley*, 2019 WL 6609298, at *1 (N.D. Ill. Dec. 5, 2019) (finding standing to quash based on plaintiff's "legitimate interest in" the disclosure of attorney work product material). The PSC is tasked with representing the interests

12

of all plaintiffs in the MDL, including plaintiffs represented by the Beasley Allen firm. As such, the PSC has standing the protect the rights and interests of all clients within the PSC, including certain subsets of clients such as those represented by Beasley Allen.

> **1. The communications requested implicate the attorney-client privilege, community of interest privilege, mediation privilege, and work product doctrine.**

The requests for all documents, communications, and agreements related to counsel's authority to settle claims or resolve the litigation plainly seek information protected by the attorney-client privilege. *See Hinsinger v. Conifer Ins. Co.*, 2024 WL 866529, at *7 (D.N.J. Feb. 29, 2024) (citation omitted) ("The attorney-client privilege applies to communications by a client, made in confidence, for the purpose of seeking legal advice from an attorney who is acting in his or her capacity as an attorney."); *Hedden v. Kean Univ.*, 434 N.J. Super. 1, 82 A.3d 238, 245 (N.J. Super. Ct. App. Div. 2013) ("[T]here is a presumption that a communication made in the lawyer-client relationship has been made in professional confidence. . . . If the purpose was to solicit legal advice, then the privilege applies."); *Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*, 2005 WL 1038956, at *6 (D.N.J. May 3, 2005) (holding that the attorney-client privilege and the work-product doctrine protected communications between client and attorney concerning settlement offers.).

The requests for all communications with any non-party regarding defendants' bankruptcy proposal and prior settlement offers require disclosure of protected attorney work product. *See* Fed. R. Civ. P. 26(b)(3) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). This protection is not necessarily waived by disclosure to a third party if that party is not an adversary. *See Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 213 (D.N.J. 2009) (citing *Maldonado v. New Jersey ex. rel. Admin. Off. of Cts. Prob. Div.*, 225 F.R.D. 120, 131 (D.N.J. 2004)) ("The essential question with respect to waiver of work product is whether the material has been kept away from adversaries."); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) ("Because the work-product doctrine serves . . . to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine."). Accordingly, a host of protected material falls within these unrestricted requests, including communications with experts, agents, consultants, other plaintiffs' counsel, and mediators, to name a few.

Communications with other plaintiffs' counsel are also shielded by the community of interest privilege, *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345,

364 (3d Cir. 2007) (explaining that the community of interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others."), and communications with mediators are also covered by the mediation privilege. *See Napolitano v. Corbishley*, 2021 WL 3486901, at *2 (D.N.J. Aug. 9, 2021) (citing *Kernaham v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301 (2019) (the mediation privilege covers "any statement, whether verbal or nonverbal . . . made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator.").

> **2. The litigation financing information requested is protected by the work product doctrine and intrudes upon the attorney-client privilege.**

Lastly, litigation financing documents and communications are shielded by the work product doctrine. *See, e.g., Lambeth Magnetic Structures LLC v. Seagate Tech. (US) Holdings Inc.*, 2018 WL 466045, at *6 (W.D. Pa. Jan. 18, 2018) (denying discovery of communications between plaintiff and litigation funders and funding agreements in patent infringement actions as "shielded under work product protection."); *Ioengine, LLC v. Interactive Media Corp.*, 1:14-cv-01571-GMS, slip op. at 2 (D. Del. Aug. 3, 2016) (denying motion to compel production of documents plaintiff disclosed to prospective litigation funders as protected work product); *Securitypoint Holdings, Inc. v. United States*, 2019 WL 1751194, at *5 (Fed. Cl.

Apr. 16, 2019) ("Litigation funding agreements are often considered by the federal courts to be protected by the work product doctrine or as otherwise irrelevant to the issues at hand."); *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *1 (N.D. Ill. June 30, 2017) (district court in patent infringement action denied defendant's request for documents plaintiff disclosed to prospective litigation financing firms as "protected by the work-product doctrine.").

And because such information is neither relevant nor proportional to the needs of the case, defendants cannot demonstrate the "substantial need" required to overcome the work product doctrine. *See, e.g., Preservation Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965161, at *6-7 (C.D. Cal. Dec. 18, 2020) (finding litigation funding documents not discoverable because the work product doctrine "shields those documents from discovery" and the defendant did not show a substantial need to access the documents); *U.S. v. Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) (denying disclosure of funding agreements and plaintiff's communications with funders as "protected by the work product doctrine" and because defendants did not demonstrate a "substantial need" for the information).

Such information is further protected by "the common interest exception and the agency exception" to waiver of the attorney-client privilege. *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 832, 836 (S.D. Fla. Bankr. 2016) (holding that all

communications between the judgment creditor and funder were "protected by both the common interest exception and the agency exception" to waiver of the attorney-client privilege and work product protection, and there was no showing of "substantial need"); *Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012) (quashing third-party subpoena directed at a litigation funder because the documents were "protected from disclosure as work-product," and production "would intrude upon attorney-client privilege under the 'common-interest' doctrine.").

**C. The Subpoenas are Unduly Burdensome, Oppressive, and Harassing**

Finally, the subpoenas are unduly burdensome, oppressive, and harassing. A subpoena is considered unduly burdensome when it "is unreasonable or oppressive." *DIRECTV, Inc. v. Richards*, 2005 WL 1514187, at *1 (D.N.J. June 27, 2005) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984)). Courts consider "the following factors in evaluating the reasonableness of a subpoena: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity." *Schmulovich*, 2007 WL 2362598 at *4.

17

Defendants' requests are overly broad and not described with particularity, and because the discovery sought is neither relevant to this MDL nor proportional to the needs of the case, defendants cannot show a need for the productions or that the productions will advance the litigation. Ultimately, it is unreasonable for plaintiffs' counsel to exert time, effort, and expense in locating, reviewing, and producing irrelevant, privileged documents, to the degree they even exist, instead of prosecuting plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, the Court should quash the subpoenas directed at non-parties Beasley Allen Law Firm, Smith Law Firm, and Ellington Management Group, or in the alternative, issue a protective order enjoining the recipients' obligations to comply with the subpoenas. Not only do the subpoenas risk revealing privileged and protected documents and communications, but also the discovery sought is irrelevant and disproportionate to the needs of this case.

Dated: May 30, 2024                         Respectfully submitted,

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com
***Plaintiffs' Liaison Counsel***

_/s/ Michelle A. Parfitt_
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
***Plaintiffs' Co-Lead Counsel***

_/s/ P. Leigh O'Dell_
P. Leigh O'Dell
BEASLEY, ALLEN, CROW,
METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,


*<u>/s/ Michelle A. Parfitt</u>*
Michelle A. Parfitt