# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Kristen Renee Fournier
Partner
Direct Dial: +1 212 790 5342
Direct Fax: +1 212 556 2222
kfournier@kslaw.com

May 31, 2024

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

Re:   In RE: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation (MDL No. 2738)

Dear Judge Singh:

I am counsel to Defendants Johnson & Johnson ("J&J") and LLT Management LLC ("LLT") (collectively, the "J&J Defendants") and write in response to Beasley Allen's May 22, 2024 Letter (ECF 32251) and in follow up to Ms. Brown's May 17, 2024 Letter (ECF 32200). The J&J Defendants feel compelled to respond to and correct Beasley Allen's baseless accusation that a member of their defense team, Jim Murdica, violated his ethical duties. ***As the record amply reflects, he did no such thing***. Such spurious accusations are nothing more than a thinly-veiled attempt at distraction after Beasley Allen's own ethical lapses were exposed by its client – without prompting or solicitation from the J&J Defendants. Such bald-faced tactics should not be countenanced.

The communications at issue all occurred by email and therefore are fully documented in writing.[1] The emails objectively contradict Beasley Allen's allegations. Beasley Allen's client, who on her *own initiative* reached out to Mr. Murdica on more than one occasion, stated unequivocally that her attorneys told her J&J is unwilling to settle her case. Specifically, she was told by Beasley Allen that:

> "***Johnson & Johnson is not willing to settle your case at this time***, despite the information and records we have. Settlement requires agreement of all of the

---

[1] To be clear, neither the J&J Defendants nor any of their counsel (including Mr. Murdica) had any verbal communications with Beasley Allen's client.

parties. We continue to pursue settlement with Johnson & Johnson. ***However, to date, J&J has been unwilling to settle.***"

May 17, 2024 Letter Ex. C at 3 (ECF 32200-4) (emphasis added). Yet, in reality and as this Court knows well from other hearings in this matter, the J&J Defendants have made numerous settlement offers to Beasley Allen, which Beasley Allen had an ethical obligation to communicate to this woman and all of their clients. Thus, the only ethical lapses demonstrated by the emails were committed by Beasley Allen, not Mr. Murdica.

As with the firm's unethical conduct that is the subject of the J&J Defendants' pending motion to disqualify Beasley Allen from continuing to serve on the PSC (Dkt No. 28760), Beasley Allen's failure to accurately convey settlement offers to its clients is designed to thwart the J&J Defendants' efforts to allow claimants to vote on, and decide for themselves, whether the offers are in their best interests. Indeed, Beasley Allen now is vigorously attempting to block the vote on the J&J Defendants' pending solicitation for an equitable, comprehensive and final resolution of all claims pending before this Court.[2] The J&J Defendants sought discovery to determine the extent of Beasley Allen's disinformation campaign, and the extent it is impairing all claimants', let alone their own clients', rights.

## I. The Emails Disprove Beasley Allen's Claims.

### A. Mr. Murdica's communications were proper.

The documentary evidence objectively and conclusively demonstrates that Mr. Murdica's communications were proper and fully consistent with his ethical obligations.

An unknown individual reached out by email to counsel from Beasley Allen, the J&J Defendants' outside counsel (Mr. Murdica), LLT's in-house counsel, and a reporter from Reuters. May 17, 2024 Letter Ex. A at 1 (ECF 32200-2). Her email specifically requested that Mr. Murdica inform her regarding the "date they plan to issue paperwork for the 3rd bankruptcy." *Id.*

Counsel from Beasley Allen responded to the email: "Please disregard the below attorney-client communication." *Id.* This cryptic response was, at the very least, confusing because it was a near certainty that the Reuters reporter was not and had never been a Beasley Allen client yet was included in the communication. Clearly, no attorney-client privilege applies to a communication if the reporter was, as Mr. Murdica believed, a third party. Further, the unknown individual had copied not one but *two* opposing counsel on the very same email. Finally, as the emails demonstrate, Mr. Murdica was under the impression that the sender of the email was part of Beasley Allen's media efforts; a simple Google search verifies his assertion that she is a "self-proclaimed influencer." May 17, 2024 Letter Ex. C at 3 (ECF 32200-4).

