# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re Johnson & Johnson Talcum Powder Product Marketing Sales Practices and Products Liability Litigation | **Case No. 3:16-md-2738-MAS-RLS**<br><br>**CIVIL ACTION**<br><br>**Motion Return Date:**<br>**July 1, 2024** |

---

## BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED TO THE SMITH LAW FIRM, PLLC

---

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By:  Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys For Moving Party
The Smith Law Firm. PLLC

## **TABLE OF CONTENTS**

**Page**

A.   The Parties ........................................................................1

B.   The Subpoena ....................................................................2

C.   The Cosmetic Talcum Powder Litigation ........................ 4

ARGUMENT ...............................................................................5

POINT I .......................................................................................5

THE SUBPOENA SHOULD BE QUASHED BECAUSE
IT IS PROCEDURALLY FLAWED

POINT II .....................................................................................6

THE JOHNSON & JOHNSON SUBPOENA
SEEKS INFORMATION THAT IS NOT
DISCOVERABLE UNDER FED. R. CIV. P. 26

A.   Background .......................................................................6

B.   Litigation Funding Information is Irrelevant to Any
     "Claim or Defense" ..........................................................8

C.   Settlement Communications are Irrelevant.........................9

POINT III...................................................................................11

A SUBPOENA FOR "ALL COMMUNICATIONS" WITH
"ANY PERSON" IMPOSES AN UNDUE BURDEN ON
THE SMITH LAW FIRM PLLC

i

POINT IV ....................................................................................................13

INFORMATION ABOUT COMMUNICATIONS WITH
NEWS ORGANIZATIONS IS NOT DISCOVERABLE

    A.      Requests Nos. 7 and 8 .........................................................13

    B.      The Right to Anonymously Provide Information is
             Protected by the First Amendment of the Constitution......................13

Conclusion ....................................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

**Page**

<u>**Cases**</u>

*Caver v. City of Trenton*,
    192 F.R.D. 154 (D.N.J. 2000) ........................................................................7

*Centillion Data Sys. v. Ameritech Corp.,*
    193 F.R.D. 550 (S.D. Ind. 1999) ..................................................................10

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D. N.Y. 1996) .............................................................7, 12

*Corp. Incentives, Inc. v. Unified Safe Guard, LLC,*
    C.A. No. 20-13471, 2023 U.S. Dist. LEXIS 170706,
    (D.N.J. July 25, 2023)....................................................................................6

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1998)....................................................................8, 12

*Doe v. 2TheMart.com Inc.*,
    140 F. Supp. 2d 1088  (W.D. Wash. 2001) ............................................14, 17

*Echostar Commc'ns Corp. v. News Corp.*,
    180 F.R.D. 391 (D. Colo. 1998) ....................................................................8

*Gonzales v. NBC*,
    194 F.3d 29  (2d Cir. 1998) ..........................................................................15

*Hall v. Johnson & Johnson*,
    C.A. No. 22-cv-658, 2022 U.S. Dis. LEXIS 78111,
    (D.N.J., Apr. 29, 2022) ................................................................................10

*Heidelberg Ames., Inc. v. Tokyo Kikai Seisakusho, Lt.*,
    333 F.3d 38 (1st Cir. 2003).........................................................................12

*Highfields Capital Mgmt. L.P. v. Doe,*
    385 F. Supp. 2d 969 (N.D. Cal. 2004).........................................................16

*In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.*,
    405 F. Supp. 3d 612 (D.N.J. 2019)..........................................................1, 7, 8

*In re Volkswagen of AM., Inc.*,
    506 F.3d 376 (5th Cir. 2007) ....................................................................6

*Jaynes v. Jaynes*,
    496 F.2d 9 (2nd Cir 1974)..........................................................................6

*Kaplan v. S.A.C. Capital Advisors, L.P., S.A.C.*,
    C.A. 12-CV-9350 (VM)(KNF),
    2015 U.S. Dist. LEXIS 135031 (S.D.N.Y. Sept. 10, 2015),
    *aff'd,* 141 F. Supp. 3d 246 (S.D.N.Y. 2015) ...................................................9

