# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | MDL No. 16-2738 (MAS) (RLS) |

*THIS DOCUMENT RELATES TO ALL CASES*

**PLAINTIFFS' STEERING COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INSPECTION OF <u>DR. WILLIAM LONGO'S LABORATORY</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

LEGAL STANDARD.............................................................................................2

ARGUMENT ..........................................................................................................4

   1. Rule 34 does not permit observation of an expert's work..............................4

   2. The inspection Defendants seek is unreasonable and exceeds
      the permissible scope of discovery................................................................6

      A. Defendants have no need to observe Dr. Longo work in real
         time. ........................................................................................................7

      B. The inspection and observation would be highly
         burdensome...........................................................................................10

   3. Defendants distort Dr. Longo's prior testimony and seek to
      distract the Court..........................................................................................11

CONCLUSION .....................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Belcher v. Basset Furniture Industries*,
    588 F.2d 904 (4th Cir. 1978) ................................................................ 3, 6, 7, 9

*Broe v. Manns*,
    2016 WL 7048988 (M.D. Pa. Dec. 5, 2016) ..................................................9

*Dzielak v. Whirlpool Corp.*,
    2017 WL 1034197 (D.N.J. Mar. 17, 2017) ....................................................9

*In re Gabapentin Pat. Litig.*,
    2011 WL 12516763 (D.N.J. Apr. 8, 2011) .....................................................9

*In re Zantac (Ranitidine) Litigation*,
    C.A. NO. N22C-09-101 ZAN (Del. Super. Ct. May 31, 2024) ....................10

*Mancuso v. D.R.D. Towing Co.*,
    2006 WL 889383 (E.D. La. Mar. 10, 2006) ...................................................5

*McConnell v. Canadian Pacific Realty*,
    280 F.R.D. 188 (M.D. Pa. 2011) ........................................................... 3, 4, 11

*National Manufacturing Co. v. Janed Enterprises, Inc.*,
    2013 WL 12470870 (D.N.J. July 3, 2013) .............................................. 3, 6, 7

*Teer v. L. Eng'g & Env't Servs., Inc.*,
    176 F.R.D. 206 (E.D.N.C. 1997) ....................................................................5

*United States v. Territory of the Virgin Islands*,
    280 F.R.D. 232 (D.V.I. 2012) .................................................................... 3, 7

**Rules**

Fed. R. Civ. P. 26 ................................................................................... 3, 6, 9

Fed. R. Civ. P. 34 ................................................................................... 2, 4, 6

**Other Authorities**

www.mastest.com .......................................................................................11

iii

Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC"), submit this Memorandum of Law in opposition of Defendants' motion to compel Plaintiffs' expert Dr. William Longo to make his laboratory available for inspection.

## INTRODUCTION

On April 18, 2024, Defendants served on Plaintiffs a Notice of Inspection to inspect Plaintiffs' expert Dr. William Longo's laboratory Materials Analytical Services, LLC's ("MAS"), in conjunction with a Notice of Oral and Videotaped Deposition. *See* Notice of Inspection (attached as **Exhibit A**). The Notice of Inspection gave notice that Defendants and their experts seek to inspect multiple areas of the MAS laboratory and its PLM microscopes. Shockingly, it also gave notice that Defendants' experts seek to—in real time—observe MAS's methodology for and performance of preparing samples of Johnson's Baby Powder as well as MAS's methodology for and performance of analyzing those samples on its PLM equipment. On May 1, 2024, the PSC timely objected to Defendants' Notice of Inspection. *See* PSC's Objections to The Updated Notice of Oral and Videotaped Deposition of William Longo, Ph.D., Duces Tecum, Notice to Preserve and Notice of Inspection (attached as **Exhibit B**).

The Court should deny Defendants' motion to compel the inspection of Dr. Longo's laboratory. Federal Rule of Civil Procedure 34(a)(2) does not permit parties to compel opposing parties' experts to perform work and give their own experts a

1

ticket to watch. Defendants have not identified any authority indicating that Rule 34 permits such an "inspection." Moreover, even if the Court entertains Defendants' request under Rule 34, Defendants' motion should be denied as it exceeds the scope of discovery under Rule 26(b) and is unreasonable.

