**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (MAS) (RLS) |

**SPECIAL MASTER ORDER NO. 24
(DECIDING DEFENDANTS' MOTION TO COMPEL
INSPECTION OF DR. WILLIAM LONGO'S LABORATORY, DKT. NO. 32227)**

This matter is before the Special Master ("SM") on defendants' Motion to Compel Inspection of Dr. William Longo's Laboratory. The SM received plaintiffs' opposition and supplemental letter brief, defendants' reply, and recently held oral argument. For the reasons to be discussed, defendants' motion is denied.[1]

**BACKGROUND**

The parties are familiar with the background of this matter, so a detailed discussion is not necessary. Defendants' motion requests to "inspect" the laboratory of plaintiffs' expert, Dr. William Longo ("Longo"). Longo is the President and 75% owner of his lab – Material Analytical Services ("MAS"). Plaintiffs present Longo as an expert in material science who will testify as to the presence of asbestos in defendants' talc products. Longo has testified at numerous depositions and trials regarding his tests for the presence of asbestos in talc products, including a two-day deposition in this MDL. As to this case, Longo proposes to testify that his tests revealed the presence of "chrysotile" asbestos in bottles of the talc products he tested, including J&J's baby powder. No one can dispute that this testimony is directed at a central

---

[1] Defendants Johnson & Johnson and LLT Management LLC (hereinafter collectively referred to as "J&J") filed the motion. The opposition was filed by the Plaintiffs' Steering Committee.

issue in the case, *i.e.*, whether J&J's baby powder contained asbestos. Defendants correctly describe Longo's testimony as "case-defining." Reply Brief ("RB") at 1, Dkt. No. 32808. Earlier in the case, the Court ruled that Longo's polarized light microscopy ("PLM") testing was not reliable. See <u>In re Johnson & Johnson Talcum Powder Marketing, Sales Practices, and Products Litigation</u>, 509 F. Supp. 3d 116, 154-156 (D.N.J. 2020). Subsequently, Longo began using a new PLM method that he intends to rely upon at trial. Defendants' motion focuses on an inspection regarding Longo's tests using his new PLM methodology.

Defendants' motion arises from a Notice of Deposition and Inspection of Longo that defendants recently served. Given its importance, the Notice of Inspection is fully set forth:

**NOTICE OF INSPECTION PURSUANT TO F.R.C.P. 34(a)(2)**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 34(a)(2), Defendants and their designated expert(s) will inspect:

(1) the following areas of the MAS Laboratory at 3945 Lakefield Ct, Suwanee, GA 30024: (a) talc intake and/or storage area; (b) talc sample preparation area(s); (c) talc PLM analysis area(s); (d) talc TEM analysis area(s); and (e) talc SEM analysis area(s);

(2) all PLM microscopes used by MAS for its analysis of the materials referenced in requests for production 20-24;

(3) MAS's methodology for preparing the materials referenced in requests for production 20-24 for subsequent analysis by PLM for the identification of "chrysotile," including but not limited to observing in real time the preparation of one or more samples of Johnsons Baby Powder performed by MAS; and

(4) MAS's methodology for analyzing the materials referenced in requests for production 20-24 for analysis by PLM for the identification of "chrysotile." including but not limited to observing in real time the analyses performed by MAS on the samples of Johnsons Baby Powder, as well as Defendants' experts undertaking real time, contemporaneous observation of the samples on the same PLM equipment used by MAS in which MAS has previously reported, and may during the inspection report, observing "chrysotile."

The inspection by Defendants and their designated expert(s) will commence at 3945 Lakefield Ct, Suwanee, GA 30024 on May 28, 2024 at 9:00 a.m. Eastern, or at another date mutually agreed upon by the Parties. The inspection will begin with

-2-

6549944v2

>(1), (2), and the portion of (3) leading up to and concluding with the start of MAS's 72-hour centrifugation preparation step. After the 72-hour centrifugation preparation step of (3) concludes, the inspection will continue.

