# EXHIBIT 1

```
                                                          Page 1

       UNITED STATES BANKRUPTCY COURT OF NEW JERSEY
                    Case No. 23-12825
    - - - - - - - - - - - - - - - - - - x
    In re:                               :
                                         :
    LTL MANAGEMENT LLC,                  :
                                         :
                              Debtor,    :
    - - - - - - - - - - - - - - - - - - x
    LTL MANAGEMENT LLC,                  :
                                         :
                           Plaintiff,    :
                                         :
              v.                         :
                                         :
    THOSE PARTIES LISTED ON APPENDIX A   :
    TO COMPLAINT and JOHN AND JANE DOES: 
    1-1000,                              :
                                         :
                          Defendants.    :
    - - - - - - - - - - - - - - - - - - x
                                    April 17, 2023
                                    1:12 p.m.
                                    7 Times Square
                                    New York, NY




              VIDEOTAPED AND REMOTE DEPOSITION UPON
    ORAL EXAMINATION OF ANDY BIRCHFIELD, ESQ., held
    at the above-mentioned time and place, before
    Randi Friedman, a Registered Professional
    Reporter, within and for the State of New York.
```

```
                                                    Page 2                                                      Page 4
 1         A. Birchfield, Esq.                              1         A. Birchfield, Esq.
 2  APPEARANCES:                                            2  (Appearances continued.)
 3      OTTERBOURG, P.C.                                    3
        Attorneys for Proposed counsel for the                     KLEHR HARRISON HARVEY BRANZBURG, LLP
 4      official committee of talc claimants                4      Attorneys for Andy Birchfield, Esq.
 5      230 Park Avenue                                     5      10000 Lincoln Drive East, Suite 201
        New York, New York 10169                                   Marlton, New Jersey 08053
 6                                                          6
        BY:  RICHARD G. HADDAD, ESQ.                               BY:  CAROL ANN SLOCUM, ESQ.
 7                                                          7
 8                                                                          * * *
        GOLOMB SPIRT GRUNFELD                               8
 9      Attorneys for TCC                                   9
10      1835 Market Street, Suite 2900                     10
        Philadelphia, Pennsylvania 19103                   11
11                                                         12
        BY:  RICHARD M. GOLOMB, ESQ.                       13
12                                                         14
13                                                         15
        LEVIN PAPANTONIO RAFFERTY                          16
14      Attorneys for William Henry                        17
15      316 South Baylen Street                            18
        Pensicola, Florida 32502                           19
16                                                         20  ALSO PRESENT:
        BY:  CHRISTOPHER V. TISI, ESQ.                     21      Paul Baker - Videographer
17                                                                 Jerry Curran - Concierge
18                                                         22      Ted Meadows, Esq.
        BEASLEY ALLEN                                              Jim Murdica, Esq.
19      Attorneys for Alishia Landrum                      23
20      218 Commerce Street                                24
        Montgomery Alabama 36104                           25
21
        BY:  LEIGH O'DELL, ESQ.
22
23
24
25  (Appearances continued.)
                                                    Page 3                                                      Page 5
 1         A. Birchfield, Esq.                              1         A. Birchfield, Esq.
 2  (Appearances continued.)                                2          STIPULATIONS
 3      COHEN, PLACITELLA & ROTH                            3      IT IS HEREBY STIPULATED AND AGREED, by
        Attorneys for Estate of Kimberly
 4      Naranjo                                             4  and among counsel for the respective parties
 5      127 Maple Avenue                                    5  hereto, that the filing, sealing and
        Red Bank, New Jersey 07701
 6                                                          6  certification of the within deposition shall be
        BY:  CHRISTOPHER PLACITELLA, ESQ.                   7  and the same are hereby waived;
 7
 8                                                          8      IT IS FURTHER STIPULATED AND AGREED
        JOHNSON & JOHNSON                                   9  that all objections, except as to form of the
 9      Attorneys for Johnson & Johnson
10      1 Johnson & Johnson Plaza                          10  question, shall be reserved to the time of the
        New Brunswick, New Jersey 08933                    11  trial;
11
        BY:  ERIC HAAS, ESQ.                               12      IT IS FURTHER STIPULATED AND AGREED
12                                                         13  that the within deposition may be signed before
13
        SKADDEN ARPS SLATE MEAGHER & FLOM, LLP              14  any Notary Public with the same force and effect
14      Attorneys for LTL Management                       15  as if signed and sworn to before the Court.
15      One Manhattan West
        New York, New York 10001                           16           * * *
16                                                         17
        BY:  ALLISON BROWN, ESQ.
17                                                         18
18                                                         19
        WHITE & CASE, LLP
19      Attorneys for Johnson & Johnson                    20
20      555 South Flower Street, Sute 2700                 21
        Los Angeles, California 90071
21                                                         22
        BY:  GREGORY STARNER, ESQ.                         23
22          KATHRYN KUETHMAN, ESQ.
23                                                         24
24                                                         25
25  (Appearances continued.)
```

2 (Pages 2 - 5)

Page 6

1       A. Birchfield, Esq.
2       MR. VIDEOGRAPHER: Good afternoon.    13:12:46
3    We are going on the record at 1:12 p.m.    13:12:47
4    Eastern Daylight Time on Monday, April 17th,    13:12:51
5    2023.                13:12:54
6       Please note that the microphones    13:12:56
7    are sensitive and may pick up whispering and    13:12:58
8    private conversation. Please mute all    13:13:02
9    cellphones at this time.            13:13:04
10      This is Media Unit 1 of the        13:13:05
11   video-recorded deposition of Andy Birchfield    13:13:06
12   in the matter of LTL Management LLC, filed    13:13:08
13   in the United States Bankruptcy Court,        13:13:13
14   District of New Jersey, Case No. 23-12825.    13:13:14
15   This deposition is being held at Brown        13:13:21
16   Rudnick LLP, located at 7 Times Square, New    13:13:23
17   York, New York.            13:13:26
18      My name is Paul Baker and I am the    13:13:28
19   videographer. The court reporter is Randi    13:13:29
20   Friedman, and we are both from Veritext.    13:13:31
21   Appearances have been noted on the        13:13:34
22   stenographic record.            13:13:36
23      Will the court reporter please    13:13:38
24   swear in the witness.            13:13:47
25                    13:13:47

Page 7

1       A. Birchfield, Esq.
2       * * *            13:13:47
3       ANDY BIRCHFIELD, the witness        13:13:47
4    herein, having been duly sworn, was examined    13:13:47
5    and testified as follows:            13:13:47
6       * * *            13:13:47
7       EXAMINATION            13:13:47
8    BY MR. HAAS:                13:13:47
9    Q   Mr. Birchfield, good afternoon.    13:13:48
10   A   Good afternoon.            13:13:50
11   Q   My name is Eric Haas, on behalf of    13:13:50
12   Johnson & Johnson. We've met before; correct?    13:13:53
13   A   Yes.                13:13:56
14   Q   Mr. Birchfield, you're a lawyer;    13:13:56
15   right?                13:13:58
16   A   Yes.                13:13:58
17   Q   Are you affiliated with any law firm?    13:13:59
18   A   Beasley Allen Law Firm in Montgomery,    13:14:01
19   Alabama.                13:14:03
20   Q   Any other law firms?            13:14:05
21   A   No.                13:14:06
22   Q   Mr. Birchfield, which of the Beasley    13:14:08
23   Allen partners have been involved in talc    13:14:10
24   litigation or recovery of talc-related claims    13:14:14
25   against Johnson & Johnson or its affiliation?    13:14:18

