# EXHIBIT 18

Richard M. Golomb
ANAPOL WEISS
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Tel: 215-985-9177
rgolomb@anapolweiss.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA LOVE, D.D.S., SHARON MURPHY, WILLIAM A. HENRY, ALISHIA GAYLE DAVIS, AND BRANDI CARL, INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS,<br><br>Plaintiffs,<br><br>v.<br><br>LLT MANAGEMENT LLC F/K/A LTL MANAGEMENT, LLC; JOHNSON & JOHNSON; JOHNSON & JOHNSON HOLDCO (NA) INC.; JANSSEN PHARMACEUTICALS, INC.; KENVUE INC.; J&J SERVICES, INC.; ROBERT WUESTHOFF; RICHARD DICKINSON; MICHELLE GOODRIDGE; JOAQUIN DUATO; THIBAUT MONGON; JOSPEH WOLK; LAURA MCFALLS; DUANE VAN ARSDALE; AND JOHN DOES 1-100,<br><br>Defendants. | Hon. Michael A. Shipp<br><br>Case No. 3:24-cv-06320 |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1, Plaintiffs request

that this Court issue a Temporary Restraining Order ("TRO") to Defendants:

(1) Temporarily restraining Defendants from filing for bankruptcy of Defendant LLT Management, LLC ("LLT")—including its proposed successor "Red River Talc LLC"—in any District other than the District of New Jersey without five days' written notice to this court and service on Plaintiffs; and,

(2) Temporarily restraining Defendants from effecting any amendment to the Funding Agreement between LLT and Defendant Johnson & Johnson Holdco (NA) without five days' notice to this Court and service of the form of proposed amendment on Plaintiffs.

Plaintiffs, through counsel, will seek to contact Defendants, through counsel who have already accepted service on behalf of all defendants, within one business day of the filing of this Motion to request Defendants' consent to entry of such a TRO. Plaintiffs respectfully request that this Court set a hearing on the requested TRO for the earliest date after June 13, 2024, to be held in the event Defendants' decline consent to entry of the requested TRO.

Plaintiffs further request that this Court Order Defendants to Show Cause why a Preliminary Injunction should not issue:

(1) Enjoining Defendants from filing for bankruptcy of LLT—including its proposed successor "Red River Talc LLC"—in any District other than the District of New Jersey;

(2) Enjoining Defendants from effecting any amendment to the Funding Agreement between LLT and Defendant Johnson & Johnson Holdco (NA) without five days' notice to this Court and service of the form of proposed amendment on Plaintiffs; and

(3) Providing other equitable relief that is just and proper.

In support of this Motion, Plaintiffs incorporate by reference their Complaint, the Verification of this Motion and the incorporated Complaint, the arguments set forth in Plaintiffs' Memorandum of

Law in Support of this Motion, the documents described in the Motion for Judicial Notice of Certain Documents, the Declaration of Richard Golomb, and all exhibits filed thereto.

Plaintiffs respectfully ask this Court to set the preliminary injunction hearing for the Court's first available date, so that a preliminary injunction might prevent irreparable harm that will plausibly follow Defendants' return date of July 26, 2024, on their announced prepackaged bankruptcy plan with intent to file a bankruptcy in an unspecified federal court in Texas.

Plaintiffs respectfully submit that they have made a clear and specific showing of good and sufficient reasons why this matter cannot be resolved through normal motion procedures. *See* L.Civ.R. 65.1(a). These reasons include the irreparable harm Plaintiffs are suffering and will continue to suffer absent a preliminary injunction, as discussed in Plaintiffs' Memorandum of Law in support of this Motion.

Dated: June 11, 2024

Respectfully submitted,

*/s Richard M. Golomb*
Richard M. Golomb
Kevin Fay
ANAPOL WEISS
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Tel: 215-985-9177
rgolomb@anapolweiss.com

*/s Christopher Tisi*
Christopher Tisi *(pro hac forthcoming)*
Mike Papantonio *(pro hac forthcoming)*
LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR, MOUGEY, P.A.
316 S. Baylen Street
Pensacola, FL  32502
Tel: 850-435-7000
ctisi@levinlaw.com
mpapantonia@levinlaw.com

3

*/s Brian A. Glasser*
Brian A. Glasser *(pro hac forthcoming)*
David Selby *(pro hac forthcoming)*
Thomas Bennett *(pro hac forthcoming)*
Todd Mathews *(pro hac forthcoming)*
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC  20007
Tel: 202-463-2101
bglasser@baileyglasser.com
dselby@baileyglasser.com
tbennett@baileyglasser.com
tmathews@baileyglasser.com

*/s P. Leigh O'Dell*
P. Leigh O'Dell *(pro hac forthcoming)*
Andy Birchfield, Jr. *(pro hac forthcoming)*
Ted G. Meadows *(pro hac forthcoming)*
David B. Byrne, III *(pro hac forthcoming)*
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL  36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
andy.birchfield@beasleyallen.com
ted.meadows@beasleyallen.com
david.byrne@beasleyallen.com

*/s Michelle A. Parfitt*
Michelle A. Parfitt *(pro hac forthcoming)*
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC  20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com

*/s Warren Burns*
Warren Burns *(pro hac forthcoming)*
Amanda Klevorn *(pro hac forthcoming)*
Natalie Earles *(pro hac forthcoming)*
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas  75202
Tel: 469-904-4550
wburns@burnscharest.com

Richard M. Golomb
ANAPOL WEISS
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Tel: 215-985-9177
rgolomb@anapolweiss.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA LOVE, D.D.S., SHARON MURPHY, WILLIAM A. HENRY, ALISHIA GAYLE DAVIS, AND BRANDI CARL, INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS,<br><br>Plaintiffs,<br><br>v.<br><br>LLT MANAGEMENT LLC F/K/A LTL MANAGEMENT, LLC; JOHNSON & JOHNSON; JOHNSON & JOHNSON HOLDCO (NA) INC.; JANSSEN PHARMACEUTICALS, INC.; KENVUE INC.; J&J SERVICES, INC.; ROBERT WUESTHOFF; RICHARD DICKINSON; MICHELLE GOODRIDGE; JOAQUIN DUATO; THIBAUT MONGON; JOSPEH WOLK; LAURA MCFALLS; DUANE VAN ARSDALE; AND JOHN DOES 1-100,<br><br>Defendants. | Hon. Michael A. Shipp<br><br>Case No. 3:24-cv-06320 |

## MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION / ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED

The Defendants have publicly announced a plan for a prepackaged bankruptcy to be filed in Texas. On June 6, 2024, the Defendants' plan was set in motion by the distribution of solicitation materials and ballots. This third bankruptcy petition in fewer than three years is

designed to evade the jurisdiction of this Court and the Third Circuit.  It is also designed to strip women of their individual right to choose—replacing personal choice with the collective action of a pre-bankruptcy vote that employs ballot-stuffing measures outside the supervision of any court.  Plaintiffs seek immediate relief.

Plaintiffs respectfully move the Court for entry of a temporary restraining order and preliminary injunction enjoining Defendants and their successors; their agents, servants, employees, independent contractors, attorneys, representatives, affiliates; and those persons or entities in active concert or participation with them from seeking a new bankruptcy forum for LLT Management LLC F/K/A LTL Management, LLC ("LLT") or from unnoticed changes to the 2023 Funding Agreement (*see* Compl. ¶ 59) that obligates Johnson & Johnson Holdco (NA) Inc. ("New JJCI") to cover liabilities in bankruptcy of LLT.  Specifically, Plaintiffs move that the TRO/PI require that any bankruptcy of LLT—including its proposed successor "Red River Talc LLC" under the Prepackaged Chapter 11 Plan of Reorganization—be filed in the District of New Jersey (if filed at all).  Plaintiffs further move that the TRO/PI prohibit new amendment to the 2023 Funding Agreement without five days' notice to this Court and service of the form of proposed amendment on Plaintiffs.

## PRELIMINARY STATEMENT

This case and a related MDL, No. 3:16-md-02738, involve tort claims by tens of thousands of women who developed cancer from use of "Johnson's Baby Powder" and "Shower to Shower" products, which Defendant Johnson & Johnson ("J&J") and related companies knowingly sold with asbestos-laden talc that they understood was carcinogenic. (*See* Compl. ¶¶ 114-74.)  The Judicial Panel on Multidistrict Litigation consolidated cases in the District of New

Jersey eight years ago.  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 220 F.Supp.3d 1356 (J.P.M.L. 2016) ("*JPMDL Order*").

The Complaint in this case details years of corporate machinations and two bad faith bankruptcy filings since 2021 that hindered and delayed justice and recovery for these victims. (*See* Compl. ¶¶ 175-273.)  Specifically, using the frauds described in the Complaint, Defendants purported by their own self-dealing to reduce the funds available to satisfy Plaintiffs' claims from $61.5 billion to $29.9 billion with new conditions.  They also achieved delay.  By attempting in two separate successive petitions to place a purpose-built entity created using the so-called "Texas Two-Step" into bankruptcy, Defendants availed themselves of Chapter 11's automatic stay provisions to seize up for nearly two years Plaintiffs' litigation on the underlying torts.

Now, Defendants have announced another prepackaged bankruptcy of a planned successor entity to LLT to be filed in an unspecified district in Texas.  (*See* Disclosure Statement for Prepackaged Plan of Reorganization of the Debtor, Golomb Decl. Ex. 5.)  The new reorganization scheme would, by Defendants' own account, cap resources available to satisfy claims at $6.475 billion (*id.* at ii.), down from the $29.9 billion in the funding agreement challenged in this case that itself resulted from a self-dealing reduction in resources from $61.5 billion.

To achieve this, Defendants are once again seeking to outrun this District, its Bankruptcy Court, and the Third Circuit—which have extensive experience with and knowledge regarding LLT, its financial structure, past corporate reconstructions, and the talc claims obtained from the bankruptcy proceedings and the MDL proceedings —and, likely more important, two prior bankruptcy cases decided in the District of New Jersey.  All to create yet more delay.  The Third

Circuit has noted that in any use of the Chapter 11 process, "claimants' pre-bankruptcy remedies—here, the chance to prove to a jury of their peers injuries claimed to be caused by a consumer product—are disrupted only when necessary." *In re LTL Mgmt., LLC*, 64 F.4th 84, 111 (3d Cir. 2023) ("*LTL Bankruptcy I*"). But extensive disruption already has occurred. And any further disruption from yet another reorganization to support a new venue is unnecessary here.

Accordingly, Plaintiffs seek injunctive relief, pursuant to this Court's inherent equitable powers and Rule 65, to prevent further fraudulent conduct designed to frustrate multiple federal court judgments in this District and this Circuit, and to delay, impair, or deny recovery for grave injuries to Plaintiffs that J&J and related Defendants knowingly caused. *See* Fed. R. Civ. P. 65.

## STATEMENT OF FACTS

The relevant facts are set forth in the Complaint and are incorporated here in full.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (2017). A movant for preliminary equitable relief "must meet the threshold for the first two most critical factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly* 858 F.3d at 179 (internal quotation marks omitted). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*.

## ARGUMENT

### I.     Plaintiffs have high likelihood of success on the merits

Plaintiffs have claimed fraudulent transfers under the law of New Jersey and other states. "The purpose of the Fraudulent Transfer Act [of New Jersey] is to prevent a debtor from placing his or her property beyond a creditor's reach." *Gilchinsky v. Nat'l Westminster Bank N.J.*, 732 A.2d 482, 488 (N.J. 1999). "Underlying the act is the notion that a debtor cannot deliberately cheat a creditor by removing his property from the jaws of execution." *Id.* (internal quotation marks omitted). The New Jersey Supreme Court has specified two elements of the claim: (1) "whether the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance" and (2) "whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor." *Id.* at 475-76.

The first prong, conveyance, is beyond dispute. To take the simplest point, the Court of Appeals observed that LLT (in its predecessor form as LTL Management LLC) had a funding agreement with other J&J companies worth at least $61.5 billion. *LTL Bankruptcy I*, 64 F.4th at 109.  It explained: "LTL has a funding backstop, not unlike an ATM disguised as a contract, that it can draw on to pay liabilities . . . ." *Id.* In the 131 minutes between the dismissal of its first bad faith bankruptcy attempt and the filing of its second bad faith bankruptcy attempt, Defendants replaced the 2021 Funding Agreement worth at least $61 billion (available both inside bankruptcy and outside bankruptcy) with a new 2023 Funding Agreement with a cap of only about $29 billion (that would be available only in bankruptcy), *see* LTL Bankruptcy II, 652 B.R. at 446. (*See* Compl. ¶¶ 56-61.)

On the second prong of intent to "defraud, delay, or hinder the creditor," the Supreme

Court of New Jersey directs courts to the "badges of fraud" enumerated in N.J. Stat. Ann. § 25:2-

26, that give rise to "an inference of intent." *Gilchinsky*, 732 A.2d at 488.[1] Indeed, a number of

those badges are self-evidently present, including:

- "The transfer or obligation was to an insider" in that Defendants unilaterally
  reduced the amount available to LLT from other J&J related companies. *See* N.J.
  Stat. Ann. § 25:2-26(a).

- Before the transfer, "the debtor had been sued or threatened with suit" in that
  Defendants were aware of the tens of thousands of suits by Plaintiffs. *See* id.
  § 25:2-26(d).

- The consideration received in the transfer was deficient, in that the stated
  maximum value of the 2023 Funding Agreement was less than half of the
  minimum value of the 2021 Funding Agreement (that is, perhaps more than $30
  billion less), while significant new conditions were imposed on its use—
  specifically, availability only in bankruptcy—while no consideration was
  apparently received for the substitution. *See* id. § 25:2-26(h).

In the first bankruptcy, the Third Circuit held that LTL's liabilities to Plaintiffs were

"massive," but considerably less than the available $61.5 draw. *LTL Bankruptcy I*, 64 F.4th at

109. Still, fraudulent transfer law affords remedies not only to those creditors with matured

---

[1] These factors also appear in the other relevant state claims under the Uniform Voidable Transactions Act
in North Carolina, *see* N.C. Gen. Stat. Ann. § 39-23.4, and the Uniform Fraudulent Transfer Act in Texas,
*see* Tex. Bus. & Com. Code § 24.005(b). The state laws provide additional authority for injunction. *See*
N.J. Stat. Ann. § 25:2-29(a)(3)(a); N.C. Gen. Stat. Ann. § 39-23.7(a)(3)(a); Tex. Bus. & Com. Code§
24.008(a)(3)(A).

claims, but also to creditors with contingent, disputed, unliquidated, or unmatured claims, such as tort victims. (*See* Compl. ¶ 3.)

As alleged in the Complaint, Defendants engaged in various steps to reduce the value of the proverbial ATM available to satisfy Plaintiff's claims. They transferred a consumer health business into a new company spun off to shareholders, and in a self-dealing transaction they replaced the 2021 Funding Agreement with a new 2023 Funding Agreement that capped funding at $29.9 billion in the more limited circumstance of bankruptcy alone.

The findings in related cases and J&J's own public announcements about its plans as it executed them demonstrate that Plaintiffs are likely to succeed in proving that Defendants performed multiple Fraudulent Transfers. *See Reilly*, 858 F.3d at 179 (requiring that showing be "significantly better than negligible but not necessarily more likely than not"). Given the narrow targeting of the requested injunction and the harm it will prevent, the threshold for likelihood of success the Court must find at this stage is modest. *See Reilly*, 858 F.3d at 178 (discussing availability of injunction when "balance of equities" favors the movant so long as the claim is plausible on the merits); *see also Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). Based on public facts alone, several badges of fraud are obvious giving rise to the requisite showing of intent and demonstrating a strong likelihood of success on Plaintiffs' claims.

## II.    Plaintiffs will suffer irreparable harm

Plaintiffs have individual cases pending for personal injury against Defendants that already have been subject to nearly two years' of stays imposed as a result of the two prior bad faith petitions for bankruptcy on behalf of LLT. They would suffer irreparable harm should Defendants move forward with their announced plans to use a new federal forum in Texas in a

yet another petition for Chapter 11, running away from the judges and courts that have heard their cases over a prolonged period.

Indeed, Defendants have litigated related cases in the District of New Jersey for eight years. In 2016, the Judicial Panel on Multidistrict Litigation granted J&J's request to select the District of New Jersey as the transferee district for the MDL litigation, over alternatives proposed by Plaintiffs. *JPMDL Order*, 220 F.Supp.3d 1356. The Order adopting J&J's preferred transferee noted that this District "is located in close proximity to a large number of state court actions pending in New Jersey and other jurisdictions on the East Coast of the United States." *Id.* at 1359. And it said: "As Johnson & Johnson is headquartered in New Jersey, relevant evidence and witnesses likely are located in the District of New Jersey." *Id.*

In October 2021, when Defendants first performed a so-called "Texas Two-Step" by executing a divisive merger under Texas Law to hive off all talc liabilities into LLT—then called LTL—they made it into a North Carolina company so it could file its first bankruptcy case in the Western District of North Carolina. But the Bankruptcy Court for the Western District of North Carolina transferred the case in the interests of justice to the District of New Jersey. *See* Order Transferring Case to the District of New Jersey, No. 21-30589 (Bankr. W.D.N.C. Nov. 16, 2021) ("2021 Transfer Order") (finding that "the Debtor is not just forum shopping; the Debtor is manufacturing forum and creating a venue to file bankruptcy" and that "the Debtor's actions indicate a preference to file bankruptcy in this district," likely due to circuit caselaw). Ultimately, in January 2023, the U.S. Court of Appeals for the Third Circuit directed dismissal of the first Chapter 11 bankruptcy filing because LTL "was not in financial distress [and so could not] show its petition served a valid bankruptcy purpose." *LTL Bankruptcy I*, 64 F.4th at 110.

9

LTL filed for bankruptcy a second time, now directly in the District of New Jersey.  (*See* Compl. ¶¶ 259-271.)  Finding that LTL still had access to "an ATM disguised as a contract" with the now-reduced value of nearly $30 billion, Chief U.S. Bankruptcy Judge Michael B. Kaplan applied the law of this Circuit and concluded that "LTL is not sufficiently financially distressed to avail itself of bankruptcy at this time."  *In re LTL Mgmt., LLC*, 652 B.R. 433, 448 (Bankr. D.N.J. 2023) ("*LTL Bankruptcy II*").

One of two inescapable harms would follow if LLT is allowed to file its announced "Red River" bankruptcy anywhere outside the District of New Jersey.

First, the result could be mere futility in the form of another venue transfer back to New Jersey, just as occurred in the first bankruptcy filing in the Western District of North Carolina. *See* 2021 Transfer Order.  Absent the injunction requested here, Plaintiffs would expect to pursue a venue transfer as in the first bankruptcy filing in North Carolina in 2021, but they would lose significant time to additional stays while a venue change motion is briefed, heard, and decided. Even to the extent that delay might not represent imminent harm in an ordinary case, at least two special factors attach here:

(a) This would be a second bite at the alternative-venue apple for Defendants, who filed a prior bankruptcy petition that a federal judge determined should be heard in New Jersey for convenience, efficiency, and avoidance of forum shopping, *see* 2021 Transfer Order; and

(b) Plaintiffs already have been harmed by automatic stay provisions of two failed bankruptcies lasting nearly two years, and as the Third Circuit said in ruling on the first failed bankruptcy, "claimants' pre-bankruptcy remedies—here, the chance to prove to a jury of their peers injuries claimed to be caused by a consumer product—

are disrupted only when necessary," *LTL Bankruptcy I*, 64 F.4th at 111, such that any

further disruption by a venue change is unnecessary and unwarranted.

Alternatively, the result could be a bankruptcy proceeding that follows the same track

heard by a U.S. Bankruptcy Judge in Texas in more or less the same way it would proceed under

a U.S. Bankruptcy Judge in the District of New Jersey. But enormous investment of judicial

resources in this case and its law would be lost. Various judges with jurisdiction in the District of

New Jersey—the Chief Bankruptcy Judge, District and Magistrate Judges, and Circuit Judges

have all heard and decided important questions in or related to the prospective third bankruptcy

filing—the most important imminent threshold question, good faith of filing, having been the

focus of many of those rulings. Again, the consequential harm to Plaintiffs would be an

irreparable and unjustifiable further delay—and, in addition, a cost to judicial resources at

prejudice to litigants generally.

Among named Plaintiffs and those in the proposed class, many are experiencing life-

shortening injuries they would show at trial were caused by Defendants. An unnecessary delay

for a successive venue change motion may cost particular Plaintiffs the irreparable harm of lost

opportunity to have their cases heard in good health or in their lifetime.

### III.    Balance of equities

In contrast to the irreparable harm of delays in months or years to Plaintiffs moving

forward with their cases, Defendants have no cognizable reason to complain of an order

requiring them to file any successive bankruptcy petition in the District of New Jersey, where

J&J is headquartered, where the MDL was consolidated at their request, and where the Chief

U.S. Bankruptcy Judge is familiar with all relevant history of the case, having heard the two

prior failed petitions. To the extent Defendants are seeking different courts, different law, or

different judges years into related litigation, the courts should not dignify Defendants' desire to change horses in midstream as a cognizable equity.

Of course, this is a complicated case involving the MDL; two bankruptcy filings, one each brought in North Carolina (before transfer to New Jersey) and in New Jersey; an important guiding decision by the U.S. Court of Appeals for the Third Circuit in the first bankruptcy and now a pending appeal in the Third Circuit on the second bankruptcy; and this class action regarding Defendants' continuing machinations to avoid liability to harmed plaintiffs through a corporate shell game and to cause delay in resolution of Plaintiffs' claims so as to apply pressure to settle (including on individuals made terminally ill by the Defendants' knowing conduct). Following from the MDL order, the critical steps moving slowly but surely toward resolution of important claims have taken place in the District of New Jersey, including in its Bankruptcy Court under Third Circuit precedents and case law. Now, Defendants seek to move all the relevant liabilities into another new company created in order to file another Chapter 11 bankruptcy in another bankruptcy court, in another state, in another circuit and district. Inescapably, the motive is forum shopping—not merely to select a court they think will be favorable to their legal theories, but also to escape the law of the Third Circuit and the law of the case.

Defendants have already taken an opportunity to seek a novel forum for their bankruptcy petition and been subject to a transfer of venue to the District of New Jersey. *See* 2021 Transfer Order. There is no justification in equity for a second.

## IV. Injunction in public interest

The modest scope of the requested injunction, which would only prevent Defendants from choosing a new forum to pursue a bankruptcy petition derived from two that have failed in the

previously-chosen forum, suggests the public interest has limited weight in this particular analysis.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (stating that when "the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties," public interest most likely to be neutral factor).

But judicial economy does bear mention.  Particular judges and courts have invested in learning the complex law, facts, and history relevant to the proposed bankruptcy proceedings, and to have that experience with the case discarded wholesale—for a new set of judges to have to learn it for the first time—would be wasteful to the public, just as it would be wasteful to Plaintiffs interest in resolution of their tort cases.

### TRO & Five Days' Notice Request for Proposed Funding Agreement Changes

Plaintiffs acknowledge their obligations under Federal Rule of Civil Procedure 65(b)(1) to "show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  The history of related cases demonstrates that Defendants will use even the briefest window of opportunity to restructure and institute new proceedings to unilaterally seek to remove assets from Plaintiffs' potential reach.  For example, during the 131 minutes LTL was outside of bankruptcy on April 4, 2023, it terminated its 2021 Funding Agreement and instituted the 2023 Funding Agreement, *see LTL Bankruptcy II*, 652 B.R. at 439-40, in some of the key conduct of fraudulent conveyance in this case.  (*See* Compl. ¶ 266.)  The TRO will provide essential protection from similar conduct.

In addition to providing a predicate basis for the TRO, such conduct justifies the five days' notice provision requested as part of the TRO/PI for any further changes to the Funding Agreement.

### CONCLUSION

13

In this action, Plaintiffs will demonstrate their claims about various fraudulent transfers designed to improperly shield assets from use to satisfy tort claims litigated to judgment or settlement. But the premise of this motion does not require any findings on the merits of those claims—it is instead based on the straightforward and fundamental principle it would be evasive and improper to file a third bankruptcy petition in another jurisdiction as Defendants have announced they plan to do. Defendants should bring any such petition to the Bankruptcy Court for the District of New Jersey and its appellate structure, not seek to end run around it.

**WHEREFORE,** Plaintiffs respectfully request a temporary restraining order and preliminary injunction in the form submitted with this Motion enjoining defendants from filing any prepackaged bankruptcy of LLT—including of its proposed successor "Red River Talc LLC" under the Prepackaged Chapter 11 Plan of Reorganization—other than in the District of New Jersey; and requiring that any new amendment to the 2023 Funding Agreement be made only following five days' notice to this Court and service of the form of proposed amendment on Plaintiffs; and such other relief as the Court deems just.

Dated: June 11, 2024                    Respectfully submitted,

                                        */s Richard M. Golomb*
                                        Richard M. Golomb
                                        Kevin Fay
                                        ANAPOL WEISS
                                        1835 Market Street, Suite 2900
                                        Philadelphia, PA 19103
                                        Tel: 215-985-9177
                                        rgolomb@anapolweiss.com

*/s Christopher Tisi*
Christopher Tisi *(pro hac forthcoming)*
Mike Papantonio *(pro hac forthcoming)*
LEVIN, PAPANTONIO, RAFFERTY, PROCTOR,
BUCHANAN, O'BRIEN, BARR, MOUGEY, P.A.
316 S. Baylen Street
Pensacola, FL 32502
Tel: 850-435-7000
ctisi@levinlaw.com
mpapantonia@levinlaw.com

*/s Brian A. Glasser*
Brian A. Glasser *(pro hac forthcoming)*
David Selby *(pro hac forthcoming)*
Thomas Bennett *(pro hac forthcoming)*
Todd Mathews *(pro hac forthcoming)*
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Tel: 202-463-2101
bglasser@baileyglasser.com
dselby@baileyglasser.com
tbennett@baileyglasser.com
tmathews@baileyglasser.com

*/s P. Leigh O'Dell*
P. Leigh O'Dell *(pro hac forthcoming)*
Andy Birchfield, Jr. *(pro hac forthcoming)*
Ted G. Meadows *(pro hac forthcoming)*
David B. Byrne, III *(pro hac forthcoming)*
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
andy.birchfield@beasleyallen.com
ted.meadows@beasleyallen.com
david.byrne@beasleyallen.com

*/s Michelle A. Parfitt*
Michelle A. Parfitt *(pro hac forthcoming)*
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC  20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com

*/s Warren Burns*
Warren Burns *(pro hac forthcoming)*
Amanda Klevorn *(pro hac forthcoming)*
Natalie Earles *(pro hac forthcoming)*
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas  75202
Tel: 469-904-4550
wburns@burnscharest.com

## CERTIFICATE OF SERVICE

On the date set forth below, the undersigned did file the within motion, together with all

supporting papers using the Court's Electronic Case Filing System, thereby serving all counsel of

record. Service of the within motion together with all supporting papers was also served on the

below counsel via email and first-class mail:

Susan M. Sharko, Esq.                  Kristen Fournier, Esq.
Faegre Drinker Biddle & Reath LLP    King & Spaulding LLP
600 Campus Drive                       1185 Avenue of the Americas, 34th Fl.
Florham Park, NJ 07932-1047       New York, NY 10036
Tel: (973) 549-7000                  Tel: (212) 556-2100
susan.sharko@faegredrinker.com     kfournier@kslaw.com

*Attorneys for Defendants*

Dated: June 11, 2024                        */s/ Richard M. Golomb*
                                           Richard M. Golomb