UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (MAS) (RLS)<br><br>Motion Day: July 1, 2024 |

*THIS DOCUMENT RELATES TO ALL CASES*

**REPLY IN SUPPORT OF THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING SUBPOENAS DIRECTED AT BEASLEY ALLEN LAW <u>FIRM, SMITH LAW FIRM, AND ELLINGTON MANAGEMENT GROUP</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................. 1

CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
 2018 WL 798731 (D. Del. Feb. 9, 2018) ...................................................................6

*Art Arkiane LLC v. Art & Soulworks LLC*,
 2020 WL 5593242 (N.D. Ill. Sept. 18, 2020)............................................................9

*Cobra Int'l, Inc. v. BCNY Int'l, Inc.*,
 2013 WL 11311345 (S.D. Fla. Nov. 4, 2013)............................................................6

*Cont'l Cirs. LLC v Intel Corp.*,
 435 F. Supp. 3d 1014 (D. Ariz. 2020) .......................................................................9

*Gbarbe v. Chevron Corp.*,
 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016)............................................................4

*Hobbs v. Am. Com. Barge Line LLC*,
 2023 WL 6276068 (S.D. Ind. Sept. 26, 2023) ...........................................................5

*In re Am. Med. Sys., Inc.*,
 2016 WL 3077904 (S.D. W. Va. May 31, 2016) ...................................................5, 6

*In re Pork Antitrust Litig.*,
 2024 WL 511890 (D. Minn. Feb. 9, 2024) .............................................................6, 7

*In re Turkey Antitrust Litig.*,
 2024 WL 1328824 (N.D. Ill. Mar. 28, 2024) ..........................................................6, 7

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
 405 F. Supp. 3d 612 (D.N.J. 2019) ..................................................................*passim*

*Ioengine, LLC v. Interactive Media Corp.*,
 1:14-cv-01571-GMS, ECF No. 148 (D. Del. Aug. 3, 2016)..................................9

*Kaplan v. S.A.C. Cap. Advisors, L.P., S.A.C.*,
 2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015).........................................................3

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
 2018 WL 466045 (W.D. Pa. Jan. 18, 2018) ........................................................9, 10

*Miller UK Ltd. v. Caterpillar, Inc.*,
 17 F. Supp. 3d 711 (N.D. Ill. 2014) ..........................................................................9

*MLC Intel. Prop. LLC v. Micron Tech., Inc.*,

    2019 WL 118595 (N.D. Cal. Jan. 7, 2019) ......................................................................3

*Nelson v. Millennium Labs., Inc.*,
    2013 WL 11687684 (D. Ariz. May 17, 2013)................................................................4

*Nimitz Techs. LLC v. CNET Media, Inc.*,
    2022 WL 17338396 (D. Del. Nov. 30, 2022) ................................................................8

*Odyssey Wireless, Inc. v. Samsung Elecs. Co.*,
    2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) ...............................................................9

*Space Data Corp. v. Google LLC*,
    2018 WL 3054797 (N.D. Cal. June 11, 2018) ..............................................................3

*United States v. Homeward Residential, Inc.*,
    2016 WL 1031154 (E.D. Tex. Mar. 15, 2016)...............................................................9

*V5 Techs. v. Switch, Ltd.*,
    334 F.R.D. 306 (D. Nev. 2019).......................................................................................4

*VHT, Inc. v. Zillow Grp., Inc.*,
    2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) ...........................................................4

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................................1

Local Rule 7.1.1 ....................................................................................................................1, 2

**Other Authorities**

Professor Keith Sharfman, *The Economic Case Against Forced Disclosure of Third Party Litigation Funding*,
    NYSBA (Feb. 11, 2022), https://nysba.org/the-economic-case-against-forced-disclosure-of-third-party-litigation-funding/ ......................................................................3

Pursuant to Federal Rules of Civil Procedure 45(d) and 26(c), Plaintiffs, by and through Plaintiffs' Steering Committee ("PSC"), submit this Reply in support of their Motion to Quash, or in the alternative, for Protective Order regarding the subpoenas issued by defendants Johnson & Johnson and LLT Management LLC on non-parties the Beasley Allen Law Firm (ECF No. 32201), the Smith Law Firm (ECF No. 32226), and Ellington Management Group (ECF No. 322215).

## INTRODUCTION

"Speculation does not justify discovery." *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 619 (D.N.J. 2019). Yet, defendants' opposition spouts the same speculation as their letter brief to support their demands for plaintiffs' counsel's documents, communications, and agreements concerning litigation financing, settlement authority, prior settlement offers, and defendants' proposed plan of reorganization. *See* Def.'s Letter Br., ECF No. 32200. Defendants have not established good cause or substantial need to warrant the disclosure of this irrelevant, disproportionate, and protected information. The subpoenas should be quashed.

## ARGUMENT

First, the subpoenas exceed the permissible scope of discovery under Rule 26(b), as they seek information that is neither relevant nor proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b). Despite defendants' insistence, Local Rule

1

7.1.1 is not dispositive of the relevance of their expansive requests. The Rule requires disclosure of the identity of funders, whether the funder's approval is necessary for settlement decisions, and the nature of the funder's financial interest when third-party litigation funding exists.[1] *See* L.R. 7.1.1(a). The Rule contemplates "additional discovery of the terms of any such agreement" only upon a showing of good cause that (1) "the non-party has authority to make material litigation decisions or settlement decisions, the interests of parties or the class (if applicable) are not being promoted or protected, or conflicts of interest exist, or" (2) "such other disclosure is necessary to any issue in the case." L.R. 7.1.1(b). Whether funding exists or not, the Rule does not sanction discovery of communications between plaintiffs' counsel and non-parties concerning settlement authority, prior settlement offers, and defendants' proposed plan of reorganization in a separate bankruptcy proceeding.

Like the cases preceding it, Rule 7.1.1 recognizes that because this information is generally irrelevant, disproportionate, and undiscoverable, there must be a sufficient showing of good cause that the discovery is appropriate in a particular case. *See, e.g., In re Valsartan*, 405 F. Supp. 3d at 615 (explaining that "rather than

---

[1] As the PSC explained in its Motion, Andy Birchfield previously testified that Beasley Allen has not used litigation funding for any talc cases before this Court, *see* Hr'g Tr. on Def.'s Mot. to Disqualify, ECF No. 32153 at 60–62, and while being deposed during the LTL-2 bankruptcy proceeding. *See* Beasley Allen Resp. Letter Br., Ex. 3, ECF No. 32251-3 at 11–13.

directing carte-blanche discovery of plaintiffs' litigation funding, the Court will Order the discovery only if good cause exists to show the discovery is relevant to claims and defenses in the case."); *Kaplan v. S.A.C. Cap. Advisors, L.P., S.A.C.*, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) (denying litigation funding discovery because "defendants did not show that the requested documents are relevant to any party's claim or defense."); *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (deciding that the court was "not persuaded" that the litigation funding discovery sought was "relevant to any party's claim."); *MLC Intel. Prop. LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (concluding that the defendant was "not entitled" to litigation funding discovery "because it is not relevant.").

Strictly enforcing this standard is important. Of course, "the last thing a party wants an adversary to know is that it cannot afford to prosecute or defend its case or that its case is not strong enough to attract much if any external funding." Professor Keith Sharfman, *The Economic Case Against Forced Disclosure of Third Party Litigation Funding*, NYSBA (Feb. 11, 2022), https://nysba.org/the-economic-case-against-forced-disclosure-of-third-party-litigation-funding/. "Adversaries who know this information can try to use it to win not on the merits, as the legal system intends, but instead through a battle of attrition." *Id*. Hence why "some objective

3

evidence" that "theories of relevance are more than just theories" is required to justify the forced disclosure of this otherwise irrelevant and undiscoverable information. *VHT, Inc. v. Zillow Grp., Inc.*, 2016 WL 7077235, at *1, 2 (W.D. Wash. Sept. 8, 2016).

Defendants do not proffer objective evidence, and their speculation and unsupported accusations do not establish good cause. *See* PSC's Mot., ECF No. 32483-1 at 6–11. *See also In re Valsartan*, 405 F. Supp. 3d at 615 ("The fact that defendants have raised no nonspeculative basis for their discovery request results in its denial."); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019) ("Mere speculation by the party seeking this discovery will not suffice."); *VHT, Inc.,* 2016 WL 7077235 at *1 ("Although Zillow poses several imaginable hypotheticals in which VHT's litigation funding scenario becomes relevant, the dearth of evidence on the record supporting Zillow's position renders that information negligibly relevant, minimally important in resolving the issues, and unduly burdensome.").

This case is not like the cases cited by defendants, in which courts have found litigation financing information relevant and discoverable. For example, in *Gbarbe v. Chevron Corporation*, litigation funding was found relevant to class counsel's adequacy where class counsel conceded to relevance and admitted that they were dependent on outside funding to represent nearly 12,600 personal injury plaintiffs. 2016 WL 4154849, at *2 (N.D. Cal. Aug. 5, 2016). This is not a class action, and

plaintiffs do not concede to relevance. In *Nelson v. Millennium Laboratories, Inc.*, litigation funding was found relevant to potential bias based on the defendant's suspicion that one of its market competitors was funding the litigation. 2013 WL 11687684, at *6 (D. Ariz. May 17, 2013). No such concern has been raised here. Further, the plaintiff in *Nelson* did not dispute that the fee agreements were relevant to potential bias. Instead, the plaintiff argued that the fee agreement was not relevant because the defendant had already received evidence of the fee agreement during a deposition. The defendant countered that the deposition testimony concerned a fee agreement for another matter unrelated to the case, which the court accepted as true in allowing the discovery.

In *Hobbs v. American Commercial Barge Line LLC*, the court held that litigation funding information was relevant "to the question of whether [the plaintiff]'s medical expenses were reasonable," which was disputed by the parties, where the defendant presented hospital billing records indicating payment by a "funding company," and the plaintiff admitted to receiving pre-settlement litigation loans. 2023 WL 6276068, at *4 (S.D. Ind. Sept. 26, 2023). Likewise, in *In re American Medical Systems, Inc.*, the defendant subpoenaed a third-party funding company that arranged and funded some of the plaintiffs' corrective surgeries. 2016 WL 3077904, at *5 (S.D. W. Va. May 31, 2016). The court determined some litigation funding discovery was relevant to "understanding the plaintiffs'

5

'motivation' to undergo corrective surgeries," "learning if the plaintiffs were 'pressed' to undergo corrective surgeries," and assessing "the 'reasonableness of the costs associated with the corrective surgeries that the plaintiffs underwent.'" *In re Valsartan*, 405 F. Supp. 3d at 618 (quoting *In re Am. Med. Sys., Inc.*, 2016 WL 3077904 at *5). These two cases are "not remotely analogous to this litigation." *In re Valsartan*, 405 F. Supp. 3d at 618. Defendants do not contend "that any contrived or unnecessary medical treatment occurred." *Id*. at 617. Nor have they "hinted at the fact that litigation funders may be funding plaintiffs' treatment" or presented "evidence that third-party funders may be unreasonably padding plaintiffs' damage claims." *Id*. at 618.

In *Cobra International, Inc. v. BCNY International, Inc.*, litigation funding was relevant to a dispute over the ownership of a patent. 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013). Similarly, *Acceleration Bay LLC v. Activision Blizzard, Inc.* was a patent case in which litigation funding was relevant to "central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [plaintiff] is an operating-company." 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018). This litigation does not involve patents and the unique issues accompanying such disputes that render litigation funding relevant. *See In re Valsartan*, 405 F. Supp. 3d at 617 ("This is not a patent case where the ownership of a patent is relevant to determining who has standing to bring the lawsuit.").

Reliance on *In re Turkey Antitrust Litigation*, 2024 WL 1328824, at *8 (N.D. Ill. Mar. 28, 2024), and *In re Pork Antitrust Litigation*, 2024 WL 511890, at *7 (D. Minn. Feb. 9, 2024), is further misplaced. The issue in *In re Turkey Antitrust Litigation* was whether an assignment agreement transferring an antitrust claim to Amory Investments, LLC, an investment vehicle, owned and controlled by a litigation funder Burford Capital, LLC, was valid or void as champertous. 2024 WL 1328824 at *8. Similarly, in *In re Pork Antitrust Litigation*, Sysco Corporation, an antitrust plaintiff, entered a litigation financing agreement with Burford Capital that gave Burford the authority to approve or disapprove of settlements. 2024 WL 511890 at *7. A dispute arose when Sysco attempted to settle with some defendants on terms Burford did not favor, and Buford refused to authorize the settlements. This led to Sysco firing its law firm for perceived disloyalty since the firm also represented Burford and several arbitration proceedings. To resolve the conflict, Sysco assigned its claims to Carina Ventures LLC, a special-purpose vehicle created and controlled by Burford, and moved to substitute Carina as the plaintiff. The court rejected the substitution, finding that "the transfer does violence to the Federal Rules of Civil Procedure's meaning of transferring an 'interest,' has caused serious practical problems in this litigation, and will allow a financer with no interest in the litigation beyond maximizing profit on its investment to override decisions made by the party that actually brought suit." *Id*. at *1. The unique circumstances of these

7

cases, including evidence of the direct transfer of claims to a litigation funder, are simply not present here.

Finally, defendants ignore the relevant context of *Nimitz Technologies LLC v. CNET Media, Inc.* and overstate its import. 2022 WL 17338396, at *3 (D. Del. Nov. 30, 2022). There, the court itself developed concerns that LLC plaintiffs in several different patent infringement cases that were represented by the same counsel had undisclosed financial relationships with the patent monetization firm IP Edge and had not complied with the court's standing order on third-party litigation funding disclosures. *Id*. Specifically, public records and assignments filed with the U.S. Patent and Trademark Office indicated connections between the LLCs involved in the litigation and IP Edge, such as email addresses linked to IP Edge and the timing of patent assignments occurring just before the initiation of lawsuits. In addition, a news article described IP Edge's practice of forming LLCs, assigning patents to them, and then launching litigation campaigns. The article identified individuals associated with Nimitz and other LLCs, reinforcing the court's concerns about transparency and the real parties in interest. Based on this evidence and more, the court ordered the production of various documents, including communications between the sole member of Nimitz and IP Edge relating to the formation of Nimitz, Nimitz's assets, Nimitz's potential scope of liability resulting from the acquisition of the patent, the settlement or potential settlement of the cases, and the prior

evidentiary hearing. The overwhelming evidence of "something untoward" in *Nimitz* distinguishes it from this case, where defendants have not provided any evidence at all. Furthermore, the documents in *Nimitz* were reviewed in camera and not required to be filed in the docket or handed over to the opposing party.

Next, many courts across the country, including within the Third Circuit, have found communications with prospective and secured litigation funders protected by the work product doctrine. *See, e.g., Art Arkiane LLC v. Art & Soulworks LLC*, 2020 WL 5593242, at *7 (N.D. Ill. Sept. 18, 2020) (noting that "courts that have examined this issue have generally held that litigation funding documents are protected by the work-product doctrine."); *Ioengine, LLC v. Interactive Media Corp.*, 1:14-cv-01571-GMS, ECF No. 148 (D. Del. Aug. 3, 2016); *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *6 (W.D. Pa. Jan. 18, 2018); *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1021 (D. Ariz. 2020); *United States v. Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016); *Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, 2016 WL 7665898, at *6 (S.D. Cal. Sept. 20, 2016). Indeed, "counsel's theories and mental impressions created to analyze [the plaintiff's] case do not necessarily cease to be protected because they may also have been prepared or used to help [the plaintiff] obtain financing." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 735 (N.D. Ill. 2014).

In *Lambeth Magnetic Structures, LLC v. Seagate Technology (US) Holdings, Inc.*, the court denied the defendants' motion to compel documents concerning the plaintiff's communications with litigation funding organizations as protected by the work product doctrine. 2018 WL 466045, at *6 (W.D. Pa. Jan. 18, 2018). The court rejected the defendants' arguments premised on the non-legal nature of the plaintiff's relationship with the funding organizations as "unavailing" because "[e]ven if the Court were to fully credit this argument and consider the relationships to be commercial, the materials nonetheless fall within work-product immunity because they were communications with Plaintiff's agents and in anticipation of litigation." *Id*. at *5.

## CONCLUSION

For the foregoing reasons, the Court should quash the subpoenas issued by defendants Johnson & Johnson and LLT Management LLC on non-parties the Beasley Allen Law Firm, the Smith Law Firm, and Ellington Management Group, or in the alternative, issue a protective order enjoining their obligations to comply with the subpoenas.

Dated: June 24, 2024    Respectfully submitted,

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701

Tel: 732-747-9003
clpacitella@cprlaw.com
***Plaintiffs' Liaison Counsel***

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
***Plaintiffs' Co-Lead Counsel***

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***

*/s/ Amanda K. Klevorn*
Amanda K. Klevorn
Natalie R. Earles
BURNS CHAREST LLP
365 Canal St., Ste. 1170
New Orleans, LA 70130
Tel: 504-799-2845
aklevorn@burnscharest.com
nearles@burnscharest.com
***Additional Counsel for Plaintiffs***

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*/s/ Amanda K. Klevorn*
Amanda K. Klevorn