# Exhibit T

Page 1

NO. 16-CI-03503              JEFFERSON CIRCUIT COURT
                             DIVISION TEN (10)


DONNA ANN HAYES                                PLAINTIFF



VS.        TRANSCRIPT OF PROCEEDINGS

        JULY 23, 2019



COLGATE-PALMOLIVE COMPANY,
ET AL.                                         DEFENDANTS



                    *   *   *


  Heard before the Hon. Angela McCormick Bisig,
Judge, Jefferson Circuit Court, Division 3,
Louisville Justice Center, Louisville, Kentucky.



                    *   *   *




              NANCY L. NUNNELLEY, R.M.R.
                 Coulter Reporting, LLC
                 East Kentucky Street
                      Suite 200
              Louisville, Kentucky  40203
                    (502) 582-1627
                 FAX: (502) 587-6299

E-MAIL:  Nnunnelley@coulterreporting.com

```
                                                              Page 2

 1                         I N D E X

 2

 3    WITNESS:  WILLIAM LONGO, Ph.D.

 4
      Direct Examination by Mr. Satterley...........    6
 5    Cross Examination by Mr. Dubin................  111
      Cross Examination by Mr. Mularczyk............  212
 6    Redirect Examination by Mr. Satterley.........  253
      Recross Examination by Mr. Dubin..............  270
 7    Recross Examination by Mr. Mularczyk..........  279
      Redirect Examination by Mr. Satterley.........  281
 8

 9    WITNESS:  LEE POYE

10
      Direct Examination by Mr. Satterley...........  283
11

12
      Reporter's Certificate Page...................  327
13

14

15                         *    *    *

16

17

18

19

20

21

22

23

24

25
```

```
 1                 A P P E A R A N C E S

 2
     FOR THE PLAINTIFF:
 3
        JOSEPH D. SATTERLEY
 4      PAUL J. KELLEY
        Satterley & Kelley
 5      8700 Westport Road, Suite 202
        Louisville, Kentucky  40242
 6      Jsatterley@satterleylaw.com
        Pkelley@satterleylaw.com
 7

 8   FOR THE DEFENDANT, COLGATE-PALMOLIVE COMPANY:

 9      MEREDITH M. SHAW
        Quinn Emanuel Urquhart & Sullivan, LLP
10      51 Madison Avenue, 22nd Floor
        New York, New York  10010
11      Meredithshaw@quinnemanuel.com

12      EDWARD M. SLAUGHTER
        Gordon Rees Scully Mansukhani
13      2200 Ross Avenue, Suite 4100 West
        Dallas, Texas  75201
14      ESlaughter@grsm.com

15      PETER M. MULARCZYK
        Foley & Mansfield
16      300 South Grand Avenue, Suite 2800
        Los Angeles, California  90017
17      Pmularczyk@foleymansfield.com

18      MATTHEW W. BREETZ
        FREDERICK R. BENTLEY
19      Stites & Harbison, PLLC
        400 West Market Street, Suite 1800
20      Louisville, Kentucky  40202
        Wbreetz@stites.com
21      Rbentley@stites.com

22

23

24

25
```

```
                                                          Page 4

 1    FOR THE DEFENDANT, JOHNSON & JOHNSON:

 2      MORTON DUBIN
        MATTHEW BUSH
 3      PAIGE PAVONE
        NINA TROVATO
 4      Orrick, Herrinngton & Sutcliffe, LLP
        51 West 52nd Street
 5      New York, New York  10019-6119
        Mdubin@orrick.com
 6      Ppavone@orrick.com
        Mbush@orrick.com
 7      Ntrovato@orrick.com

 8      R. SCOTT MASTERSON
        Lewis Brisbois Bisgaard & Smith, LLP
 9      1180 Peachtree Street, NE, Suite 2900
        Atlanta, Georgia  30309
10      Scott.Masterson@lewisbrisboiscom

11

12

13
                          ***
14

15

16

17

18

19

20

21

22

23

24

25
```

Page 177

1   at that time is that testing with those two
2   methods was the industry standard for asbestos
3   analysis at that time, and provided Scott's with a
4   reasonable basis to believe that consumer use of
5   their Libby vermiculite products did not cause any
6   significant exposure, correct?
7          A.   That's what I stated, yes.
8          Q.   And you also said that any
9   suggestion that some of these independent
10  laboratories, or Scott's, should have had the
11  knowledge or foresight to do further testing --
12  and I'm skipping a few words to -- with ATEM after
13  negative results with XRD and optical microscopy
14  in the 1970s is not reasonable or scientifically
15  valid, right?
16         A.   That is absolutely correct, for
17  Scott's --
18         Q.   Okay.
19         A.   -- Fertilizer Company.
20         Q.   And you also pointed out one of the
21  reasons why you thought -- now, they did not do --
22  or did not have done for them TEM work, right?
23         A.   That's correct.
24         Q.   Okay. And I think you believe that
25  TEM is the most sensitive method to look for

1     asbestos in trace quantities, correct?

2            A.   It is.  I asked them why they did

3     not -- they relied on their outside labs.  And

4     McCrone was their primary lab.  McCrone didn't

5     advise them to use TEM.

6            Q.   Okay.  Actually what you said is,

7     "One of the problems in the 1970s was that there

8     were very few, if any, ATEMs in commercial

9     laboratories that had the appropriate technology

10    to perform accurate trace amphibole contaminant

11    analysis," right?

12           A.   And that's true.

13           Q.   And you said that in defending

14    Scott's -- when you said that defending Scott's,

15    did you know that McCrone had a TEM?

16           A.   Yes.  McCrone had a TEM and that's

17    why I asked Ian Stewart, he was retired, why they

18    never told Scott's to do TEM when they had a TEM.

19    And Ian Stewart says, "Because there was nothing

20    there.  We didn't think it was necessary."

21         So you're asking a fertilizer company,

22    depending on other -- other -- other consultants

23    to be able to determine that.  That's why I stated

24    when they were using PLM and XRD, they were doing

25    the appropriate analysis.

1  STATE OF KENTUCKY

2  COUNTY OF JEFFERSON

3         I, NANCY L. NUNNELLEY, RMR, Notary Public,

4  State of Kentucky at Large, do hereby certify that

5  the foregoing deposition was taken at the time and

6  place stated in the caption; that the appearances

7  were as set forth in the caption; that prior to

8  giving their testimony the witness was first duly

9  sworn by me, that said testimony was taken down by me

10 in stenographic notes and thereafter reduced under my

11 supervision to the foregoing typewritten pages and

12 that said typewritten transcript is a true, accurate

13 and complete record of my stenographic notes so

14 taken.

15        I further certify that I am not related by

16 blood or marriage to any of the parties hereto and

17 that I have no interest in the outcome of captioned

18 case.

19        My commission as Notary Public expires July 10,

20 2023.

21        Given under my hand this the 24th day of

22 July, 2019, at Louisville, Kentucky.

23

24

25                                        NOTARY PUBLIC