# Exhibit X



# PohlmanUSA®
## Court Reporting and Litigation Services

William E. Longo, PH.D.

September 17, 2021

Susan L. Bonnem

vs.

Walgreen, Co., et al.

```
           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                  COUNTY DEPARTMENT - LAW DIVISION


   SUSAN L. BONNEM,              )
                                 )
           PLAINTIFF,             )
                                 )
   vs.                           ) In Re:  Asbestos
                                 ) Litigation Calender J1
                                 )
                                 ) Court No. 20 L 012414
   WALGREEN, CO., ET AL.,        )
                                 )
           DEFENDANTS.            )




                DEPOSITION OF WILLIAM E. LONGO, PH.D.
                TAKEN ON BEHALF OF THE DEFENDANTS
                       SEPTEMBER 17, 2021




           Elizabeth A. Goodwin, RPR, IL-CSR, MO-CCR
                      CSR No. 084.004310
                          CCR No. 831
```

## Page 2

```
                INDEX OF EXAMINATION
QUESTIONS BY MR. EWALD ..........................5
QUESTIONS BY MR. LARSON .........................43
QUESTIONS BY MR. ULLOA ..........................47
QUESTIONS BY MS. MICHELAU .......................78
QUESTIONS BY MR. LARSON .........................88

                INDEX OF EXHIBITS
Exhibit 1,  E-mail chain, July 22, 2021 (K. .......9
            Molyneaux to M. Cooney)
Exhibit 2,  E-mail chain, July 22, 2021 (M. ......12
            Cooney to J. Cunningham)
Exhibit 3,  MAS Invoice 7/26/21 ..................15
Exhibit 3,  Testing results  .....................52
            (Mr. Ulloa's exhibit)
Exhibit 4,  MAS chart of J&J testing, 8/7/21 .....21
Exhibit 5,  Appendix A Johnson & Johnson .........22
            Reliance and Reviewed Documents
Exhibit 6,  Dr. William Longo's Selected .........23
            Reference and Reliance Materials
Exhibit 7,  Exposure calculation .................26

      (Exhibit 1-7 marked by Mr. Ewald attached to
transcript. Exhibit 3 marked by Mr. Ulloa retained by
Mr. Ulloa.)
```

## Page 3

```
          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                  COUNTY DEPARTMENT - LAW DIVISION

SUSAN L. BONNEM,       )
                       )
       PLAINTIFF,      )
                       )
vs.                    ) In Re:. Asbestos
                       ) Litigation Calender  J1
                       )
                       ) Court No. 20 L 012414
WALGREEN, CO., ET AL., )
                       )
       DEFENDANTS.     )


          REMOTE DEPOSITION OF WILLIAM E. LONGO,
PH.D., produced, sworn, and examined on behalf of
Defendants, SEPTEMBER 17, 2021, between the hours of
9:00 (CT) in the forenoon and 11:40 (CT) in the
forenoon of that day, via Zoom, before Elizabeth A.
Goodwin, RPR, CSR NO. 084.004310, CCR No. 831.
```

## Page 4

```
                    A P P E A R A N C E S
     Attended Remotely:  Plaintiff, represented by
Mr. Michael Cooney (Mr. Charles Porretta, Mr. David
Barrett and Ms. Judith Conway) of the law firm of
Cooney & Conway, 120 North LaSalle Street Suite 3000,
Chicago, IL 60602.
     Attended remotely:  Walgreens Company, Jewell
OSCO, represented by Ms. Amy Michelau, of the law firm
of Barnes & Thornburg, LLP, One North Wacker Drive
Suite 4400, Chicago, IL 60606.

     Attended remotely:  Revlon, Inc., represented
by Mr. Edward R. Ulloa, of the law firm of Hawkins
Parnell & Young, LLP, 445 South Figueroa Street, Suite
3200 , Los Angeles, CA 90071.
     Attended remotely:  Whittaker, Clark and
Daniels, Inc, represented by Mr. Chris Larson, of the
law firm of Heyl, Royster, Voelker & Allen, 300
Hamilton Boulevard, Peoria, IL 61601.

     Attended remotely:  Johnson & Johnson,
Johnson & Johnson Consumer Companies, Inc.,
represented by Mr. H. Patrick Morris, of the law firm
of Johnson & Bell, 33 West Monroe Street Suite 2700,
Chicago, IL 60603.

     Attended remotely:  Johnson & Johnson,
Johnson & Johnson Consumer Companies, Inc.,
represented by  John Ewald, of the law firm of King &
Spalding, 1180 Peachtree Street NE, Atlanta, GA 30309.
     Attended Telephonically:  Kerr Corporation,
represented by Mr. Richard P. Tauras, of the law firm
of Swanson, Martin & Bell, LLP, 330 North Wabash Suite
3300, Chicago, IL 60611.
```

## Page 5

```
          IT IS HEREBY STIPULATED AND AGREED by and
between counsel for the Plaintiff and counsel for the
Defendants, that this remote deposition may be taken
in shorthand by Elizabeth A. Goodwin, a Registered
Professional Reporter, Illinois Certified Shorthand
Reporter, No. 084.004310, and Missouri Certified Court
Reporter, No. 831, and afterwards transcribed into
typewriting, and the signature of the witness is
waived by agreement of counsel and the witness.
                        0-0-0
          COURT REPORTER:  Doctor, would you raise
your right hand, please?
          WILLIAM E. LONGO, PH.D.,
of lawful age, being produced, sworn, and examined on
the part of the defendants, and after responding "Yes,
I do" to the oath administered by the court reporter,
deposes, and says:
                    * * * * * * * * * * * *
                        [EXAMINATION]
     BY MR. EWALD:
     Q    Dr. Longo, for the record, where are you
today?
     A    In my conference room at MAS.
     Q    And is there anyone in the room with you?
```

EXAMINATION BY MR. EWALD

**Page 30**

1  need to write it down or put it in there, but I did --
2  I did take notice of it. And those are my opinions
3  about any potential exposure from those two products.
4      Q   We talked about the exposures relating to
5  cosmetic talc, and we've talked about whether or not
6  there were any exposures to asbestos at the -- when
7  she was a dental assistant. Have you identified any
8  other potential exposures to asbestos that Ms. Bonnem
9  had?
10     A   I didn't see any -- any -- I didn't see that
11 she would have had any significant exposure. There
12 was very little remodeling, if I remember right. You
13 know, construction of the various places she lived. I
14 saw the conflict about the -- her doctor's notes that
15 I guess her boyfriend, at the time -- somewhere the
16 doctor wrote down that, you know, he would have been
17 removing or install -- removing thermal insulation.
18 And Susan said her husband, boyfriend, husband,
19 only -- boyfriend, only worked in a vitamin
20 manufacturing plant, and he worked on machinery. And
21 she does not understand how that information could
22 have been transmitted to the doctor cause that's not
23 anything he would have done. So we have two
24 conflicting opinions.

**Page 31**

1  I can't make a decision on that, you know,
2  one way or another. If the -- if he had been removing
3  asbestos-containing thermal insulation in products,
4  obviously, and brought his clothes home, obviously,
5  there would have been exposure.
6      If he worked in a vitamin plant just to make
7  sure the machines were running correctly, then, no.
8  That would have to be up to the jury to decide.
9      Q   Apart from reviewing the deposition
10 transcripts of Ms. Bonnem, did you conduct any
11 additional investigation into potential exposures for
12 asbestos?
13     A   No, I didn't feel I had to. The
14 depositions -- in the depositions, the discovery
15 portions of the depositions, the -- I felt that the
16 defense attorneys did an excellent job in exploring
17 all aspects of potential exposure. I'm not sure what
18 else I could do.
19     Q   Dr. Longo, you testified for a number of
20 days in the Prudencio case, right?
21     A   Only four-and-a-half.
22     Q   And I said -- so, the record's clear, we're
23 talking about testifying at -- you know what I meant.
24     A   Yes, I know what you meant.

**Page 32**

1      Q   I was referring to the trial, not the
2  deposition, right?
3      A   No. The trial was -- I think I was there
4  four days, four-and-a-half days. And I think some of
5  that had to do with the fact that the court was over
6  at 1:30 in the afternoon. It was one-and-a-half days
7  on direct and Mr. Dubin (phonetic) did a very thorough
8  job over his two days or so.
9      MR. LARSON: I'm sorry to interrupt. This
10 is Chris Larson.
11     Could you spell the name of that case?
12     MR. EWALD: Sure. Yeah. It's Prudencio,
13 P-r-u-d-e-n-c-i-o, out in California.
14     MR. LARSON: Thank you.
15     MR. EWALD: No problem.
16     Q   (By Mr. Ewald) And are you aware that
17 Dr. Sanchez testified in that Prudencio matter after
18 you gave testimony?
19     A   Yes.
20     Q   And have you reviewed Dr. Sanchez's trial
21 testimony in the Prudencio case?
22     A   I have not.
23     Q   Have you reviewed any reports -- withdrawn.
24     Are you aware of Dr. Sanchez's discussion in

**Page 33**

1  the context of your -- MAS's POM Colorado School of
2  Mines' analysis of the need for white balancing in the
3  photographs taken of that analysis? Have you heard
4  anything about that?
5      A   I heard about the white balancing.
6      Q   And before you get there, where did you hear
7  about it?
8      A   Mr. Satterley told me.
9      Q   Okay.
10     A   He said that he had criticism on the white
11 balancing, that the colors were off on the
12 photographs, and that he still sticks by his opinion
13 that I misidentified fibrous talc. He acknowledged
14 that the refractive indices for the -- for the
15 chrysotile was in the range that's expected, and that
16 the error was in that the colors were wrong, the
17 wavelengths assigned to the various dispersion colors
18 were wrong.
19     The white balancing is unclear, that's not
20 done with the camera. It's -- the white balancing
21 is -- is done when you line up -- you line up the
22 Köhler -- first thing you do with the PLM scope is you
23 line it up so you have the -- they call it the Köhler
24 optics so there's really no white balancing. It's --

9 (Pages 30 to 33)

EXAMINATION BY MR. EWALD

1   that was kind of out -- to us, kind of out of left
2   field.
3           The system we have now, the cameras are
4   auto -- you know, the microscope and everything and
5   stuff is all automated. And as for looking at colors
6   of a photo -- off a photograph, very rarely do you get
7   the dispersion colors on the photograph to be exactly
8   the same as what you see in the microscope and now on
9   the monitor. So, you are -- the dispersion colors are
10  only as good as your color copier. So these were --
11  his criticisms were not anything that I thought was
12  authoritative or caused me to have any thoughts about
13  what we're identifying as Chrysotile.
14      Q   So, I wasn't clear from that answer on -- at
15  least one part, which is, are you stating that your
16  PLM microscope uses a white balance to correct the
17  white source of the image or not?
18      A   Well, the microscopes we used in the past,
19  no. You just lined it up and, you know, made sure you
20  have the -- the light going through the apertures as
21  it's supposed to. The new ones do, but it's not
22  something that's necessary because it's got LED
23  lights, and you can't -- and you can't make a
24  determination. No -- no PLM microscopist would try to

34

1   determine the actual wavelengths of the dispersion
2   colors by looking at a photograph. You can get in the
3   general area because you don't -- they're never
4   reproduced to the level of what you see in the
5   microscope. So, it's not something that you should --
6   that's done. So, what his -- his criticism, you know,
7   didn't -- I did not find it very authoritative to
8   suggest that something was amiss with our
9   identification of the chrysotile.
10      Q   And so, if I'm understanding your testimony,
11  your current PLM microscope has the ability to correct
12  the white balance but is not something that you
13  believe is necessary?
14      A   Correct.
15          If you're not doing -- if you're not using
16  polar -- you know, the dispersion's staining as long
17  as it's lined up properly. Now if you're using that
18  microscope for something else without any cross polars
19  and you wanted to adjust the white background, yes,
20  you can do something with it, but it's not necessary.
21  And nobody's even heard of that that I've asked -- you
22  know, I've asked my group here, and nobody has even
23  heard of that for dispersion staining it in polarized
24  light microscopy that you have to go in and white

35

1   balance the camera.
2       Q   And since hearing about Dr. Sanchez's
3   testimony about white balancing from Mr. Satterley,
4   have -- has anyone at MAS conducted any, I guess,
5   experiments to see what would happen if you used the
6   white balancing on the PLM images of dispersion
7   staining?
8       A   No.
9           It's -- it's unclear how you make that --
10  you make that observation that it's not white balanced
11  when you're looking at dispersion staining
12  photographs. It's -- you know, I don't know that.
13  Maybe Dr. Sanchez, you know, is just ignorant of it,
14  and maybe Dr. Sanchez can explain that further maybe
15  at his next deposition.
16      Q   All right. You also recently testified at
17  trial in the Johnson case, right?
18      A   Yes, sir.
19      Q   And I want to just ask you this morning
20  about one piece of testimony. And it was --
21  potentially, you said you don't get fibrous talc
22  unless you have asbestos amphiboles or chrysotile in
23  the mine. Does that sound familiar?
24      A   Yes.

36

1       Q   And at first, can you explain a little bit
2   more what you mean by that; and, if you don't mind,
3   what you are relying on for that opposition?
4       A   The transformation of amphibole asbestos
5   into fibrous talc is a metamorphic procedure, you
6   know, geologically. That -- so that over time, and
7   again, as I'm routinely reminded in trial, I'm not a
8   geologist, I just read some of the papers, that
9   fibrous talc is not a naturally-forming talc geometry
10  when it all formed on how many billions of years ago.
11  And we routinely find things like in a half
12  chrysotile, half talc, or some portion of
13  anthophyllite in fibrous talc or some portion of
14  tremolite in fibrous talc.
15          So, in order to have fibrous talc, you have
16  to have some asbestiform amphibole to go through the
17  metamorphic process. At least that's what's in the
18  scientific papers. I think Bevlin (phonetic) wrote
19  about that. You know, these transitional fibers, that
20  some people like to call them, are not formed that
21  way. It's a metamorphic process over time.
22      Q   You identified in your answer Bevlin. Are
23  there any other sources you rely on for that
24  proposition?

37

10 (Pages 34 to 37)

EXAMINATION BY MR. LARSON

```
 1   cell to build the virus particle.  It only builds one
 2   thing, and those are those little spikes.
 3         This technology was developed over 12 years
 4   ago for the SARS, and it was tested, and they were
 5   ready to go.  And they did, you know, started doing
 6   populations of people and SARS went away, so it was
 7   shelfed.
 8         When this hit, they pulled it back out.  And
 9   the only new technology they've had is the vax that
10   they grow up the bacteria.  Most of your reaction
11   unless you -- unless you have high-allergic problems
12   where you have to carry an EPI pen, and even then
13   they'll make you wait 15 minutes to see if you start
14   going into anaphylactic shock or not, and then they
15   just give you an injection and you're fine.  There's
16   no side effects.  There's no lasting anything.
17      Q   Right.
18      A   The amount of misinformation on the web is
19   just mind boggling to me.
20      Q   All right.
21      A   If you haven't had it, please go get it.
22   Please.
23      Q   And you would recommend that those who are
24   not vaccinated get it from any of the companies that
                                                        90
```

```
 1   manufacture; meaning, Pfizer, Moderna or J&J, right?
 2      A   Yeah, it didn't matter to me who -- what was
 3   available when I went and could.  It just so happens
 4   it was one of the two.  And the only time I had a
 5   reaction was the second shot.  I knew that was going
 6   to happen because I still had antibodies from when I
 7   was sick.  So, you'll -- I felt like I was coming down
 8   with the flu.  I had a 100-degree temperature that
 9   started that night.  By the next morning, I felt fine.
10      Q   And you would trust any of the three
11   company's vaccine, correct?
12      A   Absolutely.
13      Q   Okay.  That's all I have, thanks a lot.
14      A   You're welcome.
15         MR. COONEY:  All right.  Now I think that's
16   everybody.
17         Dr. Longo, thank you very much for your time
18   today.
19         THE WITNESS:  Thank you.  I'd like to just
20   thank the attorneys that were doing discovery for
21   acting professional.  It always makes it a better
22   process when we are all professional to each other.
23         MR. COONEY:  Couldn't agree more.  Thank
24   you, Doctor.
                                                        91
```

```
 1         Elizabeth, thank you.  We will waive
 2   signature for this.
 3         (Whereupon signature was waived, and
 4         the deponent was excused.)
 5         (Exhibits from Mr. Ewald were attached
 6         to the transcript.)
                                                        92
```

```
 1              REPORTER CERTIFICATE
 2   I, Elizabeth A. Goodwin, RPR, MO-CCR,
     IL-CSR, do hereby certify that there came before me
 3   via ZOOM,
 4
 5         WILLIAM E. LONGO, PH.D.,
 6   who was by me first duly sworn; that the witness was
     carefully examined, that said remote deposition was
 7   reported by myself, translated and proofread using
     computer-aided transcription, and the above transcript
 8   of proceedings is a true and accurate transcript of my
     notes as taken at the time of the remote deposition of
 9   this witness.
10         I further certify that I am neither attorney
     nor counsel for nor related nor employed by any of the
11   parties to the action in which this remote deposition
     is taken; further, that I am not a relative or
12   employee of any attorney or counsel employed by the
     parties hereto or financially interested in this
13   action.
14         Dated this 19th day of September, 2021.
15
16
            _____
17          ELIZABETH A. GOODWIN, RPR, MO-CCR, IL-CSR
18
19
20
21
22
23
24
                                                        93
```

24 (Pages 90 to 93)