# Exhibit AG

Case 3:16-md-02738-MAS-RLS   Document 32872-35   Filed 07/01/24   Page 2 of 41 (1 - 4)
PageID: 186908
Matthew Streck, et al. v. Johnson & Johnson, et al.
William E. Longo, Ph.D.

### Page 1

NO. 21-CI-06290      JEFFERSON CIRCUIT COURT
                     DIVISION FOUR (4)
                     JUDGE JULIE KAELIN

MATTHEW STRECK, Individually, et al.      PLAINTIFFS

V.      VIDEO DEPOSITION FOR THE DEFENDANTS

JOHNSON AND JOHNSON, et al.      DEFENDANTS

*  *  *

DEPONENT: WILLIAM E. LONGO, Ph.D.

DATE:     MAY 16, 2023

*  *  *

                ELLEN L. COULTER
         REGISTERED PROFESSIONAL REPORTER
              COULTER REPORTING, LLC
              101 East Kentucky Street
                    Suite 200
              Louisville, Kentucky  40203
                 (502) 582-1627
              FAX:  (502) 587-6299
         E-MAIL: Ecoulter@coulterreporting.com

### Page 2

                  INDEX

Examination by Mr. Williams .................... 7
Examination by Ms. Browning .................... 77
Examination by Mr. Vives ....................... 78
Examination by Mr. Smith ....................... 150
Reporter's Certificate ......................... 152

                EXHIBITS

Deposition Exhibit No. 1 ...................... 12
   (January 19, 2023 letter to William E.
   Longo, Ph.D., from Joseph D. Satterley)

Deposition Exhibit No. 2 ...................... 20
   (Plaintiffs' Expert Witness Disclosure)

Deposition Exhibit No. 3 ...................... 30
   (Declaration of William Longo, Ph.D.,
   Gina Anderson v. Avon Products, Inc.)

Deposition Exhibit No. 4 ...................... 44
   (Exhibit R, MAS Chart of Gold Bond Testing,
   June 23, 2022)

Deposition Exhibit No. 5 ...................... 68
   (Matthew Streck depo notes)

Deposition Exhibit No. 6 ...................... 84
   (Matthew Streck deposition, Volume II,
   dated March 9, 2022)

Deposition Exhibit No. 7 ...................... 102
   (Dr. Longo's report in the Valadez case,
   dated February 28, 2023)

Deposition Exhibit No. 8 ...................... 110
   (EPA Test Method, Method for the
   Determination of Asbestos in Bulk
   Building Materials, July 1993)

### Page 3

EXHIBITS (continued):

Deposition Exhibit No. 9 ...................... 126
   (RJ Lee J&J Historical Baby Powder
   Analysis, Dr. Sanchez)

Deposition Exhibit No. 10 ..................... 139
   (March 9, 2023 letter to Joseph Satterley
   and Ian Rivamonte, from Julia E. Romano)

Deposition Exhibit No. 11 ..................... 140
   (March 15, 2023 email to Julia Romano and
   others, from Joseph D. Satterley)

Deposition Exhibit No. 12 ..................... 146
   (March 21, 2023 email to Julia Romano and
   others, from Joseph D. Satterley)

Deposition Exhibit No. 13 ..................... 147
   (March 23rd, 2023 status conference,
   Valadez v. Johnson & Johnson)

### Page 4

               APPEARANCES

FOR THE PLAINTIFFS:

     PAUL J. KELLEY - Via Video
     Satterley & Kelley, PLLC
     8700 Westport Road, Suite 202
     Louisville, Kentucky  40242
     pkelley@satterleylaw.com

FOR THE DEFENDANT, CHATTEM, INC.:

     JAMES T. WILLIAMS - Via Video
     Miller & Martin
     Volunteer Building, Suite 1200
     832 Georgia Avenue
     Chattanooga, Tennessee  37402
     james.williams@millermartin.com

FOR THE DEFENDANT, JOHNSON & JOHNSON:

     MICHAEL VIVES - Via Video
     King & Spalding, LLP
     1185 Avenue of the Americas, 34th Floor
     New York, New York  10036
     mvives@kslaw.com

FOR THE DEFENDANT, THE KROGER COMPANY:

     TRAVIS R. SMITH - Via Video
     Dinsmore & Shohl, LLP
     211 N. Pennsylvania Street
     One Indiana Square, Suite 1800
     Indianapolis, Indiana  46204
     travis.smith@dinsmore.com

FOR THE DEFENDANT, BARRETTS MINERALS, INC.:

     CAROL DAN BROWNING - Via Video
     Stites & Harbison, PLLC
     400 West Market Street, Suite 1800
     Louisville, Kentucky  40202
     cbrowning@stites.com

Case 3:16-md-02738-MAS-RLS   Document 32872-35   Filed 07/01/24   Page 34 of 143
PageID: 182909

Matthew Steck, et al. v. Johnson & Johnson, et al.  7/16/2020
William E. Longo, Ph.D.

Page 133

1 could -- could produce all the PLM slides he did in
2 litigation since 2016 or whenever he started.
3    Q.   Well, so it sounds like with respect
4 to -- it sounds like you're aware that there was a
5 request made for your PLM slides in the Valadez case?
6    A.   Yes, I'm aware of it.  I went to go
7 look for them after I got around to it, and what I
8 didn't do is tell anybody here to make sure to keep
9 them --
10   Q.   All right.
11   A.   -- because I get sidetracked pretty
12 easily at times.
13   Q.   And do you recall when you went around
14 to look for them?
15   A.   I think it was about two weeks
16 afterwards, something like that.
17   Q.   And when you went to look for them
18 they were -- they had been destroyed?
19   A.   They weren't there.
20   Q.   Okay.  So they weren't -- it wasn't
21 that they were degraded.  It's that they had been
22 destroyed.
23   A.   They don't last.  I mean, you can't go
24 back a week or two weeks afterwards and look -- be
25 able to find the same structures because it starts

Page 134

1 crystallizing.
2    Q.   Right, but --
3    A.   This is not like TEM grids where you
4 have to go through a whole thing and you can pull
5 them out and -- which we've done.  PLM -- you can't
6 ship a PLM slide, and you can always make it again.
7    Q.   Okay.  But I just want to make sure
8 we're clear because I think first you testified that
9 when you went to look for them you couldn't find
10 them.  Is that --
11   A.   If they're not there, it's hard to
12 find them.
13   Q.   Right.  Okay.
14   A.   So they're not here.  And they were --
15 they were just -- they were thrown out.
16   Q.   Okay.  And do you have any idea when
17 they were thrown out?
18   A.   I don't know within the date -- when
19 it was actually thrown out or not.  It was thrown
20 out, but I don't know the date.
21   Q.   Okay.  We may look at a few things on
22 this, but I think you just said -- well, I guess let
23 me just ask.  What is your view on how long it takes
24 PLM slides to degrade?
25   A.   Well, they start crystallizing and the

Page 135

1 oil starts to evaporate, so it's usually, you know,
2 one to two weeks.  Sometimes, you know, if I've
3 looked at the report and stuff or it's out, there's
4 no need to keep it.  You know, to go back and find
5 that exact one bundle, sometimes it would be tough.
6 I don't think anybody keeps them.
7    Q.   Right.  And is it your view that -- so
8 after one to two weeks if the oil evaporates the
9 slides are unusable?
10   A.   I don't know if they're absolutely
11 unusable, but to go back to the same structures, it
12 may not be possible.  So it's just -- nobody keeps
13 them.
14   Q.   Have you ever tried to analyze or
15 relook at a PLM slide two weeks after it was prepared
16 to see whether you can see anything?
17   A.   No.  I'm not going to take the time to
18 go and start doing an experiment because somebody --
19 they wanted to come here and analyze a sample.
20        I'd be perfectly happy to have, you
21 know, Dr. Sanchez -- well, his PLM person come here,
22 watch us make the sample.  We can go and look for it
23 and say here's the structure, go ahead and look at
24 it.  What is the difference?  Probably better that
25 way.

Page 136

1    Q.   Okay.  But not Dr. Sanchez?  His PLM
2 person?
3    A.   He doesn't -- he never analyzes them.
4 You know, and he accused me of committing a felony,
5 so I have a problem with him coming in my lab, you
6 know, that I'm lying under oath all the time.
7        He would come here, but he's going to
8 have somebody else do the PLM analysis.  I think we
9 offered that as a compromise, but that's what, you
10 know -- I would just say Dr. Sanchez can go ahead and
11 write the report that we misidentified it.  He can do
12 that.  He doesn't have to come here and analyze it.
13   Q.   Are you aware of any peer-reviewed
14 literature that states that PLM --
15   A.   I can't hear you.
16   Q.   Sorry.  I've got this new microphone
17 that's been causing all sorts of problems.  Are you
18 -- I like yours a lot better.
19        Are you aware of any peer-reviewed
20 literature that states that PLM slides degrade after
21 one to two weeks?
22   A.   You know, it's hard for me to chase
23 down every time somebody comes up with something that
24 they want to know or there's some literature.  I
25 don't know.

Case 3:16-md-02738-MAS-RLS   Document 32872-35   Filed 07/01/24   Page 48 of 149 (149 - 152)
Matthew Streck, et al. v. Johnson & Johnson, et al.   7/16/2020
William E. Longo, Ph.D.

Page 149

1  A.  The slides were gone. And by that
2  time probably -- I don't know -- I just don't recall
3  ever telling Mr. Satterley that.
4      Q.  Okay. Okay. That's fine. So all you
5  recall telling him is that the slides were gone.
6      A.  They were not -- they were not kept.
7      Q.  And you don't recall when you would
8  have told him that. Presumably, it was after that
9  March 15th email we looked at?
10     A.  Yeah, they -- I did not -- they were
11 not here.
12         MR. VIVES: Okay. All right. Let me
13 just take two minutes and just see if I have anything
14 else. I think that may be it for me.
15         THE WITNESS: Okay. Is anybody else
16 going to ask questions?
17         MR. SMITH: I'll be very brief.
18 Should I go during the two minutes while you look at
19 your notes, Michael?
20         MR. VIVES: Sure. Go ahead.
21         MR. SMITH: At least I think I'll be
22 very brief.
23
24
25

Page 150

1                 EXAMINATION
2
3  BY MR. SMITH:
4      Q.  Dr. Longo, my name is Travis Smith.
5  Can you hear me okay?
6      A.  Yes, sir, I can.
7      Q.  I represent Kroger. Have you reviewed
8  any documents of Kroger as it relates to this case,
9  this Streck case, or cosmetic talc products
10 generally?
11     A.  No.
12     Q.  And I didn't see Kroger mentioned in
13 your notes and calculations page that we marked as
14 Exhibit 5. Have you formed any opinions in this case
15 specifically as to Kroger?
16     A.  No, I don't have any opinions about
17 Kroger, you know, who knew what when, should they
18 have known, not known, hazard, dangers of asbestos.
19 It's immaterial to me where the product was bought.
20 My only opinion is about what's in the product. It
21 could have came from Kroger or any other grocery
22 store.
23     Q.  And you haven't done any
24 quantification or calculated any cumulative dose for
25 Mr. Streck with respect to either Johnson's Baby

Page 151

1  Powder or Gold Bond talcum powders that may have been
2  purchased from Kroger as opposed to another store?
3      A.  That's correct, I have not.
4          MR. SMITH: Okay. I think that's all
5  I have. Thank you.
6          THE WITNESS: Thank you.
7          MR. VIVES: All right. No further
8  questions for me either, Dr. Longo.
9          THE WITNESS: Thank you, sir.
10         MR. KELLEY: Any other questions?
11         MS. BROWNING: None from me.
12         MR. WILLIAMS: None for Chattem.
13         MR. KELLEY: All right. I think we
14 can close the record.
15         THE MODERATOR: We are off the record
16 at 4:03 p.m.
17
18     (DEPOSITION CONCLUDED AT 4:03 P.M.)
19                  *   *   *
20
21
22
23
24
25

Page 152

1  STATE OF KENTUCKY    )(
                        )( SS:
2  COUNTY OF JEFFERSON  )(
3
4          I, ELLEN L. COULTER, Notary Public,
   State of Kentucky at Large, hereby certify that the
5  foregoing deposition was taken at the time and place
   stated in the caption; that the appearances were as
6  set forth in the caption; that prior to giving
   testimony the witness was first duly sworn by me;
7  that said testimony was taken down by me in
   stenographic notes and thereafter reduced under my
8  supervision to the foregoing typewritten pages and
   that said typewritten transcript is a true, accurate
9  and complete record of my stenographic notes so
   taken.
10         I further certify that I am not
   related by blood or marriage to any of the parties
11 hereto and that I have no interest in the outcome of
   captioned case.
12         Given under my hand this the
13 day of                   ,        , at
14 Louisville, Kentucky.
15         My commission as Notary Public expires
   November 5, 2023.
16
17
18
19
20
21            ELLEN L. COULTER
              NOTARY PUBLIC
22            Notary I.D. 634549
23
24
25