Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Docket No. 3:16-md-2738-FLW-LHG

_____

IN RE:

                             THREE MOTIONS TO

JOHNSON & JOHNSON TALCUM
POWDER PRODUCTS MARKETING,    QUASH AND/OR FOR
SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION           PROTECTIVE ORDER

_____

*    *    *    *

MONDAY, JULY 1, 2024

*    *    *    *

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
BEFORE:  SPECIAL MASTER JOEL SCHNEIDER, USMJ, RETIRED
1735 MARKET STREET
21st FLOOR
PHILADELPHIA, PENNSYLVANIA  19103-7505
856-488-7797
FAX - 215-772-7620
jschneider@mmwr.com

MASTROIANNI & FORMAROLI, INC.

Certified Court Reporting & Videoconferencing

P.O. BOX 368

Haddon Heights, New Jersey 08035

856-546-1100

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 2

```
 1

 2

 3

 4

 5

 6

 7

 8                         Transcript of proceedings in the

 9     above matter taken stenographically by

10     Theresa Mastroianni Kugler, Certified Court Reporter,

11     license number 30X100085700, Notary Public of the

12     State of New Jersey and the Commonwealth of

13     Pennsylvania, VIA ZOOM REMOTE VIDEOCONFERENCE,

14     commencing at 10:01 AM.

15

16

17

18

19

20

21

22

23

24

25
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

```
                                                        Page 3
  1
     A P P E A R A N C E S:
  2
  3
           ASHCRAFT & GEREL, LLP
  4        BY:  MICHELLE A. PARFITT, ESQUIRE
           1825 K STREET, NW
  5        WASHINGTON, DC  2006
           800-674-9725
  6        202-759-7648
           mparfitt@ashcraftlaw.com
  7        ATTORNEYS FOR THE PLAINTIFFS
  8
           BEASLEY ALLEN LAW FIRM
  9        BY:  LEIGH O'DELL, ESQUIRE
           218 COMMERCE STREET
 10        P.O. BOX 4160
           MONTGOMERY, ALABAMA  36104
 11        800-898-2034
           FAX - 334-954-7555
 12        leigh.odell@beasleyallen.com
           ATTORNEYS FOR THE PLAINTIFFS
 13
 14        BURNS, CHAREST, LLP
           BY:  NATALIE EARLES, ESQUIRE
 15        365 CANAL STREET
           SUITE 1170
 16        NEW ORLEANS, LOUISIANA  70130
           504-799-2845
 17        FAX - 504-881-1765
           nearles@burnscharest.com
 18        ATTORNEYS FOR THE PLAINTIFFS
 19
           LEVIN, SEDRAN & BERMAN, LLP
 20        BY:  LAWRENCE S. BERMAN, ESQUIRE
           510 WALNUT STREET
 21        SUITE 500
           PHILADELPHIA, PENNSYLVANIA  19106-3697
 22        877-882-1011
           215-592-1500
 23        FAX - 215-592-4663
           lberman@lfsblaw.com
 24        ATTORNEYS FOR THE PLAINTIFFS
 25
```

Electronically signed by Theresa Kugler (001-297-027-4278)                        a1cd435f-6b23-4dc4-8d10-022eb90def77

```
                                                       Page 4
 1
             LEVIN, PAPANTONIO, RAFFERTY, PROCTOR,
 2             BUCHANAN, O'BRIEN, BARR, MOUGEY, PA
             BY:  CHRISTOPHER V. TISI, ESQUIRE
 3           316 SOUTH BAYLEN STREET
             PENSACOLA, FLORIDA  32502
 4           850-435-7000
             800-277-1193
 5           ctisi@levinlaw.com
             ATTORNEYS FOR THE PLAINTIFFS
 6
 7
             FAEGRE, DRINKER, BIDDLE & REATH, LLP
 8           BY:  SUSAN M. SHARKO, ESQUIRE
             600 CAMPUS
 9           FLORHAM PARK, NEW JERSEY  07932
             DIRECT - 973-549-7350
10           FAX - 973-360-9831
             susan.sharko@faegredrinker.com
11           ATTORNEYS FOR THE DEFENDANT,
             JOHNSON & JOHNSON and JOHNSON & JOHNSON
12           CONSUMER COMPANIES, INC.,
             now known as JOHNSON & JOHNSON CONSUMER, INC.
13
14           KING & SPALDING, LLP
             BY:  MATTHEW BUSH, ESQUIRE
15               - and -
             BY:  KRISTEN FOURNIER, ESQUIRE
16           1185 AVENUE OF THE AMERICAS
             34TH FLOOR
17           NEW YORK, NEW YORK  10036
             212-790-5356
18           mbush@kslaw.com
             ATTORNEYS FOR THE DEFENDANTS
19
20           FOX ROTHSCHILD, LLP
             BY:  JEFFREY M. POLLOCK, ESQUIRE
21               - and -
             BY:  MICHAEL W. SABO, ESQUIRE
22           PRINCETON PIKE CORPORATE CENTER
             997 LENOX DRIVE
23           LAWRENCEVILLE, NEW JERSEY  08648
             609-896-7660
24           FAX - 609-896-1469
             jmpollock@foxrothschild.com
25           ATTORNEYS FOR BEASLEY ALLEN
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

                                                    Page 5

 1
         SZAFERMAN, LaKIND, BLUMBSTEIN & BLADER, PC
 2       BY:  ARNOLD LaKIND, ESQUIRE
         101 GROVERS MILL ROAD
 3       SUITE 200
         LAWRENCEVILLE, NEW JERSEY  08648
 4       609-275-0400 - Ext 202
         FAX - 609-275-4511
 5       CELL - 609-306-3994
         alakindszaferman.com
 6       ATTORNEYS FOR THE ALLEN SMITH LAW FIRM

 7
         GOLOMB LEGAL, PC
 8       BY:  RICHARD GOLOMB, ESQUIRE
         1835 MARKET STREET
 9       SUITE 2900
         PHILADELPHIA, PENNSYLVANIA  19103
10       215-278-4449
         ATTORNEYS FOR THE PSC
11

12

13   A L S O   P R E S E N T:

14

15       MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
         BY:  CLARISSA LINTNER, ESQUIRE
16       1735 MARKET STREET
         21st FLOOR
17       PHILADELPHIA, PENNSYLVANIA  19103-7505
         215-772-7411
18       FAX - 215-772-7620
         rgoodman@mmwr.com
19

20       Laura Seggerman

21       Andy Birchfield

22

23

24

25

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 6

```
 1                   SPECIAL MASTER SCHNEIDER:  Let's go on

 2      the record.

 3                   Good afternoon, everybody.

 4                   MR. LaKIND:  Good afternoon, your

 5      Honor.

 6                   SPECIAL MASTER SCHNEIDER:  This is

 7      Special Master Retired Judge Schneider.  We're here

 8      for oral argument this afternoon on three motions to

 9      quash and/or for protective order.

10                   I want to inform the parties that I'm

11      going to reserve decision at the end of the oral

12      argument, but I expect that you'll get a prompt

13      decision.

14                   Why don't we start by just getting the

15      entries of appearance.  Let's start with the moving

16      parties.  I suppose we'll start with Beasley Allen.

17                   MR. POLLOCK:  Good afternoon, Judge.

18      This is Jeff Pollock from Fox Rothschild.  I'm joined

19      by my colleague, Michael Sabo, and also representing

20      Andy Birchfield as well, sir.

21                   MR. LAKIND:  Good afternoon, your

22      Honor.  This is Arnold LaKind of Szaferman, LaKind,

23      Blumstein & Blader on behalf of the Allen Smith Law

24      Firm.

25                   MR. GOLOMB:  Good afternoon, Judge.
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 7

 1    This is Richard Golomb.  I'm here for the PSC.

 2                   SPECIAL MASTER SCHNEIDER:  All right.

 3    And if anyone else is going to be heard today, just

 4    for the benefit of the court reporter, just indicate

 5    your name.

 6                   For the Defendants?

 7                   MR. BUSH:  This is Matt Bush on behalf

 8    of the Defendants.  And with me are Kristen Fournier

 9    and Susan Sharko.

10                   SPECIAL MASTER SCHNEIDER:  Okay.

11                   Counsel, I've read the papers.  I

12    understand the issues, so we don't have to repeat

13    verbatim what's in the papers.

14                   You've been here before, you know how I

15    like to do things.  I live to address certain

16    questions I have with the parties and then open the

17    floor up to give every party every opportunity they

18    want to be heard for as long or as short as they want

19    to be heard.

20                   So let me, if you'll just indulge me,

21    let me just address a couple of questions I have.

22                   The first issue I'd like to address is

23    the issue of the objections to the subpoenas

24    regarding service.  Obviously I'm not prejudicing

25    anyone.  If you want to assert that defense, it's

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 8

 1    perfectly appropriate, we'll deal with it.  My

 2    preference would be that the parties agree to accept

 3    service of the subpoena, so we can get right to the

 4    substantive issue and deal with that.  But again,

 5    it's not my place nor do I want anyone not to do what

 6    they think is in their best interests of the parties.

 7                    So let's hear from each of the moving

 8    parties.

 9                    Are they still asserting an objection

10    that service, I guess, of the subpoenas was improper?

11                    And why don't we start with Beasley

12    Allen.

13                    MR. POLLOCK:  So on behalf of Beasley

14    Allen, we don't have a significant objection on

15    service.  Andy is a counsel in the matter here.

16    Beasley Allen is here before this Court.  Obviously

17    we have other objections, but we're here, your Honor,

18    we're ready to go.

19                    SPECIAL MASTER SCHNEIDER:  Plaintiffs'

20    Steering Committee?

21                    MR. GOLOMB:  Same.

22                    SPECIAL MASTER SCHNEIDER:  And Smith

23    Law Firm?

24                    MR. LAKIND:  Yes, your Honor.  Same

25    position.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

```
 1              SPECIAL MASTER SCHNEIDER:  Okay.

 2              So for purposes of this argument, I'll

 3    deem the service issues to be not asserted so we can

 4    just get right to the crux of it.

 5              So Defendant, in one of the letters

 6    that I received, there was a summary of the three

 7    categories of documents that are at issue in the

 8    case.  And I just wanted to make sure we're all on

 9    the same page.

10              One, documents regarding litigation

11    financing, including communications with third

12    parties.

13              Two, communications with third parties

14    regarding settlement.

15              And three, parties' communications with

16    third parties regarding Defendant's proposed

17    reorganization.

18              Is it fair to state that in general

19    terms those are the three categories of documents

20    that the Defendants want?

21              MR. POLLOCK:  The only caveat I would

22    throw out there, Judge, is I believe that Plaintiffs

23    have withdrawn the last two categories which dealt

24    with the news services, so I think that that narrows

25    down the field a little bit.
```

July 1, 2024

Page 10

 1                    SPECIAL MASTER SCHNEIDER:  Correct.

 2               Mr. Bush?

 3                    MR. BUSH:  Yes, your Honor.  I think

 4      that the focus of the litigation funding, yes, I

 5      think that accurately -- at a high level, that

 6      summarizes the categories.

 7                    SPECIAL MASTER SCHNEIDER:  All right.

 8      It is a high level.

 9                    And then the next question I had, at a

10      very high level, is it correct that Defendant's

11      inquiry is directed to finding out if the Beasley

12      Allen firm has litigation funding?

13                    MR. BUSH:  I would say yes to that,

14      your Honor, with a small caveat, which is that the

15      funding isn't necessarily something that's going

16      directly to Beasley Allen.  So the way I would phrase

17      it is whether the claims, the Plaintiffs that Beasley

18      Allen represents and those claims, have litigation

19      funding associated with it.

20                    And I can talk about it in more detail.

21      I know you usually don't want full argument now, but

22      the funding could come, for example, through

23      co-counsel arrangements to those claims.  And so it's

24      about the claims that are associated with Beasley

25      Allen and whether those claims have funding is what

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 11

1    we're looking for.

2                SPECIAL MASTER SCHNEIDER:  I'm a little

3    confused.  I really don't understand the distinction

4    you're making or the clarification you're making,

5    Mr. Bush.  Because really, when I read the papers, I

6    got the impression that, as my mother would say, this

7    whole megillah is just related to finding out if

8    Beasley Allen has litigation financing and that's

9    what's holding up -- or that's what is motivating its

10   desire not to agree to the settlement.

11               MR. BUSH:  Yeah, I agree with that,

12   your Honor, and I think my point is that that could

13   come indirectly.

14               So let me give you an example for why

15   I'm saying this.  Which is Beasley Allen, and we know

16   this from testimony from Mr. Birchfield, they

17   obtained the majority of the cases from co-counsel

18   arrangement.  Even the vast majority.  That's how

19   they are aggregating the cases and most cases come to

20   them is through co-counsel.  They have hundreds of

21   co-counsel relationships.

22               And so those claims have to get

23   aggregated in some way.  For example, there is a lot

24   of advertising that goes on.  There is TV ads.  There

25   is very targeted social media ads.  There is a lot of

July 1, 2024

                                                      Page 12

1    money that just goes into the general aggregation

2    process, which is how we get 60 thousand claims in

3    this MDL, or nearly that amount as the second largest

4    MDL in the country.

5              And so those co-counsels who originate

6    the cases may be the ones who are -- may be, we

7    obviously don't know exactly how it works which is

8    why we're seeking discovery, but what may be

9    happening is those co-counsels are getting the

10   funding and so the claims are associated with

11   funding.  And then they're co-counseling with Beasley

12   Allen who is prosecuting the claim.

13             And let me tell you why that matters.

14             It matters because the way these

15   financial arrangements can work is that the

16   litigation funders could have a right to get, say,

17   their money back on a certain amount.

18             So let's say, I'm just picking out a

19   number, 500 million dollars is what's being

20   associated with the litigation funding.  It could be

21   that before any money is getting to the law firms,

22   that those litigation funders have a right to sort of

23   money off the top, let's say, the first money that

24   comes in.  And so if there is money associated with

25   those claims, that can affect all of the co-counsels'

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 13

1    interests in resolving the case whether or not the

2    money is going directly to Beasley Allen or not.

3                    So I totally agree with your Honor, the

4    gist of it is, is there litigation funding associated

5    with these Beasley Allen claims that is impacting the

6    prolonged settlement that's been happening.  And my

7    only caveat is this could happen in an indirect way,

8    even if they're not directly receiving funding.  Or

9    they may be receiving funding, and I know we're going

10    to talk about that, but I hope that explains why I

11    was giving sort of a caveated answer before.

12                    SPECIAL MASTER SCHNEIDER:  Mr. Bush, is

13    this a concern that just has arisen for your clients

14    or is this something that has existed for quite

15    sometime?

16                    MR. BUSH:  I mean I guess I would say

17    that we're always concerned about litigation funding,

18    but that it's been coming to a head recently with the

19    bankruptcy efforts that I know your Honor is familiar

20    with.  But the settlement negotiations have gone on

21    for a while now and there seems to be something

22    happening.  And then would really brought it to a

23    head was the email where a client said that they were

24    told that J&J was unwilling to settle.

25                    And so while we've had these concerns

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 14

1    for a while, I think that email put these concerns

2    into really stark contrast as to why is a client

3    being told that J&J is unwilling to settle when it is

4    just an objective fact that we are willing to settle

5    and that there is a current settlement offer on the

6    table through the proposed bankruptcy.

7                    So while these concerns have been

8    existing for a while, there was an event that really

9    prompted questions as to what are really the

10   interests going on here.

11                   SPECIAL MASTER SCHNEIDER:  This is one

12   of the things I'm getting at, Mr. Bush.

13   Mr. Birchfield has testified twice under oath that he

14   doesn't have litigation funding for these talc cases.

15   Doesn't that put an end to this inquiry?

16                   MR. BUSH:  No, your Honor, for the

17   reasons that I just said, that the money doesn't have

18   to necessarily be directly going to Beasley Allen.

19                   If there is a litigation funder that is

20   getting the first X million dollars that comes in

21   from a resolution, because of an agreement with

22   co-counsel, that is going to affect Beasley Allen's

23   willingness and ability to settle.  And so it might

24   come in indirectly.

25                   And I want to say, your Honor, just for

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 15

1    some context, there were only a couple law firms

2    representing a minute percentage of the claims in

3    this case through disclosed litigation funding.  And

4    it's just pursuant to Rule 7.1.1.  And it's just not

5    plausible that so little litigation funding is out

6    there for these claims.

7                   As I said, it's the second largest MDL

8    in the country and aggregating these claims like that

9    costs money.  This isn't a situation, we're not

10   living in a world where all Plaintiffs wake up one

11   day and just get an epiphany to decide to sue J&J.

12   And we cited a law review article about this.  This

13   is a very targeted process where claims are

14   aggregated in various ways, including through

15   advertising.  And so what happens is people seek out

16   those Plaintiffs.  And those advertisements and lot

17   of things like that cost money.  And that money is

18   so -- the mass tort world is filled with this

19   litigation funding.  We're the second largest MDL in

20   the country.  It is completely implausible that there

21   is no litigation funding going into these claims.

22                   SPECIAL MASTER SCHNEIDER:  Do you

23   doubt, Mr. Bush, that Mr. Birchfield testified

24   truthfully?

25                   MR. BUSH:  No, your Honor.  But I think

Electronically signed by Theresa Kugler (001-297-027-4278)                                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 16

```
 1    it's a carefully worded testimony.
 2                   It may very well be that Beasley Allen
 3    is not directly receiving the money, but it still may
 4    be that there is litigation funding for those claims
 5    that has to get paid off first before Beasley Allen
 6    will see money from any resolution.  And so even
 7    if -- I see you have a question.
 8                   SPECIAL MASTER SCHNEIDER:  Your client
 9    cross-examined Mr. Beasley at his deposition in
10    connection the LTL bankruptcy and cross-examined
11    Mr. Birchfield at the motions to disqualify hearing,
12    correct?
13                   MR. BUSH:  That's correct.
14                   SPECIAL MASTER SCHNEIDER:  And he was
15    asked about litigation funding during those
16    proceedings and he testified under oath, right?
17                   MR. BUSH:  Yes.
18                   SPECIAL MASTER SCHNEIDER:  So if your
19    client had a particular concern about litigation
20    funding and this indirect concept that you're
21    raising, is it correct that they had an opportunity
22    to ask him about it at that time?
23                   MR. BUSH:  As you saw in those
24    transcripts, there was a lot of objections being
25    raised about all these different things.  So whether
```

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 17

1    that would have actually been something he was

2    allowed to testify about, I don't really know, or

3    whether he would have been advised not to.  But I

4    will say a lot of those -- there were questions asked

5    that get to this point.  The questions in both the

6    hearing and the deposition, the testimony that came

7    out was, how do you get your claims?  We get the

8    majority of them or the vast majority of them through

9    co-counsel relationships.  We have hundreds of

10   co-counsel relationships.  One of those is the Smith

11   Law Firm, who they've had seven trials together with.

12   And the Smith Law Firm gets litigation funding.

13                So there is clearly the claims that

14   Beasley Allen is representing are getting litigation

15   funding through their co-counsel relationships.  So

16   there was testimony generated about this exact topic

17   and about how this can come about even if Beasley

18   Allen is not directly receiving a loan from a

19   litigation funder.

20                SPECIAL MASTER SCHNEIDER:  Why then did

21   not your client ask Mr. Birchfield about this

22   indirect funding issue that you're now raising?

23                Why is this being raised for the first

24   time now?

25                MR. BUSH:  Your Honor, I can't go back

July 1, 2024

Page 18

1   in time and get into the head of the questioner other

2   than to say this issue was -- as I just said, it was

3   asked about, about aren't your co-counsel

4   relationships getting litigation funding.  So I think

5   it was asked about.  And the reason that we're asking

6   for this information now is just the reason that I

7   said, that one of Beasley Allen's clients was told

8   that J&J is not willing to settle, which is just not

9   true.  And she said in that last email, basically

10  just make me an offer, even though there is an offer

11  on the table.  So that raised new questions about

12  exactly how much -- what is driving that

13  communication and whether it's the financial

14  incentives from the litigation funding.

15              SPECIAL MASTER SCHNEIDER:  Let me ask a

16  couple of questions about the Smith Law Firm

17  subpoena.  The Smith Law Firm subpoena is not counsel

18  of record in the case, correct?

19              MR. BUSH:  The Smith Law Firm is not

20  counsel of record in the case, meaning they have not

21  entered an appearance on behalf of any of these

22  people, any of the Plaintiffs in the MDL.  And the

23  declaration that was submitted, I think, is again

24  very carefully worded.  It says they are not counsel

25  of record to any Plaintiffs.  It does not say they do

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 19

1    not represent any.

2                    SPECIAL MASTER SCHNEIDER:  Do you have

3    any evidence, information that the Smith Law Firm

4    represents any of the claimants in this lawsuit?

5                    MR. BUSH:  The information we have is

6    that Beasley Allen and the Smith Law Firm are

7    long-term partners.  They had, I believe, seven

8    trials they did together.

9                    If you're asking for direct evidence

10   that we've gone in and seen their engagement letter

11   that shows representation, of course we don't have

12   that.  But that's why we're seeking discovery.  We're

13   trying to piece this together and it seems to be

14   being arranged in a way that at least could be

15   interpreted to avoid Rule 7.1.1.  So things are being

16   shifted around and we're trying our best to figure

17   out this information.

18                    SPECIAL MASTER SCHNEIDER:  So tell me

19   if this is a correct statement.

20                    The Smith Law Firm is not counsel of

21   record in the case and you have no evidence that you

22   can cite to that indicates that indicates that the

23   Smith Law Firm represents any claimant in this case?

24                    MR. BUSH:  Your Honor, I disagree with

25   that because the evidence we have, and it may be

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 20

1   circumstantial, is that they are long-term partners

2   that went to seven trials together.  This isn't just

3   we know of seven cases.  They are close partners that

4   went to seven trials together.

5              So it's not that big a leap to think

6   that they may have representation in the MDL.  And

7   this is all about, your Honor, a global settlement to

8   try to resolve the MDL and the State court cases.

9   The common benefit funds which are at issue go to the

10  MDL cases and the State court cases.  And we know

11  that historically these two law firms have partnered,

12  including with the State court cases, where there is

13  direct evidence that they've had partnerships before

14  and they have co-counsel.

15             SPECIAL MASTER SCHNEIDER:  Maybe this

16  is a -- well, I forgot the term.  But is it not true

17  that you're speculating that the Smith Law Firm has

18  any type of financial arrangement with Beasley Allen

19  with regard to the talc claimants in this case?

20             Is it anything more than pure

21  speculation?

22             MR. BUSH:  Your Honor, it's the same

23  answer.  It's not speculation because of the evidence

24  we have.  And I'll say two more things to it.

25             One is the whole reason -- there is

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 21

1   always going to be gaps in knowledge when someone is

2   seeking discovery.  It's the whole reason we're

3   seeking discovery, is because we don't have every

4   piece of the information.  That's always going to be

5   true.

6               The second thing is, let's assume, and

7   I don't necessarily think this is right, but let's

8   assume that co-counsel relationships, if a co-counsel

9   is getting litigation funding, that that falls

10  outside the scope of 7.1.1, or at least someone could

11  interpret it that way.

12              The way this all may be being set up is

13  to avoid a disclosure under Rule 7.1.1 by splitting

14  up who is appearing and splitting up who is getting

15  the litigation funding.  And there is no other way we

16  can get at that information other than through trying

17  to seek it through discovery.  And I think the Judge

18  Connolly case out of Delaware is a good example of

19  how sometimes you have to ferret this information

20  out.

21              And I know your Honor's decision in the

22  Valsartan case, if I'm pronouncing that right,

23  discusses a lot of these cases and distinguishes

24  them, but I think the main reason that that Nimitz

25  case is informative is because sometimes it just

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 22

```
1    takes some work to figure out what's going on.
2              The judge there put in a lot of effort,
3    had a lot of hearings, I'm not saying we need all
4    that, but it took some work to figure out why weren't
5    these disclosure rules being complied with.  Let's
6    get evidence from people, let's figure out what's
7    going on.
8              So sometimes, even though we have gaps
9    in our knowledge, we need some effort, we need some
10   discovery to figure out what's going on here.  There
11   is always going to be gaps when there is discovery at
12   issue.
13             SPECIAL MASTER SCHNEIDER:  Would you
14   agree as a general matter that discovery can't be
15   based on speculation and conjecture?
16             MR. BUSH:  I suppose if you ask me in
17   the abstract, can discovery be based on pure
18   conjecture, I would say probably not.  But I think if
19   it's relevant and proportional to the needs of the
20   case, then yeah, you can have a significant lack of
21   knowledge about what's going on.
22             I mean every discovery request is give
23   me all your documents related to X.  You don't know
24   that those documents exist or not.  Give me all your
25   documents about your review of the health and safety
```

Electronically signed by Theresa Kugler (001-297-027-4278)                          a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 23

1    of talc.  You don't know for sure those documents

2    exist.  What evidence do you have that those

3    documents exist?  Well, it's plausible that it's

4    happening.  You can call it speculation, but it's

5    not.  And I think that's the same thing here,

6    especially given the context of how much litigation

7    funding is just inherent in mass torts these days.

8    It's just totally implausible that these 60 thousand

9    claims are getting aggregated with essentially no

10   litigation funding.  Someone is paying for all these

11   advertisements that are driving the 60 thousand

12   lawsuits here.

13             And we have that article that says you

14   walk around Mass Torts Made Perfect and it's like a

15   marketplace of aggregation and advertisement that's

16   all paid for by litigation funding.

17             So the idea that this case is immune

18   from that when everyone else in the mass tort world

19   is getting litigation funding, I just don't think is

20   plausible and furthers the evidence we have on why

21   this isn't speculative.

22             SPECIAL MASTER SCHNEIDER:  Mr. Bush,

23   I'm not concerned about litigation funding in general

24   and you and your client's view of the litigation

25   funding business.  I'm concerned with the motion

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 24

1    before us and the issues before us which directly

2    concerns essentially only the Beasley Allen Law Firm

3    and tangentially the Smith Law Firm.  So let's focus

4    our discussion on that and not what happens at MTMP,

5    which is completely irrelevant to why we're here.

6    But let's focus in on the issues.

7                    As long as we're on the Smith Law Firm,

8    as I understand it, you're arguing that you found out

9    through a subpoena, supposedly, I'll accept it as

10   true, that the Smith Law Firm has 24 million dollars

11   in litigation funding.  And I suppose, as I

12   understand it, you believe that Ellington provides

13   that funding, is that correct?

14                    MR. BUSH:  I don't want to quibble

15   about this, your Honor.  It was originally provided

16   by Fortress, then there was litigation funding --

17   then it was refinanced by Ellington.  And we think

18   the financing was far more than 24 million dollars,

19   but so Ellington is the one currently providing the

20   litigation funding.

21                    SPECIAL MASTER SCHNEIDER:  And is the

22   reason you're directing a subpoena to the Smith Law

23   Firm because, assuming that's true for the sake of

24   argument, and I don't know if it's true or not, that

25   you somehow think that that funding is relevant to

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 25

 1    Beasley Allen?

 2                    MR. BUSH:  Yes.  Because -- yes, and I

 3    don't want to repeat myself, but for the reasons I

 4    said,, they're long-term partners, we knew from the

 5    deposition that they were one of the co-counsel of

 6    Beasley Allen that gets litigation funding, and so

 7    there is litigation funding directed to those claims.

 8    And so it's directly relevant to Beasley -- the

 9    funding that Beasley Allen's claims is getting, which

10    affects the financial incentives of the parties to

11    settle.

12                    SPECIAL MASTER SCHNEIDER:  I don't want

13    there to be any misunderstanding of your position,

14    but as I understand it, you're arguing that because

15    of some past relationships between Beasley Allen and

16    the Smith Law Firm, that somehow that gives you good

17    grounds to discover whether they have any ongoing

18    relationship in this MDL?

19                    MR. BUSH:  I don't think it's just past

20    relationships.  I think it's -- so the testimony is

21    one of their co-counsels for these talc claims is the

22    Smith Law Firm.  And even if it were just past

23    relationships, it's not just some one off, oh, we

24    found one case where they worked together 50 years

25    ago.  They were in trial together seven times.  I

July 1, 2024

Page 26

1    think that's of 11 Beasley Allen trials, if I'm

2    remembering the numbers right, seven full trials were

3    cases in which Beasley Allen was partnered with the

4    Smith Law Firm.  So this isn't just some trivial

5    relationship.

6                 Again, I don't think -- we can't go and

7    get their engagement letters with their co-counsel,

8    so this is the information we have to go on and it's

9    strong evidence that they have a strong relationship

10   and an ongoing relationship regarding these talc

11   claims.

12                SPECIAL MASTER SCHNEIDER:  Mr. Bush, I

13   thought I heard you say something that's very

14   important and I want to make sure I heard it right or

15   I didn't hear it right.

16                I thought you said that the Smith Law

17   Firm is co-counsel with Beasley Allen in this MDL.

18                Did I hear it right?

19                MR. BUSH:  Well, your Honor, I think

20   what the testimony was, and I have to look back at

21   the details, was that of the 11-thousand-plus claims

22   that Beasley Allen represents, claimants, that they

23   have co-counsel relationships, including with the

24   Smith Law Firm.  I'd have to look back at the

25   testimony to see precisely how it was worded.  And I

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 27
1    don't think it necessarily specified MDL or not MDL,
2    but again, this is a long-term relationship where
3    they have co-counsel relationships.
4              SPECIAL MASTER SCHNEIDER:  Again, I
5    want to be clear on the record.
6              Is it a fair statement that you're not
7    sure or you don't know for a fact that the Smith Law
8    Firm is co-counsel with claimants in this MDL?
9    Because that's a really important point.
10              MR. BUSH:  Yeah, I want to -- I think I
11    want to look back at the testimony and I'll have an
12    opportunity to do that when the others are
13    presenting.  But I believe we don't know for sure,
14    and I will check this because I don't want to make a
15    representation that's then going to be wrong later,
16    but I believe we don't know for sure -- like do we
17    have direct evidence that they're co-counsel in this
18    case?  Like no, we don't have an engagement letter
19    saying that.  We have what I've said, is a
20    long-term -- which we would never get.  That would be
21    impossible to ever show if we're held to that level
22    of proof.
23              What we have is a long-standing
24    relationship between the two of them.  And we know
25    that this is the way that Beasley Allen is

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 28

1    aggregating their claims is through co-counsel

2    relationships.  That was Mr. Birchfield's testimony.

3                    SPECIAL MASTER SCHNEIDER:  All right.

4    Mr. Bush, we've been at this a while.  Let me give

5    you a chance to catch your breath.

6                    I do have a question directed to -- I'm

7    not sure which of the moving parties, I suppose the

8    Beasley Allen firm.

9                    Jeff, maybe it's you.  Because

10   Defendant's papers make much of the email exchange

11   between this person and of Mr. Murdica and what the

12   emails say and the supposed misrepresentation.

13                   Do we know who that person is?  I don't

14   need to know their name, but is it established that

15   that person is a client?

16                   MR. POLLOCK:  It is, Judge.

17                   If you look at -- I'm looking at a

18   document number here, it's page 13 of 20, ID number

19   187682.  We have, and I can -- if you need the

20   exhibit, it's attached to our brief --

21                   SPECIAL MASTER SCHNEIDER:  No, I'm okay

22   with the exhibit.

23                   MR. POLLOCK:  So I'm going to call the

24   person DD because that's her initials, and that

25   person is a Beasley Allen client.

July 1, 2024

                                                          Page 29
 1                  SPECIAL MASTER SCHNEIDER:  Okay.  So --
 2                  MR. POLLOCK:  What happens is first
 3       thing in the morning DD reaches out to the entire
 4       world, to the news agencies, to Mr. Murdica, to
 5       several people and says hey, I'm not happy about the
 6       pace of progress.  She doesn't say it that way, but
 7       that's her problem.
 8                  At 12:54, Beasley Allen writes back and
 9       says -- Elizabeth Achtemeier says this is a Beasley
10       Allen client.  And then at 5:54 Mr. Murdica then
11       reaches out to DD and everybody else.
12                  So the language that Mr. Bush just
13       said, and he said it early on in his discussions with
14       you, was "a client said." "A client said."
15                  So, Judge, I know you practiced for a
16       while and you had good clients and bad clients and
17       difficult clients and we all have.  And I thought
18       about this one.  Absolutely there is no doubt that
19       Beasley Allen client reached out to the entire world.
20       Why, I don't know.
21                  What I do know is each one of those
22       have what I would call troubled clients or clients
23       who may not be the most sophisticated person in the
24       world.  And so the question is, are we going to
25       protect those people?  I would argue that those are

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 30

 1    the people you need to protect most.  Because the

 2    sophisticated client is someone who understands their

 3    legal rights and responsibilities, will adhere to

 4    their lawyers.  But we've been thrown into court with

 5    people who've got issues, whatever those issues are,

 6    and may not have understood the ramifications of

 7    their actions.

 8                    I think the best spirit of the law is

 9    you protect those people that need protecting.  And I

10    think DD is someone at 12:54 that Elizabeth

11    Achtemeier said, this is one of our clients.

12                    I hope that answers your question.

13                    SPECIAL MASTER SCHNEIDER:  Well, I

14    don't want you to reveal -- obviously, I'm not asking

15    you to reveal any attorney-client privileged

16    communications, but are we getting a complete -- if

17    we just look at what's part of the record now, the

18    email exchange that has been produced as part of the

19    record, is that a complete record of all the

20    communications between the Beasley Allen firm and

21    this client?

22                    MR. POLLOCK:  So Beasley Allen -- I

23    want to answer your question exactly the way you

24    asked it, Judge.  I'm not trying to be picky.

25                    Beasley Allen obviously communicates

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 31

1    with its clients about all kinds of things.  So yes,

2    they've had other communications with DD.  On that

3    day, my belief is that is a fair characterization of

4    the communications that were had starting in the

5    morning up until the time of 5:54 when Mr. Murdica

6    reached out.  Clearly they've had other

7    communications.

8                    SPECIAL MASTER SCHNEIDER:  The portion

9    of this person's email that says, and I don't have it

10   in front of me, in effect there hasn't been a

11   settlement offer made, what have you, is that a quote

12   from some communication from Beasley Allen or is that

13   her characterization of what was said?

14                   MR. POLLOCK:  My understanding is

15   that's her characterization of what was said and that

16   she's, in my view, and I have not communicated with

17   her, Judge, so I'm not going to lie to you, I think

18   she's expressing frustration.  And the fact is she's

19   wondering why aren't we making any progress here.

20                   And I do not believe that it is coming

21   directly from a Beasley Allen firm.  They said J&J

22   has never made an offer.  That's not the way they

23   operate.

24                   SPECIAL MASTER SCHNEIDER:  So in your

25   view, in your view, and I will hear from Mr. Bush who

Electronically signed by Theresa Kugler (001-297-027-4278)                      a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 32

1    I suspect will disagree, how accurate is Defendant's

2    characterization that Beasley Allen made a knowing

3    misstatement to this client?

4              MR. POLLOCK:  I think that's absolutely

5    false.  And the problem is, and this is not the

6    question you asked me, so if you want me to shut up,

7    I will.  But let's assume you wanted to test the

8    proposition.  Imagine the deposition:

9              Client:  What did Beasley Allen tell

10   you?

11              I instruct you not to answer.

12              Client:  What did you hear from Beasley

13   Allen?

14              I instruct you not to answer.

15              Because the only choice you have,

16   Judge, is to terminate the attorney-client

17   relationship.  I would have no choice if I'm

18   defending that deposition.  But knowing Andy, and you

19   saw him testify for days before Judge Porto, that's

20   not a guy who's going to withhold facts from a

21   client.

22              I understand Mr. Bush may not be happy,

23   they may have lots of concerns about whether they

24   communicated accurately, completely, et cetera, but

25   to me, the only person in the world I think can

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

1    really have the right to challenge Beasley Allen and

2    whether they've done a competent job is DD.   I don't

3    think J&J belongs in the bed sheets between its

4    client and the law firm.

5                    SPECIAL MASTER SCHNEIDER:   Mr. Bush,

6    back to you.

7                    MR. BUSH:   Yeah, your Honor, look, we

8    obviously only have the emails that are in front of

9    us, so let me tell you why I think that is a direct

10   quote.   And I'll give you two reasons and then a

11   third point.

12                   One is that it's literally put in

13   quotation marks.   There is a quotation mark at the

14   beginning of the line and a quotation mark all the

15   way at the end.   So she said the answer was, quote,

16   gives a full response, and then quote.

17                   The other thing I'll say is that

18   that language reads differently than the rest of the

19   language of the email.   So the email starts one of

20   two emails back regarding news cycles.   Mass media

21   and independent journalism.

22                   One, Reuters, immaterial.   You also

23   have to attack anyone who sees the world clearly.

24   Like this isn't -- that is written in a completely

25   different style than Johnson and Johnson is not

July 1, 2024

Page 34

1    willing to settle your case at this time despite the

2    information and records we have.  Someone that

3    requires agreement of all parties, we continue to

4    pursue settlement with Johnson & Johnson.  However,

5    to date, J&J has been unwilling to settle.

6                 So it's written in the first person of

7    Beasley Allen and is written in a much more

8    professional tone from the rest of the email.  So

9    everything that I see from this email suggests to me

10   that this is a direct quote that she's providing.

11                And I believe that Mr. Pollock said,

12   quote, I don't believe that that's a direct quote,

13   but that's a different answer than I know because I

14   looked at it and that that is not a direct quote.

15   And I don't want to put words in his mouth and I may

16   have heard wrong, but I wrote it down, but I think

17   everything on this email suggests that that is a

18   direct quote from a Beasley Allen attorney.

19                SPECIAL MASTER SCHNEIDER:  So I mean a

20   fair characterization is that we don't know for sure

21   whether it's a direct quote or it's not a direct

22   quote.  You believe it is.  Mr. Pollock believes it

23   isn't.  But I guess the real question is you want --

24   I mean do you think it's enough for this short, not

25   entirely clear communication to open the door to the

Electronically signed by Theresa Kugler (001-297-027-4278)                        a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 35

1    communications and documents that you're requesting?

2    The funding documents, the settlement discussions,

3    the plan of reorganization discussions, that should

4    be based on one email from a person we've never

5    spoken to, who we're not even sure if he or she is

6    quoting verbatim what Beasley Allen may have said?

7              MR. BUSH:  Your Honor, there is a

8    level of -- I don't know if the sun is going to rise

9    tomorrow, but I can say pretty accurately that I

10   think it is.

11             This is a direct quote, it's just what

12   it is.  But even to just get to your Honor's question

13   is, it raises serious concerns.  I mean you know

14   there have been ongoing settlement negotiations for a

15   long time.  And the fact that she was communicated

16   that J&J is unwilling to settle, there is a lot of

17   discussion in the briefs about, well, is the

18   bankruptcy plan fair, is it not fair, who is it fair

19   for, well, that's her decision to make and she can't

20   make that decision if she doesn't know about it.

21             So I think this is a very serious issue

22   even if it's just a single email.  It particularly

23   raises issues going to the litigation funding

24   question, because the rule specifically says that one

25   of the ways you can show good cause for litigation

Electronically signed by Theresa Kugler (001-297-027-4278)                              a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 36

1    funding is if the parties' interests are not being

2    promoted or protected, that there are conflicts of

3    interest involved, or any other issue.

4                 And I'm not sure when you're going to

5    get more direct evidence of the interests of a party

6    not being promoted and protected in the settlement

7    context, which is a huge focus of the point of the

8    rule, other than an email like this.

9                 And even Mr. Pollock said we have to

10   protect these people and they deserve the most

11   protection.  Well, one way to make sure they're

12   protected is to make sure that they're getting the

13   information about the settlement offers that should

14   be being conveyed to them and that there aren't other

15   interests that are getting in the way of that.

16                And if your Honor has concerns about

17   the amount of documents and things like that, and

18   there is always, as you know, in camera review which

19   came up in the Valsartan case.  So that's always an

20   option if you think that there is a sort of a

21   disconnect between what the level of what the email

22   rises to and the document request, in camera review

23   is always an option there.

24                SPECIAL MASTER SCHNEIDER:  Is the

25   reason why your clients want this information is so

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 37

1    that, in its view, it can better understand why the

2    Beasley Allen law firm is not in favor of Defendant's

3    settlement proposals?

4              MR. BUSH:  I would say yes, better

5    understand and understand what are the financial

6    arrangements at issue.  For example, are the

7    financial incentives such that there is really no

8    way, because of the amount of litigation funding

9    that's at issue and how much has to get paid back,

10   that the parties are never -- are going to be so far

11   apart that there is no economically rational way that

12   we can come together.  That's part of what we're

13   looking for and it's going to inform as we're trying

14   to resolve this case eight years in, it's going to

15   inform how we go about doing that and if it's

16   possible.

17             SPECIAL MASTER SCHNEIDER:  Is it the

18   Defendant's view that its settlement proposals are so

19   favorable to the claimants that it should have been

20   accepted?  And because it wasn't accepted, there must

21   be some ulterior or insidious purpose or reason why

22   it wasn't accepted?

23             MR. BUSH:  I mean look, we obviously

24   are always going to think our settlement proposals

25   are good proposals.  And I can't say just in the

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 38

1    abstract anyone who ever rejects a proposal, there

2    must be something insidious going on.  But there is a

3    lot of -- the email in particular raises serious

4    questions about why this client is being told that

5    J&J's unwilling to settle, when we are.  And is she

6    able to make that decision for herself about whether

7    it's a fair settlement or not?  Because she has to

8    know about it in order to decide whether to vote for

9    the plan or not.

10                SPECIAL MASTER SCHNEIDER:  Mr. Bush, on

11    page 6 of Defendant's response brief, and I'm

12    quoting, it's the last sentence on the page.

13                Quote, you state:  Why is the firm,

14    Beasley Allen, actively opposed to settling claims at

15    terms that are favorable to its own clients?  Close

16    quote.

17                Does that indicate that Defendants

18    believe that its settlement proposal is so favorable

19    that, again, there must be some insidious reason why

20    it's not being accepted?

21                SPECIAL MASTER SCHNEIDER:  Your Honor,

22    it's the favorability of the proposal, which is very

23    favorable.  I mean it's over six billion dollars.

24    Plus a lot of the other indicia of evidence that's

25    going on.

Electronically signed by Theresa Kugler (001-297-027-4278)                                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 39

1              For example, the email from this client

2    that says that J&J is unwilling to settle, that's

3    what she was told, even though it's not true.

4              It's the fact that Beasley Allen stands

5    to recover from 12 percent, or up to 12 percent in

6    common benefit funds, only if the settlement happens

7    outside of bankruptcy and not in bankruptcy.

8              The fact that they have a press release

9    saying we stand ready to resolve this case outside of

10   bankruptcy, just not in bankruptcy.

11             And the fact that there is, we think, a

12   lot of litigation funding out there that is skewing

13   these incentives.

14             So it's not just we offered so much

15   something insidious is going on.  And what our

16   request really focuses on is what are the financial

17   incentives at issue here.  I don't want to say it's

18   insidious as much as what's really driving this?  And

19   is it financial incentives that the parties will

20   never come together after eight years because of the

21   way the finances are set up?  And I think those are

22   legitimate questions that are raised by all of the

23   evidence, including the email that we've been

24   discussing.

25             SPECIAL MASTER SCHNEIDER:  Is it your

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 40

1    client's belief or your belief that Beasley Allen's

2    reluctance to accept the Defendant's settlement

3    proposal is irrational or arbitrary and capricious?

4                    MR. BUSH:  Well, I think the question

5    is, is it rational for them because there is so much

6    litigation funding that even a settlement offer that

7    large isn't going to recoup enough money for them in

8    their view?

9                    So it may be that what's rational for

10   J&J, and I don't want to -- you know, I haven't been

11   directly involved with settlement negotiations, so I

12   don't want to say anything that sort of offsets all

13   that, but it may be that J&J's economic rationality

14   and Beasley Allen's economically rational decisions

15   are so far apart because of the finances at issue.

16   I'm not saying they're irrational, I'm saying it may

17   very well be rational that we can't come together on

18   a solution based on the financial incentives that are

19   at issue.

20                   SPECIAL MASTER SCHNEIDER:  Yeah.  Well,

21   I can't really understand -- I can't say I really

22   understand the answer to that question because -- I

23   mean I understand the record, I've lived this case

24   for years.

25                   I mean is the root of this motion that

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 41

1    the Defendants are just not happy that Beasley Allen

2    won't accept its settlement offers and they believe

3    that the settlement offers are so favorable to the

4    Plaintiffs that there, again, I keep on saying this,

5    there must be some insidious reason why it's not

6    being recommended?

7                    MR. BUSH:  No, your Honor, that's not

8    the root of the motion.

9                    The root of the motion is we're trying

10   to reach a global settlement with this entire

11   litigation.  One of the factors that your Honor's

12   decision said in looking at whether to review

13   something in camera is whether the litigation has

14   been unduly prolonged.  This has been going on for

15   eight years now, this MDL.  There have been, as your

16   Honor knows very well, a host of settlement

17   discussions that haven't been able to be resolved.

18   And it seems that one of the reasons that settlement

19   has not been able to be resolved is because clients

20   aren't being told of the settlement offer.  And the

21   financial incentives for why is that happening and

22   one of the reasons may be and seems to be that the

23   financial incentives of the parties are creating a

24   disconnect there.

25                    And Rule 7.1.1 inherently recognizes

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 42

1    that litigation funding can create a differing

2    incentive between the attorneys and their clients

3    such that the interests of the parties themselves

4    have to be protected.

5              And so this is about making sure that

6    everybody makes an informed decision for themselves

7    about the settlement offer and that we can try to

8    resolve this litigation that seems to me that we

9    really should be able to resolve globally, which I

10   would hope would make everybody here happy about

11   that.  It's been going on for a while now.

12             SPECIAL MASTER SCHNEIDER:  Well, has

13   Beasley Allen ever indicated that they don't want to

14   settle this MDL?

15             MR. BUSH:  Your Honor, I would say two

16   things, which is that, one, I'm not personally

17   involved in settlement negotiations and I think those

18   would be treated confidential.  So one is I wouldn't

19   have an answer to that and I don't think I would be

20   able to say it if I did.

21             But what I know is what the press

22   release says, which is that they stand ready to

23   settle outside of bankruptcy, but are opposed to the

24   bankruptcy solution.  And that's what their public

25   press release says about that.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 43

1           SPECIAL MASTER SCHNEIDER:  Let me just
2    ask you another question or two and then we'll move
3    on.
4           Can you cite to a case that has granted
5    the relief you request or documents and
6    communications regarding settlement and a plan of
7    reorganization?
8           MR. BUSH:  Well, I think -- I think the
9    answer to that is I can't cite a specific case like
10   that, but this is a very unique situation, your
11   Honor.  And some of the things that we're asking for
12   are maybe unique because they're driven by the unique
13   context of this.
14           I don't know of a case that was doing
15   this inside of a bankruptcy context like this with
16   the vote of the claimants and all these things or
17   with an email as stark as this one.  So the lack of
18   exactly analogous case law is driven by the unique
19   circumstances of this case.
20           But as I said, I think for the
21   litigation funding component, while not exactly on
22   point, the Nimitz decision from Judge Connolly out of
23   the District of Delaware shows and is instructive on
24   how sometimes you have to spend some effort trying to
25   ferret out this information.  And then you start

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 44

1    learning some information that you didn't otherwise

2    know and that disclosures turn out to not necessarily

3    be accurate and that gaps in the knowledge that are

4    not actually speculation, but that they're really

5    rooted in good reason.

6              SPECIAL MASTER SCHNEIDER:  Do you

7    remember the evidence that led the judge to think

8    that there is suspicious circumstances here in this

9    Nimitz case?

10             MR. BUSH:  Yes, your Honor.  I mean it

11   was sort of a very -- well, I don't know if you're

12   asking -- I can relate it to you, but yes, I mean

13   there was sort of a long host of things that happened

14   and cases that seemed unrelated.  And it turned out

15   that they were connected by the same sort of -- you

16   know, the pejorative term is patent troll that was

17   sort of connected to all those cases.  But there was

18   certainly no email that says -- my point, your Honor,

19   is yes, the circumstances surrounding why the funding

20   was relevant are not identical, but what it shows is

21   why sometimes it takes effort to push to figure out

22   what's going on.

23             Some of the evidence that developed

24   were because he held hearings and took testimony and

25   I'm not saying we need that, but we have evidence

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 45

```
 1    here that's pretty strong that something is going on,

 2    especially considering the factor of conflicts of

 3    interest and the interests of the parties are not

 4    being promoted.

 5              We have an email that says I was told

 6    J&J is not willing to settle and that's just not

 7    true.  And that is a really unique fact that makes

 8    this case stronger for us than those other cases.

 9              SPECIAL MASTER SCHNEIDER:  Last

10    question.

11              Mr. Bush, a lot of cases have been

12    cited in the brief.  There wasn't a New Jersey case

13    that was cited except the Valsartan decision.  You've

14    discussed Judge Connolly's decision in the Delaware

15    case.  Is there another case or two that you believe

16    is most supportive of your position in this motion?

17              MR. BUSH:  Your Honor, I think -- I

18    think the circumstances -- I think what the cases

19    show is that the circumstances surrounding when

20    litigation funding can be discoverable come in all

21    sorts of shapes and sizes.

22              All these cases have, as your Valsartan

23    opinion goes through them, they arise in different

24    ways.  This case arose in its own way that is

25    different from those cases in a lot of ways, but is
```

Page 46

1    stronger in the sense that there is now a District of

2    New Jersey local rule that specifically governs the

3    situation, inherently recognizes that this

4    information is relevant, and it sets forth factors

5    that are specifically -- that go specifically to -- I

6    should say that this email that we've been discussing

7    specifically goes toward.  So that situates this case

8    in a much stronger way than those other cases because

9    there is a rule that's been developed that says this

10   information is important for just this very situation

11   when we can't resolve settlement, even after a long

12   time and perhaps the interests of the parties aren't

13   being promoted.

14            And I don't know what evidence you're

15   going to get that's ever better than an email that

16   says I was told that the other side is unwilling to

17   settle even though there is a settlement offer on the

18   table.  There is an email that says please just make

19   me an offer when there is a settlement offer on the

20   table.  I don't know of any way you can get stronger

21   direct evidence of a potential conflict of interest

22   or an interest of a party not being promoted than an

23   email like this.  This goes directly to the factors

24   that Rule 7.1.1 outline.

25            SPECIAL MASTER SCHNEIDER:  And in your

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 47

1    view, that email unlocks the door to the litigation

2    finance discovery settlement communications and

3    discussions regarding the plan of reorganization?

4              MR. BUSH:  Yes, your Honor.  I think

5    it's a very troubling email that she's being told

6    that J&J is unwilling to settle, which is just not

7    true.  And I don't need to belabor it because we've

8    talked about it, but I do think it opens the door to

9    discovery to figure out why is this person not being

10    protected.  We're not seeking attorney-client

11    privileged information to the extent that these -- to

12    the extent any requests -- there is a subset of

13    attorney-client privileged material, there can be a

14    privilege log, how this always goes, so we're not

15    seeking privileged information, we're seeking

16    information like discussions with third parties and

17    funders.  And I do think this unlocks the door.  And

18    as I said, if you have a concern about the breadth of

19    the information that we would be receiving, that in

20    camera review is always available.

21              SPECIAL MASTER SCHNEIDER:  Last

22    question.

23              So as I understand your argument, you

24    know that I'm going to apply a good cause standard,

25    whether that exists against this discovery, and as I

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 48

1    understand your argument, this is the evidence you're

2    relying on to establish good cause:  The email that

3    we've been referring to, the fact that Beasley Allen

4    could get a common benefit fee, that's number two.

5    And number three, bear with me, I don't want to lose

6    my train of thought.  The third one, there is a third

7    reason.  It will occur to me.

8                    MR. BUSH:  The Smith Law Firm is

9    certainly on there.  I don't know if that was your

10   third reason, but I thought maybe it was.

11                   SPECIAL MASTER SCHNEIDER:  No, that

12   wasn't my third reason.  But it will come to me.

13                   The email exchange.  Common benefit.

14   Oh well, it will occur to me.

15                   Mr. Bush, let me give you a chance to

16   take a breath and let's hear from the moving parties.

17   We'll start with Beasley Allen.  I guess that's you,

18   Mr. Pollock.

19                   I don't have any specific questions,

20   but you can make whatever argument you want.  And

21   particularly, again, I'd like to hear, because

22   Defendant puts so much focus on this email exchange,

23   what your position is with regard to that.  But I'd

24   like to hear any other argument, then we'll hear from

25   the PSC and then we'll hear from the Smith Law Firm.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 49

 1                    MR. POLLOCK:  Your Honor, you've been

 2   patient and detailed so I will make it snappy.

 3                    One thing I would notice is that Mr.

 4   Murdica was deposed in the LTL matter on April 16th,

 5   2023.  It's at document number 32827-14.  And Mr.

 6   Murdica specifically addresses one of the questions

 7   that you asked, which is at page 234.  This is

 8   document 32827-14, page seven of eight, which is

 9   187386.

10                    And he says:  I didn't need to because

11   as you've seen, their clients are in support.  The

12   concern that I personally had was that I believe that

13   the Beasley Allen firm is not able to say yes to a

14   deal because they're way too deep in debt from the

15   funding.  And that's on April 16th, 2023.

16                    I point that out because you had asked

17   the question, was this something new to J&J that they

18   had this thought about litigation funding.  And the

19   answer is Mr. Murdica said nope, they can't do any

20   deals because they're way too deep into it.

21                    You also heard, I know you sat through

22   most if not all of the hearings before Judge Porto

23   and Singh, Andy answered the question point blank, do

24   you have litigation funding.  And his answer was

25   simply and plainly no.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 50

1           I also looked at the subpoena and

2    noticed the intent to serve subpoena from Allison

3    Brown at Skadden, and I looked at the definition on

4    documents to be produced.  If you look at page 10, it

5    says:  Litigation funding you have received, all

6    agreements you have entered into.

7           Number five, all documents,

8    communications for funding you have received.

9           So while Mr. Bush is entitled to his

10   concerns, and he's mentioned a number of them, their

11   request is their request.  This shouldn't be a

12   constantly morphing exercise.

13          I don't want to get -- I'm not going to

14   die on the sword of technicalities, but the question

15   that they asked -- what they asked for was what have

16   you received.  And that actually is pretty consonant

17   with 7.1.1.

18          Andy, Beasley Allen have not received,

19   have not engaged in any litigation funding.  So I

20   think that kind of answers that one.

21          And also, I think that Mr. Murdica has

22   said, look, we had deep concerns about this all

23   along.  I don't know why he had it, he doesn't say

24   why he has it, but obviously they're entitled to

25   their suspicions and I'm entitled to reject them.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 51
```
 1                    I also noticed a brilliant decision in
 2      in re Valsartan.
 3                    (Laughter)
 4                    And you go through a number of -- okay,
 5      blatant sucking up.  I'm sorry.
 6                    But in there you do notice some
 7      factors.  And I'm referring here to page 615 to 616.
 8      And the factors are, there is a showing that
 9      something untoward occurred.  The discovery could be
10      relevant.  But then you go on.
11                    Discovery will be ordered where there
12      is a sufficient showing that a non-party is making
13      ultimate litigation or settlement decisions.
14                    And I understand this is Mr. Bush's
15      concern.  The reality is, you know, the email
16      exchange is what it is.  I have not spoken to DD.  I
17      really hadn't planned on doing it.
18                    The fact is, I do know, having worked
19      with Andy and Leigh and others, I think these people
20      have always acted, and you've dealt with them too
21      over the course of years, I don't think there is
22      anything underhanded or untoward going on.  I think
23      the client reached out, the client is frustrated, we
24      have all dealt with it, and the answer is that she
25      said what she said.  Where it came from, I don't
```

Electronically signed by Theresa Kugler (001-297-027-4278)                                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 52

1    know.  If you're dying for me to find out, I suppose

2    I could.  I honestly don't know.

3                    What I do know is that Mr. Bush has no

4    right, zero, to inquire into whether Beasley Allen is

5    capable of communicating with its clients.  If you're

6    going to open that door, I got a few questions about

7    whether Mr. Haas is fairly communicating with his

8    board, which I'm sure would be upsetting to J&J.

9                    But I have to assume at some point,

10   especially in this case where the lawyers are doing

11   their job, that Beasley Allen is doing its fair job.

12   Whether the client really understood the

13   communication, did it quote the entire communication

14   if there was a quote to begin with, did it understand

15   exactly what's going on?  I don't know.  And Mr. Bush

16   also notes that this has been going on for a while.

17   It has.

18                    He did traipse into a few other areas,

19   which is one of Mr. Haas' favorite areas to get into.

20                    One is common benefits.  They keep on

21   saying that Beasley Allen is deathly afraid of

22   getting into bankruptcy because they won't get common

23   benefit.  There is actually -- and I don't want to

24   waste your time because you've lived through this and

25   probably know it better than I do.  My understanding

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 53

 1    is no, that's not true.  Under J&J's version of

 2    common benefit, there might be some question, but

 3    there is nothing that prohibits common benefit at

 4    all.  And in this one, the fact is there is no

 5    bankruptcy.  At this point there is no bankruptcy

 6    filing by J&J.

 7                So to me there is a big question,

 8    what's it going to look like when we get there?  I

 9    don't know.  I don't even know if we're going to get

10    to a bankruptcy filing.

11                So the idea of common benefit into the

12    future, Andy has been very clear, I am willing to let

13    the chips fall where they are.  I'm going to

14    represent my client.  That's what he said.  And he

15    was pushed on that point.  And he sticks by that

16    point.  And frankly, I think it's the right thing to

17    have said, which is I'm not -- because otherwise, if

18    he does take a deal, he could probably secure a small

19    fortune for Beasley Allen.  I don't know.

20                Is that the right thing to do?  And

21    Andy said no.  I'm not going to negotiate what I get.

22    What he has said, and I'm summarizing here, is I'm

23    going to let -- I would use the phrase chips fall

24    where they may, because I'm not as sophisticated as

25    Andy, but he is going to let the courts decide what a

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 54

 1    fair amount is.

 2                And Judge Porto, as you may recall,

 3    pushed on this point a little bit.  So I don't think

 4    that that's really -- I think that the idea that Andy

 5    is afraid or Beasley Allen is afraid of bankruptcy, I

 6    don't think that's true.  I think the fact is they're

 7    concerned.

 8                Mr. Bush also points on the point,

 9    well, the fact is six billion dollars is a great

10    deal, it's a wonderful thing to have done.

11                This was the subject of some pretty

12    detailed questioning by Judge Porto of Andy.  Why is

13    this the right number?  What is the right number?

14    And I don't know, because I'm not a fancy torts guy,

15    I am a simple country lawyer.  But what he says, what

16    J&J's own experts say is, well, the right number is

17    somewhere between 12 and 21 billion.  We're not in

18    that range at all.  And Andy did explain that he had

19    concerns.

20                The last point I'll raise here is

21    that -- and obviously, Judge, I want to answer any

22    questions you may have.  But I do think it's

23    duplicitous at best that Mr. Haas, J&J and Mr. Bush

24    are upset about the concept of litigation funding.

25    Because I don't think I can think of a single case,

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 55

 1    and I've done a number of mass torts through Becton

 2    Dickinson and others, not J&J, but it's rare -- I've

 3    never heard of one where the defendant is counting

 4    more noses than the Plaintiffs are.

 5                 And Andy's answer on the stand, which I

 6    thought took guts, was to say, well, there is

 7    about -- I'm going to ballpark it, 30 to 40 thousand

 8    claims that actually have merit, that have real

 9    concern where people need real compensation.  And

10    then there are a lot of claims where there is some

11    real questionable science.  How many Plaintiffs'

12    lawyers are willing to say that about other

13    Plaintiffs' lawyers?  That takes guts.  Because as

14    you know, this is a relationship business.  But

15    that's what Andy has said.  And yet what Mr. Murdica

16    and Mr. Haas are doing is attempting to flood the

17    bankruptcy ballot box, as I call it, with other

18    claims.

19                 So why would you do that?  You would do

20    that because if you give people who don't have the

21    high potential of winning some opportunity to get

22    something, then obviously you have an opportunity to

23    get more of both.  And that's basically what they've

24    all been going through for months now.  Mr. Murdica

25    trying to sell the J&J plan.  Beasley Allen and

Electronically signed by Theresa Kugler (001-297-027-4278)                        a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 56

 1    others saying no, that plan is not sufficient.

 2                I am not capable, Judge, I'm not going

 3    to lie to you, I am not capable of telling you what a

 4    good number is or not.  But I do think there is

 5    honest, heart-felt disagreement, at a minimum,

 6    between the two parties.

 7                They raise two other issues that I

 8    don't know if you want to get into it; champerty and

 9    vexatious litigation.  I'm probably one of the few

10    people who brief champerty to death in a previous

11    case.  I think we've hit everything else.

12                Your Honor, I've answered as briefly as

13    I can the points I wanted to make.

14                Do you have any questions for me?

15                SPECIAL MASTER SCHNEIDER:  I have no

16    questions.

17                MR. POLLOCK:  Thank you, your Honor.

18                SPECIAL MASTER SCHNEIDER:  You're the

19    moving party.  Does the Steering Committee want to be

20    heard?

21                MR. GOLOMB:  Yes, your Honor.  Thank

22    you.

23                We're in a unique position here because

24    you served as the mediator, one of the mediators in

25    this case.  And so you know what the status of the

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 57

 1    negotiations were in this case.  And you know one of

 2    the main goals here for J&J is not just to raise this

 3    issue of litigation funding, which they don't like,

 4    they also don't like the seventh amendment.  You

 5    know, they don't like jury trials.  They don't like

 6    jurors.  They don't like judges who sit on

 7    Plaintiffs' verdicts.  They don't like the Third

 8    Circuit Court of Appeals when they rule against them.

 9    They don't like the Supreme Court of the United

10    States when they rule against them.  They don't like

11    bankruptcy judges when they don't rule against them.

12    And that's really what this is about.

13              What this is about has nothing to do

14    with DD and the email exchange and whatever

15    information is flowing to a client or not.

16              I will tell you and I will challenge

17    anybody from J&J today to tell us what is the offer

18    that should have been conveyed that wasn't conveyed

19    to DD?  What is it that she was supposedly getting

20    out of this, quote/unquote, settlement in this case?

21    There is no number.  They don't know the number.  We

22    don't know the number.  And DD doesn't know the

23    number.  The best they can give us in their

24    disclosures of a threatened third bankruptcy is that

25    the average case value will be somewhere between 50

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 58

1    and 200 thousand dollars.  That's not an offer.

2    That's not an offer at all.

3                 So let me just respond to a couple of

4    things that Mr. Bush said.

5                 You asked him a very direct question

6    which was really that there is a moving target in

7    your papers.  You started by asking for the

8    litigation funding of Beasley Allen and now that

9    moving target is now transitioned.  And just think

10   about the precedent that they're trying to set here.

11   What they are trying to sell to you, Judge, is that

12   7.1.1 requires me or Beasley Allen or any of the

13   other leaders in this case or any lawyer who accepts

14   referrals from other lawyers, whether it's in a mass

15   tort or not, that they are now trying to impose on us

16   a duty to say to the lawyer who is referring the case

17   to us, do you have litigation funding.  That is not

18   the point of 7.1.1.  And I understand that Johnson &

19   Johnson takes that position now for two reasons.

20               Number one, because they know that

21   Beasley Allen has no such funding for talc cases.

22   And they don't like the fact that Beasley Allen is

23   one of a number of firms that is standing in the way

24   of their cram-down through the bankruptcy rather than

25   coming to the table and negotiating an

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 59

1    out-of-bankruptcy solution on behalf of a 380 billion

2    dollar company.

3                    You also asked the question as to

4    whether or not this is something that just arose.

5    And Mr. Bush, in a hedge, said that this is something

6    that they've been thinking about for years.

7                    Well, in Valsartan, at least the issue

8    was raised at the time that the fact sheets were

9    being negotiated.  And your Honor knows that well.

10   That's the way that that issue arose in Valsartan.

11   And your Honor appropriately said it's not relevant,

12   it's not discoverable.

13                   In this case, the fact sheets are now

14   almost eight years old and not once was that issue

15   raised.  That issue was raised now because this is

16   just another delay and distraction that J&J is trying

17   to cause while they go out there and they bad mouth

18   Beasley Allen, they bad mouth the leadership of this

19   case to try to convince other lawyers like the ad hoc

20   lawyers.

21                   Now, the irony in this case is that the

22   only people who know how much they're getting, the

23   only clients that know how much they're getting, are

24   the clients of these ad hoc lawyers who are now

25   trying to flood the vote in yet a third bankruptcy.

Electronically signed by Theresa Kugler (001-297-027-4278)                          a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 60

 1    And they know that they're getting 15 hundred dollars

 2    a case.  But our clients, who have ovarian cancer or

 3    who have died from ovarian cancer, have no idea what

 4    they're getting in this case.

 5                You know, the other thing that Mr. Bush

 6    said was he said that the, quote/unquote, settlement

 7    negotiations have been going on for a while.  And you

 8    and I both know something about that, don't we, Judge

 9    Schneider?  And what we know is that these

10    negotiations have been going on since 2019.  And what

11    we also know is that J&J came to us, the leadership

12    in this case, in June of 2022 during the first

13    bankruptcy and said here is a global offer in

14    bankruptcy, take it or leave it.  And we said no.

15    For a lot of reasons.  Not the least of which is they

16    were not fair and reasonable values for our clients

17    and they were going to be paid out over 25 years.

18                Well, since June of 2022 they've done,

19    up to the filing, including the filing of this

20    particular motion, there was not a single negotiation

21    between J&J, their lawyers and the leadership in this

22    case.  They've done everything they can to go around

23    us to try to cram down settlement values that were

24    not there and were not reasonable no matter how many

25    times they stood up in a courtroom in bankruptcy

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 61

1    saying all they wanted was fair and reasonable

2    values.

3              Now, another thing that Mr. Bush said

4    was they didn't -- these lawyers didn't just get a

5    epiphany to file these claims.  Yes, they did, as a

6    matter of fact.  And the epiphany came on two

7    different dates.  It came on the date that the

8    Daubert order was entered.  And more importantly, as

9    it affects us, why we are here today, is there was a

10   bankruptcy.  These lawyers who they negotiated with

11   to come up with this six billion dollar settlement,

12   which they talked to the press, they tell the courts

13   this is unprecedented, you know, these cases are -- I

14   lost my train of thought there for a second.

15             But these cases did not come into

16   effect.  The ones that they're negotiating with the

17   ad hoc committees, these claims were not even in

18   existence until the bankruptcy.

19             I mean you've got a lawyer who is

20   leading this ad hoc group that has 17 thousand cases,

21   not a single one of which existed pre-Daubert, and

22   not a single one of which that existed

23   pre-bankruptcy.  These are these other gynecological

24   cases that they are making a quick hit on for 15

25   hundred dollars a case.  And these are not cases.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 62

1                 So there was a epiphany in this case.

2     And this epiphany came through negotiations between

3     Jim Murdica, the National Settlement Counsel, and

4     these lawyers for the ad hocs.

5                 Another interesting point that Mr. Bush

6     said was that in talking about this collusion between

7     the Smith Firm and Beasley Allen, that there were

8     seven trials that they tried together.  And that's

9     true.  There were seven trials they tried together

10    and got over 700 million dollars in verdicts.  And

11    they were back in 2016, 2017, 2018.

12                It's interesting because Mr. Bush is

13    using that and that relationship between Allen Smith

14    and the Beasley Allen firm while Erik Haas and Jim

15    Murdica are going out and saying that Beasley Allen

16    lost every case that they tried.  Well, you can't

17    have it both ways.  And it's not true that they lost

18    every verdict.

19                And then that argument has also moved

20    over the years.  It's no longer that they lost every

21    trial, it's that they haven't gotten paid.  Well,

22    that has nothing to do with the merits of the case,

23    it has to do with the jurisdictional grounds.

24                And the last thing I'll say, and your

25    Honor, you know this, and that is this idea that

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 63

1    Beasley Allen and the leadership in this case is

2    standing in the way of a fair and reasonable

3    settlement to protect their common benefit is absurd.

4    You well know that there has never not been a

5    single -- no matter how much J&J tries to dangle that

6    in front of us, there has not been a single

7    conversation about common benefit amongst the

8    leadership in this case or with the mediators in this

9    case.

10                    We have always taken the position that

11   once we get fair and reasonable values for our

12   clients, that whatever common benefit there is will

13   be taken care of by itself.  So the fact that the

14   parties haven't come together after ten years to

15   settle this case is -- we agree it is very -- it is

16   so frustrating that we haven't been able to come to

17   an agreement on that.

18                    But, you know what, in every other

19   case, and there is a lot of experience on this

20   hearing today.  In any other case, you litigate a

21   case, you get to a point where the case is either

22   going to be settled or tried.  If there is not a

23   reasonable -- fair and reasonable offer made on the

24   case, then you go to trial.

25                    That's not the rules that J&J wants to

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 64

1    play by.  That's the seventh amendment.  That's not

2    the rules that J&J wants to play by.

3              They got to a certain point, they lost

4    Daubert, they lost Ingham in front of the United

5    States Supreme Court, they lost Carl in front of the

6    New Jersey Supreme Court, and then rather than trying

7    cases, rather than coming to the table to settle

8    these cases, what they did was they filed for

9    bankruptcy.  Not once, but twice.

10              And I'll just end by saying this, your

11   Honor.  And that is the Valsartan opinion should be

12   the final say in this case.  The Plaintiffs'

13   litigation funding is not relevant to the claims

14   against the Defendants and, therefore, they are not

15   subject to discovery in this case.  And as your Honor

16   said both in Valsartan and in your questioning here

17   today, speculation does not justify discovery under

18   Federal Rule of Civil Procedure 26.

19              There is not a single case, as your

20   Honor has pointed out, there is not a single case

21   today that has any remote connection to this case

22   that has been cited by the Defendants in this case.

23   There is not a single New Jersey case.

24              You're looking at Carbabbi, which is a

25   class action case which went directly to the adequacy

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 65

1    of class counsel under Rule 23, that doesn't exist in

2    this case.

3              You have the Nelson versus Millennium

4    case, which is out of Arizona.  And that was only

5    relevant because there was a suspicion that one of

6    the Defendant's market competitors was the one that

7    was actually funding the litigation against the

8    Defendant.  That doesn't exist in this case.

9              The Hobbs versus American Commercial

10   Barge case, the Court found the litigation funding

11   was relevant because there was evidence that the

12   litigation funders were paying for medical expenses.

13   That doesn't exist in this case.

14             And as your Honor knows in the in re

15   American Systems case that there was evidence that

16   litigation funders were paying for corrective

17   surgeries.  That's not the case here.

18             This motion and other motions like it

19   that have now been pending for six months do nothing

20   to serve the parties in this case, is nothing more

21   than a distract-and-delay either the ultimate

22   resolution of this case or trials in this case.  And

23   that's what J&J wants.  While Jim Murdica goes out

24   and tries to gather support for a bankruptcy that

25   will yet again fail.  That's all this is about.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 66

 1                    Thank you, your Honor.

 2                    SPECIAL MASTER SCHNEIDER:  Thank you.

 3                    Okay.  Mr. LaKind, if I'm pronouncing

 4     it right.

 5                    MR. LaKIND:  You are, your Honor.

 6     Thank you.

 7                    SPECIAL MASTER SCHNEIDER:  You've been

 8     very patient.

 9                    The floor is yours.

10                    MR. LAKIND:  Thank you, your Honor.

11     Arnold LaKind, Szaferman, LaKind, Blumstein & Blader.

12                    Your Honor, for the most part I'll rely

13     on my brief and I'll be very brief.  You've heard

14     quite a bit of argument.

15                    I just really want to make three

16     points.

17                    Point number one is that

18     notwithstanding Mr. Bush's argument that aggregation

19     is quite common in these types and other mass tort

20     cases, in the statement in Nimitz that there are a

21     large number of states that have adopted rules

22     similar to 7.1.1, they do not cite a single case in

23     which the type of discovery they seek was provided by

24     an individual who is not a counsel to the case.  My

25     client does not have a single case in the MDL.  But

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 67

1    notwithstanding that, they failed to find or cite to

2    a single case that supports the proposition that

3    they're entitled to the discovery they seek from my

4    client.

5              Number two, if I understand Mr. Bush's

6    argument, it's the following:  If we can get into the

7    door of discovery, we might or we could be or we

8    might find some plausible information.  And what he's

9    hearing is simply implausible.  It's all based on

10   conjecture predicated on getting discovery first,

11   which really reverses the burden.

12             The sole basis, and I know your Honor

13   mentioned there were three, but as I understood, the

14   sole basis I heard that would warrant discovery is

15   this email from DD that has nothing whatsoever to do

16   with my client, who is not in the MDL, doesn't know

17   who DD is, and has nothing to do with it, has never

18   communicated with a client in the MDL.  So what

19   they're using as a predicate to award further

20   discovery is entirely irrelevant to the Smith Law

21   Firm.

22             And third, I'd just like to return to

23   the Nimitz case.  I think Nimitz is quite different

24   from your Honor's decision in Valsartan.  I'm not

25   sure I'm pronouncing it properly.  It's different in

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 68

1    the following three respects.

2              Number one, the attorney from whom the

3    discovery was required had already been sanctioned by

4    the Court.

5              Number two, that attorney or one of his

6    co-counsel had ignored, through disclosure

7    requirements.

8              And number three, and I'm repeating

9    what I think Jeff or one of the other attorneys said,

10   there was some conflicting statements made there.

11   And that concerned the Court.

12             This is not a Nimitz case, especially

13   from Mr. Smith's perspective.  There is simply no

14   justification in order to warrant discovery of his

15   financial arrangements.  Yes, he has tried cases with

16   Beasley Allen.  Mr. Smith does a lot of state court

17   work, not much federal court work.

18             Your Honor, you've heard quite a bit of

19   argument, I don't want to belabor anything.  I'll

20   rely on my brief unless you have specific questions

21   for me.

22             SPECIAL MASTER SCHNEIDER:  Thank you,

23   Counsel.

24             Mr. Bush, do you have any brief

25   response?

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 69

1                    MR. BUSH:  There is a lot there, three

2     one one, so I'm not going to try to take on every

3     single point that was made by all three attorneys.

4     But there are three things I want to respond to.  And

5     with your permission I'd like to sort of sum up what

6     our argument is and put it all in one place for you.

7                    One thing I want to respond to is this

8     idea that J&J is stuffing the ballot box.  These are

9     claims that exist, they're claims that exist in the

10    MDL.  Beasley Allen is not dismissing them, so they

11    need to be resolved.  So the way they get resolved is

12    to put them into the settlement plan.

13                    Second thing that was said by, I think,

14    Mr. Golomb which was that we're afraid of jury trials

15    and that we hate the seventh amendment.  Well, we won

16    the last seven ovarian cancer trials, that was six

17    defense verdicts and one mistrial.  We're not scared

18    of trying the cases.  They're being tried all the

19    time, including one that's happening this month.

20                    The issue is that there are 60 thousand

21    claims in this MDL.  There is no way to try all 60

22    thousand claims unless we want to be here for the

23    next five hundred years trying cases.  So we're not

24    scared of jury trials, we don't hate the seventh

25    amendment, but at some point this MDL is only going

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 70

 1    to resolve through a settlement absent Daubert.

 2                    Third, there was a discussion by Mr.

 3    Golomb of, well, we don't actually have an obligation

 4    to ask our co-counsel of the funding that they're

 5    receiving and the way that it's being referred to us.

 6    And what the rule requires is not that the counsel

 7    disclose the counsel's funding, but that the party

 8    disclose the funding for the litigation.  And this is

 9    exactly what had occurred in the Nimitz case in

10    Delaware where the attorney said, well, there is no

11    litigation funding.  And the judge asked, well, how

12    do you know where the money is coming from that's

13    getting to you.  And it turned out, well, he didn't

14    really know.

15                    So it's whether the party is receiving

16    funding that's at issue with Rule 7.1.1.  And I think

17    it is very concerning if the party is receiving

18    funding that's not being disclosed because of the way

19    things are being arranged with who's getting the

20    funding and who's making the appearance in the MDL.

21                    So those are the three things I wanted

22    to respond to.

23                    And then at the end of our last

24    discussion there was a discussion of what were our

25    reasons and can we sum them up.  So I just wanted to

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 71

 1   try to do that.

 2              Briefly, I think I've hit these points

 3   between all the arguments, but I wanted to sort of

 4   put it in one place for you.  And here is the

 5   evidence we have to why we think the litigation

 6   funding is relevant here.

 7              First of all, Rule 7.1.1 recognizes

 8   that it's relevant.  It's something that didn't exist

 9   at the time of your Valsartan opinion.  And it

10   specifically says that it's -- not only do we think

11   there may be a problem with the disclosure itself,

12   but it specifically permits discovery into litigation

13   funding if the interest of the parties isn't being

14   promoted or protected, there are conflicts of

15   interest, there is a question about who has authority

16   to make settlement decisions, or disclosure is

17   necessary to any other issue in this case.  So it's a

18   broad rule that allows that catch.

19              And here is the evidence that we have

20   that we meet those factors.  Beasley Allen told at

21   least one plaintiff that J&J is unwilling to settle,

22   and that's just not true.  And if they're telling one

23   Plaintiff that, I don't think it's speculation to

24   think that that's the only Plaintiff that's being

25   told that.

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 72

1              Beasley Allen does stand to gain up to

2    12 percent of the total recovery in the common

3    benefits fund.  There is something that I think Mr.

4    Pollock raised which is, well, nothing prohibits

5    common benefit funds in the bankruptcy.  And that may

6    be true, but there is currently no setup for that

7    right now and nothing in the proposed plan for that.

8    So the options are a definite common benefit fund or

9    maybe somehow it will come up in the bankruptcy.

10             Beasley Allen specifically said in

11   their press release they stand ready to resolve this

12   case, but just outside of bankruptcy.

13             How are these litigation funding

14   arrangements happening given Mr. Birchfield's

15   testimony about direct funding?

16             Well, his testimony is that Beasley

17   Allen obtains the majority, if not the vast majority,

18   of its cases through co-counsel relationships.  And

19   we had known at least one of those co-counsels is

20   receiving litigation funding.  So the claims are

21   subject to litigation funding that's required under

22   the disclosure of Rule 7.1.1.

23             And I want to talk a little bit about

24   the context, your Honor, about the mass tort context.

25   Because when I was talking about Mass Torts Made

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 73

1    Perfect, I wasn't meaning to give a policy view about

2    the pros or cons of litigation funding in the

3    abstract.  The reason I was saying this is that

4    litigation funding permeates the mass tort world.

5    And for better or worse, that's just true --

6                 SPECIAL MASTER SCHNEIDER:  Counsel, I

7    don't mean to interrupt you on this, but I think this

8    argument is completely, absolutely, one hundred

9    percent irrelevant to what we're doing.

10                It makes no matter what goes on in the

11   mass tort business in general.  And all the law

12   review articles that you cite, in my view, are

13   completely irrelevant to this case.  The only thing

14   we're concerned about is Beasley Allen, talc and this

15   MDL.  If you want to talk about that, I'm all ears,

16   I'll stay all night.  But as far as I'm concerned,

17   any discussion about the litigation finance business

18   in general and how mass torts operate, it has

19   absolutely zero concern about what we're doing.

20   We're concerned about this case and these people.

21                So I don't want to waste your breath by

22   talking about issues that have absolutely nothing to

23   do with this case.

24                MR. BUSH:  Your Honor, I'll just say,

25   we obviously have a different view about its

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

Page 74

1    relevance, but you're the decision-maker and I hear

2    you loud and clear about don't raise this anymore, so

3    I'll just move on there.

4              For the record, we do think it's

5    relevant, but I'll move on.

6              And I'll just say that the last factor

7    here is just that the settlement has been unduly --

8    that the litigation has been unduly prolonged, which

9    is something in the Valsartan opinion was relevant in

10   terms of whether we're going to seek in camera here.

11   It's been going on for eight years.  There is a giant

12   offer on the table.  And the settlement is just

13   not -- it hasn't happened in a long time.  And so

14   what this information is relevant to is why are

15   clients being told that J&J is unwilling to settle?

16   And the rule recognizes -- the purpose of the rule is

17   because there can be a disconnect between the

18   incentives of the client and the incentives of the

19   attorney.

20             So we think that we fit within that

21   rule and for the reasons I've said at this hearing,

22   we ask for the motion to quash be denied.

23             SPECIAL MASTER SCHNEIDER:  Thank you,

24   Mr. Bush.

25             The moving parties have the burden of

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 75

1   proof, so they have the last word.

2              Mr. Pollock, anything you want to add?

3              MR. POLLOCK:  Judge, it's clear to me

4   you understand the issues, you understand the facts.

5   I have nothing to add unless you have any questions

6   for me.

7              SPECIAL MASTER SCHNEIDER:  Thank you,

8   Mr. Pollock.

9              Mr. Golomb?

10             MR. GOLOMB:  Same here, Judge.

11             Thank you.

12             SPECIAL MASTER SCHNEIDER:  Last but not

13  least.

14             MR. LAKIND:  The only thing I would

15  point out, and I may be wrong on this, but I think on

16  a third-party subpoena the burden of proof on

17  relevance falls to the person issuing the subpoena,

18  not to the recipient.  The burden of proof to quash

19  on other grounds falls upon the recipients.  I think.

20             SPECIAL MASTER SCHNEIDER:  The burden

21  of proof of relevance, you're moving to quash --

22             MR. LAKIND:  Yes.

23             SPECIAL MASTER SCHNEIDER:  I don't

24  think it makes a hill of beans to the ultimate

25  decision, but you filed the motion to quash or for

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 76

1    protective order, and you're saying it's the

2    defendant's burden of proof?

3                MR. LAKIND:  Yes.  I think, your Honor,

4    under Lesal, L-E-S-A-L, 153 FRD 552 and Morse/Diesel,

5    142 FRD at 84.  I think just with relevance, that's

6    their burden.  Everything else like proportionality,

7    privilege, that falls to me -- falls to the

8    recipients.

9                SPECIAL MASTER SCHNEIDER:  Okay.

10               MR. LAKIND:  Again, I may be wrong, but

11   that's what I recall when I was preparing, your

12   Honor.

13               SPECIAL MASTER SCHNEIDER:  It could be

14   the case sort of like a burden-type shifting.  I

15   don't know what the answer is.  I don't think it

16   makes a difference.  But maybe they have the initial

17   burden of making a prima facie case and maybe it's

18   the moving party's burden to quash it.  But like I

19   said, I don't think it's -- whoever has the burden, I

20   think the ultimate issue is relevance.

21               MR. LAKIND:  Yes.

22               SPECIAL MASTER SCHNEIDER:  Okay.

23               Counsel, I thank you.

24               It's incredibly enjoyable for me to

25   work with such a distinguished group of attorneys who

Electronically signed by Theresa Kugler (001-297-027-4278)                     a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 77

1    are so competent and the papers are so good.  And I

2    mean that.

3                 I'm reserving decision, but I expect to

4    issue a very prompt decision.

5                 I thank you very much and I hope you

6    have a great weekend.

7                 (Hearing Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

July 1, 2024

Page 78

1                 C E R T I F I C A T E

2

3        I, Theresa Mastroianni Kugler, a Notary Public

4   and Certified Court Reporter of the State of New

5   Jersey, do hereby certify that the foregoing is a

6   true and accurate transcript of the testimony as

7   taken stenographically by and before me at the time,

8   place, and on the date hereinbefore set forth.

9

10        I DO FURTHER CERTIFY that I am neither a

11   relative nor employee nor attorney nor counsel of any

12   of the parties to this action, and that I am neither

13   a relative nor employee of such attorney or counsel,

14   and that I am not financially interested in the

15   action.

16

17

18

19   _____

     Theresa Mastroianni Kugler,
20   Certified Court Reporter
     Certificate No. XIO857
21   Notary Public, State of New Jersey
     Commission Expires July 11, 2026
22   Commission No. 2410394
     Date:  July 5, 2024
23

24

25

Electronically signed by Theresa Kugler (001-297-027-4278)                    a1cd435f-6b23-4dc4-8d10-022eb90def77

**A**

**ability** 14:23
**able** 38:6 41:17
  41:19 42:9,20
  49:13 63:16
**absent** 70:1
**absolutely** 29:18
  32:4 73:8,19
  73:22
**abstract** 22:17
  38:1 73:3
**absurd** 63:3
**accept** 8:2 24:9
  40:2 41:2
**accepted** 37:20
  37:20,22 38:20
**accepts** 58:13
**accurate** 32:1
  44:3 78:6
**accurately** 10:5
  32:24 35:9
**Achtemeier** 29:9
  30:11
**acted** 51:20
**action** 64:25
  78:12,15
**actions** 30:7
**actively** 38:14
**ad** 59:19,24
  61:17,20 62:4
**add** 75:2,5
**address** 7:15,21
  7:22
**addresses** 49:6
**adequacy** 64:25
**adhere** 30:3
**Adjourned** 77:7
**adopted** 66:21
**ads** 11:24,25
**advertisement**
  23:15
**advertisements**
  15:16 23:11
**advertising**
  11:24 15:15
**advised** 17:3

**affect** 12:25
  14:22
**afraid** 52:21
  54:5,5 69:14
**afternoon** 6:3,4
  6:8,17,21,25
**agencies** 29:4
**aggregated**
  11:23 15:14
  23:9
**aggregating**
  11:19 15:8
  28:1
**aggregation**
  12:1 23:15
  66:18
**ago** 25:25
**agree** 8:2 11:10
  11:11 13:3
  22:14 63:15
**agreement**
  14:21 34:3
  63:17
**agreements** 50:6
**ALABAMA**
  3:10
**alakindszafer ...**
  5:5
**Allen** 3:8 4:25
  5:6 6:16,23
  8:12,14,16
  10:12,16,18,25
  11:8,15 12:12
  13:2,5 14:18
  16:2,5 17:14
  17:18 19:6
  20:18 24:2
  25:1,6,15 26:1
  26:3,17,22
  27:25 28:8,25
  29:8,10,19
  30:20,22,25
  31:12,21 32:2
  32:9,13 33:1
  34:7,18 35:6
  37:2 38:14

  39:4 41:1
  42:13 48:3,17
  49:13 50:18
  52:4,11,21
  53:19 54:5
  55:25 58:8,12
  58:21,22 59:18
  62:7,13,14,15
  63:1 68:16
  69:10 71:20
  72:1,10,17
  73:14
**Allen's** 14:22
  18:7 25:9 40:1
  40:14
**Allison** 50:2
**allowed** 17:2
**allows** 71:18
**amendment**
  57:4 64:1
  69:15,25
**American** 65:9
  65:15
**AMERICAS**
  4:16
**amount** 12:3,17
  36:17 37:8
  54:1
**analogous** 43:18
**and/or** 1:5 6:9
**Andy** 5:21 6:20
  8:15 32:18
  49:23 50:18
  51:19 53:12,21
  53:25 54:4,12
  54:18 55:15
**Andy's** 55:5
**answer** 13:11
  20:23 30:23
  32:11,14 33:15
  34:13 40:22
  42:19 43:9
  49:19,24 51:24
  54:21 55:5
  76:15
**answered** 49:23

  56:12
**answers** 30:12
  50:20
**anybody** 57:17
**anymore** 74:2
**apart** 37:11
  40:15
**Appeals** 57:8
**appearance** 6:15
  18:21 70:20
**appearing** 21:14
**apply** 47:24
**appropriate** 8:1
**appropriately**
  59:11
**April** 49:4,15
**arbitrary** 40:3
**areas** 52:18,19
**argue** 29:25
**arguing** 24:8
  25:14
**argument** 6:8,12
  9:2 10:21
  24:24 47:23
  48:1,20,24
  62:19 66:14,18
  67:6 68:19
  69:6 73:8
**arguments** 71:3
**arisen** 13:13
**Arizona** 65:4
**Arnold** 5:2 6:22
  66:11
**arose** 45:24 59:4
  59:10
**arranged** 19:14
  70:19
**arrangement**
  11:18 20:18
**arrangements**
  10:23 12:15
  37:6 68:15
  72:14
**article** 15:12
  23:13
**articles** 73:12

**ASHCRAFT**
  3:3
**asked** 16:15
  17:4 18:3,5
  30:24 32:6
  49:7,16 50:15
  50:15 58:5
  59:3 70:11
**asking** 18:5 19:9
  30:14 43:11
  44:12 58:7
**assert** 7:25
**asserted** 9:3
**asserting** 8:9
**associated** 10:19
  10:24 12:10,20
  12:24 13:4
**assume** 21:6,8
  32:7 52:9
**assuming** 24:23
**attached** 28:20
**attack** 33:23
**attempting**
  55:16
**attorney** 34:18
  68:2,5 70:10
  74:19 78:11,13
**attorney-client**
  30:15 32:16
  47:10,13
**attorneys** 3:7,12
  3:18,24 4:5,11
  4:18,25 5:6,10
  42:2 68:9 69:3
  76:25
**authority** 71:15
**available** 47:20
**AVENUE** 4:16
**average** 57:25
**avoid** 19:15
  21:13
**award** 67:19

**B**

**back** 12:17
  17:25 26:20,24

27:11 29:8
33:6,20 37:9
62:11
**bad** 29:16 59:17
59:18
**ballot** 55:17
69:8
**ballpark** 55:7
**bankruptcy**
13:19 14:6
16:10 35:18
39:7,7,10,10
42:23,24 43:15
52:22 53:5,5
53:10 54:5
55:17 57:11,24
58:24 59:25
60:13,14,25
61:10,18 64:9
65:24 72:5,9
72:12
**Barge** 65:10
**BARR** 4:2
**based** 22:15,17
35:4 40:18
67:9
**basically** 18:9
55:23
**basis** 67:12,14
**BAYLEN** 4:3
**beans** 75:24
**bear** 48:5
**Beasley** 3:8 4:25
6:16 8:11,13
8:16 10:11,16
10:17,24 11:8
11:15 12:11
13:2,5 14:18
14:22 16:2,5,9
17:14,17 18:7
19:6 20:18
24:2 25:1,6,8,9
25:15 26:1,3
26:17,22 27:25
28:8,25 29:8,9
29:19 30:20,22

30:25 31:12,21
32:2,9,12 33:1
34:7,18 35:6
37:2 38:14
39:4 40:1,14
41:1 42:13
48:3,17 49:13
50:18 52:4,11
52:21 53:19
54:5 55:25
58:8,12,21,22
59:18 62:7,14
62:15 63:1
68:16 69:10
71:20 72:1,10
73:6 73:14
**Becton** 55:1
**bed** 33:3
**beginning** 33:14
**behalf** 6:23 7:7
8:13 18:21
59:1
**belabor** 47:7
68:19
**belief** 31:3 40:1
40:1
**believe** 9:22
19:7 24:12
27:13,16 31:20
34:11,12,22
38:18 41:2
45:15 49:12
**believes** 34:22
**belongs** 33:3
**benefit** 7:4 20:9
39:6 48:4,13
52:23 53:2,3
53:11 63:3,7
63:12 72:5,8
**benefits** 52:20
72:3
**BERMAN** 3:19
3:20
**best** 8:6 19:16
30:8 54:23
57:23

**better** 37:1,4
46:15 52:25
73:5
**BIDDLE** 4:7
**big** 20:5 53:7
**billion** 38:23
54:9,17 59:1
61:11
**Birchfield** 5:21
6:20 11:16
14:13 15:23
16:11 17:21
**Birchfield's**
28:2 72:14
**bit** 9:25 54:3
66:14 68:18
72:23
**Blader** 5:1 6:23
66:11
**blank** 49:23
**blatant** 51:5
**BLUMBSTEIN**
5:1
**Blumstein** 6:23
66:11
**board** 52:8
**box** 1:22 3:10
55:17 69:8
**breadth** 47:18
**breath** 28:5
48:16 73:21
**brief** 28:20
38:11 45:12
56:10 66:13,13
68:20,24
**briefly** 56:12
71:2
**briefs** 35:17
**brilliant** 51:1
**broad** 71:18
**brought** 13:22
**Brown** 50:3
**BUCHANAN**
4:2
**burden** 67:11
74:25 75:16,18

75:20 76:2,6
76:17,18,19
**burden-type**
76:14
**BURNS** 3:14
**Bush** 4:14 7:7,7
10:2,3,13 11:5
11:11 13:12,16
14:12,16 15:23
15:25 16:13,17
16:23 17:25
18:19 19:5,24
20:22 22:16
23:22 24:14
25:2,19 26:12
26:19 27:10
28:4 29:12
31:25 32:22
33:5,7 35:7
37:4,23 38:10
40:4 41:7
42:15 43:8
44:10 45:11,17
47:4 48:8,15
50:9 52:3,15
54:8,23 58:4
59:5 60:5 61:3
62:5,12 68:24
69:1 73:24
74:24
**Bush's** 51:14
66:18 67:5
**business** 23:25
55:14 73:11,17

———————
**C**
**C** 3:1 78:1,1
**call** 23:4 28:23
29:22 55:17
**camera** 36:18,22
41:13 47:20
74:10
**CAMPUS** 4:8
**CANAL** 3:15
**cancer** 60:2,3
69:16

**capable** 52:5
56:2,3
**capricious** 40:3
**Carbabbi** 64:24
**care** 63:13
**carefully** 16:1
18:24
**Carl** 64:5
**case** 9:8 13:1
15:3 18:18,20
19:21,23 20:19
21:18,22,25
22:20 23:17
25:24 27:18
34:1 36:19
37:14 39:9
40:23 43:4,9
43:14,18,19
44:9 45:8,12
45:15,15,24
46:7 52:10
54:25 56:11,25
57:1,20,25
58:13,16 59:13
59:19,21 60:2
60:4,12,22
61:25 62:1,16
62:22 63:1,8,9
63:15,19,20,21
63:21,24 64:12
64:15,19,20,21
64:22,23,25
65:2,4,8,10,13
65:15,17,20,22
65:22 66:22,24
66:25 67:2,23
68:12 70:9
71:17 72:12
73:13,20,23
76:14,17
**cases** 11:17,19
11:19 12:6
14:14 20:3,8
20:10,10,12
21:23 26:3
44:14,17 45:8

45:11,18,22,25
46:8 58:21
61:13,15,20,24
61:25 64:7,8
66:20 68:15
69:18,23 72:18
**catch** 28:5 71:18
**categories** 9:7
9:19,23 10:6
**cause** 35:25
47:24 48:2
59:17
**caveat** 9:21
10:14 13:7
**caveated** 13:11
**CELL** 5:5
**CENTER** 4:22
**certain** 7:15
12:17 64:3
**certainly** 44:18
48:9
**Certificate**
78:20
**Certified** 1:21
2:10 78:4,20
**certify** 78:5,10
**cetera** 32:24
**challenge** 33:1
57:16
**champerty** 56:8
56:10
**chance** 28:5
48:15
**characterizati...**
31:3,13,15
32:2 34:20
**CHAREST** 3:14
**check** 27:14
**chips** 53:13,23
**choice** 32:15,17
**CHRISTOPH...**
4:2
**Circuit** 57:8
**circumstances**
43:19 44:8,19
45:18,19

**circumstantial**
20:1
**cite** 19:22 43:4,9
66:22 67:1
73:12
**cited** 15:12
45:12,13 64:22
**Civil** 1:24 64:18
**claim** 12:12
**claimant** 19:23
**claimants** 19:4
20:19 26:22
27:8 37:19
43:16
**claims** 10:17,18
10:23,24,25
11:22 12:2,10
12:25 13:5
15:2,6,8,13,21
16:4 17:7,13
23:9 25:7,9,21
26:11,21 28:1
38:14 55:8,10
55:18 61:5,17
64:13 69:9,9
69:21,22 72:20
**clarification**
11:4
**CLARISSA**
5:15
**class** 64:25 65:1
**clear** 27:5 34:25
53:12 74:2
75:3
**clearly** 17:13
31:6 33:23
**client** 13:23 14:2
16:8,19 17:21
28:15,25 29:10
29:14,14,19
30:2,21 32:3,9
32:12,21 33:4
38:4 39:1
51:23,23 52:12
53:14 57:15
66:25 67:4,16

67:18 74:18
**client's** 23:24
40:1
**clients** 13:13
18:7 29:16,16
29:17,22,22
30:11 31:1
36:25 38:15
41:19 42:2
49:11 52:5
59:23,24 60:2
60:16 63:12
74:15
**close** 20:3 38:15
**co-counsel** 10:23
11:17,20,21
14:22 17:9,10
17:15 18:3
20:14 21:8,8
25:5 26:7,17
26:23 27:3,8
27:17 28:1
68:6 70:4
72:18
**co-counseling**
12:11
**co-counsels** 12:5
12:9 25:21
72:19
**co-counsels'**
12:25
**colleague** 6:19
**collusion** 62:6
**come** 10:22
11:13,19 14:24
17:17 37:12
39:20 40:17
45:20 48:12
61:11,15 63:14
63:16 72:9
**comes** 12:24
14:20
**coming** 13:18
31:20 58:25
64:7 70:12
**commencing**

2:14
**COMMERCE**
3:9
**Commercial**
65:9
**Commission**
78:21,22
**Committee** 8:20
56:19
**committees**
61:17
**common** 20:9
39:6 48:4,13
52:20,22 53:2
53:3,11 63:3,7
63:12 66:19
72:2,5,8
**Commonwealth**
2:12
**communicated**
31:16 32:24
35:15 67:18
**communicates**
30:25
**communicating**
52:5,7
**communication**
18:13 31:12
34:25 52:13,13
**communicatio...**
9:11,13,15
30:16,20 31:2
31:4,7 35:1
43:6 47:2 50:8
**COMPANIES**
4:12
**company** 59:2
**compensation**
55:9
**competent** 33:2
77:1
**competitors**
65:6
**complete** 30:16
30:19
**completely**

15:20 24:5
32:24 33:24
73:8,13
**complied** 22:5
**component**
43:21
**concept** 16:20
54:24
**concern** 13:13
16:19 47:18
49:12 51:15
55:9 73:19
**concerned** 13:17
23:23,25 54:7
68:11 73:14,16
73:20
**concerning**
70:17
**concerns** 13:25
14:1,7 24:2
32:23 35:13
36:16 50:10,22
54:19
**confidential**
42:18
**conflict** 46:21
**conflicting**
68:10
**conflicts** 36:2
45:2 71:14
**confused** 11:3
**conjecture**
22:15,18 67:10
**connected** 44:15
44:17
**connection**
16:10 64:21
**Connolly** 21:18
43:22
**Connolly's**
45:14
**cons** 73:2
**considering** 45:2
**consonant** 50:16
**constantly** 50:12
**CONSUMER**

4:12,12
**context** 15:1
  23:6 36:7
  43:13,15 72:24
  72:24
**continue** 34:3
**contrast** 14:2
**conversation**
  63:7
**conveyed** 36:14
  57:18,18
**convince** 59:19
**CORPORATE**
  4:22
**correct** 10:1,10
  16:12,13,21
  18:18 19:19
  24:13
**corrective** 65:16
**cost** 15:17
**costs** 15:9
**counsel** 7:11
  8:15 18:17,20
  18:24 19:20
  62:3 65:1
  66:24 68:23
  70:6 73:6
  76:23 78:11,13
**counsel's** 70:7
**counting** 55:3
**country** 12:4
  15:8,20 54:15
**couple** 7:21 15:1
  18:16 58:3
**course** 19:11
  51:21
**court** 1:1,21
  2:10 7:4 8:16
  20:8,10,12
  30:4 57:8,9
  64:5,6 65:10
  68:4,11,16,17
  78:4,20
**courtroom**
  60:25
**courts** 53:25

61:12
**cram** 60:23
**cram-down**
  58:24
**create** 42:1
**creating** 41:23
**cross-examined**
  16:9,10
**crux** 9:4
**ctisi@levinla...**
  4:5
**current** 14:5
**currently** 24:19
  72:6
**cycles** 33:20

---

### D

**dangle** 63:5
**date** 34:5 61:7
  78:8,22
**dates** 61:7
**Daubert** 61:8
  64:4 70:1
**day** 15:11 31:3
**days** 23:7 32:19
**DC** 3:5
**DD** 28:24 29:3
  29:11 30:10
  31:2 33:2
  51:16 57:14,19
  57:22 67:15,17
**deal** 8:1,4 49:14
  53:18 54:10
**deals** 49:20
**dealt** 9:23 51:20
  51:24
**death** 56:10
**deathly** 52:21
**debt** 49:14
**decide** 15:11
  38:8 53:25
**decision** 6:11,13
  21:21 35:19,20
  38:6 41:12
  42:6 43:22
  45:13,14 51:1

67:24 75:25
  77:3,4
**decision-maker**
  74:1
**decisions** 40:14
  51:13 71:16
**declaration**
  18:23
**deem** 9:3
**deep** 49:14,20
  50:22
**defendant** 4:11
  9:5 48:22 55:3
  65:8
**defendant's**
  9:16 10:10
  28:10 32:1
  37:2,18 38:11
  40:2 65:6 76:2
**Defendants** 4:18
  7:6,8 9:20
  38:17 41:1
  64:14,22
**defending** 32:18
**defense** 7:25
  69:17
**definite** 72:8
**definition** 50:3
**Delaware** 12:18
  43:23 45:14
  70:10
**delay** 59:16
**denied** 74:22
**deposed** 49:4
**deposition** 16:9
  17:6 25:5 32:8
  32:18
**deserve** 36:10
**desire** 11:10
**despite** 34:1
**detail** 10:20
**detailed** 49:2
  54:12
**details** 26:21
**developed** 44:23
  46:9

**Dickinson** 55:2
**die** 50:14
**died** 60:3
**difference** 76:16
**different** 16:25
  33:25 34:13
  45:23,25 61:7
  67:23,25 73:25
**differently**
  33:18
**differing** 42:1
**difficult** 29:17
**direct** 4:9 19:9
  20:13 27:17
  33:9 34:10,12
  34:14,18,21,21
  35:11 36:5
  46:21 58:5
  72:15
**directed** 10:11
  25:7 28:6
**directing** 24:22
**directly** 10:16
  13:2,8 14:18
  16:3 17:18
  24:1 25:8
  31:21 40:11
  46:23 64:25
**disagree** 19:24
  32:1
**disagreement**
  56:5
**disclose** 70:7,8
**disclosed** 15:3
  70:18
**disclosure** 21:13
  22:5 68:6
  71:11,16 72:22
**disclosures** 44:2
  57:24
**disconnect**
  36:21 41:24
  74:17
**discover** 25:17
**discoverable**
  45:20 59:12

**discovery** 12:8
  19:12 21:2,3
  21:17 22:10,11
  22:14,17,22
  47:2,9,25 51:9
  51:11 64:15,17
  66:23 67:3,7
  67:10,14,20
  68:3,14 71:12
**discussed** 45:14
**discusses** 21:23
**discussing** 39:24
  46:6
**discussion** 24:4
  35:17 70:2,24
  70:24 73:17
**discussions**
  29:13 35:2,3
  41:17 47:3,16
**dismissing** 69:10
**disqualify** 16:11
**distinction** 11:3
**distinguished**
  76:25
**distinguishes**
  21:23
**distract-and-d...**
  65:21
**distraction**
  59:16
**District** 1:1,1
  43:23 46:1
**Docket** 1:2
**document** 28:18
  36:22 49:5,8
**documents** 9:7
  9:10,19 22:23
  22:24,25 23:1
  23:3 35:1,2
  36:17 43:5
  50:4,7
**doing** 37:15
  43:14 51:17
  52:10,11 55:16
  73:9,19
**dollar** 59:2

dollars 12:19
  14:20 24:10,18
  38:23 54:9
  58:1 60:1
  61:25 62:10
door 34:25 47:1
  47:8,17 52:6
  67:7
doubt 15:23
  29:18
DRINKER 4:7
DRIVE 4:22
driven 43:12,18
driving 18:12
  23:11 39:18
duplicitous
  54:23
duty 58:16
dying 52:1

**E**

E 3:1,1 5:13,13
  78:1,1
EARLES 3:14
early 29:13
ears 73:15
economic 40:13
economically
  37:11 40:14
effect 31:10
  61:16
effort 22:2,9
  43:24 44:21
efforts 13:19
eight 37:14
  39:20 41:15
  49:8 59:14
  74:11
either 63:21
  65:21
Elizabeth 29:9
  30:10
Ellington 24:12
  24:17,19
email 13:23 14:1
  18:9 28:10

30:18 31:9
33:19,19 34:8
34:9,17 35:4
35:22 36:8,21
38:3 39:1,23
43:17 44:18
45:5 46:6,15
46:18,23 47:1
47:5 48:2,13
48:22 51:15
57:14 67:15
emails 28:12
  33:8,20
employee 78:11
  78:13
engaged 50:19
engagement
  19:10 26:7
  27:18
enjoyable 76:24
entered 18:21
  50:6 61:8
entire 29:3,19
  41:10 52:13
entirely 34:25
  67:20
entitled 50:9,24
  50:25 67:3
entries 6:15
epiphany 15:11
  61:5,6 62:1,2
Erik 62:14
especially 23:6
  45:2 52:10
  68:12
ESQUIRE 3:4,9
  3:14,20 4:2,8
  4:14,15,20,21
  5:2,8,15
essentially 23:9
  24:2
establish 48:2
established
  28:14
et 32:24
event 14:8

everybody 6:3
  29:11 42:6,10
evidence 19:3,9
  19:21,25 20:13
  20:23 22:6
  23:2,20 26:9
  27:17 36:5
  38:24 39:23
  44:7,23,25
  46:14,21 48:1
  65:11,15 71:5
  71:19
exact 17:16
exactly 12:7
  18:12 30:23
  43:18,21 52:15
  70:9
example 10:22
  11:14,23 21:18
  37:6 39:1
exchange 28:10
  30:18 48:13,22
  51:16 57:14
exercise 50:12
exhibit 28:20,22
exist 22:24 23:2
  23:3 65:1,8,13
  69:9,9 71:8
existed 13:14
  61:21,22
existence 61:18
existing 14:8
exists 47:25
expect 6:12 77:3
expenses 65:12
experience
  63:19
experts 54:16
Expires 78:21
explain 54:18
explains 13:10
expressing
  31:18
Ext 5:4
extent 47:11,12

**F**

F 78:1
facie 76:17
fact 14:4 27:7
  31:18 35:15
  39:4,8,11 45:7
  48:3 51:18
  53:4 54:6,9
  58:22 59:8,13
  61:6 63:13
factor 45:2 74:6
factors 41:11
  46:4,23 51:7,8
  71:20
facts 32:20 75:4
FAEGRE 4:7
fail 65:25
failed 67:1
fair 9:18 27:6
  31:3 34:20
  35:18,18,18
  38:7 52:11
  54:1 60:16
  61:1 63:2,11
  63:23
fairly 52:7
fall 53:13,23
falls 21:9 75:17
  75:19 76:7,7
false 32:5
familiar 13:19
fancy 54:14
far 24:18 37:10
  40:15 73:16
favor 37:2
favorability
  38:22
favorable 37:19
  38:15,18,23
  41:3
favorite 52:19
FAX 1:17 3:11
  3:17,23 4:10
  4:24 5:4,18
federal 64:18
  68:17

fee 48:4
ferret 21:19
  43:25
field 9:25
figure 19:16
  22:1,4,6,10
  44:21 47:9
file 61:5
filed 64:8 75:25
filing 53:6,10
  60:19,19
filled 15:18
final 64:12
finance 47:2
  73:17
finances 39:21
  40:15
financial 12:15
  18:13 20:18
  25:10 37:5,7
  39:16,19 40:18
  41:21,23 68:15
financially
  78:14
financing 9:11
  11:8 24:18
find 52:1 67:1,8
finding 10:11
  11:7
firm 3:8 5:6 6:24
  8:23 10:12
  17:11,12 18:16
  18:17,19 19:3
  19:6,20,23
  20:17 24:2,3,7
  24:10,23 25:16
  25:22 26:4,17
  26:24 27:8
  28:8 30:20
  31:21 33:4
  37:2 38:13
  48:8,25 49:13
  62:7,14 67:21
firms 12:21 15:1
  20:11 58:23
first 7:22 12:23

14:20 16:5
17:23 29:2
34:6 60:12
67:10 71:7
**fit** 74:20
**five** 50:7 69:23
**flood** 55:16
59:25
**floor** 1:15 4:16
5:16 7:17 66:9
**FLORHAM** 4:9
**FLORIDA** 4:3
**flowing** 57:15
**focus** 10:4 24:3
24:6 36:7
48:22
**focuses** 39:16
**following** 67:6
68:1
**foregoing** 78:5
**forgot** 20:16
**FORMAROLI**
1:20
**forth** 46:4 78:8
**Fortress** 24:16
**fortune** 53:19
**found** 24:8
25:24 65:10
**Fournier** 4:15
7:8
**Fox** 4:20 6:18
**frankly** 53:16
**FRD** 76:4,5
**front** 31:10 33:8
63:6 64:4,5
**frustrated** 51:23
**frustrating**
63:16
**frustration**
31:18
**full** 10:21 26:2
33:16
**fund** 72:3,8
**funder** 14:19
17:19
**funders** 12:16

12:22 47:17
65:12,16
**funding** 10:4,12
10:15,19,22,25
12:10,11,20
13:4,8,9,17
14:14 15:3,5
15:19,21 16:4
16:15,20 17:12
17:15,22 18:4
18:14 21:9,15
23:7,10,16,19
23:23,25 24:11
24:13,16,20,25
25:6,7,9 35:2
35:23 36:1
37:8 39:12
40:6 42:1
43:21 44:19
45:20 49:15,18
49:24 50:5,8
50:19 54:24
57:3 58:8,17
58:21 64:13
65:7,10 70:4,7
70:8,11,16,18
70:20 71:6,13
72:13,15,20,21
73:2,4
**funds** 20:9 39:6
72:5
**further** 67:19
78:10
**furthers** 23:20
**future** 53:12

―――――――
**G**
**gain** 72:1
**gaps** 21:1 22:8
22:11 44:3
**gather** 65:24
**general** 9:18
12:1 22:14
23:23 73:11,18
**generated** 17:16
**GEREL** 3:3

**getting** 6:14
12:9,21 14:12
14:20 17:14
18:4 21:9,14
23:9,19 25:9
30:16 36:12,15
52:22 57:19
59:22,23 60:1
60:4 67:10
70:13,19
**giant** 74:11
**gist** 13:4
**give** 7:17 11:14
22:22,24 28:4
33:10 48:15
55:20 57:23
73:1
**given** 23:6 72:14
**gives** 25:16
33:16
**giving** 13:11
**global** 20:7
41:10 60:13
**globally** 42:9
**go** 6:1 8:18
17:25 20:9
26:6,8 37:15
46:5 51:4,10
59:17 60:22
63:24
**goals** 57:2
**goes** 11:24 12:1
45:23 46:7,23
47:14 65:23
73:10
**going** 6:11 7:3
10:15 13:2,9
14:10,18,22
15:21 21:1,4
22:1,7,10,11
22:21 27:15
28:23 29:24
31:17 32:20
35:8,23 36:4
37:10,13,14,24
38:2,25 39:15

40:7 41:14
42:11 44:22
45:1 46:15
47:24 50:13
51:22 52:6,15
52:16 53:8,9
53:13,21,23,25
55:7,24 56:2
60:7,10,17
62:15 63:22
69:2,25 74:10
74:11
**Golomb** 5:7,8
6:25 7:1 8:21
56:21 69:14
70:3 75:9,10
**good** 6:3,4,17,21
6:25 21:18
25:16 29:16
35:25 37:25
44:5 47:24
48:2 56:4 77:1
**gotten** 62:21
**governs** 46:2
**granted** 43:4
**great** 54:9 77:6
**grounds** 25:17
62:23 75:19
**group** 61:20
76:25
**GROVERS** 5:2
**guess** 8:10 13:16
34:23 48:17
**guts** 55:6,13
**guy** 32:20 54:14
**gynecological**
61:23

―――――――
**H**
**Haas** 52:7 54:23
55:16 62:14
**Haas'** 52:19
**Haddon** 1:23
**happen** 13:7
**happened** 44:13
74:13

**happening** 12:9
13:6,22 23:4
41:21 69:19
72:14
**happens** 15:15
24:4 29:2 39:6
**happy** 29:5
32:22 41:1
42:10
**hate** 69:15,24
**head** 13:18,23
18:1
**health** 22:25
**hear** 8:7 26:15
26:18 31:25
32:12 48:16,21
48:24,24,25
74:1
**heard** 7:3,18,19
26:13,14 34:16
49:21 55:3
56:20 66:13
67:14 68:18
**hearing** 16:11
17:6 63:20
67:9 74:21
77:7
**hearings** 22:3
44:24 49:22
**heart-felt** 56:5
**hedge** 59:5
**Heights** 1:23
**held** 27:21 44:24
**hereinbefore**
78:8
**hey** 29:5
**high** 10:5,8,10
55:21
**hill** 75:24
**historically**
20:11
**hit** 56:11 61:24
71:2
**Hobbs** 65:9
**hoc** 59:19,24
61:17,20

**hocs** 62:4
**holding** 11:9
**honest** 56:5
**honestly** 52:2
**Honor** 6:5,22
  8:17,24 10:3
  10:14 11:12
  13:3,19 14:16
  14:25 15:25
  17:25 19:24
  20:7,22 24:15
  26:19 33:7
  35:7 36:16
  38:21 41:7,16
  42:15 43:11
  44:10,18 45:17
  47:4 49:1
  56:12,17,21
  59:9,11 62:25
  64:11,15,20
  65:14 66:1,5
  66:10,12 67:12
  68:18 72:24
  73:24 76:3,12
**Honor's** 21:21
  35:12 41:11
  67:24
**hope** 13:10
  30:12 42:10
  77:5
**host** 41:16 44:13
**huge** 36:7
**hundred** 60:1
  61:25 69:23
  73:8
**hundreds** 11:20
  17:9

**I**

**ID** 28:18
**idea** 23:17 53:11
  54:4 60:3
  62:25 69:8
**identical** 44:20
**ignored** 68:6
**Imagine** 32:8

**immaterial**
  33:22
**immune** 23:17
**impacting** 13:5
**implausible**
  15:20 23:8
  67:9
**important** 26:14
  27:9 46:10
**importantly**
  61:8
**impose** 58:15
**impossible**
  27:21
**impression** 11:6
**improper** 8:10
**incentive** 42:2
**incentives** 18:14
  25:10 37:7
  39:13,17,19
  40:18 41:21,23
  74:18,18
**including** 9:11
  15:14 20:12
  26:23 39:23
  60:19 69:19
**incredibly** 76:24
**independent**
  33:21
**indicate** 7:4
  38:17
**indicated** 42:13
**indicates** 19:22
  19:22
**indicia** 38:24
**indirect** 13:7
  16:20 17:22
**indirectly** 11:13
  14:24
**individual** 66:24
**indulge** 7:20
**inform** 6:10
  37:13,15
**information**
  18:6 19:3,5,17
  21:4,16,19

26:8 34:2
  36:13,25 43:25
  44:1 46:4,10
  47:11,15,16,19
  57:15 67:8
  74:14
**informative**
  21:25
**informed** 42:6
**Ingham** 64:4
**inherent** 23:7
**inherently** 41:25
  46:3
**initial** 76:16
**initials** 28:24
**inquire** 52:4
**inquiry** 10:11
  14:15
**inside** 43:15
**insidious** 37:21
  38:2,19 39:15
  39:18 41:5
**instruct** 32:11
  32:14
**instructive**
  43:23
**intent** 50:2
**interest** 36:3
  45:3 46:21,22
  71:13,15
**interested** 78:14
**interesting** 62:5
  62:12
**interests** 8:6
  13:1 14:10
  36:1,5,15 42:3
  45:3 46:12
**interpret** 21:11
**interpreted**
  19:15
**interrupt** 73:7
**involved** 36:3
  40:11 42:17
**irony** 59:21
**irrational** 40:3
  40:16

**irrelevant** 24:5
  67:20 73:9,13
**issue** 7:22,23 8:4
  9:7 17:22 18:2
  20:9 22:12
  35:21 36:3
  37:6,9 39:17
  40:15,19 57:3
  59:7,10,14,15
  69:20 70:16
  71:17 76:20
  77:4
**issues** 7:12 9:3
  24:1,6 30:5,5
  35:23 56:7
  73:22 75:4
**issuing** 75:17

**J**

**J&J** 13:24 14:3
  15:11 18:8
  31:21 33:3
  34:5 35:16
  39:2 40:10
  45:6 47:6
  49:17 52:8
  53:6 54:23
  55:2,25 57:2
  57:17 59:16
  60:11,21 63:5
  63:25 64:2
  65:23 69:8
  71:21 74:15
**J&J's** 38:5
  40:13 53:1
  54:16
**Jeff** 6:18 28:9
  68:9
**JEFFREY** 4:20
**Jersey** 1:1,23
  2:12 4:9,23 5:3
  45:12 46:2
  64:6,23 78:5
  78:21
**Jim** 62:3,14
  65:23

**jmpollock@fo...**
  4:24
**job** 33:2 52:11
  52:11
**JOEL** 1:14
**Johnson** 1:5,5
  4:11,11,11,11
  4:12,12 33:25
  33:25 34:4,4
  58:18,19
**joined** 6:18
**journalism**
  33:21
**jschneider@...**
  1:17
**judge** 6:7,17,25
  9:22 21:17
  22:2 28:16
  29:15 30:24
  31:17 32:16,19
  43:22 44:7
  45:14 49:22
  54:2,12,21
  56:2 58:11
  60:8 70:11
  75:3,10
**judges** 57:6,11
**July** 1:11 78:21
  78:22
**June** 60:12,18
**jurisdictional**
  62:23
**jurors** 57:6
**jury** 57:5 69:14
  69:24
**justification**
  68:14
**justify** 64:17

**K**

**K** 3:4
**keep** 41:4 52:20
**kind** 50:20
**kinds** 31:1
**KING** 4:14
**knew** 25:4

know 7:14 10:21
  11:15 12:7
  13:9,19 17:2
  20:3,10 21:21
  22:23 23:1
  24:24 27:7,13
  27:16,24 28:13
  28:14 29:15,20
  29:21 34:13,20
  35:8,13,20
  36:18 38:8
  40:10 42:21
  43:14 44:2,11
  44:16 46:14,20
  47:24 48:9
  49:21 50:23
  51:15,18 52:1
  52:2,3,15,25
  53:9,9,19
  54:14 55:14
  56:8,25 57:1,5
  57:21,22,22
  58:20 59:22,23
  60:1,5,8,9,11
  61:13 62:25
  63:4,18 67:12
  67:16 70:12,14
  76:15
knowing 32:2,18
knowledge 21:1
  22:9,21 44:3
known 4:12
  72:19
knows 41:16
  59:9 65:14
Kristen 4:15 7:8
Kugler 2:10
  78:3,19

**L**

L 5:13
L-E-S-A-L 76:4
lack 22:20 43:17
LaKIND 5:1,2
  6:4,21,22,22
  8:24 66:3,5,10

66:11,11 75:14
  75:22 76:3,10
  76:21
language 29:12
  33:18,19
large 40:7 66:21
largest 12:3 15:7
  15:19
Laughter 51:3
Laura 5:20
law 3:8 5:6 6:23
  8:23 12:21
  15:1,12 17:11
  17:12 18:16,17
  18:19 19:3,6
  19:20,23 20:11
  20:17 24:2,3,7
  24:10,22 25:16
  25:22 26:4,16
  26:24 27:7
  30:8 33:4 37:2
  43:18 48:8,25
  67:20 73:11
LAWRENCE
  3:20
LAWRENCE...
  4:23 5:3
lawsuit 19:4
lawsuits 23:12
lawyer 54:15
  58:13,16 61:19
lawyers 30:4
  52:10 55:12,13
  58:14 59:19,20
  59:24 60:21
  61:4,10 62:4
lberman@lfsb...
  3:23
leaders 58:13
leadership 59:18
  60:11,21 63:1
  63:8
leading 61:20
leap 20:5
learning 44:1
leave 60:14

led 44:7
legal 5:7 30:3
legitimate 39:22
Leigh 3:9 51:19
leigh.odell@b...
  3:12
LENOX 4:22
Lesal 76:4
let's 6:1,15 8:7
  12:18,23 21:6
  21:7 22:5,6
  24:3,6 32:7
  48:16
letter 19:10
  27:18
letters 9:5 26:7
level 10:5,8,10
  27:21 35:8
  36:21
LEVIN 3:19 4:1
LIABILITY 1:6
license 2:11
lie 31:17 56:3
line 33:14
LINTNER 5:15
literally 33:12
litigate 63:20
litigation 1:6
  9:10 10:4,12
  10:18 11:8
  12:16,20,22
  13:4,17 14:14
  14:19 15:3,5
  15:19,21 16:4
  16:15,19 17:12
  17:14,19 18:4
  18:14 21:9,15
  23:6,10,16,19
  23:23,24 24:11
  24:16,20 25:6
  25:7 35:23,25
  37:8 39:12
  40:6 41:11,13
  42:1,8 43:21
  45:20 47:1
  49:18,24 50:5

50:19 51:13
  54:24 56:9
  57:3 58:8,17
  64:13 65:7,10
  65:12,16 70:8
  70:11 71:5,12
  72:13,20,21
  73:2,4,17 74:8
little 9:25 11:2
  15:5 54:3
  72:23
live 7:15
lived 40:23
  52:24
living 15:10
LLP 1:14 3:3,14
  3:19 4:7,14,20
  5:15
loan 17:18
local 46:2
log 47:14
long 7:18 24:7
  35:15 44:13
  46:11 74:13
long-standing
  27:23
long-term 19:7
  20:1 25:4 27:2
  27:20
longer 62:20
look 26:20,24
  27:11 28:17
  30:17 33:7
  37:23 50:4,22
  53:8
looked 34:14
  50:1,3
looking 11:1
  28:17 37:13
  41:12 64:24
lose 48:5
lost 61:14 62:16
  62:17,20 64:3
  64:4,5
lot 11:23,25
  15:16 16:24

17:4 21:23
  22:2,3 35:16
  38:3,24 39:12
  45:11,25 55:10
  60:15 63:19
  68:16 69:1
lots 32:23
loud 74:2
LOUISIANA
  3:16
LTL 16:10 49:4

**M**

M 4:8,20
main 21:24 57:2
majority 11:17
  11:18 17:8,8
  72:17,17
making 11:4,4
  31:19 42:5
  51:12 61:24
  70:20 76:17
mark 33:13,14
market 1:15 5:8
  5:16 65:6
MARKETING
  1:5
marketplace
  23:15
marks 33:13
mass 15:18 23:7
  23:14,18 33:20
  55:1 58:14
  66:19 72:24,25
  73:4,11,18
Master 1:14 6:1
  6:6,7 7:2,10
  8:19,22 9:1
  10:1,7 11:2
  13:12 14:11
  15:22 16:8,14
  16:18 17:20
  18:15 19:2,18
  20:15 22:13
  23:22 24:21
  25:12 26:12

27:4 28:3,21
29:1 30:13
31:8,24 33:5
34:19 36:24
37:17 38:10,21
39:25 40:20
42:12 43:1
44:6 45:9
46:25 47:21
48:11 56:15,18
66:2,7 68:22
73:6 74:23
75:7,12,20,23
76:9,13,22
**Mastroianni**
1:20 2:10 78:3
78:19
**material** 47:13
**Matt** 7:7
**matter** 2:9 8:15
22:14 49:4
60:24 61:6
63:5 73:10
**matters** 12:13
12:14
**MATTHEW**
4:14
**mbush@ksla...**
4:18
**McCRACKEN**
1:14 5:15
**MDL** 12:3,4
15:7,19 18:22
20:6,8,10
25:18 26:17
27:1,1,8 41:15
42:14 66:25
67:16,18 69:10
69:21,25 70:20
73:15
**mean** 13:16
22:22 34:19,24
35:13 37:23
38:23 40:23,25
44:10,12 61:19
73:7 77:2

**meaning** 18:20
73:1
**media** 11:25
33:20
**mediator** 56:24
**mediators** 56:24
63:8
**medical** 65:12
**meet** 71:20
**megillah** 11:7
**mentioned**
50:10 67:13
**merit** 55:8
**merits** 62:22
**Michael** 4:21
6:19
**MICHELLE**
3:4
**MILL** 5:2
**Millennium**
65:3
**million** 12:19
14:20 24:10,18
62:10
**minimum** 56:5
**minute** 15:2
**misrepresenta...**
28:12
**misstatement**
32:3
**mistrial** 69:17
**misunderstan...**
25:13
**MONDAY** 1:11
**money** 12:1,17
12:21,23,23,24
13:2 14:17
15:9,17,17
16:3,6 40:7
70:12
**MONTGOM...**
1:14 3:10 5:15
**month** 69:19
**months** 55:24
65:19
**morning** 29:3

31:5
**morphing** 50:12
**Morse/Diesel**
76:4
**mother** 11:6
**motion** 23:25
40:25 41:8,9
45:16 60:20
65:18 74:22
75:25
**motions** 1:4 6:8
16:11 65:18
**motivating** 11:9
**MOUGEY** 4:2
**mouth** 34:15
59:17,18
**move** 43:2 74:3
74:5
**moved** 62:19
**moving** 6:15 8:7
28:7 48:16
56:19 58:6,9
74:25 75:21
76:18
**mparfitt@ash...**
3:6
**MTMP** 24:4
**Murdica** 28:11
29:4,10 31:5
49:4,6,19
50:21 55:15,24
62:3,15 65:23

**N**

**N** 3:1 5:13
**name** 7:5 28:14
**narrows** 9:24
**NATALIE** 3:14
**National** 62:3
**nearles@burn...**
3:17
**nearly** 12:3
**necessarily**
10:15 14:18
21:7 27:1 44:2
**necessary** 71:17

**need** 22:3,9,9
28:14,19 30:1
30:9 44:25
47:7 49:10
55:9 69:11
**needs** 22:19
**negotiate** 53:21
**negotiated** 59:9
61:10
**negotiating**
58:25 61:16
**negotiation**
60:20
**negotiations**
13:20 35:14
40:11 42:17
57:1 60:7,10
62:2
**neither** 78:10,12
**Nelson** 65:3
**never** 27:20
31:22 35:4
37:10 39:20
55:3 63:4
67:17
**new** 1:1,23 2:12
3:16 4:9,17,17
4:23 5:3 18:11
45:12 46:2
49:17 64:6,23
78:4,21
**news** 9:24 29:4
33:20
**night** 73:16
**Nimitz** 21:24
43:22 44:9
66:20 67:23,23
68:12 70:9
**non-party** 51:12
**nope** 49:19
**noses** 55:4
**Notary** 2:11
78:3,21
**notes** 52:16
**notice** 49:3 51:6
**noticed** 50:2

51:1
**notwithstandi...**
66:18 67:1
**number** 2:11
12:19 28:18,18
48:4,5 49:5
50:7,10 51:4
54:13,13,16
55:1 56:4
57:21,21,22,23
58:20,23 66:17
66:21 67:5
68:2,5,8
**numbers** 26:2
**NW** 3:4

**O**

**O** 5:13
**O'BRIEN** 4:2
**O'DELL** 3:9
**oath** 14:13 16:16
**objection** 8:9,14
**objections** 7:23
8:17 16:24
**objective** 14:4
**obligation** 70:3
**obtained** 11:17
**obtains** 72:17
**obviously** 7:24
8:16 12:7
30:14,25 33:8
37:23 50:24
54:21 55:22
73:25
**occur** 48:7,14
**occurred** 51:9
70:9
**offer** 14:5 18:10
18:10 31:11,22
40:6 41:20
42:7 46:17,19
46:19 57:17
58:1,2 60:13
63:23 74:12
**offered** 39:14
**offers** 36:13

41:2,3
offsets 40:12
oh 25:23 48:14
okay 7:10 9:1
    28:21 29:1
    51:4 66:3 76:9
    76:22
old 59:14
once 59:14
    63:11 64:9
ones 12:6 61:16
ongoing 25:17
    26:10 35:14
open 7:16 34:25
    52:6
opens 47:8
operate 31:23
    73:18
opinion 45:23
    64:11 71:9
    74:9
opportunity
    7:17 16:21
    27:12 55:21,22
opposed 38:14
    42:23
option 36:20,23
options 72:8
oral 6:8,11
order 1:6 6:9
    38:8 61:8
    68:14 76:1
ordered 51:11
originally 24:15
originate 12:5
ORLEANS 3:16
out-of-bankru...
    59:1
outline 46:24
outside 21:10
    39:7,9 42:23
    72:12
ovarian 60:2,3
    69:16

        P

P 3:1,1 5:13
P.O 1:22 3:10
PA 4:2
pace 29:6
page 9:9 28:18
    38:11,12 49:7
    49:8 50:4 51:7
paid 16:5 23:16
    37:9 60:17
    62:21
PAPANTONIO
    4:1
papers 7:11,13
    11:5 28:10
    58:7 77:1
PARFITT 3:4
PARK 4:9
part 30:17,18
    37:12 66:12
particular 16:19
    38:3 60:20
particularly
    35:22 48:21
parties 6:10,16
    7:16 8:2,6,8
    9:12,13,16
    25:10 28:7
    34:3 37:10
    39:19 41:23
    42:3 45:3
    46:12 47:16
    48:16 56:6
    63:14 65:20
    71:13 74:25
    78:12
parties' 9:15
    36:1
partnered 20:11
    26:3
partners 19:7
    20:1,3 25:4
partnerships
    20:13
party 7:17 36:5
    46:22 56:19
    70:7,15,17
party's 76:18
patent 44:16
patient 49:2
    66:8
paying 23:10
    65:12,16
PC 5:1,7
pejorative 44:16
pending 65:19
Pennsylvania
    1:16 2:13 3:21
    5:9,17
PENSACOLA
    4:3
people 15:15
    18:22 22:6
    29:5,25 30:1,5
    30:9 36:10
    51:19 55:9,20
    56:10 59:22
    73:20
percent 39:5,5
    72:2 73:9
percentage 15:2
Perfect 23:14
    73:1
perfectly 8:1
permeates 73:4
permission 69:5
permits 71:12
person 28:11,13
    28:15,24,25
    29:23 32:25
    34:6 35:4 47:9
    75:17
person's 31:9
personally 42:16
    49:12
perspective
    68:13
PHILADELP...
    1:16 3:21 5:9
    5:17
phrase 10:16
    53:23
picking 12:18
picky 30:24
piece 19:13 21:4
PIKE 4:22
place 8:5 69:6
    71:4 78:8
plainly 49:25
plaintiff 71:21
    71:23,24
Plaintiffs 3:7,12
    3:18,24 4:5
    9:22 10:17
    15:10,16 18:22
    18:25 41:4
    55:4
Plaintiffs' 8:19
    55:11,13 57:7
    64:12
plan 35:3,18
    38:9 43:6 47:3
    55:25 56:1
    69:12 72:7
planned 51:17
plausible 15:5
    23:3,20 67:8
play 64:1,2
please 46:18
Plus 38:24
point 11:12 17:5
    27:9 33:11
    36:7 43:22
    44:18 49:16,23
    52:9 53:5,15
    53:16 54:3,8
    54:20 58:18
    62:5 63:21
    64:3 66:17
    69:3,25 75:15
pointed 64:20
points 54:8
    56:13 66:16
    71:2
policy 73:1
Pollock 4:20
    6:17,18 8:13
    9:21 28:16,23
    29:2 30:22
31:14 32:4
    34:11,22 36:9
    48:18 49:1
    56:17 72:4
    75:2,3,8
portion 31:8
Porto 32:19
    49:22 54:2,12
position 8:25
    25:13 45:16
    48:23 56:23
    58:19 63:10
possible 37:16
potential 46:21
    55:21
POWDER 1:5
practiced 29:15
PRACTICES
    1:6
pre-bankruptcy
    61:23
pre-Daubert
    61:21
precedent 58:10
precisely 26:25
predicate 67:19
predicated
    67:10
preference 8:2
prejudicing 7:24
preparing 76:11
presenting
    27:13
press 39:8 42:21
    42:25 61:12
    72:11
pretty 35:9 45:1
    50:16 54:11
previous 56:10
prima 76:17
PRINCETON
    4:22
privilege 47:14
    76:7
privileged 30:15
    47:11,13,15

probably 22:18
52:25 53:18
56:9
problem 29:7
32:5 71:11
Procedure 64:18
proceedings 2:8
16:16
process 12:2
15:13
PROCTOR 4:1
produced 30:18
50:4
PRODUCTS
1:5,6
professional
34:8
progress 29:6
31:19
prohibits 53:3
72:4
prolonged 13:6
41:14 74:8
promoted 36:2,6
45:4 46:13,22
71:14
prompt 6:12
77:4
prompted 14:9
pronouncing
21:22 66:3
67:25
proof 27:22 75:1
75:16,18,21
76:2
properly 67:25
proportional
22:19
proportionality
76:6
proposal 38:1
38:18,22 40:3
proposals 37:3
37:18,24,25
proposed 9:16
14:6 72:7

proposition 32:8
67:2
pros 73:2
prosecuting
12:12
protect 29:25
30:1,9 36:10
63:3
protected 36:2,6
36:12 42:4
47:10 71:14
protecting 30:9
protection 36:11
protective 1:6
6:9 76:1
provided 24:15
66:23
provides 24:12
providing 24:19
34:10
PSC 5:10 7:1
48:25
public 2:11
42:24 78:3,21
pure 20:20
22:17
purpose 37:21
74:16
purposes 9:2
pursuant 15:4
pursue 34:4
push 44:21
pushed 53:15
54:3
put 14:1,15 22:2
33:12 34:15
69:6,12 71:4
puts 48:22

_____
**Q**
quash 1:5 6:9
74:22 75:18,21
75:25 76:18
question 10:9
16:7 28:6
29:24 30:12,23

32:6 34:23
35:12,24 40:4
40:22 43:2
45:10 47:22
49:17,23 50:14
53:2,7 58:5
59:3 71:15
questionable
55:11
questioner 18:1
questioning
54:12 64:16
questions 7:16
7:21 14:9 17:4
17:5 18:11,16
38:4 39:22
48:19 49:6
52:6 54:22
56:14,16 68:20
75:5
quibble 24:14
quick 61:24
quite 13:14
66:14,19 67:23
68:18
quotation 33:13
33:13,14
quote 31:11
33:10,15,16
34:10,12,12,14
34:18,21,22
35:11 38:13,16
52:13,14
quote/unquote
57:20 60:6
quoting 35:6
38:12

_____
**R**
R 3:1 5:13 78:1
RAFFERTY 4:1
raise 54:20 56:7
57:2 74:2
raised 16:25
17:23 18:11
39:22 59:8,15

59:15 72:4
raises 35:13,23
38:3
raising 16:21
17:22
ramifications
30:6
range 54:18
rare 55:2
rational 37:11
40:5,9,14,17
rationality
40:13
reach 41:10
reached 29:19
31:6 51:23
reaches 29:3,11
read 7:11 11:5
reads 33:18
ready 8:18 39:9
42:22 72:11
real 34:23 55:8,9
55:11
reality 51:15
really 11:3,5
13:22 14:2,8,9
17:2 27:9 33:1
37:7 39:16,18
40:21,21 42:9
44:4 45:7
51:17 52:12
54:4 57:12
58:6 66:15
67:11 70:14
reason 18:5,6
20:25 21:2,24
24:22 36:25
37:21 38:19
41:5 44:5 48:7
48:10,12 73:3
reasonable
60:16,24 61:1
63:2,11,23,23
reasons 14:17
25:3 33:10
41:18,22 58:19

60:15 70:25
74:21
REATH 4:7
recall 54:2 76:11
received 9:6
50:5,8,16,18
receiving 13:8,9
16:3 17:18
47:19 70:5,15
70:17 72:20
recipient 75:18
recipients 75:19
76:8
recognizes 41:25
46:3 71:7
74:16
recommended
41:6
record 6:2 18:18
18:20,25 19:21
27:5 30:17,19
30:19 40:23
74:4
records 34:2
recoup 40:7
recover 39:5
recovery 72:2
referrals 58:14
referred 70:5
referring 48:3
51:7 58:16
refinanced
24:17
regard 20:19
48:23
regarding 7:24
9:10,14,16
26:10 33:20
43:6 47:3
reject 50:25
rejects 38:1
relate 44:12
related 11:7
22:23
relationship
25:18 26:5,9

26:10 27:2,24
32:17 55:14
62:13
**relationships**
11:21 17:9,10
17:15 18:4
21:8 25:15,20
25:23 26:23
27:3 28:2
72:18
**relative** 78:11
78:13
**release** 39:8
42:22,25 72:11
**relevance** 74:1
75:17,21 76:5
76:20
**relevant** 22:19
24:25 25:8
44:20 46:4
51:10 59:11
64:13 65:5,11
71:6,8 74:5,9
74:14
**relief** 43:5
**reluctance** 40:2
**rely** 66:12 68:20
**relying** 48:2
**remember** 44:7
**remembering**
26:2
**remote** 2:13
64:21
**reorganization**
9:17 35:3 43:7
47:3
**repeat** 7:12 25:3
**repeating** 68:8
**reporter** 2:10
7:4 78:4,20
**Reporting** 1:21
**represent** 19:1
53:14
**representation**
19:11 20:6
27:15

**representing**
6:19 15:2
17:14
**represents** 10:18
19:4,23 26:22
**request** 22:22
36:22 39:16
43:5 50:11,11
**requesting** 35:1
**requests** 47:12
**required** 68:3
72:21
**requirements**
68:7
**requires** 34:3
58:12 70:6
**reserve** 6:11
**reserving** 77:3
**resolution** 14:21
16:6 65:22
**resolve** 20:8
37:14 39:9
42:8,9 46:11
70:1 72:11
**resolved** 41:17
41:19 69:11,11
**resolving** 13:1
**respects** 68:1
**respond** 58:3
69:4,7 70:22
**response** 33:16
38:11 68:25
**responsibilities**
30:3
**rest** 33:18 34:8
**Retired** 1:14 6:7
**return** 67:22
**Reuters** 33:22
**reveal** 30:14,15
**reverses** 67:11
**review** 15:12
22:25 36:18,22
41:12 47:20
73:12
**rgoodman@m...**
5:18

**RHOADS** 1:14
5:15
**Richard** 5:8 7:1
**right** 7:2 8:3 9:4
10:7 12:16,22
16:16 21:7,22
26:2,14,15,18
28:3 33:1 52:4
53:16,20 54:13
54:13,16 66:4
72:7
**rights** 30:3
**rise** 35:8
**rises** 36:22
**ROAD** 5:2
**root** 40:25 41:8
41:9
**rooted** 44:5
**Rothschild** 4:20
6:18
**rule** 15:4 19:15
21:13 35:24
36:8 41:25
46:2,9,24 57:8
57:10,11 64:18
65:1 70:6,16
71:7,18 72:22
74:16,16,21
**rules** 22:5 63:25
64:2 66:21

---
**S**

**S** 3:1,20 5:13,13
**Sabo** 4:21 6:19
**safety** 22:25
**sake** 24:23
**SALES** 1:6
**sanctioned** 68:3
**sat** 49:21
**saw** 16:23 32:19
**saying** 11:15
22:3 27:19
39:9 40:16,16
41:4 44:25
52:21 56:1
61:1 62:15

64:10 73:3
76:1
**says** 18:24 23:13
29:5,9,9 31:9
35:24 39:2
42:22,25 44:18
45:5 46:9,16
46:18 49:10
50:5 54:15
71:10
**scared** 69:17,24
**Schneider** 1:14
6:1,6,7 7:2,10
8:19,22 9:1
10:1,7 11:2
13:12 14:11
15:22 16:8,14
16:18 17:20
18:15 19:2,18
20:15 22:13
23:22 24:21
25:12 26:12
27:4 28:3,21
29:1 30:13
31:8,24 33:5
34:19 36:24
37:17 38:10,21
39:25 40:20
42:12 43:1
44:6 45:9
46:25 47:21
48:11 56:15,18
60:9 66:2,7
68:22 73:6
74:23 75:7,12
75:20,23 76:9
76:13,22
**science** 55:11
**scope** 21:10
**second** 12:3 15:7
15:19 21:6
61:14 69:13
**secure** 53:18
**SEDRAN** 3:19
**see** 16:6,7 26:25
34:9

**seek** 15:15 21:17
66:23 67:3
74:10
**seeking** 12:8
19:12 21:2,3
47:10,15,15
**seen** 19:10 49:11
**sees** 33:23
**Seggerman** 5:20
**sell** 55:25 58:11
**sense** 46:1
**sentence** 38:12
**serious** 35:13,21
38:3
**serve** 50:2 65:20
**served** 56:24
**service** 7:24 8:3
8:10,15 9:3
**services** 9:24
**set** 21:12 39:21
58:10 78:8
**sets** 46:4
**settle** 13:24 14:3
14:4,23 18:8
25:11 34:1,5
35:16 38:5
39:2 42:14,23
45:6 46:17
47:6 63:15
64:7 71:21
74:15
**settled** 63:22
**settlement** 9:14
11:10 13:6,20
14:5 20:7
31:11 34:4
35:2,14 36:6
36:13 37:3,18
37:24 38:7,18
39:6 40:2,6,11
41:2,3,10,16
41:18,20 42:7
42:17 43:6
46:11,17,19
47:2 51:13
57:20 60:6,23

61:11 62:3
63:3 69:12
70:1 71:16
74:7,12
**settling** 38:14
**setup** 72:6
**seven** 17:11 19:7
20:2,3,4 25:25
26:2 49:8 62:8
62:9 69:16
**seventh** 57:4
64:1 69:15,24
**shapes** 45:21
**Sharko** 4:8 7:9
**sheets** 33:3 59:8
59:13
**shifted** 19:16
**shifting** 76:14
**short** 7:18 34:24
**show** 27:21
35:25 45:19
**showing** 51:8,12
**shows** 19:11
43:23 44:20
**shut** 32:6
**side** 46:16
**significant** 8:14
22:20
**similar** 66:22
**simple** 54:15
**simply** 49:25
67:9 68:13
**Singh** 49:23
**single** 35:22
54:25 60:20
61:21,22 63:5
63:6 64:19,20
64:23 66:22,25
67:2 69:3
**sir** 6:20
**sit** 57:6
**situates** 46:7
**situation** 15:9
43:10 46:3,10
**six** 38:23 54:9
61:11 65:19

69:16
**sizes** 45:21
**Skadden** 50:3
**skewing** 39:12
**small** 10:14
53:18
**Smith** 5:6 6:23
8:22 17:10,12
18:16,17,19
19:3,6,20,23
20:17 24:3,7
24:10,22 25:16
25:22 26:4,16
26:24 27:7
48:8,25 62:7
62:13 67:20
68:16
**Smith's** 68:13
**snappy** 49:2
**social** 11:25
**sole** 67:12,14
**solution** 40:18
42:24 59:1
**sophisticated**
29:23 30:2
53:24
**sorry** 51:5
**sort** 12:22 13:11
36:20 40:12
44:11,13,15,17
69:5 71:3
76:14
**sorts** 45:21
**SOUTH** 4:3
**SPALDING**
4:14
**Special** 1:14 6:1
6:6,7 7:2,10
8:19,22 9:1
10:1,7 11:2
13:12 14:11
15:22 16:8,14
16:18 17:20
18:15 19:2,18
20:15 22:13
23:22 24:21

25:12 26:12
27:4 28:3,21
29:1 30:13
31:8,24 33:5
34:19 36:24
37:17 38:10,21
39:25 40:20
42:12 43:1
44:6 45:9
46:25 47:21
48:11 56:15,18
66:2,7 68:22
73:6 74:23
75:7,12,20,23
76:9,13,22
**specific** 43:9
48:19 68:20
**specifically**
35:24 46:2,5,5
46:7 49:6
71:10,12 72:10
**specified** 27:1
**speculating**
20:17
**speculation**
20:21,23 22:15
23:4 44:4
64:17 71:23
**speculative**
23:21
**spend** 43:24
**spirit** 30:8
**splitting** 21:13
21:14
**spoken** 35:5
51:16
**stand** 39:9 42:22
55:5 72:1,11
**standard** 47:24
**standing** 58:23
63:2
**stands** 39:4
**stark** 14:2 43:17
**start** 6:14,15,16
8:11 43:25
48:17

**started** 58:7
**starting** 31:4
**starts** 33:19
**state** 2:12 9:18
20:8,10,12
38:13 68:16
78:4,21
**statement** 19:19
27:6 66:20
**statements**
68:10
**states** 1:1 57:10
64:5 66:21
**status** 56:25
**stay** 73:16
**Steering** 8:20
56:19
**stenographica...**
2:9 78:7
**sticks** 53:15
**stood** 60:25
**STREET** 1:15
3:4,9,15,20 4:3
5:8,16
**strong** 26:9,9
45:1
**stronger** 45:8
46:1,8,20
**stuffing** 69:8
**style** 33:25
**subject** 54:11
64:15 72:21
**submitted** 18:23
**subpoena** 8:3
18:17,17 24:9
24:22 50:1,2
75:16,17
**subpoenas** 7:23
8:10
**subset** 47:12
**substantive** 8:4
**sucking** 51:5
**sue** 15:11
**sufficient** 51:12
56:1
**suggests** 34:9,17

**SUITE** 3:15,21
5:3,9
**sum** 69:5 70:25
**summarizes**
10:6
**summarizing**
53:22
**summary** 9:6
**sun** 35:8
**support** 49:11
65:24
**supportive**
45:16
**supports** 67:2
**suppose** 6:16
22:16 24:11
28:7 52:1
**supposed** 28:12
**supposedly** 24:9
57:19
**Supreme** 57:9
64:5,6
**sure** 9:8 23:1
26:14 27:7,13
27:16 28:7
34:20 35:5
36:4,11,12
42:5 52:8
67:25
**surgeries** 65:17
**surrounding**
44:19 45:19
**Susan** 4:8 7:9
**susan.sharko...**
4:10
**suspect** 32:1
**suspicion** 65:5
**suspicions** 50:25
**suspicious** 44:8
**sword** 50:14
**Systems** 65:15
**Szaferman** 5:1
6:22 66:11

---

**T**
**T** 5:13 78:1,1

table 14:6 18:11
46:18,20 58:25
64:7 74:12
take 48:16 53:18
60:14 69:2
taken 2:9 63:10
63:13 78:7
takes 22:1 44:21
55:13 58:19
talc 14:14 20:19
23:1 25:21
26:10 58:21
73:14
TALCUM 1:5
talk 10:20 13:10
72:23 73:15
talked 47:8
61:12
talking 62:6
72:25 73:22
tangentially
24:3
target 58:6,9
targeted 11:25
15:13
technicalities
50:14
tell 12:13 19:18
32:9 33:9
57:16,17 61:12
telling 56:3
71:22
ten 63:14
term 20:16
44:16
terminate 32:16
terms 9:19 38:15
74:10
test 32:7
testified 14:13
15:23 16:16
testify 17:2
32:19
testimony 11:16
16:1 17:6,16
25:20 26:20,25

27:11 28:2
44:24 72:15,16
78:6
thank 56:17,21
66:1,2,6,10
68:22 74:23
75:7,11 76:23
77:5
Theresa 2:10
78:3,19
thing 21:6 23:5
29:3 33:17
49:3 53:16,20
54:10 60:5
61:3 62:24
69:7,13 73:13
75:14
things 7:15
14:12 15:17
16:25 19:15
20:24 31:1
36:17 42:16
43:11,16 44:13
58:4 69:4
70:19,21
think 8:6 9:24
10:3,5 11:12
14:1 15:25
18:4,23 20:5
21:7,17,24
22:18 23:5,19
24:17,25 25:19
25:20 26:1,6
26:19 27:1,10
30:8,10 31:17
32:4,25 33:3,9
34:16,24 35:10
35:21 36:20
37:24 39:11,21
40:4 42:17,19
43:8,8,20 44:7
45:17,18,18
47:4,8,17
50:20,21 51:19
51:21,22 53:16
54:3,4,6,6,22

54:25,25 56:4
56:11 58:9
67:23 68:9
69:13 70:16
71:2,5,10,23
71:24 72:3
73:7 74:4,20
75:15,19,24
76:3,5,15,19
76:20
thinking 59:6
third 9:11,13,16
33:11 47:16
48:6,6,10,12
57:7,24 59:25
67:22 70:2
third-party
75:16
thought 26:13
26:16 29:17
48:6,10 49:18
55:6 61:14
thousand 12:2
23:8,11 55:7
58:1 61:20
69:20,22
threatened
57:24
three 1:4 6:8 9:6
9:15,19 48:5
66:15 67:13
68:1,8 69:1,3,4
70:21
throw 9:22
thrown 30:4
time 16:22 17:24
18:1 31:5 34:1
35:15 46:12
52:24 59:8
69:19 71:9
74:13 78:7
times 25:25
60:25
TISI 4:2
today 7:3 57:17
61:9 63:20

64:17,21
told 13:24 14:3
18:7 38:4 39:3
41:20 45:5
46:16 47:5
71:20,25 74:15
tomorrow 35:9
tone 34:8
top 12:23
topic 17:16
tort 15:18 23:18
58:15 66:19
72:24 73:4,11
torts 23:7,14
54:14 55:1
72:25 73:18
total 72:2
totally 13:3 23:8
train 48:6 61:14
traipse 52:18
transcript 2:8
78:6
transcripts
16:24
transitioned
58:9
treated 42:18
trial 25:25 62:21
63:24
trials 17:11 19:8
20:2,4 26:1,2
57:5 62:8,9
65:22 69:14,16
69:24
tried 62:8,9,16
63:22 68:15
69:18
tries 63:5 65:24
trivial 26:4
troll 44:16
troubled 29:22
troubling 47:5
true 18:9 20:16
21:5 24:10,23
24:24 39:3
45:7 47:7 53:1

54:6 62:9,17
71:22 72:6
73:5 78:6
truthfully 15:24
try 20:8 42:7
59:19 60:23
69:2,21 71:1
trying 19:13,16
21:16 30:24
37:13 41:9
43:24 55:25
58:10,11,15
59:16,25 64:6
69:18,23
turn 44:2
turned 44:14
70:13
TV 11:24
twice 14:13 64:9
two 9:13,23
20:11,24 27:24
33:10,20 42:15
43:2 45:15
48:4 56:6,7
58:19 61:6
67:5 68:5
type 20:18 66:23
types 66:19

**U**

ulterior 37:21
ultimate 51:13
65:21 75:24
76:20
underhanded
51:22
understand 7:12
11:3 24:8,12
25:14 32:22
37:1,5,5 40:21
40:22,23 47:23
48:1 51:14
52:14 58:18
67:5 75:4,4
understanding
31:14 52:25

understands 30:2
understood 30:6 52:12 67:13
unduly 41:14 74:7,8
unique 43:10,12 43:12,18 45:7 56:23
United 1:1 57:9 64:4
unlocks 47:1,17
unprecedented 61:13
unrelated 44:14
untoward 51:9 51:22
unwilling 13:24 14:3 34:5 35:16 38:5 39:2 46:16 47:6 71:21 74:15
upset 54:24
upsetting 52:8
use 53:23
USMJ 1:14
usually 10:21

**V**

V 4:2
Valsartan 21:22 36:19 45:13,22 51:2 59:7,10 64:11,16 67:24 71:9 74:9
value 57:25
values 60:16,23 61:2 63:11
various 15:14
vast 11:18 17:8 72:17
verbatim 7:13 35:6
verdict 62:18
verdicts 57:7

62:10 69:17
version 53:1
versus 65:3,9
vexatious 56:9
VIDEOCONF... 2:13
Videoconfere... 1:21
view 23:24 31:16,25,25 37:1,18 40:8 47:1 73:1,12 73:25
vote 38:8 43:16 59:25

**W**

W 4:21
wake 15:10
walk 23:14
WALKER 1:14 5:15
WALNUT 3:20
want 6:10 7:18 7:18,25 8:5 9:20 10:21 14:25 24:14 25:3,12 26:14 27:5,10,11,14 30:14,23 32:6 34:15,23 36:25 39:17 40:10,12 42:13 48:5,20 50:13 52:23 54:21 56:8,19 66:15 68:19 69:4,7,22 72:23 73:15,21 75:2
wanted 9:8 32:7 56:13 61:1 70:21,25 71:3
wants 63:25 64:2 65:23
warrant 67:14 68:14

**WASHINGT...**
3:5
wasn't 37:20,22 45:12 48:12 57:18 73:1
waste 52:24 73:21
way 10:16 11:23 12:14 13:7 19:14 21:11,12 21:15 27:25 29:6 30:23 31:22 33:15 36:11,15 37:8 37:11 39:21 45:24 46:8,20 49:14,20 58:23 59:10 63:2 69:11,21 70:5 70:18
ways 15:14 35:25 45:24,25 62:17
we'll 6:16 8:1 43:2 48:17,24 48:25
we're 6:7 8:17 8:18 9:8 11:1 12:8 13:9,17 15:9,19 18:5 19:12,12,16 21:2 24:5,7 27:21 35:5 37:12,13 41:9 43:11 47:10,14 47:15 53:9 54:17 56:23 69:14,17,23 73:9,14,19,20 74:10
we've 13:25 19:10 28:4 30:4 35:4 39:23 46:6 47:7 48:3 56:11

weekend 77:6
went 20:2,4 64:25
weren't 22:4
whatsoever 67:15
who've 30:5
willing 14:4 18:8 34:1 45:6 53:12 55:12
willingness 14:23
winning 55:21
withdrawn 9:23
withhold 32:20
won 69:15
wonderful 54:10
wondering 31:19
word 75:1
worded 16:1 18:24 26:25
words 34:15
work 12:15 22:1 22:4 68:17,17 76:25
worked 25:24 51:18
works 12:7
world 15:10,18 23:18 29:4,19 29:24 32:25 33:23 73:4
worse 73:5
wouldn't 42:18
writes 29:8
written 33:24 34:6,7
wrong 27:15 34:16 75:15 76:10
wrote 34:16

**X**

X 14:20 22:23
XIO857 78:20

**Y**

yeah 11:11 22:20 27:10 33:7 40:20
years 25:24 37:14 39:20 40:24 41:15 51:21 59:6,14 60:17 62:20 63:14 69:23 74:11
YORK 4:17,17

**Z**

zero 52:4 73:19
ZOOM 2:13

**0**

07932 4:9
08035 1:23
08648 4:23 5:3

**1**

1 1:11
10 50:4
10:01 2:14
10036 4:17
101 5:2
11 26:1 78:21
11-thousand-... 26:21
1170 3:15
1185 4:16
12 39:5,5 54:17 72:2
12:54 29:8 30:10
13 28:18
142 76:5
15 60:1 61:24
153 76:4
16th 49:4,15
17 61:20
1735 1:15 5:16
1825 3:4
1835 5:8
187386 49:9

**187682** 28:19
**19103** 5:9
**19103-7505** 1:16
  5:17
**19106-3697** 3:21

---
**2**

**20** 28:18
**200** 5:3 58:1
**2006** 3:5
**2016** 62:11
**2017** 62:11
**2018** 62:11
**2019** 60:10
**202** 5:4
**202-759-7648**
  3:6
**2022** 60:12,18
**2023** 49:5,15
**2024** 1:11 78:22
**2026** 78:21
**21** 54:17
**212-790-5356**
  4:17
**215-278-4449**
  5:10
**215-592-1500**
  3:22
**215-592-4663**
  3:23
**215-772-7411**
  5:17
**215-772-7620**
  1:17 5:18
**218** 3:9
**21st** 1:15 5:16
**23** 65:1
**234** 49:7
**24** 24:10,18
**2410394** 78:22
**25** 60:17
**26** 64:18
**2900** 5:9

---
**3**

**3:16-md-2738...**

**1:**2
**30** 55:7
**30X100085700**
  2:11
**316** 4:3
**32502** 4:3
**32827-14** 49:5,8
**334-954-7555**
  3:11
**34TH** 4:16
**36104** 3:10
**365** 3:15
**368** 1:22
**380** 59:1

---
**4**

**40** 55:7
**4160** 3:10

---
**5**

**5** 78:22
**5:54** 29:10 31:5
**50** 25:24 57:25
**500** 3:21 12:19
**504-799-2845**
  3:16
**504-881-1765**
  3:17
**510** 3:20
**552** 76:4

---
**6**

**6** 38:11
**60** 12:2 23:8,11
  69:20,21
**600** 4:8
**609-275-0400**
  5:4
**609-275-4511**
  5:4
**609-306-3994**
  5:5
**609-896-1469**
  4:24
**609-896-7660**
  4:23
**615** 51:7

**616** 51:7

---
**7**

**7.1.1** 15:4 19:15
  21:10,13 41:25
  46:24 50:17
  58:12,18 66:22
  70:16 71:7
  72:22
**700** 62:10
**70130** 3:16

---
**8**

**800-277-1193**
  4:4
**800-674-9725**
  3:5
**800-898-2034**
  3:11
**84** 76:5
**850-435-7000**
  4:4
**856-488-7797**
  1:16
**856-546-1100**
  1:24
**877-882-1011**
  3:22

---
**9**

**973-360-9831**
  4:10
**973-549-7350**
  4:9
**997** 4:22