UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (MAS) (RLS) |

SPECIAL MASTER ORDER NO. 25
(ADDRESSING THREE MOTIONS TO
QUASH AND/OR FOR PROTECTIVE ORDER)

This matter is before the Special Master ("SM") on three motions to quash and/or for protective order that address defendants' substantially similar document subpoenas:  (1) Non-Party Beasley Allen's Motion to Quash and/or for Protective Order Over Subpoena Directed to the Beasley Allen Law Firm (Dkt. No. 32445); (2) Plaintiffs' Steering Committee's Motion to Quash or for Protective Order Regarding Subpoenas Directed at Beasley Allen Law Firm, Smith Law Firm, and Ellington Management Group (Dkt. No. 32483); and (3) the Smith Law Firm's Motion to Quash Subpoena Issued to the Smith Law Firm, PLLC (Dkt. No. 32603).[1]  The SM received defendants' responses to the motions, the moving parties' replies, and recently held oral argument.[2]

Although discovery in federal litigation is recognized as broad, it is not unlimited. Parties may not roam at leisure through their adversary's files regarding all matters that are of interest to them.  To this end the Federal and Local Rules of Civil Procedure contain guardrails to prevent parties from delving into irrelevant areas.  As will be explained, the discovery

---

[1] Plaintiffs withdrew similar subpoenas issued to the Fortress Investment Group and Thompson Reuters.

[2] Defendants are Johnson & Johnson and LLT Management LLC.

6558470v2

requested by defendants falls outside the boundary of what is authorized, appropriate and necessary. Accordingly, the moving parties' motions to quash and/or for protective order will be granted.[3]

## **BACKGROUND**

Since all interested parties are familiar with the background of this matter, a detailed discussion will not be provided. Suffice it to say, this MDL involves allegations that defendants' talcum powder products caused plaintiffs' ovarian cancer. Defendants steadfastly deny plaintiffs' claims. According to defendants' their subpoenas are designed to flush out why the Beasley Allen Law Firm ("Beasley Allen") and plaintiffs' leadership counsel will not settle with defendants and why the firm is vigorously opposing defendants' latest effort to settle the litigation.

As to settlement, defendants have expressed their intent to pursue a "prepackaged" bankruptcy to resolve all current and future talc ovarian cancer claims for $6.475 billion (the "Plan"). Defendants' Opposition Brief ("Opp. Brief") at 1; see also Opp. Brief Exh. 4. The Plan provides for a three-month solicitation period during which claimants have the opportunity to vote for or against the Plan's settlement terms. Id. To be approved, 75% of the claimants must endorse the Plan. The vote will close on July 26, 2024. It is no secret that Beasley Allen opposes the reorganization Plan.

A brief description of the relevant parties is in order. Defendants cite to deposition testimony indicating that Beasley Allen represents approximately 11,000 ovarian cancer plaintiffs, 5,000 of whom filed cases in this MDL. Opp. Brief Exh. 1. One partner in the firm is Co-Lead Counsel. Another partner, Andy Birchfield, Esquire, has taken a leadership role with

---

[3] Defendants do not contest the standing of the moving parties to challenge their subpoenas.

-2-

6558470v2

regard to settlement issues and has been intimately involved in settlement efforts with the defendants for years. The Plaintiffs' Steering Committee ("PSC") was appointed by the Court to represent the collective interests of the plaintiffs. The Smith Law Firm ("Smith") is based in Mississippi, is not a party in this litigation, and is not counsel of record to any party in the litigation. Defendants, however, allege that in the past Smith referred talc cases to Beasley Allen and acted as co-counsel at talc trials. Defendants acknowledge they do not know for certain if Smith referred talc cases to Beasley Allen that are pending in this MDL. Ellington Management ("Ellington") did not file a separate motion. Ellington is an investment and advisory firm. Defendants do not allege that Ellington provides litigation financing to Beasley Allen. Instead, defendants claim that Ellington provides financing to Smith. Defendants suspect the financing to Smith may be behind Beasley Allen's objections to their settlement proposal.

Defendants' subpoenas directed to Beasley Allen (Dkt. No. 32201) and Smith (Dkt. No. 32226) are substantially similar and request production of the following documents:

1. All Documents or Communications that reflect or relate to any Funding You received from Fortress concerning the above-captioned case, and/or claims that have or may be asserted therein, including when the funding first began and on what terms.

2. All Documents or Communications that reflect or relate to any Third-Party Funding You have received in any way related to the Litigation and/or claims that have or may be asserted therein, including, without limitation, any Documents or Communications that relate to Funding received from Fortress concerning the above-captioned case.

3. All Agreements You have entered into with any person to provide You with Funding in any way related to the Litigation, and/or claims that have or may be asserted therein including, without limitation, any Agreements with Fortress concerning the above-captioned case.

4. All Documents, Communications, or Agreements that concern how much Remuneration You have received in Third-Party Funding in any way related to the Litigation, and/or claims that have or may be asserted therein including, without limitation, any Documents, Communications or Agreements that relate to Funding received from Fortress concerning the above-captioned case.

6558470v2

      5.      All Documents, Communications, or Agreements that concern the conveyance, sale, syndication, factoring or other transfer of Third-Party Funding You have received that relates, in any way, to the Litigation and/or claims that have or may be asserted therein.

      6.      All Documents, Communications, or Agreements that concerning [sic] the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein.

      7.      All Communications You have had with any Person who is not a party to this action, including news organizations like Thomson Reuters or Fortress, related to the Proposed Plan of Reorganization and the solicitation of personal injury Plaintiffs regarding same.

      8.      All Communications You have had with any person who is not a party to this action, including news organizations like Thomson Reuters or Fortress, related to settlement offers made to You by Defendants in connection with the Litigation.

Requests 1-6 remain pending and are in dispute. Defendants agreed to forego Requests 7 and 8. Defendants also agreed to limit their scope of Requests 1-6 to exclude communications to journalists to the extent the communications are responsive to the requests. Additionally, defendants do not request privileged communications to be produced, such as communications solely between Beasley Allen or Smith and their clients regarding legal advice.

      Defendants' subpoena seeks the following documents and information from Ellington Management (Dkt. No. 32215):

      1.      All Communications or Agreements between You and Law Firms related to the Litigation.

      2.      All Communications, Agreements, or Documents that reflect which Law Firms You have provided Funding to related to the Litigation.

      3.      All Communications, Agreements, or Documents that reflect when you began providing Funding to Law Firms related to the Litigation.

      4.      All Communications, Documents, or agreements that reflect in any way to Funding You provided to Law Firms related to the Litigation.

      5.      All Communications, Agreements, or Documents, that reflect the terms of the Funding You provided to Law Firms related to the Litigation.

      6.      All Communications between You and Law Firms related to Defendants' proposed Resolutions of the Litigation from 2020 to present, including Communications related to the Litigation and the Proposed Plan of Reorganization.

7. All Communications between You and Law Firms related to the Proposed Plan of Reorganization and the solicitation of Claimants regarding same.

8. All Communications between You and Beasley Allen related to the Litigation.

9. All Documents related to Your Funding Beasley Allen's activities related to the Litigation.

10. All Documents, Communications, or Agreements that concern the conveyance, sale, syndication, factoring or other transfer of Funding You provided to Beasley Allen that any way relates to the Litigation and/or claims that have or may be asserted therein.

11. All Communications between You and the Smith Firm related to the Litigation.

12. All Documents related to Your Funding the Smith Firm's activities related to the Litigation.

13. All Documents, Communications, or Agreements that concern the conveyance, sale, syndication, factoring or other transfer of Funding You provided to the Smith Firm that any way relates to the Litigation and/or claims that have or may be asserted therein.

All these requests remain pending and are in dispute. As discussed above, defendants agreed to limit the scope of these requests to exclude communications to Thomson Reuters or other journalists to the extent the communications might be responsive.

Although the subpoenas at issue are slightly different, defendants clarified they are seeking production of the following general categories of materials: (1) documents regarding the subpoenaed parties' litigation financing, including communications with third parties; (2) communications with third parties regarding settlement; and (3) the subpoenaed parties' communications with third parties regarding defendants' proposed reorganization. Opp. Brief at 10-11.

Defendants argue their requested discovery is relevant, important and necessary in order to "shed light on what is really driving [Beasley Allen's] persistent and vocal anti-vote campaign [to defendants' proposed prepackaged bankruptcy]." Id. at 2-3. Defendants contend that information regarding whether Beasley Allen has litigation funding is important because they

6558470v2

"need to know who the players are so they can understand the financial incentives driving their motivations, and even more fundamentally, if the financial incentives have become so out of balance that settlement is effectively impossible." Id. at 14. J&J continues that "there is good cause to suspect that funders have express or de facto control over settlement, that the interests of the plaintiffs are not being promoted or protected, and that conflicts of interest exist." Id. at 19. And, J&J argues, "Beasley Allen's conduct suggests that … undisclosed financial interests are actually driving its decisions relating to the resolution of the talc litigation." Id. at 20. Defendants conclude by arguing litigation financing materials are not privileged or protected work product, and that their requests are not unduly burdensome, overbroad, or harassing. It appears at this time that defendants do not challenge Beasley Allen's representation that it does not have litigation funding for this MDL. Instead, defendants contend that counsel that referred talc cases to Beasley Allen in the past (i.e., Smith) may be saddled with financing that impacts Beasley Allen's settlement position in this MDL.

Beasley Allen's and the PSC's opposition to the subpoenas are in lockstep. They argue that defendants' subpoenas seek irrelevant, privileged and disproportional discovery. The PSC also contends defendants' subpoenas are unduly burdensome, oppressive, and harassing. Smith argues that litigation funding information and settlement communications are irrelevant and a subpoena for all communications with "any person" imposes an undue burden.[4]

**DISCUSSION**

The Special Master will first address defendants' request for litigation financing documents. The resolution of this request largely controls the decision as to the discoverability of communications with third parties concerning settlement and defendants' reorganization plan.

---

[4] The moving parties no longer contest service of defendants' subpoenas.

1. **Defendants' Request for Documents Regarding Litigation Funding**

Ordinarily the scope of discovery is cabined by Federal Rule of Civil Procedure 26(b)(1), which states as follows: "[u]nless otherwise limited by court order, … parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" As the moving parties correctly point out, defendants' subpoenas do not request information regarding a party's claim or defense. Indeed, the requests have nothing to do with the core of the case which is whether defendants' talc products contained asbestos and if the products caused plaintiffs' cancer. Defendants do not try and hide this. In fact, they acknowledge that their subpoenas are directed to "shed[ding] light on what is really driving" the opposition to their settlement proposal and "[w]hy [Beasley Allen is] actively opposed to settling claims that are favorable to its own clients[.]" Opp. Brief at 2, 6. Since litigation funding is not relevant to a party's claim or defense in this case, discovery on the topic is irrelevant under Rule 26. See In re Valsartan, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("The Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant.") (citations omitted); GoTV Streaming, LLC v. Netflix, Inc., 2023 WL 4237609, at *11 (C.D. Cal. May 24, 2023) (litigation funding discovery does not relate to a legal claim or defense).

Nevertheless, even though defendants' subpoenas do not request information relevant to any party's claim or defense, defendants may have a path forward. In Valsartan, the Court explained that litigation funding documents are not categorically off-limits. Rather, a party must demonstrate good cause showing that something untoward occurred before such discovery may go forward. The Court wrote:

> To be sure, the Court is not ruling that litigation funding discovery is off-limits in all instances. In cases where there is a showing that something untoward occurred, the discovery can be relevant. In other words, rather than directing

> carte-blanche discovery of plaintiff's litigation funding, the Court will Order the discovery only if good cause exists[.]"

405 F. Supp. 3d at 615.  The Court gave some examples of good cause:

> For example, discovery will be Ordered where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or are not being protected, or conflicts of interest exist.

Id.

Local Federal Rule 7.1.1 of the District of New Jersey also gives defendants a path forward to obtain litigation funding discovery.  This Rule requires lawyers to disclose certain details about third-party litigation funding including the identity of the funder, whether the funder's approval is necessary for litigation or settlement decisions, and a brief description of the financial interest.  See L. R. 7.1.1(a).  Importantly, the Rule also provides:

> The parties may seek additional discovery of the terms of any … [litigation funding] agreement upon a showing of good cause that the non-party has authority to make material litigation decisions or settlement decisions, the interests of the parties or the class (if applicable) are not being promoted or protected, or conflicts of interest exist, or such other disclosure is necessary to any issue in the case.

L. R. 7.1.1(b).

The Special Master now turns to defendants' arguments for why good cause exists for defendants to pursue their subpoenas.  Several of defendants' arguments can be summarily addressed.  First, defendants' argument attacking litigation funding in general is irrelevant to the issues at hand.  Defendants claim that "[t]he fuel for [the] explosion in [MDL] litigation is unquestionably third-party litigation funding."  Opp. Brief at 8.  Defendants' distaste for litigation funding, however, does not address the discovery issue to be decided.  Second, much of defendants' brief cites to litigation funding discovery decisions from different jurisdictions.  See Opp. Brief at 13 ("Information About Litigation Funding Is Considered Relevant And

Discoverable In Cases Across The County."). These decisions will not be addressed in detail because they are distinguishable and not controlling.[5] As Valsartan noted, "[a]t bottom, courts are split on the [discovery] issue and plaintiffs and defendants can each cite to cases supporting their position." 405 F. Supp. 3d at 614; Hobbs v. American Commercial Barge Line LLC, 2023 WL 6276068, at *3 (S.D. Ind. Sept. 26, 2023). Since controlling case law and the Local Rules from this District address the relevant issue, defendants' reliance on cases and Local Rules from around the country is misplaced. Third, defendants' argument that the requested documents are relevant to issues in a separate case plaintiffs filed against them is irrelevant to the issues at hand.[6] The SM will only address discovery relevant to issues in this case, not a separate litigation. Four, defendants' "champerty" argument is denied without further decision. Opp. Brief at 23.

---

[5] For example, certain cases relied upon by defendants do not address litigation financing discovery at all, but rather whether an assignment of a federal claim is valid and whether to apply state or federal law to this question. See In re Turkey Antitrust Litig., 2024 WL 1328824, at *8 (N.D. Ill. Mar. 28, 2024); In re Pork Antitrust Litig., 2024 WL 511890, at *7 (D. Minn. Feb. 9, 2024). Additionally, in In re Pork, there was no dispute that litigation financing was in fact in place and that the litigation funder had final settlement authority. Id.

Even the cases cited by defendants that involve litigation financing discovery disputes are inapposite. See, e.g., Hobbs v. Am. Commercial Barge Line LLC, 2023 WL 6276068, at *4 (S.D. Ind. Sept. 26, 2023) (discovery regarding medical funding in personal injury litigation relevant to assessing reasonableness of medical expenses and damages); In re Am. Med. Sys., Inc., 2016 WL 3077904, at *5 (S.D. W. Va. May 31, 2016) (same); Acceleration Bay LLC v. Activision Blizzard, Inc., 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (litigation funding discovery relevant to central issues in patent litigation such as validity, infringement, valuation, damages, etc.); Gbarabe v. Chevron Corp., 2016 WL 4154849, at *2 (N.D. Cal. Aug. 5, 2016) (plaintiffs' counsel conceded they were dependent on outside litigation funding and the relevance of litigation funding agreement); Cobra Int'l, Inc. v. BCNY Int'l, Inc., 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013) (litigation funding discovery in patent dispute relevant to ownership of patent and standing to bring suit); Nelson v. Millennium Labs., Inc., 2013 WL 11687684, at *6 (D. Ariz. May 17, 2013) (permitting discovery of billing records and agreements between client and counsel or third parties where such information relates to damages and bias). Further, even though defendants argue that "MDL courts around the country have recently required disclosure of litigation financing information given the prevalence of litigation financing in mass tort litigation," those courts have not required more than what Beasley Allen has already disclosed. See In re Zantac (Ranitidine) Prods. Liab. Litig., 2020 WL 1669444, at *6 (S.D. Fla. Apr. 3, 2020); In re Nat'l Prescription Opiate Litig., 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018).

[6] See Opp. Brief at 17 n.5. ("Beasley Allen's litigation funding is directly relevant to its adequacy as putative class counsel [in another case recently filed against Johnson & Johnson]."); see also Opp. Brief at 22.

Getting to the crux of the issue, the short answer as to why no good cause exists to grant defendants' request for litigation finance discovery is that Beasley Allen, via Birchfield's testimony, has already attested to the fact that Beasley Allen has no such litigation funding for this MDL. On two occasions Birchfield testified under oath that Beasley Allen has not used litigation funding for talc cases in this MDL. See Hr'g Tr. on Def.'s Mot. to Disqualify, Dkt. No. 32153 at 60-62. He similarly testified when deposed during the LTL-2 bankruptcy proceeding. See Beasley Allen Resp. Letter Br., Exh. 3, Dkt. No. 32251-3 at 11-13. ("[T]here was the allegation that Beasley Allen is so heavily indebted that we could not accept the [settlement] proposal, … that is categorically false…. We have not obtained litigation financing or funding for our talc clients."). No good reason exists to question the veracity of Birchfield's sworn testimony.

Foregoing a challenge to Birchfield's testimony, defendants pivot to the Smith Law Firm. Defendants' subpoenas directed to the Smith firm are quashed because defendants have not shown good cause for the discovery. Defendants' subpoena is based on the speculative assertion that the firm and Ellington have litigation financing tentacles with Beasley Allen in this MDL. Defendants allege that Smith partnered with Beasley Allen in the past on talc litigation and that Smith currently has substantial financing with Ellington. Opp. Brief at 8-9. Based on these sketchy allegations, defendants assert that Smith may have referred cases to Beasley Allen in this MDL and that Smith's financing may therefore impact Beasley Allen's settlement position. The Special Master will not bless discovery that is based on this sort of speculation and conjecture. Relying on the opinion of counsel, defendants assert "the Beasley firm is not able to say yes to any deal, because they're way too deep in debt from funding." Id. at 10 (citing Ex. 13). While the SM does not question the sincerity of counsel's belief, no competent evidence has been

produced to support the assertion that Beasley Allen is "too deep in debt from funding" to settle or that Smith currently has any financing arrangement regarding this talc litigation. The fact that Smith may have partnered with Beasley Allen in the past on talc litigation is not competent evidence that the firm's financing impacts Beasley Allen's settlement position in this litigation. To put it bluntly, no competent evidence exists to support defendants' argument that "litigation funding received by the Smith Law Firm has direct implications for Beasley Allen's ability to settle cases (and vice versa)." Opp. Brief at 9. To the extent defendants want to fish around to discover Beasley Allen's general financial condition, the request is denied. This subject area is out of bounds.[7]

Even if Birchfield's testimony does not "seal the deal," other reasons exist to deny defendants' motion. Although much has been written, the gravamen behind defendants' discovery request may be defendants' belief that Beasley Allen should agree to its settlement offer because this is in the plaintiffs' best interests. For example, defendants question "[w]hy is the Firm actively opposed to settling claims at terms that are favorable to its own clients?" Opp. Brief at 6. Defendants also argue that "[t]he approximately $6.475 billion settlement offer would represent one of the largest resolutions in the history of mass tort litigation (and is more than double the amount included in the term sheet previously negotiated with Beasley Allen)." Id. Being convinced of the benefits of their offer, defendants suspect there is an insidious reason for Beasley Allen's rejection, i.e., litigation financing or common benefit fees. See id. at 1 ("Beasley Allen is vehemently opposed to any resolution that does not maximize its own fee recovery[.]") The SM holds that the mere fact that Beasley Allen rejects defendants' settlement

---

[7] Given the finding that defendants' subpoenas request irrelevant discovery, there is no need to address the argument that the subpoenas request privileged or disproportional discovery.

-11-

offer does not establish good cause to authorize defendants' subpoenas.  To hold otherwise would open the floodgates to litigation financing discovery.  It is not unusual or unexpected in high stakes litigation for defendants' settlement offers to be rejected.

Defendants would have a better argument if they could show Beasley Allen's rejection was irrational or arbitrary and capricious.  However, this is not the case.  To be clear, the SM takes no position on the merits of defendants' settlement offers or the liability issues in the case.  This is not the SM's role.  Whether the SM agrees or disagrees with defendants' settlement offer is immaterial.  The bottom line is that the parties dispute the value of plaintiffs' claims.  The root of the parties' differences may be their drastically different views as to whether asbestos is present in defendants' products and if asbestos caused plaintiffs' cancer.  Defendants believe plaintiffs' claims are frivolous while plaintiffs vehemently disagree.  Given the available record generated over decades of talc litigation, the continuing scientific debate, and the fact that thus far plaintiffs have overcome a Daubert challenge, the SM does not conclude that Beasley Allen's views are irrational or arbitrary or capricious.  Instead, the parties are at odds about the value of plaintiffs' claims.  The SM therefore disagrees with defendants' argument that "Beasley Allen's conduct suggests that other undisclosed financial interests are actually driving its decisions relating to the resolution of the talc litigation."  Opp. Brief at 20.  This being the case, the SM finds that no good cause exists to believe that Beasley Allen's settlement position is motivated by an insidious reason such as litigation financing or the prospect of a lucrative common benefit fee.  To repeat, the fact that a firm rejects a settlement offer, even if agreed to by other firms, does not establish good cause to obtain litigation financing discovery.

Defendants' additional arguments as to why good cause exists to permit their requested discovery fare no better.  Defendants rely heavily on a May 14, 2020 email exchange between a

-12-

6558470v2

Beasley Allen talc claimant ("Jane Doe") and defendants' outside counsel.  See Def. Exh. 5.  Defendants argue the exchange demonstrates that Beasley Allen "actively misrepresented" that defendants were "unwilling to settle."  Opp. Brief at 20.  Defendants further argue the exchange evidences that the client's interests are not being protected or promoted, and that "[t]his is unlikely to be an isolated incident."  Id.  Based on this short email exchange, defendants draw the conclusion that, "Beasley Allen's conduct suggests that other undisclosed financial interests are actually driving its decisions relating to the resolution of talc litigation."  Id.

The SM is unwilling to open the door to litigation financing discovery based on the referenced email exchange with one of Beasley Allen's 11,000 clients.  We know almost nothing about the sender of the email and what else she may or may not have been told about settlement.  There is no context to the produced emails, and it is not known if Jane Doe is accurately or completely stating what Beasley Allen relayed.  Defendants' unfounded suspicion that the cited emails demonstrate there are "undisclosed financial interests" or that Beasley Allen misrepresented defendants' settlement position is not supported by persuasive evidence.  Also lacking support is defendants' conclusion that the interests of Jane Doe and Beasley Allen's clients are not being protected or promoted.  Id. at 20.  Evidence to support defendants' claims is lacking.  See Valsartan, 405 F.Supp. 3d at 616 ("The fact that defendants have raised no nonspeculative basis for their discovery request results in its denial.").[8]  "Courts will compel discovery into funding sources only upon the presentation of some objective evidence that the discovering party's theories of relevance are more than just theories."  US Technologies v.

---

[8] Defendants overstate their case when they argue, "[d]efendants currently have a pending settlement offer out to [Jane Doe] (and all other claimants in the MDL) through the LLT proposed plan of reorganization."  Opp. Brief at 6.  In fact, the Plan only refers to wide ranges of settlement values.  Nor does the Plan give a precise date when the settlement will be paid.  As a result, the Plan does not tell Jane Doe for certain how much and when she will be paid to settle.  Also questionable is defendants' assertion that Beasley Allen has not suggested defendants' settlement offer "is too little."  Id. at 21.  It is well known that time and time again more money has been demanded to settle.

Switch, Ltd., 344 F.R.D. 306, 312 (D. Nev. 2019).  No such objective evidence has been proffered.

Defendants also argue that "additional conflicts of interest abound" because Beasley Allen stands to lose common benefit fees if this talc litigation resolves in bankruptcy rather than at trial or through a traditional settlement.  Opp. Brief at 21.  This is not a sufficient ground to establish good cause to grant defendants' requested discovery.  Beasley Allen denies that its settlement position is motivated by common benefit concerns.  The Firm has also represented that it has refused to discuss common benefit issues until a settlement in principle is reached.  Further, Beasley Allen is not the only plaintiffs firm that has a distaste for mass tort settlements in the bankruptcy system.  Thus, the Special Master concludes that no persuasive evidence exists that the specter of a common benefit award overrides the reasons Beasley Allen has given for why it objects to defendants' settlement offers.

Defendants rely heavily on Nimitz Technologies LLC v. CNET Media, Inc., 2022 WL 17338396 (D. Del. Nov. 30, 2022), and argue the decision is a "case study on why disclosure of litigation financing is warranted[.]" Opp. Brief at 15.  However, the case is plainly distinguishable.  In that patent case the court had legitimate concerns about who the real party in interest was based upon, inter alia, Nimitz's failure to file disclosures required by the court's rules, violation of the Rules of Professional Conduct, the failure to comply with court orders, a possible fraudulent conveyance to a shell company, and the filing of a fictitious patent assignment designed to shield the real parties in interest from potential liability.  Id. at 26.  The facts in this case are not remotely analogous to Nimitz.

-14-

2. **Defendants' Request for Communications Regarding Settlement and Defendants' Plan for Reorganization**

The discussion thus far has focused on defendants' request for litigation financing documents. However, defendants also request communications with third parties regarding settlement and defendants' proposed reorganization. This request is denied. No authority has been cited to support authorizing this discovery request. Additionally, the requested documents are irrelevant to any claim or defense in the case. No further explanation is necessary other than that previously given. As already noted, the fact that Beasley Allen objects to defendants' settlement offer does not establish good cause to inquire into litigation financing issues. Nor has good cause been established based on a short email exchange with a claimant or the fact that Beasley Allen may get a common benefit award if the parties settle outside the bankruptcy context. The Special Master rejects defendants' argument that "there is good cause to suspect that funders have express or de facto control over settlement, that the interests of the plaintiffs are not being promoted or protected, and that conflicts of interest exist." Opp. Brief at 19.

**CONCLUSION**

Accordingly, for all the reasons stated herein, the motions to quash and/or for protective order filed by Beasley Allen, the Plaintiffs' Steering Committee, and the Smith Law Firm are granted. To repeat, the SM does not weigh in one way or the other as to whether defendants' settlement proposal is good or bad or if it should or will be accepted. That is for other people to evaluate and decide. The Special Master simply holds that there is no good cause to authorize defendants' requested discovery.[9]

---

[9] Defendants' request that the Special Master review the subpoenaed documents in camera is denied. No good grounds exist to believe the review will reveal any fruitful information.

-15-

6558470v2

## **ORDER**

The Special Master having received the motions to quash and/or for protective order filed by Beasley Allen, the Plaintiffs' Steering Committee, and the Smith Law Firm (Dkt. Nos. 32445, 32483 and 32603), as well as defendants' opposition and the moving parties' replies; and oral argument having been conducted; and accordingly,

IT IS HEREBY ORDERED this 9th day of July, 2024, that the moving parties' motions are GRANTED, and defendants' subpoenas directed to Beasley Allen, the Smith Law Firm and Ellington Management Group are QUASHED.

By: *s/ Joel Schneider*
Hon. Joel Schneider (Ret.)
Special Master

Dated: July 9, 2024

6558470v2