**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| IN RE: JOHNSON & JOHNSON | ) | |
| TALCUM POWDER PRODUCTS | ) | |
| MARKETING, SALES PRACTICES AND | ) | No. 3:16-md-02738-MAS-RLS |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| | ) | |
| *This Document Relates To All Cases* | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR THE ENTRY OF AN ORDER TO ESTABLISH A CENSUS

## **<u>TABLE OF CONTENTS</u>**

**Page**

BACKGROUND .......................................................................................................7

ARGUMENT ........................................................................................................11

CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acuna v. Brown & Root, Inc.*,
    200 F.3d 335 (5th Cir. 2000) ...............................................................................15

*Gould v. Johnson & Johnson*,
    No. 4:16-cv-03838-HSG (July 8, 2016) ........................................................7, 10

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs.*
    *& Prods. Liab. Litig.*,
    220 F. Supp. 3d 1356 (J.P.M.L. 2016) ..................................................1, 5, 7, 13

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales*
    *Practices & Prods. Liab. Litig.*,
    2017 U.S. Dist. LEXIS 214411 (J.P.M.L. Apr. 6, 2017) ..................................13

*Love v. LLT Management LLC*,
    No. 3:24-cv-02214 (3d Cir. July 18, 2024) ........................................................3

*Love v. LLT Management LLC*,
    No. 3:24-cv-06320 (D.N.J. May 22, 2024) ........................................................3

*In re LTL Mgmt., LLC*,
    64 F.4th 84 (3d Cir. 2023) .................................................................................11

*In re LTL Mgmt., LLC*,
    652 B.R. 433 (Bankr. D.N.J. 2023) ...................................................................11

*Musgrove v. Johnson & Johnson*,
    No. 1:16-cv-06847 (June 29, 2016) ............................................................7, 10

*In re Vioxx Prods. Liab. Litig.*,
    557 F. Supp. 2d 741 (E.D. La. 2008) ................................................................15

*Wharton v. Vaughn*,
    No. 01-cv-06049, 2022 U.S. Dist. LEXIS 164138 (E.D. Pa. Sept.
    12, 2022) ...........................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 11 ...............................................................................................5, 14

Fed. R. Evid. 702 ...............................................................................................*passim*

This latest missive from the Plaintiffs' Steering Committee ("PSC"), led by Beasley Allen, is based on a knowingly false premise.  Namely, despite the PSC's continuous assertions otherwise, this multidistrict litigation proceeding ("MDL") has never existed solely to address ovarian cancer.  To the contrary, the MDL's scope was defined from the very first day as encompassing all actions involving "common factual questions regarding alleged *carcinogenic* properties of talc."  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1358 (J.P.M.L. 2016) (emphasis added).  And consistent with that stated scope, virtually every PSC member firm—including lead counsel Beasley Allen—filed non-ovarian cancer claims before this Court.

These stark facts leave no real question that the motion is nothing more than a dressed-up *media statement*, premised on false attestations, designed to present a misleading narrative in furtherance of ongoing efforts to derail the pending offer that would resolve all the talc-related claims pending before this Court.  More generally, the motion is part of a pattern of behavior in recent weeks that suggests the PSC has lost all sense of its authentic function and purpose.  Instead of focusing its efforts on prosecuting the claims of its clients and the other women that comprise this MDL, it now devotes its every waking moment to a singular goal: saturating this Court with a continuous stream of motions, designed to foment headlines and keep Defendants in a constant churn of brief writing, all in the

misguided hope that the calculated chaos will somehow distract Defendants and counsel representing the vast majority of women in the talc litigation from their ongoing efforts to reach a full, fair and final resolution of this matter.  These theatrics are misguided and have grown more than tedious.

After lauding itself for nearly eight years of work advancing its "duties and obligations" to the MDL, the PSC's decision to launch this latest hand grenade is particularly ironic:  In the midst of Rule 702 briefing and mere months before the long-awaited first bellwether trial—over which the PSC has time and again banged its proverbial fist and insisted that the Court must move to with greater haste—the PSC suddenly seeks an abrupt pause to these proceedings.  Now, despite yelling from every (media-supplied) rooftop in sight that its clients need their day in court, the PSC apparently wishes to upend the work of this MDL, and inevitably delay any bellwether trial, so that it can distract the Court with a census registry process designed to elicit discovery into the scope of _as-yet-unfiled claims_—specifically, the number of such claims involving ovarian cancer as opposed to other gynecological cancers.

The request is a thinly veiled attempt to litigate potential future bankruptcy issues in this Court, and even more concerningly, to blow up Defendants' ongoing efforts to negotiate a global resolution that would result in *compensation for the PSC's own clients*.  Such tactics are hardly surprising when one considers that, in a

2

matter of months, lead counsel (Beasley Allen) has (i) entered into an alliance with a former Johnson & Johnson lawyer; (ii) falsely asserted in papers to this Court that Defense counsel solicited a Beasley Allen client, despite its own proffered evidence proving the precise opposite; (iii) failed to communicate Defendants' settlement offers to at least one client, raising the specter of more; (iv) potentially flouted the rules of this Court that mandate the disclosure of litigation financing; (v) asserted fraudulent conveyance claims that are directly refuted by the positions it took in bankruptcy, purely as a communication tactic designed to thwart Defendants' ongoing solicitation that would result in a comprehensive resolution of this MDL; and (vi) brought a meritless TRO/PI motion, and related appeal that was summarily denied, to do the same.[1]  Given that the latest motion is built on a demonstrably false premise, and includes a number of false attestations, the Court should see it immediately for precisely what it is: more of the same.

---

[1] *See*  ECF 28760; ECF 32251; ECF 32200; ECF 32827; *Love v. LLT Management LLC*, No. 3:24-cv-06320-MAS-RLS (D.N.J. May 22, 2024) ("*Love*"), Complaint (Counts I-II and IV-VII) (ECF 1); *Love*, Mot. for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (D.N.J. June 11, 2024) (ECF 6); *Love*, Order Denying Plaintiffs' Mot. for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (D.N.J. June 28, 2024) (ECF 32); *Love*, Notice of Appeal (D.N.J. July 3, 2024) (ECF 37); *Love v. LLT Management LLC*, 3:24-cv-2214 (3d Cir. July 18, 2024), Order Denying Mot. for Injunction Pending Appeal or, Alternatively, to Expedite Appeal (ECF 26).

As for the substance of the PSC's arguments, of which there is little, its plea for an immediate census should fail for at least three reasons.

**First**, the PSC argues that a census identifying the type of cancer in *unfiled* claims would "provide a greater understanding of the size of the MDL and could be helpful for negotiating a global resolution of the litigation." (Mot. at 4.) As an initial matter, the proposition that assessing claims outside the MDL would shine light on the "size of the MDL" is nonsensical on its face. (*Id.*) As for the proposition that immediate review of such claims would advance the goal of settlement, the PSC's request seeks to do the exact opposite by collaterally attacking Defendants' "proposed bankruptcy," which the PSC does not dispute is "supported by approximately 71,000 persons" whose cancers were allegedly caused by cosmetic talc and would thus be compensated under the Plan. (*Id.* at 3.) Essentially, the PSC speculates that a "substantial percentage of these persons do not suffer from ovarian cancer" and therefore should not be part of any global settlement. (*Id.*) However, the PSC's opposition to Defendants' settlement efforts—which appears to be based on its quest for greater attorney compensation, not compensation for its clients—is not only unhelpful to settlement efforts, it is also a matter for the bankruptcy court, not this MDL.

**Second**, as already noted, the PSC's motion is based on a false premise—i.e., that any claims not involving ovarian cancer[2] are "beyond the scope of this MDL." (Mot. at 2.)  Beyond the order defining the scope of the MDL, *see In re Johnson & Johnson*, 220 F. Supp. 3d at 1358, the PSC's supposition flies in the face of its own behavior for the past eight years.  The very first transfer order for this MDL included both ovarian and uterine cancer cases.  *See id.*  This filing trend continues even today, with Beasley Allen (the primary signatory of this motion) alone filing **nearly 100 non-ovarian cases**, thereby "certif[ying]" that these non-ovarian cancer cases "have evidentiary support" and are "nonfrivolous."  Fed. R. Civ. P. 11(b)(2)-(3).  And, of course, these same cases have never been dismissed.  Thus, the PSC's suggestion that such claims have no merit raises serious questions about whether these law firms are complying with their ethical responsibilities and the Rules of Civil Procedure.

**Third**, a census at this particular stage of the MDL would be inefficient and burdensome, distracting the parties and the Court from critical Rule 702 motion practice.  Once this pivotal stage is completed, Defendants would welcome a census of all currently filed and potential (unfiled) claims, whether before or after any bellwether trial.  Indeed, Defendants hope that this motion signifies a shift in

---

[2]    The PSC defines ovarian cancer as "epithelial ovarian cancer, fallopian tube cancer or primary peritoneal cancer."  (Mot. at 1.)

the much-needed direction of early and collaborative vetting protocols designed to test the validity and strength of mass filed (or aggregated but merely threatened) claims, and that the members of the PSC will be leaders in encouraging the adoption of such techniques at the outset of future MDL proceedings, which is when such procedures should be employed—i.e., ***before*** the parties proceed with expensive and burdensome discovery.  Given the recent position of the American Association for Justice ("AAJ") ("the world's largest plaintiff trial bar") strongly opposing a proposed MDL rule codifying such a requirement, Defendants were not holding their breath that firms like Beasley Allen would embrace the importance of such claim vetting procedures.  (*See* Letter from American Association for Justice to Committee on Rules of Practice and Procedure ("AAJ Letter"), Feb. 15, 2024, at 9 (opposing "proposed amendment to 16.1(c)(4) regarding 'claim sufficiency' [as] a step backwards") (Ex. 1 to Cert. of Kristen Fournier ("Fournier Cert.")).)  But, rest assured, now that they have signaled their break from the AAJ through support for such procedures, Defendants will be pleased to collaborate with Beasley Allen and other PSC firms on such efforts in this and other litigations.

In short, for all of these reasons (elaborated in greater detail below), the Court should recognize the transparency of the PSC's timing, and defer the creation of a census, registry or similar such program until after the upcoming Rule 702 briefing and hearings have been completed.

## BACKGROUND

The Judicial Panel on Multidistrict Litigation created this proceeding to "eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel, and the judiciary" in "*[a]ll*" federal cases "involv[ing] factual questions relating to the risk of cancer posed by talc and talc-based body powders, whether the defendants knew or should have known of this alleged risk, and whether defendants provided adequate instructions and warnings with respect to the products." *In re Johnson & Johnson*, 220 F. Supp. 3d at 1357-58 (emphasis added). While "[t]he majority" of the initial cases in the MDL were ovarian cancer actions, they also included claims involving uterine cancer and even consumer class actions generally alleging deceptive marketing and failure to disclose talc's purportedly "carcinogenic properties." *Id.* at 1357; (*see also* Schedule CTO-1; Compl., *Musgrove v. Johnson & Johnson* ("*Musgrove* Compl."), No. 1:16-cv-06847 (filed June 29, 2016) (Ex. 2 to Fournier Cert.); Compl., *Gould v. Johnson & Johnson* ("*Gould* Compl."), No. 4:16-cv-03838-HSG (filed July 8, 2016) (Ex. 3 to Fournier Cert.).)

Over the next several years, the MDL expanded dramatically—thanks in no small part to rampant attorney advertising and third-party litigation funding—becoming one of the largest MDL proceedings in history. The proceeding has swelled to more than 32,728 total pending lawsuits. And although the majority of

those lawsuits involve epithelial ovarian, fallopian tube or primary peritoneal

cancers (28,851), a substantial portion of them involve other diseases:

- ***200 cases involving cervical cancer***

- ***747 cases involving endometrial/uterine cancer***

- ***1,096 cases involving mucinous ovarian cancer***

- ***1 case involving non-gynecological cancer***

- ***1 case involving stromal cancer[3]***

Notably, many of these non-ovarian cancer cases were brought by PSC law firms.

In particular, as shown in the attached chart, Beasley Allen has filed close to 100

such cases; Motley Rice and Milberg Coleman have each brought 24 of them; and

Golomb Spirt Grunfeld has initiated 19 non-ovarian cancer cases.  (*See* Chart (Ex.

4 to Fournier Cert.).)

    As further proof of this trend, one need only peruse the aforementioned

PPFs, all of which were prepared "under oath," to ascertain the wide variety of

claims asserted in this MDL.  By way of example, *Small v. Johnson & Johnson*,

brought by Beasley Allen, involves a claim that Ms. Small was allegedly

diagnosed with **cervical cancer** in 1986.  (*See* Pl. Profile Form, *Small v. Johnson &*

---

[3] These statistics are based on the allegations sworn to by roughly 70% of the filed cases through their plaintiff profile forms ("PPF").  Any given category may, in fact, be even larger in light of the fact that roughly 30% of claimants have not yet been required to complete the PPF.

*Johnson* ("*Small* PPF") ¶ 3, No. 3:18-cv-16457-FLW-LHG (filed Nov. 27, 2018) (Ex. 5 to Fournier Cert.).)

3.    **TALCUM POWDER-RELATED CLAIM**

a. Have you been diagnosed with one of the following types of cancer? b. If yes, please provide the approximate date of initial diagnosis (if more than one, for each initial diagnosis). c. If you were diagnosed with ovarian cancer, fallopian tube or primary peritoneal cancer, please provide the type. d. If you were diagnosed with ovarian cancer, fallopian tube or primary peritoneal cancer, please provide the stage.

| a. Type of Cancer | b. Date of Initial Diagnosis | | | c. Type of Ovarian, Fallopian tube, or Primary Peritoneal Cancer | d. Stage of Ovarian, Fallopian tube or Primary Peritoneal Cancer |
|---|---|---|---|---|---|
| Cervical | Dec | 2 | 1986 | Unknown | Unknown |
| | | | | | |

Similarly, the specific disease at issue in *Zirpolo v. Johnson & Johnson* (another Beasley Allen case) is **endometrial (uterine) cancer**.  (*See* Pl. Profile Form, *Zirpolo v. Johnson & Johnson* ("*Zirpolo* PPF") ¶ 3, No. 3:19-cv-01454-FLW-LHG (filed Jan. 30, 2019) (Ex. 6 to Fournier Cert.).)

3.    **TALCUM POWDER-RELATED CLAIM**

a. Have you been diagnosed with one of the following types of cancer? b. If yes, please provide the approximate date of initial diagnosis (if more than one, for each initial diagnosis). c. If you were diagnosed with ovarian cancer, fallopian tube or primary peritoneal cancer, please provide the type. d. If you were diagnosed with ovarian cancer, fallopian tube or primary peritoneal cancer, please provide the stage.

| a. Type of Cancer | b. Date of Initial Diagnosis | | | c. Type of Ovarian, Fallopian tube, or Primary Peritoneal Cancer | d. Stage of Ovarian, Fallopian tube or Primary Peritoneal Cancer |
|---|---|---|---|---|---|
| Endometrial | Apr | 2 | 2003 | Endometrioid | |

As noted above, the wide variety of injuries alleged in the Beasley Allen cases mirrors the breadth of non-ovarian cancer-based claims brought by other law firms that also are members of the PSC pending in this MDL.  (*See* Chart (Ex. 4 to Fournier Cert.).)  For example, in *Musgrove v. Johnson & Johnson*, a plaintiff represented by Burns Charest LLP alleges that "[t]he development of **uterine** cancer by Mrs. Musgrove was the direct and proximate result of" her use of Johnson's Baby Powder and Shower to Shower.  (*Musgrove* Compl. ¶ 44 (emphasis added).)  That lawsuit expressly claims that there is a "link between endometrial cancer, a form of uterine cancer, and the application of talcum powder to the perineal area."  (Id. ¶ 20.)  These allegations mirror those being made in another case—*Gould v. Johnson & Johnson*.  (*See Gould* Compl. ¶ 1 ("This action arises out of Plaintiff Dolores Gould's diagnosis of uterine cancer, which was directly and proximately caused by her regular and prolonged exposure to talcum powder . . . .").)

As these lawsuits and the ones involving ovarian cancer continued to mount, it soon became clear that the sheer size of this MDL weighed in favor of some form of global settlement.  That reality prompted the formation of LLT (previously LTL)—a subsidiary established to hold and manage claims in talcum powder litigation, which then filed for Chapter 11 bankruptcy protection.  Although the Third Circuit ultimately dismissed the first petition, it expressly recognized that

"the progression of the multidistrict litigation on a separate track would continue to sharpen all interested parties' views of mutually beneficial settlement values." *In re LTL Mgmt., LLC*, 64 F.4th 84, 108 (3d Cir. 2023) (highlighting benefit of a "meaningful global or near-global settlement"). Then, in dismissing the second petition, the presiding bankruptcy judge, Judge Kaplan, specifically "urge[d] the parties to build upon the remarkable progress that has been achieved in the past 120 days in reaching a viable global settlement." *In re LTL Mgmt., LLC*, 652 B.R. 433, 455 (Bankr. D.N.J. 2023).

While Defendants have heeded those calls, the PSC (led by Beasley Allen) has strenuously flouted them, flooding this Court with frivolous motions and taking to their soap box with *ad hominem* attacks against Defendants and their counsel. This motion is just the latest example of the PSC's obstructionist strategy.

## ARGUMENT

The PSC's motion for a census registry should be denied at this time and/or deferred to a later date because: (1) it is a baseless collateral attack on Defendants' global settlement efforts; (2) it mispresents the scope of the talc litigation; and (3) it threatens to frustrate the efficient administration of the MDL.

***First***, the PSC asserts that a census "will provide a greater understanding of the size of the MDL and could be helpful for negotiating a global resolution of the litigation." (Mot. at 4.) But that assertion strains credulity and is belied by the

repeated attacks throughout the PSC's motion on Defendants' good-faith attempts to reach a global settlement of the talc litigation.  Indeed, the crux of the PSC's motion is to denigrate "the votes of claimants" it acknowledges *support* a global settlement on the ground that their claims involve non-ovarian cancer-based claims.  (*Id.* at 11.)  In truth, while the PSC accuses Defendants of "weaponizing" those votes to the supposed "detriment" of ovarian cancer claimants, it is the PSC that is hijacking this MDL to derail Defendants' ongoing settlement efforts. (Id. at 11, 3.)

Moreover, the PSC's motion is just the latest example of its strategy aimed at obstructing a global settlement.  As previously discussed, Beasley Allen, with support from certain members of the PSC, is waging an all-out anti-vote campaign in the hopes of scuttling current efforts to bring global resolution to the talc litigation.  Its efforts know no bounds, including refusing to communicate Defendants' settlement offers to firm clients and joining forces with one of Defendants' former lawyers to concoct a competing settlement designed to enrich lawyers, not claimants.

Indeed, just like this motion, the whirlwind of filings this Court has been subjected to in recent weeks have each been designed to promote the interests of the *PSC*, not those of talc claimants (both ovarian cancer patients and non-gynecological cancer patients alike).  The PSC's latest motion is clearly designed

12

to accomplish the same objective by needlessly prolonging thousands of claims that could never be litigated to trial in the hope of securing a windfall for lawyers. In short, granting the PSC's motion would undermine—rather than facilitate— efforts to negotiate a global resolution of the talc litigation.

**Second**, contrary to the PSC's repeated claims, "other gynecological cancer" claims are **not** "beyond the scope of this MDL." (Mot. at 2.) The JPML broadly constructed this MDL to encompass "*[a]ll*" federal cases "involv[ing] factual questions relating to the risk of cancer posed by talc," *In re Johnson & Johnson*, 220 F. Supp. 3d at 1357 (emphasis added), including "ovarian **or other gynecological cancer**," *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, MDL 2738, 2017 U.S. Dist. LEXIS 214411, at *2 (J.P.M.L. Apr. 6, 2017) (emphasis added). That explains why there are presently 747 cases involving endometrial/uterine cancer and 200 cases involving cervical cancer—nearly 50 of which were brought by the Beasley Allen firm alone and were supported by PPFs (signed "under oath") attributing **cervical** and **endometrial** cancer diagnoses to perineal application of Johnson's Baby Powder and Shower to Shower. (*See, e.g.*, *Small* PPF; *Zirpolo* PPF.) And, it cannot be emphasized enough, the PSC has never sought to withdraw or dismiss these claims, even as it presses frivolous motions and repeats its counterfactual talking points regarding the scope and history of this MDL.

13

While the PSC now claims that "the truly injured women" are those who "suffer from ovarian cancer" (Mot. at 3), the filing of numerous cases involving other gynecological cancers implicitly "certifie[d] that to the best of [counsel's] knowledge . . . formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support"—i.e., that these non-ovarian cancer patients were *also* injured.  Fed. R. Civ. P. 11(b)(3).  As a result, either the PSC chose to commence and/or at least ignore nearly 1000 incidents of frivolous litigation or it is right now fabricating a false narrative to support its bid for a census.  Either comes dangerously close to approaching a fraud on the Court and likely constitutes clear violations of the New Jersey Rules of Professional Responsibility and Rule 11.  *See Wharton v. Vaughn*, No. 01-cv-6049, 2022 U.S. Dist. LEXIS 164138, at *13-14 (E.D. Pa. Sept. 12, 2022) (granting motion for sanctions; "Although Rule 11 does not include all aspects of the ethical duty of candor to the Court, that obligation informs Rule 11's prohibition on making unsupported factual contentions.") (citing Notes of the Advisory Committee on the 1993 Amendment) (Rule 11 "emphasizes the duty of candor")).  In short, the repeated claims made in the PSC's motion about the scope of this MDL are blatantly false and further highlight the impropriety of its sudden request for a census.

14

***Third***, the PSC's motion separately fails because it would disrupt the fair and efficient administration of the MDL.  While the PSC cites a handful of orders from other MDLs approving of census registries or requiring plaintiffs to produce pre-discovery information regarding the nature and cause of their claims, they are "designed to handle the complex issues and potential burdens on ***defendants*** and the court in mass tort litigation."  *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (emphasis added).  In other words, "[t]he[ir] basic purpose . . . is to identify and cull potentially merit less claims and streamline litigation in complex cases."  *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008).  Accordingly, and as the defense bar has repeatedly advocated and proposed by formal rulemaking, MDL judges should craft procedures "for an ***early*** check into the most basic elements of the claims."[4]

Here, by contrast, the PSC is seeking such a procedure in the midst of Rule 702 motion practice and just months before a potential bellwether trial.  Adopting such a procedure at this stage of the proceedings would disrupt the parties' and the

---

[4]     *See* Lawyers for Civ. Justice, Comment Letter on Proposed Rule 161. On Multidistrict Litigation at 37 (Sept. 18, 2023) (emphasis added), https://www.uscourts.gov/sites/default/files/testimony_packet_for_october_16_2023_final_10-11.pdf; *see also* Dri Ctr. For L. & Pub. Pol'y, Comment Letter on Proposed Rule 16.1 on Multidistrict Litigation (Oct. 11, 2023), https://www.dri.org/docs/default-source/center-law-public-policy/dri-center-comment-on-proposed-frcp-16-1_final2.pdf?sfvrsn=2.

Court's important focus on completing these critical pre-trial activities.  Instead, a census of unfiled claims should be deferred until after the Rule 702 motions are adjudicated.

Finally, it bears highlighting that the PSC's embrace of claims-vetting is contrary to the "world's largest plaintiff trial bar"—of which the PSC firms are presumably members—which has strenuously opposed any and all "early vetting" measures as "extreme" and "controversial."[5]  While Defendants welcome the PSC's change of heart on reform of the MDL system (and look forward to implementing early claims-vetting procedures in future MDLs), this raises further questions about the PSC's motivation for filing the underlying motion and reinforces its lack of merit.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the PSC's motion for a census.

---

[5]      *See* AAJ Letter, at 9-10.

Dated: July 19, 2024

Respectfully submitted,

*/s/ Kristen R. Fournier*
Kristen R. Fournier

**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
kfournier@kslaw.com

Susan M. Sharko
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
susan.sharko@faegredrinker.com

*Attorneys for Defendants Johnson & Johnson and LLT Management, LLC*

17

## CERTIFICATION OF SERVICE

I hereby certify that on July 19, 2024, a true and correct copy of the foregoing motion was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ *Kristen R. Fournier*
Kristen R. Fournier

**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
kfournier@kslaw.com