# EXHIBIT 1



February 15, 2024


Committee on Rules of Practice and Procedure
Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, DC 20544
RulesCommittee_Secretary@ao.uscourts.gov


**Re:    Proposed Amendments to Rule 16.1 (Multidistrict Litigation)**


Dear Members of the Committee on Rules of Practice and Procedure:

The American Association for Justice ("AAJ") submits this comment regarding the rulemaking related to proposed Rule 16.1 on Multidistrict Litigation by the Advisory Committee on Civil Rules ("Advisory Committee"). AAJ is a national, voluntary bar association established in 1946 to strengthen the civil justice system, preserve the right to trial by jury, and protect access to the courts for those who have been wrongfully injured. With members in the United States, Canada, and abroad, AAJ is the world's largest plaintiff trial bar. AAJ members primarily represent plaintiffs in personal injury and wrongful death actions, employment rights cases, consumer cases, class actions, and other civil actions, and regularly represent clients in multidistrict litigation proceedings, both in leadership and non-leadership positions. AAJ supports the proposed rule with amendments as described in this comment.

**I.    A Framework for Evaluating the Proposed Rule.**

AAJ is keenly aware of the time and effort the Advisory Committee dedicated to considering and reviewing proposals and appreciates that one-sided and unfair proposals have been rejected in favor of a more modest and balanced rule. Proposed Rule 16.1 provides the flexibility that judges and parties require. MDLs come in many sizes and too much rigidity is unnecessary for small MDLs, hampering and delaying the resolution of claims. Additionally, any MDL rule must work for antitrust and securities MDLs and other claims based in federal law. Although the defense bar has largely focused on product liability claims, AAJ appreciates the consideration the Advisory Committee has given to class action MDLs, mass action MDLs, and MDLs based on non-product liability related claims, which still make up a significant part of the MDL landscape.

One of the stated purposes of the rule is to provide direction to judges and attorneys handling their first MDL. While there are options for achieving this objective other than a federal rule, AAJ is mindful that should a rule be approved, it must provide clarity and not create

unintended ambiguity or add uncertainty into already complex litigation.[1] With the goal of providing clear direction in mind, AAJ provides two sets of recommendations for making the rule more workable for parties and courts. Each set is its own alternative, but the recommendations stem from similar concerns regarding the proposed rule discussed in Part II *infra*.

## II.    Concerns Regarding Implementation.

AAJ has three major concerns regarding the implementation of the proposed rule.

First, the qualifications of the "coordinating counsel" are undefined in both the rule text and the Committee Note. While the Advisory Committee may be assuming that the coordinating counsel is an attorney who is familiar with the legal issues in the case,[2] no such requirement can be found in the proposed rule. Indeed, no part of the rule or Committee Note provides specific guidance to the transferee court regarding whom should be appointed to this role. Without explicit direction, a judge who is unfamiliar with MDLs could just as easily appoint a third-party neutral, a mediator with no relation to the case, or a lawyer she or he knows to this position. Furthermore, in MDLs in which leadership is contested (or in which different slates of leaders are competing for appointments), it may be unhelpful or inadvisable for the court to appoint a coordinating counsel prior to making a leadership determination. In these instances, picking a coordinating counsel from one side over the other may lead to significant management issues that an inexperienced transferee judge would want to avoid.[3]

Second, many of the proposed topics are too premature to be useful at the initial conference stage and cannot be addressed until leadership has been appointed. The Advisory Committee previously considered two alternatives known as Alternative 1 (longer list) and Alternative 2 (shorter list), the latter of which had more traction during the informal comment period with the AAJ members involved in the discussion regarding alternatives. AAJ recommends that the

---

[1] The January 16, 2024, public hearing heightened awareness of unintended ambiguity as it was clear from the testimony provided that members of the plaintiffs' bar interpreted the role of "coordinating counsel" differently. The Advisory Committee members also offered differing interpretations of the role, with some offering that it was more administrative in nature while others speculating that it was no different from liaison counsel, a position frequently part of leadership structure. If the drafters of the rule are sending out mixed signals, it is reasonable to assume that district court judges, especially those with little to no experience with MDLs, might read the text of the rule differently too. This lack of predictability is unhelpful, as well as potentially time-consuming and expensive for parties and the court.

[2] AAJ makes this observation based on the Committee Note, which states in 16.1(c)(1) that, "If the court has appointed coordinating counsel under Rule 16.1(b), experience with coordinating counsel's performance in that role may support consideration of coordinating counsel for a leadership position. . . ." It would be inherently problematic to appoint an attorney who is serving the court in a special master or ministerial capacity to leadership.

[3] These management issues could include the promotion of an outlier legal theory of the case, interfering with the self-organization that routinely takes place amongst plaintiff-side practitioners, or recommendations for the appointment of leadership that are not in the best interests of case management. *See* Judges of the Superior Court of the State of California for the County of Los Angeles Assigned to the Complex Civil Litigation Program, Comment Letter on Proposed Rule 16.1 on Multidistrict Litigation (Feb. 2, 2024), https://www.regulations.gov/comment/USC-RULES-CV-2023-0003-0032 ("This private ordering can still provide the necessary efficiencies achieved by clear lines of communication between Plaintiffs' Leadership and defendant(s). When plaintiffs' counsel organize . . . among themselves, the MDL court is relieved of the need to closely supervise . . . matters which otherwise may consume a large amount of judicial effort.").

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

Advisory Committee consider shortening the list of topics in the proposed rule to focus the transferee court's attention on only the most practical issues for consideration prior to appointment of leadership. In the alternative, if the Advisory Committee determines that it prefers a more detailed list of topics, then AAJ recommends that the transferee judge consider: (1) whether leadership needs to be appointed, and (2) if that appointment needs to be made before the meet and confer and preparation of the report.

Finally, the Committee Note should reflect the substance of the proposed rule. AAJ provides several recommendations to ensure that the Committee Note accurately reflects the scope of the rule text, including suggestions that follow its two proposed alternatives. *See infra* Part II.C.

A.    The Position of "Coordinating Counsel" Is Not Defined and Seems Unnecessary.

AAJ has deep reservations about the appointment of a coordinating counsel generally.[4] While AAJ has concerns regarding the absence of qualifications of coordinating counsel and criteria for the selection process in the text, more broadly, the proposed rule also fails to consider the unintended consequences of selecting the wrong person as coordinating counsel.[5] In some cases, the appointment of coordinating counsel could prove helpful by providing a roadmap for early management of the MDL to the transferee judge. However, in small MDLs, the appointment may be unnecessary or obsolete.[6] In some MDLs, the appointment may create unintended issues, such as additional jockeying for leadership selection and disagreements over the direction of the

---

[4] AAJ's redlines of Alternatives 1 and 2 during the informal comment period in the summer of 2022 removed "coordinating" from before "counsel" in the draft rule.

[5] No requirement exists in either the text of the rule of the Committee Note that coordinating counsel represent plaintiff side-interests or even have a stake in the litigation. This may work if the position was purely ministerial. However, with the inclusion of topics in (C)(1)-(12), at an absolute minimum, the coordinating counsel would have to work with lawyers familiar with the litigation to complete the report. Furthermore, there is no prohibition against multiple appointments of the same coordinating counsel for multiple MDLs, which would result in the rule creating a magistrate or special master provision, undermining the selection process of the JPML, which has carefully determined which judge should receive the litigation. As Jennifer Hoekstra explained in her testimony for the second public hearing:

> The coordinating counsel appointment appears duplicative of the purpose of the magistrate or special master in supporting the court. It also appears to step into the process of the JPML in appointing a judge to oversee the MDL. The JPML has already gone through the arduous process of determining where to consolidate and which judge to consolidate in front of. Why is it needed to add another layer of court appointed counsel to coordinate for the judge who has just been appointed and selected?

Submitted Testimony, *Hearing on Proposed Amendments to the Federal Rules of Civil Procedure*, Advisory Committee on Civil Rules, at 106 (Jan. 16, 2024) [hereinafter January 16th Testimony] (written submission of Jennifer Hoekstra, Aylstock, Witkin, Kreis, and Overholtz PLLC), https://www.uscourts.gov/sites/default/files/testimony_outlines_for_jan_16_final.pdf. There is also an assumption that one coordinating counsel may be sufficient when that may or may not be in the best interests of the claimants or the court (the proposed Committee Note says "Rule 16.1(b) recognizes the court may designate coordinating counsel -- perhaps more often on the plaintiff than the defendant side").

[6] *See, e.g.*, Submitted Testimony, *Hearing on Proposed Amendments to the Federal Rules of Civil Procedure*, Advisory Committee on Civil Rules, at 192 (Feb. 6, 2024) [hereinafter February 6th Testimony] (written submission of Jessica Glitz, Johnson Law Group), https://www.uscourts.gov/sites/default/files/2024-02-06_hearing_testimony_packet_final.pdf.

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

litigation before enough information about the nature and type of claims is available for evaluation by the parties. There is also a lack of clarity about how the proposed rule interacts with leadership appointments in class action under Rule 23(g), which may comprise all (or a significant part) of the claims within the MDL.[7] While the purpose of the rule is to provide direction to transferee judges with little or no MDL experience, these unintended consequences make it worth considering whether alternatives may provide the same result without the unnecessary risk or uncertainty.

In some MDLs, it may be clear early on whom should be appointed to leadership and the transferee judge could go ahead with that appointment, skipping the appointment of a coordinating counsel as an unnecessary step.[8] In other MDLs, there may be contested leadership, with competing slates of attorneys or many attorneys from different firms competing for leadership appointments. If leadership is contested, does the appointment of coordinating counsel help with litigation management? If the attorneys representing the injured plaintiffs have different approaches and divergent legal theories, then appointing one of them may not be helpful, even if the transferee judge specifies the initial report should include dissenting views.[9] In these instances, it may be better to forego the coordinating counsel appointment altogether and allow plaintiff-side counsel to self-organize or consider whether the appointment of interim leadership may be necessary before holding an initial management conference.

Further, while the appointment of coordinating counsel is optional,[10] a rule providing the option may make it more likely than not that a coordinating counsel is designated by the transferee judge in the first place. And if a coordinating counsel is appointed, there are considerations regarding this position that have not been discussed, such as whether only experienced attorneys can be appointed to the position and if so, how is the experience obtained or evaluated, and what is the impact of any experience requirements or thresholds on diversity and ensuring that attorneys

---

[7] *See* January 16th Testimony, *supra* note 5, at 180–82 (written submission of Norm Siegel, Stueve, Siegel, Hanson LLP) (detailing issues with appointment requirement of interim class counsel under Rule 23(g)). There are also concerns about how the anti-trust class actions would function within the context of the rule. *See, e.g.*, February 6th Testimony, *supra* note 6, at 134 (written submission of Kellie Lerner, Robins Kaplan).

[8] January 16th Testimony, *supra* note 5, at 156 (written submission of Lisa Ann Gorshe, Johnson Becker PLLC) ("Leadership, in the mass tort arena, is best served when there exists a continuity related to who is tasked with overall representation of plaintiffs.").

[9] *See, e.g.*, February 6th Testimony, *supra* note 6, at 25 (written submission of W. Mark Lanier) ("The lack of one clear plaintiffs' voice caused unnecessary frustration, loss of time, and expense for the parties."); January 16th Testimony, *supra* note 5, at (written submission of James Bilsborrow, Weitz & Luxenberg) (suggesting that separate reports may be required as illustrated by the dicamba herbicides MDL in which a separate report was filed by a smaller group of plaintiffs' counsel urging the court to create a separate track for antitrust claims, which ultimately was done). Bill Cash offered another perspective on reports in his February 6, 2024, testimony and further questioned how a transferee judge would be able to use a report that is fractured in this manner to make any decisions. February 6th Testimony, *supra* note 6, at 175 (written submission of William F. Cash III, Levin Papantonio Rafferty Proctor Buchanan O'Brien Barr Mougey P.A.) ("[I]n MDLs where plaintiffs are not yet organized, no one person or team is best positioned to speak for all. This may actually put defendants in the role of choosing their opponents—choosing which plaintiffs' lawyers they'd most like to deal with in preparing the report. That is not workable.").

[10] AAJ supports the flexibility provided by the proposed rule.

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

are a fair representation of the clients in the litigation.[11] Finally, how is coordinating counsel to be compensated?[12] The draft seems to assume that parties are responsible for their own costs, yet only one report is to be produced.[13]

Finally, during the February 6th hearing several members of AAJ were asked about using the term "liaison" instead as a possible substitute for "coordinating" counsel. That alternative did not receive a more positive reception. As Ashleigh Raso stated in her testimony (paraphrasing), "Liaison counsel is often a thankless job. It's the janitor of the MDL and appointing someone to do this may result in ignoring janitorial duties."[14] In response to questions, Ellen Relkin pushed back on the notion that a coordinating or liaison counsel would bring more lawyers' voices to the table than plaintiffs' self-organizing, noting that the coordinating counsel could miss someone too.[15]

In evaluating whether the appointment of coordinating counsel will benefit the management of the litigation or create additional speedbumps, the outcome is not clear, and AAJ questions whether a coordinating counsel position is truly required for an initial management conference[16] or whether other options already familiar to judges and plaintiff-side practitioners would be more beneficial to initiating the litigation. In balancing these factors, AAJ recommends removal of "coordinating counsel" because many MDLs will benefit from another structure that encourages plaintiffs to self-organize or prioritizes the appointment of leadership (or interim leadership) prior to the coordination of an initial management conference. When combined with the overall drafting issues AAJ has identified related to the rule's lack of qualifications and criteria for who should be appointed as "coordinating counsel," these fundamental concerns over the role's effectiveness clearly tip the scale in favor of removing the provision entirely.

B.   A Shortened List of Topics for Meet and Confer.

The proposed rule encourages transferee judges to hold an initial management conference to "develop a management plan for orderly pretrial activity," but it also recognizes that this

---

[11] Several plaintiff practitioners mentioned concerns with "repeat player" issues and difficulties breaking into leadership. It is imperative that the Advisory Committee not compound this issue.

[12] *See* January 16th Testimony, *supra* note 5, at 106 (written submission of Jennifer Hoekstra) (noting that costs of coordinating counsel would decrease the ultimate recovery of clients); *id.* at 36 (written submission of Alyson Oliver, Oliver Law Group PC) (noting added expense of "coordinating counsel" especially if combined with a counsel 'green' in the litigation).

[13] The Committee Note to 16.1(c) states, "This should be a single report, but it may reflect the parties' divergent views on these matters."

[14] During her testimony on February 6, 2024, Ashleigh Raso of Nigh Goldenberg Raso & Vaughn also stated that liaison counsel need not be physically located in the same state as the transferee judge to effectively serve in this capacity.

[15] If the "coordinating counsel" is someone that the court knows but who is not familiar with either the litigation or the plaintiff's bar, then it would be easy to miss someone. If the coordinating counsel is selected from a group of lawyers known to the plaintiffs, it is difficult to discern why the outcome would be different.

[16] At the hearing on January 16, 2024, there was discussion regarding whether the word "early" should replace the word "initial" in 16.1(a). AAJ is not recommending this change; its advocating for a shorter list of topics. However, should the Advisory Committee revise the proposed rule to include more than one management conference, then AAJ would recommend changing "initial" for "early" or another more accurate textual choice.

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

"ordinarily would not be the only management conference held during the MDL proceedings." *See* Committee Note to Rule 16.1(a). While AAJ agrees with the Committee that early attention to some of the matters identified in proposed 16.1(c) "may be of great value," consideration of several of these topics during an initial conference is untimely and imprudent.

The rule cannot be a substitute for training new judges or for the Manual on Complex Litigation, so what exactly is the purpose of listing all potential topics for discussion? If a rule lists multiple topics, then discussion of those listed topics will become the default even if the parties need to focus on the basic structure of the MDL early in the litigation.[17] A judge's insistence that parties submit a report that addresses every topic listed in 16.1(c) will result in a waste of time and resources for parties and the court. In MDLs where leadership or interim leadership has been appointed, it might be possible to discuss topics relating to discovery and pretrial orders at an initial conference. However, if leadership has not been appointed and an appointment is likely to be made later or is recommended in the report itself, then many topics should be deferred until after leadership is in place.[18]

As an AAJ member stated in her testimony at the second public hearing, "[T]he Draft Rule appears to try to do too much, too soon, suggesting a combined report addressing both how to decide leadership within the MDL and what leadership would then propose to do to advance the MDL."[19] Thus, AAJ proposes two drafting options to better clarify the meet and confer. For both options, AAJ recommends moving leadership's role in settlement activities from proposed 16.1(c)(1)(C) to 16.1(c)(1)(E) to better reflect the order of these leadership activities. AAJ also recommends adding the word "Management" to the title of the rule.[20] Attachment A is a redline of the text drafting options along with a revised Committee Note.

- **Option 1**: Remove "Coordinating Counsel" and Shorten List of Topics.
  AAJ's first recommended option for amending the proposed rule would remove the "coordinating counsel" from the rule and provide a shortened list of topics[21] that could be more easily agreed to and reported on by the parties early in the litigation. This option would provide a roadmap for the MDL to get established

---

[17] The AAJ seldom agrees with John Rabiej, but he notes the default point in his January 16th testimony, "…the Rule's listed matters will become the default." January 16 Testimony, *supra* note 5, at 62. Likewise, Rachel Hampton, a defense-side witness, noted at the same hearing that clerks would likely read the text literally, noting to the judge any deficiencies in a report that failed to cover all 12 topics. Transcript of Proceedings, *Hearing on Proposed Amendments to the Federal Rules of Civil Procedure*, Advisory Committee on Civil Rules, at 175 (Jan. 16, 2024) [hereinafter January 16th Transcript] (statement of Rachel Hampton, Sidley Austin LLP), https://www.uscourts.gov/sites/default/files/jan_16_hearing_transcript.pdf.

[18] For example, at this initial stage, discussions related to facilitating settlement (Rule 16.1(c)(9)) or referring matters to special masters (Rule 16.1(c)(12)) are very premature and may be inappropriate prior to appointing leadership.

[19] January 16th Testimony, *supra* note 5, at 176 (written submission of Jennifer Scullion, Seeger Weiss LLP).

[20] The Standing Committee removed "Managing" from the beginning of the rule title in June 2023. This muddied, rather than clarified, what the rule is about. AAJ recommends adding "Management" to the end of the title.

[21] Topics that are removed from the Rule could instead be included in the Committee Note as possible matters for consideration that may be designated by the court under 16.1(c) (revised to 16.1(b)).

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

without wading into issues that need to be resolved by leadership or that need additional time to thoughtfully consider.[22]

- **Option 2**: **Remove "Coordinating Counsel" and Add Leadership Appointment.** Option 2 takes the proposed change in Option 1 to remove "coordinating counsel" and replaces it with an option to appoint leadership, signaling that the appointment of leadership can be made first. With this change, some topics listed under 16.1(c)(1) regarding the appointment of leadership would be moved to 16.1(b) and would no longer be listed as separate topics. The topics under (c) could still be shortened as proposed in Option 1, but there is less urgency to shorten the list if leadership is already appointed. There would be no changes to paragraph (d).[23]

AAJ believes that the strongest and most workable version of the rule would omit the coordinating counsel role (Option 1). However, should the Advisory Committee decide to retain the coordinating counsel, AAJ urges amendment of the Committee Note to provide guidance to the transferee judge to ensure that an appropriate attorney is selected for the position. In that case—and in the spirit of flexibility—AAJ suggests that the Committee edit the note to 16.1(b) with the following language:

> **Rule 16.1(b).** Rule 16.1(b) recognizes the court may designate coordinating counsel – perhaps more often on the plaintiff than the defendant side – to ensure effective and coordinated discussion and to provide an informative report for the court to use during the initial MDL management conference.
>
> While there is no requirement that the court designate coordinating counsel, the court should consider whether such a designation could facilitate the organization and management of the action at the initial MDL management conference. ~~The court may designate coordinating counsel to assist the court before appointing leadership counsel. In some MDL proceedings, counsel may be able to organize themselves prior to the initial MDL management conference such that the designation of coordinating counsel may not be necessary.~~
>
> Careful consideration should be given to the appointment of coordinating counsel on the plaintiff's side, particularly when cases from multiple state and federal jurisdictions are involved. The court should choose a plaintiff-side attorney who is already representing plaintiffs in the litigation and has a stake

---

[22] AAJ rarely agrees with Lawyers for Civil Justice ("LCJ"), but in this instance, AAJ wholly endorses their recommendation that topics 16.1(c)(9) (whether the court should consider measures to facilitate settlement) and 16.1(c)(12) (whether matters should be referred to a magistrate judge or master) should be removed from the list.

[23] AAJ has reviewed drafting suggestions submitted to the Advisory Committee by AAJ members. While AAJ agrees with many of these proposals in principle, we opted to offer this version for the Advisory Committee's consideration because it is consistent with the framework devised by the drafters and does not unduly expand the length or scope of the proposed rule.

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

in the outcome. The appointment of a coordinating counsel on the defense side is not usually required and should appointment be advisable, there are only one or two lead defense attorneys involved automatically winnowing the selection for defendants. While the coordinating counsel on the plaintiff side may be later considered for a leadership role, the designation of coordinating counsel does not necessarily result in leadership designation. If there are multiple attorneys competing for leadership appointment, the court should carefully consider who can best represent the plaintiffs' interests and manage the litigation. One option is for the court to revisit leadership appointment after a specific time-period to ensure that appointed leadership is serving their assigned function.

While multiple paragraphs could be written regarding the qualifications of coordinating counsel, drafting such a Committee Note easily would result in an overly long Committee Note and may cause confusion about whether there are substantive differences between the qualifications for coordinating counsel and leadership. Thus, AAJ urges the Committee to choose a drafting revision that removes the coordinating counsel from the rule. The testimony from the plaintiff's attorneys from the public hearings indicates that the position is not necessary and in most MDLs, the plaintiffs self-organize.[24] The transferee judge should either have the plaintiffs self-organize (or appoint interim leadership) for the initial conference and prepare a report that includes topics (1), (2), (3), (6), (8), (10), and (11). Alternatively, leadership could be appointed, and all topics could be included in the report, except settlement, which is premature for an initial conference.

C.  Revisions to the Committee Note.

With a new rule, there is an expectation that the Committee Note will be substantial to provide guidance and clarity. AAJ proposes the following global recommendations to improve the Committee Note, including:

- Removing references to "coordinating counsel" from the Committee Note;

- Moving the reference to 16.1(c)(1)(C) on leadership role in settlement activities to 16.1(c)(1)(E) to align with proposed renumbered text and renumbering other paragraphs accordingly;

- Removing portions of the Committee Note related to 16.1(c)(4), (5), (7), (9), and (12), as they are too premature to be included in a one-size-fits-all list of recommended topics for discussion at this early stage of litigation.

---

[24] *See, e.g.*, January 16th Transcript, *supra* note 17, at 29 (statement of Mark Chalos); February 6th Testimony, *supra* note 6, at 74 (written submission of Jennie Lee Anderson, Andrus Anderson LLP); *id.* at 16 (written submission of Lexi Hazam, Lieff Cabraser Heimann & Bernstein); *id.* at 89 (written submission of Ashleigh Raso, Nigh Goldenberg Raso & Vaughn); *id.* at 197 (written submission of Jessica Glitz, Johnson Law Group); *id.* at 202 (written submissions of Amber L. Schubert, Schubert Jonckheer & Kolbe, LLP).

- Including Committee Note language that would support Option 2, *supra*, in which leadership counsel or interim counsel is appointed before the initial management conference and report;

- Moving the reference to 16.1(c)(1)(C) on leadership role in settlement activities to 16.1(c)(1)(E) to align with proposed renumbered text and renumbering other paragraphs accordingly; and

- Removing a few sentences that are either too tangential to the rule text or too specific in application to provide guidance for implementing the rule's text.

AAJ has included a redline of the Committee Note as Attachment A to this comment for ease of reference.

## III.  Extreme Proposals from the Defense Bar Must Be Rejected.

In an effort to expand the proposed Rule 16.1 beyond the scope of an initial management conference accompanied by a report to the transferee judge, the defense bar is pushing to include a provision to address "claim insufficiency" and standing issues.[25] DRI's comment even quotes from a memorandum that AAJ submitted to the Advisory Committee back in 2018, which DRI characterizes as AAJ's acknowledgment that cases are sometimes filed prematurely.[26] This is an inaccurate oversimplification of AAJ's statement then, and a mischaracterization of AAJ's position now.

### A.  The Committee Must Avoid Going Backwards.

The Advisory Committee has already considered and rejected the requirement of plaintiff fact sheets at the outset of the MDL. While they may be helpful with certain MDLs, they are not universally helpful, and the Advisory Committee has strenuously avoided the creation of a one-size-fits-all-rule. AAJ urges the continuation of this approach.

LCJ's proposed amendment to 16.1(c)(4) regarding "claim sufficiency" is a step backwards. First, it is limited in its perspective and written to address product liability claims, which are only one part of the MDL docket. Second, the language added by LCJ's current proposal is similar to language sought by that organization earlier regarding mandatory initial disclosures and which has already been rejected by the Advisory Committee.[27] Moreover, the proposed LCJ language is not about distinguishing discovery from an exchange of information regarding claims

---

[25] *See, e.g.*, Laws. for Civ. Just., Comment Letter on Proposed Rule 16.1 on Multidistrict Litigation (Sept. 18, 2023), https://www.regulations.gov/comment/USC-RULES-CV-2023-0003-0004; DRI Ctr. for L. & Pub. Pol'y, Comment Letter on Proposed Rule 16.1 on Multidistrict Litigation (Oct. 11, 2023), https://www.regulations.gov/comment/USC-RULES-CV-2023-0003-0010.

[26] DRI, *supra* note 25, at 6 (quoting Memorandum from the AAJ MDL Working Group to the Advisory Committee on Civil Rules (May 25, 2018) [hereinafter "2018 Memorandum"], *reprinted in Advisory Committee on Civil Rules Agenda Book* 181 (Nov. 1, 2018), https://www.uscourts.gov/rules-policies/archives/agenda-books/advisory-committee-rules-civil-procedure-november-2018)).

[27] *See* Laws. for Civ. Just., Comment Letter on Proposed Rule 16.1 on Multidistrict Litigation (Sept. 9, 2020), https://www.uscourts.gov/sites/default/files/20-cv-aa_suggestion_from_lawyers_for_civil_justice_-_mdls_0.pdf.

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

because the rule text provides that a proposed discovery plan is a topic for consideration under 16.1(c)(6). Finally, and most importantly, the issue of "claim sufficiency" is highly contentious, appearing frequently in so-called tort reform proposals pushed by the defense bar.[28] AAJ urges the Advisory Committee to reject "claim sufficiency" as language that is too controversial to lead to positive and productive engagement amongst defense- and plaintiff-side MDL practitioners at an initial management conference. The rule should set the framework for managing the entire MDL, for gathering cases for consolidation, and determining the types of claims that have been consolidated. Because consolidation can occur rapidly while proof of product use takes time, it is impractical—if not impossible—to require proof of product use up front.

## B. Not All Problems Can Be Solved by a Rule.

In our 2018 memorandum, AAJ suggested the creation of an inactive docket to address claims that require additional time to be verified, including cases that may have been filed to preserve a client's claim before the applicable state statute of limitations expired.[29] With an established inactive docket in place, the entire litigation would not be hamstringed by claims that require additional time to verify specific product use, exposure, or implantation; to obtain official medical records, or locate other documentation to confirm medical diagnosis and treatment; or sometimes even to find a client who may have moved or changed phone numbers.[30] The active docket could continue with traditional pre-trial discovery, while cases on the inactive docket would remain there until more information becomes available, at which point decisions can be made about what to do with each case (i.e., transfer to the active docket, transfer or remand to another court because the case is outside the scope of the MDL transfer order, or voluntary dismissal).

As AAJ stated in its 2018 memorandum:

"These early-filed claims not only slow down the litigation and result in delays for case resolution, but create a false impression that all claims in the MDL have certain weaknesses or are underdeveloped. They distract the transferee court from its primary focus and attention on the common discovery issues, generally relating to the defendant's conduct, which advance the litigation as a whole."[31]

---

[28] In March 2017, former Judiciary Committee Chairman Bob Goodlatte introduced the Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017, H.R. 985, 115th Cong. (1st Sess. 2017). which The Act contained substantial provisions on MDLs, including a claim-sufficiency requirement. H.R. 985 § 105 ("[C]ounsel for a plaintiff asserting a claim seeking redress for personal injury whose civil action is assigned to or directly filed in the proceedings shall make a submission sufficient to demonstrate that there is evidentiary support (including but not limited to medical records) for the factual contentions in plaintiff's complaint regarding the alleged injury, the exposure to the risk that allegedly caused the injury, and the alleged cause of the injury.").

[29] 2018 Memorandum, *supra* note 26, at 181.

[30] Low-income clients tend to have less stable housing, resulting in more frequent moves. *See* Seungbeom Kang, *Severe and Persistent Housing Instability: Examining Low-Income Households' Residential Mobility Trajectories in the United States*, 38(9) HOUS. STUD. 1615, 1616 (2023), https://www.tandfonline.com/doi/epdf/10.1080/02673037.2021.1982871?needAccess=true ("[L]ow-income households' residential moves tend to occur frequently and involuntarily."). These clients may also more frequently rely on pre-paid or "burner" phones rather than signing a longer-term contract or agreeing to the credit check required by major cell phone carriers.

[31] 2018 Memorandum, *supra* note 26.

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

Many issues have been before the Advisory Committee since that early discussion of topics, and AAJ urges the Advisory Committee not to be distracted by the defense bar's focus on the premature claims issue.[32] Which claims belong in the MDL and which belong elsewhere will get sorted out, but it would be inappropriate for "coordinating counsel" to do so. Moreover, the sorting and prioritization of claims will almost always occur after the appointment of leadership, who decide which fact patterns and theories of liability belong in the MDL. The defense bar wants to have it both ways: they want to strenuously object to the inclusion of claims in the MDL unless they perfectly fit the claims criteria, yet they also strenuously object to the remand of claims inappropriately removed from federal court that are outside the scope of the MDL.[33]

Finally, it is important to make rules-based decisions based on data, and not on one extraordinarily large MDL that is causing a mischaracterization of the MDL litigation landscape. As Jennifer Hoekstra explained in both her oral and written testimony before the Advisory Committee on January 16, 2024, the 300,000 claims in the 3M Products Liability MDL (No. 2885)—which reportedly comprises more than 40% of the federal docket[34]—are in the process of being settled and over 270,000 of those have qualified for settlement[35] by identifying use of the product and injury (and these veterans who were injured during service to their country should be compensated for their injuries). The remaining claims are still being investigated, but Hoekstra noted that some veterans were filed twice because they had reached out to more than one lawyer, but the system is in place to prevent double recovery. These findings are consistent with the Bloomberg data submitted by Mark Lanier, which concluded that 2022 was the eighth straight year with a decline in MDL cases yet "[p]ercentage-wise, with so many types of MDLs in decline over the years, products liability cases have assumed a larger and larger share of the MDL docket and, due primarily to 3M's combat arms earplugs case, of the federal docket overall."[36]

## IV.  Conclusion.

AAJ thanks the Advisory Committee for its extremely thorough and diligent consideration of MDLs and proposed Rule 16.1. An initial management conference should help the parties and court plan for the litigation. Because this is a new rule, AAJ makes several recommendations based on efficiency in process and clarity in drafting to ensure that transferee judges can successfully implement the proposed rule should it be approved. First, remove the position of "coordinating

---

[32] This issue can continue to be debated at bench-bar conferences, but since there is not even agreement on the scope or cause of the issue, it cannot be addressed with a rules-based solution.

[33] AAJ commented during informal rulemaking on this rule about the inclusion of remand as a topic for discussion. *See Multidistrict Litigation Subcommittee Report*, *in Advisory Committee on Civil Rules Agenda Book* 183 (Oct 12, 2022), https://www.uscourts.gov/rules-policies/archives/agenda-books/advisory-committee-civil-rules-october-2022.

[34] February 6th Testimony, *supra* note 6, at 28 (written submission of W. Mark Lanier).

[35] January 16th Testimony, *supra* note 5, at 103–04 (written submission of Jennifer Hoekstra). If no additional claims qualify, this is a hefty 90% recovery rate. As Mark Lanier commented in this testimony for the February 6, 2024, hearing, "the solution to reduce the federal MDL caseload is not for plaintiffs' counsel to help fewer injured people; it is for corporations to injure fewer people, and to stop the procedural gamesmanship of the MDL system that keeps MDLs running longer." February 6th Testimony, *supra* note 6, at 28 (written submission of W. Mark Lanier).

[36] Eleanor Tyler & Robert Combs, Bloomberg Law, *2023 Litigation Statistics Series: Multidistrict Litigation* 16 (Sept. 2023), *in* February 6th Testimony, *supra* note 6, at 49 (Exhibit A to testimony of W. Mark Lanier).

counsel" from the proposed rule. Creating a new position without any definition or parameters when combined with substantial responsibility best suited to leadership is more likely to lead to avoidable issues. Second, consider limiting the topics for discussion to those directly related to the initial management of the MDL. Finally, ensure that the Committee Note follows the text of the rule. Please direct any questions regarding these comments to Susan Steinman, Senior Director of Policy & Senior Counsel, at susan.steinman@justice.org.

Respectfully submitted,

Sean Domnick
President
American Association for Justice

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

# ATTACHMENT



**AAJ's Redline of Proposed Rule 16.1 and Committee Note**

---

**Rule 16.1. Multidistrict Litigation Management [Conference]**[1]

(a)    **Initial MDL Management Conference.** After the Judicial Panel on Multidistrict Litigation orders the transfer of actions, the transferee court should schedule an initial management conference to develop a management plan for orderly pretrial activity in the MDL proceedings.

(b)    ~~**Designation Of Coordinating Counsel For The Conference.** The transferee court may designate coordinating counsel to:~~

    (1)  ~~assist the court with the conference; and~~

    (2)  ~~work with plaintiffs or with defendants to prepare for the conference and prepare any report ordered under Rule 16.1(c).~~

> Option 1: Remove "coordinating counsel" from the rule and redesignate 16.1(c) as 16.1(b) *infra*.

(b)    **Designation of Leadership Counsel.** The transferee court may consider whether leadership counsel or interim leadership counsel should be appointed, and if so, the procedure for appointment and whether such appointment should occur before or after the initial management conference.

> Option 2: Replace the "coordinating counsel" in 16.1(b) with leadership or interim leadership counsel in 16.1(b).
>
> (Unlike Option 1, Option 2 would maintain the original numbering.)

(b)(c)    **Preparing A Report For Initial MDL Management Conference.** The transferee court should order the parties to meet and prepare a report to be submitted to the court before the conference begins. The report must address any matter designated by the court, which may include any matter addressed in the list below or in Rule 16. The report may also address any other matter the parties wish to bring to the court's attention.

    (1)  whether leadership counsel should be appointed, and if so:

        (A)  the procedure for selecting them and whether the appointment should be reviewed periodically during the MDL proceedings;

---

[1] At its June 2023 meeting, the Standing Committee removed "Managing" from the title of the Rule, which mistakenly gives the impression that the Rule is about more than an MDL Management Conference. It would be clearer to call it "Multidistrict Litigation Management" or "Multidistrict Litigation Management Conference."

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 16 of 25
PageID: 189357
AAJ's Redline of Proposed Rule 16.1 and Committee Note

     **(B)**    the structure of leadership counsel, including their responsibilities and authority in conducting pretrial activities;

     ~~**(C)**    their role in settlement activities;~~

     **(C)**~~**(D)**~~    proposed methods for them to communicate with and report regularly to the court and nonleadership counsel;

     **(D)**~~**(E)**~~    any limits on activity by nonleadership counsel~~; and~~

     **(E)**    their role in settlement activities; and

     **(F)**    whether, and if so when, to establish a means for compensating leadership counsel;

**(2)**    identifying any previously entered scheduling or other orders and stating whether they should be vacated or modified;

**(3)**    identifying the principal factual and legal issues likely to be presented in the MDL proceedings;

**~~(4)~~**    ~~how and when the parties will exchange information about the factual bases for their claims and defenses;[2]~~

**~~(5)~~**    ~~whether consolidated pleadings should be prepared to account for multiple actions included in the MDL proceedings;~~

**(4)**~~**(6)**~~    a proposed plan for discovery, including methods to handle it efficiently;[3]

**~~(7)~~**    ~~any likely pretrial motions and a plan for addressing them;~~

**(5)**~~**(8)**~~    a schedule for additional management conferences with the court;

> Consideration of topics 16.1(c)(4), (5), (7), (9), and (12) during the initial management conference is untimely and imprudent unless leadership has been appointed.

---

[2] Should the Advisory Committee opt to keep (c)(4), AAJ recommends the following edit: "identifying how and when the parties will exchange early information about the factual bases for their claims and defenses" providing symmetry with topics (3) and (4), which both start with "identifying" and also providing additional information on what information is to be exchanged.

[3] Some plaintiff-side witnesses have recommended deleting (4) and keeping (6). The recommendation stems from not understanding what (4)'s "exchange of information" means while a proposed plan for discovery in (6) is clear and can include references to fact sheets or other methods for exchanging information in the Committee Note. As Lexi Hazam stated (paraphrasing) in response to questions during the February 6th hearing, "plaintiff facts sheets are part of the discovery process."

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 17 of 25
PageID: 189358
AAJ's Redline of Proposed Rule 16.1 and Committee Note

**(9)**  ~~whether the court should consider measures to facilitate~~
~~settlement of some or all actions before the court,~~
~~including measures identified in Rule 16(c)(2)(I);~~

**(6)(10)**  how to manage the filing of new actions in the MDL
proceedings;

**(7)(11)**  whether related actions have been filed or are expected to
be filed in other courts, and whether to consider possible
methods for coordinating with them; and

**(12)**  ~~whether matters should be referred to a magistrate judge~~
~~or a master.~~

**(c)(d)**  **Initial MDL Management Order.** After the conference, the
court should enter an initial MDL management order
addressing the matters designated under Rule 16.1~~(c)~~(b)---and
any other matters in the court's discretion. This order controls
the course of the MDL proceedings until the court modifies it.

> As with 16.1(b),
> Option 1 would
> redesignate 16.1(d)
> as 16.1(c).

## COMMITTEE NOTE

The Multidistrict Litigation Act, 28 U.S.C. § 1407, was adopted in
1968. It empowers the Judicial Panel on Multidistrict Litigation to
transfer one or more actions for coordinated or consolidated pretrial
proceedings, to promote the just and efficient conduct of such actions.
The number of civil actions subject to transfer orders from the Panel
has increased significantly since the statute was enacted. ~~In recent~~
~~years, these actions have accounted for a substantial portion of the~~
~~federal civil docket.~~ There previously was no reference to multidistrict
litigation in the Civil Rules and, thus, the addition of Rule 16.1 is
designed to provide a framework for the initial management of MDL
proceedings.

> AAJ recommends
> removing this
> sentence, as it
> unnecessarily
> contributes to
> controversy over an
> accurate depiction of
> the federal docket.

Not all MDL proceedings present the type of management
challenges this rule addresses. On the other hand, other multiparty
litigation that did not result from a Judicial Panel transfer order may
present similar management challenges. For example, multiple actions
in a single district (sometimes called related cases and assigned by local
rule to a single judge) may exhibit characteristics similar to MDL
proceedings. In such situations, courts may find it useful to employ
procedures similar to those Rule 16.1 identifies for MDL proceedings
in their handling of those multiparty proceedings. In both MDL
proceedings and other multiparty litigation, the Manual for Complex
Litigation also may be a source of guidance.

Case 3:16-md-02738-MAS-RLS     Document 32985-2     Filed 07/19/24     Page 18 of 25
PageID: 189359
**AAJ's Redline of Proposed Rule 16.1 and Committee Note**

**Rule 16.1(a).** Rule 16.1(a) recognizes that the transferee judge regularly schedules an initial MDL management conference soon after the Judicial Panel transfer occurs to develop a management plan for the MDL proceedings. That initial MDL management conference ordinarily would not be the only management conference held during the MDL proceedings. Although holding an initial MDL management conference in MDL proceedings is not mandatory under Rule 16.1(a), early attention to the matters identified in Rule 16.1~~(c)~~(b) may be of great value to the transferee judge and the parties.

~~**Rule 16.1(b).** Rule 16.1(b) recognizes the court may designate coordinating counsel — perhaps more often on the plaintiff than the defendant side — to ensure effective and coordinated discussion and to provide an informative report for the court to use during the initial MDL management conference.~~

~~While there is no requirement that the court designate coordinating counsel, the court should consider whether such a designation could facilitate the organization and management of the action at the initial MDL management conference. The court may designate coordinating counsel to assist the court before appointing leadership counsel. In some MDL proceedings, counsel may be able to organize themselves prior to the initial MDL management conference such that the designation of coordinating counsel may not be necessary.~~

[**Rule 16.1(b).** Rule 16.1(b) recognizes that it may be helpful to appoint leadership counsel or interim leadership to represent the plaintiff side during the initial management conference. While appointment of leadership counsel is not universally needed in MDL proceedings, it may be especially helpful in larger MDLs. Special consideration to leadership appointments must be made to MDLs that include exclusively or partially class actions moved into the MDL in which interim leadership for the class has been appointed under Rule 23(g) prior to transfer to ensure that class members retain adequate representation.[4]

In selecting leadership counsel, courts have considered the nature of the actions and parties, the qualifications of each individual applicant, litigation needs, access to resources, the different skills and experience each lawyer will bring to the role, and how the lawyers will complement one another and work collectively. The transferee judge has a responsibility in the selection process to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent plaintiffs, keeping in mind

---

AAJ's Option 1 would remove "coordinating counsel" from the text of the rule, and thus remove this portion from the Committee Note.

Under Option 1, the substance of the draft note to proposed 16.1(b) would be moved into the list of topics to consider. *See infra.*

---

If the "coordinating counsel" position in 16.1(b) is replaced with the permissive appointment of leadership or interim leadership counsel per Option 2, then AAJ proposes adopting Committee Note language along these lines.

---

[4] While there may be other ways to draft a reference to Rule 23(g), the testimony of Norman Siegel at the January 16, 2024, hearing detailed the concerns of the intersection of the proposed Rule 16.1 with the appointment of interim class counsel under Rule 23(g).

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 19 of 25
PageID: 189360
AAJ's Redline of Proposed Rule 16.1 and Committee Note

the benefits of different experiences, skill, knowledge, geographical distributions, and backgrounds. Courts have selected leadership counsel through combinations of formal applications, interviews, and recommendations from other counsel and judges who have experience with MDL proceedings.

Early appointment of leadership or interim leadership is one option to consider. The transferee judge can also wait to review recommendations made by the parties in their report before deciding whether to appoint leadership. In these instances, the transferee judge would allow parties to self-select their own leadership to represent each side's interests during an initial management conference. While leadership may be more necessary to appoint on the plaintiff side than the defense side given the number of counsel involved, self-selection is a frequently used plaintiff-side tool for initial communication.]

> The text in this paragraph is largely reordered. These first paragraphs assume that the "coordinating counsel" position has been removed from the rule.
>
> If Option 2 is selected, the numbering of these paragraphs would remain the same.

**Rule 16.1(c)(b).** The court ordinarily should order the parties to meet and provide a single report to the court about the matters designated in the court's Rule 16.1(c)(b) order prior to the initial MDL management conference. The court may select which matters listed in Rule 16.1 or Rule 16 should be included in the report submitted to the court, and may also include any other matter, whether or not listed in those rules. The report may reflect the parties' divergent views on these matters. ~~The court may select which matters listed in Rule 16.1(c) or Rule 16 should be included in the report submitted to the court, and may also include any other matter, whether or not listed in those rules.~~

Rules 16.1(c)(b) and 16 provide a series of prompts for the court and do not constitute a mandatory checklist for the transferee judge to follow. Experience has shown, however, that the matters identified in Rule 16.1(c)(b)(1)-(7~~12~~) are often important to the management of MDL proceedings. In addition to the matters the court has directed counsel to address, the parties may choose to discuss and report about other matters that they believe the transferee judge should address at the initial MDL management conference.

> Option 1 redesignates 16.1(c) as 16.1(b) in the rule text and relevant portions of the Committee Note.

**Rule 16.1(c)(b)(1).** Appointment of leadership counsel is not universally needed in MDL proceedings. But, to manage the MDL proceedings, the court may decide to appoint leadership counsel. This provision calls attention to a number of topics the court might consider if appointment of leadership counsel seems warranted.

The first is the procedure for selecting such leadership counsel, addressed in subparagraph (A). There is no single method for the selection of leadership counsel that is best for all MDL proceedings. If the judge has not already done so and leadership counsel is recommended by the plaintiff-side, that recommendation should be included in the report. [The transferee judge has a responsibility in the

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 20 of 25
PageID: 189361
AAJ's Redline of Proposed Rule 16.1 and Committee Note

selection process to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent plaintiffs, keeping in mind the benefits of different experiences, skill, knowledge, geographical distributions, and backgrounds. Courts have considered the nature of the actions and parties, the qualifications of each individual applicant, litigation needs, access to resources, the different skills and experience each lawyer will bring to the role, and how the lawyers will complement one another and work collectively.]

| | Under Option 2, the bracketed language can be found in the note to 16.1(b) *supra*. |

~~MDL proceedings do not have the same commonality requirements as class actions, so substantially different categories of claims or parties may be included in the same MDL proceeding and leadership may be comprised of attorneys who represent parties asserting a range of claims in the MDL proceeding. For example, in some MDL proceedings there may be claims by individuals who suffered injuries, and also claims by third-party payors who paid for medical treatment. The court may sometimes need to take these differences into account in making leadership appointments.~~

| | This paragraph does not accurately reflect the MDL docket or plaintiff-side practitioners' experiences. Indeed, some MDLs are exclusively made up of class actions. |

[Courts have selected leadership counsel through combinations of formal applications, interviews, and recommendations from other counsel and judges who have experience with MDL proceedings.] ~~If the court has appointed coordinating counsel under Rule 16.1(b), experience with coordinating counsel's performance in that role may support consideration of coordinating counsel for a leadership position, but appointment under Rule 16(b) is primarily focused on coordination of the Rule 16.1(c) meeting and preparation of the resulting report to the court for use at the initial MDL management conference under Rule 16.1(a).~~

| | Under Option 1, this bracketed sentence stays here.<br><br>Under Option 2, it is moved to the note to 16.1(b) *supra*. |

The rule also calls for a report to the court on whether appointment to leadership should be reviewed periodically. Periodic review can be an important method for the court to manage the MDL proceeding.

In some MDL proceedings it may be important that leadership counsel be organized into committees with specific duties and responsibilities. Subparagraph (B) of the rule therefore prompts counsel to provide the court with specifics on the leadership structure that should be employed.

~~Subparagraph (C) recognizes that, in addition to managing pretrial proceedings, another important role for leadership counsel in some MDL proceedings is to facilitate possible settlement. Even in large MDL proceedings, the question whether the parties choose to settle a claim is just that — a decision to be made by those particular parties. Nevertheless, leadership counsel ordinarily play a key role in communicating with opposing counsel and the court about settlement~~

| | This paragraph is moved and labeled "Subparagraph (E)" *infra* in accordance with recommended changes to the text of Rule 16.1(b)(1). |

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 21 of 25
PageID: 189362
AAJ's Redline of Proposed Rule 16.1 and Committee Note

~~and facilitating discussions about resolution. It is often important that the court be regularly apprised of developments regarding potential settlement of some or all actions in the MDL proceeding. In its supervision of leadership counsel, the court should make every effort to ensure that leadership counsel's participation in any settlement process is appropriate.~~

One of the important tasks of leadership counsel is to communicate with the court and with nonleadership counsel as proceedings unfold. Subparagraph (C)~~(D)~~ directs the parties to report how leadership counsel will communicate with the court and nonleadership counsel. In some instances, the court or leadership counsel have created websites that permit non-leadership counsel to monitor the MDL proceedings, and sometimes online access to court hearings provides a method for monitoring the proceedings.

Another responsibility of leadership counsel is to organize the MDL proceedings in accord with the court's management order under Rule 16.1(d). In some MDLs, there may be tension between the approach that leadership counsel takes in handling pretrial matters and the preferences of individual parties and nonleadership counsel. As subparagraph (D)~~(E)~~ recognizes, it may be necessary for the court to give priority to leadership counsel's pretrial plans when they conflict with initiatives sought by nonleadership counsel. The court should, however, ensure that non-leadership counsel have suitable opportunities to express their views to the court, and take care not to interfere with the responsibilities nonleadership counsel owe their clients.

Subparagraph (E) recognizes that, in addition to managing pretrial proceedings, another important role for leadership counsel in some MDL proceedings is to facilitate possible settlement. Even in large MDL proceedings, the question whether the parties choose to settle a claim is just that – a decision to be made by those particular parties. Nevertheless, leadership counsel ordinarily play a key role in communicating with opposing counsel and the court about settlement and facilitating discussions about resolution. It is often important that the court be regularly apprised of developments regarding potential settlement of some or all actions in the MDL proceeding. In its supervision of leadership counsel, the court should make every effort to ensure that leadership counsel's participation in any settlement process is appropriate.

> Previously labeled "Subparagraph (C)." *See supra*.

Finally, subparagraph (F) addresses whether and when to establish a means to compensate leadership counsel for their added responsibilities. Courts have entered orders pursuant to the common benefit doctrine establishing specific protocols for common benefit work and expenses. But it may be best to defer entering a specific order

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 22 of 25
PageID: 189363
AAJ's Redline of Proposed Rule 16.1 and Committee Note

until well into the proceedings, when the court is more familiar with the proceedings.

**Rule 16.1(c)(b)(2).** When multiple actions are transferred to a single district pursuant to 28 U.S.C. § 1407, those actions may have reached different procedural stages in the district courts from which cases were transferred ("transferor district courts"). In some, Rule 26(f) conferences may have occurred and Rule 16(b) scheduling orders may have been entered. Those scheduling orders are likely to vary. Managing the centralized MDL proceedings in a consistent manner may warrant vacating or modifying scheduling orders or other orders entered in the transferor district courts, as well as any scheduling orders previously entered by the transferee judge.

**Rule 16.1(c)(b)(3).** Orderly and efficient pretrial activity in MDL proceedings can be facilitated by early identification of the principal factual and legal issues likely to be presented. Depending on the issues presented, the court may conclude that certain factual issues should be pursued through early discovery, and certain legal issues should be addressed through early motion practice.

~~**Rule 16.1(c)(4).** Experience has shown that in certain MDL proceedings an exchange of information about the factual bases for claims and defenses can facilitate efficient management. Some courts have utilized "fact sheets" or a "census" as methods to take a survey of the claims and defenses presented, largely as a management method for planning and organizing the proceedings.~~

These paragraphs are moved to (c)(6) *infra*.

~~The level of detail called for by such methods should be carefully considered to meet the purpose to be served and avoid undue burdens. Whether early exchanges should occur may depend on a number of factors, including the types of cases before the court.~~ [~~And the timing of these exchanges may depend on other factors, such as whether motions to dismiss or other early matters might render the effort needed to exchange information unwarranted. Other factors might include whether there are legal issues that should be addressed (e.g., general causation or preemption) and the number of plaintiffs in the MDL proceeding.~~]

~~**Rule 16.1(c)(5).** For case management purposes, some courts have required consolidated pleadings, such as master complaints and answers in addition to short form complaints. Such consolidated pleadings may be useful for determining the scope of discovery and may also be employed in connection with pretrial motions, such as motions under Rule 12 or Rule 56. The relationship between the consolidated pleadings and individual pleadings filed in or transferred to the MDL proceeding depends on the purpose of the consolidated pleadings in the MDL proceedings. Decisions regarding whether to use~~

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 23 of 25
PageID: 189364
AAJ's Redline of Proposed Rule 16.1 and Committee Note

~~master pleadings can have significant implications in MDL proceedings, as the Supreme Court noted in *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 413 n.3 (2015).~~

**Rule 16.1(c)(6)(b)(4).** A major task for the MDL transferee judge is to supervise discovery in an efficient manner. The principal issues in the MDL proceedings may help guide the discovery plan and avoid inefficiencies and unnecessary duplication~~.~~

Experience has shown that in certain MDL proceedings an early exchange of information about the factual bases for claims and defenses can facilitate efficient management. Some courts have utilized "fact sheets" or a "census" as methods to take a survey of the claims and defenses presented, largely as a management method for planning and organizing the proceedings. The timing of these exchanges may depend on other factors, such as whether motions to dismiss or other early matters might render the effort needed to exchange information unwarranted. Other factors might include whether there are legal issues that should be addressed (e.g., general causation or preemption) and the number of plaintiffs in the MDL proceeding.

> ← This paragraph contains text moved from (c)(4) *supra*.

~~**Rule 16.1(c)(7).** Early attention to likely pretrial motions can be important to facilitate progress and efficiently manage the MDL proceedings. The manner and timing in which certain legal and factual issues are to be addressed by the court can be important in determining the most efficient method for discovery.~~

**Rule 16.1(c)(8)(b)(5).** The Rule 16.1(a) conference is the initial MDL management conference. Although there is no requirement that there be further management conferences, courts generally conduct management conferences throughout the duration of the MDL proceedings to effectively manage the litigation and promote clear, orderly, and open channels of communication between the parties and the court on a regular basis.

~~**Rule 16.1(c)(9).** Whether or not the court has not appointed leadership counsel, it may be that judicial assistance could facilitate the settlement of some or all actions before the transferee judge. Ultimately, the question whether parties reach a settlement is just that — a decision to be made by the parties. But as recognized in Rule 16(a)(5) and 16(c)(2)(I), the court may assist the parties in settlement efforts. In MDL proceedings, in addition to mediation and other dispute resolution alternatives, the court's use of a magistrate judge or a master, focused discovery orders, timely adjudication of principal legal issues, selection of representative bellwether trials, and coordination with state courts may facilitate settlement.~~

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

Case 3:16-md-02738-MAS-RLS    Document 32985-2    Filed 07/19/24    Page 24 of 25
PageID: 189365
AAJ's Redline of Proposed Rule 16.1 and Committee Note

**Rule 16.1(c)(10)(b)(6).** Actions that are filed in or removed to federal court after the Judicial Panel has created the MDL proceedings are treated as "tagalong" actions and transferred from the district where they were filed to the transferee court.

When large numbers of tagalong actions are anticipated, some parties have stipulated to "direct filing" orders entered by the court to provide a method to avoid the transferee judge receiving numerous cases through transfer rather than direct filing. If a direct filing order is entered, it is important to address matters that can arise later, such as properly handling any jurisdictional or venue issues that might be presented, identifying the appropriate transferor district court for transfer at the end of the pretrial phase, how time limits such as statutes of limitations should be handled, and how choice of law issues should be addressed.

**Rule 16.1(c)(11)(b)(7).** On occasion there are actions in other courts that are related to the MDL proceedings. Indeed, a number of state court systems (e.g., California and New Jersey) have mechanisms like § 1407 to aggregate separate actions in their courts. In addition, it may sometimes happen that a party to an MDL proceeding may become a party to another action that presents issues related to or bearing on issues in the MDL proceeding.

The existence of such actions can have important consequences for the management of the MDL proceedings. For example, avoiding overlapping discovery is often important. If the court is considering adopting a common benefit fund order, consideration of the relative importance of the various proceedings may be important to ensure a fair arrangement. It is important that the MDL transferee judge be aware of whether such proceedings in other courts have been filed or are anticipated.

**Rule 16.1(c)(12).** MDL transferee judges may refer matters to a magistrate judge or a master to expedite the pretrial process or to play a part in settlement negotiations. It can be valuable for the court to know the parties' positions about the possible appointment of a master before considering whether such an appointment should be made. Rule 53 prescribes procedures for appointment of a master.

> The appointment of a magistrate judge or master when still trying to determine the scope of the MDL is premature.

**Rule 16.1(c)(d).** Effective and efficient management of MDL proceedings benefits from a comprehensive management order. A management order need not address all matters designated under Rule 16.1(c) if the court determines the matters are not significant to the MDL proceedings or would better be addressed at a subsequent conference. There is no requirement under Rule 16.1 that the court set specific time limits or other scheduling provisions as in ordinary litigation under Rule 16(b)(3)(A). Because active judicial management

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500

Case 3:16-md-02738-MAS-RLS     Document 32985-2     Filed 07/19/24     Page 25 of 25
PageID: 189366
AAJ's Redline of Proposed Rule 16.1 and Committee Note

of MDL proceedings must be flexible, the court should be open to modifying its initial management order in light of subsequent developments in the MDL proceedings. Such modification may be particularly appropriate if leadership counsel were appointed after the initial management conference under Rule 16.1(a).

www.justice.org • 777 6th Street, NW • Suite 200 • Washington, DC 20001 • 202-965-3500