# EXHIBIT 3

**United States Senate**

WASHINGTON, DC 20510

July 11, 2024

H. Thomas Byron III, Secretary
Committee on Rules of Practice and Procedure
Administrative Office of the United States Courts
One Columbus Circle, NE, Room 7-300
Washington, DC 20544

Dear Mr. Byron,

We write to urge the Advisory Committee on Civil Rules to promulgate a rule governing commercial third-party litigation funding. A proposal to amend Fed. R. Civ. P. 26(a)(1)(A) to require disclosure of this kind of funding has been before the Committee for more than six years.[1]  This rule is needed and should be advanced.

Third party litigation funding has rapidly expanded over the last several years and is now distorting the American civil justice system. Private equity, hedge funds, foreign sovereign wealth funds and other institutions are using civil litigation as an investment opportunity, creating ethical issues and a heightened risk of foreign interference.

These investments are usually secret. Third party litigation funding is rarely disclosed to the court.  Indeed, a recent GAO report identified 47 active commercial enterprises engaging in litigation funding.[2]  These entities had $12.4 billion in assets and committed at least $2.8 billion to litigation financing in 2021. Plaintiffs are often times unaware that their lawyers are relying on third parties to fund their suits, and these funders may have a priority right to any award a court grants a plaintiff. This undercuts both lawyers' obligations to their clients and plaintiffs' rights. We believe serious ethical considerations are implicated in this situation and a rule addressing it is appropriate.

Mass tort suits are a particular target for litigation funders, who generally invest directly with law firms in a portfolio of cases without engaging with or knowing specific plaintiffs. In 2022, 70% of litigation funding commitments were to mass tort portfolios.[3]  This money goes to both the actual costs of litigation and the efforts to advertise, recruit and generate claims, regardless of underlying merit. These funders have a large financial stake in the outcome of these cases, and they orient the outcome of the case around their investment goals, not the benefit of the plaintiffs.  As a result, attorneys are incentivized to take cases with large potential payouts even when the claim is not meritorious.  This can lead to the inefficient administration of justice,

---

[1] Proposal to Amend Fed. R. Civ. P. 26(a)(1)(A), No. 17-CV-O (June 1, 2017), supplemented by No. 17-CV-GGGGGG (Nov. 3, 2017), and No. 20-CV-II (Dec. 21, 2020) and No. 23-CV-M (May 8, 2023).
[2] U.S. Government Accountability Office, *Third-Party Litigation Financing: Market Characteristics, Data, and Trends*, GAO-23-105210, at 11 (Dec. 2022)
[3] Westfleet Insider, 2022 Litigation Finance Market Report, at 6.

the inability of the court to have the full picture of the case, and the subsuming of the interests of the plaintiff to external concerns.

Litigation funding is an available weapon for foreign investors to attack domestic businesses. There have been reports in the news of a Chinese firm financing intellectual property lawsuits in federal courts in order to undercut its competitor.[4] Other reports indicate that a group of Russian oligarchs who have been sanctioned by the United States have funded litigation in New York.[5] Foreign adversaries could use litigation funding mechanisms to weaken critical industries or obtain confidential materials. These tactics by our foreign adversaries not only harm American businesses, but undermine our national security.

Because of the ethical harms to plaintiffs and the risk of foreign interference, we urge the Committee to formulate a rule of civil procedure that would address these concerns. Third party litigation funding agreements need to be disclosed to the court. Discovery into the agreement and the circumstances surrounding it should also be allowed, to confirm the proper extent of disclosure. Courts should also have the discretion to allocate litigation fees and expenses to the financed party where appropriate, in order to address the risk of meritless suits. Finally, the rule should address the potential ethical pitfalls of such a funding arrangement by placing a fiduciary duty on a funder to the plaintiff in a funded case. A plaintiff must be in control of his or her case.

Another reason a rule like this is needed is to create clarity and consistency. Individual federal judges are moving forward with creating rules for their individual courts. For example, the U.S. District Court for the District of New Jersey adopted a local rule requiring each party to file a certification 30 days after docketing identifying any funder, whether the funder's approval is needed for litigation and settlement decisions, and the nature of the financial interest.[6] The rule also allows additional discovery on the funding agreement upon a showing of good cause. Other courts, including in federal districts in California and Maryland, have established approaches to the issue, whether by creating a standing order or asking for disclosures in specific cases. Consistency would benefit the plaintiffs, the defense bar, and the court.

For these reasons, we urge the Committee to convene and initiate the process of promulgating a federal rule on commercial Third Party Litigation Funding that addresses our concerns.

John Cornyn
United States Senator

Thom Tillis
United States Senator

---

[4] Emily R. Siegel, *China Firm Funds US Suits Amid Push to Disclose Foreign Ties*, Bloomberg L., Nov. 6, 2023.

[5] *Tackling Foreign Manipulation: The Urgent Need for Reform in Third Party Litigation Funding*, INST. FOR LEGAL REFORM (Apr. 1, 2024), https://instituteforlegalreform.com/blog/tackling-foreign-manipulation-the-urgent-need-for-reform-in-third-party-litigation-funding/.

[6] *See* D.N.J. L. Civ. R. 7.1.1(a).