# EXHIBIT 4

```
                                                          Page 1
 1
 2       UNITED STATES BANKRUPTCY COURT OF NEW JERSEY
                     Case No. 23-12825
 3    - - - - - - - - - - - - - - - - - x
      In re:                            :
 4                                      :
      LTL MANAGEMENT LLC,               :
 5                                      :
                            Debtor,     :
 6    - - - - - - - - - - - - - - - - -x
      LTL MANAGEMENT LLC,               :
 7                                      :
                         Plaintiff,     :
 8                                      :
                  v.                    :
 9                                      :
      THOSE PARTIES LISTED ON APPENDIX A :
10    TO COMPLAINT and JOHN AND JANE DOES:
      1-1000,                           :
11                                      :
                        Defendants.     :
12    - - - - - - - - - - - - - - - - -x
13                              April 17, 2023
                                1:12 p.m.
14                              7 Times Square
                                New York, NY
15
16
17
18
19
20          VIDEOTAPED AND REMOTE DEPOSITION UPON
21    ORAL EXAMINATION OF ANDY BIRCHFIELD, ESQ., held
22    at the above-mentioned time and place, before
23    Randi Friedman, a Registered Professional
24    Reporter, within and for the State of New York.
25
```

|  |  |
|---|---|
| Page 2<br>1    A. Birchfield, Esq.<br>2  APPEARANCES:<br>3     OTTERBOURG, P.C.<br>       Attorneys for Proposed counsel for the<br>4      official committee of talc claimants<br>5      230 Park Avenue<br>       New York, New York 10169<br>6<br>       BY:  RICHARD G. HADDAD, ESQ.<br>7<br>8<br>       GOLOMB SPIRT GRUNFELD<br>9      Attorneys for TCC<br>10     1835 Market Street, Suite 2900<br>       Philadelphia, Pennsylvania 19103<br>11<br>       BY:  RICHARD M. GOLOMB, ESQ.<br>12<br>13<br>       LEVIN PAPANTONIO RAFFERTY<br>14     Attorneys for William Henry<br>15     316 South Baylen Street<br>       Pensicola, Florida 32502<br>16<br>       BY:  CHRISTOPHER V. TISI, ESQ.<br>17<br>18<br>       BEASLEY ALLEN<br>19     Attorneys for Alishia Landrum<br>20     218 Commerce Street<br>       Montgomery Alabama 36104<br>21<br>       BY:  LEIGH O'DELL, ESQ.<br>22<br>23<br>24<br>25  (Appearances continued.) | Page 4<br>1    A. Birchfield, Esq.<br>2  (Appearances continued.)<br>3<br>       KLEHR HARRISON HARVEY BRANZBURG, LLP<br>4      Attorneys for Andy Birchfield, Esq.<br>5      10000 Lincoln Drive East, Suite 201<br>       Marlton, New Jersey 08053<br>6<br>       BY:  CAROL ANN SLOCUM, ESQ.<br>7<br>              * * *<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20  ALSO PRESENT:<br>21     Paul Baker - Videographer<br>       Jerry Curran - Concierge<br>22     Ted Meadows, Esq.<br>       Jim Murdica, Esq.<br>23<br>24<br>25 |
| Page 3<br>1    A. Birchfield, Esq.<br>2  (Appearances continued.)<br>3     COHEN, PLACITELLA & ROTH<br>       Attorneys for Estate of Kimberly<br>4      Naranjo<br>5      127 Maple Avenue<br>       Red Bank, New Jersey 07701<br>6<br>       BY:  CHRISTOPHER PLACITELLA, ESQ.<br>7<br>8<br>       JOHNSON & JOHNSON<br>9      Attorneys for Johnson & Johnson<br>10     1 Johnson & Johnson Plaza<br>       New Brunswick, New Jersey 08933<br>11<br>       BY:  ERIC HAAS, ESQ.<br>12<br>13<br>       SKADDEN ARPS SLATE MEAGHER & FLOM, LLP<br>14     Attorneys for LTL Management<br>15     One Manhattan West<br>       New York, New York 10001<br>16<br>       BY:  ALLISON BROWN, ESQ.<br>17<br>18<br>       WHITE & CASE, LLP<br>19     Attorneys for Johnson & Johnson<br>20     555 South Flower Street, Sute 2700<br>       Los Angeles, California 90071<br>21<br>       BY:  GREGORY STARNER, ESQ.<br>22        KATHRYN KUETHMAN, ESQ.<br>23<br>24<br>25  (Appearances continued.) | Page 5<br>1    A. Birchfield, Esq.<br>2     STIPULATIONS<br>3     IT IS HEREBY STIPULATED AND AGREED, by<br>4  and among counsel for the respective parties<br>5  hereto, that the filing, sealing and<br>6  certification of the within deposition shall be<br>7  and the same are hereby waived;<br>8     IT IS FURTHER STIPULATED AND AGREED<br>9  that all objections, except as to form of the<br>10 question, shall be reserved to the time of the<br>11 trial;<br>12    IT IS FURTHER STIPULATED AND AGREED<br>13 that the within deposition may be signed before<br>14 any Notary Public with the same force and effect<br>15 as if signed and sworn to before the Court.<br>16            * * * |

Page 6

1  A. Birchfield, Esq.
2  MR. VIDEOGRAPHER: Good afternoon.  13:12:46
3  We are going on the record at 1:12 p.m.  13:12:47
4  Eastern Daylight Time on Monday, April 17th,  13:12:51
5  2023.  13:12:54
6  Please note that the microphones  13:12:56
7  are sensitive and may pick up whispering and  13:12:58
8  private conversation. Please mute all  13:13:02
9  cellphones at this time.  13:13:04
10  This is Media Unit 1 of the  13:13:05
11  video-recorded deposition of Andy Birchfield  13:13:06
12  in the matter of LTL Management LLC, filed  13:13:08
13  in the United States Bankruptcy Court,  13:13:13
14  District of New Jersey, Case No. 23-12825.  13:13:14
15  This deposition is being held at Brown  13:13:21
16  Rudnick LLP, located at 7 Times Square, New  13:13:23
17  York, New York.  13:13:26
18  My name is Paul Baker and I am the  13:13:28
19  videographer. The court reporter is Randi  13:13:29
20  Friedman, and we are both from Veritext.  13:13:31
21  Appearances have been noted on the  13:13:34
22  stenographic record.  13:13:36
23  Will the court reporter please  13:13:38
24  swear in the witness.  13:13:47
25  13:13:47

Page 7

1  A. Birchfield, Esq.
2  * * *  13:13:47
3  ANDY BIRCHFIELD, the witness  13:13:47
4  herein, having been duly sworn, was examined  13:13:47
5  and testified as follows:  13:13:47
6  * * *  13:13:47
7  EXAMINATION  13:13:47
8  BY MR. HAAS:  13:13:47
9  Q  Mr. Birchfield, good afternoon.  13:13:48
10  A  Good afternoon.  13:13:50
11  Q  My name is Eric Haas, on behalf of  13:13:50
12  Johnson & Johnson. We've met before; correct?  13:13:53
13  A  Yes.  13:13:56
14  Q  Mr. Birchfield, you're a lawyer;  13:13:56
15  right?  13:13:58
16  A  Yes.  13:13:58
17  Q  Are you affiliated with any law firm?  13:13:59
18  A  Beasley Allen Law Firm in Montgomery,  13:14:01
19  Alabama.  13:14:03
20  Q  Any other law firms?  13:14:05
21  A  No.  13:14:06
22  Q  Mr. Birchfield, which of the Beasley  13:14:08
23  Allen partners have been involved in talc  13:14:10
24  litigation or recovery of talc-related claims  13:14:14
25  against Johnson & Johnson or its affiliation?  13:14:18

Page 8

1  A. Birchfield, Esq.
2  A  You're going to test my memory here.  13:14:22
3  Certainly Leigh O'Dell and Ted Meadows. We have  13:14:24
4  had over the course of the last nine years, had a  13:14:27
5  number of law partners that have been involved as  13:14:34
6  well. David Dearing, Ryan Beatty. We've had a  13:14:36
7  former law partner, Daniel Mason Ward, was  13:14:42
8  involved. Maybe other law partners that have  13:14:46
9  been involved as well, but those are the ones  13:14:52
10  that I can think of off the top of my head.  13:14:55
11  Q  Okay. Thank you.  13:14:57
12  When I refer to talc-related  13:14:58
13  litigation or talc claims or talc litigation,  13:15:00
14  I'll be referring to the talc litigation against  13:15:03
15  Johnson & Johnson and its affiliates; okay?  13:15:07
16  A  Yes.  13:15:10
17  Q  How many individuals with talc claims  13:15:10
18  do you and/or Beasley Allen currently represent?  13:15:13
19  A  It would be approximately 11,300.  13:15:19
20  Q  Now, Mr. Birchfield, of any of those  13:15:32
21  11,300 individuals, are any of them claimants who  13:15:35
22  have not yet filed their claims in any court?  13:15:42
23  A  Yes. There would be roughly -- my  13:15:46
24  best understanding is approximately 100 that  13:15:52
25  would have been -- would have been retained  13:15:55

Page 9

1  A. Birchfield, Esq.
2  and -- during the time of the pendency of  13:16:00
3  bankruptcy, and not filed.  13:16:03
4  Q  Why were they not filed?  13:16:06
5  A  Because of the pendency of the  13:16:07
6  bankruptcy.  13:16:08
7  Q  In other words, because there was an  13:16:09
8  automatic stay --  13:16:10
9  A  Automatic stay.  13:16:11
10  Q  -- that precluded you from filing  13:16:11
11  those claims?  13:16:14
12  A  Yes.  13:16:14
13  Q  Okay. Of the 11,300 claims that  13:16:15
14  Beasley Allen represents, how many of those have  13:16:23
15  been filed in the multi-district litigation  13:16:26
16  pending in New Jersey?  13:16:29
17  A  I couldn't give you a precise number.  13:16:33
18  Approximately 5,000.  13:16:35
19  Q  So of the 11,200 claims that are  13:16:47
20  filed --  13:16:51
21  A  Let me back up.  13:16:52
22  Q  Would you like to correct that?  13:16:54
23  A  I think it would probably be closer to  13:16:55
24  6,000. My best estimate.  13:16:57
25  Q  Okay. So of the 11,200 claims that  13:17:03

|  | Page 34 |
|---|---|
|  | A. Birchfield, Esq. |
| 1 | |
| 2 | what his knowledge of his practice is.    13:43:32 |
| 3 | MS. SLOCUM: That wasn't your    13:43:34 |
| 4 | question. Your question was what is the    13:43:34 |
| 5 | standard practice --    13:43:36 |
| 6 | MR. HAAS: Right.    13:43:37 |
| 7 | MS. SLOCUM: -- of Beasley Allen.    13:43:38 |
| 8 | MR. HAAS: I'm asking as a fact    13:43:39 |
| 9 | witness. He can give me a fact opinion or    13:43:40 |
| 10 | fact testimony.    13:43:43 |
| 11 | BY MR. HAAS:    13:43:44 |
| 12 | Q  So can I please have an answer to the    13:43:44 |
| 13 | question? You want me to ask it again?    13:43:47 |
| 14 | A  Please.    13:43:49 |
| 15 | Q  Based on your understanding, is it    13:43:50 |
| 16 | your standard practice at Beasley Allen to obtain    13:43:50 |
| 17 | claims from other firms that either aggregated    13:43:52 |
| 18 | them or otherwise obtained those claims?    13:43:57 |
| 19 | A  We would enter into co-counsel    13:44:00 |
| 20 | agreements. I don't want to quibble over your    13:44:07 |
| 21 | language, but do we obtain claims, we do enter    13:44:10 |
| 22 | into co-counsel, you know, agreements with    13:44:12 |
| 23 | other -- with other law firms.    13:44:14 |
| 24 | Q  Do you obtain them in any other means    13:44:18 |
| 25 | other than a co-counsel relationship?    13:44:19 |

|  | Page 35 |
|---|---|
|  | A. Birchfield, Esq. |
| 1 | |
| 2 | A  Not that I'm aware of.    13:44:24 |
| 3 | Q  Okay. So what percentage of the talc    13:44:25 |
| 4 | claims that you testified earlier were referred    13:44:29 |
| 5 | to you or have you obtained through these    13:44:34 |
| 6 | co-counsel relationships?    13:44:37 |
| 7 | A  I cannot give you a definitive answer.    13:44:41 |
| 8 | It would be the majority. I mean, that's the    13:44:43 |
| 9 | nature of our -- you know, our practice.    13:44:47 |
| 10 | Q  Are you aware of any other talc claims    13:44:49 |
| 11 | that you obtained from any source other than    13:44:52 |
| 12 | co-counsel?    13:44:55 |
| 13 | A  Yes. I mean, there would be just    13:44:59 |
| 14 | clients that come to us directly.    13:45:02 |
| 15 | Q  Do you know what percentage of the    13:45:04 |
| 16 | talc claims that would be?    13:45:06 |
| 17 | A  I don't.    13:45:08 |
| 18 | Q  A small percentage?    13:45:08 |
| 19 | MS. SLOCUM: Objection.    13:45:11 |
| 20 | THE WITNESS: It wouldn't be a    13:45:15 |
| 21 | majority. It would be less than a majority.    13:45:16 |
| 22 | BY MR. HAAS:    13:45:19 |
| 23 | Q  To what extent, to your knowledge, did    13:45:23 |
| 24 | co-counsel who have obtained the claims and    13:45:26 |
| 25 | brought them to Beasley Allen have litigation    13:45:30 |

|  | Page 36 |
|---|---|
|  | A. Birchfield, Esq. |
| 1 | |
| 2 | financing arrangements with respect to those    13:45:33 |
| 3 | claims?    13:45:35 |
| 4 | A  I have no idea.    13:45:37 |
| 5 | Q  You have no idea whatsoever whether or    13:45:39 |
| 6 | not any of your counsel have any litigation    13:45:41 |
| 7 | financing arrangements whatsoever?    13:45:43 |
| 8 | A  No, no. If that's what you asked,    13:45:45 |
| 9 | then I misunderstood.    13:45:48 |
| 10 | Q  Okay. Can you please answer that    13:45:49 |
| 11 | question?    13:45:51 |
| 12 | A  Do any of our co-counsel, yes.    13:45:51 |
| 13 | Q  With respect to the talc claims.    13:45:54 |
| 14 | A  That would be my understanding.    13:45:56 |
| 15 | Q  Okay. Which of the firms that you    13:45:57 |
| 16 | obtained claims from or that are co-counsel with    13:46:00 |
| 17 | you have litigation financing arrangements?    13:46:04 |
| 18 | A  That I don't know.    13:46:08 |
| 19 | Q  You don't know any of the firms that    13:46:10 |
| 20 | have litigation financing arrangements?    13:46:13 |
| 21 | A  Yes. I mean, I do know -- I do --    13:46:16 |
| 22 | it's my understanding that Allen Smith would have    13:46:19 |
| 23 | a funding arrangement, but beyond that, I don't    13:46:28 |
| 24 | know of any others. I don't know one way or the    13:46:32 |
| 25 | other.    13:46:35 |

|  | Page 37 |
|---|---|
|  | A. Birchfield, Esq. |
| 1 | |
| 2 | Q  Of the 11,300 claims that Beasley    13:46:36 |
| 3 | Allen represents, how many of them came from    13:46:39 |
| 4 | Allen Smith?    13:46:43 |
| 5 | A  I don't know.    13:46:44 |
| 6 | Q  Is it a significant percentage?    13:46:47 |
| 7 | MS. SLOCUM: Objection, vague.    13:46:50 |
| 8 | BY MR. HAAS:    13:46:51 |
| 9 | Q  You indicated he was one of the lead    13:46:55 |
| 10 | providers of claims. I'm wondering whether he's    13:46:57 |
| 11 | the largest.    13:47:00 |
| 12 | MS. SLOCUM: Objection.    13:47:02 |
| 13 | Mischaracterizes, misstates testimony.    13:47:02 |
| 14 | BY MR. HAAS:    13:47:05 |
| 15 | Q  You can answer.    13:47:05 |
| 16 | A  No, I don't -- I don't -- I don't know    13:47:10 |
| 17 | how many cases would have originated from Allen    13:47:14 |
| 18 | Smith.    13:47:18 |
| 19 | Q  Aside from Allen Smith, are you aware    13:47:18 |
| 20 | of whether or not any other co-counsel have    13:47:20 |
| 21 | litigation financing arrangements?    13:47:27 |
| 22 | A  It's my understanding that -- I mean,    13:47:39 |
| 23 | we would have, you know, some co-counsel, you    13:47:41 |
| 24 | know, arrangements with Mr. Onder, and Mr. Onder    13:47:44 |
| 25 | would have -- it's my understanding that he has a    13:47:49 |

10 (Pages 34 - 37)

Page 54

1       A. Birchfield, Esq.
2       MS. SLOCUM: Objection.                14:05:19
3       THE WITNESS: Mr. Haas, you            14:05:24
4   understand -- you understand the evolution   14:05:26
5   of a mass tort case and, you know, and early  14:05:27
6   on, you know, there is a significant       14:05:31
7   discovery period. And then you reach a     14:05:35
8   point where you are -- you're trying more  14:05:38
9   and more cases. We were reaching that      14:05:40
10  point. We were reaching that tipping point 14:05:42
11  when the first bankruptcy here was filed.  14:05:46
12  BY MR. HAAS:                               14:05:49
13      Q   Just to be clear, let me just get an   14:05:50
14  answer to my question. From 2013 to 2021, of the   14:05:51
15  11,300 cases that Beasley Allen represents,    14:05:57
16  Beasley Allen has tried only 11?           14:06:02
17      A   I think -- approximately 11, yes.  14:06:08
18      Q   So during that time frame, Beasley   14:06:10
19  Allen has tried far less than 1 percent of the   14:06:13
20  cases it represents?                       14:06:17
21      MS. SLOCUM: Objection, asked and       14:06:19
22  answered.                                  14:06:20
23      THE WITNESS: We've tried -- we         14:06:23
24  had tried before the bankruptcy was filed. 14:06:23
25  We had tried approximately 11 cases.       14:06:26

Page 55

1       A. Birchfield, Esq.
2   BY MR. HAAS:                               14:06:32
3       Q   When you say "we have tried," just for   14:06:33
4   the record, Mr. Birchfield, you actually haven't   14:06:34
5   tried any cases; right?                    14:06:38
6       A   Me personally?                     14:06:40
7       Q   Yes.                               14:06:40
8       A   Right. That's right.               14:06:41
9       Q   And have you actually originated any   14:06:42
10  talc cases? Have you actually gone out and     14:06:45
11  spoken with the individual claimant and obtained   14:06:47
12  any --                                     14:06:50
13      MS. SLOCUM: Objection.                 14:06:51
14  BY MR. HAAS:                               14:06:52
15      Q   -- talc cases?                     14:06:52
16      MS. SLOCUM: Objection.                 14:06:53
17  Privileged and work product. Objection.    14:06:54
18  Don't answer the question.                 14:06:58
19  BY MR. HAAS:                               14:06:59
20      Q   So you haven't tried any of the talc   14:07:01
21  cases. You're not going to answer whether you   14:07:04
22  actually originated any of them. What is it that   14:07:07
23  you actually do with respect to the talc cases?   14:07:09
24      A   What do I do?                      14:07:12
25      Q   Yeah.                              14:07:13

Page 56

1       A. Birchfield, Esq.
2       A   In respect to the -- I mean, I am   14:07:13
3   the -- I manage, you know, the mass tort section   14:07:17
4   and I supervise and manage and encourage and   14:07:22
5   support the team of lawyers working on the cases.   14:07:24
6       Q   Okay. Notwithstanding the fact that   14:07:29
7   you don't try the cases or litigate the cases,   14:07:38
8   you do engage in settlement discussions regarding   14:07:42
9   the cases; correct?                        14:07:44
10      MS. SLOCUM: Okay. I'm going            14:07:45
11  to -- objection to the lead-in. You were   14:07:46
12  stating testimony in the question.         14:07:51
13  BY MR. HAAS:                               14:07:52
14      Q   You can answer.                    14:07:52
15      A   There is a difference between saying,   14:07:53
16  you know, that I have not tried the cases and I   14:07:55
17  do not try the cases. So I was -- I was    14:07:58
18  preparing to be involved in trying the cases when   14:08:02
19  the bankruptcy -- when the bankruptcy was filed.   14:08:06
20  So I anticipated, you know, trying, you know,   14:08:10
21  cases that were set for trial when the bankruptcy   14:08:15
22  was filed. And, yes, I have engaged in, you   14:08:19
23  know, in settlement discussions. I have -- I've   14:08:26
24  done that in, you know, in other litigations as   14:08:32
25  well, where I have tried cases or not tried   14:08:35

Page 57

1       A. Birchfield, Esq.
2   cases.                                     14:08:38
3       Q   Focusing just again, so the record is   14:08:39
4   absolutely clear what we're talking about, when   14:08:41
5   we're talking about claims or talc claims or   14:08:43
6   talc-related claims or talc litigation, we're   14:08:46
7   talking about litigation against J&J and its   14:08:48
8   affiliates; okay?                          14:08:51
9       A   Yes.                               14:08:52
10      Q   So you have acted as settlement    14:08:53
11  counsel with respect to those claims?      14:08:55
12      MS. SLOCUM: Objection. You're          14:08:58
13  misstating his -- you're misstating his    14:09:01
14  testimony.                                 14:09:03
15      MR. HAAS: It's a question.             14:09:04
16      MS. SLOCUM: He itemized what he        14:09:05
17  has done. He didn't call himself settlement   14:09:07
18  counsel.                                   14:09:09
19      MR. HAAS: I asked him a question.      14:09:09
20  BY MR. HAAS:                               14:09:10
21      Q   You can answer the question.       14:09:11
22      MS. SLOCUM: All right. Objection       14:09:13
23  to form.                                   14:09:13
24      THE WITNESS: Have I engaged in         14:09:16
25  settlement negotiations, you know, yes. You   14:09:19

15 (Pages 54 - 57)

Page 58

| | | |
|---|---|---|
| 1 | | A. Birchfield, Esq. |
| 2 | | know, have I labeled myself as settlement   14:09:22 |
| 3 | | counsel?  No.   14:09:25 |
| 4 | BY MR. HAAS: | 14:09:26 |
| 5 | Q | From the time these claims were first   14:09:26 |
| 6 | | obtained by Beasley Allen in 2013, how many of   14:09:29 |
| 7 | | the talc claims have you settled?   14:09:33 |
| 8 | A | None.   14:09:40 |
| 9 | Q | So just to be clear, you have settled   14:09:40 |
| 10 | | none of the talc claims since 2013, you have not   14:09:43 |
| 11 | | tried any of the talc claims since 2013?   14:09:48 |
| 12 | A | You're speaking of me personally?   14:09:52 |
| 13 | Q | You personally, yes.   14:09:53 |
| 14 | | Is that correct?   14:09:56 |
| 15 | A | Yes, that's true.   14:09:56 |
| 16 | Q | Okay.  Of the 11 cases that Beasley   14:09:57 |
| 17 | | Allen actually tried, how much was actually   14:10:00 |
| 18 | | recovered for the talc claimants?   14:10:04 |
| 19 | A | None so far.   14:10:07 |
| 20 | Q | So let me back up and make sure I   14:10:09 |
| 21 | | understand your testimony.   14:10:11 |
| 22 | | So since 2013, with respect to the   14:10:11 |
| 23 | | 11,300 claims that Beasley Allen represents,   14:10:15 |
| 24 | | Beasley Allen has tried only 11 cases, not   14:10:19 |
| 25 | | recovered a dime for claimants, and not settled   14:10:26 |

Page 59

| | | |
|---|---|---|
| 1 | | A. Birchfield, Esq. |
| 2 | | any of the cases; is that fair?   14:10:29 |
| 3 | A | That's basically fair.   14:10:44 |
| 4 | Q | Thank you.   14:10:45 |
| 5 | | MR. HAAS:  I'm about to go to a   14:10:47 |
| 6 | | new section.  Do you want to take a break?   14:10:48 |
| 7 | | MS. SLOCUM:  Yes.  Real quick.   14:10:50 |
| 8 | | MR. VIDEOGRAPHER:  Please stand   14:10:54 |
| 9 | | by.  The time is 2:10 p.m.  We are off the   14:10:54 |
| 10 | | record.   14:10:57 |
| 11 | | (Whereupon there was a brief   14:18:37 |
| 12 | | recess.)   14:18:38 |
| 13 | | MR. VIDEOGRAPHER:  We are back on   14:23:33 |
| 14 | | the record.  The time is 2:23 p.m.   14:23:34 |
| 15 | BY MR. HAAS: | 14:23:36 |
| 16 | Q | Mr. Birchfield, I have one follow-up   14:23:40 |
| 17 | | question to our earlier discussion today.   14:23:41 |
| 18 | | Setting aside the cases for which   14:23:44 |
| 19 | | Beasley Allen has a co-counsel relationship, does   14:23:47 |
| 20 | | Beasley Allen have 100 percent of a fee interest   14:23:50 |
| 21 | | in every talc case for which it represents talc   14:23:54 |
| 22 | | claimants?   14:23:58 |
| 23 | A | To the best of my -- to the best of my   14:24:04 |
| 24 | | knowledge, yes.   14:24:06 |
| 25 | Q | So it's your testimony as you sit here   14:24:07 |

Page 60

| | | |
|---|---|---|
| 1 | | A. Birchfield, Esq. |
| 2 | | today that Mr. Watts has no fee interest in any   14:24:09 |
| 3 | | of the talc claims for which Beasley Allen does   14:24:12 |
| 4 | | not have a co-counsel relationship; is that   14:24:17 |
| 5 | | right?   14:24:19 |
| 6 | A | That would be my -- yes.   14:24:24 |
| 7 | Q | Thank you.   14:24:26 |
| 8 | | Now notwithstanding the fact that   14:24:27 |
| 9 | | Beasley Allen has never actually reached any   14:24:30 |
| 10 | | settlement relating to talc claims, when, if   14:24:34 |
| 11 | | ever, Mr. Birchfield, did you have for the first   14:24:39 |
| 12 | | time discussions with Johnson & Johnson and any   14:24:43 |
| 13 | | of its affiliates regarding the resolution of   14:24:48 |
| 14 | | talc claims?   14:24:52 |
| 15 | A | In April of 2020.   14:24:54 |
| 16 | Q | Who did you have those discussions   14:24:58 |
| 17 | | with?   14:24:59 |
| 18 | A | Mr. Murdica.   14:25:00 |
| 19 | Q | Anyone else?   14:25:03 |
| 20 | A | Anyone else from Johnson & Johnson?   14:25:04 |
| 21 | Q | No.  Was anyone else there involved in   14:25:06 |
| 22 | | the settlement negotiations?   14:25:09 |
| 23 | A | In the first discussion, it would have   14:25:13 |
| 24 | | been a John Cracken and Adam Pulaski.   14:25:18 |
| 25 | Q | You understand that Mr. Pulaski   14:25:25 |

Page 61

| | | |
|---|---|---|
| 1 | | A. Birchfield, Esq. |
| 2 | | supports LTL's refiling and the proposed   14:25:26 |
| 3 | | settlement plan; correct?   14:25:31 |
| 4 | A | That's my understanding, yes.   14:25:33 |
| 5 | Q | Okay.  The discussions on April --   14:25:34 |
| 6 | | excuse me, April 27, 2020, did not lead to a   14:25:40 |
| 7 | | resolution at that time; correct?   14:25:44 |
| 8 | A | Correct.   14:25:45 |
| 9 | Q | Do you recall that in August and   14:25:47 |
| 10 | | September of 2020, you had further discussions   14:25:48 |
| 11 | | with Johnson & Johnson's counsel regarding a   14:25:52 |
| 12 | | proposal to settle all ovarian cancer claims   14:25:56 |
| 13 | | through the Imerys bankruptcy?   14:26:01 |
| 14 | | MS. SLOCUM:  Objection.  Are you   14:26:04 |
| 15 | | referring to the Imerys bankruptcy   14:26:07 |
| 16 | | proceeding?  You're looking for settlement   14:26:11 |
| 17 | | discussions regarding that?   14:26:13 |
| 18 | | MR. HAAS:  Do you want the   14:26:15 |
| 19 | | question reread?   14:26:15 |
| 20 | | MS. SLOCUM:  Yes, that would be   14:26:17 |
| 21 | | great.   14:26:17 |
| 22 | | MR. HAAS:  I can ask it again.   14:26:18 |
| 23 | BY MR. HAAS: | 14:26:19 |
| 24 | Q | Isn't it correct, Mr. Birchfield, that   14:26:20 |
| 25 | | in August and September of 2022 you had   14:26:23 |

16 (Pages 58 - 61)

Page 62

A. Birchfield, Esq.

1
2  settlement negotiations with Johnson & Johnson's   14:26:28
3  representatives in an effort to settle all    14:26:31
4  ovarian cancer claims through the Imerys    14:26:34
5  bankruptcy?    14:26:38
6        MR. HADDAD: Wait. What was that?   14:26:41
7        MR. HAAS: Would you like me to    14:26:45
8   ask it a third time?    14:26:46
9        MR. HADDAD: I think you repeated   14:26:47
10   the dates, but I missed it.    14:26:49
11  BY MR. HAAS:    14:26:50
12   Q   Mr. Birchfield, for the benefit of    14:26:51
13  everyone, I'll go very slow.    14:26:54
14       Is it in fact true that in August and    14:26:56
15  September of 2020, you had discussions with    14:26:58
16  Johnson & Johnson's representatives with respect    14:27:04
17  to a proposal to settle all ovarian cancer talc    14:27:07
18  claims through the Imerys bankruptcy?    14:27:13
19   A   So I -- a couple things that I need    14:27:19
20  to -- I'm going to need to address here. I mean,    14:27:21
21  one is, it would not have been a settlement. It    14:27:24
22  would have been a settlement proposal. And, yes,    14:27:30
23  I did have -- you know, I did have discussions    14:27:34
24  with Mr. Murdica, but I can't really go beyond    14:27:38
25  that because then we're talking about, you know,    14:27:45

Page 63

A. Birchfield, Esq.

1
2  the Imerys bankruptcy and the committee -- you    14:27:47
3  know, the committee effort, and that is -- that's    14:27:50
4  confidential.    14:27:54
5   Q   I'm sorry. What's the nature of your    14:27:57
6  objection?    14:27:58
7   A   I cannot get into discussions about,    14:28:00
8  you know, the Imerys committee.    14:28:03
9   Q   I'm not asking about the Imerys    14:28:06
10  committee. I'm asking about the settlement    14:28:08
11  proposal you just referenced.    14:28:10
12   A   You asked me if I had a discussion    14:28:12
13  with Mr. Murdica, and I said yes. And then --    14:28:15
14  but I said going beyond that is problematic    14:28:19
15  because of the workings --    14:28:22
16   Q   I will ask you about the settlement    14:28:25
17  proposal that you made to Mr. Murdica before you    14:28:26
18  submitted it to the Imerys bankruptcy committee,    14:28:29
19  so why don't we focus there and we can talk about    14:28:33
20  the committee, and you can make whatever -- or    14:28:37
21  your counsel can make whatever objections or    14:28:40
22  instructions she chooses.    14:28:43
23       So it's fair to say -- let me be more    14:28:48
24  specific. On September 5th, 2020, you made a    14:28:50
25  proposal to Mr. Murdica on behalf of J&J, in his    14:28:54

Page 64

A. Birchfield, Esq.

1
2  role on behalf of J&J, to settle all the ovarian    14:29:00
3  cancer claims, both current and future, for    14:29:03
4  $3.25 billion; right?    14:29:08
5        MR. HADDAD: Objection to the    14:29:12
6   form.    14:29:12
7        MS. SLOCUM: Objection.    14:29:12
8        THE WITNESS: I would have to -- I    14:29:17
9   would have to -- I can't say that with    14:29:18
10   certainty. I mean, there was -- you know,    14:29:24
11   there was a discussion, but I can't say that    14:29:26
12   with certainty.    14:29:29
13  BY MR. HAAS:    14:29:30
14   Q   Would it be helpful to see the    14:29:31
15  confidential settlement term sheet for the    14:29:35
16  resolution of talc claims that you sent to    14:29:35
17  Mr. Murdica to refresh your recollection?    14:29:38
18   A   I'll look at it if you want me to look    14:29:42
19  at it.    14:29:44
20   Q   Okay.    14:29:45
21        MR. HAAS: For the record, and for    14:30:33
22   the videographer, we are marking as    14:30:35
23   Birchfield Deposition Exhibit No. 1 what is    14:30:41
24   reflected in Tab 30 and Tab 31 of the    14:30:45
25   documents in the queue, and I ask you to put    14:30:53

Page 65

A. Birchfield, Esq.

1
2   those into the queue for public review.    14:30:57
3        MR. CONCIERGE: What's being    14:31:05
4   entered now is Exhibit 1 that has been    14:31:06
5   introduced.    14:31:09
6        (Exhibit Birchfield 1 was marked.)   14:31:10
7        MR. CONCIERGE: Tab 31 will be    14:31:17
8   introduced as Exhibit 2.    14:31:18
9        (Exhibit Birchfield 2 was marked.)   14:31:19
10        MR. CONCIERGE: Both documents    14:31:40
11   should be in the marked folder and    14:31:41
12   available.    14:31:43
13  BY MR. HAAS:    14:31:55
14   Q   So, Mr. Birchfield, take a look at    14:31:56
15  what we've marked as Birchfield Deposition    14:31:58
16  Exhibit No. 1. The first document is a cover    14:32:00
17  email from yourself to Mr. Murdica dated    14:32:04
18  September 5th, 2020. It attaches a confidential    14:32:06
19  settlement term sheet dated September 4th, 2020,    14:32:14
20  that is a total of 58 pages long, including    14:32:28
21  exhibits. And when you're ready, please let me    14:32:33
22  know and I'll ask you the follow-up questions.    14:32:35
23   A   Okay.    14:33:53
24   Q   Okay. So let's go back to the    14:33:54
25  question that was pending.    14:33:55

17 (Pages 62 - 65)

Page 66

A. Birchfield, Esq.

1
2      Based upon your review of the                14:33:56
3   document, Mr. Birchfield, does this reflect your  14:33:58
4   recollection that in September of 2020 you        14:34:01
5   proposed to Johnson & Johnson, through its        14:34:04
6   representative, Mr. James Murdica, to settle all  14:34:10
7   ovarian cancer claims, both current and future,   14:34:13
8   through the Imerys bankrupt bankruptcy for a      14:34:15
9   total of 3.25 billion?                            14:34:18
10     A     So I submitted -- I submitted this       14:34:23
11  proposal. That is true.                           14:34:26
12     Q     And if you look at Page 6, Section       14:34:27
13  bb., there's a number. I'll ask you again, isn't  14:34:32
14  it correct that in September of 2020, you made a  14:34:36
15  proposal to J&J to settle all ovarian cancer      14:34:40
16  claims, both current and future, for a total      14:34:43
17  amount of $3.25 billion?                          14:34:46
18     A     Yes, that is -- that's the amount        14:34:50
19  here. There are other provisions, you know, in    14:34:52
20  here that would be important as well, but yes,    14:34:54
21  that is the case. It says what it says.           14:34:59
22     Q     Are you finished?                        14:35:03
23     A     Yes.                                     14:35:04
24     Q     Indeed, the $3.25 billion that you       14:35:05
25  offered in 2020 to resolve all the ovarian cancer 14:35:09

Page 67

A. Birchfield, Esq.

2   claims, both current and future, is a far smaller 14:35:14
3   amount than the 6.9 billion that LTL is proposing 14:35:19
4   to resolve the ovarian cancer claims in this      14:35:25
5   matter; right?                                    14:35:27
6           MS. SLOCUM: Objection to form.            14:35:29
7           THE WITNESS: If your question is,         14:35:30
8      you know, is 3.25 less than 6. whatever,       14:35:31
9      yes, it is, but we're talking about -- we're   14:35:36
10     talking about a much different situation       14:35:39
11     today than we were in September of --          14:35:45
12     September of '20 -- you know, 2020, when       14:35:47
13     this proposal, you know, was made.             14:35:51
14          A guiding principle, a guiding            14:35:54
15     principle throughout the entire course of      14:35:57
16     settlement negotiations on my part has been    14:36:01
17     a focus on a fair and reasonable settlement    14:36:04
18     amount per claimant.                           14:36:07
19  BY MR. HAAS:                                      14:36:10
20     Q     Indeed, the $3.25 billion that you       14:36:11
21  were willing to settle all ovarian claims, both   14:36:13
22  current and future, in 2020 is less than          14:36:18
23  50 percent of what LTL is now offering to resolve 14:36:20
24  all current and future ovarian cancer claims;     14:36:26
25  correct?                                          14:36:29

Page 68

A. Birchfield, Esq.

1
2           MS. SLOCUM: Objection.                    14:36:30
3           MR. HADDAD: Objection to the              14:36:31
4      form.                                          14:36:32
5           MS. SLOCUM: Objection to form.            14:36:32
6      And it misstates what your proposal states.    14:36:33
7   BY MR. HAAS:                                      14:36:38
8      Q     You may answer the question.             14:36:39
9      A     This is a -- this is a vastly            14:36:40
10  different proposal than what is -- than what is   14:36:43
11  being proposed by J&J today.                      14:36:48
12     Q     You would agree with me that             14:36:52
13  3.25 billion is less than 50 percent of           14:36:53
14  6.9 billion; correct?                             14:36:57
15     A     That is true.                            14:37:00
16     Q     Thank you.                               14:37:01
17          So let's walk through the other           14:37:01
18  salient aspects of the proposal. In this offer    14:37:03
19  that you made, Beasley Allen was to act as        14:37:07
20  settlement counsel of record on behalf of all     14:37:10
21  lawyers that elected to participate in the        14:37:13
22  transaction, and I'll refer you to Page 7,        14:37:17
23  subsection bb., among others, if you would like.  14:37:19
24          MR. HADDAD: Objection to the form         14:37:31
25     if that was a question. If it was not a        14:37:32

Page 69

A. Birchfield, Esq.

2   question, then I don't object.                    14:37:35
3   BY MR. HAAS:                                      14:37:42
4      Q     Let me know when you're ready,           14:37:45
5   Mr. Birchfield.                                   14:37:46
6      A     Okay. So I'm sorry, what --              14:37:48
7      Q     In your settlement proposal you          14:37:55
8   proposed to have Beasley Allen act as settlement  14:37:57
9   counsel of record acting on behalf of all other   14:37:59
10  lawyers representing participating claimants;     14:38:02
11  right?                                            14:38:04
12     A     What are you referring to?               14:38:04
13     Q     I'm asking you if that's your            14:38:05
14  understanding.                                    14:38:09
15     A     I cannot say that. There have been --    14:38:12
16  there's been a tremendous amount of, you know,    14:38:19
17  discussions between September '20 and today, and  14:38:21
18  so I just don't want to --                        14:38:28
19     Q     Let me see if I can refresh your         14:38:31
20  recollection. So if you would turn to Page 7,     14:38:33
21  subparagraph B(b), it defines settling counsel.   14:38:35
22  I'll read for the record, "Settling counsel       14:38:39
23  refers to Beasley Allen and every law firm that   14:38:43
24  agrees to this term sheet and evidences its       14:38:45
25  agreement by timely producing to Beasley Allen    14:38:50

Page 78

A. Birchfield, Esq.

1
2  A    That's true.                              14:47:39
3  Q    Okay. And in connection with this         14:47:40
4  proposal, you also prepared a matrix in order to  14:47:42
5  assess how the ovarian claims could be paid under  14:47:47
6  the proposed offer; correct?                   14:47:54
7        MR. HADDAD: Objection to the             14:47:56
8  form.                                          14:47:56
9        THE WITNESS: Show me where you're        14:47:58
10  referring to.                                 14:47:59
11  BY MR. HAAS:                                  14:48:00
12  Q    I'm just asking you. Let me ask it       14:48:00
13  differently, Mr. Birchfield, to try to help move  14:48:02
14  things along.                                 14:48:05
15       Do you recall that you prepared a        14:48:06
16  matrix in connection with this offer that     14:48:07
17  proposed how the ovarian claims could be paid?  14:48:11
18  A    I do not specifically remember whether   14:48:18
19  it was in connection with this or not.        14:48:22
20  Q    Do you recall at some point in time      14:48:23
21  preparing a matrix that would specify how the  14:48:24
22  ovarian cancer claims would be paid?          14:48:28
23       MS. SLOCUM: Objection on the             14:48:29
24  basis of privilege and work product, to the   14:48:31
25  extent that this pertains to a time other     14:48:34

Page 79

A. Birchfield, Esq.

1
2  than in connection with this September 4,     14:48:36
3  2020 agreement --                             14:48:39
4        MR. HAAS: It's not privileged if        14:48:41
5  he gave it to the other side.                 14:48:43
6        MR. HADDAD: You have to let --          14:48:47
7  you have to let --                            14:48:49
8        MS. SLOCUM: Let me finish.              14:48:50
9        MR. HAAS: She stopped.                  14:48:52
10       MR. HADDAD: No, she didn't.             14:48:53
11       MR. HAAS: It's not your role.           14:48:56
12  She can handle herself.                      14:48:56
13       MR. HADDAD: You have to stop            14:48:59
14  interrupting counsel.                        14:49:00
15       MR. HAAS: You can finish your           14:49:01
16  objection.                                   14:49:02
17       MS. SLOCUM: That wasn't the             14:49:03
18  question. You asked if he ever prepared      14:49:04
19  one.                                         14:49:05
20       MR. HAAS: Yes.                          14:49:06
21       MS. SLOCUM: You're changing it          14:49:07
22  now, did he ever give one to Johnson &       14:49:08
23  Johnson. That's a different question. He    14:49:10
24  can answer that question. He's not going to  14:49:12
25  answer the first question on the basis of   14:49:14

Page 80

A. Birchfield, Esq.

1
2  work product and privilege to the extent     14:49:17
3  that it pertains to a time other than        14:49:18
4  September 4 and September 5, 2020.           14:49:21
5        MR. HAAS: Are you finished?            14:49:23
6        MS. SLOCUM: Yes.                       14:49:25
7        MR. HAAS: That's not a proper          14:49:26
8  objection. The proper objection is you       14:49:27
9  can't answer to the extent that it calls for 14:49:28
10  work product or attorney product -- attorney  14:49:31
11  product protection or some other privilege. 14:49:35
12  He can answer to the extent that it doesn't. 14:49:39
13  It doesn't to the extent that he            14:49:41
14  communicated it. So let me ask it this way  14:49:43
15  to cut through it all:                      14:49:45
16  BY MR. HAAS:                                14:49:46
17  Q    Mr. Birchfield, did there come a point 14:49:47
18  in time in which you provided to Mr. Murdica a  14:49:49
19  matrix that specified how the ovarian cancer  14:49:53
20  claims would be paid?                        14:49:57
21       MS. SLOCUM: Objection. Again,          14:49:59
22  based on privilege, because now are you     14:50:01
23  getting into the mediation? What are you    14:50:02
24  getting into? This is a privilege. We have  14:50:07
25  a mediation -- there was a mediation order. 14:50:10

Page 81

A. Birchfield, Esq.

1
2  And if this is relating to that, then you    14:50:13
3  can't go into it.                            14:50:17
4        MR. HAAS: That's interesting.          14:50:18
5  So, Counsel, let me just make sure it's very 14:50:19
6  clear on the record.                         14:50:21
7        MS. SLOCUM: Sure.                      14:50:22
8        MR. HAAS: Okay. Even though I          14:50:23
9  asked the question and he hasn't even        14:50:24
10  answered it yet, your position is that any  14:50:28
11  question relating to settlements, whether   14:50:32
12  before a bankruptcy was filed or after a    14:50:37
13  bankruptcy is filed, is subject to a        14:50:38
14  privilege of -- settlement privilege that   14:50:43
15  precludes him from answering? Is that your  14:50:45
16  position?                                   14:50:47
17       MS. SLOCUM: No, not at all.            14:50:47
18       MR. HAAS: Okay. Let me ask the         14:50:48
19  question again. And if you want to instruct 14:50:49
20  him not to answer, please do so so we can   14:50:50
21  move on.                                    14:50:52
22  BY MR. HAAS:                                14:50:53
23  Q    Mr. Birchfield, did there come a point 14:50:53
24  in time ever that you provided Mr. Murdica with a  14:50:55
25  matrix that specified how the ovarian claims  14:50:57

21 (Pages 78 - 81)

Page 82

```
 1          A. Birchfield, Esq.
 2   would be paid?                              14:51:01
 3          MR. HADDAD: Objection to the         14:51:03
 4   form.                                       14:51:03
 5          THE WITNESS: Yes.                    14:51:04
 6   BY MR. HAAS:                                14:51:04
 7     Q    When did you do that?                14:51:05
 8     A    In January 2022.                     14:51:09
 9     Q    Thank you.                           14:51:13
10          So if you turn back to Page 1 of this   14:51:15
11   term sheet, at the bottom of the page, C, it   14:51:18
12   refers to Archer. It says Archer refers to   14:51:30
13   Archer Systems LLC. Do you see that?        14:51:33
14     A    I do.                                14:51:36
15     Q    And if you turn to Page 3, Section V   14:51:48
16   titled Lien Resolution Administrator, it refers   14:51:56
17   to the entity appointed to resolve liens in   14:52:03
18   connection with a qualified claim submitted to   14:52:06
19   the QSF or to the trust. "Archer shall serve as   14:52:07
20   the lien resolution administrator"; see that?   14:52:13
21     A    I see that.                          14:52:16
22     Q    So in this proposal, you proposed    14:52:17
23   Archer Systems would be the administrator; right?   14:52:20
24          MS. SLOCUM: Objection to form.       14:52:24
25          MR. HADDAD: Objection to the         14:52:25
```

Page 83

```
 1          A. Birchfield, Esq.
 2   form.                                       14:52:25
 3          MR. HAAS: What was the objection     14:52:26
 4   to form, sir? What was wrong with my        14:52:27
 5   question?                                   14:52:30
 6          MR. HADDAD: You're talking about     14:52:31
 7   who's proposing something.                  14:52:32
 8          MR. HAAS: That's not even an         14:52:34
 9   objection.                                  14:52:36
10          MR. HADDAD: Actually, that is an     14:52:36
11   objection.                                  14:52:37
12          MR. HAAS: It's not a valid           14:52:38
13   objection.                                  14:52:39
14          MR. PLACITELLA: Can you stop         14:52:45
15   acting like children? Come on.              14:52:46
16          MR. HAAS: There's no valid           14:52:48
17   objection whatever.                         14:52:49
18          MR. PLACITELLA: Be pleasant.         14:52:54
19          THE WITNESS: Does it list Archer     14:52:57
20   here, yes. Did this proposal -- did this    14:52:58
21   proposal include -- you know, include input   14:53:00
22   from me as well as from Mr. Murdica? Yes.   14:53:04
23   So when you say, you know, that it is       14:53:08
24   Beasley Allen or Andy Birchfield that is    14:53:11
25   proposing Archer, that's not a full and     14:53:15
```

Page 84

```
 1          A. Birchfield, Esq.
 2   accurate -- because this was -- this was a   14:53:20
 3   culmination of discussions that I and others   14:53:23
 4   had had, you know, with Mr. Murdica. And    14:53:29
 5   this was in 2020 and it's different today.   14:53:35
 6   BY MR. HAAS:                                14:53:38
 7     Q    Mr. Birchfield, in this proposal, the   14:53:38
 8   term sheet that you sent over includes as a   14:53:44
 9   proposed lien administrator Archer Systems;   14:53:47
10   correct?                                    14:53:51
11     A    That is correct.                     14:53:52
12          MR. HADDAD: Objection to the         14:53:52
13   form.                                       14:53:53
14   BY MR. HAAS:                                14:53:53
15     Q    Thank you.                           14:53:53
16          Did you select Archer Systems as the   14:53:54
17   lien administrator for some nefarious reason,   14:53:57
18   such as it was the subsidiary of Fortress   14:54:00
19   Investments?                                14:54:04
20          MS. SLOCUM: Objection.               14:54:05
21          MR. HADDAD: Objection to the         14:54:06
22   form.                                       14:54:06
23   BY MR. HAAS:                                14:54:06
24     Q    I'm not, by the way, the one who     14:54:08
25   contrived such a nefarious proposition. We've   14:54:09
```

Page 85

```
 1          A. Birchfield, Esq.
 2   heard that earlier today and at other times. So   14:54:13
 3   I'm asking it in order to be responsive to the   14:54:15
 4   arguments I'm hearing from the other side of the   14:54:19
 5   table. So let me ask it again and see if I can   14:54:21
 6   get an answer.                              14:54:23
 7          Did you propose Archer Systems for --   14:54:24
 8   because it was a subsidiary of Fortress?    14:54:26
 9          MS. SLOCUM: Objection to form.       14:54:29
10   There's no testimony that he is the one that   14:54:30
11   selected Archer Systems.                    14:54:34
12          MR. HAAS: Let me address that        14:54:36
13   objection and see if we can move this along.   14:54:38
14   BY MR. HAAS:                                14:54:39
15     Q    In the proposed term sheet that you   14:54:39
16   agreed to and sent over to Mr. Murdica that   14:54:41
17   listed Archer Systems, did you agree to have   14:54:45
18   Archer Systems in the term sheet because it was a   14:54:48
19   subsidiary of Fortress?                     14:54:52
20          MR. HADDAD: Objection to the         14:54:54
21   form.                                       14:54:54
22          THE WITNESS: I have no idea that     14:54:57
23   Archer was a subsidiary of Fortress in 2020.   14:55:00
24   And the best of my recollection is that     14:55:05
25   Archer -- Archer was in this term sheet at   14:55:09
```

22 (Pages 82 - 85)

Page 86

1  A. Birchfield, Esq.
2  Mr. Murdica's recommendation. I'm not  14:55:13
3  saying that that's nefarious or not. I'm  14:55:17
4  just telling you that this -- this term  14:55:19
5  sheet was not the product of just something  14:55:23
6  that I put together. It was a culmination  14:55:30
7  of discussions that I had had with  14:55:33
8  Mr. Murdica along the way.  14:55:36
9  BY MR. HAAS:  14:55:37
10  Q  Mr. Birchfield, you agreed to this  14:55:37
11  term sheet; right? In fact, you sent it over?  14:55:39
12  A  I did send this term sheet over, yes.  14:55:41
13  Q  With the provision of having Archer  14:55:43
14  Systems in there?  14:55:45
15  A  That's different than what you asked.  14:55:46
16  Q  That's why I'm asking the question.  14:55:49
17  A  Okay. So yes, I did. I did send this  14:55:51
18  term sheet to Mr. Murdica.  14:55:54
19  Q  You had no problem with Archer Systems  14:55:56
20  being the administrator; right?  14:55:58
21  MR. HADDAD: Objection to form.  14:56:01
22  MS. SLOCUM: Objection.  14:56:01
23  THE WITNESS: At that time I did  14:56:02
24  not.  14:56:03
25

Page 87

1  A. Birchfield, Esq.
2  BY MR. HAAS:  14:56:03
3  Q  Thank you.  14:56:12
4  The August 2020 settlement offer that  14:56:12
5  you made to resolve all the ovarian cancer claims  14:56:15
6  for $3.25 billion was not the last settlement  14:56:18
7  offer you made; correct?  14:56:23
8  MS. SLOCUM: Objection to form.  14:56:28
9  MR. HADDAD: Objection to form.  14:56:29
10  THE WITNESS: I mean, I just want  14:56:36
11  to be -- I mean, I just want to be, you  14:56:39
12  know, clear here. So there are -- I mean,  14:56:40
13  at this point, you know, I was making -- I  14:56:44
14  was making, you know, a proposal. I had  14:56:48
15  been working with Mr. Murdica putting  14:56:51
16  together a propose. After, you know, the --  14:56:53
17  after the LTL bankruptcy, you know, was  14:56:56
18  filed, then there was a time when, you know,  14:57:00
19  I communicated -- you know, I communicated a  14:57:03
20  settlement, you know, demand on behalf of  14:57:08
21  the ovarian cancer claim representatives on  14:57:10
22  the TCC.  14:57:15
23  So I just want to -- I just want  14:57:16
24  to make sure, when you're talking about --  14:57:18
25  when you say "you," that it is -- at that  14:57:20

Page 88

1  A. Birchfield, Esq.
2  point, it's -- I am the one who communicated  14:57:24
3  it, but it was on behalf of the TCC, the  14:57:27
4  ovarian cancer representatives of the TCC.  14:57:30
5  BY MR. HAAS:  14:57:32
6  Q  Are you referring to your April 2021  14:57:33
7  offer?  14:57:35
8  A  No.  14:57:38
9  Q  I'm not sure which one you're  14:57:39
10  referring to. Which offer are you referring to?  14:57:40
11  A  There was -- in January of 2022.  14:57:44
12  Q  Okay, we'll get to that. Before we  14:57:50
13  leave this one, just to be clear, you were  14:57:53
14  proposing this 3.25 billion resolution of all  14:57:55
15  ovarian cancer claims to be effectuated through  14:58:01
16  Imerys; correct? The Imerys bankruptcy; correct?  14:58:06
17  MS. SLOCUM: Objection.  14:58:10
18  THE WITNESS: Yes. I was  14:58:10
19  proposing that this be submitted, you know,  14:58:11
20  to the Imerys committee for consideration,  14:58:13
21  yes.  14:58:16
22  BY MR. HAAS:  14:58:16
23  Q  And you were doing so because you were  14:58:23
24  seeking a resolution of future claims which you  14:58:25
25  understood would require channeling injunction  14:58:30

Page 89

1  A. Birchfield, Esq.
2  through the Imerys bankruptcy to resolve; right?  14:58:33
3  MS. SLOCUM: Objection.  14:58:37
4  MR. HADDAD: Instruct him not to  14:58:39
5  answer.  14:58:40
6  MR. PLACITELLA: I have to put an  14:58:42
7  objection on the record, respectfully. To  14:58:43
8  the extent that you're asking questions  14:58:45
9  about Imerys and what happened inside  14:58:46
10  Imerys, I have an issue with that because  14:58:49
11  I'm on the Imerys committee.  14:58:50
12  Just let me finish. Okay.  14:58:53
13  It's my understanding that  14:58:55
14  anything that happened under the umbrella of  14:58:56
15  the Imerys committee is subject to  14:58:59
16  confidentiality and privilege, so if that's  14:59:02
17  where you're going, then I think we're going  14:59:05
18  to have to get a ruling from the judge in  14:59:07
19  charge of everything. If you're not going  14:59:11
20  there, I'll shut up, but it sounded like  14:59:13
21  that's where you're going.  14:59:15
22  MR. HAAS: It's not. And thank  14:59:16
23  you for that. So let me be clear, because I  14:59:17
24  already clarified at the inception of these  14:59:19
25  questions, I'm asking about the proposal he  14:59:23

23 (Pages 86 - 89)

Page 154

A. Birchfield, Esq.

2  A    They returned a verdict -- a defense 16:37:18
3  verdict. You asked me if I knew how long it took 16:37:20
4  and I said I do not know. You asserted that it 16:37:22
5  was less than an hour. I said I don't dispute 16:37:24
6  that. 16:37:26
7  Q    All right. We're good. Let's talk 16:37:27
8  about the Forrest case. 16:37:29
9       Do you know where that case was tried? 16:37:30
10  A    I believe the Forrest case was also 16:37:34
11  tried in St. Louis, but I cannot say that with 16:37:38
12  certainty. 16:37:40
13  Q    And just before I move to the Forrest 16:37:41
14  case, in terms of the Giese, Trentman and Vogeler 16:37:44
15  case, you had co-counsel in that case; right, 16:37:47
16  sir? 16:37:50
17  A    Yes. 16:37:50
18  Q    All right. And was Ashcraft & Gerel 16:37:51
19  involved in that case with you folks? Michelle 16:37:56
20  Parfitt? 16:38:01
21  A    Michelle Parfitt has served as 16:38:04
22  co-counsel in some of these trials and has put on 16:38:07
23  experts. I'm not sure. I cannot say with 16:38:11
24  certainty. I believe she was involved in the 16:38:13
25  Giese trial, but I cannot say that with 16:38:15

Page 155

A. Birchfield, Esq.

2  certainty. 16:38:18
3  Q    Okay. Certainly Allen Smith was 16:38:18
4  involved; right? He opened and closed in that 16:38:20
5  case? 16:38:22
6  A    That's my understanding, yes. 16:38:23
7  Q    Okay. And he's the one who has the 16:38:23
8  funding from Fortress; right? 16:38:26
9       MR. HADDAD: Objection to the 16:38:31
10      form. 16:38:32
11      MS. SLOCUM: Objection to the 16:38:32
12      form. 16:38:32
13      THE WITNESS: To the best of my 16:38:34
14      view, that's my understanding. 16:38:35
15  BY MS. BROWN: 16:38:36
16  Q    The Forrest case, your team was also 16:38:37
17  teamed up with Allen Smith on that case as well; 16:38:41
18  right, sir? 16:38:44
19  A    I think that's correct. 16:38:46
20  Q    And I thought there were also some 16:38:47
21  folks from the Onder firm, too; right? 16:38:49
22      MS. SLOCUM: Objection to form. 16:38:52
23  Is that a question? 16:38:56
24      THE WITNESS: I believe the Onder 16:38:58
25      law firm, you know, served as local counsel. 16:38:59

Page 156

A. Birchfield, Esq.

2  BY MS. BROWN: 16:39:03
3  Q    All right. And in the Forrest case, 16:39:04
4  you and your team put before the jury a request 16:39:05
5  for medical expenses of approximately 16:39:09
6  $260,000.00; right, sir? 16:39:11
7       MR. O'DELL: Object to the form. 16:39:14
8       Which case? 16:39:15
9       MS. SLOCUM: Object to the form. 16:39:16
10      MS. BROWN: We're up to Forrest. 16:39:17
11  We're going down the list. 16:39:20
12      MS. O'DELL: Excuse me. 16:39:22
13      MS. BROWN: No worries. 16:39:23
14  BY MS. BROWN: 16:39:24
15  Q    Is that right, sir, if you look where 16:39:24
16  the Fortress line is on the chart? 16:39:27
17  A    Yes. 16:39:28
18  Q    All right. And that jury awarded $0; 16:39:28
19  right? 16:39:30
20  A    Yes. 16:39:30
21  Q    That was also a defense verdict in the 16:39:31
22  City of St. Louis; right? 16:39:33
23  A    Yes. 16:39:35
24  Q    And in terms of the Fox, Giannecchini, 16:39:35
25  Ristesund and Slemp cases, all of those cases 16:39:40

Page 157

A. Birchfield, Esq.

2  were reversed on appeal; right? 16:39:44
3  A    Yes. I mean, you know, the Fox 16:39:48
4  verdict was a 72 million-dollar verdict. The 16:39:52
5  Giannecchini, I believe, was 55. Ristesund, I 16:39:55
6  believe, was -- I believe that was 70. And 16:40:02
7  Slemp, maybe 110. I believe that's correct. 16:40:07
8  Those cases -- those cases were vacated based on 16:40:10
9  the BMS Supreme Court decision on personal 16:40:15
10  jurisdiction. But those cases -- so those cases 16:40:18
11  are refiled and currently pending. 16:40:22
12  Q    Right. But in terms of what's 16:40:25
13  important to an individual claimant, right, the 16:40:26
14  amount of money that ultimately went to these 16:40:29
15  individuals, it was $0; right, sir? 16:40:33
16      MS. BROWN: Objection to form. 16:40:36
17      MR. HADDAD: Objection. 16:40:37
18      THE WITNESS: So far. So far. 16:40:37
19  BY MS. BROWN: 16:40:38
20  Q    And the Brower case that case you 16:40:39
21  listed here for medical bills of 1.2 million 16:40:41
22  dollars; right, sir? 16:40:44
23  A    Yes. 16:40:46
24  Q    All right. And that case ended in a 16:40:46
25  mistrial; right? 16:40:49

40 (Pages 154 - 157)

Page 214

A. Birchfield, Esq.

INDEX TO TESTIMONY
EXAMINATION OF
ANDY BIRCHFIELD, ESQ.                    PAGE
BY: Mr. Haas                               7
BY: Ms. Brown                          141, 209
BY: Mr. Haddad                           202
           * * *
      E X H I B I T S
Birchfield
Number    Description              Page
Exhibit 1    Email                    65
Exhibit 2    Email Exchange           65
Exhibit 3    Press Release           126
Exhibit 4    Value of Ovarian Cancer Claims   144
Exhibit 5    Talcum Powder Verdicts   161
Exhibit 6    Talcum Powder           169
Exhibit 7    NeoTYPE Analysis Discovery   178
             Profile

Exhibit 8    Susan Vogeler Document   185

Exhibit 9    NCI Document            187

     (Exhibits were retained by reporter.)
              * * *

Page 215

A. Birchfield, Esq.

MARKED QUESTIONS

1) Page 117, Line 22
2) Page 118, Line 20
3) Page 123, Line 3
              * * *

Page 216

A. Birchfield, Esq.

C E R T I F I C A T I O N

I, Randi Friedman, Registered Professional Reporter and Notary Public of the State of New York, do hereby certify:

THAT, the witness whose testimony is herein before set forth, was duly sworn by me, and THAT, the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related either by blood or marriage to any of the parties to this action; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of April, 2023.

*Randi C. Friedman*

Randi Friedman, RPR

Page 217

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: In Re: LTL Management, LLC. v.
DATE OF DEPOSITION: 4/17/2023
WITNESSES' NAME: Andy Birchfield

PAGE  LINE (S)   CHANGE        REASON

_____
Andy Birchfield
SUBSCRIBED AND SWORN TO BEFORE ME
THIS ____ DAY OF _____, 20__.

_____         _____
(NOTARY PUBLIC)         MY COMMISSION EXPIRES: