## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 16-2738 (MAS) (RLS)** |

*THIS DOCUMENT RELATES TO ALL CASES*

**PLAINTIFFS' STEERING COMMITTEE'S OPPOSITION TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S ORDER DENYING DEFENDANTS' MOTION TO COMPEL AN INSPECTION OF <u>DR. WILLIAM LONGO'S LABORATORY</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................2

LEGAL STANDARD ....................................................................................................6

ARGUMENT ................................................................................................................7

I.   Defendants Cannot Force Dr. Longo to Perform Expert
     Work in the Presence of their Litigation Experts .................................8

  A.   Defendant's Inspection Request Violates Rule 34's Plain
       Language and the Attorney Work Product Rule. ...........................8

  B.   Defendants' Untimely Destructive Testing Argument
       Lacks Merit. ....................................................................................14

     1.   Defendants Waived Their Destructive Testing
          Argument by Raising It for the First Time in Their
          Reply Brief. ...........................................................................14

     2.   Dr. Longo Did Not Conduct Destructive Testing. .....................15

     3.   Even if the Court Finds that Dr. Longo Performed
          Destructive Testing, It Should Not Authorize
          Defendants' Requested Inspection .........................................17

II.  The Unreasonable, Unduly Burdensome Inspection
     Defendants Seek Exceeds the Permissible Scope of
     Discovery ....................................................................................20

  A.   Defendants and Their Litigation Consultants Do Not
       Need to Observe Dr. Longo or His Laboratory. ............................21

  B.   Defendants Request an Unduly Burdensome Inspection. .............27

III. Defendants Attempt to Distract the Court with Irrelevant
     Information and Improper *Daubert* Arguments ..................................28

CONCLUSION ..............................................................................................30

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ark. Game & Fish Comm'n v. United States,*
    74 Fed. Cl. 426 (Fed. Cl. 2006) ...........................................................................6

*Ballas v. Tedesco,*
    41 F. Supp. 2d 531 (D.N.J. 1999) .......................................................................14

*Belcher v. Basset Furniture Indus.,*
    588 F.2d 904 (4th Cir. 1978)............................................................... 6, 7, 20, 24

*Broe v. Manns,*
    No. 3:15cv985, 2016 WL 7048988 (M.D. Pa. Dec. 5, 2016)............................26

*Coleman v. Anco Insulations, Inc.,*
    No. 15-821, 2017 WL 1735038 (M.D. La. Apr. 26, 2017)................... 17, 19, 20

*Diepenhorst v. City of Battle Creek,*
    No. 1:05cv734, 2006 WL 1851243 (W.D. Mich. June 30, 2006)......................12

*Dzielak v. Whirlpool Corp.,*
    No. 2:12-89, 2017 WL 1034197 (D.N.J. Mar. 17, 2017) .................................26

*Graff v. Baja Marine Corp.,*
    310 F. App'x 298 (11th Cir. 2009).....................................................................16

*Holmes v. J.M. Prods., Inc.,*
    No. 03-2190, 2005 WL 927172 (W.D. Tenn. Jan. 7, 2005)..............................19

*In re BlackRock Mut. Funds Advisory Fee Litig.,*
    327 F. Supp. 3d 690 (D.N.J. 2018) ....................................................................14

*In re Gabapentin Pat. Litig.,*
    No. 00-2931, 2011 WL 12516763 (D.N.J. Apr. 8, 2011) .................................26

*In re Lincoln Nat'l 2017 COI Rate Litig.,*
    620 F. Supp. 3d 268 (E.D. Pa. 2022) .................................................................22

*In re TMI Litig.,*
    193 F.3d 613 (3d Cir. 1999)...............................................................................26

*In re Zantac (Ranitidine) Litig.*,
    No. N22C-09-101 ZAN (Del. Super. Ct. June 3, 2024) ....................................26

*Insituform Technologies, Inc. v. Amerik Supplies, Inc.*,
    No. 1:08cv333, 2010 WL 11493292 (N.D. Ga. Feb. 19, 2020) .........................11

*Kreps v. Dependable Sanitation, Inc.*,
    Nos. 4:21cv4108, 4:21cv4118, 2022 WL 4094124 (D.S.D. Sept. 7,
    2022) ................................................................................................... 16, 17, 18

*Mackey v. IBP, Inc.*,
    167 F.R.D. 186 (D. Kan. 1996)..........................................................................28

*Mancuso v. D.R.D Towing Co.*,
    No. 05-2441, 2006 WL 889383 (E.D. La. Mar. 10, 2006) .................................10

*McConnell v. Canadian Pac. Realty Co.*,
    280 F.R.D. 188 (M.D. Pa. 2011) ................................................................ 6, 7, 8

*Nat'l Mfg. Co. v. Janeed Enters., Inc.*,
    No. 13-314, 2013 WL 12470870 (D.N.J. July 3, 2013) ...................................6, 7

*Ostrander v. Cone Mills, Inc.*,
    119 F.R.D. 417 (D. Minn. 1988)..................................................... 15, 17, 19, 30

*Pizza Hut, Inc. v. Midwest Mech., Inc.*,
    No. 86C5487, 1988 WL 8980 (N.D. Ill. Feb. 1, 1988).......................................19

*Potashnick v. Port City Constr. Co.*,
    609 F.2d 1101 (5th Cir. 1980) ...........................................................................12

*Rattay v. Medtronic, Inc.*,
    No. 5:05cv177, 2007 WL 1417158 (N.D.W. Va. May 10, 2007) ............... 13, 16

*Rearden LLC v. Walt Disney Co.*,
    No. 17cv4006, 2023 WL 6796017 (N.D. Cal. Oct. 13, 2023)............................29

*Sero v. Tricam Indus., Inc.*,
    No. 22-2801, 2023 WL 6318013 (D.N.J. Sept. 28, 2023)........................... 19, 20

*Spell v. Kendall-Futuro Co.*,
    155 F.R.D. 587 (E.D. Tex. 1994) .......................................................................19

*Stern v. Halligan*,
  158 F.3d 729 (3d Cir. 1998) .................................................................14

*Teer v. Law Engineering & Environmental Services, Inc.*,
  176 F.R.D. 206 (E.D.N.C. 1997) ...........................................................9

*Trice v. Toyota Motor Corp.*,
  No. 0:10cv2804, 2012 WL 12894708 (D. Minn. Sept. 12, 2012) .............. 18, 19

*United States v. Harpham*,
  No. 2:11cr42, 2015 WL 4623717 (E.D. Wash. Aug. 3, 2015).....................11, 12

*United States v. Virgin Islands*,
  280 F.R.D. 232 (D.V.I. 2012)..................................................................24

*Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*,
  625 F. Supp. 3d 309 (D.N.J. 2022) ......................................................29

## Other Authorities

www.mastest.com .....................................................................................27

## Rules

Fed. R. Civ. P. 26(b)(1) ..............................................................................6

Fed. R. Civ. P. 26(b)(4) ............................................................................20

Fed. R. Civ. P. 34(a) ......................................................................... 6, 8, 20

Fed. R. Civ. P. 37(a)(5)(B) .......................................................................30

Fed. R. Civ. P. 53(f)(3)-(5)..........................................................................7

Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC"), submit this Memorandum of Law in opposition to Defendants' Objections to the Special Master's Order Denying Defendants' Motion to Compel an Inspection of Dr. William Longo's Laboratory.

## INTRODUCTION

The Special Master properly rejected Defendants' "unprecedented" attempt to force Plaintiffs' material science expert Dr. William Longo "to recreate or replicate" his expert testing while they "participate[] in and observe[] the re-creation."[1] He found that the request not only lacked any legal basis, but it also sought "irrelevant information, is unduly annoying, oppressive, and burdensome, and is disproportionate to the needs of the case."[2] Despite this thorough repudiation of their attempt to intimidate Dr. Longo, Defendants come to the Court seeking the same relief and rehashing the same arguments that failed before the Special Master. They fare no better the second time around, and the Court should reject them.

As an initial matter, Federal Rule of Civil Procedure 34(a)(2) does not apply to experts. And it certainly does not permit Defendants to compel Dr. Longo to perform work while their own experts watch. Moreover, even if the Court entertains

---

[1] Special Master Order No. 24 (Deciding Defendants' Motion to Compel Inspection of Dr. William Longo's Laboratory, Dkt. No. 32227) at 4, ECF No. 32826 ("Special Master Order No. 24").

[2] *Id.*

1

Defendants' procedurally infirm request under Rule 34, it should deny their unreasonable plea for an "inspection" that exceeds the scope of discovery under Rule 26(b). Finally, the Court should reject Defendants' attempt to distract it from the instant discovery dispute by inserting irrelevant *Daubert* arguments and references to Dr. Longo's prior methodology that are, to use Defendants' words, "of no moment to this motion."[3] Simply put, the Defendants' objections to the Special Master's Order denying their motion to compel the inspection of Dr. Longo's laboratory lack merit, and the Court should overrule them.

## BACKGROUND

Dr. Longo used a testing methodology called polarized light microscopy ("PLM"), which he has described at length in his expert report and prior testimony,[4] to determine that Johnson & Johnson's ("J&J") baby powder contains asbestos.[5] In the simplest terms, the PLM method requires Dr. Longo and his colleagues to prepare a microscope slide with a sample of J&J baby powder and then coat that

---

[3] Defs.' Objs. at 7, ECF No. 32872-1.

[4] Special Master Order No. 24 at 1; Fourth Suppl. MDL Report at 3-8, 11-14, Ex. A.

[5] Defendants criticize Dr. Longo for changing his methodology over time. Defs.' Objs. at 24-25. Such changes, however, should come as no surprise. The quest for scientific knowledge does not and should not lie static. Consistent with that principle, Dr. Longo has refined his PLM methodology over the years to arrive at his current testing process. Longo Dep., May 2, 2024, 47:6-13, Ex. B. Regardless, Defendants concede that Dr. Longo's use of "a different methodology in the past is of no moment to this motion," making their emphasis of this point even more befuddling. Defs.' Objs. at 7, ECF No. 32872-1.

powder with a specific oil. The oil causes the minerals in the powder to appear as different colors under a polarized light microscope. An analyst at Dr. Longo's lab records the findings by indicating where the color of a particular mineral falls on a spectrum called a refractive index. Images of the particles as seen under the microscope are captured as photomicrographs that allowed Defendants and their litigation consultants to evaluate his methodology and results.

When Dr. Longo applied this PLM methodology to the 43 samples described in his 4th supplemental expert report, he determined that 93% of samples of J&J baby power contained asbestos. Unsurprisingly, Defendants and their litigation consultants dispute Dr. Longo's findings. Where Dr. Longo sees purple, they see yellow. *See, e.g.*, Defs.' Objs. at 26. Defendants have cross-examined Dr. Longo at length regarding these findings. *Id.* at 28; Special Master Order No. 24 at 8. Defendants have deposed Dr. Longo's colleague, PLM analyst Paul Hess.  Moreover, Defendants' litigation consultants have issued "comprehensive" reports that "evaluat[ed] and critiqu[ed]" Dr. Longo, his methodology, and his findings. Special Master Order No. 24 at 7.

As the Special Master recognized, Defendants and their litigation consultants already have everything they need to evaluate Dr. Longo's PLM methodology and results. Special Master Order No. 24 at 7-8. Indeed, Defendants admit that Dr. Longo provided such high-quality photomicrographs that "everyone with their own two

eyes can see" the particles' true colors without a microscope. Defs.' Objs. at 29. Nevertheless, they requested an inspection, pursuant to Federal Rule of Civil Procedure 34(a)(2), of Dr. Longo's laboratory, Material Analytical Services, LLC ("MAS"), and his PLM microscopes. Special Master Order No. 24 at 2-3. Defendants also requested that their experts observe—in real time—Dr. Longo's methodology for and performance of preparing and analyzing baby powder samples using his PLM method. *Id.*

This "unprecedented" request has no basis in the Federal Rules of Civil Procedure. *Id.* at 4 (observing that "[n]othing in the plain language of" Rule 34 authorized Defendants' "unprecedented" request to require Dr. Longo "to recreate or replicate a test while [Defendants'] expert participates in and observes the recreation"). Indeed, Defendants did not cite any "relevant case law supporting their argument." *Id.* at 5 ("Unlike defendants, plaintiffs cite relevant case law supporting their argument."). Accordingly, the Special Master denied Defendants' motion to compel the inspection. *Id.* at 9.

In arriving at this decision, the Special Master noted that Defendants' "irrelevant and unnecessary" request would "create undue annoyance, oppression, and burden for plaintiffs, as well as MAS and Longo." *Id.* at 6. Not only would the inspection "be time consuming, intrusive, and disruptive," but it would also cause "delays and distractions." *Id.* at 6-7.

4

In addition, the Special Master found the request "disproportional to the needs of the case." *Id.* at 7. He rejected Defendants' unfounded argument that they needed the inspection, observing that "[i]f this were the case, defendants' experts would not have been able to serve their comprehensive expert reports evaluating and critiquing Longo's conclusions." *Id.* He found it particularly significant that Defendants' litigation experts could "review[] photomicrographs and conclude[] that Longo's identification of chrysotile [asbestos] was incorrect and unreliable" without any mention of "needing an inspection to evaluate Longo's work." *Id.* In short, "[i]f an inspection of Longo's lab was critical or necessary to defendants' defense, the experts would not have been able to reach their conclusions." *Id.*

Finally, he rejected Defendants' arguments about "the admissibility of Longo's testimony" as "not appropriate at this juncture." Special Master Order No. 24 at 8.

Although the Special Master rejected Defendants' overreaching and baseless request for an unprecedented and unnecessary inspection of Dr. Longo and his laboratory, Defendants have filed these objections to Special Master Order No. 24, reprising the same arguments that failed with the Special Master. The Court, therefore, should overrule Defendants' objections.

## LEGAL STANDARD

Rule 34(a)(2) allows one party to serve a request on another party to "permit entry onto designated land or other property <u>possessed or controlled by the responding party</u>, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." (emphasis added) Accordingly, "[b]y its terms, Rule 34[(a)] only applies to inspections of <u>a party's</u> property." *McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 196 (M.D. Pa. 2011) (emphasis added) (citing Fed. R. Civ. P. 34(a)). In other words, "expert discovery," like the discovery Defendants seek here, "does not fall under Fed. R. Civ. P. 34(a)(2)." *Ark. Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426, 430 n.2 (Fed. Cl. 2006).

Rule 34(a) inspections must also fall "within the scope of Rule 26(b)," Fed. R. Civ. P. 34(a), meaning that the inspection must seek information "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts do not apply the "general relevancy standard" when evaluating an inspection request because "'entry upon a party's premises may entail greater burdens and risks than mere production of documents.'" *Nat'l Mfg. Co. v. Janeed Enters., Inc.*, No. 13-314, 2013 WL 12470870, at *1 (D.N.J. July 3, 2013) (quoting *Belcher v. Basset Furniture Indus.*, 588 F.2d 904, 908 (4th Cir. 1978)). Instead, they must undertake "'a greater inquiry into the necessity for [the]

inspection'" and "balance the need for inspection against the 'burdens and dangers created by the inspection,' . . . using 'reasonableness as a guidepost.'" *Id.* at *1-2 (first quoting *Belcher*, 588 F.2d at 908; then quoting *McConnell*, 280 F.R.D. at 191).

The Court reviews the Special Master's factual findings and legal conclusions de novo and his rulings on procedural matters for an abuse of discretion. Order Regarding Special Master's Duties & Authority at 3, ECF No. 704; Fed. R. Civ. P. 53(f)(3)-(5).

## ARGUMENT

Defendants' attempt to reverse the Special Master's sound rejection of their Rule 34(a)(2) inspection request fails on all accounts. Nothing in the Federal Rules of Civil Procedure or the caselaw interpreting them permit the unprecedented, harassing inspection that Defendants seek. Defendants' untimely destructive testing argument does not change this stubborn fact. Moreover, their unreasonable "inspection" request exceeds the scope of discovery under Rule 26(b). Finally, Defendants' inappropriate *Daubert* arguments and irrelevant references to Dr. Longo's prior methodology have no bearing on this motion. The Court, therefore, should overrule Defendants' objections.

## I.     Defendants Cannot Force Dr. Longo to Perform Expert Work in the Presence of their Litigation Experts.

### A. Defendant's Inspection Request Violates Rule 34's Plain Language and the Attorney Work Product Rule.

Rule 34(a)(2) permits a party to request "entry onto designated land or other property <u>possessed or controlled by the responding party</u>, so that <u>the requesting party</u> may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." (emphasis added). Defendants' motion violates the plain meaning of this rule in two ways.

First, Rule 34(a)(2) only permits entry onto "land or other property <u>possessed or controlled by the responding party</u>," i.e., Plaintiffs. (emphasis added). *See also McConnell*, 280 F.R.D. at 196 ("By its terms, Rule 34[(a)] only applies to inspections of a party's property. (citing Fed. R. Civ. P. 34(a))). It does <u>not</u> permit entry onto property possessed or controlled by an expert, i.e., Dr. Longo or MAS. *Ark. Game & Fish Comm'n*, 74 Fed. Cl. at 430 n.2 (noting that "expert discovery does not fall under Fed. R. Civ. P. 34(a)(2)").

Second, a Rule 34(a)(2) inspection, when allowed, simply gives permission for "<u>the requesting party</u>," i.e., Defendants, to inspect or test the property at issue. (emphasis added). It does not permit a requesting party to force <u>the responding party or its expert</u> to conduct testing or operations for the requesting party to observe. In other words, Rule 34 forbids Defendants from forcing Dr. Longo, the <u>responding</u>

party's expert, to engage in testing that he would not otherwise conduct. Special Master Order No. 24 at 4 ("Nothing in the plain language of . . . Rule [34(a)(2)] authorizes a party to require an opposing expert to recreate or replicate a test while the proponent's expert participates in and observes the re-creation.").

Consistent with this plain language, courts have held that parties cannot use Rule 34 to compel the observation of another party's experts' work. For example, in *Teer v. Law Engineering & Environmental Services, Inc.*, the court denied the defendant's motion to compel where it sought, "under authority of Rule 34, to observe Plaintiffs' experts as they conduct tests and take steps to reduce or eliminate . . . alleged chemical contamination on the subject property." 176 F.R.D. 206, 207 (E.D.N.C. 1997). In arriving at this decision, the court observed that the plain language of Rule 34(a)(2) "does *not* . . . authorize Defendant's experts to observe Plaintiffs' experts as they do their work to assess the contamination or take steps to correct it." *Id.* It also noted that, like here, "Defendants have not cited one case from any court that has ever permitted" a requesting party to observe testing done by the other party's expert. *Id.*

Defendants here make an even more inappropriate request than the defendant in *Teer*. There, the plaintiffs' experts planned to do the testing the defendant wanted to observe regardless of whether the court permitted the inspection. Here,

Defendants want Dr. Longo and MAS employees to reperform work they already completed.

Defendants' inspection request also infringes on the attorney work product rule. For example, in *Mancuso v. D.R.D Towing Co.*, the court permitted the plaintiff's attorney and expert to inspect a vessel owned and operated by the defendants but forbid the defendants from following and observing them during the inspection because permitting the defendant to "shadow" the plaintiff's attorney and expert "could infringe on the attorney work product rule." No. 05-2441, 2006 WL 889383, at *1, 3 (E.D. La. Mar. 10, 2006). The *Mancuso* court also observed, like the *Teer* court and the Special Master, that the defendants sought legally "unsupported" oversight of the plaintiff's expert without citing "to any case allowing" such an onerous request. *Id.* at *2-3.

Notably, the court rejected the *Mancuso* defendants' request to watch the plaintiff's expert work even though the plaintiff asked to inspect the defendants' property. *Id.* at *1.  Defendants' request here goes much further—they want front row seats to watch Plaintiffs' expert and analysts conduct work that they do not otherwise plan to do on property controlled not by Defendants, but by a third party.

"The unprecedented nature of defendants' request is evidenced by the fact that they cite no controlling case law authorizing their request." Special Master Order No. 24 at 4. In this appeal, Defendants again rely on *Insituform Technologies, Inc. v.*

10

*Amerik Supplies, Inc.*, No. 1:08cv333, 2010 WL 11493292 (N.D. Ga. Feb. 19, 2020) and *United States v. Harpham*, No. 2:11cr42, 2015 WL 4623717 (E.D. Wash. Aug. 3, 2015), even though the Special Master aptly rejected them as "inapposite." Special Master Order No. 24 at 4.

In *Insituform*, the court allowed a party, Insituform, to "re-inspect Cosmic's [another party] facility" <u>as a sanction</u> because of Cosmic's misrepresentation that certain parts of the facility were not relevant to the case prevented Insituform from conducting a full inspection as the court had ordered. 2010 WL 11493292, at *7, 22. As part of that sanctions order, the court had Cosmic attend the inspection <u>at its facility</u> to demonstrate a manufacturing process relevant to the case. *Id.* at *22. Importantly, and presumably in effort to ward off default judgment, Cosmic "offer[ed] to allow Insituform to re-inspect the facility." *Id.* at *22.

Unlike Cosmic, neither Plaintiffs nor Dr. Longo have engaged in any sanctionable conduct or offered to submit to the burdensome inspection Defendants seek. The Defendants also do not seek to inspect a party's property—let alone their own property—but rather an expert's laboratory. Accordingly, "Defendants' reliance on" *Insituform* "is off base." Special Master Order No. 24 at 4.

*Harpham* "is likewise not helpful" to Defendants. *Id.* There, the court denied a <u>criminal</u> defendant's motion to vacate, set aside, or correct his sentence. 2015 WL 4623717, at *5. While discussing whether the court properly denied the defendant's

11

continuance request during the underlying criminal proceeding, the court noted that it had previously ordered the government to redo certain tests in the defense expert's presence. *Id.* at *3. But that order did not discuss the Federal Rules of <u>Civil</u> Procedure. Order on September 2, 2011 Hr'g, *United States v. Harpham*, No. 2:11cr42 (E.D. Wash. Sept. 2, 2011), ECF No. 197, Ex. C. This makes sense. Those rules did not apply in Harpham's <u>criminal</u> case. Plus, Harpham had greater rights as a criminal defendant than Defendants have here. *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1118 (5th Cir. 1980) ("A criminal defendant faced with a potential loss of his personal liberty has much more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection to the criminal defendant's rights.").

Another of Defendants' cases, *Diepenhorst v. City of Battle Creek*, No. 1:05cv734, 2006 WL 1851243 (W.D. Mich. June 30, 2006), supports Plaintiffs' position. There, the court <u>denied</u> the plaintiff's request to have her expert attend the defense expert's forensic examination of documents that she agreed to produce to the defendant for testing. No. 1:05cv734, 2006 WL 1851243, at *1 (W.D. Mich. June 30, 2006). It found "plaintiff's proposed conditions to be unreasonable," holding that "[i]n general, each party should be free to engage in its own trial preparation unhampered by the intrusive supervision of the opposing party." *Id.* Defendants here make a similarly unreasonable request.

*Rattay v. Medtronic, Inc.* also does not support the extraordinary relief Defendants seek. No. 5:05cv177, 2007 WL 1417158 (N.D.W. Va. May 10, 2007). In that case, the court permitted the defense expert to attend testing that the plaintiffs requested because the "devices to be tested are the actual devices that had been implanted in and later removed from" the plaintiff, which "necessitate[d] additional care and safeguards." *Id.* at *3. Importantly, the court did not lay down a general rule in *Rattay*, instead cabining its ruling to "the circumstances of this case." *Id.*

Those circumstances do not exist here. First, unlike the plaintiffs in *Rattay*, Plaintiffs did not request to perform the testing that Defendants attempt to require Dr. Longo to do. In fact, Plaintiffs have actively resisted it. Second, the proposed tests do not involve unique and sensitive medical devices implanted into a plaintiff, but rather abundant baby powder samples that do not require "additional care and safeguards" around their handling.

Finally, the "destructive testing" cases that Defendants cite do not change the analysis above for the reasons set forth in Section I.B.

Defendants' inspection request far exceeds the permissible scope of a Rule 34 inspection, violates the work product rule, and runs afoul of squarely on point caselaw. The Court, therefore, should reject it as did the Special Master.

13

## B. Defendants' Untimely Destructive Testing Argument Lacks Merit.

Defendants' attempt to avoid the limitations on Rule 34 inspections by recasting Dr. Longo's PLM methodology as "destructive testing" suffers from procedural, factual, and legal infirmities, and the Court should reject it. Procedurally, Defendants waived the argument because they did not raise it until filing their reply brief with the Special Master. Factually, Dr. Longo "did not do destructive testing." Special Master Order No. 24 at 4. And, legally, the distinguishable cases Defendants cite do not entitle them to the extraordinary relief they seek.

### 1. Defendants Waived Their Destructive Testing Argument by Raising It for the First Time in Their Reply Brief.

"A party cannot raise issues for the first time in a reply brief." *Stern v. Halligan*, 158 F.3d 729, 731 n.3 (3d Cir. 1998); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.2 (D.N.J. 1999) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief."). "Thus, courts ordinarily decline to consider arguments raised for the first time in a reply brief, on the grounds that consideration of the same would prejudice the non-moving party." *In re BlackRock Mut. Funds Advisory Fee Litig.*, 327 F. Supp. 3d 690, 736 n.42 (D.N.J. 2018).

Here, Defendants raised their destructive testing argument for the first time in their reply brief even though nothing prevented them from doing so in their initial motion. This violates well-established Third Circuit precedent and prejudiced the

Plaintiffs by depriving them of the opportunity to respond in writing to this argument before the Special Master.

Nevertheless, the Special Master's finding that Dr. Longo "did not do destructive testing" was correct. Special Master Order No. 24 at 4. Yet, Defendants now attempt to discredit the Special Master's analysis by calling that conclusion "simply not true" and supporting its argument with a case that it cited for the first time in its reply brief. Defs.' Objs. at 31 & n.4 (citing *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417 (D. Minn. 1988)). This attempt to manufacture a deficiency with the Special Master's Order for use in its objections to the same is improper and continues to prejudice Plaintiffs. Accordingly, the Court should not consider Defendants' destructive testing argument.

### 2.  Dr. Longo Did Not Conduct Destructive Testing.

Defendants' destructive testing argument also fails on the merits because, as the Special Master noted, Dr. Longo "did not do destructive testing." Special Master Order No. 24 at 4. Defendants disparage this factual finding as "objectively incorrect" because the small sample of "particles Dr. Longo looked at were destroyed when the microscope slides degraded and were discarded." Defs.' Objs. at 8. But, in reality, they advance the objectively incorrect understanding of "destructive testing" by claiming that "[i]t is not relevant that other talc particles from the same container may exist." *Id.*

The court's analysis in *Kreps v. Dependable Sanitation, Inc.*, illustrates the point. Nos. 4:21cv4108, 4:21cv4118, 2022 WL 4094124 (D.S.D. Sept. 7, 2022). There, the defendants wanted to conduct blood testing of two individuals involved in a car accident. *Id.* at *1. Initially, the defendants cast their motion as one for "'destructive testing'" because the amount of blood remaining after their test "would be insufficient to allow plaintiffs to do 'rebuttal' testing." *Id.* at *2. But the defendants subsequently learned "that there [were] sufficient blood samples remaining . . . to allow both parties to conduct their own independent testing of the two men's blood samples." *Id.* In other words, even though "the process of testing [would] result in destruction of that portion of the blood used for the test, it [would] not result in destruction of the entirety of the blood sample available." *Id.* Accordingly, the court "construe[d] defendants' motion to be for 'testing' of the two blood samples rather than 'destructive' testing." *Id.*

The same result should obtain here. As in *Kreps*, "there are sufficient [baby powder] samples remaining [from the same bottles Dr. Longo tested] . . . to allow both parties to conduct their own <u>independent</u> testing of the [baby powder] samples." *Id.* (emphasis added).[6] Even though "the process of testing . . . result[s] in destruction

---

[6] For this reason, *Kreps* and this case differ from *Graff v. Baja Marine Corp.* because there "the untested portion of [the most critical evidence in the case] was <u>not</u> an optimum specimen for testing[.]" 310 F. App'x 298, 302 (11th Cir. 2009) (emphasis added). In any event, in *Graff*, the court reviewed the propriety of spoliation sanctions, not an inspection request pursuant to Rule 34. *Id.* at 301-02.

of that portion of the [baby powder] used for the test, it [does] not result in destruction of the entirety of the [baby powder] sample available." *Id.*[7] Accordingly, when using his PLM method, Dr. Longo performed mere "testing" and not "destructive testing" as Defendants erroneously claim. As such, their reliance on destructive testing cases "is neither controlling nor persuasive." Special Master Order No. 24 at 4.

### 3. Even if the Court Finds that Dr. Longo Performed Destructive Testing, It Should Not Authorize Defendants' Requested Inspection.

Even if the Court construed Dr. Longo's testing as destructive testing, it should not permit Defendants' requested inspection. Again, *Kreps* is instructive. Although the court there "construe[d] defendants' motion to be for 'testing' . . . rather than 'destructive' testing" as explained above, it conducted an alternative analysis "under

---

Similarly, in *Ostrander*, the proposed testing would completely consume the only remaining "unwashed" fabric swatches, leaving only other types of material available as evidence after the testing. 119 F.R.D. at 419. Conversely, Dr. Longo's testing here did not completely consume <u>any</u> category of evidence.

Finally, in *Coleman v. Anco Insulations, Inc.*, the court, when evaluating an unopposed motion, assumed, but did not analyze, whether the movant sought "testing" or "destructive testing." No. 15-821, 2017 WL 1735038, at *1-3 (M.D. La. Apr. 26, 2017). Accordingly, it does not provide guidance for answering the threshold question of whether Dr. Longo even conducted destructive testing.

[7] Moreover, Defendants manufactured the Johnson's Baby Powder and Shower to Shower products Dr. Longo tested, and Defendants have retained product samples produced from the same mines and manufactured during the same time periods, which are available to test. *See* Agreed Order and Stipulation Regarding the Johnson & Johnson Defendants' Production of Talcum Powder Samples, ECF No. 4032 (Jan. 31, 2018).

the destructive testing rubric" to address arguments "discussed by the parties in their briefs." *Kreps*, 2022 WL 4094124, at *2-3. It ultimately concluded that the defendants could conduct the requested testing, even under the destructive testing framework, subject to certain conditions which did <u>not</u> include observation of the testing by the other party. *Id.* at *5, 7. Instead, it merely required the party performing the testing to "notify the other parties in th[e] case of the time, place, manner, conditions, and scope of the testing[,] . . . the identity of the lab or persons who . . . conduct[ed] the test[, and] . . . the results of the testing." *Id.* at *7.

Here, Plaintiffs have already provided Defendants with the information demanded by *Kreps*. And they have done so in painstaking detail and across days of deposition testimony. Given these ample disclosures, nothing prevents Defendants and their experts from examining aliquots from the same bottles of baby powder that Dr. Longo tested, replicating his methodology, and coming to their own conclusions regarding the presence of asbestos. On the flip side, nothing entitles them to a command performance by Dr. Longo where they observe him analyzing samples that they can readily test themselves.

Indeed, in <u>every case</u> Defendants cite the party seeking to have destructive testing conducted proposed to do the testing <u>themselves</u>. *Trice v. Toyota Motor Corp.*, No. 0:10cv2804, 2012 WL 12894708, at *1-2 (D. Minn. Sept. 12, 2012) (permitting plaintiff's expert to perform destructive testing that plaintiff wanted);

*Sero v. Tricam Indus., Inc.*, No. 22-2801, 2023 WL 6318013, at \*3, 7 (D.N.J. Sept. 28, 2023) (same); *Holmes v. J.M. Prods., Inc.*, No. 03-2190, 2005 WL 927172, at \*1 (W.D. Tenn. Jan. 7, 2005) (permitting defense expert to conduct testing that defendant requested); *Spell v. Kendall-Futuro Co.*, 155 F.R.D. 587, 587-88 (E.D. Tex. 1994) (same); *Ostrander*, 119 F.R.D. at 418-19 (same); *Coleman*, 2017 WL 1735038, at \*3 (same); *Pizza Hut, Inc. v. Midwest Mech., Inc.*, No. 86C5487, 1988 WL 8980, at \*1 (N.D. Ill. Feb. 1, 1988) (allowing defendant to perform testing that it requested but ordering the parties to "agree upon an expert to conduct the test"). They did not attempt to require the opposing party's expert to perform the testing for them as Defendants do here.

Likewise, in every case Defendants cite, the party seeking testing asked to inspect or test an item either in their possession or the possession of the other party. *Trice*, 2012 WL 12894708, at \*1-2 (plaintiff seeking testing of car driven by plaintiff); *Sero*, 2023 WL 6318013, \*1 (plaintiff seeking testing of ladder he purchased); *Holmes*, 2005 WL 927172, at \*1-2 (defendant seeking testing of aerosol can belonging to the plaintiff); *Spell*, 155 F.R.D. at 587-88 (defendant seeking testing of plaintiff's cane); *Ostrander*, 119 F.R.D. at 421 (defendant seeking testing of fabric in plaintiffs' possession); *Coleman*, 2017 WL 1735038, at \*1 (defendant seeking testing of deceased plaintiff's "tissue"); *Pizza Hut*, 1988 WL 8980 (defendant

seeking testing of refrigeration timer in plaintiff's possession). On the other hand, Defendants ask to inspect the property and work process of an <u>opposing expert</u>.

Defendants' cases differ from the situation here in other respects, too. For instance, in *Coleman*, the court did <u>not</u> permit the non-testing party to attend the testing. 2017 WL 1735038, at *2-3. And in *Sero*, the party who wanted to perform the testing offered to have the other party "attend or participate" in the testing. 2023 WL 6318013, at *7. Plaintiffs extended no such offer here.

## II. The Unreasonable, Unduly Burdensome Inspection Defendants Seek Exceeds the Permissible Scope of Discovery.

Even if Rule 34 permitted Defendants' expert to observe Dr. Longo or MAS employees performing PLM analyses, the Court should overrule Defendants' objections to the Special Master's Order because Defendants seek a patently unreasonable inspection that is particularly disproportionate to this case's needs. Moreover, although Defendants do not need this inspection, it would significantly burden Dr. Longo and MAS, rendering it unreasonable. *Nat'l Mfg.*, 2013 WL 12470870, at *1; *Belcher*, 588 F.2d at 908. In sum, the requested inspection exceeds the permissible scope of discovery under Rule 26(b). *See* Fed. R. Civ. P. 34(a) (Rule 34 inspections must fall "within the scope of Rule 26(b)"); Fed. R. Civ. P. 26(b)(4) advisory committee's note to 1970 amendment (noting that a party "can hardly hope to build his case out of his opponent's experts").

## A. Defendants and Their Litigation Consultants Do Not Need to Observe Dr. Longo or His Laboratory.

Defendants concede that their litigation consultants have already reviewed Dr. Longo's work and concluded "that Dr. Longo is in fact finding particles of talc and calling them 'asbestos.'" Defs.' Objs. at 23. Nevertheless, they claim that they need the requested inspection to "disprove" Dr. Longo's expert opinions. *Id.* At bottom, Defendants argue that they cannot use the photomicrographs to show that Dr. Longo allegedly misidentifies particles' color in his PLM analyses.

Their objection brief, however, tells a different story. Defendants repeatedly admit that the photomicrographs provide all the information they need to "disprove" Dr. Longo's expert opinions. Indeed, in the brief's introduction, Defendants reproduce one of Dr. Longo's photomicrographs and claim that Dr. Longo "calls the particle . . . purple . . . even though it is <u>plainly</u> yellow." Defs.' Objs. at 2 (emphasis added). Based on this photomicrograph alone, Defendants claim to unequivocally know that "Dr. Longo is not accurately reporting the color of the particles he examines." *Id.*

Elsewhere, they admit that "<u>everyone can clearly see with their own two eyes</u>" that Dr. Longo's "pictures of alleged chrysotile asbestos particles still appear yellow," again undermining their argument that they can only attack Dr. Longo and his opinions if their experts watch him work. *Id.* at 4 (emphasis added). In fact, if "everyone can clearly see with their own two eyes" that Dr. Longo supposedly

21

misidentified particles' color, *id.*, then Defendants should not even need expert testimony, let alone their unprecedented inspection. *See In re Lincoln Nat'l 2017 COI Rate Litig.*, 620 F. Supp. 3d 268, 284 (E.D. Pa. 2022) ("An expert may not simply regurgitate evidence the jury can interpret for themselves[.]").

The examples go on. No fewer than nine times, Defendants refer to the photomicrographs' clarity or the allegedly inescapable conclusions that anyone can draw from them without needing to watch Dr. Longo work or look down his microscope:

- "Dr. Longo . . . insists that the <u>clearly yellow</u> particles are purple on cross examination." Defs.' Objs. at 4 (emphasis added).

- Describing photograph as "<u>plainly yellow</u>." *Id.* at 7 (emphasis added).

- Concluding, based on photomicrographs, that "Dr. Longo's lab incorrectly reports the colors of the particles." *Id.* at 12.

- Quoting testimony from a "[f]requent plaintiffs' expert" that the "photos Dr. Longo claims [are] chrysotile" show the "edge of talc plates." *Id.* at 15.

- Claiming that Dr. Longo identified a chrysotile particle as magenta "when it was <u>clearly not magenta</u>." *Id.* at 17 (emphasis added).

- Referring to the alleged "fact the particles [Dr. Longo] is calling purple are <u>clearly yellow</u>." *Id.* at 26 (emphasis added).

- Claiming that Dr. Longo looks "at particles that <u>everyone with their own two eyes can see are yellow</u> yet claim[s] they are, in fact, purple." *Id.* at 29 (emphasis added).

By belaboring this point, Defendants undermine their objections and demonstrate that they can make their case to the jury without their baseless, unprecedented inspection request.

Defendants' litigation consultants' ability to produce "comprehensive" reports relying on nothing more than the information they already have, including the photomicrographs, further demonstrates the disingenuity of Defendants' claimed need for the inspection. Special Master Order No. 24 at 7. As the Special Master observed, these reports "do not mention anything about needing an inspection to evaluate Longo's work." *Id.* Rather, they "evaluat[e] and critique[e] Longo's conclusions" simply by "review[ing] photomicrographs." *Id.*; *see also* Wylie Report at 1, Ex D; Su Report at 3, 7-9, Ex. E. Defendants' litigation experts could not have reached these conclusions "[i]f an inspection of Longo's lab was critical or necessary to defendants' defense." Special Master Order No. 24 at 7. Simply put, "Defendants' experts have had no problem drawing conclusions from Dr. Longo's reports, including the photomicrographs of the samples used in these reports. Defendants therefore have no need to inspect Dr. Longo's laboratory or require Dr. Longo and MAS technicians [to] repeat their PLM analysis." *Id.* at 8 (quoting Pls.' June 7, 2024 Letter Brief at 2).

Defendants confirm that they seek the inspection not to obtain new information but simply to harass Dr. Longo and his colleagues by admitting that the

inspection will <u>not</u> change any of their litigation consultants' opinions. Defs.' Objs. at 28 (complaining that they do not know how Dr. Longo will respond once their litigation consultants inevitably "disprove Dr. Longo's current justification for his testing" by looking "down his microscope").[8] This admission confirms the Special Master's conclusion that the Defendants seek "irrelevant information" simply to "unduly annoy[], oppress[], and burden[]" Dr. Longo and his team. Special Master Order No. 24 at 4.

Because Defendants cannot credibly claim to need the inspection to rebut Dr. Longo's opinions or formulate their own, they argue that they need the inspection to rebut Dr. Longo's rebuttal to their litigation experts' rebuttal of his opinions. But nothing in the Federal Rules of Civil Procedure permit the highly burdensome rebuttal-to the rebuttal-to the rebuttal discovery that Defendants seek here. Indeed, allowing such testimony would create an endless discovery loop by permitting

---

[8] Even if Defendants could perform their requested inspection, they could not contemporaneously question Dr. Longo or his employees to ascertain their response to the inspection because such interviews lack "'the safeguards of true depositions'" and "are suspect." *Nat'l Mfg.*, 2013 WL 12470870, at *3 (quoting *Belcher*, 588 F.2d at 910) ("Courts have held that Rule 34 does not confer on the requesting party the right to informally interview any individual present at the time of the inspection."). Defendants have had full opportunity—over two days—to depose Dr. Longo in this case, and over many days in deposition and at trial in other cases, regarding the same analyses. To further question him, they must use the "normal methods of deposing witnesses" with all the "critical but burdensome procedure mandated under Rule 30." *Id.* (first quoting *Belcher*, 588 F.2d at 910; then quoting *United States v. Virgin Islands*, 280 F.R.D. 232, 237 (D.V.I. 2012)).

litigants to seek new discovery simply because they do not like an expert's cross examination responses. Discovery does not work that way, however, as demonstrated by the absence of authority supporting Defendants' position.

Finally, Defendants' perfunctory argument that deposing Dr. Longo's analyst, Paul Hess, "is not sufficient to allow Defendants the opportunity to test Dr. Longo's critical opinions in this matter" misses the mark. Defs.' Obj. at 28. As an initial matter, Defendants have, in fact, tested Dr. Longo's opinions when they deposed him across two days in this case, and cross-examined him over many days in deposition and at trial in other cases on the same analyses. *See* Special Master Order No. 24 at 8 ("Not only did defendants depose Longo for two days in this MDL, but they have thousands of pages of testimony from Longo's past depositions and trial testimony."). They have also received the data underpinning Dr. Longo's opinions in his expert report. Accordingly, their assertion that "[n]ormally, a party is entitled to both the data that underlies an opposing expert's opinion . . . and a deposition of the expert who performed the relevant analysis stemming from that data" merely highlights that Plaintiffs owe them nothing more. Defs.' Objs. at 28. As the Special Master put it, "Defendants cannot be heard to argue that they do not have a complete record to challenge Longo's conclusions." Special Master Order No. 24 at 8 (finding "that the requested inspection is disproportionate to the needs of the case").

If Defendants wish to challenge Dr. Longo's credibility or identification of asbestos because their litigation consultants disagree about the determination of a particles' refractive index or color in photomicrographs, then they should make that argument to the jury. *See In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (holding that "it is for the trier of fact to determine the credibility of the expert witness"); *Dzielak v. Whirlpool Corp.*, No. 2:12-89, 2017 WL 1034197, at *26 (D.N.J. Mar. 17, 2017) ("What is presented here is a classic battle of the experts over disputed facts, to be settled by the finder of fact[.]"); *In re Gabapentin Pat. Litig.*, No. 00-2931, 2011 WL 12516763, at *10 (D.N.J. Apr. 8, 2011) (concluding that the jury must resolve "a battle of the experts"); *Broe v. Manns*, No. 3:15cv985, 2016 WL 7048988, at *4 (M.D. Pa. Dec. 5, 2016) (concluding that disagreements with an expert "can be dealt with through cross-examination, presentation of contrary evidence and proper jury instructions").[9]

In short, no reason exists for Defendants to require Dr. Longo to repeat his PLM analyses while their litigation experts observe. Those experts have already formulated opinions and issued reports based on the information they already have, including photomicrographs so clear that anyone can interpret them with their own

---

[9] *See generally* Omnibus Order on Mots. Exclude Expert Ops. at 47, 52, *In re Zantac (Ranitidine) Litig.*, No. N22C-09-101 ZAN (Del. Super. Ct. June 3, 2024), Ex. F (recognizing "the distinct roles of the Court as gatekeeper and that of the jury as the ultimate fact finder" and leaving "expert battles" for the jury to resolve).

eyes. And Defendants concede that the unprecedented inspection they request will not change those opinions. If Defendants want to challenge Dr. Longo's conclusions concerning the testing he has already done, they can do so before the jury.

### B. Defendants Request an Unduly Burdensome Inspection.

The Court should also overrule Defendants' objections to the Special Master's Order because the requested inspection will unduly burden Dr. Longo and MAS. Defendants seek to, over the course of days, enter Dr. Longo's laboratory to watch him and MAS technicians repeat PLM analyses they have already done and have no intention of doing again. The preparation (up to 72 hours) and analysis of <u>one</u> sample (two to four hours) can take days. *See* Fourth Suppl. MDL Report at 11; Longo MDL Dep., May 2, 2024, at 148. This would shut down MAS's operations for the inspection's duration and displace and impinge on its scientists' and technicians' work. As the Special Master observed, "the logistics of setting up and actually conducting defendants' requested tests will undoubtedly be time consuming, intrusive, and disruptive." Special Master Order No. 24 at 5-6.

Moreover, MAS conducts confidential and proprietary testing of many types for litigants in other cases, for non-litigation clients, and for governmental entities, including pharmaceutical testing, chemical analysis, children's product testing, VOC emissions, environmental testing, and materials failure testing. *See* www.mastest.com (accessed July 17, 2024). The work product privilege covers the

27

litigation work. MAS cannot, therefore, conduct the testing in this case when "testing would otherwise be occurring as part of [MAS's] regular lab activities" as Defendants' suggest. Defs.' Objs. at 35. Instead, MAS would need to cover or move other litigants' and clients' confidential, proprietary, and privileged information.

Of course, the intrusion of having a defense expert looking over the shoulder of Dr. Longo or another MAS scientist while they examine a sample under the microscope would also be unduly intrusive and stressful. Simply put, "[i]t is unreasonable to require MAS to accommodate defendants' experts and counsel at its laboratory when the requested inspection is irrelevant and unnecessary." Special Master Order No. 24 at 7.[10]

### III.   Defendants Attempt to Distract the Court with Irrelevant Information and Improper *Daubert* Arguments.

Defendants implicitly acknowledge the weakness of their inspection request by attempting to distract the Court with information and arguments that have no bearing on this discovery dispute. For example, Defendants spill considerable ink describing Dr. Longo's prior testing methods before admitting—repeatedly—that

---

[10] Defendants' complaint that Plaintiffs "submitted no evidence whatsoever that the inspection of Dr. Longo's lab would be unduly burdensome" lacks merit. Plaintiffs explained—with citations to a report, deposition, and website, i.e. evidence—the many burdens that Defendants' unprecedented and facially overbroad inspection would impose on Dr. Longo and MAS, which more than suffices. *See Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197 (D. Kan. 1996) ("A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support.").

whether "Dr. Longo used a different methodology in the past is of no moment to this motion." Defs.' Objs. at 7; *see also id.* at 28 ("That Dr. Longo may have used a different methodology in the past is of no moment."). Defendants' recurrent reference to this irrelevant information makes even less sense given their acknowledgment that Dr. Longo has "resolved" many of Defendants' prior complaints about his methodology. *Id.* at 3-4. Because this information "is of no moment to this motion," the Court can and should ignore it. *Id.* at 7.[11]

The Court should also reject Defendants' attempt to improperly inject irrelevant and distracting arguments about "the admissibility of Longo's testimony under Daubert and Rule 702" because they "are not appropriate at this juncture." Special Master Order No. 24 at 8.[12] Defendants can make arguments about the reliability of Dr. Longo's methodology and conclusions in its *Daubert* briefing, not in discovery motion practice. Defs.' Objs. at 33. As the court in one of the cases cited

---

[11] The Special Master appeared to address this issue simply because Defendants repeatedly raised it. *See* Special Master Order No. 24 at 5-6 (summarizing Defendants' arguments about Dr. Longo's methodological changes). The Special Master's decision to entertain this argument does not obligate the Court to do so. *See Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 625 F. Supp. 3d 309, 345 & n.18 (D.N.J. 2022) (reiterating that it "did not consider" information of which the Special Master took judicial notice).

[12] Defendants' reference to prior exclusions of Dr. Longo's testimony, including in two other cases decided many years ago, have even less bearing on this discovery motion. Defs. Objs. at 9. Indeed, they would not even be relevant to a *Daubert* motion. *See Rearden LLC v. Walt Disney Co.*, No. 17cv4006, 2023 WL 6796017, at *3 (N.D. Cal. Oct. 13, 2023) (refusing to consider "prior exclusions in determining whether [an expert's] testimony is admissible").

by Defendants explained: "It is premature during the discovery stage to make what is essentially an evidentiary ruling." *Ostrander*, 119 F.R.D. at 420.

In any event, Defendants' argument that Dr. Longo must either submit to their unprecedented and legally unsupported inspection or face exclusion flies in the face of the Federal Rules of Civil Procedure.[13] Nothing in Rule 37 entitles the party that <u>loses</u> a motion to compel to <u>any</u> relief, let alone relief far greater than what they would have obtained had they won the motion. In fact, Rule 37 does quite the opposite—it entitles the winning party, i.e., <u>Plaintiffs,</u> to relief, namely costs, attorneys' fees, and a protective order. *See* Fed. R. Civ. P. 37(a)(5)(B). Plaintiffs urge the Court to see through Defendants' diversionary tactics and identify their motion for what it is—unjustified harassment.

## CONCLUSION

For these reasons, the Court should overrule Defendants' objections to the Special Master's Order denying their motion to compel inspection of Dr. William Longo's laboratory and grant any other relief it deems proper, including Plaintiffs' costs and attorneys' fees incurred in opposing the motion.

---

[13] Although arguments about the admissibility of Dr. Longo's opinions "are not appropriate at this juncture," Special Master Order No. 24 at 8, Plaintiffs note that nothing in Federal Rule of Evidence 702 makes the admissibility of an expert's opinions dependent on him submitting to the opposing party's harassing discovery tactics.

Dated: July 22, 2024                    Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
***Plaintiffs' Co-Lead Counsel***

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com
***Plaintiffs' Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell