# EXHIBIT 38

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF NEW JERSEY
 2
 3      ------------------------------
                                       )
 4      IN RE JOHNSON & JOHNSON        )
        TALCUM POWDER PRODUCTS         )  MDL NO.
 5      MARKETING, SALES PRACTICES,    )  16-2738(FLW)(LHG)
        AND PRODUCTS LIABILITY         )
 6      LITIGATION                     )
                                       )
 7      ------------------------------
 8       IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                       STATE OF MISSOURI
 9
        VALERIE SWANN,                 )
10                                     )
             Plaintiff,                )
11                                     )  Cause No.
        v.                             )  1422-CC09326-03
12                                     )
        JOHNSON & JOHNSON, et al.,     )
13                                     )
             Defendants.               )
14      _____
15                       — — —
16              Monday, September 13, 2021
                         — — —
17
18           Oral Deposition of JUDITH WOLF, M.D.,
        held at the Fairmont Hotel, 101 Red River
19      Street, Austin, Texas, commencing at
        9:03 a.m. CDT, on the above date, before
20      Michael E. Miller, Fellow of the Academy of
        Professional Reporters, Certified Court
21      Reporter, Registered Diplomate Reporter,
        Certified Realtime Reporter and Notary
22      Public.
23                       — — —
24              GOLKOW LITIGATION SERVICES
              877.370.DEPS | fax 917.591.5672
25                  deps@golkow.com
```

Page 2

```
 1   A P P E A R A N C E S:
 2     BEASLEY ALLEN PC
       BY:  MARGARET M. THOMPSON, M.D., ESQUIRE
 3        margaret.thompson@beasleyallen.com
       218 Commerce Street
 4     Montgomery, Alabama 36104
       (334) 269-2343
 5     Counsel for Plaintiffs
 6
       ONDERLAW LLC
 7     BY:  CYNTHIA L. GARBER, ESQUIRE
          garber@onderlaw.com
 8     12 Corporate Plaza Drive
       Suite 275
 9     Newport Beach, California 92660
       (949)688-1799
10     Counsel for Plaintiffs
11
12     ASHCRAFT & GEREL LLP
       BY:  MICHELLE PARFITT, ESQUIRE
13        mparf@aol.com
       1825 K Street NW,
14     Suite 700
       Washington, D.C. 20006
15     (202)783-6400
       Counsel for Plaintiffs
16
17     BLASINGAME BURCH GARRARD & ASHLEY PC
       BY:  SARA SCHRAMM, ESQUIRE
18        sschramm@bbga.com
       440 College Avenue
19     Suite 320
       Athens, Georgia 30601
20     (706)354-4000
       Counsel for Plaintiffs
21
22
23
24
25
```

Page 3

```
 1   A P P E A R A N C E S:
 2     TUCKER ELLIS LLP
       BY:  MICHAEL C. ZELLERS, ESQUIRE
 3        michael.zellers@tuckerellis.com
       515 South Flower Street
 4     42nd Floor
       Los Angeles, California 90071
 5     (213) 430-3400
       Counsel for Johnson & Johnson Defendants
 6
 7     FAEGRE DRINKER BIDDLE & REATH LLP
       BY:  ERIC M. FRIEDMAN, ESQUIRE
 8        eric.friedman@faegredrinker.com
          (via Zoom)
 9     300 North Meridian Street
       Suite 2500
10     Indianapolis, Indiana 46204
       (317)237-0300
11     Counsel for Johnson & Johnson Defendants
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1            INDEX
 2     JUDITH WOLF, M.D.
 3     September 13, 2021
 4
 5   APPEARANCES                          2
 6   PROCEEDINGS                         10
 7
 8   EXAMINATION OF JUDITH WOLF, M.D.:
 9       BY MR. ZELLERS                  10
10
11   CERTIFICATE                        424
12   ERRATA                             426
13   ACKNOWLEDGMENT OF DEPONENT         427
14   LAWYER'S NOTES                     428
15
```

Page 5

```
 1            DEPOSITION EXHIBITS
 2     NUMBER                           MARKED
 3   Wolf-1     Notice of Deposition        12
 4   Wolf-2     Documents Produced by       16
 5              Plaintiffs to Dr. Wolf
 6   Wolf-3     7/2/21 MDL Expert Report    17
 7   Wolf-4     Redline of 7/2/21 Expert    17
 8              Report
 9   Wolf-5     Scientific Literature and   19
10              Other Sources
11   Wolf-6     8/11/21 Bondurant Expert    26
12              Report
13   Wolf-7     7/2/21 Gallardo Expert Report   27
14   Wolf-8     7/2/21 Judkins Expert Report    27
15   Wolf-9     7/16/21 Swann Expert Report     28
16   Wolf-10    Invoices                    29
17   Wolf-11    Summary of Comments on      68
18              IMERYS094601
19   Wolf-12    Summary of Comments on      72
20              IMERYS230366
21   Wolf-13    Excerpt from IARC 2012     123
22   Wolf-14    Excerpt from IARC 2012     157
23   Wolf-15    Complete IARC 2012 Monograph   157
24   Wolf-16    Excerpt from IARC 2010     157
25
```

Page 6

DEPOSITION EXHIBITS

| | | |
|---|---|---|
| Wolf-17 | Complete IARC 2010 Monograph | 158 |
| Wolf-18 | Relation of Particle Dimension to Carcinogenicity in Amphibole Asbestoses... by Stanton et al | 159 |
| Wolf-19 | Mineralogical Features Associated with Cytotoxic and Proliferative Effects of Fibrous Talc... by Wylie et al | 159 |
| Wolf-20 | Association of Powder Use in the Genital Area with Risk of Ovarian Cancer, by O'Brien et al | 170 |
| Wolf-21 | Use of Powder in the Genital Area and Ovarian Cancer Risk, by Gossett et al | 186 |
| Wolf-22 | 6/30/21 Siemiatycki Amended Expert Report | 192 |
| Wolf-23 | Talcum Powder Induces a Malignant Transformation in Normal Ovarian Epithelial Cells Poster | 194 |

Page 7

DEPOSITION EXHIBITS

| | | |
|---|---|---|
| Wolf-24 | Talcum Powder Induces Malignant Transformation of Human Primary Normal Ovarian Epithelial Cells But Not Human Primary Normal Peritoneal Fibroblasts Poster | 228 |
| Wolf-25 | Kleiner Trial Testimony | 246 |
| Wolf-26 | Health Canada Screening Assessment | 285 |
| Wolf-27 | Clinical Presentation of Endometrioid Epithelial Ovarian Cancer with Concurrent Endometriosis... by Lim et al | 332 |
| Wolf-28 | Risk of Endometrial Polyps in Women with Endometriosis... by Zheng et al | 334 |
| Wolf-29 | Medical Record(s), GALLARDO_ANNA_BJH_00011 - GALLARDO_ANNA_BJH_00014 | 337 |
| Wolf-30 | Medical Record(s), GALLARDO_ANNA_BJH_00033 - GALLARDO_ANNA_BJH_00037 | 344 |

Page 8

DEPOSITION EXHIBITS

| | | |
|---|---|---|
| Wolf-31 | Endometriosis and Infertility, by Bulletti et al | 346 |
| Wolf-32 | Epithelial Mutations in Endometriosis: Link to Ovarian Cancer, by Bulun et al | 351 |
| Wolf-33 | Medical Record(s), GALLARDO_ANNA_DRWASSERMAN_00001 - GALLARDO_ANNA_DRWASSERMAN_00014 | 358 |
| Wolf-34 | Examining the Associations Among Fibrocystic Breast Change, Total Lean Mass, and Percent Body Fat, by Chen et al | 359 |
| Wolf-35 | Caesarean Section and Risk of Endometriosis... by Andolf et al | 363 |
| Wolf-36 | Morphological and Immunohistochemical Re-evaluation of Tumors Initially Diagnosed as Ovarian Cancer... by Lim et al | 371 |

Page 9

DEPOSITION EXHIBITS

| | | |
|---|---|---|
| Wolf-37 | Risk of Gynecologic Cancer According to the Type of Endometriosis, by Saavalainen et al | 373 |
| Wolf-38 | 7/21/21 Godleski Expert Report re: Gallardo | 377 |
| Wolf-39 | Perineal Exposure to Talc and Ovarian Cancer Risk, by Harlow et al | 387 |

Page 10

```
 1         ------------
 2       P R O C E E D I N G S
 3    September 13, 2021, 9:03 a.m. CDT
 4         ------------
 5       JUDITH WOLF, M.D.,
 6     having been duly sworn,
 7     testified as follows:
 8         ------------
 9        EXAMINATION
10         ------------
11  BY MR. ZELLERS:
12     Q.   Can you state your name,
13  please?
14     A.   Dr. Judith Wolf.
15     Q.   Dr. Wolf, my name is Michael
16  Zellers, and I'm here on behalf of the
17  Johnson & Johnson defendants for purposes of
18  both the MDL and also the Swann state court
19  cases.  So I'll have a number of questions
20  for you over the course of the deposition,
21  which will go today and tomorrow.
22         If at any time you don't
23  understand a question that I ask, please tell
24  me you don't understand it, and I'll repeat
25  it or rephrase it.
```

Page 11

```
 1         If there is any reason you need
 2  to take a break, just tell me, and that will
 3  be fine, once we complete, you know, whatever
 4  question or questioning we're doing.
 5         Do you have any questions
 6  before we start?
 7     A.   I don't think so.  Thank you.
 8     Q.   All right.  You have done this
 9  before; is that right?
10     A.   I have.
11     Q.   I understand that you were
12  deposed in the MDL ovarian cancer talc
13  proceedings back in January of 2019; is that
14  right?
15     A.   That's correct.
16     Q.   I also understand that you
17  testified in the Kleiner trial within the
18  last several weeks; is that correct?
19     A.   That's correct.
20     Q.   Other than your MDL deposition
21  and the Kleiner trial testimony, have you
22  given any other deposition or trial testimony
23  related to talc or talc products?
24     A.   No.
25     Q.   You -- well, let me ask you.
```

Page 12

```
 1         Did you receive a copy of the
 2  notice of deposition, which we'll mark as
 3  Exhibit 1?
 4         (Whereupon, Deposition Exhibit
 5     Wolf-1, Notice of Deposition, was
 6     marked for identification.)
 7     A.   I did.
 8  BY MR. ZELLERS:
 9     Q.   Did you have a chance to review
10  that notice of deposition?
11     A.   I did.
12     Q.   Did you provide any responsive
13  documents to the notice of deposition to
14  counsel for the plaintiffs in this
15  litigation?
16     A.   I did not.
17     Q.   All right.  Did you provide any
18  documents to counsel for plaintiffs in this
19  litigation that were responsive to the
20  deposition notice, which we've marked as
21  Exhibit 1?
22     A.   I did not.
23     Q.   Is it my understanding, then,
24  that you relied upon counsel to collect and
25  provide any responsive documents to the
```

Page 13

```
 1  deposition notice?
 2         MS. GARBER:  Object.
 3         DR. THOMPSON:  Object to form.
 4     A.   My understanding of the
 5  question you asked is once I received this,
 6  did I provide them anything.
 7         I received this yesterday, so
 8  since that time, I have not given anything to
 9  plaintiffs' attorneys.
10  BY MR. ZELLERS:
11     Q.   Did you have an opportunity to
12  review the deposition notice?
13     A.   I did.
14     Q.   Did you look at the documents
15  that were requested that you produced?
16     A.   Yes.
17     Q.   Do you believe that all of
18  those documents, to the extent they were or
19  are in your possession, have been provided to
20  counsel for plaintiffs in this litigation?
21     A.   Yes.
22     Q.   You have relied upon counsel
23  for plaintiffs in this litigation to produce
24  the documents responsive to the deposition
25  notice, Exhibit 1; is that right?
```

Page 414

1 class 1 carcinogen. And it's the combination
2 of that, the use of that talcum powder that
3 caused her cancer.
4 BY MR. ZELLERS:
5     Q.    What is your evidence of that?
6           DR. THOMPSON: Object.
7 BY MR. ZELLERS:
8     Q.    I understand your opinion with
9 respect to talc.
10    A.    That's what she used. That's
11 what she used and that's what has been found
12 in talcum powder.
13    Q.    What evidence do you have that
14 any heavy metal contained in Johnson's Baby
15 Powder causes endometrioid ovarian cancer?
16          DR. THOMPSON: Object to form.
17    A.    I don't know that there's any
18 evidence, but I don't know that anybody's
19 ever studied specifically those heavy metals,
20 chromium, nickel, cobalt, which can be
21 carcinogenic, cause ovarian cancer
22 specifically. They're carcinogenic.
23 BY MR. ZELLERS:
24    Q.    Your opinion is that it's talc,
25 whatever the talc --

Page 415

1     A.    It's the product.
2     Q.    -- the product contains, that
3 caused Ms. Gallardo's endometrioid ovarian
4 cancer, correct?
5     A.    It's a cause of her cancer.
6     Q.    You're not trying to separate
7 out the constituent parts of the talc to say
8 that part of the talc is the cause of the
9 endometrioid ovarian cancer?
10    A.    I'm not. I'm saying what's in
11 the product, what has been found in the
12 product, there are multiple things that are
13 carcinogens.
14    Q.    You are not going to come to
15 trial and say it was asbestos contamination
16 in some bottles she used that cause ovarian
17 cancer; fair?
18          DR. THOMPSON: Object.
19 BY MR. ZELLERS:
20    Q.    You're going to say it was the
21 use of the product with whatever constituent
22 parts it contained?
23          DR. THOMPSON: Object to form.
24          MS. GARBER: Object to the
25    form.

Page 416

1     A.    It's the use of the product,
2 and in evaluating her tissues, there was
3 evidence of talc fibers and asbestos fibers.
4 BY MR. ZELLERS:
5     Q.    Are you aware of whether or not
6 any bottle of Johnson's Baby Powder that
7 Ms. Gallardo claims to have used was ever
8 tested for any potential contaminants?
9     A.    Since the last time she opined
10 that she used it was in 1988, unless she
11 keeps a lot of things around for a long time,
12 I would -- I would be amazed if it was.
13    Q.    You're not one of
14 Ms. Gallardo's treating physicians; is that
15 right?
16    A.    I am not.
17    Q.    You're not involved in her
18 diagnosis or treatment with respect to
19 ovarian cancer, correct?
20    A.    I am not.
21    Q.    You've never met Ms. Gallardo;
22 is that right?
23    A.    I have not.
24    Q.    Have you ever spoken with her
25 husband?

Page 417

1     A.    No.
2     Q.    Her child?
3     A.    No.
4     Q.    Did you ask the lawyers if you
5 could meet with or speak to Ms. Gallardo's
6 family?
7     A.    No.
8     Q.    Have you ever determined the
9 cause of an individual's ovarian cancer in
10 your practice, your clinical practice,
11 without meeting them?
12    A.    Yes.
13    Q.    Under what circumstance?
14    A.    So phone consultations from
15 other physicians. Tumor boards where we talk
16 about patients that I've never seen or met
17 that are my colleagues' patients. Many
18 times.
19    Q.    Have you ever spoken with any
20 of Ms. Gallardo's treating physicians about
21 her case?
22    A.    No.
23    Q.    In your case-specific report,
24 pages 29 to 31, you list the case-specific
25 materials on which you rely; is that right?

Page 422

1  A. The testing today often has
2  more genes, yes.
3  BY MR. ZELLERS:
4  Q. You're aware that
5  Ms. Gallardo's mother had a ▇▇▇▇▇
6  ▇▇▇▇▇▇▇▇ in her forties?
7  A. I don't recall that from her
8  records.
9  Q. Do you know whether or not
10 Ms. Gallardo's mother had her ▇▇▇ removed
11 during her ▇▇▇▇▇▇▇?
12 A. I don't.
13 Q. If she did have her ▇▇▇
14 removed, that would prevent her from
15 developing ovarian cancer, correct?
16 A. Most of the time.
17 Q. So we just don't know whether
18 Ms. Gallardo's mother would have developed
19 any type of gynecologic cancer, including
20 ovarian cancer, correct?
21   DR. THOMPSON: Object to form.
22   MS. GARBER: Object to the
23 form.
24 A. We don't know about her
25 ovaries. We know she had here ▇▇▇ out.

Page 423

1  We don't know about her ovaries or her
2  fallopian tubes. So I don't think there's
3  any information to add to that one way or
4  another.
5      MR. ZELLERS: All right. Let's
6  end for today. Because we went out of
7  order on this case, I may have a few
8  follow-up questions tomorrow, but I've
9  covered at least the bulk of my
10 questions relating to Ms. Gallardo.
11     So we'll come back in the
12 morning, and we will do the other
13 three cases.
14     THE WITNESS: Okay.
15     MR. ZELLERS: Okay. We're off
16 the record.
17     (Time noted: 6:01 p.m. CDT)
18          --o0o--

Page 424

CERTIFICATE

I, MICHAEL E. MILLER, Fellow of the Academy of Professional Reporters, Registered Diplomate Reporter, Certified Realtime Reporter, Certified Court Reporter and Notary Public, do hereby certify that prior to the commencement of the examination, JUDITH WOLF, M.D. was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that pursuant to FRCP Rule 30, signature of the witness was not requested by the witness or other party before the conclusion of the deposition.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

MICHAEL E. MILLER, FAPR, RDR, CRR
Fellow of the Academy of Professional Reporters
NCRA Registered Diplomate Reporter
NCRA Certified Realtime Reporter
Certified Court Reporter

Notary Public in and for the
State of Texas
My Commission Expires: 7/9/2024

Dated: September 16, 2021

Page 425

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.