# EXHIBIT 77

Attorneys Eyes Only

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF NEW JERSEY
 3                          --o0o--
 4    IN RE:  JOHNSON & JOHNSON TALCUM
      POWDER PRODUCTS MARKETING, SALES     MDL NO. 16-2738
 5    PRACTICES, AND PRODUCTS LIABILITY    (FLW) (LHG)
      LITIGATION
 6    ---------------------------------
 7    This Document Relates to All
      Cases and Also to:                   Case No.
 8                                         1422-CC09326-03
      Valerie Swann v. Johnson &           Division 10
 9    Johnson, et al.,
10    _____/
11
                   ATTORNEYS EYES ONLY DESIGNATION
12
                           --  --  --
13
                    FRIDAY, OCTOBER 1, 2021
14
                           --  --  --
15         In-Person Stenographic Deposition of REBECCA
      SMITH-BINDMAN, M.D., conducted at the La Meridian
16    Hotel, 333 Battery Street, San Francisco, California,
      beginning at 9:40 a.m. Pacific Time, before Sandra
17    Bunch VanderPol, FAPR, RMR, CRR, CSR #3032
18                         --  --  --
19
20
21
22    _____
23                  GOLKOW LITIGATION SERVICES
                  877.370.3377 ph/917.591.5672
24                     Deps@golkow.com
25
```

Page 2

1  APPEARANCES:
2
   For the Plaintiffs:
3
      LEIGH O'DELL, ESQUIRE
4     MARGARET THOMPSON, ESQUIRE (Via Zoom)
      Beasley, Allen, Crow, Methvin, Portis &
5     Miles, P.C.
      218 Commerce Street
6     Montgomery, Alabama 36104
      (800) 898-2034
7     Leigh.Odell@BeasleyAllen.com
8  -and-
9     DANIEL R. LAPINSKI, ESQUIRE (Via Zoom)
      Motley Rice LLC
10    210 Lake Drive East, Site 101
      Cherry Hill, New Jersey 08002
11    (856) 667-0500
      Dlapinski@motleyrice.com
12
13 For the Defendant Johnson & Johnson:
14    MICHAEL C. ZELLERS, ESQUIRE
      Tucker Ellis LLP
15    515 South Flower Street, 42nd Floor
      Los Angeles, California 90071
16    (213) 430-3420
      Michael.Zellers@tuckerellis.com
17
   -and-
18
      JESSICA BRENNAN, ESQUIRE (Via Zoom)
19    Faegre Drinker Biddle & Realth LLP
      600 Campus Drive
20    Florham Park, New Jersey 07932-1047
      (973) 549-7164
21    jessica.brennan@faegredrinker.com
22
23 Also Appearing Via Zoom:  Christine Haas, Principal
   Campus Counsel UCSF
24
25        --o0o--

Page 3

             I N D E X
   Examination by:                    Page
    MR. ZELLERS                         6
    MS. O'DELL                        202
    MR. ZELLERS                       226
              --o0o--

           E X H I B I T S

   Exhibit #      Description          Page

   Exhibit 1   Defendants Johnson & Johnson    7
               Consumer Inc. And Johnson &
               Johnson's First Set of Requests
               for the Production of Documents to
               Rebecca Smith-Bindman, MD; 7 pages

   Exhibit 2   MDL Notice of Oral and Videotaped    9
               Deposition of Rebecca
               Smith-Bindman, MD and Duces Tecum;
               9 pages
   Exhibit 3   Defendants Johnson & Johnson and    9
               Johnson & Johnson Consumer
               Companies, Inc.'s Notice With
               Subpoena Duces Tecum of Deposition
               of Rebecca Smith-Bindman, MD;
               7 pages

   Exhibit 4   September 22, 2021 Production,    12
               multiple documents
   Exhibit 5   September 27, 2021 Production,    13
               multiple documents

   Exhibit 6   September 29, 2021 Production,    13
               multiple documents
   Exhibit 7   Unredacted Production; 10 pages    13
   Exhibit 8   Dr. Smith-Bindman's Invoices,     17
               dated June 2017 through September
               2021, multiple pages
   ///

Page 4

           E X H I B I T S
   Exhibit #      Description          Page
   Exhibit 9   Amended Expert Report of Rebecca    18
               Smith-Bindman, MD; 123 pages

   Exhibit 10  Rule 26 Expert Report of Rebecca    19
               Smith-Bindman, MD; 113 pages
   Exhibit 11  Redline - Amended Expert Report of    19
               Rebecca Smith-Bindman, MD;
               206 pages
   Exhibit 12  Exhibit A:  Curriculum Vitae of    20
               Rebecca Smith-Bindman, MD;
               35 pages
   Exhibit 13  Exhibit B:  Scientific Literature    21
               and Other Sources List; 29 pages

   Exhibit 14  Exhibit C:  Rebecca Smith-Bindman,    23
               MD, Medical/Legal Testimony in
               last 5 years; 2 pages

   Exhibit 15  Updated and current Curriculum      21
               Vitae of Rebecca Smith-Bindman, MD
               (to be proved by Plaintiffs'
               Counsel to court reporter)
   Exhibit 16  Dropbox Production, multiple pages  25
   Exhibit 17  2016 Cramer article titled, "The    162
               Association Between Talc Use and
               Ovarian Cancer," A Retrospective
               Case-Control Study in Two US
               States," published in
               "Epidemiology"; 36 pages

   Exhibit 18  2004 Mills publication titled,     162
               "Perineal Talc Exposure and
               Epithelial Ovarian Cancer Risk In
               the Central Valley of California,"
               published in "Cancer"; 7 pages

   Exhibit 19  1997 Chang publication titled,     166
               "Perineal Talc Exposure and Risk
               of Ovarian Carcinoma"; 6 pages

Page 5

           E X H I B I T S
   Exhibit #      Description          Page
   Exhibit 20  1997 Cook publication titled,      167
               "Perineal Powder Exposure and the
               Risk of Ovarian Cancer," published
               in "American Journal of
               Epidemiology"; 7 pages
   Exhibit 21  2000 Gertig article titled,        168
               "Prospective Study of Talc Use and
               Ovarian Cancer" published in the
               "Journal of the National Cancer
               Institute"; 4 pages
   Exhibit 22  2021 Health Canada Screening       173
               Assessment; 71 pages

   Exhibit 23  O'Brien publication, "Association  202
               of Powder Use in the Genital Area
               With Risk of Ovarian Cancer,"
               published in JAMA; 11 pages




              --o0o--

Page 6

1   BE IT REMEMBERED that on Friday, the 1st
2   day of October, 2021, commencing at the hour of
3   9:40 a.m. Pacific Time, conducted at the Le Meridian
4   Hotel, 333 Battery Street, San Francisco, California,
5   before me, Sandra Bunch VanderPol, a Certified
6   Shorthand Reporter in and for the State of
7   California, personally appeared.
8         REBECCA SMITH-BINDMAN, M.D.,
9   Expert witness herein, who, having been duly
10  sworn, was thereupon examined and interrogated as
11  hereinafter set forth.
12            --o0o--
13        THE REPORTER: Raise your right hand,
14  please.
15        Do you solemnly swear or affirm that the
16  testimony you are about to give in this proceeding
17  will be the truth, the whole truth, and nothing but
18  the truth, so help you God?
19        THE WITNESS: I do.
20            EXAMINATION
21  BY MR. ZELLERS:
22  Q.    Can you state your name for the record,
23  please.
24  A.    Rebecca Smith-Bindman.
25  Q.    Dr. Smith-Bindman, my name is Michael

Page 7

1   Zellers, and I am here today on behalf of the
2   Johnson & Johnson defendants, both in the MDL talc
3   ovarian cancer MDL proceeding and also for the
4   Missouri State Court of Swann.
5         I have got some questions for you. Any
6   reason that we cannot proceed?
7   A.    No.
8         (Exhibit No. 1 was marked.)
9   BY MR. ZELLERS:
10  Q.    I have placed in front of you a number of
11  documents, which are exhibits to this deposition. So
12  what I would like to do with you at the outset is go
13  through those documents and just ask you some
14  questions and have you confirm what those documents
15  are.
16        Deposition Exhibit 1 is the request for
17  production relating to your unpublished study; is
18  that correct?
19  A.    Yes.
20  Q.    You will see that that document request --
21  withdraw that.
22        The deposition notice includes a document
23  request, and you have seen that request for
24  production before; correct?
25  A.    I have, yes.

Page 8

1   Q.    And have you worked with counsel for the
2   plaintiffs to respond to that request for production?
3   A.    Yes, I have.
4         MS. O'DELL: I will just state for the
5   record, we have worked with Dr. Smith-Bindman
6   consistent with Judge Schneider's rulings in this
7   case to produce all of the materials in her custody
8   and control in response.
9   BY MR. ZELLERS:
10  Q.    Dr. Smith-Bindman, you understand when I use
11  the word "unpublished study," that we're referring to
12  the study that's referenced in the request for
13  production of documents that have been marked as
14  Exhibit 1; correct?
15  A.    Yes.
16  Q.    Have you, to the best of your knowledge,
17  produced all documents that are responsive to the
18  request for production relating to your unpublished
19  study?
20  A.    Yes.
21  Q.    Are there any additional documents that you
22  believe need to be produced or may be produced at
23  some later time?
24  A.    No.
25  Q.    Any other searches you need to make for

Page 9

1   documents responsive to Deposition Exhibit 1?
2   A.    No.
3         (Exhibit No. 2 was marked.)
4         (Exhibit No. 3 was marked.)
5   BY MR. ZELLERS:
6   Q.    Deposition Exhibit 2 is the MDL Notice of
7   Deposition for today. And Deposition Exhibit 3 is
8   the deposition notice in the Swann case; is that
9   correct?
10  A.    Yes.
11  Q.    Both Deposition Exhibit 2 and 3 request that
12  you bring certain documents or produce certain
13  documents in connection with this deposition. Do you
14  see that?
15  A.    I do. I'm not sure that I saw the notice
16  about the Swann case.
17  Q.    I received the notice of the Swann case
18  yesterday evening. So --
19        MS. O'DELL: I'm not sure I have seen the
20  notice to the Swann case either. But there may be
21  some objections on the requests. I need to make the
22  objection on the record. I can do that now and you
23  could ask Dr. Smith-Bindman questions.
24        MR. ZELLERS: You are reserving all your
25  rights to objections to the deposition notice, which

Page 154

1  conducting discovery in a small number of potential
2  cases to go to trial?
3  A.     I don't have a deep understanding, but I
4  know they are doing something like that.
5  Q.     All right. Are you aware of any of the
6  specific plaintiffs or the names of any of the
7  plaintiffs that are in the smaller potential trial
8  pool?
9  A.     I am not.
10 Q.     Have you reviewed any medical records for
11 any of the plaintiffs in the pool of potential trial
12 cases?
13 A.     I have not.
14 Q.     Have you requested the opportunity to look
15 at any medical records of any of the plaintiffs in
16 the set of potential trial cases?
17 A.     I have not.
18 Q.     Are you aware of the types of ovarian
19 cancers that any of the plaintiffs in the pool of
20 potential trial cases have?
21 A.     I believe I was told that there are
22 different kinds, but not -- but I don't know more
23 than that about the cases.
24 Q.     Are you aware of any of the specific risk
25 factors that any of the plaintiffs in the pool of

Page 155

1  potential trial cases have?
2  A.     No.
3  Q.     With respect to your -- or any amendments to
4  the systematic meta-analysis, in your updated or
5  amended MDL report, you removed the Forrest Plot that
6  showed the odds of ovarian cancer associated with
7  regular use of talcum powder products and invasive
8  serous cancer; is that right?
9  A.     I believe that that is correct.
10 Q.     Do you want to look at -- why don't you take
11 a look at the redline amended report, page 65.
12 A.     Yes.
13 Q.     Why did you delete that Forrest Plot from
14 your amended report? The Forrest Plot that --
15        MS. O'DELL: I'm sorry.
16        MR. ZELLERS: Ms. O'Dell, page 65,
17 Deposition Exhibit 11, the redline expert report.
18 Q.     The Forrest Plot dealt with invasive serous
19 cancer; correct?
20 A.     Yes.
21 Q.     You removed that from your amended report;
22 correct?
23 A.     Yes.
24 Q.     Why did you do that?
25 A.     I wanted -- the amended report was an

Page 156

1  opportunity for me to think about some of these
2  issues more, and I wanted to focus more broadly on
3  ovarian cancer, which is what I thought the
4  literature supported, and not focus quite as much on
5  serous.
6        I wanted to make it a more general opinion,
7  and so I thought the strongest way to support that
8  was to show the graph with all cancer types.
9  Q.     And then you amended or changed your
10 conclusion -- and I'm looking now on page 65 of the
11 redline -- "New Systematic Meta-Analysis Review:
12 Summary." Do you see that?
13 A.     Yes.
14 Q.     You amended your conclusion to state:
15        (Reading) The results of the more
16        focused review of studies on
17        regular talcum powder use and
18        ovarian cancer risk were consistent
19        and indicate an approximate
20        43 percent increase in risk of
21        cancer related to routine talcum
22        powder exposure compared to no
23        exposure (end of reading).
24        Is that correct?
25 A.     Yes.

Page 157

1  Q.     This 43 percent increase in risk, you're now
2  including all epithelial ovarian cancer subtypes, and
3  you've dropped the focus on invasive serous cancer;
4  is that right?
5  A.     I think the 43 percent is in the figure that
6  was in both -- both versions of it. So I just
7  summarized -- I chose to highlight the 43 percent
8  increase in all cancer in this section rather than
9  the 50 percent increase in serous cancer.
10 Q.     You agree that understanding ovarian cancer
11 histological types is important because the risk
12 factors, etiology and genetics of ovarian cancer, can
13 vary by histological type; is that right?
14 A.     Yes.
15 Q.     You agree that the importance of talcum
16 powder products as a risk factor or a cause can also
17 vary by type?
18        MS. O'DELL: Object to the form.
19 BY MR. ZELLERS:
20 Q.     I'm reading from your report --
21 A.     Yes.
22 Q.     -- your amended report, page 8?
23 A.     Yes.
24 Q.     And you agree that epidemiological studies
25 will have the greatest ability to document a clear

Attorneys Eyes Only

Page 230

1  the original hard copy deposition exhibits; that we
2  will transmit electronic copies of all of the
3  exhibits to the court reporter, with the exception of
4  Exhibit 15, which is the amended -- or the updated CV
5  for Dr. Smith-Bindman.  And, Ms. O'Dell, you will
6  communicate that to the court reporter?
7        MS. O'DELL:  I sure will.
8        MR. ZELLERS:  All right.  Thank you.
9        (Whereupon, the deposition was concluded at
10  3:34 p.m.)
11            --o0o--

Page 231

1        CERTIFICATE OF REPORTER
2     I, SANDRA BUNCH VANDER POL, a Certified
3  Shorthand Reporter, hereby certify that the witness
4  in the foregoing deposition was by me duly sworn to
5  tell the truth, the whole truth and nothing but the
6  truth in the within-entitled cause;
7        That said deposition was taken down in
8  shorthand by me, a disinterested person, at the time
9  and place therein stated, and that the testimony of
10  the said witness was thereafter reduced to
11  typewriting, by computer, under my direction and
12  supervision;
13       That before completion of the deposition,
14  review of the transcript was NOT requested.  If
15  requested, any changes made by the deponent (and
16  provided to the reporter) during the period allowed
17  are appended hereto.
18       I further certify that I am not of counsel or
19  attorney for either or any of the parties to the said
20  deposition, nor in any way interested in the event of
21  this cause, and that I am not related to any of the
22  parties thereto.
23  DATED:  October 11, 2021
24       _____
         SANDRA BUNCH VANDER POL, CSR #3032
25