# Exhibit 35



**PohlmanUSA®**
Court Reporting and
Litigation Services

William E. Longo, PH.D.

September 17, 2021

Susan L. Bonnem

vs.

Walgreen, Co., et al.

```
          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                 COUNTY DEPARTMENT - LAW DIVISION


    SUSAN L. BONNEM,              )
                                  )
              PLAINTIFF,          )
                                  )
    vs.                           ) In Re:  Asbestos
                                  ) Litigation Calender J1
                                  )
                                  ) Court No. 20 L 012414
    WALGREEN, CO., ET AL.,        )
                                  )
              DEFENDANTS.         )
```

DEPOSITION OF WILLIAM E. LONGO, PH.D.
TAKEN ON BEHALF OF THE DEFENDANTS
SEPTEMBER 17, 2021

Elizabeth A. Goodwin, RPR, IL-CSR, MO-CCR
CSR No. 084.004310
CCR No. 831

## Page 2

```
 1        INDEX OF EXAMINATION
 2   QUESTIONS BY MR. EWALD ..........5
     QUESTIONS BY MR. LARSON .........43
 3   QUESTIONS BY MR. ULLOA ..........47
     QUESTIONS BY MS. MICHELAU .......78
 4   QUESTIONS BY MR. LARSON .........88
 5
 6        INDEX OF EXHIBITS
 7   Exhibit 1, E-mail chain, July 22, 2021 (K. ....9
            Molyneaux to M. Cooney)
 8   Exhibit 2, E-mail chain, July 22, 2021 (M. ...12
            Cooney to J. Cunningham)
 9   Exhibit 3, MAS Invoice 7/26/21 .........15
     Exhibit 3, Testing results ............52
10       (Mr. Ulloa's exhibit)
     Exhibit 4, MAS chart of J&J testing, 8/7/21 ..21
11   Exhibit 5, Appendix A Johnson & Johnson ......22
            Reliance and Reviewed Documents
12   Exhibit 6, Dr. William Longo's Selected ......23
            Reference and Reliance Materials
13   Exhibit 7, Exposure calculation ..........26
14
15       (Exhibit 1-7 marked by Mr. Ewald attached to
16   transcript. Exhibit 3 marked by Mr. Ulloa retained by
17   Mr. Ulloa.)
```

## Page 3

```
 1   IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
           COUNTY DEPARTMENT - LAW DIVISION
 2
 3   SUSAN L. BONNEM,      )
                           )
 4       PLAINTIFF,        )
                           )
 5   vs.            ) In Re:. Asbestos
                    ) Litigation Calender  J1
 6                  )
                    ) Court No. 20 L 012414
 7   WALGREEN, CO., ET AL., )
                           )
 8       DEFENDANTS.       )
```

REMOTE DEPOSITION OF WILLIAM E. LONGO, PH.D., produced, sworn, and examined on behalf of Defendants, SEPTEMBER 17, 2021, between the hours of 9:00 (CT) in the forenoon and 11:40 (CT) in the forenoon of that day, via Zoom, before Elizabeth A. Goodwin, RPR, CSR NO. 084.004310, CCR No. 831.

## Page 4

A P P E A R A N C E S

Attended Remotely: Plaintiff, represented by Mr. Michael Cooney (Mr. Charles Porretta, Mr. David Barrett and Ms. Judith Conway) of the law firm of Cooney & Conway, 120 North LaSalle Street Suite 3000, Chicago, IL 60602.

Attended remotely: Walgreens Company, Jewell OSCO, represented by Ms. Amy Michelau, of the law firm of Barnes & Thornburg, LLP, One North Wacker Drive Suite 4400, Chicago, IL 60606.

Attended remotely: Revlon, Inc., represented by Mr. Edward R. Ulloa, of the law firm of Hawkins Parnell & Young, LLP, 445 South Figueroa Street, Suite 3200 , Los Angeles, CA 90071.

Attended remotely: Whittaker, Clark and Daniels, Inc, represented by Mr. Chris Larson, of the law firm of Heyl, Royster, Voelker & Allen, 300 Hamilton Boulevard, Peoria, IL 61601.

Attended remotely: Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc., represented by Mr. H. Patrick Morris, of the law firm of Johnson & Bell, 33 West Monroe Street Suite 2700, Chicago, IL 60603.

Attended remotely: Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc., represented by John Ewald, of the law firm of King & Spalding, 1180 Peachtree Street NE, Atlanta, GA 30309.

Attended Telephonically: Kerr Corporation, represented by Mr. Richard P. Tauras, of the law firm of Swanson, Martin & Bell, LLP, 330 North Wabash Suite 3300, Chicago, IL 60611.

## Page 5

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the Plaintiff and counsel for the Defendants, that this remote deposition may be taken in shorthand by Elizabeth A. Goodwin, a Registered Professional Reporter, Illinois Certified Shorthand Reporter, No. 084.004310, and Missouri Certified Court Reporter, No. 831, and afterwards transcribed into typewriting, and the signature of the witness is waived by agreement of counsel and the witness.

          0-0-0

   COURT REPORTER: Doctor, would you raise your right hand, please?
          WILLIAM E. LONGO, PH.D.,
of lawful age, being produced, sworn, and examined on the part of the defendants, and after responding "Yes, I do" to the oath administered by the court reporter, deposes, and says:
          * * * * * * * * * * *
          [EXAMINATION]
   BY MR. EWALD:
   Q   Dr. Longo, for the record, where are you today?
   A   In my conference room at MAS.
   Q   And is there anyone in the room with you?

EXAMINATION BY MR. EWALD

```
 1   need to write it down or put it in there, but I did --
 2   I did take notice of it.  And those are my opinions
 3   about any potential exposure from those two products.
 4        Q   We talked about the exposures relating to
 5   cosmetic talc, and we've talked about whether or not
 6   there were any exposures to asbestos at the -- when
 7   she was a dental assistant.  Have you identified any
 8   other potential exposures to asbestos that Ms. Bonnem
 9   had?
10        A   I didn't see any -- any -- I didn't see that
11   she would have had any significant exposure.  There
12   was very little remodeling, if I remember right.  You
13   know, construction of the various places she lived.  I
14   saw the conflict about the -- her doctor's notes that
15   I guess her boyfriend, at the time -- somewhere the
16   doctor wrote down that, you know, he would have been
17   removing or install -- removing thermal insulation.
18   And Susan said her husband, boyfriend, husband,
19   only -- boyfriend, only worked in a vitamin
20   manufacturing plant, and he worked on machinery.  And
21   she does not understand how that information could
22   have been transmitted to the doctor cause that's not
23   anything he would have done.  So we have two
24   conflicting opinions.
                                                        30
```

```
 1        I can't make a decision on that, you know,
 2   one way or another.  If the -- if he had been removing
 3   asbestos-containing thermal insulation in products,
 4   obviously, and brought his clothes home, obviously,
 5   there would have been exposure.
 6        If he worked in a vitamin plant just to make
 7   sure the machines were running correctly, then, no.
 8   That would have to be up to the jury to decide.
 9        Q   Apart from reviewing the deposition
10   transcripts of Ms. Bonnem, did you conduct any
11   additional investigation into potential exposures for
12   asbestos?
13        A   No, I didn't feel I had to.  The
14   depositions -- in the depositions, the discovery
15   portions of the depositions, the -- I felt that the
16   defense attorneys did an excellent job in exploring
17   all aspects of potential exposure.  I'm not sure what
18   else I could do.
19        Q   Dr. Longo, you testified for a number of
20   days in the Prudencio case, right?
21        A   Only four-and-a-half.
22        Q   And I said -- so, the record's clear, we're
23   talking about testifying at -- you know what I meant.
24        A   Yes, I know what you meant.
                                                        31
```

```
 1        Q   I was referring to the trial, not the
 2   deposition, right?
 3        A   No.  The trial was -- I think I was there
 4   four days, four-and-a-half days.  And I think some of
 5   that had to do with the fact that the court was over
 6   at 1:30 in the afternoon.  It was one-and-a-half days
 7   on direct and Mr. Dubin (phonetic) did a very thorough
 8   job over his two days or so.
 9            MR. LARSON:  I'm sorry to interrupt.  This
10   is Chris Larson.
11            Could you spell the name of that case?
12            MR. EWALD:  Sure.  Yeah.  It's Prudencio,
13   P-r-u-d-e-n-c-i-o, out in California.
14            MR. LARSON:  Thank you.
15            MR. EWALD:  No problem.
16        Q   (By Mr. Ewald) And are you aware that
17   Dr. Sanchez testified in that Prudencio matter after
18   you gave testimony?
19        A   Yes.
20        Q   And have you reviewed Dr. Sanchez's trial
21   testimony in the Prudencio case?
22        A   I have not.
23        Q   Have you reviewed any reports -- withdrawn.
24            Are you aware of Dr. Sanchez's discussion in
                                                        32
```

```
 1   the context of your -- MAS's POM Colorado School of
 2   Mines' analysis of the need for white balancing in the
 3   photographs taken of that analysis?  Have you heard
 4   anything about that?
 5        A   I heard about the white balancing.
 6        Q   And before you get there, where did you hear
 7   about it?
 8        A   Mr. Satterley told me.
 9        Q   Okay.
10        A   He said that he had criticism on the white
11   balancing, that the colors were off on the
12   photographs, and that he still sticks by his opinion
13   that I misidentified fibrous talc.  He acknowledged
14   that the refractive indices for the -- for the
15   chrysotile was in the range that's expected, and that
16   the error was in that the colors were wrong, the
17   wavelengths assigned to the various dispersion colors
18   were wrong.
19            The white balancing is unclear, that's not
20   done with the camera.  It's -- the white balancing
21   is -- is done when you line up -- you line up the
22   Köhler -- first thing you do with the PLM scope is you
23   line it up so you have the -- they call it the Köhler
24   optics so there's really no white balancing.  It's --
                                                        33
```

9 (Pages 30 to 33)

EXAMINATION BY MR. EWALD

1  that was kind of out -- to us, kind of out of left
2  field.
3       The system we have now, the cameras are
4  auto -- you know, the microscope and everything and
5  stuff is all automated.  And as for looking at colors
6  of a photo -- off a photograph, very rarely do you get
7  the dispersion colors on the photograph to be exactly
8  the same as what you see in the microscope and now on
9  the monitor.  So, you are -- the dispersion colors are
10 only as good as your color copier.  So these were --
11 his criticisms were not anything that I thought was
12 authoritative or caused me to have any thoughts about
13 what we're identifying as Chrysotile.
14      Q   So, I wasn't clear from that answer on -- at
15 least one part, which is, are you stating that your
16 PLM microscope uses a white balance to correct the
17 white source of the image or not?
18      A   Well, the microscopes we used in the past,
19 no.  You just lined it up and, you know, made sure you
20 have the -- the light going through the apertures as
21 it's supposed to.  The new ones do, but it's not
22 something that's necessary because it's got LED
23 lights, and you can't -- and you can't make a
24 determination.  No -- no PLM microscopist would try to

34

1  determine the actual wavelengths of the dispersion
2  colors by looking at a photograph.  You can get in the
3  general area because you don't -- they're never
4  reproduced to the level of what you see in the
5  microscope.  So, it's not something that you should --
6  that's done.  So, what his -- his criticism, you know,
7  didn't -- I did not find it very authoritative to
8  suggest that something was amiss with our
9  identification of the chrysotile.
10      Q   And so, if I'm understanding your testimony,
11 your current PLM microscope has the ability to correct
12 the white balance but is not something that you
13 believe is necessary?
14      A   Correct.
15      If you're not doing -- if you're not using
16 polar -- you know, the dispersion's staining as long
17 as it's lined up properly.  Now if you're using that
18 microscope for something else without any cross polars
19 and you wanted to adjust the white background, yes,
20 you can do something with it, but it's not necessary.
21 And nobody's even heard of that that I've asked -- you
22 know, I've asked my group here, and nobody has even
23 heard of that for dispersion staining it in polarized
24 light microscopy that you have to go in and white

35

1  balance the camera.
2       Q   And since hearing about Dr. Sanchez's
3  testimony about white balancing from Mr. Satterley,
4  have -- has anyone at MAS conducted any, I guess,
5  experiments to see what would happen if you used the
6  white balancing on the PLM images of dispersion
7  staining?
8       A   No.
9       It's -- it's unclear how you make that --
10 you make that observation that it's not white balanced
11 when you're looking at dispersion staining
12 photographs.  It's -- you know, I don't know that.
13 Maybe Dr. Sanchez, you know, is just ignorant of it,
14 and maybe Dr. Sanchez can explain that further maybe
15 at his next deposition.
16      Q   All right.  You also recently testified at
17 trial in the Johnson case, right?
18      A   Yes, sir.
19      Q   And I want to just ask you this morning
20 about one piece of testimony.  And it was --
21 potentially, you said you don't get fibrous talc
22 unless you have asbestos amphiboles or chrysotile in
23 the mine.  Does that sound familiar?
24      A   Yes.

36

1       Q   And at first, can you explain a little bit
2  more what you mean by that; and, if you don't mind,
3  what you are relying on for that opposition?
4       A   The transformation of amphibole asbestos
5  into fibrous talc is a metamorphic procedure, you
6  know, geologically.  That -- so that over time, and
7  again, as I'm routinely reminded in trial, I'm not a
8  geologist, I just read some of the papers, that
9  fibrous talc is not a naturally-forming talc geometry
10 when it all formed on how many billions of years ago.
11 And we routinely find things like in a half
12 chrysotile, half talc, or some portion of
13 anthophyllite in fibrous talc or some portion of
14 tremolite in fibrous talc.
15      So, in order to have fibrous talc, you have
16 to have some asbestiform amphibole to go through the
17 metamorphic process.  At least that's what's in the
18 scientific papers.  I think Bevlin (phonetic) wrote
19 about that.  You know, these transitional fibers, that
20 some people like to call them, are not formed that
21 way.  It's a metamorphic process over time.
22      Q   You identified in your answer Bevlin.  Are
23 there any other sources you rely on for that
24 proposition?

37

10 (Pages 34 to 37)

EXAMINATION BY MR. LARSON

**Page 90**

```
 1  cell to build the virus particle.  It only builds one
 2  thing, and those are those little spikes.
 3       This technology was developed over 12 years
 4  ago for the SARS, and it was tested, and they were
 5  ready to go.  And they did, you know, started doing
 6  populations of people and SARS went away, so it was
 7  shelfed.
 8       When this hit, they pulled it back out.  And
 9  the only new technology they've had is the vax that
10  they grow up the bacteria.  Most of your reaction
11  unless you -- unless you have high-allergic problems
12  where you have to carry an EPI pen, and even then
13  they'll make you wait 15 minutes to see if you start
14  going into anaphylactic shock or not, and then they
15  just give you an injection and you're fine.  There's
16  no side effects.  There's no lasting anything.
17     Q  Right.
18     A  The amount of misinformation on the web is
19  just mind boggling to me.
20     Q  All right.
21     A  If you haven't had it, please go get it.
22  Please.
23     Q  And you would recommend that those who are
24  not vaccinated get it from any of the companies that
```

**Page 91**

```
 1  manufacture; meaning, Pfizer, Moderna or J&J, right?
 2     A  Yeah, it didn't matter to me who -- what was
 3  available when I went and could.  It just so happens
 4  it was one of the two.  And the only time I had a
 5  reaction was the second shot.  I knew that was going
 6  to happen because I still had antibodies from when I
 7  was sick.  So, you'll -- I felt like I was coming down
 8  with the flu.  I had a 100-degree temperature that
 9  started that night.  By the next morning, I felt fine.
10     Q  And you would trust any of the three
11  company's vaccine, correct?
12     A  Absolutely.
13     Q  Okay.  That's all I have, thanks a lot.
14     A  You're welcome.
15       MR. COONEY:  All right.  Now I think that's
16  everybody.
17       Dr. Longo, thank you very much for your time
18  today.
19       THE WITNESS:  Thank you.  I'd like to just
20  thank the attorneys that were doing discovery for
21  acting professional.  It always makes it a better
22  process when we are all professional to each other.
23       MR. COONEY:  Couldn't agree more.  Thank
24  you, Doctor.
```

**Page 92**

```
 1       Elizabeth, thank you.  We will waive
 2  signature for this.
 3       (Whereupon signature was waived, and
 4       the deponent was excused.)
 5       (Exhibits from Mr. Ewald were attached
 6       to the transcript.)
```

**Page 93**

```
 1              REPORTER CERTIFICATE
 2     I, Elizabeth A. Goodwin, RPR, MO-CCR,
    IL-CSR, do hereby certify that there came before me
 3  via ZOOM,
 4
 5       WILLIAM E. LONGO, PH.D.,
 6  who was by me first duly sworn; that the witness was
    carefully examined, that said remote deposition was
 7  reported by myself, translated and proofread using
    computer-aided transcription, and the above transcript
 8  of proceedings is a true and accurate transcript of my
    notes as taken at the time of the remote deposition of
 9  this witness.
10     I further certify that I am neither attorney
    nor counsel for nor related nor employed by any of the
11  parties to the action in which this remote deposition
    is taken; further, that I am not a relative or
12  employee of any attorney or counsel employed by the
    parties hereto or financially interested in this
13  action.
14     Dated this 19th day of September, 2021.
15
16
       _____
17     ELIZABETH A. GOODWIN, RPR, MO-CCR, IL-CSR
```

24 (Pages 90 to 93)