# EXHIBIT 38

Case 3:16-md-02738-MAS-RLS   Document 33015-14   Filed 07/23/24   Page 2 of 6 PageID: 222295

DR. WILLIAM LONGO, on 04/21/2021                                                  Page 1
CHRISTINA G. PRUDENCIO vs. JOHNSON & JOHNSON, et al.

Page 1

```
 1        SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR

 2                  THE COUNTY OF ALAMEDA

 3
      CHRISTINA G. PRUDENCIO,       )
 4                                  )
              Plaintiff,            )
 5                                  )
         vs.                        ) Case No.
 6                                  ) RG20061303
      JOHNSON & JOHNSON; JOHNSON    )
 7    & JOHNSON CONSUMER, INC.      )
      (Sued individually and as    )         Certified Transcript
 8    successor-in-interest to      )
      JOHNSON & JOHNSON CONSUMER    )
 9    COMPANIES, INC.), et al.,     )
                                    )
10            Defendants.           )
      _____) (Pages 1 - 228)
11

12

13

14              DEPOSITION OF EXPERT WITNESS

15                   DR. WILLIAM LONGO

16              WEDNESDAY, APRIL 21, 2021

17

18

19

20

21

22

23

24    Reported by:  KAREN C. WATERS, REGISTERED

25    PROFESSIONAL REPORTER
```

Case 3:16-md-02738-MAS-RLS   Document 33015-14   Filed 07/23/24   Page 3 of 6 PageID: 222296

DR. WILLIAM LONGO, on 04/21/2021                                      Pages 2–5
CHRISTINA G. PRUDENCIO vs. JOHNSON & JOHNSON, et al.

**Page 2**

```
 1    SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR
 2              THE COUNTY OF ALAMEDA
 3
      CHRISTINA G. PRUDENCIO,      )
 4                                 )
              Plaintiff,           )
 5                                 )
         vs.                       ) Case No.
 6                                 ) RG20061303
      JOHNSON & JOHNSON; JOHNSON   )
 7    & JOHNSON CONSUMER, INC.     )
      (Sued individually and as    )
 8    successor-in-interest to     )
      JOHNSON & JOHNSON CONSUMER   )
 9    COMPANIES, INC.), et al.,    )
                                   )
10            Defendants.          )
      _____)
11
12
13
14
15
16
17
18
19
20
21         DEPOSITION OF DR. WILLIAM LONGO, taken on
22    behalf of Defendants, remotely via
23    videoconference, commencing at 9:05 a.m. (PST),
24    Wednesday, April 21, 2021, before Karen C.
25    Waters, Registered Professional Reporter.
```

**Page 3**

```
 1    APPEARANCES: (Via videoconference):
 2
 3    For Plaintiff:
 4      KAZAN, McCLAIN, SATTERLEY & GREENWOOD
        BY: IAN A. RIVAMONTE, ESQ.
 5      Jack London Market,
        55 Harrison Street
 6      Suite 400
        Oakland, California  94607
 7      (510) 302-1000
        irivamonte@kazanlaw.com
 8
 9    For Defendants LONGS DRUG STORES CALIFORNIA,
      L.L.C., on behalf of LONGS DRUG STORES
10    CALIFORNIA, INC. (Erroneously sued as LONGS DRUG
      STORES CALIFORNIA, L.L.C., individually and as
11    successor-in-interest, parent, alter ego, and
      equitable trustee of LONGS DRUG STORES
12    CALIFORNIA, INC.); SAFEWAY INC.; LUCKY STORES,
      INC.; and ALBERTSONS COMPANIES, INC.:
13
        BARNES & THORNBURG LLP
14      BY: MITCHELL R. CHARCHALIS, ESQ.
        2029 Century Park East
15      Suite 300
        Los Angeles, California  90067
16      (310) 284-3768
        mcharchalis@btlaw.com
17
18    For Defendants JOHNSON & JOHNSON and JOHNSON &
      JOHNSON CONSUMER INC.:
19
        KING & SPALDING LLP
20      BY: KEVIN HYNES, ESQ.
        1185 Avenue of the Americas
21      34th Floor
        New York, New York  10036
22      (212) 790-5349
        khynes@kslaw.com
23
24
25
```

**Page 4**

```
 1    APPEARANCE (Via videoconference) (continued):
 2
 3    For Defendant PERRIGO COMPANY OF TENNESSEE:
 4      GOODELL, DEVRIES, LEECH & DANN, LLP
        BY: JEFFREY J. HINES, ESQ.
 5      One South Street
        20th Floor
 6      Baltimore, Maryland  21202
        (410) 783-4041
 7      jjh@gdldlaw.com
 8
 9    For Defendant VI-HON, INC.:
10      REED SMITH LLP
        BY: SHANA E. RUSSO, ESQ.
11      506 Carnegie Center
        Suite 300
12      Princeton, New Jersey  08540-7839
        (609) 987-0050
13      srusso@reedsmith.com
14
15    Also Present:
16      Bret Hampton, the videographer.
17
18
19
20
21
22
23
24
25
```

**Page 5**

```
 1                   I N D E X
 2    DEPONENT:        EXAMINATION           PAGE:
 3    DR. WILLIAM LONGO
 4                     BY MR. HYNES            10
 5                     BY MS. RUSSO           204
 6
 7                   E X H I B I T S
 8    MARKED                                 PAGE:
 9    Exhibit 1   April 8, 2021, letter from   16
                  Ms. Solorzano-Arroyo
10
                  Exhibit 2   April 14, 2021, letter from   16
11                Ms. Solorzano-Arroyo
12    Exhibit 2A  Dodson tissue digestion file   17
13    Exhibit 2B  March 2021 extra tissue analyses 17
                  performed by Lee Poye
14
      Exhibit 2C  Report of Dr. Sanchez regarding  17
15                Mr. Poye's tissue digestion
                  analysis
16    Exhibit 2D  Appendix A to Dr. Sanchez report 17
17    Exhibit 2E  April 8, 2021 Dr. Sanchez        17
                  General Geology Report
18
      Exhibit 2F  April 12th Dr. Segrave report    17
19
      Exhibit 3   April 14, 2021, letter from      17
20                Ms. Solorzano-Arroyo with link
                  to reports from Dr. Longo
21
      Exhibit 3A  Appendix A, Johnson & Johnson    17
22                reliance and reviewed documents
                  list, March 5, 2021
23
      Exhibit 3B  Jean Nate powder puff study      17
24
      Exhibit 3C  Johns Manville document          19
25
```

Case 3:16-md-02738-MAS-RLS    Document 33015-14    Filed 07/23/24    Page 4 of 6 PageID: 222297

DR. WILLIAM LONGO, on 04/21/2021
CHRISTINA G. PRUDENCIO vs. JOHNSON & JOHNSON, et al.

Pages 22–25

Page 22

1      I understand that there's been some
2 objections to this from counsel for Vi-Jon and
3 Perrigo. We will talk about that one a bit
4 later.
5      Exhibit 3F is a report dated
6 April 13, 2021, MAS Project No. M71216. It's a
7 report of analysis of two Johnson Baby Powder,
8 one Gold Bond off-the-shelf talcum powder
9 containers purchases from Lucky's.
10     (Deposition Exhibits 3E and 3F were
11     marked.)
12   Q. (BY MR. HYNES): Dr. Longo, do you offer
13 any opinions from your Gold Bond analysis in
14 that report in connection with the Prudencio
15 matter?
16   A. No.
17   Q. Okay. And did you -- was it you who
18 purchased those two containers from Lucky's?
19   A. No.
20   Q. Do you know who did?
21   A. Yes.
22   Q. Who?
23   A. Joe Satterley.
24   Q. Okay. And when did he purchase those
25 two containers? December of 2020?

Page 23

1   A. It was December 3, 2020, from Lucky's
2 Store No. 708.
3   Q. Okay. Do you know where that store is?
4   A. Yes. 660 San Ramon Valley Road,
5 Danville, California. 94526 is the zip code.
6   Q. Okay. And as part of this report, you
7 performed, I believe, ISO PLM analysis without
8 any sort of heavy liquid density separation.
9 You performed the Colorado School of Mines
10 separation technique followed up by polarized
11 light microscopy analysis. And I believe that's
12 it.
13      Was it just the two types of
14 analyses that were included as part of this
15 report?
16   A. Yes.
17   Q. Okay. No TEM analysis, whether with
18 concentration or without concentration?
19   A. No.
20   Q. I'll likely come back to this report a
21 bit later.
22     MR. HYNES: I've marked as Exhibit 3G a
23 February 9, 2021, report on MAS Project
24 No. M71241 on three off-the-shelf 2018 JBP
25 containers purchased online from Ralphs talcum

Page 24

1 powder analysis.
2     (Deposition Exhibits 3G and 3H were
3     marked.)
4   Q. (BY MR. HYNES): Dr. Longo, I think we
5 had discussed this report as part of your
6 deposition in the Johnson matter, correct?
7   A. That is correct.
8   Q. And I believe to date -- it's your
9 understanding that the three containers that are
10 described in this report, you have not split the
11 contents of those containers for evaluation by
12 other laboratories to this point in time,
13 correct?
14   A. I don't recall any request for that.
15 That would be correct.
16   Q. Okay. And similarly, with what we just
17 looked at in 3F, those two containers that were
18 purchased by Mr. Satterley, it's your
19 understanding that splits of those containers
20 haven't been made or delivered to any other
21 laboratories for analysis, correct?
22   A. It is correct that no requests have been
23 made for those splits that I am aware of.
24   Q. Okay. And on those two Satterley
25 containers, did those -- were those sealed when

Page 25

1 you received them from Mr. Satterley?
2   A. They were. And I think if you go to the
3 photographs, you can see the seals when they
4 arrived. If you look at the photographs, you
5 can see the plastic seal that goes around the
6 top, and you can also see the seal over the
7 holes for the application. And those
8 containers, if you also -- if the light is
9 right, on, like, the second container, you can
10 actually see the Johnson & Johnson on the
11 plastic on the top. And the Gold Bond just had
12 a plastic pull tab over the top where the holes
13 go.
14   Q. Okay. And I guess while we are on this
15 report, it looks like you used your newer PLM
16 microscope for this, just based on the
17 photographs that are included; is that correct?
18   A. That is correct.
19   Q. And the analysis technique that your PLM
20 analyst used in connection with this report
21 would be the same technique that was applied as
22 part of what was marked as Exhibit 3G, the
23 report on the three containers purchased online
24 from Ralphs, correct?
25   A. Correct. They are analyzed using the

Case 3:16-md-02738-MAS-RLS    Document 33015-14    Filed 07/23/24    Page 5 of 6
PageID: 222298

DR. WILLIAM LONGO, on 04/21/2021
CHRISTINA G. PRUDENCIO vs. JOHNSON & JOHNSON, et al.

Pages 26–29

Page 26

1  ISO PLM method. Sample preparation for the
2  heavy liquid density is not the ISO method, but
3  that's what I -- what we had been calling the
4  CSM method.
5     Q. Okay.
6     A. So it's two different things. There's
7  sample prep, but then there's the analysis to
8  determine if chrysotile is present.
9     Q. Right. So that analysis follows the ISO
10  22262-1 methodology?
11     A. Yes.
12     Q. And Paul Hess, he was the individual who
13  performed all of the PLM analyses as part of
14  this report that was marked as 3F as well as the
15  part that was marked as 3G?
16     A. Yes.
17     Q. Okay. And I guess as part of this
18  report, 3F, Mr. Hess identified what he
19  identified as chrysotile at levels varying
20  from -- without the liquid separation
21  technique -- levels from .006 to .009 area
22  percent weight, correct?
23     A. I believe that's correct. I know you're
24  just reading it off the results, but I always
25  feel silly if I agree and then it's not. That

Page 27

1  is correct.
2     Q. Right. And you are looking at Table 2
3  on Page 7?
4     A. I am.
5     Q. Okay. It looks like there's an extra
6  column there, right? It looks like there's two
7  columns for the ISO PLM method, right?
8     A. Well, there's ISO PLM with no heavy
9  liquid separation. That is in the -- that would
10  be in the left-hand side. And then in the
11  middle, we have the CSM sample preparation with
12  the ISO method before the weight concentration
13  correction recovery.
14     Q. Okay.
15     A. So you don't have to go back and look at
16  the actual count sheet. I'm just trying to make
17  it easier for everybody.
18     Q. I see.
19        So if I'm looking at that, that
20  fourth column there is where you didn't do the
21  weight correction to account for the amount of
22  recovery by the CSM separation technique. And
23  then the far right column is where the levels
24  were adjusted to account for the amount of
25  material that was separated as part of the

Page 28

1  preparation method, right?
2     A. That is correct.
3     Q. Okay. And reporting in this way, is
4  that newer as far as April 2021?
5     A. It is. I keep trying to be helpful.
6  And the -- and now we are actually putting the
7  wavelengths in, not this set; but for each of
8  the structures that we identify in asbestos, we
9  put the wavelengths in with the color how it
10  matches up with the refractive indices. That
11  will actually be in the report. I want to see
12  if it was here. I don't think so because that's
13  new. No.
14     Q. And where would that appear? Would that
15  be on the images themselves or that PLM
16  worksheet with analyst's name and date and all
17  that information?
18     A. It will be on the PLM worksheet --
19     Q. Okay.
20     A. -- for perpendicular and parallel. And
21  it will then correlate with the refractive
22  indices. So I thought that would be easier than
23  going through and saying, okay, what's the
24  wavelength here? It's actually the wavelength
25  that was determined by the analyst that was

Page 29

1  sitting at the monitor.
2     Q. And that's for analyses going forward
3  only, or are you going to do this
4  retrospectively on analyses that have already
5  been completed on Johnson & Johnson talcum
6  powder products?
7     A. I don't have plans retrospectively. I
8  would have to go back and -- I don't know what
9  kind of time that would take.
10     Q. While we are on Table 2 on Page 7, to
11  round this out, it looks like the ranges that
12  were reported for the uncorrected CSM ISO method
13  were pretty close to what you found with the ISO
14  PLM method without the separation technique,
15  right?
16        So without separation, you have
17  .005 to .009 area percent weight and then with
18  the separation but uncorrected, you have .006 to
19  .009 area percent weight, right?
20     A. That's correct, but that would depend on
21  how you define that. That would be about two
22  and a half to three times difference between the
23  two. So the ISO PLM has higher weight
24  concentration than if you do the correction even
25  on the fibers and bundles that has a higher

Case 3:16-md-02738-MAS-RLS   Document 33015-14   Filed 07/23/24   Page 6 of 6 PageID: 222299

DR. WILLIAM LONGO, on 04/21/2021
CHRISTINA G. PRUDENCIO vs. JOHNSON & JOHNSON, et al.
Pages 226–228

Page 226

1  the newspaper or something.
2      Q.  You know the content of the
3  advertisement?
4      A.  I never saw it.
5      Q.  Do you know if the individuals that
6  returned the Longs Baby Powder were compensated?
7      A.  I never asked that question.  You will
8  have to ask the Kazan firm.
9          MS. RUSSO:  So in looking at my notes --
10 and we only have four minutes left before
11 somebody turns into a pumpkin -- I'm happy to,
12 you know, conclude the deposition for today or
13 conclude Volume 1 of your deposition, and I
14 suspect we would resume Volume 2 and Kevin can
15 go back to questioning you and then I would
16 follow after him.
17         THE WITNESS:  Okay.  That's great.
18 Thank you.
19         MR. HYNES:  All right.  Thanks, all.
20         And, Ian, I guess we can talk about
21 dates for continuation.
22         MR. IAN:  Yes, we'll meet and confer
23 about the continue date.
24         MR. HYNES:  Thank you.
25         THE VIDEOGRAPHER:  Going off the record

Page 227

1  at 3:57 p.m.
2          THE COURT REPORTER:  Signature?
3          MR. RIVAMONTE:  I don't think Dr. Longo
4  typically wants to read and sign, but I'll ask
5  him.
6          THE COURT REPORTER:  Mr. Hynes, you need
7  this rush, right?
8          MR. HYNES:  Yes, whatever our standing
9  order is, rough and expedited final.  We are
10 gearing up for trial here.
11         MS. RUSSO:  We will take it expected
12 rush, however you are getting it to Kevin.  Is
13 there a prior request for a rough?
14         MR. HYNES:  Yes.  Our standing order is,
15 a rough.
16         MS. RUSSO:  I will have what he's
17 having.
18         MR. RIVAMONTE:  Same here, whenever they
19 get it, we want it the same.
20         THE COURT REPORTER:  And you want a
21 rough?
22         MR. RIVAMONTE:  Yes.
23         (WHEREUPON, at 3:57 p.m. on the
24          21st day of April, 2021, the
25          deposition was adjourned sine

Page 228

1          die.)
2          REPORTER'S CERTIFICATE
3      I, KAREN WATERS, Registered Professional
4  Reporter, do hereby certify that previous to the
5  commencement of the examination, the said
6  DR. WILLIAM LONGO, was duly sworn by me to
7  testify to the truth in relation to the matters
8  in controversy between the parties hereto; that
9  the said deposition was taken in machine
10 shorthand by me at the time and place aforesaid
11 and was thereafter reduced to typewritten form;
12 that the foregoing is a true transcript of the
13 questions asked, testimony given, and
14 proceedings had.
15     I further certify that I am not employed
16 by, related to, nor of counsel for any of the
17 parties herein, nor otherwise interested in the
18 outcome of this litigation.
19     IN WITNESS WHEREOF, I have affixed my
20 Signature this April 27, 2021.
21                          _____
22                          Karen Waters
23 _____ Reading and Signing was requested.
24 __x__ Reading and Signing was waived.
25 _____ Reading and Signing is not required.