# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS<br><br>MDL Case No. 2738 |

**DEFENDANTS JOHNSON & JOHNSON'S AND LLT MANAGEMENT LLC'S RESPONSE TO THE COURT'S JULY 19, 2024 SHOW CAUSE ORDER EXPLAINING WHY THE COURT SHOULD NOT ADOPT THE STATE MCL JUDGE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THEIR MOTION TO DISQUALIFY BEASLEY ALLEN FROM THIS LITIGATION**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................5

    A.    Judge Porto Misconstrued The Law and The Facts Requiring Disqualification Under Rule 1.6..........................................................5

        1.    The Presumption Of Shared Confidences Applies. ....................5

        2.    The Record Makes Plain That Conlan Violated Rule 1.6. .........9

    B.    Judge Porto Misunderstood Rule 5.3(c)...............................................20

    C.    Judge Porto Did Not Evaluate Rules 3.3(a)(5), 8.4(c), or 8.4(d)........25

    D.    Beasley Allen Should Be Removed From The PSC. .........................26

CONCLUSION ....................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Atlantic City v. Trupos*,
    201 N.J. 447 (2010)........................................................................................23

*Cordy v. Sherwin-Williams Co.*,
    156 F.R.D. 575 (D.N.J. 1994).................................................. *passim*

*Gnaciski v. United Health Care Ins. Co.*,
    623 F. Supp. 3d 959 (E.D. Wisc. 2022)................................................9

*Harper v. Everson*,
    2016 WL 9149652 (W.D. Ky. May 5, 2016).........................................9

*In re Sup. Ct. Advisory Comm. on Prof'l Ethics Op. No. 697*,
    188 N.J. 549 (2006).....................................................................6, 9

*Murphy v. Simmons*,
    2008 WL 65174 (D.N.J. Jan. 3, 2008)..................................................9

*Nat'l Med. Enters. v. Godbey*,
    924 S.W.2d 123 (Tex. 1996)................................................................8

*O Builders & Assocs. v. Yuna Corp of N.J.*,
    206 N.J. 109 (2011)............................................................... 16, 17

*Reardon v. Marlayne, Inc.*,
    83 N.J. 460 (1980)..............................................................7, 15

*Shadow Traffic Network v. Superior Court*,
    24 Cal. App. 4th 1067 (1994) ..............................................................8

*State ex rel. Wal-Mart Stores, Inc. v. Kortum*,
    559 N.W.2d 496 (Neb. 1997)................................................................9

*Twenty-First Century Rail Corp. v. N.J. Transit Corp.*,
    210 N.J. 264 (2012)............................................................................23

**Rules**

RPC 1.6 ........................................................................ 17, 18, 19

RPC 1.9(a)......................................................................................22

RPC 1.18 .......................................................................................17

RPC 5.3(c) ................................................................ 7, 20, 21, 25

RPC 8.4(a)......................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

2 McCormick on Evidence § 343 (8th ed. 2022)........................................................6

Restatement (Third) of the Law Governing Lawyers § 123 .....................................7

## INTRODUCTION

The Court instructed the parties to show cause why it should not adopt Judge Porto's findings of fact and conclusions of law. *See* Dkt. 32984. With due respect to Judge Porto, his findings are incompatible with the factual record, and his conclusions are contrary to New Jersey law. Judge Porto's decision—if adopted—would force J&J to defend itself in this MDL against opposing counsel who admittedly engaged in a secret, months-long collaboration with J&J's former outside counsel in the same matter, involving issues at the heart of the litigation. Judge Porto employed a standard that enables opposing and former counsel to engage in such secret collaborations with impunity unless a party—who had no contemporaneous knowledge of the collaboration and was not in the room when the collaboration occurred—could identify the specific words said or documents conveyed. That is a standard that never could be met. Consequently, if his reasoning were accepted as a correct interpretation of the law, it would eliminate the ability of clients in New Jersey to share confidential information with their attorneys without the fear that it will be surreptitiously passed to litigation adversaries in the same matter.

New Jersey's ethical rules sensibly foreclose this result. The Court should not accept Judge Porto's reasoning, and should disqualify Beasley Allen. It should in the alternative remove the firm from the Plaintiffs' Steering Committee, relief that Judge Porto's decision does not address.

1

Judge Porto erred in three primary and independently dispositive respects. ***First***, in holding that Conlan did not violate Rule 1.6, Judge Porto committed errors of law and fact. Judge Porto erroneously concluded that in eliminating the "appearance of impropriety" standard from the Rules of Professional Conduct, New Jersey likewise eliminated the presumption of shared confidences. Judge Porto cited no authority and engaged in no analysis to support this conclusion. And it is legal error. New Jersey eliminated the appearance of impropriety because it is vague. But the presumption of shared confidences rests on distinct analytical grounds and is not vague; it has been applied objectively in analogous circumstances, both in New Jersey and elsewhere.

On Judge Porto's view, disqualification would never be warranted under Rule 1.6 absent a "smoking gun." *See* Order and Decision, *In re: Talc-Based Powder Prods. Litig.*, Docket No. ATL-L-02648-15; MCL No. 300, Trans ID: LCV20241803189 (July 19, 2024) ("Op."), at 5. That has never been the law, nor should it be. And the facts here illustrate precisely why New Jersey employs a presumption of shared confidences. It will often be impossible to obtain admissions of what third parties said to each other, particularly where, as here, they have an incentive to deny confidences were disclosed. And it is difficult to imagine a situation where that is more true than where the third parties are a client's former lawyer and an adversary who secretly collaborate, who then invoke a privilege to

2

prevent the former client from obtaining evidence of the substance of their communications. Simply put, requiring a witness stand confession would permit parties to circumvent the law and violate the central tenet of the Rules of Professional Conduct: That a lawyer must protect client confidences. And it would mean that clients can never be secure in their belief that the privileged and confidential information they share with outside counsel is, in fact, protected from disclosure to their adversaries.

Judge Porto's interpretation of the record is equally erroneous, based on a failure to engage with or even acknowledge extensive evidence and unavoidable inferences that contradict what he chose to credit. Indeed, one of his central findings—that there was no "actual conflict of interest" resulting from the Conlan-Birchfield collaboration—is contradicted by the testimony of every witness who appeared at the Courts' plenary hearing. Both Conlan and Birchfield testified that they knew the resolution they were pursuing—the "Beasley Allen/Legacy proposal"—was contrary to J&J's desired outcome. J&J's Worldwide Vice President of Litigation Erik Haas did too, and outside counsel Jim Murdica explained that Conlan was working on "the other side with [J&J's] adversary." 3/25 (AM) Tr. 67:2-11, 70:25-71:9, 72:23-73:15; 3/25 (PM) Tr. 73:1-15, 106:1-12; 4/10 (AM) Tr. 121:2-18; 5/3 Tr. 31:2-17, 50:24-51:7. Simply put, Conlan represented J&J in this litigation, obtained its confidential information, and switched sides to align with

Plaintiffs. Beasley Allen, for its part, knew that Conlan had represented J&J and nevertheless collaborated with him to work against J&J's interests in the very same matter. That is indisputably a conflict of interest.

*Second*, Judge Porto did not meaningfully engage with, or even address, several rules that require disqualification. As to Rule 5.3(c), Judge Porto simply stated without analysis that the Rule was not implicated because there was no "association" between Beasley Allen and Conlan. But the facts in his opinion prove otherwise. To "associate" means to join together in common purpose or action. That is exactly what Beasley Allen and Conlan did when they admittedly "worked together" in secret on a settlement proposal adverse to J&J.

*Third*, although Judge Porto acknowledged that J&J sought disqualification under Rule 3.3(a)(5), 8.4(c), and 8.4(d), he did not address those Rules at all. Beasley Allen's violations of each of those Rules warrants disqualification.

*In addition*, as noted, Judge Porto was not called upon to and did not address whether Beasley Allen should be removed from the PSC. There is no question that it should be. Beasley Allen's multiple ethical lapses have shown it cannot effectively lead this MDL. Its lawyers have repeatedly been less than candid with the Court and J&J, telling half-truths and omitting information to paint a picture more favorable to themselves and the firm. It also admitted to prejudicing the rights of all plaintiffs in this litigation by sharing privileged and confidential information with Conlan, who

4

Birchfield described as a "potential future adversary" at the time.  *See* Dkt. 32207 at 60 (quoting 5/3 Tr. at 127:24-128:5).  And in failing to decline Conlan's invitation to collaborate, Beasley Allen allied itself with its adversary's former counsel—an alignment it all but acknowledged was prohibited. *Id*. at 60.  That should end this matter.

## ARGUMENT

### A.    Judge Porto Misconstrued The Law and The Facts Requiring Disqualification Under Rule 1.6.

Judge Porto misconstrued the law and the facts requiring disqualification under Rule 1.6.  He erroneously failed to apply the presumption of shared confidences, which is still valid in New Jersey.  And his ultimate factual conclusion—that "no credible evidence" supports a finding that Conlan shared J&J's privileged and confidential information with Beasley Allen—is simply incorrect, based on a failure to engage with (or even acknowledge) extensive evidence and inferences that contradict the ones he chose to credit.

### 1.    The Presumption Of Shared Confidences Applies.

Conlan and Beasley Allen entered into a confidential relationship, where Beasley Allen indisputably shared its privileged and confidential information with Conlan.  In these circumstances, the law presumes that confidences were shared in both directions—i.e., that Conlan also shared confidential information with Beasley

5

Allen, especially where he had a motive and opportunity to do so. Dkt. 32207 at 36-37; Dkt. 32275 at 6-10.

Yet Judge Porto held that the presumption of shared confidences no longer exists as a matter of New Jersey law. Op. at 26-27. In his view, the presumption was eliminated when New Jersey abrogated the "appearance of impropriety" standard formerly codified in Rule 1.7(c). Op. at 26-27; *see In re Sup. Ct. Advisory Comm. on Prof'l Ethics Op. No. 697*, 188 N.J. 549, 562-63 (2006) (rejecting the appearance of impropriety standard as unduly vague and ambiguous). To J&J's knowledge, Judge Porto is the first New Jersey jurist ever to reach that conclusion. And it is wrong as a matter of law, as is evident from the face of his opinion—Judge Porto cited no authority, New Jersey or otherwise, and engaged in no analysis to support this conclusion.

Contrary to Judge Porto's reasoning, the presumption of shared confidences exists independent of the appearance of impropriety. Dkt. 32207 at 36-37; Dkt. 32275 at 6-10. As J&J explained in its post-trial briefs, presumptions are a standard evidentiary tool that exist, for example, where experience shows that "proof of fact B renders the inference of the existence of fact A … probable" and where "difficulties inherent in proving that the more probable event in fact occurred." 2 McCormick on Evidence § 343 (8th ed. 2022); *see* Dkt. 32275 at 7. The

6

presumption of shared confidences rests on both these pillars: it was never supported by the "appearance of impropriety" standard.

*First*, experience shows it is "probable" that parties in a privileged and confidential relationship share privileged and confidential information. *See* Dkt. 32275 at 8-9. That is common sense. Presumptions across the RPCs reflect this. Rule 1.9's prohibition on side-switching, for example, is based on the presumption that "confidential information has passed between attorney and former client." *Reardon v. Marlayne, Inc.*, 83 N.J. 460, 473 (1980).[1] And under Rule 1.10, a lawyer's conflict disqualifies his whole firm because the law presumes that those confidences "are shared among all firm lawyers." Restatement (Third) of the Law Governing Lawyers § 123, reporter's note to cmt. c; *see* Dkt. 32275 at 8-9 (collecting cases). The law likewise presumes shared confidences where, as here, a person who possesses client confidences switches sides in the litigation, the inference being that a side switcher who enters into a confidential relationship will do what that relationship suggests: share confidences with the other side. *See Cordy v. Sherwin-*

---

[1] Judge Porto found that "Conlan is not a so-called side-switching attorney," Op. at 10, but the prohibition on side-switching is not limited to attorneys. *See* Dkt. 32207 at 36-37; Dkt. 32275 at 9 & n.3 (collecting cases). And Rule 5.3 by its plain text prohibits a nonlawyer's conduct where it "would be a violation of the [RPCs] if engaged in by a lawyer," RPC 5.3(c); *see* Dkt. 32207 at 42, 45-48; *infra* at 20-22. Both Beasley Allen and Conlan admit that New Jersey's ethical rules would have prohibited Conlan from working with Beasley Allen on the talc litigation as a lawyer. Dkt. 32207 at 42; Dkt. 32275 at 12-14.

*Williams Co.*, 156 F.R.D. 575, 583-84 (D.N.J. 1994); Dkt. 32275 at 8-9 (collecting cases).

*Second*, recognizing the "inherent difficulty in determining, at some later time, whether" confidences were in fact shared between third parties, the presumption of shared confidences places the burden on the party in unique possession of the relevant facts—e.g., the adversary collaborating with the party who switched sides. *Cordy*, 156 F.R.D. at 584; *see also, e.g.*, *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1085 (1994) ("presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff" (quotations omitted)); *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 131-32 (Tex. 1996). A contrary rule would make it nearly impossible for a party whose confidence may have been shared to prove that they actually were.

Neither of these justifications for the presumption of shared confidences have anything to do with the appearance of impropriety. It follows that New Jersey's rejection of that standard in 2004 does not undermine the presumption. Indeed, the New Jersey Supreme Court rejected the appearance of impropriety standard for reasons that are unrelated the presumption of shared confidences: The Court concluded the appearance of impropriety standard was simply "too vague to support discipline." *In re Sup. Ct. Advisory Comm. on Prof'l Ethics Op. No. 697*, 188 N.J.

8

549, 562 (2006) (quotations omitted).  But presumptions, including the presumption of shared confidences, are not vague.  The presumption of shared confidences can be and has been administered objectively, both in New Jersey after the appearance of impropriety standard was rejected, *see Murphy v. Simmons*, 2008 WL 65174, at *14, 18-19 (D.N.J. Jan. 3, 2008) (applying presumption of shared confidences even though appearance of impropriety has "been eliminated"), and in other states that do not use an appearance of impropriety standard.[2]  Judge Porto's *ipse dixit* that the two rise and fall together stands alone.

Moreover, this case calls out for the presumption of shared confidences.  Dkt. 32207 at 34-37; Dkt. 32275 at 6-12.  Judge Porto did not find otherwise.  Both Birchfield and Conlan offered self-serving denials, but the law requires more. *Cordy*, 156 F.R.D. at 584; *see* Dkt. 32207 at 39; Dkt. 32275 at 8.  The Court should find that the presumption of shared confidences applies in full force, and that Conlan violated Rule 1.6.

2.    The Record Makes Plain That Conlan Violated Rule 1.6.

Separate and apart from the presumption of shared confidences, Judge Porto was also wrong on the facts.  Judge Porto concluded that "no credible evidence"

---

[2] *See, e.g.*, *Gnaciski v. United Health Care Ins. Co.*, 623 F. Supp. 3d 959, 967, 971-72 (E.D. Wisc. 2022); *Harper v. Everson*, 2016 WL 9149652, at *4, 8-9 (W.D. Ky. May 5, 2016); *State ex rel. Wal-Mart Stores, Inc. v. Kortum*, 559 N.W.2d 496, 501-02 (Neb. 1997).

supports a finding that Conlan shared J&J's privileged and confidential information with Birchfield. Op. at 6. In so finding, Judge Porto ignored evidence that directly contradicts much of the testimony he chose to credit and even labeled as "undisputed." He drew conclusions and made inferential leaps wholly unsupported by the record. And he failed to mention, let alone reason through, the extensive evidence laid out in J&J's briefs that would cause any reasonable factfinder to conclude that Conlan's and Birchfield's testimony was simply not credible. Dkt. No. 32207 at 16-18, 38-39, 55-56. Though a reader would not know it from Judge Porto's opinion, the record contains powerful evidence that Conlan in fact shared J&J's confidences with Beasley Allen.

Start with the draft term sheet that Legacy and Beasley Allen edited over the course of 22 days. Judge Porto mentioned the term sheet only briefly, in the factual background, noting it "was prepared" before the filing of the LTL-2 bankruptcy, that Birchfield testified Beasley Allen shared it with Conlan and KCIC and was prepared to present it to J&J, and that it was shielded by the mediation privilege from discovery in these proceedings. *See* Op. at 14.

But the privilege log Beasley Allen produced shows that Conlan and Beasley Allen went back and forth over this term sheet for 22 days, over which time the document grew from seven to eight to ten pages long. Dkt. No. 32207 at 23-24. Birchfield testified that in that time, Legacy provided only "grammatical" edits. *Id*.

10

at 24. But it strains credulity that it took three weeks and dozens of exchanges to provide grammatical edits, that those grammatical edits added three pages in length to the document, and that Birchfield and senior Legacy officers would not only pore over the document, but would also meet to discuss grammar and punctuation—issues typically handled by junior associates or paralegals at law firms like Beasley Allen. *Id*. at 24-25. And notably, Conlan did not corroborate Birchfield's purported explanation. *See id*. The far stronger inference—indeed the only plausible one—is that Conlan provided substantive feedback on the term sheet, which necessarily would have reflected the confidences he indisputably acquired from J&J.

Instead of focusing on the growing term sheet and collaboration during the LTL-2 mediation, Judge Porto honed in on the $19 billion proposal and attached settlement matrix that Conlan sent to J&J after mediation failed. *See* Op. at 28-29. Even as to that proposal, however, the evidence does not support Judge Porto's conclusion. Although Conlan initially testified that the $19 billion figure was based on public information, he later conceded that the proposal needed to be consistent with and account for estimates of current and future claim values—information he learned while working for J&J. Dkt. No. 32275 at 6 n.1 (citing 4/10 (PM) Tr. 49:15-50:5). It is plainly reasonable to infer that that knowledge informed Conlan's proposed number—if J&J's talc liabilities were greater than $19 billion, it would be financially unsound for Legacy to acquire them at that number. Birchfield's

11

testimony provided a corroborating concession—namely, that any successful settlement matrix would need to be consistent with the overall valuation of current or future claims. If the matrix figures, multiplied by the number of claims, exceed the total amount a settling defendant is willing to pay, the matrix is useless. *Id.* (citing 5/3 Tr. 41:17-42:13). Together, these admissions make clear that Conlan thought the $19 billion proposal reflected information he learned from J&J and from Beasley Allen. Otherwise, the proposal would not be financially viable for Legacy.

As the facts found by Judge Porto illustrate, moreover, Conlan had both a motive and opportunity to share J&J's confidences. Conlan had a motive to share J&J's confidences because he would only make money on the Beasley Allen/Legacy proposal if it was accepted—he needed to ensure it was within a range he thought J&J was willing to accept, and J&J's confidences would allow him to do that. Dkt. 32207 at 35-36; Dkt. 32275 at 6 n.1. And he obviously had an opportunity. He collaborated in secret with Beasley Allen for months. *See* Dkt. 32207 at 20-23; Op. at 28 ("There is also no dispute that Conlan and Birchfield met and spoke frequently promoting the Legacy Proposal.").

As both Haas and Murdica explained, it would not have been reasonably possible for Conlan to have these secret discussions with Beasley Allen without sharing J&J's confidences, given his self-interest in having them present a term sheet J&J would be willing to accept. Dkt. 32207 at 23. Judge Porto nonetheless

12

dismissed J&J's argument that Conlan's conversations with Beasley Allen were necessarily "imbued" with J&J's confidences by deciding it was "synonymous with the now overruled appearance of impropriety standard." Op. at 28. That is incorrect. For one thing, J&J's argument for disqualification does not turn on Conlan's conversations being imbued with J&J's confidences. The most reasonable read of the record—from the term sheet to Conlan's motive and opportunity—is that he *actually* shared J&J's confidences, most notably J&J's settlement tolerance on a per-claim and aggregate basis, not to mention strategies for presenting the Beasley Allen/Legacy proposal to J&J based on his knowledge of how J&J viewed the litigation and settlement.

For another, concluding that privileged conversations between Conlan and Beasley Allen were imbued with J&J's confidences is not the same as basing disqualification on a mere appearance of impropriety. If Conlan's conversations were in fact imbued with J&J's confidences, then they were actually shared, and that is a violation of the rules. The law recognizes that confidences can be passed in exactly this way—sometimes, there is no way to opine on a subject matter without revealing the client's secrets. "To believe" that Conlan did "not remember and ultimately use that information, even 'subliminally, … defies common sense and human nature." *Cordy*, 156 F.R.D. at 584 (quotations omitted); Dkt. 32207 at 35-36.

13

Judge Porto appeared to credit Beasley Allen's argument that because an attorney can keep client confidences when negotiating with the other side, surely Conlan would have been able to keep J&J's confidences here. Op. at 30. But negotiating with the other side and secretly collaborating with a former adversary are very different. Attorneys usually have at least some authority to share information when negotiating, Dkt. 32275 at 11 n.7; Conlan here had none. And the motive to share confidences is distinct. Negotiating attorneys have no incentive to share their client's confidences beyond what has been authorized and what will advance the client's interest in a negotiation. But Conlan had an immense financial motive to share J&J's confidences, at the least to indicate J&J's settlement range. Again, he stood to make millions of dollars if he could steer Beasley Allen toward an acceptable settlement figure for J&J. That is why the law never allows side-switching and requires ethical screens. If, as Judge Porto believed, attorneys could always be trusted to keep their former client's confidences, the screening measures in Rule 1.10 would be pointless. Obviously, that view of the law—and of human nature—is incorrect.

Judge Porto also credited Birchfield's testimony that "he did not need any J&J information based on Beasley Allen's ten years' experience in litigating the ovarian cancer cases." Op. at 28-29. That is irrelevant and wrong. It is irrelevant because

14

it does not matter what Birchfield needed; what matters is what Conlan *did*.[3]  If Conlan shared J&J's confidences, either expressly or impliedly, then he violated Rule 1.6, regardless of whether Birchfield "needed" that information.  Judge Porto is also wrong because Birchfield's testimony is plainly not credible.  *Cf. Reardon*, 83 N.J. at 476.  A litigant would always be better off knowing the other side's confidential information, no matter how long they have been litigating.  So even if Birchfield did not "need" J&J's confidential information—for example, to prepare a settlement matrix—there's no reasonable dispute that he would have wanted information to inform his effort, and to thwart J&J's preferred resolution of its talc liabilities, which presumably is why he chose to work with the one company headed by J&J's former lawyer as opposed to the many others that offer structural optimization services.

For these reasons, Judge Porto's analogy to *O Builders and Associates, Inc. v. Yuna Corporation of NJ*, 206 N.J. 109 (2011), is off point.  Op. at 29.  The party seeking disqualification in *Yuna* "vaguely claimed only that information 'concerning pending litigation and business matters' had been disclosed" to counsel during a

---

[3] Judge Porto also credited Conlan's testimony that he did not "need" to use J&J's confidential information to engage in discussions with Birchfield and Beasley Allen about the Beasley Allen/Legacy proposal.  Op. at 30.  That is also irrelevant.  Even if Conlan did not "need" to know J&J's confidences to talk about structural optimization, the evidence indicates that the other resolution issues he discussed with Beasley Allen—like the term sheet—would have benefited from his knowledge about J&J.

consultation. 206 N.J. at 129. Such "bald and unsubstantiated assertions" that she had "disclosed business, financial and legal information" that she "believe[d] to be related to the current law suit" did not "suffice to satisfy" her burden of proof—especially where the attorney, in "stark contrast, … provided a detailed recitation of the matters discussed, accompanied by corroborating, contemporaneous documents, none of which were challenged by defendant." *Id*. (quotations omitted); *see* Op. at 29 (quoting same in part).

Here, however, J&J has presented extensive, specific evidence supporting a finding that Conlan shared confidences with Beasley Allen. Legacy and Beasley Allen spent three weeks revising a draft term sheet that grew by multiple pages in length. *Supra* at 10-11. J&J has documented Conlan's and Beasley Allen's specific financial motive and opportunity throughout their "collaboration" to share J&J's confidences to achieve their mutual goal. *Supra* at 6, 12-14. And J&J has provided still further evidence that Conlan's and Birchfield's testimony—like Birchfield's grammar story and Conlan's claim to have walled off J&J's information in his head—was wholly not credible. Dkt. 32207 at 23-25, 38-39.

The context in which *Yuna* arose make this marked difference even more pronounced. Borrowing from Rule 1.9 case law, *Yuna* concerned the level of specificity with which a client must prove what confidences *it shared* with *its lawyer* (the equivalent here of Conlan) to prove a violation of Rule 1.18. *Yuna*, 206 N.J. at

16

112-13.  That rule makes legal and practical sense.  A court determining a Rule 1.18 claim must know what specific information a former client shared with prospective counsel to know whether it is "significantly harmful."  RPC 1.18(b).  And a party can carry that burden of proof because it knows what specific information *it* shared.  Dkt. 32207 at 40.  J&J easily carried that burden here (i.e., the burden to show what it shared with Conlan).

But the concerns animating *Yuna*'s construction of Rule 1.18 do not extend to the Rule 1.6 context.  *See id.* at 40.  Finding a violation of the latter rule does not require proving what specific confidences were shared, but only *that* confidences were shared—a fact the law presumes in circumstances like these.  *See generally* RPC 1.6; *supra* at 2-3, 5-9.  And practically, a party will almost never know what its former counsel shares with its adversary.  *See, e.g.*, *Cordy*, 156 F.R.D. at 584.  That concern is especially salient here, where Beasley Allen has simultaneously asserted the mediation privilege over its communications with Conlan and argued that J&J must prove their substance with specificity.

Judge Porto was also off point in suggesting obliquely, with no analysis or explanation, that J&J consented either to Conlan working with Beasley Allen or to sharing J&J's confidences.  In his recitation of the facts, Judge Porto found that a clause in Conlan's February 2, 2023 proposal to J&J, which reserved Legacy's right to negotiate settlements with certain plaintiff law firms, adequately notified J&J that

Legacy intended to confer with Beasley Allen about resolving the talc matters. Op. at 11. Judge Porto deemed "[i]mportant to the present disqualification issue" Conlan's testimony that he believed this clause sufficiently "advised & informed" J&J of Legacy's plans "to approach Birchfield with the Legacy proposal." Op. at 12; *see also id.* at 13.

Judge Porto never referenced the February 2 proposal in his analysis, and did not explain why he found it "important." To the extent he meant to suggest that J&J in some way consented to Conlan's collaboration, that is wrong on the facts and the law. As with all *proposed* terms, Legacy's reservation of rights was contingent on J&J's accepting the deal. J&J did not do that, and in fact never responded to Conlan's email transmitting the proposal. *See* Dkt. 32207 at 6-7. No reasonable person with Conlan's legal and business experience would take a non-response to a business proposal as a "yes," let alone the "consent[] after consultation" required to constitute waiver. *See id.*; RPC 1.6(a). And despite repeatedly insisting otherwise, *see* Dkt. 32207 at 30 (citing 4/10 (AM) Tr. 102:7-103:11, 105:7-109:10), Conlan himself admitted that he would not ordinarily view such silence "as agreement." *Id*. (citing 4/10 (AM) Tr. 109:3-7).

Even if J&J's tacit rejection of Conlan's proposal somehow constituted acceptance of the clause, that is not legally relevant—J&J's non-response is not, as Judge Porto believed, "important," Op. at 12. Rule 1.6 contains a carveout for

disclosing client confidences where the client "consents after consultation." RPC 1.6(a). But Conlan's vague suggestion that Legacy *might* confer with plaintiffs' counsel plainly does not constitute "consultation" to talk to the other side (let alone to collaborate on a resolution strategy adverse to J&J), and J&J certainly did not "consent" to the proposal by declining to respond.

*    *    *

In the end, Judge Porto's view of Rule 1.6 drains the rule of any force. To J&J's knowledge, he is the only New Jersey jurist to dispense with the presumption of shared confidences—and he did so on a record where it would clearly be triggered. Along the way, in concluding that there were no "reasonable inferences to support" a finding of shared confidences, Op. at 27, Judge Porto took a confined and one-sided view of the record. He was looking for direct evidence—a "smoking gun"—showing that confidences were shared. That sort of evidence will never be available in surreptitious collaborations like that here. Also, it is in the interest of those like Conlan and Birchfield to deny that confidences were shared. That is why courts refuse to credit such denials, *see* Dkt. 32275 at 8. This Court should not follow Judge Porto in his application of Rule 1.6.[4]

---

[4] As J&J's post-hearing briefs explained, Conlan's violations are attributable to Beasley Allen because the firm "knowingly assist[ed] or induc[ed] another" attorney to violate his or her ethical duties. RPC 8.4(a); *see* Dkt. 32207 at 51-53. Indeed, Beasley Allen does not dispute that if Conlan shared J&J's confidences during their secret collaboration, it would be responsible for Conlan's violation of Rule 1.6. Dkt.

19

### B.    Judge Porto Misunderstood Rule 5.3(c).

One of the most glaring errors in Judge Porto's opinion is his failure to meaningfully to engage with Rule 5.3(c).    That Rule is designed for the circumstances here:  It holds attorneys responsible when non-attorneys with whom they associate engage in conduct "that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer."  RPC 5.3(c).  And it applies whether the non-lawyer is within or outside the responsible attorneys' firm.  RPC 5.3, Official Comment (Aug. 1, 2016).  Here, the undisputed facts show that Beasley Allen ratified Conlan's participation on plaintiffs' mediation team, which would have been a flagrant violation of Rule 1.9(a) if Conlan had been a lawyer.  *See* Dkt. 32207 at 45; Dkt. 32275 at 13-14.  In fact, Beasley Allen and Conlan repeatedly recognized that Conlan's conduct would have violated Rule 1.9(a) had Conlan been a lawyer.  *See* Dkt. 32207 at 42.

Notwithstanding these concessions, Judge Porto found that 5.3(c) was not violated here for two reasons.  First, he thought it was "fatal to J&J's argument" that Conlan "did not represent any client(s)" in his capacity as CEO of Legacy.  Op. at

---

32275 at 2.  Judge Porto opined that even if Conlan violated Rules 1.6 or 1.9, the other Rules implicated in J&J's motion—including Rule 8.4(a)—"are not necessarily triggered based on the facts as found on this record."  Op. at 31.  But Judge Porto offered no explanation why the record does not support such a finding, and this Court should not adopt that unreasoned conclusion.  Nor does it make much sense—Judge Porto never explained what it meant that these rules were "not necessarily triggered."

30.  By that, Judge Porto must have meant that Conlan did not violate Rule 1.9(a)—and thus Beasley Allen did not violate Rule 5.3(c)—because Rule 1.9(a) applies to a lawyer who represents one client and thereafter "represents" an adverse client in the same or similar matter.  Put differently, Judge Porto presumably believed that Beasley Allen could not be disqualified under Rule 5.3(c) because Conlan did not come within the "representation" requirement in Rule 1.9(a).[5]  That reasoning fundamentally misunderstands how Rule 5.3(c) works.

As J&J has explained, Dkt. 32275 at 13-14, Rule 5.3(c) applies to a non-lawyer's conduct where such conduct "*would be* a violation of the Rules of Professional Conduct *if* engaged in by a lawyer."  RPC 5.3(c) (emphasis added).  Thus, contrary to Judge Porto's reasoning, it does not matter whether Conlan was actually a lawyer formally representing talc plaintiffs while a member of their mediation team.  What matters instead is whether Conlan would have violated Rule 1.9(a) if he had been a lawyer.  The answer to that question is clearly yes—again,

---

[5] It is not clear what Judge Porto meant when he said that "Conlan was advocating on behalf of Legacy and there is no credible evidence supporting that Conlan advocated for any interest other than his own or that of Legacy's."  Op. at 30.  At the time he was a member of plaintiffs' mediation team, Conlan's interests and plaintiffs' interests were aligned, so advocating for himself was advocating for plaintiffs.  *See* Dkt. 32207 at 49-50.  Judge Porto must have meant to emphasize only that Conlan was not representing plaintiffs within the meaning of Rule 1.9(a).  If he meant something else, the observation would have been irrelevant.  Also irrelevant is Judge Porto's statement that the "most important[]" fact was that "J&J did not accept the Legacy proposal."  Op. at 31.  J&J's rejection of the proposal is of no significance except to confirm that the Beasley Allen/Legacy proposal was adverse to J&J.

Beasley Allen and Conlan have admitted as much.  By contrast, if Judge Porto's reasoning were correct, lawyers would be able to hire non-lawyers working on the other side, including paralegals, experts, or consultants, and have them work on the same litigation.  That is not right.  And the circumstances here are worse.  Beasley Allen partnered with J&J's former *lawyer*.

Judge Porto did not dispute any other elements of Rule 1.9(a).  J&J's interests were clearly "materially adverse" to plaintiffs' and Conlan's.  RPC 1.9(a).  The matters are obviously "the same," as Judge Porto appeared to recognize.  *See* Op. at 28.  The talc litigation is the talc litigation, and there is no question that Conlan was on both sides of it—first as a lawyer for J&J and later as an integral part of Plaintiffs' mediation team.  As a consequence, there was no need under Rule 1.9(a) to find shared confidences: side-switching on the same matter is prohibited regardless of whether the party seeking disqualification can identify "any particular confidence having been revealed."  *Twenty-First Century Rail Corp. v. N.J. Transit Corp.*, 210 N.J. 264, 278 (2012).  And Judge Porto did not find that J&J gave Conlan or anyone else "informed consent confirmed in writing."  RPC 1.9(a).  Within the context of Rule 5.3, which assumes that non-lawyers are acting as lawyers, every element of Rule 1.9(a) was indisputably satisfied.

Elsewhere, Judge Porto cited the burden-shifting framework for "substantially related" matters in *City of Atlantic City v. Trupos*, 201 N.J. 447 (2010), *see* Op. at

25, which further illustrates the confusion running through his opinion. Under New Jersey law, there are different standards for disqualification when matters are "the same" (as here) and "substantially related" (as in *Trupos*). Compare Dkt. 32207 at 43-44 (discussing *Twenty-First Century Rail*), *with id*. at 44-45 (discussing *Trupos*). But Judge Porto applied neither standard. Moreover, even under the substantial relation test, J&J was not required to prove that Conlan shared confidences with Beasley Allen; the pertinent question is whether Conlan received confidential information *from J&J*. *See id*. at 44-45 (citing *Trupos*, 201 N.J. at 467). And as Judge Porto recognized, he did: "it is undisputed that Conlan possessed and still possesses J&J's privileged and confidential information regarding the talc litigation." Op. at 27.

Judge Porto's only other conclusion was that there was no "association" between Conlan and Beasley Allen within meaning of Rule 5.3(c). *See* Op. at 30-31. But Judge Porto did not engage in any analysis of the Rule, and his opinion actually shows there was an "association." As J&J has explained, to "associate" means to join together in common purpose or action. *See* Dkt. 32207 at 47-49. That is the ordinary meaning of the word, and it is confirmed by the Restatement (Third) of the Law Governing Lawyers, to which New Jersey courts frequently turn for guidance. *Id*. Here, there can be no question that Beasley Allen joined together in common purpose and action. As Judge Porto recognized, Birchfield and Conlan had

23

a common purpose: they both "wanted a settlement." Op. at 31. And, as Judge Porto also appeared to recognize, they joined together in common action to achieve that purpose: they "collaborated on a settlement proposal." *Id*. at 30 (quotations omitted); *cf.* Op. at 13 (acknowledging Birchfield's description of his relationship with Conlan as an "engagement"). That is the very definition of association. Beasley Allen and Conlan worked together (in secret) to accomplish their shared objective. *See* Dkt. 32207 at 48-49.

Contrary to Judge Porto's reasoning, this does not mean that "collaborat[ion]" on a mutually beneficial settlement, "in and of itself," is "a reason to disqualify a law firm." Op. at 30. All of the other required elements of Rule 5.3(c) and 1.9(a) had to be satisfied. Thus, if Beasley Allen had simply partnered with *any of the other companies* that provide structural optimization services, *see* Op. at 13, there would be no violation of Rule 1.9(a). Or if the firm had collaborated with Conlan on a different, unrelated matter, the same would be true. It is the fact that Beasley Allen knowingly (*see* Op. at 9) chose to work with J&J's former lawyer on the same matter that makes the collaboration impermissible.

All of the other elements of Rule 5.3(c) are satisfied. As established above and in J&J's prior briefing, Conlan's conduct would have been "a violation of the Rules of Professional Conduct if engaged in by a lawyer," RPC 5.3(c), as Beasley Allen and Conlan recognized. And Judge Porto did not dispute that Beasley Allen

24

"ratifie[d]," RPC 5.3(c)(1), Conlan's conduct. Nor could he have: Birchfield testified that he wanted Conlan to be a member of plaintiffs' mediation team because he felt Conlan had a role to play. *See* Dkt. 32207 at 50-51. And if Beasley Allen did not approve of Conlan's participation, it would not have collaborated with him. *Id*.

Because all the elements of Rule 5.3(c) and 1.9(a) are satisfied, Beasley Allen should be disqualified. Judge Porto reached the wrong result only because his opinion misapplied the rules.

### C. Judge Porto Did Not Evaluate Rules 3.3(a)(5), 8.4(c), or 8.4(d).

Another significant omission from Judge Porto's decision is *any* analysis of Rules 3.3(a)(5), 8.4(c), or 8.4(d). *Cf.* Op. at 5, 19 (acknowledging J&J's argument under those Rules but never addressing them). That omission is all the more significant because Beasley Allen's violations are substantial, aimed at impairing the Court's truth-seeking function to avoid disqualification. *See* Dkt. 32207 at 54-56; Dkt. 32275 at 19-20.

Rule 8.4(c) prohibits dishonesty and deceit, and Rule 3.3(a)(5) imposes an even higher burden of candor to a tribunal. *See* Dkt. 32207 at 54-55. Here, not only did Beasley Allen hide its collaboration with Conlan from J&J and the mediators, it tried to obscure its actions from the Court's view too. Birchfield filed certifications in these proceedings deceptively omitting the extent of his contacts with Conlan,

later admitting in a moment of candor that "there were a lot of things that [he] did not mention." *Id*. at 55-56 (quoting 4/10 (PM) Tr. 102:21-22). And if this Court and Judge Porto had not ordered an evidentiary hearing, Beasley Allen might have succeeded: its extensive contacts with Conlan might never have been discovered. Beasley Allen plainly intended for this Court to credit Birchfield's suggestion that their contacts were minimal and on that basis deny disqualification on the papers. That type of dishonesty and deception warrants disqualification under Rules 3.3(a)(5) and 8.4(c), as well as under Rule 8.4(d), *see* Dkt. 32207 at 56-58.

At a minimum, it was incumbent on Judge Porto to grapple with these arguments and legitimate bases for disqualification. But he did not engage with these Rules at all. This Court cannot and should not follow Judge Porto's lead.

### D.    Beasley Allen Should Be Removed From The PSC.

This Court is responsible for determining whether Beasley Allen can remain on the PSC. For the reasons J&J has already set out, Beasley Allen cannot. *See* Dkt. 32207 at 58-60; Dkt. 32275 at 22-23. Its conduct has poisoned its ability to fulfill the core function of "work[ing] cooperatively with opposing counsel and the court." *See* Manual for Complex Litigation § 10.224 (4th ed. 2023).

As to J&J, Judge Porto's opinion confirms that Beasley Allen collaborated in secret with its former lawyer even though it "knew Conlan [had] represented J&J." Op. at 9. J&J cannot have confidence in its ability to fairly defend or resolve these

cases with an adversary willing to partner in secret with its former lawyer to prevent J&J's preferred resolution (which is likewise preferred by most plaintiffs).

As to plaintiffs' counsel, Beasley Allen has admitted that it prejudiced the rights of all plaintiffs in this litigation—if everything went according to plan, Conlan would have been adverse to the talc plaintiffs, and yet Beasley Allen shared plaintiffs' confidential information with him. *See* Dkt. 32207 at 59-60; Dkt. 32275 at 22-23. It is doubtful that Beasley Allen can steward this litigation after that admission.

And as to the Court, the evidence shows that Beasley Allen engaged in strategic omissions to avoid disqualification. *See supra* at 25-26. That should not be tolerated. Through and through, Beasley Allen has acted unethically. If the firm is not disqualified, it should not continue in a leadership role. Judge Porto's opinion, such as it is, does not suggest otherwise.

## CONCLUSION

This Court should disqualify Beasley Allen and remove it from this litigation.

27

Dated: July 25, 2024

Respectfully submitted,

/s/ Stephen D. Brody
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com


/s/ Susan M. Sharko
Susan M. Sharko
FAEGRE DRINKER BIDDLE &
REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.:  973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson and
LTL Management, LLC n/k/a LLT
Management LLC*