UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | : : : : : : : | MDL No. 16-2738 (MAS) (RLS) |
| *THIS DOCUMENT RELATES TO ALL CASES* | : : : | |

**PLAINTIFFS' STEERING COMMITTEE'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR THE ENTRY OF AN ORDER TO ESTABLISH A CENSUS**

### I.  INTRODUCTION

The Plaintiffs' Steering Committee (the "PSC") has asked this Court to order the establishment of a registry where a census of persons who have unfiled talcum powder cases can provide relevant information about their claims. As noted in the PSC's motion, MDL Courts have been utilizing the census mechanism for years in the management of the docket. What the PSC asks for is not unusual, nor unique. Essentially, utilizing the census procedure is standard practice for large MDL cases, particularly those where it is understood that there can be or in fact are, thousands

1

of unfiled cases that may have to be addressed in one way or another in order to reach a global settlement.[1]

The circumstances of this case are no different. Indeed, recent public statements by Defendants claim that there are tens of thousands of unfiled cases. This assertion is being used by Defendants to bolster the false position that the "only" way for a global resolution to be reached is through a bankruptcy process. But, the PSC has virtually no information about these so-called unfiled cases, i.e., what assertions have been made by each about the use of talcum powder, what cancers are alleged to have been suffered, among other key factors that will need to be evaluated in order to separate the wheat from the chaff. Basic information about the injuries alleged by these unfiled claimants is needed by the PSC in fulfilling its responsibility of litigating this MDL.

The requested census will allow the PSC to understand the types of claims involved in the pool of unfiled cases spotlighted by Defendants, and how many, if

---

[1] *See* Plaintiffs' Steering Committee's Motion for the Entry of an Order to Establish a Census and Require the Provision of Data by Persons with Unfiled Claims/Cases to Confirm the Plaintiff Suffers from Epithelial Ovarian Cancer, Fallopian Tube Cancer or Primary Peritoneal Cancer at 12-14 (July 10, 2024). *See also* CMO No. 30, *In re: Benicar*, 15-md-2606 (D.N.J. Aug. 1, 2017); CMO No. 37, *In re: Benicar*, 15-md-2606 (D.N.J. Sept. 20, 2017); Dkt. No. 870, Pretrial Order No. 25(a) Modifying Census Registry Program, *In re: Philips CPAP, Bi-Level Pap, Mech. Ventilator Prod. Liab. Litig.*, No. 2:21-mc-01230-JFC, (W.D. Pa. Nov. 16, 2022); Dkt. No. 547, Pretrial Order No. 15 Order on Procedures for Implementing Census, *In re: Zantac (Ranitidine) Prod. Liab. Litig.*, No. 9:20-md-02924-RLF (S.D. Fla. Apr. 2, 2020); Order of April 28, 2015, *In re: Actos (Pioglitazone) Prod. Liab. Litig.*, No. 6:110MDL-2299 (W.D. La.); Order of November 9, 2007, *In re: Vioxx Prod. Liab. Litig.*, No. 2:05-md-01657 (E.D. La.).

any, truly fit within the scope of this MDL as it has developed over its 8 years.[2] The PSC is at a disadvantage because it appears, based on Defendants' public statements, that Defendants have been working with the counsel representing the tens of thousands of unfiled cases towards a bankruptcy solution, providing Defendants with empirical knowledge about the unfiled cases that the PSC does not have. Therefore, ordering a census will level the playing field so the PSC can know what it is that apparently Defendants already know.[3]

II. **THE PSC'S OBJECTIVE IN REQUESTING A CENSUS IS TO OBTAIN INFORMATION FOR THE ORDERLY AND EFFICIENT RESOLUTION OF THIS LITIGATION, INCLUDING POSSIBLE SETTLEMENT**

The PSC filed the instant motion for one simple reason – to collect data on the pool of tens of thousands of unfiled cases. Were these unfiled claims actually filed lawsuits, they would be subject to the requirement to provide a Plaintiff Profile Form

---

[2] The PSC notes that this case involves ovarian cancer claims and does not involve claims that assert that the injured person contracted mesothelioma from exposure to talcum powder. Cases involving mesothelioma are part of a different litigation, specifically, litigation ongoing in state court. This request for a census therefore does not seek information about possible unfiled mesothelioma claimants.

[3] It is worth noting that Defendants filed the opposition to the request for a census while the ad hoc lawyers remained silent. This is odd, in that in the normal circumstance, the information contained in a registry about each unfiled claim is something that would be sought by a defendant to assist it in reducing the inventory of possible claims that will have to be resolved. For a global resolution to be reached that is fair, the process involves allocating the settlement funds available to meritorious claimants. Ascertaining how many meritorious claims is essential and should be something that Defendants would want to know as much as the PSC. Defendants' opposition is counter intuitive.

that would disclose information about the plaintiff to be able to ascertain which, if any of such claimants has a case that may fall within the scope of this MDL. But because this huge group of claims are unfiled, there has been no Court-imposed obligation for those claimants to provide information to the PSC that could be sifted through to ascertain which claims are potentially meritorious and which are not. The PSC's focus in this litigation is to obtain fair compensation for those who have legitimate claims.

Basically, Defendants ignore the point of the PSC motion seeking a census. Rather than address the PSC's proper and reasonable request, Defendants chose to waste the Court's time and launch *ad hominem* attacks on the PSC, directed particularly at the Beasley Allen firm. Such tactics provide no assistance to the Court in deciding the instant motion, but instead cloud the process and distract from the actual issues.

The PSC had a clear objective in filing the motion for a census – to learn about the injuries alleged by the individuals with unfiled cases so that they can be appropriately addressed in these proceedings. However, the Defendants did not respond to this clear, straightforward attempt to obtain information, instead spending their time launching unsupported allegations and frivolous arguments. The PSC will not join Defendants' waste of the Court's time by responding to each false or

misleading assertion in their brief. Suffice it to say that a look at Defendants' brief will find it short on substance.

Defendants also have also pushed a false narrative that the PSC is opposed to settlement of talcum powder cases. Demanding that Defendants fairly and adequately fund compensation models for the thousands of individuals harmed by their products is not an opposition to settlement. The PSC takes seriously its responsibility to protect the rights of plaintiffs in this litigation. The PSC is not opposed to settlement and in fact has diligently pursued a fair and reasonable settlement for years. No PSC action suggests that the PSC desires to avoid settlement of this litigation. The PSC remains open to a fair and reasonable plan to compensate the plaintiffs.

### III. **EARLY VETTING IS NOT AN ISSUE IN THE PSC MOTION**

The PSC request for a census of unfiled cases has no connection to the issue of "early vetting," as suggested by Defendants. The American Association For Justice ("AAJ") letter cited by the Defendants sets forth the organization's comments on proposed Federal Rule of Civil Procedure 16.1, including a defense proposal requiring plaintiff fact sheets at the outset of an MDL.[4] This is clearly unrelated to

---

[4] American Association For Justice Letter to Committee on Rules of Practice and Procedure, Feb. 15, 2024).

5

the matter before the Court. That rule-making debate is a red herring thrown into Defendants' brief.[5]

The instant request seeks information on a tsunami of alleged "cases" that are unfiled. It is the PSC's understanding that the great majority of these "unfiled" claims became represented by the ad hoc group of attorneys only as part of the ill-fated bankruptcies that were filed by Defendants. In other words, prior to the filing of the bankruptcies (the first in October 2021), there was no indication that there were tens of thousands of unfiled cases sitting on the sideline that would seek to share in any global settlement of the litigation. However, when the first bankruptcy was dismissed, and in an effort to gain support for Defendants' second bad-faith bankruptcy, Defendants rallied the support of the ad hoc group of attorneys who then stated that they represented tens of thousands of unfiled claims and that they therefore should be afforded power in guiding how this case should be resolved. But what is clear is that many of these "unfiled" cases have arisen many years into this litigation, in the wake of J&J's bankruptcy attempts and are nothing more than an attempt to stuff a bankruptcy ballot box without regard to the consequences that will befall the Plaintiffs with meritorious cases. Plaintiffs with "real cases" are having

---

[5] In seeking the census here, the PSC notes that this is not a request for an early exchange of information, but one that has been made after **8** years of litigation. While the Committee Note for proposed Rule 16.1(b)(3)(B) recognizes that an exchange of information can be appropriate, the question is when should that exchange of information occur. Thus, the PSC is not contradicting the position of AAJ with regard to the proposed Rule.

their claims sacrificed to the will of tens of thousands of unfiled claimants who do not have a meritorious claim. Yet Defendants desire to block the PSC from establishing this truth, by having a census registry established that would require unfiled claimants to reveal their facts and medical conditions.

This case had been structured like other MDL cases. Plaintiffs who filed cases were obligated to provide a Plaintiff Profile Form to both Defendants and the PSC. This provided the PSC with information about the filed cases in the MDL. Because information was ordered to be disclosed through the Plaintiff Profile Form process, there was no need for a census. But with the announcement that there are tens of thousands of unfiled claims, claims that are outside the obligation to file a Plaintiff Profile Form because such claims were not cases in suit, an alternative method is necessary for obtaining information about the unfiled claims, i.e., a census registry. Thus, citation to AAJ's opposition to early Plaintiff Fact Sheets has nothing to do with the dispute here and the chronology of events. AAJ opposed a requirement for the production of a Plaintiff Fact Sheet at an early stage of a case being filed. Here, the PSC is seeking information more than **8** years after this MDL was filed. By any measure, asking for something **8** years into the litigation and because of a massive change of circumstances does not support an argument that the PSC is being disingenuous with a position of AAJ.

7

### IV. DEFENDANTS' CLAIMS AND ASSERTIONS DO NOT ADDRESS THE NEED FOR A CENSUS

Defendants, without basis, misstated the purpose of the PSC motion. Defendants chose to use their opposition filing as a platform for airing grievances about the PSC and raising unrelated matters not germane to the issue of the need for a census. Any argument that doesn't focus on the clear basis of the PSC motion is immaterial. Rather than respond to the legal and factual support for the requested census, Defendants chose to go a different route and attempt to cloud the issue with irrelevant matters and meritless statements about the PSC's actions and objectives.

Defendants claim that granting the PSC motion will be inefficient and burdensome, interfering with the current *Daubert* briefing and upcoming trial preparation. That is far from the PSC's intentions, and in fact the requested census is completely unrelated to the current *Daubert* briefing, which involves the admissibility of experts on asbestos testing, the general and case-specific causation question of whether there is a causal connection between talc and ovarian cancer and whether the genital use of talc caused the ovarian cancer of the bellwether plaintiffs. Moreover, *Daubert* briefing has already commenced with opening briefs filed on July 23, 2024, and with oppositions due on August 22, 2024. This current motion has no impact on the Court's ability to rule on the current *Daubert* issues, or the parties' ability to continue these proceedings on the Court's timelines. In fact, compliance with the census would be the responsibility of the plaintiffs' counsel,

8

including the ad hoc lawyer group, and shouldn't require effort by J&J, making Defendants' expressed concerns about burden and efficiency odd and misplaced.

All of the disingenuous claims and attacks contained in the Defendants' opposition brief have no place in the pleadings, and they shift focus from the actual objectives of the PSC motion. The PSC's motivation is to obtain information on the unfiled claims that could shape a possible global resolution of this MDL. Defendants well know that of the tens of thousands of unfiled claims at issue, that the great majority do not suffer from ovarian cancer, Defendants' motivation for their response is to set a stage for making specious claims about the PSC and arguments that are not helpful to the Court's management of this MDL. Their response lacks merit, relevance, and substance.

## V. THE EXISTENCE OF NON-OVARIAN CANCER CASES FILED BY PSC FIRMS DOES NOT IMPACT THE NEED FOR A CENSUS OF UNFILED CASES

Defendants also try to demonstrate that the PSC has unclean hands because information gleaned from Plaintiff Profile Forms submitted by PSC counsel shows that some of the clients of PSC members do not suffer from ovarian cancer, so essentially, "what is the PSC complaining about" if they have non-compensable claims like the ad hoc attorneys.

However, this point is nothing more than a shot gun argument without any context or reference. First, Defendants do not state when the PSC member may have

filed such a non-ovarian cancer case, but the truth is that such cases were generally filed very early in this MDL. They were filed for a variety of reasons, including the need to file a case because of statute of limitations issues, and that early on in the litigation there was some unsettled science on a causal connection between the use of talc and certain non-ovarian cancers. However, neither party has submitted expert evidence regarding talcum powder's causal relationship to cancers other than ovarian cancer. As this case evolved, up until it was twice stalled by Defendants' bankruptcy attempts, it became clear that the only causally related cancer at issue in the case involved ovarian cancer.  Once the bankruptcies were dismissed and cases were capable of being filed again as the automatic stays were lifted, no PSC member filed a non-ovarian cancer case.  It is believed that only the unfiled claimant claims broadly consist of non-ovarian cancer cases, and the PSC seeks confirmatory information through the use of the census.

Any mass tort litigation will have cases that, as the case evolves, will not satisfy the standards as they develop, due to early filings that needed to be made before the science matures because of statute of limitations considerations. The fact that early filings may have included a small number of non-ovarian cancer cases has no bearing on the need for a census of the unfiled cases, which will affect this MDL (and Defendants hope that the claims of unfiled claimant will influence yet a third bankruptcy). Moreover, here, the character of MDL cases is reflected in Plaintiff

10

Profile Forms provided, while no information is of record with regard to the unfiled cases, which is what ordering a census will rectify.

Defendants' highlighting of some Plaintiff Profile Forms does not support their assertion that the PSC has litigated this MDL to include non-ovarian cancer cases. The form was negotiated by the parties in February 2017 during the very early stages of the MDL litigation, in lieu of individual interrogatories, to obtain information on plaintiffs. The fact that other types of gynecological cancer were listed on the form does not demonstrate that the actual scope of this litigation is broader than ovarian cancer. In the early stages of litigation, the science was unsettled regarding the connection between talcum powder and certain non-ovarian gynecological cancers. However, what was clear in every pleading and presentation by the PSC (in court and outside court) is that the MDL case being put forward by leadership is focused on the causal relationship between the genital use of talcum powder and epithelial ovarian cancer. The parties' proffered general causation experts speak to this specific relationship, and no other. That is the focus of this MDL.

## VI. CONCLUSION

The PSC requests that this Court order a census/registry of individuals with unfiled talcum powder cases. The census should contain basic information about the claim, including medical proof of an ovarian cancer diagnosis. This information will help the PSC grasp the true scope of what is included in this MDL. Defendants have failed to state a valid reason for opposing the PSC motion. This request is reasonable, proper and will not interfere with the ongoing administration of this litigation or the preparation of the upcoming bellwether trial.

Dated: July 29, 2024                     Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
**Plaintiffs' Co-Lead Counsel**


*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
**Plaintiffs' Co-Lead Counsel**

>*/s/ Christopher M. Placitella*
>Christopher M. Placitella
>COHEN, PLACITELLA & ROTH, P.C.
>127 Maple Ave.
>Red Bank, NJ 07701
>Tel: 732-747-9003
>clpacitella@cprlaw.com
>***Plaintiffs' Liaison Counsel***

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

>Respectfully submitted,
>
>*/s/ P. Leigh O'Dell*
>P. Leigh O'Dell