# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS<br><br>MDL No. 16–2738 (MAS) (RLS) |

**REPLY IN SUPPORT OF
DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S ORDER
DENYING DEFENDANTS' MOTION TO COMPEL
AN INSPECTION OF DR. WILLIAM LONGO'S LABORATORY**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................... ii
INTRODUCTION .....................................................................................................1
ARGUMENT .............................................................................................................3
    I.    The Inspection Is Both Relevant And Critical. ......................................3
        A.    Plaintiffs abandon the Special Master's reasoning that prior differences in MAS's methodology render the inspection irrelevant. ......................................................................................3
        B.    The inspection is necessary to disprove Dr. Longo's look-down-the-microscope justification. ............................................4
        C.    The deposition of Mr. Hess serves as a reason to grant the inspection, not deny it. ...............................................................6
    II.    This Court Has Authority To Order An Inspection. ............................9
        A.    The destructive nature of the testing serves as a reason to grant the inspection. ......................................................................10
        B.    Rule 34(a) allows for an inspection. .........................................12
        C.    This Court can order that Dr. Longo's testing should be excluded if he does not submit to an inspection. ......................14
    III.    The Inspection Poses No Undue Burden. ............................................15
CONCLUSION ........................................................................................................15

## TABLE OF AUTHORITIES

**Case**   **Page(s)**

*In re Benicar (Olmesartan) Prod. Liab. Litig.*,
 319 F.R.D. 139 (D.N.J. 2017) ................................................................................ 10

*Haskins v. First Am. Title Ins. Co.*,
 2012 WL 5183908 (D.N.J. Oct. 18, 2012) ......................................................... 7, 10

*Herndon v. Gillis*,
 2022 WL 14935785 (9th Cir. Oct. 26, 2022) ......................................................... 8

*Kreps v. Dependable Sanitation, Inc.*,
 2022 WL 4094124 (D.S.D. Sept. 7, 2022) ........................................................... 8, 9

*United States v. Buncich*,
 20 F.4th 1167 (7th Cir. 2021) ................................................................................. 8

**Other Authorities**

Fed. R. Civ. Prod. 34(a)(2) ........................................................................................ 2

# INTRODUCTION

The relevant analysis on the case-defining issue of whether asbestos is present in Defendants' talc products now turns on a very simple issue: the color of the particles. More specifically, according to Dr. Longo, the critical question is what color a particle appears *as seen down the lens of his microscope.* Naturally, Defendants have asked for discovery to permit them to view particles down the lens of Dr. Longo's microscope. Plaintiffs' latest objection to Defendants' request—"Where Dr. Longo sees purple, [Defendants] see yellow"—defies credulity.



The above particle is yellow, not purple. Period, full stop. The Court can see that simple fact with its own eyes—as can Dr. Longo, and the lawyers who protect him. This is not a Rorschach inkblot test. It is a yellow particle. The fact that Dr. Longo attempts to claim otherwise is patently absurd.

*The gaslighting must end.*

Since Defendants filed their motion to compel an inspection and the Special Master denied it, Plaintiffs' antics have increased. Defendants recently deposed Dr. Longo's analyst, Mr. Paul Hess, who is the one who conducted the analyses at issue in Dr. Longo's expert report and looked down the microscope. He testified that with regards to the above particle and others like it, there is a purple halo around the particle that ***only appears when he looks down his microscope.*** Ex. AL, Hess Dep. 115:15-25. Yet, Plaintiffs continue to fight tooth and nail to keep Defendants away from this magical microscope. Why? Shouldn't Plaintiffs *want* Defendants to also see this case-defining purple?

Carrying the absurdity further, Plaintiffs now argue that Defendants should not be allowed to look live down Dr. Longo's microscope because Defendants simply do not need to—that the defense arguments debunking Dr. Longo's methodology already are *good enough*. Resp. 21-24.[1] Of course, this hypocrisy ignores the simple fact that, despite contending that Defendants have everything they need to rebut Dr. Longo's testing, Plaintiffs are still defending Dr. Longo's claim that Mr. Hess and others at MAS see purple when looking live down the microscope and that is not only why Dr. Longo's report accurate, but also why he is the only one claiming to see asbestos fibers in Defendants' talc products through PLM.

---

[1] Defendants will cite Plaintiffs' Response Brief as Resp. __ and Defendants' Objections to the Special Master's Order as Obj. __.

2

To be clear, this is not just a question about the fair scope of cross-examination. Dr. Longo should not be allowed to suggest to a jury that a particle is purple just because he (or his employee) saw something that no one else has had the opportunity to observe. As an expert, Dr. Longo is cloaked with the aura of authority; perhaps some jurors will believe his proclamation and not the photographs displayed before their very own eyes. And when Defendants try and challenge Dr. Longo's statement, who knows how some future court may rule in terms of a motion *in limine* or other effort to exclude the testimony. The time to deal with this issue is ***now***.

Plaintiffs cannot have it both ways. They have hung their hats on a safe harbor that is impossible to penetrate absent an inspection permitting Defendants to look down Dr. Longo's microscope. Basic fairness, let alone the rules of evidence, dictate either that Defendants be permitted to do so or that Dr. Longo's testing should be excluded as inherently unreproducible and untestable. This Court should order one or the other.

## ARGUMENT

**I.    The Inspection Is Both Relevant And Critical.**

**A.    Plaintiffs abandon the Special Master's reasoning that prior differences in MAS's methodology render the inspection irrelevant.**

Plaintiffs have abandoned the Special Master's reasoning that looking down Dr. Longo's microscope is not relevant or necessary because Dr. Longo used a different testing methodology in the past. *See* Resp. 2 n.2; *see also id* at n.11 (urging

3

the Court to disregard Dr. Longo's evolving methodology). Plaintiffs suggest that the fact Defendants even discussed Dr. Longo's changing methodology is "befuddling." *See* Resp. 2 n.2.

Defendants raised the issue because the Special Master spent *two pages* of his order contending that the change in methodology was a core reason to *deny* inspection. Order at 5-6. But as Defendants argued at the hearing in this matter, discussed in their Objections, and Plaintiffs do not even attempt to respond to, it is the culmination of these methodological changes that have now forced Dr. Longo into the corner of calling yellow particles "purple." Understood in this context, the evolution of Dr. Longo's methodology is *more* reason to grant inspection—not less.

**B.     The inspection is necessary to disprove Dr. Longo's look-down-the-microscope justification.**

Plaintiffs' Opposition boils down to the position that Defendants' criticisms of Dr. Longo's method are so thoroughly cutting that Defendants do not need any more information. Resp. 21-24. It is *this* argument from Plaintiffs that is befuddling.

At this point, Plaintiffs only have two options: **One**, they can admit that Defendants are correct and that Dr. Longo is misreporting the color of the particles and therefore not finding asbestos, in which case Dr. Longo's testing should be immediately excluded. Or **two,** they can insist that Dr. Longo is correct, that the particles are indeed purple, it's just that the purple can only be seen when looking down his microscope. If that is Plaintiffs' position, then Defendants need to look

4

down the microscope with Dr. Longo to test his contention or his method and results should be excluded as incapable of being tested or reproduced.

Put another way: Of course everyone who looks at the pictures of particles included in Dr. Longo's report can see clearly with their own two eyes that the particles are yellow. *See* Resp. 21. And, because they are yellow, the particles are clearly not magenta. *See* Resp. 22. Yes, other plaintiffs-side experts have testified that Dr. Longo is just finding talc in the talc, but still calling it chrysotile. *See id.* And yes, Defendants' experts have issued comprehensive reports critiquing Dr. Longo's work. *Id.* at 23. But instead of admitting defeat and dropping this manufactured asbestos theory, Dr. Longo presses on, insisting: *Trust me you just have to look down my microscope.* And Plaintiffs fall dutifully in line, fully intending to proceed at trial on a "just trust him, it's really purple" explanation.

Plaintiffs claim that "[i]f Defendants wish to challenge Dr. Longo's credibility or identification of asbestos because their litigation consultants disagree about the determination of a particles' refractive index or color in photomicrographs, then they should make that argument to the jury." Resp. 26. How do Plaintiffs imagine that would actually happen at any trial? Without the ability to look down the microscope themselves and so testify to the jury, the Defendants are hamstrung. Dr. Longo is going to testify: *Sure, it may look yellow now in the picture I am showing you, but there is purple around the particles when my analyst looks down the microscope.*

5

Are the jurors, Defendants, and this Court supposed to just take his word for it? Plaintiffs' argument that this is simply a question of "credibility" reveals the utter impossibility of the situation. Is a jury supposed to sort out which expert is accurately reporting the color simply by who says it more confidently?

Plaintiffs have ***no answer*** to the fact that Dr. Longo defended why his "entire analysis" was not wrong by testifying that he would need to look down his microscope. *See* Obj. 5. Similarly, Plaintiffs have ***no answer*** for the fact that Dr. Longo testified that defense expert Dr. Shu-Chun Su was wrong because he never looked down Dr. Longo's microscope. *See id*. Instead, Plaintiffs use the entirety of their energy seeking to prevent Defendants from looking down Dr. Longo's microscope.

### C. The deposition of Mr. Hess serves as a reason to grant the inspection, not deny it.

The deposition of Mr. Hess only further demonstrates the need for an inspection. As the Special Master explained, "Hess, not Longo, did the microscopic analysis required under the PLM methodology." ECF 32817. After the Special Master granted a deposition of Hess, he reasoned (as Plaintiffs also now argue) that an inspection was not warranted because that deposition "should fill in the gaps from Longo's deposition." Order at 8; *see also* Resp. 3, 25. That reasoning can no longer stand. Mr. Hess' deposition was obstructed with constant improper instructions not

6

to answer even the most basic questions. And when he was permitted to answer, Mr. Hess retreated to the same look-down-the-microscope excuse as Dr. Longo.

### 1. The deposition of Mr. Hess was obstructed by pervasive instructions not to answer basic questions.

Mr. Hess' deposition does not serve as an effective alternative to an inspection because it was obstructed by *40 instructions not to answer*. Plaintiffs should not be permitted to point to the deposition of Mr. Hess as a sufficient source of information but then work to ensure that Mr. Hess does not actually provide any answers.

For example, one of the critical pieces of testimony Defendants highlighted in their request for an inspection was Dr. Longo's response that he needed to look down the microscope in order to determine whether the edge effect that MAS is relying on to identify chrysotile is also present on the talc particles. Obj. 22 (citing Ex. AD, Longo Clark Hr'g (Vol. I) 118:20-119:3). Given that response, Defendants asked Mr. Hess whether "[t]he same type of edge effects that you're relying on to call particles chrysotile in Johnson & Johnson are also present on talc plates in your analysis." Incredulously, he was instructed not to answer. *Id.* at 143:11-25. Such gamesmanship prevents Defendants from obtaining this critical information from *anywhere*. And this is but one example of instructions not to answer that were pervasive and covered even the simplest components of Mr.

7

Hess's testing.[2] A deposition where counsel does not permit Mr. Hess to answer basic questions about his analysis does not serve as a substitute for an inspection.

### 2. Mr. Hess defended his analysis with the same look-down-the-microscope excuse.

Mr. Hess's deposition also does not serve as a replacement for an inspection because in the limited instances he was permitted to answer a question, Mr. Hess also testified that the purple color he's claiming to see ***only appears when looking down the microscope***:

> **Q.** So are you telling me that that particle we're looking at is somehow entirely surrounded with purple, but we just can't see it?
>
> **A.** Based on what I saw through the microscope.

*See* Ex. AL, Hess Dep. 115:7-25; *see also* Ex. AM (Dep. Ex. 17). He then offered no way to verify that testing:

> **Q.** Okay. But can we verify that with the picture? Can we verify that in some way?
>
> **A.** Other than what's on the picture, Counselor, I cannot speculate.

Ex. AL, Hess Dep. 117:8-11.

---

[2] As just a few examples, Mr. Hess was instructed not to answer: "In your reports identifying chrysotile in Johnson & Johnson, what color are the particles that you're calling chrysotile typically?" He was instructed not to answer: "What color is; the particle that you're calling chrysotile here?" He was instructed not to answer: "[What] color are you assigning the talc plates we're looking at here?" When defense counsel attempted to direct Mr. Hess's attention to a particular particle, he was even instructed not to answer the question: "Do you see that?" The extent and impropriety of these instructions not to answer is discussed in more detail in Defendants' motion to compel further testimony from Mr. Hess. See ECF No. 32993.

As with Dr. Longo, this was not a one-off issue. Mr. Hess repeatedly testified that he could not give answers based on the produced images but would need to be looking down the microscope.[3] That the person who actually looked down the microscope *also* claims he would need to look down the microscope again to see the supposed "purple" color of the particle further demonstrates why an inspection is warranted.

## II. This Court Has Authority To Order An Inspection.

As much as Plaintiffs seek to parse the caselaw, they do not and cannot dispute that this Court faces a unique situation: An expert is calling things purple that are yellow, and claiming the only time it is possible for anyone to see the "true" color that he sees is when looking live down his microscope. This circumstance calls for a unique solution that by necessity will not have a perfectly analogous example in prior precedent.[4]

---

[3] *See, e.g., id.* at 81:1-11 ("[W]ithout being able to see the true edges of the particle in question . . . I cannot comment."); *id.* at 98:25-99:15 ("It has a mottled appearance, some yellow, but I cannot ascertain the edge off of the photograph."); *id.* at 100:17-19 ("I cannot determine the edge colors from the photograph as presented."); *id.* at 130:8-21 ("I base it on what I see through the scope."); *id.* at 146:2-13 ("Q. So if we don't see something in the photograph that you're claiming is there, then it wasn't really there? A. "It doesn't mean that it wasn't there. I use the scope, not the screen.") (objections omitted).

[4] The situation this Court faces is also unique because Mr. Longo originally conducted the relevant testing in other state court cases and simply incorporated by reference that state-court testing into his MDL report.

9

The existing caselaw demonstrates that an expert may be ordered to allow observation of his testing when circumstances render it appropriate. Never was that more the case than with Dr. Longo's testing.

### A. The destructive nature of the testing serves as a reason to grant the inspection.

One example in which courts find observation of an expert's testing appropriate is in the event of destructive testing. As a threshold issue, Defendants did not waive arguments with respect to destructive testing. *First*, Plaintiffs' contention that Defendants "did not raise it until filing their reply" is simply not true. *See* Resp. 14. Defendants argued in their original motion that this Court should grant the inspection because "the slides with the samples that MAS looks at under the microscope degrade in relatively short order" and so "the only way for defense experts to look at the same particles MAS is looking at in the same way is to view them live under the microscope at the same time as Dr. Longo." ECF 32227-1 at 12. *Second*, any waiver rule "does not apply where the [court below] nevertheless addressed the merits of the issue," as occurred here. *See Herndon v. Gillis*, 2022 WL 14935785, at *2 (9th Cir. Oct. 26, 2022). *Third*, Plaintiffs never contended to the Special Master that any argument was waived, so they have "waived any waiver" argument in any event. *United States v. Buncich*, 20 F.4th 1167, 1172 (7th Cir. 2021).

On the merits, there is no dispute: The particles that Dr. Longo found in Defendants' talc products which he claims are chrysotile asbestos are destroyed.

10

Plaintiffs cite only a single case—*Kreps*—in an attempt to claim that the relevant testing here is not "destructive testing." And even then, Plaintiffs myopically focus on the first two pages of that opinion.

But the opinion does not stop on page 2. Even in *Kreps*, the court on page 3 "analyze[d] the defendants' motion under the destructive testing rubric." *Kreps v. Dependable Sanitation, Inc.*, 2022 WL 4094124, at *3 (D.S.D. Sept. 7, 2022). As the court explained: "In one sense, the testing defendants propose *is* destructive even though sufficient blood will be left over to allow plaintiffs to do rebuttal testing. That is because the sample used by the defendants will be consumed by the testing." *Id.* (emphasis in original). The court went on: "It will cease to exist, so in this sense it will be destroyed, even though more of the blood sample remains available after the testing. Several courts have applied destructive testing analysis to such tests which, while destructive, nevertheless leave a remainder of the item or substance intact." *Id.* (citing *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 612-13 (D. Md. 2006); *Ostrander by Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 418-20 (D. Minn. 1988)). In other words, the *Kreps* case *supports* Defendants' arguments.

In reality, the Court need not wade into this semantic debate. Plaintiffs never respond to the fact that regardless of whether his testing does or does not fall under the category of "destructive testing," "Dr. Longo testified repeatedly that the moments in which his results can be justified are transitory: only when he is looking

11

live down the microscope." Obj. 8. Accordingly, the reasons that justify observation of destructive testing are even more relevant here. Plaintiffs cite no case where an expert claimed that the results of his testing can only be interpreted in a transitory moment and then attempted to deny the opposing party access to those critical moments.

### B. Rule 34(a) allows for an inspection.

Plaintiffs contend that Rule 34(a) permits inspection only of the property of a "party." But the rule in fact states that the Court can order an inspection of property "possessed *or controlled* by the responding party." Fed. R. Civ. Prod. 34(a)(2) (emphasis added). "Federal courts construe 'control' very broadly for Rule 34 purposes. Consequently, there is control if a party has the legal right or ability to obtain the documents from another source upon demand." *Haskins v. First Am. Title Ins. Co.*, 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012) (internal citations omitted).

As Plaintiffs' expert, Dr. Longo is the agent of the Plaintiffs, and his lab is therefore within Plaintiffs' control. That is why parties may be ordered to produce documents within their experts' possession. *See In re Benicar (Olmesartan) Prod. Liab. Litig.*, 319 F.R.D. 139, 142 (D.N.J. 2017) (Schneider, J.) ("It appears from the record in the case that plaintiffs' experts have the ability to obtain the medical records they reviewed."). In fact, the *only* evidence in the record regarding the ability

12

of a defense expert to enter Dr. Longo's lab is Dr. Longo's testimony *welcoming* them to do exactly that. Ex. AG, Longo *Streck* Dep. 135:17-25.

Plaintiffs' complaint that the *samples of talc* are exclusively in Dr. Longo's possession and not Plaintiffs' possession demonstrates the flaw in their entire argument. *See* Resp. 19. Plaintiffs received dozens of split samples of Defendants' talc products from the J&J archive pursuant to a protocol specifically negotiated for this MDL. Plaintiffs' claim that there is some sort of impediment to testing those very same samples because they are being held at Plaintiffs' expert's lab rather than Plaintiffs' counsel's offices is absurd. Indeed, the fact that a bellwether plaintiff herself may retain a bottle of talc that of course can later be tested defeats Plaintiffs' entire argument that it makes a difference who has possession of the physical samples. *See* Ex. AN, Special Master Argument Transcript at 85:14-20.

Moreover, Rule 26(a)(2)(B)(ii) requires an expert witness to produce "the facts or data considered by the witness." Plaintiffs' claim that Defendants have "received the data underpinning Dr. Longo's opinions." Resp. 8. That is simply not true. The *key* data that Dr. Longo relies on are the colors Mr. Hess allegedly only sees when looking down the microscope. The *only* way that Dr. Longo can produce

13

the data he is relying on—what appears when looking live down the microscope—is by allowing the defense to look live down the microscope right along with him.[5]

### C. This Court can order that Dr. Longo's testing should be excluded if he does not submit to an inspection.

Plaintiffs largely ignore Defendants' alternative enforcement mechanism that the Court exclude Dr. Longo's testing as incapable of being tested or reproduced if he does not submit to an inspection. These arguments are far from "irrelevant and distracting" as Plaintiffs contend. Resp. 29. Nor do Defendants' arguments on this front have anything to do with the fact that a court can also award attorneys' fees for a successful motion to compel under Rule 37. Resp. 30.

This Court unquestionably has the power to exclude Dr. Longo's testing. The Court has only Dr. Longo's own say-so that the obviously yellow particles in the images he has produced somehow look different when looking down the microscope. Plaintiffs do not respond at all to the caselaw on that issue. *See* Obj. 32-33. It is squarely within this Court's authority to issue an order ruling that if Dr. Longo does not agree to an inspection, it will exclude his testing under that Rule 702 framework. Critically, this is an issue the Special Master expressly stated that he was not addressing, so it falls on this Court decide the question in the first instance.

---

[5] Nor does work product pose any obstacle. Dr. Longo is not Plaintiffs' consulting expert but their testifying expert. And Defendants cited numerous examples of courts permitting an opposing expert to observe another's testing. Obj. 30 & n.3.

14

### III. The Inspection Poses No Undue Burden.

Finally, there is no evidence that the requested inspection would be unduly burdensome. Plaintiffs argue that an inspection would "shut down MAS's operations for the inspection's duration and displace and impinge on its scientists' and technicians' work." Resp. 27. But they cite nothing for that statement.[6]

Nor do Plaintiffs have a response to what the *actual evidence* shows. They do not respond at all to Dr. Longo's testimony that he would be "perfectly happy" to have a defense expert visit his lab. Ex. AG, Longo *Streck* Dep. 135:17-25. Instead, Plaintiffs misleadingly rely on their contention that sample preparation can take "up to 72 hours." Resp. at 27. But as Defendants explained to the Special Master, the 72 hours of sample preparation time that Plaintiffs refer to represents the amount of time MAS has (at times) spun the talc sample in a centrifuge. *See* Resp. Ex. B at 148:16-17; *but see* Obj. ECF 32227-19 at 203:6-10 (10 minutes). Defendants have stated repeatedly, and do so again to eliminate any lingering confusion, no observation is necessary during that passive component of the preparation process. *See* ECF 32808 at 13-14. This supposed "72 hour" burden is a red herring.

## CONCLUSION

This Court should order Defendants' requested inspection.

---

[6] Plaintiffs' contention in a footnote that they in fact submitted evidence similarly contains no citation to actual evidence. Resp. 28 n.10.

15

Dated: July 29, 2024                    Respectfully submitted,

*/s/ Kristen R. Fournier*
Kristen R. Fournier
Matthew L. Bush
**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
kfournier@kslaw.com

Susan M. Sharko
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
susan.sharko@faegredrinker.com

*Attorneys for Defendants Johnson & Johnson and LLT Management, LLC*

## CERTIFICATION OF SERVICE

I hereby certify that on July 29, 2024, a true and correct copy of the foregoing motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Kristen R. Fournier*
Kristen R. Fournier
**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
kfournier@kslaw.com
