# Exhibit AN

June 12, 2024

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Docket No. 3:16-md-2738-FLW-LHG

_____

IN RE:

JOHNSON & JOHNSON TALCUM          HESS MOTION AND
POWDER PRODUCTS MARKETING,        INSPECTION MOTION
SALES PRACTICES AND PRODUCTS      VIA REMOTE ZOOM
LIABILITY LITIGATION              VIDEOCONFERENCE

_____


\*      \*      \*      \*

WEDNESDAY, JUNE 12, 2024

\*      \*      \*      \*


BEFORE:   SPECIAL MASTER JOEL SCHNEIDER, USMJ, RETIRED
          jschneider@mmwr.com
          856-488-7797



MASTROIANNI & FORMAROLI, INC.

Certified Court Reporting & Videoconferencing

P.O. BOX 368

Haddon Heights, New Jersey 08035

856-546-1100

Electronically signed by Theresa Kugler (001-297-027-4278)          cb0ee5fb-da42-4ef7-b213-e7cfe625f8de

Page 82

1    and Mr. Hess and others, it is having them reproduce
2    or do work that they would not be doing otherwise.
3    Because they have Dr. Longo's opinions in the MDL, he
4    has all that he's going to be opining on right now.
5    And so there is just absolutely no precedent to allow
6    this.
7            And it would be intrusive, it would
8    really paralyze Dr. Longo's lab.  He has a large
9    commercial lab and it does a lot of other things,
10   which we've listed in our brief.  And it would
11   require a tremendous disruption in order for this to
12   take place.
13           There are samples from other cases, not
14   just talc cases, but other cases that these analysts
15   are working on.  There are other materials.  It would
16   be incredibly expensive and obtrusive.  The nature of
17   the burden really can't be overstated.
18           But, your Honor, you got to sort of
19   factually were of the heart of this.
20           Number one, is there is talc that
21   remains and can be tested by Johnson & Johnson's
22   experts, if they so choose.  And in many instances,
23   they have not elected to do so.  And so that's their
24   choice.  They are not, under the law, allowed to
25   compel Dr. Longo to do testing them watch them

Page 83

1    test when they can do that testing on their own.
2            You heard about the samples, and I just
3    want to correct something.  You know, there were
4    Chinese historical samples that are part of Dr.
5    Longo's fourth supplemental report, so MDL samples.
6    Both Imerys and J&J.  And so they have opportunity to
7    do this themselves.
8            You heard this discussion from Matt
9    about methodology.  What we want is to observe the
10   latest methodology.  Again, what I said before is in
11   each individual report he described the methodology
12   he employed.  It has been adjusted over time as he's
13   learned more and they have had more experience.
14           But the most recent reports, and I
15   would say one that hasn't been mentioned at all,
16   we've only heard about the Valadez case, but there
17   are numerous other cases, not the least of which is
18   Ms. Newsome's case, which is an MDL plaintiff,
19   bottles that she retained were tested and chrysotile
20   asbestos was located.  There is a methodology
21   described in that report including not only what they
22   did from a mechanical standpoint, but the microscope
23   that was used, all the things that were a part of
24   that methodology.  Dr. Longo was not asked one
25   question about that report at all.  He was asked

Page 84

1    about his general methodology.  And if they want to
2    replicate that, they can do that.
3            As you pointed out, Dr. Su and Dr.
4    Wiley in particular -- Dr. Sanchez comments less on
5    the PLM work than the others, theirs is more
6    detailed, but they are well-recognized experts and
7    they can get a sample of Johnson's Baby Powder and
8    they could replicate Dr. Longo's methodology, if they
9    chose to.  But they have not.  And so there is no
10   reason to compel this of Dr. Longo.
11           Further, in terms of what would happen
12   at some inspection if this burden were put on Dr.
13   Longo, would get down to a photomicrograph, which
14   they already have in spades in every report.  And
15   they are commenting on those now and they have never
16   expressed in their expert reports, Dr. Wiley and Dr.
17   Su, that they need more.  And in Dr. Sanchez's case,
18   he has testified in nearly all, if not all, the
19   recent mesothelioma trials, and he has testified
20   fully and never once expressed having inadequate
21   information in order to provide his opinions.
22           And in the case of Zimmerman, and I
23   want to correct something that was in error in the
24   Plaintiffs' brief, it said there hadn't been testing
25   in some of the cases.  Well, Zimmerman is a case

Page 85

1    where there was testing by Dr. Sanchez that had not
2    been disclosed in the MDL, so we weren't aware of
3    that.  But he tested the samples himself and he said
4    I didn't find any asbestos.  That is really talc.
5    And what Dr. Longo is identifying is misidentified.
6    So they are fully capable of defending this case as
7    they've done in other cases in recent years and
8    certainly without -- without having an inspection.
9    And that's been two-and-a-half years where this has
10   never been requested.
11           And I will say, not only is there no
12   other case where this has been allowed in any
13   reported case, but there is no evidence that it's
14   ever been allowed in this type of litigation,
15   asbestos litigation, for decades.  I mean this is the
16   most obstructive, invasive request I think that has
17   been made certainly in the talc litigation and I
18   would suggest others.
19           And let's get down to it, you know,
20   Judge, this is really -- this is, you know, in the
21   last round of testing, the debate was is it
22   asbestiform or not asbestiform, looking at
23   photomicrographs and images of fibers.  And so that
24   was from TEM.  Now the debate has become the color
25   and it is whether it's yellow or magenta,

Electronically signed by Theresa Kugler (001-297-027-4278)                                    cb0ee5fb-da42-4ef7-b213-e7cfe625f8de

June 12, 2024

Page 94

1    learning experience for those people.  They saw some
2    terrific lawyers argue some very, very difficult
3    issues.  The briefs were superb, as usual and as
4    expected.  And it's just a pleasure for me to deal
5    with professionals, no matter how the ultimate
6    resolution turns out.
7            Theresa, thank you very much.  I'm sure
8    you will continue your career record of not making
9    one mistake in a transcript, so that's always
10   appreciated.
11          Thank you, everybody.  We're adjourned.
12          (Hearing Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 95

1         C E R T I F I C A T E
2
3        I, Theresa Mastroianni Kugler, a Notary Public
4    and Certified Court Reporter of the State of New
5    Jersey, do hereby certify that the foregoing is a
6    true and accurate transcript of the testimony as
7    taken stenographically by and before me at the time,
8    place, and on the date hereinbefore set forth.
9
10       I DO FURTHER CERTIFY that I am neither a
11   relative nor employee nor attorney nor counsel of any
12   of the parties to this action, and that I am neither
13   a relative nor employee of such attorney or counsel,
14   and that I am not financially interested in the
15   action.
16
17
18
19   _____
     Theresa Mastroianni Kugler,
20   Certified Court Reporter
     Certificate No. XIO857
21   Notary Public, State of New Jersey
     Commission Expires July 11, 2026
22   Commission No. 2410394
     Date:  June 17, 2024
23
24
25

25  (Pages 94 to 95)

Electronically signed by Theresa Kugler (001-297-027-4278)                    cb0ee5fb-da42-4ef7-b213-e7cfe625f8de