



Montgomery
218 Commerce Street
P.O. Box 4160
Montgomery, AL 36103-4160

Atlanta
4200 Northside Parkway
Building One, Suite 100
Atlanta, GA 30327

(800) 898-2034
BeasleyAllen.com

**P. Leigh O'Dell**
leigh.odell@beasleyallen.com

**Michelle A. Parfitt**
mparfitt@ashcraftlaw.com

August 1, 2024

Honorable Rukhsanah L. Singh, U.S.M.J
United States District Court
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

>    *Re:  Johnson & Johnson Talcum Powder Products, Marketing, Sales Practices and Products Liability Litigation*
>         Case No.: 3:16-md-02738-MAS-RLS

Dear Judge Singh:

The Plaintiffs' Steering Committee (PSC) issued a Notice of Deposition to each of Defendant Johnson & Johnson's ("J&J") experts that included requests for certain categories of relevant documents. *See* Ex. 1.  As part of these requests, Plaintiffs sought copies of invoices submitted by J&J's experts to J&J for expert work relating to all talc cases filed in federal and state court that allege injuries for ovarian cancer and mesothelioma as a result of using J&J's talcum powder products. Notably, Defendants already have the invoices for Plaintiffs' experts, and in many instances, Plaintiffs have provided J&J with all Plaintiffs' expert witness invoices in Plaintiffs counsel's possession for expert work performed in all talc cases filed in federal and state court that allege injuries for ovarian cancer and mesothelioma as a result of using J&J's talcum powder products.  With Plaintiffs' expert invoices in hand, J&J is now insisting on producing invoices related to the work performed by its experts *for this MDL only*.

This information is relevant to demonstrate potential bias or financial interest and may be used for impeachment purposes.  Accordingly, Plaintiffs respectfully move this Court to compel J&J to produce invoices for its experts' work relating to all talc cases filed in federal and state court that allege injuries for ovarian cancer and mesothelioma as a result of using J&J's talcum powder products for the reasons set forth herein.

## I. ARGUMENT

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and such discovery need not be admissible in evidence to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). "The scope of discovery in a federal action has been described as 'unquestionably broad.'" *United States v. Nobel Learning Cmtys.*, 329 F.R.D. 524, 527 (D.N.J. 2018) (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)).

District courts within the Third Circuit and in other federal jurisdictions routinely permit discovery relating to an expert witness's compensation as relevant to show possible bias or financial interest. "The courts have held that the amount of income derived from services related to testifying as an expert witness is relevant to show bias or financial interest." *Smith v. Transducer Tech., Inc.*, 2000 U.S. Dist. LEXIS 17217, at *4 (D.V.I. Nov. 16, 2000) (collecting cases and compelling production of expert witnesses' invoices and requests for payments billed to plaintiff's attorney for two-year period); *see also Good v. First Energy Corp.*, 2016 U.S. Dist. LEXIS 15311, at *15-16 (M.D. Pa. Feb. 9, 2016) (recognizing that fees received by experts may be relevant to establish bias and may affect the way jury views witnesses' credibility).

District courts in other jurisdictions have also routinely permitted discovery of expert witness compensation in past cases because a pattern of compensation raises an inference of possible slanted testimony. For example, in *Bello v. Horace Mann Cos.*, 2010 U.S. Dist. LEXIS 165785, at *5 (E.D. La. Mar. 11, 2010), the court determined that "the financial relationship between a party and an expert witness is relevant to show bias." *Id.* at *6. The *Bello* court noted that "[t]he United States Court of Appeals for the Fifth Circuit has held that an expert witness may be cross-examined about fees earned in prior cases to demonstrate bias." *Id.* at *5 (citing *Collins v. Wayne Corp.*, 621 F.2d 777, 874 (5th Cir. 1980)). "A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases." *Id.* (quoting *Collins*, 621 F.2d at 777).

Similarly, in *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 273 F.R.D. 360, 361 (D. Mass. 2011), the court denied defendant's request for a protective order and held that compensation paid by defendants to its experts in that

case and related cases since 2003 was relevant to demonstrate possible bias. "Pursuant to Fed. R. Civ. P. 26(a)(2)(B), a party must disclose the compensation to be paid to its expert witness for the study and testimony in the case. In addition, some courts allow discovery into an expert's compensation in related cases or by a particular party over a specified period of time on the ground that such information is relevant to the expert's credibility and possible bias." *Id.* (collecting cases) and (citing *Amster v. River Capital Int'l Grp., LLC*, 2002 U.S. Dist. LEXIS 16595 (S.D.N.Y. Sept. 4, 2002) (listing cases and ordering disclosure of amount of compensation paid by party to expert in that case and over prior time period)).

In *Coleman Co. v. Team Worldwide Corp.*, 2021 U.S. Dist. LEXIS 213395, at *7 (E.D. Va. Oct. 18, 2021), the court permitted plaintiff's request for defendant's compensation to its expert witness in support of defendant's litigation from 2015 to 2021. The court found that past witness compensation in similar matters was a relevant, potential source of bias. *Id.* (quoting *Bluestone Coal Corp. v. CNX Land Res. Inc.*, 2009 U.S. Dist. LEXIS 62803 (S.D.W. Va. July 1, 2009) ("It is well-settled that the amount of an expert's compensation is relevant to bias.")).

In a pelvic mesh case, *Kieffaber v. Ethicon, Inc.*, 2021 U.S. Dist. LEXIS 57891, at *14-15 (D. Kan. Mar. 26, 2021), plaintiff moved the court to exclude any reference to the amounts paid to expert witnesses in cases other than the case at bar, arguing that such testimony was irrelevant and could improperly influence the jury. The court denied the motion, stating, "Overall compensation, including financial interests or investments in the litigation of pelvic mesh cases, is highly relevant and probative on the issue of bias, and its relevance is the reason to admit it – not exclude it." *Id.*

Courts have also recognized the importance of obtaining this type of information for impeachment purposes. "Rule 26(b)(4)(A) should be construed so as to sanction liberal discovery of expert witnesses, including information relevant only for impeachment." *Bockweg v. Anderson*, 11 F.R.D. 563, 565 (M.D.N.C. 1987). "Indeed, prohibiting cross-examination of an expert concerning his biases, fees, and related matters would normally be reversible error." *Id.* at 566 (permitting questioning of expert witnesses concerning their involvement, past or present, in other malpractice actions).

"Evidence of a special relationship between an expert witness and legal counsel is relevant to demonstrate the possible bias of the expert witness." *Butler v.*

*Rigsby*, 1998 U.S. Dist. LEXIS 4618, at *7 (E.D. La. Apr. 7, 1998). "Similarly, an expert witness'[s] experiences in prior lawsuits [are] relevant to demonstrate possible biases." *Id.* at *8. Furthermore, "the amount of income derived from services related to testifying as an expert witness is relevant to show bias or financial interest." *Id.* at *10 (citing *Wacker v. Gehl Co.*, 157 F.R.D. 58, (W.D. Mo. 1994) (stating that tax returns of expert witness might lead to admissible evidence of bias and could be used for impeachment purposes)).

Here, Plaintiffs are entitled to copies of invoices submitted by J&J's experts to J&J for expert work relating to *all* talc cases filed in federal and state court that allege injuries for ovarian cancer and mesothelioma as a result of using J&J's talcum powder products. The amount of compensation paid by J&J to its experts in this and related litigation is relevant to demonstrate potential bias or financial interest and could be used for impeachment purposes.

## II.  CONCLUSION

Accordingly, Plaintiffs respectfully request this Court to compel J&J to produce copies of invoices for its experts' work relating to all talc cases filed in federal and state court that allege injuries for ovarian cancer and mesothelioma as a result of using J&J's talcum powder products.

Thank you for your consideration of this matter.

Respectfully submitted,

*/s/ P. Leigh O'Dell*                     */s/ Michelle A. Parfitt*

P. Leigh O'Dell                             Michelle A. Parfitt

cc:   Hon. Joel Schneider (U.S.M.J, ret.)
      Susan Sharko, Esq. (via email)