# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*THIS DOCUMENT RELATES TO ALL CASES* | MDL No. 16-2738 (MAS) (RLS) |

## THE PLAINTIFFS' STEERING COMMITTEE'S OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON AND LLT MANAGEMENT LLC'S MOTION TO COMPEL DEPOSITION TESTIMONY OF <u>PAUL HESS AND FOR SANCTIONS</u>

**<u>Table of Contents</u>**

TABLE OF CONTENTS…………………………………………….……………ii

TABLE OF AUTHORITIES………………………………………………………iii

**BACKGROUND** ................................................................................ 2

**LEGAL STANDARD** ....................................................................... 9

**ARGUMENT** .................................................................................... 10

   **I.**   **Counsel Properly Instructed Hess Not to Answer Questions that Exceeded the Court-Imposed Boundaries on His Deposition.** ...................... 11

     **A.**  **Counsel Complied with the Court's Order When They Instructed Hess Not to Answer Questions about Samples M70484-001 and M71614-001.** ................................................................................................... 11

     **B.**  **Counsel's Instructions Not to Answer Questions About the Calidria Reference Sample Complied with the Court's Instructions.** ...................... 16

     **C.**  **Defense Counsel's Questioning About the ISO Reference Sample Exceeded the Deposition's Scope.** ................................................................ 17

     **D.**  **Defense Counsel's Questioning About Illumination and Color Filtering Violated the Court's Limiting Order.** ........................................... 19

     **E.**  **Questions about Defense Experts' Review of Dr. Longo's Work Violate the Court's Prohibition on Hess Testifying on "What Somebody Else Opines."** ................................................................................................... 20

     **F.**  **Defense Counsel's "Other Questions" Exceed the Deposition's Scope…**…………………………………………………………………… 21

   **II.**    **The Court Should Deny Defendants' Motion to Reconsider Its Ruling Barring Questions Comparing Hess's Current Work to His Old Work or Others' Work.** .................................................................................. 22

   **III.**   **The Court Should Not Award Sanctions.** ........................................ 24

**CONCLUSION** ................................................................................ 27

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Access 4 All, Inc. v. ANI Associates, Inc.*,
  No. 04-6297, 2007 WL 178239 (D.N.J. Jan. 12, 2007) .......................................26

*Antolini v. McCloskey*, No. 19 Civ.,
  09038, 2022 WL 1689331 (S.D.N.Y. May 26, 2022).........................................25

*Bordelon Marine, Inc. v. F/V KENNY BOY*,
  Nos. 09-3209, 09-6221, 2011 WL 164636 (E.D. La. Jan. 19, 2011) ...................25

*D'Argenzio v. Bank of Am. Corp.*,
  877 F. Supp. 2d 202 (D.N.J. 2012).......................................................................23

*Hopkins v. NewDay Fin., LLC*,
  No. 07-3679, 2008 WL 4657822 (E.D. Pa. Oct. 17, 2008)....................................9

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994)............................................................................. 10, 26

*James v. Osmose, Inc.*,
  No. 2014-64, 2015 WL 9239789 (D.V.I. Dec. 17, 2015) ......................................9

*Lawson v. Praxair, Inc.*,
  No. 16-2435, 2021 WL 12102368 (D.N.J. Feb. 24, 2021)............................. 10, 26

*Maurer v. Williams*,
  No. 1:11cv2260, 2013 WL 1438092 (M.D. Pa. Apr. 9, 2013) .............................10

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ...................................................................................... 10, 26

*Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*,
  No. 2:19cv698, 2021 WL 1968270 (W.D. Pa. Mar. 3, 2021)................................9

*rel. Lou-Ann, Inc. v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999)..................................................................................23

*United States v. Johnson & Johnson*,
  No. 12-7758, 2021 WL 7906211 (D.N.J. June 14, 2011).............................. 10, 26

**Rules**

Fed. R. Civ. P. 37(a)(5)(A)(ii) .......................................................................... 13, 25
Federal Rule of Civil Procedure 30(c)(2) ....................................................2, 9, 11, 18

The Plaintiffs' Steering Committee respectfully submits this Opposition to Defendants' Motion to Compel Deposition Testimony of Paul Hess and for Sanctions:

After the Court clearly limited the deposition of Material Analytical Services, LLC ("MAS") analyst Paul Hess to his "personal observations," Defendants decided to ignore that ruling and ask whatever questions it wanted anyway. Throughout the deposition, defense counsel made clear that he intended to conduct a wide-ranging <u>expert</u> deposition where he would ask Hess about "his knowledge, experience, and training and how he has formulated the opinions that he has stated in [Dr. Longo's] reports."[1] But Hess did not formulate any opinions in any report at issue in this case. Indeed, Plaintiffs designated Dr. William Longo, not Hess, as their material science expert. The Court acknowledged this reality by cabining Hess's <u>fact</u> deposition to the <u>personal observations</u> he made when conducting the underlying PLM analyses that provided part of the factual basis for Dr. Longo's Fourth Supplemental MDL Report. The Court repeatedly reiterated these tight limits over defense counsel's strenuous objection, never wavering in its decision to limit this fact deposition to a narrow set of personal observations that Hess made while performing analyses of specific samples that are the subject of Dr. Longo's Fourth Supplemental MDL report.

---

[1] Hess Dep. 162:16-18, Ex. A.

When defense counsel strayed from these boundaries and attempted to replace the Court's view of the deposition's proper scope with his own, Plaintiffs' and Hess's counsel instructed Hess not to answer. This comported not only with Federal Rule of Civil Procedure 30(c)(2), which explicitly allows an attorney "to instruct a deponent not to answer . . . to enforce a limitation ordered by the court," but also the Court's instruction that counsel "instruct the witness not to answer" if the "questioning is going out of th[e] boundaries" the Court set.[2] Simply put, counsel had good reason for instructing Hess not to answer defense counsel's inappropriate questions. The Court, therefore, should deny Defendants' motion.

## BACKGROUND

All parties acknowledge Hess's expertise as a polarized light microscopy (PLM) microscopist; but he is not designated as an expert witness in this case. Given Hess's status as a non-expert, the Court permitted Defendants to conduct a limited-scope <u>fact</u> deposition to explore Hess's "firsthand information" concerning the testing and assistance he provided to Dr. Longo in relation to Longo's Fourth Supplemental MDL Report. Special Master Order No. 23 (Deciding Plaintiffs' Motion to Quash or for Protective Order Regarding Subpoena Directed at Paul Hess, Dkt. No. 32195) at 3 n.7 ("Special Master Order No. 23"). Hess sat for the Court-ordered deposition on July 10.

---

[2] *Id.* at 43:18-21.

From the deposition's outset, it became apparent that defense counsel intended to exceed the deposition's limited scope to harass Hess and attempt to elicit expert opinion testimony. After covering preliminary matters, defense counsel asked Hess about the Food & Drug Administration finding chrysotile, i.e., asbestos, "in a bottle of Johnson & Johnson [("J&J")]" baby powder using the transmission electron microscopy ("TEM") methodology, not the PLM methodology Dr. Longo used in relation to chrysotile testing, which is the subject of the November 17, 2023 disclosure in the MDL. Hess Dep. 20:17-20. Hess's counsel immediately objected, pointing out that "Hess is a fact witness that we produced because of [a] Court Order. He is not here to opine on expert testimony or hearsay issues." *Id.* at 20:21-25. Defense counsel's flippant response made clear that he intended to ignore the Court's limitations on Hess's deposition and counsel's attempt to enforce them: "I don't know what you're saying, but I am sure I disagree with it. So let's just see how it goes with individual questions. Because I am definitely going to be asking him about his work." *Id.* at 21:1-5. Despite counsel's reasonable efforts to enforce the Court's limitations, defense counsel complained—as Defendants do again here—that Hess's and Plaintiffs' counsel[3] were "just being obstructionist." *Id.* at 27:11-12.

---

[3] This brief refers to all plaintiffs' attorneys who objected to defense counsel's questioning as Plaintiff's counsel.

Given counsel's justifiable concerns about "the mode of the deposition," Plaintiffs' and Hess's counsel called the Court for "direction" on how they should handle defense counsel's brazen disregard for the Court-ordered limitations on Hess's deposition, acknowledging that they did not know "how to even address these circumstances." *Id.* at 29:14-17, 30:20-23. Plaintiffs' counsel noted the Court's prior ruling that "Mr. Hess is a fact witness, . . . not an expert," and reminded the Court that Hess simply worked "at MAS lab for purposes of Dr. Longo rendering his expert opinion." *Id.* at 29:2-5. Accordingly, Plaintiffs objected to defense counsel examining Hess on "reports by Dr. Longo and Rigler" and "the full scope of Dr. Longo's reports, which are not [Hess's] work." *Id.* at 29:6-12.[4]

Plaintiffs' counsel further argued that it was "not fair" for defense counsel to ask Hess about material in reports not at issue in Longo's Fourth Supplemental MDL Expert Report and that discussed analyzing talc for chrysotile using a method other than Dr. Longo's current PLM methodology. *Id.* at 34:9-35:2. In other words, Hess's "work was the bench work [for Dr. Longo] and the photomicrographs," and Plaintiffs' and Hess's counsel objected to questions going "beyond that." *Id.* at 35:2-6.

---

[4] Dr. Longo's reports outline in narrative form his methodology, the references (both published and by J&J) supporting the appropriateness of the methodology, background information about where the talc was obtained, his opinions about the results of the testing, among other topics. Mr. Hess is not responsible for these aspects of Dr. Longo's reports. Mr. Hess's involvement is limited to the analysis of the material and documenting the structures of interest on bench sheets, photomicrographs, etc.

From there, the Special Master repeatedly agreed with Plaintiffs' counsel's arguments and reiterated that he ordered a <u>limited-scope fact deposition</u> of Hess. He explained that Plaintiffs' counsel "is correct that the subject matter of the deposition should only be limited to what I call . . . this new method," i.e., the PLM analysis set forth in Dr. Longo's Fourth Supplemental MDL Report, and that "the deposition was only limited to Mr. Hess's <u>personal involvement</u>." *Id.* at 35:13-17, 36:3-5 (emphasis added). Accordingly, defense counsel's

> questions ha[d] to be limited to only what Mr. Hess did, his tests, his <u>personal observations</u>. The deposition is not to get Mr. Hess's opinion on what somebody else did or what somebody else opines.
> <u>Mr. Hess is there to testify about his firsthand personal knowledge</u> about . . . this new testing method; . . . that is precisely why Mr. Hess' deposition was permitted. It was not permitted to go over ground that was covered previously in the case, the TEM tests[.] . . .
> [T]hose [are the] parameters of why Mr. Hess' deposition was permitted, those should be the parameters of this deposition.

*Id.* at 36:10-21, 37:8-11 (emphasis added).

Undeterred by the Court's re-articulation of its prior limitation on Hess's deposition, defense counsel argued that the Court should modify its ruling so he could ask Hess wide-ranging questions "about this kind of [PLM] analysis" and Longo's 2nd Supplemental report which was previously addressed by the Court's April 2020 *Daubert* order. *Id.* at 38:6-8. In the process, he made plain his disdain for the Court's authority and forecast his continued intent to ignore it, complaining that he "really [felt] like [he] should be able to ask the witness these questions" without

5

needing to "explain to everybody" his reasons for exceeding the deposition's limitations. *Id.* at 38:17-19.

The Court did not waiver. It held that defense counsel could ask Hess "about the tests using the new method," but "the purpose of the deposition is not to say, Why did this person not find chrysotile and you found chrysotile? Ask [Hess] about his tests and what he did and how he did it." *Id.* at 39:7-13.

Defense counsel did not relent. He again attempted to expand the deposition's scope, contending that he was "asking about [Hess's] work" because Hess "did the work on both" reports on which he wanted to ask questions. *Id.* at 39:14-15. Plaintiffs' counsel intervened, noting that the old 2019 report "was for amphiboles," not chrysotile, the PLM work "was not done at MAS, . . . was done by another lab, and . . . was fully covered by the" earlier proceedings in this case. *Id.* at 39:16-21. Plaintiffs' counsel further objected that defense counsel improperly attempted to lay "foundation" from "the prior report when some of that work was not" Hess's work. *Id.* at 40:1-3. Simply put, "the 2019 report is off the table" because the "deposition today is supposed to be about the report here at issue [Dr. Longo's April 29, 2024 Fourth Supplemental MDL Report], nothing beyond that report[.]" *Id.* at 40:4, 17-20.

The Court was "persuaded by plaintiffs' argument" and again set forth the deposition's boundaries:

the tests that [Hess] did, how he did it, his observations. He is not there to answer questions about why did they get the result in a 2019 test and a different result in a later test; that's not why he is there.

He is there to talk about his personal observation about the new test; that's it.

*Id.* at 41:6-14 (emphasis added).

Defense counsel again refused to accept the Court's order, complaining that he wanted to ask Hess about "his own work, doing it the exact same way, why he came to conclusion—different conclusion one time versus the other, his own personal PLM work." *Id.* at 41:15-19. The Court rejected the argument, stating that "[i]f it's not one of those tests [on an exhibit list the Special Master referred to in oral argument], it's off limits. That's not the purpose of the deposition." *Id.* at 42:4-6.

For a <u>fourth</u> time, defense counsel refused to accept the Court's clear order, grousing that, "I am only asking about his PLM work in 1.550 and 1.560 [referring to different oils used to prepare microscope slides for viewing under a PLM microscope], which is the subject of the deposition. I'm not asking anything about any PLM work."[5] *Id.* at 42:7-12. The Court rebuffed the argument—again—explaining—again—that

---

[5] Presumably, defense counsel misspoke when he said that he was "not asking anything about any PLM work." *Id.* at 42:11-12. In the immediately preceding sentence, he said that he was "only asking about his PLM work," and throughout the deposition he repeatedly asked Hess about PLM work. *Id.* at 42:7-8.

> one of the arguments for why the exception [Plaintiffs' motion to quash Hess's deposition] was denied was because those [i.e., defense] experts prepared detailed reports rebutting the plaintiffs' experts and in those reports they attached as exhibits the list of the samples that are at issue regarding this new method. <u>That's it. That's it. Those are the tests at issue.</u>"

*Id.* at 42:19-43:1 (emphasis added).

Remarkably, this did not end the matter. Defense counsel, for a <u>fifth</u> time, pleaded with the Court to change its ruling, explaining that, although he professed to understand the Court's ruling, he wanted to ask Hess about conclusions from a prior report because he allegedly "need[ed] to understand what changed between the two times [Hess] looked at this with 1.550 oil to understand his conclusions." *Id.* at 43:2-7. This argument did not sway the Court. It explained—yet again—that:

> [I]f you're asking about that, my ruling would be that's off limits; <u>that's not the purpose of this deposition, not to compare old tests to new tests</u>.
> The purpose of this deposition is to ask him about his <u>personal observations</u> regarding the new test; that's what was in the defendant's papers. They didn't say anything about asking him to compare old to new.
> That's my ruling. <u>If the defendants[6] [sic] think the questioning is going out of those boundaries, instruct the witness not to answer</u>. We'll look at the transcript and we'll make a ruling on a more fulsome record, but I don't know what else I can say, Counsel.
> It really should be a pretty easy deposition. You have the tests at issue. <u>Mr. Hess is only going to testify about his personal observations</u>. To me that's pretty—the boundaries are pretty clear. So I don't know what else I can say.

*Id.* at 43:8-44:4 (emphasis added).

---

[6] The context makes clear that the Court meant to refer to the Plaintiffs.

Unsurprisingly, given his recalcitrance with the Court, defense counsel repeatedly overstepped the Court-imposed boundaries on Hess's deposition, asking Hess about far more than his "personal observations" and attempting instead to elicit expert opinion testimony. *Id.* at 44:1-2. When this happened, Plaintiffs' and Hess's counsel "instructed the witness not to answer," <u>as the Court explicitly instructed</u>. *Id.* at 43:18-21.

## LEGAL STANDARD

Rule 30(c)(2) provides that a "person may instruct a deponent not to answer . . . to enforce a limitation ordered by the court." *See also James v. Osmose, Inc.*, No. 2014-64, 2015 WL 9239789, at *4 (D.V.I. Dec. 17, 2015) (refusing to "conclude that the instructions not to answer were improper" when the questions were, among other things, "outside the limited scope of discovery authorized by the District Court"). Moreover, an attorney may instruct a deponent not to answer if she "has substantial grounds to believe that [a] question is outside the limited scope of discovery." *Hopkins v. NewDay Fin., LLC*, No. 07-3679, 2008 WL 4657822, at *3 (E.D. Pa. Oct. 17, 2008). And "even if counsel's instruction to a deposition witness not to answer a question [does] not fall within the Fed. R. Civ. P. 30(c)(2) exceptions, that [does] not necessarily mean that the deposition should be reconvened." *Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, No. 2:19cv698, 2021 WL 1968270, at *3

(W.D. Pa. Mar. 3, 2021) (citing *Maurer v. Williams*, No. 1:11cv2260, 2013 WL 1438092, at *7 (M.D. Pa. Apr. 9, 2013)).

Rule 37(a)(5)(A) provides that a "court <u>must not</u> order" monetary sanctions when a party's conduct "was substantially justified; or other circumstances make an award of expenses unjust." (emphasis added). "The test of substantial justification is satisfied if there is a 'genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action.'" *Lawson v. Praxair, Inc.*, No. 16-2435, 2021 WL 12102368, at *6 (D.N.J. Feb. 24, 2021) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Third Circuit imposes an even higher burden on a party seeking the "extreme sanction" of excluding evidence, requiring that they show "willful deception or flagrant disregard of a court order by" the opposing party. *United States v. Johnson & Johnson*, No. 12-7758, 2021 WL 7906211, at *5 (D.N.J. June 14, 2011) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)).

## ARGUMENT

Hess's deposition "really should [have been] a pretty easy deposition." Hess Dep. 43:24-25. Defendants, however, made it difficult by refusing to accept this Court's repeated rulings limiting the scope of Hess's fact deposition and attempting to impose their will on Hess, Plaintiffs, and the Court. Now they come before the Court criticizing Plaintiffs' and Hess's counsel for resisting their inappropriate

deposition conduct using the means explicitly permitted by Rule 30(c)(2) <u>and this Court</u>. This criticism, and Defendants' related requests that the Court sanction Plaintiffs and reverse its prior rulings limiting Hess's deposition's scope, lack merit. The Court, therefore, should deny Defendants' motion.

## I.     Counsel Properly Instructed Hess Not to Answer Questions that Exceeded the Court-Imposed Boundaries on His Deposition.

Defense counsel repeatedly overstepped the bounds of Hess's limited-scope fact deposition to try to solicit expert opinion testimony from Hess. When he did so, Plaintiffs' and Hess's counsel instructed Hess not to answer—<u>as the Court instructed them to do</u>—to enforce the Court's order limiting the deposition's scope. Because instructing Hess not to answer under these circumstances comports with both Rule 30(c)(2) and the Court's instructions, the Court should deny Defendants' motion.

### A. Counsel Complied with the Court's Order When They Instructed Hess Not to Answer Questions about Samples M70484-001 and M71614-001.

Because the Court limited Hess's deposition to "personal observations" he made while analyzing samples that provided in part the factual basis for Dr. Longo's Fourth Supplemental MDL Report, defense counsel could only ask Hess "about the tests that he did" for Dr. Longo and "how he did it, his observations." Hess Dep. 41:6-7. Put differently, if Hess did not do something or observe a particle to provide findings upon which Dr. Longo relied in preparing his Fourth Supplemental MDL Report, then defense counsel could not question him about it. Defense counsel,

11

however, repeatedly ignored these limits when questioning Hess about Samples M70484-001 and M71614-001. When this happened, Plaintiffs' and Hess's counsel properly instructed Hess not to answer, both to enforce the Court's order and <u>because the Court instructed them to do so</u>. This hardly provides a basis for giving defense counsel another opportunity to depose Hess, and the Court should reject Defendants' claims to the contrary. Defs.' Mot. at 10-16.

For example, counsel properly instructed Hess not to answer a question asking him to assign a color to talc plates identified in a photomicrograph because Hess <u>did not assign colors to any talc plates for Dr. Longo</u>, as counsel explained during the deposition. Hess Dep. 124:5-8 (explaining that Hess "did not analyze these particular talc particles" and "didn't make findings in the report" about them). Accordingly, defense counsel's question impermissibly sought "expert opinion" testimony and asked Hess to analyze a particle "on the fly," which exceeded "the scope of what [Hess] did for [Dr. Longo's] report." *Id.* at 124:7-15. This falls well outside of Hess's "personal observations." As such, counsel properly instructed Hess not to answer this question and others like it. *Id.* at 118:25-119:9 (asking Hess "what refractive index number would you assign to any of the talc plates" that he did not analyze); 136:7-15 (instructing Hess not to answer whether he saw edge effects on talc plates

that he did not analyze because the question called for "on-the-fly analysis of talc plates").[7]

Counsel also properly instructed Hess not to answer questions asking him to compare particles he did analyze for Dr. Longo with those he did <u>not</u> analyze. Hess Dep. 126:23-25 (asking Hess to compare chrysotile he analyzed with talc plates he did not analyze), 128:17-22 (asking him to compare the color of chrysotile he analyzed with the color of talc plates he did not analyze), 143:11-16 (asking Hess whether "edge effects" seen on chrysotile particles he analyzes "are also present on talc plates" he did not analyze).[8] Such questions not only sought expert opinion testimony based on an impromptu mid-deposition particle analysis that Hess had not previously conducted, but they also asked Hess to compare particles that he did not compare for Dr. Longo. In other words, answering these questions would have required Hess to conduct a <u>new analysis</u> and make <u>new observations</u> in the middle of his first deposition rather than merely report his personal observations about the

---

[7] Defendants argue that counsel improperly prevented Hess from answering whether he saw a rounded talc plate in an image. Defs.' Mot. at 14 (citing Hess Dep. 125:21-26, 126:2-6). But, as explained during the deposition, counsel did this because defense counsel's prior questioning made clear he intended to ask Hess "to analyze what you claim to be a talc particle on the fly," which "calls for expert testimony." Hess Dep. 126:2-6. Defense counsel did not dispute that he intended to ask these impermissible questions, confirming that counsel's instruction "was substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).

[8] Defendants acknowledge that they asked an almost identical question to Dr. Longo, an implicit admission that the question seeks expert testimony. Defs.' Mot. at 26-27. The question also demonstrates that Defendants intended to conduct an expert deposition of Hess simply because they did not like the answers Dr. Longo provided. The Court plainly did not allow this. Hess Dep. at 36:19-21 (explaining that the Court did <u>not</u> permit Hess's deposition "to go over ground that was covered previously in the case").

analysis that he already completed for Dr. Longo. Because such questions exceeded the deposition's scope, counsel properly instructed Hess not to answer them.

Defense counsel also impermissibly asked Hess to opine on hypothetical scenarios and expectations that strayed far afield from his "personal observations" made during the analysis of samples that serve as a basis for Dr. Longo's Fourth Supplemental MDL Report. For instance, defense counsel asked Hess to speculate about the color he "would have" assigned to a particle if it had certain characteristics that Hess <u>did not observe</u> when working for Dr. Longo. Hess Dep. 129:18-22 ("And without these edges, without these sort of red colors at the edges, then the CSDS color that you would have had to assign to the particle would be—would correspond to yellow, right?").[9] He also asked Hess about the expected effect of using a different oil to conduct the PLM analysis. *Id.* at 90:4-16, 91:7-8 (asking about the "expected effect of switching to one, five—1.560 oil" after Hess testified that someone else suggested changing to 1.560 oil); 98:12-15 (asking again what one would expect to happen to the color of a particle after a switch to 1.560 oil). By asking Hess to guess about what he would have concluded if particles were analyzed with a different oil or speculate about expected effects of changes to the testing procedure, defense counsel asked Hess about far more than his personal observations during the testing

---

[9] In their motion, Defendants mistakenly identify this question as appearing on page 131 of Hess's deposition transcript. Defs.' Mot. at 15.

that he conducted for Dr. Longo. Counsel, therefore, properly instructed him not to answer.

Elsewhere, Defendants complain that Hess did not answer a question about the color of a chrysotile particle. Defs.' Mot. at 11 (citing Hess Dep. 77:2, 8-9, 18-24). They fail to mention, however, that Hess in fact answered the question after defense counsel clarified it for the first-time deponent. Hess Dep. 79:13-80:13. Counsel did not, therefore, prevent Hess from testifying about this subject, and another deposition would provide no new information.

Defendants' argument that counsel should have permitted Hess to answer a question about the effect of a tungsten lightbulb on particle images also misses the mark. Defs.' Mot. at 12 (citing Hess Dep. 95:3-9, 97:19-98:1). Immediately before the portion of the deposition Defendants cite, Hess explained that the tungsten light "was adding more yellow to the image of what we were seeing and what we were documenting." Hess Dep. 94:13-25. In other words, Hess did testify about the effect of tungsten lighting on particle images. His refusal to answer questions that misstated this prior testimony provides no reason for reopening his deposition. *Id.* at 95:1-4 ("[I]t wasn't just adding yellow. If we go back to the Zimmerman report image, it was adding a sort of darker golden colors or orange colors to the image, right?")

Simply put, Hess testified about every subject concerning Samples M70484-001 and M71614-001 that fell within the Court-ordered boundaries of his deposition.

### B. Counsel's Instructions Not to Answer Questions About the Calidria Reference Sample Complied with the Court's Instructions.

Defense counsel's questioning about the Calidria reference sample also went outside the court-imposed boundaries on Hess's deposition. For example, defense counsel improperly asked Hess to conduct a mid-deposition analysis comparing dispersion staining colors using the Calidria reference sample, *id.* at 178:20-22, even though the reference sample was not produced in the MDL and, therefore, not a permissible deposition topic, *see id.* at 34:9-35:17 (the Court agreeing that Plaintiffs' counsel "is correct that the subject matter should only be limited to . . . this new method" based on argument that it "is not fair" to question Hess about reports that were not disclosed in the MDL). Plaintiffs' counsel raised this issue during the deposition, noting that the Calidria reference sample "is not a part of [the] reports [produced in the MDL] and it's not something that's [within the] . . . appropriate scope of this deposition." *Id.* at 175:16-25. Defense counsel plowed ahead anyway, saying that "I am going to go back to the image and I am going to ask you some questions and if you're instructed not to answer, you are instructed not to answer." *Id.* at 176:22-25. Given this blatant disregard for the Court-ordered limitation on Hess's deposition, counsel properly instructed Hess not to answer.

Likewise, a deposition limited to Hess's "personal observations" during specific tests leaves no room for quizzing Hess about his general knowledge concerning the potential presence of impurities in Calidria or how a "property of physics changes" Calidria's coloration. *Id.* at 177:12-13 ("[Y]ou're aware that Calidria can have impurities in it, too?"); *id.* at 159:15-20 ("So how is it in your view that somehow Calidria is also showing golden yellow? What physical—what property of physics changes it so that sometimes when you're finding it, it's to you golden yellow as opposed to magenta?"). Stated differently, Hess did not make any personal observations about the presence of impurities in Calidria samples or the effect of properties of physics on Calidria coloration while analyzing the samples that provide in part the factual basis for Dr. Longo's Fourth Supplemental MDL Report, so such questioning falls outside the deposition's scope.

For these reasons, counsel properly instructed Hess not to answer these improper questions.

### C. Defense Counsel's Questioning About the ISO Reference Sample Exceeded the Deposition's Scope.

Defense counsel also overstepped the Court-ordered boundaries of Hess's deposition by asking him to compare his work to the ISO reference sample, i.e., someone else's work. *Compare id.* at 110:16-21 (asking Hess to compare his work to the ISO standard reference chrysotile), *with id.* at 36:12-14 ("The deposition is not to get Mr. Hess' opinion on what somebody else did or what somebody else

opines."). Indeed, during the deposition, Plaintiffs' counsel explained that this question violated the Court's order because it relied on "an incomplete depiction of what's being examined" and included "images that are not . . . Mr. Hess'." *Id.* at 110:23-25. In addition, it sought "a comparison between the photomicrograph that Mr. Hess took to an ISO record for chrysotile," which "is beyond the scope of this deposition." *Id.* at 111:24-112:2. Plaintiffs' counsel then explicitly stated that she instructed the witness not to answer to enforce the Court's order limiting the scope of Hess's deposition: "Judge Schneider was very clear that he is going to be asked about his work and not a comparison of his work to others and that is expert opinion and that's why we're instructing him not to answer." Accordingly, the instruction complied with Rule 30(c)(2). Fed. R. Civ. P. 30(c)(2) (permitting a person to "instruct a deponent not to answer . . . to enforce a limitation ordered by the court").

For this same reason, other questions asking Hess to compare his work to the ISO reference sample or interpret the ISO's classification of a particle violated the Court's limiting order and properly drew an instruction not to answer. Hess Dep. at 112:20-113:5 (asserting the "same objection" as described in the preceding paragraph to a question asking Hess to compare the ISO reference sample and the

color he assigned to a particle); 109:19-21 (asking Hess about the refractive index number that the ISO assigns to a particle).[10]

### D. Defense Counsel's Questioning About Illumination and Color Filtering Violated the Court's Limiting Order.

Defense counsel's questioning about illumination and color filtering violated the Court's order limiting the scope of Hess's deposition by asking him to testify beyond his "personal observations" made in analyzing the samples that provide part of the factual basis for Dr. Longo's Fourth Supplemental MDL Report and compare his work with "what somebody else did." *Id.* at 36:12-14. For example, defense counsel asked Hess to speculate about whether his microscope could capture images "as bright as" an image taken by somebody else. *Id.* at 147:24-149:17.[11] Because the questioning went "beyond the scope of what [Hess] did for purposes of these reports" and asked him to make a "comparison" between his work and somebody else's, counsel properly instructed Hess not to answer to enforce this Court's limiting order. *Id.* at 148:11-22.

---

[10] Defendants' reference to the ISO sample in their briefing regarding Hess's deposition does not change this analysis. Although the Court noted that it gave Defendants leave to depose Hess "based on the arguments that they made in their briefs," *id.* at 35:11-12, it did not give Defendants free reign to ask any conceivable question that relates in any way to any item they mentioned in their briefing. Rather, it limited the deposition to Hess's personal observation and explicitly barred questions asking Hess to opine "on what somebody else did." *Id.* at 36:12-14.

[11] Eventually, defense counsel revealed that Defendant's expert, Dr. Su, took the image, but only after counsel properly instructed Hess not to answer a question asking him to compare his work to an image of unknown provenance. *Id.*

Counsel also properly instructed Hess not to answer whether he knew "what the purpose is of a blue light or daylight filter" because Hess did not observe, analyze, or comment on the purpose of a blue light or daylight filter in relation to the analyses he conducted as a part of the testing that form in part the factual basis for Dr. Longo's Fourth Supplemental MDL Report. *Id.* at 65:19-20. As counsel explained, Hess's "[u]nderstanding" and "opinion about certain methodologies is beyond the scope of what Judge Schneider has ordered." *Id.* at 66:19-22.

### E. Questions about Defense Experts' Review of Dr. Longo's Work Violate the Court's Prohibition on Hess Testifying on "What Somebody Else Opines."

Defendants' cursory argument that counsel improperly instructed Hess to not answer questions about whether he had any comments on defense experts' review of his work fails to hold water. Defs.' Mot. at 24. As counsel noted in the deposition, "the Court made it very clear" that Hess was not there "to provide criticisms of Dr. Wylie" or any other expert. Hess Dep. at 85:14-6. Indeed, the Court said in no uncertain terms that the "deposition <u>is not to get Mr. Hess' opinion on what somebody else did or what somebody else opines</u>." *Id.* at 36:10-14 (emphasis added). In other words, the "reasons Mr. Hess . . . thinks that defense criticisms of his own testing are wrong is" <u>not</u> "at the heart of the deposition" as Defendants claim—it is out of bounds. Defs.' Mot. at 24. Plaintiff's and Hess's counsel properly instructed Hess not to respond.

### F. Defense Counsel's "Other Questions" Exceed the Deposition's Scope.

Finally, Defendants' unexplained and unsupported claim that "instructions not to answer" a smattering "of other questions . . . were improper" lacks merit. Defs.' Mot. at 25. Hess's general knowledge about testing methods and publications simply does not fall within the narrow confines of a fact deposition covering Hess's personal observations while analyzing the samples that provide in part the factual basis for Dr. Longo's Fourth Supplemental Report. Accordingly, counsel properly instructed Hess not to answer these questions. Hess Dep. at 57:2-22 (asking Hess whether "the central stop dispersion staining colors of talc plates themselves in 1.550 oil include the color red" without any reference to a specific particle that Hess analyzed); *id.* at 102:9-103:15 (asking Hess about properties of Cargill glass that he did not observe when helping Dr. Longo with the relevant analysis); *id.* at 140:21-141:20 (asking Hess about "Becke line analysis," which he did not conduct "with respect to any of the particles that" he identified as "chrysotile in Johnson & Johnson"); *id.* at 158:19-21 (soliciting an opinion about "the whole reason why dispersion staining can be used" to identify asbestos); *id.* at 162:5-11 (asking Hess about his familiarity "with any published reference values for the refractive indices of the . . . elongated fiber of talc in parallel" even though such questioning went "beyond the scope of the work [Hess] has done" in the relevant reports).

## II.     The Court Should Deny Defendants' Motion to Reconsider Its Ruling Barring Questions Comparing Hess's Current Work to His Old Work or Others' Work.

Defendants acknowledge that the Court denied its request to question Hess about his prior PLM testing in this MDL, ruling that was "not the purpose of this deposition, not to compare old tests to new tests." Defs.' Mot. at 28 (quoting Hess Dep. 43:10-12). In fact, the Court denied this request many times because defense counsel simply refused no for answer, even from the Court. Hess Dep. 35:13-17 ("Ms. O'Dell is correct that the subject matter of the deposition should only be limited to what I call . . . this new method."); *id.* at 36:15-21 ("Mr. Hess is there to testify about his firsthand personal knowledge about . . . this new testing method; . . . that is precisely why Mr. Hess' deposition was permitted. It was not permitted to go over ground that was covered previously in the case[.]"); *id.* at 39:7-8 ("[Y]ou can ask him about the tests using the new method."); *id.* at 41:7-14 ("He is not there to answer questions about why did they get the result in a 2019 test and a different result in a later test; that's not why he is there. He is there to talk from his personal observation about the new test; that's it."); *id.* at 43:10-12 (explaining that the "purpose of this deposition" is "not to compare old tests to new tests"). Defendants now come back again—a sixth time—to ask the Court to reconsider its prior ruling and expand the scope of Hess's deposition. The Court should deny this motion to reconsider.

> To prevail on a motion for reconsideration, the movant must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."

*D'Argenzio v. Bank of Am. Corp.*, 877 F. Supp. 2d 202, 206-07 (D.N.J. 2012) (quoting *Max's Seafodd Café ex rel. Lou-Ann ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "The standard of review in a motion for reconsideration is high and relief is to be granted sparingly." *Id.* at 207.

Here, Defendants make none of the required showings to prevail on a motion to reconsider. They identify no change in controlling law or new evidence that became available since the Court's ruling. The Court did not make a clear legal or factual error that it needs to correct. And there is no manifest injustice to correct just because Defendants did not get what they want when and how they wanted it. Defendants' regurgitation of arguments that the Court repeatedly ruled did <u>not</u> entitle them to question Hess about his prior work or the work of others does not suffice.[12]

Defendants' focus on the scope of their briefing concerning Hess's deposition does not save their flawed motion. As explained in note 10, *supra*, the Court did not give Defendants free reign to ask any conceivable question that relates in any way to any item they mention in their briefing just because it allowed Hess's deposition

---

[12] Plaintiffs incorporate by reference as if fully set forth herein their arguments at Hess's deposition and their briefing on Hess's deposition and the inspection of Dr. Longo's laboratory.

"based on the arguments that [Defendants] made in their briefs." Hess Dep. 35:9-12. Indeed, the Court acknowledged that Plaintiffs' counsel had the "correct" understanding of the Court's written order, which limited Hess's deposition to the "new method" and his "personal observations" and barred comparing "old tests to new tests." *Id.* at 35:13-17, 36:10-14, 43:10-12.

Moreover, in its Order allowing Hess's deposition, the Court acknowledged that Plaintiffs' argument that "Hess's deposition is not necessary . . . has merit." Special Master Order No. 23 at 5 n.7. And it explicitly refused to "offer an advisory opinion on inquir[i]es that may or may not be covered at Hess's deposition." *Id.* at 7-8. It should come as no surprise, therefore, that the Court stood by its limitations on the scope of Hess's deposition, especially when confronted with the details of defense counsel's inappropriate and harassing questioning.

For these reasons, the Court should deny Defendants' motion.

### III.    The Court Should Not Award Sanctions.

Defendants' request for sanctions falls just as flat as the other arguments in its motion. As an initial matter, it rests on the mistaken notion that Plaintiffs' and Hess's counsel improperly instructed Hess not to answer certain deposition questions. *See* Defs.' Mot. at 31-33. As explained above, they did not. The Court should deny Defendants' sanctions motion for this reason alone.

24

In any event, even if counsel misinterpreted the Court's order and, as a result, instructed Hess not to answer certain questions that fell within the deposition's proper scope, the Court should still deny Defendants' sanctions motion. Unlike here, none of the cases cited by Defendants involved counsel's good faith attempts to abide by a court's order that they instruct a witness not to answer. In fact, in some of the cases, the court explicitly prohibited counsel from instructing the witness not to answer. *Bordelon Marine, Inc. v. F/V KENNY BOY*, Nos. 09-3209, 09-6221, 2011 WL 164636, at *4 (E.D. La. Jan. 19, 2011) ("The court informed [counsel] that he should object to the form, let the witness answer and then file the appropriate motion."); *Antolini v. McCloskey*, No. 19 Civ. 09038, 2022 WL 1689331, at *2 (S.D.N.Y. May 26, 2022) (limiting "speaking objections . . . to the word 'objection'" and barring counsel from instructing "Plaintiff not to answer except on the basis of privilege"). These significant factual dissimilarities render Defendants' cases inapposite and unpersuasive.

The Court's directive that counsel "instruct the witness not to answer" if they thought "the questioning is going out of" the boundaries set by the court, Hess Dep. 43:18-22, also makes counsel's actions "substantially justified," Fed. R. Civ. P. 37(a)(5)(A)(ii) (providing that the court "must not order" monetary sanctions "if . . . the opposing party's [conduct] was substantially justified; or other

circumstances make an award of expenses unjust").[13] Indeed, the Court explicitly invited these instructions not to answer precisely so it could later make additional rulings, if necessary, "on a more fulsome record" and after "look[ing] at the transcript." Hess Dep. 43:18-22. In other words, counsel did exactly what this Court asked, further demonstrating the inappropriateness of any sanctions, let alone the "extreme sanction" of precluding Plaintiffs from relying on any tests where Hess was the analyst. *Johnson & Johnson*, 2021 WL 7906211, at *5 ("[E]xclusion of evidence 'is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" (quoting *In re Paoli*, 35 F.3d at 791-92).[14] The Court, therefore, should deny Defendants' sanctions motion.

---

[13] *See also Lawson*, 2021 WL 12102368, at *6 ("The test of substantial justification is satisfied if there is a 'genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action].'" (quoting *Pierce*, 487 U.S. at 565).

[14] *Access 4 All, Inc. v. ANI Associates, Inc.*, does not change this analysis. No. 04-6297, 2007 WL 178239 (D.N.J. Jan. 12, 2007). There, the sanctioned party "made a conscious and deliberate choice to ignore a court Order." *Id.* at *3. Here, on the other hand, counsel "made a conscious and deliberate choice" to follow this Court's order that it instruct Hess not to answer improper questions.

       Defendants' prejudice and burden arguments also fail. Despite their claim to the contrary, Defs.' Mot. at 35, Defendants did get to fully depose Hess consistent with the parameters set by the Court. As such, they have no right to depose Hess again, mooting their prejudice and burden arguments which assume a second Hess deposition. Defs.' Mot. at 35. In any event, the Court plainly envisioned the possibility of a second deposition by ordering counsel to instruct Hess not to answer so he could "look at the transcript" and "make a ruling on a more fulsome record." Hess Dep. at 43:18-22. Defendants can hardly lay any burden or prejudice concomitant with such a deposition at Plaintiffs' feet.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to compel and for sanctions and grant any other relief it deems just.

Dated: August 1, 2024                    Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***

*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
***Plaintiffs' Co-Lead Counsel***

*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com
***Plaintiffs' Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell