IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL TESTIMONY OF PAUL HESS**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................3

I. Counsel's Instructions Not To Answer Were Improper. ......................3

    A. Plaintiffs ignore the "how and why" of the testing....................3

    B. Plaintiffs' dance around Mr. Hess' "expert" status is unsupportable. ............................................................................4

    C. "Calls for expert opinion" is not a basis to instruct not to answer. .........................................................................................6

    D. Plaintiffs' positions on what questions Mr. Hess can and cannot answer have no consistency. ...........................................8

    E. Plaintiffs do not have their facts straight. ..................................9

    F. Plaintiffs' arguments leave no ability for Defendants to get critical answers...................................................................9

    G. The Calidria reference sample is a fundamental component of the methodology Mr. Hess is supposedly following. ..................................................................................10

II. Counsel Should Be Permitted To Ask Questions Comparing Mr. Hess's Work To Other Testing, Particularly His Own. ...............11

III. This Court Should Award Sanctions...................................................13

    A. Plaintiffs had no legitimate justification for their instructions not to answer. ........................................................13

    B. Defendants were severely prejudiced. ......................................15

CONCLUSION.....................................................................................................15

**INTRODUCTION**

Every single question asked at Mr. Hess's deposition was directly relevant to the "how and why" of his PLM testing at issue in this MDL—*precisely* the issue the Special Master ruled could be explored. Plaintiffs never explain how their instructions not to answer comport with that fundamental tenet of the Special Master's opinion. In fact, they barely mention the Special Master's opinion at all.

It is useful to review how the parties even got to this point:

Dozens of paragraphs of the Master Complaint are dedicated to the PSC's theory that Johnson's Baby Powder and Shower to Shower was contaminated with asbestos which, in turn, resulted in the claimants' cancer. Over 20 of Plaintiffs' expert reports discuss this theory or otherwise rely upon literature advancing it. Under Rule 26, Defendants are entitled to discovery of this central theory. And under Rule 702, Defendants are entitled to explore the reliability of the expert opinions that form the foundation of this central theory.

For *months*, Defendants have sought nothing more than their fundamental right under the rules of evidence to explore Plaintiffs' case-defining asbestos theory. It is undisputed that this theory rises and falls on the reliability of Plaintiffs' testing expert, Dr. William Longo's, methodology. Dr. Longo has testified repeatedly that to understand his method and conclusions, one must be looking down his microscope. He has even admitted that looking down the microscope is the only way

1

to justify why his "entire analysis" isn't "wrong". ECF 32683 (citing Longo *Clark* Hr'g (Vol. I) 118:20-119:3). There is no other, post-facto, photographic way to conduct similar discovery into this core issue, not even with Dr. Longo's own photographs. *See* Order at 4 ("Because these observations are subjective and unrepeatable, no one can retroactively observe what Mr. Hess saw – not even Dr. Longo.") (quoting *Hess, et al. v. American Int'l Indus., et al.*, No. 1:24-CV-02195 ECF (N.D. Ga. June 3, 2024)).

Despite this stark reality, Defendants have been rebuffed time and again in their efforts at the most basic discovery of Dr. Longo's method and resulting opinions. And so, they came to the Court with two, simple requests:

1. Allow Defendants to look down Dr. Longo's microscope and inspect his method as it unfolds in real time.

2. Allow Defendants to depose Mr. Hess, the man who Dr. Longo himself identified as the expert in PLM microscopy and the individual who takes the critical look down the microscope and reports what he sees, the very foundation of Dr. Longo's expert opinion.

The Special Master denied Defendants' first request, which issue is on appeal. The Special Master expressly stated that it did so in part because he was granted Defendants' second request and ordered a deposition of Mr. Hess.

That deposition, for all practical purposes, has yet to occur. Instead of permitting the most basic questioning to proceed over objections, questioning this

Court had already ruled permissible, counsel repeatedly and improperly instructed the witness not to answer.

On August 22, 2024, Rule 702 briefing in this matter closes. There is no more time for this sort of blatant defiance by the Plaintiffs of the basic rules of evidence and civil procedure. With thousands of claims and the possibility of hundreds of millions or more dollars at stake, fair adjudication of the important issues presented in this MDL should not be sidelined further by abject gamesmanship. Defendants are entitled to a full and fair opportunity to explore the fundamental allegations being advanced in this MDL before a bellwether trial occurs.

There are only two appropriate paths forward:

1. Mr. Hess immediately sits for deposition and answers questions in line with the rules of evidence and the Special Master's prior order.

2. Dr. Longo's opinions concerning PLM testing and chrysotile asbestos are stricken.

## ARGUMENT

I. **Counsel's Instructions Not To Answer Were Improper.**

A. **Plaintiffs ignore the "how and why" of the testing.**

Defendants quoted *eight times* in their motion the Special Master ruling that the "how and why" of the testing would be covered at the deposition. It is not logically possible for Mr. Hess to discuss the "how"—and even more so the "why"—of the testing without getting into expert opinion. Plaintiffs have no answer whatsoever to this argument because there is none. They do not even *mention* the

3

"how and why" of the testing in their opposition, much less how their arguments comport with that fundamental tenet of the Special Master's opinion. That alone is reason to grant Defendants' motion to compel.

### B. Plaintiffs' dance around Mr. Hess' "expert" status is unsupportable.

Plaintiffs' attempt to describe Mr. Hess as a "fact witness" is disingenuous. Not only is there no dispute that Mr. Hess has expertise, but Plaintiffs also expressly stated that his deposition "seeks discovery from a non-testifying expert." *See* ECF 32195 at 1. Yet somehow, now that discovery is occurring, Plaintiffs insist that the discovery is sought only of a "fact witness."

Their position makes no sense. It does not matter whether Mr. Hess is a *testifying expert* (or as Plaintiffs put it, a "designated expert"). He is still an expert. That is why the Special Master ruled that Rule 26(b)(4)(D)'s "exceptional circumstances" exception applied to permit discovery into the "facts ***or opinions***" of a non-testifying "expert." Order at 6 (quoting Fed. R. Civ. P. 26(b)(4)(D)) (emphasis added). Moreover, as the Special Master explained, "defendants have shown that Hess and Longo closely collaborated" and that Mr. Hess is the "the expert Longo will rely upon" for the opinions stated in the report. Order at 3. Indeed, Plaintiffs completely ignore that the Special Master already concluded that "Hess, not Longo, has decades of experience doing PLM testing." *Id.*

4

That is why Plaintiffs' position is not only wrong, but also the height of unfairness. Mr. Hess is the one **actually making the expert decisions at issue in the MDL**. Dr. Longo has said the **only way** to distinguish talc from chrysotile is to look live down his microscope. But Mr. Hess is the one looking down the microscope and making the critical judgment calls on whether a particle is talc or asbestos. As the Special Master already concluded, "Longo substantially relied on Hess" and "**Hess made key decisions regarding how Longo's tests were conducted and interpreted.**" *Id.* at 7 (emphasis added).

In granting Mr. Hess's deposition, the Special Master even relied on authority that a deposition in this circumstance is "an appropriate means of testing the **reliability** of the report." *Id.* at 7 (quoting *TCL Commc'n Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 6662727, at *4 (C.D. Cal. July 7, 2016)) (emphasis added). Preventing a deposition of Mr. Hess that includes questions into his expertise and the opinions flowing from it means the PSC can manipulate the expert process and shield their experts' work to ensure that Defendants never get to depose the actual expert who did the actual testing that forms the basis of their case defining theory.

Worse, Plaintiffs argue that "Hess did not formulate any opinions in any report at issue in this case." PSC Resp. at 1. That is objectively false. Mr. Hess is the one whose name appears on the analyst worksheets and critically concludes that the

5

particles observed are chrysotile. As the Special Master ruled, "Hess is the lead person at MAS who conducted PLM chrysotile analysis on J&J's talc and whose name is on MAS's reports that will be relied upon at trial." Order at 2. If Plaintiffs' arguments are to be taken seriously that Mr. Hess is not an expert, did not form expert opinions, and cannot be deposed as an expert, then the PSC has no expert to support Dr. Longo's report and that report should be struck in its entirety.

C.  **"Calls for expert opinion" is not a basis to instruct not to answer.**

Plaintiffs levy numerous arguments that Defendants sought "on-the-fly" analysis or "impromptu mid-deposition particle analysis." *See, e.g.*, 12-13. If Plaintiffs' own expert with 40 years of PLM experience, who is the one that all of MAS's PLM testing rests on, truly cannot answer the exceedingly simple questions posed to him, then he needs to testify under oath that he is incapable of answering. That is not a basis for an instruction not to answer. If Mr. Hess cannot provide those answers based on the images *he took* and produced to Defendants as support for the opinions in Dr. Longo's report, then MAS's work is untestable and unreproducible.

Indeed, the PSC does not dispute that "calls for expert testimony" is *not* a basis to instruct a witness not to answer a question. Their attempts to fit their square peg of an argument into the round hole of the Special Master's mid-deposition statements do not hold water—particularly in light of the Special Master's written order. The Special Master *never* stated that Mr. Hess is a "fact witness." To the

6

contrary, the Special Master's opinion repeatedly describes Mr. Hess as an expert. Plaintiffs' attempt to latch on to the Special Master's oblique phrase of "personal observations" to mean "cannot talk about anything that might touch on expert opinion" is not a legitimate interpretation of the Special Master's comments during the deposition. Mr. Hess's personal observations necessarily include his expert opinion on those observations—the "how and why" of the testing.

As part of their argument, Plaintiffs frequently object to Mr. Hess being asked about talc particles in his imaging. How Mr. Hess is differentiating the "chrysotile" he finds from the identically-colored and identical-looking talc particles is the ***entire point*** of Mr. Hess's analysis. It is Mr. Hess making that decision, not Dr. Longo. Of the dozens or possibly hundreds of yellow particles he sees, somehow Mr. Hess is picking out one yellow particle as actually "purple" and therefore "chrysotile." In other words, any and all questions about the yellow particles in his imaging that Mr. Hess is *not* claiming are asbestos are a critically important issue to Mr. Hess's work and understanding the choices that only Mr. Hess is making.

Plaintiffs have no response at all to the example Defendants highlighted. Mr. Hess was instructed not to answer whether "[t]he same type of edge effects that you're relying on to call particles chrysotile in Johnson & Johnson are also present on talc plates in your analysis." Mot. 27 (quoting Ex. A, Hess Dep 143:11-25). If the distinguishing feature Mr. Hess is relying on to claim one yellow particle is actually

7

"chrysotile" is *also* present on all of the particles he admits are talc, then it is not a distinguishing feature at all and his analysis cannot hold up. This is the *precise* question that Dr. Longo said one would have to look down the microscope to answer, thereby prompting the relief that Defendants sought. Dr. Longo has punted this issue to Mr. Hess as the one who actually looked down the microscope. *Id.* The Special Master expressly ruled that because of this testimony from Longo, a deposition of Mr. Hess was warranted to provide the "missing answers." Order at 3. The answer remains missing.

> **D.     Plaintiffs' positions on what questions Mr. Hess can and cannot answer are inconsistent.**

In the deposition, counsel permitted Mr. Hess to discuss certain topics that they now claim are off limits, further enforcing Defendants' conclusion that counsel's decision to instruct Mr. Hess not to answer during the deposition itself simply turned on how damaging counsel believed the answers would be. For example, Plaintiffs highlight that they *permitted* Mr. Hess to testify that his tungsten lightbulb was adding yellow to the image. PSC Resp. 15 (quoting Hess. Dep. 94:13-25). But then they instructed him *not to answer* the follow up question whether the light bulb "wasn't just adding yellow" but *also* darker golden or orange colors. *Id.* (quoting Hess Dep. 95:1-4). This has nothing to do with "misstating … prior testimony." *Id.* And even if it did, **"misstates testimony" is not a basis to instruct the witness not to answer a question**. Counsel simply did not want Mr. Hess to agree

8

to the question so instructed him not to answer. *Compare also, e.g.,* Ex. A, Hess Dep. 177:9-11 (permitting questions about the Calidria reference sample); *with* PSC Resp. 16 (arguing that the Caldaria reference sample is off limits).

### E. Plaintiffs do not have their facts straight.

Plaintiffs argue that questions about switching from 1.550 oil to 1.560 oil involved "hypothetical scenarios" and Mr. Hess should not be expected "to guess about what he would have concluded if particles were analyzed with a different oil or speculate about expected effects of changes to the testing procedure." PSC Resp. 14. Apparently Plaintiffs wish to ignore that Mr. Hess *did* change from 1.550 oil to 1.560 oil, as Defendants explained in their motion. Specifically, Mr. Hess used one type of oil for Sample M70484-001 (*Zimmerman*) and another for Sample M71614-001 (*Valadez*). Mot 15; *see also* Ex. F at 18-19 (discussing change from 1.550 oil to 1.560 oil); *compare also* Ex. E at 50 (1.550) *with* Ex. F at 34 (1.560 oil). Whether this change did or did not result in a corresponding change in the colors of the particles under analysis goes directly to the "how and why" of the testing.

### F. Plaintiffs' arguments leave no ability for Defendants to get critical answers.

Mr. Hess is the one controlling the illumination of the microscope. How is the defense supposed to probe their well-founded theory that Mr. Hess does not have the brightness of his microscope turned to the maximum setting—a fact that would impact the critical colors seen—other than by showing him PLM images taken from

9

the very microscope during the same time period that show significantly brighter images than those Mr. Hess took for this MDL? *See* PSC Resp. 19. To whom is the Defense supposed to direct questions about the "how" and "why" of the brightness settings other than Mr. Hess who had his hand on the dial and his eyes in the scope?

### G. The Calidria reference sample is a fundamental component of the methodology Mr. Hess is supposedly following.

As Defendants have repeatedly explained, Dr. Longo has testified that his lab's use of a Calidria reference sample unlocked the ability for MAS to find chrysotile in talc. It is the variable that "helped the analyst understand what they were looking for." ECF 32683-2 at 36:10-15. Dr. Longo testified that the Calidria reference sample is the reason that every other laboratory in the country is supposedly "missing chrysotile in all these talc products." *Id.* at 160:1-5. And he said that without the reference sample, "a typical PLM analyst would not ever find" chrysotile. ECF 32683-27 at 22:7-15.

Now Plaintiffs argue that the Calidria reference sample was not produced in the MDL. PSC Resp. 16. Defendants would be more than happy to allow this line of argument to reach its logical conclusion. If Dr. Longo's findings depend on the Calidria standard, and that standard is not part of the MDL, then Dr. Longo's testing should be excluded in its entirety. In fact, if material relied on by Dr. Longo but not technically produced in the MDL is not part of the case, then all of Dr. Longo's PLM testing is out because Dr. Longo did not actually produce *any* of the reports or

10

backup data for his PLM-chrysotile testing, he simply included a chart referencing testing from prior cases never produced in this MDL. So under Plaintiffs' standard, Dr. Longo has no support for his PLM work, and his opinions should be stricken.

Plaintiffs also argue that "Hess did not make any personal observations about the presence of impurities in Calidria samples or the effect of properties of physics on Calidria coloration while analyzing the samples." PSC Resp. 17. If Mr. Hess made no observations about impurities, then how does MAS know the particle it is using as an *asbestos* reference is actually *asbestos*? If Mr. Hess does not know anything about the coloration of Calidria, then how is he using its *color* as a reference sample for the *color* of chrysotile asbestos? Defendants cannot get answers to these questions because Mr. Hess was instructed not to answer.

Paul Hess came up with the idea for the Calidria reference standard. He conducted the PLM analysis of the Calidria reference standard. He is the one who chose the Calidria particle—and its attendant colors—to serve as the reference for chrysotile asbestos. He is the one who took the images of the standard. The Calidria reference standard is not just a critical component of the methodology at issue, it is a *necessary* component of the methodology that *Mr. Hess* is supposedly conducting, and in fact, one he devised. No questions about it should be out of bounds.

**II.    Counsel Should Be Permitted To Ask Questions Comparing Mr. Hess's Work To Other Testing, Particularly His Own.**

Defendants' arguments regarding "comparisons" should not be analyzed

11

under a reconsideration framework. As Plaintiffs themselves highlight in an attempt to avoid sanctions, for any instruction not to answer, the Special Master should "look at the transcript and we'll make a ruling on a more fulsome record." *See* PSC Resp. at 8, 26 & n.14.[1]

Plaintiffs have *no substantive response whatsoever* to Defendants' arguments regarding why questioning on these "comparisons" is so important. On the illumination issue, Defendants explained that "Defendants want to know *how* the microscope for this MDL was set up, presumably differently than it was for the testing of other talc during the very same time period, and *why* the microscope settings were changed for the MDL testing." Mot. 30. Defendants argued that "Mr. Hess is the only person who actually knows the answer to these critical questions because he is the one who is actually sitting at the microscope and controlling its settings." **No response from Plaintiffs**. Defendants argued that "[i]f the microscope setting[s] are being changed from product to product in order to change the ultimate results, that is incredibly important and relevant information that is and directly within Mr. Hess's knowledge" *Id.* **No response**. Defendants argued that "[f]or some issues, questions that focus on comparison are the best and clearest way to

---

[1] Even if this issue were viewed through the lens of a reconsideration standard, reconsideration should be granted for all the reasons stated in Defendants' motion and this Reply. That is particularly so because the Special Master's ruling that the issue of changes in methodology was not raised in Defendants' briefing is simply not accurate. *See* Mot. 28.

12

understand *how* Mr. Hess is using his microscope in the PLM testing at issue in this MDL and *why* he is using the microscope in that way." *Id.* **No response**.

The same goes for questions regarding Mr. Hess's prior MDL testing. Defendants argued that questions regarding "*Why* is Mr. Hess only finding chrysotile for the first time beginning in 2020 and *how* has his methodology changed to result in these alleged findings" are at the "heart of the parties' dispute about the new PLM methodology at issue." *Id.* at 29. **No response**. Defendants argued that "[t]he questions' relevance and importance to the new methodology do not change just because, by their nature, they touch on prior work." *Id.* **No response**. Defendants argued that the fact "[t]hat the prior work was done *by Mr. Hess* and *in this very MDL* makes them all the more relevant to the issues at hand." *Id.* **No response**.

The idea that these questions should not be asked is literally indefensible.

### III. This Court Should Award Sanctions.

#### A. Plaintiffs had no legitimate justification for their instructions not to answer.

Counsel cannot square their instructions not to answer with the Special Master's opinion. As mentioned above, Plaintiffs do not even *address* that the opinion stated that the "how" and "why" of the testing was to be covered at the deposition. If they cannot even put forward an *argument* as to how their instructions not to answer fall within that written opinion, then their conduct is not justified. Mr. Hess's personal counsel's response did not so much as *cite* or even *mention* the

13

Special Master's opinion. The PSC mentioned it only twice in an extremely cursory fashion. *See* PSC Resp. 2, 24. And even then, Plaintiffs quote the Special Master's statement that he would not "offer an advisory opinion on inquir[i]es that may or may not be covered at Hess's deposition" without explaining that statement only concerned questions of privilege. *See* PSC Resp. 2.

To try and support their improper instructions, Plaintiffs were even forced to take the objectively false and impossible position that "Hess did not formulate any opinions in any report at issue in this case." PSC Resp. 1. They similarly try to hand wave over Mr. Hess's clear role in Dr. Longo's report by arguing that "Mr. Hess's involvement is limited to the analysis of the material and documenting the structures of interest on bench sheets, photomicrographs, etc." PSC Resp. 4 n.4. But analyzing the material and documenting the particles **is the essence of Dr. Longo's entire opinion.** As discussed above, these arguments are directly contradictory to the Special Master's ruling that "Hess's work and testing is critical to Longo's conclusion," Order at 3; that "Defendants persuasively argue[d]" that "Mr. Hess is the one making all the key decisions.," *id*. at 7; that "Hess is the lead person at MAS who conducted PLM chrysotile analysis on J&J's talc and whose name is on MAS's reports," *id*. at 2; and that Mr. Hess is "the expert Longo will rely upon," *id*. at 3.

Plaintiffs even argue that Mr. Hess's "understanding" and "opinion about certain methodologies are beyond the scope of what Judge Schneider has ordered."

14

PSC Resp. 20. These are the methodologies *Mr. Hess is supposed to be following*. The Special Master already ruled that "defendants are not required to accept at face value that Longo's written methodology was followed." Order at 4. If Mr. Hess does not understand the methodology he is supposed to be following, then that is critical information that Defendants are entitled to explore.

### B.     Defendants were severely prejudiced.

Plaintiffs only address Defendants' prejudice arguments in a footnote and do not actually respond to any of Defendants' points. *See* Resp 26 n.14. They do not deny that delay from the improper questions has impacted Defendants' ability to make their Rule 702 arguments. Indeed, Rule 702 motions already have been filed, and the Court previously ordered that there would be no reply briefs. Defendants are therefore presently hamstrung in being able to use testimony from a continued deposition for the Court's important gatekeeping role. Nor do Plaintiffs deny that Defendants will have to expend twice the effort to depose Mr. Hess. And considering the breadth of the instructions not to answer, Defendants will necessarily have to re-tread ground already covered given the intertwining nature of the issues and the fact that follow up questions probing the veracity of certain answers were prohibited.

### CONCLUSION

The Court should order an unrestricted deposition of Mr. Hess within one week. In the alternative, Dr. Longo's PLM chrysotile analysis should be struck.

Dated: August 2, 2024            Respectfully submitted,

*/s/ Kristen R. Fournier*
Kristen R. Fournier
Matthew L. Bush
**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
kfournier@kslaw.com

Susan M. Sharko
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
susan.sharko@faegredrinker.com

*Attorneys for Defendants Johnson & Johnson and LLT Management, LLC*

16

## CERTIFICATION OF SERVICE

I hereby certify that on August 2, 2024, a true and correct copy of the foregoing reply was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I hereby certify that on August 2, 2024, a true and correct copy of the foregoing reply was sent via email to counsel for Mr. Hess, Eric Ludwig, Esq.

/s/ *Kristen R. Fournier*
Kristen R. Fournier
**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2100
kfournier@kslaw.com

0