## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE: JOHNSON & JOHNSON TALCUM
POWDER PRODUCTS MARKETING,
SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION

Case No. 3:16-md-2738 (MAS)/(RLS)

MDL Case No. 2738

[FILED ELECTRONICALLY]

Return Date: August 19, 2024

---

## NON-PARTY BEASLEY ALLEN'S BRIEF IN OPPOSITION TO JOHNSON & JOHNSON'S MOTION OBJECTING TO SPECIAL MASTER ORDER NO. 25 QUASHING AND/OR ISSUING A PROTECTIVE ORDER OVER THE SUBPOENA ISSUED TO THE BEASLEY ALLEN LAW FIRM

---

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Jeffrey M. Pollock, Esq.
Michael W. Sabo, Esq.
212 Carnegie Center
Suite 400
Princeton, New Jersey 08540
*Attorneys for Andy Birchfield and Beasley Allen*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY ............................................... 2

    A.    J&J Weaponizes the Court System to Attack and Smear Its Successful Litigation Opponent Beasley Allen. ............................................................. 2

    B.    Beasley Allen Fights Back Against J&J's Abusive Subpoena. .............................. 3

    C.    The Special Master Quashes the Abusive Subpoena. ............................................... 4

ARGUMENT ...................................................................................................................... 6

J&J'S SUBPOENA DIRECTED TO NON-PARTY BEASLEY ALLEN (ITS LITIGATION ADVERSARY IN THIS CASE) MUST BE QUASHED. .......................... 6

    A.    Legal Standard. ......................................................................................................... 6

    B.    The Special Master's Order and Opinion Correctly Applied the Law to the Facts and Should Be Affirmed. .................................................................................. 6

        1.    J&J's Objection Does Not Mention or Dispute Mr. Birchfield's Repeated Testimony That Beasley Allen Does Not Have Litigation Funding. ......................................................................................................... 6

        2.    J&J Re-Raises the Identical Rule 7.1.1 Arguments and Cites the Same Cases to this Court That the Special Master Reviewed and Rejected. ....... 7

    C.    On the Merits, the Subpoena Should Be Quashed Because It Seeks Irrelevant, Privileged Material............................................................................................... 8

        1.    The Subpoena seeks irrelevant information including Beasley Allen's non-existent documents and communications concerning Third-Party Litigation Funding. (Requests Nos. 1-5)..................................................... 8

        2.    J&J's Subpoena to its Litigation Opponents' Counsel Seeks Privileged and Confidential Documents and Communications Concerning Client Settlement (Request No. 6). ...................................................................... 12

CONCLUSION................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benitez v. Lopez*,
　　2019 WL 1578167 (E.D.N.Y. March 14, 2019) ........................................................8

*In re Cendant Corp. Secs. Litig.*,
　　343 F.3d 658 (3d Cir. 2003).........................................................................................14

*Costantino v. City of Atl. City*,
　　2015 WL 12806490 (D.N.J. Nov. 4, 2015) ...................................................................6

*DIRECTV, Inc. v. Richards*,
　　2005 WL 1514187 (D.N.J. June 27, 2005) ..................................................................12

*Glenmede Tr. Co. v. Thompson*,
　　56 F.3d 476 (3d Cir. 1995)............................................................................................6

*Hinsinger v. Conifer Ins. Co.*,
　　2024 WL 866529 (D.N.J. Feb. 29, 2024) ....................................................................13

*In re: LTL Management, LLC, Debtor Ad Hoc Comm. of Supporting Couns.,
Appellant in No. 23-2972*,
　　2024 WL 3540467 (3d Cir. July 25, 2024).............................................................1, 6

*In re LTL Mgmt., LLC*,
　　64 F.4th 84 (3d Cir. 2023) .............................................................................................1

*Memory Bowl v. N. Pointe Ins. Co.*,
　　280 F.R.D. 181 (D.N.J. 2012).....................................................................................14

*Nimitz Technologies LLC v. CNET Media, Inc.*,
　　2022 WL 17338396, Civ. 21-1247-CFC (D. Del. Nov. 30, 2022) ..............................9

*O'Boyle v. Borough of Longport*,
　　218 N.J. 168 (2014) .....................................................................................................14

*Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*,
　　2005 WL 1038956 (D.N.J. May 3, 2005) ..............................................................13, 14

*Topolewski v. Quorum Health Res., LLC*,
　　2013 WL 99843 (M.D. Tenn. Jan. 8, 2013).................................................................12

*United States v. Nobles*,
　　422 U.S. 225 (1975).....................................................................................................14

*In re Valarsatan*,
    405 F. Supp. 3d 612 (D.N.J. 2019) ................................................................4, 8, 9, 12

**Statutes**

11 U.S.C. § 1125(b) ................................................................................................9

11 U.S.C. § 1125(e) ................................................................................................9

11 U.S.C. § 1125(g) ................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................5, 6, 7

Fed. R. Civ. P. 26(c) ..............................................................................................6

Fed. R. Civ. P. 45(d)(3)(A) ....................................................................................6

Fed. R. Civ. P. 53(f) ..............................................................................................6

Local R. 7.1.1 ............................................................................................. *passim*

Model Rules of Prof'l Conduct R. 4.2 ................................................................10, 11

Model Rules of Prof'l Conduct R. 4.2, cmt. 3 ........................................................11

MOORE'S FEDERAL PRACTICE 3D  § 45.05(1)(C)(2) ..............................................12

## PRELIMINARY STATEMENT

This Court should affirm Special Master Joel Schneider's (the Special Master) Order and Opinion quashing Johnson & Johnson and LLT Management, LLC's (together J&J) subpoena (the Subpoena) directed to its adversary Beasley Allen. *See* ECF No. 32926. The Special Master parsed the record painstakingly and saw J&J's Subpoena for what it is—further retaliation against Mr. Andy D. Birchfield Jr., Esq., Beasley Allen, and their J&J talc victim clients. J&J served the Subpoena because—in its own words—Beasley Allen opposed J&J's bad faith bankruptcy filing "all the way to the Third Circuit and managed to defeat the bankruptcy plan." The Third Circuit has now dismissed J&J's bad faith bankruptcy petition twice. *See In Re: LTL Mgmt. LLC, Debtor LTL Mgmt. LLC, Appellant in No. 23-2971 In re: LTL Management, LLC, Debtor Ad Hoc Comm. of Supporting Couns., Appellant in No. 23-2972*, 2024 WL 3540467, at *1 (3d Cir. July 25, 2024) (affirming the dismissal of J&J second bankruptcy for lack of "financial distress"); *In re LTL Mgmt., LLC*, 64 F.4th 84 (3d Cir. 2023) (ordering dismissal of J&J's first bad-faith bankruptcy). The Superior Court of New Jersey recently denied J&J's baseless motion to disqualify Beasley Allen from the state MCL talcum powder litigation. J&J refuses to withdraw the entire Subpoena— even after J&J itself adduced an affidavit affirming Mr. Birchfield's repeated sworn testimony that Beasley Allen does not have any talc-related litigation funding. J&J has only mischief in mind, not "good cause" to further pursue the Subpoena.

The Special Master held a probing argument on J&J's Motion to Quash. The Special Master provided J&J every opportunity to articulate the alleged basis of its subpoena. After patiently listening and probing J&J's counsel, the Special Master rejected all of J&J's theories because it did not have any basis in fact or law to obtain Beasley Allen's privileged documents. The Special Master gave J&J every opportunity to make its case, but it failed to make the sale. There is no basis to disturb the Special Master's carefully crafted Order and Opinion or reverse

any of his findings. In sum, the Subpoena must be quashed because it seeks wholly irrelevant and privileged documents from its litigation adversary, including: (1) non-existent third-party litigation funding; and (2) privileged settlement communications and work product exchanged between Beasley Allen and its clients.

## RELEVANT FACTS AND PROCEDURAL HISTORY

**A.     J&J Weaponizes the Court System to Attack and Smear Its Successful Litigation Opponent Beasley Allen.**

J&J set its sights—once again—on Beasley Allen and Mr. Birchfield after its second bankruptcy attempt was dismissed for lack of good faith. Beasley Allen opposed both J&J's initial bankruptcy (which the Third Circuit dismissed as a bad faith petition) and J&J's second attempt (which was dismissed months later by the bankruptcy court). Beasley Allen opposed both bankruptcy petitions because the plans did not offer fair and reasonable compensation to cancer victims and attempted to strip plaintiffs of their Seventh Amendment right to a jury trial. Beasley Allen's goal all along has been to obtain the best and fairest recovery for its clients. J&J now threatens cancer victims with the prospect of a third bad faith "pre-packaged" bankruptcy petition to be filed in Texas that would "cram down" an undervalued settlement and divest this Court of its jurisdiction.

In December 2023, J&J filed a motion to disqualify Beasley Allen and Andy D. Birchfield, Jr., Esq. from this litigation and remove Beasley Allen from the Plaintiffs' Steering Committee. (ECF No. 28760). Beasley Allen opposed the motion. (ECF No. 28826). During the pendency of the motion to disqualify, J&J tried to obtain Beasley Allen's privileged communications with court-appointed mediators and claims administration company KCIC, LLC. (ECF No. 28912). J&J sought mediation-protected documents and communications between or among Beasley Allen, KCIC, LLC, and the court appointed mediators—the same mediation that J&J refused to take part

2

in. (ECF No. 29999). Plaintiffs sought a protective order, and the Court-appointed Special Master Joel Schneider, U.S.M.J. (ret.) granted the motion finding that the mediation privilege covered many of the documents J&J sought. (*Id.*)

On May 17, 2024, J&J filed a "Notice of Intent to Serve Subpoena" to Beasley Allen. (ECF No. 32201). The Subpoena sought irrelevant, overly burdensome, and privileged documents including: (1) non-existent third-party litigation funding; (2) purported communications exchanged between Beasley Allen and the press; and (3) privileged settlement communications between Beasley Allen and its clients. That same day, J&J sought entry of an order expediting a response to the Subpoena.[1]

By letter dated May 20, 2024, J&J notified the Court that it was withdrawing its subpoena to Fortress Investment Group LLC (ECF No. 32213). The May 20, 2024 letter also leveled baseless allegations against Beasley Allen concerning purported undisclosed litigation funding and various alleged financial arrangements. (*Id.*). J&J's letter included a declaration from David Meisels (the Meisels Declaration), Head of Litigation for Fortress. (*Id.* at Exh. A). The Meisels Declaration confirmed that "Neither Fortress nor any Fortress managed fund has provided any financing to the Beasley Allen law firm (Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.)." *Id.* at ¶3.

### B.   Beasley Allen Fights Back Against J&J's Abusive Subpoena.

J&J served the Subpoena on May 20, 2024. In response, Beasley Allen timely served a written objection to J&J's counsel and demanded that J&J withdraw the Subpoena as it seeks irrelevant, burdensome and privilege materials. (ECF No. 32251-1). J&J refused to withdraw the

---

[1] J&J also served notices of intent to serve subpoenas on other non-parties, including: (1) Ellington Management (ECF No. 32215), (2) Thomson Reuters Corporation (ECF No. 32204), (3) Fortress Investment Group, LLC (ECF No. 32203), and The Smith Law Firm (ECF No. 32226). J&J retracted the subpoenas to Fortress and Thomson Reuters. The Special Master quashed the subpoenas directed to Ellington Management and The Smith Law Firm. (ECF No. 32926).

Subpoena even after J&J obtained an affidavit from Fortress affirming the sworn testimony of Birchfield that Beasley had no talc litigation funding. On May 22, 2024, the Court denied J&J's request for an expedited response. (ECF No. 32249). Beasley Allen filed and served a timely written objection to the Subpoena on May 20, 2024. (ECF No. 32251). In the objection letter, Beasley Allen argued that "litigation funding (if it existed) is not relevant and therefore not discoverable here." *Id.* at 13 (citing *In re Valsartan*, 405 F. Supp. 3d 612, 615-20 (D.N.J. 2019)).

     **C.**     **The Special Master Quashes the Abusive Subpoena.**

On July 1, 2024, the Special Master heard oral argument on the pending motions. Pollock Decl., Exh. K.  During this argument, the Special Master probed every argument raised by J&J in support of its subpoena upon an adversary. J&J conceded that its "concern" about litigation funding has existed for a long time, but it served the Subpoena recently. *Id.* at 13 to 14. The Special Master noted that Mr. Birchfield testified multiple times that Beasley Allen does not have litigation funding and therefore, does not have anything to disclose under Rule 7.1.1. *Id.* at 14 to 18. The Special Master also pointed out that J&J had multiple opportunities to cross-examine Mr. Birchfield on these issues, including "indirect" litigation funding, but it chose not to. *Id.* J&J conceded that it could not cite a single case permitting an adversary to obtain privileged attorney-client settlement communications under the guise of "indirect" litigation funding. *Id.* at 43. Plaintiffs pointed out that the Subpoena is the latest example of J&J using legal process to attack its litigation adversaries simply because they will not agree to an unfavorable settlement for their clients, and Beasley Allen (specifically Mr. Birchfield) successfully argued that J&J filed for bankruptcy in bad faith. *Id.* at 56 to 66.

The Special Master issued an order and opinion dated July 9, 2024. (ECF No. 32926).[2] At the outset, the Special Master noted that J&J may not "roam at leisure through their adversary's files regarding all matters that are of interest to them." *Id.* at 1. The Special Master comprehensively reviewed all issues presented (including those raised by J&J), and he concluded that the Subpoena does not "request information regarding a party's claim or defense. Indeed, the requests have nothing to do with the core of the case which is whether defendants' talc products contained asbestos and if the products caused plaintiffs' cancer." *Id.* at 7. J&J did not "try and hide this" fact. *Id.*

Contrary to J&J's claims, the Special Master also analyzed the Subpoena in the context of Local Rule 7.1.1, which requires lawyers to disclose "certain" details about third-party litigation funding. *Id.* at 8. The Special Master rejected J&J's 7.1.1 arguments for three reasons. *Id.* First, J&J's attack on litigation funding generally—which continue in this motion—"is irrelevant to the issues at hand" because J&J's "distaste" for litigation funding does not support the Subpoena. *Id.* Second, J&J's brief (and its brief now) cites decisions from other jurisdictions. *Id.* Third, the Special Master rejected J&J's argument that litigation funding is relevant to other cases. *Id.* at 9.

The Special Master confirmed that J&J had no basis to refute or question Mr. Birchfield's repeated testimony that Beasley Allen does not have litigation funding. *Id.* at 10. J&J's "sketchy" allegations based entirely on "speculation and conjecture" were insufficient under Rule 7.1.1's "good cause" standard and Rule 26's relevance standard to compel discovery. *Id.* at 10 to 16. The

---

[2] By order and opinion dated July 19, 2024, the Honorable John C. Porto, P.J. Civ., presiding judge of the civil division in Atlantic County, New Jersey, denied J&J's baseless motion to disqualify Beasley Allen from the state talcum powder consolidated mass tort litigation. *See* Pollock Decl., Exh. L. The motion to disqualify filed in this Court remains pending before Judge Singh. However, Judge Singh ordered that the parties—by August 5, 2024—show cause "why this Court should not adopt the State MCL's findings of fact and conclusions of law." *See* ECF Nos. 32984; 33049.

Special Master carefully considered every argument now before the Court. *Id.* Undeterred, J&J now seeks an order vacating the Special Master's Order Quashing and/or Issuing a Protective Order over the Subpoena. (ECF No. 32987). On July 25, 2024, the Third Circuit affirmed the dismissal of J&J's second bankruptcy filing for want of good faith because it was not in "financial distress." *In Re: LTL Mgmt. LLC*, 2024 WL 3540467, at *1.

## ARGUMENT

### J&J'S SUBPOENA DIRECTED TO NON-PARTY BEASLEY ALLEN (ITS LITIGATION ADVERSARY IN THIS CASE) MUST BE QUASHED.

**A.    Legal Standard.[3]**

Courts must quash or modify a subpoena that requires "disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Alternatively, Fed. R. Civ. P. 26 permits the Court, for good cause, to issue a protective order to prevent "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see Costantino v. City of Atl. City*, 2015 WL 12806490, at *3 (D.N.J. Nov. 4, 2015) (good cause requirement satisfied where third-party subpoena sought irrelevant documents).

**B.    The Special Master's Order and Opinion Correctly Applied the Law to the Facts and Should Be Affirmed.**

**1.    J&J's Objection Does Not Mention or Dispute Mr. Birchfield's Repeated Testimony That Beasley Allen Does Not Have Litigation Funding.**

The Special Master's Order should be affirmed because he weighed the evidence and

---

[3] The Court reviews a Special Master's order and opinion *de novo*. *See* Fed. R. Civ. P. 53(f).

applied controlling case law to the facts before him. J&J's brief reprises the identical arguments it made below, which the Special Master rejected. Notably, J&J does not once mention that Mr. Birchfield testified multiple times that Beasley Allen does not have litigation funding, and therefore, there is nothing for Beasley Allen to disclose. *Compare* ECF No. 32987-1 (J&J Brief failing to mention, refute, or dispute Mr. Birchfield's testimony), *with* ECF No. 32445 (Beasley Allen Motion to Quash); ECF No. 32926 (Special Master opinion discussing testimony); ECF No. 32858 (Beasley Allen reply noting same). As the Special Master held, J&J's naked curiosity of Beasley Allen's inner workings and successful advocacy is not a basis to serve a subpoena and obtain privileged documents from a litigation adversary.

### 2.    J&J Re-Raises the Identical Rule 7.1.1 Arguments and Cites the Same Cases to this Court That the Special Master Reviewed and Rejected.

The Special Master properly rejected J&J's 7.1.1 arguments, including the fact that any "partnership" between Beasley Allen and the Smith Law Firm is not competent evidence that "good cause" exists for litigation funding discovery, *i.e.*, that any third-party funding impacts Beasley Allen's settlement position. *Compare* ECF No. 32926 at 11, *with* ECF No. 32987-1 at 17-27. Aside from Mr. Birchfield's repeated testimony denying the existence of any litigation funding, the Special Master properly quashed the Subpoena because the fact that J&J does not like Beasley Allen's settlement position, its successful advocacy, or its rejection of J&J's unreasonable settlement offers is not "good cause" to obtain irrelevant, privileged discovery under Rule 26 or Rule 7.1.1. ECF No. 32926 at 11-12. After all J&J's complaints and musings, there is not a shred of evidence that any "undisclosed financial interests are actually driving [Beasley Allen's] decisions relating to the resolution of the talc litigation" to constitute "good cause" under Rule 7.1.1. *Id.* at 12 (quoting J&J Br. at 20).[4] For these reasons, the Court should affirm the Special

---

[4] J&J continues to make much of a May 2024 email from a Beasley Allen client to Mr. Murdica.

Master's order quashing the Subpoena.

###### C.   On the Merits, the Subpoena Should Be Quashed Because It Seeks Irrelevant, Privileged Material.

Quashing the Subpoena was appropriate because it seeks irrelevant, privileged information that exceeds the permissible scope of discovery.

###### 1.   The Subpoena seeks irrelevant information including Beasley Allen's non-existent documents and communications concerning Third-Party Litigation Funding. (Requests Nos. 1-5).[5]

The Subpoena must be quashed because it seeks irrelevant information, including non-existent documents and communications concerning litigation funding. Discovery "directed to a plaintiff's litigation funding is irrelevant." *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (collecting cases finding litigation funding irrelevant). *See also Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. March 14, 2019) ("As to the litigation funding documents, Defendants fail to establish that such discovery is 'relevant to any party's <u>claims or defense.</u>'") (emphasis added)).

The Subpoena should be quashed because Beasley Allen has complied with Local Rule 7.1.1., and J&J fails to articulate any "good cause" or "something untoward" to justify enforcing the Subpoena and seeking third-party litigation funding documents. Local Civil Rule 7.1.1. requires a party to disclose thirty-party litigation funders. The Rule also permits parties to "seek additional discovery of the terms of any such agreement upon a showing of <u>good cause</u> that the

---

As discussed herein, Mr. Murdica acted unethically by continuing to communicate with (and solicit a response) with an individual that J&J knew was one of Beasley Allen's 11,000 clients. As the Special Master found, J&J's "unfounded suspicion" of misconduct is false and "not supported by persuasive evidence" or any "objective evidence." ECF No. 32926 at 13.

[5] In a letter to the Special Master dated June 21, 2024, J&J agreed to "forego Requests 7-8." *See* ECF No. 32845.

non-party has authority to make <u>material litigation decisions</u> or settlement decisions." (emphasis added). J&J does not make any cogent argument about how any litigation funding—even if it existed—has any relevance to the claims and defenses in the MDL. *In re Valsartan*, 405 F. Supp. 3d at 615.[6]

J&J's objection brief re-hashes its general "issues" with litigation funding in other jurisdictions (and generally), but it never articulates any supported basis to pursue litigation funding discovery against Beasley Allen—its years-long litigation adversary. J&J cannot re-write Local Rule 7.1.1., which was crafted to balance the Court's right to know whether a plaintiff is being unreasonable because a non-party with financial strength exerts harmful influence on clients, against a plaintiff's right to protect work product and strategic alliances. *Id.* There is no factual basis—let alone "good cause"—that any third-party "has the authority to make material litigation decisions or settlement decisions" or that "the interests of parties or the class" are "not being promoted or protected" to necessitate disclosure in this MDL. *See* Rule 7.1.1. The Subpoena should be quashed because J&J continues to flout ethical rules and norms for its own craven benefit, while using this Motion as a baseless way to undermine Beasley Allen's credibility.[7]

---

[6] As the Special Master noted, J&J's continued reliance on out of jurisdiction cases, including *Nimitz Technologies LLC v. CNET Media, Inc.*, is unpersuasive and not controlling. In *Nimitz*, a party plainly failed to file necessary disclosures, violated the Rules of Professional Conduct, failed to comply with court orders, and engaged in a fraudulent conveyance related to a patent. 2022 WL 17338396. There is no evidence that Beasley Allen engaged in any conduct like *Nimitz*. *Compare* ECF No. 32926 at 14, *with* ECF No. 32987-1 at 28-30.

[7] J&J continues to falsely accuse Beasley Allen of violating the solicitation provisions of the Bankruptcy Code. Beasley Allen is unaware of any new bankruptcy filing by J&J or any LTL entity. Therefore, 11 U.S.C. § 1125(e)'s solicitation provisions do not apply. 11 U.S.C. § 1125(b) states that "an acceptance or rejection of a plan may not be solicited <u>after the commencement of the case</u> under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." (emphasis added). In contrast, 11 U.S.C. § 1125(g) states "Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited

9

J&J and its counsel violated RPC 4.2 in its zeal to "get" Beasley Allen at all costs. RPC 4.2 states that "A lawyer shall not communicate about the subject matter of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by counsel . . ."

It is J&J—not Beasley Allen—that acted unethically concerning Beasley Allen's clients. The following timeline shows what actually transpired:

1. <u>May 14, 2024 at 11:43 a.m.-</u> Beasley Allen client DD sent an email to Beasley Allen and Mr. Murdica, counsel for J&J. (Pollock Decl. Exh. E, at (BA_0037)).

2. <u>May 14, 2024 at 12:54 p.m.-</u> Beasley Allen's Elizabeth Achtemeier, Esq. advised Mr. Murdica to "please disregard the below [DD's email] attorney-client communication." (*Id.* at BA_0038).

3. <u>May 14, 2024 at 5:54 p.m.-</u> J&J's outside counsel, Mr. Murdica, directly contacted a known Beasley Allen client (DD) in violation of RPC 4.2 and then solicited a response from DD. Mr. Murdica also "added back the original recipients," including DD. (*Id.* at BA_0039). In that email, Mr. Murdica, writing to DD, accused Beasley Allen of "seeking to enter into a surreptitious relationship to thwart a bankruptcy resolution . . . by publishing misleading and deceptive advertising," and suggesting that Beasley Allen was engaged in fraud. *Id.* Mr. Murdica concluded his email by calling for a response from the Beasley Allen client, asking DD to "confirm that they are in a privileged attorney-client relationship with Beasley Allen." *Id.*

4. <u>May 15, 2024 at 8:57 a.m.-</u> Beasley Allen's Elizabeth Achtemeier, Esq. again directly advised Mr. Murdica (J&J) that DD "is represented in this matter by Beasley Allen. As you know, it is not permissible for you to communicate directly with a represented individual." (*Id.* at BA_0041).

The facts regarding Mr. Murdica are clear—he knowingly violated RPC 4.2 because he was told at 12:54 PM that this was a Beasley Allen Client, and yet at 5:54 PM he communicated directly with her regarding the substance of Beasley Allen's representation of that client. J&J and its

---

from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and <u>if such holder was solicited before the commencement of the case</u> in a manner complying with applicable nonbankruptcy law." (emphasis added). Here, there is no applicable nonbankruptcy law that prohibits counseling a no vote on a plan that has not yet been filed.

counsel violated RPC 4.2 by continuing to communicate directly with a Beasley Allen client after Beasley Allen put J&J on notice. *See* ABA RPC 4.2, cmt. 3 (noting that rule "applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this rule.").[8]

Moreover, the Subpoena should be quashed because it is unclear what J&J seeks from Beasley Allen that is relevant or non-privileged. J&J's subpoena includes eight requests (now six), none of which survive legal scrutiny, factual reality, or J&J's unilateral reversals. **First**, Requests 1 through 5—which seek documents and communications concerning Fortress or any person/litigation funder—are now moot. J&J withdrew its subpoena to Fortress because Fortress confirmed months ago it has <u>not</u> provided Beasley Allen with litigation funding. *See* ECF No. 32213, at 4 (Mr. Meisels states that he has no knowledge of any litigation funding by Beasley Allen). Request Nos. 1-3—which are relevant to Fortress—are moot.

**Second**, Mr. Birchfield's unrefuted testimony confirmed that Beasley Allen does not have any litigation funding for this case, and J&J does not provide any basis to challenge that testimony. *See* Motion to Disqualify (ECF No. 32153) at 60 to 62; Pollock Decl., Exh. C at 47:23 to 48:4 ("there was the allegation made that Beasley Allen is so heavily indebted that we could not accept the proposal, and that is–that is categorically false. We have not. **We have not obtained litigation financing or funding for our talc claims.**"). The documents sought in RFPs Nos. 1-5 (even if they existed) are irrelevant. "The fact that defendants have raised no nonspeculative basis for their

---

[8] Mr. Murdica obviously looked up information about DD because he was aware that she suffers from clear cell ovarian cancer, something DD did not reveal in her emails. Mr. Murdica had actual notice that Beasley Allen represented DD but continued to communicate with her anyway. *See* Pollock Decl., Exh. A (Beasley Allen's 2020 notice of appearance as DD's counsel of record).

discovery request" should result in quashing the Subpoena. *See In re Valsartan*, 405 F. Supp. 3d at 619 (citing cases and noting that "[s]peculation does not justify discovery.").[9]

**Third**, J&J's about face regarding the Subpoena's scope—including also withdrawing its request for documents and communications with third parties like Thomson Reuters—confirms that the Subpoena was always a vehicle to harass Beasley Allen (opposing counsel) rather than a serious discovery demand. *DIRECTV, Inc. v. Richards*, 2005 WL 1514187, at *2 (D.N.J. June 27, 2005) (A subpoena is considered unduly burdensome when it "is unreasonable or oppressive."); *Topolewski v. Quorum Health Res., LLC,* 2013 WL 99843, at *4 (M.D. Tenn. Jan. 8, 2013) (quoting MOORE'S FEDERAL PRACTICE 3D § 45.05[1][c][2], p. 45–36) ("obtaining discovery or testimony from opposing counsel undermines the adversarial system and increases the time and cost of litigation, because questions of attorney-client privilege and work product protections are practically unavoidable when counsel becomes a witness.").[10] Even if Beasley Allen had documents responsive to Requests 1-6, J&J's retraction and precedent end the matter.[11]

2.      **J&J's Subpoena to its Litigation Opponents' Counsel Seeks Privileged and Confidential Documents and Communications Concerning Client Settlement (Request No. 6).**

The Subpoena must be quashed because Request No. 6 seeks Beasley Allen's attorney-

---

[9] There is similarly no basis to order an in-camera review because J&J cannot satisfy any the factors warranting same. *See In re Valsartan*, 405 F. Supp. 3d at 619, n.8 (discussing considerations not applicable here).

[10] J&J withdrew its subpoena to Thomson Reuters and is now "willing to exclude communications with Thomson Reuters and other media organizations from the scope" of the subpoenas. *See* ECF No. 32845 (J&J agreeing "to limit the scope of Requests 1-6 to exclude communications to journalists").

[11] The Subpoena should also be quashed because it seeks documents and communications not proportional to the needs of the MDL. *See In re Valsartan*, 405 F. Supp. 3d at 615-19 (denying request for litigation funding discovery because unsupported request in MDL was disproportionate).

client privileged communications, including "All Documents, Communications, or Agreements" that concern the "authority to settle or otherwise resolve" the talc litigation. ECF No. 32201 at 14. The "Court 'must quash or modify a subpoena' that, *inter alia,* requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." *Hinsinger v. Conifer Ins. Co.*, 2024 WL 866529, at *5 (D.N.J. Feb. 29, 2024).

"The attorney-client privilege applies to communications by a client, made in confidence, for the purpose of seeking legal advice from an attorney who is acting in his or her capacity as an attorney." *Hinsinger*, 2024 WL 866529, at *7 (citation omitted). *See Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*, 2005 WL 1038956, at *6 (D.N.J. May 3, 2005) (finding documents relating "to legal strategy regarding a settlement offer" "protected by the attorney-client privilege and the work-product doctrine").

Request No. 6 must be quashed because it broadly seeks "All Documents, Communications, or Agreements" that concern "the authority to settle or otherwise resolve" the MDL litigation. J&J belatedly claims that "Defendants have never sought—and do not seek in Request 6 to Beasley Allen and Smith Law Firm—to obtain communications between Beasley Allen or the Smith Law Firm and their clients." J&J Br. at 16-19; ECF No. 32845 (claiming same). But Request No. 6, by its plain terms, would sweep in exactly those privileged documents, *i.e.*, "All Documents, Communications or Agreements concerning the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein." ECF No. 32201 at 10. Neither Beasley Allen's clients nor Beasley Allen waived privilege—Beasley Allen warned J&J that it must cease further communications with its known client—which J&J failed to heed. Pollock Decl., Exh. E (communications between J&J and Beasley Allen clients).

Similarly, the Subpoena should be quashed because Request No. 6 seeks documents protected by the work product doctrine, including documents and agreements exchanged with clients concerning settlement. The work product doctrine "is 'distinct from and broader than the attorney-client privilege.'" *Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 186 (D.N.J. 2012) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). *See Times of Trenton Pub. Corp.*, 2005 WL 1038956, at *6 (finding that work product doctrine applied to communications concerning settlement offers between client and attorney). Request No. 6 seeks all documents, communications, and agreements exchanged between Beasley Allen and its clients concerning settlement, *i.e.*, Beasley Allen's core protected settlement-related mental processes. *See O'Boyle v. Borough of Longport*, 218 N.J. 168, 189 (2014) (recognizing that the burden is on party seeking to invade "privacy of an attorney's course of preparation"); *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) ("Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances."). J&J belatedly claims that it does not seek "privileged communications" "solely between Beasley Allen or the Smith Law Firm and their clients regarding legal advice." ECF No. 32845. But those are the only documents (if they existed) that could be produced in response to Request No. 6. Request No. 6—to the extent anything is left of it—must be quashed.

<u>**CONCLUSION**</u>

The Special Master's Order and Opinion should be affirmed because the Subpoena served upon Beasley Allen is J&J's latest attempt to use the civil courts and the bankruptcy code to harass Beasley Allen and its talc-asbestos victim clients. The Subpoena must be quashed because it seeks: (1) irrelevant, non-existent litigation funding; and (2) attorney-client privileged communications and documents concerning settlement. J&J has not established any "good cause" under Rule 7.1.1 or case law to seek documents and communications from its litigation adversary Beasley Allen.

J&J must be put on notice that its repeated abuses of the federal courts—including issuing a subpoena to its litigation adversary (opposing counsel) cannot continue.

<div style="margin-left: 40%">

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*Attorneys for Andy Birchfield and Beasley Allen*

<u>*/s/ Jeffrey M. Pollock*</u>
　　Jeffrey M. Pollock
　　Michael W. Sabo

</div>

Dated: August 5, 2024

## CERTIFICATE OF SERVICE

I, Jeffrey M. Pollock, Esq., hereby certify that I caused a true and correct copy of the foregoing Brief in Opposition to J&J's Motion Objecting to Special Master Order No. 25 and accompanying papers to be served upon all Counsel of Record via the Court's CM/ECF system.

*/s/ Jeffrey M. Pollock*

Jeffrey M. Pollock, Esq.
Michael W. Sabo, Esq.
*Attorneys for Andy Birchfield and*
*Beasley Allen*

Dated: August 5, 2024

16