**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (MAS) (RLS) |

*THIS DOCUMENT RELATES TO ALL CASES*

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON AND LLT MANAGEMENT, LLC'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 25 (ADDRESSING THREE MOTIONS TO QUASH AND/OR FOR <u>PROTECTIVE ORDER) (ECF NO. 32926)</u>**

## **Table of Contents**

Table of Contents…………………………………………………………………..ii

Table of Authorities…………………………………………………………………iii

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

LEGAL STANDARD..............................................................................................4

ARGUMENT ..........................................................................................................4

   I.   The Subpoenas Exceeded the Scope of Permissible Discovery.....................4

   A. The discovery sought is irrelevant to the claims and defenses in this MDL.....5

   B. The discovery sought is not proportional to the needs of this MDL..............14

   II.  The Subpoenas Require Disclosure of Privileged Matters ...........................14

   A. The communications requested implicate the attorney-client privilege, community of interest privilege, mediation privilege, and work product doctrine...………………………………………………………………..15

   B. The litigation financing information requested is protected by the work product doctrine and intrudes upon the attorney-client privilege…………..17

   III.    The Subpoenas are Unduly Burdensome, Oppressive, and Harassing.......19

CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Kaplan v. S.A.C. Cap. Advisors, L.P., S.A.C.*
  141 F. Supp. 3d 246 (S.D.N.Y. 2015) .................................................................10
*Cooper Health Sys. v. Virtua Health, Inc.*,
  259 F.R.D. 208 (D.N.J. 2009)..............................................................................16
*Devon IT, Inc. v. IBM Corp.*,
  2012 WL 4748160 n.1 (E.D. Pa. Sept. 27, 2012)...............................................19
*DIRECTV, Inc. v. Richards*,
  2005 WL 1514187 (D.N.J. June 27, 2005)..........................................................19
*Fulton v. Foley*,
  2019 WL 6609298 (N.D. Ill. Dec. 5, 2019).........................................................15
*Gov't Emps. Ins. Co. v. Trnovski*,
  2018 WL 5281424 (D.N.J. Oct. 23, 2018) .............................................................5
*Gross-Quatrone v. Mizdol*,
  2021 WL 9978409 (D.N.J. Mar. 1, 2021) ...............................................................5
*Hashem v. Hunterdon Cnty.*,
  2017 WL 2215122 (D.N.J. May 18, 2017)...........................................................14
*Hedden v. Kean Univ.*,
  434 N.J. Super. 1, 82 A.3d 238 (N.J. Super. Ct. App. Div. 2013) ......................15
*Hinsinger v. Conifer Ins. Co.*,
  2024 WL 866529 (D.N.J. Feb. 29, 2024) ............................................................15
*In re Int'l Oil Trading Co., LLC*,
  548 B.R. 825 (S.D. Fla. Bankr. 2016) .................................................................19
*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., and Prods.
  Liab. Litig.*,
  2024 WL 1914760 (April 5, 2024) ............................................................... 13, 14
*In re Teleglobe Commc'ns Corp.*,
  493 F.3d 345 (3d Cir. 2007) ...............................................................................17
*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab.
  Litig.*,
  405 F. Supp. 3d 612 (D.N.J. 2019)........................................................... 6, 9, 10
*Kaplan v. S.A.C. Cap. Advisors, L.P., S.A.C.*,
  2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) ....................................................10
*Kernaham v. Home Warranty Adm'r of Fla., Inc.*,
  236 N.J. 301 (2019) .............................................................................................17
*Lambeth Magnetic Structures LLC v. Seagate Tech. (US) Holdings Inc.*,
  2018 WL 466045 (W.D. Pa. Jan. 18, 2018) ........................................................17

*Maldonado v. New Jersey ex. rel. Admin. Off. of Cts. Prob. Div.*,
  225 F.R.D. 120 (D.N.J. 2004) ................................................................................16

*McVicker v. King*,
  266 F.R.D. 92 (W.D. Pa. 2010) ..............................................................................12

*MLC Intel. Prop. LLC v. Micron Tech., Inc.*,
  2019 WL 118595 (N.D. Cal. Jan. 7, 2019) .............................................................10

*Napolitano v. Corbishley*,
  2021 WL 3486901 (D.N.J. Aug. 9, 2021) ...............................................................17

*Northrop Corp. v. McDonnell Douglas Corp.*,
  751 F.2d 395 (D.C. Cir. 1984) ................................................................................19

*OMS Invs., Inc. v. Lebanon Seaboard Corp.*,
  2008 WL 4952445 (D.N.J. Nov. 18, 2008) ...............................................................5

*Preservation Techs. LLC v. MindGeek USA, Inc.*,
  2020 WL 10965161 (C.D. Cal. Dec. 18, 2020) .......................................................18

*Ramos*,
  2023 WL 2327208 .....................................................................................................5

*Schmulovich*,
  2007 WL 2362598 ...................................................................................................20

*Securitypoint Holdings, Inc. v. United States*,
  2019 WL 1751194 (Fed. Cl. Apr. 16, 2019) ...........................................................18

*Seven Z Enters., Inc. v. Giant Eagle, Inc.*,
  2020 WL 7240365 (W.D. Pa. Mar. 6, 2020) ...........................................................14

*Space Data Corp. v. Google LLC*,
  2018 WL 3054797 (N.D. Cal. June 11, 2018) .........................................................10

*Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*,
  2005 WL 1038956 (D.N.J. May 3, 2005) ................................................................16

*U.S. v. Homeward Residential, Inc.*,
  2016 WL 1031154 (E.D. Tex. Mar. 15, 2016) ........................................................18

*V5 Techs. v. Switch, Ltd.*,
  334 F.R.D. 306 (D. Nev. 2019) .................................................................................6

*VHT, Inc. v. Zillow Grp., Inc.*,
  Case No. C15-1096JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016)..............6

*Viamedia, Inc. v. Comcast Corp.*,
  2017 WL 2834535 (N.D. Ill. June 30, 2017).............................................................18

*Westinghouse Elec. Corp. v. Republic of Philippines*,
  951 F.2d 1414 (3d Cir. 1991) ..................................................................................16

iv

**Rules**

Fed. R. Civ. P. 26(b)(1)....................................................................... 4, 5, 14

Fed. R. Civ. P. 26(b)(3)...........................................................................16

Fed. R. Civ. P. 26(c)................................................................................5

Fed. R. Civ. P. 45(d)(3)(A)......................................................................5

Fed. R. Civ. P. 45(d)(3)(B)......................................................................5

Fed. R. Civ. P. 53...................................................................................4

Fed. R. Civ. P. 53(f)(3)...........................................................................4

Federal Rule of Civil Procedure 26(b)...................................................4, 5

Federal Rule of Civil Procedure 45 .........................................................5

**Other Authorities**

L.R. 7....................................................................................................9

## INTRODUCTION

Unsurprisingly, Defendants seek to overturn the Special Master's Order simply because they do not like the outcome. Defendants raise no new arguments and provide no legitimate basis for asserting that the Special Master's decision is unsupported or incorrect. Instead, Defendants spout the same speculative conjecture that they relied on to support their position in the initial letter briefing and oral arguments. Defendants fail to articulate any good cause or substantial need to warrant the disclosure of the irrelevant, disproportionate, and protected information its subpoenas seek to discover. As such, the Special Master's Order quashing the Defendants' subpoenas should be upheld.

## BACKGROUND

On May 20, 2024, defendants Johnson & Johnson and LLT Management LLC issued a subpoena to non-party the Beasley Allen Law Firm ("Beasley Allen") for the production of (1) all documents, communications, or agreements related to the existence and details of third-party litigation funding arrangements, (2) all documents, communications, or agreements "concerning the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein," (3) all communications between Beasley Allen and any non-party related to the proposed plan of reorganization announced by defendants on May 1, 2024, and the solicitation of personal injury Plaintiffs regarding same, and (4) all communications

between Beasley Allen and any non-party related to settlement offers made by defendants in connection with the talc litigation. Beasley Allen Subpoena, ECF No. 32201.

Three days later, defendants served a nearly identical subpoena on non-party the Smith Law Firm ("Smith Law"), seeking the production of (1) all documents, communications, or agreements related to the existence and details of third-party litigation funding arrangements, (2) all documents, communications, or agreements "concerning the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein," (3) all communications between Smith Law and any non-party related to the proposed plan of reorganization announced by defendants on May 1, 2024, and the solicitation of personal injury Plaintiffs regarding same, and (4) all communications between Smith Law and any non-party related to settlement offers made by defendants in connection with the talc litigation. Smith Law Subpoena, ECF No. 32226.

Defendants subsequently served another subpoena on non-party Ellington Management Group ("Ellington"), demanding the production of (1) all communications and agreements between Ellington and any law firm related to the litigation, (2) all communications, agreements, and documents reflecting any funding provided to law firms in this litigation, including which law firms received funding, when funding began, and the terms of funding, (3) all communications

between Ellington and any law firm concerning any of defendants' proposed resolutions from 2020 through the present, (4) all communications between Ellington and any law firm related to the proposed plan of reorganization announced by defendants on May 1, 2024, and the solicitation of personal injury Plaintiffs regarding same, (5) all communications between Ellington and Beasley Allen, (6) all documents, communications, and agreements related to any funding Ellington provided to Beasley Allen, (7) all communications between Ellington and Smith Law, and (8) all documents, communications, and agreements related to any funding Ellington provided to Smith Law. See Ellington Subpoena, ECF No. 32215.

On May 30, 2024, the Plaintiffs' Steering Committee ("PSC") filed a motion to quash the subpoenas and/or for protective order, ECF No. 32483, and Defendants opposed the motion. ECF No. 32827. Non-partys Beasley Allen and the Smith Law Firm filed Motions to Quash and/or for Protective Order Over Subpoenas Directed to the two law firms ECF Nos. 32445, 32603.   The Court referred the motions to the Special Master ("SM") and a hearing was held on July 1. *See* Tr. of July 1, 2024 Hr'g, ECF No. 32883. On July 9, the Special Master issued Special Master Order No. 25 (the "Order") granting all three motions and quashing the subpoenas. ECF No. 32926. Defendants filed its objection to that Order on July 21. ECF No. 32987. The PSC now file its response in opposition to the Defendants' objection because, as explained below, the SM properly determined that the subpoenas exceeded the

permissible scope of discovery by requesting irrelevant information that is disproportionate to the needs of this case and requires the disclosure of privileged matters.

## LEGAL STANDARD

Pursuant to the Appointment Order, the Special Master has been delegated the authority to address all discovery disputes, including the PSC's Motion to Quash. *See* ECF Nos. 704, 18360, 32853. The Special Master must proceed with reasonable diligence to resolve all discovery disputes, and issue an order for the Court to accept, modify, or reject. *See* ECF Nos. 704; *see also* Fed. R. Civ. P. 53. If a party objects to the order, it is only viewed as a recommendation to the Court. *See* ECF Nos. 704. The Court reviews the Special Master's findings of fact and conclusions of law *de novo*. *See* ECF No. 704; *see also* Fed. R. Civ. P. 53(f)(3). Here, the Special Master had the benefit of extensive briefing, an extensive factual record, and oral argument to consider in ruling on this dispute. He cited the record in issuing his decision and issued a thoughtful and legally correct opinion. The Special Master's determination was correct and should not be overruled or disturbed even upon a *de novo* review.

## ARGUMENT

### I.    The Subpoenas Exceeded the Scope of Permissible Discovery

Federal Rule of Civil Procedure 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A non-party

subpoena authorized by Federal Rule of Civil Procedure 45 "must fall within the scope of discovery permissible under Rule 26(b)." *Gov't Emps. Ins. Co. v. Trnovski*, 2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018) (citing *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, 2008 WL 4952445 (D.N.J. Nov. 18, 2008)). If a non-party subpoena exceeds the bounds of permissible discovery, the court may issue a protective order, modify the subpoena, or quash the subpoena entirely. *See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); Fed. R. Civ. P. 45(d)(3)(A) (providing four circumstances in which quashing or modifying a subpoena is required); Fed. R. Civ. P. 45(d)(3)(B) (setting forth two instances in which quashing or modifying a subpoena is permitted).

The Beasley Allen, Smith Law, and Ellington subpoenas far exceed the scope of permissible discovery under Rule 26(b), as they seek information that is neither relevant nor proportional to the needs of this case. *See Gross-Quatrone v. Mizdol*, 2021 WL 9978409, at *2 (D.N.J. Mar. 1, 2021) ("First, the subpoenaing party must demonstrate that the information sought is relevant to any party's claim or defense and proportional to the needs of the case under Rule 26(b)(1)." (citation omitted)); *Trnovski*, 2018 WL 5281424, at *2; *Ramos*, 2023 WL 2327208, at *3 n.3.

**A.     The discovery sought is irrelevant to the claims and defenses in this MDL.**

Defendants' subpoenas seek third-party litigation financing that is not relevant to the claims and defenses in this MDL. *See* Order at 7 ("Indeed, the requests have nothing to do with the core of the case which is whether defendants' talc products contained asbestos and if the products caused plaintiffs' cancer."). The consensus among courts is that such information is irrelevant and therefore not discoverable. *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("The Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant.") (citing cases)). Courts only find discovery appropriate upon a "sufficient showing" that "something untoward occurred" to render litigation financing relevant. *Id*. at 615. This requires "some objective evidence" that the requesting party's "theories of relevance are more than just theories." *VHT, Inc. v. Zillow Grp., Inc.*, Case No. C15-1096JLR, 2016 WL 7077235, at *1, 2 (W.D. Wash. Sept. 8, 2016). "For example, discovery will be ordered where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or not being protected, or conflicts of interest exist." *In re Valsartan*, 405 F. Supp. 3d at 615. "Mere speculation by the party seeking this discovery will not suffice." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019).

Defendants do not present "objective evidence" of something untoward.

Instead, their speculative argument is that because Smith Law previously had a financing arrangement with Fortress Investment Group LLC ("Fortress"), allegedly entered into an arrangement with Ellington Management Group ("Ellington") thereafter, and such arrangements were never disclosed by Smith Law, then the law firm must be purposefully concealing the arrangements and acting under the control of the financers in making litigation strategy and settlement decisions. Def.'s Letter Br., ECF No. 32200 at 4–5. This manufactured theory of relevance is purely speculative. Defendants present no evidence that Fortress, Ellington, or any other third-party funder are controlling decisions in this MDL. Even more, Defendants present no evidence that Smith Law's arrangements with Fortress or Ellington are funding cases pending in this MDL at all, and the declaration of David Meisels, the Managing Director and Head of Litigation for Fortress, does not indicate so. *See* Def.'s Letter Br., Ex. A, ECF No. 32213 at 4–5; *see* Order at 10-11 ("[N]o competent evidence has been produced to support the assertion . . . that Smith currently has any financing arrangement regarding this talc litigation."). Notably, Smith Law has never appeared in this MDL.  Defendants therefore are attempting to tie an arrangement that Smith Law may have to this MDL and Beasley Allen, where there is no showing that Smith Law has an involvement in this MDL.

Nor do defendants explain how the financial arrangement of one of Beasley Allen's several hundred co-counsel relationships has any bearing on Beasley Allen

or its representation in this MDL. *See* Beasley Allen Resp. Letter Br., Ex. 3, ECF No. 32251-3 at 11 (Andy Birchfield, when asked about the number of Beasley Allen's co-counsel relationships, responding that "hundreds would be my best. . . estimate."); *see also* Order at 11 ("The fact that Smith may have partnered with Beasley Allen in the past on talc litigation is not competent evidence that the firm's financing impacts Beasley Allen's settlement position in this litigation."). That's because they cannot. Andy Birchfield previously testified that Beasley Allen has not used litigation funding for talc cases before this Court, *see* Hr'g Tr. on Def.'s Mot. to Disqualify, ECF No. 32153 at 60–62, and while being deposed during the LTL-2 bankruptcy proceeding, which defendants conveniently left out of the exhibit accompanying their letter to this Court. *See* Beasley Allen Resp. Letter Br., Ex. 3, ECF No. 32251-3 at 11–13 (Andy Birchfield stating: "there was the allegation made that Beasley Allen is so heavily indebted that we could not accept the proposal, and . . . that is categorically false. We have not. We have not obtained litigation financing or funding for our talc claims."); *see also* Order at 10 ("Getting to the crux of the issue, the short answer as to why no good cause exists to grant defendants' request for litigation finance discovery is that Beasley Allen, via Birchfield's testimony has already attested to the fact that Beasley Allen has no such litigation funding for this MDL."). Further, David Meisels' declaration indicates that Fortress has never provided funding to Beasley Allen. *See* Def.'s Letter Br., Ex. A, ECF No. 32213 at

4. Because defendants merely raise "a parade of horribles that could or may arise from litigation funding agreements" and present "no nonspeculative basis for their discovery request," it should be denied. *In re Valsartan*, 405 F. Supp. 3d at 615–16.

Despite defendants' insistence, Local Rule 7.1.1 is not dispositive of the relevance of their expansive requests. The Rule requires disclosure of the identity of funders, whether the funder's approval is necessary for settlement decisions, and the nature of the funder's financial interest <u>when third-party litigation funding exists</u>.[1] *See* L.R. 7.1.1(a). The Rule contemplates "additional discovery of the <u>terms</u> of any such agreement" only upon a showing of good cause that (1) "the non-party has authority to make material litigation decisions or settlement decisions, the interests of parties or the class (if applicable) are not being promoted or protected, or conflicts of interest exist, or" (2) "such other disclosure is necessary to any issue in the case." L.R. 7.1.1(b). Further, whether funding exists or not, the Rule does not sanction discovery of communications between plaintiffs' counsel and non-parties concerning settlement authority, prior settlement offers, and defendants' proposed plan of reorganization in a separate bankruptcy proceeding.

Like the cases preceding it, Rule 7.1.1 recognizes that because this

---

[1] As explained above, Andy Birchfield previously testified that Beasley Allen has not used litigation funding for any talc cases before this Court, *see* Hr'g Tr. on Def.'s Mot. to Disqualify, ECF No. 32153 at 60–62, and while being deposed during the LTL-2 bankruptcy proceeding. *See* Beasley Allen Resp. Letter Br., Ex. 3, ECF No. 32251-3 at 11–13.

information is generally irrelevant, disproportionate, and undiscoverable, there must be a sufficient showing of good cause that the discovery is appropriate in a particular case. *See, e.g., In re Valsartan*, 405 F. Supp. 3d at 615 (explaining that "rather than directing carte-blanche discovery of plaintiffs' litigation funding, the Court will Order the discovery only if good cause exists to show the discovery is relevant to claims and defenses in the case."); *Kaplan v. S.A.C. Cap. Advisors, L.P., S.A.C.*, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) (denying litigation funding discovery because "defendants did not show that the requested documents are relevant to any party's claim or defense."); *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (deciding that the court was "not persuaded" that the litigation funding discovery sought was "relevant to any party's claim."); *MLC Intel. Prop. LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (concluding that the defendant was "not entitled" to litigation funding discovery "because it is not relevant."). Defendants do not proffer objective evidence, and their speculation and unsupported accusations do not establish good cause.

Rather than articulating credible theories of relevance, Defendants try to justify this impermissible discovery by accusing plaintiffs' counsel of committing ethical violations. *See* Def.'s Letter Br., ECF No. 32200 at 3–5. Defendants base these serious accusations on speculation and a contrived interpretation of statements

that were improperly solicited from a represented individual ("DD") by defendants' counsel, Jim Murdica. *See* Def.'s Letter Br., Exs. A, C, D, ECF Nos. 32200-2, 32200-4, 32200-5. Specifically, on May 14, 2024, Beasley Allen client DD sent an email to Beasley Allen, J&J's outside counsel, and LLT's in-house counsel, copying a reporter from Thomson Reuters. *See id*. That email asked for "the exact date [defendants] plan to issue paperwork for the 3rd bankruptcy." *Id*. Despite Beasley Allen attorney Elizabeth Achtemeier removing DD and the reporter from the email chain and instructing Mr. Murdica to "please disregard [DD's] attorney-client communication," Mr. Murdica "added back the original recipients," including DD, accused Beasley Allen of "seeking to enter into a surreptitious relationship to thwart a bankruptcy resolution . . . by publishing misleading and deceptive advertising," and asked DD to "confirm that they are in a privileged attorney-client relationship with Beasley Allen." *Id*. DD responded, in part, that she previously inquired about settlement, and her attorney advised, "Johnson & Johnson is not willing to settle your case at this time" and "to date, J&J has been unwilling to settle." *Id*.

Indeed, this ambiguous email lacks any context or indication as to when and under what circumstances the representation was made. *See* Order at 13. Yet, defendants ask the Court to infer that this conversation confirms Beasley Allen furnished "false and misleading information" to talc claimants concerning the proposed plan, intends to "further flood talc ovarian cancer claimants with an anti-

vote campaign," failed to convey prior resolution offers to its clients, and advocates "for positions directly contrary to the interests of talc ovarian cancer claimants." Def.'s Letter Br., ECF No. 32200 at 1. Such inferences are unreasonable and not supported by the email exchange.[2] *See* Order at 13-14 (holding that these emails are not "objective evidence" of such a scheme). Defendants' conjecture does not suffice to bring its requests within the realm of permissible discovery. *See McVicker v. King*, 266 F.R.D. 92, 97 (W.D. Pa. 2010) (denying discovery of media communications based upon speculation). Defendants do no more than attempt to bootstrap this ambiguous situation as a reason why far-searching litigating funding discovery is appropriate here. The argument fails.

Similarly, the subpoenas also broadly request all communications between Beasley Allen and any non-party, Smith Law and any non-party, and Ellington and any law firm regarding defendants' most recently proposed plan of reorganization and the solicitation of claimants for the same. *See* Beasley Allen Subpoena, ECF No.

---

[2] The only ethical violation reflected by the series of emails was committed by defendants' counsel, not by Beasley Allen. *See* New Jersey Rule of Professional Conduct 4.2 (providing that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter."); ABA Model Rule of Professional Conduct 4.2 (also providing that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter."); ABA Model Rule of Professional Conduct 4.2 cmt. 3 (clarifying that Rule 4.2 "applies even though the represented person initiates or consents to the communication" and that "[a] lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by" Rule 4.2.).

32201 at 15; Smith Law Subpoena, ECF No. 32226 at 15; Ellington Subpoena, ECF No. 32215 at 13. Defendants do not and cannot show that this information is relevant to any claim or defense in this MDL. In fact, they concede this information is pertinent to "the success of the plan"—a proposed plan of reorganization to be filed in a future bankruptcy proceeding that defendants have yet to commence —and admittedly seek to investigate their unfounded suspicions that Beasley Allen intends "to disseminate a misinformation campaign" to "bias the vote" and "derail" the plan. Def.'s Letter Br., ECF No. 32200 at 1, 5–6. This information is simply irrelevant to this MDL since it "will not be tried before any jury in these proceedings." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2024 WL 1914760, at *2 (April 5, 2024).

The subpoenas further command the production of documents, agreements, and communications concerning Beasley Allen's and Smith Law's settlement authority and communications with any non-party regarding prior settlement offers from defendants, as well as all communications between Ellington and any law firm related to defendants' proposed resolutions from 2020 to the present. *See* Beasley Allen Subpoena, ECF No. 32201 at 15; Smith Law Subpoena, ECF No. 32226 at 15; Ellington Subpoena, ECF No. 32215 at 13. This information is also irrelevant to the claims and defenses in this case as it "has nothing to do with whether exposure to J&J's baby powder caused plaintiffs' ovarian cancer which is the heart of the case."

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2024 WL 1914760 at *2; *see also* Order at 15 ("[T]he requested documents are irrelevant to any claim or defense in the case.")

**B.   The discovery sought is not proportional to the needs of this MDL.**

Even if the requested information was marginally relevant, the requests still exceed the permissible bounds of discovery because they are not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The subpoena vaguely seeks *all* documents, communications, and agreements related to litigation funding and authority to settle claims or otherwise resolve the litigation, as well as *all* communications between the subpoenaed parties, including their directors, officers, employees, and agents, and any non-party regarding defendants' most recent bankruptcy proposal and prior settlement offers. These requests are facially overbroad and flout the requirement that discovery be proportional to the needs of the case. *See Seven Z Enters., Inc. v. Giant Eagle, Inc.*, 2020 WL 7240365, at *3 (W.D. Pa. Mar. 6, 2020) ("The sheer scope of the subpoenas speaks to [the document requests'] disproportionality."). "While the scope of discovery is broad, it is not unlimited . . . and should not serve as a fishing expedition." *Hashem v. Hunterdon Cnty.*, 2017 WL 2215122, at *2 (D.N.J. May 18, 2017).

**II.   The Subpoenas Require Disclosure of Privileged Matters**

In addition to the grounds detailed above, which alone are sufficient for the

affirming the entry of the protective order,[3] the subpoenas should also be quashed because they seek disclosure of privileged documents and communications, which plaintiffs have an interest in protecting. *See Fulton v. Foley*, 2019 WL 6609298, at *1 (N.D. Ill. Dec. 5, 2019) (finding standing to quash based on plaintiff's "legitimate interest in" the disclosure of attorney work product material). The PSC is tasked with representing the interests of all plaintiffs in the MDL. As such, the PSC has standing to protect the rights and interests of all plaintiffs with cases filed in the MDL.

### A. The communications requested implicate the attorney-client privilege, community of interest privilege, mediation privilege, and work product doctrine.

The requests for all documents, communications, and agreements related to counsel's authority to settle claims or resolve the litigation plainly seek information protected by the attorney-client privilege. *See Hinsinger v. Conifer Ins. Co.*, 2024 WL 866529, at *7 (D.N.J. Feb. 29, 2024) (citation omitted) ("The attorney-client privilege applies to communications by a client, made in confidence, for the purpose of seeking legal advice from an attorney who is acting in his or her capacity as an attorney."); *Hedden v. Kean Univ.*, 434 N.J. Super. 1, 82 A.3d 238, 245 (N.J. Super. Ct. App. Div. 2013) ("[T]here is a presumption that a communication made in the lawyer-client relationship has been made in professional confidence.... If the

---

[3] *See* Order at 11 n.7 ("Given the finding that defendants' subpoenas request irrelevant discovery, there is no need to address the argument that the subpoenas request privileged or disproportional discovery.").

purpose was to solicit legal advice, then the privilege applies."); *Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*, 2005 WL 1038956, at *6 (D.N.J. May 3, 2005) (holding that the attorney-client privilege and the work-product doctrine protected communications between client and attorney concerning settlement offers.).

The requests for all communications with any non-party regarding defendants' bankruptcy proposal and prior settlement offers require disclosure of protected attorney work product. *See* Fed. R. Civ. P. 26(b)(3) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). This protection is not necessarily waived by disclosure to a third party if that party is not an adversary. *See Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 213 (D.N.J. 2009) (citing *Maldonado v. New Jersey ex. rel. Admin. Off. of Cts. Prob. Div.*, 225 F.R.D. 120, 131 (D.N.J. 2004)) ("The essential question with respect to waiver of work product is whether the material has been kept away from adversaries."); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) ("Because the work-product doctrine serves . . . to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine."). Accordingly, a host of protected material falls within these unrestricted requests, including

communications with experts, agents, consultants, other plaintiffs' counsel, and mediators, to name a few.

Communications with other plaintiffs' counsel are also shielded by the community of interest privilege, *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) (explaining that the community of interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others."), and communications with mediators are also covered by the mediation privilege. *See Napolitano v. Corbishley*, 2021 WL 3486901, at *2 (D.N.J. Aug. 9, 2021) (citing *Kernaham v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301 (2019) (the mediation privilege covers "any statement, whether verbal or nonverbal . . . made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator.").

**B.     The litigation financing information requested is protected by the work product doctrine and intrudes upon the attorney-client privilege.**

Litigation financing documents and communications are shielded by the work product doctrine. *See, e.g., Lambeth Magnetic Structures LLC v. Seagate Tech. (US) Holdings Inc.*, 2018 WL 466045, at *6 (W.D. Pa. Jan. 18, 2018) (denying discovery of communications between plaintiff and litigation funders and funding agreements in patent infringement actions as "shielded under work product protection.");

*Ioengine, LLC v. Interactive Media Corp.*, 1:14-cv-01571-GMS, slip op. at 2 (D. Del. Aug. 3, 2016) (denying motion to compel production of documents plaintiff disclosed to prospective litigation funders as protected work product); *Securitypoint Holdings, Inc. v. United States*, 2019 WL 1751194, at *5 (Fed. Cl. Apr. 16, 2019) ("Litigation funding agreements are often considered by the federal courts to be protected by the work product doctrine or as otherwise irrelevant to the issues at hand."); *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *1 (N.D. Ill. June 30, 2017) (district court in patent infringement action denied defendant's request for documents plaintiff disclosed to prospective litigation financing firms as "protected by the work-product doctrine.").

And because such information is neither relevant nor proportional to the needs of the case, defendants cannot demonstrate the "substantial need" required to overcome the work product doctrine. *See, e.g., Preservation Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965161, at *6-7 (C.D. Cal. Dec. 18, 2020) (finding litigation funding documents not discoverable because the work product doctrine "shields those documents from discovery" and the defendant did not show a substantial need to access the documents); *U.S. v. Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) (denying disclosure of funding agreements and plaintiff's communications with funders as "protected by the work product doctrine" and because defendants did not demonstrate a "substantial need"

for the information).

Such information is further protected by "the common interest exception and the agency exception" to waiver of the attorney-client privilege. *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 832, 836 (S.D. Fla. Bankr. 2016) (holding that all communications between the judgment creditor and funder were "protected by both the common interest exception and the agency exception" to waiver of the attorney-client privilege and work product protection, and there was no showing of "substantial need"); *Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012) (quashing third-party subpoena directed at a litigation funder because the documents were "protected from disclosure as work-product," and production "would intrude upon attorney-client privilege under the 'common-interest' doctrine.").

## III.    The Subpoenas are Unduly Burdensome, Oppressive, and Harassing

Finally, the subpoenas are also unduly burdensome, oppressive, and harassing. A subpoena is considered unduly burdensome when it "is unreasonable or oppressive." *DIRECTV, Inc. v. Richards*, 2005 WL 1514187, at *1 (D.N.J. June 27, 2005) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984)). Courts consider "the following factors in evaluating the reasonableness of a subpoena: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5)

the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity." *Schmulovich*, 2007 WL 2362598 at *4.

Defendants' requests are overly broad and not described with particularity, and because the discovery sought is neither relevant to this MDL nor proportional to the needs of the case, defendants cannot show a need for the productions or that the productions will advance the litigation. Ultimately, it is unreasonable to require plaintiffs' counsel to exert time, effort, and expense in locating, reviewing, and producing irrelevant, privileged documents, to the degree they even exist, instead of prosecuting plaintiffs' claims. Plaintiffs' counsel here are focusing on litigating the issues of the case, and should not be distracted to engage in the rabbit hole pursuits that defendants desire plaintiff's counsel to be embroiled in.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should uphold the Special Master's Order quashing the subpoenas directed at non-parties Beasley Allen Law Firm, Smith Law Firm, and Ellington Management Group.

Dated: August 5, 2024                    Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***


*/s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
***Plaintiffs' Co-Lead Counsel***


*/s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com
***Plaintiffs' Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*/s/ P. Leigh O'Dell*
P. Leigh O'Dell