**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re Johnson & Johnson Talcum Powder Product Marketing Sales Practices and Products Liability Litigation | **Case No. 3:16-md-2738-MAS-RLS**<br><br>**CIVIL ACTION**<br><br>**Motion Return Date:**<br>**August 19, 2024** |

---

**BRIEF IN RESPONSE TO MOTION TO VACATE ORDER OF SPECIAL
MASTER QUASHING SUBPOENA
ISSUED TO THE SMITH LAW FIRM, PLLC**

---

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By:  Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys For Moving Party
The Smith Law Firm. PLLC

#7130558v1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................1

    A.    The Parties ........................................................................ 1

    B.    The Subpoena ..................................................................... 3

    C.    The Cosmetic Talcum Powder Litigation ......................................... 3

    D.    Judge Schneider's Decision...................................................... 4

ARGUMENT ........................................................................... 6

SCOPE OF REVIEW .................................................................... 6

    POINT I................................................................................ 8

    THE PREVALENCE OF LITIGATION FUNDINGS IS NOT
    RELEVANT TO THE ISSUES IN DISPUTE

    POINT II ............................................................................. 9

    THE JOHNSON & JOHNSON SUBPOENA
    SEEKS INFORMATION THAT IS NOT
    DISCOVERABLE UNDER FED. R. CIV. P. 26

    A.    Background......................................................................... 9

    B.    Litigation Funding Information is Irrelevant...................................... 10

    C.    Settlement Communications are Irrelevant ........................................ 11

i

POINT III ....................................................................................................... 12

      THE JOHNSON & JOHNSON SUBPOENA
      SEEKS INFORMATION THAT IS NOT REQUIRED
      TO BE PROVIDED UNDER N.J. LOCAL RULE 7.1.1

Conclusion ........................................................................................................ 17

#7130558v1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Caver v. City of Trenton,*
192 F.R.D. 154 (D.N.J. 2000) ........................................................................ 10

*Centillion Data Sys. v. Ameritech Corp.,*
193 F.R.D. 550 (S.D. Inc. 1999) .................................................................... 12

*Concord Boat Corp. v. Brunswick Corp.,*
169 F.R.D. 44 (S.D. N.Y. 1996) ...................................................................... 9

*Cusumano v. Microsoft Corp.,*
162 F.3d 708 (1st Cir. 1998) ......................................................................... 10

*Echostar Commc'ns Corp. v. News Corp.,*
180 F.R.D. 391 (D. Colo. 1998) .................................................................... 10

*Environmental Tectonics v. W.S. Kirkpatrick & Co.,*
659 F. Supp. 1381 (D.N.J. 1987),
aff'd in part. rev'd in part, 847 F.2d 1052 (3d Cir. 1988),
aff'd 110 S. Ct. 701 (1990) .............................................................................. 7

*In re Intel Corp. Micorpocessor Antitrust Litig.,*
526 F. Supp. 2d 461 (D.C. Del. 2007) ............................................................. 8

*In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.*
405 F. Supp. 3d 612 (D.N.J. 2019) ............................................................ 9, 11

*Kaplan v. S.A.C. Capital Advisors, L.P., S.A.C.,*
No. 12-cv-9350, 2015 U.S. Dist. LEXIS 135031,
(S.D.N.Y. Sept. 10, 2015),
*aff'd,* 141 F. Supp. 3d 246 (S.D.N.Y. 2015) ................................................ 11

*Katz v. AT&T Corp.*
191 F.R.D. 433 (E.D. Pa. 2000) ...................................................................... 7

iii

*Lesal Interiors v. Resolution Trust Corp.*,
  153 F.R.D. 552 (D. N.J. 1994) ........................................................................ 11

*Matter of Robertelli*,
  248 N.J. 293 (2021) ....................................................................................... 16

*Morse/Diesel, Inc. v. Trinity Indus.*,
  142 F.R.D. 80 (S.D. N.Y. 1992) ..................................................................... 11

*Schroeder v. Boeing Commercial Airplane Co.*,
  123 F.R.D. 166 (D.N.J. 1988) ......................................................................... 7

*Scouler v. Craig*,
  116 F.R.D. 494 (D.N.J. 1987) ....................................................................... 10

*Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*,
  No. 03-cv-6026, 2005 US Dist. LEXIS 34624
  (D.N.J. May 3, 2005) ..................................................................................... 12

*Wang v. Univ. of Pittsburgh*,
  No. 02-20-cv-1952, 2023 U.S. Dist. LEXIS 142110
  (W.D. Pa. 2023, Aug. 15, 2023) ....................................................................... 8

## **Rules**

*Fed. R. Civ. P.* 26 .................................................................................... 9, 12

*Fed. R. Civ. P.* 26(b) ................................................................................... 10

*Fed. R. Civ. P.* 26(b)(1) ................................................................................ 9

*Fed. R. Civ. P.* 26(c)(1) ................................................................................ 9

*Fed. R. Civ. P.* 53 ........................................................................................ 7

*Fed. R. Evid.* 408 ....................................................................................... 11

iv

*L. Civ. R. (N.J.)* 7.1.1 ................................................................................ 12, 14

*L. Civ. R. (N.J.)* 7.1.1(a) ......................................................................... 13, 15

*L. Civ. R. (N.J.)* 7.1.1(b) ............................................................................. 13

*L. Civ. R. (N.J.)* 7.1.1(c) ............................................................................. 14

New Jersey Rule of Professional Conduct 4.2 ....................................... 15

#7130558v1

## PRELIMINARY STATEMENT

This brief is submitted on behalf of The Smith Law Firm. PLLC (hereafter "Smith") in opposition to the motion filed by Johnson & Johnson and LLT Management, LLC (hereafter collectively "J&J") which seeks to vacate the Order of Special Master Joel Schneider, U.S.M.J., ret. which quashed a subpoena issued to the Smith Law Firm.  The subpoena was properly quashed because it sought information  that was neither relevant, *see In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.* 405 F. Supp. 3d 612 (D.N.J. 2019) and the cases cited therein, nor discoverable under *Local Civ. R.* 7.1.1.

Reduced to its essence, Defendant seems to say that, if a plaintiff rejects a settlement proposal that a defendant thinks is beneficial, then the Court should infer an improper motive and require disclosure of litigation funding information from an attorney, who although not a party to the case before the Court, did jointly prosecute other cases in other courts with counsel of record before this Court. Inferring a nefarious motive on behalf of Beasley Allen, J&J argues that (1) Beasley Allen had misinformed one of its 11,000 clients that J&J has been unwilling to settle her case; and (2) if this case settles outside of bankruptcy, Beasley Allen will receive an enhanced fee and thus Beasley Allen does not wish to endorse the proposed bankruptcy.

Neither contention is remotely relevant to the Smith Law Firm; J&J has put an inaccurate gloss on the communications it had with the Beasley Allen client; and there is nothing in the record to support J&J's contention that Beasley Allen will only receive a common fund fee if this matter is settled outside of bankruptcy. J&J, in addition, misconstrues the scope of Judge Schneider's cogent opinion and relies in part on irrelevant assertions: the growth in litigation funding and legislative proposals – not yet law – to more robustly regulate litigation funding.

The Smith Law Firm PLLC joins in the arguments set forth in every brief filed in support of the Special Master's opinion.

### A.    The Parties

Johnson & Johnson is a Defendant in *In Re Johnson & Johnson Talcum Powder Product Marketing Sales Practices and Products Liability Litigation*, Docket No.: 3:16-md-02738-MAX-RLS (hereafter "the Litigation"). This case, pending before the Multi-District panel, is venued in New Jersey, and involves claims of personal injuries attributable to talcum powder sold by J&J. Smith, the recipient of the subpoena, is a Mississippi based law firm that is neither a party in the Litigation nor counsel of record to any party in  the Litigation. (Declaration of Allen Smith, ¶ 4).

**B.    The Subpoena**

The subpoena in dispute was initially far broader but, in connection with the

current motion, J&J has limited it to

> information from . . . the Smith Law Firm . . . regarding litigation funding
> and their communications with third parties (including communications
> between the firms and their litigation financiers) regarding settlement
> authority generally and the proposed reorganization plan specifically.

(J&J brief, pp. 12 to 13).

**C.    The Cosmetic Talcum Powder Litigation**

The subpoena arises in the context of a personal injury lawsuit.  That lawsuit

is most likely typical of other cases within the Multi-District docket.  The New

Jersey case in which the subpoena was issued was filed on behalf of a plaintiff

named Barbara Ross by her attorneys, Moll Law Group and The Law Group, Ltd.

(See Amended Complaint, Document 52 in *In Re Johnson & Johnson Talcum*

*Powder Product Marketing Sales Practices and Products Liability Litigation*,

Docket No.:  3:16-md-02738-MAS-RLS).  The Complaint is largely a

conventional personal injury pleading in which Ms. Ross alleges that she suffers

from ovarian cancer attributable to her use of talcum powder sold by J&J.  Neither

The Smith Law Firm PLLC nor Allen Smith has any connection to Ms. Ross or to

her attorneys.  (Declaration of Allen Smith, ¶ 5).

3

**D.     Judge Schneider's Decision**

The recipients of the J&J subpoena as well as the Plaintiffs' Steering

Committee moved to quash the subpoena.  Following comprehensive briefing, the

matter was argued before retired U.S.M.J. ret.,  Joel Schneider who, on July 9,

2024, granted the motion to quash the subpoena.  (ECF Doc. 32926).

J&J's discussion of the Special Master's decision is a bit truncated.  He did

not, as Defendant states at page 1 of its brief, rule that Defendant was required to

show that "discovery into litigation financing is relevant to the fair adjudication

and resolution of matters before the Court."  The Special Master's analysis was far

more comprehensive and nuanced than Defendant suggests.

Judge Schneider first considered the scope of discovery under Fed. R. Civ.

P. 26 (p. 7).  The Judge properly ruled that:

> Defendant's subpoenas do not request information regarding a party's claim
> or defense.  Indeed, the requests have nothing to do with the core of the case
> . . ..

(p. 7).  Noting that J&J did not argue that the discovery sought was relevant to a

claim or defense, the Court turned to a discussion of Local Rule 7.1.1. (p. 7 *et*

*seq.*).

As the rule requires, a party must, Judge Schneider found, demonstrate

"good cause showing that something untoward occurred before such discovery

may go forward." (p. 7). Rejecting several of J&J's arguments, the Court ruled that J&J's distaste for litigation funding is not synonymous with "good cause." (p. 8). The out-of-District cases upon which J&J relied, the Court observed, were distinguishable (see p. 9, n. 5 where the Court separately distinguished each case) and the Court summarily rejected J&J's champerty argument, which J&J has not appealed.

The Court then noted that counsel to Beasley Allen had testified that it "has not used litigation funding for talc cases in this MDL," and no one had put forth a basis to contest this testimony. (p. 10). Judge Schneider described the contention that, because the Smith law firm may have referred cases to Beasley Allen, "Smith's financing may therefore impact Beasley's Allen's settlement position" as speculative. (p. 10). The fact that Smith and Beasley Allen partnered in the past is not competent evidence to show good cause that Smith's financing, the opinion continues, impacts Beasley Allen's settlement position. (p. 11).

Nor could the Special Master find good cause as a consequence of Beasley Allen's rejection of the settlement in the form and amount proposed by J&J. The parties simply disagreed on the value of plaintiffs' claims. Given the record of this litigation over the decades and the fact that plaintiffs have overcome *Daubert* challenges, the Court could not find that Beasley Allen's objection to the

settlement was irrational.  Although not addressed by Judge Schneider, any bankruptcy settlement could be appealed by a single disgruntled plaintiff and, if history is a guide, could be reversed by the Third Circuit making a bankruptcy settlement even less palatable.

The Court then turned to J&J's argument that Beasley Allen misinformed one client of the settlement posture of her case – which is not accurate – and ruled that J&J's unfounded suspicion is not "good cause" for discovery into Beasley Allen's or Smith's financing.  (p. 12).

J&J also argued that Beasley Allen's fee would be impacted by any settlement in bankruptcy because it could not be paid a common benefit fee.  That assertion, which was not verified in the motion record, was insufficient to overcome the "reasons Beasley Allen has given for why it objects to defendants' settlement offers." (p. 13).

This brief first discusses the scope of review of a special master's discovery decision, and then turns to a discussion of Defendants' arguments.

## ARGUMENT

### SCOPE OF REVIEW

The scope of review of a discovery decision by a Special Master is limited. In this Circuit, it has been held that a Special Master's ruling in a discovery dispute

in entitled to "great deference." *Katz v. AT&T Corp.*, 191 F.R.D. 433, 436 (E.D.

Pa. 2000):

> The decision of the Special Master in a discovery dispute, as the decision of a magistrate would be, is entitled to great deference. *See Honeywell v. Minolta Camera Co.*, 1990 U.S. Dist. LEXIS 5954, 1990 WL 66182, [at *1 (D.N.J. May 15, 1990). Accordingly, this Court will affirm a decision of the Special Master unless it finds the decision to be clearly erroneous or contrary to the law.

*See also Environmental Tectonics v. W.S. Kirkpatrick & Co.*, 659 F. Supp. 1381,

1399 (D.N.J. 1987) (citing cases), aff'd in part. rev'd in part, 847 F.2d 1052 (3d

Cir. 1988), aff'd 110 S. Ct. 701 (1990); *see also*, *Schroeder v. Boeing Commercial*

*Airplane Co.*, 123 F.R.D. 166 (D.N.J. 1988) which apply the same standard to a

Magistrate's discovery order.

The comments accompanying *Fed. R. Civ. P* 53 also anticipate a narrow

scope of review of a Special Master's discovery determination:

> Subdivision (g)(3) establishes the standards of review for a master's findings of fact or recommended findings of fact. The court must decide de novo all objections to findings of fact made or recommended by the master unless the parties stipulate, with the court's consent, that the findings will be reviewed for clear error or — with respect to a master appointed on the parties' consent or appointed to address pretrial or post-trial matters — that the findings will be final. **Clear-error review is more likely to be appropriate with respect to findings that do not go to the merits of the underlying claims or defenses, such as findings of fact bearing on a privilege objection to a discovery request.**

*Fed Rules Civ Proc R 53,* Note of Advisory Committee on 2003 amendments.

#7130558v1

One unreported case cited by J&J undertook a *de novo* review of a special master's decision in a discovery dispute but did not explain why it did so. *Wang v. Univ. of Pittsburgh,* 2023 U.S. Dist. LEXIS 142110, *4 (W.D. Pa. 2023). The other case cited by J&J is not to the contrary. In *In re Intel Corp. Micorpocessor Antitrust Litig.*, 526 F. Supp. 2d 461 (D.C. Del. 2007), the Court reversed the Special Master's discovery order, spoke about three different levels or review, but did not say which it was applying.

The scope of review in this appeal should be deferential.

## POINT I

### THE PREVALENCE OF LITIGATION FUNDINGS IS NOT RELEVANT TO THE ISSUES IN DISPUTE

In its Introduction (pages 2 to 3) and in part of Point I of the J&J brief (pages 14 to 17), J&J  discusses respectively, legislative proposals to regulate litigation funding and the prevalence of litigation funding. According to J&J, litigation funding has grown dramatically over the years and further regulation is warranted. The relevance of these arguments is puzzling, inasmuch as the issue on appeal requires the Court to interpret a Court Rule, not to assess the costs and benefits of litigation funding. Those issues fall within the purview of the Supreme Court or perhaps Congress. Therefore, the Smith Law Firm will not address this argument.

8

## POINT II

## THE JOHNSON & JOHNSON SUBPOENA SEEKS INFORMATION THAT IS NOT DISCOVERABLE UNDER FED. R. CIV. P. 26

J&J's brief is a bit ambiguous as to whether it is arguing that litigation funding and settlement discussions are relevant. In an excess of caution, this brief addresses that argument.

### A.    Background

*Fed. R. Civ. P.* 26(b)(1) provides that:

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's **claim or defense** - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. (Emphasis added).

While discovery is broad, it must be proportional to the needs of the case. *In re Valsartan*, 405 F. Supp.3d at 612. The Federal Rules do not confer an unlimited right of discovery to any party and a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Fed. R. Civ. P.* 26(c)(1). The right to such a protective order extends to both parties and non-parties who have been served with subpoenas. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D. N.Y. 1996).

9

As a threshold matter, "Rule 26(b) requires that any requested discovery be relevant to a party's claim or defense, and a subpoena that 'sweepingly pursues material with little apparent or likely relevance to the subject matter [ ] runs the [ ] risk of being found overbroad and unreasonable.'" *Id.* at 50.  Relevance is determined "in light of the allegations of the complaint," *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987) and the party seeking discovery "has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence," *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  (Citations omitted).  This burden is heavier when the discovery is sought from a non-party.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998); *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

## B.    Litigation Funding Information is Irrelevant

It was thus incumbent upon J&J to demonstrate before Judge Schneider why the information which it sought was relevant to a "claim or defense."  Given the nature of the allegations in the talc litigation before the Multi-District Panel, J&J did not satisfy its burden to demonstrate the relevance to any "claim or defense" of litigation funding information sought from an attorney who is neither a party to, nor an attorney of record in the case in which the subpoena has been

10

issued or in any case pending before the Multi-District Panel. (Declaration of Allen Smith, ¶ 5).

Even were Smith to have some role in this matter, discovery about litigation funding is not remotely relevant. See *In re Valsartan*, 405 F. Supp. 3d at 615 (collecting cases finding litigation funding irrelevant). In that Multi-District litigation, defendants sought discovery directed to plaintiffs' counsel's litigation funding. Id. at 612. This Court properly found that this discovery was not "relevant to any party's claim or defense and proportional to the needs of the case" :

> The Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant.

See also *Kaplan v. S.A.C. Capital Advisors, L.P., S.A.C.*, No. 12-CV-9350 (VM)(KNF), 2015 U.S. Dist. LEXIS 135031 *17 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) (denying defendants' request for plaintiffs' litigation funding documents on the ground that "defendants did not show that the requested documents are relevant to any party's claim or defense").

## C.    Settlement Communications are Irrelevant

While *Fed. R. Evid.* 408 does not make settlement discussions privileged, a litigant seeking that information must make a particularized showing of relevance to a claim or defense. *Lesal Interiors v. Resolution Trust Corp.*, 153 F.R.D. 552 (D. N.J. 1994); *Morse/Diesel, Inc. v. Trinity Indus.*, 142 F.R.D. 80, 84 (S.D. N.Y.

1992).  In the absence of such a showing, discovery of settlement information is prohibited.  *Centillion Data Sys. v. Ameritech Corp.*, 193 F.R.D. 550, 553 (S.D. Ind. 1999):

> While admissibility and discoverability are not equivalent, it is clear that the object of the inquiry [for settlement information] must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.

> Moreover, discovery of settlement discussions could involve client

communications and would be protected by the attorney client privilege.  *See Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*, 2005 US Dist. LEXIS 34624 *6 (D.N.J. May 3, 2005).  There is no justification to require production of settlement information from Smith-who would have no such information anyway..

In summary, the subpoena, in all respects, seeks irrelevant  information that does not fall within the scope of *Fed. R. Civ. P.* 26, and was properly quashed.

### POINT III

### THE JOHNSON & JOHNSON SUBPOENA SEEKS INFORMATION THAT IS NOT REQUIRED TO BE PROVIDED UNDER N.J. LOCAL RULE 7.1.1

Local Rule 7.1.1 of the rules of the United States District Court for the District of New Jersey provides in pertinent part as follows:

> (a) Within 30 days of filing an initial pleading or transfer of the matter to this district . . .  or promptly after learning of the information to be disclosed, **all parties**, including intervening parties, shall file a statement

12

(separate from any pleading) containing the following information regarding any person or entity that is not a party and is providing funding for some or all of the attorneys' fees and expenses for the litigation on a non-recourse basis in exchange for (1) a contingent financial interest based upon the results of the litigation or (2) a non-monetary result that is not in the nature of a personal or bank loan, or insurance:

> 1. The identity of the funder(s), including the name, address, and if a legal entity, its place of formation;

> 2. Whether the funder's approval is necessary for litigation decisions or settlement decisions in the action and if the answer is in the affirmative, the nature of the terms and conditions relating to that approval; and

> 3. A brief description of the nature of the financial interest.

(Emphasis added).

This rule has no application to the Smith Law Firm because it is neither a party nor counsel to a party in this litigation or, for that matter, any litigation in this Court. Therefore the Smith Law Firm has no duty to provide the disclosure required by Local Rule 7.1.1(a).

Nor does it have a duty to do so under Local Rule 7.1.1(b) which reads as follows:

> The parties may seek additional discovery of the terms of any such agreement upon a showing of good cause that the non-party has authority to make material litigation decisions or settlement decisions, the interests of parties or the class (if applicable) are not being promoted or protected, or conflicts of interest exist, or such other disclosure is necessary to any issue in the case.

13

This rule does not warrant the requested discovery for several reasons.

First, the rule permits "discovery of the terms of any such agreement." Because Smith does not come within the scope of Rule 7.1.1, there can be no "such agreement."

Second, in order to obtain discovery it was incumbent upon J&J to show "good cause that the non-party has authority to make material litigation decisions or settlement decisions." Since Smith is not counsel in the Multi District case and represents no clients there, any funding he uses cannot come from someone who "has authority to make material litigation decisions or settlement decisions." Nor can it be said that he is not promoting his clients' interests because he has no clients before this Panel; nor can he be in conflict because he has no role in the cases before the Multi-District Panel.

Presumably, J&J believes that Judge Schneider and this Court have authority under Local Rule 7.1.1(c) to order the discovery it seeks. That rule reads as follows:

> Nothing herein precludes the Court from ordering such other relief as may be appropriate.

For several reasons, that Rule does not warrant the discovery sought.

First, this section refers to "ordering such other relief." As a predicate to falling within this section, the party, from whom the "other relief" is requested,

14

must have had an obligation to provide the disclosures required in Local Rule 7.1.1(a) in the first place.  The Smith Law Firm had no such obligation.

Second, J&J makes much of its contention that it received a communication from an "unknown individual" that it describes as a Beasley Allen client asking for an "update on 'the exact date [Defendants] plan to issue paperwork for the 3rd bankruptcy." (J&J brief, page 8).  The unknown individual was advised by Beasley Allen that "Johnson & Johnson is not willing to settle your case at this time." (J&J Brief, p. 9).

Those communications, which do not involve the Smith Law Firm, cannot be the basis for "other relief" against a lawyer who was not a party to those communications.  Moreover, it is highly irregular for a law firm not to return an unsolicited email from an adverse party to his or her counsel.[1]

---

[1] In that regard, New Jersey Rule of Professional Conduct 4.2 proscribes such communications:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter, including members of an organization's litigation control group as defined by RPC 1.13, unless the lawyer has the consent of the other lawyer, or is authorized by law or court order to do so, or unless the sole purpose of the communication is to ascertain whether the person is in fact represented.  Reasonable diligence shall include, but not be limited to, a specific inquiry of the person as to whether that person is represented by counsel.

#7130558v1

What is most perplexing about J&J's argument, is that Beasley Allen's response to its client was, notwithstanding J&J's argument, accurate. While J&J had proposed a global resolution of the 60.000 talc cases before the Multi-District Panel (J&J brief, p. 22), it did not, as far as Smith can tell, propose to settle the individual case of the email writer. The ability of the email writer to participate in a distribution of settlement funds of an unknown amount, if approved by a bankruptcy court and sustained on appeal, and then allocated by a neutral allocator, is hardly a settlement of an individual case. In their effort to obtain litigation funding information from non-party Smith Law Firm – and from Beasley Allen – J&J has chosen to put a nefarious gloss on a benign response from counsel to Beasley Allen.

Finally, J&J argues that Beasley Allen will not receive a common benefit fee if the matter is settled as part of a bankruptcy. This assertion has nothing whatever to do with the Smith Law Firm. None of the documents cited at page 25 of the J&J brief foreclose such an award, the only substantive discussion appears in the Special Master's Opinion and Order 15 (ECF No. 26572) in which the Special Master says that the resolution of that issue is not before him.

---

This rule applies to any form of communication, including email. *Matter of Robertelli*, 248 N.J. 293, 296 (2021).

**CONCLUSION**

For the foregoing reasons, this Court should not reverse the determination quashing the subpoena to the Smith Law Firm, PLLC.

Respectfully submitted,

**SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.**

s/*Arnold C. Lakind*
Arnold C. Lakind, Esq.

Dated:  August 5, 2024

17

#7130558v1