# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738 (MAS)/(RLS) <br><br> MDL Case No. 2738 <br><br> [FILED ELECTRONICALLY] |

## BEASLEY ALLEN'S POST-PLENARY HEARING ORDER TO SHOW CAUSE REPLY BRIEF IN OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON AND LTL MANAGEMENT LLC'S MOTION AND ORDER TO SHOW CAUSE SEEKING BEASLEY ALLEN'S DISQUALIFICATION FROM THIS LITIGATION AND REMOVAL FROM THE PLAINITFFS' STEERING COMMITTEE

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Jeffrey M. Pollock, Esq.
Michael W. Sabo, Esq.
212 Carnegie Center
Suite 400
Princeton, NJ 08540
Telephone: 609-896-7660
Facsimile: 609-896-1469
*Attorneys for Andy Birchfield and Beasley Allen*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ....................................................................................................... 4

THE COURT SHOULD ADOPT JUDGE PORTO'S WELL-SUPPORTED FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT J&J FAILED TO CARRY ITS HEAVY BURDEN THAT BEASLEY ALLEN SHOULD BE DISQUALIFIED FROM THIS LITIGATION UNDER NEW JERSEY LAW. ............... 4

A.    Judge Porto Correctly Held That J&J Failed to Prove an Actual Conflict, and Its Contradictory Ethics Theories and Changing Explanations Cannot Support Disqualification Under the RPCs ............... 4

1.    Judge Porto Correctly Held That Beasley Allen Did Not Violate RPC 1.6. ............................................................. 4

2.    Judge Porto Correctly Held That Beasley Allen Did Not Violate RPC 1.9 Because Mr. Conlan Never Represented Plaintiffs, He Has Never Been Employed or Retained by Beasley Allen In Any Capacity, and He Is Not "Aligned" or "Associated" with Beasley Allen. ..................................... 7

3.    Judge Porto Correctly Held That Beasley Allen Did Not Violate RPC 5.3, and the Rule Does Not Apply by its Plain Terms. ....................................................................... 10

B.    Judge Porto Correctly Found That Beasley Allen Did Not Commit Any "Independent" RPC Violation Under RPC 3.3 or RPC 8.4. ............ 13

CONCLUSION ................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*City of Atlantic City v. Trupos,*
  201 N.J. 447 (2010) ...................................................................................5, 7, 8

*In re Complaint of PMD Enters. Inc.,*
  215 F.Supp.2d 519 (D.N.J. 2002) .........................................................................11

*Kane Props., LLC v. City of Hoboken,*
  214 N.J. 199 (2013) .........................................................................................13

*Mosaid Techs. Inc. v. Samsung Elecs. Co.,*
  348 F.Supp.2d 332 (D.N.J. 2004) ...........................................................................9

*State v. Hudson,*
  443 N.J. Super. 276 (App. Div. 2015) ......................................................................5

*In re Sup. Ct. Advisory Comm. on Prof'l Ethics Op. No. 697,*
  188 N.J. 549 (2006) ........................................................................................16

*Twenty-First Century Rail Corp. v. N.J. Transit Corp.,*
  210 N.J. 264 (2012) .......................................................................................5, 9

**Other Authorities**

Kevin H. Michels, NEW JERSEY ATTORNEY ETHICS: THE LAW OF NEW JERSEY
  LAWYERING ...............................................................................................11

Ratification, BLACK'S LAW DICTIONARY ....................................................................12

RPC 1.6 ......................................................................................................*passim*

RPC 1.9 .................................................................................................2, 7, 8, 9

RPC 1.9(a) ..................................................................................................7, 9

RPC 1.10 ................................................................................................2, 7, 9

RPC 3.3 ...................................................................................................13, 15

RPC 3.3(a)(5) ..................................................................................................13

RPC 5.3 ......................................................................................................*passim*

RPC 5.3(a) ......................................................................................................10

RPC 5.3(b) ..................................................................................................................................10

RPC 5.3(c)........................................................................................................................2, 10, 12, 13

RPC 5.3(c)(1) .........................................................................................................................10, 12

RPC 5.3(c)(2) ...............................................................................................................................12

RPC 5.3(c)(3) ...............................................................................................................................12

RPC 8.4 ...................................................................................................................................13, 15

RPC 8.4(d) .....................................................................................................................................15

## PRELIMINARY STATEMENT

After over eight months of hearings before this Court and the Honorable John C. Porto, P.J. Civ., and despite multiple opportunities to supplement the record, J&J has no evidence that J&J's former attorney James Conlan shared privileged information with Mr. Andy D. Birchfield, Jr., Esq. On that basis alone, this Court should adopt Judge Porto's decision and avoid the "severe remedy of disqualification." *See* ECF No. 29022 at 2; (Op. at 5).[1] J&J initially admitted that no RPC applies to this case. *See* J&J Dec. 8, 2023 Br. at 15 (admitting there is "no Rule of Professional Conduct [that] explicitly speaks to the precise situation here."). Undaunted, J&J now randomly cites the Law Governing Lawyers in New Jersey—but fails to articulate how Beasley Allen or Mr. Conlan violated any rule. Now, J&J retreats to its debunked prior arguments and debunked claims—which Judge Porto's order and opinion methodically reviews and rejects. Defendant J&J doubles down on its new theory that ethics violations are presumed. J&J is entitled to its own arguments, it is not entitled to its own facts or law. J&J proffers no credible evidence that disclosure of a confidence occurred.

After eight months, we are back to where we started. J&J insists (without evidence) that unethical conduct presumptively took place and relies upon cases citing the rejected "alliance" or "necessarily imbued" standard (appearance of impropriety re-branded). There is no evidence that Mr. Conlan/Legacy—a third-party vendor acting in its own self-interest—shared client confidences with Beasley Allen, and there is no legal or factual basis to disqualify Beasley Allen or remove Beasley Allen from the Plaintiffs' Steering Committee.

**RPCs 1.6 and 1.9 do not apply.** After numerous opportunities, J&J has not satisfied its heavy burden to disqualify Beasley Allen under RPC 1.6 because there is no evidence that Mr.

---

[1] "Op." refers to Judge Porto's Order and Opinion dated July 19, 2024.

Conlan shared J&J confidential information with Beasley Allen. RPC 1.9 does not apply because Mr. Conlan does not represent a talcum powder plaintiff (and has never represented a talcum powder plaintiff) or served as a lawyer, employee, or expert with the Beasley Allen firm. As Judge Porto held, Mr. Conlan is not a "side-switching" lawyer adverse to J&J in any sense under RPCs 1.6 and 1.9. Legacy is a third-party business entity that—if J&J accepted the Legacy Proposal— would immediately become adverse to Beasley Allen and its clients. The premise behind the Legacy Proposal is that Legacy would–through structural optimization and disaffiliation–acquire J&J's talc liability, current liabilities and future liabilities. If J&J had accepted the Legacy Proposal, all claimants would be either litigating (or settling) talc claims against Legacy, not J&J. The Legacy Proposal was entirely dependent upon J&J voluntarily accepting or negotiating terms with Legacy. Shared confidences cannot be "presumed" under current New Jersey law. Further, the facts here do not support a presumption. RPC 1.6, 1.9 and 1.10 do not apply by their plain terms.

**RPC 5.3(c) does not apply.** RPC 5.3(c) is inapplicable because Legacy (Mr. Conlan) is not employed or retained by Beasley Allen, and Beasley Allen did not "order" or 'ratify" anything Legacy or Mr. Conlan did. Mr. Conlan has worked at Legacy since he left Faegre in 2022. After a thorough review of the record, Judge Porto agreed that Legacy (Mr. Conlan) put J&J on notice in February 2023 about solving J&J's talc liability issues months before he ever spoke to Mr. Birchfield or anyone else at Beasley Allen. Notably, J&J never objected to working with Mr. Conlan, a third-party, once Mr. Conlan formed Legacy. Mr. Haas, who now complains bitterly, communicated openly and freely with Mr. Conlan after he formed Legacy—a third-party.

Judge Kaplan ordered Beasley Allen to mediation.  J&J was supposed to attend mediation but opted not to participate. J&J would have known all parties in the mediation if it had opted to

follow the Court's order regarding mediation.  Beasley Allen (and Mr. Birchfield) did not "ratify" any of Mr. Conlan's alleged misconduct, in any sense, let alone within the meaning of RPC 5.3.

One component of the proposal that Legacy made to J&J included a matrix of settlement values. Judge Porto rightly concluded that the matrix included as a component of the Legacy Proposal (the proposal that J&J made public with this action) was solely the product of Beasley Allen and plaintiff leadership. Moreover, the $19 billion figure was solely the product of Legacy's analysis and not derived from any J&J client confidences. The $19 billion figure was a Legacy term that included all talc liabilities for all time, for which current ovarian cancer claims were only a portion. Given that there was no misconduct by Mr. Conlan that was known or apparent to Mr. Birchfield or Beasley Allen, no "ratification" could have occurred under RPC 5.3. Beasley Allen's compliance with Judge Kaplan's mediation order is not a basis for disqualification, especially where J&J refused to engage in good faith mediation ordered by the court. None of the RPCs cited by J&J (including RPCs 1.6, 1.9, 1.10, 5.3 or 8.4) apply here. For these reasons, the Court should adopt Judge Porto's well-supported findings of fact and conclusions of law, and the Motion should be denied.

## **BACKGROUND**

Beasley Allen incorporates by reference and adopts the facts detailed in its prior briefing and filings in further opposition to J&J's motion to disqualify. *See, e.g.*, ECF Nos. 32206; 32267. Since Beasley Allen filed its reply post-hearing brief, Special Master Schneider granted Beasley Allen's motion to quash and/or for protective order over the Subpoena J&J served upon Beasley Allen. *See* ECF No. 32926.[2] The Honorable John C. Porto, P.J. Civ., Superior Court of New Jersey,

---

[2] J&J filed an objection to Special Master Schneider's Order and Opinion, which remains pending. *See* ECF No. 32987.

Atlantic County, denied J&J's Order to Show Cause Seeking Beasley Allen's disqualification from the New Jersey state MCL. This Court then ordered the parties to show cause why it should not adopt Judge Porto's well-reasoned findings of fact and conclusions of law. *See* ECF No. 32984.

## ARGUMENT

**THE COURT SHOULD ADOPT JUDGE PORTO'S WELL-SUPPORTED FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT J&J FAILED TO CARRY ITS HEAVY BURDEN THAT BEASLEY ALLEN SHOULD BE DISQUALIFIED FROM THIS LITIGATION UNDER NEW JERSEY LAW.[3]**

**A.    Judge Porto Correctly Held That J&J Failed to Prove an Actual Conflict, and Its Contradictory Ethics Theories and Changing Explanations Cannot Support Disqualification Under the RPCs.**

As Judge Porto concluded, J&J failed to identify a single confidence that Mr. Conlan purportedly shared with Mr. Birchfield or Beasley Allen. J&J's latest brief—replete with speculation, innuendo, and *ad hominem* attacks—is a regurgitation of its prior meritless arguments and an attempt to re-write the RPC's plain terms. J&J has no proof of any disclosure by Mr. Conlan to Beasley Allen. In addition to having no evidence supporting its motion, J&J does not satisfy its heavy burden to disqualify Beasley Allen—a "severe remedy"—under any legal theory or the RPCs. *See, e.g.*, ECF No. 29022 at 2 (this Court describing disqualification as a "severe remedy").

### 1.    Judge Porto Correctly Held That Beasley Allen Did Not Violate RPC 1.6.[4]

After eight months of briefing, testimony, and argument, there is no evidence that Beasley Allen violated RPC 1.6 because J&J has not identified any J&J confidence Mr. Conlan purportedly shared with Beasley Allen. *See* (Op. at 5). Despite having no evidence (and without citing

---

[3] Beasley Allen incorporates by reference and adopts all facts and arguments in opposition to J&J's motion to disqualify and/or remove Beasley Allen from the Plaintiffs' Steering Committee.

[4] After initially admitting that no RPCs apply to this case, J&J repeatedly shifted its theory of RPC violations. However, this case—if anything—involved unsubstantiated allegations concerning RPC 1.6 and nothing else. *See* Feb 14, 2024 Tr. at 21 (Judge Porto confirming that he was "looking at" RPC 1.6 specifically).

applicable case law), J&J argues that the Court may "presume" that Mr. Conlan violated his ethics obligations and shared confidential information. But, after surveying New Jersey case law—including *Trupos*, *Yuna*, and *Twenty-First Century Rail Corp.*—Judge Porto reaffirmed black letter New Jersey law that conflicts must be "actual" not presumed. *Compare* (Op. at 27) (Judge Porto reaffirming that "Conflicts must be actual and not merely appearance based.") (citing *State v. Hudson*, 443 N.J. Super. 276, 292 (App. Div. 2015)), *with Trupos*, 201 N.J. at 469 ("surmise alone cannot support an order of disqualification."); *Yuna*, 206 N.J. at 127-29 (motion to disqualify must be "well-grounded in the written record" and not based on "bald and unsubstantiated assertions"). Regardless of what Mr. Conlan may know, there is no evidence that he shared any J&J confidence with Beasley Allen—the sole inquiry here.[5] The Court should adopt Judge Porto's Order and Opinion because the conclusions therein flow from well-established New Jersey ethics law.

At the hearing, Mr. Conlan credibly denied that he ever shared with Beasley Allen any confidential information. (April 10 PM Tr. at 70);[6] (*id.* AM Tr. at 113).[7] The unrebutted testimony is that: (1) Mr. Conlan never revealed any J&J confidential information to Beasley Allen or Mr. Birchfield; and (2) Mr. Birchfield never received any confidential information. *See* (May 3 Tr. at 65, 96 to 97); (April 10 AM Tr. at 113). Neither Mr. Haas nor Mr. Murdica could "pinpoint in any

---

[5] J&J again falls back on the "presumption" of shared confidences—a standard that Judge Porto rightly held was no longer viable (or applicable here) where Mr. Conlan indisputably does not "represent" talc-plaintiffs or have any employment, contractor, or attorney-related role at Beasley Allen. Judge Porto properly rejected J&J's continued attempt to re-write the New Jersey RPCs and rely upon out of jurisdiction and stale case law. *See* J&J Br. at 5-9 (citing decades old cases from Kentucky, California and Texas).

[6] Beasley Allen filed all transcripts cited with the Court on May 8, 2024. *See* ECF No. 32153.

[7] Judge Porto concluded that: "Conlan credibly testified when confronted with the allegations regarding the violations of the various RPC's. His testimony was consistent and corroborated by the documented record." (Op. at 6).

specific way what confidential J&J information or criteria was used in the development of that matrix." (Op. at 27-28) (Mr. Conlan credibly testified that subject matrix did not include any J&J confidential information and was received from Beasley Allen). As Judge Porto found, J&J's failure to identify any specific confidence Mr. Conlan revealed to Beasley Allen is fatal to J&J's disqualification application. (*Id.*). Nor has J&J identified any information that Mr. Birchfield or Beasley Allen possesses that could have come from a J&J confidence shared by Mr. Conlan. (Op. at 28-31). Neither the matrix, nor the $19 billion figure, nor any other information qualifies as confidential information. (*Id.*)

Judge Porto also found that in the February 2, 2023 email, Mr. Conlan presented to Mr. Haas and J&J "a written proposal and outlined to J&J what Legacy intended to do going forward." (Op. at 11). Contrary to J&J's belated claims, "Legacy i.e. Conlan informed Haas and J&J that it reserved the right, in its discretion, to negotiate settlements with interested Asbestos plaintiff law firms of some or all of the pending claims filed by such firms, all such settlements to become effective at closing of the Legacy proposal." (Op. at 11). Judge Porto also considered and rejected J&J's claims that "reasonable inferences" supported disqualification. (Op. at 27).[8]

Because the unrebutted evidence demonstrates that Mr. Conlan did not share J&J confidential information, the Court should adopt Judge Porto's supported findings of fact and conclusions of law that RPC 1.6 cannot support disqualification in this case.

---

[8] When J&J initially accused Mr. Conlan of misconduct, Mr. Conlan immediately pushed back on J&J's baseless ethics claims. *See* (P-5). Judge Porto agreed that: (1) Mr. Conlan immediately responded to Mr. Murdica's threats; and (2) Mr. Conlan denied not only the alleged breach of the attorney client privilege but, further, Mr. Conlan expressly refuted the claim in Mr. Murdica's letter that Mr. Conlan recommended the ill-fated J&J Texas Two Step. *See* (P-5); (April 10 PM Tr. at 34, 40 to 43). Mr. Conlan's same day response to J&J is consistent with his testimony at the plenary hearing that he never shared J&J confidential information with Beasley Allen. (*Id.*). Mr. Conlan put J&J on notice in February 2023 that he would "negotiate settlements with interested asbestos-plaintiff law firms . . ." (P-3).

**2.   Judge Porto Correctly Held That Beasley Allen Did Not Violate RPC 1.9 Because Mr. Conlan Never Represented Plaintiffs, He Has Never Been Employed or Retained by Beasley Allen In Any Capacity, and He Is Not "Aligned" or "Associated" with Beasley Allen.**

Because Mr. Conlan indisputably does not and has never represented a talcum powder plaintiff or served as a lawyer with the Beasley Allen firm, RPC 1.9 and 1.10 do not apply by their plain terms. RPC 1.9(a) states "[a] lawyer who has represented a client in a matter shall not thereafter <u>represent</u> another <u>client</u> in the same or substantially related matter in which that client's interests are materially adverse to the interests of the former client[.]" *City of Atlantic City v. Trupos*, 201 N.J. 447, 462 (2010) (emphasis added).

RPC 1.9 does not apply because Mr. Conlan does not "represent" plaintiffs or any "client" in the MDL. And no conflict may be imputed from Mr. Conlan to Beasley Allen under RPC 1.10 or any other RPC because Mr. Conlan has never been—and is not now—an attorney at Beasley Allen. Therefore, there is no "present and former clients" in this situation—only J&J as Mr. Conlan's former client. All agree that Mr. Conlan is a non-attorney businessman acting through Legacy who neither practices law nor acts in attorney capacity for Legacy. (Op. at 9-10). *Compare* (May 3 Tr. at 63 to 64); *see* (May 3 Tr. at 101 to 102) (Beasley Allen never hired Conlan as an attorney or in any capacity). Beasley Allen never retained James Conlan as an expert. *Id.*; *see* (April 10 PM Tr. at 34 to 35) (confirming that Beasley Allen never employed Conlan); (March 25 AM Tr. at 131 to 132) (Mr. Haas confirming Conlan never served as a Beasley Allen attorney). Beasley Allen never sought advice from Mr. Conlan "regarding how to prosecute or pursue [Plaintiffs'] claims against J&J." (May 3 Tr. at 102-03). J&J has not rebutted the fact that if J&J accepted the Legacy Proposal, Legacy would step in J&J's shoes and be adverse to Plaintiffs/Beasley Allen.

The Court should also adopt Judge Porto's well-supported conclusion that there was no "alliance" or "association between Beasley Allen and Conlan." (Op. at 27, 30) ("There is no evidence of any 'association,' as that term is used by J&J, between Conlan and Birchfield other than the fact that Birchfield supported the Legacy proposal." Beasley Allen understood that Mr. Conlan/Legacy would be its adversary because if J&J accepted the Legacy Proposal, Legacy "would be standing in the shoes of J&J" as an adversary. (May 3 Tr. at 65, 101 to 103) (Birchfield addressing the scenario of J&J accepting the Legacy Proposal: "Legacy is standing in the shoes of J&J" and becomes Beasley Allen's "adversary every bit as much as J&J is now. They have all the talc liability."); *see* (April 10 AM Tr. at 112, 121 to 122) (Mr. Conlan confirming that Legacy never tried to position itself with Beasley Allen against J&J).  Mr. Conlan is therefore not a "side-switching lawyer" (or any lawyer) like the lawyers in *Twenty-First Century Rail Corporation*. He does not have any current clients—he works for Legacy and Legacy's financial interests only. *See* (Op. at 9-10) (the Court "finds that Conlan is not a so-called side-switching attorney; he does not represent any MCL Plaintiff and was never hired as an attorney at Beasley Allen.").[9] *See* (Op. at 9-10, 27, 31) (discussing undisputed fact that Conlan was a businessman since 2022 not a lawyer or expert).

Even if there were a "superficial" overlap between Mr. Conlan's prior work for J&J and the current talc litigation, *see Trupos*, 201 N.J. at 467, the factors outlined in *Trupos* and *Twenty-First Century Rail Corporation* are not applicable and cannot be a basis to disqualify Beasley Allen because Mr. Conlan is not Plaintiffs' "lawyer." (Op. at 27). Mr. Conlan does not "represent"

---

[9] Consistent with its ever-changing positions in this proceeding, J&J now tries to conflate RPC 1.9 with RPC 5.3. As discussed *infra*, RPC 5.3 also does not apply here. There is also no "de facto" theory of attorney client conflicts or representation—this is yet another attempt by J&J to revive the defunct appearance of impropriety standard by another name.

Plaintiffs (or any client) in any capacity—which is fatal to J&J's RPC 1.9 arguments. *See* (Op. at 9-10, 27); *Twenty-First Century Rail Corp. v. N.J. Transit Corp.*, 210 N.J. 264, 273-76 (2012) ("[i]n clear language RPC 1.9(a) begins with a prohibition that precludes <u>an attorney</u> from engaging in the <u>representation</u> of an adverse client in the same matter") (emphasis added).[10]

Because Mr. Conlan has never been a lawyer at Beasley Allen (or represented any plaintiffs adverse to J&J), the inquiry under RPC 1.9 of whether matters are "the same" or "substantially related" never applies. *Id.* Mr. Haas conceded that Mr. Conlan is not: (1) a "side-switching" attorney; (2) adverse to J&J; or (3) "aligned" with Beasley Allen. (Mar. 25 PM Tr. at 4:17-25). Instead, Mr. Conlan "went to Legacy" and was in "a different role. He opened up a business where he's purporting to go out and pitch the Legacy structured optimization model." (*Id.*); (Op. at 9-11*)*. Mr. Haas agreed that Mr. Conlan "went from being a lawyer at Faegre to being a businessman at a company that he formed called Legacy." (*Id.*) J&J not only communicated with Mr. Conlan long after he left Faegre, *see* Joint Plenary Hearing Exhibit 3 (August to October 2023 emails between Legacy/Conlan and J&J), but J&J discussed with Mr. Conlan transferring to Legacy all talc claims against J&J. These documents and Mr. Haas' admissions are dispositive. Beasley Allen cannot be disqualified under any novel theory applying the plain terms of RPC 1.6 or 1.9.[11]

---

[10] As Judge Porto noted, even if Mr. Conlan violated the RPCs—he did not—no "conflict" can be imputed to Beasley Allen via Mr. Conlan as a matter of law under RPC 1.10 or any other basis. (Op. at 20).

[11] J&J's claims lack credibility because if it had evidence that Mr. Conlan disclosed J&J confidences, then J&J would have put that evidence in the record—which it repeatedly refused to do—even at the urging of Judge Porto and the Court. *See Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F.Supp.2d 332, 336 (D.N.J. 2004) (factfinder may infer that withheld "evidence might or would have been unfavorable to the position of the offending party"). Beasley Allen repeatedly objected to J&J's refusal to produce relevant evidence and complete documents. *See, e.g.*, (March 25 AM Tr. at 13) (Beasley Allen objecting to Mr. Haas' attempt to testifying to "billing entries" not in the record or produced). Moreover, J&J failed to provide any specific evidence to support their claims (even *in camera* or under seal). *See* (March 25 AM Tr. at 52 to 53) (objecting to Mr. Haas speculative testimony without documentary support under Best Evidence Rule and *Yuna's*

### 3.   Judge Porto Correctly Held That Beasley Allen Did Not Violate RPC 5.3, and the Rule Does Not Apply by its Plain Terms.[12]

There is no evidence that Beasley Allen violated any part of RPC 5.3, and the Rule does not apply by its plain terms to a non-attorney businessman like Mr. Conlan with no clients or current "representation." The Court should adopt Judge Porto's findings of fact and conclusions of law that RPC 5.3(c) is inapplicable because Beasley Allen and Mr. Conlan were not "associated" as contemplated by the RPCs.

RPC 5.3(c) states that  "with respect to a nonlawyer employed or retained by or associated with a lawyer," "a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:" (1) "the lawyer orders or ratifies the conduct involved." RPC 5.3(c)(1).

**First**, there is no allegation that Beasley Allen "ordered" Mr. Conlan to do anything. Mr. Conlan worked at Legacy since he left Faegre in 2022. RPC 5.3(c)(1). Beasley Allen's 2023 conversations with Legacy were consistent with Judge Kaplan's mediation order and finding a path to finality after the Third Circuit's dismissal of LTL 1—not any nefarious purpose. *See* Civ. A. No. 23-12825 at Doc. 481. After being approached by Legacy and learning of an alternative that would provide a non-bankruptcy option for "finality," and after being ordered to mediate, in June 2023, Mr. Birchfield sought to include Legacy in the mediation process–not as part of the Beasley Allan "mediation team" but as a business entity with an option that would give J&J the

---

Hobson's Choice); (April 10 AM Tr. at 11 to 20) (same).

[12] J&J now abandons its prior claims that RPC 5.3(a) and (b) warrant disqualification. *See* ECF No. 33026 (J&J brief taking issue with Judge Porto's analysis of RPC 5.3(c) only). J&J's new position makes sense. RPC 5.3(a) does not apply because Mr. Conlan was indisputably neither "retained" nor "employed" by Beasley Allen or any of its attorneys in any capacity. RPC 5.3(b) does not apply because there is no claim that Beasley Allen (or any of its attorneys) had "direct supervisory authority" over Mr. Conlan.

"finality" it sought while also offering fair and reasonable values to cancer victims on a voluntary basis.

J&J's baseless claim that Mr. Conlan was on Beasley Allen's "mediation team" is not supported by anything in the record. Mr. Conlan was never Beasley Allen's investigator or agent within the spirit or letter of RPC 5.3. *In re Complaint of PMD Enters. Inc.*, 215 F.Supp.2d 519, 529 (D.N.J. 2002) (discussing that RPC 5.3 applies to nonlawyer attorney agents and investigators); *accord* Kevin H. Michels, NEW JERSEY ATTORNEY ETHICS: THE LAW OF NEW JERSEY LAWYERING, RPC 5.3 (2024) (confirming that RPC 5.3's "nonlawyer" provision applies to "nonlawyer service providers" like experts, support staff, data technicians, or investigators retained, hired, or directed by nonlawyer). Beasley Allen did not direct or supervise Mr. Conlan. Instead, Mr. Birchfield communicated with the Court-appointed mediators. It was anticipated that J&J would comply with the Court's order to mediate and a three-way negotiation in mediation would ensue. J&J, however, failed to participate in the mediation process.

As Judge Porto confirmed, J&J was aware of Legacy's interest in acquiring J&J's talc liability long before this time. (Op. at 31). Legacy (Mr. Conlan) approached J&J in February 2023 about solving J&J's talc liability issues months before he ever spoke to Mr. Birchfield or anyone else at Beasley Allen. (Op. at 11-12) (noting that Mr. Conlan's notice to J&J is "critical to the disposition of this motion"); *Compare* (P-3) (February 2023 letter from Conlan to J&J Board of Directors as well as Mr. Haas advising that Legacy reserves the right "to negotiate settlements with interested asbestos-plaintiff law firms"), *with* (March 25 PM Tr. at 4) (Mr. Haas noting that April 2023 was the first contact between Beasley Allen and Legacy).

**Second**, Beasley Allen (Mr. Birchfield) never saw the Legacy Proposal before J&J revealed it to the public in these proceedings so it could not have ordered, ratified, or supervised

11

the Legacy Proposal. (May 3 Tr. at 91 to 92). Beasley Allen provided the matrix to Legacy but did not negotiate any settlement matrix with Legacy or Conlan. (May 3 Tr. at 95 to 98). Beasley Allen (and Mr. Birchfield) did not "ratify" any of Mr. Conlan's alleged conduct, including the Legacy Proposal, in any sense, let alone within the meaning of RPC 5.3.[13] *See* Ratification, BLACK'S LAW DICTIONARY (defined as "Confirmation and acceptance of a previous act."). Beasley Allen and Legacy never compromised, "haggled" over, or "negotiated the matrix" with Legacy (Conlan). *See* (May 3 Tr. at 94 to 97). Factually and legally, there was no order or ratification under RPC 5.3(c).

**Third**, Beasley Allen had conversations (including in court-ordered mediation) with Legacy that involved its "proposal of structural optimization and disaffiliation," not any confidences Mr. Conlan may have learned as J&J's counsel. (May 3 Tr. at 67 to 68). Indeed, Mr. Birchfield was not privy to the Legacy Proposal (Plenary Hearing Exhibit 7) prior to J&J's filing of this motion. (May 3 Tr. at 91 to 92). As Judge Porto found, Beasley Allen provided the matrix to Legacy but did not negotiate any settlement matrix with Legacy or Mr. Conlan. (Op. at 28); (May 3 Tr. at 95 to 98). Beasley Allen therefore never "associated" with Mr. Conlan or Legacy in any sense. Legacy and Beasley Allen were dealing at arm's length with Legacy as a business entity offering both J&J and plaintiffs what they sought. Legacy and Beasley Allen were not "allies." (May 3 Tr. at 65, 101 to 104). There was no "ratification," "confirmation" or "association" by Beasley Allen under RPC 5.3. *Id.*

Judge Porto confirmed that J&J's belated invocation of RPC 5.3 is an attempt to resurrect the appearance of impropriety standard. (Op. at 26, 31) (The "presumption is no longer valid in New Jersey as an 'presumption' in this context is based on an appearance of impropriety."); (*id.* at

---

[13] The remainder of RPC 5.3(c)(2) similarly does not apply because Mr. Birchfield did not have "direct" (or any) "supervisory authority" over Mr. Conlan or Legacy. J&J's brief does not address or attempt to refute this issue.

28) ("In fact, this court finds J&J's contention is synonymous with the now overruled appearance of impropriety standard.").[14] J&J's brief does not discuss RPC 5.3(c)(1)-(3)'s specific requirements that Beasley Allen must: (1) order or ratify Conlan's conduct; or (2) have "direct supervisory authority" over Conlan. J&J Br. at 4, 20-25. J&J cannot cite half of Rule 5.3 when it suits them and ignore the pertinent sections precluding disqualification here. There is "no evidence of any 'association,' as that term is used by J&J, between Conlan and Birchfield other than the fact that Birchfield supported the Legacy proposal." (Op. at 30). For these reasons, RPC 5.3(c) does not apply to any of the circumstances here, and the Motion should be denied.

**B.      Judge Porto Correctly Found That Beasley Allen Did Not Commit Any "Independent" RPC Violation Under RPC 3.3 or RPC 8.4.**

**Beasley Allen did not violate RPC 3.3.** RPC 3.3(a)(5) provides that a lawyer shall not knowingly "fail to disclose to the tribunal a material fact knowing that the omission is reasonably certain to mislead the tribunal, except that it shall not be a breach of this rule if the disclosure is protected by a recognized privilege or is otherwise prohibited by law." There is no basis to disqualify Beasley Allen based on a lack of candor to the tribunal.

After eight months of briefing and hearings, J&J claims that Beasley Allen (and Mr. Birchfield) was less than candid with the Court because Beasley Allen hid its "collaboration" from J&J and the mediators. J&J's supposition is unsubstantiated rank speculation, and the record (as well as Judge Porto's findings) directly refutes those claims. Mr. Birchfield (and other Beasley Allen attorneys) filed certifications, sat for sworn testimony on multiple dates, and answered each

---

[14] J&J repeatedly cites stale case law to support its novel ethics theories. But there is no "shared presumption" of conflicts under current New Jersey law. *See Kane Props., LLC v. City of Hoboken*, 214 N.J. 199, 220 (2013) (reaffirming that "appearance of impropriety" standard does not govern alleged attorney conflicts).

question candidly.[15] The Court should adopt Judge Porto's findings of fact and conclusions of law related to RPC 3.3 and 8.4 for three reasons.

**First**, J&J concealed relevant evidence in this proceeding for months, only belatedly producing heavily redacted "timesheets," which Beasley Allen was entitled to review from the outset. *See* (May 3 Tr. at 136 to 137) (objecting to use and reference to heavily redacted timesheets produced after days of testimony ended). J&J's use of privilege as a sword (when convenient) and a shield (when convenient) deprived Beasley Allen of the opportunity to test J&J's assertions.

**Second**, J&J's personal attacks on the veracity of Mr. Birchfield's certifications are not only off base (as described above) but hypocritical. For example, Mr. Murdica's declaration (and later his testimony)— based on hearsay including musings of other people's state of mind—failed to identify a single confidential fact that Mr. Conlan learned or how (or when) he told Beasley Allen. *See* Murdica Decl. at ¶¶4-7 (stating generally that Mr. Conlan worked on "legal strategies," "strategy calls"); *id.* at ¶13 (stating what Mr. Conlan "was not mindful" of); *id.* at ¶14 (same). Consistent with their testimony, neither Mr. Haas nor Mr. Murdica's declarations provided any specific factual or legal basis to disqualify Beasley Allen as New Jersey law requires. *Id.* Instead, J&J leaked documents after both matters were fully briefed and withheld other documents (like Mr. Conlan's February 2023 notice (P-3) and his contemporaneous November 5, 2023 disavowal (P-5)) entirely.

**Third**, Judge Porto found that J&J was on notice that Conlan would approach plaintiffs' firms like Beasley Allen as early as February 2023. J&J's (including Mr. Haas and Mr. Murdica)

---

[15] At no point was Mr. Birchfield's testimony evasive or misleading. Unfortunately (and ironically), J&J is guilty of the exact conduct it now falsely accuses Beasley Allen of engaging in. Mr. Birchfield provided the first date of contact with Legacy because that date is significant in the timeline of events. No confidences could conceivably have been shared before. At that point, J&J's first effort at bankruptcy had been dismissed and it had filed its second petition.

belated and feigned outrage was unpersuasive. (Op. at 11-12, 31) ("Specifically, in paragraph 6 of that email, Legacy i.e. Conlan informed Haas and J&J that it reserved the right, in its discretion, to negotiate settlements with interested Asbestos plaintiff law firms of some or all of the pending claims filed by such firms, all such settlements to become effective at closing of the Legacy proposal."). The record confirms that Mr. Conlan's February 2023 proposal put J&J on "notice" "that Legacy reserved the right to work with plaintiffs firms," and Mr. Conlan only presented a proposal to Beasley Allen after J&J failed to respond. (Op. at 31).[16] The Court should adopt Judge Porto's supported findings of fact and conclusions of law. RPC 3.3 cannot provide a basis for disqualification.

**Beasley Allen did not violate RPC 8.4.** RPC 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." None of Beasley Allen's conduct remotely approaches conduct prejudicial to the administration of justice. Beasley Allen and Legacy did not act "in secret." Mr. Conlan put J&J on notice as far back as February 2023 that Legacy would work with Plaintiffs firms like Beasley Allen to resolve J&J's talcum powder liabilities. (Op. at 31); *see* (P-3). Beasley Allen communicated with Legacy in the context of court-ordered mediation, not in some clandestine conspiracy. As Judge Porto noted, neither Mr. Birchfield nor Mr. Conlan has ever been accused of any ethical misconduct in thirty (30) plus years of practice as attorneys. Nothing in the record supports the novel ethics accusations made against Beasley Allen (J&J's litigation opponent) now. Judge Porto "grappled" with all the issues J&J continues to raise—he simply disagreed with J&J on all points. The Motion—which

---

[16] Until the Court expressly overruled its privilege objections, J&J successfully concealed Mr. Conlan's November 2023 response to J&J's baseless privilege claims. *See* (P-5). Mr. Conlan's response should have been produced by J&J in its initial application in December 2023, but J&J concealed it from the Court because it contained Mr. Conlan's contemporaneous (and inconvenient) reply to J&J's privilege allegations.

was clearly brought to gain an improper litigation advantage and smear Beasley Allen—should be denied.

## <u>CONCLUSION</u>

J&J clearly articulated that it could identify no ethical violations—and by the briefing in this matter—has floated every ethics trial balloon conceivable. The constantly morphing muck slinging reflects upon the frail remaining credibility J&J has after two failed bankruptcy efforts. Despite J&J's ever-evolving ethics theories, none of the RPCs J&J now points to apply to Beasley Allen or justify the "severe remedy of disqualification." *See* ECF No. 29022 at 2. Beasley Allen never represented J&J. Beasley Allen never retained Mr. Conlan. For over 20 years, *see In re Sup. Ct. Advisory Comm. on Prof'l Ethics Op. No. 697*, 188 N.J. 549 (2006), the Supreme Court of New Jersey has repeatedly rejected the "appearance of impropriety" standard. J&J repeatedly played a shell game with privilege—attacking Beasley Allen for engaging in court-ordered mediation (and necessarily invoking sacrosanct mediation privilege) and at the same time shielding exculpatory documents and evidence based on dubious claims of attorney-client privilege. The Court should adopt Judge Porto's findings of fact and conclusions because both the law and record support Judge Porto's order and opinion. Because there is no basis to disqualify Beasley Allen from the MDL, there is also no factual or legal basis to remove Beasley Allen from its leadership role in the MDL. J&J's motion should be denied, and the matter should proceed to trial with Beasley Allen acting as the champion of the clients who chose it.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*Attorneys for Andy Birchfield and Beasley Allen*

16

_/s/ Jeffrey M. Pollock_
Jeffrey M. Pollock
Michael W. Sabo

Dated: August 5, 2024

17

<u>**CERTIFICATE OF SERVICE**</u>

I, Jeffrey M. Pollock, Esq., hereby certify that I caused a true and correct copy of the foregoing Post-Hearing Reply in Opposition to J&J's Motion to Disqualify Beasley Allen and in Support of the Court's Order to Show Cause to be served upon all Counsel of Record via the Court's CM/ECF system.

<u>*/s/ Jeffrey M. Pollock*</u>

Jeffrey M. Pollock, Esq.
Michael W. Sabo, Esq.
*Attorneys for Andy Birchfield and Beasley Allen*

Dated: August 5, 2024