**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS<br><br>MDL Case No. 2738 |

**DEFENDANTS JOHNSON & JOHNSON'S AND LLT MANAGEMENT
LLC'S SUPPLEMENTAL REPLY TO THE COURT'S JULY 19, 2024
SHOW CAUSE ORDER EXPLAINING WHY THE COURT SHOULD NOT
ADOPT THE STATE MCL JUDGE'S FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON THEIR MOTION TO DISQUALIFY
BEASLEY ALLEN FROM THIS LITIGATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................3

    A.    Beasley Allen Is Responsible For Conlan's Violation Of Rule 1.6 .............3

    B.    Beasley Allen Violated Rule 5.3(c) ...........................................................7

    C.    Beasley Allen Violated Rules 3.3 and 8.4 .................................................14

    D.    The Court Should, At A Minimum, Remove Beasley Allen From The PSC ...........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cordy v. Sherwin-Williams Co.*,
   156 F.R.D. 575 (D.N.J. 1994)................................................................7

*In re Complaint of PMD Enters., Inc.*,
   215 F. Supp. 2d 519 (D.N.J. 2002)........................................................9

*In re: LTL Mgmt., LLC*,
   No. 23-12825-MBK ("*LTL-2*"), ECF No. 481 (Bankr. D.N.J. May 10,
   2023)..........................................................................................13

*Reardon v. Marlayne, Inc.*,
   83 N.J. 460 (1980)..............................................................................5

*United States v. Voigt*,
   89 F.3d 1050 (3d Cir. 1996)................................................................3

**Rules**

RPC 1.6(a).................................................................................................5

RPC 1.6(b).................................................................................................5

RPC 5.3......................................................................................................8

RPC 5.3(c)....................................................................................... 2, 7, 10

## INTRODUCTION

Andy Birchfield's and Beasley Allen's effort to defend Judge Porto's findings of fact and conclusions of law rests on arguments that are at odds with the evidentiary record and contrary to New Jersey law.  They both rehash arguments they have made—and J&J has rebutted—before, and also advance new arguments against disqualification that they have never before asserted in these proceedings, were not embraced by Judge Porto, and do not support their opposition to J&J's motion to disqualify them.

Beasley Allen's arguments about Rule 1.6 retread old ground.  They are, at bottom, nothing more than iterations (or verbatim recitations) of what it has said before.  For the reasons explained in detail in J&J's prior briefing, Beasley Allen's arguments are specious.  *See* Dkt. 33026 at 10-19.  They need only be addressed briefly here.

Beasley Allen's new arguments about Rules 5.3, 3.3, and 8.4, in turn, are just as deeply flawed, and adopting them would seriously weaken the rules governing the practice of law before this Court to the detriment of the bench, bar, and ultimately the attorney-client relationship.  Beasley Allen's position is that New Jersey's ethics rules permitted it to collaborate on a settlement proposal in secret with J&J's former lawyer in the same matter—both in and outside of mediation—and then attempt to cover up the collaboration in sworn certifications to the Court.  It should go without

saying that the Rules prohibit that. Only by misconstruing them can Beasley Allen argue that it did nothing wrong.

Beasley Allen contends, for example, that a lawyer "associates" with a non-lawyer under Rule 5.3 only when the two enter into an "agency" relationship. *See* Dkt. 33065 at 11. The plain meaning of "associate" is to the contrary. It means to join in common purpose or action, which is exactly what Beasley Allen and Conlan did when they collaborated on a settlement proposal in a mediation adverse to J&J. The plain text of the Rule and the official comments likewise belie Beasley Allen's contention. The Rule's framers deliberately selected a broad word like "associate" to capture mutually-beneficial partnerships, when those partnerships involve ethical misconduct. Such is the case here. Beasley Allen has never disputed, and in fact has admitted, that Conlan's collaboration on a mediation proposal with his former client's adversary would have been a violation of the Rules of Professional Conduct ("RPCs") "if engaged in by a lawyer." RPC 5.3(c).

Beasley Allen's arguments on Rule 3.3 and 8.4 are, if possible, even more strained and are entirely antithetical to the RPCs. Beasley Allen offers no substantive defense of Birchfield's sworn certifications. Nor could it. Those certifications were deliberately misleading. They failed to disclose the full extent of Beasley Allen's relationship with Conlan—including their monthslong collaboration on a settlement proposal in the LTL-2 mediation—in an attempt to avoid

disqualification.  Instead of offering a defense of its own misconduct, Beasley Allen tries to point fingers at J&J.  It accuses J&J of "leaking" certain documents and withholding others, and even tries to fault J&J's witnesses for not offering testimony sufficient (in Beasley Allen's view) to warrant disqualifying the firm.  None of that is correct—or a defense to offering misleading testimony to the Court.

A federal "court has independent interests in protecting its judgments against later collateral attack, preserving the integrity of its proceedings, and protecting the truth-seeking function of [its] proceedings."  *United States v. Voigt*, 89 F.3d 1050, 1076 n.12 (3d Cir. 1996).  This Court should exercise its independent authority to protect those interests by declining to adopt Judge Porto's decision.  The Court should also use its plenary authority, independent of state law, to remove Beasley Allen from the PSC.

## ARGUMENT

### A.   Beasley Allen Is Responsible For Conlan's Violation Of Rule 1.6

There is no dispute that Conlan entered into a confidential relationship with Beasley Allen, which Beasley Allen contends is privileged, during the LTL-2 mediation.  In these circumstances, the law presumes what the relationship suggests: that confidences were shared.  *See* Dkt. 32207 at 5, 36-37; Dkt. 32275 at 8-10; Dkt. 33026 at 5-9.  Like Judge Porto, Beasley Allen insists that New Jersey's longstanding presumption of shared confidences was abrogated in 2004 by the elimination of the

appearance of impropriety standard from Rule 1.7(c).  But neither Beasley Allen nor Judge Porto has ever explained why that would be so.

As J&J has demonstrated in numerous briefs, the presumption of shared confidences does not police perceived impropriety or implement the policies embodied in former Rule 1.7(c).  *See* Dkt. 32275 at 7-10; Dkt. 33026 at 6-7.  Rather, it is an evidentiary presumption grounded in the policies justifying many presumptions—likelihood from fact A (here, a confidential relationship) that fact B is true (here, shared confidences), and the practical difficulty of requiring the movant to prove what third parties said to each other behind closed doors.  *See* Dkt. 33026 at 6-8.  Likewise, New Jersey's elimination of the appearance of impropriety standard casts no doubt on the presumption.  The appearance of impropriety standard fell because it was vague.  Presumptions are not—including presumptions that all agree are currently reflected in New Jersey's ethics rules, like the presumption of shared confidences within a firm embodied in Rule 1.10.  *See* Dkt. 32207 at 38-39.  All of this is undisputed.

Contrary to Beasley Allen's argument, applying the presumption does not mean that the Court presumes an ethics violation.  *See* Dkt. 33065 at 4-5.  Under the presumption, the law presumes a *fact*—i.e., that confidences were shared.  Whether there is an ethical violation turns on a host of other factors, including whether the presumption was rebutted (it wasn't here) and what ethics rule is in play.  The

presumption is not limited to Rule 1.6 cases precisely because it's a presumption of fact, not a presumption of a legal violation. *See Reardon v. Marlayne, Inc.*, 83 N.J. 460, 473 (1980) (applying presumption to precursor to Rule 1.9(a)'s "substantially related" test). Under Rule 1.6, for example, sharing confidences is not presumptively unethical. An attorney is allowed to share confidences when necessary (RPC 1.6(b)) or authorized (RPC 1.6(a)).

Beasley Allen seems to suggest that Conlan was authorized to share J&J's confidences because he put J&J on "notice" that he would meet with plaintiffs' firms in a February 2, 2023 email. *See* Dkt. 33065 at 6 & n.8. Notice is not consent or authorization. The email said nothing about sharing confidences. And it is unreasonable to construe a proposal that J&J never accepted as providing "notice" to begin with. *See* Dkt. 33026 at 17-18. Why would Legacy "negotiate settlements with interested Asbestos Plaintiff law firms … to become effective at closing of the Legacy proposal," Op. 11, if J&J had not accepted the Legacy Proposal in the first place?

Setting the presumption aside, Judge Porto and Beasley Allen are wrong about the record. Neither grappled with the critical facts surrounding the collaboration on the Legacy/Birchfield settlement proposal in the LTL-2 mediation. *See* Dkt. 32207

at 20-22; Dkt. 32275 at 20-21; Dkt. 33026 at 24.[1]  In that collaboration, Conlan had an opportunity and motive to share J&J's confidences.  Again, it is undisputed that he would make money only if Beasley Allen offered a settlement J&J would be willing to accept, so he had every interest in sharing J&J's settlement tolerance and thinking about the value of plaintiffs' claims.  The circumstantial evidence confirms that he followed through.  Legacy and Beasley Allen went back and forth on the proposal for weeks, as it swelled in length with edits.  To think those edits were not substantive is to blink reality.  Although J&J was not required "to identify any specific confidence Mr. Conlan revealed to Beasley Allen," Dkt. 33065 at 6; *see also* Dkt. 32207 at 40; Dkt. 32275 at 3-6; Dkt. 33026 at 17, it did:  The weight of the evidence shows that Conlan revealed J&J's settlement tolerance and valuation of plaintiffs' claims.  *See* Dkt. 32275 at 6 & n.1.

What Beasley Allen's argument really means is that J&J was required to prove a disclosure through direct evidence.  That was impossible here because the firm invoked the mediation privilege to shield its communications with Conlan.  But the important point is that the law does not demand direct evidence.  Circumstantial evidence is sufficient.  *See* Dkt. 32207 at 36; Dkt. 32275 at 3-4.  And in this case it is powerful.  Conlan's and Beasley Allen's conclusory and self-serving denials, by

---

[1] The matrix attached to Legacy's subsequent $19 billion proposal (*see* Dkt. 33065 at 6) is beside the point, although the proposal itself reflects J&J's and Beasley Allen's confidences, as J&J has explained.  *See* Dkt. 33026 at 10-11.

contrast, are not. *See, e.g.*, *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994) ("Self-serving affidavits of counsel and others are not helpful because of their undeniable interest in preserving any tactical advantage they may have garnered." (internal quotation marks omitted)).

### B.    Beasley Allen Violated Rule 5.3(c)

Beasley Allen barely defends Judge Porto's application of Rule 5.3(c), substituting his cursory analysis for arguments of its own.   Beasley Allen's arguments are no more persuasive.  As relevant here, Rule 5.3(c) contains three elements: (1) the lawyer "associates" with a non-lawyer; (2) the non-lawyer engages in conduct "that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer"; and (3) the lawyer "ratifies" the non-lawyer's conduct.  RPC 5.3(c). Beasley Allen and Conlan easily satisfy each element.  The firm's counterarguments lack merit.

1. <u>Associate</u>.  Beasley Allen argues that it did not "associate" with Conlan because he did not act as the firm's "investigator or agent" when they collaborated on a settlement proposal in the LTL-2 mediation.  Dkt. 33065 at 11.  That argument was not adopted by Judge Porto (and not raised by Beasley Allen in its post-hearing briefs), so Beasley Allen is asking this Court to chart new territory.  *See* Op. at 31-32.   Nor is the argument correct.   The word "associate" is not limited to "investigators," nor does it require an "agency" relationship.  As J&J has explained,

the word "associate" has a well-settled meaning:  It means to join in common purpose or action.  Dkt. 32207 at 47-49; Dkt. 33026 at 23-24.  Beasley Allen has never attempted to rebut this definition, nor has it argued that it did not join in common purpose and action with Conlan.  That is because it can't.  The undisputed facts found by Judge Porto show that Beasley Allen joined in common and purpose and action with Conlan when they collaborated together on a settlement proposal in the LTL-2 mediation.  Dkt. 33026 at 23-24.[2]

If the Rule's framers wanted to require an agency relationship, they would have said so.  Instead, they enacted prohibitions that cover nonlawyers "employed or retained by or associated with a lawyer."  *See* RPC 5.3.  Beasley Allen's interpretation of "associate" as requiring an agency relationship is not only inconsistent with the plain and ordinary meaning of that word, but would render it superfluous.  It is difficult to imagine how a non-lawyer could enter into an agency relationship with a lawyer and not be retained or employed within the meaning of Rule 5.3.  And plainly, the Rule does not require retention or employment.  It sets

---

[2] Beasley Allen asserts that there is no evidence supporting the contention that Conlan was on plaintiffs' "mediation team."  Dkt. 33065 at 11.  Of course there is.  Collaborating on a settlement proposal in mediation and engaging in "close collaboration and strategy communications regarding" mediation, Dkt. 29999 at 6, including sharing privileged and confidential information, *see* Dkt. 32207 at 23-25, amounts to joining a mediation team.  Regardless, Beasley Allen's point is mere semantics.  Whatever the Court wants to call Beasley Allen's collaboration with Conlan, the fact is that collaborating on a settlement proposal in mediation is an "association" under the plain meaning of the term.

out association as a separate kind of relationship that ***independently triggers*** the requirements of Rule 5.3.

None of the sources cited by Beasley Allen is to the contrary. *In re Complaint of PMD Enterprises, Inc.*, 215 F. Supp. 2d 519, 529 (D.N.J. 2002), states that an agency relationship is *sufficient* to trigger Rule 5.3; but that does not support Beasley Allen's argument that such a relationship is *necessary*. And the treatise cited by Beasley Allen merely quotes from the official commentary to the Rule, which makes clear that it applies to outside vendors. Thus, even accepting Beasley Allen's specious contention that Legacy was merely an outside "vendor" offering structural optimization services, Dkt. 33065 at 1, Rule 5.3 would apply.

Of course, that contention is impossible to square with the undisputed fact that Beasley Allen and Conlan "collaborated on a settlement proposal to J&J." Dkt. 29999 at 6. And it sidesteps the further (and also undisputed) fact that if Beasley Allen was actually interested in a "vendor" offering structural optimization services, it could have turned to any of numerous other companies offering those services. *See* 4/10 (PM) Tr. 104:19-106:03. But it did not even look at others, because Beasley Allen wanted Legacy with the CEO Beasley Allen knew was J&J's former lawyer on the talc litigation. *See* Dkt. 32207 at 49 (citing 4/10 (PM) Tr. 104:14-108:6). Regardless, the language Beasley Allen cites forecloses its own suggestion that Rule

5.3 does not apply because Legacy was a "vendor."  Attorneys can no more use vendors to flout the rules than any other type of third-party.

2. <u>Conduct that would violate an RPC if engaged in by a lawyer</u>.  Like Judge Porto, Beasley Allen insists that it did no wrong because Conlan did not violate Rule 1.9(a).  Rule 1.9(a), Beasley Allen argues, applies only to lawyers who represent clients, and Conlan was not a lawyer when he collaborated with Beasley Allen during the LTL-2 mediation.  Dkt. 33065 at 7.  That does not matter.  Rule 5.3 does not require that the conduct involve a lawyer for the obvious reason that it is specifically applicable to non-lawyers.  Dkt. 32207 at 45; Dkt. 32275 at 13-14; Dkt. 33026 at 20-21.  If the law were as Beasley Allen and Judge Porto imagine it, Rule 5.3 would almost ***never apply***.  Its specific terms governing the responsibility of lawyers for associated non-lawyer conduct forecloses Beasley Allen's position.

Rule 5.3 is not self-negating.  It holds lawyers responsible for a non-lawyer's conduct when that conduct would violate an RPC *if* engaged in by a lawyer.  RPC 5.3(c).  Put another way, J&J was not required to prove that Conlan *actually* violated Rule 1.9(a) in his capacity as a "non-attorney businessman."  *See* Dkt. 33065 at 10.  It was required to prove that his conduct would have violated Rule 1.9(a) if he had been a lawyer.  Contrary to Beasley Allen's argument, this does not "conflate RPC 1.9 with RPC 5.3."  Dkt. 33065 at 8 n.9.  It merely reflects Rule 5.3's text (and plain purpose), which instructs the court to ask:  If the non-lawyer had been acting as a

lawyer, would his conduct have violated an ethical rule?  The answer here is yes. Everyone agrees that Conlan's collaboration with Beasley Allen on a settlement proposal in a mediation adverse to J&J would have violated Rule 1.9(a) if, at the time of the mediation, Conlan had been a practicing lawyer.  Dkt. 32207 at 42.  That ends the inquiry.

3.  <u>Ratification</u>.  Beasley Allen next argues that it did not "ratify" Conlan's conduct.  Dkt. 33065 at 11-12.  Not only does this argument depart from Judge Porto's opinion (which never grappled with this issue), it consists of transparent misdirection.  The "conduct" that would have violated Rule 1.9(a) if Conlan had been a lawyer—i.e., the conduct that matters for purposes of Rule 5.3(c)—was Conlan's "collaboration" with his former litigation adversary on a settlement proposal in mediation.  Beasley Allen ratified *that* conduct.  As it admits, it invited Conlan to participate on plaintiffs' mediation team and approved his participation. *See* Dkt. 33065 at 10 ("Birchfield sought to include Legacy in the mediation process"); *see also* Dkt. 32207 at 20-21, 50-51; Dkt. 32275 at 13-14.

Beasley Allen responds by pointing to *different* conduct.  The firm asserts that it did not violate Rule 5.3(c) because it did not ratify the so-called "Legacy Proposal"—a proposal Conlan sent J&J after the LTL-2 mediation had concluded. Dkt. 33065 at 11-12 (arguing Beasley Allen "could not have ordered, ratified, or supervised the Legacy Proposal").  But J&J does not argue that Conlan violated the

rules by sending the "Legacy Proposal" or would have done so if he had been a lawyer. The Legacy Proposal is simply irrelevant to the Rule 5.3(c) analysis.[3]

Curiously, Beasley Allen also contends that "J&J's brief does not discuss RPC 5.3(c)(1)-(3)'s specific requirements that Beasley Allen must: (1) order or ratify Conlan's conduct; or (2) have 'direct supervisory authority over Conlan.'" Dkt. 33065 at 13. Yes, it did. J&J made clear that "Beasley Allen ratified Conlan's participation on plaintiff's mediation team, which would have been a flagrant violation of Rule 1.9(a) if Conlan had been a lawyer," Dkt. 33026 at 20, 24-25, and cited its prior briefing where the argument was set out in full. J&J was not also required to prove that Beasley Allen had direct supervisory authority over Conlan within the meaning of Rule 5.3(c)(2) because the options set out in subsections (1) through (3) are disjunctive—it is sufficient to disqualify Beasley Allen that it ratified Conlan's misconduct.[4]

---

[3] That said, the so-called Legacy Proposal was clearly the product of the secret Beasley Allen-Conlan collaboration during the LTL-2 mediation, as evidenced by their work to develop a term sheet and by Conlan's ultimate revelation that he had been working with Birchfield when he offered to bring Birchfield to meet with J&J to walk through the Legacy Proposal. *See* Dkt. 32207 at 52; Hr'g Ex. 4 at 1; *see also supra* at 8 n.2.

[4] Beasley Allen asserts that Judge Porto held that the application of Rule 5.3 would "resurrect the appearance of impropriety standard." Dkt. 33065 at 12-13 (citing Op. at 26, 28, 31). Judge Porto did no such thing. Violating Rule 5.3 is a violation of the RPCs. What Judge Porto held was that the "presumption [of shared confidences] is no longer valid in New Jersey" because it was "based on the appearance of impropriety." Op. at 26. The presumption of shared confidences is irrelevant to Rule 5.3; it matters here for purposes of Rule 1.6. And Judge Porto's conclusion is

\*     \*     \*

Beasley Allen's supplemental brief also raises two factual issues tangentially related to Rule 5.3.  Although they are not material to disqualification, J&J is compelled to set the record straight.

*First*, Beasley Allen repeatedly insinuates (if not argues outright) that it invited Conlan to collaborate in mediation at the direction of Judge Kaplan.  *See* Dkt. 33065 at 3 (arguing that "Beasley Allen's compliance with Judge Kaplan's mediation order is not a basis for disqualification").  But Judge Kaplan merely ordered the parties to mediate during the LTL-2 bankruptcy.  *See* Order Appointing Co-Mediators and Establishing Mediation Protocol, *In re: LTL Mgmt., LLC*, No. 23-12825-MBK ("*LTL-2*"), ECF No. 481 (Bankr. D.N.J. May 10, 2023) ("referr[ing]" the parties to mediation).  Judge Kaplan obviously did *not* order Beasley Allen to collaborate with J&J's former lawyer.  If Beasley Allen actually felt that the addition of a company like Legacy on its mediation team was advisable, it was free to reach out to any of the other companies that provide the same services—none of which is run by J&J's former talc litigation lawyer.  Yet it chose to partner with Conlan.  It is disingenuous for Beasley Allen to invoke Judge Kaplan's mediation order as cover for that misconduct.

---

wrong for reasons J&J has already set out at length and summarizes again in this memorandum.  *See* Dkt. 33026 at 5-9.

*Second*, Beasley Allen asserts without citation that J&J "failed to participate in the mediation process." Dkt. 33065 at 11. That is irrelevant and wrong. It is irrelevant because Beasley Allen's conduct violated Rule 5.3 regardless of whether J&J participated in mediation. New Jersey's ethics rules forbid Beasley Allen from collaborating with J&J's former lawyer on the same matter—full stop. Beasley Allen also suggests that if J&J had mediated, it would have discovered sooner that Beasley Allen was (in its lawyer's words) "working together" with Conlan. 3/25 (AM) Tr. 76:3. But if J&J had discovered the collaboration sooner, it simply would have moved to disqualify Beasley Allen sooner. When J&J discovered that Beasley Allen violated Rule 5.3 is irrelevant to *whether* Beasley Allen violated Rule 5.3.

In any event, Beasley Allen cites nothing for its contention that J&J "failed to participate in the mediation process." Dkt. 33065 at 11. That it is untrue likely explains why Beasley Allen offers no support for its statement.

### C.   Beasley Allen Violated Rules 3.3 and 8.4

Beasley Allen argues that the Court should adopt Judge Porto's finding "that Beasley Allen did not commit any 'independent' RPC violation under RPC 3.3 or RPC 8.4." Dkt. 33065 at 13 (capitalization amended).[5] But Judge Porto did not

---

[5] This section appears to have been lifted almost verbatim from Beasley Allen's post-plenary hearing reply brief, Dkt. 32267 at 14-16, except Beasley Allen falsely attributes to Judge Porto the arguments it advanced. For example, the Section header in its post-hearing reply was: "Beasley Allen Did Not Commit Any 'Independent' RPC violation under RPC 3.3 or RPC 8.4." In its current brief, the header reads: "Judge Porto Correctly Found That Beasley Allen Did Not Commit Any

address those rules so there is nothing for this Court to adopt.  *See* Dkt. 33026 at 25-26.  Nor did Judge Porto render any findings "related to" these rules, Dkt. 33065 at 14—he ignored J&J's arguments and Beasley Allen's lack of candor.

Instead of attempting to justify its deceptive certifications, Beasley Allen accuses J&J of misconduct.  *See id*. at 14-15.  For instance, Beasley Allen faults J&J for providing redacted timesheets and for citing to Beasley Allen's privilege log, which it used to block J&J from discovering the substance of its communications with Conlan.  Off base as these accusations are, they are completely irrelevant to the question whether *Beasley Allen* told deceptive half-truths to hide its collaboration with Conlan from the Court.  Likewise, Beasley Allen accuses J&J of "leak[ing]" some documents and withholding others—and then complains that "neither Mr. Haas nor Mr. Murdica's declarations provided any specific factual or legal basis to disqualify Beasley Allen."  *Id*. at 14.  Beasley Allen is wrong.  But J&J will not waste the Court's time with a point-for-point refutation.  None of this is relevant to the question whether *Beasley Allen* was truthful to the Court.[6]

---

'Independent' RPC Violation Under RPC 3.3 or RPC 8.4."  The only difference is the addition of the phrase "Judge Porto Correctly Found," which is not an accurate statement because Judge Porto found nothing with respect to these rules.  The substance of Beasley Allen's arguments in both briefs is the same, as is most of the phrasing.  J&J has not yet had an opportunity to respond to these arguments because Beasley Allen advanced them for the first time in reply briefs.

[6] J&J's submissions also clearly demonstrate that Conlan was not truthful with the Court when he testified about his work as J&J's outside counsel.  *See generally*

Equally irrelevant is Beasley Allen's argument that "Judge Porto found that J&J was on notice that Conlan would approach plaintiffs' firms like Beasley Allen as early as February 2023." *Id*. at 14-15. That factual finding is wrong for the reasons J&J has already explained—it is unreasonable to conclude that a business proposal that would become effective *if accepted* was notice about what would happen after it was rejected. Dkt. 33026 at 18. And it is not credible to contend that a letter from a client's former lawyer asking that the client agree he could talk to the client's adversary about the same matter, without any response from the client, could waive a conflict or otherwise condone the arrangement. In any event, the fact that J&J supposedly was on "notice" that its lawyer intended to collaborate with its adversary is no excuse for Beasley Allen filing misleading certifications with the Court.

Beasley Allen provides no real defense on the merits. In a footnote, it contends that "[a]t no point was Mr. Birchfield's testimony evasive or misleading." Dkt. 33065 at 14 n.15. But the problem was not just the testimony, but also Birchfield's sworn certifications. And those certifications speak for themselves. They do not disclose the extent of Beasley Allen's collaboration with Conlan—or

---

J&J's May 1, 2024 letter submission (describing inaccuracies and inconsistencies within and between Conlan's and Birchfield's certifications and testimony at the plenary hearing); *see also* Dkt. 32207 at 16-17; 4/10 (AM) Tr. 19:14-22, 83:14-84:1, 85:1-8, 86:1-87:13; 4/10 (PM) Tr. 58:24-59:5.

even the fact that they collaborated on a settlement proposal at all.  *See* Hr'g Ex. 9 ¶ 7 (asserting only that "[a]t no point in time has Mr. Conlan ever been a member, partner, employee, or counsel at Beasley Allen"); Hr'g Ex. 16 ¶¶ 17-18 (disclosing only that Birchfield's "first contact with anyone at Legacy was on April 27, 2023," and that "[t]he first meeting with Legacy personnel was on May 2, 2023"); *see also* Dkt. 32207 at 55-58; Dkt. 32275 at 19; Dkt. 33026 at 25-26.  The footnote suggests that Birchfield did not say more because the only "significant" fact for purposes of disqualification was "the first date of contact."  Dkt. 33065 at 14 n.15.  Not only is that post-hoc justification unsupported by the certifications, it is simply not true. Again, the full nature and extent of Birchfield's communications with Conlan are obviously "significant" to disqualification, which is why Birchfield left that information out of his certifications as Beasley Allen moved for judgment on the papers.

### D.   The Court Should, At A Minimum, Remove Beasley Allen From The PSC

Beasley Allen again does not substantively address its continued leadership of this MDL.  And it again confirms one of the reasons that it cannot continue in that role.  Beasley Allen seems to think that it acted ethically because Legacy would have been adverse to Beasley Allen's clients if J&J had accepted the Legacy/Birchfield Proposal in the LTL-2 mediation.  *See* Dkt. 33065 at 7-8.  That Legacy would have been adverse to Beasley Allen if all had gone to plan is no defense to the fact that

collaborating on the plan was unethical.  Indeed, the fact that Beasley Allen was willing to share its clients' confidences with someone it hoped would become its adversary represents a serious lapse in judgment, not a defense.  Dkt. 33207 at 59-60; Dkt. 32275 at 22-23; Dkt. 33026 at 27.  Beasley Allen's willingness to compromise its clients' confidences—and the confidences of talc plaintiffs—is a powerful reason not to permit it to continue in its leadership role in this case.

The Court, however, need not separately address Beasley Allen's membership on the PSC if it disqualifies the firm.  Beasley Allen's violations of the New Jersey Rules of Professional Conduct warrant disqualification, and upon disqualification, the firm should no longer maintain its position on the PSC.

Dated: August 12, 2024                           Respectfully submitted,

                                                 _____
                                                 Stephen D. Brody
                                                 O'MELVENY & MYERS LLP
                                                 1625 Eye Street N.W.
                                                 Washington, DC 20006
                                                 Tel.: 202-383-5300
                                                 sbrody@omm.com


                                                 /s/ Susan M. Sharko
                                                 Susan M. Sharko
                                                 FAEGRE DRINKER BIDDLE &
                                                 REATH LLP
                                                 600 Campus Drive

Florham Park, NJ 07932
Tel.:  973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson and
LTL Management, LLC n/k/a LLT
Management LLC*