# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS |

**DEFENDANTS JOHNSON & JOHNSON AND LLT MANAGEMENT, LLC'S REPLY IN SUPPORT OF OBJECTIONS TO SPECIAL MASTER ORDER NO. 25 (ADDRESSING THREE MOTIONS TO QUASH AND/OR FOR PROTECTIVE ORDER) (ECF NO. 32926)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.  Litigation Funding is Fueling This MDL and Must Be Disclosed. .................. 3

II. Litigation Financing is Discoverable .............................................................. 6

III. Plaintiffs' Other Arguments Against Discovery of their Litigation Financing Arrangements Fail .......................................................................... 9

IV. Conclusion ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731 (D. Del. Feb. 9, 2018) ............................................................................................. 7

*Gbarabe v. Chevron Corp.*, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) ................ 7

*In re Selser*, 15 N.J. 393 (N.J. 1954) ........................................................................ 10

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612 (D.N.J. 2019) ..................................................... 8

*Nimitz Techs. LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022) ............................................................................................. 6, 7

*Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J. 1992) ................................ 10

*Rardon v. Falcon Safety Prods., Inc.*, 2023 WL 5347298 (3d Cir. Aug. 21, 2023) ........................................................................................................ 11

*Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300 (N.J. 2010) ............................ 10

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366 (3d Cir. 1991) ............. 8

*Trejo v. All Lynn, LLC.*, 344 F.R.D. 8 (D.N.J. 2023) ............................................. 10

**Rules**

Fed. R. Civ. P. 53 ....................................................................................................... 2

L.R. 7.1.1 ........................................................................................................ *passim*

Contrary to the Responses'[1] central argument that the "[t]he discovery sought is irrelevant to the claims and defenses in this MDL," (*e.g.*, ECF 33062 at 5), Rule 7.1.1 by definition makes litigation funding relevant. L.R. 7.1.1. That alone should be dispositive of this dispute.

Even if it were not, the arguments raised in the Responses by the PSC, Beasley Allen, and the Smith Law Firm do not hold water.[2] The Responses write off the mass influx of litigation funding into MDLs across the country, as if this MDL is somehow uniquely divorced from the rest. They focus largely on Rule 26 and pre-Rule 7.1.1 cases (despite this Court's implementation of Rule 7.1.1), and their scant analysis of Rule 7.1.1 ignores that the Rule applies to *parties*, not law firms. And they dismiss the cases from across the country finding that litigation financing is discoverable in certain circumstances as "out-of-district" and not controlling, despite the fact that the primary case they rely on—*In re Valsartan*, which predates Rule 7.1.1—is likewise not controlling.

The Court should not be convinced by this misdirection. The empirical evidence showing that litigation funding permeates MDLs is strong evidence that litigation funding is fueling this litigation. Despite this, less than one tenth of one

---

[1] ECF Nos. 33061, 33062, and 33064 (individually, a "Response" and collectively "the Responses").

[2] Unless otherwise indicated, capitalized terms have the same meaning as ascribed to them in Defendants' Objection (ECF No. 32987).

1

percent of Plaintiffs in the MDL have disclosed litigation funding—likely stemming from the misimpression that Rule 7.1.1 applies to law firms, not parties—disguising the role of litigation funding here and underpinning the Responses' mistaken arguments about the applicability of Rule 7.1.1(b)–(c). What's more, Rule 7.1.1 is now dispositive of the relevance analysis. And even absent Rule 7.1.1, courts in the Third Circuit and across the country have found litigation funding to be discoverable in circumstances analogous to those here, where communications by Plaintiffs themselves make it clear that something untoward is occurring.

In light of this, Defendants ask two things of the Court. First, Defendants request that the Court clarify that Rule 7.1.1 applies to parties, not to law firms, and cannot be thwarted by clever litigation financing schemes that provide funding while bypassing counsel of record. Second, Defendants move the Court to vacate Special Master Order 25 and order Beasley Allen, the Smith Law Firm, and Ellington Management Group to respond to Defendants' subpoenas.[3]

---

[3] The Smith Law Firm's Response suggests that the Court's review of Special Master Order No. 25 should be "deferential." ECF No. 33064 at 6–7. Not only is this contention belied by the PSC's and Beasley Allen's Responses (ECF No. 33061 at 6 n.3, ECF No. 33062 at 4), it is also contrary to the plain text of Rule 53. *See* Fed. R. Civ. P. 53(f)(3), (f)(4) (requiring *de novo* review of factual findings and legal conclusions). The Special Master's Order must be reviewed *de novo*.

2

## I. Litigation Funding is Fueling This MDL and Must Be Disclosed.

Like the Order, the Responses dismiss the evidence Defendants present regarding the prevalence of litigation funding in MDLs as little more than Defendants' "distaste" for litigation funding. ECF No. 33061 at 5; ECF No. 33064 at 8. Whether litigation funding should be favored or disfavored has nothing to do with it. The point is that funding permeates mass torts, which is relevant because this MDL is a subset of that litigation. Yet implausibly, almost no funding has been disclosed pursuant to Rule 7.1.1. The reason for this gap in disclosure appears to be because Plaintiffs are structuring the funding in a way that they believe (incorrectly) falls outside of Rule 7.1.1.

The PSC, Beasley Allen, and the Smith Law Firm do not dispute that litigation funding has injected billions of dollars into federal MDLs. **Ex. 15**, **Ex. 16**.[4] And it is undisputed that this cash infusion has fueled the explosion of products liability MDLs. **Ex. 12**, **Ex. 13**, **Ex. 14**. This MDL is no different: the Responses focus on Mr. Meisels' testimony that Fortress Investment Group has not directly provided financing to Beasley Allen, but they conveniently ignore—and do not controvert— his testimony that Fortress Investment Group *has* provided millions of dollars of litigation funding to the Smith Law Firm to fund talc-ovarian cancer claims. **Ex. 10**.

---

[4] The Exhibits referenced herein are the Exhibits to Defendants' Objection. *See* ECF No. 32987.

3

Why, then, have less than one-tenth of one percent of Plaintiffs in the MDL disclosed litigation funding? The Responses are telling. Beasley Allen focuses on the purported fact that it has not *directly* received litigation funding. *E.g.*, ECF No. 33061 at 4. That still means that the *plaintiffs* they represent could have received litigation funding, for example by funding routed to co-counsel.

The Smith Law Firm—which undisputably received litigation funding for talc-ovarian cancer claims against Defendants—raises a carefully worded argument that it is not "*counsel of record*" for a plaintiff in the MDL. *E.g.*, ECF No. 33064 at 2. But that does not mean it does not *represent* any plaintiffs in the MDL.

The firms use this siloed approach to improperly contend that no litigation funding is at issue, that no disclosures under Rule 7.1.1 were required, and that Rule 7.1.1 does not apply to permit further discovery. ECF No. 33061 at 6–7; ECF No. 33064 at 12–16. Indeed, counsel effectively admitted at the hearing before the Special Master that they were taking the position that funding to co-counsel is not required to be disclosed:

> And just think about the precedent that they're trying to set here. What they are trying to sell you, Judge, is that 7.1.1 requires me or Beasley Allen or any of the other leaders in this case or any lawyer who accepts referrals from other lawyers, whether its mass tort or not, that they are now trying to impose on us a duty to say to the lawyer who is referring the case to use, do you have litigation funding. That is not the point of 7.1.1.

4

ECF No. 32883 at 58:9–18. But that is exactly the point of Rule 7.1.1, and this evasive approach ignores both the realities of the relationship between Beasley Allen and the Smith Law Firm and the letter and spirit of the Rule.

It is not fantastical to think the funding is being routed in this way, particularly given the statement discussed above at the hearing. Beasley Allen and the Smith Law Firm have a well-established relationship in talc-ovarian cancer litigation. The firms undisputedly have worked hand-in-hand for nearly a decade. At the genesis of this MDL, Beasley Allen and the Smith Law Firm were co-counsel in 800 cases (nearly 40% of all then-filed ovarian talc cases in the entire country), and the firms have tried a score of ovarian talc cases together. Indeed, Mr. Birchfield of Beasley Allen admits that the two firms have a longstanding co-counsel relationship. The Smith Law Firm's receipt of litigation funding in those cases impacts Beasley Allen's conduct in those cases (i.e., its ability to settle those cases), and it brings those cases directly within the scope of Rule 7.1.1.

By its own terms, Rule 7.1.1 applies to ***parties***, not law firms. That litigation funding is routed through a law firm that then does not technically file an appearance in this MDL is of no import. Regardless of the route it takes, if the litigation funding is supporting a plaintiff's case in this MDL, it must be disclosed.[5] The Court should

---

[5] This argument is not limited to Beasley Allen and the Smith Law Firm. It applies with equal force to the firms in this MDL who have co-counsel relationships implicating litigation financing.

5

clarify the application of Rule 7.1.1 so that the Court and all parties know the identity of all entities interested in the outcome of this litigation.

## II. Litigation Financing is Discoverable.

Like the Order, the Responses focus primarily on Rule 26 and cases interpreting it. But Rule 7.1.1 has largely supplanted those cases: the Rule represents a determination by this Court that litigation funding is indeed relevant, that it must be disclosed, and that further discovery is authorized "upon a showing of good cause that the non-party has authority to make material litigation decisions or settlement decisions, the interest of the parties or the class (if applicable) are not being promoted or protected, or conflicts of interest exist, or such other disclosure is necessary to any issue in the case." L.R. 7.1.1(b). As the Smith Law Firm points out, the Court may also order "such other relief as may be appropriate." *Id.* 7.1.1(c).

The Responses seek to minimize the importance of *Nimitz*—indeed, the Beasley Allen Response relegates it to a footnote—but the case is illustrative of the need for litigation financing discovery under the equivalent of Rule 7.1.1 in complex litigation. *Nimitz Techs. LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022). There, like here, parties were not making the litigation funding disclosures required by subsection (a) of the Rule. *See generally id.* And there, like here, the Court came into possession of information suggesting that something untoward was occurring. *Id.* Despite filed documents stating that plaintiffs were not receiving

6

litigation funding and testimony from counsel of record that it was not aware of any litigation funding, the Court undertook further discovery to understand the potential funding, including communications between the parties and the alleged funder. *Id.* at *4, *14, *26. This further discovery undertaken by the Court—similar to the discovery into litigation financing Defendants seek to undertake here—uncovered a massive, undisclosed litigation financing scheme with direct impacts on the litigation. *Id.* at *20–22, *25.

Even analyzing the subpoenas under Rule 26, the information Defendants seek is well within the scope of discovery. For instance, the District of Delaware required production of emails and documents provided to a litigation financier, finding that the documents sought were relevant and non-privileged. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731 (D. Del. Feb. 9, 2018). Where, as here, Plaintiffs' counsel are acting in a representative capacity,[6] the Northern District of California found litigation funding discovery appropriate to assess the adequacy of counsel's representation. *Gbarabe v. Chevron Corp.*, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016). And even *In re Valsartan*—the case on which the Responses primarily rely—holds that litigation funding is relevant and discoverable when "there is a showing that something untoward occurred," that is, "if good cause

---

[6] Plaintiffs, represented by Beasley Allen, have filed multiple class actions in this District, and the firm is acting in a representative via its current position on the Plaintiffs' Steering Committee.

7

exists." *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019).[7]

Whether under Rule 7.1.1 or Rule 26, good cause exists here for discovery into the litigation financing that is fueling this litigation. The Court need look no further than the email exchange that led to the subpoenas in the first place. There, an individual now known to be a client of Beasley Allen was so desperate for information that she chose to bypass her counsel entirely, reaching out instead to counsel for Defendants and the news media to obtain an update regarding the potential to settle her case.[8] **Ex 8**. In her email, the individual reproduced false representations from Beasley Allen regarding Defendants' settlement position (i.e., that "Johnson & Johnson is not willing to settle your case at this time" and that "to date, J&J has been unwilling to settle"). *Id.* These representations are categorically false, and they indicate that the good cause required under Rule 7.1.1 (and under *In*

---

[7] The Responses continue to assert that *In re Valsartan* is "controlling." This is incorrect. *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("[T]here is no such thing as 'the law of the district.'").

[8] Movants' arguments that Defendants' counsel in some way violated any ethics rule is a thinly veiled attempt to point the "ethical violation" finger anywhere else after their own ethical lapses were exposed by those same emails.

As addressed in more detail in Defendants' May 31, 2024 letter (ECF No. 32484) Mr. Murdica's response was entirely reasonable and proper given both the confusing circumstances and Beasley Allen's opaque email seemingly calling Reuters a firm client. Had Beasley Allen wanted to ensure no communications with its client whatsoever, it could have explained the situation with more than a 7-word email.

8

*re Valsartan*, to the extent relevant) is present here. Indeed, these emails show that Beasley Allen is directly misrepresenting Defendants' settlement position to its client (and, likely, to its clients as a whole). It is hard to imagine more direct evidence that the "interests of the parties" are not "being promoted or protected." *See* L.R. 7.1.1(b).

Other evidence of good cause abounds, including Beasley Allen's interest in seeking common benefit funds at the expense of possible resolution via bankruptcy and Beasley Allen's filing of several class action lawsuits (one seeking to disrupt the bankruptcy resolution, and the other seeking to represent nationwide classes of alleged users of Defendants' products). *See* ECF No. 32987-1 at 22–27.

The information Defendants seek is discoverable under both Rules 7.1.1 and Rule 26. The Court should vacate the Order and require that Beasley Allen, the Smith Law Firm, and Ellington respond to Defendants' subpoenas.

### III. Plaintiffs' Other Arguments Against Discovery of their Litigation Financing Arrangements Fail.

Because the discovery Defendants seek is permissible under Rules 7.1.1 and Rule 26, the subpoenas must be enforced unless the recipients show some other bar to discovery. Despite throwing every possible argument at the wall, the Responses fail to do so.

***Privilege.*** The Responses all assert privilege or work product as a bar to discovery, both as to litigation financing information and as to communications

9

regarding settlement authority and Defendants' proposed restructuring.[9] Of note, in an attempt to narrow the scope of the dispute, Defendants clarified that its requests for communications regarding settlement authority were not intended to encompass attorney-client communications; rather, those requests seek communications between the subpoena recipients and third parties regarding settlement authority (e.g., communications describing the control litigation funders may have over settlement). ECF No. 32845.

    As set forth in Defendants' Objection, the attorney-client privilege applies only to communications in which ***legal***, as opposed to financial, advice is sought. *In re Selser*, 15 N.J. 393, 402 (N.J. 1954) (emphasis added). The privilege is waived by disclosure to third parties. *Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300, 323 (N.J. 2010). And the common interest exception to waiver is inapplicable here because any interest between Plaintiffs and/or their law firms and their litigation financiers is financial, not legal. *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 69 (D.N.J. 1992). The result is the same under the federal work product protection—for the protection to apply, the documents must have been created "because of the prospect of litigation *and for no other purpose*." *Trejo v. All Lynn, LLC.*, 344 F.R.D. 8, 11 (D.N.J. 2023) (emphasis added).

---

[9] Notably, despite claiming privilege, no privilege log has been produced.

The cases cited in the Responses do little more than set forth general principles of privilege and work product—Plaintiffs do not grapple with the cases Defendants cite showing that, when applying these general principles, the information sought should not be protected. ECF No. 32987-1 at 31–34. The documents Defendants seek—litigation financing materials or documents regarding settlement authority or Defendants' restructuring proposal shared with third parties—are not privileged or otherwise protected from disclosure.

***Undue Burden/Proportionality.*** Nor is the discovery sought by the subpoenas disproportional or unduly burdensome. As Defendants make clear in their objections, the discovery sought is relevant, cannot be obtained from other sources, and is sought from parties closely related to this litigation. ECF No. 32987-1 at 34–35; *see Rardon v. Falcon Safety Prods., Inc.*, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023). And in this MDL, where Defendants have produced hundreds of thousands of documents, the parties have taken untold number of depositions, dozens of expert reports have been exchanged, and countless subpoenas have been issued, the argument that the subpoenas—which seek three discreet categories of documents—are somehow disproportional, unduly burdensome, or harassing is absurd.

***Mootness***. Beasley Allen makes the bizarre argument that because Defendants withdrew their subpoena to Fortress Investments, its subpoena to Beasley Allen is

11

now moot. ECF No. 33061 at 11. It is true that Request No. 1 to Beasley Allen pertains specifically to Fortress. ECF No. 32201 at 10. If Beasley Allen concurs with Fortress that the firm has not received any litigation funding from Fortress, it should be simple enough to state as such in Beasley Allen's response. The remainder of the requests, however, pertain to litigation financing received from Fortress *or any other entity*. *Id.* That Defendants withdrew their subpoena to Fortress—following Mr. Meisel's declaration—has no bearing on Defendants' requests to Beasley Allen.

## IV. CONCLUSION

Something untoward is occurring here. In this MDL, which is now in its eighth year, litigation financing is not being disclosed under the Rule (despite its unquestioned presence here), and a major player—Beasley Allen—appears to be misleading its clients about a potential settlement with Defendants. Defendants and the Court are entitled to know why. The Special Master's Order denying targeted discovery meant to answer this question was both factually and legally erroneous, and it should be reversed.

12

Dated: August 12, 2024                    Respectfully submitted,

                                          */s/ Kristen R. Fournier*
                                          Kristen R. Fournier
                                          **KING & SPALDING LLP**
                                          1185 Avenue of the Americas
                                          34th Floor
                                          New York, NY 10036
                                          (212) 556-2100
                                          kfournier@kslaw.com

                                          Susan M. Sharko
                                          **FAEGRE DRINKER BIDDLE & REATH LLP**
                                          600 Campus Drive
                                          Florham Park, NJ 07932
                                          susan.sharko@faegredrinker.com

                                          *Attorneys for Defendants Johnson & Johnson and LLT Management, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2024, I electronically filed the foregoing document with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

                                          */s/ Kristen R. Fournier*
                                          Kristen R. Fournier