# Exhibit BB

```
              15TH JUDICIAL DISTRICT COURT
                  PARISH OF LAFAYETTE
                   STATE OF LOUISIANA


No. 2016-0983              DIVISION:  "I"



                        KAY POWERS


                         VERSUS


                  BEACON CMP CORP, ET AL.




             VIDEOTAPED REMOTE DEPOSITION OF
                   WILLIAM E. LONGO, PHD
                        Volume III

              Taken on behalf of Defendants
                       May 7, 2021




             Nicola Gengler, CCR, CSR, RPR
                 Certified Court Reporter
                   License No. 2015012
```

1   similar to what we see in the Calidria.  So we
2   got out the Calidria standard.  And I don't know
3   if that was before or after I read the -- looked
4   at the '74 McCrone paper.
5           So some sequence of events caused me
6   to think that we should use Calidria as the
7   surrogate because both refractive indices are in
8   the range of the -- they are in the range of what
9   we are seeing for the chrysotile in the cosmetic
10  talc as well as in range for Dr. Hsu's charts or
11  tables that give you the range of what can be
12  expected for chrysotile.
13          And it's also mostly in the range of
14  what McCrone says should be for chrysotile based
15  on his work from the 30 mines around the world.
16      Q.   I assume that your laboratory has
17  many more different chrysotile reference samples
18  than just Calidria and NIS?
19      A.   Oh, well, we have got -- I mean, we
20  have chrysotile standards directly from -- that
21  we purchased along the line from mineral shops,
22  from Russia and a few other places, but I didn't
23  see any need to do that.
24      Q.   Was it you that made the discovery
25  that what you were finding in cosmetic talc was

1  like Calidria or another analyst at your lab?
2       A.    I have to give credit where credit is
3  due.  Mr. Hess came up with the suggestion.
4       Q.    And was that because he was doing
5  another type of analysis at the time that
6  overlapped with this cosmetic talc analysis?
7            MR. LINDER:  Objection, form.
8            THE WITNESS:  No.  He has just been
9  doing this work for 30-some years and it was his
10 idea.
11 BY MR. MULARCZYK:
12      Q.    So you were using the NIS standard
13 for a little bit and then Paul Hess approached
14 you and just said you should start looking at
15 Calidria instead?
16      A.    I don't remember the sequence of
17 events, but I remember we were chatting and he
18 was pointing out -- he -- we were chatting about
19 it and he says, you know, this looks a lot like
20 what I recall -- you know, we should look at the
21 Calidria.
22            And I said, you know, Paul, that is a
23 great idea or something like that.  And we got
24 our Calidria standard out and started looking at
25 it.  We got photographs of it.  And sure enough,

1              REPORTER CERTIFICATE
2
                  This certification is valid only for a
3     transcript accompanied by my original signature
      and original required seal on this page.
4              I, Nicola Gengler, Certified Court
      Reporter, Registered Professional Reporter, in
5     and for the State of Louisiana, as the officer
      before whom this testimony was taken, do hereby
6     certify that WILLIAM E. LONGO, PHD, after having
      been duly sworn by me upon authority of R.S.
7     37:2554, did testify as hereinbefore set forth in
      the foregoing transcript; that this testimony was
8     reported by me in the stenotype reporting method,
      was prepared and transcribed by me or under my
9     personal direction and supervision, and is a true
      and correct transcript to the best of my ability
10    and understanding; that the transcript has been
      prepared in compliance with transcript format
11    guidelines required by statute or by rules of the
      board;
12             That I am informed about the complete
      arrangement, financial or otherwise, with the
13    person or entity making arrangements for
      deposition services; that I have acted in
14    compliance with the prohibition on contractual
      relationships, as defined by Louisiana Code of
15    Civil Procedure Article 1434 and in rules and
      advisory opinions of the board; that I have no
16    actual knowledge of any prohibited employment or
      contractual relationship, direct or indirect,
17    between a court reporting firm and any party
      litigant in this matter, nor is there any such
18    relationship between myself and a party litigant
      in this matter;
19             That I am not related to counsel or to
      the herein, nor am I otherwise interested in the
20    outcome of this matter.
               Dated this 12th day of May, 2021.
21
22
23
      _____
24          NICOLA GENGLER, CCR, CSR, RPR
25