# EXHIBIT 22

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-----------------------------------X


IN RE:   JOHNSON & JOHNSON

TALCUM POWDER PRODUCTS                MDL No.:
MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY                16-2738 (FLW)(LHG)
LITIGATION


THIS DOCUMENT RELATES TO
ALL CASES
-----------------------------------X
              VIDEOTAPED DEPOSITION OF
         PATRICIA G. MOORMAN, M.S.P.H., PH.D.
_____

             FRIDAY, JANUARY 25, 2019
                    9:04 A.M.
_____


             Taken by the Defendants
       at Cambria Hotel & Suites Durham
                2306 Elba Street
          Durham, North Carolina 27705


                     - - -
     Reported by Sophie Brock, RPR, RMR, RDR, CRR
                     - - -


              GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
                  deps@golkow.com

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 119

1             MS. PARFITT: Objection. Form.

2             THE WITNESS: No, I did not

3 specifically ask them for that information.

4 BY MR. JAMES:

5    Q. Have you relied on any epidemiology

6 substantiating a claim that fibrous talc is

7 carcinogenic?

8    A. I am not aware of any epidemiologic

9 literature that specifically addressed that question.

10    Q. Turning to your opinions on heavy metals,

11 Dr. Moorman, you have opined in your report about

12 chromium, nickel, and cobalt; correct?

13    A. Yes, I have.

14    Q. Yet your opinions in the MDL report about the

15 alleged presence of chromium, nickel, and cobalt in

16 talcum powder products is new in the sense that you

17 did not express that opinion in the Ingham case;

18 correct?

19             MS. PARFITT: Objection. Misstates her

20 testimony -- our testimony.

21             THE WITNESS: I think the gist of my

22 opinions are based on talcum powder products and

23 whatever constituents are in there; so talc, asbestos,

24 any fragrances or other contaminants that may be in

25 there. So it's based on the product.

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 125

1          You can answer.
2                    THE WITNESS: Okay. The opinion
3      I formed is based primarily on the epidemiologic data;
4      and the epidemiologic data is based on talcum powder
5      products, whatever is contained in them. And in study
6      after study, we see increased risk for ovarian cancer.
7      So whatever is contained in the talcum powder products
8      leads me to conclude that it can cause ovarian cancer.
9      BY MR. JAMES:
10         Q. And just to make sure that I understand your
11     answer --
12         A. Yes.
13         Q. -- if the talcum powder products were not
14     contaminated with asbestos, would you still reach the
15     general cause opinion that you've offered in this
16     case?
17                   MS. PARFITT: Objection. Form.
18                   THE WITNESS: I am -- I think that I've
19     answered the question that it's based on talcum powder
20     products, whatever is contained them -- in them. If
21     it is shown that there is no asbestos, that doesn't
22     change the fact that these dozens of epidemiologic
23     studies have led to the conclusion of increased risk.
24     BY MR. JAMES:
25         Q. And does that same answer hold true if

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 126

1  I asked you the same question with respect to heavy
2  metals, fibrous talc, and fragrance ingredients?
3              MS. PARFITT:  Objection.  Form.
4              THE WITNESS:  Yes.  I am basing my
5  opinion on the use of talcum powder products and
6  whatever are -- whatever their constituents are.
7  BY MR. JAMES:
8      Q.  As a professional epidemiologist -- is that a
9  fair way to say it?
10     A.  Yes.
11     Q.  Okay.  As a professional epidemiologist, part
12 of your day-in, day-out work is to look at literature
13 on purported associations and make conclusions about
14 the strengths or weaknesses of that literature;
15 correct?
16     A.  Yes.
17     Q.  And you have done that before you were
18 brought into the talc litigation on a variety of
19 different exposures or other things evaluated for
20 associations; correct?
21     A.  That is correct.
22     Q.  And setting aside the issue of talcum powder
23 products, have you ever before, in assessing other
24 exposures or other associations, relied upon company
25 documents to reach your conclusions?

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 295

1   A.  I think that we have talked about this, that
2   the literature on talc and ovarian cancer has been
3   accruing since 1982, and to say at what point I formed
4   my opinion that it causes ovarian cancer, I can't
5   pinpoint that date.
6        I can say that I have considered talc as a
7   risk factor for ovarian cancer for quite some time.
8   Just over my career, it just seems like it has been an
9   accumulating volume of evidence.
10  Q.  Did you hold that opinion before you were
11  retained as an expert in the talc litigation dating
12  back to the Ingham case?
13  A.  I think that, yes, I did.
14  Q.  But, sitting here today, you can't recall a
15  specific year or point in time in which you formed
16  that opinion?
17            MS. PARFITT:  Objection.
18            THE WITNESS:  I think that I've
19  answered that.  I can't pinpoint at what point that
20  I concluded it was a risk factor for ovarian cancer.
21  It's been something that I've considered a risk factor
22  for ovarian cancer for quite -- quite a number of
23  years.
24  BY MS. APPEL:
25  Q.  And when you refer to "it," Doctor, are you

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 296

1  referring to talcum powder products?
2      A.  Yes, because all of the literature is -- the
3  epidemiologic literature is based on talcum powder
4  products, whatever the women reported that they used.
5      Q.  So is it correct, Dr. Moorman, that you had
6  not formed an opinion as to whether pure talc is a
7  risk factor for forming ovarian cancer?
8              MS. PARFITT:  Objection.
9              THE WITNESS:  Again, my opinion is
10  based on the product that women have used, and my
11  understanding is that all of the products, they have
12  other constituents in them.  So they may contain, you
13  know, as we have discussed previously, fragrances, for
14  example.  We have also talked about that there are
15  other -- there's evidence to suggest other
16  constituents, such as asbestos or possibly heavy
17  metals.
18  BY MS. APPEL:
19      Q.  And as to those constituents, would you defer
20  to other experts to opine on them, based on the
21  examples you just provided, fragrances or heavy
22  metals?
23              MS. PARFITT:  Objection.  Form.
24              THE WITNESS:  You're asking me defer to
25  other estimates to opine on them in what sense?  Opine

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 297

1  on them in what sense?
2  BY MS. APPEL:
3      Q.  Sure.  Would you defer to other experts to
4  opine on whether those particular constituents in
5  isolation are a risk factor for ovarian cancer?
6              MS. PARFITT:  Objection.  Form.  Asked
7  and answered.
8              THE WITNESS:  Okay.  Those particular
9  constituents in isolation are a risk factor for
10 ovarian cancer.
11          I think that we have discussed this
12 previously today, that what is the evidence about, for
13 example, the heavy metals in isolation in ovarian
14 cancer and limited to -- limited epidemiologic data in
15 that regard.
16          So I don't know that I'm deferring to other
17 experts, but, as I phrased it earlier today, I --
18 the -- whether or not these substances are in talc
19 products, it adds to the biologic plausibility, but
20 the epidemiologic data is based on the talc products.
21 That's what the women were exposed to.
22 BY MS. APPEL:
23     Q.  Okay.  So in forming your opinion, you are
24 assuming that those constituents that you've
25 mentioned -- heavy metals, asbestos -- that they are

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 298

1  in the talc powder product that you've rendered an
2  opinion about today?
3           MS. PARFITT:  Objection.  Misstates her
4  earlier opinions.
5           You might want to read that.
6           THE WITNESS:  I -- I am not making,
7  really, any assumptions that these are in the
8  products.  My -- you know, my focus on the
9  epidemiologic data is based on the use of the talc
10 products, whatever is contained in them.
11 BY MS. APPEL:
12     Q.  In your report on page 30, you've indicated
13 that -- second paragraph, I'm reading from.  And I'll
14 give you a moment to turn to it.  (As read):
15             "For an association like talc and
16              ovarian cancer, the dose that is
17              most relevant is the amount of
18              talc that actually reaches the
19              fallopian tubes and ovaries."
20         Did I read that correctly?
21     A.  Yes, you did.
22     Q.  There is, in fact, though, no dose that has
23 been determined that actually reaches the fallopian
24 tubes and the ovaries in any of the studies that
25 you've relied upon; correct?