# EXHIBIT 24

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:  JOHNSON &                )  MDL No.
                                 )  16-2738 (MAS)(RLS)
JOHNSON TALCUM POWDER            )
                                 )
PRODUCTS MARKETING,              )
                                 )
SALES PRACTICES, AND             )
                                 )
PRODUCTS LIABILITY               )
                                 )
LITIGATION,                      )
                                 )
_____        )

Deposition of SHAWN LEVY, M.D., via Zoom Videoconference, taken at Blood Hurst & O'Reardon, 501 West Broadway, Suite 1490, San Diego, California, commencing at 9:11 a.m., on Wednesday, May 8, 2024, reported stenographically by Lisa Moskowitz, California CSR 10816, Nevada CCR 991, Washington CCR 21001437, Certified Realtime Reporter, RPR, CLR, NCRA Realtime Systems Administrator.

- - -

GOLKOW, a Veritext Division
877.370.3377 ph | 917.591.5672 fax

Page 118

1         Are you offering any opinions about
2    asbestos?
3         A.   I'm not sure I understand your
4    question.  Am I offering any opinions about
5    specifically asbestos in isolation or                11:19
6    asbestos in the context of this bio -- of
7    the biological plausibility?
8         Q.   Either one.
9         A.   I think my report contains an
10   opinion as to the totality of the components         11:19
11   within talc, of which asbestos is one.  If
12   that aligns with your question, then yes,
13   I'm offering -- but I'm offering an opinion
14   on the totality of talc and its components.
15   I have not performed an analysis to                  11:19
16   specifically break apart the relative
17   contributions of any components that may or
18   may not be present in talc.
19        Q.   Are you offering an opinion that
20   Johnson's Baby Powder contained talc?                11:20
21           ATTORNEY O'DELL:  Object to the
22       form.
23   BY ATTORNEY DAVIDSON:
24        Q.   I'm sorry.  That Johnson's Baby
25   Powder contained asbestos.  Sorry.                   11:20

```
                                               Page 121
 1         ATTORNEY DAVIDSON:  I added 2024
 2    so you wouldn't tell me that it was
 3    asked in 2019.  I need to know what
 4    the current opinions are.
 5         ATTORNEY O'DELL:  As you know, his      11:22
 6    opinions are outlined in his report.
 7         ATTORNEY DAVIDSON:  Thanks.
 8         THE WITNESS:  Again, my report did
 9    not attempt to separate any specific
10    components or subcomponents or              11:22
11    structures within.  It was more to
12    consider the biological plausibility
13    of talc as a whole, the product as a
14    whole.
15  BY ATTORNEY DAVIDSON:                         11:22
16     Q.  Great.  So you don't have separate
17  opinions about fragrances or heavy metals
18  either?
19         ATTORNEY O'DELL:  Objection to the
20    form.  Misstates his prior testimony.       11:23
21         THE WITNESS:  I mean, I -- again,
22    I have opinions on both of those
23    subjects, but are we asking about the
24    content of the report?  So within my
25    report, I did not specifically              11:23
```

```
                                              Page 122
 1      differentiate the relative risk or
 2      other components of any of those
 3      things because, again, that wasn't the
 4      request, nor did my literature review
 5      provide a clear separation of those      11:23
 6      subcomponents and then the testing of
 7      them relative to cancer.  Certainly my
 8      opinions based on the review of other
 9      materials, including the expert
10      reports of other witnesses, allow me    11:23
11      to generate an opinion in that area.
12  BY ATTORNEY DAVIDSON:
13      Q.  What do you mean by you have
14  opinions that are not set forth in your
15  report?                                     11:24
16          ATTORNEY O'DELL:  Objection.
17      That's not what he said.
18          ATTORNEY DAVIDSON:  That is what
19      he said.
20          ATTORNEY O'DELL:  No, it's not.     11:24
21          THE WITNESS:  I said my report had
22      the request of focusing in specific
23      areas, which it does.  But you're
24      asking -- you didn't ask if -- you
25      asked if I have an opinion.             11:24
```

Page 127

1    deposition because it's three hours later
2    here.  So maybe I did misunderstand you.
3    Why don't you explain what you were trying
4    to say.
5        A.   You were asking about fragrance         11:27
6    specifically separate from heavy metals,
7    specifically separate from other components
8    of talc.
9        Q.   Correct.
10       A.   And I was trying to explain that I     11:27
11   had, in detail, considered that as the
12   totality of the product.  In my report,
13   there are subreferences to other materials,
14   Dr. Crowley specifically, where there was
15   other opinions offered in more detail about    11:27
16   the components such as fragrances and their
17   potential to have carcinogenic compounds and
18   heavy metals and their known
19   carcinogenicity.  But I was not attempting
20   to tease those out and offer a relative risk   11:27
21   or a relative contribution to those --
22   meaning prioritizing which is the most
23   significant to least significant -- because
24   that wasn't part of my analysis.
25       Q.   So you mentioned them as some sort     11:28

Page 128

1  of background, but your opinions are about
2  talc as a whole?
3      A.  Yes, my opinions are -- were
4  focusing on the totality of the product.  I
5  wasn't asked to offer an opinion breaking          11:28
6  those things apart.
7      Q.  Okay.  Great.  That will shorten
8  this deposition.
9          ATTORNEY DAVIDSON:  Leigh, I was
10     not trying to confuse anything.  I was        11:28
11     absolutely certain he said not when
12     you heard him say was.
13         ATTORNEY O'DELL:  Maybe the
14     vagaries of a Zoom deposition and not
15     being able to hear; so maybe that's           11:28
16     what caused the confusion.
17         ATTORNEY DAVIDSON:  I would never
18     do something like that.  I want that
19     to be clear.
20         Why don't we take -- it's been            11:29
21     about an hour.  I can't remember if we
22     came back at 1:30.  Why don't we take
23     ten minutes or five.  Seven?
24         ATTORNEY O'DELL:  Yeah, five,
25     seven minutes, that would be great.           11:29