# EXHIBIT 10

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-----------------------------------X

IN RE:   JOHNSON & JOHNSON

TALCUM POWDER PRODUCTS              MDL No.:
MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY              16-2738 (FLW)(LHG)
LITIGATION

THIS DOCUMENT RELATES TO
ALL CASES
-----------------------------------X

VIDEOTAPED DEPOSITION OF
PATRICIA G. MOORMAN, M.S.P.H., PH.D.
_____

FRIDAY, JANUARY 25, 2019
9:04 A.M.
_____

Taken by the Defendants
at Cambria Hotel & Suites Durham
2306 Elba Street
Durham, North Carolina 27705

- - -
Reported by Sophie Brock, RPR, RMR, RDR, CRR
- - -

GOLKOW LITIGATION SERVICES
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 119

1                MS. PARFITT:  Objection.  Form.
2                THE WITNESS:  No, I did not
3    specifically ask them for that information.
4    BY MR. JAMES:
5        Q.  Have you relied on any epidemiology
6    substantiating a claim that fibrous talc is
7    carcinogenic?
8        A.  I am not aware of any epidemiologic
9    literature that specifically addressed that question.
10       Q.  Turning to your opinions on heavy metals,
11   Dr. Moorman, you have opined in your report about
12   chromium, nickel, and cobalt; correct?
13       A.  Yes, I have.
14       Q.  Yet your opinions in the MDL report about the
15   alleged presence of chromium, nickel, and cobalt in
16   talcum powder products is new in the sense that you
17   did not express that opinion in the Ingham case;
18   correct?
19               MS. PARFITT:  Objection.  Misstates her
20   testimony -- our testimony.
21               THE WITNESS:  I think the gist of my
22   opinions are based on talcum powder products and
23   whatever constituents are in there; so talc, asbestos,
24   any fragrances or other contaminants that may be in
25   there.  So it's based on the product.

Golkow Litigation Services - 1.877.370.DEPS

1                You can answer.

2                     THE WITNESS:  Okay.  The opinion
3    I formed is based primarily on the epidemiologic data;
4    and the epidemiologic data is based on talcum powder
5    products, whatever is contained in them.  And in study
6    after study, we see increased risk for ovarian cancer.
7    So whatever is contained in the talcum powder products
8    leads me to conclude that it can cause ovarian cancer.
9    BY MR. JAMES:
10        Q.  And just to make sure that I understand your
11   answer --
12        A.  Yes.
13        Q.  -- if the talcum powder products were not
14   contaminated with asbestos, would you still reach the
15   general cause opinion that you've offered in this
16   case?
17                    MS. PARFITT:  Objection.  Form.
18                    THE WITNESS:  I am -- I think that I've
19   answered the question that it's based on talcum powder
20   products, whatever is contained them -- in them.  If
21   it is shown that there is no asbestos, that doesn't
22   change the fact that these dozens of epidemiologic
23   studies have led to the conclusion of increased risk.
24   BY MR. JAMES:
25        Q.  And does that same answer hold true if

1  I asked you the same question with respect to heavy
2  metals, fibrous talc, and fragrance ingredients?
3           MS. PARFITT:  Objection.  Form.
4           THE WITNESS:  Yes.  I am basing my
5  opinion on the use of talcum powder products and
6  whatever are -- whatever their constituents are.
7  BY MR. JAMES:
8      Q.  As a professional epidemiologist -- is that a
9  fair way to say it?
10     A.  Yes.
11     Q.  Okay.  As a professional epidemiologist, part
12 of your day-in, day-out work is to look at literature
13 on purported associations and make conclusions about
14 the strengths or weaknesses of that literature;
15 correct?
16     A.  Yes.
17     Q.  And you have done that before you were
18 brought into the talc litigation on a variety of
19 different exposures or other things evaluated for
20 associations; correct?
21     A.  That is correct.
22     Q.  And setting aside the issue of talcum powder
23 products, have you ever before, in assessing other
24 exposures or other associations, relied upon company
25 documents to reach your conclusions?

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 295

1    A.  I think that we have talked about this, that
2  the literature on talc and ovarian cancer has been
3  accruing since 1982, and to say at what point I formed
4  my opinion that it causes ovarian cancer, I can't
5  pinpoint that date.
6        I can say that I have considered talc as a
7  risk factor for ovarian cancer for quite some time.
8  Just over my career, it just seems like it has been an
9  accumulating volume of evidence.
10   Q.  Did you hold that opinion before you were
11 retained as an expert in the talc litigation dating
12 back to the Ingham case?
13   A.  I think that, yes, I did.
14   Q.  But, sitting here today, you can't recall a
15 specific year or point in time in which you formed
16 that opinion?
17            MS. PARFITT:  Objection.
18            THE WITNESS:  I think that I've
19 answered that.  I can't pinpoint at what point that
20 I concluded it was a risk factor for ovarian cancer.
21 It's been something that I've considered a risk factor
22 for ovarian cancer for quite -- quite a number of
23 years.
24 BY MS. APPEL:
25   Q.  And when you refer to "it," Doctor, are you

 1   referring to talcum powder products?

 2        A.   Yes, because all of the literature is -- the

 3   epidemiologic literature is based on talcum powder

 4   products, whatever the women reported that they used.

 5        Q.   So is it correct, Dr. Moorman, that you had

 6   not formed an opinion as to whether pure talc is a

 7   risk factor for forming ovarian cancer?

 8             MS. PARFITT:  Objection.

 9             THE WITNESS:  Again, my opinion is

10   based on the product that women have used, and my

11   understanding is that all of the products, they have

12   other constituents in them.  So they may contain, you

13   know, as we have discussed previously, fragrances, for

14   example.  We have also talked about that there are

15   other -- there's evidence to suggest other

16   constituents, such as asbestos or possibly heavy

17   metals.

18   BY MS. APPEL:

19        Q.   And as to those constituents, would you defer

20   to other experts to opine on them, based on the

21   examples you just provided, fragrances or heavy

22   metals?

23             MS. PARFITT:  Objection.  Form.

24             THE WITNESS:  You're asking me defer to

25   other estimates to opine on them in what sense?  Opine

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 297

1  on them in what sense?
2  BY MS. APPEL:
3       Q.  Sure.  Would you defer to other experts to
4  opine on whether those particular constituents in
5  isolation are a risk factor for ovarian cancer?
6              MS. PARFITT:  Objection.  Form.  Asked
7  and answered.
8              THE WITNESS:  Okay.  Those particular
9  constituents in isolation are a risk factor for
10 ovarian cancer.
11          I think that we have discussed this
12 previously today, that what is the evidence about, for
13 example, the heavy metals in isolation in ovarian
14 cancer and limited to -- limited epidemiologic data in
15 that regard.
16          So I don't know that I'm deferring to other
17 experts, but, as I phrased it earlier today, I --
18 the -- whether or not these substances are in talc
19 products, it adds to the biologic plausibility, but
20 the epidemiologic data is based on the talc products.
21 That's what the women were exposed to.
22 BY MS. APPEL:
23      Q.  Okay.  So in forming your opinion, you are
24 assuming that those constituents that you've
25 mentioned -- heavy metals, asbestos -- that they are

Patricia G. Moorman, M.S.P.H., Ph.D.

Page 298

1  in the talc powder product that you've rendered an
2  opinion about today?
3           MS. PARFITT:  Objection.  Misstates her
4  earlier opinions.
5           You might want to read that.
6           THE WITNESS:  I -- I am not making,
7  really, any assumptions that these are in the
8  products.  My -- you know, my focus on the
9  epidemiologic data is based on the use of the talc
10 products, whatever is contained in them.
11 BY MS. APPEL:
12      Q.  In your report on page 30, you've indicated
13 that -- second paragraph, I'm reading from.  And I'll
14 give you a moment to turn to it.  (As read):
15              "For an association like talc and
16              ovarian cancer, the dose that is
17              most relevant is the amount of
18              talc that actually reaches the
19              fallopian tubes and ovaries."
20          Did I read that correctly?
21      A.  Yes, you did.
22      Q.  There is, in fact, though, no dose that has
23 been determined that actually reaches the fallopian
24 tubes and the ovaries in any of the studies that
25 you've relied upon; correct?