# EXHIBIT 9

Case 3:16-md-02738-MAS-RLS   Document 33119-11   Filed 08/22/24   Page 2 of 6
PageID: 234718

Richard Kradin, M.D.                                         Crudge vs. Amcord, Inc.

Page 79

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ALAMEDA
--o0o--

ROSALINO REYES and GEMMA REYES,
    Plaintiffs,
vs.                           No. RG20052391
JOHNSON & JOHNSON, et al.,
    Defendants.
_____/

TELEPHONIC DEPOSITION OF WILLIAM E. LONGO, Ph.D
Volume II
September 25, 2020

Job No: 4272256
Taken before JANICE L. BELCHER
CSR No. 12342
Pages: 79 - 248

Page 80

I N D E X
    PAGE
EXAMINATION BY MR. HYNES        83

E X H I B I T S        PAGE

EXHIBIT 5A  9/23/20 Kazan Correspondence    83
EXHIBIT 5B  Correspondence and Krekeler Report  83
EXHIBIT 18  Report, "Analysis of Johnson &   93
            Johnson Baby Powder and Valeant
            Shower to Shower Talc Products for
            Amphibole Asbestos, Chinese"

EXHIBIT 19  Report, "Rebuttal Expert Report,  96
            California Proposition 65, the
            Analysis of Chinese sourced Talcum
            Powder Used by Johnson & Johnson
            in their Baby Powder Products"
EXHIBIT 20  Citizen Depo Exhibit 30A        102
EXHIBIT 21  Citizen Depo Exhibit 30B        102
EXHIBIT 22  Weirick Calculation             103
EXHIBIT 23  Weirick Calculation             103
EXHIBIT 24  7/14/16 Seagrave Report         174
EXHIBIT 25  Sanchez Report                  190
EXHIBIT 28  9/24/20 Revisions to Titley Report  143
EXHIBIT 29  11/11/19 Revision No. 2, AMA report  225
EXHIBIT 30  Article (Not provided to reporter.)  231
EXHIBIT 31  Print-Out from FDA Website      238

Page 81

TELEPHONIC DEPOSITION OF WILLIAM E. LONGO, Ph.D

    BE IT REMEMBERED, that pursuant to Notice, and on the 25th day of September, 2020, commencing at the hour of 8:02 a.m. Pacific Standard Time, telephonically before me, JANICE L. BELCHER, a Certified Shorthand Reporter, appeared WILLIAM E. LONGO, Ph.D, produced as a witness in said action, and being by me previously sworn, was thereupon examined as a witness in said cause.

    --o0o--

TELEPHONIC APPEARANCES:
For the Plaintiffs:
    HENRY A. STEINBERG
    Kazan, McClain, Satterley & Greenwood
    55 Harrison Street, Suite 400
    Oakland, California  94607
    (877)995-6372
    hsteinberg@kazanlaw.com

For the Defendants Johnson & Johnson; Johnson & Johnson Consumer, Inc.; and Johnson & Johnson Philippines, Inc.:

    KEVIN HYNES
    King & Spalding, LLP
    1185 Avenue of the Americas
    34th Floor
    New York, New York  10036
    (212)556-2100
    khynes@kslaw.com

Page 82

For the Defendant O'Reilly Auto Enterprises, LLC:
    ALEX TAHERI
    Hugo Parker, LLP
    240 Stockton Street, 8th Floor
    San Francisco, California  94108
    (415)940-4072
    ataheri@hugoparker.com

For the Defendants Longs Drug Stores California LLC, on behalf of Longs Drug Stores California, Inc.; Safeway, Inc.; and Lucky Stores, Inc.:

    MEREDITH WHITE
    Barnes & Thornburg, LLP
    2029 Century Park East, Suite 300
    Los Angeles, California  90067
    (310)284-3884
    meredith.white@btlaw.com

Case 3:16-md-02738-MAS-RLS    Document 33119-11    Filed 08/22/24    Page 3 of 6 PageID: 234719

Richard Kradin, M.D.                                    Crudge vs. Amcord, Inc.

Page 83

```
 1            WILLIAM E. LONGO, Ph.D,
 2         previously sworn as a witness,
 3              testified as follows:
 4
 5                   EXAMINATION
 6   BY MR. HYNES:
 7       Q. Hi, Dr. Longo.  How are you this morning?
 8       A. Fine.
 9       Q. Dr. Longo, just a reminder, you're still under
10   oath, this is a continuation of your deposition in the
11   Reyes matter, okay?
12       A. Right, I understand that.
13          MR. HYNES:  Great.  And for the housekeeping
14   before we pick up where we left off the last time
15   around, I have marked two letters from Counsel for
16   Plaintiffs, as Exhibits 5A and 5B.
17          (Exhibits 5A and 5B marked for identification.)
18          MR. HYNES:  5A is a September 23rd letter from
19   Maegan, M-A-E-G-A-N, Wilborn of the Kazan office
20   enclosing Dr. Longo's September 23rd, 2020, supplement
21   to the MAS project M71095, Janet Tiley's Johnson's Baby
22   Powder Container Split, as well as an October 2003 Brake
23   Shoe Box, a Workplace Study, and also noting that
24   today's deposition would begin at 10:00 a.m. Eastern
25   time.
```

Page 84

```
 1   5B, is a letter dated September 24th, 2020,
 2   also from Maegan Wilborn at the Kazan office, linking to
 3   Dr. Mark Krekeler's Rule 26 expert report from 2018 in
 4   the New Jersey MDL.
 5   BY MR. HYNES:
 6       Q. Dr. Longo, have you reviewed Dr. Mark
 7   Krekeler's deposition in this case?
 8       A. Yes, and I reviewed it before, I had a copy of
 9   it before for the MDL, that's where that -- I believe is
10   where I saw that report before.
11       Q. Okay.  And so just to be clear, you did review
12   Mark Krekeler's deposition testimony in the Reyes case?
13       A. I didn't review the testimony, no.  I just
14   looked at the report.  I did note that Dr. Sanchez's
15   testimony on that Monday, from the Monday when I was
16   being deposed, so I reviewed all of that.
17       Q. Okay.  Okay.  And have you had any additional
18   communications with attorneys for Mr. Reyes, since the
19   Monday deposition?
20       A. Yes, sir.  Joe Satterley called me yesterday,
21   or -- and said he was going to send me a number of J&J
22   documents on testing for the Korean talc, like EBA's
23   testing, Foley's testing, there's Macron in there, and
24   worldwide market documents, I think it's from NASHT from
25   about 1974 on testing that was done, the Consumer
```

Page 85

```
 1   Council, I think it was in Japan, I've had that before,
 2   and they sent me the Patel testing on the Korean talc,
 3   but I already have that.  And then that was it really.
 4       Q. Okay.  Do you have a list of those?
 5       A. He sent me the Sanchez, he said they got a
 6   transcript and I got that yesterday.
 7       Q. Did he include a list of the documents that he
 8   sent you yesterday along that phone call?
 9       A. But I have them all printed out, take about
10   five minutes, I can go through them.
11          MR. HYNES:  No need to walk through or read off
12   them.  Counsel for -- Henry, we can request production
13   of those materials and reserve our right to continue the
14   deposition for questioning on those documents which were
15   provided to Dr. Longo, apparently yesterday, and not
16   disclosed to Defense Counsel until just now.
17   BY MR. HYNES:
18       Q. Dr. Longo, have you had any additional
19   communications with experts for plaintiffs in this case,
20   regarding this case, whether that's Dr. Madigan,
21   Dr. Compton, Dr. Krekeler, Lee Poye or Dr. Egilman?
22       A. No, sir.
23          MR. STEINBERG:  I'm going to jump in.  I
24   apologize, my phone was on mute.  We can meet and
25   confer, of course, these are J&J documents.  J&J is
```

Page 86

```
 1   aware of its own documents, these documents have been at
 2   issue in other cases so there should be no surprise to
 3   J&J, but of course we can met and confer.
 4          MR. HYNES:  Thanks, Henry.  The issue is
 5   Dr. Longo's review, reliance and opinions related to
 6   those documents, and we were not aware that Dr. Longo
 7   had reviewed those documents or may have formulated
 8   opinions regarding those documents, which we would have
 9   been keyed into had we been provided with information
10   that he had been provided with those documents, but so
11   yes, this is something we can meet and confer about.
12          MR. STEINBERG:  I'm going to reserve further
13   response to off-the-record time.
14   BY MR. HYNES:
15       Q. Dr. Longo, we were talking about Exhibit 17
16   when we left off the last time around.  This is the
17   June 2019 Revision No. 1, for the baby diapering study
18   No. 2; are you with me?
19       A. I am with you.
20       Q. Okay.  And we were talking when we left off
21   about some PLM analyses that were performed on several
22   of the Round 1 samples.  We had bench sheet for sample
23   M65329-041 and a chain of custody form that suggested
24   that in addition to that sample, sample M65329-043, and
25   013 had also then analyzed that PLM.  Do you recall the
```

2 (Pages 83 to 86)

Case 3:16-md-02738-MAS-RLS   Document 33119-11   Filed 08/22/24   Page 4 of 6
PageID: 234720

Richard Kradin, M.D.                                    Crudge vs. Amcord, Inc.

Page 127

1  tremolite-actinolite detected and no cleavage fragment.
2        If we go to the second sample, 002, there's
3  nothing detected in the ISO, but the Blount method does
4  have actinolite/tremolite observed, it's on the PLM
5  sheet, and actinolite tremolite cleavage fragments, and
6  I have the dispersion staining for 1, 2, 3, 4 -- 4
7  different tremolite-actinolite structures, and I have to
8  go back and research because this was actually Chinese.
9  This would be the first time we ever found amphibole
10 asbestos in a Chinese sample.  Every other Blount sample
11 that we've ever done in a product, not only Johnson &
12 Johnson, but Chanel and others, were Chinese, the Blount
13 method has always been negative.  So it's interesting to
14 me.
15       But, the error is mine.  The PLM analysis shows
16 that the Blount was positive for Sample 2 and negative
17 for Sample 1, so I have to do a supplement on this.
18       MR. HYNES:  Okay.  All right.  Couple things.
19 First off, with respect to my question about PLM
20 analysis, I'll object to the nonresponsive portions and
21 move to strike.
22       On the Korean or Philippine container data, we
23 request production of that data, I will ask you a few
24 questions about that momentarily.
25       //

Page 128

1  BY MR. HYNES:
2     Q.  But first, you mentioned that in order to see
3  something that -- in order to see chrysotile PLM in one
4  of these cosmetic talc preparations, an analyst needs to
5  have appropriate to training in order to see it, and my
6  question is to you is, the person who is performing this
7  PLM analysis for the 72 samples that we're talking about
8  that we're part of Exhibit No. 11, was that mainly or
9  entirely Paul Hess?
10    A.  That was entirely Paul Hess.
11    Q.  Okay.  How many years of experience does he
12 have analyzing materials like PLM?
13    A.  30 years.
14    Q.  Okay.  And is it your testimony that in 2018,
15 when he was performing those PLM analyses on the 72
16 samples with refractive index oil of 1.550, he would not
17 have adequate training or experience to identify
18 chrysotile if it was present in those 72 samples?
19    A.  No.  You're taking it out of context.  We never
20 we're analyzing for chrysotile, and you can't take this
21 10 to 20 minute just verify that the fibrous talc is
22 there, that we were analyzing the sample in 1.550.
23       Cosmetic talcs are milled extensively.  Our
24 second analyst that we did train, he has over 30 years
25 experience, and when he took the McCrone cards, it was

Page 129

1  back in the time when Walter McCrone taught it himself,
2  and they were dealing with asbestos added products,
3  where the chrysotile is these very large bundles, you
4  know, like the silly examples that Dr. Sanchez uses when
5  he says this is what it ought to look like.
6        It wasn't until we started, we looked at the
7  calidria and used that as a standard where the analyst
8  now knew that it had asbestos in it, but the Calidria
9  bundles, the size ranges in there are very similar to
10 the size ranges of the chrysotile in the sample.  So
11 they had to know what to look for.  And I don't think,
12 and so we could train any analyst and they would have to
13 have decades of experience.  And of course you have to
14 have the kind of setup we have with our PLM scopes, so
15 this is reproducible.
16       But those MDL samples, to say we looked at them
17 in 1.550 and didn't find chrysotile, you know, that's a
18 misrepresentation of what happened.
19    Q.  With respect to the Korean or the Philippine
20 market containers, so you're saying that the table I'm
21 looking at, Exhibit 10, page 8, Table 1, if we look at
22 that, so the narrative above where -- I guess, let's
23 start there, let's start at the narrative.
24       Page 3 of 15, the narrative discussing sample
25 002, specifically notes, the second sentence there

Page 130

1  reads:  The Blount, slash, PLM with heavy liquid
2  separation was also non-detect for both amphibole
3  asbestos and cleavage fragment, period.
4        So it's your testimony that that is not
5  accurate; is that correct?
6     A.  That is not accurate.  I screwed this report
7  up.  The analytical data shows that 001 was below
8  detection of Blount, and 002 tremolite-actinolite
9  bundles were detected, observed, and photographed.  So
10 the original data always trumps anything that I have
11 written.
12       I can fix this pretty quickly and then send it
13 to my client.  I don't know what time we're going to get
14 done, but I've just got to change that and -- and then
15 send it to my client, unless we go --
16    Q.  So --
17    A.  -- then you'll have to wait 'til Monday.
18    Q.  So No. 1 is not accurate then, right?
19    A.  Table 1, Table 1 is not accurate.  Table 1
20 should read -- essentially Table 1 needs to be reserved
21 on the Blount.
22    Q.  Okay.  Who did the quality control for this
23 report?
24    A.  On reading the report itself?
25    Q.  On reading the report and making sure that the

Case 3:16-md-02738-MAS-RLS   Document 33119-11   Filed 08/22/24   Page 5 of 6
PageID: 234721

Richard Kradin, M.D.                                    Crudge vs. Amcord, Inc.

Page 227

1   Q. Okay. So it seems like according to this
2   sheet, those three aliquots of sample D58 were prepared
3   on August 30, 2019, right?
4       A. Let me look. 8-30-2019, that's what it would
5   state.
6       Q. Right. Then if we go to the next page, page 38
7   of the PDF, all the samples there are redacted, but you
8   can see on that right margin, again, there's two dates,
9   the 8-30-2019 continues down. And, I don't know, about
10  ten samples down there's another line, and then a
11  9-5-2019 appears for the samples underneath that, right?
12      A. Correct.
13      Q. Okay. So then if we turn to the next page,
14  page 39 of the PDF, and we have three samples numbered
15  NB19-645, 646, and 647, right?
16      A. That's correct.
17      Q. And those three samples appear to have been
18  prepared on September 5th, 2019, right?
19      A. Oh, I see. He wrote the "9" upside down.
20  That's correct.
21      Q. And then if we turn to page 50 of the PDF, it's
22  a sheet labeled "Edit TEM NOB blank result."
23         Are you with me?
24      A. I'm getting there. Let's see. Page 50, yeah,
25  yes.

Page 228

1   Q. All right. And so NB19-645 is one of those
2   blanks that was prepared on September 5th, right?
3       A. Yes.
4       Q. It was analyzed on September 18th, right?
5       A. That's correct.
6       Q. Okay. And page 51 of the PDF, it's the second
7   blank, blank No. NB19-646. That was also prepared on
8   September, 5th right?
9       A. Correct.
10      Q. And it was analyzed on September 18th, right?
11      A. Correct.
12      Q. And then we've got sample NB19-647 on page 52
13  of the PDF. That's the third blank that was prepared on
14  September 5th, right?
15      A. Yes.
16      Q. And that's analyzed on September 18th, right?
17      A. That's correct.
18      Q. Okay. So the three blanks here were prepared
19  on September 5th and analyzed on September 18th, right?
20      A. Correct.
21      Q. And if we jump back up to page 37, the three
22  aliquots of Sample B58 were prepared on August 30th,
23  right?
24      A. Just give me a second.
25         That's correct.

Page 229

1   Q. All right. Put that to the side.
2          And so AMA identified trace levels of
3   chrysotile by TEM without separation in two of those
4   three aliquots, right?
5       A. That's correct.
6       Q. And as we talked about before, your laboratory
7   has not replicated those results using TEM without
8   concentration to identify the presence of chrysotile in
9   Chinese source Johnson's Baby Powder containers,
10  correct?
11      A. That's correct.
12      Q. Okay. Let's talk about a little bit more about
13  the PLM chrysotile analyses. So in some of your more
14  recent reports you have been citing, it looks like
15  McCrone and what's his name Shu-Chun Su?
16      A. Dr. Su.
17         MR. HYNES: Yeah. So it's -- I'll spell it for
18  the court reporter. It's S-H-U, hyphen, C-H-U-N; last
19  name is Su, S-U.
20  BY MR. HYNES:
21      Q. And, Dr. Longo, are you familiar with Dr. Su?
22      A. I've met him. I mean, he was an auditor and
23  he's very well respected, and I'm sure every lab in the
24  country has the Su, you know, the Su tables for both PLM
25  and TEM like we do.

Page 230

1   Q. So he's a well respected sort of expert on PLM
2   methods and analysis, sort of what his background is?
3       A. Yeah, I agree.
4       Q. Okay. And do you have the 2003 paper that you
5   cite available to you?
6       A. I do.
7       Q. So I guess let's look at that and your
8   discussion, if we can use the Exhibit No. 28, where you
9   discussed the Su information here.
10         So if we're looking at your second supplement
11  to the Bentley report from September 23rd, which is
12  Exhibit 28 here, you discuss a little bit about this
13  article on page 14 of that report, right?
14      A. That's correct.
15      Q. And say --
16      A. That's actually --
17      Q. Go ahead.
18      A. That's on page 13?
19      Q. Starts on 13.
20      A. Oh right.
21      Q. Yeah, and then it goes down and then at the
22  very top it's page 14, you have sort of a full paragraph
23  on the particular article, right?
24      A. Yes.
25      Q. So we were talking before, and I guess we can

Case 3:16-md-02738-MAS-RLS   Document 33119-11   Filed 08/22/24   Page 6 of 6
PageID: 234722

Richard Kradin, M.D.                                        Crudge vs. Amcord, Inc.

| Page 247 | Page 248 |
|---|---|
| 1  SIGNATURE OF DEPONENT | 1  REPORTER'S CERTIFICATE |
| 2 | 2 |
| 3  I, the undersigned, WILLIAM E. LONGO, Ph.D, do | 3  I, JANICE L. BELCHER, do hereby certify: |
| 4  hereby certify that I have read the foregoing deposition | 4  That WILLIAM E. LONGO, Ph.D, in the foregoing |
| 5  and find it to be a true and accurate transcription of | 5  deposition named, was present and by me sworn as a |
| 6  my testimony, with the following corrections, if any: | 6  witness in the above-entitled action at the time therein |
| 7 | 7  specified; |
| 8 | 8  That said deposition was taken before me at said |
| 9 | 9  time, and was taken down in shorthand by me, a |
| 10 | 10  Certified Shorthand Reporter of the State of California, |
| 11 | 11  and was thereafter transcribed into typewriting, and |
| 12 | 12  that the foregoing transcript constitutes a full, true |
| 13 | 13  and correct report of said deposition and of the |
| 14 | 14  proceedings that took place; |
| 15 | 15  IN WITNESS WHEREOF, I have hereunder subscribed my |
| 16 | 16  hand this 5th day of October, 2020. |
| 17 | 17 |
| 18 | 18 |
| 19 | 19 |
| 20 | 20 |
| 21 | 21 |
| 22 | 22 |
| 23 | 23  <%12163,Signature%> |
| 24 | 24  JANICE L. BELCHER, CSR No. 12342 |
| 25  WILLIAM E. LONGO, Ph.D, Date | 25  State of California |