# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, New York 10036

Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Kristen Renee Fournier
Partner
Direct Dial: +1 212 790 5342
kfournier@kslaw.com

August 26, 2024

**VIA ELECTRONIC FILING**

The Honorable Michael A. Shipp
United States District Judge
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, New Jersey 08608

      Re:    **Supplemental Authority in Support of Defendants' Objections to Special Master Order No. 25 (ECF No. 32987),** *In re J&J Talcum Powder Prods. Marketing, Sales Practices, & Prods. Liab. Litig.*, **3:16-md-02738-MAS-RLS**

Dear Judge Shipp:

      I write on behalf of Defendants Johnson & Johnson and LLT Management, LLC to provide the Court with the recent decision in *Burkhart v. Genworth Financial, Inc.*, C.A. No. 2018-0691-NAC (Del. Ch. Aug. 21, 2024). The decision is relevant to whether litigation financing agreements and related materials are discoverable (i.e., relevant and nonprivileged)—the very issue at the heart of Defendants' Objections to Special Master Order No. 25 (ECF No. 32987), which remain pending before the Court.

      The *Burkhart* plaintiffs—a putative class of insureds under long-term care policies and the agents who sold those policies—obtained litigation financing to fund their litigation against a group of underwriters. Defendants sought production of the litigation financing agreement and of unredacted fee agreements between plaintiffs and their counsel. Plaintiffs refused to provide the information, and a motion to compel followed.

Hon. Michael A. Shipp
August 26, 2024
Page 2

      In granting defendants' motion to compel, Vice Chancellor Cook of the Delaware Court of Chancery found that litigation financing information is relevant because litigation financing can create potential conflicts of interest between plaintiffs' counsel and their clients, particularly in representative litigation. Given these concerns, the court allowed discovery into litigation financing information in order to assess the potential for a conflict between plaintiffs and their counsel. Importantly, the court expressly rejected plaintiffs' contention that litigation financing information was irrelevant because the funders purportedly exercised no control over the litigation, holding that

> [N]ot all control takes an overt form that is set forth expressly in the terms of a contract. Indeed, funders may engage in less obvious forms of control. The potential for funders to exercise discrete control over litigation might arise in a variety of ways that I need not delve into here.

Slip Op. at 8–9 (cleaned up). The court also rejected plaintiffs' work-product arguments, ordering production of complete and fully unredacted copies of the funding agreement and the fee agreements between plaintiffs and plaintiffs' counsel.

      The same considerations Vice Chancellor Cook recognized militate in favor of ordering production of litigation funding information in this case. As in *Burkhart*, the talc-related actions pending in this District include putative class actions, where litigation funding is undoubtedly relevant to class counsel's adequacy. Even if that were not the case, considering the 60,000-plus claims pending in this MDL, plaintiffs' counsel (and particularly Beasley Allen, given its position on the Plaintiffs' Steering Committee) is operating in a representative capacity vis-à-vis all Plaintiffs. As Vice Chancellor Cook presciently acknowledged, concerns over improper control by funders—present in all cases where litigation funding is an issue—are especially prevalent in representative litigation, which is "especially ripe for a third-party funder to exercise improper control over the litigation." Slip Op. at 7.

      Like the court in *Burkhart*, the Court should compel discovery of the litigation funding that fuels this MDL.

Respectfully submitted,

*/s/ Kristen Renee Fournier*

Kristen Renee Fournier

cc: All Counsel (via ECF)