# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates To All Cases* | )<br>)<br>)<br>)  MDL No. 2738 (MAS) (RLS)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' REQUEST FOR ORDER COMPELLING PRODUCTION OF EXPERT WITNESS INVOICES

**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Tel.: (973) 549-7000

**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: (212) 556-2100

*Attorneys for the Johnson & Johnson Defendants*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................3

ARGUMENT ..............................................................................................5

    I.    PLAINTIFFS' REQUEST IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE. ..................................................................5

    II.   PLAINTIFFS' CITED AUTHORITY DOES NOT COUNSEL FOR PRODUCTION OF DEFENSE EXPERT INVOICES BEYOND THOSE IN THE MDL ..................................................................10

CONCLUSION .........................................................................................12

i

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Behler v. Hanlon*,
    199 F.R.D. 553 (D. Md. 2001) ................................................................... 6, 7, 8

*Bowers v. NCAA*,
    Civ. No. 97-2600, 2008 WL 1757929 (D.N.J. Feb. 27, 2008) ........................... 5

*Bridges v. O'Hearn*,
    No. 3:10cv1065, 2012 U.S. Dist. LEXIS 6910 (M.D. Pa. Jan. 20,
    2012) ............................................................................................................. 11

*Campos v. MTD Prod., Inc.*,
    No. 2:07-0029, 2009 WL 920337 (M.D. Tenn. Apr. 1, 2009) ........................... 7

*First Choice Armor & Equipment, Inc. v. Toyobo America, Inc.*,
    273 F.R.D. 360 (D. Mass. 2011) ............................................................. 10, 11

*Good v. FirstEnergy Corp.*,
    2016 U.S. Dist. LEXIS 15311 (M.D. Pa. Feb. 9, 2016) .................................. 11

*McCracken v. DePuy Orthopaedics, Inc.*,
    No. 11 DP 20485, 2013 WL 12141334 (N.D. Ohio July 26, 2013) ............... 7, 8

*In re Novo Nordisk Sec. Litig.*,
    530 F. Supp. 3d 495 (D.N.J. 2021) .................................................................. 5

*Pub. Serv. Enter. Grp. Inc. v. Philadelphia Elec. Co.*,
    130 F.R.D. 543 (D.N.J. 1990) ......................................................................... 6

*Reed v. Cline*,
    No. 1:08-CV-00473-SEB, 2010 WL 3829459 (S.D. Ind. Sept. 24,
    2010) ............................................................................................................... 6

*Young v. Pleasant Valley Sch. Dist.*,
    No. 3:07-CV-854, 2011 WL 3678691 (M.D. Pa. Aug. 20, 2011) ..................... 6

**Statutes, Rules & Regulations**

Civ. R. 7.1 ................................................................................................................. 1

Civ. R. 37.1 ............................................................................................................... 1

Fed. R. Civ. P. 26.......................................................................................................5, 9

Fed. R. Civ. P. 26(a)(2)(B)...............................................................................................6

Fed. R. Civ. P. 26(b) .......................................................................................................5

Fed. R. Civ. P. 26(b)(1)...............................................................................................5, 9

## **INTRODUCTION**

Plaintiffs have proffered over two dozen expert witnesses in the six bellwether cases, and over a dozen of them were deposed or re-deposed in 2024 alone. In each case, Defendants' notice of deposition called for production of "records of payments of any kind received by You from any source related to your work as a testifying expert regarding Talc or the Talc Products in connection with claims or litigation."[1] Plaintiffs consistently objected to that request as "overly broad" and agreed only to produce "any invoices related to the MDL talcum powder litigation." But now, having taken the position that their own experts need not produce invoices from litigation other than this MDL, Plaintiffs demand that Defendants' experts produce invoices not only for non-MDL ovarian cancer cases, but also for cases that do not even involve the alleged injury at issue in this MDL.[2]

The PSC argues in effect that defense experts' total compensation across all talcum powder products cases is the proper number to show this Court and future

---

[1] For experts who had been deposed previously in this MDL, this request was qualified to seek only records "since the date of your last MDL deposition."

[2] The PSC failed to raise the issues addressed herein during the course of expert discovery as dictated by the governing scheduling order (Dkt. No. 32991), failed to confer as required by L. Civ. R. 37.1 before filing the letter-request, and failed to comply with the requirements for a motion in L. Civ. R. 7.1 and 37.1 by presenting this request as an informal letter (ECF No. 33052). In addition to the substantive arguments raised herein, Defendants object to the PSC's request as procedurally improper.

juries when arguing that the experts are biased. The PSC claims to have produced all invoices in its own present possession – conveniently limited to MDL cases and omitting the myriad invoices from other talcum powder products cases, ***even where those invoices document work that directly contributed to the experts' MDL opinions*** – but effectively ask that the Defendants do more. This request is inherently asymmetric and prejudicial. If Plaintiffs get their way, Defendants will only be privy to Plaintiffs' experts' compensation from firms that have primarily pursued their cases in the MDL, not even the full breadth of invoices for all work that made up their MDL opinions and reports, but Plaintiffs will have access to and the ability to present evidence concerning all work related to talcum powder products that Defendants' experts have undertaken. Thus, what the PSC really seeks is fuel for an apples-to-oranges comparison that makes defense experts seem far more highly compensated – and biased – than Plaintiffs' experts.

Defendants request that the Court deny Plaintiffs' informal request and limit the discovery to the material Plaintiffs have otherwise been providing in connection with their own experts, i.e., invoices for work undertaken in connection with the MDL bellwether cases. Alternatively, if the Court is inclined to go further, the Court should rule symmetrically and require (1) that Plaintiffs first produce **all** invoices from their experts for **all** talcum powder work, not just the invoices that Ms. O'Dell and Ms. Parfitt have in their possession; and (2) only after those invoices

2

have been received and it is clear that no additional and asymmetrical and arbitrary line drawing has occurred, Defendants to produce the same. Regardless of how the Court rules on Plaintiffs' informal request, the Court's order should place symmetric burdens on the parties and follow the order of production contemplated by the governing scheduling order (Dkt. No. 32991) – Plaintiffs should be required to produce their experts' invoices from a specified scope of cases (to be defined by reference to the *experts*' roles in those cases, and not by counsel's or the parties' roles), and Defendants should be required to produce invoices from the same scope of cases only after Plaintiffs have complied.

## BACKGROUND

The PSC claims – without evidentiary support – that "Defendants already have the invoices for Plaintiffs' experts" (ECF No. 33052 at 1). However, its next line is telling: "in *many* instances, Plaintiffs have provided J&J with all Plaintiffs' expert witness invoices *in Plaintiffs counsel's possession*." (*Id.*, emphasis added.) This careful wording reflects the reality – the PSC has produced, for a subset of its experts, the invoices that the PSC happened to have in its possession already. The PSC has not in fact produced all of its experts' invoices for all ovarian cancer and mesothelioma cases, from all counsel who have retained and worked with these same experts across the country, including cases not selected for MDL bellwether work up.

3

Indeed, the PSC has not even produced all of the invoices for work on which its experts base their opinions *in this MDL*. For example, the PSC's expert Dr. William Longo states in his MDL report that he has served "as an expert witness regarding [his] analysis of cosmetic talc powder products in more than 30 cases by courts across the country in 8 states." (Ex. A to Certification of Susan M. Sharko ("Sharko Cert."), May 2, 2024 Supplemental Expert Report of W. Longo, Ph.D., at 5.) Yet Dr. Longo refused to say at deposition how much he had been compensated even for conducting the tests on which his *MDL report* was based, citing confidentiality concerns due to the involvement of counsel other than the PSC and refusing "unless we can come to an agreement . . . that these invoices were produced from both sides." (Sharko Cert. Ex. B, May 2, 2024 Deposition of William Longo, Ph.D., at 180:15-184:6.). When asked how much money his firm had been paid "by plaintiffs' lawyers for the PLM chrysotile studies that are contained in Dr. Longo's fourth supplemental MDL report dated April 29th, 2024," Dr. Longo responded that he "would just be speculating. I have no idea on what the amounts would be for all - - for the different plaintiffs that we've done work for." (*Id*. at 183:23-184:13.)

Likewise, the PSC has repeatedly objected to J&J's document requests for expert invoices reflecting all work on "talc litigation" as overly broad and beyond the scope of discovery before agreeing to produce "invoices related to the MDL talcum powder litigation." (*E.g.*, Sharko Cert. Ex. C, PSC's May 1, 2024 Responses

4

and Objections to Longo Notice of Deposition, at 3 [Response to Request No. 2].) Yet now, by their informal request for Court intervention, Plaintiffs seek to compel the Defendants to do the very thing they themselves refused to do. This double standard should not be countenanced by the Court.

## ARGUMENT

### I. PLAINTIFFS' REQUEST IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*." Fed. R. Civ. P. 26(b)(1) (emphasis added). In considering whether a request for discovery is proportional, the Court should consider among other things "the importance of the issues at stake in the action," "the parties' relative access to relevant information," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Pursuant to Rule 26, courts have broad authority to impose limits on otherwise relevant discovery when the discovery sought is unreasonably cumulative, or where the burden or expense of discovery outweighs its likely benefit." *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 504 (D.N.J. 2021) (citing Fed. R. Civ. P. 26(b)). "This rule of proportionality 'guard[s] against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.'" *Id.* (quoting *Bowers v. NCAA*, Civ. No. 97-

5

2600, 2008 WL 1757929, at *4–6 (D.N.J. Feb. 27, 2008)).  Thus, for example, courts may properly exclude evidence from the scope of discovery where its "marginal relevance" does not justify production.  *See, e.g.*, *Pub. Serv. Enter. Grp. Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 554 (D.N.J. 1990).

Although "Rule 26(a)(2)(B) requires disclosure of the compensation received by a retained expert in the particular case at issue, and counsel routinely bring this out during cross-examination when questioning an opposing expert witness," discovery of an expert's total compensation from serving as an expert "should not be ordered routinely."  *Behler v. Hanlon*, 199 F.R.D. 553, 561-62 (D. Md. 2001).  "[L]egitimate issues are raised" when a party seeks evidence about an expert's compensation other than for the case at issue solely to prove bias, and so courts can and should require a showing as to "why less intrusive financial information would not suffice."  *Id.* at 561; *see also Young v. Pleasant Valley Sch. Dist.*, No. 3:07-CV-854, 2011 WL 3678691, at *1-2 (M.D. Pa. Aug. 20, 2011) (collecting cases) (where expert had already disclosed his compensation in the case at issue, the opposing party's demand for additional information about his compensation in other cases was "needlessly intrusive especially in light of the information's marginal relevance"); *Reed v. Cline*, No. 1:08-CV-00473-SEB, 2010 WL 3829459, at *2 (S.D. Ind. Sept. 24, 2010) (rejecting request for additional disclosures into expert's compensation where "further disclosures . . . would invade his privacy without providing any

6

additional helpful information relevant to his bias as an expert witness"). Courts recognize that requiring disclosure of an expert's compensation other than for work in the case at issue has a "chilling effect" that should be considered when determining whether to permit discovery that is meant solely to probe the expert's bias. *See, e.g.*, *Behler*, 199 F.R.D. at 561-62; *Campos v. MTD Prod., Inc.*, No. 2:07-0029, 2009 WL 920337, at *5 (M.D. Tenn. Apr. 1, 2009).

Moreover, in the MDL context, there is an inherent risk that showing even an expert's total compensation across the MDL itself – without factoring in the expert's compensation in related non-MDL cases – can be confusing or misleading for jurors. *See, e.g.*, *McCracken v. DePuy Orthopaedics, Inc.*, No. 11 DP 20485, 2013 WL 12141334, at *3 (N.D. Ohio July 26, 2013) ("The amount of fees paid to Defendants' experts in this specific litigation is a proper subject of inquiry at trial. However, to allow Plaintiff to inquire on the totality of fees generated in this MDL would, in this Court's view, open the door to misleading information and juror confusion."). Evidence of an expert's non-MDL compensation can lead jurors to speculate as to the existence of other lawsuits. Indeed, if jurors hear the parties experts' compensation across all talcum powder products cases without knowing or assuming that the figures encompass other cases, they may erroneously infer that the parties' willingness to spend those figures means the case at issue must be meritorious.

7

The PSC argues that an expert's total compensation – for all talcum powder products litigation, apparently – is relevant to probe the expert's bias. But Defendants have already produced all of their experts' invoices for work performed in the MDL.³ The PSC already has the means to show jurors how much the opposing experts have been paid for work on the cases that are before them. It never explains why that information does not suffice, let alone demonstrate how the *additional* information it now seeks would add to the analysis.

In fact, given the current state of the parties' relative disclosures, granting the PSC's request without ordering analogous discovery from the PSC's own experts would affirmatively interfere with the bias analysis and introduce the "confusion, distraction and even prejudice" that concerned the *Behler* court. 199 F.R.D. at 561-62; *see also McCracken*, 2013 WL 12141334, at *3. As illustrated by the example of Dr. Longo, Defendants do not even have the ability to show the jury the total amount that the PSC's experts have been compensated for formulating the opinions they seek to offer in the MDL. What the PSC wants now is to exacerbate that asymmetry even more, learning defense experts' total compensation across all cases

---

³ The PSC does not argue otherwise. Indeed, its only complaint is that "J&J is now insisting on producing invoices related to the work performed by its experts *for this MDL only*." (ECF No. 33052 at 1.)

8

without disclosing that information for its own experts. That is the "need" to which the discovery at issue must be proportional.

Here the PSC already has access to the same level of information as Defendants – if not more – regarding opposing experts' compensation. They do not need to obtain still more information in order to remedy any asymmetry; in fact, they seek to *create* or *exacerbate* an asymmetry in their favor. And Rule 26 requires the Court to consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." There is no benefit to allowing the one-sided discovery the PSC seeks, whereas permitting the discovery would not only impose a burden on Defendants to collect, redact, and produce invoices in myriad cases but then to seek exclusion of its experts' total compensation at trial and/or to face prejudice when Plaintiffs draw a misleadingly asymmetric contrast between defense expert total compensation and plaintiff expert MDL-only compensation.

Defendants respectfully submit that the PSC does not even have a legitimate need for the non-MDL invoices they seek in light of the fact that the parties presently have symmetric means of demonstrating compensation-related bias in opposing experts. But even if there were a legitimate need, the PSC has offered no argument or evidence showing that the need is substantial enough to justify production under the Rule 26(b)(1) factors without ordering the PSC to produce analogous

9

documentation regarding its own experts. The Court should therefore deny the PSC's letter-request.

## II.   PLAINTIFFS' CITED AUTHORITY DOES NOT COUNSEL FOR PRODUCTION OF DEFENSE EXPERT INVOICES BEYOND THOSE IN THE MDL.

None of the cases cited by the PSC address the peculiar proportionality considerations involved here. To be clear, the PSC asks the Court to order Defendants to produce its experts' invoices, without date limitation, across a mass tort litigation spanning numerous jurisdictions with differing confidentiality rules (with no apparent exception for work in reviewing cases for which the experts have not been disclosed), regardless whether that work even pertains to the injuries alleged in this MDL. And it completely ignores the fact that granting that request, without ordering Plaintiffs' own experts to produce that same scope of invoices, would serve not a legitimate purpose but rather just enables Plaintiffs to present a misleading and prejudicial comparison of the parties' experts' relative compensation. Yet most of the PSC's authority focuses on trial admissibility rather than on discoverability, and none of the cases address the peculiar burdens, complexities, or asymmetries inherent in the PSC's request.

For example, the PSC cites *First Choice Armor & Equipment, Inc. v. Toyobo America, Inc.*, 273 F.R.D. 360, 361 (D. Mass. 2011), for the proposition that evidence of compensation in the case at bar "and related cases" was relevant to

10

demonstrate possible bias. But that case recognized that a party "must" disclose the compensation to be paid to its experts for study and testimony in the case at hand, whereas "some courts" additionally "allow" discovery into the expert's compensation in other cases. *Id.* This contrast implicitly recognizes the difference in value and burden for producing an expert's compensation in the case at hand versus in other litigations with more remote connection, if any, to the action in which the request is made.

A similar thread undergirds another case cited by the PSC – *Good v. FirstEnergy Corp.*, 2016 U.S. Dist. LEXIS 15311, at *15-16 (M.D. Pa. Feb. 9, 2016). *Good* addressed the trial admissibility of unspecified "evidence regarding fees received by defendant's expert" from more than just one year prior to trial. In wrestling with that issue, *Good* discussed a relevant case that the PSC ignores: *Bridges v. O'Hearn*, No. 3:10cv1065, 2012 U.S. Dist. LEXIS 6910, at *9 (M.D. Pa. Jan. 20, 2012). In *Bridges* the court permitted only limited questioning about an expert's compensation in cases other than the one at hand. *Bridges'* recognition of the diminishing value of increasingly attenuated evidence of bias illustrates the "marginal" relevance of what the PSC seeks.

Ultimately, the PSC's authority proves at most that invoices in related litigation can be relevant to showing an expert's bias. But if that is true, it is equally true of both parties' experts. And, as noted in the cases cited above, the

11

discoverability analysis does not end with relevance but encompasses proportionality. Thus, the PSC's refusal to produce non-MDL invoices for its own experts is a key factor to consider when evaluating the PSC's request. None of the PSC's cases suggest that Defendants, having already given the PSC evidence that enables the PSC to present an apples-to-apples comparison of the parties' experts' compensation, must produce still more evidence so that the PSC can present a one-sided apples-to-oranges comparison that favors Plaintiffs.

## **CONCLUSION**

The PSC already has the same scope of opposing expert invoices that the PSC itself has produced – invoices submitted in the MDL. The parties are already able to argue that opposing experts are highly compensated and, thus, biased. Unless and until the PSC agrees to produce a broader scope of its own experts' invoices, Defendants should not be required to produce a broader scope of their experts' invoices. Defendants therefore request that the Court deny the PSC's informal letter-request. If the Court is unwilling to do so, it should issue an order that is symmetric and follows the order of production contemplated in the governing scheduling order – *after* Plaintiffs produce all invoices of their own experts across all talcum powder products litigation, *then* Defendants will do the same.

//

//

12

Dated: August 27, 2024          Respectfully submitted,

*/s/ Susan M. Sharko*
Susan M. Sharko
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Tel.: (973) 549-7000
susan.sharko@faegredrinker.com

Kristen R. Fournier
**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel.: (212) 556-2100
kfournier@kslaw.com

*Attorneys for the Johnson & Johnson Defendants*

13