# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 16-2738 (MAS) (RLS)** |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

## THE PLAINTIFFS' STEERING COMMITTEE'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' REQUEST FOR ORDER COMPELLING PRODUCTION OF EXPERT WITNESS INVOICES

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................3

    I.    Discovery of Defendants' experts' talc-related invoices is relevant and proportional to the needs of the case. ...............................3

    II.    The caselaw supports the PSC's position that the non-MDL invoices should be produced. ...............................................................8

CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bayer AG v. Betachem*, Inc., 173 F.3d 188 (3d Cir. 1999)..........................................7

*Behler v. Hanlon*, 199 F.R.D. 553 (D. Md. 2001) ..................................................6, 7

*Bello v. Horace Mann Cos.*, 2010 U.S. Dist. LEXIS 165785 (E.D. La. Mar. 11, 2010)...........................................................................................................9

*Bridges v. O'Hearn,* No. 3:10-cv-1065, 2012 U.S. Dist. LEXIS 6910 (M.D. Pa. Jan. 20, 2012).................................................................................................8

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 273 F.R.D. 360 (D. Mass. 2011) ..........................................................................................................8

*McCracken v. DePuy* addressed admissibility of evidence at trial, not whether the information was discoverable. No. 11 DP 20485, 2013 WL 12141334 (N.D. Ohio July 26, 2013).................................................................7

*Reed v. Cline*, No. 1:08-cv-473-SEB-TAB, 2010 U.S. Dist. LEXIS 101816 (S.D. Ind. Sep. 24, 2010) ......................................................................................7

*Smith v. Transducer Tech. Inc.*, 2000 U.S. Dist. LEXIS 17217 (D.V.I. Nov. 16, 2000)...............................................................................................................9

*United States v. Nobel Learning Cmtys.*, 329 F.R.D. 524 (D.N.J. 2018)...................7

*Young v. Pleasant Valley Sch. Dist.*, No. 3:07-CV-854, 2011 U.S. Dist. LEXIS 93151 (M.D. Pa. Aug. 18, 2011).............................................................6, 7

**Rules**

Fed. R. Civ. P. 26 .....................................................................................................3, 5

## INTRODUCTION

The Plaintiffs' Steering Committee (PSC) submits this Reply in Support of its Motion for an Order compelling Defendants to produce invoices from their experts for work performed on non-MDL cases involving Johnson & Johnson's talcum powder.[1] These invoices, not currently available to the PSC, are relevant to bias and credibility.

In their Opposition, Defendants claim that because the PSC has not produced invoices from the PSC's experts for non-MDL work, the PSC is seeking to make an "apples-to-oranges comparison that makes defense experts seem far more highly compensated – and biased – than Plaintiffs' experts." (Opp. at 2.) This is a red herring. Because Defendants are also named in non-MDL actions, they have already been served Plaintiffs' experts' invoices through discovery in the non-MDL cases.[2]

---

[1] In Footnote 2 of their Opposition, "Defendants object to the PSC's request as procedurally improper." (Defs.' Opp. at 1.) Since filing the Letter, the Court has ordered the parties to meet and confer and submit briefing on the issue. (ECF No. 33077.) Therefore, the PSC submits that this argument is moot given the current procedural standing. However, if the Court is so inclined, the PSC will happily resubmit the request as a formal motion.

[2] Member firms of the PSC are not involved in all non-MDL cases, and therefore the PSC does not have access to the same information as J&J in these cases. As a party for the purposes of discovery, the PSC does not have possession, custody, or control of all invoices produced by experts in non-MDL cases.

1

On the other hand, the PSC only has access to Defendants' expert invoices produced for MDL work. So, contrary to Defendants' arguments that the discovery requested would be "one-sided" or "asymmetric," it would actually level the playing field. Without relief, J&J will have access to all compensation for a Plaintiffs' expert, but the PSC will only know the amounts paid to a defense expert in the MDL. For example, the PSC may only be able to establish payment of $50,000 in the MDL, when in fact the expert has earned more than $1,000,000 in the overall litigation testifying for Defendants. This information is important evidence to demonstrate potential bias.

In making this request for non-MDL invoices, the PSC simply seeks access to similar information on Defendants' experts, which Defendants already have for Plaintiffs' experts. Defendant's "one-sided apples-to-oranges" argument completely misses the mark.[3]

Here, Plaintiffs are entitled to copies of invoices submitted by J&J's experts to J&J for expert work relating to *all* J&J talc cases filed in federal and state court that allege injuries for ovarian cancer and mesothelioma as a result of using J&J's

---

[3] Defendants complain specifically about Dr. Longo in their Opposition, claiming that they don't have information about his payments for non-MDL cases. Again, because Defendants were named in all the non-MDL cases in which Dr. Longo testified concerning Johnson & Johnson's talcum powder products, the Defendants would already have the information from those non-MDL cases. For many of these cases, PSC member firms are not involved and therefore the PSC does not have access to this information.

talcum powder products.[4]  The amount of compensation paid by J&J to its experts in this and related litigation is relevant to demonstrate potential bias or financial interest and could be used for impeachment purposes.

## ARGUMENT

Excluding Defendants' deflections concerning the PSC's document production, Defendants advance two arguments in their Opposition: (1) the discovery of Defendants' experts' non-MDL invoices is not proportional to the needs of the case; and (2) the cases cited by the PSC do not support the PSC's position. Defendants are wrong on both points.

**I.	Discovery of Defendants' experts' talc-related invoices is relevant and proportional to the needs of the case.**

As Defendants correctly note, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In their Opposition, Defendants do not argue that their experts' invoices are irrelevant, thereby

---

[4] It is the PSC's understanding that certain of Defendants' experts have testified in talc-related cases not involving J&J.  The PSC does not seek information related to these cases, only those cases in which J&J's talcum powder products are at issue.

3

conceding that issue. Rather, Defendants hinge their entire argument on proportionality.

Federal Rule of Civil Procedure 26(b)(1) requires the consideration of certain factors for proportionality, which will be discussed in turn below. Despite paying lip service to these factors in their Opposition, Defendants fail to provide a fulsome discussion of each one of the factors and their applicability to the discovery requested.

### (1) "the importance of the issues at stake in the action":

There is no doubt that the issues regarding the safety of talcum powder and its association with ovarian cancer are significant. Plaintiffs claim that the products manufactured by Defendants caused their ovarian cancer, a highly aggressive and deadly cancer. Defendants do not argue that the issues in this case are unimportant.

### (2) "the amount in controversy":

Because of the injuries involved in these cases, the amount in controversy is enormous. Medical expenses alone for the treatment of ovarian cancer can amount to hundreds of thousands of dollars, sometimes exceeding a million dollars in cases with multiple recurrences requiring multiple surgeries and rounds of chemotherapy and other therapies. Again, Defendants do not argue the amount in controversy is insufficient to warrant the discovery.

### (3) "the parties' relative access to relevant information":

Clearly, the Defendants have easy access to the information requested. The PSC has requested invoices from Defendants' experts that the Defendants would have produced for those experts in non-MDL J&J talc-related

4

cases. The information sought is easily accessible by Defendants.

**(4) "the parties' resources":**

There is no reasonable argument to be made that the Defendants do not have sufficient resources to handle the production of this discovery. Johnson & Johnson is one of the largest companies in the world, with more than sufficient resources to handle a simple document production. Moreover, the documents sought in terms of volume are miniscule in comparison to liability documents previously produced in the litigation.

**(5) "the importance of the discovery in resolving the issues":**

Expert testimony is central to the causation and liability issues in this case. Information concerning payments to Defendants' experts is critically important. The discovery requested is proportional and relevant to demonstrate potential bias or financial interest and may be used for impeachment purposes. Defendants' Opposition does not directly address the importance of the discovery.

**(6) "whether the burden or expense of the proposed discovery outweighs its likely benefit[]":**

Defendants appear to put all their eggs in this basket. Defendants fail to adequately advance their position that it would be too burdensome or expensive to produce these documents. There is barely a reference in their brief devoted to explaining that it would "impose a burden on Defendants to collect, redact, and produce invoices in myriad cases…" (Defs.' Opp. at 9.) Tellingly, Defendants have ***previously produced these invoices in non-MDL proceedings*** and fail to provide persuasive argument why they should not be required to reproduce these invoices in the MDL proceedings. Any document production necessarily requires considerations of collection,

5

> redaction, and production. Without offering more, Defendants should not be able to claim burden, especially when the information has been produced in the past and the benefit of this discovery is clear.

Fed. R. Civ. P. 26(b)(1).

Considering all of these factors, it's clear that the PSC is entitled to discovery of Defendants' experts' invoices for all non-MDL talcum powder cases. Again, although Defendants quoted these factors, they did not provide the Court with a full analysis that would provide the Court with sufficient reasons to deny the discovery requested.

The limited cases cited by Defendants are clearly distinguishable and do not support their arguments.

In *Behler v. Hanlon*, the plaintiff sought "the total income earned by [the expert] for the last five years, the amount thereof earned providing defense Rule 35 examinations, records relating to the hours spent by [the expert] in this capacity, copies of his tax returns, and a listing of all insurance companies with whom he is affiliated, as well as a listing of all cases in which he has provided expert services." *Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001). The PSC is not requesting anywhere near as much from Defendants' experts compared to what the plaintiff in *Behler* was requesting. And ultimately, the court in *Behler* did in fact allow discovery on the expert's finances.

6

Another case cited by Defendants, *Young v. Pleasant Valley*, is clearly distinguishable. In *Young*, the plaintiff sought information "regarding [the expert's] annual earnings for testifying as an expert . . . ." *Young v. Pleasant Valley Sch. Dist.*, No. 3:07-CV-854, 2011 U.S. Dist. LEXIS 93151, at *1 (M.D. Pa. Aug. 18, 2011). Ultimately, the court in *Young* ruled that this information was not discoverable on the grounds that the information was not relevant, rather than not proportional: "In the absence of any clear showing of relevance or necessity of the requested information, the Court is convinced that the financial information requested by Plaintiffs is 'overkill.'" *Id.* at *6 (citing *Behler*, 199 F.R.D. at 561-562). Here, the PSC has demonstrated the relevance of the experts' invoices, and Defendants have not disputed their relevance.

*Reed v. Cline*, another case cited by Defendants, does not help their arguments either. Similar to *Young*, the defendant in *Reed* sought information about the expert's "gross salary" and "consulting income[.]" *Reed v. Cline*, No. 1:08-cv-473-SEB-TAB, 2010 U.S. Dist. LEXIS 101816, at *1 (S.D. Ind. Sep. 24, 2010). This is not the situation here and therefore the *Reed* case does not provide any support for Defendants' arguments.

Lastly, *McCracken v. DePuy* addressed admissibility of evidence at trial, not whether the information was discoverable. No. 11 DP 20485, 2013 WL 12141334

7

(N.D. Ohio July 26, 2013). As a result, this case does not offer any value to the court here.

"The scope of discovery in a federal action has been described as 'unquestionably broad.'" *United States v. Nobel Learning Cmtys.*, 329 F.R.D. 524, 527 (D.N.J. 2018) (citing *Bayer AG v. Betachem*, Inc., 173 F.3d 188, 191 (3d Cir. 1999)). Here, Defendants have not provided any compelling reason to limit the broad scope of discovery.

## II. The caselaw cited by the PSC supports the position that the non-MDL invoices should be produced.

In their Opposition, Defendants strain to distinguish the caselaw to support their arguments. This is evidenced by Defendants choice to discuss only two of the cases cited by Plaintiffs: *First Choice Armor & Equipment, Inc. v. Toyobo Am., Inc.* and *Good v. FirstEnergy Corp*.

In *First Choice,* the court denied defendant's request for a protective order and held that compensation paid by defendants to its experts in that case and related cases since 2003 was relevant to demonstrate possible bias. *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 273 F.R.D. 360, 361 (D. Mass. 2011). The court in *First Choice* also stated that "some court[s] allow discovery into an expert's compensation in related cases or by a particular party over a specified period of time on the ground that such information is relevant to the expert's credibility and possible bias." *Id.* (citing case from the Eastern District of

8

Louisiana and the Southern District of New York). Defendants do nothing to distinguish these propositions or advance any argument that the discovery requested by the PSC is off-limits.

Turning to *Good,* Defendants apparently chastise the PSC for not discussing a case cited by the Court in *Good*: *Bridges v. O'Hearn,* No. 3:10-cv-1065, 2012 U.S. Dist. LEXIS 6910 (M.D. Pa. Jan. 20, 2012). *Bridges*, however, dealt with admissibility of testimony concerning fees received by experts in the case under Fed. R. Evid. 403. The *Bridges* court explicitly explained that "fees that the experts receive may be relevant to establish bias and may affect the manner in which the jury views the witnesses's credibility." *Id.* at *9. So in *Bridges*, the discovery had already been produced, and the court was simply ruling on whether the parties could delve into that information during examination at trial. The PSC is not asking for a ruling on admissibility at this point, only for the opportunity to obtain and evaluate the requested discovery. The Defendants are welcome to object to the evidence if presented at trial and be afforded the opportunity to have the Court address its admissibility.

Defendants make no attempt to distinguish *Smith v. Transducer Tech., Inc.*, in which the court explained that "[t]he courts have held that the amount of income derived from services related to testifying as an expert witness is relevant to show bias or financial interest." *Smith v. Transducer Tech. Inc.*, 2000 U.S. Dist. LEXIS

9

17217, at *4 (D.V.I. Nov. 16, 2000). Nor do they attempt to distinguish *Bello v. Horace Mann Cos.*, 2010 U.S. Dist. LEXIS 165785, at *6 (E.D. La. Mar. 11, 2010) ("the financial relationship between a party and an expert witness is relevant to show bias.") or a number of other cases cited by Plaintiffs in which courts found the information to be relevant to the issue of bias. Defendants attempt to distinguish these cases and argue they "focus[] on trial admissibility rather than on discoverability[.]" (Defs.' Opp. at 10.) This argument is misplaced. In cases where the court is asked to focus on admissibility, the information had already been produced in discovery.

## CONCLUSION

For all these reasons, the Court should order the Defendants to produce all invoices from their experts related to non-MDL talcum powder cases.


Dated:       September 4, 2024                           Respectfully submitted,

*s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com

*s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN

10

PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com

*Plaintiffs' Co-Lead Counsel*

*s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com

*Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*s/ Michelle A. Parfitt*
Michelle A. Parfitt
