# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS<br><br>MDL Case No. 2738<br><br>Motion Day: October 21, 2024 |

**DEFENDANT JOHNSON & JOHNSON'S SECOND MOTION TO REMOVE BEASLEY ALLEN FROM THE PLAINTIFFS' STEERING COMMITTEE**

# TABLE OF CONTENTS

                                                                                                                       **Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................3

      A.     Beasley Allen Opposes Most Talc Claimants' Interest In Consensual Resolution Through Bankruptcy ......................................3

      B.     Beasley Allen Votes Against The Plan Without Its Clients' Consent And Contrary To Their Wishes .............................................6

ARGUMENT..........................................................................................................8

CONCLUSION .....................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. v. The Smith Law Firm, PLLC*,
  No. 2:24-cv-00582-JTA (M.D. Ala. filed Sept. 10, 2024) ................................... 7

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 1441804 (S.D.N.Y. Apr. 12, 2016) ..................................................... 8

*In re LTL Mgmt., LLC*,
  2024 WL 3540467 (3d Cir. July 25, 2024) .......................................................... 3

*In re LTL Mgmt., LLC*,
  58 F.4th 738 (3d Cir. 2023) ................................................................................. 3

*In re LTL Mgmt., LLC*,
  No. 23-12825-MBK, ECF No. 3 (Bankr. D.N.J. Apr. 4, 2023) ........................... 3

*In re Merscorp Inc., Real Est. Settlement Procs. Act Litig.*,
  2007 WL 4166128 (S.D. Tex. Nov. 20, 2007) .................................................... 8

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
  1989 WL 168401 (D.P.R. Dec. 2, 1988) ............................................................. 8

*In re Terrorist Attacks on Sept. 11, 2001*,
  2023 WL 4561766 (S.D.N.Y. July 17, 2023) ..................................................... 8

*Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*,
  419 F.3d 794 (8th Cir. 2005) ............................................................................... 8

**Statutes**

11 U.S.C. § 1125 ....................................................................................................... 5

11 U.S.C. § 1126 ....................................................................................................... 5

**Rules**

N.J. RPC 1.2 ............................................................................................................ 10

N.J. RPC 1.4 ............................................................................................................ 10

**Other Authorities**

*Manual for Complex Litigation* § 10.22 (4th ed. Sept. 2024 update) ...................... 8

*Manual for Complex Litigation* § 10.224 (4th ed. Sept. 2024 update) ........... 8, 9, 11

# INTRODUCTION

This Court is well versed in the ethical mess surrounding Beasley Allen's improper relationship with Johnson & Johnson's former lawyer, James Conlan. As J&J explained in its pending motion to disqualify Beasley Allen or remove it from the Plaintiffs' Steering Committee, the firm's collaboration with Conlan on a mediation adverse to his former client—and unsuccessful attempt to hide that collaboration from the Court—violated multiple ethical rules and casts serious doubt on Beasley Allen's continued ability to lead this MDL. That conduct is not the basis for this motion. The basis for this motion is additional misconduct that independently warrants Beasley Allen's removal from the PSC—namely, its attempts to thwart J&J's bankruptcy plan by falsely certifying that it had obtained informed consent to vote against the plan from claimants who did not provide that consent and indeed voted for the plan.

In May 2024, J&J announced that it would be pursuing a bankruptcy plan to resolve all current and future claims related to ovarian cancer arising from cosmetic talc litigation against the company and its affiliates. The plan represents by far the most valuable offer J&J has made to achieve final resolution of this litigation, both in terms of value (currently, more than $8 billion) and timing of payments. Unlike its prior two bankruptcy efforts, this was a "prepackaged" bankruptcy plan that gave talc claimants the power to decide whether it will go forward. Only if 75% of eligible

claimants voted in favor of the announced plan would J&J file a bankruptcy petition seeking its confirmation.

To solicit votes, J&J (through a third party called a solicitation agent) sent ballots to claimants' counsel instructing that they could vote for or against the plan on behalf of their clients only if they certified under oath that (i) their clients gave their informed consent, or (ii) they had the power of attorney to vote on their clients' behalf. Beasley Allen pursued the first option, certifying that it had obtained the informed consent of 11,434 claimants to "reject" the plan. That was a false certification. As the sworn affidavits attached to this motion show, Beasley Allen purported to vote against the plan, contrary to claimants' wishes and without their consent. Those claimants "voted in favor of the Plan" through their counsel of choice, and indeed "have no recollection of ever receiving any direct contact from Beasley Allen regarding the Plan, or asking [them] how [they] would like to vote."

This is a severe breach of trust that warrants Beasley Allen's removal from the PSC. Perhaps the single most important criterion for lead counsel in an MDL is the firm's ability to represent all plaintiffs' interests over its own. If the firm cannot do that, the efficiency benefits promised by consolidated litigation give way to fairness concerns. Can the firm be trusted to act in the best interest of all plaintiffs, rather than its own best interest? Can the Court and defendant trust the firm when it purports to speak on plaintiffs' behalf? In this case, the answer to these questions is

no. Voting against a plan to conclusively resolve this litigation without consent and against claimants' wishes is anathema to leadership of an MDL. For these reasons and those that follow, this Court should exercise its discretion to remove Beasley Allen from the PSC.

## BACKGROUND

### A. Beasley Allen Opposes Most Talc Claimants' Interest In Consensual Resolution Through Bankruptcy

J&J is committed to resolving the talc litigation in a manner that is fair and reasonable for all parties. To that end, J&J has twice proposed resolution through the bankruptcy process—proposals that would resolve the litigation only if 75% of talc claimants voted in favor of the plan. Both times, J&J had the support of the vast majority of claimants. *See* Dkt. 31809 (Plenary Hr'g 3/25 (AM) Tr. 42:13-43:16). Indeed, J&J filed its second bankruptcy petition with the support of more than 60,000 claimants. *See* Debtor's Statement Regarding Refiling of Chapter 11 Case at 2, *In re LTL Mgmt., LLC*, No. 23-12825-MBK, ECF No. 3 (Bankr. D.N.J. Apr. 4, 2023). Nevertheless, Beasley Allen prevented claimants from voting on the plans, successfully arguing that J&J's subsidiary, LTL Management LLC (later known as LLT Management LLC), was not eligible under the Bankruptcy Code to declare bankruptcy. *See In re LTL Mgmt., LLC*, 2024 WL 3540467 (3d Cir. July 25, 2024); *In re LTL Mgmt., LLC*, 58 F.4th 738 (3d Cir. 2023). Beasley Allen opposed the vote

3

while it was collaborating with counsel who previously represented J&J on this same matter, same claims, and same issues.  See Dkt. 32207 at 25-28, 30-32.

It is no secret why Beasley Allen has steadfastly opposed resolution through bankruptcy.  The firm stood to make significant sums through common benefit fees if the claims were resolved through litigation.  See, e.g., Case Management Order 7(A); Dkt. 32149 (5/3 Tr. 53:10-55:10); Dkt. 28760-6 (Birchfield Dep. at 28:9-11).  By contrast, Beasley Allen would not have been entitled to common benefit fees under J&J's announced bankruptcy plans, as Beasley Allen's head of mass torts, Andy Birchfield, admitted at the plenary hearing on J&J's motion to disqualify the firm.  See Dkt. 32149 (5/3 Tr. 53:18-20); see also Dkt. 28760-6 (Birchfield Dep. at 18:8-25, 20:24-22:19).  Beasley Allen has thus fought J&J's bankruptcy efforts at every stage, effectively denying recovery to thousands of claimants who support resolution in bankruptcy.

Notwithstanding Beasley Allen's opposition, J&J maintains that resolution through bankruptcy is the best and most appropriate approach to achieving final resolution of this litigation, both for plaintiffs (who have overwhelmingly lost in litigation) and for itself.  In May 2024, J&J announced a third proposed reorganization to resolve all current and future claims related to ovarian cancer arising from cosmetic talc litigation against J&J and its U.S. affiliates (accounting for 99.75% of the pending U.S. talc lawsuits against those companies, excluding

4

mesothelioma cases).[1]  Unlike the previous plans that were stymied by Beasley Allen, this one gives talc claimants the power up front to decide whether it goes forward.  Specifically, J&J proposed what is called a "prepackaged" bankruptcy plan:  If the plan did not receive 75% approval, J&J would not file a bankruptcy petition and seek approval of the plan.[2]

The plan represents by far J&J's most generous offer to resolve the talc litigation.  Initially, it provided that talc claimants would recover approximately $8 billion dollars over 25 years, a present value of $6.475 billion.[3]  J&J has since increased the value of the plan by $1.1 billion and accelerated the timing of payments.

To achieve confirmation of a "prepackaged" plan, J&J must solicit votes in compliance with the Bankruptcy Code.  *See* 11 U.S.C. §§ 1125, 1126.[4]  To this end,

---

[1] J&J Press Release (May 1, 2024), https://www.jnj.com/media-center/press-releases/johnson-johnson-announces-plan-by-its-subsidiary-llt-management-llc-to-resolve-all-current-and-future-ovarian-cancer-talc-claims-through-a-consensual-prepackaged-reorganization.

[2] *See* LLT Press Release at 2 (June 10, 2024), https://document.epiq11.com/document/getdocumentbycode/?docId=4341383&projectCode=RRI.

[3] *See id.* at 1; Red River Press Release at 1, https://document.epiq11.com/document/getdocumentbycode/?docId=4343603&projectCode=RRI (last visited Sept. 18. 2024).

[4] *See also* Disclosure Statement at iv, https://document.epiq11.com/document/getdocumentbycode/?docId=4339529&projectCode=RRI (last visited Sept. 19, 2024) ("Prior to soliciting votes on a proposed plan of reorganization, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient

5

J&J prepared a detailed disclosure statement,[5] which its solicitation agent sent along with voting ballots to claimants' counsel.  As the materials make clear, a lawyer representing a talc claimant can vote for or against the plan only after the client has (i) provided his or her informed consent to the vote, or (ii) grants the lawyer power of attorney to vote on the client's behalf.  *See* Ex. 22 at 3 (Beasley Allen Master Ballot).

> **B.    Beasley Allen Votes Against The Plan Without Its Clients' Consent And Contrary To Their Wishes**

Because Beasley Allen represents multiple talc claimants, it received a Master Ballot on which to record its clients' votes.  *See id.* (Beasley Allen Master Ballot).  Consistent with Beasley Allen's staunch opposition to resolving this litigation through bankruptcy, its ballot represents that the majority of its clients voted against the plan.  *See id.* at 1; Ex. 23 (Beasley Allen Master Ballot Spreadsheet).[6]  In casting those votes, Birchfield certified under penalty of perjury that he "obtained authority to procedurally cast such Client's vote," and that "[e]ach such Client has indicated his or her informed consent with respect to such vote." *Id.* at 3-4 (Beasley Allen Master Ballot).  That certification was false.

---

detail, to enable a hypothetical reasonable claimant to make an informed judgment regarding acceptance or rejection of such plan of reorganization.").
[5] *Id.*
[6] Ex. 23 is the Master Ballot spreadsheet submitted by Beasley Allen, reflecting all of the purported votes of its clients on J&J's prepackaged plan.  Pursuant to L.R. 5.2 and 5.3, birthdays have been redacted.

6

To date, 21 plaintiffs who voted *for* the plan through their "counsel of choice," Jim Onder of OnderLaw, have certified that Beasley Allen falsely cast ballots against the plan on their behalf without their consent. *See* Exs. 1-21.[7] These claimants further explain that they "never directed Beasley Allen to cast a ballot on [their] behalf against the Plan," and that "the vote cast by Beasley Allen without [their] consent does not reflect [their] wishes." *Id.* Whether Beasley Allen represents these claimants jointly with OnderLaw or whether Beasley Allen does not represent them at all, its conduct is highly problematic: Beasley Allen purported to vote claims without claimant consent and against their wishes.

This does not appear to be a limited occurrence. Beasley Allen has been accused by the Smith Law Firm of interfering with its ability to communicate its support for the plan to its clients. *See* Compl. ¶¶ 55, 59, *The Smith Law Firm, PLLC v. Andy Birchfield Jr.*, No. 3:24-cv-00564-CWR-ASH (S.D. Miss. Sept. 19, 2024). To be sure, Beasley Allen has also sued the Smith Firm. *See Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. v. The Smith Law Firm, PLLC*, No. 2:24-cv-00582-JTA (M.D. Ala. filed Sept. 10, 2024). Regardless of the outcome of these

---

[7] Exhibits 1-21 contain (1) certifications by plaintiffs who voted for the plan, but for whom Beasley Allen attempted to cast a vote against the plan; and (2) copies of the ballots their chosen counsel, OnderLaw, submitted in favor of the plan at the plaintiffs' direction. Pursuant to L.R. 5.2 and 5.3, birthdays and the first five digits of social security numbers are redacted, along with their street addresses, email addresses, and phone numbers.

claims, Beasley Allen unquestionably misrepresented and contravened its clients' positions and interests, and its ability to lead this litigation has been severely and irrevocably compromised.

## ARGUMENT

This Court has "inherent power" to determine the membership of the PSC. *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 797 (8th Cir. 2005); *see also In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 4561766, at *13-14 (S.D.N.Y. July 17, 2023). As the Manual for Complex Litigation explains, among the most critical criteria for a firm's membership on a PSC are its ability to "fairly represent the various interests in the litigation" and "command the respect of their colleagues and work cooperatively with opposing counsel and the court." *Manual for Complex Litigation* § 10.224 (4th ed. Sept. 2024 update); *see also, e.g.*, *In re San Juan Dupont Plaza Hotel Fire Litig.*, 1989 WL 168401, at *6 (D.P.R. Dec. 2, 1988) (considering "ability to work cooperatively with others" as one of the "main criteria for membership in the PSC"). Thus, when counsel are chosen for a leadership role by the court, they assume "an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel." *Manual for Complex Litigation* § 10.22. Beasley Allen recognized as much when it applied (along with several others) for a leadership role: Ms. O'Dell "committed to working cooperatively and collaboratively for the common good of all plaintiffs." Dkt. 54 at 10.

8

There is no singular standard under which a court must evaluate the propriety of a request to remove an attorney from a PSC.  Courts have removed attorneys from steering committees for reasons not approaching ethical misconduct, such as poor performance.  *See, e.g.*, *In re Merscorp Inc., Real Est. Settlement Procs. Act Litig.*, 2007 WL 4166128, at *1 (S.D. Tex. Nov. 20, 2007) (noting attorney was removed as liaison counsel after "repeated failures to communicate and cooperate with" co-counsel, opposing counsel, and the court).  But it stands to reason that the same criteria governing appointment to the PSC should carry significant weight in removal.  If counsel prove unable to represent the various interests of all plaintiffs and work cooperatively with opposing counsel and the court, then they should not continue in a leadership role.  *See* Dkt. 73 at 2 fn. 2 (Judge Wolfson approving PSC membership but advising the parties that the Court "reserves the right to amend the structure of the committees during the pendency of these MDL proceedings").  Such is the case here.

By voting on J&J's bankruptcy plan without claimant consent and against their wishes, Beasley Allen has demonstrated (again) that it cannot "fairly represent the various interests in the litigation" or "command the respect of [its] colleagues and work cooperatively with opposing counsel and the court." *Manual for Complex Litigation* § 10.224.  Indeed, the facts here reflect a serious failure of leadership and breach of trust.  As twenty-one talc claimants have certified, the votes Beasley Allen

9

purported to cast on behalf of these claimants were "without [their] consent" and do "not reflect [their] wishes." *See* Exs. 1-21 (Claimant Declarations).

It does not matter whether Beasley Allen jointly represented these claimants with another firm. If that is the case, Beasley Allen purported to vote on behalf of its joint clients without consent. And those votes would also reflect a breakdown in communications with co-counsel, which is another red flag for Beasley Allen's continued membership on the PSC. Alternatively, if Beasley Allen did *not* represent these claimants, then it had no business voting for them at all. Beasley Allen's membership on the PSC does not authorize it to make client decisions on behalf of clients represented by other firms. It is clear that Beasley Allen's ability to represent all talc plaintiffs' interests and work collaboratively with other firms has been severely and irreparably compromised.[8]

---

[8] Although this Court need not find a violation of ethics rules to remove Beasley Allen from the PSC, its conduct raises serious questions under New Jersey's Rules of Professional Conduct. For instance, lawyers are required to keep their clients informed of material developments in the litigation and abide by the client's decisions concerning the representation. *See* N.J. RPC 1.2, 1.4. Voting on behalf of claimants without their consent and against their wishes is contrary to these rules and the overarching principle that the client, not the lawyer, is responsible for the ultimate decisions respecting the litigation. Moreover, Birchfield certified under penalty of perjury that these claimants "indicated his or her informed consent with respect to such vote," Ex. 22 at 3, which appears not to be true. *See* Exs. 1-21 ("I never directed Beasley Allen to cast a ballot on my behalf against the plan …. and the vote case by Beasley Allen without my consent does not reflect my wishes.").

10

Beasley Allen's conduct has ramifications not just for its relationship with other plaintiffs and their counsel, but also for J&J and the Court. To obtain confirmation of its prepackaged bankruptcy plan, J&J's solicitation agent needed to certify that 75% of eligible claimants voted in favor of the plan. Beasley Allen cast votes without client consent in an effort to thwart J&J's (and the majority of talc claimants') ability to achieve final, consensual resolution of this litigation. By the same token, Beasley Allen's conduct casts a cloud over its continuing ability to represent all claimants' interests before this Court. This Court cannot be certain whether Beasley Allen is representing its own interests or those of all plaintiffs whose claims are consolidated in this MDL.

Nor is this a one-off (or twenty-one-off) problem. As mentioned above, *supra* at 7, Beasley Allen has been accused by the Smith Law Firm of similar misconduct in an effort to thwart resolution through bankruptcy. *See* Compl. ¶¶ 55, 59. In fairness, Beasley Allen has also accused the Smith Law Firm of misconduct. But this Court need not take sides in this internecine dispute. All that matters is that these disputes exist. A firm on the PSC must be capable of leadership. Beasley Allen is not. A firm that is suing and being sued by the firms it is supposed to lead is not one that can "fairly represent the various interests in the litigation" or "command the respect of their colleagues." *Manual for Complex Litigation* § 10.224.

11

Ultimately, Beasley Allen's conduct hinders the parties' ability to achieve what everyone wants: final resolution of the cases in this MDL. Most immediately, it calls into question Beasley Allen's ability to represent all plaintiffs with respect to J&J's bankruptcy plan. More broadly, it calls into question Beasley Allen's ability to work with plaintiff's counsel and J&J's counsel to resolve these cases in a way that is acceptable to all parties. That is, after all, the core function of a lawyer on a PSC—to lead the MDL to final resolution. Beasley Allen can no longer perform that function. This Court should therefore exercise its inherent authority and remove the firm and its attorneys from the PSC.

## CONCLUSION

For the foregoing reasons, J&J's Motion to Remove Beasley Allen from the Plaintiffs' Steering Committee should be granted.

Dated:  September 20, 2024                     Respectfully submitted,

                                               Stephen D. Brody
                                               O'MELVENY & MYERS LLP
                                               1625 Eye Street N.W.
                                               Washington, DC 20006
                                               Tel.:  202-383-5300
                                               sbrody@omm.com

                                               /s/  Susan M. Sharko
                                               Susan M. Sharko
                                               FAEGRE DRINKER BIDDLE &

REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Tel.:  973-549-7000
susan.sharko@faegredrinker.com

*Attorneys for Johnson & Johnson*