# Exhibit 66

'97-09-18 00:34 A.P.                                                                P.1

ALFRED P. WEHNER, D.M.D., Sc.D., Cand. Med.
Diplomate, Academy of Toxicological Sciences
312 Saint Street
Richland, Washington 99352

9/17/97

Mr. Michael R. Chudkowski
Manager, Preclinical Toxicology
J&J Consumer Products, Inc.
Skillman, NJ 08558-9418

Dear Mike:

There is a German saying which translates as follows:

"A true friend is not he who beguiles you with flattery
but he who discloses to you your mistakes
before your enemies discover them."

In this spirit I would like to volunteer a critique of the three CTFA response statements which you faxed me on September 11. Some of the wording leaves CTFA wide open to counter-attack. The most harmless response statement of the three is the one dated July 1,1992. It does not give the names of the authors and the title of the paper to which the response is being made. More important, I believe that different and/or additional more powerful statements along the lines of my critique faxed to Jerry McEwen, as far as applicable to the situation in 1992, would have put CTFA in a more advantageous tactical position. Several investigators have independently reported talc particles in ovarian tissue. Simply citing the Battelle study and stating that it "demonstrated that talc does not trans-late (sic!) through the cervix to the uterine cavity and beyond" does not address the problem, does not refute these findings, and therefore does not serve CTFA's best interest. All in all, in my opinion an inept response.

The problem with the response statement dated July 8, 1992, is more serious. The last sentence in the second paragraph states: "Finally, human studies on talc and cancer in industrial settings have shown that industrial exposure to talc, both by skin contact and inhalation, even at levels thousands of times higher than lifetime consumer exposure, presents no significant risk." This statement is outright false. All an Epstein, a Kennedy, or one of their aides knowledgeable in matters talc, would have to do at a hearing (or any occasion, at that) to demolish the credibility of the talc industry is to refer to the studies by Kleinfeld et al, Thomas, and Thomas and Stewart!

Referring in a 1992 statement to a 1977 editorial in defense of one's position is not a very persuasive argument. Much can happen in 15 years.

509/375-0873   Fax 509/375-5693

J&J-0115053

Protected Document--Subject to Protective Order                    JNJ 000040596

1 of 2                                          Pltf_JNJ_00007977

'97-09-18 00:35 A.P.                                              P.2

Here, too, I believe that more powerful and better defendable arguments could and should have been made on behalf of the industry.

The response statement dated November 17, 1994, is just as bad. The second sentence in the third paragraph reads: "The workshop concluded that, although some of these studies suggested a weak association might exist, when taken together the results of the studies are insufficient to demonstrate any real association." This statement is also inaccurate, to phrase it euphemistically. At that time there had been about 9 studies (more by now) published in the open literature that did show a statistically significant association between hygienic talc use and ovarian cancer. Anybody who denies this risks that the talc industry will be perceived by the public like it perceives the cigarette industry: denying the obvious in the face of all evidence to the contrary. This would be a particularly tragic misperception in view of the fact that the industry does have powerful, valid arguments to support its position.

The workshop did not conclude that "the results of the studies are insufficient to demonstrate any real association." As pointed out above, a "real" statistically significant association has been undeniably established independently by several investigators, which without doubt will be readily attested to by a number of reputable scientists/clinicians, including Bernard Harlow, Debra Novotny, Candace Sue Kasper, Debra Heller, and others. What the workshop panel did conclude was that (1) the results of the studies were ambiguous, inconsistent, contradictory and therefore inconclusive, (2) therefore hygienic use of cosmetic talc does not present a risk to the consumer. So why not use these powerful and irrefutable arguments (plus some of those along the lines of my fax to Rich) instead of questionable mush that leaves one vulnerable to counterattack? The following sentence states: "In addition there is no basis to conclude that talc is capable of migrating to the ovaries...". I submit that several reports, independently describing talc particles in/on ovarian tissue, along with other suggestive evidence (questionable as some of it might be) does provide a basis for just such a conclusion. My point is that such a complex and vexing issue cannot be credibly dismissed with one sweeping statement without any documenting references.

Mike, I realize that CTFA is not J&J. However, I believe that a defeat or embarrassment of CTFA also negatively affects J&J to some extent. As a consultant on a retainer I feel obligated to proactively act in the best interest of my client at all times, not only when I am approached with a specific assignment. This consideration alone motivated me to spend the time to bring my thoughts on this matter to your attention. I trust that in the process I did not step on anybody's toes.

Best regards

*Al*

Protected Document--Subject to Protective Order

J&J-0115054

JNJ 000040597

2 of 2

Pltf_JNJ_00007977