# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2738 |
| This Document Relates To: *Bondurant v. Johnson & Johnson*, No. 3:19-cv-14366 *Converse v. Johnson & Johnson*, No. 3:18-cv-17586 *Gallardo v. Johnson & Johnson*, No. 3:18-cv-10840 *Judkins v. Johnson & Johnson*, No. 3:19-cv-12430 *Newsome v. Johnson & Johnson*, No. 3:18-cv-17146 *Rausa v. Johnson & Johnson*, No. 3:20-cv-02947 |  |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSIVE STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

FAEGRE DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001-8602
(212) 735-3000

*Attorneys for Defendants Johnson & Johnson and LLT Management, LLC (n/k/a Red River Talc LLC)*

Defendants Johnson & Johnson and LLT Management, LLC (n/k/a Red River Talc LLC) (collectively, "Defendants")[1] submit this reply to the Plaintiffs' Steering Committee's Responsive Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (ECF 33294.)

**A.     Linda Bondurant**

1.     **Undisputed.**

2.     **Undisputed.**

3.     **Defs.' Reply:**  As stated in Defendants' Statement of Uncontested Material Facts (ECF 33144) and as explained in Defendants' Memorandum of Law in Support of Motion to Exclude Plaintiffs' Experts' General Causation Opinions (ECF 33008-2), the overwhelming majority of epidemiologic studies that have reported on relative risks for clear cell carcinoma have reported no increased risk. The only study that shows otherwise, Terry, *Genital Powder Use and Risk of Ovarian Cancer: A Pooled Analysis of 8,525 Cases and 9,859 Controls*, 6(8) Cancer Prev. Res. 811, 816-17 (2013) (Opp'n Ex. 15), had its findings on clear cell carcinoma nullified by later data in Cramer, *The Association Between Talc Use and*

---

[1]     Due to a corporate restructuring, any talc liabilities formerly held by Johnson & Johnson Consumer Inc. were transferred to LTL Management LLC, which was subsequently known as LLT Management, LLC.  Following a second and separate restructuring, talc liabilities for ovarian cancer and gynecological cancers are now held by Red River Talc LLC.  Additional information concerning Red River can be found at https://dm.epiq11.com/case/redrivertalc/info.

*Ovarian Cancer: A Retrospective Case-Control Study in Two US States*, 27(3) Epidemiology 334, 341 (2016) (Ex. 6 to Decl. of Jessica Davidson ("Davidson Decl.")).

    4.    **Defs.' Reply:** The study at issue explicitly reports that "[t]he risk of ovarian cancer was highest among women with ovarian endometriosis and especially for . . . clear cell (10.1 [5.50-16.9]) ovarian cancer." Saavalainen, *Risk of Gynecologic Cancer According to the Type of Endometriosis*, 131(6) Obstet. & Gynecol. 1095, 1095 (2018) (Mot. Ex. 20). This indicates that the study reported that endometriosis on its own is associated with up to, if not greater than, a 900% increased risk of clear cell carcinoma of the ovary.

    5.    **Undisputed.**

    6.    **Undisputed.**

    7.    **Defs.' Reply:** This is not impermissible legal argument, but rather a factual statement based on Dr. Wolf's undisputed testimony. Dr. Wolf testified that only ▮▮▮▮ exposure to talcum powder was relevant in terms of causing Ms. Bondurant's ▮▮: "That's when [Ms. Bondurant's] tract would be open and the talcum powder ▮▮▮▮▮▮." (Dep. of Judith Wolf ("9/14/21 Wolf Dep.") 633:15-634:7, Sept. 14, 2021 (Opp'n Ex. 81); *id.* 573:2-4 ("I believe that the important part of her use was prior to her ▮▮▮▮.").)

3

8. **Defs.' Reply:** This is not impermissible legal argument, but rather a factual statement based on Dr. Wolf's explicit and undisputed testimony. Dr. Wolf repeatedly stated that the typical latency period for ovarian cancer is 15 to 20 years. (*See* 9/14/21 Wolf Dep. 571:2-6 ("[T]he latency period [for] ovarian cancer can be anywhere from 15 to 20 years; is that right? A. Yes."); 572:1-4 ("Q. The latency period you believe is 15 to 20 years? A. For ovarian cancer, and for most cancers.").)

9. **Defs.' Reply:** Plaintiffs concede that "Ms. Bondurant has not identified any particular representation to which she was exposed regarding the products at issue in this litigation." Although plaintiffs provide "clarification" that the reason there is no evidence of any exposure to or reliance on talc marketing is because Ms. Bondurant "passed away," that is beside the point, as set forth in defendants' reply brief.

B. **Hilary Converse**

10. **Defs.' Reply:** According to her own PPF, Hilary Converse's date of birth is ▇▇▇▇▇▇▇▇, making her 82 years old, as defendants stated in their Statement of Uncontested Material Facts. (*See* H. Converse PPF at 2 (Mot. Ex. 31).)

11. **Undisputed.**

4

12. **Defs.' Reply:** Dr. Peter Schwartz, Ms. Converse's treating physician, explicitly stated that Ms. Converse's "▮▮▮▮ arose in an ▮▮▮▮▮▮▮ background." (Dep. of Peter Schwartz 31:19-32:4, Jan. 28, 2021 (Mot. Ex. 32).) Dr. Clarke-Pearson agreed that Dr. Schwartz testified to that belief under oath. (Dep. of Daniel L. Clarke-Pearson ("8/26/21 Clarke-Pearson Dep.") 366:13-22, Aug. 26, 2021 (Ex. 7).) Although Dr. Clarke-Pearson testified that Ms. Converse did not have ▮▮▮▮▮▮▮, he did not "look" at Ms. Converse's pathology, precluding plaintiffs from creating a genuine dispute of fact on this point. (*Id.* 366:25-367:11.)

13. **Defs.' Reply:** Plaintiffs do not dispute that Dr. Clarke-Pearson considered Ms. Converse's ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ as a cause of her ▮▮▮▮▮▮▮; nor could they, as he explicitly described it as a cause. (*See* Dep. of Daniel L. Clarke-Pearson ("8/27/21 Clarke-Pearson Dep.") 460:13-16, Aug. 27, 2021 (Mot. Ex. 18) ("Q. You identified a ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ as a cause of her ▮▮▮▮▮▮▮, correct? A. Yes."); 470:20-22 ("Q. You would agree ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ is a cause? A. I think it's a possible cause.").)

14. **Defs.' Reply:** Ms. Converse's medical records undisputably reflect that Ms. Converse "took ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for approximately 10 years until 2007." (CONVERSE_HILARY_YALENEWHAVENHOSPITAL_00346 (Ex. 8).) Dr.

5

Clarke-Pearson's uncited assertion that she only took ▮▮▮▮▮▮▮▮▮▮ for six years does not raise a genuine dispute as to this medical fact.

15. **Defs.' Reply:** Plaintiffs' response confirms that Ms. Converse could not identify any particular representations to which she was allegedly exposed regarding defendants' products. She testified only generally that she "just felt very comfortable with it" and otherwise stated that she trusted the brand "*[p]robably -- possibly* because of the commercials. I don't know. I just -- I just trusted it, and I liked the product." (Dep. of Hilary Converse 180:21-181:4, Dec. 1, 2020 (Opp'n Ex. 33) (emphasis added).)

C. **Anna Gallardo**

16. **Undisputed.**

17. **Defs.' Reply:** Undisputed. Defendants agree Ms. Gallardo was diagnosed with ▮▮▮▮▮▮▮▮▮▮ on July 25, 2013. (GALLARDO_ANNA_BJH_00005-00006 (Mot. Ex. 34).)

18. **Defs.' Reply:** Plaintiffs do not dispute that Ms. Gallardo did not use talc during the 25 years preceding her ▮▮▮▮▮▮▮▮. Although plaintiffs contend that this fact is "consistent" with Dr. Wolf's opinions, it cannot be squared with Dr. Wolf's unequivocal testimony that the latency period for cancer is 15-20 years. (*See* 9/14/21 Wolf Dep. 571:2-6.)

6

19. **Defs.' Reply:** Plaintiffs do not dispute that Ms. Gallardo underwent ███████████. Dr. Wolf's report expressly listed Ms. Gallardo's ███████████ as one of the "other risk factors" Ms. Gallardo had. (2d Am. Rep. of Judith Wolf Re: Anna Gallardo at 24, May 28, 2024 (Mot. Ex. 36).) But nowhere in Dr. Wolf's report does she purport to rule out ███████████ as a risk factor. (*See id.*)

20. **Defs.' Reply:** Plaintiffs do not dispute that Ms. Gallardo testified that she could only recall that she "would look at their ads, they would talk about it being effective and safe. . . . I would occasionally look at the print on the back of the bottle, yes." (Dep. of Anna Gallardo 117:12-25, Jan. 12, 2021 (Mot. Ex. 22).) Plaintiffs' separate statement that Ms. Gallardo relied on defendants' false statements and omissions of warnings about the safety of Johnson's Baby Powder is improper legal argument. *See* L.Civ.R. 56.1(a).

D. **Carter Judkins**

21. **Undisputed.**

22. **Undisputed.**

23. **Defs.' Reply:** Dr. Wolf stated explicitly that "███████████" with ███████████ would be a risk factor, while simultaneously claiming a third-degree relative with ███████████ would not. In any event, Dr. Wolf unequivocally

7

clarified that Ms. Judkins' family history could have played a role even if she characterized that role as "unlikely." (9/14/21 Wolf Dep. 579:2-17.)

24. **Defs.' Reply:** The additional testimony plaintiffs point to does not provide any further context or completeness as to what particular advertisements Ms. Judkins recalled. The testimony indicates only that advertisements made her think the product was safe, but not does not identify any particular advertisement reviewed by Ms. Judkins, much less specify any specific misstatement in any talc marketing.

E. **Tamara Newsome**

25. **Undisputed.**

26. **Undisputed.**

27. **Defs.' Reply:** Plaintiffs do not dispute that Ms. Newsome's ▇ was ▇ or that having a family history ▇ is a significant risk factor.

28. **Defs.' Reply:** Plaintiffs do not dispute that Ms. Newsome had "▇ ▇" (2d Am. Rep. of Daniel L. Clarke-Pearson Re: Tamara Newsome at 18, May 28, 2024 (Mot. Ex. 41).)

29. **Defs.' Reply:** Plaintiffs cannot dispute that Ms. Newsome's surgical report showed classic signs of ▇ ▇

8

███████████████████████████████████████████████████████████."

(NewsomeT-WHSMR-00017 (Mot. Ex. 42).) As Dr. Saenz explained, these are "classic findings for the ██████████ caused by ██████████." (Rep. of Cheryl Saenz Re: Tamara Newsome at 4, May 28, 2024 (Davidson Decl. Ex. 9).)

30. **Defs.' Reply:** There are multiple medical records reflecting that Ms. Newsome had ██████████ at the time of her diagnosis. (*See, e.g.*, NewsomeT-HCHMR-00277 (Davidson Decl. Ex. 10); NewsomeT-HCHMR-00156 (Davidson Decl. Ex. 11).) And Ms. Newsome herself reported that she had ██████████ in the five years prior to her diagnosis. (*See* 8/27/21 Clarke-Pearson Dep. 607:15-608:5.) Plaintiffs do not dispute that having ██████████████████████. Moreover, plaintiffs do not dispute that Dr. Clarke-Pearson considers obesity to be a risk factor for ovarian cancer generally. (8/26/21 Clarke-Pearson Dep. 165:6-166:7.)

31. **Undisputed.**

F. **Pasqualina Rausa**

32. **Undisputed.**

33. **Undisputed.**

34. **Defs.' Reply:** Ms. Rausa clearly stated that she had ██████████ in 1988, three decades before she was diagnosed with ██████████. (P. Rausa PPF at 3 (Mot. Ex. 43).) There is no evidence that Ms. Rausa had her ██████████ ██████████ in 2010. Dr. Clarke-Pearson appears to have misread a clear-cut medical

9

record which listed Ms. Rausa's ▇▇▇▇▇▇ as occurring in 2010, not her

▇▇▇▇▇▇. (*See* PRAUSAPL-000027 (Davidson Decl. Ex. 4).)

35.  **Unaddressed in Plaintiffs' response.**

36.  **Unaddressed in Plaintiffs' response.**

37.  **Defs.' Reply:**  Plaintiffs do not dispute that the medical provider examining Ms. Rausa "indicated that the appearance of her ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." (8/27/21 Clarke-Pearson Dep. 665:21-666:17.) Plaintiffs similarly do not dispute Ms. Rausa's ▇▇▇▇▇ ▇▇▇▇▇▇, as well as the fact that some studies have shown douching increases the risk of ovarian cancer. Instead, they confirm as much by pointing out that Dr. Clarke-Pearson stated ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." (*Id.* 675:1-9.)  In fact, Dr. Clarke-Pearson explicitly stated that he considered the fact that Ms. Rausa ▇▇▇▇ to be a risk factor.  (*Id.* 675:11-22.)

38.  **Defs.' Reply:**  Plaintiffs do not dispute this fact.  Instead, plaintiffs offer a boilerplate denial that the fact lacks context and completeness without citing any particular parts of the record.  That is insufficient to create a dispute of material fact. *See Hughes v. Novo Nordisk, Inc.*, No. 20-4991 (RK) (DEA), 2024 WL 2131676, at *3 n.5 (D.N.J. May 13, 2024) (rejecting "blanket denial" as inadequate to create genuine dispute of material fact) *Fowler v. AT&T Servs., Inc.*, No. 18-667 (MAS) (LHG), 2020 WL 2839461, at *1 n.2 (D.N.J. May 31, 2020)

("Under the Local Civil Rules, it is not enough to merely state disagreement . . . . If a party disputes a material fact without citation to supporting documents, the material fact 'shall be deemed undisputed for purposes of the summary judgment motion.'") (quoting L. Civ. R. 56.1), *aff'd sub nom. Fowler v. AT&T, Inc.*, 19 F.4th 292 (3d Cir. 2021). Moreover, Dr. Clarke-Pearson, when asked if "age, talc, ▮, ▮ and unknown factors all caused Ms. Rausa's ▮," unequivocally testified that "[a]ll contributed to the outcome of ▮, yes." (8/27/21 Clarke-Pearson Dep. 675:17-22.)

39. **Undisputed.**

G. **Relevant Statements by U.S. Government Agencies and Medical Organizations**

40. **Defs.' Reply:** Plaintiffs do not dispute these facts. Instead, plaintiffs offer a boilerplate denial that the facts lack context and completeness without citing any particular parts of the record. That is insufficient to create a genuine dispute of material fact for the reasons discussed above.

41. **Defs.' Reply:** Plaintiffs do not dispute these facts. Instead, plaintiffs offer a boilerplate denial that the facts lack context and completeness without citing any particular parts of the record. That is insufficient to create a genuine dispute of material fact for the reasons discussed above.

42. **Defs.' Reply:** Plaintiffs do not dispute these facts. Instead, plaintiffs offer a boilerplate denial that the facts lack context and completeness without

11

citing any particular parts of the record. That is insufficient to create a genuine dispute of material fact for the reasons discussed above.

43. **Defs.' Reply:** Plaintiffs do not dispute these facts. Instead, plaintiffs offer a boilerplate denial that the facts lack context and completeness without citing any particular parts of the record. That is insufficient to create a genuine dispute of material fact for the reasons discussed above.

44. **Defs.' Reply:** The Cancer Facts & Figures is an annual publication of the American Cancer Society, Atlanta, Georgia. *See* Cancer Facts & Figures 2024, at 87, American Cancer Society, https://www.cancer.org/content/dam/cancer-org/research/cancer-facts-and-statistics/annual-cancer-facts-and-figures/2024/2024-cancer-facts-and-figures-acs.pdf. The 2024 report unambiguously concluded that "[t]he weight of the evidence does not support an association between ovarian cancer and genital exposure to talc-based powder." *Id.* at 23. Plaintiffs cannot dispute any of this. Plaintiffs' argument that it is not the "official" policy of ACS is beside the point.

45. **Defs.' Reply:** Plaintiffs do not dispute these facts. Instead, plaintiffs offer a boilerplate denial that the facts lack context and completeness without citing any particular parts of the record. That is insufficient to create a genuine dispute of material fact for the reasons discussed above.

12

46.     **Defs.' Reply:**  Plaintiffs do not dispute these facts.  Instead, plaintiffs offer a boilerplate denial that the facts lack context and completeness without citing any particular parts of the record.  That is insufficient to create a genuine dispute of material fact for the reasons discussed above.

47.     **Defs.' Reply:**  Plaintiffs do not dispute these facts.  Instead, plaintiffs offer a boilerplate denial that the facts lack context and completeness without citing any particular parts of the record.  That is insufficient to create a genuine dispute of material fact for the reasons discussed above.

Dated: October 16, 2024

Respectfully submitted,

/s/ Susan M. Sharko
Susan M. Sharko
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  973-549-7000
Facsimile:   973-360-9831
E-mail:  susan.sharko@faegredrinker.com

Allison M. Brown
Jessica Davidson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
212-735-3000

*Attorneys for Defendants Johnson & Johnson and LLT Management, LLC (n/k/a Red River Talc LLC)*