# EXHIBIT 5



## IN THE 22ND JUDICIAL CIRCUIT COURT OF CITY OF ST LOUIS, MISSOURI

| | |
|---|---|
| Judge or Division:<br>PHILIP HEAGNEY | **Case Number: 1422-CC09326** |
| Plaintiff/Petitioner:<br>VALERIE SWANN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>STEPHANIE LYNN RADOS<br>110 EAST LOCKWOOD AVENUE<br>2ND FLOOR<br>SAINT LOUIS, MO 63119 |
| Defendant/Respondent:<br>JOHNSON & JOHNSON | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | SAINT LOUIS, MO 63101 |

(Date File Stamp)

### Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  PERSONAL CARE PRODUCTS COUNCIL
                       Alias:  FKA COSMETIC TOILETRY AND FRAGRANCE ASSOCIATION CTFA

PERSON IN CHARGE
PERSONAL CARE PRODUCTS COUNCIL
1620 L STREET NW SUITE 1200
WASHINGTON, DC 20036



**COURT SEAL OF**

**CITY OF ST LOUIS**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*Jane Schweitzer*

| **August 1, 2014** | M. Jane Schweitzer |
|---|---|
| Date | Circuit Clerk |

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

| Printed Name of Sheriff or Server | Signature of Sheriff or Server |
|---|---|

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

**Service Fees, if applicable**
| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and officer making return on service of summons.

**1422-CC09326**

### IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
### STATE OF MISSOURI

| | |
|---|---|
| VALERIE SWANN, | |
| and | |
| SHERYL ALLEN, | |
| and | |
| BRENDA JEAN BARTLEY, | |
| and | |
| MARGARITA BECERRA, | |
| and | |
| JOYCE BENHAM, | Cause Number |
| and | Division: |
| MARILYN BENTLEY, | |
| and | **JURY TRIAL DEMANDED** |
| SHELIA PERRO BOOKER, | |
| and | |
| SUZANNE BRADIGAN, | |
| and | |
| CLAUDINE BRUNSON, | |
| and | |
| CAROLYN BURRUS, | |
| and | |
| LISA MARIE BUTLER, | |
| and | |

MARGIE CARSON,

and

MILLICENT CARTER,

and

CYNTHIA COLLINS,

and

PATRICIA CRAIG,

and

NORA DANIELS,

and

EVELYN DAVIS,

and

MARTHA DECKER,

and

EVELYN DURRWACHTER,

and

MICHELLE ELISE ELLIS,

and

CARMEN GREEN-NEWMAN,

and

BETTY GULLARD,

and

MICHELE LEA HARDY,

and

KIMBERLEY JACKSON,

and

ROSEMARIE LAFONTAINE,

and

DONNA FAYE LANE,

and

TOWAN LEONARD,

and

BEVERLY LINGO,

and

VERTENIA LINICOMN,

and

GLENDA LONG,

and

DIMITY LOWELL,

and

SANDRA MATTHEWS,

and

BRIDGETT LATRICE MAXWELL,

and

REBECCA MEEKS,

and

YVETTE MOSLEY,

and

JESSICA NOLFI,

and

PATRICIA NUNLEY,

and

ILAN OTTAVIAN,

and

MARY ELAINE PAYNE,

and

MICHELLE PAYNE,

and

BURNETTA ROGERS,

and

STEVEN SALPETER, as Administrator of the Estate
of SUSAN WIDEN-SALPETER, deceased,

and

SUSAN SCHNELLE,

and

SHARON SHELTON,

and

MARTHA SHOEMAKER,

and

SARAH SIMPSON,

and

LOIS SLEMP,

and

CHRYSTAL SUPPLE,

and

LENORA TOWNSEN,

and

BRENDA JOYCE WARREN,

and

LAVERNE WILLIAMS,

and

FLOYE ZIMMERMAN,

and

WILLIE MAE ENGLISH,

and

DENNIS ZIERENBERG,

and

SYLVIA WHITE

and

NICKY BATTAGLIA SR., Individually, and as
Representative of the Estate of LOIS BATTAGLIA,
deceased,

and

ERON EVANS,

and

FRANCES LANGE,

and

DEBORAH L. SMITH,

and

PATRICK MAHARG, as Representative of the Estate of DENISE MAHARG, deceased,

and

SAMANTHA WELLS,

and

WALTER CUNNINGHAM, as Administrator of the Estate of MILDRED CUNNINGHAM, deceased,

Plaintiffs,

v.

JOHNSON & JOHNSON

**Serve:**   Steven M. Rosenberg
Registered Agent
One Johnson & Johnson Plaza
New Brunswick, NJ  08933

and

6

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.

**Serve:**    Person in Charge
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

and

IMERYS TALC AMERICA, INC. F/K/A LUZENAC
AMERICA, INC.

**Serve:**    CSC-Lawyers Incorporating Service
Company
Registered Agent
221 Bolivar
Jefferson City, MO 65101

and

PERSONAL CARE PRODUCTS COUNCIL F/K/A
COSMETIC, TOILETRY, AND FRAGRANCE
ASSOCIATION (CTFA)

**Serve:**    Registered Agent
Personal Care Products Council
1620 L Street, N.W., Suite 1200
Washington, DC 20036

Defendants.

## PETITION

COME NOW Plaintiffs, by and through their undersigned counsel, and for their cause of

action against Defendants Johnson & Johnson; Johnson & Johnson Consumer Companies, Inc.;

Imerys Talc America, Inc., f/k/a Luzenac America, Inc.; Personal Care Products Council f/k/a

Cosmetic, Toiletry, and Fragrance Association (CTFA), alleging the following upon information

and belief (including investigation made by and through Plaintiffs' counsel), except those

allegations that pertain to Plaintiffs, which are based on personal knowledge:

## INTRODUCTION

7

1.    Plaintiffs bring this cause of action against Defendants pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure, as their claims arise out of the same series of transactions and occurrences, and their claims involve common questions of law and/or fact. All claims in this action are a direct and proximate result of Defendants' and/or their corporate predecessors negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the products known as Johnson & Johnson Baby Powder and Shower to Shower (hereinafter "the PRODUCTS"). All Plaintiffs in this action seek recovery for damages as a result of developing ovarian cancer, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of talcum powder, and the attendant effects of developing ovarian cancer. All of the claims in this action involve common legal and medical issues.

## PARTIES

2.    Plaintiff Valerie Swann is a citizen of the City of St. Louis, State of Missouri. At all pertinent times, including from approximately January 1980 to January 2012, Plaintiff Valerie Swann purchased and applied talcum powder in the State of Missouri. In or around January 2012, Plaintiff Valerie Swann was diagnosed with ovarian cancer, which developed in the State of Missouri. Plaintiff Valerie Swann developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Valerie Swann has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and

8

loss of enjoyment of life, and Plaintiff Valerie Swann has otherwise been damaged in a personal and pecuniary nature.

3.     Plaintiff Sheryl Allen is a citizen of the City of Montgomery, State of Texas.  At all pertinent times, including from approximately April 1962 to May 2013, Plaintiff Sheryl Allen purchased and applied talcum powder in the State of Texas  In or around May 2013, Plaintiff Sheryl Allen was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Sheryl Allen developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Sheryl Allen has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sheryl Allen has otherwise been damaged in a personal and pecuniary nature.

4.     Plaintiff Brenda Jean Bartley is a citizen of the City of Brooksville, State of Florida.  At all pertinent times, including from approximately January 1943 to September 2011, Plaintiff Brenda Jean Bartley purchased and applied talcum powder in the States of Virginia, Maryland and Florida.  In or around September 2011, Plaintiff Brenda Jean Bartley was diagnosed with ovarian cancer, which developed in the State of Florida.  Plaintiff Brenda Jean Bartley developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Brenda Jean Bartley has incurred and will incur medical expenses in the future, has endured and

will endure pain and suffering and loss of enjoyment of life, and Plaintiff Brenda Jean Bartley has otherwise been damaged in a personal and pecuniary nature.

5.      Plaintiff Margarita Becerra is a citizen of the City of Corona, State of California. At all pertinent times, including from approximately January 1973 to January 2008, Plaintiff Margarita Becerra purchased and applied talcum powder in the State of California. In or around August 2013, Plaintiff Margarita Becerra was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Margarita Becerra developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Margarita Becerra has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Margarita Becerra has otherwise been damaged in a personal and pecuniary nature.

6.      Plaintiff Joyce Benham is a citizen of the City of Des Moines, State of Iowa. At all pertinent times, including from approximately May 1945 to December 2007, Plaintiff Joyce Benham purchased and applied talcum powder in the State of Iowa. In or around August 2013, Plaintiff Joyce Benham was diagnosed with ovarian cancer, which developed in the State of Iowa. Plaintiff Joyce Benham developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Joyce Benham has incurred and will incur medical

expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Joyce Benham has otherwise been damaged in a personal and pecuniary nature.

7.     Plaintiff Marilyn Bentley is a citizen of the City of Airmont, State of New York. At all pertinent times, including from approximately January 1957 to November 2011, Plaintiff Marilyn Bentley purchased and applied talcum powder in the State of New York.  In or around November 2011, Plaintiff Marilyn Bentley was diagnosed with ovarian cancer, which developed in the State of New York.  Plaintiff Marilyn Bentley developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Marilyn Bentley has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Marilyn Bentley has otherwise been damaged in a personal and pecuniary nature.

8.     Plaintiff Shelia Perro Booker is a citizen of the City of Franklin, State of Louisiana. At all pertinent times, including from approximately January 1998 to November 2013, Plaintiff Shelia Perro Booker purchased and applied talcum powder in the State of Louisiana.  In or around November 2013, Plaintiff Shelia Perro Booker was diagnosed with ovarian cancer, which developed in the State of Louisiana.  Plaintiff Shelia Perro Booker developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Shelia Perro

Booker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Shelia Perro Booker has otherwise been damaged in a personal and pecuniary nature.

9.     Plaintiff Suzanne Bradigan is a citizen of the City of Hoffman Estates, State of Illinois.  At all pertinent times, including from approximately May 1979 to September 2013, Plaintiff Suzanne Bradigan purchased and applied talcum powder in the State of Illinois.  In or around September 2013, Plaintiff Suzanne Bradigan was diagnosed with ovarian cancer, which developed in the State of Illinois.  Plaintiff Suzanne Bradigan developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Suzanne Bradigan has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Suzanne Bradigan has otherwise been damaged in a personal and pecuniary nature.

10.     Plaintiff Claudine Brunson is a citizen of the City of Great Falls, State of South Carolina.  At all pertinent times, including from approximately January 1964 to November 2012, Plaintiff Claudine Brunson purchased and applied talcum powder in the State of South Carolina. In or around November 2012, Plaintiff Claudine Brunson was diagnosed with ovarian cancer, which developed in the State of South Carolina.  Plaintiff Claudine Brunson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution,

12

marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff

Claudine Brunson has incurred and will incur medical expenses in the future, has endured and will

endure pain and suffering and loss of enjoyment of life, and Plaintiff Claudine Brunson has

otherwise been damaged in a personal and pecuniary nature.

        11.    Plaintiff Carolyn Burrus is a citizen of the City of Logansport, State of Louisiana.

At all pertinent times, including from approximately August 1978 to April 2014, Plaintiff Carolyn

Burrus purchased and applied talcum powder in the States of Louisiana and Kentucky. In or

around April 2014, Plaintiff Carolyn Burrus was diagnosed with ovarian cancer, which developed

in the State of Louisiana. Plaintiff Carolyn Burrus developed ovarian cancer, and suffered effects

attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective

nature of talcum powder and Defendants' wrongful and negligent conduct in the research,

development, testing, manufacture, production, promotion, distribution, marketing, and sale of

talcum powder. As a direct and proximate result of these injuries, Plaintiff Carolyn Burrus has

incurred and will incur medical expenses in the future, has endured and will endure pain and

suffering and loss of enjoyment of life, and Plaintiff Carolyn Burrus has otherwise been damaged

in a personal and pecuniary nature.

        12.    Plaintiff Lisa Marie Butler is a citizen of the City of Marienville, State of

Pennsylvania. At all pertinent times, including from approximately August 1991 to October 2012,

Plaintiff Lisa Marie Butler purchased and applied talcum powder in the State of Pennsylvania. In

or around October 2012, Plaintiff Lisa Marie Butler was diagnosed with ovarian cancer, which

developed in the State of Pennsylvania. Plaintiff Lisa Marie Butler developed ovarian cancer, and

suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous

and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the

13

research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Lisa Marie Butler has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lisa Marie Butler has otherwise been damaged in a personal and pecuniary nature.

13. Plaintiff Margie Carson is a citizen of the City of Williamson, State of Georgia. At all pertinent times, including from approximately February 2002 to June 2009, Plaintiff Margie Carson purchased and applied talcum powder in the State of Georgia. In or around June 2009, Plaintiff Margie Carson was diagnosed with ovarian cancer, which developed in the State of Georgia. Plaintiff Margie Carson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Margie Carson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Margie Carson has otherwise been damaged in a personal and pecuniary nature.

14. Plaintiff Millicent Carter is a citizen of the City of Memphis, State of Tennessee. At all pertinent times, including from approximately June 1997 to March 2010, Plaintiff Millicent Carter purchased and applied talcum powder in the State of Tennessee. In or around March 2010, Plaintiff Millicent Carter was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Millicent Carter developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of

talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Millicent Carter has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Millicent Carter has otherwise been damaged in a personal and pecuniary nature.

15.    Plaintiff Cynthia Collins is a citizen of the City of Asheville, State of North Carolina. At all pertinent times, including from approximately January 1987 to January 2012, Plaintiff Cynthia Collins purchased and applied talcum powder in the State of South Carolina. In or around August 2012, Plaintiff Cynthia Collins was diagnosed with ovarian cancer, which developed in the State of South Carolina. Plaintiff Cynthia Collins developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Cynthia Collins has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Cynthia Collins has otherwise been damaged in a personal and pecuniary nature.

16.    Plaintiff Patricia Craig is a citizen of the City of Mobile, State of Alabama. At all pertinent times, including from approximately June 1955 to November 2013, Plaintiff Patricia Craig purchased and applied talcum powder in the State of Alabama. In or around November 2013, Plaintiff Patricia Craig was diagnosed with ovarian cancer, which developed in the State of Alabama. Plaintiff Patricia Craig developed ovarian cancer, and suffered effects attendant thereto,

15

as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Patricia Craig has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Patricia Craig has otherwise been damaged in a personal and pecuniary nature.

17.     Plaintiff Nora Daniels is a citizen of the City of Columbia, State of Tennessee. At all pertinent times, including from approximately July 1978 to May 2013, Plaintiff Nora Daniels purchased and applied talcum powder in the State of Tennessee. In or around May 2013, Plaintiff Nora Daniels was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Nora Daniels developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Nora Daniels has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Nora Daniels has otherwise been damaged in a personal and pecuniary nature.

18.     Plaintiff Evelyn Davis is a citizen of the City of Salisbury, State of Maryland. At all pertinent times, including from approximately February 2009 to November 2011, Plaintiff Evelyn Davis purchased and applied talcum powder in the State of Maryland. In or around November 2011, Plaintiff Evelyn Davis was diagnosed with ovarian cancer, which developed in the State of Maryland. Plaintiff Evelyn Davis developed ovarian cancer, and suffered effects

16

attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Evelyn Davis has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Evelyn Davis has otherwise been damaged in a personal and pecuniary nature.

19.    Plaintiff Martha Decker is a citizen of the City of Paris, State of Michigan. At all pertinent times, including from approximately January 1964 to January 1990, Plaintiff Martha Decker purchased and applied talcum powder in the States of Illinois, North Dakota, California, Washington, Texas and Oklahoma. In or around August 2012, Plaintiff Martha Decker was diagnosed with ovarian cancer, which developed in the State of Michigan. Plaintiff Martha Decker developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Martha Decker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Martha Decker has otherwise been damaged in a personal and pecuniary nature.

20.    Plaintiff Evelyn Durrwachter is a citizen of the City of Louisa, State of Virginia. At all pertinent times, including from approximately January 1957 to November 2013, Plaintiff Evelyn Durrwachter purchased and applied talcum powder in the States of Pennsylvania and Virginia. In or around November 2013, Plaintiff Evelyn Durrwachter was diagnosed with ovarian

17

cancer, which developed in the State of Virginia. Plaintiff Evelyn Durrwachter developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Evelyn Durrwachter has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Evelyn Durrwachter has otherwise been damaged in a personal and pecuniary nature.

21.    Plaintiff Michelle Elise Ellis is a citizen of the City of Arroyo Grande, State of California. At all pertinent times, including from approximately January 1980 to January 2008, Plaintiff Michelle Elise Ellis purchased and applied talcum powder in the State of California. In or around July 2013, Plaintiff Michelle Elise Ellis was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Michelle Elise Ellis developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Michelle Elise Ellis has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Michelle Elise Ellis has otherwise been damaged in a personal and pecuniary nature.

22.    Plaintiff Carmen Green-Newman is a citizen of the City of Lancaster, State of California. At all pertinent times, including from approximately October 1973 to November 2012, Plaintiff Carmen Green-Newman purchased and applied talcum powder in the State of California.

18

In or around November 2012, Plaintiff Carmen Green-Newman was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Carmen Green-Newman developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Carmen Green-Newman has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carmen Green-Newman has otherwise been damaged in a personal and pecuniary nature.

23.    Plaintiff Betty Gullard is a citizen of the City of Danube, State of Minnesota. At all pertinent times, including from approximately September 1975 to July 2004, Plaintiff Betty Gullard purchased and applied talcum powder in the States of Arkansas, Minnesota and Missouri. In or around June 2009, Plaintiff Betty Gullard was diagnosed with ovarian cancer, which developed in the State of Minnesota. Plaintiff Betty Gullard developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Betty Gullard has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Betty Gullard has otherwise been damaged in a personal and pecuniary nature.

24.    Plaintiff Michele Lea Hardy is a citizen of the City of Leipsic, State of Ohio. At all pertinent times, including from approximately January 2001 to May 2013, Plaintiff Michele

19

Lea Hardy purchased and applied talcum powder in the State of Ohio. In or around May 2013, Plaintiff Michele Lea Hardy was diagnosed with ovarian cancer, which developed in the State of Ohio. Plaintiff Michele Lea Hardy developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Michele Lea Hardy has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Michele Lea Hardy has otherwise been damaged in a personal and pecuniary nature.

25. Plaintiff Kimberley Jackson is a citizen of the City of Chattanooga, State of Tennessee. At all pertinent times, including from approximately January 1978 to December 2012, Plaintiff Kimberley Jackson purchased and applied talcum powder in the States of Tennessee, California, Florida, New Mexico, Indiana and Pennsylvania. In or around January 2012, Plaintiff Kimberley Jackson was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Kimberley Jackson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Kimberley Jackson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Kimberley Jackson has otherwise been damaged in a personal and pecuniary nature.

26.     Plaintiff Rosemarie Lafontaine is a citizen of the City of Waterbury, State of Connecticut. At all pertinent times, including from approximately January 1985 to June 2012, Plaintiff Rosemarie Lafontaine purchased and applied talcum powder in the State of Connecticut. In or around June 2012, Plaintiff Rosemarie Lafontaine was diagnosed with ovarian cancer, which developed in the State of Connecticut. Plaintiff Rosemarie Lafontaine developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Rosemarie Lafontaine has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rosemarie Lafontaine has otherwise been damaged in a personal and pecuniary nature.

27.     Plaintiff Donna Faye Lane is a citizen of the City of Cleveland, State of Tennessee. At all pertinent times, including from approximately May 1996 to July 2012, Plaintiff Donna Faye Lane purchased and applied talcum powder in the State of Tennessee. In or around August 2012, Plaintiff Donna Faye Lane was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Donna Faye Lane developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Donna Faye Lane has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of

21

enjoyment of life, and Plaintiff Donna Faye Lane has otherwise been damaged in a personal and pecuniary nature.

28.     Plaintiff Towan Leonard is a citizen of the City of Mobile, State of Alabama.  At all pertinent times, including from approximately January 1960 to January 2013, Plaintiff Towan Leonard purchased and applied talcum powder in the States of Alabama and Michigan.  In or around September 2013, Plaintiff Towan Leonard was diagnosed with ovarian cancer, which developed in the State of Alabama.  Plaintiff Towan Leonard developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Towan Leonard has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Towan Leonard has otherwise been damaged in a personal and pecuniary nature.

29.     Plaintiff Beverly Lingo is a citizen of the City of Fort Smith, State of Arkansas.  At all pertinent times, including from approximately January 1983 to April 2012, Plaintiff Beverly Lingo purchased and applied talcum powder in the State of Arkansas.  In or around April 2012, Plaintiff Beverly Lingo was diagnosed with ovarian cancer, which developed in the State of Arkansas.  Plaintiff Beverly Lingo developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Beverly Lingo has incurred and will

22

incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Beverly Lingo has otherwise been damaged in a personal and pecuniary nature.

30.    Plaintiff Vertenia Linicomn is a citizen of the City of Houston, State of Texas.  At all pertinent times, including from approximately July 1979 to April 2010, Plaintiff Vertenia Linicomn purchased and applied talcum powder in the State of Texas.  In or around August 2013, Plaintiff Vertenia Linicomn was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Vertenia Linicomn developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Vertenia Linicomn has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Vertenia Linicomn has otherwise been damaged in a personal and pecuniary nature.

31.    Plaintiff Glenda Long is a citizen of the City of Dalton, State of Georgia.  At all pertinent times, including from approximately November 1948 to March 2013, Plaintiff Glenda Long purchased and applied talcum powder in the State of Georgia.  In or around March 2013, Plaintiff Glenda Long was diagnosed with ovarian cancer, which developed in the State of Georgia.  Plaintiff Glenda Long developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a

23

direct and proximate result of these injuries, Plaintiff Glenda Long has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Glenda Long has otherwise been damaged in a personal and pecuniary nature.

32.    Plaintiff Dimity Lowell is a citizen of the City of Iola, State of Kansas. At all pertinent times, including from approximately January 1970 to December 2009, Plaintiff Dimity Lowell purchased and applied talcum powder in the States of Kansas, California, New Jersey, New York and Massachusetts. In or around December 2009, Plaintiff Dimity Lowell was diagnosed with ovarian cancer, which developed in the State of Kansas. Plaintiff Dimity Lowell developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Dimity Lowell has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Dimity Lowell has otherwise been damaged in a personal and pecuniary nature.

33.    Plaintiff Sandra Matthews is a citizen of the City of Jersey City, State of New Jersey. At all pertinent times, including from approximately January 1991 to October 2012, Plaintiff Sandra Matthews purchased and applied talcum powder in the State of New Jersey. In or around October 2012, Plaintiff Sandra Matthews was diagnosed with ovarian cancer, which developed in the State of New Jersey. Plaintiff Sandra Matthews developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the

24

research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Sandra Matthews has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sandra Matthews has otherwise been damaged in a personal and pecuniary nature.

34.     Plaintiff Bridgett Latrice Maxwell is a citizen of the City of Memphis, State of Tennessee. At all pertinent times, including from approximately January 1990 to September 2013, Plaintiff Bridgett Latrice Maxwell purchased and applied talcum powder in the State of Tennessee. In or around September 2013, Plaintiff Bridgett Latrice Maxwell was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Bridgett Latrice Maxwell developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Bridgett Latrice Maxwell has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Bridgett Latrice Maxwell has otherwise been damaged in a personal and pecuniary nature.

35.     Plaintiff Rebecca Meeks is a citizen of the City of Bastrop, State of Louisiana. At all pertinent times, including from approximately January 1961 to September 2011, Plaintiff Rebecca Meeks purchased and applied talcum powder in the State of Louisiana. In or around September 2011, Plaintiff Rebecca Meeks was diagnosed with ovarian cancer, which developed in the State of Louisiana. Plaintiff Rebecca Meeks developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective

25

nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Rebecca Meeks has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rebecca Meeks has otherwise been damaged in a personal and pecuniary nature.

36.     Plaintiff Yvette Mosley is a citizen of the City of Quitman, State of Georgia. At all pertinent times, including from approximately January 1964 to September 2013, Plaintiff Yvette Mosley purchased and applied talcum powder in the State of New Jersey. In or around September 2013, Plaintiff Yvette Mosley was diagnosed with ovarian cancer, which developed in the State of Georgia. Plaintiff Yvette Mosley developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Yvette Mosley has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Yvette Mosley has otherwise been damaged in a personal and pecuniary nature.

37.     Plaintiff Jessica Nolfi is a citizen of the City of Orlando, State of Florida. At all pertinent times, including from approximately January 1969 to January 2000, Plaintiff Jessica Nolfi purchased and applied talcum powder in the State of Florida. In or around November 2011, Plaintiff Jessica Nolfi was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Jessica Nolfi developed ovarian cancer, and suffered effects attendant thereto, as a direct

26

and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Jessica Nolfi has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jessica Nolfi has otherwise been damaged in a personal and pecuniary nature.

38.    Plaintiff Patricia Nunley is a citizen of the City of Shreveport, State of Louisiana. At all pertinent times, including from approximately January 1969 to October 2010, Plaintiff Patricia Nunley purchased and applied talcum powder in the State of Louisiana. In or around October 2010, Plaintiff Patricia Nunley was diagnosed with ovarian cancer, which developed in the State of Louisiana. Plaintiff Patricia Nunley developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Patricia Nunley has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Patricia Nunley has otherwise been damaged in a personal and pecuniary nature.

39.    Plaintiff Ilan Ottavian is a citizen of the City of Monroeville, State of Pennsylvania. At all pertinent times, including from approximately January 1977 to January 2005, Plaintiff Ilan Ottavian purchased and applied talcum powder in the State of Pennsylvania. In or around January 2005, Plaintiff Ilan Ottavian was diagnosed with ovarian cancer, which developed in the State of Pennsylvania. Plaintiff Ilan Ottavian developed ovarian cancer, and suffered effects attendant

27

thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Ilan Ottavian has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Ilan Ottavian has otherwise been damaged in a personal and pecuniary nature.

40.     Plaintiff Mary Elaine Payne is a citizen of the City of Madison, State of Tennessee. At all pertinent times, including from approximately January 2000 to September 2013, Plaintiff Mary Elaine Payne purchased and applied talcum powder in the State of Tennessee. In or around September 2013, Plaintiff Mary Elaine Payne was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Mary Elaine Payne developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Mary Elaine Payne has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Mary Elaine Payne has otherwise been damaged in a personal and pecuniary nature.

41.     Plaintiff Michelle Payne is a citizen of the City of Savannah, State of Georgia. At all pertinent times, including from approximately February 1969 to July 2012, Plaintiff Michelle Payne purchased and applied talcum powder in the States of Pennsylvania and Tennessee. In or around July 2012, Plaintiff Michelle Payne was diagnosed with ovarian cancer, which developed

in the State of Tennessee. Plaintiff Michelle Payne developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Michelle Payne has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Michelle Payne has otherwise been damaged in a personal and pecuniary nature.

42.    Plaintiff Burnetta Rogers is a citizen of the City of Birmingham, State of Alabama. At all pertinent times, including from approximately January 1962 to October 2013, Plaintiff Burnetta Rogers purchased and applied talcum powder in the State of Alabama. In or around November 2013, Plaintiff Burnetta Rogers was diagnosed with ovarian cancer, which developed in the State of Alabama. Plaintiff Burnetta Rogers developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Burnetta Rogers has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Burnetta Rogers has otherwise been damaged in a personal and pecuniary nature.

43.    Plaintiff Steven Salpeter, an adult whose principal place of residence is in the City of Freeport, State of New York, brings this action individually and in his capacity as representative of the Estate of Susan Widen-Salpeter. Plaintiff Steven Salpeter is pursuing this action due to the

29

wrongfully caused premature death of his wife, Susan Widen-Salpeter, on behalf the Estate of Susan Widen-Salpeter and all wrongful death beneficiaries/statutory distributees of Susan Widen-Salpeter. The premature death of Susan Widen-Salpeter was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to New York Est. Powers & Trusts Law §§ 11-3-.1, *et seq*. and New York Est. Powers & Trusts Law §§ 5-4.1, *et seq*., Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

44.    Plaintiff Susan Schnelle is a citizen of the City of Lawai, State of Hawaii. At all pertinent times, including from approximately January 1995 to September 2013, Plaintiff Susan Schnelle purchased and applied talcum powder in the States of Hawaii and California. In or around September 2013, Plaintiff Susan Schnelle was diagnosed with ovarian cancer, which developed in the State of Hawaii. Plaintiff Susan Schnelle developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Susan Schnelle has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Susan Schnelle has otherwise been damaged in a personal and pecuniary nature.

30

45.    Plaintiff Sharon Shelton is a citizen of the City of Kingston, State of Michigan.  At all pertinent times, including from approximately July 1968 to June 2012, Plaintiff Sharon Shelton purchased and applied talcum powder in the State of Michigan.  In or around June 2012, Plaintiff Sharon Shelton was diagnosed with ovarian cancer, which developed in the State of Michigan. Plaintiff Sharon Shelton developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Sharon Shelton has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sharon Shelton has otherwise been damaged in a personal and pecuniary nature.

46.    Plaintiff Martha Shoemaker is a citizen of the City of Leakey, State of Texas.  At all pertinent times, including from approximately August 1968 to December 2012, Plaintiff Martha Shoemaker purchased and applied talcum powder in the State of Texas.  In or around November 2013, Plaintiff Martha Shoemaker was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Martha Shoemaker developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Martha Shoemaker has incurred and will incur medical expenses in the future, has endured and will endure pain and

suffering and loss of enjoyment of life, and Plaintiff Martha Shoemaker has otherwise been damaged in a personal and pecuniary nature.

47.    Plaintiff Sarah Simpson is a citizen of the City of Beaver Dam, State of Kentucky. At all pertinent times, including from approximately October 1965 to May 2013, Plaintiff Sarah Simpson purchased and applied talcum powder in the State of Kentucky. In or around June 2013, Plaintiff Sarah Simpson was diagnosed with ovarian cancer, which developed in the State of Kentucky. Plaintiff Sarah Simpson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Sarah Simpson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sarah Simpson has otherwise been damaged in a personal and pecuniary nature.

48.    Plaintiff Lois Slemp is a citizen of the City of Wiles, State of Virginia. At all pertinent times, including from approximately January 1970 to August 2012, Plaintiff Lois Slemp purchased and applied talcum powder in the State of Virginia. In or around August 2012, Plaintiff Lois Slemp was diagnosed with ovarian cancer, which developed in the State of Virginia. Plaintiff Lois Slemp developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Lois Slemp has incurred and will incur medical

32

expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lois Slemp has otherwise been damaged in a personal and pecuniary nature.

49.    Plaintiff Chrystal Supple is a citizen of the City of Elyria, State of Ohio.  At all pertinent times, including from approximately January 1971 to January 2013, Plaintiff Chrystal Supple purchased and applied talcum powder in the State of Ohio.  In or around September 2013, Plaintiff Chrystal Supple was diagnosed with ovarian cancer, which developed in the State of Ohio. Plaintiff Chrystal Supple developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Chrystal Supple has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Chrystal Supple has otherwise been damaged in a personal and pecuniary nature.

50.    Plaintiff Lenora Townsen is a citizen of the City of Savannah, State of Georgia.  At all pertinent times, including from approximately January 1970 to June 2013, Plaintiff Lenora Townsen purchased and applied talcum powder in the States of Illinois and Georgia.  In or around June 2013, Plaintiff Lenora Townsen was diagnosed with ovarian cancer, which developed in the State of Georgia.  Plaintiff Lenora Townsen developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Lenora Townsen has

33

incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lenora Townsen has otherwise been damaged in a personal and pecuniary nature.

51.     Plaintiff Brenda Joyce Warren is a citizen of the City of Orlando, State of Florida. At all pertinent times, including from approximately January 1987 to July 2011, Plaintiff Brenda Joyce Warren purchased and applied talcum powder in the State of Florida.  In or around July 2011, Plaintiff Brenda Joyce Warren was diagnosed with ovarian cancer, which developed in the State of Florida.  Plaintiff Brenda Joyce Warren developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Brenda Joyce Warren has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Brenda Joyce Warren has otherwise been damaged in a personal and pecuniary nature.

52.     Plaintiff Laverne Williams is a citizen of the City of Lincoln, State of Nebraska. At all pertinent times, including from approximately January 1985 to January 2010, Plaintiff Laverne Williams purchased and applied talcum powder in the State of Tennessee.  In or around October 2013, Plaintiff Laverne Williams was diagnosed with ovarian cancer, which developed in the State of Tennessee.  Plaintiff Laverne Williams developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of

34

talcum powder.  As a direct and proximate result of these injuries, Plaintiff Laverne Williams has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Laverne Williams has otherwise been damaged in a personal and pecuniary nature.

53.     Plaintiff Floye Zimmerman is a citizen of the City of Perryville, State of Arkansas. At all pertinent times, including from approximately October 1948 to January 2012, Plaintiff Floye Zimmerman purchased and applied talcum powder in the States of Arkansas, Georgia, New Mexico, Oklahoma and Illinois.  In or around January 2012, Plaintiff Floye Zimmerman was diagnosed with ovarian cancer, which developed in the State of Arkansas.  Plaintiff Floye Zimmerman developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Floye Zimmerman has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Floye Zimmerman has otherwise been damaged in a personal and pecuniary nature.

54.     Plaintiff Willie Mae English is a citizen of the City of Mobile, State of Alabama. At all pertinent times, including from approximately January 1971 to August 2012, Plaintiff Willie Mae English purchased and applied talcum powder in the State of Alabama.  In or around August 2012, Plaintiff Willie Mae English was diagnosed with ovarian cancer, which developed in the State of Alabama.  Plaintiff Willie Mae English developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective

35

nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Willie Mae English has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Willie Mae English has otherwise been damaged in a personal and pecuniary nature.

55.     Plaintiff Dennis Zierenberg, an adult whose principal place of residence is in the City of Mount Vernon, State of Illinois. He was the lawful spouse of the decedent Connie Sue Zierenberg, at the time of her premature death on August 1, 2011. The premature death of Connie Sue Zierenberg was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to §537.080 of the Missouri Revised Statutes, which is commonly known as the Missouri "Wrongful Death Act," Plaintiff, on behalf of the class of persons entitled to recover under the Wrongful Death Act, seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

56.     Plaintiff Sylvia White is a citizen of the City of Tucson, State of Arizona. At all pertinent times, including from approximately January 1996 to September 2012, Plaintiff Sylvia White purchased and applied talcum powder in the State of Arizona. In or around September 2012, Plaintiff Sylvia White was diagnosed with ovarian cancer, which developed in the State of

Arizona. Plaintiff Sylvia White developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Sylvia White has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sylvia White has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Sylvia White applied talcum powder in the State of Arizona.

57.    Plaintiff Nicky Battaglia Sr., an adult whose principal place of residence is in the City of Victorville, State of California, and was the lawful spouse of the decedent Lois Battaglia, at the time of her premature death on October 10, 2012. Plaintiff Nicky Battaglia Sr. brings this action individually, and as Representative of the Estate of Lois Battaglia, deceased. The premature death of Lois Battaglia was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Cal. Code Civ. Proc. § 377.30 and Cal. Code Civil Proc. §§ 377.60 *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

37

58.    Plaintiff Eron Evans is a citizen of the City of Baytown, State of Texas.  At all pertinent times, including from approximately 1974 to 2012, Plaintiff Eron Evans purchased and applied talcum powder in the State of Texas. In or around December 24, 2012, Plaintiff Eron Evans was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Eron Evans developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Eron Evans has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Eron Evans has otherwise been damaged in a personal and pecuniary nature.

59.    Plaintiff Frances Lange is a citizen of the City of Morristown, State of Minnesota. At all pertinent times, including from approximately 1979 to present, Plaintiff Frances Lange purchased and applied talcum powder in the State of Minnesota.  In or around September 2008, Plaintiff Frances Lange was diagnosed with ovarian cancer, which developed in the State of Minnesota.  Plaintiff Frances Lange developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Frances Lange has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Frances Lange has otherwise been damaged in a personal and pecuniary nature.

60.    Plaintiff Deborah L. Smith is a citizen of the City of Brooklyn, State of Maryland. At all pertinent times, including from approximately January 1976 to January 1998, Plaintiff Deborah L. Smith purchased and applied talcum powder in the State of Maryland.  In or around November 2011, Plaintiff Deborah L. Smith was diagnosed with ovarian cancer, which developed in the State of Maryland.  Plaintiff Deborah L. Smith developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Deborah L. Smith has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Deborah L. Smith has otherwise been damaged in a personal and pecuniary nature.

61.    Plaintiff Patrick Maharg is an adult whose principal place of residence is in the City of Manassas, State of Pennsylvania. He was the lawful spouse of the decedent Denise Maharg, at the time of her premature death on August 9, 2012.  Plaintiff Patrick Maharg brings this action in his capacity as Trustee Ad Litem on behalf of all persons entitled to share in the damages. The premature death of Denise Maharg was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Penn. Code § 2202, *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her

39

estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

62.    Plaintiff Samantha Wells is a citizen of the City of Houston, State of Texas. At all pertinent times, including from approximately 1983 to 2013, Plaintiff Samantha Wells purchased and applied talcum powder in the State of Texas. In or around December 28, 2012, Plaintiff Samantha Wells was diagnosed with ovarian cancer, which developed in the State of Texas. Plaintiff Samantha Wells developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Samantha Wells has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Samantha Wells has otherwise been damaged in a personal and pecuniary nature.

63.    Plaintiff Walter Cunningham, is an adult whose principal place of residence is in the City of Alabaster, State of Alabama, brings this action individually and in his capacity as Administrator of the Estate of Mildred Cunningham. Plaintiff Walter Cunningham is pursuing this action due to the wrongfully caused premature death of his wife, Mildred Cunningham, on behalf of himself and that decedent's estate. The premature death of Mildred Cunningham was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and

40

pursuant to Ala. Code §6-5-410, *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, and other damages as allowed by law.

64.    The Defendant, Johnson & Johnson, is a New Jersey corporation with its principal place of business in the State of New Jersey.

65.    At all pertinent times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

66.    The Defendant, Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.

67.    At all pertinent times, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

68.    The Defendant, Imerys Talc America, Inc., f/k/a Luzenac America, Inc., is a Delaware corporation with its principal place of business in the State of California.

69.    At all pertinent times, Imerys Talc America, Inc., f/k/a Luzenac America, Inc., has been in the business of mining and distributing talcum powder for use in talcum powder based products, including the PRODUCTS. Imerys Talc is the successor or continuation of Luzenac America, Inc., and Imerys Talc America, Inc. is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.

41

70.    The Defendant, Personal Care Products Counsel ("PCPC"), f/k/a Cosmetic, Toiletry, and Fragrance Association ("CTFA"), is a corporation organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia.

71.    PCPC is the successor or continuation of CTFA and PCPC is legally responsible for all liabilities incurred when it was known as CTFA.

72.    At all pertinent times, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of PRODUCTS, and introduced such products into interstate commerce with knowledge and intent that such products be sold in the States of Alabama, Arizona, Arkansas, California, Colorado, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Virginia, Washington and Wisconsin.

## VENUE

73.    RSMo § 508.010, Missouri's general venue statute provides:

Notwithstanding any other provision of law, in all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue shall be in the county where the plaintiff was first injured by the wrongful acts or negligent conduct alleged in the action.

RSMo § 508.010.4

74.    Plaintiff Valerie Swann was living in St. Louis City, where she first used the PRODUCTS, and therefore was "first injured by the wrongful acts or negligent conduct alleged" in this action.  Therefore, venue is proper in the City of St. Louis pursuant to RSMo § 508.010.4.

42

75.     Venue is proper in this Court because Plaintiff Valerie Swann was first exposed in the City of St. Louis, State of Missouri, as this is where, at all pertinent times, she purchased, used, and was exposed to the Products at issue.

### ALLEGATIONS COMMON TO ALL COUNTS

76.     Talc is a magnesium trisilicate and is mined from the earth.  Talc is an inorganic mineral.  The Defendant, Imerys Talc America, Inc., f/k/a Luzenac America, Inc., mined the talc contained in the PRODUCTS.

77.     Talc is the main substance in talcum powders.  The Johnson & Johnson Defendants manufactured the PRODUCTS.   The PRODUCTS are composed almost entirely of talc.

78.     At all pertinent times, a feasible alternative to the PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects.  Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness.

79.     Imerys Talc[1] has continually advertised and marketed talc as safe for human use.

80.     Imerys Talc supplies customers with material safety data sheets for talc.  These material safety data sheets are supposed to convey adequate health and warning information to its customers.

81.     Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity.  During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable, and "clinically proven

---

[1] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

gentle and mild". The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

82. During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan "A sprinkle a day keeps odor away", and through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day." And "SHOWER to SHOWER can be used all over your body."

83. The Plaintiffs used the PRODUCTS to dust their perineum for feminine hygiene purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

84. In 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

85. In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk in ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

86. Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly

44

all of these studies have reported an elevated risk for ovarian cancer associated with genital talc use in women.

87.    In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

88.    In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer.

89.    On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies as far back as 1960's ". . . show[ ] conclusively that the frequent use of talcum powder in the genital area pose[ ] a serious health risk of ovarian cancer." The letter cited a recent study by Dr. Bernard Harlow from

45

Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate. The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about ovarian cancer risk they pose.

90.     In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

91.     In February of 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen. IARC which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%. IARC concluded with this "Evaluation": "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder." By definition "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

92.     In approximately 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A" , "very toxic",

"cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

93.    In 2006, Imerys Talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them to be used in the PRODUCTS. These MSDSs not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

94.    The Defendants had a duty to know and warn about the hazards associated with the use of the PRODUCTS.

95.    The Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the use of its products.

96.    In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding talc.

97.    As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Plaintiffs were injured and suffered damages, namely ovarian cancer, which required surgeries and treatments.

## COUNT ONE – STRICT LIABILITY FOR FAILURE TO WARN
### (Imerys Talc and Johnson & Johnson Defendants)

98.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

99.    At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew that Johnson & Johnson was then packaging and selling to consumers

as the PRODUCTS and it knew that consumers of the PRODUCTS were using it to powder their perineal regions.

100.    At all pertinent times, Imerys Talc knew and/or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when used in a woman's perineal regions, and it knew or should have known that Johnson & Johnson was not warning its consumers of this danger.

101.    At all pertinent times, the Johnson & Johnson Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing the PRODUCTS in the regular course of business.

102.    At all pertinent times, Plaintiffs used the PRODUCTS to powder their perineal area, which is a reasonably foreseeable use.

103.    At all pertinent times, all Defendants in this action knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

104.    At all pertinent times, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of ovarian cancer associated with the use of the PRODUCTS by women to powder their perineal area. Defendants themselves failed to properly and adequately warn and instruct Plaintiffs as to the risks and benefits of the PRODUCTS given Plaintiffs' need for this information.

105.    Had the Plaintiffs received a warning that the use of the PRODUCTS would have significantly increased their risk of ovarian cancer, she would not have used the same. As a

48

proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the PRODUCTS, Plaintiffs have been injured catastrophically, and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

106.    The development of ovarian cancer by the Plaintiffs was the direct and proximate result of the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings; Plaintiffs have suffered injuries and damages including but not limited to conscious pain and suffering of Plaintiffs, medical expenses and lost wages.

107.    The Defendants' products were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which the Plaintiffs justifiably relied in electing to use the products. The defect or defects made the products unreasonably dangerous to those persons, such as Plaintiffs, who could reasonably be expected to use and rely upon such products. As a result, the defect or defects were a producing cause of the Plaintiffs' injuries and damages.

108.    The Defendants' products failed to contain, and continue to this day not to contain, adequate warnings and/or instructions regarding the increased risk of ovarian cancer with the use of their products by women. The Defendants continue to market, advertise, and expressly represent to the general public that it is safe for women to use their product regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960's that their products increase the risk of ovarian cancer in women when used in the perineal area.

49

WHEREFORE, Plaintiffs pray for judgment against Imerys Talc and the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT TWO – NEGLIGENCE
### (Imerys Talc)

109.    Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully and completely herein.

110.    At all pertinent times, Defendants had a duty to exercise reasonable care to consumers, including Plaintiffs herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

111.    At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew and/or should have known was then being packaged and sold to consumers as the PRODUCTS by the Johnson and Johnson Defendants.    Further, Imerys Talc knew and/or should have known that consumers of the PRODUCTS were using it to powder their perineal regions.

112.    At all pertinent times, Imerys Talc knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

113.    At all pertinent times, Imerys Talc knew or should have known that Johnson & Johnson was not providing warnings to consumers of the PRODUCTS of the risk of ovarian cancer posed by talc contained therein.

114.    At all pertinent times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants, when it knew or should have known that the talc would be used in the

50

PRODUCTS, without adequately taking steps to ensure that ultimate consumers of the PRODUCTS, including Decedent, received the information that Imerys Talc possessed on the carcinogenic properties of talc, including its risk of causing ovarian cancer.

115.    As a direct and proximate result of Imerys Talc's negligence, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiffs to develop ovarian cancer; Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering, and/or death; Plaintiffs were caused to sustain damages as a direct and proximate result, in some cases to include untimely death, funeral and burial costs, as well as the loss of his wife's services, companionship, comfort, instruction, guidance, counsel, training and support.

WHEREFORE, Plaintiff prays for judgment against Imerys Talc in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT THREE – NEGLIGENCE
### (Johnson & Johnson Defendants)

116.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

117.    The Johnson & Johnson Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

- In failing to warn Plaintiffs of the hazards associated with the use of the PRODUCTS;

- In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

- In failing to properly test their products to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

- In failing to inform ultimate users, such as Plaintiffs as to the safe and proper methods of handling and using the PRODUCTS;

- In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

- In failing to instruct the ultimate users, such as Plaintiffs, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

- In failing to inform the public in general and the Plaintiffs in particular of the known dangers of using the PRODUCTS for dusting the perineum;

- In failing to advise users how to prevent or reduce exposure that caused increased risk for ovarian cancer;

- In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary.

- In failing to act like a reasonably prudent company under similar circumstances.

Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs.

118. At all pertinent times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

119. As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer; Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

52

## COUNT FOUR – BREACH OF EXPRESS WARRANTY
### (Johnson & Johnson Defendants)

120.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

121.    The Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in the perineal area.

122.    The PRODUCTS did not conform to these express representations because they cause serious injury when used by women in the perineal area in the form of ovarian cancer.

123.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer; Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT FIVE – BREACH OF IMPLIED WARRANTIES
### (Johnson & Johnson Defendants)

124.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

125.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Johnson & Johnson Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the perineal area, and impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

53

126.    Defendants breached their implied warranties of the PRODUCTS sold to Plaintiffs because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

127.    As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer; Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT SIX – CIVIL CONSPIRACY
### (All Defendants)

128.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

129.    Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiffs' injuries, disease, and/or illnesses by exposing the Plaintiffs to harmful and dangerous PRODUCTS. Defendants further knowingly agreed, contrived, confederated and conspired to deprive the Decedent and Plaintiff of the opportunity of informed free choice as to whether to use the PRODUCTS or to expose her to said dangers. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the PRODUCTS.

130.    In furtherance of said conspiracies, Defendants performed the following overt acts:

54

a. For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

    i. Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Plaintiff and Decedent (as set out in the "Facts" section of this pleading); In addition, on July 27, 2005 Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

    ii. The Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off";

    iii. Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c. By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce the Plaintiffs to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to the PRODUCTS.

131.    Decedent reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the PRODUCTS.

132.    As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer; Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT SEVEN – CONCERT OF ACTION
### (All Defendants)

133.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

134.    At all pertinent times, Imerys Talc, the Johnson & Johnson Defendants, and the PCPC knew that the PRODUCTS should contain warnings on the risk of ovarian cancer posed by women using the product to powder the perineal region, but purposefully sought to suppress such information and omit from talc based products so as not to negatively affect sales and maintain the profits of the Johnson & Johnson Defendants, Imerys Talc, and the member of the PCPC.

135.    As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer; Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT EIGHT – PUNITIVE DAMAGES
### (All Defendants)

136.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

137.    The Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

d.   Defendants knew of the unreasonably high risk of ovarian cancer posed by the PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action;

e.   Despite their knowledge of the high risk of ovarian cancer associated with the PRODUCTS, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling;

f.   Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of the PRODUCTS, including Plaintiffs.    Defendants' conduct, as described herein, knowing the dangers and risks of the PRODUCTS, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action was outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the PRODUCTS.

138.    As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, the Plaintiffs have sustained damages as set forth above.

WHEREFORE, Plaintiff prays for a judgment for punitive damages against all Defendants in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

## COUNT NINE – WRONGFUL DEATH
### (Against All Defendants)

139.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

140.    Defendants knew of the dangerous condition of the PRODUCTS, knew it posed a danger to their consumers including Plaintiffs, but chose not to include any warnings regarding the dangerous condition of the PRODUCTS.

141.    Defendants showed complete indifference to or conscious disregard for the safety of Plaintiffs by the conduct described herein, which Defendants should have known failure to include a warning for the PRODUCTS could cause problems.

142.    Plaintiffs are entitled to exemplary damages to punish Defendants and to deter Defendants and others in similar situations from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendants for exemplary damages for the aggravating circumstances of decedents Susan Widen-Salpeter, Connie Zierenberg, Denise Maharg's deaths, to punish Defendants, and to deter Defendants and others from like conduct, and such other and further relief as this Court deems just, proper, and equitable.

## COUNT TEN – CONCERT OF ACTION
### (Defendant Personal Care Products Council)

143.    Plaintiffs repeat and reallege each of the preceding paragraphs of this Complaint as if set forth at length herein.

144.    Upon information and belief, Defendant Personal Care Products Council f/k/a Cosmetic, Toiletries, and Fragrance Council knowingly and willfully aided and abetted the fraudulent marketing and sales described herein.

58

145.    Defendant PCPC aided and abetted this fraudulent scheme by providing substantial assistance to Defendants, Imerys and Johnson & Johnson. This substantial assistance included, among other things, the "Facts" section of this pleading and the facts set forth in Paragraph 125.

146.    Without Defendant PCPC's substantial assistance, involvement and participation; the fraudulent scheme would not have been possible.

147.    Plaintiffs suffered serious injury and pecuniary losses as a proximate result of the aiding and abetting of Defendant PCPC, including but not limited to the loss of the Plaintiffs' life.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT ELEVEN – NEGLIGENT MISREPRESENTATION
### (All Defendants)

148.    Plaintiffs realleges each and every allegation of this Complaint as if each were set forth fully and completely herein.

149.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiffs and the public, that the PRODUCTS had been tested and found to be safe and effective for use in the perineal area. The representations made by Defendants, in fact, were false.

150.    Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

59

151.    Defendants breached their duty in representing that the PRODUCTS have no serious side effects.

152.    As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that the PRODUCTS had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects.

153.    As a proximate result of Defendants' conduct, Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## TOLLING STATUTE OF LIMITATIONS

154.    Plaintiff realleges each and every allegation of this Complaint as if each were set forth fully herein.

155.    Plaintiffs have suffered an illness that has a latency period and does not arise until many years after exposure. Plaintiffs' illness did not distinctly manifest itself until she was made aware that her ovarian cancer could be caused by her use of the Defendants' products. Consequently, the discovery rule applies to this case and the statute of limitations has been tolled until the day that Plaintiffs knew or had reason to know that her ovarian cancer was linked to her use of the Defendants' products.

156.    Furthermore, the running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and conduct.    Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the true risks associated with PRODUCTS.

157.    As a result of Defendants' actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

158.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of PRODUCTS.    Defendants were under a duty to disclose the true character, quality and nature of PRODUCTS because this was non-public information which the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to Plaintiffs, their medical providers and/or their health facilities.

159.    Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks.    Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations.

Dated: July 31, 2014                              Respectfully submitted,

                                                  ONDER, SHELTON,
                                                  O'LEARY & PETERSON, LLC

61

By:    /s/ Stephanie Rados
James G. Onder, #38049
Michael J. Quillin, #61877
Stephanie L. Rados, #65117
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
314-963-9000 telephone
314-963-1700 facsimile
onder@onderlaw.com
quillin@onderlaw.com
rados@onderlaw.com

OF COUNSEL:

R. Allen Smith, Jr. – MSB # 99984
THE SMITH LAW FIRM, PLLC
681 Towne Center Boulevard, Suite B
Ridgeland, Mississippi 39157
Telephone:  (601) 952-1422
Facsimile:  (601) 952-1426

Timothy W. Porter – MSB # 9687
Patrick C. Malouf – MSB # 9702
John T. Givens – MSB #101561
PORTER & MALOUF, PA
Post Office Box 12768
Jackson, Mississippi 39236-2768
Telephone:  (601) 957-1173
Facsimile:  (601) 957-7366

Ted G. Meadows – ALB # MEA014
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Attorneys for Plaintiffs*