**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738-MAS-RLS<br><br>MDL Case No. 2738<br><br>Motion Day: May 19, 2025 |

**DEFENDANT JOHNSON & JOHNSON'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS SECOND MOTION TO REMOVE BEASLEY ALLEN FROM THE PLAINTIFFS' STEERING COMMITTEE**

# TABLE OF CONTENTS

                                                      **Page**

INTRODUCTION ...............................................................................................................1

FACTUAL SUMMARY .....................................................................................................2

ARGUMENT ......................................................................................................................6

CONCLUSION ...................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Red River Talc LLC*,
   No. 24-90505, ECF No. 1424 (Bankr. S.D. Tex. Mar. 31, 2025).................. 2, 3, 4

*Michaels v. Woodland*,
   988 F. Supp. 468 (D.N.J. 1997)...........................................................................5

**Rules**

New Jersey Rule of Professional Conduct 1.13........................................................5

New Jersey Rule of Professional Conduct 4.2..........................................................5

**Other Authorities**

Manual for Complex Litigation § 10.224 (4th ed. Sept. 2024 update)......................6

## INTRODUCTION

Pending before the Court are two motions stemming from Beasley Allen's serial ethical lapses. The first concerns Beasley Allen's improper relationship with Johnson & Johnson's former lawyer, James Conlan, and Beasley Allen's attempts to cover that relationship up. *See* Dkt. 28760-1. That motion seeks disqualification of Beasley Allen or its removal from the Plaintiffs' Steering Committee ("PSC"). J&J's second motion is about additional misconduct—namely, Beasley Allen's attempt to prevent resolution of this litigation through a pre-packaged bankruptcy plan by falsely certifying that it had obtained informed consent from claimants to vote against the plan. *See* Dkt. 33290-1. J&J's evidence showed that the claimants never provided Beasley Allen their consent and that, in fact, they *wanted to vote in favor of the plan*. *Id.*

Since the second motion was filed, additional evidence was elicited through the bankruptcy case subsequently filed in the Southern District of Texas, which confirmed Beasley Allen cast votes for its clients without their consent—but on a far greater scale than previously known. After reviewing that evidence, Bankruptcy Judge Christopher Lopez found that Beasley Allen had falsely certified that it had the informed consent of over *eight thousand* of its clients, with full knowledge that no such consent had been obtained. Worse still, the Judge found that Beasley Allen voted to reject the proposed resolution plan on behalf of over five thousand of those

1

clients (thereby depriving them of any recovery in bankruptcy), while simultaneously stating its view that those clients' claims were non-compensable in the tort system (thereby depriving them of any recovery outside of bankruptcy).

There is simply no way that a firm that has engaged in such conduct can sit in a leadership position in this litigation. Beasley Allen should be immediately removed from the PSC.

## FACTUAL SUMMARY

J&J's recent motion explained that Beasley Allen purported to vote against the bankruptcy plan without claimant consent and against the claimants' wishes. *See* Dkt. 33290-1 at 6-7. Specifically, Beasley Allen cast "no" votes on behalf of clients of the Onder law firm who certified that they granted consent to OnderLaw to vote "yes" on the plan. *See* Dkt. 33290-1 at 6-7 & Exs. 1-21. The bankruptcy court explained that the process OnderLaw had used to obtain the consent of its clients to support the plan was "the standard" in bankruptcy. *In re: Red River Talc LLC*, No. 24-90505, ECF No. 1424 at 32 (Bankr. S.D. Tex. Mar. 31, 2025). This finding alone confirms that the claimants' ballots at issue in J&J's motion were not validly cast by Beasley Allen. Onder's votes were: "Onder received approximately 11,000 affirmative responses using an internal ballot process," and then, for his remaining clients, relied on a specific power of attorney in his engagement letter. *Id.* Because Beasley Allen attempted to vote "no" on behalf of some of the same claimants, those

2

votes were necessarily invalid. The bankruptcy court's findings confirm that Beasley Allen cast votes on behalf of another firm's clients against their wishes.

The bankruptcy court's findings also confirm that Beasley Allen's certification that it had "informed consent" to vote against the plan on behalf of all claimants listed on its master ballot was false. *See* Dkt. 33290-1 at 6. As the bankruptcy court explained, Andy Birchfield "certified each of his 11,000 votes under Option A" (the "informed consent" option), "[b]ut the evidence confirmed that he received only 3,000 affirmative responses from clients communicating how the client wanted to vote. The firm did not receive a response from the remaining 8,000." *Red River* at 33; *see also* Ex. 4 to Declaration of Stephen D. Brody in Support of Defendant Johnson & Johnson's Supplemental Brief in Support of Its Second Motion to Remove Beasley Allen From the Plaintiffs' Steering Committee ("Brody Decl."), 1433:9-12, 1436:23-25. Birchfield testified in the bankruptcy hearing that he believed a non-response from claimants was the same as informed consent—i.e., that he "collected their silence as a response," *id.* at 1441:2-23—but the bankruptcy court rejected that excuse: "silence" does not "equal[] acceptance based on the required certification language." *Red River* at 34. We already knew that Beasley Allen falsely certified consent for at least 21 claimants who authorized OnderLaw to vote in favor of the plan. *See* Dkt. 33290-1 at 7. The bankruptcy court

3

proceeding revealed that Beasley Allen's certifications were inaccurate as to thousands of additional claimants.

Even more egregious, Beasley Allen admitted to knowingly prejudicing its own clients' interests. As the bankruptcy court pointedly noted, "Birchfield also certified that over 5,000 voting clients had gynecological cancer on his Master Ballot Spreadsheet.[] And thousands of these clients were voted to reject the [bankruptcy plan] without any direction from those clients." *Red River* at 34; *see also* Ex. 4 to Brody Decl. 1419:20-1420:11, 1445:20-1447:6. This was a problem, because Birchfield testified that he believes "gynecological [cancer] claims would be non-compensable in the tort system," *id.* at 1420:14-16, based on a lack of a scientific, "causal link" between those cancers and talc use, *id.* at 1428:16-19. *See also id.* at 1494:18-20 ("I do not believe that the science would support prosecution of [gynecological cancer] claims in the tort system."). The upshot, as the bankruptcy court recognized, is that "Birchfield voted on behalf of clients, without their consent, to reject payment under the [plan] even though he believes those clients will not and cannot be paid in the tort system." *Red River* at 34. In other words, as a lawyer who stands to profit personally from the common benefit fund in this MDL, *see* Dkt. 28760-1 at 9, Birchfield shot down his own clients' only chance of recovery—and he did so without their consent. *See also* Ex. 3 to Brody Decl. 1371:23-1372:5,

4

1374:10-19, 1376:13-24 (Birchfield repeatedly confirming Beasley Allen's position that it "would never ever negotiate with J&J in bankruptcy").

And after thwarting a global resolution in bankruptcy with falsely certified votes contrary to the interests of his clients, Birchfield waited less than two weeks before directly soliciting Johnson & Johnson's General Counsel[1] to engage in global settlement negotiations with Mr. Birchfield and his Beasley Allen partner Leigh O'Dell—but now in a forum that he hopes will reward him through the common benefit fund.  *See* Ex. 1 to Brody Decl.  As is evident from its response to his solicitation, *see* Ex. 2 to Brody Decl., Johnson & Johnson would not (and frankly could not) engage with Beasley Allen on any issue in view of Beasley Allen's lack of integrity.  The Company may engage with another firm in the liaison role, but not Beasley Allen.

---

[1] New Jersey RPC 4.2 provides that, absent permission, "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows … to be represented by another lawyer in the matter." RPC 4.2. Off-limits employees include members of J&J's "litigation control group," i.e., "current agents and employees responsible for, or significantly involved in, the determination of the organization's legal position in the matter." RPC 1.13; *see* RPC 4.2.  In other words, absent permission, counsel may not directly contact employees who play a "role in determining the organization's legal position" in the relevant matter. *Michaels v. Woodland*, 988 F. Supp. 468, 471 (D.N.J. 1997).  Although Johnson & Johnson's General Counsel is of course an attorney, the Company is represented by outside litigation counsel and in-house litigation counsel, and the Company considers the direct communication by Mr. Birchfield, without permission, to be wholly improper.

5

## ARGUMENT

This Court has wide latitude to remove Beasley Allen from the PSC. Indeed, any of its breaches of client trust alone would be sufficient. But all of them together confirm that Beasley Allen is not fit to lead this MDL or sit on the PSC. A law firm that casts votes without claimant consent, falsely certifies it has consent, and even votes to reject recovery for clients who otherwise could not recover is not one that can "fairly represent the various interests in the litigation" and "command the respect of their colleagues and work cooperatively with opposing counsel and the court." Manual for Complex Litigation § 10.224 (4th ed. Sept. 2024 update). Beasley Allen has demonstrated itself unfit to represent its own clients' interests, let alone the interests of clients represented by other firms. Its continued presence on the PSC would be an intractable impediment to the fair progression of this litigation.

## CONCLUSION

For the foregoing reasons, J&J's Motion to Remove Beasley Allen from the Plaintiffs' Steering Committee should be granted.

| | |
|---|---|
| Dated: April 14, 2025 | Respectfully submitted, |

/s/ *[signature]*
Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, DC 20006
Tel.: 202-383-5300
sbrody@omm.com

/s/ Jessica Brennan
Jessica L. Brennan
BARNES & THORNBURG LLP
67 E. Park Place, Suite 1000
Morristown, NJ 07960
Tel.: 973-775-6120
jessica.brennan@btlaw.com

*Attorneys for Johnson & Johnson*