# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE: JOHNSON & JOHNSON
TALCUM POWDER PRODUCTS
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY
LITIGATION

Case No. 3:16-md-2738
(MAS)/(RLS)

MLD Case No. 2738

[FILED ELECTRONICALLY]

Return Date: May 6, 2025

---

### NON-PARTY BEASLEY ALLEN'S BRIEF IN OPPOSITION TO JOHNSON & JOHNSON'S SECOND MOTION TO REMOVE BEASLEY ALLEN FROM THE PLAINTIFFS' STEERING COMMITTEE

---

**POLLOCK LAW, LLC**
Jeffrey M. Pollock, Esq.
400 Riverview Plaza, Suite 428
Trenton, New Jersey 08611
609-308-7300
jeff@pollocklaw.net
Certified by the Supreme Court
Of New Jersey as a Civil Trial Lawyer
*Attorney for Andy Birchfield and Beasley Allen*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ....................................................................................................4

    I. J&J's Effort to remove Beasley Allen from Leadership is a Clear Litigation Tactic .............4

    1. Beasley Allen's Decade-Long Leadership in Ovarian Cancer Litigation .......................4

    2. J&J's Efforts to Remove Beasley Allen were (and Continue to Be) a Strategic Attempt to Silence Opposition to Its Bankruptcy Scheme ................................................6

    II. The Factual Basis for J&J's April 2025 Motion Fails .........................................................8

    1. Beasley Allen Voted Consistent with Clients Position .................................................8

       a. Beasley Allen Communicated Extensively with Its Clients Regarding J&J's Bankruptcy Plan ...............................................................................9

       b. J&J's Failure to Follow Its Own Rules reveals J&J's Intent Behind the Submission of the 21 Affidavits ................................................................12

    2. Beasley Allen did not Improperly Interfere with Smith Communicating with Clients ..16

    3. The Dismissal of the RRT Bankruptcy Vindicates the Legal Positions Asserted by Beasley Allen- the Law and Lack of Adequate Compensation for Clients are at Issue, Not Common Benefit Fees ........................................................................17

       a. J&J's Bankruptcy Plans Have Each Failed to Offer Reasonable Compensation or Terms to Ovarian Cancer Clients ...................................................17

       b. Beasley Allen did not Oppose J&J's Bankruptcy based on Common Benefit Fees.19

    4. As the Extensive Record Supports, and as Judge Porto's Order Concludes, there is no Basis for Disqualification or removal Based on Interaction with James Conlan ...........20

    III. The Factual Basis for J&J's April 2025 Motion Fails ......................................................22

    1. The record in the Red River Talc Bankruptcy Proceeding, as well as Judge Lopez's Order, do not Support J&J's claim of "False Certification" ..........................................22

2. There was no Conflict in Voting Against the Plan on Behalf of Women with Non-Ovarian Gynecological Cancer ..................................................................................... 23

3. Birchfield's Letter to Erik Haas and Liz Forminard does not Support Removal or Disqualification ............................................................................................. 25

ARGUMENT ..................................................................................................................... 26

I.    J&J's MOTION TO REMOVE NON-PARTY BEASLEY ALLEN (ITS LITIGATION ADVERSARY IN THIS CASE) FROM THE PLAINTIFFS' STEERING COMMITTEE MUST BE DENIED .......................................................................................................................... 26

A. Legal Standard ........................................................................................................... 26

B. J&J's Grand Plan of Intimidation and Removal of the Plaintiff's Chosen Champion ......... 28

C. The Court Should Reject J&J's Blatant Attempt to Choose Its Adversary ......................... 28

1. J&J's Strategy is Simple – Destroy Its Strongest Adversary so that J&J Can Avoid Paying Out Fair and reasonable Compensation ............................................................. 289

2. New Jersey Law Recognizes that Moving to Disqualify Counsel (Which is Effectively What is at Issue Here) is Always Suspect Because it is Filed to Gain Strategic Advantage ................................................................................................. 30

3. The Manual for Complex Litigation Supports Beasley Allen (and Its Ethical Attorneys) Right to Remain an Advocate on the PSC ................................................... 31

D. Beasley Allen has an Attorney-Client Relationship with the Claimants and Submitted Valid Votes on Their Behalf ............................................................................................. 35

E. The Court Should Deny the Motion Because J&J Cannot Get Multiple Bites at the Apple. 38

F. The Burden of Proof and Production is on J&J and They Have Failed to Carry Either ....... 39

CONCLUSION ................................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Del Valle v. Global Exchange Vacation Club*,
   320 F.R.D. 50 (C.D.Ca. 2017) ...................................................................28

*Dental Health Services, v. RRI Gibbsboro*,
   471 N.J.Super. 184 (App. Div. 2022) ......................................................... 2

*Dewey v. R.J. Reynolds Tobacco Co.*,
   536 A.2d 243 (N.J. 1988) ...........................................................................31

*Fragoso v. Piao*,
   433 F. Supp. 3d 623 (D.N.J. 2019) ............................................................31

*Harker v. Comm'r*,
   82 F.3d 806 (8th Cir. 1996) ........................................................................27

*High 5 Games, LLC v. Marks*,
   2018 WL 2278103 (D.N.J. May 18, 2018) .................................................31

In re LTL Management,
   64 F.4th 84 (3rd Cir. 2023) .............................................................1, 2, 40

In re LTL Management, LLC,
   652 B.R. 433 (D. N.J. 2023) ..................................................................1, 7

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   278 F.3d 175 (3d Cir. 2002) .......................................................................29

In Re Teleglobe Communications,
   493 F.3d 345 (3rd Cir. 2007) ...............................................................26, 27

*LTL Bankruptcy I*,
   64 F.4th 83 (3rd Cir. 2023) ......................................................................... 7

*N. Indiana Pub. Serv, Co. v. Certain Underwriters at Lloyd's London*,
   1996 WL 115466 (N.D. Ind. 1996) ............................................................32

*Office and Prof'l Empls. v. Int'l Union*,
   311 F.R.D. 447 (E.D. Mich. 2015) .............................................................28

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*,
   760 F.2d 1045 (9th Cir. 1985) ....................................................................27

*Panduit Corp. v. All States Plastic Mfg. Co.*,
   744 F.2d 1564 (Fed. Cir. 1984) ..................................................................27

*Richardson-Merrell, Inc. v. Koller*,
   472 U.S. 424 (1985) ....................................................................................30

*Topolewski v. Quorum Health Res., LLC*,
   2013 WL 99843 (M.D. Tenn. Jan. 8, 2013) ...............................................30

*Twenty-First Century Rail Corp. v. N.J. Transit*,

210 N.J. 264 (2012) ............................................................................................... 2

**Statutes**

28 U.S.C. § 1927 .................................................................................................. 29

**Rules**

Federal Rule of Civil Procedure 11 ...................................................................... 29
FRCP 23(a)(4) ...................................................................................................... 28
FRCP 23(g) ........................................................................................................... 27

**Other Authorities**

*Manual for Complex Litigation* § 10.224 ............................................................ 32
*Manual for Complex Litigation* § 10.23 ............................................................. 27
*Manual for Complex Litigation* § 10.23 (4th ed. Sept. 2024 update) ........ 27, 29, 32

## **PRELIMINARY STATEMENT**

Seeking to choose its adversary, J&J files yet another motion to disqualify Beasley Allen.  This motion is fashioned as a Motion to Remove Beasley Allen from the Plaintiffs' Steering Committee.  J&J's motives are highly suspect having (1) their first bankruptcy dismissed by the Third Circuit (LTL I[1]), (2)  their second bankruptcy dismissed by Judge Kaplan in the District of New Jersey (LTL II[2]), and (3) their third bankruptcy dismissed by Judge Lopez after they turned to Texas to circumvent Third Circuit precedent in the hopes of obtaining a more receptive forum for the "Texas Two-Step."   J&J has publicly and repeatedly blamed the failures of its bankruptcy efforts on the Beasley Allen firm and, particularly, Andy Birchfield.  While pursuing bankruptcy to avoid paying fair and adequate compensation to its victims, J&J simultaneously attacked Andy Birchfield and Beasley Allen in both Federal and State Courts.   On July 19, 2024, Judge Porto of the New Jersey Superior Court ruled J&J's ethics allegations were unsupported and dismissed J&J's motion.  J&J's second motion should also be dismissed, and these improper litigation tactics must cease.

Beasley Allen and Birchfield remain focused on one single issue: fair and

---

[1]     *In re LTL Management,* 64 F.4th 84 (3rd Cir. 2023).

[2]     Dismissed as having been filed in bad faith.   *In re LTL Management, LLC*, 652 B.R. 433 (D. N.J. 2023).

adequate compensation for Beasley Allen's clients and other ovarian cancer plaintiffs. In contrast, J&J's goals are to forever cap its liability and provide a paltry amount per plaintiff rather than the compensation its victims are entitled to.  J&J has an exceptionally strong balance sheet and over $31 billion in cash and securities.[3] Without marring its AAA credit rating, J&J could easily resolve this matter and assuage the injuries its defective products have wreaked upon the claimants, but it refuses to do so unless it can trap future claimants in a trust that substantially under compensates cancer victims.

In evaluating a motion for disqualification, the Court must balance competing interests, weighing the need to maintain the highest standards of the profession against the client's right to choose their counsel.[4]  In this balancing, the burden is on the movant (J&J) to establish a factual and legal basis.  Both Third Circuit and New Jersey law view disqualification motions skeptically in light of their potential abuse for strategic advantage.[5]  Disqualification motions are highly disfavored as they are a "harsh remedy which must be used sparingly." [6]

J&J's allegations regarding voting ignore Judge Lopez's dismissal of the

---

[3]  Id. at 106.

[4]  *Twenty-First Century Rail Corp. v. N.J. Transit*, 210 N.J. 264, 273-74 (2012).

[5]  *Escobar v. Mazie*, 460  N.J.Super. 520, 526 (App. Div. 2019).

[6]  *Dental Health Services, v. RRI Gibbsboro*, 471 N.J.Super. 184, 192 (App. Div. 2022).

bankruptcy and the conclusions in his opinion that there was no bad faith by plaintiff firms in the voting.[7] Rather, Judge Lopez made numerous findings of J&J's "solicitation irregularities."[8] The Court also found that J&J's "prepetition solicitation and voting issues are troubling."[9] And while those findings raise issues regarding J&J's conduct which this Court could fairly consider here, they make clear that J&J has not met its weighty burden in relation to this motion.

Both of J&J's purported ethics allegations pertaining to RPC 1.13 (based upon mediation with Mr. Conlan) and RPC 4.2 (a letter to Mr. Erik Haas and Ms. Liz Forminard) fail. Mr. Haas and Ms. Forminard are in-house counsel at J&J. Ms. Forminard is General Counsel and Mr. Haas is Vice President of Worldwide Litigation. Andy Birchfield wrote a letter to Ms. Forminard as well as to Mr. Haas— and that letter was an invitation to communicate regarding resolution. There was **no discussion on the merits** rather it was a request to discuss. RPC 4.2 applies to communications on the substance (merits) of the matter. An invitation to discuss is not a discussion on the merits.

Regarding the accusations made by J&J pertaining to Conlan, Beasley Allen

---

[7]     *See* Dismissal Order of March 31, 2024, at 3, Dkt. 1424, *In re Red River Talc LLC*, No. 24-90505, attached as **Exhibit 1** ("Plaintiffs' firms voted tens of thousands of claims without either hearing directly from their clients or having the requisite authority to do so. They did not do it in bad faith.")

[8]     *Id.* at 57.

[9]     *Id.* at 55.

again urges the Court to adopt in total Judge Porto's extensive and well-reasoned opinion, denying J&J's motion to disqualify or remove from Beasley Allen from leadership.[10]

The burden is upon J&J, the movant, to adduce evidence of an actual basis for removal from the Plaintiffs Steering Committee. Not only has J&J failed to adduce any evidence warranting such drastic action, but rather the proof here is that J&J is simply continuing its attacks upon Beasley Allen and Andy Birchfield despite knowing that each of these attacks have already been rejected and each is without merit. J&J's motion to disqualify or remove Beasley Allen from the Plaintiffs' Steering Committee should be rejected.

## **BACKGROUND**

I.    **J&J's Effort to Remove Beasley Allen from Leadership is a Clear Litigation Tactic**

1. **Beasley Allen's Decade-Long Leadership in Ovarian Cancer Litigation**

For over a decade, Beasley Allen has been at the forefront of ovarian cancer litigation, vigorously advocating for plaintiffs against Johnson & Johnson (J&J).[11] Since filing its first case on behalf of an ovarian cancer plaintiff in 2014, Beasley

---

[10]    For more detailed arguments, *see* Beasley Allen's submission in response to the Court's Show Cause Order. (Dkt. 33065).

[11]    *See* Declaration of P. Leigh O'Dell dated May 6, 2025 ("O'Dell Decl.")

Allen's attorneys—Ted Meadows, David Dearing, and Leigh O'Dell—have played lead roles in 14 of the 17 ovarian cancer trials conducted in courts across California, Florida, Georgia, Illinois, Missouri, New Jersey, and Pennsylvania. While decisions were overturned on jurisdictional grounds, juries awarded plaintiffs more than $724 million in damages, underscoring Beasley Allen's ability to effectively prosecute these claims.

As Co-Lead Counsel of the Plaintiffs' Steering Committee, Ms. O'Dell has been deeply involved in all aspects of the Multi-District Litigation (MDL) proceedings before this Court. She has appeared at numerous hearings, including the 2019 *Daubert* hearing, and has been heavily involved in critical discovery efforts, including expert development, depositions, and briefing on nearly every issue relevant to the litigation. Her work, alongside Beasley Allen attorneys and counsel from other firms, has been instrumental in preparing bellwether cases, further solidifying the firm's leadership in this litigation.

Since her appointment as Co-Lead Counsel, Ms. O'Dell, along with Ms. Michelle Parfitt, has guided attorneys with cases filed in the MDL, ensuring continuous updates, strategic coordination, and direction for the litigation. Their leadership has facilitated seamless communication and collaboration among counsel. Beasley Allen has served as a willing resource to plaintiffs' lawyers throughout the litigation.

Furthermore, Beasley Allen has played a central role in settlement negotiations.[12] Under the leadership of Mr. Birchfield, the firm has engaged in extensive due diligence, coordinated efforts with leadership, and actively participated in negotiations involving J&J, mediators, and other firms. No firm has invested more time and resources into securing a resolution that is just and favorable for ovarian cancer plaintiffs.

J&J's assertion that Beasley Allen lacks the respect of its colleagues is baseless. Beasley Allen has demonstrated unwavering commitment to its clients, navigating every phase of litigation with diligence and integrity. There is no basis for the firm's removal from leadership and doing so would serve only to disrupt Plaintiffs' preparedness and impede their ability to prosecute these cases effectively. J&J's attempt to oust Beasley Allen is not a matter of merit, but rather a calculated effort to weaken Plaintiffs' pursuit of justice.

## 2. J&J's Efforts to Remove Beasley Allen Were (and Continue to Be) a Strategic Attempt to Silence Opposition

The timing of J&J's motion to disqualify Beasley Allen—filed on the very day of its Red River bankruptcy—was no coincidence. It was a deliberate and calculated maneuver to eliminate what it viewed as a primary obstacle to its long-running strategy of using bankruptcy as both a sword and a shield to evade

---

[12]    *See In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 421-1, Declaration of Andy D. Birchfield (Nov. 11, 2024), attached as **Exhibit 2**.

accountability for its asbestos-laden talc products.

J&J's attempt to cap its liability has involved three successive Chapter 11 bankruptcy filings—each rejected in turn. In October 2021, J&J initiated its first so-called "Texas Two-Step" to divest its talc liabilities into LTL Management LLC ("LTL") and file for bankruptcy. That effort failed when, in January 2023, the U.S. Court of Appeals for the Third Circuit dismissed the petition, stating unequivocally that LTL "was not in financial distress [and could not] show its petition served a valid bankruptcy purpose." *LTL Bankruptcy I,* 64 F.4th 83, 110 (3rd Cir. 2023).

Undeterred by the facts or the Third Circuit decision, J&J launched its second bankruptcy attempt just hours after the first dismissal. The bankruptcy court rejected J&J's bankruptcy filing, finding that LTL was "an ATM disguised as a contract" worth nearly $30 billion. Like the Third Circuit, the bankruptcy court found J&J's filing was not in good faith, that J&J lacked financial distress, and dismissed J&J's bankruptcy filing. *LTL Bankruptcy II,* 652 B.R. 433, 448 (Bankr. D.N.J. 2023).

Despite these setbacks, just weeks after Judge Kaplan's decision, J&J signaled to investors in October 2023 that it intended to seek bankruptcy protection for yet a third time. On May 1, 2024, Erik Haas J&J's VP of Litigation, was asked how a third bankruptcy would succeed as the first two had been resounding failures. His answer is telling because it highlights the battle against Andy Birchfield and Beasley Allen, the lawyers who had successfully been fighting for their clients to receive

reasonable compensation:

> **So the primary opponent [to] resolving anything in bankruptcy is the individual I just refer – referenced. The Beasley Allen firm and in particular, Andy Burchfield, who has opposed any resolution through bankruptcy** . . .
>
> ****
>
> First of all, it is this vote that will dictate. The claimants get to speak. The claimants' voices get to be heard. And that's the major distinction here. And if the vote is greater than 75 percent, it doesn't matter that he perhaps persuades his own claimants not to vote in favor of it. And by the way, he doesn't get a vote, his claimants do. So, I would – I would say that I would expect his claimants to take this deal because it's a good deal in any event. But regardless, it is the vote that matters . . . [at] the end of the day.
>
> And so, that's one significant reason why I don't think it's going to matter. **The other significant reason is, I think there's a really good chance that he won't be around for much longer representing his claimants**. We have moved to disqualify the Beasley Allen firm from representing claimants..."[13]

J&J's effort to remove Beasley Allen from leadership is nothing more than a calculated attempt to eliminate a firm that has repeatedly worked to block its bad-faith bankruptcy schemes.

## II.    The Factual Basis for J&J's September 2024 Motion Fails

### 1.    Beasley Allen's Voted Consistent with Clients' Position

J&J's motion is based on 21 affidavits of clients ("Subject Clients") that were voted by both Beasley Allen and Onder Law. Like it's other arguments here, J&J's

---

[13]    *See* Johnson & Johnson Investor Call, Transcript at 22:25-23:13 (May 1, 2024) (emphasis added), attached as **Exhibit 3**.

arguments arise from a false premise.   Beasley Allen (1) was retained by each client (2) believed in good faith it was authorized to vote on behalf of the clients, and (3) properly cast votes pursuant to that authority.[14]   Not one of the Subject Clients has requested that Beasley Allen (1) withdraw as counsel; (2) substitute alternative counsel; or (3) terminate the attorney-client relationship.   Moreover, Judge Lopez had an extraordinarily robust record that included all of J&J's claims of Beasley Allen's self-serving misconduct and yet he still found no wrongdoing by Beasley Allen.[15]

### a. Beasley Allen Communicated Extensively with Its Clients Regarding J&J's Bankruptcy Plan

During the years that Beasley Allen has represented the Subject Clients, Beasley Allen communicated on a routine basis, both in writing and over the phone.[16]   In some instances, Beasley Allen communicated with a particular Subject

---

[14]    Beasley Allen had extensive communication with clients regarding the proposed Plan and provided clients more than three weeks to advise if clients sought to take action contrary to Beasley Allen's recommendation. *See In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 421-1, Declaration of Andy D. Birchfield (Nov. 11, 2024).  This three-week notice period of "negative notice" was sufficient to be considered informed consent. See Expert Report of Judge Hale, attached as **Exhibit 4**.  While Judge Lopez's Order states that Option A requires an affirmative response from each client, there is no finding that Beasley Allen did not have the "informed consent" of its clients, as J&J asserts.  *See* Lopez Order, pp 33-34.

[15]    *See* Dismissal Order of March 31, 2024, at 3, Dkt. 1424, In re Red River Talc LLC, No. 24-90505, attached as **Exhibit 1** ("Plaintiffs' firms voted tens of thousands of claims without either hearing directly from their clients or having the requisite authority to do so. They did not do it in bad faith.")

[16]    *See In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 421-1, Declaration of Andy D. Birchfield (Nov. 11, 2024), **Exhibit 2.**

Client over a hundred times about the Subject Client's case and the overall litigation.[17]

Regarding J&J's solicitation of votes in advance of its third bankruptcy filing, the firm communicated with clients prior to the July 26, 2024, voting deadline. Beasley Allen sent letters to clients, with delivery by email and U.S. Mail, on April 18, 2024; May 13, 2024; May 17, 2024; June 5, 2024; June 21, 2024; and July 12, 2024.[18] Beasley Allen invited all clients to participate in a July 3, 2024, town hall meeting. Beasley Allen spoke with several of the Subject Clients by phone to answer questions about the proposed Plan. Beasley Allen communicated with clients via text on July 24, 2024.

In these communications, which the Bankruptcy Court ordered to be produced in redacted form, Beasley Allen discussed the intended J&J bankruptcy in Texas and recommended that its clients vote to reject the Plan, as was its right. Beasley Allen informed its clients of the Firm's intent to vote to reject the Plan unless a client advised they wanted to accept it and provided a link to the Plan documents. Beasley Allen gave clients more than three weeks to consider the Plan and answered questions about both the plan and the voting process. Beasley Allen instructed

---

[17]    *Id.*

[18]    *Id.* Beasley Allen is prepared to submit copies of these communications to the Court *in camera* if the Court wishes to see them.

clients that they did not need to respond unless they disagreed with its advice to reject the bankruptcy plan. Even so, thousands of clients responded expressing opposition to the Bankruptcy Plan and expressly directing a vote to "reject."

J&J's Plan Solicitation Procedures allowed voting by Master Ballot. Beasley Allen submitted a Master Ballot on July 26, 2024, prior to the expiration of the voting deadline. For clients who advised Beasley Allen to vote in favor of the plan, Beasley Allen did so; clients who advised Beasley Allen to vote in opposition to the plan, like Ms. Tammy Brown, one of the plaintiffs subject to this motion, Beasley Allen cast a "no" vote.[19] Ms. Brown is one of the clients that J&J suggests is represented by the Onder Firm and that Beasley Allen casting a vote on her behalf was improper. Beasley Allen followed Ms. Brown's explicit instructions in casting a vote on her behalf.

Beasley Allen advised all clients that if it did not receive specific direction regarding their vote, Beasley Allen would cast a "no" vote. Though the Court ultimately found that only votes for whom Beasley Allen received specific instruction from a client should be counted, the Court did not find that Beasley Allen acted in bad faith, but rather the exact opposite, that "[they] did not do it in bad faith."[20] The Bankruptcy Court did not find that Beasley Allen falsely certified its

---

[19]    *See* Certification of Tammy Brown, attach at **Exhibit 5**.

[20]    *See* **Exhibit 1** Order of March 31, 2024, at 3, 33-34, Dkt. 1424, *In re Red River Talc LLC*, No. 24-90505. Hon. Harlin D. Hale, U.S. Bankruptcy Judge, Northern District of Texas (ret.)

master ballot or acted improperly in casting the votes of any of its clients, including the 21 clients highlighted in J&J's original motion.

### b. J&J's Failure to Follow its Own Rules Reveals J&J's Intent Behind the Submission of the 21 Affidavits.

Beasley Allen had an attorney-client relationship with the Subject Clients and believed it was authorized to cast votes on their behalf. Onder Law, presumably believing it also had an attorney-client relationship with the Subject Clients, cast votes on their behalf as well. "Dual representations," an issue where a client retains multiple law firms, are not uncommon in mass tort litigations, especially in prolonged litigations such as this talcum powder litigation. Such situations, when brought to the attention of counsel, are easily resolved. In fact, over the last ten years, Beasley Allen has worked through similar client situations with the Onder firm on nearly 100 occasions prior to the instant motion.[21]

Mr. Onder spoke to the Wall Street Journal following the filing of the initial motion in September 2024 and confirmed that dual representations happen

---

opined that "the consent of Beasley Allen's clients was 'informed' and that Beasley Allen properly certified its Master Ballot." *See* **Exhibit 4** Expert Report of Harlin D. Hale, In re Red River Talc LLC, at 11-14.

[21]    *See In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 421-1, Declaration of Andy D. Birchfield (Nov. 11, 2024), attached as **Exhibit 2.**

frequently and when firms become aware of such situations they are resolved.[22]  In

a deposition dated November 23, 2024, Mr. Onder testified as follows:

> Q.  So it says -- that paragraph says, "J&J alleged last week in a separate filing in New Jersey that Beasley Allen falsely certified in its master ballot that its clients had indicated his or her informed consent with respect to their vote. J&J included 21 affidavits from clients represented by another plaintiff lawyer, Jim Onder, which each said that Beasley Allen cast ballots on their behalf even though it doesn't represent them." Did I read that correctly?
>
> A.  Yes.
>
> Q.  And then it goes on to say, "Onder told the Journal that it is 'very common that clients get confused and sign contracts with more than one firm, especially when the firms have been working closely together.'" Did I read that correctly?
>
> A.  Correct.
>
> . . .
>
> Q.  Then you went on to say in this article, "'These situations are common,' Onder said. 'No impropriety can be inferred.'" Did I read that correctly?
>
> A.  Yes, you did.
>
> . . .
>
> Q.  And was there any other information that you provided to the writer of this article that was not published?
>
> A.  . . . I hadn't read the motion, I hadn't anything. And I had no idea that these were going to be used to try to imply impropriety or anything of that nature on behalf of Beasley Allen. I mean -- and I don't infer any impropriety. I suspect, if you look around, it's -- there are probably, us

---

[22]    *See* Johnson & Johnson's $8 Billion Talc Plan Hinges on Disputed Vote, Wall Street Journal (Sept. 27, 2024), attached as **Exhibit 6**.

between other firms, other firms between us. I mean, these things sometimes happen and -- you know, again, because of dual rep situations. I mean, I would never think that Beasley Allen was trying to do anything shady to steal my clients. And, likewise, I hope you'd think the same of our firm.[23]

J&J's Bankruptcy Solicitation Procedures acknowledged dual representation

and provided for such situations where two firms cast votes for the same claimants:

> If the same holder of a Channeled Talc Personal Injury Claim appears on more than one Master Ballot, the Solicitation Agent will exercise ***reasonable efforts to coordinate with the respective firms to cure the discrepancy***. If the discrepancy is not cured, the vote for the holder appearing on more than one Master Ballot will be counted only once and only if such votes are consistent with respect to acceptance or rejection of the Plan. In the event that such votes are not consistent, none of the votes will be counted.[24]

J&J's Solicitation Agent, EPIQ Corporate Restructuring, LLC (EPIQ),[25] was

tasked with coordinating with respective firms to cure discrepancies created by dual

representations. Violating the Solicitation Procedures, EPIQ failed to contact

Beasley Allen to cure any discrepancies. Beasley Allen received no notice from

EPIQ that the Subject Clients appeared on more than one Master Ballot.[26] EPIQ

---

[23]    Deposition of Jim Onder, Jr., *In Re Red River Talc*, at 110:6-112:15 (Nov. 26, 2024), attached as **Exhibit 7**.

[24]    *In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 25, Disc. Statement Art. 9, p. 134-135 (emphasis added), attached as **Exhibit 8**.

[25]    *In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 47 (Declaration of Stephanie Kjontvedt of Epiq Corporate Restructuring, LLC, Regarding the Solicitation and Tabulation of Ballots Case on the Prepackaged Chapter 11 Plan of Reorganization of the Debtor), attached as **Exhibit 9**.

[26]    Deposition of Stephenie Sjontvedt, 30(b)(6) Witness for Epiq, *In re Red River Talc LLC*,

provided Beasley Allen no opportunity to discuss the duplicate votes with Onder Law in order to coordinate with any Subject Client to make sure the vote cast on her behalf reflected her wishes. Loyal to J&J, rather than independent and unbiased, EPIQ informed J&J and J&J engaged Mr. Onder, a proponent of J&J's Plan, in order to manufacture these allegations of misconduct.

Ms. Lynne Griebel, one of the Subject Clients, is illustrative. Ms. Griebel retained Beasley Allen in 2016.[27] Ms. Griebel suffered from ovarian cancer. Beasley Allen filed a lawsuit on behalf of Ms. Griebel in 2019. In 2020, Beasley Allen and Onder Law learned that both firms had mistakenly been engaged by Ms. Griebel. After conferring on the issue, Onder Law agreed to close its file and disengage.[28] Beasley Allen proceeded in its representation of Ms. Griebel, including serving a Plaintiff Profile Form in the MDL. Beasley Allen was unaware that Onder Law had not, in fact, closed its file related to Ms. Griebel until the present motion was filed. Ms. Griebel wishes to remain a client of Beasley Allen and she confirmed her vote to reject J&J's bankruptcy Plan.[29]

At J&J's behest, Epiq violated the Solicitation Procedures in relation to the

---

108:7-10 (Nov. 15, 2024) as **Exhibit 10**.

[27]    Certification of Lynne Griebel, attached as **Exhibit 11**.

[28]    *See* Email from Onder Law to Beasley Allen (April 23, 2020), attached as **Exhibit 12**.

[29]    Griebel Certification, attached as **Exhibit 11**.

Subject Clients.  It appears, however, that EPIQ followed the appropriate procedure to resolve a total of 2,295 other duplicate votes.[30]  There are no motions accusing other firms of misconduct or motions accusing other firms of falsely certifying their Master Ballots.  As the facts reveal, this motion is nothing less than a flagrant attempt to malign and disparage Beasley Allen for having the conviction and courage to advocate for ovarian cancer victims against J&J.

### 2. Beasley Allen did not Improperly Interfere with Smith Communicating with Clients.

In a throw-as-much-mud-as-you-can-and-hope-something-sticks vein, J&J slings the accusation that Smith Law claims that Beasley Allen interfered with its communication with clients.[31] An inter-plaintiff dispute regarding communications to clients and breach of contract has no relevance to whether Beasley Allen, and particularly Ms. O'Dell, should remain on the Plaintiffs' Steering Committee. The Texas Bankruptcy Court heard extensive testimony from Mr. Smith and argument regarding the Smith Law Firm's communications with Beasley Allen's clients.  The Bankruptcy Court devoted 10 pages of its 57-page order and opinion to the Beasley Allen and Smith voting issues.[32]  Judge Lopez neither found nor intimated that

---

[30]    *See* Kjontvedt Declaration at Exhibit 21 (Dkt. 47-21), attached as **Exhibit 9**.

[31]    *See* Dkt. 33290-1, p. 7.

[32]    *See* Dismissal Order of March 31, 2024, at 33-43, Dkt. 1424, *In re Red River Talc LLC*, No. 24-90505 **Exhibit 1**.

Beasley Allen inappropriately interfered with communications to clients.

### 3. The Dismissal of the RRT Bankruptcy Vindicates the Legal Positions Asserted by Beasley Allen – the Law and Lack of Adequate Compensation for Clients are at Issue, not Common Benefit Fees.

J&J's bald and baseless assertions that Beasley Allen's opposition to J&J's bankruptcy plans arises from a purported self-interest can finally be put to rest given that Beasley Allen's (as a member of the Coalition) objections largely form the basis of Judge Lopez's dismissal of the RRT bankruptcy. Claimants had no idea what compensation they would receive, when it would be received, or how much compensation would be reduced by liens and for that illusory benefit, claimants would be forced to release non-debtors against whom potential tort liability exists. That these positions were vindicated belies any notion that Beasley Allen was motivated by anything other than serving its clients and the other victims of J&J's talc products.

### a. J&J's Bankruptcy Plans have each Failed to Offer Reasonable Compensation or Terms to Ovarian Cancer Clients.

Ovarian cancer is a horrific and deadly disease. It is costly to treat and the treatment as well as the disease itself are agonizing for women and their families. Medical costs alone for treating ovarian cancer can range from $50,000, to well over $1.5 million, depending on the age of the victim and the stage of the cancer. The average medical costs for treating ovarian cancer is more than $220,000. Lost wages

for ovarian cancer victims diagnosed before the age of 65 exceed $230,000 on a weighted average basis.  In addition to these objective factors that total over $450,000 per ovarian cancer claim, there are subjective factors such as pain and suffering and punitive damages. The pain and agony that ovarian cancer victims experience is staggering – certainly to be valued at a multiple of the medical costs.

Members of the MDL Leadership proposed to J&J a reasonable compromise. This proposal would have provided clients with compensation based on the age and stage of cancer at the time of diagnosis. While the values would range from $1,000,000 to under $10,000, the weighted average would be approximately **$300,000 per ovarian cancer claim**. Below is the settlement matrix previously proposed by MDL Leadership.

Exhibit A

| Age Group | Death, Stage IV, Stage III w/Recurrence | Stage III without Recurrence | Stage II and I with Recurrence | Stage II without Recurrence | Stage I without Recurrence | Stage IV and III Borderline | Stage II and I Borderline |
|---|---|---|---|---|---|---|---|
| Under 45 | $1,000,000 | $628,721 | $435,268 | $265,997 | $169,271 | $96,726 | $64,484 |
| 45-49 | $822,173 | $534,413 | $369,978 | $226,098 | $143,880 | $82,217 | $54,812 |
| 50-54 | $628,721 | $408,669 | $282,924 | $172,898 | $110,026 | $62,872 | $41,915 |
| 55-59 | $531,995 | $345,796 | $239,398 | $146,299 | $93,099 | $53,199 | $35,466 |
| 60-64 | $386,905 | $251,488 | $174,107 | $106,399 | $67,708 | $38,691 | $25,794 |
| 65-69 | $290,179 | $188,616 | $130,580 | $79,799 | $50,781 | $29,018 | $19,345 |
| 70-74 | $241,816 | $157,180 | $108,817 | $66,499 | $42,318 | $24,182 | $16,121 |
| 75-79 | $174,107 | $113,170 | $78,348 | $47,880 | $30,469 | $17,411 | $11,607 |
| 80+ | $116,072 | $75,446 | $52,232 | $31,920 | $20,313 | $11,607 | $7,738 |
| Average Claim Value by Stage | $520,462 | $365,674 | $281,032 | $171,231 | $111,108 | $86,147 | $52,675 |

Rather than engage in good faith negotiations with MDL Leadership, J&J resorted once again to a bankruptcy petition and the accompanying delay as a litigation tactic to coerce and trap cancer victims in a bankruptcy trust with

unacceptable terms.[33]

### b. Beasley Allen did not Oppose J&J's Bankruptcy Based on Common Benefit Fees.

At the May 3, 2024, plenary hearing before this Court and Judge Porto, J&J questioned Mr. Birchfield on Beasley Allen's motivations in opposing J&J's bankruptcy filings. Mr. Birchfield testified truthfully that Beasley Allen's goal is to obtain fair and reasonable compensation for its clients. *See* **Ex. 13** at 37-38, 54 (Mr. Birchfield testifying that he wants "fair and reasonable compensation plan" and that he is not "opposed to bankruptcy period"); *id.* at 37: (Beasley Allen opposed J&J's bankruptcy "only after it became very clear that we would not be able to get reasonable compensation for our clients").

Mr. Birchfield repeatedly testified that Beasley Allen's goal was to obtain reasonable compensation for its clients, irrespective of any common benefit fee award down the road. At the May 3, 2024, disqualification hearing, Mr. Birchfield testified that:

> The focus from [Beasley Allen's] perspective was . . . what would give our clients reasonable compensation, period. If we put together a structure, if we . . . put together a structure and a settlement fund that would provide our clients with reasonable compensation, the common benefit will take care of itself. Other issues will take care of itself. That was the goal. That was the driver, . . . .

---

[33] For a recitation of the growing strength of the scientific data demonstrating a causal link between the genital use of talcum powder and ovarian cancer, see the Plaintiffs' Steering Committee's Opposition to Defendants' Motion to Exclude Plaintiffs' General Causation Opinions (Dkt. 33130).

[Ex. 13 at 75:22-25 to 76:1-9].

****

We're not going to put [the common benefit fee] ahead of the -- of the clients and clients' interest. The reason -- the reason that we are opposing bankruptcy is because of the values that are being offered in bankruptcy.

[*Id.* at 122:1-19].

4. **As the Extensive Record Supports, and as Judge Porto's Order Concludes, there is no basis for disqualification or removal based on interaction with James Conlan.**

J&J's repeated attempts to remove Beasley Allen speak volumes. In December 2023 (J&J's first of two attempts), J&J filed nearly identical motions to disqualify Beasley Allen and Andy D. Birchfield, Jr., Esq. from this litigation and remove Beasley Allen from the Plaintiffs' Steering Committee. ECF No. 28760. Beasley Allen opposed the motion. ECF No. 28826.[34] This Court, in conjunction with Judge Porto of the New Jersey Superior Court, held three days of hearings on the Motion, and Beasley Allen filed supplemental post-trial briefing in opposition to the disqualification motion. ECF Nos. 32275; 33267. In the interim, Judge Porto denied J&J's identical state court motion to disqualify, finding Beasley Allen did not commit any ethical violations or act improperly and that "J&J did not provide any

---

[34]    J&J then unsuccessfully sought Beasley Allen's privileged and confidential mediation communications with KCIC, LLC and court appointed mediators. ECF Nos. 28912; 29999.

credible evidence that Conlan [J&J's former attorney and now independent business person with Legacy Liability Solutions] shared client confidences with Birchfield" and, further, that J&J did not present "any credible evidence to disqualify the Beasley Allen firm." ECF No. 33065.

The Court ordered the parties to show cause why it should not adopt the Superior Court's findings of fact and conclusions of law. Beasley Allen submits this Court should adopt the Superior Court's findings and conclusions. ECF Nos. 33048; 33065.[35] This **third attempt** to remove Beasley Allen was filed within hours of the third bankruptcy filing. J&J's pleadings in the third bankruptcy case double down on these baseless attacks against Beasley Allen.[36] Why? Because J&J has

---

[35] J&J continued its abusive conduct and served a subpoena to Beasley Allen, which sought irrelevant, overly burdensome, and privileged documents including: (1) non-existent third-party litigation funding; (2) purported communications exchanged between Beasley Allen and the press; and (3) privileged settlement communications between Beasley Allen and its clients. ECF No. 32201. Beasley Allen objected to the Subpoena and moved to quash. ECF Nos. 32213; 32445. Special Master Schneider granted the motion and quashed the Subpoena in its entirety. ECF Nos. 33061; 32926. The Special Master rejected the assertion that Mr. Birchfield's and Beasley Allen's opposition to J&J's prior or current bankruptcy settlements are or were "irrational or arbitrary and capricious," and found "no good cause exists to believe that Beasley Allen's settlement position is motivated by any insidious reasons such as litigation financing or the prospect of a lucrative common benefit fee." ECF 32984. Rather, the Special Master attributed opposition to J&J's bankruptcy settlement to "drastically different views as to whether asbestos is present in defendants' product," views still unsettled by "decades of litigation, . . . continuing scientific debate, and the fact that thus far plaintiffs have overcome a *Daubert* challenge." J&J objected to the Special Master's Order (No. 25), and that objection remains pending. ECF Nos. 32987; 33061; 33085.

[36] Disclosure Statement, Dkt. No. 25-2 p. 16 (file stamped page 33 of 195); *Debtor's Statement Regarding Filing of Chapter 11*, Case No. 24-90505, Dkt. No. 3 [Also the RRT First Day Filing].

determined and publicly stated that removal of Birchfield and Beasley Allen would remove a major impediment to its long-sought goal of capping its talc liability through bankruptcy.[37]

## III.   The Factual Basis for J&J's April 2025 Motion Fails

### 1.   The Record in the Red River Talc Bankruptcy Proceeding, as well as Judge Lopez's Order, Do Not Support J&J's Claim of "False Certification."

Devoid of any factual basis, J&J now levels a newly concocted charge that Andy Birchfield falsely certified claims in the *Red River Talc* matter. This allegation fails on its face because if J&J had any evidence to support that false claim, then J&J—which has lost no opportunity to attack Mr. Birchfield on make-believe charges—certainly would have made this a focal point of the hearings before Judge Lopez. Because the claim has no merit, J&J never produced any evidence supporting that Andy Birchfield took any actions other than follow the Texas Bankruptcy Court's rules.

First, and clearest, a reading of Judge Lopez's order dismissing the RRT case, shows that the Court made no such finding. Second, Birchfield and Beasley Allen did not falsely certify its Master Ballot by casting votes based on informed consent.[38]

---

[37]    *See* Johnson & Johnson Investor Call (May 1, 2024), at 20-23, attached as **Exhibit 3** ("there is a good chance [Beasley Allen] will not be around.").

[38]    Judge Lopez's Order in evaluating the Master Ballot signed by Birchfield states that Option A requires an affirmative response from each client based on a parsing the Master Ballot, but there is no finding that Beasley Allen did not have the "informed consent" of its clients or that Birchfield

"The bankruptcy practice also relies heavily on the concept that silence, or inaction, may be taken as consent. Put another way, consent can be inferred. Many motions are filed and orders entered in the absence of objection."[39]

### 2. There was no Conflict in Voting Against the Plan on Behalf of Women with Non-Ovarian Gynecological Cancer.

First, J&J accuses Beasley Allen of "knowingly prejudicing its own clients' interests" and asserting that it "cannot fairly represent the various interests in the litigation" because it recommended that its non-ovarian gynecologic clients vote to "reject" the bankruptcy plan. There was nothing untoward and certainly no conflict in recommending that a client with a claim of non-ovarian gynecologic cancer vote "no" against J&J's bankruptcy plan to accept $1500 for a release of any and all claims.

There is no question that there is no scientific link between non-ovarian gynecologic cancer and genital talc use. The question is whether these claimants are at risk for ovarian cancer. Indeed, clients who were regular users of talcum powder and have been diagnosed with a non-ovarian gynecologic cancer, such as cervical

---

falsely certified the Master Ballot as J&J asserts. *See* Lopez Order, pp 33-34.

[39]     *See* Judge Hale (ret.) Expert Report, p.9, attached as **Exhibit 4**. Though Judge Lopez chose not to consider Judge Hale's opinion, it is evidence of Beasley Allen's good faith view of informed consent.

cancer, uterine cancer, or vaginal cancer, are **still at risk** for epithelial ovarian cancer.

Testimony during the February hearing before the Bankruptcy Court made that clear:

- <u>Mr. Birchfield</u>: "But for each of these -- each of these clients, if they had been -- each of these clients, even though they have been diagnosed with another gynecologic claim, they all were long-term users of -- you know, of baby powder. So they were at risk of, you know, developing, you know, ovarian cancer."[40]

- <u>Future Claims Representative, Randi Ellis</u>:

  - Q. Is there anything in the Plan that you can point me to that would protect the interests of a woman diagnosed with gynecological cancer who may be at risk for developing ovarian cancer later? A. I don't think so. [41]

  - Q. If a gynecological cancer claimant takes the money in the bankruptcy, does she give up her right to bring a claim for ovarian cancer should she develop it? A. I think she does."[42]

  - Q. Okay. So for the people that don't have ovarian cancer, maybe it's tens of thousands, that have gynecologic cancer? A. Could be.

    Q. How do they -- under the Plan, if they want to preserve their rights in the event they get ovarian cancer, how do they protect themselves? A. They shouldn't sign a release.

    Q. How does that work? A. These aren't my clients. But if my client came to me and asked, I have this gynecologic cancer, not ovarian, should I take the $1500 or wait to see if I have ovarian cancer and file later, I would say wait.

---

[40]    *In re Red River Talc LLC*, Hearing Day 4 Tr. at 1574:13-20 (Feb. 21, 2025) as **Exhibit 14**.

[41]    *In re Red River Talc LLC*, Hearing Day 6 Tr. at 2737:6-11 (Feb. 23, 2025) as **Exhibit 15**.

[42]    *Id.* at 2800:4-9.

Q. So as the FCR you would not recommend people take the $1500? A. They're not my clients. But current clients, if I had a current client in that situation."[43]

- Dr. Judith Wolf, Gynecologic Oncologist expert: "Q. Could a woman who's had one of these other non-ovarian gynecologic cancers be at risk for ovarian cancer in the future? A. Certainly if she still has her ovaries. Treatment for vulva or vaginal cancer often doesn't mean removal of those. And even if she's had her ovaries removed, if she's had risk such as perineal talc use in the past, peritoneal cancer could still be a risk."[44]

Beasley Allen rightly encouraged these claimants to vote to reject the bankruptcy plan because it was not in their best interests. The testimony of the Future Claims Representative in the bankruptcy concurred. The Bankruptcy Court found no conflict or impropriety with recommending that claimants diagnosed with non-ovarian gynecologic cancers vote "no" to the bankruptcy plan.

### 3. Birchfield's Letter to Erik Haas and Liz Forminard does not Support Removal or Disqualification.

Beasley Allen wrote a letter to Mr. Haas and Ms. Forminard. Specifically, the April 10, 2025, letter is a proposal to meet—there is no discussion regarding the substance of the litigation. On its face RPC 4.2 does not apply because the entreaty to have a discussion is not a discussion on the merits, rather it is a request to have a discussion. Because the Rules of Professional Conduct are read narrowly and not broadly, this communication fails to fall within the scope of RPC 4.2.

---

[43]    *Id.* at 2800:23-2802:2.

[44]    *In re Red River Talc LLC*, Hearing Day 8 Tr. at 3486:13-23 (Feb. 27, 2025) as **Exhibit 16**.

Further RPC 4.2 does not apply because both Haas and Forminard are legal counsel, not fact witnesses. The purpose of RPC 4.2 is to prevent opposing counsel from surreptitiously gaining facts from a client's "control group." No information was exchanged. J&J has never advised that Mr. Haas or Ms. Forminard are within the control group. In house counsel are not shrinking violets, they are sophisticated lawyers. They are not going to wilt because an outside counsel or party reaches out to them. Rather, in-house counsel are the front line of the corporation. *In Re Teleglobe Communications*, 493 F.3d 345, 369 (3rd Cir. 2007).

Such a rule—that it is unethical to communicate with in-house counsel--is contrary to the public policy both in Federal Court and in the New Jersey state courts that must encourage settlement discussions. Federal Courts strongly promote voluntary compromise and settlement discussions. *In Re General Motors Pickup Trust Fuel Tank*, 846 F.Supp.330, 333 (1993).

## **ARGUMENT**

### **J&J'S MOTION TO REMOVE NON-PARTY BEASLEY ALLEN (ITS LITIGATION ADVERSARY IN THIS CASE) FROM THE PLAINTIFFS' STEERING COMMITTEE MUST BE DENIED.**

#### A. **Legal Standard.**

This Court—not J&J—has the right to determine whom should serve on the Plaintiffs' Steering Committee. Motions to disqualify or remove counsel from a PSC "should be reviewed carefully to ensure that they are not being used merely to harass,

and disqualification should be ordered only when the motion demonstrates a reasonable likelihood of a prohibited conflict." *See Manual for Complex Litigation* § 10.23 (4th ed. Sept. 2024 update) (citing cases); *id.* (citing *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996) (noting that "because of the potential for abuse by opposing counsel, 'disqualification motions should be subjected to particular judicial scrutiny'"); *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,* 760 F.2d 1045, 1050–51 (9th Cir. 1985) ("misuse of the rules for tactical purposes is significant."); *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577–80 (Fed. Cir. 1984) (noting that "disqualification . . . is a drastic measure which courts should hesitate to impose except when <u>absolutely necessary</u>.")  (emphasis added).

The standard for appointment is akin to that of appointment of class counsel under FRCP 23(g). *See generally Manual for Complex Litigation* § 10.23 (discussing appointment of lead counsel in class action context). An adequate representative is one who will fairly and adequately protect the interests of the Class. *Id.* at §§ 10.222 and 10.224. *See* FRCP 23(a)(4); *Del Valle v. Global Exchange Vacation Club*, 320 F.R.D. 50 (C.D.Ca. 2017) *Office and Prof'l Empls. v. Int'l Union*, 311 F.R.D. 447 (E.D. Mich. 2015) (finding that the "[a]ppointment of Mr. Cook and his associates as Class Counsel satisfied 23(g)").  J&J bears a heavy burden of proof and persuasion in seeking to challenge the PSC's membership because they (again) seek to remove a years-long successful litigation adversary.

27

**B.    J&J's Grand Plan of Intimidation and Removal of the Plaintiff's Chosen Champion.**

The current motion to disqualify or remove Beasley Allen from leadership is a key component of J&J's long-running strategy to escape accountability and legal responsibility for its asbestos-laden, cancer-causing powder products.  For decades J&J knew that its talc-based powder products contained asbestos and other carcinogens. For decades, J&J successfully maintained this dark secret by misleading the FDA and the public while also employing intimidation tactics against those engaged in exposing the truth. Now that this dark and deadly secret is coming to light, J&J seeks to unfairly limit its liability at the expense of women suffering from ovarian cancer.

As the effort to skirt its legal accountability continues, J&J seeks to remove Beasley Allen from leadership and to have the Court disqualify Beasley Allen from representing its clients, many of whom Beasley Allen has represented for over 10 years. The motivation behind J&J's attack is clear. In fact, it has been openly stated: Beasley Allen, according to public statements by J&J, has steadfastly opposed and effectively stymied J&J's efforts to unfairly cap its talc liability.[45]

**C.    The Court Should Reject J&J's Blatant Attempt to Choose Its Adversary.[46]**

---

[45]    *See* Background, *supra*, pp. 6-8.

[46]    The Court should permit Beasley Allen to recoup its costs incurred because of J&J's repeated bad faith tactics and attempts to remove Beasley Allen simply for representing its

1.      **J&J's Strategy is Simple—Destroy Its Strongest Adversary So that J&J Can Avoid Paying Out Fair and Reasonable Compensation**

On May 1, 2024, J&J announced its third attempt to use bankruptcy as a means to forever cap its talc liability and to do so at a price far less than even its own experts opined was reasonably expected outside bankruptcy. In the early morning hours of May 1st, the third bankruptcy plan was announced, and an Investors Call was convened. On that open-to-the-public call, Erik Haas, J&J's Worldwide Vice-president, Litigation, offered the following explanation as to why the third try at bankruptcy would succeed when the first two failed:

> **So the primary opponent [to] resolving anything in bankruptcy is the individual I just refer – referenced. The Beasley Allen firm and in particular, Andy Burchfield, who has opposed any resolution through bankruptcy** . . .
>
> ****
>
> First of all, it is this vote that will dictate. The claimants get to speak. The claimants' voices get to be heard. And that's the major distinction here. And if the vote is greater than 75 percent, it doesn't matter that he perhaps persuades his own claimants not to vote in favor of it. And by the way, he doesn't get a vote, his claimants do. So I would – I would say that I would expect his claimants to take this deal because it's a good deal in any event. But regardless, it is the vote that matters . . . [at] at the end of the day.

---

clients successfully. *See Manual for Complex Litigation* § 10.23 (4th ed. Sept. 2024 update) (noting that if "a disqualification motion is filed in order to harass, delay, or deprive a party of chosen counsel, sanctions may be appropriate under 28 U.S.C. § 1927 or Federal Rule of Civil Procedure 11.") (citing Section 10.15)); *see In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175 (3d Cir. 2002) (discussing remedies to address a party that files identical motions and papers for improper purposes, including harassment).

And so, that's one significant reason why I don't think it's going to matter. **The other significant reason is, I think there's a really good chance that he won't be around for much longer representing his claimants**. We have moved to disqualify the Beasley Allen firm from representing claimants..."[47]

2.      **New Jersey law recognizes that moving to disqualify counsel (which is effectively what is at issue here) is always suspect because it is filed to gain strategic advantage.**

As with its prior baseless motions to disqualify Beasley Allen and Mr. Birchfield from this MDL and the New Jersey state MCL, the Motion is nothing more than J&J's latest attempt to harass and remove its successful litigation adversary. *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 433–36 (1985) (noting concern about "tactical use of disqualification motions" to "harass opposing counsel."); *see Topolewski v. Quorum Health Res., LLC*, 2013 WL 99843, at *4 (M.D. Tenn. Jan. 8, 2013) (quoting MOORE'S FEDERAL PRACTICE 3D § 45.05[1][c][2], p. 45–36) ("obtaining discovery or testimony from opposing counsel undermines the adversarial system and increases the time and cost of litigation, because questions of attorney-client privilege and work product protections are practically unavoidable when counsel becomes a witness.")

The Motion should also be denied because the Plaintiff talc cancer victims have the right to choose their own lawyer. When reviewing a motion to disqualify an attorney, a court must balance competing interests, weighing the "need to

---

[47]      *See* Johnson & Johnson Investor Call, Transcript at 22:25-23:13 (May 1, 2024) (emphasis added), attached as **Exhibit 3**.

maintain the highest standards of the profession" against "a client's right freely to choose his counsel." *Dewey v. R.J. Reynolds Tobacco Co.*, 536 A.2d 243, 244-45 (N.J. 1988); *accord High 5 Games, LLC v. Marks*, 2018 WL 2278103, at \*4 (D.N.J. May 18, 2018) ("Clients have a well-established, strongly protected right to choose their own lawyer."). The Motion is an impermissible tactic to try to intimidate Plaintiffs and Beasley Allen. *See Fragoso v. Piao*, 433 F. Supp. 3d 623, 627-28 (D.N.J. 2019). ("Courts should take care that parties do not use motions to disqualify counsel for tactical reasons."). J&J fails to carry its heavy burden that disqualification from the PSC is warranted. The record is devoid of any evidence to support disqualification and J&J should not be allowed to remove an adversary in order to achieve a strategic advantage.

> **3.    The Manual for Complex Litigation Supports Beasley Allen (and Its Ethical Attorneys) Right to Remain an Advocate on the PSC.**

The Manual for Complex Litigation supports Beasley Allen and Ms. O'Dell's right to remain on the PSC.  Motions to disqualify or remove counsel from a PSC "should be reviewed carefully to ensure that they are not being used merely to harass, and disqualification should be ordered only when the motion demonstrates a reasonable likelihood of a prohibited conflict." *See Manual for Complex Litigation* § 10.23 (4th ed. Sept. 2024 update) (citing cases). The Manual for Complex Litigation provides that counsel is competent to serve on a PSC where, among other

things, counsel: (1) will "fairly represent the various interests in the litigation"; (2) has the "resources, commitment, and qualifications to accomplish the assigned task"; (3) "command[s] the respect of their colleagues and work cooperatively with opposing counsel and the court." *Manual for Complex Litigation* § 10.224.

Indeed, Ms. O'Dell "committed to working cooperatively and collaboratively for the common good of all plaintiffs." ECF No. 54 at 10. She has done so and exceeded that standard. *Id. See N. Indiana Pub. Serv, Co. v. Certain Underwriters at Lloyd's London*, 1996 WL 115466 (N.D. Ind. 1996) (Counsel must "perform their obligations as advocates in a manner that will foster and sustain good working relations among themselves and with the court."). Ms. O'Dell vociferously defended her clients' right to fair compensation before the Court and in the media. *See* **Exh. 13** at 82:10-18 (Ms. O'Dell stating that Beasley Allen believes any "bankruptcy plan based on this solicitation and vote will be found fraudulent and filed in bad faith under the Bankruptcy Code. On behalf of our clients who deserve better, we are blowing the whistle on this cynical legal tactic and will resist it at every turn."). In response to J&J's prior bad faith bankruptcy filings, Ms. O'Dell unmasked J&J's true fear: "a legitimate vote among those who are truly sick and the families of the deceased who have been battling J&J's obstruction and bad faith for years and who are supported by numerous scientific studies showing that talc contains asbestos and other known cancer-causing ingredients" obtaining just compensation. Vigorous,

successful advocacy is not grounds for removal from a PSC position.

At the May 3, 2024, plenary hearing before this Court and Judge Porto, J&J questioned Mr. Birchfield on Beasley Allen's motivations in opposing J&J's bankruptcy filings. Mr. Birchfield testified directly and truthfully that Beasley Allen's goal is to obtain fair and reasonable compensation for its clients. *See* Exh. 13 at 37-38, 54 to (Mr. Birchfield testifying that he wants "fair and reasonable compensation plan" and that he is not "opposed to bankruptcy period"); *id.* at 37: (Beasley Allen opposed J&J's bankruptcy "only after it became very clear that we would not be able to get reasonable compensation for our clients").

Mr. Birchfield also testified repeatedly that his goal (and Beasley Allen's goal) was to obtain reasonable compensation for its clients, irrespective of any common benefit fee award down the road. At the May 3, 2024, disqualification hearing, Mr. Birchfield testified that:

> The focus from [Beasley Allen's] perspective was . . . what would give our clients reasonable compensation, period. If we put together a structure, if we . . . put together a structure and a settlement fund that would provide our clients with reasonable compensation, the common benefit will take care of itself. Other issues will take care of itself. That was the goal. That was the driver, . . . to get a resolution plan that would be acceptable to J&J. And that's where the finality came in.
>
> [Ex. 13 at 75:22-25 to 76:1-9].

Mr. Birchfield further testified that:

But the thing that is so frustrating here is that, you know, that we have resisted overtures, we've resisted overtures to negotiate the common benefit fee. We're not going to do that. We are firmly committed that we will -- we will look out for the best interest of our clients. If we -- if we take care of getting reasonable compensation for our clients, the common benefit fee will take care of itself. We're not going to put [the common benefit fee] ahead of the -- of the clients and clients' interest. The reason -- the reason that we are opposing bankruptcy is because of the values that are being offered in bankruptcy.

[*Id.* at 122:1-19].

J&J's repeated, spurious narrative—which it has peddled for months—that Beasley Allen opposes J&J's bad faith bankruptcy for nefarious purposes, *i.e.*, to protect a right to a common benefit fund, is false and not supported by any evidence. None of the authority J&J points to supports removing Beasley Allen from the PSC.

In sum, the Manual for Complex Litigation is completely consonant with New Jersey law and recognizes that the burden is on the movant (J&J) and that these motions should be reviewed critically by the Court because (as is the case here) they are being filed for strategic reasons. The Motion lacks any foundation. Beasley Allen is simply doing what they have committed to do from the beginning—represent their clients vigorously (and successfully) to obtain maximum reasonable compensation. This accusation by J&J has already been rejected by Judge Porto and also by Judge Schneider.[48] The Motion should be denied.

---

[48]    J&J served a subpoena to Beasley Allen, which sought irrelevant, overly burdensome, and

### D.    Beasley Allen has an Attorney-Client Relationship with the Claimants and Submitted Valid Votes on Their Behalf

The facts are straight forward as it relates to allegations that Beasley Allen did not have authority to vote on behalf of the 21 claimants whose votes are at issue. Despite the existence of what appears to be dual representation situations with Onder Law, Beasley Allen has an attorney-client relationship with each of the 21 Claimants (talc plaintiffs), documented by retainer agreements.  Beasley Allen has represented these individuals, some for more than 10 years. Beasley Allen has communicated with the clients on a routine basis in writing and over the phone.[49]

Beasley Allen communicated extensively with clients prior to the July 26, 2024, voting deadline.  Beasley Allen submitted a Master Ballot on July 26, 2024, prior to the expiration of the voting deadline.  Beasley Allen had an attorney-client

---

privileged documents including: (1) non-existent third-party litigation funding; (2) purported communications exchanged between Beasley Allen and the press; and (3) privileged settlement communications between Beasley Allen and its clients. ECF No. 32201. Beasley Allen objected to the Subpoena and moved to quash. ECF Nos. 32213; 32445. Special Master Schneider granted the motion and quashed the Subpoena in its entirety. ECF Nos. 33061; 32926. **The Special Master rejected the assertion that Mr. Birchfield's and Beasley Allen's opposition to J&J's prior or current bankruptcy settlements are or were "irrational or arbitrary and capricious," and found "no good cause exists to believe that Beasley Allen's settlement position is motivated by any insidious reasons such as litigation financing or the prospect of a lucrative common benefit fee."** ECF 32984. Rather, the Special Master attributed opposition to J&J's bankruptcy settlement to "drastically different views as to whether asbestos is present in defendants' product," views still unsettled by "decades of litigation, . . . continuing scientific debate, and the fact that thus far plaintiffs have overcome a *Daubert* challenge."  J&J objected to the Special Master's Order (No. 25), and that objection remains pending. ECF Nos. 32987; 33061; 33085 (emphasis added).

[49]    *See In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 421-1, Declaration of Andy D. Birchfield (Nov. 11, 2024), **Exhibit 2**.

relationship with the Subject Clients and having provided informed consent, believed it was authorized to cast votes on their behalf. Onder Law, presumably believing it also had an attorney-client relationship with the Subject Clients, cast votes on their behalf as well.

"Dual representations" are common in mass tort litigations. In fact, over the last ten years, Beasley Allen has worked through similar client situations with the Onder firm on nearly 100 occasions prior to the instant motion.[50] As Mr. Onder made clear in his deposition, "I had no idea that these [declarations] were going to be used to try to imply impropriety or anything of that nature on behalf of Beasley Allen. I mean -- and I don't infer any impropriety."[51]

Furthermore, duplicate votes for clients with multiple representations, absent additional facts, are not evidence of a false or fraudulent ballot. The Voting Procedures planned for this eventuality.

Epiq,[52] failed to follow the Plan's Voting Procedures and did not contact Beasley Allen to resolve the discrepancies in the votes. Beasley Allen, an opponent

---

[50]     *Id.*

[51]     Deposition of Jim Onder, Jr., In Re Red River Talc, at 110:6-112:15 (Nov. 26, 2024), attached as **Exhibit 7**.

[52]     *See* Dkt. 47, *In re: Red River Talc LLC,* Case No. 24-90505 (Declaration of Stephanie Kjontvedt of Epiq Corporate Restructuring, LLC, Regarding the Solicitation and Tabulation of Ballots Case on the Prepackaged Chapter 11 Plan of Reorganization of the Debtor), attached as **Exhibit 8**.

of J&J's Plan, received <u>no notice</u> from Epiq that duplicate votes were cast for any of the 21 clients. Beasley Allen was not provided an opportunity to discuss the duplicate votes with Onder Law in order to coordinate with the client and make sure the vote cast on her behalf reflected her wishes. Epiq did, however, inform J&J who manufactured these claims of misconduct. And, it was not a case of lack of knowledge on Epiq's part, an experienced Solicitation Agent. Epiq, clearly was aware of the procedures and followed them in other instances, having resolved a total of 2,295 other duplicate votes.[53] Furthermore, J&J has not filed motions accusing other firms of misconduct or falsely certifying a Master Ballots, despite Judge Lopez's finding that several firms improperly submitted Master Ballots.

The existence of a dual representation situation does not negate Beasley Allen's vote on behalf of the client nor Beasley Allen's authority to do so. Casting a ballot for these clients *without any information about a dual representation* does not mean that Beasley Allen improperly certified its Master Ballot. Though the Court ultimately found that only votes for whom Beasley Allen received specific instruction from a client should be counted, the Court did not find that Beasley Allen acted in bad faith or that Beasley Allen falsely certified its master ballot or voted without clients' informed consent.[54]

---

[53]     *See* Kjontvedt Declaration at Exhibit 21 (Dkt. 47-21), attached as **Exhibit 9**.

[54]     *See* Dismissal Order of March 31, 2024, at 33-34, Dkt. 1424, *In re Red River Talc LLC,* No. 24-90505. Hon. Harlin D. Hale, U.S. Bankruptcy Judge, Northern District of Texas (ret.)

Fundamentally, the voting of clients where there is a dual representation has nothing to do with Beasley Allen and Andy Birchfield's qualification to represent clients or Ms. O'Dell's ability or fitness to serve on leadership in this MDL. Ms. O'Dell has served with distinction. Not one Plaintiff's firm has come forward with a complaint about Beasley Allen and Ms. O'Dell's professionalism, work, and commitment to this litigation. Rather, it is J&J that comes into this Court once again casting baseless accusations against Beasley Allen in an attempt to remove their litigation adversary and to malign and disparage Beasley Allen for having the conviction and courage to advocate for ovarian cancer victims.

### E. The Court Should Deny the Motion Because J&J Cannot Get Multiple Bites at the Apple.

The Court should deny the Motion because J&J should not get any more bites at the apple. First, J&J has tried and failed repeatedly to cram down an undervalued settlement in bankruptcy. J&J has tried and failed to remove Andy Birchfield and Beasley Allen in the Superior Court of New Jersey. Judge Porto, of the Superior Court, denied J&J's motion to disqualify Beasley Allen from the state MCL and held that: (1) Mr. Conlan credibly testified that the matrix did not include any J&J confidential information and was received from Beasley Allen; (2) J&J's failure to

---

opined that "the consent of Beasley Allen's clients was 'informed' and that Beasley Allen properly certified its Master Ballot." *See* Ex. 4 Expert Report of Harlin D. Hale, *In re Red River Talc LLC*, at 11-14.

identify any specific confidence Mr. Conlan revealed to Beasley Allen was fatal to J&J's disqualification application; and (3) J&J failed to identify any information that Mr. Birchfield or Beasley Allen possesses that could have come from a J&J confidence shared by Mr. Conlan. (Op. at 27-31).

J&J now is again abusing the court system by litigating the issue of the sufficiency of its surreptitiously obtained votes in Texas—where these votes were the subject of substantial discovery. The issue of these votes (and the rejection of J&J's position regarding the votes) was part of the rationale of the bankruptcy court in dismissing J&J's third chapter 11 case. Now, J&J wants to remove Beasley Allen, J&J's primary adversarial counsel, from its years-long PSC position on allegations that have been tried and rejected by other courts.

### F. The Burden of Proof and Production is on J&J, and They Have Failed to Carry Either

J&J, which mouths the words that it wishes to settle fairly, simply lacks any credibility. As the Third Circuit United States Court of Appeals has noted, J&J has over $400 billion in equity value, over $31 billion in cash and marketable securities. In re LTL Management, 64 F.4th 84, 106 (3rd Cir. 2023). J&J was found to have not filed in good faith, In re LTL Management, 64 F.4th at 110. Rather, like the repeated applications against Andy Birchfield and Beasley Allen (all of which have failed) J&J has failed to act in good faith in this filing as well. Because both the burden of proof as well as production rests on J&J, this application to remove leading lawyers

from the Plaintiffs' Steering Committee or disqualify from representing its clients should be denied.

## **CONCLUSION**

Andy Birchfield and Beasley Allen have pursued this litigation for over a decade with the singular purpose of obtaining adequate compensation for ovarian cancer victims.  Given J&J's history of failed litigation tactics (attack on Andy Birchfield before Judge Porto, a bad faith bankruptcy filing (LTL), a failed second bankruptcy (LTL II), a failed third bankruptcy (Red River)), this Court must look askance at J&J's application here.  Disqualification of a firm fighting to protect its clients would not only reward J&J's bad behavior but would promote more unwarranted attacks upon counsel in the future.  J&J is simply not credible and has failed to adduce any evidence warranting Ms. O'Dell's removal from the Plaintiffs' Steering Committee.  The Application to remove Beasley Allen from the Plaintiffs' Steering Committee must be denied with prejudice.

Dated: May 6, 2025                    Respectfully submitted,
                                      **POLLOCK LAW, LLC.**
                                      *Attorney for Andy Birchfield and Beasley Allen*


                                      */s/ Jeffrey M. Pollock*
                                       Jeffrey M. Pollock
                                       Certified by the Supreme Court of
                                       New Jersey as a Civil Trial Lawyer

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey M. Pollock, Esq., hereby certify that I caused a true and correct copy of the foregoing Brief in Opposition to J&J's Second Motion to Remove Beasley Allen from the Plaintiffs' Steering Committee and accompanying papers to be served upon all Counsel of Record via the Court's CM/ECF system.

*/s/ Jeffrey M. Pollock*
Jeffrey M. Pollock, Esq.
*Attorney for Andy Birchfield
and Beasley Allen*

Dated: May 6, 2025