# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS |

# DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION FOR LITIGATION FINANCE DISCOVERY AND TO COMPEL COMPLIANCE WITH LOCAL RULE 7.1.1

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 4

ARGUMENT ........................................................................................................... 7

    I.    MDL Plaintiffs Represented By Beasley Allen Received Litigation Funding Via The Smith Law Firm. ........................................................ 7

    II.    Beasley Allen's Actions Demonstrate Why Discovery Into Litigation Funding Is Appropriate Here. ........................................................... 10

CONCLUSION ..................................................................................................... 14

Case 3:16-md-02738-MAS-RLS   Document 34394-1   Filed 05/12/25   Page 3 of 19
                                    PageID: 266168

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Red River Talc LLC*,
   2025 WL 1029302 (Bankr. S.D. Tex. Mar. 31, 2025) ................................*passim*

*MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, 2024
   WL 4100379, at *6 (D.N.J. Sept. 6, 2024) ....................................................... 13

**Other Authorities**

Local Rule 7.1.1 ......................................................................................*passim*

Pursuant to the Court's April 15, 2025 Order (ECF No. 33638) and Special Master Order No. 27 (ECF No. 33779), Defendants Johnson & Johnson and LLT Management LLC[1] submit this Motion For Litigation Finance Discovery And To Compel Compliance With Local Rule 7.1.1. Defendants rely on and expressly incorporate the arguments made and evidence submitted in the original briefing in connection with this litigation finance discovery dispute. *See* ECF Nos. 32827, 32845, 32987, 33085, 33171, 33306. Defendants submit this brief regarding why new developments since the Special Master's original order demonstrate unequivocally that discovery into litigation financing should be permitted.

## INTRODUCTION

There is now no dispute: Parties in this MDL received third-party litigation funding which was not disclosed, in violation of Local Rule 7.1.1.

Defendants originally requested discovery into third-party litigation funding based on evidence that The Smith Law Firm received litigation financing and The Smith's Law Firm's historic co-counsel relationship with Beasley Allen. Your Honor denied that discovery on the ground that there was no direct evidence that The Smith Law Firm represented any plaintiffs in this MDL. It has now come to light in the Red River bankruptcy that The Smith Law Firm and Beasley Allen were part of a

---

[1] Defendant LLT Management LLC no longer exists. The parties are working through a stipulation to substitute in Red River Talc LLC who now holds the ovarian and gynecological liabilities formerly held by LLT Management LLC.

1

joint venture to jointly represent *all* talc litigation plaintiffs represented by either firm. In other words, The Smith Law Firm also represents *all* of the thousands of plaintiffs *in this MDL* that Beasley Allen represents.

When Defendants originally sought this discovery, the responding parties knew full well about The Smith Law Firm's representation of MDL plaintiffs and knew full well that The Smith Law Firm obtained litigation funding. Nevertheless, they relied on a declaration stating that The Smith Law Firm is not "counsel of record" to the any plaintiffs in this MDL. Defendants pointed out at the time that the statement was "carefully worded" and did *not* mean that Smith Law Firm did not represent any MDL plaintiffs.

With carefully tailored language designed to obscure the true facts from the Court, the responding parties permitted Your Honor to issue a ruling that any involvement from The Smith Law Firm in this MDL was "speculation and conjecture." The evidence now shows that Defendants' contentions are not speculative. They are fact.

And even more facts have come to light since Your Honor's ruling. The bankruptcy court found that Andy Birchfield of Beasley Allen—one of the only objectors to the resolution in bankruptcy—submitted approximately 8,000 invalid votes to reject the bankruptcy by falsely certifying under penalty of perjury that he had received affirmative consent from his clients to do so, when in fact he had not.

2

*In re Red River Talc LLC*, 2025 WL 1029302, at *26 (Bankr. S.D. Tex. Mar. 31, 2025). Beasley Allen's ballot even included votes on behalf of gynecological cancer claimants to *reject* the resolution in bankruptcy while at the same time Beasley Allen contends that those claims are non-compensable in the tort system. *Id.* In other words, Beasley Allen has affirmatively worked to deny any recovery at all in any venue for thousands of its own clients. Why?

    Local Rule 7.1.1 provides that "all parties" must disclose litigation funding. This rule was plainly violated. Parties represented by Beasley Allen in this MDL received litigation funding through (at minimum) The Smith Law Firm. That Local Rule 7.1.1. is being ignored explains why less than one tenth of one percent of the parties in this MDL have disclosed litigation funding, despite the fact that this is now the largest MDL in the country and litigation funding is pervasive in mass torts.

    The violation of Local Rule 7.1.1., the efforts to obfuscate the truth, the false certifications, and the conflicts of interest demonstrate precisely why Defendants have a right to get to the bottom of what is actually going on and the financial factors motivating the decisions being made by counsel in this MDL.

    This Court should permit Defendants' requested discovery into litigation financing, and at a bare minimum, require all plaintiffs represented by Beasley Allen to submit a statement of disclosure as required by Local Rule 7.1.1.

## BACKGROUND

Your Honor is familiar with this litigation financing dispute from its original Special Master Order No. 25 (the "Order"). *See* ECF No. 32926. Defendants therefore only briefly lay out the underlying facts at issue.

### *Beasley Allen and The Smith Law Firm*

Beasley Allen and The Smith Law Firm and have partnered on talc litigation for years. They were co-counsel together in seven talc-ovarian cancer trials, over *one third* of the trials that have occurred to date. From the earliest days of the MDL, Beasley Allen has touted its close relationship with The Smith Law Firm, including the number of cases in which the firms act as co-counsel. *See generally* Interested Party Response to Petitioner's Motion for Transfer and Coordination or Consolidation (ECF No. 41). Beasley Allen principal, Mr. Birchfield, himself testified that his co-counsel at The Smith Law Firm acquired litigation funding in connection with talc litigation. ECF No. 32827-2 at 35:23–36:25; *see also id.* at 154:13-155:14.

### *Litigation Financing*

Defendants learned that Fortress Investment Group LLC managed funds that invested in a loan to The Smith Law Firm in the amount of $24 million. ECF No. 32827-11 (May 20, 2024 Declaration of David Meisels) ¶ 5. That loan appears to have been refinanced, and now, based on information and belief, The Smith Law

4

Firm is in possession of litigation funding through Ellington Management. *Id.* ¶ 4. Defendants believe this follow-on funding was likely orders of magnitude larger than the Fortress funding, perhaps as much as ten times the original loan. From his extensive negotiations with Beasley Allen, Defendants' settlement counsel, Mr. Murdica, came to the belief that "the Beasley firm is not able to say yes to any deal, because they're way too deep in debt from funding." ECF No. 32827-12 (April 16, 2023 Deposition of J. Murdica at 234:23–25).

### *The Subpoenas*

Defendants issued subpoenas to Beasley Allen (ECF No. 32201); The Smith Law Firm (ECF No. 32226); and the Ellington Management Group (ECF No. 32215) regarding third-party litigation funding and subsequently narrowed the scope of those requests. *See* Order at 4-5; ECF No. 32845 (June 21, 2024 Letter).[2]

The subpoenas seek what can be summarized as three, discrete categories of information: (1) documents regarding the subpoenaed parties' litigation financing, including communications with third parties; (2) the subpoenaed parties' communications with third parties regarding settlements; and (3) the subpoenaed parties' communications with third parties regarding Defendants' proposed reorganization.

---

[2] Defendants also originally issued subpoenas to Fortress Investment Group LLC (ECF No. 32203) and Thompson Reuters (ECF No. 32204) which were withdrawn.

5

***Special Master Order No. 25***

Following service of the subpoenas, Beasley Allen, The Smith Law Firm, and the Plaintiffs' Steering Committee each filed motions to quash and/or for protection. ECF Nos. 32445, 32483, 32603. Defendants opposed the motions, ECF No. 32827, and the Court referred the motions to the Special Master, who held a hearing on July 1, 2024. *See* Tr. of July 1, 2024 Hrg. (ECF No. 32883). On July 9, the Special Master issued Special Master Order No. 25 (ECF No. 32926) granting the motions and quashing the subpoenas. Defendants submitted objections to that ruling to the District Court.

***Subsequent Proceedings***

Your Honor's order relied on its finding that no competent evidence existed that The Smith Law Firm has any financing arrangement regarding this talc litigation. Order at 10-11. As discussed in more detail below, new evidence that came to light in the Red River bankruptcy proceedings demonstrates that The Smith Law Firm jointly represents *all* of the thousands of plaintiffs in this MDL represented by Beasley Allen. Given their co-counsel relationship (and, thus, their representation of the same clients), litigation funding received by the Smith Law Firm has direct implications for Beasley Allen's ability to settle cases (and vice versa).

Because of that new evidence and other developments, Defendants sought to supplement its arguments regarding their requests for litigation financing discovery.

6

The Court referred the dispute regarding Defendants' objections to Special Master Order No. 25 to the Special Master "for consideration of whether supplemental briefing related to the Texas bankruptcy is required." ECF No. 33638 at 3. The Court also permitted the Special Master to "administratively terminate the Motion Objecting to the Order pending his consideration of the supplemental briefing." *Id.* at 3 n.8.

Following a Zoom conference, Your Honor issued an order terminating the motion objecting to the Order.. ECF No. 33779. Your Honor then ordered that "Defendants shall refile their motion with supplemental information by May 12." *Id.* Defendants now submit this motion as pursuant to that order.

## ARGUMENT

### I. MDL Plaintiffs Represented By Beasley Allen Received Litigation Funding Via The Smith Law Firm.

New developments have changed the factual landscape of the parties' litigation funding dispute.

Your Honor concluded that Defendants' assertion that the Smith Law Firm's litigation funding was relevant to MDL plaintiffs was based on "sketchy allegations" that Your Honor described as "speculation and conjecture." Order at 10. Your Honor stated that "no competent evidence has been submitted" that "Smith currently has any financing arrangement regarding this talc litigation." *Id.* at 10-11; *see also id.* at

7

10 ("Defendants' subpoena is based on the speculative assertion that the firm and Ellington have litigation financing tentacles with Beasley Allen in this MDL.").

Allen Smith—principal and founder of the Smith Law Firm—submitted a declaration stating that the Smith Law Firm is not "counsel of record" for a plaintiff in this MDL. ECF 32603-2 at ¶ 4. And Your Honor relied on that declaration to state that the Smith Law Firm "is not counsel of record to any party in the litigation." Order at 3.

Your Honor questioned defense counsel about this issue: "The Smith Law Firm is not counsel of record in the case, correct?" ECF 32883 at 18:17-18. Defendants explained at the time that the declaration as "very carefully worded" because "[i]t says they are not *counsel of record* to any Plaintiffs. It does not say they do not *represent* any." *Id.* at 18:24-19:1 (emphasis added).

The evidence now proves Defendants' point. The Smith Law Firm and Beasley Allen entered into a joint venture agreement all the way back in 2014 in which they agreed to "jointly represent ***all of our talcum powder*** *clients.*" Ex. A, Joint Venture Agreement at 2 (emphasis added); *see also* Ex. C, Red River Confirm. Hr'g (Day 4) 1454:12-15. To be clear, this means that the Smith Law Firm represents all of the approximately 5,000 plaintiffs in this MDL that Beasley Allen represents. *See In re Red River Talc LLC*, 2025 WL 1029302, at *13, *27 (Bankr. S.D. Tex. Mar. 31, 2025).

8

The agreement provides that The Smith Law Firm along with Porter Malouf (who The Smith Law Firm later bought out) would be responsible for 50% of the work, 50% of the expenses, and 50% of the fees. Ex. A, Joint Venture Agreement at 1-2; Ex. C, Red River Confirm. Hr'g (Day 4) 1836:12-22.[3]

This fact alone means that Local Rule 7.1.1 was plainly violated here. The rule requires that "all parties" must disclose litigation funding regarding. L.R. 7.1.1(a). Beasley Allen knew that The Smith Law Firm represented plaintiffs in this MDL. And Beasley Allen knew that The Smith Law Firm acquired litigation funding in connection with talc litigation. ECF No. 32827-2 at 35:23–36:25; *see also id.* at 154:13–155:14. Yet nothing was disclosed under Local Rule 7.1.1 and Beasley Allen acted as if the Smith Law Firm had nothing to do with MDL plaintiffs.

The Order relied on a perceived lack of evidence of the Smith Law Firm's involvement in the MDL. That evidence has now been supplied in spades. The Smith Law Firm represents thousands of MDL plaintiffs. By virtue of this representation, plaintiffs in this MDL therefore received litigation funding which for years has not been disclosed as required by Local Rule 7.1.1. Indeed, Beasley Allen itself now

---

[3] Allen Smith also testified that he believed that "[e]verybody in this room that's in a law firm has some type of third-party financing." Ex. D, Red River Confirm. Hr'g (Day 5) 2079:22-2080:3.

9

alleges that litigation financing has affected the Smith Law Firm's settlement decisions for their joint clients.[4] Ex. H, Beasley Allen Complaint ¶ 25.

Given the new evidence—in addition to the further developments discussed below—this Court should permit Defendants' request for litigation funding discovery.

## II. Beasley Allen's Actions Demonstrate Why Discovery Into Litigation Funding Is Appropriate Here.

Your Honor also concluded that Defendants had not shown that "something untoward" occurred and that "Defendants would have a better argument if they could show Beasley Allen's rejection was irrational or arbitrary and capricious." Order at 7, 13. The new evidence from the Red River bankruptcy proceedings shows that standard is fully satisfied.[5]

In the bankruptcy, Andy Birchfield submitted approximately 11,000 votes to reject the bankruptcy plan.[6] He also certified under penalty of perjury that he

---

[4] Specifically, Beasley Allen claims that the Smith Law Firm is agreeing to settle claims for too low a value due to litigation financing. Too low or too high, it seems the parties inherently agree the funding has and is playing a role. And perhaps it will shed light on why Beasley Allen is willing to deny some clients any recovery at all.

[5] For all of the reasons stated in Defendants original briefing, Defendants continue to disagree that the law requires a party must make a showing that something untoward occurred before any litigation funding discovery may go forward.

[6] "Beasley Allen voted 11,434 clients as rejecting the Initial Plan and 69 clients as accepting the initial plan." *In re Red River Talc LLC*, 2025 WL 1029302, at *26 n.258

10

"collected and recorded the vote" of all those clients and that each "indicated his or her informed consent" to vote against the resolution. Ex. E, Beasley Allen Master Ballot; *see also In re Red River Talc LLC*, 2025 WL 1029302, at *19, *26.

"But the evidence confirmed that he received only 3,000 affirmative responses from clients communicating how the client wanted to vote.[259] The firm did not receive a response from the remaining 8,000." *In re Red River Talc LLC*, 2025 WL 1029302, at *26; *see also* Ex. C, Red River Confirm. Hr'g (Day 4) 1436:20-1437:8. When Mr. Birchfield was asked what he "collected" given that he certified he "collected" all 11,000 clients' votes, he responded, "[W]e collected their silence." Ex. C, Red River Confirm. Hr'g (Day 4) 1441:8-9. The bankruptcy court concluded that "[a]ll the votes without affirmative client consent were not valid." *In re Red River Talc LLC*, 2025 WL 1029302, at *26. That means Beasley Allen submitted approximately ***8,000 invalid votes based on a false certification***.

Worse, "Birchfield also certified that over 5,000 voting clients had gynecological cancer on his Master Ballot Spreadsheet. And thousands of these clients were voted to reject the Initial Plan without any direction from those clients." *Id.* Yet, "Birchfield believes gynecological cancer claims are non-compensable in the tort system based on a lack of scientific support." *Id.* In other words: "Birchfield voted on behalf of clients, without their consent, to reject payment under the Initial Plan even though he believes those clients will not and cannot be paid in the tort

11

system." *Id.*; *see also* Ex. B, Red River Confirm. Hr'g (Day 3) 1145:20-1148:4; Ex. C, Red River Confirm. Hr'g (Day 4) 1494:18-20 ("I do not believe that the science would support prosecution of [gynecological cancer] claims in the tort system.").[7] Needless to say, Defendants submit this behavior is the definition of untoward.

Your Honor also rejected Defendants' argument that Beasley Allen has a conflict of interest because it "stands to lose common benefit fees if this talc litigation resolves in bankruptcy rather than at trial or through a traditional settlement." Order at 14. The Order went on to state that "no persuasive evidence exists that the specter of a common benefit award overrides the reasons Beasley Allen has given for why it objects to defendants' settlement offers." *Id.* at 14.

Yet after thwarting a global resolution in bankruptcy by falsely certifying votes contrary to the interests of his clients, Mr. Birchfield waited less than two weeks before directly soliciting Johnson & Johnson's General Counsel to engage in global settlement negotiations—now in a forum that he hopes will reward him through the common benefit fund. Ex. F, April 10, 2025 Letter. Shortly after, Beasley Allen sent another letter to Defendants requesting common benefit fund fees. Ex. H, May 1, 2025 Letter.

---

[7] Additionally, Defendants in the first round of briefing submitted evidence that Beasley Allen falsely told one of its clients that "J&J has been unwilling to settle." ECF No. 32827-6 at 4.

12

Thus, here is what we now know: Local Rule 7.1.1 was violated; Beasley Allen and The Smith Law Firm obfuscated their relationship to permit Your Honor to issue a ruling based on "facts" that were not true; Beasley Allen falsely certified having collected the informed consent of over 8,000 clients; Beasley Allen voted 5,000 gynecological cancer claimants to reject the bankruptcy resolution despite acknowledging their claims were non-compensable in the tort system; and immediately *after* the bankruptcy dismissal, Beasley Allen reached out to J&J regarding a settlement along with a request for common benefit fund fees. If this does not count as evidence that "something untoward" is occurring, then nothing ever will.

With the violation of the rule, obfuscation of the truth, false certifications, and conflicts, Defendants ought to be able to get to the bottom of what is really occurring with respect to litigation financing and its effect on settlement decisions. Defendants cannot simply take Beasley Allen at its word that it "has not used litigation funding for talc cases in this MDL." Order at 10. Indeed, in *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, the Court concluded that a certification that no Local Rule 7.1.1 disclosure was necessary did not simply "put an end to all third-party litigation financing discovery." 2024 WL 4100379, at *6 (D.N.J. Sept. 6, 2024). Rather, Defendants could test that assertion with discovery.

13

Most importantly, Local Rule 7.1.1 expressly provides that the parties may seek additional discovery into litigation financing—beyond the required disclosures—upon a showing of good cause that: (1) the funder "has authority to make material litigation decisions or settlement decisions;" (2) the "interests of the parties or the class (if applicable) are not being promoted or protected;" (3) "conflicts of interest exist;" *or* (4) the "disclosure is necessary to any issue in the case." L.R. 7.1.1(b) (emphasis added). The evidence above is ample to find good cause that the interests of the parties are not being protected, that conflicts of interest exist, and that disclosure is necessary. Discovery into litigation funding is therefore warranted.

## CONCLUSION

This Court should permit Defendants' requested discovery into litigation financing, and at a bare minimum, require all plaintiffs represented by Beasley Allen to submit a statement of disclosure as required by Local Rule 7.1.1.

Dated: May 12, 2025                           Respectfully submitted,

                                              */s/ Kristen R. Fournier*
                                              Kristen R. Fournier
                                              Matthew L. Bush
                                              **KING & SPALDING LLP**
                                              1185 Avenue of the Americas
                                              34th Floor
                                              New York, NY 10036
                                              (212) 556-2100
                                              kfournier@kslaw.com

                                              */s/ Jessica L. Brennan*
                                              Jessica L. Brennan
                                              **BARNES & THORNBURG LLP**
                                              67 E. Park Place, Suite 1000
                                              Morristown, NJ 07960
                                              Tel.: 973-775-6120
                                              jessica.brennan@btlaw.com

                                              *Attorneys for Defendants Johnson & Johnson and LLT Management, LLC (predecessor to Red River Talc LLC)*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, I electronically filed the foregoing document with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Jessica L. Brennan*
Jessica L. Brennan
