UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (MAS) (RLS)<br><br>MEMORANDUM OPINION AND ORDER |

**RUKHSANAH L. SINGH, United States Magistrate Judge.**

**PRESENTLY** before this Court is a Motion by Defendants Johnson & Johnson ("J&J") and LTL Management LLC (collectively, "Defendants") to Strike Rebuttal Expert Report of Elizabeth Stuart, Ph.D. ("Dr. Stuart") (the "Motion to Strike"). (Doc. No. 33038). The Plaintiffs' Steering Committee (the "PSC" or "Plaintiffs") opposes the Motion, (Doc. No. 33102), to which Defendants have replied, (Doc. No. 33189). The Court has fully considered the parties' written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, and for good cause shown, the Court **GRANTS** Defendants' Motion.

**I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

As the parties and the Court are familiar with the facts underlying this Multidistrict Litigation ("MDL"), the Court recites only those facts pertinent to the instant Motion. This MDL consolidates numerous actions filed across the country alleging that the perineal use of J&J's talcum powder products causes ovarian cancer. Since its inception in 2016, this MDL has proceeded through multiple stages of discovery, with the parties exchanging numerous expert reports and engaging in substantial motion practice.

On October 6, 2023, the Court entered a Scheduling Order requiring Plaintiffs to serve their expert disclosures for Stage Three cases by November 15, 2023. (Doc. No. 28516 at ¶ 2). On that

1

date, the PSC served amended disclosures that included several new expert witnesses not previously disclosed. Defendants moved to strike the disclosures, arguing that they exceeded the scope permitted under the October 6, 2023 Order and violated Rule 26 of the Federal Rules of Civil Procedure. (Doc. No. 28798). The Court denied the motion, finding that the PSC's interpretation of the Order was substantially justified and that any prejudice to Defendants could be cured by extending the expert disclosure deadlines. (Doc. No. 29023). Accordingly, on February 9, 2024, the Court entered an Order, amending the deadlines set forth in the October 6, 2023 Order. (Doc. No. 29024).

The Court further amended the schedule on April 30, 2024, modifying the deadlines set forth in both the October 6, 2023 and February 9, 2024 Orders. (Doc. No. 32123). Pursuant to the April 30, 2024 Scheduling Order, the deadline to complete depositions of Plaintiffs' expert witnesses was extended to May 17, 2024, and the deadline to serve Defendants' expert disclosures remained May 21, 2024.[1] (Doc. No. 32123).

On May 17, 2024, the PSC informed the Court of a newly published article entitled, *Intimate Care Products and Incidence of Hormone-Related Cancers: A Quantitative Bias Analysis* by Katie M. O'Brien, et al., published on May 15, 2024 in the Journal of Clinical Oncology (the "O'Brien Study"). (Doc. No. 32197, Ex. A). Subsequently, Defendants sought leave to extend their expert disclosure deadline to address the O'Brien Study, proposing a staggered schedule under which Plaintiffs would serve any supplemental reports by May 28, 2024, and Defendants would serve their expert disclosures and responses two weeks thereafter. (*See* Doc. Nos. 32198, 33038-5). The PSC opposed the proposal, insisting that both sides serve their expert reports

---

[1] The deadline to file any dispositive or *Daubert* motions also remained July 23, 2024, with the Court stating it will not entertain any requests to extend the briefing schedule for *Daubert* or dispositive motions. (Doc. No. 32123 at n.1).

simultaneously. (*See* Doc. No. 33038-4). On May 20, 2024, the Court entered a Text Order setting May 28, 2024 as the deadline for the simultaneous disclosure of all expert reports and precluding further depositions of Plaintiffs' experts. (Doc. No. 32214).

On May 28, 2024, the parties served their respective expert reports. (Doc. No. 32764). Among their disclosures, Defendants served a report from biostatistician, John Kornak, Ph.D. ("Dr. Kornak"), proffering opinions that criticized the methodology, analysis, and findings of the O'Brien Study. (Doc. No. 33102-1).[2] At that time, Plaintiffs served their supplemental expert reports addressing the O'Brien Study, although none of those experts "were professors of Biostatistics as is Dr. Kornak." (Doc. No. 33102 at p. 4). On July 8, 2024, the PSC deposed Dr. Kornak. (Doc. No. 33102-2).

After the close of all expert discovery, and pursuant to the Court's scheduling order, on July 23, 2024, the PSC filed a motion *in limine* to exclude Dr. Kornak's testimony (the "*Daubert* Motion").[3] (Doc. No. 33011). Through the *Daubert* Motion, the PSC argues Dr. Konak's proffered opinions challenging the peer-reviewed methodology applied in the O'Brien Study are unreliable and unfit. (*See generally* Doc. No. 33011-1). The PSC further argues that the O'Brien Study "contained a scientifically accepted methodology that deserves deference." (Doc. No. 33011-1 at p. 20). In support of the *Daubert* Motion, the PSC attaches a July 21, 2024 Rebuttal Expert Report of Elizabeth Stuart, Ph.D. ("Dr. Stuart's Rebuttal Report"). (Doc. No. 33011-11). Through the report, Dr. Stuart expresses disagreement with Dr. Kornak's critiques of the O'Brien Study and

---

[2] The May 28, 2024 Expert Report of Dr. Kornak was designated as Confidential. (*See* Doc. No. 33102-1). However, the PSC publicly filed the Report with the Court, which no party has challenged. (*See* Doc. Nos. 33102-1 and 33011-9).

[3] Defendants have opposed the *Daubert* Motion and, as of the date of this Opinion and Order, the *Daubert* Motion remains pending before the Court. (*See* Doc. No. 33107).

3

further opines as to the adequacy of the methodologies and analyses applied in that Study.[4] (*See generally* Doc. No. 33011-11). Notably, the PSC's memorandum in support of the *Daubert* Motion relies on some of Dr. Stuart's publications and references the Rebuttal Report only to quote her opinion that:

> "O'Brien et al.'s use of quantitative bias analysis and multiple imputation are appropriate and well considered, allowing the analysis to use all the prospective and retrospective data available and drawing appropriate conclusions regarding the links between genital talc use and ovarian cancer. As indicated and expected given its publication in a top peer-reviewed oncology journal it is an important contribution to the body of literature on the relationship between genital talc use and ovarian cancer and should be included when considering the weight of the evidence regarding such a link."

(Doc. No. 33011-1 at p. 5 (quoting Doc. No. 33011-11 at p. 1)). Plaintiffs did not disclose Dr. Stuart as an expert in this matter and did not serve her Rebuttal Report prior to attaching it to the *Daubert* Motion.

## II. PENDING MOTION TO STRIKE

On July 30, 2024, Defendants filed the instant Motion to Strike pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.[5] (Doc. No. 33038). Defendants argue that Plaintiffs'

---

[4] Dr. Stuart states that she submits
> this report documenting my expert opinion on [the O'Brien Study]. I was asked to review the O'Brien et al. (2024) manuscript and the criticisms of that work offered by [J&J's] biostatistical expert John Kornak, PhD through his report and his deposition, and in particular the aspects related to genital talc use and ovarian cancer. I have considered the O'Brien et al. (2024) paper, including its methods, results, strengths, and limitations as well as other relevant scientific literature; this report summarizes the results of that consideration.

(Doc. No. 33011-11 at p. 1).

[5] While the Motion to Strike, among other motions, was pending in this MDL, Red River Talc LLC, a subsidiary of Defendant J&J filed a Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas on September 20, 2024. (Doc. No. 33296). The Bankruptcy Court subsequently entered a series of orders staying proceedings in this MDL through April 2025. (*See* Doc. Nos. 33296, 33323, 33402, 33405). Following dismissal of the bankruptcy

4

proffer of Dr. Stuart's Rebuttal Report is untimely, in violation of the Court's orders regarding the production of expert reports pursuant to Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure, and poses incurable undue prejudice to Defendants. (*See* Doc. No. 33038-2). More specifically, Defendants argue that Plaintiffs' injection of Dr. Stuart's Rebuttal Report on July 23, 2024 completely disregards the Court's orders that required Plaintiffs to serve any supplemental reports relating to the O'Brien Study on May 28, 2024. (*See* Doc. No. 33038-2 at p. 5). They point out that Defendants had proposed a staggered schedule for expert reports that would have permitted rebuttal reports, but the PSC opposed the request. Defendants also argue that disclosing of an expert by attaching an undisclosed expert report to a *Daubert* motion does not comport with Rule 26. (*See* Doc. No. 33038-2 at pp. 5-6).

Defendants also contend that the untimely disclosure of Dr. Stuart's Rebuttal Report highly prejudices them, particularly where Plaintiffs bear the burden of proof. By circumventing the normal course where the party bearing a burden of proof discloses their expert reports first, Defendants argue that they are left without recourse to respond or challenge the untimely Rebuttal Report. (*See* Doc. No. 33038-2 at pp. 6-7). Defendants point out that, pursuant to the Court's prior order, they were unable to depose Plaintiffs' experts as to the O'Brien Study and cannot cure the prejudice posed by this untimely disclosed report without significantly impacting the Court's schedule as to *Daubert* motions, particularly where the Court previously ordered it would not be modified. (*See* Doc. No. 33038-2 at pp. 7-8).

The PSC opposes the Motion to Strike. (Doc. No. 33102). The PSC argues that Dr. Stuart's Rebuttal Report is a proper rebuttal to Dr. Kornak based on purportedly new opinions proffered

---

petition, the Court entered an Order on April 15, 2025, assigning specific motions to the appropriate judges for resolution. (Doc. Nos. 33587, 33638). The Court then reactivated all pending motions, including the instant Motion. (Doc. No. 33655).

5

during his July 8, 2024 deposition. (*See* Doc. No. 33102 at pp. 4-7). More specifically, the PSC points to Dr. Kornak's positive response to counsel's inquiry as to whether he believed "'the peer reviewers could have missed the methodology point of this study[.]'" (Doc. No. 33102 at p. 5 (quoting Doc. No. 33102-2, Kornak Dep. at 106:21-107:3 and 164:22-165:15)). They further contend that Dr. Stuart's Rebuttal Report is necessary to respond to Dr. Kornak because the PSC did not expect Defendants to rely upon a biostatistician or that Dr. Kornak would challenge the methodology of a peer-reviewed published opinion. (Doc. No. 33102 at pp. 7-8). The PSC adds that Defendants failed to properly disclose the extent of Dr. Kornak's opinions through his report which Plaintiffs contend they learned only through his deposition on July 8, 2024. (Doc. No. 33102 at p. 10). The PSC argues that Plaintiffs did not "'flagrantly disregard'" the Court's orders or engage in improper gamesmanship, but rather were attempting to address the unexpected disclosure of Dr. Kornak's opinions in a compressed time period. (Doc. No. 33102 at p. 10). The PSC further proffers that Rule 26 does not preclude rebuttal reports, Dr. Stuart's opinions are limited to responding to Dr. Kornak's opinions, and Defendants have not even sought to depose Dr. Stuart. (Doc. No. 33102 at pp. 11-12).

In reply, Defendants take issue with Plaintiffs' argument that Dr. Kornak's deposition testimony injected opinions that were not disclosed in his report, noting that Dr. Kornak was responding to specific questions posed by Plaintiffs as to the peer review process. (Doc. No. 33189 at pp. 1-4). Defendants further contend that Dr. Stuart's Rebuttal Report is not limited to those purported new opinions but rather "responds to Dr. Kornak's report generally." (Doc. No. 33189 at p. 1). They note that permitting the deposition of Dr. Stuart would be improper based on the Court's previously entered orders. (*See* Doc. No. 33189 at pp. 5-6). Defendants point out that permitting Dr. Stuart to proffer her opinions would not only require her deposition but also the re-

6

briefing of *Daubert* motions and/or the filing of another motion as to her testimony. (*See* Doc. No. 33189 at p. 6). Accordingly, Defendants seek the Court to strike Dr. Stuart's Rebuttal Report in its entirety.

## III. LEGAL STANDARD

Parties must make their respective expert disclosures according to Court-ordered deadlines. Fed. R. Civ. P. 26(a)(2)(D); *see also* Fed. R. Civ. P. 16(b). Rule 26(e) further requires parties to timely supplement disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *see also* Fed. R. Civ. P. 26(a)(2)(E). A party's failure to disclose "a witness as required by Rule 26(a) or (e)" may result in the preclusion of that witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625, 631 (D.N.J. 2022) (holding that plaintiff's supplement to their expert report did not constitute a proper supplement because it relied on materials available before the deadline).

Substantial justification arises where it is reasonable to find "that parties could differ as to whether the party was required to comply with the disclosure request." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n. 23 & 141 (3d Cir. 2009) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175-76 (M.D. Pa. 2002)). Thus, a court may find substantial justification if there is "a genuine dispute concerning compliance." *Id.* at 140 n. 23; *accord Landau v. Lamas*, No. 15-1327, 2021 WL 2930078, at *2 (M.D. Pa. July 12, 2021). Courts also consider a set of factors to determine whether an untimely disclosure is harmless, including:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party

7

> to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*. The Court may also consider the importance of the issues at stake. *Id.* at 904. Ultimately, excluding critical evidence is an extreme sanction. *Id.* at 905 (internal quotation marks and citation omitted); *see also Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997) (finding that the "exclusion of evidence is a severe sanction and is therefore often inappropriate unless the failure to disclose or supplement is in bad faith or the resultant prejudice to the opposing party cannot be cured because, for example, use of the evidence is 'imminent or in progress'"). Modifications of a scheduling order are made only for good cause and with the Court's consent. Fed. R. Civ. P. 16(c); *see also, e.g., Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990).

## IV. DISCUSSION

There can be no dispute that Plaintiffs' interjection of Dr. Stuart's Rebuttal Report after the close of all discovery and in connection with a *Daubert* motion violates the Court's prior scheduling orders of which Plaintiffs have been on notice. Notably, this is not the first time Defendants have alleged that Plaintiffs violated the Court's orders as to the expert discovery schedule. (*See* Doc. No. 29023). Plaintiffs are well aware that, at their request, the Court set a deadline of May 28, 2024 for the simultaneous exchange of expert reports, including supplemental reports addressing the O'Brien Study. Plaintiffs received the Dr. Kornak Report on that date; yet, Plaintiffs did not raise with the Court, or even adverse counsel, any concerns that they felt a need to respond to that Report with an expert biostatistician. Nor did Plaintiffs raise any concerns after the July 8, 2024 deposition of Dr. Kornak. Rather, they engaged in

8

self-help by attaching the Dr. Stuart Rebuttal Report to the *Daubert* Motion over two weeks later. Attaching a never before disclosed expert report to a *Daubert* motion after the close of all discovery does not comply with the Court's Orders or the Federal Rules of Civil Procedure.[6] Accordingly, it is clear that Plaintiffs failed to timely disclose Dr. Stuart as a witness. *See Lavell v. Camden County College*, No. 21-6832, 2023 WL 4074077, at *9 (D.N.J. June 20, 2023) (finding plaintiff's rebuttal report improper where it was filed four days late).

Finding as such, the Court considers next whether the failure to timely disclose Dr. Stuart as an expert is substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). The PSC justifies their untimely disclosure on the argument that it did not anticipate that Defendants would challenge the O'Brien Study with an expert report from a biostatistician or that Dr. Kornak would testify at his deposition that he believed the peer review of the Study was flawed. (Doc. No. 33102 at p. 5). However, if Plaintiffs were so surprised by Defendants' reliance on an expert biostatistician, why did they not seek leave to serve a rebuttal report upon receipt of Dr. Kornak's report? And, if Plaintiffs were so shocked by Dr. Kornak's testimony, why did they not seek leave of the Court to address the alleged new testimony immediately after the July 8, 2024 deposition? Moreover, even in their *Daubert* Motion, Plaintiffs did not explain why they were annexing a never before disclosed expert report. (*See* Doc. No. 33011). Yet, "the old adage that 'it is better to ask for forgiveness than permission' has no place in federal practice." *Bartels v. Southern Motors of Savannah, Inc.*, No. 414-75, 2015 WL 4111894, at *2 (S.D. Ga. July 7, 2015). Plaintiffs had opportunities to advise Defendants and the Court of their

---

[6] Assuming arguendo that Dr. Stuart's report qualifies as a rebuttal report, Plaintiffs still failed to comply with Rule 26(a)(2)(D)(ii), which requires that rebuttal expert disclosures be made within 30 days after the other party's disclosure. Plaintiffs did not submit Dr. Stuart's report until July 23, 2024—well beyond the 30-day window following Dr. Kornak's May 28, 2024 report.

9.

concerns, but they simply did not do so.

Moreover, the PSC's argument that Dr. Kornak's testimony regarding the peer review methodology exceeded the scope of his expert report and was unanticipated is slender justification for the failure to comply with Court orders. Rather, Dr. Kornak's deposition testimony was consistent with his May 28, 2024 expert report, which repeatedly characterized the O'Brien Study as "flawed and unreliable"—a phrase that appears no fewer than thirteen times throughout his report.[7] (*See* Doc. No. 33011-9, Ex. 5). Contextually, Dr. Kornak's deposition testimony simply elaborated on his previously disclosed criticisms of the O'Brien Study's methodology and in direct response to questions posed by Plaintiffs' counsel. (Doc. No 33102-2 at 110:16-18). Courts have routinely held that such elaboration does not constitute a "new opinion" triggering a right to rebuttal. *See Pritchard v. Dow Agro Sciences*, 263 F.R.D. 277, 285 (W.D. Pa., Nov. 12, 2009) (finding an expert's supplemental declaration offered elaboration of his initial opinions); *Emcore Corp. v. Optium Corp.*, No. 6-1202, 2008 WL 3271553, at *4 (W.D. Pa. Aug. 5, 2008) (finding an expert's deposition statement was "an elaboration of and consistent with an opinion" previously addressed in his expert report). Further, Dr. Stuart's report is not narrowly tailored to challenging Dr. Kornak's "new" opinions, but rather offers broader opinions relating to the methodologies of the O'Brien Report.[8] (*See* Doc. No. 33011-11). The PSC, therefore, has not substantially justified the untimely disclosure of Dr. Stuart.

---

[7] Dr. Kornak's report specifically criticized the O'Brien Study for its use of multiple imputation to address missing date, susceptibility to recall bias and inconsistent application of statistical methodologies, which were bases for his conclusion that the study is "flawed and unreliable." (See Doc. No. 33011-9, Ex. 5).

[8] This appears evident as the PSC's memorandum in support of the *Daubert* Motion relies minimally on Dr. Stuart's report, quoting merely two sentences. (*See* Doc. No. 33011 at p. 5).

10

Application of the *Pennypack* factors weigh in support of excluding Dr. Stuart's Rebuttal Report in this context. First, Plaintiffs' untimely disclosure of Dr. Stuart is highly prejudicial and is not harmless. By attaching an undisclosed expert report to a *Daubert* Motion after the close of all discovery, Plaintiffs prevent Defendants from having a meaningful opportunity to challenge or respond to the expert report. *See Lamb v. Montgomery Twp.*, 734 F. App'x 106, 110 (3d Cir. 2018) (finding a witness disclosed for the first time through a summary judgment motion deprived the opposing party a meaningful opportunity to depose the witness and affirming district court's striking of the declaration). Second, permitting Defendants the opportunity to depose Dr. Stuart does not cure the undue prejudice. Even if Defendants deposed Dr. Stuart, questions arise as to whether further supplemental reports would be warranted or whether Defendants would need the opportunity to file a *Daubert* motion relating to Dr. Stuart. Going down such a path would clearly upend the course and timeliness of this litigation, which has already suffered significant delays.

Indeed, permitting such a late disclosure would significantly disrupt the orderly and efficient progression of this MDL. Expert discovery has closed, *Daubert* motions have been filed, and the pretrial schedule has been set. Plaintiffs' strategic choice to wait and then serve a comprehensive expert report with a *Daubert* motion violates the spirit and letter of Rule 26 and undermines the Court's carefully calibrated schedule. *See Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (recognizing that scheduling orders are at the heart of case management); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (excluding expert testimony based on party's failure to comply with the pretrial order); *see also Raritan Baykeeper, Inc. v. NL Indus., Inc.*, No. 09-4117, 2022 WL 815846, at *1 (D.N.J. Mar. 17, 2022) (affirming the magistrate judge's order striking a supplemental expert report served

11

after the close of fact and expert discovery, after decisions on summary judgment and *Daubert* motions, and as the case proceeded to trial); *Dandy v. Ethicon Women's Health and Urology*, 579 F. Supp. 3d 625, 632 (D.N.J. 2022) (granting motion to strike supplemental report served after the close of all discovery and while fully-briefed summary judgment motions remained pending before the court).

Because the first three *Pennypack* factors weigh in favor of exclusion, the Court finds it unnecessary to make a determination on bad faith. Nonetheless, Plaintiffs' tactics of filing an undisclosed expert report in support of a *Daubert* motion without prior notice or requesting appropriate leave of Court and in clear violation of the Court's prior orders is, no doubt, concerning. Accordingly, the Court grants Defendants' Motion and strikes Dr. Stuart's Rebuttal Report in its entirety.

### V. CONCLUSION

Accordingly, for the reasons set forth above and for good cause shown,

**IT IS** on this **13th** day of **May 2025** hereby,

**ORDERED** that Defendants' Motion to Strike the Rebuttal Expert Report of Dr. Elizabeth Stuart (Doc. No. 33038) is **GRANTED**; and it is further

**ORDERED** that the Rebuttal Report of Dr. Elizabeth Stuart dated July 21, 2024 (Doc. No. 33011-11) is hereby **STRICKEN**; and is further

**ORDERED** that the Clerk of Court is directed to **TERMINATE** the Motion pending at Docket Entry No. 33038.

**SO ORDERED.**

_____
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**