## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738 (MAS)/(RLS)<br><br>MLD Case No. 2738<br><br>[FILED ELECTRONICALLY] |

---

## BEASLEY ALLEN'S BRIEF IN OPPOSITION TO JOHNSON & JOHNSON'S MOTION FOR LITIGATION FINANCE DISCOVERY AND TO COMPEL COMPLIANCE WITH LOCAL RULE 7.1.1

---

**POLLOCK LAW, LLC**
Jeffrey M. Pollock, Esq.
Certified by the Supreme Court
Of New Jersey as a Civil Trial Lawyer
*Attorney for Beasley Allen*

## **Table of Contents**

Table of Authorities ......................................................................... ii

PRELIMINARY STATEMENT ...................................................... 1

RELEVANT PROCEDURAL HISTORY AND FACTS ...................... 2

    I.    There Are No New Relevant Facts in Relation to Beasley Allen's Compliance with Local Rule 7.1.1 ...................................... 3

    II.    Beasley Allen's Master Ballot in the Red River Bankruptcy .............. 4

    III.    Beasley Allen's Recommendation That Non-Ovarian Gynecologic Cases Reject J&J's Bankruptcy Plan Was Based on Science and the Best Interests of the Clients............................................. 7

ARGUMENT ................................................................................. 9

    I.    Legal Standard....................................................................... 9

    II.    The Special Master Should Deny the Motion Because it Seeks Irrelevant, Privileged Information, and Exceeds the Scope of Discovery............................................................................. 9

        A.    The motion seeks irrelevant information including Beasley Allen's non-existent documents and communications concerning Third-Party Litigation Funding. (Requests Nos. 1-5). ................................................................. 10

        B.    J&J's Subpoena to its Litigation Opponent Beasley Allen Seeks Privileged and Confidential Documents and Communications Concerning Client Settlement (Request No. 6)......................................................................... 15

    III.    J&J's Claim That Beasley Allen Opposed Its Three Failed Bankruptcies for Self-Serving Reasons Is Unfounded ...................... 17

CONCLUSION ............................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Benitez v. Lopez*,
  2019 WL 1578167 (E.D.N.Y. March 14, 2019) .................................................10

*Costantino v. City of Atl. City*,
  2015 WL 12806490 (D.N.J. Nov. 4, 2015) ..........................................................9

*Glenmede Tr. Co. v. Thompson*,
  56 F.3d 476 (3d Cir. 1995) ...................................................................................9

*Hinsinger v. Conifer Ins. Co.*,
  2024 WL 866529 (D.N.J. Feb. 29, 2024)............................................................15

*In re Cendant Corp. Sec. Litig.*,
  343 F.3d 658 (3d Cir. 2003) ...............................................................................17

*In re Valsartan*,
  405 F. Supp. 3d 612 (D.N.J. 2019)........................................................ 10, 11, 15

*Memory Bowl v. N. Pointe Ins. Co.*,
  280 F.R.D. 181 (D.N.J. 2012) .............................................................................16

*MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC,*
  2024 WL 4100379 (Sept. 6, 2024) ......................................................................13

*O'Boyle v. Borough of Longport*,
  218 N.J. 168 (2014) .............................................................................................17

*Times of Trenton Pub. Corp. v. Pub. Util. Serv. Corp.*,
  2005 WL 1038956 (D.N.J. May 3, 2005) ..................................................... 15, 16

*United States v. Nobles*,
  422 U.S. 225 (1975) .............................................................................................16

**Rules**

Fed. R. Civ. P. 26 .....................................................................................................9
Fed. R. Civ. P. 26(c) .................................................................................................9
Fed. R. Civ. P. 45(d)(3)(A) .......................................................................................9

## **PRELIMINARY STATEMENT**

Johnson & Johnson and LLT Management, LLC's (together J&J) again seek discovery regarding litigation funding from its litigation adversary Beasley Allen—which is simply harassment because Beasley Allen has no litigation funding in relation its ovarian cancer cases.   J&J's unhinged litigation tactics must cease:  (1) multiple motions to remove Beasley Allen from MDL leadership; (2) a motion to disqualify in State court—Judge Porto found that J&J's application lacked any factual basis and dismissed J&J's motion;  (3) multiple applications to bar Beasley Allen's pro hac applications—even though each Beasley Allen lawyer is in good standing at the bar; and, inter alia, (4) an unfounded attack (which has already been rejected by Judge Lopez in the Texas bankruptcy court) that Beasley Allen failed to properly cast votes.  Special Master Schneider already has conducted hearings on the issue here—litigation funding—and found that J&J's application must be denied. The Court should admonish J&J here and now to end these unprincipled legal tactics employed by the J&J War Machine.

In the prior proceeding, after full briefing and a nearly two-hour hearing, Special Master Schneider rejected the assertion that Beasley Allen's opposition to J&J's prior or current bankruptcy settlements are or were "irrational or arbitrary and capricious," and found "no good cause exists to believe that Beasley Allen's settlement position is motivated by any insidious reasons such as litigation financing

or the prospect of a lucrative common benefit fee." *See* Special Master Order No. 25 (Dkt. 32926), at 12. Rather, the Special Master attributed opposition to J&J's bankruptcy settlement to "drastically different views as to whether asbestos is present in defendants' product," views still unsettled by "decades of litigation, . . . continuing scientific debate, and the fact that thus far plaintiffs have overcome a *Daubert* challenge." *Id.* "To repeat, the fact that a firm rejects a settlement offer, even if agreed to by other firms, does not establish good cause to obtain litigation financing discovery." *Id.*

Beasley Allen had no litigation funding when Judge Schneider evaluated this matter in 2024—and Beasley Allen does not have litigation funding today. Because the Special Master's analysis in its prior decision still holds true, the Special Master should re-affirm its prior ruling and deny the motion.

## <u>RELEVANT PROCEDURAL HISTORY AND FACTS</u>

In May 2024, J&J sought to serve a subpoena on Beasley Allen, which sought irrelevant, overly burdensome, and privileged documents including: (1) third-party litigation funding, litigation funding that does not exist because Beasley Alley has never sought litigation funding; (2) purported communications exchanged between Beasley Allen and the press; and (3) privileged settlement communications between Beasley Allen and its clients. ECF No. 32201. J&J's stated purpose in serving the subpoena on Beasley Allen was—in its own words—Beasley Allen opposed J&J's

bad faith bankruptcy filing "all the way to the Third Circuit and managed to defeat the bankruptcy plan." Beasley Allen objected to the Subpoena and moved to quash. ECF Nos. 32213; 32445. Special Master Schneider granted the motion and quashed the Subpoena in its entirety. ECF Nos. 33061; 32926.

## I. There Are No New Relevant Facts in Relation to Beasley Allen's Compliance with Local Rule 7.1.1

J&J renews its motion alleging that the Special Master should now allow discovery because new facts have come to light. This is simply false. At no point has Beasley Allen had litigation funding. Contrary to J&J's application, there are no new facts in relation to Beasley Allen that are relevant to the inquiry of whether it complied with Local Rule 7.1.1:

- Beasley Allen does not have litigation funding for any of its cases in this MDL. The Special Master noted this fact in its order: "It appears at this time that defendants do not challenge Beasley Allen's representation that it does not have litigation funding for this MDL." (Dkt. 32926, Order at 7).

- Beasley Allen is counsel of record in 5,000 cases in the MDL. *Id.* at 2. There are no other counsel of record in these cases. *Id.* at 2.

- The Special Master found: "The Smith Law Firm . . . is not a party in this litigation, and is not counsel of record to any party in the litigation." *Id.* at 3.

- Beasley Allen is, and has been, solely responsible for litigating its clients' cases in this MDL. Beasley Allen has filed the complaints and completed all of the necessary work to comply with the MDL Court's orders, including serving Plaintiff Profile Forms, conducting depositions, preparing discovery pool and bellwether cases for trial, among others. The Smith Law Firm has not been involved in the

3

litigation of the Beasley Allen cases pending in the MDL.[1]

- Beasley Allen and the Smith Law Firm were parties to a joint venture agreement, the continuing validity of which is the subject of ongoing litigation between them. This arrangement involved the sharing of fees.[2]

- Beasley Allen clients have received no funds from the Smith Law Firm's litigation funding.[3]

- Beasley Allen is in no way obligated to the Smith Law Firm's lenders.[4]

- Beasley Allen's decisions to recommend to its clients that they oppose each of J&J's three bad-faith bankruptcies were based solely on its evaluation of the best interests of its clients.

Beasley Allen has at all times complied with Local Rule 7.1.1.

## II.    Beasley Allen's Master Ballot in the Red River Bankruptcy

Judge Lopez had an extraordinarily robust record that included all of J&J's self-serving claims of Beasley Allen's "misconduct" and yet the Court still found no wrongdoing by Beasley Allen.[5]  Consistent with the highest standards of legal

---

[1]    Declaration of P. Leigh O'Dell, attached as **Exhibit 1.**

[2]    *Id.* The Joint Venture Agreement contemplated a sharing of work and expenses 50/50.  The Smith Law Firm's failure to perform 50% of the work is one of the numerous bases for Beasley Allen's claims against the Smith Law Firm which are asserted in a separate action pending in the United State District Court for the Middle District of Alabama.

[3]    *Id.*

[4]    *Id.*

[5]    *See* Dismissal Order of March 31, 2024, at 3, Dkt. 1424, In re Red River Talc LLC, No. 24-90505, attached as **Exhibit 2** ("Plaintiffs' firms voted tens of thousands of claims without either hearing directly from their clients or having the requisite authority to do so. They did not do it in bad faith.").

practice, Beasley Allen communicated on a routine basis, both in writing and over the phone.[6]   In relation to J&J's solicitation of votes in advance of its third bankruptcy filing, the firm communicated with clients prior to the July 26, 2024, voting deadline.  Beasley Allen sent letters to clients, with delivery by email and U.S. Mail, on April 18, 2024; May 13, 2024; May 17, 2024; June 5, 2024; June 21, 2024; and July 12, 2024.  Beasley Allen invited all clients to participate in town hall meetings on July 3, 2024.  Beasley Allen communicated with clients via text on July 24, 2024.

Beasley Allen discussed the intended J&J bankruptcy in Texas and recommended that its clients vote to reject the Plan, as was its right.  Beasley Allen informed its clients of the Firm's intent to vote to reject the Plan unless a client advised they wanted to accept it. Beasley Allen provided a link to the Plan documents.  Beasley Allen gave clients more than three weeks to consider the Plan and answered questions about both the plan and the voting process.   Beasley Allen instructed clients that they *did not need to respond unless* they disagreed with counsel's advice to reject the bankruptcy plan. Even so, thousands of clients responded expressing opposition to the Bankruptcy Plan and expressly directing a vote to "reject."  Beasley Allen submitted a Master Ballot on July 26, 2024, prior to

---

[6]      *See In re: Red River Talc LLC*, Case No. 24-90505, Dkt. 421-1, Declaration of Andy D. Birchfield (Nov. 11, 2024), attached as **Exhibit 3**.

the expiration of the voting deadline.

Beasley Allen advised all clients that if it did not receive specific direction regarding their vote, Beasley Allen would cast a "no" vote.  Beasley Allen submitted a master ballot based on this directive.  The Bankruptcy Court considered briefing and testimony on this issue and ultimately found that only votes for whom Beasley Allen received specific instruction from a client should be counted.[7]

The Bankruptcy Court, however, did not find that Beasley Allen acted in bad faith, but rather the exact opposite, that "[they] did not do it in bad faith."[8]  The Bankruptcy Court did not find that Beasley Allen falsely certified its master ballot or acted improperly in casting the votes of any of its clients. Moreover, in its dismissal order, the Bankruptcy Court noted numerous problems with the entirety of the vote in bankruptcy: 1) a majority of the votes cast were certified under Option B but were not supported by a power of attorney, including votes the Smith Law Firm attempted to cast;[9] and 2) Red River (J&J) directed Epiq to violate the Voting Tabulation procedures in relation to the Beasley Allen vote.[10]

---

[7]    *See* Order of March 31, 2024, at 33-34, Dkt. 1424, In re Red River Talc LLC, No. 24-90505, attached as **Exhibit 2**.

[8]    *See id.* at 3.  Hon. Harlin D. Hale, U.S. Bankruptcy Judge, Northern District of Texas (ret.) opined that "the consent of Beasley Allen's clients was 'informed' and that Beasley Allen properly certified its Master Ballot." *See* Expert Report of Harlin D. Hale, In re Red River Talc LLC, at 11-14, attached as **Exhibit 4**.

[9]    *Id.* at 25, 40.

[10]    *Id.* at 40-42.

### III.    Beasley Allen's Recommendation That Non-Ovarian Gynecologic Cases Reject J&J's Bankruptcy Plan Was Based on Science and the Best Interests of the Clients.

J&J argues that Beasley Allen's recommendation to its non-ovarian gynecologic cancer clients to vote to reject the bankruptcy is the "definition of untoward." (Mot. At 12). There was nothing untoward about Beasley Allen recommending that a client with a claim of non-ovarian gynecologic cancer vote "no" against J&J's bankruptcy plan to accept $1500 for a release of any and all claims for now and all time.

It is undisputed that there is no scientific link between non-ovarian gynecologic cancer and genital talc use. The question is whether these non-ovarian gynecologic claimants are at risk for ovarian cancer. Indeed, clients who were regular users of talcum powder and have been diagnosed with a non-ovarian gynecologic cancer, such as cervical cancer, uterine cancer, or vaginal cancer, are ***still at risk*** for epithelial ovarian cancer. Testimony during the February hearing before the Bankruptcy Court made that clear:

- <u>Mr. Birchfield</u>:  "But for each of these -- each of these clients, if they had been -- each of these clients, even though they have been diagnosed with another gynecologic claim, they all were long-term users of -- you know, of baby powder. So they were at risk of, you know, developing, you know, ovarian cancer."[11]

- <u>Future Claims Representative, Randi Ellis</u>:

---

[11]    In re Red River Talc LLC, Hearing Day 4 Tr. at 1574:13-20 (Feb. 21, 2025), attached as **Exhibit 5**.

- "Q. Is there anything in the Plan that you can point me to that would protect the interests of a woman diagnosed with gynecological cancer who may be at risk for developing ovarian cancer later?  A. I don't think so." [12]

- "Q. If a gynecological cancer claimant takes the money in the bankruptcy, does she give up her right to bring a claim for ovarian cancer should she develop it? A. I think she does."[13]

- "Q. How do they -- under the Plan, if they want to preserve their rights in the event they get ovarian cancer, how do they protect themselves? A. They shouldn't sign a release.

   Q. How does that work? A. These aren't my clients. But if my client came to me and asked, I have this gynecologic cancer, not ovarian, should I take the $1500 or wait to see if I have ovarian cancer and file later, I would say wait."[14]

- <u>Dr. Judith Wolf, Gynecologic Oncologist expert</u>: "Q. Could a woman who's had one of these other non-ovarian gynecologic cancers be at risk for ovarian cancer in the future?  A. Certainly if she still has her ovaries. Treatment for vulva or vaginal cancer often doesn't mean removal of those. And even if she's had her ovaries removed, if she's had risk such as perineal talc use in the past, peritoneal cancer could still be a risk."[15]

Beasley Allen rightly encouraged these claimants to vote to reject the

bankruptcy plan because it was not in their best interests. The testimony of the Future

---

[12]    In re Red River Talc LLC, Hearing Day 6 Tr. at 2737:6-11 (Feb. 23, 2025), attached as **Exhibit 6**.

[13]    *Id.* at 2800:4-9.

[14]    *Id.* at 2800:23-2802:2.

[15]    In re Red River Talc LLC, Hearing Day 8 Tr. at 3486:13-23 (Feb. 27, 2025), attached as **Exhibit 7**.

Claims Representative in the bankruptcy concurred. The Bankruptcy Court found no impropriety with recommending that claimants diagnosed with non-ovarian gynecologic cancers vote "no" to the bankruptcy plan.

## ARGUMENT

### I.    Legal Standard

Courts must quash or modify a subpoena that requires "disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Alternatively, Fed. R. Civ. P. 26 permits the Court, for good cause, to issue a protective order to prevent "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see Costantino v. City of Atl. City*, 2015 WL 12806490, at *3 (D.N.J. Nov. 4, 2015) (good cause requirement satisfied where third-party subpoena sought irrelevant documents).

### II.    The Special Master Should Deny the Motion Because it Seeks Irrelevant, Privileged Information, and Exceeds the Scope of Discovery.

Special Master Schneider's prior order was correct. The motion must be denied because it seeks irrelevant, privileged information that exceeds the permissible scope of discovery.

9

### A. The motion seeks irrelevant information including Beasley Allen's non-existent documents and communications concerning Third-Party Litigation Funding. (Requests Nos. 1-5).

The motion must be denied (once again) because it seeks irrelevant information, including non-existent documents and communications concerning litigation funding. Discovery "directed to a plaintiff's litigation funding is irrelevant." *In re Valsartan*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (collecting cases finding litigation funding irrelevant). *See also Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. March 14, 2019) ("As to the litigation funding documents, Defendants fail to establish that such discovery is 'relevant to any party's <u>claims or defense.</u>'") (emphasis added).

The motion should be denied because Beasley Allen has complied with Local Rule 7.1.1, and J&J fails to articulate any "good cause" or "something untoward" to justify granting the motion and allowing third-party litigation funding documents. Local Civil Rule 7.1.1. requires a party to disclose thirty-party litigation funders. The Rule also permits parties to "seek additional discovery of the terms of any such agreement upon a showing of <u>good cause</u> that the non-party has authority to make <u>material litigation decisions</u> or settlement decisions." (emphasis added). J&J does not make any cogent argument about how any litigation funding—even if it existed—has any relevance to the claims and defenses in the MDL. *In re Valsartan*, 405 F. Supp. 3d at 615.

J&J fails to articulate any supported basis to pursue the discovery against Beasley Allen. J&J cannot re-write Local Rule 7.1.1, which was written to balance the Court's right to know whether a plaintiff is being unreasonable because a non-party with financial strength exerts harmful influence on clients, versus a plaintiff's right to protect work product and strategic alliances. *Id.* There is no factual basis— let alone "good cause"—that any third-party "has the authority to make material litigation decisions or settlement decisions" on behalf of Beasley Allen clients or that "the interests of parties or the class" are "not being promoted or protected" to necessitate disclosure. *See* Local Rule 7.1.1.

**First,** since the Special Master's prior ruling, the relevant facts have not changed.  As the Special Master has acknowledged, Mr. Birchfield's unrefuted testimony confirmed that Beasley Allen does not have any litigation funding for this case, and J&J did not provide any basis to challenge that testimony. *See* Special Master Order No. 25, at 7.[16] Beasley Allen is the only counsel of record in its 5,000 cases in the MDL. *Id.* at 2.  As the Special Master noted, "The Smith Law Firm . . . is not a party in this litigation and is not counsel of record to any party in the litigation." *Id.* at 3.

---

[16]    *See In re LTL Management* LLC, Dep. Andy D. Birchfield Dep. at 47:23 to 48:4 (April 17, 2023)*, attached as **Exhibit 8** ("there was the allegation made that Beasley Allen is so heavily indebted that we could not accept the proposal, and that is–that is categorically false. We have not. **We have not obtained litigation financing or funding for our talc claims.**").

Beasley Allen is, and has been, solely responsible for litigating its clients'
cases in this MDL.  Though Beasley Allen was previously a part of a joint venture
with the Smith Law Firm and tried certain state court cases with Mr. Smith, the
Smith Law Firm has had no involvement in the litigation of the Beasley Allen cases
pending in the MDL from its inception.[17]

J&J argues that "Parties represented by Beasley Allen in this MDL have
received litigation funding through (at minimum) The Smith Law Firm." Mot. At 3.
Beasley Allen clients have received no funds from litigation funding through the
Smith Law Firm.[18]

Beasley Allen can only speak for Beasley Allen.  The situation with the Smith
Law Firm in the MDL is analogous to a referral arrangement.  Generally, Beasley
Allen is neither apprised of referring counsel's funding arrangements nor has any
duty to inquire about such information, particularly if Beasley Allen is the sole
counsel of record and is handling the claim.  Similarly, Beasley Allen had no
information about the details of the Smith Law Firm's financing arrangements at the
time the cases were filed.   Beasley Allen has always had sole responsibility for its
cases in the MDL.  Beasley Allen has no litigation funding, and therefore, has no
duty to disclose information under Local Rule 7.1.1.  There are no new facts that

---

[17]     Declaration of P. Leigh O'Dell, attached as **Exhibit 1.**

[18]     *Id.*

12

change the Special Master's prior analysis.[19]  Beasley Allen is and has always been in compliance with Local Rule 7.1.1.

**_Second,_** there is nothing "untoward" that justifies granting the motion and allowing third-party litigation funding discovery.  J&J asserts that Beasley Allen submitted a false certification with its master ballot in the Red River bankruptcy.  As explained in more detail above, Beasley Allen submitted a master ballot after extensive communications with clients.  Beasley Allen advised clients of the terms of J&J's bankruptcy plan and recommended that the clients vote to reject the plan.  As a mechanism for communication, Beasley Allen stated that it planned to vote to reject the plan, unless it heard otherwise from an individual client.  The Bankruptcy Court considered a fulsome record which included – extensive briefing, a review of Beasley Allen's communications to clients _in camera_, and a two-week hearing – and did not find that Beasley Allen falsely certified its master ballot or acted improperly in casting the votes of any of its clients. The Court found that Beasley Allen (and other plaintiffs' firms) "did not do it in bad faith."[20]  Moreover, in its dismissal order,

---

[19]       J&J cites _MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC,_ 2024 WL 4100379 (Sept. 6, 2024), for the proposition that a certification that no disclosure under Local Rule 7.1.1 is required does not "simply 'put an end to all third- party litigation financing discovery." The Court's decision in _MSP_ is inapposite. In that instance, actual litigation funding entities were members of the plaintiff group.  The court found that discovery of litigation funding documents was appropriately ordered by the Magistrate Judge because documents had been produced "suggesting certain litigation-funding entities 'have intimate involvement in Plaintiffs' litigation decision-making." The present case is far different, and J&J has made no such showing which would warrant the Special Master to grant its motion.

[20]       _See_ Order of March 31, 2024, at 3, Dkt. 1424, In re Red River Talc LLC, No. 24-90505,

the Bankruptcy Court noted numerous problems with the entirety of the vote in the bankruptcy, namely that the majority of the votes cast were certified under Option B but were not supported by a power of attorney, including votes the Smith Law Firm attempted to cast.[21]

J&J further claims that Beasley Allen's recommendation for non-ovarian gynecologic cancer claimants to vote against the bankruptcy plan was "untoward" and warrants the Special Master granting its motion. This assertion is entirely baseless. As detailed above, Beasley Allen acted appropriately in advising its clients with non-ovarian gynecologic cancer claims to reject J&J's plan, which offered a mere $1,500 in exchange for a full release of all claims.

Many of these clients—regular talcum powder users diagnosed with cervical, uterine, or vaginal cancer—remain at risk for epithelial ovarian cancer. Accepting a minimal payout in bankruptcy for their non-ovarian claim would permanently bar them from pursuing compensation for ovarian cancer, the injury most strongly supported by scientific evidence and, in most cases, the more severe diagnosis.

Beasley Allen's recommendation was not "untoward"—it was a principled

---

attached as **Exhibit 2**. Hon. Harlin D. Hale, U.S. Bankruptcy Judge, Northern District of Texas (ret.) opined that "the consent of Beasley Allen's clients was 'informed' and that Beasley Allen properly certified its Master Ballot." *See* Expert Report of Harlin D. Hale, In re Red River Talc LLC, at 11-14, attached as **Exhibit 4**.

[21] *Id.* at 25, 40.

decision made in the best interests of its clients.  In sum, the documents sought in RFPs Nos. 1-5 (even if they existed) are irrelevant. "The fact that defendants have raised no nonspeculative basis for their discovery request" should result in the motion being denied. *In re Valsartan*, 405 F. Supp. 3d at 616 (citing cases).[22]

## B. J&J's Subpoena to its Litigation Opponent Beasley Allen Seeks Privileged and Confidential Documents and Communications Concerning Client Settlement (Request No. 6).

The motion must be denied because Request No. 6 seeks Beasley Allen's attorney-client privileged communications, including "All Documents, Communications, or Agreements" that concern the "authority to settle or otherwise resolve" the talc litigation. ECF No. 32201 at 14. The Court must deny any discovery requests that, *inter alia,* "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." *Hinsinger v. Conifer Ins. Co.*, 2024 WL 866529, at *5 (D.N.J. Feb. 29, 2024).

"The attorney-client privilege applies to communications by a client, made in confidence, for the purpose of seeking legal advice from an attorney who is acting in his or her capacity as an attorney." *Hinsinger v. Conifer Ins. Co.*, 2024 WL 866529, at *7 (D.N.J. Feb. 29, 2024) (citation omitted). *See Times of Trenton Pub.*

---

[22]    There is similarly no basis to order an in-camera review because J&J cannot satisfy any the factors warranting same. *See In re Valsartan*, 405 F. Supp. 3d at 619, n.8 (discussing considerations not applicable here).

*Corp. v. Pub. Util. Serv. Corp.*, 2005 WL 1038956, at *6 (D.N.J. May 3, 2005) (finding documents relating "to legal strategy regarding a settlement offer" "protected by the attorney-client privilege and the work-product doctrine").

Request No. 6 must be quashed because it broadly seeks "All Documents, Communications, or Agreements" that concern "the authority to settle or otherwise resolve" the MDL litigation. Request No. 6, by its plain terms, would sweep in exactly those privileged documents, i.e. "All Documents, Communications or Agreements concerning the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein." ECF No. 32201 at 10. Neither Beasley Allen's clients nor Beasley Allen itself waived privilege.

Similarly, the motion should be denied because Request No. 6 seeks documents protected by the work product doctrine, including documents and agreements exchanged with clients concerning settlement. The work product doctrine "is 'distinct and broader than the attorney-client privilege.'" *Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 186 (D.N.J. 2012) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). *See Times of Trenton Pub. Corp.*, 2005 WL 1038956, at *6 (finding that work product doctrine applied to communications concerning settlement offers between client and attorney). Request No. 6 seeks all documents, communications, and agreements exchanged between Beasley Allen and its clients concerning settlement, *i.e.*, Beasley Allen's core protected settlement-

16

related mental processes. *See O'Boyle v. Borough of Longport*, 218 N.J. 168, 189 (2014) (recognizing that the burden is on party seeking to invade "privacy of an attorney's course of preparation"); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) ("Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances."). The only documents (if they existed) that could be produced in response to Request No. 6 are privileged communications that involve Beasley Allen providing legal advice to its clients.

The Special Master's prior decision was correct and is dispositive here. There are no changed circumstances in regard to privileged communications or protected work product. J&J's motion in relation to Request No. 6 must be denied.

## III.    J&J's Claim That Beasley Allen Opposed Its Three Failed Bankruptcies for Self-Serving Reasons Is Unfounded

J&J's bald and baseless assertions that Beasley Allen's opposition to J&J's bankruptcy plans arise from purported self-interest (including common benefit fees[23]) were addressed by the Special Master in his July 9th order:

The SM holds that the mere fact that Beasley Allen rejects defendants'

---

[23]    J&J attaches Exhibit F to its motion suggesting that it was an invitation to negotiate common benefit fees. The letter does not reference common benefit fees but clearly requests that the parties meet to engage in reasonable and rational settlement discussions. Thus far, J&J has been unwilling. Further, J&J describes Exhibit H to its motion as a letter "Beasley Allen sent" to Defendants regarding common benefit fees. As the Special Master will note, the letter was sent on behalf of the Plaintiffs' Executive Committee, not Beasley Allen alone, and demands J&J's compliance with the Court's CMO 7(A). J&J continues to violate the Court's order. The Plaintiffs' Executive Committee will raise the issue with the Court at the appropriate time.

settlement offer does not establish good cause to authorize defendants' subpoenas.  To hold otherwise would open the floodgates to litigation financing discovery. It is not unusual or unexpected in high stakes litigation for Defendants' settlement offers to be rejected.

> ***Defendants would have a better argument if they could show Beasley Allen's rejection was irrational or arbitrary and capricious. However, this is not the case.*** To be clear, the SM takes no position on the merits of defendants' settlement offers or the liability issues in the case. This is not the SM's role. . . .The SM therefore disagrees with defendants' argument that "Beasley Allen's conduct suggests that other undisclosed financial interests are actually driving its decisions relating to the resolution of the talc litigation." Opp. Brief at 20. ***This being the case, the SM finds that no good cause exists to believe that Beasley Allen's settlement position is motivated by an insidious reason such as litigation financing or the prospect of a lucrative common benefit fee.*** To repeat, the fact that a firm rejects a settlement offer, even if agreed to by other firms, does not establish good cause to obtain litigation financing discovery.

Special Master Order No. 25, at pp.11-12 (emphasis added).

In addition, J&J's groundless accusations are further put to rest given that Beasley Allen's (as a member of the Coalition) objections largely form the basis of Judge Lopez's dismissal of the RRT bankruptcy. Claimants had no idea what compensation they would receive, when the compensation would be received, how much that compensation would be reduced by liens and for that illusory benefit, claimants would be forced to release non-debtors against whom potential tort liability exists. That these positions were vindicated belies any notion that Beasley Allen was motivated by anything other than serving its clients and the other victims

of J&J's talc products.[24]

## **CONCLUSION**

J&J's persistent, baseless narrative—repeated for 18 months—falsely asserts that Beasley Allen opposed its bad-faith bankruptcies for improper reasons, despite a total lack of supporting evidence. This motion represents J&J's latest attempt to weaponize the civil courts to harass Beasley Allen and its talc-asbestos victim clients. No new facts or changed circumstances warrant disturbing the Special Master's Order No. 25.

This motion must be denied outright, as it seeks: (1) irrelevant, non-existent litigation funding; and (2) attorney-client privileged communications and settlement-related documents—both of which are improper and unjustifiable.

---

[24]    Mr. Birchfield has testified repeatedly that Beasley Allen's goal is to obtain reasonable compensation for its clients, irrespective of any common benefit fee award down the road. At the May 3, 2024, disqualification hearing, Mr. Birchfield testified that:

> The focus from [Beasley Allen's] perspective was . . . what would give our clients reasonable compensation, period. If we put together a structure, if we . . . put together a structure and a settlement fund that would provide our clients with reasonable compensation, the common benefit will take care of itself. Other issues will take care of itself. That was the goal. That was the driver, . . . .

*See* Tr. of May 3, 2024, at 75:22-25 to 76:1-7, attached as **Exhibit 9**. Mr. Birchfield further testified that: "The reason -- the reason that we are opposing bankruptcy is because of the values that are being offered in bankruptcy." *Id.* at 122:1-13.

J&J's relentless, abusive litigation tactics, designed to obstruct the efficient prosecution of cases in the MDL, should not be allowed to continue.

Respectfully submitted,

**POLLOCK LAW, LLC.**

*Attorney for Andy Birchfield and Beasley Allen*

*/s/ Jeffrey M. Pollock*
Jeffrey M. Pollock
Certified by the Supreme Court of
New Jersey as a Civil Trial Lawyer

Dated: June 6, 2025

20

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey M. Pollock, Esq., hereby certify that I caused a true and correct copy of the foregoing Brief in Opposition to J&J's Motion for Litigation Finance Discovery and to Compel Compliance with Local Rule 7.1.1 and accompanying papers to be served upon all Counsel of Record via the Court's CM/ECF system.

*/s/ Jeffrey M. Pollock*
Jeffrey M. Pollock, Esq.
*Attorney for Andy Birchfield*
*and Beasley Allen*

Dated: June 6, 2025