# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No.   3:16-md-02738-MAS-RLS |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR LITIGATION FINANCE DISCOVERY AND TO COMPEL COMPLIANCE WITH LOCAL RULE 7.1.1**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................. **Error! Bookmark not defined.**

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................4

    I.    MDL Plaintiffs Represented By Beasley Allen Received Litigation Funding. ...........................................................................4

    II.    Beasley Allen's Acknowledgment That Funding at Issue Affects Settlement Decisions Demonstrates Why Discovery Is Appropriate. ...................................................................................9

    III.    Beasley Allen's Conduct During Bankruptcy Further Demonstrates Why Discovery Is Appropriate. ..................................10

    IV.    Beasley Allen's Assertions of Privilege Cannot Shield Relevant Discovery into Third-Party Funding. ....................................15

CONCLUSION ..............................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fernandez v. HR Parking Inc.*,
   577 F. Supp. 3d 254. (S.D.N.Y. 2021) ...............................................................15

*MSP Recovery Claims Series, LLC*,
   2024 WL 4100379 (D.N.J. Sept. 6, 2024)........................................................7, 8

*In re Taberna Preferred Funding IV, Ltd.*,
   594 B.R. 576 (Bankr. S.D.N.Y. 2018)..................................................................6

**Rules**

Local Rule 7.1.1(b) ..................................................................................3, 7, 9

Rule 7.1.1 ...................................................................................................*passim*

**Other Authorities**

*Litigation Finance*, OmniBridgeway,
   https://omnibridgeway.com/litigation-finance (last visited June 16,
   2025) .....................................................................................................................7

*Red River* ...............................................................................................13, 15

## INTRODUCTION

It is undisputed that the Smith Law Firm represents thousands of plaintiffs in this MDL and has received litigation funding to pursue those plaintiffs' claims. After engaging in word games to obfuscate this truth in the last round of briefing on the subject of litigation funding discovery, PSC member Beasley Allen and its co-counsel, the Smith Law Firm, have returned to the same tactics—carefully chosen turns of phrases and parsing of basic words to avoid disclosure. If Rule 7.1.1 is to have any meaning at all, the Court should no longer countenance this behavior.

Local Rule 7.1.1 requires a disclosure statement if a party is receiving litigation funding "on a non-recourse basis in exchange for (1) a contingent financial interest based upon the results of the litigation." In an effort to avoid falling within the ambit of this Rule, the Smith Law Firm now contends that its funding—though non-recourse—is not contingent on the results of this particular litigation (i.e., talc). But that does not make sense. The Smith Law Firm could not have provided any collateral other than an interest in the proceeds from any claims that the funding supports in order to give its lender a remedy in the event of a default on the loan.

What appears to be happening here is that the loan in question is contingent on the results of multiple litigations that the Smith Law Firm is pursuing, of which talc is one. But that sort of arrangement still falls within the scope and purview of

1

Local Rule 7.1.1. Under the circumstances described, the loan is still "contingent" and still "based," at least in part, on the results of the talc litigation.

Even more importantly, the J&J Defendants should not be required to simply take the Smith Law Firm or Beasley Allen at their word on this point, particularly given the machinations and word games they perpetuated in the first round of briefing on litigation funding. The J&J Defendants should be permitted to get to the bottom of whatever subtle linguistic phraseology the Smith Law Firm or Beasley Allen are relying on to avoid their disclosure obligations under Rule 7.1.1, and to avoid any chance that J&J will be granted the simple discovery it seeks.[1]

At a minimum, documents that lay out the scope and obligations associated with the loan(s) that the Smith Law Firm admits it has received should be provided *in camera* so that this Court can assess whether Plaintiffs are complying with Rule 7.1.1. Indeed, as just one example of why such an examination is warranted, take the declarations submitted in connection with this new round of briefing. Even though Beasley Allen and the Smith Law Firm represent the ***exact same MDL plaintiffs***, Ms. O'Dell declared that "Beasley Allen clients have received no funds from the Smith Law Firm's litigation funding," while Mr. Smith declared that his firm "has

---

[1] It is quite possible that given the vocal objections of other, unrelated counsel (such as Mr. Golomb of Anapol Weiss) during the first round of argument on this matter, there are other firms currently watching this dispute because they are relying on similar justifications to avoid disclosure under Rule 7.1.1.

2

loans it uses to finance its cases including Talc." ECF 36528-1 at ¶ 6; ECF 36608-1 at ¶ 7. It is difficult to comprehend how both can be true.

To be clear, more than Local Rule 7.1.1's disclosure requirements are at issue in this continued dispute. The Rule also permits discovery if the interests of the plaintiffs are not being protected or promoted. Local Rule 7.1.1(b). Significantly, Beasley Allen *itself* contended that the Smith Law Firm's "independent judgment about the Talcum Powder Litigation and the potential settlement of that litigation was objectively subject to question." Mot. Ex. H at ¶ 25 (ECF No. 34394-11). Having made such a statement, it is bewildering why Beasley Allen now runs from the very discovery that would help set the issue to rest. Stated simply, whether litigation funding's improper influence is driving settlement up or down, it appears that Beasley Allen and the J&J Defendants agree that it is affecting the settlement decision-making of a law firm representing plaintiffs in this MDL. That alone warrants the requested discovery.

Finally, Beasley Allen mischaracterizes the bankruptcy record to try to sanitize its conduct. But the following undisputed facts are newly discovered and therefore were not before the Court in the first round of litigation funding discovery briefing:

> (1) Andy Birchfield of Beasley Allen certified under oath that Beasley Allen obtained its clients' informed consent to vote against the bankruptcy;

3

(2) The firm did not, in fact, obtain affirmative consent for thousands of clients;

(3) The firm nonetheless voted to reject compensation, including on behalf of gynecological cancer claimants; and

(4) The firm believes that those gynecological cancer claimants cannot be compensated in the tort system.

Thus, Beasley Allen's own conduct raises significant and deeply concerning questions as to whether the interests of thousands of claimants in this MDL are being protected and promoted.

Accordingly, this Court should permit Defendants' requested discovery into litigation financing and, at a bare minimum, require all plaintiffs represented by Beasley Allen to submit a statement of disclosure as required by Local Rule 7.1.1.

## ARGUMENT

### I. MDL Plaintiffs Represented By Beasley Allen Received Litigation Funding.

There can be no question now that the MDL plaintiffs—jointly represented by Beasley Allen and the Smith Law Firm—received litigation funding. Beasley Allen and Smith all but ignore that Local Rule 7.1.1 makes clear that all "parties" must disclose their litigation funding—not all "counsel."

It does not matter if the party's attorney that receives the litigation funding formally appears on the docket or not. Nor does it matter which law firm thinks it put in the bulk of the work. Beasley Allen and the Smith Law Firm's agreement makes clear they "*jointly* represent" all MDL plaintiffs. Mot. Ex. A at 3 (ECF No.

4

34394-4). So any funding the Smith Law Firm has obtained necessarily is funding that parties to this MDL have obtained.

Aside from violating the plain text of Local Rule 7.1.1, permitting the arrangement here to avoid disclosure opens a massive loophole. It would allow a party to evade disclosure simply by structuring its funding relationships through attorneys who remain off the docket. That would defeat the very purpose of Rule 7.1.1, which is to bring third-party funding arrangements to light and prevent hidden conflicts of interest from distorting both litigation and settlement efforts.

Likely in recognition of this obvious point, the Smith Law Firm now turns to a new argument: that the firm's funding is outside the scope of Local Rule 7.1.1, which requires disclosure of "funding for some or all of the attorneys' fees and expenses for the litigation on a non-recourse basis in exchange for (1) a contingent financial interest based upon the results of the litigation or (2) a non-monetary result that is not in the nature of a personal or bank loan, or insurance." The Smith Law Firm concedes that the firm's talc litigation funding is non-recourse. Smith Opp. 3 (ECF 36528). But it asserts that the funding is "not 'in exchange for (1) a contingent financial interest based upon the results' of this litigation.'" *Id.*

But here is the problem with such an assertion: in the last round of briefing, both Beasley Allen and the Smith Law Firm leaned heavily into the idea that Smith was not "counsel of record" in the MDL in order to obscure the fact that his firm *did*

5

in fact represent thousands of MDL plaintiffs. That fact has now been laid bare, and the linguistics employed to obscure it are obvious post facto. Unfortunately, that there was no "proof" the Smith Law Firm represented any claimants in this MDL was one of the "facts" this Court based its original decision on—and neither Beasley Allen nor the Smith Law Firm stepped forward to correct the misunderstanding, or to volunteer that all the Beasley Allen claimants were also Smith claimants.

In light of this history, neither this Court nor the J&J Defendants should be required to simply accept the latest—and frankly difficult to harmonize and accept—assertions being put forward in this briefing to avoid disclosure and continue to insist that the funding, which admittedly exists is somehow outside the ambit of the rule.

On the one hand, the Smith Law Firm asserts that its loan for talc litigation is "non-recourse," meaning the lender's only remedy in the event of the default is the collateral that secures the loan. *See In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 586 (Bankr. S.D.N.Y. 2018). But at the same time, it asserts that the loan somehow is not based upon the results of the litigation. This structure makes no sense. What collateral could the Smith Law Firm possibly have offered the lender other than an interest in the litigation claims themselves to justify the lender having no other remedy?

Perhaps the Smith Law Firm is attempting to rely on a subtle distinction that the loan is for a portfolio of litigations (i.e., talc plus others), and so it is contingent

on the firm receiving proceeds from the results of *any* of those litigations.[2] But that still makes it "contingent" (repayment is triggered when certain circumstances are met) and "based upon" the results of the talc litigation (one of those circumstances is the result of the talc litigation). Rule 7.1.1 does not require the loan to be *exclusively* based on the results of the litigation before this Court.

Additionally, the Smith Law Firm's declaration completely omits the second basis for disclosing litigation funding: if the loan is contingent on "a non-monetary result that is not in the nature of a personal or bank loan, or insurance." While the J&J Defendants do not know how the loan would be set up this way, the J&J Defendants should not be required to pierce through whatever obfuscation may be occurring— particularly given the declaration submitted in the previous round of briefing. Rather, this Court should order discovery—even if *in camera*—to determine if Plaintiffs are complying with Local Rule 7.1.1.

That is the central holding of *MSP Recovery Claims Series, LLC*—that a plaintiff's bare denial of third-party funding does not preclude discovery under Rule 7.1.1(b). 2024 WL 4100379, at *5–6 (D.N.J. Sept. 6, 2024). Beasley Allen attempts

---

[2] *Litigation Finance*, OmniBridgeway, https://omnibridgeway.com/litigation-finance (last visited June 16, 2025) ("**Portfolio financing.** Financing to support multiple cases or arbitrations of a law firm or a company. The returns in this scenario will come from the recovery the firm or company collects from any one or more of the portfolio cases.").

7

to sidestep the case by arguing it involved "actual litigation funding entities [who] were members of the plaintiff group." Beasley Allen Opp. at 16 n.19 (ECF No. 36608). But that fact was immaterial to the court's reasoning, which turned on whether there was evidence that funders were exerting influence over litigation decisions. *MSP Recovery Claims Series, LLC*, 2024 WL 4100379, at *6.

The conflicting declarations are all the more reason discovery is warranted here. Ms. O'Dell's declaration states, "Beasley Allen clients have received no funds from the Smith Law Firm's litigation funding." ECF 36608-1 at ¶ 7. The Smith Law Firm's declaration states that it "has loans it uses to finance its cases including Talc." ECF 36528-1 at ¶ 6. But the Smith Law Firm and Beasley Allen jointly represent the *exact same clients* in the MDL—thousands of them.

Indeed, the Smith Law Firm—representing MDL plaintiffs—"takes no position" on the J&J Defendants' argument that this Court should "require all plaintiffs represented by Beasley Allen to submit a statement of disclosure as required by Local Rule 7.1.1." Smith Opp. 4 n.1. (ECF 36528).

Discovery is therefore warranted to assess whether Plaintiffs are complying with the requirements of Local Rule 7.1.1.

8

## II. Beasley Allen's Acknowledgment That Funding at Issue Affects Settlement Decisions Demonstrates Why Discovery Is Appropriate.

Beasley Allen's admission that their litigation funding, by and through the Smith Law Firm's funding, affects settlement decisions constitutes another independent basis for discovery.

Local Rule 7.1.1(b) allows for "additional discovery of the terms of any such [funding] agreement upon a showing of good cause that": (1) the funder "has authority to make material litigation decisions or settlement decisions;" (2) the "interests of the parties or the class (if applicable) are not being promoted or protected;" (3) "conflicts of interest exist;" or (4) the "disclosure is necessary to any issue in the case."

Beasley Allen itself has asserted that the Smith Law Firm's funding is affecting settlement decisions: "The financial problems of Defendants Smith and Smith law have now grown to the point that they are actively undercutting Beasley Allen in settlement negotiations with Johnson & Johnson in an effort to get a settlement that would alleviate their financial problems, but which would not in Beasley Allen's opinion be in the best interest of the joint venture clients." Mot. Ex. H at ¶ 25 (ECF No. 34394-11).

Beasley Allen goes on to state that "Defendants Smith and Smith Law had fallen into such significant debt in connection with the Talcum Powder Litigation

9

that their independent judgment about the Talcum Powder Litigation and the potential settlement of that litigation was objectively subject to question." *Id.* at ¶ 43.

This directly implicates the core purpose of Rule 7.1.1: to bring transparency to third-party funding arrangements that may compromise counsel's independent judgment or create concealed conflicts of interest.

Neither Beasley Allen nor the Smith Law Firm addresses these statements from Beasley Allen's complaint. While the parties may not see eye to eye on *the manner* in which the Smith Law Firm's litigation funding is affecting settlement decisions, the J&J Defendants and Beasley Allen are in complete agreement that the funding is, in fact, improperly influencing settlement decisions. Since the MDL plaintiffs are jointly represented by Beasley Allen and the Smith Law Firm, the Smith Law Firm's decision-making regarding settlement affects settlement for the plaintiffs in this MDL. That is true regardless of whether or not Beasley Allen has a direct obligation to repay the Smith Law Firm's loans.

Beasley Allen's own statements—completely unaddressed in the opposition briefs—acknowledge that the interests of the plaintiffs are not being promoted or protected. That alone warrants discovery.

### III. Beasley Allen's Conduct During Bankruptcy Further Demonstrates Why Discovery Is Appropriate.

Beasley Allen's attempt to sanitize its conduct in the Red River bankruptcy relies on a mischaracterization of the Bankruptcy Court's findings and the

10

bankruptcy plan's treatment of the gynecological claimants. More importantly, it readily presents a third and compelling reason for the discovery sought.

***Bankruptcy Court's Findings.*** J&J's motion papers raise significant concerns related to the Beasley Allen firm's actions in the most recent Red River Talc bankruptcy, in particular certain false representations made by the firm in connection with voting and their general treatment of certain types of clients. In response to these allegations, Beasley Allen asserts that the bankruptcy court found that Beasley Allen "did not" undertake these actions in "bad faith." Opp at 9 (quoting Opp. Ex. 2 at 3).³ Once again, Beasley Allen is playing fast and loose with the facts. The J&J Defendants welcome this Court to look at what the bankruptcy court actually said, not the cherry-picked and out-of-context statements presented by Beasley Allen.

For background, there were two ways for plaintiff firms to vote in the bankruptcy. Option A, for clients who affirmatively indicated their vote, required the attorney to certify that he or she had "collected and recorded the vote" of each client and that each client "has indicated his or her informed consent." *Id.* at 24. Option B, by contrast, was a method for attorneys to use their best professional judgment and, consistent with their ethical obligations, vote on behalf of those

---

³ Beasley Allen also refers in a footnote to Judge Hale's opinion in his expert report, but the bankruptcy court precluded Judge Hale's testimony. *See* Beasley Allen Opp. 13 n.20 (ECF 36608).

clients who did not personally communicate in order to indicate their vote. For the Option B approach, the attorney needed to certify: "I have the authority under a power of attorney to vote to accept or reject the Plan on behalf of such Client." *Id.* at 24. Beasley Allen voted all clients by Option A.

While it is true that the bankruptcy court stated, "they did not do it in bad faith," an actual review of the larger record shows that it was not referring to Beasley Allen's conduct. Rather, it referred to the subset of plaintiff law firms that both used Option B *and* voted in *support of the plan*. Beasley Allen did neither. In the very next sentence, the bankruptcy court stated: "One firm was put in a bad spot due to solicitation issues that were not its fault. Others improperly relied on general language in engagement letters in hopes of getting this plan over the 75% threshold." *Id.* at 3. Neither justification applies to Beasley Allen. First, because Beasley Allen voted "no" under Option A, it did not rely on any language in its engagement letters nor hope to get the plan over the 75% threshold.[4] As for the reference to solicitation issues, as described in more detail later in the opinion, that sentence actually referred to the Watts firm, as the solicitation agent (Epiq) mistakenly did not send ballots to the firm's clients. *Id.* at 25.

---

[4] In fact, the opinion goes on to expressly discuss the conduct of the Andrews and Polaski firms, who relied on language in their engagement letters (*id.* at 26–27), and voted via Option B.

12

Moreover, when providing directive as to the issues he wanted discussed in closings, Judge Lopez repeatedly said that he "didn't see any bad faith" from the plaintiffs' attorneys "Watts, Onder, Andrews, [and] Pulaski" but specifically *carved out* Beasley Allen from that group. Sur-Reply Ex. 1, *Red River* Tr. 3746:14-16. And when Judge Lopez later stated in his written opinion that "the Court does not find that the plaintiffs' law firms acted in bad faith," it was part of the section of the opinion for "Analysis of Option B Voting" that, again, did not and could not include Beasley Allen, who voted via Option A. *Id.*

Most importantly, the bankruptcy court *separately* analyzed issues with Beasley Allen's Option A voting. Birchfield certified approximately 11,000 votes under Option A, even though he only received approximately 3,000 affirmative responses from his clients. *Id.* at 33. The certification was false. As the bankruptcy court stated:

> Option A required a certification that "[e]ach such Client has *indicated* his or her informed consent with respect to such vote." "Indicated" used here is a transitive verb, which means that a person receives the action of the verb. Indicated means to "point out" or "state or express briefly." Thus, authority under Option A cannot be obtained by silence. All the votes without affirmative client consent were not valid under Option A and the Bankruptcy Code.

*Id.* at 34 (footnotes omitted)

The bankruptcy court then went further to discuss Beasley Allen's handling of the gynecological cancer claims:

13

>Birchfield also certified that over 5,000 voting clients had gynecological cancer on his Master Ballot Spreadsheet. And thousands of these clients were voted to reject the Initial Plan without any direction from those clients. At the same time, Birchfield believes gynecological cancer claims are non-compensable in the tort system based on a lack of scientific support. Birchfield voted on behalf of clients, without their consent, to reject payment under the Initial Plan even though he believes those clients will not and cannot be paid in the tort system.

*Id.*

***Gynecological Cancer Claimants.*** Finally, Beasley Allen offers a post-hoc justification for voting against the bankruptcy resolution on behalf of gynecological cancer claimants whom they admit cannot recover in the tort system; namely that the bankruptcy plan required gynecological cancer claimants to give up claims if they developed ovarian cancer in the future.

As an initial matter, the firm ignores that, as discussed above, the bankruptcy court specifically discussed how Birchfield: (1) certified he obtained these claimants' informed consent; (2) did not in fact obtain informed consent for thousands of clients; (3) voted to reject compensation; and (4) believes they cannot be paid in the tort system.

Moreover, Beasley Allen omits that—as explained during the *Red River* closing arguments—any ambiguity in the bankruptcy plan was to be clarified in a way that "all the other parties and everybody agreed" made clear that a gynecological cancer claimant did not need to forfeit their rights to proceeds from the trust should

14

they develop ovarian cancer in the future. *See* Reply Ex. 2, *Red River* Tr. 4057:19-4058:12; Reply Ex. 3, Red River Talc Closing Slide.

### IV. Beasley Allen's Assertions of Privilege Cannot Shield Relevant Discovery into Third-Party Funding.

Finally, Beasley Allen makes a last-ditch effort to shield discovery by claiming that Request No. 6 seeks privileged and protected materials because it seeks "[a]ll Documents, Communications, or Agreements" that concern the "authority to settle or otherwise resolve" the talc litigation. ECF No. 32201 at 14.

But any documents regarding the *funders'* authority to settle are plainly not privileged. Moreover, "[w]hether an attorney was given actual authority to settle a case is a discoverable fact not subject to privilege since the giving of settlement authority is not for the purpose of rendering legal advice and "is never intended to be confidential." *Fernandez v. HR Parking Inc.*, 577 F. Supp. 3d 254, 258 n.2. (S.D.N.Y. 2021). At the very least, the remedy for privilege concerns is a privilege log identifying any withheld materials so that the Court and the J&J Defendants can assess whether any claim of privilege is valid.

### CONCLUSION

For these reasons, this Court should permit Defendants' requested discovery into litigation financing, and at a bare minimum, require all plaintiffs represented by Beasley Allen to submit a statement of disclosure as required by Local Rule 7.1.1.

15

Dated: June 16, 2025                                   Respectfully submitted,

                                                    */s/ Kristen R. Fournier*
Kristen R. Fournier
Matthew L. Bush
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
kristen.fournier@kirkland.com
matthew.bush@kirkland.com


        */s/ Jessica L. Brennan*
Jessica L. Brennan
**BARNES & THORNBURG LLP**
67 E. Park Place, Suite 1000
Morristown, NJ 07960
Tel.: 973-775-6120
jessica.brennan@btlaw.com

*Attorneys for Defendants Johnson & Johnson and LLT Management, LLC (predecessor to Red River Talc LLC)*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I electronically filed the foregoing document with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ *Jessica L. Brennan*
Jessica L. Brennan
