UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (MAS) (RLS) |

**SPECIAL MASTER ORDER NO. 28**
**(DECIDING THE PSC'S MOTION FOR A CENSUS REGISTRY)**

This matter is before the Special Master ("SM") on "Plaintiffs' Steering Committee's [("PSC")] Motion for the Entry of an Order to Establish a Census and Require the Provision of Data by Persons with Unfiled Claims/Cases to Confirm the Plaintiff Suffers from Epithelial/Ovarian Cancer, Fallopian Tube Cancer or Primary Peritoneal Cancer." (ECF 32931). Defendants opposed the motion (ECF 32985) and the PSC replied (ECF 33033). After these papers were filed this MDL was stayed because of defendants' third bankruptcy filing. After the stay was lifted the PSC served a supplemental May 7, 2025 letter brief in support of their motion. Defendants responded on June 6, 2025 to which the PSC responded on June 16, 2025. Oral argument was recently held. In short, the PSC requests the Court to Order a "census registry" requiring that all firms in the case "provide detailed information for all clients they represent, whether filed or unfiled." PSC's June 6 Letter Brief ("LB") at 1. The PSC clarified precisely what it is asking for:

> What the PSC requests is an identification of each unfiled claimant and for each such person to produce a pathology report or another oncology record(s), so as to be able to assess which, if any, suffer from ovarian cancer, the injury that the PSC is litigating, as compared to some other injury, or other gynecological cancer.

PSC Motion Brief ("Brief") at 14. After reviewing the parties' submittals in detail and hearing oral argument, and for the reasons to be discussed, the PSC's motion is denied.

6907854.2

## BACKGROUND

The parties are familiar with the relevant background of this dispute so only a brief summary will be provided. The PSC's motion was filed after defendants' first two bankruptcies were dismissed and at a time when the specter of a third bankruptcy filing was on the horizon. At the time the PSC was concerned that claimants who suffered from non-ovarian cancers would be deemed creditors in the bankruptcy. The PSC argued that there were tens of thousands of unfiled claims that could be outside the scope of this MDL and their inclusion as claimants in the bankruptcy would skew the bankruptcy settlement vote in their favor. The PSC also argued defendants were attempting to "stuff [the] bankruptcy ballot box." Reply Brief at 6. Now that the bankruptcy has been dismissed this argument is moot.

Nonetheless, the PSC still requests a census registry of all filed and unfiled cases. The PSC argues the "census information will enable [the PSC] to more effectively represent the interests of plaintiffs with cases filed and to date, unfiled in the MDL[.]" May 7 LB at 2. The PSC also argues the requested "data will enable the PSC to quantify cases within and outside the stated scope of the MDL." Id. In addition, the PSC argues its "motivation is to obtain information on the unfiled claims that could shape a global resolution of this MDL." Reply Brief at 9; see also Brief at 4, 12; June 16 LB at 2 ("The census process will facilitate informed case management and support meaningful settlement discussions."). In its most recent letter brief the PSC argues that a census will ensure that all parties "have a more precise understanding of the litigation's scope." June 16 LB at 2. In addition, the PSC argues it needs access to information about unfiled cases that is available to defendants but not known to it.

In opposition defendants argue the PSC has no standing as to unfiled cases and that the information the PSC requests as to filed cases is already available from the plaintiffs' Court-Ordered Plaintiff Profile Form ("PPF"). Defendants also argue a census would be inefficient and

burdensome and distract from the ongoing Daubert proceedings and scheduled bellwether trials. Reply Brief at 6. In addition, defendants argue, "[t]he PSC's motion fails because it would disrupt the fair and efficient administration of the MDL." Id. at 15. At present the SM does not know the exact number of filed cases in this MDL but estimates are as high as 60,000, with scores of new cases filed every day.

**DISCUSSION**

As to the request for a census of all filed claims, the request is denied. This result is appropriate because the information the PSC requests is already available or will be shortly available. The essential information the PSC requests in its proposed census registry is the type of cancer the plaintiffs allegedly incurred. Importantly, this information is required to be produced pursuant to Court Orders and is already readily accessible. On September 1, 2023 (ECF 27281), the Court entered an Order requiring all present and future plaintiffs to complete a "Plaintiff Profile Form." The Order requires plaintiffs to produce to defense counsel all medical records or reports from providers who "treated plaintiffs for ovarian cancer or any gynecologic disease, condition or symptom alleged in the Complaint and/or PPF." Id. The form itself requires each plaintiff to identify her diagnosed cancer and to provide detailed information regarding her medical history. See PPF at Questions 3-14. The responsive information was provided to MDL Centrality, "an online data management tool designed to manage discovery in mass tort litigation." On May 1, 2025 (ECF 33836), an Order was entered requiring that PPF forms for all cases pending as of March 31, 2025, had to be provided by July 8, 2025. For cases filed in or transferred into the MDL after April 1, 2025, completed PPF forms are required to be served within 90 days from the date the complaint is filed.

Thus, since the information the PSC is requesting regarding filed cases is already available or will be available shortly after a new complaint is filed, there is no need to require a

census registry for filed cases. The PSC can obtain the information it requests about filed cases from MDL Centrality. Therefore, the PSC's request as to filed cases is denied.

As to the PSC's request for a census registry for unfiled cases, the request is also denied. Denial is appropriate because the PSC has not demonstrated there is a current need for the requested information. Also, the proposed registry will create unnecessary work and inevitably lead to squabbles and Court involvement in tangential disputes. The PSC argues the requested data "will enable the PSC to quantify cases within and outside the stated scope of the MDL." May 7 LB at 2. However, the PSC has not shown how this will foster the efficient management and progress of this MDL.[1] The PSC also argues the requested data will enable it "to more effectively represent the interests of plaintiffs with cases filed and to date, unfiled in the MDL[.]" Id. Again, however, the PSC does not adequately explain why this will occur. As opposed to leading to the more efficient management of this MDL, the Special Master believes that if the requested census registry is enacted the opposite result will occur. The parties' focus and resources should be dedicated to the ongoing Daubert proceedings and upcoming bellwether trials, rather than unfiled cases. The SM disagrees with the PSC's argument that the requested census "is vital to the comprehensive administration of this litigation." June 16 LB at 2. To the contrary, this MDL is already efficiently managed as evidenced by the fact that the outstanding Daubert motions are on track to be decided and bellwether trials will soon take place. Distracting the parties from this effort will hamper rather than foster the efficient management of this MDL.

The Special Master ("SM") is not convinced, as the PSC argues, that there is such an imbalance regarding information about unfiled cases that a census registry is needed "to level the

---

[1] The SM takes no position on the parties' dispute as to whether non-ovarian cancer cases are within the scope of this MDL.

playing field." Defendants deny that an imbalance exists. Further, there is nothing preventing the PSC from informally contacting its colleagues to collect information about unfiled cases.

The PSC's motion is also denied because it will inevitably lead to disputes about the completeness and timeliness of registry responses, further taxing the court's strained resources. The PSC proposes no deficiency process requiring Court oversight and expects Brown Greer and the PSC to voluntarily obtain the parties' cooperation. The SM is dubious about the PSC's optimism given the myriad of problems and disputes that have arisen regarding Court-Ordered PPF Forms.

The SM also questions the PSC's argument that the requested registry is helpful because it "could shape a possible global resolution of this MDL." Reply Brief at 9; see also Brief at 4 (the requested registry "will provide a greater understanding of the size of the MDL and could be helpful for negotiating a global resolution of the litigation); id. at 12 (the requested information is "necessary" to conduct productive settlement negotiations.). Although the parties presently disagree about the appropriate amount and administration of a settlement, defendants have made it known they also desire a fair resolution of this litigation. Nevertheless, from what defense counsel has relayed it does not appear that productive settlement discussions will take place until after the Daubert motions are decided. If the requested information was as important or essential to reaching a settlement as the PSC claims, the SM does not expect defendants would be presently opposing plaintiffs' motion. To be sure, however, the SM does not foreclose the possibility that in the future a census registry of unfiled cases could be helpful to resolving this litigation. This remains to be seen. If genuinely needed in the future the parties and/or court-appointed mediator are free to make the request. At the moment, however, a census registry is not needed or helpful to the management of the litigation or the potential resolution of the

parties' dispute. The Special Master does not find that at the present time a census registry will secure the just, speedy and inexpensive determination of this MDL. Fed.R.Civ.P. 1.

**CONCLUSION**

For all the foregoing reasons the PSC's Motion for a Census Registry is DENIED.

**ORDER**

AND NOW, this 1st day of July, 2025, it is hereby ORDERED that the PSC's Motion for a Census Registry is DENIED.[2]

By: *s/Joel Schneider*
Hon. Joel Schneider (Ret.)
Special Master

Dated: July 1, 2025

---

[2] For the reasons discussed at oral argument the SM will not address at this time defendants' request to accelerate the PPF process and/or to institute an order-to-show-cause process to discuss non-meritorious cases. However, the Special Master will soon reach out to counsel about the issue.