**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2738<br><br>Civil Action No. 16-2738 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Johnson & Johnson ("J&J") and LLT Management, LLC's (collectively, "Defendants") Objection to the Special Master's Order No. 17 partially granting the Plaintiff Steering Committee ("PSC") leave to file a Second Amended Master Complaint (the "Objection"). (ECF No. 28922.) The PSC opposed (ECF No. 28992), and Defendants replied (ECF No. 29033). After careful consideration of the parties' submissions, the Court decides Defendants' Objection without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' Objection is denied, and the Special Master's Order No. 17 is affirmed.

**I.      BACKGROUND**[1]

   **A.      Defendants' Relevant Corporate History**

This dispute arises out of the PSC's request to add Johnson & Johnson (NA), Inc. ("Holdco"), Kenvue, Inc. ("Kenvue"), and Janssen Pharmaceuticals, Inc. ("Janssen") as defendants in this MDL ("Motion to Amend"). (ECF No. 26636.) Because this dispute implicates

---

[1] As the parties are familiar with the facts underlying this Multidistrict Litigation ("MDL"), the Court recites only those facts pertinent to the instant Objection.

the structure, roles, and responsibilities of Defendants' affiliates, the Court begins with a summary of Defendants' relevant corporate history.[2]

In 1894, J&J launched a baby care line of products and began selling Johnson's Baby Powder.[3] (Proposed Second Amended Master Complaint ("SAMC") ¶¶ 38, 72, ECF No. 26636-2.) After a series of intercompany transactions, Johnson's Baby Powder was transferred to J&J's wholly-owned subsidiary, Johnson & Johnson Consumer Inc. ("Old JJCI"). (*Id.* ¶ 38.) From 1979 to 2021, Johnson's Baby Powder was exclusively sold by Old JJCI and its predecessors. (*Id.* ¶ 41.)

During that time, the use of talc in J&J's products triggered rising litigation against J&J entities, with tens of thousands of plaintiffs alleging personal injury and wrongful death claims. (*Id.* ¶¶ 42-46.) Facing mounting payouts and litigation costs, J&J sought to use bankruptcy as a vehicle to permanently settle all talc-related claims. (*Id.* ¶¶ 19-20, 42-44.) In October 2021, Old JJCI entered into a divisional merger, where it assigned certain assets and essentially all liabilities tied to talc-related claims to LTL Management, LLC ("LTL"), and its remaining assets and liabilities to Johnson & Johnson Consumer, Inc. (since renamed to Holdco).[4] (*Id.* ¶¶ 42-45, 51.) Included among the asset transfer to Holdco were the assets Old JJCI used to manufacture and

---

[2] For purposes of the Motion to Amend, the Court accepts as true all well-pleaded allegations in the Proposed Second Amended Master Long Form Complaint ("Proposed SAMC"). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[3] The claims in this MDL also involve J&J's Shower to Shower product, a different talc-containing product initially produced by J&J in 1967. (Proposed SAMC ¶¶ 77-79.) Because the claims in this MDL mainly concern Johnson's Baby Powder, for convenience, the Court's references herein to that name also include Shower to Shower. *See LTL Mgmt., LLC ("LTL I")*, 64 F.4th 84 n.1 (3d Cir. 2023) (using the term "Johnson's Baby Powder" to refer to both Johnson's Baby Powder and Shower to Shower products).

[4] Prior to being renamed Holdco, the surviving Johnson & Johnson Consumer Inc. entity from Old JJCI's divisional merger was also known as "New JJCI." (Proposed SAMC ¶ 19; Defs.' Moving Br. 4.) Accordingly, at times, the Proposed SAMC uses "New JJCI" and "Holdco" interchangeably. (*See* Proposed SAMC ¶ 489 (defining Holdco as "New JJCI").)

market Johnson's Baby Powder. (*Id.* ¶ 45.) After this restructuring, Old JJCI ceased to exist. (*Id.* ¶ 42.)

Shortly thereafter, LTL filed its first petition for bankruptcy. (*Id.* ¶ 20.) This petition for bankruptcy, however, was dismissed by the Third Circuit on the grounds that the bankruptcy filing was not made in good faith. (*Id.* ¶ 23); *LTL I*, 64 F.4th at 84. LTL subsequently re-filed for bankruptcy, but the Third Circuit again dismissed the petition, finding "want of good faith because [LTL] was not in financial distress." *In re LTL Mgmt. LLC ("LTL II")*, No. 23-2971, 2024 WL 3540467, at *1 (3d Cir. July 25, 2024).[5]

While LTL made its way through bankruptcy proceedings, J&J underwent another restructuring, ultimately spinning off Kenvue from Holdco as its own publicly-traded company. (Proposed SAMC ¶¶ 50-67.) Kenvue currently sells, among other things, a cornstarch-based version of Johnson's Baby Powder in the United States and Canada, and, at the time of the filing of the Motion to Amend, had planned to continue selling a talc-based version of Johnson's Baby Powder in international markets until 2023. (*Id.* ¶¶ 61-63.) During this spin-off process, J&J's consumer health business, including its cornstarch baby powder, passed through several parent entities, including Janssen. (*Id.* ¶¶ 51-52.)

B. **Relevant Procedural History**

On January 5, 2017, the individual consumer-plaintiffs in this MDL ("Plaintiffs") filed a Master Long Form Complaint ("Master Complaint"), alleging that Johnson's Baby Powder caused their ovarian cancer, and naming the following entities as defendants: J&J; Johnson & Johnson

---

[5] Defendants attempted to resolve the talc-related claims a third time through bankruptcy, this time in the Southern District of Texas. *See In re Red River Talc LLC*, No. 24-90505, 2025 WL 1029302, at *36 (Bankr. S.D. Tex. Mar. 31, 2025). This petition, too, was unsuccessful. *Id.* Because the instant dispute does not involve this bankruptcy petition, the Court omits discussion of this petition and related entities.

3

Consumer Inc. n/k/a Johnson & Johnson Consumer Companies, Inc. ("J&J Consumer"); Imerys Talc America, Inc. f/k/a Luzenac America, Inc., f/k/a Rio Tinto Minerals, Inc. ("Imerys Talc"); and Personal Care Products Council ("PCPC"). (ECF No. 82.)

On March 16, 2017, Plaintiffs filed the First Amended Master Complaint ("FAMC") (ECF No. 132), and in December 2020, the PSC sought leave to amend the FAMC (ECF No. 16132).[6] After LTL's first petition for bankruptcy was dismissed, the PSC filed a renewed motion to amend the FAMC, requesting in part to add as defendants the newly created entities of LTL, Holdco, Kenvue, and Janssen. (*See* ECF No. 26636; *see generally* Proposed SAMC.) The PSC alleges that these four entities are indirectly liable as "successors in interest" to Old JJCI. (*See* Nov. 21, 2023 Transcript ("Tr.") of Oral Argument 92:3-9, ECF No. 28761.) The Motion to Amend also seeks to add new facts and claims, including claims for fraudulent concealment, assumption of duty, aiding and abetting, acting in concert, and spoliation.[7] (*See* ECF No. 26636.)

After extensive briefing and lengthy oral argument, the Special Master largely granted the Motion to Amend, permitting the PSC to add LTL, Janssen, Kenvue, and Holdco as defendants, and to add claims of assumption of duty, aiding and abetting, and concert of action, but denying leave to add claims of spoliation. (Special Master Order No. 17, ECF No. 28902.) Defendants thereafter filed the instant Objection, raising only one issue on appeal. (*See generally* Defs.' Moving Br., ECF No. 28922-1.)

---

[6] The FAMC is the foundational pleading in this MDL and sets forth common questions of fact and law to Plaintiffs' claims. (*See generally* FAMC.) Because the FAMC does not name a particular plaintiff, each individual plaintiff is required to file a Short Form Complaint adopting the counts in the FAMC that are relevant to his or her case.

[7] The Proposed SAMC is 230 pages long and contains 1,068 paragraphs. (ECF No. 26636.)

Defendants only appeal the Special Master's decision to permit the addition of Janssen, Holdco, and Kenvue as defendants in the Proposed SAMC. (ECF No. 26636.) Defendants do not contest the addition of LTL, and admit that LTL "is a proper defendant in this litigation." (ECF No. 28070 at 1.) As to Janssen, Holdco, and Kenvue, Defendants contend that no plaintiff can plausibly plead a claim against these three defendants, and thus the Court should deny the PSC leave to make this proposed amendment as futile. (*See generally* Defs.' Moving Br.)

## II. <u>LEGAL STANDARD</u>

### A. Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2),[8] a district court must "freely give leave [to amend] when justice so requires." *Id.* Under this liberal standard, a motion to amend is generally denied only if the moving party has unduly delayed or acted in bad faith or with a dilatory motive, the opposing party will be unfairly prejudiced if leave is granted, the proposed amendment is futile, or if prior amendments have repeatedly failed to cure pleading deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial [can] be grounded in bad faith or dilatory notice, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (emphasis omitted) (quoting *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994) (Becker, J., concurring)).

---

[8] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

### B. Review of the Special Master's Order

In accordance with the Rules and the orders of this Court, the Court reviews "all objections to findings of fact" and "conclusions of law" made by the Special Master de novo. (*See* Order Appointing Special Master 3, ECF No. 704); Fed. R. Civ. P. 53(f). Because Defendants object to the Special Master's conclusions of law in ruling on the Motion to Amend, the Court applies a de novo standard of review. *See Dickerson v. Kane*, No. 92-2528, 1995 WL 428647, at *4 (D.N.J. July 17, 1995) ("The appropriateness of the legal standard applied by the special master is reviewed de novo by the district court."); *Arconic Corp. v. Novelis Inc.*, No. 17-1434, 2021 WL 4479489, at *1 (W.D. Pa. Sept. 30, 2021) (reviewing special master's ruling on discovery dispute de novo because the raised objections "implicate[d] an underlying question of law"). In performing a de novo review, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the [special] master with instructions." Fed. R. Civ. P. 53(f)(1).

### III. **DISCUSSION**

Defendants object to two legal conclusions made by the Special Master. First, Defendants object to the Special Master's application of only New Jersey law—as opposed to the law of all fifty states—to the issues raised by the Motion to Amend. (Defs.' Moving Br. 11-17.) Second, Defendants object to the Special Master's holding that adding Kenvue, Janssen, and Holdco as defendants to this MDL would not be futile. (*Id.* 17-31.) The Court discusses each objection in turn. (*See generally id.*)

### A. The Law of the Transferee Court Applies to the Proposed Amendment to Add Defendants to the SAMC

As a threshold matter, the parties disagree as to the applicable law in assessing the issues raised by the Motion to Amend. On appeal, Defendants argue that the Court must apply the law of each transferor court to this pretrial dispute, and that, because this MDL likely involves Plaintiffs

6

from every state, the Court must undertake a full "50-state analysis of successor liability and choice of law case law" to assess whether the PSC can plausibly plead a claim against Kenvue, Holdco or Janssen. (Defs.' Moving Br. 11-17.) The PSC, on the other hand, argues that only the law of the transferee court (*i.e.*, New Jersey), should apply to the Motion to Amend at this stage. (PSC Opp'n Br. 7-17, ECF No. 28992.) The Court agrees with the PSC and finds that the law of the transferee court applies to this pretrial dispute.

The majority of cases in this MDL were transferred to this Court pursuant to 28 U.S.C. § 1407 ("Section 1407"), which states in pertinent part: "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." (*See* ECF No. 1); 28 U.S.C. § 1407(a). "The plain language of the statute does not explicitly resolve the issue of which circuit's law is binding, but it is important that section 1407 only allows cases to be transferred on the condition that such coordination 'will promote the just and efficient conduct of such actions.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 435, 440 (S.D.N.Y. 2007) (quoting 28 U.S.C. § 1407). The remaining cases were directly filed in this MDL.

Pursuant to Section 1407, in the context of pretrial issues, and where the parties have consented to the filing of a master complaint, courts routinely apply the law of the transferee court—and not the transferor court—to promote the "just and efficient resolution of the proceedings." *In re MTBE Prods. Liab. Litig.*, 241 F.R.D. at 440 (citing cases); *see Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 n.3 (2015) (citing *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590-92 (6th Cir. 2013)) (holding that where the parties elect to file a master complaint, the "the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings").

The Southern District of New York explains the rationale behind this principle in further detail:

> In the context of pre-trial issues such as motions to dismiss or discovery disputes, [S]ection 1407 requires the application of the law of the transferee circuit where the motions are being considered. For example, courts have held that the law of the transferee circuit controls pretrial issues such as whether the court has subject matter or personal jurisdiction over the action, or whether the cases should be remanded to state court because the cases were not properly removed. Likewise, the law of the transferee circuit controls discovery issues such as whether to compel a deposition or documents pursuant to a subpoena.
>
> The law of the transferee circuit applies in each of these situations because the objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts. Section 1407 is aimed at eliminating delay, confusion, conflict, inordinate expense and inefficiency during the pretrial period. In other words, it promotes just and efficient resolution of the proceedings to apply the law of the transferee circuit to pretrial issues.

*In re MTBE Prods. Liab. Litig.*, 241 F.R.D. at 439. (internal quotation marks and citations omitted).

Applying these principles here, the Court finds that the issue of whether to permit the PSC to add additional defendants to this MDL is a quintessential "pretrial issue" pursuant to which the Court applies the law of the transferee court to "eliminat[e] delay, confusion, conflict, inordinate expense and inefficiency during the pretrial period." *Id.*; 28 U.S.C. § 1407.

Applying New Jersey law to this issue is particularly appropriate for several reasons. First, the PSC moves to amend the FAMC pursuant to Rule 15, which is a matter of federal procedure. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 219 (D.N.J. 2021) (explaining that, in this MDL, "[o]n issues of federal law or federal procedure, [] the transferee court applies the law of the circuit in which it sits (here, the Third Circuit.)"). Second, while Defendants raise state-law specific defenses in opposing the

8

Motion to Amend, undertaking a 50-state analysis of successor liability and choice of law case law at this stage would be premature, imprudent, and inefficient for the Court to do. As the Special Master aptly noted, presently before the Court is a pretrial dispute solely to amend the pleadings, after which the parties will be free to raise defenses specific to an individual state's case law if and when the individual case is remanded or goes to trial. (Special Master Order No. 17 at 11-14 (explaining that the application of New Jersey law to the Motion to Amend is "without prejudice to Kenvue's right to raise its defense under Delaware law when the claim of a specific plaintiff is at issue").) Third, applying each of the fifty states' case law would be inappropriate, where here, the PSC does not seek to amend any individual plaintiff's complaint, but rather the FAMC, which does not name a specific plaintiff from which a transferor court can be identified.[9]

Finally, the application of the transferee court's law to this dispute—as opposed to the law of each transferor court—is in accordance with the authority of this Court to "maximize the judicial economy that MDLs were designed to further" and to promote the safeguarding of the procedural rights of parties. *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 65-66 (3d Cir. 2023). As the Third Circuit recently held:

> Complex multidistrict cases . . . demand much from transferee courts. The MDL process requires a judge to move hundreds or thousands of cases towards resolution while respecting each litigant's individual rights.

---

[9] Complicating this issue, Defendants fail to identify the courts from which cases in this MDL were transferred from, or otherwise provide the Court with a suggested method from which the Court could assess the various transferor courts at issue. (*See generally* Defs.' Moving Br.) Moreover, Defendants failed to undertake their own 50-state analysis of successor liability in the Objection, instead generally contending that the Special Master's "truncated" choice-of-law analysis "alone warrants reversal of the Special Master's ruling." (Defs.' Moving Br 12.)

> Managing an MDL may be "fundamentally . . . no different from managing any other case." But the complexity of most MDLs makes it harder to safeguard the procedural values which underlie all cases while simultaneously pursuing an efficient resolution on the merits.
>
> MDL judges have risen to this challenge by devising efficient, effective, and fair case management techniques. Nothing in our opinion should be taken to disparage the "creativity and innovation" which is so "highly prized among MDL judges." Nor should we be taken to mandate rigid adherence to stultifying procedures or "arid rituals of meaningless form."
>
> We endorse the considerable authority which is vested in MDL transferee courts to efficiently and fairly manage complex cases. . . . A district court charged with the responsibility of achieving [finality, judicial economy, and fairness] across "the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task."

*Id.* (citations omitted). Here, the Court is responsible for managing a complex MDL involving more than 60,000 plaintiffs from dozens of different jurisdictions and states, and for streamlining legal disputes that have arisen over the past nine years. Because, as Defendants concede, New Jersey law applies a more lenient standard in assessing the viability of the PSC's claims against corporate successors, (*see* Defs.' Moving Br. 16-17), the Court finds it especially prudent to apply New Jersey's more lenient standard to "safeguard the procedural values which underlie all cases while simultaneously pursuing an efficient resolution on the merits." *Id.* at 65.

Taken together, because the PSC seeks to amend the FAMC which does not name any single plaintiff, and this Court is tasked with achieving both judicial economy and safeguarding the rights of tens of thousands of litigants, the Court finds that it is most efficient, fair, and effective to apply the law of the transferee court—*i.e.*, New Jersey—to this pretrial dispute, without

prejudice to the parties to raise defenses specific to the law of each transferor court upon remand. *In re MTBE Prods. Liab. Litig.*, 241 F.R.D. at 440.[10]

### B. The PSC's Proposed Amendment to Add Holdco, Kenvue, and Janssen as Defendants Is Not Futile

The second issue before this Court is whether it would be futile for the PSC to add Holdco, Kenvue, and Janssen as defendants to the Proposed SAMC. The standard of review for futility requires the Court to consider whether the FAMC, as amended, would survive a motion to dismiss for failure to state claim. *Alvin v Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). In other words, futility of amendment requires that the pleading as amended does not state a claim upon which relief can be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Defendants argue that because a corporate successor is not generally liable for its predecessor's actions, "under any state's law," including New Jersey's, the PSC's factual allegations "fall short" of what is required to hold Holdco, Janssen, or Kenvue liable as successors to Old JJCI. (Defs. Moving Br. 10, 17.) The PSC, in turn, argues that the proposed amendment is not futile because Holdco, Kenvue, and Janssen can be held liable for Old JJCI's wrongful conduct under the product-line or mere continuity exceptions to non-successor liability. (PSC Opp'n Br.

---

[10] Defendants take issue with the Special Master's reference to a state-court decision, *In re Accutane Litig.*, 194 A.3d 503 (N.J. 2018), in determining that New Jersey law was appropriate to apply to the PSC's request to assert claims against new defendants in this proceeding. (*See* Defs.' Moving Br. 12-13 (arguing that the Special Master failed to "cite any authority countenancing the *Accutane* court's approach to choice-of-law questions in federal MDL proceedings"). As the Court explains above, however, federal courts routinely apply the transferee court's law to adjudicate pretrial issues in MDL proceedings. Moreover, the Special Master's reference to *Accutane* was appropriate given that he was seeking to emphasize the principles that guided the *Accutane* court's analysis when considering a similar issue and reaching a similar outcome. (*See* Special Master Order No. 10-12); *Accutane*, 194 A.3d at 519 (applying New Jersey law to multicounty litigation involving 532 cases in part because discerning the meaning of the laws of forty-four jurisdictions in addition to New Jersey was an "arduous and burdensome task" and "[a] trial judge [could not] be expected to gain a mastery of the law of forty-five different jurisdictions").

22, 33.) The Court addresses each doctrine below, and finds that the PSC adequately alleges a basis for successor liability against these defendants.

### 1.    *Product-line exception*

Under New Jersey law, a successor to the manufacturer of a product can be held liable for injuries caused by that product even when the successor took no action that caused the actual injury. This is generally referred to as the product-line exception to successor non-liability. The New Jersey Supreme Court first announced its approval of the product-line exception in *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811 (N.J. 1981). In *Ramirez*, the court held that:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Id.* at 825.[11]

The *Ramirez* court, in setting forth this rule, identified three fundamental policy concerns that justified imposing liability on successors under the product-line exception. First, the successor's acquisition of the original manufacturer's business caused a "virtual destruction of the plaintiff's remedies against the original manufacturer." *Ramirez*, 431 A.2d at 820. Second, the successor had the "ability to assume the original manufacturer's risk-spreading role." *Id.* And third, it was fair to require "the successor to assume a responsibility for defective products that was a

---

[11] "A corporate successor can be liable for its predecessor's debts on theories other than [those] recognized in *Ramirez*." *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 99 n.3 (3d Cir. 1994). Because the PSC, however, only advances the product-line or mere-continuity doctrines as bases for liability at this stage, the Court confines its analysis to these two doctrines.

burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." *Id.*

Courts interpreting *Ramirez* have further explained that "[i]n determining whether a current successor [can] be held liable under the product line exception to successor non-liability," the Court's focus is "whether the original manufacturer is viable." *Perlman v. Virtua Health, Inc.*, No. 01-0651, 2005 WL 8174806, at *4 (D.N.J. Apr. 12, 2005). If the original manufacturer is not viable, "then each viable company that succeeded the manufacturer—and thus 'caused' the destruction of plaintiff's remedy against the original manufacturer—can be held liable in a product liability action under the product line exception." *Id.*; *see also Nieves v. Bruno Sherman Corp.*, 431 A.2d 826 (N.J. 1981) (holding a current and intermediate successor liable under the product-line exception because both companies "had contributed to the 'unavailability of the original manufacturer.'").

Applying the above principles to this case, the Court finds that under New Jersey law, the PSC adequately alleges a basis for successor liability against Holdco, Janssen, and Kenvue under the product-line exception. First, it is undisputed that Plaintiffs lack a remedy against Old JJCI, the original manufacturer of Johnson's Baby Powder, following Old JJCI's divisional merger in 2021. (Proposed SAMC ¶ 20; Defs.' Moving Br. 4.) Second, the PSC adequately pleads that Holdco, Janssen and Kenvue each acquired all or substantially all the manufacturing assets of Old JJCI and therefore assumed Old JJCI's risk-spreading role. (*See, e.g.*, Proposed SAMC ¶ 45 (alleging Holdco acquired "all of the productive assets of Old JJCI, including those used to manufacture and market [Johnson's] Baby Powder"); *id.* ¶ 52 ("Janssen is the parent [entity] that received all of the JJCI assets used to manufacture, market, and sell [Johnson's] Baby Powder"); *id.* ¶ 50 (alleging Holdco moved its "assets and business to . . . Kenvue . . . by transfers through

[Holdco's] direct parent, Janssen").) Finally, the PSC pleads that each of these successor entities continued to sell Johnson's Baby Powder and enjoyed the "goodwill, business reputation and established customers" of Old JJCI in the continued operations of their businesses. *Ramirez*, 431 A.2d at 825; (Proposed SAMC ¶ 15 (alleging that Holdco, Janssen, and Kenvue each engaged in the "research, development, formulation, manufacture, design, testing, licensing, sale, distribution, marketing and/or introducing into interstate commerce" of J&J's Baby Powder); *id.* ¶ 45 (alleging that Holdco continues to sell Johnson's Baby Powder "as Old JJCI had previously done"), *id.* ¶ 52 (alleging that Janssen "received all of the JJCI assets to . . . sell [Johnson's] Baby Powder), *id.* ¶¶ 56-58 (alleging that Kenvue sells Johnson's Baby Powder nationally and internationally).)

Defendants dispute the accuracy of Plaintiffs' allegations. Specifically, Defendants contend that Holdco, Kenvue, and Janssen have never "manufactured or sold talc-based Johnson's Baby Powder in the United States," and that they carry no talc-related liabilities. (Defs.' Moving Br. 9, 15.) Accordingly, Defendants argue that these entities cannot be held liable for Johnson's Baby Powder under the product line exception. But Defendants misconstrue the legal standard on a motion to amend. Here, the Court must take the factual allegations in the Proposed SAMC as true, and "[w]hile Defendants may ultimately present facts to dispute the allegations of the [SAMC,] the Court is constrained to consider the factual underpinnings of the motion for leave to amend based upon the allegations set forth in the pleading itself." *M.G. v. Crisfield*, No. 06-5099, 2009 WL 2920268, at *7 (D.N.J. Sept. 11, 2009). Based on the allegations in the Proposed SAMC, the PSC plausibly pleads that Holdco, Kenvue, and Janssen each "contributed to the unavailability" of Old JJCI and can be held liable under the product-line exception to successor non-liability. *Perlman*, 2005 WL 8174806, at *5.

The Court further notes that, as the Special Master highlighted, this holding is in accord with *Nesko v. Johnson & Johnson, et al.*, where a New Jersey state court applied New Jersey law, considered whether Kenvue, Janssen, and Holdco could be held liable for talc-related claims on a motion to dismiss, and reached a similar result. *See* Case No. 300 at 10 (N.J. Super. Ct. Sept. 27, 2033) (denying Kenvue, Janssen, and Holdco's motion to dismiss and finding that plaintiffs adequately pleaded a basis for successor liability against these defendants under the product-line and mere continuity exceptions to non-successor liability).[12] Accordingly, the Court finds that the PSC plausibly pleads a basis for successor liability against Kenvue, Janssen and Holdco. As such, amendment of the FAMC would not cause undue delay or be futile. *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012) ("[A] proposed amendment is not futile [where it] would withstand a motion to dismiss").

### 2. *The Mere-Continuation Exception*

While the Court's determination that the PSC plausibly pleads a basis for successor liability under the product-line exception is dispositive here, the Court nonetheless will briefly address the mere continuation doctrine, the second relevant exception to the traditional rule against imposing successor liability on corporate successors. Under this doctrine, liability can be imposed on the

---

[12] Defendants' only response to *Nesko* is to argue that it was "wrongly decided" because a few state courts have found that Janssen, Holdco, and Kenvue cannot be held liable for talc-related litigation on a theory of successor liability. (Defs.' Moving Br. 11 (citing cases).) The Court, however, does not find Defendants' cited authorities persuasive, given that none of those cases apply New Jersey law, and moreover, several have different postures or do not address the allegations pleaded here. *See LaSalle v. Am. Int'l Indus.*, No. 23-2-08165-0 (Wash. Super. Ct. Sept. 12, 2023) (applying Washington law); *Egli v. Johnson & Johnson*, No. RG20075272 (Cal. Super. Ct. Oct. 26, 2023) (applying California law to assess Holdco's motions to quash for lack of personal jurisdiction); *Yandell v. Johnson & Johnson*, No. 23STCV11850 (Cal. Super. Ct. Aug. 15, 2023) (applying California law); *Ochoa v. 3M Co.*, No. D-307-CV-2023-01125 (N.M. Dist. Ct. Jan. 3, 2024) (applying Texas law); *Henderson v. Taylor-Seidenbach Inc.*, No. 2022-10279 (La. Civ. Dist. Ct. Dec. 22, 2023) (applying Louisiana law and granting motion to dismiss without stating any findings or reasoning).

15

successor if it assumes the predecessor's liabilities or if the predecessor merges into the successor. *Ramirez*, 431 A.2d at 817-18.

In defining what is a "mere continuation," New Jersey courts look to four factors: "(i) continuity of management, personnel, physical location, assets, and general business operations; (ii) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership/shareholders." *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F. Supp. 2d 324, 337 (D.N.J. 2002) (quoting *Woodrick v. Jack J. Burke Real Estate*, 703 A.2d 306, 312 (App. Div. 1997)). Not all four factors need to be present for the mere continuation exception to apply. *Woodrick*, 703 A.2d at 312. Instead, the Cout's focus is on whether "the facts show that the intent was for the successor to assume all the benefits and burdens of the predecessor's business, with the successor becoming a 'new hat' for the predecessor." *Id.* at 313.

Here, the PSC pleads that Holdco and Janssen are wholly-owned subsidiaries of J&J and have been "under the complete dominion and control" of J&J. (Proposed SAMC ¶ 16.) Plaintiffs further allege that Holdco continued to sell Johnson's Baby Powder "as Old JJCI had previously done," (*id.* ¶ 45), that Janssen received all of Holdco's assets used to manufacture, market, and sell Johnson's Baby Powder (*id.* ¶ 52), and that Holdco and Janssen are successors to Old JJCI and responsible for the tortious conduct of Old JJCI (*id.* ¶ 53). With respect to Kenvue, the PSC alleges that Kenvue's SEC registration filing states that it sells Johnson's Baby Powder (*id.* ¶ 61, 67), that "Kenvue continues to market these reformulated products under the trusted Johnson's brand name" (*id.* ¶ 67), that even today it is possible to buy talc-based Johnson's Baby Powder online (¶ 64), and that Kenvue is responsible individually and as successor to all predecessor entities involved

16

in the manufacturing, marketing and sale of asbestos-containing talc (*id.* ¶ 60). In sum, the PSC plausibly alleges that Holdco, Janssen, and Kenvue acquired the assets used to manufacture Johnson's Baby Powder, continued operations related to Johnson's Baby Powder, and functionally became a "new hat" for Old JJCI. *Woodrick*, 306 N.J. Super. at 73.

Construing the facts pleaded in the Proposed SAMC in the light most favorable to the PSC, the Court finds that the PSC adequately pleads that Janssen, Kenvue, and Holdco can also be held liable for its claims under the mere continuation exception to non-successor liability. Accordingly, permitting amendment of the FAMC would not be futile. *Free Speech Coal., Inc.*, 677 F.3d at 545.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Objection to the Special Master's Order No. 17 is denied. The Special Master's Order No. 17 is affirmed. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**