# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS |

**DEFENDANTS JOHNSON & JOHNSON AND LLT
MANAGEMENT, LLC'S BRIEF IN SUPPORT OF ITS MOTION,
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 53(F),
OBJECTING TO SPECIAL MASTER
ORDER NO. 29 (ADDRESSING DEFENDANTS' RENEWED MOTION
FOR LITIGATION FINANCE DISCOVERY AND TO COMPEL
COMPLIANCE WITH LOCAL RULE 7.1.1) (ECF NO. 40778)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................1

LEGAL STANDARD...........................................................................4

BACKGROUND ................................................................................5

ARGUMENT ...................................................................................14

I.      BEASLEY ALLEN SHOULD BE ORDERED TO MAKE A RULE
        7.1.1 DISCLOSURE AND PRODUCE LITIGATION-FUNDING
        DISCOVERY ...........................................................................15

        A.      The Court Should Enforce Local Rule 7.1.1(a) by Ordering
                Every Plaintiff Represented by Beasley Allen to File the
                Required Rule 7.1.1 Statement..............................................16

        B.      Good Cause Exists Under Local Rule 7.1.1(b) to Obtain
                Discovery into Beasley Allen's Litigation Funding ..........................16

        C.      Rule 7.1.1(c) Provides an Independent Basis for Ordering
                Litigation Funding Discovery ............................................20

II.     THE SPECIAL MASTER MISAPPLIED LOCAL RULE 7.1.1 AND
        ERRONEOUSLY REFUSED TO ORDER DISCLOSURE OR
        REQUIRE DISCOVERY ................................................................21

III.    BEASLEY ALLEN'S OBJECTIONS ARE WITHOUT MERIT. ...............26

        A.      Beasley Allen's Relevance Objection Fails ........................................27

        B.      Litigation Financing Materials Are Not Privileged ............................27

        C.      Litigation Financing Materials Are Not Work Product .....................30

CONCLUSION ..................................................................................31

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
No. 3:19-md-02885 (N.D. Fla. Aug. 29, 2023).................................................26

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
2018 WL 798731 (D. Del. Feb. 9, 2018)..................................................25, 30

*In re Am. Med. Sys., Inc.*,
MDL No. 2325, 2016 WL 3077904 (S.D. W. Va. May 31, 2016)....................26

*AstraZeneca LP v. Breath Ltd.*,
2011 WL 1421800 (D.N.J. Mar. 31, 2011) .......................................................17

*Beasley Allen v. Smith Law Firm*,
No. 2:24-cv-582 (RAH/JTA) (M.D. Ala. Dec. 2024) .........................................9

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8367, 2024 WL 1214568 (N.D. Ill. Mar. 21, 2024)...........................25

*Cobra Int'l, Inc. v. BCNY Int'l, Inc.*,
No. 05-61225-CIV, 2013 WL 11311345 (S.D. Fla. Nov. 4, 2013).............26, 29

*Cohen v. Cohen*,
No. 09 Civ. 10230, 2015 WL 745712 (S.D.N.Y. Jan. 30, 2015) ......................29

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
335 F.R.D 510 (N.D. Ill 2020)..........................................................................29

*Gbarabe v. Chevron Corp.*,
No. 14-CV-00173-SI, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016)................25

*Hedden v. Kean University*,
434 N.J. Super. 1 (N.J. Super. Ct. App. Div. 2013) ..........................................28

*Hite v. Peters*,
2009 WL 1748860 (D.N.J. June 19, 2009)........................................................17

*Hobbs. v. Am. Commercial Barge Line LLC*,
No. 4:22-cv-00063, 2023 WL 6276068 (S.D. Ind. Sept. 26, 2023) ..................25

*Leader Techs., Inc. v. Facebook, Inc.*,
    719 F. Supp. 2d 373 (D. Del. 2010)......................................................................29

*Montgomery Cty. v. MicroVote Corp.*,
    175 F.3d 296 (3d Cir. 1999) ...............................................................................29

*MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*,
    2024 WL 4100379 (D.N.J. Sept. 6, 2024).....................................................17, 23

*NantWorks, LLC v. Niantic, Inc.*,
    2022 WL 1500011 (N.D. Cal. May 12, 2022)....................................................23

*In re Nat'l Prescription Opiate Litig.*,
    2018 WL 2127807 (N.D. Ohio May 7, 2018) .....................................................26

*Nelson v. Millennium Labs., Inc.*,
    No. 2:12-cv-01301, 2013 WL 11687684 (D. Ariz. May 17, 2013) ...................26

*Nimitz Techs. LLC v. CNET Media, Inc.*,
    2022 WL 17338396 (D. Del. Nov. 30, 2022)..............................................24, 25

*Pittston Co. v. Allianz Ins. Co.*,
    143 F.R.D. 66 (D.N.J. 1992)...............................................................................29

*R.J. Reynolds Tobacco v. Philip Morris, Inc.*,
    29 Fed. App'x 880 (3d Cir. 2002) ......................................................................31

*In re Red River Talc LLC*,
    670 B.R. 251 (Bankr. S.D. Tex. 2025) ...................................................2, 8, 9, 18

*In re Selser*,
    15 N.J. 393 (N.J. 1954)........................................................................................28

*Stengart v. Loving Care Agency, Inc.*,
    201 N.J. 300 (N.J. 2010)......................................................................................28

*Threadgill v. Armstrong World Indus., Inc.*,
    928 F.2d 1366 (3d Cir. 1991) .............................................................................23

*Trejo v. All Lynn, LLC*,
    344 F.R.D. 8 (D.N.J. 2023)..................................................................................30

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
2020 WL 1669444 (S.D. Fla. Apr. 3, 2020) ...................................................26

**Rules**

Fed. R. Civ. P. 26(b)(3) ...................................................................................30

Fed. R. Civ. P. 26(b)(3)(A)(ii) ........................................................................30

Fed. R. Civ. P. 53(f)(3)–(4) ...............................................................................4

L.R. 7.1.1 ....................... 2, 3, 4, 5, 11, 14, 15, 16, 18, 19, 20, 21, 24, 25, 26, 27, 31

L.R. 7.1.1(a) ..................................................... 5, 11, 15, 16, 19, 20, 21, 22

L.R. 7.1.1(b) ......................................................... 3, 15, 16, 17, 18, 20, 21

L.R. 7.1.1(c) ...................................................................................4, 15, 20

N.J. R. Evid. 504 ...........................................................................................28

**Other Authorities**

Hailey Konnath, *Burford, Sysco Agree to Drop Litigation Funding
Suits*, Law360 (June 28, 2023) ...............................................................25

Patrick A. Tighe, *Survey of Federal and State Disclosures Regarding
Litigation Funding*, Advisory Committee on Civil Rules, at 2 (Feb.
7, 2018) ....................................................................................................24

Defendants Johnson & Johnson and LLT Management LLC[1] object, pursuant to Federal Rule of Civil Procedure 53(f), to Special Master Order No. 29 (ECF No. 40778), which denied Defendants' renewed motion for limited discovery into the Beasley Allen Law Firm's litigation financing.

## INTRODUCTION

What is Beasley Allen hiding? Last year, Beasley Allen and The Smith Law Firm ("Smith") convinced the Special Master to deny Defendants' requested discovery into those firms' litigation-financing arrangements by concealing the fact that Beasley Allen and Smith *jointly represented* all of Beasley Allen's clients *in this litigation*. Defendants had strongly suspected such an arrangement based on the firms' evasive representations, but the Special Master derided Defendants' position as mere "speculation and conjecture." Ex. 1, Special Master Order No. 25 (ECF No. 32926) at 10.

We now know that Defendants' "speculation and conjecture" was, in fact, 100% true. As the Special Master now acknowledges, Beasley Allen and Smith "entered into a Joint Venture Agreement . . . to jointly represent and prosecute thousands of plaintiffs in this MDL." *Id.* at 2. We *also* know—based on Defendants'

---

[1]    Defendant LLT Management LLC no longer exists. The parties are working through a stipulation to substitute in Red River Talc LLC who now holds the ovarian and gynecological liabilities formerly held by LLT Management LLC.

persistence in pursuing litigation-financing discovery from Smith—that, as the Special Master put it, "Smith received litigation funding relating to the clients it represents in this MDL." *Id.* at 3. And we *further* know that *Beasley Allen knew* that Smith had obtained loans using their talc claims as collateral: Beasley Allen sued Smith, asserting that the latter's litigation financing was interfering with the attorney-client relationship.

So why all this evasion? Defendants strongly suspect it is because Beasley Allen has some sort of litigation-financing arrangement as well. That would help explain the firm's strange voting patterns in the various bankruptcy proceedings—including the most recent vote, where a Beasley Allen principal "voted on behalf of clients, without their consent, to reject payment under [a proposed bankruptcy resolution] even though he believes those clients will not and cannot be paid in the tort system." *In re Red River Talc LLC*, 670 B.R. 251, 288 (Bankr. S.D. Tex. 2025). And that would also explain why Beasley Allen has consistently refused to state whether it has used its talc claims to secure its own litigation financing—just like its co-counsel at Smith did with respect to these exact same claims.

Beasley Allen has not filed a Local Rule 7.1.1 litigation-financing disclosure statement. But at the same time, it refuses to answer Defendants' subpoena—which simply requests six categories of documents relating to litigation funding. If Beasley Allen truly has no litigation funding, then responding to Defendants' subpoena

should be trivial: it would be able to state that, upon a reasonable search, it has no documents to produce. Instead, Beasley Allen has dug in its heels. Why?

Notwithstanding Defendants' demonstrated track record in eventually proving its suspicions, and despite his being bamboozled by Beasley Allen in the last go-round, the Special Master credited Beasley Allen's "steadfast position" that it has no litigation funding. Ex. 2, Special Master Order No. 29 (ECF No. 40778) at 7. The Special Master deemed Beasley Allen's unauthorized bankruptcy voting, which vetoed settlement payments to Beasley Allen clients with concededly meritless claims, as "reasonable." *Id.* at 6. And even though Beasley Allen *still* refuses to state whether it has used its talc claims to secure funding, the Special Master declined to compel Beasley Allen to respond on the ground that there is "no credible or persuasive *evidence*" of litigation funding. *Id.* (emphasis added).

But that is not the right standard. Under the Local Rules, the standard is whether Defendants have made "a showing of good cause that [a] non-party [funder] has authority to make material litigation decisions or settlement decisions, the interest of parties . . . are not being promoted or protected, *or* conflicts of interest exist[.]" L.R. 7.1.1(b) (emphasis added). Beasley Allen's shenanigans to date— concealing the Joint Venture Agreement from the Special Master, failing to file a Rule 7.1.1 disclosure statement despite knowing about Smith's litigation financing, voting on behalf of thousands of its clients to reject settlement payments for

3

undisputedly worthless claims, and refusing to state whether it has used its clients' talc claims to secure loans—more than adequately constitutes such "a showing of good cause." And at any rate, "[n]othing" in the Local Rule "precludes the Court from ordering such other relief as may be appropriate." L.R. 7.1.1(c).

Simply put, Defendants strongly suspect that Beasley Allen has done exactly what it steadfastly refuses to confirm or deny: use its clients' talc claims as collateral for litigation funding. Authorized by Local Rule 7.1.1, Defendants' discovery will demonstrate whether Beasley Allen has, in fact, obtained litigation financing, and if so, whether those financiers are pulling Beasley Allen's strings. And if Beasley Allen truly has not received any litigation financing, then its discovery responses should be a breeze, and will vindicate its position.

The Court should (i) reverse the Special Master's Order, (ii) require all plaintiffs represented by Beasley Allen to submit a Rule 7.1.1 statement, and (iii) compel Beasley Allen's compliance with Defendants' subpoena. At the bare minimum, the Court should conduct an *in camera* review of Beasley Allen's responsive documents.

## LEGAL STANDARD

"The court must decide de novo" (i) "all objections to findings of fact made or recommended by a master," and (ii) "all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(3)–(4). In its earlier opposition to

4

Defendants' objections, Beasley Allen agreed that "[t]he Court reviews a Special

Master's order and opinion *de novo*." Beasley Allen Br. (ECF No. 33061) at 6 n.3.

As a result, the Court reviews the Special Master's Order without deference.

## BACKGROUND

### *The Obligation to Disclose Certain Litigation Financing Arrangements*

Recognizing that litigation financing has the potential to interfere with the

attorney-client relationship, in 2021 this District adopted Local Rule 7.1.1, which

requires "all parties" to "file a statement" specifying certain information "regarding

any person or entity that is not a party and is providing funding for some or all of the

attorneys' fees and expenses for the litigation on a non-recourse basis in exchange

for (1) a contingent financial interest based upon the results of the litigation or (2) a

non-monetary result that is not in the nature of a personal or bank loan, or insurance."

L.R. 7.1.1(a).

None of Beasley Allen's thousands of clients filed a Local Rule 7.1.1

statement. But Defendants suspected that they, or their attorneys, had received

litigation financing for three reasons. First, Beasley Allen had taken an extreme

outlier position on settlement relative to other plaintiffs' firms in the now-defunct

bankruptcy proceedings. Second, a Beasley Allen client sent an unsolicited email to

Defendants' counsel, stating that she was told by her attorneys at Beasley Allen that

Defendants were unwilling to settle her case—even though Defendants had at that

precise moment a pending settlement offer out to her (and to all other claimants in the MDL). Finally, Beasley Allen had historically partnered with Smith on talc litigation, and Defendants learned that Smith had received litigation financing. *See generally* Ex. 3, Def. Objections (ECF No. 32987-1) at 6–11.

### *Defendants Request Discovery about Litigation Financing, Which the Special Master Denies*

Defendants issued subpoenas to Beasley Allen, Smith, and an entity Defendants suspected of providing litigation financing to Smith. As relevant here, Defendants' subpoena to Beasley Allen demanded six categories of documents:

1. All Documents or Communications that reflect or relate to any Funding You received from Fortress concerning the above-captioned case, and/or claims that have or may be asserted therein, including when the funding first began and on what terms.

2. All Documents or Communications that reflect or relate to any Third-Party Funding You have received in any way related to the Litigation and/or claims that have or may be asserted therein, including, without limitation, any Documents or Communications that relate to Funding received from Fortress concerning the above-captioned case.

3. All Agreements You have entered into with any Person to provide You with Funding in any way related to the Litigation, and/or claims that have or may be asserted therein including, without limitation, any Agreements with Fortress concerning the above-captioned case.

4. All Documents, Communications, or Agreements that concern how much Remuneration You have received in Third-Party Funding in any way related to the Litigation, and/or claims that have or may be asserted therein including, without limitation, any Documents, Communications or Agreements that relate to Funding received from Fortress concerning the above-captioned case.

5. All Documents, Communications, or Agreements that concern the conveyance, sale, syndication, factoring or other transfer of Third-Party Funding You have received that relates, in any way, to the Litigation and/or claims that have or may be asserted therein.

6. All Documents, Communications, or Agreements that concerning the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein.

Ex. 4, Subpoena to Beasley Allen (ECF No. 32201) at 10.[2] In a letter to the Special Master, Defendants made clear that they "do not expect privileged communications to be produced, such as communications solely between Beasley Allen or Smith and their clients regarding legal advice." Ex. 5, Letter to Hon. Schneider (ECF No. 32845) at 3.

Beasley Allen and Smith moved to quash the subpoenas, and the Special Master granted their motions. *See* Ex. 1, Special Master Order No. 25 (ECF No. 32926). "[T]he short answer as to why no good cause exists to grant defendants' request for litigation finance discovery," the Special Master held, "is that Beasley Allen, via [its principal Andy] Birchfield's testimony, has already attested to the fact that Beasley Allen has no such litigation funding for this MDL." *Id.* at 10. The Special Master also rejected as "speculation and conjecture" Defendants' theory

---

[2]    Defendants withdrew demands for two other categories of documents. *See* Ex. 4, Subpoena to Beasley Allen (ECF No. 32201) at 11; Ex. 5, Letter to Hon. Schneider (ECF No. 32845) at 2.

"that Smith may have referred cases to Beasley Allen in this MDL and that Smith's financing may therefore impact Beasley Allen's settlement position." *Id.* Defendants filed objections to that order, and those proceedings were eventually stayed as a result of the *Red River* bankruptcy filing.

### Smith and Beasley Allen's Joint Venture Agreement

The *Red River* bankruptcy proceedings vindicated Defendants' suspicions about the relationship between Beasley Allen and Smith—a relationship that both firms hid from the Special Master. Defendants learned in those proceedings that Smith and Beasley Allen had entered into a joint-venture agreement in 2014 to "jointly represent *all* of [their] talcum powder clients." Ex. 6, Joint Venture Agreement (ECF No. 34394-4) at 2 (emphasis added). This means that Smith represents all of the approximately 5,000 plaintiffs in this MDL that Beasley Allen represents. *See In re Red River Talc LLC*, 670 B.R. 251, 266–67 (Bankr. S.D. Tex. 2025). The agreement further provides that Smith, along with Porter Malouf (whom Smith later bought out), would be responsible for 50% of the work, 50% of the expenses, and 50% of the fees. Joint Venture Agreement (ECF No. 34394-4) at 1–2.

What is more, Beasley Allen has since taken the position that *Smith's* litigation financing interfered with their clients' best interests. After Beasley Allen and Smith took different positions on whether to approve the proposed *Red River*

bankruptcy settlement—Smith voted in favor and Beasley Allen opposed—the firms sued each other. *See Beasley Allen v. Smith Law Firm*, No. 2:24-cv-582 (RAH/JTA) (M.D. Ala. Dec. 2024); *see also* Ex. 2, Special Master Order No. 29 (ECF No. 40778) at 3. In its First Amended Complaint, Beasley Allen alleged that "Smith's motivation for [supporting the settlement] is at least in part [its] desire to alleviate [its] financial distress." Ex. 7, First Am. Compl. (ECF No. 34394-11) ¶ 40.

### *Beasley Allen's Strange and Unauthorized* Red River *Bankruptcy Voting*

Beasley Allen also (without client consent) voted to deprive thousands of its talc clients of a settlement payment—even though the firm admitted that those claims were worthless in the tort system. As recounted by the *Red River* bankruptcy court, "thousands" of Beasley Allen's gynecological-cancer clients "were voted to reject [the proposed bankruptcy resolution] without any direction from those clients"—even though "Birchfield believes gynecological cancer claims are non-compensable in the tort system based on a lack of scientific support." *In re Red River Talc LLC*, 670 B.R. at 288. Perhaps mystified by this behavior, the bankruptcy court repeated: "Birchfield voted on behalf of clients, without their consent, to reject payment under the Initial Plan even though he believes those clients will not and cannot be paid in the tort system." *Id.*

*Defendants' Renewed Motion*

Based on this new evidence, Defendants filed a renewed motion for litigation-financing discovery. *See* ECF No. 34394.[3] Beasley Allen opposed, relying in large part on (i) Mr. Birchfield's 2023 testimony in the LTL bankruptcy proceeding that Beasley Allen "ha[s] not obtained litigation financing or funding for [its] talc claims," Ex. 8, Birchfield Dep. (ECF No. 36608-8) at 48:3–4, and (ii) the declaration of Leigh O'Dell, another Beasley Allen partner, that "Beasley Allen clients have received no funds from Smith's litigation funding," Ex. 9, O'Dell Decl. (ECF No. 36608-1) ¶ 7.

But in the LTL bankruptcy proceeding, Mr. Birchfield—moments after testifying that Beasley Allen "ha[s] not obtained litigation financing or funding for [its] talc claims"—*refused to answer* whether Beasley Allen's talc claims "act as securitization or collateralization for any [such] financing." Ex. 8, Birchfield Dep. (ECF No. 36608-8) at 48:6–11. As for Ms. O'Dell's allegation that "Beasley Allen clients have received no funds from Smith's litigation funding," Ex. 9, O'Dell Decl. (ECF No. 36608-1) ¶ 7, the question whether the firm's clients received *cash in hand*

---

[3]    Defendants' earlier objections were stayed as a result of the Red River bankruptcy proceedings. *See* Ex. 2, Special Master Order No. 29 (ECF No. 40778) at 2. After the bankruptcy was dismissed, this MDL was restored to the active docket, and Defendants sought to re-activate their earlier objections and to supplement the record. *See id.* Those earlier objections were eventually "terminated without prejudice and defendants were granted leave to renew their motion." *Id.*

is not determinative of the relevant question: whether a non-party "provid[ed] some or all of the attorneys' fees and expenses for the litigation." L.R. 7.1.1(a).

### *Smith Files a Rule 7.1.1 Disclosure*

On the eve of oral argument on Defendants' renewed motion, Smith filed a Rule 7.1.1 disclosure statement in this case. The disclosure statement confirmed what Defendants had long suspected: "The Smith Law Firm, PLLC, has received [non-recourse] litigation funding relating to clients it represents in the MDL," Ex. 10, Smith Disclosure (ECF No. 40303) at 1—clients it jointly represents with Beasley Allen.[4]

Smith disclosed that its lenders "provide[d] non-recourse funding" that "is secured, in part, by the cases it represents in the MDL," but alleged that this non-recourse funding is "not contingent on the results of this litigation" and, as a result, Smith "does not believe that disclosure is required by Local Rule 7.1.1." *Id.* Smith, however, did not explain how a non-recourse loan secured by its and Beasley Allen's clients' claims in this litigation could be considered anything other than contingent on the results of this litigation. After all, their clients' claims in this litigation are inherently contingent in nature.

---

[4]    Defendants withdrew their motion to compel as to Smith and the litigation-funding entity.

### *Beasley Allen's Evasion Continues at Oral Argument*

At oral argument, the Special Master acknowledged that "some of [Defendants'] suppositions from the first time we argued this motion turned out to be correct," and expressed bewilderment that the Joint Venture Agreement between Beasley Allen and Smith had not been disclosed. Ex. 11, July 18, 2025, Hr'g Tr. at at 24:12–16, 27–28. "[I]t's perplexing," the Special Master noted, "why we went through all we did last time we heard this motion, why it wasn't disclosed. I'm at a loss to understand that." *Id.* at 27:25–28:1–3. Nonetheless, the Special Master stated that the "failure to reveal the joint venture agreement really falls on the shoulder of Smith." *Id.* at 27:22–24. The Special Master did not explain why he did not also attribute that "failure" to Beasley Allen, which was Smith's joint venturer and had participated fully in the last hearing.

The Special Master pressed Defendants on why they needed discovery about Beasley Allen's litigation financing given the "sworn testimony from Mr. Birchfield [and] the affidavit from Ms. O'Dell that they don't have litigation funding pertaining to these talcum powder cases." *Id.* at 10:19–23. Defendants explained that Beasley Allen appears to be using an idiosyncratic definition of litigation financing, in that the firm appears to believe "that there is a distinction between litigation funding, however they are defining that, and talc claims being used as collateral." *Id.* at 72:12–15. And, Defendants continued, "nobody has made an affirmative statement

here to say" that those talc claims are "not being used as collateral." *Id.* at 72:7–12.
Despite that challenge, Beasley Allen did not take the opportunity to deny that its
talc claims were being used as collateral for loans made to the firm. Nor did the
Special Master press Beasley Allen on that question.

Further, Defendants noted, this dispute echoed the earlier one, where "Beasley
Allen stood by while everybody was allowed to talk about how Smith doesn't
represent individuals in this MDL, when Beasley Allen knew that they did." *Id.* at
33:24–25–34:1–2. Notwithstanding Beasley Allen's self-serving denials of litigation
financing, Defendants explained, the firm's repeated refusal to state whether it is
using its talc claims to secure loans strongly suggests "that they are collateralizing
loans with the talc claims in this MDL"—just like the law firms' previous, evasive
statements concealed the fact that Beasley Allen and Smith jointly represented their
clients under a joint venture agreement that they successfully hid from the Special
Master. *Id.* at 33:19–24.

The Special Master took the matter under consideration. *See id.* at 77.

### *The Special Master Denies Defendants' Motion.*

On July 25, 2025, the Special Master denied Defendants' motion. Ex. 2,
Special Master Order No. 29 (ECF No. 40778). The Special Master credited Beasley
Allen's "steadfast position that it has no litigation funding for this MDL." *Id.* at 7.
And it was not swayed by Beasley Allen's refusal to answer whether it had used its

13

talc claims as collateral to secure loans. Defendants' "infer[ence]" from Beasley
Allen's consistent refusal to answer that question, the Special Master concluded, was
supported by "no credible or persuasive evidence." *Id.* at 6.

## ARGUMENT

This is déjà vu all over again. In prior proceedings, Beasley Allen withheld
critical information—such as its joint-venture agreement with Smith—until it came
to light through other channels, forcing the Court and Defendants to revisit issues
that should have been resolved earlier with candor and compliance. The same pattern
is repeating now. Based on Smith's recent Rule 7.1.1 disclosure, it is now established
that there has been litigation funding for talc clients in this MDL whom Smith and
Beasley Allen jointly represent.

Given this backdrop—and Beasley Allen's track record of withholding key
information—the Court should begin with a straightforward and easy step: require
Beasley Allen to satisfy its threshold obligation under Local Rule 7.1.1 by filing a
disclosure statement addressing whether it has received any such funding.
Additionally, the Court should, consistent with Rule 7.1.1(b) and (c), authorize
targeted discovery into Beasley Allen's litigation-funding arrangements to ensure
that undisclosed funders are not pulling the strings in this MDL. Beasley Allen's
unexplained refusal to confirm whether it has used its talc claims as collateral, its
unauthorized voting in the bankruptcy proceedings, and its narrow, self-serving

denials together more than satisfy Rule 7.1.1(b)'s "good cause" standard. The goal of this discovery is simple: to ensure this MDL is being litigated on the merits, free from shadowy influences, so it can be brought to a fair and final resolution.

## I.     BEASLEY ALLEN SHOULD BE ORDERED TO MAKE A RULE 7.1.1 DISCLOSURE AND PRODUCE LITIGATION-FUNDING DISCOVERY

Local Rule 7.1.1 promotes transparency in litigation funding arrangements by requiring mandatory disclosures and, where warranted, targeted discovery into such arrangements. Subsection (a) provides in clear, mandatory terms that "all parties" must file a disclosure identifying any non-party "providing funding for some or all of the attorneys' fees and expenses for the litigation on a non-recourse basis[.]" L.R. 7.1.1(a). Subsection (b) authorizes discovery into such litigation financing—beyond the required disclosures—upon a showing of "*good cause*" that: (1) the funder "has authority to make material litigation decisions or settlement decisions"; (2) the "interests of the parties or the class (if applicable) are not being promoted or protected"; (3) "conflicts of interest exist"; *or* (4) the "disclosure is necessary to any issue in the case." L.R. 7.1.1(b) (emphasis added). Subsection (c) further provides that "[n]othing herein precludes the Court from ordering such other relief as may be appropriate." L.R. 7.1.1(c). The record here justifies relief under each of these provisions.

**A.    The Court Should Enforce Local Rule 7.1.1(a) by Ordering Every Plaintiff Represented by Beasley Allen to File the Required Rule 7.1.1 Statement**

Local Rule 7.1.1(a) imposes a clear, non-negotiable duty on all parties to disclose non-recourse litigation funding. Given Beasley Allen's repeated obfuscation about its joint representation with Smith and the existence of litigation funding for their shared clients, the Court should, at a minimum, require every plaintiff represented by Beasley Allen to file the mandated statement. This straightforward step would be easy to implement, impose minimal burden, and fulfill the Rule's purpose of ensuring transparency about potential third-party influence over the conduct and resolution of this MDL.

**B.    Good Cause Exists Under Local Rule 7.1.1(b) to Obtain Discovery into Beasley Allen's Litigation Funding**

While Rule 7.1.1(a) requires Beasley Allen's clients to disclose litigation funding, that alone will not reveal the potential influence that such funding arrangements may have on Beasley Allen's litigation or settlement decisions. Subsection (b) provides the next step—authorizing discovery where there is "good cause" to suspect that a funder may be influencing litigation or settlement decisions, that the parties' interests are not being protected, or that conflicts of interest exist. Beasley Allen's shenanigans to date more than adequately constitute "good cause" under Local Rule 7.1.1(b) to uncover the truth about its litigation-financing arrangements.

This "good cause" threshold is modest. It requires only a reasonable basis to suspect one of these circumstances—not definitive proof, which would be impossible without discovery. Indeed, courts routinely permit discovery on a preliminary showing of relevance or necessity. *See, e.g.*, *AstraZeneca LP v. Breath Ltd.*, , 2011 WL 1421800, at *10 (D.N.J. Mar. 31, 2011) (holding that "the Court may . . . permit for 'good cause' discovery of matters that are 'relevant to the subject matter involved in the action'" (quoting *Hite v. Peters*, 2009 WL 1748860, at *3 (D.N.J. June 19, 2009)). Ultimately, a plaintiff's bare denial of third-party funding does not preclude discovery under Rule 7.1.1(b). *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, 2024 WL 4100379 (D.N.J. Sept. 6, 2024).

*First*, Beasley Allen is financially intertwined with a firm that has already admitted to litigation funding and has gone to lengths to conceal that relationship. Through its joint venture with Smith—an agreement Beasley Allen initially concealed from the Special Master by continuing to refer to only "counsel of record"—Beasley Allen jointly represents talc plaintiffs whose claims Smith used as collateral for "non-recourse" funding. The two firms split fees and expenses, and Beasley Allen even sued Smith over the terms of that funding. Given this shared client base, intertwined financial interests, and lack of transparency, it is reasonable to infer that Beasley Allen may have similar financing arrangements tied to these MDL claims.

*Second*, Beasley Allen's conduct in the talc-related bankruptcy proceedings strongly suggests that undisclosed litigation funding may be influencing its strategic decisions. In *In re Red River Talc LLC*, a Beasley Allen principal cast votes on behalf of thousands of clients—without their consent—to reject payment under a proposed bankruptcy resolution, even while acknowledging that those clients "will not and cannot be paid" in the tort system. 670 B.R. at 288. Such self-defeating behavior—blocking guaranteed payments to clients with concededly worthless claims—makes no sense unless driven by a financial interest outside the clients' recoveries, such as obligations to a litigation funder with a stake in prolonging the litigation. This is precisely the type of potential funder influence and conflict of interest that Rule 7.1.1(b) authorizes discovery to uncover.

*Third*, Beasley Allen has never given a clear, unqualified denial that it has relevant litigation funding. In the LTL bankruptcy, firm principal Andy Birchfield testified that Beasley Allen "ha[s] not obtained litigation financing or funding *for [its] talc claims*," but immediately refused to answer whether those same claims were used "as securitization or collateralization" for any financing. Ex. 8, Birchfield Dep. (ECF No. 36608-8) at 48:3–11 (emphasis added). Likewise, partner Leigh O'Dell's statement that "Beasley Allen clients have received no funds from Smith's litigation funding," Ex. 9, O'Dell Decl. (ECF No. 36608-1) ¶ 7, sidesteps the actual Rule 7.1.1 question, which is whether a non-party provided funds for the attorneys'

fees or litigation expenses. L.R. 7.1.1(a). These carefully limited responses are not true denials, and they underscore why discovery is needed.

Through these responses, Beasley Allen appears to takes an unduly cramped view of what constitutes "litigation funding" under Local Rule 7.1.1. Its position appears to limit the Rule to loans or investments *directly* and *explicitly* tied to the outcome of its talc cases. But the Rule is not so narrow. It broadly applies to loans that "provid[e] funding for some or all of the attorneys' fees and expenses for the litigation." L.R. 7.1.1(a). In this manner, the Rule encompasses non-recourse arrangements where a firm leverages its *entire* contingent-fee portfolio—including its talc cases—to secure funding for firm-wide litigation expenses such as expert fees, depositions, court costs, trial exhibits, and attorney salaries. Under such an arrangement, repayment would come from the firm's future recoveries in any case, with talc recoveries potentially forming part of the collateral that makes the deal possible. Even if this financing is not labeled as "talc funding," it still falls squarely within the Rule because it provides funding for attorneys' fees and litigation expenses on a non-recourse basis. By focusing only on whether it has "talc-specific" funding, and refusing to say whether its talc cases have been pledged as collateral for broader financing, Beasley Allen sidesteps the Rule's actual scope while concealing potentially disclosable arrangements.

19

And it is no answer to say that this sort of funding structure may not constitute "a contingent financial interest based upon the results of the litigation." L.R. 7.1.1(a). If a portfolio-wide loan is made on a non-recourse basis, and Beasley Allen's talc claims are used as collateral for that loan—meaning that those claims are the recourse should Beasley Allen default—then the lender *necessarily* has "a contingent financial interest based upon the results of the litigation," *id.*, in that the lender's recovery is capped at the amount paid on those claims.

In sum, these facts present far more than mere suspicion; they demonstrate a concrete and reasonable basis to believe that Beasley Allen may have undisclosed litigation-funding arrangements falling within Rule 7.1.1, and discovery is necessary to put that question to rest once and for all.

## C. *Rule 7.1.1(c) Provides an Independent Basis for Ordering Litigation Funding Discovery*

Even if the Court were to find that the "good cause" standard in Rule 7.1.1(b) is not met, subsection (c)'s catchall provision still supports discovery here. Rule 7.1.1(c) states: "Nothing herein precludes the Court from ordering such other relief as may be appropriate." This broad grant of discretion allows the Court to authorize discovery outside subsection (b)'s enumerated grounds. The unusual and unexplained circumstances surrounding Beasley Allen—including its financial entanglement with a joint-venture partner that has admitted to litigation funding, its

strategic conduct in the talc bankruptcies, and its evasive, narrow denials—warrant

such relief and a closer examination of its litigation funding arrangements.

Whether under subsection (b) or (c), the Court should (i) reverse the Special

Master's Order, (ii) require all plaintiffs represented by Beasley Allen to submit a

Rule 7.1.1 statement, and (iii) compel Beasley Allen's compliance with Defendants'

subpoena—or at a minimum, conduct an *in camera* review of its responsive

documents.

## II. THE SPECIAL MASTER MISAPPLIED LOCAL RULE 7.1.1 AND ERRONEOUSLY REFUSED TO ORDER DISCLOSURE OR REQUIRE DISCOVERY

The Special Master erred in declining to require Beasley Allen to make the

mandatory disclosure under Local Rule 7.1.1(a) and in concluding that Defendants

had not shown "good cause" under Local Rule 7.1.1(b) to obtain discovery into

Beasley Allen's litigation-funding arrangements. In reaching these conclusion, the

Order imposed an unduly high burden by effectively requiring conclusive proof of

funding before permitting discovery, treated Beasley Allen's narrow and incomplete

denials as dispositive, relied on inapposite precedent that does not fit the facts here,

and disregarded persuasive authority and disclosure rules from other jurisdictions

that recognize the need for such discovery in circumstances like these.

*First*, the Order improperly required what amounts to conclusive proof of

litigation funding before granting discovery. Local Rule 7.1.1(b) requires only a

21

showing of "good cause" to allow discovery—not definitive proof that a responsive arrangement exists. Yet the Order faulted Defendants for not providing "any credible or persuasive evidence that Beasley Allen has any litigation funding arrangement," Special Master Order No. 29 (ECF No. 40778) at 7, and for not giving a "reasonable basis to conclude" that such an arrangement exists, *id.* at 6. This flips the Rule's standard on its head. If definitive proof were already available, there would be no need for discovery at all.

*Second*, the Order treats Beasley Allen's carefully worded, incomplete denials as dispositive, even though they do not actually answer the question Local Rule 7.1.1(a) poses. The Rule requires disclosure when a non-party is "providing funding for some or all of the attorneys' fees and expenses for the litigation on a non-recourse basis." L.R. 7.1.1(a). Yet the Order accepted at face value Andy Birchfield's testimony that Beasley Allen "ha[s] not obtained litigation financing or funding for [its] talc claims," and Leigh O'Dell's statement that "Beasley Allen clients have received no funds from Smith's litigation funding," Special Master Order No. 29 (ECF No. 40778) at 7, without addressing that neither statement denies broader non-recourse financing secured by the firm's overall portfolio—including talc claims. By crediting these narrow statements as "credible or persuasive evidence" disproving funding, *id.* at 7, the Order overlooked that they appear to be crafted to sidestep the Rule's actual scope.

22

*Third*, the Order relies on inapposite authority to justify its deferential approach. It cites *NantWorks, LLC v. Niantic, Inc.*, 2022 WL 1500011, at *2 (N.D. Cal. May 12, 2022), for the proposition that litigation funding agreements are "generally discoverable only when there is a specific, articulated reason to suspect bias or conflicts of interest." But in *NantWorks*, the court denied discovery where the only proffer was a routine certification of interested entities, and there was no case-specific evidence suggesting funder involvement or conflicts. Here, by contrast, Beasley Allen's joint-venture partner has disclosed such funding, Beasley Allen has refused to clarify its own funding status, and the record in this MDL contains multiple instances raising serious questions about incentive alignment. The Order's further attempt to distinguish *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, 2024 WL 4100379 (D.N.J. Sept. 6, 2024), is equally unconvincing. In *MSP Recovery*, discovery was permitted based on documents suggesting funder influence in litigation decisions; here, the same factors—partner disclosure, evasive responses, and questionable litigation conduct—easily meet that standard.

*Fourth*, the Order disregards persuasive authority and disclosure rules from other jurisdictions—including from other district courts in the Third Circuit—that underscore the importance of litigation-funding discovery. Of course, cases from the district court are never "controlling." *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("[T]here is no such thing as 'the law of the

23

district'"). However, rules and cases reflect a nationwide recognition of the importance of litigation-funding discovery and confirm that it is appropriate in circumstances like those presented here.

Understanding the relevance of litigation funding to settlement (and a host of other issues), other courts have also enacted a variety of rules requiring disclosure of third-party litigation financing. *E.g.*, Ex. 12, Patrick A. Tighe, *Survey of Federal and State Disclosures Regarding Litigation Funding*, Advisory Committee on Civil Rules, at 2 (Feb. 7, 2018) (ECF No. 32987-21) (noting that, as of November 2017, roughly 25% of federal district courts "require disclosure of the identify of litigation funders in a civil case"). Indeed, Chief Judge Connolly of the District of Delaware has issued a standing order, modeled on this Court's Rule 7.1.1, requiring disclosure of litigation financing. *Nimitz Techs. LLC v. CNET Media, Inc.*, 2022 WL 17338396, at *3 (D. Del. Nov. 30, 2022) (discussing standing order). Judge Connolly's order—and the discovery that followed in several cases—are a case study on why disclosure of litigation financing is warranted and why additional discovery may be necessitated based on those disclosures.

By requiring parties to comply with his order, including by issuing show cause and contempt orders for noncompliance, Judge Connolly uncovered massive, previously undisclosed litigation financing underlying a docket of cases in his court. *See generally id.* Only through such discovery did it become clear that litigation

financers were in charge of retaining counsel, were making strategic litigation and settlement decisions, and were reaping the vast majority of the benefits from the litigation. *E.g.*, *id.* at *20–22, *25. In other words, the litigation funders—not the named parties—were driving the litigation. *Id.*[5]

In addition to Local Rule 7.1.1 and its counterparts nationwide, courts across the country (including other district courts in the Third Circuit) have found litigation funding documents to be relevant and discoverable under Federal Rule of Civil Procedure 26. *E.g.*, *Hobbs v. Am. Commercial Barge Line LLC*, No. 4:22-cv-00063, 2023 WL 6276068, at *4 (S.D. Ind. Sept. 26, 2023) (finding litigation-related medical funding relevant to settlement evaluation); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018); *Gbarabe v. Chevron Corp.*, No. 14-CV-00173-SI, 2016 WL 4154849, at *2 (N.D. Cal. Aug. 5,

---

[5] Another well-publicized example of the perils of unchecked litigation financing is playing out in district courts in Illinois and Minnesota, where Burford Capital—a litigation financier—derailed settlements reached by the litigation parties in antitrust litigation because it refused to assent to the settlements. *See, e.g.*, Ex. 14, Hailey Konnath, *Burford, Sysco Agree to Drop Litigation Funding Suits*, Law360 (June 28, 2023) (ECF No. 32987-22). Had the litigation funding not been disclosed, defendants would have been left defending cases that plaintiffs no longer wanted to prosecute with no understanding of why the parties were unable to settle. Because the litigation funding was disclosed, however, defendants (and the courts) are now aware of the real parties in interest to the litigation, allowing the litigation to move forward. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8367, 2024 WL 1214568 (N.D. Ill. Mar. 21, 2024) (allowing substitution of Burford Capital entity for Sysco as plaintiff).

2016); *In re Am. Med. Sys., Inc.*, MDL No. 2325, 2016 WL 3077904, at *5 (S.D. W. Va. May 31, 2016) (finding litigation financing relevant to plaintiffs' motivation to undergo medical treatment); *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, No. 05-61225-CIV, 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013); *Nelson v. Millennium Labs., Inc.*, No. 2:12-cv-01301, 2013 WL 11687684, at *6 (D. Ariz. May 17, 2013) (finding litigation financing relevant to assess bias).

Not surprisingly, MDL courts in particular tend to require disclosure of litigation financing information given the prevalence of litigation financing in mass tort litigation. *See* Ex. 13, Case Management Order No. 61 (Third-Party Litigation Funding) (ECF No. 32987-23), *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-02885 (N.D. Fla. Aug. 29, 2023); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 WL 1669444, at *6 (S.D. Fla. Apr. 3, 2020); *In re Nat'l Prescription Opiate Litig.*, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018).

This is all to say, the Order's improper burden of proof, acceptance of evasive denials, reliance on inapposite precedent, and disregard for persuasive authority cannot be squared with the text, purpose, or consistent application of Local Rule 7.1.1.

## III. BEASLEY ALLEN'S OBJECTIONS ARE WITHOUT MERIT.

Finally, Beasley Allen's objections—that Defendants "seek[] irrelevant, privileged information that exceeds the permissible scope of discovery"—are

without merit. *See* Beasley Allen Br. (ECF No. 36608) at 12. Because the Special Master quashed the subpoenas solely on relevance grounds, neither Order No. 25 nor Order No. 29 addressed Beasley Allen's additional objections based on privilege and work product. If the Court reverses on relevance, it should address those remaining objections in the first instance, as none provides a valid basis to sustain the Special Master's ruling.

### A.    *Beasley Allen's Relevance Objection Fails*

As explained *supra* in Section I, Defendants have shown good cause under Rule 7.1.1 and established the relevance of the requested discovery. This information is critical to determining "who is pulling the strings" in this litigation and ensuring that these claims are adjudicated fairly, rather than prolonged to serve the financial interests of undisclosed third-party funders. Beasley Allen's assertion that the requested documents are both "irrelevant" and "non-existent" is nonsensical. Beasley Allen Br. (ECF No. 36608) at 12. If no responsive documents exist, Beasley Allen can so certify under Federal Rule of Civil Procedure 26(g)(1). Its objection as to relevance is, in substance, an attack on Rule 7.1.1 itself—which expressly deems such information relevant. That is not a valid basis to resist production.

### B.    *Litigation Financing Materials Are Not Privileged*

Beasley Allen states that "[t]he only documents (if they existed) that could be produced in response to Request No. 6 are privileged communications that involve

Beasley Allen providing legal advice to its clients." *Id.* at 20. As an initial matter, Defendants expressly carved out any privileged documents from their requests. *See* ECF No. 32845 at 3 (stating Defendants "do not expect privileged communications to be produced, such as communications solely between Beasley Allen or the Smith Law Firm and their clients regarding legal advice"). Again, if there is no communication with litigation funders in existence, Beasley Allen can so certify. But such communications would not be privileged.

In New Jersey, the attorney-client privilege protects confidential communications between an attorney and a client. N.J. R. Evid. 504; *see also Hedden v. Kean University*, 434 N.J. Super. 1, 10 (N.J. Super. Ct. App. Div. 2013) ("Specifically, the attorney-client privilege generally applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client."). But because it "rests in the suppression of the truth[,] the privilege should be strictly construed." *In re Selser*, 15 N.J. 393, 402 (N.J. 1954).

As an initial matter, documents regarding funding do not represent communications in which *legal* advice is sought or communications between attorneys and their *clients*, making the privilege inapplicable. Moreover, even if the privilege applied, it is waived—as here—when a person discloses "any part of the privileged matter or consented to such a disclosure made by anyone." *Stengart v.*

*Loving Care Agency, Inc.*, 201 N.J. 300, 323 (N.J. 2010). And the "common interest" exception does not preserve the privilege because the interest shared is *financial*, not *legal*. *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 69 (D.N.J. 1992) ("A [common interest] exists where different persons or entities have an identical *legal* interest with respect to the subject matter of a communication between an attorney and client concerning *legal* advice. The key consideration is that the nature of the interest must be identical, not similar, *and be legal, not solely commercial*." (cleaned up) (emphasis added)).

As a result, courts routinely hold that litigation funding documents are not protected by the attorney-client privilege. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D 510, 519 (N.D. Ill 2020) (holding litigation funding materials not privileged); *Cobra International*, 2013 WL 11311345, at *3 (holding litigation funding agreement not privileged); *Cohen v. Cohen*, No. 09 Civ. 10230, 2015 WL 745712, at *4 (S.D.N.Y. Jan. 30, 2015) (finding privilege waived in communications with third-party litigation funder and refusing to apply common interest exception); *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 377 (D. Del. 2010) (finding litigation funding documents not privileged due to waiver and refusing to apply the "common interest" exception because the exception requires a common legal, not financial, interest); *see also, e.g.*, *Montgomery Cty. v. MicroVote Corp.*,

29

175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements.").

Because any litigation funding materials requested by the subpoenas (funding agreements, communications, etc.) were necessarily shared with third parties, they are not protected by the attorney-client privilege.

### C.    *Litigation Financing Materials Are Not Work Product*

Nor are the materials sought covered by the work product protection. Work product is governed by Federal Rule of Civil Procedure 26, which protects documents created by or for a party or party's representative in anticipation of litigation. Fed. R. Civ. P. 26 (b)(3). In the Third Circuit, "a court must consider both whether the moving party demonstrates that the documents were created in anticipation of litigation and whether the material was produced because of the prospect of litigation *and for no other purpose*." *Trejo v. All Lynn, LLC*, 344 F.R.D. 8, 11 (D.N.J. 2023) (cleaned up) (emphasis added). Litigation funding documents are not work product because they are "prepared with the primary purpose of obtaining a loan, as opposed to aiding in possible future litigation." *Acceleration Bay*, 2018 WL 798731, at *2. Moreover, when documents are prepared for a litigation funder, which is not a party to the litigation, "the work product protection does not apply." *Id.* And even if the work product protection did apply, the protection may be overcome by a showing of substantial need and undue hardship. Fed. R. Civ.

P. 26(b)(3)(A)(ii). Defendants' substantial need for the materials—to determine the genesis of Beasley Allen's misrepresentations regarding settlement and to understand whether this MDL may be resolved—is set out fully above. There is no other way that Defendants can obtain the information sought other than through the subpoenas at issue. Thus, the work product privilege is not a bar to disclosure.[6]

In sum, none of Beasley Allen's remaining objections—whether based on relevance, privilege or work product—provides a legitimate ground to bar discovery, and the Court should compel production so that the parties and the Court can ensure these claims are adjudicated fairly and free from undue influence by undisclosed third-party funders.

## CONCLUSION

The Court should (i) reverse the Special Master's Order, (ii) require all plaintiffs represented by Beasley Allen to submit a Rule 7.1.1 statement, and (iii) compel Beasley Allen's compliance with Defendants' subpoena. At the bare

---

[6]    Of course, even if the Court were to determine that certain documents within the scope of Defendants' subpoenas could be deemed privileged or protected work product, the appropriate course is not to quash the subpoenas as a whole. Rather, if responsive documents exist that Beasley Allen or others believe merit withholding, they should expeditiously prepare a privilege log describing the withheld documents in sufficient detail for Defendants and the Court to assess the claim. *E.g., R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 Fed. App'x 880, 882 (3d Cir. 2002).

minimum, the Court should conduct an *in camera* review of Beasley Allen's

responsive documents.

Dated:  August 11, 2025

Respectfully submitted,

*/s/ Kristen R. Fournier*
Kristen R. Fournier
Matthew L. Bush
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
kristen.fournier@kirkland.com
matthew.bush@kirkland.com

*/s/ Jessica L. Brennan*
Jessica L. Brennan
**BARNES & THORNBURG LLP**
67 E. Park Place, Suite 1000
Morristown, NJ 07960
Tel.: 973-775-6120
jessica.brennan@btlaw.com

*Attorneys for Defendants Johnson &
Johnson and LLT Management, LLC
(predecessor to Red River Talc LLC)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2025, I electronically filed the foregoing document with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Jessica L. Brennan*

Jessica L. Brennan
