# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (MAS) (RLS) |
| *THIS DOCUMENT RELATES TO ALL CASES* | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON AND LLT MANAGEMENT, LLC'S MOTION FOR PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF DR. BARRY CASTLEMAN**

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ...............................................................................2

LEGAL STANDARD FOR PROTECTIVE ORDER ..............................................6

ARGUMENT .......................................................................................................7

   A.  Defendants Fail to Meet the Rule 26(c) Standard. ..........................................7

   B.  Defendants Are Not Prejudiced by the Timing of Dr. Barry Castleman's Deposition....................................................................................................10

CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Crossley v. Iroquois Foundry Co.,* No. CIV. A. 91-1657, 1992 WL 114956 (E.D. Pa. May 18, 1992) .......................................................................................... 7

*DelPalazzo v. Horizon Grp. Holding, LLC*, No. 19-5682-KSM, 2021 WL 1546229 (E.D. Pa. Apr. 20, 2021) ........................................................... 13

*Doe v. Princeton Univ.,* 349 F.R.D. 92 (D.N.J. 2025) ................................. 6

*EEOC v. Foodcrafters*, No. 03-2796 (RBK), 2005 WL 8176026 (D.N.J. Mar. 3, 2005) ..................................................................................................... 8

*Geness v. Cox*, 902 F.3d 344 (3d Cir. 2018) ............................................. 13

*Holm v. Pollack*, No. 00-CV-2893, 2001 WL 1257728 (E.D. Pa. Oct. 19, 2001) ..... 9

*In re: Valeant Pharmaceuticals International, Inc. Sec. Litig.*, No. 3:15-cv-07658, 2021 WL 3140030 (D.N.J. Jul. 7, 2021) ........................................ 6

*Investment Properties Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705 (2d Cir.1972) .......... 7

*IQVIA, Inc. v. Veeva Systems, Inc.*, No. 2:17-CV-00177-CCC-MF, 2018 WL 11693781 (D.N.J. Nov. 30, 2018) .............................................................. 6

*Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) .................................. 7

*Telford Borough Auth. v. United States Env't Prot. Agency*, No. 12-CV-6548, 2021 WL 5495765 (E.D. Pa. Nov. 23, 2021) ............................................. 13

*Universal Truckload, Inc. v. Bridge*, No. 22-10988, 2023 WL 3309840 (E.D. Mich. May 8, 2023) ........................................................................ 12

*Velazquez v. State Farm Fire and Casualty Co.*, No. 19-3128, 2022 WL 22915065 (E.D. Pa. Nov. 22, 2022) .............................................. 9, 12, 13

*Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs., Inc.,* 2020 WL 6042280 (D.N.J. Oct. 13, 2020) ................................................................ 6

*Whitman v. Proconex, Inc.*, No. 08-2667, 2009 WL 113740 (E.D. Pa. Jan. 14, 2009) ........................................................................................................... 13

**Rules**

Fed. R. Civ. P. 26 ............................................................................... passim

**Treatises**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2037 (3d ed. 1998)................................................................................................................7

Plaintiffs, by and through the Plaintiffs' Steering Committee ("PSC"), submit this memorandum in opposition to Defendants Johnson & Johnson ("J&J") and LLT Management, LLC's (collectively, "Defendants") motion for a protective order precluding the deposition of Dr. Barry Castleman. As outlined below, Defendants' efforts to preclude factual evidence that goes to the heart of relevant issues in this case should not be permitted and the motion should be denied.

Defendants' motion seeking a protective order to preclude the PSC from deposing Dr. Barry Castleman is based on Defendants' mischaracterization of the facts and the law. Plaintiffs seek to depose Dr. Castleman as a *fact witness* based on his previous communications with J&Js senior scientists and the United States Congress regarding safety concerns about asbestos and the purity of J&J's talcum powder. Dr. Castleman's testimony will provide notice evidence because the communications subject to discovery took place in the 1970's. To be clear: the PSC is not offering Dr. Castleman as an expert in this first bellwether trial on any issues of causality or state of art. Dr. Castleman is offered in this MDL as a fact witness only.

Defendants' motion for a protective order is based on a self-serving straw-man argument that the PSC is wrongly seeking to depose Dr. Castleman to obtain

1

expert witness testimony.[1] This is simply not the case. As set forth herein, Dr. Castleman possesses factual and prescient information regarding what (and when) Defendants knew about the presence of asbestos in their talc products, the inherent and undisclosed dangers of their talc products, and the feasibility of safer alternatives.

Defendants' motion misstates the strong presumption against granting protective orders that would prohibit a deposition absent "extraordinary circumstances." In sum, Defendants' motion fails to articulate an adequate factual or legal basis for issuing a protective order that would prohibit the deposition and testimony of Dr. Castleman.

## FACTUAL BACKGROUND

Barry I. Castleman, Sc.D. received a B.E.S. in Chemical Engineering and a M.S.E. in Environmental Engineering from Johns Hopkins University. *See* Castleman Curriculum Vitae, attached hereto as **Exhibit 1**. In the early 1970s, specifically between 1971 and 1975, Dr. Castleman had direct communications with J&J and its scientists about the carcinogenicity of talc, the presence of asbestos in talc, or both. Dr. Castleman first contacted J&J about talc and asbestos in July 1971.

---

[1] Even if Defendants' imagined scenario comes to pass and Dr. Castleman provides some expert testimony during his fact deposition, Defendants' request for a prophylactic protective order would still be misplaced. Instead, in that instance, the appropriate procedure would be for defendants to then file a motion in limine with regard to any such testimony.

2

*See* July 25, 1971, Castleman letter to J&J (JNJ000682902), attached hereto as **Exhibit 2**. Dr. Castleman's initial letter contained several pointed questions regarding talc and asbestos, including: "what would be involved… in removing the asbestos fiber in talc, which (I believe) it naturally occurs?' and "[d]o all talcum powders contain asbestos, and, among those that do, what is the range of tremolite content?" *Id.*

Defendants took specific notice of Dr. Castleman's letter and his scientific credentials, recognizing that Dr. Castleman had "scientific knowledge far beyond the normal type of inquiry [Defendants] have received from the public." *See* July 28, 1971, memo from G.R. Tyrrell to Dr. T.H. Shelley (JNJ000682901), attached hereto as **Exhibit 3**. Dr. Shelley, J&J's Director, Central Research Laboratories, ultimately responded to Dr. Castleman's inquiry by letter dated August 2, 1971. *See* August 2, 1971, letter from Dr. Shelley to Dr. Castleman (JNJ000244828), attached hereto as **Exhibit 4**. In the letter, Dr. Shelley assured Dr. Castleman that "[Defendants] have no asbestos in our baby powder." *Id.* On March 7, 1972, Dr. Steven Sawchuk, J&J's Associate Director of Clinical Research, also wrote Dr. Castleman. Dr. Sawchuk advised that Defendants' talc "comes from our own mines, specifically selected for the quality of their talc. This high-grade talc is processed through repeated 'washings' to free it of impurities. Under careful analysis by independent experts,

3

the finished product has been shown to be free of asbestos." *See* March 7, 1972, letter from Steven Sawchuk to Barry Castleman, attached hereto as **Exhibit 5**.

On August 10, 1972, Dr. Shelley, J&J's Director, Central Research Laboratories, again wrote to Dr. Castleman advising that J&J's Director of Clinical Research, Dr. Hildick-Smith, would be in contact to further address issues raised by Dr. Castleman. *See* August 10, 1972, letter from T.H. Shelley to Barry Castleman, attached hereto as **Exhibit 6**. By letter dated September 19, 1972, Dr. Gavin Hildick-Smith, J&J's Director of Clinical Research, wrote to Dr. Castleman. *See* September 19, 1972 letter from Gavin Hildick-Smith to Barry Castleman (JNJ000261539), attached hereto as **Exhibit 7.** Dr. Hildick-Smith first "express[ed] our appreciation for bringing to our attention your concern about the possibility that talc by itself may be a carcinogen." *Id.* Dr. Hildick-Smith further stated, "at this time we have no reason to believe that talc alone will induce neoplastic changes." *Id.*

Dr. Castleman continued to be actively involved in the issue of whether talc by itself may be carcinogenic. In March 1973, Dr. Castleman wrote a paper call "ASBESTOS AND YOU" and, in and around the same time, he testified before the United States Senate about the safety of talc products. On May 7, 1975, Dr. Castleman was contacted by Dr. Bruce Semple, a J&J scientist. As per Dr. Castleman's notes from the call, attached hereto as **Exhibit 8**, Dr. Semple discredited or tried to explain away studies demonstrating that talc may be carcinogenic.

4

Defendants made these representations in response to Dr. Castleman despite internal memos noting the opposite. *See* April 26, 1973, internal memo (JNJ000294872), attached hereto as **Exhibit 9**, stating:

- "It is our joint position that we should not rely on the 'Clean Mine' approach as a protective device for Baby Powder in the current Asbestos or Asbestos-Form controversy."
- An optical approach for identification of asbestos or asbestos-form materials "with appropriate concentrating techniques will permit a good laboratory to identify asbestos or tremolite in a talc sample."
- "Our Baby Powder contains talc fragments classifiable as fiber. Occasionally sub-trace quantities of tremolite or actinolite are identifiable (Optical Microscope) and these might be classified as asbestos."
- "Cornstarch is obviously another answer. The product by its very nature does not contain fibers."

Defendants have woven a false narrative about Dr. Castleman's purpose in the instant case. Dr. Castleman will testify that he made efforts more than 50 years ago, when he was in his late 20's, to provide notice to J&J of the need to address the serious safety problem of asbestos in talc and the feasibility of a safer alternative. His testimony will provide evidence of Defendants' contemporaneous notice that cosmetic talc not only contained asbestos, but that cornstarch was a safe, viable alternative.

## LEGAL STANDARD FOR PROTECTIVE ORDER

Rule 26 allows that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …." Fed. R. Civ. P. 26(c). *See also IQVIA, Inc. v. Veeva Systems, Inc.*, No. 2:17-CV-00177-CCC-MF, 2018 WL 11693781, *1 (D.N.J. Nov. 30, 2018) (A moving party bears the burden of showing that there is good cause for the protective order); *In re: Valeant Pharmaceuticals International, Inc. Sec. Litig.*, No. 3:15-cv-07658, 2021 WL 3140030, *8 (D.N.J. Jul. 7, 2021) (heavy burden to show good cause for protective order). A movant seeking a Rule 26(c) protective order prohibiting a deposition bears a heavy burden. "[T]he party seeking a protective order must demonstrate 'a particular need for protection.'" *Doe v. Princeton Univ.,* 349 F.R.D. 92, 96 (D.N.J. 2025) (quoting *Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs., Inc.,* 2020 WL 6042280, at *2 (D.N.J. Oct. 13, 2020)).

"Where, as here, the party seeking the protective order seeks to prevent a deposition in its entirety, the movant must show that a clear injustice would occur if the deposition were permitted. Such motions are 'generally regarded as unusual and unfavorable.'" *Crossley v. Iroquois Foundry Co.,* No. CIV. A. 91-1657, 1992 WL 114956, at *2 (E.D. Pa. May 18, 1992) (quoting *Investment Properties Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2d Cir.1972)). *See also Doe,* 349 F.R.D at 96 (noting that a movant must demonstrate that failing to grant the protective order "will cause

6

a clearly defined and serious injury."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2037 (3d ed. 1998) ("It is even more difficult to show grounds for ordering discovery not to be had when it is a deposition that is sought, and most requests of this kind are denied.").

## ARGUMENT

### A. Defendants Fail to Meet the Rule 26(c) Standard.

Defendants' motion falls far short of the "good cause" standard for obtaining a protective order. Defendants have not adequately articulated *any* of the Rule 26 factors -- they do not argue that allowing the deposition would be annoying, embarrassing or oppressive. At best, Defendants' motion is predicated on the argument that allowing the deposition may cause them additional burden and expense, but they do adequately allege that any such burden or expense would be "undue."

In *EEOC v. Foodcrafters*, No. 03-2796 (RBK), 2005 WL 8176026 (D.N.J. Mar. 3, 2005), the court denied a motion for a protective order that sought to preclude a deposition where the moving party failed to meet its burden of showing good cause, noting that the movant would have had to demonstrate "with specificity" that absent

7

the protective order it would suffer a "clearly defined and serious injury." *Id.* at *2. Defendants have not stated a "serious" injury that they will suffer if Dr. Castleman is deposed. Plaintiffs have a strong interest in preserving Dr. Castleman's factual information—what he said, did, and observed in the early to mid-1970's—regarding his communications and interactions with J&J over the undisclosed dangers of talcum powder, the potential for asbestos contamination, and Dr. Castleman's concern regarding the carcinogenicity of Johnsons' Baby Powder ("JBP"). Such information supports Plaintiffs' theories about J&J's knowledge of the dangers of their products, including asbestos contamination. Defendants have failed to articulate that any purported harm outweighs Plaintiffs' interests here. Accordingly, Defendants have not satisfied the Rule 26(c) standard.

"With the heavy burden of persuasion borne by the party seeking a protective order, it is rare for a court to issue a protective order that prohibits the taking of a deposition." *Holm v. Pollack*, No. 00-CV-2893, 2001 WL 1257728, at *2 (E.D. Pa. Oct. 19, 2001) (citations omitted). *See also*, *id.* at *2-*4 (denying a protective order seeking to preclude the deposition of defendant's spouse because doing so would hamper plaintiff's ability to rebut defendant's allegations); *Velazquez v. State Farm Fire and Casualty Co.*, No. 19-3128, 2022 WL 22915065, *1 n.1 (E.D. Pa. Nov. 22, 2022) (defendants' motion for protective order to preclude deposition denied where

8

the potential harm to defendants was outweighed by the plaintiffs' need to re-depose the corporate designee).

In recognition of the failure to meet the Rule 26(c) show cause standard, Defendants pivot their main focus, arguing that Dr. Castleman is being offered as an expert witness, not a fact witness. However, the PSC has made clear that Dr. Castleman is not being offered as an expert in the first MDL bellwether trial. Defendants' bluster and efforts to suggest the PSC is "rebranding "Dr. Castleman in this MDL for purposes of sidestepping the Court's Rule 702 function is simply not factual and disingenuous. *See* Defs.' Mem. at 1.

The August 6, 2025 Notice of Videotaped Deposition seeks Dr. Castleman's testimony as a factual witness. However, without sound basis Defendants argue the PSC is "attempting" to "evade the expert disclosure requirements and this Court's gatekeeping function." Defs.' Mem. at 5. On this basis, Defendants urge this court to view Dr. Castleman as an expert witness, despite the PSC's clear position that Dr. Castleman will be offered only as a fact witness in the first MDL bellwether trial.

It is irrelevant that Dr. Castleman has been an expert in asbestos litigation in other jurisdictions. The Plaintiffs in *this* case are seeking to depose him as a fact witness, as to his own communications and interactions with Defendants regarding asbestos and talc. Dr. Castleman has not been identified as an expert witness, nor is he being offered to testify as an expert witness in the first MDL bellwether trial. The

9

fact that Dr. Castleman may possess some "expert" knowledge does not preclude the PSC from identifying him as a fact witness regarding his own interactions with the Defendants.

Aside from attempts to exclude Dr. Castleman's testimony as a fact witness, Defendants unpersuasively argue that his factual testimony is irrelevant. This is a veiled effort to conceal critical safety information that had been known to J&J for decades. Defendants describe his testimony as irrelevant because it is "decades-old correspondence". Importantly, the correspondence between Dr. Castleman and J&J reveals the extent of J&J's awareness of asbestos dangers in their talc products. This is critical knowledge known that was withheld by J&J for decades.

If Defendants' true concern is that Dr. Castleman will provide untimely expert testimony at this deposition, the federal rules provide appropriate tools to address that potential "harm", such as filing motions *in limine*. A protective order is not the appropriate relief.

### B.     Defendants Are Not Prejudiced by the Timing of Dr. Barry Castleman's Deposition.

Defendants argue the deposition of Dr. Castleman is untimely. Defendants fail to demonstrate that they will suffer any "annoyance, embarrassment, oppression, or undue burden or expense" should Dr. Castleman's deposition go forward. *See* Fed. R. Civ. P. 26(c). Currently, there is no trial date set for the recently selected bellwether case (*Judkins*). The pretrial conference is scheduled for November 5,

10

2025. Witness lists and deposition designations have not been exchanged, and Dr. Castleman can still be identified as a testifying fact witness. There is no demonstrated prejudice for permitting the limited factual deposition of Dr. Castleman to preserve his testimony.

Defendants' timeliness argument fails to establish that a protective order is appropriate here. Defendants have not satisfied their burden of showing good cause. Courts require more than an assertion that discovery requests are untimely. In *Velazquez*, defendants sought a protective order, in part, based on the untimeliness of discovery requests filed after the discovery deadline. However, the court denied the protective order because, though the discovery requests were "seemingly untimely," they were "nevertheless relevant and not unduly burdensome." *Velazquez*, 2022 WL 22915065, at *1 n.1. Defendants must provide a substantive argument to demonstrate good cause. *See Universal Truckload, Inc. v. Bridge*, No. 22-10988, 2023 WL 3309840, *4 (E.D. Mich. May 8, 2023) (denying defendant's motion for protective order after finding defendant's arguments were based on timeliness and procedural defect, with "no arguments on the substance of the good cause standard.").

In support of their timeliness arguments, Defendants cite *Whitman v. Proconex, Inc.*, No. 08-2667, 2009 WL 113740 (E.D. Pa. Jan. 14, 2009). This case is not applicable. *Whitman* involved defendant's motion to compel regarding

11

documents, whereas here, Plaintiffs are seeking to depose a witness. "[I]t is rare for a court to issue a protective order that prohibits the taking of a deposition." *Velazquez*, 2022 WL 22915065, at *1 n.1. *DelPalazzo v. Horizon Grp. Holding, LLC*, No. 19-5682-KSM, 2021 WL 1546229 (E.D. Pa. Apr. 20, 2021), cited by Defendants in support of their position, is also distinguishable. *DelPalazzo* involved multiple orders extending discovery deadlines that the parties allowed to expire. On the final day of discovery, the *DelPalazzo* plaintiffs served ***initial*** written discovery and noticed several depositions, including a corporate designee, and the defendant sought a protective order from the discovery. *Id.* at *1.² The court granted the protective order, holding that the plaintiff's counsel had previously been reprimanded by the court for "failing to diligently, competently, and zealously prosecute" his client's action. *Id.* at *3. Here, there is no history of Plaintiffs' counsel failing to zealously represent their clients or diligently and timely prosecuting this case.

---

²     Similarly, in *Geness v. Cox*, 902 F.3d 344 (3d Cir. 2018), plaintiff sought to depose the defendant after the close of discovery and the filing of defendant's summary judgment motion. Although the court did grant a protective order, it did so because plaintiff sought to depose a party witness. In contrast, the PSC is seeking the deposition of a non-party fact witness. *Telford Borough Auth. v. United States Env't Prot. Agency*, No. 12-CV-6548, 2021 WL 5495765 (E.D. Pa. Nov. 23, 2021), is also distinguishable, granting a protective order only where plaintiffs had issued multiple untimely discovery requests that also exceeded the scope of authorized discovery.

12

## CONCLUSION

For the above stated reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Protective Order Precluding the Deposition of Dr. Barry I. Castleman.

Dated: September 29, 2025  Respectfully submitted,

*s/ Michelle A. Parfitt*
Michelle A. Parfitt
ASHCRAFT & GEREL, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006
Tel: 202-335-2600
mparfitt@ashcraftlaw.com
***Plaintiffs' Co-Lead Counsel***

*s/ P. Leigh O'Dell*
P. Leigh O'Dell
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce St.
Montgomery, AL 36104
Tel: 334-269-2343
leigh.odell@beasleyallen.com
***Plaintiffs' Co-Lead Counsel***

*s/ Christopher M. Placitella*
Christopher M. Placitella
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Ave.
Red Bank, NJ 07701
Tel: 732-747-9003
clpacitella@cprlaw.com
***Plaintiffs' Liaison Counsel***

13

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.

Respectfully submitted,

*s/ Michelle A. Parfitt*
Michelle A. Parfitt