# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS |

**DEFENDANTS JOHNSON & JOHNSON AND LLT MANAGEMENT, LLC'S REPLY BRIEF IN SUPPORT OF THE MOTION FOR PROTECTIVE ORDER PRECLUDING <u>THE DEPOSITION OF DR. BARRY I. CASTLEMAN</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

CONCLUSION ..................................................................................................................... 4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beautyman v. Laurent*,
   829 F. App'x 581 (3d Cir. 2020) ................................................................................2

*Gunter v. Drexel Univ.*,
   No. 2:24-CV-01443-JDW, 2024 WL 3403128 (E.D. Pa. July 12, 2024) ..................2

*Pettyjohn v. Goodyear Tire & Rubber Co.*,
   No. CIV. A. 91-2681, 1992 WL 168085 (E.D. Pa. July 9, 1992) .............................2

*Poulis v. State Farm Fire & Cas. Co.*,
   747 F.2d 863 (3d Cir. 1984) ......................................................................................3

*Sikkelee v. Precision Airmotive Corp.*,
   522 F. Supp. 3d 120 (M.D. Pa. 2021) ...................................................................2, 3

**Rules**

Fed. R. Civ. P. 16 ............................................................................................................1, 2

Fed. R. Civ. P. 26 ...............................................................................................................2

Fed. R. Evid. 702 ...............................................................................................................4

## INTRODUCTION

If discovery deadlines are not enforced, then there is no point in even having them. Plaintiffs gave no reason whatsoever why they are seeking to depose Dr. Castleman *now* or why they could not have deposed him during the discovery period. Instead, they try to shift the burden onto Defendants for insisting that this Court's deadlines mean what they say. This turns the Federal Rules on their head. Instead of moving under Rule 16(b) and demonstrating good cause to reopen discovery, Plaintiffs ask the Court to simply disregard its own scheduling orders for no reason. Regardless of whether Dr. Castleman is best considered a fact or an expert witness, *both* fact and expert discovery closed years ago. Yet Plaintiffs never address their violation of the discovery deadlines.

Nevertheless, Plaintiffs' goal here is to introduce Dr. Castleman's testimony—an individual consistently designated as an expert in asbestos litigation—under the pretense of a "fact" witness. Yet Plaintiffs assert only that "Dr. Castleman is not being offered as an expert in the *first* bellwether trial," Resp. Br. at 9 (emphasis added), but that phrasing is telling. By limiting their statement to the first trial, Plaintiffs leave open the possibility of attempting to designate him as an expert in later MDL proceedings. Expert discovery and *Daubert* motion deadlines have already closed, and this Court should make clear that Plaintiffs cannot later designate Dr. Castleman as an expert in this MDL *at any stage*.

Allowing this late deposition would prejudice Defendants as we prepare for the first bellwether trial, forcing us to divert resources to re-litigate issues that we thought had long been closed. There is no prejudice in denying Plaintiffs' request either. Deadlines matter, and Plaintiffs cannot rewrite the rules simply because they regret their earlier strategic decisions.

# ARGUMENT

As a threshold matter, Plaintiffs never sought leave of Court to conduct discovery beyond the deadlines that have long since expired. To make matters worse, their response brief does not even acknowledge that they are attempting to take a deposition years after fact and expert discovery closed, let alone offer any explanation or justification for doing so. This is a blatant disregard of both the Court's scheduling orders and the procedural requirements for seeking post-deadline discovery. *See Pettyjohn v. Goodyear Tire & Rubber Co.*, No. CIV. A. 91-2681, 1992 WL 168085, at *2 (E.D. Pa. July 9, 1992) ("By pursuing discovery after the discovery deadline, plaintiff's are in clear violation of Fed. R. Civ. P. 16(b)(3)."). Indeed, "[d]eadlines apply, even to busy lawyers, and the people who drafted the Federal Rules of Civil Procedure are lawyers who know this." *Gunter v. Drexel Univ.*, No. 2:24-CV-01443-JDW, 2024 WL 3403128, at *1 (E.D. Pa. July 12, 2024). The complete absence of any legitimate justification for the untimely deposition notice amply supports the entry of a protective order.

What is more, Plaintiffs incorrectly assert that Defendants have not argued good cause to preclude the deposition under Rule 26(c). But untimeliness alone is good cause. As the numerous opinions cited in the opening brief provide, courts consistently hold that attempting to reopen discovery after deadlines have passed is itself sufficient to justify a protective order. And additional cases support that proposition as well. *See, e.g.*, *Beautyman v. Laurent*, 829 F. App'x 581, 585 (3d Cir. 2020) (holding district court did not abuse its discretion in finding good cause satisfied "where the discovery requests were 'served' more than eight months after discovery had closed"). This is because "parties have no right to take a deposition after the close of discovery." *Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 163 (M.D. Pa. 2021). Rather, "parties must seek

2

permission from the Court prior to conducting an untimely deposition to which the opposing party objects—this course of conduct has been the universal practice before this Court[.]" *Id.*

That principle applies with particular force here, where fact discovery closed in May 2021, expert discovery closed in July 2024, and the first bellwether trials are scheduled to begin in a few months. Plaintiffs offer no reason—*none*—to justify their untimeliness. Dr. Castleman is not some newly discovered witness. Plaintiffs have long been aware of Dr. Castleman—a long time asbestos expert—and his letters and had every opportunity to depose him before the May 2021 fact discovery deadline. Thus, it would be manifestly unfair and prejudicial to allow Plaintiffs to inject a new witness at this late stage, forcing Defendants to divert resources and re-litigate issues long since closed. "Time limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Untimeliness is good cause in itself—but it is especially so here, on the eve of bellwether trials in the largest MDL in the country.

Moreover, contrary to their assertions, it is plain from Plaintiffs' response that they seek expert opinion from Dr. Castleman. In describing his expected testimony, Plaintiffs state: "Dr. Castleman continued to be actively involved in the issue of whether talc by itself may be carcinogenic. In March 1973, Dr. Castleman wrote a paper call 'ASBESTOS AND YOU' and, in and around the same time, he testified before the United States Senate about the safety of talc products." Resp. Br. at 4. Dr. Castleman's articles and congressional testimony on the safety of talc is an expert issue. Plaintiffs also want Dr. Castleman to address "the feasibility of a safer alternative," *id.* at 5, unquestionably expert testimony. And Plaintiffs want Dr. Castleman to state that J&J employees "discredited" certain studies, which is inexorably intertwined with expert opinion. *Id.* at 4.

3

At bottom, Plaintiffs' asserted need for "notice" testimony does not justify reopening discovery. Dr. Castleman had no firsthand knowledge regarding alleged presence of asbestos in talc or alleged dangers of talc. He was simply a graduate student at the time, who exchanged a handful of letters with Johnson & Johnson in the 1970s, asking questions rather than providing substantive information. Moreover, Plaintiffs have the letters Dr. Castleman wrote, and so do not need his testimony for any other purpose than to attempt to try to sneak in expert opinion—and in a way that avoids this Court's Rule 702 gatekeeping function.

To conclude, Plaintiffs' deposition notice is untimely, unnecessary, and unfair, and the Court should not allow discovery rules to be rewritten on the eve of trial.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion and enter a protective order precluding the deposition of Dr. Castleman.

Dated: October 6, 2025	Respectfully submitted,

*/s/ Kristen R. Fournier*
Kristen R. Fournier
Matthew L. Bush
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
kristen.fournier@kirkland.com
matthew.bush@kirkland.com


*/s/ Jessica L. Brennan*
Jessica L. Brennan
**BARNES & THORNBURG LLP**
67 E. Park Place, Suite 1000
Morristown, NJ 07960
Tel.: 973-775-6120
jessica.brennan@btlaw.com

*Attorneys for Defendants Johnson & Johnson and LLT Management, LLC (predecessor to Red River Talc LLC)*

5

## CERTIFICATE OF SERVICE

      I hereby certify that on October 6, 2025, I electronically filed the foregoing document with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Jessica L. Brennan*
Jessica L. Brennan
