**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2738<br><br>Civil Action No. 16-2738 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Johnson & Johnson ("J&J") and LLT Management, LLC's (collectively, "Defendants") objections to two rulings by the Special Master: (1) Order No. 24 (the "Inspection Order," ECF No. 32826) denying Defendants' motion to compel an inspection of Dr. William Longo's ("Dr. Longo") laboratory (ECF No. 32872); and (2) Order No. 26 (the "Deposition Order," ECF No. 33067) partially denying Defendants' motion to compel further deposition testimony from Paul Hess ("Hess") (ECF No. 33103). The Plaintiffs' Steering Committee ("PSC") opposed both objections (ECF Nos. 32992, 33227),[1] and Defendants replied (ECF Nos. 33035, 33268). After careful consideration of the parties' submissions, the Court resolves the objections without oral argument pursuant to Federal Rule of Civil Procedure 78(b)[2] and Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' objection to the Inspection Order is overruled, and Defendants' objection to the Deposition Order is sustained. The Court therefore affirms the Inspection Order, and vacates and reverses the Deposition Order.

---

[1] Hess also filed a nonparty response to Defendants' objection to the Deposition Order. (ECF No. 33228.)

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

I.   **BACKGROUND**

The two disputes arise from the proffered expert testimony of Dr. Longo, a putative materials science expert who opines on behalf of the PSC that Defendants' talc products—including Johnson's Baby Powder—contain asbestos.[3] (*See* Fourth Suppl. Rep. 3-8, 11-15, ECF No. 32992-1; PSC Opp'n to Defs.' Inspection Order Obj. Br. 1, ECF No. 32992.) Because the parties are well acquainted with the facts underlying this Multidistrict Litigation ("MDL"), the Court recites only the facts necessary to resolve the present objections.

   A.   **Special Master Order No. 24 (Denying Inspection of Dr. Longo's Laboratory)**

Dr. Longo has issued several expert reports in this MDL analyzing Defendants' talc products for asbestos using transmission electron microscope ("TEM") and polarized light microscopy ("PLM"). (*See, e.g.*, Second Suppl. Rep., ECF No. 9902; Fourth Suppl. Rep.) In 2020, the Court excluded Dr. Longo's expert opinions that were based on PLM as unreliable, in part because the PLM methodology Dr. Longo employed "was replete with subjectivity and reproducibility problems."[4] *In re J&J*, 509 F. Supp. 3d at 155 (D.N.J. 2020) ("*In re J&J*"). The Court, however, found that Dr. Longo's opinions regarding the results of his TEM analysis were reliable and admissible. *Id.* at 147.

---

[3] Defendants have independently moved to exclude the opinions of Dr. Longo under Rule 702. (*See* Defs.' Mot. to Exclude Pls.' Experts' Asbestos-related Opinions, ECF No. 33012.) That motion is still pending before this Court. While Defendants raise issues regarding the admissibility of Dr. Longo's expert opinions in their briefing on the instant objections, (*see* Defs.' Inspection Order Obj. Br. 1, ECF No. 32872-1 (arguing that "Dr. Longo's opinions regarding alleged chrysotile contamination in Johnson's Baby Powder should be excluded")), the Court declines to address these arguments at this time. The Court will address the admissibility of Dr. Longo's opinions when adjudicating Defendants' pending Rule 702 Motion.

[4] The Court also excluded Dr. Longo's testimony "to the extent he . . . opines on the exposure of talc users to asbestos." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. and Prods. Liab. Litig.*, 509 F.3d 116, 148 (D.N.J. 2020) ("*In re J&J*").

After the Court's ruling, Dr. Longo began using a new PLM methodology and tested additional samples of Defendants' talc products for asbestos. (*See* Fourth Suppl. Rep. 1.) Dr. Longo issued a supplemental expert report, concluding that the additional samples he tested using the new PLM methodology contain "chrysotile" asbestos. (*See id.* at 2-8, 11-14.) Defendants challenge Dr. Longo's expert methodology and supplemental expert report on various grounds. (*See* Defs.' Mot. to Exclude Pls.' Experts' Asbestos-related Opinions.) Among other objections, Defendants contend that the material Dr. Longo identifies as "chrysotile" in his report is in fact talc. (Defs.' Inspection Order Obj. Br. 2.) According to Defendants, "[t]alc should appear a pale yellow, and chrysotile asbestos should appear purple," when coated in a particular oil and analyzed under a microscope. (*Id.*) Defendants further argue that while Dr. Longo reports that certain particles appeared "purple" under his microscope, the images in his report depict particles that appear "plainly yellow." (*Id.*)

Dr. Longo was deposed in this MDL, as well as in other cases, by Defendants. When asked about the alleged color discrepancies and his PLM analysis, Dr. Longo testified that he would need to view the particles directly through the microscope in order to confirm their colors and compare them to the images in his report. (*See, e.g.*, Longo Valadez Dep. Tr. at 55:17-56:14, ECF No. 32872-14 ("I'd have to be looking in the microscope at it to tell you what that is."); *id.* at 64:13-20 ("I'd have to be sitting at the PLM scope" to answer whether a yellow "chrysotile" particle was purple.); *id.* at 67:2-17 ("I'm not looking in a microscope. I can't answer it anymore and help you out here.").) Dr. Longo also acknowledged that his assistant, Hess, performed the PLM analyses at issue. (104 Hrg. Tr. at 44:18-20, ECF No. 32872-32; *see also* Order No. 23 at 2, ECF No. 32817 ("Hess, not Longo, did the microscopic analysis required under the PLM methodology."); PSC

3

Opp'n to Defs.' Dep. Order Obj. 3, ECF No. 33227 (acknowledging that "Hess performed the PLM analyses that are used in Dr. Longo's expert reports.").)

Defendants thereafter moved for an order compelling the inspection of Dr. Longo's laboratory, Material Analytical Services, LLC ("MAS"), which included a request to observe Dr. Longo's PLM testing in real time. (Defs.' Mot. to Compel Inspection, ECF No. 32227.) Specifically, Defendants sought to: (1) inspect all PLM microscopes used by MAS in its analysis of the materials referenced in Defendants' Requests For Production Nos. 20-24; (2) observe MAS's methodology for preparing those materials for PLM analysis, including the real-time preparation of samples of Johnson's Baby Powder; and (3) observe MAS's methodology for analyzing those materials by PLM, including the real-time observation of MAS's analyses of samples of Johnson's Baby Powder, and the contemporaneous use of the same PLM equipment by Defendants' experts. (*Id.*)

Defendants argued that their experts could only verify the accuracy and reliability of Dr. Longo's analysis by observing him perform his PLM testing, and by standing "side-by-side" in the laboratory. (Defs.' Inspection Order Obj. Br. 1.) The Special Master denied the request as "unduly annoying, oppressive, [] burdensome, and [] disproportionate to the needs of the case." (Inspection Order 4, ECF No. 32826.) Defendants subsequently filed the instant objection to the Inspection Order. (ECF No. 32872.)

### B.     Special Master Order No. 26 (Partially Denying Continued Deposition of Hess)

Almost contemporaneously with Defendants' request to inspect Dr. Longo's laboratory, Defendants sought to depose Hess, a non-testifying expert who performed the PLM tests at issue.[5] (ECF No. 32037; *see* PSC Opp'n to Defs.' Dep. Order Obj. 3.) The PSC moved to quash the subpoena, or in the alternative, for a protective order regarding the subpoena directed at Hess. (PSC Mot. to Quash 1, ECF No. 32195.) The Special Master denied the PSC's motion and ordered that Hess be deposed, in part because "Hess has exclusive firsthand knowledge relevant to [Dr.] Longo's opinions about a critical issue in this MDL." (Order No. 23 at 6-7.) The Special Master also noted that "Hess is important because Hess, not Longo, is the analyst that conducted the PLM tests that support Longo's opinions" and "Hess, not Longo, did the microscopic analysis required under the PLM methodology." (*Id.* at 2.) The Special Master further noted that he had denied Defendants' motion to compel the inspection of Dr. Longo's laboratory in part because he was compelling Hess's deposition, which should "fill in the gaps from [Dr.] Longo's deposition." (Inspection Order 8.)

Hess was deposed on July 10, 2024. (*See generally* Hess Dep. Tr., ECF No. 32993-3.) Early in the deposition, however, a dispute arose between the parties regarding the appropriate scope of the deposition. (*See id.* at 28:24-29:17.) Specifically, Defendants' counsel sought to question Hess about the expert report that Dr. Longo authored in 2019 in this MDL. (*Id.* at

---

[5] Prior to Defendants' instant objections, the parties did not dispute that Hess qualified as a "non-testifying expert" for the purposes of this litigation. (*See* PSC Mot. to Quash 5-8, ECF No. 32195-1 (stating that Hess is a "non-testifying" expert witness who was employed by MAS until 2023).) In opposing Defendants' objection to the Deposition Order, however, the PSC shifted its position and asserted that Hess should be treated as a "fact witness." (*See* PSC Opp'n to Defs.' Dep. Order Obj. 6, 22, ECF No. 33227.) Because the PSC previously represented to the Court that Hess is a non-testifying expert, and the Special Master relied on that representation in finding that Hess is a non-testifying expert, (*see* Order No. 23 at 2), the Court similarly finds that Hess qualifies as a non-testifying expert for the purposes of this Memorandum Opinion.

22:22-23:3.) Counsel for Hess and the PSC, however, objected to such questioning as outside the scope of the deposition. (*See id.* at 34:9-24 (contending that it was "not fair" for "[D]efendants to try to . . . replow [the] 2019 round" of expert testimony challenges).) The parties contacted the Special Master via telephone conference to resolve the dispute, and the Special Master determined that the deposition would be limited to Hess's "personal observations regarding the new test" employed by Dr. Longo. (Hess Dep. Tr. at 43:13-15.) Specifically, the Special Master ruled:

> The purpose of this deposition is to ask [Hess] about his personal observations regarding the new test; that's what was in defendant's papers. They didn't say anything about asking him to compare old to new. That's my ruling . . . Hess is only going to testify about his personal observations.

(*Id.* at 43:13-44:2.)

The Special Master further directed counsel to instruct Hess "not to answer" any questions that were beyond this circumscribed scope of questioning. (*See id.* at 43:18-22 ("If the [plaintiffs] think the questioning is going out of those boundaries, instruct the witness not to answer. We'll look at the transcript and we'll make a ruling on a more fulsome record[.]").) Accordingly, during the five-hour deposition, PSC counsel instructed Hess not to answer more than forty questions. (*See generally id.*) Defendants thereafter moved to compel further deposition testimony from Hess. (ECF No. 32993.) The Special Master largely denied the motion, finding that counsel's instructions to Hess not to answer most questions were proper. (*See generally* Dep. Order.) Defendants subsequently appealed the Deposition Order. (ECF No. 33103.)

## II.   LEGAL STANDARD

### A.   Discovery

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding any nonprivileged matter relevant to a claim or defense, provided that the discovery is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). In assessing proportionality, courts consider

6

the importance of the issues at stake, the amount in controversy, the parties' relative access to the information, their resources, the importance of the discovery to resolving the issues, and whether the burden or expense outweighs its likely benefit. *Id.*

The scope of discovery is within the sound discretion of the trial court, and the Court has broad discretion over discovery matters. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1034 (3d Cir. 1997); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1213 (3d Cir. 1984). Courts may deny discovery that is unreasonably cumulative, duplicative, or obtainable from a more convenient source. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Discovery that imposes undue burden or expense is likewise subject to restriction. Fed. R. Civ. P. 26(b)(2)(C).

### B.  Review of the Special Master's Orders

In accordance with the Federal Rules of Civil Procedure and the orders of this Court appointing the Special Master in this MDL, the Court reviews the Special Master's factual findings and legal conclusions de novo, while procedural rulings are set aside only for abuse of discretion. (*See* Order Appointing Special Master 3, ECF No. 704); Fed. R. Civ. P. 53(f).

Courts determine whether rulings on discovery disputes are "procedural" or otherwise involve "factual findings and legal conclusions" on a case-by-case basis. *See In re Lincoln Nat'l COI Litig.*, No. 16-6605, 2019 WL 3940912, at *2 (E.D. Pa. Aug. 21, 2019) (collecting cases where courts have applied different review standards based on the nature of the discovery dispute). Because the present objections implicate underlying legal issues—namely, whether Dr. Longo's testing warrants live observation by opposing experts, and whether Hess's deposition was improperly curtailed—the Court finds that the instant disputes are not purely procedural matters and applies a de novo review. See *Arconic Corp. v. Novelis Inc.*, No. 17-1434, 2021 WL 4479489,

7

at *1 (W.D. Pa. Sep. 30, 2021) (applying a de novo standard of review "in the exercise of caution" where the dispute arose "in the context of discovery, but implicate[d] an underlying question of law"); *Callwave Comms. LLC v. AT&T Mobility LLC*, No. 12-1701, 2016 WL 3450736, at *1 (D. Del. June 16, 2016) (applying a de novo review to a special master's resolution of attorney-client privilege issues during discovery); *In re Lincoln Nat'l COI Litig.*, 2019 WL 3940912, at *2 (applying a de novo review to a special master's findings "[g]iven the nature of the discovery dispute").

### III. DISCUSSION

The Court first addresses Defendants' objection to the Inspection Order, and then turns to Defendants' objection to the Deposition Order.

#### A. The Special Master Did Not Err in Denying the Inspection of Dr. Longo's Laboratory

Defendants argue that the Special Master erred in denying their request to inspect Dr. Longo's laboratory and to observe his methodology in real time for two reasons: (1) Dr. Longo's methodology amounts to "destructive testing" and therefore warrants live observation; and (2) the real-time observation of Dr. Longo's methodology is "critical" to Defendants' arguments regarding the admissibility of Dr. Longo's expert testimony. (*See* Defs.' Inspection Order Obj. Br. 8-9.) The PSC counters that: (1) Dr. Longo's testing is not destructive; (2) Defendants' request is overbroad and burdensome; and (3) Defendants can challenge Dr. Longo's methodology through other means short of live observation. (PSC Opp'n to Defs.' Inspection Order Obj. Br. 14, 20, 26.) The Court agrees with the PSC.

Under Rule 34(a)(1)(B), a litigant may request that the opposing party produce "tangible things" that are "in the responding party's possession, custody, or control" for inspection, testing, copying, or sampling. Fed. R. Civ. P. 34(a)(1)(B). Rule 37(a)(3)(B)(iv) allows a party to file a

motion to compel if the opposing party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The determination of "whether to allow testing, including destructive testing, falls within the sound discretion of the court." *Krekstein v. McDonald's Corp.*, 341 F.R.D. 575, 577-78 (E.D. Pa. 2022) (citations omitted). "If the parties differ as to whether an inspection or test is appropriate, 'the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.'" *Id.* (citations omitted).

District courts have approached this balancing in different ways. Some courts have employed a four-factor test to evaluate whether the requested destructive testing is appropriate. *See, e.g., Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 614 (D. Md. 2006). Others have declined to apply this framework where "the testing at issue would not result in a situation where an object would be wholly consumed or destroyed," and have instead elected to "balance the parties' competing interests." *Krekstein*, 341 F.R.D. at 575, 578 (citing cases); *see also Hunley v. Glencore Ltd., Inc.*, No. 10-455, 2013 WL 1681836, at *3 (E.D. Tenn. Apr. 17, 2013) (considering the relevance of the requested testing and prejudice to the parties in evaluating the request for testing that was not truly "destructive").

Here, Defendants contend that Dr. Longo's methodology is destructive because the specific talc particles that Dr. Longo analyzed "were placed on slides which degrade[d] and were then discarded." (Defs.' Inspection Order Obj. Br. 31.) Defendants, however, do not dispute that additional powder from the same containers are available for testing, nor do they argue that the containers of Johnson's Baby Powder were wholly destroyed. (*Id.* at 8 (arguing that "[i]t is not relevant that other talc particles from the same container may exist" when assessing whether Dr.

9

Longo's test is "destructive"); *id.* at 31 (emphasis omitted) (acknowledging that "other talc from the same container may exist").). Because no object central to the litigation is "wholly consumed or destroyed," the Court finds that Dr. Longo's testing "is not 'destructive testing' in its classic form." *Hunley*, 2013 WL 1681836, at *3.

Accordingly, the Court evaluates Defendants' request by weighing "the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Scruggs*, 278 F.R.D. at 700; *Hunley*, 2013 WL 1681836, at *3 (applying this standard to assess request that was not "truly destructive testing"); *see Mirchandani*, 235 F.R.D. at 616 (concluding that when discovery implicates expert testing, "the guiding principle is whether the proposed discovery meaningfully advances the truth-seeking function in a manner proportionate to its costs"). Applying that standard here, the Court finds that the burdens associated with the requested inspection outweigh its potential benefit.

### 1.  *The Proposed Inspection May Yield Some Additional Insight*

The Court begins by assessing the degree to which the requested inspection would aid Defendants' "search for [the] truth." *Scruggs*, 278 F.R.D. at 700.

Dr. Longo opines that samples of Johnson's Baby Powder contain chrysotile asbestos. (*See generally* Fourth Suppl. Rep.) His reports contain extensive images of the particles he analyzed, including how they appeared under his laboratory's microscope during PLM testing. (*See, e.g.*, Second Suppl. Rep.; Fourth Suppl. Rep.; ECF Nos. 9902-1, 9902-2.) Defendants dispute the accuracy of Dr. Longo's conclusions, including the colors of the particles that he observed under the microscope. (*See generally* Defs.' Inspection Order Obj. Br.) Defendants therefore assert that observing Dr. Longo's methodology in real time is "critical" because their experts must be able to "look[] live down [Dr. Longo's] microscope" to evaluate the accuracy and reliability of Dr. Longo's opinions under Rule 702. (Defs.' Inspection Order Obj. Br. 21, 35.)

The Court acknowledges Defendants' contention that a live inspection would enable them to confirm whether the images included in Dr. Longo's reports accurately reflect what Dr. Longo observed under his microscope, and agrees that such a live observation may aid Defendants in their "search for [the] truth." *Scruggs*, 278 F.R.D. at 700; (*see* Defs.' Inspection Order Obj. Br. 4-6 (emphasis omitted) (arguing that a live inspection would allow Defendants to confirm or rebut Dr. Longo's alleged testimony that "one must be physically at his lab's microscope looking at a particle in real time to see its true color")). The Court, however, finds that any such additional insight would likely be of limited significance where Defendants can sufficiently, and already do, make their point about the purported color discrepancies by relying on the images from Dr. Longo's reports alone. For example, in challenging the accuracy of Dr. Longo's opinions, Defendants argue that "everyone can clearly see with their own two eyes" that Dr. Longo's pictures depict yellow particles that he identified as purple. (Defs.' Inspection Order Obj. Br. 4; *see also id.* at 2 (contending that Dr. Longo "calls the particle . . . purple . . . even though it is plainly yellow"); *id.* at 29 (arguing that Dr. Longo looks "at particles that everyone with their own two eyes can see are yellow yet claim[s] they are, in fact, purple").) Accordingly, the Court finds that Defendants' proposed inspection may yield some, though not substantial, additional insight into Dr. Longo's proffered PLM methodology.

### 2. *Defendants' Request is Highly Burdensome and Prejudicial to the PSC*

The Court next considers whether the burdens created by the proposed inspection outweigh "the degree to which the proposed inspection will aid in the search for truth[.]" *Krekstein*, 341 F.R.D. at 578.

Defendants seek to inspect all PLM microscopes used by MAS, observe MAS's methodology for preparing and analyzing samples for PLM testing in real time, and permit their

11

experts to conduct contemporaneous, real-time observations of the samples using the same PLM equipment used by MAS. (Defs.' Mot. to Compel Inspection 1-2.)

The PSC argues that Defendants' request "would significantly burden Dr. Longo and MAS" because the preparation of one sample for testing can take "days," and the request would "shut down MAS's operations for the inspection's duration and displace and impinge on its scientists' and technicians' work." (PSC Opp'n to Defs.' Inspection Order Obj. Br. 20, 27.) The Court finds that this financial burden—or some equivalent financial burden—is almost certain to be incurred by the PSC, and the Court finds this burden to be significant. *See Hunley*, 2013 WL 1681836, at *7 (finding the prejudice imposed on the non-movant was "significant" where the proposed testing was likely to require a truck utilized by the non-moving party to be "out of service for at least twenty hours" and cost $200,000). The Court further finds that the breadth of Defendants' request—which seeks to inspect "[a]ll" of MAS's PLM microscopes and to permit the contemporaneous use of the same PLM equipment by Defendants' experts—is unduly broad and burdensome. *See Sartoris v. Weber*, No. 23-640, 2024 WL 4529563, at *2 (M.D. Pa. Oct. 18, 2024) (denying motions to compel where the requested discovery was "overly broad and burdensome").

Moreover, the prejudice to the PSC is heightened by the timing of Defendants' request. While Defendants moved to compel the inspection prior to the conclusion of expert discovery, Defendants' motion was filed after fact discovery had concluded, and after Dr. Longo had performed his PLM analysis multiple times in this MDL. (*See generally* Mot. to Compel Inspection (filed May 21, 2024); Second Suppl. Rep. (dated Jan. 15, 2019); Fourth Suppl. Rep. (dated Apr. 29, 2024).) Defendants' request to compel a re-enactment of Dr. Longo's testing at this stage would therefore be highly prejudicial to the PSC.

12

Considering "the importance of the issues at stake in the action, [and] the importance of the discovery in resolving the issues," the Court finds that the burden and expense associated with the proposed inspection outweigh its likely benefit. Fed. R. Civ. P. 26(b)(2)(C); *see Zucker v. A. Pomerantz & Co.*, No. 06-747, 2006 WL 8459724, at *3 (E.D. Pa. Nov. 30, 2006) (denying plaintiffs' motion to compel discovery "even if the request might lead to the discovery of tangentially relevant information" because "the burden and expense that would be incurred in production significantly outweighs the potential information's likely benefit").[6] Accordingly, the Court overrules Defendants' objection to the Inspection Order, and affirms the Special Master's Order No. 24.

### B. The Special Master Erred in Partially Denying the Continued Deposition of Hess

Turning next to the parties' dispute over Hess's deposition, Defendants request permission to depose Hess again without the restrictions imposed by the Special Master. Upon a review of the parties' arguments and the record, the Court concludes that a continued deposition of Hess is warranted.[7]

---

[6] The Court notes that its analysis here is limited to assessing the proportionality of Defendants' proposed inspection as set forth in Defendants' motion to compel. (*See* Defs.' Mot. to Compel Inspection.) To the extent that the Court later finds it appropriate to compel a more limited demonstration of Dr. Longo's PLM testing in connection with the Court's adjudication of Defendants' pending Rule 702 motions, that determination would not be inconsistent with the findings set forth herein.

[7] Counsel for Hess argues that Defendants' objection to the Deposition Order was untimely because it was filed a day after the August 20, 2024 deadline to file any such objections. (Hess Obj. Br. 5, ECF No. 33228.) Defendants respond that they filed their brief "less than 60 minutes late," and that their failure to comply with the Rules was due to "excusable neglect." (Defs.' Dep. Order Obj. Reply Br. 3, ECF No. 33268.) The Court finds that Defendants' failure to comply with the Rules was due to excusable neglect, and exercises its discretion pursuant to Rule 6(b)(1)(B) to consider Defendants' objection as timely filed.

### *1.    Defendants May Depose Hess Without the Limitations Previously Imposed by the Special Master*

As the Special Master initially recognized, Hess is a non-testifying expert witness who possesses "exclusive firsthand knowledge relevant to [Dr.] Longo's opinions" about "the critical issue of whether [D]efendants' products contained asbestos." (Order No. 23 at 5, 6.) In compelling Hess's deposition, the Special Master initially imposed no restrictions on Defendants' questioning.[8] (*See generally id.*) When the parties subsequently sought guidance from the Special Master during the deposition, however, the Special Master confined Defendants' inquiry to Hess's personal observations about Dr. Longo's new PLM methodology. (*See* Hess Dep. Tr. at 43:8-44:2.) Following the deposition, the Special Master further limited the scope of Hess's deposition, prohibiting questioning about Hess's involvement in prior PLM testing that Dr. Longo relied on in this MDL, or in other cases, reasoning that Hess "is there to talk from his personal observation[s] about the new test[s]; that's it." (Dep. Order 3 (modification in original).)

Upon review, the Court reaches a different conclusion as to the appropriate scope of Hess's deposition. (*See generally* Dep. Order.) While Rule 26 affords the Court broad discretion to limit discovery where it is cumulative, burdensome, or otherwise improper, *see* Fed. R. Civ. P. 26(b)(2)(C), the record does not reflect that these considerations were the basis for the Special Master's limitations. (*See generally* Dep. Order.) Rule 26(b)(4) expressly provides that a party

---

[8] The Court disagrees with the PSC's contention that the Special Master's order compelling Hess's deposition (Order No. 23) authorized only a "limited-scope *fact* deposition" of Hess. (See PSC Opp'n to Defs.' Dep. Order Obj. 4 (emphasis in original).) Nothing in Order No. 23 suggests such a limitation. To the contrary, the Special Master found that "Defendants have shown exceptional circumstances" warranting discovery of the "facts known *or opinions held*" by Hess and did not otherwise restrict the scope of his testimony. (Order No. 23 at 6 (emphasis added).) Accordingly, the Court also rejects the PSC's argument that Defendants' objection to the Deposition Order was untimely. (*See* PSC Opp'n to Defs.' Dep. Order Obj. 14.) Because Order No. 23 did not limit the scope of Hess's deposition, Defendants appropriately raised their challenge to the scope of questioning only after the Special Master issued the subsequent Deposition Order that imposed such limitations. (*Compare* Order No. 23 *with* Dep. Order.)

14

who is permitted to depose a non-testifying expert may inquire regarding "facts known or opinions held." Fed. R. Civ. P. 26(b)(4)(D). Courts have construed this language broadly and have permitted parties deposing non-testifying experts to "uncover [the] 'facts known or opinions held'" by the expert. *See His All Holiness, Bartholomew I, The Archbishop of Constantinople, New Rome, & Ecumenical Patriarch v. Princeton Univ.*, No. 18-17195, 2023 WL 4135025, at *4 (D.N.J. June 22, 2023), *reconsideration denied sub nom.*, *His All Holiness, Bartholomew I, Archbishop of Constantinople, New Rome & Ecumenical Patriarch v. Princeton Univ.*, No. 18-17195, 2023 WL 6276308 (D.N.J. Sept. 26, 2023) (analyzing the plain language of Rule 26 and rejecting plaintiffs' contention that the deposition inquiry should be limited to only "facts known" by the non-testifying expert). In the absence of a clear rationale under these standards, the Court finds it appropriate to permit broader questioning consistent with Rule 26.

Moreover, the Court agrees with Defendants that the lines of questioning they sought to pursue are central to the disputed issues in this case, as well as to their arguments regarding the admissibility of Dr. Longo's expert testimony. Over the course of this MDL, Dr. Longo has issued multiple expert reports involving different PLM methodologies that each reach conclusions about the presence of asbestos in Defendants' talc products. (*See generally* Second Suppl. Rep.; Fourth Suppl. Rep.) It is undisputed that Hess played a critical role in conducting the PLM tests, and that he made "key decisions regarding how [Dr.] Longo's tests were conducted and interpreted." (Order No. 23 at 3, 7.) Dr. Longo also testified that he could not answer certain questions about the PLM tests underlying his reports. (*See id.* at 3, 4.) In this context, Defendants maintain that probing Hess's knowledge about prior PLM tests, both in this MDL and in other cases, is important to understanding the evolution, accuracy, and reliability of Dr. Longo's current PLM methodology. (*See* Defs.' Dep. Order Obj. Moving Br. 23 (emphasis omitted) (arguing that the "central question"

15

at issue for the current iteration of PLM testing is "Why is MAS all of a sudden finding chrysotile in nearly every bottle when previously they never found it at all?").)[9]

The Court is persuaded that the topics Defendants seek to explore—specifically, Hess's prior PLM testing in this MDL and in other cases—are relevant to their challenge of Dr. Longo's current PLM methodology and their arguments regarding the admissibility of his opinions. While the Court excluded an earlier iteration of Dr. Longo's PLM methodology in 2020, Defendants are entitled to explore how Dr. Longo's current PLM methodology compares to the prior version that the Court found unreliable. The PSC, in turn, has not identified a persuasive reason as to why broader questioning would be unduly burdensome, duplicative, or otherwise improper under Rule 26. (*See generally* PSC Opp'n to Defs.' Dep. Order Obj. (arguing that the limitations are appropriate because they were imposed by the Special Master, but otherwise failing to address whether broader questioning would be improper under Rule 26).)

Given the importance of the PLM testing underlying Dr. Longo's opinions, and the "factual gaps" identified in his testimony, (*see* Dep. Order 2), the Court finds that Defendants should be permitted to question Hess about prior PLM testing he performed in this MDL, as well as testing he conducted in other cases. The disputed subjects constitute "fair deposition topics" and it would

---

[9] The PSC argues that Hess's prior PLM testing in this MDL is "completely irrelevant to the identification of chrysotile [asbestos]," because it "focused solely on the identification of amphibole asbestos and fibrous talc," whereas his more recent testing focused on the identification of chrysotile. (PSC Opp'n to Defs.' Dep. Order Obj. 18-19.) Defendants, however, are not bound by the PSC's characterization of Hess's prior work and may question him about any changes in his PLM testing. Even if the PSC's description is accurate, Defendants are entitled to ask Hess why his PLM testing shifted from identifying amphibole asbestos and fibrous talc to chrysotile asbestos, as such inquiries implicate the presence of asbestos in Defendants' talc products—a central issue in this litigation.

16

"simply be too prejudicial" to preclude Defendants from probing Hess on these issues.[10] *See TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. 15-2370, 2016 WL 6662727, at *4 (C.D. Cal. July 7, 2016) (holding that questions regarding how team leads "interpreted instructions [from the expert] or could have modified [their] interpretation of instructions over the course of the multi-month process" were proper subjects for deposition of non-testifying experts); *Apple Inc. v. Amazon.com, Inc.*, No. 11-1327, 2013 WL 1320760, at *4 (N.D. Cal. Apr. 1, 2013) (ordering the deposition of expert assistants and requiring them to "be prepared to testify as to their activities and level of involvement with [testifying expert's] report, including their activities related to four surveys designed, conducted, and analyzed by [the testifying expert]"). Accordingly, the Court finds that Defendants are entitled to depose Hess without the limitations that the Special Master imposed.

### 2. *Counsel May Not Instruct Hess Not to Answer Questions Absent a Claim for Privilege*

The Court further finds that for the continued deposition of Hess, absent a claim for privilege, counsel may not instruct Hess not to answer questions. At Hess's deposition, counsel for the PSC and Hess instructed Hess not to answer more than forty questions that they believed called for an expert opinion, or otherwise exceeded the parameters set by the Special Master. (*See generally* Hess Dep. Tr.) Many of these questions, however, were plainly factual in nature. For example, Hess was instructed not to answer the following questions:

> What color are the particles? . . . The particle that you're calling chrysotile in the reports that you're talking about today?

---

[10] Indeed, the Special Master recognized the relevance of MAS's prior testing methodologies in compelling Hess's decision, reasoning that Hess's deposition is warranted in part because "MAS's testing methodology changes as more research is done" and Defendants "should have a complete record to decide the important issues being litigated." (Order No. 23 at 5, 6.)

17

> The wavelength of light that you assigned to this particle . . . [is it] more purple than [the] standard reference chrysotile?
>
> As a fact, . . . you assigned a darker purple color to that particle, . . . correct?
>
> Can you tell me if a blue light or daylight filter is being used on this image?
>
> [W]hat is the CSDS color of . . . this large talc plate towards the bottom left? What is the CSDS color that you would use to assign a refractive index to that particle?

(Hess Dep. Tr. at 55:1-8, 69:3-71:21, 110:16-113:18, 123:4-124:24.)

Upon a review of Hess's deposition transcript, the Court concludes that counsel's repeated instructions to Hess not to answer such questions were improper and restricted Defendants' inquiry in a manner that made an effective deposition impossible.

As a threshold matter, it is well settled that, absent a claim of privilege, it is improper for counsel at a deposition to instruct a witness not to answer a question. *See, e.g.*, Fed. R. Civ. P. 30(c)(2) (requiring that objections be stated for the record, but the testimony proceed subject to the objection, unless counsel instructs the witness not to answer to preserve a privilege, enforce a court-ordered limitation, or to present a motion under Rule 30(d)(3)); *Friction Div. Prods., Inc. v. E.I. Du Pont De Nemours & Co.*, 117 F.R.D. 535, 539 (D. Del. 1987) ("In general, instructing a witness not to answer particular questions asked in a deposition is not a proper course of conduct under the Rules."); *Tuerkes-Beckers, Inc. v. New Castle Assocs.*, 158 F.R.D. 573, 575 (D. Del. 1993) ("Counsel may not instruct a witness not to answer a question unless . . . answering the question would require the disclosure of information that is protected from disclosure as privileged or work product.").

Moreover, counsel's objections on the basis that Defendants' questions called for an expert opinion were particularly unwarranted, especially where, as the Special Master aptly noted, "the

18

line between [Hess's] lay and expert opinion is not clear." (Dep. Order at 4 (explaining that "[P]laintiffs are mistaken if they believe the appropriate demarcation line to use regarding Hess's testimony is whether he offers an 'expert opinion'" because Hess is a sophisticated assistant tasked with performing intricate PLM analyses)); *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201-02 (3d Cir. 1995) ("A lay witness with firsthand knowledge can offer an opinion akin to expert testimony in most cases.").

Because of counsel's repeated direction to Hess not to answer dozens of questions, the deposition largely consisted of objections and colloquy between counsel, rather than substantive testimony, and Defendants were denied a fair opportunity to cross-examine Hess. Indeed, the need for a second deposition of Hess would not have arisen had counsel simply stated their objections on the record and permitted Hess to answer. Accordingly, for the continued deposition of Hess, objections shall be stated for the record, but Hess shall answer the questions unless the objections are made to preserve a privilege.

## IV.   CONCLUSION

For the foregoing reasons, the Special Master's Inspection Order is affirmed, and the Special Master's Deposition Order is vacated and reversed. The Court will issue an Order consistent with this Memorandum Opinion. The continued deposition of Hess shall be held within thirty (30) days of the entry of the accompanying Order.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE