UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (MAS) (RLS)<br><br>MEMORANDUM OPINION AND ORDER |

**RUKHSANAH L. SINGH, United States Magistrate Judge.**

**PRESENTLY** before this Court is an informal discovery request made by the Plaintiffs' Steering Committee's ("PSC") seeking the Court to compel Defendant Johnson & Johnson ("J&J") to produce copies of its experts' invoices in all federal and state court cases that allege ovarian cancer and mesothelioma injuries arising from use of J&J's talcum powder products. (Doc. No. 33052). J&J opposes the request, but seeks, in the alternative, to compel Plaintiffs to produce the same information for their experts. (Doc. No. 33187). The PSC has replied. (Doc. No. 33232). After careful consideration of the parties' submissions, the Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rules 37.1(b)(4) and 78.1(b). For the reasons set forth below, and for good cause shown, the Court grants in part the PSC's request and grants J&J's request in the alternative.

## I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

As the parties and this Court are familiar with the facts underlying this Multidistrict Litigation ("MDL"), this Court recites only those facts pertinent to the instant request. This MDL consolidates numerous actions filed across the country alleging that the perineal use of J&J's talcum powder products causes ovarian cancer. The parties have engaged in extensive discovery in preparation for bellwether cases to proceed to trial. As part of discovery, the PSC issued Notices

of Deposition and Duces Tecum to J&J's experts, which sought, *inter alia*, the production of records of payments, copies of bills and invoices, summary invoices, and the like for all work performed relating J&J's Baby Powder and Shower to Shower product lines as well as for all work performed in connection with this MDL "and/or any claims or lawsuits involving" those products.[1] (*See* Notice of Deposition, Doc. No. 33052-1). J&J, however, objected to the requests to the extent they seek such compensation records and invoices for work performed outside of the bellwether cases in this MDL. (*See* Doc. No. 33187 at p.2).

The PSC thereafter filed the instant application, seeking the Court to compel J&J to produce its experts' invoices for all federal and state court cases that allege ovarian cancer and mesothelioma injuries from using J&J's talcum powder products. (*See generally* Doc. No. 33052). The PSC argues it is entitled to the invoices because the invoices are relevant to demonstrate potential bias or financial interest of the experts and may be used for impeachment purposes. (Doc. No. 33052).

J&J opposes the request both procedurally and substantively. (*See* Doc. No. 33187). J&J notes that the PSC failed to raise the issue during the course of expert discovery, did not meet and confer prior to submitting the letter request, and did not comply with Local Civil Rules 7.1 and 37.1. (Doc. No. 33187 at p. 1). As to the merits of the PSC's request, J&J contends that the sought-after discovery is not proportional to the needs of the case, could confuse and mislead a jury, and is not necessary for the PSC to probe the experts' purported biases. (*See generally* Doc. No. 33187). J&J also points out that the PSC has objected to the production of such information and documents for their own experts. (Doc. No. 33187 at pp. 3-5). J&J argues, in the alternative, that,

---

[1] Although the Notices of Deposition and Duces Tecum were directed to J&J's experts, seeking the experts to produce the materials, the PSC seeks the Court to compel J&J and not the experts to produce the contested materials. (*See* Doc. No. 33052).

2

if the Court were to grant the PSC's request, the Court should require the PSC to first produce such invoices for its experts for all talcum powder work before J&J produces theirs. (Doc. No. 33187 at pp. 2-3).

In reply, the PSC points out that it does not have possession, custody, or control of all invoices produced by experts in cases outside of this MDL because the PSC is not involved in all of them, unlike J&J. (*See* Doc. No. 33232 at pp. 1-2, n.2). It contends that J&J has "access to all compensation for a Plaintiff['s] expert, but the PSC will only know the amounts paid to a defense expert in the MDL." (Doc. No. 33232 at p. 2). The PSC argues that the sought-after expert invoices are relevant and proportional to the needs of this MDL, considering the factors set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure. (*See* Doc. No. 33232 at pp. 4-6). It further responds to J&J's challenges to the PSC's reliance on certain case law. (*See* Doc. No. 33232 at pp. 8-10).

## II. LEGAL STANDARD

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party may discover information that is non-privileged, relevant, and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). The information, however, need not be admissible to be discoverable. *See id.* In determining proportionality, courts consider various factors, including: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1); *see also MSP Recovery Claims, Series LLC v. Celgene Corp.*, No. 21-20451, 2024 WL 1327990, at *2 (D.N.J. Mar. 28, 2024).

When seeking to compel discovery, the movant bears the burden of showing its relevancy; once met, the nonmovant must show the bases for its objections. *Fuller v. Insys Therapeutics, Inc.*, No. 17-7877, 2018 WL 4941789, at *2 (D.N.J. Oct. 11, 2018). While discovery is broad, it "is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citations omitted). It has been well-established that the Court exercises "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

## III.   DISCUSSION

As a threshold matter, the Court declines to deny the PSC's request based on procedural defects and, to promote efficiency, resolves the dispute on the merits.[2] *See* Fed. R. Civ. P. 1; *see also Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable."). The Court thus turns to J&J's substantive objections.

Rule 26(a)(2)(B)(vi) requires the disclosure of a testifying expert's "compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(vi). Notably, Rule 26(b)(4)(C) carves out an exception to the protection for expert communications with a party's attorney for those communications relating "to compensation for the expert's study or testimony[.]" Fed. R. Civ. P. 26(b)(4)(C)(i). The Advisory Committee Notes to the 2010 Amendments to Rule 26 explain:

> [U]nder Rule 26(b)(4)(C)(i) attorney-expert communications regarding compensation for the expert's study or testimony may be the subject of discovery. In some cases, the discovery may go beyond the disclosure requirement in Rule

---

[2] The Court, however, notes that the PSC's failure to fully meet and confer prior to filing its informal letter request does not promote the prompt and efficient resolution of disputes. The parties are reminded of their obligations to fully meet and confer prior to raising discovery disputes with the Court. *See* L. Civ. R. 37.1.

4

> 26(a)(2)(B)(vi). It is not limited to compensation for work forming the opinions to be expressed, but extends to all compensation for the study and testimony provided in relation to the action. Any communications about additional benefits to the expert, such as further work in the event of a successful result in the present case, would be included. This exception includes compensation for work done by a person or organization associated with the expert. The objective is to permit full inquiry into such potential sources of bias.

Fed. R. Civ. P. 26 advisory committee's note (2010). Accordingly, courts consider whether broader discovery from an expert is appropriate under the guiding principles of Rule 26(b). *See e.g., Langbord v. U.S. Dep't of Treasury*, No. 06-5315, 2008 WL 4748174, at *2-3 (E.D. Pa. Oct. 22, 2008) (discussing case law where courts permitted additional discovery "directly related to the professional relationship between the expert and the party in that case" under Rule 26(b)(1) where the discovery went "beyond the scope of Rule 26(a)(2)" (citing *The Herrick Co. v. Vetta Sports, Inc.*, No. 94-905, 1998 WL 637468 (S.D.N.Y. Sept. 17, 1998); *Krisa v. Equitable Life Assur. Soc.*, 196 F.R.D. 254 (M.D. Pa. 2000))); *see also Drake v. Allergan, Inc.*, No. 13-234, 2014 WL 12718977, at *2 (D. Vt. Oct. 29, 2014) (precluding discovery as to the amount an expert received from serving as an expert witness since 2011 and "the percentage of his total income over that time that expert witness fees represent" because "less intrusive means" existed where, among other things, the expert disclosed "his compensation from other cases involving Botox litigation" (citing Fed. R. Civ. P. 26(b)(2)(C)(i))).

Presently, J&J primarily argues that the sought-after invoices do not meet the proportionality analysis under Rule 26(b) and are not necessary to fully probe the defense experts' purported biases. It also contends that, if admissible, the information could confuse and mislead a jury because the PSC has not produced the same type of information for their experts. The PSC counters otherwise.

5

As the parties acknowledge, documents need not be admissible to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). However, they must be proportional to the needs of the case. As discussed above, Rule 26(b)(1) lists some of the factors used to determine whether discovery is proportional: (1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Here, the importance of the issues at stake in this MDL, the amount in controversy, and the parties' resources weigh in favor of permitting the sought-after discovery. Further, as the PSC points out, J&J has the information within their possession, custody, and control and do not sufficiently show any difficulty with producing the information.

Nevertheless, J&J primarily argues that the last two factors weigh against disclosure of the invoices. It contends that the invoices from non-MDL matters are not necessary to address an expert's bias and that it would be unduly burdensome to produce the invoices. However, J&J acknowledges the total amount paid to an expert is relevant to the issue of bias because it sought the same information from Plaintiffs' experts. (*See* Doc. No. 33187-4 (PSC's Responses and Objections to the Updated Notice of Oral and Videotaped Deposition of William Longo, Ph.D., Duces Tecum. Notice to Preserve and Notice of Inspection) at ¶¶ 2-4 (seeking, *inter alia*, documents reflecting forms of compensation for testifying as an expert in connection with "Talc Litigation")). Indeed, the Advisory Committee 2010 notes emphasize the import of a "full inquiry" into potential sources of bias, including "all compensation for the study and testimony provided *in relation to the action.*" Fed. R. Civ. P. 26, advisory committee's note (2010). Therefore, the credibility and potential bias of an expert are important aspects of this litigation, and the overall

6

compensation of an expert for work performed on behalf of a party for related matters may weigh into that assessment.

As to the burden or expense of the sought-after discovery, the cases relied upon by the parties illustrate that courts do not provide unfettered access to an expert's fees or income but rather find a balance in permitting some discovery into the expert's compensation beyond the case at hand. For example, in *Behler*, the District of Maryland precluded expansive discovery into the expert's total income for the prior five years. 199 F.R.D. at 561-62. However, that court found a less intrusive way to obtain relevant information was to order the expert to conduct a search for records to permit him to testify at a two-hour deposition as to, among other things, "[t]he percentage of his gross income earned for each of the preceding five years attributable to performing expert witness services on behalf of insurance companies, and/or attorneys defending personal injury cases[.]" *Id.* at 562. Often, courts preclude a party from seeking an expert's total income, whether for expert work or not. *See, e.g., id.*; *see also Profitt v. Highlands Hosp. Corp.*, No. 19-15, 2021 WL 5435171, at *4-5 (E.D. Ky. Nov. 19, 2021) (discussing cases); *Young v. Pleasant Valley Sch. Dist.*, No. 07-854, 2011 WL 3678691, at *2 (M.D. Pa. Aug. 20, 2011); *Reed v. Cline*, No. 08-473, 2010 WL 3829459, at *2 (S.D. Ind. Sept. 24, 2010).

Yet, "some courts allow discovery into an expert's compensation in related cases or by a particular party over a specified period of time on the ground that such information is relevant to the expert's credibility and possible bias." *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 273 F.R.D. 360, 361 (D. Mass. Apr. 26, 2011) (citing cases). For example, in *Coleman*, the court found a request for the production of documents regarding the amount the defendant paid to an expert witness for past testimony in support of the litigation for a period of six years to be both relevant and proportional to the needs of the case. *Coleman Co. v. Team Worldwide Corp.*, No.

20-351, 2021 WL 5045067, at *2 (E.D. Va. Oct. 18, 2021). The court there recognized that "matters beyond the particulars of the instant case are not automatically precluded from discovery." *Id.* The court thus concluded that the request for past "compensation in similar matters" related to any bias by the expert and permitted discovery thereof. *Id.* Similarly, the Eastern District of Louisiana found documents reflecting amounts paid by a defendant to its expert for matters outside of the case at hand to be relevant and proportional because "the financial relationship between a party and an expert witness is relevant to show bias." *Bello v. Horace Mann Companies*, No. 07-4793, 2010 WL 11541596, at *3 (E.D. La. Mar. 11, 2010). Also, in *Drake*, the court denied a motion to compel the production of documents showing how much an expert received for serving as an expert for a period of three years because the expert already provided his expert compensation from other related litigation. *Drake*, 2014 WL 12718977, at *2.

Here, the PSC seeks the production of invoices for J&J's experts' work relating to all federal and state court talc cases alleging injuries for ovarian cancer and mesothelioma. The PSC is not seeking the experts' total compensation or tax returns. Rather, the sought-after discovery is more narrowly tailored than the intrusive requests precluded in the cases relied upon by J&J. And, while J&J contends that producing these invoices would be burdensome and time consuming, it does not articulate with any particularity how much time, expense, or effort would be required if ordered to produce the invoices. As such, the Court cannot find on this record that compelling such relevant discovery would be unduly burdensome.

However, if such invoices are relevant and proportional to the needs of this MDL, then the similar scope of invoices from the experts on behalf of Plaintiffs is similarly relevant and proportional. Indeed, J&J's request in the alternative is to seek such discovery from Plaintiffs. In opposition to that request, the PSC argues that not all of plaintiffs' side expert invoices from all

federal and state court talc cases alleging injuries for ovarian cancer and mesothelioma are within their possession, custody, or control because the PSC are not attorneys of record in all such cases (whereas J&J is a party in all such cases). Although documents and information need not be admissible to be discoverable, permitting an imbalance of discovery to proceed at this time—on the eve of the first bellwether trial—would only open the door for further confusion as to admissibility concerns.

Accordingly, with consideration of the parameters of proportionality, the Court grants J&J's request in the alternative to compel the PSC to produce the invoices for their experts' work relating to all federal and state court talc cases alleging injuries for ovarian cancer and mesothelioma that it maintains in its possession, custody, or control. The PSC shall make that production first. Thereafter, J&J shall produce those invoices for its experts' work relating to only those cases for which the PSC has made the equivalent production.

## IV. CONCLUSION

For the reasons set forth above, and good cause shown, the Court exercises its discretion and grants in part the PSC's application and grants J&J's requested alternative relief. Therefore,

**IT IS** on this **8th** day of **December 2025** hereby

**ORDERED** that the PSC's informal application to compel the production of J&J's experts' invoices is granted in part and J&J's requested alternative relief to compel the production of Plaintiffs' experts' invoices first is granted; and it is further

**ORDERED** that the PSC shall produce the invoices for their experts' work relating to all federal and state court talc cases alleging injuries for ovarian cancer and mesothelioma that they maintain in their possession, custody, or control. Following that production, J&J shall produce the invoices for its experts' work relating to those cases for which the PSC produced their experts'

invoices. The parties shall meet and confer and electronically file a proposed schedule for such productions by December 12, 2025. The productions may be produced in redacted form to preserve any information protected by an appropriate privilege; and it is further

**ORDERED** that the Clerk of the Court shall TERMINATE the informal motion pending at Docket Entry Number 33052.

**SO ORDERED.**

RUKHSANAH L. SINGH
UNITED STATES MAGISTRATE JUDGE