## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738(MAS)(RLS)  MLD Case No. 2738  [FILED ELECTRONICALLY]  Return Date: February 24, 2026 |

---

**ANDY BIRCHFIELD, JR. and BEASLEY ALLEN'S BRIEF TO SUPPLEMENT THE RECORD PERSUANT THE COURT'S TEXT ORDER OF FEBRUARY 9, 2026 AND IN FURTHER OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON'S MOTION FOR AN ORDER TO SHOW CAUSE SEEKING THEIR DISQUALIFICATION FROM THIS LITIGATION**

---

## POLLOCK LAW, LLC
Jeffrey M. Pollock, Esq. (015751987)
400 Riverview Plaza
Suite 425
Trenton, New Jersey 08611
Telephone: 609-308-7300
jeff@pollocklaw.net
*Attorney for Andy Birchfield and Beasley Allen*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENTS ........................................................................1

BRIEF STATEMENT OF FACTS ......................................................................4

ARGUMENTS.....................................................................................................7

I.   THE RULES OF PROFESSIONAL CONDUCT DERIVE FROM THE CONSTITUTIONAL AUTHORITY OF THE NEW JERSEY SUPREME COURT ........................................................7

II.   THIRD CIRCUIT PRECEDENT SUPPORTS RESTRAINT WHERE STATE LAW IS UNSETTLED AND IMPORTANT ................................................ 8

    A.  Pullman Principles ..................................................................................8

    B.  Colorado River and Wise Judicial Administration .................................9

III.   THE SHARED FACTUAL RECORD HEIGHTENS THE RISK OF INCONSISTENT OUTCOMES ............................................................................... 10

IV.  RESTRAINT IS PARTICULARLY APPROPRIATE IN THE MDL CONTEXT AND CONSISTENT WITH THIS COURT'S PRACTICE ...................................................11

    A.  Continuity of Leadership is Critical to MDL Administration ...............11
    B.  Cooperative Federalism in an MDL is a Grave Concern Here .............12
    C.  The Appellate Division is an Intermediate Court –and This Court is Not Required to Follow ................................................................................13
    D.  Disqualification is a Drastic Measure Demanding Heightened Scrutiny in the MDL Context ................................................................................14

V.  IF THE COURT REACHES THE DISQUALIFICATION ISSUE, IT SHOULD NOT REWARD JOHNSON & JOHNSON'S GAMEMANSHIP BY DISQUALIFYING BEASLEY ALLEN, WHICH WOULD PREJUDICE PLAINTIFFS................................................................15

VI.  TEMPORARY RESTRAINT ADVANCES JUDICIAL ECONOMY AND FAIRNESS ........16

CONCLUSION.................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989) ...........................14

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991)............................................................14,15

*Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631–33 (3d Cir. 1991).............................9

*City of Atlantic City v. Trupos,* 201 N.J. 447, 461 (2010) ................................................................7

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)......................9,10

*Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 627 (D.N.J. 2019) ....................................................2

*Frazier v. Heebe*, 482 U.S. 641, 645 (1987) .....................................................................................8

*In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160–62 (3d Cir. 1984)................................14

*In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 185–86 (3d Cir. 2008)....................................12

*In re LiVolsi*, 85 N.J. 576, 583 (1981) ...............................................................................................7

*In re Opinion No. 415*, 81 N.J. 318 (1979) .......................................................................................7

*In Re Supreme Court Advisory Committee on Professional Ethics Opinion*, 697, 188 N.J. 549, 555 (2006).................................................................................................................................................7

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952) ..............................11

*Leis v. Flynt*, 439 U.S. 438, 442 (1979).......................................................................................8,13

*O'Builders v. Yuna*, 206 N.J. 109, 120  (2011)..................................................................................7

*Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463–64 (3d Cir. 1994) ..................................................................................................................................................9

*Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ..............................................8

*Ryan v. Johnson*, 115 F.3d 193, 196–97 (3d Cir. 1997) ..................................................................10

*Selling v. Radford*, 243 U.S. 46 (1917)
..............................................................................................................................................13, 14

*Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171–72 (3d Cir. 1999)...........................10

*State v. Rush*, 46 N.J. 399 (1966) ................................................................................................ 7

*Younger v. Harris*, 401 U.S. 37, 44 (1971) ................................................................................. 16

## PRELIMINARY STATEMENT

Pursuant to the Court's request, Beasley Allen and Andy Birchfield respectfully submit this supplemental brief addressing the impact of the New Jersey Appellate Division's decision disqualifying Beasley Allen in the parallel state court proceeding. [Text Order of February 9, 2026, by Magistrate Judge Rukhsanah L. Singh.] Beasley Allen respectfully urges this Court to refrain, at this time, from altering MDL leadership structure, or case administration, and to allow the New Jersey appellate process — including applications for a stay before the State Court Law Division, the Appellate Division, and the Supreme Court of New Jersey — to proceed on an emergent basis. The New Jersey Appellate Division interpreted Rule 5.3 of the New Jersey Rules of Professional Conduct without precedent and in a manner that enables a court to disqualify a law firm based on the conduct of an entity the law firm neither employs nor supervises. Beasley Allen is seeking an expedited appeal as of right to the Supreme Court of New Jersey and stay of this decision. In that context, proceeding cautiously is particularly important in an MDL, where multiple states are involved and New Jersey's outlier ruling at issue here is at odds with what every other State's ethics decisions hold.

The issue presented is not merely a case-management question. It concerns (1) the misapplication of the New Jersey Rules of Professional Conduct, (2) a severe impact to numerous victims of exposure to Johnson & Johnson's asbestos laden talc, (3) questions of New Jersey Constitutional Law, of Abstention doctrines, as well as of Comity, and (4) unique issues regarding the rights of referring jurisdictions to apply RPC 5.3 as every jurisdiction—except the Appellate Division of New Jersey—applies that rule.

Pursuant to this Court's Order of February 9, 2024, [Doc. 29022], this Court participated jointly with Judge Porto as suggested in the Manual for Complex Litigation (Fourth).   As the Court noted, the purpose of conducting joint hearings with a state court judge (Judge Porto) was to reduce duplication and promote efficiency.  Although the Manual on Complex Litigation was a valid basis to hold a joint hearing with Judge Porto, that authority does not permit the Federal Courts to determine state ethics law.  Under the New Jersey Constitution, the sole entity with the power to determine the Rules Governing Professional Responsibility is the Supreme Court of New Jersey.  For reasons of judicial economy, this Court, therefore, should wait to allow the Supreme Court of New Jersey to reach a final decision.

The RPCs are under the New Jersey Constitution promulgated pursuant to the Constitutional authority of the Supreme Court of New Jersey and which only the Supreme Court of New Jersey can change.  The District of New Jersey applies those rules, and although intermediate state court decisions are persuasive authority as to their meaning, this court is not bound by the New Jersey Appellate Court's decision.  *See Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 627 (D.N.J. 2019) ("while efforts should be made to avoid inconsistent determinations under [New Jersey's Rules of Professional Conduct], and this Court may certainly look for guidance to the decisions of the New Jersey state courts, our Local Rules do not require that this Court be bound by those decisions.")  *See also* D.N.J. L. Civ. R. 103.1(a).  Because the Appellate Division's reading of RPC 5.3 dramatically expands the meaning of the term "associated" beyond that of any other jurisdiction to include a nonlawyer who is not employed by, under the management of, or in any way contractually obligated to, a lawyer, there is good reason for this Court to reach a different conclusion.

This Court can avoid this merits question for now by simply refraining from ruling on the motion for disqualification until the New Jersey Supreme Court has had a chance to correct the Appellate Division's decision. Federal courts sitting in New Jersey apply those rules; they do not independently redefine them. *See* D.N.J. L. Civ. R. 103.1(a). Given (1) the constitutional dimension of the RPCs, (2) the shared factual record developed through plenary proceedings involving both jurisdictions, (3) the risk of inconsistent outcomes, and (4) this Court's central role in maintaining stability in a complex MDL, principles of abstention doctrine and sound judicial administration strongly support temporary restraint. Although the Appellate Division disqualified Beasley Allen from representing 435 of its New Jersey clients, this Court's extension of that decision to the MDL cases spanning all jurisdictions would abruptly deprive approximately 5,500 women and their families of legal representation. The Court should not take this drastic step while appeals are pending.

The disruption to the administration of the asbestos exposure cases is real and unnecessary. The Appellate Division's decision ignored a critical point in its disqualification decision, which is the harm to the victims and plaintiffs that will result if the order disqualifying and removing the firm with the most trial experience in the talc-ovarian cancer cases is upheld. Likewise, it ignored that Johnson & Johnson has experienced no prejudice because the evidence is unequivocal that no confidential information was shared or exposed. In addition, the defendant engaged in gamesmanship by filing the motion to disqualify when it did. If this Court follows the Appellate Division's erroneous decision and the Supreme Court subsequently reverses, then this Court would need to consider adjusting, once again, the leadership committee for the MDL matters. This Court has been interrupted before by J&J's flawed attempts in three successive, failed bankruptcies. The Court should stay any consideration of J&J's motion while the Supreme

Court of New Jersey decides whether the Appellate Division's decision disqualifying Beasley Allen and Andy Birchfield is in error.

## BRIEF STATEMENT OF THE FACTS

LTL Management LLC ("LTL") was an entity created by Johnson and Johnson to permit J&J to remove the asbestos-in-talc claims from its balance sheet, filed two applications to remove Andy Birchfield/Beasley Allen from representing plaintiffs in the talc exposure claims. First on December 5, 2023 in Federal Court [Doc. 28760] and then three days later in State Court on December 8, 2023 [Trans ID: LCV20233584887]. Notably, J&J had a constantly evolving list of RPCs that they believed applied—and in particular they argued specifically that RPC 5.3 applied. The record was agreed to be closed by Court and counsel. Declaration of Jeffrey M. Pollock, Ex. 9 at p. 25, lines 6-10; p. 31-32. On March 25, 2024, April 10, 2024 and on May 3, 2024 this court and Judge Porto conducted joint hearings in Atlantic County and heard evidence from witnesses. (Order of July 19, 2024). Upon conclusion of those hearings, Judge Porto issued a ruling that LTL (J&J) had failed to carry its burden that Andy Birchfield/Beasley Allen should be disqualified. *See* Pollock Cert., Ex 3. At Exhibit2 Order of July 19, 2024)

Judge Porto made the following factual findings:

1. "There is no credible evidence to support the allegation that Conlan shared any privileged and confidential information with Birchfield." (p.6)

2. "Conlan credibly testified when confronted with the allegation regarding violations of the various RPC's." (p. 6)

3. "As the CEO of Legacy, Conlan remains licensed as an attorney but he does not represent any client(s)-including any party or litigant involved in this MCL. This court finds Conlan neither practices law or acts in the capacity of an attorney at Legacy. Accordingly, this Court finds that Conlan is not a so-called side-switching attorney; he does not

represent any MCL Plaintiff and was never hired as an attorney at Beasley Allen." (p. 10)

4. "As far as his post J&J work and employment with Legacy, Conlan never served as an attorney and always served in a non-attorney capacity. This court finds Conlan was the CEO of and employed by Legacy and promoted their business interests only. Conlan is not found to be associated with the Beasley Allen law firm in any capacity. Conlan was never employed either as a lawyer or as an non-lawyer by that firm. As Legacy's CEO, Conlan is now a businessperson, and although licensed as a lawyer, he no longer practices law and does not have any clients." (p. 27)

5. "This court finds J&J did not overcome its burden of persuasion and proof that Conlan shared J&J's confidential and privileged information to Birchfield or anyone else at Beasley Allen." (p. 27)

6. "This court even considered whether J&J provided any reasonable inferences to support their argument, but this court concludes J&J did not do so and failed to meet their initial burden of production for disqualification." (p. 27)

7. "Moreover, the court finds that Conlan, a  non-practicing lawyer, does not represent any individual and does not have a client in this MCL and disqualification of Beasley Allen is not warranted." (p. 28)

8. "Conlan testified credibly that the subject matrix referenced during the plenary hearing was received from Beasley Allen and the proposal was Legacy's." (p. 28)

9. "Moreover, this court finds and credits Birchfield's testimony when he testified that he did not need any J&J information based on Beasley Allen's ten years' experience in litigation the ovarian cancer cases." (pp. 28-29)

10. "the court again credits the length of time as well as the experience of prosecuting those trials to support Birchfield's testimony that J&J's information was not necessary for them. This court finds and cannot simply ignore that Beasley Allen assessed the ovarian cancer litigation based solely on their own experience." (p. 28)

11. "Here, J&J raised similar arguments and allegations [as in Yuna] against Conlan, but through the lens of the three-day plenary hearing and after an assessment of all the testimony and documentary evidence, this court finds there is no credible evidence or well-grounded basis to support J&J's suspicions." (p. 29)

12. "Although J&J argued that Conlan must have shared confidential and privileged information with Birchfield in their various discussions, this court did not find that contention was supported by the credible evidence." (p. 29)

13. "this court finds Conlan's testimony credible that he did not reveal any J&J confidential information at any point after March 1, 2022. (p. 30)

5

14. The court also credits Conlan's testimony where he stated that he did not use J&J confidential information to have discussions with Birchfield and Beasley Allen in connection with the Legacy proposal using structural optimization." (p. 30)

15. "[T]here is no credible evidence to support a violation of RPC by Conlan." (p. 30)

16. "There is also no evidence of any "association", **as that term is used by J&J**, between Conlan and Birchfield other than the fact that Birchfield supported the Legacy proposal." (p. 30, emphasis added)

17. "With notice to J&J that Legacy reserved the right to work with plaintiff firms [February 2, 2023 email], Conlan presented that proposal to Birchfield and Beasley Allen law firm after J&J failed to respond." (p. 31)

18. "To reiterate, this court does not find there is any credible evidence or any credible inferences to support J&J's allegations that Conlan shared confidential and privileged information belonging to J&J to Birchfield or that Conlan violated any of the referenced RPCs. (p. 32)

*Id.*

After LTL/J&J failed to convince the State Court that Andy Birchfield/Beasley Allen had violated the New Jersey Rules of Professional conduct (and after LTL I and LTL II failed as well), J&J then ran to yet another jurisdiction (Texas) and had a newly created subsidiary – Red River Talc -- file a petition for bankruptcy, where once again J&J attempted to resolve the ovarian cancer claims through bankruptcy [Case 24-90505].   That effort failed when the Texas court dismissed the bankruptcy.

At the same time, J&J pursued its appeal to the Appellate Division of New Jersey, challenging Judge Porto's ruling.  The Appellate Division granted J&J's appeal and ordered that Beasley Allen be disqualified on February 6, 2026. *See* Pollock Dec.; Ex. 1. The matter was remanded to Judge Porto under a mandamus and on February 9, 2026, Judge Porto entered an Order (Pollock Dec., Ex. 2).   Because the Appellate Division's decision misinterprets RPC 5.3, Beasley Allen/Birchfield requested a stay before Judge Porto.  *See* Pollock Dec., Ex. 3.   J&J

opposed jurisdiction (Pollock Dec., Ex 4) and Beasley Allen/Birchfield vociferously objected.

*See* Pollock Cert, Ex. 5   Judge Porto promptly issued a directive for expedited briefing (Pollock

Dec., Ex. 6) and J&J's opposition papers were filed on February 16, 2026.    *See* Pollock Cert,

Ex. 7.  Beasley Allen filed its reply on Wednesday, February 19, 2026.  *See* Pollock Dec., Ex. 8.

This matter is scheduled for oral argument on February 20, 2026 at 2 P.M. (Eastern Standard

Time).

## LEGAL ARGUMENT

### I.      THE RULES OF PROFESSIONAL CONDUCT DERIVE FROM THE CONSTITUTIONAL AUTHORITY OF THE NEW JERSEY SUPREME COURT

Under Article VI, Section II, Paragraph 3 of the New Jersey Constitution, the Supreme

Court of New Jersey possesses exclusive authority to regulate the practice of law. See *In re*

*LiVolsi*, 85 N.J. 576, 583 (1981) ("The Supreme Court's authority over the practice of law is

exclusive and plenary."); *State v. Rush*, 46 N.J. 399 (1966); *In re Opinion No. 415*, 81 N.J. 318

(1979).[1]  The Rules of Professional Conduct are promulgated pursuant to that constitutional

authority.   In New Jersey state courts, their interpretation and scope ultimately lie with the

Supreme Court of New Jersey.  The Appellate Division's published decision turns entirely on its

interpretation of RPC 5.3 and the meaning of "associated."   Notably, as demonstrated in the

filing before Judge Porto, no court in the country, nor the American Law Institute, nor the

---

[1]      *O'Builders v. Yuna*, 206 N.J. 109, 120  (2011) ("This Court's authority to regulate the legal profession is of constitutional dimension"); *City of Atlantic City v. Trupos,* 201 N.J. 447, 461 (2010); *In Re Supreme Court Advisory Committee on Professional Ethics Opinion*, 697, 188 N.J. 549, 555 (2006).

ABA—nor even any academic articles on ethics support the Appellate Division's interpretation of RPC 5.3.

Importantly, J&J cites not one single authority, from any jurisdiction, supporting the Appellate Division's gross expansion of the word "associated." We make this observation with due respect to the New Jersey Appellate Courts, of course, but the lack of any authority to support the Appellate Division's Opinion goes directly to Beasley Allen's likelihood of success on appeal to the Supreme Court of New Jersey. Whether that construction is consistent with the constitutional structure governing attorney regulation is a question reserved to the Supreme Court of New Jersey.

For litigants appearing before the Court, Federal courts in this District generally apply the New Jersey RPCs by incorporation. D.N.J. L. Civ. R. 103.1(a). They do not create a separate civil ethics regime. See also *Leis v. Flynt*, 439 U.S. 438, 442 (1979) ("The regulation of the practice of law is traditionally a matter of state concern."); *Frazier v. Heebe*, 482 U.S. 641, 645 (1987). Because the governing rule derives from state constitutional authority, prudence favors allowing the New Jersey Supreme Court to determine its proper scope before this Court takes structural action premised on an intermediate appellate interpretation. One notable here is that the referring jurisdictions each have their own ethics rules governing lawyers, and in an MDL the Court has a duty to consider the rights of those litigants in other jurisdictions.

## II. THIRD CIRCUIT PRECEDENT SUPPORTS RESTRAINT WHERE STATE LAW IS UNSETTLED AND IMPORTANT

### A. *Pullman* Principles

Under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), federal courts are strongly encouraged to defer where unsettled issues of state law may materially affect the outcome of a dispute. *Pullman,* put simply, stands for the proposition that a Federal Court should stay or decline to hear a matter that is challenged on the basis of a State Constitution—here that is precisely the matter because Beasley Allen/Andy Birchfield will argue to the Supreme Court of New Jersey that the Appellate Division's opinion is not only in error, but fatally flawed, because it intruded upon the both the findings of fact by the trial court but, more importantly, the exclusive right of the Supreme Court of New Jersey to determine the meaning of the RPCs.

The Third Circuit has repeatedly recognized that *Pullman* abstention is appropriate where state law is uncertain and implicates substantial public interests. See *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631–33 (3d Cir. 1991); *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463–64 (3d Cir. 1994). Although this case does not involve a federal constitutional challenge, the underlying principle is directly relevant: federal courts should avoid premature interpretation of unsettled and consequential state-law questions, particularly where a state supreme court may clarify the issue. The meaning of "associated" under RPC 5.3 — and the scope of disqualification absent proof of significantly harmful disclosure — has now become unsettled in New Jersey. The Appellate division adopted an expansive definition unprecedented anywhere in the country, unsupported by the American Law Institute, and inconsistent with the American Bar Association's Model Rules. The Supreme Court of New Jersey has not yet addressed the Appellate Division's interpretation, and Beasley Allen has sought a stay of that decision and an expedited appeal. Because this Court would treat the decision of the New Jersey Supreme Court as persuasive authority as to the meaning of the

9

New Jersey Rules, it should stay its hand while Beasley Allen appeals to the State's highest court.

### B. *Colorado River* and Wise Judicial Administration

Under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), federal courts are to consider "wise judicial administration" and conservation of judicial resources in managing parallel proceedings.   As the Court is aware, *Colorado River Abstention* strongly encourages Federal Courts to stay or dismiss a matter in Federal Court that is substantially similar to a parallel State Court matter.  For the same reason that *Pullman* abstention applies, *Colorado River* abstention applies here too—the Supreme Court of New Jersey, which is the sole authority on the meaning of New Jersey's RPCS—will be considering the exact same challenge to the Appellate Division's decision disqualifying Beasley Allen.

The Third Circuit has emphasized flexibility in applying *Colorado River* principles to avoid duplicative litigation and inconsistent rulings.  See *Ryan v. Johnson*, 115 F.3d 193, 196–97 (3d Cir. 1997); *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171–72 (3d Cir. 1999).  Although this case does not present identical parallel claims, the underlying concern — avoidance of inconsistent adjudications and inefficient duplication — is directly implicated. This Court should abstain from deciding the motion for disqualification until the New Jersey courts have reached a final decision.  Both jurisdictions rely on the same factual record. Acting now risks divergent interpretations of the same evidentiary findings.

### III.    THE SHARED FACTUAL RECORD HEIGHTENS THE RISK OF INCONSISTENT OUTCOMES

The plenary hearings underlying the Appellate Division's ruling involved participation from both state and federal jurisdictions. The trial court made express findings that no confidential information was shared and no misuse occurred – facts that would counsel *against* disqualification under traditional applications of RPC 5.3. The Appellate Division's ruling rests on its unique and unsupported legal construction of RPC 5.3. Failing to consider the ALI's Law Governing Lawyers, the ABA Model Rules, and the dozens of opinions from other jurisdictions evaluating the meaning of RPC 5.3. the Appellate Division decision inexplicably reached out to Black's Law Dictionary. Black's Law dictionary is appropriate in interpreting a contract under the reasonable person standard, but not to expand or amend the RPCs. Only the members of the Supreme Court of New Jersey can amend or expand the RPCs, including RPC 5.3.

Given the infirmity of the Appellate Division Order giving rise to the hearing before Your Honor, we urge the Court to abstain from ruling on the motion to disqualify as appeal to the Supreme Court of New Jersey is a matter of right. If this Court were to alter MDL leadership based on the intermediate appellate ruling — and the Supreme Court of New Jersey later narrows, clarifies, or reverses that interpretation — the two court systems could stand in materially different procedural postures based on the same evidentiary record. The Supreme Court of the United States has cautioned against "unseemly and expensive duplication" and inconsistent adjudication. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952). In the MDL context, where coordinated efficiency is paramount, that risk carries heightened significance.

## IV.    RESTRAINT IS PARTICULARLY APPROPRIATE IN THE MDL CONTEXT AND CONSISTENT WITH THIS COURT'S PRACTICE

### A.    Continuity of Leadership Is Critical to MDL Administration

11

This Court has long exercised careful oversight of this MDL with a focus on stability, predictability, and coordinated management across jurisdictions. The leadership structure of this MDL has been in place for nearly a decade.   Beasley Allen has played a critical leadership role in:

1.    Overseeing and leading all aspects of case management;
2.    Coordinating and leading expert development;
3.    Coordinating and leading *Daubert* proceedings;
4.    Coordinating and leading nationwide discovery;
5.    Taking liability depositions;
6.    Taking and defending expert depositions; and;
7.    Participating in related bankruptcy proceedings;

In complex MDLs, continuity of leadership is not merely administrative — it is integral to the efficient adjudication of thousands of individual actions.  The Third Circuit has recognized that district courts possess broad discretion in managing MDLs, but that discretion must be exercised with sensitivity to fairness and efficiency.  See *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 185–86 (3d Cir. 2008).  Maintaining the status quo temporarily while the New Jersey Supreme Court considers review promotes stability and avoids unnecessary disruption. Acting precipitously risks restructuring leadership in a manner that may soon require reversal.

In addition, because most of the cases are before this MDL Court only temporarily and for certain pre-trial purposes only, it would be particularly inappropriate for the Court to impose this New Jersey Appellate Division's interpretation of Rule 5.3 on all plaintiffs represented by Beasley Allen.  Such a decision would deprive them of their counsel of choice on the basis of a ruling that is unprecedented and inconsistent with the way Rule 5.3 is interpreted in all of the other jurisdictions where these cases will be litigated on the merits.

12

**B.      Cooperative Federalism in an MDL Is a Grave Concern Here**

Perhaps the most difficult question presented by the Appellate Division's ruling—and the one that may be rendered moot if the Supreme Court of New Jersey grants review—is its impact on Beasley Allen's representation of clients in jurisdictions beyond New Jersey.  Each of the states whose cases are centralized in this MDL has adopted its own Rules of Professional Conduct.  None has embraced the Appellate Division's expansive interpretation of the term "associated" under RPC 5.3.  To extend that single intermediate appellate court's ruling across the MDL would effectively override the ethics regimes of dozens of sovereign states that have never adopted such a construction.  Fundamental federalism principles require sensitivity to the prerogatives of those referring jurisdictions.  Regulation of the practice of law is a core sovereign function of each state's highest court.  *See Leis v. Flynt*, 439 U.S. 438, 442 (1979) (per curiam) ("The States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers." (emphasis added)).

The cases centralized in this MDL originate from federal courts applying the substantive law of numerous states, each of which has adopted and interpreted its own version of Rule 5.3.  No state supreme court has endorsed the Appellate Division's novel theory that a referral or consulting relationship constitutes "association" within the meaning of that rule.  For this Court to adopt that interpretation in an MDL setting would effectively subordinate the ethics regimes of the referring states to a single, unendorsed intermediate appellate decision—altering the expectations of litigants and counsel nationwide.

**C.      The Appellate Division is an Intermediate Court—and This Court is Not Required to Follow**

Federal courts are not bound to adopt a state court's determination where sufficient reason exists to exercise independent judgment. Under *Selling v. Radford*, 243 U.S. 46 (1917), the Supreme Court held that although a state court's disciplinary finding operates against an attorney's professional character, a federal court may decline to give it effect where there is "some other grave reason" counseling against doing so. *Id.* at 51. Multiple "grave reasons" are present here. The Appellate Division's interpretation of "associated" under RPC 5.3 is unprecedented. No other jurisdiction has adopted it. Its only textual support is a citation to Black's Law Dictionary—not a single reported decision from any court in any state. The trial court, after plenary proceedings and live testimony, expressly found that no confidential information was shared and no misuse occurred. The Appellate Division reversed that determination based not on any deficiency in the factual findings but on a purely legal construction that Judge Porto did not adopt and that no state supreme court has endorsed. The combination of a novel rule, the absence of any supporting authority, and the sweeping impact on thousands of non–New Jersey claimants provides more than sufficient "grave reason" for this Court to exercise its independent authority under *Selling* and decline to extend the Appellate Division's ruling to this federal MDL.

### D. Disqualification Is a Drastic Measure Demanding Heightened Scrutiny in the MDL Context

The Third Circuit has repeatedly characterized disqualification as a "drastic measure" that courts should impose only when absolutely necessary and only after careful balancing of competing interests. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160–62 (3d Cir. 1984). That caution applies with magnified force in a multidistrict litigation involving thousands of plaintiffs from across the United States. Disqualifying nationally selected MDL Co-Lead Counsel based on a single state appellate court's unprecedented expansion of an ethics rule would

disrupt coordinated leadership, impair settlement negotiations, and prejudice litigants who have relied on their chosen counsel for the better part of a decade.

The Supreme Court has recognized the substantial interests implicated by removal of counsel. See *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989) (recognizing, in the Sixth Amendment context, the significant interests at stake when a party is deprived of chosen counsel). Federal courts likewise possess inherent authority to supervise attorneys appearing before them in a manner consistent with the fair administration of justice. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). That inherent authority includes the power—and the responsibility—to decline to extend a state intermediate court's unendorsed interpretation where doing so would disrupt the orderly administration of a complex MDL and override the ethics frameworks of dozens of transferor jurisdictions.

Because this MDL aggregates cases from federal courts applying the law of numerous states, adopting the Appellate Division's unprecedented reading of RPC 5.3 would function as a *de facto* national ethics rule—overriding the prerogatives of other states' highest courts, none of which has embraced such a theory of "association." The principles articulated in *Selling*, *Corn Derivatives*, and *Chambers* require restraint. This Court should not adopt the Appellate Division's novel interpretation as the governing standard for a nationwide MDL, particularly when the Supreme Court of New Jersey has not yet spoken and may well reverse.

## V.    IF THE COURT REACHES THE DISQUALIFICATION ISSUE, IT SHOULD NOT REWARD JOHNSON & JOHNSON'S GAMESMANSHIP BY DISQUALIFYING BEASLEY ALLEN, WHICH WOULD PREJUDICE PLAINTIFFS

The disruption to the administration of these asbestos exposure cases is real and potentially irreversible. Beasley Allen represents approximately 5500 women and their families

15

with filed cases in the MDL. Andy Birchfield Declaration at ¶ 24. Beasley Allen represents 3 of the 6 bellwether plaintiffs whose cases are ready for trial. *Id* at ¶ 27. Plaintiff Carter Judkins, whose case has been selected for the first bellwether trial, is represented by Beasley Allen. *Id.* Removing Beasley Allen from leadership at this stage would require wholesale reassignment of responsibilities built over years of coordinated effort, dislocate pending trial preparation, and delay the resolution of claims brought by seriously ill individuals—many of whom have terminal ovarian cancer diagnoses and cannot afford further delay.

Moreover, if the Supreme Court of New Jersey reverses the Appellate Division's decision, this Court would then need to adjust the leadership committees yet again—compounding disruption with disruption. This Court has already endured repeated interruptions caused by J&J's successive and unsuccessful bankruptcy gambits. The administration of justice does not require this Court to absorb still another disruptive cycle when a brief stay would allow the Supreme Court of New Jersey to resolve the underlying legal question on an expedited basis.

## VI.    TEMPORARY RESTRAINT ADVANCES JUDICIAL ECONOMY AND FAIRNESS

This submission does not ask the Court to disregard the Appellate Division's decision. It asks only that this Court refrain from taking structural action until the Supreme Court of New Jersey has had the opportunity to determine whether the Appellate Division's interpretation of its own constitutional rules is correct.   Such restraint:

1. Respects state constitutional authority.
2. Avoids conflicting interpretations of RPC 5.3.
3. Protects interests of thousands of plaintiffs who have chosen Beasley Allen as their counsel; and
4. Serves the MDL's longstanding goals of coordinated efficiency.

The Supreme Court has observed that "a proper respect for state functions" underlies federal–state relations. *Younger v. Harris*, 401 U.S. 37, 44 (1971).  While not a classic younger scenario, the animating principle of respect for state regulatory authority applies with particular force here.

## CONCLUSION

The interpretation of RPC 5.3 is a matter of New Jersey constitutional authority.  The Supreme Court of New Jersey is the ultimate arbiter of that rule. Both this Court and the New Jersey courts participated in the development of the same factual record.  Acting now risks inconsistent outcomes and unnecessary instability in proceedings that demand coordinated efficiency—and inflicts concrete harm on thousands of plaintiffs who depend on continuity of leadership for the effective prosecution of their claims.  In light of controlling Supreme Court and Third Circuit precedent on abstention, comity, and wise judicial administration, Beasley Allen respectfully requests that this Court refrain from altering MDL leadership or case administration pending expedited review by the New Jersey courts.

Dated: February 18, 2026                                Respectfully submitted,

                                                        Jeffrey M. Pollock
                                                        **Pollock Law, LLC**
                                                        Counsel for Andy Birchfield and
                                                        Beasley, Allen, Crow, Methvin, Portis &
                                                        Miles, P.C.