FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773 PageID: 307171

## SUPREME COURT OF NEW JERSEY
### Docket No. 091773

| | |
|---|---|
| | A Motion for Leave to Appeal the February 6, 2026, Interlocutory Decision of the Superior Court of New Jersey, Appellate Division Docket No. A-000215-24 |
| IN RE TALC BASED POWDER PRODUCTS LITIGATION. | Civil Action<br><br>Sat Below:<br>Hon. Thomas W. Sumners, Jr., C.J.A.D.<br>Hon. Mark K. Chase, J.A.D.<br>Hon. Lorraine M. Augostini, J.A.D.<br><br>Date Submitted: March 9, 2026 |

## DEFENDANTS' BRIEF IN OPPOSITION TO BEASLEY ALLEN'S MOTION FOR LEAVE TO APPEAL

*Of Counsel and On the Brief:*
Peter G. Verniero, Esq. (#017471984)

*On the Brief:*
Michael S. Carucci, Esq. (#025192008)
Stephen A. Moran, Esq. (#414402023)

**SILLS CUMMIS & GROSS P.C.**
Peter G. Verniero, Esq.
One Riverfront Plaza
Newark, NJ 07102
973-643-7000
pverniero@sillscummis.com

**BARNES & THORNBURG LLP**
Jessica L. Brennan, Esq.
67 E. Park Place, Suite 1000
Morristown, NJ 07960
973-775-6120
jessica.brennan@btlaw.com

*(list of counsel continued on next page)*

**O'MELVENY & MYERS LLP**
Stephen D. Brody, Esq.
(admitted *pro hac vice* below)
1625 Eye Street, NW
Washington, DC 20006
202-383-5300
sbrody@omm.com

*Attorneys for Defendants Johnson & Johnson,*
*Johnson & Johnson Holdco (NA) Inc., Kenvue, Inc.,*
*Janssen Pharmaceuticals, Inc., Johnson & Johnson Consumer Inc.,*
*LLT Management, LLC f/k/a LTL Management, LLC, and Red River Talc LLC*

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

COUNTERSTATEMENT OF FACTS ........................................................... 3

PROCEDURAL HISTORY ............................................................................ 6

LEGAL ARGUMENT .................................................................................... 7

I.    SUPREME COURT REVIEW OF AN APPELLATE DIVISION'S
      INTERLOCUTORY DECISION IS EXTRAORDINARY AND
      NOT WARRANTED HERE .................................................................... 8

II.   INTERLOCUTORY REVIEW SHOULD BE DECLINED
      BECAUSE BEASLEY ALLEN HAS NOT AND CANNOT
      ESTABLISH ANY IRREPARABLE HARM .......................................... 9

III.  THE APPELLATE DIVISION'S INTERPRETATION OF RPC 5.3
      WAS SOUND, AND ITS THOROUGH, PUBLISHED OPINION
      OBVIATES ANY NEED FOR FURTHER REVIEW ........................... 12

      A.    The Appellate Division Correctly Interpreted The Meaning
            Of "Associated With," As Used In RPC 5.3 ............................... 13

      B.    The Appellate Division Properly Found An Underlying
            RPC 1.9 Violation ..................................................................... 19

      C.    The Appellate Division's Determination That Beasley Allen
            Ratified Conlan's Conduct Is Plainly Supported By The
            Record. ...................................................................................... 22

IV.   DISQUALIFICATION IS REQUIRED UNDER THIS COURT'S
      DECISION IN DEWEY. ....................................................................... 23

CONCLUSION ............................................................................................. 25

i

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

# TABLE OF AUTHORITIES

**Page(s)**

CASES

In re Appeal of Certain Sections of Unif. Admin. Proc. Rules,
  90 N.J. 85 (1982) ................................................................................................. 8

Barnes v. R.J. Reynolds Tobacco Co.,
  246 N.J. Super. 348 (App. Div. 1991) ....................................................... 24

Brundage v. Estate of Carambio,
  195 N.J. 575 (2008) ............................................................................................ 8

Burgos v. State,
  222 N.J. 175 (2015) .......................................................................................... 13

Dewey v. R.J. Reynolds Tobacco Co.,
  109 N.J. 201 (1988) ................................................................................*passim*

DiProspero v. Penn,
  183 N.J. 477 (2005) .......................................................................................... 14

Ex parte Hubbard,
  321 So. 3d 70 (Ala. 2020) ............................................................................... 14

Estate of Kennedy v. Rosenblatt,
  447 N.J. Super. 444 (App. Div. 2016) ....................................................... 16

Lakhani v. Patel,
  479 N.J. Super. 291 (App. Div. 2024) ....................................................... 16

Norman Int'l, Inc. v. Admiral Ins. Co.,
  251 N.J. 538 (2022) .......................................................................................... 23

In re Op. No. 735 of the Sup. Ct. Advisory Comm. on Prof'l
  Ethics,
  260 N.J. 482 (2025) .......................................................................................... 15

In re PMD Enters.,
  215 F. Supp. 2d 519 (D.N.J. 2002) ............................................................ 21

Reardon v. Marlayne, Inc.,
    83 N.J. 460 (1980) ............................................................................... 11

State v. Marrero,
    148 N.J. 469 (1997) ............................................................................... 8

State v. Reldan,
    100 N.J. 187 (1985) ............................................................................... 8

In re Talc Based Powder Prods. Litig.,
    __ N.J. Super. __ (App Div. 2026) (slip op. )
    (appended at Pa1-30) ...................................................................*passim*

Thermo Contracting Corp. v. Bank of N.J.,
    69 N.J. 352 (1976) ............................................................................... 23

W. Union Tel. Co. v. Call Publ'g Co.,
    181 U.S. 92 (1901)............................................................................... 14

**RULES**

RPC 1.9.................................................................................*passim*

RPC 1.10 ............................................................................... 16

RPC 5.3 ..................................................................................*passim*

RPC 8.4 ............................................................................... 15

Rule 2:2-2 .......................................................................... 8, 9

Rule 2:2-5 ............................................................................... 8

Rule 2:6-2 ............................................................................... 3

Rule 2:9-5 ............................................................................... 7

Rule 4:41-2............................................................................... 16

**OTHER AUTHORITIES**

Black's Law Dictionary (12th ed. 2024). ..................................14, 15

iii

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773 PageID: 307176

Douglas R. Richmond, Watching Over, Watching Out: Lawyers'
    Responsibilities for Nonlawyer Assistants,
    61 U. Kan. L. Rev. 441 (2012) ................................................................. 17

Restatement (Third) of the Law Governing Lawyers § 123
    (Am. Law Inst. 2000). .......................................................................... 15

## **KEY OF ABBREVIATED REFERENCES**

"BAb" refers to Beasley Allen's brief, submitted on February 26, 2026, and amended on March 4, 2026, in support of its pending motion for leave to appeal.

"Pa" refers to Beasley Allen's appendix, submitted on February 26, 2026, and amended on March 4, 2026, in support of its pending motion for leave to appeal.

"Da" refers to Defendants' appendix filed contemporaneously with this brief.

"Brennan Cert." refers to the certification of Jessica L. Brennan, Esq. filed contemporaneously with this brief.

Defendants submit this brief in opposition to the motion for leave to appeal the Appellate Division's February 6, 2026, interlocutory decision. Movants are the disqualified Beasley Allen Law Firm and one of its disqualified attorneys, Andy Birchfield (collectively, Beasley Allen or the disqualified firm).

## PRELIMINARY STATEMENT

Since early February, the Alabama-based law firm of Beasley Allen, admitted *pro hac vice*, has rightfully been disqualified from serving as counsel in this ongoing litigation. The Appellate Division correctly ordered that disqualification after it determined that the firm had violated New Jersey's Rules of Professional Conduct (RPC or RPCs). Specifically, Beasley Allen "knowingly collaborated" with a lawyer—James Conlan—who had represented Johnson & Johnson (J&J) *in this same talc litigation.* While representing J&J, Conlan billed 1,600 hours and $2.24 million in legal fees while acquiring "intimate knowledge" of the company's "highly valuable confidential information." Despite the appellate court's sound judgment, the disqualified firm has since filed—or misfiled—six applications in three different courts to try to block, subvert or overturn that ruling. Each application has been pursued solely on behalf of the law firm, not any of its former clients. None has succeeded so far. This latest effort should fare no better.

This Court need not take the extraordinary step of intervening in this

1

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

interlocutory matter. Supreme Court review is simply not "necessary to prevent irreparable injury"—the stringent standard governing such intervention. And there is no reason to second guess the Appellate Division. The panel's 30-page published opinion, authored by Judge Chase and joined by Chief Judge Sumners and Judge Augostini, is unassailable.

The Appellate Division grounded its analysis in RPC 5.3's plain language, applying well-settled canons of construction. The panel began by construing the phrase "associated with," as used in the rule's triggering clause, in a manner that preserved its independent meaning. Recognizing that RPC 5.3(c) **assumes** that the nonlawyer was acting as a lawyer, the court then correctly stated that the "relevant inquiry" is "whether Conlan **would have** violated RPC 1.9 **had he been** acting as a lawyer." This second element was satisfied by Movants' admission. As for the final component of the rule, the Appellate Division concluded that the record contained ample evidence to support a finding that Beasley Allen "ratified" Conlan's conduct. No more was required to hold Beasley Allen in violation of RPC 5.3.

This outcome should come as no surprise. Nearly forty years ago, this Court observed that it could not "conceive of any situation in which [a] side-switching attorney or his new firm would be permitted to continue representation if . . . the attorney had in fact **actually** represented the former

2

client or had acquired confidential information concerning that client's affairs." Such is precisely what occurred here.

That precedent, coupled with the Appellate Division's meticulous opinion, supplies attorneys practicing in our state with appropriate and meaningful ethical guidance. No further direction is required.

The Appellate Division's decision is not only correct and well-reasoned as a matter of law, it also is just. The disqualification of Beasley Allen righted a serious wrong—one that occurred when the firm knowingly associated itself with J&J's former lawyer in a manner adverse to J&J's interests and contrary to the integrity of our legal system. There is no possibility of grave injustice resulting from the Appellate Division's interlocutory decision. Grave injustice would result only if that decision were disturbed.

## COUNTERSTATEMENT OF FACTS[1]

For nearly two years, Conlan represented J&J as outside counsel in the talc litigation. See In re Talc Based Powder Prods. Litig., __ N.J. Super. __, __ (App Div. 2026) (slip op. at 2). During that time, Conlan acquired "intimate knowledge" of J&J's "highly valuable confidential information," including J&J's litigation "strategy," "settlement analysis" and how the company "valued"

_____

[1] Beasley Allen's version of the facts largely are asserted without reference to the record, contrary to Rule 2:6-2(a)(5).

3

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

the pending talc claims. Id. at 2, 7. And Beasley Allen knew, since 2020, that Conlan represented its litigation adversary—J&J—because the disqualified firm "negotiated on a settlement of th[o]se same talc claims" with Conlan during his tenure as J&J's outside counsel. Id. at 26-27.

In 2021, J&J filed its first bankruptcy petition to resolve its talc liabilities. Id. at 7. During the pendency of that bankruptcy, Conlan left his former firm to start Legacy Liability Solution (Legacy), a company whose business model was to acquire and resolve legal liabilities like those involved in this talc litigation. Id. at 2, 7. In fact, Conlan approached J&J on several occasions to propose that Legacy acquire those same talc liabilities. Id. at 7-8, 12. J&J either ignored or rejected those proposals, preferring—instead—to resolve the talc claims through bankruptcy. Id. at 8, 12, 25-26.

Prior to mediation in J&J's second bankruptcy (the LTL 2 bankruptcy), Conlan "engaged directly with Birchfield and Beasley Allen." Id. at 8. From that point forward, Conlan and Beasley Allen "regularly communicated by phone and in-person about the talc litigation," id. at 21-22, and "exchanged extensive communications." Id. at 8. Beasley Allen also provided Conlan with confidential "work product," including "information about ovarian cancer case values, injuries, and damages analysis that were relevant to the talc litigation." Id. at 22.

Once mediation was ordered in the LTL 2 bankruptcy in May 2023,

4

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

Beasley Allen "actively encouraged" Conlan "to participate" and "develop a settlement proposal" with the firm. Id. at 26. Indeed, Birchfield admitted that he, "personally," "wanted Legacy to be part of that mediation" because he believed that Legacy "had a role to play." Id. at 9. To that end, Conlan and Beasley Allen "engaged in mediation discussions regarding the talc claims" and a "settlement proposal to J&J." Id. at 22.

"Beasley Allen later asserted a mediation privilege" over its communications with Conlan. Ibid. There, the firm's privilege log "revealed numerous communications *beginning in April 2023* regarding matters directly related to the talc litigation, on which Conlan had represented J&J." Ibid. (emphasis added). In determining whether those communications were privileged, the Special Adjudicator in the federal multidistrict litigation (MDL) observed that Conlan and Birchfield "collaborated on a settlement proposal to J&J," a fact that the trial court later accepted. Ibid. But, during mediation, "[n]either Conlan nor Birchfield informed J&J's counsel of their collaboration." Id. at 8. Nor did Movants inform the mediators in the LTL 2 bankruptcy that Conlan had previously represented J&J in the talc litigation. Id. at 10.

Even after the LTL 2 bankruptcy was dismissed, Conlan and Beasley Allen "continued to communicate about [the] settlement proposal for J&J." Id. at 22. J&J only learned of the Conlan-Beasley Allen collaboration when, in

5

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773 PageID: 307183

October 2023, Conlan sent J&J an email stating that he "had the support of lead counsel for the ovarian cancer claimants, including Birchfield," and that the two "were willing to meet with J&J to discuss" the settlement proposal. Id. at 13. In November 2023, Conlan sent another proposal to the company, which "included a settlement matrix that Legacy had received from Beasley Allen." Id. at 14.

## PROCEDURAL HISTORY

The state trial court presiding over the multicounty litigation (MCL), together with the federal magistrate judge presiding over the MDL, conducted a joint evidentiary hearing. Afterward, the state trial court ultimately denied J&J's motion to disqualify Beasley Allen. (Pa31). But it did so by wrongly focusing on whether J&J met its burden of proving that "Conlan shared confidential and privileged information belonging to J&J" with Beasley Allen. (Pa50).

On interlocutory appeal, the Appellate Division reversed the state trial court order. In a 30-page, published opinion, the panel recognized that the trial court's "focus should ***not*** have been on whether confidential information" was shared; instead, the "relevant inquiry" is "whether Conlan ***would have*** violated RPC 1.9 had he been acting as a lawyer for purposes of RPC 5.3(c)." Id. at 24-25 (emphases added). Finding all three elements of RPC 5.3 satisfied, the Appellate Division remanded for an order disqualifying Beasley Allen, id. at 30, which the trial court entered on February 9, 2026. (Pa64).

6

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

Since then, Beasley Allen has sought to disrupt the Appellate Division's interlocutory decision through six separate filings in three different courts. Initially, the firm improvidently moved before the trial court for a stay of the appellate court's decision, in violation of Rule 2:9-5(b). That motion was denied. (Pa65). The Appellate Division then denied Beasley Allen's application for permission to file an emergent stay motion, reasoning—in relevant part— that the firm failed to establish "a threat of irreparable injury." (Pa66). After being denied permission to file an emergent stay motion, the firm returned to the Appellate Division, filing what it labeled as an "emergent motion for leave to appeal to stay the trial court's order of February 9, 2026," incorporating the February 6, 2026, order pending a "petition for certification" to the Supreme Court. That filing was subject to further "[c]larification" in response to the Clerk of the Appellate Division; the firm's motion was allowed to proceed and is now pending.

Before this Court, Beasley Allen first filed a notice of motion for stay seeking to file "an appeal as of right under R. 2:3-1 . . . and, in the alternative, as a petition for certiorari." After the Supreme Court Clerk's Office rejected that filing on February 25, 2026, the firm "withdrew" that motion. Which brings us to this motion for leave to appeal.

## LEGAL ARGUMENT

7

## I.   SUPREME COURT REVIEW OF AN APPELLATE DIVISION'S INTERLOCUTORY DECISION IS EXTRAORDINARY AND NOT WARRANTED HERE.

Our Court Rules afford a litigant ***no right*** to appeal an interlocutory order of the Appellate Division. See Brundage v. Estate of Carambio, 195 N.J. 575, 598-99 (2008); R. 2:2-5(a). Instead, a litigant must obtain leave from the Supreme Court. R. 2:2-2(a). Ultimately, the Court's decision to grant leave is "highly discretionary" and a power that is "exercised only sparingly." State v. Reldan, 100 N.J. 187, 205 (1985); accord State v. Marrero, 148 N.J. 469, 480-81 (1997) (stating that "a denial of leave to appeal by this Court is the rule rather than the exception").

As the Movant here, Beasley Allen faces, and cannot satisfy, the "stringent standard" for interlocutory review imposed by Rule 2:2-2(a). Brundage, 195 N.J. at 599. Specifically, the rule requires a showing that this Court's review is "necessary to prevent irreparable injury." R. 2:2-2(a). Put differently, leave is granted only when "there is the possibility of 'some grave damage or injustice' resulting" from the interlocutory order. Brundage, 195 N.J. at 599 (citation omitted).

As discussed in Points II-IV below, Beasley Allen has not demonstrated an entitlement to such "rarely granted" review for three primary reasons. In re Appeal of Certain Sections of Unif. Admin. Proc. Rules, 90 N.J. 85, 100 (1982).

8

First, the firm's continued disqualification will not harm Plaintiffs given the host of other qualified firms that are either presently representing them or readily able to do so. See infra Point II. Second, as Beasley Allen previously recognized, "RPC 5.3 does not require any 'clarification' on an interim basis." (Da2). That is especially true following publication of the Appellate Division's meticulous opinion. See In re Talc, __ N.J. Super. at __ (slip op.). See infra Point III. And third, the Appellate Division correctly considered this Court's precedent in Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201 (1988), in determining that Beasley Allen's immediate disqualification was required. See infra Point IV.

## II. INTERLOCUTORY REVIEW SHOULD BE DECLINED BECAUSE BEASLEY ALLEN HAS NOT AND CANNOT ESTABLISH ANY IRREPARABLE HARM.

Until the Appellate Division's disqualification decision, J&J sustained unmistakable harm by having to defend itself against a plaintiffs' firm that closely "collaborated" with the company's former outside counsel "to advance" the interests of J&J's adversaries. In re Talc, __ N.J. Super. at __ (slip op. at 2). That collaboration not only severed the trust inherent in the attorney-client relationship, but also impugned the integrity of the legal process as a whole. In contrast, Beasley Allen has not established that "irreparable" harm will result absent this Court's discretionary review of that decision. R. 2:2-2(a).

According to the disqualified firm, its continued disqualification would

9

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

harm Plaintiffs in three primary ways. It would (i) impair Plaintiffs' rights to their "counsel of choice"; (ii) deprive them of Beasley Allen's "institutional knowledge"; and (iii) jeopardize certain "imminent" trial dates. (BAb1-2, 6). Beasley Allen advances those purported injuries without a single supporting affidavit from any Plaintiff, including the first two bellwether Plaintiffs for whom the firm served as one of several co-counsel. (See Brennan Cert. ¶ 6). None of the approximately 2,700 Plaintiffs—including the 435 that Beasley Allen represented—has endorsed or substantiated these alleged harms, even though Beasley Allen has been disqualified for one month now and presumably has informed Plaintiffs of that fact. The silence from Plaintiffs suggests the firm's stated harms are not genuine, but rather unsupported arguments proffered to preserve the firm's role in this litigation. Harms isolated or personal to the disqualified firm are of no moment in the analysis and should be ignored.

Even assuming Plaintiffs agree with Beasley Allen's position, and affidavits were produced, the result is the same. That is so because, from an objective perspective, there is no real harm to Plaintiffs given the abundance of other qualified firms that are already representing them. (See Brennan Cert. ¶¶ 6, 8, 12, 15, 17). Even if some modicum of harm could be asserted by Plaintiffs, it would derive *solely* from Beasley Allen's own unethical conduct. As this Court has said, "there is *no right* to demand to be represented by an attorney

10

**FILED,** Clerk of the Supreme Court, 10 Mar 2026, 091773

disqualified because of an ethical requirement." <u>Dewey</u>, 109 N.J. at 218 (emphasis added) (quoting <u>Reardon v. Marlayne, Inc.</u>, 83 N.J. 460, 477 (1980)).

As already indicated, any risk of disruption or delay occasioned by Beasley Allen's removal is mitigated by the host of remaining plaintiffs' firms that are either presently representing Plaintiffs or readily available as substitutes. (<u>See</u> Brennan Cert. ¶¶ 6, 8, 12, 15, 17). Beasley Allen, an Alabama-based firm, has at least one local co-counsel that sponsored the firm's *pro hac vice* admission in **every case** it has pending in the MCL. (Brennan Cert. ¶¶ 6, 15). Those local firms are not mere sponsors; they have been involved in the MCL since its inception, hold leadership roles, have retained the "best experts," "conducted discovery" and possess the institutional knowledge necessary to accomplish a seamless transition. (Brennan Cert. ¶¶ 6, 13, 14; Da200). Thus, work performed by the disqualified firm will not need to be "replicated." (BAb2). And there is no credible threat that Beasley Allen's (former) plaintiffs will be left without adequate and knowledgeable representation. (Brennan Cert. ¶ 15).

Finally, Beasley Allen's concern over "imminent" deadlines lacks a factual basis. (BAb1-2). Other than the <u>Carl</u> and <u>Balderrama</u> cases,[2] there are six

---

[2] The first bellwether case, <u>Carl</u>, was originally scheduled for trial starting on April 13, 2026, but has since been adjourned until August 17, 2026. (Brennan Cert. ¶ 4; Da6; Da10-11, 5:5-24, 8:10-16). Other than that trial, no other

cases in the first bellwether pool, each of which is subject to further discovery and does not yet have a trial date. (Brennan Cert. ¶ 7). Of those cases, Beasley Allen is involved in only four. (Brennan Cert. ¶ 8). Nor are there any other firm deadlines that will be impacted by Beasley Allen's departure. (Brennan Cert. ¶¶ 7, 16-17). It is therefore not the case, as in <u>Dewey</u>, that Beasley Allen was disqualified "on the eve of trial. . . ." 109 N.J. at 219. (<u>See</u> BAb6).

Given the status of these coordinated proceedings and the direct involvement of the remaining plaintiffs' firms, no Plaintiff will be irreparably harmed by Beasley Allen's continued disqualification. (Brennan Cert. ¶ 17). While any continued transition to substitute counsel may present logistical items to resolve, they are—at most—manageable procedural matters inherent to attorney disqualification, which, as noted, was ordered one month ago. And the ethical integrity of these proceedings must take precedence over mere convenience factors. Indeed, the Appellate Division recognized as much when it restored this case to a proper ethical footing through its faithful interpretation and application of RPC 5.3, a subject to which we now turn.

## III. THE APPELLATE DIVISION'S INTERPRETATION OF RPC 5.3 WAS SOUND, AND ITS THOROUGH, PUBLISHED OPINION OBVIATES ANY NEED FOR FURTHER REVIEW.

---

deadlines have been set. (Brennan Cert. ¶ 4). The second bellwether case, <u>Balderrama</u>, is not presently on the trial calendar and no other deadlines have been set. (Brennan Cert. ¶ 5). Without Beasley Allen, there are multiple remaining firms representing plaintiffs in both cases. (Brennan Cert. ¶ 6).

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

Contrary to Beasley Allen's position, the Appellate Division's decision was not "novel" (see BAb5), but rather mandated by proper application of well-settled interpretive principles to RPC 5.3's plain text. The resulting 30-page opinion is unassailable and furnishes litigants and their counsel with clear and appropriate ethical guidance, thereby obviating any need for further appellate review or this Court's intervention. And the disqualified firm cannot establish any harm to Plaintiffs or the Bar resulting from that decision.

### A. The Appellate Division Correctly Interpreted The Meaning Of "Associated With," As Used In RPC 5.3.

As the Appellate Division explained, RPC 5.3 "is triggered if Beasley Allen 'associated' with Conlan, who the [trial] court found was acting as a nonlawyer when he left [his former firm] in March 2022 to become the CEO of Legacy," a then-new business venture that Conlan had founded. In re Talc, __ N.J. Super. at __ (slip op. at 21). The panel then correctly interpreted "associated with," as used in RPC 5.3. Ibid. Observing that the rule's triggering clause contains three different sets of verbs—"employed," "retained by" and "associated with"—the Appellate Division applied a familiar canon of interpretation to avoid rendering the text meaningless. Ibid.; see Burgos v. State, 222 N.J. 175, 203 (2015) (courts "do not support interpretations that render statutory language as surplusage or meaningless").

13

**FILED,** Clerk of the Supreme Court, 10 Mar 2026, 091773

As a result, the court arrived at the conclusion compelled by the rule's plain text: RPC 5.3 "does not require the nonlawyer to be employed or retained by the lawyer in order for the nonlawyer to associate with a lawyer." In re Talc, __ N.J. Super. at __ (slip op. at 21). Because the rule does not define "associate," the Appellate Division next set out to determine the word's plain, ordinary meaning, as it typically would do. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (courts "ascribe to the statutory words their ordinary meaning and significance"). Relying on a well-respected source—Black's Law Dictionary— the court concluded that the verb "associate" means "[t]o join or unite in friendship, companionship, business, or some other common purpose, action, or condition; to link together." In re Talc, __ N.J. Super. at __ (slip op. at 21) (quoting Black's Law Dictionary 151 (12th ed. 2024)).

In relying on Black's Law Dictionary, the panel did not, as Beasley Allen suggests, act in an "unprecedented" manner or adopt "the broadest conceivable definition." (BAb1). Rather, the Appellate Division followed a long-standing practice that is widely employed by appellate courts throughout the country when interpreting undefined terms. See, e.g., W. Union Tel. Co. v. Call Publ'g Co., 181 U.S. 92, 102 (1901) (the United States Supreme Court's first citation to Black's Law Dictionary); Ex parte Hubbard, 321 So. 3d 70, 79 (Ala. 2020) (stating that "legal reference works," such as "Black's Law Dictionary," "are

14

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773 PageID: 307192

informative"). Just last year, the same process was employed by a member of this Court when interpreting the meaning of RPC 8.4(c). See In re Op. No. 735 of the Sup. Ct. Advisory Comm. on Prof'l Ethics, 260 N.J. 482, 508 (2025) (Fasciale, J., dissenting) (using Black's Law Dictionary to define "dishonesty," "deceit" and "misrepresentation"). Indeed, Beasley Allen similarly recognized the value of Black's Law Dictionary by citing to it below. (See Da3-4).

In any event, there is nothing unusual about Black's definition of "associate." It is consistent with the Restatement of the Law Governing Lawyers. The Restatement explains, for example, that lawyers can "associate" with one another when they act as co-counsel on the same case. Restatement (Third) of the Law Governing Lawyers § 123, cmt. c(iii) (Am. Law Inst. 2000). Similarly, "when a lawyer consults with other lawyers in specialized areas of the law," the lawyers have formed "an association for purposes of the matter in question," even if "the consultant lawyer may not personally represent clients with conflicting interests." Ibid. In neither of these examples would there be employment or retention.

Beasley Allen also stresses that the Appellate Division's interpretation of "associate" is without New Jersey precedent and allegedly runs counter to other "cases, disciplinary rulings and commentary." (BAb1, 8). But that argument is unavailing for several reasons. First, as a nationally distinguished and learned

15

**FILED,** Clerk of the Supreme Court, 10 Mar 2026, 091773

tribunal, the Appellate Division is fully capable of reaching a sound conclusion on its own. In fact, the Appellate Division regularly interprets and applies both the Court Rules and RPCs in matters of "first impression." (BAb8). <u>See, e.g.,</u> <u>Lakhani v. Patel</u>, 479 N.J. Super. 291, 293 (App. Div. 2024) (determining scope of <u>Rule</u> 4:41-2 in a matter "of first impression"); <u>Estate of Kennedy v.</u> <u>Rosenblatt</u>, 447 N.J. Super. 444, 452 (App. Div. 2016) ("interpreting the phrase 'has information,'" as used in RPC 1.10(b)(2), in a manner that "serves the purpose of the RPCs").

<u>Second</u>, Beasley Allen does not specify any of the other "cases, disciplinary rulings and commentary." (BAb1, 8). If the firm is referring to the out-of-state decisions included in the chart it provided below (<u>see</u> Da18-22), those decisions do not confine "associated" to mean "nonlawyers who are retained by, work for, or are otherwise financially obligated to the lawyer in question." (BAb1-2). Most, if not all, of those decisions concerned nonlawyers either "employed" or "retained" by lawyers. (<u>See</u> Da18-22). Thus, the respective courts had no reason to, and did not, visit the scope or meaning of RPC 5.3's third and independent triggering category—<u>i.e.</u>, "associated with." Those foreign authorities do not support Beasley Allen's position.

<u>Third</u>, the Appellate Division's analysis, including its construction of "associated with," finds support in a law review article cited below by Beasley

16

Allen itself. (See Da20). The author explains that "associated with" is a separate, "third category" of relationships that "must extend beyond" the first two categories: "typical employer-employee and independent contractor arrangements." Douglas R. Richmond, Watching Over, Watching Out: Lawyers' Responsibilities for Nonlawyer Assistants, 61 U. Kan. L. Rev. 441, 451 (2012). The author then correctly states that, absent a broader construction than the preceding categories, "the 'associated with' language in [RPC 5.3 would be] superfluous." Ibid. In providing examples of qualifying relationships, the article goes on to suggest that a nonlawyer "might foreseeably be associated with a lawyer for [RPC] 5.3 purposes where" (1) "the lawyer asks the person to assist with a project or task related to the lawyer's practice but does not compensate the person"; or (2) "the person offers to assist the lawyer in an aspect of the lawyer's practice and the lawyer accepts the offer." Id. at 451-52.

Those examples fit squarely here. Although there was no known "contractual or financial relationship" between the two (BAb4), the now disqualified firm "actively encouraged" Conlan to join Plaintiffs' mediation efforts, approved of his participation in mediation and "collaborated" on a settlement proposal with him that was "materially adverse" to J&J's interests. In re Talc, __ N.J. Super. at __ (slip op. at 26). Those actions created a foreseeable association, and no more is required under the rule.

17

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773 PageID: 307195

Beasley Allen's contrary construction is untenable. It asserts that an association must involve "direction, supervision, or control" by the attorney. (BAb7-8). But the firm cites no source for defining "associate" exclusively in that manner. And, as already noted, Beasley Allen's construction—particularly reading the supervision requirement into RPC 5.3's triggering clause—would render parts of that clause surplusage.

Disagreeing with the Appellate Division, Beasley Allen now posits a parade of horribles far removed from reality. Specifically, the firm argues that the Appellate Division's decision threatens to "chill" candid mediation communications by creating concern that "any attorney who participates in court-ordered mediation . . . could be deemed 'associated' with other parties, vendors, or consultants present in those proceedings." (BAb8-9). Beasley Allen suggests that Conlan was a detached business actor working exclusively on his own, without regard for the disqualified law firm's interests or goals. (BAb3-4).

But that contention reflects a sanitized account of the Conlan-Beasley Allen association and misstates the true depth of the relationship. Instead, Conlan joined with J&J's adversary in a common purpose to advance goals contrary to those of his former client in the same litigation. As the Appellate Division correctly recognized, the relationship between Beasley Allen and Conlan went far beyond mere communications in a court-ordered mediation;

18

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

instead, it reflected a broader unity of that "common purpose":

- In April 2023, prior to the mediation in the LTL 2 bankruptcy, "Conlan, acting through Legacy, engaged directly with Birchfield and Beasley Allen. Neither Conlan nor Birchfield informed J&J's counsel of their collaboration." In re Talc, __ N.J. Super. at __ (slip op. at 8);

- "[B]eginning in May 2023, Conlan and Beasley Allen lawyers regularly communicated . . . about the talc litigation." Id. at 21-22;

- Later in May 2023, "Beasley Allen sent Conlan work product, including information about ovarian cancer case values, injuries, and damages analysis that were relevant to the talc litigation." Id. at 22;

- During the mediation in the LTL 2 bankruptcy, "Conlan and Beasley Allen engaged in mediation discussions regarding the talc claims," and "Beasley Allen later asserted a mediation privilege" over those communications. Ibid.;

- Beasley Allen's privilege log "revealed numerous communications beginning in April 2023 regarding matters directly related to the talc litigation, on which Conlan had represented J&J." Ibid.;

- In determining whether those communications were protected by the mediation privilege, the Special Adjudicator in the MDL stated that "Conl[a]n and Birchfield collaborated on a settlement proposal to J&J," a fact that the trial court later accepted. Ibid. (alteration in original); and

- "Even when the LTL 2 bankruptcy was dismissed in late July 2023, Conlan, Birchfield, and Beasley Allen continued to communicate about Legacy's . . . settlement proposal for J&J." Ibid.

Based on those facts, the Appellate Division's ruling is supported even under a narrow construction of the term "associate."

### B. The Appellate Division Properly Found An Underlying RPC 1.9 Violation.

19

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773PageID: 307197

After finding that RPC 5.3 was triggered, the panel considered whether Conlan's conduct "would have been a violation of the ethical rules had Conlan been acting as a lawyer." Id. at 23. In examining that issue, the Appellate Division turned to RPC 1.9, which describes a lawyer's duties to former clients. That rule provides—in relevant part—that:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

[RPC 1.9(a).]

Not much need be said of this point because, as Beasley Allen recognized below, both Birchfield and Conlan "concede[d] that given Conlan's possession of J&J's confidences and that Conlan had been a lawyer for J&J," RPC 1.9 "would apply" and would have prevented Beasley Allen from "hir[ing] or retain[ing] Conlan without a waiver." (Da195). And, as the Appellate Division correctly noted, the "relevant inquiry" is "not [whether] Conlan gave any confidential information to" Beasley Allen. In re Talc, __ N.J. Super. at __ (slip op. at 24-25). Instead, it is "whether Conlan **would have** violated RPC 1.9 **had he been** acting as a lawyer. . . ." Id. at 25 (emphases added).

Because RPC 5.3 **assumes** that the non-lawyer (Conlan) was acting as a

20

lawyer for purposes of the underlying ethics violation—here, RPC 1.9—it is immaterial that Conlan "did not serve as an attorney" by representing another client after starting Legacy. (BAb3-4). If actual representation by the nonlawyer were required, RPC 5.3 would be toothless. Indeed, the "fundamental tenet" of RPC 5.3 is that "an attorney may not do through an agent that which he could not do himself." In re PMD Enters., 215 F. Supp. 2d 519, 529 (D.N.J. 2002).

The Appellate Division then considered whether the goals of the Conlan-Beasley Allen collaboration were materially adverse to those of J&J, as prohibited by RPC 1.9(a). On that question, the panel observed that "J&J's preferred method of resolving the talc claims was through bankruptcy," while Conlan and Beasley Allen desired a "different method that J&J had already rejected, and which was clearly contrary to J&J's preferred method of resolution." In re Talc, __ N.J. Super. at __ (slip op. at 25-26). The Appellate Division further found it "disingenuous" for Beasley Allen to assert that the interests of all parties were aligned because J&J "also wanted resolution of the talc claims. . . ." Id. at 25. "Realistically," Beasley Allen and Conlan wanted to settle those claims "at the greatest amount possible," while J&J wanted "the opposite." Id. at 26. As a result, the Appellate Division properly held that "Conlan worked together with Beasley Allen, whose interests in the talc litigation are materially adverse to those of Conlan's former client, J&J." Ibid.

21

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

### C. The Appellate Division's Determination That Beasley Allen Ratified Conlan's Conduct Is Plainly Supported By The Record.

As for the final component of RPC 5.3, the Appellate Division held that Beasley Allen "ratified" Conlan's conduct "that would have constituted a violation of RPC 1.9(a)." Ibid. The record unmistakably supports the Appellate Division's conclusion.

Below, Beasley Allen admitted that Birchfield "sought to include Legacy in the mediation process" (Da198), and Birchfield's testimony confirmed that, rather than "stop Conlan's actions," the firm "actively encouraged Conlan . . . to participate in the June 2023 mediation and develop a settlement proposal with" Beasley Allen. In re Talc, __ N.J. Super. at __ (slip op. at 26). In observing Birchfield's testimony, the trial court understood him to say that "[Legacy] did what [Birchfield] wanted [Legacy] to do." (Da225-26, 112:2-113:4). It is, therefore, not the case, as Beasley Allen argues, that the firm never "exercised any amount of control over [Conlan's] conduct." (BAb4). Finally, as the Appellate Division correctly recognized, the Conlan-Beasley Allen collaboration occurred despite "Beasley Allen having *known* since 2020 that Conlan represented J&J, its litigation adversary on the same issue, and previously negotiated on a settlement of these same talc claims with Conlan when he was outside counsel for J&J." In re Talc, __ N.J. Super. at __ (slip op. 26-27) (emphasis added). Those actions, whether taken as a whole or

22

**FILED,** Clerk of the Supreme Court, 10 Mar 2026, 091773

independently, demonstrate the requisite knowledge and intent to establish ratification. See, e.g., Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 361 (1976) (stating that "[r]atification" requires an "intent to ratify plus full knowledge of all the material facts," which "may be inferred from the *failure to repudiate* an unauthorized act") (emphasis added).

Under RPC 5.3(c), a lawyer is responsible for the ethical violations of a nonlawyer in discrete scenarios, which are separated by the disjunctive "or": The lawyer, in relevant part, either "ratifies the conduct involved" *or* "has direct supervisory authority over" the conduct of the nonlawyer. RPC 5.3(c)(1)-(2); see Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 554 (2022) (stating that "[a] list of multiple terms, separated by commas and the word 'or,' is disjunctive, and *only one* is necessary") (emphasis added). Because the Appellate Division found that ratification was satisfied here, it had no reason to delve further down the rule's list of options and consider whether additional bases for the violation existed.

In sum, Beasley Allen is responsible, under a plain reading of RPC 5.3, for what would have been Conlan's violation of RPC 1.9(a). There is, therefore, no reason to disturb the Appellate Division's disqualification decision.

## IV.   DISQUALIFICATION IS REQUIRED UNDER THIS COURT'S DECISION IN <u>DEWEY</u>.

Although it did not do so before the Appellate Division reached its

decision, Beasley Allen now cites Dewey to argue it should remain in this case. It does so by stating that one Plaintiff is on the "eve of trial" with an April 13, 2026, trial date. (BAb2, 6). For starters, that date is wrong. See supra p. 11, n.2. More broadly, the disqualification result reached by the Appellate Division is compelled by this Court's precedent in Dewey and the Appellate Division's decision in Barnes v. R.J. Reynolds Tobacco Co., 246 N.J. Super. 348 (App. Div. 1991). In those "extraordinary" and "unusual" cases, the side-switching lawyer's new firm was permitted to continue its representation—despite the ethical violation—albeit "without compensation for any services" subsequently rendered. 109 N.J. at 219-22; 246 N.J. Super. at 356-57. But both Dewey and Barnes were decided under the "appearance of impropriety" doctrine, meaning that—unlike here—the lawyer at issue did not have an "*actual* conflict of interest." 109 N.J. at 210-11; see also 246 N.J. Super. at 353-54.

Importantly, the Dewey Court acknowledged that it could not "conceive of *any situation* in which the side-switching attorney or his new firm would be permitted to continue representation if, unlike the situation before us, the attorney had in fact *actually* represented the former client or had acquired confidential information concerning that client's affairs." 109 N.J. at 220 (first emphasis added); see also Barnes, 246 N.J. Super. at 354. Such is the case here. Beasley Allen "knowingly collaborated" with Conlan who actually represented

24

FILED, Clerk of the Supreme Court, 10 Mar 2026, 091773

J&J in the talc litigation "for nearly two years" and acquired "intimate knowledge" of J&J's "highly valuable confidential information. . . ." In re Talc, __ N.J. Super. at __ (slip op. at 2, 7, 30). Thus, under Dewey, either of those facts—standing alone—defeats the firm's efforts to remain as counsel in these proceedings. See 109 N.J. at 220.

## CONCLUSION

Beasley Allen no longer has a voice in this litigation and for good reason. After several failed attempts to run from the Appellate Division's reasoned and correct judgment, Movants should not be granted yet another opportunity to be heard. As the appellate panel below aptly noted, "'The rules of professional behavior are not branches which bend and sway in the winds of the job market' but are instead 'the bedrock of professional conduct.'" In re Talc, __ N.J. Super. at __ (slip op. at 30) (quoting Dewey, 109 N.J. at 221). Defendants respectfully request that the Court deny Beasley Allen's motion for leave to appeal the Appellate Division's February 6, 2026, interlocutory decision.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.

By: _____
Peter G. Verniero
*Attorneys for Defendants*

Dated: March 9, 2026

25