**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS |

## DEFENDANTS' REPLY IN SUPPORT OF OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

I.      THE R&R MISUNDERSTANDS THIS COURT'S MANDATE. ................3

II.     THE R&R MISAPPLIES RULE 702..................................................5

       A.     The R&R Misapplies Rule 702(b)-(d). .................................5

              1.     The R&R Reverses The Burden Of Proof. ................................5

              2.     The R&R Disregards Unreliable Cherry-Picking.......................7

              3.     The R&R Excuses Plaintiffs' Experts' "Overreaching" Misinterpretations Of The Published Literature. ........................9

       B.     The R&R Abdicates Judicial Gatekeeping In Dismissing Fundamental Flaws In Plaintiffs' Experts' Bradford Hill Analyses. ........................................................................10

              1.     The R&R Admits Opinions Deeming Weak Associations "Strong." ................................................................10

              2.     The R&R Admits Opinions Deeming Divergent Data Consistent...........................................................................12

              3.     The R&R Admits Opinions That Downplay Dose-Response. ...........................................................................12

              4.     The R&R Endorsed Plaintiffs' Experts' Unscientific Treatment Of The Remaining Bradford Hill Factors. .............13

CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bernier v. Turbocam, Inc.*,
  No. 23-CV-523-LM-AJ, 2026 WL 45240 (D.N.H. Jan. 7, 2026) ........................4

*Cohen v. Cohen*,
  125 F.4th 454 (3d Cir. 2025) ...............................................................................8

*In re Deepwater Horizon BELO Cases*,
  119 F.4th 937 (11th Cir. 2024) ..........................................................................13

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)............................................................................................14

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales
  Practices & Prods. Litig.*,
  509 F. Supp. 3d 116 (D.N.J. 2020)......................................................................14

*Milward v. Acuity Specialty Prods. Grp., Inc.*,
  639 F.3d 11 (1st Cir. 2011)...............................................................................4, 5

*In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin)
  Prods. Liab. Litig.*,
  93 F.4th 339 (6th Cir. 2024) .................................................................................6

*In re Paraquat Prods. Liab. Litig.*,
  730 F. Supp. 3d 793 (S.D. Ill. 2024)...................................................................11

*Rodriguez v. Hosp. San Cristobal, Inc.*,
  91 F.4th 59 (1st Cir. 2024)....................................................................................5

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
  MDL No. 19-2875, 2025 U.S. Dist. LEXIS 221602
  (D.N.J. Nov. 10, 2025)...............................................................................2, 9, 15

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab.
  Litig.*,
  424 F. Supp. 3d 781 (N.D. Cal. 2020).........................................................11, 13

*In re Zantac (Ranitidine) Litig.*,
   342 A.3d 1131 (Del. 2025) ................................................................................9

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
   858 F.3d 787 (3d Cir. 2017) ...................................................................2, 10, 12

**Rules**

Fed. R. Evid. 702 ............................................................................................*passim*

Fed. R. Evid. 702(b)-(d)...........................................................................................1, 5

## INTRODUCTION

Plaintiffs' Opposition essentially argues that because Defendants "lost" their original *Daubert* motion and the SM emphatically defended her prior opinions, Defendants' Objections should be denied. Opp'n at 1. But that is the very problem with the Report & Recommendation ("R&R"). Both the law and scientific record have dramatically changed since 2020, which is why the Court gave Defendants "a full opportunity to refile *Daubert* motions[.]" ECF 32122 at 2. Rather than undertake a fresh analysis, the SM adopted Plaintiffs' erroneous framing of the inquiry as one to determine whether ***Defendants*** had proven that her prior ruling was wrong. As a result, the R&R erred in several respects.

***First***, the R&R misapplied Fed. R. Evid. 702(b)-(d). Plaintiffs highlight that the R&R "states the governing standard" and purports to "find, by a preponderance of the evidence" that the experts' opinions are admissible. Opp'n at 15-16. But professing fidelity to the preponderance standard and properly applying it are two different things. The R&R misapplied the applicable standard by effectively flipping the burden: faulting ***Defendants*** for not establishing that the case-control studies cited by Plaintiffs' experts in fact suffer from recall bias and failing to disprove dose-response. (This not only misunderstood the legal standard but also misconstrued basic scientific principles since one cannot prove a "null hypothesis.")

The R&R also improperly endorsed Plaintiffs' experts' cherry-picking by

1

disregarding the gold-standard cohort studies and U.S. health agency proclamations regarding the safety of talc. Plaintiffs try to distract the Court from this fundamental flaw by (falsely) accusing Defendants of ignoring impertinent data: IARC's 2025 classification of talc (which none of the experts relied on); an interagency recommendation on testing methods (which the FDA never implemented); and the assessment performed by Health Canada (which relies extensively on ***Plaintiffs' experts***). Plaintiffs also argue that Defendants' challenges to O'Brien 2024 are matters for "cross-examination," Opp'n at 23-24, but this argument misses the point that "draw[ing] overreaching conclusions" from literature is undeniably a question of admissibility under amended Rule 702. *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 19-2875 (RMB/SAK), 2025 U.S. Dist. LEXIS 221602, at *65 (D.N.J. Nov. 10, 2025) (citation omitted).

***Second***, Plaintiffs' various arguments regarding the Bradford Hill factors further confirm that the SM did not properly perform her role as gatekeeper. For example, Plaintiffs appear to recognize that the only way to sustain the R&R's approach to the strength-of-association factor is by recharacterizing a cornerstone of the Bradford Hill framework as a "[r]ed [h]erring." Opp'n at 30. Plaintiffs also argue that jurors should decide whether the conflation of significant and insignificant results is valid, but jurors are woefully unequipped to make that determination, which is, in any event, the very kind of "far-reaching" approach to statistical

2

significance that the Third Circuit has rejected. *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 799 (3d Cir. 2017). Plaintiffs also argue that the existence of a dose-response relationship is not "essential," Opp'n at 37, essentially tossing yet another bedrock principle out of the Hill paradigm.

For all of these reasons, the Court should reject the R&R and exclude Plaintiffs' experts' general cause opinions.

## ARGUMENT

## I.   THE R&R MISUNDERSTANDS THIS COURT'S MANDATE.

Plaintiffs perpetuate the misstatement first advanced at the November 2025 hearing that the onus is on Defendants to prove that the 2020 Opinion was wrongly decided. *See* Opp'n at 2-3 (characterizing the inquiry as "narrow"); 11/25/2025 Hr'g Tr. 101:21-23. But the Court clearly ruled that "the recent changes to Federal Rule of Evidence 702" and "the emergence of new relevant science" "make a ***full refiling*** of *Daubert* motions appropriate." ECF 30260 (Text Order) (emphasis added); ECF 32122 at 2 (similar). The Court subsequently explained that "open[ing] up all expert opinions to *Daubert* challenges, even those previously considered by Chief Judge Wolfson," was "the only appropriate route forward" because "to hold otherwise would . . . ignore Rule 702's most recent clarifications." ECF 32122 at 2-3.

Plaintiffs claim that the R&R analyzes the "impact and scope" of the recent amendments, Opp'n at 10 (citing R&R at 22-25, 30-34), but a review of Plaintiffs'

3

citations confirms that the R&R repeatedly downplayed them. In a section titled "The Impact of the 2023 Amendment," the R&R concludes, without any citation, that "[t]he Advisory Committee made clear that the amendment to Rule 702 is *limited* in nature[.]" R&R at 23 (emphasis added). The R&R then highlights a quote from the Advisory Committee noting that amended Rule 702 "does not require 'the court to nitpick an expert's opinions in order to reach a perfect expression of what the basis and methodology can support." *Id.* at 23-24 (citation omitted). But the amendments were not motivated by a concern that courts were "nitpick[ing]"; rather, the whole point of the amendments was to correct "a consistent and concerning misapplication of Rule 702" that dismissed "critical questions of the sufficiency of an expert's basis for his testimony, and the application of the expert's methodology" as "questions of weight and not admissibility." ECF 32122 at 5. In short, the amendments were adopted because district courts were being too permissive.

Notably, Plaintiffs do not dispute that both the 2020 Opinion and the R&R cite to cases that "prompted the Advisory Committee to amend Rule 702." Opp'n at 12. Instead, they note that certain courts "continue to rely" on those decisions. But none of those courts has actually addressed the impact of the Rule 702 amendments on pre-amendment authority. The pre-amendment cases are also largely cited by courts for basic propositions, including that "[t]he proponent" must demonstrate that "the expert's conclusion has been arrived at in a scientifically sound and

4

methodologically reliable fashion." *Bernier v. Turbocam, Inc.*, No. 23-CV-523-LM-AJ, 2026 WL 45240, at *1 (D.N.H. Jan. 7, 2026) (quoting *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011)). To the extent Plaintiffs' cases suggest that the factual basis of an expert's opinion is a matter of "weight," *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Milward*, 639 F.3d at 22), that repeats the very "error" that prompted the amendments.[1] In short, the R&R does not heed the Court's directive to scrutinize "Rule 702's most recent clarifications." ECF 32122 at 3.

## II.    THE R&R MISAPPLIES RULE 702.

### A.    The R&R Misapplies Rule 702(b)-(d).

Plaintiffs fail to refute Defendants' arguments that the R&R misapplied Rule 702(b)-(d) by: (1) reversing the burden of proof; (2) condoning blatant cherry-picking; and (3) disregarding Plaintiffs' experts' overstatement of their cited studies.

#### 1.    The R&R Reverses The Burden Of Proof.

Plaintiffs' arguments confirm that the R&R did not hold Plaintiffs to their burden of proof, particularly as to recall bias or dose-response. Obj. at 25-26.

***First***, Plaintiffs argue that the R&R merely concluded that Defendants' characterization of recent evidence of recall bias was "overstated," which "is not a

---

[1]    Thomas D. Schroeder, *Toward a More Apparent Approach to Considering the Admission of Expert Testimony*, 95 NOTRE DAME L. REV. 2039, 2044-45 (2020) (*Milward* is a "prime example" of the mistaken approach).

burden shift." Opp'n at 17. But as the quote copied into Plaintiffs' brief illustrates, the R&R rejected this challenge because "[n]one of these studies conclude that recall bias actually occurred in the underlying epidemiologic literature"; rather, they "identify recall bias as a potential source of error . . . ." *Id.* (citing R&R at 83). But recall bias is not an abstract or theoretical possibility. Indeed, a recent study co-authored by Plaintiffs' expert, Dr. Patricia Moorman, found that "[w]hen the time period was limited to women who were interviewed prior to 2014 (i.e., before ongoing lawsuits about genital powder use which had extensive media coverage), the results were attenuated and no[t] significant."[2]

*Second*, Plaintiffs argue that the R&R merely rejected Defendants' "interpretation" of the studies on dose-response. Opp'n at 18 (citing R&R at 114-16). Not so. On page 114, the R&R reasons that the dearth of a detected dose-response "is not equivalent to affirmative evidence demonstrating the absence" of such a relationship. R&R at 114. As with recall bias, the R&R thus required Defendants to disprove the existence of a dose-response relationship, effectively "revers[ing]" the burden of proof. *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024). Plaintiffs contend that *Onglyza* "involved an entirely different problem," Opp'n at

---

[2]    Davis 2021 at 6.

18, but the case is highly analogous. There, the Court of Appeals held that an expert's conclusion that a study supported an inference of causation "in the absence of 'compelling evidence' showing otherwise reverses the burden of proof." 93 F.4th at 345 (citation omitted). Rejecting Defendants' challenges because there is no "affirmative evidence" proving them repeats the same methodological problem.

### 2. The R&R Disregards Unreliable Cherry-Picking.

The R&R admitted opinions that cherry-picked data from highly limited case-control studies and disregarded U.S. regulatory pronouncements in favor of Health Canada's outlier review. Obj. at 26-31. Plaintiffs' arguments in response lack merit.

*First*, Plaintiffs point to O'Brien 2020 to support the argument that their experts did not cherry-pick. But Plaintiffs' experts' approach to this paper highlights the problem. O'Brien 2020 (the largest pooled study of cohort data) found "no statistically significant association between" perineal talc use and ovarian cancer.[3] Plaintiffs' experts nonetheless purport to rely on a "subgroup analysis" finding a minuscule association for women with patent reproductive tracts (i.e., women who had not undergone tubal ligation). Opp'n at 19. An accompanying editorial warned, however, that "statistically unsophisticated reader[s]" "should not . . . selectively highlight[]" the results for patent women.[4] Plaintiffs' experts advanced that precise

---

[3]    O'Brien 2020 at 56.

[4]    Gossett & del Carmen 2020 at 30.

"unsophisticated" fallacy, and the R&R endorsed them doing so.

*Second*, Plaintiffs contend that the R&R reflects "equal treatment of agency materials," Opp'n at 20, but the plain language shows otherwise. The R&R discredited the NCI PDQ, echoing Plaintiffs' experts' unsubstantiated claim that it is not "editorially independent" and that it minimized the FDA's 2014 decision rejecting a cancer warning as "dated," while casting Health Canada's statements (which relied extensively on ***Plaintiffs' litigation experts***, a highly irregular approach for a regulatory agency) as "more recent" and apparently more persuasive. Opp'n at 21-22 (quoting R&R at 101 n.33).

Plaintiffs' contention that Defendants ignore "the broader regulatory landscape," Opp'n at 22, is also meritless. Because none of Plaintiffs' experts relied on IARC's 2025 classification of talc as "probably carcinogenic," *id.*, it has no bearing on the admissibility of their opinions. *See Cohen v. Cohen*, 125 F.4th 454, 463 (3d Cir. 2025). Moreover, the 2021 interagency scientific assessment ("IWGACP") did not consider the health effects of cosmetic talc exposure; instead, it recommended certain "testing methods for-talc containing cosmetics" that the FDA never implemented.[5] And it is Plaintiffs who ignore Health Canada's finding

---

[5]     IWGACP at 4. While Plaintiffs note that the IWGACP includes researchers from the "the FDA, NIH, NIOSH, NIEHS, and EPA," Opp'n at 22, the paper makes clear that its content does not represent the views of those agencies. *Id.*

that none of the studies has "demonstrated both a clear dose-response trend and statistical significance."[6]

### 3. The R&R Excuses Plaintiffs' Experts' "Overreaching" Misinterpretations Of The Published Literature.

The R&R also erred in admitting opinions that "draw overreaching conclusions" from the published literature. *In re Valsartan*, 2025 U.S. Dist. LEXIS 221602, at *65 (citation omitted). This argument does not "pertain[] solely to O'Brien 2024," as Plaintiffs suggest. Opp'n at 24. Rather, the R&R is replete with other examples, including the experts' "stretching" of the subgroup analysis data from O'Brien 2020, R&R at 93-94, discussed above. With respect to O'Brien 2024, Plaintiffs argue that the R&R properly rejected Defendants' challenges to O'Brien 2024 as "properly explored through cross-examination[.]" Opp'n at 24. But that is just a repackaged version of the "'weight and not admissibility' aphorism" that amended Rule 702 abrogated. *In re Zantac (Ranitidine) Litig.*, 342 A.3d 1131, 1146 n.78 (Del. 2025) (construing amendments to Fed. R. Evid. 702). Even if imputation is a "well-established statistical method used to address missing or inconsistent data," Opp'n at 24, that is not what Plaintiffs' experts have done. Instead, they ***ignore*** actual data in the original cohort showing no association between talc and ovarian cancer and rely on O'Brien 2024's reclassification of women who had previously

---

[6]    Health Canada Screening Assessment at 33.

stated that they "never used" talc as women who purportedly "used" talc.[7] The disparity in results between actual and imputed data led the authors to conclude that their "results do not establish causality"[8]—a critical concession that Plaintiffs' experts ignored.

**B.    The R&R Abdicates Judicial Gatekeeping In Dismissing Fundamental Flaws In Plaintiffs' Experts' Bradford Hill Analyses.**

Plaintiffs do not dispute that the R&R dismissed all of Defendants' Bradford Hill challenges as matters of "weight." Instead, they argue that "Bradford Hill is a 'flexible' methodology, and the factors should be assessed applying 'reasoned judgment.'" Opp'n at 26 (citing R&R at 57, 59). But that flexibility is precisely why courts must carefully scrutinize expert analyses that rely on this framework. *See In re Zoloft*, 858 F.3d at 796 (outlining "concerns" associated with potential manipulation of Bradford Hill). "The specific way an expert conducts" a Bradford Hill analysis "must be reliable" and scientifically sound, *id*. (internal quotation marks and citation omitted), because otherwise, the factors can be manipulated to achieve the desired results. That is what Plaintiffs' experts did here, and the R&R improperly endorsed their flawed, result-oriented approach.

**1.    The R&R Admits Opinions Deeming Weak Associations "Strong."**

Plaintiffs argue that whether the relative increased risk reported in the talc

---

[7]    O'Brien 2024 at 12-13.

[8]    *Id.*

literature is "[s]mall," "[m]oderate," or "[s]trong" is a "[r]ed [h]erring," Opp'n at 30.

Bradford Hill would strongly disagree: "First upon my list I would put the strength

of the association."[9] Plaintiffs' willingness to jettison the cornerstone of the

Bradford Hill framework, and the R&R's endorsement of that unscientific approach,

alone require that the R&R be reversed.

Strength of association is at the core of Bradford Hill because "[t]he higher

the relative risk . . . the lower the chance that the effect is spurious" (i.e., the result

of bias, confounding, or chance). *In re Paraquat Prods. Liab. Litig.*, 730 F. Supp. 3d

793, 846 (S.D. Ill. 2024) (citation omitted). Presumably for this reason, Plaintiffs'

experts seek to mislead impressionable jurors into believing that the relative risk

(approximately 1.2-1.6) is "high"[10] or even "extremely strong."[11] While there is no

"magical number" of a relative risk for the strength criterion to be satisfied, Opp'n

at 30, the relative risks reported in the talc literature are "undeniably [] not []

strong[.]" *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*,

424 F. Supp. 3d 781, 796 (N.D. Cal. 2020) ("Although a risk factor in th[e] range

[of 1.2] would not necessarily preclude a conclusion that causation exists, it

undeniably is not a strong association."). Plaintiffs do not cite any authority holding

---

[9]      Hill 1965.

[10]     Siemiatycki 3d Am. Rep. at 71, 76.

[11]     Smith-Bindman 3d Am. Rep. at 35; *see also* Obj. at 34 n.49.

otherwise. Nor do they identify any data relied upon by their experts remotely supporting their claims that a relative risk just above 1.0 (ranging from 1.2 to 1.6) is "high" or "extremely strong."

### 2.    The R&R Admits Opinions Deeming Divergent Data Consistent.

As to consistency, Plaintiffs misstate Defendants' position as improperly demanding that "every positive result [be] statistically significant." Opp'n at 33 (emphasis omitted). Not so. What Defendants have argued is that "[w]hile an insignificant result may be consistent with a causal effect," it is "too far-reaching" to "understat[e] the importance of statistical significance." *In re Zoloft*, 858 F.3d at 799. That is exactly what the experts are doing here by dismissing statistical significance as "outdated," "moot," and "irrelevant."[12] Moreover, the R&R separately erred in overlooking the experts' failure to account for other divergent data that have nothing to do with this concept. Even within the case-control studies, some report a positive association (Rosenblatt 2011); others report a null association (Wong 1999); and still others report a negative association (Hartge 1983). Obj. at 39. Neither the R&R nor Plaintiffs address these facially inconsistent results.

### 3.    The R&R Admits Opinions That Downplay Dose-Response.

Plaintiffs argue that a dose-response relationship is "not essential," Opp'n at

---

[12]    3/20/2024 Smith-Bindman Dep. 27:21-28:8; 3/27/2024 Siemiatycki Dep. 226:18-20; Siemiatycki 3d Am. Rep. at 72-73.

37, but fail to cite a single case endorsing such an extreme proposition. Instead, they claim that *one* of Defendants' cited cases did not specifically address dose "as part of a Bradford Hill analysis[.]" Opp'n at 38 (citing *In re Deepwater Horizon BELO Cases*, 119 F.4th 937, 941 (11th Cir. 2024)). But in *In re Deepwater*, the Eleventh Circuit made clear that epidemiology-based methodologies *do* require a "threshold dose." 119 F.4th at 945-47. That decision aligns with Defendants' other authority holding that "dismissal of the importance of dose response evidence calls into further question the reliability of [an expert's] Bradford Hill analysis." *In re Viagra*, 424 F. Supp. 3d at 796. Finally, Plaintiffs' last-ditch argument that the R&R found that there was *some* dose-response evidence, Opp'n at 38, is not credible. Even some of Plaintiffs' experts concede that the dose-response evidence is "equivocal," at best,[13] which is why they minimize it in their analyses.

> **4.    The R&R Endorsed Plaintiffs' Experts' Unscientific Treatment Of The Remaining Bradford Hill Factors.**

*Biological Plausibility.* Plaintiffs argue that the R&R correctly found it appropriate for the experts to rely on mechanism studies that "do not specifically involve the perineal application of talcum powder to research subjects." Opp'n at 41. But that understates the studies' inapplicability. The studies in question involved talc inserted deep inside the genital tract, often with women kept in an unnatural

---

[13]    *See, e.g.*, 11/15/2018 Kane Rep. at 35; *see also* Obj. at 40 n.61.

position (such as with the legs up). These are not trivial "differences in study designs," Opp'n at 41; rather, they are a fundamental "analytical gap" that reinforces the unreliability of Plaintiffs' experts' opinions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-46 (1997).

**Specificity.** Plaintiffs do not dispute that there are many different subtypes of ovarian cancer with different causes; instead, they complain that Defendants did not identify any change in the law that "would warrant departing from the 2020 Opinion." Opp'n at 42. But Defendants' challenge is that the R&R (just like the prior decision) contravenes amended Rule 702 by dismissing Defendants' "claim about cancer subtypes" as a matter for "cross-examination at trial." R&R at 245, 247; *see also In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.*, 509 F. Supp. 3d 116, 180-81 (D.N.J. 2020) ("2020 Opinion").

**Coherence.** Plaintiffs argue that the R&R correctly reasoned that "potentially inconsistent population trends may be a proper subject for cross-examination" rather than grounds for exclusion. Opp'n at 43-44 (citing R&R at 251). But the larger point is that the SM characterized each methodological flaw in the experts' opinions as an issue for cross, instead of fulfilling her gatekeeper role under amended Rule 702.

**Analogy.** Plaintiffs argue that the R&R properly admitted their experts' analogy to asbestos because "[i]n reclassifying talc alone as a probable carcinogen, IARC reiterated that talc **with asbestos** causes ovarian cancer." Opp'n at 45

14

(emphasis added). But that circular reasoning begs the question of whether talc alone is analogous to asbestos, even though they are two distinct minerals with distinct chemical structures and morphology).

***Experiment.*** Contrary to Plaintiffs' claim, Defendants explained that the 2020 Opinion's approach to the experiment factor (i.e., that "dispute[s] [about] how . . . studies should be weighed . . . are properly presented to the jury"), R&R at 256, misapprehends amended Rule 702. *See* Obj. at 48.

***Temporality.*** Plaintiffs concede that the epidemiologic literature "cannot conclusively establish that talcum powder exposure preceded the development of ovarian cancer[.]" Opp'n at 47. Plaintiffs nonetheless dismiss that problem as "inherent in the study of diseases with long and uncertain latency periods[.]" *Id.* (citing R&R at 258-59). But as Chief Judge Bumb recently explained, "the non-existence of good data does not allow expert witnesses to speculate or base their conclusions on inadequate supporting science." *In re Valsartan*, 2025 U.S. Dist. LEXIS 221602, at *75 (citation omitted). The SM erred in this respect, too.

## CONCLUSION

For the foregoing reasons, the Court should reject the SM's Report & Recommendation as to causation and exclude Plaintiffs' general causation experts.

15

Dated:  March 23, 2026

Respectfully submitted,

*/s/ Jessica L. Brennan*
Jessica L. Brennan
**BARNES & THORNBURG LLP**
67 E. Park Place, Suite 1000
Morristown, NJ 07960
Tel.: 973-775-6120
jessica.brennan@btlaw.com

*Attorneys for Defendants Johnson & Johnson and Red River Talc LLC*

16