# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 3:16-md-2738 (MAS)(RLS)<br><br>MDL No. 2738<br><br>[FILED ELECTRONICALLY]<br><br>Return Date: April 23, 2026 |

---

## BEASLEY ALLEN AND ANDY D. BIRCHFIELD'S
## MEMORANDUM IN SUPPORT OF MOTION FOR STAY

---

Jeffrey M. Pollock, Esq.
POLLOCK LAW LLC
400 Riverview Plaza, Suite 425
Trenton, New Jersey 08611
Telephone: 609-308-7300

David C. Frederick
Ariela M. Migdal
KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
amigdal@kellogghansen.com

*Attorneys for Beasley Allen Crow Methvin Portis & Miles, P.C.*
*and Andy D. Birchfield*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION AND BACKGROUND ............................................................ 1

LEGAL STANDARD ........................................................................................ 2

ARGUMENT ..................................................................................................... 2

    A.    Beasley Allen Is Likely To Succeed On The Merits ............................ 2

    B.    Beasley Allen And Thousands Of Talc Victims Will Suffer
        Irreparable Injury Absent A Stay ....................................................... 6

    C.    Harm To Other Parties ....................................................................... 12

    D.    Public Interest .................................................................................... 12

CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Boy Scouts of Am., In re*,
    35 F.4th 149 (3d Cir. 2022) ........................................................................ 6, 8

*EH Yacht, LLC v. Egg Harbor, LLC*,
    84 F. Supp. 2d 556 (D.N.J. 2000) ................................................................. 3

*Essex Chem. Corp. v. Hartford Accident & Indem. Co.*,
    993 F. Supp. 241 (D.N.J. 1998) .................................................................... 5

*LTL Mgmt., LLC, In re*:
    58 F.4th 738 (3d Cir. 2023) ......................................................................... 10

    64 F.4th 84 (3d Cir. 2023) ...................................................................... 10, 11

    2024 WL 3540467 (3d Cir. July 25, 2024) ................................................. 10

*National Shooting Sports Found. v. Platkin*,
    2023 WL 2344635 (D.N.J. Mar. 3, 2023) ..................................................... 2

*Paramount Aviation Corp. v. Agusta*,
    178 F.3d 132 (3d Cir. 1999) .......................................................................... 8

*Sun Pharm. Indus. v. Biofrontera Inc.*,
    2026 WL 636821 (D.N.J. Mar. 6, 2026) ...................................................... 9

*Taylor, In re*,
    306 Ga. 622 (2019) ....................................................................................... 7

*Treglia v. Beeler*,
    82 F. Supp. 2d 297 (D.N.J. 1999) ................................................................. 2

**RULES**

Model Rules of Pro. Conduct r. 5.3 cmt. (A.B.A. 2025)......................................... 3

N.J. R. Pro. Conduct:

    r. 1.9(a)............................................................................................ 5, 6

    r. 1.9(c)................................................................................................ 6

    r. 5.3 ........................................................................................ 2, 3, 4, 7

## INTRODUCTION AND BACKGROUND

Beasley Allen and Andy Birchfield (collectively "Beasley Allen") seek a stay of the Magistrate Judge's Order disqualifying Beasley Allen, Dkt. No. 44424, and accompanying Memorandum Opinion, Dkt. No. 44423, pursuant to Local Rule 72.1(c)(1)(B), pending Beasley Allen's appeal to the District Court.  In the Order, the Court took the extraordinary step of disqualifying Beasley Allen, lead counsel for thousands of women and their families in jurisdictions across the country, in this MDL, based on an unprecedented and incorrect interpretation of New Jersey's Rules of Professional Conduct ("RPC").  Beasley Allen is likely to prevail in its forthcoming appeal of that decision, which expands the scope of the rule holding lawyers responsible for the conduct of third parties and incorrectly applies that rule to an individual whom Beasley Allen neither employed, retained, nor associated with within the meaning of the rule.

While that appeal is pending, the Court should stay its decision disqualifying Beasley Allen.  Beasley Allen's thousands of clients across the country will suffer irreparable harm absent a stay.  These clients have chosen Beasley Allen to represent them.  Although it is true that Beasley Allen works with co-counsel in representing most of these clients, those co-counsel were engaged to provide specific (and often limited) legal services in these cases; Beasley Allen is the only firm that has developed and maintained the client relationships over many years and led the

strategy, fact development, expert analysis, and trial preparation. The Court's decision deprives these thousands of clients of their chosen attorneys and does so based upon the Court's novel interpretation of New Jersey's RPC. Yet the affected women reside in all 49 other states – to which their cases ultimately will be remanded for trial.

## LEGAL STANDARD

In considering whether to grant a stay pending appeal of a decision to the district court, magistrate judges consider the following four factors: (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest. *See Treglia v. Beeler*, 82 F. Supp. 2d 297, 301 (D.N.J. 1999); *National Shooting Sports Found. v. Platkin*, 2023 WL 2344635, at *1 (D.N.J. Mar. 3, 2023) (same).

## ARGUMENT

Beasley Allen readily meets the four factors this Court considers when granting a stay pending appeal of its decision to the district court.

### A.    Beasley Allen Is Likely to Succeed on the Merits

Beasley Allen is likely to succeed on the merits of an appeal. This Court's interpretation of "associated with" in RPC 5.3 is contrary to law. RPC 5.3 applies

to nonlawyers "employed or retained by or associated with" a lawyer.  N.J. R. Pro. Conduct r. 5.3.  The words "employed" and "retained" carry unmistakable meaning: they describe individuals who work for or provide services to an attorney in connection with the attorney's practice.  The term "associated with" must be read in that context, referring to nonlawyers who are connected to a lawyer's practice through some professional relationship involving direction, supervision, or control of the attorney.  *See EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 566 (D.N.J. 2000) ("statutory language must be read in context and a phrase gathers meaning from the words around it").[1]

This Court's Opinion adopted (at 30-31) the New Jersey Appellate Division's expansive reading of "associated with" to encompass any interaction involving a shared "common purpose," which is divorced from any requirement of employment, retention, supervision, or control.  The Court held (at 31) that because Conlan and Beasley Allen "communicated in depth" and "worked together" on a settlement proposal in a mediation, the two were "associated" under RPC 5.3 such that Beasley

---

[1] This is consistent with the official commentary to the American Bar Association's Model Rule 5.3, which provides examples of the kinds of nonlawyer assistants the rule is intended to cover:  "Examples include the retention of an investigative or paraprofessional service, hiring a document management company to create and maintain a database for complex litigation, sending client documents to a third party for printing or scanning, and using an Internet-based service to store client information."  Model Rules of Pro. Conduct r. 5.3 cmt. (A.B.A. 2025).

Allen was responsible for Mr. Conlan's conduct. This definition as this Court applied it is so broad as to lose meaning – by this measure, Beasley Allen also "associated with" Johnson & Johnson's lawyers, because they met and communicated with the common purpose of complying with the bankruptcy judge's order to mediate their dispute.

Mr. Conlan has never been employed, retained, supervised, or controlled by Beasley Allen. Mr. Conlan has his own interests – that is the interest of Legacy Liability Solutions – looking to step into the shoes of Johnson & Johnson. As the New Jersey trial court acknowledged, Mr. Conlan's interests would be *adverse* to Beasley Allen's under Mr. Conlan's proposals, because his company would obtain the liabilities of Johnson & Johnson. Yet under this Court's expansive definition, their discussions during a court-ordered mediation rise to the level of an association for purposes of RPC 5.3.

The consequences of this Court's holding are far-reaching and troubling. Under its reasoning, any attorney who participates in court-ordered mediation or engages in settlement discussions could be deemed "associated" with other parties, vendors, or consultants present in those proceedings, simply by virtue of working toward a common resolution. The rule as interpreted would chill participation in mediation and settlement efforts, discourage creative approaches to dispute

resolution, and allow the ethics rules to become tools for litigation gamesmanship rather than professional regulation.

This Court's balancing-of-the-interests analysis was also contrary to law. The Court did not adequately weigh the relative hardships imposed by Beasley Allen's disqualification. Although the Opinion acknowledged (at 38) that "disqualification of Beasley Allen may cause delays and would impact thousands of Plaintiffs," it dismissed those concerns without conducting the rigorous, fact-specific hardship analysis that governing law demands. *See Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 254 (D.N.J. 1998) (reversing magistrate judge's disqualification order finding the judge failed to address the "relative hardships imposed by disqualification"). If the Opinion had properly considered the concrete, irreparable hardships to Beasley Allen's clients, it would have denied the disqualification motion. *See infra* Part B.

The Court cited (at 38), in counterbalance of the harms to Beasley Allen's clients, the "risk of maintaining the integrity of these proceedings." But no court – including this one – has ever found that Mr. Conlan acted as an attorney or was representing anyone such that a violation of RPC 1.9(a) took place.[2] Moreover, this

---

[2] RPC 1.9(a) provides, "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the

5

Court never found that Mr. Conlan disclosed to Beasley Allen any confidential information that he learned from his prior representation of Johnson & Johnson in violation of RPC 1.9(c). Johnson & Johnson has never identified any instance in which Beasley Allen's litigation conduct was altered or affected as a result of its interactions with Mr. Conlan. In short, there is nothing to support this Court's conclusion (at 38) that the "integrity of these proceedings" would be adversely affected by having Beasley Allen continue to represent its clients in this litigation.

**B.    Beasley Allen and Thousands of Talc Victims Will Suffer Irreparable Injury Absent a Stay**

The harm to Beasley Allen's thousands of clients and to the orderly administration of justice of the Court's disqualification Order is immediate and irreparable. Because disqualification is such a harsh remedy, the Court is required to consider the harms involved with "the ability of litigants to retain loyal counsel of their choice, the ability of attorneys to practice without undue restriction, preventing the use of disqualification as a litigation strategy, preserving the integrity of legal proceedings, and preventing unfair prejudice." *In re Boy Scouts of Am.*, 35 F.4th 149, 160 (3d Cir. 2022) (affirming bankruptcy court's determination that disqualification was an inappropriate remedy). In its appeal of this Court's Order,

---

former client unless the former client gives informed consent confirmed in writing."
N.J. R. Pro. Conduct r. 1.9(a).

Beasley Allen will show that each of these factors weighed against disqualification here.  For purposes of this motion, the focus is on the immediate and irreparable harm to Beasley Allen, its clients, and their cases.

**1.**    The complex nature of this MDL requires the Court to consider the harm to clients of depriving them – effective immediately – of their chosen, longstanding counsel based on a novel application of New Jersey's RPCs that has no precedent or analog in the RPCs of any other jurisdiction.  Thus, a plaintiff from Georgia, who has been represented by Beasley Allen for years and whose case has been consolidated in the MDL for pretrial coordination purposes only, finds herself suddenly without the attorney of her choice with whom she has had a longstanding relationship.  And she is deprived of chosen counsel based on a disputed application of New Jersey's ethics rules, even though the ethics rules of the state in which her case will be tried lack precedent supporting disqualification or even a finding of ethical violations.[3]

The Court's Opinion (at 38) did not consider the harm to individual clients, considering only "the mere fact that Beasley Allen represents a large number of Plaintiffs."  Nor did it analyze the harms to comity caused by its decision to export

---

[3] In Georgia, for example, RPC 5.3 covers the obvious situation of a lawyer who "associated with" a nonlawyer by setting up a joint business to advertise and receive payment for fraudulent services to consumers.  *See, e.g., In re Taylor*, 306 Ga. 622, 622 (2019).

7

a novel ethics ruling from one state into the many states in which Beasley Allen represents clients. *See*, *e.g.*, *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 141 (3d Cir. 1999) ("If Pennsylvania courts do not have a comparable party-joinder rule, principles of comity suggest that New Jersey should not seek to export its entire controversy doctrine to regulate the conduct of attorneys in that jurisdiction."). These factors, properly considered, make clear that this case is one in which "disqualification is more disruptive than helpful." *Boy Scouts*, 35 F.4th at 160.

2.      The Court's Opinion also misapprehended the nature of the harm to Beasley Allen's clients.  The Court found (at 37) that many of them are "dually represented," but failed to consider that Beasley Allen, as lead counsel, plays a unique role in both maintaining client relationships and leading case strategy as part of Plaintiffs' Steering Committee.  As lead counsel, Beasley Allen performs many substantial tasks, including serving as primary points of contact with clients and experts, and the clients have come to trust them.  Even where co-counsel exist, their relationship to the clients is very different.  The Court did not take into account the practical effects of disqualifying the only lawyers that most of these clients have ever met, worked with, or entrusted with the solemn responsibility to vindicate their rights.  In an attempt to support its draconian remedy of disqualifying Beasley Allen,

8

the Court tries to suggest that Beasley Allen's clients may be better off without the firm. But it relies on facts that are demonstrably false.[4]

The Court concluded (at 37-38) that it was "not clear" that Beasley Allen's clients would be left unrepresented. This does not reflect an appropriate balancing of the interests to support disqualification, and any uncertainty in this regard warrants a stay. The correct inquiry is whether Beasley Allen's clients will be harmed by the disruption caused by sudden disqualification of their lead counsel and counsel of choice, with whom they have longstanding relationships. *See, e.g., Sun Pharm. Indus. v. Biofrontera Inc.*, 2026 WL 636821, at *21 (D.N.J. Mar. 6, 2026) (denying disqualification motion that "would upend years of developing [the firm's] familiarity with the complexities and nuances of the case"). Viewed under that standard, the harm is immediate and concrete.

---

[4] The Court cited (at 37) "more than one client" that informed the Court about having been dissatisfied with Beasley Allen's representation, but invoked an outlier situation of someone who does not have a case filed in the MDL, who does not have ovarian cancer, who misrepresented the voting process in the *Red River Talc* bankruptcy proceeding, and whose vote was cast based on specific direction. That outlier does not represent the thousands of Beasley Allen ovarian cancer clients with filed cases that have not expressed dissatisfaction and who will be disserved by a disruption in representation. Likewise, the Court's suggestion (at 37) that Beasley Allen trampled the preferences of 8,000 Beasley Allen clients in one of Johnson & Johnson's serial bankruptcies is likewise inaccurate. The record in *In re Red River Talc LLC*, No. 24-90505 (Bankr. S.D. Tex.), made clear that Beasley Allen did not trample the preferences of clients. As this Court noted in its July 17, 2025 decision from the bench, the bankruptcy court in *Red River* found no bad faith in the voting process by Beasley Allen or other firms. *See* Tr. 67:11-17.

**3.** The harm is also irreparable. Beasley Allen has been lead counsel in developing the majority of Plaintiffs' experts across a multitude of disciplines – epidemiology, toxicology, oncology, pathology, mineralogy, asbestos testing, and Raman microscopy. Substitute counsel who have not been intimately involved in the development of these experts and other evidence will be at a severe disadvantage, and Beasley Allen's clients will be prejudiced accordingly. Three of these cases are MDL bellwether cases, including *Judkins v. Johnson & Johnson*, which has been put forward as the first bellwether trial. These clients will either have to go to trial without their longstanding lead counsel, or delay the trials. The institutional knowledge, litigation strategy, expert relationships, and client familiarity developed over years of representation simply cannot be replicated or transferred to substitute counsel.

The Court recognized (at 1) that this MDL has been beset by "strategic maneuvers and tactics" but the disruption of these proceedings has been Johnson & Johnson's design all along. The Third Circuit twice held that Johnson & Johnson – not "all sides," as this Court mistakenly suggested (at 1) – acted in bad faith in declaring bankruptcy even though it was not in financial distress. *See In re LTL Mgmt. LLC*, 58 F.4th 738 (3d Cir. 2023), *amended by* 64 F.4th 84 (3d Cir. 2023); *In re LTL Mgmt. LLC*, 2024 WL 3540467, at *1 (3d Cir. July 25, 2024) (affirming

10

"decision dismissing LTL's bankruptcy case for want of good faith").[5]  The Court

erred (at 38 n.29) in dismissing Beasley Allen's argument that Johnson & Johnson

has sought Beasley Allen's disqualification "as a strategic measure."  It does not take

prophetic powers to see where Johnson & Johnson is headed:  having removed its

most formidable opposing counsel from the equation, substitute counsel will have to

scramble to catch up on aspects of the cases they had not previously handled.  A stay

is required to prevent the prejudicial derailment of years of work and commitment

to vindicate these clients' rights.

　　　Finally, the harm to Beasley Allen's clients is irreparable because of the nature

of their claims.  The clients are cancer survivors and victims for whom delay is

unquestionably harmful.[6]  Since the start of this MDL, 30% of Beasley Allen's total

cases involve a client who has died during the pendency of her case.  More will die

---

[5] Because the Third Circuit found Johnson & Johnson acted in bad faith, it did not reach the question whether Johnson & Johnson used bankruptcy for tactical litigation advantage.  *See In re LTL Mgmt., LLC*, 64 F.4th 84, 110 n.19 (3d Cir. 2023) ("Because we conclude LTL's petition has no valid bankruptcy purpose, we need not ask whether it was filed 'merely to obtain a tactical litigation advantage.'").

[6] For example, the Superior Court of New Jersey adjourned the first bellwether trial, *Carl*, from April 13, 2026 to August 17, 2026, because of the need to consider the implications of the Appellate Division's disqualification decision.  This case was filed in 2014 and has been scheduled for trial many times and has been delayed time and time again because of three failed bankruptcies, under the various assumed "names," yet all under the direction of Johnson & Johnson.  This is real prejudice.

the longer these proceedings are delayed.  A stay is warranted to preserve the most seriously ill clients' shot at resolving their claims and obtaining a measure of justice while they are still alive.

### C.    Harm To Other Parties

The harm to Beasley Allen and its clients is immediate.  The harm to Johnson & Johnson from a stay, by contrast, is minimal.  There is no ongoing harm to Johnson & Johnson in having Beasley Allen continue to represent its clients; no court has ever found that Johnson & Johnson's confidences have been shared.  The settlement proposals that Beasley Allen worked on with Mr. Conlan are no longer relevant.  The last interactions with Mr. Conlan regarding resolution-related issues were in 2023 – nearly three years ago – and the landscape of the litigation has changed.  Instead, what is at stake is active litigation of bellwether trials in the MDL.  It is undisputed that Mr. Conlan had nothing to do with experts, evidence, or anything else that will be litigated in these trials.

### D.    Public Interest

The public interest favors a stay.  The Court's Opinion effectively nationalizes a novel interpretation of one state's ethics rules, extending them into many other jurisdictions, none of which has interpreted the analogous rule in a like manner.  The Order disqualifying Beasley Allen from all of these cases that were consolidated only for pretrial purposes imposes a harm to comity and to the authority of the courts

in each state to regulate the conduct of attorneys before them. If the New Jersey Supreme Court reverses the Appellate Division's decision and re-instates the New Jersey trial court opinion that found no violation of the state's RPCs, the harm to the public interest of exporting a contrary interpretation to other jurisdictions will be even more stark. A stay will avoid precipitating this harm to the public interest while the district court has an opportunity to review the merits of this appeal.

### CONCLUSION

Beasley Allen respectfully requests this Court stay its disqualification decision pending its appeal to the district court.

Dated: March 30, 2026

Respectfully submitted,

/s/ *Jeffrey M. Pollock*

Jeffrey M. Pollock, Esq.
(015751987)
POLLOCK LAW LLC
400 Riverview Plaza, Suite 425
Trenton, New Jersey 08611
Telephone: 609-308-7300

David C. Frederick
Ariela M. Migdal
KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
amigdal@kellogghansen.com

*Attorneys for Beasley Allen Crow*
*Methvin Portis & Miles, P.C. and*
*Andy D. Birchfield*

13

14