# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738(MAS)(RLS)<br><br>MDL No. 2738 |

## BEASLEY ALLEN AND ANDY D. BIRCHFIELD'S
## <u>MEMORANDUM IN SUPPORT OF NOTICE OF APPEAL</u>

Jeffrey M. Pollock, Esq.
POLLOCK LAW LLC
400 Riverview Plaza, Suite 425
Trenton, New Jersey 08611
Telephone: 609-308-7300

David C. Frederick
Geoffrey M. Klineberg
Ariela M. Migdal
Abigail E. DeHart
KELLOGG, HANSEN, TODD, FIGEL &
 FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
gklineberg@kellogghansen.com
amigdal@kellogghansen.com
adehart@kellogghansen.com

*Attorneys for Beasley Allen Crow Methvin Portis & Miles, P.C.
and Andy D. Birchfield*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iv

INTRODUCTION AND SUMMARY ....................................................................1

STANDARD OF REVIEW ...................................................................................4

STATEMENT ......................................................................................................4

      A.     Legal Framework ....................................................................4

      B.     Factual Background.................................................................7

      C.     Johnson & Johnson's Disqualification Motion ...................11

ARGUMENT ....................................................................................................13

I.     THE MAGISTRATE JUDGE ERRED IN INTERPRETING AND
      APPLYING THE RULES OF PROFESSIONAL CONDUCT
      CONTRARY TO THEIR TEXT, STRUCTURE, AND PURPOSE ............13

      A.     RPC 1.9(a) Is Not Violated Absent A New Attorney-Client
            Representation .................................................................15

      B.     RPC 5.3's Text And Structure Require A Relationship
            Involving Direction, Supervision, Or Control ....................17

      C.     The Magistrate Judge's Definition Of "Associate"
            Expands RPC 5.3 Beyond Its Scope ...................................20

      D.     The Record Does Not Establish Ratification Within The
            Meaning Of RPC 5.3(c)(1)................................................22

II.    THE MAGISTRATE JUDGE ERRED IN DISQUALIFYING
      BEASLEY ALLEN ....................................................................24

      A.     The Relevant Factors Weigh Against Disqualification.......25

      B.     The Magistrate Judge Weighed The Factors Incorrectly ...29

III.     THE MAGISTRATE JUDGE ERRED IN NATIONALIZING THIS
         DECISION TO THE ENTIRE MDL ............................................................31

IV.     THE COURT SHOULD RESTORE BEASLEY ALLEN TO THE
         PLAINTIFFS' STEERING COMMITTEE ...................................................33

CONCLUSION ...............................................................................................................34

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Boy Scouts of Am., In re*, 35 F.4th 149 (3d Cir. 2022) ......................... 25, 26, 27, 28

*Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341
    (D.N.J. 1996) .................................................................................... 25

*Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989) ............................................ 34

*Dillon, In re*, 239 N.J. 530 (2019)................................................................... 19

*Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006)............... 4

*EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556 (D.N.J. 2000)............... 18

*GMAC Mortg., LLC v. Willoughby*, 230 N.J. 172 (2017)...................................... 27

*Ingham v. Johnson & Johnson*, 608 S.W.3d 663 (Mo. Ct. App. 2020),
    *cert. denied*, 141 S. Ct. 2716 (2021).......................................................... 7, 8

*Jorjani v. New Jersey Inst. of Tech.*, 2023 WL 2535318
    (D.N.J. Mar. 16, 2023)................................................................... 5, 26

*Korean Air Lines Disaster of Sept. 1, 1983, In re*, 829 F.2d 1171
    (D.C. Cir. 1987) ...................................................................... 33, 34

*LTL Mgmt., LLC, In re*:

    58 F.4th 738 (3d Cir. 2023), *amended by* 64 F.4th 84 (3d Cir. 2023) ........... 8

    2024 WL 3540467 (3d Cir. July 25, 2024) .................................................. 8

*Main Events Prods., LLC v. Lacy*, 220 F. Supp. 2d 353 (D.N.J. 2002) ................. 15

*Pajerowski, In re*, 156 N.J. 509 (1998)................................................................. 24

*Patenaude, In re*, 210 F.3d 135 (3d Cir. 2000)...................................................... 33

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*,
    106 F. Supp. 2d 761 (D.N.J. 2000)................................................................ 4

*Reich v. Gateway Press, Inc.*, 13 F.3d 685 (3d Cir. 1994) ...................................... 20

*Roberts, In re*, 230 N.J. 378 (2017) ........................................................................ 19

*Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221 (D.N.J. 2001) ...... 25

*Sanchez, In re*, 261 N.J. 88 (2025) .......................................................................... 19

*Stanley v. City of Sanford, Florida*, 606 U.S. 46 (2025) ......................................... 22

*Steel v. Gen. Motors Corp.*, 912 F. Supp. 724 (D.N.J. 1995) .................................. 26

*Sun Pharm. Indus., Inc. v. Biofrontera Inc.*, 2026 WL 636821
    (D.N.J. Mar. 6, 2026) ......................................................................................... 30

*Taylor, In re*, 306 Ga. 622 (2019) ..................................................................... 19, 32

*Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*,
    210 N.J. 264 (2012) ........................................................................................ 6, 17

*United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980) ..................................... 25, 27

*Velahos, In re*, 225 N.J. 165 (2016) ........................................................................ 19

*Wyeth v. Abbott Lab'ys*, 692 F. Supp. 2d 453 (D.N.J. 2010) ................................. 28

*Zimmerman v. Mahaska Bottling Co.*, 270 Kan. 810 (2001) ............................ 19, 32

**STATUTE**

28 U.S.C. § 636(b)(1) ................................................................................................ 4

**RULES**

Fed. R. Civ. P. 72(a) ................................................................................................... 4

Model Rules of Pro. Conduct r. 8.5 (A.B.A. 2025) .................................................. 7

N.J. Rules of Pro. Conduct:

    r. 1.8 ................................................................................................................... 20

r. 1.9 ........................................................................................ 5, 16, 17

r. 1.10 ............................................................................................... 20

r. 1.13 ............................................................................................... 20

r. 3.8 ................................................................................................. 20

r. 5.1 ................................................................................................. 20

r. 5.3 ................................................................................... 6, 15, 18, 23

r. 5.3 cmt. .................................................................................. 6, 7, 18

r. 8.5 ................................................................................................... 7

Loc. Civ. R.:

Rule 72.1(c)(1) .................................................................................... 4

Rule 103.1(a) ...................................................................................... 5

**OTHER AUTHORITIES**

Antonin Scalia & Brian A. Garner, *Reading Law:
The Interpretation of Legal Texts* 176 (2012) ............................................. 22

## INTRODUCTION AND SUMMARY

This appeal concerns the latest in a series of tactical maneuvers Johnson & Johnson has undertaken in response to thousands of lawsuits brought by Plaintiffs alleging asbestos injuries from Johnson & Johnson's talc products. Unable to escape liability through a series of bankruptcies, Johnson & Johnson sought to disqualify – and remove from leadership in this MDL – Beasley Allen and Andy Birchfield (collectively "Beasley Allen") from representing thousands of these Plaintiffs in cases across the country. The factual hook for this disqualification motion was Beasley Allen's meetings, in the context of court-ordered mediation, with a lawyer who formerly represented Johnson & Johnson as outside counsel but had stopped practicing law and developed a settlement proposal whereby his business would assume and settle talc liabilities.

Magistrate Judge Singh granted the motion, disqualified Beasley Allen, and removed Beasley Allen from its leadership role on the MDL Plaintiffs' Steering Committee ("PSC"). The Magistrate Judge's Order violates the rights of Beasley Allen's thousands of clients to choose their counsel, and it does so without basis in law or fact. It prevents clients and their families from working with Beasley Allen, the law firm they have used – some for more than a decade – as they approach trial, severely prejudicing those Plaintiffs. The Order should be vacated for at least three reasons.

1

*First*, the Order adopted an incorrect and indefensible interpretation of New Jersey Rules of Professional Conduct ("RPC") 1.9(a) and 5.3.  It held that Beasley Allen improperly "associated with" James Conlan, who would have been disqualified had *he* been representing clients, as a lawyer, and if his advice were adverse to Johnson & Johnson.  Mr. Conlan is the CEO of Legacy Liability Solutions LLC ("Legacy") and a former Johnson & Johnson outside counsel who met with Beasley Allen in the context of court-ordered mediation.  Even though Mr. Conlan was no longer practicing law and did not represent anyone adverse to Johnson & Johnson, the Order concluded that he nevertheless violated RPC 1.9(a)'s prohibition on representing clients adverse to a former client in a substantially related matter.

The Order compounded this error by interpreting "associated with" in RPC 5.3 in an overbroad and novel fashion.  It held that Beasley Allen had worked toward a "common purpose" with Mr. Conlan and had thereby "associated with" Mr. Conlan by exploring settlement proposals for purposes of the court-ordered mediation.  As a result, the Order imputed Mr. Conlan's supposed violation of RPC 1.9(a) to Beasley Allen.  Even though Mr. Conlan had no employee or contractual relationship with Beasley Allen, the Order held Beasley Allen responsible for his alleged misconduct.  This reading is contrary to the text,

2

structure, and purpose of the Rules, and no court outside of New Jersey has adopted it.

*Second*, the Order imposed the drastic remedy of disqualification without properly weighing the equities. By imposing this extraordinary sanction, the Order deprived clients of the counsel who have represented them for years, developed complex expert evidence, and tried 16 of the 19 ovarian cancer trials against Johnson & Johnson. Replacing experienced lead counsel at this stage of the proceedings prejudices Plaintiffs and disrupts the litigation.

On the other side of the ledger, there is no evidence that the fairness of the proceedings would be tainted by Beasley Allen's continued involvement. No court, including the Magistrate Judge, determined that Mr. Conlan shared Johnson & Johnson's confidential information with Beasley Allen or that Beasley Allen has gained unfair advantage in litigating these cases. Even assuming that a violation of the RPC actually occurred here, disqualification is not automatic. Yet the Order imposed that remedy without balancing the harms.

*Third*, the Order disqualified Beasley Allen from representing MDL plaintiffs nationwide as counsel. This decision exports the incorrect interpretation of RPCs 1.9(a) and 5.3 to other states, invading the province of the jurisdictions whose ethical rules govern the cases that will be remanded to the transferor courts for trial. No other state has adopted the Order's expansive interpretation of these

3

Rules, and the federal courts in those states should be afforded the opportunity to apply their own ethics rules to the attorneys practicing before them. Nationalizing a single state's novel and contested ethics ruling disregards fundamental principles of comity. This result prejudices talc plaintiffs. To the extent this Court finds error in the disqualification of Beasley Allen, the removal of Beasley Allen from the PSC was an abuse of discretion.

The Court should reverse the Magistrate Judge's Order and restore Beasley Allen to the PSC.

## STANDARD OF REVIEW

A district court reviewing a magistrate judge's order on a non-dispositive motion may modify or vacate the order if the ruling was clearly erroneous or contrary to law. *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); Loc. R. 72.1(c)(1)). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. *Id.* "[A] magistrate judge's legal conclusions on a non-dispositive motion will be reviewed *de novo*." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

## STATEMENT

### A.    Legal Framework

Each state has adopted Rules of Professional Conduct governing attorneys subject to its jurisdiction. In this District, Local Civil Rule 103.1(a) establishes

4

that the ABA's Model Rules of Professional Conduct ("ABA Model Rule"), "as revised by the Supreme Court of New Jersey, govern the conduct of the members of the bar admitted to this Court." *Jorjani v. New Jersey Inst. of Tech.*, 2023 WL 2535318, at *2 (D.N.J. Mar. 16, 2023).

The threshold question in this case is whether Mr. Conlan violated an RPC. The relevant Rule is RPC 1.9, which governs conflicts of interest with former clients. RPC 1.9(a) provides:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

N.J. Rules of Pro. Conduct r. 1.9(a). This Rule prohibits a lawyer from representing a client who is adverse to a former client in the same (or substantially related) matter absent the former client's written informed consent. A determination that a lawyer violated RPC 1.9(a) does not require a finding that the lawyer shared the first client's confidential information with another client. *See Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264, 276 (2012).

If a *nonlawyer's* conduct would violate an RPC had that nonlawyer been acting as a lawyer, the question becomes whether such a violation may be imputed

5

to a lawyer.  New Jersey's RPC 5.3, entitled "Responsibilities Regarding

Nonlawyer Assistance," addresses this scenario.  It provides, in relevant part:

> With respect to a nonlawyer employed or retained by or
> associated with a lawyer . . . (c) a lawyer shall be responsible
> for conduct of such a person that would be a violation of the
> Rules of Professional Conduct if engaged in by a lawyer if:  (1)
> the lawyer orders or ratifies the conduct involved.

N.J. Rules of Pro. Conduct r. 5.3(c)(1).

The Official Comment to RPC 5.3 states that this subsection "specifies the

circumstances in which a lawyer is responsible for the conduct of such nonlawyers

within or outside the firm that would be a violation of the Rules of Professional

Conduct if engaged in by a lawyer."  N.J. Rules of Pro. Conduct r. 5.3 cmt.  The

Comment provides examples of nonlawyers the Rule is intended to cover:

> Examples include the retention of an investigative or
> paraprofessional service, hiring a document management
> company to create and maintain a database for complex
> litigation, sending client documents to a third party for printing
> or scanning, and using an Internet-based service to store client
> information.

*Id.*  When using nonlawyers' services, therefore, a lawyer must make reasonable

efforts to ensure that those services are provided in a manner compatible with the

lawyer's professional obligations.  *Id.*

RPC 8.5, which mirrors ABA Model Rule 8.5, provides that "the rules of

professional conduct to be applied shall be . . . the rules of the jurisdiction in which

the tribunal sits."  N.J. Rules of Pro. Conduct r. 8.5(b)(1); Model Rules of Pro.

6

Conduct r. 8.5 (A.B.A. 2025). The relevant tribunal for this MDL is the District of New Jersey for consolidated pretrial proceedings, but the cases will be remanded for trial to the various jurisdictions where venue is appropriate and where those jurisdictions' RPCs will apply.

### B.    Factual Background

1.    Johnson & Johnson faces lawsuits around the country for injuries caused by asbestos in the talc products it sold for decades. The cases have been brought by ovarian cancer victims and their families. Thousands are consolidated in this MDL and hundreds in a parallel Multi-County Litigation ("MCL") in New Jersey state court, but some have been tried separately in state courts around the country. Following a 2018 trial, Johnson & Johnson paid one of the largest judgments in history – more than $2 billion – in a case in Missouri involving women with ovarian cancer who had used Johnson & Johnson's talc products. *See Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 680 (Mo. Ct. App. 2020), *cert. denied*, 141 S. Ct. 2716 (2021).

Following this verdict, Johnson & Johnson thrice sought refuge in the bankruptcy system, creating an entity called LTL to hold its talc liabilities. *See In re LTL Mgmt., LLC*, 58 F.4th 738 (3d Cir. 2023), *amended by* 64 F.4th 84 (3d Cir. 2023); *In re LTL Mgmt. LLC*, 2024 WL 3540467, at *1 (3d Cir. July 25, 2024). Twice, the Third Circuit found that Johnson & Johnson acted in bad faith in

7

pursuing bankruptcy, because it was not in financial distress.  *Id.*  During the second bankruptcy attempt, Bankruptcy Judge Kaplan ordered the parties to mediate, as he had in the first bankruptcy proceeding.  *See* Order (I) Appointing Co-Mediators and (II) Establishing Mediation Protocol, *In re LTL Mgmt. LLC*, No. 23-12825 (Bankr. D.N.J. May 8, 2023), Dkt. No. 459.  Beasley Allen's interactions with Mr. Conlan occurred in the context of this mediation.  *See* Decl. of Andy Birchfield ("Birchfield Decl.") ¶ 6 (Feb. 18, 2026), Dkt. No. 44032-1.

2.      Mr. Conlan is a lawyer who no longer practices law; he co-founded a business venture, Legacy, in March 2022.  Op. 8 (Mr. Conlan, who is Legacy's CEO, does "not practice law" and has no clients).  Before founding Legacy, Mr. Conlan was a partner at the law firm Faegre Drinker Biddle & Reath, LLP, where he was one of the many attorneys representing Johnson & Johnson in its bankruptcy and restructuring efforts.  Op. 3-4, 6.  While representing Johnson & Johnson, Mr. Conlan learned confidential information regarding its talc litigation. Op. 4-5.

After leaving legal practice, Mr. Conlan started Legacy to help companies "resolve their current and future liabilities" without bankruptcy.  *In re Talc Based Powder Prods. Litig.*, No. ATL-L-2648-15 (N.J. Super. Ct. July 19, 2024) ("N.J. Op."); Pollock Decl. Ex. 2 at 9.  "Legacy purports to offer a solution to mass tort liabilities, such as those presented in this MDL, whereby Legacy would acquire

and manage the liabilities, eventually profiting from a spread on resolutions spanned out over time." Op. 8. Under Legacy's model, it would acquire Johnson & Johnson's talc liabilities and stand in the shoes of Johnson & Johnson as the entity responsible for resolving the talc claims. Op. 8-9. Legacy developed and presented such a proposal in this case during the court-ordered mediation in 2023. Op. 9-10. Mr. Conlan presented Legacy's proposal first to Johnson & Johnson before presenting it to Beasley Allen (and others in plaintiffs' leadership) and eventually made the proposal to the mediators. Legacy proposed that Johnson & Johnson sell its liable entities to Legacy, such that all talc liabilities (and authority to settle or litigate the cases) would thereafter rest with Legacy, not Johnson & Johnson. Birchfield Decl. ¶ 6. As the holder of the talc liabilities, Legacy would become adverse to Beasley Allen's clients, freeing Johnson & Johnson from the litigation. *Id.* at ¶ 7. Johnson & Johnson was entirely free to accept, reject, or modify the proposal.

Beasley Allen's interactions with Mr. Conlan occurred in the context of exploring potential settlement models that proposed an alternative path to finality to Johnson & Johnson that did not involve bankruptcy. Under the proposal, Legacy "reserve[d] the right, in its discretion, to negotiate settlements with interested asbestos-plaintiff law firms of some or all pending claims filed by such firms." Birchfield Decl. ¶ 21. Accordingly, the proposed settlements would only

9

become effective upon Johnson & Johnson transferring liabilities to Legacy.

Johnson & Johnson did not respond to the proposal.  Op. 9.  Johnson & Johnson

also refused to participate in the court-ordered mediation during which these

discussions took place.  Birchfield Decl. ¶ 23.

3.      Beasley Allen did not hire, retain, or employ Mr. Conlan, nor did it

enter into a contractual relationship or joint business venture with him or his

company.  Op. 31, 35; Birchfield Decl. ¶ 4.  The firm did not supervise Mr. Conlan

or exercise any control over his conduct.  Mr. Conlan was an independent

businessperson who promoted his own business interests.  Those interests were not

aligned with Beasley Allen's, and were, in fact, largely adverse to those of Beasley

Allen's clients.  Had Legacy's proposal been accepted, Legacy would have become

the entity responsible for litigating and settling all talc claims, standing in Johnson

& Johnson's shoes as a defendant.  Birchfield Decl. ¶¶ 6-7.  Legacy would profit

from any underpayment to plaintiffs, making its financial incentives directly

opposed to those of Beasley Allen's clients.

In the course of litigating the MDL for more than a decade before meeting

with Mr. Conlan during mediation, Beasley Allen developed an extensive

understanding of the value of the claims in this litigation through its role as lead

counsel for thousands of cases.  Beasley Allen understood Johnson & Johnson's

approach to litigation and settlement.  *Id.* ¶ 9.  It developed numerous settlement

matrixes (valuing claims) before it had contact with Mr. Conlan, and one such matrix was attached to Legacy's proposed resolution. *Id.* No court has found that Mr. Conlan shared Johnson & Johnson's confidential or privileged information with Beasley Allen.

### C.    Johnson & Johnson's Disqualification Motion

In December 2023, Johnson & Johnson moved to disqualify Beasley Allen in the New Jersey MCL and the federal MDL. *See* Dkt. No. 28760. It argued that Beasley Allen's interactions with Mr. Conlan violated various RPCs because Mr. Conlan had been an attorney for Johnson & Johnson before he started Legacy and Beasley Allen participated with Mr. Conlan during the court-ordered mediation. The New Jersey trial judge, Judge Porto, and Magistrate Judge Singh conducted a joint three-day evidentiary hearing in spring 2024. The parties offered extensive testimony along with other evidence.

On July 19, 2024, the New Jersey trial court denied Johnson & Johnson's motion, finding that Beasley Allen and Mr. Conlan did not violate any RPCs. Judge Porto determined that Mr. Conlan "is not found to be associated with the Beasley Allen law firm in any capacity" and that "Conlan was never employed either as a lawyer or as a non-lawyer by that law firm." N.J. Op. 27. Judge Porto also found Mr. Conlan's testimony "credible" that he did not reveal any of Johnson

11

& Johnson's confidential information to Beasley Allen in the course of meeting with Beasley Allen about his mediation proposal. *Id.* at 30.

Johnson & Johnson appealed. On February 6, 2026, the New Jersey Appellate Division reversed. It found that Mr. Conlan's conduct violated RPC 1.9(a) and that this violation should be imputed to Beasley Allen under RPC 5.3(c) because it had "associated" with Mr. Conlan. *In re Talc Based Powder Prods. Litig.*, No. A-0215-24 (N.J. Super. Ct. App. Div. Feb. 6, 2026) ("App. Div. Op."); Pollock Decl. Ex. 1 at 3. Although the Appellate Division agreed that Mr. Conlan had not shared any confidential information with Beasley Allen, it interpreted RPC 5.3 broadly to encompass any situation in which a lawyer and a non-lawyer work together for a "common purpose." *Id.* at 21. Beasley Allen sought leave to appeal that interlocutory order. *See* Dkt. No. 091773 (N.J.). Its request remains pending before the New Jersey Supreme Court.

After the Appellate Division's decision, the Magistrate Judge ordered supplemental briefing. On March 26, 2026, the Magistrate Judge issued an Opinion and Order disqualifying Beasley Allen and removing it from the PSC. Magistrate Judge Singh, who attended the three-day evidentiary hearing, did not find that Mr. Conlan shared any confidential information with Beasley Allen. Nonetheless, she largely followed the Appellate Division's reasoning, finding that (1) Mr. Conlan violated RPC 1.9(a) because had he "been 'wearing his attorney

12

hat' in his dealings with Beasley Allen, Mr. Conlan would have violated RPC 1.9(a)," Op. 35, and (2) Beasley Allen violated RPC 5.3 by "collaborat[ing] and join[ing] efforts" with Mr. Conlan "to determine a settlement strategy and proposal for the [Johnson & Johnson] talc litigation," and (3) Beasley Allen "ratified" Mr. Conlan's underlying "conduct" by "us[ing] the fruits of [his] efforts" during the mediation.   Op. 31-33, 36.  The Magistrate Judge also removed Beasley Allen from the PSC.  Op. 41.

Beasley Allen sought a stay of the Magistrate Judge's decision on March 30, 2026, Dkt. No. 44439, and now appeals.

## ARGUMENT

### I.      THE MAGISTRATE JUDGE ERRED IN INTERPRETING AND APPLYING THE RULES OF PROFESSIONAL CONDUCT CONTRARY TO THEIR TEXT, STRUCTURE, AND PURPOSE

RPC 1.9(a) generally prohibits a lawyer from representing clients adverse to a former client when the matters are the same or substantially related to one another.  Had Mr. Conlan joined Beasley Allen as a lawyer, there is no dispute that he would have been prohibited from representing Beasley Allen's clients in this case and that, unless certain screening and notice requirements were satisfied, Mr. Conlan's conflict would have been imputed to the entire firm.  But Mr. Conlan did not join Beasley Allen as a lawyer; indeed, Mr. Conlan stopped practicing law altogether.

13

There is simply no way, under those circumstances, that Mr. Conlan could have violated RPC 1.9(a). To be sure, he would still have been subject to the obligations of RPC 1.9(c) not to use or disclose confidential information from his former client. But there is no evidence that he shared or used Johnson & Johnson's information. Because there is no underlying misconduct here, that should be the end of the matter.

The Magistrate Judge made a critical error: She simply assumed away the fact that Mr. Conlan was no longer practicing law, reasoning counterfactually that "[h]ad Mr. Conlan been 'wearing his attorney hat' in his dealings with Beasley Allen, Mr. Conlan would have violated RPC 1.9(a)." Op. 35. The Rules do not permit such hypothetical reasoning.

After assuming that Mr. Conlan violated RPC 1.9(a) when he could not have done so, the Magistrate Judge went on to impute that supposed misconduct to Beasley Allen. RPC 5.3 imposes obligations on lawyers with respect to nonlawyers "employed or retained by or associated with" them. N.J. Rules of Pro. Conduct r. 5.3. The Magistrate Judge held that Beasley Allen "associated with" Mr. Conlan because the two "collaborated and associated with each other for a common purpose." Op. 32. That holding is an overbroad interpretation of "associated with," unsupported by the text and structure of the RPCs and contrary to the Rule's purpose. *See Main Events Prods., LLC v. Lacy*, 220 F. Supp. 2d 353,

14

357 (D.N.J. 2002) (reversing magistrate judge disqualification order that extended RPC 3.7 beyond the rule's text and scope). Properly construed, RPC 5.3 does not reach the relationship between Beasley Allen and Mr. Conlan.

### A. RPC 1.9(a) Is Not Violated Absent A New Attorney-Client Representation

The Magistrate Judge's finding that Mr. Conlan violated RPC 1.9(a) rests on a legal error. RPC 1.9(a) prohibits "[a] lawyer who has represented a client in a matter" from "thereafter represent[ing] another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client." N.J. Rules of Pro. Conduct r. 1.9(a). By its plain terms, RPC 1.9(a) requires the former lawyer to "represent" a new client whose interests are adverse to the former client.

It is undisputed that Mr. Conlan did not represent anyone. He stopped practicing law, ceased having any clients, and acted solely as the CEO of Legacy, a business venture. Op. 8. Absent Mr. Conlan's undertaking a new representation as a lawyer, he could not have violated a rule that prohibits a particular kind of representation.

The Magistrate Judge acknowledged this gap but bypassed it through counterfactual reasoning, holding that "[h]ad Mr. Conlan been 'wearing his attorney hat' in his dealings with Beasley Allen, Mr. Conlan would have violated RPC 1.9(a)." Op. 35. But finding that a lawyer violated the RPC cannot be

15

premised on a hypothetical.  The Magistrate Judge's approach assumes that Mr. Conlan was acting adversely to Johnson & Johnson.  In reality, Mr. Conlan was proposing a business transaction – structural optimization and disaffiliation – that he first presented to Johnson & Johnson and that Johnson & Johnson was free to accept or reject.  Exploring settlement opportunities in a mediation is not the same as being adverse to another side in litigation.  The Magistrate Judge's approach would extend RPC 1.9(a) far beyond its text to reach any former lawyer who interacts with parties on the other side of a past matter – regardless of whether that person is practicing law or representing anyone at all.

Mr. Conlan remained subject to his obligations under RPC 1.9(c).  That subsection prohibits a former lawyer from using or revealing information relating to a prior representation to the disadvantage of the former client.  *See* N.J. Rules of Pro. Conduct r. 1.9(c).  Unlike RPC 1.9(a), which creates a per se prohibition on certain adverse representations, RPC 1.9(c) focuses on the actual use or disclosure of confidential information.  *See Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264, 276 (2012).  No court – including the Magistrate Judge – has ever found that Mr. Conlan shared Johnson & Johnson's confidential or privileged information.  Because there was no violation of RPC 1.9(a) and no violation of RPC 1.9(c), there was no underlying misconduct to impute to Beasley Allen under RPC 5.3.  The analysis should have ended there.

16

**B.      RPC 5.3's Text And Structure Require A Relationship Involving Direction, Supervision, Or Control**

Even assuming against all evidence that Mr. Conlan engaged in some underlying misconduct, that misconduct could be attributed to Beasley Allen only to the extent that Mr. Conlan was "employed or retained by or associated with" Beasley Allen under RPC 5.3.  The words "employed" and "retained" carry unmistakable meaning:  they describe individuals who work for or provide services to an attorney in connection with the attorney's practice.  The term "associated with" must be read in that context, referring to nonlawyers who are connected to a lawyer's practice through some professional relationship involving direction, supervision, or control of the attorney.  *See EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 566 (D.N.J. 2000) ("statutory language must be read in context and a phrase gathers meaning from the words around it").

The Comments to New Jersey's RPC 5.3 confirm this reading.  They identify two categories of nonlawyers covered by the Rule:  (1) those within a law firm, such as "secretaries, investigators, law student interns, and paraprofessionals," and (2) nonlawyers outside the firm who "assist the lawyer in rendering legal services to the client," such as those providing investigative or paraprofessional services, document-management companies, third-party printing services, and Internet-based storage services.  N.J. Rules of Pro. Conduct r. 5.3 cmt.  In each example, the nonlawyer takes direction from the lawyer or operates

17

under the lawyer's supervision or control.  The Rule contemplates a relationship in which the lawyer has the ability and responsibility to direct, supervise, or control the nonlawyer's work.  Where no such authority exists, the Rule's animating purpose – ensuring lawyers cannot circumvent their ethical obligations by acting through agents – does not come into play.

The New Jersey Supreme Court has not defined the term "associated," but it consistently has characterized RPC 5.3 in terms of staff, employees, and supervision.  For example, in *In re Sanchez*, 261 N.J. 88, 88 (2025), the Supreme Court described RPC 5.3(c) as "rendering a lawyer responsible for the conduct of *nonlawyer staff* that would be a violation of the RPCs if engaged in by the lawyer under certain circumstances." (emphasis added); *see also In re Roberts*, 230 N.J. 378, 378 (2017) (summarizing RPC 5.3(a)-(c) as "failure to supervise a non-attorney employee"); *In re Dillon*, 239 N.J. 530, 530 (2019) (summarizing RPC 5.3(b) and (c) as "failure to supervise non-lawyer staff"); *In re Velahos*, 225 N.J. 165, 165 (2016) (summarizing RPC 5.3(c) as "failure to supervise non-lawyer employees").  These precedents suggest the New Jersey Supreme Court would not extend the Rule to the kind of arm's length interactions at issue here.

Other states' interpretations of RPC 5.3 are consistent with this reading.  In Georgia, RPC 5.3 covers the obvious situation of a lawyer who "associated with" a nonlawyer by setting up a joint business to advertise and receive payment for

18

fraudulent services to consumers. *See In re Taylor*, 306 Ga. 622, 622-23 (2019). The Kansas Supreme Court explained that its version of RPC 5.3 – which uses the same "nonlawyer employed or retained by or associated with a lawyer" definition – "governs the general supervisory obligations of lawyers *with respect to their nonlawyer employees*." *Zimmerman v. Mahaska Bottling Co.*, 270 Kan. 810, 816 (2001) (emphasis added). Beasley Allen has found no authority in any jurisdiction that has applied the Rule as broadly as the Magistrate Judge and Appellate Division did here – to reach wholly independent actors whose only connection is that they cooperate towards a common goal.

This interpretation also is consistent with how the term "associate" is used in other places in New Jersey's RPCs. "[A]s a matter of statutory construction, where one word is used in one place, it should have the same meaning in another place in the same statute." *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 700 n.18 (3d Cir. 1994). In each of the RPCs using the word "associate," it describes a professional relationship between two or more people connected by something more than a "common purpose." *See, e.g.*, N.J. Rules of Pro. Conduct r. 1.8(j) ("While lawyers are associated in a firm . . ."); N.J. Rules of Pro. Conduct r. 1.10(c) ("When a lawyer becomes associated with a firm . . ."); N.J. Rules of Pro. Conduct r. 1.13(b) ("If a lawyer for an organization knows that an officer, employee or other person associated with the organization . . ."); N.J. Rules of Pro. Conduct r. 3.8(f) ("other

19

persons assisting or associated with the prosecutor in a criminal case"); N.J. Rules

of Pro. Conduct r. 5.1(d) ("while a municipal court judge is associated with the

firm as a partner").

### C. The Magistrate Judge's Definition Of "Associate" Expands RPC 5.3 Beyond Its Scope

Neither the Appellate Division nor the Magistrate Judge cited decisional

authority (whether from New Jersey or elsewhere) supporting their broad

interpretation of "associate" to include an independent businessperson who meets

with a law firm in an attempt to mediate a dispute. Instead, the Magistrate Judge

adopted the same interpretive approach as the Appellate Division, relying solely on

the dictionary definition of "associate" to arrive at an open-ended standard: "to

join or unite in friendship, companionship, business, or some other common

purpose, action, or condition; to link together." Op. 29; App. Div. Op. 21. But

that dictionary definition, untethered from the context and structure of the Rule, is

impermissibly broad. It would apply to anyone who participates with any attorney

in court-ordered mediation or otherwise engages in settlement discussions,

including other parties, unaffiliated vendors or suppliers, or even opposing counsel,

so long as they all may be working toward a common resolution. That result is

inconsistent with the purpose of the Rule.

Consider a scenario during the mediation in which Mr. Conlan disclosed to a

local newspaper certain non-public information gleaned from his role as outside

20

counsel to Johnson & Johnson, and that he did so without the knowledge of Beasley Allen. Such a disclosure would have nothing to do with his working with Beasley Allen, and Beasley Allen would know nothing of the disclosure ahead of time. It would not make sense to hold Beasley Allen responsible for such a disclosure under RPC 5.3, when it had no authority to direct, control, or supervise Mr. Conlan's conduct. Under the Magistrate Judge's interpretation of "associated with," that misconduct would be imputed to Beasley Allen simply because the two shared a "common purpose" during the mediation. That result illustrates the breadth of the standard the Magistrate Judge adopted.

The Magistrate Judge also relied on the canon against surplusage, reasoning that "associated with" must mean something beyond "employed or retained by" or it would be meaningless. Op. 28-29. That "associated with" must carry meaning independent from "employed or retained by" does not compel adoption of the broadest possible reading. *See Stanley v. City of Sanford, Florida*, 606 U.S. 46, 56 (2025) (explaining that the canon against surplusage "certainly does not require us to favor 'an unusual meaning that will avoid surplusage' over a more natural one") (citing Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012)).

Giving "associated with" a meaning that, while distinct from "employed" and "retained," remains within the same family of meaning satisfies the canon

21

against surplusage.  For example, "associated with" can encompass nonlawyers who work with a lawyer in a professional capacity analogous to employment or retention, such as independent contractors, consultants who take direction from the lawyer, or persons who assist with the lawyer's practice but lack a formal employment or retention agreement.  Likewise, if law firms have volunteer, unpaid interns helping with cases during the summer, the phrase "associated with" covers these situations too.  In all of these cases, the lawyer is directing the nonlawyer to perform a task related to the practice of law and all involve some kind of supervision, direction, or control.

The Magistrate Judge also did not consider how the word "associated" is used in the other Rules of Professional Conduct.  *See supra* Part I.B.  The broad definition she adopted would not make sense in these other rules.  For example, RPC 1.13(b) ("If a lawyer for an organization knows that an officer, employee, or other person associated with the organization . . .") cannot refer to a lawyer knowing about individuals who merely met with the organization or shared a common goal for some limited purpose.

### D.    The Record Does Not Establish Ratification Within The Meaning Of RPC 5.3(c)(1)

Even if Beasley Allen "associated" with Mr. Conlan within the meaning of RPC 5.3, the Rule still requires a finding that "the lawyer orders or ratifies the conduct involved."  N.J. Rules of Pro. Conduct r. 5.3(c)(1).  The Magistrate Judge

22

agreed with Johnson & Johnson that Beasley Allen "ratified" Mr. Conlan's conduct by seeking to "use the fruits" of Mr. Conlan's efforts. Op. 36. This analysis stretches ratification well beyond its proper bounds under the Rule.

Ratification under RPC 5.3 covers situations in which a lawyer's agent engages in conduct the lawyer did not request, but the lawyer, learning of that conduct, takes advantage of it rather than repudiating it. For example, the New Jersey Supreme Court found that a lawyer ratified the conduct of a "runner" he employed to solicit business for him by accepting and paying for clients whom the runner solicited in emergency rooms shortly after their accidents. *See In re Pajerowski*, 156 N.J. 509, 515 (1998) (per curiam). A lawyer need not have ordered the misconduct in advance, but it can be ratification under RPC 5.3 if the lawyer takes advantage of the misconduct knowing that it occurred. But that paradigm has no application here.

Had Mr. Conlan been hired by Beasley Allen as a paralegal or retained as an expert, the fact that he formerly represented Johnson & Johnson and was now working for a firm representing clients adverse to Johnson & Johnson in the same matter might mean he engaged in conduct that would have violated RPC 1.9 "if engaged in by a lawyer." If Beasley Allen knew about this conflict and did nothing to screen him, that failure might constitute sufficient ratification to make Beasley Allen responsible for the misconduct under RPC 5.3(c)(1). But Mr.

23

Conlan was not hired as a paralegal, an expert, or in any other capacity by Beasley Allen. He was the CEO of his own company, Legacy, which promoted its own business interests that were largely adverse to those of Beasley Allen's clients. Beasley Allen did not contract to obtain services from Mr. Conlan's firm, and had no authority to supervise his conduct or to require him to implement screening measures. Under these circumstances, Beasley Allen's conversations with an independent third-party businessperson exploring a settlement vehicle in context of a court-ordered mediation cannot constitute ratification of that businessperson's alleged ethical violations, over which Beasley Allen had no control.

## II. THE MAGISTRATE JUDGE ERRED IN DISQUALIFYING BEASLEY ALLEN

The Magistrate Judge erred in imposing the remedy of disqualification. "It is well settled that because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only 'when absolutely necessary.'" *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996). In fact, "courts in [this] Circuit often deny disqualification even when finding or assuming conflicts under the professional conduct rules." *In re Boy Scouts of Am.*, 35 F.4th 149, 160 (3d Cir. 2022). Because the party seeking disqualification has a heavy burden of proof, the court

24

must engage in a "painstaking analysis of the facts when addressing motions for disqualification." *Rohm & Haas*, 187 F. Supp. 2d at 227 (cleaned up).

### A.     The Relevant Factors Weigh Against Disqualification

Before deciding whether disqualification is the appropriate remedy, the court was required to weigh several factors, "[e]ven when an ethical conflict exists (or is assumed to exist)." *Boy Scouts*, 35 F.4th at 160.  These factors "generally include":  (1) "the ability of litigants to retain loyal counsel of their choice," (2) "the ability of attorneys to practice without undue restriction," (3) "preventing the use of disqualification as a litigation strategy," (4) "preserving the integrity of legal proceedings, and" (5) "preventing unfair prejudice." *Id.*  All of these factors weigh against disqualification here.

***Counsel of choice:***  Courts balance a client's right to freely choose counsel against the "need to maintain the highest standards of the profession." *Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 746 (D.N.J. 1995).  This factor supports a decision not to disqualify Beasley Allen, which has represented its clients in the talc litigation for more than a decade.  It has tried 16 of 19 ovarian cancer trials against Johnson & Johnson.  It has accumulated more than 50,000 hours of institutional knowledge, relationships with experts, and litigation strategy that cannot be replicated or transferred to substitute counsel.  Because Beasley Allen "has a deep understanding of the case and the issues[,] [a]bsent a compelling

reason to the contrary, [Plaintiffs] should be entitled to retain counsel of their choice." *Jorjani v. New Jersey Inst. of Tech.*, 2023 WL 2535318, at *5 (D.N.J. Mar. 16, 2023).

***Practice Without Undue Restriction***:  The Court must consider the public policy interest in allowing attorneys to practice freely without "excessive restriction." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  Here, this means that attorneys ordered to engage in mediation by one court cannot be disqualified by another court for having done so in good faith, including meeting with an independent business agent seeking to propose a resolution.  This is particularly true because public policy in New Jersey favors mediation and efficient resolution of disputes.  *See GMAC Mortg., LLC v. Willoughby*, 230 N.J. 172, 184 (2017) ("public policy of this State favors the settlement of disputes through mediation").

***Disqualification As A Litigation Strategy:***  Courts must also ensure that a disqualification decision does not encourage the use of "disqualification as a litigation strategy." *Boy Scouts*, 35 F.4th at 160.  There is ample evidence that Johnson & Johnson sought to disqualify Beasley Allen as a litigation strategy.  For example, during a May 2024 investor call, investors asked Johnson & Johnson's Worldwide Vice President of Litigation Erik Haas why a third bankruptcy attempt would succeed after the first two failed.  Mr. Haas responded, "there's a really

26

good chance that [Mr. Birchfield] won't be around for much longer representing his claimants" because Johnson & Johnson had moved to disqualify him. Birchfield Decl. ¶ 18. Mr. Haas explained that Beasley Allen had been "the primary opponent to resolving anything in bankruptcy" because the firm "has opposed any resolution through bankruptcy." *Id.* With an important plaintiff counsel disqualified and removed from leadership, the way is paved for Johnson & Johnson to force an unfavorable settlement of the talc claims.

Johnson & Johnson is using the Order and the Appellate Division's decision as a strategic weapon across the country. It filed motions to remove Beasley Allen as counsel for talc plaintiffs in California, Illinois, and other jurisdictions. A California judge denied Johnson & Johnson's motion for a new trial, which relied on the New Jersey decision last month. The California court found that the type of confidential information at issue in the New Jersey decision could not have had a "conceivable effect on" the outcome of the California trial. Minute Order at 35, *Johnson & Johnson Talcum Powder Cases*, No. JCCP-4872 (Cal. Super. Ct. Mar. 4, 2026). This coordinated campaign confirms that Johnson & Johnson is weaponizing the ethics rules to deprive MDL Plaintiffs of experienced lead counsel.

***Integrity of the Proceedings:*** Courts recognize that "[s]ometimes disqualification is more disruptive than helpful even though an attorney may not

27

have satisfied his or her professional obligations." *Boy Scouts*, 35 F.4th at 160;

*see*, *e.g.*, *Wyeth v. Abbott Lab'ys*, 692 F. Supp. 2d 453, 460-61 (D.N.J. 2010)

(exercising court's discretion in finding that disqualification was not the

appropriate remedy to protect the integrity of the proceedings and maintain public

confidence in the judicial system).

No court has found that Mr. Conlan shared Johnson & Johnson's

confidential information with Beasley Allen, and Johnson & Johnson identified no

instance in which Beasley Allen's litigation conduct was altered because of its

interactions with Mr. Conlan. In that situation, the "integrity of [these]

proceedings" is not adversely affected by Beasley Allen's continued

representation. The disqualification itself threatens the orderly administration of

these proceedings by injecting uncertainty, confusion, and delay into a decade-long

litigation at a critical juncture.

**Unfair Prejudice:** Disqualification will severely and irreparably prejudice

Beasley Allen's clients, a factor that weighs against disqualification. These

Plaintiffs are cancer victims and their families, many of whom Beasley Allen has

represented for years through the most difficult circumstances of their lives. Since

the start of this MDL, 30% of Beasley Allen's cases involve a client who has died

during the pendency of her case. *See* Dkt. No. 44439-2. For these Plaintiffs, delay

28

is not a mere inconvenience. Every month that passes without a trial or resolution increases the likelihood that clients will not survive to see a verdict.

The consequences of disqualification for the litigation are equally stark. Beasley Allen has served as lead counsel in developing most of Plaintiffs' experts across many disciplines. Substitute counsel who have not been intimately involved in the development of these experts will be at a disadvantage as they try to absorb that knowledge, and Beasley Allen's clients will be prejudiced accordingly. The institutional knowledge, litigation strategy, expert relationships, and client familiarity developed over years of representation simply cannot be replicated or transferred to substitute counsel. *See, e.g.*, *Sun Pharm. Indus., Inc. v. Biofrontera Inc.*, 2026 WL 636821, at \*21 (D.N.J. Mar. 6, 2026) (denying disqualification motion that "would upend years of developing [the firm's] familiarity with the complexities and nuances of the case").

### B.     The Magistrate Judge Weighed The Factors Incorrectly

The Magistrate Judge minimized the impact of disqualification on Beasley Allen's clients by noting that "many of Beasley Allen's clients are dually represented by other counsel." Op. 37. But this observation misperceives the facts and misses the point. Considering Beasley Allen's extensive relationships, experience, and deep knowledge of the evidence, the suggestion that local counsel

29

or associate counsel can simply step in ignores the reality of complex mass tort litigation.[1]

The Magistrate Judge's analysis did not adequately weigh the severe and irreparable prejudice that disqualification inflicts on Beasley Allen's clients but rather concluded only that it was "not clear" whether Beasley Allen's clients would be left unrepresented.  Op. 37-38.

The Order's sweeping and unprecedented interpretation of RPC 5.3 could lead to unintended consequences for lawyers engaged in alternative dispute resolution efforts.  The Order makes meeting with independent actors in mediation a risk for attorneys.  A decision disqualifying a law firm after years of representation based on a novel interpretation of an ethics rule when the firm did

---

[1] The Magistrate Judge cited "more than one client" that informed the Court about having been dissatisfied with Beasley Allen's representation, but invoked an outlier situation of someone who does not have a case filed in the MDL, who does not have ovarian cancer, who misrepresented the voting process in the *Red River* bankruptcy proceeding, and, notwithstanding her representation, Beasley Allen cast her vote pursuant to her express direction.  Op. 37.  That outlier client does not represent the thousands of Beasley Allen ovarian cancer clients with filed cases that have not expressed any dissatisfaction with Beasley Allen's representation and who will be disserved by a disruption in representation.  Likewise, the Court's suggestion that Beasley Allen trampled the preferences of 8,000 Beasley Allen clients in one of Johnson & Johnson's serial bankruptcies likewise has no merit. *Id.*  The record in *In re Red River Talc LLC*, No. 24-90505 (Bankr. S.D. Tex.), made clear that Beasley Allen did not trample the preferences of clients.  As this Court noted in its July 17, 2025 decision from the bench, the bankruptcy court in *Red River* found no bad faith in the voting process by Beasley Allen or other firms. *See* Tr. 67:11-17.

not learn any privileged or confidential information will have a chilling effect on those zealously advocating for clients in mediations and settlement discussions.

## III. THE MAGISTRATE JUDGE ERRED IN NATIONALIZING THIS DECISION TO THE ENTIRE MDL

An MDL court consolidates cases for pretrial proceedings, but the cases are remanded to their transferor courts for trial. The ethical rules governing attorney conduct in these national cases are, under both the ABA's Model Rule 8.5 and New Jersey RPC 8.5, "the rules of the jurisdiction in which the tribunal sits." When cases are remanded, the relevant tribunal will be the transferor court in the state where the case was originally filed. Each jurisdiction must follow the professional responsibility rules as explicated by that state's highest court, which has the exclusive authority to adopt, interpret, and apply its RPCs.

The Order erred in disqualifying Beasley Allen across the entire MDL based on an erroneous interpretation of New Jersey's RPC 5.3. The Order effectively exports a single state's novel and unsupported interpretation of RPC 5.3 to every other jurisdiction in the country. This invades the province of those states' highest courts to interpret and apply their own ethics rules. Other states have interpreted the Rule traditionally and in the context of the surrounding words "employ" and "retain." *See*, *e.g.*, *Taylor*, 306 Ga. at 622-23; *Zimmerman*, 270 Kan. at 816. This case law, and the absence of any case law supporting the Magistrate Judge's

31

broader interpretation, suggest that the high courts of other states likely would reach different conclusions if given the opportunity to apply their own rules.

The MDL-wide scope of the Magistrate Judge's order creates practical consequences. Bellwether trials will be disrupted and delayed, as new counsel must get up to speed and absorb more than a decade of litigation material. Indeed, in the parallel state MCL, a state court postponed the first bellwether trial from April to August 2026 because of the disqualification. These delays harm Plaintiffs, many of whom have been waiting years for their day in court and some of whom are terminally ill. For the 30% of Beasley Allen's clients who have died during the pendency of their cases, further delay denies their families a much-needed resolution.

The Order's nationalization of this ruling is particularly unjustified given that the underlying Appellate Division decision interpreting RPC 5.3 is not New Jersey courts' final word. Beasley Allen filed a motion for leave to appeal to the Supreme Court of New Jersey. *See* Dkt. No. 091773 (N.J.). If the Supreme Court of New Jersey accepts review and reverses the Appellate Division's interpretation of RPC 5.3, the Magistrate Judge's MDL-wide order will have been based on an

32

erroneous and overturned interpretation of state law, yet the damage to Beasley

Allen's clients and the MDL will have been done.

An MDL court should not impose one state's contested and novel ethics

ruling on cases originating in dozens of other states with their own distinct ethics

rules and jurisprudence.  At a minimum, the Court should limit any disqualification

to MDL cases originating in New Jersey – of which Beasley Allen currently has

none – and allow transferor courts to make their own determinations under their

states' RPCs.  *Cf. In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000) (explaining

that MDL courts are "intended" only to "have broad pretrial authority"); *In re*

*Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1174, 1176 (D.C. Cir.

1987) (explaining that MDL courts handle issues "only for pretrial purposes" and

not for "all-purpose[s]"), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S.

122 (1989).

## IV.   THE COURT SHOULD RESTORE BEASLEY ALLEN TO THE PLAINTIFFS' STEERING COMMITTEE

Because the Order rested on legal errors in disqualifying Beasley Allen, the

court's order to remove the firm from the PSC was an abuse of discretion.  The

Magistrate Judge found that even absent a violation of the RPCs, Beasley Allen's

conduct "undermines the goals of leadership in an MDL as complex as this one."

Op. 41.  This finding is clearly erroneous, because it rests on the same factual

record establishing that no confidences were shared, no ethical rules were violated

33

under the proper interpretation of RPC 5.3, and no prejudice accrued to Johnson &

Johnson.  The record demonstrates the opposite of what the Magistrate Judge

concluded.  Beasley Allen's Ms. Leigh O'Dell was appointed Co-Lead Counsel in

2016 in the very first leadership order entered in this MDL.  *See* Dkt. No. 73.  The

Magistrate Judge recognized that "[t]he conduct at issue on this Motion does not

challenge [Ms. O'Dell's] capabilities and contributions to this MDL on behalf of

the tens of thousands of women and families involved."  Op. 39.  If the Court

vacates the disqualification order, it should restore Beasley Allen to the PSC.

## CONCLUSION

Beasley Allen respectfully requests this Court reverse Magistrate Judge

Singh's Order disqualifying Beasley Allen, Dkt. No. 44424, and restore the firm to

the PSC.

Dated:  April 9, 2026

Respectfully submitted,

/s/ *Jeffrey M. Pollock*

Jeffrey M. Pollock, Esq.
POLLOCK LAW LLC
400 Riverview Plaza, Suite 425
Trenton, New Jersey 08611
Telephone: 609-308-7300

David C. Frederick
Geoffrey M. Klineberg
Ariela M. Migdal
Abigail E. DeHart
KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900

34

dfrederick@kellogghansen.com
gklineberg@kellogghansen.com
amigdal@kellogghansen.com
adehart@kellogghansen.com

*Attorneys for Beasley Allen Crow
Methvin Portis & Miles, P.C. and
Andy D. Birchfield*