TIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3:16-md-02738-MAS-RLS<br><br>JUDGE MICHAEL A. SHIPP<br>MAG. JUDGE RUKHSANAH L. SINGH |

**DECLARATION OF ANNE ANDREWS FOR APPOINTMENT TO PLAINTIFFS' STEERING COMMITTEE**



I, Anne Andrews, do declare as follows:

I believe I am qualified to serve as a Plaintiffs' Steering Committee member in the *In Re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation* MDL given my 30 years of experience litigating mass torts in coordinated proceedings involving dangerous drugs, medical devices, dietary supplements, and other over-the-counter products across the country, and my deep involvement in the development of the complex causation and science cases in those litigations and others.

First and foremost, this is case is a women's health crisis caused by Johnson & Johnson Talcum Powder. This MDL has now reached 70,000 claimants, underscoring the increasing need for expanded leadership to effectively manage the growing scope of responsibilities and address the numerous and complex aspects of the litigation. Specifically, I believe there are three areas where I am qualified to aid this coordinated proceeding: (1) by serving as a *pro se* support counsel; (2) by coming up with proactive solutions for medical lien resolution; and (3) in the selection of bellwether cases. I represent over 1,000 women in this MDL with cancer caused by their use of Johnson & Johnson Talcum Powder. I am dedicated to spending the time and resources needed to advance the critical issues in this case. This commitment is only deepened by the personal connection I find with this case, having survived cancer myself and having dedicated a large part of my career to litigating serious women's health issues.

**A)      Willingness and Availability to Commit Time and Resources to this MDL**

I have been fortunate enough to serve in multiple leadership capacities in the litigations detailed below. My firm is known for handling mass tort litigations, particularly litigations involving cancer injuries such as uterine sarcomas, ovarian cancers, bladder cancers and immunological issues similar to

this case. Given this experience in large, complex causation cases, I am aware of the level of commitment and the number of hours required by such a leadership position, and I am willing and available to meet the challenge.

In addition, I am willing and available to commit the resources of my firm to this litigation. I believe that my firm has the necessary resources, infrastructure, and personnel to meaningfully contribute to and support this litigation at the highest level. We have a strong team of both senior and junior associates who are not only available, but willing and highly motivated to dedicate the time and effort required to move this case forward. Our attorneys are accustomed to working collaboratively in high-volume, high-stakes environments, and are prepared to take on both leadership responsibilities and the day-to-day demands that come with litigation of this scale. Additionally, our firm prioritizes staying on the cutting edge of technology to enhance our ability to manage large-scale litigation.

**B)      Ability to Work Cooperatively with Others and Diversity**

Despite the limited opportunities for women when I began my legal career, I am fortunate to have enjoyed leadership roles in many complex cases and have worked with scores of extraordinarily talented attorneys as part of diverse and hardworking groups in various Plaintiffs' Steering Committees and Executive Committees. I consider my firm to be representative of diversity amongst its senior associates, attorneys and staff, as we value the wide diversity in gender and cultural backgrounds amongst our staff. This helps to provide an array of different viewpoints and perspectives in the handling of various litigations we are involved in.

I feel very strongly about advocating for consumer rights and have been honored to add my viewpoint as a woman on leadership committees, while myself and other attorneys advocate together in our quest for justice on behalf of plaintiffs. I am familiar with many of the attorneys currently in leadership roles and am happy to have established collaborative relationships with them in other matters. I am known for my teamwork and professional collegiality in MDLs and state coordinated proceedings across the country. My talents in working with others at the highest levels of national litigations have been honed by the many MDLs, California state proceedings (such as the California Talc JCCP) and other state coordinated proceedings I have been fortunate enough to serve in, as detailed further below.

**C)      Work on Lien Resolution**

I respectfully believe that one of the biggest obstacles to settlement in this case is the issue of medical liens. It is nearly impossible for the plaintiffs to decide on settlement values when they do not know how much of the settlements will be taken by health care providers, both private and public. I believe I would bring unique and highly relevant experience from my time navigating complex lien resolution issues in large-scale mass tort bankruptcies, including my work on the *Purdue Pharma*, *Endo*, and *Mallinckrodt* matters. In those proceedings, the traditional lien resolution frameworks were often insufficient given the nearly 200,000 combined claimants, the structure of bankruptcy trusts, and the timing of distributions. This required developing and implementing creative, scalable approaches to identifying, validating, negotiating, and resolving medical liens across many claimants.

Now that this MDL has reached 70,000 claimants, many of whom filed their cases a decade ago, it has become more important than ever to tackle the issue of lien resolution head on and without any delay. In order to ensure that victims can actually make informed decisions on whether to accept any settlement, it is vital that a framework for lien resolution exist so claimants can have a realistic expectation of what their recovery would be after the major healthcare providers receive payment on their liens.

**D)**    **Multidistrict and State Coordinated Leadership and Experience**

My firm, Andrews & Higgins, has extensive multidistrict federal and coordinated state experience.

-    *In re: Ephedra Products Liability Litigation* (MDL 1598): Hon. Jed. S. Rakoff of the Southern District of New York appointed me to the Plaintiffs' Coordinating Counsel where my firm and I successfully conducted an extensive FRE 702 hearing involving complex scientific issues.

-    *In re Karl Strorz Laproscopic Power Morcellator Litigation* (Lead Case No. BC581718): Our firm was co-lead counsel in the consolidated Power Morcellator litigation in California, a case involving gynecological cancer injuries.

-    *In Re: Power Morcellator Products Liability Litigation* (MDL 2652): I was appointed to the Plaintiffs' Steering Committee by Judge Kathryn H. Vratil. Most notably, this Plaintiffs' Steering Committee was one of the first committees consisting of a majority of women, included many of the same amazing women who serve in leadership positions in this litigation, and I was honored to be a part of that distinguished group.

-    *Vioxx Products Liability Litigation* (MDL 1657): I was tasked with finding experts for a bellwether case in front of Judge Eldon Fallon in the Eastern District of Louisiana, and I was successfully able to locate and work with the foremost experts on the bellwether trials which saw a $51 million dollar verdict.

-    *In Re: Bair Hugger Forced Air Warming Devices Products Liability Litigation* (MDL 2666): I am currently honored to be appointed to the Plaintiffs' Executive Committee in the where I am fortunate enough to work with a diverse and highly skilled group of attorneys from across the nation. I helped lead the development of complex causation issues on computational fluid dynamics.

-    *In Re: Biomet M2a Magnum Hip Implant* products liability litigation (MDL 2391): I was appointed to the Plaintiffs' Executive Committee by the Honorable Robert L. Miller, Jr. While serving on the PEC, I chaired the Regulatory Committee.

-    *In re DePuy ASR Hip Implant* (MDL 2197): My firm served on the Science Committee.

-    *In re Hydroxycut* (MDL 2087): Honorable Barry Ted Moskowitz appointed me to the PSC.

-    *In re Metabolife* for 356 Cases (Cal. JCCP 4360): I served as Co-Plaintiffs' Liaison Counsel before Honorable Ronald Styn in San Diego, CA.

-    *In re Quinine* (JCCP 4565): My firm served as Lead Counsel.

-    *In re Silicone Gel Breast Implant Products Liability Litigation* (MDL 936): I served on the Plaintiffs' Steering Committee for where I had one of the biggest docket of cases against Dow Corning. My firm handled over 1,500 cases involving defective breast implants and was involved in hundreds of depositions involving witnesses, experts and defendant corporate officers, as well as involvement in numerous trials to verdict.

-    *USPLabs Dietary Supplement Cases* (JCCP 4808): I was Lead Counsel.

I have extensive experience in not only being involved in numerous coordinated proceedings, but also in leadership roles in such coordinated proceedings. In addition, I am uniquely qualified because my firm spearheaded complex causation issues caused by a cosmetic product, WEN Haircare, in coordinated proceedings in Los Angeles. In that case, my firm developed relationships with several experts in industry cosmetic formulation, use/application of cosmetic products, and dermal exposure and epidemiology, which may prove invaluable to the Plaintiffs in this litigation.

In 2015, I was the recipient of the Distinguished Achievement (Top Gun) Award for Orange County Trial Lawyers Association (OCTLA) for my success in reaching a $200+ million settlement for the New England Compounding Center (NECC) bankruptcy. I was Co-Chair of the Official Creditors' Committee after that litigation ventured into a bankruptcy proceeding. I was also formerly the 2005 recipient of the Top Gun Award for my work in mass torts products liability. In addition, my firm was a 2015 Products Liability Finalist for the National Law Journal's Elite Trial Lawyers. In addition to my leadership

experience in multiple litigations, I have held board positions in a multitude of organizations, including Consumer Attorneys of California (CAOC), and Orange County Bar Association (OCBA). Moreover, I am fortunate to be invited frequently to speak as a lecturer in numerous areas of law as a recognized expert in mass tort and bankruptcy topics around the country. I am a faculty member of the Duke University Bolch Judicial Institute regarding Mass Tort MDL subjects. I am past President of the Orange County Trial Lawyers (OCTLA) and have led the Hydroxycut Litigation, Fungal Meningitis Litigation, and Tort Bankruptcy Litigation Groups organized by the American Association for Justice (AAJ).

**E)**      **Talcum Powder Case Experience**

I have been deeply involved in this litigation since its early stages. Initially, my work was concentrated in California's Judicial Council Coordinated Proceeding for the Johnson & Johnson Talcum Powder Cases (JCCP 4872), where I was served on the Executive Committee, actively engaged in case development, discovery, and trial preparation efforts. Notably, I played a supporting role in the landmark *Eva Echeverria v. Johnson & Johnson* trial, which resulted in a $417 million plaintiff's verdict, at the time one of the most significant talc verdicts in the country. That experience allowed me to actively develop and apply trial strategy, shape expert presentations, and engage directly with jury dynamics in these cases.

In addition to my trial work, I have remained closely connected to the broader litigation landscape, including bankruptcy proceedings that have had a direct impact on claimants' rights. One of my clients was selected to serve on the Official Committee of Talc Claimants in Johnson & Johnson's third bankruptcy, *In re: Red River Talc* (Case No. 24-90505), giving me further exposure to the practical implications of those proceedings on thousands of claimants. For more than a decade, I have made it a priority to stay fully engaged with developments in both the federal MDL and state court proceedings nationwide. This includes closely monitoring bellwether trials, dispositive motion practice, Daubert rulings, and evolving defense strategies. I have also consistently followed and analyzed the scientific literature and expert issues that underpin this litigation, recognizing that mastery of the medical and epidemiological evidence is essential to effective advocacy in these cases. I have the honor to work with my esteemed co-counsel, Chris Seeger, on over 1,000 cases filed in this MDL.

I believe that my experience, both in this litigation and in other large, coordinated proceedings, places me in a strong position to meaningfully assist plaintiffs during the bellwether selection process. I served as the chair of the bellwether committee in the *Taxotere* MDL, which involved very similar complex science and legal issues. I have seen firsthand how a thoughtful, data driven, and strategically balanced bellwether process can shape the trajectory of an entire litigation and directly impact the prospects for a fair and efficient global resolution. Specifically, I am well versed and experienced in navigating the many challenges to MDL management caused by the U.S Supreme Court's decision in *Lexecon Inc. v, Milberg Weiss Bershad Hynes & Lerach*. My experience managing large client inventories and working with case-specific facts has equipped me to assist in identifying cases that are both trial-worthy and representative of the claims at issue. I have also been closely involved in coordinated proceedings where the integrity of the bellwether pool was critical to the litigation's outcome. Through that experience, I have developed an appreciation for the importance of transparency, and collaboration in the selection process, as well as the need to anticipate and address challenges from defendants.

**F)**      *Pro Se* **Support Counsel**

I believe that my background in representing plaintiffs in complex coordinated proceedings, combined with my experience serving in leadership roles, makes me particularly well suited to serve as *Pro Se* Support Counsel in this MDL. Because of recent developments in this litigation, and the expectation that additional *pro se* claimants will continue to file cases, I believe that having as many people as possible helping *pro se* claimants will only be to the benefit of this litigation. *Pro se* claimants are often an

overlooked aspect of any mass torts case, and with the continued advancement of technology that makes access to information more accessible, I believe that we will start seeing more *pro se* claimants than ever before. Throughout my career, I have worked on large-scale litigations requiring extensive coordination, communication, and organization, skills that are essential to ensuring that *pro se* claimants are properly informed and able to meaningfully participate in these proceedings. My practice has also focused extensively on women's health related litigation, with a strong focus on cancer cases, including *Morcellator*, *Taxotere*, and *Chemical Hair Relaxer*. I believe this background uniquely positions me to connect with and effectively assist *pro se* claimants in this MDL. Further, I have personal experience serving as support for *pro se* claimants on *Storz* and in the New England Compounding Center (NECC) bankruptcy.

In addition to my professional experience, I bring a personal perspective that is directly relevant to this litigation. As a breast cancer survivor, I understand firsthand the physical, emotional, and practical challenges that accompany a life altering diagnosis. Many of the *pro se* claimants in this litigation are navigating similar circumstances. This experience allows me to approach this role with empathy, patience, and a deep appreciation for the importance of clear, accessible communication.

Importantly, I also have the infrastructure, staffing, and time necessary to fulfill the responsibilities of this role. I have managed large inventories of clients and have implemented systems to ensure consistent and accurate communication regarding filings, deadlines, and case developments. I am prepared to dedicate the necessary resources to ensure that *pro se* claimants receive timely updates, understand their obligations, and are not disadvantaged by their *pro se* status.

Throughout my career, I have proudly dedicated myself and my firm to advancing the interests of plaintiffs in complex mass torts litigations in an expeditious manner, committing tremendous time, resources, and attorney work to developing these cases at the highest level. My experiences have given me access to a wide range of attorneys and experts in various disciplines to assist me in my role as a prospective Steering Committee member. I would be honored to serve in a leadership role once again on a case that has disproportionately affected women.

I declare under penalty of perjury under the laws of the United States of America, and the States of California and New Jersey, that the foregoing is true and correct.

Dated: April 15, 2026

Anne Andrews  (CA Bar No. 103280)
Andrews & Higgins
4701 Von Karman Ave, Ste 300
Newport Beach, CA 92660-
aa@andrewshiggins.com
949-748-1000