**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2738 (FLW) (LHG) |

**APPLICATION FOR THE APPOINTMENT OF**
**CHRISTOPHER M. PLACITELLA, ESQ.**
**AS PLAINTIFFS' CO-LEAD COUNSEL**

**NOW COMES** Christopher M. Placitella, Esq., a member of the bar of this Court, who hereby applies to this Honorable Court for appointment to the position of Plaintiffs' Co-Lead Counsel in the captioned matter. The following is offered in support of this application:

## I.   INTRODUCTION

I have spent nine years as Plaintiffs' Liaison Counsel and as a member of the Plaintiffs' Executive Committee in this MDL, working alongside attorneys I have known, respected, and admired throughout my career. Many of them will likely apply for this position and are exceptionally qualified. That said, I believe the combination of experience, institutional knowledge, and relationships I have built are difficult to replicate—and would allow me to serve this Court and the litigants in a way that is uniquely valuable.

1

During the time I have had the privilege of serving this Court, I have witnessed the courage and commitment of everyone involved. Plaintiffs who stood up and told their stories. Lawyers who fought for their clients including defense counsel who did their job with professionalism, even when the facts were not in their favor. I believe in this system. I believe that when it works the way it should, everyone, plaintiffs, defendants, and the Court, is served by leadership on both sides that is fair, prepared, and committed to the work. This is needed now more than ever.

That is the spirit with which I submit this application. What follows is a summary of the work I have done and the qualifications I offer. This application is not rooted in personal ambition but in the conviction that I can help move this litigation to a just conclusion for the tens of thousands of people who are counting on us.

## II.    A BRIDGE BETWEEN GROUPS

Since this MDL's creation on October 4, 2016, I have served continuously as Plaintiffs' Liaison Counsel as the point of contact between the Court, opposing counsel, the Plaintiffs' Steering Committee, the Plaintiffs' Executive Committee, and the thousands of individual plaintiffs and their counsel. This MDL now encompasses more than 70,000 pending cases. It is one of the largest and most consequential mass tort litigations in the federal system.

2

The role of Lead Counsel is, at its core, one of service. It requires daily engagement with the logistics and substance of the litigation. But it also requires something harder to quantify: the trust of the people you work with. This MDL involves firms with thousands of cases and firms with just a handful. It includes attorneys who favor aggressive trial postures and those who prioritize resolution. These interests do not always align.

Throughout the life of this MDL, I have worked to be the person who keeps groups with disparate views talking to each other. I have facilitated strategy discussions, mediated disagreements over litigation priorities, and tried to ensure that every voice at the table is heard. I have done so not because I am neutral on the merits, but because I understand that the strength of the plaintiffs' position depends on the unity of the plaintiffs' bar. Assuring the voices of all counsel are heard serves the 70,000 families who are counting on us all.

During the course of this litigation, I have developed strong trust-based relationships with the plaintiffs' lawyers both within and outside of MDL leadership. I am fortunate to count many friends on both sides of the bar, and I maintain professional relationships with defense counsel built on years of candid, fair dealing.

I also have a multi-decade relationship with each member firm of the Plaintiffs' Negotiation Committee and have worked with them not only in this case but in other mass tort matters. These are not new relationships formed for the purpose

3

of this litigation. They are the product of a career spent in the same courtrooms, on the same issues, building the kind of trust that makes resolution possible.

Elevating the Liaison Counsel to Co-Lead ensures zero disruption at a critical juncture and preserves the relationships that hold this coalition together.

### III.    A FOUNDATION THAT PREDATES THE MDL

My firm's involvement in talc litigation did not begin with this MDL. Cohen, Placitella & Roth, P.C. ("CPR") filed its first talc case in 2008, eight years before the MDL was formed. We were among the earliest firms in the country to recognize the connection between asbestos-contaminated talc and cancer, and we have been litigating these cases continuously ever since. Our work uncovered evidence that is now routinely introduced at trial by talc malignancy claimants. Before the MDL existed, CPR served as class counsel in *Williams v. BASF Catalysts, LLC*, a national class action involving more than 15,000 workers exposed to asbestos-contaminated talc from a talc mine previously owned by Johnson & Johnson. *See* No. 11-1754 (D.N.J.). That case was presided over by three separate federal judges over the course of the litigation, the last of whom, the Honorable Brian R. Martinotti, was involved in confirming a class settlement. The case was hotly contested and groundbreaking. After years of litigation in both the trial court and the Third Circuit,

4

a body of law on fraudulent concealment was developed that now governs one of the principal causes of action in this MDL. *See, e.g.,* 765 F.3d 306 (3d Cir. 2014).

The case was ultimately settled, and all class members were fairly compensated. The record and the legal framework established in *Williams* continues to shape the plaintiffs' claims in this litigation today.

In the course of this early work, CPR helped pioneer the discovery that exposed the fact that the talc at issue was contaminated with asbestos. This was not established science when we began. It was the product of painstaking investigation, testing, and litigation; work that laid the groundwork for everything that followed including this MDL.

This history matters because it reflects not merely longevity, but depth of knowledge. My firm did not arrive at this MDL as newcomers. We helped build the legal and scientific foundation on which these cases rest.

## IV.    NINE YEARS OF INSTITUTIONAL KNOWLEDGE

As Liaison Counsel and member of the PEC, I have participated in and helped shape every major Case Management Order issued in this MDL. We carry in memory the procedural history, the discovery record, and the relationships that make this litigation function day to day.

My involvement extends well beyond administration. I personally lead or co-lead three of the major liability workstreams within the MDL:

- **Regulatory Strategy**—addressing Johnson & Johnson's interactions with FDA standards and the regulatory record;

- **Product Defect & Marketing Liability**—analyzing how Johnson & Johnson promoted talc products despite internal knowledge of contamination, from the 1970s through the 2019 voluntary recall;

- **Successor Liability**—extensive discovery and successful briefing essential to establishing the chain of responsibility from the mine to the consumer.

I have also personally reviewed, annotated, and organized every critical liability document brought to light, documents spanning decades of Johnson & Johnson's marketing of talc-based products. These documents form the backbone of the plaintiffs' case-in-chief and are organized thematically for trial. This is not secondhand knowledge. I know this record because I have lived inside it for more than 15 years, longer than this MDL has existed.

This work has not been mine alone. A significant portion of my firm has been dedicated to this litigation with attorneys, paralegals, and staff engaged in strategizing, briefing, document analysis, deposition preparation, and trial support.

CPR's commitment to the talc litigation has been a firm-wide undertaking, and that depth of resources is available to serve the Co-Lead Counsel role from day one.

## V.    THE DEPOSITION PROGRAM

I have conducted or meaningfully participated in some fashion in the majority of the liability depositions in this MDL and the NJ state court MCLs. The witnesses include corporate leadership, key scientists, regulatory and marketing personnel, and supply chain witnesses.

In an effort to bring to light the evidence of asbestos contamination in possession of J&J, I examined J&J's corporate representative Dr. John Hopkins over the course of many days. During that deposition we painstakingly went through every scientific study addressing the presence of asbestos in talc.  Dr. Hopkins not only authenticated all of the relevant studies; he discussed the analytical techniques involved, and addressed the admissions and conclusions contained in the underlying documents. That deposition helped expose the full scope of the scientific record on asbestos contamination in talc and has become a cornerstone of the plaintiffs' evidentiary case.

I have also taken the lead in depositions focusing on J&J's interactions with the FDA. Those depositions are played in virtually every ovarian cancer and mesothelioma trial against J&J in the country. That work did not only advance our

firms' cases. It built the evidentiary record on which the entire plaintiffs' bar relies in proving J&J's liability.

In addition to the Federal MDL, I am intimately involved in the New Jersey State Court MCL. I have led all the liability discovery in that proceeding over the last five years. This parallel engagement ensures that the knowledge and strategy developed at the state level informs the federal litigation, and vice versa.

This deposition program helped build the evidentiary foundation for the entire litigation. The knowledge it produced—about what Johnson & Johnson knew, when they knew it, and what they chose to do—cannot be reconstructed from transcripts alone. It lives in the judgment of the lawyers who were in the room.

Importantly, CPR & the PSC have not kept this work product to itself. Through the Plaintiffs' Steering Committee, we have summarized and made available to all plaintiffs' counsel the depositions taken in this case and related cases, the key liability documents, and the medical and scientific literature on the subject. This has been a deliberate choice—to build the common evidentiary foundation that every plaintiff's lawyer in this MDL and the state court can rely upon. Leadership, in my view, means lifting the entire litigation, not just one firm's cases.

## VI.    TRIAL RESULTS AND CASE RESOLUTION

In February 2020, I served as one of plaintiffs' lead trial counsel in ***Barden v. Johnson & Johnson***, a consolidated multi-plaintiff talc and mesothelioma trial in New Jersey Superior Court. *See* MID-L-007049-16. The jury returned a $750 million punitive damages verdict against Johnson & Johnson—the largest product liability verdict in New Jersey history, together with $37.3 million in compensatory damages. The verdict was later reduced to $186.5 million under the New Jersey Punitive Damages Act cap, but the trial established part of the evidentiary template on which the MDL has been built.

I have been actively engaged in MDL bellwether trial preparation and was part of the successful defense of plaintiffs' expert testimony in the Daubert proceedings resolved by the Court in January 2026—a critical victory that preserved the plaintiffs' ability to present their scientific case at trial.

Through the course of my career, I have resolved numerous cases with J&J and maintain a respectful cordial relationship with J&J's settlement counsel.

## VII.    ENGAGEMENT ACROSS PARALLEL PROCEEDINGS

The talc litigation extends well beyond this MDL, and I have been actively engaged in the parallel proceedings that directly affect the rights and interests of the plaintiffs in this Court.

Our clients have served as a member of the official creditors' committee in three separate bankruptcy proceedings arising from talc liability:

In the **Imerys Talc America** bankruptcy (Case No. 19-10289, D. Del.), one of CPR's clients served on the claimants' committee. In this long-lived Chapter 11 proceeding I, along with my partner Michael Coren, participated in negotiations, claim dispute resolution, and committee proceedings since the company filed for Chapter 11 protection in 2019. Multiple CPR attorneys remain engaged in this work.

In the **LTL Management / Red River Talc LLC** proceedings (Case No. 24-90505, S.D. Tex.), another of my firm's clients served on the claimants' committee. I have personally examined witnesses, filed briefs and argued dispositive motions. When Johnson & Johnson executed its divisive merger strategy, I was among those who analyzed the structure early and helped coordinate the plaintiffs' response.

In the **Whittaker Clark & Daniels** bankruptcy, a third CPR client served on the claimants' committee, ensuring that the interests of talc injury victims were represented.

This engagement across all three talc-related bankruptcies gives me a comprehensive understanding of how often occurring bankruptcy proceedings intersect with the MDL and how decisions in one forum affect the rights of claimants in the other, a perspective that few attorneys in this litigation possess.

10

I also represent United States Senators Richard J. Durbin, Sheldon Whitehouse, and Josh Hawley as *amici curiae* before the United States Supreme Court in ***Official Committee of Asbestos Claimants v. Bestwall LLC***, No. 23-675, on the question of whether Congress authorized bankruptcy courts to stay litigation against a debtor's non-bankrupt affiliates. That filing addressed the very bankruptcy strategies that Johnson & Johnson has employed to delay resolution of the claims in this MDL. The involvement of three sitting Senators—from both sides of the aisle— reflects the national significance of these issues and the depth of my engagement with the law that governs them.

## VIII.  TECHNOLOGY AND INNOVATION

Managing an MDL of this scale demands operational innovation. CPR has invested substantially in developing the technological tools for case document generation, deposition analysis, and litigation intelligence monitoring. We operate weekly surveillance systems that track FDA adverse events, consumer product complaints, and emerging medical literature. We have built browser-based case management tools that require no special software and can be deployed across multiple firms. These systems are designed to serve not just our practice, but the efficiency of the litigation as a whole.

11

## IX.   CPR'S RESOURCES AND CREDENTIALS

Cohen, Placitella & Roth, P.C. has offices in Red Bank, New Jersey and Philadelphia, Pennsylvania. Our track record in complex litigation includes: co-lead counsel in the New Jersey tobacco litigation ($7.6 billion settlement); co-lead counsel in the national diet drug litigation ($3.75 billion settlement); class counsel in *Williams v. BASF* (resolving claims for more than 15,000 workers exposed to asbestos-contaminated talc); and the largest environmental tort settlement on behalf of individuals in New Jersey history.

In addition to this MDL, I have served as Liaison Counsel for the New Jersey Trans Vaginal Mesh Litigation and Co-Chair of the National Asbestos Litigation Group. I am a Certified Civil Trial Attorney, admitted to the bar of the United States Supreme Court, and have argued three recent cases before the New Jersey Supreme Court on issues of product liability and toxic tort law that directly affect ovarian cancer claimants.

I am former President of the New Jersey Association for Justice where I continue to serve on the Board of Governors as well as a member of the Board of Trial Attorneys of New Jersey and the New Jersey Public Interest Law Center.

I am the co-author of the *Mass Torts and Class Actions Treatise* published by the New Jersey State Bar Association and have chaired the New Jersey State Bar Mass Tort and Class Action Program for more than fifteen years. That program is

12

designed to bring together lawyers from both sides of the bar and judges from the trial court level through the New Jersey Supreme Court and the Third Circuit Court of Appeals. This work hopefully reflects my long-standing commitment to building bridges across the profession—not just within this litigation, but across the practice of law itself.

I am also the author of the recently published *Trials and Triumphs*, a nationally published book on trial practice for which I spent more than two years interviewing the top trial attorneys in the country and synthesized their collective wisdom into a single volume. I have published extensively on mass tort topics, including in *Trial Magazine*, and have been recognized by my peers with the New Jersey Association for Justice Gold Medal, the Clarence Darrow Award, and the New Jersey State Bar's highest award for contributing to continuing legal education. Most recently I had the honor of being admitted to the Trial Lawyer Hall of Fame by Temple Law School and the National Trial Lawyers.

CPR has dedicated substantial resources to this litigation for nine years and is committed to seeing it through on behalf of every plaintiff.

## X.    CONCLUSION

I have the utmost respect for Michelle Parfitt, the current Co-Lead Counsel, who exemplifies everything required of a leader of this litigation. I believe that my

experience, relationships, and approach to the work would complement her leadership, and that together we can serve this Court and these plaintiffs effectively.

As Co-Lead Counsel I will bring preparation, fairness, and the ability to keep people working together toward a common goal. I know the record. I know the witnesses. I know the science and the law. And I know the people, on both sides, who will determine whether this litigation reaches a just conclusion.

I am available at the Court's convenience for any hearing or conference regarding this application.

Date: April 16, 2026                  Respectfully submitted,

**/s/*Christopher M. Placitella***
**Christopher M. Placitella, Esquire**
Certified Trial Attorney
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, New Jersey 07701
(732) 747-9003
cplacitella@cprlaw.com
*Plaintiffs' Liaison Counsel*

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive services in this MDL.


Date:  April 16, 2026                     Respectfully submitted,


                                          /s/*Christopher M. Placitella*
                                          **Christopher M. Placitella, Esquire**
                                          Certified Trial Attorney
                                          COHEN, PLACITELLA & ROTH, P.C.
                                          127 Maple Avenue
                                          Red Bank, New Jersey 07701
                                          (732) 747-9003
                                          cplacitella@cprlaw.com
                                          *Plaintiffs' Liaison Counsel*

15