UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: J&J TALCUM POWDER PROD-UCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGA-TION | Case No.: 3:16-md-2738 (MAS)(RLS)<br><br>MDL No. 2738<br><br>**APPLICATION FOR CO-LEAD COUNSEL BY CONSORTIUM REPRESENTING OVER 18,000 MDL PLAINTIFFS** |

Pursuant to this Court's order (Doc. 44424) and Section 10.224 of the *Manual for Complex Litigation, Fourth*, the undersigned consortium of law firms—which represent over 18,000 of the 67,376 actions in this MDL—apply to have one or two of our members (James Onder and Mikal Watts) co-lead this long-awaited final chapter of federal talc litigation. The firms in our consortium have had a long, productive relationship with Johnson & Johnson ("J&J"), and are well positioned to work closely with Co-Lead Counsel Michelle Parfitt and Lead Negotiation Counsel Christopher Seeger to resolve this MDL swiftly, globally, and conclusively.

**INTRODUCTION**

In selecting lead counsel, the *Manual for Complex Litigation, Fourth* recommends includ-ing "plaintiffs' attorneys with different perspectives and experience," as well as "counsel handling significant numbers of state cases to facilitate coordination among state and federal cases." *Man-ual for Complex Litigation, Fourth*, § 22.62. Our consortium satisfies these standards. We include, among others, (a) the firm with the largest docket of federal and state cases (OnderLaw; 11,312 cases in this MDL, and almost 1,000 state cases); and (b) a firm with vast experience in connection with court-appointed MDL leadership positions, $11 billion in recoveries for its clients, and years working with J&J to achieve global peace in these talc cases (Watts Law Firm LLP; 1,070 cases in this MDL). Messrs. Onder and Watts are well positioned to serve as Co-Lead Counsel in this

MDL and deliver their national dockets, and others' national dockets, to a swift, global, and con-clusive resolution of the federal talc litigation.  We attach their personal applications to this plead-ing as Exhibit A (Onder) and Exhibit B (Watts).

| Proposed Co-Lead Counsel (one or both) | |
| --- | --- |
| James Onder | Mikal Watts |

Taken together, the consortium represents a plurality of cases in the MDL—over 18,000 plaintiffs whose firms have devoted extraordinary time and money fighting for them, who deserve a co-lead counsel to speak for them and others similarly situated, and whose voices will be crucial to resolve this litigation once and for all.  Here are our caseloads:

| Total Cases | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Nachawati | Onder | Pulaski | Watts | Others | Total |
| Filed (MDL) | 4,427 | 11,312 | 1,178 | 1,070 | 56 | 18,043 |
| Filed (State) | 19 | 989 | 300 | 0 | 0 | 1,308 |
| Subtotal | 4,446 | 12,301 | 1,478 | 1,070 | 56 | 19,351 |
| Unfiled | 1 | 1,931 | 81 | 0 | 0 | 2,013 |
| Total | 4,447 | 14,232 | 1,559 | 1,070 | 56 | 21,364 |

And here are the hours devoted by our consortium's lawyers and staff in prosecuting talc litigation in bankruptcy court, federal court, and state court:

| Total Hours | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Nachawati | Onder | Pulaski | Watts | Others | Total |
| Lodestar | 18,450 | 37,000 | 2,750 | 6,700 | 3,285 | 68,185 |

In short, we have the critical mass and experience to ensure that this MDL finally ends.

**BACKGROUND OF CONSORTIUM
IN TALC LITIGATION AND SETTLEMENT EFFORTS**

Here is an overview of our work in federal and state talc litigation, J&J's related bankruptcies, and past and present efforts to settle this litigation. We address each category of work in turn, and we present each firm's respective contribution in alphabetical order.

**A.    Consortium members have taken the lead nationally in trying talc cases**

*Nachawati Law Group (NLG)* has been involved in the talc MDL from the start. More recently, NLG has spearheaded state-court litigation to advance the overall litigation and work towards global resolution. These state efforts have involved working up individual cases, developing experts, and creating a viable and replicable model to litigate these cases for other litigants to follow. After J&J's third bankruptcy attempt was dismissed in 2025, NLG filed state-court actions. The cases are set for trial on these dates: October 5, 2026; December 7, 2026; February 8, 2027; and May 3, 2027. To prosecute these cases, NLG has identified and developed about a dozen new experts who will provide crucial and new talc-related testimony and opinions.

Using these experts, with trials in 2026 and 2027, litigants will gain bellwether-like information. There have been few talc ovarian-cancer trials in the last five years. All the while, J&J has lost routinely in mesothelioma trials. NLG is ensuring that the dearth of ovarian-cancer trials ends, and global resolution comes within reach.

As these cases continue, courts will rule on matters related to *Daubert* and case-dispositive issues. As the Court is aware, the time, effort, and resources required for these cases are immense. NLG has dedicated an entire team of lawyers and staff to further this litigation. And NLG has spent thousands of hours litigating these cases *just in the last year*. That time and effort will only

increase over the next nine months as these cases proceed through dispositive and expert motions practice and, ultimately, to trial.

*OnderLaw* has been working on behalf of ovarian cancer victims of J&J's talc for over twelve years. OnderLaw filed the second talcum powder case in the nation and the first in the State of Missouri in 2014. Long before other firms believed the science, OnderLaw studied the literature and decided to invest heavily in this cause. The firm now represents over 12,000 victims, which appears to be the largest epithelial-based ovarian cancer docket in the country. Since then, even though OnderLaw was not part of the Plaintiffs' Steering Committee, the firm has incurred nearly $3 million to secure experts, try cases, and advance the litigation.

In February 2016, OnderLaw was trial counsel in the second talc case to go to trial in the country. That case, *Jacqueline Fox v. J&J*, resulted in a $72 million plaintiffs' verdict. Later, the firm served as trial counsel in six more cases that went to verdict, and two that ended in mistrials. The firm had a winning record, with verdicts totaling over $300 million.

In trial, OnderLaw handled nearly all pretrial briefing and argument, to include motions for summary judgment, *Daubert* motions, and motions in limine. OnderLaw handled nearly all arguments on in-trial motions, all motions for directed verdict, and all jury instruction conferences. OnderLaw handled all individual juror voir dire of over 150 prospective jurors when a request by J&J for same was granted. OnderLaw handled some witnesses as well.

OnderLaw's next talc trial is slated for September 2026 in West Palm Beach, Florida. Trial workup is in full swing. The firm is also active in New Jersey, California, Pennsylvania, and Illinois state courts. In the California JCCP, Cynthia Garber from our team is active on the Plaintiffs' Steering Committee, leading the bellwether, expert, and *Sargon* subcommittees.

*Pulaski Kherkher, PLLC*.  Pulaski Kherkher has been involved in the talc MDL since 2016.  After J&J's third bankruptcy attempt was dismissed in 2025 and global settlement talks failed, Pulaski Kherkher filed hundreds of MDL and state-court actions.  To prosecute these actions, Pulaski Kherkher has amassed a team of lawyers, paralegals, and medical experts, and has dedicated the time and resources necessary to resolve these cases.  Pulaski Kherkher also has reassumed lead roles when clients were faced with disqualification of their attorneys.  Pulaski Kherkher continues to lead the prosecution of cases in both the MDL and state courts.

*Others*.  *Robert Cheeley* serves as co-counsel in 22 cases in the federal MDL and 27 in Georgia state courts. *Sean Cleary* represents some forty talc clients in all phases of litigation.  *Andres Pereira* serves on the Ad Hoc Committee of Supporting Counsel, a leadership role that involves coordinating positions among counsel, to ensure that plaintiffs are effectively represented.

**B.    Consortium members have taken the lead nationally in working with J&J—through three attempted bankruptcies—to *end* the talc litigation**

*NLG* represented tort claimants throughout J&J's first and second bankruptcy proceedings as a member of the Talc Claimants' Committee.  In that role, it oversaw and developed legal strategy, coordinated efforts among fellow appointed tort claimants' committee members, and contested bankruptcy filings and proposals to protect claimants.  In J&J's third bankruptcy, NLG served on the Ad Hoc Committee of Supporting Counsel.  In that role, NLG worked to resolve the litigation, ensure timely compensation, and oversee the voting process.

During all three J&J bankruptcy attempts, *OnderLaw* provided pertinent testimony to the Court regarding the need for resolution.  In the third bankruptcy dismissal opinion, the Court quoted OnderLaw's process for solicitation of votes, citing Jim Onder's goal to "adhere to a 'gold standard' of Master Ballot voting ... Onder did it right.  This is not a gold standard.  In bankruptcy, it is the standard." *In re Red River Talc, LLC*, Mem. Decision and Order, Case No. 24-90505, U.S.

5

Bankruptcy Court for the So. Dist. of Texas, Mar. 31, 2025, Doc. 1425.  The firm also took a leadership role in settlement negotiations during the second and third bankruptcy attempts, consistently negotiating with the potential future claims representative Randi Ellis, the Defendants' counsel, and Plaintiffs' counsel.

*Pulaski Kherkher, PLLC.*  Adam Pulaski and Pulaski Kherkher have been at the forefront of all negotiations with J&J to resolve talc claims nationwide.  As early as 2020, Mr. Pulaski began meeting with J&J and plaintiffs' leadership in an effort to find a resolution to the litigation, which required hundreds of hours of time and retention of multiple outside attorneys and firms to consult on a myriad of issues and draft documents for a proposed resolution.  This effort lasted well over a year.  Pulaski Kherkher has represented tort claimants throughout J&J's first, second, and third bankruptcy proceedings as a member of the Talc Claimants' Committee.  In that role, the firm oversaw and developed legal strategy, coordinated efforts among fellow appointed tort claimants' committee members, and contested bankruptcy filings and proposals to protect claimants.  In J&J's last bankruptcy, Pulaski Kherkher served on the Ad Hoc Committee of Supporting Counsel.

*Watts Law Firm LLP.*  From 2022 to 2024, while J&J sought its second and third bankruptcy solutions, Mikal Watts played a key role in bringing the talc litigation to a swift, global, conclusive close.  He worked closely with plaintiffs' counsel, J&J's national settlement counsel, James Murdica, and its Worldwide Vice President of Litigation, Erik Haas.

For example, during J&J's second bankruptcy effort, Messrs. Haas, Murdica, and Watts were the principal architects of the economics—which economics were central to the bankruptcy and called for J&J to fund over $12 billion (with a net present value of $8.9 billion).  For plaintiffs, Mr. Watts led the negotiations with J&J's in-house legal team, and he was the public voice of the plaintiffs' coalition in the second bankruptcy effort.  Mr. Watts appeared at multiple hearings, gave

two depositions, and testified before the Hon. Michael B. Kaplan during his final hearing.

When the second bankruptcy plan was rejected (for reasons unrelated to the merits of the proposed settlement), Messrs. Haas, Murdica, and Watts did not give up. They worked with counsel representing other talc claimants to negotiate a better settlement that could garner the support of the remaining objectors. Mr. Watts negotiated with Mr. Haas, Mr. Murdica, J&J's trial counsel, Allison Brown, and J&J's bankruptcy counsel, Gregory Gordon.

Although the third bankruptcy was dismissed, in the process Mr. Watts gained deep institutional knowledge of J&J's settlement positions, valuation frameworks, and negotiating posture. He also deepened longstanding relationships with all the key counsel for plaintiffs and J&J, and deepened his relationships with J&J's senior corporate leaders. When settlement discussions resume with Mr. Seeger and Ms. Parfitt, Mr. Watts will bring that institutional knowledge to the discussions and the trust he has earned with plaintiffs' counsel, J&J's counsel, and J&J.

## CONCLUSION

For all these reasons, we ask that one or both of Messrs. Onder and Watts co-lead this final chapter of federal talc litigation to best ensure that all national dockets essential to global peace embrace the solution that emerges in and from this MDL.

Respectfully submitted,


/s/ James G. Onder
James G. Onder
OnderLaw, LLC
110 East Lockwood
St. Louis, MO  63119
(314) 963-9000
Onder@onderlaw.com


/s/ Robert D. Cheeley, Esq.
Cheeley Law Group, LLC
2500 Old Milton Parkway, Ste. 200
Alpharetta, Georgia 30009
(770) 814-7001
bob@cheeleylawgroup.com


/s/ Sean M. Cleary
Sean M. Cleary
The Law Offices of Sean M. Cleary, P.A.
2850 Tigertail Avenue, Suite 400
Coconut Grove, FL 33133
(305) 416-9805
sean@clearypa.com


/s/ Majed Nachawati
Majed Nachawati
Nachawati Law Group
5489 Blair Rd.
Dallas, TX  75231
(214) 608-6929
mn@ntrial.com


/s/ Andres Christian Pereira
Andres Christian Pereira
Andres Pereira Law Firm, P.C.
14709 Custer Ct.
Austin, TX 78734
apereira@teamjustice.com

8

/s/ Adam Pulaski
Adam Pulaski
Pulaski Kherkher, PLLC
2925 Richmond Ave., Ste. 1725
Houston, TX  77098
(713) 664-4555
adam@pulaskilawfirm.com


/s/ Mikal C. Watts
Mikal C. Watts
Watts Law Firm LLP
110 Tributary Ranch Road
Mountain Home, TX  78058
(512) 479-0500
mikal@wattsllp.com

9