**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

IN RE: JOHNSON & JOHNSON TALCUM POWDER
PRODUCTS MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION
RLS

MDL No. 3:16-md-02738-MAS-RLS

Hon. Michael A. Shipp, U.S.D.J.
Hon. Rukhsanah L. Singh, U.S.M.J.

**APPLICATION FOR THE APPOINTMENT OF MARIE IANNIELLO OCCHIGROSSI,**

**ESQ. TO PLAINTIFFS' STEERING COMMITTEE**

I, Marie Ianniello Occhigrossi, Esq., Of Counsel to Weitz & Luxenberg, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**PRELIMINARY STATEMENT**

I submit this application for appointment to Plaintiffs' Steering Committee in the above captioned MDL. My application is based on my substantial experience in multidistrict litigation. My practice is focused on ensuring that settlements, once reached, can actually be realized by claimants. My work is centered on identifying and resolving the barriers that prevent settlements from reaching claimants, including lien resolution, estate administration, and the impact of personal bankruptcy.

In my experience, settlement is not achieved simply by agreement on value. A case is not meaningfully resolved—and a settlement offer cannot be ethically communicated—without a clear understanding of lien repayment obligations, the effect of any past or present bankruptcy, and the procedural requirements that arise if a claimant passes away prior to resolution. These factors directly determine the claimant's net recovery and the timing of distribution.

This has been the focus of my practice for over thirty years, beginning with the onset of the New York asbestos litigation. I understand these issues, I work within them daily, and I am uniquely positioned to address them at scale within an MDL structure.

I bring not only substantive expertise, but also established working relationships with key agencies, courts, and trustees, together with a proven ability to collaborate effectively within shared leadership structures—qualities essential to the effective administration of an MDL. I have negotiated thousands of liens, administered thousands of estates, and have been appointed plaintiffs' special counsel in bankruptcy proceedings nationwide, providing a practical foundation for addressing the issues presented in this litigation.

- 1 -

While I have practiced in this space for over three decades, I have not previously sought a formal leadership position in multidistrict litigation. This application is made with intention. I am compelled to seek a leadership role in this MDL because of the nature of the claimant population and the issues that are preventing timely resolution.

As a woman who has practiced for more than thirty years, including work in asbestos litigation since its early stages, I have witnessed firsthand the impact that delay and unresolved post-settlement issues have on injured individuals and their families. In this litigation, the claimants are overwhelmingly women, many of whom are facing serious and often terminal illness. The delays caused by unresolved liens and related administrative impediments may determine whether these claimants receive the benefit of their settlements during their lifetimes.

While claimants are often represented with respect to their underlying personal injury claims, they are frequently left to navigate related probate and personal bankruptcy issues on a pro se basis. These claimants should not be left to address such complex and consequential impediments, particularly where those issues directly impact the timing and realization of their recovery during their lifetime. Additionally, the same injured claimants are forced to wait with bated breath for the resolution of their lien obligations. I am equipped to address all of these issues.

It is the convergence of these factors—the nature of the claimant population coupled with the systemic barriers to resolution—that compel me to seek a leadership role. I believe my experience and systems-based approach which I seek to implement, in coordination with this Court and existing Leadership, render me uniquely suited to ensure that claims are not only resolved, but resolved in a manner that is timely, efficient, equitable, and meaningful for the claimants this litigation is intended to serve.

## **PROFESSIONAL BACKGROUND AND QUALIFICATIONS**

I am admitted to practice in New York, New Jersey, Connecticut, and Florida, as well as the United States District Court for the District of New Jersey, and have extensive experience working across jurisdictions in complex, high-volume litigation.

At the outset of my career, I practiced as an appellate attorney with Weitz & Luxenberg with whom I have been associated with my entire career, developing a strong foundation in legal analysis and the identification of roadblocks that arise in litigation. My first assignment outside of appellate practice involved addressing a group of asbestos cases that had been dismissed for lack of standing, as the plaintiffs were deceased and no estate representatives had been appointed. Rather than pursue piecemeal appellate relief, I implemented a coordinated process to facilitate the timely appointment of estate representatives, enabling those cases to be restored, recommenced, and advanced toward resolution.

In the course of asbestos litigation, I played a leading role in developing coordinated lien resolution protocols that were adopted by the Court, enabling cases to move forward and settlement funds to be distributed to claimants during their lifetimes. I also implemented an expedited process for the appointment of estate representatives for deceased plaintiffs, which was similarly adopted by the Court. In addition, I worked closely with Court-appointed Special Masters to establish streamlined procedures for the approval and distribution of settlement proceeds to the families of deceased claimants.

These early experiences established the foundation of my practice: identifying systemic impediments and implementing practical, scalable solutions that carry cases not only to settlement, but through to meaningful resolution and distribution.

I am also a frequent lecturer on national panels addressing lien resolution, estate administration, and the intersection of personal injury litigation with personal bankruptcy, reflecting both the depth of my experience and my continued engagement with evolving issues in this area.

## PROPOSED ROLE AND CONTRIBUTION TO LEADERSHIP

I seek appointment to the Plaintiffs' Steering Committee, with a particular focus on identifying and resolving the impediments that delay the distribution of settlement proceeds to claimants, including lien, probate, and bankruptcy-related issues.

In large-scale litigation, the primary barrier to settlement is rarely valuation; it is the inability to determine net recovery due to unresolved lien obligations. Without accurate and timely resolution of Medicare, Medicaid, ERISA, and private liens, cases cannot be properly valued, settlements cannot be finalized, and distributions cannot occur.

In this litigation, that delay carries an acute human cost. Claimants who are seriously or terminally ill may wait extended periods for funds they urgently need and, in some instances, may pass away before their matters can be resolved.

I respectfully submit that my contribution as a member of the Plaintiff's Steering Committee would be my defined focus on the resolution of settlement impediments supported by my vast experience in resolving same. It is my firm belief that same would materially assist the Court and existing Leadership in advancing claims toward timely and meaningful distribution.

## SYSTEMIC LIMITATIONS IN CURRENT LIEN RESOLUTION MODELS

In many multidistrict litigations, the current model relies heavily on specialized vendors to manage lien resolution. While effective in certain respects, that model often breaks down when complex or disputed issues arise. At those junctures, matters are frequently returned to individual law firms without a centralized or coordinated mechanism for resolution, leaving cases effectively stalled.

This issue was recently illustrated in the Philips CPAP MDL, where the Lien Administrator was unable to resolve Medicaid liens for claimants residing in Massachusetts and Rhode Island. Those matters were ultimately returned by the Settlement Administrator to plaintiffs' counsel with a directive that this was now their obligation to resolve. Not only did I find this to be unacceptable, but this type of action resulted in additional delays after an already prolonged process and exposes claimants to potential financial and eligibility risks. I am now in the process of addressing this on behalf of Weitz & Luxenberg.

These cases—where all other aspects of the claim are otherwise complete—can become functionally immobile. I have extensive experience addressing these impasses and implementing coordinated strategies, including administrative resolution and court intervention where necessary, to move such matters forward.

I bring the skillset necessary to create a centralized, leadership-driven approach with appropriate oversight which would ensure that these matters do not remain in prolonged limbo and are timely resolved employing whatever means are necessary so that claimants are not prejudiced by avoidable delay.

## CLAIMANT IMPACT, COMMUNICATION, AND COORDINATION

While claimants may be represented with respect to their personal injury claims, they are frequently required to navigate related probate and personal bankruptcy proceedings pro se. These parallel processes involve complex procedural requirements that can delay or impede settlement and distribution.

I have extensive experience working with pro se individuals in these contexts and understand the importance of providing clear, structured procedural support. I also have experience coordinating with key state and federal agencies in connection with probate, bankruptcy, and lien-related issues affecting claimants.

A coordinated framework incorporating structured communication and appropriate agency coordination would promote efficiency, reduce delay, and help ensure that claimants are able to comply with necessary requirements without the creation of attorney-client relationships.

## PROACTIVE SYSTEMS-BASED APPROACH

I have consistently taken a proactive, systems-based approach to addressing these issues, focusing on early identification and coordinated resolution rather than reactive, case-by-case remediation. Through this approach, I have developed and implemented structured processes within my firm to address lien resolution, estate administration, and related settlement impediments efficiently and at scale, tailoring it to the specific of needs of each litigation.

I would welcome the opportunity to make these systems and protocols available more broadly for the benefit of the claimant population in this litigation, which exceeds 67,000 individuals, in order to promote greater efficiency, consistency, and timeliness in the resolution and distribution process.

## CONCLUSION

The issues addressed herein are not peripheral—they are central to whether and when claimants receive the benefit of their settlements. This litigation presents a critical opportunity to implement a coordinated, systems-based approach—potentially the first of its kind in an MDL—to address the impediments that delay the distribution of settlement proceeds to claimants, including lien, probate, and bankruptcy-related barriers.

Absent focused attention to these issues, even resolved claims risk remaining stalled, depriving claimants—many of whom are seriously or terminally ill—of timely access to settlement proceeds. I bring a proven, execution-driven approach grounded in decades of experience addressing these challenges at scale and within court-supervised frameworks.

- 5 -

I am prepared to devote the time, resources, and attention necessary to fulfill a leadership role in this litigation, with the full support and infrastructure of my firm, and to work collaboratively with the Court and existing leadership to ensure that claims are not only resolved, but meaningfully delivered to the claimants this litigation is intended to serve.

WHEREFORE, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: April 17, 2026
New York, New York

**Marie Ianniello Occhigrossi, Esq.**
Of Counsel,
Weitz & Luxenberg
700 Broadway
New York, New York 10003
Tel: (212) 558-5536
mocchigrossi@weitzlux.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IN RE: JOHNSON & JOHNSON TALCUM POWDER
PRODUCTS MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION
RLS

MDL No. 3:16-md-02738-MAS-RLS

Hon. Michael A. Shipp, U.S.D.J.
Hon. Rukhsanah L. Singh, U.S.M.J.

## CERTIFICATE OF SERVICE

I, Marie Ianniello Occhigrossi, Esq., hereby certify that on April 17, 2026, I caused a true and correct copy of Application for the Appointment of Marie Ianniello Occhigrossi, Esq. to Plaintiffs' Steering Committee to be filed electronically with the Clerk of the Court using the CM/ECF system.

Notice of this filing will be sent automatically by operation of the Court's electronic filing system to all parties and counsel of record registered to receive electronic service in the above-captioned multidistrict litigation. Parties may access this filing through the Court's CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.


Dated: April 17, 2026
New York, New York

**Marie Ianniello Occhigrossi, Esq.**
Of Counsel,
Weitz & Luxenberg
700 Broadway
New York, New York 10003
Tel: (212) 558-5536
mocchigrossi@weitzlux.com

- 6 -