## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE:  JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-2738(MAS)(RLS)<br><br>MDL No. 2738 |

## BEASLEY ALLEN AND ANDY D. BIRCHFIELD'S
## <u>REPLY MEMORANDUM IN SUPPORT OF NOTICE OF APPEAL</u>

Jeffrey M. Pollock, Esq.
POLLOCK LAW LLC
400 Riverview Plaza, Suite 425
Trenton, New Jersey 08611
Telephone: 609-308-7300

David C. Frederick
Geoffrey M. Klineberg
Ariela M. Migdal
Abigail E. DeHart
Donovan J. Hicks
KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
gklineberg@kellogghansen.com
amigdal@kellogghansen.com
adehart@kellogghansen.com
dhicks@kellogghansen.com

*Attorneys for Beasley Allen Crow Methvin Portis & Miles, P.C.
and Andy D. Birchfield*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION AND SUMMARY ..................................................................1

ARGUMENT ....................................................................................................3

I.      THE MAGISTRATE JUDGE'S READING OF
"ASSOCIATED WITH" IN RPC 5.3 IS IRRECONCILABLE
WITH THE RULE'S TEXT, STRUCTURE, AND PURPOSE .....................3

II.     RPC 1.9 REQUIRES SUBSEQUENT REPRESENTATION ........................9

III.    THE ORDER IMPOSED A DRASTIC REMEDY WITHOUT
WEIGHING THE HARMS ..........................................................................11

IV.    THE DISQUALIFICATION ORDER SHOULD BE LIMITED
TO NEW JERSEY AND NOT IMPOSED ON COURTS ACROSS
THE COUNTRY .........................................................................................14

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boyle v. United States*, 556 U.S. 938 (2009) ............................................................ 6

*Complaint of PMD Enterps., Inc., In re*, 215 F. Supp. 2d 519
    (D.N.J. 2002) ............................................................................................ 10

*Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77 (D.N.J. 1991) ........................... 3

*Dana Transp., Inc. v. PNC Bank, N.A.*, 2024 WL 3041114
    (N.J. Super. Ct. App. Div. June 18, 2024)...................................................... 15

*LTL Mgmt., LLC, In re*:
    58 F.4th 738 (3d Cir. 2023) ...................................................................... 2, 11

    64 F.4th 84 (3d Cir. 2023) ............................................................................ 2

    2024 WL 3540467 (3d Cir. July 25, 2024) .............................................. 2, 11

*Main Events Prods., LLC v. Lacy*, 220 F. Supp. 2d 353 (D.N.J. 2002) ................... 3

*Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221
    (D.N.J. 2001) ............................................................................................... 11

*State v. Reldan*, 100 N.J. 187 (1985) ..................................................................... 15

*Taylor, In re*, 306 Ga. 622 (2019)........................................................................... 8

## STATUTES

Racketeer Influenced and Corrupt Organizations Act, Pub. L. No. 91-452,
    § 904(a), 84 Stat. 947............................................................................... 6

18 U.S.C. § 1961 ...................................................................................................... 6

**RULES**

Model Rules of Pro. Conduct (A.B.A. 2025):

    Scope ....................................................................................................... 6

    r. 8.5 ..................................................................................................... 14

N.J. Rules of Pro. Conduct:

    r. 1.9 ...................................................................................... 2, 9, 10, 13

    r. 3.7 ....................................................................................................... 3

    r. 5.3 ..................................................................... 1, 3, 4, 5, 6, 7, 8, 9, 10, 15

    r. 5.3 cmt. .............................................................................................. 4

    r. 8.5 ..................................................................................................... 14

**OTHER AUTHORITIES**

Order, *Johnson & Johnson v. Super. Ct.*, No. B354045
    (Cal. Ct. App. Apr. 24, 2026) ............................................................... 1

Douglas R. Richmond, *Watching Over, Watching Out:*
    *Lawyers' Responsibilities for Nonlawyer Assistants*,
    61 U. Kan. L. Rev. 441 (2012) .......................................................... 7

Ruling, *Johnson & Johnson Talcum Powder Cases*, No. JCCP-4872,
    slip op. (Cal. Super. Ct. Apr. 10, 2026) ....................................... 1, 3, 5

## INTRODUCTION AND SUMMARY

The Rules of Professional Conduct ("RPC") are designed to address an ascertainable set of circumstances in which a lawyer's ethical obligations are implicated. They are not open-ended standards to be applied expansively whenever a court perceives a relationship between a lawyer and nonlawyer it finds troubling. This Court should reverse the Magistrate Judge's Order because it rests on a reading of two RPC provisions that are irreconcilable with their text, structure, and purpose.

RPC 5.3 governs a lawyer's responsibilities regarding nonlawyer assistance, when a person is employed by, retained by, or associated with the lawyer. The Magistrate Judge read "associated with" so broadly that it would reach any person who "join[s] efforts for a common purpose" with a lawyer, untethered from the Rule's core concern with nonlawyer assistants. A California Superior Court confronting these facts squarely rejected that reading, finding the "spare evidence" presented by Johnson & Johnson could not give rise to an "association" between Conlan and Beasley Allen. *Johnson & Johnson Talcum Powder Cases*, No. JCCP-4872, at 8 (Cal. Super. Ct. Apr. 10, 2026) ("Cal. Ruling"). The California Court of Appeal, Second Appellate District, has since denied Johnson & Johnson's petition for writ of mandate challenging that ruling. Order, *Johnson & Johnson v. Super. Ct.*, No. B354045 (Cal. Ct. App. Apr. 24, 2026).

1

RPC 1.9 prohibits a lawyer from "thereafter represent[ing] another client" in the same or a substantially related matter adverse to a former client. It is undisputed that Conlan did not represent anyone after leaving his former law firm. Johnson & Johnson asks this Court to uphold the drastic remedy of disqualification even though it cannot point to any evidence that confidential information was shared or any change in Beasley Allen's litigation conduct attributable to Conlan occurred. All of the supposedly problematic communications occurred in mediation efforts that Johnson & Johnson subsequently rejected. That independence of action is the antithesis of taint or prejudice. And Johnson & Johnson's defense of the Order's MDL-wide scope ignores the distinction between pretrial consolidation and trial. It functionally exports a novel and contested interpretation of New Jersey law to every jurisdiction in the country.

The Court should reverse the Order and reject the disqualification motion as the latest in a series of tactical maneuvers by Johnson & Johnson to avoid accountability. Unable to escape liability through three successive bankruptcy filings – twice found by the Third Circuit to be bad-faith ploys because Johnson & Johnson was not in financial distress, *see In re LTL Mgmt., LLC*, 58 F.4th 738 (3d Cir. 2023), *amended by* 64 F.4th 84 (3d Cir. 2023); *In re LTL Mgmt., LLC*, 2024 WL 3540467 (3d Cir. July 25, 2024) – Johnson & Johnson now seeks to remove the lawyers who have most effectively opposed their maneuvers. Another court to

2

consider this disqualification theory rejected it entirely, concluding that "the motion has been brought for an improper tactical purpose."  Cal. Ruling at 6.

## ARGUMENT

I.    **THE MAGISTRATE JUDGE'S READING OF "ASSOCIATED WITH" IN RPC 5.3 IS IRRECONCILABLE WITH THE RULE'S TEXT, STRUCTURE, AND PURPOSE**

Because the Rules of Professional Conduct impose restrictions on lawyers' professional activities, they must be read with precision, and courts should not expand their reach to circumstances the drafters did not contemplate.  *See Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77, 87 (D.N.J. 1991) ("The court's function in interpreting a written rule of conduct . . . is to give life to the intent of the drafters as expressed through the language they have chosen."); *see also Main Events Prods., LLC v. Lacy*, 220 F. Supp. 2d 353, 357 (D.N.J. 2002) (reversing magistrate judge disqualification order that extended RPC 3.7 beyond the rule's text and scope).  There are serious consequences that flow from a finding of an ethical violation – including, as here, disqualification of counsel and the deprivation of thousands of clients' chosen representation.  With that principle in view, "associated with" in RPC 5.3 has a specific and bounded meaning.

The Rule's triggering clause lists three categories of nonlawyers:  those "employed by," "retained by," and "associated with" a lawyer.  N.J. RPC 5.3.  Each term describes a distinct relationship, but all share a common thread:  they

3

describe a person who participates in the lawyer's practice. "Employed" captures formal employees, such as secretaries, paralegals, and similar staff within the firm. "Retained" captures outside vendors and service providers engaged to assist in rendering legal services, such as document-management companies, and the like. "Associated with" fills the remaining space: it captures informal or functional relationships that fall short of formal employment or a traditional retention agreement, such as independent contractors, consultants who take direction from the lawyer, unpaid interns, and other persons who agree to assist with the lawyer's practice but lack a formal employment or retention arrangement. That reading gives "associated with" independent meaning while keeping it within the family of meaning established by "employed" and "retained" and consistent with the Rule's title and structure.

The official comment to RPC 5.3 confirms the Rule's reach is limited to nonlawyers who assist lawyers in practicing law. The comment identifies two categories: those within the firm, such as "secretaries, investigators, law student interns, and paraprofessionals," and those outside the firm who "assist the lawyer in rendering legal services to the client," such as document-management companies and third-party printing or scanning services. N.J. RPC 5.3 cmt. Every example involves a nonlawyer who takes direction from a lawyer or operates under a lawyer's supervision in connection with the lawyer's professional obligations.

None describes an independent business actor pursuing its own commercial interests in an arm's-length interaction with a law firm.

A California Superior Court confronting these facts reached the opposite conclusion from Magistrate Judge Singh. In *Johnson & Johnson Talcum Powder Cases*, the court denied Johnson & Johnson's motion to revoke all Beasley Allen attorneys' pro hac vice admissions. The court rejected the theory that Conlan's communications with Beasley Allen created an "association" under the professional conduct rules, holding that sharing "work product worksheets in the context of fashioning a potential settlement structure with an outside vendor" does not "transform that vendor or its principal into an associate within the meaning of the ethics rule." Cal. Ruling at 8. Accepting Johnson & Johnson's position would mean that "all mediators and other settlement officers might be considered 'associated with' lawyers with whom they attempt to facilitate settlement discussions." *Id.* The court also found that the motion "ha[d] been brought for an improper tactical purpose." *Id.* at 6. Judge Traber's ruling demonstrates that a court fully apprised of the same facts that were before Judge Singh reached a different conclusion on the merits – a conclusion consistent with the text, comment, and structure of RPC 5.3.

Conlan's company Legacy was not a nonlawyer assistant under RPC 5.3. It was an independent business enterprise that proposed to acquire all of Johnson &

Johnson's talc liability – a transaction designed to give Johnson & Johnson the finality it was seeking without resort to bankruptcy. Legacy was not employed by Beasley Allen, retained or directed by the firm, or used to render legal services to clients. In fact, under Legacy's proposal to Johnson & Johnson, it would stand in *Johnson & Johnson's* shoes as the entity responsible for litigating and settling talc claims – a position adverse to Beasley Allen's clients. Legacy falls outside every category of nonlawyer relationship that RPC 5.3 was designed to address.

Johnson & Johnson's contrary arguments do not withstand scrutiny. *First*, Johnson & Johnson argues (at 13) that the Supreme Court in *Boyle v. United States*, 556 U.S. 938 (2009), construed "associated in fact" broadly to mean "a group of persons associated together for a common purpose." But *Boyle* concerned the federal RICO statute, 18 U.S.C. § 1961, which requires that its terms be "liberally construed to effectuate its remedial purposes." 556 U.S. at 944 (citing § 904(a)). The statute further modifies the phrase with the word "any," providing for "any union or group of individuals associated in fact although not a legal entity," and the Court noted that "any" "ensures that the definition has a wide reach." *Id*. RPC 5.3, by contrast, was not intended for liberal construction, but rather designed to ensure that lawyers supervise nonlawyers who assist them in the practice of law. *See* Model Rules of Pro. Conduct, Scope (A.B.A. 2025) ("The Rules of Professional Conduct are rules of reason. They should be interpreted with

6

reference to the purposes of legal representation and of the law itself.").  Equating

RICO's definition of "associated in fact" with the professional-conduct rules

ignores the fundamental difference between these two frameworks.

*Second*, Johnson & Johnson's reliance (at 14-15) on a law review article

fares no better.  Professor Richmond describes "associated with" as covering

situations where a nonlawyer "assist[s] with a project or task related to the

lawyer's practice" or "offers to assist the lawyer in an aspect of the lawyer's

practice."  Douglas R. Richmond, *Watching Over, Watching Out:  Lawyers'*

*Responsibilities for Nonlawyer Assistants*, 61 U. Kan. L. Rev. 441, 451-52 (2012).

Both examples involve assistance with the lawyer's practice, and neither describes

an independent business actor pursuing a transaction with his own financial

motives.  Johnson & Johnson contends (at 21-22) that Conlan was not truly

independent because he and Beasley Allen both stood to benefit from their joint

proposal.  But the record shows that Legacy pursued its own proposed transaction

with Johnson & Johnson from which it expected to profit independently; Beasley

Allen did not direct Legacy's efforts or treat Conlan as a nonlawyer assistant.

Having a shared interest in a potential business outcome is not the same as

providing "assistance" with the lawyer's "practice" within the meaning of RPC

5.3.

*Third*, Johnson & Johnson contends (at 18-19) that "associated with" must be read broadly to avoid surplusage. As explained above, "associated with" carries independent meaning: It captures informal and functional relationships, such as independent contractors, consultants, or unpaid interns, that fall short of formal employment or a traditional retention agreement, but still involve assistance with the lawyer's practice and supervision by the lawyer. *See*, *e.g.*, *In re Taylor*, 306 Ga. 622, 622-23 (2019) (interpreting RPC 5.3 to cover a situation where a lawyer "associated with" a nonlawyer by setting up a joint business to advertise and receive payment for fraudulent services to clients). That reading gives the term independent content while keeping it within the meaning established by "employed" and "retained" and consistent with the Rule's title, comment, and structure.

*Finally*, Johnson & Johnson (at 20) dismisses Beasley Allen's concerns about the decision's breadth by noting that Judge Singh described the circumstances as "unique." Op. 38 n.29. But the holding is not limited to its facts. Once "associated with" reaches any person who "join[s] efforts for a common purpose" with a lawyer, without regard to whether that person assists with the lawyer's practice, the standard has no principled stopping point. Future litigants will invoke it as a strategic weapon against lawyers who interact with any nonlawyer in settings that can be characterized as a shared objective.

## II.    RPC 1.9 REQUIRES SUBSEQUENT REPRESENTATION

Even if RPC 5.3(a) were extended to make Beasley Allen responsible for Conlan's conduct, it would only matter if Conlan had violated the Rules of Professional Conduct.  He did not.  RPC 1.9(a) provides that "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter" adverse to the former client.  The missing element here is the Rule's operative prohibition:  later representation of another client.  Likewise, even if Conlan's activities could somehow be characterized as "representation," there was no position taken adverse to Johnson & Johnson.  To the contrary, Legacy's proposal offered Johnson & Johnson precisely what it was seeking – finality for its talc liabilities – through a mechanism other than bankruptcy, which the Third Circuit had twice held was unavailable to Johnson & Johnson.

It is undisputed that Conlan did not represent anyone after leaving Faegre Drinker in March 2022.  He stopped practicing law, ceased having clients, and acted solely as Legacy's CEO.  Judge Porto found this fact dispositive and denied Johnson & Johnson's disqualification motion.  (Doc. No. 44518-6, Ex. 2 at 29-32). The Magistrate Judge's Order avoids the plain text of RPC 1.9 by asking instead whether Conlan "would have violated RPC 1.9(a)" if he had been acting as a lawyer.  Op. 35.

9

Johnson & Johnson cites (at 24) testimony that Birchfield and Conlan understood Beasley Allen could not have hired or retained Conlan to work on the talc litigation. That testimony proves the point: if Beasley Allen had hired former Johnson & Johnson outside counsel to work on the same matter, the rules would have applied. It does not prove that the arrangement that existed falls within the rules. That distinction is dispositive for purposes of RPC 1.9.

Johnson & Johnson cites (at 24) to *In re Complaint of PMD Enterprises, Inc.*, 215 F. Supp. 2d 519, 529 (D.N.J. 2002), for the principle that "an attorney may not do through an agent that which he could not do himself." A general maxim does not permit a court to erase the explicit text of a rule. The question remains whether Conlan was an "agent" addressed by RPC 5.3, and whether RPC 1.9(a)'s later-representation requirement was satisfied. On both questions, the answer is no. Beasley Allen did not place Conlan on its payroll, retain Legacy to perform legal services, or direct Conlan as a nonlawyer assistant on firm matters. Legacy pursued its own proposed transaction with Johnson & Johnson and Conlan never represented anyone as a lawyer. Johnson & Johnson rejected Legacy's proposal, proceeded to file its third bankruptcy, and has never demonstrated that its litigation posture was prejudiced in any way.

10

## III.   THE ORDER IMPOSED A DRASTIC REMEDY WITHOUT WEIGHING THE HARMS

"It is well settled that because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only 'when absolutely necessary.'" *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001).  The Magistrate Judge's Order did not adhere to this standard, and the broader context underscores this point.  Johnson & Johnson's serial bankruptcy filings were twice rejected by the Third Circuit as a bad-faith ploy.  *See LTL Mgmt.*, 58 F.4th 738; *LTL Mgmt.*, 2024 WL 3540467.  It was in court-ordered mediation during the second of those bankruptcies that the communications at issue took place.  Johnson & Johnson's motion is a continuation of the same tactical playbook:  failing to limit exposure via bankruptcy, it sought to disqualify counsel that has been "the primary opponent to resolving anything in bankruptcy." Decl. of Andy Birchfield ¶ 18 (Feb. 18, 2026), Dkt. No. 44032-1.

Johnson & Johnson seeks (at 27-28) to draw an adverse inference from the "silence" from "former Plaintiffs," implying Beasley Allen should have obtained affidavits from ovarian cancer victims it represents in the MDL.  These are women, and the families of women, fighting for their lives because of cancer caused by Johnson & Johnson's talc-based products.  Beasley Allen will not divert their attention from their health and cases to prepare court papers in support of a motion to appeal.

11

Johnson & Johnson's suggestion (at 33-34) that another law firm can seamlessly replace Beasley Allen ignores the reality of complex mass tort litigation. The institutional knowledge, litigation strategy, expert relationships, and client familiarity developed over years of representation cannot be replicated overnight. Moreover, since the pendency of their cases in the MDL, more than 1625 of Beasley Allen's clients have died. *See* Dkt. No. 44439-2. Beasley Allen has walked with these women and families through difficult treatment courses, emotional preservation depositions, and death. For those clients who are still suffering or who have survived their cancer, Beasley Allen has also shepherded them through the litigation process every step of the way. For these clients to have these long-term relationships disturbed is a significant upset and detriment.

Johnson & Johnson also points (at 34-35) to the fact that no bellwether trials are currently scheduled in the MDL as evidence that no harm will result from disqualification. But the absence of scheduled trials is, in part, a consequence of the disqualification itself. In the parallel state MCL, a bellwether trial was postponed from April to August 2026 because of the disqualification. The disruption caused by removing experienced lead counsel at this stage is precisely the irreparable harm that weighs against disqualification.

There is no harm to Johnson & Johnson in restoring Beasley Allen as counsel. In the more than three years since Johnson & Johnson first pursued

12

disqualification, it has not identified an instance where Beasley Allen's litigation conduct changed because of its interactions with Conlan, or any theory asserted by Beasley Allen that could be attributed to Conlan's knowledge. The absence of any demonstrable prejudice is telling given that all of the challenged communications occurred during court-ordered mediation, and Johnson & Johnson freely rejected the settlement proposal that emerged from those discussions. Having declined the resulting proposal, Johnson & Johnson bears the burden of demonstrating how any information Conlan may have conveyed actually affected Beasley Allen's litigation posture – a burden it has not come close to meeting.

Johnson & Johnson argues (at 32-34) that its harm "inhere[s] in the violation itself," citing the "prophylactic" purpose of RPC 1.9. But this confuses the merits with equities, which ask whether the fairness of the proceedings would be impaired by Beasley Allen's continued involvement. Johnson & Johnson has had every opportunity to identify concrete prejudice and has not. The disqualification itself threatens orderly administration by injecting uncertainty, confusion, and delay into decade-long litigation at a critical juncture.

The Magistrate Judge also did not consider whether remedies short of disqualification could address the concerns. For example, the court could have prohibited Conlan or Legacy from further involvement in these cases, or barred common-benefit work touching the challenged communications. Each of these

13

measures would address the ostensible concern of protecting Johnson & Johnson's

confidences without depriving thousands of cancer victims and their families of

their chosen counsel.

## IV.    THE DISQUALIFICATION ORDER SHOULD BE LIMITED TO NEW JERSEY AND NOT IMPOSED ON COURTS ACROSS THE COUNTRY

Johnson & Johnson defends (at 36-39) the MDL-wide reach of the

disqualification by contending that attorneys who practice before this District have

bound themselves to New Jersey's ethical rules.  But this conflates pretrial

consolidation with trial.  An MDL court consolidates cases solely for pretrial

proceedings; those cases are then remanded to their transferor courts for trial.

Under both ABA Model Rule 8.5 and New Jersey's RPC 8.5, "the rules of

professional conduct to be applied shall be . . . the rules of the jurisdiction in which

the tribunal sits."  Once cases are remanded, the relevant tribunal becomes the

transferor court, and the applicable ethics rules are those of the state where the case

is remanded.  A blanket MDL-wide disqualification thus imposes one state's

ethical framework on courts that have their own independent authority and

substantive law to govern the conduct of attorneys appearing before them.

Johnson & Johnson further contends (at 39) that the New Jersey Supreme

Court's denial of Beasley Allen's motion for leave to appeal the Appellate

Division's decision constitutes New Jersey's "final word" on the meaning of

"associated with" under RPC 5.3. That characterization is incorrect. The New Jersey Supreme Court merely declined to grant interlocutory review, which is a discretionary appeal that the court grants only in exceptional circumstances. *State v. Reldan*, 100 N.J. 187, 205 (1985) ("[T]he grant of leave to appeal an interlocutory order is itself highly discretionary . . . it is customarily exercised only sparingly, and its denial by the appellate court will not prejudice its further review in the event it is presented in a later appeal."). A denial of leave to appeal carries no precedential weight and does not signify endorsement of the Appellate Division's reasoning. *See Dana Transp., Inc. v. PNC Bank, N.A.*, 2024 WL 3041114, at *7 (N.J. Super. Ct. App. Div. June 18, 2024). Once final judgment is entered in the underlying state-court proceedings, Beasley Allen can raise this issue on appeal, and the Supreme Court will have an opportunity to address the interpretation of RPC 5.3. At a minimum, the Court should limit any disqualification to MDL cases originating in New Jersey – of which Beasley Allen currently has none – and allow transferor courts to make their own determinations under their states' RPCs.

## CONCLUSION

Beasley Allen respectfully requests this Court reverse Magistrate Judge Singh's Order disqualifying Beasley Allen, Dkt. No. 44424, and restore the firm to the PSC.

15

Dated:  April 27, 2026

Respectfully submitted,

/s/ *Jeffrey M. Pollock*

Jeffrey M. Pollock, Esq.
POLLOCK LAW LLC
400 Riverview Plaza, Suite 425
Trenton, New Jersey 08611
Telephone: 609-308-7300

David C. Frederick
Geoffrey M. Klineberg
Ariela M. Migdal
Abigail E. DeHart
Donovan J. Hicks
KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
gklineberg@kellogghansen.com
amigdal@kellogghansen.com
adehart@kellogghansen.com
dhicks@kellogghansen.com

*Attorneys for Beasley Allen Crow
Methvin Portis & Miles, P.C. and
Andy D. Birchfield*

16