# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 16-2738 (MAS) (RLS)<br><br>**MEMORANDUM OPINION AND ORDER ON MOTION TO STAY** |

**SINGH, United States Magistrate Judge**.

**PRESENTLY** before the Court is the Motion by Beasley Allen Crow Methvin Portis & Miles, P.C. and Andy D. Birchfield (collectively, "Beasley Allen") for a Stay of the Court's Order disqualifying Beasley Allen, (Doc. No. 44424), and accompanying Memorandum Opinion, (Doc. No. 44423), pending appeal to the District Court pursuant to Local Civil Rule 72.1(c)(1)(B) (the "Motion"). (Doc. No. 44439). Defendants Johnson & Johnson and Red River Talc LLC (collectively, "J&J") oppose the Motion. (Doc. No. 44591). The Court has fully considered the parties' written submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, the Court **DENIES** Beasley Allen's Motion for a Stay.

1

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The parties are familiar with the background and procedural history of this matter and thus the Court does not recite it at length herein.  On March 26, 2026, the undersigned issued a 41-page Memorandum Opinion and accompanying Order (the "Disqualification Order"), disqualifying Beasley Allen from these proceedings and removing the firm from the Plaintiffs' Steering Committee ("PSC") based on the firm's association with James Conlan, J&J's former counsel.  (Doc. No. 44423; Doc. No. 44424).  In so ruling, the Court found that Beasley Allen violated Rules of Professional Conduct ("RPC") 5.3 and 1.9(a) through that association.[1]  (*See* Doc. No. 44423 at p. 39).    On March 30, 2026, Beasley Allen filed the instant Motion to Stay the Disqualification Order pending its anticipated appeal of that decision to the District Court.  (Doc. No. 44439).  On April 9, 2026, Beasley Allen filed a Motion for Leave to Appeal the Disqualification Order, which remains pending before the District Court. (*See* Doc. No. 44518).  On April 20, 2026, J&J filed its opposition to both the Motion to Stay, as well as the Motion for Leave to Appeal the Disqualification Order.  (*See* Doc. Nos. 44591 and 44592).

Beasley Allen argues that a stay is warranted in these circumstances.  (*See* Doc. No. 44439-1).    It contends that it will likely be successful on its appeal of the

---

[1]  Since the entry of the Disqualification Order, the Supreme Court of New Jersey declined to review the New Jersey Appellate Division opinion which reached the same result and other jurisdictions have similarly found the same.

Disqualification Order for multiple reasons.  First, it argues that the Court too broadly construed the term "associated with" as applied in RPC 5.3.  Second, Beasley Allen contends that the Court failed to conduct a rigorous assessment of the balance of hardships necessary when considering disqualification and, had it done so, the Court would not have disqualified and removed Beasley Allen.  Third, Beasley Allen argues that the Court erred in disqualifying the firm because there was no finding that Conlan shared J&J confidences with Beasley Allen.  In addition, Beasley Allen contends that a stay is warranted because, absent such a stay, its thousands of clients would suffer irreparable harm, including the loss of its institutional knowledge and relationships that would impact the PSC's efforts to move forward with the bellwether cases.  It adds that such harm is particularly acute given its critically ill clients.  Beasley Allen also argues that the balancing of any harm to J&J and the public interest weigh in favor of a stay of the Disqualification Order.

J&J opposes the Motion to Stay.  (*See* Doc. No. 44591).  It argues that Beasley Allen's appeal of the Disqualification Order is not likely to succeed, noting that, to do so, Beasley Allen must show that the Court's ruling was "clearly erroneous or contrary to law."  J&J contends that Beasley Allen would not be able to meet that hurdle given the extensive record considered by the Court in reaching its decision.  J&J further counters Beasley Allen's arguments that disqualification was not warranted under the applicable RPCs and factual record for many of the reasons addressed in the underlying disqualification motion practice.  J&J also disputes Beasley Allen's assertion that

3

irreparable harm would result in the absence of a stay, noting that the firm has not proffered any evidence directly from its clients supporting that proposition. It adds that other firms are ready to stand in Beasley Allen's shoes to continue with the pretrial proceedings and trial for the bellwether cases. In addition, J&J contends that the balancing of equities and pubic interest actually weighs against a stay.

## II.    APPLICABLE LEGAL STANDARD

"A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Nken v. Holder*, 556 U.S. 418, 421 (2009). The Court exercises discretion in determining whether to stay an order pending appeal based on the facts and circumstances presented, and the movant bears the burden of showing a stay is appropriate. *Id.* at 433-34. A court exercises that discretion by considering four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The first two factors "are the most critical." *Id.* To meet the first factor, "a sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'" *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015) (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (*en banc*)). As to the second factor, "the applicant must 'demonstrate that irreparable injury

is *likely* [not merely possible] in the absence of a stay.'" *Id.* at 569 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal editing marks omitted)). If these factors are met, then the Court balances the equities and public interests. *Id.* (citing *Nken*, 556 U.S. at 435).

## III.  DISCUSSION

The Court first considers whether Beasley Allen has met its burden of showing "a reasonable chance, or probability, of winning" the appeal of the Disqualification Order and that irreparable harm is likely absent a stay. *In re Revel*, 802 F.3d at 568-69 (internal quotation marks omitted).

### A.    LIKELIHOOD OF SUCCESS ON THE MERITS

To demonstrate likelihood of success on the merits of its appeal, Beasley Allen must show it is more likely than not that the District Court will find the Disqualification Order was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

First, Beasley Allen contends that it will persuade the District Court that the Court's interpretation of the phrase "associated with" in RPC 5.3 is unprecedented and contrary to law. Specifically, the firm argues that "associated with" must be read in light of its neighboring terms to require a professional relationship involving direction, supervision, or control.

The surplusage canon—which counsels that each word in a provision be given independent meaning—compels a reading of "associated with" that extends beyond

5

"employed" or "retained by." *See Dubin v. United States*, 599 U.S. 110, 126 (2023) ("The Court assumes that Congress used three terms because it intended each term to have a particular, nonsuperfluous meaning." (internal quotation and editing marks and citation omitted)). The ordinary meaning of "associate" is "[t]o join or unite in friendship, companionship, business, or some other common purpose, action, or condition." *Associate*, Black's Law Dictionary 151 (12th ed. 2024). Such definition is consistent with the Restatement (Third) of the Law Governing Lawyers and even a law review article cited to by Beasley Allen during the underlying proceedings. *See* Douglas R. Richmond, *Watching over, Watching Out: Lawyers' Responsibilities for Nonlawyer Assistants*, 61 U. KAN. L. REV. 441, 451 (2012). In contrast, Beasley Allen's proposed construction as requiring a "professional relationship involving direction, supervision, or control" is not supported in the Rule, commentary, or case law.

Beasley Allen also contends that the Court's interpretation of "associate with" would "chill" participation in court-ordered mediation by treating every mediating party as "associated." However, the Memorandum Opinion on the Disqualification Order made clear the particular and unique facts presented. (*See* Doc. No. 44423 at pp. 31-33). The nature of Conlan's association with Beasley Allen—at Beasley Allen's behest—do not resemble the typical arm's-length mediation process. The Court is not convinced that Beasley Allen is likely to win on the merits of these arguments on the appeal of the Disqualification Order.

6

Second, Beasley Allen contends that it would likely succeed on the appeal of the Disqualification Order because Conlan did not share with it J&J confidential information violative of RPC 1.9(c) and was not acting as an "attorney" when associated with Beasley Allen. As repeatedly pointed out, however, a violation of RPC 1.9(a) is a separate and independent basis for a disqualification and does not require a finding that confidential information was actually disclosed. *See Twenty-First Century Rail Corp. v. N.J. Transit Corp.*, 210 N.J. 264, 278 (2012) ("[D]isqualification, if the matter is indeed the same, does not turn on the identification of any particular confidence having been revealed." (internal citation omitted)).

In addition, RPC 5.3(c) does not require the associated nonlawyer to formally "represent" a client; rather, the question is whether the nonlawyer's conduct "would" have violated the RPCs "had he been acting as a lawyer." During the underlying proceedings, Beasley Allen conceded that RPC 1.9(a) would have prohibited hiring or retaining Conlan in any capacity on the talc litigation. (*See* Doc. No. 44518-9 at 100:19-101:1; Doc. No. 44518-11 at 64:1-18). Similarly, Beasley Allen's own testimony confirmed that it "wanted to include" Conlan in the mediation process, and indeed worked with him extensively, reflecting the firm's ratification of Conlan's conduct.[2]

Third, Beasley Allen argues that it is likely to succeed on its appeal because the Court failed to conduct a "rigorous, fact-specific" hardship analysis. Yet, the Court's

---

[2] Notably, Beasley Allen's Motion to Stay does not appear to challenge the Court's finding that it ratified Conlan's conduct.

Memorandum Opinion expressly considered the disruption that disqualification would cause to Beasley Allen's clients, acknowledged the firm's role as lead counsel, and weighed those considerations against the competing interest in maintaining the integrity of these proceedings. (*See* Doc. No. 44423 at pp. 37-39). That the Court ultimately resolved the balance in favor of disqualification does not render the analysis "clearly erroneous or contrary to law."

Accordingly, Beasley Allen has not demonstrated a likelihood of success on the merits of its appeal, and the first gateway factor weighs against a stay.

### B.    IRREPARABLE HARM

As to the second applicable factor, Beasley Allen offers broad and unspecified assertions of irreparable harm to its thousands of clients in the event the Court does not stay execution of the Disqualification Order pending appeal. Notably absent, however, is any sworn statement from a single client supporting those claims. Since the entry of the Disqualification Order, other counsel have entered appearances in many of the cases in which Beasley Allen represented the plaintiff. Notably, although a contentious relationship, Beasley Allen and The Smith Law Firm, PLLC have jointly represented Beasley Allen's talc clients in this MDL pursuant to a Joint Venture Agreement. (*See* Doc. No. 44028-2 at pp. 2-3). Consistent with the Disqualification Order, the parties also have reinvigorated *Pro Se* Liaison Counsel, in the event the Beasley Allen clients were left without representation. Significantly, the Court is aware of only one former Beasley Allen client proceeding *pro se* as of the date of this

Memorandum Opinion, which was driven primarily by that client's request rather than the Disqualification Order.

In addition, proceedings on the bellwether cases have proceeded promptly following the entry of the Disqualification Order, undercutting Beasley Allen's contention that their former clients would be irreparably harmed by delays that could ensue from a denial of a stay. Beasley Allen also argues that the loss of its institutional knowledge and expert relationships will irreparably harm Plaintiffs in the bellwether cases. However, none of the six trial-ready bellwether cases is currently scheduled for trial, and no firm deadlines have been or will be disrupted by Beasley Allen's absence. Moreover, competent counsel have stepped in on behalf of the bellwether plaintiffs, reflecting a sufficient transition. As such, Beasley Allen has not shown that irreparable harm is likely in the event the Court does not grant the stay.

Because Beasley Allen has failed to satisfy either of the two gateway factors, the Court need not proceed to the remaining stay factors. *See in re Revel*, 802 F.3d at 569. Nevertheless, consideration of the additional factors weigh against a grant of a stay here.

## C.    BALANCING OF THE EQUITIES

By requesting a stay of the execution of the Disqualification Order, Beasley Allen seeks the Court to reinstate it into these proceedings, at least temporarily, pending resolution of its appeal. Since the entry of the Disqualification Order, proceedings in this MDL have moved forward and remaining counsel have worked diligently to maintain order, without the ethical taint that beleaguered this matter for years. While

9

Beasley Allen argues that the harm of a stay to J&J is minimal, the harm of a stay would reinject uncertainty and delays in these proceedings. Indeed, how could the Court schedule a bellwether trial with Beasley Allen temporarily representing the plaintiff if the appeal remains pending? A stay of the Disqualification Order could indeed necessitate a stay of all proceedings in this MDL pending resolution of the firm's appeal to ensure the integrity of these proceedings. Yet, Beasley Allen's clients and all parties to this MDL are entitled to have these matters move forward. As such, the balance of equities weighs against a stay of the Disqualification Order.

## D.    THE PUBLIC INTEREST

The public interest lies in the preservation of "public trust both in the scrupulous administration of justice and in the integrity of the bar." *Essex Cnty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 440 (D.N.J. 1998) (citation omitted). The public clearly has an interest in having these MDL proceedings, involving tens of thousands of individuals and families, move forward without the uncertainty of representation. Further, the Court is not convinced that public interest weighs in favor of a stay because, as Beasley Allen argues, the Court is applying New Jersey's RPCs to cases that originate out of this jurisdiction. Such purported "harm to comity" is a stretch. In the MDL context, transferee courts apply the laws and rules of its jurisdiction, including ethical obligations that all appearing counsel must observe. *See, e.g., in re Gabapentin Patent Litig.*, 407 F. Supp. 2d 607, 611-12 (D.N.J. 2005) (applying New Jersey's RPCs); *see also* L. Civ. R. 103.1 (applying New Jersey's RPCs to attorneys appearing in this

10

Court); *in re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406, 2025 WL 629279, at *5-6 (N.D. Al. Feb. 26, 2025) (rejecting counsel's argument that the forum's RPCs did not apply to conduct occurring out of state but "in connection with a matter pending before *this* tribunal"). Consideration of the public's interest thus also weighs against a stay.

## IV. CONCLUSION

For the foregoing reasons, Beasley Allen has failed to establish that a stay of the Disqualification Order pending its appeal is warranted. It has not shown a likelihood of success on the merits or irreparable harm would likely ensue. Moreover, a careful balancing of the equities as well as the public interest weigh against a stay.

Accordingly, for good cause shown,

**IT IS** on this **26th** day of **May 2026** hereby

**ORDERED** that Beasley Allen Crow Methvin Portis & Miles, P.C. and Andy D. Birchfield's Motion for a Stay of the Court's Order of Disqualification (Doc. No. 44439) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket Entry No. 44439.

**SO ORDERED**.

_R. Singh_____
**RUKHSANAH L. SINGH**
**United States Magistrate Judge**

11