# KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, NY 10022
United States

Kristen Renee Fournier
To Call Writer Directly:
+1 212 446 4777
kristen.fournier@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

June 15, 2026

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> Re:   *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2738
> **Defendants' Remand Procedure Proposal**

Dear Judge Singh:

We write regarding Defendants' proposal for remanding cases.

As a threshold matter, Defendants believe this is no longer the time to discuss remand. The shape of this MDL has fundamentally changed since Plaintiffs first raised the issue with the Court at the May 6, 2026 case management conference.

Since that time, Plaintiffs have withdrawn their specific causation experts for all six cases in the bellwether trial pool. *See* ECF 45191. If, after over a decade, Plaintiffs cannot successfully get even *one* of these six cases across the line to *start* a bellwether trial, it makes little sense to start remanding hundreds of similar, fatally flawed cases to district courts across the country. Indeed, Defendants have moved for an order to show cause why all claims in this MDL should not be dismissed with prejudice. *See* ECF 45314. Given these important developments, Defendants respectfully submit that the Court should – at the *very least* – wait until the resolution of Defendants' MDL-defining motion before the Court starts the process of determining when and how cases might be remanded.

Nevertheless, pursuant to Your Honor's order, Defendants have met and conferred with Plaintiffs in good faith and were able to reach some areas of commonality with Plaintiffs should this Court move forward with a remand process. Defendants do not oppose Plaintiffs' proposal that the first remand wave consist of 300 cases. Defendants further agree that the make-up of the

# KIRKLAND & ELLIS LLP

Hon. Rukhsanah L. Singh
June 15, 2026
Page 2

first remand pool of cases should be finalized approximately four months after the remand order (which would be October if ordered today). Nor do Defendants oppose the general limitations on deposition discovery set out in Plaintiffs' proposal, namely, that fact witness depositions of the remanded cases would be limited to four fact witnesses per side.[1]

However, Defendants disagree with the broad strokes of Plaintiffs' one-sided proposal, which is not balanced and does not even attempt to first select representative cases for remand, but rather expedites the cases most favorable to Plaintiffs, with no explanation. As some examples: Plaintiffs seek to unilaterally select all of the 300 cases to be remanded, ensuring only the most Plaintiff-leaning cases are sent back for near-term trials. Similarly, while the split between living and deceased plaintiffs in this MDL is approximately 70% living / 30% deceased, Plaintiffs propose that the first remand wave be composed of *all* living plaintiffs.

Additionally, Plaintiffs would have the dozens of remand courts rule on cross-cutting issues such as motions *in limine* with no input or suggestion from this Court, who has overseen the litigation all these years. Their proposed approach effectively defeats the entire purpose of the MDL. This Court is best positioned to make rulings on what evidence should be presented at trials, after years of experience with the litigation and the benefit of reviewing hundreds of pages of evidence via prior and pending motions. Regardless of whether this Court's rulings as to such motions are fully *binding* on the remand courts, Defendants fully expect the remand courts to give those rulings the respect and deference they deserve, likely following them in most, if not all cases.

Finally, some aspects of Plaintiffs' proposal are unworkable. For example, Plaintiffs propose a meet and confer concerning the contours of the second remand wave after 90 days. But with at least 4 depositions per case under either party's proposal (and likely more), the initial remand wave will mean a *minimum* of 1,200 depositions. Unless the parties are prepared to undertake over 12 depositions *per day*, the work on wave one will still be in the most initial stages at the 90-day mark. Thus, the better approach is to schedule only the first remand wave at this time. Once work on the first wave is completed, the parties and the Court can together assess the lessons learned from the process before scheduling and setting any procedures for the next wave.

In short, Defendants' proposal is far more balanced, better aimed at achieving the goals of an MDL, and immensely more practical than that put forth by Plaintiffs. If the Court is inclined to begin a remand process at this time at all – and again, Defendants believe undertaking such

---

[1] Defendants fundamentally disagree with Plaintiffs' proposal that Plaintiffs essentially be permitted to dictate which treaters and fact witness Defendants depose, as discussed more fully herein.

# KIRKLAND & ELLIS LLP

Hon. Rukhsanah L. Singh
June 15, 2026
Page 3

work is no longer necessary in light of Defendants' recent request for an order to show cause – the process should be consistent with the structure and phases laid out herein.

## Defendants' Proposal

Defendants originally proposed to counsel for Plaintiffs that the parties undertake a dual-track process: trials would go forward in three of the then-remaining six bellwether trial cases at the same time the parties conducted case workup on a 300-case remand pool. But that concept is no longer feasible now that Plaintiffs have withdrawn their specific causation experts in each of the six bellwether trial cases.  Without evidence of specific cause, none of those six cases can survive dismissal.

Nevertheless, Defendants still believe that pre-trial rulings and the process of bellwether trials are a foundational part of any MDL and that some manner of such work should be completed before any remands occur here. *See* Manual for Complex Litigation (Fourth) § 22.315 (2004) (describing bellwether or test-case trials and explaining that representative cases "produce reliable information about other mass tort cases"). At a minimum, there is little doubt that the Court's rulings as to cross-cutting evidentiary issues would be instructional for the remand courts and is expressly contemplated by MDL procedure. *See id.* § 20.133 (explaining that the transferee court's final pretrial order should summarize "the rulings that will affect further proceedings" and that transferor courts should not disturb the transferee court's rulings absent a significant change of circumstances). Similarly, despite numerous attempts at resolution in a variety of forums over the years, the parties have yet to undertake the most common mechanism to set values and encourage settlement in proceedings such as this: verdicts in bellwether trials.  To that end, Defendants' remand proposal continues to include trial to verdict in representative cases.

More specifically, Defendants' remand proposal is as follows:

**Phase 1: Updated And Complete Plaintiff Profile Forms.** All plaintiffs should update or complete their Plaintiff Profile Forms and provide new medical record authorizations, which will guide the selection of remand cases. Plaintiffs who fail to comply by the deadline should receive one deficiency notice and 30 days to cure. If the plaintiff still fails to comply, the case should be dismissed with prejudice.

Only those plaintiffs who have complied shall be eligible to proceed to Phase 2. Anyone who does not wish to complete the Plaintiff Profile Form or provide medical record releases is permitted to voluntarily dismiss her case, with prejudice, before the conclusion of the initial deadline.

## KIRKLAND & ELLIS LLP

Hon. Rukhsanah L. Singh
June 15, 2026
Page 4

**Phase 2: Random Selection of 300 Cases**. 300 cases will be selected for remand through a system generated, random selection process.  The process will be pre-programmed and weighted to ensure that: (a) certain non-random features will be guided by the completed Plaintiff Profile Forms; and (b) the selected cases shall be statistically representative of the MDL.  First, the 300 cases will be split 70% living / 30% deceased to reflect the broader MDL docket.



Second, the 300 cases will be split evenly among the three most common forms of ovarian cancer subtypes on the docket: high grade serous, endometrioid, and clear cell.

**Phase 3a: Selection, Workup and Trial in 3 Bellwether Cases.**  As previously noted, despite the fact that the six bellwether trial cases can no longer be tried due to the lack of specific causation evidence, Defendants continue to believe that guidance from the Court on cross-cutting issues, the viability of various claim theories, and the scope of relevant and admissible evidence would be enormously helpful to both the parties and future remand courts.  Accordingly, Defendants request that the Court review and issue a decision on the now-pending summary judgment motion filed in the original six bellwether trial cases.

In addition, Defendants propose that the Court randomly select three bellwether trial cases from the 300-case remand pool.  Specifically, the Court should select one high grade serous, one endometrioid and one clear cell case from the pool to ensure that each of the three most common forms of ovarian cancer subtypes on the MDL docket are represented.  Once the cases are selected, the parties shall have 30 days to negotiate a pretrial schedule that completes the following tasks *in each of the three cases* within 18 months:

1. Fact discovery in the form and volume anticipated for remand cases as set out in Phase 3b below;

# KIRKLAND & ELLIS LLP

Hon. Rukhsanah L. Singh
June 15, 2026
Page 5

2.  Specific cause expert discovery, including *Rule* 702 briefing; and

3.  The submission of deposition designations and objections; up to 50 documents per side (and related objections); and up to ten (10) cross-cutting motions *in limine* per case, per side (to include replies) to the Court for adjudication.

This representative pretrial work shall run in parallel with the work taking place in the remaining 297 remand cases (outlined in Phase 3b below). The bellwether trials shall commence as quickly as feasible after completion of the above outlined work and shall run back-to-back in an order chosen by the Court. Each trial shall be completed in 15 court days (exclusive of jury selection, closing and deliberations), with the time divided evenly between the parties and tracked via chess clock.

**Phase 3b: Case Selection, Workup and Discovery of Remaining 297 Remand Cases.** Workup of the remand case pool shall occur simultaneously to the bellwether trial work outlined in Phase 3a above.  Workup shall include the following in all 297 cases:

Depositions:  Defendants propose that each side may notice and conduct up to 4 fact witness depositions in addition to the deposition of the plaintiff (or the plaintiff's representative if the talc user is deceased) for a total of nine depositions.[2]  The fact-witness depositions shall not include company discovery (which is complete), but rather are case-specific only and will include any deposition of treaters. If one party does not choose to conduct four depositions, that will not preclude the other side from noticing its full allotted number of fact depositions.

The party that notices the deposition shall question the witness first.

All plaintiff (or representative) depositions shall be noticed by Defendants and limited to 7 hours of total questioning by Defendants, consistent with the federal rules of evidence.  All other fact depositions shall be limited to two hours of questioning per side, with time being broken down (direct/opposition/rebuttal) as the parties deem fit and tracked by chess clock.

Other Discovery: Each selected case also will respond to a standard set of requests for production, interrogatories, and requests for admission (30 each). Any case that fails to provide

---

[2]   Defendants expect a number of depositions will occur remotely by video and do not object to the non-noticing party opting for remote appearance. But Defendants do not believe there should be a blanket rule that the depositions are required to occur over video. The noticing party shall dictate whether depositions are live or in person.

# KIRKLAND & ELLIS LLP

Hon. Rukhsanah L. Singh
June 15, 2026
Page 6

responses (and documents, if relevant) to the standard discovery requests shall be subject to motion practice for removal from the remand pool.

Expert Disclosures: Case-specific expert disclosures will occur after remand but must pass scrutiny under the framework of this Court's *Rule* 702 decisions (general cause, specific cause and asbestos testing issues).

**Phase 4: Remand.** After the discovery outlined in Phase 3b has been completed under the supervision of this Court; all *Rule* 702 decisions have been issued; the motion for summary judgment filed in connection with the original six bellwether trial cases has been decided; all intermediary appeals pursuant to Section 1292(b) of the *Rule* 702 orders and/or summary judgment are completed (if any); a verdict (or mistrial) has been rendered in each of the three bellwether trials contemplated by Phase 3a; and any cases that have failed to comply with the terms of the remand process have been removed from the pool; any of the 297 cases that remain shall be remanded.

Assuming the Court agrees to a 300-case remand pool, permits no more discovery than that which is outlined within this proposal, and also adopts both the process and trial length proposed herein for bellwether trials, some number of cases will be ready for remand in Q1 2028.

Respectfully,

Kristen Renee Fournier, Esq.

cc:    Jessica L. Brennan, Esq.
       All Counsel (via ECF)