## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:16-md-02738-MAS-RLS |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY ALL CASES IN THIS MDL SHOULD NOT BE DISMISSED WITH PREJUDICE

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION ...................................................................................................1

ARGUMENT .......................................................................................................4

I.      THE SIX BELLWETHER CASES SHOULD BE DISMISSED. ...................4

II.     THE COURT SHOULD ISSUE AN ORDER TO SHOW CAUSE
        WHY ALL CLAIMS IN THIS MDL SHOULD NOT BE
        DISMISSED. ...............................................................................................5

        A.      A Show-Cause Procedure Comports With Due Process......................6

        B.      Defendants Have Established Good Cause For Issuing A Show-
                Cause Order. ...............................................................................8

CONCLUSION..................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*,
 MDL No. 3043, 2024 U.S. Dist. LEXIS 11328
 (S.D.N.Y. Jan. 17, 2024)...........................................................................................6

*Beavan v. Allergan U.S.A., Inc.*,
 264 N.J. 99 (2026) ..............................................................................................13, 14

*Blackwell v. Wyeth*,
 971 A.2d 235 (Md. 2009) ...........................................................................................15

*Carl v. Johnson & Johnson*,
 464 N.J. Super. 446 (App. Div. 2020)........................................................................14

*In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*,
 684 F. Supp. 2d 1377 (J.P.M.L. 2010) ......................................................................10

*Dafler v. Raymark Indus., Inc.*,
 259 N.J. Super. 17 (App. Div. 1992).........................................................................14

*Echeverria v. Johnson & Johnson*,
 37 Cal. App. 5th 292 (2019) .......................................................................................13

*Engilis v. Monsanto Co.*,
 151 F.4th 1040 (9th Cir. 2025) ..................................................................................14

*Feit v. Great W. Life & Annuity Ins. Co.*,
 271 F. App'x 246 (3d Cir. 2008) ................................................................................10

*Hamer v. LivaNova Deutschland GmbH*,
 994 F.3d 173 (3d Cir. 2021) ....................................................................................7, 8

*Home Depot USA, Inc. v. Lafarge North America, Inc.*,
 59 F.4th 55 (3d Cir. 2023) ............................................................................................7

*Ingham v. Johnson & Johnson*,
 608 S.W.3d 663 (Mo. Ct. App. 2020) ........................................................................13

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
220 F. Supp. 3d 1356 (J.P.M.L. 2016) ...............................................3

*Levitas v. Christian*,
164 A.3d 228 (Md. 2017) ........................................................15

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Products Liability Litigation (No. II)*,
892 F.3d 624 (4th Cir. 2018) ................................................6, 7

*Magistrini v. One Hour Martinizing Dry Cleaning*,
180 F. Supp. 2d 584 (D.N.J. 2002)..........................................12

*In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*,
93 F.4th 339 (6th Cir. 2024) .....................................................5

*Papera v. Pennsylvania Quarried Bluestone Co.*,
948 F.3d 607 (3d Cir. 2020) ....................................................4

*Roth v. Cabot Oil & Gas Corp.*,
287 F.R.D. 293 (M.D. Pa. 2012) ...............................................8

*Russell v. Chesapeake Appalachia, L.L.C.*,
305 F.R.D. 78 (M.D. Pa. 2015) .................................................8

*Sharpe v. Bestop, Inc.*,
314 N.J. Super. 54 (App. Div. 1998), *aff'd*, 158 N.J. 329 (1999)................ 14-15

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
No. 19-2875, 2025 U.S. Dist. LEXIS 221602
(D.N.J. Nov. 10, 2025)........................................................3, 10, 11

*Wells v. Red Banner Transp., LLC*,
No. SA-21-CV-00360-OLG, 2023 U.S. Dist. LEXIS 13281
(W.D. Tex. Jan. 26, 2023).........................................................5

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
711 F. Supp. 3d 317 (E.D. Pa. 2022)........................................ 9-10

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
No. 23-1032, 2024 WL 3423709 (3d Cir. July 16, 2024) ................................9

## <u>INTRODUCTION</u>

Nearly a decade into this litigation, after a Rule 702 hearing before Judge Wolfson confirmed that there is no reliable way to "rule in or rule out any particular risk factors" as the most likely cause of a woman's ovarian cancer, 5/7/2026 Tr. 136:2-14 (Mot. Ex. C), the six Bellwether Plaintiffs abruptly withdrew their specific cause experts—Drs. Judith Wolf and Daniel Clarke-Pearson—presumably to avoid having them excluded by the Court. This late-breaking development not only compels the entry of summary judgment in those six cases; it also warrants an order to show cause why the remaining Plaintiffs' claims should not suffer the same fate.

Faced with this looming finality, the Bellwether Plaintiffs hint that they may reinstate their experts or belatedly substitute new ones, while the remaining Plaintiffs contend that Defendants' proposal would violate due process, would overwhelm the Court, and is ultimately unnecessary because the testimony of the withdrawn experts actually supports Plaintiffs' claims. All of these arguments are meritless.

*First*, the Bellwether Plaintiffs contend that nothing prevents them from "reinstat[ing]" Drs. Wolf and Clarke-Pearson or replacing them with new experts. Opp'n at 9. But experts cannot be dropped and reinstated at a party's whim. And in any event, these experts' recent testimony confirms that their opinions do not satisfy Rule 702. Presumably, that is why Plaintiffs dropped them in the first place. Nor can the Bellwether Plaintiffs substitute new experts at this point, long after the deadline

1

for expert disclosures and the close of expert discovery.

*Second*, the remaining Plaintiffs primarily oppose Defendants' show-cause proposal on the ground that it seeks dismissal based on proceedings in which they did not partake, allegedly in violation of their due-process rights. But Defendants are not seeking a summary dismissal of Plaintiffs' claims. Rather, they are simply asking that Plaintiffs lay out viable theories of specific causation. Thus, Defendants' proposal actually protects (rather than violates) Plaintiffs' due-process rights.

*Third*, Plaintiffs' various arguments on the merits of Defendants' proposal are also unpersuasive. For example, Plaintiffs suggest that a show-cause procedure would require the application of "each plaintiff's individual state law" with respect to causation. Opp'n at 14. But Plaintiffs do not dispute that every state at issue requires expert specific cause evidence, the *admissibility* of which is controlled by *Federal* Rule of Evidence 702. To the extent that question overlaps with underlying state product liability law, this Court is more than capable of resolving it.

Plaintiffs also argue that the testimony of Drs. Wolf and Clarke-Pearson actually shows that their claims have merit. But if that is the case, Plaintiffs should have no trouble coming forward and showing cause, as Defendants propose. The obvious reason why Plaintiffs oppose such a procedure is because there is no way to plug the gaping methodological holes laid bare by the recent testimony of the now-withdrawn experts. Plaintiffs highlight the fact that Drs. Wolf and Clarke-Pearson

claimed to perform the "long accepted" differential-diagnosis methodology, Opp'n at 4, but invoking that methodology and reliably applying it are two different things. As Chief Judge Bumb recently explained, the latter (relevant) exercise entails methodically "rul[ing] out the potential causes" of a plaintiff's cancer and undertaking a "comparison or assessment[] of the relative risks of [the outcome] associated with each of [the plaintiff's] known risk factors" and her exposure to the product. *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RMB/SAK), 2025 U.S. Dist. LEXIS 221602, at *28, *75 n.54 (D.N.J. Nov. 10, 2025). Here, neither Dr. Wolf nor Dr. Clarke-Pearson even attempted to perform that analysis, which is presumably why Plaintiffs ignore *Valsartan* in their briefing.

In short, while Defendants have put forth a plan for the fair and orderly resolution of specific causation, Plaintiffs appear to suggest instead that the thousands of cases should be remanded. This proposal should be rejected because removing the cross-cutting question of specific causation from this proceeding just as this Court was poised to address it would defeat the very purpose of this MDL. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1357-58 (J.P.M.L. 2016) ("Centralization will . . . prevent inconsistent pretrial rulings (including with respect to . . . *Daubert* motion practice)").

For these reasons, discussed further below, the Court should reject Plaintiffs'

arguments and grant the motion.

## ARGUMENT

I.     **THE SIX BELLWETHER CASES SHOULD BE DISMISSED.**

The six bellwether cases should be dismissed with prejudice because those Plaintiffs' decision to withdraw their specific cause experts leaves them without the necessary evidence to prove an essential element of their claims. The Bellwether Plaintiffs argue in response that they may be able to "present admissible evidence through these experts upon reinstatement" or through "other experts." Opp'n at 9. In fact, they can do neither.

*First*, there is no procedure in the Federal Rules for reinstating withdrawn experts, and the Bellwether Plaintiffs cite none. Instead, they repeatedly assert that they withdrew their experts "without prejudice," and they attempt to rely on *Papera v. Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020), for the proposition that a withdrawal without prejudice "adjudicates nothing" and "carries no preclusive effect." *See* Opp'n at 9, 12. But *Papera* dealt with an entirely different question. In that case, the Third Circuit merely held that the voluntary dismissal of a *lawsuit* did not "preclude [the parties from] relitigating their claims" in a "second suit." *Papera*, 948 F.3d at 612. It did not address expert withdrawal. In any event, Plaintiffs do not explain why they would have abruptly withdrawn their key experts, only to later reinstate them. That is because such a move would make zero sense.

4

*Second*, it is far too late for the Bellwether Plaintiffs to obtain new experts. The deadline for submitting specific cause expert reports was May 28, 2024, more than two years ago. That deadline was followed by depositions, Rule 702 briefing, and a new hearing. Plaintiffs cannot simply start over because their experts' opinions were unreliable; otherwise expert disclosures would simply be a merry-go-round that never ends. *See Wells v. Red Banner Transp., LLC*, No. SA-21-CV-00360-OLG, 2023 U.S. Dist. LEXIS 13281, at *17-18 (W.D. Tex. Jan. 26, 2023) ("Allowing additional discovery after . . . an opponent has filed a summary judgment . . . would be unfair to the summary judgment movant.").

Plaintiffs' approach would not only unfairly prejudice Defendants but also "delay the MDL's resolution" by "restart[ing] expert discovery, requiring depositions, briefing, hearings, and motions on plaintiffs' new expert[s]." *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 350 (6th Cir. 2024) (affirming denial of motion to replace an excluded causation expert, which "would delay the MDL's resolution for years" and "likely impose significant costs on defendants"). For all of these reasons, the Court should enter summary judgment on the Bellwether Plaintiffs' claims.

## II.    <u>THE COURT SHOULD ISSUE AN ORDER TO SHOW CAUSE WHY ALL CLAIMS IN THIS MDL SHOULD NOT BE DISMISSED.</u>

The Court should require all Plaintiffs to show cause why their claims should not be dismissed because the fundamental concessions made by Drs. Wolf and

Clarke-Pearson demonstrate that *no* MDL plaintiff can establish specific causation with admissible expert evidence under Rule 702. *See* Mot. at 19-26. Plaintiffs' arguments in response all fail.

### A.    A Show-Cause Procedure Comports With Due Process.

Plaintiffs first argue that due process "[f]orbids" dismissing the claims of non-bellwether Plaintiffs with prejudice based on proceedings in which they did not partake. Opp'n at 6. But Defendants are not asking the Court to dispose of all cases en masse. Rather, they seek an order for each individual Plaintiff to show cause (i.e., demonstrate) why her theory of specific causation passes muster under Rule 702. Such a "procedure *allows* all plaintiffs an opportunity to be heard [as to] why" their claims should not be dismissed, which fully comports with due-process principles. *See In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, MDL No. 3043, 2024 U.S. Dist. LEXIS 11328, at *54-55 (S.D.N.Y. Jan. 17, 2024) (emphasis added).

Plaintiffs brush aside *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Products Liability Litigation (No. II)*, 892 F.3d 624, 648-49 (4th Cir. 2018), on the ground that the specific causation expert for the bellwether trial there had been excluded. Opp'n at 6 n.4. But the withdrawal of Drs. Wolf and Clarke-Pearson as experts is effectively the same as their being excluded pursuant to a court order. While Plaintiffs sought to avoid exclusion through withdrawal, they only did so because "'[t]he writing' . . . was 'on the wall.'" *Lipitor*, 892 F.3d at 648. Thus,

6

Plaintiffs should have to "come forward with alternative evidence of specific causation that would survive review." *Id.*

Plaintiffs' cases only reinforce the propriety of Defendants' proposal. For example, in *Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55 (3d Cir. 2023) (Opp'n at 7), the Third Circuit recognized that show-cause orders are "regularly employed in MDLs" to maximize judicial economy. *Id.* at 65-66. In that case, however, the Court did not follow such a procedure. Instead, it simply extended prior rulings from other cases in the MDL proceeding, without allowing the party "to make new arguments based on new or preexisting evidence[.]" *Id.* at 68. Here, by contrast, Defendants' proposal affords Plaintiffs the chance to prove their claims.

Similarly, the show-cause order at issue in *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 179 (3d Cir. 2021) (Opp'n at 5, 7), was nothing like what Defendants propose here. In *Hamer*, an MDL court issued a show-cause order for the plaintiff to present evidence that his injury was the same type as the remaining cases in the MDL proceeding. When the plaintiff did not do so (but nevertheless alleged a viable cause of action against the defendant based on a different type of injury), the MDL court dismissed the claim with prejudice. *Id.* at 177-79. The Third Circuit vacated the dismissal and held that the MDL court should have remanded the claim to the original trial court where it was filed. *Id.* at 179-80. But the Third Circuit also made clear that the district court "would have acted within its discretion" in

dismissing the plaintiff's claim with prejudice if it had "properly found that [the plaintiff] had not stated a *prima facie* case for relief" under applicable state law. *Id.* at 178-79. That is precisely what Defendants propose here: an order requiring Plaintiffs to come forward with *prima facie* evidence that they have a claim for relief. If they cannot, *Hamer* underscores that dismissal with prejudice would be proper.

**B.    Defendants Have Established Good Cause For Issuing A Show-Cause Order.**

Plaintiffs also argue that show-cause and *Lone Pine* orders are only warranted in "exceptional cases"—i.e., where there are serious questions over the plaintiffs' "ability to bring forward necessary medical causation." Opp'n at 8 (quoting *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 84 (M.D. Pa. 2015)). But in *Russell*, "the posture of the litigation [was] early and discovery ha[d] yet to commence," 305 F.R.D. at 84, and *Roth v. Cabot Oil & Gas Corp.*, 287 F.R.D. 293 (M.D. Pa. 2012) (Opp'n at 8), involved "straightforward" "property-related-tort claims," which the Court distinguished from "claims of medical injury in mass tort litigation." *Id.* at 299.

Here, the MDL is **not** in its infancy and the claims at issue **do** involve alleged medical injuries that require evidence of specific medical causation. Moreover, the concessions by Drs. Wolf and Clarke-Pearson that a proper differential diagnosis is virtually impossible in talc cases (followed by their late-breaking withdrawal as experts in the six Bellwether cases) raise fundamental questions about the overall

8

merits of the claims pool. These circumstances are thus more akin to those in *In re Zostavax (Zoster Vaccine Live) Products Liability Litigation*, where the Third Circuit affirmed the entry of a *Lone Pine* order requiring the remaining plaintiffs to produce valid tests establishing that a vaccine caused them to develop shingles, several years into the MDL. No. 23-1032, 2024 WL 3423709, at *1 (3d Cir. July 16, 2024). As the Third Circuit explained, "Plaintiffs knew from the start that they would have to account for and exclude the 'obvious alternative cause' of shingles": the wild-type chickenpox strain of the virus latent in most people over the age of 30. *Id.* at *3. The same is true here because, as Plaintiffs repeatedly acknowledge, ovarian cancer is "multifactorial." Opp'n at 4, 18, 20.[1]

Plaintiffs' other arguments are similarly meritless.

***First***, Plaintiffs contend that Defendants' proposal is unworkable because "each plaintiff's individual state law would supply the appropriate causation standard." Opp'n at 14. But Plaintiffs do not point to "any state [that] does not require proof of specific causation by a medical expert[.]" *Zostavax*, 2024 WL 3423709, at *4 n.42 (citing *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,

---

[1]    Although the MDL court "first excluded the bellwether plaintiffs' specific causation expert and entered summary judgment" in that case, Opp'n at 9, the Third Circuit did not hold that such rulings are a prerequisite for *Lone Pine* or show-cause orders. Rather, the court reaffirmed that "'an MDL court needs to have broad discretion' to enter" such orders. *Zostavax*, 2024 WL 3423709, at *3.

711 F. Supp. 3d 317, 318-19 (E.D. Pa. 2022)). And the admissibility of that expert evidence will necessarily be controlled by Federal Rule of Evidence 702. *In re Zostavax*, 711 F. Supp. 3d at 318-19. To the extent that inquiry overlaps with the underlying substantive causation standard, the Court will be more than capable of accounting for it in evaluating Plaintiffs' attempts to show cause. *See In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010) ("[I]t is 'within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state.'") (citation omitted).

**Second**, Plaintiffs also assert that there is no basis for having to show cause because Drs. Wolf and Clarke-Pearson previously claimed to have performed differential diagnoses. Opp'n at 4. But "the differential diagnosis must be properly performed in order to be reliable." *In re Valsartan*, 2025 U.S. Dist. LEXIS 221602, at *27 (quoting *Feit v. Great W. Life & Annuity Ins. Co.*, 271 F. App'x 246, 254 (3d Cir. 2008)). In particular, an expert must use "a scientifically valid methodology to rule in and rule out the potential causes of" the plaintiff's condition. *Id.* at *28 (internal quotation marks and citation omitted). And an expert cannot skirt that key "ruling out" step by "lumping" alternative risk factors together and concluding they all had some indeterminate impact on the development of a patient's cancer. *Id.* at *45 (excluding expert who "did not consider each of [decedent's] known risk factors

10

independently and instead lumped his numerous conditions . . . under the umbrella of metabolic syndrome").

Drs. Wolf and Clarke-Pearson failed to offer reliable opinions for all of these reasons. For example, Dr. Wolf conceded that she does not "know of any way" that she "could rule in or rule out any particular risk factors" for Linda Bondurant, Anna Gallardo, and Carter Judkins in the MDL. 5/7/2026 Tr. 136:2-14. Instead, she considers all risk factors to "be substantial contributing causes." *Id.* 46:12-24; 149:20-150:8. Similarly, Dr. Clarke-Pearson recently testified that Plaintiffs' risk factors "all contribute to the increased risk of developing ovarian cancer," regardless of the magnitude of risk posed by each factor. *Id.* 285:11-24.

Contrary to Plaintiffs' claim, Defendants are not "pok[ing] holes" in the experts' theories and insisting that they "determine, with 100% certainty, how much of a substantial contributing factor" each risk factor was. Opp'n at 13. Rather, Defendants' fundamental point is that the now-withdrawn experts did not undertake even the most basic comparison of the relative risks. For example, according to Dr. Wolf, Ms. Bondurant's endometriosis is just another "significant contributing cause" (like her alleged talc use) to the development of her clear cell cancer, 5/7/2026 Tr. 89:19-90:1, even though her endometriosis conferred a ***900%*** increased risk. Similarly, Dr. Clarke-Pearson did not assess the relative contributions of different risk factors even though: (1) the literature reports relative risks as high as 7.96 for

11

endometriosis and endometrioid cancer (relevant to Ms. Newsome); (2) having a first-degree relative with breast cancer triples a woman's risk of ovarian cancer (relevant to Ms. Converse); and (3) the studies on obesity report a relative risk of 1.63 (relevant to Ms. Newsome). *See* 8/27/2021 Clarke-Pearson Dep. 603:23-604:2; 5/7/2026 Tr. 284:15-285:17; 3/23/2026 Clarke-Pearson *Cook County* Dep. 147:21-22, 148:3-5. These risks dwarf the alleged 20%-30% increased risk from talc that underlies those experts' opinions, *see* 5/28/2024 Clarke-Pearson MDL Rep. at 13, 5/7/2026 Tr. 168:13-19, which is why they sought to lump all risk factors together.

Although Plaintiffs claim that courts have endorsed this approach to causation, their cases either support **Defendants'** position or are inapposite. For example, in *Magistrini v. One Hour Martinizing Dry Cleaning*, the plaintiff alleged that her exposure to perchloroethylene ("PCE") caused her to develop acute myelogenous leukemia ("AML"). 180 F. Supp. 2d 584, 588-89 (D.N.J. 2002) (Opp'n at 16). Because the plaintiff smoked for several years prior to the onset of AML, her expert's "differential diagnosis needed to reliably determine that PCE exposure ***more likely*** caused Plaintiff's disease than did exposure to smoke." *Id.* at 610 (emphasis added). But, just like Drs. Wolf and Clarke-Pearson, the expert in *Magistrini* did not undertake any analysis "in order to compare the respective risks to Plaintiff of her exposures to smoking and PCE," rendering the expert's specific causation opinions inadmissible. *Id.*

12

Plaintiffs also repeatedly cite *Beavan v. Allergan U.S.A., Inc.*, 264 N.J. 99 (2026) (cited in Opp'n at 4, 16, 25), as supporting their position. It does not. In *Beavan*, the New Jersey Supreme Court ***reversed*** the admission of specific causation testimony because the trial court "did not conduct any inquiry as to whether the [differential diagnosis] used by plaintiff's experts met the requirements of *Accutane*." *Id.* at 133. In so doing, the Court made clear that the "gatekeeper" must "scrutinize" "both steps of the differential diagnosis: the 'rule in' of 'all plausible causes,' and the 'process of elimination' to 'rule out' plausible causes and identify '***the most likely cause of the findings in that particular case***[.]" *Id.* at 132-33 (citation omitted, emphasis added). Here, Drs. Wolf and Clarke-Pearson admittedly were not able to perform that crucial second step.

Plaintiffs also point to a handful of talc cases in which courts found specific cause opinions admissible, but none of those cases involved amended federal Rule 702 and none was subject to clear Third Circuit law requiring specific cause experts to perform a reliable differential diagnosis. *See Echeverria v. Johnson & Johnson*, 37 Cal. App. 5th 292, 310, 323 (2019) (Opp'n at 15) (admitting testimony by expert who "considered and ruled out" 13 different risk factors under California state court evidentiary standards); *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 709 (Mo. Ct. App. 2020) (Opp'n at 2) ("a differential diagnosis is ***presumptively*** admissible" under Missouri's weaker expert evidence standard) (citation omitted, emphasis

13

added). Federal Rule of Evidence 702 was amended precisely to end such "erroneous[]" deference to an expert's say-so. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) ("there is no presumption in favor of admission" of an unreliable differential diagnosis).

Plaintiffs also point to *Carl v. Johnson & Johnson*, 464 N.J. Super. 446, 504 (App. Div. 2020) (Opp'n at 2), but there, the appellate court did not address the standard for admitting specific cause opinions.[2] In any event, the Defendants' renewed *Accutane* motions in that case are still pending. (The hearing took place in conjunction with the federal court Rule 702 hearing, and the Special Master has not yet issued her report and recommendation.)

Finally, Plaintiffs' reliance on a line of New Jersey cases addressing the "apportionment" of damages, Opp'n at 20 (citing *Dafler v. Raymark Indus., Inc.*, 259 N.J. Super. 17 (App. Div. 1992)), is similarly unavailing. Plaintiffs are "confus[ing] the concept of burden of proof by a preponderance of the evidence, which is the standard required to prove a defect and proximate cause in the first instance, and the concept of apportionment of fault . . . ." *Sharpe v. Bestop, Inc.*, 314 N.J. Super. 54, 69-70 (App. Div. 1998) ("The passages in *Dafler* . . . address

---

[2]    This is directly at odds with the New Jersey Supreme Court's recent pronouncement that "the trial court must conduct a 'rigorous gatekeeping analysis[.]" *Beavan*, 264 N.J. at 107.

14

apportionment issues, not proximate cause issues."), *aff'd*, 158 N.J. 329 (1999).[3]

Here, the withdrawn testimony of Drs. Wolf and Clarke-Pearson illustrates that

Plaintiffs cannot satisfy their burden of proof on specific causation.

In sum, far from testifying to "exactly what the law requires," Opp'n at 4, Drs.

Wolf and Clarke-Pearson did the opposite. That explains why they were withdrawn

as experts in the six Bellwether cases, and it highlights why the remaining Plaintiffs

should show cause why their claims should not also be dismissed.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' motion,

the Court should grant Defendants' motion for an order to show cause why

Plaintiffs' claims should not be dismissed with prejudice.

---

[3]   The remainder of Plaintiffs' cases are inapposite. For example, in *Levitas v. Christian*, 164 A.3d 228, 238 (Md. 2017) (Opp'n at 15), the Maryland Court of Appeals narrowly addressed the requirements of "expert witnesses in lead paint cases" involving only two possible sources of lead contamination. 164 A.3d at 237 n.16. Far more relevant caselaw from Maryland holds that a proffered differential diagnosis is "fundamentally flawed" where the expert "cannot rule out the high likelihood that [the condition] was caused purely" by other factors. *Blackwell v. Wyeth*, 971 A.2d 235, 260 (Md. 2009) (affirming exclusion of expert who "did not sufficiently consider genetics in [expert's] differential diagnosis equation.").

15

DATED: July 6, 2026         Respectfully submitted,

/s/ *Jessica L. Brennan*
**Jessica L. Brennan**
BARNES & THORNBURG LLP
67 E. Park Place, Suite 1000
Morristown, NJ 07960
Tel.: 973-775-6120
jessica.brennan@btlaw.com

**Kristen Renee Fournier, P.C.**
KIRKLAND & ELLIS, LLP
601 Lexington Avenue
New York, New York 10022
Tel.: 212-446-4777
kristen.fournier@kirkland.com

*Attorneys for Defendants Johnson &*
*Johnson and Red River Talc LLC*

16