**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>***THIS DOCUMENT RELATES TO ALL CASES*** | Case No. 3:16-md-02738 (MAS) (RLS)<br><br>MDL No. 2738 |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' NEGOTIATION COMMITTEE'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER SUPPLEMENTING CMO 7(A)

The Plaintiffs' Negotiation Committee ("PNC") hereby submits the following Memorandum in Support of its Motion for Entry of Case Management Order ("CMO") Supplementing CMO 7(A). Notwithstanding the current stay of proceedings, the PNC seeks the Court's consideration of this motion to facilitate the Talc Claims Resolution Program's settlement process with the support of Defendants and 313 Participating Firms representing over 66,500 claimants.

## I. INTRODUCTION

On July 27, 2026, the PNC, with the endorsement of the Plaintiffs' Executive Committee ("PEC") and the Plaintiffs' Steering Committee ("PSC"), announced a

historic global private settlement program with Johnson & Johnson to resolve all current and pending talcum powder claims in MDL No. 2738 and related state court proceedings. This settlement, known as the Talc Claims Resolution Program ("TCRP"), is uncapped and has a guaranteed minimum amount of $5.8 billion. As this Court is well aware, the settlement was reached after years of hard-fought litigation in one of the largest and longest-running MDLs in the history of the American justice system.

### A. OVERVIEW OF HISTORIC LITIGATION AND SETTLEMENT

In October 2016, the United States Judicial Panel on Multidistrict Litigation ("JPML") began transferring all federal actions involving talc-related ovarian cancer to this Court for coordinated pretrial proceedings. Since its inception, this litigation has grown into the largest pending Multidistrict Litigation ("MDL") in the United States by a significant margin—and cemented itself as one of the largest ever. After over a decade of intense litigation, discovery, and expert work on highly technical scientific issues, two rounds of *Daubert* briefing and argument, and three bankruptcy filings, the parties have finally reached a comprehensive global private settlement program that provides compensation for all qualifying talcum powder claims pending in this MDL and state courts. Plaintiffs' counsel's commitment of substantial time and resources—with no assurance of success or return—to mount, sustain, and prosecute this litigation for over a decade has finally brought this

complex MDL to conclusion through this historic uncapped settlement with a total guaranteed minimum of $5.8 billion, which has inured to the benefit of all participating talcum powder claimants.

### B. CASE MANAGEMENT ORDERS 7 & 7(A)

On August 9, 2017, this Court entered Case Management Order 7 ("CMO 7") establishing the standards and procedures for counsel who would seek an award of fees and reimbursement of costs for their common benefit work. (ECF No. 426.) On May 29, 2020, the PSC moved the Court for entry of Case Management Order 7(A) ("CMO 7(A)") proposing, *inter alia*, an "early participation" assessment amount of 8% for counsel who participated within certain timeframes and a "late participation" assessment amount of 12% for those who did not. (ECF No. 13487-1, at 6–7.) In entering CMO 7(A), the Court found that the 8% and 12% assessments were "reasonable when compared to percentages applied in other MDLs." (ECF No. 14740, at 2.) At the time the Court adopted CMO 7(A), there were approximately 17,147 filed cases in the MDL. Today, after years of protracted litigation, there are close to 70,000.

The Court entered CMO 7(A) to "avoid unnecessary conflicts and expense, conserve judicial resources, and expedite the disposition of all cases…." (ECF No. 14741, at 1.) In so doing, the Court recognized that the participation agreement

attached as Exhibit A was "a private and cooperative agreement between the PEC, PSC and Plaintiffs' attorneys". (*Id.* at 10.) Paragraph 34 of CMO 7(A) provides:

> In the event of a litigation-wide global settlement…or other settlement program(s) with respect to the cases or claims in the litigation, including a settlement program(s) that also includes unfiled claims and/or cases filed in any state court, such as a *global private settlement program*…or any other form of a global settlement, nothing in this Order prohibits the PEC/PSC from applying to this Court for attorneys' fees and reimbursement of expenses at a percentage that is different from (greater or lesser) than the assessment percentage described herein…and in the event of any such litigation-wide/global settlement, the Court shall make a determination of the amount of fees and expenses to be awarded.

(*Id.* at 18–19.) (emphasis added).

### C. TCRP SUPPORT AND AGREEMENT OF PARTICIPATING FIRMS

The TCRP is a "global private settlement program" that facilitates settlement between Johnson & Johnson and plaintiffs' law firms who represent one or more talcum powder claimants ("Participating Firms") through the confidential Participation Agreement negotiated by the PNC. As of the filing of this Motion, 313 Participating Firms representing over 66,500 claimants have executed the Participation Agreement and agreed to be bound by the TCRP—including all firms who hold leadership positions in this MDL and related state court proceedings, and all firms who have filed more than 25 cases in the MDL.

Pursuant to the Participation Agreement, the Participating Firms agreed that the PNC should move this Court to "make all necessary common-benefit-related

changes to effectuate the Resolution Program." All Participating Firms and Defendants further agreed that, rather than the 8% and 12% common benefit percentages and process set forth in CMO 7(A), the TCRP shall be subject to "a uniform 10% common benefit assessment (inclusive of costs) on the Total Settlement Amount." Given the length of this historic litigation, the number of claimants, and the comprehensive global settlement that was ultimately reached, the parties agreed that a uniform assessment was more equitable so that all participating claimants are assessed the same percentage regardless of when or whether their counsel executed the common benefit participation agreement contained in CMO 7(A).

All Participating Firms also agreed that Fouad Kurdi shall serve as the TCRP Common Benefit Fund ("CBF") Special Master to allocate common benefit funds among Participating Firms and to resolve disputes regarding that allocation. Mr. Kurdi is well known to this Court and has served as the Court-appointed mediator for years. Mr. Kurdi has significant experience in numerous other large, complex MDLs including the National Prescription Opiate Litigation, Roundup Litigation, Rideshare Litigation, PFAS Litigation, and Paraquat Litigation. Mr. Kurdi's experience and his detailed knowledge of the history of this litigation uniquely qualify him for the TCRP CBF Special Master role agreed to by all Participating Firms.

## II. PROPOSED ORDER SUPPLEMENTING CMO 7(A)

As noted above, CMO 7(A) was entered at the request of Plaintiffs' Leadership to create a private contractual agreement between and among the "PEC, PSC, and Plaintiffs' attorneys". (ECF No. 14741, at 10.) The TCRP, however, created a new Participation Agreement that contains common benefit provisions and procedures that supersede those contained in CMO 7(A). 313 Participating Firms, including the PNC, PEC, PSC, and all state court leadership firms, have agreed that the TCRP's common benefit provisions and processes should apply to the TCRP.[1]

Accordingly, the PNC respectfully asks this Court, on behalf of all parties to the TCRP's Participation Agreement, to enter an Order supplementing CMO 7(A) to effectuate the TCRP. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 05-1708 (DWF/AJB), 2008 U.S. Dist. LEXIS 17535, at *40 (D. Minn. Mar. 7, 2008) (common benefit terms contained in Master Settlement Agreement "contracted around" previous assessment); *see id.* at *45 ("The common benefit fund was a contemplated part of the settlement, and joining the settlement means [] accept[ing] the terms of the settlement."). Specifically, the PNC requests

---

[1] The unanimous support and agreement of all Participating Firms to the relief requested herein, including the PNC, PEC, and PSC, and state court leadership, greatly exceeds the requirement in paragraph 28 of CMO 7(A) that, *inter alia*, "the PSC approve[] [any] proposed change to the assessment by a majority vote of the PSC." Here, all Participating Firms have agreed that the TCRP shall not be subject to CMO 7(A) and instead shall be subject to the common benefit provisions and processes set forth in the Participation Agreement.

that the Court find that, in light of the parties' agreement, the TCRP is not subject to the application and scope of CMO 7(A), and that TCRP common benefit fees and expenses will be governed exclusively by the Participation Agreement agreed to by the Participating Firms and Defendants. In doing so, the Court will facilitate the implementation of the TCRP and avoid the inefficiency of individually assessing claimants based on when or if their law firm executed the previous common benefit participation agreement. The Court will also further the initial purpose of CMO 7(A) and "avoid unnecessary conflicts and expense, conserve judicial resources, and expedite the disposition of all cases" by effectuating the TCRP. (ECF No. 14741, at 1.)

## III. CONCLUSION

CMO 7(A) set placeholder common benefit assessment percentages and processes many years ago and expressly contemplated that Plaintiffs' Leadership may seek relief "[i]n the event of a litigation-wide global settlement." (ECF No. 14741, at 18–19.) Now that a historic global private settlement has been reached, and with the agreement of all Participating Firms and Defendants, the PNC respectfully requests that the Court enter an order supplementing CMO 7(A) and removing the TCRP from its application and scope. For the foregoing reasons, the PNC respectfully requests that the Court grant the motion and enter the accompanying proposed order supplementing Case Management Order 7(A).

Dated: October 6, 2026 Respectfully Submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
[P]: (973) 639-9100
[E]: cseeger@seegerweiss.com

***Plaintiffs' Lead Negotiation Counsel***

*/s/ Hunter J. Shkolnik*
Hunter J. Shkolnik, Esq.
**NAPOLI SHKOLNIK PLLC**
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
[P]: (787) 493-5088
[E]: hunter@nsprlaw.com

*/s/ R. Bryant McCulley*
R. Bryant McCulley
**ASHCRAFT & GEREL LLP**
701 East Bay Street, Suite 411
Charleston, SC 29403
[P]: (843) 400-1384
[E]: bmcculley@ashcraftlaw.com

***Plaintiffs' Negotiation Committee***