In order to sort through the issue, Mr. Murdica added all the original recipients back to the email and responded in just three sentences. *Id. First*, he noted that Beasley Allen seemed to be implying a relationship with Reuters. *Id. Second*, he asked that Beasley Allen explain the nature

---

[2] Beasley Allen issued a press release opposing the solicitation immediately after it was announced. *See* Exhibit A. And, at every opportunity, Beasley Allen is actively lobbying against the solicitation to the mass tort plaintiffs' bar. *See, e.g.,* Exhibit B.

of the relationship with Reuters that gave rise to its privilege assertion. *Id. Third*, he asked that both the individual who sent the email and Reuters each confirm that they are clients of Beasley Allen. *Id.* Thus, the only sentence directed at the individual was a request that she confirm she is Beasley' Allen's client.

Mr. Murdica's email is an entirely reasonable and proper response given the confusing circumstances and Beasley Allen's entirely opaque email seemingly calling Reuters a firm client. Had Beasley Allen wanted to ensure no communications with their client whatsoever, they could have explained the situation with more than a 7-word email.

Mr. Murdica acted fully within the scope of his ethical obligations.

**B.    Defendants did not make false claims.**

The remainder of Beasley Allen's letter amounts to a cacophony of complaints that find no support in, and indeed are contradicted by, the emails themselves.

**1.    Beasley Allen does not keep its clients informed of settlements.** Beasley Allen states that it has "regularly communicated" with its clients and complains that the J&J Defendants' assertions otherwise are based on only "five sentences." May 22, 2024 Letter at 8. No more sentences are needed because Beasley Allen's client relayed the message that her attorneys told her "Johnson & Johnson is not willing to settle your case at this time" and that "J&J has been unwilling to settle." May 17, 2024 Letter Ex. C at 3 (ECF 32200-4). Plainly, Beasley Allen is not communicating the settlement offers it receives to its clients.

**2.    Beasley Allen is not providing accurate information regarding the bankruptcy Plan.** The Plan of Reorganization announced by the J&J Defendants on May 1, 2024 would pay ovarian claimants approximately $6.475 billion. The Plan would include the very individual who reached out to Mr. Murdica frustrated by the misperception that "J&J" has "refused" to settle any claims. She wrote: "Please make an offer so I can get on with my life." May 17, 2024 Letter Ex. D at 1 (ECF 32200-5). One can only conclude that she was not informed of the Plan and/or that it would resolve her claim.

**3.    Beasley Allen violated the solicitation provisions of the Bankruptcy Code.** Beasley Allen cites 11 U.S.C. §§ 1125(b) and 1125(g) regarding when solicitation of a plan may occur at all. But it completely ignores § 1125(e)'s mandate that any solicitations that occur must be in *good faith*. And Beasley Allen equally ignores the caselaw explaining that "[s]olicitation of rejections of a plan of reorganization through the use of misleading or counterfactual materials . . . does not constitute good faith solicitation within the meaning of Code § 1125(e)." *In re Mirant Corp.*, 334 B.R. 787, 793 (Bankr. N.D. Tex. 2005).

What's more, Beasley Allen's contention that the J&J Defendants are trying to "stuff the ballot box" with non-ovarian cancer cases is counterfactual. *First*, counsel representing tens of thousands of ovarian cancer claimants endorse the Plan and support the values attributed to those claims. *Second*, based on the claimant sampling work done to date, gynecological cancer claims of various sorts, such as the claim asserted by the client who emailed Mr. Murdica, make up a substantial portion of the complaints filed in this very MDL. The J&J Defendants did not choose

3

the claims that were filed against it; plaintiff lawyers did. To obtain the desired comprehensive resolution of the claims asserted in this matter, and like claims that may be asserted in the future, the J&J Defendants necessarily must solicit all such claims.

In other words, the simple and indisputable facts are these: This MDL is comprised of both ovarian and non-ovarian cancer claims, Beasley Allen has never complained about the composition of the MDL, and Beasley Allen has never asked this Court to dismiss one or more category of claims as non-meritorious and unworthy of compensation.

4. **Defendants accurately described Beasley Allen's incentives.** There is no dispute that Beasley Allen stands to collect up to 12% of the recovery any firm earns (on top of their cut of any amount recovered for their own clients) if the talc litigation resolves in the MDL. Beasley Allen's only response to this fact is to speculate that a bankruptcy court *might* award something akin to a common benefit fund in *some* amount. May 22, 2024 Letter at 8. That speculation is belied by the terms of the solicitation offer announced on May 1, 2024. And Beasley Allen's musings that it may be able to persuade the J&J Defendants to adopt another plan, in addition to being utterly baseless, do not negate the financial incentives they are *guaranteed* by a resolution through the MDL.

5. **Misleading citations to an irrelevant document.** As a further distraction, Beasley Allen makes the same misleading claims about internal documents that juries have consistently rejected in each of the numerous trials that Beasley Allen has lost. Beasley Allen gratuitously cites a 1997 letter to suggest a consultant believed that talc causes ovarian cancer. May 22, 2024 Letter at 14. But in fact that individual said that "the results of the studies were ambiguous, inconsistent, contradictory and therefore inconclusive," that "hygienic use of cosmetic talc *does not present a risk* to the consumer" and that those were "powerful and irrefutable arguments." May 22, 2024 Letter Ex. 4 at 2 (ECF 32251-4) (emphasis added).

## II. Let the Claimants Vote

It is the conclusion of Beasley Allen's letter that lays bare its true objective in tossing around baseless accusations against Mr. Murdica, the very same objective that the J&J Defendants warned of in their May 17 letter: To foment headline grabbing, *ad hominem* attacks, in the hopes of ultimately *disrupting the vote on the Plan*. Beasley Allen ends its letter by claiming that the "real issue" is "J&J's efforts to stuff the bankruptcy ballot box" while in the same breath declaring "this Court is [the] proper forum" to adjudicate such unfounded contentions.

Sadly, derailing the vote seems to have become the singular focus of Beasley Allen's day in, day out work in this MDL. Since Ms. Brown's letter was filed on May 17, Beasley Allen has filed a litany of materials that appear principally designed to leak to the press and galvanize other counsel to join its effort to dissuade women from voting in favor of the Plan. Chief amongst these is a complaint styled *Love, et al v LLT Management LLC, et al*, Case 3:24-cv-06320-MAS-RLS, a putative class action assigned to this Court, tagged to the MDL and purporting to seek compensatory and putative damages for an alleged fraudulent transfer, among other claims. As with the allegations against Mr. Murdica, *the class action claims are utterly meritless*. True to form, immediately after filing the *Love* action Beasley Allen pushed out its usual propaganda, heralding the complaint with inflammatory language and urging other lawyers to "resist any

4

settlement proposal by J&J." *See* Exhibit B. It then followed the *Love* filing with multiple and duplicative efforts to quash a series of subpoenas directed to both the firm and certain third-party funders which threaten to further unveil Beasley Allen's true motivations in waging its anti-vote campaign.

The J&J Defendants will address each of these filings in due course, including through Rule 11 practice, a motion to dismiss and fulsome opposition briefing. For now, it is high time for the lawyers to step aside and let these women speak for themselves. J&J has offered one of the largest resolutions in the history of mass tort litigation. The record of this litigation, both in terms of pace of trials (it would take decades to try just the filed cases) and the J&J Defendants' success rate (95%), speaks for itself, and it speaks loudly. The J&J Defendants have every confidence that the claimants, including Beasley Allen's clients, are fully capable of reviewing the Plan, assessing the course of this litigation to date and considering their available alternatives. It is time for their own lawyers to show the same confidence in their clients' ability to determine their own best interests.

*Let the women vote.*

Respectfully,

Kristen R. Fournier

cc: All Counsel (via ECF).