*Lesal Interiors v. Resolution Trust Corp.*,
    153 F.R.D. 552 (D. N.J. 1994) .......................................................................9

*Los Angeles Memorial Coliseum Com. v. National Football League*,
    89 F.R.D. 489 (C.D. Cal. 1981)...................................................................14

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334(1995).......................................................................................16

*Morse/Diesel, Inc. v. Trinity Indus.*,
    142 F.R.D. 80 (S.D. N.Y. 1992).....................................................................9

*Riley v. Chester*,
    612 F.2d 708 (3d Cir. 1979) ................................................................15, 18

*Scouler v. Craig*,
    116 F.R.D. 494 (D.N.J. 1987) .......................................................................7

*Talley v. California*,
    362 U.S. 60 (1960)................................................................................14, 16

*Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*,
    C.A. 03-cv-6026, 2005 US Dist. LEXIS 34624
    (D.N.J. May 3, 2005) .................................................................................10

*Weinman v. Cable,*
   427 F.3d 49 (1ˢᵗ Cir. 2005)..................................................................................12

## **Rules**

*Fed. R. Civ. P.* 26 ....................................................................................................6

*Fed. R. Civ. P.* 26(b)(1)...........................................................................................7

*Fed. R. Civ. P.* 26(c)(1)...........................................................................................7

*Fed. R. Civ. P.* 45 ....................................................................................................5

*Fed. R. Civ. P.* 45(b)(2)(A) ....................................................................................6

*Fed. R. Civ. P.* 45(d) .............................................................................................11

*Fed. R. Civ. P.* 45(d)(2)(B) .....................................................................................1

*Fed. R. Evid*. 408 .................................................................................................... 9

*L. Civ. R. (N.J.)* 7.1.1 ....................................................................................... 4, 7

This brief is submitted on behalf of The Smith Law Firm. PLLC (hereafter "Smith") in support of its motion, filed pursuant to *Fed. R. Civ. P*. 45(d)(2)(B), to quash a subpoena served upon it on May 23, 2024 by Johnson & Johnson and LLT Management, LLC (hereafter collectively "J&J").  The subpoena should be quashed in its entirety because it (1) is procedurally improper; (2) seeks irrelevant information, see *In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.* 405 F. Supp. 3d 612 (D.N.J. 2019); and (3) imposes and undue burden upon Smith.  If not quashed in its entirety, those portions of the subpoena which week information which is Constitutionally protected from disclosure, requests 7 and 8, should be stricken.

The Smith Law Firm PLLC joins in the arguments set forth in every other motion filed by any other recipient which seeks to quash a similar subpoena.

## A.    The Parties

Johnson & Johnson is a Defendant in *In Re Johnson & Johnson Talcum Powder Product Marketing Sales Practices and Products Liability Litigation*, Docket No.: 3:16-md-02738-MAX-RLS (hereafter "the Litigation").  This case, pending before the multi-district panel, is venued in New Jersey, and involves claims of personal injuries attributable to talcum powder sold by J&J.

Smith, the recipient of the subpoena, is a Mississippi based law firm that is neither a party in the Litigation nor counsel of record to any party in  the Litigation.

1

(Declaration of Allen Smith, ¶ 4).

**B.     The Subpoena**

The subpoena in dispute was issued by J&J's counsel out of the District

Court for the District of New Jersey and seeks compliance in New York City.

(Declaration of Allen Smith, Exhibit A). It orders Smith to produce the following 8

items of information:

> 1.     All Documents or Communications that reflect or
> relate to any Funding and/or Third-Party Funding You received
> concerning the Cosmetic Talcum Powder Litigation, and/or
> claims that have or may be asserted therein, including when the
> funding first began and on what.

> 2.     All Documents or Communications that reflect or
> relate to any Funding and/or Third-Party Funding You have
> received in any way related to the Litigation and/or claims that
> have or may be asserted therein, including, without limitation, any
> Documents or Communications that relate to Funding and/or
> Third-Party Funding received from Fortress or Ellington.

> 3.     All Agreements You have entered into with any
> Person to provide You with Funding or Third-Party Funding in
> any way related to the Litigation, and/or claims that have or may
> be asserted therein including, without limitation, any Agreements
> with Fortress or Ellington.

> 4.     All Documents, Communications, or Agreements that
> concern how much Remuneration You have received in Funding
> or Third-Party Funding in any way related to the Litigation, and/or
> claims that have or may be asserted therein including, without
> limitation, any Documents, Communications or Agreements that
> relate to Funding received from Fortress or Ellington.

> 5.     All Documents, Communications, or Agreements that
> concern the conveyance, sale, syndication, factoring or other

transfer of Funding or Third-Party Funding You have received that relates, in any way, to the Litigation and/or claims that have or may be asserted therein.

6.      All Documents, Communications, or Agreements that concerning (sic) the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein.

7.      All Communications You have had with any Person who is not a party to this action, including news organizations like Thomson Reuters, or with Fortress or Ellington or other entities that provide Funding or Third-Party Funding, related to the Proposed Plan of Reorganization and the solicitation of personal injury Plaintiffs regarding same.

8.      All Communications You have had with any Person who is not a party to this action, including news organizations like Thomson Reuters, or with Fortress or Ellington or other entities that provide Funding or Third-Party Funding, related to settlement offers made to You by Defendants in connection with the Litigation.

(Declaration of Allen Smith, Exhibit A).  The subpoena essentially seeks three categories of information:  (1) information about litigation funding; (2) settlement communications; and (3) communications with "news organizations."

The subpoena is broad and ambiguous insofar as it seeks information about claims that have been asserted as well as those that "may be asserted."  It seeks documents from The Smith Law Firm, PLLC and any "employee" defined to "include, without limitation," any current and former "officer, director, executive, manager, secretary, staff member, messenger, agent,

independent contractor . . ..."  "Funding" is defined as any "Remuneration,"
which includes, according to the subpoena, any compensation.  The term
"Litigation" is defined as referring to the "Cosmetic Talcum Powder Litigation
and/or the Bankruptcy Proceedings."  The former is broadly defined as
including

> without limitation, any claims concerning Johnson & Johnson's
> talcum powder products filed or contemplated against the
> Defendants, regardless of the underlying injury or disease alleged.

In addition, the subpoena seeks information that is far beyond that which
is required under *L. Civ. R.* 7.1.1 to be disclosed by parties to litigation  -
which The Smith Law Firm, PLLC is not.

In summary, the subpoena is draconian with regard to the categories of
information sought, the time period covered, the description of the people from
whom information is requested,  and the breadth of its requests.

## C.    The Cosmetic Talcum Powder Litigation

The subpoena arises in the context of a personal injury lawsuit.  That lawsuit
is most likely typical of other cases within the multi-district docket.  The New
Jersey case in which the subpoena was issued was filed on behalf of a plaintiff
named Barbara Ross by her attorneys, Moll Law Group and The Law Group, Ltd.
(See Amended Complaint, Document 52 in *In Re Johnson & Johnson Talcum
Powder Product Marketing Sales Practices and Products Liability Litigation*,

4

Docket No.:  3:16-md-02738-MAS-RLS).  Neither The Smith Law Firm PLLC nor Allen Smith has any connection to Ms. Ross or her attorneys.  (Declaration of Allen Smith, ¶ 5).

The Complaint is largely a conventional personal injury pleading in which Ms. Ross alleges that she suffers from ovarian cancer attributable to her use of talcum powder sold by J&J.  The Complaint contains ten counts:  failure to warn (Count I); design and/or manufacturing defect (Count II); negligence (Count III); breach of express warranty (Count IV); breach of implied warranty (Count V); punitive damages (Count VI); negligent misrepresentation (Count VII); fraudulent concealment (Count VIII); fraud (Count IX); and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count X).

This brief first discusses procedural deficiencies in the subpoena, then turns to a discussion of facial flaws in the subpoena, and finally to the impropriety of several individual requests.

## **ARGUMENT**

### **POINT I**

### **THE SUBPOENA SHOULD BE QUASHED BECAUSE IT IS PROCEDURALLY FLAWED**

The Subpoena has been issued out of a New Jersey Federal Court to a Mississippi recipient and is returnable in the State of New York.  It is void and should be quashed as it does not comply with *Fed. R. Civ. P.* 45.

A subpoena may only compel production of documents "within 100 miles of where the person resides, is employed or regularly transacts business in person." *Fed. R. Civ. P.* 45(b)(2)(A).  A District Court has no power to subpoena parties to appear or provide documents beyond the 100-mile limit.  *See, e.g. Jaynes v. Jaynes*, 496 F.2d 9, 10 (2nd Cir 1974) and *Corp. Incentives, Inc. v. Unified Safe Guard, LLC,* C.A. No. 20-13471, 2023 U.S. Dist. LEXIS 170706,  *2 (D.N.J. July 25, 2023).

The Smith Law Firm does not reside in, is not employed within, and does not regularly transact business in person in the State of New Jersey or in the State of New York, nor is Smith appearing before this Court.  (Declaration of Allen Smith, ¶ 6).  Therefore, the subpoena should be quashed.  *In re Volkswagen of AM., Inc.*, 506 F.3d 376 (5th Cir. 2007).

### POINT II

### THE JOHNSON & JOHNSON SUBPOENA SEEKS INFORMATION THAT IS NOT DISCOVERABLE UNDER FED. R. CIV. P. 26

### A.    Background

The information sought in the J&J subpoena  may, for purposes of assessing relevance, be grouped into three categories:  (1) litigation funding information; (2) settlement information; and (3) communications with news organizations.  None of

6

the information sought is relevant to a "claim or defense" plead in this matter and therefore the subpoena should be quashed.

> *Fed. R. Civ. P.* 26(b)(1) provides that:
>
> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's **claim or defense** - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  (Emphasis added).
>
> While discovery is broad, it must be proportional to the needs of the case.

*In re Valsatran*, 405 F. Supp.3d at 612.  The Federal Rules do not confer an unlimited right of discovery to any party and a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Fed. R. Civ. P.* 26(c)(1).  The right to such a protective order extends to both parties and non-parties who have been served with subpoenas.  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D. N.Y. 1996).

As a threshold matter, "Rule 26(b) requires that any requested discovery be relevant to a party's claim or defense, and a subpoena that 'sweepingly pursues material with little apparent or likely relevance to the subject matter [ ] runs the [ ] risk of being found overbroad and unreasonable.'" *Id.* at 50.  Relevance is determined "in light of the allegations of the complaint," *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987) and the party seeking discovery "has the burden of

7

showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence," *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  (Citations omitted).  This burden is heavier when the discovery is sought from a non-party.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998); *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

It is thus incumbent upon J&J to demonstrate why the information which it seeks is relevant to a "claim or defense."  Given the nature of the allegations in Ms. Ross' Complaint, J&J cannot satisfy its heavy burden to demonstrate the relevance to any "claim or defense" in that personal injury action, of any of the three categories of information sought from an attorney who is neither a party to nor an attorney of record in the case in which the subpoena has been issued or in any case pending before the multi-district panel.  (Declaration of Allen Smith, ¶ 5)

### B.   Litigation Funding Information is Irrelevant to Any "Claim or Defense"

Even were Smith to have some role in this matter, discovery about litigation funding is not remotely relevant.  *See In re Valarsatan*, 405 F. Supp. 3d at 615 (collecting cases finding litigation funding irrelevant).  In that multi-district litigation, defendants sought discovery directed to plaintiffs' counsel's litigation funding.  *Id.* at 612.  This Court properly found that this discovery was not

8

"relevant to any party's claim or defense and proportional to the needs of the case."

There, Judge Schneider wrote:

> The Court agrees with the plethora of authority that holds that discovery
> directed to a plaintiff's litigation funding is irrelevant.

*See also Kaplan v. S.A.C. Capital Advisors, L.P., S.A.C.*, No. 12-CV-9350

(VM)(KNF), 2015 U.S. Dist. LEXIS 135031 *17 (S.D.N.Y. Sept. 10, 2015), *aff'd,*

141 F. Supp. 3d 246 (S.D.N.Y. 2015) (denying defendants' request for plaintiffs'

litigation funding documents on the ground that "defendants did not show that the

requested documents are relevant to any party's claim or defense").

There is even less justification to require Smith to provide information about

litigation funding.  *L. Civ. R.* 7.1.1 only requires disclosure by parties.  The Smith

Law Firm, PLLC is neither a party nor an attorney of record for a party in the

multi-district litigation.  (Declaration of Allen Smith, ¶ 5).  There is no conceivable

basis to require an attorney who has not appeared in this litigation to provide

litigation funding information.

## C.    Settlement Communications are Irrelevant

Requests 6 and 8 of the subpoena seek settlement communications.  While

*Fed. R. Evid*. 408 does not make settlement discussions privileged, a litigant

seeking that information must make a particularized showing of relevance to a

claim or defense.  *Lesal Interiors v. Resolution Trust Corp.*, 153 F.R.D. 552 (D.

N.J. 1994); *Morse/Diesel, Inc. v. Trinity Indus.*, 142 F.R.D. 80, 84 (S.D. N.Y.

1992).  In the absence of such a showing, discovery of settlement information is prohibited.  *Centillion Data Sys. v. Ameritech Corp.*, 193 F.R.D. 550, 553 (S.D. Ind. 1999):

> While admissibility and discoverability are not equivalent, it is clear that the object of the inquiry [for settlement information] must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.

Moreover, communications about settlement could involve client communications and would be protected by the attorney client privilege.  *See Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*, 2005 US Dist. LEXIS 34624 *6 (D.N.J. May 3, 2005).  There is no justification to require production of settlement information from Smith.

### D.    Communications with News Organizations Are Irrelevant

Requests 7 and 8 of the subpoena seek information about communications with news organizations concerning litigation funding, settlement, and client solicitations.  Once again, there is no conceivable relationship between such communications to  any "claim or defense" in this matter.  The District Court for the District of New Jersey, in related litigation involving Johnson & Johnson, has already found communications with the press by the Smith Law Firm, PLLC and others are irrelevant.  *Hall v. Johnson & Johnson*, 2022 U.S. Dist. LEXIS 78111, *13 (D.N.J., Apr. 29, 2022).

In summary, the subpoena, in all respects, seeks irrelevant  information and should be quashed.

## POINT III

## A SUBPOENA FOR "ALL COMMUNICATIONS" WITH "ANY PERSON" IMPOSES AN UNDUE BURDEN ON THE SMITH LAW FIRM PLLC

*Fed. R. Civ. P.* 45(d) provides that

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.

The subpoena issued in this matter requires Smith to provide information

- Transmitted to an unlimited number of "Persons";

- potentially supplied, as the subpoena provides, by The Smith Law Firm and any "Person or entity acting on their behalf, including directors, officers, employees, attorneys and agents";

- which includes, according to the subpoena's definition of "communication," "every manner and means of correspondence, disclosure, transfer . . .or information" whether face-to-face, by telephone, mail, email, text messaging, or other means; and

- With regard to pending or future matters.

In assessing whether a subpoena imposes an undue burden, a Court is to consider the status of the recipient as a non-party:

It is also noteworthy that the respondents are strangers to the antitrust litigation; insofar as the record reflects, they have no dog in that fight.  Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation.  Non-parties have a different set of

11

> expectations.  Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.

*Cusumano v. Microsoft Corp.*, 162 F.3d at 717 (citations omitted).  *See also Weinman v. Cable,* 427 F.3d 49, 53 (1st Cir. 2005):

> Even with appellants' reduced request, the evaluation of benefit to appellants versus burden on appellee is a demanding and sensitive one.  On the one hand, appellee is a nonparty to the underlying litigation.  This fact is entitled to special weight in evaluating the balance of competing needs.

*Id*. at 53.  Thus, a subpoena that imposes an undue burden on a non-party should be quashed even if it seeks "relevant materials or testimony."  *Id.*; *see also, Heidelberg Ames., Inc. v. Tokyo Kikai Seisakusho, Lt.*, 333 F.3d 38 (1st Cir. 2003).

An assessment of burden turns on an examination of the (1) relevance of the information; (2) a party's need for the documents; (3) the breadth of the request; (4) the time period covered; (5) the burden imposed; and (6) the status of the witness as a non-party.  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. at 49.

As discussed in Point II above, factors 1, 2 and 6 weigh against enforcement of the subpoena.  Factors 3 and 4 require consideration of the breadth of the request, which is extensive, requiring inquiries to many persons over several years about a variety of different communication formats. Factor 5, the burden imposed, weighs in favor of quashing the subpoena as it would require Smith to review written data, to speak to many past and current employees going back several

years, to search electronically stored information, and to review paper files is a burden which should not be imposed on a non-party.  Therefore, all factors weigh in favor of quashing the subpoena.

Even if the subpoena were to have sought relevant information it imposes an undue burden upon Smith, a non-party to this litigation, and should be quashed.

**POINT IV**

### INFORMATION ABOUT COMMUNICATIONS WITH NEWS ORGANIZATIONS IS NOT DISCOVERABLE

**A.     Requests Nos. 7 and 8**

Request Nos. 7 and 8  seek:

> 7.     All Communications You have had with any Person who is not a party to this action, including news organizations like Thomson Reuters, or with Fortress or Ellington or other entities that provide Funding or Third-Party Funding, related to the Proposed Plan of Reorganization and the solicitation of personal injury Plaintiffs regarding same.

> 8.     All Communications You have had with any Person who is not a party to this action, including news organizations like Thomson Reuters, or with Fortress or Ellington or other entities that provide Funding or Third-Party Funding, related to settlement offers made to You by Defendants in connection with the Litigation.

**B.     The Right to Anonymously Provide Information is Protected by the First Amendment of the Constitution**

A subpoena which seeks communications with any news organization runs afoul of the First Amendment of the Constitution of the United States.  The First

13

Amendment provides as follows:

> Congress shall make no law . . . abridging the freedom of speech,
> or of the press; or the right of the people peaceably to assemble,
> and to petition the Government for a redress of grievances.

The issuance of a subpoena is state action which implicates First Amendment protections. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1094 (W.D. Wash. 2001); *Los Angeles Memorial Coliseum Com. v. National Football League*, 89 F.R.D. 489 (C.D. Cal. 1981).

Compliance with the subpoena issued by J&J here would reveal (1) whether Smith communicated with a news organization; (2) the names of individuals who may have had those communications; and (3) the identification of the particular information provided. The First Amendment protects against compelled disclosures of this nature and thus, the subpoena should be quashed.

Among the rights protected by the First Amendment of the Constitution of the United States is the right to anonymously provide information to the public. *Talley v. California*, 362 U.S. 60 (1960). In *Talley*, the City of Los Angeles had adopted an ordinance which prohibited the distribution of handbills if they failed to disclose the name of the person who printed, wrote, compiled or manufactured the handbill. The defendant there had distributed anonymous handbills that advocated boycotting certain local merchants and, as a result, he was fined $10. Following an unsuccessful appeal of his fine, Talley sought *certiorari* to the Supreme Court of

14

the United States which reversed the conviction reasoning that:

> There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression.

*Id*. at 64.  Continuing, the Court wrote:

> Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind.  Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all.  The obnoxious press licensing law of England, which was also enforced on the Colonies was due in part to the knowledge that exposure of the names of printers, writers and distributors would lessen the circulation of literature critical of the government.

*Id.*

Where the information subpoenaed seeks communication with a news organization (as opposed to pamphleting), there is even a greater need for expansive protection.  This is so because the disclosure of a source's identity could impair the news gathering process and chill First Amendment rights.  *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1998):

> The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties— **particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation.** (Emphasis added).

*See also Riley v. Chester*, 612 F.2d 708, 714 (3d Cir. 1979):

> The interrelationship between newsgathering, news dissemination and the need for a journalist to protect his or her source is too apparent to require belaboring. A journalist's inability to protect the confidentiality of sources s/he must use will jeopardize the journalist's ability to obtain information on a confidential basis. This in turn will seriously erode the essential role played by the press in the dissemination of information and matters of interest and concern to the public. The role of "an untrammeled press as a vital source of public information" was one of the primary bases for its First Amendment protection. (internal citations omitted).

Several decades after its decision in *Talley*, the Supreme Court returned to the First Amendment implications of the right to anonymity. In doing so, it expanded the analytical basis for First Amendment protection. While the Court in *Talley* and several Circuit Courts had premised the protection of anonymity on public policy grounds, the Supreme Court in *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995), based its decision on the preservation of the speaker's personal autonomy:

> Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.

Given the importance of the First Amendment protections, Courts have readily quashed subpoenas issued in order to obtain evidence in cases arising, not only in the political context as in *Talley*, but in the business context as well. *See e.g. Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2004). There, plaintiff alleged that an anonymous internet posting infringed on the

trademark of the publicly traded corporation. Highfields had issued a subpoena to Yahoo seeking to learn the name of the anonymous poster so that the source could be sued. The internet poster, under the pseudonym of Doe, filed a motion to quash the subpoena which the Court granted:

> While plaintiff seems to suggest otherwise, the interests and policies invoked by the defendant are of considerable potential significance. Indeed, they are rooted in the First Amendment to the Constitution of the United States. What defendant seeks to protect through his motion to quash is the right to express most effectively and anonymously, without fear of expensive adverse consequences, his views about matters in which many other members of the public are interested. In this case, those matters involve the performance and policies of a large, publicly traded corporation (SGI) and, perhaps less obviously, its largest single shareholder (Highfields Capital).

*Id.* at 974-75.

In another business case, a court quashed a subpoena for information sought to defend against a plaintiff's complaint. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088. That case was a derivative shareholder action alleging fraud on the market. The defendant, who claimed that its conduct was not the cause of the plaintiff's injury, subpoenaed a public message board to obtain the names of 23 individuals who had disparaged the plaintiff-corporation. One poster, under the pseudonym of NoGuano, filed a motion to quash the subpoena. Granting the motion, the Court reasoned that "the right to speak anonymously was of fundamental importance to the establishment of our Constitution." *Id.* at 1092.

17

The unmasking of anonymous speakers, the opinion continues, has a chilling effect on speech.  When an anonymous internet poster is not a party to the case, "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id.* at 1095.

The Third Circuit Court of Appeals has embraced a similarly rigorous test which requires consideration of several factors. *Riley*, 612 F.2d at 716.  Among the factors to be considered are the following:  was the subpoenaed party a witness to the events that are the subject of the information sought?  Is the recipient a party to the litigation in which the subpoena was issued?  Does the recipient have a personal stake in the outcome of the litigation?  All of these factors weigh against enforcement of the subpoena issued to Smith.

Even were the subpoena not procedurally flawed, even had it sought relevant information, even were it not burdensome, requests 7 and 8 should be stricken.

## CONCLUSION

For the foregoing reasons, the subpoena to the Smith Law Firm, PLLC, should be quashed.

Respectfully submitted,

**SZAFERMAN, LAKIND,**
 **BLUMSTEIN & BLADER, P.C.**

s/*Arnold C. Lakind*
 Arnold C. Lakind, Esq.

Dated:  June 3, 2024

19