Defendants are distorting Dr. Longo's prior deposition testimony to manufacture a reason to further harass him. Dr. Longo has clearly laid out his methodology and given extensive deposition testimony regarding the PLM analyses he performed for his expert reports. Still, Defendants seek to bully him through the unprecedented and highly intrusive inspection of his laboratory and by forcing him to redo his PLM analyses while they look over his shoulder. This is in addition to Defendants' attempts to depose Dr. Longo's own employees. *See* Defendants' Amended Notice of Intent to Serve Subpoena on MAS employee Paul Hess (attached as **Exhibit C**). Lastly, Defendants' motion is replete with *Daubert* arguments that are not appropriate for this motion practice. The Court should reject Defendants' manipulative tactics and deny their motion to compel the inspection of Dr. Longo's laboratory.

## LEGAL STANDARD

Federal Rule of Civil Procedure 34(a)(2) allows a party to serve a request on a party to "permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect,

measure, survey, photograph, test, or sample the property or any designated object or operation on it." Importantly, a notice of inspection issued pursuant to Rule 34 must comply with Rule 26(b), requiring that the discovery sought by the inspection be relevant to a party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. Pro 26(b)(1).

But a notice of inspection to enter a premises requires even more scrutiny. In *National Manufacturing Co. v. Janed Enterprises, Inc.*, 2013 WL 12470870 (D.N.J. July 3, 2013), the Court utilized the Fourth Circuit's balancing approach in *Belcher v. Basset Furniture Industries*, 588 F.2d 904, 908 (4th Cir. 1978). The *Belcher* court reasoned that "[s]ince entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted," and thus the general relevancy standard was not sufficient. *Id.* Rather, courts should balance the need for the inspection against the "burdens and dangers created by the inspection." *Belcher*, 588 F.2d at 908; *see also Nat'l Mfg. Co.*, 2013 WL 12470870 at 1. Other courts in the Third Circuit "have also utilized *Belcher*'s balancing approach when deciding whether to grant a motion to compel inspection of a party's premises, using 'reasonableness' as a guidepost." *Nat'l Mfg. Co.*, 2013 WL 12470870 at 2 (citing *McConnell v. Canadian Pacific Realty*, 280 F.R.D. 188, 191 (M.D. Pa. 2011) and *United States v. Territory of the Virgin Islands*, 280 F.R.D. 232, 235 (D.V.I. 2012)). Ultimately, "the touchstone for

analysis of a Rule 34 inspection request is reasonableness." *McConnell*, 280 F.R.D. at 191.

## ARGUMENT

**1. Rule 34 does not permit observation of an expert's work.**

Defendants' motion is impermissible under the plain meaning of Federal Rule of Civil Procedure 34. A party may serve a request for another party "to produce and permit the *requesting* party or its representative to inspect, copy, test or sample" items in the responding party's possession. Fed. R. Civ. P. 34(a)(1) (emphasis added). The rule also provides that a party may request for another party "to permit entry onto designated land or other property . . . so that the *requesting* party may inspect, measure, survey, photograph, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2) (emphasis added). Nothing in the text of Rule 34(a) contemplates that a party may observe another party's *expert* while they work. Further, the "inspection" Defendants seek goes beyond actions of the requesting party, and instead imposes a burden on the *responding* party's *expert* to engage in testing that it otherwise would not conduct. Rule 34 permits no such burden.

Moreover, the inspection Defendants seek is wholly unprecedented and allowing such an inspection would have serious ramifications. Defendants have not identified a single case where a party was permitted to require another party's expert

4

to work while allowing their own experts to observe.[1] In fact, courts have held that parties cannot use Rule 34 to compel the observation of another party's experts' work. *See Teer v. L. Eng'g & Env't Servs., Inc.*, 176 F.R.D. 206, 207 (E.D.N.C. 1997); *Mancuso v. D.R.D. Towing Co.*, 2006 WL 889383, at *3 (E.D. La. Mar. 10, 2006). In *Teer*, for example, the court denied the defendant's Rule 34 motion to permit it to attend, observe, and record the plaintiff's testing, assessment, or corrective actions taken on its property. *Teer*, 176 F.R.D. at 207. The court reasoned that Rule 34 does not "authorize Defendant's experts to observe Plaintiffs' experts as they do their work to assess the contamination or take steps to correct it." *Id.* (noting that "Defendants have not cited one case from any court that ever has permitted such a thing"). What Defendants seek here goes even a step beyond what the *Teer* court found was beyond the bounds of Rule 34. Defendants not only seek to observe Dr. Longo and MAS employees performing their work, but Defendants seek to require that they *reperform work* that has already been done.

The absence of case law supporting Defendants' position is instructive here. Practically, parties can always argue that observing an expert perform their work in real time will be relevant to the case, and will have no problem fashioning arguments

---

[1] The *singular* case Defendants cite in support of their argument has nothing to do with observing experts work. Rather, *LG Philips v. Tatung Co. of America* concerned the inspection of the plants where the defendants manufactured and assembled the LCD panels that were the very subject of the litigation. 2005 WL 8157808, at *1 (C.D. Cal. Jan. 11, 2005).

5

that such observation is necessary as opposed to the traditional methods utilized for challenging experts under Rule 702. But allowing a party's experts to observe an opposing party's experts while they work, nonetheless requiring those experts to *duplicate* their work, will have a massive chilling effect on expert witnesses and disrupt the established process for challenging expert testimony.

In short, what Defendants seek—to compel Plaintiffs' expert to redo his work and simultaneously be there to observe it—goes entirely beyond the bounds of discovery contemplated by Rule 34. The Court should deny Defendants' motion on this basis alone.

### 2. The inspection Defendants seek is unreasonable and exceeds the permissible scope of discovery.

Even if Rule 34 allowed for Defendants experts to observe Dr. Longo or MAS employees performing PLM analyses (it does not), the Court should deny Defendants' motion because the inspection Defendants seek is patently unreasonable and particularly disproportionate to the needs of the case. Not only is the inspection unnecessary, but it is highly burdensome to Dr. Longo and MAS. The Court should weigh these factors to find the inspection unreasonable. *See Nat'l Mfg. Co.*, 2013 WL 12470870 at 1; *Belcher*, 588 F.2d at 908. Additionally, the Court should deny Defendants' motion because the requested inspection exceeds the permissible scope of discovery under Rule 26(b). *See* Fed. R. Civ. P. 34(a) (requests under Rule 34 must be "within the scope of Rule 26(b)").

6

**A. Defendants have no need to observe Dr. Longo work in real time.**

Defendants argue the requested inspection is necessary because it is critical to their defense to allow their own experts to "view the same particles of Dr. Longo at the same time in the same lab and on the same equipment."[2] But Dr. Longo has produced reports and provided instructions specific enough for Defendants' experts to replicate his testing. In his 4th Supplemental MDL Report, Analysis of Non-Historical J&J's Talcum Powder Consumer Product Containers and J&J Chinese Historical Talc Retain Samples, Dr. Longo describes in detail his methodology, including the heavy liquid separation method for preparing a sample and the analysis performed. *See* 4th Supp. MDL Rpt., at pp. 3-8; 11-14 (attached as **Exhibit D**). The 4th Supplemental MDL Report provides an overview of numerous other analyses that Dr. Longo and MAS have conducted of talcum powder samples. Each of those reports have been produced in this MDL. *See* PSC's November 17, 2023 letter regarding Dr. Longo's reports disclosed in the MDL (attached as **Exhibit E**). He has also given extensive testimony regarding the same.

---

[2] Any attempt of Defendants to contemporaneously question Dr. Longo or any MAS employees is not permitted. Interviews during Rule 34 inspections are "suspect" and lack the "safeguards of true depositions." *Nat'l Mfg. Co.*, 2013 WL 12470870 at *3 (quoting *Belcher*, 588 F.2d at 910). Defendants have had full opportunity – over the course of two days – to depose Dr. Longo. To further question Dr. Longo, they must do so using the "normal method[] of deposing" him with all of the "burdensome procedure mandated under Rule 30." *Id.* at *3 (citing *U.S. v. Territory of the Virgin Islands*, 280 F.R.D. at 237).

7

Defendants' argument that they cannot replicate Dr. Longo's PLM method is simply false. For example, Defendants argue that they cannot replicate Dr. Longo's methodology because it is "constantly in flux," listing certain aspects of Dr. Longo's PLM methodology that have changed over time. But that argument is a red herring. Even if Dr. Longo's methodology has been modified over the course of several years, nothing prevents Defendants from replicating the *exact methodology* Dr. Longo used in his analyses of the samples analyzed in his expert reports for this litigation. That methodology has been clearly spelled out in his expert reports and his deposition testimony. Moreover, Defendants' argument that they cannot replicate Dr. Longo's PLM method because the samples degrade quickly is another smokescreen. Defendants have access to aliquots of the same bottles Dr. Longo tested. Defendants have a detailed description of the Dr. Longo's methodology as outlined in his expert reports and during 23 days of either deposition or trial testimony where Dr. Longo has been cross examined on his methodology and results. *See* Longo Testimony List (attached as **Exhibit F**); Exhibit E. Defendants have engaged three experts with expertise in polarized light microscopy – Dr. Shu-Chun Su, Dr. Anne Wylie and Dr. Matthew Sanchez, all of whom have served expert reports criticizing Dr. Longo's methodology. Yet, shockingly, to the PSC's knowledge, Defendants' experts have *never* tested any samples from these bottles.

Rather, Defendants believe it appropriate to watch Dr. Longo replicate his testing in real time because their experts disagree with his identification of color. But what is clear – there is no need. Dr. Longo has appended to his reports color photomicrographs of the structures he identifies as asbestos. Defendants have all the information needed to challenge Dr. Longo's results and indeed, they have done so during recent trials. The request for an inspection is merely to harass, oppress, and cause undue burden and expense to MAS and Dr. Longo.[3]

If Defendants wish to challenge Dr. Longo's identification of chrysotile because their experts disagree about color, then Defendants should make that argument to the jury. *See Dzielak v. Whirlpool Corp.*, 2017 WL 1034197, at *26 (D.N.J. Mar. 17, 2017) ("What is presented here is a classic battle of the experts over disputed facts, to be settled by the finder of fact . . . ."); *In re Gabapentin Pat. Litig.*, 2011 WL 12516763, at *10 (D.N.J. Apr. 8, 2011) (concluding that disagreement between experts regarding application of a methodology presents "a battle of the experts" to be resolved by the trier of fact); *Broe v. Manns*, 2016 WL 7048988, at *4 (M.D. Pa. Dec. 5, 2016) ("Plaintiffs can challenge the expert's conclusions through cross-examination and the presentation of their own witnesses."); *see generally* Omnibus Order on Motions to Exclude Expert Opinions, *In re Zantac*

---

[3] Under Fed. R. Civ. P. 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See also Belcher*, 588 F.2d at 908.

9

*(Ranitidine) Litigation*, C.A. NO. N22C-09-101 ZAN (Del. Super. Ct. May 31, 2024) (explaining "the distinct roles of the Court as gatekeeper and that of the jury as the ultimate fact finder" and leaving "battles of the experts" for the jury to resolve).

In short, no reason exists for Defendants to require Dr. Longo to repeat his PLM analyses while their experts observe. There is nothing keeping Defendants' experts from examining aliquots from the same bottles of Johnson's Baby Powder Dr. Longo tested, replicating Dr. Longo's methodology, and coming to their own conclusions regarding the presence of chrysotile. To the extent that Defendants wish to challenge Dr. Longo's conclusions from the testing he has already done, they can properly do so before the jury.

### B. The inspection and observation would be highly burdensome.

Second, the practical implications of the requested inspection are highly burdensome. Defendants seek to, over the course of multiple days, enter into Dr. Longo's laboratory and observe Dr. Longo and MAS technicians repeat Dr. Longo's PLM analyses. The preparation (up to 72 hours) and analysis of *one* sample (2-4 hours) can take days. *See* 4th Supp. MDL Report at p. 11; Longo (MDL) Dep. (May 2, 2024) at 148 (attached as **Exhibit G**). This would have the effect of shutting down MAS's operations for the duration of the inspection. MAS conducts testing for litigants in other litigations, pharmaceutical testing, chemical analysis, children's

10

product testing, VOC emissions, environmental testing and materials failure testing, all of which is confidential and proprietary. *See* www.mastest.com (accessed June 2, 2024). The litigation work is protected by the work product privilege. A multi-day inspection for even one sample would essentially shut down the lab and cause MAS to have to cover and/or move confidential information and displace and impinge on the work of its scientists and technicians. Not to mention that the intrusion of having a defense expert looking over the shoulder of Dr. Longo or another MAS scientist while they examine a sample under the polarized light microscope would be unduly intrusive and stressful. There is nothing "reasonable" about the method by which Defendants' requested inspection would occur. *See McConnell*, 280 F.R.D. at 191 (the inspection demand "must specify a reasonable time, place and manner for the examination").

### 3. Defendants distort Dr. Longo's prior testimony and seek to distract the Court.

Finally, Defendants skew Dr. Longo's prior testimony in order to manufacture a reason to harass Dr. Longo through an inspection of his lab. First, Defendants claim that Dr. Longo "has repeatedly avoided answering questions about the bases for his testing results by stating that he would have to be physically sitting at the microscope looking at a particle live." Motion at 9. But a few sentences taken out of context and nitpicked out of hundreds of pages of Dr. Longo's deposition testimony can hardly justify the drastic measures Defendants seek here. What is more, Defendants'

11

"examples" of this supposed behavior—which make up the entire basis for Defendants' supposed need for this inspection—are exclusively from deposition testimony in the *Valadez* case. Defendants cherry-pick instances where Dr. Longo ostensibly was shown a photomicrograph and asked questions. The full context of the discussion is not included in the excerpt. The exhibits being referenced are not identified nor attached to the filing. Dr. Longo gave testimony about certain aspects of what he was seeing including the refractive indices, color both in parallel and perpendicular. There were aspects that were difficult to see on a .pdf and Dr. Longo testified that he was unable to make a determination about the elongation of the structure without seeing it under a microscope because the structure was not in focus on the image. *See* Doc. 32202-12 at 56. This is not evasion but a perfectly reasonable answer considering the deposition was conducted remotely. Defendants have not pointed to any occasion during Dr. Longo's MDL deposition testimony where Dr. Longo makes the same assertions.

Further, following the *Valadez* case, Dr. Longo issued an expert report that Defendants failed to mention – Comparison of RI's and Chrysotile Structure Size Union Carbide's SG-210 Chrysotile Product from the Coalinga Mine in California, Montana Talc Sourced for both Gold Bond and Clubman Body Powder, Fibrous Talc and Reduced size NIST 1866B Chrysotile Standard, dated October 9, 2023. *See* **Exhibit H**. In this 196 page report, Dr. Longo outlines in detail: 1) the microscope

12

being used at MAS – state-of-the-art Leica DM2700P microscope with infinity lens, LED light source, and a HD digital camera and monitor; 2) the asbestos standards used – RG-144 and SG-210 by which to evaluate refractive indices; 3) the samples tested; 4) tables listing the refractive indices of the structures identified; 5) an explanation of why "yellow-gold" was appropriate; 6) an analysis of the ISO 22262-1; 7) additional explanation of MAS's methodology and results as to why the structures being identified are chrysotile and not fibrous talc; and 8) and more than 175 pages of photomicrographs of the structures that serve as a basis for the report. Defendants' discussion of the ISO 22262-1 in their motion fails to acknowledge Dr. Longo's explanation of ISO 22262-1 and how that informs his findings. Nor do Defendants acknowledge Dr. Longo's response to arguments made by Dr. Su criticizing Dr. Longo's findings.

Further, several arguments made by Defendants in their motion are irrelevant to the issue at bar and are simply a distraction. For example, arguments concerning the reliability of Dr. Longo's methodology should be made in Defendants' Rule 702 briefing, not in discovery motion practice. *See, e.g.,* Motion at 1-3 (arguing that Dr. Longo's opinions are unreliable and "junk science"); *id.* at 14 (discussing whether Dr. Longo's methodology has been peer-reviewed). The PSC urges the Court to see through Defendants' manipulative tactics and identify Defendants' motion for what it is—unjustified harassment.

13

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to compel inspection of Dr. Longo's laboratory and the concurrent observation of Dr. Longo's PLM analyses as it is not permitted under Rule 34, or alternatively, is unreasonable and/or exceeds the bounds of Rule 26(b).

Dated: June 3, 2024	Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
**Plaintiffs' Co-Lead Counsel**

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
**Plaintiffs' Co-Lead Counsel**

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com
**Plaintiffs' Liaison Counsel**

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

        Respectfully submitted,

        */s/ P. Leigh O'Dell*
        P. Leigh O'Dell