Subsequently, defendants narrowed their request to the following:

>1. All PLM microscopes used by MAS at 3945 Lakefield Ct., Suwanee, GA 30024 for its analysis of the materials referenced in Defendants' requests for production 20-24…;
>
>2. MAS's methodology for preparing the materials referenced in Defendants' requests for production 20-24 … for subsequent analysis by PLM for the identification of "chrysotile," including but not limited to observing in real time the preparation of one or more samples of Johnsons Baby Powder performed by MAS; and
>
>3. MAS's methodology for analyzing the materials referenced in Defendants' requests for production 20-24 …for analysis by PLM for the identification of "chrysotile," including but not limited to observing in real time the analyses performed by MAS on the samples of Johnsons Baby Powder, as well as Defendants' experts undertaking real time, contemporaneous observation of the samples on the same PLM equipment used by MAS in which MAS has previously reported, and may during the inspection report, observing "chrysotile."

Rather than asking to just inspect MAS's and Longo's lab, defendants ask for more. Defendants request an Order requiring Longo to recreate or replicate his PLM tests while their experts observe and participate in the tests. Defendants write that they "request an inspection of Dr. Longo's lab so that defense experts and Dr. Longo can look at the same particles under the same microscope." Brief at 2. Further, defendants "request an opportunity for [their] experts to observe the lab's analysis in real time, so they can make contemporaneous observation of the same samples on the same PLM equipment used by MAS." Id. Defendants argue their discovery request is authorized under Fed. R. Civ. P. 34(a)(2). They contend that the inspection is "critical" to their defense and the "only way" to accurately evaluate Longo's readings. Id. at 10, 11.

Unsurprisingly, plaintiffs object to defendants' request. They contend Rule 34(a)(2) does not authorize observation of an opposing expert's work. Plaintiffs also argue that the requested

-3-

6549944v2

inspection is "patently unreasonable and particularly disproportionate to the needs of the case," and is "highly burdensome to Dr. Longo and MAS." Opposition ("Opp.") at 6.

**DISCUSSION**

Defendants' motion will be denied. Defendants' request is unprecedented, requests irrelevant information, is unduly annoying, oppressive, and burdensome, and is disproportionate to the needs of the case.

Rule 34(a)(2) allows a party to "permit entry onto designated land … so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Nothing in the plain language of the Rule authorizes a party to require an opposing expert to recreate or replicate a test while the proponent's expert participates in and observes the re-creation. The unprecedented nature of defendants' request is evidenced by the fact that they cite no controlling case law authorizing their request. Since Longo did not do destructive testing, this line of cases cited in plaintiffs' reply brief is neither controlling nor persuasive. RB at 10-12.

The remaining cases relied upon by defendants are similarly inapposite. Defendants' reliance on Insituform Techs., Inc. v. Amerik Supplies, Inc., 2010 WL 11493292 (N.D. Ga. Feb. 19, 2010), is off base. Although the Insituform court ordered a second test at which defendants' counsel and expert could be present, the relief was a sanction and resulted from plaintiff's misleading statement that caused an incomplete inspection on the first visit to plaintiff's facility. Id. at 22. Defendants' citation to United States v. Harpham, 2015 WL 4623717 (E.D. Wash. Aug. 3, 2015), is likewise not helpful since it was a criminal case where defendant moved to vacate, set aside, or correct his sentences under 28 U.S.C. § 2255. The case did not address the relief authorized under Fed. R. Civ. P. 34. Indeed, the Federal Rules of *Civil* Procedure did not even apply. Defendants also cite to LG Phillips v. Tatung Co. of America, 2005 WL 8157908, at

-4-

*2 (C.D. Cal. Jan. 11, 2005). That case involved a routine inspection of defendants' manufacturing process. The case had nothing to do with a request to compel an opposing expert to recreate his tests while being observed by the moving party's expert.

Unlike defendants, plaintiffs cite relevant case law supporting their argument. See Teer v. L. Eng'g Env't Servs., Inc., 176 F.R.D. 206, 207 (E.D. N.C. 1997) (Rule 34 "is no authority for permitting a party to observe the action taken by another party's agents or experts to test and correct the situation that gave rise to the action."); Mancuso v. D.R.D. Towing Co., 2006 WL 889383, at *2–3 (E.D. La. March 10, 2006) (defense expert and counsel not permitted to shadow plaintiff's expert while the expert inspects the vessel on which plaintiff fell).

Portions of defendants' argument undercuts their request. Defendants contend that "Dr. Longo's methodology cannot be replicated because it is constantly in flux." Brief at 12. Defendants point out that Longo's testing method changed over time. Id. They also cite Longo's deposition testimony in this case to the effect that Longo's testing methodology changes as he does more research. Longo Dep. (5/2/24) 47:6-13. In addition, during oral argument, defendants described Longo's methodology as a "moving target" and that the methodology "keeps changing." Defendants' argument supports the Special Master's conclusion that their motion requests irrelevant information. Since Longo's methodology changes, no assurances can be given that the current testing defendants request will recreate or replicate the conditions that existed when the relevant tests were done. Those tests (approximately 34) were conducted between February 24, 2020 to February 15, 2024. This is important because, unless Longo's current testing methodology and equipment is the same or substantially similar to what existed when the tests at issue were done, the current testing is irrelevant. Defendants have not made a showing that the present condition of MAS's lab and equipment, as well as its testing

methodology, replicates the conditions at the time of the tests at issue. This renders the re-creation defendants request irrelevant.

It is well settled that, "when an expert conducts testing which purports to replicate actual events, the proponent of the evidence must show that the replication and the experiment are substantially similar." Jackson v. E-Z-GO Div. of Textron, Inc., 326 F. Supp. 3d 375, 405 (W.D. Ky. 2018) (quotation and citation omitted). Further, "[a]s a general rule, the proponent of experiments must establish a foundation for the evidence by demonstrating that the experiments were conducted under the conditions that were similar to those that existed at the time of the accident." Green v. Ford Motor Co., 2010 WL 1726620, at *2 (S.D. Ind. Apr. 29, 2010); see also Altman v. Bobcat Co., 349 Fed. Appx. 758, 763 (3rd Cir. Oct. 22, 2009) (depictions that appear to "recreate" an accident are significantly more likely to confuse the jury); Jodoin v. Toyota Motor Corp., 284 F.3d 272, 278 (1st Cir. 2002) ("[C]ourts have treated with skepticism evidence that seeks to recreate accidents."). Given defendants' acknowledgment that Longo's methodology changes, the tests defendants request are irrelevant since defendants have made no showing that the requested tests will be conducted under the same or substantially similar conditions as those that are at issue.[2]

Defendant's motion is also denied because it will create undue annoyance, oppression, and burden for plaintiffs, as well as MAS and Longo. Plaintiffs explain that the preparation and analysis of samples may proceed over two days. Opp. at 10. It is unreasonable to require plaintiffs and MAS to attend to defendants' experts for this length of time. Further, the logistics of setting up and actually conducting defendants' requested tests will undoubtedly be time

---

[2] The SM makes no finding as to whether the current test conditions are substantially similar to what previously existed. The SM is merely ruling that defendants have not shown that the conditions are similar. Regardless, even if defendants had made such a showing, the motion would be denied for the reasons discussed herein.

-6-

consuming, intrusive, and disruptive. Further, it is inevitable that disputes over the protocol to follow will take place, resulting in delays and distractions. It is unreasonable to require MAS to accommodate defendants' experts and counsel at its laboratory when the requested inspection is irrelevant and unnecessary.

In addition to being unprecedented and irrelevant, as well as unduly annoying, oppressive, and burdensome, defendants' request is disproportional to the needs of the case. The Special Master is skeptical of defendants' argument that the requested inspection is "critical" to their defense and that the "only way" to gauge the accuracy of Longo's conclusion identifying asbestos is to inspect MAS's lab. Brief at 10, 11. The same skepticism exists with regard to defendants' argument that without the requested inspection they are facing a "roadblock on further questioning." RB at 9. If this were the case, defendants' experts would not have been able to serve their comprehensive expert reports evaluating and critiquing Longo's conclusions. See Expert Reports of Drs. Ann G. Wylie and Shu-Chun Su, Dkt. No. 32807.[3] The reports provide detailed discussions critiquing Longo's conclusions, analysis, and methodology. Significantly, the reports do not mention anything about needing an inspection to evaluate Longo's work. As plaintiffs point out, Drs. Wylie and Su reviewed photomicrographs and concluded that Longo's identification of chrysotile was incorrect and unreliable. June 7, 2024 Letter Brief at 2. If an inspection of Longo's lab was critical or necessary to defendants' defense, the experts would not have been able to reach their conclusions. They also would have identified the missing information they needed to complete their analysis, which they did not do. In addition, this is the first instance where defendants requested to inspect Longo's lab. If an inspection was as important or necessary as defendants now argue, there would have been

---

[3] Defendants also engaged a third expert, Dr. Matt Sanchez, to critique Longo's work.

-7-

6549944v2

requests to inspect MAS's lab in the numerous other cases in which Longo was involved. The SM agrees with plaintiffs' conclusions that "Defendants' experts have had no problem drawing conclusions from Dr. Longo's reports, including the photomicrographs of the samples used in these reports. Defendants therefore have no need to inspect Dr. Longo's laboratory or require Dr. Longo and MAS technicians [to] repeat their PLM analysis." Id.

Defendants cannot be heard to argue that they do not have a complete record to challenge Longo's conclusions. Not only did defendants depose Longo for two days in this MDL, but they have thousands of pages of testimony from Longo's past depositions and trial testimony. In addition, over plaintiffs' objection, the Special Master recently granted defendants' request to depose Paul Hess, the MAS analysist who conducted the tests upon which Longo relies. See Dkt. No. 32817. According to defendants' motion to compel Hess's deposition, his testimony should fill in the gaps from Longo's deposition. Given the unprecedented nature of defendants' motion, defendants' request for irrelevant information, combined with defendants' lack of need for an inspection to defend their interests, and the undue burden it will cause, the SM finds that the requested inspection is disproportionate to the needs of the case.

Much of defendants' argument does not relate to the inspection of Longo's lab but instead is directed to the admissibility of Longo's testimony under Daubert and Rule 702. and the weight to be given to Longo's opinions. See, e.g., Brief at 12–14; RB at 14–15. These arguments are not appropriate at this juncture and instead should be directed to the trial judge and/or jury, as appropriate. It could not be clearer that this Order does not address the admissibility or validity of Longo's opinions or whether they pass muster under Daubert. The only issue before the Special Master is whether to grant the requested inspection. That request is denied. The admissibility of Longo's testimony will be decided by the trial judge. For this

-8-

6549944v2

reason, defendants' request to exclude Longo's PLM chrysotile testing is denied without prejudice to their right to raise the issue before the trial judge.

**CONCLUSION**

For all the reasons stated herein, it will be ordered that defendants' motion is denied.

**ORDER**

The Special Master having considered defendants' motion, plaintiffs' opposition and supplemental letter brief, and defendants' reply, and oral argument having been conducted, it is hereby ORDERED this 17th day of June, 2024, that defendants' Motion to Compel Inspection of Dr. William Longo's Laboratory is DENIED.

Dated:  June 17, 2024                              By: *s/Joel Schneider*
                                                                      Special Master
                                                                      Hon. Joel Schneider (Ret.)