Page 8

1       A. Birchfield, Esq.
2    A   You're going to test my memory here.    13:14:22
3    Certainly Leigh O'Dell and Ted Meadows. We have    13:14:24
4    had over the course of the last nine years, had a    13:14:27
5    number of law partners that have been involved as    13:14:34
6    well. David Dearing, Ryan Beatty. We've had a    13:14:36
7    former law partner, Daniel Mason Ward, was    13:14:42
8    involved. Maybe other law partners that have    13:14:46
9    been involved as well, but those are the ones    13:14:52
10   that I can think of off the top of my head.    13:14:55
11   Q   Okay. Thank you.            13:14:57
12      When I refer to talc-related        13:14:58
13   litigation or talc claims or talc litigation,    13:15:00
14   I'll be referring to the talc litigation against    13:15:03
15   Johnson & Johnson and its affiliates; okay?    13:15:07
16   A   Yes.                13:15:10
17   Q   How many individuals with talc claims    13:15:10
18   do you and/or Beasley Allen currently represent?    13:15:13
19   A   It would be approximately 11,300.    13:15:19
20   Q   Now, Mr. Birchfield, of any of those    13:15:32
21   11,300 individuals, are any of them claimants who    13:15:35
22   have not yet filed their claims in any court?    13:15:42
23   A   Yes. There would be roughly -- my    13:15:46
24   best understanding is approximately 100 that    13:15:52
25   would have been -- would have been retained    13:15:55

Page 9

1       A. Birchfield, Esq.
2    and -- during the time of the pendency of    13:16:00
3    bankruptcy, and not filed.            13:16:03
4    Q   Why were they not filed?        13:16:06
5    A   Because of the pendency of the        13:16:07
6    bankruptcy.                13:16:08
7    Q   In other words, because there was an    13:16:09
8    automatic stay --            13:16:10
9    A   Automatic stay.            13:16:11
10   Q   -- that precluded you from filing    13:16:11
11   those claims?                13:16:14
12   A   Yes.                13:16:14
13   Q   Okay. Of the 11,300 claims that    13:16:15
14   Beasley Allen represents, how many of those have    13:16:23
15   been filed in the multi-district litigation    13:16:26
16   pending in New Jersey?            13:16:29
17   A   I couldn't give you a precise number.    13:16:33
18   Approximately 5,000.            13:16:35
19   Q   So of the 11,200 claims that are    13:16:47
20   filed --                13:16:51
21   A   Let me back up.            13:16:52
22   Q   Would you like to correct that?    13:16:54
23   A   I think it would probably be closer to    13:16:55
24   6,000. My best estimate.            13:16:57
25   Q   Okay. So of the 11,200 claims that    13:17:03

|  | Page 34 |  | Page 36 |
|---|---|---|---|
| 1 | A. Birchfield, Esq. | 1 | A. Birchfield, Esq. |
| 2 | what his knowledge of his practice is.    13:43:32 | 2 | financing arrangements with respect to those    13:45:33 |
| 3 | MS. SLOCUM: That wasn't your    13:43:34 | 3 | claims?    13:45:35 |
| 4 | question. Your question was what is the    13:43:34 | 4 | A    I have no idea.    13:45:37 |
| 5 | standard practice --    13:43:36 | 5 | Q    You have no idea whatsoever whether or    13:45:39 |
| 6 | MR. HAAS: Right.    13:43:37 | 6 | not any of your counsel have any litigation    13:45:41 |
| 7 | MS. SLOCUM: -- of Beasley Allen.    13:43:38 | 7 | financing arrangements whatsoever?    13:45:43 |
| 8 | MR. HAAS: I'm asking as a fact    13:43:39 | 8 | A    No, no. If that's what you asked,    13:45:45 |
| 9 | witness. He can give me a fact opinion or    13:43:40 | 9 | then I misunderstood.    13:45:48 |
| 10 | fact testimony.    13:43:43 | 10 | Q    Okay. Can you please answer that    13:45:49 |
| 11 | BY MR. HAAS:    13:43:44 | 11 | question?    13:45:51 |
| 12 | Q    So can I please have an answer to the    13:43:44 | 12 | A    Do any of our co-counsel, yes.    13:45:51 |
| 13 | question? You want me to ask it again?    13:43:47 | 13 | Q    With respect to the talc claims.    13:45:54 |
| 14 | A    Please.    13:43:49 | 14 | A    That would be my understanding.    13:45:56 |
| 15 | Q    Based on your understanding, is it    13:43:50 | 15 | Q    Okay. Which of the firms that you    13:45:57 |
| 16 | your standard practice at Beasley Allen to obtain    13:43:50 | 16 | obtained claims from or that are co-counsel with    13:46:00 |
| 17 | claims from other firms that either aggregated    13:43:52 | 17 | you have litigation financing arrangements?    13:46:04 |
| 18 | them or otherwise obtained those claims?    13:43:57 | 18 | A    That I don't know.    13:46:08 |
| 19 | A    We would enter into co-counsel    13:44:00 | 19 | Q    You don't know any of the firms that    13:46:10 |
| 20 | agreements. I don't want to quibble over your    13:44:07 | 20 | have litigation financing arrangements?    13:46:13 |
| 21 | language, but do we obtain claims, we do enter    13:44:10 | 21 | A    Yes. I mean, I do know -- I do --    13:46:16 |
| 22 | into co-counsel, you know, agreements with    13:44:12 | 22 | it's my understanding that Allen Smith would have    13:46:19 |
| 23 | other -- with other law firms.    13:44:14 | 23 | a funding arrangement, but beyond that, I don't    13:46:28 |
| 24 | Q    Do you obtain them in any other means    13:44:18 | 24 | know of any others. I don't know one way or the    13:46:32 |
| 25 | other than a co-counsel relationship?    13:44:19 | 25 | other.    13:46:35 |
|  | Page 35 |  | Page 37 |
| 1 | A. Birchfield, Esq. | 1 | A. Birchfield, Esq. |
| 2 | A    Not that I'm aware of.    13:44:24 | 2 | Q    Of the 11,300 claims that Beasley    13:46:36 |
| 3 | Q    Okay. So what percentage of the talc    13:44:25 | 3 | Allen represents, how many of them came from    13:46:39 |
| 4 | claims that you testified earlier were referred    13:44:29 | 4 | Allen Smith?    13:46:43 |
| 5 | to you or have you obtained through these    13:44:34 | 5 | A    I don't know.    13:46:44 |
| 6 | co-counsel relationships?    13:44:37 | 6 | Q    Is it a significant percentage?    13:46:47 |
| 7 | A    I cannot give you a definitive answer.    13:44:41 | 7 | MS. SLOCUM: Objection, vague.    13:46:50 |
| 8 | It would be the majority. I mean, that's the    13:44:43 | 8 | BY MR. HAAS:    13:46:51 |
| 9 | nature of our -- you know, our practice.    13:44:47 | 9 | Q    You indicated he was one of the lead    13:46:55 |
| 10 | Q    Are you aware of any other talc claims    13:44:49 | 10 | providers of claims. I'm wondering whether he's    13:46:57 |
| 11 | that you obtained from any source other than    13:44:52 | 11 | the largest.    13:47:00 |
| 12 | co-counsel?    13:44:55 | 12 | MS. SLOCUM: Objection.    13:47:02 |
| 13 | A    Yes. I mean, there would be just    13:44:59 | 13 | Mischaracterizes, misstates testimony.    13:47:02 |
| 14 | clients that come to us directly.    13:45:02 | 14 | BY MR. HAAS:    13:47:05 |
| 15 | Q    Do you know what percentage of the    13:45:04 | 15 | Q    You can answer.    13:47:05 |
| 16 | talc claims that would be?    13:45:06 | 16 | A    No, I don't -- I don't -- I don't know    13:47:10 |
| 17 | A    I don't.    13:45:08 | 17 | how many cases would have originated from Allen    13:47:14 |
| 18 | Q    A small percentage?    13:45:08 | 18 | Smith.    13:47:18 |
| 19 | MS. SLOCUM: Objection.    13:45:11 | 19 | Q    Aside from Allen Smith, are you aware    13:47:18 |
| 20 | THE WITNESS: It wouldn't be a    13:45:15 | 20 | of whether or not any other co-counsel have    13:47:20 |
| 21 | majority. It would be less than a majority.    13:45:16 | 21 | litigation financing arrangements?    13:47:27 |
| 22 | BY MR. HAAS:    13:45:19 | 22 | A    It's my understanding that -- I mean,    13:47:39 |
| 23 | Q    To what extent, to your knowledge, did    13:45:23 | 23 | we would have, you know, some co-counsel, you    13:47:41 |
| 24 | co-counsel who have obtained the claims and    13:45:26 | 24 | know, arrangements with Mr. Onder, and Mr. Onder    13:47:44 |
| 25 | brought them to Beasley Allen have litigation    13:45:30 | 25 | would have -- it's my understanding that he has a    13:47:49 |

10 (Pages 34 - 37)

Page 54

1      A. Birchfield, Esq.
2      MS. SLOCUM: Objection.                14:05:19
3      THE WITNESS: Mr. Haas, you            14:05:24
4   understand -- you understand the evolution  14:05:26
5   of a mass tort case and, you know, and early  14:05:27
6   on, you know, there is a significant      14:05:31
7   discovery period. And then you reach a    14:05:35
8   point where you are -- you're trying more 14:05:38
9   and more cases. We were reaching that     14:05:40
10  point. We were reaching that tipping point 14:05:42
11  when the first bankruptcy here was filed.  14:05:46
12  BY MR. HAAS:                              14:05:49
13    Q    Just to be clear, let me just get an  14:05:50
14  answer to my question. From 2013 to 2021, of the  14:05:51
15  11,300 cases that Beasley Allen represents,  14:05:57
16  Beasley Allen has tried only 11?          14:06:02
17    A    I think -- approximately 11, yes.  14:06:08
18    Q    So during that time frame, Beasley 14:06:10
19  Allen has tried far less than 1 percent of the  14:06:13
20  cases it represents?                      14:06:17
21       MS. SLOCUM: Objection, asked and    14:06:19
22  answered.                                 14:06:20
23       THE WITNESS: We've tried -- we      14:06:23
24  had tried before the bankruptcy was filed. 14:06:23
25  We had tried approximately 11 cases.      14:06:26

Page 55

1      A. Birchfield, Esq.
2   BY MR. HAAS:                              14:06:32
3     Q    When you say "we have tried," just for  14:06:33
4   the record, Mr. Birchfield, you actually haven't  14:06:34
5   tried any cases; right?                   14:06:38
6     A    Me personally?                     14:06:40
7     Q    Yes.                               14:06:40
8     A    Right. That's right.               14:06:41
9     Q    And have you actually originated any  14:06:42
10  talc cases? Have you actually gone out and  14:06:45
11  spoken with the individual claimant and obtained  14:06:47
12  any --                                    14:06:50
13       MS. SLOCUM: Objection.              14:06:51
14  BY MR. HAAS:                              14:06:52
15    Q    -- talc cases?                     14:06:52
16       MS. SLOCUM: Objection.              14:06:53
17  Privileged and work product. Objection.   14:06:54
18  Don't answer the question.                14:06:58
19  BY MR. HAAS:                              14:06:59
20    Q    So you haven't tried any of the talc  14:07:01
21  cases. You're not going to answer whether you  14:07:04
22  actually originated any of them. What is it that  14:07:07
23  you actually do with respect to the talc cases?  14:07:09
24    A    What do I do?                      14:07:12
25    Q    Yeah.                              14:07:13

Page 56

1      A. Birchfield, Esq.
2     A    In respect to the -- I mean, I am  14:07:13
3   the -- I manage, you know, the mass tort section  14:07:17
4   and I supervise and manage and encourage and  14:07:22
5   support the team of lawyers working on the cases.  14:07:24
6     Q    Okay. Notwithstanding the fact that  14:07:29
7   you don't try the cases or litigate the cases,  14:07:38
8   you do engage in settlement discussions regarding  14:07:42
9   the cases; correct?                       14:07:44
10       MS. SLOCUM: Okay. I'm going         14:07:45
11  to -- objection to the lead-in. You were 14:07:46
12  stating testimony in the question.        14:07:51
13  BY MR. HAAS:                              14:07:52
14    Q    You can answer.                    14:07:52
15    A    There is a difference between saying,  14:07:53
16  you know, that I have not tried the cases and I  14:07:55
17  do not try the cases. So I was -- I was 14:07:58
18  preparing to be involved in trying the cases when  14:08:02
19  the bankruptcy -- when the bankruptcy was filed.  14:08:06
20  So I anticipated, you know, trying, you know,  14:08:10
21  cases that were set for trial when the bankruptcy  14:08:15
22  was filed. And, yes, I have engaged in, you  14:08:19
23  know, in settlement discussions. I have -- I've  14:08:26
24  done that in, you know, in other litigations as  14:08:32
25  well, where I have tried cases or not tried  14:08:35

Page 57

1      A. Birchfield, Esq.
2   cases.                                    14:08:38
3     Q    Focusing just again, so the record is  14:08:39
4   absolutely clear what we're talking about, when  14:08:41
5   we're talking about claims or talc claims or  14:08:43
6   talc-related claims or talc litigation, we're  14:08:46
7   talking about litigation against J&J and its  14:08:48
8   affiliates; okay?                         14:08:51
9     A    Yes.                               14:08:52
10    Q    So you have acted as settlement    14:08:53
11  counsel with respect to those claims?     14:08:55
12       MS. SLOCUM: Objection. You're       14:08:58
13  misstating his -- you're misstating his   14:09:01
14  testimony.                                14:09:03
15       MR. HAAS: It's a question.          14:09:04
16       MS. SLOCUM: He itemized what he     14:09:05
17  has done. He didn't call himself settlement  14:09:07
18  counsel.                                  14:09:09
19       MR. HAAS: I asked him a question.   14:09:09
20  BY MR. HAAS:                              14:09:10
21    Q    You can answer the question.       14:09:11
22       MS. SLOCUM: All right. Objection    14:09:13
23  to form.                                  14:09:13
24       THE WITNESS: Have I engaged in      14:09:16
25  settlement negotiations, you know, yes. You  14:09:19

15 (Pages 54 - 57)

Page 58

A. Birchfield, Esq.

1
2  know, have I labeled myself as settlement       14:09:22
3  counsel?  No.                                   14:09:25
4  BY MR. HAAS:                                    14:09:26
5     Q    From the time these claims were first   14:09:26
6  obtained by Beasley Allen in 2013, how many of  14:09:29
7  the talc claims have you settled?               14:09:33
8     A    None.                                   14:09:40
9     Q    So just to be clear, you have settled   14:09:40
10 none of the talc claims since 2013, you have not 14:09:43
11 tried any of the talc claims since 2013?        14:09:48
12    A    You're speaking of me personally?       14:09:52
13    Q    You personally, yes.                    14:09:53
14         Is that correct?                        14:09:56
15    A    Yes, that's true.                       14:09:56
16    Q    Okay.  Of the 11 cases that Beasley     14:09:57
17 Allen actually tried, how much was actually     14:10:00
18 recovered for the talc claimants?               14:10:04
19    A    None so far.                            14:10:07
20    Q    So let me back up and make sure I       14:10:09
21 understand your testimony.                      14:10:11
22         So since 2013, with respect to the      14:10:11
23 11,300 claims that Beasley Allen represents,    14:10:15
24 Beasley Allen has tried only 11 cases, not      14:10:19
25 recovered a dime for claimants, and not settled 14:10:26

Page 59

A. Birchfield, Esq.

1
2  any of the cases; is that fair?                 14:10:29
3     A    That's basically fair.                  14:10:44
4     Q    Thank you.                              14:10:45
5         MR. HAAS:  I'm about to go to a          14:10:47
6  new section.  Do you want to take a break?      14:10:48
7         MS. SLOCUM:  Yes.  Real quick.           14:10:50
8         MR. VIDEOGRAPHER:  Please stand          14:10:54
9  by.  The time is 2:10 p.m.  We are off the      14:10:54
10 record.                                         14:10:57
11        (Whereupon there was a brief             14:18:37
12 recess.)                                        14:18:38
13        MR. VIDEOGRAPHER:  We are back on        14:23:33
14 the record.  The time is 2:23 p.m.              14:23:34
15 BY MR. HAAS:                                    14:23:36
16    Q    Mr. Birchfield, I have one follow-up    14:23:40
17 question to our earlier discussion today.       14:23:41
18        Setting aside the cases for which        14:23:44
19 Beasley Allen has a co-counsel relationship, does 14:23:47
20 Beasley Allen have 100 percent of a fee interest 14:23:50
21 in every talc case for which it represents talc 14:23:54
22 claimants?                                      14:23:58
23    A    To the best of my -- to the best of my  14:24:04
24 knowledge, yes.                                 14:24:06
25    Q    So it's your testimony as you sit here  14:24:07

Page 60

A. Birchfield, Esq.

1
2  today that Mr. Watts has no fee interest in any 14:24:09
3  of the talc claims for which Beasley Allen does 14:24:12
4  not have a co-counsel relationship; is that     14:24:17
5  right?                                          14:24:19
6     A    That would be my -- yes.                14:24:24
7     Q    Thank you.                              14:24:26
8         Now notwithstanding the fact that        14:24:27
9  Beasley Allen has never actually reached any    14:24:30
10 settlement relating to talc claims, when, if    14:24:34
11 ever, Mr. Birchfield, did you have for the first 14:24:39
12 time discussions with Johnson & Johnson and any 14:24:43
13 of its affiliates regarding the resolution of   14:24:48
14 talc claims?                                    14:24:52
15    A    In April of 2020.                       14:24:54
16    Q    Who did you have those discussions      14:24:58
17 with?                                           14:24:59
18    A    Mr. Murdica.                            14:25:00
19    Q    Anyone else?                            14:25:03
20    A    Anyone else from Johnson & Johnson?     14:25:04
21    Q    No.  Was anyone else there involved in  14:25:06
22 the settlement negotiations?                    14:25:09
23    A    In the first discussion, it would have  14:25:13
24 been a John Cracken and Adam Pulaski.           14:25:18
25    Q    You understand that Mr. Pulaski         14:25:25

Page 61

A. Birchfield, Esq.

1
2  supports LTL's refiling and the proposed        14:25:26
3  settlement plan; correct?                       14:25:31
4     A    That's my understanding, yes.           14:25:33
5     Q    Okay.  The discussions on April --      14:25:34
6  excuse me, April 27, 2020, did not lead to a    14:25:40
7  resolution at that time; correct?               14:25:44
8     A    Correct.                                14:25:45
9     Q    Do you recall that in August and        14:25:47
10 September of 2020, you had further discussions  14:25:48
11 with Johnson & Johnson's counsel regarding a    14:25:52
12 proposal to settle all ovarian cancer claims    14:25:56
13 through the Imerys bankruptcy?                  14:26:01
14        MS. SLOCUM:  Objection.  Are you         14:26:04
15 referring to the Imerys bankruptcy              14:26:07
16 proceeding?  You're looking for settlement      14:26:11
17 discussions regarding that?                     14:26:13
18        MR. HAAS:  Do you want the               14:26:15
19 question reread?                                14:26:15
20        MS. SLOCUM:  Yes, that would be          14:26:17
21 great.                                          14:26:17
22        MR. HAAS:  I can ask it again.           14:26:18
23 BY MR. HAAS:                                    14:26:19
24    Q    Isn't it correct, Mr. Birchfield, that  14:26:20
25 in August and September of 2022 you had         14:26:23

16 (Pages 58 - 61)

Page 62

1         A. Birchfield, Esq.
2  settlement negotiations with Johnson & Johnson's   14:26:28
3  representatives in an effort to settle all        14:26:31
4  ovarian cancer claims through the Imerys          14:26:34
5  bankruptcy?                                        14:26:38
6         MR. HADDAD: Wait. What was that?    14:26:41
7         MR. HAAS: Would you like me to      14:26:45
8  ask it a third time?                              14:26:46
9         MR. HADDAD: I think you repeated    14:26:47
10  the dates, but I missed it.                       14:26:49
11  BY MR. HAAS:                                       14:26:50
12    Q   Mr. Birchfield, for the benefit of     14:26:51
13  everyone, I'll go very slow.                      14:26:54
14         Is it in fact true that in August and   14:26:56
15  September of 2020, you had discussions with       14:26:58
16  Johnson & Johnson's representatives with respect  14:27:04
17  to a proposal to settle all ovarian cancer talc   14:27:07
18  claims through the Imerys bankruptcy?             14:27:13
19    A   So I -- a couple things that I need    14:27:19
20  to -- I'm going to need to address here. I mean,  14:27:21
21  one is, it would not have been a settlement. It   14:27:24
22  would have been a settlement proposal. And, yes,  14:27:30
23  I did have -- you know, I did have discussions    14:27:34
24  with Mr. Murdica, but I can't really go beyond    14:27:38
25  that because then we're talking about, you know,  14:27:45

Page 63

1         A. Birchfield, Esq.
2  the Imerys bankruptcy and the committee -- you    14:27:47
3  know, the committee effort, and that is -- that's 14:27:50
4  confidential.                                      14:27:54
5    Q   I'm sorry. What's the nature of your   14:27:57
6  objection?                                         14:27:58
7    A   I cannot get into discussions about,   14:28:00
8  you know, the Imerys committee.                   14:28:03
9    Q   I'm not asking about the Imerys        14:28:06
10  committee. I'm asking about the settlement        14:28:08
11  proposal you just referenced.                     14:28:10
12    A   You asked me if I had a discussion    14:28:12
13  with Mr. Murdica, and I said yes. And then --     14:28:15
14  but I said going beyond that is problematic       14:28:19
15  because of the workings --                        14:28:22
16    Q   I will ask you about the settlement   14:28:25
17  proposal that you made to Mr. Murdica before you  14:28:26
18  submitted it to the Imerys bankruptcy committee,  14:28:29
19  so why don't we focus there and we can talk about 14:28:33
20  the committee, and you can make whatever -- or    14:28:37
21  your counsel can make whatever objections or      14:28:40
22  instructions she chooses.                         14:28:43
23         So it's fair to say -- let me be more  14:28:48
24  specific. On September 5th, 2020, you made a     14:28:50
25  proposal to Mr. Murdica on behalf of J&J, in his 14:28:54

Page 64

1         A. Birchfield, Esq.
2  role on behalf of J&J, to settle all the ovarian   14:29:00
3  cancer claims, both current and future, for       14:29:03
4  $3.25 billion; right?                             14:29:08
5         MR. HADDAD: Objection to the        14:29:12
6  form.                                              14:29:12
7         MS. SLOCUM: Objection.              14:29:12
8         THE WITNESS: I would have to -- I   14:29:17
9  would have to -- I can't say that with            14:29:18
10  certainty. I mean, there was -- you know,         14:29:24
11  there was a discussion, but I can't say that      14:29:26
12  with certainty.                                   14:29:29
13  BY MR. HAAS:                                       14:29:30
14    Q   Would it be helpful to see the       14:29:31
15  confidential settlement term sheet for the        14:29:35
16  resolution of talc claims that you sent to        14:29:35
17  Mr. Murdica to refresh your recollection?         14:29:38
18    A   I'll look at it if you want me to look 14:29:42
19  at it.                                             14:29:44
20    Q   Okay.                                 14:29:45
21         MR. HAAS: For the record, and for   14:30:33
22  the videographer, we are marking as               14:30:35
23  Birchfield Deposition Exhibit No. 1 what is       14:30:41
24  reflected in Tab 30 and Tab 31 of the             14:30:45
25  documents in the queue, and I ask you to put      14:30:53

Page 65

1         A. Birchfield, Esq.
2  those into the queue for public review.           14:30:57
3         MR. CONCIERGE: What's being         14:31:05
4  entered now is Exhibit 1 that has been            14:31:06
5  introduced.                                        14:31:09
6         (Exhibit Birchfield 1 was marked.)  14:31:10
7         MR. CONCIERGE: Tab 31 will be       14:31:17
8  introduced as Exhibit 2.                          14:31:18
9         (Exhibit Birchfield 2 was marked.)  14:31:19
10         MR. CONCIERGE: Both documents      14:31:40
11  should be in the marked folder and                14:31:41
12  available.                                         14:31:43
13  BY MR. HAAS:                                       14:31:55
14    Q   So, Mr. Birchfield, take a look at   14:31:56
15  what we've marked as Birchfield Deposition        14:31:58
16  Exhibit No. 1. The first document is a cover     14:32:00
17  email from yourself to Mr. Murdica dated          14:32:04
18  September 5th, 2020. It attaches a confidential  14:32:06
19  settlement term sheet dated September 4th, 2020,  14:32:14
20  that is a total of 58 pages long, including       14:32:28
21  exhibits. And when you're ready, please let me    14:32:33
22  know and I'll ask you the follow-up questions.    14:32:35
23    A   Okay.                                 14:33:53
24    Q   Okay. So let's go back to the        14:33:54
25  question that was pending.                        14:33:55

17 (Pages 62 - 65)

Page 66

A. Birchfield, Esq.

1
2      Based upon your review of the            14:33:56
3  document, Mr. Birchfield, does this reflect your   14:33:58
4  recollection that in September of 2020 you    14:34:01
5  proposed to Johnson & Johnson, through its    14:34:04
6  representative, Mr. James Murdica, to settle all   14:34:10
7  ovarian cancer claims, both current and future,   14:34:13
8  through the Imerys bankrupt bankruptcy for a   14:34:15
9  total of 3.25 billion?                         14:34:18
10    A   So I submitted -- I submitted this     14:34:23
11 proposal. That is true.                        14:34:26
12    Q   And if you look at Page 6, Section     14:34:27
13 bb., there's a number. I'll ask you again, isn't   14:34:32
14 it correct that in September of 2020, you made a   14:34:36
15 proposal to J&J to settle all ovarian cancer    14:34:40
16 claims, both current and future, for a total   14:34:43
17 amount of $3.25 billion?                       14:34:46
18    A   Yes, that is -- that's the amount     14:34:50
19 here. There are other provisions, you know, in   14:34:52
20 here that would be important as well, but yes,   14:34:54
21 that is the case. It says what it says.        14:34:59
22    Q   Are you finished?                      14:35:03
23    A   Yes.                                   14:35:04
24    Q   Indeed, the $3.25 billion that you     14:35:05
25 offered in 2020 to resolve all the ovarian cancer   14:35:09

Page 67

A. Birchfield, Esq.

1
2  claims, both current and future, is a far smaller   14:35:14
3  amount than the 6.9 billion that LTL is proposing   14:35:19
4  to resolve the ovarian cancer claims in this   14:35:25
5  matter; right?                                 14:35:27
6         MS. SLOCUM: Objection to form.         14:35:29
7         THE WITNESS: If your question is,     14:35:30
8  you know, is 3.25 less than 6. whatever,       14:35:31
9  yes, it is, but we're talking about -- we're   14:35:36
10 talking about a much different situation       14:35:39
11 today than we were in September of --          14:35:45
12 September of '20 -- you know, 2020, when       14:35:47
13 this proposal, you know, was made.             14:35:51
14         A guiding principle, a guiding        14:35:54
15 principle throughout the entire course of      14:35:57
16 settlement negotiations on my part has been    14:36:01
17 a focus on a fair and reasonable settlement    14:36:04
18 amount per claimant.                           14:36:07
19 BY MR. HAAS:                                   14:36:10
20    Q   Indeed, the $3.25 billion that you    14:36:11
21 were willing to settle all ovarian claims, both   14:36:13
22 current and future, in 2020 is less than       14:36:18
23 50 percent of what LTL is now offering to resolve   14:36:20
24 all current and future ovarian cancer claims;   14:36:26
25 correct?                                       14:36:29

Page 68

A. Birchfield, Esq.

1
2         MS. SLOCUM: Objection.                 14:36:30
3         MR. HADDAD: Objection to the          14:36:31
4  form.                                         14:36:32
5         MS. SLOCUM: Objection to form.        14:36:32
6  And it misstates what your proposal states.   14:36:33
7  BY MR. HAAS:                                  14:36:38
8     Q   You may answer the question.          14:36:39
9     A   This is a -- this is a vastly         14:36:40
10 different proposal than what is -- than what is   14:36:43
11 being proposed by J&J today.                   14:36:48
12    Q   You would agree with me that         14:36:52
13 3.25 billion is less than 50 percent of        14:36:53
14 6.9 billion; correct?                          14:36:57
15    A   That is true.                         14:37:00
16    Q   Thank you.                            14:37:01
17        So let's walk through the other      14:37:01
18 salient aspects of the proposal. In this offer   14:37:03
19 that you made, Beasley Allen was to act as     14:37:07
20 settlement counsel of record on behalf of all   14:37:10
21 lawyers that elected to participate in the     14:37:13
22 transaction, and I'll refer you to Page 7,     14:37:17
23 subsection bb., among others, if you would like.   14:37:19
24        MR. HADDAD: Objection to the form   14:37:31
25 if that was a question. If it was not a        14:37:32

Page 69

A. Birchfield, Esq.

1
2  question, then I don't object.                 14:37:35
3  BY MR. HAAS:                                   14:37:42
4     Q   Let me know when you're ready,         14:37:45
5  Mr. Birchfield.                                14:37:46
6     A   Okay. So I'm sorry, what --            14:37:48
7     Q   In your settlement proposal you       14:37:55
8  proposed to have Beasley Allen act as settlement   14:37:57
9  counsel of record acting on behalf of all other   14:37:59
10 lawyers representing participating claimants;   14:38:02
11 right?                                         14:38:04
12    A   What are you referring to?            14:38:04
13    Q   I'm asking you if that's your         14:38:05
14 understanding.                                 14:38:09
15    A   I cannot say that. There have been --   14:38:12
16 there's been a tremendous amount of, you know,   14:38:19
17 discussions between September '20 and today, and   14:38:21
18 so I just don't want to --                     14:38:28
19    Q   Let me see if I can refresh your      14:38:31
20 recollection. So if you would turn to Page 7,   14:38:33
21 subparagraph B(b), it defines settling counsel.   14:38:35
22 I'll read for the record, "Settling counsel    14:38:39
23 refers to Beasley Allen and every law firm that   14:38:43
24 agrees to this term sheet and evidences its    14:38:45
25 agreement by timely producing to Beasley Allen   14:38:50

18 (Pages 66 - 69)

|  | Page 78 |  | Page 80 |
|---|---|---|---|

Page 78

1         A. Birchfield, Esq.
2    A    That's true.                    14:47:39
3    Q    Okay. And in connection with this   14:47:40
4  proposal, you also prepared a matrix in order to   14:47:42
5  assess how the ovarian claims could be paid under   14:47:47
6  the proposed offer; correct?              14:47:54
7         MR. HADDAD: Objection to the      14:47:56
8  form.                                    14:47:56
9         THE WITNESS: Show me where you're   14:47:58
10  referring to.                           14:47:59
11  BY MR. HAAS:                            14:48:00
12   Q    I'm just asking you. Let me ask it   14:48:00
13  differently, Mr. Birchfield, to try to help move   14:48:02
14  things along.                           14:48:05
15        Do you recall that you prepared a   14:48:06
16  matrix in connection with this offer that   14:48:07
17  proposed how the ovarian claims could be paid?   14:48:11
18   A    I do not specifically remember whether   14:48:18
19  it was in connection with this or not.   14:48:22
20   Q    Do you recall at some point in time   14:48:23
21  preparing a matrix that would specify how the   14:48:24
22  ovarian cancer claims would be paid?     14:48:28
23        MS. SLOCUM: Objection on the      14:48:29
24  basis of privilege and work product, to the   14:48:31
25  extent that this pertains to a time other   14:48:34

Page 79

1         A. Birchfield, Esq.
2  than in connection with this September 4,   14:48:36
3  2020 agreement --                        14:48:39
4         MR. HAAS: It's not privileged if   14:48:41
5  he gave it to the other side.           14:48:43
6         MR. HADDAD: You have to let --   14:48:47
7  you have to let --                      14:48:49
8         MS. SLOCUM: Let me finish.        14:48:50
9         MR. HAAS: She stopped.            14:48:52
10        MR. HADDAD: No, she didn't.       14:48:53
11        MR. HAAS: It's not your role.     14:48:56
12  She can handle herself.                 14:48:56
13        MR. HADDAD: You have to stop     14:48:59
14  interrupting counsel.                   14:49:00
15        MR. HAAS: You can finish your     14:49:01
16  objection.                              14:49:02
17        MS. SLOCUM: That wasn't the       14:49:03
18  question. You asked if he ever prepared   14:49:04
19  one.                                    14:49:05
20        MR. HAAS: Yes.                    14:49:06
21        MS. SLOCUM: You're changing it   14:49:07
22  now, did he ever give one to Johnson &   14:49:08
23  Johnson. That's a different question. He   14:49:10
24  can answer that question. He's not going to   14:49:12
25  answer the first question on the basis of   14:49:14

Page 80

1         A. Birchfield, Esq.
2  work product and privilege to the extent   14:49:17
3  that it pertains to a time other than   14:49:18
4  September 4 and September 5, 2020.       14:49:21
5         MR. HAAS: Are you finished?       14:49:23
6         MS. SLOCUM: Yes.                  14:49:25
7         MR. HAAS: That's not a proper     14:49:26
8  objection. The proper objection is you   14:49:27
9  can't answer to the extent that it calls for   14:49:28
10  work product or attorney product -- attorney   14:49:31
11  product protection or some other privilege.   14:49:35
12  He can answer to the extent that it doesn't.   14:49:39
13  It doesn't to the extent that he        14:49:41
14  communicated it. So let me ask it this way   14:49:43
15  to cut through it all:                  14:49:45
16  BY MR. HAAS:                            14:49:46
17   Q    Mr. Birchfield, did there come a point   14:49:47
18  in time in which you provided to Mr. Murdica a   14:49:49
19  matrix that specified how the ovarian cancer   14:49:53
20  claims would be paid?                   14:49:57
21        MS. SLOCUM: Objection. Again,    14:49:59
22  based on privilege, because now are you   14:50:01
23  getting into the mediation? What are you   14:50:02
24  getting into? This is a privilege. We have   14:50:07
25  a mediation -- there was a mediation order.   14:50:10

Page 81

1         A. Birchfield, Esq.
2  And if this is relating to that, then you   14:50:13
3  can't go into it.                       14:50:17
4         MR. HAAS: That's interesting.    14:50:18
5  So, Counsel, let me just make sure it's very   14:50:19
6  clear on the record.                    14:50:21
7         MS. SLOCUM: Sure.                 14:50:22
8         MR. HAAS: Okay. Even though I   14:50:23
9  asked the question and he hasn't even    14:50:24
10  answered it yet, your position is that any   14:50:28
11  question relating to settlements, whether   14:50:32
12  before a bankruptcy was filed or after a   14:50:37
13  bankruptcy is filed, is subject to a     14:50:38
14  privilege of -- settlement privilege that   14:50:43
15  precludes him from answering? Is that your   14:50:45
16  position?                               14:50:47
17        MS. SLOCUM: No, not at all.       14:50:47
18        MR. HAAS: Okay. Let me ask the    14:50:48
19  question again. And if you want to instruct   14:50:49
20  him not to answer, please do so so we can   14:50:50
21  move on.                                14:50:52
22  BY MR. HAAS:                            14:50:53
23   Q    Mr. Birchfield, did there come a point   14:50:53
24  in time ever that you provided Mr. Murdica with a   14:50:55
25  matrix that specified how the ovarian claims   14:50:57

21 (Pages 78 - 81)

Page 82

         A. Birchfield, Esq.
 1
 2   would be paid?                     14:51:01
 3           MR. HADDAD:  Objection to the    14:51:03
 4   form.                              14:51:03
 5           THE WITNESS:  Yes.         14:51:04
 6   BY MR. HAAS:                       14:51:04
 7   Q    When did you do that?         14:51:05
 8   A    In January 2022.              14:51:09
 9   Q    Thank you.                    14:51:13
10       So if you turn back to Page 1 of this    14:51:15
11   term sheet, at the bottom of the page, C, it    14:51:18
12   refers to Archer.  It says Archer refers to    14:51:30
13   Archer Systems LLC.  Do you see that?    14:51:33
14   A    I do.                         14:51:36
15   Q    And if you turn to Page 3, Section V    14:51:48
16   titled Lien Resolution Administrator, it refers    14:51:56
17   to the entity appointed to resolve liens in    14:52:03
18   connection with a qualified claim submitted to    14:52:06
19   the QSF or to the trust.  "Archer shall serve as    14:52:07
20   the lien resolution administrator"; see that?    14:52:13
21   A    I see that.                   14:52:16
22   Q    So in this proposal, you proposed    14:52:17
23   Archer Systems would be the administrator; right?  14:52:20
24           MS. SLOCUM:  Objection to form.    14:52:24
25           MR. HADDAD:  Objection to the    14:52:25

Page 83

         A. Birchfield, Esq.
 1
 2   form.                              14:52:25
 3           MR. HAAS:  What was the objection    14:52:26
 4   to form, sir?  What was wrong with my    14:52:27
 5   question?                          14:52:30
 6           MR. HADDAD:  You're talking about    14:52:31
 7   who's proposing something.         14:52:32
 8           MR. HAAS:  That's not even an    14:52:34
 9   objection.                         14:52:36
10           MR. HADDAD:  Actually, that is an    14:52:36
11   objection.                         14:52:37
12           MR. HAAS:  It's not a valid    14:52:38
13   objection.                         14:52:39
14           MR. PLACITELLA:  Can you stop    14:52:45
15   acting like children?  Come on.    14:52:46
16           MR. HAAS:  There's no valid    14:52:48
17   objection whatever.                14:52:49
18           MR. PLACITELLA:  Be pleasant.    14:52:54
19           THE WITNESS:  Does it list Archer    14:52:57
20   here, yes.  Did this proposal -- did this    14:52:58
21   proposal include -- you know, include input    14:53:00
22   from me as well as from Mr. Murdica?  Yes.    14:53:04
23   So when you say, you know, that it is    14:53:08
24   Beasley Allen or Andy Birchfield that is    14:53:11
25   proposing Archer, that's not a full and    14:53:15

Page 84

         A. Birchfield, Esq.
 1
 2   accurate -- because this was -- this was a    14:53:20
 3   culmination of discussions that I and others    14:53:23
 4   had had, you know, with Mr. Murdica.  And    14:53:29
 5   this was in 2020 and it's different today.    14:53:35
 6   BY MR. HAAS:                       14:53:38
 7   Q    Mr. Birchfield, in this proposal, the    14:53:38
 8   term sheet that you sent over includes as a    14:53:44
 9   proposed lien administrator Archer Systems;    14:53:47
10   correct?                           14:53:51
11   A    That is correct.              14:53:52
12           MR. HADDAD:  Objection to the    14:53:52
13   form.                              14:53:53
14   BY MR. HAAS:                       14:53:53
15   Q    Thank you.                    14:53:53
16       Did you select Archer Systems as the    14:53:54
17   lien administrator for some nefarious reason,    14:53:57
18   such as it was the subsidiary of Fortress    14:54:00
19   Investments?                       14:54:04
20           MS. SLOCUM:  Objection.       14:54:05
21           MR. HADDAD:  Objection to the    14:54:06
22   form.                              14:54:06
23   BY MR. HAAS:                       14:54:06
24   Q    I'm not, by the way, the one who    14:54:08
25   contrived such a nefarious proposition.  We've    14:54:09

Page 85

         A. Birchfield, Esq.
 1
 2   heard that earlier today and at other times.  So    14:54:13
 3   I'm asking it in order to be responsive to the    14:54:15
 4   arguments I'm hearing from the other side of the    14:54:19
 5   table.  So let me ask it again and see if I can    14:54:21
 6   get an answer.                     14:54:23
 7       Did you propose Archer Systems for --    14:54:24
 8   because it was a subsidiary of Fortress?    14:54:26
 9           MS. SLOCUM:  Objection to form.    14:54:29
10   There's no testimony that he is the one that    14:54:30
11   selected Archer Systems.           14:54:34
12           MR. HAAS:  Let me address that    14:54:36
13   objection and see if we can move this along.    14:54:38
14   BY MR. HAAS:                       14:54:39
15   Q    In the proposed term sheet that you    14:54:39
16   agreed to and sent over to Mr. Murdica that    14:54:41
17   listed Archer Systems, did you agree to have    14:54:45
18   Archer Systems in the term sheet because it was a  14:54:48
19   subsidiary of Fortress?            14:54:52
20           MR. HADDAD:  Objection to the    14:54:54
21   form.                              14:54:54
22           THE WITNESS:  I have no idea that    14:54:57
23   Archer was a subsidiary of Fortress in 2020.    14:55:00
24   And the best of my recollection is that    14:55:05
25   Archer -- Archer was in this term sheet at    14:55:09

22 (Pages 82 - 85)

Page 86

A. Birchfield, Esq.

```
 1        Mr. Murdica's recommendation.  I'm not      14:55:13
 2   saying that that's nefarious or not.  I'm        14:55:17
 3   just telling you that this -- this term          14:55:19
 4   sheet was not the product of just something      14:55:23
 5   that I put together.  It was a culmination       14:55:30
 6   of discussions that I had had with               14:55:33
 7   Mr. Murdica along the way.                       14:55:36
 8   BY MR. HAAS:                                     14:55:37
 9       Q    Mr. Birchfield, you agreed to this      14:55:37
10   term sheet; right?  In fact, you sent it over?   14:55:39
11       A    I did send this term sheet over, yes.   14:55:41
12       Q    With the provision of having Archer     14:55:43
13   Systems in there?                                14:55:45
14       A    That's different than what you asked.   14:55:46
15       Q    That's why I'm asking the question.     14:55:49
16       A    Okay.  So yes, I did.  I did send this  14:55:51
17   term sheet to Mr. Murdica.                       14:55:54
18       Q    You had no problem with Archer Systems  14:55:56
19   being the administrator; right?                  14:55:58
20            MR. HADDAD:  Objection to form.         14:56:01
21            MS. SLOCUM:  Objection.                 14:56:01
22            THE WITNESS:  At that time I did        14:56:02
23       not.                                         14:56:03
```

Page 87

A. Birchfield, Esq.

```
 1   BY MR. HAAS:                                     14:56:03
 2       Q    Thank you.                              14:56:12
 3            The August 2020 settlement offer that   14:56:12
 4   you made to resolve all the ovarian cancer claims 14:56:15
 5   for $3.25 billion was not the last settlement    14:56:18
 6   offer you made; correct?                         14:56:23
 7            MS. SLOCUM:  Objection to form.         14:56:28
 8            MR. HADDAD:  Objection to form.         14:56:29
 9            THE WITNESS:  I mean, I just want       14:56:36
10       to be -- I mean, I just want to be, you      14:56:39
11       know, clear here.  So there are -- I mean,   14:56:40
12       at this point, you know, I was making -- I   14:56:44
13       was making, you know, a proposal.  I had     14:56:48
14       been working with Mr. Murdica putting        14:56:51
15       together a propose.  After, you know, the --  14:56:53
16       after the LTL bankruptcy, you know, was      14:56:56
17       filed, then there was a time when, you know, 14:57:00
18       I communicated -- you know, I communicated a 14:57:03
19       settlement, you know, demand on behalf of    14:57:08
20       the ovarian cancer claim representatives on  14:57:10
21       the TCC.                                     14:57:15
22            So I just want to -- I just want        14:57:16
23       to make sure, when you're talking about --   14:57:18
24       when you say "you," that it is -- at that    14:57:20
```

Page 88

A. Birchfield, Esq.

```
 1       point, it's -- I am the one who communicated 14:57:24
 2       it, but it was on behalf of the TCC, the     14:57:27
 3       ovarian cancer representatives of the TCC.   14:57:30
 4   BY MR. HAAS:                                     14:57:32
 5       Q    Are you referring to your April 2021    14:57:33
 6   offer?                                           14:57:35
 7       A    No.                                     14:57:38
 8       Q    I'm not sure which one you're           14:57:39
 9   referring to.  Which offer are you referring to? 14:57:40
10       A    There was -- in January of 2022.        14:57:44
11       Q    Okay, we'll get to that.  Before we     14:57:50
12   leave this one, just to be clear, you were       14:57:53
13   proposing this 3.25 billion resolution of all    14:57:55
14   ovarian cancer claims to be effectuated through  14:58:01
15   Imerys; correct?  The Imerys bankruptcy; correct? 14:58:06
16            MS. SLOCUM:  Objection.                 14:58:10
17            THE WITNESS:  Yes.  I was               14:58:10
18       proposing that this be submitted, you know,  14:58:11
19       to the Imerys committee for consideration,   14:58:13
20       yes.                                         14:58:16
21   BY MR. HAAS:                                     14:58:16
22       Q    And you were doing so because you were  14:58:23
23   seeking a resolution of future claims which you  14:58:25
24   understood would require channeling injunction   14:58:30
```

Page 89

A. Birchfield, Esq.

```
 1   through the Imerys bankruptcy to resolve; right? 14:58:33
 2            MS. SLOCUM:  Objection.                 14:58:37
 3            MR. HADDAD:  Instruct him not to        14:58:39
 4       answer.                                      14:58:40
 5            MR. PLACITELLA:  I have to put an       14:58:42
 6       objection on the record, respectfully.  To   14:58:43
 7       the extent that you're asking questions      14:58:45
 8       about Imerys and what happened inside        14:58:46
 9       Imerys, I have an issue with that because    14:58:49
10       I'm on the Imerys committee.                 14:58:50
11            Just let me finish.  Okay.              14:58:53
12            It's my understanding that              14:58:55
13       anything that happened under the umbrella of 14:58:56
14       the Imerys committee is subject to           14:58:59
15       confidentiality and privilege, so if that's  14:59:02
16       where you're going, then I think we're going 14:59:05
17       to have to get a ruling from the judge in    14:59:07
18       charge of everything.  If you're not going   14:59:11
19       there, I'll shut up, but it sounded like     14:59:13
20       that's where you're going.                   14:59:15
21            MR. HAAS:  It's not.  And thank         14:59:16
22       you for that.  So let me be clear, because I 14:59:17
23       already clarified at the inception of these  14:59:19
24       questions, I'm asking about the proposal he  14:59:23
```

23 (Pages 86 - 89)

Page 154

A. Birchfield, Esq.

1
2  A    They returned a verdict -- a defense           16:37:18
3  verdict. You asked me if I knew how long it took   16:37:20
4  and I said I do not know. You asserted that it     16:37:22
5  was less than an hour. I said I don't dispute      16:37:24
6  that.                                              16:37:26
7  Q    All right. We're good. Let's talk            16:37:27
8  about the Forrest case.                            16:37:29
9       Do you know where that case was tried?       16:37:30
10 A    I believe the Forrest case was also          16:37:34
11 tried in St. Louis, but I cannot say that with    16:37:38
12 certainty.                                        16:37:40
13 Q    And just before I move to the Forrest        16:37:41
14 case, in terms of the Giese, Trentman and Vogeler 16:37:44
15 case, you had co-counsel in that case; right,     16:37:47
16 sir?                                              16:37:50
17 A    Yes.                                         16:37:50
18 Q    All right. And was Ashcraft & Gerel          16:37:51
19 involved in that case with you folks? Michelle    16:37:56
20 Parfitt?                                          16:38:01
21 A    Michelle Parfitt has served as               16:38:04
22 co-counsel in some of these trials and has put on 16:38:07
23 experts. I'm not sure. I cannot say with          16:38:11
24 certainty. I believe she was involved in the      16:38:13
25 Giese trial, but I cannot say that with           16:38:15

Page 155

A. Birchfield, Esq.

1
2  certainty.                                        16:38:18
3  Q    Okay. Certainly Allen Smith was              16:38:18
4  involved; right? He opened and closed in that     16:38:20
5  case?                                             16:38:22
6  A    That's my understanding, yes.                16:38:23
7  Q    Okay. And he's the one who has the           16:38:23
8  funding from Fortress; right?                     16:38:26
9       MR. HADDAD: Objection to the                 16:38:31
10  form.                                            16:38:32
11      MS. SLOCUM: Objection to the                 16:38:32
12  form.                                            16:38:32
13      THE WITNESS: To the best of my               16:38:34
14  view, that's my understanding.                   16:38:35
15 BY MS. BROWN:                                     16:38:36
16 Q    The Forrest case, your team was also         16:38:37
17 teamed up with Allen Smith on that case as well;  16:38:41
18 right, sir?                                       16:38:44
19 A    I think that's correct.                      16:38:46
20 Q    And I thought there were also some           16:38:47
21 folks from the Onder firm, too; right?            16:38:49
22      MS. SLOCUM: Objection to form.               16:38:52
23 Is that a question?                               16:38:56
24      THE WITNESS: I believe the Onder             16:38:58
25  law firm, you know, served as local counsel.     16:38:59

Page 156

A. Birchfield, Esq.

1
2  BY MS. BROWN:                                     16:39:03
3  Q    All right. And in the Forrest case,          16:39:04
4  you and your team put before the jury a request   16:39:05
5  for medical expenses of approximately             16:39:09
6  $260,000.00; right, sir?                          16:39:11
7       MR. O'DELL: Object to the form.              16:39:14
8  Which case?                                       16:39:15
9       MS. SLOCUM: Object to the form.              16:39:16
10      MS. BROWN: We're up to Forrest.              16:39:17
11  We're going down the list.                       16:39:20
12      MS. O'DELL: Excuse me.                       16:39:22
13      MS. BROWN: No worries.                       16:39:23
14 BY MS. BROWN:                                     16:39:24
15 Q    Is that right, sir, if you look where        16:39:24
16 the Fortress line is on the chart?                16:39:27
17 A    Yes.                                         16:39:28
18 Q    All right. And that jury awarded $0;         16:39:28
19 right?                                            16:39:30
20 A    Yes.                                         16:39:30
21 Q    That was also a defense verdict in the       16:39:31
22 City of St. Louis; right?                         16:39:33
23 A    Yes.                                         16:39:35
24 Q    And in terms of the Fox, Giannecchini,       16:39:35
25 Ristesund and Slemp cases, all of those cases     16:39:40

Page 157

A. Birchfield, Esq.

1
2  were reversed on appeal; right?                   16:39:44
3  A    Yes. I mean, you know, the Fox               16:39:48
4  verdict was a 72 million-dollar verdict. The      16:39:52
5  Giannecchini, I believe, was 55. Ristesund, I     16:39:55
6  believe, was -- I believe that was 70. And        16:40:02
7  Slemp, maybe 110. I believe that's correct.       16:40:07
8  Those cases -- those cases were vacated based on  16:40:10
9  the BMS Supreme Court decision on personal        16:40:15
10 jurisdiction. But those cases -- so those cases   16:40:18
11 are refiled and currently pending.                16:40:22
12 Q    Right. But in terms of what's                16:40:25
13 important to an individual claimant, right, the   16:40:26
14 amount of money that ultimately went to these     16:40:29
15 individuals, it was $0; right, sir?               16:40:33
16      MS. BROWN: Objection to form.                16:40:36
17      MR. HADDAD: Objection.                       16:40:37
18      THE WITNESS: So far. So far.                 16:40:37
19 BY MS. BROWN:                                     16:40:38
20 Q    And the Brower case that case you            16:40:39
21 listed here for medical bills of 1.2 million      16:40:41
22 dollars; right, sir?                              16:40:44
23 A    Yes.                                         16:40:46
24 Q    All right. And that case ended in a          16:40:46
25 mistrial; right?                                  16:40:49

40 (Pages 154 - 157)

Page 214

```
 1           A. Birchfield, Esq.
 2        INDEX TO TESTIMONY
 3           EXAMINATION OF
 4  ANDY BIRCHFIELD, ESQ.           PAGE
 5  BY: Mr. Haas                    7
 6  BY: Ms. Brown                   141, 209
 7  BY: Mr. Haddad                  202
 8              * * *
 9            E X H I B I T S
10  Birchfield
    Number     Description           Page
11  Exhibit 1  Email                  65
12  Exhibit 2  Email Exchange         65
13  Exhibit 3  Press Release          126
14  Exhibit 4  Value of Ovarian Cancer Claims  144
15  Exhibit 5  Talcum Powder Verdicts 161
16  Exhibit 6  Talcum Powder          169
17  Exhibit 7  NeoTYPE Analysis Discovery  178
             Profile
18
    Exhibit 8  Susan Vogeler Document 185
19
    Exhibit 9  NCI Document           187
20
       (Exhibits were retained by reporter.)
21              * * *
```

Page 215

```
 1           A. Birchfield, Esq.
 2         MARKED QUESTIONS
 3  1) Page 117, Line 22
 4  2) Page 118, Line 20
 5  3) Page 123, Line 3
 6              * * *
```

Page 216

```
 1           A. Birchfield, Esq.
 2         C E R T I F I C A T I O N
 3      I, Randi Friedman, Registered
 4  Professional Reporter and Notary Public of the
 5  State of New York, do hereby certify:
 6      THAT, the witness whose testimony is herein
 7  before set forth, was duly sworn by me, and
 8  THAT, the within transcript is a true record of
 9  the testimony given by said witness.
10      I further certify that I am not related
11  either by blood or marriage to any of the parties
12  to this action; and that I am in no way
13  interested in the outcome of this matter.
14      IN WITNESS WHEREOF, I have hereunto set my
15  hand this 18th day of April, 2023.
```



Randi Friedman, RPR

Page 217

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: In Re: LTL Management, LLC. v.
DATE OF DEPOSITION: 4/17/2023
WITNESSES' NAME: Andy Birchfield

PAGE   LINE (S)   CHANGE   REASON

Andy Birchfield
SUBSCRIBED AND SWORN TO BEFORE ME
THIS ____ DAY OF _____, 20__.

(NOTARY PUBLIC)           MY COMMISSION EXPIRES: